WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
:
**In re**                                                                : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
:
**Debtors.** : **(Jointly Administered)**
:
--------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT**
**TO SECTION 105(a) OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT**
<u>**AND COMPROMISE WITH DANSKE BANK A/S**</u>

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "<u>Motion</u>")

of the above-captioned debtors, as debtors and debtors-in-possession (the "<u>Debtors</u>"), for

approval, pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") of a settlement and

compromise with Danske Bank A/S, individually and through its London Branch (collectively,

"<u>Danske</u>"), all as more fully described in the Motion, will be held before the Honorable James

M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "<u>Bankruptcy Court</u>"), on **November 16, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

(the "<u>Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Venable LLP, Rockefeller Center, 1270 Avenue of the Americas, New York, New York 10020, Attn: Carollynn H.G. Callari, Esq., attorneys for Danske, so as to be so filed and received no later than **November 9, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 26, 2011
     New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                              :
                    **Debtors.**              :        **(Jointly Administered)**
                                              :
-----------------------------------------------------------------x

## DEBTORS' MOTION PURSUANT
## TO SECTION 105(a) OF THE BANKRUPTCY CODE AND
## BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT
## AND COMPROMISE WITH DANSKE BANK A/S

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc.

("LCPI"), and Lehman Brothers Special Financing Inc. ("LBSF" and together with their

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession,

the "Debtors"), file this motion and respectfully represent:

### Preliminary Statement

1.      After extensive discussions, negotiations, and, most recently, voluntary

mediation, LBHI and LCPI (and LBSF, pursuant to a joinder entered into solely for purposes of

waiving certain claims) (collectively, the "Lehman Parties") entered into a settlement agreement

with Danske Bank A/S, individually and through its London Branch (collectively, "Danske" and

together with the Lehman Parties, the "Parties") to resolve the substantial claims filed by Danske

against the Lehman Parties arising out of certain transactions, including that certain standard

1996 Master Repurchase Agreement, dated as of August 30, 1999 (as amended, modified or

supplemented, the "MRA").  A copy of the settlement agreement (the "Settlement Agreement")

is attached hereto as Exhibit A.[1]

       2.      The Settlement Agreement is fair, reasonable, and in the best interests of

the Lehman Parties and their creditors.  Accordingly, the Settlement Agreement should be

approved.

**Relief Requested**

       3.      Pursuant to section 105(a) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), the Lehman Parties request approval of the Settlement Agreement and

authorization to take all steps necessary to consummate the transactions set forth therein.

**Background**

       4.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of the Bankruptcy Code.  LBSF commenced its

chapter 11 case on October 3, 2008.  LCPI commenced its chapter 11 case on October 5, 2008.

The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are

being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are

---

[1] The description and characterization in this Motion of (a) the events, facts and circumstances giving rise to the claims and disputes (and the settlement of certain of those claims and disputes) referenced herein and (b) the claims and disputes themselves, are for information purposes only, and are without prejudice to any claims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs, and causes of action of whatever nature of the Lehman Parties, Danske, and their respective affiliates, which shall be governed solely by the terms of the Settlement Agreement.

authorized to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       On September 17, 2008, the United States Trustee for Region 2 (the "U.S.

Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of

the Bankruptcy Code (the "Creditors' Committee").

6.       On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.       On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009, ECF No. 2583, the Court approved the U.S. Trustee's appointment of the Examiner.

On March 11, 2010, the Examiner filed its report with the Court, ECF No. 7531.

8.       By order dated July 2, 2009, the Court established various deadlines for

creditors to file proofs of claim and related documents against the Debtors, ECF No. 4271.

9.       On September 1, 2011, the Debtors filed their Third Amended Joint

Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, ECF No. 19628

(the "Plan"), and the Debtors' Disclosure Statement for the Third Amended Joint Chapter 11

Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of

the Bankruptcy Code, ECF No. 19629 (the "Disclosure Statement").  The Court approved the

Disclosure Statement and voting procedures with respect to the Plan later that day, ECF No.

19631 (the "Disclosure Statement Order").  On September 15, 2011, the Court entered an order

approving a modification to the Disclosure Statement, ECF No. 20016.

**Jurisdiction**

10.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

11.     Prior to the events leading up to these chapter 11 cases, the Debtors,

together with their non-Debtor affiliates ("Lehman"), were the fourth largest investment bank in

the United States.  For more than 150 years, Lehman has been a leader in the global financial

markets by serving the financial needs of corporations, governmental units, institutional clients

and individuals worldwide.

12.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008, ECF No. 2, and the Disclosure Statement.

**The MRA**

13.     Prior to its Commencement Date, LCPI sold and agreed to repurchase a

number of commercial and residential loans (the "Loans") to and from Danske under the MRA.

LBHI guaranteed certain of LCPI's obligations to Danske under the MRA and under a

committed repurchase facility agreement, dated March 17, 2005 (the "3/17/05 Facility

Agreement"), pursuant to guarantee agreements dated March 19, 2007 and March 17, 2005,

respectively (the "Guarantees").

14.     On September 23, 2008, prior to LCPI's Commencement Date, Danske

declared an "Event of Default" under the MRA.

**The Dispute**

15.    On September 18, 2009, Danske filed a proof of claim (Claim No. 19487) against LCPI, relating to LCPI's obligations under the MRA, in an amount not less than $699,657,333.82 (the "LCPI Claim").  On the same date, Danske filed a corresponding proof of claim (Claim No. 17247) against LBHI, relating to LBHI's obligations under the Guarantees, in the same amount (the "LBHI Claim" and together with the LCPI Claim, the "Deficiency Claims").  Danske alleges that the Deficiency Claims represent the amounts owing to Danske under the MRA and Guarantees.[2]

16.    Danske filed four additional proofs of claim on September 18, 2009, for amounts allegedly owed arising out of unrelated derivatives transactions and alleged guarantees related thereto:  (i) Claim No. 17272 against LBSF in an amount not less than $19,575,521.00; (ii) Claim No. 17273 against LBHI in an amount not less than $19,575,521.00; (iii) Claim No. 17274 against LBHI in an amount not less than $365,116.00; and (iv) Claim No. 17275 against LBHI in an amount not less than $282,047.22 (collectively, the "Additional Claims").[3]

17.    Commencing in December 2008 and with one exception, LCPI, over the course of several months, assigned to Danske all of the Loans that had been sold to Danske under the MRA as of the Commencement Date.  LCPI and Danske then proceeded to negotiate Danske's deficiency claim under the MRA after giving credit to LCPI for the value of the Loans that were so assigned to Danske.  After some initial discussions, LCPI and Danske reached an impasse as to the calculation on the deficiency claim as a result of a dispute in the value of the

---

[2] Since filing these claims, Danske has informed the Debtors that Danske asserts the claim amount actually exceeds the amount indicated in the Deficiency Claims.

[3] In addition to the foregoing claims, Danske filed proofs of claim against LBHI and Lehman Brothers Commercial Corporation for matters unrelated to the MRA (the "Excluded Danske Claims").  These Excluded Danske Claims are specifically excluded from the Settlement Agreement.

assigned Loans.  Another effort to resolve the deficiency claim a year later also resulted in an

impasse over values.  Earlier this year, LCPI engaged CB Richard Ellis, a real estate and

commercial loan appraiser, and Clayton IPS, a valuation firm specializing in the valuation of

residential mortgage pools, to value the Loans as of September, 2008.  Upon receipt of the final

appraisals, LCPI and Danske exchanged valuations on the assigned Loans and underlying real

estate projects and proceeded to engage in negotiations regarding the calculation of a deficiency

claim based on the parties respective valuations.  These negotiations led the parties to seek non-

binding mediation which then resulted in the settlement embodied in the Settlement Agreement.

### The Settlement Agreement[4]

18.    As a result of the efforts described above, and to avoid protracted, costly,

and uncertain litigation, the Parties entered into a comprehensive resolution, pursuant to the

Settlement Agreement, of the disputes regarding the Deficiency Claims and the Additional

Claims.  The Settlement Agreement principally provides for reduction and allowance of the

Deficiency Claims, waiver with prejudice of the Additional Claims, the assignment to LCPI (or

its designee) of one of the Loans for no additional consideration, and mutual releases, as set forth

in more detail below.

> (a)  ***The Deficiency Claims***  Provided that Danske complies with its obligations under the
> Settlement Agreement, the LCPI Claim shall be reduced and allowed as a non-
> priority, general unsecured claim against LCPI in a fixed, liquidated amount equal to
> $580,000,000.00 (the "Allowed LCPI Claim").  The Allowed LCPI Claim shall be
> classified and treated as an allowed claim in LCPI Class 4A under the Plan and shall
> receive the same treatment as other claims within such class.  Other than the Allowed
> LCPI Claim and the Excluded Danske Claims (as defined in the Settlement
> Agreement), all other claims (as defined in section 101(5) of the Bankruptcy Code)
> asserted or held by Danske against LCPI will be deemed fully and forever expunged,

---

[4] This summary is qualified in its entirety by the terms and conditions of the Settlement Agreement.  The summary
is intended to be used for informational purposes only and shall not in any way affect the meaning or interpretation
of the Settlement Agreement.

extinguished, disallowed and released.  The LBHI Claim shall be reduced and allowed as a senior non-priority, general unsecured claim against LBHI in a fixed, liquidated amount equal to $580,000,000.00 (the "Allowed LBHI Claim" and, together with the Allowed LCPI Claim, the "Allowed Claims").  The Allowed LBHI Claim shall be classified and treated as an allowed claim in LBHI Class 5 under the Plan and shall receive the same treatment as other claims within such class.  Other than the Allowed LBHI Claim and the Excluded Danske Claims, all other claims (as defined in section 101(5) of the Bankruptcy Code) asserted or held by Danske against LBHI will be deemed fully and forever expunged, extinguished, disallowed and released.

(b) ***Waiver with Prejudice of Additional Claims***  Danske shall waive and release the Additional Claims, with prejudice.

(c) ***Playa Pelicano Loan***  Danske shall cause its wholly-owned subsidiary which owns the Playa Pelicano Loan to assign, transfer, convey and deliver the Playa Pelicano Loan to LCPI or its designee, free and clear of any liens, ownership claims, set-off rights, or participations.  The Playa Pelicano Loan is a loan in the original maximum aggregate principal amount of $33,000,000 made by LBHI to Playa Pelicano Holdings, SRL and secured by certain property in Costa Rica.

(d) ***Waiver of LBSF Claims.***  LBSF shall waive and release any claims it may have against Danske arising under the Additional Claims Documents (as defined in the Settlement Agreement).

(e) ***Mutual Releases***  The Lehman Parties, on the one hand, and Danske, on the other, shall release each other from all claims and obligations arising under the MRA, the Deficiency Claims, the Guarantees and other related documents as well as under the Additional Claims documents.

19.    In connection with the Settlement Agreement, Danske has entered in a plan support agreement with the Debtors and has agreed, subject to the requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order, to vote, in a timely fashion, to accept the Plan with respect to the Allowed LCPI Claim, the Allowed LBHI Claim, all of its remaining claims, with a couple of exceptions noted in the Settlement Agreement, and any claims that may be acquired and controlled by Danske in the future.

## The Settlement Agreement is Fair and Equitable,
## Falls Well Within the Range of Reasonableness, and Should Be Approved

20.     Entry into the Settlement Agreement is in the best interests of the Lehman

Parties and should be approved under section 105(a) of the Bankruptcy Code and Bankruptcy

Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C.

§ 105(a).  Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and

after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR.

P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed

settlement is fair and equitable and is in the best interests of the estate.  *Fischer v. Pereira* (*In re

47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *Air Line Pilots Ass'n, Int'l v. Am.

Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426

(S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

21.     The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is

the responsibility of a court to examine a settlement and determine whether it "fall[s] below the

lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  A court

may exercise its discretion "in light of the general public policy favoring settlements."  *In re

Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

22.     A court need not conduct a "mini-trial" of the merits of the claims being

settled, *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993), or conduct a full

independent investigation.  *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496

(Bankr. S.D.N.Y. 1991).  "The bankruptcy judge does not have to decide the numerous questions

of law and fact. . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

23.     A court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. at 522; *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

24.     The settlement and compromise set forth in the Settlement Agreement satisfies the standard for approval.  The Lehman Parties have determined that the Settlement Agreement provides a fair and efficient resolution of their disputes with Danske over the Deficiency Claims and Additional Claims and avoids the expense and risk inherent in litigating such claims.

25.     Because the Lehman Parties recognize they may have substantial liabilities arising out of the Deficiency Claims, the prospects of success with respect to defending against the Deficiency Claims are, at best, uncertain, and in any event, will require costly and protracted litigation with Danske, requiring significant expenditures of both time and resources by the Lehman Parties and their professionals.  Moreover, Danske has asserted that the magnitude of its claims actually exceeds the amounts set forth in the Deficiency Claims.  The amount of each Allowed Claim is significantly below the amounts asserted by Danske.  Based upon their analysis of the loan attributes, property information, loan performance and collateral values with respect to the Loans, the Lehman Parties have determined that the amount of the

Allowed Claims set forth in the Settlement Agreement is reasonable, particularly when considered in light of the other benefits of the Settlement Agreement.

26.    Further, the Lehman Parties benefit, directly or indirectly, from Danske's agreement to (a) waive, with prejudice, approximately $40 million of Additional Claims and (b) cause its wholly-owned subsidiary to assign the Playa Pelicano Loan to LCPI or its designee for no additional consideration.

27.    The terms of the Settlement Agreement are the product of an extended, good-faith, arms'-length negotiation process.  The Parties, each represented by competent counsel, participated in numerous meetings and negotiations, as well as voluntary mediation. The terms of the Settlement Agreement provide mutually-acceptable benefits and burdens to the Parties.

28.    The Debtors have kept counsel for the Creditors' Committee apprised of their negotiations with Danske and of the terms of the Settlement Agreement.  The Settlement Agreement has been approved by the real estate subcommittee of the Creditors' Committee, and the Debtors expect that they will have the support of the full Creditors' Committee.

## Notice

29.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee for Region 2; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for Danske; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases, ECF No. 9635.  The Debtors submit that no other or

further notice need be provided.

       30.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

       WHEREFORE the Debtors  respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: October 26, 2011
     New York, New York


                  /s/ Jacqueline Marcus         
                  Jacqueline Marcus

                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York 10153
                  Telephone: (212) 310-8000
                  Facsimile: (212) 310-8007

                  Attorneys for Debtors
                  and Debtors in Possession

**Exhibit A**

**(Settlement Agreement)**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of October 26, 2011 (the "Execution Date"), by and among Lehman Brothers Holdings Inc., a Delaware corporation ("LBHI"), Lehman Commercial Paper Inc., a New York corporation ("LCPI" and together with LBHI, the "Debtors"), Danske Bank A/S, individually and through its London Branch (collectively, "Danske"). The Debtors and Danske shall each be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, LCPI, Danske and certain of their respective Affiliates (as defined below) are parties to that certain Master Repurchase Agreement dated as of August 30, 1999, (as heretofore amended, the "Repurchase Agreement"), pursuant to which LCPI sold to Danske certain residential and commercial loan assets (collectively, the "Loans");

WHEREAS, LCPI, Danske and, in some instances, certain of their respective Affiliates, entered into certain letter agreements dated March 17, 2005 (the "March 17, 2005 Facility Agreement") and March 23, 2007, a Tri-Party Custody Agreement, dated as of April 21, 2006 with The Bank of New York (as successor-by-assignment to JPMorgan Chase Bank, N.A.), as custodian, and various letter agreements (all of the foregoing, together with the Repurchase Agreement, the LBHI Guarantees (as hereinafter defined) and any other documents, instruments or agreements executed and delivered in connection with or pursuant to the Repurchase Agreement being collectively referred to as the "Repo Documents");

WHEREAS, LBHI guaranteed the obligations of LCPI to Danske under the Repurchase Agreement and under the March 17, 2005 Facility Agreement pursuant to those certain Guarantees of Lehman Brothers Holdings Inc. executed on March 19, 2007 and March 17, 2005, respectively (collectively, the "LBHI Guarantees");

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors and certain of their affiliates (collectively, the "Lehman Debtors") commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, Danske filed Proof of Claim No. 19487 against LCPI on September 18, 2009 (the claims thereunder being referred to as the "LCPI Claim") relating to LCPI's obligations under the Repurchase Agreement, in the amount of at least $699,657,333.82;

WHEREAS, Danske filed Proof of Claim No. 17247 against LBHI on September 18, 2009 (the claims thereunder being referred to as the "LBHI Claim" and together with the LCPI Claim, the "Claims") relating to LBHI's obligations under the LBHI Guarantees, in the amount of at least $699,657,333.82;

WHEREAS, Danske filed each of the Proofs of Claim more particularly described on Exhibit A attached hereto and made a part hereof (the claims thereunder being referred to collectively as the "Additional Claims");

WHEREAS, the Parties entered into that certain Pre-Negotiation Agreement, dated as of January 31, 2011 (the "PNA"), setting forth certain understandings with respect to any settlement discussions relating to the Claims, which PNA remains in full force and effect;

WHEREAS, Danske and Goldman Sachs Lending Partners LLC ("Goldman") entered into an assignment agreement (the "GS Agreement") pursuant to which Danske has agreed to sell and Goldman has agreed to purchase, subject to the terms and conditions thereof, undivided percentage interests in the Claims;

WHEREAS, the Parties have entered into that certain Plan Support Agreement, dated as of the date hereof (the "PSA"); and

WHEREAS, the Parties desire to resolve their disputes regarding the Claims and the Additional Claims in the manner and as more particularly provided herein.

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    *Definitions*

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Additional Claims Documents" means any agreements, guarantees or other documents evidencing, securing or otherwise relating to any of the Additional Claims or pursuant to which any of the Additional Claims arise.

"Affiliate" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

"Allowed Claim" shall have the meaning ascribed to such term in the Plan.

"Allowed LBHI Claim" has the meaning ascribed to it in Section 2.2.

"Allowed LCPI Claim" has the meaning ascribed to it in Section 2.1.

"Allowed Repo Claims" has the meaning ascribed to it in Section 2.2.

"Business Day" shall have the meaning ascribed to such term in the Plan.

"Claims Agent" has the meaning ascribed to it in Section 2.6.

"Claims Agent Instruction" has the meaning ascribed to it in Section 2.6.

"Danske Claims" shall have the meaning ascribed to it in Section 8.2.

"Delivery Date" means the date on which the Claims Agent Instruction has been delivered to the Claims Agent by the Debtors pursuant to Section 2.6.

"Effective Date" has the meaning ascribed to it in Section 9.

"Excluded Danske Claims" has the meaning ascribed to it in Section 8.2.

"Final Order" shall have the meaning ascribed to such term in the Plan.

"Indemnitee" has the meaning ascribed to it in Section 5.6.

"LBSF" means Lehman Brothers Special Financing Inc.

"Lehman Assignee" has the meaning ascribed to it in Section 3.

"Lehman US Entity" means the Debtors, LBSF and any direct or indirect parent, subsidiary or Affiliate thereof (other than Lehman Brothers Inc.) that is organized or otherwise created under the laws of the United States of America or any State thereof.

"Lien" means any mortgage, deed of trust, lien, pledge, hypothecation, assignment, security interest, or any other encumbrance, charge or transfer, including any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, the filing of any financing statement, and other similar liens and encumbrances.

"Loan Collateral" means any real or personal property securing, directly or indirectly through a Lien, all or any portion of any Loan.

"Loan Documents" means any and all loan agreements, promissory notes, guarantees, mortgages, assignments, pledge agreements, security agreements, financing statements and any other documents, instruments or agreements evidencing, securing or otherwise relating to any Loan including, without limitation, any and all assignments, allonges, and other documents pursuant to which a Loan was transferred from a Lehman US Entity to Danske.

"Plan" means the Third Amended Joint Chapter Amended Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated September 1, 2011 [Docket No. 19627], as the same may be amended, modified and/or supplemented.

"Plan Effective Date" means "Effective Date" as such term is defined in the Plan.

"Playa Assignment" has the meaning ascribed to it in Section 3.

"Playa Assignment Documents" has the meaning ascribed to it in Section 8.1.

"Playa Borrower" means Playa Pelicano Holdings, SRL.

"Playa Escrow Deliverables" has the meaning ascribed to it in Section 3.

"Playa Loan Agreement" means that certain Loan Agreement dated as of December 4, 2006, between Playa SPE (as successor in interest to Danske, as successor in interest to LBHI) and Playa Borrower, as amended, supplemented, modified, assigned and/or assumed.

"Playa Loan Documents" means the Loan Documents as such term is defined in the Playa Omnibus Assignment.

"Playa Omnibus Assignment" means that certain Omnibus Assignment and Assumption (Playa Pelicano) executed and delivered by LBHI and Danske on June 26, 2009.

"Playa Pelicano Loan" means the loan made pursuant to and/or evidenced by the Playa Loan Agreement and Playa Pelicano Note.

"Playa Pelicano Note" means that certain Promissory Note dated as of December 4, 2006 made payable by Playa Borrower to Playa SPE (as successor in interest to Danske, as successor in interest to LBHI), in the original principal amount of $33,000,000, as amended, supplemented, modified, assigned and/or assumed.

"Playa SPE" means Gonzalo-Playa LLC, a Delaware limited liability company.

"Repo Matters" has the meaning ascribed to it in Section 5.6.

2.    *Allowance of Claims.*

2.1.    *Allowed LCPI Claim.* Upon the Delivery Date, the LCPI Claim shall be reduced and allowed as a non-priority, general unsecured claim against LCPI in a fixed, liquidated amount equal to $580,000,000.00 (the "Allowed LCPI Claim"). The Allowed LCPI Claim shall be classified and treated as an Allowed Claim in LCPI Class 4A under the Plan and shall have the same treatment as other claims within its class. Other than the Allowed LCPI Claim and the Excluded Danske Claims (if any), all other claims (as defined in section 101(5) of the Bankruptcy Code) or receivables asserted or held by Danske against LCPI will be deemed fully and forever expunged, extinguished, disallowed and released.

2.2.    *Allowed LBHI Claim.* Upon the Delivery Date, the LBHI Claim shall be reduced and allowed as a senior non-priority, general unsecured claim against LBHI in a fixed, liquidated amount equal to $580,000,000.00 (the "Allowed LBHI Claim" and together with the Allowed LCPI Claim, the "Allowed Repo Claims"). The Allowed LBHI Claim shall be classified and treated as an Allowed Claim in LBHI Class 5 under the Plan and shall have the same treatment as other claims within its class. Other than the Allowed LBHI Claim and the Excluded Danske Claims, all other claims (as defined in section 101(5) of the Bankruptcy Code) or receivables asserted or held by Danske against LBHI will be deemed fully and forever expunged, extinguished, disallowed and released.

2.3.    *No Objection to Allowed Repo Claims.* From and after the Delivery Date, the Allowed Repo Claims shall not be subject to further reconsideration, increase, reduction, reclassification, subordination, counterclaims, preference claims, fraudulent conveyance claims,

objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under Section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such Allowed Repo Claims to the claims of other general unsecured creditors.

2.4.    *Limitation on Plan Distributions.* Notwithstanding the provisions of Sections 2.1 and 2.2 hereof, in accordance with Sections 8.13(a) and (b) of the Plan, the aggregate recovery of Danske in respect of the Allowed Repo Claims shall not exceed $580,000,000.00.

2.5.    *Additional Claims.* Upon the Delivery Date, Danske shall waive and release the Additional Claims, with prejudice, and such claims shall be deemed fully and forever expunged, extinguished, disallowed and released.

2.6.    *Modification/Withdrawal of Proofs of Claim.* On or at any time after the Effective Date, the Debtors shall be authorized, and under the circumstanced described in Section 10.5, the Debtors shall be obligated, to give written instruction (the "Claims Agent Instruction") and upon receipt of the Claims Agent Instruction the Debtors' Bankruptcy Court-appointed claims agent (the "Claims Agent") shall be permitted, to modify the claims registers to (a) reduce and allow each Claim in the amount of $580,000,000.00, (b) disallow any remaining liquidated or unliquidated amounts asserted in the Claims, and (c) disallow and expunge, with prejudice, the Additional Claims (Proof of Claim Nos. 17272, 17273, 17274 and 17275).

3.    *Playa Pelicano Loan.* Danske hereby represents and warrants that Playa SPE is the sole legal and beneficial owner and holder of the Playa Pelicano Loan and that Playa SPE is a wholly-owned subsidiary of Danske and is under the sole control of Danske. On the Effective Date, Danske shall cause Playa SPE to assign, transfer, convey and deliver to LCPI or such other party as LCPI shall designate (the "Lehman Assignee") and the Lehman Assignee shall accept from Playa SPE all of Playa SPE's right, title, and interest in and to the Playa Pelicano Loan free and clear of any Liens, ownership claims, set-off rights, or participations (the "Playa Assignment"). With respect to the Playa Assignment to the Lehman Assignee, (a) the assignment shall be effectuated pursuant to documents reasonably acceptable to the Parties and substantially similar to the Playa Omnibus Assignment and other documents executed and delivered by or on behalf of LBHI and Danske in connection with LBHI's assignment of the Playa Pelicano Loan to Danske, provided, that the assignment to the Lehman Assignee shall be without any representation or warranty by or other recourse to Playa SPE, except that Playa SPE and Danske will represent and warrant that (i) Playa SPE has good and valid title to the Playa Pelicano Loan and is the sole owner and holder of the Playa Pelicano Loan and the related Playa Loan Documents, free and clear of all Liens, ownership claims, set-off rights, or participations and (ii) Playa SPE has the right to transfer, convey and assign the Playa Pelicano Loan to the Lehman Assignee without the consent or approval of any other person or entity, and (b) Danske will deliver, and will cause Playa SPE to deliver, to the Lehman Assignee all Playa Loan Documents that were delivered by or on behalf of LBHI to Danske in connection with LBHI's assignment of the Playa Pelicano Loan to Danske, including, without limitation, the original Playa Pelicano Note together with an allonge to the Lehman Assignee and all other original Playa Loan Documents delivered to Danske or otherwise in Danske's or Playa SPE's possession or control. Danske hereby covenants and agrees that Playa SPE will not, at any time prior to the

earlier of the termination of this Agreement in accordance with the terms hereof or the assignment and transfer of the Playa Pelicano Loan to the Lehman Assignee pursuant to the terms hereof, without the prior written consent of the Debtors, (a) transfer, assign or convey any of its right, title or interest in the Playa Pelicano Loan to any person or entity, (b) absent any action against the lender by the Playa Borrower, any guarantor, pledgor or other borrower-related loan party, initiate any enforcement action against the Playa Borrower, any guarantor, pledgor or any other loan party under the Playa Loan Documents, or (c) modify, amend or supplement the Playa Pelicano Loan or any of the Playa Loan Documents, or agree to forebear with respect to the enforcement of any rights or remedies or otherwise release, waive, limit or impair any of Playa SPE's rights, remedies or interests thereunder. Notwithstanding the foregoing or anything to the contrary contained herein, Danske shall cause Playa SPE to deliver to counsel for the Debtors, to be held in escrow pending the occurrence of the Effective Date, originals of all Playa Assignment Documents, each duly executed by Playa SPE and each other party (other than the Lehman Assignee), together with all other documents (originals or copies as provided above) required to be delivered to the Lehman Assignee in connection with the Playa Assignment no later than seven (7) Business Days prior to the Effective Date (collectively, the "Playa Escrow Deliverables") such that upon release of such Playa Escrow Deliverables from escrow, all Playa Assignment Documents will be in full force and effect without any further action by Danske, the Playa SPE or any other party other than the Lehman Assignee. All Playa Escrow Deliverables shall be automatically released from escrow on the Effective Date without any further authorization, direction or other action by Danske or Playa SPE.

4.    **Cooperation.**  The Parties agree that they will proceed expeditiously to obtain the Bankruptcy Court's approval of this Agreement, cooperate with each other, and execute and deliver such documents and take such further actions as may be reasonably necessary to implement this Agreement. The Debtors will file a motion under Fed. R. Bankr. P. 9019 on or before October 26, 2011 seeking to approve this Agreement at the next omnibus hearing in the Chapter 11 Cases, now scheduled for November 16, 2011, and the Parties shall actively seek its prompt approval by the Bankruptcy Court. Without limiting the generality of the foregoing, in the event that the motion is not heard at such hearing, or if the Bankruptcy Court does not rule on the motion at the hearing, the Debtors shall seek approval of this Agreement by the Bankruptcy Court on the next scheduled hearing date.

5.    **Danske's Representations and Warranties**.  In order to induce the Debtors to enter into and perform their obligations under this Agreement, Danske hereby represents, warrants, and acknowledges as follows:

5.1.    *Authority.*  (i) Danske has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance by Danske of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of Danske and no other proceedings on the part of Danske are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

5.2.  *Validity*.  This Agreement has been duly executed and delivered by Danske and constitutes the legal, valid and binding agreement of Danske, enforceable against Danske in accordance with its terms.

5.3.  *Authorization of Governmental Authorities and Creditors*.  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by Danske pursuant to this Agreement.

5.4.  *No Reliance*.  Danske (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any Debtor or any of the Debtors' Affiliates, or any officer, employee, agent or representative thereof, and based on such information as Danske has deemed appropriate, made its own analysis and decision to enter into this Agreement (except that Danske has relied upon each Debtor's express representations, warranties and covenants in this Agreement) which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

5.5.  *Title*.  Danske owns all of the legal and, subject to the rights of Goldman under the GS Agreement, all of the beneficial interests in, and has good and valid title to the Claims, free and clear of any and all Liens, claims, set-off rights, or participations, and Danske has not transferred or assigned to any other person or entity any portion of the claims or receivables that are the subject of this Agreement, including the Claims and Additional Claims, other than to Goldman as described below.  The Parties acknowledge that Danske has entered into the GS Agreement pursuant to which Danske has agreed to sell, and Goldman has agreed to purchase, undivided percentage interests in the Claims.  Danske hereby represents and warrants that (a) the sale and transfer of interests in the Claims to Goldman pursuant to the terms of the GS Agreement has not been consummated, (b) the execution and delivery of this Agreement by Danske will not constitute a breach by Danske of its obligations to Goldman under the GS Agreement, (c) Danske has full authority, without the consent or approval of Goldman, to (i) agree to resolve the Claims as provided in this Agreement, and (ii) to reduce the Claims (and modify the corresponding proofs of claim accordingly) to reflect the amount of each of the Allowed Repo Claims, and (d) under the terms of the GS Agreement and the PSA, Goldman's acquisition of any interest in the Claims shall be subject to the terms of this Agreement.

5.6.  *Claims*.  The Allowed Repo Claims constitute all of the claims owned, held or otherwise asserted by Danske or any parent, subsidiary or Affiliate thereof against any Lehman US Entity with respect to, arising from or otherwise relating in any way or manner to the Repurchase Agreement or any of the other Repo Documents, any of the Loans, the Loan Documents, or any of the Loan Collateral (collectively, the "Repo Matters").  The Additional Claims constitute all of the claims owned, held or otherwise asserted by Danske or any parent, subsidiary or Affiliate thereof against any Lehman US Entity with respect to, arising from or otherwise relating in any way or manner to the Additional Claims Documents.  Without limiting the generality of the immediately preceding sentences, the Allowed Repo Claims, Additional Claims and Excluded Danske Claims constitute all of the claims owned, held or otherwise asserted by Danske or any of its subsidiaries listed on Exhibit D attached hereto and made a part

hereof (which Danske hereby represents are all of the material operating subsidiaries of Danske) against any Lehman Debtor. Danske shall indemnify, defend and hold harmless the Debtors and each other Lehman US Entity and their respective officers, directors, partners, members, managers, shareholders, employees and agents (each, an "Indemnitee") from and against any and all losses, claims, damages, liabilities, expenses (including legal fees and expenses), judgments, fines and other amounts suffered or incurred by any Indemnitee by reason of any breach of the representations made by Danske in this Section 5.6.

6.      *Transfer of Claims.*  Notwithstanding anything to the contrary contained in the PSA, Danske shall not, during the period from the Execution Date until the earlier of (a) the termination of this Agreement in accordance with the terms hereof, (b) the Plan Effective Date, or (c) the date as of which both the Effective Date has occurred and the Playa Pelicano Loan has been transferred to the Lehman Assignee pursuant to Section 3 hereof, transfer the Claims or the Additional Claims, or any portion thereof or any interest therein, or any rights or interests arising thereunder or therefrom, in whole or in part, to any person or entity; provided, however, that notwithstanding the foregoing, Danske shall have the right to transfer undivided percentage interests in the Claims to Goldman pursuant to the GS Agreement provided that, in connection with and as a condition to any such transfer, Danske shall obtain from Goldman and deliver to the Debtors a joinder to this Agreement, in form and substance acceptable to the Debtors and Goldman, pursuant to which Goldman agrees to acquire undivided percentage interests in the Claims subject to and to be bound by the terms, provisions and conditions of this Agreement as successor to Danske with respect to any interests it may have in the Claims. The transfer of any Claims or Additional Claims to any transferee (including, without limitation, Goldman) shall not relieve Danske of its obligations hereunder.

7.      *Debtor's Representations and Warranties*.  In order to induce Danske to enter into and perform its obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

7.1.      *Authority*.  Subject to the occurrence of the Effective Date, (i) each Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

7.2.      *Validity*.  Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

7.3.      *Authorization of Governmental Authorities*.  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor of this Agreement, other than entry of a Final Order by the Bankruptcy Court approving this Agreement.

7.4.    *UCC Approval.*  This Agreement has been approved by the real estate subcommittee of the Official Committee of Unsecured Creditors in the Chapter 11 Cases.

7.5.    *No Reliance.*  Each Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon Danske, and based on such information as such Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement (except that such Debtor has relied upon Danske's express representations, warranties and covenants in this Agreement) which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

7.6.    *Additional Claims Documents.*  Each of the Debtors and LBSF hereby waives any claims any of them may have against Danske arising from the Additional Claims Documents.

8.    **Releases.**

8.1.    *Debtors' Releases.*  Effective from and after the Delivery Date, and except as to (i) the agreements, promises, settlements, representations and warranties set forth in this Agreement, the PSA, or in any documents executed and delivered pursuant to Section 3 hereof in connection with the assignment of the Playa Pelicano Loan to the Lehman Assignee (the "Playa Assignment Documents"), (ii) the performance of the obligations set forth herein, in the PSA, or in the Playa Assignment Documents, and (iii) any claims specifically described on Exhibit B attached hereto and made a part hereof, and subject to the effectiveness of this Agreement in accordance with Section 9 hereof, and in consideration of the foregoing and Danske's execution of this Agreement, each Debtor on behalf of itself, its estate, and its successors and assigns, fully and forever releases, discharges and acquits Danske, and its respective officers, directors, employees, shareholders, partners, members, agents, representatives, servants, consultants, financial advisors, accountants, attorneys, successors and assigns of any of the foregoing (but only in their capacities as such), from all manners of actions, causes of actions, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent.

8.2.    *Danske's Releases.*  Effective from and after the Delivery Date, and except as to (i) the agreements, promises, settlements, representations and warranties set forth in this Agreement, the PSA, or in any of the Playa Assignment Documents, (ii) the performance of the obligations set forth herein, in the PSA, or in the Playa Assignment Documents, and (iii) any claims specifically described on Exhibit C attached hereto and made a part hereof (the "Excluded Danske Claims"), and subject to the effectiveness of this Agreement in accordance with Section 9 hereof, and in consideration of the foregoing and each Debtor's execution of this Agreement, Danske on behalf of itself and its successors and assigns, fully and forever releases, discharges

and acquits (a) each Lehman US Entity (other than Playa Pelicano Manager LLC), and its respective officers, directors, employees, shareholders, partners, members, agents, representatives, servants, consultants, financial advisors, accountants, attorneys, successors and assigns of any of the foregoing (but only in their capacities as such), from all manners of actions, causes of actions, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, any administrative expense claims arising under Section 503 of the Bankruptcy Code (collectively, the "Danske Claims") arising from or otherwise relating in any way or manner to the Repo Matters or the Additional Claims, and (b) each Lehman Debtor who is a Lehman US Entity and its respective officers, directors, employees, shareholders, partners, members, agents, representatives, servants, consultants, financial advisors, accountants, attorneys, successors and assigns of any of the foregoing (but only in their capacities as such), from any and all Danske Claims.

9.    *Effectiveness of Agreement*.    This Agreement shall be effective as of the Execution Date, subject only to the approval of this Agreement by the Bankruptcy Court pursuant to a Final Order (the date on which the Bankruptcy Court order approving this Settlement Agreement becomes a Final Order shall be referred to as the "Effective Date"). The Debtors shall provide Danske with prompt notice of the occurrence of the Effective Date. Notwithstanding the foregoing, Sections 4, 9, 10, 11 and 12 shall be fully and unconditionally effective upon the Execution Date.

10.    *Termination*.

10.1.    *Automatic Termination*.    This Agreement shall automatically terminate (i) on any date on which the Bankruptcy Court denies the motion seeking approval of this Agreement with prejudice or (ii) in the event the Effective Date has not occurred on or before March 31, 2012.

10.2.    *Debtors' Right to Terminate*.    The Debtors shall have the right, at their election, to terminate this Agreement by written notice to Danske if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of Danske hereunder, taken as a whole, and Danske shall fail to cure such breach within ten (10) days following written notice of such breach from the Debtors, or (b) the Debtors terminate the PSA pursuant to Section 4.01 thereof or the PSA terminates for any reason other than pursuant to clause (i) or clause (iii) of Section 4.03 thereof.

10.3.    *Danske's Right to Terminate*.    Danske shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if there is a breach, in any material respect, of the representations, warranties and/or covenants of the Debtors hereunder, taken as a whole, and the Debtors shall fail to cure such breach within ten (10) days following written notice of such breach from Danske.

10.4.    *Effect of Termination.*    In the event that this Agreement is terminated, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

10.5.    *Termination of Right to Terminate; Obligation to Deliver Claims Agent Instruction.*    The Parties' respective rights to terminate this Agreement pursuant to Section 10.2 and 10.3 hereof shall terminate on the Delivery Date.    Notwithstanding the foregoing, or anything to the contrary contained herein, if (a) the Playa Escrow Deliverables have been delivered into escrow in accordance with Section 3 hereof, (b) the Effective Date occurs, and (c) the Playa Escrow Deliverables have been released from escrow on the Effective Date as provided under Section 3 hereof, then the Debtors shall deliver to the Claims Agent the Claims Agent Instruction by the close of business on the Effective Date (in which case the Effective Date shall also be the Delivery Date).    If the Playa Escrow Deliverables have not been delivered into escrow in accordance with Section 3 hereof or if the Playa Escrow Deliverables have not otherwise been released from escrow on the Effective Date as provided under Section 3 hereof, then the Debtors shall not be required to deliver to the Claims Agent the Claims Agent Instruction (but may do so in their sole and absolute discretion) and shall retain their right under Section 10.2 hereof to terminate this Agreement at any time prior to the end of the second Business Day after the Effective Date; provided, that if the Debtors, in their sole and absolute discretion and without any obligation to do so, accept delivery of the Playa Escrow Deliverables after the date by which the same are required to have been delivered into escrow pursuant to Section 3 hereof and/or accept, in their sole and absolute discretion and without any obligation to do so, the release of the Playa Escrow Deliverables after the Effective Date but prior to any exercise (and absent any previous exercise) of their right to terminate this Agreement pursuant to Section 10.2 hereof, then upon such release of the Playa Escrow Deliverables, the Debtor shall deliver to the Claims Agent the Claims Agent Instruction by the close of business on the day that such release occurs (provided, that such release must occur prior to 3:00 p.m. Eastern Time on any Business Day or it will be deemed to have occurred on the next Business Day).  Nothing in this Section 10.5 shall in any way or manner impair, reduce, restrict, limit, modify, alter or affect or otherwise constitute a waiver of the right of the Parties to pursue any other rights and remedies they may have as a result of any violation or breach of this Agreement and the Debtors' election not to terminate this Agreement under Section 10.2 for any reason (including, without limitation, for any failure by Danske to deliver, or cause to be delivered, the Playa Escrow Deliverables into escrow in accordance with Section 3 hereof, or failure of such Playa Escrow Deliverables to be released from escrow on the Effective Date as provided in Section 3 hereof) when they may otherwise have the right to do so shall not in any way or manner impair, reduce, limit, modify, alter or affect or otherwise constitute a waiver of any of the Debtors' other rights and remedies, all of which shall be full preserved.

10.6.  *No Limitation of Remedies.* The termination right of each Party set forth in this Section 10 is not intended to be and shall not be an exclusive remedy for such Party but such Party shall further be entitled to all rights and remedies available in equity or at law.

11.  **Jurisdiction and Choice of Law.**

11.1.  *Jurisdiction.* To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, or other court of competent jurisdiction as described above and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in Section 12 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

11.2.  *Choice of Law.* This Agreement and all matters arising out of or relating to this Agreement shall be governed by and interpreted, and construed in accordance with the procedural and substantive laws of the State of New York without reference to its principles as to choice or conflicts of law.

12.  **Notices.** All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

<u>To the Debtors at:</u>

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
Attn: Daniel J. Ehrmann
Facsimile: (646) 834-0874
Email: dehrmann@alvarezandmarsal.com

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Harvey R. Miller, Lori R. Fife and W. Michael Bond
Facsimile: (212) 310-8007
Email: lori.fife@weil.com; harvey.miller@weil.com and michael.bond@weil.com

<u>To Danske at:</u>

Danske Bank A/S, London Branch
75 King William Street
London EC4N 7DT
UK
Attn:  Peter Hughes and Jovan Atkinson
E-Mail: <u>pehu@uk.danskebank.com</u> and joat@uk.danskebank.com

With a copy (which shall not constitute notice) to:

Venable LLP
750 E. Pratt Street, Ninth Floor
Baltimore, MD 21202
Attn: Mitchell Kolkin
E-Mail: mkolkin@venable.com

and to:

Venable LLP
Rockefeller Center
1270 Avenue of the Americas
New York, New York 10019
Attn:  Carollynn H.G. Callari and Michael K. Madden
E-Mail: ccallari@venable.com and mmadden@venable.com

or to such other address as may have been furnished by a Party to each of the other Parties by
notice given in accordance with the requirements set forth above.

13.    *Expenses*.  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

14.    *No Admission of Liability*.  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

15.    *Entire Agreement*.  This Agreement is the final and entire agreement of the Parties regarding the subject matter herein, and supersedes all previous oral and written understandings, negotiations, term sheets, and agreements with respect to the subject matter addressed herein.

16.    *No Oral Modifications*.  This Agreement may not be modified or amended orally. This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of the Debtors must be provided in a writing signed by Danske.  Any waiver of compliance with any term or provision of this Agreement on the part of Danske must be provided in a writing signed by each Debtor.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.  The failure by a Party to exercise or enforce any right hereunder shall not operate as a waiver of such Party's right to exercise or enforce such right or any other right in the future.

17.    *Construction*.  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

18.    *Binding Effect; Successor and Assigns*.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; provided, however, subject to Section 6, no Party may assign its rights or obligations under this Agreement without the prior written consent of the other Party, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

19.    *Counterparts*.  This Agreement may be executed in counterparts (including via electronic means) and copies may be used instead of originals. The executed counterparts shall be construed as and constitute one document.

20.    *Headings; Schedules and Exhibits*.  The section headings herein are provided for convenience only and have no substantive effect on the construction of this Agreement References to sections, unless otherwise indicated, are references to sections of this Agreement. All Schedules and Exhibits to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.  Reference to any Schedule or Exhibit herein shall be to the Schedules and Exhibits attached hereto.

21.     ***Severability and Construction***. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

22.     ***Waiver of Jury Trial.*** EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 22 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above.

DANSKE BANK A/S, individually and on behalf of the London Branch

By: _____

Name: _____

Title: _____


By: _____

Name: _____

Title: _____


LEHMAN COMMERCIAL PAPER INC., a New York corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: _____

Title: _____


LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above.

DANSKE BANK A/S, individually and on behalf of the London Branch

By:_____
   Name:_____
   Title:_____

By:_____
   Name:_____
   Title:_____

LEHMAN COMMERCIAL PAPER INC., a New York corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
   Name:\_\_\_\_\_Daniel Ehrmann_____
   Title:\_\_\_\_\_Authorized Signatory\_\_\_\_\_

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
   Name:\_\_\_\_\_Daniel Ehrmann_____
   Title:\_\_\_\_\_Authorized Signatory\_\_\_\_\_

SIGNATURE PAGE TO SETTLEMENT AGREEMENT (#43750032)

### Joinder of Lehman Brothers Special Financing Inc.

Lehman Brothers Special Financing Inc., a Delaware corporation ("LBSF"), hereby consents and agrees to be bound by the terms, conditions and provisions of Section 7.6 of that certain Settlement Agreement dated as of the date hereof, by and among Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc., and Danske Bank A/S, individually and through its London Branch (the "Settlement Agreement").

LBSF hereby represents and warrants that: (a) it has read and reviewed the terms and provisions of the Settlement Agreement and this Joinder and is familiar with the same, (b) it has taken all necessary action to authorize the execution and delivery of this Joinder, and (c) this Joinder has been duly executed and delivered by or on behalf of LBSF.

Capitalized terms used herein and not otherwise defined herein shall have the respective meanings given to them in the Settlement Agreement.

Executed as of the 26th day of October, 2011.

LEHMAN BROTHERS SPECIAL FINANCING INC., a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory

17

## EXHIBIT A

## ADDITIONAL CLAIMS

Proof of Claim No. 17272 against LBSF filed on September 18, 2009 in the amount of at least $19,575,521.00.

Proof of Claim No. 17273 against LBHI filed on September 18, 2009 in the amount of at least $19,575,521.00.

Proof of Claim No. 17274 against LBHI filed on September 18, 2009 in the amount of at least $365,116.00.

Proof of Claim No. 17275 against LBHI filed on September 18, 2009 in the amount of at least $282,047.22.

## <u>EXHIBIT B</u>

### EXCLUDED LEHMAN CLAIMS

None.

## EXHIBIT C

### EXCLUDED DANSKE CLAIMS

Proof of Claim No. 17270 against Lehman Brothers Commercial Corporation filed on September 18, 2009 in the amount of at least $3,484,759.00.

Proof of Claim No. 17271 against LBHI filed on September 18, 2009 in the amount of at least $3,484,759.00.

Proof of Claim No. 44135 against LBHI filed on October 22, 2009 in the amount of at least $22,810.69 and no greater than $342,000.

Proof of Claim No. 21768 against LBHI filed on September 21, 2009 in the amount of $14,241.00.

Proof of Claim No. 21920 against LBHI filed on September 21, 2009 in the amount of $14,241.00.

Proof of Claim No. 17276 against LBHI filed on September 18, 2009 in the amount of $3,196,744.00.

Proof of Claim No. 17277 against LBSF filed on September 18, 2009 in the amount of $3,196,744.00.

Proof of Claim No. 17278 against LBHI filed on September 18, 2009 in the amount of $2,662,381.88.

Proof of Claim No. 29610 against LBHI filed on September 22, 2009 in the amount of $483,033.00

For purposes of clarification, any claims which have been or may be brought by or through Danske solely in its capacity as custodian or trustee on behalf of the beneficial owners of indebtedness issued by any of the Lehman Debtors (unless Danske and/or a wholly-owned subsidiary of Danske is(are) the sole beneficial owner(s) of such indebtedness) shall be classified as "Excluded Danske Claims" for purposes of this Agreement.

## EXHIBIT D

## MATERIAL OPERATING SUBSIDIARIES

Realkredit Denmark A/S, Kgs. Lyngby
Sampo Bank plc, Helsinki
Sampo Housing Loan Bank plc, Helsinki
Northern Bank Limited, Belfast
Danske Bank International S.A., Luxembourg
ZAO Danske Bank, St. Petersburg
Forsikringsselskabet Danca, Skadeforsikringsaktieselskab af
    1999, Copenhagen
Danica Pension, Livsforsikringsaktieselskab, Copenhagen
Danica Pension Forsakringsaktiebolag, Stockholm
Danica Pensjonsforsikring AS, Trondheim
Danica Life Ltd., Dublin
Addici Holding AB, Stockholm
As Oy Espoon Leppavaaran Aurinkopiha, Helsinki
Danica Ejendomsselskab ApS, Copenhagen
Danske Capital AS, Tallinn
Danske Capital Norge AS, Trondheim
DDB Invest AB, Linkoping
Danske Corporation, Delaware
Danske Invest Management A/S, Copenhagen
Danske Leasing A/S, Birkerod
Danske Markets Inc., Delaware
Danske Private Equity A/S, Copenhagen
Fokus Krogsveen AS, Trondheim
Gonzalo Residential Asset Trust, Delaware
    home a/s, Abyhoj
National Irish Asset Finance Ltd., Dublin
UAB Danske Lizingas, Vilnius

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                          :

In re                                  :       Chapter 11 Case No.
                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :       08-13555 (JMP)
                                          :

                    Debtors.        :       (Jointly Administered)
                                          :

------------------------------------------------------------------x

ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE
9019(b) AUTHORIZING AND APPROVING A SETTLEMENT
AND COMPROMISE WITH DANSKE BANK A/S LONDON BRANCH

Upon the motion (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI"),

Lehman Commercial Paper Inc. ("LCPI"), and Lehman Brothers Special Financing Inc. ("LBSF"

and together with LBHI, LCPI, and their affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession, the "Debtors"), pursuant to section 105(a) of title 11

of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of a Settlement Agreement[1] with

Danske Bank A/S London Branch ("Danske"), as more fully set forth in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

provided to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) the attorneys for Danske; and (vii) all other parties entitled to notice in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases, ECF No. 9635; and the Court having

found and determined that the relief sought in the Motion is in the best interests of the Debtors

and their creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Settlement Agreement is approved, and the Lehman Parties are each duly

authorized to (i) consummate all of the transactions contemplated thereby and (ii) execute and

deliver such documents and instruments and to take such other actions as may be reasonably

necessary to consummate the transactions contemplated by the Settlement Agreement, it being

understood that any actions described in this paragraph taken by the Lehman Parties or any of

their affiliates may be taken without the necessity of any further Court proceedings or approval

and shall be conclusive and binding in all respects on all parties in interest in these cases; and it

is further

ORDERED that upon, and subject to, the terms and conditions set forth in the

Settlement Agreement, the LCPI Claim (Claim No. 19487) shall be reduced and allowed as a

non-priority, general unsecured claim against LCPI in a fixed, liquidated amount equal to

$580,000,000.00 (the "Allowed LCPI Claim"), which shall be classified and treated as an allowed claim in LCPI Class 4A under the Plan; and it is further

ORDERED that upon, and subject to, the terms and conditions set forth in the Settlement Agreement, other than the Allowed LCPI Claim, all other claims or receivables asserted or held by Danske against LCPI shall be deemed fully and forever expunged, extinguished, disallowed and released; and it is further

ORDERED that upon, and subject to, the terms and conditions set forth in the Settlement Agreement, the LBHI Claim (Claim No. 17247) shall be reduced and allowed as a senior non-priority, general unsecured claim against LBHI in a fixed, liquidated amount equal to $580,000,000.00 (the "Allowed LBHI Claim"), which shall be classified and treated as an allowed claim in LBHI Class 5 under the Plan; and it is further

ORDERED that upon, and subject to, the terms and conditions set forth in the Settlement Agreement, other than the Allowed LBHI Claim, all other claims or receivables asserted or held by Danske against LBHI will be deemed expunged, extinguished, disallowed and released; and it is further

ORDERED that upon, and subject to, the terms and conditions set forth in the Settlement Agreement, the Debtors' Court-appointed claims agent is authorized to modify the claims register to reflect the reduction and allowance of the Deficiency Claims as provided herein; and it is further

ORDERED that upon, and subject to, the terms and conditions set forth in the Settlement Agreement, pursuant to section 502(b) of the Bankruptcy Code, Claim No. 17272 against LBSF, Claim No. 17273 against LBHI, Claim No. 17274 against LBHI, and Claim No.

17275 against LBHI (collectively, the "Additional Claims") shall be fully and foreve expunged, extinguished, disallowed and released in their entirety with prejudice; and it is further

ORDERED that upon, and subject to, the terms and conditions set forth in the Settlement Agreement, the Debtors' Court-appointed claims agent is authorized and directed to modify the claims register to reflect the Additional Claims as disallowed and expunged pursuant to this Order; and it is further

ORDERED that the Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that the Bankruptcy Court retains jurisdiction to enforce the Settlement Agreement and any disputes arising thereunder.

Dated: November ____, 2011
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE