WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                               :
In re                                                          :        **Chapter 11 Case No.**
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                                               :
                             **Debtors.**                      :        **(Jointly Administered)**
                                                               :
----------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT
## TO SECTION  362 OF THE BANKRUPTCY CODE
## FOR AN ORDER MODIFYING THE AUTOMATIC STAY
## TO ALLOW ADVANCEMENT OF SETTLEMENT PAYMENTS UNDER
## THE 2007-2008 DIRECTORS AND OFFICERS INSURANCE
## POLICIES BY THE EXCESS POLICY INSURERS

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors"), pursuant to section 362 of title 11 of the United States Code for

an order modifying the automatic stay, to the extent applicable, to permit certain of the Debtors'

insurers of directors' and officers' liability to advance payments in connection with three

settlement agreements: (i) a settlement agreement between 4Kids Entertainment, Inc. ("4Kids")

and certain individual defendants, (ii) a settlement agreement between California Public

Employees' Retirement System ("CalPERS") and certain individual defendants, (iii) a settlement

agreement between American National Life Insurance Company of Texas, Comprehensive

Investment Services Inc., and The Moody Foundation (collectively, "ANICO") and certain

individual defendants, and (iv) a settlement agreement between Washington State Investment

Board ("WSIB") and certain individual defendants, all as more fully described in the Motion,

will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 16, 2011 at 10:00**

**a.m. (Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, shall be filed with

the Bankruptcy Court electronically in accordance with General Order M-242 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:

Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York

10004, Attn:  Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B. Schwartz,

Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New

York 10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq.,

attorneys for the official committee of unsecured creditors appointed in these cases; (v) D'Amato & Lynch, LLP, Two World Financial Center, New York, New York 10281, Attn: Mary Jo Barry, Esq. and Catherine Casavant, Esq., Bressler, Amery & Ross, P.C., 17 State Street, New York, NY 10004, Attn: Robert Novack, Esq., and Wilson Elser Moskowitz Edelman & Dicker LLP, 3 Gannett Drive, White Plains, New York 10604, Attn: Alicia Silver Santocki, Esq., attorneys for the respective "Excess Policy Insurers" (vi) Krebsbach & Snyder, PC, Attn: Theodore R. Snyder, 55 Broadway, New York, New York, 10006, attorneys for the "4Kids Defendants"; (vii) Eiseman Levine Lehrhaupt & Kakoyiannis, P.C., 805 Third Avenue, New York, NY, 10022, Attn: Eric B. Levine, Esq., attorneys for 4Kids; (ix) Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101-3301, Attn: Thomas E. Elger, Esq. and David C. Walton, Esq., attorneys for CalPERS, ANICO and WSIB; (x) Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Adam J. Wasserman, Esq., attorneys for the outside director defendants named in the CalPERS, ANICO and WSIB related legal proceedings; (xi) Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020  Attn: Patricia M. Hynes, attorneys for Richard S. Fuld, Jr. in the CalPERS, ANICO, and WSIB related legal proceedings; Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York, Attn: Mary Elizabeth McGarry, attorneys for Christopher M. O'Meara in the CalPERS, ANICO, and WSIB related legal proceedings; (xii) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Mark E. Davidson, attorneys for Erin Callan in the CalPERS and ANICO related legal proceedings; (xiii) Finn Dixon & Herling LLP, 177 Broad Street, Stamford, CT 06901-2048, Attn: Alfred U. Pavlis, attorneys for Erin Callan in the WSIB related legal proceedings; (xiv) Martin J. Auerbach, Esq., 1540 Broadway, Suite 1604. New York NY 10036, attorney for Ian Lowitt in the ANICO related legal

proceedings; and (xv) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York, 10004, Attn: Israel David, attorneys for Joseph M. Gregory in the ANICO related legal proceedings, so as to be so filed and received by no later than **November 9, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  October 26, 2011
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                                           :

**In re**                         :          **Chapter 11 Case No.**

                                :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :      **08-13555 (JMP)**

                                :

                      **Debtors.**      :      **(Jointly Administered)**

                                :
------------------------------------------------------------------- x

## DEBTORS' MOTION PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT OF DEFENSE EXPENSES UNDER THE 2007-2008 DIRECTORS AND OFFICERS <u>INSURANCE POLICIES BY THE EXCESS POLICY INSURERS</u>

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), file this motion and respectfully represent:

### <u>Preliminary Statement</u>

        1.      On twelve prior occasions, the Court has modified the automatic stay provided for under section 362(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),

to the extent applicable, to remove any impediments to payment by certain of the Debtors'
insurers of directors' and officers' coverage of settlement amounts, Defense Expenses[1] or fees
that current or former directors, officers, and employees of the Debtors incurred or were
incurring as defendants in ongoing lawsuits, arbitration proceedings, regulatory and other
investigations.[2]  By this Motion, the Debtors seek relief to modify the automatic stay to permit
the payment of settlement costs in accordance with the terms and conditions of certain settlement
agreements, as described below, to the extent necessary, by the following excess policy insurers:
(i) Certain Underwriters at Lloyd's, London, subscribing to policy number QA017007
("Lloyd's"), and Illinois National Insurance Company subscribing to policy number 7421436
("Illinois National"), the Debtors' thirteenth and fourteenth level excess insurers respectively,
under the Debtors' 2007-2008 directors and officers liability insurance program (the "2007-2008
D&O Policies"), and (ii) Chartis Excess Limited (f/k/a Starr Excess Liability Insurance
International Limited) subscribing to policy number 6299064 ("Chartis Excess") and Axis

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the applicable Excess Insurance
Policies (as defined herein).

[2] *See* Orders dated March 25, 2009 [ECF No. 3220] (modifying the automatic stay to allow advancement of Defense
Expenses with respect to XL Specialty Insurance); November 23, 2009 [ECF No. 5906] (modifying the automatic
stay to allow advancement of Defense Expenses with respect to Federal Insurance Company); December 17, 2009
[ECF No. 6297] (modifying the automatic stay to allow payment of settlement amounts by XL Specialty Insurance
Company and Federal Insurance Company); August 20, 2010 [ECF No. 10945] (modifying the automatic stay to
allow advancement of Defense Expenses with respect to Continental Casualty Company, Certain Underwriters at
Lloyd's, London, and U.S. Specialty Insurance Company (HCC)); November 18, 2010 [ECF No. 12896] (modifying
the automatic stay to allow advancement of Defense Expenses with respect to Zurich American Insurance Company,
ACE Bermuda Insurance Ltd, St. Paul Mercury Insurance Company, XL Specialty Insurance Company and Federal
Insurance Company); November 18, 2010 [ECF No. 12895] (modifying the automatic stay to allow payment of
settlement amounts by Certain Underwriters at Lloyd's, London and London Market Company); January 13, 2011
[ECF No. 13929] (modifying the automatic stay to allow payment of settlement amount by U.S. Specialty Insurance
Company and Zurich American Insurance Company); March 23, 2011 [ECF No. 15277] (modifying the automatic
stay to allow payment of settlement amounts by Zurich American Insurance Company); July 21, 2011 [ECF No.
18691] (modifying the automatic stay to allow payment of an arbitral award by Zurich American Insurance
Company and ACE Bermuda Insurance Ltd.); September 15, 2011 [ECF No. 20017] (modifying the automatic stay
to allow payment of settlement amounts by certain excess policy insurers); October 19, 2011 [ECF No. 21029]
(modifying the automatic stay to allow settlement payment under the Excess Insurance Policies); October 19, 2011
[ECF No. 21039] (modifying the automatic stay to allow advancement of Defense Expenses with respect to the
Debtors' twelfth through fifteenth level Excess Policy Insurers) (collectively, the "Prior Stay Orders").

Specialty Limited Bermuda subscribing to policy number 1130900107QA ("Axis Bermuda"),

the Debtors' fifteenth level excess quota-share insurers under the 2007-2008 D&O Policies and,

together with Lloyd's and Illinois National, the "Excess Policy Insurers" and their respective

policies "Excess Insurance Policies").[3]

2.    For Claims made against certain former and current directors, officers,

and employees of the Debtors (collectively, the "Insureds") during the period from May 16, 2007

to May 16, 2008 (the "2007-2008 D&O Policy Period"), the Debtors purchased primary directors

liability insurance from XL Specialty Insurance Company ("XL") plus additional excess

coverage from sixteen (16) other carriers of up to $250 million in the aggregate.  The excess

policies, including the Excess Insurance Policies, are all "follow form" policies subject to

additional independent terms and conditions.  That is, the terms and conditions of the primary

2007-2008 D&O Policy govern the terms and conditions of each of the excess 2007-2008 D&O

Policies, except that each of the excess insurer's respective obligations are subject to certain

additional terms and conditions, such as limits of liability, and attach only after all "Loss"

(defined as settlement payments, defense fees, costs and expenses and judgments, among other

things) within the respective limits of liability of the underlying policies has been paid.

3.    Pursuant to the Prior Stay Orders, the limits of liability of the Debtors'

primary and first through twelfth level excess insurers for the 2007-2008 D&O Policy Period

aggregating $200 million have been or will be fully and completely exhausted by payment of

Losses.  Accordingly, the individual Insureds will need to look to the thirteenth, fourteenth and

fifteenth level excess insurers for the 2007-2008 D&O Policy Period for coverage, which was

procured pre-petition by the Debtors for the benefit of their directors, officers, and employees.

---

[3] The Excess Insurance Policies are attached hereto as Exhibit A.

Collectively, the Excess Policy Insurers provide $50 million in coverage for the 2007-2008 D&O

Policy Period.[4]  It is anticipated that the insurance proceeds available under these remaining

levels of the 2007-2008 D&O Policies may be exhausted by approximately the end of this year.

4.      As with the Prior Stay Orders, the Debtors seek to assure the Excess

Policy Insurers that they can make settlement payments on behalf of the applicable Insureds,

without concern that, if the automatic stay is otherwise applicable, they are violating the

automatic stay.  Granting the relief requested by this Motion is unlikely to have any adverse

effect on the Debtors' estates and creditors because the interests of the Debtors, if any, in the

proceeds of the D&O Policies is expressly subordinate to the interest of the individual Insureds.

Specifically, the applicable insurance policies provide that the Debtors have rights to the

insurance proceeds only after the insured individuals are fully reimbursed for any Loss, including

settlement payments.  As such, granting the relief requested by this Motion is unlikely to have

any adverse effect on the Debtors' estates and creditors.  In addition, pursuant to the respective

settlement agreements described below, the Debtors will receive releases of all claims that were

or could have been asserted against them in connection with the settled arbitrations.

Accordingly, granting the relief requested herein is in the best interest of the Debtors' estates and

creditors.

## **Background**

5.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced

voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

---

[4] Specifically, Lloyd's provides coverage of $10 million in excess of $200 million, Illinois National provides coverage of $20 million in excess of $210 million, Axis Bermuda and Chartis Excess collectively provides coverage of $20 million in excess of $230 million.

Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

6.       On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

7.       On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

8.       On September 1, 2011, the Debtors filed a third amended joint

chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF

Nos. 19627 and 19629].  On September 1, 2011, the Bankruptcy Court entered an amended

order [ECF No. 19631] approving the Disclosure Statement, establishing solicitation and voting

procedures in connection with the Plan, scheduling the confirmation hearing and establishing

notice and objection procedures for the confirmation hearing.

## Jurisdiction

9.       This Court has subject matter jurisdiction to consider and determine

this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §

157(b).

## Relief Requested

10.    The Debtors seek the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow settlement payments by the Excess Policy Insurers, that are, or will become, owing to certain individual Insureds, to the extent they are obligated to contribute, pursuant to the terms, conditions and limitations of their respective policies, and in accordance with (i) a settlement agreement between 4Kids Entertainment, Inc. ("4Kids") and certain individual Insureds, (ii) a settlement agreement between California Public Employees' Retirement System ("CalPERS") and certain individual Insureds, (iii) a settlement agreement between American National Life Insurance Company of Texas, Comprehensive Investment Services Inc., and The Moody Foundation (collectively, "ANICO") and certain individual Insureds, and (iv) a settlement agreement between Washington State Investment Board ("WSIB") and certain individual Insureds (collectively, the "Settlement Agreements").[5]  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

## The Debtors' Directors' and Officers' Liability Insurance Policies

11.    Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors and officers ("D&O") liability insurance, which provides coverage for the Debtors' current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.

---

[5] The Settlement Agreements have not been attached to this Motion because the Debtors are not parties thereto and the provisions that are relevant to the Debtors are those described in paragraphs 21 - 24 hereof with respect to settlement payments derived from proceeds of the Excess Insurance Policies.

6

12.     As discussed above, Subject to their terms, conditions, limitations and exclusions, the 2007-2008 D&O Policies cover Loss incurred as a result of Claims made during the 2007-2008 Policy Period for Wrongful Acts allegedly committed by the individual Insureds in their capacity as directors, officers or employees of LBHI and its subsidiaries.   Coverage under Insuring Agreement (A) for non-indemnifiable loss ("Side A") of the 2007-2008 D&O Policies is immediately available to the individual Insureds, which includes certain of the Debtors' present and former officers, directors, and employees, for any Loss resulting from Claims made under the 2007-2008 D&O Policies that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

13.     Furthermore, the 2007-2008 D&O Policies contain "Priority of Payments" provisions, which provide that when competing claims for coverage under both Side A, as described above, and Insuring Agreement (B) ("Side B") (covering indemnifiable Claims made against present and former officers, directors and employees) are made, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ."  *See* 2007-2008 D&O Policies, Endorsement 22.  Thus, the Excess Insurance Policies, by virtue of Insuring Agreement A and the Priority of Payments provision, provides for the immediate payment of settlement costs on behalf of the Insured Persons ahead of any payment that may be made to the Debtors.

### The Legal Proceedings

14.     The "Individual Defendants," as defined below, are defendants in one or more multiple civil actions brought on behalf of purported classes and individuals and/or are within the scope of certain arbitrations or criminal, regulatory or other investigations, more fully

described below.   Although certain Debtors were named as defendants in some of the Legal

Proceedings, they are not participating in those proceedings pursuant to the automatic stay.

15.     Both prior to and after the collapse of the Lehman enterprise in

September 2008, various securities actions were commenced against certain current and former

officers, directors and employees of Lehman in both federal and state courts and before various

regulatory agencies.

16.     On October 14, 2011, the following individual Insureds, Richard S.

Fuld, Jr., Christopher M. O'Meara, Erin Callan, Michael Ainslie, John F. Akers, Roger S.

Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A.

Hernandez, Henry Kaufman, and John D. Macomber (collectively, the "CalPERS Defendants")

entered into a settlement agreement with CalPERS (the "CalPERS Settlement Agreement"),

relating to the action pending in the U.S. District Court for the Southern District of New York

(the "District Court") captioned *In re: Lehman Brothers Securities and ERISA Litigation*, Master

Docket No. 09 MD 2017 (LAK) (S.D.N.Y.) (the "CalPERS Action").[6]  The CalPERS Action

alleges misrepresentations and omissions in Lehman offering materials and asserts claims for

violations of the Securities Act of 1933 and the Exchange Act of 1934, arising from Plaintiff's

alleged purchases of more than $700 million in Lehman securities allegedly purchased between

June 12, 2007 and September 15, 2008.

17.     In relation to an action originally filed in the Superior Court of the State

of Washington, captioned *Washington State Investment Board v. Fuld, et. al.*, No. 3:09-cv-5331

---

[6] The CalPERS Action was originally filed in the United States District Court for the Northern District of California, captioned *The California Public Employees' Retirement System v. Richard S. Fuld, Jr., et al.*, Case No. 3:11-cv-00562. The action was then transferred to the District Court pursuant to a transfer order from the Judicial Panel on Multidistrict Litigation, in an action captioned *The California Public Employees' Retirement System v. Richard S. Fuld, Jr., et al.*, No. 11-cv-01281- LAK (S.D.N.Y.).

(BHS) and subsequently transferred to the District Court and coordinated with the master MDL case captioned *In re: Lehman Brothers Securities and ERISA Litigation*, Master Docket No. 09 MD 2017 (LAK) (S.D.N.Y.) (the "WSIB Action"), the following individual Insureds were named as defendants, Richard S. Fuld, Jr., Christopher M. O'Meara, Erin Callan, Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber (collectively, the "WSIB Defendants").  The WSIB Action alleges misrepresentations and omissions in Lehman offering materials and asserts claims for violations of the Securities Act of 1933 and for violations of Washington statutory and common law, arising from Plaintiff's purchases of approximately $130 million in Lehman securities allegedly purchased between October 17, 2006 and March 31, 2008.  On October 24, 2011, the WSIB Defendants entered into a settlement agreement WSIB (the "WSIB Settlement Agreement").

18.    In connection with an action currently pending in the District Court entitled *American National Insurance Company v. Fuld, et. al.*, Case No. 1:09-cv-02363-LAK (the "ANICO Action"), the following individual Insureds were named as defendants, Joseph Gregory, Ian Lowitt, Richard S. Fuld, Jr., Christopher M. O'Meara, Erin Callan, Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber (collectively, the "ANICO Defendants").  The ANICO Action alleges misrepresentations and omissions in Lehman offering materials and asserts claims for violations of the Securities Act of 1933 and the Exchange Act of 1934, and for violations of Texas statutory and common law, arising from Plaintiffs' purchases of approximately $20 million in Lehman securities allegedly purchased

between April 25, 2006 and April 25, 2008.  On October 26, 2011, the ANICO Defendants

entered into a settlement agreement with ANICO (the "ANICO Settlement Agreement").

19.    On October 18, 2011 the following individual Insureds, Sanford A.

Haber, Neil J. Greenspan and Borislav V. Kolev (the "4Kids Defendants") entered into a

settlement agreement with 4Kids (the "4Kids Settlement Agreement"), relating to an arbitration

proceeding captioned *4Kids Entertainment, Inc. v.  Sanford A. Haber, Neil J. Greenspan and

Borislav V. Kolev, FINRA Dispute Resolution Arbitration Number 08-01001* (the "4Kids

Arbitration" and, together with the CalPERS Action and ANICO Action, the "Actions").  The

4Kids Arbitration relates to alleged common law and securities law violations by the 4Kids

Defendants in connection with approximately $36 million in damages allegedly suffered as a

result of investments made by 4Kids in certain auction rate securities.  The 4Kids Arbitration is

pending before an Arbitral Tribunal constituted under the rules of the Financial Industry

Regulatory Authority.

20.    LBHI and the other Debtors are not named as respondents or

defendants, as applicable, in any of the Actions and are not parties to any of the Settlement

Agreements.  There have been no proof claims filed against LBHI or the other chapter 11

Debtors by 4Kids, CalPERS, WSIB or ANICO in connection with their claims asserted in or

related to the respective Actions.

## The Settlement Agreements

21.    CalPERS and the CalPERS Defendants have agreed to settle the

disputes outstanding between them, including those that are the subject of the CalPERS Action.

The salient terms of the CalPERS Settlement Agreement are as follows:[7]

- The effectiveness of the CalPERS Settlement Agreement is subject to entry of an order in the Debtors' chapter 11 cases granting relief from the automatic stay, to the extent applicable, to permit any applicable Excess Policy Insurer to pay the CalPERS Settlement Amount to CalPERS as provided in the CalPERS Settlement Agreement (an order modifying the automatic stay, to the extent applicable, to permit an insurer to pay a settlement is hereinafter referred to as a "Bankruptcy Court Order");

- CalPERS will receive a settlement payment totaling $11,000,000 (the "CalPERS Settlement Amount") from the applicable Excess Policy Insurers.

- Payment of the CalPERS Settlement Amount into an escrow account within twenty (20) business days following entry of an order by the Court granting the relief requested in this Motion; and

- CalPERS releases claims against the CalPERS Defendants that are insured under the Excess Insurance Policies, the Debtors, Lehman Brothers Inc. ("LBI"), and certain other releasees that:  (i) concern CalPERS investments in Lehman securities, (ii) CalPERS brought in the CalPERS Action, (iii) relate to any of the Claims asserted or facts alleged in the CalPERS Action or the subject matter thereof, which Claims CalPERS ever had, now has, or hereafter may have against any and all of the CalPERS Defendants, the Debtors or LBI; except that CalPERS will retain certain claims against Lehman that are unrelated to the claims that are the subject of the CalPERS Action;

- The CalPERS Defendants release CalPERS and its counsel from all claims known and unknown, that arise from, or relate to (a) CalPERS' investments in Lehman securities, (b) the subject matter of the CalPERS Action or (c) the facts alleged in any complaint filed in the CalPERS Action; and

- CalPERS shall dismiss the CalPERS Action with prejudice within five (5) business days after the following three events have occurred: (i) the CalPERS Settlement Agreement has been approved by the CalPERS

---

[7] To the extent there is an inconsistency between this summary and the CalPERS Settlement Agreement, the terms of the CalPERS Settlement Agreement shall control.  Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the CalPERS Settlement Agreement.

Board of Administration, (ii) the Bankruptcy Court Order has been entered by the Court and has become final, and (iii) a Bar Order has been entered by the District Court and has become final.

22.    WSIB and the WSIB Defendants have agreed to settle the disputes outstanding between them, including those that are the subject of the WSIB Action.  The salient terms of the WSIB Settlement Agreement are as follows:[8]

- The WSIB Settlement is subject to the entry of a Bankruptcy Court Order, to permit the Excess Policy Insurers to pay the WSIB Settlement Amount;

- WSIB will receive a settlement payment totaling $1,500,000 (the "WSIB Settlement Amount") from the applicable Excess Policy Insurers.

- Payment of the WSIB Settlement Amount into an escrow account within twenty (20) business days following entry of an order by the Court granting the relief requested in this Motion; and

- WSIB releases claims, known or unknown, against the WSIB Defendants that are insured under the Excess Insurance Policies, the Debtors, LBI, and certain other releasees, that arise from, or relate to: arise from, or relate to (a) Plaintiff's investments in Lehman securities, (b) the subject matter of the WSIB Action or (c) the facts alleged in any complaint filed in the WSIB Action; except that WSIB will retain certain claims against Lehman that are unrelated to the claims that are the subject of the WSIB Action;

- The WSIB Defendants release WSIB and its counsel from all claims known and unknown, that arise from, or relate to (a) WSIB's investments in Lehman securities, (b) the subject matter of the WSIB Action or (c) the facts alleged in any complaint filed in the WSIB Action; and

- WSIB shall dismiss the WSIB Action with prejudice within five (5) business days after the following two events have occurred: (i) the Bankruptcy Court Order has been entered by the Court and has become final, and (ii) a Bar Order has been entered by the District Court and has become final.

---

[8] To the extent there is an inconsistency between this summary and the WSIB Settlement Agreement, the terms of the WSIB Settlement Agreement shall control.  Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the WSIB Settlement Agreement.

23. ANICO and the ANICO Defendants have agreed to settle the disputes outstanding between them, including those that are the subject of the ANICO Action. The salient terms of the ANICO Settlement Agreement are as follows:[9]

- The ANICO Settlement is subject to the entry of a Bankruptcy Court Order, to the extent applicable, to permit the Excess Policy Insurers to pay the ANICO Settlement Amount;

- ANICO will receive a settlement payment totaling $1,000,000 (the "ANICO Settlement Amount") from the applicable Excess Policy Insurers.

- Payment of the ANICO Settlement Amount into an escrow account within twenty (20) business days following entry of an order by the Court granting the relief requested in this Motion;

- ANICO releases claims against the ANICO Defendants that are insured under the Excess Insurance Policies, the Debtors, LBI and certain other releasees, that arise from, or relate to: (a) Lehman, (b) ANICO's investments in Lehman securities, (c) the subject matter of the ANICO Action or (d) the facts alleged in any complaint filed in the ANICO Action;

- The ANICO Defendants release ANICO and its counsel from all claims known and unknown, that arise from, or relate to (a) the institution, prosecution, assertion, settlement or resolution of the ANICO Action, (b) the claims asserted or facts alleged in the ANICO Action, and (c) the subject matter of the ANICO Action; except that ANICO retains contractual claims relating to their status as noteholders; and

- ANICO shall dismiss the ANICO Action with prejudice within five (5) business days after the following two events have occurred: (i) the Bankruptcy Court Order has been entered by the Court and has become final, and (ii) a Bar Order has been entered by the District Court and has become final.

24. 4Kids and the 4Kids Defendants have agreed to settle the disputes outstanding between them, including those that are the subject of the 4Kids Arbitration. The salient terms of the 4Kids Settlement Agreement are as follows:[10]

---

[9] To the extent there is an inconsistency between this summary and the ANICO Settlement Agreement, the terms of the ANICO Settlement Agreement shall control. Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the ANICO Settlement Agreement.

- The effectiveness of the 4Kids Settlement Agreement is subject to (i) entry of a Bankruptcy Court Order, to permit the Excess Policy Insurers to pay the 4Kids Settlement Amount , and (ii) the chapter 11 cases of 4Kids pending in the United States Bankruptcy Court for the Southern District of New York captioned *In re 4Kids Entertainment, Inc. et al.*, Case No. 11-11607-scc (the "4Kids Bankruptcy Case"), granting approval of the terms of the 4Kids Settlement Agreement;

- 4Kids will receive a settlement payment totaling $500,000 (the "4Kids Settlement Amount" and, together with the CalPERS Settlement Amount, WSIB Settlement Amount and ANICO Settlement Amount, the "Settlement Amounts") from Lloyd's, or another Excess Policy Insurer to the extent that the limits of the Lloyd's Policy have been exhausted.

- Within 14 business days after entry of a final order by this Court and the court in the 4Kids Bankruptcy Case, the applicable Excess Policy Insurer shall pay the 4Kids Settlement Amount to 4Kids from the proceeds of the applicable Excess Insurance Policies;

- 4Kids releases any and all claims against the 4Kids Defendants that are insured under the Excess Insurance Policies, the Debtors and individuals formerly employed at LBI that:  (i) concern 4Kids LBI account, (ii) 4Kids brought in the Arbitration, (iii) relate to any of the Claims asserted or facts alleged in the 4Kids Arbitration or the subject matter thereof, or (iv) that are based on the defense, settlement, or resolution of the 4Kids Arbitration, which Claims 4Kids ever had, now has, or hereafter may have against any and all of the 4Kids Defendants, the Debtors or former employees of LBI.

- 4Kids reserves all rights with respect to any and all Claims that it has asserted, may have or may seek to assert against LBI or its bankruptcy estate in any SIPA proceeding or otherwise; and

- No later than ten (10) business days after receipt of the 4Kids Settlement Amount, 4Kids shall dismiss the 4Kids Arbitration with prejudice.

**To the Extent it Applies, Cause Exists to Modify the Automatic Stay
to Authorize the Excess Policy Insurers to Pay the Settlement Amounts**

25.    Pursuant to the Prior Stay Orders, this Court has granted relief that is

similar to the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors

---

[10] To the extent there is an inconsistency between this summary and the 4Kids Settlement Agreement, the terms of the 4Kids Settlement Agreement shall control.  Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the 4Kids Settlement Agreement.

on one hand and the CalPERS Defendants, the WSIB Defendants, the ANICO Defendants, and the 4Kids Defendants (collectively, the "Individual Defendants"), on the other, that are governed by the same terms and conditions as the Excess Insurance Policies. Accordingly, because cause to modify the automatic stay was found to exist under the Prior Stay Orders, *a fortiori*, such cause exists here as well. If, however, the Debtors must independently demonstrate that such cause exists to allow the Excess Policy Insurers to pay the Settlement Amounts, as described below, it is beyond peradventure that such a modification of the automatic stay is warranted.

A.      The Proceeds Are Not Property of the Estate

          26.      Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate. It is well-settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988). However, courts have distinguished between ownership of a *policy* and ownership of the *proceeds* of a policy. While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's

indemnification right under the policy was speculative and direct coverage of debtor under

policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

(holding that proceeds of a D&O policy belonged only to the officers and directors and,

therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805,

809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers

and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*,

238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity

coverage were highly remote and therefore proceeds were not property of estate).

      27.    In determining whether proceeds are property of the estate, courts

review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also*

*In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455

(Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must

be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the

pertinent contractual provisions under applicable state law").

      28.    The Excess Insurance Policies contain an unambiguous priority of

payments endorsement that expressly subordinates any potential rights of the Debtors to

proceeds payable under the Excess Insurance Policies to the rights of the Individual Defendants.

The priority of payments endorsement is an enforceable contractual provision and should be

upheld for the benefit of the Individual Defendants as intended. *See In re Enron Corp.*, Case No.

01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) [ECF No. 3278] (holding that priority of payment

provision was an enforceable contractual right).

      29.    Consistent with the purpose of such policies, the Debtors purchased the

Excess Insurance Policies primarily to provide insurance coverage to their officers and directors,

including the Individual Defendants. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). The Debtors' speculative rights to any residual proceeds, which would be payable only in the event that the Debtors indemnified the Individual Defendants and which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.    **Cause Exists to Modify the Automatic Stay, to the Extent
      That it Applies, to Allow Payment of the Settlement Amount.**

         30.    Even if the proceeds from the Excess Insurance Policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow for the payment of the Settlement Amounts as required under the Excess Insurance Policies. It is not uncommon for courts to grant stay relief to allow payment of settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

         31.    Allowing the Excess Policy Insurers to pay the Settlement Amounts will, in fact, benefit the Debtors' estates. The Debtors believe that they have an obligation, albeit a pre-chapter 11 obligation, under their by-laws to advance the settlement costs incurred by the Individual Defendants. Moreover, as discussed above, the Debtors will also obtain certain releases as a result of the Settlement Agreements.

         32.    Modifying the automatic stay will not adversely impact the Debtors' estates. As explained above, any rights the Debtors have to the proceeds are contractually subordinated to the rights of the Individual Defendants pursuant to the priority of payments clause. Absent settlement of the Actions, the Debtors are potentially exposed to claims of

indemnification by the Individual Defendants against the estates and may be liable for the payment of the respective settlement amounts pursuant to the advancement obligations set forth in their by-laws.  None of the Debtors are named as defendants in the Actions and none are party to the agreements settling the Actions.

33.    Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the Excess Insurance Policies, the Debtors submit that any such interest is nominal and in any event cannot be determined until the Individual Defendants' losses have been quantified and paid.  Advancing the Settlement Amounts pursuant to the Excess Insurance Policies, which represents a *de minimis* percentage of the Debtors' total outstanding coverage under its primary and excess 2007-2008 D&O Policies, is appropriate.  Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Excess Policy Insurers to pay the Settlement Amounts pursuant to the terms of the individual Settlement Agreements and subject to the terms of the Excess Insurance Policies.

34.    In making this Motion, neither the Debtors, the Individual Defendants, nor the Excess Policy Insurers are waiving any of their respective rights under the Excess Insurance Policies or any other insurance policy.  In addition, the Debtors are not seeking a determination of Excess Policy Insurers' obligation to pay any settlement costs under the Excess Insurance Policies or any overt or implicit coverage findings or determinations.  Rather, the Debtors seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow the Excess Policy Insurers to make payment of the respective settlement amounts to the extent they are obligated to contribute pursuant to the terms, conditions and limitations of their respective policies.

## Waiver of Bankruptcy Rule 4001(a)(3)

35.      As the proceeds of the Lloyd's Policy are finite and, to facilitate a smooth transition and avoid any interruption in coverage for payment of settlement amounts, the Debtors request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

## Notice

36.      No trustee has been appointed in these cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys or representatives of each of the Excess Policy Insurers; (vii) the attorneys of each of the Individual Defendants and (viii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: October 26, 2011
      New York, New York

                                        /s/ Richard P. Krasnow
                                        Richard P. Krasnow
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | : | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER THE 2007-2008 DIRECTORS AND OFFICERS INSURANCE <u>POLICIES BY THE EXCESS POLICY INSURERS</u>

Upon the motion, dated October 26, 2011 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession (together, the "<u>Debtors</u>"), pursuant to section 362(d) of title 11 to the

United States Code (the "<u>Bankruptcy Code</u>") and Rule 4001(a)(3) of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for an order modifying the automatic stay, to

the extent applicable, to allow the Excess Policy Insurers[1] under the 2007-2008 D&O Policies, to

pay the Settlement Amounts in connection with the terms of (i) a settlement agreement between

4Kids Entertainment, Inc. and the 4Kids Defendants, (ii) a settlement agreement between

California Public Employees' Retirement System and the CalPERS Defendants, (iii) a settlement

agreement between American National Life Insurance Company of Texas, Comprehensive

Investment Services Inc., and The Moody Foundation and the ANICO Defendants, and (iv) a

settlement agreement between Washington State Investment Board and the WSIB Defendants

(collectively, the "<u>Settlement Agreements</u>"), all as more fully described in the Motion; and the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the second amended order entered on

June 17, 2010, governing case management and administrative procedures for these cases [ECF

No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) the attorneys or representatives of each of the Excess Policy Insurers;

and (vii) all parties who have requested notice in these chapter 11 cases, and it appearing that no

other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Motion; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow payment of the Settlement Amounts provided for in the Settlement Agreements

on behalf of the Individual Defendants named as defendants in the Actions from the Excess

Policy Insurers pursuant to the terms of their respective Policies; and it is further

ORDERED the Debtors are authorized to execute all documentation necessary to

allow the Excess Policy Insurers to fund the Settlement Amounts on behalf of the Individual

Defendants pursuant to the Settlement Agreements; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights

and obligations of the Excess Policy Insurers, the Debtors or the Individual Defendants provided

for under the terms, conditions and limitations of the Policies; and it is further

ORDERED that all parties to the Excess Insurance Policies reserve all rights and

defenses that they would otherwise have with respect thereto; and it is further

ORDERED that nothing in this Order shall constitute a determination that the

proceeds of the Excess Insurance Policies are property of the Debtors' estates, and the rights of

all parties in interest to assert that the proceeds of the Excess Insurance Policies are, or are not,

property of the Debtors' estates are hereby reserved; and it is further

ORDERED that nothing in this Order shall constitute a determination of the

Excess Policy Insurers' obligation to pay any settlement costs under the Excess Insurance

Policies or any other insurance policies, or any overt or implicit coverage findings or

determinations; and it is further

ORDERED that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) is

waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated:  November __, 2011
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE