

Bermuda Branch
29 Richmond Road, Pembroke HM 08 Bermuda
P.O. Box HM 152, Hamilton HM AX, Bermuda
Telephone: (441) 295 - STAR (7827)
Facsimile: (441) 292 - 8099

# EXCESS FINANCIAL LINES INSURANCE POLICY

**NOTICE:** EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:** THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT STATED IN THE PRIMARY POLICY.

**NOTICE:** THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

## DECLARATIONS

**POLICY NO.: 6299064**

**ITEM 1.** **NAMED CORPORATION**: Lehman Brothers Holdings Inc.
MAILING ADDRESS: 1301 Avenue of the Americas, New York, NY 10019

STATE OR OTHER JURISDICTION OF INCORPORATION OF THE **NAMED CORPORATION**: Delaware

**ITEM 2.** POLICY PERIOD: From: May 16, 2007 To: May 16, 2008
(12:01 A.M. standard time at the mailing address stated in Item 1.)

**ITEM 3.** (A) LIMIT OF LIABILITY: US $10,000,000 Part of US $20,000,000 in the aggregate (including Defense Costs)

(B) EXCESS OF TOTAL UNDERLYING AGGREGATE LIMIT OF: US $230,000,000

**ITEM 4.** PREMIUM: US $137,250

**ITEM 5.** (A) DISCOVERY PERIOD PREMIUM: See Endorsement #4.
Premium indicated in Item 4 or as per Underlying Insurance (whichever is greater).

(B) DISCOVERY PERIOD: See Endorsement #4.

**ITEM 6.** NOTICE OF CANCELLATION PERIOD: See Endorsement #3.

**ITEM 7.** ENDORSEMENT(S) EFFECTIVE AT INCEPTION DATE: Four (4).

**ITEM 8.** PENDING OR PRIOR DATE: May 16, 2006.



Date of Issuance: July 18, 2007



Starr Excess Liability Insurance International Limited
Incorporated in the Republic of Ireland




## DECLARATIONS (CONT'D)

**POLICY NO.: 6299064**

**ITEM 9. UNDERLYING INSURANCE:**

| Insurer | Policy No. | Limits | Policy Period |
|---|---|---|---|
| **Followed Policy:** | | | |
| XL Specialty Insurance Company | ELU097792-07 | $20,000,000 | 16-May-07 to 16-May-08 |
| **Schedule of Underlying Policies** | | | |
| Federal Insurance Company | 7043-0876 | $15,000,000 | 16-May-07 to 16-May-08 |
| Continental Casualty Company | 267996454 | $10,000,000 | 16-May-07 to 16-May-08 |
| Lloyd's of London | B0509QA016907 | $10,000,000 | 16-May-07 to 16-May-08 |
| U.S. Specialty Insurance Company | 24-MGU-07-A14479 | $15,000,000 | 16-May-07 to 16-May-08 |
| Zurich American Insurance Company | DOC 7995104 09 | $15,000,000 | 16-May-07 to 16-May-08 |
| ACE Bermuda Insurance Ltd. | LEHM-11742D | $25,000,000 | 16-May-07 to 16-May-08 |
| St. Paul Mercury Insurance Company | 590CM2698 | $15,000,000 | 16-May-07 to 16-May-08 |
| Axis Reinsurance Company | RNN 713535/01/2007 | $15,000,000 | 16-May-07 to 16-May-08 |
| Liberty Mutual Insurance Company | 078365-017 | $10,000,000 | 16-May-07 to 16-May-08 |
| Arch Insurance Company | DOX0006634-02 | $15,000,000 | 16-May-07 to 16-May-08 |
| Allied World Assurance Company Ltd. | C002007/005 | $15,000,000 | 16-May-07 to 16-May-08 |
| Endurance Specialty Insurance Ltd. | P0055332003 | $20,000,000 | 16-May-07 to 16-May-08 |
| Lloyd's of London | B0509QA017007 | $10,000,000 | 16-May-07 to 16-May-08 |
| Illinois National Insurance Company | 742-14-36 | $20,000,000 | 16-May-07 to 16-May-08 |

BROKER: Marsh Global Broking (Bermuda) Ltd.
Craig Appin House
8 Wesley Street
Hamilton HM11

**Authorized Representative**

**July 18, 2007**
**Date**



Date of Issuance: July 18, 2007
Starr.BDA.xsfl.001 (Ed. 5/05)




# EXCESS FINANCIAL LINES INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon material statements made by application, warranty or other means as more fully set forth in Clause VI, which form a part hereof, STARR EXCESS LIABILITY INSURANCE INTERNATIONAL, LTD. herein called the **"Insurer"**, agrees as follows:

## I. INSURING AGREEMENT

The **Insurer** shall provide the **Insureds** with insurance excess of the **Underlying Aggregate Limit** as set forth in Item 3(B) of the Declarations. Coverage hereunder shall attach only after the **Underlying Insurers** shall have paid the full amount of the **Underlying Aggregate Limit**. Coverage hereunder shall then apply in accordance with the warranties, terms, conditions, exclusions and limitations of the **Followed Policy**, as amended by any more restrictive warranties, terms, conditions, exclusions and limitations of any other policy designated in Item 9 of the Declarations, subject to the warranties, terms, conditions, exclusions and limitations of this policy, including any endorsement attached hereto.

## II. DEFINITIONS

(a) The term "**Followed Policy**" shall mean the policy identified in Item 9(A) of the Declarations.

(b) The term "**Insureds**" shall mean those persons or entities insured under the **Underlying Insurance**.

(c) The term "**Loss**" or "**Damages**" shall have the same meaning in this policy as is attributed to it in the **Underlying Insurance** except that the term "**Loss**" or "**Damages**" shall in no event include civil or criminal fines or penalties, the multiplied portion of multiplied damages or any amounts for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Loss** or **Damages** shall include punitive damages to the same extent as are part of **Loss** or **Damages** under the **Underlying Insurance**; provided, however, if in the **Underlying Insurance** coverage for punitive damages is solely contingent on the insurability of such damages under applicable law then this policy shall provide coverage for punitive damages.

(d) The term "**Policy Period**" shall mean the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(e) The term "**Underlying Insurance**" shall mean the Primary and Underlying Excess Policies set forth in Item 9 of the Declarations.

(f) The term "**Underlying Insurer(s)**" shall mean the insurer(s) of the **Underlying Insurance**.

(g) The term "**Underlying Aggregate Limit**" shall mean an amount equal to the aggregate of all the limits of the **Underlying Insurance** combined (excess of their retentions).

## III. LIMIT OF LIABILITY

The **Insurer's** maximum Limit of Liability for **Loss** shall be the amount stated in Item 3(A) of the Declarations. Purchase of a Discovery Period (if applicable) shall not increase the Limit of Liability.

In the event and only in the event of the reduction or exhaustion of the **Underlying Aggregate Limit** by reason of the **Underlying Insurers** paying, or the **Insureds** paying **Loss** covered hereunder in the event of the insolvency of any **Underlying Insurer**, this policy shall:

(i) in the event of reduction, pay excess of the reduced **Underlying Aggregate Limit**, and

(ii) in the event of exhaustion, continue in force as primary insurance; provided that this policy shall only pay excess of any applicable retention amount(s) under the **Primary Policy** which shall be applied to any subsequent **Loss** in the same manner as specified in the **Primary Policy.**

## IV. UNDERLYING LIMITS

It is a condition of this policy that the **Underlying Insurance** shall be maintained in full effect with solvent insurers during the **Policy Period** except for any reduction or exhaustion of the aggregate limits contained therein by reason of **Loss** paid thereunder (as provided for in Clause III above). Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the **Insurer** shall be liable only to the extent that it would have been liable had the **Insureds** complied with such condition.

This policy shall pay only in the event of reduction or exhaustion of the **Underlying Aggregate Limit** as described above and shall not drop down for any reason including, but not limited to, uncollectability (in whole or in part) of the **Underlying Aggregate Limit**, the existence of State Amendatory endorsements in any **Underlying Insurance** or the existence of a sub-limit of liability in any **Underlying Insurance**, provided however that this policy will recognize erosion of any **Underlying Insurance** due to the existence of a sub-limit. The risk of uncollectability of such underlying insurance (in whole or in part) whether because of the financial impairment or insolvency of an **Underlying Insurer,** the existence of State Amendatory endorsements in any **Underlying Insurance** or the application of any underlying sub-limit of liability is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer.**

If during the **Policy Period** or any Discovery Period the terms, conditions, exclusions or limitations of the **Underlying Insurance** are changed in any manner, the **Insureds** shall as a condition precedent to their rights under this policy give to the **Insurer** as soon as practicable written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the **Underlying Insurance**, but only upon the condition that the **Insurer** agrees to follow such changes by written endorsement attached hereto and the **Insureds** agree to any additional premium and/or amendment of the provisions of this policy relating to such changes. Further, any new coverage is conditioned upon the **Insureds** paying when due any additional premium.

## V. EXCLUSIONS

This policy shall not cover any **Loss** or **Damages** in connection with any claim:

(i) alleging, arising out of, based upon or attributable to:

(a) the facts alleged; or

(b) any Wrongful Act which is the same or related to any Wrongful Act

alleged or contained

in any claim which has been reported, or in any

circumstances of which notice has been given, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time.

(ii) alleging, arising out of, based upon or attributable to any:

(a) litigation; or

(b) administrative or regulatory proceeding or investigation

of which an **Insured** had notice as of the **Pending or Prior Date** listed in Item 8 of the Declarations, or any Wrongful Act which is the same or related to any Wrongful Act alleged or contained in any of the foregoing.

## VI. RELIANCE ON REPRESENTATIONS

It is agreed that the **Insurer** has issued this policy in reliance upon the accuracy of:

(i) any material statements made and documents or other information furnished to the **Insurer** by or on behalf of the **Insureds** in connection with the application process for this policy, including all prior policies;

(ii) any material statements made and information incorporated in the **Named Corporation's** Annual Report(s), 10K(s) filed with the SEC, 10Q(s) filed with the SEC, proxy statement(s) (or other notice(s) to shareholders) and registration statements filed with the SEC.




## VII. NOTICE OF CLAIM

The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** in accordance with the terms and conditions of the **Primary Policy**, of any claim made or circumstances that might reasonably be expected to give rise to a claim against the **Insureds**. Such written notice shall be provided to the **Insurer** at the following address: American International Building, 29 Richmond Road, Pembroke HM 08, Bermuda, P.O. Box HM 152, Hamilton HM AX, Bermuda, Attention Claims Department.

If during the **Policy Period** or during the Discovery Period (if applicable) (i) written notice of a claim has been given to the **Insurer** as set forth in this Clause, or (ii) to the extent permitted by the terms and conditions of the **Primary Policy**, written notice of circumstances that might reasonably be expected to give rise to a claim against the **Insureds**, has been given to the **Insurer** and all **Underlying Insurers**, then any Claim which is subsequently made against the **Insureds** and reported to the **Insurer** and all **Underlying Insurers** alleging, arising out of, based upon or attributable to the facts alleged in the claim or circumstances of which such notice has been given, or alleging any Wrongful Act which is the same or related to any Wrongful Act alleged or contained in the claim or circumstances of which such notice has been given, shall be considered made at the time notice of such claim or circumstances has been given to the **Insurer.**

## VIII. NOTICE OF MATERIAL CHANGE

The **Insureds** shall give written notice to the **Insurer** of the following events as soon as practicable after the **Insureds** become aware of the event:

(i) Any **Underlying Insurance** being canceled or non-renewed or otherwise ceasing to be in effect or being uncollectible (in part or in whole);

(ii) Any **Underlying Insurer** being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority; or

(iii) Any other changes to the **Underlying Insurance,** the **Underlying Insurers**, or the **Insureds** that would require notice to be given pursuant to the terms and conditions of the **Underlying Insurance**.

## IX. CLAIM PARTICIPATION

The **Insurer** shall have the right, in its sole discretion, but not the obligation to effectively associate with the **Insureds** in the defense and settlement of any claim that appears to be reasonably likely to involve the **Insurer,** including but not limited to effectively associating in the negotiation of a settlement. The **Insureds** shall defend any such claim. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. The failure of the **Insurer** to exercise any right under this paragraph at any time shall not act as a waiver or limit the right of the **Insurer** in any manner to exercise such rights at any other time including the right to effectively associate in the negotiation of a settlement.

The **Insurer** does not under this policy assume any duty to defend. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the **Insurer** with respect to any claim that appears reasonably likely to involve the **Insurer**. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim in order to reach a decision as to reasonableness.

## X. DISCOVERY CLAUSE

The **Insureds** shall be entitled to a Discovery Period (or Extended Reporting Period, hereinafter, "Discovery Period") pursuant to the terms and conditions of the **Underlying Insurance**. The Discovery Period is not available unless the **Insureds** have elected the Discovery Period in all **Underlying Insurance**. The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. The Discovery Period and the Discovery Period Premium for this policy is specified in Item 5 of the Declarations. In no circumstances can the Discovery Period hereunder be longer than the shortest Discovery Period provided under any **Underlying Insurance.**




## XI. CANCELLATION CLAUSE

This policy may be canceled by the **Named Corporation** only by mailing written notice to the **Insurer** or by surrender of this policy to the **Insurer** and within the time period and in the manner set forth in the **Underlying Insurance**. This policy may also be canceled by or on behalf of the **Insurer** by delivering written notice to the **Named Corporation** or by mailing to the **Named Corporation**, by registered, certified, or other first class mail, at the **Named Corporation's** address set forth in the Declarations. Except for non-payment of the premium, such written notice shall state when, not less than the period set forth in Item 6 of the Declarations thereafter the cancellation shall be effective. In the event the **Insurer** cancels this policy for non-payment of the premium, this policy shall be void effective as of the inception of the **Policy Period**. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the **Named Corporation**, the **Insurer** shall retain the customary short rate proportion of the premium hereon.

If this policy shall be canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

## XII. ARBITRATION

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the **Insurer** and the **Insureds** or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within ten (10) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within ten (10) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of ten (10) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within ten (10) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.

The Arbitration Board shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such-arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board. The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.




No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives. The **Insurer** and the **Insureds** agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the **Insurer** by any of the **Insureds'** other **Insurer**s in a jurisdiction or forum other than that set forth in this clause, the **Insureds** will in good faith take all reasonable steps requested by the **Insurer** to assist the **Insurer** in obtaining a dismissal of these claims (other than on the merits.) The **Insureds** will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the **Insurer** would have been liable to such insurers for indemnity or contribution pursuant to this policy. The **Insureds** shall be entitled to assert claims against the **Insurer** for coverage under this policy including, without limitation, for amounts by which the **Insureds** reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the **Insurer** and the **Insureds** pursuant to this clause; provided, however, that the **Insurer** in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.

## XIII. CHOICE OF LAW

This policy shall be construed in accordance with the internal laws of the State of New York (with the exception of the procedural law required by Clause XII, which shall be construed and enforced in accordance with the laws of Bermuda); provided, however, that, notwithstanding any legal principles to the contrary, the warranties, terms, conditions, exclusions and limitations of this policy are to be construed in an evenhanded fashion between the **Insureds** and the **Insurer**. Without limitation, where the language of this policy is deemed to be ambiguous or otherwise unclear, the issues shall be resolved in the manner most consistent with the warranties, terms, conditions, exclusions and limitations viewed as a whole (without regard to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer**).

## XIV. CHANGES TO POLICY

No change, modification or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

## XV. HEADINGS

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

IN WITNESS WHEREOF, the **Insurer** has caused this policy to be signed by its President.

GEOFFREY J. SMITH, President
Starr Excess International

**Endorsement No:** 1
This endorsement, effective: May 16, 2007
forms a part of Policy No: 6299064
Issued to: Lehman Brothers Holdings Inc.
by: Starr Excess Liability Insurance International Limited

## SIDE A DROP DOWN FOR FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that **Section III, Limit of Liability**, and **Section IV, Underlying Limits** are amended by the addition of the following provisions:

**Section III., LIMIT OF LIABILITY**, is amended by adding the following:

Notwithstanding any other provision in this policy to the contrary and solely with respect to a **Loss** covered under **Section I., Insuring Agreements (A)** of the **Followed Policy**, this policy shall "drop down" below its stated attachment point only in the event any portion of the **Underlying Aggregate Limit** is uncollectible due to the financial impairment or insolvency of any **Underlying Insurer**. In the event one or more **Underlying Insurers** also drop down, this policy shall remain excess to the aggregate Limit of Liability of such **Underlying Insurer(s)** after such drop down. Nothing contained herein shall be construed to increase the Limit of Liability in Item 3 of the Declarations. In all events, the **Insurer** shall not be liable for any **Loss** the Company pays to or pays on behalf of the **Insureds.**

**Section IV. UNDERLYING LIMITS**, is amended by adding the following:

Notwithstanding any other provision in this policy to the contrary, and solely with respect **to Loss** covered under **Section I., Insuring Agreements (A)** of the **Followed Policy, Section IV. UNDERLYING LIMITS,** paragraphs 1 and 2 will not apply to claims brought under Insuring Agreement (A).

All other terms and conditions of this policy remain the same.

**Authorized Representative**

Date of Issuance – July 18, 2007
Lehman.DO.End1.07-08
166.01{EXT_REP}

| **ENDORSEMENT NO:** | **2** |
|---|---|
| This endorsement, effective: | May 16, 2007 |
| forms a part of policy number: | 6299064 |
| Issued to: | Lehman Brothers Holdings Inc. |
| by: | Starr Excess Liability Insurance International Limited |

**FOLLOW FORM ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that, subject to the terms, conditions and exclusions of this Policy, this Policy shall follow the terms, conditions and exclusions of Endorsement No. 21 of the **Followed Policy** No. ELU097792-07.

All other terms and conditions remain the same.

**Authorized Representative**

| **ENDORSEMENT NO:** | **3** |
| --- | --- |
| This endorsement, effective: | May 16, 2007 |
| forms a part of policy number: | 6299064 |
| Issued to: | Lehman Brothers Holdings Inc. |
| by: | Starr Excess Liability Insurance International Limited |

## CANCELLATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Section XI. **CANCELLATION CLAUSE** is hereby deleted and replaced with the following:

### XI. CANCELLATION CLAUSE

This policy may be canceled only in the manner set forth in the **Followed Policy** No. ELU097792-07.

Notwithstanding the above cancellation provision, written prior notice of such cancellation must be given to Starr Excess International at the address set forth within the Declarations.

All other terms and conditions remain the same.

**Authorized Representative**

| **ENDORSEMENT NO:** | **4** |
|---|---|
| This endorsement, effective: | May 16, 2007 |
| forms a part of policy number: | 6299064 |
| Issued to: | Lehman Brothers Holdings Inc. |
| by: | Starr Excess Liability Insurance International Limited |

## DISCOVERY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Section **X. DISCOVERY CLAUSE** is hereby deleted in its entirety and replaced with the wording as provided by the Followed Policy No. ELU097792-07.

All other terms and conditions remain the same.

**Authorized Representative**

| **ENDORSEMENT NO:** | **5** |
| --- | --- |
| This endorsement, effective: | May 16, 2007 |
| forms a part of Policy number: | 6299064 |
| Issued to: | Lehman Brothers Holdings Inc. |
| by: | Starr Excess Liability Insurance International Limited |

## SHAVING OF LIMITS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause **III. LIMIT OF LIABILITY,** is hereby amended to include the following:

**Insurer** shall be liable only after the **Underlying Insurers** have paid or have been held liable to pay the full amount of the **Underlying Aggregate Limit**. Notwithstanding the foregoing, in the event that the **Insureds** and one or more of the **Underlying Insurer(s)** under any of the **Underlying Insurance** policies reach an agreement in compromise of coverage issues whereby one or more of the **Underlying Insurer(s)** agrees to pay **Loss** or **Damages** in an amount less than the applicable limit of one or more of the policies of **Underlying Insurance**, the **Insureds** shall pay the remainder of the applicable **Underlying Insurance** Limit of Liability and such payment by the **Insureds** shall be deemed to apply toward exhaustion of the **Underlying Aggregate Limit**. In such event, the **Limit of Liability** as set forth in **ITEM 3** of the DECLARATIONS of this policy shall be reduced by the highest percentage by which any **Underlying Insurance** Limit of Liability was reduced as a result of such agreement and the **Insureds** shall bear such remaining percentage amount uninsured and at their own risk. The **Insureds** agrees to provide **Insurer** with a copy of any/each such agreement upon request.

All other terms, conditions and exclusions remain unchanged.

**Authorized Representative**

**ENDORSEMENT NO:** 6
This endorsement, effective: May 16, 2007
(at 12:01 A.M. prevailing time at the address shown in Item 1 of the Declarations)
forms a part of Policy number: 6299064
Issued to: Lehman Brothers Holdings, Inc.
by: **AIG Excess Liability Insurance International Limited**

**OUTSIDE DIRECTOR LIABILITY – RECOGNITION OF INSURER PARTICIPATION ENDORSEMENT**
*(EROSION OF LIMITS DUE TO PAYMENT OF OTHER AIG POLICY)*

In consideration of the premium charged, it is understood and agreed that clause **III. LIMIT OF LIABLITY** is amended by the addition of the following:

Notwithstanding the above, and solely with respect to **Loss** or **Damages** arising from a claim made against any **Insured**, pursuant to the **Followed Policy** Endorsement #38, AMEND INSURED PERSON ENDORSEMENT (hereinafter "ODL Claim(s)"), including any revisions or amendments made to Endorsement #38, is covered under any other valid and collectable policy(ies) of insurance underwritten by **AIG Excess Liability Insurance Company Ltd.**® or **AIG Excess Liability Insurance International Limited**℠ (hereinafter "Other AIG Cat Excess Policy(ies)"), then the total amount the ***Insurer*** shall pay under all such policies for all covered **Loss** or **Damages** on account of such claim shall not exceed the sum of the limits available under all such policies, not to exceed a combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim(s), the **Underlying Aggregate Limit** shall be deemed to be depleted or exhausted as a result of the issuers of the **Underlying Insurance** or any of the member companies of the issuers of the **Underlying Insurance**, and/or the **Insured(s)**, paying **Loss** or **Damage**s covered by the **Underlying Insurance**.

Nothing set forth in this endorsement or in the Other AIG Cat Excess Policy(ies) shall be construed to increase the **Insurer's Limit of Liability** as set forth in **Item 3** of the Declarations of this policy (which shall remain the maximum liability of the **Insurer** for all claims combined under this policy) or the limit of liability of any Other AIG Cat Excess Policy(ies) or to cause this policy, or any Other AIG Cat Excess Policy(ies), to drop down.

Solely for the purpose of this endorsement **"*Insurer*"** shall mean, the issuing insurance company for any policy of insurance underwritten by **AIG Excess Liability Insurance Company Ltd.**® or **AIG Excess Liability Insurance International Limited**℠.

All other terms, conditions and exclusions remain unchanged.

**Authorized Representative**