Alan Kolod
Mark N. Parry
**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 554-7800
Fax: (212) 554-7700

*Attorneys for Deutsche Bank AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**OBJECTION TO CONFIRMATION OF PLAN AS TO LBHI AND LCPI TO THE EXTENT IT FAILS TO PROPERLY CLASSIFY AND TREAT DEUTSCHE BANK AG CLAIMS AND RENEWED MOTION TO TREAT SUCH CLAIMS LIKE AND EQUAL TO GENERAL UNSECURED CLAIMS AGAINST LBHI AND LCPI AS <u>REQUIRED BY COURT APPROVED SETTLEMENT</u>**

DEUTSCHE BANK AG ( "<u>Deutsche Bank</u>"), by its attorneys, Moses & Singer LLP, hereby (i) objects to Confirmation of the Third Amended Plan of Reorganization [Docket No. 19627] (the "<u>Plan</u>") as to Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and Lehman Commercial Paper Inc. ("<u>LCPI</u>", and together with LBHI, the "<u>Debtors</u>"), based on its failure to classify and treat the Claims (as defined in paragraph 15, below) of Deutsche Bank "like and equal to" General Unsecured Claims against the Debtors as required by a Court-approved settlement and (ii) renews its prior motion to the Court for relief requiring such claims of Deutsche Bank to be treated "like and equal to" General Unsecured Claims against each Debtor. Deutsche Bank

894489

hereby reserves the right to supplement this Objection and Motion, which is without prejudice to

the assertion of other objections, and claims for relief with respect, to the Plan, and to file

memoranda and to offer evidence at the confirmation hearing, in support hereof.  Deutsche Bank

respectfully avers as follows:

## JURISDICTION, VENUE AND STANDARDS

1.      This Court has jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334

because this proceeding arises under Title 11 of the U.S.C. and arises in a case under Title 11.

2.      Venue for this adversary proceeding is properly before this Court pursuant to 28

U.S.C. § 1409.

3.      This is a contested matter under Fed. R. Bankr. P. 9014.   This is a core

proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (L).

4.      The relief requested herein was previously requested by Deutsche Bank by

Motion of Deutsche Bank AG pursuant to section 105 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 3013 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and to enforce the Settlement (as defined below), dated September 27,

2011, [Docket No. 20321] which motion was disposed of after hearing by Order entered October

25, 2011, [Docket No. 21223] denying the Motion "without prejudice to Deutsche Bank's right

to renew its request for the relief sought in the Motion and challenge its treatment as holder of

the acquired Bankhaus Claims in connection with the proposed confirmation of the Debtors'

Third Amended Joint Chapter 11 Plan (as it may be amended from time to time)."

5.      The predicates of this Objection and Motion include Bankruptcy Code §§ 105,

1122(a), 1123(a)(5), 1128(b), 1129(a)(1), (2), (3) and (9) and 1142(b) and Bankruptcy Rules

3013, 9014 and  9019.

894489                                                    2

6.      The Debtors bear the burden to justify their classification and treatment of the Claims by a preponderance of the evidence.

7.      Grant of the relief sought in this Motion  would not interfere with or impede confirmation of the Plan.

## BACKGROUND

8.      On September 15, 2008, and October 5, 2008, respectively, LBHI and LCPI each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code") in the Bankruptcy Court for the Southern District of New York (the "Court").

9.      On November 13, 2008, the Frankfurt Lower District Court (*Amtsgericht Frankfurt am Main*) opened insolvency proceedings for Lehman Brothers Bankhaus Aktiengesellschaft (in Insolvenz) ("Bankhaus"), and appointed Dr. Michael C. Frege as Insolvency Administrator (*Insolvenzverwalter*) (the "Administrator").

10.     On May 22, 2009, the Court entered an Order Granting Recognition of Foreign Representative and Foreign Main Proceeding and For Additional Relief Under Section 1521 of the Bankruptcy Code. *See In re Lehman Brothers Bankhaus AG (in Insolvenz)*, Case No. 09-10583 [Docket No. 25].  Under that Order, the Administrator was recognized as the foreign representative of Bankhaus.

## SETTLEMENT OF CLAIMS

11.     On or about October 30, 2009, Bankhaus filed claim number 58233 against LBHI (the "LBHI Proof of Claim") and claim number 59006 against LCPI (the "LCPI Proof of Claim" and, together with the LBHI Claim, the "Proofs of Claims").

894489                                          3

12.    The allowance and treatment of a portion of the Proofs of Claims were settled by that certain Settlement Agreement, dated as of December 15, 2009, by and among LBHI, Lehman ALI, Inc., LCPI and the Administrator (the "Settlement Agreement").[1]

13.    At a hearing held on January 13, 2010, this Court, presiding over both the LBHI chapter 11 case and the Bankhaus chapter 15 case, approved the Settlement Agreement.  On January 14, 2010, the Court entered an *Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 9019 Authorizing and Approving of a Settlement Agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (In Insolvenz)* [Dkt. No. 6665] (the "Settlement Order" and, together with the Settlement Agreement, the "Settlement").

14.    Section 12 of the Settlement Agreement specifies the terms of the Settlement with respect to the Claims.  The operative language of Section 12 is incorporated verbatim in the Settlement Order.

15.    The Settlement allows a portion of the LCPI Proof of Claim as a "non-priority unsecured claim in the amount of $1,015,500,000" (the "LCPI Claim").  (Settlement Agreement, ¶ 12(d); Settlement Order, Sixth Decretal Paragraphs).

16.    The Settlement allows a portion of the LBHI Proof of Claim as a "non-priority unsecured claim" in the amount of $1,380,900,000  less the amount of any distributions that are received on the LCPI Claim (the "LBHI Claim" and, together with the LCPI Claim, the "Claims").  (Settlement Agreement, ¶ 12(e); Settlement Order, Seventh Decretal Paragraph).

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Joshua Dorchak in Support of Motion of Deutsche Bank AG Pursuant to Section 105(A) and Rule 3013 to Enforce Settlement Approval Order and to Correct Misclassification of Claims [Docket No. 20322] (the "Dorchak Declaration").

17.     The Settlement provides that the Claims are not subject to further defenses.  Thus, to the extent the Claims might have been subject to any defense on any ground prior to the Settlement, thereafter they were no longer subject to defense.  (Settlement Agreement, ¶ 12(k); Settlement Order, Eighth Decretal Paragraph).

18.     The Settlement provides that the Claims are not subject to any claims that would have the effect of subordinating them to other general unsecured claims.  (Settlement Agreement, ¶ 12(k); Settlement Order, Eighth Decretal Paragraph).

19.     The Settlement provides that the Claims shall be "treated in a like manner" to other general unsecured claims and shall "receive treatment and distribution . . .equal to that of other general unsecured claims against LBHI and LCPI".  (These obligations of the Debtors are hereinafter sometimes referred to as "like and equal treatment.")  (Settlement Agreement, ¶ 12(k); Settlement Order, Eighth Decretal Paragraph).

20.     The Settlement provisions allowing the LBHI Claim defined it as the "Security & Collateral Agreement Claim."  (Settlement Agreement, ¶ 12(e); Settlement Order, Seventh Decretal Paragraph).

21.     At the hearing on the Settlement, counsel for the parties advised the Court that the Settlement resolved all disputes as to whether the Security & Collateral Agreement Claim was a guaranty by allowing the claim on the terms of the Settlement.  (Transcript of January 13, 2010 Hearing [Docket No. 7203] at 32:9-24, 39:13-40:2 (Lehman's counsel), 46:22-47:4 (Administrator's counsel)).

22.     The Settlement contained one reservation of right with respect to the Security & Collateral Agreement Claim.  That reservation provided that LBHI could seek substantive consolidation of LBHI and LCPI and, in the event it was granted, could seek to reduce or

disallow the LBHI Claim. The reservation, however, expressly provided that the Administrator could oppose substantive consolidation and, if it nevertheless were granted, could oppose any reduction or disallowance of the LBHI Claim. (Settlement Agreement, ¶ 12(e); Settlement Order, Seventh Decretal Paragraph).

23.    The Settlement Agreement also settled a dispute between the Administrator and the Debtors concerning the ownership of several billion dollars of financial assets by the sale of those assets by the Administrator to LCPI.

24.    The Settlement was the result of extensive arms length and laborious negotiations during the latter part of 2009, which sought to avoid lengthy, expensive litigation concerning the ownership of billions of dollars of loans and the nature of the relationship of Bankhaus and the Debtors.

## SALE OF CLAIMS TO DEUTSCHE BANK

25.    On July 12, 2010, Deutsche Bank purchased the Claims from the Administrator under the Sale Agreement Regarding the Sale and Assignment of Claims, dated July 12, 2010, (the "Sale Agreement").[2]

26.    That Sale Agreement, which was signed by the Administrator prior to the Debtors' repudiation of the Settlement by misclassification of the Claims, as described below, and prior to the existence of the present dispute, contains statements by the Administrator concerning his intentions and understanding, and of the Debtors' intentions and understanding (to the best of his knowledge), as to how the Settlement required the Claims to be treated under any Debtor Chapter 11 plan.

---

[2] A copy of the Sale Agreement is attached as Exhibit 7 to the Dorchak Declaration.

894489

6

27.     Those statements of the Administrator are not consistent with the manner in which the Debtors treat the Claims under the Plan, but are consistent with the relief Deutsche Bank seeks under this Objection and Motion.  (Sale Agreement, § (8)(3)(i) and (ii)).

28.     The remainder of the claims covered by the Bankhaus Proofs of Claims, which are not at issue in this matter, were resolved by an Amended and Restated Settlement Agreement, dated as of March 1, 2011, by and among LBHI and certain debtor and non-debtor affiliates and the Administrator (the "Second Settlement Agreement").  The Second Settlement Agreement  allowed certain other claims covered by the Proofs of Claims and expunged the remainder.  The Second Settlement Agreement  acknowledged that the Claims had previously been sold by the Administrator and expressly stated that it had no effect on the Settlement or on the previously allowed LBHI Claim and LCPI Claim.

### DEBTORS' CORRECT TREATMENT OF CLAIMS IN TWO PLANS

29.     Within two months of the Settlement Order, prior to the sale of the Claims to Deutsche Bank, the Debtors filed an initial plan dated March 15, 2010, [Docket No. 7572] (the "Initial Plan") that contained numerous classes of priority and non-priority unsecured claims but only a single class defined as the class of General Unsecured Claims with respect to each Debtor. The Initial Plan specified the treatment for each Debtor's class of General Unsecured Claims.

30.     General Unsecured Claims were defined as "(i) in the case of LBHI, any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, a Subordinated Unsecured Claim, an Intercompany Claim, a Third-Party Guarantee Claim and an Affiliate Guarantee Claim, or, (ii) in the case of each subsidiary Debtor, any Claim other than an Administrative Expense Claim, a Priority Tax

Claim, a Priority Non-Tax Claim, a Secured Claim and an Intercompany Claim." (Initial Plan, §1.44).

31.     The Initial Plan also defined Intercompany Claims.  Intercompany Claims were defined as "any Claim against a Debtor asserted by an Affiliate of the Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a General Unsecured Claim or an Affiliate Guarantee Claim." (Initial Plan, §1.48).

32.     In addition, the Initial Plan included a class of Affiliate Guarantee Claims against LBHI.  Affiliate Guarantee Claims were defined as "any Claim against LBHI asserted by an Affiliate of the Debtors on the basis of a Guarantee." (Initial Plan, §1.5).

33.     The Disclosure Statement with respect to the Initial Plan [Docket No. 8332] (the "Initial Disclosure Statement") stated that the Debtors had agreed to allow the Claims as general unsecured claims.  It did not describe the Claims as Intercompany Claims, and it did not describe the LBHI Claim as a Guarantee Claim.   (Initial Disclosure Statement, Article V(D)(2)(b), pgs 55-56.).

34.     The Debtors classified the Claims as General Unsecured Claims of each Debtor in order to satisfy their obligations under the Settlement.

35.     On January 25, 2011, more than a year after the Settlement Order,  the Debtors filed a First Amended Plan [Docket No. 14150].  That plan was approved by the Official Committee of Unsecured Creditors.  The First Amended Plan, like the Initial Plan, contained numerous classes of priority and non-priority unsecured claims, but only a single class defined as the class of General Unsecured Claims for each Debtor.  That class as to each Debtor specified the treatment for General Unsecured Claims against that Debtor.

894489

8

36.     General Unsecured Claims were defined as "(a) in the case of LBHI, any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee Claim, a Senior Third-Party Guarantee Claim, a Senior Third-Party LBT/LBSN Guarantee Claim, a Derivative Claim, an Intercompany Claim, an Affiliate Guarantee Claim, a Derivative Guarantee Claim, a Subordinated Claim or a Section 510(b) Claim, or (b) in the case of each Subsidiary Debtor, any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, an Intercompany Claim or a Derivative Claim."  (First Amended Plan, § 1.53).

37.     The First Amended Plan also included a definition of Intercompany Claims. Intercompany Claims were defined as "(a) in the case of LBHI, any Claim asserted by an Affiliate of LBHI other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee Claim or an Affiliate Guarantee Claim, or (b) in the case of a Subsidiary Debtor, any Claim asserted by an Affiliate of a Subsidiary Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim or a Secured Claim." (First Amended Plan, § 1.58).

38.     In addition, the First Amended Plan included a class of Affiliate Guarantee Claims against LBHI.  Affiliate Guarantee Claims were defined as "any Guarantee Claim asserted by an Affiliate of LBHI other than a Senior Affiliate Guarantee Claim." (First Amended Plan, § 1.3).

39.     The Disclosure Statement with respect to the First Amended Plan [Docket No. 14151] (the "First Amended Disclosure Statement") repeated that the Debtors had agreed to allow the Claims as general unsecured claims.    It did not describe the Claims as Intercompany

Claims, and it did not describe the LBHI Claim as a Guarantee Claim.    (First Amended

Disclosure Statement, Article IV(E)(2)(a), pg 47).

40.    The Debtors could satisfy their obligation to treat the claims like and equal to

general unsecured claims by classifying the Claims as General Unsecured Claims of each Debtor

and in fact did so.

## DEBTORS' REPUDIATION OF SETTLEMENT

41.    In July 2011, 18 months after the Settlement Agreement, the Debtors filed a

Second Amended Plan [Docket No. 18204].  They subsequently filed the Third Amended Plan,

which is the Plan that is the subject of this Objection and Motion.    The Disclosure Statement

with respect to the Second Amended Plan, which is dated June 30, 2011, more than a year after

the Initial Plan, repudiated the Settlement.   The Second and Third Amended Plan, and the

Disclosure Statements with respect to each (the "Second Amended Disclosure Statement"

[Docket No. 18205] and "Third Amended Disclosure Statement" [Docket No. 19629],

respectively) are identical in their repudiation of the Settlement, their proposed misclassification

and improper treatment of the Claims and their purported explanation for that misclassification

and treatment.  For ease of reference, the following discussion will refer only to the Third

Amended Plan or the Plan.

42.    The Third Amended Plan follows the format of the Initial Plan and First Amended

Plan in defining a single class of general unsecured claims for each Debtor that is named and

identified as the General Unsecured Claim class.  Those classes specify the treatment that would

be received by General Unsecured Claims of each Debtor.  In the Plan, General Unsecured

Claims for each Debtor are defined as follows: "(a) in the case of LBHI, any Claim other than an

Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured

Claim, a Senior Unsecured Claim, a Senior Affiliate Claim, a Senior Affiliate Guarantee Claim,

a Senior Third-Party Guarantee Claim, an Affiliate Claim, a Third-Party Guarantee Claim, a

Subordinated Claim or a Section 510(b) Claim, or (b) in the case of each Subsidiary Debtor, any

Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax

Claim, a Secured Claim or an Affiliate Claim." (Third Amended Plan, § 1.60)

43.    The Third Amended Plan defines Affiliate Claims, which are expressly excluded

from the definition of General Unsecured Claims, as "claims asserted by Affiliates" of each

Debtor. (Third Amended Plan, § 1.3). The Plan classifies Affiliate Claims for each Debtor into

multiple classes.

44.    The treatment of each class of Affiliate Claims for each Debtor is inferior to the

treatment of General Unsecured Claims against that Debtor. Thus, Affiliate Claims against a

Debtor under the Third Amended Plan are not treated in "like manner" to General Unsecured

Claims against that Debtor and will not receive "treatment and distribution[s] equal to" that to be

received by General Unsecured Claims as to that Debtor.

45.    The Third Amended Disclosure Statement states that the Claims are being treated

as Affiliate Claims based on the "origin" of the Claims. This Disclosure Statement does not

assert that the new treatment as Affiliate Claims constitutes treatment as general unsecured

claims or otherwise satisfies the Settlement.

46.    The Third Amended Disclosure Statement does not state that the Claims are

"asserted by an Affiliate," which is the sole ground for classification of a claim as an Affiliate

Claim under the Third Amended Plan. (Third Amended Disclosure Statement, Exhibit 4, § 3(h),

pg 4-10).

47.    That Disclosure Statement for the Plan characterizes the LBHI Claim, which had been characterized in the Settlement as the Security & Collateral Agreement Claim, as a Guarantee Claim.  The Disclosure Statements for the Initial and First Amended Plans had not characterized the LBHI Claim as a Guarantee Claim.

48.    The ballots received by Deutsche Bank with respect to the Third Amended Plan specify that the Claims are to be voted in the classes of Affiliate Claims and that the LBHI Claim is to be voted as a Senior Affiliate Guarantee Claim.

49.    On September 27, 2011, Deutsche Bank filed a motion under Bankruptcy Rule 3013 and to enforce the Settlement in which it asserted that the Debtors had improperly classified the Claims in Affiliate classes that were not being treated in like manner to other general unsecured claims and which would not receive distributions and treatment equal to other general unsecured claims.  The Court declined to decide that motion, without prejudice to Deutsche Bank's assertion of the same arguments in connection with the confirmation of the Plan.

50.    The motion stated that the Settlement provided that the Claims were to be treated as general unsecured claims, that this required their treatment in the classes of General Unsecured Claims for each Debtor, and that this was the understanding and intention of the Administrator (and his understanding of the Debtors' intentions)  when the Settlement Agreement was negotiated.

51.    The Debtors' Response [Docket No. 20767] to the motion did not deny or dispute the Administrator's statement of his understanding and intention or his understanding of the Debtors' intentions.  The Response did not provide any evidence of any contrary understanding or intention of the Administrator or the Debtors at the time of the Settlement Agreement.

Instead, the Response made unsupported assertions about the meaning of the phrase "general unsecured claims" and the alleged difference between the meaning of that phrase and the defined term "General Unsecured Claim" as used in the Plan.

52.     The Debtors' Response to the motion admitted that the Claims were being classified as Affiliate Claims and that Affiliate Claims are receiving a lesser recovery than General Unsecured Claims. (Debtors' Response, ¶¶ 29, 33).

53.     In fact, the Plan classifies the non-priority unsecured claims against LBHI into fourteen (14) separate classes, projected to receive recoveries ranging from 0 to 26%. (Third Amended Disclosure Statement, pg. 6). The Plan classifies the non-priority unsecured claims against LCPI into six (6) separate classes projected to receive recoveries ranging from 46% to 60%. (Third Amended Disclosure Statement, pg. 7). These classes include such disparate claims as statutorily and contractually subordinated claims, inter-company claims of affiliates, general unsecured claims, senior claims and convenience claims.

54.     The Response asserts that these disparate classes of non-priority unsecured claims, receiving a wide-range of recoveries based on their unique features, nevertheless are all classes of general unsecured claims. The Response asserts that the class of "General Unsecured Claims" defined by the Plan for each Debtor is not the only class of general unsecured claims for such Debtor and that the treatment provided for each class of General Unsecured Claims is not the only treatment being provided to general unsecured claims.

55.     The Response's assertions are incorrect. These assertions are contrary to the commonly understood meaning among bankruptcy practitioners in the context of plan drafting of the term "general unsecured claims" as the single class of generic unsecured claims against a debtor from which claims entitled to receive better or worse treatment have been removed.

56.     The Response's assertions are also contrary to the way in which the Debtors'

attorneys who drafted the Settlement Agreement, the Plan and each of the three prior versions of

the Plan understand the term "general unsecured claims" in the context of plan drafting, as

evidenced by their plan drafting practices in this and numerous other cases.

57.     The Response asserted that the Settlement did not restrict the Debtors' ability to

classify claims.

58.     This is correct.   However, the Settlement did specify, and thereby restrict, the

manner in which the Claims would be treated under any plan.  They are required to be treated

like and equal to general unsecured claims, which are classified as General Unsecured Claims as

to each Debtor.

59.     The Response further asserted that the class of Affiliate Claims of LCPI is a class

of general unsecured claims and that the Class of Senior Affiliate Guarantee Claims is a class of

general unsecured claims and, therefore, that the Settlement permits the Debtors to classify the

Claims  in those classes and only requires that they be treated like and equally *to other claims in

those classes*.  (Debtors' Response, ¶¶ 20, 27).

60.     These assertions are untrue. The classes of Affiliate Claims against LCPI and

LBHI are not being treated like or equal to general unsecured claims.  According to the

Disclosure Statement with respect to the Plan, they are being treated worse than general

unsecured claims to settle various risks unique to Affiliates, particularly the risk that Affiliates

may be consolidated with the Debtors and inter-company claims eliminated by the consolidation.

The Class of Senior Affiliate  Guarantee Claims against LBHI also is not being treated like or

equal to general unsecured claims of LBHI.  It is being treated worse than general unsecured

claims due to the risk that LCPI and LBHI might be consolidated which might eliminate any

LBHI parent guaranty of LCPI debt.

61.    Because these classes are not being treated like and equal to general unsecured

claims against LBHI and LCPI, classifying the Claims in these classes necessarily results in their

not being treated like and equal to general unsecured claims, contrary to the Settlement.

62.    The Response asserts that Deutsche Bank seeks to reinterpret the Settlement to

entitle the Claims to the "highest" recovery of any of the non-priority unsecured claims.

63.    That assertion is a misstatement of Deutsche Bank's position.  The highest

recoveries for non-priority unsecured claims are to be received by convenience claims and non-

affiliate "senior unsecured claims" against the Debtors.  (Third Amended Disclosure State, pg. 6-

7). Although convenience claims and "senior unsecured claims" are non-priority unsecured

claims, they are not "general unsecured claims," and Deutsche Bank does not demand to be

treated like and equal to them, only like and equal to general unsecured claims.

64.    The Debtors have never provided any justification whatsoever for treatment of the

LBHI Claim as a Guarantee Claim, in any Disclosure Statement or in the Response.

65.    The Response asserts that the Debtors have satisfied their "like and equal"

obligation under the Settlement by treating the Claims as "allowed non-priority unsecured claims

of an affiliate" and by providing "the same treatment as provided to other allowed and accepted

non-priority unsecured claims in" the affiliate classes.  (Debtors' Response, ¶¶ 3, 29, 32).

66.    That assertion by the Debtors, which makes no reference to the obligation to treat

the Claims like and equal to *general* unsecured claims, is a repudiation of the Settlement.

## THE MEANING OF GENERAL UNSECURED CLAIMS IN THE SETTLEMENT

67.     In paragraphs 12(d) and (e), the Settlement Agreement first provides that the

Claims are to be allowed as non-priority unsecured claims.

68.     In separate paragraph 12(k), the Settlement Agreement provides the additional

obligation that the Claims are to be treated in like manner to *other general unsecured claims* and

are to receive treatment and distribution *equal to that of other general unsecured claims*.  This

provision does not merely reiterate, superfluously, that the Claims are to be treated as non-

priority unsecured claims.  Rather, it provides that, for the avoidance of doubt, the Claims are to

be treated like and equal to other *general* unsecured claims.

69.     There are multiple classes of non-priority unsecured claims for each Debtor.

Bankruptcy Code § 1123(a)(4) requires that a plan provide the same treatment for all claims in a

particular class.  Thus, there was no need or reason for the Settlement Agreement, "for the

avoidance of doubt", as it states, to repeat this basic statutory provision, which would have been

superfluous.  The Debtors, however, now insist that all that the "like and equal treatment"

requirement of Section 12(k) did was superfluously to repeat Bankruptcy Code § 1123(a)(4).

The Debtors deny that Section 12(k) required that each Claim be treated like and equally to a

*particular* class of claims, i.e., the class of general unsecured claims against that Debtor.

70.     The Debtors' current interpretation of the like and equal treatment requirement of

paragraph 12(k) requires that the word "general" be deleted from the phrase "to other general

unsecured claims of LBHI and LCPI" and that the provision  be interpreted as if that phrase were

followed by words that it does not include, "in the same class."

71.     The Debtors' current interpretation renders the like and equal treatment

requirement of paragraph 12(k) entirely superfluous and merely repetitive of governing law, and

deprives it of any effect in specifying the treatment of the Claims.

72.    The Debtors' current interpretation so dilutes the requirement of the Settlement that the Claims be treated in "*like* manner" and "receive treatment and distribution *equal* to" other general unsecured claims that it would render it meaningless and of no effect.  It would open the door to the Debtors to treat the Claims like and equal to any class of non-priority unsecured claims, which are receiving a wide range of recoveries for disparate reasons.

73.    The phrase "general unsecured claims" has a commonly understood meaning among bankruptcy practitioners in the plan drafting context.  The phrase "general unsecured claims" or, in its acronymic version, "gucs" is commonly used by bankruptcy practitioners, including Debtors' counsel, who drafted the Settlement and the four plans for the Debtors, to mean the residual class of all generic unsecured claims against a debtor, exclusive of those that are either entitled to or are receiving treatment better or worse than other generic unsecured claims.

74.    The phrase "general unsecured claims" refers to all unsecured claims other than unsecured claims that (i) are entitled to legal priority (including administrative expense or other statutory priority), (ii) receive better treatment as a matter of administrative convenience or due to the justified business needs of the debtor, (iii) have contractual or statutory seniority rights relative to other unsecured creditors, (iv) are subordinated to other unsecured creditors by statute or contract or (v) share a common characteristic (such as being held by insiders or affiliates) that subjects them to some legal risk, such as subordination or consolidation, that may warrant their acceptance of lesser treatment.

75.    This concept of general unsecured claims is vital to the enforcement of the fundamental bankruptcy policy of equal and non-discriminatory treatment of claims of creditors. The treatment of the class of general unsecured claims is the benchmark treatment to which each

unsecured claim is entitled, absent statutory, contractual or other legally permissible justification

for better or worse treatment.

76.      As a practical matter, in drafting plans under chapter 11 of the Bankruptcy Code,

the concept of the class of general unsecured claims is usually implemented by the creation of a

residual class defined to include all unsecured claims other than claims that are classified in other

specified classes that will receive better or worse treatment than that residual class of general

unsecured claims or else are being classified apart from that class for voting purposes.

77.      This residual class of general unsecured claims is frequently named the class of

"General Unsecured Claims."  But whether or not so-named, it is identifiable because it has the

features, described in the preceding paragraphs, of being a residual class of all generic unsecured

claims other than specified classes of unsecured claims that are excluded from it because they are

receiving better or worse treatment.

78.      Each of the four plans drafted by Debtors' counsel and filed by the Debtors, in

fact, contains such a residual general unsecured claim class for each Debtor.

79.      The class of general unsecured claims against LBHI is the class of General

Unsecured Claims (Class 7).  The class of general unsecured claims against LCPI is the class of

General Unsecured Claims (Class 4A).

80.      The Debtors' current interpretation would permit treatment of the Claims equally

to claims that are not understood by bankruptcy practitioners to be general unsecured claims,

such as senior claims and subordinated claims.

81.      In the Sale Agreement, the Administrator states that he understood the phrase

"general unsecured claims" consistently with the common understanding of that phrase described

above and he so stated prior to the Debtors' attempted to classify the Claims as anything other than general unsecured claims.

82.     Counsel for the Debtors, who negotiated and drafted the Settlement, were aware of the common understanding of the phrase "general unsecured claims" described above and, in fact, used that very same meaning in drafting the Initial Plan, and the First, Second and Third Amended Plans and in naming the classes of general unsecured claims as to each Debtor.

83.     Counsel for the Debtors also used the common understanding in describing how they were classifying the Claims in the Disclosure Statements with respect to the Initial and First Amended Plans.

84.     If the Debtors had intended the phase "general unsecured claims" to have some other meaning contrary to the common understanding and that would cause the "like and equal treatment" requirement of Section 12(k) of the Settlement Agreement to become superfluous, the burden rested on them to specify that different meaning in the Settlement.  The Debtors could have done so by specifying that the Claims could be treated as affiliate claims or in any appropriate class of non-priority unsecured claims, rather than by agreeing to language that states that the Claims are to be treated *like* and *equal* to a commonly understood specific class of creditors of each Debtor, i.e., the holders of general unsecured claims.

85.     When the Debtors' repudiated the Settlement in the Second and Third Amended Plans,  the Debtors and their counsel did not attempt to justify the proposed Affiliate Claim treatment on the grounds that it constituted treatment of the Claims as general unsecured claims.

86.     The effect of this repudiation and breach of the obligation under the Settlement to treat the Claims like and equal to the classes of General Unsecured Claims of each Debtor, if

uncorrected, will be to reduce the distributions made with respect to the Claims by an amount estimated by the Debtors to be $69 million.

87.    By reason of the foregoing, Deutsche Bank is entitled to relief either (i) requiring treatment of the Claims under any confirmed plan to be like and equal to the treatment to be received by the classes of General Unsecured Claims of each Debtor or (ii) providing compensation for such breach of the Settlement Agreement as an administrative expense.

## DEBTORS CANNOT JUSTIFY TREATMENT OF CLAIMS AS AFFILIATE CLAIMS

88.    The Initial and First Amended Disclosure Statements justified the classification and treatment of the Claims as General Unsecured Claims on the grounds that the Debtors had agreed to allow the claims as general unsecured claims.

89.    The Second and Third Amended Disclosure Statements stated that the Claims were classified as Affiliate Claims, which were to receive worse treatment than General Unsecured Claims against each Debtor, but failed to provide any justification for such worse treatment.  The burden of justifying this classification and worse treatment rests on the Debtors.

90.    The Plan defines Affiliate Claims as claims asserted by Affiliates.  Deutsche Bank is not an Affiliate.

91.    Under the Settlement, the Claims have been allowed and are no longer subject to any defenses or to any claims that would have the effect of subordinating them.  Thus, as a result of the Settlement, the Claims are no longer subject to any legal infirmities that existed at any time prior to the Settlement.  The Settlement has cleansed the Claims of every infirmity that otherwise might have existed by reason of events or circumstances pre-dating the Settlement, such as those arising from their origin.  Thus, Deutsche Bank's rights with respect to the Claims are unquestionably better than were the rights of the Administrator prior to the Settlement, when

the Claims were still subject to defenses and to claims that might have the effect of
subordination.

92.    The Claims are substantially dissimilar to Affiliate Claims by reason of the
Settlement and cannot be classified with them for treatment worse than General Unsecured
Claims against each Debtor.

93.    As a result of being treated as Affiliate Claims, the Claims will receive a
distribution that the Debtors project to be $69 million less than what the Claims would receive if
they were properly classified as general unsecured claims in the General Unsecured Claims
classes and as the Settlement requires.

94.    As a result, the classification of the Claims as Affiliate Claims deprives the
Claims of the like and equal treatment to general unsecured claims in breach of the Settlement
Agreement and the Settlement Order.

95.    By reason of the foregoing, the classification of the Claims as Affiliate Claims
violates Code §§ 1122(a) and 1129(a)(1), (2) and (3) by classifying the Claims with substantially
dissimilar claims and breaching the Settlement.

## DEBTORS CANNOT JUSTIFY TREATMENT OF THE LBHI CLAIM AS A GUARANTEE CLAIM

96.    The Disclosure Statement with respect to the Third Amended Plan states that the
LBHI Claim is not only being treated as an Affiliate Claim but that it is also being treated as an
LBHI Guarantee Claim.

97.    The Settlement provided that the LBHI Claim was to be allowed as a non-priority
general unsecured claim.  However, it further provided that the amount of any recovery on the
LCPI Claim was to be deducted from the LBHI Claim, a concession agreed to by the
Administrator that was not required by law.

98.     The sole reservation of rights by LBHI was the right to seek substantive consolidation with LCPI and, in the event it was granted, to then seek reduction or disallowance of the LBHI Claim.  (Settlement Agreement, ¶ 12(e); Settlement Order, Seventh Decretal Paragraph).

99.     The Settlement, however, also expressly preserved the right of the Administrator to oppose substantive consolidation of LBHI and LCPI and, if consolidation nevertheless were granted, to defend against reduction or disallowance of the Claim.  (Settlement Agreement, ¶ 12(e); Settlement Order, Seventh Decretal Paragraph).  Deutsche Bank is the successor to these rights under the Sale Agreement.  (Sale Agreement, § 2 and 4(1)(a)).

100.    By classifying the Claim as a Senior Affiliate Guarantee Claim, the Plan reduces the recovery on the Claims based upon the possibility of substantive consolidation while depriving Deutsche Bank of the rights expressly granted by the Settlement to oppose substantive consolidation of LBHI and LCPI and to oppose reduction or disallowance of the Claim in the event of consolidation, as promised by the Settlement.

101.    In breach of those rights provided by the Settlement, Deutsche Bank may be bound by the acceptance of the Plan by the Senior Affiliate Guarantee Class.  As a result, the amount of its recovery on the LBHI Claim would be reduced below that of other general unsecured claims without any actual finding of substantive consolidation by this Court or any disallowance or reduction of the Claim based on substantive consolidation.

102.    The Settlement granted Deutsche Bank the express right to oppose both consolidation of LBHI and LCPI and to oppose the reduction of its LBHI Claim in the event of consolidation.

103.    The Debtors have not provided any justification for classification and treatment of the LBHI Claim as a Senior Affiliate Guarantee that will receive treatment worse than a General Unsecured Claim.

104.    Deutsche Bank cannot be stripped of the Settlement rights by the Debtors' classifying its LBHI Claim in a class that may agree by majority vote to accept worse treatment to settle substantive consolidation arguments.  The Settlement did not reserve the right of the Debtors to impair the LBHI Claim in that way, and their attempt to do so deprives Deutsche Bank of treatment of the LBHI Claim like and equal to other general unsecured claims, which are not subject to reduction on the grounds that they are claims against LBHI based on its guaranty of an obligation of a subsidiary debtor with which it might be consolidated.

105.    The foregoing provisions of the Settlement, including the Administrator's agreement to reduce the LBHI Claim by amounts recovered on the LCPI Claim, were negotiated in full settlement of any possibility that the LBHI Claim might be classified and treated as an LBHI guarantee claim under any plan.  Other holders of LBHI Guarantee Claims have not agreed to the reduction of such claims by any amounts recovered from another debtor.

106.    The Settlement contained no reservation of rights by the Debtors to classify the claim as a Guarantee claim receiving treatment inferior to general unsecured claims against LBHI based on a class-wide settlement of the alleged risk of consolidation of LBHI and LCPI.

107.    Treatment of the LBHI Claim as a Guarantee Claim is inconsistent with representations made to the Court in connection with its approval of the Settlement that the issue of whether the LBHI Claim was a guaranty was resolved by its allowance as a general unsecured claim.

894489

108.    As a result, the classification of the LBHI Claim as a Senior Affiliate Guarantee

Claim against LBHI deprives the Claim of the like and equal treatment to general unsecured

claims against LBHI promised by the Settlement Agreement and the Settlement Order.

109.    By reason of the foregoing, the classification of the LBHI Claim as Senior

Affiliate Guarantee Claim against LBHI violates Code §§ 1122(a) and 1129(a)(1), (2) and (3) by

classifying the LBHI Claim with substantially dissimilar claims and breaching the Settlement.

### RELIEF REQUESTED

Under the Settlement, the Claims must receive like and equal treatment and distributions

to those provided for general unsecured claims against the appropriate Debtors.    The LBHI

Claim must be treated in like manner to and equally with the claims in Class 7 against LBHI and

the LCPI Claim must be treated in like manner to and equally with claims in Class 4A against

LCPI.    Those are the only classes of general unsecured claims with respect to each of those

Debtors, and the Settlement requires that the Claims be treated like and equal to those general

unsecured claims.

The Claims cannot be classified as Affiliate Claims because they are not "asserted by

Affiliates."    The Claims are not subject to any of the defenses, claims or other justifications that

might be given for separate and worse treatment of Affiliate Claims.    Affiliate Claims are not

receiving like and equal treatment to general unsecured claims against either Debtor.

The LBHI Claim cannot be classified with LBHI Guarantee Claims because those claims

are not receiving like and equal treatment to general unsecured claims against LBHI.    This

classification deprives Deutsche Bank of rights expressly granted under paragraph 12(e) of the

Settlement Agreement to oppose consolidation of LBHI and LCPI and to oppose any resulting

reduction of the LBHI Claim.

894489                                        24

The Plan cannot be confirmed unless either (i) the confirmation order provides proper classification and treatment of the Claims as described above or (ii), in the event this matter is not resolved in favor of Deutsche Bank at the confirmation hearing, provision is made in the confirmation order for an administrative reserve or other means to fully protect Deutsche Bank's rights under the Settlement to treatment of the Claims like and equal to the treatment to be received by General Unsecured Claims against each Debtor if this matter is determined in favor of Deutsche Bank after confirmation and the effective date of the Plan.

Dated: New York, New York
      October 28, 2011

**MOSES & SINGER LLP**

By: /s/ Alan Kolod
    Alan Kolod
    Mark N. Parry
    The Chrysler Building
    405 Lexington Avenue
    New York, New York  10174
    Telephone:  (212) 554-7800
    Fax:  (212) 554-7700
    Email:  akolod@mosessinger.com
           mparry@mosessinger.com

    *Attorneys for Deutsche Bank AG*

894489