Hearing Date: December 14, 2011 at 10:00 a.m. (Eastern Time)
Objection Deadline: December 7, 2011 at 4:00 p.m. (Eastern Time)

PRYOR CASHMAN LLP
Todd E. Soloway
Richard Levy, Jr.
Ilene Farkas
Robert M. Fleischer
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 798-6352
tsoloway@pryorcashman.com
rlevy@pryorcashman.com
ifarkas@pryorcashman.com
rfleischer@pryorcashman.com

Attorneys for Setai Group, LLC; NC Land Corporation; Jonathan J. Breene; John P. Conroy; and Setai (Turks & Caicos) Ltd.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )<br>)<br>) Chapter 11<br>) |
| LEHMAN BROTHERS HOLDINGS, INC. et al, | )<br>) Case No. 08-13555 (JMP) |
| Debtors. | )<br>)<br>) |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AND FED. R. BANKR. P. 4001 TO LIFT THE AUTOMATIC STAY TO PERMIT ASSERTION OF COUNTERCLAIMS AND THIRD-PARTY CLAIMS AGAINST DEBTOR LEHMAN BROTHERS HOLDING, INC., IN PENDING STATE COURT LITIGATION COMMENCED BY THE DEBTOR**

Setai Group, LLC ("Setai"), NC Land Corporation ("NC Land"), Jonathan J. Breene ("Breene"), John P. Conroy ("Conroy"), and Setai (Turks & Caicos) Ltd. ("Setai T&C") (collectively, the "Movants"), by and through their undersigned counsel, hereby move for entry

of an order granting relief from the automatic stay pursuant to Section 362(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In particular, Movants request the relief: (1) to permit Setai, NC Land, Breene and Conroy to file, prosecute and obtain adjudication of counterclaims against debtor Lehman Brothers Holdings, Inc. ("LBH" or "Debtor"); and (2) to permit Setai T&C to file, prosecute and obtain adjudication of third-party claims against LBH, in both instances in a pending, post-petition civil action commenced by LBH in the Supreme Court of the State of New York, County of New York ("State Court"), entitled *Lehman Brothers Holdings, Inc., As Debtor-In-Possession In Its Chapter 11 Case In The United States Bankruptcy Court For The Southern District Of New York, Case No. 08-13555 v. Setai Group, LLC, NC Land Corporation, Jonathan J. Breene and John P. Conroy*, Index No. 652472/2011 (N.Y. Sup. Ct., N.Y. Co.) (the "State Court Action"), and *Setai (Turks & Caicos) Ltd. v. Lehman Brothers Holdings, Inc., As Debtor-In-Possession In Its Chapter 11 Case In The United States Bankruptcy Court For The Southern District Of New York, Case No. 08-13555*, (the "Third Party Complaint"). Movants respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. LBH commenced the State Court Action on September 8, 2011. LBH's complaint against Setai, NC Land, Breene and Conroy ("Complaint") alleges breach of a certain loan agreement among LBH (as lender), Setai and NC Land (as borrowers) and Breene and Conroy (as conditional guarantors) (the "Loan Agreement"), executed on or about February 9, 2004. Setai T&C was not a party to the Loan Agreement, and is not named as a defendant in the complaint. A copy of the Complaint is attached to the accompanying Declaration of Todd E. Soloway (the "Soloway Declaration") as Exhibit A.

2

2. LBH alleged in the Complaint that the breach of the Loan Agreement occurred when Setai and NC Land failed to repay obligations due on May 1, 2010.

3. Before commencing the State Court Action, but during the pendency of its Chapter 11 case, LBH conducted a UCC foreclosure sale of certain collateral under the Loan Agreement, including, in particular, Setai's interests in certain federally registered trademarks. As a result of those efforts, LBH claims that it acquired ownership of Setai's trademarks. In the State Court Action, LBH seeks to pursue recourse liability against the borrowers (Setai and NC Land) and the guarantors (Breene and Conroy) for the alleged unpaid balance of the obligations.

4. Movants seek relief from the automatic stay to permit them to assert, prosecute and obtain an adjudication – in the very same state court proceeding in which LBH asserted its claims against the original defendants – upon counterclaims and third party claims arising from LBH's post-petition conduct in relation to its purported foreclosure of the collateral and its activities against the defendants.

5. The proposed counterclaims and third party claims that are subject of this motion (the "Counterclaims" and the "Third Party Claims," respectively) are set forth, along with affirmative defenses to be pleaded, in an answer to be filed in the State Court substantially in the form attached to the Soloway Declaration as Exhibit B (which is being filed with the State Court contemporaneously with the filing of this Motion).

6. By the Counterclaims, the original defendants intend to seek damages, declaratory and injunctive relief arising from LBH's misconduct in connection to the purported UCC foreclosure sale of Setai's U.S. service marks. In the Third Party Claims, Setai T&C intends to seek damages, declaratory and injunctive relief arising from LBH's wrongful usurpation and interference with Setai T&C's non-U.S. intellectual property rights.

3

7. As is explained below, the matters in controversy under LBH's complaint and the Counterclaims and Third Party Claims involve exclusively state law claims and causes of action, both in LBH's Complaint and in the proposed Counterclaims and Third Party Claims. Adjudication of those matters by a single tribunal, in this instance the State Court selected by LBH in the first instance, will foster judicial efficiency and provide for complete determination of the issues and claims. Movants therefore should be permitted to adjudicate the Counterclaims and Third Party Claims in the State Court Action.

8. Finally, as Movants explain below, despite their attempts to resolve their request for stay relief by stipulation without the need for formal motion practice, LBH refused to accede to the request without unreasonable conditions, thereby necessitating the prosecution of this motion.

## JURISDICTION AND VENUE

9. On September 15, 2008 (the "Petition Date"), LBH and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions in the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases were consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors operate their businesses and manage their properties as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

10. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1344.

11. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).[1]

---

[1] Movants acknowledge that the disposition of this motion is a core proceeding under 29 U.S.C. § 157. As explained below, however, Movants: (i) have not previously consented, and

4

12. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory predicate for the relief sought herein is Section 362 of the Bankruptcy Code, as implemented by Bankruptcy Rule 4001.

## FACTUAL BACKGROUND

14. The following descriptions of the parties' factual allegations and causes of action are based on the Complaint (Exh. A) and the Counterclaims and Third Party Claims (Exh. B). Movants respectfully refer the Court to those documents for their complete contents. Movants deny that they are liable to LBH and reserve all of the their rights, claims and defenses.

15. Setai is a New York limited liability company that specializes in developing luxury residential and five-star hotel properties in selected markets and prime locations around the world. NC Land is a Bahamian corporation. Breene and Conroy are individuals who reside in the United States. Setai T&C is a Turks & Caicos limited corporation with its principal place of business in Turks & Caicos.

*The Loan Agreement*

16. On or about February 9, 2004, LBH entered into the Loan Agreement with Setai and NC Land to lend up to $5 million in connection with their acquisition, financing, marketing and development of a private resort residential club at destinations around the world. Over the next six years, the parties made several amendments and modifications to the Loan Agreement

---

they do not now consent, to the jurisdiction of the Bankruptcy Court for any purpose relating to the LBH bankruptcy case (and they have not filed proofs of claim); and (ii) submit that the Bankruptcy Court lacks constitutional authority to adjudicate the counterclaims and third party claims that they seek to pursue against LBH in the State Court Action, all of which arise under non-bankruptcy law.

documents. In one such modification, executed by the parties on July 31, 2008, Setai and NC Land agreed provide additional collateral to secure the loan – namely, Setai's rights to its United States "Setai" trademarks, including two U.S. registrations (the "U.S. Marks"), and certain licensing agreements in place with respect to the U.S. Marks (collectively, the "Setai U.S. Marks"). At that time, the outstanding principal amount of the loan was $5,175,404.68.

### *LBH's Foreclosure of the Setai U.S. Marks*

17. On May 11, 2010, LBH notified the counterparties under the Loan Agreement that the agreement had been breached and threatening a UCC foreclosure.

18. Over one year later, LBH then purported to conduct and complete a UCC foreclosure sale against the Setai U.S. Marks on June 17, 2011 in order to take possession of the collateral (the "Foreclosure"), the Setai U.S. Marks.

19. LBH alleges that it was the successful bidder at the Foreclosure with a credit bid in the amount of $1 million, and that it is now the full, lawful owner of all the borrower's prior rights, title and interest in the Setai U.S. Marks.

20. Movants contend that UCC foreclosure sale was not commercially reasonable.

21. Among other things: the $1 million purchase price for the collateral was substantially less than the market value of the Setai U.S. Marks and not commercially reasonable. Movants further contend that LBH, the only party that participated in the Foreclosure and the only party that presented a bid, acted in a commercially unreasonable manner that ensured that there would be no other purchasers or potential bidders at the auction. Movants contend that, as a result, the foreclosure proceeding was not, in any respect, conducted in a commercially reasonable manner.

6

22. Movants further contend that the Foreclosure was, in reality, designed and implemented by LBH to quash competition and suppress the price of the collateral, all so LBH would "win" any so-called auction at a bargain-basement price.

23. By failing to even notify potentially interested persons or to attempt to market the collateral to obvious potential purchasers of the service marks, and by placing burdensome and inappropriate conditions on each prospective bidder, LBH succeeded in ensuring that it would "win" the auction.

### *LBH's Interference with Setai T&C's International Service Marks*

24. Following the Foreclosure, LBH engaged in worldwide efforts to interfere with the Setai brand outside of the United States. The foreign rights to the brand, including foreign trademarks, foreign trademark registrations and applications, and common law and statutory rights, are owned by Setai T&C ("Setai Foreign Rights"). But Setai T&C was not and never was a party to the Loan Agreement. Furthermore, its property, including the Setai Foreign Rights, was not and never was pledged as collateral under the Loan Agreement, and LBH had no basis to believe or assume otherwise.

25. LBH lacks a good faith basis to seek to cancel, control or otherwise affect or interfere with the Setai Foreign Rights. Nevertheless, after the Foreclosure, LBH pursued its campaign to interfere with Setai T&C's worldwide rights in the "Setai" brand, and thereby damaged Setai T&C and the Setai Foreign Rights without having any proper basis for its conduct.

### *The State Court Action*

26. LBH commenced the State Court Action on September 8, 2011. LBH's Complaint (copy attached to the Soloway Declaration, Exhibit A) contains two causes of action:

First, it alleges that Setai and NC Land are liable for damages by reason of their alleged breach of the Loan Agreement. Second, it alleges that Breene and Conroy are liable for damages by reason of their breach of the conditional guarantees under the Loan Agreement.

27.     LBH's Complaint seeks damages in an unspecified amount, plus expenses, costs and attorneys' fees.

28.     As set forth in greater detail in their proposed Counterclaims and Third Party claims (Exhibit B), Movants intend to assert equitable and legal counterclaims against LBH under non-bankruptcy law arising from LBH's misconduct in connection with the Foreclosure.

29.     Among other things, the Counterclaims will seek judgment against LBH rescinding the purported Foreclosure and sale of the Setai U.S. Marks to LBH pursuant to Article 9, Section 625(a) of the New York Uniform Commercial Code (the "UCC") (First Cause of Action), damages pursuant to Section 625(b) of the UCC (Second Cause of Action), and breach of contract (Third Cause of Action).  See Exhibit B.  If the Counterclaims succeed, the alleged liability sought to be determined and enforced by LBH's Complaint could be eliminated in its entirety, and LBH, in turn, may be obligated to the aggrieved Movants for the property at issue.

30.     For its Third Party Claims against LBH, Setai T&C (which is neither a party to the Loan Agreement nor a defendant in the State Court Action), intends to assert that LBH engaged in LBH's wrongful conduct with respect to the Setai Foreign Rights.  Specifically, Setai T&C will seek judgment declaring that LBH has no rights in the Setai Foreign Marks (Fourth Cause of Action), an injunction enjoining and restraining LBH from interfering with the Setai International Marks (Fifth Cause of Action), and a claim for unfair competition (Sixth Cause of Action).  See Soloway Declaration, Exhibit B.

8

31.     By stipulation of the parties, defendants' time to answer or move with respect to LBH's complaint in the State Court action has been extended to November 1, 2011. Except for service of the summons and complaint, there has been no substantive activity in the case.

***Movants' Unsuccessful Efforts to Obtain LBH's Consent to Relief from the Automatic Stay***

32.     Prior to filing this motion, Movants' counsel contacted the attorneys of record for LBH in the State Court Action and requested that the parties stipulate to the requested relief from the automatic stay to allow those matters to proceed to conclusion in those forums and thereby avoid the time, expense, and use of judicial resources for submission and determination of this motion. The parties, however, were not able to reach agreement on the terms of a stipulation.

33.     Among other things, LBH insisted on seeing a copy of the Movants' proposed answer, counterclaims and third party claims before it would agree to the proposed relief even though, in response to LBH's request, Movants indicated that they were not opposed to a reservation of LBH's rights to seek to recharacterize any of those claims as prepetition claims, subject to Movants' rights to defend against a request for such recharacterization.

34.     In order preserve their rights and avoid being held in default in the other proceedings pending disposition of this motion, Movants filed their responsive papers and pleadings in the State Court Action at the same time as the filing, along with certain discovery requests to preserve their rights of priority to discovery in the State Court Action, but agree to take no further action pending this Court's disposition of the instant request for stay relief.

## ARGUMENT

### THERE IS SUFFICIENT CAUSE TO GRANT RELIEF
### FROM THE AUTOMATIC STAY TO PERMIT THE ASSERTION,
### PROSECUTION AND ADJUDICATION OF MOVANTS' COUNTERCLAIMS
### AND THIRD PARTY CLAIMS AGAINST LBH IN THE STATE COURT ACTION

35.     Movants seek relief from the automatic stay to permit them to file, prosecute and obtain adjudication of claims against LBH that arise from LBH's post-petition conduct relating to the Loan Agreement and the Foreclosure.  Although the automatic stay ordinarily is construed not to prevent the assertion of post-petition claims against a debtor in possession (Federal Aviation Administration v. Gull Air, Inc. (In re Gull Air, Inc.), 890 F.2d 1255, 1263 (1st Cir. 1989); Grady v. A.H. Robins Co., 839 F.2d 198, 200 (4th Cir. 1988)), the proposed Counterclaims and Third Party Claims could result in determinations, for example, that: LBH does not have rights in the Setai U.S. Marks that LBH claims to have acquired during the pendency of its bankruptcy case and must therefore return the property to its true owners; the original defendants have no liability or only limited liability to LBH; and LBH is liable to, and subject to injunctive relief protecting, Setai T&C respecting the Setai Foreign Rights.  Each of those determinations could affect the rights and property of the LBH bankruptcy estate. Accordingly, to avoid any concern that the assertion, prosecution or determination of the Counterclaims and Third Party Claims would violate Section 362(a), Movants seek the requested relief.

36.     Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause. . . ." 11 U.S.C. § 362(d)(1).  Neither Section 362 nor its legislative history defines "cause."  The term connotes an intentionally broad and flexible concept which must be determined on a case-by-case

10

basis. In re Project Orange Assoc., 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citing In re Brown, 311 B.R. 409, 412-13 (E.D. Pa. 2004)).  The determination to lift the automatic stay is in the bankruptcy court's discretion.  Id. (citing Burger Boys Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 687-88 (Bankr. S.D.N.Y. 1994)).

37. In Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Second Circuit identified a number of factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation against a debtor to proceed in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

In re Taub, 413 B.R. 55, 61 (Bankr. E.D.N.Y. 2009) (citing Sonnax, 907 F.2d at 1286).

38. "Not all of [the *Sonnax*] factors will be relevant in every case." Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999).  The Court need not give equal weight to each factor.  See Burger Boys, Inc. v. S. St. Seaport L.P. (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).  Rather, "[w]hen applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate."  In re Keene Corp.,

11

171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). As explained in the following paragraphs, the pertinent *Sonnax* factors militate in favor of the requested relief.[2]

39. The first *Sonnax* factor (whether stay relief would result in a partial or complete resolution of the issues) weighs heavily in favor of lifting the automatic stay here. Relief from the stay would allow the entry of complete relief between Movants and LBH regarding all open issues related to the Loan Agreement and LBH's purported acquisition of the Setai U.S. Marks through the Foreclosure. It would respect LBH's choice of the forum. (LBH, in electing to proceed in a non-bankruptcy forum, must know that the rules of the State Court contemplate the assertion of counterclaims and third party claims that arise from or relate to the Complaint.) Having all the issues resolved in a single forum will aid in the orderly administration of LBH's bankruptcy case. Indeed, litigation of the Movants' claim would, in effect, involve the same process that this Court would have to undertake if stay relief was denied.[3]

---

[2] Several *Sonnax* factors are not relevant to this Motion: (i) the proceeding does not involve LBH as a fiduciary (outside of the bankruptcy context), (ii) there is no specialized tribunal to hear the claims, (iii) there are no insurers in the underlying controversies, (iv) there is no issue regarding equitable subordination, and (vi) Movants' success will not result in an avoidable judicial lien. The factor relating to readiness for trial, too, is not operative here, in as much as the State Court Action is only at the pleading stage.

[3] In a related light, the Supreme Court's recent ruling in Stern v. Marshall, 131 S. Ct. 2594, 564 U.S. __, 180 L. Ed. 2d 475 (2011), suggests concerns that this Court may not be constitutionally able to entertain an adjudication of the Movants' Counterclaims and Third Party Claims. Cf. In re BearingPoint, Inc., 453 B.R. 486 (Bankr. S.D.N.Y. 2011). The only nexus between the State Court Action and the LBH bankruptcy proceeding is the coincidence that LBH is a debtor in possession seeking to collect (and thereby increase) its liquid assets and intellectual property assets by seeking judgment on the defendant-Movants still-unliquidated contractual obligations. Similarly, LBH's alleged wrongdoing against the Movants occurred during the pendency of its status as a debtor in possession in bankruptcy. In all substantive respects, however, the parties' claims against each other arise exclusively under non-bankruptcy law. Having chosen its non-bankruptcy forums to seek relief against the defendant-Movants, LBH could have foreseen the likelihood that they would contest the claims with defenses and, potentially, their own state law claims against LBH (styled in the State Court as counterclaims or

40. The second *Sonnax* factor (whether there is a lack of any connection or interference with the bankruptcy case), also weighs heavily in favor of lifting the automatic stay. Notably, LBH itself chose to initiate the underlying action against the original defendant-Movants in a non-bankruptcy forum, revealing LBH's own view that the litigation will not interfere with the pending bankruptcy proceedings.

41. The federal Judicial Code makes clear that trustees of any property, including debtors in possession, "may be sued *without leave of the court appointing them* with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a) (italics added). The provision addresses the trustee's liability for torts and other claims – such as those that Movants seek to prosecute – that arise from the trustee's *operation* of the estate's business, as contrasted with the trustee's *administration* of the bankruptcy estate. See 3 COLLIER ON BANKRUPTCY ¶ 323.03[3][b], at 323-10-10.1 (16th ed. 2011). This is precisely the situation presented by this Motion. In addition, Section 323 of the Bankruptcy Code both authorizes the trustee/debtor in possession to sue and permits it to be sued. 11 U.S.C. § 323(b). In that capacity, the trustee "stands in the shoes of the debtor and may only institute whatever actions the debtor could have brought itself and is subject to the same defenses as could have been asserted by the defendant had the action been brought by the debtor…." In re Ostrom-Martin, Inc., 202 B.R. 267, 272 (Bankr. C.D. Ill. 1996) (citations omitted).

---

third party claims). Neither LBH's claims nor the Movants' responsive rights, Counterclaims and Third Party Claims arise under the Bankruptcy Code nor in the LBH bankruptcy case, and no "public right" is implicated by the parties' claims. Movants have not consented to an adjudication of the controversies in a federal bankruptcy tribunal, and even if they had filed proofs of claim (which they did not do, as there were no prepetition claims against LBH), Stern concludes that such a filing is not truly consensual but rather the result of the compulsion to file claims to support recovery from the estate.

42. Notwithstanding these statutory bases for LBH to pursue the State Court Action, for the Movants to prosecute the Counterclaims and Third Party Claims, all without prior leave of the Bankruptcy Court, prudent practice dictates that – as here – suitors who seek to affect the trustee's control and management of the estate's property should seek relief from the automatic stay under Section 362 of the Bankruptcy Code. See 3 COLLIER ON BANKRUPTCY, supra, ¶ 323.03[3][b], at 323-11 (citing cases). The Court should allow the Debtor's original-preferred forum, the State Court, to adjudicate all of the parties' claims, Counterclaims and Third Party Claims in the single, subsisting State Court Action commenced by LBH.

43. The seventh *Sonnax* factor (whether litigation in another forum would prejudice the interests of other creditors), also weighs in favor of lifting the automatic stay. If LBH prevails in the State Court Action, its remedy, presumably, will be to seek to enforce and collect a judgment. The issues raised by the Counterclaims and the Third Party Claims all concern post-petition events and activities of LBH, such that if Movants prevail: (i) the scope of the Debtor's estate may be reduced to the extent of the Setai U.S. Rights if LBH is determined not to have rights to that property and (ii) the Counterclaims and Third Party Claims, as post-petition obligations – once liquidated in the State Court Action – would be entitled to treatment as administrative expenses that LBH, under its to-be-confirmed plan, would be required to pay in full. But no administrative expense bar date has been set, so the universe of post-petition obligations payable by LBH is not even known. Movants understand that the Plan, however, provides – as it must under the Bankruptcy Code – for the payment in full of administrative expenses (unless otherwise agreed by the holder of the expense). Other holders of allowed administrative expenses will not be prejudiced because they will remain entitled to payment of their administrative expenses in full (or as they may otherwise agree).

14

44. The tenth *Sonnax* factor (the interests of judicial economy and the expeditious and economical resolution of litigation), weighs heavily in favor of lifting the automatic stay. It is in the interests of both judicial economy and expeditious and economical resolution of litigation to allow Movants to proceed with the Counterclaims and Third Party Claims in the State Court Action. LBH already elected to litigate its claims against the original defendant-Movants in a non-bankruptcy forum. The issues raised by the Movants' Counterclaims and Third Party claims are necessarily intertwined with the matters to be addressed in LBH's case in the State Court Action and Movants' affirmative defenses (which are not subject to the automatic stay. See Bryner v. LeBaron (In re Bryner), 425 B.R. 601, 608 (B.A.P. 10th Cir. 2010) ("an equitable principle of fairness requires a defendant to be allowed to defend himself from the attack [by the debtor or trustee] without imposing on him a gratuitous impediment in dealing with an adversary who suffers no correlative constraint," quoting In re Merrick, 175 B.R. 333, 338 (9th Cir. BAP 1994)).

45. Furthermore, litigation of the parties' disputes in multiple separate courts will impose additional and otherwise unnecessary burden expense on the Movants and on LBH's bankruptcy estate as well. The possibility of inconsistent results if litigation proceeds in two different forums carries with it the risk of increases expense as the parties work with the courts to reconcile those inconsistencies. Accordingly, this Court should find that this factor weighs in favor of relief from the automatic stay.

46. As for the final relevant *Sonnax* factor (the impact of the automatic stay on the parties and the balance of the harms), no harm will be suffered by any party if the stay is lifted. Stay relief would result in the prompt, complete litigation of all related disputes. Forcing the parties to litigate overlapping issues in two separate courts, on the other hand, will only expose

15

the parties to increases costs and expenses and will them to inconsistent results. At the same time, the administrative expense claimants holding entitlements to full payment (or agreed payment) under the Plan will suffer no diminution in their recoveries, while other stakeholders will receive the distributions specified in the Plan.

47. In order to allow the State Court Action to be adjudicated without having to return to this Court for supplemental or further relief from the stay, Movants respectfully request that the authorization to continue with the State Court Action include the prosecution of additional or amended claims or causes of action based on the facts and circumstances of the lawsuit as it proceeds.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Movants respectfully request that the Court enter an Order granting Movants: (i) relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit them to file, prosecute and obtain an adjudication of their Counterclaims and Third Party Claims in the State Court Action; and (ii) such other and further relief as may be just and proper.

Dated:   New York, New York
         October 31, 2011                PRYOR CASHMAN LLP

                                         By:   */s/ Richard Levy, Jr.*
                                               Todd E. Soloway
                                               Richard Levy, Jr.
                                               Ilene Farkas
                                               Robert M. Fleischer
                                         7 Times Square
                                         New York, New York 10036-6569
                                         Telephone:   (212) 421-4100
                                         Facsimile:   (212) 326-0806

                                         Attorneys for Setai Group, LLC, NC Land Corp., Jonathan J. Breene, John P. Conroy and Setai (Turks & Caicos) Ltd.