# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LEHMAN BROTHERS HOLDINGS INC., AS
DEBTOR AND DEBTOR-IN-POSSESSION IN
ITS CHAPTER 11 CASE IN THE UNITED
STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK, CASE
NO. 08-13555 (JMP),

Index No. 652472/2011

**ANSWER, AFFIRMATIVE
DEFENSES AND
COUNTERCLAIMS**

                    Plaintiff,

          - against -

SETAI GROUP, LLC, NC LAND
CORPORATION, JONATHAN J. BREENE, and
JOHN P. CONROY,

                    Defendants.

SETAI (TURKS & CAICOS) LTD.

Index No.

                    Third Party Plaintiff,

**THIRD PARTY COMPLAINT**

          - against –

LEHMAN BROTHERS HOLDINGS INC., AS
DEBTOR AND DEBTOR-IN-POSSESSION IN
ITS CHAPTER 11 CASE IN THE UNITED
STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK, CASE
NO. 08-13555 (JMP),

                    Third Party Defendant.

The Setai Group, LLC ("Setai," incorrectly sued as "Setai Group, LLC"), NC Land

Corporation ("NC Land"), Jonathan J. Breene ("Breene") and John P. Conroy ("Conroy" and

collectively, the "Defendants"), by and through their attorneys, Pryor Cashman LLP, submit this

Answer to the Complaint ("Complaint") of Lehman Brothers Holdings, Inc. as Debtor and

Debtor-In-Possession in its Chapter 11 Case in the United States District Court for the Southern

District of New York, Case No. 08-13555 (JMP) ("Lehman" or "Plaintiff"), Affirmative

Defenses and Counterclaims, and state as follows:

      1.     Deny the allegations set forth in paragraph 1 of the Complaint, and respectfully

refer the Court to the documents referenced therein for all of their respective terms and

conditions thereof.

      2.     Deny the allegations set forth in paragraph 2 of the Complaint.

      3.     Deny knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in paragraph 3 of the Complaint.

      4.     Deny the allegations set forth in paragraph 4 of the Complaint, except admit that

Setai is a New York limited liability company.

      5.     Deny the allegations set forth in paragraph 5 of the Complaint, except admit that

NC Land is a Bahamian corporation with its principal place of business in Nassau, Bahamas.

      6.     Deny the allegations set forth in paragraph 6 of the Complaint, except admit that

Breene is a citizen of Florida.

      7.     Deny the allegations set forth in paragraph 7 of the Complaint, except admit that

Conroy is a citizen of the State of New York.

      8.     Aver that the allegations set forth in paragraph 8 of the Complaint contain legal

conclusions to which no response is required.

      9.     Aver that the allegations set forth in paragraph 9 of the Complaint contain legal

conclusions to which no response is required, and respectfully refer the Court to the "relevant

Loan Documents" for their true and correct contents.

10.    Aver that the allegations set forth in paragraph 10 of the Complaint contain legal conclusions to which no response is required, and respectfully refer the Court to the "relevant Loan Documents" for their true and correct contents.

11.    Deny the allegations set forth in paragraph 11 of the Complaint, and respectfully refer the Court to the documents referenced therein for all of their respective terms and conditions thereof.

12.    Deny the allegations set forth in paragraph 12 of the Complaint, and respectfully refer the Court to the documents referenced therein for all of their respective terms and conditions thereof.

13.    Deny the allegations set forth in paragraph 13 of the Complaint, and respectfully refer the Court to the documents referenced therein for all of their respective terms and conditions thereof.

14.    Deny the allegations set forth in paragraph 14 of the Complaint, and respectfully refer the Court to the Note for its true and correct contents.

15.    Deny the allegations set forth in paragraph 15 of the Complaint, and respectfully refer the Court to the Guaranty for its true and correct contents.

16.    Deny the allegations set forth in paragraph 16 of the Complaint, and respectfully refer the Court to the Guaranty for its true and correct contents.

17.    Deny the allegations set forth in paragraph 17 of the Complaint, and respectfully refer the Court to the Loan Agreement for its true and correct contents.

18.    Deny the allegations set forth in paragraph 18 of the Complaint, and respectfully refer the Court to the documents referenced therein for all of their respective terms and conditions thereof.

3

19.    Deny the allegations set forth in paragraph 19 of the Complaint.

20.    Deny the allegations set forth in paragraph 20 of the Complaint, except admit that, due to the flawed "Foreclosure Sale" process, including but not limited to the insufficient notice and failure to market the Setai trademarks to the relevant potential purchasers (or adequately to anyone), no one other than Lehman showed up for the "Foreclosure Sale," and thus Lehman purported to "purchase" the Setai Marks for "$1 million."

21.    Deny the allegations set forth in paragraph 21 of the Complaint.

22.    Deny the allegations set forth in paragraph 22 of the Complaint.

23.    Deny the allegations set forth in paragraph 23 of the Complaint, and respectfully refer the Court to the August 8, 2011 letter for its true and correct contents.

24.    Deny the allegations set forth in paragraph 24 of the Complaint.

25.    Deny the allegations set forth in paragraph 25 of the Complaint, and respectfully refer the Court to the August 8, 2011 letter for its true and correct contents.

26.    Deny the allegations set forth in paragraph 26 of the Complaint.

27.    In response to paragraph 27 of the Complaint, repeat and reallege their responses to paragraphs 1 through 26 as if fully set forth herein.

28.    Aver that the allegations set forth in paragraph 28 of the Complaint contain legal conclusions to which no response is required, and respectfully refer the Court to the documents referenced in paragraph 28 of the Complaint for their true and correct contents.

29.    Deny the allegations set forth in paragraph 29 of the Complaint.

30.    Deny the allegations set forth in paragraph 30 of the Complaint.

31.    In response to paragraph 31 of the Complaint, repeat and reallege their responses to paragraphs 1 through 30 as if fully set forth herein.

32.    Aver that the allegations set forth in paragraph 32 of the Complaint contain legal conclusions to which no response is required.

33.    Deny the allegations set forth in paragraph 33 of the Complaint.

34.    Deny the allegations set forth in paragraph 34 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

35.    Plaintiff fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

36.    Plaintiff's claims are barred by the doctrines of laches, waiver, estoppel, acquiescence and consent.

### THIRD AFFIRMATIVE DEFENSE

37.    Plaintiff has failed to mitigate any damages it purports to have incurred.

### FOURTH AFFIRMATIVE DEFENSE

38.    Plaintiff's claims are barred by the doctrines of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

39.    Plaintiff's claims are barred by its breach of the Loan Documents.

### SIXTH AFFIRMATIVE DEFENSE

40.    Plaintiff's claims are barred because any damages alleged to have been suffered by Plaintiff are the result of its own acts or omissions.

### SEVENTH AFFIRMATIVE DEFENSE

41.    Plaintiff's claims are barred by documentary evidence.

### EIGHTH AFFIRMATIVE DEFENSE

42.     Plaintiff's claims are barred by the applicable statute of limitations and/or administrative filing periods.

### NINTH AFFIRMATIVE DEFENSE

43.     The Loan Documents should be nullified and rescinded as a result of the Plaintiff's own acts or omissions.

### TENTH AFFIRMATIVE DEFENSE

44.     Plaintiff's claims are barred because it held an unlawful foreclosure sale.

### ELEVENTH AFFIRMATIVE DEFENSE

45.     Plaintiff's claims are barred against the Guarantors because Plaintiff wrongfully declared a default of the Guaranty.

### TWELFTH AFFIRMATIVE DEFENSE

46.     Plaintiff's claims are barred against the Guarantors because the Guarantors complied with all conditions in the Guaranty.

## COUNTERCLAIMS AND THIRD PARTY COMPLAINT

1.     Counterclaim Plaintiffs The Setai Group, LLC ("Setai"), NC Land Corporation ("NC Land"), Jonathan J. Breene ("Breene"), John P. Conroy ("Conroy" and collectively with Setai, NC Land and Breene, the "Counterclaim Plaintiffs") and Third Party Plaintiff Setai (Turks & Caicos) Ltd. ("Setai T&C" or "Third Party Plaintiff") bring these counterclaims and a third party action against Lehman Brothers Holdings, Inc. as Debtor and Debtor-In-Possession in its Chapter 11 Case in the United States District Court for the Southern District of New York, Case No. 08-13555 (JMP) ("Lehman") for violation of the New York Uniform Commercial Code, a declaratory judgment, an injunction and damages arising out of Lehman's wrongful foreclosure action and its scheme to unlawfully interfere with Setai T&C's trademarks.[1]

2.     Setai is a well-known real estate and hospitality company specializing in, among other things, developing luxury residential and five-star hotel properties in selected markets and prime locations around the world.

3.     This action concerns Lehman's scheme to unlawfully (1) acquire the rights to Setai's United States trademarks at a price far below market; and (2) interfere with Setai T&C's international trademarks.

4.     In February 2004, Lehman entered into a loan agreement with Setai and NC Land in connection with the financing, marketing and development of the "Setai Club," a private resort residential membership club with destinations around the world.  Over the next six years, the parties made several amendments and modifications to the loan documents.  In one such modification, Setai and NC Land agreed to secure the loan with additional collateral – namely,

---

[1] Counterclaim Plaintiffs and Third Party Plaintiff are simultaneously filing, in the United States Bankruptcy Court for the Southern District of New York, a Motion For Entry of an Order To Lift The Automatic Stay To Permit the Assertion of Counterclaims and Third Party Claims Against The Debtor.

Setai's rights to its two registered United States "Setai" trademarks (the "U.S. Marks"), and

certain agreements in place with respect to the U.S. Marks (the "Setai U.S. Marks").

5.     As a result of a claimed default on the loan, Lehman thereafter commenced a

flawed and self-interested UCC foreclosure sale process in order to take possession of the Setai

U.S. Marks.

6.     From the outset, it was clear that Lehman's sole intention was to purchase the

Setai U.S. Marks at a well-below market price.  Indeed, at every step of the process, Lehman did

everything possible to ensure that there would be no other potential purchasers of the collateral.

7.     The foreclosure sale was, in reality, designed (or rigged) to quash competition and

suppress pricing, all so Lehman would "win" the so-called auction at a bargain-basement price.

8.     As alleged herein, by, *inter alia,* failing to even notify or attempt to market the

collateral to obvious potential purchasers of the Setai trademarks and placing highly burdensome

and inappropriate conditions on each prospective bidder Lehman succeeded in ensuring that only

one purchaser would acquire the collateral at the foreclosure sale.  That purchaser was Lehman.

9.     Unsurprisingly, Lehman was the winning bidder with a credit purchase price of

one million dollars – well below the value that Lehman itself placed on the collateral.

10.     Simply put, the sale was commercially unreasonable and in violation of Article 9

of the New York Uniform Commercial Code.

11.     Lehman's wrongful conduct did not end there.

12.     After conducting the sham "auction" to obtain supposed ownership of the U.S.

Setai Marks, Lehman then engaged in a worldwide campaign to interfere with the Setai brand

outside of the United States.  These foreign rights are owned by Setai T&C – which is not and

never was a party to the loan documents.

13.    Lehman has no good faith basis to seek to cancel or interfere with Setai T&C's foreign trademark registrations, applications and common law rights.  Nevertheless, Lehman has interfered with such rights in an improper attempt to exert pressure on Counterclaim Plaintiffs.

14.    Accordingly, in addition to the causes of action set forth herein regarding the commercially unreasonable "auction," Setai T&C is forced to seek a declaration that the loan documents gave Lehman no international rights in and to the Setai name outside of the United States, which rights are owned by Setai T&C, as well as seeking damages for Lehman's wrongful interference with these rights.

## PARTIES

15.    Setai is a New York limited liability company with its principal place of business in Miami, Florida.

16.    NC Land is a Bahamian corporation with its principal place of business in Nassau, Bahamas.

17.    Breene is an individual who resides in Miami Beach, Florida.

18.    Conroy is an individual who resides in New York, New York.

19.    Setai T&C is a Turks & Caicos limited corporation with its principal place of business in Providenciales, Turks & Caicos.

20.    Lehman is a Delaware corporation, authorized to do business in New York, with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

21.    This Court has jurisdiction under N.Y. CPLR § 301 and/or § 302(a) and under the forum selection clauses in the various loan agreements entered between the parties.

22.    Venue is proper under N.Y. CPLR § 503(a) and under the forum selection clauses in the various loan agreements entered between the parties.

## FACTS COMMON TO COUNTERCLAIMS
## AND THIRD PARTY COMPLAINT

I.    **The Setai Brand**

23.    Setai is a development company specializing in luxury residential and five-star hotel properties. Over the past decade, Setai has developed its brand to be associated with luxury, five-star real estate, and hotel and resort services around the world.

24.    In 2001, Setai obtained federally-registered U.S. service marks for "THE SETAI" (Registration No. 2,506,974) and "THE SETAI GROUP" (Registration No. 2,506,966) (collectively, the "U.S. Marks").

25.    In 2011, Setai filed certain applications in the U.S. Patent and Trademark Office for the mark "SETAI."

26.    The Setai brand is not limited to the United States.

27.    Setai T&C is the registered owner of the non-U.S. "Setai" trademarks and/or service marks, and/or has filed for registration, in numerous countries outside of the United States (the "Setai International Marks"). Over the past 9 years, Setai T&C has been actively involved in plans to develop other "SETAI" properties throughout the world, including in Greece, Uruguay, London, Paris, Spain and Amsterdam.

28.    Setai T&C is not a party to any loan documents at issue in this action and the Setai International Marks are not included as collateral in any loan documents at issue in this action.

## II.   The Parties Enter Into
## The Loan Agreements

29.   In 2004, in addition to its other business endeavors, Setai sought to develop and operate a private resort residential membership club at destinations around the world.

30.   As a result, on or about February 9, 2004, Setai and NC Land (collectively, the "Borrowers") entered into a Loan Agreement with Lehman (the "Loan Agreement"), under which Lehman agreed to loan up to five millions dollars to the Borrowers to help finance the acquisition, marketing and development of those properties (the "Loan").

31.   The Borrowers initially secured their obligations by pledging (among other things) certain rights relating to their interest in these properties.

32.   There were several modifications and/or amendments to the Loan.

33.   One such modification occurred on or about July 31, 2008, when the Borrowers and Lehman executed an agreement, entitled "Agreement Regarding Loan."

34.   Under the Agreement Regarding Loan, Lehman agreed to extend the maturity date.  The parties also agreed to modify the collateral securing the Loan.

35.   Simultaneously with the execution of the Agreement Regarding Loan, the parties also executed a "Trademark Security Agreement."  Under this Agreement, Setai granted Lehman a security interest in the U.S. Marks and pending applications relating to the name "Setai," referencing Schedule A to the Trademark Security Agreement (the "Setai U.S. Marks," or the "Collateral").

36.   By its agreement to accept Setai U.S. Marks as Collateral, Lehman has admitted that it valued the Setai U.S. Marks as more than adequately collateralizing the amount then-outstanding under the Loan, $5,175,404.68.

11

III.    **Lehman Contends That Borrowers
        Defaulted And Begins Sham Foreclosure Process**

37.    For over six years, from February 9, 2004 until May 11, 2010, Lehman never

declared any defaults under the Loan or any other Loan documents, including the Conditional

Guaranty.

38.    On May 11, 2010, Lehman sent its first notice of default to the Borrowers

claiming that Borrowers had committed an "Event of Default" by allegedly failing to pay the

outstanding interest and principal owed on the Loan.  As a result, Lehman threatened to

commence a foreclosure sale of the Collateral.

39.    About a year later, Lehman representatives admitted to Counterclaim Plaintiffs

that it intended to package its ownership interests in the Setai property in Miami with the Setai

U.S. Marks.

40.    Recognizing that the U.S. Marks and the Miami hotel would be more valuable to

Lehman if it could package these rights with worldwide branding rights (rights to which they

have no interest and rights with which they have no basis to interfere), Lehman set out on a

course of conduct designed to acquire the U.S. Marks.  Lehman conducted a sham "auction" to

ensure that it would acquire the U.S. trademark rights.

41.    Specifically, under "cover" of law, Lehman purported to conduct a UCC auction

of the Collateral.  But as shown herein, the "auction" was a sham used by Lehman to launch

what appears to be a worldwide campaign to interfere with Setai T&C's foreign intellectual

property rights, for the wrongful purpose of packaging the foreign rights with its wrongfully

acquired U.S. rights.

A.   **Lehman's Notification Was Flawed**

42.   On May 10, 2011, Lehman sent a document entitled, "Notification of Disposition of Collateral" addressed to Setai, NC Land, Breene and Conroy.

43.   The Notification stated that on June 10, 2011, Lehman would hold a "public sale" of the collateral at the offices of its attorneys, Dechert LLP, in New York, New York.

44.   Exhibit A to the Notification of Disposition of Collateral listed the property that Lehman was going to auction in the public sale.

45.   Specifically, Lehman listed the two U.S. Marks as well as numerous pending trademark applications in the United States Patent and Trademark Office relating to the name "Setai" that were filed subsequent to the Trademark Security Agreement.

46.   The Notification of Disposition of Collateral did not list any one of the dozens of international trademark registrations or applications for any mark including the name "Setai." Nor could it as the Setai International Marks are not (and could not be) part of the Collateral.

47.   The rights in and to the Setai International Marks are owned by the Setai T&C, who was not a party to the Loan or any of the Loan Documents.

B.   **The Conditions Of The Public Sale**
**Were Overly Burdensome To Potential Bidders**

48.   The Notification of Disposition of Collateral also attached an additional document: the "Terms of Public Sale" (the "Terms"). This document set forth the terms and conditions set by Lehman and its lawyers for the sale of the Collateral.

49.   The Terms, drafted by Lehman's lawyers, were intentionally onerous and drafted by Lehman to ensure that no other party bid on the collateral and that Lehman's unopposed and severely below-market bid would prevail at the auction.

50.    For example, Lehman required each prospective bidder to deposit with Lehman the sum of $500,000 by certified or bank check or by wire transfer of immediately available funds before commencement of the auction.

51.    Lehman also required that each prospective bidder must "demonstrate to [Lehman's] satisfaction in advance of bidding, its financial ability to tender payment for the Collateral."

52.    Particularly extreme was Lehman's requirement that the highest bidder at the end of the auction must tender full payment by 5:00 p.m. on the date of the sale.

53.    If the highest bidder failed to render full payment by that time, Lehman would retain its same-day $500,000 deposit.  Other than Lehman's ulterior motives there is no justification for imposing such conditions.

54.    By the express language of the Terms, these burdensome conditions applied to all prospective bidders except Lehman.

55.    Lehman did not have to deposit $500,000 before the auction.  Nor did Lehman have to tender full payment (or any payment) by 5:00 p.m. on the date of the sale.

56.    As shown below, Lehman's plan worked.

**C.    Lehman's Advertisements Of The Auction
Failed To Reach The Relevant Market Of Buyers**

57.    Lehman's acts to deter potential purchasers from attending the foreclosure auction continued.

58.    Upon information and belief, Lehman advertised the June 10, 2011 auction in only two newspapers, the Miami Herald and the Wall Street Journal.  Both of those advertisements – which were approximately four inches by one inch in size – ran in the newspapers on one date, May 26, 2011.

59.    Upon information and belief, Lehman made no efforts to market this property to the obvious relevant market – the hotel, hospitality and/or real estate market. Had Lehman attempted to obtain commercially reasonable bids for the Collateral by notifying prospective purchasers of the auction, it would have marketed the auction in and to hotel and/or real estate industries, rather than in a buried advertisement in two newspapers.

60.    The June 10, 2011 auction, however, never occurred.

61.    Instead, the night before, on June 9, 2011, Lehman unilaterally rescheduled the auction for June 17, 2011 -- a mere eight days later.

62.    Lehman did not advertise the rescheduled foreclosure sale to the public.

63.    Nor did Lehman make efforts to alert potential market bidders that it would be selling the Setai U.S. Marks on June 17, 2011 in its attorneys' New York offices or use the time to make any further efforts to market the collateral so as to obtain the highest price possible.

64.    This was yet another way for Lehman to ensure that there would be no impediments to its acquisition of the Setai U.S. Marks at the lowest bid possible.

## IV.    Lehman Holds A Sham Foreclosure Sale That Was Commercially Unreasonable

65.    Lehman held the supposed U.C.C. "foreclosure sale" on June 17, 2011.

66.    Upon information and belief, it appears that Lehman had always intended that the foreclosure sale was solely designed to allow Lehman to obtain the rights to the Setai U.S. Marks at a price far below its actual value.

67.    Lehman achieved its objective.

68.    Given the lack of any legitimate commercially reasonable attempt to market this valuable property, and the lack of any notice of the new auction date, only one bidder actually attended the foreclosure sale. That bidder was Lehman.

69.     Without any competition, Lehman's "winning" bid was one million dollars – far below the actual value of the Setai U.S. Marks which Lehman itself valued at more than five million dollars when it insisted that Setai secure the Loan with the Setai U.S. Marks.

70.     The price bid by Lehman was not commercially reasonable.

71.     Thus, based on its blatantly flawed and self-interested "auction," Lehman wrongfully acquired the Setai U.S. Marks.

## V.    Lehman Wrongfully Interferes With Setai T&C's International Marks

72.     Lehman's self-serving actions continued even after it wrongfully acquired Setai's U.S. Marks.

73.     Lehman then embarked on a scheme to interfere with the Setai International Marks, which continues to this day.

74.     Lehman apparently believes that the "collateral" it seized at the "auction" gives it the right to interfere with the Setai International Marks. Lehman has taken this flawed position even though, *inter alia*, (1) the international marks were not listed as Collateral in the loan documents; (2) the international marks were not listed as collateral on the Notice of Public Sale; (3) the Setai International Marks could not be included as collateral given that the owner of these rights – Setai T&C – is not a party to any of the Loan Documents with Lehman; and (4) Lehman has no legitimate trademark rights in and to the "Setai" brand outside of (or inside) the United States.

75.     Lehman's belief was confirmed during an August 8, 2011 telephone call between representatives of Setai and Lehman. During that call, Lehman's officer [Joelle Halperin] incorrectly claimed that, as a result of the "auction," Lehman now owns "everything Setai," including worldwide rights to the Setai brand.

16

76.     Lehman recently confirmed its wrongful intentions in an October 20, 2011 letter. In the letter, Lehman's attorneys refused to acknowledge that the foreign Setai marks are not part of the Collateral and blithely advised that, "it is Lehman's prerogative to seek to extend its trademark rights" outside of the United States.

77.     In furtherance of this wrongful scheme, Lehman has taken affirmative steps to interfere with Setai T&C's International Marks.  It has recently filed trademark-related actions abroad, purporting to own intellectual property rights in "Setai" in those nations.   For example, Lehman commenced a proceeding in the Office for Harmonization in the Internal Market to cancel Setai T&C's community trademark ("CTM"), which provides registration for the "SETAI" mark in 27 European Union countries.  Lehman has also filed its own CTM registration for "SETAI" even though, upon information and belief, it has made, and has no plans to make, any trademark use of this mark in any CTM country.

78.     In addition, Lehman has filed a complaint with the National Arbitration Forum (the "NAF Complaint") seeking to have the domain names "Setaiinterntional.com" and "Setaihotelsandresorts.com" transferred to it.

79.     In the NAF Complaint, Lehman wrongfully contends that because it is the rightful owner of the Setai U.S. Marks, the domain names should be transferred to Lehman.

80.     Setai T&C is currently developing property at a site in Jose Ignacio, Uruguay, and is in the initial stages of development in various other countries, including Greece, the United Kingdom and Spain.  Setai T&C has been marketing these properties worldwide and is the owner of registered trademarks and/or service marks in each of these countries.

81.    Given Setai T&C's international rights to the "Setai" mark (and the flawed "auction" process), Lehman has no good faith basis for its attempts to have these domain names transferred to it.

82.    Accordingly, the Counterclaim Plaintiffs and Third Party Plaintiff are forced to bring these claims against Lehman to protect their valuable property rights.

## FIRST CAUSE OF ACTION

83.    Counterclaim Plaintiffs and Third Party Plaintiff repeat and reallege all of the allegations, averments, defenses and responses in the Answer and all of the allegations above in the Counterclaims and Third Party Complaint as if fully set forth herein.

84.    As alleged in detail above, Lehman held a foreclosure sale that was commercially unreasonable.

85.    Lehman failed to properly notify the Borrowers of the adjourned "sale" of the Setai U.S. Marks.

86.    Lehman failed to notify the public, and, in particular, the relevant market, of the auction.

87.    Lehman purposefully drafted its Terms of Public Sale to dissuade potential buyers from bidding on the Setai U.S. marks.  As a result of Lehman's actions, Lehman was the only bidder to attend the foreclosure sale on June 17, 2011.

88.    Consequently, upon information and belief, Lehman made one successful credit bid of one million dollars for the U.S. Setai Marks.  This was far below the actual value of the Setai U.S. Marks.

18

89.    The sale of the Setai U.S. Marks was commercially unreasonable, and thus Lehman violated Article 9 of the New York Uniform Commercial Code ("NY UCC").

90.    Counterclaim Plaintiffs have no adequate remedy at law to regain their rights to the Setai U.S. Marks.

91.    As a result, under Article 9, Section 625(a), Counterclaim Plaintiffs are entitled to an order rescinding Lehman's wrongful sale of the Setai U.S. Marks.

## SECOND CAUSE OF ACTION

92.    Counterclaim Plaintiffs and Third Party Plaintiff repeat and reallege all of the allegations, averments, defenses and responses in the Answer and all of the allegations above in the Counterclaims and Third Party Complaint as if fully set forth herein.

93.    For the reasons stated above, Lehman violated Article 9 of the NY UCC.

94.    As a result, under Article 9, Section 625(b), in the alternative, Counterclaim Plaintiffs are entitled to damages in the amount of no less than the amount purportedly due by the Borrowers under the Loan Documents.

## THIRD CAUSE OF ACTION

95.    Counterclaim Plaintiffs and Third Party Plaintiff repeat and reallege all of the allegations, averments, defenses and responses in the Answer and all of the allegations above in the Counterclaims and Third Party Complaint as if fully set forth herein.

96.    By the above-referenced actions, including but not limited to Lehman's failure to conduct an auction in a commercially reasonable manner, Lehman has breached the Loan documents, including but not limited to, Article XI of the Loan Agreement.

97.     Counterclaim Plaintiffs have been injured by Lehman's breach of contract.  As a proximate result of Lehman's breach, Counterclaim Plaintiffs have suffered damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

98.     Counterclaim Plaintiffs and Third Party Plaintiff repeat and reallege all of the allegations, averments, defenses and responses in the Answer and all of the allegations above in the Counterclaims and Third Party Complaint as if fully set forth herein.

99.     Setai T&C is the lawful owner of the Setai International Marks.

100.    Setai T&C is not a party to the Loan Documents.

101.    The Setai International Marks were not and are not collateral for the loan.

102.    Lehman has no rights or interest in any of the Setai International Marks whether under the Loan Documents or otherwise.

103.    The Setai International Marks were not sold to Lehman in the foreclosure sale.

104.    Upon information and belief, Lehman disputes these contentions.

105.    An actual, justiciable controversy therefore exists necessitating a declaration of the parties' respective rights and interests with respect to the Setai International Marks.

106.    Setai T&C has no adequate remedy at law.

107.    Setai T&C is therefore entitled to a declaration that Lehman has no rights in or to any of the Setai International Marks.

### FIFTH CAUSE OF ACTION

108.    Counterclaim Plaintiffs and Third Party Plaintiff repeat and reallege all of the allegations, averments, defenses and responses in the Answer and all of the allegations above in the Counterclaims and Third Party Complaint as if fully set forth herein.

109.    Setai T&C is the lawful owner of the Setai International Marks.

110.    Lehman has taken, and continues to take, actions to wrongfully interfere with Setai T&C's rights in and to the Setai International Marks.

111.    Setai T&C has suffered and will in the future suffer irreparable harm unless Lehman is preliminary and permanently enjoined from wrongfully interfering with the Setai International Marks.

112.    Setai T&C has no adequate remedy at law to protect itself against Lehman's actions.

113.    As a result, Setai T&C is entitled to an injunction enjoining and restraining Lehman from interfering with the Setai International Marks.

## SIXTH CAUSE OF ACTION

114.    Counterclaim Plaintiffs and Third Party Plaintiff repeat and reallege all of the allegations, averments, defenses and responses in the Answer and all of the allegations above in the Counterclaims and Third Party Complaint as if fully set forth herein.

115.    By virtue of its wrongful actions, Lehman has, in bad faith, taken, and continues to take, actions to wrongfully interfere with Setai T&C's rights in and to the Setai International Marks.

116.    Lehman is a bankrupt entity that has no interest in acquiring or developing luxury hotel or residential properties located around the world and has not, upon information and belief, made, nor has plans to make, any use of the Setai name abroad.

117.    Nonetheless, by the foregoing acts, Lehman is unfairly competing with Setai T&C's legitimate right to the Setai brand outside of the United States.  As a result, Lehman is

unfairly interfering with Setai T&C's rights to acquire and develop luxury hotel and residential properties located around the world.

118.    As a result, Lehman has engaged in unfair competition with Setai T&C and has impaired, and will continue to impair and harm the value of Setai T&C's business.

119.    As a proximate and direct result of Lehman's unfair competition, Setai T&C has suffered monetary damages in an amount to be proven at trial.

**WHEREFORE**, Counterclaim Plaintiffs and Third Party Plaintiff demand judgment against Lehman as follows:

A.    Rescinding the foreclosure sale of Setai's U.S. Marks on the First Cause of Action;

B.    Awarding damages in an amount to be determined at trial on the Second Cause of Action, Third Cause of Action and Sixth Cause of Action;

C.    Declaring that Lehman does not own any rights with respect to the Setai International Marks on the Fourth Cause of Action;

D.    Preliminarily and permanently enjoining Lehman from interfering with the Setai International Marks on the Fifth Cause of Action;

E.    Awarding Counterclaim Plaintiffs and Third Party Plaintiff the expenses that they incurred in bringing these Counterclaims and Third Party Complaint, including court costs, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees; and

    F.     Awarding to Counterclaim Plaintiffs and Third Party Plaintiff such other and

further relief as the Court may deem just and proper.

Dated: New York, New York
       October 31, 2011

                           PRYOR CASHMAN LLP

                           By: _____

                            Todd E. Soloway
                            Ilene S. Farkas
                            Eric M. Fishman
                       7 Times Square
                     New York, New York 10036
                     (212) 421-4100

                     *Attorneys for Defendants, Counterclaim*
                     *Plaintiffs and Third Party Plaintiff*

23