David W. Dykhouse  
Brian P. Guiney  
**PATTERSON BELKNAP WEBB & TYLER LLP**  
1133 Avenue of the Americas  
New York, New York 10036-6710  
Telephone: (212) 336-2000  
Fax: (212) 336-2222  

Hearing Date: December 6, 2011, 10:00 a.m.  
Objection Deadline: November 4, 2011, 4:00 p.m.

Attorneys for Asbury Atlantic, Inc. and Asbury-Solomons, Inc.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x  
In re:                              :   Chapter 11  
                                    :  
LEHMAN BROTHERS HOLDINGS INC., *et al.*  :   Case No. 08-13555 (JMP)  
                                    :  
                 Debtors.           :   Jointly Administered  
                                    :  
------------------------------------x

### LIMITED OBJECTION OF ASBURY ATLANTIC, INC. AND ASBURY-SOLOMONS, INC. TO ASSUMPTION BY DEBTORS OF PREPETITION DERIVATIVE CONTRACTS

Asbury Atlantic, Inc. ("AAI") and Asbury-Solomons, Inc. ("ASI" and, together with AAI, "Asbury"), by and through their undersigned counsel, respectfully submit this limited objection ("Objection") to the Third Amended Joint Chapter 11 Plan dated August 31, 2011 ("Plan") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively with LBHI, "Debtors"). Asbury respectfully states as follows:

#### BACKGROUND

1. AAI and Lehman Brothers Special Financing, Inc. ("LBSF"), one of the Debtors, are parties to an interest rate swap documented with a Master Agreement dated December 8, 2006 and a related confirmation and schedule ("AAI Swap"). ASI and LBSF are parties to

an interest rate swap documented with a Master Agreement dated March 15, 1999 and a related confirmation and schedule (together with the AAI Swap, "<u>Asbury Swaps</u>").[1]

2. Each of the Asbury Swaps required LBSF to deliver a guaranty by LBHI, in a specified form, in favor of AAI and ASI guaranteeing the due and punctual payment of all amounts payable by LBSF under each of the Asbury Swaps ("<u>LBHI Guarantees</u>"). Copies of the LBHI Guarantees are attached to this Objection.

3. Asbury complied with all of the terms of the Asbury Swaps prior to the commencement of the Debtors' bankruptcy cases and has continued to comply with them thereafter. Among other things, Asbury has made all required payments under the Asbury Swaps timely and in full notwithstanding the Debtors' bankruptcy.

4. Pursuant to Section 11.1 of the Plan,

> all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease . . . (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor.

Section 11.2 of the Plan provides that--

> [e]ntry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan.

And finally, the notice of the Confirmation Hearing (as defined in the Plan) directs that--

> [i]f you are a Counterparty to an executory contract or unexpired lease to be assumed or assumed and assigned by the Debtors, you must file and serve any objection to the assumption or the cure amounts listed by the Debtors on the above-referenced schedule by the Plan Objection Deadline.

---

[1] The documentation of both Asbury Swaps was based on widely-used ISDA forms, but the terms were customized in important respects.

- 2 -

5.  On October 25, 2011, the Debtors filed the Plan Supplement (as defined in the Plan) with the Bankruptcy Court (Docket No. 21254). The Plan Supplement indicates that it is LBSF's intention to assume the Asbury Swaps. However, the Plan Supplement is silent with respect to the LBHI Guarantees. Therefore, pursuant to Sections 11.1 and 11.2 of the Plan and in compliance with the terms of the notice of the Confirmation Hearing, Asbury hereby files this Objection to the Plan solely as it relates to the assumption of the Asbury Swaps.[2]

**LIMITED OBJECTION**

6.  It is not possible to determine from the Plan or the Plan Supplement whether the Debtors intend to honor and reaffirm the LBHI Guarantees, offer replacement guarantees as part of a negotiated resolution with Asbury, or simply disregard this important contractual obligation. Unless the Debtors provide guaranties that comply with the requirements of the Asbury Swaps (or obtain Asbury's consent to an alternative arrangement) and comply with all of the other requirements of the Asbury Swaps, the Debtors' request to assume the Asbury Swaps should be denied for failure to comply with Section 365(b) of the Bankruptcy Code.

7.  The Debtors have contacted Asbury regarding a possible replacement of the LBHI Guarantees and a restructuring of the Asbury Swaps. Among other things, the Debtors have shared a draft of the possible replacement guaranty with Asbury. This draft is similar to, but differs in materials respects from, the LBHI Guarantees. But despite the existence of draft documents, neither the Plan nor the Plan Supplement presently requires the Debtors to provide the replacement guaranty, nor do they otherwise fix the terms of any agreement between Asbury and the Debtors. If Asbury, the Debtors and a replacement guarantor are able to reach agreement regarding replacement guaranties (which has not yet occurred) and the Debtors are expressly

---

[2] Notwithstanding the limited scope of this Objection, Asbury reserves the right to appear and be heard on any issue regarding the Plan in connection with the Confirmation Hearing.

bound to comply with such agreement and all other terms of the Asbury Swaps, Asbury will entertain withdrawing this Objection.

8.  Absent such an agreement, however, the Debtors cannot assume the Asbury Swaps unless they comply fully with all of their terms, including the obligation of LBSF to provide and maintain guaranties in the form specified in the Asbury Swaps.[3]  It is axiomatic in bankruptcy law that a debtor may not "cherry pick" among the provisions of an executory contract to seek out the provisions it finds beneficial and cast off those it finds burdensome.  Rather, an executory contract must be assumed or rejected in full.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)("Should the debtor-in-possession elect to assume the executory contract . . . it assumes the contract *cum onere*.").  A debtor "cannot simply retain the favorable and excise the burdensome provisions of an agreement." *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999).

9.  The Asbury Swaps explicitly require LBSF to provide the LBHI Guarantees.  The Debtors may not use Section 365(b) of the Bankruptcy Code to override this contractual obligation or any other provision of the Asbury Swaps.  Therefore, if LBSF does not provide guaranties that comply with the Asbury Swaps and comply with all of the other terms of the Asbury Swaps, the Asbury Swaps cannot be assumed.

---

[3]  The Debtors concede that any change in the terms of a prepetition derivatives contract such as the Asbury Swaps requires the counterparty's consent. *See Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Authorization to Establish Procedures for the Consensual Amendment and Assumption of Certain Non-Terminated Prepetition Derivatives Contracts* dated October 26, 2011, Docket No. 21297 ("<u>Procedures</u> <u>Motion</u>").  Notwithstanding such concession, Asbury reserves the right to object to the Procedures Motion.

WHEREFORE, Asbury requests that the Court (a) either deny the Debtors' request to assume the Asbury Swaps or grant the requested relief only on the condition that the Debtors comply with all of the terms of the Asbury Swaps and (b) award Asbury such other and further relief as is just and proper.

Dated:   New York, New York
          November 2, 2011

Respectfully submitted,

**PATTERSON BELKNAP WEBB & TYLER LLP**
Attorneys for Asbury Atlantic, Inc. and Asbury-Solomons, Inc.

By:   s/David W. Dykhouse
       David W. Dykhouse
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

# **EXHIBIT A**

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A") and ASBURY ATLANTIC, INC. ("Party B") have entered into a Master Agreement dated as of December 8, 2006, pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a)    Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b)    Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c)    Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligation under the Agreement or to set off, counterclaim or withhold payment in respect of any Event of Default or potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d)    This Guarantee shall remain in full force and effect until the first to occur of (i) receipt by Party B of a written notice of termination from Guarantor or (ii) none of the obligations of Party A remain outstanding. Termination of this Guarantee shall not affect Guarantor's liability hereunder as to obligations incurred or arising out of Transactions entered into prior to the termination hereof.

(e)    Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or

interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Agreement affecting Party A or Guarantor.

(f)     Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

(g)     Guarantor shall have no right of subrogation with respect to any payments made under this Guarantee until all obligations of the Guaranteed Party under the Agreement are paid in full.

(h)     Guarantor represents and warrants that:

(i)     it is a corporation duly organized and validly existing under the laws of the State of Delaware and has the corporate power and authority to execute, deliver and carry out the terms and provisions of the Guarantee;

(ii)    no authorization, approval, consent or order of, or registration or filing with, any court or other governmental body having jurisdiction over Guarantor is required on the part of Guarantor for the execution, delivery and performance of the Guarantee; and

(iii)   the Guarantee, when executed and delivered, constitutes a valid and legally binding agreement of Guarantor, except as the enforceability of the Guarantee may be limited by the effect of any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

(i)     Except as to applicable statutes of limitation, no delay of Party B in the exercise of, or failure to exercise, any rights hereunder shall operate as a waiver of such rights, a waiver of any other rights or a release of Guarantor from any obligations hereunder, nor shall any single or partial exercise by Party B of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power. Each and every right, remedy and power hereby granted to Party B or allowed it by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Party B from time to time.

(j)     Guarantor agrees to pay all reasonable out-of-pocket expenses (including reasonable attorneys' fees and expenses) incurred in the enforcement or protection of the rights of Counterparty in connection with a breach of the Guarantee, to the extent incurred after demand has been made and not timely honored, but only to the extent payments are due under this Guarantee.

(k)     No term or provision of the Guarantee shall be amended, modified, altered, waived or supplemented except in a writing signed by Guarantor and Party B. The Guarantee shall be binding upon Guarantor, its successors and permitted assigns, and shall inure to the

benefit of and be enforceable by Party B and its successors and permitted assigns. Neither Guarantor nor Party B shall assign its rights, interest or obligations hereunder to any other person without the prior written consent of the other and any purported assignment absent such consent is void.

(l) Any demand, notice, request, instruction, correspondence or other document to be given hereunder by any party to another (herein collectively called "Notice") shall be in writing and delivered personally or by certified mail, postage prepaid and return receipt requested or by overnight courier service, as follows:

To Guarantor:   Lehman Brothers Holdings Inc.,
Attention: Corporate Counsel,
1301 Avenue of the Americas, 5th Floor,
New York, NY 10019

To Party B:   Asbury Atlantic, Inc.
210 Russell Avenue, Gaithersburg, MD 20877
Attention: Chief Financial Officer

Notice given by personal delivery, mail or by overnight courier service shall be effective upon actual receipt.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee are defined in the Agreement.

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

**LEHMAN BROTHERS HOLDINGS INC.**

By: *[signature: James J. Killerlane, Vice President]*
Name: James J. Killerlane III
Title: Vice President
Date: December 7, 2006

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A") and ASBURY-SOLOMONS, INC. ("Party B") have entered into a Master Agreement dated as of March 15, 1999, pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a)  Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b)  Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c)  Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligation under the Agreement or to set off, counterclaim or withhold payment in respect of any Event of Default or potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d)  Guarantor shall be subrogated to all rights of Party B against Party A in respect of any amounts paid by Guarantor pursuant to the provisions of this Guarantee; provided, however, that Guarantor shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by Party A under the Agreement, shall have been paid in full.

(e)  Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Agreement affecting Party A or Guarantor.

AUG. -24' 01(FRI) 08:45   WTP BALTIMORE                        TEL:4103479414              P. 010
06/04/99   FRI 14:36 FAX 317 7   2010          CAIN BROTHERS                                 ⌀009

(f)    Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

Guarantor makes the same representations to and agreements with Party B as those made by Party A pursuant to Sections 3 and 4 of the Agreement, at the times set forth therein, except that references therein to "the party" will be deemed to be references to "the Guarantor" and references therein to "the Agreement" will be deemed to be references to "the Guarantee." Section 11 of the Agreement is incorporated by reference in this Guarantee except that references therein to "the Agreement" will be deemed to be references to "the Guarantee."

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee are defined in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Treasurer, at 3 World Financial Center, 24th Floor, New York, New York 10285 (Facsimile No. (212) 526-1466) with a copy to Lehman Brothers Special Financing Inc., Attention: Municipal Swaps and Investment Products Middle Office at 3 World Financial Center, 7th Floor, New York, New York 10285 (Telex No. 175636 Answerback: SLB; Facsimile No. (212) 528-6927).

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Title: ASSISTANT TREASURER