Hearing Date and Time: December 6, 2011 at 10:00 a.m.
Objection Deadline: November 4, 2011 at 4:00 p.m.

**BUCHANAN INGERSOLL & ROONEY PC**
620 Eighth Ave., 23rd Floor
New York, NY 10018
(212) 440-4400 - Telephone
(212) 440-4401 - Facsimile
William H. Schorling (WS-6322)
Christopher P. Schueller (CS-9525)
Donald E. Malecki
Timothy P. Palmer
Zakarij O. Thomas

*Attorneys for Greenbrier Minerals Holdings, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 08-13555 (JMP) |
| | : | |
| LEHMAN BROTHERS HOLDINGS, INC., *et al* | : | Chapter 11 |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## OBJECTION OF GREENBRIER MINERALS HOLDINGS, LLC TO THIRD AMENDED JOINT CHAPTER 11 PLAN

AND NOW comes Greenbrier Minerals Holdings, LLC ("Greenbrier"), by and through its undersigned counsel, Buchanan Ingersoll & Rooney PC, and files the within Objection (the "Objection") to the Third Amended Joint Chapter 11 Plan dated August 31, 2011 (the "Plan") of Lehman Brothers Holdings, Inc. and its affiliated debtors (collectively, the "Debtors"). In support of this Objection, Greenbrier respectfully states as follows:

## BACKGROUND

A.   Greenbrier, Lehman Commercial Paper Inc. and the Credit Agreement

1.   Greenbrier is a Delaware Limited Liability Company primarily in the business of mining, processing and selling coal from its operations in southern West Virginia. The rights of the holders of ownership interests in Greenbrier are governed by the Amended and Restated Operating Agreement ("Operating Agreement"), dated March 12, 2008.

2.   Lehman Commercial Paper Inc. ("LCPI"), one of the above-captioned Debtors, originally loaned $10,000,000 to Greenbrier in December of 2005 as bridge financing until Greenbrier could secure permanent financing. On July 25, 2006, Greenbrier entered into a Credit Agreement with WestLB Bank, as agent, and WestLB Bank and Metropolitan Life Insurance Company (the "WestLB Credit Agreement"). LCPI extended a second-lien term loan to Greenbrier with a commitment of $29,000,000 pursuant to a Term Loan Agreement, dated August 29, 2006 (the "Second-Lien Credit Agreement").

3.   LCPI acquired the WestLB Credit Agreement via an assignment on January 19, 2007.

4.   On May 1, 2007, LCPI and Greenbrier entered into an Amended and Restated Credit Agreement (the "Credit Agreement") in order to increase the facility amount to $94,000,000 and amend and restate the WestLB Credit Agreement (now held by LCPI) and the Second-Lien Credit Agreement.

5.   Ultimately, Greenbrier needed significant funds beyond the $94,000,000 to fund the development to a successful completion. LCPI agreed to finance Greenbrier through the completion of development and commencement of operations for, among other things, an increase in its ownership interest in Greenbrier from 15% to 49%.

6. Greenbrier's Operating Agreement was amended and restated on March 12, 2008 to grant LCPI an ownership interest in exchange for its commitment to fund the project through completion. Rather than expressly setting forth the full amount necessary to fund the project through completion, the Credit Agreement was structured so that increases in the amount of the facility were provided through amendments.

7. The Credit Agreement was amended seven times through June 3, 2008, primarily to increase the amount of availability to Greenbrier. At the time of the Seventh Amendment, the parties estimated that the total amount of funding necessary to fund Greenbrier through completion of development would be $206,000,000, an increase in the commitment by $50,000,000 from the Sixth Amendment. Thus, LCPI and Greenbrier entered into the Seventh Amendment, resulting in a maximum principal loan commitment of $206,000,000 (the "Commitment").

8. On or about September 18, 2008, with LCPI's support and encouragement, Greenbrier requested that LCPI fund $10,000,000 of the Commitment pursuant to the terms of the Credit Agreement (the "Pre-Bankruptcy Funding Request").

9. On September 18, 2008, LCPI approved, but failed to fund and has not yet funded, the Pre-Bankruptcy Funding Request.

10. On October 5, 2008 (the "Petition Date"), the Debtors' filed their voluntary chapter 11 petitions.

11. To date, Lehman has only funded $167,000,000 of the Commitment, leaving a total of $39,000,000 in availability unfunded.

3

B.   The Pending Litigation Between Greenbrier and LCPI

12. On June 22, 2010, LCPI filed a motion [Doc. No. 9729] (the "Stay Motion") to enforce the automatic stay against Greenbrier, requesting a finding from this Court that notwithstanding its bankruptcy filing, LCPI's ownership interest in Greenbrier remained property of it's chapter 11 estate.

13. On July 8, 2010, Greenbrier filed its objection (the "Stay Objection," together with the Stay Motion, the "Pending Litigation") [Doc. No. 10093] to the Stay Motion contending, *inter alia*, that (i) the LCPI's ownership interest in Greenbrier should be reduced because the current level of ownership units and related voting and sharing ratios were provided contingent upon LCPI satisfying its funding commitments under the Credit Agreement; and (ii) regardless of the amount of LCPI's ownership interest in Greenbrier, under Delaware law, LCPI was not, and is not, entitled to vote or participate in the corporate governance of Greenbrier after LCPI's bankruptcy filing.

14. On February 22, 2011, the Court entered an order approving a settlement agreement ("Settlement Agreement") between Greenbrier and LCPI regarding the Pending Litigation. Pursuant to the terms of the Settlement Agreement, upon a Combined Sale (as defined in the Settlement Agreement) of certain properties of Greenbrier, LCPI and Greenbrier have agreed to mutually release each other from any and all claims under the Credit Agreement.

15. As of the date of this Objection, a Combined Sale has not occurred.

C.   The Debtors' Plan and Proposed Assumption of the Credit Agreement

16. On August 31, 2011, the Debtors filed the Plan. Pursuant to the Plan, all executory contracts and unexpired leases are deemed rejected, except for an executory contract or unexpired lease "that is specifically designated in the Plan Supplement as a contract or lease to

4

be assumed by the Debtor." *See* Plan at § 11.1.  Furthermore, the Plan provides that "[e]ntry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan." *See* Plan at § 11.2.

17. On September 9, 2011, the Debtors served a Notice of (i) Approval of Disclosure Statement; (ii) Establishment of Record Date; (iii) Hearing on Confirmation of the Plan and Procedures for Objecting to Confirmation of the Plan; and (iv) Procedures and Deadline for Voting on the Plan (the "Confirmation Notice").  Pursuant to the Confirmation Notice, the hearing to confirm the Plan (the "Confirmation Hearing") is set for December 6, 2011 and the deadline to object or respond to the Plan is November 4, 2011 at 4:00 p.m.  *See* Notice at ¶¶ 2 and 6, respectively.  The Notice also states that "the Debtors will, within at least forty (40) days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each applicable Counterparty (as defined in the Notice), a notice, which shall include the cure amount as to such Counterparty's executory contract or unexpired lease to be assumed as set forth on such schedule to the Plan Supplement (the "Cure Notice")." *See* Notice at ¶ 9.

18. On October 25, 2011, the Debtors filed the Plan Supplement (as defined in the Plan) (Doc. No. 21254), which lists the Credit Agreement "and all other agreements related or ancillary thereto" as an executory contract to be assumed pursuant to the Plan (with no apparent corresponding cure amount). *See* Plan Supplement at page 627.

19. On November 3, 2011, after Greenbrier's request, Debtors' counsel provided Greenbrier with a copy of the Cure Notice.  The Cure Notice had not been received by

5

Greenbrier prior to this date. The Cure Notice provides a zero cure amount with respect to the Assumption of the Credit Agreement and any other related or ancillary agreements.

**OBJECTION TO PLAN**

A. <u>The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(1) Because it Does Not Comply with 11 U.S.C. § 365(b)</u>

20. Section 1129(a)(1) of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if…[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a). Section 365(d)(2) of the Bankruptcy Code provides that a debtor-in-possession may assume or reject an executory contract "at any time prior to the confirmation of a plan…" 11 U.S.C. § 365(d)(2).

21. Section 365(b) of the Bankruptcy Code requires a debtor to cure, or provide adequate of assurance that it will promptly cure, all defaults existing at the time an executory contract is assumed. *See* 11 U.S.C. § 365(b)(1). This includes both prepetition and postpetition defaults. *See In re Burger Boys*, 94 F.3d 755, 763 (2d Cir. 1996). Section 365(b) also requires that a debtor provide adequate assurance of future performance under an executory contract at the time of assumption. *See* 11 U.S.C. § 365(b)(1)(C). The burden rests with the debtor to show that it can provide adequate assurance of future performance. *See In re Tex. Health Enters.*, 72 Fed.Appx. 122, 126 (5th Cir. 2003).

22. Not all defaults are curable, however. "A default precludes assumption of an executory contract under §365 if it is both incurable and material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange. . ." *In re Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (in part quoting *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990)).

6

23. Here, LCPI's failure to fund the Pre-Bankruptcy Funding Request and remaining commitment after its bankruptcy goes to the very essence of the Credit Agreement. LCPI has not established that the defaults are curable, as it is impossible to ignore history and fund the Pre-Bankruptcy Funding Request. As a result of LCPI's defaults, the Greenbrier project could not be completed in the manner or timeframe contemplated. A $39 Million funding more than three (3) years after the fact will not save the project as previously envisioned. Greenbrier has suffered damages well in excess of the amount of the Pre-Bankruptcy Funding Request as a result of LCPI's failure to fund.

24. Even if the Court determines that LCPI's defaults under the Credit Agreement are curable, LCPI would be required at the very least to promptly pay to Greenbrier $39,000,000.00 representing the failed Pre-Bankruptcy Funding Request and the remaining unfunded availability as a cure plus compensate Greenbrier for Greenbrier's actual pecuniary loss. Nothing in the Plan Supplement or Plan indicate that LCPI has the financial wherewithal or intention to make such payments. Likewise, the Plan fails to provide any adequate assurances that LCPI will be able to continue to perform under the Credit Agreement post-assumption.

25. Additionally, the Plan Supplement references the Credit Agreement "and all other agreements related to or ancillary thereto." *See* Plan Supplement at p. 627. Such a generic reference is inappropriate and does not provide even the most basic information regarding exactly which documents are proposed to be assumed by the Debtors and whether such documents are executory in nature and thus assumable. For instance, it is not clear whether this "catch-all" includes the Operating Agreement. The scope of this "catch-all" is further confused by the fact that the Credit Agreement is identified on Exhibit 2, Part F of the Plan Supplement which is a list of to-be-assumed Private Equity Agreements. Greenbrier is entitled to adequate

7

notice of what agreements the Debtor proposes to assume and the proposed cure amounts associated therewith. The "catch-all" in the Plan Supplement falls well short of basic principles of due process. Absent proper and adequate notice, Greenbrier cannot properly evaluate whether the Plan is confirmable.

26. As with the Credit Agreement, LCPI has not established that the defaults under the Operating Agreement that are the subject of the Pending Litigation are curable, let alone whether LCPI has the ability to: (i) cure or provide adequate assurance of prompt cure of such defaults, (ii) compensate Greenbrier its actual pecuniary loss from such defaults, and (iii) provide adequate assurance of future performance under the Operating Agreement.

B.   The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(1) Because it Does Not Comply with 11 U.S.C. § 365(d)(2)

27. Exhibit 2 to the Plan Supplement states that "[i]n the event that the cure amount or requirements for adequate assurance, as ultimately determined either before or after the Effective Date, are in excess of the amounts claimed by the Debtors, the Debtors reserve the right to amend Exhibit 2 to remove the applicable contract(s), in which case the applicable contract(s) shall be deemed rejected as of the Effective Date in accordance with Section 11.1 of the Plan." *See* Plan Supplement at p. 323.

28. This reservation of rights by the Debtors to determine whether or not they intend to assume or reject an executory contract *after the Effective Date* is a clear violation of Sections 365(d)(2) and 1129(a)(1) of the Bankruptcy Code. These sections only permit assumption or rejection *prior* to plan confirmation. Because the Plan does not comply with Section 365(d)(2), it is not confirmable pursuant to Section 1129(a)(1).

8

## **RESERVATION OF RIGHTS REGARDING ASSUMPTION AND CURE NOTICE**

29.     Greenbrier objects to the Debtors' proposed assumption of the Credit Agreement and proposed zero dollar cure and intends to file a timely objection to the assumption of the Credit Agreement "and all other agreements related or ancillary thereto."  As set forth above, the Credit Agreement cannot be assumed because the Debtors have not established that the defaults are curable.  Even if the defaults were curable, the cure amount associated with the existing defaults under the Credit Agreement exceed $39 Million and, pursuant to Section 365(b) of the Bankruptcy Code, must be fixed by this Court prior to entry of any order approving assumption of the Credit Agreement.  To the extent that the "catch-all" includes the Operating Agreement, Greenbrier also objects on the grounds that the Debtors have not established that the Operating Agreement is assumable or that the Debtors have the ability to cure any defaults that may be cured.  Moreover, the Debtors' have failed to provide Greenbrier with adequate assurance of future performance under the Credit Agreement and the Operating Agreement.  Greenbrier reserves its right to object to the proposed assumption of the Credit Agreement, Operating Agreement and other agreements related and ancillary thereto and proposed cure amounts.

WHEREFORE, Greenbrier respectfully requests that the Court enter an order: (i) denying confirmation of the Plan; and (ii) granting such other and further relief as this Court deems just and equitable.

Dated:  November 4, 2011            **BUCHANAN INGERSOLL & ROONEY PC**

/s/ Christopher P. Schueller \_\_\_\_
William H. Schorling, Esquire (WS-6322)
Christopher P. Schueller (CS-9525)
Donald E. Malecki, Esquire
Timothy P. Palmer, Esquire
Zakarij O. Thomas, Esquire
620 Eighth Ave., 23rd Floor
New York, NY 10018
 (212) 440-4400 - Telephone
 (212) 440-4401 - Facsimile

Counsel for Greenbrier Minerals Holdings, LLC