# **EXHIBIT I**

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** | |
|---|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)    0000063500 | |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Special Financing Inc | Case No. of Debtor<br>08-13888 | | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Lehman Brothers Australia Limited (in liquidation)
C/O Mr Neil Singleton and Mr Stephen Parbery
PPB
Level 46, MLC Centre
19 Martin Place Sydney NSW 2000
Australia

Telephone number: +61 2 8116 3000    Email Address: mayres@ppb.com.au

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:    Email Address:

1. **Amount of Claim as of Date Case Filed:** $ See attached rider

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☒ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See attached rider
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
      (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____
Amount of Secured Claim: $_____    Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

FOR COURT USE ONLY

FILED / RECEIVED

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br>30 OCT 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>NEIL SINGLETON    [signature] | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
:     **Chapter 11**
**In Re**                                                            :
:     **Case no. 08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.** *et al.*, :
:
**Debtors**     :
-----------------------------------------------------------x

## RIDER TO PROOF OF CLAIM

1.  Lehman Brothers Australia Limited (in liquidation) ("LBA"), a company organized under the laws of Australia, acting through Mr Neil Singleton and Mr Stephen Parbery of PPB (the "Liquidators"), submits this Rider to the attached Proof of Claim (the "Proof of Claim") against the Lehman Brothers Special Financing Inc (the "Debtor") to more particularly describe the claims asserted and the bases thereof.

2.  On September 26, 2008 and pursuant to §436A of the *Corporations Act* 2001 (Cth), the directors of LBA appointed Mr Neil Singleton and Mr Stephen Parbery of PPB as Joint and Several Administrators of LBA.

3.  On October 2, 2009, Justice Rares of the Federal Court of Australia ordered that LBA be placed in liquidation (proceeding no. NSD 538 of 2009). The Liquidators have been appointed to wind up the affairs of LBA. It is common practice in Australia for companies to transition from administration to liquidation in an insolvency context. The information provided herein is set forth to the best of the Liquidators' knowledge.

4.      This Proof of Claim is lodged on behalf of LBA in connection with the July 2, 2009 Bar Date Order of the United States Bankruptcy Court, Southern District of New York, and the August 6, 2009 "Stipulation, Agreement and Order Between the Debtors and the Signatories to the Cross-Border Insolvency Protocol with Respect to the Bar Date Order," under which the Bar Date and Questionnaire Deadline shall be November 2, 2009.

5.      LBA has claims against the Debtor in the following categories: (i) contingent and/or unliquidated legal claims arising out of collateralized debt obligations ("CDOs") and other financial products that were promoted, marketed and sold in Australia by LBA to LBA's clients (the "Financial Products"); (ii) contingent and/or unliquidated legal claims arising out of the Debtor's conduct in delaying or preventing the flow of money to CDO noteholders (the "CDO Claim"); (iii) liquidated claims for the repayment of intercompany debts (the "Debt Claim"); and (iv) other common law and statutory claims.

6.      **Financial Products Claims**

6.1     Certain of LBA's creditors and former clients have commenced, or threatened to commence, proceedings against LBA in connection with the Financial Products that were sold in Australia by LBA. LBA has settled certain of those claims by paying the original face value of the CDO to the creditor or client, together with an allowance for interest, and having the CDO transferred from the creditor to LBA. LBA's creditors have identified potential claims that they allege LBA has against Lehman Brothers Holdings Inc ("LBHI") in connection with the Financial Products. LBHI designed, arranged,

2

promoted, marketed, issue, authorized, endorsed and/or sold the Financial Products which were subsequently promoted, marketed and sold in Australia by LBA to LBA's clients. The potential claims that have been identified are:

(a)  Alleged breach of directors' duties owed by LBHI to LBA in circumstances where LBHI was allegedly a de facto or shadow director of LBA (and therefore allegedly owed such duties to LBA);

(b)  LBHI's alleged negligence in designing, issuing, arranging, promoting, marketing, authorizing, endorsing and/or selling the Financial Products to be sold by LBA in Australia;

(c)  LBHI's alleged negligence in designing, issuing, arranging, promoting, marketing, authorizing, endorsing and/or selling the Financial Products to LBA;

(d)  LBHI's alleged contravention of §12DA and §12DB of the *Australian Securities and Investments Commission Act* 2001 (Cth), which provide that:

   (i)  A person must not, in trade or commerce, engage in conduct in relation to financial services that is misleading or deceptive or is likely to mislead or deceive; and

   (ii) A person must not, in trade or commerce, in connection with the supply or possible supply of financial services, or in connection with the promotion by any means of the supply or use of financial services:

      (a)  falsely represent that services are of a particular standard, quality, value or grade; or

3

(b) falsely represent that a particular person has agreed to acquire services; or

(c) represent that services have sponsorship, approval, performance, characteristics, uses or benefits they do not have; or

(d) represent that the person has a sponsorship, approval or affiliation it does not have; or

(e) make a false or misleading representation with respect to the price of services; or

(f) make a false or misleading representation concerning the need for any services; or

(g) make a false or misleading representation concerning the existence, exclusion or effect of any condition, warranty, guarantee, right or remedy;

(e) A claim against LBHI arising from LBA allegedly selling the Financial Products as LBHI's agent.

6.2 Attached to this Rider are documents received to date in which the potential claims listed above are identified, including:

(a) A letter dated July 31, 2009 from Piper Alderman (the lawyers acting for a number of the creditors who have commenced, or threatened to

4

commence, claims against LBA) to Clayton Utz, counsel for the Liquidators. *See* Exhibit A; and

(b)  A court document entitled "Particulars of prejudice in relation to Lehman entity releases" filed by Piper Alderman. *See* Exhibit B.

6.3  Legal proceedings have been commenced in Australia in which LBA's creditors have made claims against LBA in connection with the Financial Products and which give rise to unliquidated claims in favor of LBA against LBHI. The following supporting documentation is attached:

(a)  "Further Amended Application" filed on August 29, 2008 in the Federal Court of Australia Proceedings No. NSD 2492 of 2007 commenced by Wingecarribee Shire Council against LBA. *See* Exhibit C.

(b)  "Amended Statement of Claim" dated September 12, 2008 in the Supreme Court of Queensland Proceedings No. BS 6930/08 commenced by Twelve Down Pty Ltd and Rangali Pty Ltd against LBA. *See* Exhibit D.

(c)  "Claim" and "Statement of Claim" filed on September 2, 2008 in the Supreme Court of Queensland Proceedings No. 8589/08 commenced by Jon Brereton Parker and Pamela Jean Parker against LBA. *See* Exhibit E.

6.4   In addition, during the course of the administration of LBA, the administrators called for creditors to lodge proofs of debt. The majority of these proofs, which are too voluminous to attach to this Proof of Claim but which can be made available for review, relate to potential claims against LBA in connection with investments in the Financial Products through LBA.

6.5   To the extent that the Debtor was also responsible for, involved in or in any complicit in the design, promotion, marketing, issuing, arranging, authorizing, endorsing and/or selling of the Financial Products, LBA asserts against the Debtor those actual, potential, contingent and/or unliquidated claims referred to in paragraphs 6.2 to 6.4 above.

6.6   The documents described in paragraphs 6.2 – 6.4 represent only those actual, potential, contingent and/or unliquidated claims that have been made known to LBA to date and should not necessarily be considered exhaustive for the purposes of estimating the claims made in the attached Proof of Claim under 11 U.S.C. § 502(c).

6.7   A number of creditors lodged broad claims in the administration of LBA in relation to losses they allege were caused by LBA in connection with the Financial Products. While LBA and the creditors continue to hold the securities in which they invested, it is difficult at this time to determine with absolute

precision what losses, if any, may have been suffered. Without any admission of liability in respect of the creditors' claims, the Liquidators have estimated that claims against LBA in relation to the Financial Products could exceed $AUD 1.193 billion (excluding interest and costs), which converts to $USD 983,055,860 using the exchange rate applicable on September 15, 2008. This is a preliminary estimate provided to assist the Debtor and the Court in approving a distribution plan; LBA reserves its right to seek to amend, correct and supplement its Proof of Claim and this Rider if and when additional information is obtained.

7. **CDO Claim**

7.1 LBA and its clients held a significant number of CDO instruments. In summary, the CDOs operated in the following way:

(a) Investors acquired notes from the issuer, which would then utilize those monies to acquire collateral;

(b) Collateral took the form of cash/bonds or other low risk style financial instruments;

(c) The issuer would then use that collateral to acquire an interest in CDO notes, and would also enter into credit default swap arrangements (a "CDS") with a counterparty;

(d) In the ordinary course, the CDS was the ultimate source of interest and principal payments for each series of notes.

7.2   Ten of the CDOs in which LBA holds an interest involved the Debtor as the swap counterparty. Those CDOs should, in due course, unwind due to the event of default that has occurred under the ISDA. That event of default is the filing of various Lehman Brothers group companies for Chapter 11 bankruptcy protection in the US and other similar style external administrations that apply in other jurisdictions. The Liquidators have requested copies of the ISDAs and associated documents connected with the CDOs but have not to date been provided with copies of those documents.

7.3   As a consequence of the default, the trustee of the CDOs should generally be able to seize the collateral underlying the CDO and distribute it to the CDO note holders, rather than to the Debtor as the swap counterparty.

7.4   The Debtor has prevented, or delayed, the distribution by the trustee of the collateral underlying the CDOs, thereby causing loss to LBA. LBA claims that loss in this Proof of Claim to the extent that it is a pre petition claim.

8.    **Debt Claim**

8.1   The Debtor owes LBA the sum of $AUD526,502.00 (excluding interest and costs), which converts to $USD 433,848.18 using the exchange rate applicable on September 15, 2008, on account of intercompany transactions.

## 9. Reservation of Rights

9.1  This Proof of Claim is filed to protect LBA from forfeiture of its claims by reason of the Bar Date. The filing of this Proof of Claim is not and should not be construed to be as: (i) a waiver or release of the rights of LBA against any other entity or person liable for all or part of any claim described herein; (ii) a consent by LBA to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving LBA; (iii) a waiver or release of LBA's right to trial by jury in this Court or in any other court in any proceeding as to any and all matters triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (iv) consent by LBA to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (v) a waiver or release of LBA's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (vi) a waiver of the right to seek to have the reference withdrawn or contest the Bankruptcy Court's jurisdiction with respect to the subject matter of these claims, any objection thereto or other proceeding which may be commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving LBA; (vii) a waiver of any right to the subordination, in favor

of LBA, of indebtedness or liens held by creditors of the Debtor or any affiliated debtor; (viii) a waiver of any right to set off the Claim; or (ix) an election of choice of law or remedy that waives or otherwise affects any other remedy of LBA.

9.2   LBA reserves the right to withdraw this Claim for any reason whatsoever.

9.3   In addition, LBA reserves all rights and remedies against all affiliates of the Debtor and any other third parties.

9.4   LBA reserves the right, in accordance with Bankruptcy Court orders, rules and procedures to seek to amend, modify and/or supplement this Proof of Claim and Rider, including to state with greater specificity the amount and/or details of the claims set forth herein and/or to file additional claims as may be necessary or appropriate.

9.5   LBA reserves the right, in accordance with the Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies to seek to amend, modify and/or supplement this Proof of Claim and Rider, including to state with greater specificity the amount and/or details of the claims set forth herein and/or to file additional claims as may be necessary or appropriate.

9.6   LBA expressly reserves any and all rights, defenses, claims, setoffs, and recoupments to which LBA is or may be entitled in law or in equity.

9.7   The filing of this Claim shall not constitute a concession or admission by LBA of any liability or the existence or veracity of any facts with respect to any claim, potential claim, or contingent claim that has been or may be asserted against LBA by third parties.

9.8   Nothing contained herein shall be deemed a waiver of any rights, claims or defenses that LBA may have.