Hearing Date and Time: December 6, 2011 at 10:00 a.m.
Objection Deadline: November 4, 2011 at 4:00 p.m.

LOWENSTEIN SANDLER PC
Michael S. Etkin
Ira M. Levee
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
212. 262.6700 (Telephone)
212. 262.7402 (Facsimile)

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the MBS Class*

**IN THE UNITED STATES BANKRUPTCY
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al*., | Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| Debtors. | Re: Doc. No. 19627 |

**MBS LITIGATION LEAD PLAINTIFF'S LIMITED
OBJECTION TO CONFIRMATION OF THIRD
AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN
BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

The Local 302 and 612 of the International Union of Operating Engineers– Employers Construction Industry Retirement Trust (the "Retirement Trust"), the court-appointed lead plaintiff (the "Lead Plaintiff") in the consolidated securities class action pending in the United States District Court for the Southern District of New York (the "District Court") entitled *In re Lehman Brothers Mortgage Backed Securities Litigation*, Case No. 08-6762 (LAK) (the

23273/2
11/04/2011 18759729.2

"MBS Litigation"),[1] by and through its undersigned counsel, submits this limited objection (the "Objection") to confirmation of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Doc. No. 19627] (the "Third Amended Plan"), and states the following:

## BACKGROUND

**A.    The MBS Litigation**

1.    On July 23, 2008, a class action entitled *New Jersey Carpenters Health Fund, et al. v. Lehman XS Trust Series 200S-5N, et al.*, was filed in the Supreme Court of the State of New York, County of New York.  On July 29, 2008, defendants Lehman Brothers, Inc. ("LBI") and Structured Asset Securities Corporation ("SASCO", one of the Debtors herein), removed the action to the District Court pursuant to 28 U.S.C. §§1441 and 1446.  The case was assigned Case No. 08-6762.  Thereafter, another case (08-10686) asserting similar causes of action was filed.

2.    On January 9, 2009, Judge Lewis A. Kaplan, U.S.D.J., entered an order consolidating Case No. 08-10686 with Case No. 08-6762 and appointing the Retirement Trust as Lead Plaintiff.  On February 23, 2009, Lead Plaintiff, together with New Jersey Carpenters Health Fund ("Carpenters") and Boilermakers-Blacksmith National Pension Trust ("Boilermakers"), on their own behalf and on behalf of all persons and entities (the "MBS Class") who purchased or otherwise acquired interests in the Issuing Trusts (identified in ¶ 32 of the Operative Complaint, defined below) pursuant or traceable to false and misleading Registration Statements with accompanying Prospectuses filed with the SEC by SASCO on September 26, 2005 and August 8, 2006, filed a consolidated securities class action complaint (the "Operative Complaint").

---

[1]    By order of the Judicial Panel on Multidistrict Litigation, the MBS Litigation was consolidated with a number of other federal actions against Lehman Brothers Holdings, Inc. and other defendants under the caption *In re Lehman Brothers Securities and ERISA Litigation*, Master Case No. 09-MD-2017 (LAK).

3.       The defendants in the MBS Litigation are Mark L. Zusy, Samir Tabet, James J. Sullivan, Lana Franks, Edward Grieb, Kristine Smith and Richard McKinney (the "Individual Defendants"), and ratings agency underwriters (the "Underwriter Defendants", together with the Individual Defendants the "Non-Debtor Defendants").²

4.       In summary, the MBS Litigation arises from the role of LBHI, LBI and SASCO, among others, in the conversion of hundreds of thousands of primarily subprime "Alt-A" residential mortgages into $93.24 billion of purportedly instrument grade residential mortgage backed securities, which were then sold to Lead Plaintiff and members of the MBS Class pursuant to the relevant offering documents. Among other allegations, the Operative Complaint alleges that the relevant offering documents contained material misstatements and omitted material information in violation of Sections 11, 12 and 15 of the Securities Act of 1933.

5.       On February 5, 2010, the District Court entered an Order granting motions to dismiss the MBS Litigation as to the Underwriter Defendants. That Order is currently on appeal to the Second Circuit Court of Appeals. On February 17, 2010 (as amended on February 24, 2010), the District Court granted in part and denied in part, the Individual Defendants' motions to dismiss the MBS Litigation. On October 11, 2011, the District Court entered an Order setting a status and scheduling conference for November 8, 2011.

**B.   The Chapter 11 Case.**

6.       On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On and after the Petition Date, SASCO and other affiliates of LBHI (together with LBHI, the "Debtors") also filed petitions for

---

[2]   By virtue of these chapter 11 cases, the MBS Litigation is stayed against the Debtors; thus, the Operative Complaint, which was filed in the MBS Litigation after the Petition Date, does not assert claims against any of the Debtors. As set forth in paragraph 8, *infra*, Lead Plaintiff timely filed a proof of claim for damages based in large part on the claims asserted in the Securities Litigation. Proofs of claim were filed by Carpenters and Boilermakers.

-3-

relief under Chapter 11. The Debtors' Chapter 11 Cases are being administered jointly in this Court.

7. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108(a).

8. On September 21 and 22, 2009, Lead Plaintiff (individually and on behalf of the MBS Class), Carpenters and Boilermakers timely filed Proofs of Claim (the "MBS Securities Claims") for damages arising out of the Debtors' violations of federal securities laws as described in the MBS Litigation.

9. On July 1, 2011, the Debtors filed their Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliates [Doc. No. 18204] (the "Second Amended Plan"), together with the Disclosure Statement for the Second Amended Plan [Doc. No. 18205].[3] On June 29, 2011, the Debtors filed the Amended Motion for approval of the Disclosure Statement and related relief [Doc. No. 18126] (the "Disclosure Statement Approval Motion").

10. On August 11, 2011, Lead Plaintiff filed its Limited Objection to the Disclosure Statement for the Second Amended Plan (the "Disclosure Statement Objection") [Doc. No. 19169].

11. On August 24, 2011, Debtors filed their Amended Response to Objections to Approval of Disclosure Statement (the "Amended Response") [Doc. No. 19487]. Simultaneously therewith, Debtors filed their Revised Second Amended Plan [Doc. No. 19482] and accompanying Disclosure Statement (the "Disclosure Statement") [Doc. No. 19484]. The

---

[3] Previously, the Ad Hoc Group of Lehman Brothers Creditors and the Non-Consolidation Plan Proponents filed alternative competing Plans and Disclosure Statements. On July 21, 2011, this Court entered an Order approving the stipulation by the alternative plan proponents whereby the Ad Hoc Group and the Non-Consolidation Plan Proponents agreed to, *inter alia*, hold in abeyance and not prosecute their proposed alternative plans, subject to a termination event as defined in the stipulation. Lead Plaintiff reserves its rights in the event either of the alternative plan proponents attempts to prosecute an alternative plan.

-4-

Disclosure Statement for the Revised Second Amended Plan attempted to address some, but not all, of the issues raised in Lead Plaintiff's Disclosure Statement Objection.

12.     The hearing on approval of the Disclosure Statement was held on August 30, 2011, at which time the Court considered, to the extent not reserved for the hearing on confirmation, the remaining objections to the Disclosure Statement. On September 1, 2011, the Debtors filed the Third Amended Plan [Doc. No. 19627] and accompanying Disclosure Statement [Doc. No. 19629]. On the same date, the Court entered the Amended Order (I) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan (the "<u>Disclosure Statement Approval Order</u>") [Doc. No. 19631] and scheduled the hearing on confirmation of the Third Amended Plan for December 6, 2011.

13.     Lead Plaintiff's Disclosure Statement Objection was resolved in part through agreed upon modifications included in the Disclosure Statement for the Third Amended Plan. The balance of the issues raised in the Disclosure Statement Objection was reserved for confirmation.

## **OBJECTION**

14.     Accordingly, Lead Plaintiff objects to confirmation of the Third Amended Plan on the following grounds:

    (a)    the Third Amended Plan fails to provide an adequate protocol for the preservation and/or destruction of the Debtors' records or documents;

  (b)  the Third Amended Plan fails to provide any basis for the extension of stays or injunctions for a period beyond the Effective Date and such extension is inappropriate and prejudicial to Lead Plaintiff;

  (c)  despite a reference in the Disclosure Statement (§X.C.2.a(xvi), at 87), that the Third Amended Plan will not impact the rights of Lead Plaintiff with respect to pursuing its claim against the Debtors subject to available insurance, the Third Amended Plan does not provide that Lead Plaintiff and the MBS Class have the right to proceed with their claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions, discharge or distribution under the Plan.

### A. The Disclosure Statement Fails to Describe and the Plan Fails to Provide an Appropriate Mechanism for the Preservation of Documents.

15. The Plan Administrator is authorized to establish a liquidating trust for a Debtor in order to liquidate and distribute that Debtor's assets, but "only if the Plan Administrator determines that one or more Liquidating Trusts are in the best interests of one or more Debtors and holders of allowed claims against or Equity Interests in such Debtors." *See* Plan, §§10.1 and 10.2. A liquidating trust established under Plan § 10.1 shall be dissolved no later than three (3) years from its creation (subject to extension).[4] Plan §10.10.

16. The Plan Administrator shall continue the operations of those Debtors, for which a liquidating trust is not established, until such time as the Plan Administrator determines to dissolve the Debtor and wind down its operations. Plan, §§7.5 and 7.6. Although the Plan appears to provide for the continued corporate existence of the Debtors, Plan, §7.5, it also provides for the ultimate dissolution and winding down of each Debtor within the sole discretion

---

[4] It is unclear whether the Liquidating Trust is entitled to an extension of three (3) years in the aggregate or multiple extensions each up to three years, thereby giving the Liquidating Trustee the unilateral authority to maintain the Liquidating Trust for possibly an indefinite period.

of the Plan Administrator. Plan, §7.6. By virtue of the foregoing, this is a liquidating Plan. "[T]he Plan Administrator shall wind down, sell and *otherwise liquidate* assets of the Debtors." Plan §7.6 (emphasis added). There is no "reorganized debtor."

17. The Plan Administrator is charged with maintaining the books and accounts of the Debtors upon the Effective Date.[5] Plan, §6.1(b)(vii). However, the Third Amended Plan fails to provide for a protocol for the preservation or abandonment of the Debtors' assets, which include books, records, accounts and other documents, in any format (*e.g.*, electronic or hard copy) (collectively, the "Documents") after (a) the Debtor has been dissolved or wound down as determined by the Plan Administrator in its sole discretion, (b) the duties of the Plan Administrator are terminated or (c) the Debtors' assets are transferred to a liquidating trust.

18. Indeed, whether the Debtors' assets are within the control, possession or custody of the Plan Administrator or a liquidating trustee, a document preservation protocol must be established to prevent the destruction or abandonment of Documents, especially where the Documents may include critical information relevant to the MBS Litigation and/or the MBS Securities Claims, and may not be available elsewhere.

19. The absence of such a protocol prejudices the rights of Lead Plaintiff, members of the MBS Class and other parties in interest. At the very least, some mechanism for providing notice and an opportunity to be heard by this Court or a court of competent jurisdiction must be established before any such Documents are abandoned, destroyed or rendered otherwise unavailable.

20. The Debtors, the Plan Administrator and any liquidating trustee must advise parties in interest through the Third Amended Plan of their intention with respect to the

---

[5] During the Chapter 11, the Debtors are compelled to maintain and preserve their assets unless authorized by the Court to abandon them after notice and a hearing. 11 U.S.C. §554(a).

Documents. Therefore, the Third Amended Plan or any Order confirming the Third Amended Plan should include the following language:

> From and after the Effective Date, the Debtors, the Plan Administrator, any Liquidating Trustee or any transferee of the Debtors' books, records, documents, files, electronic data (collectively, the "Documents"), shall preserve and maintain all of the Documents, and the Debtors, the Plan Administrator, any Liquidating Trustee and any other transferee of the Documents shall not destroy or otherwise abandon any such Documents absent further order of this Court, or a court of competent jurisdiction, after a hearing on notice to parties in interest, including Lead Plaintiff, with an opportunity to be heard.

**B.    The Extension of Stays and Injunctions under the Third Amended Plan is Inappropriate and Prejudicial.**

21.    Pursuant to the Plan, stays and injunctions pursuant to 11 U.S.C. §105 or 362, extant on the Confirmation Date remain in effect until the closing of *all* of the Chapter 11 Cases. Plan, §13.7. There are more than twenty (20) Debtors. Plan, §1.38.

22.    A case cannot be closed until after it has been fully administered and the Plan Administrator has obtained authority from the Court to close the Case. Plan, §6.6. Therefore, the extension of stays and injunctions is not fixed. Indeed, no outside date is even suggested. Furthermore, by virtue of Plan §6.6, the closing of each Chapter 11 Case remains within the control of the Plan Administrator, Plan, §6.1(b), subject to approval of the Court. Plan, §6.6.

23.    Pursuant to the Plan, the Plan Administrator is authorized to prosecute all Litigation Claims (*i.e.,* the Debtors' Causes of Action). Plan, §6.1(b)(iv). To the extent these Litigation Claims include the Estates' causes of action against the Debtors' current and/or former officers and directors, underwriters or others, they may have some of the same factual predicates as the claims of Lead Plaintiff arising from the allegations in the MBS Litigation.

24.    Because of the Third Amended Plan's indefinite extension of stays and injunctions, the Plan Administrator can prevent or, at the very least, significantly delay Lead

-8-

Plaintiff from obtaining access to relevant discovery, while pursuing these competing Litigation Claims. There is no basis for the Plan Administrator to be able to assert the automatic stay (as a sword, not a shield) beyond the Effective Date of the Plan to frustrate Lead Plaintiff's ability to obtain relevant documents in the MBS Litigation, while having those documents available to pursue its own claims. This is precisely the type of offensive use of the automatic stay that courts refuse to tolerate. *Hydramar Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. LEXIS 24828, *13 (E.D. Pa. 1986), citing *Bohack corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir. 1979) (finding that a debtor using the bankruptcy process and the automatic stay to its advantage may not serve the purpose of the Bankruptcy Code; the automatic stay "has no application where the debtor is in the position of assailant rather than victim"). Indeed, "[o]ur system of laws universally frowns on a party that would use the stay as both a sword and a shield." *In re A.H. Robbins & Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987); *In re Johns-Manville*, 31 B.R. 965, 974 (S.D.N.Y. 1983) (accepting the view that the bankruptcy protective shield should not be unfairly converted into a sword of aggression); *see also Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991).

25. The Third Amended Plan provides no explanation to justify any extension of the automatic stay (or other stays or injunctions) beyond the Plan Effective Date or the entry of the Order confirming the Third Amended Plan. The automatic stay should not be available to the Plan Administrator or any liquidating trustee for an extended period of time to frustrate the prosecution of the claims of Lead Plaintiff against common defendants to gain a fundamentally unfair litigation advantage. Lead Plaintiff should not be bound by this provision, nor should Lead Plaintiff be subject to any stay or injunction contemplated by the provision that would interfere with its discovery rights in the MBS Litigation after the Effective Date.

**C.    The Third Amended Plan Fails to Disclose Whether It Intends to Deny Lead Plaintiff the Right to Proceed with its Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan.**

26.    Upon information and belief, the Debtors maintain liability insurance policies (the "D&O Policies")[6] in favor of their directors and officers for claims asserted in the MBS Litigation, as well as for claims against the Debtors directly for violations of federal securities laws. In response to Lead Plaintiff's objection to the Disclosure Statement, *see* Disclosure Statement Objection, ¶¶ 30 to 32, incorporated herein, the Debtors modified the Disclosure Statement to include:

> Nothing in the Plan or in any Order confirming the Plan shall preclude the lead plaintiffs (*sic*) and the putative class from seeking relief to pursue their Claim against the Debtors to the extent of available insurance proceeds.

D.S. § X.C.2.a(xvi).[7]

27.    However, notwithstanding the inclusion of the foregoing in the Disclosure Statement, the Plan, which is the operative document, does not contain the same, or even a substantially similar, provision. While inclusion of the language in the Disclosure Statement is relevant, unless the language is also in the Third Amended Plan or the Order confirming the Third Amended Plan, its enforceability is questionable.

28.    Lead Plaintiff maintains that it and the MBS Class are entitled to look to the proceeds of such insurance for payment in connection with the claims of Lead Plaintiff and the MBS Class and may, at least, pursue these Claims against the Debtors to the extent of such available insurance post-Confirmation. Because Lead Plaintiff may not have a direct action

---

[6]    The Plan provides that to the extent any insurance policy constitutes an executory contract, it shall be deemed assumed under the Plan. Plan, §11.5. The Debtors do not believe that any insurance policy is an executory contract. *See* Plan Supplement, Ex. 2, Part G [Doc. No. 21254].

[7]    Lead Plaintiff had suggested that the Plan also provide: "The Claims of Lead Plaintiff and the putative MBS Class against the Debtors, to the extent of available insurance, are preserved and not discharged by the Plan." *See* Disclosure Statement Objection, at ¶ 32

-10-

against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be accessed through the pursuit of the claims asserted in the MBS Litigation. Therefore, the Plan should not impact the rights of Lead Plaintiff or the MBS Class to pursue their claims against the Debtors to the extent of the proceeds of the D&O Policies.

29.     Because the Debtors have agreed that Lead Plaintiffs have the right to pursue its claims against the Debtor to the extent of available insurance by virtue of the aforesaid added language in the Disclosure Statement, the Third Amended Plan must also include that language, as well as the additional language suggested by Lead Plaintiff (*see* n. 7, *supra*) and state that:

> Nothing in the Plan, or in any Order confirming the Plan, shall preclude Lead Plaintiff and the putative MBS Class from pursuing their Claims against the Debtors, to the extent of available insurance coverage and proceeds, in the District Court. The Claims of Lead Plaintiff and the putative MBS Class against the Debtors, to the extent of available insurance, are preserved and not discharged by the Plan.

**D.    The Plan Provides Broad Releases and Injunctions that May Improperly Impact the Claims of Lead Plaintiff and the Putative MBS Class Against Non-Debtors, and the Right to Discovery From the Debtors, the Plan Administrator and the Liquidating Trusts.**

30.     The Third Amended Plan provides, for the release of, and to the extent released, the permanent injunction of, Claims of entities which held, hold or may hold Claims against or Interests in the Debtors, against certain non-Debtors, which may include some of the Individual Defendants in the Securities Litigation. Plan, §13.3 and 13.5. Specifically, the Plan releases such Claims against the Released Parties and the PSA Creditors "taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases . . . or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreements, or any contract, instrument, document or other agreement related thereto." Plan, §13.3. Released Parties include, *inter alia*, the Debtors, the Independent Directors, as well as the Debtors' officers and directors serving during the pendency

of the Chapter 11 Cases. Plan, §1.136. The Individual Defendants in the MBS Litigation were officers and/or directors of one or more of the Debtors and may have served in that capacity during the pendency of the Chapter 11 Cases, and therefore may be a Released Party under the Third Amended Plan. A PSA Creditor is an entity (listed on Plan Schedule 4, as may be amended) that is a party to a Plan Support Agreement with the Debtors and any officer or director thereof who served during the pendency of the Chapter 11 Cases. Plan, §1.131. Although Schedule 4 does not currently include any Non-Debtor Defendants, it is subject to being "amended from 'time to time.'" *Id.*

31. While the Plan appears to release only those claims for acts taken or omitted to be taken during the Chapter 11 Cases and excludes claims for acts taken or omitted to be taken prior to the Commencement Date (September 15, 2008), Plan §13.3, to the extent that some of the Claims asserted in the MBS Litigation against the Non-Debtor Defendants may have arisen on or after the Commencement Date, the release is improper. Furthermore, the term of service of an Individual Defendant may result in the release of claims against Non-Debtors, which is not permissible (*see* ¶33, *infra*).

32. Likewise, to the extent a Claim or Cause of Action is released, the Plan Injunction permanently enjoins such holders of Claims against or Interests in the Debtors from commencing, continuing or conducting in any manner any proceeding against a Released Party. Plan, §13.5. Because the Plan Injunction provision is directly related to the Plan Release provision, to the exent the Plan Release provision is deemed improper (*see* ¶31, *supra*), the Plan Injunction should likewise not be permitted.

33. The Plan release and injunction, to the extent they may be interpreted to impact, enjoin, prohibit and/or preclude Lead Plaintiff from asserting Claims in the MBS Litigation or seeking discovery post-Effective Date, are inappropriate. The Plan offers no basis or

justification for such broad release and injunction provisions which are justified, if at all, only in the most extraordinary and unusual circumstances, *see Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d. Cir. 2005), none of which exist or have been demonstrated herein.  Moreover, as a threshold question, the Court must determine whether or not it even has jurisdiction to determine the validity of the Plan release and injunction provisions as they relate to the Claims against non-Debtors.  The Third Circuit in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000), 203 F.3d at 214 n. 12, has expressed its concern "that the Bankruptcy Court apparently never examined its jurisdiction to release and permanently enjoin [the third party's] claims against non-debtors."  While certain matters between non-debtor third parties affecting the debtor and the bankruptcy case may be within the subject matter of the Court, it is not without limits and the Court "cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin [non-debtor claims]. *Id.*  See also, *Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 152 (2d Cir. 2010) "*Manville 2010*"); *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008) ("*Manville 2008*");  In *In re Dreier LLP*, 429 B.R. 112 (Bankr. S.D.N.Y. 2010).

34.     If the Debtors do not intend such impermissible releases, the following language should be included in the Third Amended Plan and any Order confirming the Third Amended Plan.

> Nothing in the Plan or in any order confirming the Plan shall or is intended to (i) affect, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any Non-Debtor Defendants in the MBS Litigation or any non-Debtor, or (ii) preclude Lead Plaintiff and/or the MBS Class from seeking discovery from the Debtors, the Plan Administrator or such other transferee of the Debtors' assets.

## CONCLUSION

35. Based on the foregoing, Lead Plaintiff respectfully requests that, if the Third Amended Plan or Confirmation Order do not resolve the foregoing issues, an order be entered (i) denying confirmation of the Third Amended Plan and (ii) granting such other and further relief as the Court deems just and proper.

Dated: November 4, 2011
      New York, NY

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *Michael S. Etkin*
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York  10022

-- and --

65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the MBS Class*

-- and --

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Joel P. Laitman
Christopher Lometti
Daniel B. Rehns
88 Pine Street, 14th Floor
New York, New York  10005
212.838.7797 (Telephone)
212.838.7745 (Facsimile)

*Lead Counsel for Lead Plaintiff and the MBS Class*