**Hearing Date and Time: December 6, 2011 at 10:00 a.m. (Eastern Time)**
**Plan Objection Deadline: November 4, 2011 at 4:00 p.m. (Eastern Time)**

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
Scott Cargill, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
212. 262.6700  (Telephone)
212. 262.7402  (Facsimile)

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to LibertyView (as defined below)*

**IN THE UNITED STATES BANKRUPTCY**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al*., | Case No. 08-13555 (JMP) Jointly Administered |
| Debtors. | Re:  Doc. Nos. 19627 and 19631 |

**LIMITED OBJECTION OF LIBERTYVIEW TO THIRD AMENDED**
**JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS**
**HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

LibertyView (as defined below), through its undersigned counsel, respectfully submits this limited objection (the "Objection") to confirmation of the *Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket # 19627] (the "Plan"), and states the following:

22312/14
11/04/2011 18731811.2

## BACKGROUND

**A.     LibertyView**

1.     LibertyView is a group of investment funds[1] (collectively, "LibertyView") that hold claims against multiple Lehman Brothers entities (defined below), including several of the Debtors, as a result of agreements entered into and business conducted prior to the Commencement Date (defined below).

2.     LibertyView's transactions were conducted pursuant to certain Customer Account Prime Brokerage Agreements (each a "PBA"), executed between the various LibertyView entities, Lehman Brothers, Inc. ("LBI"), Lehman Brothers (Europe), Inc. ("LBIE") and certain Debtor entities, including Lehman Brothers Holding Inc. ("LBHI").  LibertyView is also a party to certain Margin Lending Agreements (each a "MLA") with LBIE.  The MLAs provide that loans of securities made pursuant to the MLAs are governed by the terms of a standard-form Global Master Securities Lending Agreement (May 2000 version) (the "GMSLA") as modified and supplemented by the Schedule to GMSLA and 2000 U.K. Tax Addendum (collectively with the PBAs and MLAs, the "Agreements").

**B.     The Chapter 11 Proceedings**

3.     On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On and after the Petition Date, affiliates of LBHI (together with LBHI, the "Debtors") also filed petitions for relief under Chapter 11 (together with the LBHI petition, the "Chapter 11 Cases").  The Debtors' Chapter 11 Cases are being administered jointly in this Court.

---

[1]   The funds include LibertyView Credit Opportunities Fund, L.P., LibertyView Credit Select Fund, LP, LibertyView Funds, L.P., LibertyView Global Risk Arbitrage Fund, L.P., and LibertyView Special Opportunities Fund, L.P.

4. On September 19, 2008 (the "Commencement Date"), a proceeding (the "SIPC Proceeding") was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI, the regulated broker/dealer subsidiary of LBHI. James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed by the Securities Investor Protection Corporation on that date. The SIPC Proceeding was referred to and is also being administered in this Court.

5. As of the Commencement Date, LibertyView held a positive net position against LBIE and all of its affiliated counterparties to the PBAs (collectively, "Lehman Brothers"), including LBHI and LBI, on account of the Agreements in excess of $1.1 billion. LibertyView also holds and has asserted unliquidated claims against LBHI and other debtors in the Chapter 11 Proceedings for damages and costs related to Lehman Brothers' failure to return LibertyView's securities, cash and other instruments (the "Customer Property") held by Lehman Brothers in connection with the Agreements. In addition, LibertyView holds a claim for all cash and consideration that was received by Lehman Brothers after the Commencement Date on account of LibertyView's Customer Property, including, but not limited to interest payments, dividends and maturities of securities, which LibertyView is entitled to receive pursuant to the Agreements and applicable law.

6. In September 2009, LibertyView timely filed proofs of claim against LBHI, Lehman Brothers Financial SA ("LBFSA") and Lehman Brothers Special Financing Inc. ("LBSF"), all parties to the PBAs whose cases are or were administered in the Chapter 11 Proceedings.[2]

7. On July 1, 2011, the Debtors filed their Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Second Amended Plan") [Docket No. 18204], together with the Disclosure Statement for

---

[2] Each of the investment funds constituting LibertyView filed timely proof of claims for: (i) direct claims against LBHI, LBFSA and LBSF, and (ii) claims based on a guarantee against LBHI.

-3-

Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 18205]

8.     On August 11, 2011, LibertyView filed its limited objection to the disclosure statement for the Second Amended Plan (the "LibertyView DS Objection") [Docket No. 19167]. The Debtors took the position that the objections raised in the LibertyView DS Objection were objections to plan confirmation[3]. It was agreed between the parties that consideration of LibertyView's objections was deferred to the plan confirmation hearing.

9.     On September 1, 2011, the Debtors filed their Disclosure Statement for the Plan [Docket No. 19629]. Also on September 1, 2011, this Court entered an Amended Order (I) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan [Docket No. 19631] (the "Amended Order").

10.    Pursuant to the Amended Order, the hearing to consider confirmation of the Plan will be held on December 6, 2011. Objections to confirmation of the Plan must be filed by November 4, 2011.

11.    The provisions of the Plan and the Second Amended Plan are identical with respect to the objections raised by LibertyView in the LibertyView DS Objection and in this Objection.

---

[3]     *See* Debtors' Response to Objections to Approval of Proposed Disclosure Statement at p. 5. [Docket No. 19448]

**LIMITED OBJECTION**

**C.    The Notice Procedure Proposed to Allow the Setoff of Amounts Outstanding Against Claims Improperly Shifts the Burden to Object Onto Claimants.**

12.    Section 8.10 of the Plan provides the Debtors with the right to "setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtor may have against the Claimant" by giving the Claimant written notice of ten (10) Business Days. *See* Plan, § 8.10.  Then, the Claimant is saddled with the responsibility to object to the proposed setoff or recoupment. *Id.*  No explanation is provided or basis given for this procedure, which essentially and improperly shifts the burden onto the Claimants.

13.    A debtor's setoff right is governed by principles of well-settled setoff law. *In re Braniff Airways, Inc.*, 42 B.R. 443, 450 (Bankr. N.D.T.X. 1984) ("this Court declines to view [Section 106(b)] as a mandate that the debtor's setoff right is not governed by any principles of established setoff law but is *carte blanche* authority for the debtor to do as it pleases").  The right to setoff arises as a defense under state law which is preserved by section 558 of the Bankruptcy Code. *In re Women First Healthcare, Inc.*, 345 B.R. 131, 134 (Bankr. D. Del. 2006).  The right of setoff must be <u>established</u> by the party wishing to utilize such right in order to assert the setoff as a defense reserved by section 558. *Id.*

14.    The Debtors' proposed procedure for asserting alleged rights of setoff is flawed. The Debtors seek to impose a procedure whereby they need only provide a written notice, instead of filing a motion with this Court to obtain the requisite authority to exercise whatever setoff rights the Debtor may hold.  As a result, an inappropriate presumption is created that the Debtors have a right of setoff.  Effectively, they are removing the requirement that they must first establish before the Court that they have the right to setoff under relevant law.

15. The proposed process is particularly inappropriate here, where perhaps millions of dollars may be at stake and the Debtors require a Claimant to file a written objection with the Court within ten (10) Business Days of receiving the written notice of setoff. This unilateral shifting of the burden is contrary to the fundamental notion that debtors do not have *carte blanche* authority to setoff any amounts they believe are owed against Claims without first establishing that they are entitled to the setoff. *Cf. In re Braniff Airways, Inc.*, 42 B.R. at 450.

16. The Debtors must be required, absent agreement with the Claimant, to file a motion seeking the right to setoff against its Claim, in the event they determine they would like to request such relief. The filing of a motion is the expected, appropriate and routine procedure to request the right to setoff. The proposed procedure would be wholly inadequate as a means to simply allow the Debtors to setoff any amount they believe is owed against a Claim.

17. To remedy this defect, Section 8.10 of the Plan should be modified as follows:

> <u>Setoffs and Recoupment</u>. **As approved by the Court after proper motion and a hearing,** any Debtor may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim or any Claims of any nature whatsoever that the Debtor may have against Claimant; **[deletion];** *provided, however,* that neither the failure to setoff against or recoup from any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

**D. The Plan Improperly Enjoins Claimants' Rights to Setoff.**

18. The Plan provides for the release of, and to the extent released, the permanent injunction of, Claims of entities which held, hold or may hold Claims against or Interests in the

-6-

Debtors, against the Debtors and certain non-Debtors. Plan, §13.3 and 13.5. Also, the Plan releases Claims against Released Parties and the PSA Creditors.[4]

19. Likewise, to the extent a Claim or Cause of Action is released, the Plan Injunction permanently enjoins such holders of Claims against or Interests in the Debtors from commencing, continuing or conducting in any manner any proceeding against a Released Party. Plan, §13.5. Because the Plan Injunction provision is directly related to the Plan Release provision, to the extent the Plan Release provision is deemed improper, the Plan Injunction should likewise not be permitted.

20. The Plan release and injunction provisions may be interpreted to impact, enjoin, prohibit and/or preclude a creditor from asserting its right to setoff against the Debtors but allow other parties, specifically the United States Government, to enjoy rights of setoff notwithstanding the release provisions. Section 13.6 of the Plan provides that nothing in the Plan shall discharge, release or otherwise preclude any valid right of setoff or recoupment of the United States Government. Section 13.5 enjoins all other Claimants from asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated by the Plan. *See* Plan, §13.5. Therefore, the Plan creates an inequity in creditors' ability to exercise the right to setoff. Moreover, this is a liquidating plan and the Debtor is not entitled to a discharge (release) pursuant to Section 1141(d)(3) of the Bankruptcy Code.

21. These provisions are improper and should be modified to provide that, notwithstanding any other provisions of the Plan, *all* claimants reserve their rights of setoff and/or recoupment.

---

[4] A PSA Creditor is an entity (listed on Plan Schedule 4) that is a party to a Plan Support Agreement and any officer or director thereof who served during the pendency of the Chapter 11 cases. Plan, § 1.126. Released Parties include, *inter alia*, the Debtors, the Independent Directors, as well as the Debtors' officers and directors serving during the pendency of the Chapter 11 cases. Plan, §1.131.

**E.     The Plan Must Clarify that the Debtors Are Entitled to a Right to Subrogation Only After the Creditor is Actually Paid in Full.**

22.     Pursuant to Section 8.14 of the Plan, a Debtor is entitled to be subrogated to the rights of any Creditor on account of Distributions made to such Creditor and the Creditor is deemed to have consented to the subrogation of its right against any third-party, including a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution. *See* Plan, § 8.14.

23.     This Plan provision should be modified to make clear that the Creditor must actually be paid in full prior to being deemed to consent to any subrogation of its rights against third parties. Imposing a limitation whereby the Creditor must first be paid in full is appropriate and reasonable due to the likelihood that in these Chapter 11 Cases, Creditors' Guarantee Claims which are otherwise valid may not be paid in full by the Primary Obligors. For example, as contemplated in section 8.13(a) of the Plan, if LibertyView has an Allowed Claim on the basis of a guarantee from LBHI but LBHI believes the Claim is being paid by another entity or the payment is expected but has not yet been received, LBHI should not be afforded the status of subrogee for LibertyView. Due to the complexity of these Chapter 11 Cases, as well as the SIPC Proceeding and the LBIE Administration in the U.K., prior to LBHI being able to collect reasonable costs, LibertyView must first actually be made whole (*i.e.*, be in receipt of payment). To provide otherwise in the Plan would be inequitable and would lead to increased and unnecessary costs and litigation.

**RESERVATION OF RIGHTS**

24.     LibertyView reserves the right to raise further and other objections to confirmation of the Plan prior to or at the hearing thereon.

## CONCLUSION

25. Based on the foregoing, LibertyView respectfully requests that the Plan be modified in accordance with the objections set forth above.

Dated: November 4, 2011
      New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *Michael S. Etkin*
Michael S. Etkin, Esq.
Scott Cargill, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and –

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel for LibertyView*