PREET BHARARA
United States Attorney for the
Southern District of New York
By:    JOSEPH N. CORDARO
        ROBERT WILLIAM YALEN
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2722/2745
Fax: (212) 637-2702
robert.yalen@usdoj.gov
joseph.cordaro@usdoj.gov

HEARING DATE:    December 6, 2011
TIME:                    10:30 AM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------------- x

In re

LEHMAN BROTHERS HOLDINGS INC., et al.,

                            Debtors.

Chapter 11

Case No. 08-13555 (jmp)

(Jointly Administered)

-------------------------------------------------------------------------------------- x

## THE UNITED STATES OF AMERICA'S LIMITED OBJECTION
## TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN

The United States of America (the "Government"), by its attorney Preet Bharara, United

States Attorney for the Southern District of New York, respectfully submits this limited

objection to confirmation of the Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), dated August 31, 2011 [Dkt No. 19627].[1]

In the Plan, Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") seek

to release numerous companies and individuals – including the Debtors' attorneys – from any

---

[1] The Government has filed proofs of claim in these cases, including claims for
significant tax liabilities.

liabilities (other than those resulting from fraud or willful misconduct) that they may have to

third parties, including the Government, as a result of conduct during this bankruptcy.  They

further seek to release nearly one hundred fifty creditor companies, and untold professionals and

individuals associated with those companies, from any such liabilities they may have to third

parties as a result of their conduct in the Plan process.  The Court should reject these proposed

releases as not authorized by the Bankruptcy Code and applicable case law and as extending

beyond the jurisdiction of this Court.[2]

## BACKGROUND

1.      At various times between September 15, 2008, and December 22, 2009, the

Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code,

11 U.S.C. § 1101 et seq., as amended (the "Bankruptcy Code").

2.      On September 1, 2011, the Debtors filed their proposed Plan, and the Court issued

an order setting a November 4, 2011 deadline for objections to the Plan [Dkt. No. 19631].

3.      On October 25, 2011, the Debtors filed a Plan Supplement [Dkt No. 21254].

4.      By virtue of Sections 13.3 and 13.5 of the Plan, which cross reference the

definitions of Released Parties and PSA Creditors contained in Sections 1.131 and 1.136, the

Plan purports to relieve what may be more than two hundred parties from potential liabilities

they may owe to third parties as a result of conduct during the bankruptcy.

---

[2] The Government is in the process of negotiating with Debtors regarding changes to
certain other Plan language.  These additional matters appear capable of negotiated resolution in
the near future.  To allow time to complete those negotiations and obviate the need for briefing
of these additional matters, Debtors have agreed to extend the Government's time to object to the
Plan on issues other than those addressed herein.

5.      Specifically, Section 13.3 provides as follows:

<u>Release and Exculpation</u>.  On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released

> (a) the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the negotiation, formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreements or any contract, instrument, document or other agreement related thereto and

> (b) the PSA Creditors from, and none of the PSA Creditors shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the negotiation, formulation, dissemination or confirmation, consummation or administration of the Plan, or any other act or omission in connection with the Plan, the Disclosure Statement, the Plan Support Agreements, including the filing of any alternative chapter 11 plan and any determination to not pursue solicitation or confirmation of such alternative plan, or any contract, instrument, document or other agreement related thereto;

provided, however, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party or PSA Creditor for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, (ii) nothing herein shall affect or release any obligation of the Debtors under the Plan, and (iii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; provided, further, that nothing in this Plan shall limit the liability of the professionals of the Debtors, the Creditors' Committee or the PSA Creditors to their respective clients pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.[3]

---

[3] For readability, the Government has re-formatted the block of text that is Section 13.3.

6.      Thus, Section 13.3 contains two separate categories of release and exculpation, which boiled down to their essence are the following:

A.      "Released Parties" are protected from any post-petition liabilities (other than those involving willful misconduct, fraud and, in some cases, professional malpractice) to the extent that such liabilities result, under applicable law, from "any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases," and

B.      "PSA Creditors" are protected from "any liability" (again, other than liability involving willful misconduct, fraud and, in some cases, professional malpractice) "for any act taken or omitted to be taken in connection with, or arising out of, the negotiation, formulation, dissemination or confirmation, consummation or administration of the Plan, or any other act or omission in connection with the Plan, the Disclosure Statement, the Plan Support Agreements. . . ."

7.      The "Released Parties" are a broad but ill-defined group of insiders involved in the Debtors' restructuring process.  As defined in Section 1.136:

> Released Parties means, collectively, and in each case, solely in such capacity, the Debtors, the Independent Directors, the Plan Administrator, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases).

-4-

8.      Although it is impossible to identify every specific entity and individual that would be receiving protection as a "Released Party," it is appears that the list includes the following:

a.      All *directors* of any of the Debtors;

b.      All *officers* of any of the Debtors;

c.      All *managers* of any of the Debtors;

d.      All "*members*" of any of the Debtors that are LLCs or similar entities;

e.      All *accountants* for the Debtors;

f.      *Weil Gotshal & Manges, LLP*, counsel for the Debtors, and its individual attorneys representing the Debtors;

g.      *Curtis, Mallet-Prevost, Colt & Mosle LLP*, counsel for the Debtors, and individual attorneys representing the Debtors;

h.      *Jones Day*, counsel for the Debtors, and its individual attorneys representing the Debtors;

i.      *Kasowitz, Benson, Torres & Friedman, LLP*, and its individual attorneys representing the Debtors;

j.      *Kramer Levin Naftalis & Frankel LLP*, and its individual attorneys representing the Debtors;

k.      *Reilly Pozner LLP*, and its individual attorneys representing the Debtors;[4]

l.      Debtors' restructuring firm *Alvarez & Marsal North America, LLC*;

m.      Debtors' investment banker *Lazard Freres & Co. LLC*;

n.      All other "*agents*," "*attorneys*," "*financial advisors*," "*representatives*" and "*professionals*" of the Debtors;

---

[4] The Government lists here only the law firms appearing at the top of the Court's docket. Filings indicate that numerous other law firms already represent the Debtors and, presumably, would claim to be covered by these releases.

o.   The *Committee of Unsecured Creditors* ("UCC");

p.   *Milbank, Tweed, Hadley & McCloy LLP*, counsel for the UCC, and its individual attorneys representing the UCC;

q.   *Quinn Emanuel Urquhart Oliver & Hedges LLP*, counsel for the UCC, and its individual attorneys representing the UCC;

r.   The UCC's investment banker *Houlihan Lokey Howard & Zukin Capital, Inc.*;

s.   All other "*agents*," "*attorneys*," "*financial advisors*," "*representatives*" and "*professionals*" of the UCC;

t.   The *Bank of NY Mellon*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives and other professionals;

u.   *Elliott Management Corp.*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives and other professionals;

v.   *Metlife*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives and other professionals;

w.   *Mizuho Corporate Bank, Ltd.*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals;

x.   *U.S. Bank N.A.*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals;

y.   *The Vanguard Group Inc.*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals; and

z.   *Wilmington Trust Company*, a UCC member, and its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals.

9.   The term "PSA Creditor" covers an even broader group of entities than the term

"Released Parties." As defined Section 1.131:

<u>PSA Creditor</u> means any Creditor[5] identified on Schedule 4 (as the same may be amended from time to time) that is a party to a Plan Support Agreement with the Debtors that has not been terminated, and the Ad Hoc Group of Lehman Brothers Creditors, and each former, current and future member thereof that executes a Plan Support Agreement prior to the hearing to consider approval of the Disclosure Statement, and each of its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases).

10.      Schedule 4 to the Plan (as provided in the Plan Supplement, filed October 25, 2011), lists *one hundred forty-three* separate corporate entities as "PSA Creditors" entitled to releases.  (Dkt. No. 21254, at 982-84).[6]  For the convenience of the Court, a list of these one hundred forty-three creditors is attached hereto as Exhibit A.  Additionally, pursuant to Section 1.131, the PSA Creditor releases would extend to the unnamed "officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals" of each of these one hundred forty-three entities.

11.      As to the Released Parties (but not the PSA Creditors), the Plan buttresses the release and exculpation provisions of Section 13.3 with an injunction contained in Section 13.5.

---

[5] The Plan gives the term "Creditor" the meaning provided by Section 101(10) of the Bankruptcy Code.  *See* Plan § 1.36.

[6] The body of Schedule 4 enumerates 73 covered entities, but the footnotes to Schedule 4 explain that two of the listed creditors are actually aggregate references to a total of 64 separate creditors.  Additionally, a third listed creditor – "Lehman Brothers Singapore Entities" – is defined under the Plan as an aggregate term referring to 10 separate creditors.

The injunction purports to bar conduct that non-debtors might potentially take "with respect to

any Claims and Causes of Action which are extinguished or released pursuant to the Plan."[7]

**ARGUMENT**
**THE PLAN'S NON-DEBTOR RELEASES ARE IMPERMISSIBLY BROAD**

12.    The Plan's non-debtor releases (and its corresponding exculpation and injunction

provisions) should be rejected both because this case does not present the special circumstances

that might possibly support non-debtor such releases under the Second Circuit *Metromedia*

decision,[8] and because the releases contained in the Plan extend beyond this Court's jurisdiction.

**A.    *Metromedia* Requires Rejection of These Non-Debtor Releases**

13.    In *Metromedia*, the Second Circuit concluded that "[a] nondebtor release in a plan

of reorganization should not be approved absent the finding that *truly unusual circumstances*

*render the release terms important to success of the plan*."  *Metromedia*, 416 F.3d at 143

(emphasis added).  The Court noted that whether such "truly unusual circumstances" exist

requires a Court to focus on the following "considerations," *id.*: (1) whether "the estate received

substantial consideration" for the release, *id.* at 142; (2) whether "the enjoined claims were

'channeled' to a settlement fund rather than extinguished," *id.* at 142; (3) whether "the enjoined

claims would indirectly impact the debtor's reorganization by way of 'indemnity or

---

[7] The Plan also contains a provision, Section 13.6, designed to address certain of the Government's concerns about overbreadth in the Plan's release, exculpation, discharge, and injunction provisions by making certain aspects of those provisions inapplicable to the Government.  Other than by narrowing the injunction provision applicable to non-debtors to protect the Government's right to pursue post-Effective Date police or regulatory actions against them, this section does not address non-debtor releases.

[8] *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005).

-8-

contribution,'" *id.*; and whether "the plan otherwise provided for the full payment of the enjoined

claims," *id.*  The Court emphasized, however, that third-party releases may only be approved "in

rare cases," *id.* at 141, and that a prerequisite for non-debtor releases is a "finding of

circumstances that may be characterized as unique," *id.* at 142.  *See generally, e.g.*, *In re*

*Adelphia Communications Corp.*, 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007) (observing that

*Metromedia* "now limits the use of third-party releases to situations that can be regarded as

unique"), *appeal dismissed*, 361 B.R. 337 (S.D.N.Y. 2007) *and* 371 B.R. 660 (S.D.N.Y. 2007),

*dismissal of appeal affirmed*, 544 F.3d 420 (2d Cir. 2008).

14.     The Plan's non-debtor releases simply cannot be justified under the *Metromedia*

standard.  The non-debtors included with the definition of "Released Parties" and the "PSA

Creditors," taken together, fall into three broad categories of entities and individuals: (i)

professionals, including attorneys, of the Debtors and the UCC; (ii) creditors (both on and off the

UCC) and their officers, directors, and other agents, and (iii) the Debtors' officers, directors and

other agents.  Although the Government does not doubt that some of these parties have exerted

significant efforts to bring about the Plan, none of these released entities have had an

involvement that can be fairly described as "unique" such that it would satisfy the *Metromedia*

test.

15.     To start with, the attorneys, financial advisors, accountants and other

professionals that have provided services to the Debtors, the UCC, and the creditors cannot be

given non-debtor releases simply for performing the services that those professionals were

engaged to perform.  As Judge Gerber has explained:

> [M]any players in the bankruptcy process provide benefits to the case. DIP lenders are certainly in this category, and so are professionals to the estate or its fiduciaries. But they get interest and fees for their services. Their delivery of services is not unique.

*In re Adelphia Communications Corp.* 368 B.R. 140, 267-68 (Bankr. S.D.N.Y. 2007). Because of the size and complexity of the cases, the Government has no doubt that some of these professionals have put forth a significant effort and assumes that they have done so with a high degree of professional skill. But they will be paid with sums commensurate to the work. *See*, *e.g.*, Dkt. No. 19269 (Eighth Interim Fee Application of Weil, Gotshal & Manges LLP, seeking in excess of $40 million in fees and expenses for the period February 1, 2011, through May 31, 2011); Dkt. No. 21247 (Twelfth Quarterly Report of Compensation for Alvaraz and Marsal North America, LLC, reporting fees and expenses paid to Alvaraz and Marsal between June 1, 2011, and August 31, 2011, in excess of $27 million).

16.     The creditors in this case, and their officers, directors, and agents, have also not made a "unique" contribution to the bankruptcy estate. As the *Adelphia* court explained:

> In the case of creditors, even those that are Settling Parties, they were merely striking the kinds of deals with respect to their shares of the pie that chapter 11 contemplates. I don't doubt that in this case the Settling Parties engaged, as the Plan Proponents argue, in "tireless efforts" to come together to work out a global compromise aimed at resolving these cases. But that's not unique. It's something creditors have to do in every chapter 11 case, at the risk of destroying themselves (or their recoveries in the case) with their own quests for incremental recoveries.

*In re Adelphia Communications Corp.*, 368 B.R. at 268; *In re Chemtura Corp.*, 439 B.R. 561, 611 (S.D.N.Y. 2010) ("[The parties] have made what in substance was the same argument I considered and rejected in Adelphia—that they should get [non-debtor releases] because of the benefits of the settlement, supposedly extraordinary efforts in reaching a deal, or give-ups as part of that deal. Here, as in *Adelphia*, what we saw was simply what chapter 11 contemplates.").

Unlike in *Charter Communications*, where the Court approved non-debtor releases demanded by

an individual and his affiliates who made available "uniquely personal structuring benefits

[where] no other party could stand in their shoes and achieve the same result," *In re Charter

Communications*, 419 B.R. 221, 259 (Bankr. S.D.N.Y. 2009), *appeal dismissed*, 449 B.R. 14

(S.D.N.Y. 2011), the creditors in the present case play no such unique role.  The proper reward

for the creditors' efforts in the Plan process or the bankruptcy case is a Plan that maximizes their

return or otherwise satisfies the requirements of the Code; it is not a release from potential

liabilities owed to a third party.

17.    Similarly, the releases granted to the Debtors' directors, officers, and other agents

are equally inappropriate.  All of these individuals are compensated for their work, which,

however important in these cases, is the same type of work that directors, officers and other

agents of a debtor typically perform in other Chapter 11 cases.  Although the Debtors' by-laws

do provide certain indemnifications that may cover some of these individuals under particular

circumstances,[9] there is nothing about these indemnifications that amounts to "truly unusual

circumstances [that] render the release terms important to success of the plan." *Metromedia*, 416

F.3d at 143.[10]  Accordingly, unlike in *Charter Communications*, 419 B.R. at 259, where the

Court noted that indemnification provisions provided additional support for releases that were

---

[9] *See, e.g.*, Plan Supplement, Dkt No. 21254, at 20-23.

[10] Moreover, these indemnifications do not clearly apply to activity during the bankruptcy
case, have various restrictions and limitation that are not tracked in the releases, do not contain
any limitation to prevent Debtors from modifying the indemnifications in the future, and,
necessarily, will not extend past Debtors' liquidation.  *See, e.g.*, Plan Supplement, Dkt No.
21254, at 20-23.

otherwise justified by the "unique" contribution by a third-party, here the element of "unique"

circumstances" cannot be met.

18.    The Court should reject the arguments that Debtors are likely to make in support

of their non-debtor releases.  First, although the Debtors are likely to argue that these non-debtor

releases need not be scrutinized by the Court because they cover only post-petition activity,

courts have squarely held that non-debtor releases are subject to the same *Metromedia* test

regardless whether they relate to pre-petition or post-petition conduct.  As the *Adelphia* Court

held:

> [T]hough without question it has long been the custom in the bankruptcy community to
> make distinctions between releases involving pre- and postpetition conduct, . . . after
> *Metromedia*, limitation to postpetition events, by itself, is insufficient to justify a
> third-party release.

*In re Adelphia Communications Corp.*, 368 B.R. at 267; *accord In re Motors Liquidation Co.*,

447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) (holding that "the limitations on third-party releases

apply to both pre- and post-petition events").  Indeed, "every chapter 11 case, large or small, has

a postpetition period.  That is hardly unique."  *In re Adelphia Communications Corp.*, 368 B.R.

at 267.

19.    Second, the Debtors may contend that non-debtor releases are needed to avoid

disruptive post-Effective Date litigation concerning actions taken during the bankruptcy.  But

such disputes, although unfortunate, are not extraordinary:

> [M]any large chapter 11 cases, though thankfully not all of them, have intercreditor
> bickering and threats, aimed at each other and at debtor board members and management,
> that give the targets of those threats a legitimate fear that they will be sued.  But
> unfortunately, that can't be said to be unique, either.

-12-

*In re Adelphia Communications Corp.*, 368 B.R. at 267; *In re Motors Liquidation Co.*, 447 B.R. at 221 ("I well recognize how hard the Debtors, the Chapter 11 Fiduciaries, and their professionals worked on this case, and how, with thousands of disappointed creditors and stockholders out there to second guess their actions, they would like to be protected for their good faith actions in maximizing value and bringing this case to a successful conclusion. But I'm constrained by existing law to place some limits on their protection."). The desire to avoid litigation does not support non-debtor releases under the *Metromedia* test.

20.     Third, the Debtors may suggest that the limitation of their releases in the case of fraud, willful misconduct, and in some cases professional malpractice supports approval. It is true that, in the absence of such a carve-out, the releases would be extraordinarily abusive. Nevertheless, even with such a carve-out, non-debtor releases must be scrutinized under *Metromedia* and should rejected if the circumstances justifying them are less than "unique." *In re Motors Liquidation Co.*, 447 B.R. at 220 (non-debtor release rejected by court despite including carveout language for "willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), and ultra vires acts," as well as for certain violations of professional responsibility); *In re Adelphia Communications Corp.*, 368 B.R. at 264 n.21 (non-debtor releases rejected by *Adelphia* court included carve-out for "fraud or willful misconduct").

21.     Finally, Debtors may argue that the non-debtor releases provided to the PSA Creditors (and perhaps the "Released Parties" who are creditors) should be permitted because those creditors have made their approval of the Plan contingent on the inclusion of such non-

-13-

debtor releases.  The Court should reject this argument, which is inconsistent with *Metromedia*'s

holding that non-debtor releases are permitted only in "rare cases."  As the *Adelphia* Court held:

> Nor can I accept the notion that the releases pass muster under *Metromedia* because the
> Settling Parties elected to make them an element of their deal. . . .  It would set the law on
> its head if parties could get around it by making a third party release a *sine qua non* of
> their deal, to establish a foundation for an argument that the injunction is essential to the
> reorganization, or even 'an important part' of the reorganization.

*In re Adelphia Communications Corp.*, 368 B.R. at 269.

22.    Accordingly, under *Metromedia*, the Plan's non-debtor releases are improper and

should not be approved.

**B.    The Court Lacks Jurisdiction to Grant the Third-Party Releases**

23.    Separate from the *Metromedia* test, a bankruptcy court's authority to issue non-

debtor releases is limited by the scope of the Court's jurisdiction.  "[A] bankruptcy court only

has jurisdiction to enjoin third-party non-debtor claims that directly address the *res* of the

bankruptcy estate."  *In re Johns-Manville Corp.* ("*Manville*"), 517 F.3d 52 (2d Cir. 2008), *rev'd

on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009), *jurisdictional

holding reaffirmed on remand, In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010);

*see also In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 695 (Bankr.

S.D.N.Y. 2010) (noting "jurisdictional limits *Manville* imposes on a bankruptcy court").  Where

parties "make no claim against an asset of the bankruptcy estate, nor do their actions affect the

estate," bankruptcy courts lack jurisdiction to enjoin a claim.  *Manville*, 517 F.3d at 65; *see In re

Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (no jurisdiction to enjoin matter that

does "not affect property of the estate or the administration of the estate").  In this analysis,

"[t]he question is not whether the court has jurisdiction over the settlement [containing the non-

-14-

debtor releases] but whether it has jurisdiction over the attempts to enjoin the creditors'
unasserted claims against the third party." *In re Dreier LLP*, 429 B.R. at 132.

24.      Here, the non-debtor releases on their face cover potential claims by creditors
against third parties that relate neither to the property of the estate nor the administration of the
estate.  The non-debtor releases for the Released Parties cover liabilities arising from "any act
taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of,
the Chapter 11 Cases," regardless of whether enforcement of those liabilities would affect the
estate's property or administration.  The non-debtor releases for the PSA Creditors similarly
cover liabilities arising from any act taken or omitted to be taken in connection with, or arising
out of" the Plan process.  These releases – both for the Released Parties and for the PSA
Creditors – could cover a broad swath of potential government claims unrelated to the estate's
property or administration, including actions by the Government for tax or environmental
liabilities resulting from the covered acts or omissions actions and actions for breach of contract
by one of the Released Parties or PSA Creditors.[11]

25.      Aside from this general limitation on the Court's jurisdiction to enjoin third-party
claims, particular claims of interest to the Government are subject to subject to jurisdictional
limitations.  For example, courts lack authority under most circumstances to "restrain[] the
assessment or collection of any tax," 26 U.S.C. § 7421, and the grant of authority in 11 U.S.C.
§ 505 for this Court to determine tax liability is limited only to debtors' tax liability, *see Brandt-*

---

[11] The Government does not, at this time, assert that such liabilities do exist.  Congress,
however, has provided the Government with three years to assess taxes, 26 U.S.C. § 6501(a), and
six years to bring action for breach of contract, 28 U.S.C. § 2415(a).  There is no authority for
the Plan to impose what is essentially a bar date for third party claims, requiring the Government
to enumerate at confirmation the specific claims against non-debtors that the releases will bar.

*Airflex Corp. v. Long Island Trust Co. (In re Brandt-Airflex Corp.)*, 843 F.2d 90, 96 (2d Cir.

1988) (holding that 11 U.S.C. § 505 does not apply to the tax liability of non-debtors).  Likewise,

environmental laws limit judicial jurisdiction over various matters.  *See* 42 U.S.C. § 9613(h)

(depriving courts of jurisdiction over pre-enforcement environmental disputes).  The Court

should not approve non-debtor releases that reach to cover matters beyond its jurisdiction.

## CONCLUSION

26.     For the foregoing reasons, the Government respectfully objects to the Plan, and

requests that the Court not approve the Plan to the extent that it seeks to release and exculpate

parties other than the Debtors from potential liabilities, or to enjoin actions with respect to such

liabilities.

27.     To address these improper Plan provisions, the Government respectfully requests

that the Court strike the language providing for non-debtor releases, exculpations, and

injunctions from the Plan, and add the following additional language to the Plan or Confirmation

Order:

> Limitation on Release, Exculpation, and Injunction.  Notwithstanding anything to the
> contrary in the Plan and Confirmation Order, nothing in the Plan or Confirmation Order
> shall (i) effect a release of any liability owed by a person or entity other than a Debtor,
> (ii) exculpate any a person or entity other than a Debtor from any liability, or (iii) enjoin
> any person or entity from bringing any claim, suit, action or other proceeding of any
> kind, or taking any other step described in Section 13.5 of the Plan, against a person or
> entity other than a Debtor.

-16-

Dated:  November 4, 2011
        New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

By:     /s/ Robert William Yalen
        JOSEPH N. CORDARO
        ROBERT WILLIAM YALEN
        Assistant United States Attorneys
        86 Chambers Street
        New York, New York 10007
        Tel.: (212) 637-2722/2745
        Fax: (212) 637-2702
        robert.yalen@usdoj.gov
        joseph.cordaro@usdoj.gov

**EXHIBIT A**

**(LIST OF PSA CREDITORS AS OF 10/25/2011)**

1.      Acenden Limited (f/k/a Capstone Mortgage Services Limited);

2.      Angelo, Gordon & Co., L.P.

3.      Bank of America, N.A., as successor in interest to Merrill Lynch Bank USA

4.      Bank of America, N.A.

5.      Barclays Bank S.A.

6.      Barclays Bank PLC

7.      Blue I Real Estate Limited

8.      BNP Paribas

9.      Bundesverband deutscher Banken e.V.

10.     Canyon Capital Advisors LLC

11.     CarVal Investors UK Limited

12.     Cherry Tree Mortgages Limited

13.     Contrarian Capital Management LLC

14.     County of San Mateo

15.     Credit Suisse AG

16.     Credit Suisse Securities (Europe) Limited

17.     Credit Suisse Loan Funding LLC

18.    Cyrus Capital Partners, L.P.

19.    D. E. Shaw Composite Portfolios, L.L.C.

20.    D. E. Shaw Laminar Portfolios, L.L.C.

21.    D. E. Shaw Oculus Portfolios, L.L.C.

22.    D. E. Shaw Valence Portfolios, L.L.C.

23.    D. E. Shaw Claims SPV, L.L.C.

24.    Davidson Kempner Capital Management LLC

25.    DB Energy Trading LLC

26.    Deutsche Bank AG

27.    Deutsche Bundesbank

28.    Eldon Street (Colbert Orco) Limited

29.    Eldon Street (Cube) Limited

30.    Eldon Street (Harley) Limited

31.    Eldon Street Holdings Limited

32.    Eldon Street (Jefferson) Limited

33.    Eldon Street (Raven) Limited

34.    Eldon Street (Fidenza) Limited

35.    Eldon Street (Birchin) Limited

36.    Elliott Management Corporation

37.    Elliott International, L.P.

38.    Elliott Associates, L.P.

39.    Entschädigungseinrichtung deutscher Banken GmbH

40.    Fir Tree, Inc.

41.    GLG Ore Hill LLC

42.    Goldentree Asset Management, LP

43.    Goldman Sachs International

44.    Goldman Sachs Bank USA

45.    Grace Hotels Limited

46.    Gruss Asset Management, L.P.

47.    Harley Property Ventures Limited

48.    Hayman Capital Master Fund, L.P.

49.    Hercules K.K.

50.    Hong Kong Lehman Entities In Liquidation

51.    King Street Capital Management GP, L.L.C.

52.    Knighthead Capital Management, L.L.C.

53.    LB RE Financing No. 3 Limited

54.    LB Lomond Investments

55.    LB Yellow (No. 1) Limited

56.     LB Holdings Intermediate 2 Limited

57.     LB SF No. 1

58.     LB UK Financing Ltd

59.     LB Holdings Intermediate 1 Limited

60.     LB SF Warehouse Limited

61.     LB UK Re Holdings Limited; Storm Funding Limited

62.     LBO Investments Limited

63.     LBQ Funding (UK)

64.     Lehman Brothers International (Europe)

65.     Lehman Brothers Bangkok

66.     Lehman Brothers Europe Limited

67.     Lehman Brothers UK Holdings Limited

68.     Lehman Brothers Singapore Pte. Ltd.

69.     Lehman Brothers Securities Taiwan Limited

70.     Lehman Brothers Pte Ltd

71.     Lehman Brothers Lease & Finance No. 1 Limited

72.     Lehman Brothers Finance Asia Pte. Ltd. (In Creditors' Voluntary Liquidation)

73.     Lehman Brothers Commodities Pte. Ltd. (In Creditors' Voluntary Liquidation)

74.     Lehman Commercial Mortgage Conduit Limited

- A-4 -

75.    Lehman Brothers Holdings PLC

76.    Lehman Brothers (PTG) Limited

77.    Lehman Brothers Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation);

78.    Lehman Brothers Asia Pacific (Singapore) Pte. Ltd. (In Creditors' Voluntary
       Liquidation)

79.    Lehman Brothers Real Estate Limited

80.    Lehman Brothers Japan Inc.

81.    Lehman Brothers Finance (Japan) Inc.

82.    Lehman Brothers Equity (Nominees Number 7) Limited

83.    Lehman Brothers Commercial Mortgage K.K.

84.    Lehman Brothers Treasury Co. B.V.

85.    Lehman Brothers (Indonesia) Limited

86.    Lehman Brothers Securities N.V.

87.    Lehman Brothers Investments Pte Ltd (In Creditors' Voluntary Liquidation)

88.    Lehman Brothers Limited

89.    Lehman Brothers (Luxembourg) S.A. (in liquidation)

90.    Lehman Brothers (Luxembourg) Equity Finance S.A. (en faillite)

91.    Lehman Brothers Bankhaus AG (in Insolvenz)

92.    Lehman Brothers Holdings Japan Inc.

93.     Mable Commercial Funding Limited

94.     MBAM Investor Limited

95.     Merrill Lynch International

96.     Merrill Lynch International Bank Ltd.

97.     Merrill Lynch Commodities Inc.

98.     Merrill Lynch Capital Services Inc.

99.     Merrill Lynch Commodities (Europe) Ltd

100.    Merrill Lynch Bank & Trust Co. FSB

101.    Monaco NPL (No. 1) Limited

102.    Morgan Stanley Capital Group Inc.

103.    Morgan Stanley Capital Services LLC

104.    Morgan Stanley & Co. International PLC

105.    Mount Kellett Master Fund II, L.P.

106.    Myra Sarl

107.    Oak Tree Capital Management, L.P.

108.    Och-Ziff Capital Management Group LLC

109.    Parkmetro Limited

110.    Paulson & Co. Inc.

111.    Platform Home Mortgage Securities No. 4 Limited

112.    Platform Commercial Mortgage Limited

113.    Preferred Group Limited

114.    Preferred Holdings Limited

115.    Preferred Mortgages Limited

116.    Resetfan Limited

117.    Riverside Development Pte. Ltd..

118.    Silver Point Capital, L.P.

119.    SM Funding No. 1 Limited

120.    Societe Generale

121.    Societe Generale Bank and Trust

122.    Societe Generale Asset Management Banque

123.    Southern Pacific Mortgage Ltd.

124.    Southern Pacific Residuals 4 Limited

125.    Southern Pacific Personal Loans Limited

126.    Southern Pacific Funding 3 Ltd.

127.    State Street Bank and Trust Company

128.    State of California Public Employees' Retirement System

129.    Stepstone Mortgage Funding Limited

130.    Sunrise Finance Co. Ltd.

131.    Taconic Capital Advisors L.P.

132.    Thayer Properties Limited

133.    Thayer Group Limited

134.    Thayer Properties (Jersey) Limited (in liquidation)

135.    The Liverpool Limited Partnership

136.    The Baupost Group, L.L.C.

137.    The Royal Bank of Scotland plc

138.    UBS AG

139.    Vallejo Sanitation and Flood Control District

140.    Varde Partners, L.P.

141.    Yellow Real Estate Limited

142.    York Capital Management Global Advisors, LLC

143.    Zestdew Limited