Alan Kolod
Mark N. Parry
Kent C. Kolbig
**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Telephone:  (212) 554-7800
Fax:  (212) 554-7700

*Attorneys for Deutsche Bank AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO CONFIRMATION OF PLAN AS TO LBHI AND LCPI TO THE EXTENT IT FAILS TO PROPERLY CLASSIFY AND TREAT DEUTSCHE BANK AG CLAIMS AND RENEWED MOTION TO TREAT SUCH CLAIMS LIKE AND EQUAL TO GENERAL UNSECURED CLAIMS AGAINST LBHI AND LCPI AS REQUIRED BY COURT APPROVED SETTLEMENT**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT .................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.     THE CLAIMS CANNOT BE CLASSIFIED WITH CLAIMS HAVING
DIFFERENT LEGAL RIGHTS ....................................................................................... 3

II.    THE DEBTORS' OBLIGATION UNDER THE SETTLEMENT AS TO HOW
TO TREAT THE CLAIMS IS CLEAR AND UNAMBIGUOUS ................................... 6

III.    DEBTORS' READING OF THE SETTLEMENT VIOLATES PRINCIPLES
GOVERNING CONTRACT INTERPRETATION ....................................................... 8

IV.    DEBTORS CANNOT MEET THE BURDEN TO JUSTIFY THEIR
CLASSIFICATION ...................................................................................................... 10

V.    A RESERVE IS APPROPRIATE PENDING DECISION ............................................ 11

CONCLUSION ......................................................................................................................... 11

Deutsche Bank AG ( "Deutsche Bank"), by its attorneys, Moses & Singer LLP, submits this memorandum of law in support of its (i) objection to Confirmation of the Third Amended Plan of Reorganization [Docket No. 19627] (the "Plan") as to Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI", and together with LBHI, the "Debtors"), based on its failure to classify and treat the Claims of Deutsche Bank "like and equal to" General Unsecured Claims against the Debtors as required by a Court-approved settlement and (ii) renewed motion to the Court for relief requiring such claims of Deutsche Bank to be treated "like and equal to" General Unsecured Claims against each Debtor (the "Motion").[1]

## SUMMARY OF ARGUMENT

The Settlement Agreement and Settlement Order provided for the allowance of the Claims as non-priority unsecured claims in fixed amounts. Settlement Agreement, §§ 12(d) and (e); Settlement Order, Sixth and Seventh Decretal Paragraphs. But it did more than that. In Section 12(k) of the Settlement Agreement, it specified how those allowed Claims would be treated by the Debtors under any reorganization plan. They were to be treated in "like manner" to other general unsecured claims and were to receive "distributions and treatment equal" to that received by other general unsecured claims. Furthermore, the Claims were not to be subject to any further defenses or to any claims that would have the effect of subordinating them to other general unsecured claims.

The Debtors followed the terms of the Settlement in their Initial Plan and First Amended Plan. But, in their Second and Third Amended Plans, they departed from the Settlement and misclassified the Claims in Affiliate claims classes. Under the Plan, these Affiliate claims cannot be general unsecured claims because they are to be treated worse than general unsecured

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to such terms in the Motion.

896356

claims. The Claims do not fall within the Plan's definition of Affiliate Claims for numerous reasons. The foremost reason is that the Settlement mandates that they receive treatment equal to general unsecured claims and prohibits worse treatment.

The Debtors justify their misclassification with a two-step argument. First, they assert that the term "general unsecured claims" means only non-priority unsecured claims. This assertion will be proved wrong at trial. The second step of their argument is to assert that Section 12(k) of the Settlement Agreement, which on its face to specifies that the Claims are to be treated equally to claims in a specific and well understood class, i.e., general unsecured claims, actually does not so provide. According to the Debtors, all that Section 12(k) requires is that the Claims be treated like any one of the numerous classes of non-priority unsecured claims and that they be treated equally to the other claims in whatever class of non-priority unsecured claims the Debtors put them into. That interpretation disregards the fact that general unsecured claims and non-priority unsecured claims do not have the same meaning. For example, non-priority unsecured claims would include senior claims and subordinated claims; general unsecured claims do not include senior and subordinated claims.

The Debtors' interpretation also would render Section 12(k) entirely superfluous and unnecessary, contrary to fundamental principles of contract interpretation. Section 1123(a)(4) of the Bankruptcy Code requires that all claims in a class be treated equally. If that is all that Section 12(k) of the Settlement Agreement requires, then it was unnecessary and superfluous and serves no purpose. On this reading, Section 12(k), contrary to what it says on its face, imposed no restriction on how the Claims could be treated and did not require that they be treated equally with any class at all.

The Debtors' current interpretation of the Settlement, which did not materialize until 18 months after the Settlement, is incorrect and indefensible. The Debtors cannot meet their burden of establishing that the Claims should receive any treatment other than the treatment required by the Settlement: Treatment like and equal to other general unsecured claims against LBHI and LCPI.

## ARGUMENT

### I.    THE CLAIMS CANNOT BE CLASSIFIED WITH CLAIMS HAVING DIFFERENT LEGAL RIGHTS

It is a fundamental rule of classification under Chapter 11 that a reorganization plan cannot place dissimilar claims in a single class. *The Aetna Casualty and Surety Co. v. Clerk, US Bankruptcy Court, New York, NY (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) ("Dissimilar claims may not be classified together . . . ."); 11 U.S.C. § 1122(a). Claims having different legal rights or different entitlements are dissimilar. *Chateaugay*, 89 F.3d at 949 (affirming separate classification of bonded and non-bonded workers' compensation claims because their legal rights to payment were different); *Granada Wines, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 748 F.2d 42, 46 (1st Cir. 1984) ("Separate classifications for unsecured creditors are only justified where the legal character of their claims is such as to accord them a status different from the other unsecured creditors . . . ." (citation and internal quotation marks omitted); *In re Adelphia Communications Corp.*, 368 B.R. 140, 247 (Bankr. S.D.N.Y. 2007) ("The classification structure in the Plan is based on the *requirement* that the Debtors recognize the similar legal character of the claims and equity interests grouped together, and the different legal character of those Claims and Equity Interests that are classified separately." (emphasis added)); *see also Phoenix Mutual Life Ins. Co. v. Greystone III Joint*

*Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278 (5th Cir. 1991) ("'substantially

similar claims' [are] those which share common priority and right against the debtor's estate").

All claims in a class must receive the same treatment. 11 U.S.C. § 1123(a)(4); *In re*

*Quigley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) ("Absent consent to accept less

favorable treatment, all members of the class must receive equal value."); *Adelphia*, 368 B.R. at

249-251 (holding that plan satisfied Section 1123(a)(4) where it provide the same treatment to

class members). Thus, all claims in a class must hold similar legal rights entitling them to that

same treatment. *See, e.g.*, *Chateaugay*, 89 F.3d at 949-950 (refusing to classify together tow

different types of workers' compensation claims that had different legal rights); *Granada Wines*,

748 F.2d at 47-48 (pension fund properly classified with other general unsecured claims and

entitled to same treatment because pension fund held the same legal rights as other class

members); *Adelphia*, 368 B.R. at 250-251 (where all senior note holders had same rights and

were given same treatment for those rights, they could be classified together). Under the express

terms of the Settlement, the Claims have the legal right and entitlement to be treated like and

equal to general unsecured claims. That right, to which the estates of the Debtors agreed and

which was fixed by Court order, cannot be disregarded. The Claims cannot be classified with

claims that do not have that legal right to be treated as general unsecured claims and that, in fact,

are receiving worse treatment.

The United States Supreme Court has long held that the objective of bankruptcy laws is

equal distribution among creditors. *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*,

547 U.S. 651, 667 (2006); *Reading Co. v. Brown*, 391 U.S. 471, 486 (1968) (Warren , C. J.,

dissenting) ("theme of the Bankruptcy Act is 'equality of distribution'" (citations omitted));

*Nathanson v. NLRB*, 344 U.S. 25, 29 (1952) (same); *Shawhan v. Wherritt*, 48 U.S. 627, 644

(1849) ("The policy and aim of bankruptcy laws are to compel an equal distribution of the assets of the bankruptcy among all his creditors."). Plan proponents may not manipulate classification to defeat the goal of equal treatment of similarly situated creditors. *Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 880-81 (11th Cir. 1990)(disapproving junior classification of equity holder's unsecured claim because such claim was entitled to equal treatment provided to other general unsecured claims); *In re Creekside Landing, Ltd.*, 140 B.R. 713, 716 (Bankr. M.D. Tenn. 1992) (denying confirmation of plan that failed to equally treat similarly situated creditors); *In re 222 Liberty Associates*, 108 B.R. 971, 990 (Bankr. E.D. Pa. 1990) (same).

Here, Deutsche Bank seeks the like and equal treatment to other general unsecured claims that is promised in, and is its express right under, the Settlement. Contrary to the Debtors' assertions, Deutsche Bank does not seek either preferential treatment relative to other general unsecured claims or a "windfall." Classification that results in an unsecured claim's receiving worse treatment (or better treatment) than general unsecured claims requires some justification based on a difference in legal rights or some other legitimate consideration. *Chateaugay*, 89 F.3d at 949-951 (lesser treatment of class of bonded workers' compensation claims than class of bonded workers' compensation claims proper due to different legal rights); *Creekside Landing*, 140 B.R. at 716 (denying confirmation of plan treating certain classes of unsecured creditors worse than others since each class of creditors held similar legal rights and entitled to same treatment); *222 Liberty Associates*, 108 B.R. at 990 (same).

The Debtors cannot provide any such justification for worse treatment of the Claims in the face of the express language of the Settlement requiring that the Claims be treated like and equal to other general unsecured claims.

The evidence at trial will establish that LBHI Class 4B and LCPI Class 5C are receiving worse treatment than the general unsecured claims against LBHI and LCPI, on grounds set out in the disclosure statement that have no application to Deutsche Bank for several reasons, but particularly due to the rights created by the Settlement. Accordingly, those classes are not classes of general unsecured claims, and therefore, the Claims, which are entitled to be treated like and equal to general unsecured creditors, cannot be classified with them.

## II. THE DEBTORS' OBLIGATION UNDER THE SETTLEMENT AS TO HOW TO TREAT THE CLAIMS IS CLEAR AND UNAMBIGUOUS

The evidence will establish that under generally understood practice among bankruptcy professionals, including those in these cases, the class of general unsecured claims against a debtor is the residual class of unsecured claims from which are excluded (i) all claims entitled to statutory or contractual priority treatment, (ii) claims that are senior, (iii) claims that are subordinate, (iv) convenience class claims and (v) all other claims that are receiving better or worse treatment based on some legitimate justification. The evidence will establish that the class of general unsecured claims at LBHI is Class 7 and the class of general unsecured claims at LCPI is Class 4A.

The evidence will establish that the phrase "general unsecured claims" used in the Settlement has the clear and unambiguous meaning among bankruptcy professionals in the context of Chapter 11 plan drafting set forth above. It will show that the professionals in this case give that phrase exactly the same meaning. This clear and unambiguous meaning must be enforced by the Court. *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002) (enforcing clear and unambiguous contract language) (*citing R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 32 (N.Y. 2002) and *W.W.W. Assocs. V. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990)); *FCCD Ltd v. State Street Bank and Trust Co.*, 2011 WL 519228, *5 (S.D.N.Y.

Feb. 15, 2011) (same); *see also Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.2d 34, 43-44 (1st Cir. 2008) (cited by, *In re Dickerson*, 2009 WL 4666457, *9 (Bankr. N.D.N.Y. 2009) (the bankruptcy may "take any action or make any 'determination necessary or appropriate to enforce or implement court orders . . . .'")).

The Settlement, and particularly the phrase "general unsecured claims," are not ambiguous. "No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *FCCD*, 2011 WL 519228 at *5 (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield*, 98 N.Y.2d at 569 (*quoting Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (N.Y. 1992)).

Evidence of custom, usage and the meaning of terms of art or specialized terms within an industry may be considered to show what the parties' specialized language "is fairly presumed to have meant." *Law Debenture*, 595 F.3d at 466-467; *FCCD*, 2011 WL 519228 at *5 (same); *Fox Film Corp. v. Springer*, 273 N.Y. 434, 436 (N.Y. 1937) ("Terms in common use in a business or art may acquire a definite meaning understood by those who use them in connection with that business or art."). The phrase "general unsecured claims" has a clear and well-understood meaning among bankruptcy professionals. That is the meaning it must be given in the specific context in which the Settlement was negotiated—between bankruptcy professionals representing multiple bankruptcy estates and providing for claim allowance and the ultimate treatment of such allowed claims in a plan of reorganization.

896356                                           7

**III.    DEBTORS' READING OF THE SETTLEMENT VIOLATES
PRINCIPLES GOVERNING CONTRACT INTERPRETATION**

The Debtors used the phrase non-priority unsecured claims in Sections 12(d) and (e) of

the Settlement Agreement dealing with allowance.  In Section 12(k) of the Settlement

Agreement, dealing with treatment of the allowed Claims, they used a different phrase, "general

unsecured claims."  If they desired to use the phrase "general unsecured claims" to mean non-

priority unsecured claims, a phrase that encompasses types of claims not included within the

class of general unsecured claims, and that has a different meaning among bankruptcy

professionals in the plan context, it was incumbent on the Debtors in negotiating the Settlement

to obtain the Administrator's agreement to that different meaning and to utilize language in the

Settlement that made its non-standard usage clear.  *Greenfield*, 98 N.Y.2d at 571 ("If the contract

is more reasonably read to convey one meaning, the party benefitted by that reading should be

able to rely on it; the party seeking exception or deviation from the meaning reasonably

conveyed by the words of the contract should bear the burden of negotiating for language that

would express the limitation or deviation." (*citing Boosey & Hawkes Music Publishers, Ltd v.

Walt Disney Co.*, 145 F.3d 481, 487 (2d Cir. 1998)).  The Settlement should not be construed as

the Debtors contend because that interpretation would fail to comport with the meaning among

bankruptcy professionals of the obligation to provide the Claims distributions and treatment like

and equal to other "general unsecured claims".  *FCCD Ltd*, 2011 WL 519228 at *6 (finding

"allocated" is a term of art within real estate loan agreements and interpreting that word in

accordance with its precise meaning in that industry).

The Debtors also assert that Section 12(k) says no more than that the Claims must be

treated equally to other claims in whatever class of non-priority unsecured claims the Debtors

choose to classify the Claims.  But that interpretation of Section 12(k) makes it entirely

redundant of Sections 12(d) and (e) and Bankruptcy Code § 1123(a)(4).  The Settlement should

not be interpreted to make Section 12(k) entirely superfluous and redundant.  *See Int'l*

*Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d. Cir. 2002) ("We disfavor

contract interpretations that render provisions of a contract superfluous") (other citations

omitted).  Not only does this interpretation make Section 12(k) redundant, but in order to do so,

the Debtors, in their paraphrase of the section,  must use words not present in the section itself:

"the same treatment as provided to other *allowed and non-priority* unsecured claims *in the*

*respective classes.*"  Debtors' Response [Dkt. 20767], ¶ 29 (italics identify words within the

quotation not in Section 12(k)).

The Debtors' interpretation  would also make meaningless the requirement that the

Claims receive treatment and distributions *"equal"* to those of a specific group of claims.

*Nautilus Ins. Co. v. Matthew David Events, Ltd.*, 893 N.Y.S.2d 522, 532 (1st Dep't 2010) ("a

court should not adopt a construction of a contract which will operate to leave a provision of a

contract . . . without force and effect . . ."); *Ruttenberg v. Davidge Data Sys. Corp.*, 626

N.Y.S.2d 174, 177 (1st Dep't 1995) ("An interpretation that gives effect to all the terms of an

agreement is preferable to one that ignores terms or accords them an unreasonable

interpretation.").  Such interpretations should be avoided.  *Galli v. Metz*, 973 F.2d 145, 149 (2d

Cir. 1992) ("Under New York law an interpretation of a contract that has 'the effect of rendering

at least one clause superfluous or meaningless . . . is not preferred and will be avoided if

possible." (citation omitted)); *Lawyers' Fund for Client Protection of State of N.Y. v. Bank Leumi*

*Trust Co.*, 94 N.Y.2d 398, 404 (N.Y. 2000) (interpreting contract to render part of it

"superfluous" is "unsupportable under standard principles of contract interpretation.").

896356                                                    9

The Debtors' cannot read Section 12(k) out of the Settlement by giving it a meaning contrary to its natural import of specifying a class of claims to which the Claims are to be treated *equally*. They cannot read it out of the Settlement by re-writing it in paraphrase so as to make it superfluous and duplicative of the requirement of Section 1123(a)(4) of the Bankruptcy Code to treat all claims in a class equally.

## IV.   DEBTORS CANNOT MEET THE BURDEN TO JUSTIFY THEIR CLASSIFICATION

The burden rests on the Debtors to establish by a preponderance of the evidence that the Claims have been properly classified with other claims receiving treatment like and equal to general unsecured claims. *See In re Armstrong World Industries, Inc.*, 348 B.R. 111, 122 (D. Del. 2006) ("the Plan Proponents bear the burden of establishing that the Plan comports with § 1129's requirements by a preponderance of the evidence."); *In re Leominster Materials Corp.*, 2006 WL 1109453, *4 (Bankr. D. Mass. 2006) (same); *see also Adelphia*, 368 B.R. at 252 n. 247 ("As the proponent of the plan, the debtor had the burden of establishing that it met the requirements of the Code." (*quoting In re Featherworks Corp.*, 25 B.R. 634, 642 (Bankr. E.D.N.Y. 1982))); *In re 222 Liberty Associates*, 108 B.R. 971, 991 (Bankr. E.D. Pa. 1990) (same).

The Debtors cannot carry this burden. The meaning of treatment like and equal to that of other general unsecured claims is clear. It means treatment like and equal to that provided for claims in LBHI Class 7 and LCPI Class 4A, the classes of General Unsecured Claims for those Debtors. There is no valid justification for providing treatment less favorable than the Settlement requires and in breach of the Settlement.

## V.    A RESERVE IS APPROPRIATE PENDING DECISION

In the event the issues raised by the Motion are not decided prior to confirmation, Deutsche Bank is entitled to a reserve to protect its rights to the treatment required by the Settlement, which is a post-petition administrative obligation of the Estates. *Holywell*, 913 F.2d at 877 (plan proponent established reserve pending post-confirmation resolution of whether an individual creditor's claim was misclassified).

## CONCLUSION

The Settlement requires that the Claims receive treatment and distribution equal to other general unsecured claims. LBHI Class 7 and LCPI Class 4A are the classes of general unsecured claims against LBHI and LCPI. The Claims must be accorded treatment like and equal to the treatment of claims in those classes, and the Plan cannot be confirmed unless provision is made to do so.

Dated: New York, New York
      November 4, 2011

**MOSES & SINGER LLP**

By:   /s/ Alan Kolod
      Alan Kolod
      Mark N. Parry
      Kent C. Kolbig
      The Chrysler Building
      405 Lexington Avenue
      New York, New York  10174
      Telephone:  (212) 554-7800
      Fax:  (212) 554-7700
      Email: akolod@mosessinger.com
             mparry@mosessinger.com
             kkolbig@mosessinger.com

*Attorneys for Deutsche Bank AG*

896356

11