UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date: December 6, 2011**
**Hearing Time: 10:00 a.m.**

-------------------------------------------------------x
                              :

In re                           :            Chapter 11
                              :

LEHMAN BROTHERS HOLDINGS INC.,   :        Case No. 08-13555 (JMP)
  et al.,                      :

                              :         (Jointly Administered)

                 Debtors.    :
                              :
-------------------------------------------------------x

## OBJECTION OF THE UNITED STATES
## TRUSTEE TO CONFIRMATION OF THE DEBTORS'
## THIRD AMENDED JOINT PLAN OF REORGANIZATION

TO:    THE HONORABLE JAMES M. PECK,
       UNITED STATES BANKRUPTCY JUDGE:

      Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), by and through her counsel, hereby submits this objection (the "Objection") to confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") dated August 31, 2011 (the "Plan").[1] ECF Doc. No.19268. In support thereof, the United States Trustee respectfully states:

## I. INTRODUCTION

      The United States Trustee objects to confirmation of the Plan because the Debtors have failed to meet their burden of proof to show that the Plan satisfies Section 1129 of title 11, United States Code (the "Bankruptcy Code"). The Plan impermissibly provides for:

- the payment of fees and expenses incurred by professionals (including attorneys fees) engaged by the indenture trustees and individual members

---

[1] Except as otherwise stated herein, all capitalized terms shall have the meanings ascribed to them in the Plan.

of the Creditors' Committee, without requiring that those indenture trustees and committee members satisfy the requirements of Section 503(b) of the Bankruptcy Code;

- non-debtor third-party releases, injunctions and exculpation provisions that do not comport with Second Circuit law or the Bankruptcy Code because they (i) exceed the Court's subject matter jurisdiction and (ii) are overly broad; and

- the discharge of the liquidating Debtors in contravention of Bankruptcy Code Section 1141(d)(3).

The United States Trustee respectfully requests that the Court (i) deny any pre-approved payment of fees and expenses to the named parties and require compliance with 503(b), (ii) deny the discharge provision under the Plan and (iii) require that the Debtors narrow the release and exculpation provisions and/or require compliance with the law of this Circuit and the Bankruptcy Code.

## II.  FACTS

**The Chapter 11 Filings**

1.      The United States Trustee incorporates by reference the facts and definitions set forth in her Objection dated August 11, 2011, to the Debtors' Disclosure Statement for the Second Amended Joint Plan of Reorganization.  ECF Doc. No. 19157.

**Disclosure Statement for the Third Amended Plan**

2.      On September 1, 2011, the Debtors filed their disclosure statement for the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Disclosure Statement").  ECF Doc. No. 19629.

3.      In light of the United States Trustee's filed objection to the Second Amended Plan and communications between the United States Trustee and the Debtors' counsel, certain of the United States Trustee's objections were resolved and/or became

moot through the modification of the Plan.  On August 30, 2011, the Court held a hearing

to consider the adequacy of the Disclosure Statement.  At that hearing, the United States

Trustee stated on the record that she reserved all of her rights to raise the unresolved and

remaining objections to the Plan at the time of confirmation.

4.      By Order dated September 1, 2011, the Court approved the Disclosure

Statement.  ECF Doc No. 19631.  A hearing to consider confirmation of the Plan is

scheduled for December 6, 2011, at 10:00 a.m.

**Plan Overview**

5.      The Plan is a liquidating plan which provides for the "wind down,

liquidation, sale and/or abandoning of the assets of the Debtors and/or Debtor Controlled

Entities."   Plan at § 6.1(b)(iii).

6.      On the Effective Date a "Plan Trust" will be established and shall continue

in existence until the Closing Date.  Plan at § 7.4.  The purpose of the Plan Trust is to

hold the Plan Trust Stock, defined as "one new share of LBHI common stock to be issued

to the Plan Trust upon cancellation of the LBHI Stock in accordance with Section 4.17(b)

of the Plan."  Plan at § 1.122.

7.       The Plan contemplates the appointment of a Plan Administrator.  Plan at

§6.1.  After the Effective Date, if the Plan Administrator so determines, the Plan

Administrator and a Liquidating Trustee shall establish one or more Liquidating Trusts

for the "sole purpose of liquidating and distributing the assets of the Debtor contributed

to such Liquidating Trust . . . . "  Plan at §§ 10.1 and 10.2.

**Specific Objectionable Plan Provisions**

Payment of Indenture Trustee and Committee Member Professional Fees

8.       The Plan provides, that subject to the entry of the Confirmation Order, the reasonable fees and expenses (including attorneys' fees) of  "(a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case incurred in their capacities as indenture trustee or members of the Creditors' Committee" shall be paid as Administrative  Expense Claims "without further order of the Bankruptcy Court."  Plan at § 6.7.

Third Party Releases

9.       The Plan provides for releases of liability for the "Released Parties" and the PSA Creditors.[2]  Released Parties are defined as:

> The Debtors, the Independent Directors, the Plan Administrator, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives, or other professionals serving during the pendency of the Chapter 11 cases).

Plan at § 1.136.

10.       The Release and Exculpation provision provides:

> On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released (a) the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for or other

---

[2] The PSA Creditors are creditors that executed plan support agreements ("PSAs") with the Debtors.  Plan at § 1.131.

assertion of liability for any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the negotiation, formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreements or any contract, instrument, document or other agreement related thereto and (b) the PSA Creditors from, and none of the PSA Creditors shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the negotiation, formulation, dissemination or confirmation, consummation or administration of the Plan, or any other act or omission in connection with the Plan, the Disclosure Statement, the Plan Support Agreements, including the filing of any alternative chapter 11 plan and any determination to not pursue solicitation or confirmation of such alternative plan, or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party or PSA Creditor for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, (ii) nothing herein shall affect or release any obligation of the Debtors under the Plan, and (iii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the Debtors, the Creditors' Committee or the PSA Creditors to their respective clients pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

Plan at § 13.3.

<u>Discharge</u>

11.    The Plan provides that upon the date that all Distributions under the Plan have been made, the Debtors shall be discharged, to the fullest extent permitted by section 1141 of the Bankruptcy Code from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and that all holders of Claims against, or Equity Interests in, the Debtors shall be enjoined, pursuant to section 524 of the

Bankruptcy Code, from prosecuting or asserting any discharged Claim against or

terminated Equity Interest in the Debtors.  Plan at § 13.4.

## III.  OBJECTION

### A.    <u>Confirmation Standards.</u>

Section 1129 of the Bankruptcy Code contains 16 standards that must be met for

the Court to confirm a plan.  11 U.S.C. § 1129.  The plan proponent bears the burden of

establishing compliance with Section 1129 of the Bankruptcy Code.  <u>In re Charter</u>

<u>Commc'ns</u>, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (citing <u>Heartland Fed. Savs. & Loan,</u>

<u>Ass'n v. Briscoe Enters. (In re Briscoe Enters.</u>), 994 F.2d 1160, 1165 (5th Cir. 1993)

(stating that "[t]he combination of legislative silence, Supreme Court holdings, and the

structure of the Code leads this Court to conclude that preponderance of the evidence is

the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown")); <u>In</u>

<u>re Worldcom, Inc.</u>, No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y.

Oct. 31, 2003) (citing <u>Briscoe</u>).

Section 1129(a)(1) of the Bankruptcy Code requires that the Court find that the

plan "complies with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. §

1129(a)(1).  Section 1129(a)(2) provides that in order to be confirmable, the proponent of

the plan must comply with the applicable provisions of the Bankruptcy Code.  11 U.S.C.

§ 1129(a)(2).  Section 1129(a)(3) provides that the plan be proposed in good faith.  11

U.S.C. § 1129(a)(3).

Section 1129(a)(4) requires that the Court exercise substantive control over fees and costs related to the Chapter 11 case:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. §1129(a)(4).  This section of the Bankruptcy Code is designed to "insure compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan."  See In re TCI 2 Holdings, LLC, 428 B.R. 117, 145-46 (Bankr. D.N.J. 2010) (quotation omitted) ("'While a strong argument might be made that payments that are not made to fiduciaries and that do not deplete the bankruptcy estate need not be subject to court approval, this is simply not the decision that Congress has chosen to make.'").

For the reasons set forth below, the Debtors have not met their burden of proof to show that the Plan satisfies the confirmation standards of Section 1129 of the Bankruptcy Code.

**B.     The Debtors Have Not Met Their Burden To Show That the Provision to Pay the Professional Fees of the Indenture Trustee and Individual Creditors' Committee Members Satisfies Sections 1129(a)(1), (2) and (4)**

The Plan provides for the post-confirmation payment - without review by the Court - of the reasonable fees and expenses (including attorneys' fees) of (i) the indenture trustee for the Senior Notes and the Subordinated Notes and (ii) the individual members of the Creditors' Committee.  Plan at § 6.7.  The Debtors propose to pay these fees as

Administrative Expense Claims, which means that for the Plan to be confirmed, they must be paid in cash, in full, on the Effective Date.  11 U.S.C. 1129(a)(9)(A).

The Plan provisions governing these proposed payments are modeled after a similar plan provision in the Adelphia case.  In re Adelphia Commc'ns Corp., 368 B.R. 140, 270-71(Bankr. S.D.N.Y. 2007).  In Adelphia, a global settlement agreement which provided that the debtors' estate would bear all reasonable fees and expenses (including fees incurred by the settling parties in connection with inter-creditor litigation), was incorporated into the confirmed chapter 11 plan.  Id.  The court held that creditor fees and expenses may be paid by the estate outside the confines of Section 503(b) if the fee provision is an element of a confirmed chapter 11 plan, provided, among other things, that such fees are reasonable.  Id.

Even the Adelphia court, however, required the submission of an application for such fees, and review of the application by the Court, before any payment could be made. Id.  ("[T]here is no basis in the Bankruptcy Code of which I'm now aware that authorizes fees of this character to be paid to creditors or their professionals without satisfying the requirements of the Code for fee awards – which include application to the Court . . .  For now, the confirmation order should simply provide that fees will be sought only after application to the Court . . ."); see also In re Adelphia Commc'ns Corp., Case No. 02-41729 (Bankr. S.D.N.Y.), Order Confirming the Fifth Amended Plan, ECF Doc. No. 12952, at 25 and 37.

To the extent that the Court's ruling in Adelphia relieved the creditors from the necessity of complying with Section 503(b) and the fee application process, the resulting relief is inconsistent with the Bankruptcy Code for the reasons set forth below.

a.  <u>Payment of Professional Fees and Expenses of the Indenture Trustee</u>

Section 503(b)(3) of the Bankruptcy Code authorizes the Court to allow, as an administrative expense, "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4)" incurred by (i) an indenture trustee in making a substantial contribution in a Chapter 11 case, <u>see</u> 11 U.S.C. § 503(b)(3)(D) and (ii) a member of a creditors' committee, if such expenses are incurred in the performance of the duties of such committee.  11 U.S.C. § 503(b)(F); <u>see also</u> <u>In re Summit Metals, Inc.</u>, 379 B.R. 40, 68 (Bankr. D. Del. 2007), <u>aff'd</u>, 406 Fed. Appx. (3d Cir. 2011) (holding that expenses that individual committee members may be allowed include expenses for travel, lodging and meals while attending committee meetings or court hearings).

An indenture trustee may seek allowance of administrative expenses on four grounds.  As stated above, the indenture trustee may seek the payment of actual and necessary expenses by proving that it made a "substantial contribution" to the case, 11 U.S.C. §503(b)(3)(D), and, if it is a member of the Creditors' Committee, the indenture trustee may seek its actual and necessary expenses incurred in the performance of the Committee's duties.  11 U.S.C. §503(b)(3)(F).  In addition, an "attorney" or "accountant" employed by the indenture trustee may seek "reasonable compensation for professional services rendered" if the indenture trustee has an allowable expense under 11 U.S.C. §503(b)(3)(D) (<u>i.e.</u>, if there has been a showing that the indenture trustee substantially contributed to the case).  11 U.S.C. §503(b)(4).  Finally, the indenture trustee may seek reasonable compensation for services rendered in making a substantial contribution as set forth in 11 U.S.C. §503(b)(5).  The allowance of any administrative claims, however, should only be granted "after notice and a hearing."  11 U.S.C. § 503(b).

Accordingly, an indenture trustee that seeks repayment for its counsel's fees and expenses as an administrative expense under Section 503(b) must (i) file a request for such administrative expense and (ii) show that it has provided a "substantial contribution" to the case-at-hand.  11 U.S.C. § 503(b); see also In re Granite Partners, L.P., 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997); In re General Homes Corp., 143 B.R. 99 (Bankr. S.D. Tex. 1992) (holding that in order to be entitled to any payment from the bankruptcy estate, an indenture trustee must make a prima facie showing that it has made a substantial contribution); In re Revere Copper and Brass, Inc., 60 B.R. 892 (Bankr. S.D.N.Y. 1986) (finding that services rendered by the indenture trustee and its attorneys were not compensable by the estates under sections 503(b)(3), (4) or (5) because they did not make a substantial contribution to the case).

Compensation under "substantial contribution" grounds "is limited to those extraordinary actions that lead to an 'actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders.'"  In re Randall's Island Family Golf Ctrs., Inc., 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003) (quoting In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 569 (Bankr. D. Utah 1985)); accord In re Best Prods. Co., Inc., 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); In re Alert Holdings, Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993).   Extensive participation in a case alone is insufficient to justify compensation by the estate under 11 U.S.C. § 503(b).  Granite Partners, 213 B.R. at 445; In re Hooker Investments, Inc., 188 B.R. 117, 120 (Bankr. S.D.N.Y. 1995); In re Big Rivers Elec. Corp., 233 B.R. 739, 749-50 (W.D. Ky. 1998).  The "same documentation and substantiation requirements apply to substantial contribution claims as apply to requests for compensation under section 330."  Granite Partners, 213 B.R. at

445; <u>In re Baldwin-United Corp.</u>, 79 B.R. 321, 336 (Bankr. S.D. Ohio 1987)

("requirements for documenting how time was spent are no less applicable to fee

applications and time sheets being judged under §503(b) than they are for applications

under §330.").

To the extent that "substantial contribution" is proven, then the standards as set

forth in Section 330 of the Bankruptcy Code apply in determining the extent the fees and

expenses of a professional are reimbursable under Section 503(b)(4).  <u>See, e.g.</u>, <u>In re</u>

<u>Wind N'Wave</u>, 509 F.3d 938, 944 (9th Cir. 2007); <u>In re Celotex Corp.</u>, 227 F.3d 1336,

1341 (11th Cir. 2000).

> b. <u>Payment of Professional Fees and Expenses of Individual Committee Members</u>

While an individual member of the Creditors' Committee is entitled to an

administrative expense claim for expenses incurred in the performance of committee

duties (<u>i.e.</u>, expenses for travel, lodging and meals), the reimbursement of, or an

administrative expense claim for, professional fees is not allowed under the Bankruptcy

Code.  <u>See</u> 11 U.S.C. § 503(b)(4); <u>see also</u> <u>Summit</u>, 379 B.R. at 68; <u>In re Fibrex</u>, 270

B.R. 714, 718 (Bankr. S.D. Ind. 2001); <u>In re FirstPlus Fin., Inc.</u>, 254 B.R. 888, 895

(Bankr. N.D. Tex. 2000); <u>see also</u>, 4 <u>Collier on Bankruptcy</u> ¶ 503.11[6] (Alan N. Resnick

& Henry J. Sommer eds., 16th ed.).  Therefore, by providing for the payment of

Committee member professional fees, the Plan violates Sections 503(b)(3)(F) and

503(b)(4) of the Bankruptcy Code.

The legislative history of Section 503 and applicable case law, while limited,

provides insight regarding Congress's intent regarding the administrative claim status for

professional fees incurred by committee members as a result of serving on an official

committee of unsecured creditors.  By way of background, Paragraph (F) was added to

Section 503(b)(3) by the Bankruptcy Reform Act of 1994.  While this paragraph was

enacted to address the split among courts as to whether a member of an official

committee was entitled to recover actual expenses as an administrative priority claim and

to allow for such expenses, the legislation does not define the term "expense."  See

Fibrex, 270 B.R. at 716.  The legislative history is instructive as to what should be

included as a reimbursable expense, and makes clear that professional fees and expenses

are not intended to be reimbursable under this section:

> The current Bankruptcy Code is silent regarding whether members of
> official committees appointed in Chapter 11 cases are entitled to
> reimbursement of out-of-pocket expenses (such as travel and lodging), and
> the courts have split on the question of allowing reimbursement.  This
> section of the bill amends section 503(b) of the Bankruptcy Code to
> specifically permit members of the Chapter 11 committees to receive
> court-approved reimbursement of their actual and necessary expenses.  The
> new provision would not allow the payment of compensation for services
> rendered by or to committee members.

H.R. Rep. No. 103-835 at 39, 103d Cong., 2nd Sess. (1994), U.S. Code Cong. & Admin.

News 1994, pp. 3340, 3348 (footnote omitted) (emphasis added); see also FirstPlus Fin.,

254 B.R. at 893-94.

Any doubt that may have remained following the 1994 enactment of Section

503(b)(3)(F) was clarified by the 2005 amendment to Section 503(b)(4) enacted through

the Bankruptcy Abuse Prevention and Consumer Protection Act.  The 2005 amendment

to Section 503(b)(4) expressly excluded compensation of professionals for an entity

whose expenses are reimbursable under subsection 503(b)(3)(F).

In addition to the Plan's end-run around the clear provisions of the Bankruptcy

Code, the Plan's proposal to automatically allow the Committee members' requests for

fees and expenses violates the Monthly Compensation Order previously entered by the

Court.  The Monthly Compensation Order, in fact, not only prohibits the Creditors'

Committee members' reimbursement of legal fees, but also imposes a procedure

consistent with Section 503(b)(3)(F) of the Bankruptcy Code requiring committee

members to file formal requests for reimbursement of expenses:

> Counsel for the Creditors' Committee may, in accordance with the Interim
> Compensation Procedures, collect and submit statements of expenses
> (excluding third-party counsel expenses of individual committee
> members), with supporting vouchers, from members of the Creditors'
> Committee; provided, however, that these reimbursement requests comply
> with the Court's Administrative Orders dated June 24, 1991 and April 21,
> 1995.

Monthly Compensation Order at p.5 (n) (emphasis added).

c.  <u>The Payments Would be Undisclosed and In Violation of Section 1129(a)(4)</u>

In addition, these professional fees and expenses would be paid in undisclosed

amounts and without court approval.  Plan at § 6.7.  These provisions do not comply

with, among others, Section 1129(a)(4) of the Bankruptcy Code, which requires that any

payments made for services or for costs and expenses of Chapter 11 cases (i) be disclosed

and (ii) be approved by the Court.  11 U.S.C. § 1129(a)(4); <u>see, e.g.</u>, <u>In re Washington

Mutual, Inc.</u>, No. 08-12229 (MFW), 2011 WL 57111, at *43 (Bankr. D. Del. Jan. 7,

2011) (bankruptcy court denying confirmation where proposed plan provided for

payment of fees to indenture trustees, settling noteholders and liquidating trustee without

notice and approval by the court); <u>In re Journal Register Co.</u>, 407 B.R. 520, 536 (Bankr.

S.D.N.Y. 2009) (holding that the requirements under Section 1129(a)(4) are two-fold:  (i)

first there must be disclosure of the fees and (ii) the court must approve the

reasonableness of the payments).

Instead of ensuring adequate disclosure, the Debtors have inappropriately delegated to themselves the sole right to review these fees and expenses.  In so doing they seek to usurp both the Court's and the United States Trustee's authority to review, and the Court's authority to approve, the fee requests under the appropriate statutory standards.  See, e.g., In re Resource Technology Corp., 356 B.R. 435, 450 (Bankr N.D. Ill. 2006) (quoting In re Charles Stevens & Co., 105 B.R. 866, 870 (Bankr. N.D. Ill. 1989)) (denying a settlement that awarded the trustee's professionals administrative expense claims for their services and did not require them to file fee applications and noting that "'[a]lthough private compensation agreements are permissible under the Code, the court retains the responsibility of ensuring that the compensation awarded to professional persons falls within the parameters prescribed by section 330."); see also In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (professionals cannot settle fee requests among themselves because it undermines the duties of the judicial and executive branches to review bankruptcy fees).

The Court has an independent burden to review fee applications and serves a vitally important gate-keeping role in (i) enforcing the Bankruptcy Code's requirements that only reasonable fees be approved and paid and (ii) maintaining public confidence in the bankruptcy system itself.  In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989).  "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).  Coupled with the Court's judicial powers, the United States Trustee has the statutory duty to review and comment on requests for compensation.  See 28 U.S.C. § 586(a)(3)(A) and (B) (also granting the

14

United States Trustee the statutory duty to review disclosure statements and plans and file comments or objections with the Court); see also 11 U.S.C. §307 (granting the United States Trustee the authority to "raise and . . . appear and be heard on any issue in any case or proceeding under this title . . ."). Lastly, other parties in interest have the right under the Bankruptcy Code to review and object to fee applications. McGuirl v. White, 86 F.3d 1232, 1246 (D.C. Cir. 1996) ("many parties including the United States Trustee and creditors, as well as the bankruptcy court itself, have the right to object to fee applications.").

The Plan should not be confirmed because the Debtors seek to circumvent the requirements of Section 503(b) in contravention of Sections 1129(a)(1), (2) and (4) of the Bankruptcy Code.

**C.    The Debtors Have Not Met Their Burden To Show That The Plan's Release and Exculpation Provision Satisfies Sections 1129(a)(1) and 1129(a)(3)**

The Release and Exculpation provision in the Plan is inconsistent with Second Circuit's decisions in in In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, __ U.S. __, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) ("Manville III") and Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005).

In Metromedia, the Second Circuit held that non-debtor third-party releases are proper only in "rare cases." Metromedia, 416 F. 3d at 141. The Second Circuit articulated at least two reasons for its reluctance to approve these releases:

15

First, the only explicit authorization in the Code for non-debtor releases is
11 U.S.C. § 524(g), which authorizes releases in asbestos cases when
specified conditions are satisfied, including the creation of a trust to satisfy
future claims, [and] . . .

Second, a non-debtor release is a device that lends itself to abuse. By it, a
non-debtor can shield itself from liability to third parties. In form, it is a
release; in effect, it may operate as a bankruptcy discharge arranged
without a filing and without the safeguards of the Code. The potential for
abuse is heightened when releases afford blanket immunity.

Id. at 142.

The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor

from suing a third party, provided the injunction plays an important part in the Debtors'

reorganization plan." Id. at 141 (quoting SEC v. Drexel Burnham Lambert Group, Inc.

(In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 292 (2d Cir. 1992)). The

appeals court cautioned, however, that a non-debtor third-party release is not considered

to be adequately supported by consideration simply because the non-debtor contributed

something to the reorganization and the enjoined creditor took something out. Id. at 143.

Rather, "[a] non-debtor third-party release should not be approved absent a finding by the

court that 'truly unusual circumstances' exist that render the release terms important to

the success of the plan." Id.

Subsequent cases further clarify the Metromedia requirements. For example, in

In re DBSD North America, Inc., the Court stated:

As the Second Circuit's decision in Metromedia and my earlier decision in
Adelphia provide, exculpation provisions (and their first cousins, so-called
"third party releases") are permissible under some circumstances, but not
as a routine matter. They may be used in some cases, including those
where the provisions are important to a debtor's plan; the claims are
"channeled" to a settlement fund rather than extinguished; the enjoined
claims would indirectly impact the debtor's reorganization by way of
indemnity or contribution; the released party provides substantial

16

consideration; and where the plan otherwise provides for the full payment
of the enjoined claims.

In re DBSD North America, Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (emphasis

in original)(footnotes omitted); In re Motors Liquidation Co., 477 B.R. 198, 220 (Bankr.

S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases

aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has

ruled that they're permissible only in rare cases, with appropriate consent or under

circumstances that can be regarded as unique, some of which the Circuit listed.  But

where those circumstances haven't been shown, third-party releases can't be found to be

appropriate."). [3]

Before a court considers whether the proponent of a plan has demonstrated the

"truly unusual circumstances" mandated by Metromedia, it must first determine whether

it has subject matter jurisdiction to approve the releases or injunctions provided for by

and against non-debtor third-parties.  See Manville II; accord In re Dreier LLP, 429 B.R.

112, 132 (Bankr. S.D.N.Y. 2010); In re Metcalfe & Mansfield Alternative Invs., 421 B.R.

685, 695 (Bankr. S.D.N.Y. 2010).  In Manville II, the Second Circuit held that "a

---

[3] Other examples include: (i) Adelphia, 368 B.R. at 268-269 (court held that three categories of
non-debtor third-party releases are acceptable under Metromedia: (1) persons indemnified by the estate
under by-laws, employment contracts, or loan agreements, (2) persons involved in unique transactions,
such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to
the releases); (ii) In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006) (district court framed inquiry as  "whether
a significant non-debtor financial contribution plus other unusual factors render a situation so "unique" that
the non-debtor third-party releases are appropriate."  Id. at 55; (iii) In re Oneida Ltd., 351 B.R. 79 (Bankr.
S.D.N.Y. 2006) (the equity committee had raised, but then abandoned, an objection to the validity of the
non-debtor third-party releases, and the court found that the releases in that case were acceptable because
all of the affected creditors had consented by affirmatively checking a box on the ballot indicating their
willingness to grant the releases); (iii) In re Spiegel, Inc., No. 03-11540 (BRL), 2006 WL 2577825, at *7
(Bankr. S.D.N.Y. Aug. 16, 2006) (plan's non-debtor third-party releases and injunctions were critical
components of the settlement that played a "vital part in the plan" and "were necessary to the proposed
reorganization of the Debtors and the successful administration of their estates"); and (iv) In re XO
Commc'ns, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (non-debtor third-party releases were
permissible where the non-debtors provided significant consideration, the non-debtors were integral to the
plan, and the non-debtors' interests aligned with those of the debtors with regard to the claims).

bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the <u>res</u> of the bankruptcy estate." <u>Manville II</u>, 517 F.3d at 66; <u>see also</u> <u>Dreier</u>, 429 BR. at 133 (because the court lacks jurisdiction to enjoin claims that do not affect property of the estate or the administration of the estate, non-debtor third-party releases must be limited to claims that are derivative of the debtors).

The Plan contains various provisions whereby the Debtors propose to release non-debtor third-parties from various claims and liabilities and enjoin claims by and against non-debtor third-parties.

The Released Parties include:

> The Debtors, the Independent Directors, the Plan Administrator, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives, or other professionals serving during the pendency of the Chapter 11 cases).

Plan at §1.136.

Because this release seeks to include the release of claims by non-debtor third-parties against non-debtor third-parties, the Second Circuit's rulings in <u>Manville II</u> and <u>Metromedia</u> govern the Court's determination as to whether this release may be approved. It is now settled in the Second Circuit that the Court does not have subject matter jurisdiction to approve this provision because it seeks to release "direct" (non-derivative) claims that non-debtor third-parties may have against other non-debtor third parties. <u>See</u> <u>Johns-Manville Corp. v. Chubb Indem. Ins. Co.</u> (<u>In re Johns-Manville</u> <u>Corp.</u>), 600 F.3d 135, 153 (2d Cir. 2010) (clarifying on remand that the bankruptcy court

does not have jurisdiction to enjoin claims against non-debtor insurers that are not derivative of the debtor).

In addition, this provision seeks to include a release of claims that do not currently exist, but may arise post-Effective Date. The Debtors have not met their burden of proof to show that the Court has jurisdiction to release these claims.

The Debtors have also failed to meet their burden of proof to explain why the exculpation, which extends to third-parties who are not estate fiduciaries who served during the chapter 11 cases (such as the estate professionals, the Committee and its members, and the Debtors' officers and directors) is appropriate. See Washington Mut., 442 B.R. at 350-51 (exculpation clause must be limited to estate fiduciaries). Further, the acts for which these parties are being exculpated are vague.

For all of these reasons, the Debtors have not met their burden of proof under Sections 1129(a)(1) and (3) of the Bankruptcy Code to show that (i) the release satisfies the Metromedia standards, (ii) the Court has jurisdiction to approve the release, and (iii) the exculpation should be extended to non-fiduciaries of the estates.

**D.      The Debtors Have Not Met Their Burden To Show That The Plan's Discharge Provision Satisfies Sections 1129(a)(1) and 1129(a)(3)**

The Plan impermissibly provides for a discharge pursuant to Section 1141[4] of the Bankruptcy Code, even though this is a liquidating Plan. Plan at §§ 6.1(b)(iii) and 13.4.

---

[4] Section 524(a) of the Bankruptcy Code provides that a discharge in a case under title 11 operates, among other things, as an injunction against the commencement or the continuation of an action. See 11 U.S.C. § 524(a). Accordingly, while the language in section 13.3 of the Plan is crafted as a release and an injunction of actions against the Debtors as well as third parties, this provision has the same effect as a discharge under Section 1141(d)(3) of the Bankruptcy Code.

Section 1141(d)(3) provides:

The confirmation of a plan does not discharge a debtor if –

(A)     the plan provides for the liquidation of all or substantially all of the property of the estate;

(B)     the debtor does not engage in business after consummation of the plan; and

(C)     the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

All three prongs of this statute are met in these cases.  First, the Plan provides for the liquidation of the Debtors' assets.  Plan at § 6.1(b)(iii).  Second, there is no information contained in the Plan that indicates that the Debtors will engage in any business operations after consummation of the Plan.  Rather, the Plan provides that the Plan Administrator shall, subject to limited circumstances, "wind-down, sell and otherwise liquidate the assets of the Debtors and or Debtor-Controlled Entities" within three years after the Effective Date.  Plan at § 7.6.  Third, the Debtors are not individuals and, therefore, would be denied a discharge under Section 727(a) of the Bankruptcy Code.  11 U.S.C. § 727(a)(1).  Because all three elements of the statute are present in these cases, the Debtors are not entitled to a discharge.  11 U.S.C. § 1141(d)(3).

Accordingly, the Debtors have failed to satisfy the confirmation standards set forth in Sections 1129(a)(1) and (3) of the Bankruptcy Code and the Plan should not be confirmed.

\

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i)

deny confirmation of the Plan, or in the alternative, (ii) narrow the non-debtor third-party

releases, injunctions and exculpation provision to comply with Second Circuit law and

the Bankruptcy Code and (iii) grant such other relief as is just.

Dated: New York, New York
      November 4, 2011

                                   Respectfully submitted,

                                   TRACY HOPE DAVIS
                                   UNITED STATES TRUSTEE

                                  By _/s/ Susan D. Golden_
                                          Susan D. Golden
                                          Trial Attorney
                                            33 Whitehall Street, 21st Floor
                                          New York, New York 10004
                                          Tel. No. (212) 510-0500