Hearing Date and Time: December 6, 2011 at 10:00 a.m. (Eastern Time)

RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 530-1800
Facsimile: (212) 530-1801
Joon P. Hong

Counsel for Farallon Capital Partners, L.P.,
Farallon Capital (AM) Investors L.P.,
Farallon Capital Institutional Partners II, L.P.,
Farallon Capital Offshore Investors II, L.P. and
Noonday Offshore, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                        :
                                                             :    Chapter 11
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :
                                                             :    Case No. 08-13555 (JMP)
                                                             :
                                    Debtors.                 :    (Jointly Administered)
------------------------------------------------------------x

**OBJECTION OF FARALLON CAPITAL PARTNERS, L.P., FARALLON CAPITAL
(AM) INVESTORS L.P., FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.,
FARALLON CAPITAL OFFSHORE INVESTORS II, L.P. AND NOONDAY
OFFSHORE, INC. TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF
LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Farallon Capital Partners, L.P., Farallon Capital (AM) Investors L.P., Farallon Capital

Institutional Partners II, L.P., Farallon Capital Offshore Investors II, L.P. and Noonday Offshore,

Inc. (collectively, the "Farallon Entities"), by their undersigned counsel, hereby submit this

objection to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors [Docket No. 19627] (the "Plan")[1] filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases, and in support thereof respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Farallon Entities are beneficiaries of a variety of claims against LBHI in the aggregate amount of approximately $460 million, which amount includes both direct claims on account of LBHI issued securities and indirect claims against LBHI on account of notes issued by OMX Timber Finance Investments II, LLC.

2. The Farallon Entities object to the Plan because it incorporates the LBIE Settlement (defined below) without making a showing that the LBIE Settlement is fair and equitable and in the best interest of the Debtors. Although settlements may be included as part of a proposed plan of reorganization, debtors have the burden of showing that such settlements are fair and equitable and in the best interests of the Debtors' estates. LBHI and the other Debtors here make no attempt to carry that burden. Accordingly, the Plan as it currently stands cannot be confirmed.

## RELEVANT BACKGROUND

3. The Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 19629] (as modified, the "Disclosure Statement") states that "the Debtors have executed a final settlement agreement with Bankhaus, the Hong Kong Lehman

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plan.

2

Entities In Liquidation, the Lehman Singapore Entities and LBT" and that the Debtors are requesting Bankruptcy Court approval of such settlements pursuant to Bankruptcy Rule 9019 as part of the Plan. Disclosure Statement, Article IV.F.4.b, at p. 29.

4. The Disclosure Statement further states that if the Debtors enter into settlement agreements with other Foreign Debtors prior to the Effective Date, such settlement agreements will be included in the Plan Supplement. Disclosure Statement, Article IV.F.4.b, at pp. 29 - 30.

5. Section 6.5(b)(vii) of the Plan provides that any settlement agreement entered into among any of the Debtors and any Non-Controlled Affiliate that is contained in the Plan Supplement is incorporated in the Plan and shall become effective in accordance with its terms. Plan at p. 69.

6. On October 25, 2011, the Debtors filed a 1,005 page Plan Supplement [Docket No. 21254]. The Plan Supplement contained eleven exhibits, including "Exhibit 5" which contained copies of six separate settlement agreements of varying lengths among Debtors and Non-Controlled Affiliates. Among the agreements attached as "Exhibit 5" to the Plan Supplement was a Settlement Agreement among Debtors, the LBLIS Group Entities, the UK Administration Companies, the UK Liquidation Companies and the Other UK Affiliates (as such terms are defined therein) (the "LBIE Settlement").

## ARGUMENT

7. Section 1129(a) of the Bankruptcy Code provides that a plan cannot be confirmed unless it complies with the applicable provisions of this title and has not been proposed by any means forbidden by law. 11 U.S.C. 1129(a)(1) and (3). Compromises or settlements that are

incorporated under a chapter 11 plan must comply with the requirements of Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

8. Section 1123 of the Bankruptcy Code provides that a chapter 11 plan of reorganization may include provisions for the settlement of claims against the debtor's estate. Specifically, Section 1123(b)(3)(A) provides that a plan may provide for the "settlement or adjustment of any claims or interest belonging to the debtor or to the estate."

9. When evaluating a settlement under Section 1123(b)(3)(A) of the Bankruptcy Code, courts apply the same standard as are applied under Bankruptcy Rule 9019 for approval of settlements: "[i]rrespective of whether a claim is settled as part of a plan pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code or pursuant to a separate motion under Bankruptcy Rule 9019, the standards applied by the Bankruptcy Court for approval are the same. The settlement must be fair and equitable and in the best interests of the estate." *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 177 B.R. 791, 794, n.4 (S.D.N.Y. 1995); *see also In re Aleris Int'l, Inc.*, 2010 Bankr. LEXIS 2997 (Bankr. D. Del. May 3, 2010).

10. The settlement need not be the best that the debtor could have obtained; courts recognize that there is a range of reasonableness with respect to settlements due to uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. *See In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979); *In re Charter Communs.*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009). However, in order to obtain approval of a settlement, a debtor has the obligation to provide sufficient information to allow the court to "canvass the issues and determine that the settlement does not fall below the lowest level of reasonableness". *In re W.T. Grant Co.*, 699 F2d 599, 608 (2d Cir. 1983); *In re Adelphia Communs. Corp.*, 361 B.R. 337, 357 (S.D.N.Y. 2007). Ultimately, a

decision to accept or reject a compromise or settlement is within the sound discretion of the court. *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

11.    In determining whether a settlement falls below the range of reasonableness, courts in the Second Circuit generally look at the following factors: "(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and delay,' including the difficulty in collecting on the judgment; (3) 'the paramount interests of the creditors,' including each affected class's relative benefits 'and the degree to which creditors either do not object to or affirmatively support the proposed settlement'; (4) whether other parties in interest support the settlement; (5) the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge of the bankruptcy court judge' reviewing, the settlement; (6) 'the nature and breadth of releases to be obtained by officers and directors'; and (7) 'the extent to which the settlement is the product of arm's length bargaining.'" *In re Iridium Operating LLC. Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); *see also In re Charter Communs.*, 419 B.R. at 252.

### Debtors Have Failed to Carry Their Burden of Proof

12.    The Debtors have failed to carry the burden of demonstrating that the LBIE Settlement is fair and equitable and in the best interest of the estate. In fact, the Debtors have omitted critical information regarding the LBIE Settlement, making it impossible for the Court to

apply the above factors against the proposed settlement to see if the settlement falls within the potential range of reasonableness.

13.     In order to obtain approval of the LBIE Settlement, the Debtors must provide complete and accurate information to enable the Court to review all the facts and circumstances surrounding the settlement. The Debtors, however, provide no analysis of the strengths or weaknesses of claims that are apparently resolved pursuant to the LBIE Settlement. There is no disclosure as to the nature of the disputes that are being settled. In the absence of any information, it is not possible to evaluate the settlement to determine if it is in the best interest of the Debtors' estates, their creditors and other parties in interest.

14.     Accordingly, the Debtors have failed to satisfy the criteria for the approval of the LBIE Settlement.

### The LBIE Settlement Falls Below the Range of Reasonableness and is Not in the Best Interest of the LBHI Estate

15.     The omission of critical information regarding the LBIE Settlement makes it impossible to determine whether the LBIE Settlement falls within the range of reasonableness. In fact, as discussed further below, the Farallon Entities believe that the LBIE Settlement may not be in the best interest of the LBHI estate.

16.     Based on a review of the information set forth in the Disclosure Statement and the LBIE Settlement, it appears that there may have been a reallocation of value from LBHI to other Debtors and that the proposed settlement may involve LBHI subsidizing a more favorable settlement for the benefit of other Debtors and their creditors, in particular Lehman Brothers Special Financing Inc. ("LBSF"), to the obvious detriment of LBHI's creditors.

17. The extent of any reallocation of value from LBHI for the benefit of other Debtors, however, cannot be readily determined because the Debtors have omitted critical information regarding the LBIE Settlement and have also redacted key schedules to the LBIE Settlement. Nevertheless, it is possible to extrapolate certain things based on the information provided in the Disclosure Statement.

18. The Recovery Analysis for LBSF, which is set forth in "Exhibit 4" to the Disclosure Statement, shows that the estimated amount of Affiliate Claims other than those of Participating Debtors (Class 5C) against LBSF was approximately $4.2 billion. Disclosure Statement, Exhibit 4 (Recovery Analysis for Each Debtor), at Table showing "Recovery Analysis for LBSF". Upon information and belief, and Farallon Entities' analysis of Annex 8A-3 of Exhibit 8A of the Disclosure Statement, approximately $3.4 billion of such Affiliate Claims against LBSF projected in the Disclosure Statement were attributable to claims held by LBIE.

19. The Disclosure Statement also shows that LBHI had approximately $6.5 billion of prepetition receivables from LBIE. Disclosure Statement, Exhibit 8A (Significant Balances Among Affiliates), at Annex 8A-3 (Pre-Petition Intercompany Balances Among Significant Debtors and Certain Non-Controlled Affiliates as of December 31, 2010).

20. The proposed LBIE Settlement would result in LBIE having a non-priority, unsecured, affiliate claim against LBSF in the amount of $900 million. Section 2.02(a) of the LBIE Settlement. This compares to Farallon Entities' estimate of $3.4 billion (see paragraph 18 above) that was reserved for LBIE in the Disclosure Statement, which would be a reduction in claims against LBSF of approximately $2.5 billion.

21. At the same time, under the proposed LBIE Settlement, LBIE would have a non-priority, unsecured, senior affiliate guarantee claim against LBHI in the amount of

$1,008,000,000. Section 2.01(a) of the LBIE Settlement. This is compared to a receivable held by LBHI against LBIE of $6.5 billion. Under the proposed LBIE Settlement, a $6.5 billion receivable owed by LBIE to LBHI has turned into a $1 billion claim by LBIE against LBHI, a swing of negative $7.5 billion for LBHI.

22. Based upon the limited information and analysis provided by the Debtors, it appears that the proposed LBIE Settlement may have involved a significant transfer of value from LBHI to LBSF, with LBSF realizing a positive gain in value and LBHI suffering a significant net loss in value.

### An Application for Approval of the LBIE Settlement Should be Heard Post-Confirmation

23. Upon information and belief, Lehman Brothers International (Europe) ("LBIE") and the affiliates covered by the LBIE Settlement (collectively "LBIE Entities") had a very complicated and multifaceted relationship with every major Debtor in the Chapter 11 Cases, and filed more than $38 billion in claims against different Debtors based on, among other things, various types of guarantees, ownership of notes issued by other Lehman entities, derivative contracts and back-to-back side letter agreements similar to the Side Letter dated July 23, 2006 that is more fully described in Claim No. 21530 filed by LBIE against LBSF. Among some of the claims filed by LBIE Entities against the Debtors are the following:

| Claim No. | Debtor | Amount |
|---|---|---|
| 21530 | LBSF | $23,718,197,173 |
| 21527 | LBHI | $11,834,607,665 |
| 62786 | LBHI | $3,063,130,884 |
| | Total | $38,615,935,722 |

8

24. Notwithstanding the complexity of the relationship among the various Debtors and the LBIE Entities, the Debtors seek to incorporate the LBIE Settlement into the Plan simply by including the LBIE Settlement in the middle of a 1,005 page Plan Supplement, all without providing background information, discussion of the claims and issues involved, the nature and scope of the negotiations or the reasonableness of the settlement.

25. Given the apparent magnitude and complexity of the claims being settled, the LBIE Settlement clearly warrants an extensive discussion, including information regarding: (i) an accounting of the reconciled books and records and claims/receivables among the Debtors and the LBIE Entities, differentiating among claims arising out of derivative contracts, guarantees, back-to-back side letter agreements and other obligations; (ii) explanation of methodologies and principles used in netting various claims; (iii) comparison of the pre- and post-compromised amounts and discussion of the considerations or formulas used for such compromises; (iv) details of any trade-offs made among the various Debtors; and (v) cost/benefit analysis of alternative options.

26. As discussed above, given the Debtors' failure to carry their burden of proof and the lack of information regarding the LBIE Settlement, it is impossible to determine whether the LBIE Settlement is fair and equitable and in the best interests of the estate, and whether it falls within the range of reasonableness. Based on a quick analysis of change in the amount of claims and liabilities between LBHI and LBSF on the one hand and LBIE on the other, before and after the LBIE Settlement, we have seen that there may have been a significant transfer of value from LBHI to LBSF as part of the overall LBIE Settlement.

27. It is unclear why the LBIE Settlement needs to be incorporated into the Plan and approved as a part of the Plan confirmation process. On September 13, 2011, the Debtors, LBIE

9

and other affiliated entities entered into a Stipulation and Agreement for Provisional Allowance of Claims Solely for Purposes of Voting on the Debtors' Second [sic] Amended Joint Chapter 11 Plan [Docket No. 19913] (the "Voting Stipulation"). The parties have thus agreed to the amount of claims that LBIE can vote in connection with the Plan. The resolution of the claims by and against LBIE can occur post-confirmation to ensure that the proposed settlement meets the requirements of the Bankruptcy Code and Bankruptcy Rules. This would ensure that the Court and parties in interest have sufficient time to canvass the issues and probe the settlement to ensure that it falls within the range of reasonableness.

28.     In addition to the Voting Stipulation, the parties have also entered into a Claim Reserve Agreement, which is attached as "Exhibit A" to the LBIE Settlement. The Claim Reserve Agreement provides that the Debtors will hold in reserve a sufficient amount to account for the claims of LBIE and its Affiliates until there is a subsequent determination by the Court of the allowed amount of claims by LBIE and its Affiliates against the Debtors. *See* Claim Reserve Agreement at Section 2.01.

29.     The Debtors have failed to carry their burden of demonstrating that the LBIE Settlement is reasonable, appropriate and in the best interest of the Debtors' estates. In addition, the Debtors have articulated no need to incorporate the LBIE Settlement into the Plan. As contemplated by the Voting Stipulation and the Claim Reserve Agreement, rather than rushing to incorporate the LBIE Settlement into the Plan, the Debtors can and should look to resolve the claims of LBIE Entities post-confirmation as part of the normal claims resolution process.

WHEREFORE, the Farallon Entities respectfully request that the Court deny confirmation of the Plan so long as the LBIE Settlement is incorporated in the Plan and grant the Farallon Entities such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 4, 2011

/s/ Joon P. Hong
Joon P. Hong
RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY 10281
Telephone: (212) 530-1800
Facsimile: (212) 530-1801

Counsel for:
Farallon Capital Partners, L.P.
Farallon Capital (AM) Investors L.P.
Farallon Capital Institutional Partners II, L.P.
Farallon Capital Offshore Investors II, L.P.
Noonday Offshore, Inc.