## EXHIBIT A

Base Prospectus

# Multi Issuer Secured Obligation Programme

Under the Multi Issuer Secured Obligation Programme (the "Programme") described in this Base Prospectus, certain companies (each a "Specified Company", described, in the case of the company details of which are set out in the Issuer Disclosure Annex set out herein (the "Relevant Company"), in this Base Prospectus, and in the case of any other Specified Company in a separate base prospectus relating to that Specified Company (this Base Prospectus and any other such base prospectus being a "Specified Company Base Prospectus"), subject to compliance with all relevant laws, regulations and directives, may from time to time issue, borrow under, buy, sell or enter into secured obligations (the "Obligations") in the form of notes ("Notes"), loans ("Loans"), options ("Options"), schuldscheine ("Schuldscheine") or swaps ("Swaps") on the terms set out in the relevant Specified Company Base Prospectus and (in the case of Notes) in final terms ("Final Terms") or (in the case of Loans, Options, Schuldscheine or Swaps) any relevant documentation entered into in connection therewith (the "Obligation Documents"). Notes may also be issued under the Programme on terms set out in a Prospectus relating to the Notes which incorporates by reference the whole or any part of the relevant Specified Company Base Prospectus. This Base Prospectus comprises a base prospectus for the purpose of Article 5 of the Prospectus Directive (Directive 2003/71/EC).

In connection with the proposed creation of Obligations by a Specified Company (other than the First Issuer), such Specified Company will have executed a deed of accession (a "Deed of Accession") agreeing to be bound by all the terms of the principal trust deed dated 10 October 2002, as amended and restated on 20 July 2007 (the "Principal Trust Deed") entered into by the First Issuer with, inter alia, BNY Corporate Trustee Services Limited (formerly known as J.P. Morgan Corporate Trustee Services Limited) as trustee (the "Trustee") and certain other Master Documents (as defined in the relevant Deed of Accession) and the other documents executed pursuant to or in connection with the creation of Obligations. From and after execution and delivery of a Deed of Accession, such Specified Company shall become and be treated as an "Issuer" for the purposes of the Master Documents and the relevant Specified Company Base Prospectus. References herein to "Issuer" are references to the relevant Specified Company in respect of (and only to the extent of) the Obligations created by it and in respect of the Master Documents only to the extent that it is bound by them and such references specifically exclude any other Specified Company. Each Specified Company shall be bound by the Master Documents only in respect of any Series of Obligations created by it and matters relating thereto. The liability of the Specified Companies under the Obligations, each of the Master Documents and the Obligation Documents is several and is separate in respect of each Series of Obligations. No Specified Company shall be responsible for the obligations of any other Specified Company under any Obligations created by such Specified Company or any of the Master Documents or any Obligation Document.

The Obligations will, where relevant, be created in Series (as defined in "Overview of the Programme") which may, in the case of Notes, in turn be divided into separate Tranches (as defined in "Overview of the Programme"). Notes of a particular Series may be expressed to be subordinated to Notes of any other particular Series. Each Series of Notes will be secured by a charge on certain bonds, notes, warrants, receivables or equity securities of any form, denomination, type or issuer, monoline guarantees, options, swaps, loans or any other financial obligations assigned to or assumed by the Issuer or any other agreed assets owned by the Issuer (the "Collateral") and a fixed charge on all funds held from time to time by the Custodian and/or the Account Bank and/or the Issuing and Paying Agent and/or the Registrar (all as defined herein) for payments due under the Notes of such Series and may also be secured by an assignment of the relevant Issuer's rights under one or more derivative agreements (each a "Swap Agreement") or any other Credit Enhancement Agreement (as defined under "Terms and Conditions of the Notes - Status and Non-applicability") entered into in respect of the relevant Notes, together with such additional security as may be described in the relevant Final Terms (together the "Mortgaged Property"). The obligations of each Issuer under a Swap Agreement to a counterparty to such Swap Agreement may also be secured on certain assets comprised in the Mortgaged Property. Claims against an Issuer by holders of the Notes of a particular Series and, if applicable, the counterparty to the relevant Swap Agreement will be limited to the Mortgaged Property applicable to that Series. Such claims in respect of each Series will be secured on the Mortgaged Property. Claims in respect of more than one Series may be secured on the same Mortgaged Property if so specified in the security documentation for each such Series. Notes of Notes, Related Notes (as defined herein) and any other Obligations which are secured on the same Mortgaged Property and issued as part of the same transaction shall constitute a Relevant Transaction (as defined herein). On a realisation of the Mortgaged Property in relation to any Relevant Transaction, the net proceeds of such realisation shall be applied in accordance with the terms and conditions of the Notes (see "Terms and Conditions of the Notes - Security") and the relevant supplemental trust deed that constitutes the Series or multiple Series (the "relevant Supplemental Trust Deed").

If the net proceeds of the enforcement of the Mortgaged Property for a Relevant Transaction are not sufficient to make all payments due in respect of the Notes and Coupons of a Series comprising such Relevant Transaction (if any) and, if applicable, to the relevant counterparty to the relevant Swap Agreement, no debt shall be owed by the Issuer in respect of any shortfall and neither the Trustee nor any such counterparty nor any holder of Notes or anyone acting on behalf of any of them may take any further action to recover such shortfall. Obligations other than Notes will be secured in the manner described in the relevant Obligation Documents, but in each case, recourse against the Issuers in respect of such Obligations will be limited to the assets of the relevant Issuer that form the security for such Obligations. Obligations may be credit enhanced by a guarantee, insurance or other support agreement as specified in the relevant Supplemental Trust Deed.

Notes will be issued to the Dealer specified below and any additional Dealer appointed under the Programme from time to time, which appointment may be for a specific issue or on an ongoing basis (each a "Dealer" and together the "Dealers").

The obligations of any Specified Company in respect of each Relevant Transaction are several. This means that the failure of a Specified Company to perform its obligations under any Obligations, under the Master Documents or any Obligation Document shall not release any other Specified Company from its obligations under any Obligation, any of the Master Documents or any Obligation Document. No security created by a Specified Company shall benefit investors in Obligations issued, bought, borrowed, sold or entered into by (or any other creditors of) any other Specified Company or the investors in any other Obligations created by such Specified Company. No payments owed by or to a Specified Company in respect of a Relevant Transaction may be settled against payments owed by or to any other Specified Company. The rights of each Specified Company under each of the Master Documents are also several.

Application has been made to the Irish Financial Services Regulatory Authority ("IFSRA") as competent authority under Directive 2003/71/EC for this Base Prospectus to be approved. Application has been made to The Irish Stock Exchange Limited (the "Irish Stock Exchange") for the Notes issued under the Programme within 12 months of the date of the relevant Specified Company Base Prospectus to be admitted to the daily official list of the Irish Stock Exchange and to be admitted to trading on the regulated market of the Irish Stock Exchange (the "Market"). References in this Base Prospectus to Notes being "listed" (and all related references) shall mean that such Notes have been admitted to trading on the Market and have been admitted to the official list of the Irish Stock Exchange. The Market is a regulated market for the purposes of Directive 93/22/EEC of the European Parliament and of the Council of 10 May 1993 on investment services in the securities field. However, unlisted Notes may be issued pursuant to the Programme and the Programme provides that Notes may be listed on such other stock exchange(s) or markets of the Irish Stock Exchange as may be specified in the relevant Final Terms. The relevant Final Terms in respect of the issue of any Notes will specify whether or not such Notes will be listed on the official list and admitted to trading on the Market (or any other stock exchange). Other secured obligations entered into under the Programme, either Loans, Options, Schuldscheine and Swaps, cannot be listed on the official list and admitted to trading on the Market. The application for approval to IFSRA relates only to the Notes which are to be admitted to trading on the Market or any other regulated market for the purposes of Directive 93/22/EEC and IFSRA has neither reviewed nor approved this Base Prospectus in relation to any unlisted securities.

Copies of this document in relation to the Notes to be issued during the period of 12 months from the date of the relevant Specified Company Base Prospectus have been filed with and approved by the Irish Financial Services Regulatory Authority in its capacity as competent authority in Ireland for the purposes of Directive 2003/71/EC. Copies of each set of Final Terms will be available at the specified office set out below of the Trustee (as defined herein) and each of the Paying Agents. In respect of those Specified Companies incorporated in Ireland, a copy of the relevant Specified Company Base Prospectus will be filed with the Irish Companies Registration Office within 14 days of approval as required by the Prospectus (Directive 2003/71/EC) Regulations 2005 of Ireland (the "Irish Prospectus Regulations").

Notes in bearer form ("Bearer Note") will initially be represented by a temporary global note (a "Temporary Global Note") or a permanent global note (a "Permanent Global Note" and together with the Temporary Global Notes, the "Global Notes"). Notes in registered form ("Registered Notes") will be represented by registered certificates (each a "Certificate"), one Certificate being issued in respect of each Noteholder's entire holding of Registered Notes of one Series. Global Notes and Certificates may be deposited on the Issue Date (as defined herein) with a common depositary on behalf of, in the case of Registered Notes registered in the name of a nominee for Euroclear Bank S.A./N.V. ("Euroclear") and Clearstream Banking, société anonyme ("Clearstream, Luxembourg"), or such other clearing system approved by the Trustee. The provisions governing the exchange of interests in Global Notes for interests in other Global Notes or for Definitive Notes are described in "Summary of Provisions Relating to the Notes while in Global Form".

Where so indicated in the Specified Company Base Prospectus relating to a Specified Company, Obligations of a Specified Company may be rated by Moody's Investors Service Limited ("Moody's") and/or Standard & Poor's Rating Services, a division of The McGraw-Hill Companies, Inc. ("Standard & Poor's") and/or Fitch Ratings Limited ("Fitch"). Any such rating will be specified in the relevant Final Terms. Each rating will address the Specified Company's ability to perform its obligations under the terms of the Obligation and, where the amount of those obligations is calculated by reference to a credit-dependent index, the likelihood that payments will be due under the Obligations. Where the amount of the obligations is determined by reference to a market-dependent index, the ratings do not currently address the likelihood that payments will be due under the terms of the Obligations.

A rating is not a recommendation to buy, sell or hold securities or other investments and may be subject to suspension, reduction or withdrawal at any time by

Moody's and/or Standard & Poor's and/or Fitch. A suspension, reduction or withdrawal of the rating assigned to the Obligations may adversely affect the market price of such Obligations.

The issue price and amount of the relevant Notes will be determined, before filing of the relevant Final Terms, based on the then prevailing market conditions.

**THE OBLIGATIONS WILL BE OBLIGATIONS SOLELY OF EACH OF THE SPECIFIED COMPANIES AND WILL NOT BE GUARANTEED BY, OR BE THE RESPONSIBILITY OF, ANY OTHER ENTITY.**

**Arranger and Dealer**
**Lehman Brothers International (Europe)**

The date of this Base Prospectus is 20 July 2007

This Base Prospectus is issued in relation to the creation by the Relevant Company of Obligations. Information relating to each Specified Company which has executed a Deed of Accession and/or any other relevant party will be contained in the relevant Specified Company Base Prospectus. A Specified Company Base Prospectus may contain information relating to more than one Specified Company. The specific terms of each Series of Notes will be set forth in the relevant Final Terms. Notes may also be issued under the Programme on terms set out in a Prospectus relating to the Notes which incorporates by reference the whole or any part of the relevant Specified Company Base Prospectus. Any such Final Terms or Prospectus will be published by being made available as described in paragraph 5 of "General Information" in the Issuer Disclosure Annex attached hereto. Each Specified Company Base Prospectus should be read and construed in conjunction with the relevant Final Terms and all other documents which are deemed to be incorporated by reference in the relevant Specified Company Base Prospectus and in the relevant Final Terms. The relevant Specified Company Base Prospectus and the relevant Final Terms, shall, save as specified herein and therein, be read and construed on the basis that such documents are so incorporated by reference and form part of the relevant Specified Company Base Prospectus and the relevant Final Terms.

The Relevant Company accepts responsibility for the information contained in this Base Prospectus. To the best of the knowledge and belief of the Relevant Company, having taken all reasonable care to ensure that such is the case, the information in this Base Prospectus is in accordance with the facts and does not omit anything likely to affect the import of such information.

No person has been authorised to give any information or to make any representation other than those contained in this Base Prospectus, each other Specified Company Base Prospectus and each set of Final Terms or any documents incorporated by reference therein in connection with the issue or sale of the Obligations and, if given or made, such information or representation must not be relied upon as having been authorised by any Issuer or any Dealer or the Arranger (as defined in "Overview of the Programme"). Neither the delivery of this Base Prospectus nor any other Specified Company Base Prospectus or set of Final Terms nor any sale made in connection therewith shall, under any circumstances, create any implication that there has been no change in the affairs of any of the Issuers since the date hereof or the date upon which this Base Prospectus or relevant other Specified Company Base Prospectus has been most recently supplemented or that there has been no adverse change in the financial position of the relevant Issuer since the date upon which this Base Prospectus or relevant other Specified Company Base Prospectus has been most recently amended or supplemented or that any other information supplied in connection with the Programme is correct as of any time subsequent to the date on which it is supplied or, if different, the date indicated in the document containing the same.

In the case of any Notes which are to be admitted to trading on a regulated market within the European Economic Area or offered to the public in a Member State of the European Economic Area in circumstances which require the publication of a prospectus under the Prospectus Directive (2003/71/EC), the minimum specified denomination shall be €50,000 (or its equivalent in any other currency as at the date of issue of the Notes).

The distribution of this Base Prospectus and any other Specified Company Base Prospectus or set of Final Terms and the offering or sale of the Obligations in certain jurisdictions may be restricted by law. Persons into whose possession this Base Prospectus and any other Specified Company Base Prospectus or set of Final Terms come are required by the Issuers, the Dealers and the Arranger to inform themselves about and to observe any such restriction. The Notes have not been and will not be registered under the United States Securities Act of 1933 (the "**Securities Act**") or with any securities regulatory authority of any state or other jurisdiction of the United States, and may include Notes in bearer form that are subject to U.S. tax law requirements. Subject to certain exceptions, the Notes may not be offered or sold or, in the case of Notes in bearer form, delivered within the United States or to, or for the account or benefit of, U.S. persons (as defined in Regulation S under the Securities Act ("**Regulation S**") in the case of Notes in registered form, or as defined in the U.S. Internal Revenue Code of 1986, as amended, and regulations thereunder in the case of

Notes in bearer form). For a description of certain restrictions on offers and sales of Obligations and on the distribution of this Base Prospectus, see "Subscription and Sale".

Neither this Base Prospectus nor any other Specified Company Base Prospectus or set of Final Terms constitutes an offer of, or an invitation by or on behalf of the Issuers or the Dealers to invest in any Obligations.

**Investors in Obligations should conduct such independent investigation and analysis regarding the Issuers, the security arrangements and the Obligations as they deem appropriate to evaluate the merits and risks of an investment in the Obligations. Investors in Obligations should have sufficient knowledge and experience in financial and business matters, and access to, and knowledge of, appropriate analytical resources, to evaluate the information contained in this Base Prospectus, each other relevant Specified Company Base Prospectus and the relevant set of Final Terms (if any) and the merits and risks of investing in the Obligations in the context of their financial position and circumstances. Prospective investors should have regard to the factors described under the section headed "Risk Factors" in this Base Prospectus. This Base Prospectus and each Specified Company Base Prospectus do not describe all of the risks of an investment in the Notes. The investment considerations identified in this Base Prospectus and each Specified Company Base Prospectus are provided as general information only and the Dealers and the Arranger disclaim any responsibility to advise investors in the Obligations of the risks and investment considerations associated therewith as they may exist at the date hereof or as they may from time to time alter.**

**Investors should be aware that no Specified Company is regulated by the Irish Financial Services Regulatory Authority (IFSRA) and that no investment in any Obligation will have the status of a bank deposit and will therefore not be within the scope of the deposit protection scheme operated by IFSRA.**

The Arranger and the Dealers have not separately verified the information contained in this Base Prospectus or in any other Specified Company Base Prospectus. None of the Dealers or the Arranger makes any representation, recommendation or warranty, express or implied, regarding the accuracy, adequacy, reasonableness or completeness of any of the information in this Base Prospectus or in any other Specified Company Base Prospectus. Neither this Base Prospectus or any other Specified Company Base Prospectus nor any other financial statements are intended to provide the basis of any credit or other evaluation and should not be considered as a recommendation by any of the Issuer, the Swap Guarantor (if applicable), the Arranger or the Dealers that any recipient of this Base Prospectus or any other Specified Company Base Prospectus or any other financial statements should purchase the Notes. Each potential purchaser of Notes should determine for itself the relevance of the information contained in this Base Prospectus or in any other Specified Company Base Prospectus and its purchase of Obligations should be based upon such investigation as it deems necessary.

None of the Dealers or the Arranger undertakes to review the financial condition or affairs of the Issuers during the life of the arrangements contemplated by this Base Prospectus, each other Specified Company Base Prospectus and each set of Final Terms nor to advise any investor or potential investor in the Obligations of any information coming to the attention of any of the Dealers or the Arranger.

In this Base Prospectus and each Specified Company Base Prospectus, unless otherwise specified or the context otherwise requires, references to "U.S.\$" and "U.S. dollars" are to United States dollars and references to "euro" and "€" refer to the currency introduced from the third stage of European economic and monetary union pursuant to the Treaty establishing the European Community, as amended by the Treaty on European Union.

In connection with the issue of any Tranche (as defined in "Overview of the Programme"), the Dealer or Dealers (if any) named as the stabilising manager(s) (the "**Stabilising Manager(s)**") (or persons acting on behalf of any Stabilising Manager(s)) in the applicable Final Terms) may over-allot Notes or effect transactions with a view to supporting the market price of the Notes at a level higher than that which might otherwise prevail. However, there is no assurance that the Stabilising Manager(s) (or persons acting on behalf

A07840320/0.24/06 Aug 2007

of a Stabilising Manager) will undertake stabilisation action. Any stabilisation action may begin on or after the date on which adequate public disclosure in the Prospectus of the offer of the relevant Tranche is made and, if begun, may be ended at any time, but it must end no later than the earlier of 30 days after the issue date of the relevant Tranche and 60 days after the date of the allotment of the relevant Tranche. Any stabilisation action or over-allotment shall be conducted in accordance with all applicable laws and rules.

If a Specified Company incorporated in Ireland wishes to issue Notes with a maturity of less than one year, it shall ensure that it is in full compliance with the notice by the Central Bank and Financial Services Authority of Ireland of exemptions granted under section 8(2) of the Central Bank Act, 1971, as amended.

A07840320/0.24/06 Aug 2007

## TABLE OF CONTENTS

Page

SUPPLEMENTARY INFORMATION.................................................................................7

OVERVIEW OF THE PROGRAMME .................................................................................8

RISK FACTORS ..............................................................................................................19

TERMS AND CONDITIONS OF THE NOTES ................................................................27

SUMMARY OF PROVISIONS RELATING TO THE NOTES WHILE IN GLOBAL FORM.......................60

USE OF PROCEEDS.......................................................................................................65

FORM OF FINAL TERMS ..............................................................................................66

SUBSCRIPTION AND SALE...........................................................................................76

A07840320/0.24/06 Aug 2007

## SUPPLEMENTARY INFORMATION

With respect to any Notes issued by an Issuer and listed and admitted to trading on the regulated market of the Irish Stock Exchange, the relevant Issuer will agree to comply with any undertakings given by it from time to time to the Irish Stock Exchange in connection with such listed Notes and, without prejudice to the generality of the foregoing, shall furnish to the Irish Stock Exchange all such information as the guidelines of the Irish Stock Exchange may require in connection with such listing and admission. Moreover, such Issuer shall prepare a supplement to the relevant Specified Company Base Prospectus or publish a new base prospectus whenever required by the guidelines of the Irish Stock Exchange or pursuant to Regulation 51 of the Irish Prospectus Regulations and/or Article 16 of the Prospectus Directive if there is a significant change affecting any matter contained in the relevant Specified Company Base Prospectus or a significant new matter arises, the inclusion of information in respect of which would have been so required if it had arisen when the relevant Specified Company Base Prospectus was prepared.

A07840320/0.24/06 Aug 2007

OVERVIEW OF THE PROGRAMME

The following overview is qualified in its entirety by the remainder of this Base Prospectus and (a) in relation to Obligations which take the form of Notes, the relevant Final Terms relating to the Series of which such Notes are a part, and (b) in relation to other forms of Obligations, the Obligation Documents.

| | |
|---|---|
| **Issuer:** | The Specified Company that is described in the Issuer Disclosure Annex set out herein or, as applicable, in the relevant Specified Company Base Prospectus, and (save for the First Issuer) which has executed a Deed of Accession. References herein to the "Issuer" are references to the relevant Specified Company in respect of (and only to the extent of) the Obligations created by it and in respect of the Master Documents to the extent that it is bound by them and such references specifically exclude any other Specified Company. Information relating to each Specified Company will be contained in this Base Prospectus, in the case of the Specified Company that is described in the Issuer Disclosure Annex set out herein, and the relevant other Specified Company Base Prospectus in the case of any other Specified Company. In the case of any Specified Company, the relevant Specified Company Base Prospectus and the relevant Final Terms should be read and construed together. |
| **Description:** | Multi Issuer Secured Obligation Programme. Pursuant to the Master Documents, Specified Companies may issue Obligations which take the form of Notes, Loans, Options, Schuldscheine or Swaps under the Programme on a several basis. |
| **Arranger:** | Lehman Brothers International (Europe) |
| **Mortgaged Property:** | The Notes of each Series will be secured in the manner set out in Condition 4 of the Terms and Conditions of the Notes, as the case may be, including a first fixed charge on certain Collateral and on all funds held from time to time by the Custodian and/or the Account Bank and/or the Issuing and Paying Agent, as the case may be, insofar as such funds relate to that Series. Each Series of Notes may also be secured by an assignment of the relevant Issuer's rights under a Swap Agreement or a Credit Enhancement Agreement (each as defined in the Terms and Conditions of the Notes), as the case may be, together with such additional security as may be described in the relevant Final Terms. |
| | Two or more Series of Notes and/or other Obligations may be secured on the same Mortgaged Property and may rank equally or senior and junior to each other in respect of the security over the Mortgaged Property. Each Series of Notes which shares the same Mortgaged Property as another Series of Notes issued as part of the same transaction shall comprise "**Related Notes**". Any Notes, Related Notes (if any) and/or other Obligations which are secured on the same Mortgaged Property and issued |

as part of the same transaction shall constitute a "**Relevant Transaction**". References in this Base Prospectus to "Mortgaged Property" are to the property subject to the security in respect of a Transaction.

Obligations other than Notes will be secured in the manner described in the relevant Obligation Documents.

|  |  |
|---|---|
| **Early Termination of Swap Agreements:** | Swap Agreements may be terminated early: |

(a)    if withholding taxes are imposed on payments made by the relevant Issuer or the Swap Counterparty, as the case may be; or

(b)    at the option of one party, if there is a failure by the other party to pay any amounts due, or to comply with or perform any obligation under the Swap Agreement; or

(c)    at the option of the Swap Counterparty under the Swap Agreement, if an event of default under the Terms and Conditions of the Notes occurs; or

(d)    upon the occurrence of certain other events with respect to either party to the Swap Agreement, including a breach of a representation, insolvency, merger without an assumption of the obligations in respect of the Swap Agreement or changes in law resulting in illegality.

In any of the above events, the Notes will be redeemed early and the Collateral will be realised. On the occurrence of any of the events referred to above, a termination payment will be due to be paid by the relevant Issuer to the Swap Counterparty or to the relevant Issuer by the Swap Counterparty in respect of the Swap Agreement.

Unless provided otherwise in the relevant Final Terms, there is no guarantee that upon any such termination the funds realised from the disposal of the Collateral plus or minus (as the case may be) the termination payment due in respect of the Swap Agreement will be sufficient to pay, in full, amounts owing to the Noteholders. To the extent any such shortfall arises, the relevant Issuer will not be obliged to make any further payment to meet any such shortfall and accordingly no debt shall be owed by the relevant Issuer in respect of any such shortfall. No other assets of the relevant Issuer will be available to meet such shortfall. The Swap Counterparty shall not be entitled to institute, or join with any other person in bringing, instituting or joining, insolvency proceedings (whether court based or otherwise) in relation to the relevant Issuer.

The termination payment in respect of the Swap Agreement will be based on the replacement cost or gain for a swap transaction with the same financial terms as the Swap Agreement, without regard to the contingency of a default in respect of the Collateral. In all cases of early termination, the

termination payment will be determined on the basis of quotations received from the leading dealers in the relevant market (failing which, by the Swap Counterparty) in accordance with the terms of the Swap Agreement.

**Credit Enhancement:**

Obligations may be issued with the benefit of monoline guarantees or other forms of credit enhancement as specified in the relevant Final Terms.

**Dealers:**

Lehman Brothers International (Europe)

The Issuers may from time to time appoint additional dealers either in respect of one or more Tranches of Notes or in respect of the whole Programme or terminate the appointment of any dealer under the Programme. References in this Base Prospectus to "Permanent Dealers" are to Lehman Brothers International (Europe) and to such additional persons that are appointed as dealers in respect of the whole Programme (and whose appointment has not been terminated) and references to "Dealers" are to all Permanent Dealers and all persons appointed as a dealer in respect of one or more Tranches of Notes.

**Trustee:**

BNY Corporate Trustee Services Limited (formerly known as J.P. Morgan Corporate Trustee Services Limited) or such other trustee as may be appointed in relation to the relevant Series.

**Issuing and Paying Agent, Custodian and Account Bank:**

The Bank of New York, London Branch

**Registrar and Transfer Agent:**

The Bank of New York, New York branch

**Paying and Transfer Agent:**

BNY Financial Services plc

**Method of Issue of Notes:**

The Notes will be issued in series (each a "Series") having one or more settlement or issue dates but on terms otherwise identical (or, in relation to interest-bearing Notes, identical other than in respect of first payment of interest); the Notes of each Series being intended to be interchangeable with all other Notes of such Series.

Each Series may be issued in tranches (each a "Tranche") and may have different settlement or issue dates. The specific terms of each Tranche (which will be supplemented, where necessary, with supplemental terms and conditions and, save in respect of the settlement or issue date, issue price, first payment of interest and principal amount of the Tranche (if applicable), will be identical to the terms of other Tranches of the same Series) will be set out in the relevant Final Terms.

Further Notes may be issued as part of an existing Series only in accordance with the Terms and Conditions of the relevant Notes. If the Issuer and Arranger determine that separate Series have similar terms, they may determine that such Series be identified as "Classes" of one Series. In such circumstances, each "Class" shall nevertheless constitute a separate "Series"

A07840320/0.24/06 Aug 2007

for the purposes of the Terms and Conditions.

Obligations other than Notes will be created in the manner described in the relevant Obligation Documents.

**Issue Price of Notes:**

Notes may be issued at their principal amount or at a discount or premium to their principal amount. Partly-paid Notes may be issued, the issue price of which will be payable in two or more instalments.

**Form of Obligations:**
**(a) Notes:**

Notes may be issued in bearer form only ("**Bearer Notes**"), in bearer form exchangeable for Registered Notes ("**Exchangeable Bearer Notes**") or in registered form only ("**Registered Notes**"). Each Tranche of Bearer Notes and Exchangeable Bearer Notes will initially be represented by a temporary Global Note if such Notes are being issued in compliance with the D Rules (as defined in "Selling Restrictions" below), otherwise each Tranche will be represented by a Permanent Global Note. Permanent Global Notes will be exchangeable for Definitive Notes in the limited circumstances set out thereon. See "Summary of Provisions Relating to the Notes while in Global Form". Registered Notes will be represented by Certificates, one Certificate being issued in respect of each Noteholder's entire holding of Registered Notes of one Series. Certificates representing Registered Notes that are registered in the name of a nominee for one or more clearing systems are referred to as "Global Certificates".

**(b) Loans, Options, Schuldscheine and Swaps:**

Obligations may also be in the form of Loans, Options, Schuldscheine or Swaps the terms of which will have the same effect as an equivalent Series of Notes.

**Currencies:**

Subject to compliance with all relevant laws, regulations and directives, Obligations may be denominated in such currency or currencies as the Issuer and the relevant Dealer(s) (if any) so agree.

**Maturities:**

Subject to compliance with all relevant laws, regulations and directives, any maturity.

Save that where the First Issuer (or any other Irish incorporated Issuer) wishes to issue Notes with maturity of less than one year, it shall ensure that it is in full compliance with the notice by the Central Bank and Financial Services Authority of Ireland of exemptions granted under Section 8(2) of the Central Bank Act, 1971, as amended, including that the Notes comply with, *inter alia*, the following criteria:

(i)     at the time of issue, the Notes must be backed by assets to at least 100 per cent. of the value of the Notes issued;

(ii)    at the time of issue, the Notes must be rated to at least investment grade by one or more recognised rating agencies; and

(iii)   the Notes must be issued and transferable in minimum denominations of €300,000 or the foreign

currency equivalent.

**Denomination of Notes:**

Definitive Notes will be in such denominations as may be specified in the relevant Final Terms save that in the case of any Notes that are to be admitted to trading on a regulated market within the European Economic Area or offered to the public in a Member State of the European Economic Area in circumstances which require publication of a prospectus under the Prospectus Directive (Directive 2003/71/EC), the minimum denomination shall be €50,000 (or its equivalent any other currency as at the date of issue of the Notes).

Unless otherwise permitted by then current laws and regulations, Notes (including Notes denominated in sterling) which have a maturity of less than one year and in respect of which the issue proceeds are to be accepted by the Issuer in the United Kingdom or whose issue otherwise constitutes a contravention of section 19 of the Financial Services and Markets Act 2000 ("FSMA") will have a minimum denomination of £100,000 (or its equivalent in other currencies).

**Fixed Interest Rate Notes:**

Fixed interest will be payable in arrear on the date or dates in each year specified in the relevant Final Terms.

**Floating Rate Notes:**

Floating Rate Notes will bear interest set separately for each Series by reference to LIBOR, LIBID, LIMEAN or EURIBOR (or such other benchmark as may be specified in the relevant Final Terms) as adjusted for any applicable margin. Interest periods will be specified in the relevant Final Terms.

**Zero Coupon Notes:**

Zero Coupon Notes may be issued at their principal amount or at a discount to it and will not bear interest.

**Variable Coupon Amount Notes:**

The relevant Final Terms, issued in respect of each issue of variable coupon amount Notes will specify the basis for calculating the amounts of interest payable, which may be by reference to a stock index or formula or as otherwise provided in the relevant Final Terms. The relevant Final Terms, will also specify the Calculation Agent in respect of such issue of variable coupon amount Notes.

**Interest Periods and Interest Rates for the Notes:**

The length of the interest periods for Notes and the applicable interest rate or its method of calculation may differ from time to time or be constant for any Series of Notes. Notes may have a maximum interest rate, a minimum interest rate or both. The use of interest accrual periods permits Notes to bear interest at different rates in the same interest period. All such information will be set out in the relevant Final Terms.

**Other Obligations:**

Loans or Schuldscheine may be interest bearing or non-interest bearing and Options or Swaps may provide for one or more periodic payments.

**Variable Redemption Amount Notes:**

The relevant Final Terms issued in respect of each issue of variable redemption amount Notes will specify the basis for calculating the redemption amounts payable, which may be by

A07840320/0.24/06 Aug 2007

reference to a stock index or formula or as otherwise provided in the relevant Final Terms. The relevant Final Terms will also specify the Calculation Agent in respect of such issue of variable redemption amount Notes.

Unless permitted by then current laws and regulations, Notes (including Notes denominated in Sterling) which must be redeemed before the first anniversary of their date of issue and in respect of which the issue proceeds are to be accepted by the Issuer in the United Kingdom or whose issue otherwise constitutes a contravention of section 19 of FSMA must have a minimum redemption amount of £100,000 (or its equivalent in other currencies).

**Redemption of Notes by Instalments:** The relevant Final Terms issued in respect of each issue of Notes that are redeemable in two or more instalments will set out the dates on which, and the amounts in which, such Notes may be redeemed.

**Other Notes:** Terms applicable to high-interest Notes, low-interest Notes, step-up Notes, step-down Notes, dual-currency Notes, reverse dual-currency Notes, optional dual-currency Notes, partly-paid Notes and any other type of Note that the relevant Issuer, the Trustee and any Dealer or Dealers may agree to issue under the Programme will be set out in the relevant Final Terms.

**Optional Redemption of Notes:** The relevant Final Terms issued in respect of each issue of Notes will state whether such Notes may be redeemed prior to their stated maturity at the option of the Issuer or the Noteholder (either in whole or in part), and if so the terms applicable to such redemption.

**Mandatory Redemption of Notes:** If all or some of the Collateral relating to a Relevant Transaction becomes repayable prior to its stated maturity or there is a payment default in respect of any such Collateral, the Notes of the Series comprising the Relevant Transaction shall become repayable in whole or in part. See "Terms and Conditions of the Notes - Redemption, Purchase and Options".

**Exchange:** The relevant Final Terms issued in respect of each issue of Notes will state whether the holder of such Notes may exchange its Notes for the Net Asset Amount (as defined under "Terms and Conditions of the Notes - Redemption, Purchase and Options"). In such case the relevant Issuer may satisfy its exchange obligation (even if physical delivery is not requested by the holder) by delivering to, or to the order of such Noteholder the attributable Collateral and/or attributable rights (each as defined under "Terms and Conditions of the Notes - Redemption, Purchase and Options").

**Status and Ranking of Notes:** The Notes of each Series will be secured limited-recourse obligations of the relevant Issuer, ranking *pari passu* without any preference or priority (except in the case of Related Notes which are secured on the same Mortgaged Property and in respect of which, a Series of Notes may rank senior or junior to another Series of Notes for the purposes of rights over the

A07840320/0.24/06 Aug 2007

- 13 -

Mortgaged Property) with other Notes of the same Series and will be secured in a manner described in the Conditions. Recourse in respect of any Relevant Transaction and the Series of Notes comprised therein will be limited to the Mortgaged Property. The Final Terms applicable to each Series may specify the order in which payments are to be made to holders of the Notes, Receipts and Coupons (if any) relating to such Series and to the other creditors of the relevant Issuer specified in such Final Terms on each date as may be specified for payments out of amounts received by such Issuer in respect of the Collateral and other Mortgaged Property on which such Notes are secured or otherwise.

Claims of Noteholders and, if applicable, any counterparty to a Swap Agreement, the Custodian, the Account Bank and the Issuing and Paying Agent shall rank in accordance with the priorities specified in the relevant Supplemental Trust Deed and in the relevant Final Terms.

**Status of other Obligations:**     Loans, Options, Schuldscheine and Swaps will be limited-recourse obligations of the Issuer secured in the manner described in the relevant Obligation Documents. Loans and Schuldscheine may constitute either subordinated or unsubordinated obligations of the relevant Issuer as described in the relevant Obligation Documents.

**Restrictions and covenants:**     So long as any of the Obligations of a relevant Issuer remain outstanding, such Issuer will not, *inter alia*:

(a)    engage in any business whatsoever, other than acquiring and holding Mortgaged Property, issuing Notes or creating other Obligations or entering into a similar limited-recourse transaction, entering into related agreements and transactions and performing any act incidental to or necessary in connection with any of the foregoing;

(b)    dispose of any Mortgaged Property or any interest therein, or create any mortgage, charge or other security interest or right of recourse in respect thereof in favour of any person (other than (x) the security referred to above or any similar limited-recourse transaction (whether such limited-recourse transaction is by means of a debt issue or by loan, option or swap) entered into by the relevant Issuer in the future with the consent of the Trustee and the Swap Counterparty as provided below and (y) in connection with a transfer under the Swap Agreement);

(c)    cause or permit any Swap Agreement or Credit Enhancement Agreement to which it is party or the priority of the security interests created by the Trust Deed to be amended, terminated or discharged (other than in connection with a transfer

A07840320/0.24/06 Aug 2007

under the Swap Agreement);

(d)    release any party to any Swap Agreement (other than in connection with a transfer under the Swap Agreement), any Credit Enhancement Agreement or the Trust Deed from any existing obligations thereunder;

(e)    have any subsidiaries (other than in connection with any substitution of the principal debtor under the Obligations);

(f)    consent to any variation of, or exercise any powers or consent or waiver pursuant to, the terms of any Swap Agreement or Credit Enhancement Agreement, the conditions of the Notes, the Trust Deed or any other agreement relating to the issue of the Notes, any Obligation Document constituting any other Obligation or any related transactions;

(g)    (to the extent the same is within the control of the relevant Issuer) consolidate or merge with any other person or convey or transfer its properties or assets substantially as an entirety to any person;

(h)    have any employees;

(i)    (to the extent the same is within the control of the relevant Issuer) pay any dividends or make any distribution to its shareholders;

(j)    open or have any interest in any account whatsoever with any bank or financial institution unless such account relates to the Notes or the Mortgaged Property (as defined in the Trust Deed), any other Obligation or any party thereto, save where such account or the relevant Issuer's interest therein is simultaneously charged in favour of the Trustee so as to form part of the Mortgaged Property or save where such account is opened in connection with the administration and management of the Issuer and only moneys necessary to the administration and management of the Issuer are credited to such account; or

(k)    (to the extent the same is within the control of the Issuer) issue or allot shares to persons other than such shares as were in issue on the date of the issuer's incorporation.

See "Terms and Conditions of the Notes – Mortgaged Property, Realisation of Mortgaged Property and Restrictions".

**Cross Default:**    None, save that there will be an Event of Default in respect of Notes where there are Related Notes if there is an Event of

A07840320/0.24/06 Aug 2007

- 15 -

|  | Default in respect of such Related Notes. |
| **Withholding Tax:** | All payments of principal and interest by the Issuers in respect of Notes, Coupons, Loans and Schuldscheine will be made subject to any deduction for or on account of any taxation in the jurisdiction of incorporation of the relevant Issuer and any European Union Directive on the taxation of savings implementing the conclusions of the ECOFIN Council meeting of 26-27 November 2000 or any law implementing or complying with, or introduced in order to conform to, such Directive.. |
|  | In the event of the imposition upon the Issuer of a requirement to withhold or account for tax or the imposition of a tax in respect of its income resulting in it being unable to make the payment of the full amount due in respect of the Notes, the relevant Issuer will, subject to the Terms and Conditions of the Notes, use all reasonable endeavours to arrange for the substitution of its obligations by a company incorporated in another jurisdiction or to change its residence for tax purposes provided that, in relation to Notes which are rated, the Issuer shall notify the appropriate rating agency and that such substitution or such change shall not adversely affect any existing rating of the Notes as affirmed in writing by the appropriate rating agency. |
|  | If the Issuer satisfies the Trustee that such substitution cannot be arranged before the next payment is due in respect of the Notes, the Issuer shall (if applicable and subject to the consent of the Trustee) redeem all, but not some only, of the Notes of that Series at their redemption amount together with accrued interest (if any). |
| **Further Issue:** | The Issuer may from time to time issue further Notes of any Series on the same terms as existing Notes and such further Notes shall be consolidated and form a single Series with such existing Notes of the same Series; provided that, unless otherwise approved by an Extraordinary Resolution of Noteholders, the Issuer provides additional assets as security for such further Notes and complies with the other requirements set out in Condition 4(j). |
| **Governing Law:** | English |
| **Listing of Notes and admission to trading:** | Application has been made for certain Notes to be listed and admitted to trading on the regulated market of the Irish Stock Exchange. In addition, application may be made for certain series of Notes to be listed on any other exchange. As specified in the relevant Final Terms, a Series of Notes may be unlisted. |
| **Rating:** | The Programme is not rated but it is anticipated that Obligations to be issued under the Programme may be rated by Moody's and/or Standard & Poor's and/or Fitch. Where a Series of Notes is rated, such rating will be specified in the relevant Final Terms. A rating is not a recommendation to buy, |

A07840320/0.24/06 Aug 2007

sell or hold securities and may be subject to suspension, reduction or withdrawal at any time by the assigning rating agency.

**Selling Restrictions:**

United States, EEA, United Kingdom, Republic of Ireland, Luxembourg, Spain, Italy, Japan and any other restrictions relevant to any Series.

Each Specified Company will be Category 1 for the purposes of Regulation S under the Securities Act ("**Regulation S**").

The Notes will be issued in compliance with U.S. Treas. Reg. §1.163-5(c)(2)(i)(C) (the "**C Rules**") unless (i) the relevant Final Terms state that Notes are issued in compliance with U.S. Treas. Reg. §1.1.163-5(c)(2)(i)(D) (the "**D Rules**") or (ii) the Notes are issued other than in compliance with the C Rules or the D Rules but in circumstances in which the Notes will not constitute "registration required obligations" under the United States Tax Equity and Fiscal Responsibility Act of 1982 ("**TEFRA**") which circumstances will be referred to in the relevant Final Terms, as a transaction to which TEFRA is not applicable.

**Limited Recourse:**

Claims against the relevant Issuer by holders of Notes, Receipts, Coupons and / or Talons of each Series of Notes will be limited to the Mortgaged Property relating to the Relevant Transaction in which such Series is comprised. If the net proceeds of the realisation of the Mortgaged Property are not sufficient to make all payments which would otherwise then be due in respect of such claims, then the obligations of the Issuer in respect of the amounts payable (including amounts payable in respect of the Notes) will be limited to such net proceeds. The net proceeds of realisation of the Mortgaged Property relating to each Relevant Transaction will be applied in accordance with the priorities specified in the relevant Supplemental Trust Deed.

The Issuer will not be obliged to make any further payment in excess of such net proceeds and accordingly no debt shall be owed by the Issuer in respect of any shortfall remaining after realisation of the Mortgaged Property and application of the net proceeds in accordance with the relevant order of priority. None of the Trustee, any Noteholder, any Swap Counterparty, the Custodian, the Account Bank and the Issuing and Paying Agent (nor any person acting on behalf of any of them) may take any further action to recover such shortfall. Failure to make any payment in respect of any shortfall shall in no circumstances constitute an Event of Default under Condition 10.

**Non Petition:**

Only the Trustee may pursue the remedies available under the Trust Deed to enforce the rights of the Noteholders, Couponholders, the Custodian, the Account Bank, the Issuing and Paying Agent and the Swap Counterparty and none of the Noteholders, or Couponholders, the Custodian, the Account Bank, the Issuing and Paying Agent or the Swap Counterparty

is entitled to proceed against the relevant Issuer unless the Trustee, having become bound to proceed in accordance with the terms of the Trust Deed, fails or neglects to do so.

In addition, none of the Noteholders or Couponholders, the Trustee, the Custodian, the Account Bank, the Issuing and Paying Agent or the Swap Counterparty (nor any other person acting on behalf of any of them) shall be entitled to institute against the Issuer, or join with any other person in bringing, instituting or joining, insolvency proceedings (whether court based or otherwise) or for the appointment of an examiner or analogous person in relation to the Issuer and none of them shall have any claim in respect of any sum arising in respect of any assets secured for the benefit or any other obligations of the Issuer.

## RISK FACTORS

*The Issuer believes that the following factors may affect its ability to fulfil its obligations under the Notes issued under the Programme. All of these factors are contingencies which may or may not occur and the Issuer is not in a position to express a view on the likelihood of any such contingency occurring.*

*Factors which the Issuer believes may be material for the purpose of assessing the market risks associated with Notes issued under the Programme are also described below.*

*The Issuer believes that the factors described below represent the principal risks inherent in investing in Notes issued under the Programme, but the inability of the Issuer to pay interest, principal or other amounts on or in connection with any Notes may occur for other reasons and the Issuer does not represent that the statements below regarding the risks of holding any Notes are exhaustive. Prospective investors should also read the detailed information set out elsewhere in this Prospectus (including any documents incorporated by reference herein) and reach their own views prior to making any investment decision.*

### General

This Base Prospectus identifies in general terms certain information that a prospective investor should consider prior to making an investment in the Notes. However, a prospective investor should conduct its own thorough analysis (including its own accounting, legal and tax analysis) prior to deciding whether to invest in any Notes issued under the Programme as any evaluation of the suitability for an investor of an investment in Notes issued under the Programme depends upon a prospective investor's particular financial and other circumstances, as well as on specific terms of the relevant Notes and, if it does not have experience in financial, business and investment matters sufficient to permit it to make such a determination, it should consult with its financial adviser prior to deciding to make an investment on the suitability of any Notes. This Base Prospectus is not, and does not purport to be, investment advice.

In particular, each prospective investor in Notes must determine, based on its own independent review and such professional advice as it deems appropriate under the circumstances, that its acquisition of the Notes (i) is fully consistent with its (or if it is acquiring the Notes in a fiduciary capacity, the beneficiary's) financial needs, objectives and condition, (ii) complies and is fully consistent with all investment policies, guidelines and restrictions applicable to it (whether acquiring the Notes as principal or in a fiduciary capacity) and (iii) is a fit, proper and suitable investment for it (or, if it is acquiring the Notes in a fiduciary capacity, for the beneficiary), notwithstanding the clear and substantial risks inherent in investing in or holding the Notes.

Each prospective investor in Notes should have sufficient financial resources and liquidity to bear all of the risks of an investment in the relevant Notes, including where principal or interest is payable in one or more currencies, or where the currency for principal or interest payments is different from the potential investor's currency.

Investment activities of certain investors are subject to investment laws and regulations, or review or regulation by certain authorities. Each prospective investor should therefore consult its legal advisers to determine whether and to what extent (i) the Notes are legal investments for it, (ii) if relevant, the Notes can be used as underlying securities for various types of borrowing and (iii) other restrictions apply to its purchase or, if relevant, pledge of any Notes. Financial institutions should consult their legal advisers or the appropriate regulators to determine the appropriate treatment of Notes under any applicable risk-based capital or similar rules.

### Factors that may affect the Issuer's ability to fulfil its obligations under Notes issued under the Programme

*The Issuer is a special purpose vehicle*

A07840320/0.24/06 Aug 2007

The Issuer's sole business is the raising of money by issuing notes or other obligations for the purposes of purchasing assets and entering into related derivatives and other contracts. The Issuer has covenanted not to have any subsidiaries or employees, consolidate or merge with any other person or issue any shares (other than such shares as were in issue on the date of its incorporation). As such, the Issuer has, and will have, no assets other than its issued and paid-up share capital, such fees (as agreed) payable to it in connection with the issue of Notes or entry into other obligations from time to time and any Mortgaged Property and any other assets on which Notes or other obligations are secured. There is no day to day management of the business of the Issuer.

### Regulation of the Issuer by any regulatory authority

The Issuer is not required to be licensed, registered or authorised under any current securities, commodities or banking laws of its jurisdiction of incorporation and will operate without supervision by any authority in any jurisdiction. There is no assurance, however, that regulatory authorities in one or more jurisdictions would not take a contrary view regarding the applicability of any such laws to the Issuer. The taking of a contrary view by such regulatory authority could have an adverse impact on the Issuer or the holders of the Notes.

Any investment in the Notes does not have the status of a bank deposit and is not within the scope of any deposit protection scheme.

### Preferred creditors under Irish law

Certain Specified Companies are Irish companies. Under Irish law, upon an insolvency of an Irish company, when applying the proceeds of assets subject to fixed security which may have been realised in the course of a liquidation or receivership, the claims of a limited category of preferential creditors will take priority over the claims of creditors holding the relevant fixed security. These preferred claims include the remuneration, costs and expenses properly incurred by any examiner of the company (which may include any borrowings made by an examiner to fund the company's requirements for the duration of his appointment) which have been approved by the Irish courts (see "Examinership" below).

In relation to the disposal of assets of any Irish tax resident company which are subject to security, a person entitled to the benefit of the security may be liable for tax in relation to any capital gains made by the company on a disposal of those assets on exercise of the security.

### Examinership

Examinership is a court procedure available under the Irish Companies (Amendment) Act 1990, as amended to facilitate the survival of Irish companies in financial difficulties.

Where the Issuer is an Irish company, the Issuer, the directors of the Issuer, a contingent, prospective or actual creditor of the Issuer, or shareholders of the Issuer holding, at the date of presentation of the petition, not less than one-tenth of the voting share capital of the Issuer are each entitled to petition the court for the appointment of an examiner. The examiner, once appointed, has the power to set aside contracts and arrangements entered into by the company after his appointment and, in certain circumstances, can avoid a negative pledge given by the company prior to his appointment. Furthermore, he may sell assets the subject of a fixed charge. However, if such power is exercised he must account to the holders of the fixed charge for the amount realised and discharge the amount due to them out of the proceeds of sale.

During the period of protection, the examiner will compile proposals for a compromise or scheme of arrangement to assist the survival of the company or the whole or any part of its undertaking as a going concern. A scheme of arrangement may be approved by the Irish High Court when at least one class of creditors has voted in favour of the proposals and the Irish High Court is satisfied that such proposals are fair and equitable in relation to any class of members or creditors who have not accepted the proposals and whose interests would be impaired by implementation of the scheme of arrangement.

In considering proposals by the examiner, it is likely that secured and unsecured creditors would form separate classes of creditors. In the case of the Issuer, if the Trustee represented the majority in number and

A07840320/0.24/06 Aug 2007

value of claims within the secured creditor class (which would be likely given the restrictions agreed to by the Issuer in the Conditions), the Trustee would be in a position to reject any proposal not in favour of the Noteholders. The Trustee would also be entitled to argue at the Irish High Court hearing at which the proposed scheme of arrangement is considered that the proposals are unfair and inequitable in relation to the Noteholders, especially if such proposals included a writing down of the value of amounts due by the Issuer to the Noteholders. The primary risks to the holders of Notes if an examiner were to be appointed to the Issuer are as follows:

(i) the potential for a scheme of arrangement to be approved involving the writing down of the debt owed by the Issuer to the Noteholders as secured by the Trust Deed;

(ii) the potential for the examiner to seek to set aside any negative pledge in the Notes prohibiting the creation of security or the incurring of borrowings by the Issuer to enable the examiner to borrow to fund the Issuer during the protection period; and

(iii) in the event that a scheme of arrangement is not approved and the Issuer subsequently goes into liquidation, the examiner's remuneration and expenses (including certain borrowings incurred by the examiner on behalf of the Issuer and approved by the Irish High Court) will take priority over the monies and liabilities which from time to time are or may become due, owing or payable by the Issuer to the Noteholders.

### Risks related to the structure of a particular issue of Notes

A wide range of Notes may be issued under the Programme. A number of these Notes may have features which contain particular risks for potential investors. Set out below is a description of certain such features. Potential purchasers of Notes should be aware that the range of Notes that may be issued under the Programme is such that the following statements are not exhaustive with respect to the types of Notes that may be issued under the Programme and any particular Series of Notes may have additional risks associated with it that are not described below.

*Variable Coupon Amount Notes*

The Issuer may issue Notes with principal or interest determined by reference to an index or formula, to changes in the prices of securities or commodities or changes in credit spreads, to movements in currency exchange rates or other factors (each, a "**Relevant Factor**"). In addition, the Issuer may issue Notes with principal or interest payable in one or more currencies which may be different from the currency in which the Notes are denominated. Potential investors should be aware that:

(i) the market price of such Notes may be volatile;

(ii) they may receive no interest;

(iii) payment of principal or interest may occur at a different time or in a different currency than expected;

(iv) the amount of principal payable at redemption may be less than the nominal amount of such Notes or even zero;

(v) a Relevant Factor may be subject to significant fluctuations that may not correlate with changes in interest rates, currencies or other indices;

(vi) if a Relevant Factor is applied to Notes in conjunction with a multiplier greater than one or contains some other leverage factor, the effect of changes in the Relevant Factor on principal or interest payable likely will be magnified; and

(vii) the timing of changes in a Relevant Factor may affect the actual yield to investors, even if the average level is consistent with their expectations. In general, the earlier the change in the Relevant Factor, the greater the effect on yield.

*Partly-paid Notes*

The Issuer may issue Notes where the issue price is payable in more than one instalment. Failure to pay any subsequent instalment could result in an investor losing all of its investment.

*Notes issued at a substantial discount or premium*

The Issuer may issue Notes at either a substantial discount or premium. The market values of securities issued at a substantial discount or premium to their nominal amount tend to fluctuate more in relation to general changes in interest rates than do prices for conventional interest-bearing securities. Generally, the longer the remaining term of the securities, the greater the price volatility as compared to conventional interest-bearing securities with comparable maturities.

## Risks relating to the Notes generally

Set out below is a brief description of certain risks relating to the Notes generally:

*Limited recourse obligations*

The Notes are direct, secured, limited recourse obligations of the Issuer payable solely out of the assets charged by the Issuer in favour of the Trustee on behalf of the Noteholders and other secured parties. The Issuer will have no other assets or sources of revenue available for payment of any of its obligations under the Notes. The Noteholders will have no right to take title to, or possession of, the charged assets unless the Trustee, having become bound to do so, fails or neglects to take action against the Issuer and such failure or neglect is continuing. No assurance can be made that the proceeds available for and allocated to the repayment of the Notes at any particular time will be sufficient to cover all amounts that would otherwise be due and payable in respect of the Notes. If the proceeds of the realisation of the Mortgaged Property received by the Trustee for the benefit of the Noteholders prove insufficient to make payments on the Notes, no other assets will be available for payment of the shortfall, and, following distribution of the proceeds of such realisation, the Issuer will have no further obligation to pay any amounts in respect of such shortfall and accordingly no debt will be owed by the Issuer in respect of any such shortfall.

Further, the Trustee and the Noteholders will not be entitled at any time to institute, or join with any other person in bringing, instituting or joining, insolvency proceedings (whether court based or otherwise) in relation to the Issuer.

No person other than the Issuer will be obliged to make payments on the Notes.

*Taxation and no gross up*

Each Noteholder will assume and be solely responsible for any and all taxes of any jurisdiction or governmental or regulatory authority, including, without limitation, any state or local taxes or other like assessment or charges that may be applicable to any payment to it in respect of the Notes. In the event that any withholding tax or deduction for tax is imposed on payments of interest on the Notes, the Noteholders will not be entitled to receive grossed-up amounts to compensate for such withholding tax and no Event of Default shall occur as a result of any such withholding or deduction but the Notes may be redeemed as described in "Early Redemption for tax or legal reasons" below.

*Modification, waivers and substitution*

The conditions of the Notes contain provisions for calling meetings of Noteholders to consider matters affecting their interests generally. These provisions permit defined majorities to bind all Noteholders including Noteholders who did not attend and vote at the relevant meeting and Noteholders who voted in a manner contrary to the majority.

The Trustee may, in certain circumstances, without the consent of Noteholders, (i) agree to any modification of, or the waiver or authorisation of any breach or proposed breach of, any of the provisions of Notes or (ii) determine without the consent of the Noteholders that any Event of Default or potential Event of Default shall

not be treated as such or (iii) agree to the substitution of another company as principal debtor under any Notes in place of the Issuer.

In addition, the Trust Deed provides that the Trustee need only consider the interests and instructions of the Controlling Series (as defined herein) when considering conflicting interests of Related Noteholders that are secured on the same Mortgaged Property. The Controlling Series will be specified in the relevant Supplemental Trust Deed.

### Early Redemption for tax or legal reasons

The Issuer may for specified tax or legal reasons, as detailed in Condition 6(d), upon giving notice to Noteholders, redeem all Notes earlier than the Maturity Date. If the Issuer redeems Notes early in such circumstances, the Issuer will, if and to the extent permitted by applicable law, pay each Noteholder the Early Redemption Amount on the date specified in the Conditions. Such Early Redemption Amount is not principally protected and will be calculated in accordance with the Conditions.

### Priority of claims

The ranking of the relative claims of, *inter alios*, the Noteholders and the Swap Counterparty (if any) over the Mortgaged Property will be specified in the applicable Final Terms. The claims of the Swap Counterparty (if any) may rank senior to those of Noteholders. The claims of the Trustee for its fees and expenses rank senior to the claims of the Noteholders. Claims of Noteholders of a Series of Notes may rank senior or junior to those of holders of Related Notes. Claims of Noteholders may also rank junior to certain claims of the Custodian, Account Bank and Issuing and Paying Agent.

### Change of law

The Conditions of the Notes are governed by English law in effect as at the date of issue of the relevant Notes. No assurance can be given as to the impact of any possible judicial decision or change to English law or administrative practice after the date of issue of the relevant Notes.

### Provision of information

Neither the Issuer, the Trustee, the Dealers nor any affiliate of such persons makes any representation as to the credit quality of any Swap Counterparty, Swap Guarantor, Credit Support Provider or obligor of any Collateral. Any of such persons may have acquired, or during the term of the Notes may acquire, non-public information with respect to any Swap Counterparty, Swap Guarantor, Credit Support Provider or obligor of any Collateral. None of such persons is under any obligation to make such information directly available to Noteholders. None of such persons is under any obligation to make available any information relating to, or keep under review on the Noteholders' behalf, the business, financial conditions, prospects, creditworthiness or state of affairs of the obligors of the Collateral or conduct any investigation or due diligence into the obligors of the Collateral.

### Minimum Denomination

In relation to any issue of Notes which have a denomination consisting of the minimum denomination of €50,000 (or other amounts) plus a higher integral multiple of another smaller amount, it is possible that the Notes may be traded in amounts in excess of €50,000 (or other amounts) (or its equivalent) that are not integral multiples of €50,000 (or other amounts) (or its equivalent). In such a case a Noteholder who, as a result of trading such amounts, holds a principal amount of less than the minimum denomination will not receive a definitive Note in respect of such holding (should definitive Notes be printed) and would need to purchase a principal amount of Notes such that it holds an amount equal to one or more minimum denomination.

## Risks relating to the Collateral

### No investigations

A07840320/0.24/06 Aug 2007

- 23 -

Unless otherwise specified in the applicable Final Terms, no investigations, searches or other enquiries will be made by or on behalf of the Issuer or the Trustee in respect of the Collateral and no representations or warranties, express or implied, will be given by the Issuer, the Dealer, the Trustee or any other person on their behalf in respect of the Collateral.

*Collateral*

Depending on the nature of Collateral in respect of the relevant Notes, Noteholders may be exposed to the market price of the Collateral. The Issuer may have to fund its payments by the sale of Collateral at a market value and the nominal amount of the Collateral will be reduced by the principal amount of the Collateral sold. The market price of the Collateral will generally fluctuate with, among other things, the liquidity and volatility of the financial markets, general economic conditions, domestic and international political events, developments or trends in a particular industry and the financial condition of the issuer of the Collateral.

*Early Redemption for Collateral default*

If, in respect of any Notes, any of the Collateral becomes repayable prior to its stated date of maturity for whatever reason or (unless the Trustee otherwise agrees) there is a payment default (after the expiry of any grace period specified in the terms and conditions of the Collateral in existence as at the later of the issue date of the Notes and the date on which such Collateral was issued) in respect of any of the Collateral, the Issuer shall give notice to the Trustee and Noteholders and upon expiry of such Notes shall redeem the Notes in whole or in part on the basis set out in Condition 6(c). The Notes are not principal protected in such circumstances and the amount payable to Noteholders will be calculated in accordance with the Conditions.

## Risks relating to the counterparties

*Reliance on creditworthiness of other parties*

If a Swap Agreement is entered into by the Issuer in connection with the Notes, the ability of the Issuer to meet its obligations under the Notes may depend on the receipt by it of payments under that Swap Agreement. Consequently, in such circumstances, the Issuer is exposed to the ability of the Swap Counterparty (if any) and, failing which, of the Swap Guarantor (if any) to perform their obligations in respect of the relevant Swap Agreement (if any).

The receipt by the Issuer of payments under a Swap Agreement may also be dependent on the timely payment by the Issuer of its obligations under that Swap Agreement. The ability of the Issuer to make timely payment of its obligations under the relevant Swap Agreement may depend on receipt by it of the scheduled payments under the Collateral. Consequently, the Issuer may also be exposed to the ability of the issuer of the Collateral to perform its payment obligations.

If acquired, Collateral will be held in an account of, and in the name of, the Custodian. Money market funds and cash may be held in an account of, and in the name of, the Account Bank. Where Collateral consists of assets other than securities, it may be held in the name of or under the control of the Custodian or in such other manner as is approved by the Trustee. The Custodian may be responsible under the Agency Agreement for receiving payments on the Collateral and remitting them as may be required in the context of the relevant Notes.

*Trustee conflicts of interest*

In connection with the exercise of its functions, the Trustee shall have regard to the interests of the Noteholders as a class and shall not have regard to the consequences of such exercise for individual Noteholders or Couponholders and the Trustee shall not be entitled to require, nor shall any Noteholder or Couponholder be entitled to claim, from the Issuer any indemnification or payment in respect of any tax consequence of any such exercise upon individual Noteholders or Couponholders.

In acting as Trustee under the Trust Deed, the Trustee shall not, in respect of Notes of any Series, assume any duty or responsibility to any Swap Counterparty (other than to pay to any Swap Counterparty any moneys received and payable to it and to act in accordance with the provisions of Condition 4) or any Credit Enhancement Provider and shall have regard solely to the interests of the Noteholders and shall not be obliged to act on any directions of the Swap Counterparty if this would in the Trustee's opinion be contrary to the interests of the Noteholders or Couponholders.

*Business relationships and capacity of Lehman Brothers International (Europe)*

The Issuer, Lehman Brothers International (Europe) and any of its affiliates may have existing or future business relationships with any Swap Counterparty, Swap Guarantor, Credit Enhancement Provider or obligor of any Collateral (including, but not limited to, lending, depository, risk management, advisory and banking relationships), and will pursue actions and take steps that they deem or it deems necessary or appropriate to protect their or its interests arising therefrom without regard to the consequences for a Noteholder. In addition, the Issuer, Lehman Brothers International (Europe) and any of its affiliates may make a market or hold positions in respect of any of the Collateral relating to any particular transaction. From time to time, Lehman Brothers International (Europe) and its affiliates may own significant amounts of Notes issued under the Programme.

Lehman Brothers International (Europe) and its affiliates may act in a number of capacities in respect of Notes issued under the Programme including, without limitation, Dealer, Calculation Agent, Swap Counterparty, Swap Guarantor and Disposal Agent. Lehman Brothers International (Europe) and its affiliates acting in such capacities in connection with such Notes shall have only the duties and responsibilities expressly agreed to by such entities in the relevant capacity and shall not, by virtue of acting in any other capacity, be deemed to have other duties or responsibilities or be deemed to hold a standard of care other than as expressly provided with respect to each such capacity. Lehman Brothers International (Europe) and its affiliates in their various capacities in connection with the Notes may enter into business dealings, from which they may derive revenues and profits in addition to any fees, without any duty to account therefor.

*Legality of purchase*

None of the Issuer, the Trustee, Lehman Brothers International (Europe) nor any affiliate of such persons has or assumes responsibility for the lawfulness of the acquisition of the Notes by a prospective purchaser of the Notes (whether for its own account or for the account of any third party), whether under the laws of the jurisdiction of its incorporation or the jurisdiction in which it operates (if different), or for compliance by that prospective purchaser (or any such third party) with any law, regulation or regulatory policy applicable to it.

## Risks related to the market generally

Set out below is a brief description of certain market risks:

*The secondary market generally*

Notes may have no established trading market when issued, and one may never develop. If a market does develop, it may not be liquid. Therefore, investors may not be able to sell their Notes easily or at prices that will provide them with a yield comparable to similar investments that have a developed secondary market. This is particularly the case for Notes that are especially sensitive to interest rate, currency or market risks, are designed for specific investment objectives or strategies or have been structured to meet the investment

A07840320/0.24/06 Aug 2007

requirements of limited categories of investors. These types of Notes generally would have a more limited secondary market and more price volatility than conventional debt securities. Illiquidity may have a severely adverse effect on the market value of Notes.

*Exchange rate risks and exchange controls*

The Issuer will pay principal and, where applicable, interest on Notes issued under the Programme in the currency for such Notes. This presents certain risks relating to currency conversions if an investor's financial activities are denominated principally in a currency or currency unit (the "**Investor's Currency**") other than the specified currency. These include the risk that exchange rates may significantly change (including changes due to devaluation of the specified currency or revaluation of the Investor's Currency) and the risk that authorities with jurisdiction over the Investor's Currency may impose or modify exchange controls. An appreciation in the value of the Investor's Currency relative to the specified currency would decrease (1) the Investor's Currency-equivalent yield on the Notes, (2) the Investor's Currency equivalent value of the principal payable on the Notes and (3) the Investor's Currency equivalent market value of the Notes.

Government and monetary authorities may impose (as some have done in the past) exchange controls that could adversely affect an applicable exchange rate. As a result, investors may receive less interest or principal than expected, or no interest or principal.

*Interest rate risks*

Investment in Notes issued under the Programme may involve the risk that subsequent changes in market interest rates may adversely affect the value of the Notes.

*Credit ratings may not reflect all risks*

One or more independent credit rating agencies may assign credit ratings to an issue of Notes. The ratings may not reflect the potential impact of all risks related to structure, market, additional factors discussed above, and other factors that may affect the value of the Notes. A credit rating is not a recommendation to buy, sell or hold securities and may be revised or withdrawn by the rating agency at any time.

A07840320/0.24/06 Aug 2007

## TERMS AND CONDITIONS OF THE NOTES

*The following is the text of the terms and conditions that, subject to completion and amendment and as supplemented or varied in accordance with the provisions of the relevant Final Terms in relation to a particular Series of Notes, shall be applicable to the Notes in definitive form (if any) issued in exchange for the Global Note(s) representing each Series. Either (i) the full text of these terms and conditions together with the relevant provisions of the Final Terms or (ii) these terms and conditions, as so completed, amended, supplemented or varied (and subject to simplification by the deletion of non-applicable provisions), shall be endorsed on such Bearer Notes or on the Certificates relating to such Registered Notes. All capitalised terms that are not defined in these Conditions will have the meanings given to them in the Principal Trust Deed and/or the relevant Supplemental Trust Deed. Those definitions will be endorsed on the Definitive Notes or Certificates, as the case may be. References in the conditions to "Notes" are to the Notes of one Series of a relevant Issuer only, not to all Notes that may be issued under the Programme and references to the "Issuer" are to the Specified Company that is stipulated as such in the relevant Final Terms.*

*These Conditions may be amended, modified, or varied in relation to any Series of Notes by the terms of the relevant Supplemental Trust Deed in relation to such Series. Italicised text set out herein does not form part of the Conditions and is set out for information purposes only.*

The Notes are constituted and secured by a relevant supplemental trust deed (the "**relevant Supplemental Trust Deed**"), dated the date of issue of the Notes (the "**Issue Date**"), between the Issuer, BNY Corporate Trustee Services Limited (formerly known as J.P. Morgan Corporate Trustee Services Limited) (the "**Trustee**", which expression shall include all persons for the time being the trustee or trustees under the Trust Deed (as defined below) as trustee for, *inter alia*, the Noteholders (as defined below) and, if applicable, the persons specified therein as a Swap Counterparty (as defined in Condition 3(a)). The relevant Supplemental Trust Deed is supplemental to a principal trust deed dated 10 October 2002 as amended and restated on 20 July 2007 and made between Dante Finance plc (the "**First Issuer**") and the Trustee (the "**Principal Trust Deed**", which expression shall include any amendments or supplements thereof and together with the relevant Supplemental Trust Deed, the "**Trust Deed**"). These terms and conditions include summaries of, and are subject to, the detailed provisions of the Trust Deed, which includes the form of the Bearer Notes, Certificates, Receipts, Coupons and Talons referred to below. An agency agreement dated 10 October 2002 as amended and restated on 20 July 2007 has been entered into in relation to the Notes between the First Issuer, the Trustee, The Bank of New York (as successor to JPMorgan Chase Bank, N.A.) as, *inter alia*, initial issuing and paying agent and as custodian and account bank and the other agents named in it (as amended or supplemented as at the Issue Date, the "**Agency Agreement**"). The issuing and paying agent, the custodian, the account bank, the paying agents, the registrar, the transfer agents and the calculation agent(s) for the time being (if any) are referred to below respectively as the "Issuing and Paying Agent", the "Custodian", the "Account Bank", the "Paying Agents" (which expression shall include the Issuing and Paying Agent), the "Registrar", and the "Transfer Agents" (which expression shall include the Registrar). A Programme Agreement dated 10 October 2002 as amended and restated on 20 July 2007 has been entered into in relation to the Notes between the First Issuer and Lehman Brothers International (Europe) as Dealer (the "**Dealer**") and where appropriate as Arranger (the "**Arranger**") in relation to a particular series, the Trustee, the Issuing and Paying Agent and Registrar (the "**Programme Agreement**"). The Issuer (save for the First Issuer) has acceded to the Principal Trust Deed, the Agency Agreement and the Programme Agreement pursuant to a Deed of Accession dated on or before the Issue Date. Copies of the Principal Trust Deed, the Agency Agreement and the Programme Agreement are available for inspection during usual business hours, at the principal office of the Trustee (presently at One Canada Square, London E14 5AL) and at the specified offices of the Paying Agents and the Transfer Agents.

The Noteholders, the holders (the "**Couponholders**") of the interest coupons (the "**Coupons**") appertaining to interest bearing Bearer Notes and, where applicable in the case of such Notes, talons for further Coupons (the "**Talons**") and the holders of the receipts for the payment of instalments of principal (the "**Receipts**") relating

A07840320/0.24/06 Aug 2007

to Bearer Notes of which the principal is payable in instalments are entitled to the benefit of, are bound by, and are deemed to have notice of, all the provisions of the Trust Deed and are deemed to have notice of those provisions applicable to them of the Agency Agreement and the Programme Agreement.

Under the Principal Trust Deed the Issuer may also borrow under, buy, sell or enter into other secured obligations in the form of loans ("**Loans**"), options ("**Options**"), schuldscheine ("**Schuldscheine**") or swaps ("**Swaps**") (each, including the obligations under the Notes, an "**Obligation**").

References in these Conditions to "Mortgaged Property" are to the assets and agreements comprising the mortgaged property upon which the Notes are secured as described in the Final Terms.

*Full details of the relevant Mortgaged Property will be set out in the relevant Final Terms.*

If so specified in the relevant Supplemental Trust Deed, the Issuer has, in relation to the Notes, entered into one or more derivative transactions confirmed in a Swap Agreement (as defined in Condition 3(a)) with a Swap Counterparty with an effective date as of the Issue Date.

## 1    Form, Denomination and Title

The Notes are issued in bearer form ("**Bearer Notes**", which expression includes Notes that are specified to be Exchangeable Bearer Notes), in registered form ("**Registered Notes**") or in bearer form exchangeable for Registered Notes ("**Exchangeable Bearer Notes**") in each case in the denomination(s) shown thereon provided that in the case of any Notes which are to be admitted to trading on a regulated market within the European Economic Area or offered to the public in a Member State of the European Economic Area in circumstances which require the publication of a prospectus under the Prospectus Directive (Directive 2003/71/EC), the minimum denomination shall be €50,000 (or its equivalent in any other currency as at the date of issue of those Notes).

All Registered Notes shall have the same denomination. Where Exchangeable Bearer Notes are issued, the Registered Notes for which they are exchangeable shall have the same denomination as the lowest denomination of Exchangeable Bearer Notes.

Bearer Notes are serially numbered and are issued with Coupons (and, where appropriate, a Talon) attached, save in the case of Notes that do not bear interest in which case references to interest (other than in relation to interest due after the Maturity Date (as defined in the relevant Final Terms )), Coupons and Talons in these Conditions are not applicable. Any Bearer Note the principal amount of which is redeemable in instalments is issued with one or more Receipts attached.

Registered Notes are represented by registered certificates ("**Certificates**") and, save as provided in Condition 2(c), each Certificate shall represent the entire holding of Registered Notes by the same holder.

Title to the Bearer Notes and the Receipts, Coupons and Talons shall pass by delivery. Title to the Registered Notes shall pass by registration in the register that the Issuer shall procure to be kept by the Registrar in accordance with the provisions of the Agency Agreement (the "**Register**"). Except as ordered by a court of competent jurisdiction or as required by law, the holder (as defined below) of any Note, Receipt, Coupon or Talon shall be deemed to be and may be treated as its absolute owner for all purposes whether or not it is overdue and regardless of any notice of ownership, trust or an interest in it, any writing on it (or on the Certificate representing it) or its theft or loss (or that of the related Certificate) and no person shall be liable for so treating the holder.

In these Conditions, "**Noteholder**" means the bearer of any Bearer Note and the Receipts relating to it or the person in whose name a Registered Note is registered (as the case may be), "**holder**" (in relation to a Note, Receipt, Coupon or Talon) means the bearer of the Bearer Note, Receipt, Coupon or Talon or the person in whose name a Registered Note is registered (as the case may be) and capitalised terms have the meanings given to them herein, the absence of any such meaning indicating that such term is not applicable to the Notes.

A07840320/0.24/06 Aug 2007

**2    Exchanges of Exchangeable Bearer Notes and Transfers of Registered Notes**

    (a)    *Exchange of Exchangeable Bearer Notes*

Subject as provided in Condition 2(f), Exchangeable Bearer Notes may be exchanged for the same principal amount of Registered Notes at the request in writing of the relevant Noteholder and upon surrender of each Exchangeable Bearer Note to be exchanged, together with all unmatured Receipts, Coupons and Talons relating to it, at the specified office of any Transfer Agent; provided, however, that where an Exchangeable Bearer Note is surrendered for exchange after the Record Date (as defined in Condition 7(b)) for any payment of interest, the Coupon in respect of that payment of interest need not be surrendered with it. Registered Notes may not be exchanged for Bearer Notes. Bearer Notes of one denomination may not be exchanged for Bearer Notes of another denomination. Bearer Notes that are not Exchangeable Bearer Notes may not be exchanged for Registered Notes.

    (b)    *Transfer of Registered Notes*

One or more Registered Notes may be transferred upon the surrender (at the specified office of the Registrar or any Transfer Agent) of the Certificate representing such Registered Notes to be transferred, together with the form of transfer endorsed on such Certificate duly completed and executed and any other evidence as the Registrar or Transfer Agent may reasonably require. In the case of a transfer of part only of a holding of Registered Notes represented by one Certificate, a new Certificate shall be issued to the transferee in respect of the part transferred and a further new Certificate in respect of the balance of the holding not transferred shall be issued to the transferor. All transfers of Notes and entities on the Register will be made in accordance with the detailed regulations concerning transfers of Notes scheduled to the Agency Agreement. The regulations may be changed by the Issuer, with the prior written approval of the Registrar and the Trustee. A copy of the current regulations will be made available by the Registrar to any Noteholder upon request.

    (c)    *Exercise of Options or Partial Redemption in Respect of Registered Notes*

In the case of an exercise of an Issuer's option in respect of, or a partial redemption of, a holding of Registered Notes represented by a single Certificate, a new Certificate shall be issued to the holder to reflect the exercise of such option or in respect of the balance of the holding not redeemed. In the case of a partial exercise of an option resulting in Registered Notes of the same holding having different terms, separate Certificates shall be issued in respect of those Notes of that holding that have the same terms. New Certificates shall only be issued against surrender of the existing Certificates to the Registrar or any Transfer Agent.

    (d)    *Delivery of New Certificates*

Each new Certificate to be issued pursuant to Conditions 2(a), (b) or (c) shall be available for delivery within five business days of receipt of the request for exchange, form of transfer or Exercise Notice or surrender of the Certificate for exchange. Delivery of the new Certificate(s) shall be made at the specified office of the Registrar or of the Transfer Agent (as the case may be) to whom delivery or surrender of such request for exchange, form of transfer, Exercise Notice or Certificate shall have been made or, at the option of the holder making such delivery or surrender as aforesaid and as specified in the relevant request for exchange, form of transfer, Exercise Notice or otherwise in writing, be mailed by uninsured post at the risk of the holder entitled to the new Certificate to such address as may be so specified, unless such holder requests otherwise and pays in advance to the Registrar or Transfer Agent the costs of such other method of delivery and/or such insurance as it may specify. In this Condition 2(d), "business day" means a day, other than a Saturday or Sunday, on which banks are open for business in the place of the specified office of the relevant Transfer Agent or the Registrar.

(e)  *Exchange Free of Charge*

Exchange and transfer of Notes and Certificates on registration, transfer, exercise of an option or partial redemption shall be effected without charge by or on behalf of the Issuer, the Registrar or the Transfer Agents, but upon payment of any tax or other governmental charges that may be imposed in relation to it (or the giving of such indemnity as the Registrar or the relevant Transfer Agent may require).

(f)  *Closed Periods*

No Noteholder may require the transfer of a Registered Note to be registered or an Exchangeable Bearer Note to be exchanged for one or more Registered Note(s) (i) during the period of 15 days ending on the due date for redemption of, or payment of any Instalment Amount (as defined in the relevant Final Terms) in respect of, that Note, (ii) during the period of 15 days prior to any date on which Notes may be called for redemption by the Issuer at its option pursuant to Condition 6(e), (iii) after any such Note has been called for redemption or (iv) during the period of seven days ending on (and including) any Record Date. An Exchangeable Bearer Note called for redemption may, however, be exchanged for one or more Registered Note(s) in respect of which the Certificate is simultaneously surrendered not later than the relevant Record Date.

3  **Status and Non-applicability**

(a)  *Status of Notes*

The Notes are secured, limited-recourse obligations of the Issuer, ranking *pari passu* without any preference or priority amongst themselves (except in the case of Notes with Related Notes in respect of which a Series of Notes may rank senior or junior for the purposes of rights over the Mortgaged Property). The Notes, which are secured in the manner described in Condition 4 and recourse in respect of the Notes is limited in the manner described in Condition 4(e) and Condition 11. In connection with the issue of the Notes there may be executed one or more derivative agreements (each a "**Swap Agreement**") between the Issuer and one or more swap counterparties (each a "**Swap Counterparty**") and one or more credit enhancement agreements (each a "**Credit Enhancement Agreement**") as further described in the relevant Supplemental Trust Deed.

In the case of Notes with Related Notes, details of the Notes' relationship with the relevant Related Notes will be set out in the relevant Final Terms or relevant Supplemental Trust Deed including (to the extent relevant in the context of the Notes), without limitation, in relation to the following issues: (i) the Mortgaged Property over which such Notes and Related Notes are secured, (ii) events of default, (iii) meetings of Noteholders, (iv) fungible issues, (v) conflicts between the interests of the Noteholders and the relevant Related Noteholders and the duties of the Trustee as Trustee for holders of the Notes and as Trustee for holders of the relevant Related Notes and (vi) realisation of the Mortgaged Property.

If so specified in the relevant Final Terms prior to the security over the Mortgaged Property becoming enforceable in accordance with the Trust Deed and the Conditions certain amounts received by the Issuer in connection with the Collateral and/or any Swap Agreement or otherwise will be applied in such manner and order of priority (if any) as may be specified in the relevant Final Terms.

For these purposes and unless otherwise provided:

"**Related Notes**" means the outstanding Notes of any other Series which shares the same Mortgaged Property as the Notes and which was issued as part of the same transaction.

"**Related Noteholders**" means the holders of Related Notes.

A07840320/0.24/06 Aug 2007

(b)   *Non-applicability*

Where no reference is made in the relevant Supplemental Trust Deed to any Swap Agreement or Credit Enhancement Agreement, references in these Terms and Conditions to any such document or agreement and to any Swap Counterparty, as the case may be, shall not be applicable.

## 4   Mortgaged Property, Realisation of Mortgaged Property and Restrictions

(a)   *Mortgaged Property*

The Notes will be secured pursuant to the relevant Supplemental Trust Deed. The form of the Mortgaged Property may comprise some or all of the assets and assignments set out below.

(b)   *Secured Assets*

The obligations of the Issuer under the Trust Deed, the Notes and the Coupons are secured by a first fixed charge over certain bonds, warrants, notes, receivables or equity securities of any form, denomination, type or issuer, monoline guarantees, options, swaps, loans or any other financial obligations assigned to or assumed by the Issuer or any other agreed assets owned by the Issuer as specified in the relevant Supplemental Trust Deed (the "**Collateral**") and a first fixed charge on all funds held from time to time by the Custodian and/or the Account Bank and/or by the Issuing and Paying Agent and/or the Registrar for payment of principal and interest on the Notes or of amounts due under the Swap Agreement. If so specified in the relevant Supplemental Trust Deed, the obligations of the Issuer under any Swap Agreement are also secured by a first fixed charge over the Collateral. Unless otherwise specified in the relevant Supplemental Trust Deed, the Collateral is held by the Custodian or the Account Bank on behalf of the Issuer subject to the charges set out in the Trust Deed. If so specified in the relevant Supplemental Trust Deed, under the terms of the relevant Swap Agreement the Swap Counterparty may require all or part of the Collateral to be transferred to it as security for the performance of the Issuer's obligations to the Swap Counterparty under the terms of the Swap Agreement on terms that the Swap Counterparty will be required to return equivalent collateral or the market value thereof to the Issuer on or before the termination of such Swap Agreement (subject to any enforcement of such security). In such circumstances the security over the Collateral in respect of the Issuer's obligations under the Trust Deed, the Notes and the Coupons will be over the Issuer's rights against the Swap Counterparty in relation to the Collateral as aforesaid.

If so specified in the relevant Supplemental Trust Deed, the Issuer's obligations under the Trust Deed, the Notes and the Coupons are also secured by an assignment by way of security of the Issuer's rights under the Swap Agreement and/or the Credit Enhancement Agreement in favour of the Trustee for itself and for the benefit of the holders of the Notes, Coupons and Receipts.

Additionally, the obligations of the Issuer may be secured pursuant to a security document other than the Trust Deed (an "**Other Security Document**") as specified in the relevant Supplemental Trust Deed.

The Trustee shall (subject to the provisions of the relevant Supplemental Trust Deed and to sub-Clause 6.3 of the Principal Trust Deed) apply all moneys received by it under the provisions of the Principal Trust Deed and the relevant Supplemental Trust Deed in connection with the realisation or enforcement of the security constituted thereby and by any relevant Other Security Document:

(i)   *if "Swap Counterparty Priority" is specified in the relevant Supplemental Trust Deed:*

(a)   first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

(b)  secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Account Bank and/or the Transfer Agents for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

(c)  thirdly, rateably in meeting the claims (if any) of the Swap Counterparty under the relevant Swap Agreement(s);

(d)  fourthly, rateably in meeting the claims (if any) of the holders of Notes, Coupons and Receipts. If the moneys received by the Trustee are not enough to pay such amounts in full, the Trustee shall apply them *pro rata* on the basis of the amount due to each party entitled to such payment; and

(e)  fifthly, in payment of the balance (if any) to the Issuer,

provided that, if the "Swap Counterparty Priority" is expressed in the relevant Supplemental Trust Deed and Final Terms to be subject to adjustment on a Swap Counterparty default, and if and to the extent that the Swap Counterparty fails to make payments due to the Issuer under any Swap Agreement and the Issuer promptly notifies the Trustee in writing of any such failure (which notice shall be conclusive and binding), the above application of moneys shall be amended so that the claims of the Swap Counterparty will, to the extent that there has been such failure, rank after the claims (if any) of the holders of Notes, Coupons and Receipts and before the claims of the Issuer in relation to the balance (if any).

(ii)  *if "Pari Passu Ranking" is specified in the relevant Supplemental Trust Deed:*

(a)  first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

(b)  secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Account Bank and/or the Transfer Agents for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

(c)  thirdly, rateably in meeting the claims (if any) of the Swap Counterparty under the relevant Swap Agreement(s) and the holders of Notes, Coupons and Receipts. If the moneys received by the Trustee are not enough to pay such amounts in full, the Trustee shall apply them *pro rata* on the basis of the amount due to each party entitled to such payment; and

(d)  fourthly, in payment of the balance (if any) to the Issuer.

(iii)  *if "Noteholder Priority" is specified in the relevant Supplemental Trust Deed:*

(a)  first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

(b)  secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Account Bank and/or the Transfer Agents for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

(c)  thirdly, rateably in meeting the claims (if any) of the holders of Notes, Coupons and Receipts. If the moneys received by the Trustee are not enough to pay such amounts in full, the Trustee shall apply them *pro rata* on the basis of the amount due to each party entitled to such payment;

(d)     fourthly, in meeting the claims (if any) of the Swap Counterparty under the relevant Swap Agreement(s); and

(e)     fifthly, in payment of the balance (if any) to the Issuer.

(iv)     if *"Other Priority"* is specified in the relevant Supplemental Trust Deed and Final Terms, the Trustee shall apply all moneys received by it under the provisions of the Principal Trust Deed and the relevant Supplemental Trust Deed in connection with the realisation or enforcement of the security constituted thereby, as set out in the relevant Supplemental Trust Deed and Final Terms.

*The applicable priority and ranking provisions in respect of each Series of Notes will be disclosed in the Final Terms.*

*To the extent that a Swap Counterparty fails to make payments due to the Issuer under any relevant Swap Agreement, the Issuer would be unable to meet its obligations when due in respect of the Notes. In such event the Swap Agreement would be terminated and the Notes would become repayable together with interest accrued in accordance with Condition 10.*

(c)     *Shareholdings*

*Details of the issued shares and the shareholders of the Issuer are as set out in the Issuer Disclosure Annex.*

If specified in the relevant Supplemental Trust Deed, the Issuer has entered into one or more Swap Agreements with the Swap Counterparty under which:

(i)     the Issuer will (subject to the terms thereof) make payments to the Swap Counterparty, on receipt by the Issuer of sums receivable by the Issuer on the Mortgaged Property; and

(ii)     the Swap Counterparty will make payments towards or equal to the obligations of the Issuer in respect of amounts due on the Notes.

*The terms of each Swap Agreement will, if applicable, be set out in the relevant Final Terms.*

*Swap Agreements may provide that the Swap Counterparty may transfer its rights and obligations under a Swap Agreement, as described in the relevant Supplemental Trust Deed, provided that, in relation to Notes that are rated by a rating agency, such transfer shall not adversely affect any existing rating of the Notes of that Series as confirmed in writing by the appropriate rating agency. The Trust Deed provides that, subject as provided therein, the Trustee shall agree to a transfer of the Swap Counterparty's rights and obligations under such Swap Agreement and shall agree to any amendment to such Swap Agreement to allow such transfer in such circumstances.*

(d)     *Disposal Agent*

If so specified in the relevant Supplemental Trust Deed, the Disposal Agent will act as disposal agent in relation to the disposal of the Collateral. Unless otherwise provided in the relevant Supplemental Trust Deed, the Disposal Agent may itself make an offer to purchase the Collateral.

(e)     *Realisation of the Mortgaged Property upon Enforcement*

For each Series, the security over the Mortgaged Property shall become enforceable if (i) any amount due in respect of the Notes is not paid or delivered when due or (ii) a Swap Agreement terminates with sums due to the Swap Counterparty. In addition, if part of the principal amount of the Notes of such Series is mandatorily redeemed under Condition 6(c), the security created over that part of the Mortgaged Property which relates to such Notes and with respect to any part of a Swap Agreement to that Series which terminates as a result of such redemption shall become enforceable. In that event references herein to the Trustee exercising powers of enforcement of such security shall be read accordingly.

A07840320/0.24/06 Aug 2007

In the event of the security over the Mortgaged Property constituted under the relevant Supplemental Trust Deed or by an Other Security Document becoming enforceable either in whole or in part, the Trustee may at its discretion and shall if so required in writing by the holders of at least one fifth in aggregate principal amount of the Notes (or, in respect of a Series of Notes where there are Related Notes, if so required in writing by the holders of at least one fifth in aggregate principal amount of the Controlling Series) then outstanding (as defined in the Trust Deed) or if so directed by an Extraordinary Resolution (as defined in the Trust Deed) of the holders of the Notes (or, in respect of a Series of Notes where there are Related Notes, a direction by Extraordinary Resolution of the holders of the Controlling Series), or, if sums are due to any Swap Counterparty (except in the case where action may be taken against any Swap Counterparty), if so directed in writing by any such Swap Counterparty, but without liability as to the consequence of such action on individual holders of Notes, Receipts or Coupons enforce the security. To do so it may, in its discretion, realise all or a part of the Collateral in a proportion equal to the proportion of the principal amount of the Notes which are subject to such acceleration, terminate any Swap Agreement pro rata in accordance with its terms and exercise any rights under a Credit Enhancement Agreement, provided that the Trustee shall not be required to take any action that would involve the Trustee in personal liability or expense unless indemnified to its satisfaction. On being so directed by the Trustee, the Disposal Agent shall use its reasonable endeavours to solicit offers from third parties to purchase the Collateral in accordance with the terms of the relevant Supplemental Trust Deed.

For the purposes hereof, **"Controlling Series"** shall mean, in respect of any Notes where there are Related Notes, the Series of Notes or other Obligations identified as the Controlling Series in the relevant Supplemental Trust Deed or failing that, the most senior ranking of the Notes, relevant Related Notes and other Obligations secured on the same Mortgaged Property as the Notes. References in these Conditions to the Controlling Series shall not be applicable in the case of any Notes where there are no Related Notes.

(f)    *Application of Proceeds*

The Trust Deed requires that the net proceeds of the security, after deduction of the Trustee's expenses and remuneration and other amounts due to the Trustee and the Paying Agents and/or the Custodian and/or the Transfer Agents and/or the Account Bank and any taxes required to be paid prior to any such application, be applied in meeting claims of any Swap Counterparty and of the holders of the Notes, Receipts and Coupons as specified in the relevant Supplemental Trust Deed.

(g)    *Shortfall after Application of Proceeds*

If the net proceeds of realisation of the Mortgaged Property becoming enforceable under paragraph (f) above are not sufficient for the Issuer to make all payments due in respect of the Notes and the Coupons and for the Issuer to meet its obligations in respect of the termination of any relevant Swap Agreement, the other assets of the Issuer will not be available for payment of any shortfall arising therefrom. Any such shortfall shall be borne by the holders of Notes, Coupons and Receipts and any Swap Counterparty as specified in the relevant Supplemental Trust Deed. The Issuer will not be obliged to make any further payment in excess of the net proceeds and accordingly no debt shall be owed by the Issuer in respect of any such shortfall remaining after realisation of the Mortgaged Property and application of the proceeds in accordance with the Trust Deed. None of the Trustee or any Swap Counterparty or any Noteholder may take any further action to recover such shortfall.

Failure to make any payment in respect of any such shortfall shall in no circumstances constitute an Event of Default under Condition 10.

(h)    *Issuer's Rights as Holder of the Mortgaged Property*

The Issuer may, with the prior written consent of the Trustee or as directed by an Extraordinary Resolution of the Noteholders (or, in respect of a Series of Notes where there are Related Notes, a

A07840320/0.24/06 Aug 2007

direction by Extraordinary Resolution of the holders of the Controlling Series), (i) take such action in relation to the Mortgaged Property as it thinks expedient and (ii) exercise the rights incidental to the ownership of the Mortgaged Property. In particular, the Issuer may exercise (without responsibility for such exercise) any voting rights in respect of such property and all rights to enforce it. The Issuer will not exercise any rights with respect to the Mortgaged Property unless it has the Trustee's consent or is directed by an Extraordinary Resolution of the holders of the Notes (or, in respect of a Series of Notes where there are Related Notes, a direction by Extraordinary Resolution of the holders of the Controlling Series) and, if such direction or consent is given, the Issuer will act only in accordance with such direction or consent.

(i)    *Restrictions on Further Issues and Transactions*

The Issuer shall be at liberty from time to time (without the consent of the Noteholders or the Couponholders, but provided that the Trustee is satisfied that the restrictions contained in this Condition will be complied with) to issue further bonds and notes (which may be consolidated and form a single series with the Notes if issued in accordance with paragraph (j) of this Condition) and to borrow under, buy, sell or enter into other secured Obligations in the form of Loans, Options, Schuldscheine or Swaps. Such further bonds, notes and other secured Obligations (other than those obligations that are not, in the opinion of the Trustee, material in the context thereof and in respect of which another party has made arrangements to discharge the Issuer from claims related thereto) must be secured (save in the case of (i) such further bonds or notes forming a single series with the Notes or other existing bonds, notes or other secured Obligations and (ii) Obligations which, at the time of their issue or effective date, provide that other Obligations may be secured upon the same assets as those on which such Obligations are secured) on assets of the Issuer other than the Mortgaged Property or the assets on which such other Obligations of the Issuer are secured or the Issuer's share capital and on terms in substantially the form contained in these Conditions and that provide for the extinction of all claims in respect of such bonds, notes and related Obligations after application of the proceeds of enforcement of the security over the assets on which such further bonds, notes and related Obligations are secured (or arrangements have been entered into that, to the satisfaction of the Trustee, have a like result). In addition, where the Issuer has issued other bonds and/or notes which have been rated by a particular rating agency ("**Old Rated Securities**") and proposes to issue and further bonds and/or notes which are not to be rated by that rating agency ("**New Unrated Securities**") then, provided that such Old Rated Securities and their related ratings remain outstanding, then the ratings of the Old Rated Securities must not be adversely affected by the issue of the New Unrated Securities, as confirmed in writing by the appropriate rating agency. Any further securities forming a single series with the outstanding securities of any series (including the Notes) constituted and secured by the Trust Deed or any deed supplemental and/or any Other Security Document to it shall, and any other securities may (with the prior written consent of the Trustee), be constituted and secured by the Trust Deed and/or any Other Security Document. The Trust Deed contains provisions for convening a single meeting of the Noteholders and the holders of securities of other series where the Trustee so decides.

(j)    *Restrictions on Fungible Issues*

The Issuer, if permitted under the Conditions, may from time to time (without the consent of the Noteholders or the Couponholders, but provided that the Trustee is satisfied that the restrictions contained in this Condition will be complied with) issue further bonds and notes that have, when issued, the same terms and conditions as the Notes in all respects (or in all respects except for the first payment of interest thereon and any amendments made pursuant to (iii) below) and that are consolidated and form a single series with the Notes; provided that (unless otherwise approved by an Extraordinary Resolution (as defined in the Trust Deed) of the Noteholders), (i) the Issuer provides additional security for such new bonds or notes that comprises assets that are fungible with, and have the same proportionate composition as, the Mortgaged Property in respect of the relevant existing Notes and that has an aggregate principal amount at least equal to the principal amount of such existing

security multiplied by a fraction, the numerator of which is the aggregate principal amount of such new bonds or notes and the denominator of which is the aggregate principal amount of the existing Notes; (ii) the Issuer enters into an additional or supplemental swap agreement or credit enhancement agreement varying the terms of the Swap Agreement or, as applicable, the Credit Enhancement Agreement to take account of the new bonds or notes on terms no less favourable than those of the Swap Agreement or, as applicable, the Credit Enhancement Agreement; and, in relation to Notes which are rated by a rating agency, (iii) in the case of an issue of portfolio credit linked notes, the Issuer amends the terms and conditions of the Notes to preserve the economic effect of a holding of the Notes (including, without limitation, by amending the Reference Entity Notional Amount, the Subordination Amount and, where applicable, by amending any Factor (howsoever such terms are defined in the relevant terms and conditions)) in each case solely so as to preserve the economic effect of a holding of the Notes, such amendments to be determined by the Calculation Agent and notified to the Issuer and (iv) such further bonds and notes shall not adversely affect any existing rating of the Notes as confirmed in writing by the appropriate rating agency. Upon issue of such new bonds or notes, the Notes and such new bonds or notes shall form a single series and be secured on the Mortgaged Property relating to the Notes and such additional security. Such further bonds or notes shall be constituted and secured by a further relevant Supplemental Trust Deed. In the case of a Series of Notes where there are Related Notes, the relevant Supplemental Trust Deed shall specify such other conditions as it may be necessary to satisfy to issue such further bonds or notes.

(k)     *Restrictions on Indebtedness*

Save as provided above, so long as any of the Notes remains outstanding, the Issuer, without the prior written consent of the Trustee, shall not incur any other indebtedness for borrowed moneys or engage in any other business (other than acquiring and holding the Mortgaged Property in respect of each Series, creating further Obligations, as provided for in this Condition 4, entering into related transactions, subject to Condition 4*(i)* and performing any act incidental to or necessary in connection with the foregoing), shall not have any subsidiaries (except in connection with the substitution of the Issuer as principal obligor under the Notes) and shall not dispose of the Mortgaged Property or any part thereof or interest therein (other than in connection with a substitution of the Swap Counterparty).

(l)     *Covenants*

The Issuer has covenanted in the Principal Trust Deed that it will not, without the prior written consent of the Trustee, *inter alia*:

(i)     engage in any business whatsoever, other than acquiring and holding Mortgaged Property, issuing Notes or issuing further bonds and notes (which may be consolidated and form a single series with the Notes) or creating other Obligations or entering into similar limited-recourse transactions, entering into related agreements and transactions and performing any act incidental to or necessary in connection with any of the foregoing;

(ii)     dispose of the Mortgaged Property or any interest therein, or create any mortgage, charge or other security interest or right of recourse in respect thereof in favour of any person (other than (x) the security referred to above or any similar limited-recourse transaction (whether such limited-recourse transaction is by means of a debt issue or by loan, option or swap) entered into by the Issuer in the future with the consent of the Trustee and the Swap Counterparty as provided below and (y) in connection with a transfer under the Swap Agreement);

(iii)     cause or permit the Swap Agreements or Credit Enhancement Agreements or the priority of the security interests created by the Trust Deed to be amended, terminated or discharged (other than in connection with a transfer under the Swap Agreement);

A07840320/0.24/06 Aug 2007

(iv)    release any party to the Swap Agreement (other than in connection with a transfer under the Swap Agreement), any Credit Enhancement Agreement, the Principal Trust Deed or any Supplemental Trust Deed from any existing obligations thereunder;

(v)    have any subsidiaries (other than in connection with any substitution of the obligor under the Notes and the Trust Deed);

(vi)    consent to any variation of, or exercise any powers or consent or waiver pursuant to, the terms of the Swap Agreements, any Credit Enhancement Agreement, the Conditions, the Principal Trust Deed, any Supplemental Trust Deed or other agreement relating to the issue of the Notes, any relevant documentation entered into in connection with the creation of other Obligations or any related transactions;

(vii)    (to the extent the same is within the control of the Issuer) consolidate or merge with any other person or convey or transfer its properties or assets substantially as an entirety to any person;

(viii)    have any employees;

(ix)    (to the extent the same is within the control of the Issuer) pay any dividends or make any distribution to its shareholders;

(x)    open or have any interest in any account whatsoever with any bank or financial institution unless such account relates to the Notes or any Mortgaged Property (as will be defined in the Trust Deed), any other Obligation or any party thereto, save where such account or the Issuer's interest therein is simultaneously charged in favour of the Trustee so as to form part of the Mortgaged Property or save where such account is opened in connection with the administration and management of the Issuer and only moneys necessary to the administration and management of the Issuer are credited to such account; or

(xi)    (to the extent the same is within the control of the Issuer) issue or allot shares to persons other than such shares as were in issue on the date of the incorporation of the Issuer.

## 5    Interest and Other Calculations

### (a)    Interest Rate and Accrual

Each Note bears interest on its outstanding principal amount from the Interest Commencement Date (as defined in the relevant Final Terms) at the rate per annum (expressed as a percentage) equal to the Interest Rate, such interest being payable in arrear on each Interest Payment Date.

Interest shall cease to accrue on each Note on the due date for redemption unless, upon due presentation, payment of principal is improperly withheld or refused, in which event interest shall continue to accrue (as well after as before judgment) at the Interest Rate in the manner provided in this Condition 5 to the Relevant Date. As used in these Conditions, "Relevant Date" in respect of any Note, Receipt or Coupon means the date on which payment in respect of it first becomes due or (if any amount of the money payable is improperly withheld or refused) the date on which payment in full of the amount outstanding is made or (if earlier) the date seven days after that on which notice is duly given to the Noteholders that, upon further presentation of the Note (or relative Certificate), Receipt, or Coupon being made in accordance with the Conditions, such payment will be made, provided that payment is in fact made upon such presentation.

### (b)    Business Day Convention

If any date referred to in these Conditions that is specified to be subject to adjustment in accordance with a Business Day Convention would otherwise fall on a day that is not a Business Day, then, if the

Business Day Convention specified is (i) the Floating Rate Business Day Convention, such date shall be postponed to the next day that is a Business Day unless it would thereby fall into the next calendar month, in which event (A) such date shall be brought forward to the immediately preceding Business Day and (B) each subsequent such date shall be the last Business Day of the month in which such date would have fallen had it not been subject to adjustment, (ii) the Following Business Day Convention, such date shall be postponed to the next day that is a Business Day, (iii) the Modified Following Business Day Convention, such date shall be postponed to the next day that is a Business Day unless it would thereby fall into the next calendar month, in which event such date shall be brought forward to the immediately preceding Business Day or (iv) the Preceding Business Day Convention, such date shall be brought forward to the immediately preceding Business Day.

(c)   *Interest Rate on Floating Rate Notes*

If the Interest Rate is specified as being Floating Rate, the Interest Rate for each Interest Accrual Period shall be determined in the manner specified hereon and the provisions below relating to either ISDA Determination or Screen Rate Determination shall apply, depending upon which is specified hereon:

(i)      ISDA Determination for Floating Rate Notes

Where ISDA Determination is specified hereon as the manner in which the Interest Rate is to be determined, the Interest Rate for each Interest Accrual Period shall be determined by the Calculation Agent as a rate equal to the relevant ISDA Rate. For the purposes of this sub-paragraph (i), "ISDA Rate" for an Interest Accrual Period means a rate equal to the Floating Rate that would be determined by the Calculation Agent under a Swap Transaction under the terms of an agreement incorporating the ISDA Definitions and under which:

(a)  the Floating Rate Option is as specified hereon;

(b)  the Designated Maturity is a period specified hereon; and

(c)  the relevant Reset Date is the first day of that Interest Accrual Period unless otherwise specified hereon.

For the purposes of this sub-paragraph (i), "Floating Rate", "Calculation Agent", "Floating Rate Option", "Designated Maturity", "Reset Date" and "Swap Transaction" have the meanings given to those terms in the ISDA Definitions.

(ii)     Screen Rate Determination for Floating Rate Notes

(A)  Where Screen Rate Determination is specified hereon as the manner in which the Interest Rate is to be determined, the Interest Rate for each Interest Accrual Period will, subject as provided below and to Condition 5(e) be either:

(1)      the offered quotation; or

(2)      the arithmetic mean of the offered quotations,

(expressed as a percentage rate per annum) for the Reference Rate which appears or appear, as the case may be, on the Relevant Screen Page as at either 11.00 a.m. (London time in the case of LIBOR or Brussels time in the case of EURIBOR) on the Interest Determination Date in question as determined by the Calculation Agent. If five or more of such offered quotations are available on the Relevant Screen Page, the highest (or, if there is more than one such highest quotation, one only of such quotations) and the lowest (or, if there is more than one such lowest quotation, one only of such quotations) shall be disregarded by the Calculation Agent for the purpose of determining the arithmetic mean of such offered quotations.

A07840320/0.24/06 Aug 2007

If the Reference Rate from time to time in respect of Floating Rate Notes is specified hereon as being other than LIBOR or EURIBOR, the Interest Rate in respect of such Notes will be determined as provided hereon.

(B)    if the Relevant Screen Page is not available or if sub-paragraph (A)(1) above applies and no such offered quotation appears on the Relevant Screen Page or if sub-paragraph (A)(2) above applies and fewer than three such offered quotations appear on the Relevant Screen Page in each case as at the time specified above, subject as provided below, the Calculation Agent shall request, if the Reference Rate is LIBOR, the principal London office of each of the Reference Banks or, if the Reference Rate is EURIBOR, the principal Euro-zone office of each of the Reference Banks, to provide the Calculation Agent with its offered quotation (expressed as a percentage rate per annum) for the Reference Rate if the Reference Rate is LIBOR, at approximately 11.00 a.m. (London time), or if the Reference Rate is EURIBOR, at approximately 11.00 a.m. (Brussels time) on the Interest Determination Date in question. If two or more of the Reference Banks provide the Calculation Agent with such offered quotations, the Interest Rate for such Interest Period shall be the arithmetic mean of such offered quotations as determined by the Calculation Agent; and

(C)    if paragraph (B) above applies and the Calculation Agent determines that fewer than two Reference Banks are providing offered quotations, subject as provided below, the Interest Rate shall be the arithmetic mean of the rates per annum (expressed as a percentage) as communicated to (and at the request of) the Calculation Agent by the Reference Banks or any two or more of them, at which such banks were offered, if the Reference Rate is LIBOR, at approximately 11.00 a.m. (London time) or, if the Reference Rate is EURIBOR, at approximately 11.00 a.m. (Brussels time) on the relevant Interest Determination Date, deposits in the Relevant Currency for a period equal to that which would have been used for the Reference Rate by leading banks in, if the Reference Rate is LIBOR, the London inter-bank market or, if the Reference Rate is EURIBOR, the Euro-zone inter-bank market, as the case may be, or, if fewer than two of the Reference Banks provide the Calculation Agent with such offered rates, the offered rate for deposits in the Relevant Currency for a period equal to that which would have been used for the Reference Rate, or the arithmetic mean of the offered rates for deposits in the Relevant Currency for a period equal to that which would have been used for the Reference Rate, at which, if the Reference Rate is LIBOR, at approximately 11.00 a.m. (London time) or, if the Reference Rate is EURIBOR, at approximately 11.00 a.m. (Brussels time), on the relevant Interest Determination Date, any one or more banks (which bank or banks is or are in the opinion of the Trustee and the Issuer suitable for such purpose) informs the Calculation Agent it is quoting to leading banks in, if the Reference Rate is LIBOR, the London inter-bank market or, if the Reference Rate is EURIBOR, the Euro-zone inter-bank market, as the case may be, provided that, if the Interest Rate cannot be determined in accordance with the foregoing provisions of this paragraph, the Interest Rate shall be determined as at the last preceding Interest Determination Date (though substituting, where a different Margin or Maximum or Minimum Interest Rate is to be applied to the relevant Interest Accrual Period from that which applied to the last preceding Interest Accrual Period, the Margin or Maximum or Minimum Interest Rate relating to the relevant Interest Accrual Period), in place of the Margin or Maximum or Minimum Interest Rate relating to that last preceding Interest Accrual Period.

(d)  *Interest Rate on Zero Coupon Notes*

Where a Note the Interest Rate of which is specified to be Zero Coupon is repayable prior to the Maturity Date and is not paid when due, the amount due and payable prior to the Maturity Date shall be the Redemption Amount (as defined in the relevant Final Terms) of such Note. As from the Maturity Date, the Interest Rate for any overdue principal of such a Note shall be a rate per annum (expressed as a percentage) equal to the Amortisation Yield (as set out in Condition 6(b)).

(e)  *Margin, Maximum/Minimum Interest Rates, Instalment Amounts and Redemption Amounts and Rounding*

(i)    If any Margin is specified hereon (either (x) generally, or (y) in relation to one or more Interest Accrual Periods), an adjustment shall be made to all Interest Rates, in the case of (x), or the Interest Rates for the specified Interest Accrual Periods, in the case of (y), calculated in accordance with (c) above by adding (if a positive number) or subtracting the absolute value (if a negative number) of such Margin, subject always to the next paragraph.

(ii)   If any Maximum or Minimum Interest Rate, Instalment Amount or Redemption Amount is specified hereon, then any Interest Rate, Instalment Amount or Redemption Amount shall be subject to such maximum or minimum, as the case may be.

(iii)  For the purposes of any calculations required pursuant to these Conditions (unless otherwise specified), (x) all percentages resulting from such calculations shall be rounded, if necessary, to the nearest one hundred-thousandth of a percentage point (with halves being rounded up), (y) all figures shall be rounded to seven significant figures (with halves being rounded up) and (z) all currency amounts that fall due and payable shall be rounded to the nearest unit of such currency (with halves being rounded up), save in the case of yen, which shall be rounded down to the nearest yen, and in the case of euro, which shall be rounded down to the nearest €0.01. For these purposes "unit" means the lowest amount of such currency that is available as legal tender in the country(ies) of such currency.

(f)  *Calculations*

The amount of interest payable in respect of any Note for any period shall be calculated by multiplying the product of the Interest Rate and the outstanding principal amount of such Note by the Day Count Fraction, unless an Interest Amount (or a formula for its calculation) is specified in respect of such period, in which case the amount of interest payable in respect of such Note for such period shall equal such Interest Amount (or be calculated in accordance with such formula). Where any Interest Period comprises two or more Interest Accrual Periods, the amount of interest payable in respect of such Interest Period shall be the sum of the amounts of interest payable in respect of each of those Interest Accrual Periods.

(g)  *Determination and Publication of Interest Rates, Interest Amounts, Redemption Amounts and Instalment Amounts*

The Calculation Agent shall, as soon as practicable on each Interest Determination Date or such other time on such date as the Calculation Agent may be required to calculate any Redemption Amount or Instalment Amount, obtain any quote or make any determination or calculation, determine the Interest Rate and calculate the Interest Amounts in respect of each denomination of the Notes for the relevant Interest Accrual Period, calculate the Redemption Amount or Instalment Amount, obtain such quote or make such determination or calculation, as the case may be, and cause the Interest Rate and the Interest Amounts for each Interest Period and the relevant Interest Payment Date and, if required to be calculated, the Redemption Amount or any Instalment Amount to be notified to the Trustee, the Issuer, each of the Paying Agents, the Noteholders, any other Calculation Agent appointed in respect of the Notes that is to make a further calculation upon receipt of such information and, if the Notes are listed on a stock exchange and the rules of such exchange so require, such exchange as soon as possible after

their determination but in no event later than (i) the commencement of the relevant Interest Period, if determined prior to such time, in the case of notification to such exchange of an Interest Rate and Interest Amount, or (ii) in all other cases, the fourth Business Day after such determination. Where any Interest Payment Date or Interest Period Date is subject to adjustment pursuant to Condition 5(b), the Interest Amounts and the Interest Payment Date so published may subsequently be amended (or appropriate alternative arrangements made with the consent of the Trustee by way of adjustment) without notice in the event of an extension or shortening of the Interest Period. If the Notes become due and payable under Condition 10, the accrued interest and the Interest Rate payable in respect of the Notes shall nevertheless continue to be calculated as previously in accordance with this Condition but no publication of the Interest Rate or the Interest Amount so calculated need be made unless the Trustee otherwise requires. The determination of each Interest Rate, Interest Amount, Redemption Amount and Instalment Amount, the obtaining of each quote and the making of each determination or calculation by the Calculation Agent(s) shall (in the absence of manifest error) be final and binding upon all parties. No Noteholders shall (in the absence aforesaid) be entitled to proceed against the Reference Banks, the Calculation Agent, the Trustee or any of them in connection with the exercise or non-exercise by them of their powers, duties and discretions under this Condition 5.

(h)    *Determination or Calculation by Trustee*

If the Calculation Agent does not at any time for any reason determine or calculate the Interest Rate for an Interest Period or any Interest Amount, Instalment Amount or Redemption Amount, the Trustee shall do so (or shall appoint an agent on its behalf to do so) and such determination or calculation shall be deemed to have been made by the Calculation Agent. In doing so, the Trustee shall apply the foregoing provisions of this Condition, with any necessary consequential amendments, to the extent that, in its opinion, it can do so, and, in all other respects it shall do so in such manner as it shall deem fair and reasonable in all the circumstances.

(i)    *Definitions*

In these Conditions, unless the context otherwise requires, the following defined terms shall have the meanings set out below:

"Business Day" means:

(i)     in the case of a specified currency other than euro, a day (other than a Saturday or Sunday) on which commercial banks and foreign exchange markets settle payments in the principal financial centre for that currency; and/or

(ii)    in the case of euro, a day on which the TARGET system is open (a "**TARGET Business Day**"); and/or

(iii)   in the case of a specified currency and/or one or more specified financial centres, a day (other than a Saturday or a Sunday) on which commercial banks and foreign exchange markets settle payments in the specified currency or, if none is specified, generally in each of the financial centres so specified (which, in the case of Australian dollars, shall be Melbourne and Sydney).

"Day Count Fraction" means, in respect of the calculation of an amount of interest on any Note for any period of time (whether or not constituting an Interest Period, the "**Calculation Period**"):

(i)     if "Actual/Actual" or "Actual/Actual- ISDA" is specified hereon, the actual number of days in the Calculation Period divided by 365 (or, if any portion of that Calculation Period falls in a leap year, the sum of (A) the actual number of days in that portion of the Calculation Period falling in a leap year divided by 366 and (B) the actual number of days in that portion of the Calculation Period falling in a non-leap year divided by 365; provided that no

adjustment shall be made for any portion of a Calculation Period falling in a leap year in the case of Notes denominated in Japanese yen or any other currency specified hereon);

(ii)    if "Actual/365 (Fixed)" is specified hereon, the actual number of days in the Calculation Period divided by 365;

(iii)    if "Actual/360" is specified hereon, the actual number of days in the Calculation Period divided by 360;

(iv)    if "30/360", "360/360" or "Bond Basis" is specified hereon, the number of days in the Calculation Period divided by 360 calculated on a formula basis as follows:

$$\text{Day Count Fraction} = \frac{[360 \times (Y_2 - Y_1)] + [30 \times (M_2 - M_1)] + (D_2 - D_1)}{360}$$

where:

"$Y_1$" is the year, expressed as a number, in which the first day of the Calculation Period falls;

"$Y_2$" is the year, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$M_1$" is the calendar month, expressed as a number, in which the first day of the Calculation Period falls;

"$M_2$" is the calendar month, expressed as number, in which the day immediately following the last day included in the Calculation Period falls;

"$D_1$" is the first calendar day, expressed as a number, of the Calculation Period, unless such number would be 31, in which case $D_1$ will be 30; and

"$D_2$" is the calendar day, expressed as a number, immediately following the last day included in the Calculation Period, unless such number would be 31 and $D_1$ is greater than 29, in which case $D_2$ will be 30

(v)    if "30E/360" or "Eurobond Basis" is specified hereon, the number of days in the Calculation Period divided by 360 calculated on a formula basis as follows:

$$\text{Day Count Fraction} = \frac{[360 \times (Y_2 - Y_1)] + [30 \times (M_2 - M_1)] + (D_2 - D_1)}{360}$$

where:

"$Y_1$" is the year, expressed as a number, in which the first day of the Calculation Period falls;

"$Y_2$" is the year, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$M_1$" is the calendar month, expressed as a number, in which the first day of the Calculation Period falls;

"$M_2$" is the calendar month, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$D_1$" is the first calendar day, expressed as a number, of the Calculation Period, unless such number would be 31, in which case D1 will be 30; and

"$D_2$" is the calendar day, expressed as a number, immediately following the last day included in the Calculation Period, unless such number would be 31, in which case $D_2$ will be 30

(vi)   if "30E/360 (ISDA)" is specified hereon, the number of days in the Calculation Period divided by 360, calculated on a formula basis as follows:

$$\text{Day Count Fraction} = \frac{[360 \times (Y_2 - Y_1)] + [30 \times (M_2 - M_1)] + (D_2 - D_1)}{360}$$

where:

"$Y_1$" is the year, expressed as a number, in which the first day of the Calculation Period falls;

"$Y_2$" is the year, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$M_1$" is the calendar month, expressed as a number, in which the first day of the Calculation Period falls;

"$M_2$" is the calendar month, expressed as a number, in which the day immediately following the last day included in the Calculation Period falls;

"$D_1$" is the first calendar day, expressed as a number, of the Calculation Period, unless (i) that day is the last day of February or (ii) such number would be 31, in which case $D_1$ will be 30; and

(vii)   "$D_2$" is the calendar day, expressed as a number, immediately following the last day included in the Calculation Period, unless (i) that day is the last day of February but not the Maturity Date or (ii) such number would be 31, in which case $D_2$ will be

(viii)   if "Actual/Actual- ICMA" is specified hereon:

(a)   if the Calculation Period is equal to or shorter than the Determination Period during which it falls, the number of days in the Calculation Period divided by the product of (x) the number of days in such Determination Period and (y) the number of Determination Periods normally ending in any year; and

(b)   if the Calculation Period is longer than one Determination Period, the sum of:

(x)   the number of days in such Calculation Period falling in the Determination Period in which it begins divided by the product of (1) the number of days in such Determination Period and (2) the number of Determination Periods normally ending in any year; and

(y)   the number of days in such Calculation Period falling in the next Determination Period divided by the product of (1) the number of days in such Determination Period and (2) the number of Determination Periods normally ending in any year

where:

"Determination Date" means the date specified as such hereon or, if none is so specified, the Interest Payment Date.

"Determination Period" means the period from and including a Determination Date in any year to but excluding the next Determination Date.

A07840320/0.24/06 Aug 2007

"Euro-zone" means the region comprised of Member States of the European Union that adopt the single currency in accordance with the Treaty establishing the European Community, as amended by the Treaty on European Union.

"Interest" shall be deemed to include all Interest Amounts and all other amounts payable pursuant to Condition 5 or any amendment or supplement to it.

"Interest Accrual Period" means the period beginning on (and including) the Interest Commencement Date and ending on (but excluding) the first Interest Period Date and each successive period beginning on (and including) an Interest Period Date and ending on (but excluding) the next succeeding Interest Period Date.

"Interest Amount" means the amount of interest payable in respect of each denomination of the Notes.

"Interest Commencement Date" means the Issue Date or such other date as may be specified herein.

"Interest Determination Date" means, with respect to an Interest Rate and Interest Accrual Period, the date specified as such hereon or, if none is so specified, (i) the first day of such Interest Accrual Period if the Relevant Currency is Sterling or (ii) the day falling two Business Days in London for the Relevant Currency prior to the first day of such Interest Accrual Period if the Relevant Currency is neither Sterling nor euro or (iii) the day falling two TARGET Business Days prior to the first day of such Interest Accrual Period if the Relevant Currency is euro.

"Interest Period" means the period beginning on (and including) the Interest Commencement Date and ending on (but excluding) the first Interest Payment Date and each successive period beginning on (and including) an Interest Payment Date and ending on (but excluding) the next succeeding Interest Payment Date.

"Interest Period Date" means each Interest Payment Date unless otherwise specified hereon.

"Interest Rate" means the rate of interest payable from time to time in respect of this Note and that is either specified or calculated in accordance with the provisions hereon.

"ISDA Definitions" means the 2006 ISDA Definitions (as amended or supplemented from time to time) published by the International Swaps and Derivatives Association, Inc., unless otherwise specified hereon.

"Principal" shall be deemed to include any premium payable in respect of the Notes, all Instalment Amounts, Redemption Amounts, Amortised Face Amounts and all other amounts in the nature of principal payable pursuant to Condition 6 or any amendment or supplement to it.

"Reference Banks" means, in the case of a determination of LIBOR, the principal London office of four major banks in the London inter-bank market and, in the case of a determination of EURIBOR, the principal Euro-zone office of four major banks in the Euro-zone inter-bank market, in each case selected by the Calculation Agent or as specified hereon.

"Reference Rate" means the rate specified as such hereon.

"Relevant Currency" means the currency specified hereon or, if none is specified, the currency in which the Notes are denominated.

"Relevant Screen Page" means such page, section, caption, column or other part of a particular information service as may be specified hereon.

"TARGET System" means the Trans-European Automated real-time Gross Settlement Express Transfer (TARGET) System or any successor thereto.

(j)    *Calculation Agent*

The Issuer shall procure that there shall at all times be one or more Calculation Agents if provision is made for them hereon and for so long as any Note is outstanding (as defined in the Trust Deed). Where more than one Calculation Agent is appointed in respect of the Notes, references in these Conditions to the Calculation Agent shall be construed as each Calculation Agent performing its respective duties under the Conditions. If the Calculation Agent is unable or unwilling to act as such or if the Calculation Agent fails duly to establish the Interest Rate for an Interest Period or Interest Accrual Period or to calculate any Interest Amount, Instalment Amount or the Redemption Amount or to comply with any other requirement, the Issuer shall (with the prior written approval of the Trustee) appoint a leading bank or investment banking firm engaged in the inter-bank market (or, if appropriate, money, swap or over-the-counter index options market) that is most closely connected with the calculation or determination to be made by the Calculation Agent (acting through its principal London office or any other office actively involved in such market) to act as such in its place. The Calculation Agent may not resign its duties without a successor having been appointed as aforesaid.

## 6    Redemption, Purchase and Options

(a)    *Redemption by Instalments and Final Redemption*

(i)    Unless previously redeemed or purchased and cancelled as provided in this Condition 6, each Note that provides for Instalment Dates and Instalment Amounts shall be partially redeemed on each Instalment Date at the related Instalment Amount specified hereon. The outstanding principal amount of each such Note shall be reduced by the Instalment Amount (or, if such Instalment Amount is calculated by reference to a proportion of the principal amount of such Note, such proportion) for all purposes with effect from the related Instalment Date, unless payment of the Instalment Amount is improperly withheld or refused, in which case, such amount shall remain outstanding until the Relevant Date relating to such Instalment Amount.

(ii)    Unless previously redeemed, purchased and cancelled as provided below, each Note shall be finally redeemed on the Maturity Date specified hereon at its Redemption Amount (which, unless otherwise provided herein, is its principal amount) or, in the case of a Note falling within paragraph (i) above, its final Instalment Amount. Notes with no final maturity date will only be redeemable or repayable in accordance with the following provisions of this Condition 6 or Condition 10.

(b)    *Early Redemption of Zero Coupon Notes*

(i)    The Redemption Amount payable in respect of any Note that does not bear interest prior to the Maturity Date, the Redemption Amount of which is not linked to an index and/or a formula, upon redemption of such Note pursuant to Condition 6(d) or upon it becoming due and payable as provided in Condition 10 shall be the Amortised Face Amount (calculated as provided below) of such Note.

(ii)    Subject to the provisions of sub-paragraph (iii) below, the Amortised Face Amount of any such Note shall be the scheduled Redemption Amount of such Note on the Maturity Date discounted at a rate per annum (expressed as a percentage) equal to the Amortisation Yield (which, if none is shown hereon, shall be such rate as would produce an Amortised Face Amount equal to the issue price of the Notes if they were discounted back to their issue price on the Issue Date) compounded annually. Where such calculation is to be made for a period of less than one year, it shall be made on the basis of the Day Count Fraction shown hereon.

A07840320/0.24/06 Aug 2007

- 45 -

(iii)     If the Redemption Amount payable in respect of any such Note upon its redemption pursuant to Condition 6(d) or upon it becoming due and payable as provided in Condition 10 is not paid when due, the Redemption Amount due and payable in respect of such Note shall be the Amortised Face Amount of such Note as defined in sub-paragraph (ii) above, except that such sub-paragraph shall have effect as though the reference therein to the date on which the Note becomes due and payable were replaced by a reference to the Relevant Date. The calculation of the Amortised Face Amount in accordance with this sub-paragraph shall continue to be made (as well after as before judgment) until the Relevant Date, unless the Relevant Date falls on or after the Maturity Date, in which case the amount due and payable shall be the scheduled Redemption Amount of such Note on the Maturity Date together with any interest that may accrue in accordance with Condition 5(d).

(c)    *Mandatory Redemption*

Subject to the terms of the relevant Supplemental Trust Deed, if any of the Collateral becomes repayable prior to its stated date of maturity for whatever reason or (unless the Trustee otherwise agrees) there is a payment default (after the expiry of any grace period specified in the terms and conditions of the Collateral in existence as at the later of the Issue Date and the date on which such Collateral was issued) in respect of any of the Collateral, a proportion of the principal amount of the Notes outstanding equal to the proportion of the Collateral comprised by the Collateral repaid or in respect of which there is a default will become immediately repayable. The Issuer shall forthwith give not more than 45 nor less than 30 Business Days' prior notice (or such other notice period as indicated in the relevant Supplemental Trust Deed) to the Trustee and the Noteholders (which notice shall be irrevocable) and upon expiry of such notice the Issuer will redeem either, as the case may be, all of the Notes at their Early Redemption Amount together with accrued interest or, in the case of a redemption in part, either (x) some of the Notes at their Early Redemption Amount together with accrued interest (if redemption is to be effected in accordance with Partial Redemption - Method A (as specified in the relevant Supplemental Trust Deed)) or (y) all of the Notes on a *pro rata* basis in an aggregate principal amount equal to that of the Collateral repaid or in respect of which there is a default (if redemption is to be effected in accordance with Partial Redemption - Method B (as specified in the relevant Supplemental Trust Deed)), failing which all of the Notes shall become repayable and the security constituted by the relevant Supplemental Trust Deed and/or any Other Security Document shall become enforceable and the Trustee will take such action as is provided in Condition 4. In this Condition "Business Day" means a day on which commercial banks and foreign exchange markets are open in the cities specified in the relevant Supplemental Trust Deed.

(d)    *Redemption for Taxation and Other Reasons*

(i)     If the Issuer, on the occasion of the next payment due in respect of the Notes or Coupons, would be required by law to withhold or account for tax or would suffer tax in respect of its income so that it would be unable to make payment of the full amount due, the Issuer shall so inform the Trustee, shall use its best endeavours to arrange the substitution of a company incorporated in another jurisdiction approved by the Trustee as the principal debtor (provided that, in relation to Notes rated by a rating agency, the Issuer shall notify the appropriate rating agency and that such substitution shall not adversely affect any existing rating of the Notes as affirmed in writing by the appropriate rating agency) or to change (to the satisfaction of the Trustee (provided that in relation to Notes rated by a rating agency, the Issuer shall notify the appropriate rating agency and that such substitution shall not adversely affect any existing rating of the Notes as affirmed in writing by the appropriate rating agency)) its residence for taxation purposes to another jurisdiction approved beforehand in writing by the Trustee and if it is unable to arrange such substitution or change before the next payment is due in respect of the Notes it shall forthwith give notice thereof to the Trustee, the Noteholders, the appropriate rating agency (if any) and the Swap

Counterparty and upon the giving of such notice all but not some only of the Notes shall become due for redemption on the date specified in such notice at their Early Redemption Amount together with interest accrued to the date fixed for redemption;

(ii)    If a Swap Agreement is terminated in whole for any reason then the Issuer shall forthwith give not more than 45 nor less than 15 days' notice (or such other notice period as indicated in the relevant Supplemental Trust Deed) to the Trustee, the Noteholders and the Swap Counterparty (which notice shall be irrevocable), and on the expiry of such notice shall redeem all but not some only of the Notes at their Early Redemption Amount together with any interest accrued to the date fixed for redemption. Such notice shall be given promptly upon the termination of the relevant Swap Agreement and such redemption made, unless the Trustee shall certify to the Issuer that it considers in its absolute discretion that it is in the best interests of the holders of the Notes that such notice and redemption be delayed or not given or made, as the case may be, or an Extraordinary Resolution of the holders of the Notes shall otherwise direct; or

(iii)    If the Issuer (i) is or will be unable to receive any payment due in respect of the Collateral forming part of the Mortgaged Property in full on the due date therefor without deduction for or on account of any withholding tax or other tax, duties or charges of whatsoever nature imposed by any authority of the jurisdiction of the Collateral Issuer or (ii) is required to comply with any reporting requirement of any such authority (unless such reporting requirement does not involve any material expense or is not unduly onerous), then the Issuer shall so inform the Trustee, and shall use its best endeavours to arrange the substitution of a company incorporated in another jurisdiction approved beforehand in writing by the Trustee and the Swap Counterparty (provided that in relation to Notes rated by a rating agency, the Issuer shall notify the appropriate rating agency and that such substitution shall not adversely affect any existing rating of the Notes as affirmed in writing by the appropriate rating agency) as the principal debtor in respect of the Notes and the Swap Agreement or to change (to the satisfaction of the Trustee and the Swap Counterparty (provided that in relation to Notes rated by a rating agency, the Issuer shall notify the appropriate rating agency and that such change shall not adversely affect any existing rating of the Notes as affirmed in writing by the appropriate rating agency)) its residence for taxation purposes to another jurisdiction approved beforehand in writing by the Trustee and the Swap Counterparty and if it is unable to arrange such substitution or change before the next payment is due in respect of the Notes it shall forthwith give notice thereof to the Trustee, the Noteholders, the appropriate rating agency (if any) and the Swap Counterparty and upon the giving of such notice all but not some only of the Notes shall become due for redemption on the date specified in such notice at the Early Redemption Amount together with interest accrued to the date fixed for redemption.

Notwithstanding the foregoing, if any of the taxes referred to in paragraph (d)(i) above arises by reason of any Noteholder's connection with the jurisdiction of the Issuer otherwise than by reason only of the holding of any Note or receiving or being entitled to any principal or interest in respect thereof, then to the extent it is able to do so, the Issuer shall deduct such taxes from the amounts payable to such Noteholder, all other Noteholders shall receive the due amounts payable to them and the Notes shall not be redeemed as provided in the previous provisions. Any such deduction shall not constitute an Event of Default under Condition 10.

Notwithstanding the foregoing, if the requirement to withhold or account for tax set out in Condition 6(d)(i) arises as a result of:

(i)    a withholding or deduction imposed on a payment by or on behalf of the relevant Issuer to an individual required to be made pursuant to European Council Directive 2003/48/EC or

any other Directive implementing the conclusions of the ECOFIN Council meeting of 26-27 November 2000 on the taxation of savings income or any law implementing or complying with, or introduced in order to conform to, such Directive or any other law introduced as a consequence of the adoption or implementation of such Directive; or

(ii)   the presentation for payment of any Bearer Note, Receipt or Coupon by or on behalf of a holder who would have been able to avoid such withholding or deduction by presenting the relevant Bearer Note, Receipt or Coupon to another Paying Agent in a Member State of the European Union

then Condition 6(d)(i) shall not apply. The relevant Issuer shall deduct such taxes from the amounts payable to such Noteholder, all other Noteholders shall receive the due amounts payable to them and the Notes shall not be redeemed. Any such deduction shall not constitute an Event of Default under Condition 10.

(e)   *Redemption at the Option of the Issuer*

If so specified in the relevant Supplemental Trust Deed, the Issuer may, on giving not more than 45 nor less than 30 days' notice (or such other notice period as indicated in the relevant Supplemental Trust Deed) to the Noteholders and the Trustee (which notice shall be irrevocable) redeem all or, if so provided in the relevant Supplemental Trust Deed, some of the Notes at the Early Redemption Amount on the Issuer's Optional Redemption Date or Dates as provided in the relevant Supplemental Trust Deed. Upon expiration of such notice, the Issuer shall be bound to redeem the Notes at their Early Redemption Amount, together, if appropriate, with interest accrued to, but excluding, such date or dates of redemption.

(f)   *Redemption at the Option of Noteholders*

If so specified in the relevant Supplemental Trust Deed, the Issuer shall, at the option of the holder of any Note, redeem such Note on the date or dates so provided at its Early Redemption Amount together with interest accrued to the date fixed for redemption.

To exercise such option the holder must deposit (in the case of Bearer Notes) such Note (together with all unmatured Receipts and Coupons and unexchanged Talons) with any Paying Agent or (in the case of Registered Notes) the Certificate representing such Note(s) with the Registrar or any Transfer Agent at its specified office, together with a duly completed option exercise notice ("**Exercise Notice**") in the form obtainable from any Paying Agent, the Registrar or any Transfer Agent (as applicable) within the Noteholders' Option Period as specified in the Final Terms. No Note or Certificate so deposited and option exercised may be withdrawn (except as provided in the Agency Agreement) without the prior consent of the Issuer.

(g)   *Early Redemption Amount*

Unless otherwise specified in the relevant Supplemental Trust Deed, the Early Redemption Amount payable upon a redemption of any Note pursuant to Condition 6 (c), (d), (e), (f) and (k) and Condition 10 shall be an amount, determined by the Calculation Agent in its absolute discretion, equal to the Recovery Fraction of the principal amount of the Note (or, if applicable, the part of the Note) being redeemed (the "**Early Redemption Amount**").

Where:

"Counterparty" means each party (other than the Issuer) to a Credit Enhancement Agreement.

"Credit Enhancement Termination Payment" means the total amount payable to the Issuer by a Counterparty (being a positive number) on the termination of (or as the case may be, the *pro rata* portion of) any related Credit Enhancement Agreement.

A07840320/0.24/06 Aug 2007

"Recovery Amount" means the amount received by or on behalf of the Issuer upon the sale of the Collateral (or, if applicable the *pro rata* portion of the Collateral) after the deduction of all costs, fees, charges, taxes and expenses of or incurred by the Issuer or, if applicable, the Disposal Agent in connection with the sale of the relevant Collateral and the early redemption of the Notes plus, if a positive number, the aggregate amount of, or minus, if a negative number, the aggregate amount of the Swap Termination Payment and/or the Credit Enhancement Termination Payment.

"Recovery Fraction" means a fraction of which the numerator is the Recovery Amount and the denominator is the aggregate principal amount of the Notes falling due for redemption.

"Swap Termination Payment" means the amount payable to the Issuer by the Swap Counterparty (in which case, it shall be a positive number) or by the Issuer to the Swap Counterparty (in which case, it shall be a negative number) on the termination of (or, as the case may be, the *pro rata* portion of) the related Swap Agreement.

(h)    *Notice of Redemption and Drawings*

All Notes in respect of which any notice of redemption is given under this Condition shall be redeemed on the date specified in such notice in accordance with this Condition. In the case of a partial redemption if the relevant Supplemental Trust Deed specifies "Partial Redemption - Method A", then the notice shall also contain the certificate numbers of the Notes to be redeemed, which shall have been drawn in such place as the Trustee may approve and in such manner as it deems appropriate, subject to compliance with any applicable laws and stock exchange requirements. If the relevant Supplemental Trust Deed specifies "Partial Redemption - Method B", then each Note will be redeemed on a *pro rata* basis.

(i)    *Purchases*

If the Issuer has satisfied the Trustee that it has made arrangements for the realisation of no more than the equivalent proportion of the Collateral for the reduction in the notional amount of any other Obligation and/or for the purchase of Notes and/or an equivalent proportion of any Related Notes, which transaction will leave the Issuer with no net liabilities in respect thereof, it may at any time purchase Notes (provided that they are purchased together with all unmatured Coupons and Talons related to them) in the open market or otherwise at any price.

(j)    *Cancellation*

The Issuer may, but shall not be obliged to, surrender for cancellation all Notes purchased by or on behalf of it, in the case of Bearer Notes, by surrendering each such Note together with all unmatured Receipts and Coupons and all unexchanged Talons to, or to the order of, the Issuing and Paying Agent and, in the case of Registered Notes, by surrendering the Certificate representing such Notes to the Registrar and, in each case, shall, together with all Notes redeemed by the Issuer, be cancelled forthwith (together with all unmatured Receipts and Coupons and unexchanged Talons attached thereto or surrendered therewith). Any Notes so surrendered for cancellation may not be reissued or resold and the obligations of the Issuer in respect of any such Notes shall be discharged.

(k)    *Exchange*

If so specified in the relevant Supplemental Trust Deed, any holder may at its option (subject to, if so specified in the Supplemental Trust Deed, the consent of each relevant Counterparty) exchange any or all of its Notes for (i) an amount (the "**Net Asset Amount**") calculated by the Issuer, equal to the then market value of such proportion of the Collateral (the "**attributable Collateral**") or, as the case may be, the Issuer's rights in respect thereof (the "**attributable rights**") or (ii) physical delivery ("**Physical Delivery**") of such proportion of the Collateral itself, in each case as equals the proportion (rounded down to the nearest whole number) which the Notes to be exchanged bears to the total principal amount outstanding of the Notes (less the costs of such valuation) adjusted as appropriate by the value

realised or cost incurred, as the case may be, as a result of the termination of any Swap Agreement and/or Credit Enhancement Agreement, or part thereof in accordance with this Condition 6(k). To exercise such option, the holder shall, if the Notes are in bearer form, deposit the relevant Notes (together with all (if any) unmatured Coupons or Talons appertaining thereto) or, if the Notes are in registered form, deposit the Certificate representing the Notes at the office of Register, together with written notice that such option is to be exercised and (if the holder has elected for Physical Delivery, where available) a delivery instruction form (a "**Delivery Instruction Form**") substantially in the form set out in the Agency Agreement (and available upon request from the specified office of any Paying Agent or Transfer Agent during normal office hours). The Issuing and Paying Agent will forthwith notify the Issuer, each Counterparty, each Swap Counterparty, the Custodian, the Disposal Agent, the Registrar and the Trustee of receipt of such written notice. Each Counterparty and each Swap Counterparty shall forthwith notify the Issuer, the Trustee, the Custodian and the Issuing and Paying Agent (who shall then notify the relevant holder) of the net sum payable by such Counterparty and by, or, as the case may be, to such Swap Counterparty on termination of the relevant part of the relevant Credit Enhancement Agreement or Swap Agreement, as appropriate. The part of the relevant Credit Enhancement Agreement or, as the case may be, the relevant Swap Agreement to be terminated will be the *pro rata* amount thereof corresponding to that proportion of the Notes to be exchanged. The calculation of the Net Asset Amount in accordance with this Condition 6(k) shall be binding on the relevant holder(s) in the absence of manifest error. Any such Net Asset Amount shall be payable to the holder at the specified office of any Paying Agent or Transfer Agent at which the relevant Notes were deposited on the twentieth calendar day after such deposit (the "**Delivery Date**") or (if the holder has elected for Physical Delivery) (subject to receipt of a Delivery Instruction form) delivered on, or as soon as practicable after, the Settlement Date to the account at Euroclear Bank S.A./N.V. as operator of the Euroclear System ("**Euroclear**") or Clearstream Banking, société anonyme ("**Clearstream, Luxembourg**" and, together with Euroclear and/or any alternative clearing system agreed by the Trustee, the "**Clearing Systems**") (or in such other manner as shall be provided in the relevant Supplemental Trust Deed) as specified in the relevant Delivery Instruction Form.

Notwithstanding the foregoing provisions of this Condition 6(k), the Issuer may, at its discretion, elect to satisfy the obligations hereunder by delivery to the relevant holder of the attributable Collateral or, as the case may be, by assignment to the relevant holder of the attributable rights even though the holder may not have elected for Physical Delivery. In any such case, the Issuer will procure that, subject to any payment due from the holder to the Swap Counterparty being made, the relevant attributable Collateral is delivered to the holder (or to any other place or account specified in the written notice referred to above) or, as the case may be, the relevant attributable rights are assigned to the holder on the Delivery Date and shall use all reasonable endeavours to procure that any payment being due from the relevant Counterparty and/or relevant Swap Counterparty to the holder on termination of the relevant Credit Enhancement Agreement and/or relevant Swap Agreement or part thereof is duly made.

Accountholders at the Clearing Systems will be required to give an irrevocable instruction to the relevant Clearing System, as the case may be, in respect of such delivery in the form prescribed by the relevant Clearing System (which may be in a form other than that set out in the Agency Agreement), not later than 10.00 a.m. Brussels or Luxembourg time, as the case may be (or, in the case of an instruction to Euroclear via EUCLID or EUCLID 90, 11.00 a.m. Brussels time), on the Clearing Business Day prior to the Delivery Date.

No interest will be payable with respect to Notes deposited for exchange pursuant to this Condition in respect of the period from the date of issue of the Notes (in the case of exchange prior to the first due date for the payment of interest on the Note) or the previous date for the payment of interest on the Note (in any other case) to the date of such exchange.

The relevant Supplemental Trust Deed will contain provisions for the release of the relevant Mortgaged Property for which Notes have been exchanged from the remaining charges upon them.

In these Conditions:

"Clearing Business Day" means a day on which Euroclear or Clearstream, Luxembourg, as the case may be, is open for the acceptance and execution of settlement instructions other than a day on which Euroclear or Clearstream, Luxembourg, as the case may be, is scheduled to close prior to its regular weekday closing time.

"delivered" means the satisfaction of any obligation of the Issuer to complete all matters necessary to transfer the relevant Net Asset Amount to the relevant Noteholder (or the first-named of joint holders) with full title guarantee. Accordingly, and for the avoidance of doubt, there shall be no obligation on the Issuer to concern itself with any formalities or requirements that shall be placed on the relevant Noteholder (or the first-named of joint holders) as the transferee of the relevant Net Asset Amount in connection with the acquisition by such Noteholder of the relevant Net Asset Amounts.

"Recovery Value" means the value, expressed as a percentage, of a claim against the obligor in respect of the relevant Collateral, as determined by the Swap Counterparty acting in good faith and in a commercially reasonable manner and by way of example but without limitation, the Swap Counterparty may in making this determination, take account of the mean of the market prices of all securities issued by the relevant obligor, disregarding any securities which have a market price which is at an artificially inflated level.

"Settlement Date" means the Delivery Date, except and to the extent that (i) a Settlement Disruption Event prevents delivery of the relevant Net Asset Amount on that day, (ii) pursuant to the terms of the relevant Swap Agreement and due to an event (the "Impossibility Event") beyond the control of the Swap Counterparty it is impossible (including due to market illiquidity) or illegal for the Swap Counterparty to deliver to the Issuer any Net Asset Amount, in which event the Settlement Date shall be postponed to the next following day after receipt by the Issuer of the relevant Net Asset Amount, provided that if by the 31st calendar day following the original Settlement Date the Impossibility Event is still continuing, the Notes shall become immediately repayable at their Early Redemption Amount and (iii) due to circumstances beyond the control of the Swap Counterparty the market price of any or all Net Asset Amount is at an artificially inflated level, in which event the Swap Counterparty may, in full satisfaction of its obligation to deliver the relevant Net Asset Amount, pay to the Issuer, on the Settlement Date, the True Value of the relevant Net Asset Amount. In the case of (ii) and to such extent, the Settlement Date will be the first succeeding day (if such day is after the Delivery Date) on which settlement of that Net Asset Amount can take place through Euroclear or Clearstream, Luxembourg unless a Settlement Disruption Event prevents delivery in accordance with the relevant Delivery Instruction form on each of the ten (10) Clearing Business Days immediately following that Delivery Date. In that case, (A) to the extent, as determined by the Calculation Agent, that the relevant Net Asset Amount can be delivered in any other commercially reasonable manner, then the Settlement Date will be the first day on which settlement of a sale of the relevant Net Asset Amount executed on that tenth (10th) Clearing Business Day customarily would take place using such other commercially reasonable manner of delivery, and (B) to the extent, as determined by the Calculation Agent, that the relevant Net Asset Amount cannot be delivered in any other commercially reasonable manner, then the Settlement Date will be postponed until such delivery can be effected through Euroclear or Clearstream, Luxembourg or, as determined by the Calculation Agent, in any other commercially reasonable manner. If a Settlement Disruption Event applies to a part only of the relevant Net Asset Amount, the Settlement Date shall be postponed, in accordance with the above provisions, in respect of the affected part of the relevant Net Asset Amount only. No additional amounts will be payable by the Issuer by virtue of any delay of the Settlement Date by virtue of a Settlement Disruption Event. In the case of (iii) the determination as to whether the market price of the Collateral is at an "artificially

inflated level" will be made by the Swap Counterparty acting in good faith and in a commercially reasonable manner and, by way of example but without limitation, such market price will be considered to be at an artificially inflated level if due to a default or prospect of default by the obligor in relation to the relevant Collateral, there is an increase in demand for the Collateral caused principally by contractual obligations to deliver such Net Asset Amount upon the occurrence of such a default or prospect of default.

"Settlement Disruption Event" means an event beyond the control of the Issuer as a result of which the Clearing Systems cannot, in the determination of the Calculation Agent, deliver all or any part of the relevant Net Asset Amount.

"True Value" means, in relation to any particular securities, an amount equal to the product of the Recovery Value of the particular securities and the aggregate principal amount of such securities.

## 7   Payments and Talons

### (a)   Bearer Notes

Payments of principal and interest in respect of Bearer Notes shall, subject as mentioned below, be made against presentation and surrender of the relevant Receipts (in the case of payments of Instalment Amounts other than on the due date for redemption and provided that the Receipt is presented for payment together with its relative Note), Notes (in the case of all other payments of principal and, in the case of interest, as specified in Condition 7(f)(vi)) or Coupons (in the case of interest, save as specified in Condition 7(f)(vi)), as the case may be, at the specified office of any Paying Agent by a cheque payable in the currency in which such payment is due drawn on, or, at the option of, and on three Business Days' notice from, the holder, by transfer to an account denominated in that currency with, a Bank. "Bank" means a bank in the principal financial centre for that currency or, in the case of euro, in a city in which banks have access to the TARGET System.

### (b)   Registered Notes

(i)     Payments of principal (which for the purposes of this Condition 7(b) shall include final Instalment Amounts but not other Instalment Amounts) in respect of Registered Notes shall be made against presentation and surrender of the relevant Certificates at the specified office of any of the Registrar or of the Transfer Agents and in the manner provided in paragraph (ii) below.

(ii)    Interest (which for the purpose of this Condition 7(b) shall include all Instalment Amounts other than final Instalment Amounts) on Registered Notes shall be paid to the person shown on the Register at the close of business on the fifteenth day before the due date for payment thereof (the "Record Date"). Payments of interest on each Registered Note shall be made in the currency in which such payments are due by cheque drawn on a Bank and mailed to the holder (or to the first named of joint holders) of such Note at its address appearing in the Register. Upon application by the holder to the specified office of the Registrar or any Transfer Agent before the Record Date, such payment of interest may be made by transfer to an account in the relevant currency maintained by the payee with a Bank.

### (c)   Payments in the United States

Notwithstanding the foregoing, if any Bearer Notes are denominated in U.S. dollars, payments in respect thereof may be made at the specified office of any Paying Agent in New York City in the same manner as aforesaid if (i) the Issuer shall have appointed Paying Agents with specified offices outside the United States with the reasonable expectation that such Paying Agents would be able to make payment of the amounts on the Notes in the manner provided above when due, and payment in full of such amounts at all such offices is illegal or effectively precluded by exchange controls or other similar

A07840320/0.24/06 Aug 2007

restrictions on payment or receipt of such amounts and (ii) such payment is then permitted by United States law, without involving, in the opinion of the Issuer, any adverse tax consequence to the Issuer.

(d)    *Payments Subject to Fiscal Laws*

All payments are subject in all cases to any applicable fiscal or other laws, regulations and directives, but without prejudice to the provisions of Condition 8. No commission or expenses shall be charged to the Noteholders or Couponholders in respect of such payments.

(e)    *Appointment of Agents*

The Issuing and Paying Agent, the Paying Agents, the Registrar, the Transfer Agents, the Calculation Agent and the Disposal Agent initially appointed by the Issuer and their respective specified offices are listed below. The Issuing and Paying Agent, the Paying Agents, the Registrar, the Transfer Agents, the Calculation Agent and the Disposal Agent act solely as agents of the Issuer and do not assume any obligation or relationship of agency or trust for or with any Noteholder or Couponholder. The Issuer reserves the right at any time with the prior written approval of the Trustee to vary or terminate the appointment of the Issuing and Paying Agent, any other Paying Agent, the Registrar, any Transfer Agent, the Calculation Agent or the Disposal Agent and to appoint additional or other Paying Agents or Transfer Agents, provided that the Issuer shall at all times maintain (i) an Issuing and Paying Agent, (ii) a Registrar in relation to Registered Notes, (iii) a Transfer Agent in relation to Registered Notes having its specified office in a major European city (which shall be Dublin ), (iv) one or more Calculation Agent(s) where the Conditions so require, (v) a Disposal Agent where the Conditions so require, (vi) a Paying Agent having its specified office in a major European city (which shall be Dublin so long as the Notes are listed on the Irish Stock Exchange) and (vii) such other agents as may be required by any other stock exchange on which the Notes may be listed, in each case as approved by the Trustee and (viii) a Paying Agent with a specified office in a European Union Member State that will not be obliged to withhold or deduct tax pursuant to any law implementing European Council Directive 2003/48/EC or any other Directive implementing the conclusions of the ECOFIN Council meeting of 26-27 November 2000.

In addition, the Issuer shall forthwith appoint a Paying Agent in New York City in respect of any Bearer Notes denominated in U.S. dollars in the circumstances described in paragraph (c) above.

Notice of any such change or any change of any specified office shall promptly be given to the Unmatured Coupons and Receipts and Unexchanged Talons.

(f)    *Unmatured Coupons and Receipts and Unexchanged Talons*

(i)    Unless the Notes provide that the relative Coupons are to become void upon the due date for redemption of those Notes, Bearer Notes should be surrendered for payment together with all unmatured Coupons (if any) appertaining thereto, failing which an amount equal to the face value of each missing unmatured Coupon (or, in the case of payment not being made in full, that proportion of the amount of such missing unmatured Coupon that the sum of principal so paid bears to the total principal due) shall be deducted from the Redemption Amount due for payment. Any amount so deducted shall be paid in the manner mentioned above against surrender of such missing Coupon within a period of 10 years from the Relevant Date for the payment of such principal (whether or not such Coupon has become void pursuant to Condition 9).

(ii)    If the Notes so provide, upon the due date for redemption of any Bearer Note, unmatured Coupons relating to such Note (whether or not attached) shall become void and no payment shall be made in respect of them.

A07840320/0.24/06 Aug 2007

- 53 -

(iii)    Upon the due date for redemption of any Bearer Note, any unexchanged Talon relating to such Note (whether or not attached) shall become void and no Coupon shall be delivered in respect of such Talon.

(iv)    Upon the due date for redemption of any Bearer Note that is redeemable in instalments, all Receipts relating to such Note having an Instalment Date falling on or after such due date (whether or not attached) shall become void and no payment shall be made in respect of them.

(v)    Where any Bearer Note that provides that the relative unmatured Coupons are to become void upon the due date for redemption of those Notes is presented for redemption without all unmatured Coupons and any unexchanged Talon relating to it, and where any Bearer Note is presented for redemption without any unexchanged Talon relating to it, redemption shall be made only against the provision of such indemnity as the Issuer may require.

(vi)    If the due date for redemption of any Note is not a due date for payment of interest, interest accrued from the preceding due date for payment of interest or the Interest Commencement Date, as the case may be, shall only be payable against presentation (and surrender if appropriate) of the relevant Bearer Note or Certificate representing it, as the case may be. Interest accrued on a Note that only bears interest after its Maturity Date shall be payable on redemption of such Note against presentation of the relevant Note or Certificate representing it, as the case may be.

(g)    *Talons*

On or after the Interest Payment Date for the final Coupon forming part of a Coupon sheet issued in respect of any Bearer Note, the Talon forming part of such Coupon sheet may be surrendered at the specified office of the Issuing and Paying Agent or, as it may direct, in exchange for a further Coupon sheet (and, if necessary, another Talon for a further Coupon sheet) (but excluding any Coupons that may have become void pursuant to Condition 9).

(h)    *Non-Business Days*

If any date for payment in respect of any Note, Receipt or Coupon is not a business day, the holder shall not be entitled to payment until the next following business day nor to any interest or other sum in respect of such postponed payment. In this paragraph, "business day" means a day (other than a Saturday or a Sunday) on which banks and foreign exchange markets are open for business in the relevant place of presentation, in such jurisdictions as shall be specified as "Business Day Jurisdictions" hereon and:

(i)    (in the case of a payment in a currency other than euro) where payment is to be made by transfer to an account maintained with a bank in the relevant currency, on which foreign exchange transactions may be carried on in the relevant currency in the principal financial centre of the country of such currency; or

(ii)    (in the case of a payment in euro) which is a TARGET Business Day.

## 8    Taxation

All payments in respect of the Notes will be made without withholding or deduction for, or on account of, any present or future taxes, duties or charges of whatsoever nature unless the Issuer or the Registrar or any Transfer Agent or any Paying Agent is required by applicable law to make any such payment in respect of the Notes subject to any withholding or deduction for, or on account of, any present or future taxes, duties or charges of whatsoever nature. In that event the Issuer or such Paying Agent, Registrar or Transfer Agent (as the case may be) shall make such payment after such withholding or deduction has been made and shall account to the relevant authorities for the amount so required to be withheld or deducted. Neither the Issuer

nor any Paying Agent, Registrar or Transfer Agent will be obliged to make any additional payments to holders of Notes in respect of such withholding or deduction.

## 9  Prescription

Claims against the Issuer for payment in respect of the Notes, Receipts and Coupons (which, for this purpose, shall not include Talons) shall be prescribed and become void unless made within 10 years (in the case of principal) or five years (in the case of interest) from the appropriate Relevant Date in respect of them.

## 10  Events of Default

If any of the following events ("Events of Default") occurs, the Trustee at its discretion may, and if so requested by holders of at least one-fifth in principal amount of the Notes then outstanding (or, if so specified in the relevant Supplemental Trust Deed, in respect of a Series of Notes where there are Related Notes, if so requested by holders of at least one fifth in aggregate principal amount of the Controlling Series) or if so directed by an Extraordinary Resolution (or, if so specified in the relevant Supplemental Trust Deed, in respect of a Series of Notes where there are Related Notes, if so directed by an Extraordinary Resolution of the Controlling Series) shall, give notice to the Issuer that the Notes are, and they shall immediately become, due and payable at their Early Redemption Amount together with accrued interest and the security constituted by the Trust Deed shall become enforceable (as provided in the Trust Deed):

(a)  if default is made for a period of 14 days or more in the payment of any sum due in respect of the Notes or any Related Notes or any of them; or

(b)  if the Issuer fails to perform or observe any of its other obligations under the Notes, any Related Notes or the Trust Deed and such failure continues for a period of 30 days (or such longer period as the Trustee may permit) next following the service by the Trustee on the Issuer of notice requiring the same to be remedied unless, in the opinion of the Trustee, incapable of remedy, in which case no notice shall be required; or

(c)  if an administrator shall be appointed or any order shall be made by any competent court or any resolution passed for the winding-up or dissolution of the Issuer or the appointment of an examiner, liquidator or similar official in relation to the Issuer save for the purposes of amalgamation, merger, consolidation, reorganisation or other similar arrangement on terms previously approved by the Trustee or by an Extraordinary Resolution;

(d)  it is or will become unlawful for the Issuer to comply with any one or more of its obligations under any of the Notes or any Related Notes; or

(e)  any event occurs which under the laws of any relevant jurisdiction has an analogous effect to any of the events referred to in any of the foregoing paragraphs.

The Issuer has undertaken in the Principal Trust Deed that, on each anniversary of the date of the Principal Trust Deed and also within 14 days after any request by the Trustee, it will send to the Trustee a certificate signed by two Directors of the Issuer to the effect that, since the date of the Principal Trust Deed or, as the case may be, the date of the last such certificate, no Event of Default, Potential Event of Default or other matter required to be brought to the Trustee's attention has occurred.

## 11  Enforcement

At any time after the Notes become due and payable, the Trustee may, at its discretion and without further notice, institute such proceedings against the Issuer as it may think fit to enforce the terms of the Trust Deed, the Notes and Coupons, but it need not take any proceedings unless (i) it shall have been so directed by an Extraordinary Resolution (or, if so specified in the relevant Supplemental Trust Deed, in respect of a Series of Notes where there are Related Notes, if so directed by an Extraordinary Resolution of the Controlling Series) or so requested in writing by Noteholders holding at least one-fifth in principal amount of Notes outstanding, (or, if so specified in the relevant Supplemental Trust Deed, in respect of a Series of Notes where

A07840320/0.24/06 Aug 2007

there are Related Notes, if so requested by holders of at least one fifth in aggregate principal amount of the
Controlling Series) and (ii) it shall have been indemnified to its satisfaction.

Only the Trustee may pursue the remedies available under the Trust Deed to enforce the rights of the
Noteholders and Couponholders and no Noteholder or Couponholder is entitled to proceed against the Issuer
unless the Trustee, having become bound to proceed in accordance with the terms of the Trust Deed, fails or
neglects to do so and such failure or neglect is continuing. Having realised the security or, in the case of a
partial redemption of Notes pursuant to Condition 6(c), part of the security corresponding to the proportion of
Notes redeemed, and distributed the net proceeds in accordance with Condition 4, the Trustee may not take
any further steps against the Issuer to recover any sum still unpaid and the Issuer will not be obliged to make
any further payment in respect of any such sum and accordingly no debt shall be owed by the Issuer in respect
of any such sum.

## 12    Meeting of Noteholders, Modification, Waiver and Substitution

### (a)    Meetings of Noteholders

The Trust Deed contains provisions for convening meetings of Noteholders to consider any matter
affecting their interests, including the sanctioning by Extraordinary Resolution (as defined in the Trust
Deed) of a modification of any of these Conditions or any provisions of the Trust Deed or the
restructuring of the Notes. Such a meeting may be convened by Noteholders holding not less than 10
per cent. in principal amount of the Notes for the time being outstanding. The quorum for any meeting
convened to consider an Extraordinary Resolution shall be two or more persons holding or
representing a clear majority in principal amount of the Notes for the time being outstanding, or at any
adjourned meeting two or more persons being or representing Noteholders whatever the principal
amount of the Notes held or represented, unless the business of such meeting includes consideration of
proposals, inter alia, (i) to amend the dates of maturity or redemption of the Notes, any Instalment
Date or any date for payment of interest or Interest Amounts on the Notes, (ii) to reduce or cancel the
nominal amount of, or any Instalment Amount of, or any premium payable on redemption of, the
Notes, (iii) to reduce the rate or rates of interest in respect of the Notes or to vary the method or basis
of calculating the rate or rates or amount of interest or the basis for calculating any Interest Amount in
respect of the Notes, (iv) if a Minimum and/or a Maximum Rate of Interest, Instalment Amount or
Redemption Amount is shown hereon to reduce any such Minimum and/or Maximum, (v) to vary any
method of, or basis for, calculating the Redemption Amount or the Early Redemption Amount
including the method of calculating the Amortised Face Amount, (vi) to vary the currency or
currencies of payment or denomination of the Notes, (vii) to modify the provisions concerning the
quorum required at any meeting of Noteholders or the majority required to pass an Extraordinary
Resolution, (viii) to modify the provisions of the Trust Deed concerning this exception or (ix) to
modify the Mortgaged Property, in which case the necessary quorum shall be two or more persons
holding or representing not less than 75 per cent., or at any adjourned meeting not less than 25 per
cent., in principal amount of the Notes for the time being outstanding. Any Extraordinary Resolution
duly passed shall be binding on all Noteholders (whether or not they were present at the meeting at
which such resolution was passed) and on all Couponholders. A written resolution of the holders of not
less than 90 per cent. in principal amount of the Notes for the time being outstanding shall take effect
as an Extraordinary Resolution.

No Extraordinary Resolution to modify the terms of the Mortgaged Property or affecting terms
concerning the amount, currency or the due dates of payment of the Notes, Receipts, Coupons or
Talons relating thereto, which would in the opinion of the Trustee affect the corresponding terms of
any Related Notes or adversely affect the interests of the holders of any Related Notes shall take effect,
unless it has been sanctioned by an Extraordinary Resolution of the holders of any Related Notes.

The Conditions may be amended, modified or varied in relation to the Notes by the terms of the
relevant Supplemental Trust Deed in relation to such Notes.

A07840320/0.24/03 Aug 2007

(b)    *Single and separate meetings for holders of Notes and holders of any Related Notes*

A single meeting of the holders of the Notes and the holders of any Related Notes may be convened if to do so would not, in the opinion of the Trustee, be materially prejudicial to the holders of the Notes and/or the Related Notes. In all other circumstances, separate meetings of the holders of the Notes and the holders of any Related Notes shall be convened.

(c)    *Modification of the Trust Deed*

The Trustee may agree, without the consent of the Noteholders or Couponholders, to (i) any modification of any of these Conditions or any of the provisions of the Trust Deed or any relevant Swap Agreement that is in its opinion of a formal, minor or technical nature or is made to correct a manifest error, and (ii) any other modification (except as mentioned in the Trust Deed), and any waiver or authorisation of any breach or proposed breach, of any of the provisions of the Trust Deed that is in the opinion of the Trustee not materially prejudicial to the interests of the Noteholders. Any such modification, authorisation or waiver shall be binding on the Noteholders and the Couponholders and, if the Trustee so requires, such modification shall be notified to the Noteholders as soon as practicable. In relation to Notes which are rated by a rating agency, the Issuer shall notify the relevant rating agency of any modification made in accordance with this Condition 12(c).

(d)    *Substitution*

The Trust Deed contains provisions permitting the Trustee to agree, subject to such amendment of the Trust Deed and such other conditions as the Trustee may require including the transfer of the Mortgaged Property and subject to the consent of the relevant Swap Counterparty, but without the consent of the Noteholders or the Couponholders, to the substitution of any other company in place of the Issuer, or of any previous substituted company, as principal debtor under the Trust Deed and the Notes provided that, in relation only to Notes which are rated by a rating agency, the Issuer shall notify the appropriate rating agency and that such change shall not adversely affect any existing rating of the Notes as confirmed in writing by the appropriate rating agency. In the case of such a substitution the Trustee may agree, without the consent of the Noteholders or the Couponholders, to a change of the law governing the Notes, the Receipts, the Coupons, the Talons and/or the Trust Deed provided that such change (i) would not in the opinion of the Trustee be materially prejudicial to the interests of the Noteholders and (ii) in relation only to Notes rated by a rating agency, shall not adversely affect any existing rating of the Notes as confirmed in writing by the appropriate rating agency. Under the Trust Deed, the Trustee may agree or require the Issuer to procure the substitution as principal debtor under the Trust Deed of a company incorporated in some other jurisdiction in the event of the Issuer becoming subject to any form of tax on its income or payments in respect of the Notes.

(e)    *Entitlement of the Trustee*

In connection with the exercise of its functions (including but not limited to those referred to in this Condition) the Trustee shall have regard to the interests of each Series of Noteholders as a class subject to Condition 11 and shall not have regard to the consequences of such exercise for individual Noteholders or Couponholders and the Trustee shall not be entitled to require, nor shall any Noteholder or Couponholder be entitled to claim, from the Issuer any indemnification or payment in respect of any tax consequence of any such exercise upon individual Noteholders or Couponholders.

Where, in the opinion of the Trustee, there is a conflict between the interests of the holders of the Notes and those of any Related Notes and/or its duties as Trustee for the holders of Notes and the holders of any Related Notes, the Trustee shall, unless otherwise specified in the relevant Supplemental Trust Deed, act solely on behalf of the holders of the Controlling Series following enforcement of the security over the Mortgaged Property and shall have regard to their interests alone and shall not be responsible to the holders of the Notes that do not comprise the Controlling Series for so doing.

A07840320/0.24/06 Aug 2007

*(f)*    *Retirement or Removal of the Trustee*

The Trust Deed contains detailed provisions for the appointment, retirement and removal of the Trustee. The Issuer has the power of appointing new trustees in respect of any Series of Notes with the approval of Noteholders by Extraordinary Resolution (or in respect of a Series where there are Related Notes, the approval of holders of the Controlling Series by Extraordinary Resolution). Any trustee may retire by giving three months' written notice to the Issuer and any trustee may be removed by Extraordinary Resolution (or in respect of a Series of Notes where there are Related Notes by Extraordinary Resolution of holders of the Controlling Series). However, if the Trustee is a sole trust corporation then any such retirement or removal shall not be effective until a successor Trustee is appointed.

## 13    Replacement of Notes, Certificates, Receipts, Coupons and Talons

If a Note, Certificate, Receipt, Coupon or Talon is lost, stolen, mutilated, defaced or destroyed, it may be replaced, subject to applicable laws, regulations and stock exchange regulations, at the specified office of the Paying Agent in the Republic of Ireland (in the case of Bearer Notes, Receipts, Coupons or Talons) and of the Registrar (in the case of Certificates) or such other Paying Agent, as the case may be, as may from time to time be designated by the Issuer for the purpose and notice of whose designation is given to Noteholders, in each case on payment by the claimant of the fees and costs incurred in connection therewith and on such terms as to evidence, security and indemnity (which may provide, *inter alia*, that if the allegedly lost, stolen or destroyed Note, Certificate, Receipt, Coupon or Talon is subsequently presented for payment or, as the case may be, for exchange for further Coupons, there shall be paid to the Issuer on demand the amount payable by the Issuer in respect of such Notes, Certificates, Receipts, Coupons or further Coupons) and otherwise as the Issuer may require. Mutilated or defaced Notes, Certificates, Receipts, Coupons or Talons must be surrendered before replacements will be issued.

## 14    Notices

Notices to the holders of Registered Notes shall be mailed to them at their respective addresses in the Register and deemed to have been given on the fourth weekday (being a day other than a Saturday or a Sunday) after the date of mailing. Notices to the holders of Bearer Notes shall be valid if published in a daily newspaper of general circulation in London (which is expected to be the *Financial Times*) and (so long as the Notes are listed on a stock exchange and the rules of that stock exchange so require) in any such other newspaper in which publication is so required by the rules of that stock exchange (which, in the case of Notes listed on the Irish Stock Exchange, is expected to be the *Irish Times*). If in the opinion of the Trustee any such publication is not practicable, notice shall be validly given if published in another leading daily English language newspaper with general circulation in Europe. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made, as provided above.

Couponholders shall be deemed for all purposes to have notice of the contents of any notice given to the holders of Bearer Notes in accordance with this Condition.

## 15    Indemnification and Obligations of the Trustee

The Trust Deed contains provisions for the indemnification of the Trustee and for its relief from responsibility including for the exercise of any voting rights in respect of the Mortgaged Property, for the validity, sufficiency and enforceability (which the Trustee has not investigated) of the security created over the Mortgaged Property and for taking proceedings to enforce repayment unless indemnified to its satisfaction. The Trustee and any affiliate is entitled to enter into business transactions with the Issuer, any issuer or guarantor (where applicable) of any of the Mortgaged Property, any Swap Counterparty or any of their subsidiary, holding or associated companies without accounting to the Noteholders for profit resulting therefrom.

A07840320/0.24/06 Aug 2007

The Trustee is exempted from liability with respect to any loss or theft or reduction in value of the Mortgaged Property, from any obligation to insure or to procure the insuring of the Mortgaged Property and from any claim arising from the fact that the Mortgaged Property will be held in safe custody by the Custodian or other custodian approved in writing by the Trustee (in each case, if applicable).

The Trust Deed provides that in acting as Trustee under this Trust Deed the Trustee shall not, in respect of Notes of any Series, assume any duty or responsibility to any Swap Counterparty (other than to pay to any Swap Counterparty any moneys received and payable to it and to act in accordance with the provisions of Condition 4) or any Credit Enhancement Provider and shall have regard solely to the interests of the Noteholders and shall not be obliged to act on any directions of the Swap Counterparty if this would in the Trustee's opinion be contrary to the interests of the Noteholders or Couponholders.

## 16    Governing Law and Jurisdiction

### (a)    *Governing Law*

The Trust Deed, the Notes, the Receipts, the Coupons and the Talons are governed by, and shall be construed in accordance with, English law.

### (b)    *Jurisdiction*

The Courts of England are to have jurisdiction to settle any disputes that may arise out of or in connection with the Trust Deed, any Notes, Receipts, Coupons or Talons and accordingly any legal action or proceedings arising out of or in connection with the Trust Deed, any Notes, Receipts, Coupons or Talons ("**Proceedings**") may be brought in such courts.

### (c)    *Service of Process*

The Issuer has irrevocably appointed Lehman Brothers International (Europe) as its agent in England to receive, for it and on its behalf, service of process in any Proceedings in England.

## 17    Contracts (Rights of Third Parties) Act 1999

No person shall have any right to enforce any term or condition of the Notes under the Contracts (Rights of Third Parties) Act 1999 except to the extent (if any) that the Notes expressly provide for such Act to apply to any of their terms.

A07840320/0.24/06 Aug 2007

## SUMMARY OF PROVISIONS RELATING TO THE NOTES WHILE IN GLOBAL FORM

### Initial Issue of Notes

Upon the initial deposit of a Global Note with a common depositary for Euroclear and Clearstream, Luxembourg (the "**Common Depositary**") or registration of Registered Notes in the name of any nominee for Euroclear and Clearstream, Luxembourg and delivery of the relative Global Certificate to the Common Depositary, in the case of a Tranche intended to be cleared through Euroclear and/or Clearstream, Luxembourg, Euroclear or Clearstream, Luxembourg will credit each subscriber with a principal amount of Notes equal to the principal amount thereof for which it has subscribed and paid. Tranches intended to be delivered outside a clearing system shall be delivered as agreed between the relevant Issuer and the relevant Dealer.

### Relationship of Accountholders with Clearing Systems

Each of the persons shown in the records of Euroclear, Clearstream, Luxembourg or any other clearing system ("**Alternative Clearing System**") as the holder of a Note represented by a Global Note or a Global Certificate must look solely to Euroclear, Clearstream, Luxembourg or any such Alternative Clearing System (as the case may be) for his share of each payment made by the relevant Issuer to the bearer of such Global Note or the holder of such Global Certificate, as the case may be, and in relation to all other rights arising under the Global Notes or Global Certificates, subject to and in accordance with the respective rules and procedures of Euroclear, Clearstream, Luxembourg or such Alternative Clearing System (as the case may be). Such persons shall have no claim directly against the relevant Issuer in respect of payments due on the Notes for so long as the Notes are represented by such Global Note or Global Certificate and such obligations of the relevant Issuer will be discharged by payment to the bearer of such Global Note or the holder of such Global Certificate, as the case may be, in respect of each amount so paid.

### Exchange

1.   *Temporary Global Notes*

   Each Temporary Global Note will be exchangeable, free of charge to the holder, on or after its Exchange Date:

   (i)   if the relevant Final Term indicates that the Global Note is issued in compliance with the C Rules or in a transaction to which TEFRA is not applicable (as to which, see "Overview of the Programme – Selling Restrictions" in whole but not in part for the Definitive Notes; and

   (ii)   otherwise in whole or in part upon certification as to non-U.S. beneficial ownership in the form set out in the Agency Agreement for interests in a Permanent Global Note or, if so provided in the relevant Final Term, for Definitive Notes.

   Each Temporary Global Note that is also an Exchangeable Bearer Note will be exchangeable for Registered Notes in accordance with the Conditions in addition to any Permanent Global Note for which it may be exchangeable and, before its Exchange Date, will also be exchangeable in whole or in part for Registered Notes only.

2.   *Global Notes*

   Each Permanent Global Note will be exchangeable, free of charge to the holder, on or after its Exchange Date in whole but not, except as provided below, in part for Definitive Notes or, in the case of paragraph 4 below, Registered Notes:

A07840320/0.24/06 Aug 2007