(i) if the Permanent Global Note is an Exchangeable Bearer Note, by the holder giving notice to the Issuing and Paying Agent of its election to exchange the whole or a part of such Permanent Global Note for Registered Notes; and

(ii) if the Permanent Global Note is held on behalf of Euroclear or Clearstream, Luxembourg or an Alternative Clearing System and any such clearing system is closed for business for a continuous period of 14 days (other than by reason of holidays, statutory or otherwise) or announces an intention permanently to cease business or in fact does so.

In the event that a Global Note is exchanged for Definitive Notes, such Definitive Notes shall be issued in the specified denomination(s) only. A Noteholder who holds a principal amount of less than the minimum denomination will not receive a Definitive Note in respect of such holding and would need to purchase a principal amount of Notes such that it holds an amount equal to one or more denominations.

3. *Global Certificates*

If the relevant Final Terms state that the Notes are to be represented by a permanent Global Certificate on issue, the following will apply in respect of transfers of Notes held in Euroclear or Clearstream, Luxembourg or an Alternative Clearing System. These provisions will not prevent the trading of interests in the Notes within a clearing system whilst they are held on behalf of such clearing system, but will limit the circumstances in which the Notes may be withdrawn from the relevant clearing system.

Transfers of the holding of Notes represented by any Global Certificate pursuant to the Conditions may only be made in part:

(i) if the Notes represented by the Global Certificate are held on behalf of Euroclear or Clearstream, Luxembourg or an Alternative Clearing System and any such clearing system is closed for business for a continuous period of 14 days (other than by reason of holidays, statutory or otherwise) or announces an intention permanently to cease business or does in fact do so; or

(ii) with the consent of the relevant Issuer;

provided that, in the case of the first transfer of part of a holding pursuant to paragraph (i) above, the Registered Holder has given the Registrar not less than 30 days' notice at its specified office of the Registered Holder's intention to effect such transfer. Where the holding of Notes represented by a Global Certificate is only transferable in its entirety, the Certificate issued to the transferee upon transfer of such holding shall be a Global Certificate. Where transfers are permitted in part, Certificates issued to transferees shall not be Global Certificates unless the transferee so requests and certifies to the Registrar that it is, or is acting as a nominee for, Clearstream, Luxembourg, Euroclear and/or an Alternative Clearing System.

4. *Partial Exchange of Permanent Global Notes*

For so long as a Permanent Global Note is held on behalf of a clearing system and only if the rules of that clearing system permit, such Permanent Global Note will be exchangeable in part on one or more occasions (1) for Registered Notes if the Global Note is an Exchangeable Bearer Note and the part submitted for exchange is to be exchanged for Registered Notes, or (2) for Definitive Notes if so provided in, and in accordance with, the Conditions (which will be set out in the relevant Final Terms).

5. *Delivery of Notes*

On or after any due date for exchange, the holder of a Global Note may surrender such Global Note or, in the case of a partial exchange, present it for endorsement to or to the order of the Issuing and Paying Agent. In exchange for any Global Note, or the part thereof to be exchanged, the relevant Issuer will (i)

in the case of a Temporary Global Note exchangeable for a Permanent Global Note, deliver or procure the delivery of a Permanent Global Note in an aggregate principal amount equal to that of the whole or the part of the Temporary Global Note that is being exchanged or, in the case of a subsequent exchange, endorse or procure the endorsement of a Permanent Global Note to reflect such exchange or (ii) in the case of a Permanent Global Note exchangeable for Definitive Notes or Registered Notes, deliver, or procure the delivery of, an equal aggregate principal amount of duly executed and authenticated Definitive Notes and/or Certificates, as the case may be. In this Base Prospectus, "Definitive Notes" means, in relation to any Permanent Global Note, the definitive Bearer Notes for which such Permanent Global Note may be exchanged (if appropriate, having attached to them all Coupons and Receipts in respect of interest or Instalment Amounts that have not already been paid on the Global Note and a Talon). Definitive Notes will be security printed and Certificates will be printed in accordance with any applicable legal and stock exchange requirements in or substantially in the form set out in the Schedules to the Principal Trust Deed. On exchange in full of each Permanent Global Note, the relevant Issuer will, if the holder so requests, procure that it is cancelled and returned to the holder together with the relevant Definitive Notes.

6. *Exchange Date*

"Exchange Date" means (i) in the case of a Temporary Global Note, the first day following the expiry of 40 days after the Issue Date and (ii) in the case of a Permanent Global Note, a day falling not less than 60 days or, in the case of an exchange for Registered Notes, five days, after that on which the notice requiring exchange is given and on which banks are open for business in the city in which the specified office of the Issuing and Paying Agent is located and, other than in the case of 2 (iv) above, in the city in which the relevant clearing system is located.

**Amendments to Conditions**

The Global Notes and Global Certificates contain provisions that apply to the Notes that they represent, some of which modify the effect of the terms and conditions of the Notes set out in this Base Prospectus. The following is a summary of certain of those provisions:

1. *Payments*

No payment falling due after the Exchange Date will be made on any Global Note unless exchange for an interest in a Permanent Global Note is improperly withheld or refused. Payments on any Temporary Global Note issued in compliance with the D Rules before the Exchange Date will only be made against presentation of certificates as to non-U.S. beneficial ownership in the form set out in the Agency Agreement. All payments in respect of Notes represented by a Global Note will be made against surrender of that Global Note to or to the order of the Issuing and Paying Agent or such other Paying Agent as shall have been notified to the Noteholders for such purpose. A record of each payment so made will be endorsed on each Global Note, which endorsement will be *prima facie* evidence that such payment has been made in respect of the Notes. The second exception to Condition 6(d)(i) (if the requirement to withhold or account for tax set out in Condition 6(d)(i) arises as a result of the presentation for payment of any Bearer Note, Receipt or Coupon by or on behalf of a holder who would have been able to avoid such withholding or deducting by presenting the relevant Bearer Note, Receipt or Coupon to another Paying Agent in a Member State of the European Union then Condition 6(d)(i) shall not apply) and Condition 7(e) will apply to the Definitive Notes only.

2. *Prescription*

Claims against the relevant Issuer in respect of Notes that are represented by a Permanent Global Note will become void unless it is presented for payment within a period of 10 years (in the case of principal) and five years (in the case of interest) from the appropriate Relevant Date (as defined in the Conditions).

3. *Meetings*

The holder of a Permanent Global Note or of the Notes represented by a Global Certificate shall (unless such Permanent Global Note or Global Certificate represents only one Note) be treated as being two persons for the purposes of any quorum requirements of a meeting of Noteholders and, at any such meeting, the holder of a Permanent Global Note shall be treated as having one vote in respect of each integral currency unit of the specified currency of the Notes for which such Global Note may be exchanged. (All holders of Registered Notes are entitled to one vote in respect of each integral currency unit of the specified currency of the Notes comprising such Noteholder's holding, whether or not represented by a Global Certificate.)

4. *Cancellation*

Cancellation of any Note represented by a Permanent Global Note that is required by the Conditions to be cancelled (other than upon its redemption) will be effected by reduction in the principal amount of the relevant Permanent Global Note.

5. *Purchase*

Notes represented by a Global Note may only be purchased (if so permitted) by the Issuer if they are purchased together with the rights to receive all future payments of interest and Instalment Amounts (if any) thereon.

6. *Issuer's Option*

Any option of the Issuer provided for in the Conditions of any Notes, while such Notes are represented by a Permanent Global Note, shall be exercised by the relevant Issuer giving notice to the Noteholders within the time limits set out in and containing the information required by the Conditions, except that the notice shall not be required to contain the serial numbers of Notes drawn in the case of a partial exercise of an option and accordingly no drawing of Notes shall be required. In the event that any option of the Issuer is exercised in respect of some but not all of the Notes, the rights of accountholders with a clearing system will be governed by the standard procedures of Euroclear, Clearstream, Luxembourg or any other clearing system (as the case may be).

7. *Noteholders' Options*

Any option of the Noteholders provided for in the Conditions of any Notes, while such Notes are represented by a Permanent Global Note, may be exercised by the holder of the Permanent Global Note giving notice to the Issuing and Paying Agent within the time limits relating to the deposit of Notes with a Paying Agent set out in the Conditions, substantially in the form of the notice available from any Paying Agent, except that the notice shall not be required to contain the serial numbers of the Notes in respect of which the option has been exercised, and stating the principal amount of Notes in respect of which the Option is exercised and at the same time presenting the Permanent Global Note to the Issuing and Paying Agent, or to a Paying Agent acting on behalf of the Issuing and Paying Agent, for notation.

8. *Trustee's Powers*

In considering the interests of Noteholders while any Global Note is held on behalf of, or Registered Notes are registered in the name of any nominee for, a clearing system, the Trustee may have regard to any information provided to it by such clearing system or its operator as to the identity (either individually or by category) of its accountholders with entitlements to such Global Note or Registered Notes and may consider such interests as if such accountholders were the holders of the Notes represented by such Global Note or Global Certificate.

9. *Notices*

So long as any Notes are represented by a Global Note and such Global Note is held on behalf of a clearing system, notices to the holders of Notes of that Series may be given by delivery of the relevant notice to that clearing system for communication by it to entitled accountholders in substitution for publication, as required by the Conditions, or by delivery of the relevant notice to the holder of the Global Note.

10. *Partly-paid Notes*

The provisions relating to partly-paid Notes are not set out in this Base Prospectus, but will be contained in the relevant Final Terms and thereby in the Global Notes. For so long as any instalments of the subscription moneys due from the holder of partly-paid Notes are overdue, no interest in a Permanent Global Note representing such Notes may be exchanged for Definitive Notes. In the event that any Noteholder fails to pay any instalment due on any partly-paid Notes within the time specified, the relevant Issuer may be entitled to forfeit such Notes and shall have no further obligation to their holder in respect of them.

## USE OF PROCEEDS

The net proceeds from each issue of Notes will, on or prior to the closing date for a given Tranche, be used by the relevant Issuer to 1.) purchase the Collateral comprising the Mortgaged Property in respect of the relevant Transaction; 2.) fund any relevant Swap Agreement or Credit Enhancement Agreement in connection with the relevant Series and 3.) pay certain expenses and fees payable in connection with the operations of such Issuer and the issue of the Notes as set out in the relevant Final Terms relating to such Tranche.

FORM OF FINAL TERMS

Final Terms dated [●]

[Name of Issuer]
*(incorporated with limited liability in [insert country of incorporation])*

[Title of relevant Tranche of Notes (specifying type and nominal amount of Notes) (the "Notes")]
issued pursuant to the
Multi Issuer Secured Obligation Programme
arranged by
Lehman Brothers International (Europe)

PART A – CONTRACTUAL TERMS, LISTING AND RATING

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated 20 July 2007 [and the Supplemental Prospectus dated [●]] which [together] constitute[s] a base prospectus for the purposes of the Directive 2003/71/EC (the "**Prospectus Directive**"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with such Base Prospectus [as so supplemented]. Full information on [*name of Issuer*] (the "Issuer") and the offer of the Notes is only available on the basis of the combination of these Final Terms, the Base Prospectus and the Supplemental Prospectus. [The Base Prospectus [and the Supplemental Prospectus] [is] [are] available for viewing at [address] and copies may be obtained from [address].]

*The following alternative language applies if the first Tranche of an issue which is being increased was issued under a Base Prospectus with an earlier date.*

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions (the "**Conditions**") set forth in the Base Prospectus dated [original date] which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "**Prospectus Directive**"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus dated [current date] [and the Supplemental Prospectus dated [●]] which [together] constitute[s] a base prospectus for the purposes of the Prospectus Directive, save in respect of the Conditions which are extracted from the Base Prospectus dated [original date] and are attached hereto. Full information on [*insert name of issuer*] (the "Issuer") and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectuses dated [original date] and [current date] [and the Supplemental Prospectus[es] dated [●] and [●]]. [The Base Prospectuses are available for viewing at [address] and copies may be obtained from [address].]

*[Include whichever of the following apply or specify as "Not Applicable" (N/A). Note that the numbering should remain as set out below, even if "Not Applicable" is indicated for individual paragraphs or sub-paragraphs. Italics denote guidance for completing the Final Terms.]*

**Provisions appearing on the face of the [Notes/Certificates]**

| | | | |
|---|---|---|---|
| 1 | Issuer: | [ | ] |
| 2 | Series No: | [ | ] |
| 3 | Tranche No: | [ | ] |
| 4 | ISIN (N.B. see Clause 54 for Common Code): | [ | ] |

A07840320/0.24/06 Aug 2007

- 66 -

| | | | |
|---|---|---|---|
| 5 | Currency: | [ | ] |
| 6 | Principal Amount of Notes admitted to trading: | | |
| | [(i)] Series; | | |
| | [(ii) Tranche; | [ | ] |
| | | [ | ]] |
| 7 | (i) Issue Date: | [ | ] |
| | (ii) [Date [Board] approval for issuance of Notes obtained: | [ | ]] |

**Provisions appearing on the back of the [Notes/Certificates]**

| | | |
|---|---|---|
| 8 | Form: | [Bearer/Exchangeable Bearer/Registered] |
| 9 | (i) Denomination(s) (*): | [ ] |
| | (ii) Integral Multiple: | [ ] |
| 10 | Status: | Secured and limited-recourse obligations, as described under "Security Arrangements" below |
| | | [Subordinated/unsubordinated obligations] [*if former, insert relevant subordination provisions*] |
| 11 | Interest Commencement Date: | [ ] |
| 12 | Interest Rate (including after Maturity Date): | [[ ] per cent. per annum/ Floating Rate/Zero Coupon/[*other*]] |
| 13 | Interest Payment Date(s): | [ ] [, subject to adjustment in accordance with the [Following/ Modified Following/ Preceding] Business Day Convention for which the Business Day[s] [is/are] [*specify cities*]] |
| 14 | Manner in which the Interest Rate is due to be determined (Floating Rate Notes): | [Screen Rate Determination/ISDA Determination/*other (give details)*] |
| 15 | Screen Rate Determination Condition 5(c) (ii): | |
| (a) | Interest Determination Date (Floating Rate Notes): | [[ ] [TARGET] Business Days in [*specify city*] for [*specify currency*] prior to] [the first day in each Interest Period/each Interest Payment Date] |
| (b) | Reference Rate (Floating Rate Notes): | [*Specify*] |
| (c) | Relevant Screen Page (Floating Rate Notes): | [*Specify*] |
| 16 | ISDA Determination (Condition 5(c) (i)): | |
| (a) | Floating Rate Option: | [•] |
| (b) | Designated Maturity: | [•] |
| (c) | Reset Date: | [•] |
| (d) | ISDA Definitions: (if different from those set out in the Conditions) | [•] |
| 17 | Margin (if applicable): | [ ] per cent. per annum |

A07840320/0.24/06 Aug 2007

- 67 -

| | | |
|---|---|---|
| 18 | Maximum/Minimum Interest Rate (if applicable): | [    ] per cent. per annum |
| 19 | Maximum/Minimum Instalment Amount (if applicable): | [    ] |
| 20 | Maximum/Minimum Redemption Amount (if applicable): | [    ] |
| 21 | Interest Amount (Fixed Rate Note or Variable Coupon Amount Note): | [*Specify amount of interest due in respect of each denomination on each Interest Payment Date or, if applicable, a formula for calculating such amounts*] |
| 22 | Determination Date(s) (Condition 5(i)) | (Consider if day count fraction for euro denominated fixed rate issues should be on an Actual/Actual-ISDA or Actual/Actual -ICMA basis<br><br>[*Insert day(s) and month(s) on which interest is normally paid (if more than one, then insert such dates in the alternative)*] in each year |
| 23 | Day Count Fraction: | [    ] |
| 24 | Interest Period Date(s) (if applicable): | [    ] |
| 25 | Redemption Amount (including early redemption): | [Principal Amount/[*other*]] |
| 26 | Maturity Date: | [    ] [, subject to adjustment in accordance with the [Following/Modified Following/Preceding] Business Day Convention for which the Business Day[s] [is/are] [*specify cities*]]/[The Interest Payment Date falling in [*specify month and year*]] |
| 27 | Redemption for Taxation Reasons permitted on days other than Interest Payment Dates: | [Yes/No] |
| 28 | Amortisation Yield: | [    ] per cent. per annum |
| 29 | Terms of redemption at the option of the Issuer or description of any other Issuer's option (if applicable): | [    ] |
| 30 | Issuer's Option Period (if applicable): | [    ] |
| 31 | Terms of redemption at the option of the Noteholder or description of any other Noteholder's option (if applicable): | [    ] |
| 32 | Noteholder's Option Period (if applicable): | [    ] |
| 33 | Exchange (Condition 6(k)): | [Yes/No] |
| 34 | Partial Redemption - Method for Condition 6(c): | Method [A/B] |
| 35 | Instalment Date(s) (if applicable): | [    ] |
| 36 | Instalment Amount(s) (if applicable): | [    ] |
| 37 | Unmatured Coupons to become void upon early redemption: | [Yes/No] |

A07840320/0.24/06 Aug 2007

- 68 -

| | | |
|---|---|---|
| 38 | Talons to be attached to Notes and, if applicable, the number of Interest Payment Dates between the maturity of each Talon (if applicable): | [No/Yes, maturing every [    ] Interest Payment Dates] |
| 39 | Business Day Jurisdictions for Condition 7(h) (jurisdictions required to be open for payment): | [                                    ] |
| 40 | Additional steps that may only be taken following approval by an Extraordinary Resolution in accordance with Condition 12(a) (if applicable): | [                                    ] |
| 41 | Additional Fungible Issues Permitted | [Yes/No] |
| 42 | Details of any other additions or variations to the Conditions (if applicable): | [                                    ] |
| 43 | The Agents (including any Calculation Agent and/or Issuing and Paying Agent and/or Custodian) appointed in respect of the Notes are: | [*List Agents* and *their specified offices*] |

**Provisions applicable to Global Notes and Certificates**

| | | |
|---|---|---|
| 44 | Notes to be represented on issue by: | [Global Note/Global Certificate] |
| 45 | Applicable TEFRA exemption: | [C Rules/D Rules/not applicable] [*specify, if yes*] |
| 46 | Global Note exchangeable for Definitive Notes at the request of the holder: | [                                    ] |
| 47 | Exchange Date: | |

**Provisions relating only to the sale, listing and rating of the Notes**

| | | |
|---|---|---|
| 48 | Details of any additions or variations to the selling restrictions: | [                                    ] |
| 49 | (i) Listing: | [                                    ] |
| | (ii) Admission to trading: | [Application may been made for the Notes to be admitted to trading on the regulated marked of the Irish Stock Exchange with effect from [●]][Not applicable] |
| | (iii) Estimate of total expenses related to admission to trading: | [                                    ] |
| 50 | Dealer's Commission: | [                                    ] |
| 51 | Net Proceeds of issue: | [] |
| 52 | Method of issue of Notes: | [Individual Dealer/Syndicated Issue] |
| 53 | The following Dealer(s) [is/are] subscribing the Notes: | [*Insert legal name(s) of Dealer(s)*] |
| 54 | Common Code (N.B. See Clause 4 for ISIN): | [                                    ] |
| 55 | Rating: | [Yes/No] [*If yes specify rating and give name of rating agency*] |
| 56 | The aggregate principal amount of Notes issued has been translated into U.S.$ at the rate of [        ], producing a sum of (for Notes not denominated in U.S.$): | U.S.$[         ] |

**The Security Arrangements**

| | | |
|---|---|---|
| 57 | Mortgaged Property | |
| | (i) Securities: | *[Give brief description of assets being secured: (N.B. If Listed Notes and securities are also listed, state type, pool size, legal jurisdiction, amount of Securities, method and date of origination and of acquisition by Issuer, name and address of originator, country of incorporation, nature of business, exchange on which Securities are listed, maturity, any guarantor). (N.B. If Listed Notes and Securities not listed or guaranteed by listed entity, attach full terms and conditions of Securities to Final Terms; additional information may also be required and the stock exchange should be consulted at an early stage.)]* |
| | (ii) Security (order of priorities): | *The Trustee shall apply all moneys received by it under the Trust Deed in connection with the realisation or enforcement of the Security constituted by the Trust Deed in the following order of priorities:* |
| | | [Swap Counterparty Priority/Swap Counterparty Priority (subject to adjustment on Swap Counterparty default)/*Pari Passu* Priority/Noteholder Priority/Other Priority] |
| | (iii) Swap (if applicable): | [Under an ISDA Master Agreement dated [•] and a confirmation thereto with an effective date of the Issue Date including any applicable guarantee, made between the Issuer and the Swap Counterparty, the Issuer will pay to the Swap Counterparty [[an amount equal to the net subscription moneys for the Notes payable to the Issuer] and sums equal to [interest and principal payable] in respect of the Securities and the Swap Counterparty will pay to the Issuer [an amount equal to the net sum payable by the Issuer for the purchase of the Securities and sums equal to the interest payable to the Noteholders under the Notes and the Redemption Amount]] [set out other/additional payment provisions]. Except as stated below, the Swap will terminate on the Maturity Date. |
| | | [The Swap may be terminated early, (either in whole or, in certain circumstances, in part only) among other circumstances |
| | | (i) on the due date for payment of the Notes if at any time any of the Notes becomes repayable in accordance |

A07840320/0.24/06 Aug 2007

|   |   |
|---|---|
|   | with the Conditions prior to the Maturity Date/on the date on which a date is set for redemption of the Notes if a date is set for redemption in accordance with the Conditions prior to the Maturity Date; |
| (ii) | at the option of one party, if there is a failure by the other party to pay any amounts due under the Swap; |
| (iii) | if (subject as provided in the Swap) withholding taxes are imposed on payments made by the Issuer or the Swap Counterparty under the Swap or it becomes illegal for either party to perform its obligations under the Swap (see "Transfer to avoid Termination Event" below); |
| (iv) | upon the occurrence of certain other events with respect to either party to the Swap, including insolvency. |

Consequences of Early Termination:    Upon any such early termination of the Swap, the Issuer or the Swap Counterparty may (subject as set out below and provided, in the case of certain tax events that the Issuer may first be obliged to use all reasonable endeavours to transfer its obligations) be liable to make a termination payment to the other (regardless, if applicable, of which of such parties may have caused such termination). [In circumstances where some or all of the Notes are required by a Noteholder to be redeemed by the Issuer pursuant to Condition 6(f), no termination payment will be due by either party to the other in respect of the termination, in whole or in part, as the case may be, of the Swap.

Such termination payment will [(other than [describe any circumstances where termination payments not calculated in accordance with ISDA or where a termination payment is not payable (e.g. on exercise of the put option pursuant to Condition 6(f) as to which, see wording in square brackets at end of previous paragraph))] be based on the replacement cost or gain for a swap transaction that would have the effect of preserving for the party making the determination the economic equivalent of the Swap. In all cases of early termination

occurring other than by reason of a default by the Swap Counterparty (in which case the determination will be made by the Issuer) or illegality (in which case the party which is not the Affected Party (as defined in the Swap) will make the determination (or, if there are two Affected Parties, each party will make a determination which will be averaged)), the termination payment will be determined by the Swap Counterparty on the basis of quotations received from at least three market-makers (failing which, by the Swap Counterparty or the Issuer, as aforesaid, based upon loss).

Regardless of which party makes the determination of the termination payment (if any), there is no assurance that the proceeds from the sale of the Securities plus or minus, as the case may be, such termination payment will be sufficient to repay the principal amount due to be paid in respect of the Notes and any other amounts in respect thereof that are due.]

*[Insert summary of further termination provisions]*

| | | |
|---|---|---|
| | Swap Counterparty(ies): | *[Give name(s) and address(es) of institutions]* |
| | Swap Guarantor (if applicable): | *[Give name and address of institution]* |
| (i) | Details of Credit Support Document (if applicable): | *[Give details and/or date and nature of agreement and any other relevant items]* |
| (ii) | Credit Support Provider: | *[Give name(s) and address(es) of institutions]* |

**Provisions relating to Redemption**

58   Call Option (Condition 6(e))    Applicable/Not Applicable]

*(If not applicable, delete the remaining sub-paragraphs of this paragraph 58)*

(i)   Optional Redemption Date(s):   [●]

(ii)  Early Redemption Amount(s) and method, if any, of calculation of such amount(s):   [●]

(iii) If redeemable in part:   [●]

   (a)   minimum nominal amount to be redeemed:   [●]

   (b)   maximum nominal amount to be redeemed:   [●]

(iv)  Description of any other Issuer's option:   [●]

(v)   Notice period (if other than as set out in the Conditions):   [●]

| | | | |
|---|---|---|---|
| 59 | Put Option: | | [Applicable/Not Applicable] |
| | | | *(If not applicable, delete the remaining sub-paragraphs of this paragraph 59)* |
| | (i) | Date(s) for Redemption by Noteholders: | [•] |
| | (ii) | Early Redemption Amount(s) upon redemption at option of Noteholders and method, if any, of calculation of such amount(s): | [•] |
| | (iii) | Noteholders' Option Period: | [•] |
| | (iv) | Description of any other Noteholders' option: | [•] |
| | (v) | Notice period (if other than as set out in the Conditions): | [•] |
| 60 | Repayable Assets: | | All Securities / Defaulting and/or repayable Securities only] |
| 61 | Final Redemption Amount: | | [Nominal amount / Other / See Appendix] |
| 62 | Early Redemption Amount | | |
| | (i) | Early Redemption Amount(s) payable on mandatory redemption (Condition 6(c)), redemption for taxation and other reasons (Condition 6(d)) or an event of default (Condition 10) and/or the method of calculating the same (if required or if different from that set out in the Conditions): | [•] *[Excess funds?]* |
| | (ii) | Unmatured Coupons to become void upon early redemption (Bearer Notes only) (Condition 7(f)): | [Yes/No/Not Applicable] |

**Listing and admission to trading application**

These Final Terms comprise the final terms required to list and have admitted to trading the issue of Notes described herein pursuant to the Multi Issuer Secured Obligation Programme.

**Responsibility**

The Issuer accepts responsibility for the information contained in these Final Terms. To the best of the knowledge and belief of the Issuer, having taken reasonable care to ensure that such is the case, the information in this Final Terms is in accordance with the facts and does not omit anything likely to affect the import of such information. [• has been extracted from •. The Issuer confirms that such information has been accurately reproduced and that, so far as it is aware, and is able to ascertain from information published by •, no facts have been omitted which would render the reproduced inaccurate or misleading.]

Acceptance on behalf of the Issuer of the terms of the
Final Terms

For and on behalf of

[Name of Issuer]]

By ..........................................

## PART B – OTHER INFORMATION

1 [Risk Factors

   *[Include any product specific risk factors which are not covered under "Risk Factors" in the Base Prospectus.]*

2 [Notification

   The *[Irish Financial Services Regulatory Authority]*, which is the Irish competent authority for the purpose of the Prospectus Directive, [has been requested to provide/has provided - include first alternative for an issue which is contemporaneous with the establishment or update of the Programme and the second alternative for subsequent issues] the *[include names of competent authorities of host Member States]* with a certificate of approval attesting that the Base Prospectus has been drawn up in accordance with the Prospectus Directive.]

3 [Interests of Natural and Legal Persons Involved in the [Issue/Offer]

   "Save as discussed in [*"Subscription and Sale"* in the Base Prospectus], so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer."]

4 [Reasons for the Offer, Estimated Net Proceeds and Total Expenses

   | | |
   |---|---|
   | Reasons for the offer | [●] |
   | | *(See "Use of Proceeds" wording in Base Prospectus.)* |
   | Estimated net proceeds: | [●] |
   | | *(If proceeds are intended for more than one use will need to split out and present in order of priority. If proceeds insufficient to fund all proposed uses state amount and sources of other funding.)* |
   | Estimated total expenses: | [●] *[Include breakdown of expenses]* ] |

5 [*Fixed Rate Notes only* – Yield

   | | |
   |---|---|
   | Indication of yield: | [●] |
   | | [As set out above, the] [The] yield is calculated at the Issue Date on the basis of the Issue Price. It is not an indication of future yield. ] |

6 [*Index-linked or other variable-linked Notes only* – Performance of Index/Formula/Other Variable, Explanation of Effect on Value of Investment and Associated Risks and Other Information concerning the Underlying

   *Need to include details of where past and future performance and volatility of the index/formula/other variable can be obtained. Where the underlying is an index need to include the name of the index and a description if composed by the Issuer and if the index is not composed by the Issuer need to include details of where the information about the index can be obtained. Where the underlying not and index need to include equivalent information*

7 [*Dual Currency Notes only* - PERFORMANCE OF RATE[S] OF EXCHANGE

A07840320/0.24/06 Aug 2007

*Need to include details of where past and future performance and volatility of the relevant rate[s] can be obtained.*

8  *[Alternative clearing system]*

[Any clearing system(s) other than Euroclear Bank S.A./N.V and Clearstream Banking Societe Anonyme and the relevant identification number(s):]    [Not Applicable/*give name(s), address(es) and number(s)*]

## SUBSCRIPTION AND SALE

Subject to the terms and on the conditions contained in the Programme Agreement the Notes will be offered on a continuous basis by the Issuers to Lehman Brothers International (Europe) and/or such dealer(s) (each a "Dealer") as may be appointed from time to time in respect of any Series of Notes pursuant to the Programme Agreement. The Notes may be resold at prevailing market prices, or at prices relating thereto, at the time of such resale, as determined by the relevant Dealer.

The name or names of the Dealer or Dealers with respect to the Notes, the Issue Price of the Notes and, if listed, any commissions payable in respect thereof will be specified in the relevant Final Terms.

The Notes have not been and will not be registered under the Securities Act and may not be offered or sold within the United States or to, or for the account or benefit of, U.S. persons, except in certain transactions exempt from the registration requirements of the Securities Act. Each Dealer has represented, warranted and agreed and each further Dealer appointed under the Programme will be required to represent, warrant and agree that, except as permitted by the Programme Agreement, it will not offer, sell or, in the case of Bearer Notes, deliver Notes of any identifiable Tranche (i) as part of their distribution at any time or (ii) otherwise until 40 days after the completion of the distribution of an identifiable tranche of which such Notes are a part (the "Distribution Compliance Period"), as determined and certified by the Issuing and Paying Agent to such Dealer (or, in the case of an identifiable tranche of Notes sold to or through more than one Dealer, by the lead manager in respect of that tranche to such Dealer), within the United States or to, or for the account or benefit of, U.S. persons, and it will have sent to each Dealer to which it sells Notes during the Distribution Compliance Period a confirmation or other notice setting out the restrictions on offers and sales of the Notes within the United States or to, or for the account or benefit of, U.S. persons. Terms used in this paragraph have the meanings given to them by Regulation S.

In addition, until 40 days after the commencement of the offering of any identifiable tranche of Notes, an offer or sale of Notes within the United States by any dealer not participating in the offering may violate the registration requirements of the Securities Act.

Bearer Notes are subject to U.S. tax law requirements and may not be offered, sold or delivered within the United States or its possessions or to a United States person, except in certain transactions permitted by U.S. tax regulations. Terms used in this paragraph have the meanings given to them by the U.S. Internal Revenue Code and regulations thereunder.

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a Relevant Member State), each Dealer has represented, warranted and agreed, and each further Dealer appointed under the Programme will be required to represent, warrant and agree, that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the Relevant Implementation Date) it has not made and will not make an offer of such Notes which are the subject of the offering contemplated by this prospectus as completed by the final terms in relation thereto to the public in that Relevant Member State except that it may, with effect from and including the Relevant Implementation Date, make an offer of such Notes to the public in that Relevant Member State:

(a)  if the final terms in relation to the Notes specify that an offer of those Notes may be made other than pursuant to Article 3(2) of the Prospectus Directive in that Relevant Member State (a "Non-Exempt Offer"), following the date of publication of a prospectus in relation to such Notes which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, provided that any such prospectus has (if necessary) subsequently been completed by the final terms contemplating such Non-exempt Offer, in accordance with the Prospectus Directive in the period beginning and ending on the dates specified in such prospectus or final terms, as applicable;

A07840320/0.24/06 Aug 2007

(b) at any time to legal entities which are authorised or regulated to operate in the financial markets or, if not so authorised or regulated, whose corporate purpose is solely to invest in securities;

(c) at any time to any legal entity which has two or more of (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than €43,000,000 and (3) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts;

(d) at any time to fewer than 100 natural or legal persons (other than qualified investors as defined in the Prospectus Directive) subject to obtaining the prior consent of the relevant Dealer or Dealers nominated by the Issuer for any such offer,

(e) at any time in any other circumstances falling within Article 3(2) of the Prospectus Directive,

provided that no such offer of Notes referred to in (b) to (e) above shall require the Issuer or any Dealer to publish a prospectus pursuant to Article 3 of the Prospectus Directive or supplement a prospectus pursuant to Article 16 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of Notes to the public" in relation to any Notes in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the Notes to be offered so as to enable an investor to decide to purchase or subscribe the Notes, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression Prospectus Directive means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

Each Dealer has represented, warranted and agreed that and each further Dealer appointed under the Programme will be required to represent, warrant and agree:

(i) in relation to any Notes which have a maturity of less than one year, (a) it is a person whose ordinary activities involve it in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of its business and (b) it has not offered or sold and will not offer or sell any Notes other than to persons whose ordinary activities involve them in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of their businesses or who it is reasonable to expect will acquire, hold, manage or dispose of investments (as principal or agent) for the purposes of their businesses where the issue of the Notes would otherwise constitute a contravention of section 19 of the Financial Services and Markets Act 2000 (the "FSMA");

(ii) it has only communicated or caused to be communicated and will only communicate or cause to be communicated any invitation or inducement to engage in investment activity (within the meaning of section 21 of the FSMA) received by it in connection with the issue or sale of any Notes in circumstances in which section 21(1) of the FSMA does not apply to the Issuer; and

(iii) it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to such Notes in, from or otherwise involving the United Kingdom.

Each Dealer has represented, warranted and agreed that and each further Dealer appointed under the Programme will be required to represent, warrant and agree:

(1) It has not and will not offer or sell any Notes other than in compliance with the Market Abuse (Directive 2003/6/EC) Regulations 2005 of Ireland and any rules issued under Section 34 of the Investment Funds, Companies and Miscellaneous Provisions Act 2005 of Ireland;

(2) To the extent applicable, it will not underwrite the issue of or place the Notes otherwise than in conformity with the provisions of the Irish Investment Intermediaries Act, 1995 (as amended), including, without limitation, Sections 9, 23 (including any advertising restrictions made thereunder)

A07840320/0.24/06 Aug 2007

and Section 37 (including any codes of conduct issued thereunder) and the provisions of the Irish Investor Compensation Act, 1998, including, without limitation, Section 21 thereof;

(3) No Notes will be offered or sold with a maturity of less than 12 months except in full compliance with the Irish Financial Services Regulatory Authority Notice BSD C 01/02;

(4) It will not underwrite the issue of, or place, Notes otherwise than in conformity with the provisions of the Central Bank Acts 1942 and 1999 (as amended) of Ireland and any codes of conduct rules made under Section 117(1) thereof; and

(5) It will not underwrite the issue of, or place, or do anything in Ireland in respect of any Notes otherwise than in conformity with the provisions of the Prospectus (Directive 2003/71/EC) Regulations 2005 of Ireland and any rules issued under Section 51 of the Investment Funds, Companies and Miscellaneous Provisions Act 2005 of Ireland.

The Notes are not offered to the public in or from Luxembourg and the Dealer has represented, warranted and agreed and each further Dealer appointed under the Programme will be required to represent, warrant and agree that it will not offer the Notes or cause the offering of the Notes or contribute to the offering of the Notes to the public in or from Luxembourg, unless all the relevant legal and regulatory requirements concerning a public offer in or from Luxembourg have been complied with. In particular, this offer has not been and may not be announced to the public and offering material may not be made available to the public.

The proposed offer of Notes has not been registered with the Comision Nacional del Mercado de Valores (the "CNMV") in Spain. Accordingly, the Dealer has represented, warranted and agreed and each further Dealer appointed under the Programme will be required to represent, warrant and agree that it will only offer securities with a nominal value each of at least €50,000, pursuant to and in accordance with Law 24/1988, as amended, Royal Decree 1310/2005 and any regulation issued thereunder.

Each Dealer has agreed that no offering of Notes or distribution of any offering materials relating to the Notes will be made in Italy unless the requirements of Italian law concerning the offering of securities have been complied with, including (i) the requirements of Article 94 and seq. of Legislative Decree no. 58 of 24th February, 1998 and CONSOB Regulation no. 11971 of 14th May, 1999, (ii) Article 129 of Legislative Decree No. 385 and the implementing instructions of the Bank of Italy (pursuant to which the issue, trading or placement of securities in Italy is subject to prior notification to the Bank of Italy, unless an exemption, depending, *inter alia*, on the amount of the issue and the characteristics of the securities, applies) and (iii) all other Italian securities, tax and exchange controls and any other applicable laws and regulations, all as amended from time to time.

The Obligations have not been and will not be registered under the Securities and Exchange Law of Japan (the "Securities and Exchange Law"). Accordingly, each of the Dealers has represented, warranted and agreed and each further Dealer appointed under the Programme will be required to represent, warrant and agree that it has not, directly or indirectly, offered or sold and will not, directly or indirectly, offer or sell any Obligations in Japan or to, or for the benefit of, a resident of Japan (which term as used herein means any person resident in Japan, including any corporation or other entity organised under the laws of Japan) or to others for re-offering or re-sale, directly or indirectly in Japan or to, or for the benefit of any resident in Japan except pursuant to an exemption from the registration requirements of, and otherwise in compliance with the Securities and Exchange Law and other relevant laws and regulations of Japan and each further Dealer appointed under the Programme will be required to represent, warrant and agree. These selling restrictions may be modified by the agreement of the Issuers and the Dealers following a change in a relevant law, regulation or directive. Any such modification will be set out in the relevant Final Terms or Obligation Documents issued in respect of the issue of Obligations to which it relates.

No representation is made that any action has been taken in any jurisdiction that would permit a public offering of any of the Obligations, or possession or distribution of this Base Prospectus, any other Specified

Company Base Prospectus or any Final Terms or any other offering material, in any country or jurisdiction where action for that purpose is required.

Each Dealer has agreed that it will, to the best of its knowledge, comply with all relevant laws, regulations and directives in each jurisdiction in which it purchases, offers, sells or delivers Obligations or has in its possession or distributes this Base Prospectus, any other Specified Company Base Prospectus or any Final Terms or any other offering material and neither the Issuers nor any other Dealer shall have responsibility therefor.