## EXHIBIT B

Dated 10 October 2002
as Amended and Restated on 20 July 2007

## DANTE FINANCE PUBLIC LIMITED COMPANY
an Issuer

and

## BNY CORPORATE TRUSTEE SERVICES LIMITED
as Trustee

# PRINCIPAL TRUST DEED

relating to
Multi-Issuer Secured Obligation Programme
arranged by
## LEHMAN BROTHERS INTERNATIONAL (EUROPE)

Linklaters

Ref: 01/200/MWAF/JZD

Linklaters LLP

**This Principal Trust Deed** was originally made on 10 October 2002 and is amended and restated on 20 July 2007 between:

(1)    **Dante Finance Public Limited Company** (an "Issuer"); and

(2)    **BNY Corporate Trustee Services Limited** (the "**Trustee**", which expression, where the context so admits, includes any other trustee for the time being of this Principal Trust Deed for any Series).

**Whereas:**

(A)    The Issuer (as defined in Schedule 7) proposes to issue from time to time secured notes to borrow, buy, sell or enter into other secured obligations in the form of loans, options, schuldscheine or swaps in accordance with the Programme Agreement (the "**Programme**").

(B)    A trust deed dated 10 October 2002 (the "**Original Principal Trust Deed**") was entered into by the parties thereto (the "**Parties**"). The Parties wish to amend and restate the Original Principal Trust Deed by entering into this amended and restated principal trust deed dated 20 July 2007 (the "**Principal Trust Deed**").

(C)    The Trustee has agreed to act as trustee of this Principal Trust Deed on the following terms and conditions.

(D)    Each Series will be constituted and secured by a Supplemental Trust Deed and any Other Security Document made between the relevant Issuer, the Trustee and (if applicable) the Swap Counterparty.

(E)    It is intended that certain companies (each a "**Specified Company**") may incur Obligations pursuant to the Programme. Pursuant to the provisions of this Principal Trust Deed, any such Specified Company, by executing a Deed of Accession will agree to be bound by all the terms of this Principal Trust Deed and any other document executed in accordance with this Principal Trust Deed, and from and after execution and delivery of such Deed of Accession such Specified Company shall become and be treated as an "Issuer" for all the purposes hereof. References herein to the "Issuer" are references to the relevant Specified Company (including Dante Finance Public Limited Company) only in respect of the Notes issued by it and only in respect of the Master Documents (as defined in Schedule 7) to the extent that the Master Documents are applicable in respect of Notes issued by it, all in accordance with sub-Clauses 2.7 and 2.8, the terms of the other Master Documents and the relevant Supplemental Trust Deed.

(F)    The Trustee, being of the opinion that to do so is not materially prejudicial to the interests of the Noteholders, hereby agrees in exercise of the power conferred on it by sub-Clause 13.1 of the Original Principal Trust Deed to make the amendments to the Original Principal Trust Deed contained herein.

A08068217

**This deed witnesses and it is declared** as follows:

1    **Interpretation**

    1.1    **Definitions:** Capitalised terms used in this Principal Trust Deed but not defined in this Principal Trust Deed shall have the meanings given to them in Schedule 7 hereto or in the Conditions unless the context does not allow.

    1.2    Construction of Certain References: References to:

        1.2.1    costs, charges, remuneration or expenses include any value added, turnover or similar tax charged in respect thereof; and

        1.2.2    an action, remedy or method of judicial proceedings for the enforcement of creditors' rights include references to the action, remedy or method of judicial proceedings in jurisdictions other than England as shall most nearly approximate thereto.

    1.3    **Headings:** Headings shall be ignored in construing this Principal Trust Deed.

    1.4    **Contracts:** References in this Principal Trust Deed to this Principal Trust Deed or any other document are to this Principal Trust Deed or those documents as amended, supplemented or replaced from time to time in relation to the Programme and include any document that amends, supplements or replaces them.

    1.5    **Schedules:** The Schedules are part of this Principal Trust Deed and have effect accordingly.

    1.6    **Alternative Clearing System:** References in this Principal Trust Deed to Euroclear and/or Clearstream, Luxembourg shall, wherever the context so permits, be deemed to include reference to any additional or alternative clearing system approved by the Issuer, the Trustee and the Issuing and Paying Agent.

2    **Issue of Notes and Covenant to Pay**

    2.1    **Issue of Notes:** Each Issuer may from time to time issue Notes in Tranches of one or more Series on a continuous basis with no minimum issue size in accordance with the relevant Programme Agreement. Before issuing any such Tranche, each Issuer shall give written notice or procure that such notice is given to the Trustee of the proposed issue of such Tranche, specifying the details to be included in the Final Terms or Series Prospectus in respect of the relevant Series. For each Series, any Notes created and issued pursuant to the provisions of this Clause shall be constituted by this Principal Trust Deed and the relevant Supplemental Trust Deed and secured as set out in this Principal Trust Deed and such Supplemental Trust Deed and the relevant Issuer shall execute and deliver to the Trustee in respect of each Series such a

Supplemental Trust Deed (if applicable, duly stamped or denoted) containing such provisions as the Trustee shall require. A memorandum of every Supplemental Trust Deed shall be endorsed by the Trustee on Schedule 5 to this Principal Trust Deed and by the relevant Issuer on the duplicate of this Principal Trust Deed.

2.2    **Separate Series:** Where any Notes are issued, unless for any purposes the Trustee in its absolute discretion shall determine otherwise, all the provisions of this Principal Trust Deed shall apply separately to each Series and the expressions **"Notes"**, **"Noteholders"**, **"holders"**, **"Coupons"**, **"Conditions"**, **"Mortgaged Property"**, **"Receipts"**, **"Talons"**, **"Credit Support Document"** (as defined in the relevant Prospectus), **"Credit Enhancement Provider"**, **"Swap Agreement"** and **"Swap Counterparty"** together with all other terms that relate to Notes or to their Conditions shall be construed as referring to those of the particular Series in question and not of all Series unless expressly so provided, so that each Series shall be constituted by a separate trust and that, unless expressly provided, events affecting one Series shall not affect any other. However, in respect of a Series of Notes where there are Related Notes, unless for any purpose the Trustee in its absolute discretion shall determine otherwise, all the provisions of this Principal Trust Deed shall apply to such Notes and Related Notes together and *mutatis mutandis* (save for the provisions relating to the expressions, **"Noteholders"**, **"Certificates"**, **"Receipts"**, **"Coupons"**, **"Couponholders"** and **"Talons"**) and in respect of such Notes and Related Notes, the expressions **"Mortgaged Property"**, **"Credit Support Document"**, **"Credit Enhancement Provider"**, **"Swap Counterparty"** and **"Swap Agreement"** shall be construed as referring to both and each of the Notes and Related Notes unless expressly otherwise provided so that the Notes and Related Notes shall be constituted by a single trust and unless expressly provided, events affecting the Notes and Related Notes shall not affect any Series of Notes which are not Related Notes.

2.3    **Covenant to Pay:** The relevant Issuer shall on any date when the Notes of any Series become due to be redeemed, in whole or in part, unconditionally pay to or to the order of the Trustee to that Series in the Contractual Currency, in the case of any Contractual Currency other than euro,  in the principal financial centre for the Contractual Currency and, in the case of euro, in the city in which banks have access to the TARGET system, in same day funds the Redemption Amount of the Notes of that Series becoming due for redemption on that date together with any applicable premium and shall (subject to the Conditions) until such payment (both before and after judgment) unconditionally so pay to or to the order of the Trustee as

aforesaid interest on the principal amount of the Notes of such Series outstanding as set out in the Conditions (subject to sub-Clause 2.6) provided that (1) payment of any sum due in respect of the Notes of such Series made to the Issuing and Paying Agent for that Series as provided in the Agency Agreement shall, to that extent, satisfy such obligation except to the extent that there is failure in its subsequent payment to the relevant Noteholders or Couponholders of such Series under the Conditions and (2) a payment made after the due date or as a result of the Notes of such Series becoming repayable following an Event of Default shall be deemed to have been made when the full amount due has been received by the Issuing and Paying Agent or the Trustee for that Series and notice to that effect has been given to the Noteholders for that Series (if required under sub-Clause 7.1.8), except to the extent that there is failure in its subsequent payment to the relevant Noteholders or Couponholders under the Conditions. The Trustee will upon execution of the relevant Supplemental Trust Deed hold the benefit of this covenant on trust for the Noteholders and Couponholders of the relevant Series.

2.4    **Discharge:** Subject to sub-Clause 2.5, any payment to be made in respect of the Notes, Receipts or the Coupons of any Series by the relevant Issuer or the Trustee for that Series may be made as provided in the Conditions and any payment so made shall (subject to sub-Clause 2.5) to that extent be a good discharge to the relevant Issuer or the Trustee, as the case may be.

2.5    **Payment After a Default:** At any time after an Event of Default or a Potential Event of Default has occurred in respect of any Series, the Trustee may:

2.5.1    by notice in writing to the relevant Issuer and the Agents, require the Agents, until notified by the Trustee to the contrary, so far as permitted by applicable law:

(i)    to act as Agents of the Trustee under the Trust Deed and the Notes of such Series on the terms of the Agency Agreement or, in the case of the Custodian, the Custody Agreement (in each case, with consequential amendments as necessary and except that the Trustee's liability for the indemnification, remuneration and expenses of the Agents shall be limited to the amounts for the time being held by the Trustee in respect of such Series on the terms of the Trust Deed) and thereafter to hold all Notes, Certificates, Receipts, Coupons and Talons comprising such Series and, in the case of the Custodian, the

Collateral and all moneys, documents and records held by them in respect of such Series to the order of the Trustee or

   (ii)   to deliver all Notes, Certificates, Receipts, Coupons and Talons comprising such Series and, in the case of the Custodian, the Collateral and all moneys, documents and records held by them in respect of such Series to the Trustee or as the Trustee directs in such notice; and

2.5.2   by notice in writing to the relevant Issuer require it to make all subsequent payments in respect of the Notes, Certificates, Receipts, Coupons and Talons of such Series to or to the order of the Trustee and not to the Issuing and Paying Agent.

**2.6**   **Rate of Interest After a Default**: If the Notes comprising any Series bear interest at a floating or other variable rate and they become immediately payable under the Conditions, the rate of interest payable in respect of them shall continue to be calculated by the Calculation Agent in accordance with the Conditions (with consequential amendments as necessary) except that the rates of interest need not be published unless the Trustee otherwise requires. The first period in respect of which interest shall be so calculable shall commence on the expiry of the Interest Period (as defined in the relevant Prospectus) during which such Notes become so repayable.

**2.7**   **Issues of Notes by Specified Companies**: On or prior to the issue of any Series by a Specified Company other than Dante Finance Public Limited Company, such Specified Company will execute a Supplemental Trust Deed pursuant to which such Specified Company will agree to be bound by all the terms of this Principal Trust Deed and all Related Agreements, and from and after execution and delivery of such Supplemental Trust Deed such Specified Company shall become and be treated as an "**Issuer**" for all the purposes hereof. References herein to the "**Issuer**" are references to the Specified Company in respect of any Series (including Dante Finance Public Limited Company) only in respect of the Notes of such Series issued by it and only in respect of this Principal Trust Deed to the extent that this Principal Trust Deed is applicable in respect of such Notes issued by it, all in accordance with the terms of this Principal Trust Deed and the relevant Supplemental Trust Deed. (For the avoidance of doubt, any issue of any Series by any Specified Company (including Dante Finance Public Limited Company) will be constituted by this Principal Trust Deed and the relevant Supplemental Trust Deed.)

**2.8**   **Rights and Liabilities of the Issuer**: The Issuer shall be bound by this Principal Trust Deed and each of the other Master Documents and Related

Agreements to which it is a party only to the extent that the provisions of such documents relate to any Series of Notes issued by it and matters relating thereto. The Issuer shall not be bound by this Principal Trust Deed or any of the Master Documents and other Related Agreements to which it is a party to the extent that the provisions of such documents relate to any Series of Notes issued by any other Specified Company.

The liability of the Issuer under this Principal Trust Deed and each of the Master Documents and Related Agreements to which it is a party is several and is separate in respect of each Series of Notes issued by the Issuer. The Issuer shall not be responsible for the obligations of any other Specified Company under this Principal Trust Deed or under any of the Master Documents or other Related Agreements. The failure of the Issuer to perform its obligations in respect of any Series issued by the Issuer under this Principal Trust Deed or under any of the Master Documents and Related Agreements to which it is a party shall not release the Issuer from its obligations under this Principal Trust Deed or under any of the Master Documents or other Related Agreements in respect of any other Series issued by the Issuer and shall not release any other Specified Company from its obligations under this Principal Trust Deed or under any of the Master Documents or other Related Agreements. No Specified Company has any obligations in respect of Notes of the Series issued by any other Specified Company. The rights of the Specified Companies under this Principal Trust Deed and each of the Master Documents or other Related Agreements are also several and are also separate in respect of each Series of Notes issued by any such Specified Company.

The provisions in this Principal Trust Deed concerning costs, expenses, fees, remuneration and other financial obligations (whether arising under indemnities or otherwise) shall apply separately to each Series of Notes in respect of the costs, expenses, fees, remuneration and financial obligations which arise in respect of such Series of Notes. No such amount incurred in respect of any Series of Notes will be deducted from any amount payable to Noteholders or Couponholders, as the case may be, in respect of any other Series of Notes nor will any such amount be in any other way charged to any other such holders. The provisions of this Principal Trust Deed shall be read accordingly.

## 3   Form of the Notes

3.1   **The Global Notes:** Each Series of Notes shall be represented by a Temporary Global Note or a Permanent Global Note (together "**Global Notes**") or one or more Certificates in the principal amount of the Tranche being issued.

Interests in Temporary Global Notes shall be exchangeable for interests in Permanent Global Notes as set out in each Temporary Global Note. Interests in Permanent Global Notes shall be exchangeable for Definitive Notes and/or Registered Notes as set out in each Permanent Global Note.

3.2    **The Definitive Notes:** For each Series, the Definitive Notes, Receipts, Coupons and Talons shall be security printed and the Certificates shall be printed, in each case in accordance with applicable legal and stock exchange requirements substantially in the forms set out in Schedule 2. The Notes and Certificates (other than Global Certificates) shall be endorsed with the Conditions.

3.3    **Signature:** For each Series the Bearer Notes shall be signed manually or in facsimile by two directors of the Issuer and all other Notes and Certificates may be signed by an authorised signatory of the Issuer. Notes shall be authenticated by or on behalf of the Issuing and Paying Agent and Certificates shall be authenticated by or on behalf of the Registrar. Notes and Certificates on which are affixed the facsimile signature of a director or authorised signatory of the Issuer during the period that director held office or that authorised signatory was an authorised signatory may be used, even if at the time of issue of the relevant Notes and Certificates that director no longer holds office or that  authorised signatory is no longer an authorised signatory. Notes and Certificates so executed and authenticated shall be or, in the case of Certificates, represent binding and valid obligations of the Issuer.

4    **Stamp Duties and Taxes**

For each Series the Issuer shall pay any stamp, issue, documentary or other taxes and duties, including interest and penalties, payable in the jurisdiction of incorporation of the Specified Company, Belgium, Luxembourg, the United Kingdom and the country of each Contractual Currency in respect of the creation, issue and offering of the Notes, Certificates, Receipts, Coupons and Talons of that Series and the execution or delivery of the Trust Deed. The Issuer shall also indemnify the Trustee, the Noteholders and the Couponholders of each Series from and against all stamp, issue, documentary or other taxes paid by any of them in any jurisdiction in connection with any action taken by or on behalf of the Trustee or, as the case may be, the Noteholders or the Couponholders to enforce the Issuer's obligations under the Trust Deed or the Notes, Certificates, Receipts, Coupons or Talons of such Series.

5    **Security**

This Clause 5 shall apply separately to the security for each Series, save as varied in respect of any Series by the relevant Supplemental Trust Deed.

5.1    **The Mortgaged Property:** The Issuer with full title guarantee and as continuing security grants in favour of the Trustee such charge and/or security interest as set out in the relevant Supplemental Trust Deed in respect of the relevant Series.

5.2    **Mortgaged Property as Continuing Security:** For each Series, the charges and/or security interest created pursuant to sub-Clause 5.1 are granted to the Trustee as continuing security (i) for the payment of all sums due under the Trust Deed and the Notes and the Coupons of such Series, and (ii) for the performance of the Issuer's obligations (if any) under certain agreements as set out in the relevant Supplemental Trust Deed in respect of such Series. The Trustee shall release from such charges any part of the Mortgaged Property when it becomes payable or deliverable to the extent that payment or delivery of it may be obtained and duly paid or made (as the case may be) to a Swap Counterparty under a Swap Agreement and/or to the holders of Notes, Coupons and Receipts.  The Trustee shall also release from the charges thereby granted any sum held by the Custodian and/or the Account Bank and/or Issuing and Paying Agent and/or the Registrar to meet payments due in respect of the Notes to the extent that payment of all sums due under the Trust Deed and the Notes and Coupons of the relevant Series be duly made.

5.3    **Liability in respect of Mortgaged Property:** For each Series, the Trustee shall not be responsible for, nor shall it have any liability with respect to any loss or theft or reduction in value of any of the Mortgaged Property and shall not be obliged to insure the same and shall have no responsibility or liability arising from the fact that the same will (if applicable) be held in safe custody by the Custodian or other custodian approved beforehand in writing by the Trustee. The Trustee shall not be responsible for the validity, value, sufficiency and enforceability (which the Trustee has not investigated) of the security created over the Mortgaged Property for that Series.

5.4    **Rights of the Issuer:** For each Series until any security over any of the Mortgaged Property becomes enforceable the Issuer may, with the sanction of an Extraordinary Resolution (or, in respect of a Series of Notes where there are Related Notes, a direction by Extraordinary Resolution of the holders of the Controlling Series) or with the prior written approval of the Trustee:

5.4.1    take such action in relation to the Mortgaged Property as it may think expedient; and

5.4.2    exercise the rights incidental to the ownership of the Mortgaged Property and, in particular (but without limitation and without responsibility for their exercise); any voting rights in respect of such property and all rights to enforce it.

The Issuer will not exercise any rights with respect to any Mortgaged Property unless it has the Trustee's consent or is directed to do so by an Extraordinary Resolution of Noteholders (or, in respect of a Series of Notes where there are Related Notes, a direction by Extraordinary Resolution of the holders of the Controlling Series) and, if such direction or consent is given, the Issuer will act only in accordance with such direction or consent.

5.5 **Enforcement of Security:** For each Series, the security over the Mortgaged Property shall become enforceable if (i) any amount due in respect of the Notes is not paid or delivered when due or (ii) a Swap Agreement terminates with sums due to the Swap Counterparty. In addition, if part of the principal amount of the Notes of such Series is mandatorily redeemed under Condition 6(c), the security created over that part of the Mortgaged Property which relates to such Notes and with respect to any part of a Swap Agreement to that Series which terminates as a result of such redemption shall become enforceable. In that event references herein to the Trustee exercising powers of enforcement of such security shall be read accordingly. If, in respect of a Series of Notes where there are Related Notes, the security in respect of the Notes becomes enforceable, the Trustee shall, if in its opinion there is a conflict of interest between its duties as trustee for the Noteholders and as trustee for the holders of the relevant Related Notes, act solely with respect to the interests of the Controlling Series.

5.6 **Trustee taking possession of Mortgaged Property:** At any time after any security in relation to any Series of Notes shall have become enforceable in whole or in part, (i) if requested in writing by the holders of at least one-fifth in aggregate principal amount of the relevant Notes (or, in respect of a Series of Notes where there are Related Notes, if so required in writing by the holders of at least one fifth in aggregate principal amount of the Controlling Series) then outstanding or (ii) if directed by an Extraordinary Resolution of the holders of the Notes of such Series (or, in respect of a Series where there are Related Notes, a direction by Extraordinary Resolution of the holders of the Controlling Series) or (iii) if so directed in writing by the Swap Counterparty for such Series when sums the claims in respect of which are secured are due to the Swap Counterparty, (unless this would in the Trustee's opinion be contrary to the interests of the holders of Notes, Coupons or Receipts for that Series (whichever shall be the first request or direction to be given)), the Trustee shall, and otherwise in its discretion may, (in each case subject to it having been indemnified to its satisfaction against any loss, liability, cost, claim, action, demand or expense which may be incurred or made against it in connection therewith) enforce the security over the Mortgaged Property. To do this it may, at its discretion, take possession of all

or part of the Mortgaged Property for that Series over which the security shall have become enforceable and may in its discretion sell, call in, collect and convert into money all or part of the Mortgaged Property in such manner and on such terms as it shall think fit. The power of sale under Section 101 of the Law of Property Act 1925 (but without the restrictions imposed by Sections 93 and 103 of such Act) shall apply and have effect on the basis that the relevant Supplemental Trust Deed constitutes a mortgage within the meaning of that Act and the Trustee is a mortgagee exercising the power of sale conferred on mortgagees by that Act with limited title guarantee.

5.7    **Discharge:** For each Series the Trustee's receipt for any moneys paid to it in relation to such Series shall discharge the person paying them and such person shall not be responsible for their application.

5.8    **Appointment of Receiver:** In relation to any Series, the Trustee may in writing appoint a receiver of all or part of the Mortgaged Property over which any security shall have become enforceable and may remove any receiver so appointed and appoint another in his place. No delay or waiver of the right to exercise these powers shall prejudice their future exercise. The following provisions shall have effect:

5.8.1    Such appointment may be made before or after the Trustee shall have taken possession of all or part of the relevant Mortgaged Property.

5.8.2    Such receiver may be vested by the Trustee with such powers and discretions as the Trustee may think expedient including, without limitation, all the powers set out in Schedule 1 to the Insolvency Act 1986 (subject to sub-Clause 18.2) and may sell, concur in selling, assign or release any of the relevant Mortgaged Property without restriction and on such terms as he may think fit and may effect any such transaction in the name or on behalf of the Issuer or otherwise.

5.8.3    Such receiver shall in the exercise of his functions conform to the regulations from time to time made by the Trustee.

5.8.4    The Trustee may from time to time fix such receiver's remuneration and direct its payment out of moneys accruing to him in respect of such Series in the exercise of his powers as such receiver.

5.8.5    The Trustee may from time to time and at any time require such receiver to give security for the due performance of his duties as receiver and may fix the nature and amount of the security to be given. The Trustee need not, however, in any case require any such security nor shall it be responsible for its adequacy or sufficiency.

5.8.6    All moneys received by such receiver shall be paid over to the Trustee unless the Trustee directs otherwise.

5.8.7    Such receiver shall be the Issuer's agent for all purposes. The Issuer alone shall be responsible for his acts, defaults and misconduct and neither the Trustee, the Noteholders nor the Swap Counterparty for such Series shall incur any liability therefor.

5.8.8    None of the Trustee, the Noteholders or the Swap Counterparty for such Series shall be responsible for any misconduct or negligence on the part of any such receiver.

5.9    **Perfecting the Security:** For each Series the relevant Issuer shall take such action as the Trustee may reasonably require (1) to perfect or protect the security created or intended to be created by or pursuant to the Trust Deed over the Mortgaged Property for that Series and (2) from time to time and at any time after the security constituted by or pursuant to the Trust Deed shall have become enforceable to facilitate the realisation of such security and the exercise of the functions of the Trustee or any receiver of any such Mortgaged Property. A certificate from the Trustee to the effect that a particular action is reasonably required by it shall be conclusive evidence of that fact.

5.10    **Ability to Borrow on Mortgaged Property:** For each Series the Trustee may raise and borrow money on the security of the Mortgaged Property for that Series or any part of it in order to defray moneys, costs, charges, losses and expenses paid or incurred by it in relation to the Trust Deed (including the costs of realising any security and the remuneration of the Trustee) or in exercise of any of the powers contained in the Trust Deed in relation to such Series. The Trustee may raise and borrow such money on such terms as it shall think fit and may secure its repayment with interest thereon by mortgaging or otherwise charging all or part of such Mortgaged Property whether or not in priority to the security constituted by or pursuant to the Trust Deed and generally in such manner and form as the Trustee shall think fit and for such purposes may take such action as it shall think fit. The Trustee shall not, however, permit such security to be used by way of stocklending before such security becomes enforceable.

5.11    **Attorney:** For each Series the relevant Issuer by way of security irrevocably appoints the Trustee and every receiver of any Mortgaged Property appointed pursuant to this Principal Trust Deed to be severally its attorney (with full power of substitution) on its behalf and in its name to do anything which the Issuer ought to do under this Principal Trust Deed and generally to exercise all or any of the functions of the Trustee or any such receiver. The relevant

Issuer ratifies and confirms and agrees to ratify and confirm whatever any such attorney shall do or purport to do in the exercise or purported exercise of such functions.

5.12    **Liability of Trustee:** For each Series neither the Trustee nor any such receiver or any attorney or agent of the Trustee shall by reason of taking possession of any Mortgaged Property for that Series or any other reason and whether or not as mortgagee in possession be liable to account for anything except actual receipts or be liable for any loss or damage arising from the realisation of such Mortgaged Property or from any act, default or omission in relation to such Mortgaged Property or from any exercise or non-exercise by it of any of its powers, authorities or discretions in relation to such Mortgaged Property or otherwise unless such loss or damage shall be caused by its own fraud.

5.13    **Powers additional to the Law of Property Act 1925:** The powers conferred by this Principal Trust Deed in relation to the Mortgaged Property of any Series on the Trustee or on any receiver of any such property shall be in addition to those conferred on mortgagees or receivers under the Law of Property Act 1925. If there is any ambiguity or conflict between the powers contained in such Act and those conferred by this Principal Trust Deed, the terms of this Principal Trust Deed shall prevail.

5.14    **Dealings with Trustee:** For each Series no one dealing with the Trustee or any receiver of any of the Mortgaged Property for that Series appointed by the Trustee need enquire whether any of the powers, authorities and discretions conferred by or pursuant to this Principal Trust Deed in relation to such property are or may be exercisable by the Trustee or such receiver or as to the propriety or regularity of acts purporting or intended to be in exercise of any such powers. The protection to purchasers contained in Sections 104 and 107 of the Law of Property Act 1925 shall apply to anyone dealing with the Trustee or such receiver as if the statutory powers of sale and of appointing a receiver in relation to the property hereby charged had not been varied or extended by this Principal Trust Deed.

6    **Application of Moneys received by the Trustee and Payments**

6.1    **Declarations of Trust:** For each Series, save for any moneys received in connection with the realisation or enforcement of all or part of the security constituted by or pursuant to the Supplemental Trust Deed or any other Security Document in relation to that Series, all moneys received by the Trustee in respect of the Notes of that Series or amounts payable under the Trust Deed in relation to that Series will, despite any appropriation of all or

part of them by the Issuer, be held by the Trustee on trust to apply them (subject to sub-Clause 6.3):

(i)    first, in payment of all costs, charges, expenses and liabilities properly incurred by the Trustee (including remuneration payable to it) in carrying out its functions under the Trust Deed in relation to that Series;

(ii)    secondly, in payment of any amounts owing to the Swap Counterparty for that Series, the Custodian or the Noteholders or Couponholders in respect of the Notes or Coupons for that Series *pari passu* and rateably; and

(iii)    thirdly, in payment of any balance to the Issuer for itself.

If the Trustee holds any moneys in respect of Notes or Coupons which have become void or Notes, the claims in respect of which have become prescribed under Condition 9, the Trustee will hold them on these trusts.

6.2    **Application of Moneys Received:** Subject to the provisions of each relevant Supplemental Trust Deed and sub-Clause 6.3, the Trustee shall apply all moneys received by it under this Principal Trust Deed and the relevant Supplemental Trust Deed in connection with the realisation or enforcement of the security constituted thereby and by any Other Security Document as follows:

(i)    if "**Swap Counterparty Priority**" is specified in the relevant Supplemental Trust Deed:

(A)    first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

(b)    secondly, in meeting claims of the Paying Agents and/or the Transfer Agents and/or the Custodian and/or the Account Bank for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

(C)    thirdly, rateably in meeting the claims (if any) of the Swap Counterparty under each Swap Agreement;

(D)    fourthly, rateably in meeting the claims (if any) of the holders of Notes, Coupons and Receipts. If the moneys received by the Trustee are not enough to pay such amounts

in full, the Trustee shall apply them *pro rata* on the basis of the amount due to each party entitled to such payment; and

(E)    fifthly, in payment of the balance (if any) to the Issuer,

provided that, if the "Swap Counterparty Priority" is expressed in the relevant Supplemental Trust Deed and Final Terms or Series Prospectus to be subject to adjustment on a Swap Counterparty default, and if and to the extent that the Swap Counterparty fails to make payments due to the Issuer under any Swap Agreement and the Issuer promptly notifies the Trustee in writing of any such failure (which notice shall be conclusive and binding), the above application of moneys shall be amended so that the claims of the Swap Counterparty will, to the extent that there has been such failure, rank after the claims (if any) of the holders of Notes, Coupons and Receipts and before the claims of the Issuer in relation to the balance (if any).

(ii)    if "**Pari Passu Ranking**" is specified in the relevant Supplement Trust Deed;

(A)    first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

(B)    secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Transfer Agents and/or the Account Bank for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

(C)    thirdly, rateably in meeting the claims (if any) of the holders of Notes, Coupons and Receipts and the Swap Counterparty under each Swap Agreement. If the moneys received by the Trustee are not enough to pay such amounts in full, the Trustee shall apply them *pro rata* on the basis of the amount due to each party entitled to such payment;

(D)    fourthly, in payment of the balance (if any) to the Issuer.

(iii)    if "**Noteholder Priority**" is specified in the relevant Supplemental Trust Deed:

(A)    first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any

receiver in preparing and executing the trusts in the Trust
Deed (including any taxes required to be paid, the costs of
realising any security and the Trustee's remuneration);

(B)    secondly, in meeting claims of the Paying Agents and/or the
Custodian and/or the Transfer Agents and/or the Account
Bank for reimbursement in respect of payments properly
made to any person in discharge of an Obligation;

(C)    thirdly, rateably in meeting the claims (if any) of the holders
of Notes, Coupons and Receipts. If the moneys received by
the Trustee are not enough to pay such amounts in full, the
Trustee shall apply them *pro rata* on the basis of the amount
due to each party entitled to such payment;

(D)    fourthly, in meeting the claims (if any) of the Swap
Counterparty under each Swap Agreement; and

(E)    fifthly, in payment of the balance (if any) to the Issuer.

(iv)    if **"Other Priority"** is specified in the relevant Supplemental Trust
Deed and Final Terms or Series Prospectus, the Trustee shall apply
all moneys received by it under the provisions of the Principal Trust
Deed and the relevant Supplemental Trust Deed in connection with
the realisation or enforcement of the security constituted thereby, as
set out in the relevant Supplemental Trust Deed and Final Terms or
Series Prospectus.

6.3    **Accumulation:** If the amount of the moneys at any time available for
payment in respect of any Notes of any Series under sub-Clause 6.1 or 6.2
shall be less than 10 per cent. of the principal amount of such Notes then
outstanding, the Trustee may at its discretion invest such moneys. The
Trustee may retain such investments and accumulate the resulting income
until the investments and the accumulations, together with any other funds
for the time being under its control and available for such payment, amount
to at least 10 per cent. of the principal amount of such Notes then outstanding
and then such investments, accumulations and funds (after deduction of, or
provision for, any applicable taxes) will be applied as specified in sub-Clause
6.1 or 6.2, as the case may be.

6.4    **Investment:** Moneys held by the Trustee may be invested in its name or
under its control in any investments or other assets for the time being
authorised by English law for the investment by trustees of trust moneys or in
any other investments, whether or not similar thereto, which may be selected
by the Trustee **provided that** all such investments made by the Trustee shall

be in investments denominated in the currency of such Series and, at the time of investment, in respect of each Series rated by Standard & Poor's, rated AAA by Standard & Poor's or in respect of each Series rated by Moody's, rated Aaa by Moody's (in the case of long-term investments of more than one year), A1+ by Standard & Poor's or P-1 by Moody's, as the case may be, (in the case of short-term investments of one year or less) or such alternative rating as may be advised by Standard & Poor's or Moody's, as the case may be, as being acceptable for being commensurate with the rating assigned to such Series or by placing the same on deposit in the name or under the control of the Trustee at a bank or other financial institution, including itself, if appropriate, **provided that** such bank or other financial institution shall, at the time of investment, be rated at least A1+ by Standard & Poor's or P-1 by Moody's, as the case may be. If that bank or institution is the Trustee or a subsidiary, holding or associated company of the Trustee, it need only account for an amount of interest equal to the standard amount of interest payable by it on such a deposit to an independent customer. The Trustee may at any time or times vary any such investments for or into other investments or convert any moneys so deposited into any other currency and shall not be responsible for any loss due to depreciation in value, fluctuations in exchange rates or otherwise resulting from any such investments or deposits. For the avoidance of doubt in this sub-Clause 6.4, any rating which has an "r" will not be acceptable.

6.5  **Cancellation upon Payment:** If any payment is made to the holder of any Bearer Note, Receipt or Coupon in relation to any Series in accordance with the order set out in sub-Clause 6.1 or 6.2 (and the corresponding provision in the relevant Supplemental Trust Deed), the Bearer Note, Receipt or Coupon in respect of which such payment is made shall be produced to the Trustee or the Agent by or through whom such payment is made who shall, in the case of a partial payment, cause the Bearer Note, Receipt or Coupon concerned to be endorsed with details of the amount and date of payment on such Bearer Note, Receipt or Coupon and, in the case of payment in full, cancel such Bearer Note, Receipt or Coupon and surrender it to the Issuer or the Trustee, as the case may be, and certify or procure the certification of such cancellation.

7  **Covenants**

7.1  **Issuer's Covenants:** So long as any Note is outstanding, the Issuer shall:

7.1.1  **Books of Account:** keep proper books of account and, at any time after an Event of Default or Potential Event of Default has occurred or if the Trustee believes that such an event has occurred, so far as

permitted by applicable law, allow the Trustee and anyone appointed by it to whom the Issuer has no reasonable objection, access to its books of account at all reasonable times during normal business hours;

7.1.2    **Notice of Events of Default:** notify the Trustee in writing immediately on becoming aware of the occurrence of any Event of Default or Potential Event of Default;

7.1.3    **Information:** so far as permitted by applicable law, give the Trustee such information as it requires to perform its functions;

7.1.4    **Financial Statements etc.:** send to the Trustee at the time of their issue and in the case of annual financial statements in any event within 180 days of the end of each financial year two copies in English of every balance sheet, profit and loss account, report or other notice, statement or circular issued (if any), or that legally or contractually should be issued, to the members or creditors (or any class of them) of the Issuer generally in their capacity as such;

7.1.5    **Certificate of Directors:** send to the Trustee on each anniversary of the date of this Principal Trust Deed, and also within 14 days of any request by the Trustee a certificate of the Issuer signed on its behalf by any two of its Directors that, having made all reasonable enquiries, to the best of the knowledge, information and belief of the Issuer as at a date (the "**Certification Date**") not more than five days before the date of the certificate no Event of Default or Potential Event of Default or other breach of this Principal Trust Deed or other matter required to be brought to the Trustee's attention had occurred since the Certification Date of the last such certificate or (if none) the date of this Principal Trust Deed or, if such an event had occurred, giving details of it;

7.1.6    **Notices to Noteholders:** for each Series send to the relevant Trustee the form of each notice to be given to Noteholders and, once given, two copies of each such notice, such notice to be in a form previously approved by the Trustee (such approval, unless so expressed, not to constitute approval for the purposes of Section 21 of the Financial Services and Markets Act 2000 of any such notice which is a communication within the meaning of Section 21 of the Financial Services and Markets Act 2000);

7.1.7    **Further Acts:** so far as permitted by applicable law, do such further things as may be necessary in the opinion of the Trustee to give

effect to this Principal Trust Deed and each Supplemental Trust Deed;

7.1.8    **Notice of Late Payment:** forthwith upon request by the Trustee give notice to the Noteholders of any Series of any unconditional payment to the Issuing and Paying Agent or the Trustee of any sum due in respect of the Notes, the Receipts or Coupons of such Series made after the due date for such payment;

7.1.9    **Listing and Trading:** if the Notes are listed and/or admitted to trading, use all reasonable endeavours to maintain the listing of the Notes on the relevant stock exchange and/or the admission of the Notes to trading on the relevant market, however, if:

(i)    the Issuer is unable to do so, having used such endeavours;

(ii)    the Issuer determines that the provisions of the EU Transparency Obligations Directive would make the maintenance of such listing and/or admission to trading unduly onerous; or

(iii)    for any reason other than (ii) above, the maintenance of such listing and/or admission to trading is agreed by the Trustee to be unduly onerous and the Trustee is satisfied that the interests of the Noteholders would not be thereby materially prejudiced,

the Issuer will instead use all reasonable endeavours to obtain and maintain a listing of the Notes on such other stock exchange and/or admission of the Notes to trading on such other market as it may (with the consent in writing of the Trustee, in the case of (i) and (iii) above) decide.

7.1.10    **Change in Agents:** give at least 14 days' prior notice to the relevant Noteholders of any future appointment, resignation or removal of an Agent or of any change by an Agent of its specified office and not make any such appointment or removal without the Trustee's prior written approval;

7.1.11    **Agency Agreement:** comply with its obligations under the Agency Agreement executed in relation to any Series and, without prejudice to the generality of the foregoing, at all times maintain an Agent and (where relevant) a Custodian and, in respect of a Series of Registered Notes, a Registrar and a Transfer Agent and, where appropriate, a Calculation Agent in respect of such Series in each case as specified in the Conditions;

7.1.12    **Notice of Redemption:** give, in respect of any Note, notice of not less than 14 days more than the number of days' notice specified in the Conditions applicable to such Note, to the Trustee of any proposed redemption by it pursuant to the Conditions;

7.1.13    **Compliance:** in relation to each Series, comply and procure that each of the parties thereto complies with its obligations under any Swap Agreement and (if it is a party thereto) any Credit Enhancement Agreement and use its reasonable endeavours to make such amendments to the Agency Agreement, Custody Agreement or any Swap Agreement or Credit Enhancement Agreement as may be required by the Trustee;

7.1.14    **Provision of Legal Opinions:** procure the delivery of legal opinions addressed to the Trustee dated the date of such delivery, in form and content acceptable to the Trustee (i) on each occasion on which a legal opinion is given to any Dealer in relation to any Notes pursuant to the Programme Agreement from the legal adviser giving such opinion (ii) from Linklaters LLP (or such other legal advisers acceptable to the Trustee) as to the laws of England on the date of any amendment to this Principal Trust Deed and on each Issue Date and (iii) from legal advisers acceptable to the Trustee as to such law as may be requested by the Trustee in the event of a proposed issue of such nature and having such features as might lead the Trustee properly to conclude that it would be prudent to obtain such opinions;

7.1.15    **Restrictions:** not, without the prior consent in writing of the Trustee:

(i)    engage in any business whatsoever, other than acquiring and holding Mortgaged Property, issuing Notes, issuing further bonds and notes (which may be consolidated and form a single series with the Notes), creating other Obligations or entering into similar limited recourse transactions, entering into related agreements and transactions and performing any act incidental to or necessary in connection with any of the foregoing;

(ii)    dispose of any Mortgaged Property or any interest therein, or create any mortgage, charge or other security interest or right of recourse in respect thereof in favour of any person (other than (a) the security referred to in Clause 5 or any similar limited recourse transaction (whether such limited recourse transaction is by means of a debt issue or by loan, option or

swap) entered into by the Issuer in the future with the consent of the Trustee and any Swap Counterparty as provided below) and (b) in connection with a transfer under the Swap Agreement;

(iii) cause or permit any Swap Agreement or Credit Enhancement Agreement or the priority of the security interests created by the Trust Deed to be amended, terminated or discharged (other than in connection with a transfer under the Swap Agreement);

(iv) release any party to any Swap Agreement (other than in connection with a transfer under the Swap Agreement), any Credit Enhancement Agreement, the Principal Trust Deed or any Supplemental Trust Deed from any existing obligations thereunder;

(v) have any subsidiaries (other than in connection with any substitution of the principal debtor under Clause 13);

(vi) consent to any variation of, or exercise any powers or consent or waiver pursuant to, the terms of any Swap Agreement, any Credit Enhancement Agreement, the Conditions, the Principal Trust Deed, any Supplemental Trust Deed or any other agreement relating to the issue of the Notes any relevant documentation entered into in connection with the issue, buying, borrowing, selling or entering into of other obligations or any related transactions;

(vii) (to the extent the same is within the control of the Issuer) consolidate or merge with any other person or convey or transfer its properties or assets substantially as an entirety to any person;

(viii) have any employees;

(ix) (to the extent the same is within the control of the Issuer) pay any dividends or make any distribution to its shareholders; or

(x) open or have any interest in any account whatsoever with any bank or financial institution unless such account relates to any Notes or any Mortgaged Property, any other obligation, or any party thereto, save where such account or the Issuer's interest therein is simultaneously charged in favour of the Trustee so as to form part of such Mortgaged Property or save where such account is opened in connection with the administration

and management of the Issuer and only moneys necessary to the administration and management of the Issuer are credited to such account;

(xi)    (to the extent the same is within the control of the Issuer) issue or allot shares to persons other than such shares as were in issue on the date of incorporation of the Issuer;

7.1.16    **Residence:** at all times maintain its residence outside the United Kingdom for the purposes of United Kingdom taxation and, in addition, not establish a branch, agency or place of business within the United Kingdom such as would require registration of a charge under Section 395 of the Companies Act 1985;

7.1.17    **Taxes:** at all times use its best efforts to minimise taxes and any other costs arising in connection with its activities;

7.1.18    **Taxation Status:**

(i)    not prejudice its status as a qualifying company within the meaning of section 110 of the Taxes Consolidation Act 1997 of Ireland, as amended;

(ii)    not make an election pursuant to subsection (6)(b) of section 110 of the Taxes Consolidation Act 1997 of Ireland, as amended, if its cash flows would be affected adversely thereby;

(iii)    not apply to become party of any group for the purpose of section 8 of the Value Added Tax Act 1972 of Ireland, as amended, with any other company or group of companies, or any such act, regulation, order, statutory instrument or directive which may from time to time re-enact, replace, amend, modify, vary, codify, consolidate or repeal such Act; and

(iv)    at all times to maintain a Paying Agent in a member state of the European Union that will not be obliged to withhold or deduct tax pursuant to European Council Directive 2003/48/EC or any law implementing or complying with, or introduced in order to conform to, such Directive

7.1.19    **Collateral:** procure that Collateral forming part of the Mortgaged Property shall at all times (if required by the Conditions) be held in safe custody by the Custodian and/or Account Bank or other reputable custodian or bank approved by the Trustee;

7.1.20    **Mortgaged Property:** save as provided in the relevant Supplemental Trust Deed, any other Security Document and Final Terms or Series Prospectus procure that the Mortgaged Property for any Series (and its proceeds, if any) is at all times distinguishable from the Mortgaged Property for each other Series (and its proceeds, if any) and from its other assets;

7.1.21    **Conditions binding:** comply with, perform and observe all of the provisions of this Principal Trust Deed, any Supplemental Trust Deed and any other Security Document expressed to be binding on it. The Conditions will be binding on the Issuer and the Noteholders. The Trustee will be entitled to enforce the obligations of the Issuer under the Notes and the Conditions. The provisions contained in Schedule 2 Part C have effect in the same manner as if set forth herein; and

7.1.22    **Registration of mortgages and charges:** comply with any registration requirements in the jurisdiction of incorporation of the Specified Company (and any other jurisdiction where such registration requirements may apply) in relation to any and all mortgages or charges created by the Supplemental Trust Deed or any other Security Document securing the Notes of such Tranche or Series and, forthwith upon execution of any further instruments or documents pursuant thereto, creating or purporting to create or to perfect or to protect any security interest by the Issuer, enter in such Register, and register in any other jurisdiction where such registration may be required, details of such instrument or document.

7.2    **Swap Counterparty Covenants:** In relation to any Series in respect of which there is a Swap Counterparty, such Swap Counterparty shall, by execution of the relevant Supplemental Trust Deed, covenant and agree:

7.2.1    with the Trustee and the Issuer that it will comply with and is bound by the terms of the Swap Agreement and that it will not amend the Swap Agreement without the prior written consent of the Trustee (provided that the Trustee shall agree to any amendment to the Swap Agreement to allow a transfer of the Swap Counterparty's rights and obligations under such Swap Agreement in accordance with its terms in accordance with sub-Clause 13.4); that its recourse in respect of its claims under the Swap Agreement is limited to the proceeds of the Mortgaged Property in relation to such Series as it is entitled to, as provided in the Trust Deed and no debt shall be owed by the Issuer in respect of any shortfall; and that, without prejudice to its rights to bring Enforcement Proceedings against any person other than the

Issuer or to its rights to bring proceedings other than Enforcement Proceedings against any person, the Swap Counterparty may not take any Enforcement Proceedings against the Issuer; and

7.2.2  with the Trustee that all provisions of the Trust Deed as regards the entitlement of the Trustee to appoint agents and delegates, to rely upon experts' opinions and otherwise defining the rights and responsibilities of the Trustee with regard to the Mortgaged Property in relation to such Series shall also apply as between the Trustee and the Swap Counterparty.

## 8    Remuneration and Indemnification of the Trustee

**8.1    Normal Remuneration:** So long as any Notes of any Series are outstanding, the Issuer shall pay the Trustee as remuneration for its services as Trustee such sum on such dates in each case as they may from time to time agree. Such remuneration shall accrue from day to day from the date of this Principal Trust Deed. However, if any payment to a Noteholder or Couponholder of moneys due in respect of any Note, Receipts or Coupon for such Series is improperly withheld or refused, such remuneration shall again accrue as from the date of such withholding or refusal until payment to such Noteholder or Couponholder is duly made.

**8.2    Extra Remuneration:** If an Event of Default or Potential Event of Default shall have occurred in respect of any Series or if the Trustee finds it expedient or necessary or is requested by the Issuer to undertake duties that they both agree to be of an exceptional nature or otherwise outside the scope of the Trustee's normal duties under the Trust Deed, the Issuer shall pay such additional remuneration as they may agree or, failing agreement as to any of the matters in this Clause (or as to such sums referred to in sub-Clause 8.1), as determined by an international investment bank (acting as an expert) selected by the Trustee and approved by the Issuer or, failing such approval, nominated by the President for the time being of The Law Society of England and Wales. The expenses involved in such nomination and such international investment bank's fee shall be paid by the Issuer. The determination of such international investment bank shall be conclusive and binding on the Issuer, the Trustee, the Noteholders and the Couponholders.

**8.3    Expenses:** For each Series the Issuer shall also on demand by the Trustee pay or discharge all costs, charges, liabilities and expenses properly incurred by the Trustee in the preparation and execution of this Principal Trust Deed and any Supplemental Trust Deed, any other Security Document and the performance of its functions under this Principal Trust Deed and any Supplemental Trust Deed, any other Security Document including, in relation

to such Series, but not limited to, legal and travelling expenses and any stamp, documentary or other taxes or duties paid by the Trustee in connection with any legal proceedings brought or contemplated by the Trustee against the Issuer to enforce any provision of the Trust Deed, the Notes, the Receipts, the Coupons or the Talons. Such costs, charges, liabilities and expenses shall:

8.3.1    in the case of payments made by the Trustee before such demand, carry interest from the date of the demand at the rate of 2 per cent. per annum over the base rate of The Bank of New York on the date on which the Trustee made such payments; and

8.3.2    in other cases, carry interest at such rate from 30 days after the date of the demand or (where the demand specifies that payment is to be made on an earlier date) from such earlier date.

8.4    **Indemnity:** The relevant Issuer shall indemnify the Trustee in respect of all liabilities and expenses incurred by it or by anyone appointed by it or to whom any of its functions may be delegated by it in relation to any Series in the carrying out of its functions and against any loss, liability, cost, claim, action, demand or expense (including, but not limited to, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) that any of them may incur or that may be made against any of them arising out of or in relation to or in connection with, its appointment or the exercise of its functions. The Contracts (Rights of Third Parties) Act 1999 applies to this sub-Clause 8.4.

8.5    **Continuing Effect:** Sub-Clauses 8.3 and 8.4 shall continue in full force and effect as regards the Trustee even if it no longer is Trustee.

8.6    **Amount due to the Trustee:** At any time when any amount is due from the relevant Issuer to the Trustee under this Clause 8, the Issuer for such Series shall pay such amount to the Trustee before making payment of any amount then due to the Noteholders for such Series under the Conditions or any Swap Counterparty under any Swap Agreement in respect of such Series.

9    **Provisions Supplemental to the Trustee Act 1925 and the Trustee Act 2000**

9.1    **Advice:** The Trustee may in respect of any Series act on the opinion or advice of, or information obtained from, any expert and shall not be responsible to anyone for any loss occasioned by so acting. Any such opinion, advice or information may be sent or obtained by letter, telex or fax and the Trustee shall not be liable to anyone for acting in good faith on any opinion, advice or information purporting to be conveyed by such means even if it contains some error or is not authentic.

9.2    **Trustee to Assume Performance:** The Trustee need not notify anyone of the execution of the Trust Deed or do anything to find out if an Event of Default or Potential Event of Default has occurred in relation to any Series. Until it has actual knowledge or express notice to the contrary, the Trustee may assume that no such event has occurred and that the Issuer is performing all its obligations under the Trust Deed, the Notes, the Receipts, the Coupons and the Talons of such Series.

9.3    **Resolutions of Noteholders:** The Trustee shall not be responsible for having acted in good faith on a resolution purporting to have been passed at a meeting of Noteholders in respect of which minutes have been made and signed even if it is later found that there was a defect in the constitution of the meeting or the passing of the resolution or that the resolution was not valid or binding on the Noteholders or Couponholders.

9.4    **Certificate Signed by Directors:** If the Trustee, in the exercise of its functions, requires to be satisfied or to have information as to any fact or the expediency of any act, it may call for and accept as sufficient evidence of that fact or the expediency of that act a certificate signed on the Issuer's behalf by any two Directors of the Issuer as to that fact or to the effect that, in their opinion, that act is expedient and the Trustee need not call for further evidence and shall not be responsible for any loss occasioned by acting on such a certificate.

9.5    **Deposit of Documents:** The Trustee may appoint as custodian, on any terms, any bank or entity whose business includes the safe custody of documents or any lawyer or firm of lawyers believed by it to be of good repute and may deposit this Trust Deed and any other documents with such custodian and pay all sums due in respect thereof. The Trustee is not obliged to appoint a custodian of securities payable to bearer.

9.6    **Discretion:** The Trustee shall have absolute and uncontrolled discretion as to the exercise of its functions and shall not be responsible for any loss, liability, cost, claim, action, demand, expense or inconvenience that may result from their exercise or non-exercise in respect of any Series.

9.7    **Agents:** Whenever it considers it expedient in the interests of the Noteholders of any Series, the Trustee may, in the conduct of its trust business, instead of acting personally, employ and pay an agent selected by it, whether or not a lawyer or other professional person, to transact or conduct, or concur in transacting or conducting, any business and to do or concur in doing all acts required to be done by the Trustee (including the receipt and payment of money).

9.8 **Delegation:** Whenever it considers it expedient in the interests of the Noteholders for any Series, the Trustee may delegate to any person on any terms (including power to sub-delegate) all or any of its functions.

9.9 **Nominees:** In relation to any asset held by it under this Trust Deed, the Trustee may appoint any person to act as its nominee on any terms.

9.10 **Forged Notes:** The Trustee shall not be liable to the Issuer or any Noteholders or Couponholder by reason of having accepted as valid or not having rejected any Note, Certificate, Receipt, Coupon or Talon purporting to be such and later found to be forged or not authentic.

9.11 **Confidentiality:** Unless ordered to do so by a court of competent jurisdiction, the Trustee shall not be required to disclose to any Noteholder or Couponholder any confidential financial or other information made available to the Trustee by the Issuer.

9.12 **Determinations Conclusive:** As between itself and the Noteholders and Couponholders, the Trustee may determine all questions and doubts arising in relation to any of the provisions of this Principal Trust Deed or any Supplemental Trust Deed. Such determinations, whether made upon such a question actually raised or implied in the acts or proceedings of the Trustee, shall be conclusive and shall bind the Trustee, the Noteholders and the Couponholders.

9.13 **Currency Conversion:** Where it is necessary or desirable to convert any sum from one currency to another, it shall (unless otherwise provided hereby or required by law) be converted at such rate or rates, in accordance with such method and as at such date as may reasonably be specified by the Trustee but having regard to current rates of exchange, if available. Any rate, method and date so specified shall be binding on the Issuer, the Noteholders, the Couponholders and the Swap Counterparty (if any).

9.14 **Title of the Issuer to Mortgaged Property:** The Trustee shall accept without investigation, requisition or objection such right and title as the Issuer has to any of the Mortgaged Property and shall not be bound or concerned to examine or enquire into or be liable for any defect or failure in the right or title of the Issuer to the Mortgaged Property or any part thereof whether such defect or failure was known to the Trustee or might have been discovered upon examination or enquiry and whether capable of remedy or not.

9.15 **Insurance:** The Trustee shall not be under any obligation to insure any of the Mortgaged Property or any certificate, note, bond or other evidence in respect thereof, or to require any other person to maintain any such insurance.

**9.16    Deficiency Arising from Tax:** The Trustee shall have no responsibility whatsoever to the Issuer or any Noteholder as regards any deficiency which might arise because the Trustee or Custodian is subject to any tax in respect of any of the Mortgaged Property, income therefrom or the proceeds thereof.

**9.17    Indemnity:** Without prejudice to the right of indemnity by law given to trustees and subject to the provisions of Section 192 of the Companies Act 1985, the Trustee and every receiver, attorney, manager, agent or other person appointed by the Trustee hereunder in relation to each Series shall be entitled to be indemnified out of the Mortgaged Property (in respect of such Series) in respect of all liabilities and expenses properly incurred by them or him in the execution or purported execution of the trusts hereof or of any powers, authorities or discretions vested in them or him pursuant to the Trust Deed and against all actions, proceedings, costs, claims and demands in respect of any matter or things done or omitted in any way relating to the Mortgaged Property, and the Trustee may retain any part of any moneys in its hands arising from the trusts of the Trust Deed all sums necessary to effect such indemnity and also the remuneration of the Trustee hereinbefore provided and the Trustee shall have a lien on such Mortgaged Property for all moneys payable to it under the Trust Deed or otherwise howsoever. The Contracts (Rights of Third Parties) Act 1999 applies to this sub-Clause 9.17.

**9.18    Validity of Security:** The Trustee assumes no responsibility for the validity, sufficiency or enforceability (which the Trustee has not investigated) of the security purported to be created by this Principal Trust Deed, any Supplemental Trust Deed, any other Security Document, any Swap Agreement, any pledge or other document. In addition, the Trustee has no duty to monitor the performance by the Agents or any Swap Counterparty or any Credit Enhancement Provider of their obligations to the Issuer nor is it obliged (unless indemnified to its satisfaction) to take any action which may involve the Trustee in any personal liability or expense.

**9.19    Payment for and Delivery of Notes:** The Trustee shall not be responsible for the receipt or application by the Issuer of the proceeds of the issue of the Notes of any Series, any exchange of such Notes or the delivery of such Notes to the persons entitled to them.

**9.20    Legal Opinions:** The Trustee shall not be responsible to any person for failing to request, require or receive any legal opinion relating to any Notes or for checking or commenting upon the content of any such legal opinion.

**9.21    Exercise of Voting Rights:** The Trustee shall not be responsible for the exercise or non-exercise of any voting rights in respect of the Collateral.

9.22    **Consents:** Any consent or approval given by the Trustee for the purposes of the Trust Deed may be given on such terms and subject to such conditions (if any) as the Trustee thinks fit.

9.23    **Swap Counterparty:** In acting as Trustee under the Trust Deed in respect of Notes of any Series the Trustee shall not assume any duty or responsibility to any Swap Counterparty or any Credit Enhancement Provider (other than to pay to such Swap Counterparty any moneys received and payable to it for it and to act in accordance with the provisions of Conditions 4(b) and 4(f)) and shall have regard solely to the interests of the Noteholders of such Series and shall not be obliged to act on any directions of the Swap Counterparty if this would in the Trustee's opinion be contrary to the interests of the Noteholders of such Series.

9.24    **Determination or Calculation by the Trustee:** For each Series, if the Issuing and Paying Agent does not at any time for any reason so determine the Interest Rate or calculate the Interest Amount for an Interest Accrual Period, the Trustee shall do so and such determination or calculation shall be deemed to have been made by the Issuing and Paying Agent. In doing so, the Trustee shall apply the provisions of Condition 5, with any necessary consequential amendments, to the extent that, in its opinion, it can do so, and, in all other respects it shall do so in such manner as it shall deem fair and reasonable in all the circumstances.

9.25    **Rating and Rating Agencies:** The Trustee assumes no responsibility for the rating of the Notes of any Series or for providing information to, or soliciting information from, any rating agency.

9.26    **Swap Counterparty Certificates:** The Trustee may call for (and the Issuer will use its best endeavours to procure the delivery of) and rely on certificates of any authorised person on behalf of the Swap Counterparty as to amounts owed to it.

9.27    **Responsibility for agents etc.:** If the Trustee exercises reasonable care in selecting any custodian, agent, delegate or nominee appointed under this sub-Clause 9.28 (an "**Appointee**"), it will not have any obligation to supervise the Appointee or be responsible for any loss, liability, cost, claim, action, demand or expense incurred by reason of the Appointee's misconduct or default or the misconduct or default of any substitute appointed by the Appointee.

9.28    **Conflict between Noteholders and Related Noteholders:** Where, in the opinion of the Trustee, there is a conflict between the interests of the holders of the Notes and those of any Related Notes and/or its duties as Trustee for the holders of Notes and for the holders of any Related Notes, the Trustee shall, unless otherwise

specified in the Supplemental Trust Deed, act solely on behalf of the holders of the Controlling Series following enforcement of the security over the Mortgaged Property and shall have regard to their interests alone and shall not be responsible to the holders of the Notes that do not comprise the Controlling Series for so doing.

**10    Trustee liable for Negligence**

Section 1 of the Trustee Act 2000 shall not apply to any functions of the Trustee under this Trust Deed, provided that if the Trustee fails to show the degree of care and diligence required of it as trustee, nothing in the Trust Deed shall, having regard to the provisions hereof conferring on the Trustee powers, authorities and discretions, relieve or indemnify it from or against any liability that would otherwise attach to it in respect of any negligence, default, breach of duty or breach of trust of which it may be guilty.

**11    Waiver, Consents and Proof of Default**

**11.1    Waiver:** The Trustee may, in respect of the Notes of each Series, without the consent of the Noteholders or Couponholders of such Series and without prejudice to its rights in respect of any subsequent breach, from time to time and at any time, if in its opinion the interests of the Noteholders of such Series will not be materially prejudiced thereby, waive or authorise, on such terms as seem expedient to it, any breach or proposed breach by the Issuer of this Principal Trust Deed, any other Security Document or any relevant Supplemental Trust Deed or the Conditions or any relevant Swap Agreement or determine that an Event of Default or Potential Event of Default shall not be treated as such provided that the Trustee shall not do so in contravention of an express direction given by an Extraordinary Resolution or a request made pursuant to Condition 10. No such direction or request shall affect a previous waiver, authorisation or determination. Any such waiver, authorisation or determination shall be binding on the Noteholders and the Couponholders of such Series and, if the Trustee so requires, shall be notified to the Noteholders of such Series as soon as practicable.

**11.2    Consents:** For each Series, in giving any consent under the Trust Deed the Trustee may require the Issuer to agree to such modifications or additions to the provisions of the Trust Deed as the Trustee may deem expedient in the interests of the Noteholders of such Series.

**11.3    Proof of Default:** Proof that the Issuer has failed to pay a sum due to the holder of any one Note, Receipt or Coupon shall (unless the contrary be proved) be sufficient evidence that it has made the same default as regards all other Notes, Receipts or Coupons of the same Series that are then payable.

**12    Trustee not precluded from entering into Contracts**

The Trustee and any other person, whether or not acting for itself, may acquire, hold or dispose of any Note, Receipt, Coupon, Talon or other security (or any interest therein) of the Issuer of such Series or any other person, may enter into or be interested in any contract or transaction with any such person and may act on, or as depositary or agent for, any committee or body of holders of any securities of any such person in each case with the same rights as it would have had if the Trustee were not acting as Trustee and need not account for any profit.

## 13    Modification and Substitution

**13.1    Modification:** The Trustee may, in respect of each Series, agree without the consent of the Noteholders or Couponholders to any modification to the Conditions or to this Principal Trust Deed or any Supplemental Trust Deed or Swap Agreement which is, in the opinion of the Trustee, of a formal, minor or technical nature or to correct a manifest error. The Trustee may also so agree to any modification to this Principal Trust Deed or any Supplemental Trust Deed or Swap Agreement that is in its opinion not materially prejudicial to the interests of the Noteholders of such Series, but such power does not extend to any such modification as is mentioned in the proviso to paragraph 2 of Schedule 3.

**13.2    Substitution:**

13.2.1    The Trustee may, without the consent of the holders of the Notes, Coupons, Receipts or Talons but subject to the consent of the relevant Swap Counterparty, agree to the substitution, in place of the Issuer, or any previous substituted company, as the principal debtor under this Principal Trust Deed and any Supplemental Trust Deed, any other Security Document, the Notes, Receipts, Coupons and Talons in respect of any one or more series, of any other company (incorporated in any jurisdiction) (the "**Substituted Issuer**"), provided that:

(i)    the outstanding ratings of any Notes issued by the Issuer are not adversely affected as confirmed in writing by the appropriate rating agency;

(ii)    a deed is executed or an undertaking given by the Substituted Issuer to the Trustee in a form satisfactory to the Trustee, agreeing to be bound by this Principal Trust Deed, any other Security Document, any relevant Supplemental Trust Deed and by the Notes, Receipts, Coupons and Talons of the relevant Series (with any consequential amendments which may be appropriate) as if the Substituted Issuer had been

named herein and in the Notes, Receipts, Coupons and Talons of such Series as the principal debtor in place of the Issuer;

(iii)   the Substituted Issuer acquires the Issuer's equity of redemption in the relevant Mortgaged Property (if any) or otherwise assumes all rights, obligations and liabilities in relation to the Mortgaged Property, acknowledges the security created in respect thereof pursuant to the relevant Supplemental Trust Deed, any other Security Document, and takes all such action as the Trustee may require so that each such security constitutes a valid legal charge, pledge or other security interest as was originally created by the Issuer for the obligations of the Substituted Issuer;

(iv)   if any two Directors of the Substituted Issuer certify that the Substituted Issuer will be solvent immediately after the time at which the said substitution is to be effected, the Trustee need not have regard to the financial condition, profits or prospects of such Substituted Issuer or compare the same with those of the Issuer;

(v)    the Trustee is satisfied that (I) all necessary governmental and regulatory approvals and consents necessary for or in connection with the assumption by the Substituted Issuer of liability as principal debtor in respect of, and of its obligations under, the Notes, Receipts, Coupons, Talons and any Swap Agreement have been obtained and (II) such approvals and consents are at the time of substitution in full force and effect;

(vi)   the Issuer and the Substituted Issuer execute and the Issuer procures that the Swap Counterparty executes such other deeds, documents and instruments (if any) as the Trustee may require in order that such substitution is fully effective and complies with such other requirements in the interests of the holders of the Notes, Receipts, Coupons and Talons as the Trustee may direct;

(vii)  in connection with any proposed substitution of the Issuer, the Trustee may, without the consent of the holders of such Notes, Receipts, Coupons or Talons agree to a change of the law from time to time governing the Notes and Coupons and/or this Principal Trust Deed and/or any relevant Supplemental Trust Deed, provided that such change of governing law is not, in the opinion of the Trustee, materially prejudicial to the

interests of such Noteholders and Couponholders in respect of the Mortgaged Property;

(viii) a legal opinion satisfactory to the Trustee is provided concerning any proposed substitution.

13.2.2 Upon the execution of such documents and compliance with such requirements as are referred to in sub-Clause 13.2.1, the Substituted Issuer shall be deemed to be named as the Issuer in this Principal Trust Deed (insofar as it affects the relevant Series), any other Security Documents, the relevant Supplemental Trust Deed, and the relevant Notes, Receipts, Coupons or Talons, all of which shall thereupon be deemed to be amended in such manner as is necessary to give effect thereto. Agreement by the Trustee to such substitution shall operate to release the Issuer from all of its obligations as principal debtor in respect of the relevant Series under this Principal Trust Deed, any other Security Document, and the relevant Supplemental Trust Deed. Not later than 14 days after the execution of any such undertaking and such other deeds, documents and instruments as aforesaid and compliance with the said requirements of the Trustee the Substituted Issuer shall, unless the Trustee agrees otherwise, give notice thereof to the relevant Noteholders.

13.3 **Change in tax residence:** The Trustee may agree to or require, without the consent of the Noteholders or the Couponholders, the change in the place of residence of the Issuer for taxation purposes, provided that:

13.3.1 the Trustee is satisfied that (a) all governmental and regulatory approvals and consents necessary for or in connection with the change by the Issuer of its place of tax residence have been obtained and (b) such approvals and consents are at the time of change in full force and effect;

13.3.2 the Issuer executes such other deeds, documents and instruments (if any) as the Trustee may require in order that such change in place of tax residence is fully effective and complies with such other requirements in the interest of the Noteholders as the Trustee may direct;

13.3.3 in connection with any proposed change in the place of tax residence of the Issuer, the Trustee may, without the consent of the Noteholders or the Couponholders agree to a change of the law from time to time governing such Notes and Coupons and/or this Principal Trust Deed and/or any relevant Supplemental Trust Deed, provided that such change of governing law is not, in the opinion of the Trustee,

materially prejudicial to the interests of such Noteholders in respect of the Mortgaged Property;

13.3.4 such change shall not adversely affect any existing rating of any Notes issued by the Issuer as confirmed in writing by the appropriate rating agency; and

13.3.5 a legal opinion satisfactory to the Trustee is provided concerning any change in the place of tax residence of the Issuer.

13.4 **Transfer under the Swap Agreement:** In relation to any outstanding Notes which are rated, the Trustee shall agree to a transfer of any Swap Counterparty's rights and obligations under any Swap Agreement in accordance with its terms and shall agree to any amendment to such Swap Agreement to allow such transfer, provided that the transferee Swap Counterparty has obtained a rating for its obligations under such Swap Agreement at least equal to that obtained by the transferor Swap Counterparty in relation to its obligations under such Swap Agreement from Standard & Poor's and/or Moody's and/or Fitch, if applicable, or from any other statistical rating organisation generally recognised by banks, securities houses and investors in the euro-markets.

## 14 Appointment, Retirement and Removal of the Trustee

14.1 **Appointment:** The Issuer has the power of appointing new Trustees but no one may be so appointed unless previously approved by an Extraordinary Resolution of the relevant Noteholders (or in respect of a Series where there are Related Notes, the approval of holders of the Controlling Series by Extraordinary Resolution). A trust corporation shall at all times be a Trustee and may be the sole Trustee.

14.2 **Retirement and Removal:** Any Trustee may retire in respect of any Series at any time on giving at least three months' written notice to the Issuer without giving any reason or being responsible for any costs occasioned by such retirement and the relevant Noteholders may by Extraordinary Resolution (or, in respect of a Series of Notes where there are Related Notes, the holders of the Controlling Series may by Extraordinary Resolution) remove any Trustee provided that the retirement or removal of a sole trust corporation shall not be effective until a trust corporation is appointed as successor Trustee. If a sole trust corporation gives notice of retirement or an Extraordinary Resolution is passed for its removal, the Issuer shall use all reasonable endeavours to procure that another trust corporation be appointed as Trustee and if it does not procure the appointment of a new trustee within 30 days of the expiry of the Trustee notice referred to in this Clause, the Trustee shall be entitled to

procure forthwith a new trustee acting on the same or substantially the same terms at the Trustee.

**14.3** **Co-Trustees:** The Trustee may, despite sub-Clause 14.1, by written notice to the Issuer appoint anyone to act as an additional trustee jointly with the Trustee:

14.3.1　if the Trustee considers the appointment to be in the interests of the Noteholders and/or the Couponholders;

14.3.2　to conform with a legal requirement, restriction or condition in a jurisdiction in which a particular act is to be performed; or

14.3.3　to obtain a judgment or to enforce a judgment or any provision of this Principal Trust Deed or any Supplemental Trust Deed in any jurisdiction.

Subject to the provisions of this Principal Trust Deed and/or any relevant Supplemental Trust Deed the Trustee may confer on any person so appointed such functions as it thinks fit. The Trustee may by written notice to the Issuer and that person, remove that person. At the Trustee's request, the Issuer shall forthwith do all things as may be required to perfect such appointment or removal and it irrevocably appoints the Trustee as its attorney in its name and on its behalf to do so.

**14.4** **Competence of a Majority of Trustees:** If there are more than two Trustees the majority of them shall be competent to perform the Trustee's functions provided the majority includes a trust corporation.

**14.5** **Merger:** Any corporation into which the Trustee may be merged or converted, any corporation with which the Trustee may be consolidated, amalgamated or any corporation resulting from any merger, amalgamation, conversion or consolidation to which the Trustee shall be a party, any corporation to which the Trustee shall sell or otherwise transfer all or substantially all of its assets or any corporation to which the Trustee shall sell or otherwise transfer all or substantially all of its corporate trust business, shall, to the extent permitted by applicable law, be the relevant successor Trustee under this Principal Trust Deed without the execution or delivery of any papers or any further act on the part of the parties hereto whereupon the Issuer and such successor shall acquire and become subject to the same rights and obligations between themselves as if they had entered into an agreement in the form *mutatis mutandis* of this Principal Trust Deed. Notice of any such merger, amalgamation, conversion, consolidation, sale or transfer shall forthwith be given by the Trustee to the Issuer and, as soon as practicable, to the Noteholders in accordance with Condition 14.

**15    Notes held in Clearing Systems and Couponholders**

**15.1    Notes held in Clearing Systems:** If, and so long as, any Global Note is, or any Notes represented by a Global Certificate are, held on behalf of a clearing system, in considering the interests of Noteholders, the Trustee may have regard to any information provided to it by such clearing system or its operator as to the identity (either individually or by category) of its accountholders or participants with entitlements to any such Global Note or the Registered Notes and may consider such interests on the basis that such accountholders or participants were the holder(s) thereof.

**15.2    Couponholders:** No notices need be given to Couponholders. They shall be deemed to have notice of the contents of any notice given to Noteholders. Even if it has express notice to the contrary, in exercising any of its functions by reference to the interests of the Noteholders, the Trustee shall assume that the holder of each Note is the holder of all Receipts, Coupons and Talons relating to it.

**16    Currency Indemnity**

**16.1    Currency of Account and Payment:** The Contractual Currency is the sole currency of account and payment for all sums payable by the Issuer under or in connection with the Trust Deed, the Notes, the Receipts and the Coupons, including damages.

**16.2    Extent of Discharge:** An amount received or recovered in a currency other than the Contractual Currency (whether as a result of, or of the enforcement of, a judgment or order of a court of any jurisdiction, in the insolvency, winding-up or dissolution of the Issuer or otherwise), by the Trustee or any Noteholder or Couponholder in respect of any sum expressed to be due to it from the Issuer shall only discharge the Issuer to the extent of the Contractual Currency amount that the recipient is able to purchase with the amount so received or recovered in that other currency on the date of that receipt or recovery (or, if it is not practicable to make that purchase on that date, on the first date on which it is practicable to do so).

**16.3    Indemnity:** If that Contractual Currency amount is less than the Contractual Currency amount expressed to be due to the recipient under the Trust Deed, the Notes, the Receipts or the Coupons, the Issuer shall indemnify it against any loss sustained by it as a result. In any event, the Issuer shall indemnify the recipient against the cost of making any such purchase.

**16.4    Indemnity Separate:** The indemnities in this Clause 16 and in sub-Clauses 8.4 and 9.17 constitute separate and independent obligations from the other obligations in this Trust Deed, shall give rise to a separate and independent

cause of action, shall apply irrespective of any indulgence granted by the Trustee and/or any Noteholder or Couponholder or Swap Counterparty and shall continue in full force and effect despite any judgment, order, claim or proof for a liquidated amount in respect of any sum due under this Trust Deed, the Notes, the Receipts and/or the Coupons or any other judgment or order.

**17    Communications**

17.1    **Method:** Each communication under this Principal Trust Deed shall be made by telex, fax or otherwise in writing. Each communication or document to be delivered to any party under this Principal Trust Deed shall be sent to that party at the telex, fax number or address, and marked for the attention of the person (if any), from time to time designated by that party to each other party for the purpose of this Principal Trust Deed.

The initial telephone number, telex number, fax number, address and person so designated by each party to this Principal Trust Deed are set out below:

The Issuer

| | |
|---|---|
| telephone: | 00 353 1 874 0777 |
| fax: | 00 353 1 874 3050 |
| address: | AIB International Centre<br>International Financial Services Centre<br>Dublin 1 |
| attention: | The Directors |

Trustee

| | |
|---|---|
| telephone: | + 44 20 7777 5422 |
| fax: | +44 20 7777 5410 |
| address: | Trinity Tower<br>9 Thomas More Street<br>London  E1W 1YT |
| attention: | Manager, Trust Administration |

In the case of communications to any other Specified Company, the communication details shall be as specified in the relevant Supplemental Trust Deed.

17.2    **Deemed Receipt:** Any communication from any party to any other under this Principal Trust Deed shall be effective, (if by telex) when a confirmed answerback is received at the end of the transmission, (if by fax) when good

receipt is confirmed by the recipient following enquiry by the sender and (if in writing) when delivered, except that a communication received outside normal business hours shall be deemed to be received on the next business day in the city in which the recipient is located.

18    **Enforcement and Non-recourse**

18.1    **Enforcement:** Only the Trustee may enforce the rights of the holders of Notes, Coupons, Receipts and Talons and/or the Swap Counterparty against the relevant Issuer, whether the same arise under general law, this Principal Trust Deed, any Supplemental Trust Deed, the Notes, the Coupons, the Receipts or Talons (if any) or otherwise, and the holders of Notes, Coupons, Receipts and Talons and/or the Swap Counterparty shall not be entitled to proceed directly against that Issuer unless the Trustee, having become bound to proceed in accordance with the terms of this Trust Deed, fails or neglects to do so.

18.2    **Non-Recourse:** The Trustee, Swap Counterparty (if any) and the holders of Notes, Coupons, Receipts and Talons shall have recourse only to the Mortgaged Property in respect of the relevant Series and, the Trustee having realised the same, the Trustee, Swap Counterparty (if any) and the holders of Notes, Coupons, Receipts or Talons, or anyone acting on behalf of any of them shall not be entitled to take any further steps against the Issuer to recover any further sum and no debt shall be owed to any of such persons by the Issuer in respect of any such further sum. In particular, neither the Trustee, Swap Counterparty (if any) nor any holder of Notes, Coupons, Receipts or Talons shall be entitled to institute, or join with any other person in bringing, instituting or joining, insolvency proceedings (whether court based or otherwise) in relation to the Issuer, nor shall any of them have any claim in respect of any sum arising in respect of the Mortgaged Property for any other Series.

19    **Contracts (Rights of Third Parties) Act 1999**

A person who is not a party to this Principal Trust Deed has no rights, whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise, to enforce any term of this Principal Trust Deed except that and to the extent (if any) that this Principal Trust Deed expressly provides for that Act to apply to any of its terms.

20    **Governing Law and Jurisdiction**

20.1    **Governing Law:** This Principal Trust Deed, the Notes, the Coupons, the Talons and the Receipts shall be governed by and construed in accordance with English law.

20.2   **Jurisdiction:** The courts of England are to have jurisdiction to settle any disputes that may arise out of or in connection with this Principal Trust Deed, any Supplemental Trust Deed, the Notes, the Receipts, the Coupons or the Talons and accordingly any legal action or proceedings arising out of or in connection with this Principal Trust Deed, any Supplemental Trust Deed, the Notes, the Receipts, the Coupons or the Talons ("**Proceedings**") may be brought in such courts. The Issuer irrevocably submits to the jurisdiction of such courts and waives any objections to Proceedings in such courts on the ground of venue or on the ground that the Proceedings have been brought in an inconvenient forum. This submission is for the benefit of the Trustee and the holders of Notes, Receipts, Coupons and Talons and shall not limit the right of any of them to take Proceedings in any other court of competent jurisdiction nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not).

20.3   **Service of Process:** The Issuer irrevocably appoints Lehman Brothers International (Europe) to receive, for it and on its behalf, service of process in any Proceedings in England. Such service shall be deemed completed on delivery to such process agent (whether or not it is forwarded to and received by the Issuer). If for any reason such process agent ceases to be able to act as such or no longer has an address in England the Issuer irrevocably agrees to appoint a substitute process agent acceptable to the Trustee and shall immediately notify the Trustee of such appointment. Nothing shall affect the right to serve process in any other manner permitted by law.

## 21   Counterparts

This Principal Trust Deed may be executed in counterparts which when taken together shall constitute one and the same instrument.

### Schedule 1
### Part A
### Form of Temporary Global Note

THIS TEMPORARY GLOBAL NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933 (THE "**SECURITIES ACT**"). NEITHER THIS TEMPORARY GLOBAL NOTE NOR ANY PORTION HEREOF MAY BE OFFERED OR SOLD WITHIN THE UNITED STATES OR TO ANY U.S. PERSON UNLESS AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT IS AVAILABLE.

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287(a) OF THE INTERNAL REVENUE CODE.

### [SPECIFIED COMPANY]
### [•]
### Registered Office: [•]
### [REGISTERED NUMBER]

### MULTI-ISSUER SECURED OBLIGATION PROGRAMME

### Temporary Global Note No: [    ]

This Temporary Global Note is issued in respect of the Notes (the "**Notes**") of the Tranche(s) and Series specified in the Second Schedule hereto of [Specified Company] (the "**Issuer**").

**1    Interpretation and Definitions**

References in this Global Note to the "**Conditions**" are to the Terms and Conditions applicable to the Notes (which are in the form set out in Schedule 2 Part C to the principal trust deed dated 10 October 2002 between the Issuer and BNY Corporate Trustee Services Limited as Trustee as amended and restated on 20 July 2007 (the "**Principal Trust Deed**") (as amended or supplemented by the Supplemental Trust Deed dated the date hereof (the Principal Trust Deed and the Supplemental Trust Deed together being the "**Trust Deed**")), as such form is supplemented and/or modified and/or superseded by the provisions of this Temporary Global Note (including the supplemental definitions and any modifications or additions set out in the Second Schedule hereto), which in the event of any conflict shall prevail). Other capitalised terms used in this Temporary Global Note shall have the meanings given to them in the Conditions or the Trust Deed.

2    **Aggregate Principal Amount**

The aggregate principal amount from time to time of this Temporary Global Note
shall be an amount equal to the aggregate principal amount of the Notes as shall be
shown by the latest entry in the fourth column of the First Schedule hereto, which
shall be completed by or on behalf of the Issuing and Paying Agent upon (i) the
issue of the Notes represented hereby, (ii) the exchange of the whole or a part of this
Temporary Global Note for a corresponding interest in a Permanent Global Note or
Registered Notes, (iii) the redemption or purchase and cancellation of Notes
represented hereby and/or (iv) in the case of partly-paid Notes, the forfeiture of
Notes represented hereby in accordance with the Conditions relating to such Partly-
paid Notes, all as described below.

3    **Promise to Pay**

Subject as provided herein, the Issuer, for value received, hereby promises to pay to
the bearer of this Temporary Global Note, upon presentation and (when no further
payment is due in respect of this Temporary Global Note) surrender of this
Temporary Global Note, on the Maturity Date (or on such earlier date as the
Redemption Amount may become repayable in accordance with the Conditions) the
Redemption Amount in respect of the aggregate principal amount of Notes
represented by this Temporary Global Note and (unless this Temporary Global Note
does not bear interest) to pay interest in respect of such aggregate principal amount
of Notes from the Interest Commencement Date in arrear at the rates, in the amounts
and on the dates for payment provided for in the Conditions together with such other
sums and additional amounts (if any) as may be payable under the Conditions, in
accordance with the Conditions.

4    **Exchange**

If this Temporary Global Note is an Exchangeable Bearer Note, this Temporary
Global Note may be exchanged in whole or from time to time in part for one or
more Registered Notes in accordance with the Conditions on or after the Issue Date
but before the Exchange Date (as defined below) by its presentation to the Issuing
and Paying Agent. On or after the Exchange Date, the outstanding principal amount
of this Temporary Global Note may be exchanged in accordance with the next
paragraph.

Subject as provided in the Conditions applicable to Partly-paid Notes, on or after the
first day following the expiry of 40 days after the Issue Date (the "**Exchange
Date**"), this Temporary Global Note may be exchanged (free of charge to the holder)
in whole or from time to time in part by its presentation and, on exchange in full,
surrender to or to the order of the Issuing and Paying Agent for interests in a

Permanent Global Note and (if this Temporary Global Note is an Exchangeable Bearer Note), in each case, for Registered Notes in an aggregate principal amount equal to the principal amount of this Temporary Global Note submitted for exchange; provided that, there shall have been Certification with respect to such principal amount submitted for such Certification (as defined below) with respect to such principal amount submitted for such exchange dated no earlier than the Exchange Date.

"**Certification**" means the presentation to the Issuing and Paying Agent of a certificate or certificates with respect to one or more interests in this Temporary Global Note, signed by Euroclear or Clearstream, Luxembourg, substantially to the effect set out in Schedule 4 to the Agency Agreement to the effect that it has received a certificate or certificates substantially to the effect set out in Schedule 3 to the Agency Agreement with respect thereto and that no contrary advice as to the contents thereof has been received by Euroclear or Clearstream, Luxembourg, as the case may be.

Upon the whole or a part of this Temporary Global Note being exchanged for a Permanent Global Note, such Permanent Global Note shall be exchangeable in accordance with its terms for Definitive Notes or Registered Notes.

The Definitive Notes or the Certificates representing the Registered Notes for which this Temporary Global Note or a Permanent Global Note may be exchangeable shall be duly executed and authenticated, shall, in the case of Definitive Notes, have attached to them all Coupons (and, where appropriate, Talons) in respect of interest, and all Receipts in respect of Instalment Amounts, that have not already been paid on this Temporary Global Note or the Permanent Global Note, as the case may be, shall be security printed or, in the case of Certificates, printed in accordance with applicable legal and stock exchange requirements and shall be substantially in the form set out in the Schedules to the Trust Deed as supplemented and/or modified and/or superseded by the terms of the Second Schedule hereto.

Certificates issued upon exchange for Registered Notes shall not be Global Certificates unless the holder so requests and certifies to the Issuing and Paying Agent that it is, or is acting as a nominee for, Clearstream, Luxembourg, Euroclear and/or any other clearing system.

On any exchange of a part of this Temporary Global Note for an equivalent interest in a Permanent Global Note or for Registered Notes, as the case may be, the portion of the principal amount hereof so exchanged shall be endorsed by or on behalf of the Issuing and Paying Agent in the First Schedule hereto, whereupon the principal amount hereof shall be reduced for all purposes by the amount so exchanged and endorsed.

5    **Benefit of Conditions**

Except as otherwise specified herein, this Temporary Global Note is subject to the Conditions and the Trust Deed and, until the whole of this Temporary Global Note is exchanged for Definitive Notes or Registered Notes, the holder of this Temporary Global Note shall in all respects be entitled to the same benefits as if it were the holder of the Permanent Global Note (or the relevant part of it) for which it may be exchanged and as if such Permanent Global Note had been issued on the Issue Date.

6    **Payments**

No person shall be entitled to receive any payment in respect of the Notes represented by this Temporary Global Note that falls due after an Exchange Date for such Notes, unless upon due presentation of this Temporary Global Note for exchange, delivery (or, in the case of a subsequent exchange, due endorsement of) a Permanent Global Note or delivery of Certificates is improperly withheld or refused by or on behalf of the Issuer or the Issuer does not perform or comply with any of its obligations under the Permanent Global Note.

Payments due in respect of this Temporary Global Note before the Exchange Date shall only be made in relation to such principal amount of this Temporary Global Note with respect to which there shall have been Certification dated no earlier than such due date for payment.

Any payments that are made in respect of this Temporary Global Note shall be made to its holder against presentation and (if no further payment falls to be made on it) surrender of it at the specified office of the Issuing and Paying Agent or of any other Paying Agent provided for in the Conditions.

If any payment in full of principal is made in respect of any Note represented by this Temporary Global Note, the portion of this Temporary Global Note representing such Note shall be cancelled and the amount so cancelled shall be endorsed by or on behalf of the Issuing and Paying Agent in the First Schedule hereto (such endorsement being *prima facie* evidence that the payment in question has been made) whereupon the principal amount hereof shall be reduced for all purposes by the amount so cancelled and endorsed.

If any other payments are made in respect of the Notes represented by this Temporary Global Note, a record of each such payment shall be endorsed by or on behalf of the Issuing and Paying Agent on an additional schedule hereto (such endorsement being *prima facie* evidence that the payment in question has been made). The second exception to Condition 6(d)(i) and Condition 7(e) will apply to the Definitive Notes only.

7    **Cancellation**

Cancellation of any Note represented by this Temporary Global Note that is required by the Conditions to be cancelled (other than upon its redemption) shall be effected by reduction in the principal amount of this Temporary Global Note representing such Note on its presentation to or to the order of the Issuing and Paying Agent for endorsement in the First Schedule hereto, whereupon the principal amount hereof shall be reduced for all purposes by the amount so cancelled and endorsed.

8    **Notices**

Notwithstanding Condition 14, notices in respect of the Notes represented by this Temporary Global Note may be given by their being delivered (so long as this Temporary Global Note is held on behalf of Euroclear, Clearstream, Luxembourg or any other clearing system) to Euroclear, Clearstream, Luxembourg or such other clearing system, as the case may be. No provisions of this Temporary Global Note shall alter or impair the obligation of the Issuer to pay the principal and premium of and interest on the Notes when due in accordance with the Conditions. This Temporary Global Note shall not be valid or become obligatory for any purpose until authenticated by or on behalf of the Issuing and Paying Agent. This Temporary Global Note shall be governed by and construed in accordance with the laws of England.

**In witness** whereof the Issuer has caused this Temporary Global Note to be duly signed on its behalf.

Dated as of the Issue Date.

[SPECIFIED COMPANY]


By:


By:


**Certificate of Authentication of the Issuing and Paying Agent**

This Temporary Global Note is authenticated by or on behalf of the Issuing and Paying Agent

The Bank of New York, London Branch as Issuing and Paying Agent

By:

A08068217                            43

Authorised Signatory

For the purposes of authentication only.

### The First Schedule

**Principal Amount of Notes Represented by this Temporary Global Note**

The following (i) issues of Notes initially represented by this Temporary Global Note, (ii) exchanges of the whole or a part of this Temporary Global Note for interest in a Permanent Global Note or for Registered Notes, and/or (iii) cancellations or forfeitures of interests in this Temporary Global Note have been made, resulting in the principal amount of this Global Note specified in the latest entry in the fourth column:

| Date | Amount of increase/ decrease in principal amount of this Global Note | Reason for decrease in principal amount of this Temporary Global Note (exchange, cancellation or forfeiture) | Principal amount of this Temporary Global Note on issue or following such decrease | Notation made by or on behalf of the Issuing and Paying Agent |
|---|---|---|---|---|

**The Second Schedule**

[Insert the provisions of the relevant Final Terms or Series Prospectus that relate to the Conditions or the Global Note as the Second Schedule]

**Schedule 1**
**Part B**
**Form of Permanent Global Note**

**[SPECIFIED COMPANY]**
**[●]**
**Registered Office: [●]**
**[●]**
**(Incorporated with limited liability in [●])**

**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**

**Permanent Global Note No:**

This Global Note is issued in respect of the Notes (the "**Notes**") of the Tranche(s) and Series specified in the Third Schedule hereto of [SPECIFIED COMPANY] (the "**Issuer**").

1    **Interpretation and Definitions**

References in this Global Note to the "**Conditions**" are to the Terms and Conditions applicable to the Notes, which are in the form set out in Schedule 2 Part C to the principal trust deed dated 10 October 2002 between the Issuer and BNY Corporate Trustee Services Limited as Trustee as amended and restated on 20 July 2007 (the "**Principal Trust Deed**") (as amended or supplemented by the Supplemental Trust Deed dated the date hereof (the Principal Trust Deed and the Supplemental Trust Deed together being the "**Trust Deed**")) , as such form is supplemented and/or modified and/or superseded by the provisions of this Global Note (including the supplemental definitions and any modifications or additions set out in the Third Schedule hereto), which in the event of any conflict shall prevail). Other capitalised terms used in this Global Note shall have the meanings given to them in the Conditions or the Trust Deed.

2    **Aggregate Principal Amount**

The aggregate principal amount from time to time of this Global Note shall be an amount equal to the aggregate principal amount of the Notes as shall be shown by the latest entry in the fourth column of the First Schedule hereto, which shall be completed by or on behalf of the Issuing and Paying Agent upon (i) the exchange of the whole or a part of a Temporary Global Note initially representing the Notes for a corresponding interest herein (in the case of Notes represented by a Temporary Global Note upon issue) (ii) the issue of the Notes represented hereby, (iii) the

exchange of the whole or, where the limited circumstances so permit, a part of this Global Note for Definitive Notes or Registered Notes, (iv) the redemption or purchase and cancellation of Notes represented hereby and/or (v) in the case of Partly-paid Notes, the forfeiture of Notes represented hereby in accordance with the Conditions relating to such Partly-paid Notes, all as described below.

**3    Promise to Pay**

Subject as provided herein, the Issuer, for value received, hereby promises to pay to the bearer of this Global Note, upon presentation and (when no further payment is due in respect of this Global Note) surrender of this Global Note, on the Maturity Date (or on such earlier date as the Redemption Amount may become repayable in accordance with the Conditions) the Redemption Amount in respect of the aggregate principal amount of Notes represented by this Global Note and (unless this Global Note does not bear interest) to pay interest in respect of such aggregate principal amount of Notes from the Interest Commencement Date in arrear at the rates, in the amounts and on the dates for payment provided for in the Conditions together with such other sums and additional amounts (if any) as may be payable under the Conditions, in accordance with the Conditions.

**4    Exchange**

This Global Note is exchangeable (free of charge to the holder) on or after the Exchange Date in whole but not, except as provided in the next paragraph, in part for Definitive Notes or (if this Global Note is an Exchangeable Bearer Note) Registered Notes represented by the Certificates described below:

(a)    if this Global Note is an Exchangeable Bearer Note, by the holder hereof giving notice to the Issuing and Paying Agent of its election to exchange the whole or a part of this Global Note for Registered Notes; or

(b)    if this Global Note is held on behalf of Euroclear or Clearstream, Luxembourg or any other clearing system (an "Alternative Clearing System") and any such clearing system is closed for business for a continuous period of 14 days (other than by reason of holidays, statutory or otherwise) or announces an intention permanently to cease business or does in fact do so.

This Global Note is exchangeable in part (provided, however, that if this Global Note is held by or on behalf of Euroclear and/or Clearstream, Luxembourg, the rules of Euroclear and/or Clearstream, Luxembourg, as the case may be, so permit) (i) if this Global Note is an Exchangeable Bearer Note and the part hereof submitted for

exchange is to be exchanged for Registered Notes or (ii) if so provided, and in accordance with, the Conditions relating to Partly-paid Notes.

"**Exchange Date**" means a day falling not less than 60 days, or in the case of an exchange for Registered Notes five days, after that on which the notice requiring exchange is given and on which banks are open for business in the city in which the specified office of the Issuing and Paying Agent is located and, except in the case of exchange pursuant to (d) above, in the cities in which Euroclear and Clearstream, Luxembourg or, if relevant, the Alternative Clearing System, are located.

Subject as provided in the Conditions applicable to Partly-paid Notes, any such exchange may be effected on or after an Exchange Date by the holder of this Global Note surrendering this Global Note or, in the case of a partial exchange, presenting it for endorsement to or to the order of the Issuing and Paying Agent.

In exchange for this Global Note, or part thereof to be exchanged, the Issuer shall deliver, or procure the delivery of, duly executed and authenticated Definitive Notes and/or (if this Global Note is an Exchangeable Bearer Note) Certificates in an aggregate principal amount equal to the principal amount of this Global Note submitted for exchange (if appropriate, having attached to them all Coupons (and, where appropriate, Talons) in respect of interest, and all Receipts in respect of Instalment Amounts, that have not already been paid on this Global Note), security printed or, in the case of Certificates, printed in accordance with any applicable legal and stock exchange requirements and substantially in the form set out in Schedule 2 to the Trust Deed as supplemented and/or modified and/or superseded by the terms of the Third Schedule hereto.

Certificates issued upon exchange for Registered Notes shall not be Global Certificates unless the holder so requests and certifies to the Issuing and Paying Agent that it is, or is acting as a nominee for, Clearstream, Luxembourg, Euroclear and/or an Alternative Clearing System.

On any exchange of a part of this Global Note the portion of the principal amount hereof so exchanged shall be endorsed by or on behalf of the Issuing and Paying Agent in the First Schedule hereto, whereupon the principal amount hereof shall be reduced for all purposes by the amount so exchanged and endorsed.

5    **Benefit of Conditions**

Except as otherwise specified herein, this Global Note is subject to the Conditions and the Trust Deed and, until the whole of this Global Note is exchanged for Definitive Notes or Registered Notes, the holder of this Global Note shall in all respects be entitled to the same benefits as if it were the holder of the Definitive

Notes for which it may be exchanged and as if such Definitive Notes had been issued on the Issue Date.

## 6    Payments

No person shall be entitled to receive any payment in respect of the Notes represented by this Global Note that falls due after an Exchange Date for such Notes, unless upon due presentation of this Global Note for exchange, delivery of Definitive Notes or Certificates is improperly withheld or refused by or on behalf of the Issuer or the Issuer does not perform or comply with any one or more of what are expressed to be its obligations under any Definitive Notes.

Payments in respect of this Global Note shall be made to its holder against presentation and (if no further payment falls to be made on it) surrender of it at the specified office of the Issuing and Paying Agent or of any other Paying Agent provided for in the Conditions. A record of each such payment shall be endorsed on the First or Second Schedule hereto, as appropriate, by the Issuing and Paying Agent or by the relevant Paying Agent, for and on behalf of the Issuing and Paying Agent, which endorsement shall (until the contrary is proved) be *prima facie* evidence that the payment in question has been made. The second exception to Condition 6(d)(i) and Condition 7(e) will apply to the Definitive Notes only.

## 7    Prescription

Claims in respect of principal and interest (as each is defined in the Conditions) in respect of this Global Note shall become void unless it is presented for payment within a period of 10 years (in the case of principal) and five years (in the case of interest) from the appropriate Relevant Date.

## 8    Meetings

The holder of this Global Note shall (unless this Global Note represents only one Note) be treated as two persons for the purposes of any quorum requirements of a meeting of Noteholders and, at any such meeting, as having one vote in respect of each integral currency unit of the specified currency of the Notes.

## 9    Cancellation

Cancellation of any Note represented by this Global Note that is required by the Conditions to be cancelled (other than upon its redemption) shall be effected by reduction in the principal amount of this Global Note representing such Note on its presentation to or to the order of the Issuing and Paying Agent for endorsement in

the First Schedule hereto, whereupon the principal amount hereof shall be reduced for all purposes by the amount so cancelled and endorsed.

10    **Purchase**

Notes may only be purchased by the Issuer if they are purchased together with the right to receive all future payments of interest and Instalment Amounts (if any) thereon.

11    **Issuer's Options**

Any option of the Issuer provided for in the Conditions shall be exercised by the Issuer giving notice to the Noteholders within the time limits set out in and containing the information required by the Conditions, except that the notice shall not be required to contain the serial numbers of Notes drawn in the case of a partial exercise of an option and accordingly no drawing of Notes shall be required.

12    **Noteholders' Options**

Any option of the Noteholders provided for in the Conditions may be exercised by the holder of this Permanent Global Note giving notice to the Issuing and Paying Agent within the time limits relating to the deposit of Notes with a Paying Agent set out in the Conditions substantially in the form of the notice available from any Paying Agent, except that the notice shall not be required to contain the serial numbers of the Notes in respect of which the option has been exercised, and stating the principal amount of Notes in respect of which the option is exercised and at the same time presenting this Permanent Global Note to the Issuing and Paying Agent, or to a Paying Agent acting on behalf of the Issuing and Paying Agent, for notation accordingly in the Fourth Schedule hereto.

13    **Notices**

Notwithstanding Condition 14, notices in respect of the Notes represented by this Global Note may be given by their being delivered (so long as this Global Note is held on behalf of Euroclear, Clearstream, Luxembourg or any other clearing system) to Euroclear, Clearstream, Luxembourg or such other clearing system, as the case may be.

14    **Negotiability**

This Global Note is a bearer document and negotiable and accordingly:

(a)    is freely transferable by delivery and such transfer shall operate to confer upon the transferee all rights and benefits appertaining hereto and to bind the transferee with all obligations appertaining hereto pursuant to the Conditions;

(b)    the holder of this Global Note is and shall be absolutely entitled as against all previous holders to receive all amounts by way of Redemption Amount interest or otherwise payable in respect of this Global Note and the Issuer has waived against such holder and any previous holder of this Global Note all rights of set-off or counterclaim that would or might otherwise be available to it in respect of the obligations evidenced by this Global Note; and

(c)    payment upon due presentation of this Global Note as provided herein shall operate as a good discharge against such holder and all previous holders of this Global Note.

No provisions of this Global Note shall alter or impair the obligation of the Issuer to pay the principal and premium of and interest on the Notes when due in accordance with the Conditions.

This Global Note shall not be valid or become obligatory for any purpose until authenticated by or on behalf of the Issuing and Paying Agent.

This Global Note shall be governed by and construed in accordance with the laws of England.

**In witness** whereof the Issuer has caused this Global Note to be duly signed on its behalf.

Dated as of the Issue Date.

[SPECIFIED COMPANY]


By:


**Certificate of Authentication of the Issuing and Paying Agent**

This Global Note is authenticated by or on behalf of the Issuing and Paying Agent

The Bank of New York, London Branch. as Issuing and Paying Agent

By:


Authorised Signatory

For the purposes of authentication only.

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE
SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS,
INCLUDING THE LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287(a) OF
THE INTERNAL REVENUE CODE.

### The First Schedule

#### Principal Amount of Notes Represented by this Global Note

The following (i) issues of Notes initially represented by this Global Note, (ii) exchanges of interests in a Temporary Global Note for interests in this Global Note, (iii) exchanges of the whole or a part of this Global Note for Definitive Notes or for Registered Notes, (iv) cancellations or forfeitures of interests in this Global Note and/or (v) payments of the Redemption Amount in respect of this Global Note have been made, resulting in the principal amount of this Global Note specified in the latest entry in the fourth column:

| Date | Amount of increase/ decrease in principal amount of this Global Note | Reason for increase/decrease in principal amount of this Global Note (initial issue, exchange, cancellation, forfeiture or payment, stating amount of payment made) | Principal amount of this Temporary Global Note following such increase/decrease | Notation made by or on behalf of the Issuing and Paying Agent |
|---|---|---|---|---|

**The Second Schedule**

**Payments of Interest**

The following payments of interest or Interest Amount in respect of this Global Note have been made:

| Due date of payment | Date of payment | Amount of interest | Notation made by or on behalf of the Issuing and Paying Agent |
|---|---|---|---|

## The Third Schedule

[Insert the provisions of the relevant Final Terms or Series Prospectus that relate to the Conditions for the Global Note as the Third Schedule]

**The Fourth Schedule**

**Exercise of Noteholders' Option**

The following exercises of the option of the Noteholders provided for in the Conditions have been made in respect of the stated principal amount of this Permanent Global Note:

| Date of exercise | Principal amount of this Permanent Global Note in respect of which exercise is made | Date on which exercise of such option is effective | Notation made by or on behalf of the Issuing and Paying Agent |
|---|---|---|---|

**Schedule 1**
**Part C**
**Form of Global Certificate**

**[SPECIFIED COMPANY]**
**[●]**
**Registered Office: [●]**
**[REGISTERED NUMBER]**

**Secured Obligation Programme**

**GLOBAL CERTIFICATE**

**Global Certificate No. [●]**

Registered Holder:

..............................................................................................

Address              of                Registered                    Holder:

.....................................................................

....................................................................................

....................................................................................

Principal amount of Notes
represented by this
Global Certificate:              ....................................................................................

This Global Certificate is issued in respect of the principal amount specified above of the Notes (the "**Notes**") of the Tranche and Series specified in the Schedule hereto of [Specified Company] (the "**Issuer**"). This Global Certificate certifies that the Registered Holder (as defined above) is registered as the holder of such principal amount of the Notes.

1    **Interpretation and Definitions**

References in this Global Certificate to the "**Conditions**" are to the Terms and Conditions applicable to the Notes (which are in the form set out in Schedule 2 Part C to the Principal Trust Deed (as amended or supplemented by the Supplemental Trust Deed dated the date hereof, the "**Trust Deed**") dated 20 July 2007 between the Issuer and BNY Corporate Trustee Services Limited as trustee, as such form is supplemented and/or modified and/or superseded by the provisions of this Global

Certificate (including the supplemental definitions and any modifications or additions set out in the Schedule hereto), which in the event of any conflict shall prevail).

Other capitalised terms used in this Global Certificate shall have the meanings given to them in the Conditions or the Trust Deed.

2    **Promise to Pay**

The Issuer, for value received, hereby promises to pay to the Registered Holder upon presentation and (when no further payment is due in respect of the Notes represented by this Global Certificate) surrender of this Global Certificate on the Maturity Date (or on such earlier date as the Redemption Amount may become repayable in accordance with the Conditions) the Redemption Amount in respect of the Notes represented by this Global Certificate and (unless the Notes represented by this Certificate do not bear interest) to pay interest in respect of such Notes from the Interest Commencement Date in arrear at the rates, in the amounts and on the dates for payment provided for in the Conditions together with such other sums and additional amounts (if any) as may be payable under the Conditions, in accordance with the Conditions.

For the purposes of this Global Certificate, (a) the Registered Holder is bound by the provisions of the Agency Agreement, (b) the Issuer certifies that the Registered Holder is, at the date hereof, entered in the Register as the holder of the Notes represented by this Global Certificate, (c) this Global Certificate is evidence of entitlement only, (d) title to the Notes represented by this Global Certificate passes only on due registration on the Register, and (e) only the Registered Holder is entitled to payments in respect of the Notes represented by this Global Certificate.

3    **Transfer of Notes Represented by Permanent Global Certificates**

If the Schedule hereto states that the Notes are to be represented by a permanent Global Certificate on issue, transfers of the holding of Notes represented by this Global Certificate pursuant to Condition 2(b) may only be made in part:

(i)    if the Notes represented by this Global Certificate are held on behalf of Euroclear or Clearstream, Luxembourg or any other clearing system (an **"Alternative Clearing System"**) and any such clearing system is closed for business for a continuous period of 14 days (other than by reason of holidays, statutory or otherwise) or announces an intention permanently to cease business or does in fact do so; or

(ii)    with the consent of the Issuer,

provided that, in the case of the first transfer of part of a holding pursuant to (i) above, the Registered Holder has given the Registrar not less than 30 days' notice at its specified office of the Registered Holder's intention to effect such transfer. Where the holding of Notes represented by this Global Certificate is only transferable in its entirety, the Certificate issued to the transferee upon transfer of such holding shall be a Global Certificate. Where transfers are permitted in part, Certificates issued to transferees shall not be Global Certificates unless the transferee so requests and certifies to the Registrar that it is, or is acting as a nominee for, Clearstream, Luxembourg, Euroclear and/or an Alternative Clearing System.

4    **Meetings**

The Registered Holder shall (unless this Global Certificate represents only one Note) be treated as two persons for the purposes of any quorum requirements of a meeting of Noteholders and at any such meeting as having one vote in respect of each integral currency unit of the specified currency of the Notes.

This Global Certificate shall not become valid or obligatory for any purpose until the certificate of authentication hereon shall have been duly signed by or on behalf of the Registrar.

**In witness** whereof the Issuer has caused this Global Certificate to be signed on its behalf.

Dated as of the Issue Date.

[[SPECIFIED COMPANY]

By:


**Certificate of Authentication of the Registrar**

This Global Certificate is authenticated by or on behalf of the Registrar.

The Bank of New York, New York as Registrar

By:



Authorised Signatory

For the purposes of authentication only.

## Form of Transfer

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers to

......................................................................

......................................................................

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF TRANSFEREE)

[     ] principal amount of the Notes represented by this Global Certificate, and all rights under them.

Dated...............................

Signed...........................                                    Certifying Signature

....................................

Notes:

(i)     The signature of the person effecting a transfer shall conform to a list of duly authorised specimen signatures supplied by the Registered Holder or (if such signature corresponds with the name as it appears on the face of this Global Certificate) be certified by a notary public or a recognised bank or be supported by such other evidence as a Transfer Agent or the Registrar may reasonably require.

(ii)    A representative of the Noteholder should state the capacity in which he signs e.g. executor.

**Schedule**

[Insert the provisions of the relevant Final Terms or Series Prospectus that relate to the Conditions or the Global Certificate as the Schedule.]

**Schedule 2**
**Part A**
**Form of Bearer Note**

On the front:

[Denomination]        [ISIN]            [Series]            [Certif. No.]

[Currency and denomination]

**[SPECIFIED COMPANY]**
**[●]**
**Registered Office [●]**
**[REGISTERED NUMBER]**

**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**

**Series No. [●]**

**[Title of Issue]**

This Note forms one of the Series of Notes referred to above (the "**Notes**") of [Specified Company] (the "**Issuer**") designated as specified in the title hereof.

The Notes are subject to the Terms and Conditions (the "**Conditions**") endorsed hereon and are issued subject to, and with the benefit of, the Principal Trust Deed and Supplemental Trust Deed referred to in the Conditions.

Expressions defined in the Conditions have the same meanings in this Note.

The Issuer for value received hereby promises to pay to the bearer of this Note, on presentation and (when no further payment is due in respect of this Note) surrender of this Note on the Maturity Date (or on such earlier date as the Redemption Amount may become repayable in accordance with the Conditions) the Redemption Amount and (unless this Note does not bear interest) to pay interest from the Interest Commencement Date in arrear at the rates, in the amounts and on the dates for payment provided for in the Conditions together with such other sums and additional amounts (if any) as may be payable under the Conditions, in accordance with the Conditions.

This Note shall not become valid or obligatory for any purpose until the certificate of authentication hereon shall have been duly signed by or on behalf of the Issuing and Paying Agent.

**In witness** whereof the Issuer has caused this Note to be signed on its behalf.

Dated as of the Issue Date.

[SPECIFIED COMPANY]


By:



**Certificate of Authentication of the Issuing and Paying Agent**

This Note is authenticated by or on behalf of the Issuing and Paying Agent.

The Bank of New York, London Branch as Issuing and Paying Agent

By:



Authorised Signatory

For the purposes of authentication only.

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE
SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS,
INCLUDING THE LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287(a) OF
THE INTERNAL REVENUE CODE.

On the back:

## Terms and Conditions of the Notes

[The Terms and Conditions that are set out in Schedule 2 Part C to the Principal Trust Deed as amended by and incorporating any additional provisions forming part of such Terms and Conditions and set out in the relevant Final Terms or Series Prospectus shall be set out here.]

### Issuing and Paying Agent and Transfer Agent

[●]

**Attention: Manager, [●]**

### Paying and Transfer Agent

[●]

**Attention: Manager, [●]**

**Schedule 2**

**Part B**

**Form of Certificate**

On the front:

**[SPECIFIED COMPANY]**

**[•]**

**Registered office [•]**

**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**

**Series No. [•]**

**[Title of issue]**

This Certificate certifies that the Registered Holder (as defined below) is registered as the holder of [principal amount] of Notes of the Series of Notes referred to above (the "**Notes**") of [Specified Company] (the "**Issuer**"), designated as specified in the title hereof. The Notes are subject to the Terms and Conditions (the "**Conditions**") endorsed hereon and are issued subject to, and with the benefit of, the Principal Trust Deed and Supplemental Trust Deed referred to in the Conditions. Expressions defined in the Conditions have the same meanings in this Certificate.

The Issuer, for value received, hereby promises to pay to [          ] of [          ] (the "**Registered Holder**") upon presentation and (when no further payment is due in respect of the Note(s) represented by this Certificate) surrender of this Certificate on the Maturity Date (or on such earlier date as the Redemption Amount may become repayable in accordance with the Conditions) the Redemption Amount in respect of the Notes represented by this Certificate and (unless the Note(s) represented by this Certificate do not bear interest) to pay interest in respect of such Notes from the Interest Commencement Date in arrear at the rates, in the amounts and on the dates for payment provided for in the Conditions together with such other sums and additional amounts (if any) as may be payable under the Conditions, in accordance with the Conditions.

For the purposes of this Certificate, (a) the Registered Holder is bound by the provisions of the Agency Agreement, (b) the Issuer certifies that the Registered Holder is, at the date hereof, entered in the Register as the holder of the Note(s) represented by this Certificate, (c) this Certificate is evidence of entitlement only, (d) title to the Note(s) represented by this Certificate passes only on due registration on the Register, and (e) only the Registered Holder is entitled to payments in respect of the Note(s) represented by this Certificate.

This Certificate shall not become valid or obligatory for any purpose until the certificate of authentication hereon shall have been duly signed by or on behalf of the Registrar.

---

A08068217

**In witness** whereof the Issuer has caused this Certificate to be signed on its behalf.

Dated as of the Issue Date.

[SPECIFIED COMPANY]

By:

**Certificate of Authentication of the Registrar**

This Certificate is authenticated by or on behalf of the Registrar.

The  Bank of New York, New York as Registrar

By:

Authorised Signatory

For the purposes of authentication only.

On the back:

### Terms and Conditions of the Notes

[The Conditions that are set out in Schedule 2 Part C to the Principal Trust Deed as amended or supplemented by and incorporating any additional provisions forming part of such Terms and Conditions and set out in the relevant Final Terms or Series Prospectus shall be set out here.]

### Form of Transfer

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers to

............................................................

............................................................

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF TRANSFEREE)

[       ] principal amount of the Notes represented by this Certificate, and all rights under them.

Dated.............................

Signed............................                    Certifying
Signature.............................

**Notes:**

(i)     The signature of the person effecting a transfer shall conform to a list of duly authorised specimen signatures supplied by the Registered Holder or (if such signature corresponds with the name as it appears on the face of this Certificate) be certified by a notary public or a recognised bank or be supported by such other evidence as a Transfer Agent or the Registrar may reasonably require.

(ii)    A representative of the Noteholder should state the capacity in which he signs e.g. executor.

### Issuing and Paying Agent and Transfer Agent

[•]

### Paying and Transfer Agent

[•]

**Schedule 2**
**Part C**
**TERMS AND CONDITIONS OF THE NOTES**

*The following is the text of the terms and conditions that, subject to completion and amendment and as supplemented or varied in accordance with the provisions of the relevant Final Terms in relation to a particular Series of Notes, shall be applicable to the Notes in definitive form (if any) issued in exchange for the Global Note(s) representing each Series. Either (i) the full text of these terms and conditions together with the relevant provisions of the Final Terms or (ii) these terms and conditions, as so completed, amended, supplemented or varied (and subject to simplification by the deletion of non-applicable provisions), shall be endorsed on such Bearer Notes or on the Certificates relating to such Registered Notes. All capitalised terms that are not defined in these Conditions will have the meanings given to them in the Principal Trust Deed and/or the relevant Supplemental Trust Deed. Those definitions will be endorsed on the Definitive Notes or Certificates, as the case may be. References in the conditions to "Notes" are to the Notes of one Series of a relevant Issuer only, not to all Notes that may be issued under the Programme and references to the "Issuer" are to the Specified Company that is stipulated as such in the relevant Final Terms.*

*These Conditions may be amended, modified, or varied in relation to any Series of Notes by the terms of the relevant Supplemental Trust Deed in relation to such Series. Italicised text set out herein does not form part of the Conditions and is set out for information purposes only.*

The Notes are constituted and secured by a relevant supplemental trust deed (the "**relevant Supplemental Trust Deed**"), dated the date of issue of the Notes (the "**Issue Date**"), between the Issuer, BNY Corporate Trustee Services Limited (formerly known as J.P. Morgan Corporate Trustee Services Limited) (the "**Trustee**", which expression shall include all persons for the time being the trustee or trustees under the Trust Deed (as defined below)) as trustee for, inter alia, the Noteholders (as defined below) and, if applicable, the persons specified therein as a Swap Counterparty (as defined in Condition 3(a)). The relevant Supplemental Trust Deed is supplemental to a principal trust deed dated 10 October 2002 as amended and restated on 20 July 2007 and made between Dante Finance plc (the "**First Issuer**") and the Trustee (the "**Principal Trust Deed**", which expression shall include any amendments or supplements thereof and together with the relevant Supplemental Trust Deed, the "**Trust Deed**"). These terms and conditions include summaries of, and are subject to, the detailed provisions of the Trust Deed, which includes the form of the Bearer Notes, Certificates, Receipts, Coupons and Talons referred to below. An agency agreement dated 10 October 2002 as amended and restated on 20 July 2007 has been entered into in relation to the Notes between the First Issuer, the Trustee, The Bank of New York (as successor to JPMorgan Chase Bank, N.A.) as, inter alia, initial

issuing and paying agent and as custodian and account bank and the other agents named in it (as amended or supplemented as at the Issue Date, the "**Agency Agreement**"). The issuing and paying agent, the custodian, the account bank, the paying agents, the registrar, the transfer agents and the calculation agent(s) for the time being (if any) are referred to below respectively as the "Issuing and Paying Agent", the "Custodian", the "Account Bank", the "Paying Agents" (which expression shall include the Issuing and Paying Agent), the "Registrar", and the "Transfer Agents" (which expression shall include the Registrar). A Programme Agreement dated 10 October 2002 as amended and restated on 20 July 2007 has been entered into in relation to the Notes between the First Issuer and Lehman Brothers International (Europe) as Dealer (the "**Dealer**") and where appropriate as Arranger (the "**Arranger**") in relation to a particular series, the Trustee, the Issuing and Paying Agent and Registrar (the "**Programme Agreement**"). The Issuer (save for the First Issuer) has acceded to the Principal Trust Deed, the Agency Agreement and the Programme Agreement pursuant to a Deed of Accession dated on or before the Issue Date. Copies of the Principal Trust Deed, the Agency Agreement and the Programme Agreement are available for inspection during usual business hours, at the principal office of the Trustee (presently at One Canada Square, London E14 5AL) and at the specified offices of the Paying Agents and the Transfer Agents.

The Noteholders, the holders (the "**Couponholders**") of the interest coupons (the "**Coupons**") appertaining to interest bearing Bearer Notes and, where applicable in the case of such Notes, talons for further Coupons (the "**Talons**") and the holders of the receipts for the payment of instalments of principal (the "**Receipts**") relating to Bearer Notes of which the principal is payable in instalments are entitled to the benefit of, are bound by, and are deemed to have notice of, all the provisions of the Trust Deed and are deemed to have notice of those provisions applicable to them of the Agency Agreement and the Programme Agreement.

Under the Principal Trust Deed the Issuer may also borrow under, buy, sell or enter into other secured obligations in the form of loans ("**Loans**"), options ("**Options**"), schuldscheine ("**Schuldscheine**") or swaps ("**Swaps**") (each, including the obligations under the Notes, an "**Obligation**").

References in these Conditions to "Mortgaged Property" are to the assets and agreements comprising the mortgaged property upon which the Notes are secured as described in the Final Terms.

*Full details of the relevant Mortgaged Property will be set out in the relevant Final Terms.*

If so specified in the relevant Supplemental Trust Deed, the Issuer has, in relation to the Notes, entered into one or more derivative transactions confirmed in a Swap Agreement (as defined in Condition 3(a)) with a Swap Counterparty with an effective date as of the Issue Date.

**1    Form, Denomination and Title**

The Notes are issued in bearer form ("Bearer Notes", which expression includes
Notes that are specified to be Exchangeable Bearer Notes), in registered form
("Registered Notes") or in bearer form exchangeable for Registered Notes
("Exchangeable Bearer Notes") in each case in the denomination(s) shown thereon
provided that in the case of any Notes which are to be admitted to trading on a
regulated market within the European Economic Area or offered to the public in a
Member State of the European Economic Area in circumstances which require the
publication of a prospectus under the Prospectus Directive (Directive 2003/71/EC),
the minimum denomination shall be €50,000 (or its equivalent in any other currency
as at the date of issue of those Notes).

All Registered Notes shall have the same denomination. Where Exchangeable
Bearer Notes are issued, the Registered Notes for which they are exchangeable shall
have the same denomination as the lowest denomination of Exchangeable Bearer
Notes.

Bearer Notes are serially numbered and are issued with Coupons (and, where
appropriate, a Talon) attached, save in the case of Notes that do not bear interest in
which case references to interest (other than in relation to interest due after the
Maturity Date (as defined in the relevant Final Terms )), Coupons and Talons in
these Conditions are not applicable. Any Bearer Note the principal amount of which
is redeemable in instalments is issued with one or more Receipts attached.

Registered Notes are represented by registered certificates ("Certificates") and, save
as provided in Condition 2(c), each Certificate shall represent the entire holding of
Registered Notes by the same holder.

Title to the Bearer Notes and the Receipts, Coupons and Talons shall pass by
delivery. Title to the Registered Notes shall pass by registration in the register that
the Issuer shall procure to be kept by the Registrar in accordance with the provisions
of the Agency Agreement (the "Register"). Except as ordered by a court of
competent jurisdiction or as required by law, the holder (as defined below) of any
Note, Receipt, Coupon or Talon shall be deemed to be and may be treated as its
absolute owner for all purposes whether or not it is overdue and regardless of any
notice of ownership, trust or an interest in it, any writing on it (or on the Certificate
representing it) or its theft or loss (or that of the related Certificate) and no person
shall be liable for so treating the holder.

In these Conditions, "Noteholder" means the bearer of any Bearer Note and the
Receipts relating to it or the person in whose name a Registered Note is registered
(as the case may be), "holder" (in relation to a Note, Receipt, Coupon or Talon)
means the bearer of the Bearer Note, Receipt, Coupon or Talon or the person in
whose name a Registered Note is registered (as the case may be) and capitalised

terms have the meanings given to them herein, the absence of any such meaning indicating that such term is not applicable to the Notes.

2    Exchanges of Exchangeable Bearer Notes and Transfers of Registered Notes

   (a)    *Exchange of Exchangeable Bearer Notes*

      Subject as provided in Condition 2(f), Exchangeable Bearer Notes may be exchanged for the same principal amount of Registered Notes at the request in writing of the relevant Noteholder and upon surrender of each Exchangeable Bearer Note to be exchanged, together with all unmatured Receipts, Coupons and Talons relating to it, at the specified office of any Transfer Agent; provided, however, that where an Exchangeable Bearer Note is surrendered for exchange after the Record Date (as defined in Condition 7(b)) for any payment of interest, the Coupon in respect of that payment of interest need not be surrendered with it. Registered Notes may not be exchanged for Bearer Notes. Bearer Notes of one denomination may not be exchanged for Bearer Notes of another denomination. Bearer Notes that are not Exchangeable Bearer Notes may not be exchanged for Registered Notes.

   (b)    *Transfer of Registered Notes*

      One or more Registered Notes may be transferred upon the surrender (at the specified office of the Registrar or any Transfer Agent) of the Certificate representing such Registered Notes to be transferred, together with the form of transfer endorsed on such Certificate duly completed and executed and any other evidence as the Registrar or Transfer Agent may reasonably require. In the case of a transfer of part only of a holding of Registered Notes represented by one Certificate, a new Certificate shall be issued to the transferee in respect of the part transferred and a further new Certificate in respect of the balance of the holding not transferred shall be issued to the transferor. All transfers of Notes and entries on the Register will be made in accordance with the detailed regulations concerning transfers of Notes scheduled to the Agency Agreement. The regulations may be changed by the Issuer, with the prior written approval of the Registrar and the Trustee. A copy of the current regulations will be made available by the Registrar to any Noteholder upon request.

   (c)    *Exercise of Options or Partial Redemption in Respect of Registered Notes*

      In the case of an exercise of an Issuer's option in respect of, or a partial redemption of, a holding of Registered Notes represented by a single Certificate, a new Certificate shall be issued to the holder to reflect the exercise of such option or in respect of the balance of the holding not redeemed. In the case of a partial exercise of an option resulting in Registered

Notes of the same holding having different terms, separate Certificates shall be issued in respect of those Notes of that holding that have the same terms. New Certificates shall only be issued against surrender of the existing Certificates to the Registrar or any Transfer Agent.

(d)   *Delivery of New Certificates*

Each new Certificate to be issued pursuant to Conditions 2(a), (b) or (c) shall be available for delivery within five business days of receipt of the request for exchange, form of transfer or Exercise Notice or surrender of the Certificate for exchange. Delivery of the new Certificate(s) shall be made at the specified office of the Registrar or of the Transfer Agent (as the case may be) to whom delivery or surrender of such request for exchange, form of transfer, Exercise Notice or Certificate shall have been made or, at the option of the holder making such delivery or surrender as aforesaid and as specified in the relevant request for exchange, form of transfer, Exercise Notice or otherwise in writing, be mailed by uninsured post at the risk of the holder entitled to the new Certificate to such address as may be so specified, unless such holder requests otherwise and pays in advance to the Registrar or Transfer Agent the costs of such other method of delivery and/or such insurance as it may specify. In this Condition 2(d), "business day" means a day, other than a Saturday or Sunday, on which banks are open for business in the place of the specified office of the relevant Transfer Agent or the Registrar.

(e)   *Exchange Free of Charge*

Exchange and transfer of Notes and Certificates on registration, transfer, exercise of an option or partial redemption shall be effected without charge by or on behalf of the Issuer, the Registrar or the Transfer Agents, but upon payment of any tax or other governmental charges that may be imposed in relation to it (or the giving of such indemnity as the Registrar or the relevant Transfer Agent may require).

(f)   *Closed Periods*

No Noteholder may require the transfer of a Registered Note to be registered or an Exchangeable Bearer Note to be exchanged for one or more Registered Note(s) (i) during the period of 15 days ending on the due date for redemption of, or payment of any Instalment Amount (as defined in the relevant Final Terms) in respect of, that Note, (ii) during the period of 15 days prior to any date on which Notes may be called for redemption by the Issuer at its option pursuant to Condition 6(e), (iii) after any such Note has been called for redemption or (iv) during the period of seven days ending on (and including) any Record Date. An Exchangeable Bearer Note called for

redemption may, however, be exchanged for one or more Registered Note(s) in respect of which the Certificate is simultaneously surrendered not later than the relevant Record Date.

3    Status and Non applicability

   (a)    *Status of Notes*

The Notes are secured, limited-recourse obligations of the Issuer, ranking pari passu without any preference or priority amongst themselves (except in the case of Notes with Related Notes in respect of which a Series of Notes may rank senior or junior for the purposes of rights over the Mortgaged Property). The Notes, which are secured in the manner described in Condition 4 and recourse in respect of the Notes is limited in the manner described in Condition 4(c) and Condition 11. In connection with the issue of the Notes there may be executed one or more derivative agreements (each a "Swap Agreement") between the Issuer and one or more swap counterparties (each a "Swap Counterparty") and one or more credit enhancement agreements (each a "Credit Enhancement Agreement") as further described in the relevant Supplemental Trust Deed.

In the case of Notes with Related Notes, details of the Notes' relationship with the relevant Related Notes will be set out in the relevant Final Terms or relevant Supplemental Trust Deed including (to the extent relevant in the context of the Notes), without limitation, in relation to the following issues: (i) the Mortgaged Property over which such Notes and Related Notes are secured, (ii) events of default, (iii) meetings of Noteholders, (iv) fungible issues, (v) conflicts between the interests of the Noteholders and the relevant Related Noteholders and the duties of the Trustee as Trustee for holders of the Notes and as Trustee for holders of the relevant Related Notes and (vi) realisation of the Mortgaged Property.

If so specified in the relevant Final Terms prior to the security over the Mortgaged Property becoming enforceable in accordance with the Trust Deed and the Conditions certain amounts received by the Issuer in connection with the Collateral and/or any Swap Agreement or otherwise will be applied in such manner and order of priority (if any) as may be specified in the relevant Final Terms.

For these purposes and unless otherwise provided:

"Related Notes" means the outstanding Notes of any other Series which shares the same Mortgaged Property as the Notes and which was issued as part of the same transaction.

"Related Noteholders" means the holders of Related Notes.

(b)   *Non applicability*

Where no reference is made in the relevant Supplemental Trust Deed to any Swap Agreement or Credit Enhancement Agreement, references in these Terms and Conditions to any such document or agreement and to any Swap Counterparty, as the case may be, shall not be applicable.

4   **Mortgaged Property, Realisation of Mortgaged Property and Restrictions**

(a)   *Mortgaged Property*

The Notes will be secured pursuant to the relevant Supplemental Trust Deed. The form of the Mortgaged Property may comprise some or all of the assets and assignments set out below.

(b)   *Secured Assets*

The obligations of the Issuer under the Trust Deed, the Notes and the Coupons are secured by a first fixed charge over certain bonds, warrants, notes, receivables or equity securities of any form, denomination, type or issuer, monoline guarantees, options, swaps, loans or any other financial obligations assigned to or assumed by the Issuer or any other agreed assets owned by the Issuer as specified in the relevant Supplemental Trust Deed (the "Collateral") and a first fixed charge on all funds held from time to time by the Custodian and/or the Account Bank and/or by the Issuing and Paying Agent and/or the Registrar for payment of principal and interest on the Notes or of amounts due under the Swap Agreement. If so specified in the relevant Supplemental Trust Deed, the obligations of the Issuer under any Swap Agreement are also secured by a first fixed charge over the Collateral. Unless otherwise specified in the relevant Supplemental Trust Deed, the Collateral is held by the Custodian or the Account Bank on behalf of the Issuer subject to the charges set out in the Trust Deed. If so specified in the relevant Supplemental Trust Deed, under the terms of the relevant Swap Agreement the Swap Counterparty may require all or part of the Collateral to be transferred to it as security for the performance of the Issuer's obligations to the Swap Counterparty under the terms of the Swap Agreement on terms that the Swap Counterparty will be required to return equivalent collateral or the market value thereof to the Issuer on or before the termination of such Swap Agreement (subject to any enforcement of such security). In such circumstances the security over the Collateral in respect of the Issuer's obligations under the Trust Deed, the Notes and the Coupons will be over the Issuer's rights against the Swap Counterparty in relation to the Collateral as aforesaid.

If so specified in the relevant Supplemental Trust Deed, the Issuer's obligations under the Trust Deed, the Notes and the Coupons are also secured by an assignment by way of security of the Issuer's rights under the Swap Agreement and/or the Credit Enhancement Agreement in favour of the Trustee for itself and for the benefit of the holders of the Notes, Coupons and Receipts.

Additionally, the obligations of the Issuer may be secured pursuant to a security document other than the Trust Deed (an "**Other Security Document**") as specified in the relevant Supplemental Trust Deed.

The Trustee shall (subject to the provisions of the relevant Supplemental Trust Deed and to sub-Clause 6.3 of the Principal Trust Deed) apply all moneys received by it under the provisions of the Principal Trust Deed and the relevant Supplemental Trust Deed in connection with the realisation or enforcement of the security constituted thereby and by any relevant Other Security Document:

(i)    *if "Swap Counterparty Priority" is specified in the relevant Supplemental Trust Deed:*

    (a)    first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

    (b)    secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Account Bank and/or the Transfer Agents for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

    (c)    thirdly, rateably in meeting the claims (if any) of the Swap Counterparty under the relevant Swap Agreement(s);

    (d)    fourthly, rateably in meeting the claims (if any) of the holders of Notes, Coupons and Receipts. If the moneys received by the Trustee are not enough to pay such amounts in full, the Trustee shall apply them pro rata on the basis of the amount due to each party entitled to such payment; and

    (e)    fifthly, in payment of the balance (if any) to the Issuer,

provided that, if the "Swap Counterparty Priority" is expressed in the relevant Supplemental Trust Deed and Final Terms to be subject to adjustment on a Swap Counterparty default, and if and to the extent

that the Swap Counterparty fails to make payments due to the Issuer under any Swap Agreement and the Issuer promptly notifies the Trustee in writing of any such failure (which notice shall be conclusive and binding), the above application of moneys shall be amended so that the claims of the Swap Counterparty will, to the extent that there has been such failure, rank after the claims (if any) of the holders of Notes, Coupons and Receipts and before the claims of the Issuer in relation to the balance (if any).

(ii)     *if "Pari Passu Ranking" is specified in the relevant Supplemental Trust Deed:*

    (a)     first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

    (b)     secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Account Bank and/or the Transfer Agents for reimbursement in respect of payments properly made to any person in discharge of an Obligation;

    (c)     thirdly, rateably in meeting the claims (if any) of the Swap Counterparty under the relevant Swap Agreement(s) and the holders of Notes, Coupons and Receipts. If the moneys received by the Trustee are not enough to pay such amounts in full, the Trustee shall apply them pro rata on the basis of the amount due to each party entitled to such payment; and

    (d)     fourthly, in payment of the balance (if any) to the Issuer.

(iii)     *if "Noteholder Priority" is specified in the relevant Supplemental Trust Deed:*

    (a)     first, in payment or satisfaction of the fees, costs, charges, expenses and liabilities incurred by the Trustee or any receiver in preparing and executing the trusts in the Trust Deed (including any taxes required to be paid, the costs of realising any security and the Trustee's remuneration);

    (b)     secondly, in meeting claims of the Paying Agents and/or the Custodian and/or the Account Bank and/or the Transfer Agents for reimbursement in respect of payments properly made to any person in discharge of an Obligation;