## EXHIBIT H

**Ambulance** /// **Ambulance Victoria**

ABN 50 373 327 705

375 Manningham Road
Doncaster Victoria 3108

PO Box 2000
Doncaster 3108
Administration 03 9840 3500
Facsimile 03 9840 3534

www.ambulance.vic.gov.au

### DANTE FINANCE PLC
### MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME

#### Trustee Letter - Multiple Noteholders

To:     BNY Corporate Trustee Services Limited (the "**Trustee**")
        One Canada Square
        London
        E14 5AL
        United Kingdom

Attention:    Sanjay Jobanputra

28 November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013
(the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**
Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October
2002 as amended and restated from time to time and made between, amongst others, Dante
Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named
J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a
multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to
the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental
Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out
in the Principal Trust Deed.

1.    **Certification of Holding**

      We acknowledge and agree that the Trustee is not obliged to act on the requests set out
      in this letter unless and until it has received (i) equivalent requests from the beneficial
      owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the
      aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes
      will continue to be held until completion of the matters contemplated by this letter, which
      we hereby confirm in respect of our Notes.

2.    **Background**

      On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the
      Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing
      Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap
      Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy
      Filing is an event of default under the Swap Agreement relating to the Notes.

- 2 -

3. **Requests**

The Instructing Holders request the Trustee to:

(i) *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii) *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the **"Notice of Noteholder Meeting"**) in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the **"Requests"**.

4. **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the **"Information"**) from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

**"Relevant Person"** means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5. **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6. **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or

- 3 -

the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.    **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.    **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.    **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED** on 28 November 2008 by:

**Instructing Holder**
Name of Holder:                    Ambulance Victoria

Signature:

Print Name of Authorised Signatory:    Andrew Lee

Title:                              Manager, Financial Services

Amount of Holding:                 AUD$500,000

Percentage of Outstanding Notes:   1.89% (being AUD$500,000 of a current issue size of AUD$26,450,000)

~ 4 ~

**SCHEDULE 1**
**Form of Swap Termination Notice**

**[ZIRCON FINANCE LIMITED]**
**[INSERT ADDRESS]**

To:    Lehman Brothers Special Financing Inc.
2711 Centreville Road
Suite 400
Wilmington
Delaware 19808, U.S.A.

(the "**Counterparty**")

Lehman Brothers Special Financing Inc.
1000 West Street
The Brandywine Building
Suite 200
Wilmington
Delaware 19801, U.S.A.

Lehman Brothers Special Financing Inc.
745 Seventh Avenue
New York, NY 10019, U.S.A.

Lehman Brothers Special Financing Inc.
Lehman Brothers Messenger Center
1271 Sixth Avenue
New York, NY 10019, U.S.A.

Cc:    Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
(as "**Process Agent**")

**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates [*INSERT DATE*][1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:     Lehman Brothers International (Europe)
        25 Bank Street
        London, E14 5LE
        Attention: General Counsel
        Fax: +44 20 7067 8388

        Harvey R. Miller, Esq.
        Weil, Gotshal & Manges, LLP.
        767 Fifth Avenue
        New York, NY 10153
        Fax: +1 (212) 310-8077

        BNY Corporate Trustee Services Limited
        c/o The Bank of New York Mellon
        One Canada Square
        London
        E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

- 5 -

## SCHEDULE 2
### Form of Notice of Noteholder Meeting

Notice to Holders

**DANTE FINANCE PLC (the "First Issuer")**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")**

**ZIRCON FINANCE LIMITED (the "Issuer")**
**SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")**

**ISIN:** AU3FN0002937

**Notice of Meeting of Holders**

[ • ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:          [ • ]

Time:          [ • ]

Venue:        [ • ]

1.    **FIRST EXTRAORDINARY RESOLUTION**

      **APPOINTMENT OF SWAP CALCULATION AGENT**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1   *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ • ] 2008";

2.    **SECOND EXTRAORDINARY RESOLUTION**

**ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1     *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2     *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3     *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.     **THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1     *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2     *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.     **FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1     *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2     *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.      **FIFTH EXTRAORDINARY RESOLUTION**

        **RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

        "THE HOLDERS OF THE NOTES RESOLVE THAT

5.1     *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.      *Meetings Provisions*:    [*to be inserted*].

7.      *Further Regulations*:    [*to be inserted*].

8.      *Attendance in Person*:    [*to be inserted*].

9.      *Attendance by Proxy*:    [*to be inserted*].

10.     *Instructions*:    [*to be inserted*].

11.     *Quorum*:    [*to be inserted*].

12.     *Voting*:    [*to be inserted*].

13.     *Passing of Extraordinary Resolution*:    [*to be inserted*].

        *Further Information*:    [*to be inserted*].

        [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.     *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

        Address:                BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:         James Aggus

Fax:              +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:           dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes



**EUROBODALLA SHIRE COUNCIL**

*Good Government, better living*

To:        BNY Corporate Trustee Services Limited (the "Trustee")
           One Canada Square
           London                                          PO Box 99 Moruya NSW 2537
           E14 5AL                                         email: council@eurocoast.nsw.gov.au
           United Kingdom                                  website: www.esc.nsw.gov.au
                                                           DX 4873

Attention:   Sanjay Jobanputra

## DANTE FINANCE PLC
## MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME

### Trustee Letter - Multiple Noteholders

28 November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.    **Certification of Holding**

      We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.    **Background**

      On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap

- 2 -

Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

3. **Requests**

The Instructing Holders request the Trustee to:

(i) *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii) *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the "**Notice of Noteholder Meeting**") in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the "**Requests**".

4. **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the "**Information**") from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

"**Relevant Person**" means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5. **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6. **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and

- 3 -

remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.   **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.   **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.   **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED** on 28th day of November 2008 by:

**Instructing Holder**

| | |
|---|---|
| Name of Holder: | Eurobodalla Shire Council |
| Signature: | *M. S. Craig* |
| Print Name of Authorised Signatory: | Miles S Craighead |
| Title: | Executive Manager - Finance |
| Amount of Holding: | $250,000 AUD |
| Percentage of Outstanding Notes: | 0.95% |

- 4 -

## SCHEDULE 1
### Form of Swap Termination Notice

**[ZIRCON FINANCE LIMITED]**
**[INSERT ADDRESS]**

To:    Lehman Brothers Special Financing Inc.
2711 Centreville Road
Suite 400
Wilmington
Delaware 19808, U.S.A.

(the "**Counterparty**")

Lehman Brothers Special Financing Inc.
1000 West Street
The Brandywine Building
Suite 200
Wilmington
Delaware 19801, U.S.A.

Lehman Brothers Special Financing Inc.
745 Seventh Avenue
New York, NY 10019, U.S.A.

Lehman Brothers Special Financing Inc.
Lehman Brothers Messenger Center
1271 Sixth Avenue
New York, NY 10019, U.S.A.

Cc:    Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
(as "**Process Agent**")


**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates *[INSERT DATE]*[1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:    Lehman Brothers International (Europe)
       25 Bank Street
       London, E14 5LE
       Attention: General Counsel
       Fax: +44 20 7067 8388

       Harvey R. Miller, Esq.
       Weil, Gotshal & Manges, LLP.
       767 Fifth Avenue
       New York, NY 10153
       Fax: +1 (212) 310-8077

       BNY Corporate Trustee Services Limited
       c/o The Bank of New York Mellon
       One Canada Square
       London
       E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

- 5 -

## SCHEDULE 2
### Form of Notice of Noteholder Meeting

Notice to Holders

## DANTE FINANCE PLC (the "First Issuer")
### MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")

## ZIRCON FINANCE LIMITED (the "Issuer")
### SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")

### ISIN: AU3FN0002937

### Notice of Meeting of Holders

[ • ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:           [ • ]

Time:           [ • ]

Venue:          [ • ]

1.    **FIRST EXTRAORDINARY RESOLUTION**

      **APPOINTMENT OF SWAP CALCULATION AGENT**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1   *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ • ] 2008";

2.    **SECOND EXTRAORDINARY RESOLUTION**

ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1   *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2   *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3   *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.    **THIRD EXTRAORDINARY RESOLUTION**

      **NOTEHOLDER COMMITTEE**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1   *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2   *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.    **FOURTH EXTRAORDINARY RESOLUTION**

      **ADMINISTRATIVE MATTERS**

      "THE HOLDERS OF THE NOTES RESOLVE THAT

- 3 -

4.1    *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2    *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.    **FIFTH EXTRAORDINARY RESOLUTION**

   **RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

   "THE HOLDERS OF THE NOTES RESOLVE THAT

5.1    *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.    *Meetings Provisions*:    [*to be inserted*].

7.    *Further Regulations*:    [*to be inserted*].

8.    *Attendance in Person*:    [*to be inserted*].

9.    *Attendance by Proxy*:    [*to be inserted*].

10.    *Instructions*:    [*to be inserted*].

11.    *Quorum*:    [*to be inserted*].

12.    *Voting*:    [*to be inserted*].

13.    *Passing of Extraordinary Resolution*:    [*to be inserted*].

   *Further Information*:    [*to be inserted*].

   [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.    *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

   Address:        BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:            James Aggus

Fax:                  +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:               dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes

# BELMONT PARK INVESTMENTS PTY LTD

ABN 31 109 595 351

### DANTE FINANCE PLC
### MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME

#### Trustee Letter - Multiple Noteholders

To:     BNY Corporate Trustee Services Limited (the "Trustee")
        One Canada Square
        London
        E14 5AL
        United Kingdom

Attention:     Sanjay Jobanputra

28 November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**
Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.     **Certification of Holding**

       We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.     **Background**

       On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in

---

GPO BOX 509
BRISBANE QLD 4001
Phone: 07 3233 6300 Fax: 07 3233 6330

# BELMONT PARK INVESTMENTS PTY LTD

ABN 31 109 595 351

respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

3. **Requests**

The Instructing Holders request the Trustee to:

(i) *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii) *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the **"Notice of Noteholder Meeting"**) in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the **"Requests"**.

4. **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the **"Information"**) from a Relevant Person (or any of its advisers) In connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

**"Relevant Person"** means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5. **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability

# BELMONT PARK INVESTMENTS PTY LTD

ABN 31 109 595 351

may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6. **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7. **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8. **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9. **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

# BELMONT PARK INVESTMENTS PTY LTD

ABN 31 109 595 351

**EXECUTED AS A DEED** on 28 November 2008 by:

**Instructing Holder**

| | |
|---|---|
| Name of Holder: | Belmont Park Investments Pty Ltd__ |
| Signature: | |
| Print Name of Authorised Signatory: | Mark McCauley_____ |
| Title: | Power of Attorney_____ |
| Amount of Holding: | AUD2,425,000 |
| Percentage of Outstanding Notes: | 9.17% |

Witnessed by:

Greg Beach
31/1819 Wynnum Road
Tingalpa QLD 4173

# BELMONT PARK INVESTMENTS PTY LTD
ABN 31 109 595 351

**SCHEDULE 1**
**Form of Swap Termination Notice**

**[ZIRCON FINANCE LIMITED]**
**[INSERT ADDRESS]**

To:    Lehman Brothers Special Financing Inc.
2711 Centreville Road
Suite 400
Wilmington
Delaware 19808, U.S.A.

(the "**Counterparty**")

Lehman Brothers Special Financing Inc.
1000 West Street
The Brandywine Building
Suite 200
Wilmington
Delaware 19801, U.S.A.

Lehman Brothers Special Financing Inc.
745 Seventh Avenue
New York, NY 10019, U.S.A.

Lehman Brothers Special Financing Inc.
Lehman Brothers Messenger Center
1271 Sixth Avenue
New York, NY 10019, U.S.A.

Cc:    Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
(as "**Process Agent**")

**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates [*INSERT DATE*][1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:     Lehman Brothers International (Europe)
        25 Bank Street
        London, E14 5LE
        Attention: General Counsel
        Fax: +44 20 7067 8388

        Harvey R. Miller, Esq.
        Weil, Gotshal & Manges, LLP.
        767 Fifth Avenue
        New York, NY 10153
        Fax: +1 (212) 310-8077

        BNY Corporate Trustee Services Limited
        c/o The Bank of New York Mellon
        One Canada Square
        London
        E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

# BELMONT PARK INVESTMENTS PTY LTD

ABN 31 109 595 351

**SCHEDULE 2**
**Form of Notice of Noteholder Meeting**

Notice to Holders

**DANTE FINANCE PLC (the "First Issuer")**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")**

**ZIRCON FINANCE LIMITED (the "Issuer")**
**SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")**

**ISIN: AU3FN0002937**

**Notice of Meeting of Holders**

[ ● ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:          [ ● ]

Time:          [ ● ]

Venue:         [ ● ]

1.    **FIRST EXTRAORDINARY RESOLUTION**

      **APPOINTMENT OF SWAP CALCULATION AGENT**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1   *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ ● ] 2008";

2.    **SECOND EXTRAORDINARY RESOLUTION**

ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1　*Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2　*Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3　*Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.　**THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1　*Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2　*Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.　**FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1    *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2    *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.    **FIFTH EXTRAORDINARY RESOLUTION**

**RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

5.1    *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.    *Meetings Provisions*:    [*to be inserted*].

7.    *Further Regulations*:    [*to be inserted*].

8.    *Attendance in Person*:    [*to be inserted*].

9.    *Attendance by Proxy*:    [*to be inserted*].

10.    *Instructions*:    [*to be inserted*].

11.    *Quorum*:    [*to be inserted*].

12.    *Voting*:    [*to be inserted*].

13.    *Passing of Extraordinary Resolution*:    [*to be inserted*].

    *Further Information*:    [*to be inserted*].

    [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.    *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

    Address:        BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:        James Aggus

Fax:              +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:           dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes

# PANORAMA RIDGE PTY LTD

ABN 44 109 595 404

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME**

**Trustee Letter - Multiple Noteholders**

To:       BNY Corporate Trustee Services Limited (the "**Trustee**")
          One Canada Square
          London
          E14 5AL
          United Kingdom

Attention:     Sanjay Jobanputra

28 November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.     **Certification of Holding**

       We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.     **Background**

       On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in

GPO BOX 509
BRISBANE QLD 4001
Phone: 07 3233 6300 Fax: 07 3233 6330

# PANORAMA RIDGE PTY LTD
ABN 44 109 595 404

respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

3.  **Requests**

The Instructing Holders request the Trustee to:

(i)  *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii)  *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the "**Notice of Noteholder Meeting**") in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the "**Requests**".

4.  **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the "**Information**") from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

"**Relevant Person**" means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5.  **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability

# PANORAMA RIDGE PTY LTD
ABN 44 109 595 404

may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6.    **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.    **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.    **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.    **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

# PANORAMA RIDGE PTY LTD

ABN 44 109 595 404

**EXECUTED AS A DEED** on 28 November 2008 by:

**Instructing Holder**

| | |
|---|---|
| Name of Holder: | Panorama Ridge Pty Ltd__ |
| Signature: | |
| Print Name of Authorised Signatory: | Mark McCauley_____ |
| Title: | Power of Attorney_____ |
| Amount of Holding: | AUD2,425,000 |
| Percentage of Outstanding Notes: | 9.17% |

Witnessed by:

Greg Beach
31/1819 Wynnum Road
Tingalpa QLD 4173

# PANORAMA RIDGE PTY LTD
ABN 44 109 595 404

### SCHEDULE 1
**Form of Swap Termination Notice**

[ZIRCON FINANCE LIMITED]
[INSERT ADDRESS]

To:     Lehman Brothers Special Financing Inc.
        2711 Centreville Road
        Suite 400
        Wilmington
        Delaware 19808, U.S.A.

        (the "**Counterparty**")

        Lehman Brothers Special Financing Inc.
        1000 West Street
        The Brandywine Building
        Suite 200
        Wilmington
        Delaware 19801, U.S.A.

        Lehman Brothers Special Financing Inc.
        745 Seventh Avenue
        New York, NY 10019, U.S.A.

        Lehman Brothers Special Financing Inc.
        Lehman Brothers Messenger Center
        1271 Sixth Avenue
        New York, NY 10019, U.S.A.

Cc:     Lehman Brothers International (Europe) (in administration)
        25 Bank Street
        London
        E14 5LE
        (as "**Process Agent**")


**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates *[INSERT DATE]*[1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:     Lehman Brothers International (Europe)
        25 Bank Street
        London, E14 5LE
        Attention: General Counsel
        Fax: +44 20 7067 8388

        Harvey R. Miller, Esq.
        Weil, Gotshal & Manges, LLP.
        767 Fifth Avenue
        New York, NY 10153
        Fax: +1 (212) 310-8077

        BNY Corporate Trustee Services Limited
        c/o The Bank of New York Mellon
        One Canada Square
        London
        E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

# PANORAMA RIDGE PTY LTD

ABN 44 109 595 404

**SCHEDULE 2**
**Form of Notice of Noteholder Meeting**

Notice to Holders

**DANTE FINANCE PLC (the "First Issuer")**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")**

**ZIRCON FINANCE LIMITED (the "Issuer")**
**SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")**

**ISIN:** AU3FN0002937

**Notice of Meeting of Holders**

[ • ] 2008

Reference is made to the principal trust deed (the **"Principal Trust Deed"**) dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the **"Trustee"**), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the **"Supplemental Trust Deed"**) pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the **"Meeting"**), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:          [ • ]

Time:          [ • ]

Venue:         [ • ]

1.      **FIRST EXTRAORDINARY RESOLUTION**

        **APPOINTMENT OF SWAP CALCULATION AGENT**

        "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1     *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ • ] 2008";

2.      **SECOND EXTRAORDINARY RESOLUTION**

ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1 *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2 *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3 *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3. **THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1 *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2 *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4. **FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1    *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2    *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.    **FIFTH EXTRAORDINARY RESOLUTION**

**RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

5.1    *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.    *Meetings Provisions*:    [*to be inserted*].

7.    *Further Regulations*:    [*to be inserted*].

8.    *Attendance in Person*:    [*to be inserted*].

9.    *Attendance by Proxy*:    [*to be inserted*].

10.    *Instructions*:    [*to be inserted*].

11.    *Quorum*:    [*to be inserted*].

12.    *Voting*:    [*to be inserted*].

13.    *Passing of Extraordinary Resolution*:    [*to be inserted*].

       *Further Information*:    [*to be inserted*].

       [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.    *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

       Address:            BNY Corporate Trustee Services Limited

- 4 -

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:         James Aggus

Fax:               +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:            dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes

Lifeplan Australia
Friendly Society Limited

ABN 78 087 649 492

Head Office:

111 Gawler Place
Adelaide SA 5000

Telephone: (08) 8212 3838

Postal Address:

GPO Box 89
Adelaide SA 5001

Facsimile: (08) 8212 2592



**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME**

**Trustee Letter - Multiple Noteholders**

To:      BNY Corporate Trustee Services Limited (the "**Trustee**")
         One Canada Square
         London
         E14 5AL
         United Kingdom

Attention:   Sanjay Jobanputra

28 November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**
Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.    **Certification of Holding**

      We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.    **Background**

      On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

111 Gawler Place, Adelaide SA 5000                    Level 9, 520 Collins Street, Melbourne VIC 3000          General Enquiries 1300 1300 38
GPO Box 89, Adelaide SA 5001                          PO Box 194 Collins Street West, Melbourne VIC 8007       Email enquiries@lifeplan.com.au
Telephone 08 8212 3838 Fax 08 8212 2790              Telephone 03 9616 2444 Fax 03 9616 2442                 Internet lifeplan.com.au

Lifeplan Australia Friendly Society Limited ABN 78 087 649 492 AFSL 237989 Lifeplan Australia Building Society Limited ABN 30 087 652 079 AFSL 237994

3.    **Requests**

The Instructing Holders request the Trustee to:

(i)    *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii)    *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the "**Notice of Noteholder Meeting**") in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the "**Requests**".

4.    **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the "**Information**") from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

"**Relevant Person**" means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5.    **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6.    **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.    **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.    **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.    **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED** on 28 November 2008 by:

**Instructing Holder**
Name of Holder:                          <u>Lifeplan Australia Friendly Society Limited</u>

Signature:                               _____

Print Name of Authorised Signatory:      _____

Title:                                   _____

Amount of Holding:                       AUD 2,000,000

Percentage of Outstanding Notes:         7.56%


THE COMMON SEAL OF LIFEPLAN AUSTRALIA      )
FRIENDLY SOCIETY LIMITED WAS AFFIXED IN    )
THE PRESENCE OF                            )


Sign: _____          Sign: _____
        Director                             Secretary

Name: C.E.G. Wright                  Name: A.M. Cooper

3

**SCHEDULE 1**
**Form of Swap Termination Notice**

[ZIRCON FINANCE LIMITED]
[INSERT ADDRESS]

To:      Lehman Brothers Special Financing Inc.
         2711 Centreville Road
         Suite 400
         Wilmington
         Delaware 19808, U.S.A.

         (the "Counterparty")

         Lehman Brothers Special Financing Inc.
         1000 West Street
         The Brandywine Building
         Suite 200
         Wilmington
         Delaware 19801, U.S.A.

         Lehman Brothers Special Financing Inc.
         745 Seventh Avenue
         New York, NY 10019, U.S.A.

         Lehman Brothers Special Financing Inc.
         Lehman Brothers Messenger Center
         1271 Sixth Avenue
         New York, NY 10019, U.S.A.

Cc:      Lehman Brothers International (Europe) (in administration)
         25 Bank Street
         London
         E14 5LE
         (as "Process Agent")


**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates [*INSERT DATE*][1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:    Lehman Brothers International (Europe)
       25 Bank Street
       London, E14 5LE
       Attention: General Counsel
       Fax: +44 20 7067 8388

       Harvey R. Miller, Esq.
       Weil, Gotshal & Manges, LLP.
       767 Fifth Avenue
       New York, NY 10153
       Fax: +1 (212) 310-8077

       BNY Corporate Trustee Services Limited
       c/o The Bank of New York Mellon
       One Canada Square
       London
       E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

**SCHEDULE 2**
**Form of Notice of Noteholder Meeting**

Notice to Holders

## DANTE FINANCE PLC (the "First Issuer")
## MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")

## ZIRCON FINANCE LIMITED (the "Issuer")
## SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")

### ISIN: AU3FN0002937

### Notice of Meeting of Holders

[ • ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:           [ • ]

Time:           [ • ]

Venue:          [ • ]

1.    **FIRST EXTRAORDINARY RESOLUTION**

      **APPOINTMENT OF SWAP CALCULATION AGENT**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1   *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ • ] 2008";

2.    **SECOND EXTRAORDINARY RESOLUTION**

ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1     *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2     *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3     *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.      **THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1     *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2     *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.      **FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1   *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2   *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.    **FIFTH EXTRAORDINARY RESOLUTION**

      **RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

      "THE HOLDERS OF THE NOTES RESOLVE THAT

5.1   *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.    *Meetings Provisions*:   [*to be inserted*].

7.    *Further Regulations*:   [*to be inserted*].

8.    *Attendance in Person*:   [*to be inserted*].

9.    *Attendance by Proxy*:   [*to be inserted*].

10.   *Instructions*:   [*to be inserted*].

11.   *Quorum*:   [*to be inserted*].

12.   *Voting*:   [*to be inserted*].

13.   *Passing of Extraordinary Resolution*:   [*to be inserted*].

      *Further Information*:   [*to be inserted*].

      [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.   *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

      Address:            BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:          James Aggus

Fax:                +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:             dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes

# CITY OF SWAN

**2 Midland Square**
**PO Box 196**
**MIDLAND WA 6936**

### DANTE FINANCE PLC
### MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME

**Trustee Letter - Multiple Noteholders**

To:     BNY Corporate Trustee Services Limited (the "**Trustee**")
        One Canada Square
        London
        E14 5AL
        United Kingdom

Attention:    Sanjay Jobanputra

November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**
Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.      **Certification of Holding**

        We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.      **Background**

        On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

3.    **Requests**

The Instructing Holders request the Trustee to:

(i)    *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii)   *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the **"Notice of Noteholder Meeting"**) in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the **"Requests"**.

4.    **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the **"Information"**) from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

**"Relevant Person"** means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5.    **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6.    **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or

the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.      **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.      **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.      **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED** on 28 November 2008 by:

**Instructing Holder**
Name of Holder:                          *City of Swan*

Signature:                               *Colin Cam*

Print Name of Authorised Signatory:      *Colin Cameron*

Title:                                   *Executive Manager Corporate Services*

Amount of Holding:                       · AUD $500,000

Percentage of Outstanding Notes:         *1·89* %

- 4 -

## SCHEDULE 1
### Form of Swap Termination Notice

**[ZIRCON FINANCE LIMITED]**
**[INSERT ADDRESS]**

To:     Lehman Brothers Special Financing Inc.
        2711 Centreville Road
        Suite 400
        Wilmington
        Delaware 19808, U.S.A.

        (the "**Counterparty**")

        Lehman Brothers Special Financing Inc.
        1000 West Street
        The Brandywine Building
        Suite 200
        Wilmington
        Delaware 19801, U.S.A.

        Lehman Brothers Special Financing Inc.
        745 Seventh Avenue
        New York, NY 10019, U.S.A.

        Lehman Brothers Special Financing Inc.
        Lehman Brothers Messenger Center
        1271 Sixth Avenue
        New York, NY 10019, U.S.A.

Cc:     Lehman Brothers International (Europe) (in administration)
        25 Bank Street
        London
        E14 5LE
        (as "**Process Agent**")

**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates [*INSERT DATE*][1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to  BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:    Lehman Brothers International (Europe)
       25 Bank Street
       London, E14 5LE
       Attention: General Counsel
       Fax: +44 20 7067 8388

       Harvey R. Miller, Esq.
       Weil, Gotshal & Manges, LLP.
       767 Fifth Avenue
       New York, NY 10153
       Fax: +1 (212) 310-8077

       BNY Corporate Trustee Services Limited
       c/o The Bank of New York Mellon
       One Canada Square
       London
       E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

- 5 -

## SCHEDULE 2
### Form of Notice of Noteholder Meeting

Notice to Holders

## DANTE FINANCE PLC (the "First Issuer")
## MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")

## ZIRCON FINANCE LIMITED (the "Issuer")
## SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")

### ISIN: AU3FN0002937

### Notice of Meeting of Holders

[ ● ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:             [ ● ]

Time:             [ ● ]

Venue:            [ ● ]

1.    **FIRST EXTRAORDINARY RESOLUTION**

      **APPOINTMENT OF SWAP CALCULATION AGENT**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1   *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ ● ] 2008";

2.    **SECOND EXTRAORDINARY RESOLUTION**

ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1    *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2    *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3    *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.    **THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1    *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2    *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.    **FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1 *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2 *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5. **FIFTH EXTRAORDINARY RESOLUTION**

   **RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

   "THE HOLDERS OF THE NOTES RESOLVE THAT

5.1 *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6. *Meetings Provisions*:   [*to be inserted*].

7. *Further Regulations*:   [*to be inserted*].

8. *Attendance in Person*:   [*to be inserted*].

9. *Attendance by Proxy*:   [*to be inserted*].

10. *Instructions*:   [*to be inserted*].

11. *Quorum*:   [*to be inserted*].

12. *Voting*:   [*to be inserted*].

13. *Passing of Extraordinary Resolution*:   [*to be inserted*].

    *Further Information*:   [*to be inserted*].

    [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14. *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

    Address:              BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:          James Aggus

Fax:                +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:             dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes



From the office of the Trustee
212 Pacific Highway | PO Box 543 | Charlestown NSW 2290
telephone (02) 4904 8519 | facsimile (02) 4943 5718
email trustee@nationalwidesuper.com.au | website www.nsfsuper.com.au

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME**

**Trustee Letter – Multiple Noteholders**

To:     BNY Corporate Trustee Services Limited (the "Trustee")
        One Canada Square
        London
        E14 5AL
        United Kingdom

Attention:   Sanjay Jobanputra

28 November 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**

Reference is made to the principal trust deed (the "Principal Trust Deed") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("Dante") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "Trustee"), pursuant to which a multi-issuer secured obligation programme (the "Programme") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "Supplemental Trust Deed") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.   **Certification of Holding**

     We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "Instructing Holders") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.   **Background**

     On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "Bankruptcy Filing"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

- 2 -

3.    **Requests**

The Instructing Holders request the Trustee to:

(i)    *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii)    *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the "**Notice of Noteholder Meeting**") in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the "**Requests**".

4.    **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the "**Information**") from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

"**Relevant Person**" means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5.    **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6.    **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies

- 3 -

right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.    **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.    **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.    **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED on**        28 November 2008 by:

**Instructing Holder**
Name of Holder:                        NSF Nominees Pty Limited

Signature:

Print Name of Authorised Signatory:    Ian Morante

Title:                                 Company Secretary

Amount of Holding:                     AUD$750,000

Percentage of Outstanding Notes:          2.84%



- 4 -

## SCHEDULE 1
**Form of Swap Termination Notice**

[ZIRCON FINANCE LIMITED]
[INSERT ADDRESS]

To:    Lehman Brothers Special Financing Inc.
2711 Centreville Road
Suite 400
Wilmington
Delaware 19808, U.S.A.

(the "**Counterparty**")

Lehman Brothers Special Financing Inc.
1000 West Street
The Brandywine Building
Suite 200
Wilmington
Delaware 19801, U.S.A.

Lehman Brothers Special Financing Inc.
745 Seventh Avenue
New York, NY 10019, U.S.A.

Lehman Brothers Special Financing Inc.
Lehman Brothers Messenger Center
1271 Sixth Avenue
New York, NY 10019, U.S.A.

Cc:    Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
(as "**Process Agent**")

**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates [*INSERT DATE*][1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:     Lehman Brothers International (Europe)
        25 Bank Street
        London, E14 5LE
        Attention: General Counsel
        Fax: +44 20 7067 8388

        Harvey R. Miller, Esq.
        Weil, Gotshal & Manges, LLP.
        767 Fifth Avenue
        New York, NY 10153
        Fax: +1 (212) 310-8077

        BNY Corporate Trustee Services Limited
        c/o The Bank of New York Mellon
        One Canada Square
        London
        E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

## SCHEDULE 2
**Form of Notice of Noteholder Meeting**

Notice to Holders

## DANTE FINANCE PLC (the "First Issuer")
## MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")

## ZIRCON FINANCE LIMITED (the "Issuer")
## SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")

### ISIN: AU3FN0002937

### Notice of Meeting of Holders

[ • ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

| | |
|---|---|
| Date: | [ • ] |
| Time: | [ • ] |
| Venue: | [ • ] |

1.    **FIRST EXTRAORDINARY RESOLUTION**

**APPOINTMENT OF SWAP CALCULATION AGENT**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1    *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ • ] 2008";

2.    **SECOND EXTRAORDINARY RESOLUTION**

**ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1 *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2 *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3 *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3. **THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1 *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2 *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4. **FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1    *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2    *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.    **FIFTH EXTRAORDINARY RESOLUTION**

**RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

5.1    *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.    *Meetings Provisions*:    [*to be inserted*].

7.    *Further Regulations*:    [*to be inserted*].

8.    *Attendance in Person*:    [*to be inserted*].

9.    *Attendance by Proxy*:    [*to be inserted*].

10.    *Instructions*:    [*to be inserted*].

11.    *Quorum*:    [*to be inserted*].

12.    *Voting*:    [*to be inserted*].

13.    *Passing of Extraordinary Resolution*:    [*to be inserted*].

    *Further Information*:    [*to be inserted*].

    [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.    *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

    Address:        BNY Corporate Trustee Services Limited

- 4 -

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:          James Aggus

Fax:               +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:            dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes



Gosford City Council
49 Mann Street
Gosford NSW 2250
PO Box 21
Gosford NSW 2250
DX 7211 Gosford

Telephone: 02 4325 8222
Facsimile:  02 4323 2477
goscity@gosford.nsw.gov.au
www.gosford.nsw.gov.au
ABN 78 303 458 861

Telephone (02) **4325 8326**          Please Quote:          **Brian Shackleton**

## DANTE FINANCE PLC
## MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME

### Trustee Letter - Multiple Noteholders

To:          BNY Corporate Trustee Services Limited (the "**Trustee**")
             One Canada Square
             London
             E14 5AL
             United Kingdom

Attention:   Sanjay Jobanputra

1st December 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.     **Certification of Holding**

       We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.     **Background**

       On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

3.    **Requests**

The Instructing Holders request the Trustee to:

(i)    *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii)    *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the **"Notice of Noteholder Meeting"**) in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the **"Requests"**.

4.    **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the **"Information"**) from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

**"Relevant Person"** means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5.    **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6.    **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or

- 3 -

the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7. **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8. **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9. **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED** on this 1st Day of December 2008 by:

**Instructing Holder**
Name of Holder:                                  Gosford City Council

Signature:

Print Name of Authorised Signatory:      Brian Shackleton

Title:                                           Manager of Finance

Amount of Holding:                          AUD  $ 2,500,000.00

Percentage of Outstanding Notes:               9.45%

- 4 -

## SCHEDULE 1
### Form of Swap Termination Notice

[ZIRCON FINANCE LIMITED]
[INSERT ADDRESS]

To:    Lehman Brothers Special Financing Inc.
       2711 Centreville Road
       Suite 400
       Wilmington
       Delaware 19808, U.S.A.

       (the "**Counterparty**")

       Lehman Brothers Special Financing Inc.
       1000 West Street
       The Brandywine Building
       Suite 200
       Wilmington
       Delaware 19801, U.S.A.

       Lehman Brothers Special Financing Inc.
       745 Seventh Avenue
       New York, NY 10019, U.S.A.

       Lehman Brothers Special Financing Inc.
       Lehman Brothers Messenger Center
       1271 Sixth Avenue
       New York, NY 10019, U.S.A.

Cc:    Lehman Brothers International (Europe) (in administration)
       25 Bank Street
       London
       E14 5LE
       (as "**Process Agent**")

**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates *[INSERT DATE]*[1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:    Lehman Brothers International (Europe)
       25 Bank Street
       London, E14 5LE
       Attention: General Counsel
       Fax: +44 20 7067 8388

       Harvey R. Miller, Esq.
       Weil, Gotshal & Manges, LLP.
       767 Fifth Avenue
       New York, NY 10153
       Fax: +1 (212) 310-8077

       BNY Corporate Trustee Services Limited
       c/o The Bank of New York Mellon
       One Canada Square
       London
       E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

- 5 -

**SCHEDULE 2**
**Form of Notice of Noteholder Meeting**

Notice to Holders

**DANTE FINANCE PLC (the "First Issuer")**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")**

**ZIRCON FINANCE LIMITED (the "Issuer")**
**SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")**

**ISIN:** AU3FN0002937

**Notice of Meeting of Holders**

[ ● ] 2008

Reference is made to the principal trust deed (the **"Principal Trust Deed"**) dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the **"Trustee"**), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the **"Supplemental Trust Deed"**) pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the **"Meeting"**), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

| | |
|---|---|
| Date: | [ ● ] |
| Time: | [ ● ] |
| Venue: | [ ● ] |

1. **FIRST EXTRAORDINARY RESOLUTION**

   **APPOINTMENT OF SWAP CALCULATION AGENT**

   "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

   1.1 *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ ● ] 2008";

2. **SECOND EXTRAORDINARY RESOLUTION**

**ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1 *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2 *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3 *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.    **THIRD EXTRAORDINARY RESOLUTION**

**NOTEHOLDER COMMITTEE**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1 *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2 *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.    **FOURTH EXTRAORDINARY RESOLUTION**

**ADMINISTRATIVE MATTERS**

"THE HOLDERS OF THE NOTES RESOLVE THAT

4.1    *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2    *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.     **FIFTH EXTRAORDINARY RESOLUTION**

     **RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

     "THE HOLDERS OF THE NOTES RESOLVE THAT

5.1    *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.     *Meetings Provisions*:    [*to be inserted*].

7.     *Further Regulations*:    [*to be inserted*].

8.     *Attendance in Person*:    [*to be inserted*].

9.     *Attendance by Proxy*:    [*to be inserted*].

10.    *Instructions*:    [*to be inserted*].

11.    *Quorum*:    [*to be inserted*].

12.    *Voting*:    [*to be inserted*].

13.    *Passing of Extraordinary Resolution*:    [*to be inserted*].

     *Further Information*:    [*to be inserted*].

     [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.    *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

     Address:            BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:          James Aggus

Fax:               +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:            dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE**
**SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes



**The City of Newcastle**

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATIONS PROGRAMME**

**Trustee Letter - Multiple Noteholders**

PO Box 489, Newcastle
NSW 2300 Australia
Phone 02 4974 2000
Facsimile 02 4974 2222
Email mail@ncc.nsw.gov.au

To:     BNY Corporate Trustee Services Limited (the "**Trustee**")
        One Canada Square
        London
        E14 5AL
        United Kingdom

Attention:   Sanjay Jobanputra

2 December 2008

Dear Sirs

**DANTE FINANCE PLC**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME**
**ZIRCON FINANCE LIMITED (the "Issuer")**
**AUD30,000,000 SERIES 2007-9 TRANCHE A SYNTHETIC PORTFOLIO NOTES DUE 2013 (the "Notes")**
**Termination of Swap and Convening of Noteholder Meeting**

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC ("**Dante**") and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which a multi-issuer secured obligation programme (the "**Programme**") was established. We also refer to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Capitalised terms used in this letter and not defined in this letter shall have the meanings set out in the Principal Trust Deed.

1.     **Certification of Holding**

       We acknowledge and agree that the Trustee is not obliged to act on the requests set out in this letter unless and until it has received (i) equivalent requests from the beneficial owners (the "**Instructing Holders**") of Notes holding in aggregate more than 20% of the aggregate outstanding principal amount of the Notes, and (ii) confirmation that such Notes will continue to be held until completion of the matters contemplated by this letter, which we hereby confirm in respect of our Notes.

2.     **Background**

       On 3 October 2008, a bankruptcy filing was made pursuant to Chapter 11 of the Bankruptcy Code of the United States in respect of Lehman Brothers Special Financing Inc. (the "**Bankruptcy Filing**"). Lehman Brothers Special Financing Inc. acts as Swap Counterparty in respect of the Swap Agreement relating to the Notes. The Bankruptcy Filing is an event of default under the Swap Agreement relating to the Notes.

Great Place, Great Lifestyle, Great Future

- 2 -

3.    **Requests**

The Instructing Holders request the Trustee to:

(i)    *Swap Termination*: enforce its rights as Trustee in respect of the Mortgaged Property relating to the Notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty in the form, or substantially in the form, set out in Schedule 1 (*Form of Swap Termination Notice*) to this letter agreement terminating the Swap Agreement relating to the Notes and taking such other action as the Instructing Holders may direct in writing; and

(ii)    *Meeting of Noteholders*: immediately upon termination of the Swap Agreement relating to the Notes, convene a meeting of the holders of the Notes by sending notice (the "**Notice of Noteholder Meeting**") in the form, or substantially in the form, set out in Schedule 2 (*Form of Notice of Noteholder Meeting*) to this letter agreement to consider, and if thought fit, to pass resolutions relating to the redemption of the Notes and additional enforcement action as set out in the Notice of Noteholder Meeting,

together, the "**Requests**".

4.    **Hold Harmless**

Notwithstanding any other provision in this letter to the contrary, the Instructing Holders agree that no Relevant Person will be liable for any action taken by it pursuant to any Requests, other than to the extent suffered or incurred by a Relevant Person as a result of a Relevant Person's negligence, default, breach of duty or breach of trust of which it may be guilty and to the extent that we have received and relied on any information, analysis or explanations (the "**Information**") from a Relevant Person (or any of its advisers) in connection with the Notes, the Mortgaged Property or any Requests, we agree not to bring, or threaten to bring, any actions, proceedings or claims against such Relevant Person or any of its advisers in any way arising out of or in connection with the grant of access to the Information. The Instructing Holders agree and acknowledge that the Contracts (Rights of Third Parties) Act 1999 will apply in respect of Clause 4 (*Hold Harmless*) of this letter agreement.

"**Relevant Person**" means the Trustee and each director, officer, employee and agent or delegate or other appointee of the Trustee appointed by the Trustee pursuant to the terms of the Trust Deed.

5.    **Representations of Instructing Holders**

The Instructing Holders each represent and warrant that this letter agreement has been duly authorised, executed and delivered on their behalf and constitutes their legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. The Instructing Holders waive any defences based upon the invalidity of such representations and warranties.

6.    **Rights Cumulative**

Nothing in this letter agreement shall limit any remedy, relief or indemnification available to any Relevant Person under the Trust Deed, at law or otherwise. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or

- 3 -

the subsequent exercise of such right or remedy. The provisions of this letter agreement shall continue in full force and effect notwithstanding discharge of the Trust Deed.

This letter agreement and the representations and warranties contained in this letter shall be binding upon each Instructing Holder and its successors and assigns and shall inure to the benefit of the Trustee and each other Relevant Person and each of their successors and assigns.

7.    **Counterparts**

This letter agreement may be executed by the Instructing Holders in counterparts.

8.    **Notices**

Notices provided pursuant to this letter agreement shall be delivered in person or sent by overnight mail, in either case with a copy via facsimile to the address separately notified by each of the parties to the other parties.

9.    **Governing Law and Jurisdiction**

The Instructing Holders and the Trustee agree that (i) the terms of this letter agreement will be governed by and construed in accordance with English law and (ii) all claims, actions and proceedings directly or indirectly relating to or arising from this letter agreement shall be subject to the exclusive jurisdiction of the English Courts and the Instructing Holders each submit to the exclusive jurisdiction of such courts for such claims, actions or proceedings.

**EXECUTED AS A DEED** on *2ND DECEMBER* 2008 by:

**Instructing Holder**
Name of Holder:                                    *NEWCASTLE CITY COUNCIL*

Signature:                                              *[signature]*

Print Name of Authorised Signatory:    *MICHAEL MCMAHON ( PUBLIC OFFICER )*

Title:                                                      *GROUP MANAGER CORPORATE SERVICES*

Amount of Holding:                               AUD    *1,000,000.00*

Percentage of Outstanding Notes:        *3.78*  %

- 4 -

**SCHEDULE 1**
**Form of Swap Termination Notice**

**[ZIRCON FINANCE LIMITED]**
**[INSERT ADDRESS]**

To:    Lehman Brothers Special Financing Inc.
2711 Centreville Road
Suite 400
Wilmington
Delaware 19808, U.S.A.

(the "**Counterparty**")

Lehman Brothers Special Financing Inc.
1000 West Street
The Brandywine Building
Suite 200
Wilmington
Delaware 19801, U.S.A.

Lehman Brothers Special Financing Inc.
745 Seventh Avenue
New York, NY 10019, U.S.A.

Lehman Brothers Special Financing Inc.
Lehman Brothers Messenger Center
1271 Sixth Avenue
New York, NY 10019, U.S.A.

Cc:    Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
(as "**Process Agent**")

**Notice to terminate Swap Transaction**

Reference is made to the outstanding Transaction (the "**Swap Transaction**") under:

- the ISDA Master Agreement (including the schedule thereto) dated 10 October 2002 between Dante Finance Public Limited Company and the Counterparty as amended and restated on 20 July 2007 (the "**ISDA Master Agreement**");

- the Deed of Accession between, amongst others, the Counterparty and Zircon Finance Limited, a company incorporated with limited liability in the Cayman Islands ("**Zircon**") dated 20 July 2007 pursuant to which Zircon agreed to become and be treated as "Party B" for all purposes of the ISDA Master Agreement; and

- the Swap Confirmation dated 6 June 2007 between, amongst others, the Counterparty and Zircon in relation to a Credit Derivative Transaction relating to Zircon Series 2007-9 Tranche A AUD30,000,000 Synthetic Portfolio Notes due 2013.

(together, "the **Agreement**").

Terms defined in the Agreement have the same meaning in this notice.

In accordance with the Agreement the Counterparty's filing of a voluntary petition for relief under the provisions of Chapter 11 of the U.S. Bankruptcy Code on 3 October 2008 constitutes an Event of Default with respect to the Counterparty pursuant to Section 5(a)(vii) of the Agreement. In accordance with Section 6(a) of the Agreement, the Counterparty is the Defaulting Party and Zircon is the Non-defaulting Party.

Zircon hereby gives the Counterparty notice of the above Event of Default and designates *[INSERT DATE]*[1] as an Early Termination Date in respect of the Swap Transaction. In accordance with Sections 6(d) and 6(e) of the Agreement, Zircon will provide you with notice of the amount payable in respect of the Early Termination Date as soon as reasonably practicable following the occurrence of the Early Termination Date.

Additional Events of Default with respect to the Counterparty may have occurred. Zircon reserves all rights, claims and defences in relation to any Events of Default, the Swap Transaction and the Agreement.

Please direct any questions regarding this notice to BNY Corporate Trustee Services Limited by facsimile on +44 20 7964 2530 (for the attention of Sanjay Jobanputra) or by email to dagemea@bnymellon.com

Yours faithfully

Cc:     Lehman Brothers International (Europe)
        25 Bank Street
        London, E14 5LE
        Attention: General Counsel
        Fax: +44 20 7067 8388

        Harvey R. Miller, Esq.
        Weil, Gotshal & Manges, LLP.
        767 Fifth Avenue
        New York, NY 10153
        Fax: +1 (212) 310-8077

        BNY Corporate Trustee Services Limited
        c/o The Bank of New York Mellon
        One Canada Square
        London
        E14 5AL

---

[1] Insert date 5 London and New York business days after the date that Zircon executes the notice.

- 5 -

**SCHEDULE 2**
**Form of Notice of Noteholder Meeting**

Notice to Holders

**DANTE FINANCE PLC (the "First Issuer")**
**MULTI-ISSUER SECURED OBLIGATION PROGRAMME (the "Programme")**

**ZIRCON FINANCE LIMITED (the "Issuer")**
**SERIES ZIRCON 2007-9 TRANCHE A NOTES DUE 2013 (the "Notes")**

**ISIN:** AU3FN0002937

**Notice of Meeting of Holders**

[ ● ] 2008

Reference is made to the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated from time to time and made between, amongst others, Dante Finance PLC and BNY Corporate Trustee Services Limited (previously named J. P. Morgan Corporate Trustee Services Limited) as trustee (the "**Trustee**"), pursuant to which the Programme was established. Reference is also made to the supplemental trust deed and drawdown agreement dated 6 June 2007 (the "**Supplemental Trust Deed**") pursuant to the terms of which the Issuer issued the Notes.

Unless otherwise defined in this notice, capitalised terms used and not defined in this notice shall have the meanings set out in the Principal Trust Deed as modified by the Supplemental Trust Deed (where applicable).

**THIS NOTICE IS GIVEN** to convene a meeting at the date, time and venue provided below (as approved by the Trustee) of the holders of the Notes (the "**Meeting**"), a request for which has been made by the beneficial owners of at least 10% in principal amount of the Notes (such beneficial ownership having been determined by the Trustee to its satisfaction), for the purpose of considering and, if thought fit, passing the resolutions set out below which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Principal Trust Deed as follows:

Date:           [ ● ]

Time:           [ ● ]

Venue:          [ ● ]

1.     **FIRST EXTRAORDINARY RESOLUTION**

       **APPOINTMENT OF SWAP CALCULATION AGENT**

       "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

1.1    *Appointment of Swap Calculation Agent:* pursuant to clause 5.4 of the Principal Trust Deed, the Issuer is directed to appoint a person satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) and the Trustee is authorised and directed to consent to such appointment on terms reasonably satisfactory to the Noteholder Committee (as defined in Extraordinary Resolution 3 below) to calculate on behalf of the Issuer any amounts payable under the Swap as a consequence of the designation of the Early Termination Date pursuant to the notice of termination dated [ ● ] 2008";

2.     **SECOND EXTRAORDINARY RESOLUTION**

**ACCELERATION OF NOTES AND ENFORCEMENT OF SECURITY**

"THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

2.1   *Acceleration*: the Trustee is directed, pursuant to Condition 10(a) (*Events of Default*) of the Notes to give notice to the Issuer of the occurrence of an Event of Default following a failure to pay sums due in respect of the Notes on 20 September 2008 and following the expiry of the applicable grace period and that the Notes are immediately due and payable at their Early Redemption Amount (as defined in the paragraph 44 of the Final Terms relating to the Notes) (but provided that no such notice shall be made until the Early Termination Date has taken place pursuant to the terms of the Swap Agreement);

2.2   *Enforcement of Security*: the Trustee is directed, pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, to enforce the security over the Mortgaged Property (the security over the Mortgaged Property having become enforceable pursuant to Clause 5.5 (*Enforcement*) of the Principal Trust Deed).

2.3   *Appointment of Receiver*: the Trustee is authorised, pursuant to Clause 5.8 (*Appointment of Receiver*) of the Principal Trust Deed, to appoint a Receiver to take possession of the Mortgaged Property and to realise and deliver the same to the extent necessary to give effect to the matters set out in 2.3."

3.    **THIRD EXTRAORDINARY RESOLUTION**

      **NOTEHOLDER COMMITTEE**

      "THE HOLDERS OF THE NOTES RESOLVE THAT SUBJECT TO THE PASSING OF EXTRAORDINARY RESOLUTION FOUR BELOW

3.1   *Noteholder Committee*: each of Gosford City Council (represented by Brian Shackleton), Newcastle City Council (represented by Michael McMahon), RMM Capital Pty Ltd (represented by Greg Beach) and any other person as shall be named in the Meeting are appointed to act as a committee (the "**Noteholder Committee**"), pursuant to paragraph 2.6 (*Powers of Meetings*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed, to represent the Noteholders' interests and this Extraordinary Resolution confers on them all powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution such that any written resolutions of a majority by number of the Noteholder Committee (including, without limitation, any resolution to appoint further members to the Noteholder Committee) shall take effect as Extraordinary Resolutions and bind all the Noteholders (as such binding effect is prescribed by paragraph 28 (*Effect and Publication of an Extraordinary Resolution*) of Schedule 3 (*Provisions for Meetings of Noteholders*) to the Principal Trust Deed);

3.2   *Exculpatory Provision (Noteholder Committee)*: the members of the Noteholder Committee are exonerated, discharged and held harmless from all liability (including, without limitation, losses, damages, judgments, claims, causes of actions, costs and expenses) to the other Noteholders or any other persons suffered as a result of any act taken or decision made by the Noteholder Committee in the Meeting or in the future and/or in connection with the implementation of any such act or decision"

4.    **FOURTH EXTRAORDINARY RESOLUTION**

      **ADMINISTRATIVE MATTERS**

      "THE HOLDERS OF THE NOTES RESOLVE THAT

4.1   *Exculpatory Provision (Trustee)*: the Trustee is exonerated, discharged and held harmless from all liability to the Noteholders and any other person in connection with this Extraordinary Resolution and any other Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee and in connection with the implementation of any Extraordinary Resolution passed at this meeting.

4.2   *Further Acts*: the Trustee is authorised, directed, requested and empowered to concur in, and to execute and do, all such other deeds, instruments, acts and things and to take steps as may be necessary or desirable to carry out and give effect to any Extraordinary Resolutions passed at the Meeting or (provided Extraordinary Resolution Three is passed and takes effect) passed in future by the Noteholder Committee";

5.    **FIFTH EXTRAORDINARY RESOLUTION**

      **RATIFICATION OF TERMINATION OF SWAP AND ADMINISTRATIVE MATTERS**

      "THE HOLDERS OF THE NOTES RESOLVE THAT

5.1   *Ratification of Termination of Swap*: The termination of the swap pursuant to instructions dated 28 November 2008 from noteholders holding at least 20% requesting the Trustee to enforce its rights as Trustee in respect of the Mortgaged Property relating to the notes pursuant to Clause 5.6 (*Trustee taking possession of Mortgaged Property*) of the Principal Trust Deed, by terminating by instructing the Issuer to deliver a swap termination notice to the Swap Counterparty terminating the Swap Agreement relating to the notes is hereby ratified";

**In accordance with normal practice, the Trustee expresses no opinion on the merits of the Extraordinary Resolutions. The Trustee urges Noteholders who are unsure of the consequences of voting in favour of (or against) any Extraordinary Resolution to seek their own independent legal, tax and financial advice.**

**Attendance, Voting and Quorum**

6.    *Meetings Provisions*:   [*to be inserted*].

7.    *Further Regulations*:   [*to be inserted*].

8.    *Attendance in Person*:   [*to be inserted*].

9.    *Attendance by Proxy*:   [*to be inserted*].

10.   *Instructions*:   [*to be inserted*].

11.   *Quorum*:   [*to be inserted*].

12.   *Voting*:   [*to be inserted*].

13.   *Passing of Extraordinary Resolution*:   [*to be inserted*].

      *Further Information*:   [*to be inserted*].

      [Holders of Notes which are held by the Clearing Systems should contact the relevant corporate action departments within the relevant Clearing Systems for further information in respect of their respective procedures for voting.]

14.   *Trustee Contact Details*: holders who have queries concerning anything mentioned in this notice may contact the Trustee at:

      Address:          BNY Corporate Trustee Services Limited

c/o The Bank of New York Mellon
One Canada Square
London
E14 5AL

Attention:        James Aggus

Fax:              +44 207 964 2532 (for the attention of: Sanjay Joba)

e-mail:           dagemea@bnymellon.com

This notice is given by
**BNY CORPORATE TRUSTEE
SERVICES LIMITED**
in its capacity as Trustee
and acting on the written direction of
the holders of at least
10% of the outstanding Notes