**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                                           :

**In re**                                                            : **Chapter 11**
                                                                       :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      : **Case No. 08-13555 (JMP)**
                                                                       :
                              **Debtors**                             : **Jointly Administered**
                                                                       :
------------------------------------------------------------------------x

## OBJECTION OF UNITED CHURCH OF CHRIST RETIREMENT COMMUNITY, INC. d/b/a HAVENWOOD HERITAGE HEIGHTS TO ASSUMPTION OF EXECUTORY CONTRACT

United Church of Christ Retirement Community, Inc. d/b/a Havenwood-Heritage Heights ("Havenwood") hereby objects to the proposed assumption by the Debtor, Lehman Brothers Special Financing Inc. ("LBSF"), of the ISDA Master Agreement (Local Currency-Single Jurisdiction) between LBSF and Havenwood dated as of September 14, 2006 (together with the schedule, the exhibits and the Confirmation dated as of September 21, 2006 exchanged pursuant thereto, the "ISDA Agreement").

In support of its objection, Havenwood states as follows:

1. Havenwood is a not-for-profit, faith based retirement community, providing a continuum of services and long-term care, where people of varying backgrounds, 62 years and older, live together in an atmosphere of independence and dignity with a common bond of companionship and a sense of community.

2. Havenwood provides 410 independent living units, 55 assisted living and 95 nursing care beds for its approximately 600 residents. These residents depend on Havenwood's continuing financial viability as they spend the remainder of their lives at Havenwood's campus.

3. For those residents who cannot continue to pay for their care, Havenwood is committed, consistent with its mission, to assist to the extent its financial resources permit. Havenwood depends on its economic reserves to provide as much support for its residents as possible, but that support is limited by the level of its economic reserves.

4. Residency in Havenwood's independent living units has declined in the past five years from approximately 90% to 85%. Two factors drive this decline: the general economy and the condition of many of the older units.

5. Because of the economic constraints Havenwood faces, it has not been able to renovate the older units and has deferred capital expenditures except when required in order to conserve its assets during the continuing recession.

6. Havenwood offers a fee-for-service option as well as an entrance fee program. Unlike some continuing care retirement communities which charge entrance fees in the many hundreds of thousands of dollars and can provide life care for indefinite periods, the average entrance fee at Havenwood for its non-cottage units[1] is $46,000[2] ($35,000 for a single resident and $65,000 for a couple). A majority of Havenwood's residents have chosen the entrance fee program, which guarantees each resident 12 months of residency should the resident's resources run out while the resident is at Havenwood. For those residents who require care in Havenwood's Health Services Center, the current cost of such care is between $80,000 and $90,000 per year.

7. Havenwood's resident population trend has seen entry into the community by residents who are of a greater average age than was the case 5-10 years ago. These

---

[1] There are 12 cottage units out of 410 total independent living units. The entrance fee for the cottage units is $130,000 for a single person and $150,000 for a couple.

[2] Based on current rates. When the current population's average entrance fee paid is calculated it is approximately $40,000.

2

residents tend to require more intensive levels of service (i.e., assisted living or nursing care) earlier in their residency. Approximately 25-30% of Havenwood's nursing care beds are occupied by residents on Medicaid, which is a substantially lower level of reimbursement to Havenwood than the payments made by residents who are private pay residents. The difference between the Medicaid and private pay levels of reimbursement comes to $1 million per year, which Havenwood must make up from other revenues. Havenwood's uncompensated care levels are currently $600,000-$700,000 per year, up substantially over the past 5 years.

8. As of December 31, 2010, the end of Havenwood's 2010 fiscal year, Havenwood had $29,276,098 of long-term indebtedness. Its unrestricted cash and investments totaled $13,237,772, approximately 45% of its long-term indebtedness. During the five most recent fiscal years, the level of Havenwood's unrestricted cash and investments has varied from $7,249,170 to $13,237,772, and is subject to the volatility of the financial markets. As the markets improve, so do Havenwood's unrestricted cash and investments; as the markets decline, as they have recently in a significant manner, the unrestricted cash and investments are subject to decline. It should be noted that, of these moneys, an amount equal to one year's debt service on Havenwood's bonds (approximately $2.1 million) must be held by Havenwood as a reserve under New Hampshire Department of Insurance regulations governing continuing care retirement communities.

9. On September 15, 2008, Lehman Brothers Holdings Inc. ("<u>LBHI</u>" and, together with LBSF, the "<u>Debtors</u>"), LBSF's Credit Support Provider under the ISDA Agreement, filed a petition for relief under the Bankruptcy Code.

10. On or about October 3, 2008, LBSF filed a petition for relief under the Bankruptcy Code.

11. These bankruptcy filings constituted Events of Default under Section 5(a)(vii)(4) of the ISDA Agreement.

12. Following the bankruptcy filings, the Management and Board of Trustees of Havenwood engaged in numerous discussions among themselves and with their advisors seeking to understand what options Havenwood had in light of the LBHI and LBSF bankruptcies. They also had numerous conversations with LBSF's representatives beginning shortly after the bankruptcy filings and continuing until a few weeks before Havenwood terminated the ISDA Agreement. The focus of the discussions with LBSF was LBSF's continuing – and ultimately unsuccessful – efforts to find a suitable assignee to assume LBSF's and LBHI's obligations under the ISDA Agreement, reflecting a desire on the part of Havenwood to find a mutually acceptable way to continue the economic benefits of the LBSF swap for Havenwood.

13. As the one year anniversaries of the LBHI and LBSF bankruptcies drew near, it became clear to Havenwood's Management and Board of Trustees that: (a) LBSF was unable after many months to find a counterparty for Havenwood that would assume LBSF's obligations under the ISDA Agreement; and (b) because of its status as a small, not for profit senior living community with limited means, and in order to ensure its continued financial viability, Havenwood would need to undertake the actions necessary to terminate the LBSF swap.

14. Accordingly, by letter to LBSF dated September 15, 2009, Havenwood gave notice of termination of the ISDA Agreement, designating September 16, 2009 as the Early Termination Date.

15. Havenwood was entitled to terminate the ISDA Agreement under Section 560 of the Bankruptcy Code, which provides that:

> The exercise of any contractual right of any swap participant or financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title.

16. Because the ISDA Agreement was validly terminated over two years ago under Section 560 of the Bankruptcy Code, it is no longer an executory contract subject to assumption or assignment under Section 365 of the Bankruptcy Code and LBSF therefore has no right to assume the ISDA Agreement.

17. Solely for the purpose of preserving Havenwood's rights, to the extent that the ISDA Agreement is an executory contract subject to assumption and assignment under Section 365 of the Bankruptcy Code (which Havenwood denies), Havenwood objects to assignment of the ISDA Agreement unless LBSF can establish adequate assurance of future performance by the assignee as required by Section 365(f)(1)(B) of the Bankruptcy Code.

**[Signature on next page]**

5

Dated: November 7, 2011

        UNITED CHURCH OF CHRIST RETIREMENT
        COMMUNITY, INC.

By  */s/ Thomas S. Marrion*
     Thomas S. Marrion
     Hinckley, Allen & Snyder LLP
     20 Church Street
     Hartford, Connecticut 06103-1221
     Telephone: 860-725-6200
     Facsimile: 860-278-3802
     - Its Attorneys -

## CERTIFICATE OF SERVICE

I, Thomas S. Marrion, hereby certify that on this 7th day of November, 2011, I caused to be served a copy of the *Objection of United Church of Christ Retirement Community, Inc. d/b/a Havenwood Heritage Heights to Assumption of Executory Contract* filed herewith to be served by this Court's CM/ECF System and via Federal Express to the following:

Chambers of the Honorable James M. Peck
US. Bankruptcy Court
Court Room 601
One Bowling Green
New York, NY  10004

Harvey R. Miller, Esq.
Lori R. Fife, Esq.
Alfredo R. Perez, Esq.
Attorneys for the Debtors
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153

Elisabetta Gasparini, Esq.
Andrea Schwartz, Esq.
Office of the United States Trustee, Region 2
33 Whitehall Street, 21st Floor
New York, NY  10004

Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.
Attorneys for the Official Committee of Unsecured Creditors
Milbank, Tweed & McCloy, LLP
1 Chase Manhattan Plaza
New York, NY  10005

                                                                */s/ Thomas S. Marrion*
                                                                Thomas S. Marrion, Esq.
                                                                Hinckley, Allen & Snyder LLP
                                                                20 Church Street
                                                                Hartford, CT  06103
                                                                Tel. No.: 860-331-2660