K&L GATES LLP
Eric T. Moser, Esq.
Eunice Rim, Esq.
599 Lexington Avenue
New York, NY 10022
(212) 536-3900
Attorneys for the Tobacco Settlement
Financing Corporation

**Hearing Date:  December 6, 2011 at 10:00 a.m. (Eastern)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                       :
In re                                                  :     Chapter 11
                                                       :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,               :     Case No. 08-13555 (JMP)
                                                       :
                                                       :     (Jointly Administered)
                             Debtors.                  :
                                                       :
-----------------------------------------------------------------------x

**LIMITED OBJECTION OF THE TOBACCO SETTLEMENT FINANCING CORPORATION
TO NOTICE OF PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES PURSUANT TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11
PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCTY CODE**

The Tobacco Settlement Financing Corporation ("TSFC") hereby files this limited

objection (the "Objection") to the Notice of Proposed Assumption of Executory Contracts and

Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section

1121 of the Bankruptcy Code dated October 27, 2011 (the "Assumption Notice"), and in support

thereof respectfully states as follows:

1.      The TSFC, Lehman Brothers Special Financing, Inc. ("LBSF") and the Bank of

New York ("BONY"), as trustee (the "Trustee"), were parties to that certain Reserve Fund

Agreement dated as of June 19, 2003 (the "June 2003 RFA") by and between TSF, LBSF and

BONY and that certain Reserve Fund Agreement dated as of December 2, 2003 (the "Dec. 2003

RFA" and together with the June 2003 RFA, the "RFAs")[1] by and between, TSFC, LBSF and BONY.

2.       The RFAs served as the investment vehicles through which TSFC invested certain reserve funds (the "Reserve Funds") for payment of debt service owed on tobacco settlement bonds issued by the TSFC in 2003.

3.       Lehman Brothers Holdings, Inc. ("LBHI"; together with LBSF, "Lehman") served as the credit support provider to LBSF under both RFAs and guaranteed the payment of all amounts payable by LBSF to TSFC under the RFAs.

4.       On September 18, 2009, TSFC filed Claim No. 18990 and Claim No. 18991 (together, the "Claims") against LBSF and LBHI, respectively, for estimated amounts owing by Lehman to TSFC under the RFAs pending rejection of the RFAs.

5.       On September 25, 2009, TSFC filed a motion requesting that the bankruptcy court compel Lehman to reject the RFAs.

6.       On October 16, 2009 (the "Rejection Date"), the United States Bankruptcy Court for the Southern District of New York entered an Order Authorizing Rejection of Reserve Fund Agreements (the "Rejection Order") and the RFAs were rejected as of the Rejection Date.  A copy of the Rejection Order has been annexed hereto as **Exhibit A**.

7.       On October 19, 2009, TSFC amended Claim Nos. 18990 and 18991, by filing Claim Nos. 66853 and 66852 (together, the "Amended Claims") against LBSF and LBHI, respectively, each in the amount of $135,085,150.43 (the "Amended Claim Amount"), for rejection damages owing under the RFAs as of the Rejection Date.  Of the total Amended Claim Amount, $47,876,724.30 was attributable to rejection damages owing by Lehman to TSFC under

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings attributed to them in the applicable RFA.

the June 2003 RFA and $87,208,426.13 was attributable to rejection damages owing by Lehman

to TSFC under the Dec. 2003 RFA.  Copies of the Amended Claims have been annexed hereto as

**Exhibit B** and **Exhibit C**.

        8.      On October 27, 2011, TSFC received the Assumption Notice pursuant to which

Lehman sought to assume the June 2003 RFA and listing a cure amount of $0.00.  Although

TSFC does not believe that Lehman intends to assume either RFA, TSFC files this limited

Objection to the Assumption Notice to clarify that: (i) the June 2003 RFA has been previously

rejected and, therefore, cannot be assumed by Lehman; and (ii) even if the June 2003 RFA could

be assumed, the rejection damages owing under the June 2003 RFA would be $47,876,724.30 as

set forth in the Amended Claims.

        WHEREFORE, TSFC requests that the Court enter an Order denying Lehman's

assumption of the June 2003 RFA for the reasons set forth herein and granting such other and

further relief as the Court deems just and proper.

Dated: New York, New York.          Respectfully submitted,
       November 8, 2011

                                       K&L GATES LLP

                                       By:   /s/    *Eric T. Moser*
                                           Eric T. Moser
                                         A Partner of the Firm
                                     599 Lexington Avenue
                                     New York, NY  10022
                                   (212) 536-3900 (telephone)
                                   (212) 536-3901 (facsimile)

                                   Attorneys for the Tobacco Settlement Financing
                                   Corporation

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                  :
**In re**                                         :        **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*      :        **08-13555 (JMP)**
                                                  :
                        **Debtors.**              :        **(Jointly Administered)**
                                                  :
                                                  :
-------------------------------------------------------------------x

<u>**ORDER AUTHORIZING REJECTION OF RESERVE FUND AGREEMENTS**</u>

Upon the motion dated September 25, 2009 by the Tobacco Settlement Financing

Corporation (the "<u>TSF</u>") for an Order (a) requiring Lehman Brothers Special Financing Inc.

("<u>LBSF</u>") to assume or reject two executory contracts pursuant to 11 U.S.C. § 365(d)(2) or,

alternatively, (b) modifying the automatic stay to allow the TSF to terminate the executory

contracts (the "<u>Motion</u>"); and it appearing that notice of the Motion was good and sufficient

under the circumstances; and LBSF having determined to reject the executory contracts

identified below; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED that LBSF hereby is authorized to reject (i) that certain Reserve Fund

Agreement dated June 19, 2003 among the TSF, as issuer, the Bank of New York ("<u>BONY</u>"), as

trustee, and LBSF, and (ii) that certain Reserve Fund Agreement dated December 2, 2003 among

the TSF, as issuer, BONY, as trustee, and LBSF (together, the "<u>RFAs</u>"); and the RFAs are

hereby rejected as of the date hereof pursuant to 11 U.S.C. § 365(a); and it is further

ORDERED that any claims arising from the rejection of the RFAs shall be filed in compliance with the terms of this Court's Order Pursuant to Section 502(b)(9) of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3) Establishing The Deadline For Filing Proofs of Claim, Approving The Form And Manner of Notice Thereof And Approving The Proof of Claim Form, entered July 2, 2009 in the above referenced cases [Docket No. 4271].

Dated: New York, New York
      October 16, 2009

                                      *s/ James M. Peck*
                                    HONORABLE JAMES M. PECK
                                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

| United States Bankruptcy Court Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re: | Chapter 11<br>Case No. |
|---|---|
| Lehman Brothers Holdings Inc. | 08-13555 |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Special Financing Inc. | 08-13888 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)       0000066853

NOTE: This form should not be used to make a claim for an administrative expense arising <u>after</u> the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities. (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Tobacco Settlement Financing Corporation
c/o K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Attn: Robert N. Michaelson, Esq.
        Eunice Rim, Esq.

Telephone number: (212) 536-4824  Email Address: Eunice.Rim@KLGates.com

Name and address where payment should be sent (if different from above)
Tobacco Settlement Financing Corporation
641 Lexington Avenue, 3rd. Floor
New York, NY 10022
Attn: Genevieve D'Agostino

Telephone No. (212) 688-4000  Email Address: GD'Agostino@nyhomes.org

☒ Check box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____ 18990
     (If known)

Filed on: __9/18/09__

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $_____ 135,085,150.43_____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☒ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. Basis for Claim: NY TSF's Losses Under Reserve Fund Agreement dated June 19, 2003 and Reserve Fund Agreement dated Dec. 2, 2003 (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:_____
   3a. Debtor may have scheduled account as:_____
       (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of set off and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe:_____
   Value of Property: $_____ Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____ Basis for perfection:_____
   Amount of Secured Claim: $_____  Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8)
☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_____).

Amounts entitled to priority:
$_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
   (See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security aggrements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary. DO NOT SENT ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**
JUN 15 2010
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date:
6/15/10

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C. §§152 and 3571.

NY-794116-v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                   :

In re                                 :         Chapter 11

                                      :

LEHMAN BROTHERS SPECIAL FINANCING INC.  :        Case No. 08-13888 (JMP)

                                      :         (Jointly Administered)

                     Debtor.          :

-------------------------------------------------------------------x

## ADDENDUM TO AMENDED PROOF OF CLAIM OF THE
## TOBACCO SETTLEMENT FINANCING CORPORATION AGAINST
## LEHMAN BROTHERS SPECIAL FINANCING INC. (CASE NO. 08-13888) (JMP)

      1.      This claim (the "Amended Claim") amends and supercedes Claim No. 18990[1]

filed by the Tobacco Settlement Financing Corporation (the "TSF") against Lehman Brothers

Special Financing Inc. ("LBSF") on September 18, 2009.

      2.      The TSF, LBSF and the Bank of New York ("BONY"), as trustee (the "Trustee"),

are parties to that certain Reserve Fund Agreement dated as of June 19, 2003 (the "June 2003

RFA")[2] by and between TSF, LBSF and BONY and that certain Reserve Fund Agreement dated

as of December 2, 2003 (the "Dec. 2003 RFA" and together with the June 2003 RFA, the

"RFAs") by and between, TSF, LBSF and BONY.  A copy of the RFAs has been uploaded to

http://www.lehman-claims.com (the "Claims Website"), on October 19, 2009[3], as a part of the

---

[1] TSF filed Claim No. 41425 on October 19, 2009 in an attempt to amend Claim No. 18990.  Claim No. 41425 inadvertently referenced Claim No. 21488 as the previous claim number being amended due to confusion regarding the similar legal names between the claimants of Claim Nos. 18990 and 21488.  TSF submits this amendment to correct this error.  LBSF (defined below) has agreed to deem this Amended Claim as having been filed on October 19, 2009.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings attributed to them in the June 2003 RFA and the Dec. 2003 RFA as specified herein.

[3] The derivatives questionnaire submitted by TSF to the Claims Website on October 19, 2009 also inadvertently references Claim No. 21488 as the underlying claim being amended following the entry of the Rejection Order (defined below) by the Bankruptcy Court and should instead reference Claim No. 18990 as the proper underlying claim being amended.

Derivatives Questionnaire required by the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form entered by the United States Bankruptcy Court for the Southern District of New York on July 2, 2009 in Case No. 08-13555 (the "Bar Date Order").

3.    The RFAs served as the investment vehicles through which TSF invested certain reserve funds (the "Reserve Funds") that served as a source of backup payment for debt service owed on tobacco settlement bonds issued by the TSF in 2003. The RFAs allowed the TSF to manage its finances by increasing the predictability of its cash flow from earnings on TSF's investments to satisfy the liquidity reserve requirements of TSF's tobacco settlement securitization bonds.

4.    Under the terms of the June 2003 RFA, the TSF delivered a Scheduled Reserve Amount of $170,659,179.00 to LBSF, upon which LBSF purchased Qualified Securities on behalf of TSF that were delivered to the Trustee on certain set Deposit Dates. When such securities matured, the TSF would deliver the Scheduled Reserve Amount to LBSF to purchase new securities. In exchange for the periodic purchase of securities, LBSF was required to guarantee a rate of return to the TSF on the Scheduled Reserve Amount under the June 2003 RFA equal to a rate per annum of 3.722%, assuming that the interest on the applicable security was compounded semi-annually on the basis of a year of 360 days with twelve 30 day months.

5.    Under the terms of the Dec. 2003 RFA, the TSF delivered a Scheduled Reserve Amount of $221,582,343.75 to LBSF, upon which LBSF purchased Qualified Securities on behalf of TSF that were delivered to the Trustee on certain set Deposit Dates. When such securities matured, the TSF would deliver the Scheduled Reserve Amount under the Dec. 2003

RFA to LBSF to purchase new securities.  In exchange for the periodic purchase of securities,

LBSF was required to guarantee a rate of return to the TSF on the Scheduled Reserve Amount

equal to a rate per annum of 4.687%, assuming that the interest on the applicable security was

compounded semi-annually on the basis of a year of 360 days with twelve 30 day months.

6.      Lehman Brothers Holdings, Inc. ("LBHI") served as the credit support provider to

LBSF under both RFAs and guaranteed the payment of all amounts payable by LBSF to TSF

under the RFAs.  A copy of LBHI's guarantee of LBSF's payment obligations under the June

2003 RFA and the Dec. 2003 RFA has been uploaded to the Claims Website, on October 19,

2009, as a part of the Derivatives Questionnaire required by the Bar Date Order.

7.      LBHI filed a voluntary petition for relief under title 11 of the United States Code

on September 15, 2008.

8.      LBSF filed a voluntary petition for relief under title 11 of the United States Code

on October 3, 2008 (the "Petition Date").

9.      Under section 7.3(a) of both RFAs, a Lehman Event of Default occurs if Lehman

fails to cause a Qualified Dealer to deliver Qualified Securities on any Deposit Date, with a

Purchase Price equal to the Scheduled Reserve Amount for such Deposit Date, and such failure

is not cured within the Lehman Cure Period.  See June 2003 RFA §7.3(a) and Dec. 2003 RFA

§7.3(a).

10.     By separate letters (the "Default Notices"), each dated September 14, 2009, TSF

notified LBSF of its defaults under sections 7.3(a) and (d) of each RFA as a result of (a) LBSF's

failure to deliver or cause to be delivered Qualified Securities on November 28, 2008 and May

29, 2009 in accordance with sections 2.1 and 2.2 of the RFA, which failure has continued beyond

the applicable Lehman Cure Period, and (b) the institution by LBSF of a proceeding under title

11 of the United States Code on the Petition Date. A copy of the Default Notices has been

uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives Questionnaire

required by the Bar Date Order.

11.     Pursuant to section 7.6(a) of the RFAs, if a Lehman Event of Default occurs under

section 7.3(a) of the RFAs, then the TSF has the right to apply the Scheduled Reserve Amount to

purchase Qualified Securities and to make a written demand for payment of TSF's losses, as

calculated pursuant to section 7.7(b) of the RFA. See June 2003 RFA §7.6(a) and Dec. 2003

RFA §7.6(a).

12.     Section 7.7(b) of the RFAs provide:

> If there is a Lehman Event of Default as described in Section
> 7.3(a) hereof, the amount of losses payable by Lehman upon
> demand therefore pursuant to Section 7.6(a) shall equal the
> Guaranteed Interest. In the event that Lehman has paid the
> Guaranteed Interest amount in connection with any Deposit Date,
> the Issuer shall pay to Lehman on the next succeeding Deposit
> Date an amount equal to the excess of the Guaranteed Interest so
> paid over the interest rate the Trustee actually earned by investing
> the related scheduled reserve amount in Qualified Securities on an
> overnight basis (or if the Trustee fails to invest such scheduled
> reserve amount in Eligible Investments (as defined in the
> Indenture) on an overnight basis, the amount of interest the Trustee
> would have earned on such scheduled reserve amount had the
> Trustee invested on an overnight basis).

(the "Section 7.7(b) Loss")

13.     Under section 7.6(b) of both RFAs, if a Lehman Event of Default occurs due to

Lehman becoming Insolvent or because LBHI's rating falls below "BBB-" or "Baa3" by S&P or

Moody's, respectively, the TSF can immediately terminate the RFAs by giving notice to Lehman

with a copy to the Trustee. See June 2003 RFA §7.6(b) and Dec. 2003 RFA §7.6(b).

14.     Pursuant to sections I and 7.3 of the RFAs, TSF is the Burdened Party due to the

occurrences of the Lehman Events of Default under sections 7.3(a), (d) and (f). TSF, as the

Burdened Party, has the right to calculate the Termination Amounts.  See June 2003 RFA §§ I,

7.3 and Dec. 2003 RFA §§ I and 7.3.

> 15.    Section I of the RFAs define the Termination Amount as:

>> an amount, as determined by [TSF] reasonably and in good faith
>> on the basis of the arithmetic mean of quotations from at least three
>> Dealers of the amount, if any, that each such Dealer would require
>> [TSF] to pay to the Dealer . . . or would pay to the [TSF] . . . in
>> consideration of such Dealer entering into an agreement with the
>> [TSF] . . . which would have the effect of preserving for the [TSF]
>> the economic equivalent of its investment rights under [the RFA]
>> for the period commencing on the termination date of [the RFA]
>> and terminating on the last Bond Payment Date set forth in Exhibit
>> A. . .

> 16.    Under Section I of the RFAs, if the TSF is unable to obtain three Dealer

quotations to determine the Termination Amount due under each RFA, the Termination Amount

is:

>> the amount as reasonably determined in good faith by the [TSF], to
>> be [TSF's] total losses and costs . . . in connection with the
>> termination of [the RFA], including any loss of bargain, cost of
>> funding or, at the election of [the TSF] but without duplication,
>> any loss or cost incurred as a result of its terminating, liquidating,
>> obtaining or reestablishing any hedge or related trading position,
>> and;

>> provided further, however, that in any event the Termination
>> Amount shall also include (A) any unpaid amounts due as of the
>> date of termination of this Agreement (including any amounts due
>> under Section 7.7 hereof) and (B) if such Termination Amount is
>> being paid in connection with a termination of this Agreement
>> following an Event of Default or if any Termination Amount
>> otherwise due hereunder is not paid when due, the Termination
>> Amount shall also include incidental costs and expenses incurred
>> by the Burdened Party in connection with such termination and the
>> enforcement of its rights hereunder (including costs of collection
>> and reasonable attorneys' fees).  Any determination of the
>> Termination Amount by the Burdened Party shall be conclusive
>> and binding on the parties hereto absent manifest error. . .

(the "Total Loss").

17.     Each RFA is a "securities contract" as that term is defined under section 741(7) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").  Pursuant to Section 562(a) of the Bankruptcy Code, the damages flowing from the rejection of a securities contract is calculated as of the date that the securities contract is rejected.  See 11 U.S.C. § 562(a).

18.     On October 16, 2009 (the "Rejection Date"), the United States Bankruptcy Court for the Southern District of New York entered an Order Authorizing Rejection of Reserve Fund Agreements (the "Rejection Order") and the RFAs were rejected as of the Rejection Date.  A copy of the Rejection Order has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

19.     As of the Rejection Date, TSF's Total Loss under the June 2003 RFA is $47,876,724.30, which includes TSF's Section 7.7(b) Loss under the June 2003 RFA in the amount of $5,254,152.81, TSF's termination losses under the June 2003 RFA in the amount of $42,568,694.00 and TSF's incidental costs and expenses incurred in connection with the termination and enforcement of TSA's rights under the June 2003 RFA of $53,877.49[4].

20.     As of the Rejection Date, TSF's Total Loss under the Dec. 2003 RFA is $87,208,426.13, which includes TSF's Section 7.7(b) Loss under the Dec. 2003 RFA in the amount of $8,702,700.64, TSF's termination losses under the Dec. 2003 RFA in the amount of

---

[4] The incidental costs and expenses incurred with respect to the termination and enforcement of TSA's rights under both the June 2003 RFA and the Dec. 2003 RFA equals $107,754.98 (the "Aggregate Costs").  Half of the Aggregate Costs can be attributed to the June 2003 RFA.  A copy of the schedule setting forth the Aggregate Costs as well as the applicable invoices related to such Aggregate Costs has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

$78,451,848.00 and TSF's incidental costs and expenses incurred in connection with the termination and enforcement of TSA's rights under the Dec. 2003 RFA of $53,877.49.[5]

21.      Accordingly, as of the Rejection Date, the aggregate claim owing by LBSF under the June 2003 RFA and the Dec. 2003 RFA is $135,085,150.43.  A copy of a memorandum prepared by the Swap Financial Group detailing TSF's calculation of TSF's Total Loss under each RFA as of the Rejection Date has been uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives Questionnaire required by the Bar Date Order.

22.      The filing of this Amended Claim shall not constitute: (a) a waiver or release of any rights of TSF against LBSF, (b) a waiver of the right of TSF to a trial by jury in any proceedings so triable in LBSF's bankruptcy proceeding or any controversy or proceedings related to LBSF's bankruptcy proceeding, (c) an election of remedies, or (d) a waiver or limitation of any procedural or substantive rights or any procedural or substantive defenses to any claim that may be asserted against TSF by LBSF, the Official Committee of Unsecured Creditors or any other party.  In addition, TSF expressly reserves the right to withdraw or amend this Amended Claim for any reason whatsoever.

---

[5] The Aggregate Costs incurred with respect to the termination and enforcement of TSA's rights under both the June 2003 RFA and the Dec. 2003 RFA equals $107,754.98.  Half of the Aggregate Costs can be attributed to the Dec. 2003 RFA.  A copy of the schedule setting forth the Aggregate Costs as well as the applicable invoices related to such Aggregate Costs has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

JUN 1 5 2010

EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY:

DATE

TIME

# **EXHIBIT C**

United States Bankruptcy Court/Southern District of New York

**PROOF OF CLAIM**

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
| | Case No. |
| Lehman Brothers Holdings Inc. | 08-13555 |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings Inc. | 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities. (See definition on reverse side.)

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                0000066852

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Tobacco Settlement Financing Corporation
c/o K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Attn: Robert N. Michaelson, Esq.
        Eunice Rim, Esq.

Telephone number: (212) 536-4824  Email Address: Eunice.Rim@KLGates.com

Name and address where payment should be sent (if different from above)
Tobacco Settlement Financing Corporation
641 Lexington Avenue, 3rd. Floor
New York, NY 10022
Attn: Genevieve D'Agostino

Telephone No.    (212) 688-4000    Email Address: GD'Agostino@nyhomes.org

☒ Check box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____18991_____
   (*If known*)

Filed on: __9/18/09__

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1.  Amount of Claim as of Date Case Filed: $_____135,085,150.43_____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☒ Check this box if all or part of your claim is based on a Derivative Contract.*

☒ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2.  Basis for Claim: LBHI's Guarantee of Amounts Owing to NY TSF Under Reserve Fund Agreement dated June 19, 2003 and
         Reserve Fund Agreement dated Dec. 2, 2003 with Lehman Brothers Special Financing Inc.
         (See instruction #2 on reverse side.)

3.  Last four digits of any number by which creditor identifies debtor:_____

    3a. Debtor may have scheduled account as:_____
        (See instruction #3a on reverse side.)

4.  Secured Claim (See instruction #4 on reverse side.)
    Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
    Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
    Describe:_____
    Value of Property: $_____ Annual Interest Rate _____%
    Amount of arrearage and other charges as of time case filed included in secured claim, if any:
    $_____ Basis for perfection:_____
    Amount of Secured Claim: $_____    Amount Unsecured: $_____

5.  **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8)

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_____).

**Amounts entitled to priority:**

$_____

6.  Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
    (See instruction #6 on reverse side.)

7.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agrements. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*) If the documents are voluminous, attach a summary. DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

FILED / RECEIVED
JUN 15 2010
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 6/15/10

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C. §§152 and 3571.

NY-794118-v1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11
                                            :
LEHMAN BROTHERS HOLDINGS INC.               :        Case No. 08-13555 (JMP)
                                            :
                                            :        (Jointly Administered)
                           Debtor.          :
                                            :
----------------------------------------------------------------------x

### ADDENDUM TO AMENDED PROOF OF CLAIM OF THE TOBACCO SETLLEMENT FINANCING CORPORATION AGAINST LEHMAN BROTHERS HOLDINGS INC. (CASE NO. 08-13555) (JMP)

1.      This claim (the "Amended Claim") amends and supercedes Claim No. 18991[1]

filed by the Tobacco Settlement Financing Corporation (the "TSF") against Lehman Brothers

Holdings Inc. ("LBHI") on September 18, 2009.

2.      The TSF, Lehman Brothers Special Financing Inc. ("LBSF") and the Bank of

New York ("BONY"), as trustee (the "Trustee"), are parties to that certain Reserve Fund

Agreement dated as of June 19, 2003 (the "June 2003 RFA")[2] by and between TSF, LBSF and

BONY and that certain Reserve Fund Agreement dated as of December 2, 2003 (the "Dec. 2003

RFA" and together with the June 2003 RFA, the "RFAs") by and between, TSF, LBSF and

BONY.  A copy of the RFAs has been uploaded to http://www.lehman-claims.com (the "Claims

---

[1] TSF filed Claim No. 41424 on October 19, 2009 in an attempt to amend Claim No. 18991.  Claim No. 41424 inadvertently referenced Claim No. 21487 as the previous claim number being amended due to confusion regarding the similar legal names between the claimants of Claim Nos. 18991 and 21487.  TSF submits this amendment to correct this error.  LBHI (defined below) has agreed to deem this Amended Claim as having been filed on October 19, 2009.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings attributed to them in the June 2003 RFA and the Dec. 2003 RFA as specified herein.

Website"), on October 19, 2009[3], as a part of the Derivatives and Guarantee Questionnaires required by the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form entered by the United States Bankruptcy Court for the Southern District of New York on July 2, 2009 in Case No. 08-13555 (the "Bar Date Order").

3.      LBHI served as the credit support provider to LBSF under both RFAs and guaranteed the payment of all amounts payable by LBSF to TSF under the RFAs. A copy of LBHI's guarantee of LBSF's payment obligations under the June 2003 RFA and the Dec. 2003 RFA has been uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives and Guarantee Questionnaires required by the Bar Date Order.

4.      The RFAs served as the investment vehicles through which TSF invested certain reserve funds (the "Reserve Funds") that served as a source of backup payment for debt service owed on tobacco settlement bonds issued by the TSF in 2003. The RFAs allowed the TSF to manage its finances by increasing the predictability of its cash flow from earnings on TSF's investments to satisfy the liquidity reserve requirements of TSF's tobacco settlement securitization bonds.

5.      Under the terms of the June 2003 RFA, the TSF delivered a Scheduled Reserve Amount of $170,659,179.00 to LBSF, upon which LBSF purchased Qualified Securities on behalf of TSF that were delivered to the Trustee on certain set Deposit Dates. When such securities matured, the TSF would deliver the Scheduled Reserve Amount to LBSF to purchase

---

[3] The Derivatives and Guarantee Questionnaires submitted by TSF to the Claims Website on October 19, 2009 also inadvertently reference Claim No. 21487 as the underlying claim being amended following the entry of the Rejection Order (defined below) by the Bankruptcy Court and should instead reference Claim No. 18991 as the proper underlying claim being amended.

new securities. In exchange for the periodic purchase of securities, LBSF was required to guarantee a rate of return to the TSF on the Scheduled Reserve Amount under the June 2003 RFA equal to a rate per annum of 3.722%, assuming that the interest on the applicable security was compounded semi-annually on the basis of a year of 360 days with twelve 30 day months.

6.      Under the terms of the Dec. 2003 RFA, the TSF delivered a Scheduled Reserve Amount of $221,582,343.75 to LBSF, upon which LBSF purchased Qualified Securities on behalf of TSF that were delivered to the Trustee on certain set Deposit Dates. When such securities matured, the TSF would deliver the Scheduled Reserve Amount under the Dec. 2003 RFA to LBSF to purchase new securities. In exchange for the periodic purchase of securities, LBSF was required to guarantee a rate of return to the TSF on the Scheduled Reserve Amount equal to a rate per annum of 4.687%, assuming that the interest on the applicable security was compounded semi-annually on the basis of a year of 360 days with twelve 30 day months.

7.      LBHI filed a voluntary petition for relief under title 11 of the United States Code on September 15, 2008 (the "Petition Date").

8.      LBSF filed a voluntary petition for relief under title 11 of the United States Code on October 3, 2008.

9.      Under section 7.3(a) of both RFAs, a Lehman Event of Default occurs if Lehman fails to cause a Qualified Dealer to deliver Qualified Securities on any Deposit Date, with a Purchase Price equal to the Scheduled Reserve Amount for such Deposit Date, and such failure is not cured within the Lehman Cure Period. See June 2003 RFA §7.3(a) and Dec. 2003 RFA §7.3(a).

10.     By separate letters (the "Default Notices"), each dated September 14 2009, TSF notified LBSF of its defaults under sections 7.3(a) and (d) of each RFA as a result of (a) LBSF's

failure to deliver or cause to be delivered Qualified Securities on November 28, 2008 and May

29, 2009 in accordance with sections 2.1 and 2.2 of the RFA, which failure has continued beyond

the applicable Lehman Cure Period, and (b) the institution by LBSF of a proceeding under title

11 of the United States Code on October 3, 2008.  A copy of the Default Notices has been

uploaded to the Claims Website, on October 19, 2009, as a part of the Derivatives Questionnaire

required by the Bar Date Order.

11.    Pursuant to section 7.6(a) of the RFAs, if a Lehman Event of Default occurs under

section 7.3(a) of the RFAs, then the TSF has the right to apply the Scheduled Reserve Amount to

purchase Qualified Securities and to make a written demand for payment of TSF's losses, as

calculated pursuant to section 7.7(b) of the RFA.  See June 2003 RFA §7.6(a) and Dec. 2003

RFA §7.6(a).

12.    Section 7.7(b) of the RFAs provide:

> If there is a Lehman Event of Default as described in Section
> 7.3(a) hereof, the amount of losses payable by Lehman upon
> demand therefore pursuant to Section 7.6(a) shall equal the
> Guaranteed Interest.  In the event that Lehman has paid the
> Guaranteed Interest amount in connection with any Deposit Date,
> the Issuer shall pay to Lehman on the next succeeding Deposit
> Date an amount equal to the excess of the Guaranteed Interest so
> paid over the interest rate the Trustee actually earned by investing
> the related scheduled reserve amount in Qualified Securities on an
> overnight basis (or if the Trustee fails to invest such scheduled
> reserve amount in Eligible Investments (as defined in the
> Indenture) on an overnight basis, the amount of interest the Trustee
> would have earned on such scheduled reserve amount had the
> Trustee invested on an overnight basis).

(the "Section 7.7(b) Loss")

13.    Under section 7.6(b) of both RFAs, if a Lehman Event of Default occurs due to

Lehman becoming Insolvent or because LBHI's rating falls below "BBB-" or "Baa3" by S&P or

Moody's, respectively, the TSF can immediately terminate the RFAs by giving notice to Lehman

with a copy to the Trustee. <u>See</u> June 2003 RFA §7.6(b) and Dec. 2003 RFA §7.6(b).

14.      Pursuant to sections I and 7.3 of the RFAs, TSF is the Burdened Party due to the

occurrences of the Lehman Events of Default under sections 7.3(a), (d) and (f).  TSF, as the

Burdened Party, has the right to calculate the Termination Amounts. <u>See</u> June 2003 RFA §§ I,

7.3 and Dec. 2003 RFA §§ I and 7.3.

15.      Section I of the RFAs define the Termination Amount as:

> an amount, as determined by [TSF] reasonably and in good faith
> on the basis of the arithmetic mean of quotations from at least three
> Dealers of the amount, if any, that each such Dealer would require
> [TSF] to pay to the Dealer . . . or would pay to the [TSF] . . . in
> consideration of such Dealer entering into an agreement with the
> [TSF] . . . which would have the effect of preserving for the [TSF]
> the economic equivalent of its investment rights under [the RFA]
> for the period commencing on the termination date of [the RFA]
> and terminating on the last Bond Payment Date set forth in Exhibit
> A. . .

16.      Under Section I of the RFAs, if the TSF is unable to obtain three Dealer

quotations to determine the Termination Amount due under each RFA, the Termination Amount

is:

> the amount as reasonably determined in good faith by the [TSF], to
> be [TSF's] total losses and costs . . . in connection with the
> termination of [the RFA], including any loss of bargain, cost of
> funding or, at the election of [the TSF] but without duplication,
> any loss or cost incurred as a result of its terminating, liquidating,
> obtaining or reestablishing any hedge or related trading position,
> and;
>
> <u>provided further</u>, <u>however</u>, that in any event the Termination
> Amount shall also include (A) any unpaid amounts due as of the
> date of termination of this Agreement (including any amounts due
> under Section 7.7 hereof) and (B) if such Termination Amount is
> being paid in connection with a termination of this Agreement
> following an Event of Default or if any Termination Amount
> otherwise due hereunder is not paid when due, the Termination

Amount shall also include incidental costs and expenses incurred by the Burdened Party in connection with such termination and the enforcement of its rights hereunder (including costs of collection and reasonable attorneys' fees). Any determination of the Termination Amount by the Burdened Party shall be conclusive and binding on the parties hereto absent manifest error. . .

(the "Total Loss").

17.     Each RFA is a "securities contract" as that term is defined under section 741(7) of

title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Pursuant

to Section 562(a) of the Bankruptcy Code, the damages flowing from the rejection of a securities

contract is calculated as of the date that the securities contract is rejected. See 11 U.S.C. §

562(a).

18.     On October 16, 2009 (the "Rejection Date"), the United States Bankruptcy Court

for the Southern District of New York entered an Order Authorizing Rejection of Reserve Fund

Agreements (the "Rejection Order") and the RFAs were rejected as of the Rejection Date. A

copy of the Rejection Order has been uploaded to the Claims Website, on October 19, 2009, as a

part of the Bar Date Order.

19.     As of the Rejection Date, TSF's Total Loss under the June 2003 RFA is

$47,876,724.30, which includes TSF's Section 7.7(b) Loss under the June 2003 RFA in the

amount of $5,254,152.81, TSF's termination losses under the June 2003 RFA in the amount of

$42,568,694.00 and and TSF's incidental costs and expenses incurred in connection with the

termination and enforcement of TSA's rights under the June 2003 RFA of $53,877.49[4].

---

[4] The incidental costs and expenses incurred with respect to the termination and enforcement of TSA's rights under both the June 2003 RFA and the Dec. 2003 RFA equals $107,754.98 (the "Aggregate Costs"). Half of the Aggregate Costs can be attributed to the June 2003 RFA. A copy of the schedule setting forth the Aggregate Costs as well as the applicable invoices related to such Aggregate Costs has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

20.     As of the Rejection Date, TSF's Total Loss under the Dec. 2003 RFA is

$87,208,426.13, which includes TSF's Section 7.7(b) Loss under the Dec. 2003 RFA in the

amount of $8,702,700.64, TSF's termination losses under the Dec. 2003 RFA in the amount of

$78,451,848.00 and TSF's incidental costs and expenses incurred in connection with the

termination and enforcement of TSA's rights under the Dec. 2003 RFA of $53,877.49.[5]

21.     Accordingly, as of the Rejection Date, the aggregate claim owing by LBHI, as

LBSF's guarantor under the June 2003 RFA and the Dec. 2003 RFA, is $135,085,150.43.  A

copy of a memorandum prepared by the Swap Financial Group detailing TSF's calculation of

TSF's Total Loss under each RFA as of the Rejection Date has been uploaded to the Claims

Website, on October 19, 2009, as a part of the Derivatives Questionnaire required by the Bar

Date Order.

22.     The filing of this Amended Claim shall not constitute: (a) a waiver or release of

any rights of TSF against LBHI, (b) a waiver of the right of TSF to a trial by jury in any

proceedings so triable in LBHI's bankruptcy proceeding or any controversy or proceedings

related to LBHI's bankruptcy proceeding, (c) an election of remedies, or (d) a waiver or

limitation of any procedural or substantive rights or any procedural or substantive defenses to

any claim that may be asserted against TSF by LBHI, the Official Committee of Unsecured

Creditors or any other party.  In addition, TSF expressly reserves the right to withdraw or amend

this Amended Claim for any reason whatsoever.

---

[5] The Aggregate Costs incurred with respect to the termination and enforcement of TSA's rights under both the June 2003 RFA and the Dec. 2003 RFA equals $107,754.98.  Half of the Aggregate Costs can be attributed to the Dec. 2003 RFA.  A copy of the schedule setting forth the Aggregate Costs as well as the applicable invoices related to such Aggregate Costs has been uploaded to the Claims Website, on October 19, 2009, as required by the Bar Date Order.

H
A
N
D

D
E
L
I
V
E
R
Y

RECEIVED BY:

FILED / RECEIVED

JUN 1 5 2010

EPIQ BANKRUPTCY SOLUTIONS, LLC
DATE

1:56pm
TIME