**Paragraph 12. Definitions**

As used in this Annex:—

"*Cash*" means the lawful currency of the United States of America.

"*Credit Support Amount*" has the meaning specified in Paragraph 3.

"*Custodian*" has the meaning specified in Paragraphs 6(b)(i) and 13.

"*Delivery Amount*" has the meaning specified in Paragraph 3(a).

"*Disputing Party*" has the meaning specified in Paragraph 5.

"*Distributions*" means with respect to Posted Collateral other than Cash, all principal, interest and other payments and distributions of cash or other property with respect thereto, regardless of whether the Secured Party has disposed of that Posted Collateral under Paragraph 6(c). Distributions will not include any item of property acquired by the Secured Party upon any disposition or liquidation of Posted Collateral or, with respect to any Posted Collateral in the form of Cash, any distributions on that collateral, unless otherwise specified herein.

"*Eligible Collateral*" means, with respect to a party, the items, if any, specified as such for that party in Paragraph 13.

"*Eligible Credit Support*" means Eligible Collateral and Other Eligible Support.

"*Exposure*" means for any Valuation Date or other date for which Exposure is calculated and subject to Paragraph 5 in the case of a dispute, the amount, if any, that would be payable to a party that is the Secured Party by the other party (expressed as a positive number) or by a party that is the Secured Party to the other party (expressed as a negative number) pursuant to Section 6(e)(ii)(2)(A) of this Agreement as if all Transactions (or Swap Transactions) were being terminated as of the relevant Valuation Time; *provided* that Market Quotation will be determined by the Valuation Agent using its estimates at mid-market of the amounts that would be paid for Replacement Transactions (as that term is defined in the definition of "Market Quotation").

"*Independent Amount*" means, with respect to a party, the amount specified as such for that party in Paragraph 13; if no amount is specified, zero.

"*Interest Amount*" means, with respect to an Interest Period, the aggregate sum of the amounts of interest calculated for each day in that Interest Period on the principal amount of Posted Collateral in the form of Cash held by the Secured Party on that day, determined by the Secured Party for each such day as follows:

      (x) the amount of that Cash on that day; multiplied by

      (y) the Interest Rate in effect for that day; divided by

      (z) 360.

"*Interest Period*" means the period from (and including) the last Local Business Day on which an Interest Amount was Transferred (or, if no Interest Amount has yet been Transferred, the Local Business Day on which Posted Collateral in the form of Cash was Transferred to or received by the Secured Party) to (but excluding) the Local Business Day on which the current Interest Amount is to be Transferred.

"*Interest Rate*" means the rate specified in Paragraph 13.

"*Local Business Day*", unless otherwise specified in Paragraph 13, has the meaning specified in the Definitions Section of this Agreement, except that references to a payment in clause (b) thereof will be deemed to include a Transfer under this Annex.

ISDA® 1994

"*Minimum Transfer Amount*" means, with respect to a party, the amount specified as such for that party in Paragraph 13; if no amount is specified, zero.

"*Notification Time*" has the meaning specified in Paragraph 13.

"*Obligations*" means, with respect to a party, all present and future obligations of that party under this Agreement and any additional obligations specified for that party in Paragraph 13.

"*Other Eligible Support*" means, with respect to a party, the items, if any, specified as such for that party in Paragraph 13.

"*Other Posted Support*" means all Other Eligible Support Transferred to the Secured Party that remains in effect for the benefit of that Secured Party.

"*Pledgor*" means either party, when that party (i) receives a demand for or is required to Transfer Eligible Credit Support under Paragraph 3(a) or (ii) has Transferred Eligible Credit Support under Paragraph 3(a).

"*Posted Collateral*" means all Eligible Collateral, other property, Distributions, and all proceeds thereof that have been Transferred to or received by the Secured Party under this Annex and not Transferred to the Pledgor pursuant to Paragraph 3(b), 4(d)(ii) or 6(d)(i) or released by the Secured Party under Paragraph 8. Any Interest Amount or portion thereof not Transferred pursuant to Paragraph 6(d)(ii) will constitute Posted Collateral in the form of Cash.

"*Posted Credit Support*" means Posted Collateral and Other Posted Support.

"*Recalculation Date*" means the Valuation Date that gives rise to the dispute under Paragraph 5; *provided, however*, that if a subsequent Valuation Date occurs under Paragraph 3 prior to the resolution of the dispute, then the "Recalculation Date" means the most recent Valuation Date under Paragraph 3.

"*Resolution Time*" has the meaning specified in Paragraph 13.

"*Return Amount*" has the meaning specified in Paragraph 3(b).

"*Secured Party*" means either party, when that party (i) makes a demand for or is entitled to receive Eligible Credit Support under Paragraph 3(a) or (ii) holds or is deemed to hold Posted Credit Support.

"*Specified Condition*" means, with respect to a party, any event specified as such for that party in Paragraph 13.

"*Substitute Credit Support*" has the meaning specified in Paragraph 4(d)(i).

"*Substitution Date*" has the meaning specified in Paragraph 4(d)(ii).

"*Threshold*" means, with respect to a party, the amount specified as such for that party in Paragraph 13; if no amount is specified, zero.

"*Transfer*" means, with respect to any Eligible Credit Support, Posted Credit Support or Interest Amount, and in accordance with the instructions of the Secured Party, Pledgor or Custodian, as applicable:

(i) in the case of Cash, payment or delivery by wire transfer into one or more bank accounts specified by the recipient;

(ii) in the case of certificated securities that cannot be paid or delivered by book-entry, payment or delivery in appropriate physical form to the recipient or its account accompanied by any duly executed instruments of transfer, assignments in blank, transfer tax stamps and any other documents necessary to constitute a legally valid transfer to the recipient;

(iii) in the case of securities that can be paid or delivered by book-entry, the giving of written instructions to the relevant depository institution or other entity specified by the recipient, together with a written copy thereof to the recipient, sufficient if complied with to result in a legally effective transfer of the relevant interest to the recipient; and

(iv) in the case of Other Eligible Support or Other Posted Support, as specified in Paragraph 13.

"*Valuation Agent*" has the meaning specified in Paragraph 13.

"*Valuation Date*" means each date specified in or otherwise determined pursuant to Paragraph 13.

"*Valuation Percentage*" means, for any item of Eligible Collateral, the percentage specified in Paragraph 13.

"*Valuation Time*" has the meaning specified in Paragraph 13.

"*Value*" means for any Valuation Date or other date for which Value is calculated and subject to Paragraph 5 in the case of a dispute, with respect to:

> (i) Eligible Collateral or Posted Collateral that is:
>
> > (A) Cash, the amount thereof; and
> >
> > (B) a security, the bid price obtained by the Valuation Agent multiplied by the applicable Valuation Percentage, if any;
>
> (ii) Posted Collateral that consists of items that are not specified as Eligible Collateral, zero; and
>
> (iii) Other Eligible Support and Other Posted Support, as specified in Paragraph 13.

ISDA® 1994

## CREDIT SUPPORT ANNEX
Elections and Variables
dated as of February 28, 1992
between
### FEDERAL HOME LOAN BANK OF INDIANAPOLIS
(hereinafter referred to as "Party A")
and
### LEHMAN BROTHERS SPECIAL FINANCING INC.
(hereinafter referred to as "Party B")

## Paragraph 13.  Elections and Variables

(a)    *Security Interest for "Obligations".*  The term "*Obligations*" as used in this Annex includes the following additional obligations:

With respect to Party A:  None

With respect to Party B:  None

(b)    *Credit Support Obligations.*

    (i)    "Delivery Amount, Return Amount and Credit Support Amount.

        (A)    "*Delivery Amount*" has the meaning specified in Paragraph 3 (a).

        (B)    "*Return Amount*" has the meaning specified in Paragraph 3 (b).

        (C)    "*Credit Support Amount*" has the meaning specified in Paragraph 3.

    (ii)    *Eligible Collateral.*  The following items will qualify as "*Eligible Collateral*" for both Party A and Party B:

        (A)    Cash -- U.S. Dollars (with a Valuation Percentage of 100%)

        (B)    Government Securities that are direct obligations of the United States of America having a remaining maturity of not more than 10 years (with a Valuation Percentage of 95%)

        (C)    Negotiable unsubordinated debt obligations that are direct obligations of either the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Association, a Federal Home Loan Bank, or the Student Loan Marketing Association having a remaining maturity of not more than five years (with

11

a Valuation Percentage of 95%);

(D)    Mortgage-Backed Securities (with a Valuation Percentage of 95%) having a credit rating of AAA by S&P, as defined below, or Aaa by Moody's, as defined below;

"Mortgage-Backed Securities" means securities of the following types having a maturity of not more than 10 years with underlying mortgages of original terms of from 15-30 years:

*FHLMC Certificates.* Guaranteed mortgage participation certificates issued by the Federal Home Loan Mortgage Corporation or any successor thereto representing an undivided interest in a specified pool of first lien conventional residential mortgage loans or participations therein owned by the Federal Home Loan Mortgage Corporation (but not a security representing an interest in principal but not interest or an interest in interest but not principal in respect of such a pool or such loans);

*FNMA Certificates.* Guaranteed mortgage pass-through certificates issued by the Federal National Mortgage Association or any successor thereto representing an undivided interest in a pool formed by the Federal National Mortgage Association of mortgage loans secured by first liens on residential properties (but not a security representing an interest in principal but not interest or an interest in interest but not principal in respect of such a pool or such loans); or

*GNMA Certificates*: fully modified pass-through mortgage-backed certificates guaranteed by the Government National Mortgage Association or any successor thereto that is proportionately based on and backed by a pool of mortgage loans secured by first liens on single family residences (but not a security representing an interest in principal but not interest or an interest in interest but not principal in respect of such a pool or such loans).

(iii)    *Other Eligible Support.* The following items will qualify as "**Other Eligible Support**" for the party specified:  Not applicable.

(iv)    **Thresholds.**

(A)    "*Independent Amount*" means with respect to Party A:  $ 0 unless otherwise stated in a confirmation

"*Independent Amount*" means with respect to Party B:  $ 0 unless otherwise stated in a confirmation

(B)    "Threshold" means with respect to a party on the date of determination (a) the amount set forth opposite the lower of the following credit ratings for the outstanding long-term unsecured, unsubordinated debt or deposit obligations which the party (or if such party is not rated, the rating of its Credit Support Provider) qualifies on that date (if rated by only one agency, that rating will apply), (b) in the case of Party A, $10,000,000 in the event that Party A is not rated by S&P's or Moody's, but is still a Government Sponsored Enterprise as defined in 2 U.S.C. § 622 (a "GSE"), or (c) zero if on that date the party (or if such party is not rated, its Credit Support Provider) does not have a credit rating (and in the case of Party A, Party A shall also have ceased to be a GSE) or an Event of Default has occurred and is continuing with respect to that party:

| Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. ("S&P") | Moody's Investors Service ("Moody's") | Threshold |
|---|---|---|
| AAA | Aaa | Unlimited |
| AA+, AA, AA- | Aa1, Aa2, Aa3 | $10,000,000 |
| A+, A | A1, A2 | $5,000,000 |
| A- or below | A3 or below | zero |

(C)    "Minimum Transfer Amount" means with respect to either party means $250,000; provided, however, that the Minimum Transfer Amount with respect to either party shall be zero on any date on which the Threshold with respect to such party is zero.

(D)    Rounding.  The Delivery Amount and the Return Amount will be rounded up and down, respectively, to the nearest integral multiple of $10,000.

(c)    Valuation and Timing.

(i)    "Valuation Agent" means, for purposes of Paragraphs 3 and 5, the party making the demand under Paragraph 3, for purposes of Paragraph 6 (d), the Secured Party receiving or deemed to receive the Distributions or the Interest Amount, as applicable, and for purposes of Paragraph 4 (d), the Secured Party for purposes of calculating the Value in connection with the substitutions.  Subject to Paragraph 5, Party B shall be the Valuation Agent for purposes of calculating Exposure.

13

(ii) *"Valuation Date"* means any Local Business Day

(iii) *"Valuation Time"* means the close of business in the location where the relevant product is traded provided; provided that the calculations of Value and Exposure will be made as of approximately the same time on the same date.

(iv) *Notification Time"* **means 3:00 P.M.,** New York time, on a Local Business Day.

(d) ***Conditions Precedent and Secured Party's Rights and Remedies.*** The following Termination Event(s) will be a *"**Specified Condition**"* for the party specified (that party being the Affected Party if the Termination Event occurs with respect to that party):

|  | Party A | Party B |
|---|---|---|
| Illegality | [] | |
| Tax Event | [] | [] |
| Tax Event Upon Merger | [] | [] |
| Credit Event Upon Merger | [X] | [X] |
| Additional Termination Event(s) | [X] | [X] |

(e) ***Substitution.***

   (i) *"Substitution Date"* has the meaning specified in Paragraph 4(d)(ii).

   (ii) **Consent.** Pledgor need not obtain the Secured Party's consent for any substitution pursuant to Paragraph 4 (d).

(f) ***Dispute Resolution.***

   (i) *"Resolution Time"* means 1:00 p.m., New York time, on the Local Business Day following the date on which the notice is given that gives rise to a dispute under Paragraph 5.

   (ii) **Value.** For the purpose of Paragraphs 5 (I) (C) and 5 (ii), the Value of Posted Credit support will be calculated as follows:

With respect to any Treasury Bills, Treasury Notes, or Treasury Bonds (referred to herein as "Government Obligations") the sum of (I) (x) the bid price quoted on such date by a mutually acceptable principal market maker for such Government

Obligations, or (y) if no such quotation is available from a principal market maker for such date, such bid price as of the day, next preceding such date, on which such quotation was available, in either case multiplied by the applicable Valuation Percentage, plus (II) the accrued interest on such Government Obligations (except to the extent Transferred to a party pursuant to any applicable section of this Agreement or included in the applicable price referred to in (I) of this Clause) as of such date.

(iii)    *Alternative.*  The provisions of Paragraph 5 will apply.

(g)    **Holding and Using Posted Collateral.**

(i)    *Eligibility to Hold Posted Collateral; Custodians.*

Party A and its Custodian, if any,  will be entitled to hold Posted Collateral pursuant to Paragraph 6 (b); provided that the following conditions applicable to it are satisfied:

(1)    Party A is not a Defaulting Party and it, or its Credit Support Provider, maintains a long-term unsecured debt rating of at least BBB from S&P and Baa2 from Moody's.

(2)    Posted Collateral may be held only in the United States.

(3)    The Custodian maintains a long-term unsecured debt or deposit rating of at least BBB from S&P and Baa2 from Moody's and is the head office of a commercial bank or trust company organized under the laws of the United States of America or a political subdivision thereof, having assets of at least $10 billion.

Initially, the Custodian for Party A is:  Not applicable.

Party B and its Custodian, if any, will be entitled to hold Posted Collateral pursuant to Paragraph 6 (b); provided that the following conditions applicable to it are satisfied:

(1)    Party B is not a Defaulting Party and its Credit Support Provider maintains a long term unsecured debt rating of at least BBB from S&P and Baa2 from Moody's.

(2)    Posted Collateral may be held only in the United States.

(3)    The Custodian maintains a long-term unsecured debt or deposit rating of at least BBB from S&P and Baa2 from Moody's and is the head office of

15

a commercial bank or trust company organized under the laws of the United States of America or a political subdivision thereof, having assets of at least $10 billion.

Initially, the Custodian for Party B is:  Not applicable.

(ii)    *Use of Posted Collateral.* The provisions of Paragraph 6(c)(i) will apply to both parties,  provided however that rehypothecation will only be allowed as long as Party B's Credit Support Provider maintains a rating of A-/A3.

(h)    *Distributions and Interest Amount.*

(i)    *Interest Rate.* The "*Interest Rate*" will be will be the rate per annum equal to the overnight Federal Funds Rate for each day cash is held by the Secured Party as reported in Federal Reserve Publication H.15 (519) or any successor publication as published by the Board of Governors of the Federal Reserve System.

(ii)    *Transfer of Interest Amount.* Interest on any Cash Transferred pursuant to Paragraph 3(b) shall be credited as additional Posted Collateral and shall be paid only on the Local Business Day on which Posted Collateral in the form of Cash is Transferred to the Pledgor pursuant to Paragraph 3(b) and only on the amount of Cash so Transferred.

(iii)    *Alternative to Interest Amount.* The provisions of Paragraph 6 (d) (ii) will apply.

(i)    *Additional Representation(s).* Not applicable.

(j)    *Other Eligible Support and Other Posted Support.*

(i)    *"Value"* with respect to Other Eligible Support and other Posted Support means: Not applicable.

(ii)    *"Transfer"* with respect to Other Eligible Support and Other Posted Support means: Not applicable.

(k)    *Demands and Notices.*

All demands, specifications and notices under this Annex will be made pursuant to the Notices Section of this Agreement.

(l)    *Addresses for Transfers.:*

Party A: as instructed by Party A in any confirmation or otherwise.
Party B: as instructed by Party B in any confirmation or otherwise.

16

(m)    *Other Provisions.*   Not applicable.

    (i)    *Posted Collateral.*   The definition of Posted Collateral shall also include any and all accounts in which Cash Collateral is held.

    IN WITNESS WHEREOF the parties have executed this Annex on the respective dates specified below with effect from the date specified on the first page of this Agreement. The parties executing this Credit Support Annex have executed the Master Agreement and have agreed as to the contents of this Credit Support Annex.

FEDERAL HOME LOAN BANK
 OF INDIANAPOLIS

By:_____
Name:_____
Title:_____
Date:_____

By:_____
Name:_____
Title:_____
Date:_____

LEHMAN BROTHERS SPECIAL FINANCING
INC.

By:___Diana Nottingham_____
Name:___DIANA NOTTINGHAM____
Title:___Authorized Signatory___
Date:____2/15/01_____

GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A") and FEDERAL HOME LOAN BANK OF INDIANAPOLIS ("Party B") have entered into a Master Agreement dated as of February 28, 1992, (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defense of payment or statute of limitations, neither of which is waived) provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) This Guarantee shall remain in full force and effect until such time as Party B shall receive written notice of termination. Termination of this Guarantee shall not affect Guarantor's liability hereunder as to obligations incurred or arising out of Transactions entered into prior to the termination hereof.

(e)  Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Master Agreement affecting Party A or Guarantor.

(f)  Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine.  All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein.  All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Treasurer, at 200 Vesey Street, 24th Floor, New York, New York 10285 USA (Facsimile No. (212) 526-1467) with a copy to Lehman Brothers Special Financing Inc., Attention: Documentation Manager at 1 World Financial Center, 27h Floor, New York, New York 10281 (Facsimile No. (646) 836-0609).

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.

Name: O. Budde

Title: VP

Date: 2/20/01