**Objection Deadline: November 17, 2011 at 4:00 p.m. (Eastern)**
**Hearing Date and Time: November 30, 2011 at 10:00 a.m. (Eastern)**

Brian E. Foont
The Foont Law Firm, LLC
11909 Reynolds Avenue
Potomac, MD 20854
202-236-4851

*Counsel for Claimant AFCO Cargo PIT LLC*

## UNITED STATES BANKRUPTCY COURT
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al. | Case No 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## OBJECTION OF AFCO CARGO PIT LLC TO DEBTORS' TWO HUNDRED TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVE CLAIMS)

TO:   **THE HONORABLE JUDGE JAMES M. PECK**
      **UNITED STATES BANKRUPTCY JUDGE:**

AFCO Cargo PIT LLC ("AFCO Cargo PIT"), by and through its undersigned counsel,

makes the following objection in connection with the Debtors' Two Hundred Twenty-Eighth

Omnibus Objection to Claims (No Liability Derivative Claims) ("Objection to Claims") (Docket

No. 20886) filed October 17, 2011 by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors (collectively, with LBHI, the "Debtors"), respectfully stating as follows:

**PRELIMINARY STATEMENT**

In its Objection to Claims the Debtors seek to have the court determine that the referenced "No Liability Derivative Claims" do not constitute "valid *prima facie* claims" and that they, therefore, be "disallowed and expunged in their entirety." (Objection to Claims at ¶ 2). AFCO Cargo PIT submits that its Claims based on those contracts are proper.

**BACKGROUND**

1.  On September 15, 2008, LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.  On various dates thereafter, LBHI's affiliated debtors in these cases filed voluntary petitions for relief under the Bankruptcy Code, whereupon, the Debtors' cases were administratively consolidated by the Bankruptcy Court. Specifically, LBSF filed a voluntary petition under chapter 11 of the Bankruptcy Code on October 3, 2008.

3.  AFCO Cargo PIT is party to the following three agreements with LBSF: (i) that certain Reserve Fund Agreement dated as of November 17, 1999 with LBSF a copy of which is attached hereto as Exhibit A, (ii) that certain Reserve Fund Agreement dated as of March 22, 2004 a copy of which is attached hereto as Exhibit B, and (iii) that certain Debt Service Deposit Agreement dated as of March 29, 2004 a copy of which is attached hereto as Exhibit C (collectively the "Agreements").

4.  Each of the Agreements provided for funds to be deposited with LBSF and for LBSF to pay a fixed rate of interest (a different rate under each of the 3 agreements) on those funds and, at specified times, pay over those funds toward amounts due under Bonds (as

defined in each Agreement). Except for the applicable rate and their dates, the Agreements are substantially the same.

5.      The Agreements were terminated on September 23, 2008 due to LBSF's insolvency.

6.      On July 2, 2009, the Bankruptcy Court entered its Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "Bar Date Order") in these cases.

7.      AFCO Cargo PIT timely filed its Proof of Claim (Claim No. 22899), which filing included copies of the Agreements.

**ARGUMENT**

*N.B.* While the material below specifically references and quotes the Reserve Fund Agreement dated November 17, 1999, the same argument applies to each of the other two agreements and the references are also the same. Capitalized terms refer to defined terms in each of the Agreements.

8.      Because LBSF became "Insolvent," a "Lehman Event of Default" occurred as specified at Section 7.3 of the Agreements.

9.      Because there was a Lehman Event of Default, AFCO Cargo PIT became the "Burdened Party."

10.     The remedy for a "Lehman Event of Default" under Section 7.3(c) is given at Section 7.6(c) that provides in pertinent part that "if the Termination Amount is a negative number, Lehman [LBSF] shall promptly, but no later than one Business Day after notice that such amount is due, pay such amount, in immediately available funds, to the Corporation [AFCO Cargo PIT]."

11.   Section 7.6(c) goes on to provide:

> . . . Notwithstanding anything to the contrary in this Agreement, if Lehman [LBSF] fails to determine the Termination Amount within three Business Days of notice from the Corporation [AFCO Cargo PIT] or the Trustee of the occurrence of a Lehman Event of Default then the Corporation [AFCO Cargo PIT] (or if so directed by the Corporation [AFCO Cargo PIT], the Trustee) shall make such determination as if it were Lehman [LBSF] and the amount as so determined by the Corporation [AFCO Cargo PIT] (or the Trustee) shall for purposes of this Section 7.6 be deemed the Termination Amount.

12.   LBSF did not make a determination of the Termination Amount within the time specified for it doing so.

13.   With LBSF having failed to make the determination of the Termination Amount, in accordance with Section 7.6(c), AFCO Cargo PIT is substituted for LBSF as the party making the determination.

14.   The Agreements define "Termination Amount" as:

> an amount, as determined by Lehman reasonably and in good faith on the basis of the arithmetic mean of quotations from at least three Dealers of the amount, if any, that each such Dealer would require the Burdened Party to pay to the Dealer (expressed as a positive number if the Burdened Party is Lehman and a negative number if the Burdened Party is the Corporation) or would pay to the Burdened Party (expressed as a negative number if the Burdened Party is Lehman and a positive number if the Burdened Party is the Corporation) in consideration of such Dealer entering into an agreement with the Burdened Party (with such documentation as Lehman and the Dealer may in good faith agree) which would have the effect of preserving for the Burdened Party the economic equivalent of its rights under this Agreement for the period commencing on the termination date of this Agreement and terminating on the last Bond Payment Date set forth in Exhibit A (assuming for these purposes that this Agreement were not terminating on the termination date and continued in full force through such last Bond Payment Date); <u>provided</u>, <u>however</u>, that:
>
> (i)     if more than three quotations are provided, the Termination Amount will be the arithmetic mean of such quotations, without regard to the quotations having the highest and lowest values,

(ii) if exactly three quotations are provided, the Termination Amount will be the quotation remaining after disregarding the highest and lowest quotations, for purposes of clauses (i) and (ii), if more than one quotation has the same highest value or lowest value, then one of such quotations shall be disregarded, and

(iii) if Lehman is unable to obtain three such quotations, the Termination Amount shall be the amount, as reasonably determined in good faith by Lehman, to be the Burdened Party's total losses and costs (expressed as a positive number if the Burdened Party is Lehman and a negative number if the Burdened Party is the Corporation), or gains (expressed as a negative number if the Burdened Party is Lehman and a positive number if the Burdened Party is the Corporation) in connection with a termination of this Agreement, including any loss of bargain, cost of funding or, at the election of Lehman but without duplication, any loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position, and;

provided further, however, that in any event the Termination Amount shall also include (A) any unpaid amounts due as of the date of termination of this Agreement (including any amounts due under Section 7.7 hereof) and (B) if such Termination Amount is being paid in connection with a termination of this Agreement following an Event of Default or if any Termination Amount otherwise due hereunder is not paid when due, the Termination Amount shall also include any incidental costs and expenses incurred by the Burdened Party in connection with such termination and the enforcement of its rights hereunder (including costs of collection and reasonable attorneys' fees). Any determination of the Termination Amount by Lehman shall be conclusive and binding on the parties hereto absent manifest error.

15.   Subsection (iii) above applies because at the time of the determination it was not possible to obtain quotations for the sorts of instruments comparable to the Agreements.

16.   Given that the Agreements provided for LBSF to pay a fixed rate of interest above the rates that were available on the same terms at the time the Agreements were terminated in September 2008, AFCO Cargo PIT suffered a loss. Thus, AFCO Cargo PIT's claim is not properly determined to be zero and should, therefore, not be disallowed or expunged, but, rather, determined in accordance with the Agreements and allowed.

**CONCLUSION**

LBSF entered in the Agreements. Those Agreements provided for LBSF to pay interest at fixed rates over their term. LBSF's default under the Agreements and the terminations that followed caused AFCO Cargo PIT harm. The measurement of that harm forms the appropriate basis for AFCO Cargo PIT's claim. Moreover, each of the Agreements provides a method for determining that harm and, hence, AFCO Cargo PIT's claim. There is no basis on which its claim should be disallowed or expunged. Rather, the Agreements ought to be applied and the determination of AFCO Cargo PIT's claim allowed.

AFCO Cargo PIT hereby reserves the right to supplement this objection, which is without prejudice to the assertion of other claims for relief and to file memoranda and to offer evidence at a hearing, in support hereof, and, to the extent necessary, reserves all rights to a full evidentiary hearing to determine the amount of its claims

Dated: Potomac, Maryland
November 9, 2011

THE FOONT LAW FIRM, LLC

By:    /s/ Brian E. Foont
       Brian E. Foont
       11909 Reynolds Avenue
       Potomac, MD 20854
       Tel. 202-236-4851
       Fax. 202-318-9195
       Foont@FoontLaw.com

       *Counsel for AFCO Cargo PIT LLC*