RESPONSE DEADLINE: November 9, 2011 4PM
HEARING DATE AND TIME: November 16, 2011 10AM

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

In re:                                                                                    Chapter 11

**LEHMAN BROTHERS HOLDINGS INC.**, et. al.     Case No. 08-13555 (JMP)

                         Debtors                           (Jointly Administered)

                                                    Docket No. 21109

_____

                      -and-

_____

**LEHMAN BROTHERS INC.**, et. al.                          Case No. 08-01420 (JMP) (SIPA)

                         Debtor                              Docket No. 21109

_____

**OBJECTION OF WENDY M. UVINO TO NOTICE OF JOINT MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND JAMES W. GIDDENS, AS TRUSTEE FOR LEHMAN BROTHERS INC., PERSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION AND APPROVAL OF A STOCK PURCHASE AGREEMENT REGARDING THE VEBA AND (II) FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT REGARDING THE SAME DATED OCTOBER 21, 2011 [Docket No. 4654 in Case No. 08-01420; Docket No. 21109 in Case No. 08-13555]**

_____

To:  The Honorable James M. Peck
      United States Bankruptcy Judge

**1** | P a g e

I, Wendy M. Uvino, hereby submit this objection (the "Objection") to the Motion and Settlement Agreement (the "Settlement Agreement") presently before this honorable Court, brought jointly by Lehman Brothers Holdings Inc. ("LBHI") and James W. Giddens, Trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI) regarding the stock purchase agreement of the Lehman Health Care Trust (the "Trust") and settlement regarding the same.

I am objecting to LBHI's stated intention in the Settlement Agreement to reimburse LBHI $25 million from the Trust as reimbursement for the approximate $5.6 million of medical premium LBHI paid on behalf of retirees and former employees on long term disability from April 1, 2009 through December 31, 2009 and an additional amount of $19.5 million for medical expenses paid for LBHI's current employees through September 2011.

My Background

I was employed by LBI from September 20, 1994 until the bankruptcy filing in 2008 as a senior vice president in the Human Resources department. I had responsibility for employee benefits, human resources operations, human resources systems, employee communications, the Lehman Brothers employee intranet content, and international expatriate assignments. Following the bankruptcy, I was hired by LBHI as the Head of Human Resources and had responsibility for all aspects of human resources management and supported the wind-down of operations and infrastructure separation from Barclays Capital.

During my tenure at LBI, I served as the Chairperson of the Employee Benefit Plans Committee, which was the fiduciary of the various benefit programs sponsored both by LBI and LBHI. I served in this capacity for approximately 14 years. After the bankruptcy, I continued in this capacity and was additionally appointed the Trustee of the Trust, which had been established in September 2008 by LBI

2 | P a g e

under a subsidiary called Aceso. The Trust was established to pay health benefits for the employees of LBI and LBHI (and any participating subsidiaries or affiliates), as well as retirees and former employees of LBI or LBHI that were on long term disability.

I am well versed in my fiduciary obligations as a Trustee of the Trust and was well aware of my obligation as Trustee to act in the best interest of the beneficiaries of the Trust. While performing this function, I was advised by independent legal counsel, Michael Nassau of Kramer, Levin, Naftalis & Frankel LLP. In July 2010, I left LBHI and resigned my position as Trustee of the Trust at such time.

Events Following Bankruptcy

Shortly after the bankruptcy filing, most employees of LBI were subsequently employed by Barclays Capital and in fact, LBI thereafter no longer had employees. LBHI had approximately 200 employees following the bankruptcy in tax, legal and various other support functions. Within six (6) weeks, it was determined that the assets of LBHI could not be managed without additional resources, so LBHI began hiring employees and eventually had approximately 600 employees.

The Trust was initially funded with $95 million from a transfer that occurred by LBI, as common paymaster and accounts payable entity, from funds transferred to LBI from LBHI. The Trust was an asset of LBI, based on the corporate structure of Aceso. Following bankruptcy, medical claims for employees of LBHI, prior LBI employees for whom claims were incurred but were not yet reported, and retirees and former employees on long term disability continued to be paid from the Trust. Effective January 1, 2009, LBHI changed the funding method from a self- insured medical plan to a fully insured plan. Premiums for the fully insured plan, which covered active employees of LBHI and retirees and former employees on long term disability, continued to be paid from the Trust. In March 2009, Hughes Hubbard representing the SIPA Trustee, ordered that the payments from the Trust

should stop until the Trust ownership disagreement (between LBI and LBHI) was resolved. LBHI agreed at that time to continue to fund these medical expenses directly from the assets of its Estate. Effective January 1, 2010, LBHI determined that it would no longer pay for benefits for retirees and former employees on long term disability. At this time, in an agreement between LBHI and LBI, it was determined that the retirees and former employees on long term disability could be "reimbursed" for their premiums by the Trust for so long as there were assets in the Trust and so long as LBHI did not seek reimbursement for any previous medical expenses paid for its active employees.

Retirees Covered under the Retiree Medical Plan

Prior to the bankruptcy, LBHI maintained the Lehman Brothers Group Benefits plan (the "Plan"). All employees of LBHI, its subsidiaries and participating affiliates, were covered by this Plan. In addition, employees that retired, having met the eligibility requirements, received life-time coverage for themselves and their spouse. From 1994 until roughly 2005, all employees of Lehman Brothers were employed by the broker-dealer, LBI, and then beginning in 2005, a small number of employees were transferred to LBHI. Prior to 1994 and Lehman's Initial Public Offering (the "IPO"), employees were employed by a number of prior legal entities. Any retiree eligible for the Plan at the time of the IPO was merged in with LBI's retirees thereafter. Therefore, no distinction was made with respect to a retiree being an LBI retiree or being an LBHI retiree. They were all part of the same control group and covered under the Plan. This is an important fact as LBHI claims the retirees are not "theirs".

It should also be noted that many of the retirees that retired prior to the IPO did not receive a Summary Plan Description that included language that preserved the Company's right to "amend, modify or terminate" the coverage. As such, prior to bankruptcy, there were a number of retirees for whom LBHI was not able to change the employee contribution structure. I believe that many of these retirees have a "vested" right to these benefits and that this has not been properly conveyed in the Settlement

Agreement. I do not believe that adequate review of archived documents has been conducted by LBHI to determine if any prior retirees have vested rights to this benefit. In addition, no Order has been sought to terminate these benefits.

Discussions with the Department of Labor ("DOL")

Following the establishment of the Trust, I and my attorney, Michael Nassau, had conversations with the DOL regarding the status of the Trust and how the assets would be used going forward. We had numerous discussions regarding the use of the assets and if they would be used solely for the benefit of plan participants. Based on representations from LBHI to me, I, as Trustee, assured the DOL that assets would not be used to reimburse LBHI's Estate for any prior medical expenses associated with active employees, retirees or former employees on long term disability. We also agreed that since I had many years of experience as a fiduciary, the DOL would not require oversight of the Trust except that LBHI would send regular reports to the DOL showing how the assets were being used.

Reason for My Objection to the Settlement Agreement

I object to the Settlement Agreement for the following reasons:

1. Beneficiaries of the Trust have not been given adequate time to object to the Settlement Agreement. From the date of the Notice until the required deadline of November 9, 2011, it is insufficient time to hire counsel, review the very long documents prepared by Weil Gotshal and be prepared for a hearing on November 16, 2011. Many of the beneficiaries have limited resources to file an objection.

5 | P a g e

2. The beneficiaries of the Trust will be disadvantaged by the reimbursement to LBHI. The Trustee of the Trust should be acting solely for the benefit of the Trust beneficiaries and this is not the case.

3. LBHI is characterizing the return of assets as a "reimbursement" but in fact it is no different than a reversion, which is not permitted.

4. It was my understanding that LBHI would not seek reimbursement from the Trust for medical expenses paid by the Estate for their employees on a retroactive basis and for retirees' expenses paid by LBHI between April and December 2009.

5. Adequate research has not been conducted to determine if any of the retirees had vested rights under the Plan.

6. According to the Hershan Declaration, which is listed as Exhibit D to the Settlement Agreement ("Exhibit D"), the intended purpose of the Trust was to pay benefit costs of *active* employees. I disagree: the Trust was to pay for medical expenses associated with all beneficiaries of the Trust and this action prejudices *retirees and former employees on long-term disability.*

7. In addition, according to Exhibit D, "LBHI will seek an exemption from the DOL to obtain reimbursement of approximately $25 million for expenses paid on behalf of [active LBHI employees,] retirees and former employees on long term disability from April 2009 through December 2009."  I think this exemption should be sought from the DOL prior to filing this Settlement Agreement with the honorable Court, not after the fact.

THEREFORE, I, Wendy M. Uvino, respectfully request that the Court either deny the Motion based on the reasons outlined above or postpone hearing this Motion on November 16, 2011 so that I can be at the hearing to present information on this matter.  I am scheduled to be out of the country on business on November 16, 2011 and cannot change my plans at this late date.  Additionally, I have no financial stake in this matter, but have standing as the party that made the representations to the DOL in my role as Trustee and after discussions with representatives of LBHI.  Finally, filing this Objection has nothing to do with my own dispute with LBHI and it has not been discussed with LBHI or LBI in any way.

Dated: November 9, 2011

This Objection is respectfully submitted by:

        _s/Wendy M. Uvino_____
        Wendy M. Uvino
        50 East 89 Street
        New York, New York 10128
        212-987-3717

To:

Hon. JAMES M. PECK
United States Bankruptcy Judge
One Bowling Green
New York, New York 10004

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Sunny Singh, Esq.

Attorneys for Debtors and Debtors in Possession

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
James B. Kobak, Jr., Esq.
Jeffrey S.Margolin, Esq.

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK
33 Whitehall Street
21st Floor
New York, New York 10004
Tracy Hope Davis, Esq.
Elisabetta G. Gasparini, Esq.
Andrea B. Schwartz, Esq.

MILLBANK, TWEED, HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, New York 10005
Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.

Attorneys for the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases