**Hearing Date and Time:   November 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:   November 23, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION FOR
## APPROVAL OF SETTLEMENT AGREEMENTS WITH
## (I) ELLIOTT ASSOCIATES, L.P. AND ALSTON INVESTMENTS LLC
## AND (II) ELLIOTT INTERNATIONAL, L.P AND ASHTON INVESTMENTS LLC

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., as debtors and debtors in possession (together, the "Debtors"), for approval of settlement agreements with (i) Elliott Associates, L.P. and Alston Investments LLC and (ii) Elliott International, L.P. and Ashton Investments LLC, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York, 10004 (the "Bankruptcy Court"), on **November 30, 2011, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:   (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Robert J. Lemons, Esq. and Sunny Singh, Esq., attorneys for the Debtors; (iii) the Office of the

United States Trustee for the Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Andrea B. Schwartz, Esq., and Elisabetta Gasparini, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Kleinberg Kaplan Wolff Cohen, 551 Fifth Avenue, New York, New York 10176, Attn:  Abbey Walsh, attorneys for the Counterparties, so as to be so filed and received by no later than **November 23, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  November 9, 2011
        New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re                                    :    Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                         :
                     Debtors.            :    (Jointly Administered)
-----------------------------------------------------------------x
```

**DEBTORS' MOTION FOR**
**APPROVAL OF SETTLEMENT AGREEMENTS WITH**
**(I) ELLIOTT ASSOCIATES, L.P. AND ALSTON INVESTMENTS LLC**
**AND (II) ELLIOTT INTERNATIONAL, L.P AND ASHTON INVESTMENTS LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special

Financing Inc. ("LBSF"), as debtors in possession (together, the "Debtors"), file this Motion and

respectfully represent:

**Preliminary Statement**

1.    The Debtors seek approval, pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), of (i) a termination and settlement agreement

(the "Alston Settlement Agreement") among the Debtors, Elliott Associates, L.P.

("Elliot Associates") and Alston Investments LLC ("Alston") and (ii) a termination and

settlement agreement (the "Ashton Agreement" and together with the Alston Settlement

Agreement, the "Settlement Agreements")[1] among the Debtors, Elliott International, L.P. ("Elliott International") and Ashton Investments LLC ("Ashton Investments," and together with Elliott Associates, Alston and Elliott International, the "Counterparties").   The Settlement Agreements resolve nearly $100 million of derivatives claims and derivatives guarantee claims asserted by Alston and Ashton against the Debtors.   Pursuant to the Alston Settlement Agreement, Alston has agreed to reduce each of its primary derivatives claim and its guarantee derivatives claim by approximately $17.3 million (which is a reduction of approximately 42% from the asserted amounts).   In addition, pursuant to the Ashton Settlement Agreement, Ashton has agreed to reduce each of its primary derivatives claim and its guarantee derivatives claim by approximately $25.9 million (which is a reduction of approximately 45% from the asserted amounts).

2.     Based upon the pertinent facts as described in the Declaration of Robert Hershan in Support of the Motion, filed contemporaneously herewith, entry into the Settlement Agreements is a proper and appropriate exercise of sound business judgment and their approval by the Court is in the best interests of the Debtors.

### Background

3.     Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).   The

---

[1] Copies of the Alston Settlement Agreement and the Ashton Settlement Agreement are annexed hereto as Exhibit A and Exhibit B, respectively.   Neither the Alston Settlement Agreement nor the Ashton Settlement Agreement is contingent on the other.

Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors for the Debtors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.    On September 1, 2011, the Debtors filed their third amended joint chapter 11 plan (the "Plan") pursuant to section 1121 of the Bankruptcy Code [ECF No. 19627] and related disclosure statement (the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code [ECF No. 19629].   On September 1, 2011, the Court entered an amended order approving the Disclosure Statement and voting procedures with respect to the Plan [ECF No. 19631].

## Jurisdiction

6.    This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Alston's and Ashton's Claims

### The Alston Asserted Claims

7.    LBSF was party to transactions (the "Elliott Associates Transactions") that were governed by an ISDA Master Agreement with Elliott Associates, dated August 4, 1994, and related schedules, documents, confirmations, and a guaranty of the obligations of LBSF by LBHI (as the same may have been amended from time to time, collectively, the "Elliott Associates Agreements").   The Elliott Associates Transactions include various (i) interest rate swaption transactions, (ii) single name, index and tranched index credit derivatives, (iii) index trades on asset-backed securities and (iv) single name credit default swaps on European residential

mortgage-backed securities.   Following the commencement of these chapter 11 cases, Elliott

Associates terminated the Elliott Associates Transactions and filed proofs of claim against the

Debtors asserting (i) a general unsecured claim in the amount of $41,508,505.70 against LBSF

based on alleged obligations arising under the Elliott Associates Agreements ("Claim No.

17376") and (ii) a general unsecured claim in an amount no less than $52 million against LBHI

based, in part, on LBHI's guarantee under the Elliott Associates Agreements ("Claim No.

29058").[2]   At the time of the termination of the Elliott Associates Agreements, the Debtors and

Elliott Associates were parties to more than 120 Elliott Associates Transactions.

8.    In June 2011, Elliott Associates assigned and transferred to its affiliate,

Alston, (i) all of its rights, title and interest in Claim No. 17376, *see* [Case No. 08-13888, ECF

No. 237], and (ii) all of its rights, title and interest in $41,508,505.70 of Claim No. 29058, which

amount represents the portion of Claim No. 29058 that is based on LBHI's asserted guarantee

under the Elliott Associates Agreements, *see* [ECF No. 17819] (together, the "Alston Asserted

Claims").

The Ashton Asserted Claims

9.    LBSF was also party to transactions (the "Elliott International

Transactions") that were governed by an ISDA Master Agreement, dated September 11, 1997,

with Elliott Associates' affiliate, Elliott International, and related schedules, documents,

confirmations, and a guaranty of the obligations of LBSF by LBHI (as the same may have been

amended from time to time, collectively, the "Elliott International Agreements").   The Elliott

International Transactions are substantially similar to the Elliott Associates Transactions.

---

[2]  In addition to Elliott Associates' claim against LBHI based on LBHI's guarantee under the Elliott Associates
Agreements, Claim No. 29058 includes amounts asserted against LBHI based on LBHI's purported guarantees of
the obligations of Lehman Brothers Commodity Services Inc. and Lehman Brothers International (Europe) under
other derivatives contracts.   These claims that are unrelated to the Elliott Associates Agreements are neither
addressed in nor affected in any way by the Settlement Agreements.

Following the commencement of these chapter 11 cases, Elliott International terminated the Elliott International Transactions and filed proofs of claim against the Debtors asserting (i) a general unsecured claim in the amount of $58,205,120.47 against LBSF based on alleged obligations arising under the Elliott International Agreements ("Claim No. 17378") and (ii) a general unsecured claim an amount no less than $73 million against LBHI based, in part, on LBHI's guarantee under the Elliott International Agreements ("Claim No. 29060").[3]   At the time of the termination of the Elliott International Agreements, the Debtors and Elliott International were parties to more than 120 Elliott International Transactions.

10.    In June 2011, Elliott International assigned and transferred to its affiliate, Ashton, (i) all of its rights, title and interest in Claim No. 17378, *see* [Case No. 08-13888, ECF No. 238], and (ii) all of its rights, title and interest in $58,205,120.47 of Claim No. 29060, which amount represents the portion of Claim No. 29060 that is based on LBHI's asserted guarantee under the Elliott International Agreements, *see* [ECF No. 17822] (together, the "Ashton Asserted Claims").

---

[3] In addition to Elliott International's claim against LBHI based on LBHI's guarantee under the Elliott International Agreements, Claim No. 29060 includes amounts asserted against LBHI based on LBHI's purported guarantees of the obligations of Lehman Brothers Commodity Services Inc. and Lehman Brothers International (Europe) under other derivatives contracts.   These claims that are unrelated to the Elliott International Agreements are neither addressed in nor affected in any way by the Settlement Agreements.

## The Alston Settlement Agreement

11.    After extensive arm's-length negotiations and to avoid protracted, costly and uncertain litigation, the Debtors, Elliott Associates and Alston reached a comprehensive settlement that resolves the Alston Asserted Claims.    The salient terms of the Alston Settlement Agreement are as follows:[4]

- Allowance of General Unsecured Claim Against LBSF.    Alston shall have an allowed, nonpriority, general unsecured claim against LBSF in the amount of $24,234,520 for its claim against LBSF under or in connection with the Elliott Associates Agreements.    *See* Alston Settlement Agreement § 1(a).    The Debtors believe that such allowed claim should be classified in LBSF Class 4A of the Plan.

- Allowance of General Unsecured Claim Against LBHI.    Alston shall have an allowed, nonpriority, general unsecured claim against LBHI in the amount of $24,234,520 for its claim against LBHI under or in connection with the Elliott Associates Agreements.    *See* Alston Settlement Agreement §1(a).    The Debtors believe that such allowed claim should be classified in LBHI Class 9A of the Plan.

- Releases.    The Parties will release one another from any and all other claims arising under or related to the Elliott Associates Agreements or the Elliott Associates Transactions, or the negotiation, execution, performance, termination or any breaches thereof.    *See* Alston Settlement Agreement § 2.

- Effective Date.    The Alston Settlement Agreement becomes effective upon the entry of an order by the Court approving the Alston Settlement Agreement.    *See* Alston Settlement Agreement § 6.

- Termination of Elliott Associates Transactions.    The Elliott Associates Transactions that have not already terminated according to their terms will terminate automatically upon the effective date of the Alston Settlement Agreement.    *See* Alston Settlement Agreement § 6.

---

[4]  To the extent there is any inconsistency between this summary and the Alston Settlement Agreement, the Alston Settlement Agreement controls.    Capitalized terms used but not defined in this summary shall have the meanings ascribed to them in the Alston Settlement Agreement.

## The Ashton Settlement Agreement

12.    After extensive arm's-length negotiations and to avoid protracted, costly and uncertain litigation, the Debtors, Elliott International and Ashton reached a comprehensive settlement that resolves the Ashton Asserted Claims.   The salient terms of the Ashton Settlement Agreement are as follows:[5]

- **Allowance of General Unsecured Claim Against LBSF.**   Ashton shall have an allowed, nonpriority, general unsecured claim against LBSF in the amount of $32,257,366 for its claim against LBSF under or in connection with the Elliott International Agreements.   *See* Ashton Settlement Agreement § 1(a).   The Debtors believe that such allowed claim should be classified in LBSF Class 4A of the Plan.

- **Allowance of General Unsecured Claim Against LBHI.**   Ashton shall have an allowed, nonpriority, general unsecured claim against LBHI in the amount of $32,257,366 for its claim against LBHI under or in connection with the Elliott International Agreements.   *See* Ashton Settlement Agreement § 1(a).   The Debtors believe that such allowed claim should be classified in LBHI Class 9A of the Plan.

- **Releases.**   The Parties will release one another from any and all other claims arising under or related to the Elliott International Agreements or the Elliott International Transactions, or the negotiation, execution, performance, termination or any breaches thereof.   *See* Ashton Settlement Agreement § 2.

- **Effective Date.**   The Ashton Settlement Agreement becomes effective upon the entry of an order by the Court approving the Ashton Settlement Agreement.   *See* Ashton Settlement Agreement § 6.

- **Termination of Elliott International Transactions.**   The Elliott International Transactions that have not already terminated according to their terms will terminate automatically upon the effective date of the Ashton Settlement Agreement.   *See* Ashton Settlement Agreement § 6.

---

[5] To the extent there is any inconsistency between this summary and the Ashton Settlement Agreement, the Ashton Settlement Agreement controls.   Capitalized terms used but not defined in this summary shall have the meanings ascribed to them in the Ashton Settlement Agreement.

## The Controlling Legal Standard Under Bankruptcy Rule 9019

13.     Compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).    The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.    *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).    A settlement must not "fall below the lowest point in the range of reasonableness."    *Vaughn v. Drexel Burnham Lambert Group, Inc. (Drexel Burnham Lambert Group)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).    Discretion may be exercised by the court "in light of the general public policy favoring settlements."    *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).    A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate."    *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

14.     The following factors are considered in determining whether a settlement should be approved:    (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion.    *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.,* 390 U.S.

at 424; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. at 50.

15.     While a court must evaluate "all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact . . . . The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

16.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that [the court] substitute [its] judgment for the Trustee's, but only that [the court] test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, [the court] must approve that choice, even if, all things being equal, [the court] would have selected the other.").

17.     There is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993). While not the settlement at bar, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single

percent of the potential recovery."   *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

### The Settlement Agreements Meet the Legal Standard Established Under Rule 9019 and Are in the Best Interests of the Debtors

18.    Each of the Alston Settlement Agreement and the Ashton Settlement Agreement satisfies the standard for approval.   The Debtors have comprehensively analyzed and considered the issues relating to the Alston Asserted Claims and the Ashton Asserted Claims and have concluded that the Settlement Agreements represent a fair and equitable resolution of the issues, are in the best interests of their estates and are well within the range of reasonable settlements.

19.    Pursuant to the Alston Settlement Agreement, Alston's primary derivatives claim against LBSF will be reduced by approximately $17.3 million and its guarantee derivatives claim against LBHI will be reduced by the same amount, for a total reduction of approximately $34.5 million or 42% of the Alston Asserted Claims.   In addition, pursuant to the Ashton Settlement Agreement, Ashton's primary derivatives claim against LBSF will be reduced by approximately $25.9 million and its guarantee derivatives claim against LBHI will be reduced by the same amount, for a total reduction of approximately $51.9 million or 45% of the Ashton Asserted Claims.   The total reductions of Alston's and Ashton's asserted claims against the Debtors – approximately $86.4 million – are very significant.

20.    The Elliott Associates Transactions and the Elliott International Transactions represent extremely speculative and very sophisticated, complex financial transactions.   They present highly difficult and esoteric issues, including the valuation of certain structured products, the market for which was highly illiquid during the relevant periods, making available data extremely volatile and valuations difficult to determine.   Additionally, due to the

international nature of the products requiring valuation, currency concerns, legal and regulatory issues, cross-border market segmentation, and lack of available data due to inferior reporting systems pose additional challenges to accurate valuation.   The resolution of such disputes concerning valuation, in the absence of the Settlement Agreements, would entail extensive, protracted and costly litigation requiring significant expenditures of both time and resources by the Debtors and their professionals.   The amount of the Alston Asserted Claims and the Ashton Asserted Claims that will be allowed pursuant to the Settlement Agreements is, in each case, more than 40% less than the asserted amounts.   If the Debtors were to pursue litigation of the issues, the novelty of the legal issues may swing values widely, with a risk that the Alston Asserted Claims and the Ashton Asserted Claims could be allowed in amounts greatly in excess of the amounts being allowed under the Settlement Agreements.   Given the complexities of the Elliott Associates Transactions and the Elliott International Transactions and the costs and risks associated with any litigation of the issues, the Debtors determined that the amounts of the Alston Asserted Claims and Ashton Asserted Claims that will be allowed under the Settlement Agreements are reasonable.

21.     The Debtors have spent more than two years gathering and collating trade data with respect to the Ashton Asserted Claims and the Alston Asserted Claims to determine and reconcile trade values and evaluate the validity of such claims.   They also engaged in extended discussions and negotiations with the Counterparties as part of the process.   The Debtors negotiated the terms of the Settlement Agreements at arm's-length over several months to reach a fair resolution of their disputes with the Counterparties.   The settlements are not the product of fraud or collusion.   The Debtors and the Counterparties have all been represented by competent and experienced professionals.   Significant resources have been invested by the

Debtors in evaluating the Ashton Asserted Claims, the Alston Asserted Claims and the Settlement Agreements.   Each of the Alston Settlement Agreement and the Ashton Settlement Agreement is the product of well-informed judgment and satisfies the standards for approval.

22.    Accordingly, the Debtors submit that the Settlement Agreements are well within the range of reasonableness and should be approved by the Court.

## Notice

23.    No trustee has been appointed in these chapter 11 cases.   The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the Counterparties; and (vii) all parties who have requested notice in these chapter 11 cases.

24.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court approve the

Settlement Agreements, grant the relief requested and such other and further relief as is just.

Dated: November 9, 2011
        New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

<u>**Exhibit A**</u>

**(The Alston Settlement Agreement)**

# TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of the 9th day of November 2011, by and among ELLIOTT ASSOCIATES, L.P. ("Elliott"), ALSTON INVESTMENTS LLC ("Alston" and, together will Elliott, the "Counterparties"), LEHMAN BROTHERS SPECIAL FINANCING INC. ("Lehman") and LEHMAN BROTHERS HOLDINGS INC. ("Holdings"), as credit support provider of Lehman (each of the foregoing a "Party" and collectively the "Parties").

## RECITALS:

WHEREAS, Lehman, Holdings and Elliott entered into one or more transactions (each a "Transaction" and, together, the "Transactions") that were governed by the ISDA Master Agreement, dated as of August 4, 1994 , which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court").

WHEREAS, Elliott filed (i) a proof of claim (Claim # 17376) on September 18, 2009 against Lehman for amounts purportedly owed under the Agreement Documents and (ii) a proof of claim (Claim # 29058) on September 22, 2009 against Holdings, a portion of which relates to amounts purportedly owed under the Agreement Documents.

WHEREAS, Elliott represents that it assigned and transferred to Alston (i) all of its rights, title and interest in Claim # 17376 as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBSF Docket #237 (Case no. 08-13888)], and (ii) a portion of its rights, title and interest in Claim #29058, which portion relates to amounts purportedly owed under the Agreement Documents, as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBHI Docket #17819 (Case no. 08-13555)] (the "Holdings Transfer Agreement").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of September 16, 2008.

WHEREAS, as of the date hereof, the Parties have agreed upon a settlement amount in favor of Counterparty in the amount of (i) the Lehman Allowed

Claim (as defined herein) in respect of the claims against Lehman arising under the Agreement Documents and (ii) the Holdings Allowed Claim (as defined herein) in respect of the claims against Holdings arising under the Agreement Documents.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Allowance of General Unsecured Claim.

(a)    In consideration of the  termination of the Transactions under the Agreement Documents by Elliott, Lehman and Holdings hereby agree that Alston shall have (i) an allowed, single, aggregate nonpriority general unsecured claim against Lehman in the fixed amount of $24,234,520 in relation to proof of claim # 17376 (the "Lehman Allowed Claim") and (ii) an allowed, single, aggregate nonpriority general unsecured claim against Holdings in relation to the portion of proof of claim # 29058 referenced in the Holdings Transfer Agreement and relating to the Agreement Documents in the fixed amount of $24,234,520 (collectively, the "Holdings Allowed Claim" and, together with the Lehman Allowed Claim and as set forth in Schedule 1 hereto, the "Allowed Claims") in full and complete satisfaction of all claims of Alston against Lehman, Holdings and any other debtor (each, an "Other Debtor") in the Bankruptcy Cases under or in connection with the Agreement Documents and the Transactions thereunder (collectively, the "Settled Claims"); provided, however, that the aggregate recovery of Alston in respect of the Allowed Claims shall not exceed the Lehman Allowed Claim except to the extent that a confirmed plan of reorganization provides otherwise.

Section 2.    Release.  Subject to Sections 14 and 15 hereof, in consideration of each other Party's execution of this Termination Agreement and the Allowed Claims, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature, and character whatsoever, other than the Allowed Claims and the rights and obligations of the Parties set forth under this Termination Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or

2

the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.

Section 3.    Representations. Each Party represents and warrants to each other Party that (i) subject to the entry of the Approval Order (as defined below), the execution, delivery and performance by such Party of this Termination Agreement is within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) subject to the entry of the Approval Order, this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters into voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Termination Agreement except as contemplated herein and (vii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown. Counterparties represent and warrant to Lehman and Holdings that (i) at no time on or following the commencement of the Bankruptcy Cases has it or any of its affiliates received a distribution (whether in the form of cash, in kind or otherwise) from one or more of the Issuers (as defined in that certain complaint, dated September 14, 2010, entitled Lehman Brothers Special Financing Inc. et al. v. Bank of America National Association et al. (Adversary Proceeding No. 10-03547 (JMP)) and (ii) to the extent the Allowed Claims include a component for collateral or other credit support that had been delivered to Lehman prior to the commencement of the Bankruptcy Cases, neither Counterparty nor any of their respective predecessors in interest has asserted claims for such collateral or credit support other than in connection with the Bankruptcy Cases. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement.

Section 4.    Setoff. Each Counterparty agrees that it will not, nor will such Counterparty permit any affiliate or third party to set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that are held or owing by such Counterparty or any third party or affiliate against the Allowed Claims and such Counterparty hereby irrevocably and unconditionally waives any and all rights to do so, whether such rights arise by virtue of contract or law.

3

Section 5.    Execution in Counterparts. This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 6.    Effectiveness. This Termination Agreement shall become effective upon (i) execution hereof by each of the Parties and (ii) entry of an order (the "Approval Order") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure by the Bankruptcy Court approving this Termination Agreement, authorizing Lehman and Holdings to perform all of their obligations thereunder and ordering Epiq Systems Inc. to update the claims register to reflect the Allowed Claims. The Transactions that are not already terminated according to their terms will terminate automatically on the effective date of this Termination Agreement. Unless and until the Parties have executed this Termination Agreement and the Bankruptcy Court has entered the Approval Order, the Termination Agreement shall remain ineffective. Counterparties and Lehman agree that, within 14 calendar days of the date on which this Termination Agreement has been executed by all Parties, they shall move for entry of the Approval Order. In the event that the Bankruptcy Court does not approve this Termination Agreement, this Termination Agreement shall be null and void and of no force and effect and it shall not have any *res judicata* or collateral estoppel effect against the Parties, and each of the Parties' respective interests, rights, remedies and defenses shall be restored as if this Termination Agreement had never been executed.

Section 7.    Governing Law/Jurisdiction. This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Termination Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 8.    Special Provision for Unknown Claims. All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 9.    <u>Successors and Assigns</u>.    The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.    Nothing in this agreement shall preclude the Counterparties from selling or assigning its claims, in whole or in part.

Section 10.    <u>Amendment</u>.    This Termination Agreement may be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 11.    <u>Entire Agreement</u>.    This Termination Agreement and the Joint Instruction Letter constitute the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 12.    <u>Construction</u>.    This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

Section 13.    <u>Other Claims</u>.    Notwithstanding anything in this Termination Agreement to the contrary, this Termination Agreement is without prejudice to, and will not affect in any way, any and all claims (other than Settled Claims), including, without limitation, Claim # 29058, other than the portion that is the subject of the Holdings Transfer Agreement,  asserted by the Counterparties and/or its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns or any defenses or objections that may be raised in respect of such claims.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

ELLIOTT ASSOCIATES, L.P.
By: Elliott Capital Advisors, L.P., as general partner
By: Braxton Associates, Inc., as general partner

By: _____
Name:  Elliot Greenberg
Title:   Vice President


ALSTON INVESTMENTS LLC

By: _____
Name:  Elliot Greenberg
Title:   Vice President


LEHMAN BROTHERS SPECIAL
FINANCING INC.


By: _____
Name:
Title:


LEHMAN BROTHERS HOLDINGS INC.


By: _____
Name:
Title:

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

ELLIOTT ASSOCIATES, L.P.

By: _____
Name:
Title:


ALSTON INVESTMENTS LLC


By: _____
Name:
Title:


LEHMAN BROTHERS SPECIAL
FINANCING INC.

By: _____
Name: Daniel Ehrmann
Title: VP

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name: Daniel Ehrmann
Title: SVP

### Schedule 1

| Claim No. | Creditor | Debtor | Current Claim Amount | Allowed Claim |
|-----------|----------|--------|----------------------|---------------|
| 17376 | Alston Investments LLC* | Lehman Brothers Special Financing Inc. | $41,508,505.70* | $24,234,520 |
| 29058 | Alston Investments LLC** | Lehman Brothers Holdings Inc. | $41,508,505.70** | $24,234,520 |

*The original creditor with respect to Claim #17376 was Elliott Associates LP which subsequently assigned and transferred it to Alston as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBSF Docket #237 (Case no. 08-13888)].*

**The original creditor with respect to Claim #29058 was Elliott Associates LP which subsequently assigned and transferred to Alston a portion of its rights, title and interest in Claim #29058 as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBHI Docket #17819 (Case no. 08-13555)].*

**<u>Exhibit B</u>**

**(The Ashton Settlement Agreement)**

## TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of the 9th day of November 2011, by and among ELLIOTT INTERNATIONAL, L.P. ("Elliott"), ASHTON INVESTMENTS LLC ("Ashton" and, together will Elliott, the "Counterparties"), LEHMAN BROTHERS SPECIAL FINANCING INC. ("Lehman") and LEHMAN BROTHERS HOLDINGS INC. ("Holdings"), as credit support provider of Lehman (each of the foregoing a "Party" and collectively the "Parties").

### RECITALS:

WHEREAS, Lehman, Holdings and Elliott entered into one or more transactions (each a "Transaction" and, together, the "Transactions") that were governed by the ISDA Master Agreement, dated as of September 11, 1997, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court").

WHEREAS, Elliott filed (i) a proof of claim (Claim # 17378) on September 18, 2009 against Lehman for amounts purportedly owed under the Agreement Documents and (ii) a proof of claim (Claim # 29060) on September 22, 2009 against Holdings, a portion of which relates to amounts purportedly owed under the Agreement Documents.

WHEREAS, Elliott represents that it assigned and transferred to Ashton (i) all of its rights, title and interest in Claim # 17378 as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBSF Docket #238 (Case no. 08-13888)], and (ii) a portion of its rights, title and interest in Claim #29060, which portion relates to amounts purportedly owed under the Agreement Documents, as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBHI Docket #17822 (Case no. 08-13555)] (the "Holdings Transfer Agreement").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of September 16, 2008.

WHEREAS, as of the date hereof, the Parties have agreed upon a settlement amount in favor of Counterparty in the amount of (i) the Lehman Allowed

Claim (as defined herein) in respect of the claims against Lehman arising under the Agreement Documents and (ii) the Holdings Allowed Claim (as defined herein) in respect of the claims against Holdings arising under the Agreement Documents.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    <u>Allowance of General Unsecured Claim</u>.

(a)    In consideration of the  termination of the Transactions under the Agreement Documents by Elliott, Lehman and Holdings hereby agree that Ashton shall have (i) an allowed, single, aggregate nonpriority general unsecured claim against Lehman in the fixed amount of $32,257,366 in relation to proof of claim # 17378 (the "<u>Lehman Allowed Claim</u>") and (ii) an allowed, single, aggregate nonpriority general unsecured claim against Holdings in relation to the portion of proof of claim # 29060 referenced in the Holdings Transfer Agreement and relating to the Agreement Documents in the fixed amount of $32,257,366 (collectively, the "<u>Holdings Allowed Claim</u>" and, together with the Lehman Allowed Claim and as set forth in Schedule 1 hereto, the "<u>Allowed Claims</u>") in full and complete satisfaction of all claims of Ashton against Lehman, Holdings and any other debtor (each, an "<u>Other Debtor</u>") in the Bankruptcy Cases under or in connection with the Agreement Documents and the Transactions thereunder (collectively, the "<u>Settled Claims</u>"); <u>provided, however</u>, that the aggregate recovery of Ashton in respect of the Allowed Claims shall not exceed the Lehman Allowed Claim except to the extent that a confirmed plan of reorganization provides otherwise.

Section 2.    <u>Release</u>.  Subject to Sections 14 and 15 hereof, in consideration of each other Party's execution of this Termination Agreement and the Allowed Claims, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "<u>Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature, and character whatsoever, other than the Allowed Claims and the rights and obligations of the Parties set forth under this Termination Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or

2

the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.

Section 3.    Representations.  Each Party represents and warrants to each other Party that (i) subject to the entry of the Approval Order (as defined below), the execution, delivery and performance by such Party of this Termination Agreement is within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) subject to the entry of the Approval Order, this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters into voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Termination Agreement except as contemplated herein and (vii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown.  Counterparties represent and warrant to Lehman and Holdings that (i) at no time on or following the commencement of the Bankruptcy Cases has it or any of its affiliates received a distribution (whether in the form of cash, in kind or otherwise) from one or more of the Issuers (as defined in that certain complaint, dated September 14, 2010, entitled Lehman Brothers Special Financing Inc. et al. v. Bank of America National Association et al. (Adversary Proceeding No. 10-03547 (JMP)) and (ii) to the extent the Allowed Claims include a component for collateral or other credit support that had been delivered to Lehman prior to the commencement of the Bankruptcy Cases, neither Counterparty nor any of their respective predecessors in interest has asserted claims for such collateral or credit support other than in connection with the Bankruptcy Cases.  The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Termination Agreement.  Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement.  These representations and warranties shall survive the execution of this Termination Agreement.

Section 4.    Setoff.  Each Counterparty agrees that it will not, nor will such Counterparty permit any affiliate or third party to set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that are held or owing by such Counterparty or any third party or affiliate against the Allowed Claims and such Counterparty hereby irrevocably and unconditionally waives any and all rights to do so, whether such rights arise by virtue of contract or law.

Section 5.    <u>Execution in Counterparts</u>.  This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.  Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 6.    <u>Effectiveness</u>.    This Termination Agreement shall become effective upon (i) execution hereof by each of the Parties and (ii) entry of an order (the "<u>Approval Order</u>") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure by the Bankruptcy Court approving this Termination Agreement, authorizing Lehman and Holdings to perform all of their obligations thereunder and ordering Epiq Systems Inc. to update the claims register to reflect the Allowed Claims.  The Transactions that are not already terminated according to their terms will terminate automatically on the effective date of this Termination Agreement.  Unless and until the Parties have executed this Termination Agreement and the Bankruptcy Court has entered the Approval Order, the Termination Agreement shall remain ineffective.  Counterparties and Lehman agree that, within 14 calendar days of the date on which this Termination Agreement has been executed by all Parties, they shall move for entry of the Approval Order.  In the event that the Bankruptcy Court does not approve this Termination Agreement, this Termination Agreement shall be null and void and of no force and effect and it shall not have any *res judicata* or collateral estoppel effect against the Parties, and each of the Parties' respective interests, rights, remedies and defenses shall be restored as if this Termination Agreement had never been executed.

Section 7.    <u>Governing Law/Jurisdiction</u>.  This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Termination Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 8.    <u>Special Provision for Unknown Claims.</u>  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 9.     Successors and Assigns.     The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.     Nothing in this agreement shall preclude the Counterparties from selling or assigning its claims, in whole or in part.

Section 10.     Amendment.     This Termination Agreement may be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 11.     Entire Agreement.     This Termination Agreement and the Joint Instruction Letter constitute the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 12.     Construction.  This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

Section 13.     Other Claims.  Notwithstanding anything in this Termination Agreement to the contrary, this Termination Agreement is without prejudice to, and will not affect in any way, any and all claims (other than Settled Claims), including, without limitation, Claim # 29060, other than the portion that is the subject of the Holdings Transfer Agreement,  asserted by the Counterparties and/or its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns or any defenses or objections that may be raised in respect of such claims.

5

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

ELLIOTT INTERNATIONAL, L.P.
By: Elliott International Capital Advisors Inc.
as attorney-in-fact

By: _____
Name:  Elliot Greenberg
Title:   Vice President


ASHTON INVESTMENTS LLC

By:_____
Name:  Elliot Greenberg
Title:   Vice President


LEHMAN BROTHERS SPECIAL
FINANCING INC.


By: _____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC.


By: _____
Name:
Title:


6

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

ELLIOTT INTERNATIONAL, L.P.

By: _____
Name:
Title:

ALSTON INVESTMENTS LLC

By:_____
Name:
Title:

LEHMAN BROTHERS SPECIAL
FINANCING INC.

By:_____
Name:  David Ehrmann
Title:  VP

LEHMAN BROTHERS HOLDINGS INC.

By:_____
Name:  David Ehrmann
Title:  SVP

**Schedule 1**

| Claim No. | Creditor | Debtor | Current Claim Amount | Allowed Claim |
|---|---|---|---|---|
| 17376 | Ashton Investments LLC* | Lehman Brothers Special Financing Inc. | $58,205,120.47* | $32,257,366 |
| 29058 | Ashton Investments LLC** | Lehman Brothers Holdings Inc. | $58,205,120.47** | $32,257,366 |

*The original creditor with respect to Claim #17378 was Elliott International LP which subsequently assigned and transferred it to Ashton as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBSF Docket #238 (Case no. 08-13888)].*

**The original creditor with respect to Claim #29060 was Elliott International LP which subsequently assigned and transferred to Ashton a portion of its rights, title and interest in Claim #29060 as evidenced by that certain Rule 3001(e)(2) Notice of Transfer dated as of June 15, 2011 [LBHI Docket #17822 (Case no. 08-13555)].*

**<u>Exhibit C</u>**


**(Proposed Order Approving the Settlement Agreements)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                          :        Chapter 11 Case No.
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                                               :
                              Debtors.          :        **(Jointly Administered)**
-------------------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENTS WITH
## (I) ELLIOTT ASSOCIATES, L.P. AND ALSTON INVESTMENTS LLC
## AND (II) ELLIOTT INTERNATIONAL, L.P AND ASHTON INVESTMENTS LLC

Upon the motion, dated November 9, 2011 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF"), as debtors and

debtors in possession (together, the "Debtors"), pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of (i) a termination and settlement

agreement (the "Alston Settlement Agreement") among the Debtors, Elliott Associates, L.P.

("Elliott Associates") and Alston Investments LLC ("Alston") and (ii) a termination and

settlement agreement (the "Ashton Settlement Agreement" and together with the Alston

Settlement Agreement, the "Settlement Agreements") among the Debtors, Elliott International,

L.P. ("Elliott International") and Ashton Investments LLC ("Ashton"), all as more fully

described in the Motion; and upon the Declaration of Robert Hershan, dated November 9, 2011,

in support of the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended

order entered June 17, 2010 governing case management and administrative procedures [ECF

No. 9365] on (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) all parties who have requested notice in these chapter 11 cases; (vii)

Elliott Associates; (viii) Alston; (ix) Elliott International; and (x) Ashton, and it appearing that

no other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Motion; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Debtors' entry into the

Settlement Agreements is approved and the Debtors are authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents and papers and to

take any and all actions reasonably necessary or appropriate to consummate the Settlement

Agreements, including waiving any conditions precedent to its effectiveness, and perform any

and all obligations contemplated therein; and it is further

ORDERED that the terms of this Order shall be immediately effective and

enforceable upon its entry; it is further

ORDERED that Epiq Bankruptcy Solutions, the Court-appointed claim's agent, shall reflect the terms of the Settlement Agreements on the official claims register; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE