**Form 210A (10/06)**

# United States Bankruptcy Court
## Southern District Of New York

In re Lehman Brothers Holdings Inc., et al.,

Case No. 08-13555 (JMP)
(**Jointly Administered**)

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a).  Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Name of Transferee

Name of Transferor

**Deutsche Bank AG, London Branch**

**Provincie Zeeland**

Name and Address where notices to transferee should be sent:

Deutsche Bank AG, London Branch
Winchester House, 1 Great Winchester Street
London EC2N 2DB
Tel: +44 20 7547 2400
Fax: +44 113 336 2010
Attention: Simon Glennie/Kelly Whistance
E-mail: simon.glennie@db.com
kelly.whistance@db.com

Court Claim # (if known): 59796
Amount of Claim: EUR 5,000,000 or USD
7,102,500 principal amount
Date Claim Filed: 30 October 2009

Last Four Digits of Acct. #:  N/A

Tel: N/A
Last Four Digits of Acct. #:  N/A

Name and Address where transferee payments should be sent (if different from above):

Tel: +44 20 7547 2400
Last Four Digits of Acct #: N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____          Date:  ___9_/_11_/_2011___
    Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

Philipp Roever
Vice President

Ross Miller
Director

*FULL Transfer of LBHI Claim # 59796*
*PROGRAM SECURITY*

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:     THE DEBTOR AND THE BANKRUPTCY COURT

1.      For value received, the adequacy and sufficiency of which are hereby acknowledged, **PROVINCIE ZEELAND** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **DEUTSCHE BANK AG, LONDON BRANCH** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) Seller's right, title and interest in and to such portion of Proof of Claim Number 59796 filed by or on behalf of **PROVINCIE ZEELAND** (a copy of which is attached at Schedule 2 hereto) (the "Proof of Claim") as is specified in Schedule 1 hereto (the "Purchased Portion") against Lehman Brothers Holdings, Inc., as guarantor of the Purchased Security (as defined below) and debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Portion, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Portion or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Portion, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Portion, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Portion, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Portion, but only to the extent related to the Purchased Portion, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Portion and specified in Schedule 1 attached hereto.

2.      Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Portion specified in Schedule 1 attached hereto; and (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein.

**DB Ref: 9039**

Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.    Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.    Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.    Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 3 day of november 2011.

**PROVINCIE ZEELAND**

By: _____
Name:
Title:        Hugd yd. Financien

P.O. Box 6001
4330 LA Middelburg
The Netherlands
Attn: Mr A. de Munck

By: _____

Name :    A. de Munck
Title :    beleidsmedewerker Treasury

**DEUTSCHE BANK AG, LONDON BRANCH**

Philipp Roever
Vice President

By: _____
Name:
Title:        Ross Miller
              Director

By: _____
Name:
Title:

Winchester House
1 Great Winchester Street
London EC2N 2DB
ENGLAND
Attn: Michael Sutton

**DB Ref: 9039**

Schedule 1

## Transferred Claims

### Purchased Portion

100% of the Proof of Claim (in a principal amount of USD 7,102,500.00 plus a Redemption Premium on the Note resulting in a Minimum Redemption Amount of USD 10,650,750.00 and a Maximum Redemption Amount of USD 15,408,085.00), of which a copy is attached at Schedule 2.

### Lehman Programs Securities to which Transfer Relates

| Description of Security | ISIN/CUSIP | Blocking Number | Issuer | Guarantor | Principal/Notional Amount | Maturity | Total Claim Amount |
|---|---|---|---|---|---|---|---|
| 10 YEAR EURO STOXX 50 EQUITY LINKED NOTE | XS0159166056 | 6055140 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | EUR 5,000,000.00 (USD 7,102,500.00) | 1/16/2013 | A Minimum Redemption Amount of 150% of the Principal Amount, or EUR 7,500,000.00 (USD 10,650,750.00) and up to the Maximum Redemption Amount of 217% of the Principal Amount, or EUR 10,850,000.00 (USD 15,408,085.00) |

Schedule 1-1

DB Ref: 9039

Schedule 2

Copy of Proof of Claim 59796

Schedule 1–1

| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)          0000059796 |

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

||||||||||||||| (barcode)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

PROVINCIE ZEELAND
P.O. BOX 6001, 4330 LA MIDDELBURG, THE NETHERLANDS
ATTN: MR. A. de Munck
+31 118 63 601

Telephone number: ☏          Email Address: A.de.Munck@zeeland.NL

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ 10,650,750.00          (Required)  plus additional Redemption Amounts
(as described herein)

☐ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN): XS 0159166056          (Required)

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:

6055140 (EUROCLEAR)          (Required)

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:

90023 With EUROCLEAR)          (Required)

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

FOR COURT USE ONLY
FILED / RECEIVED
OCT 30 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date.<br>2?/10/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.          (signature)          MR. ROB BLACQUIÈRE, EXECUTIVE FINANCIAL AFFAIRS PROVINCIE ZEELAND |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The questions on the Proof of Claim form include instructions for completing each question. The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## ____ DEFINITIONS ____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured, reduced to judgment or not, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Lehman Brothers Holdings Claims Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, PO Box 5076**
**New York, NY 10150- 5076**

**Lehman Programs Security**
Any security included on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009

## ____ INFORMATION ____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.



**JOYCE M. SMITH**
**LEGAL ASSISTANT**
direct dial: (212) 208-4837
jsmith@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

October 30, 2009

VIA HAND DELIVERY

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

> RE:    Lehman Brothers Holdings Inc.
>          Chapter 11, Case No. 08-13555 (JMP)

Dear Sir/Madam:

Enclosed please find for filing in the above referenced Lehman Brothers Holdings Inc. proceeding an original as well as one copy of the Proof of Claim of Provincie Zeeland.

Kindly acknowledge receipt of the enclosed by date stamping the copy and returning it to the messenger. If you have any questions or need additional information, please do not hesitate to contact me.

Very truly yours,

Joyce M. Smith
Legal Assistant

Enclosures

**FILED / RECEIVED**

OCT 3 0 2009

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

#8229481

028651

Brown Rudnick LLP    *an international law firm*    Boston | Dublin | Hartford | London | New York | Providence | Washington

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| **LEHMAN BROTHERS** | ) |  |
| **HOLDINGS INC.**, *et al.*, | ) | Case No. 08-13555 (JMP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

### PROOF OF CLAIM OF PROVINCIE ZEELAND

1.      This Proof of Claim[1] is, and shall be deemed to be, filed, submitted and asserted by

**PROVINCIE ZEELAND** ("Claimant") against **LEHMAN BROTHERS HOLDINGS INC.** ("LBHI")

and its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in each of their

respective chapter 11 cases.

2.      Claimant is filing this Proof of Claim in order to set forth the aggregate claims of

Claimant against the Debtors as of September 15, 2008 (the "Petition Date"), as more fully described

below.

3.      Claimant is the holder of **€5,000,000.00 ($7,102,500.00[2])** principal amount (the

"Principal Amount") of that certain Euro Medium-Term Note (the "Note") issued by **LEHMAN**

**BROTHERS TREASURY CO. B.V.** ("LBT"), which is currently in Dutch insolvency proceedings.   A

copy of the Preliminary Confirmation for Claimant's purchase of the Note is attached hereto as Exhibit A.

Claimant has received no further documentation in relation to the Note.

4.      In addition to repayment of the Principal Amount, Claimant is entitled to a Redemption

Premium on the Note.  The addition of the Redemption Premium results in a Minimum Redemption

Amount of 150% of the Principal Amount, or **€7,500,000.00 ($10,650,750.00)** and, depending on the

performance of the underlying index (the Euro-STOXX 50), a Maximum Redemption Amount of 217%

---

[1]      This Proof of Claim is hereby incorporated by reference and made a part of the proof of claim form
submitted herewith.

[2]      Calculated using EUR/USD exchange rate on the Petition Date of 1/1.4201 (Bloomberg based on pricing
source Composite London).

8228909

of the Principal Amount, or **€10,850,000.00 ($15,408,085.00)**.    The Settlement Date of the Note is January 16, 2013.

5.        Pursuant to that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the "2005 Guarantee"), a copy of which is attached hereto as Exhibit B, LBHI has guaranteed the payment of all liabilities, obligations and commitments of certain subsidiaries, including LBT.  Pursuant to that certain Guarantee Agreement in respect of LBT, dated July 24, 2008 (the "2008 Guarantee"), a copy of which is attached hereto as Exhibit C, LBHI unconditionally and irrevocably guaranteed to the holders of the Note the due and punctual payment and performance of all of LBT's obligations in the Note, including, without limitation, the payment of principal and interest, together with all other sums payable by LBT under the Note, as and when the same become due and payable. The 2008 Guarantee extends to the ultimate balance of the Note notwithstanding any settlement of account or other matter or other thing whatsoever and remains in full force and effect until all obligations have been irrevocably paid and satisfied in full. Claimant thus asserts its claim with respect to the Note against LBHI on the basis of the 2005 Guarantee, the 2008 Guarantee, and any other guarantees, contractual or otherwise, by LBHI for the benefit of LBT.

6.        Claimant reserves all of its rights and defenses, whether under title 11 of the United States Code or other applicable law, as to any claims that may be asserted against Claimant by the Debtor, including, without limitation, any rights of setoff and/or recoupment not expressly observed above. Claimant reserves the right to amend and/or supplement this Proof of Claim and any Schedule attached hereto at any time and in any manner.  Claimant reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents. Claimant reserves the right to file additional proofs of claim for administrative expenses or other claims entitled to priority.  Claimant also reserves the right to any and all prepetition and postpetition amounts and liabilities in respect of the Notes and any other documents related thereto, including, without limitation, any cash settlement amount, physical settlement amount, fractional share amount, automatic redemption amount, final redemption amount, cancellation amount, and/or early redemption amount owed under the Notes (as applicable), and

2

any and all principal, premiums, interest, default interest, coupon payments, fees, costs, expenses, collection, attorneys' and professionals' fees, disbursements and other amounts owed to the extent allowed by law. Claimant further reserves all of its rights as against the other debtors in these Chapter 11 proceedings.

7.    This Proof of Claim is filed under the compulsion of the bar date set in this case and is filed to protect Claimant from forfeiture of its claim by reason of said bar date. The filing of this Proof of Claim shall not constitute: (a) a waiver, release, or limitation of Claimant's rights against any person, entity or property (including, without limitation, the Debtor or any other person or entity that is or may become a debtor in a case pending in this Court) in which the Claimant has a security interest or lien, (b) a consent by the Claimant to the jurisdiction or venue of this Court or any other court with respect to the proceedings, if any, commenced in any case against or otherwise involving Claimant with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving Claimant, (c) a waiver, release, or limitation of the right of the Claimant to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the U.S. Constitution, (d) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise, (e) a waiver, release, or limitation of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a U.S. District Court Judge, (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Claimant, (g) a consent to the termination of the Debtor's liability to Claimant by any particular court, including, without limitation, this Court, (h) a consent to the final determination or

3

adjudication of any claim or right pursuant to 28 U.S.C. § 157(c), or (i) an election of remedies. No judgment has been rendered on this claim. This claim is not subject to any setoff or counterclaim rights by the Debtors.

8.      Copies of any documents that underlie or evidence the obligations of the Debtors to the Claimant which are not attached hereto are available upon written request to the Claimant.

4

9.      All notices concerning this Proof of Claim shall be sent to:

> PROVINCIE ZEELAND
> P.O. Box 6001
> 4330 LA Middelburg
> The Netherlands
> Attn: Mr. A. de Munck
> (T): 31 118 631 601
> (E): a.de.munck@zeeland.nl

> *with copies to:*

> VAN DOORNE N.V.
> Jachthavenweg 121
> 1081 KM Amsterdam
> P.O. Box 75265
> 1070 AG Amsterdam
> The Netherlands
> Attn: Arno Voerman
> (T): 31 (0) 20 6789 250
> (E): voerman@van-doorne.com

> *and:*

> BROWN RUDNICK LLP
> Seven Times Square
> New York, NY 10036
> Attn: Timothy C. Bennett, Esq.
> (T): 212.209.4863
> (E): tbennett@brownrudnick.com

# **EXHIBIT A**



Benelux TEAM        **EQUITY DERIVATIVES**

Omar Abdelhaoui
oabdelhi@lehman.com
+44 207 260 30 70

Makram Farès
+44 207 260 30 70
mfares@lehman.com

# Euro Medium Term Note

10-year Note linked to an annual Cliquet on the
Euro-STOXX 50 Index

*Preliminary Confirmation*

| | |
|---|---|
| **Trade Date** | 27 November 2002 |
| **Issuer** | Lehman Brothers Treasury BV |
| **Rating** | A (S&P) |
| **Lead Arranger** | Lehman Brothers International (Europe) |
| **Principal Amount** | EUR 5,000,000 |
| **Issue Type** | Index-linked Euro Medium Term Note |
| **Currency** | EUR |
| **Issue Price** | 100% |
| **Denomination** | [TBD] |
| **Option Strike Date** | 6 January 2003 |
| **Note Issue Date** | 9 January 2003 |
| **Option Expiration Date** | 4 January 2013 |
| **Note Termination Date** | 11 January 2013 |
| **Settlement Date** | 16 January 2013 |
| **Underlying** | DJ EuroSTOXX 50 Index (Reuters : .STOXX50E Bloomberg : SX5E) |
| **Initial Strike** | 100% of the level of the Underlying on Option Strike Date |
| **Coupon** | 0.00% |
| **Redemption Amount** | 100% of the Principal Amount + Redemption Premium, both to be received by the Note holder on Settlement Date |
| **Redemption Premium** | The maximum of the following amounts : |

(1)  Principal Amount *50%

**OR**

(2)  Principal Amount * 100% * $\sum_{i=1}^{10}$ Performance$_i$

Where :

$$\text{Performance}_i = Max\left\{ Min\left[\left(\frac{SX5E_i - SX5E_{i-1}}{SX5E_{i-1}}\right);11.7\%\right];0\% \right\}$$

**LEHMAN BROTHERS**

STRUCTURED PRODUCTS



Benclux TEAM     **EQUITY DERIVATIVES**

Where,

$SX5E_t$ : Closing level of the Underlying on Observation Date t

$SX5E_0$ : Closing level of the Underlying on Strike Date

Note: Each of the Performance $_t$ cannot be negative and cannot be greater than 11.7%.

| | |
|---|---|
| **Observation Dates** | Every year, starting 12 months after Option Strike Date and ending on the Option Expiration Date. |
| **Maximum Redemption Amount** | 217% of Principal Amount |
| **Minimum Redemption Amount** | 150% of Principal Amount |
| **Secondary Market** | Lehman Brothers will provide indicative bid/offer prices upon request |
| **Clearing** | Euroclear, Clearstream |
| **Business Days** | London, Target (Unadjusted, Following) |
| **Governing Law** | English (the Guarantee is governed by New York law) |
| **Security Identifiers** | [TBD] |
| **Calculation Agent** | Lehman Brothers International (Europe) |

Disclaimer

This term sheet is indicative only and is subject to change without notice. Information other than indicative terms (including market data and statistical information) has been obtained from various sources. We do not represent that it is complete or accurate. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters, is not comprehensive, is not intended to suggest that one outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. No assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Transactions of the sort described herein contain complex characteristics and risk factors. Transactions incorporating derivatives may create additional risks and exposures. Before entering into any transaction, you should consider the suitability of the transaction to your particular circumstances and independently review (with your professional advisors as necessary) the specific financial risks as well as the legal, regulatory, credit, tax and accounting consequences. Lehman Brothers does not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. References herein to "Lehman Bros" shall include Lehman Brothers International (Europe) and Lehman Brothers Europe Limited and their affiliates. Both Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are regulated by the Financial Services Authority.

**LEHMAN BROTHERS**                    **STRUCTURED PRODUCTS**

# **EXHIBIT B**

## UNANIMOUS WRITTEN CONSENT OF THE

## EXECUTIVE COMMITTEE OF THE

## BOARD OF DIRECTORS OF

## LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

**WHEREAS**, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

**WHEREAS**, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

**WHEREAS**, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

**WHEREAS**, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

**WHEREAS**, Management wishes to establish additional Guaranteed Subsidiaries,

**WHEREAS**, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

**WHEREAS**, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

**NOW THEREFORE BE IT,**

06-09-05   11:31   JDM INVESTMENTS                     ID=2023389294              P.02
                                                                         NO.290   084
JE. 05. 2005    29:11    LEHM. - 212227882294                            NO.524   082
   26/06/2005   16:41    LEHMN + 316457582653

**RESOLVED**, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

**RESOLVED**, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

**RESOLVED**, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

**RESOLVED**, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

**FURTHER RESOLVED**, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

Richard S. Fuld, Jr.

John D. Macomber

2

06-09-05   09:48              RECEIVED FROM:212 526 8339          P.04

### Schedule A
### to LBHI Unanimous Written Consent
### dated June 9 , 2005

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

3

**EXHIBIT C**

**C L I F F O R D**

**C H A N C E**

CLIFFORD CHANCE LLP

**EXECUTION COPY**

**LEHMAN BROTHERS HOLDINGS INC.**
**LEHMAN BROTHERS TREASURY CO. B.V.**
**LEHMAN BROTHERS BANKHAUS AG**

**U.S.\$100,000,000,000**
**EURO MEDIUM-TERM NOTE PROGRAM**

*Unconditionally and irrevocably guaranteed, as to Notes to be issued by*
*Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, by*

**LEHMAN BROTHERS HOLDINGS INC.**

---

**GUARANTEE AGREEMENT**

*in respect of*

**LEHMAN BROTHERS TREASURY CO. B.V.**

---

24 July 2008

## CONTENTS

**Clause**                                                                                          **Page**

1.   Definitions ...............................................................................................................................2

2.   Guarantee .................................................................................................................................3

3.   Status .......................................................................................................................................4

4.   Continuing Guarantee ..............................................................................................................5

5.   Reinstatement ...........................................................................................................................5

6.   Immediate Recourse .................................................................................................................5

7.   Covenants .................................................................................................................................5

8.   Deposit Of Guarantee ..............................................................................................................5

9.   Stamp Duties ............................................................................................................................5

10.  Partial Invalidity ......................................................................................................................6

11.  Notices .....................................................................................................................................6

12.  Governing Law .........................................................................................................................6

**THIS GUARANTEE AGREEMENT** is made as of 24 July 2008

**BY**

(1)    **LEHMAN BROTHERS HOLDINGS INC.** (the "**Guarantor**")

**IN FAVOUR OF**

(2)    **HOLDERS** (as defined below); and

(3)    **THE ACCOUNTHOLDERS** (as defined below);

**WHEREAS**

(A)    **LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY
CO. B.V.** and **LEHMAN BROTHERS BANKHAUS AG** (each an "**Issuer**" and
together the "**Issuers**") have established a Program (the "**Program**") for the issuance of
medium-term notes (the "**Notes**"). In connection with the Program the Issuers have
entered into an Amended and Restated Fiscal Agency Agreement dated 24 July 2008 (as
supplemented and amended from time to time, the "**Fiscal Agency Agreement**") with
the Bank of New York Mellon, acting through its London Branch, as Fiscal Agent, the
Bank of New York Mellon, acting through its New York Branch, as Registrar and the
other parties referred to therein. Notes in bearer form may be represented initially by (in
the case of Issuers other than Lehman Brothers Holdings Inc.) a permanent global Note
(the "**Permanent Global Note**") or by a temporary global Note (the "**Temporary
Global Note**") exchangeable in accordance with its terms for a Permanent Global Note
or, as the case may be, definitive notes in bearer form ("**Definitive Notes**") and/or
registered Notes ("**Registered Notes**") represented by definitive Notes in registered form
("**Definitive Registered Notes**"), global Notes in registered form ("**Global Registered
Notes**") or Notes in registered uncertified form. Permanent Global Notes are, in
accordance with their respective terms, exchangeable for Definitive Notes. Registered
Notes may be represented initially by Definitive Registered Notes and/or Global
Registered Notes. Global Registered Notes, are themselves exchangeable, in accordance
with their terms, for Definitive Registered Notes. References herein to "**Global Notes**"
shall be to Permanent Global Notes, Temporary Global Notes and Global Registered
Notes. A Global Note will be delivered to a depositary or a common depositary or a
common safekeeper or a custodian, as the case may be, for any one or more of the
Clearing Systems (as defined below) for credit to such securities clearing (or any other)
account or accounts with any Clearing System as may be determined by the terms and
conditions and operating procedures or management regulations of the relevant Clearing
System with its respective participants and/or accountholders. Notes denominated in
Australian dollars may be issued in the domestic Australian capital markets ("**Australian
Domestic Notes**") and Notes denominated in New Zealand dollars that may be cleared
through the Austraclear New Zealand System ("**New Zealand Domestic Notes**") may be
issued by Lehman Brothers Treasury Co. B.V. ("**LBTCBV**"), in each case pursuant to a
deed poll to be executed by LBTCBV (the "**Deed Poll**"), and such Australian Domestic
Notes and New Zealand Domestic Notes will be issued in registered, uncertificated and
dematerialised book-entry form and take the form of entries on a register to be

maintained by an Australian or New Zealand registrar, as applicable, to be appointed by LBTCBV.

(B)  The Guarantor has agreed to guarantee irrevocably the payment of principal and interest together with all other sums payable by LBTCBV under the Notes issued by LBTCBV (the "**Guaranteed Issuer**") and to guarantee irrevocably the performance by the Guaranteed Issuer of its obligations under the Deed of Covenant, dated 24 July 2008, by the Guaranteed Issuer in favour of the parties identified therein (as supplemented, amended or replaced from time to time, the "**Deed of Covenant**") and the performance by the Guaranteed Issuer of its obligations under the Deed Poll.

**NOW THIS GUARANTEE WITNESSES** as follows:

1.   **DEFINITIONS**

1.1  In this Guarantee the following words and expressions shall have the following meanings:

"**Accountholder**" shall bear the meaning ascribed thereto in the Deed of Covenant in respect of Guaranteed Notes;

"**Clearing System**" means each of Euroclear, Clearstream, Luxembourg, DTC and any other clearing system specified in the relevant Final Terms;

"**Conditions**" means the terms and conditions of the relevant Notes, as the same may be modified or supplemented in accordance with the terms thereof, and any reference to a numbered "**Condition**" is to the correspondingly numbered provision thereof;

"**DTC**" means The Depositary Trust Company;

"**Guaranteed Note**" shall mean a Note issued by the Guaranteed Issuer (including an Australian Domestic Note and a New Zealand Domestic Note) and shall include any related Coupon, Talon or Receipt;

"**Holder**" shall bear the meaning ascribed thereto in the Conditions, in respect of any Guaranteed Note;

"**Relevant Date**" means either (i) the date on which payment of the relevant Note first becomes due or (ii) if the full amount of the moneys payable has not been received by the Fiscal Agent (or any other paying agent in respect of the relevant Note) on or prior to such due date, the date on which all moneys then due for payment shall have been so received and notice to that effect shall have been duly given to the Holders or Accountholders; and

"**this Guarantee**" shall mean this Guarantee Agreement as amended or supplemented from time to time.

1.2  Headings used in this Guarantee are for each of reference only and shall not affect its construction.

1.3  Unless otherwise defined herein, terms defined in the Conditions have the same respective meanings when used in this Guarantee.

2.    **GUARANTEE**

2.1    The Guarantor hereby irrevocably and unconditionally guarantees to the Holders and the Accountholders the performance by the Guaranteed Issuer of all its obligations pursuant to the Conditions of the Notes including without limitation:

(a)    the due and punctual payment of each amount payable in respect of any Guaranteed Note, the Deed of Covenant and the Deed Poll as and when the same become due and payable; and

(b)    any obligation to deliver or procure the delivery of any securities pursuant to such Conditions,

so that the Guarantor shall, if the Guaranteed Issuer shall fail punctually to perform any such obligation forthwith perform or procure the performance of the obligation in accordance with the applicable Conditions upon written demand by such Holder or Accountholder including (without limitation) the due and punctual payment of any such amount in the manner and currency prescribed by such Guaranteed Note which the Guaranteed Issuer shall be liable to pay under and pursuant to such Guaranteed Note, the Deed of Covenant or the Deed Poll or the delivery of any securities pursuant to such Conditions and which the Guaranteed Issuer shall have failed to pay or deliver (as the case may be) at the time such demand is made.

2.2    This Guarantee is one of payment and not collection. The Guarantor acknowledges that its obligations hereunder are several and independent obligations of the Guaranteed Issuer and that the Guarantor shall be liable as sole principal debtor, with the consequence that such liability will not be discharged, impaired or otherwise affected by anything which would not so discharge, impair or otherwise affect its liability if it were a sole principal debtor, including without limitation:

(a)    any time, indulgence, waiver or consent at any time given to the Guaranteed Issuer or any other person;

(b)    any amendment to the Conditions in respect of the Guaranteed Notes, the Deed of Covenant or the Deed Poll or to any security or other guarantee or indemnity;

(c)    the making or absence of any demand on the Guaranteed Issuer or any other person;

(d)    the enforcement or absence of enforcement of any Guaranteed Notes, the Deed of Covenant or the Deed Poll or of any security or other guarantee or indemnity;

(e)    the release of any such security, guarantee or indemnity;

(f)    the dissolution, amalgamation, reconstruction or reorganisation of the Guaranteed Issuer or any other person;

(g)    the winding up of the Guaranteed Issuer or the bringing of any analogous proceeding in any jurisdiction or any change in its status, function, control or ownership; and

(h)     the illegality, invalidity, irregularity or unenforceability of, or any defect in, any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll or any of the Guaranteed Issuer's obligations in respect thereof.

2.3     As a separate and alternative stipulation, the Guarantor irrevocably agrees that any sum expressed to be payable by the Guaranteed Issuer under any Guaranteed Note, the Deed of Covenant or the Deed Poll which is for any reason (including, without limitation, by reason of any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll being or becoming void, unenforceable or otherwise invalid under any applicable law) (whether or not now known or becoming known to the Guaranteed Issuer, the Guarantor, the Holder(s), the Accountholder(s) or any other person) not recoverable from it on the basis of a guarantee, will nevertheless be recoverable from it as if it were the sole principal debtor and will be paid by it to the Holder(s) or the Accountholder(s) on written demand. This indemnity constitutes a separate and independent obligation from the other obligations in this Guarantee, gives rise to a separate and independent cause of action and will apply irrespective of any indulgence granted by the Holder(s), the Accountholder(s) or any other person.

3.      **STATUS**

3.1     The claims of the Holders and Accountholders against the Guarantor in respect of senior Guaranteed Notes will constitute direct, unconditional and (subject to the provisions of Condition 11 (*Negative Pledge with respect to Senior Notes*) and the provisions of the Fiscal Agency Agreement) unsecured obligations of the Guarantor and rank *pari passu* in right of payment among the Guarantee, prior to the equity securities of the Guarantor and equally with all other unsecured and unsubordinated debt obligations of the Guarantor (subject, in the event of insolvency, to laws affecting creditors' rights generally).

3.2     The claims of the Holders and the Accountholders against the Guarantor in respect of subordinated Guaranteed Notes constitute direct, unsecured and subordinated obligations of the Guarantor and rank *pari passu* among themselves and *pari passu* will all other present and future unsecured, unconditional and subordinated indebtedness of the Guarantor and will be subordinated, in the event of the winding-up of the Guarantor, to the claims of its Senior Creditors. Amounts payable under the Guarantee shall be due and payable by the Guarantor in such winding-up only if and to the extent that all claims against the Guarantor by its Senior Creditors have been paid in full.

3.3     Subject to applicable law, no Holder or Accountholder may be granted any security by the Guarantor or any third party or claim any right of set-off in respect of any amount owed to it by the Guarantor under this Guarantee in connection with subordinated Guaranteed Notes and each Holder or relevant Accountholder shall be deemed to have waived all such rights.

3.4     Subsequent agreements which limit the subordination effected pursuant to Clause 3.2 or which accelerate payments under this Guarantee in respect of subordinated Guaranteed Notes are not permitted by law. Should payments be effected in respect of subordinated Guaranteed Notes by the Guarantor before the maturity date without legal  preconditions

being fulfilled, the amount paid shall be refunded to the Guarantor notwithstanding any agreement to the contrary.

4.    **CONTINUING GUARANTEE**

This Guarantee is a continuing guarantee and shall extend to the ultimate balance of all the obligations of the Guaranteed Issuer under any Guaranteed Note notwithstanding any settlement of account or other matter or thing whatsoever. It shall remain in full force and effect until all such obligations have been irrevocably paid and satisfied in full. Furthermore, such obligations are additional to, and not in substitution for, any security or other guarantee or indemnity at any time existing in favour of any person.

5.    **REINSTATEMENT**

If any payment received by a Holder or Accountholder shall, on the subsequent bankruptcy, insolvency, corporate reorganisation or other similar event of the Guaranteed Issuer, be avoided or set aside under any laws relating to such events, such payment shall not be considered as discharging or diminishing the liability of the Guarantor and this Guarantee shall continue to apply as if such payment had at all times remained owing by the Guaranteed Issuer, provided that the obligations of the Guaranteed Issuer and/or the Guarantor under this Clause 5 shall, as regards each payment made to the Holder or Accountholder which is avoided or set aside, be contingent upon such payment being reimbursed to the Guaranteed Issuer or other persons entitled through the Guaranteed Issuer.

6.    **IMMEDIATE RECOURSE**

The Guarantor waives any right it may have of first requiring a Holder or Accountholder to proceed against or enforce any other rights or security against the Guaranteed Issuer or any other person before claiming from the Guarantor hereunder.

7.    **COVENANTS**

The Guarantor covenants in favour of the Holders and the Accountholders that it will duly perform and comply with the obligations expressed to be undertaken by it in the Conditions.

8.    **DEPOSIT OF GUARANTEE**

This Guarantee shall be deposited with and held by the Fiscal Agent until all obligations of the Guaranteed Issuer and/or in respect of the Guaranteed Notes have been discharged in full.    The Guarantor hereby acknowledges the right of every Holder and Accountholder to the production of this Guarantee.

9.    **STAMP DUTIES**

The Guarantor shall pay all stamp, registration and other taxes and duties (including any interest and penalties thereon or in connection therewith) which may be payable upon or in connection with the execution and delivery of this Guarantee, and shall indemnify each Holder and Accountholder against any claim, demand, action, liability, damages, cost, loss or expense (including, without limitation, reasonably legal fees and any

applicable value added tax) which it incurs as a result of or arising out of or in relation to any failure of the Guarantor to pay or delay in paying any of the same.

10. **PARTIAL INVALIDITY**

If at any time any provisions hereof is or becomes illegal, invalid or unenforceable in any respect under the laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions hereof nor the legality, validity or enforceability of such provision under the laws of any other jurisdiction shall in any way be affected or impaired thereby.

11. **NOTICES**

All notices, demands or other communications by any Holder or Accountholder upon the Guarantor shall be duly served upon the Guarantor if served on the Guarantor by letter at 745 Seventh Avenue, New York, New York 10019.

12. **GOVERNING LAW**

This Guarantee shall be governed by, and construed in accordance with, the law of the State of New York.

**IN WITNESS** whereof the Guarantor has executed this Guarantee the day and year first above written.

**EXECUTED**                                          )
by **LEHMAN BROTHERS HOLDINGS INC.**    )
acting by                                             )
                                                PAOLO TONUCCI

H
A
N
D

D
E
L
I
V
E
R
Y

_____
RECEIVED BY:

____10/30/09____
DATE

____252____
TIME