Hearing Date and Time: November 16, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: November 9, 2011 at 4:00 p.m. (Prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re

LEHMAN BROTHERS HOLDING INC., *et al.*,

                                Debtors.

-----------------------------------------------------------------X

In re

LEHMAN BROTHERS INC.,

                                Debtor.

-----------------------------------------------------------------X

Chapter 11 Case No.
08-13555 (JMP)
(Jointly Administered)

Case No.
08-04120 (JMP) (SIPA)

## SECRETARY OF LABOR'S LIMITED OBJECTION TO THE MOTION OF LEHMAN BROTHERS HOLDING INC. AND JAMES W. GIDDENS, THE SIPA TRUSTEE FOR THE LIQUIDATION OF LEHMAN BROTHERS INC., FOR AUTHORIZATION AND APPROVAL OF A STOCK PURCHASE AGREEMENT REGARDING THE VEBA

The Secretary (the "Secretary") of the United States Department of Labor (the "DOL") submits the following brief in support of her limited objection to the motion (the "Motion") dated October 21, 2011 by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (the "Debtors") and James W. Giddens (the "SIPA Trustee"), Trustee for the SIPA Liquidation of Lehman Brothers Inc. ("LBI"), for the approval of a Stock Purchase Agreement for the sale of 100% of the stock of Aceso by the SIPA Trustee to LBHI (the "Sale") including a settlement and release of all claims relating to the VEBA.[1]

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

1. The Secretary has no objection to the limited relief which is explicitly being sought -- the sale of the stock of Aceso, a wholly owned subsidiary of LBI, to LBHI and a mutual release of claims owned by the estates.

2. The Motion, however, includes a description of many actions to be undertaken by LBHI after the sale that may be in violation of the Employee Retirement Income Security Act of 1974, et. seq., 29 U.S.C. 1001 et. seq. ("ERISA").  Although the movants do not explicitly seek court approval of a release of ERISA claims or approval of these later actions, the Secretary files this limited objection to avoid any inference that she assents to such broader relief which would implicate ERISA.

## BACKGROUND

3. Upon information and belief, Aceso and the VEBA were established immediately prior to the commencement of the Debtors' Chapter 11 cases and the LBI SIPA Proceeding to fund benefits provided under the Group Benefits Plan sponsored by LBHI Motion at ¶ 1.

4. The VEBA reportedly was funded with $95 million from a pre-petition transfer of funds from LBHI to LBI, which was then passed down to newly formed Aceso, a non-debtor and wholly owned subsidiary of LBI, and thereafter to the VEBA. Id.

5. As described in the Motion, the VEBA's funds may be used solely to pay medical premiums and other benefits permitted under section 501(c)(9) of the Internal Revenue Code, 26 U.S.C. § 501(c)(9).  Motion at ¶¶ 14-15.  The trust agreement which governs the VEBA explicitly states that there will be "No Reversion to the Employer." Lehman Health Care Trust (the "Trust Agreement") at §2.4.  The Trust Agreement further bars any amendment to the agreement which would "permit any portion of the Trust Fund to revert to" Aceso.  Trust Agreement at § 12.2.

6. After the sale to Barclays, LBI reportedly had no more employees; thus, the participants in the Group Benefits Plan, upon information and belief, were limited to current LBHI employees, LBHI employees on long term disability and LBHI and LBI retirees (collectively, the "Lehman Retirees").

7. Due to its responsibilities under ERISA, the DOL originally became involved in the VEBA controversy after it was advised that the SIPA Trustee had barred the VEBA from paying the costs of the Group Benefits Plan and would seek to use the VEBA money for the benefit of the LBI estate as a whole.

8. The DOL advised the SIPA Trustee of its opposition to his intention to use VEBA funds for other than their intended and statutorily required purpose, which was limited to "the payment of benefits permitted by section 501(c)(9) of the [Internal Revenue] Code." Trust Agreement at § 2.4. A copy of the Trust Agreement is annexed as Exhibit B to the Motion.

9. The DOL also advised LBHI that any modification of benefits to Lehman Retirees would require this Court's approval pursuant to section 1114(e) of the Bankruptcy Code.[2]

10. As a result, the SIPA Trustee altered his policy of seeking to use the funds in the VEBA for other purposes.

11. LBHI then decided that it would continue to provide health benefits to the Lehman Retirees by using the VEBA to fund an equivalent but separate Aetna Policy. In addition, LBHI decided that, while it would terminate the employment of its long term disabled employees, it would continue to have their COBRA premiums paid in full by the VEBA.

---

[2]   Section 1114(e) states in pertinent part: " (e)(1) Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that –

    (A)  the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section…

11 U.S.C. § 1114(e).

3

12. The DOL did not actively oppose the use of the Aetna Policy to provide benefits to retirees, inasmuch as the DOL was advised that the benefits funded by the Policy were equivalent to those provided under the Group Benefits Plan and the VEBA would continue to pay the premiums. However, the statement in the Motion that "[t]he Aetna Policy was implemented in consultation with the U.S. Department of Labor," suggests a degree of involvement by the DOL that did not exist.

## LIMITED OBJECTION

13. If the Motion's imperfections were limited to the above described faulty description of the DOL's role in the creation of the Aetna Policy, the DOL likely would not be filing any response to the Motion, as the DOL has no objection to the simple transfer of the Aceso shares to LBHI.

14. Unfortunately, however, LBHI suggests in its Motion that it intends to undertake a future course of action which may violate ERISA, and at the very least, leaves many important questions unanswered.

ERISA Issues

15. The Motion states in pertinent part:

> LBHI expressed, <u>as a condition of its acceptance of the transfer of the VEBA</u>, that it intended to recover from the VEBA amounts it paid under the Group Benefits Plan, including amounts paid during negotiations while premiums were being paid by the VEBA on behalf of retirees and former employees on long term disability. … The reimbursement is subject to authorization from the DOL, which LBHI will request. The amount for which reimbursement is being sought by LBHI will be set aside in the VEBA and will not in any case be available for payment of premiums on behalf of retirees and former employees on long term disability.

Motion at ¶¶ 4 and 21 (emphasis added).

4

16. LBHI states that it will be seeking reimbursement from the VEBA of $25 million (the "Reimbursement"), approximately two-thirds of the VEBA's existing $37 million in assets. It also states that $25 million of the VEBA's assets will be segregated.

17. A central tenet in the operation of ERISA and a VEBA is that a VEBA's funds are under the control of a trustee, not the plan sponsor. See 29 U.S.C. § 1103(a) ("[A]ll assets of an employee benefit plan shall be held in trust by one or more trustees.").[3] LBHI is the plan sponsor and is not the trustee of the VEBA.

18. The Trust Agreement explicitly defines the "Trust Fund" as "all assets held by the Trustees in the Trust" and gives the Trustees the power "[to] settle …any claims, debts or damages due or owing to or from the Trust." Trust Agreement at 5 and 21.

19. Despite the VEBA trustee's central role over the ERISA-covered assets, it appears that LBHI has not even served a copy of this Motion on the VEBA trustee.

20. Similarly problematic is the Motion's discussion of LBHI's intention to obtain an exemption from the DOL to allow for the Reimbursement.

21. LBHI does not tell the Court what it will attempt to do with the VEBA's assets if the DOL does not grant its exemption application.

22. Without an exemption from the DOL, the Reimbursement would be an unlawful prohibited transaction under section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D), as it would constitute a transfer of ERISA plan assets to a party-in-interest, the ERISA plan sponsor. In addition, without an exemption, the transaction would violate ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), to the extent that LBHI deals with plan assets in its own interest and for its own account and ERISA § 403(c), 29 U.S.C. § 1103(c), as an unlawful reversion to the employer. A

---

[3] As ERISA trust funds also are not property of a bankruptcy estate, Patterson v. Shumate, 504 U.S. 753 (1992), this Court similarly has no jurisdiction over the VEBA's funds.

5

violation of section 406 may arise even where the prohibited transaction is fair and results in no harm. Cutaiar v. Marshall, 590 F.2d 523, 528, 530 (3d Cir. 1979). A violation of section 406 may be avoided by the granting of an exemption by the DOL under section 408(a) of ERISA.

23. Under section 408(a) of ERISA:

The Secretary may not grant an exemption …unless he finds that such exemption is--
    (1) administratively feasible,
    (2) in the interests of the plan and of its participants and beneficiaries, and
    (3) protective of the rights of participants and beneficiaries of such plan.

29 U.S.C § 1108(a).

24. Without benefit of an actual exemption -- or LBHI's submission of any evidence that the VEBA or its fiduciaries ever made any commitment to transfer the assets LBHI now seeks -- it is unclear whether LBHI will be able to satisfy the conditions for an exemption. What is clear is that LBHI has failed in the Motion and refused in a telephone conversation with the attorneys for the Secretary to describe what it will do if its exemption request is denied. For the reasons set forth above, however, ERISA flatly prohibits LBHI or the VEBA's trustee from transferring $25 million of VEBA assets to LBHI without an exemption.

25. The Secretary has no objection to the bare sale of the stock; the Secretary does object, however, to any inference, implication, or argument that this Court's approval of the Motion in any way constitutes approval of the proposed actions with respect to the VEBA, or of the transfer of money from the VEBA to parties in interest without an exemption from ERISA's prohibited transaction rules. Section 363 of the Bankruptcy Code should not be used to foster a transaction which would ultimately result in the violation of the law. See In re E.J. Marion, Inc., 199 B.R. 635 (Bankr. S.D. Tex. 1996) (assignment of debtor's legal malpractice claim denied as violative of public policy); In re White Crane Trading Co., 170 B.R. 694 (Bankr. E.D. Cal.

6

1994) (order authorizing retail liquidation sale revoked to avoid violation of state consumer protection laws).

26. The questionable nature of the past and future contemplated actions taken with respect to the VEBA make it imperative that the broad and only briefly discussed releases for which the Motion seeks this Court's approval exclude any causes of action under ERISA and do not constitute the release of any violations of section 1114 of the Bankruptcy Code.

27. While it may be appropriate to provide for a mutual release of claims owned by the LBHI or LBI estates, there should be no suggestion that the Stock Purchase Agreement releases claims which should be asserted as ERISA fiduciaries, whose fiduciary status arises from their connection with the LBHI or LBI estates. Such a release of ERISA claims would violate section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1).

Section 1114 of the Bankruptcy Code Concerns

28. Sections 1114 (e)(f)(g) bar the modification of retiree benefits without engaging in a mandated negotiation process, and obtaining an order of the Court. It is the position of LBHI that such Court approval is not required, because "LBHI retained the right to terminate retiree coverage under the Group Benefits Plan at any time without cause." Motion at 11, n.3.

29. While the debtors in In re Delphi Corp, 2009 WL 637315, *1 (Bankr. S.D.N.Y. 2009) and In re Visteon Corp., 612 F.3d 210, 213 (3d Cir. 2010) also believed that such court approval was not necessary; they sought bankruptcy court permission for their proposed reduction/elimination of retiree benefits. It appears that no such permission was or will be sought by LBHI.

30. This determination by LBHI to avoid scrutiny of its plan to eliminate retiree benefits, avoids a further critical question that should not be ignored. Even if section 1114(e) does not

apply to a change in benefits to the retiree group as a whole, it would be applicable to those retirees whose rights to medical coverage had vested. Such vesting would occur, if at some time during the period in which a retiree was employed, the Group Benefits Plan (or a predecessor plan) had promised retirees lifetime medical benefits without reserving the company's right to revoke the benefits. Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 84-85 (2d Cir. 2001), cert. denied sub nom., Empire Blue Cross and Blue Shield v. Byrnes, 537 U.S. 1170 (2003). Upon information and belief, the rights to medical benefits of at least certain of the Lehman Retirees have vested.

31. Even in Delphi, the case relied upon by the movants for the proposition that section 1114 is inapplicable; the court ruled that section 1114(e) would have to be satisfied before vested medical benefits could be modified by the debtor. Delphi, 2009 WL at *7.

32. The court in Delphi ordered the appointment of a retiree committee under section 1114 (d) to determine whether the rights of any retiree to medical benefits had vested. Id. at *8. The failure of the movants to even take note of this issue is reflective of the Motion's inadequacies and lack of clarity.

33. The lack of clarity and possible overbreadth of the Motion is exacerbated by the language in the proposed order (the "Proposed Order") included with the Motion. For example, rather than being limited to approval of the Stock Purchase Agreement, the first decretal paragraph of the Proposed Order states that "the Motion is granted in all respects." Proposed Order at 3.

34. Similarly, the next to last decretal paragraph states that it is "the intent of the Court that the implementation of the transactions contemplated in the Stock Purchase Agreement be approved in its entirety." Proposed Order at 4. In light of the numerous transactions described in

8

the Motion, and the Motion's express request only for approval of the Stock Purchase Agreement, this lack of clarity only promotes further disputes. [4]

35. The Secretary has no objection to the Sale, but she does object to the lack of any clear definition of the further relief being sought, including any potential release or limitation of liability under ERISA.

WHEREFORE, it is respectfully requested that the Motion be denied until the movants clarify the relief they are seeking.

Dated: November 9, 2011
Washington, D.C.

Respectfully submitted,

HILDA L. SOLIS, Secretary of the
U. S. Department of Labor

By her attorneys:

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

LESLIE C. PERLMAN
Counsel for General Litigation

/s/ Leonard H. Gerson

LEONARD H. GERSON
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
Telephone: (202) 693-5615
Facsimile: (202) 693-5610
Gerson.leonard@dol.gov

---

[4] For example, as described above, the Motion states that the proposed Reimbursement is "a condition of its acceptance of the transfer of the VEBA." Motion at ¶ 4.

9