**Hearing Date and Time: December 6, 2011, at 10:00a.m. (Eastern Time)**
**Objection Deadline: November 9, 2011, at 4:00p.m. (Eastern Time)**
**(Objection Deadline Extended by Agreement to November 9, 2011)**

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Andrew P. Brozman
Sara M. Tapinekis

*Counsel to Crédit Agricole Corporate and Investment Bank*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                           :
                                                                : Chapter 11
LEHMAN BROTHERS HOLDINGS INC., *et al*.,                        :
                                                                : Case No. 08-13555 (JMP)
Debtors.                                                        :
                                                                : (Jointly Administered)
---------------------------------------------------------------x

**LIMITED OBJECTION OF CRÉDIT AGRICOLE**
**CORPORATE AND INVESTMENT BANK**
**TO CONFIRMATION OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Crédit Agricole Corporate and Investment Bank, *f/k/a* Calyon ("CACIB"), by and through its undersigned counsel, respectfully submits this limited objection (the "Objection") to confirmation of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011 (the "Liquidating Plan"). In support of its Objection, CACIB respectfully states as follows.

**PRELIMINARY STATEMENT**

The Liquidating Plan purports to afford the Debtors certain relief that is either barred by, or unavailable to them under, specific and unambiguous provisions of title 11 of the United States Code, as amended (the "Bankruptcy Code"):

- *Illegal Discharge Under Section 1141(d)(3)*  Section 13.4 of the Liquidating Plan would effect a discharge of Claims[1] against each Debtor in violation of section 1141(d)(3) of the Bankruptcy Code.  As the Debtors, in fact, are liquidating "all or substantially all of the property of the[ir] estate[s]," *and* will not be engaging in business after consummation of the Liquidating Plan *and* would not receive a discharge under section 727(a), there exists no legal predicate to support a discharge.

- *No Entitlement to Discharge Injunction Under Section 524*  Inasmuch as there is no entitlement to a discharge for any Debtor, it follows as a matter of statute that the Debtors have no entitlement to an injunction under section 524(a) of the Bankruptcy Code which, by its terms, is animated only upon a discharge.  Accordingly, section 13.4 of the Liquidating Plan is improper.

- *Claims Cannot Be Deemed "Satisfied in Full" Through a Liquidating Plan*  Section 8.13 of the Liquidating Plan purports to deem all partially paid Allowed Claims to be "satisfied."  The provision is a *de facto* discharge provision which would seek to bar the pursuit and effect an extinguishment of Claims in violation of section 1141(d)(3).

- *Improper Injunction Against "Extinguished" Claims*  Section 13.5 of the Liquidating Plan purports to enjoin the pursuit against "Released Parties" (which include the Debtors) of "any Claims and Causes of Action which are extinguished or released pursuant to the [Liquidating] Plan."  Although the release provisions of section 13.3 carefully exclude from the scope of the release pre-Commencement Date acts or omissions, the putative discharge granted by section 13.4 would "extinguish" the Claims of, and thereby subject to a permanent injunction, the "holder . . . of a Claim against . . . a Debtor."  Because the Debtors have no right to "extinguish" Claims under section 1141(d)(3), this provision is not enforceable under the Bankruptcy Code.

- *Invalid Abrogation of Setoff Rights*  For the same reason, section 13.5 also is improper under section 1141(d)(3) in its specific effort to extinguish rights of a Claim holder to "assert[ ] any right of setoff, directly or indirectly, against any obligation due the Released Parties [which include the Debtors]."

- *Failure to Comply With Title 11*  Each of these provisions purport to arrogate to the Debtors rights the Bankruptcy Code specifically denies them and, as a result, foils confirmation of the Liquidating Plan for its failure to satisfy section 1129(a)(1) of the Bankruptcy Code.

---

[1] Capitalized terms used but not defined herein shall have the meaning given to them in the Liquidating Plan and Disclosure Statement (defined in paragraph 11 below).

- *A Fortiori Failure to Satisfy the "Best Interests" Test* Because the Liquidating Plan purports to subtract rights and protections afforded creditors under chapter 11, by definition, a chapter 7 liquidation – where creditors would retain those rights and be free from the extinguishment of, and injunction against, their Claims – would permit Creditors to retain value apart from that conferred by the Liquidating Plan. This disparity in value violates the provisions of section 1129(a)(7) of the Bankruptcy Code.

## BACKGROUND FACTS

1. On September 15, 2008 and at various dates thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates, including, but not limited to, Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commodity Services Inc. ("LBCS") and Lehman Brothers Commercial Corporation ("LBCC" and together with LBHI, LBSF, LBCS and their affiliated chapter 11 debtors, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. On September 15, 2008, Lehman Brothers International (Europe) ("LBIE") entered administration in the United Kingdom (the "LBIE Administration").

3. On September 19, 2008 (the "Commencement Date"), a proceeding was commenced on behalf of Lehman Brothers Inc. ("LBI") by the Securities Investor Protection Corporation under the provisions of the Securities Investor Protection Act of 1970, as amended ("SIPA"), in the case captioned Securities Investor Protection Corp. v. Lehman Bros. Inc., No. 08-civ-8119 (GEL) (S.D.N.Y. Sept. 19, 2008).

4. On the Commencement Date, the Order Commencing Liquidation was entered in the United States District Court for the Southern District of New York (the "LBI Liquidation Order"). The LBI Liquidation Order provided for, among other things, (i) the appointment of James W. Giddens as Trustee and (ii) the removal of the case to the Bankruptcy Court (the

"SIPA Proceeding").

5. On October 3, 2008, Lehman Brothers Finance AG *a/k/a* Lehman Brothers Finance SA ("LBF") also filed a petition for relief under chapter 11 of the Bankruptcy Code. LBF is a debtor in a proceeding pending before, and under the supervision of, the Swiss Federal Banking Commission (the "LBF Proceeding") and therefore on March 12, 2009, the chapter 11 case of LBF was dismissed and a case under chapter 15 of the Bankruptcy Code was commenced on behalf of LBF.

6. CACIB is a commercial and investment bank domiciled in France that conducts business in the United States, among other places, through a branch office.

7. Prior to the commencement of the bankruptcy cases by or on behalf of the Debtors, the LBIE Administration, the SIPA Proceeding, and the LBF Proceeding, CACIB entered into derivative contracts with LBI, LBIE, LBF, LBCS, LBSF and LBCC. The obligations of the Lehman counterparties under these agreements (with the exception of the agreement with LBI) were guaranteed by LBHI.

8. CACIB timely submitted proofs of claim against LBHI, LBSF, LBCS and LBCC in the Debtors' chapter 11 cases and timely submitted claims against LBI,[2] LBIE and LBF in each of their respective insolvency proceedings.

9. Among these claims, CACIB holds a liquidated and non-contingent LBSF Class 4A Claim in the approximate amount of $191.8 million (the "LBSF Claim") and a LBHI Class 9A Claim in the approximate amount of $253,605,004 (the "LBHI Claim" and together with the

---

[2] On June 7, 2011, the Bankruptcy Court entered the Stipulation and Order in Connection with the Final Closeout and Resolution of Transactions and Claims Between Lehman Brothers Inc. and Crédit Agricole Corporate and Investment Bank and Crédit Agricole Securities (USA) Inc. ("CA Securities") resolving all claims between LBI and CACIB and between LBI and CA Securities.

- 4 -

LBSF Claim, the "CACIB Claims").[3]

10. On September 9, 2011, the Debtors filed an omnibus claims objection seeking to recharacterize a number of claims, including CACIB's derivative claims against LBCS and LBSF, as unsecured. See Debtors' One Hundred and Eighty Sixth Omnibus Objection to Claims (Misclassified Claims), dated Sept. 9, 2011 [Docket No. 19816] (the "186th Omnibus Objection"). On October 28, 2011, this Court entered the Order Granting Debtors' One Hundred Eighty Sixth Omnibus Objection to Claims (Misclassified Claims) [Docket No. 21371]. The Debtors have not otherwise asserted a formal objection to CACIB's claims in the chapter 11 cases.

11. On September 1, 2011, the Debtors filed the Liquidating Plan [Docket No. 19627] and the Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, dated August 31, 2011 [Docket No. 19629] (the "Disclosure Statement" or "DS").

12. On the same day, this Court entered the Amended Order (I) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan [Docket No. 19631].

13. On October 25, 2011, the Debtors filed the Plan Supplement, dated October 25, 2011 [Docket No. 21254] (the "Plan Supplement"). On November 4, 2011, the Debtors filed the Amendment No. 1 to the Plan Supplement [Docket No. 21665].

---

[3] CACIB refers to the proofs of claims filed for each of the CACIB Claims for a full description of these claims.

## OBJECTIONS

*A.    The Liquidating Plan in not confirmable under Bankruptcy Code section 1129(a)(1) because the Liquidating Plan provisions granting the Debtors a discharge and related injunctive relief violate sections 1141(d)(3) and 524 of the Bankruptcy Code.*

14.    Sections 8.13(a), 13.4 and 13.5 of the Liquidating Plan provide for the discharge of the Debtors and related relief in violation of sections 1141(d)(3) and 524 of the Bankruptcy Code.

15.    Section 1129(a)(1) of the Bankruptcy Code provides that the court shall confirm a plan only if the plan complies with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).

16.    Under Bankruptcy Code section 1141(d)(3), "[t]he confirmation of a plan does not discharge a debtor if (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of [the Bankruptcy Code] if the case were a case under chapter 7."  11 U.S.C. § 1141(d)(3).

17.    Bankruptcy Code section 727(a) provides for a discharge under chapter 7 and explicitly prohibits a discharge if the debtor is not an individual.  11 U.S.C. § 727(a) ("The court shall grant the debtor a discharge, unless … the debtor is not an individual.").

18.    The Liquidating Plan provides for the liquidation of the Debtors.  See, e.g. DS, at p. 2 ("Under the Plan, Distributions to holders of Allowed Claims will be funded substantially by the orderly liquidation of the Debtors' assets."); Liquidating Plan, at § 7.6 ("After the Effective Date, pursuant to the Plan, the Plan Administrator shall wind-down, sell and otherwise liquidate assets of the Debtors and/or Debtor-Controlled Entities in accordance with section 6.1(b)(iii) of the Plan.  The wind-down, sale and liquidation of each such Debtor's assets (as determined for

federal income tax purposes) shall occur over a period of three years after the Effective Date …"); Liquidating Plan, at § 6.1(b)(iii) (authorizing the Plan Administrator to "direct and control the wind down, liquidation, sale and/or abandoning of the assets of the Debtors"); Liquidating Plan, at § 7.4(a) (referring to the liquidation of the Debtors).

19. Neither the Liquidating Plan nor the Disclosure Statement provides that the Debtors will engage in business after the Liquidating Plan is consummated.  At best, the Debtors seem to contend that they might engage in a side-business after the consummation of the Liquidating Plan through LAMCO which, according to the Disclosure Statement, "subject to certain restrictions and approvals, *may* provide services to third parties." DS, at p. 56 (emphasis added).  However, this argument must fail for a number of reasons.  First, LAMCO is not a debtor.  It is a non-debtor subsidiary created after the petition date "by necessity" to manage certain of the Debtors' assets.  See id.   LAMCO is no more an ongoing business for purposes of section 1141(d)(3) than is a post-effective date litigation trust.  The "business" of each involves no more than the monetization of assets for purposes of a liquidation distribution to creditors.  Even if LAMCO were considered to be a debtor, which it is not, the Debtors have not identified any business plan for LAMCO or any potential third parties with which LAMCO might conduct "business" after consummation of the Liquidating Plan.  Nor have the Debtors identified any attempts made by LAMCO since its inception to solicit business from potential non-Debtor clients.

20. The Debtors have not cited any case law suggesting the mere possibility a non-debtor subsidiary created as a liquidation vehicle – bereft of a business plan or any identifiable clients – *might* engage in business is sufficient to overcome the "engag[ing] in business" provision of Bankruptcy Code section 1141(d)(3).

21. Because the Liquidating Plan meets squarely the plain language of the statute precluding a discharge, the Liquidating Plan runs afoul of the Bankruptcy Code and may not be confirmed with the inclusion of the discharge provided in section 13.4 of the Liquidating Plan.

22. Although section 13.4 provides that the Debtors will receive a discharge "to the fullest extent permitted by section 1141 of the Bankruptcy Code," the Debtors are not entitled to a discharge *to any extent*. Since section 1141(d)(3) is unambiguous, this Court is obliged to enforce it as written. See Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'") (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); see also In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329, 339 (2d Cir. 2011) (The court based its determination on the statute's plain language and declined to address arguments regarding legislative history).

23. Similarly, section 8.13(a) of the Liquidating Plan provides that "[a]n (i) Allowed Claim that receives Distributions … in the Allowed amount of such Claim or (ii) Allowed Guarantee Claim that receives Distributions … that combined with Distributions or other consideration provided on the corresponding Primary Claim … shall, in each case, *be deemed satisfied in full as to such Allowed Claim or Allowed Guarantee Claim against the applicable Debtor*." Liquidating Plan, at § 8.13(a) (emphasis added). For creditors with respect to which the Liquidating Plan does not provide for payment in full on Allowed Claims, this provision effects a discharge in violation of section 1141(d)(3) of the Bankruptcy Code and thereby renders the Liquidating Plan unconfirmable under Bankruptcy Code section 1129(a)(1).

24. In addition, because the Debtors are not entitled to a discharge under section 1141(d)(3) of the Bankruptcy Code, they are not entitled to a discharge injunction under section 524 of the Bankruptcy Code.

25. Section 524(a) of the Bankruptcy Code provides that a discharge in a case under the Bankruptcy Code operates as an injunction against various actions with respect to the Debtor. 11 U.S.C. § 524(a). However, under the plain language of the statute, absent a discharge, the injunctive relief set forth in section 524(a) is not available. 11 U.S.C. § 524(a); see also, In re Bigler LP, 442 B.R. 537, 541 n.3 (Bankr. S.D. Tex. 2010) ("…such a discharge or injunction is only available to Chapter 11 debtors under a plan of rehabilitation. Under a liquidating plan, such as the Plan in the case at bar, a debtor will not be entitled to a discharge or an injunction, pursuant to 11 U.S.C. § 1141(d)(3)."). The Debtors have not identified any alternative legal basis for the injunction contained in section 13.5 of the Liquidating Plan.

26. Section 13.5 of the Liquidating Plan provides, *inter alia*, that "all entities who have held, hold or may hold Claims against … any or all of the Debtors and other parties in interest … are permanently enjoined, on or after the Effective Date, solely with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Liquidating Plan from (i) commencing, conducting, or continuing in any manner … any suit, action, or other proceeding of any kind … against or affecting the Released Parties [or their property]" and "asserting any right of setoff .. against any obligation due the Released Parties or [their property]." Liquidating Plan, at §13.5.

27. Because section 13.5 of the Liquidating Plan effectuates a discharge that is unavailable under section 1141(d)(3) and an injunction not sanctioned by section 524(a) of the

Bankruptcy Code, the Liquidating Plan is unconfirmable under Bankruptcy Code section 1129(a)(1).

28.     Each of these failings in the Liquidating Plan has the additional effect of depriving a claimant holding an Allowed Claim of what it would retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Were the Debtors' cases ones under chapter 7, creditors holding Allowed Claims that were not paid in full would be free under the Bankruptcy Code from the restrictions of a discharge, a discharge injunction, an "extinguishment" of its claims, a loss of setoff rights, and from a plan injunction, all of which the Liquidating Plan would seek to strip away from those creditors in cases under chapter 11.

29.     Section 1129(a)(7) requires that a dissenting holder of a Claim in an accepting class must "receive *or retain*" value that is not less than the value it would receive or retain were the debtor liquidated under chapter 7. 11 U.S.C. § 1129(a)(7) (emphasis added). This so-called "best interests of creditors" test is meant to ensure that a creditor cannot be deprived under a chapter 11 plan of value it would "receive or retain" in a chapter 7 case, notwithstanding the force with which its fellow classmates elect the plan's treatment of their claims. See In re Quigley Co., 437 B.R. 102, 144 (Bankr. S.D.N.Y. 2010); In re Drexel Burnham Lambert Grp., Inc., 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). By arrogating the power to discharge, extinguish and enjoin claimants from the pursuit of their unpaid Claims, the Liquidating Plan oversteps the boundaries of the plain terms of various provisions of the Bankruptcy Code, the effect of which is to cause the Liquidating Plan to fail the best interests test of section 1129(a)(7).

**B.**     ***The Liquidating Plan is not confirmable under section 1129(a)(1) of the Bankruptcy Code to the extent it grants rights to the Plan Administrator to estimate claims beyond that which is permitted under section 502(c) of the Bankruptcy Code.***

30.     Section 9.3 of the Liquidating Plan authorizes the Plan Administrator to, "at any time request on behalf of any Debtor that the Bankruptcy Court estimate any contingent, unliquidated, *or Disputed Claim*, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, regardless of whether such Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection" and provides that the amount so estimated may constitute the Allowed amount of such Claim, a maximum limitation on such Claim, and/or the amount to be reserved in respect of such claim.  Liquidating Plan, at § 9.3 (emphasis added).

31.     Notwithstanding the limiting language contained in section 9.3 of the Liquidating Plan (*i.e.* "to the extent permitted by the Bankruptcy Code and Bankruptcy Rules") the plain language of the provision makes clear that the Debtors seek to rely on this provision to request an estimation of claims beyond that which is permitted under section 502(c) because they authorize the Plan Administrator to move to estimate claims that are neither contingent nor unliquidated; simply "Disputed."  The estimation of claims in the manner proposed by section 9.3 of the Liquidating Plan, as discussed above, is not permitted *to any extent*.  Section 502(c) is clear on its face and courts in this District have a duty to enforce statutes as written.  See Lamie v. United States Trustee, 540 U.S. at 534 ("It is well established that 'when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.'") (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)).

32.     Bankruptcy Code section 502(c)(1) provides that "[t]here shall be estimated for

purpose of allowance under this section … any *contingent or unliquidated* claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case…" 11 U.S.C. § 502(c)(1) (emphasis added).

33.     Thus, if a claim is neither contingent nor unliquidated, it cannot be estimated simply because a debtor disputes it. See In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 424 (Bankr. S.D.N.Y. 2003) ("I cannot agree that any time one disputes an otherwise liquidated claim, or asserts a counterclaim, that makes the claim unliquidated.  When it is time to determine the allowance of the DIP claim, we'll have to do it the normal way, which is by the litigation of a contested matter."); In re McGovern, 122 B.R. 712, 717 (Bankr. N.D. Ind. 1989) (the fact that a party disputes a claim does not render that claim contingent or unliquidated); Audre, Inc. v. Casey (In re Audre, Inc.), 216 B.R. 19, 30 (B.A.P. 9th Cir. 1997) rev'd on other grounds ("Resorting to § 502(c) is only appropriate when the claim is either contingent or unliquidated. If the debt does not fit this definition, estimation is inappropriate.") (internal citations omitted); In re Nugent, 254 B.R. 14, 38 (Bankr. D.N.J. 1998) ("Section 502(c) specifies, however, that a court may only estimate contingent or unliquidated claims.").  The Debtors cannot, through a purported expansion of the estimation power of the Bankruptcy Court, undermine the Bankruptcy Code provisions governing the adjudication of claims.

34.     Moreover, even if a claim is contingent or unliquidated, it may not be estimated unless the plenary resolution of that claim will "unduly delay" the administration of the case. See 11 U.S.C. § 502(c)(1); see also, O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines), 981 F.2d 1450, 1461 (5th Cir. 1993) ("In order for the estimation process of § 502(c) to apply, a claim must be contingent or unliquidated and fixing the claim must entail undue delay in the administration of justice"); In re G-I Holdings, Inc., 323 B.R. 583, 599 (Bankr. D.N.J. 2005)

("before a court orders an estimation proceeding, an initial determination must be made that liquidating the claim or claims would unduly delay the bankruptcy case"); In re Teigen, 228 B.R. 720, 723 (Bankr. D.S.D. 1998) ("Although liquidation of a claim may take longer, the delay is only undue if it is unjustifiable.") (citing In re Dow Corning Corp., 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997)).

35.     Not to be lost in the estimation equation is the requirement that, to be an "undue" delay, the delay must be "unjustifiable." See In re Teigen, 228 B.R. at 723. Since the provisions to which CACIB objects pertain only to *post-Effective Date* claims administration, it is unfathomable how estimation by the Plan Administrator would be justified on the ground that the administration of the case would be *delayed unjustifiably*. If a claim properly may be disposed of through a summary, dispositive motion, so be it. Otherwise, the claimant is entitled to have its claim adjudicated in a plenary proceeding and not by means of estimation.

36.     Moreover, it is a commonplace that under Bankruptcy Code section 502(a), a claim for which a proof of claim is properly filed is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). CACIB filed its claims against LBSF and LBHI over two years ago and, owing to the requirement to submit the additional information required by the Derivatives Questionnaire and the Guarantee Questionnaire, afforded each Debtor with far more information to support its claims than normally required by applicable law and rule. Yet, in those two years, neither LBSF nor LBHI has taken any action to object to the claims.[4] Even assuming the Debtors had good reason to delay filing a formal objection to the allowance of CACIB's claims (an assumption CACIB does not concede), the delay has been self-created. In determining the

---

[4] In their 186th Omnibus Objection, the Debtors objected to the LBSF Claim and CACIB's claim against LBCS only to the extent that each asserted a secured status to preserve set-off rights. As a result of discussions with the Debtors' counsel and the insertion of a provision in the proposed order preserving those rights, CACIB did not contest the reclassification.

"justness" of the delay for purposes of section 502(c), it cannot be that it is CACIB which has to suffer the prejudice for the Debtors' elective timing.  CACIB is entitled to a plenary adjudication of its claims and there is no basis to give short shrift to its due process rights to accommodate the strategic choices of the Debtors.

37.     Section 9.3 of the Liquidating Plan further exceeds the limits of Bankruptcy Code section 502(c) because it provides that the amount estimated by the Bankruptcy Court may constitute the "maximum limitation on such claim." Liquidating Plan, at § 9.3.  In Adelphia Bus. Solutions, the court, in considering the uses and limitations of section 502(c), explained that "in *MacDonald*, Judge Leif Clark, one of the country's most respected bankruptcy judges, got it exactly right, in my view, when he regarded it as appropriate to use estimation for feasibility purposes but not for allowance purposes." 341 B.R. at 423 (citing In re MacDonald, 128 B.R. 161, 164-65 (Bankr. W.D. Tex. 1991)).  The court ruled that to use section 502(c) to cap the potential allowed amount of a claim "raises risks of the denial of due process, and Bankruptcy Courts need to be sensitive to this concern." Id.  In further citing the MacDonald decision, the Adelphia Bus. Solutions court agreed that "were the estimation process to set the outer limits of allowance for such claims, the due process rights of such claimants would be jeopardized to a troublesome degree." Id.  Accordingly, the Adelphia Bus. Solutions court agreed with the MacDonald court that "[t]he better rule seems to be that estimation primarily serves to assist the court and parties in interest in evaluating the feasibility of a given plan under Section 1129(a)(11).  In addition, the estimation process may fulfill the allowance requirement for purposes of Section 1129(a)(9),[5] but will not … set the outer limits of a claimants' right to recover.  Rather, the ultimate allowance of the claim will set that right." Id. at 423-24 (quoting

---

[5] The MacDonald case involved the estimation of administrative expense claims.  Id.

In re MacDonald, 128 B.R. at 167-68) (internal quotations omitted).

38.     The risks to due process become even more acute in the context of a liquidating case, such as this one, that involves a plan that permits the establishment of a reserve amount for a disputed claim at the amount estimated pursuant to the plan.  See Liquidating Plan, at § 8.4.

39.     Accordingly, to the extent that the Liquidating Plan permits the Plan Administrator to seek the estimation of claims that are neither contingent nor unliquidated or for purposes of setting the maximum limitation on such claims, section 9.3 of the Liquidating Plan violates section 502(c) of the Bankruptcy Code and therefore renders the Liquidating Plan unconfirmable under Bankruptcy Code section 1129(a)(1).[6]

***C.     To the extent that the Liquidating Plan provides for the assumption of certain derivative contracts concerning CACIB, CACIB reserves its rights to assert that the Liquidating Plan violates section 365 of the Bankruptcy Code and therefore is unconfirmable under Bankruptcy Code section 1129(a)(1).***

40.     Section 11.1 of the Liquidating Plan provides for the assumption of contracts designated in the Plan Supplement as a contract to be assumed by the Debtor, and section 11.2 of the Liquidating Plan provides that the "[e]ntry of the Confirmation Order shall … constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts … assumed pursuant to the Plan …"  Liquidating Plan, at §§ 11.1, 11.2.

41.     Page 25 of Exhibit 2 to the Plan Supplement provides that LBSF and LBCC seek to assume one or more unidentified derivative contracts between each of those Debtors and

---

[6] CACIB has entered into an agreement with the Debtors regarding the amounts to be reserved for the CACIB Claims under sections 8.4 and 8.13 of the Liquidating Plan (the "Reserve Stipulation").  Among other things, the Reserve Stipulation provides that, pending the earlier of the Effective Date or March 31, 2012, the Debtors will not object to nor seek to estimate CACIB's claims.  Accordingly, this portion of the Objection is limited to those portions of the Liquidating Plan that pertain to post-Effective Date estimation.  Moreover, the Reserve Stipulation has deferred the need to raise certain other objections to the Liquidating Plan arising out of or related to section 502 of the Bankruptcy Code.  Accordingly, CACIB reserves its rights to oppose any motion or objection of the Debtors, the Plan Administrator or any party-in-interest with respect to the adjudication of CACIB's claims against the Debtors, including but not limited to, all of CACIB's rights under section 502 of the Bankruptcy Code.

CACIB.  See Plan Supplement, at Exh. 2, p. 25.

42.    CACIB received a Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011 (the "LBSF Notice").  The LBSF Notice provides that LBSF seeks to assume one or more unidentified derivative contracts between CACIB and LBSF and lists the cure amount under such contract(s) at $0.  The notice further provides that the deadline to respond to the LBSF Notice is November 10, 2011 (the "Assumption Objection Deadline").

43.    CACIB also received a Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011 (the "LBCC Notice" and together with the LBSF Notice, the "Assumption Notices").  The LBCC Notice provides that LBCC seeks to assume one or more unidentified derivative contracts between CACIB and LBCC and lists the cure amount under such contract(s) at $0.  The notice further provides that the deadline to respond to the LBCC Notice is the Assumption Objection Deadline.

44.    Pursuant to the Plan Supplement, LBSF also seeks to assume a derivative contract between LBSF and PYXIS ABS CDO 2007-1 Ltd. (the "Pyxis Derivative Contract").

45.    CACIB and the Debtors have agreed to extend the Assumption Objection Deadline to November 14, 2011 (the "Extended Assumption Objection Deadline") with respect to the Pyxis Derivative Contract and the contracts sought to be assumed pursuant to the Assumption Notices (collectively, the "Designated Derivative Contracts").  Accordingly, CACIB reserves its rights to contest both whether the Designated Derivative Contracts are executory and subject to assumption or rejection and, even assuming such contracts are executory (which they

- 16 -

clearly are not), whether the requisites of section 365 otherwise have been satisfied. Accordingly, CACIB hereby incorporates as an objection to confirmation of the Liquidating Plan (to the extent that sections 11.1 and 11.2 of the Liquidating Plan and the Plan Supplement provide for the assumption of the Designated Derivative Contracts) any response CACIB may file by the Extended Assumption Objection Deadline.

## CONCLUSION

WHEREFORE, CACIB respectfully requests that this Court deny confirmation of the Liquidating Plan in its current form for the reasons set forth herein.

Dated: New York, New York
       November 9, 2011

Respectfully submitted,

__/s/ Andrew P. Brozman____
Andrew P. Brozman
Sara M. Tapinekis
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Tel:  (212) 878-8000
Fax:  (212) 878-8375

*Counsel to Crédit Agricole Corporate and Investment Bank*