Hearing Date and Time: November 16, 2011 at 10:00 a.m. (prevailing Eastern time)
Objection Date and Time: November 9, 2011 at 4:00 p.m. (prevailing Eastern time)

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top III (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000

Craig M. Price (CP 9039)
Laura E. Appleby (LA 4879)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

### RESERVATION OF RIGHTS OF BANK OF MONTREAL TO DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, AND 365 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ESTABLISH PROCEDURES FOR THE CONSENSUAL AMENDMENT AND ASSUMPTION OF CERTAIN NON-TERMINATED PREPETITION DERIVATIVES CONTRACTS

Bank of Montreal (*"BMO"*), by its undersigned attorneys, respectfully submits this Reservation of Rights (the *"Reservation of Rights"*) to the above captioned Debtors' (the collectively, the "*Debtors*") Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Authorization to Establish Procedures for the Consensual Amendment and Assumption

of Certain Non-Terminated Prepetition Derivatives Contracts (the *"Procedures Motion'*)[1] and states as follows:

## BACKGROUND

1. BMO is a party with Lehman Brothers Special Financing Inc. (*"LBSF"*) to an ISDA Master Agreement (multi-currency cross-border) dated as of April 13, 1994, as amended by an Amendment to ISDA Master Agreement dated as of December 16, 1997, and as further amended or restated from time to time between the parties (the *"Master Agreement"*). Lehman Brothers Holdings, Inc. (*"LBHI"*) unconditionally guaranteed the Master Agreement (the *"LBHI Guarantee"*). In connection with the Master Agreement and related Credit Support Annex, BMO posted certain collateral with LBSF (the *"Posted Collateral"*).

2. Pursuant to the terms of the Master Agreement, the commencement of the chapter 11 case by LBHI on September 15, 2008, constituted an Event of Default. (Master Agreement § 5(a)(vii)(4).) On September 16, 2008, pursuant to section 6(a) of the Master Agreement, BMO gave notice of default and termination (the *"Termination Notice"*) to Debtors and designated September 17, 2008, as the early termination date under the Master Agreement.[2]

3. On September 30, 2008, pursuant to the terms of the applicable Credit Support Annex, BMO, as Pledgor, delivered a notice to Debtors in which BMO demanded the return of the Posted Collateral from Debtors. Pursuant to the terms of the Credit Support Annex, LBSF was holding BMO's Posted Collateral, which consisted of bonds and other securities having a value of approximately $101,200,000.[3]

---

[1] Terms not otherwise defined shall have the same meaning ascribed in Debtors' Proposed Plan, as more fully defined herein.

[2] The Termination Notice was delivered in compliance with the safe harbor provisions of the U.S. Bankruptcy Code. *See* 11 U.S.C. §§ 556-562 (derivatives safe harbor provisions allowing for post-petition termination).

[3] Any funds or securities held by Debtors relating to the Posted Collateral are not property of Debtors' estates but are property of BMO, and that possession or assertion of rights over such funds, property or

4. Thereafter, on January 5, 2009, pursuant to section 6(d)(i) of the Master Agreement, BMO provided LBSF and LBHI with a Statement of Calculation of the amount due by LBSF to BMO under the Master Agreement (the *"Statement of Calculation"*). In accordance with the terms of the Master Agreement, as the non-defaulting party, BMO calculated the amounts outstanding consistent with the valuation methodology contained therein. Using such methodology, BMO initially calculated that Debtors owed BMO approximately $22,636,598.75, plus costs and interest. This amount does not include costs associated with any substitute securities that BMO may have been obligated to purchase to replace certain Posted Collateral.

5. On September 21, 2009, BMO filed a Proof of Claim with respect to both its Claim against LBSF and its Claim based on the LBHI Guarantee.

6. Pursuant to the Plan Supplement, filed on October 28, 2011 (the *"Plan Supplement"*), Debtors apparently are seeking to assume the Master Agreement despite the fact it had been terminated. (*See* Plan Supplement at 342 [Docket No. 21254].) BMO filed an Objection (the *"Plan Objection"*) to Debtors' Third Amended Joint Plan of LBHI and its Affiliated Debtors (the *"Proposed Plan"*) seeking to enforce, among other things, Debtors' requirement to cure any and all defaults under the Master Agreement in accordance with the express terms thereof. Out of an abundance of caution in the event Debtors erroneously categorize the Master Agreement as non-terminated, BMO files this Reservation of Rights.

---

collateral by Debtors does not transform such funds, property, collateral or proceeds thereof into property of Debtors' estates.

# RESERVATION OF RIGHTS

**I.    The Master Agreement Has Been Terminated so It Cannot be Assumed and the Procedures are Inapplicable.**

7. Debtors have included the Master Agreement in their list of Non-Terminated Prepetition Derivative Contracts. As set forth above, pursuant to the safe harbor provisions of the Bankruptcy Code, the Master Agreement was effectively terminated. Therefore, the Master Agreement cannot be assumed, and the Procedures Motion should not be applicable to it.

8. Pursuant to the Procedures Motion, Debtors seek to establish procedures to assume and possibly, with the consent of the respective counterparties, amend certain non-terminated derivatives contracts. Given that the Procedures Motion targets only non-terminated agreements, BMO does not believe that its Master Agreement is within the scope of the Procedures Motion.

9. Further, owing to its prior termination, the Master Agreement may not be amended, and BMO does not consent to any modification thereof.

**II.    Assuming Arguendo, the Master Agreement Can Be Assumed, Such Assumption Must Comply with the Provisions of the Bankruptcy Code.**

10. BMO is filing this reservation of rights out of an abundance of caution as it does not believe such relief should apply to the Master Agreement. As noted above, BMO previously delivered a Termination Notice to Debtors, properly terminating the Master Agreement pursuant to its terms and the safe harbor provisions of the Bankruptcy Code. However, assuming for the sake of argument that the Court determines that the Master Agreement can be assumed, BMO reserves the right to insist upon full compliance with the terms of the Bankruptcy Code.

11. To the extent Debtors argue and the Court deems the Master Agreement an executory contract, for any assumption to be proper, section 365 of the Bankruptcy Code requires that Debtors cure all amounts outstanding pursuant to the express terms of the Master

Agreement.[4]  In connection with the assumption of any agreement, pursuant to section 365 of the Bankruptcy Code, a debtor must:

> (A) cure[], or provide adequate assurance that the trustee will promptly cure, such default . . . ; (B) compensate[], or provide[] adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provide[] adequate assurance of future performance under the contract or lease.

11 U.S.C. § 365(b)(1)(A)-(C).

12. As a result, to the extent that the Master Agreement is indeed the subject of the Procedures Motion, BMO reserves its right to object to any attempt by Debtors to value the Master Agreement in any manner that is not in accordance with its express terms.

13. In addition, to value the Master Agreement in accordance with its terms and to cure any and all defaults, among other things, Debtors would be required to cover the fees and expenses of BMO, including but not limited to the internal fees of BMO and attorneys' fees, that have accrued or may accrue in the future in connection with BMO protecting and enforcing its rights under the Master Agreement and related documents.[5]  Such amounts would be due BMO pursuant to section 11 of the Master Agreement.  In addition, Debtors would be required to pay BMO interest at the default rate on all amounts past due and on all amounts LBSF has been unable to pay BMO.

---

[4] In addition, as previously noted in its Plan Objection, BMO asserts that the Master Agreement is not executory and capable of being assumed pursuant to section 365 of the Bankruptcy Code.  *See JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 920 N.Y.S.2d 241 (Sup. Ct. 2010) (noting "[o]nce terminated, [an] ISDA Agreement was not, and could not be, executory."); *but see LBSF v. BNY Corporate Trustee Serv. Ltd.*, 422 B.R. 407, 415-16 (Bankr. S.D.N.Y. 2010) (holding opposite).  In this instance, however, the facts are distinguishable from those presented in *LBSF v. BNY*, where this Court found that because both LBSF and BNY had unsatisfied contractual obligations with respect to payment, the contract was executory.

[5] As of the date of this filing, BMO has not received any notice from Debtors of the purported "cure" amount.

14. Moreover, to assume the Master Agreement, Debtors would be required to provide BMO adequate assurance of future performance under its express terms, including, among other things, that LBSF will pay all amounts that may come due, perform all covenants, and comply with any and all indemnification obligations. Relatedly, because assumption of the Master Agreement would require the concurrent assumption of the LBHI Guarantee, BMO would need assurances that, should LBSF fail to act under the terms of the Master Agreement, LBHI would. Because Debtors are liquidating entities, BMO questions whether Debtors would have the ability to perform these future obligations.

15. BMO also asserts that any cure amount must take into account the Posted Collateral. As noted above, the Posted Collateral was valued at $101,200,000. Pursuant to the Statement of Calculation, and in connection with the express terms of the Master Agreement and the related Credit Support Annex and applicable bankruptcy law, BMO set off the amount of the Posted Collateral against amounts outstanding to LBSF with respect to the Master Agreement. To date, Debtors have not returned the Posted Collateral or indicated that they will permit the Posted Collateral to be offset against any amount payable. Debtors have similarly not indicated how they will value the Posted Collateral. It is certain that the Posted Collateral is not Debtors' property or property of their estates. Thus, in order to cure the Master Agreement, Debtors must either value the Posted Collateral in a manner acceptable to BMO and set off such amount against any amount payable to Debtors, or return the Posted Collateral to BMO.

16. Lastly, BMO files this reservation of rights to indicate to Debtors its expectation that should the Procedures Motion apply to the Master Agreement, Debtors would negotiate in good faith with BMO to adequately cure any and all defaults pursuant to the express terms of the Master Agreement and related documents.

**CONCLUSION**

WHEREFORE, BMO respectfully requests that the Court: (i) find that, owing to its prior termination, the Master Agreement is not subject to the Procedures Motion, (ii) to the extent that the Procedures Motion does apply to the Master Agreement, deny any such relief unless Debtors agree to assume such agreement in accordance with the Bankruptcy Code, all of its express terms and without amendment, and (iii) grant BMO such other and further relief to which it is entitled.

Dated:  November 9, 2011

                Respectfully submitted,

                BANK OF MONTREAL


                By: _____s/ Craig M. Price_____
                    One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top III (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000

Craig M. Price (CP 9039)
Laura E. Appleby (LA 4879)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000