McGUIREWOODS LLP                     **Hearing Date: December 6, 2011**
Shawn R. Fox                        **Objection Deadline: November 10, 2011**
Dion W. Hayes
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105
Telephone:  (212) 548-2100
Facsimile:  (212) 548-2150

Attorneys for Fuller Theological Seminary

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
                                         :
**In re**                                        :          **Chapter 11 Case No.**
                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*      :          **08-13555 (JMP)**
                                         :
                            **Debtors.**        :          **(Jointly Administered)**
                                         :
-------------------------------------------------- x

## OBJECTION OF FULLER THEOLOGICAL SEMINARY TO
## DEBTORS' ASSUMPTION OF DERIVATIVE CONTRACTS

Fuller Theological Seminary ("Fuller"), by its undersigned attorneys, for its Objection

(the "Objection") to Debtors' assumption of any Derivatives Contract[1] between Fuller and

Lehman Brothers Special Financing Inc. ("LBSF"), respectfully states as follows:

### I.        Preliminary Statement

Section 560 of the Bankruptcy Code permits a swap participant to exercise its contractual

right to terminate a swap agreement as a result of the commencement of a bankruptcy case after

the bankruptcy proceedings have been commenced.  Fuller and LBSF were parties to a certain

ISDA master agreement dated December 19, 2003 (the "Fuller Swap").  LBHI guaranteed the

performance of LBSF pursuant to a guarantee agreement dated as of December 19, 2003.  Fuller

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Third Amended Joint
Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011 (the "Plan").

sent its notice of termination of the Fuller Swap less than one month after LBHI filed its bankruptcy case and just days after LBSF filed its bankruptcy case.  Shortly after the termination of the Fuller Swap, Fuller corresponded with the Debtors to determine to whom it should send its calculation of the termination amount due under the Fuller Swap and the payment of the amounts due thereunder.  Subsequent to those conversations, and just 20 days after LBSF filed for bankruptcy protection, Fuller wired $1,125,000 to LBSF to complete the unwind of these transactions (the "Termination Amount").

The Debtors did not contact Fuller regarding the Fuller Swap until May 2009.  At that time, the Debtors acknowledged that their records indicated that they had received the notice of termination, but that they believed the termination was ineffective solely because it did not strictly comply with the notice terms of the Fuller Swap.  Since that time, the Debtors have sought to obtain amounts in addition to the Termination Amount from Fuller.

Despite the Debtors' acknowledgement of the termination and retention of the Termination Amount, on October 25, 2011—more than three years after the termination of the Fuller Swap—the Debtors filed the Plan Supplement, listing a Derivative Contract or Contract(s) between Fuller and LBSF for assumption pursuant to the Plan.  Because Fuller terminated the Fuller Swap and there were no other outstanding Derivative Contracts between LBSF and Fuller, LBSF cannot assume the Fuller Swap or any other Derivatives Contract between the Debtors and LBSF.

Even if the Debtors could meet their burden of proving the Fuller Swap was executory, which Fuller asserts LBSF cannot due to its termination, section 365 of the Bankruptcy Code requires LBSF to show adequate assurance of future performance in order to permit assumption.

Moreover, LBSF would be required to assume the Fuller Swap *in toto*, which LBSF does not propose to do.

This Court should not countenance the Debtors' attempt to extort additional amounts from Fuller and should deny LBSF's attempted assumption of the Fuller Swap, identified as a derivative contract on page 48 of Exhibit 2 (Executory Contracts and Unexpired Leases to be Assumed Pursuant to Section 11.1 of the Plan) of the Plan Supplement [Dkt. 21254].

## II.   <u>Background</u>

1.      Fuller is a multidenominational Christian seminary, providing professional and graduate-level education in theology, psychology, and intercultural studies.

2.      Fuller and LBSF entered into the Fuller Swap pursuant to a 1992 ISDA Master Agreement dated December 19, 2003.  The Fuller Swap was a "swap agreement" as such term is defined in Bankruptcy Code section 101(53B).  The Fuller Swap is governed by New York law.

3.      LBHI guaranteed the obligations of LBSF to Fuller under the Swap Agreement pursuant to that certain Guarantee of Lehman Brothers Holdings Inc., dated as of December 19, 2003.

4.      On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of the Bankruptcy Code.  On October 3, 2008, LBSF filed a voluntary petition under chapter 11 of the Bankruptcy Code.  LBHI and LBSF's bankruptcy filings were events of default under the Fuller Swap.

5.      Fuller had no other Derivatives Contracts outstanding with LBSF on the dates LBHI and LBSF sought bankruptcy protection.

6.        In accordance with section 560 of the Bankruptcy Code, Fuller provided its notice of termination of the Fuller Swap and the transactions thereunder to LBSF and LBHI on October 10, 2008 (the "Termination Notice") via facsimile.   The Termination Notice set October 16, 2008 as the early termination date under the Fuller Swap (the "Termination Date").

7.        On the Termination Date,  Fuller's agent contacted the Debtors via e-mail in regard to whom Fuller should address its termination of the Fuller Swap, to whom questions regarding the establishment of the termination amount thereunder should be addressed, and where to direct any wire payment that might be due LBSF under the Fuller Swap.  The Debtors provided this information to Fuller's agent via e-mail on the Termination Date.  Copies of these e-mails are collectively attached hereto as **Exhibit A**.

8.        On the Termination Date, Fuller determined that, in accordance with the terms of the Fuller Swap, it owed LBSF the Termination Amount.   Fuller wired the Termination Amount to LBSF on October 23, 2008.  The Debtors have retained the Termination Amount and have acknowledged receipt of the notice of termination.

9.        Subsequent to the wiring of the Termination Amount, LBSF has failed to provide the quarterly statements or any other performance that would be due to Fuller pursuant to the Fuller Swap.[2]

10.        In May 2009, the Debtors contacted Fuller regarding the termination of the Fuller Swap.  In those communications, the Debtors acknowledged that they had received the Termination Notice from Fuller.  A copy of that e-mail is attached hereto as **Exhibit B**.

---

[2] The Debtors did provide one interim bill in January of 2010 that showed what LBSF asserts are amounts due to LBSF on account of one month's worth of accrued charges due under the Fuller Swap.

11.     Despite this acknowledgement and retention of the Termination Amount, the

Debtors have and apparently continue to contend that the Fuller Swap was not properly

terminated.

12.     On October 27, 2011, LBSF served its Notice of Proposed Assumption of

Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter

11 Plan pursuant to Section 1121 of the Bankruptcy Code (the "Notice") on Fuller.  That Notice

lists the Fuller Swap for assumption by LBSF.

### III.    <u>Argument</u>

13.     Under section 560 of the Bankruptcy Code, "[t]he exercise of any contractual

right of any swap participant . . . to cause the . . . termination . . . of one or more swap

agreements because of a condition of the kind specified in section 365(e)(1) . . . shall not be

stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a

court or administrative agency in any proceeding under this title."  On September 15, 2008,

LBHI sought bankruptcy protection, which resulted in a default under the Fuller Swap.

Additionally, LBSF filed for bankruptcy on October 3, 2008, which resulted in a default under

the Fuller Swap.

14.     As a result of LBHI and LBSF's defaults under the Fuller Swap, and in

accordance with section 560 of the Bankruptcy Code, Fuller terminated the Fuller Swap and

transmitted the Termination Notice to LBSF.

15.     On the Termination Date, Fuller's agent contacted the Debtors to inquire about the

termination of the Fuller Swap, whom to contact regarding the determination of the Termination

Amount, and where to pay the Termination Amount.  After communicating with the Debtors

regarding the termination of the Fuller Swap, Fuller unwound the transactions entered into under

the Fuller Swap and established the Termination Amount due to LBSF.  In accordance with the

directions of the Debtors, Fuller wired the Termination Amount to the Debtors on October 23,

2011.

16.    The Debtors assert that the Fuller Swap was not terminated in October 2008, even

though the Debtors acknowledge that they received actual notice of the termination of the Fuller

Swap, because the Termination Notice was transmitted via facsimile.  The Debtors' allegation

that the notice of termination was rendered ineffective because it was transmitted by facsimile is

unfounded.

17.    New York law does not require strict compliance with notice provisions in order

to effectively terminate an agreement despite the Debtors' contention.  "Where actual notice of

termination has in fact been given, the form is of little import," even where the form of notice is

not permitted under the contract as "'it would be hypertechnical in the extreme to hold

otherwise.'" *Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New

Jersey*, 706 F. Supp. 2d 350, 360 (S.D.N.Y. 2009) (quoting *Colin C. Ives v. Mars Metal Corp.*,

196 N.Y.S. 2d 247, 249 (N.Y. Sup. Ct. 1959)); *Kemelhor v. Penthouse Int'l, Ltd.*, 689 F. Supp.

205, 214 (S.D.N.Y. 1988) (defective form of notice of termination effective upon actual receipt);

*Iskalo Elec. Tower LLC v. Stantec Consulting Servs., Inc.*, 916 N.Y.S. 2d 373, 375 (4th Dept.

2010) ("Although we note that plaintiffs provided such notice by facsimile transmission . . . we

nevertheless conclude that strict compliance with the notice provision of the lease was not

required inasmuch as defendant does not contend that it did not receive actual notice, nor does it

contend that it was prejudiced by the deviation"); *Suarez v. Ingalls*, 723 N.Y.S. 2d 380, 381 (2d

Dept. 2001) ("There is no merit to the plaintiff's argument that the cancellation was ineffective

because it was not sent by certified mail.  Strict compliance with the contract notice provisions

was not required because the plaintiff does not claim that she did not receive actual notice, or

was prejudiced by the deviation."); *Dellicarri v. Hirschfeld*, 619 N.Y.S. 2d 816, 817 (3d Dept.

1994) (court rejected contention that receipt of actual notice was "without effect because it was

not sent by registered or certified mail."); *Christy v. Premo*, 599 N.Y.S. 2d 307, 308 (3d Dept.

1993) (holding notice of termination of contract was effective when sent via facsimile

transmission and regular mail although contract specified that notice be "delivered by certified or

registered mail, return receipt requested"); *Yarmy v. Conte*, 513 N.Y.S. 2d 21 (2d Dept. 1987)

("the notice of termination of the contract . . . failed to meet the technical requirements of the

contract.  Nevertheless, it served to terminate the contract. . . .").

18.     The Fuller Swap was terminated as of the Termination Date because, as the

Debtors have acknowledged, the Debtors received actual notice of the termination of the Fuller

Swap and were not prejudiced by receiving the notice of this termination via facsimile.

19.     The Debtors cannot assume the Fuller Swap because the Fuller Swap was

terminated.  Section 365(a) of the Bankruptcy Code permits a debtor to assume an executory

contract provided that the debtor meets certain conditions for the assumption of that executory

contract. 11 U.S.C. §§ 365(a)-(b).  It is, therefore, a threshold issue that a contract be executory

in order for it to be assumed.  *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 298 (Bankr. S.D.N.Y.

1996).  A terminated contract is not an executory contract and, therefore, cannot be assumed by a

debtor.  *Kopelman v. Halvajian* (*In re Triangle Laboratories, Inc.*), 663 F.2d 463, 467-68 (3d

Cir. 1981) ("An executory contract or lease validly terminated prior to the institution of the

bankruptcy proceedings, is not resurrected by the filing of the petition in bankruptcy and cannot

therefore be included among the debtor's assets."); s*ee Hart Envtl. Mgmt. Corp. v. Sanshoe

Worldwide Corp. (In re Sanshoe Worldwide Corp.)*, 993 F.2d 300, 302 (2d Cir. 1993); *In re*

7

*Margulis*, 323 B.R. 130, 134-35 (Bankr. S.D.N.Y. 2005); *In re 2903 Wines & Spirits, Inc.*, 45

B.R. 1003, 1007 (S.D.N.Y. 1984).

20.      Fuller terminated the Fuller Swap in accordance with the Bankruptcy Code and

other applicable law.  The Fuller Swap, therefore, cannot be assumed by LBSF.

21.      Assuming, *arguendo*, that this Court finds that the Fuller Swap is an executory

contract, LBSF has not met the requirements of section 365 of the Bankruptcy Code that would

permit LBSF to assume the Fuller Swap.

22.      LBSF must cure all defaults outstanding under the Fuller Swap.  LBSF does not

propose to cure any defaults under the Fuller Swap.  LBSF must cure all defaults under the Fuller

Swap in order to assume it.

23.      Section 365 of the Bankruptcy Code further requires that a debtor assume a

contract *in toto*.  *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984).  An express term of the

Fuller Swap requires a guarantee of LBSF's obligations under the Fuller Swap from a

creditworthy party.  LBSF cannot assume the Fuller Swap unless it provides such a guarantee to

Fuller.  The proposed assumption of the Fuller Swap by the Debtors does not include such a

guarantee.  Therefore, LBSF cannot assume the Fuller Swap.

24.      LBSF is likewise required to provide adequate assurance of future performance in

order to be able to assume the Fuller Swap.  11 U.S.C. § 365(b).  LBSF, as a liquidating

business, has failed to provide such adequate assurance.  As such, even if this Court finds that

LBSF could assume the Fuller Swap, LBSF has failed to meet its burden of providing adequate

assurance of future performance.  Therefore, this Court should not approve the assumption of the

Fuller Swap by LBSF.

25.    Absent the cure of all defaults under the Fuller Swap, provision of a guarantee from a creditworthy party, and a showing of adequate assurance of future performance, LBSF cannot assume the Fuller Swap.

### III.    Conclusion

WHEREFORE, for the reasons set forth above, Fuller respectfully requests that this Court enter an order (a) denying the assumption of the Fuller Swap, and (b) granting Fuller such other and further relief as this Court deems just and proper.[3]

Dated:  November 9, 2011                McGUIREWOODS LLP

                                                          *s// Shawn R. Fox*
                                                          Shawn R. Fox
                                                          Dion W. Hayes
                                                          1345 Avenue of the Americas
                                                          Seventh Floor
                                                          New York, NY 10105
                                                          Telephone:  (212) 548-2100
                                                          Facsimile:  (212) 548-2150

                                                          Attorneys for Fuller Theological Seminary

---

[3] Fuller also reserves the right to assert at the hearing on the assumption of the Fuller Swap any and all other objections to the assumption of the Fuller Swap, including those raised by other parties in their objections.

## Certificate of Service

I, Shawn R. Fox, hereby certify that on this 9th day of November, 2011, I caused to be served a copy of the Objection of Fuller Theological Seminary to Debtors' Assumption of Derivative Contracts filed herewith to be served by this Court's CM/ECF System and via Federal Express to the following:


Chambers of the Honorable James M. Peck
US. Bankruptcy Court
Court Room 601
One Bowling Green
New York, NY 10004

Harvey R. Miller, Esq.
Lori R. Fife, Esq.
Alfredo R. Perez, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Elisabetta Gasparini, Esq.
Andrea Schwartz, Esq.
Office of the United States Trustee, Region 2
33 Whitehall Street, 21st Floor
New York, NY 10004

Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.
Milbank, Tweed & McCloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

_s/Shawn R. Fox_
Shawn R. Fox
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105
Telephone: (212) 548-2100

/34513915.6