PREET BHARARA
United States Attorney for the
Southern District of New York
By:    JOSEPH N. CORDARO
       ROBERT WILLIAM YALEN
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2722/2745
Fax: (212) 637-2702
robert.yalen@usdoj.gov
joseph.cordaro@usdoj.gov

HEARING DATE:    November 16, 2011
TIME:    11:00 AM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re

LEHMAN BROTHERS HOLDINGS INC., et al.,

Debtors.

------------------------------------------------------------x

Chapter 11

Case No. 08-13555 (jmp)

(Jointly Administered)

# THE UNITED STATES OF AMERICA'S LIMITED OBJECTION
# TO DEBTORS' MOTION FOR AN ORDER APPOINTING THE
# DIRECTOR SELECTION COMMITTEE

The United States of America (the "Government"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this limited objection to *Debtors' Motion for an Order, Pursuant to Section 105(a), 363(b), and 142(b) of the Bankruptcy Code, Appointing the Director Selection Committee, Approving Retention of Korn/Ferry International by LBHI as Such Committee's Executive Search Advisors, and Granting Certain Related Relief* (the "DSC Motion"), dated October 20, 2011 [Dkt No. 21082].

The Government does not object to the appointment of the individuals listed in the motion to the Director Selection Committee ("DSC"), nor does it object to the proposed purpose and function of the DSC under the Plan. However, the United States does object to the DSC Motion insofar as it seeks a Court order immunizing (*i*) the members of the DSC ("DSC Members"), (*ii*) their employers and affiliates and (*iii*) the employees, agents, officers, directors, and principals of these employers and affiliates from liabilities they may owe to third parties (including the Government) as a result of their activities. To the extent that these provisions release the liability of non-debtors to third parties, they exceed the authority of the Court, and the Court lacks subject-matter jurisdiction to grant the requested relief. Moreover, to the extent that these provisions also protect the Debtors, they improperly seek protections beyond the discharge (if any) to which the Debtors may be entitled under a confirmed Plan. Accordingly, insofar as it seeks to confer these immunity, the DSC Motion should be denied.

## BACKGROUND

1. At various times between September 15, 2008, and December 22, 2009, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 1101 *et seq.*, as amended (the "Code").

2. On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), dated August 31, 2011 [Dkt No. 19627]. The Plan provides for the establishment of the DSC to select LBHI's initial, post-Effective Date board of directors. *See* Plan, § 7.2(a). After the Effective Date of the Plan, the DSC Members will also function as Plan Trustees. *See* Plan § 7.4.

3. As a result of agreements between the Debtors and certain of their creditors, the Plan assigns specific interested creditors the right to select DSC Members or, in the case of the co-chairs of the Committee of Unsecured Creditors ("UCC"), the right to serve as DSC Members. (Hereinafter, these creditors with a right to select or serve as DSC Members will be referred to as the "Selecting Creditors"). Specifically, the Plan provides as follows:

- One DSC Member will be selected by the Debtors;

- One DSC Member will be selected by creditor Lehman Brothers Treasury Co. B.V. (by its co-bankruptcy trustee);

- One DSC Member will be selected by creditor Lehman Brothers Bankhaus AG (by its administrator);

- One DSC Member will be selected by the Opco Plan Proponents who are creditors that have agreed to the Plan Support Agreement ("PSA Creditors");

- One DSC Member will be selected by PSA creditors within the Ad Hoc Group of Lehman Brothers Creditors;

- Two DSC Members will be selected jointly by Carval Investors UK Limited, Davidson Kempner Capital Management LLC, Elliott Management Corporation, King Street Capital Management LP, Och-Ziff Capital, Management Group LLC, The Baupost Group LLC and Varde Partners LP, all PSA Creditors; and

- The final two DSC Members will be the co-chairs of the UCC.

*See* Plan, § 7.4(b).

4. On October 20, 2011, the Debtors filed the DSC Motion to implement the selections of the Debtors and the Selecting Creditors. These individuals are described as follows:

- Julie Becker of Wilmington Trust, N.A., not in her individual or personal capacity, but solely in her capacity as a co-chairperson and member of the UCC;

- Michael F. DeMichele of The Baupost Group, L.L.C., not in his individual or personal capacity, but solely in his capacity as a designee of the Designated PSA Creditors;

- Dr. Michael C. Frege, not in his individual or personal capacity, but solely in his capacity as the Administrator of LBB;

- Noel P. Purcell of Mizuho Corporate Bank, Ltd., not in his individual or personal capacity, but solely in his capacity as a co-chairperson and member of the UCC;

- Robert P. Ryan of Elliott Management, not in his individual or personal capacity, but solely in his capacity as a designee of the Designated PSA Creditors;

- Rutger Schimmelpenninck, not in his individual or personal capacity, but solely in his capacity as co-bankruptcy trustee for LBT;

- John Suckow, not in his individual or personal capacity, but solely in his capacity as the President of LBHI;

- Thomas A. Tormey of Goldman Sachs & Co., not in his individual or personal capacity, but solely in his capacity as the designee of the Opco Plan Proponents; and

- Christian Wyatt of Fir Tree Partners, not in his individual or personal capacity, but solely in his capacity as the designee of the Ad Hoc Group.

DSC Motion, ¶ 11.

5. Although the Plan does *not* purport to provide releases, exculpations, or other immunities from liability to the DSC Members – other than those releases, exculpations and other protections the Plan makes available to so-called "Released Parties" and "PSA Creditors"

generally[1] – the DSC Motion asks the Court to provide additional immunities to the DSC Members and a laundry list of affiliated parties.

6. Specifically, the proposed order accompanying the DSC Motion ("DSC Order") provides, in relevant part:

> ORDERED that, whether or not the Plan is confirmed, each DSC Member, together with any entity or entities by which such DSC Member is directly or indirectly employed or with which he or she is directly or indirectly professionally affiliated (or by which he or she was so employed or with which he or she was so affiliated during his or her services on the DSC), and their respective present and former employees, agents, officers, directors or principals (all of the foregoing, collectively, the "DSC Related Parties") shall have or incur no liability, nor be subject to any claim or cause of action, of any kind in connection with, arising out of, or related to, the applicable DSC Member's service on the DSC, or any act taken or omitted to be taken in connection therewith, except to the extent that it is determined by a final order of a court of competent jurisdiction that the applicable DSC Member is guilty of actual fraud, willful misconduct or gross negligence in the performance of his or her duties in connection with the DSC; and it is further
>
> ORDERED that neither of the LBB Insolvency Administrator or the LBT cobankruptcy trustee shall have any individual or personal liability with respect to any claims arising in connection with their respective services on the DSC, and that any claim against the LBB Insolvency Administrator or against the LBT co-bankruptcy trustee arising in connection with their respective services on the DSC not disposed of or otherwise resolved as provided for herein shall be satisfied solely out of the assets of the insolvency estate of LBB or LBT, as applicable . . . .

DSC Motion, Exhibit A, at 4-5.

7. Thus, the proposed DSC Order would provide immunity from any liability (including liabilities owed to third parties such as the Government) "arising out of, or related to, the applicable DSC Member's service on the DSC, except in cases of actual fraud, willful

---

[1] The Government has objected to the Plan's releases and other liability limiting provisions, to the extent that they relate to non-debtors. *See also Limited Objection of the United States of America to Debtors' Third Amended Joint Chapter 11 Plan* ("US Plan Objection"), dated November 4, 2011 [Dkt No. 19627].

-5-

misconduct or gross negligence," and further provides expressly that two of the DSC Members will not be liable in a personal capacity *even if* they commit fraud or other misconduct.

8. It is impossible to construct a list of each specific entity and individual that would receive protection pursuant to the proposed DSC Order, because of the broad categories of protected parties identified therein. In general terms, however, the DSC Order would extend these protections to the following:

    i. The DSC Members,

    ii. "[A]ny entity or entities by which such DSC Member is directly or indirectly employed,"

    iii. "[A]ny entity or entities . . . with which he or she is directly or indirectly professionally affiliated," and

    iv. All "present and former employees, agents, officers, directors or principals" of the entities referred to in "ii" and "iii" above.

DSC Motion, Exhibit A, at 4-5.

9. The DSC Order further provides that Lehman will indemnify all of these parties for any claims brought against them. *See* DSC Motion, Exhibit A, at 5.[2] The DSC Order does not, however, specify that third-parties that otherwise have future claims against the protected parties will now be permitted to bring those claims against Debtors for payment pursuant to the indemnities, nor does it create a fund to ensure that moneys are available for payment of such claims following Debtors' anticipated liquidation.

---

[2] Although the DSC Motion states that these indemnities will not apply in the case of actual fraud, willful misconduct, or gross negligence, *see* DSC Motion, ¶ 18, the DSC Order does not contain this limitation on indemnification, *see* DSC Motion, Exhibit A, at 5.

-6-

**ARGUMENT**

**THE PROPOSED DSC ORDER'S
LIABILITY PROTECTIONS ARE IMPROPER**

10. The DSC Motion's request for the liability protection provisions of the proposed DSC Order should be rejected. To the extent that these provisions apply to non-debtors, they are improper because they both exceed the Court's authority under the Second Circuit's *Metromedia* decision and the Court's subject-matter jurisdiction.[3] To the extent that these provisions apply to the Debtors, they are impermissible because they exceed the scope of any discharge to which Debtors may be entitled under the Code.[4]

**A.    The DSC Motion's Non-Debtor Protections Are Improper**

    **i.    *Metromedia* Requires Rejection of The Non-Debtor Liability Protections**

11. In *Metromedia*, the Second Circuit concluded that "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that *truly unusual circumstances render the release terms important to success of the plan*." *Metromedia*, 416 F.3d at 143 (emphasis added). The Court noted that whether such "truly unusual circumstances" exist requires a Court to focus on the following "considerations," *id.*: (1) whether "the estate received substantial consideration" for the release, *id.* at 142; (2) whether "the enjoined claims were

---

[3] *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005).

[4] Additionally, as noted above, the Debtors describe the proposed DSC Members as being nominated in a representative capacity and "not in his [or her] individual or personal capacity." DSC Motion, ¶ 11 & Exhibit A, at 3. For the same reasons, discussed below, that the immunities expressly contained in the proposed DSC Order are improper, this Court should not approve this language as a judicially imposed limitation on liability. Accordingly, the Court should deny the DSC Motion to the extent that it seeks such a judicially imposed limitation.

'channeled' to a settlement fund rather than extinguished," *id.* at 142; (3) whether "the enjoined claims would indirectly impact the debtor's reorganization by way of 'indemnity or contribution,'" *id.*; and whether "the plan otherwise provided for the full payment of the enjoined claims," *id.* The Court emphasized, however, that third-party releases may only be approved "in rare cases," *id.* at 141, and that a prerequisite for non-debtor releases is a "finding of circumstances that may be characterized as unique," *id.* at 142. *See generally, e.g.*, *In re Adelphia Communications Corp.*, 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007) (observing that *Metromedia* "now limits the use of third-party releases to situations that can be regarded as unique"), *appeal dismissed*, 361 B.R. 337 (S.D.N.Y. 2007) *and* 371 B.R. 660 (S.D.N.Y. 2007), *dismissal of appeal affirmed*, 544 F.3d 420 (2d Cir. 2008).[5]

12. The DSC Motion's non-debtor liability protections simply cannot be justified under the *Metromedia* standard because there is nothing "unique" about the circumstances giving rise to this request to relieve DSC members of liability. Rather, these releases are simply one of many negotiated terms by which certain creditors have sought to maximize the return on their claims. As the *Adelphia* court has explained:

> In the case of creditors, even those that are Settling Parties, they were merely striking the kinds of deals with respect to their shares of the pie that chapter 11 contemplates. I don't doubt that in this case the Settling Parties engaged, as the Plan Proponents argue, in "tireless efforts" to come together to work out a global compromise aimed at resolving

---

[5] That the Debtors seek to obtain these non-debtor liability protections through the DSC Motion, rather than by including them in the Plan, is irrelevant. As an initial matter, the DSC Motion is an adjunct to, and implementation of, the Plan, and not a free-standing agreement. *See* DSC Motion, ¶¶ 2-3. More importantly, however, even if the DSC Motion were considered to be separate from the Plan, third-party releases and similar protections contained therein would be subject to the same limitations applicable to the Plan, because those limitations derive directly from the Court's limited authority over non-debtors. *See, e.g.*, *Metromedia*, 416 F.3d at 142 (reviewing the Court's authority under Bankruptcy Code to release non-debtors).

these cases. But that's not unique. It's something creditors have to do in every chapter 11 case, at the risk of destroying themselves (or their recoveries in the case) with their own quests for incremental recoveries.

*In re Adelphia Communications Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007); *In re Chemtura Corp.*, 439 B.R. 561, 611 (S.D.N.Y. 2010) ("[The parties] have made what in substance was the same argument I considered and rejected in Adelphia—that they should get [non-debtor releases] because of the benefits of the settlement, supposedly extraordinary efforts in reaching a deal, or give-ups as part of that deal. Here, as in *Adelphia*, what we saw was simply what chapter 11 contemplates."). Unlike in *Charter Communications*, where the Court approved non-debtor releases demanded by an individual and his affiliates who made available "uniquely personal structuring benefits [where] no other party could stand in their shoes and achieve the same result," *In re Charter Communications*, 419 B.R. 221, 259 (Bankr. S.D.N.Y. 2009), *appeal dismissed*, 449 B.R. 14 (S.D.N.Y. 2011), the creditors in the present case play no such unique role. The proper reward for the creditors' efforts in the Plan process or the bankruptcy case is a Plan that maximizes their return or otherwise satisfies the requirements of the Code; it is not a release from potential liabilities owed to a third party.[6]

13.     Indeed, the Debtors' principal justification for the liability protections of the DSC Order – that they are needed "to induce the DSC Members to serve on the DSC" – is preposterous and cannot possibly serve as "*truly unusual circumstances [that] render the release terms important to success of the plan.*" *Metromedia*, 416 F.3d at 143 (emphasis added)November 9, 2011. The Selecting Creditors have the right to make these selections

---

[6] The Government does not object to these provisions to the limited extent that consist of mutual releases and protections exchanged among the Debtors and the Selecting Creditors.

-9-

*because they bargained for it*. If any of the Selecting Creditors does not think it is in its best interest to be a Selecting Creditor, the Government has no doubt that other creditors would happily take on that responsibility, in order to best protect their interests. To the extent that the Selecting Creditors believe that they will be unable to find individuals to serve as their designated DSC Members to the extent that they might face personal liability, they should allay the designees' concerns by indemnifying them out of the Selecting Creditors' own funds. There is no basis for creditors to assume the *benefits* of being a Selecting Creditor, but force third parties to pay the cost thereof by giving up potential liabilities the designee may owe those third parties. In any event, there is nothing "unique" about a creditor's desire to maximize its recovery and minimize its risk.

15.     The Debtors do not argue that *Metromedia* is satisfied by these provisions; indeed, they do not even cite *Metromedia*, instead relying on outdated precedent expressly limited in *Metromedia*.[7] To the extent that the Debtors may ultimately claim that these protections are justifiable under *Metromedia* because creditors have insisted on them, that rationale for non-debtor protections has been squarely rejected as inconsistent with *Metromedia*'s admonition that such provision are permitted only in "rare cases." As the *Adelphia* Court held:

> Nor can I accept the notion that the releases pass muster under *Metromedia* because the Settling Parties elected to make them an element of their deal. . . . It would set the law on its head if parties could get around it by making a third party release a *sine qua non* of their deal, to establish a foundation for an argument that the injunction is essential to the reorganization, or even 'an important part' of the reorganization.

---

[7] *See* DSC Motion, ¶ 25 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *McArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988)).

*In re Adelphia Communications Corp.*, 368 B.R. at 269.

16. Nor are these non-debtor protections saved by the fact that Debtors have included an indemnification provision in their DSC Order. Although *Metromedia* did note that one relevant consideration in deciding whether "unique circumstances" existed warranting non-debtor protections, was whether the barred third-party "claims would indirectly impact the debtor's reorganization 'by way of indemnity or contribution,'" *Metromedia*, 416 F.3d at 142, the Court certainly did not suggest that Debtors could gin up an "impact" on reorganization warranting non-debtor releases simply by providing for indemnification in the same order providing the non-debtor protections. If this approach were permissible, releases could be justified in every case through a well-crafted proposed order. Far from this being the rule, even legitimate indemnifications, standing alone, cannot support non-debtor releases without some other "unique" circumstances being present. *See id.* at 142 (requiring a "finding of circumstances that may be characterized as unique"); *cf. Charter Communications*, 419 B.R. at 259 (permitting non-debtor releases where indemnifications existed *and* "uniquely personal structuring benefits" were being provided by the party demanding the benefits).[8]

18. Moreover, although these provisions cover only post-petition activity, courts have squarely held that non-debtor releases are subject to the same *Metromedia* test regardless whether they relate to pre-petition or post-petition conduct. As the *Adelphia* Court held:

---

[8] Indemnifications might also be a consideration supporting non-debtor releases where they served, essentially, to channel a third-party's claims from the released party to a fund created by the debtor to pays such claims. *See Metromedia*, 416 F.3d at 142. Here, however, the indemnifications do not clearly channel liabilities and, in any event, the Debtors are likely to liquidate, leaving funds unavailable to pay such "channeled claims."

> [T]hough without question it has long been the custom in the bankruptcy community to make distinctions between releases involving pre- and postpetition conduct, . . . after *Metromedia*, limitation to postpetition events, by itself, is insufficient to justify a third-party release.

*In re Adelphia Communications Corp.*, 368 B.R. at 267; *accord In re Motors Liquidation Co.*, 447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) (holding that "the limitations on third-party releases apply to both pre- and post-petition events"). Indeed, "every chapter 11 case, large or small, has a postpetition period. That is hardly unique." *In re Adelphia Communications Corp.*, 368 B.R. at 267.

19.    Further, even if Debtors were to assert that non-debtor releases are needed to avoid disruptive post-Effective Date litigation, such disputes – although unfortunate – are not extraordinary:

> [M]any large chapter 11 cases, though thankfully not all of them, have intercreditor bickering and threats, aimed at each other and at debtor board members and management, that give the targets of those threats a legitimate fear that they will be sued. But unfortunately, that can't be said to be unique, either.

*In re Adelphia Communications Corp.*, 368 B.R. at 267; *In re Motors Liquidation Co.*, 447 B.R. at 221 ("I well recognize how hard the Debtors, the Chapter 11 Fiduciaries, and their professionals worked on this case, and how, with thousands of disappointed creditors and stockholders out there to second guess their actions, they would like to be protected for their good faith actions in maximizing value and bringing this case to a successful conclusion. But I'm constrained by existing law to place some limits on their protection.").

20.    Nor does the proposed DSC Order's exclusion (as to most of the covered parties) of fraud, willful misconduct, and gross negligence support approval. It is true that, in the absence of such a carve-out, the releases would be extraordinarily abusive. Nevertheless, even

-12-

with such a carve-out, non-debtor releases must be scrutinized under *Metromedia* and should rejected if the circumstances justifying them are less than "unique." *See In re Motors Liquidation Co.*, 447 B.R. at 220 (non-debtor release rejected by court despite including carveout language for "willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), and ultra vires acts," as well as for certain violations of professional responsibility); *In re Adelphia Communications Corp.*, 368 B.R. at 264 n.21 (non-debtor releases rejected by *Adelphia* court included carve-out for "fraud or willful misconduct").

21.     Accordingly, under *Metromedia*, the DSC Order's non-debtor protections are improper and should not be approved.

### ii.     The Court Lacks Jurisdiction to Grant the Non-Debtor Protections

22.     Separate from the *Metromedia* test, a bankruptcy court's authority to release future liabilities is limited by the scope of the Court's jurisdiction. "[A] bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly address the *res* of the bankruptcy estate." *In re Johns-Manville Corp.* ("*Manville*"), 517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009), *jurisdictional holding reaffirmed on remand, In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010); *see also In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010) (noting "jurisdictional limits *Manville* imposes on a bankruptcy court"). Where parties "make no claim against an asset of the bankruptcy estate, nor do their actions affect the estate," bankruptcy courts lack jurisdiction to enjoin a claim. *Manville*, 517 F.3d at 65; *see In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (no jurisdiction to enjoin matter that

does "not affect property of the estate or the administration of the estate"). In this analysis, "[t]he question is not whether the court has jurisdiction over the settlement [containing the non-debtor releases] but whether it has jurisdiction over the attempts to enjoin the creditors' unasserted claims against the third party." *In re Dreier LLP*, 429 B.R. at 132.[9]

23. Here, the proposed DSC Order's non-debtor protections on their face extend to potential claims by third parties against creditors that relate neither to the property of the estate nor the administration of the estate. The non-debtor protections cover liabilities "arising out of, or related to, the applicable DSC Member's service on the DSC, or any act taken or omitted to be taken in connection therewith," regardless of whether enforcement of those liabilities would affect the estate's property or administration. *See* DSC Motion, Exhibit A, at 4-5.

24. Aside from this general limitation on the Court's jurisdiction to enjoin third-party claims, particular claims of interest to the Government aresubject to jurisdictional limitations. For example, courts lack authority under most circumstances to "restrain[] the assessment or collection of any tax," 26 U.S.C. § 7421, and the grant of authority in 11 U.S.C. § 505 for this Court to determine tax liability is limited only to *debtors*' tax liability, *see Brandt-Airflex Corp. v. Long Island Trust Co. (In re Brandt-Airflex Corp.)*, 843 F.2d 90, 96 (2d Cir. 1988) (holding that 11 U.S.C. § 505 does not apply to the tax liability of non-debtors). Likewise, environmental laws limit judicial jurisdiction over various matters. *See* 42 U.S.C. § 9613(h) (depriving courts of jurisdiction over pre-enforcement environmental disputes). The limitations of liability in the

---

[9] This jurisdictional limitation is not limited to the context of Plan releases. *In re Dreier LLP*, 429 B.R. at 132 ("Although the case law discussed above dealt with plan injunctions, the same jurisdictional principles apply to injunctions required by non-plan settlements.").

proposed DSC Order do not contain any limits excluding such matters, in the event they arise, because of the Court's lack of jurisdiction.

25. Accordingly, the Court should not approve the DSC Order because its provisions purport to affect liabilities beyond this Court's jurisdiction.

**B.    The DSC Order's Provisions Are Improper Insofar as They Limit Debtors' Liabilities**

26. Although the protections contained in the DSC Order apply principally to non-debtors, in one respect they also purport to provide protections to one or more of the debtors. Specifically, because one of the proposed DSC Members is the president of Debtor LBHI, the liability protections of the DSC Order would extend, at a minimum, to LBHI as his employer, and the Debtors may argue that the provisions apply to other Debtors on a theory that they "indirectly employed" or were "directly or indirectly professionally affiliated" with him. *See* DSC Motion, Exhibit A, at 4. To the extent that these protections extend to the Debtors, they are improper and provide an additional basis for denying the motion.

27. As an initial matter, the Debtors are likely not entitled to *any* discharge or other protection from liability, because their Plan appears to be one that "provides for the liquidation of all or substantially all of the property of the estate." 11 U.S.C. § 1141(d)(3) (no discharge in Chapter 11 case where plan "provides for the liquidation of all or substantially all of the property of the estate"); *see also Objection of the United States Trustee to Confirmation of the Debtors' Third Amended Joint Plan of Reorganization*, dated Nov. 4, 2011 [Dkt. No. 21640], at 19-20 (arguing that Debtors have not demonstrated that they are entitled to a discharge). If the Debtors are not entitled to a discharge,, than it is beyond the Court's authority effectively to provide them

a discharge for post-petition administrative claims that may arise as a result of the DSC's operations.

28. To the extent, however, that Debtors are entitled to *some* discharge under the Code, that discharge – and related releases, exculpations and other limitations of liability– are necessarily limited, absent creditors' consent, to what the Code authorizes. The proposed DSC Order's immunities from liability, however, extend beyond any discharge Debtors could obtain under the Code. Among other things, the Code's discharges apply only to "claims" as that term is defined by the Code, *see* 11 U.S.C. § 1141(d)(1)(a); *id.* § 101(5), (12), but the DSC Order would extend its immunities not only to "claims" but also "causes of action, of any kind," which would include non-dischargeable obligations.

29. Moreover, although the Plan's discharges will not become effective until all distributions have been made, *see* Plan, § 13.4, and its other protections will not become effective until the Effective Date, *see* Plan, §§ 13.3, 13.5, the proposed DSC Order purports to provide protections even before confirmation of the Plan, and even in the event that the Plan is never approved. Nothing in the Code authorizes a Debtor to be relieved of liability beyond what is lawfully provided for in a confirmed Plan.

30. Accordingly, the Court should deny the DSC Motion insofar as it provides protections to the Debtors, which should be left to the protections (if any) allowed to them pursuant to their Plan.

## CONCLUSION

31.  For the foregoing reasons, the Government respectfully objects to the DSC Motion and requests that the Court not approve the DSC Motion to the extent that it seeks (i) to immunize non-debtors from potential liabilities to third parties and (ii) to provide Debtors with any greater immunity from liabilities to third parties than that provided for in a confirmed Plan in these cases.

32.  For these reasons, the Government respectfully requests that the Court strike the language in the proposed DSC Order providing for the protections from liability and add the following additional language to the Order:

> Notwithstanding anything to the contrary here, this Order shall not provide to any person or entity (including but not limited to a Debtor) any limitation, exculpation, release, discharge, or preclusion of, or any immunity from or injunction against, (*i*) any liability or other obligation owed by such person or entity to a person or entity other than the Debtors, (*ii*) or any claim, cause of action, or other right held by a person or entity other than the Debtors.

Dated: November 9, 2011
      New York, New York

                                   Respectfully submitted,

                                   PREET BHARARA
                                   United States Attorney for the
                                   Southern District of New York
                                   Attorney for the United States of America

                      By:    /s/ Robert William Yalen
                                   JOSEPH N. CORDARO
                                   ROBERT WILLIAM YALEN
                                   Assistant United States Attorneys
                                   86 Chambers Street
                                   New York, New York 10007
                                   Tel.: (212) 637-2722/2745
                                   Fax: (212) 637-2702
                                   robert.yalen@usdoj.gov
                                   joseph.cordaro@usdoj.gov