RESPONSE DEADLINE: November 10, 2011 at 4:00 p.m. (Eastern Time)

STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7018
Phone: 215-564-8000
Fax:   215-564-8120
Michael J. Cordone, Esquire
Mark J. Dorval, Esquire
Email: MCordone@stradley.com
Email: MDorval@stradley.com

*Counsel for Saint Joseph's University*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : |
| | :    Case No. 08-13555 (JMP) |
| Debtors. | : |
| | :    (Jointly Administered) |

**LIMITED OBJECTION OF SAINT JOSEPH'S UNIVERSITY TO THE
ASSUMPTION OF TERMINATED SWAPS AS PART OF THE CONFIRMATION
OF THE JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS
INC. AND ITS AFFILIATED DEBTORS**

Saint Joseph's University ("SJU"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to confirmation of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. dated August 31, 2011 [Docket No. 19629] (the "Plan") but only to the extent that it provides for the assumption of certain terminated derivative contracts in which SJU is a counterparty. In support of this Objection, SJU states the following:

## FACTUAL BACKGROUND

1.      On or about May 16, 2006, SJU and Lehman Brothers Special Financing, Inc. ("LBSF") entered into a certain ISDA Master Agreement (Local Currency – Single Jurisdiction) as amended and supplemented (the "ISDA Agreement") which had the effect of creating a master form of agreement for the parties to enter into specific transactions to exchange certain variable interest rate obligations for fixed interest rate obligations.  Pursuant to two transaction confirmations (the "SJU Transactions"), the first dated May 16, 2006 and the second dated June 13, 2008, SJU agreed to make certain fixed interest rate payments to LBSF in exchange for agreed-upon variable rate payments from LBSF in two different notional amounts relating to bonds issued by SJU.

2.      Pursuant to the terms and conditions of an accompanying guarantee, Lehman Brothers Holdings Inc. ("LBHI") agreed to act as credit support provider, thereby guaranteeing the obligations of LBSF under the SJU Transactions.

3.      On September 15, 2008, LBHI filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §101 et seq.) (the "Bankruptcy Code").

4.      On September 17, 2008, SJU sent a letter to LBSF notifying it that as a result of LBHI's bankruptcy filing and as a result of LBSF's failure to make a scheduled payment to SJU on September 15, 2008, more than one "Event of Default" (as defined in the ISDA Agreement) had occurred under the ISDA Agreement.  In the letter, SJU reserved all of its rights and remedies as a result of the occurrence of the events that each constituted an Event of Default.

5.      Thereafter, on October 3, 2008, LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

- 2 -

6.      On November 13, 2008, LBHI and its affiliated debtors filed Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "Derivative Motion") pursuant to which LBHI and the affiliated debtors sought authorization to establish elaborate procedures designed to permit the debtors to more efficiently assume and assign the numerous derivative contracts between LBSF and numerous counterparties, including SJU.

7.      SJU elected not to object to the Derivative Motion and, instead, supported the efforts of LBSF to attempt to find acceptable entities to assume the obligations of LBSF under the ISDA Agreement and SJU Transactions, replace LBHI as credit support provider and provide SJU with the interest rate protections that it contracted for when it entered into the ISDA Agreement and SJU Transactions.

8.      On December 16, 2008, the Court entered an order approving the relief requested in the Derivative Motion and establishing procedures pursuant to which LBSF had the opportunity to assume and assign derivative contracts, including the ISDA Agreement and SJU Transactions.

9.      At the end of December 2008 and the beginning of January 2009, counsel for SJU began requesting information from LBSF's counsel to determine what actions LBSF had taken to assume and assign the ISDA Agreement and SJU Transactions, including offering to help facilitate the assignment of the ISDA Agreement and SJU Transactions to acceptable replacements for LBSF and LBHI.

- 3 -

10.    Despite repeated efforts, counsel for SJU was unable to obtain any confirmation from LBSF or its counsel that it had made any progress in assuming and assigning the ISDA Agreement and SJU Transactions.

11.    After affording LBSF a reasonable opportunity to assume and assign the ISDA Agreement and SJU Transactions, without any tangible progress, SJU began exploring an early termination of the SJU Transactions.  Shortly thereafter, SJU employed a financial advisor, PFM Asset Management, LLC, to obtain market quotes for the SJU Transactions under the ISDA Agreement and to determine the "Early Termination Payment" that would be required to terminate the SJU Transactions.

12.    SJU's financial advisor was unable to obtain market quotes for the SJU Transactions because they contain certain provisions that are now disfavored.  In particular, SJU is never required to post collateral for its obligations under the ISDA Agreement and SJU Transactions.  In seeking market quotes, the financial advisor for SJU was repeatedly advised that market quotes would only be given if SJU agree to amend the ISDA Agreement and SJU Transactions.  Without such an amendment, the financial institutions most active in the derivatives market refused to bid on the SJU Transactions.

13.    Because SJU's financial advisor was unable to obtain the requisite number of market quotes for the SJU Transactions, SJU's  financial advisor calculated the payment due upon early termination (the "Early Termination Payment") based upon the "Loss" (as defined in the ISDA Agreement) methodology set forth in the ISDA Agreement which is to be applied when market quotations cannot be obtained.

14.    On July 7, 2009, after its financial advisor completed its report and loss methodology calculations, SJU exercised its right to declare an "Early Termination" of the SJU

- 4 -

BUSINESS # 1490307 v.2

Transactions pursuant to Section 6 of the ISDA Agreement.  While Section 8(c) states that the termination of the SJU Transactions does not terminate the ISDA Agreement, the underlying SJU Transactions were terminated, and the parties thereafter had no obligations under an ISDA Agreement to which there were no remaining confirmed transactions.

15.    On July 15, 2009, SJU sent a letter to LBSF, LBHI and their counsel explaining how SJU calculated the Early Termination Payment, and on the same date, SJU sent to LBSF a wire transfer in the amount of $4,637,491.93, representing payment in full of the Early Termination Payment plus interest, as calculated by SJU's financial advisor using the "Loss" methodology.

16.    LBSF has retained the Early Termination Payment since it was wire transferred to it in July 2009, and has never offered to return to SJU all or any portion of the Early Termination Payment as part of its attempt to assume the SJU Transactions under the ISDA Agreement.

17.    Instead of retuning all or any portion of the Early Termination Payment made by SJU, LBSF instead sent SJU letters dated July 8, 2009 and July 14, 2009, asserting that it, as the defaulting party under the ISDA Agreement, somehow had, and reserved, the right to declare SJU's termination of the SJU Transactions invalid.

18.    As part of its termination of the SJU Transactions, SJU has entered into a replacement ISDA agreement and transactions with a third party to provide the interest rate protection that SJU had originally obtained from LBSF prior to the defaults by LBHI and LBSF.

19.    On or about August 31, 2011, LBHI and LBSF filed its Plan, and on October 25, 2011, LBHI and LBSF filed a plan supplement pursuant to which they have identified the ISDA Agreement and SJU Transactions as derivative contracts that they intend to assume under the Plan.  LBSF served its notice of proposed assumption of executory contracts upon SJU on

BUSINESS # 1490307 v.2

October 27, 2011, which specifically states that LBSF does not intend to repay to SJU any of the Early Termination Payment as part of the assumption of the SJU Transactions and requisite cure of the defaults thereunder.

## LIMITED OBJECTION

20.    SJU does not oppose confirmation of the Plan.  SJU's Objection only opposes (i) the assumption of the ISDA Agreement and SJU Transactions and (ii) the proposal not to pay any cure amount, whether the attempt to assume is part of the confirmation of the Plan or proceeds separately.

21.    Although the term "executory contract" is not defined in the Bankruptcy Code, the Second Circuit has stated that it is a contract under which the obligations of the debtor and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach of the contract and excuse the other from performing.  *COR Route 5 Co., LLC v. Penn Traffic Co.*, 524 F.3d 373, 379-80 (2d Cir. 2008).

22.    A contract that has terminated by operation of law or pursuant to the terms and conditions of the contract itself does not fit within the *Penn Traffic* definition of an executory contract because performance is no longer required of both parties.  If a contract is not executory, it may not be assumed by a debtor  pursuant to 11 U.S.C. § 365(a).  *See In re Calpine Corp.,* 2008 WL 3154763 at *5 (Bankr. S.D.N.Y. 2008) (where no material obligations exist on both sides, a contract is not executory and not capable of assumption under Section 365 of Bankruptcy Code); *In re Balco Equities Ltd., Inc.,* 312 B.R.734, 750 (Bankr. S.D.N.Y. 2004) (citing *In re Child World, Inc.,* 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992) (contract that expired cannot be assumed).

BUSINESS # 1490307 v.2

23.     The SJU Transactions were validly terminated by SJU in accordance with the provisions of the ISDA Agreement, and LBSF has accepted and retained the $4,637,491.93 Termination Payment made by SJU.  As such, no obligations remain for either party under the ISDA Agreement or the SJU Transactions.  Moreover, for the more than two years since SJU terminated, LBSF has taken no action to refund any portion of the money paid, or even contest the appropriateness of the Early Termination Payment.  Therefore, even if LBSF believed that it had a basis to contest the Early Termination Payment or the termination itself, which SJU contends LBSF does not, the issue is limited to the amount of the Early Termination Payment itself, because there can be no dispute that several Events of Default occurred, termination notices were sent, a significant Early Termination Payment was accepted by LBSF and the SJU Transactions and ISDA Agreement were replaced with a different derivatives provider more than two years ago.  In the more than 27 months since SJU's termination, there have been no obligations that either party was required to or has performed or sought to enforce.  Accordingly, there is no performance due under the SJU Transactions or the ISDA Agreement that is capable of assumption pursuant to Section 365.

24.     Moreover, LBSF does not need to attempt to assume the non-executory SJU derivative contracts simply to preserve whatever claims it believes exist against SJU for additional amounts due.  LBSF's fear of a rejection of the SJU Transactions under Section 365(a) resulting from LBSF not assuming these derivative contracts fails to provide justification for the assumption of these non-executory derivative contracts.  The rejection of a contract under Section 365 does not terminate the contract – it merely constitutes a pre-petition breach of the contract, which pre-petition breach already existed in this case as a result of the bankruptcy of the credit support provider and non-payment by LBSF.  *See Med. Malpractice Ins. Ass'n v.*

- 7 -

*Hirsch,* 114 F.3d 379, 386-87 (2d Cir. 1997); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 703 (Bankr. S.D.N.Y 1992). The assumption of these non-executory terminated derivative contracts is not permitted and completely unnecessary, and will only serve to increase the litigation costs incurred by LBSF and all of the counterparties without addressing the real issue of whether the appropriate Early Termination Payment was made.

25.    The present situation is distinguishable from *Lehman Brothers Special Financing Inc. v. BNY Corp. Trustee Services Limited,* 422 B.R. 407 (Bankr. S.D.N.Y. 2010) (hereinafter "*BNY Corp.*") case decided by this Court on January 25, 2010.   Unlike the ISDA and other agreements at issue in *BNY Corp.*, after termination of the SJU Transactions, there were no obligations under the ISDA Agreement that remained and no obligations between the parties under any derivative-related agreements.   All that may have remained after the termination is a dispute over the amount of the Early Termination Payment.   In contrast, in *BNY Corp.*, the parties had numerous other responsibilities to each other under other documents relating to their transactions.   As such, once the SJU Transactions were terminated, only SJU had a payment obligation based upon the calculation methodologies set forth in the ISDA Agreement, and SJU believes that it has fully performed.   If LBSF disputes whether SJU has fully performed, it has a remedy in the form of a claim without regard to any attempt to assume or reject the ISDA Agreement or the SJU Transactions.

26.    *BNY Corp.* is not applicable to a determination about whether the ISDA Agreement and SJU Transactions remained executory after termination by SJU, and the facts of the instant case and *BNY Corp.* are so dissimilar that it does not lend support to LBSF's contention that the ISDA Agreement and SJU Transactions are executory or capable of being assumed under 11 U.S.C. § 365(a), nor does *BNY Corp.* suggest that assuming these derivative

- 8 -

contracts would be a sound exercise of LBSF's business judgment as is required in the Second Circuit. *See Nostas Assocs. v. Costich,* 78 F.3d 18, 25 (2d Cir. 1996).

27.    To the extent that they were ever executory, the ISDA Agreement and SJU Transactions were no longer executory and cannot be assumed now by LBSF pursuant to 11 U.S.C. §365(a) because they were validly terminated on July 7, 2009, leaving no obligations thereunder for both parties to perform.

28.    To the extent that this Court finds that the ISDA Agreement and SJU Transactions are executory, which it should not for the foregoing reasons, LBSF must be ordered to (i) return the Early Termination Payment to SJU with interest as part of the cure and reinstatement of the SJU Transactions and (ii) find a suitable and appropriate replacement for LBHI as credit support provider for the SJU Transactions, as they currently exist.  The cost that SJU was forced to incur to obtain a replacement hedge to offset the interest protection that LBSF and LBHI have not provided for over 3 years must also be factored into the cure amount that LBSF should have to pay to SJU to assume the ISDA Agreement and SJU Transactions.  Accordingly, the $0 cure amount proposed by LBSF is wholly inadequate, and assumption must be denied until LBSF repays to SJU $4,637,491.93, plus interest since July 15, 2009, and all damages sustained by SJU as a result of LBSF and LBHI not providing the interest rate protection bargained for under the SJU Transactions.  Likewise, LBSF must identify the entity that it proposes to adequately replace LBHI as credit support provider and afford SJU the opportunity to evaluate that entity and its financial strength to determine if it is an adequate replacement

BUSINESS # 1490307 v.2

WHEREFORE, SJU respectfully requests that this Court deny the request of LBSF to assume the SJU ISDA as part of the confirmation of its Plan and grant SJU such other relief as is just.

<div style="margin-left:40%">

STRADLEY, RONON, STEVENS & YOUNG, LLP

</div>

Dated:  November 9, 2011          By: /s/  Mark J. Dorval

<div style="margin-left:45%">

Michael J. Cordone, Esquire
Mark J. Dorval, Esquire
2600 One Commerce Square
Philadelphia, PA 19103-7098
Phone:  (215) 564-8000
Fax: (215) 564-8120

*Counsel for Saint Joseph's University*

</div>

BUSINESS # 1490307 v.2

## CERTIFICATE OF SERVICE

I, Michael J. Cordone, do certify that on November 9, 2011, I caused a true and

correct copy of the foregoing to be served via overnight delivery service upon the following:

Chambers of The Honorable James M. Peck
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY  10004

Office of the United States Trustee (Region 2)
33 Whitehall St., 21st Floor
New York, NY  10004
Attn:  Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Anrea Schwartz,
Esq.

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153
Attn:  Jacqueline Marcus, Esq.

Milbank, Tweed, Hadley and McCloy LLP
1 Chase Manhattan Plaza
New York, NY  10005
Attn:  Dennis F. Dunne, Dennis O'Donnell, Esq. and Evan R. Fleck, Esq.


/s/  Michael J. Cordone
Michael J. Cordone