**HEARING DATE AND TIME:  December 6, 2011 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE:  November 10, 2011 at 4:00 p.m. (Eastern Time)**

Steve Jakubowski
THE COLEMAN LAW FIRM
77 West Wacker Dr., Suite 4800
Chicago, Illinois 60601
Telephone:  (312) 606-8641
Facsimile:  (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorney for Robert A. Schoellhorn Trust,

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                          :
**In re**                                 :              **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* :         **08-13555 (JMP)**
                                          :
                                          :
                    **Debtors.**          :              **(Jointly Administered)**
                                          :
------------------------------------------------------------x

**OBJECTION OF THE ROBERT A. SCHOELLHORN TRUST TO DEBTORS' PROPOSED**
**ASSUMPTION OF DERIVATIVE CONTRACTS AND PROPOSED CURE AMOUNT**

The Robert A. Schoellhorn Trust (the "Trust"), by and through its attorneys, files this

objection to the proposed assumption of all derivative contracts by the above-captioned debtors

(the "Debtors") and the proposed cure amount of $0.00 if such assumption were to be permitted.

In support thereof, the Trust states as follows:

**INTRODUCTION**

The two derivative contracts that were executory as of the filing of the Debtors' chapter

11 cases in September 2009 are no longer executory.  One was terminated under Bankruptcy

Code section 560 based on formal written notice of termination sent to the Debtors shortly after

the petition date.  The second expired by its terms in March 2010.  Neither derivative contract,

therefore, is executory within the meaning of Bankruptcy Code section 365, so neither are

capable of being assumed by the Debtors.  Additionally, even if the Court authorized

assumption, the stated cure amounts of $0.00 for the contracts are incorrect, and the Debtors

should be required pay as cure amounts the sums reflected in the Trust's filed proofs of claim

(roughly $1.5 million in the aggregate).

## BACKGROUND

1.      The Trust was a party to a prepaid forward contract (the "Hospira Prepaid

Contract") with Lehman Brothers OTC Derivatives, Inc. ("LOTC"), dated March 26, 2008

relating to 100,000 shares of Hospira, Inc. ("Hospira").  The Hospira Prepaid Contract was not

terminated early by either the Trust or LOTC, but expired according to its terms on or about the

March 25, 2010 termination date of the contract (the "Hospira Termination Date").  A copy of

the Hospira Prepaid Contract is attached hereto as **Exhibit A**.

2.      The Trust also was a party to a prepaid forward contract (the "ABT Prepaid

Contract") with LOTC dated February 8, 2007 in respect of 100,000 shares of Abbott

Laboratories, Inc. ("ABT").  As permitted under 11 U.S.C. § 560, the Trust exercised its rights to

terminate the ABT Prepaid Contract effective November 12, 2008 (the "ABT Termination

Date").[1]  A copy of the Trust's termination letter of November 12, 2008 is attached hereto as

**Exhibit B** (the "ABT Termination Letter").  A copy of the ABT Prepaid Contract is attached

hereto as **Exhibit C**.

---

[1]    11 U.S.C. § 560 provides that "the exercise of any contractual right of any … financial participant to cause the
liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind
specified in section 365(e)(1) of this title or to offset or net out any termination values or payment amounts
arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements
shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order or a
court or administrative agency in any proceeding under this title."

3.      The Trust filed proofs of secured claim for amounts due under both the ABT Prepaid Contract and the Hospira Prepaid Contract.  The Debtors objected to these proofs of secured claim in their 186th and 187th omnibus objections.  The Trust responded to these objections and further explained the basis for its security interest and quantified the specific amounts due under these terminated prepaid contracts.  A status hearing on the Debtors' objections to these claims has been continued to November 30, 2011.

4.      On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan of Reorganization.

5.      On October 27, 2011, the Debtors served the Trust with notice of its intent to assume all derivatives contracts pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  The schedule attached to the notice claimed that nothing ("$0.00") was owed as a cure amount if assumption were to be authorized by this Court.  A copy of this notice is attached hereto as **Exhibit D** (the "<u>Notice of Assumption</u>").

<u>OBJECTION</u>

6.      This Court stated earlier in these cases that "[t]he Second Circuit has characterized an executory contract as one on which performance remains due to some extent on both sides."  *Lehman Bros. Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd. (In re Lehman Bros. Holdings, Inc.)*, 422 B.R 407, 415 (Bankr. S.D.N.Y. 2010).  Conversely, contracts that are no longer executory cannot be assumed.  *In re Sanshoe Worldwide Corp.,* 993 F.2d 300 (2d Cir. 1993); *In re 611 Sixth Avenue Corp.,* 191 B.R. 295, 301 (Bankr. S.D.N.Y. 1996).  It is also well established that "where the only performance that remains is the payment of money, the contract will not be found to be executory."  *In re Spectrum Info. Technologies, Inc.* 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996).

7.      Neither the ABT Prepaid Contract nor the Hospira Prepaid Contract are executory contracts because they terminated by their terms in 2008and 2010 and no performance remains due under the contracts other than the payment of monies due the Trust from the Debtors (as reflected in the Trust's proofs of claim).

8.      The Trust also objects to the cure amount of "$0.00" stated in the Notice of Assumption.  As reflected in the Trust's filed proofs of claim and the Trust's responses to the Debtors' objections to the Trust's claims, roughly $1.5 million is owed the Trust under these contracts.  Consequently, if the Debtors are authorized to assume these prepaid contracts, then the cure amount should be the amount reflected in the Trust's proofs of claim, not the $0.00 claimed owing by the Debtors.

## **<u>CONCLUSION</u>**

WHEREFORE, for the reasons stated herein, the Trust objects to assumption of any derivative contract between the Trust and the Debtors.  If, however, assumption is authorized, then the Trust objects to any cure amount that is not commensurate with the amounts reflected in the Trust's filed proofs of claim.

Dated:  November 9, 2011                                          ROBERT A. SCHOELLHORN TRUST

                                                                                    By:____/s/ Steve Jakubowski_____
                                                                                            One of Its Attorneys

                                                                                    Steve Jakubowski (admitted *pro hac vice*)
                                                                                    THE COLEMAN LAW FIRM
                                                                                    77 West Wacker Drive, Suite 4800
                                                                                    Chicago, IL  60601
                                                                                    Tel:  (312) 606-8641
                                                                                    Fax:  (312) 444-1028
                                                                                    sjakubowski@colemanlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

     I, Steve Jakubowski, hereby certify that on this 9th day of November, 2011, I caused to be served a copy of the **foregoing Objection of the Robert A. Schoellhorn Trust to the Debtors' Proposed Assumption of Derivative Contracts and Proposed Cure Amount** to be served by this Court's CM/ECF System and via Federal Express to the following:

Chambers of the Honorable James M. Peck
United States Bankruptcy Court
Court Room 601
One Bowling Green
New York, NY 10004

Jacqueline Marcus, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Tracy Hope Davis, Esq.
Elisabetta Gasparini, Esq.
Andrea Schwartz, Esq.
Office of the United States Trustee, Region 2
33 Whitehall Street, 21st Floor
New York, NY 10004

Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.
Milbank, Tweed & McCloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005


                                            ___/s/ Steve Jakubowski_____
                                                  Steve Jakubowski

# <u>EXHIBIT A</u>

# LEHMAN BROTHERS

**Transaction**

Date:         26 March, 2008

To:           Robert A Schoellhorn Trust
              Marathon Coach, 91333
              Coburg Industrial Way
              Coburg, OR 97408-9492

From:         Lehman Brothers, Inc acting as Agent
              Lehman Brothers OTC Derivatives Inc., acting as Principal
              Andrew Yare - Confirmations Group
              Facsimile:      (+1) 646-885-9546 (United States of America)
              Telephone:      646-333-9493

Ref. Numbers: Risk ID: N08031857 / Effort ID: N1984585 / Global Deal ID: 3728791

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers OTC Derivatives Inc. ("Party A") and Robert A Schoellhorn Trust ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below. **Lehman Brothers OTC Derivatives Inc. is not a member of the Securities Investor Protection Corporation.**

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of 2 September, 2005, as amended and supplemented from time to time, between Party A and Party B (the "Agreement"). All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2006 ISDA Definitions (the "Swap Definitions", and together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

Lehman Brothers
745 SEVENTH AVENUE,
NEW YORK NY 10019

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Agent: | Lehman Brothers Inc. ("LBI") is acting as agent on behalf of Party A and Party B for this Transaction. LBI has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. |
| Trade Date: | March 20, 2008 |
| Seller: | Party B |
| Buyer: | Party A |
| Shares: | The common stock of Hospira, Inc. ("Issuer"); Ticker symbol: HSP |
| Number of Shares: | 100,000 |
| Prepayment: | Applicable |
| Prepayment Amount: | USD3,877,330 |
| Prepayment Date: | March 26, 2008 |
| Variable Obligation: | Applicable |
| Forward Floor Price: | USD43.24 |
| Forward Cap Price: | USD51.89 |
| Exchange(s): | New York Stock Exchange |
| Related Exchange(s): | All Exchanges |
| Disrupted Day: | The definition of "Disrupted Day" in Section 6.4 of the Equity Definitions shall be amended by adding the following sentence after the first sentence: "A Scheduled Trading Day on which a Related Exchange fails to open during its regular trading session will not be a Disrupted Day if the Calculation Agent determines that such failure will not have a material impact on Party A's ability to unwind any related hedging transactions." |

**Valuation:**

| | |
|---|---|
| Valuation Time: | The close of trading on the Exchange, without regard to extended trading hours. |

Valuation Date:                                    March 22, 2010

**Settlement Terms:**

Settlement Method Election:                Applicable

Electing Party:                                    Seller

Settlement Method Election Date:       March 18, 2010

Election Amount:                               USD Cash equal to the lesser of (i) 50% *multiplied by* the Number of Shares *multiplied by* the Forward Floor Price or (ii) 150% *multiplied by* the Number of Shares *multiplied by* the closing price per Share quoted by the Exchange on the Exchange Business Day immediately preceding the Settlement Method Election Date at the Valuation Time, without regard to extended or after hours trading.

Default Settlement Method:                Physical Settlement

**Physical Settlement Terms:**

Physical Settlement:                           Applicable

**Cash Settlement Terms:**

Cash Settlement:                                Applicable, provided that Party B (i) delivers written notice of such election to Party A on or prior to the Settlement Method Election Date and (ii) pays the Election Amount in immediately available funds on the Settlement Method Election Date.   For the avoidance of doubt, Physical Settlement shall apply should Party B not provide such notice and pay the Election Amount as described herein.

If Cash Settlement applies, then Party B will pay the Cash Settlement Amount *minus* the Election Amount received on the Settlement Method Election Date to Party A on the Cash Settlement Payment Date. If the Election Amount exceeds the Cash Settlement Amount, then Party A will pay the excess to Party B on the Cash Settlement Payment Date.

Settlement Currency:                          USD

Settlement Price:                               The official closing price per Share quoted by the Exchange at the Valuation Time on the Valuation Date.

Cash Settlement Payment Date:         Three (3) Currency Business Days after the Valuation Date

**Dividends:**

Dividend Amount:                    Ex-Amount, including the Relevant Rate of Return.
                                    For purposes of this definition, "gross cash dividends"
                                    shall include all cash dividends.

Dividend Period:                    Second Period

Relevant Rate of Return:            The return that may be earned on an investment of the
                                    Ex-Amount at the Relevant Rate for the number of
                                    days from and including the ex-dividend date to and
                                    including the final day of the Dividend Period. The
                                    "Relevant Rate" means the prevailing overnight USD-
                                    Federal Funds-H.15 rate.

Dividend Adjustment:                On each related ex-dividend date, both the Forward
                                    Cap Price and the Forward Floor Price shall be
                                    adjusted by subtracting the Dividend Amount from
                                    each.

Excess Dividend Amount:             The sum of all Dividend Amounts multiplied by the
                                    Number of Shares

**Share Adjustments:**

Method of Adjustment:               Calculation Agent Adjustment

**Extraordinary Events:**

**Consequences of Merger Events:**

Share-for-Share:                    Modified Calculation Agent Adjustment

Share-for-Other:                    Cancellation and Payment

                                    (Calculation Agent Determination)

Share-for-Combined:                 Modified Calculation Agent Adjustment

Tender Offer:                       Applicable

**Consequences of Tender Offers:**

Share-for-Share:                    Modified Calculation Agent Adjustment

Share-for-Other:                    Modified Calculation Agent Adjustment

Share-for-Combined:                 Modified Calculation Agent Adjustment

New Shares:                         The definition of "New Shares" in Section 12.1 of the
                                    Equity Definitions shall be amended by deleting
                                    subsection (i) in its entirety and replacing it with the
                                    following: "(i) publicly quoted, traded or listed on the
                                    New York Stock Exchange, the American Stock
                                    Exchange or the NASDAQ Global Select Market or
                                    the NASDAQ Global Market and"

Tender Offers:

The definition of "Tender Offer" in Section 12.1 of the Equity Definitions will be amended by replacing the phrase "outstanding voting shares of the Issuer" in the fourth line thereof with "outstanding Shares"

Modified    Calculation    Agent
Adjustment:

The definition of "Modified Calculation Adjustment" in Sections 12.2 and 12.3 of the Equity Definitions shall be amended by adding the following italicized language after the stipulated parenthetical provision: "(including adjustments to account for changes in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) *from the Announcement Date to the Merger Date (Section 12.2) or Tender Offer Date (Section 12.3)*,"

Composition of Combined Consideration:

Not Applicable

Nationalization, Insolvency or Delisting:

Cancellation and Payment

(Calculation Agent Determination)

Delisting:

The definition of "Delisting" in Section 12.6 of the Equity Definitions shall be deleted in its entirety and replaced with the following: "'Delisting' means that the Exchange announces that pursuant to the rules of such Exchange, the Shares cease (or will cease) to be listed, traded or publicly quoted on the Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted on the New York Stock Exchange, the American Stock Exchange or the NASDAQ Global Select Market or the NASDAQ Global Market"

**Additional Disruption Events:**

Change in Law:

Not Applicable

Failure to Deliver:

Applicable

Insolvency Filing:

Applicable

The definition of "Insolvency Filing" in Section 12.9 of the Equity Definitions shall be amended by deleting the clause "provided that such proceedings instituted or petitions presented by creditors and not consented to by the Issuer shall not be deemed an Insolvency Filing" at the end of such definition and replacing it with the following: "; or it has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by a creditor and such proceeding is not dismissed, discharged, stayed or restrained in each case within fifteen (15) days of the

institution or presentation thereof."

Section 12.9(b)(i) of the Equity Definitions is hereby amended by adding the following sentence at the end: "If neither party elects to terminate the Transaction, the Calculation Agent may adjust the terms of the Transaction upon the occurrence of such an event pursuant to Modified Calculation Agent Adjustment (as if such event were a Tender Offer)."

Hedging Disruption: 

Applicable

Increased Cost of Hedging: 

Applicable

Increased Cost of Stock Borrow: 

Applicable. Section 12.9(a)(viii) of the Equity Definitions shall be deleted in its entirety and replaced with the following:

"Increased Cost of Stock Borrow" means that the Hedging Party would earn a Stock Collateral Rate that is less than the Initial Stock Loan Rate. For greater certainty, the Stock Collateral Rate will be deemed to be less than the Initial Stock Loan Rate if the spread below the applicable floating rate increases.

Section 12.9 (b)(v) of the Equity Definitions is amended by deleting all references to "a rate equal to or less than the Initial Stock Loan Rate" and replacing them with "a Stock Collateral Rate that is equal to or greater than the Initial Stock Loan Rate".

"Stock Collateral Rate" means the rate of return on collateral posted in connection with any Shares borrowed in connection with a Transaction, net of any costs or fees (including, for greater certainty, any lender's borrow fees).

Initial Stock Loan Rate: 

The Stock Collateral Rate on the Trade Date, expressed as a floating reference rate plus or minus a spread, as determined by the Calculation Agent and as adjusted by the Calculation Agent to reflect any subsequent Price Adjustment due to an Increased Cost of Stock Borrow.

Loss of Stock Borrow 

Section 12.9(a)(vii) and Section 12.9(b)(iv) of the Equity Definitions are amended by deleting all references to "a rate equal to or less than the Maximum Stock Loan Rate" and replacing them with "a Stock Collateral Rate that is equal to or greater than the Minimum Stock Loan Rate." For greater certainty, the Stock Collateral Rate will be deemed to be greater than the Minimum Stock Loan Rate if the spread

below the applicable floating rate decreases.

Minimum Stock Loan Rate:

The Stock Collateral Rate on the Trade Date, expressed as a floating reference rate plus or minus a spread, as determined by the Calculation Agent.

Hedging Party:

Party A   For the avoidance of doubt, Party A shall be the Hedging Party where applicable in connection with any Extraordinary Event.

Determining Party:

Party A   For the avoidance of doubt, Party A shall be the Determining Party where applicable in connection with any Extraordinary Event.

Non-Reliance:

Applicable

Agreements and Acknowledgments
Regarding Hedging Activities:

Applicable

Additional Acknowledgments:

Applicable

Additional Provision:

If a Merger Date or Tender Offer Date is scheduled to be after the Expiration Date, the Calculation Agent will determine the economic effect on the theoretical value of the Transaction of the announcement of a potential Merger Event or Tender Offer (including without limitation any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) from the Announcement Date to the Valuation Date or the Final Averaging Date, as applicable. If such economic effect is material, the Calculation Agent will adjust the terms of the Transaction to reflect such economic effect.

Collateral:

Party B shall Transfer the Independent Amount to Party A on or prior to the Trade Date (which Independent Amount shall constitute Eligible Collateral with respect to Party B). "Independent Amount" means, with respect to Party B for this Transaction, an amount of Shares equal to the Number of Shares. The Independent Amount shall include all Distributions except for ordinary cash dividends up to and including the Expected Dividend with respect to all Posted Collateral. Upon four Business Days notice, Party B may, in accordance with the terms of the Credit Support Annex, Transfer Equivalent Collateral as Substitute Credit Support. The parties agree that the transfer of the Independent Amount constitutes a delivery of Shares subject to the Representation and Agreement set forth in Section 9.11 of the Equity Definitions. The parties agree that Party B's Exposure (as defined in the Credit Support Annex) under this Transaction shall be zero. The

parties agree that Party A's Exposure under this Transaction shall be zero upon Party B's transfer to Party A of the Independent Amount with respect to Party B. Notwithstanding any provision to the contrary in the Credit Support Annex, the Independent Amount shall be delivered by Party B without regard to the Minimum Transfer Amount and Party A shall have no obligation to return the Independent Amount to Party B until all of Party B's obligations with respect to this Transaction have been satisfied.

"Equivalent Collateral" means Collateral of a type and in an amount satisfactory to Party A, in its sole discretion.

Party A and Party B agree that, notwithstanding any provision to the contrary in the Agreement (including, but not limited to, Paragraph 6(c)(i) of the Credit Support Annex, if any), Party A may not rehypothecate any Shares constituting Posted Collateral and the Independent Amount delivered to Party A by Party B pursuant to this Transaction. For the avoidance of doubt, this provision shall not limit Party A's right to pledge all or a portion of the Shares to third parties.

**Miscellaneous:**

**Additional Provision:**

The Agent will furnish Party B upon written request a statement as to the source and amount of any remuneration received or to be received by the Agent in connection with the Transaction evidenced hereby.

Additional Representations and Warranties of Party B:

(i) Party B represents to Party A (at all times until termination of this Transaction) that it is an "eligible contract participant" within the meaning of Section 1a(12) of the Commodity Exchange Act.

(ii) neither Party A nor any of its affiliates has advised Party B with respect to any legal, regulatory, tax, accounting or economic consequences arising from this Transaction, and neither Party A nor any of its affiliates is acting as agent (other than LBI as dual agent if specified above), or advisor for Party B in connection with this Transaction.

(iii) Party B (A) is not an "affiliate" of the Issuer, as such term is defined in Rule 144 under the Securities Act of 1933, as amended (the "1933 Act"), (B) nor is it a counterparty entering into this Transaction on behalf of the Issuer or any affiliate thereof, (C) nor is

it required to file reports with respect to the Shares or the Issuer pursuant to Sections 13(d) or 16(a) of the Securities Exchange Act of 1934, as amended (the "1934 Act");

(iv) Party B shall notify Party A immediately of its intention to take any action that could reasonably be expected to result in Party B becoming (A) an "affiliate" of the Issuer, within the meaning of Rule 144 under the 1933 Act, or (B) an "insider" of the Issuer within the meaning of Section 16 under the 1934 Act. Party B shall not take any such action without Party A's permission. Failure to notify Party A or to obtain Party A's permission in connection with any action taken in violation of this provision shall constitute an Additional Termination Event with respect to which Party B shall be the sole Affected Party;

(v) Party B is not in possession of any material non-public information concerning the business, operations or prospects of the Issuer and was not in possession of any such information at the time of placing any order with respect to the Transaction.

"Material" information for these purposes is any information to which an investor would reasonably attach importance in reaching a decision to buy, sell or hold any securities of the Issuer(s).

(vi) Party B's entry into this Transaction, any sale of Shares hereunder and Party A's exercise of all rights and remedies hereunder complies with and is not in any way limited by (A) any trading or "blackout" policies of the Issuer or (B) any other conditions or restrictions imposed by the Issuer on the sale, transfer, loan, pledge, disposition or other use by its employees of any Shares;

Calculation Agent:                     Lehman Brothers, Inc

THIS TRANSACTION HAS BEEN ENTERED INTO FOR INVESTMENT AND HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, OR ANY OTHER UNITED STATES FEDERAL OR STATE SECURITIES LAWS; THIS TRANSACTION MAY NOT BE SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF APPROPRIATE REGISTRATION UNDER SUCH SECURITIES LAWS EXCEPT IN A TRANSACTION EXEMPT FROM OR NOT SUBJECT TO THE REGISTRATION REQUIREMENTS OF SUCH SECURITIES LAWS.

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number 646-885-9546 (United States of America), Attention: Documentation.

Yours sincerely,                                          Accepted and agreed to:

Lehman Brothers OTC Derivatives Inc.                      Robert A Schoellborn Trust

By:                                                       By:
Name: Anatoly Kozlov                                      Name:
Title:  Authorized Signatory                              Title:

Execution time will be furnished upon Counterparty's written request

**<u>EXHIBIT B</u>**



STEVE JAKUBOWSKI
OF COUNSEL
DIRECT DIAL: (312) 606-8641
EMAIL: sjakubowski@colemanlawfirm.com
BLOG: www.bankruptcylitigationblog.com

November 12, 2008

Lehman Brothers OTC Derivatives, Inc.
    c/o Lehman Brothers, Inc.
        Corporate Advisory Division
        Transaction Management Group
        New York, New York 10019
ATTN:  Documentation Manager

**RE:**   *Robert A. Schoellhorn Trust / Derivative Collateral Account 953-00031*
*(LBI as Custodian): Notice of Default and Early Termination of*
*Prepaid Forward Contract Dated February 8, 2008 for 100,000 Shares*
*of Abbott Labs*

To Whom It May Concern:

The Robert A. Schoellhorn Trust (the "Trust") is a party to a certain prepaid
forward contract with Lehman Brothers OTC Derivatives, Inc. ("LOTC") dated
February 8, 2007 for 100,000 shares of Abbott Laboratories ("ABT") (said contract
hereinafter being referred to as the "ABT Prepaid Forward Contract"). The
communication confirming the terms and conditions of this prepaid forward
contract (the "Confirmation") states that said Confirmation "supplements, forms
part of, and is subject to, the ISDA Master Agreement dated as of September 2,
2005, as amended and supplemented from time to time, between [the Trust and
LOTC]." A copy of the Confirmation, the ISDA Master Agreement, and the
"Schedule" and "Credit Support Annex" thereto (collectively, the "Agreements") are
all attached hereto. Capitalized terms used herein and not otherwise defined shall
have the meaning set forth in the Agreements.

Section 5(a)(vii) of the ISDA Master Agreement provides that the bankruptcy filing
by LOTC (provided that it has not been dismissed or stayed within 30 days of the
filing) constitutes an Event of Default under the Agreements. Section 6(a) of the
ISDA Master Agreement provides that upon the occurrence of an Event of Default
that "is then continuing," the Trust may "designate a day not earlier than the day
such notice is effective as an Early Termination Date in respect of all outstanding
Transactions." Section 12(a)(i) of the ISDA Master Agreement provides that the
notice "will be deemed effective … on the date it is delivered."



Lehman Brothers OTC Derivatives, Inc.
Lehman Brothers, Inc.
Corporate Advisory Division
Transaction Management Group
November 12, 2008
Page 2

On October 3, 2008, LOTC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. LOTC's chapter 11 filing has not been stayed, dismissed, discharged, or restrained as of the date hereof. Accordingly, pursuant to the Trust's rights under the Agreements, the Trust hereby declares an Event of Default under the Agreements, effective as of the delivery date of this notice, November 13, 2008, and designates November 13, 2008 as the "Early Termination Date" of the ABT Prepaid Forward Contract.

The Trust has determined that the value of the 100,000 share ABT Prepaid Forward Contract as of today (per Bloomberg) is $5,052,500. Lehman Brothers, Inc., as custodian, is holding 100,000 shares of ABT for the account of the Trust. In settlement of the respective obligations of the parties to the Agreements, the Trust proposes to settle out based upon ABT's closing price of $54.50 per share as of the close of business on November 12, 2008. Based upon this closing price, we propose final settlement of the contract through the Trust's surrendering of 92,706 shares to LOTC in complete satisfaction of the $5,052,500 due from the Trust and that a stock certificate for 7,294 shares be issued immediately in favor of the Trust.

This notice is sent in reliance upon 11 U.S.C. § 560, which provides that "the exercise of any contractual right of any ... financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order or a court or administrative agency in any proceeding under this title."



Lehman Brothers OTC Derivatives, Inc.
Lehman Brothers, Inc.
Corporate Advisory Division
Transaction Management Group
November 12, 2008
Page 3


We thank you in advance for your prompt attention to this matter, and ask that you
direct further inquiry to me at the address and phone number above.

Sincerely,



Steve Jakubowski


cc:     Chuck Finch, Alvarez & Marsal
        Eric J. Peterman, Esq., Weil Gotshal & Manges

**<u>EXHIBIT C</u>**

# LEHMAN BROTHERS

Date:       8 February, 2007

To:         Robert A Schoellhorn Trust
            Marathon Coach, 91333
            Coburg Industrial Way
            Coburg OR 97408-9492

From:       Lehman Brothers, Inc acting as Agent
            Lehman Brothers OTC Derivatives Inc., acting as Principal
            Andrew Yare - Confirmations Group
            Facsimile:     (+1) 646-885-9546 (United States of America)
            Telephone:     212-526-9986

Ref. Numbers: Risk ID: N7015700 / Effort ID: N1216311 / Global Deal ID: 2857956

---

Dear Sir:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers OTC Derivatives Inc. ("Party A") and Robert A Schoellhorn Trust ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below. This confirmation is sent on behalf of both Party A and Lehman Brothers Inc. **Lehman Brothers OTC Derivatives Inc. is not a member of the Securities Investor Protection Corporation.**

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of 02 September, 2005, as amended and supplemented from time to time, between Party A and Party B (the "Agreement"). All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2000 ISDA Definitions (the "Swap Definitions", and together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Agent: | Lehman Brothers Inc. ("LBI") is acting as agent on behalf of Party A and Party B for this Transaction. LBI has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. |
| Trade Date: | January 31, 2007 |
| Seller: | Party B |
| Buyer: | Party A |
| Shares: | The common stock of Abbot Laboratories ("Issuer"); Ticker symbol: ABT |
| Number of Shares: | 100,000 |
| Prepayment: | Applicable |
| Prepayment Amount: | USD4,552,606.60 |
| Prepayment Date: | February 5, 2007 |
| Variable Obligation: | Applicable |
| Forward Floor Price: | USD53.02978 |
| Forward Cap Price: | USD63.635736 |
| Exchange(s): | New York Stock Exchange |
| Related Exchange(s): | All Exchanges |
| Disrupted Day: | The definition of "Disrupted Day" in Section 6.4 of the Equity Definitions shall be amended by adding the following sentence after the first sentence: "A Scheduled Trading Day on which a Related Exchange fails to open during its regular trading session will not be a Disrupted Day if the Calculation Agent determines that such failure will not have a material impact on Party A's ability to unwind any related hedging transactions." |

**Valuation:**

| | |
|---|---|
| Valuation Time: | The close of trading on the Exchange, without regard to extended trading hours. |

| | |
|---|---|
| Valuation Date: | February 2, 2009 |

**Settlement Terms:**

| | |
|---|---|
| Settlement Method Election: | Applicable |
| Electing Party: | Seller |
| Settlement Method Election Date: | January 29, 2009 |
| Election Amount: | USD Cash equal to the lesser of (i) 50% *multiplied by* the Number of Shares *multiplied by* the Forward Floor Price or (ii) 150% *multiplied by* the Number of Shares *multiplied by* the closing price per Share quoted by the Exchange on the Exchange Business Day immediately preceding the Settlement Method Election Date at the Valuation Time, without regard to extended or after hours trading. |
| Default Settlement Method: | Physical Settlement |

**Physical Settlement Terms:**

| | |
|---|---|
| Physical Settlement: | Applicable |

**Cash Settlement Terms:**

| | |
|---|---|
| Cash Settlement: | Applicable, provided that Party B (i) delivers written notice of such election to Party A on or prior to the Settlement Method Election Date and (ii) pays the Election Amount in immediately available funds on the Settlement Method Election Date.   For the avoidance of doubt, Physical Settlement shall apply should Party B not provide such notice and pay the Election Amount as described herein. |
| | If Cash Settlement applies, then Party B will pay the Cash Settlement Amount *minus* the Election Amount received on the Settlement Method Election Date to Party A on the Cash Settlement Payment Date. If the Election Amount exceeds the Cash Settlement Amount, then Party A will pay the excess to Party B on the Cash Settlement Payment Date. |
| Settlement Currency: | USD |
| Settlement Price: | The official closing price per Share quoted by the Exchange at the Valuation Time on the Valuation Date. |
| Cash Settlement Payment Date: | Three (3) Currency Business Days after the Valuation Date |

**Dividends:**

Dividend Amount:    Ex-Amount minus USD0.295 per Share (the "Expected Dividend"), including the Relevant Rate of Return. For purposes of this definition, "gross cash dividends" shall include all cash dividends.

Dividend Period:    Second Period

Relevant Rate of Return:    The return that may be earned on an investment of the Ex-Amount minus the Expected Dividend at the Relevant Rate for the number of days from and including the ex-dividend date to and including the final day of the Dividend Period. The "Relevant Rate" means the prevailing overnight USD-Federal Funds-H.15 rate.

Dividend Adjustment:    On each related ex-dividend date, if the Dividend Amount is greater than zero, then both the Forward Cap Price and the Forward Floor Price shall be adjusted by subtracting the Dividend Amount from each. On each related ex-dividend date, if the Dividend Amount is less than zero, then both the Forward Cap Price and the Forward Floor Price shall be adjusted by adding the absolute value of the Dividend Amount to each.

Excess Dividend Amount:    The sum of all Dividend Amounts multiplied by the Number of Shares

**Share Adjustments:**

Method of Adjustment:    Calculation Agent Adjustment

**Extraordinary Events:**

**Consequences of Merger Events:**

Share-for-Share:    Modified Calculation Agent Adjustment

Share-for-Other:    Cancellation and Payment

(Calculation Agent Determination)

Share-for-Combined:    Modified Calculation Agent Adjustment

Tender Offer:    Applicable

**Consequences of Tender Offers:**

Share-for-Share:    Modified Calculation Agent Adjustment

Share-for-Other:    Modified Calculation Agent Adjustment

Share-for-Combined:    Modified Calculation Agent Adjustment

| | |
|---|---|
| New Shares: | The definition of "New Shares" in Section 12.1 of the Equity Definitions shall be amended by deleting subsection (i) in its entirety and replacing it with the following: "(i) publicly quoted, traded or listed on the New York Stock Exchange, the American Stock Exchange or the NASDAQ NMS and" |
| Tender Offers: | The definition of "Tender Offer" in Section 12.1 of the Equity Definitions will be amended by replacing the phrase "outstanding voting shares of the Issuer" in the fourth line thereof with "outstanding Shares" |
| Modified    Calculation    Agent Adjustment: | The definition of "Modified Calculation Adjustment" in Sections 12.2 and 12.3 of the Equity Definitions shall be amended by adding the following italicized language after the stipulated parenthetical provision: "(including adjustments to account for changes in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) *from the Announcement Date to the Merger Date (Section 12.2)  or Tender Offer Date (Section 12.3),*" |
| Composition of Combined Consideration: | Not Applicable |
| Nationalization, Insolvency or Delisting: | Cancellation and Payment |
| | (Calculation Agent Determination) |
| Delisting: | The definition of "Delisting" in Section 12.6 of the Equity Definitions shall be deleted in its entirety and replaced with the following: "'Delisting' means that the Exchange announces that pursuant to the rules of such Exchange, the Shares cease (or will cease) to be listed, traded or publicly quoted on the Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted on the New York Stock Exchange, the American Stock Exchange or the NASDAQ NMS" |
| **Additional Disruption Events:** | |
| Change in Law: | Not Applicable |
| Failure to Deliver: | Applicable |
| Insolvency Filing: | Applicable |
| | The definition of "Insolvency Filing" in Section 12.9 of the Equity Definitions shall be amended by deleting the clause "provided that such proceedings instituted or petitions presented by creditors and not consented to by the Issuer shall not be deemed an Insolvency Filing" at the end of such definition and replacing it with the following: "; or it has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy |

or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by a creditor and such proceeding is not dismissed, discharged, stayed or restrained in each case within fifteen (15) days of the institution or presentation thereof."

Section 12.9(b)(i) of the Equity Definitions is hereby amended by adding the following sentence at the end: "If neither party elects to terminate the Transaction, the Calculation Agent may adjust the terms of the Transaction upon the occurrence of such an event pursuant to Modified Calculation Agent Adjustment (as if such event were a Tender Offer)."

| | |
|---|---|
| Hedging Disruption: | Applicable |
| Increased Cost of Hedging: | Applicable |
| Increased Cost of Stock Borrow: | Applicable. Section 12.9(a)(viii) of the Equity Definitions shall be deleted in its entirety and replaced with the following: |

"Increased Cost of Stock Borrow" means that the Hedging Party would earn a Stock Collateral Rate that is less than the Initial Stock Loan Rate. For greater certainty, the Stock Collateral Rate will be deemed to be less than the Initial Stock Loan Rate if the spread below the applicable floating rate increases.

Section 12.9 (b)(v) of the Equity Definitions is amended by deleting all references to "a rate equal to or less than the Initial Stock Loan Rate" and replacing them with "a Stock Collateral Rate that is equal to or greater than the Initial Stock Loan Rate".

"Stock Collateral Rate" means the rate of return on collateral posted in connection with any Shares borrowed in connection with a Transaction, net of any costs or fees (including, for greater certainty, any lender's borrow fees).

| | |
|---|---|
| Initial Stock Loan Rate: | The Stock Collateral Rate on the Trade Date, expressed as a floating reference rate plus or minus a spread, as determined by the Calculation Agent and as adjusted by the Calculation Agent to reflect any subsequent Price Adjustment due to an Increased Cost of Stock Borrow. |
| Loss of Stock Borrow | Section 12.9(a)(vii) and Section 12.9(b)(iv) of the Equity Definitions are amended by deleting all references to "a rate equal to or less than the |

Maximum Stock Loan Rate" and replacing them with "a Stock Collateral Rate that is equal to or greater than the Minimum Stock Loan Rate." For greater certainty, the Stock Collateral Rate will be deemed to be greater than the Minimum Stock Loan Rate if the spread below the applicable floating rate decreases.

Minimum Stock Loan Rate:    The Stock Collateral Rate on the Trade Date, expressed as a floating reference rate plus or minus a spread, as determined by the Calculation Agent.

Hedging Party:    Party A  For the avoidance of doubt, Party A shall be the Hedging Party where applicable in connection with any Extraordinary Event.

Determining Party:    Party A  For the avoidance of doubt, Party A shall be the Determining Party where applicable in connection with any Extraordinary Event.

Non-Reliance:    Applicable

Agreements and Acknowledgments Regarding Hedging Activities:    Applicable

Additional Acknowledgments:    Applicable

Additional Provision:    If a Merger Date or Tender Offer Date is scheduled to be after the Expiration Date, the Calculation Agent will determine the economic effect on the theoretical value of the Transaction of the announcement of a potential Merger Event or Tender Offer (including without limitation any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) from the Announcement Date to the Valuation Date or the Final Averaging Date, as applicable. If such economic effect is material, the Calculation Agent will adjust the terms of the Transaction to reflect such economic effect.

Collateral:    Party B shall Transfer the Independent Amount to Party A on or prior to the Trade Date (which Independent Amount shall constitute Eligible Collateral with respect to Party B). "Independent Amount" means, with respect to Party B for this Transaction, an amount of Shares equal to the Number of Shares. The Independent Amount shall include all Distributions except for ordinary cash dividends up to and including the Expected Dividend with respect to all Posted Collateral. Upon four Business Days notice, Party B may, in accordance with the terms of the Credit Support Annex, Transfer Equivalent Collateral as Substitute Credit Support. The parties agree that the transfer of the Independent

Amount constitutes a delivery of Shares subject to the Representation and Agreement set forth in Section 9.11 of the Equity Definitions. The parties agree that Party B's Exposure (as defined in the Credit Support Annex) under this Transaction shall be zero. The parties agree that Party A's Exposure under this Transaction shall be zero upon Party B's transfer to Party A of the Independent Amount with respect to Party B. Notwithstanding any provision to the contrary in the Credit Support Annex, the Independent Amount shall be delivered by Party B without regard to the Minimum Transfer Amount and Party A shall have no obligation to return the Independent Amount to Party B until all of Party B's obligations with respect to this Transaction have been satisfied.

"Equivalent Collateral" means Collateral of a type and in an amount satisfactory to Party A, in its sole discretion.

Party A and Party B agree that, notwithstanding any provision to the contrary in the Agreement (including, but not limited to, Paragraph 6(c)(i) of the Credit Support Annex, if any), Party A may not rehypothecate any Shares constituting Posted Collateral and the Independent Amount delivered to Party A by Party B pursuant to this Transaction. For the avoidance of doubt, this provision shall not limit Party A's right to pledge all or a portion of the Shares to third parties.

**Miscellaneous:**

**Additional Provision:**                     The Agent will furnish Party B upon written request a statement as to the source and amount of any remuneration received or to be received by the Agent in connection with the Transaction evidenced hereby.

Additional Representations and                (i) Party B represents to Party A (at all times until
Warranties of Party B:                        termination of this Transaction) that it is an "eligible contract participant" within the meaning of Section 1a(12) of the Commodity Exchange Act.

(ii) neither Party A nor any of its affiliates has advised Party B with respect to any legal, regulatory, tax, accounting or economic consequences arising from this Transaction, and neither Party A nor any of its affiliates is acting as agent (other than LBI as dual agent if specified above), or advisor for Party B in connection with this Transaction.

(iii) Party B (A) is not an "affiliate" of the Issuer, as such term is defined in Rule 144 under the Securities Act of 1933, as amended (the "1933 Act"), (B) nor is it a counterparty entering into this Transaction on behalf of the Issuer or any affiliate thereof, (C) nor is it required to file reports with respect to the Shares or the Issuer pursuant to Sections 13(d) or 16(a) of the Securities Exchange Act of 1934, as amended (the "1934 Act");

(iv) Party B shall notify Party A immediately of its intention to take any action that could reasonably be expected to result in Party B becoming (A) an "affiliate" of the Issuer, within the meaning of Rule 144 under the 1933 Act, or (B) an "insider" of the Issuer within the meaning of Section 16 under the 1934 Act. Party B shall not take any such action without Party A's permission. Failure to notify Party A or to obtain Party A's permission in connection with any action taken in violation of this provision shall constitute an Additional Termination Event with respect to which Party B shall be the sole Affected Party;

(v) Party B is not in possession of any material non-public information concerning the business, operations or prospects of the Issuer and was not in possession of any such information at the time of placing any order with respect to the Transaction.

"Material" information for these purposes is any information to which an investor would reasonably attach importance in reaching a decision to buy, sell or hold any securities of the Issuer(s).

(vi) Party B's entry into this Transaction, any sale of Shares hereunder and Party A's exercise of all rights and remedies hereunder complies with and is not in any way limited by (A) any trading or "blackout" policies of the Issuer or (B) any other conditions or restrictions imposed by the Issuer on the sale, transfer, loan, pledge, disposition or other use by its employees of any Shares;

Calculation Agent:                    Lehman Brothers, Inc

Feb 28 07 05:08p    Lehman Brothers    2/28/2007 4:15    PG PAGE    561-776-9774    Fax Server    p.1

THIS TRANSACTION HAS BEEN ENTERED INTO FOR INVESTMENT AND HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, OR ANY OTHER UNITED STATES FEDERAL OR STATE SECURITIES LAWS; THIS TRANSACTION MAY NOT BE SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF APPROPRIATE REGISTRATION UNDER SUCH SECURITIES LAWS EXCEPT IN A TRANSACTION EXEMPT FROM OR NOT SUBJECT TO THE REGISTRATION REQUIREMENTS OF SUCH SECURITIES LAWS.

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number 646-885-9546 (United States of America), Attention: Documentation.

Yours sincerely,                          Accepted and agreed to:

Lehman Brothers OTC Derivatives Inc.      Robert A Schoellhorn Trust

By: _Anatoly Kozlov_
Name: Anatoly Kozlov
Title:  Authorized Signatory

                                          By: _R. A. Schoellhorn, Jr._
                                          Name:
                                          Title:

Execution time will be furnished upon Counterparty's written request.

# EXHIBIT D

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*            :    08-13555 (JMP)
                                                        :
                                    **Debtors.**        :    **(Jointly Administered)**
                                                        :
--------------------------------------------------------------------x

**NOTICE OF PROPOSED ASSUMPTION**
**OF EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES PURSUANT TO DEBTORS' THIRD AMENDED JOINT**
**CHAPTER 11 PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

| | |
|---|---|
| **Contract Counterparty:** | Please refer to <u>Exhibit A</u>. |
| **Contract To Be Assumed:** | Contract listed on <u>Exhibit A</u> to the extent not already rejected by Court order or expired by its own terms. |

> **If you have questions about this Notice or would like to resolve consensually any issues regarding assumption of the contract listed on <u>Exhibit A</u> or the cure amount listed on <u>Exhibit A</u>, please contact the estate representative that you have been dealing with or derivativeslegal@lehmanholdings.com.  In any event, you must follow the instructions below for filing formal objections to the proposed assumption of the contract or cure amount listed on <u>Exhibit A</u>.**

    **PLEASE TAKE NOTICE** that on September 1, 2011, Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors-in-possession (the "<u>Debtors</u>"), filed their Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, ECF No. 19627 (the "<u>Plan</u>").[1]  If the Plan is approved by the United

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), the Debtors will, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, assume the executory contracts and unexpired leases listed on Exhibit 2 of the Plan Supplement, dated October 25, 2011, ECF No. 21254 (the "Plan Supplement"), and the other executory contracts assumed pursuant to Sections 11.1, 11.5 and 11.6 of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Plan, notice (this "Notice") is hereby provided that the Debtors currently propose to assume the executory contract or unexpired lease listed on Exhibit A hereto (the "Contract") to the extent not already rejected by Court order or expired by its own terms.[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall pay the cure amount set forth on Exhibit A in accordance with Section 11.3 of the Plan. Payment of such cure amount shall satisfy, in full, the Debtors' obligations pursuant to section 365(b)(1) of the Bankruptcy Code.

**PLEASE NOTE THAT THE CONTRACT LISTED ON EXHIBIT A WILL ONLY BE ASSUMED HEREUNDER IF THE PLAN IS APPROVED BY THE BANKRUPTCY COURT AND BECOMES EFFECTIVE.**

**PLEASE TAKE FURTHER NOTICE** that if you object to the Debtors' proposed assumption of the Contract, including to the cure amount set forth on Exhibit A hereto, and are unable to resolve your objection consensually with the Debtors, you must file a written objection with the Bankruptcy Court and state with specificity the nature of the objection and the proposed cure amount, and serve such objection on the following parties (the "Objection Notice Parties") **on or before November 10, 2011**: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.).

**PLEASE TAKE FURTHER NOTICE** that, if no objections are received by the above deadline, (i) you shall be deemed to have consented to the assumption of the Contract and shall be forever barred from asserting any objection with regard to such assumption, and (ii) the cure amount set forth on Exhibit A shall be binding upon you for all purposes and will constitute a final determination of total cure amount required to be paid by the Debtors in connection with the assumption of such Contract, and you shall be forever barred from asserting any other claims or cure amounts related to such Contract.

---

[2] This notice is without prejudice to the Debtors' rights to claim that the Contract expired by its own terms or was terminated prior to the effective date of assumption, as the case may be. Moreover, nothing herein shall be deemed an admission that the Contract is an enforceable obligation of the Debtors, is executory in nature, or that the Contract counterparty identified on Exhibit A has a valid claim against the Debtors. The Contract listed on Exhibit A will not be assumed until the Bankruptcy Court enters an order approving such assumption. The Debtors reserve all rights to remove the Contract from Exhibit A and the Plan Supplement, in which case such contract shall be deemed rejected as of the Effective Date of the Plan.

**PLEASE TAKE FURTHER NOTICE** that if a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the hearing to approve the Plan on December 6, 2011, or at such other date as determined by the Court or the parties.

**PLEASE TAKE FURTHER NOTICE** that if an objection to a cure amount is filed, the Debtors reserve the right to remove the applicable Contract from Exhibit A and the Plan Supplement if, among other things, the cure amount is ultimately determined by order of the Court to be higher than the cure amount set forth on Exhibit A, in which case such Contract shall be deemed rejected as of the Effective Date of the Plan.

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Plan or the Plan Supplement, you should contact Epiq Bankruptcy Solutions, LLC, the voting and claims agent retained by the Debtors in these chapter 11 cases, at 1-866-879-0688 (domestic) or 1-503-597-7691 (international).

---

**If you have questions about this Notice or would like to resolve consensually any issues regarding assumption of the contract listed on Exhibit A or the cure amount listed on Exhibit A, please contact the estate representative that you have been dealing with or derivativeslegal@lehmanholdings.com. In any event, you must follow the instructions below for filing formal objections to the proposed assumption of the contract or cure amount listed on Exhibit A.**

---

Dated:  October 27, 2011
      New York, New York

**Exhibit A**

| Counterparty | Debtor | Title of Agreement | Cure Amount |
|---|---|---|---|
| ROBERT A SCHOELLHORN TRUST | LEHMAN BROTHERS OTC DERIVATIVES INC. | | $0 |

**UNLESS A SPECIFIC DERIVATIVES CONTRACT IS NOTED, THE DEBTORS INTEND TO ASSUME ALL DERIVATIVES CONTRACTS WITH YOU. WHERE A SPECIFIC DERIVATIVES CONTRACT HAS BEEN INDICATED, THE APPLICABLE DEBTOR INTENDS TO ASSUME THE IDENTIFIED DERIVATIVES CONTRACT AND TO REJECT ALL OTHER DERIVATIVES CONTRACTS WITH YOU.**