**Hearing Date and Time: November 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 23, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :        08-13555 (JMP)
                                              :
                    Debtors.                  :        (Jointly Administered)
                                              :
----------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105, 362 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR (I) APPROVAL OF A COMPROMISE AND SETTLEMENT IN CONNECTION WITH A MORTGAGE BACKED SECURITIES RELATED ACTION (II) AUTHORITY TO ADVANCE LIMITED LEGAL DEFENSE COSTS (III) MODIFICATION OF THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENTS UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES AND (IV) AUTHORITY TO GRANT LIMITED RELEASES TO CERTAIN INSURERS UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion")

of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, including Structured Asset Securities Corporation ("SASCO"), as debtors-in-

possession (together, the "Debtors"), pursuant to sections 105, 362 and 363 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for (i) approval of a compromise and settlement in

connection with a class action relating to the purchase of mortgage backed securities ("MBS")

issued by SASCO currently pending in the United States District Court for the Southern District of New York, (ii) authority to advance limited legal defense costs, (iii) modification of the automatic stay extant in section 362 of the Bankruptcy Code, to the extent applicable, to allow certain of the Debtors' third-party insurers to make payments in connection with the settlement of three MBS legal proceedings, and (iv) authority to grant limited releases to certain of the Debtors' third-party insurers, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be filed with the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; and served upon (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (ii) Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110, Attn: Michael C. Ledley, Esq., attorneys for the

"MBS Defendants"; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall

Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G.

Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1

Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured

Creditors appointed in these cases; (v) Cohen Milstein Sellers & Toll PLLC, 88 Pine Street,

Fourteenth Floor, New York, New York 10005, Attn:  Christopher Lometti, Esq. and Richard

A. Speirs, Esq., attorneys for the "SASCO MBS Plaintiffs" and Iowa Public Employees'

Retirement System; (vi) Wolf Popper LLP, 845 Third Avenue, New York, N.Y. 10022, Attn:

Lester L. Levy, Esq. and James A. Harrod, Esq., attorneys for the Public Employees' Retirement

System of Mississippi; (vii) Grant & Eisenhofer P.A., 485 Lexington Ave., 29th Floor, New

York, New York 10017, Attn:  Geoffrey C. Jarvis, Esq., attorneys for Stichting Pensioenfonds

ABP; (viii) Keller Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, Washington

98101, Attn:  Amy Williams-Derry, Esq. and Derek Loeser, Esq, attorneys for Federal Home

Loan Bank of Boston; (ix) Mendes & Mount, LLP, 750 Seventh Avenue, New York, New York

10019, Attn: Arthur Washington, Esq., D'Amato & Lynch, LLP, Two World Financial Center,

New York, New York 10281, Attn:  Mary Jo Barry, Esq. and Catherine Casavant, Esq., Bressler,

Amery & Ross, P.C., 17 State Street, New York, NY 10004, Attn: Robert Novack, Esq., and

Wilson Elser Moskowitz Edelman & Dicker LLP, 3 Gannett Drive, White Plains, New York

10604, Attn:  Alicia Silver Santocki, Esq., attorneys for the respective "2007-08 Excess Policy

Insurers"; (x) Troutman Sanders LLP, 401 Ninth Street, N.W., Suite 1000, Washington, D.C.

2004-2134, Attn: Gary V. Dixon, Esq., and Stacey L. McGraw, Esq., DLA Piper US LLP, 1251

Avenue of the Americas,  New York, NY 10020-1104, Attn: Stephen P. Davidson, Esq., Wiley

Rein LLP, 1776 K Street, N.W., Washington, D.C. 20006, Attn: Mary Catherine Martin, Esq.

and Kimberly Melvin, Esq., attorneys for the respective "2008-09 D&O Insurers"; and (xi)

Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn:  Adam J.

Wasserman, Esq., attorneys for the "Equity/Debt Director Defendants," so as to be so filed and

received by no later than **November 23, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

> **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing. If an objection

is filed the moving and objecting parties are required to attend the hearing, and failure to appear

may result in relief being granted or denied upon default.

Dated:  November 9, 2011
    New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors
and Debtors in Possession

**Hearing Date and Time: November 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 23, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                              :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT**
**TO SECTIONS 105, 362 AND 363 OF THE BANKRUPTCY**
**CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE**
**9019 FOR (I) APPROVAL OF A COMPROMISE AND SETTLEMENT**
**IN CONNECTION WITH A MORTGAGE BACKED SECURITIES RELATED**
**ACTION (II) AUTHORITY TO ADVANCE LIMITED LEGAL DEFENSE COSTS (III)**
**MODIFICATION OF THE AUTOMATIC STAY TO ALLOW SETTLEMENT**
**PAYMENTS UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES AND (IV)**
**AUTHORITY TO GRANT LIMITED RELEASES TO CERTAIN INSURERS UNDER**
**<u>DIRECTORS AND OFFICERS INSURANCE POLICIES</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-

referenced chapter 11 cases, including, Structured Asset Securities Corporation ("<u>SASCO</u>"), as

debtors-in-possession (together, the "<u>Debtors,</u>" and collectively with their non-debtor affiliates,

"<u>Lehman</u>"), file this motion (the "<u>Motion</u>") and respectfully represent:

**Preliminary Statement**

1.        Both prior to and after LBHI and certain of its subsidiaries commenced

with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") on September 15, 2008 and periodically thereafter

(as applicable, the "Commencement Date"), various securities actions, including without

limitation lawsuits and arbitration proceedings, were commenced against certain of the Debtors'

current and former officers, directors and/or employees in their capacities as officers, directors

and/or employees of the company, in both federal and state courts and before various regulatory

agencies, including, without limitation the Financial Industry Regulatory Authority (collectively,

the "Legal Proceedings").  Three of the approximately twenty-five Legal Proceedings are in

connection with the purchase of mortgage backed securities ("MBS") issued by trusts established

by SASCO.

2.        As discussed further below, certain purchasers of MBS issued by SASCO

commenced a class action on June 25, 2008 (the "SASCO MBS Plaintiffs") against certain

current and former officers or directors of SASCO (the "SASCO Defendants"),[1] that is currently

pending in the United States District Court for the Southern District of New York (the "District

Court"), captioned *In re Lehman Brothers Mortgage-Backed Securities Litigation*, No. 08 Civ.

6762 (LAK) (the "SASCO MBS Action").  The Public Employees' Retirement System of

Mississippi ("MissPERS") and the Iowa Public Employees' Retirement System filed a motion to

intervene in the SASCO MBS Action (together, the "Proposed Intervenors").  Together, the

SASCO MBS Plaintiffs and the Proposed Intervenors have asserted potential damages

---

[1] The SASCO MBS Action names the following current and former officers and directors of SASCO as defendants:
Lana Franks Harber (named as Lana Franks), Edward Grieb, Richard McKinney, Kristine Smith, James J. Sullivan,
Samir Tabet and Mark L. Zusy.

aggregating $7.7 billion against the SASCO Defendants, who were and in some instances are currently mid-level traders and finance employees, relating to approximately $20 billion of purchased MBS.  Although none of the Debtors are parties to the SASCO MBS Action, the SASCO MBS Plaintiffs and the Proposed Intervenors have filed unliquidated proofs of claim in these Chapter 11 Cases, claim numbers 22023, 27760 and 22024 (the "SASCO Claims"), asserting claims against LBHI that are similar to the claims that they asserted in said action.

3.      The SASCO MBS Plaintiffs and the Proposed Intervenors have agreed to settle the multi-billion dollar SASCO MBS Action, subject to requisite approvals, and release all claims against, *inter alia*, the Debtors, for a payment of $40 million (the "SASCO Settlement Amount").  Certain of the Debtors' 2007-08 and 2008-09 directors and officers liability insurance programs (the "D&O Policy Insurers"),[2] have agreed to contribute a total of $31,700,000 (the "SASCO Insurers' Payment"), approximately 79% of the SASCO Settlement Amount, of which $23,400,000 will be paid by the 2007-08 Excess Policy Insurers (as defined below) and $8,300,000 will be paid by the 2008-09 primary insurer and two excess insurers (the "2008-09 D&O Insurers").  The remaining balance of $8,300,000, approximately 21% of the SASCO Settlement Amount, will be paid by LBHI (the "LBHI Payment").

4.      Taking into account settlement payments that have been or are contemplated to be made, exclusive of the SASCO Insurers' Payment, as well as defense costs that have been or are contemplated to be paid by the Debtors' 2007-08 D&O Policy Insurers, the $23,400,000 payment to be made by the 2007-08 D&O Policy Insurers will nearly exhaust the

---

[2] In May 2009, pursuant to general authorization that the Debtors may maintain their directors and officers insurance programs, [ECF No. 1398], the Debtors purchased an initial one-year tail on the 2008-09 D&O Policies that extended the policy period from May 16, 2009 through May 16, 2010.  On June 17, 2010, the Debtors were authorized to purchase an additional one-year tail extension that extended the policy period from May 16, 2010 through May 16, 2011 [ECF No. 9643].

remaining coverage under the 2007-08 directors and officers liability insurance program.  As described below, there is a dispute with the Debtors' 2008-09 D&O Insurers regarding, *inter alia*, coverage with respect to the SASCO MBS Action.  Consequently, said insurers were unprepared to contribute more than $8,300,000 towards the SASCO Settlement Amount.  Accordingly, given that the SASCO MBS Plaintiffs and the Proposed Intervenors were unwilling to settle their claims against all parties, including, LBHI, absent an aggregate payment of $40 million, a settlement of the SASCO MBS Action is not possible absent the LBHI Payment.  The Debtors submit that it is beyond peradventure that the opportunity to effectuate a settlement that resolves billions of dollars of exposure to the Debtors and their estates in exchange for a relatively *de minimus* contribution of $8,300,000 is in the best interests of the Debtors, their estates and their creditors.  Accordingly, the Debtors seek approval of the LBHI Payment and, consistent with prior approvals that this Court has granted on prior occasions to enable insurers to make payments to settle claims, a modification of the automatic stay extant in section 362(a) of the Bankruptcy Code to enable the D&O Policy Insurers to make the SASCO Insurers' Payment.

5.     In addition to the SASCO MBS Action there are two other MBS related proceedings, one commenced by the Federal Home Loan Bank of Boston ("FHLBB") and the other by Stichting Pensioenfonds ABP ("Stichting"), that also name certain current and former officers or directors of SASCO as defendants.  Both of the plaintiffs in those respective actions have agreed to settle said actions for a payment of $3,000,000 each.  These settlement payments are to be made by the Debtors' "2007-08 Excess Policy Insurers" (as defined below).  While these settlement payments contemplate that the Debtors will be receiving releases, the Debtors are not required to make any contributions toward such settlement payments.  Accordingly, the

Debtors seek modification of the automatic stay extant in section 362(a) of the Bankruptcy Code,

to the extent applicable, to remove any impediments to settlement payment by the 2007-08

Excess Policy Insurers of their respective settlement contributions in connection with the

FHLBB Action and Stichting Action.

6.       The D&O Policy Insurers have demanded, as a condition to their paying

the Settlement Amounts, as defined below, that the Debtors, among others, grant them a release

of claims relating to said payment and the MBS Actions.  As described more fully below,

because the Debtors do not believe that they have any such claims and said releases would <u>not</u>

cover or include any insurance coverage dispute unrelated to the MBS Actions the Debtors

believe that granting such releases to facilitate and indeed enable this settlement and the

elimination of potentially billions of dollars of claims is in the best interests of their estates and

their creditors.

7.       Lastly, as noted above, taking into account settlement payments that have

been or are contemplated to be made, as well as defense costs that have been or are contemplated

to be paid by the Debtors' third party insurers under the Debtors' 2007-08 D&O Policies, the

Debtors anticipate that the limits of liability of the 2007-08 D&O Policies will be fully exhausted

before the end of the year.  There remains additional work to be done by defense counsel for,

among others, those current directors of LBHI who are defendants (the "<u>Equity/Debt Director</u>

<u>Defendants</u>")[3] in a class action pending in the District Court captioned *In re Lehman Brothers*

*Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK) (S.D.N.Y.) (the "<u>Equity/Debt Securities</u>

---

[3] The Equity/Debt Director Defendants are: Michael L. Ainslie; John F. Akers; Roger S. Berlind; Thomas H. Cruikshank; Marsha Johnson Evans; Sir Christopher Gent; Roland A. Hernandez; and John D. Macomber.

Class Action") in connection with the proposed settlement of said action[4] which remains subject

to the District Court's approval and the following related Legal Proceedings arising out of

Lehman-issued securities as identified in the Debtors' motions either currently pending before

the Court or in which relief has already been granted with respect to modifying the automatic

stay to permit certain of the 2007-08 Excess Policy Insurers to make settlement payments in

connection therewith: (i) *In re: Lehman Brothers Securities and ERISA Litigation*, Master

Docket No. 09 MD 2017 (LAK) (S.D.N.Y.) (the "CalPERS Action"); (ii) *Washington State*

*Investment Board v. Fuld, et al.*, No. 09-cv-06041-LAK (S.D.N.Y); (iii) *American National*

*Insurance Company v. Fuld, et. al*., Case No. 1:09-cv-02363-LAK (S.D.N.Y.); and (iv) the

"California Municipalities Actions"[5] (collectively the "Lehman-Issued Securities Actions" and,

together with the Equity/Debt Securities Class Action, the "Lift Stay Actions").  The defendants

in the Lift Stay Action include the Equity/Debt Director Defendants.  If implemented, the Lift

Stay Actions will result in the release of claims against the Debtors.  Additionally, if the Court

grants the relief sought in this Motion, the defense counsel for the SASCO Defendants will be

required to perform additional work in connection with their obtaining approval of settlement of

that class action from the District Court.  Because, as noted, the Debtors will be obtaining a

release of potentially billions of dollars of claims if settlement of the SASCO MBS Action as

contemplated and described herein is implemented as well, in order to insure that the lack of

---

[4] On October 19, 2011 the Court entered an order [ECF No. 21029] modifying the automatic stay to assure certain of the Debtors' 2007-09 insurance carriers that they may pay the $90 million settlement amount (the "Equity/Debt Settlement Amount") with respect to the settlement of the Equity/Debt Securities Action.

[5] The California Municipalities Actions are *City of Long Beach v. Fuld, et al., Case No. 1:09-cv-03467-LAK* (S.D.N.Y.)*; City of Fremont v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-03478-LAK (S.D.N.Y.); City of Cerritos v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-07878-LAK (S.D.N.Y.); City of South San Francisco v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-01946-LAK (S.D.N.Y.); County of Alameda v. Ernst & Young, LLP, et al., Case No. 1:09-cv-07877-LAK (S.D.N.Y.); County of Toulumne v. Ernst & Young, LLP, et al., Case No. 1:09-cv-03468-LAK (S.D.N.Y.)*.

insurance coverage does not impair or delay such approval being sought and obtained, the

Debtors request authority to pay up to $1,700,000 of legal defense costs incurred by the

Equity/Debt Director Defendants and the SASCO Defendants solely in connection with the

implementation of the settlements of the Lift Stay Actions and SASCO MBS Action,

respectively, but only to the extent that the 2007-08 D&O Policies are otherwise depleted and

thus unavailable to pay such costs (the "Settlement Implementation Payments").

### Background

8.    The Debtors' Chapter 11 Cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

9.    On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

10.    On September 1, 2011, the Debtors filed a third amended joint chapter

11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF Nos.

19627 and 19629].  On September 1, 2011, the Court entered an amended order [ECF No.

19631] approving the Disclosure Statement, establishing solicitation and voting procedures in

connection with the Plan, scheduling the confirmation hearing and establishing notice and

objection procedures for the confirmation hearing.  On September 15, 2011 the Court entered an

order approving a modification to the Disclosure Statement [ECF No. 20016].

### Jurisdiction

11.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

12.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

13.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [ECF No. 2]

### Relief Requested

14.     The Debtors request, pursuant to sections 105, 362 and 363 of the

Bankruptcy Code and Bankruptcy Rule 9019, as applicable (i) approval of the compromise and

settlement of the SASCO MBS Action in accordance with the terms, conditions and provisions

set forth in the executed term sheet attached hereto as Exhibit A (the "SASCO MBS Term

Sheet"), and to consummate the transactions contemplated thereunder, including, without

limitation, LBHI making the LBHI Settlement Payment; (ii) authority to make the Settlement

Implementation Payments, (iii) modification of the automatic stay set forth in section 362 of the

Bankruptcy Code to allow the D&O Policy Insurers, to the extent necessary, to make settlement

payments pursuant to the terms, conditions and provisions set forth in the respective MBS

settlement agreements; and (iv) authority to grant limited releases to the D&O Policy Insurers of

any potential claims the Debtors may have, solely in connection with the D&O Policy Insurers'
funding of the respective settlement amounts in the MBS Actions.

## The MBS Actions

15.     On June 25, 2008, Alaska Electrical Pension Fund commenced an action
in New York Supreme Court alleging violations of the Securities Act of 1933 in connection with
various offerings of mortgage-backed securities by SASCO.  In July 2008, New Jersey
Carpenters Health Fund filed its own suit in New York Supreme Court.  The SASCO Defendants
subsequently removed the two actions, and they were consolidated by the District Court.  On
February 23, 2009, the SASCO MBS Plaintiffs filed the a consolidated amended complaint
purportedly on behalf of a class of all persons or entities who purchased or acquired mortgage-
backed securities issued in 94 offerings mortgage pass through MBS certificates (the
"Certificates") between September 2005 and July 2007.  The SASCO MBS Action names the
following current and former officers or directors of SASCO as defendants: Lana Franks Harber
(named as Lana Franks), Edward Grieb, Richard McKinney, Kristine Smith, James J. Sullivan,
Samir Tabet and Mark L. Zusy (the "SASCO Defendants").  Although the SASCO Defendants
were partially successful in their motion to dismiss the complaint against them for failure to state
a claim upon which relief may be granted, there remains billions of dollars in potential exposure
with respect to the SASCO MBS Action.

16.     On March 18, 2010, shortly following the District Court's ruling on the
motion to dismiss the SASCO MBS Action, MissPERS filed a motion to intervene in the
SASCO MBS Action as a named plaintiff on behalf of itself and an intervenor class comprised of
all those who purchased securities in three MBS offerings dismissed from the action by the
District Court.  On April 11, 2010, Iowa Public Employees' Retirement System filed its own

motion to intervene as a named plaintiff on behalf of itself and an intervenor class comprised of all those who purchased securities in certain other MBS offerings previously dismissed from the action by the District Court.

17.    The SASCO MBS Plaintiffs allege that they purchased MBS in offerings in which the total face value of such securities was approximately $12 billion.  The Proposed Intervenors, whose motion to intervene is on appeal and whose claims will be resolved and released pursuant to the terms, provisions and conditions of the SASCO MBS Term Sheet, allege that they purchased MBS in offerings in which the total face value of such securities was approximately $8 billion.  The Debtors have been advised that by letter dated September 7, 2011, Counsel for the MBS Plaintiffs asserted that the class represented by the named plaintiffs have damages of $4.3 billion.  The Debtors have been further advised that counsel for the MBS Plaintiffs previously stated that investors represented by the Proposed Intervenors have damages of $3.4 billion.

18.    As noted above, the SASCO MBS Plaintiffs and Proposed Intervenors have filed various proofs of claim against LBHI, most of which are in unliquidated amounts, that assert claims similar to those asserted in the SASCO MBS Action.

19.    In addition to the SASCO MBS Action, there are two other MBS related cases naming current or former officers and directors of SASCO as defendants.  On August 19, 2010, Stichting commenced an action in the Supreme Court of the State of New York, New York County captioned *Stichting Pensioenfonds ABP v. Merrill Lynch & Co., Inc.,* Civil Action No. 10-6637 (LAK) (S.D.N.Y.) (the "Stiching Action"), which (as amended) asserted claims against the following current and former officers or directors of SASCO, James J. Sullivan, Lana Franks Harber (named as Lana Franks), Mark L. Zusy, Edward Grieb, Richard McKinney, Samir Tabet

and Kristine Smith (collectively, the "Stichting Defendants"). The Stitching Action relates to certain alleged violations of the Securities Act of 1933 and common law in connection with purchases by Stitching of certain residential MBS issued by SASCO. Stitching has filed various proofs of claim against the Debtors and their estates in these Chapter 11 Cases, asserting claims in the aggregate of approximately $25 million.

20.     On April 20, 2011, FHLBB commenced an action in the Superior Court of the Commonwealth of Massachusetts, Suffolk County, Business Litigation Session (the "Massachusetts Superior Court") captioned *Federal Home Loan Bank of Boston v. Ally Financial, Inc., et al.*, Civil Action No. 11-1533 (the "FHLBB Action" and, together with the Stichting Action and SASCO MBS Action, the "MBS Actions"). On or about May 23, 2011, the FHLBB Action was removed to the United States District Court for the District of Massachusetts (the "Massachusetts District Court"). The FHLBB Action names as defendants, among others, Christopher M. O'Meara, Richard S. Fuld, Jr., and the following current and former officers or directors of SASCO, James J. Sullivan, Lana Franks Harber (named as Lana Franks), Mark L. Zusy, Edward Grieb, Richard McKinney, Samir Tabet and Kristine Smith (collectively, the "FHLBB Defendants" and, together with the SASCO Defendants and the Stichting Defendants, the "MBS Defendants"). The FHLBB Action relates to alleged violations of securities law due to supposed misstatements and omissions of material fact allegedly made, in part, by the FHLBB Defendants, in connection with the purchase of approximately 115 Certificates by FHLBB. FHLBB has not filed any proofs of claim against the Debtors and their estates in these Chapter 11 Cases.

21.     Although LBHI was originally named as a defendant in the SASCO MBS

Action, however, as a result of the automatic stay, the action was stayed as to it.  The Debtors

were not named as defendants in either the Stichting Action or the FHLBB Action.

### The Debtors' Directors' and Officers' Liability Insurance Policies

22.     Pursuant to their advancement and indemnification obligations expressed

in their by-laws and certificate of incorporation, the Debtors purchased primary directors' and

officers' liability insurance from XL Specialty Insurance Company ("XL"), Policy No.

ELU097792-07, with an aggregate Limit of Liability of $20 million and an additional $230

million in excess coverage (the "2007-08 D&O Policies").  Upon the expiration of the 2007-08

D&O Policies, LBHI purchased from XL a Management Liability and Company Reimbursement

Insurance Policy, Policy No. ELU104715-08, also with an aggregate Limit of Liability of $20

million and with substantially the same terms and conditions as the 2007-08 D&O Policies (the

"2008-09 D&O Policies", as later extended through the purchase of "tail" coverage to May 16,

2011, and, when referenced together with the 2007-08 D&O Policies, the "D&O Policies").  The

D&O Policies each provide coverage of up to $250 million in the aggregate for the Debtors'

current and former officers, directors, and employees (collectively, the "Insureds")  in

connection with the Legal Proceedings.

23.     With limited exceptions not relevant here, the excess policies under the

D&O Policies are all "follow form" policies subject to additional independent terms and

conditions.  That is, the terms and conditions of the primary policy governs the terms and

conditions of each of the excess policies, except that each of the excess insurer's respective

obligations are subject to certain additional terms and conditions, such as limits of liability, and

attach only after all "Loss" (defined as, among other things, defense costs, settlements and

judgments), within the respective limits of liability of the underlying policies has been paid.

The D&O Policies cover Loss incurred as a result of Claims[6] made during the respective policy periods for Wrongful Acts allegedly committed by the individual Insureds in their capacity as directors, officers or employees of LBHI and its subsidiaries.   Coverage under Insuring Agreement (A) for non-indemnifiable loss ("Side A") of the D&O Policies is immediately available to the individual Insureds, which includes certain of the Debtors' present and former officers, directors, and employees, for any Loss resulting from Claims made under the D&O Policies that are not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

24.    The D&O Policies contain "Priority of Payments" provisions, which provide that when competing claims for coverage under both Side A, as described above, and Insuring Agreement (B) ("Side B") (covering indemnifiable Claims made against present and former officers, directors and employees) are made, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ."  *See e.g.,* 2007-08 D&O Policies, Endorsement 22.  Thus, the D&O Policies, by virtue of Side A and the Priority of Payments provision, provides for the immediate payment of settlement costs on behalf of the individual Insureds ahead of any payment that may be made to the Debtors.

25.    The 2007-08 D&O Policies are almost completely exhausted. Approximately $200 million has been paid from the 2007-08 D&O Policies as a result of settlement payments or advancement of defense costs in connection with the Legal Proceedings. Of the approximately $50 million remaining in the 2007-08 D&O Policies, approximately $14.5 million has been committed for the payment of settlement amounts relating to actions arising out

---

[6] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the D&O Policies.

of Lehman-issued securities and auction rate securities, as set forth in the Debtors' motions

pending before the Court seeking authorization for certain of the 2007-08 Excess Policy Insurers

to make such settlement payments. [7]  Further, on October 19, 2011, the Court entered the *Order*

*Granting Debtors Motion for an Order Modifying the Automatic Stay to Allow Advancement of*

*Defense Expenses Under the 2007-08 Directors and Officers Insurance Policies by the Excess*

*Policy Insurers* [ECF No. 21039] (the "Defense Cost Order").  Pursuant to the Defense Cost

Order, the 2007-08 Excess Policy Insurers are authorized to advance defense costs incurred by

the individual Insureds in connection with the Legal Proceedings.  These defense costs have been

substantial.  Consequently, the Debtors expect that soon after the payment of $24,300,000

toward the SASCO Settlement Amount, the 2007-08 D&O Policies will be completely

exhausted.  Although some claims have been asserted against the 2008-09 D&O Policies, less

than $1 million of insurance proceeds have been paid under those policies.  Currently, the 2008-

09 D&O Policies have a balance of approximately $249 million.

### MBS Actions Coverage Dispute

26.    The MBS Defendants and all of the Debtors' insurance carriers are

currently in a dispute as to whether the MBS Actions fall under the 2007-08 D&O Policies or the

2008-09 D&O Policies.  The Debtors and the MBS Defendants assert that the MBS Actions fall

under the 2008-09 D&O Policies. The Debtors' insurance carriers, on the other hand, contend

that the Claims fall within the 2007-08 D&O Policies, which are nearly exhausted.  A

determination of the coverage issue would require judicial adjudication.  If the Debtors'

---

[7] *See*, [ECF No. 20849] (pending motion to modify the automatic stay to allow settlement payments totaling
$500,000); [ECF No. 21299] (pending motion to modify the automatic stay to allow settlement payments totaling
$14 million).

insurance carriers were to prevail, the MBS Defendants almost certainly would have no coverage because of the exhaustion of the 2007-08 D&O Policies.

### The SASCO MBS Settlement

27.    The SASCO MBS Plaintiffs and the SASCO Defendants have been involved in extensive and protracted negotiations and mediations which have resulted in a proposed compromise and settlement of the their disputes, without any admission or concession of any fault, liability or wrongdoing by the SASCO Defendants, as set forth in the SASCO MBS Term Sheet.  While the Debtors are not parties to the SASCO MBS Action, they have participated in certain of those negotiations.  The terms and conditions of said term sheet, as they relate to the Debtors, are summarized as follows:[8]

- The effectiveness of the SASCO MBS Term Sheet is subject to entry of an order in the Debtors' Chapter 11 Cases authorizing (i) relief from the automatic stay, to the extent applicable, to permit any applicable Excess Policy Insurer to pay the SASCO Settlement Amount to the SASCO MBS Plaintiffs as provided in the SASCO MBS Term Sheet, and (ii) authorizing LBHI to pay the LBHI Payment (the "Bankruptcy Court Order").

- The SASCO MBS Plaintiffs and the SASCO Defendants will file a stipulation of settlement and release and seek approval of entry into a settlement agreement in accordance with the terms, provisions and conditions set forth in the SASCO MBS Term Sheet in the District Court within thirty (30) days of the entry of the Bankruptcy Order.

- The SASCO MBS Plaintiffs will receive a settlement payment totaling $40,000,000 in cash, of which (i) $31,700,000 will be paid by the applicable Excess Policy Insurers and (ii) $8,300,000 will be paid by LBHI.

- Payment of the SASCO Settlement Amount into an interest bearing escrow account the later of (i) within ten (10) business days following entry of the Bankruptcy Court Order, or (ii) execution of a settlement

---

[8] To the extent there is an inconsistency between this summary and the SASCO MBS Term Sheet, the terms of the SASCO MBS Term Sheet shall control.  Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the SASCO MBS Term Sheet.

agreement in accordance with the terms, provisions and conditions set forth in the SASCO MBS Term Sheet, subject to the agreement by the attorneys for the SASCO MBS Plaintiffs and Proposed Intervenors that no portion of the LBHI Payment shall be paid or expended for any purpose prior to the Effective Date.

▪ The SASCO MBS Plaintiffs and the Proposed Intervenors will release claims against the SASCO Defendants that are insured under the D&O Policies, the Debtors, Lehman Brothers Inc. ("LBI"), and certain other releasees that:  (i) concern the SASCO Plaintiff's purchase or acquisition of the Certificates, and (iii) relate to any of the claims asserted or facts alleged in the SASCO MBS Action or the subject matter thereof, which claims the SASCO MBS Plaintiffs and the Proposed Intervenors ever had, now has, or hereafter may have against any and all of the SASCO Defendants, the Debtors or LBI.

▪ The SASCO MBS Plaintiffs and Proposed Intervenors will file a notice on the docket in these Chapter 11 Cases withdrawing the applicable proofs of claim that fall within the scope of releases provided to the Debtors, including, without limitation, the SASCO Claims.

▪ While the Debtors are not signatories to the SASCO MBS Term Sheet, they are expressly named as third party beneficiaries thereof.

28.    In connection with the Stichting Action, to eliminate the uncertainties, burden and expense of further litigation, without any admission or concession of any fault, liability, or wrongdoing, Stichting and the Stichting Defendants, through arms-length negotiations, have agreed to settle all disputes outstanding between them under the terms and conditions memorialized in a settlement agreement dated November 8, 2011 (the "Stichting Settlement Agreement").  The relevant terms of the Stichting Settlement Agreement, as they relate to the Debtors, are summarized as follows:[9]

▪ The Stichting Settlement Agreement is effective (the "Effective Date") upon (i) entry of an order by the Court in these Chapter 11 Cases

---

[9] To the extent there is an inconsistency between this summary and the Stichting Settlement Agreement, the terms of the Stichting Settlement Agreement shall control.  Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the Stichting Settlement Agreement.  The Stichting Settlement Agreement is not attached to this Motion because the Debtors are not signatories thereto and are not making any payments in connection with the settlement of the Stichting Action.

granting relief from the automatic stay to permit the applicable excess policy insurers under the 2007-08 D&O Policies to pay the settlement amount (the "Lift Stay Order"); and (ii) Stichting and the Stichting Defendants obtaining a bar order from the District Court, substantially in the form of Exhibit 1 attached to the Stichting Settlement Agreement (the "Bar Order").

- The applicable excess policy insurers under the 2007-08 D&O Policies shall deposit $3,000,000 (the "Stichting Settlement Amount") into an interest bearing escrow account within a specific time following entry of (a) a final order granting relief from the automatic stay, and (b) a final order barring claims for contribution and indemnification against any Stichting Defendant based upon, arising from, relating or, or in connection with the claims released in the Stichting Settlement Agreement.

- Within five business days of the Effective Date, Stichting will withdraw prejudice all claims against all Stichting Defendants in the Stichting Action by filing a notice of dismissal with prejudice.

- On the Effective Date, Stichting will release the Stichting Defendants and all past and present employees, officers, directors of the Debtors and LBI, of and from any and all Claims that, *inter alia* (i) relate to the Claims alleged or asserted in the FHLBB Action or in any preceding complaints (or in any forum or proceeding or otherwise), and/or (ii) are based upon the purchase or acquisition of MBS issued or sponsored by any entity owned by or affiliated with LBHI.

- On the Effective Date, Stichting will release the Debtors and LBI of and from any and all Claims that, *inter alia* (i) relate to Claims alleged or asserted in the FHLBB Action or in any preceding complaints (or in any forum or proceeding or otherwise), and (ii) are based upon the purchase or acquisition of MBS issued or sponsored by any entity owned by or affiliated with LBHI.

- While the Debtors are not signatories to the Stichting Settlement Agreement, they are expressly named as third party beneficiaries thereof.

29.    In connection with the FHLBB Action, to eliminate the uncertainties, burden and expense of further litigation, without any admission or concession of any fault, liability, or wrongdoing, FHLBB and the FHLBB Defendants, through arms-length negotiations, have agreed to settle all disputes outstanding between them under the terms and conditions

memorialized in a settlement agreement dated November 9, 2011 (the "FHLBB Settlement

Agreement").  The relevant terms of the FHLBB Settlement Agreement, as they relate to the

Debtors, are summarized as follows:[10]

- The FHLBB Settlement Agreement is effective (the "FHLBB Effective Date") upon (i) entry of a stipulated order by the Massachusetts District Court remanding the FHLBB Action to the Massachusetts Superior Court for the sole purpose of effectuating the settlement, entry of a bar order, final dismissal, and administration, if any, of the FHLBB Settlement Agreement (the "Remand Stipulation"); and (ii) the Court's entry of a Lift Stay Order.

- Within ten business days of the later of entry of the Remand Stipulation and the Lift Stay Order the applicable excess insurers under the 2007-08 D&O Policies shall deposit $3,000,000 (the "FHLBB Settlement Amount" and, together with the Stichting Settlement Amount and the SASCO MBS Settlement Amount, the "Settlement Amounts") into an interest bearing escrow account.

- FHLBB and the FHLBB Defendants shall obtain entry of a bar order by the Massachusetts Superior Court barring claims for contribution or indemnification against any FHLBB Defendant, the Debtors or LBI (the "FHLBB Bar Order").

- The FHLBB Effective Date of the FHLBB Settlement Agreement will be when: (i) the Remand Stipulation is entered; (ii) the Court enters the FHLBB Lift Stay Order and it is final and (iii) the Bar Order has been entered and has become final.

- On the FHLBB Effective Date, FHLBB will release the FHLBB Defendants and all past and present employees, officers, directors of the Debtors and LBI, of and from any and all Claims that, *inter alia* (i) relate to the Claims alleged or asserted in the FHLBB Action or in any preceding complaints (or in any forum or proceeding or otherwise), and/or (ii) are based upon the purchase or acquisition of MBS issued or sponsored by any entity owned by or affiliated with LBHI.

- On the FHLBB Effective Date, FHLBB will release the Debtors and LBI of and from any and all Claims that, *inter alia* (i) relate to Claims

---

[10] To the extent there is an inconsistency between this summary and the FHLBB Settlement Agreement, the terms of the FHLBB Settlement Agreement shall control.  Capitalized terms used within this summary but are not otherwise defined shall have the meaning ascribed to them in the FHLBB Settlement Agreement.  The FHLBB Settlement Agreement is not attached to this Motion because the Debtors are not signatories thereto and are not making any payments in connection with the settlement of the FHLBB Action.

alleged or asserted in the FHLBB Action or in any preceding complaints (or in any forum or proceeding or otherwise), and (ii) are based upon the purchase or acquisition of MBS issued or sponsored by any entity owned by or affiliated with LBHI.

▪ While the Debtors are not signatories to the FHLBB Settlement Agreement, they are expressly named as third party beneficiaries thereof.

30.    To the extent necessary, the following excess policy insurers under the 2007-08 D&O Policies will contribute to the Settlement Amounts: (i) Certain Underwriters at Lloyd's, London, subscribing to policy number QA017007 ("Lloyd's"), and Illinois National Insurance Company subscribing to policy number 7421436 ("Illinois National"), the Debtors' thirteenth and fourteenth level excess insurers respectively, under the Debtors' 2007-08 D&O Policies and (ii) Chartis Excess Limited (f/k/a Starr Excess Liability Insurance International Limited) subscribing to policy number 6299064 ("Chartis Excess") and Axis Specialty Limited Bermuda subscribing to policy number 1130900107QA ("Axis Bermuda", the Debtors' fifteenth level excess quota-share insurers and, together with Lloyd's and Illinois National, the "2007-08 Excess Policy Insurers" and their respective policies, the "2007-08 Excess Insurance Policies").

31.    The following primary and excess insurers under the 2008-09 D&O Policies will contribute to the MBS SASCO Settlement Amount: (i) XL Specialty Insurance Company, subscribing to policy number ELU104715-08, the Debtors' primary insurer; (ii) Federal Insurance Company, subscribing to policy number 7043-0876, the Debtors' first level excess insurer, and (iii) U.S. Specialty Insurance Company, subscribing to policy number 24-MGU-08-A16690, the Debtors second level excess insurer (collectively, the "2008-09 D&O Policies").

32.    Although the Debtors are not a party to the SASCO MBS Term Sheet, the Stichting Settlement Agreement or the FHLBB Settlement Agreement, because a portion of the

SASCO Settlement Amount and the complete amount of the FHLBB Settlement Amount and

Stichting Settlement Amount are to be paid under certain of the Debtors' D&O Policies, the

relevant insurers have requested that the Debtors grant them a limited release of claims, with

respect to the MBS Actions and their funding said payments (said releases to be provided to the

D&O Insurers, the "Debtors' Insurers' Releases").  The Debtors Insurers' Releases will not

relinquish any rights to coverage issues unrelated to the MBS Actions.  The form of said releases

are in the process of being finalized and the Debtors anticipate filing the final form of said

releases prior to the hearing at which the Court will consider this Motion.

### Settlement Implementation Payments

33.     As noted above, the remaining aggregate amount available under the

2007-08 D&O Policies is approximately $50 million.  Numerous claims that were made against

the Insureds have been covered under the 2007-08 D&O Policies, as reflected by the

significantly diminished aggregate coverage amount remaining available under those policies

due to payment of Losses.  In addition to settlement payments authorized or awaiting

authorization, the legal costs associated with advancing defense costs to the Insureds pursuant to

the Defense Cost Order will likely result in the 2007-08 D&O Policies being fully exhausted

before the end of the year.

34.     There remains additional work to be done by defense counsel for the

Equity/Debt Director Defendants in connection with implementing settlements of the Lift Stay

Actions in which the Court has authorized or such authorization is pending certain of the

Debtors' excess policy insurers under the 2007-08 D&O Policies to make the settlement

payments in connection with the Lift Stay Actions.  The Debtors anticipate that there will

likewise be additional services needed from defense counsel for the SASCO Defendants in

connection with implementing the SASCO MBS Settlement Agreement.

35.     In both instances, settlement of these Legal Proceedings will result in the

Debtors receiving releases by the parties that have commenced actions against, *inter alia*, the

SASCO Defendants and the Equity/Debt Director Defendants, of any existing or future claims

relating to the settled actions and in some instances, the withdrawal of proofs of claim filed in

these Chapter 11 Cases against the Debtors and their estates.  In order to facilitate the

implementation of settlement of the Lift Stay Actions and the SASCO MBS Action, the Debtors

seek to advance up to an aggregate amount of $1.7 million to pay the legal defense costs of the

Equity/Debt Director Defendants and the SASCO Defendants solely with respect to settlement of

the Lift Stay Actions and the SASCO MBS Action, respectively.  The Debtors will only provide

payment of said Insureds legal defense costs if, and only if, the 2007-08 D&O Policies are

completely exhausted.

36.     The Debtors propose to distribute the funds allocated to pay the legal

defense costs, to the extent applicable and in accordance with the limitations detailed above, as

follows: prior to the Debtors emergence from chapter 11, the various attorneys for the applicable

Equity/Debt Director Defendants and/or SASCO Defendants will submit monthly bills and

expenses subject to review by the Debtors and the Creditors' Committee, and after emergence

only by the Debtors, as to reasonableness.  In addition, before any disbursements are made in

connection with the advancement of defense costs, the Debtors would require that each of the

applicable Insureds execute (a) a written affirmation of the applicable Equity/Debt Director

Defendants and/or SASCO Defendants' the legal costs incurred are solely in connection with the

Equity/Debt Securities Action or SASCO MBS Action, as applicable, and (b) a written

affirmation that no insurance coverage is available under the 2007-08 D&O Policies to pay the applicable legal defense costs.

## Basis for Relief

### The SASCO Settlement Transaction Should be Approved Pursuant to Rule 9019 and Section 363 of the Bankruptcy Code

37.     Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a compromise or settlement is within the sound discretion of the Court.  *Drexel Burnham Lambert Group*, 134 B.R. at 505. Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

38.     The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert*

*Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

39.     Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

40.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in applying this section, have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same). In addition, section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a).

41.     It is generally understood that "[when] the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).   If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).   The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

42.     The SASCO MBS Term Sheet satisfies the legal standards established under Bankruptcy Rule 9019 and section 363(b) of the Bankruptcy Code and is in the best interests of the Debtors' estates.   The terms of the SASCO MBS Term Sheet are the product of a good-faith, arms' length negotiation process.   The parties to the SASCO MBS Term Sheet, including LBHI as an express third party beneficiary of said agreement, were each represented by counsel.   The parties negotiated the terms, provisions and conditions of the SASCO MBS Term Sheet, including, without limitation, the LBHI Payment, over an extended period of time, and as a result of this successful negotiation process, the parties have arrived at the agreed set of terms described herein and in the SASCO MBS Term Sheet that provide mutually acceptable benefits and burdens to all concerned.

43.     The SASCO MBS Term Sheet provides for, among other things, (i) full and final settlement of the SASCO MBS Action, (ii) full and final settlement of certain insurance coverage disputes pertaining to the SASCO MBS Action relating to the same, and (iii) a release

of all existing and potential claims against the Debtors and their estates with respect to the

SASCO MBS Action, including, without limitation, the SASCO Claims.  The Debtors' have

determined that the settlement of the SASCO MBS Action will resolve the potentially billions of

dollars of claims for the relatively *de minimus* amount of $8,300,000.

        44.      One of the principal reasons that unlike prior settlements of claims

asserted again current or former officers and directors the Debtors are making a contribution here

because of the coverage dispute with the 2008-09 D&O Insurers and their unwillingness to

contribute more than $8,300,000 toward the SASCO Settlement Amount, which in turn, created

the $8,300,000 shortfall.  The Debtors are cognizant of their litigation exposure with respect to

litigating the insurance coverage dispute in connection with the SASCO MBS Action.  Although

the Debtors believe that they would prevail in a declaratory judgment action on this issue,

pursuing such litigation before resolving the SASCO MBS Action would put the proposed

settlement at risk and the Debtors' views regarding its position in respect of the insurance

coverage dispute does not equate to a certainty as to a result.  For a contribution of

approximately 21% of the $40 million SASCO Settlement Amount, however, the Debtors are

able to eliminate that uncertainty and facilitate the extinguishment of billions of dollars of

potential claims.  In light of such benefits, the SASCO Settlement Amount, as set forth in the

SASCO MBS Term Sheet, is fair and reasonable, benefits the Debtors, their estates, and their

creditors and should be approved.

### *Settlement Implementation Payments*

        45.      The Debtors' limited advancement of legal defense costs to the

Equity/Debt Director Defendants and the SASCO Defendants solely in connection with the

Equity/Debt Securities Class Action and SASCO MBS Action, respectively, only up to an

aggregate amount of $1.7 million and only in the event that the 2007-08 D&O Policies are

completely exhausted, satisfies the legal standards established under section 363(b) of the

Bankruptcy Code.  Advancing legal defense costs under the terms and conditions set forth

hererin, would provide the relevant Insureds with assurance that if the 2007-08 D&O Policies are

exhausted they would still have a resource for payment of legal defense costs incurred, thereby

facilitating the consummation of settlements in which the Debtors and their estates will receive

the benefit of releases of potentially billions of dollars of claims.  The Debtors submit that there

is ample business justification warranting the proposed expenditure of $1.7 million to achieve

this goal, which will clearly be of material benefit to their estates and their creditors.

### *Granting Limited Releases to  Insurers*

46.    As described above, although none of the Debtors are named as

defendants in the MBS Actions, the Debtors have nonetheless been requested by the insurers

under the applicable D&O Policies, as a condition to their contributing to the Settlement

Amounts, to provide them with the Debtors' Insurers' Releases.

47.    This type of release is similar to the release that the Court, pursuant to an

order entered on October 19, 2011 [ECF No. 21032], authorized the Debtors to give to certain

insurers under the 2007-08 D&O Policies in connection with payment of a $8,250,000 settlement

relating to an action pending in the United States District Court for the Southern District of New

York captioned *The State of New Jersey, Department of Treasury, Division of Investment v.*

*Richard S. Fuld, Jr., et. al.*, 10 Civ. 05201 (LAK), and payment of the Equity/Debt Settlement

Amount.  The Debtors will not relinquish any rights to coverage issues unrelated to the MBS

Actions.  Moreover, as described above, given the structure of the D&O Policies, any claim that

the Debtors might have thereunder are limited to "Side B" reimbursement claims.  The Debtors

have no reimbursement claims, and even if they did they would be subordinated to the MBS

Defendants "Side A" claims.  Accordingly, the Debtors have no claims against the D&O Policy

Insurers.  The Debtors submit, therefore, that, under the circumstances there is more than ample

justification for granting the release and thereby facilitating a settlement eliminates billions of

dollars of potential claims.

48.     For the reasons set forth above, the making of the LBHI Payment and the

Settlement Implementation Payments and providing the Debtors' Insurers' Releases are in the

best interests of the Debtors' estates and a proper exercise of the Debtors' business judgment and

should be approved.

### The Automatic Stay Should be Modified
### Pursuant to Section 362 of the Bankruptcy Code

49.     On thirteen prior occasions, the Court has modified the automatic stay

provided for under section 362(a) of the Bankruptcy Code to the extent applicable, to remove

any impediments to payment by certain of the Debtors' insurers of directors' and officers'

coverage of settlement amounts, defense costs or fees that current or former directors, officers,

and employees of the Debtors incurred or were incurring as defendants in Legal Proceedings.[11]

---

[11] *See* Orders dated March 25, 2009 [ECF No. 3220] (modifying the automatic stay to allow advancement of Defense Expenses with respect to XL Specialty Insurance); November 23, 2009 [ECF No. 5906] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Federal Insurance Company); December 17, 2009 [ECF No. 6297] (modifying the automatic stay to allow payment of settlement amounts by XL Specialty Insurance Company and Federal Insurance Company); August 20, 2010 [ECF No. 10945] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Continental Casualty Company, Certain Underwriters at Lloyd's, London, and U.S. Specialty Insurance Company (HCC)); November 18, 2010 [ECF No. 12896] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Zurich American Insurance Company, ACE Bermuda Insurance Ltd, St. Paul Mercury Insurance Company, XL Specialty Insurance Company and Federal Insurance Company); November 18, 2010 [ECF No. 12895] (modifying the automatic stay to allow payment of settlement amounts by Certain Underwriters at Lloyd's, London and London Market Company); January 13, 2011 [ECF No. 13929] (modifying the automatic stay to allow payment of settlement amount by U.S. Specialty Insurance Company and Zurich American Insurance Company); March 23, 2011 [ECF No. 15277] (modifying the automatic stay to allow payment of settlement amounts by Zurich American Insurance Company); July 21, 2011 [ECF No. 18691] (modifying the automatic stay to allow payment of an arbitral award by Zurich American Insurance Company and ACE Bermuda Insurance Ltd.); September 15, 2011 [ECF No. 20017] (modifying the automatic stay to allow payment of settlement amounts by certain excess policy insurers); October

50.     As stated above, pursuant to eight of the Prior Stay Orders, this Court has granted relief that is identical to certain of the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and MBS Defendants that are governed by the same terms and conditions as the D&O Policies.  Accordingly, because cause to modify the automatic stay to allow for the advancement of insurance proceeds to pay settlement amounts was found to exist in the Prior Stay Orders, *a fortiori*, such cause exists here as well.  If, however, the Debtors must independently demonstrate that such cause exists, as described above and below, it is beyond question but that such a modification of the automatic stay is warranted with respect to payment of the Settlement Amounts, including the SASCO Insurers' Payment by the D&O Policy Insurers.

## A.     *The Proceeds Are Not Property of the Estate*

51.     Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate.  It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a policy and ownership of the *proceeds* of a policy.  While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds

---

19, 2011 [ECF No. 21029] (modifying the automatic stay to allow settlement payment under the Excess Insurance Policies); October 19, 2011 [ECF No. 21039] (modifying the automatic stay to allow advancement of Defense Expenses with respect to the Debtors' twelfth through fifteenth level Excess Policy Insurers); and October 20, 2011 [ECF No. 21044] (modifying the automatic stay to allow settlement payment in connection with the California Municipalities Actions) (collectively, the "Prior Stay Orders").

of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

52.    In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. See also *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law").

53.    The D&O Policies contain an unambiguous priority of payments endorsement that expressly subordinates any potential rights of the Debtors to proceeds payable under the policies to the rights of the MBS Defendants.  The priority of payment endorsements

are an enforceable contractual provision and should be upheld for the benefit of the MBS

Defendants as intended.  *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11,

2002) [ECF No. 3278] (holding that priority of payment provision was an enforceable

contractual right).

54.     Consistent with the purpose of such policies, the Debtors purchased the

D&O Policies primarily to provide insurance coverage to their officers and directors, including

the MBS Defendants.  *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)

("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests

and not a vehicle for corporate protection.").  The Debtors' speculative rights to any residual

proceeds, which would be payable only in the event that the Debtors indemnified the MBS

Defendants and which are subject to an express contractual subordination provision, should not

alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

**B**.     ***Cause Exists to Modify the Automatic Stay, to the Extent***
        ***That it Applies, to Allow Payment of the Settlement Contribution***

55.     Even if the proceeds from the D&O Policies are determined to be property

of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the

automatic stay to allow for the payment of the Settlement Amounts as required under the Excess

Insurance Policies.  It is not uncommon for courts to grant stay relief to allow payment of

settlement amounts to directors and officers, especially when there is no evidence that direct

coverage of the debtor will be necessary.  *See Allied Digital*, 306 B.R. at 513.

56.     Allowing the applicable D&O Policy Insurers to make their respective

settlement contributions will, in fact, benefit the Debtors' estates.  The Debtors believe that they

have an obligation under their by-laws to make settlement payments on behalf of the MBS

Defendants.  If the D&O Policy Insurers are barred from making the Settlement Amounts due to

the enforcement of the automatic stay, the MBS Defendants may assert indemnification claims against the Debtors for such amounts.  Consequently, payment of the Settlement Amounts under the D&O Policies will reduce or eliminate the claims that the MBS Defendants could assert against the Debtors.

57.    Modifying the automatic stay will not harm the Debtors' estates.  As explained above, any rights the Debtors have to the proceeds of the D&O Policies are contractually subordinated to the rights of the MBS Defendants pursuant to the priority of payments clauses.

58.    Accordingly, the Debtors respectfully submit that there are no legal impediments to the direct payment by the D&O Policy Insurers under the D&O Policies of their respective settlement contributions with respect to the MBS Actions.  Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the either of the D&O Policies, the Debtors submit that any such interest is nominal and in any event cannot be determined until the MBS Defendants' losses have been quantified and paid.  Payment of the Settlement Amounts pursuant to the D&O Policies is necessary to minimize those losses.  Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the D&O Policy Insurers to make payment of their respective settlement contribution pursuant to the terms of the MBS related settlement agreements and subject to the terms of the D&O Policies.

59.    In making this Motion, neither the Debtors, the MBS Defendants, nor the D&O Policy Insurers are waiving any of their respective rights under the D&O Insurance Policies or any other insurance policy.  In addition, the Debtors are not seeking a determination of the D&O Policy Insurers' obligation to pay any particular expense or claim of the MBS

Defendants. Rather, in this respect, the Debtors seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow these insurers to fulfill their obligations, if any and whatever they may be, to pay the Settlement Amounts under the terms of the D&O Policies.

## Notice

60.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the MBS Defendants; (vii) respective counsel for the D&O Policy Insurers; (vii) counsel for SASCO; (viii) counsel for FHLBB; (ix) counsel for Stichting; and (x) all parties who have requested notice in these chapter 11 cases. No other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: November 9, 2011
        New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors
and Debtors in Possession

# EXHIBIT A

*In re Lehman Brothers Mortgage-Backed Securities Litigation*
No. 08-CV-6762 (LAK)

**TERM SHEET TO SETTLE CLASS ACTION**

1.  **Settlement Amount:** Forty million dollars ($40,000,000) in cash (the "Settlement Amount"), of which (i) thirty-one million seven hundred thousand dollars ($31,700,000) shall be paid by certain insurers ("Insurers") that issued directors and officers insurance policies to Lehman Brothers Holdings, Inc. ("LBHI"), for the 2007-2008 and 2008-2009 policy periods (the "D&O Policies") and (ii) eight million three hundred thousand dollars ($8,300,000) shall be paid by LBHI (the "LBHI Payment").

2.  **Settling Parties:** The Settling Parties include Lana Franks Harber, Edward Grieb, Richard McKinney, Kristine Smith, James J. Sullivan, Samir Tabet, and Mark Zusy (the "Defendants") and, on behalf of the Class as defined in ¶ 7 below, Lead Plaintiff Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Trust (the "Operating Engineers" or "Lead Plaintiff") and Additional Named Plaintiffs New Jersey Carpenters Health Fund and Boilermakers-Blacksmith National Pension Trust (collectively with Operating Engineers, "Plaintiffs") in the action captioned *In re Lehman Brothers Mortgage-Backed Securities Litigation,* No. 08-CV-6762 (LAK) (the "Class Action") and proposed intervenors Iowa Public Employees' Retirement System ("IPERS") and Public Employees' Retirement System of Mississippi ("MissPERS" and, with IPERS, the "Intervenors").

3.  **Bankruptcy Court Order:** The Settlement is subject to entry of an order (the "Bankruptcy Order") by the Bankruptcy Court for the Southern District of New York in the matter captioned *In re Lehman Brothers Holdings, Inc., et al,* Chapter 11 Case No. 08-13555 (the "Bankruptcy Case"), (i) authorizing relief from the automatic stay to the extent applicable and approving, solely to the extent necessary, the use of the proceeds of the applicable D&O Policies and (ii) authorizing the LBHI Payment to fund the Settlement

Amount. Defendants and/or LBHI shall take all necessary steps to file motions seeking such relief in the Bankruptcy Case on before November 9, 2011.

4.    **Deposit of Settlement Amount:** The Settlement Amount shall be deposited into an interest-bearing Escrow Account the later of (i) within 10 business days of entry of the Bankruptcy Order, or (ii) execution of the Agreement (as defined below). Counsel for the Lead Plaintiff ("Lead Counsel") and counsel for Defendants shall jointly control the Escrow Account and shall provide the escrow agent with instructions consistent with appropriate court approvals and the terms of the Agreement (as defined below). Following the dates upon which the Bankruptcy Court entered the Bankruptcy Order and the District Court (as defined below) has granted final approval of the Settlement, counsel for the Defendants or their liaison counsel shall withdraw from their joint control of the Escrow Account.

5.    **Motion for Preliminary Approval:** The Settling Parties will file a Stipulation of Settlement and Release (the "Agreement") and motion for preliminary approval in the Class Action pending in the United States District Court for the Southern District of New York (the "District Court") within 30 days of the entry of the Bankruptcy Order (unless the Settling Parties agree to an extension of time). The Settling Parties will endeavor in good faith to negotiate the settlement papers so as to avoid unnecessary cost and delays. Counsel for Defendants shall be available for regular conference calls and drafting sessions in order to document the Agreement in a timely manner. The Settling Parties have executed this Term Sheet with the understanding that an Agreement will be agreed upon by the Settling Parties. The Settling Parties will consult with Hon. Daniel Weinstein or, at his direction, Jed D. Melnick (with Hon. Daniel Weinstein, the "Mediator"), over disputes related to the drafting or execution of the Agreement, per ¶ 20 below.

2

6.      **Bar Order:** The Agreement will include a provision requiring, upon

entry of the judgment, the entry of a mutual bar order in accordance with 15 U.S.C.

§78u-4(f)(7)(A) that is consistent with Second Circuit precedent.

7.      **Class Certification:** The Settling Defendants will stipulate to certification of

the Class for settlement purposes only, to the appointment of Plaintiffs and Intervenors as the

Class Representatives, and to the appointment of Lead Counsel as Class Counsel. The

settlement class is defined as follows:

> All persons or entities who purchased or otherwise acquired
> mortgage pass-through certificates pursuant or traceable to
> Structured Asset Securities Corporation's August 16, 2005
> Registration Statement or May 10, 2006 Registration
> Statement, and the accompanying prospectuses and prospectus
> supplements in one or more of the following 17 offerings and
> who were damaged thereby: the LXS 2005-5N offering, LXS
> 2005-7N offering, LXS 2005-6 offering, LXS 2005-8
> offering, LXS 2006-2N offering, LXS 2006-14N offering,
> LXS 2006-16N offering, LXS 2006-GP2 offering, GMFT
> 2006-AR4 offering, GMFT 2006-AR5 offering, SARM 2006-
> 1 offering, SARM 2006-4 offering, SARM 2007-6 offering,
> SASCO 2007-BC1 offering, SASCO 2007-EQ1 offering,
> SASCO 2007-OSI offering and FFMLT 2006-FFB offering
> (collectively, the "Certificates"). Excluded from the Class are
> the Lehman Brothers Holdings, Inc. ("LBHI"), Lehman
> Brothers, Inc. ("LBI"), Structured Asset Securities
> Corporation ("SASCO"), Defendants and their respective
> officers, affiliates and directors at all relevant times, members
> of their immediate families and their legal representatives,
> heirs, successors or assigns.

8.      **The Class' Release:** Upon final judicial approval of the Agreement, the

Bankruptcy Order and a judgment which includes the Bar Order, and exhaustion of all appeal

periods and all appeals if any, relating to said orders (the "Effective Date"), and the Payment of

the Settlement Amount, the Class will release as against the Defendants and any other releasees

to be defined in the Agreement including, *inter alia*, the Insurers, the Debtors[1] in the

---

[1]  As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special
Financing Inc. ("LBSF"); Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Commercial Corporation;

Bankruptcy Case and Lehman Brothers Inc. (collectively, the "Released Parties"), any and all

claims, rights, remedies, demands, liabilities, or causes of action of every nature and description

whatsoever (including, but not limited to, any claims for damages, punitive damages,

compensation, restitution, rescission, interest, attorneys' fees/costs, expert or consulting fees,

and any other costs, expenses, losses or liabilities of any kind or nature whatsoever), whether

legal, statutory or equitable in nature to the fullest extent that the law permits their release in

this action, by or on behalf of Plaintiffs, Intervenors or any other Class Members against any of

the Released Parties that have been alleged or could have been alleged in the Complaint or in

any preceding complaints by any of the Class Members (or in any forum or proceeding or

otherwise), whether based on federal, state, local, statutory, or common law or any other law,

rule, or regulation, whether known claims or unknown claims, whether class, representative, or

individual in nature, whether fixed or contingent, accrued or unaccrued, liquidated or

unliquidated, whether at law or in equity, matured or unmatured, that (i) are based upon or arise

from any of the allegations, transactions, facts, matters, events, disclosures, statements,

occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that

have been alleged or asserted in the Complaint or in any preceding complaints (or in any forum

or proceeding or otherwise), and (ii) are based upon the purchase or acquisition of the

Certificates.  Notwithstanding the foregoing, the Class will not release any claims relating to the

enforcement of the settlement.  Plaintiffs and Intervenors further agree, that any proofs of

claims that they have filed in the Bankruptcy Case that come within the scope of the foregoing

release, including without limitation proofs of claim nos. 22023, 27760 and 22024 (collectively,

all such proofs of claim the "Proofs of Claim") shall, upon the Effective Date, be disallowed

---

Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residentail Properties Loan Finance S.a.r.]; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Rancch LLC: LB 2080 Kalakaua Owners LLC; Merit LLC; LB Sommerset LLC; LB Preferred Somerset LLC; LB 745 LLC; and PAMI Statler Arms LLC.

with prejudice, and, within ten business days of the Effective Date, Plaintiffs and Intervenors shall file a notice on the docket in the Bankruptcy Case withdrawing the Proofs of Claim.

9.     **The Settling Defendants' Release**: Upon the Effective Date, the Defendants will release as against Plaintiffs and Intervenors, and their respective attorneys, and any other Class member, all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Defendants, except for claims relating to the enforcement of the settlement.

10.     **Not a Claims-Made Settlement**: This is not a claims-made settlement; there will be no reversion of settlement funds to Defendants or the Insurers if the Effective Date occurs.

11.     **Claims Administration and Plan of Allocation**: The Defendants will not have any involvement in the selection of the claims administrator, the claims administration process, or the plan of allocation of the Settlement proceeds. The claims administrator shall be selected solely by Lead Counsel, and the plan of allocation will be proposed solely by Lead Counsel, subject to Court approval. The Defendants shall not object to such proposed plan of allocation.

12.     **Costs of Notice and Settlement Administration**: Subject to entry of the Bankruptcy Order, notwithstanding the fact that the Effective Date has not yet occurred, the actual costs of notice and settlement administration will be paid from the Escrow Account, not to exceed a reasonable agreed-upon amount that will be set forth in the Agreement, without further order of the Court, provided that no portion of the LBHI Payment shall be paid or expended for any purpose prior to the Effective Date. In the event that the settlement is not consummated, amounts paid for actual costs of notice and settlement

5

administration shall not be returned or repaid to the Defendants or the Insurers but the full amount of the LBHI Payment shall be repaid to LBHI.

13. **Lead Counsel's Attorneys' Fees and Expenses**: Lead Plaintiff and Intervenors' Counsel's attorneys' fees and expenses, as awarded by the District Court, shall be paid from the Escrow Account upon the approval of the settlement by the District Court, notwithstanding any appeals, subject to a customary agreement by Lead Counsel and Intervenors' Counsel to repay any such funds in the event the settlement is not finally approved or the fee is not approved or is reduced on appeal.

14. **Class Payment**: Payment and/or distribution of any of the Settlement Amount to the class members shall only be made after the Effective Date. In the event the Settlement is terminated or the Effective Date does not occur for any reason, the Settling Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of the date and time immediately before the execution of this Term Sheet and the Settlement Amount paid by the Insurers on behalf of the Defendants, together with any interest earned thereon, less any taxes actually paid, due or incurred with respect to such income, and less any reasonable administration costs actually paid or incurred not to exceed a reasonable agreed upon amount, shall be returned to the Insurers.

15. **Stay of Proceedings**: Upon the execution of this Term Sheet, (i) the parties shall promptly notify the District Court of the agreement in principle and request that the District Court proceedings against the Defendants be suspended and may disclose the Settlement Amount to the District Court upon request of the District Court; and (ii) Defendants, Lead Plaintiff and Intervenors shall notify the United States Court of Appeals for the Second Circuit of the agreement in principle and request that the appeal designated Case No. 11-1982 be suspended pending final approval of the settlement (at which time the appeal will be dismissed) or, if such suspension is not possible, Lead Plaintiff and

6

Intervenors shall request a remand of the appeal to the District Court pending such final approval.

16.    **Confidentiality:** The parties shall keep strictly confidential the settlement and the terms of the settlement until submission of the motion to the Bankruptcy Court for a Bankruptcy Order, except (i) for notifying the District Court of the agreement as set forth in ¶ 5; (ii) that Defendants may disclose the Settlement Amount and the terms of the settlement to plaintiffs in the actions captioned *Stichting Pensioenfonds ABP v. Franks, et al.*, 10 Civ. 6637 (LAK), and *Federal Home Loan Bank of Boston v. Franks, et al.*, 11 Civ. 10924 (GAO), on a confidential basis in the context of settlement discussions with those plaintiffs; and (iii) that the Defendants may disclose the settlement and the terms of the settlement on a confidential basis to the LBHI and its insurance broker and its counsel, the statutory Creditors' Committee appointed in the Bankruptcy Case and its counsel and advisors, and the Insurers and their counsel.

17.    **Rule 11 Compliance:** The Defendants, Plaintiffs and Intervenors agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and that the proposed final judgment will contain a statement to reflect this compliance.

18.    **Public Statements:** To the extent practicable, the Settling Parties shall provide to each other, in advance, any public statement announcing the settlement.

19.    **Resolution of Disputes:** The Settling Parties will consult with the Mediator over any dispute as to the finalization of the settlement documentation. If for any reason the Mediator is unavailable or has a conflict, a substitute neutral will be agreed upon by the Settling Parties, or in the absence of agreement, appointed by the Mediator.

20.    **Binding Agreement:** This Term Sheet is intended by the Settling Parties to be a binding agreement that sets forth material terms and obligations of the Settling Parties in

connection with the settlement, and the Settling Parties shall use their best efforts to consummate the settlement contemplated herein.

21.   **Third Party Beneficiary**:  The Debtors are express third party beneficiaries of this Term Sheet and may enforce the provisions hereof.

22.   **Execution**:  This Term Sheet may be executed in counterparts and facsimiles and electronic copies (in PDF form or otherwise) of signatures shall be valid.

IT IS HEREBY AGREED by the undersigned as of November 2, 2011.

8

COHEN MILSTEIN SELLERS & TOLL PLLC

By: _____

Steven J. Toll
Joel P. Laitman
Christopher Lometti
Richard A. Speirs
Michael B. Eisenkraft
Daniel B. Rehns
Kenneth M. Rehns

88 Pine Street, Fourteenth Floor
New York, New York 10005
(212) 828-7797
(212) 828-7745 (Facsimile)

*Attorneys for Lead Plaintiff, Intervenor IPERS and the Class*

WOLLMUTH MAHER & DEUTSCH LLP

By: _____

William A. Maher
Michael C. Ledley

500 Fifth Avenue
New York, New York 10110
212-382-3300
212-382-0050 (Facsimile)

*Attorneys for Defendants Lana Franks*
*Harber, Edward Grieb, Richard McKinney,*
*Kristine Smith, James J. Sullivan, Samir*
*Tabet and Mark L. Zusy*

WOLF POPPER LLP

By: _____

Lester L. Levy
James A. Harrod

845 Third Avenue
New York, N.Y. 10022
(212) 759-4600
(212) 486-2093 (Facsimile)

*Attorneys for Intervenor Miss. PERS*

9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
: 
In re                                                              :        Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,     :        08-13555 (JMP)
:
Debtors.                                    :        (Jointly Administered)
:
-------------------------------------------------------------------x

ORDER GRANTING DEBTORS' MOTION PURSUANT
TO SECTIONS 105, 362 AND 363 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE
9019 FOR (I) APPROVAL OF A COMPROMISE AND SETTLEMENT
IN CONNECTION WITH A MORTGAGE BACKED SECURITIES RELATED
ACTION (II) AUTHORITY TO ADVANCE LIMITED LEGAL DEFENSE COSTS (III)
MODIFICATION OF THE AUTOMATIC STAY TO ALLOW SETTLEMENT
PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES AND (IV)
AUTHORITY TO GRANT LIMITED RELEASES TO CERTAIN INSURERS UNDER
<u>DIRECTORS AND OFFICERS INSURANCE POLICIES</u>

Upon the motion, dated November 9, 2011 (the "<u>Motion</u>"),[1] of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases,

including, Structured Asset Securities Corporation ("<u>SASCO</u>"), as debtors-in-possession

(together, the "<u>Debtors</u>"), pursuant to sections 105, 362 and 363 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") for (i) approval of the compromise and settlement of the SASCO MBS

Action in accordance with the terms, conditions and provisions set forth in the SASCO MBS

Term Sheet, and to consummate the transactions contemplated thereunder, including, without

limitation, LBHI making the LBHI Settlement Payment; (ii) authority to make the Settlement

Implementation Payments; (iii) modification of the automatic stay set forth in section 362 of the

Bankruptcy Code to allow the applicable D&O Policy Insurers, to the extent necessary, to make

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

settlement payments pursuant to the terms, conditions and provisions set forth in the respective

MBS settlement agreements; and (iv) authority to provide the Debtors' Insurers' Releases, all as

more fully described in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

accordance with the procedures set forth in the second amended order entered on June 17, 2010

governing case management and administrative procedures for these cases, ECF No. 9635, on (i)

the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

Southern District of New York; (vi) counsel to the MBS Defendants; (vii) respective counsel for

the D&O Policy Insurers; (vii) counsel for SASCO; (viii) counsel for FHLBB; (ix) counsel for

Stichting; and (x) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy

Code and Bankruptcy Rule 9019, the Debtors are duly authorized to make the LBHI Payment

and to take all actions contemplated to be taken by the Debtors under or pursuant to terms and provisions of the SASCO MBS Term Sheet and, following the execution and delivery thereof, the SASCO MBS Settlement Agreement, it being understood that any payments and/or actions described in this paragraph which are made or taken by the Debtors or their affiliates may be made or taken without the necessity of (x) any further court proceedings or approval or (y) any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to make the Settlement Implementation Payments in accordance with the terms described in the Motion; and it is further

ORDERED that pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to grant and provide the Debtors' Insurers' Releases; and it is further

ORDERED that pursuant to sections 105(a) and 362 of the Bankruptcy Code, the automatic stay, to the extent applicable, is hereby modified to, and without further order of this Court, allow payment of the Settlement Amounts provided for in the SASCO MBS Term Sheet, Stichting Settlement Agreement and FHLBB Settlement Agreement, respectively, on behalf of the MBS Defendants from the applicable D&O Policy Insurers pursuant to the terms of their respective policies; and it is further

ORDERED the Debtors are authorized to execute all documentation necessary to allow the applicable D&O Policy Insurers to fund the Settlement Amounts on behalf of the MBS Defendants pursuant to the SASCO MBS Term Sheet, Stichting Settlement Agreement and FHLBB Settlement Agreement; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the applicable D&O Policy Insurers, the Debtors or the MBS Defendants provided for under the terms, conditions and limitations of the D&O Policies; and it is further

ORDERED that all parties to the D&O Policies reserve all rights and defenses that they would otherwise have with respect thereto; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the D&O Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the D&O Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that nothing in this Order shall constitute a determination of any insurance coverage rights or obligations under the D&O Policies or any other insurance policies; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: November __, 2011
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE