Jeff J. Friedman
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for Royal Bank of Canada*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
:
In re:                                                             :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS, INC., et al.,                            :    Case No. 08-13555(JMP)
:
Debtors.                                                           :
:
------------------------------------------------------------------ x

### OBJECTION OF ROYAL BANK OF CANADA TO THE ASSUMPTION OF ISDA MASTER AGREEMENTS BY LEHMAN BROTHERS COMMERCIAL CORPORATION AND LEHMAN BROTHERS SPECIAL FINANCING, INC.

Royal Bank of Canada ("RBC"), by and through its undersigned counsel, hereby objects to (1) the assumption of the ISDA Master Agreement between RBC and Lehman Brothers Commercial Corporation ("LBCC"); and (2) the assumption of the ISDA Master Agreement between RBC and Lehman Brothers Special Financing, Inc. ("LBSF"), as provided for in the Debtors' Plan Supplement [Docket No. 21254], dated October 25, 2011 (the "Plan Supplement"), and in support thereof, respectfully represents as follows:

# Background

1.   RBC and LBCC entered into a standard form 1992 ISDA Master Agreement, dated as of December 3, 1997 (the "LBCC Master Agreement"). LBCC's obligations thereunder were guaranteed by Lehman Brothers Holdings, Inc. ("LBHI") pursuant to a Guarantee of even date therewith. Under the LBCC Master Agreement, RBC and LBCC subsequently entered into multiple swap transactions. Subsequent to the default caused by the bankruptcy filing of LBHI, RBC elected to terminate the transactions with LBCC, designating September 16, 2008 as the early termination date in accordance with the LBCC Master Agreement. That termination was carried out by RBC in accordance with the terms of the LBCC Master Agreement and, after appropriate netting, resulted in a payment being due from LBCC to RBC in the amount of $3,539,126.48 for which a proof of claim was timely filed by RBC [Claim No. 14048] (the "LBCC Claim").

2.   Separately, RBC and LBSF entered into a standard form 1992 ISDA Master Agreement, dated as of December 3, 1997 (the "LBSF Master Agreement"). LBSF's obligations thereunder were guaranteed by LBHI pursuant to a Guarantee of even date therewith. Under the LBSF Master Agreement, RBC and LBSF subsequently entered into multiple swap transactions. Subsequent to the default caused by the bankruptcy filing of LBHI, RBC elected to terminate the transactions with LBSF, designating September 16, 2008 as the early termination date in accordance with the LBSF Master Agreement. That termination was carried out by RBC in accordance with the terms of the LBSF Master Agreement and, after appropriate netting, resulted in a payment being due from LBSF to RBC in the amount of $48,763,517.64 for which a proof of claim was timely filed by RBC [Claim No. 14047] (the "LBSF Claim").

## Debtors' Plan and Plan Supplement

3. On September 1, 2011, LBHI and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 19628] (the "Plan").

4. Section 11.1 of the Plan provides that the Debtors intend to assume, inter alia, every executory contract and unexpired lease

> that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; provided, however, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed.

Plan, Section 11.1 (second emphasis added).

5. Notwithstanding Section 11.1 of the Plan, in the Plan Supplement, the Debtors indicate that their assumption is "subject to . . . adjudication by the Bankruptcy Court[] as to the cure amounts or requirements for adequate assurance of future performance" and that the Debtors reserve the right to reject any listed contract if "the cure amount or requirements for adequate assurance, as ultimately determined either before or after the Effective Date, are in excess of the amounts claimed by the Debtors . . . ." See Plan Supplement, Ex. 2 (emphasis added).

6. The Plan Supplement indicates that the Debtors intend to assume, subject to their purported right to change their minds and reject, both the LBCC Master Agreement and the LBSF Master Agreement (together, the "Master Agreements").

7. Pursuant to two notices, both entitled Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011, the Debtors notified RBC of their position that the cure amount due in connection with the assumption of each of the Master Agreements is $0.

## Each of the Master Agreements Appears No Longer Executory

8. It is questionable, in light of the termination of all swap transactions under each of the Master Agreements, whether either of the Master Agreements is an "executory contract" under section 365 of title 11 of the United States Code (the "Bankruptcy Code").[1]  Under the Countryman definition, which has been adopted by the Second Circuit, "an executory contract is one 'under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.' " See COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 379-80 (2d Cir. 2008) (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 MINN. L. REV. 439, 460 (1973)). "Executoriness and the debtor's rights with respect to assumption or rejection of an executory contract are normally assessed as of the petition date . . . ." Id. at 381; see also In re Orla Enters., 399 B.R. 25, 29 (Bankr. N.D. Ill. 2009) ("The focus of whether a contract is executory is determined by looking

---

[1] Indeed, the Plan Supplement and Section 11.1 of the Plan both provide that the inclusion in the Plan Supplement of a contract to be assumed is not a concession by the Debtors that the contract is executory.

at the obligations as they existed at the date of filing the bankruptcy petition."); Debtors' Opposition to Motion for Summary Judgment, at ¶¶ 16-17, In re Lehman Bros. Holdings Inc., 422 B.R. 407 (Bankr. S.D.N.Y. 2010), [Docket No. 6] [Such summary judgment opposition, hereinafter "LBSF Memorandum"] ("[W]hen the non-debtor party has failed to perform the designated affirmative act prior to the bankruptcy filing, the contract remains valid and becomes the property of the bankruptcy estate.").

9. Contracts containing only the remaining obligation to pay money are not considered executory, even where such payment obligation is coupled with de minimis non-payment obligations. See In re Gen. Growth Props., Inc., 451 B.R. 323, 329 (Bankr. S.D.N.Y. 2011) ("[The debtor] does not assert that the [loan note] is an executory contract, much less an unexpired lease, accepting the obvious fact that the only obligation remaining to be performed by [the debtor] under the [loan note] is repayment and that loan agreements are generally not considered to be executory contracts."); In re Chateaugay Corp., 102 B.R. 335, 346-47 (Bankr. S.D.N.Y. 1989) ("Even if this Court held that the parties' off-setting monetary obligations did in fact constitute a material remaining performance obligation, it is clear that such obligations merely represent obligations for the payment of money only and are therefore insufficient to make these [loan agreements] executory."); In re Calpine Corp., No. 05-60200 (BRL), 2008 WL 3154763, at *4 (Bankr. S.D.N.Y. Aug. 4, 2008) ("[T]here is no performance remaining due from [the debtor] under the [l]oan [a]greement. [The debtor] already has lent [the borrower] the funds called for under the [l]oan [a]greement, the loan matured . . . and [the debtor] is seeking in its [c]ounterclaim to collect funds owed under [the borrower's] repayment obligation.").

10. Although the Court has previously held that a particular ISDA Master Agreement was an executory contract under section 365, the disposition of that contract was materially

different than that of each of the Master Agreements in this instance. See In re Lehman Bros. Holdings Inc., 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010) (finding that (1) "all obligations of the parties under the ISDA Master Agreement remain[ed] outstanding, the failure of either party to complete performance would constitute a material breach excusing the performance of the other" and (2) "each of LBSF and [its counterparty] ha[d] unsatisfied contractual obligations to make various payments"). In that case, the counterparty "did not send its termination notice notifying the parties of an Event of Default and designating the relevant Event of Default as required by the ISDA until December 1, 2008, well after LBSF commenced its bankruptcy case on October 3, 2008." LBSF Memorandum, at ¶ 10. "Nor did [the counterparty] purport to take other affirmative steps prior to LBSF's bankruptcy filing required to effectuate the modification of LBSF's rights to payment priority or to Unwind Costs otherwise owed it." Id. Accordingly, because the ISDA Master Agreement provided that the parties' obligations survived a termination, and because each party had an ongoing obligation to continue making payments until the transactions were unwound, the ISDA Master Agreement was held to be executory.

11.    Unlike the parties to the above proceeding, here, RBC sent LBCC and LBSF each an effective Notice of Termination prior to the LBCC and LBSF Petition Dates, terminating all outstanding swap transactions entered into under the respective Master Agreements on September 16, 2008. Admittedly, there is a dispute over whether, as a result of the termination of the swaps under each of the Master Agreements, which party owes the other money. It is indisputable, however, that only one party to each of the Master Agreements has a remaining payment obligation. While each party's respective obligations under the Master Agreements survive the terminations, see In re Lehman Bros. Holdings Inc., 422 B.R. at 416, as of today, the only material obligation remaining under the Master Agreements is for one party to pay the

other. Accordingly, it appears that the Master Agreements are not executory because the parties' remaining mutual obligations, if any, are so immaterial that a breach by one party would not relieve the other from continued performance. See In re Penn Traffic Co., 524 F.3d at 379-80; In re Gen. Growth Props., Inc., 451 B.R. at 329; In re Chateaugay Corp., 102 B.R. at 346-47; In re Calpine Corp., 2008 WL 3154763, at *4. The only material obligation remaining under each of the Master Agreements, subject to a resolution of the dispute between the parties, is the payment of money by one party or the other.

### The Debtors Must Decide Finally to Assume or Reject Each of the Master Agreements by the Confirmation Date of the Plan

12.     Even if the Master Agreements are executory, pursuant to sections 365(d)(2) and 1123(b)(2) of the Bankruptcy Code, the Debtors may not elect to assume each of the Master Agreements while reserving the right to change their minds at any time "after the Effective Date" and reject either of the Master Agreements in the event that they are dissatisfied with the Court's determination of the cure amount owed under either of the Master Agreements or any of the requirements regarding adequate assurance of future performance under either of the Master Agreements. Indeed, the Plan Supplement's reservation of the Debtors' right to change their minds and reject any executory contract listed in the Plan Supplement after the Confirmation Date is inconsistent with the language contained in the Debtors' own Plan. The Debtors' treatment of the Master Agreements is a "heads I win, tails you lose" concept that is tantamount to an indefinite extension of the Debtors' time to assume or reject in contravention of the requirements of the Bankruptcy Code.

13.     Under section 365(d)(2) of the Bankruptcy Code, a debtor may assume or reject an executory contract "at any time before the confirmation of a plan." Section 1123(b)(2) also

permits a debtor, "subject to section 365," to provide for the assumption or rejection of an executory contract under a chapter 11 plan. While a debtor may provide for the assumption or rejection to become effective post-confirmation, it must decide whether to assume or reject the executory contract before the plan is confirmed. See 11 USC § 365(d)(2); NLRB v. Bildisco & Bildisco, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract . . . ."); In re Dana Corp., 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006) (" '[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract.' " (quoting In re Adelphia Commc'ns Corp., 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003)); see also Fla. Dept. of Rev. v. Piccadilly, 554 U.S. 33, 46 (2008) ("We agree with Bildisco's commonsense observation that the decision whether to reject a contract or lease must be made before confirmation. But that in no way undermines the fact that the rejection takes effect upon or after confirmation of the Chapter 11 plan (or before confirmation if pursuant to § 365(d)(2))." (emphasis in original)).

14.    Here, while the Debtors have purported to assume each of the Master Agreements, the Debtors want to reserve the right to change their minds if they are unhappy with this Court's future determination, perhaps a year or more after confirmation, of any cure amount owed under either of the Master Agreements or any requirement regarding adequate assurance of future performance of their obligations arising under either of the Master Agreements. Effectively, the Debtors want to extend indefinitely the deadline to assume or reject each of the Master Agreements. Section 365(d)(2) and applicable case law, however, explicitly prohibit the Debtors from implementing this scheme.

15. Instead, the Bankruptcy Code dictates that the Debtors have two options regarding the Master Agreements: (1) they may decide to assume either or both of the Master Agreements prior to Plan confirmation and risk being wrong about the respective cure amount or their respective adequate assurance obligations, or (2) they may decide to reject the Master Agreements prior to confirmation of the Plan. See 11 U.S.C. § 365(d)(2);. Bildisco, 465 U.S. at 529; In re Dana Corp., 350 B.R. at 147; In re Adelphia Commc'ns Corp., 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).

16. In the Plan Supplement, however, the Debtors have elected not to pursue either of those options despite the requirements of the Bankruptcy Code. Although the Debtors have purported to "assume" the Master Agreements, by attempting to reserve the right to withdraw either contract from the Plan Supplement list and reject that contract if they are unhappy with the Court's decisions regarding their assumption obligations under section 365, they seek to construct a system under which they have no downside. If the Court agrees with their proposed cure amounts and adequate assurance obligations, they will assume the Master Agreements. If the Court disagrees with their proposed cure amounts or requires unsatisfactory adequate assurance obligations, the Debtors propose that they can reject either of the Master Agreements.

17. RBC submits that even if the Master Agreements are executory, the Debtors must decide whether to assume or reject each of the Master Agreements before the Plan is confirmed. The Bankruptcy Code does not permit them to do otherwise.

### Objection to Cure Amounts and Adequate Assurance of Future Performance

18. Pursuant to section 365, as there was a default by LBSF and a default by LBCC resulting from LBHI's chapter 11 filing, the Debtors may not assume either of the Master

84566692v7

9

Agreements without curing all defaults and providing adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(A), (C); see also E. Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.), 85 F. 3d 992, 999 (2d Cir. 1996) ("If the debtor is in default on the contract, it will not be allowed to assume the contract unless, at the time of the assumption it, inter alia, (a) cures, or provides adequate assurance that it will promptly cure, the default, and (b) provides adequate assurance of its future performance of its obligations under the contract."); In re Jamesway Corp., 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996) (stating debtor may assign unexpired lease only if it assumes it in accordance with the bankruptcy code and provides adequate assurance of future performance by the assignee); In re Lavigne, 183 B.R. 65, 72 (Bankr. S.D.N.Y. 1995) (stating decision to assume executory contract requires cure of existing defaults and providing adequate assurance of future performance).

19.     The Debtors proposed cure amount of $0 for each of the Master Agreements is wrong and is hereby objected to. Additionally, the Debtors have failed to provide any assurance of their ability (1) to promptly pay the correct cure amounts; and (2) to perform in the future under either of the Master Agreements. Accordingly, even if the Master Agreements are executory, they may not be assumed until the Debtors have satisfied these requirements for each of the Master Agreements respectively.

A.     <u>The Correct Cure Amounts are Set Forth in the LBCC Claim and the LBSF Claim</u>

20.     As stated above, the Debtors have asserted that no amounts are due and payable as a cure under either of the Master Agreements. The Debtors are incorrect. As indicated in the LBCC Claim, $3,539,126.48 is due and owing under the LBCC Master Agreement. As indicated

in the LBSF Claim, $48,763,517.64 is due and owning under the LBSF Master Agreement. The LBCC Claim and LBSF Claim have been provided to the Debtors.

21.     In addition to the amounts listed above, RBC specifically reserves its right to payment of any additional amounts that may accrue or otherwise become due and owing under (1) the LBCC Master Agreement between the date hereof and the effective date of any assumption of the LBCC Master Agreement (the amount of the LBCC Claim, inclusive of any such additional amounts, the "Correct LBCC Cure Amount"); and (2) the LBSF Master Agreement between the date hereof and the effective date of any assumption of the LBSF Master Agreement (the amount of the LBSF Claim, inclusive of any such additional amounts, the "Correct LBSF Cure Amount" and together with the Correct LBCC Cure Amount, the "Correct Cure Amounts").

B.      The Debtors Have Failed to Provide Adequate Assurance of Future Performance

22.     The Debtors may not assume the Master Agreements because they have failed to provide any assurance that they will be able to pay RBC the Correct Cure Amounts in full, in cash. The Debtors' desire to be able to reject either contract if the Court determines a cure amount is owed to RBC under that contract, as RBC contends, evidences the Debtors' lack of assurance that they will pay any cure amount.

23.     Finally, the Debtors are liquidating. It is unclear how the Debtors propose they will perform in the future and have the financial wherewithal to do so if either of the Master Agreements were to be assumed. Moreover, LBHI had provided credit enhancement in the form a full guarantee of LBCC's and LBSF's obligations under the respective Master Agreements and

the Debtors have provided no indication how or whether additional credit enhancement from a creditworthy entity will be provided.

24. RBC reserves its right to supplement this objection and all other rights, claims and defenses with respect to the Debtors.

## Conclusion

25. For the reasons stated above, RBC respectfully requests that this Court (a) compel the Debtors to make a final decision to assume or reject the LBCC Master Agreement prior to confirmation of the Plan, and, if they decide finally to assume the LBCC Master Agreement, require the Debtors to pay the Correct LBCC Cure Amount in full, in cash, no later than the effective date of the Plan and provide adequate assurance of future performance; (b) compel the Debtors to make a final decision to assume or reject the LBSF Master Agreement prior to confirmation of the Plan, and, if they decide finally to assume the LBSF Master Agreement, require the Debtors to pay the Correct LBSF Cure Amount in full, in cash, no later than the effective date of the Plan and provide adequate assurance of future performance; and (c) grant such other and further relief as is just and proper.

Dated: New York, New York
       November 9, 2011

                                  KATTEN MUCHIN ROSENMAN LLP
                                  *Attorneys for Royal Bank of Canada*

                                  By:   /s/  Jeff J. Friedman
                                           Jeff J. Friedman
                                  575 Madison Avenue
                                  New York, New York 10022-2585
                                  Telephone: (212) 940-8800