**Hearing Date: December 6, 2011 at 10:00 a.m.**
**Objection Deadline: November 10, 2011 at 4:00 p.m.**

Jeff J. Friedman
Joel W. Sternman
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for Federal Home Loan Bank of New York*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                      :

In re:                                :       Chapter 11

                                       :

LEHMAN BROTHERS HOLDINGS, INC., et al.,       Case No. 08-13555(JMP)

                                       :

                Debtors.              :

------------------------------------------------------------------ x

## OBJECTION OF FEDERAL HOME LOAN BANK OF NEW YORK TO THE ASSUMPTION OF ISDA MASTER AGREEMENT BY LEHMAN BROTHERS SPECIAL FINANCING, INC.

Federal Home Loan Bank of New York ("FHLBNY"), by and through its undersigned

counsel, hereby objects to the assumption of the ISDA Master Agreement between FHLBNY

and Lehman Brothers Special Financing, Inc. ("LBSF"), as provided for in the Debtors' Plan

Supplement [Docket No. 21254], dated October 25, 2011 (the "Plan Supplement"), and in

support thereof, respectfully represents as follows:

### Background

1.      FHLBNY and LBSF entered into a standard form 1992 ISDA Master Agreement,

dated as of April 5, 2000 (the "Master Agreement"). LBSF's obligations thereunder were

guaranteed by Lehman Brothers Holdings, Inc. ("LBHI") pursuant to a Guarantee of even date

therewith.  Under the Master Agreement, FHLBNY and LBSF entered into multiple swap transactions.  Subsequent to the Event of Default under the Master Agreement caused by the bankruptcy filing of LBHI, FHLBNY elected to terminate the transactions with LBSF (the "Terminated Transactions"), designating September 18, 2008 as the early termination date in accordance with the Master Agreement.  That termination was carried out by FHLBNY in accordance with the terms of the Master Agreement and, after appropriate netting, resulted in a payment being due from LBSF to FHLBNY in the amount of $65,489,786.59 for which a proof of claim was timely filed by FHLBNY [Claim No. 42291] (the "FHLBNY Claim").

### Debtors' Plan and Plan Supplement

2.       On September 1, 2011, LBHI and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 19628] (the "Plan").

3.       Section 11.1 of the Plan provides that the Debtors intend to assume, *inter alia*, every executory contract and unexpired lease

> that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; *provided, however*, that the Debtors reserve the right, *on or prior to the Confirmation Date*, to amend the Plan Supplement to remove any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed.

Plan, Section 11.1 (second emphasis added).

4.    Notwithstanding Section 11.1 of the Plan, the Debtors in the Plan Supplement indicate that their assumption is "subject to . . . adjudication by the Bankruptcy Court[] as to the cure amounts or requirements for adequate assurance of future performance" and that the Debtors reserve the right to reject any listed contract if "the cure amount or requirements for adequate assurance, as ultimately determined *either before or after the Effective Date*, are in excess of the amounts claimed by the Debtors. . . ." *See* Plan Supplement, Ex. 2 (emphasis added).

5.    The Plan Supplement indicates that the Debtors intend to assume, subject to their purported right to change their minds and reject, the Master Agreement.

6.    Pursuant to the Notice Of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011, the Debtors notified FHLBNY of their position that the cure amount due in connection with the assumption of the Master Agreement is $0.

## The Master Agreement Appears No Longer Executory

7.    It is questionable, in light of the termination of all swap transactions under the Master Agreement, whether the Master Agreement is an "executory contract" under section 365 of title 11 of the United States Code (the "Bankruptcy Code").[1]  Under the "Countryman" definition, which has been adopted by the Second Circuit, "an executory contract is one 'under which the obligation of both the bankrupt and the other party to the contract are so far

---

[1] Indeed, the Plan Supplement and Section 11.1 of the Plan both provide that the inclusion in the Plan Supplement of a contract to be assumed is not a concession by the Debtors that the contract is executory.

unperformed that the failure of either to complete performance would constitute a material

breach excusing performance of the other.' " *See COR Route 5 Co., LLC v. Penn Traffic Co. (In

re Penn Traffic Co.)*, 524 F.3d 373, 379-80 (2d Cir. 2008) (quoting Vern Countryman, *Executory

Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973)). "Executoriness and the

debtor's rights with respect to assumption or rejection of an executory contract are normally

assessed as of the petition date. . . ." *Id.* at 381; *see also In re Orla Enterprises*, 399 B.R. 25, 29

(Bankr. N.D. Ill. 2009) ("The focus of whether a contract is executory is determined by looking

at the obligations as they existed at the date of filing the bankruptcy petition."); Debtors'

Opposition To Motion For Summary Judgment, at ¶¶ 16-17, *In re Lehman Bros. Holdings Inc.*,

422 B.R. 407 (Bankr. S.D.N.Y. 2010), [Docket No. 6] [Such summary judgment opposition,

hereinafter "LBSF Memorandum"] ("[W]hen the non-debtor party has failed to perform the

designated affirmative act prior to the bankruptcy filing, the contract remains valid and becomes

the property of the bankruptcy estate."). *Id.*

8.    Contracts containing only the remaining obligation to pay money are not

considered executory, even where such payment obligation is coupled with *de minimis* non-

payment obligations. *See In re Gen. Growth Props., Inc.*, 451 B.R. 323, 329 (Bankr. S.D.N.Y.

2011) ("GGP does not assert that the Homart Note is an executory contract, much less an

unexpired lease, accepting the obvious fact that the only obligation remaining to be performed by

GGP under the Homart Note is repayment and that loan agreements are generally not considered

to be executory contracts."); *In re Chateaugay Corp.*, 102 B.R. 335, 346-47 (Bankr. S.D.N.Y.

1989) ("Even if this Court held that the parties' off-setting monetary obligations did in fact

constitute a material remaining performance obligation, it is clear that such obligations merely

represent obligations for the payment of money only and are therefore insufficient to make these

TBT Agreements executory."); *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 3154763, at
*4 (Bankr. S.D.N.Y. Aug. 4, 2008) ("[T]here is no performance remaining due from Calpine
under the Loan Agreement. Calpine already has lent Panda the funds called for under the Loan
Agreement, the loan matured on December 1, 2003 and Calpine is seeking in its Counterclaim to
collect funds owed under Panda's repayment obligation.").

9.    Although this Court has previously held that a particular ISDA Master Agreement
was an executory contract under section 365, the disposition of that contract was materially
different than that of the Master Agreement in this instance. *See In re Lehman Bros. Holdings
Inc.*, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010) (finding that (1) "all obligations of the parties
under the ISDA Master Agreement remain[ed] outstanding, the failure of either party to
complete performance would constitute a material breach excusing the performance of the other"
and (2) "each of LBSF and [its counterparty] ha[d] unsatisfied contractual obligations to make
various payments"). In that case, the counterparty "did not send its termination notice notifying
the parties of an Event of Default and designating the relevant Event of Default as required by
the ISDA until December 1, 2008, well after LBSF commenced its bankruptcy case on October
3, 2008." LBSF Memorandum, at ¶ 10. "Nor did [the counterparty] purport to take other
affirmative steps prior to LBSF's bankruptcy filing required to effectuate the modification of
LBSF's rights to payment priority or to Unwind Costs otherwise owed it." *Id.* Accordingly,
because the ISDA Master Agreement provided that the parties' obligations survived a
termination, and because each party in that instance had an ongoing obligation to continue
making payments until the transactions were unwound, that ISDA Master Agreement was held
by this Court to be executory.

10.     Unlike the parties to the above proceeding, here, FHLBNY sent LBSF an

effective Notice of Termination prior to the LBSF Petition Date, terminating all outstanding

swap transactions entered into under the Master Agreement on September 18, 2008.

Admittedly, there is a dispute over whether, as a result of the termination of the swaps, LBSF

owes FHLBNY money or FHLBNY owes LBSF money.  It is indisputable, however, that *only*

*one* party to the Master Agreement has a remaining payment obligation.  While each party's

respective obligations under the Master Agreement survive the termination, *see In re Lehman*

*Bros. Holdings Inc.*, 422 B.R. at 416, as of today, the only *material* obligation remaining under

the Master Agreement is for one party to pay the other.  Accordingly, it appears that the Master

Agreement is not executory because the parties' remaining mutual obligations, if any, are so

immaterial that a breach by one party would not relieve the other from continued performance.

*See In re Penn Traffic Co.*, 524 F.3d at 379-80; *In re Gen. Growth Props., Inc.,* 451 B.R. at 329;

*In re Chateaugay Corp.*, 102 B.R. at 346-47; *In re Calpine Corp.*, 2008 WL 3154763, at *4.  The

only material obligation remaining, subject to a resolution of the dispute between the parties, is

the payment of money by one party or the other.

### The Debtors Must Decide Finally to Assume or Reject
### the Master Agreement by the Confirmation Date of the Plan

11.     Even if the Master Agreement is executory, pursuant to sections 365(d)(2) and

1123(b)(2) of the Bankruptcy Code, the Debtors may not elect to assume the Master Agreement

while reserving the right to change their minds at any time "after the Effective Date" and reject

the Master Agreement in the event that they are dissatisfied with the Court's determination of the

cure amount owed under the Master Agreement or any of the requirements regarding adequate

assurance of future performance.  Indeed, the Plan Supplement's reservation of the Debtors'

right to change their minds and reject any executory contract listed in the Plan Supplement after

the Confirmation Date is inconsistent with the language contained in the Debtors' own Plan. The Debtors' treatment of the Master Agreement is a "heads I win, tails you lose" concept that is tantamount to an indefinite extension of the Debtors' time to assume or reject in contravention of the requirements of the Bankruptcy Code.

12.     Under section 365(d)(2) of the Bankruptcy Code, a debtor may assume or reject an executory contract "at any time before the confirmation of a plan." Section 1123(b)(2) also permits a debtor, "subject to section 365," to provide for the assumption or rejection of an executory contract under a chapter 11 plan. While a debtor may provide for the assumption or rejection to become effective post-confirmation, it must *decide* whether to assume or reject the executory contract before the plan is confirmed. See 11 U.S.C. § 365(d)(2); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract . . . ."); *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006) (" '[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract.' " (quoting *In re Adelphia Communications Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003)); *see also Fla. Dept. of Rev. v. Piccadilly*, 554 U.S. 33, 46 (2008) ("We agree with *Bildisco*'s commonsense observation that the *decision* whether to reject a contract or lease must be made before confirmation. But that in no way undermines the fact that the rejection takes *effect* upon or after confirmation of the Chapter 11 plan (or before confirmation if pursuant to § 365(d)(2))." (emphasis in original)).

13.     Here, while the Debtors have purported to assume the Master Agreement, the Debtors want to reserve the right to change their minds if they are unhappy with this Court's

future determination, perhaps a year or more after confirmation, of any cure amount owed under

the Master Agreement or any requirement regarding adequate assurance of future performance.

Effectively, the Debtors want to extend indefinitely the deadline to assume or reject the Master

Agreement. Section 365(d)(2) and applicable case law, however, explicitly prohibit the Debtors

from implementing this scheme.

14.    Instead, the Bankruptcy Code dictates that the Debtors have two options regarding

the Master Agreement: (1) they may decide to assume the Master Agreement prior to Plan

confirmation and risk being wrong about the cure amounts or their adequate assurance

obligations, or (2) they may decide to reject the Master Agreement prior to confirmation of the

Plan. *See* 11 U.S.C. § 365(d)(2); *Bildisco*, 465 U.S. at 529; *In re Dana Corp.*, 350 B.R. at 147;

*In re Adelphia Communications Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).

15.    In the Plan Supplement, however, the Debtors have elected not to pursue either of

those options despite the requirements of the Bankruptcy Code. Although the Debtors have

purported to "assume" the Master Agreement, by attempting to reserve the right to withdraw the

contract from the Plan Supplement list and reject the contract if they are unhappy with the

Court's decisions regarding their assumption obligations under section 365, they seek to

construct a system under which they have no downside. If the Court agrees with their proposed

cure amount and adequate assurance obligations, they will assume the Master Agreement. If the

Court disagrees with their proposed cure amount or requires unsatisfactory adequate assurance

obligations, the Debtors propose that they can reject the Master Agreement.

16.     FHLBNY submits that even if the Master Agreement is executory, the Debtors

must decide whether to assume or reject the Master Agreement before the Plan is confirmed.

The Bankruptcy Code does not permit them to do otherwise.

**Objection to Cure Amount and Adequate Assurance of Future Performance**

17.     Pursuant to section 365, as there was an Event of Default under the Master

Agreement with LBSF as a result of LBHI's chapter 11 filing, LBSF may not assume the Master

Agreement without curing all defaults and providing adequate assurance of future performance.

11 U.S.C. § 365(b)(1)(A), (C); *see also Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re*

*Ionosphere Clubs, Inc.*), 85 F. 3d 992, 999 (2d Cir. 1996) ("If the debtor is in default on the

contract, it will not be allowed to assume the contract unless, at the time of the assumption it,

*inter alia*, (a) cures, or provides adequate assurance that it will promptly cure, the default, and (b)

provides adequate assurance of its future performance of its obligations under the contract."); *In*

*re Jamesway Corp.*, 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996) (stating debtor may assign

unexpired lease only if it assumes it in accordance with the bankruptcy code and provides

adequate assurance of future performance by the assignee); *In re Lavigne*, 183 B.R. 65, 72

(Bankr. S.D.N.Y. 1995) (stating decision to assume executory contract requires cure of existing

default and providing adequate assurance of future performance).

18.     The Debtors proposed cure amount of $0 for the Master Agreement is wrong and

is hereby objected to.  Additionally, the Debtors have failed to provide any assurance of their

ability (1) to promptly pay the correct cure amount; and (2) to perform in the future under the

Master Agreement.  Accordingly, even if the Master Agreement is executory, it may not be

assumed until the Debtors have satisfied these requirements.

A.    The Correct Cure Amount is Set Forth in the FHLBNY Proof of Claim

19.    As stated above, the Debtors have asserted that no amounts are due and payable as a cure under the Master Agreement. The Debtors are incorrect. As indicated in FHLBNY's filed proof of claim against LBSF, $65,489,786.59 is due and owing to FHLBNY under the Master Agreement. The FHLBNY Claim has been provided to the Debtors.

20.    In addition to the amounts listed above, FHLBNY specifically reserves its right to payment of any additional amounts that may accrue or otherwise become due and owing under the Master Agreement between the date hereof and the effective date of any assumption of the Master Agreement. (The amount of the FHLBNY Claim, inclusive of any such additional amounts, the "Correct Cure Amount".)

B.    The Debtors Have Failed to Provide Adequate Assurance of Future Performance

21.    The Debtors may not assume the Master Agreement because they have failed to provide any assurance that they will be able to pay FHLBNY the Correct Cure Amount in full, in cash. The Debtors' desire to be able to reject the contract if the Court determines a cure amount is owed to FHLBNY, as FHLBNY contends, evidences the Debtors' lack of assurance that they will pay any cure amount.

22.    Finally, the Debtors are liquidating. It is unclear how the Debtors propose they will perform in the future and have the financial wherewithal to do so if the Master Agreement were to be assumed. Moreover, LBHI had provided credit enhancement in the form a full guarantee of LBSF's obligations under the Master Agreement and the Debtors have provided no indication how or whether additional credit enhancement from a creditworthy entity will be provided.

23.    FHLBNY reserves its right to supplement this objection and all other rights, claims and defenses with respect to the Debtors.

### Conclusion

24.    For the reasons stated above, FHLBNY respectfully requests that this Court (a) compel the Debtors to make a final decision to assume or reject the Master Agreement prior to confirmation of the Plan, and, if they decide finally to assume the Master Agreement, require the Debtors to pay the Correct Cure Amount in full, in cash, no later than the effective date of the Plan and provide adequate assurance of future performance; and (b) grant such other and further relief as is just and proper.

Dated: New York, New York
       November 9, 2011

                    KATTEN MUCHIN ROSENMAN LLP
                    *Attorneys for Federal Home Loan Bank*
                    *of New York*

                    By:  /s/  Jeff J. Friedman
                           Jeff J. Friedman
                           Joel W. Sternman
                    575 Madison Avenue
                    New York, New York 10022-2585
                    Telephone: (212) 940-8800