**Hearing Date:** December 6, 2011 at 10:00 a.m.
**Objection Deadline:** November 10, 2011 at 4:00 p.m.

STROOCK & STROOCK & LAVAN LLP
Andrew DeNatale
Claude G. Szyfer
Denise K. Wildes
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for Nordea Bank AB (publ) and Nordea Bank Finland plc*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------------- x

**OBJECTION OF NORDEA BANK AB (PUBL) AND NORDEA BANK FINLAND PLC
TO DEBTORS' PROPOSED ASSUMPTION OF THEIR DERIVATIVE CONTRACTS
LISTED ON EXHIBIT 2 OF THE PLAN SUPPLEMENT**

1.   Nordea Bank AB (publ) ("NBAB") and Nordea Bank Finland plc ("NBF", and collectively with NBAB, "Nordea") respectfully submit this objection to the Debtors' proposed assumption of certain derivative contracts of Nordea listed on Exhibit 2 (Part A-Derivative Contracts) of the Plan Supplement filed with Court on October 25, 2011 (the "Plan Supplement") [Docket No. 21254]. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan Supplement.

**Background**

2.   Prior to the Debtors' bankruptcy filings, (i) NBAB was a party to various transactions with Lehman Brothers Special Financing Inc. ("LBSF"), pursuant to transaction confirmations under that certain ISDA Master Agreement, dated as of July 24, 1992 (the

"NBAB/LBSF Master Agreement") and (ii) NBF (formerly known as Merita Bank Ltd.) was a party to various transactions with Lehman Brothers Commercial Corporation ("LBCC"), pursuant to transaction confirmations under that certain ISDA Master Agreement, dated as of February 27, 1998 (the "NBF/LBCC Master Agreement", and together with the NBAB/LBSF Master Agreement, the "Master Agreements").

3. On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "LBHI Filing"). The LBHI Filing constituted an Event of Default under Section 5(a)(vii) of the Master Agreements. Pursuant to Section 6(a) of the NBAB/LBSF Master Agreement, an Early Termination Date in respect of all outstanding NBAB transactions occurred immediately and automatically upon the LBHI Filing. Because NBAB and LBSF had agreed that the Automatic Early Termination provisions of Section 6(a) would apply to each of them, NBAB was not required to send any notice to LBSF specifying the Event of Default or designating the Early Termination Date. By notice dated September 16, 2008, a copy of which is attached as Exhibit "A," NBF gave notice of the occurrence of an Event of Default under the NBF/LBCC Master Agreement with respect to LBCC, and designated September 16, 2008 as the Early Termination Date with respect to all Transactions under the NBF/LBCC Master Agreement.

4. In connection with its termination of all outstanding transactions under the NBAB/LBSF Master Agreement, on October 20, 2008, NBAB delivered to LBSF, a Notice of Calculations, setting forth the net settlement amount owed by NBAB. Similarly, in connection with its termination of all outstanding transactions under the NBF/LBCC Master Agreement, on October 20, 2008, NBF delivered to LBCC a Notice of Calculations, setting forth the net settlement amount owed by NBF, as amended by the Revised Notice dated December 7, 2009.

5. LBSF commenced its voluntary chapter 11 bankruptcy case on October 3, 2008 (the "LBSF Petition Date"), and LBCC commenced its voluntary chapter 11 bankruptcy case on October 5, 2008 (the "LBCC Petition Date, and together with the LBSF Petition Date, the "Petition Dates").

6. On October 25, 2011, the Debtors filed their Plan Supplement, including, on Exhibit 2, Part A thereto, a list of purportedly executory derivative contracts the Debtors seek to assume under the Plan (the "Assumption Schedule"). The Assumption Schedule includes all Derivative Contracts (as defined therein) between (i) NBAB, on the one hand, and LBSF on the other hand and (ii) NBF, on the one hand, and LBCC on the other hand.

**Argument**

7. LBSF and LBCC both fail to particularize which purportedly executory contracts they intend to assume. According to the preamble to the Assumption Schedule, where no particular contract is named, the Debtor intends to assume all executory contracts with that counterparty. Neither NBAB nor NBF are aware of any executory contracts with either LBSF or LBCC. In order to provide adequate notice and a meaningful opportunity to respond, LBSF and LBCC should explicitly reference the particular contracts each intends to assume. See In re Ford, 159 B.R. 930, 932 & nn.8-9 (Bankr. W.D. Wash. 1993).

8. All outstanding transactions between (i) NBAB, on the one hand, and LBSF on the other hand, and (ii) NBF, on the one hand, and LBCC on the other hand, were properly terminated prior to the respective Petition Dates of each of LBSF and LBCC. In the more than three years since these transactions were terminated (and in the case of the NBF/LBCC Master Agreement, a termination payment made by NBF and received and accepted by LBCC), neither LBSF nor LBCC has ever once challenged the effectiveness of the respective

3

terminations. It is well-settled law that where a contract expires or terminates by its terms before the commencement of bankruptcy, there is no executory contract for the debtor to assume. See Moody v. Amoco Oil Co., 734 F.2d 1200, 1212 (7th Cir. 1984); In re Tornado Pizza, LLC, 431 B.R. 503, 514 (Bankr. D. Kan. 2010) ("A debtor may assume a contract under § 365 only when the contract is executory on the date of filing. A terminated contract is not executory; after termination substantial performance does not remain due on both sides"); In re Best Film & Video Corp., 46 B.R, 861, 869 (Bankr. E.D.N.Y. 1985).

9. To the extent that LBSF and LBCC seek to assume the Master Agreements exclusive of the terminated transactions thereunder, Nordea submits that these agreements are not executory. Under the widely accepted "Countryman test," an executory contract is "a contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach [under applicable non-bankruptcy law] excusing the performance of the other." See Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439 460 (1973); In re Riodizio, Inc., 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997) (citations omitted); see also S.REP. No. 95-989, at 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303 (indicating contract is executory where "performance remains due to some extent on both sides"). Here, separate from the transactions thereunder, the Master Agreements provide terms and conditions for transactions thereunder, and do not obligate either party to enter into any such transactions. Accordingly, there are no material unperformed obligations of both parties the breach of which would entitle the other party to terminate the contracts.

10. Nordea reserves all of its rights, claims, counterclaims, and defenses in connection with the contracts and matters addressed herein, including but not limited to,

4

objections to the proposed cure amount, and reserves the right to further object on any grounds to the assumption and the proposed cure amount and to the extent any additional executory contracts to which Nordea is a counterparty are added to the Assumption Schedule.

  WHEREFORE, Nordea respectfully requests that this Court (i) deny the Debtors' request to assume any Derivative Contracts with Nordea Bank AB (publ) and Nordea Bank Finland plc and (ii) direct that the Debtors remove Nordea Bank AB (publ) and Nordea Bank Finland plc from the Assumption Schedule.

Dated: November 10, 2011
    New York, New York

                STROOCK & STROOCK & LAVAN LLP

                /s/ Andrew DeNatale
                Andrew DeNatale
                Claude G. Szyfer
                Denise K. Wildes
                180 Maiden Lane
                New York, New York 10038
                Telephone: (212) 806-5400
                Facsimile: (212) 806-6006

                *Attorneys for Nordea Bank AB (publ) and Nordea Bank Finland plc*

# EXHIBIT A



## NOTICE OF EVENT OF DEFAULT

16 September 2008

Lehman Brothers Commercial Corporation
745 Seventh Avenue
New York, New York 10019
USA

### ISDA Master Agreement

Dear Sir or Madam,

We refer to the ISDA Master Agreement between Lehman Brothers Commercial Corporation and Nordea Bank Finland Plc. (formerly known as Merita Bank Ltd.) dated as of 27 February 1998 (the "Agreement").

Unless otherwise specified, words and expressions defined in the Agreement shall have the same meaning when used in this letter.

Pursuant to Section 6(a) of the Agreement, we hereby designate 16 September 2008 as an Early Termination Date in respect of all outstanding Transactions. The relevant Event of Default is the event specified in Section 5(a)(vii) of the Agreement.

This letter shall be governed by and construed in accordance with English law.

Yours sincerely,

Hans. C. Kjelsrud
Executive Vice President and General Manager
212-318-9634

Gerald E. Chelius, Jr.
Senior Vice President, Credit
212-318-9580

Nordea Bank Finland Plc
New York Branch
437 Madison Avenue, New York NY 10022, USA
www.nordea.com

(212) 318-9300    Main tel.
(212) 421-4420    Main fax