NIXON PEABODY LLP
Christopher M. Desiderio
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
and
Amanda D. Darwin
Richard C. Pedone (admitted *pro hac vice*)
100 Summer Street
Boston, MA  02110
Telephone: (617) 345-1000

*Counsel to Deutsche Bank Trust Company Americas*
*and Deutsche Bank National Trust Company,*
*each in its role as Trustee, Indenture Trustee,*
*Supplemental Interest Trust Trustee, and/or Cap Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al., ) | |
| ) | Case No. 08-13555 (JMP) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

------------------------------------------------------

**OBJECTION OF DEUTSCHE BANK TRUST
COMPANY AMERICAS AND DEUTSCHE BANK NATIONAL
TRUST COMPANY TO ASSUMPTION OF SWAP AGREEMENTS**

Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company each in its role as Trustee, Indenture Trustee, Supplemental Interest Trust Trustee, and/or Cap Trustee (collectively, in such capacities, the "Trustees")[1], by and through their counsel, Nixon Peabody LLP, for their objection (the "Objection") to the assumption of certain derivatives contracts identified on **Exhibit A** hereto (collectively, the "Swap Agreements").  In summary, the Trustees object to the Assumption because terminated, novated, or matured swap agreements are not executory contracts.  In opposition to the assumptions, the Trustees state as follows:

---

[1]    In stating this Objection, Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas act in the capacities set forth on **Exhibit A**.

13671407

## I.      BACKGROUND

1.      The Trustees act as trustee for various swap and derivatives transactions, including those on identified on **Exhibit A**. In each instance, the Trustee is appointed by virtue of certain agreements (the "Trust Documents") and acts as counterparty to the swap or has been assigned the counterparty's interest in the swap in each of the related transactions (the "Transactions").

2.      Pursuant to the Trust Documents, the Trustees were each directed to enter into an ISDA Master Agreements (the "Swap Agreements") with the Debtor counterparty identified on **Exhibit A**. In each case, Lehman Brothers Holdings, Inc. ("LBHI") guaranteed all of the Debtor counterparty's obligations under the Swap Agreements (the "LBHI Guarantees").

3.      The commencement of the chapter 11 case by LBHI (as guarantor) on September 15, 2008, constituted an event of default under each of the Swap Agreements. *See* Swap Agreements, Section 5(a)(7). The commencement of Lehman Brothers Special Financing, Inc.'s ("LBSF") case on October 3, 2008, and Lehman Brothers Derivative Products, Inc.'s ("LBDP") case on October 5, 2008, as applicable, also constituted an event of default.

4.      Each of the Swap Agreements and related Transactions were: (a) terminated by the issuers under the Transactions or by the Debtors, as applicable, (b) matured by their terms during the pendency of the cases, or (c) novated pursuant to agreed terms between the parties. To date, the Debtors have not disputed the validity of any of the terminations.

5.      On August 31, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") and related Disclosure Statement (the "Disclosure Statement"). On September 1, 2011, the Court entered its Amended Order (i) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of

the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan (the "<u>Disclosure Statement Order</u>").

6.   On October 25, 2011, the Debtors filed the Plan Supplement which includes a list of "Derivative Contracts" that the Debtors are seeking to assume pursuant to the Plan. This list included the Swap Agreements on **<u>Exhibit A</u>** hereto.

7.   The "Cure Amount Notice" served on the Trustees related to each Swap Agreement provides that "$0" cure is due by the Debtors upon assumption of each Swap Agreement.

## II.   <u>ARGUMENT</u>

### A.   Terminated and Matured Swap Agreements Are Not Executory Contracts That Can Be Assumed

8.   The Bankruptcy Code only permits debtors to assume contracts that are "executory". *See* 11 U.S.C. § 365(a). It is basic black-letter law that in order for a contract to be considered "executory" there must be material performance obligations owed by both parties. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S. Rep. No. 989, 95th Cong. 2nd Sess. 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6300. *In re Wireless Data, Inc.*, 547 F. 3d 484, 488 n.1 (2d Cir. 2008) (referring to the "Countryman" and noting that no circuit has rejected that test for executory contracts); *In re Teligent, Inc*., 268 B.R. 723, 729 (Bankr. S.D.N.Y. 2001) (noting that many courts apply the "Countryman test" in determining whether a contract is executory).

9.   Upon the termination, novation, or maturation of the Transactions as set forth on **<u>Exhibit A</u>**, the Swap Agreements ceased to be executory because all material obligations existing under the Swap Agreements had been performed.

10. Moreover, it is well established that a debtor cannot assume a contract that has matured or been validly terminated prior to such assumption. *See e.g. Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d Cir. 1988); *Matter of Triangle Laboratories, Inc.*, 663 F.2d 463, 467 (3d Cir. 1981); *In re Scarsdale Tires, Inc.*, 47 B.R. 478, 480 (Bankr. S.D.N.Y. 1985). Terminations of swap agreements are clearly contemplated by the Bankruptcy Code. Specifically, section 561 provides, in relevant part, that "the exercise of any contractual right, because of a condition of the kind specified in section 365(e)(1), to cause the termination . . . of . . . swap agreements . . . shall not be stayed, avoided, or otherwise limited by operation of any provision of this title . . ." 11 U.S.C. § 561(a). Therefore, with respect to those Swap Agreements that were validly terminated prior to the proposed assumption, they cannot now be assumed by the Debtors.

11. As each of the Transactions were validly terminated, novated, or matured prior to the proposed assumption, they cannot now be assumed by the Debtor as they are not executory contracts.[2]

**B.  The Debtors Cannot Cure Non-Monetary Defaults Under the Swap Agreements and Therefore They Cannot Be Assumed**

12. In the event that this Court determines that the Swap Agreements are executory contracts that can be assumed, the Debtors will be unable to cure existing non-monetary defaults and, therefore, cannot assume the Swap Agreements.

13. Under Section 365(b)(1) of the Bankruptcy Code, a debtor cannot assume a contract that has been breached unless, and until, that breach is cured. Accordingly, a contract

---

[2] The Trustees also object to the procedural posture of the Debtors' proposed assumption. Many of the Transactions are currently the subject of ongoing adversary proceedings which have been stayed by order of this Court. The Debtors should not be allowed to sidestep the procedural and due process requirements associated with an adversary proceeding simply by seeking the assumption of the Swap Agreements. *See e.g. In re Orion Pictures Corp.*, 4 F.3d 1095, 1098-99.

cannot be assumed if it has been breached in such a way that the breach is both incurable and material. *In re Empire Equities Capital Corp.* 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (citing *In re New Breed Realty Enters.*, 278 B.R. 314, 320 (Bankr. E.D.N.Y. 2002)) ("By amending § 365(b)(1)(A) only with respect to unexpired leases of real property, however, Congress provided no room for the contention that non-monetary defaults in non-lease executory contracts are exempt from the cure obligation"); *In re Claremont Acquisition Corp.*, 113 F.3d 1029, 1033 (9th Cir. 1997); *In re Toyota of Yonkers, Inc.*, 135 B.R. 471, 477 (Bankr. S.D.N.Y. 1992).

14. Courts have frequently found that breaches which have become "historical facts," are incurable and prevent contracts from being assumed. *In re Escarent Entites, L.P.*, 2011 WL 1659512 (5th Cir. Apr. 28, 2011); *Empire Equity Capital*, 405 B.R. at 691 (breach of duty to timely exercise an option is an incurable non-monetary default); *In re New Breed Realty Enters.*, 278 B.R. at 320 (failure to timely close was an incurable default); *In re Claremont Acquisition Corp.*, 113 F.3d at 1033 (incurable default prevents the assumption of a franchise agreement); *In re Toyota of Yonkers, Inc.*, 135 B.R. 471, 477 (Bankr. S.D.N.Y. 1992) (same).

15. Here, among other things, LBHI's bankruptcy filing (as LBSF's guarantor) constituted an event of default under the Swap Agreements. Such default cannot be cured as a historical fact. A guarantee is not an executory contract that can be assumed or rejected, and is not subject to the provisions of section 365 of the Bankruptcy Code. *See e.g., In re Grayson-Robinson Stores, Inc.*, 321 F.2d 500, 502 (2d Cir. 1963) (guarantee was not an executory contract). In addition, the Debtors are, or may be, in default of other non-monetary provisions of the Swap Agreements, including without limitation, not maintaining the required minimum credit rating, failing to provide payment calculations required by the Swap Agreements, failing

to provide proper notices to Standard & Poor's, and/or failing to provide other proper reporting due under the terms of the Swap Agreements.

16.     As a result of these incurable defaults, the Debtors cannot be authorized to assume the Swap Agreements.

C.     **The Debtors Must Cure Any Monetary Defaults Under the Swap Agreements**

17.     Pursuant to section 365(b)(1)(A), a debtor must satisfy all cure obligations for contracts before they can assume and assign such contracts. A debtor's cure obligations include the payment of all amounts due the non-debtor under the contract as well as the non-debtor's legal fees to the extent that the relevant contracts provide for such payments. *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 U.S. Dist. LEXIS 6186 (S.D.N.Y. Apr. 8, 2002) ("Recovery of attorneys fees and interest under Section 365 is appropriate where the lease at issue provides for such recovery as an obligation of the Debtor"); *E. 44th Realty, LLC v. Kittay*, 2008 U.S. Dist. LEXIS 7337, 11-12 (S.D.N.Y. Jan. 23, 2008) (upholding a bankruptcy court decision approving a settlement under which a lease was assumed and assigned and the trustee paid the landlord $1.7 million in legal fees because "[i]n order to sell the [l]ease, the [t]rustee would first have to satisfy the requisite cure obligations."). The Swap Agreements provide for the payment of the Trustees' and swap counterparties' fees and expenses by the Debtors, as the defaulting party to the Swap Agreements. *See* Swap Agreements, Section 9.

18.     The Trustees' and swap counterparties' fees and expenses are among the "actual pecuniary cost[s]" that the Debtors are required cure pursuant to section 365(b)(1)(B) of the Bankruptcy Code. *See In re Foreign Crating, Inc*., 55 B.R. 53, 54 (Bankr. E.D.N.Y. 1985) (holding that "attorneys fees constitute a pecuniary loss resulting from debtors' default pursuant to 11 U.S.C. § 365(b)(1)(B)"); *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 756 (Bankr. S.D.N.Y. 1986) ("an express contractual provision for attorney's fees gives rise to a right to

- 6 -

obtain a reasonable attorney's fee as part of curing the debtor's default and in compensation for the landlord's actual pecuniary loss under section 365 of the Code").

19. The Debtors have proposed a cure amount of "$0" for each of the Swap Agreements and have not provided for the payment of the amounts due to the Trustees under the Swap Agreements and have not provided for Trustees' and swap counterparties' fees and expenses that are required to be paid pursuant to section 365(b)(1) of the Bankruptcy Code. Accordingly, even if the Swap Agreements can otherwise be assumed, which they cannot, the Court must not approve such assumption unless the Debtors make all cure payments and compensate all actual pecuniary losses suffered by the Trustees and the swap counterparties.[3]

---

[3] In addition to the Swap Agreements on Exhibit A, the Debtors are seeking to assume a swap agreement with Access Group Inc. Series 2005-A (the "Access Swap Agreement"). Although, the Trustees do not oppose the assumption of the Access Swap Agreement, the scheduled cure amount is incorrect. By this objection, the Trustees hereby join in, and incorporate by reference, the objection filed by the issuer under the Access Swap Agreement with respect to the cure amount owed by the Debtors in connection with the assumption of the Access Swap Agreement.

### III. CONCLUSION

WHEREFORE, the Trustees request that this Court deny the Debtors' request to assume the Swap Agreements and grant such other and further relief this Court deems necessary and appropriate.

Dated: New York, New York
November 10, 2011

Respectfully Submitted,

By: /s/ Christopher M. Desiderio
Christopher M. Desiderio
NIXON PEABODY LLP
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111
    and
Amanda D. Darwin
Richard C. Pedone (admitted *pro hac vice*)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000

*Counsel to Deutsche Bank Trust Company Americas
and Deutsche Bank National Trust Company,
each in its role as Trustee, Indenture Trustee,
Supplemental Interest Trust Trustee, and/or Cap Trustee*

# Exhibit A
# Derivative Contracts Proposed to Be Assumed

| Counter-Party | Trustee | Debtor | Status |
|---|---|---|---|
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8 | Deutsche Bank National Trust Company, as Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Matured 5/25/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8 | Deutsche Bank National Trust Company, as Supplemental Interest Trust Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Matured 1/25/2010 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8 | Deutsche Bank National Trust Company, as Cap Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novated on 2/16/2011 |
| GEMSTONE CDO VI LTD | Deutsche Bank Trust Company Americas, as Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Terminated by Issuer on 9/16/2008 |
| HARBOURVIEW CDO III, LIMITED | Deutsche Bank Trust Company Americas, as successor to Bankers Trust Company, as Trustee | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | Novated on 5/11/2011 |
| IMPAC CMB TRUST SERIES 2003-11 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | Terminated by LBDP on 9/23/2008 |
| IMPAC CMB TRUST SERIES 2004-05 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | Terminated by LBDP on 9/23/2008 |
| IMPAC CMB TRUST SERIES 2004-08 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC./ LEHMAN BROTHERS SPECIAL FINANCING INC. | Terminated by LBDP on 9/23/2008 |
| IMPAC CMB TRUST SERIES 2004-10 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | Terminated by LBDP on 9/23/2008; If termination was ineffective, matured 11/25/2009 |
| IMPAC CMB TRUST SERIES 2005-04 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Matured 5/25/2010 |

13671407

| Counter-Party | Trustee | Debtor | Status |
|---|---|---|---|
| IMPAC CMB TRUST SERIES 2005-05 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Matured 6/25/2010 |
| IMPAC CMB TRUST SERIES 2005-08 | Deutsche Bank National Trust Company, as Indenture Trustee | LEHMAN BROTHERS SPECIAL FINANCING INC. | Matured 11/25/2010 |

13671407