Hearing Date: December 6, 2011 at 10:00 a.m.
Objections Due: November 10, 2011

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Steven J. Fink
Thomas C. Mitchell
51 West 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

*Attorneys for the County of Sacramento, California*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
Lehman Brothers Holdings Inc., *et al.*,                     :    Case No. 08-13555 (JMP)
                                                             :
                    Debtors.                                 :    (Jointly Administered)
------------------------------------------------------------ x

### OBJECTION OF THE COUNTY OF SACRAMENTO, CALIFORNIA TO ASSUMPTION OF DERIVATIVES CONTRACTS UNDER THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

The County of Sacramento, California ("Sacramento"), by its undersigned attorneys, submits this objection to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Dkt. No. 19627] (the "Plan") to the extent that the Plan proposes to assume one or more derivative contracts between Sacramento and Lehman Brothers Special Financing Inc. ("LBSF") because (i) such contracts are not executory, (ii) LBSF has not cured its continuing defaults, and (iii) the Debtors have not and cannot provide adequate assurance of future performance.  In support of its objection, Sacramento states as follows:

I. **RELEVANT BACKGROUND**

A. **The Sacramento Contracts.**

1. Prior to the commencement of these chapter 11 cases, Sacramento entered into certain derivatives transactions (the "Trades") with LBSF. The Trades were memorialized using standard form agreements published by the International Swaps and Derivatives Association ("ISDA"). These agreements included a "Master Agreement" that contains standardized terms, a "Schedule" in which the parties tailored the general terms of the Master Agreement, and a separate "Confirmation" for each Trade, which set forth the core economic terms of such Trade. The Master Agreement and Schedule between Sacramento and LBSF, each as amended, are referred to together herein as the "Sacramento ISDA Agreement." The Sacramento ISDA Agreement and the Confirmations are referred to collectively as the "Sacramento Contracts."

B. **Sacramento Terminates the Trades and Pays the Settlement Amount.**

2. When Lehman Brothers Holdings Inc. ("LBHI") commenced its chapter 11 case on September 15, 2008, the bankruptcy filing constituted an "Event of Default" under the terms of the Trades and gave Sacramento—the "Non-defaulting Party"—the right to terminate and liquidate the Trades.[1] Sacramento exercised its contractual rights to terminate the Trades by sending a notice to LBSF on October 21, 2008, specifying the relevant Event of Default and designating October 22, 2008 as the "Early Termination Date" in respect of all outstanding Trades. Subsequently, Sacramento calculated and paid to LBSF the "Settlement Amount" due in connection with the Trades. Following such payment, no other obligations remained due to either party in respect of the Trades.

---

[1] LBHI—LBSF's designated "Credit Support Provider" under the terms of the Trades—guaranteed LBSF's obligations under the Trades.

- 2 -

**II.     BASES FOR OBJECTION**

3.      Under section 1129(a)(1) of the Bankruptcy Code, this Court cannot confirm the Plan if it does not comply with all "applicable provisions" of the Bankruptcy Code, including section 1123. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (stating section 1129(a)(1) "embodies" requirements of section 1123). Section 1123 of the Bankruptcy Code, in turn, states that a plan cannot provide for the assumption of an executory contract unless such assumption complies with section 365 of the Bankruptcy Code.

4.      Here, sections 11.1 and 11.2 of the Plan provide that entry of the Confirmation Order[2] by this Court will constitute approval of the assumption of all executory contracts included in Part A of Exhibit 2 to the Plan Supplement [Dkt. No. 21254] (the "Derivatives Supplement").[3] At this time, the Sacramento Contracts are not executory contracts and therefore are not properly affected by such provisions of the Plan. *See, e.g.*, *In re Cole*, 189 B.R. 40, 47 (Bankr. S.D.N.Y. 1995) (holding that lease was not assumed by boiler plate assumption language of plan in part because counterparty failed to prove that lease was executory at time of confirmation). Nevertheless, the Debtors have included the Sacramento Contracts in the Derivatives Supplement, and are apparently attempting to assume them.

5.      To the extent that the Debtors are attempting to assume the Sacramento Contracts, such assumption fails to comply with section 365 of the Bankruptcy Code. The Trades are not

---

[2]     Capitalized terms not defined herein have the meanings ascribed to them in the Plan.

[3]     Section 11.1 of the Plan states that "all executory contracts . . . that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract . . . that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor." Section 11.2 of the Plan, in turn, states that "[e]ntry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute . . . the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts . . . assumed . . . pursuant to the Plan."

subject to assumption because (i) Sacramento previously terminated the Trades, (ii) LBSF has not cured its continuing defaults under the Trades, and (iii) the Debtors have not and cannot provide adequate assurance of future performance under the Trades.  Likewise, the Sacramento ISDA Agreement is not subject to assumption because (i) it is not executory, (ii) LBSF has not performed under the Sacramento ISDA Agreement since filing for bankruptcy, and (iii) the Debtors have not and cannot provide adequate assurance of future performance.

### A.    Requirements for Assumption Under Section 365 of the Bankruptcy Code.

6.    To assume a contract under section 365(a) of the Bankruptcy Code, a debtor must first establish that the contract qualifies as "executory."  *See In re Child World, Inc.*, 147 B.R. 847, 851 (Bankr. S.D.N.Y. 1992) ("Not every contract may be assumed . . . by a . . . debtor in possession.  The Bankruptcy Code specifically limits this option under [section 365(a)] to contracts that are 'executory.'").

7.    Although the United States Court of Appeals for the Second Circuit has yet to adopt a precise definition of when a contract is "executory," it has held that an executory contract is one "on which performance remains due to some extent on both sides."  *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 379 (2d Cir. 2008) (quotation omitted).  The Second Circuit also has stated that bankruptcy courts must consider post-petition events in determining whether a contract is executory and subject to assumption.  *See id.* at 383 ("[W]here the contract expires by its own terms in the course of the bankruptcy, or the debtor takes action in the course of the bankruptcy to terminate the outstanding obligations, the contract's mere executory nature as of the commencement of the proceeding—without more—will not guarantee the debtor the availability of [section] 365's assumption . . . provisions.").

8.    Section 365(b) of the Bankruptcy Code also requires a debtor seeking to assume an executory contract to (i) cure (or provide adequate assurance that it will promptly cure) all of

its continuing monetary and non-monetary defaults under such contract, (ii) compensate the counterparty for any actual pecuniary loss resulting from its breaches, and (iii) provide adequate assurance of its future performance under such contract.

### B.     The Trades are Terminated and Cannot be Assumed.

9.      If the Debtors are seeking to assume the Trades, such assumption must be denied because Sacramento properly terminated the Trades more than three years ago.  It cannot be genuinely disputed that the Trades are "swap agreements" as that term is defined under section 101(53B) of the Bankruptcy Code, that Sacramento is a "swap participant" as that term is defined under section 101(53C) of the Bankruptcy Code, and that Sacramento timely and properly terminated the Trades in accordance with the safe harbor protections of section 560 of the Bankruptcy Code.  Further, Sacramento has already paid to LBSF the Settlement Amount due in respect of the Trades.  After such payment, there were no future performance obligations required under the Trades by either party.  Thus, Sacramento's termination of the Trades and payment of the Settlement Amount rendered the Trades non-executory and, thus, not subject to assumption.  *See JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 920 N.Y.S.2d 241 (N.Y. Sup. Ct. 2010) (holding that "[o]nce terminated, the ISDA Agreement was not, and could not be, executory").[4]  Any attempt by the Debtors to "resurrect" the Trades using section 365 of the Bankruptcy Code would run afoul of section 560 of the Bankruptcy Code, which permitted Sacramento's termination of the Trades.  Section 560 states

---

[4]     Because the Trades were terminated three years ago with no mutual payment obligations remaining, and are not executory now, it is irrelevant whether they were executory at or before the time of termination. *See Penn Traffic*, 524 F.3d at 383. As a result, *Lehman Bros. Special Fin. Inc. v. BNY Corp. Trustee Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010) (finding terminated derivatives contracts were executory where mutual payment obligations remained) is not applicable here.

- 5 -

that the right to terminate a swap agreement shall not be "stayed, avoided, or otherwise limited by operation of any provision of this title," which would include section 365.

10. Even if the Trades were executory, which they are not, LBSF has not performed under the Trades since filing for bankruptcy and does not propose to do anything to cure its nonperformance.[5] Furthermore, the Debtors have not and cannot provide adequate assurance of future performance—they are liquidating and soon will be unable to perform any obligation.[6] Accordingly, the Debtors cannot comply with section 365 of the Bankruptcy Code and thus cannot assume the Trades.

### C.  The Sacramento ISDA Agreement is Not Executory.

11. If the Debtors are seeking to assume the Sacramento ISDA Agreement separately, such assumption must also be denied because the Sacramento ISDA Agreement is not an executory contract. The ISDA Master Agreement is an umbrella agreement that sets forth the general terms and conditions that apply to transactions the core economic terms of which are separately negotiated and documented (e.g., the Confirmations). *See Swedbank AB (PUBL) v. Lehman Brothers Holdings Inc. (In re Lehman Brothers Holdings Inc.)*, 445 B.R. 130, 132 n.1 (S.D.N.Y. 2011) (explaining that the ISDA Master Agreement functions as an umbrella agreement). As such, the ISDA Master Agreement is an "agreement to agree." *See* ISDA Master Agreement, prefatory clause ("[The parties] . . . anticipate entering into one or more transactions . . . that . . . will be governed by this Master Agreement."). No party has any performance obligations under the ISDA Master Agreement as a standalone document. *See* 1

---

[5] *See* Notice of Proposed Assumption, a true and correct copy of which is attached hereto as <u>Exhibit 1</u>. At a minimum, LBSF continues to be in default with respect to the required guarantee of its obligations.

[6] Any post-assumption claim by Sacramento against the Debtors for non-performance would have administrative expense priority.

*Williston on Contracts* § 1:2 (4th ed. rev. 2011) ("[A] so-called 'agreement to agree,' an understanding that leaves an essential element of a promise open for future negotiation and agreement, constitutes no promise, and creates no legal obligation until the future agreement is actually made."). Accordingly, the Sacramento ISDA Agreement is not an executory contract and cannot be assumed.

12.  Even if the Sacramento ISDA Agreement were executory, which it is not, LBSF has not performed under the Sacramento ISDA Agreement since filing for bankruptcy and does not propose to do anything to cure its nonperformance.[7] Furthermore, the Debtors have not and cannot provide adequate assurance of future performance—they are liquidating and soon will be unable to perform any obligation.

### III.  RESERVATION OF RIGHTS

13.  Given the Debtors' failure to specify in the Plan which of the Sacramento Contracts the Debtors believe are executory and intend to assume, or to articulate any basis for their position that such contracts may be assumed, Sacramento hereby reserves all of its rights to respond to any arguments the Debtors may offer in support of assumption, whether prior to, on, or after the Confirmation Hearing, including the right to supplement this objection.

### IV.  CONCLUSION

The Trades between Sacramento and LBSF have been terminated and the parties have no further obligations to perform. Accordingly, the Sacramento Contracts are not executory. Even if the contracts were executory, LBSF has not performed under them since filing for bankruptcy and does not propose to cure its defaults. Further, because the Debtors are liquidating they

---

[7] *See* Exhibit 1.

cannot provide adequate assurance of future performance. As a result, the Debtors cannot assume the Sacramento Contracts.

Dated: November 10, 2011
      New York, New York

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

/s/ *Steven J. Fink*

Steven J. Fink
Thomas C. Mitchell
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for the County of Sacramento, California*