# EXHIBIT A



*A Continuing Care Retirement Community by Simpson Senior Services*

June 19, 2009

**VIA HAND DELIVERY**

Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, NY 10020
Attn: Derivatives Legal

Dear Sirs:

Reference is hereby made to the ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("LBSF") and Simpson Meadows ("Simpson") dated as of August 17, 2005 (as amended from time to time, the "Master Agreement"). All capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Master Agreement.

In September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") declared bankruptcy under Chapter 11 of the United States Bankruptcy Code. LBHI is the Guarantor and Credit Support Provider to LBSF under the Agreement. Subsequently, on October 3, 2008, LBSF also declared bankruptcy under Chapter 11 of the United States Bankruptcy Code.

We hereby notify you that an Event of Default has occurred and is continuing with respect to LBHI and LBSF under, among other sections, Parts 5(a)(vii) of the Master Agreement. As the result of such occurrence and continuance, Simpson has the right to designate an Early Termination Date in respect of all outstanding Transactions under the Master Agreement. We hereby designate June 19, 2009, as the Early Termination Date under the Master Agreement in respect of the single outstanding Transaction with Confirmation dated August 17, 2005 and LBSF reference number Global 2238481, a copy of which is attached hereto.

As the Non-defaulting party we will make the calculations contemplated by Section 6(e) of the Master Agreement on or as soon as reasonably practicable following the occurrence of the Early Termination Date and will provide to LBSF the statement required by Section 6(d)(i) of the Master Agreement.

---

101 Plaza Drive • Downingtown, PA 19335 • (610) 269-8400 • FAX (610) 269-6095

Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Holdings Inc.
June 19, 2009
Page 2

       Simpson hereby reserves all rights under the Master Agreement and applicable law.

       Very truly yours,

       SIMPSON MEADOWS

By: _____
Name: Kim W. Williams
Title: President and CEO,
Simpson Senior Services, as
agent for Simpson Meadows

# EXHIBIT B

08-13555-mg    Doc 21887-1    Filed 11/10/11    Entered 11/10/11 13:56:49    Exhibit
Pg 4 of 8



*A Continuing Care Retirement Community by Simpson Senior Services*     July 1, 2009

VIA OVERNIGHT DELIVERY
Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, NY 10020
Attn: Derivatives Legal

Dear Sirs:

Reference is hereby made to the ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("LBSF") and Simpson Meadows ("Simpson") dated as of August 17th, 2005 (including the Schedule, Confirmation, and Credit Support Annex thereto, as amended from time to time, the "Master Agreement"). All capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Master Agreement. All references to the Non-Defaulting Party shall mean Simpson, and all references to the Defaulting Party shall mean LBSF.

In a notice dated June 19th, 2009, Simpson notified LBSF of the designation of June 19th, 2009 as the Early Termination Date under the Master Agreement in respect of the outstanding Transaction.

Under the Master Agreement, Market Quotation and Second Method are the specified elections for the calculation of termination payments. In accordance with the Master Agreement, the Non-Defaulting Party has calculated the Settlement Amount of the Terminated Transaction pursuant to part (b) of the definition of "Settlement Amount" in the Master Agreement, in accordance with the Loss methodology instead of the Market Quotation methodology under the Agreement. The Non-Defaulting Party requested Market Quotations for the Terminated Transaction from the nine (9) Reference Market-makers listed on Exhibit A hereto, but no Reference Market-maker was willing to provide a Market Quotation with respect to the Terminated Transaction under the terms and conditions of the Terminated Transaction. The Non-Defaulting Party concluded, among other things, that Market Quotations could not be determined and would not, in the reasonable belief of the Non-Defaulting Party, produce a commercially reasonable result.

Settlement Amount

The Non-Defaulting Party's Loss (without reference to any Unpaid Amounts or Section 9 expenses and indemnities) with respect to the Terminated Transaction is set forth in the subsequent paragraphs. Such Loss is the amount that the Non-Defaulting Party determined in good faith and under a commercially reasonable manner to be its total losses and costs in connection with the Terminated Transaction.

In accordance with the terms of the Master Agreement, in determining its Loss the Non-Defaulting Party took into consideration not only the economic terms of the transaction but also its loss of bargain, cost of funding, and replacement costs. The Non-Defaulting Party incurred substantial Loss resulting from the early termination of the Transaction because the Master Agreement was structured to include, but was not limited to, the following key and material terms: (a) Unsecured general obligation whereby Simpson provided no security interests in its

101 Plaza Drive • Downingtown, PA 19335 • (610) 269-8400 • FAX (610) 269-6095

the term of the Transaction; (b) Unilateral Credit Support Annex whereby only LBSF would be required to post collateral; (c) No Additional Termination Events against Simpson; (d) Incorporation of the terms and conditions of the loan agreement between Simpson and its conduit issuer which are substantially less stringent than the terms and conditions of the letter of credit provider; (e) Long dated maturity of October 2030 with no optional termination rights, puts or market tear-ups by LBSF, and (f) Cross-default threshold of $10 million which is set at a very high percentage of Simpson net assets and is greater than the amount of outstanding long-term debt (the provisions of clauses (a) through (f) are hereby collectively referenced as the "Key and Material Terms of the Master Agreement"). As evidenced by the failure to obtain Market Quotations on two separate occasions, unsuccessful negotiations with potential counterparties that deal with not-for-profit issuers, and LBSF's inability to transfer the Master Agreement to a qualified counterparty within a reasonable time period, we deemed that there was no available market to assign the Master Agreement on terms consistent with the Key and Material Terms of the Master Agreement. Additionally, Simpson's credit profile, 501(c)(3) not-for-profit corporate structure, and its lack of a public credit rating, further confounded the ability of Simpson to find a replacement counterparty with terms consistent with the Key and Material Terms of the Master Agreement.

Notwithstanding current market conditions which are marked by significant illiquidity, lack of credit being offered by financial institutions, and significantly wider credit spreads, Simpson was ultimately able to secure an actionable quotation for a new on-market swap from a single leading Reference Market-maker (hereby referenced as the "Replacement Swap"). The Replacement Swap was structured to provide Simpson with terms as reasonably similar to the Key and Material Terms of the Master Agreement as possible given current market conditions. However, in order for Simpson to avoid pledging any security interest in its assets or revenues (consistent with provision (a) in the Key and Material Terms of the Master Agreement), the Replacement Swap counterparty required that Simpson purchase a swaption that provided a cap on the maximum negative mark-to-market. Moreover, under the Actionable Replacement Swap, the counterparty required a Cross-default Threshold of $5,000,000, a bi-lateral Credit Support Annex, and the same financial covenants set forth in the related credit agreement. Each such term was more burdensome to Simpson relative to the Key and Material Terms of the Master Agreement. Additionally, the fixed rate offered by the Replacement Swap counterparty was higher than the Fixed Rate under the Master Agreement due to the requirement by the counterparty that Simpson purchase a swaption to keep the exposure of the Replacement Swap below a specified threshold. The Fixed Rate of the Replacement Swap incorporated the cost of purchasing the required swaption and a non-Section 9 advisory and structuring expense payable to a financial advisor retained by Simpson. As the Fixed Rate Payer, and because the Fixed Rate offered under the Replacement Swap was higher than the Fixed Rate under the Master Agreement, the Non-Defaulting Party has determined in a commercially reasonable manner that, the Defaulting Party would owe a Settlement Amount equal to the present value difference between the Fixed Rate provided under the Replacement Swap and the Fixed Rate under the Master Agreement. The present value was calculated using a discount rate equal to the Non-Defaulting Party's cost of funds which is assumed to be 10.00% as of the date hereof. The Non-Defaulting Party also took into consideration the material differences between the provisions that exist in the Replacement Swap (as described above) from the Key and Material Terms of the Master Agreement relating to the Terminated Transaction. Such differences, should they have been achievable in the current market, would have had the economic effect of further increasing the Fixed Rate under the Replacement Swap. The Settlement Amount takes into account the present value difference between the actual Fixed Rate payable by Simpson under the Replacement Swap and the Terminated Transaction as well as an assumed increase to this Replacement Swap Fixed Rate to

compensate for the other more burdensome material differences in terms in conditions between the Replacement Swap and the Key and Material Terms of the Master Agreement.

Based solely on the method of calculating Loss set forth in the immediately preceding paragraph, the Non-Defaulting Party has determined that its Loss on the Terminated Transactions is USD 191,333.

The Non-Defaulting Party reserves all rights under the Master Agreement, the Terminated Transaction, and applicable law to modify the calculation of Loss in the future to take into account the materially differing terms and provisions of the Replacement Swap and the Key and Material Terms of the Master Agreement.

<u>Unpaid Amounts</u>

There are no Unpaid Amounts owing by the Defaulting Party to the Non-Defaulting Party in relation to the Terminated Transaction.

There are Unpaid Amounts owing by the Non-Defaulting Party to the Defaulting Party in relation to the Terminated Transaction, which are equal to USD 132,456. Such unpaid amounts reflect the periodic net settlement due by Simpson on November 1, 2008, December 1, 2008; January 1, 2009; February 1, 2009; March 1, 2009, April 1, 2009, May 1, 2009, and June 1, 2009 subject to adjustment in accordance with the business day convention established in the Master Agreement.

Note that Simpson paid LBSF the periodic net settlement due by Simpson on October 1, 2008, subject to adjustment in accordance with the convention established in the Master Agreement, which was subsequent to the LBSF Event of Default but prior to the Early Termination Date. Accordingly such amount is not included in the forgoing calculations.

Since we did not receive payment instructions or rate reset notices from the Calculation Agent, the Unpaid Amounts were determined by us in good faith based on the terms of the Master Agreement.

<u>Out of Pocket and Section 9 Expenses and Indemnities</u>

The Non-Defaulting Party has already incurred and may incur additional reasonable out-of-pocket expenses, including legal fees, as a result of the enforcement and protection of its rights under the Agreement. According to Section 9 of the Agreement, the Non-Defaulting Party is entitled to indemnity against all of such out-of-pocket expenses. The Non-Defaulting Party has estimated these fees and expenses to be in the amount of USD 50,000.

Accordingly, the amount calculated for the purposes of Section 6(d) of the Agreement is as follows:

| | |
|---|---|
| Settlement Amount: | USD 191,333 |
| Reasonable out-of-pocket expenses incurred by the Non-Defaulting Party; | USD 50,000 |
| Unpaid Amounts owing by the Defaulting Party: | USD 0 |

| | |
|---|---|
| Less Unpaid Amounts owing by the Non-Defaulting Party: | (USD 132,456) |
| TOTAL: | USD 108,877 |

Under the provisions provided under the Master Agreement, Simpson is hereby exercising its right to set-off and, as such, the net amount due and payable by the Defaulting Party to the Non-Defaulting Party as of the Early Termination Date is USD 108,877 plus accrued interest at the Applicable Rate from the Early Termination Date to the date on which payment is made by the Defaulting Party. Based on prevailing market conditions the Applicable Rate as of the date hereof is 11.00%.

Simpson hereby reserves all rights under the Master Agreement and applicable law.

Very truly yours,

SIMPSON MEADOWS

By: _____
Name: Kim W. Williams
Title: President & CEO
    Simpson Senior Services
    Agent for Simpson Meadows