**Objection Date and Time: November 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)**
**Confirmation Hearing Date and Time: December 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
George A. Zimmerman
Max S. Polonsky
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for NextEra Energy Power Marketing, LLC*
*f/k/a FPL Energy Power Marketing Inc. and*
*Florida Power & Light Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re                                                            : Chapter 11
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         : Case No. 08-13555 (JMP)
                                                                 :
                    Debtors.                                     : (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

### LIMITED OBJECTION OF FLORIDA POWER & LIGHT COMPANY AND FPL ENERGY POWER MARKETING, LLC TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

Florida Power & Light Company ("FPL") and NextEra Energy Power Marketing, LLC ("PMI," and together with FPL, the "Counterparties"), by and through their undersigned attorneys, hereby submit this limited objection (this "Objection") to the assumption of contracts listed in the plan supplement (the "Plan Supplement") to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. ("LBHI") (the "Plan") and its affiliated debtors-in-possession (together, the "Debtors"), through which the Debtors seek to assume: (i) that certain 1992 ISDA Master Agreement (Multicurrency-Cross Border), by and between Lehman Brothers Commodity Services Inc. ("LBCS") and FPL, dated August 14, 2006, the associated Schedule and Guarantee of Lehman Brothers Holdings Inc. dated August 14, 2001 and August 21, 2006,

respectively, and a Credit Support Annex dated August 11, 2006 (collectively, the "FPL Agreement"); and (ii) that certain 1992 ISDA Master Agreement (Multicurrency-Cross Border), by and between LBCS and PMI, dated as of January 30, 2007 and amended on May 22, 2007, the associated Schedule and a Credit Support Annex dated January 30, 2007, and the Guarantee of Lehman Brothers Holdings Inc. dated June 26, 2006, (the "PMI Agreement" and together with the FPL Agreement, the "Swap Agreements").[1] The Counterparties submit this Objection to preserve their rights in a dispute with LBHI and LBCS (the "Contract Debtors" and together with the Counterparties, the "Parties") over their rights under the Swap Agreements and appropriate amounts owed to or owing from the Contract Debtors, and in support thereof respectfully state as follows:

## BACKGROUND

1. On September 15, 2008, LBHI, and periodically thereafter, certain of its affiliates commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). In particular, LBCS commenced a chapter 11 case on October 3, 2008.

2. After LBHI filed for bankruptcy protection on September 15, 2008—an Event of Default under the Swap Agreements[2]—PMI and FPL exercised their respective rights to terminate all outstanding transactions under the Swap Agreements, as expressly contemplated by section 560 of the Bankruptcy Code. Subsequently, a dispute arose among the Contract Debtors

---

[1] LBHI serves as guarantor of LBCS's obligations under the Swap Agreements.

[2] All capitalized terms not defined herein have the meaning ascribed to them in the PMI Agreement or the FPL Agreement, as applicable.

2

and the Counterparties over the appropriate amounts owed to or by the Counterparties under the Swap Agreements.

3. Under the Plan, executory contracts that are not listed on the Plan Supplement are deemed rejected unless they are assumed by the Debtors. (See Plan, § 11.1.) On October 25, 2011, Debtors filed the Plan Supplement, which includes the Swap Agreements among a list of contracts to be assumed and identifies LBCS as the sole applicable Debtor with respect to both agreements.

4. The Counterparties understand that LBCS wants to assume the Swap Agreements to avoid their treatment as rejected contracts under the Plan, in light of the Court's ruling that a terminated ISDA agreement was an executory contract. Lehman Brothers Special Finance v. BNY Corporate Trustee Services Limited, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010). LBCS is apparently concerned that if the Swap Agreements also are deemed executory contracts—and thus rejected by the Plan—LBCS may forfeit hypothetical benefits under the Swap Agreements, including an alleged receivable from the Counterparties.

## LIMITED OBJECTION

5. To the extent the Debtors merely seek to preserve the status quo—that is, to preserve the Parties' current rights and remedies under the Swap Agreements, and to proceed with mediation scheduled for December 16, 2011, under procedures approved by the Court—the Counterparties consent to assumption.

6. If, however, the Debtors seek to modify the Parties' obligations under the Swap Agreements, that is impermissible on a motion to assume. See COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.), 524 F.3d 373, 383 (2d Cir. 2008) (assumption may not alter pre-petition contractual obligations). Accordingly, the Debtors may not revive the

3

swap transactions, which were duly terminated following the Event of Default; rather, the Debtors may merely assert their alleged right to a receivable from the Counterparties under section 6 of the Swap Agreements, governing the Parties' remedies upon the designation of an Early Termination Date.[3] See id.; see also 11 U.S.C. § 560 (authorizing swap counterparties to exercise contractual rights to liquidate, terminate or accelerate swap agreements upon a bankruptcy filing).[4]

7.    Moreover, the Debtors may not obtain a ruling that impacts the Parties' underlying dispute on a motion to assume. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that bankruptcy court's application of business judgment test for a motion to assume may not finally determine an underlying disputed factual or legal issue).

8.    Further, it is unclear from the Plan Supplement whether the Debtors intend to assume each Swap Agreement in its entirety or to omit the guarantees executed by LBHI.[5]

---

[3] To the extent LBCS contends that no Event of Default occurred, or that the Parties' rights should be governed by a provision other than section 6 of the Swap Agreements, the Counterparties reserve their right to supplement the Objection and to assert other appropriate claims for relief.

[4] Although Penn Traffic stressed the importance of a debtors' ability to choose beneficial contracts to assume, the Second Circuit did not consider the impact of the Bankruptcy Code's safe harbor provisions. This Court has emphasized that those provisions prohibit a debtor from selectively enforcing favorable contract provisions: "[B]y means of the safe harbor provisions, Congress sought to allay concerns that 'the termination and setoff of a swap agreement would be automatically stayed when one of the parties files a bankruptcy petition,' and that a trustee, 'after indefinitely postponing termination of the swap agreement, could refuse setoff and unfairly 'cherry pick' only the portions of the agreement advantageous to the debtor, while rejecting the portions unfavorable to the debtor.'" In re Lehman Brothers Holdings Inc., 433 B.R. 101, 110-111 (Bankr. S.D.N.Y. 2010) (citing H.R. Rep. 101-484), aff'd 445 B.R. 130, 136 (S.D.N.Y. 2011) ("Third, the legislative history addresses the need for swap participants to be able to close out existing transactions without fear that: (1) closing out swaps would violate the stay; (2) a debtor would opportunistically reject unfavorable swaps and assume favorable ones; or (3) the transactions would be challenged as voidable preferences."). Hence, the legislative purpose of the safe harbor provision comports with a fundamental tenet of assumption—that the debtor must assume all elements of a single integrated contract.

[5] It is unclear whether the Plan Supplement assumes the guarantees executed by LBHI. Part 2A of the Plan Supplement purports to assume "all derivatives contracts" with each listed counterparty—here, FPL and PMI. (Plan Supplement, p. 324.) Part 2A, in turn, defines a "derivatives contract" as a "contract in which the
(cont'd)

LBCS cannot assume some, but not all, instruments comprising either Swap Agreement; rather, where, as here, multiple instruments comprise a single integrated contract, all associated instruments must be assumed, Pieco, Inc. v. Atlantic Computer Systems, Inc. (In re Atlantic Computer Systems, Inc.), 173 B.R. 844, 849 (S.D.N.Y. 1994), because contracts must be assumed in their entirety. N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984). Accordingly, LBCS may not assume the ISDA Master Agreement, while excluding the accompanying guarantees executed by LBHI.

9.   Lastly, the Debtors must ensure that PMI is fully compensated for the amount of its Loss under the PMI Agreement resulting from the Event of Default.[6] See 11 U.S.C. § 365(b)(1)-(3) (requiring debtors to (i) cure, or provide adequate assurance of a cure, for default; (ii) compensate the non-debtor for its actual pecuniary loss; and (iii) provide adequate assurance of future performance); In re National Gypsum Company, 208 F.3d 498, 506 (5th Cir. 2000) (stating that the debtor must "cure any existing default and compensate all non-debtor parties for actual pecuniary losses that have resulted therefrom"). Thus, to the extent the assumption of either Swap Agreement provides for a zero cure amount, the Counterparties preserve their

---

*(cont'd from previous page)*
contractual obligations and values are keyed to one or more underlying assets or indices of asset values"—a classification that Debtors may intend to exclude the guarantees executed by LBHI. (Id.).

[6]   In its closeout calculation dated February 9, 2009, PMI determined its Loss to be $4,943,693; proofs of claim were subsequently filed against LBCS and LBHI by PMI on September 22, 2009. LBCS has not proposed a specific cure amount with respect to the PMI Agreement. Further, the Plan Supplement expressly conditions the Debtors' assumption of any contract on "agreement of the relevant counterparty or, if necessary adjudication by the Bankruptcy Court" of an appropriate cure amount. (See Plan Supplement, p. 323.) Accordingly, consistent with the foregoing condition in the Plan, PMI reserves its right to contest any cure amount Debtors subsequently propose and to an evidentiary hearing on the amount of its Loss.

LBCS did, however, propose a cure amount of zero dollars for FPL. The Counterparties are continuing to examine whether this proposal is appropriate in light of a disputed setoff. To the extent that LBCS maintains that its assumption of the FPL Agreement, or its designation of a cure amount of zero dollars, (i) invalidates the setoff performed by FPL, or (ii) revives the terminated transactions by restoring them to their pre-default condition, FPL objects to assumption of the FPL Agreement and reserves its right to submit a supplemental memorandum on this issue.

objection to such cure amount and expressly maintain that all rights, including any rights under the Swap Agreements, are preserved by the Counterparties and are not waived by the assumption of the Swap Agreements by the Debtors.

10. This Objection shall not constitute an acknowledgment or agreement by the Counterparties that: (i) the PMI Agreement or the FPL Agreement is an executory contract within the meaning of section 365(a) of the Bankruptcy Code;[7] (ii) Debtors' assumption of the Swap Agreements complies with any requirement set forth in section 365(b)(1); (iii) a setoff performed by FPL was invalid; or (iv) the Counterparties' calculation of their Loss under the respective Swap Agreements was incorrect.

Dated: New York, New York
November 10, 2011

Respectfully submitted,

Skadden, Arps, Slate, Meagher & Flom LLP

By: /s/ George A. Zimmerman
George A. Zimmerman
Max S. Polonsky
Four Times Square
New York, New York 10036
Telephone: 212-735-3000
Facsimile: 212-735-2000

*Attorneys for NextEra Energy Power Marketing, LLC f/k/a FPL Energy Power Marketing Inc. and Florida Power & Light Company*

---

[7] In the Plan Supplement, Debtors do not take a position on whether the Swap Agreements are executory contracts. See Plan Supplement, p. 323 ("[T]he listing of an executory contract or unexpired lease on Exhibit 2 shall not constitute an admission by the Debtors that such document is or is not an executory contract . . . ."). The Counterparties believe, however, that the Swap Agreements are not executory contracts within the meaning of section 365 and, accordingly, reserve the right to file a supplemental memorandum if "executoriness" becomes an issue.