Objection Date and Time: November 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)
Confirmation Hearing Date and Time: December 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
David M. Turetsky
Max S. Polonsky
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Prudential Investment Management, Inc.
as agent and investment advisor*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
: 
In re : Chapter 11
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------------x

**LIMITED OBJECTION OF PRUDENTIAL INVESTMENT MANAGEMENT, INC. TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Prudential Investment Management, Inc. ("Prudential"), as agent and investment advisor for Dryden Total Return Bond Fund, Inc., Dryden High Yield Fund, Inc., Diversified Bond Portfolio of The Prudential Series Fund, High Yield Bond Portfolio of the Prudential Series Fund, and Dryden Global Total Return Fund, Inc. ( the "Counterparties"), by and through its undersigned attorneys, hereby submits this limited objection (this "Objection") to the assumption of contracts listed in the plan supplement (the "Plan Supplement") to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. ("LBHI") (the "Plan") and its affiliated debtors-in-possession (together, the "Debtors"), through which the Debtors seek to assume: (i) an ISDA Master Agreement, dated as of February 28, 2008, as may have been amended from time to time, which included certain schedules, documents, confirmations and a

guarantee of the obligations of Lehman Brothers Special Financing Inc. ("LBSF"), by and between Dryden Total Return Bond Fund, Inc., LBSF and LBHI; (ii) an ISDA Master Agreement, dated as of February 28, 2008, as may have been amended from time to time, which included certain schedules, documents, confirmations and a guarantee of the obligations of LBSF, by and between Dryden High Yield Fund, Inc., LBSF and LBHI; (iii) an ISDA Master Agreement, dated as of February 28, 2008, as may have been amended from time to time, which included certain schedules, documents, confirmations and a guarantee of the obligations of LBSF, by and between Diversified Bond Portfolio of The Prudential Series Fund, LBSF and LBHI; (iv) an ISDA Master Agreement, dated as of February 28, 2008, as may have been amended from time to time, which included certain schedules, documents, confirmations and a guarantee of the obligations of LBSF, by and between High Yield Bond Portfolio of The Prudential Series Fund, LBSF and LBHI; and (v) an ISDA Master Agreement, dated as of February 28, 2008, as may have been amended from time to time, which included certain schedules, documents, confirmations and a guarantee of the obligations of LBSF, by and between Dryden Global Total Return Fund, Inc., LBSF and LBHI (together, the "Swap Agreements").[1] The Counterparties submit this Objection to preserve their rights against LBHI and LBSF (the "Contract Debtors") over the settlement of amounts owed to or owing from the Contract Debtors, and in support thereof respectfully state as follows:

## BACKGROUND

1. On September 15, 2008, LBHI, and periodically thereafter, certain of its affiliates commenced voluntary cases under chapter 11 of title 11 of the United States Code (the

---

[1] LBHI serves as guarantor of LBSF's obligations under the Swap Agreements.

2

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). In particular, LBSF commenced a chapter 11 case on October 3, 2008.

2. After LBHI commenced its bankruptcy case—an Event of Default under the Swap Agreements[2]—the Counterparties exercised their respective rights to terminate all outstanding transactions under the Swap Agreements, as expressly contemplated by section 560 of the Bankruptcy Code. Subsequently, a dispute arose among the Contract Debtors and the Counterparties over the appropriate amounts owed to or by the Counterparties under the Swap Agreements.

3. Under the Plan, executory contracts that are not listed on the Plan Supplement are deemed rejected unless they are assumed by the Debtors. (See Plan, § 11.1.) On October 25, 2011, Debtors filed the Plan Supplement, which potentially includes the Swap Agreements among a list of contracts to be assumed and identifies LBSF as the sole applicable Debtor with respect to both agreements. (See Plan Supplement, p. 426.)

4. The Counterparties understand that LBSF wants to assume the Swap Agreements to avoid their treatment as rejected contracts under the Plan, in light of the Court's ruling that a terminated ISDA agreement was an executory contract. Lehman Brothers Special Finance v. BNY Corporate Trustee Services Limited, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010). LBSF is apparently concerned that if the Swap Agreements also are deemed executory contracts—and thus rejected by the Plan—LBSF may forfeit hypothetical benefits under the Swap Agreements, including an alleged receivable from the Counterparties.

---

[2] All capitalized terms not defined herein have the meaning ascribed to them in the relevant Swap Agreement, as applicable.

3

**LIMITED OBJECTION**

5. To the extent the Contract Debtors merely seek to preserve the status quo—that is, to complete execution of negotiated agreements and payments to the Debtors consistent with the terms of those agreements, under procedures approved by the Court—the Counterparties consent to assumption.

6. If, however, the Contract Debtors seek to modify the parties' obligations under the Swap Agreements, that is impermissible on a motion to assume. See COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.), 524 F.3d 373, 383 (2d Cir. 2008) (assumption may not alter pre-petition contractual obligations). Accordingly, the Debtors may not revive the swap transactions, which were duly terminated following the Event of Default; rather, the Debtors may merely assert their alleged right to a receivable from the Counterparties under section 6 of the Swap Agreements, governing the parties' remedies upon the designation of an Early Termination Date.[3] See id.; see also 11 U.S.C. § 560 (authorizing swap counterparties to exercise contractual rights to liquidate, terminate or accelerate swap agreements upon a bankruptcy filing).[4]

---

[3] To the extent LBSF contends that no Event of Default occurred, or that the parties' rights should be governed by a provision other than section 6 of the Swap Agreements, the Counterparties reserve their right to supplement the Objection and to assert other appropriate claims for relief.

[4] Although Penn Traffic stressed the importance of a Debtors' ability to choose beneficial contracts to assume, the Second Circuit did not consider the impact of the Bankruptcy Code's safe harbor provisions. This Court has emphasized that those provisions prohibit a debtor from selectively enforcing favorable contract provisions: "[B]y means of the safe harbor provisions, Congress sought to allay concerns that 'the termination and setoff of a swap agreement would be automatically stayed when one of the parties files a bankruptcy petition,' and that a trustee, 'after indefinitely postponing termination of the swap agreement, could refuse setoff and unfairly 'cherry pick' only the portions of the agreement advantageous to the debtor, while rejecting the portions unfavorable to the debtor.'" In re Lehman Brothers Holdings Inc., 433 B.R. 101, 110-111 (Bankr. S.D.N.Y. 2010) (citing H.R. Rep. 101-484), aff'd 445 B.R. 130, 136 (S.D.N.Y. 2011) ("Third, the legislative history addresses the need for swap participants to be able to close out existing transactions without fear that: (1) closing out swaps would violate the stay; (2) a debtor would opportunistically reject unfavorable swaps and assume favorable ones; or (3) the transactions would be challenged as voidable preferences."). Hence, the legislative purpose of the safe harbor provision comports with a fundamental tenet of assumption—that the debtor must assume all elements of a single integrated contract.

4

7.  Moreover, the Debtors may not obtain a ruling that impacts the parties' underlying dispute on a motion to assume. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that bankruptcy court's application of business judgment test for a motion to assume may not finally determine an underlying disputed factual or legal issue).

8.  Further, it is unclear from the Plan Supplement whether the Debtors intend to assume each Swap Agreement in its entirety or to omit the guarantees executed by LBHI.[5] LBSF cannot assume some, but not all, instruments comprising either Swap Agreement; rather, where, as here, multiple instruments comprise a single integrated contract, all associated instruments must be assumed, Pieco, Inc. v. Atlantic Computer Systems, Inc. (In re Atlantic Computer Systems, Inc.), 173 B.R. 844, 849 (S.D.N.Y. 1994), because contracts must be assumed in their entirety. N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984). Accordingly, LBSF may not assume the ISDA Master Agreement, while excluding the accompanying guarantees executed by LBHI.

9.  This Objection shall not constitute an acknowledgment or agreement by the Counterparties that: (i) the Swap Agreements are executory contracts within the meaning of section 365(a) of the Bankruptcy Code;[6] (ii) the Debtors' assumption of the Swap Agreements

---

[5] It is unclear whether the Plan Supplement assumes the guarantees executed by LBHI. Part 2A of the Plan Supplement purports to assume "all derivatives contracts" with each listed counterparty. (Plan Supplement, p. 324.) Part 2A, in turn, defines a "derivatives contract" as a "contract in which the contractual obligations and values are keyed to one or more underlying assets or indices of asset values"—a classification that Debtors may intend to exclude the guarantees executed by LBHI. (Id.).

[6] In the Plan Supplement, the Debtors do not take a position on whether the Swap Agreements are executory contracts. See Plan Supplement, p. 323 ("[T]he listing of an executory contract or unexpired lease on Exhibit 2 shall not constitute an admission by the Debtors that such document is or is not an executory contract . . . ."). The Counterparties believe, however, that the Swap Agreements are not executory contracts within the meaning of section 365 and, accordingly, reserve the right to file a supplemental memorandum if "executoriness" becomes an issue.

5

complies with any requirement set forth in section 365(b)(1); or (iii) the Counterparties'

valuations under the respective Swap Agreements are incorrect.

Dated:  New York, New York
        November 10, 2011

                    Respectfully submitted,

                    Skadden, Arps, Slate, Meagher & Flom LLP

                    By:    */s/ David M. Turetsky*
                            David M. Turetsky
                            Max S. Polonsky
                            Four Times Square
                            New York, New York 10036
                            Telephone:  212-735-3000
                            Facsimile:  212-735-2000

*Attorneys for Prudential Investment Management, Inc.*
*as agent and investment advisor*