Proposed Hearing Date and Time: December 6, 2011 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: November 10, 2011

ROPES & GRAY LLP
Mark I. Bane (MB 4883)
Jose Raul Alcantar Villagran (JA 0925)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090

*Attorneys for Sankaty Credit Opportunities III, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | **Case No. 08-13555 (JMP)** |
| **Debtors.** | **Jointly Administered** |

**OBJECTION OF SANKATY CREDIT OPPORTUNITIES III, L.P. TO**
**DEBTORS' PROPOSED ASSUMPTION OF CERTAIN DERIVATIVE AGREEMENTS**

Sankaty Credit Opportunities III, L.P. ("COPS III"), by and through its undersigned

counsel, hereby submits this objection (the "Objection") to the Debtors' proposed assumption of

terminated derivative contracts between COPS III and Lehman Brothers Special Financing, Inc.

("LBSF"), pursuant to the Third Amended Joint Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors [Docket No  19627] (the "Proposed Plan"), and respectfully sets forth as

follows:

**Background**

1.      COPS III and LBSF entered into an ISDA Master Agreement (Multicurrency-

Cross Border), dated as of March 17, 2005, as amended and supplemented by a schedule and a

credit support annex (collectively, the "<u>Agreement</u>").[1] Lehman Brothers Holdings Inc. ("<u>LBHI</u>")

guaranteed LBSF's obligations under the Agreement.

2.      On September 15, 2008 (the "<u>LBHI Petition Date</u>"), LBHI filed a petition for

relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the

United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy</u>

<u>Court</u>").  On October 3, 2008, LBSF also filed a petition for relief under chapter 11 of the

Bankruptcy Code with the Bankruptcy Court.  Each of LBHI's and LBSF's filings constituted an

"Event of Default" under the Agreement.

3.      Section 6(a) of the ISDA Master Agreement provides that, if an "Event of

Default" occurs, the non-defaulting party may terminate all outstanding transactions under such

agreements by notifying the defaulting party of the event of default and designating an Early

Termination Date for the transactions thereunder.  On the LBHI Petition Date, pursuant to the

Agreement's express terms, COPS III terminated the transactions under the Agreement (the

"<u>Transactions</u>") by written notice to LBSF and designated September 15, 2008 as the Early

Termination Date, based on LBHI's bankruptcy filing.  On September 19, 2008, COPS III sent

LBSF a Statement of Calculations, notifying LBSF of the amounts due under the Agreement and

terminated Transactions.

<strong><u>The Claims Against LBSF and LBHI</u></strong>

4.      In connection with the terminations, COPS III timely filed proofs of claim against

each of LBSF and LBHI (as guarantor) for (i) damages based upon the Loss in respect of the

applicable Early Termination Date, (ii) interest on such damages, and (iii) expenses (including,

but not limited to, reasonable out-of-pocket expenses, costs and attorneys' fees incurred in

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

enforcing rights under the Agreement), plus any other amounts due and owing under the applicable Agreement.  COPS III also demanded a return of collateral held by LBSF that COPS III had posted under the Agreement.  A copy of the proof of claim filed by COPS III against LBSF in respect of the foregoing is annexed hereto as <u>Exhibit A</u> (the "<u>Claim</u>").

5.     As of the date hereof, COPS III has not received from LBSF any payment on account of any portion of the Claim, or from LBHI in respect of its claim against LBHI.  COPS III accordingly continues to assert the full amount of the Claim against both LBSF and LBHI.

## **<u>The Debtors' Proposed Assumption</u>**

6.     Articles 11.1 and 11.2 of the Proposed Plan of Reorganization filed by the Debtors (the "<u>Proposed Plan</u>") provide that the Debtors will publish, in the Plan Supplement, a list of executory contracts and unexpired leases to be assumed, and those contracts and leases will be approved as assumed upon entry of an Order of this Court confirming the Proposed Plan. This list of executory contracts appears as Plan Supplement Exhibit 2 – "Schedule of Executory Contracts and Unexpired Leases to Be Assumed Pursuant to Section 11.1 of the Plan."

7.     Exhibit 2, Part A to the Plan Supplement lists those counterparties to purported derivative agreements with LBSF that LBSF now seeks to assume.  Exhibit 2, Part A to the Plan Supplement states that "[u]nless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivatives contract with each counterparty set forth on Exhibit 2, Part A."  COPS III is listed on Exhibit 2, Part A.

8.     COPS III has received a notice of proposed assumption, annexed hereto as <u>Exhibit B</u>, which does not identify any specific derivative agreement, and also identifies the proposed cure amount with respect to unspecified derivative agreements at $0.  Although COPS III has no way of knowing, at this juncture, whether the LBSF seeks to assume the Agreement

3

and the Transactions pursuant to the vague notice received by COPS III, the Plan Supplement, and the Proposed Plan, COPS III submits this Objection out of abundance of caution under the presumption that each of the Agreement and Transactions are, in fact, included in the Exhibit 2, Part A to the Plan Supplement. COPS III reserves all rights to challenge LBSF's proposed assumption, including on grounds of due process or otherwise.

<u>Argument</u>

**I.     COPS III Validly Terminated the Transactions**

9.     The Debtors are unable to assume contracts with COPS III because such contracts were already terminated, on September 15, 2008. The termination notice complied with all the terms and requirements.

10.     The postpetition termination by COPS III is explicitly permitted under the Bankruptcy Code. Specifically, section 560 of the Bankruptcy Code expressly preserves the rights of a non-defaulting counterparty to a swap agreement[2] to terminate the contract based upon a condition specified in section 365(e)(1) of the Bankruptcy Code. <u>See</u> 11 U.S.C. § 560; <u>In re Enron Corp.</u>, 306 B.R. 465, 473 (S.D.N.Y. 2004); <u>see also</u> <u>In re Lehman Brothers Holdings Inc.</u>, No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2009) (transcript of record at 111). The

---

[2] The Master Agreement is a "swap agreement" within the meaning of the Bankruptcy Code. Under section 101(53B) of the Bankruptcy Code a "swap agreement" means:

> (A) an agreement (including terms and conditions incorporated by reference therein) which is a rate swap agreement, basis swap, forward rate agreement, commodity swap, interest rate option, forward foreign exchange agreement, spot foreign exchange agreement, rate cap agreement, rate floor agreement, rate collar agreement, currency swap agreement, cross-currency rate swap agreement, currency option, any other similar agreement (including any option to enter into any of the foregoing);

> (B) any combination of the foregoing; or

> (C) a master agreement for any of the foregoing together with all supplements.

11. U.S.C. § 101(53B).

conditions listed in section 365(e)(1) of the Bankruptcy Code include, among other things, the filing of a bankruptcy petition.

## II.     The Debtors are Precluded From Assuming Terminated Contracts

11.     A debtor, such as LBSF, cannot assume terminated contracts.  Section 365 of the Bankruptcy Code allows a debtor to assume or reject any of its executory contracts or unexpired leases.  A contract or lease that has already been terminated, however, cannot thereafter be assumed pursuant to section 365 of the Bankruptcy Code.  See Bell v. Alden Owners, Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996) ("Once a lease is terminated, however, nothing remains for a debtor to assume under section 365."); see also In re Penn Traffic Co., No. 05-3755, 2005 WL 2276879, *2 (S.D.N.Y. Sept. 16, 2005) ("Accordingly, 'when performance remains due on only one side, the contract is non-executory, and hence, neither assumable nor rejectable.'") (quoting In re Riodizio, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997)).

12.     Moreover, a debtor is not entitled to litigate substantive issues of termination or resulting claims and obligations in a summary proceeding of assumption, such as that pursued by the Debtors.  The Second Circuit has made abundantly clear that contract issues, such as termination, may not be decided as part of a motion to assume.  See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F. 3d 1095, 1099 (2d Cir. 1993) ("[A]llowing a bankruptcy court to decide a disputed *legal* contract issue in the course of deciding a motion to assume could usurp litigants' Seventh Amendment jury-trial rights.") (emphasis in original).  This is consistent with the Supreme Court's recent decision in Stern v. Marshall, where the Court made clear that bankruptcy courts "should refrain from impinging upon the exclusive jurisdiction of the Article III courts by entering judgments on state law claims involving non-debtor third parties."  Garden v. Cent. Neb. Housing Corp. (In re Roberts), 2011

Bankr. LEXIS 2846 (Bankr. D. Neb. July 19, 2011) (citing <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011)).

### III.    Assumption is Impossible Because the Debtors Cannot Cure Outstanding Defaults

13.    Even if the Debtors could show that the targeted contracts had not been terminated, LBSF cannot assume its agreements with COPS III because LBSF cannot satisfy the Bankruptcy Code's prerequisites to such assumption.  <u>See</u> 11 U.S.C. § 365(b).  LBSF is in default of the Agreements and the Transactions thereunder.  As such, as a pre-condition to LBSF assuming these contracts, it must be evidenced that LBSF "*inter alia*, (a) cures, or provides adequate assurance that it will promptly cure, the default, and (b) provides adequate assurance of its future performance of its obligations under the contract."  <u>E. Airlines, Inc. v. The Ins. Co. of the State of Pa. (In re Ionosphere Clubs, Inc.)</u>, 85 F.3d 992, 999 (2d Cir. 1996).

14.    In the first instance, LBSF does not even propose to cure its monetary defaults. LBSF lists the proposed cure amount at $0, notwithstanding the non-payment of the Claim, asserted in the millions of dollars.  At a bare minimum, as a precondition to any assumption by LBSF, COPS III is entitled to cure and immediate compensation in an amount not less than the amounts set forth in the Claim.

15.    Even if LBSF intends to cure existing monetary defaults, an additional prerequisite to assumption is the cure of non-monetary defaults, which LBSF simply cannot cure. The bankruptcies of each of LBSF and LBHI constituted an "Event of Default," and, given that both LBSF and LBHI are liquidating under the Proposed Plan, there can be no cure.  <u>See</u> 11 U.S.C. § 365(b).  For the same reason LBSF cannot cure, LBSF cannot provide adequate assurance that it will promptly cure.

16.     Further, LBSF cannot possibly give adequate assurance of the future performance of its obligations since the Transactions would not terminate by their own terms until their respective termination dates.  Any assertion by LBSF that it can provide meaningful assurance to anyone regarding LBSF's future performance over such periods, while it simultaneously attempts to confirm a bankruptcy plan that will liquidate LBSF well before then, defies reason.

17.     Finally, because of LBHI's bankruptcy, LBSF cannot satisfy its material, non-monetary obligation under the Agreements or the transactions of having LBHI guarantee LBSF's obligations.  "Congress's intent in imposing [the section 365(b) conditions] on the ability of the debtor to assume the contract was 'to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance.'"  Ionosphere, 85 F.3d at 999 (quoting In re Superior Toy & Mfg Co., 78 F.3d 1169, 1174 (7th Cir.1996) ("If the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain.") (internal citations omitted)).

### Notice

No trustee or examiner has been appointed in these cases.  Notice of this Objection has been provided to: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in

these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York,

New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.).

## No Prior Relief

The relief requested by the Funds in this Objection has not been sought previously in this

or any other court.

## Conclusion

**WHEREFORE**, COPS III respectfully requests that the Bankruptcy Court (i) deny the

Debtors' assumption of the Agreement and/or the Transactions or, in the alternative, (ii) direct

the removal of COPS III from Exhibit 2 to the Plan Supplement, and (iii) grant such other and

further relief as is just and proper.


Dated: November 10, 2011
      New York, New York

            ROPES & GRAY LLP

            */s/   Mark I. Bane*
            Mark I. Bane (MB 4883)
            Jose Raul Alcantar Villagran (JA 0925)
            1211 Avenue of the Americas
            New York, New York 10036-8704
            Telephone:  (212) 596-9000
            Facsimile:  (212) 596-9090

            *Attorneys for Sankaty Credit Opportunities III, L.P.*