ROPES & GRAY LLP
Jose Raul Alcantar Villagran (JA-0925)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

    and

D. Ross Martin (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Attorneys for Massachusetts Housing Finance Agency*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | **Case No. 08-13555 (JMP)** |
| **Debtors.** | **Jointly Administered** |

**OBJECTION OF MASSACHUSETTS HOUSING FINANCE AGENCY
TO DEBTORS' PROPOSED ASSUMPTION OF ISDA MASTER AGREEMENTS**

    Massachusetts Housing Finance Agency ("Mass Housing"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Debtors' proposed assumption of terminated derivative contracts between Mass Housing and Lehman Brothers Special Financing, Inc. ("LBSF"), pursuant to the Third Amended Joint Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Docket No 19627] (the "Plan"), and respectfully sets forth as follows.

-1-

## BACKGROUND

1.  Mass Housing and LBSF entered into an ISDA Master Agreement, dated as of June 10, 2002 (the "2002 Master Agreement"), and thereafter executed transaction confirmations governed by the 2002 Master Agreement.  Pursuant to the 2002 Master Agreement, Lehman Brothers Holdings Inc. ("LBHI") is a Credit Support Provider of LBSF under the 2002 Master Agreement and all transactions thereunder.

2.  Mass Housing and LBSF entered into another ISDA Master Agreement, dated as of July 18, 2008 (the "2008 Master Agreement," together with the 2002 Master Agreement, the "Master Agreements"), and thereafter executed a transaction confirmation governed by the 2008 Master Agreement (the "2008 Confirmation").  Pursuant to the 2008 Master Agreement, LBHI is a Credit Support Provider of LBSF under the 2008 Master Agreement and all transactions thereunder.

3.  On September 15, 2008 (the "LBHI Petition Date"), LBHI filed a petition for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On October 3, 2008 (together with the LBHI Petition Date, the "Petition Dates"), LBSF filed a petition for relief under the Bankruptcy Code with the Bankruptcy Court.  Both filings constituted an Event of Default under the Master Agreements.

4.  On June 23, 2009, Mass Housing gave oral notice, in accordance with the Optional Early Termination Provision of the 2008 Confirmation, of its election to terminate the 2008 Master Agreement and the 2008 Confirmation as of July 1, 2009.  Mass Housing also confirmed this notice in writing on June 23, 2009.

5. On June 25, 2009, Mass Housing delivered a letter to LBSF terminating the 2002 Master Agreement and the related transaction confirmations as of June 25, 2009.

6. Once terminated, the Master Agreements and the confirmations ceased to be executory contracts, and could no longer be assumed by the Debtors.

7. Furthermore, LBSF cannot assume the Master Agreements or the confirmations without Mass Housing's consent.  See 11 U.S.C. § 365(c).

### The Debtors' Proposed Assumption

8. Despite Mass Housing's termination of the Master Agreements and confirmations, the Debtors now seek to assume the Master Agreements and/or confirmations pursuant to the Plan and Plan Supplement, filed by the Debtors on October 25, 2011 [Docket No. 21254] (the "Plan Supplement").  Articles 11.1 and 11.2 of the Plan provide that the Debtors will publish, in the Plan Supplement, a list of executory contracts and unexpired leases to be assumed, and those contracts and leases will be approved as assumed upon entry of an order confirming the Plan.

9. This list of executory contracts appears as Exhibit 2 – "Schedule of Executory Contracts and Unexpired Leases to Be Assumed Pursuant to Section 11.1 of the Plan" – to the Plan Supplement.

10. A purported contract between Mass Housing and LBSF is listed on Exhibit 2. Although the Plan Supplement does not provide any further specifics by which one could identify the contract, Mass Housing believes the Debtors are seeking to assume the Master Agreements and/or confirmations as an executory derivative contract.[1]

---

[1] To the extent the Debtors are moving to assume a different contract between LBSF and Mass Housing, Mass Housing reserves all rights.

-3-

**Argument**

**I.      Mass Housing Terminated the Master Agreement**

11.     Mass Housing validly terminated the Master Agreements and confirmations on June 23, 2009 and June 25, 2009 (depending on the transaction). The termination notices complied with all the terms and requirements of the Master Agreements and were properly based on a condition specified in section 365(e)(1) of the Bankruptcy Code, LBSF's bankruptcy filing.

12.     Such a postpetition termination is explicitly permitted under the Bankruptcy Code. Specifically, section 560 of the Bankruptcy Code preserves the rights of a non-defaulting counterparty to a swap agreement[2] to terminate the contract based upon a condition specified in section 365(e)(1) of the Bankruptcy Code. See 11 U.S.C. § 560; In re Enron Corp., 306 B.R. 465, 473 (S.D.N.Y. 2004); see also In re Lehman Brothers Holdings Inc., No. 08-13555, 2009 WL 6057286 (Bankr. S.D.N.Y. Sept. 17, 2009) (transcript of record at 111). The conditions listed in section 365(e)(1) of the Bankruptcy Code include, among other things, the filing of a bankruptcy petition.

13.     Mass Housing is aware of the September 15, 2009 decision of this Court involving Metavante Corporation, in which the Court concluded that Metavante Corporation had waived its right to terminate a swap with LBSF by taking no action for a year, as well as Judge Gonzalez's 2005 opinion in which he noted that a counterparty's action under the safe harbor provisions must be made "fairly contemporaneously with the bankruptcy filing," or the contract

---

[2] The Master Agreement is a "swap agreement" within the meaning of the Bankruptcy Code. Under section 101(53B) of the Bankruptcy Code a "swap agreement" means:
    (A) an agreement (including terms and conditions incorporated by reference therein) which is a rate swap agreement, basis swap, forward rate agreement, commodity swap, interest rate option, forward foreign exchange agreement, spot foreign exchange agreement, rate cap agreement, rate floor agreement, rate collar agreement, currency swap agreement, cross-currency rate swap agreement, currency option, any other similar agreement (including any option to enter into any of the foregoing);
    (B) any combination of the foregoing; or
    (C) a master agreement for any of the foregoing together with all supplements.

will be rendered "just another ordinary executory contract." See In re Enron Corp., No. 01-16034, 2005 WL 3874285, at *4 (Bankr. S.D.N.Y. Oct. 5, 2005) ("Enron"); see also In re Lehman Brothers Holdings Inc., No. 08-13555, 2009 WL 6057286 (Bankr. S.D.N.Y. Sept. 17, 2009) ("Metavante").[3]

14.     Any reliance by the Debtors on Metavante, or Judge Gonzalez's statement in Enron, with respect to Mass Housing is entirely misplaced, not only because the above referenced decisions are inconsistent with language of the Bankruptcy Code, but also because there are substantial factual differences distinguishing the facts of Metavante and Enron from the situation Mass Housing faced upon LBSF's bankruptcy. Mass Housing reserves all rights to appeal any findings by this Court with respect to the termination of the Master Agreements and confirmations that rely on Metavante or Enron.

15.     Most importantly, there is a critical factual difference in their situations. Despite the time elapsed between the Petition Dates and June 2009, Mass Housing was by no means "riding the market . . . while taking no action whatsoever." See In re Lehman Brothers Holdings Inc., No. 08-13555, 2009 WL 6057286 (Bankr. S.D.N.Y. Sept. 17, 2009) (transcript of record at 110). Following LBSF's bankruptcy, Mass Housing conscientiously explored with LBSF alternatives for maintaining the economic and legal terms of its swaps. Mass Housing regularly contacted LBSF, seeking a mutually agreeable way to transfer the swaps to a successor counterparty. Simultaneously, Mass Housing undertook its own search for a replacement

---

[3] In Metavante this court also found that Section 2(a)(iii) of the ISDA Master Agreement does not permit a non-defaulting party to withhold performance owed to the defaulting party. See In re Lehman Brothers Holdings Inc., No. 08-13555, 2009 WL 6057286 (Bankr. S.D.N.Y. Sept. 17, 2009) (transcript of record at 107-12). The U.K. High Court reached a different conclusion on that issue, and Mass Housing reserves its rights with respect to any argument relating to Mass Housing's ability to withhold payments potentially owed to LBSF. See Lomas and others (together the Joint Administrators of Lehman Brothers International (Europe) (in administration)) v. JFB Firth Rixson, Inc and others and ISDA as intervenor [2010] EWHC 3372 (Ch) (21 December 2010) (Justice Briggs of the U.K. High Court finding that there is no temporal limit on section 2(a)(iii) of the ISDA Master Agreement, which allows an out-of-the-money non-defaulting party to elect not to make payments due to the swap counterparty and therefore avoid terminating the contract).

counterparty, engaging a financial adviser with expertise in the swap market to help it identify a substitute counterparty. Ultimately, Mass Housing terminated the Master Agreements as a result of the bankruptcy and contemporaneously with putting in place a replacement transaction.

16. Further, Mass Housing's efforts to replace the LBSF swaps were subject to approval by an independent state authority. Specifically, legislation enacted by the Commonwealth of Massachusetts in the wake of the Lehman bankruptcy filing needed to be complied with by Mass Housing before it could replace and terminate. See MASS. GEN. LAWS ch. 6, § 98 (2009). Thus, Mass Housing did not "play the market." In fact, Mass Housing terminated, based on LBHI and LBSF's insolvencies.

**II.   The Debtors Are Precluded From Assuming a Terminated Contract**

17. LBSF cannot assume the Master Agreements or confirmations because Mass Housing validly terminated the Master Agreements and confirmations. While section 365 of the Bankruptcy Code allows a debtor to assume or reject an executory contract or unexpired lease of the debtor, it is clear that if a contract or lease has been terminated, it cannot be assumed pursuant to section 365 of the Bankruptcy Code. See Bell v. Alden Owners, Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996) ("Once a lease is terminated, however, nothing remains for a debtor to assume under section 365."); see also In re Penn Traffic Co., No. 05-3755, 2005 WL 2276879, *2 (S.D.N.Y. Sept. 16, 2005) ("Accordingly, 'when performance remains due on only one side, the contract is non-executory, and hence, neither assumable nor rejectable.'") (quoting In re Riodizio, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997)).

18. In addition, Mass Housing reserves its right to litigate termination and other issues in the District Court. The Debtors cannot litigate any of their substantive issues of termination or amounts owing in this summary proceeding regarding assumption of allegedly

executory contracts. Contract issues, such as termination, may not be decided as part of a motion to assume. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F. 3d 1095, 1099 (2d Cir. 1993) ("[A]llowing a bankruptcy court to decide a disputed *legal* contract issue in the course of deciding a motion to assume could usurp litigants' Seventh Amendment jury-trial rights.") (emphasis in original). This is entirely consistent with the Supreme Court's recent decision in Stern v. Marshall, where the Court made clear that this is not just a Seventh Amendment issue but also one of the scope of bankruptcy court jurisdiction. 131 S. Ct. 2594 (2011)).

### III.   The Debtors Cannot Meet the Legal Requirements for Assumption

19.    Even if the Debtors could show that Mass Housing had not terminated the Master Agreements and the confirmations, LBSF cannot assume them because it cannot satisfy the Bankruptcy Code's requirements. See 11 U.S.C. § 365(b). Quite simply, because LBSF is in default of the Master Agreements and the confirmations, LBSF cannot assume unless, at the time of the assumption it, "*inter alia*, (a) cures, or provides adequate assurance that it will promptly cure, the default, and (b) provides adequate assurance of its future performance of its obligations under the contract. E. Airlines, Inc. v. The Ins. Co. of the State of Pa. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. 1996).

20.    First, LBSF cannot possibly give adequate assurance of the future performance of its obligations under the confirmations. For example, the confirmations under the 2002 Master Agreement would not terminate by their own terms until at least 2045. LBSF cannot provide meaningful assurance to *anyone* regarding LBSF's future performance over the next thirty years, while it simultaneously attempts to implement a bankruptcy plan that will liquidate LBSF well before then.

21.     Second, because of LBHI's bankruptcy, LBSF cannot satisfy its material, non-monetary obligation under the Master Agreements and the confirmations of having LBHI guarantee LBSF's obligations. "Congress's intent in imposing [the section 365(b) conditions] on the ability of the debtor to assume the contract was 'to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance.'" Ionosphere, 85 F.3d at 999 (quoting In re Superior Toy & Mfg Co., 78 F.3d 1169, 1174 (7th Cir.1996) ("If the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain.") (internal citations omitted)).

22.     Third, LBSF cannot cure (or provide adequate assurance it will cure) the existing defaults. Both LBSF and LBHI's bankruptcies constitute an "Event of Default" under the Master Agreements and the confirmations, and, given that both LBSF and LBHI are liquidating, there can be no cure. See 11 U.S.C. § 365(b). The entities' bankruptcies are independent; among other things, they were filed weeks apart.

## **NOTICE**

No trustee or examiner has been appointed in these cases. Notice of this Objection has been provided to: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in

these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.).

## **NO PRIOR RELIEF**

The relief requested by Mass Housing in this Objection has not been sought previously in this or any other court.

**Conclusion**

**WHEREFORE**, Mass Housing respectfully requests that this Court deny the Debtors' assumption of the Master Agreements and/or confirmations or, in the alternative, remove the Master Agreements and confirmations from Exhibit 2 to the Plan Supplement.

Dated: November 10, 2011
    New York, New York

        ROPES & GRAY LLP

        By:    */s/ Jose Raul Alcantar Villagran*
        Jose Raul Alcantar Villagran (JA-0925)
        1211 Avenue of the Americas
        New York, New York 10036-8704
        Telephone:  (212) 596-9000
        Facsimile:   (212) 596-9090

        and

        D. Ross Martin (admitted *pro hac vice*)
        Prudential Tower
        800 Boylston Street
        Boston, Massachusetts 02199
        Telephone:     (617) 951-7000
        Facsimile:      (617) 951-7050

        *Attorneys for Massachusetts Housing Finance Agency*