SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz
Theodore A.B. McCombs

*Attorney for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | : Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
| Debtors. | : Jointly Administered |

**OBJECTION OF GIANTS STADIUM LLC TO DEBTORS'**
**PROPOSED ASSUMPTION OF TERMINATED CONTRACTS**

Giants Stadium LLC ("GSLLC") hereby objects to the proposed assumption by Lehman Brothers Special Finance Inc. ("LBSF") of two terminated derivative contracts with GSLLC as part of the Third Amended Joint Chapter 11 Plan ("the Plan") of Lehman Brothers Holding Inc. ("LBHI") and its Affiliated Debtors (together, the "Debtors") and Debtors' Plan Supplement filed October 26, 2011 (the "Supplement"). Debtors claim they can assume these contracts on the purported basis that they are "executory." But there is nothing that the Debtors can assume, as the two derivative contracts were duly terminated prior to LBSF's bankruptcy and, for three years, all parties have treated these contracts as terminated. Moreover, Debtors could not meet the obligations required to assume these contracts, even if they were executory. The

Court should strike these contracts from the Supplement's schedule of "executory" derivative contracts to be assumed (Supplement, Exhibit 2, Part A).[1]

## INTRODUCTION

1. GSLLC's claims in this bankruptcy ("Claims") arise from two ISDA swap transactions (the "Transactions") entered into by GSLLC and Lehman Brothers Special Finance ("LBSF"). LBHI was LBSF's guarantor under the contracts. These swaps were a critical part of GSLLC's financing of the New Meadowlands Stadium ("Stadium"), in which, among other things, the New York Football Giants play their home games.

2. LBHI's bankruptcy filing on September 15, 2008 was an "Event of Default" under the ISDA Master Agreements, and on September 18, 2008, GSLLC exercised its rights to terminate the Transactions by hand delivering to LBSF written notice of termination. GSLLC then filed these Proofs of Claim against LBSF and LBHI (the "Claims") on October 29, 2009.

3. In the over two years since GSLLC filed its Claims, Debtors have neither objected to those Claims, nor filed any legal document claiming that GSLLC did not duly terminate the interest rate swap contracts at issue.

4. Relying on the obvious fact that the Transactions had been terminated— and that all parties (including the Debtors) were treating them as such—GSLLC has since refinanced its stadium debt with new interest rate swaps, at significant extra cost to GSLLC.

---

[1] On November 4, 2011, GSLLC objected to the Debtors' Plan insofar as it purports to grant Debtors' ability to assume the Transactions [Dkt No. 21604]. By the instant motion, GSLLC hereby also objects to the assumption of the Transactions in accordance with the procedures listed on the Notice of Proposed Assumption of Executory Contracts dated October 27, 2011.

5.  On August 31, 2011, the Debtors filed a proposed Chapter 11 Plan [Dkt. No. 19627.] Article XI, § 11.1 provides for the assumption of executory contracts and unexpired leases designated in the Plan Supplement. On October 26, 2011, the Debtors filed the Plan Supplement [Dkt. No. 21254], which includes as Exhibit 2, Part A, a schedule of derivative contracts to be assumed as executory contracts. The Plan Supplement surprisingly lists any and all derivative contracts between LBSF and GSLLC as "executory" contracts to be assumed by the Debtors as part of the Plan.

6.  The Transactions are not governed by "executory" contracts, because there is no performance under the contracts left for Debtors to assume. GSLLC properly terminated the Transactions due to LBSF's Event of Default. GSLLC lost millions of dollars in doing so. As a result of Debtors' default, GSLLC was then forced to obtain replacement financing for its portion of the Stadium, again at a significant loss.

7.  GSLLC's derivative contracts should be struck from Exhibit 2, Part A of the Plan Supplement.

## STATEMENT OF FACTS

8.  GSLLC is the company that financed approximately 50% of the costs of construction of the Stadium and manages its interests in the Stadium.

9.  In August 2007, GSLLC issued $408,325,000 of auction rate bonds through Lehman Brothers Inc. ("LBI") as underwriter and broker-dealer. These bonds were governed by an Indenture of Trust between GSLLC and the Bank of New York Mellon as Trustee, dated as of August 1, 2007 ("Indenture"). Under the Indenture, the interest rate that GSLLC would pay on the bonds would be set by the results of periodic auctions on those bonds.

3

10. To hedge GSLLC's interest rate risk for these bonds, in July 2007, Debtors and GSLLC executed two ISDA Master Agreements, pursuant to which GSLLC and LBSF entered into the Transactions described above, and LBHI guaranteed LBSF's obligations. (McCombs Decl., Exhibit A; *see also id.*, Exhibit B (Schedule to the ISDA Master Agreement & Exhibits).)[2] Under the Transactions, for a term of approximately 40 years, GSLLC would pay to LBSF a fixed rate of interest on the outstanding bonds, and LBSF would pay to GSLLC the floating interest rate on the outstanding bonds generated by the auctions on those bonds. Accordingly, this swap provided GSLLC with a "synthetic-fixed rate" on the bonds.

11. LBHI filed a Chapter 11 petition on September 15, 2008 precipitating a market-wide financial panic. LBHI's bankruptcy constituted an "Event of Default" as that term is defined in the ISDA Master Agreements, § 5(a)(vii). (Ex. A, p. 5.) On September 18, 2008, with the written consent of the Bond Insurers, GSLLC exercised its right to terminate the Transactions upon an Event of Default (ISDA Master, § 6(a) (Ex. A, p. 6)), by hand-delivering to LBSF notices of termination, designating September 18, 2008 as the date of early termination. (*See* McCombs Decl., Exhibit C & E.) In addition, GSLLC faxed these notices to LBSF on the same day. (McCombs Decl., Exhibit D.)

12. Subsequently, GSLLC prepared a statement of Loss pursuant to Section 6(d)(i) of the ISDA Master, and timely filed Proofs of Claim against LBSF and LBHI,

---

[2] The exhibits to the Schedule include the Credit Support Annex, governing the transfer and use of collateral to the swap, and the Amended and Restated Confirmation, which evidences the Transactions governed by the ISDA Master Agreement. Debtors' Plan Supplement does not list which of these documents they seek to assume. For the avoidance of any doubt, GSLLC, through this objection, objects to the assumption of any of the Master Agreements, Schedules, Credit Support Annexes, and Amended and Restated Confirmations.

which GSLLC has been pursuing since 2009. Although GSLLC's Claims have been pending for over two years, Debtors have not yet objected to the Claims. GSLLC and Debtors are currently involved in ongoing negotiations to resolve the Claims.

## ARGUMENT

13.  GSLLC objects to Debtors' proposed assumption of the Transactions. As a matter of law, the Transactions are not "executory," but rather have been terminated for over three years. Accordingly, the Court should strike the Transactions from Debtors' schedule and deny any attempt to assume the Transactions.

14.  Section 1123 of the Bankruptcy Code allows a debtor to assume only "executory" contracts, 11 U.S.C. § 1123(b)(2), *i.e.*, "contracts on which performance remains due to some extent on both sides." *In re Penn Traffic Co.*, No. 05-3755, 2005 WL 2276879, *2 (S.D.N.Y. Sept. 16, 2005) ("Accordingly, 'when performance remains due on only one side, the contract is non-executory, and hence, neither assumable nor rejectable.'") (quoting *In re Riodizio*, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997)). Thus, Debtors' Plan cannot be confirmed if it purports to assume a non-executory contract.

15.  In addition, for a debtor to assume an executory contract, it must cure all defects in its past performance, compensate the counterparty's pecuniary loss, and provide "adequate assurance" that it can satisfy all of its future obligations under the contract. 11 U.S.C. § 365(b)(1); *see also In re Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (debtor must cure all non-monetary as well as monetary defaults in a non-lease executory contract, and if cure is impossible, the contract cannot be assumed).

16. The ISDA Master Agreements recognize LBHI's bankruptcy filing, on September 15, 2008, as an "Event of Default" giving GSLLC the right to terminate the Transactions.

    a. Section 5(a)(vii) of the ISDA Master Agreements defines an Event of Default to include the bankruptcy filing by a party or a party's "Credit Support Provider." (Ex. A, p. 5 (recognizing an "Event of Default" where "[t]he party, [or] any Credit Support Provider . . . institutes . . . a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law").) For the GSLLC Transactions, LBSF's Credit Support Provider was LBHI. (Schedule, Part 3(*d*) (Ex. B, p. 12).)

    b. Section 6 of the ISDA Master Agreements allows the non-defaulting party to designate an Early Termination Date following an Event of Default, after which no further payments under the interest-rate swap provisions are to be made. (ISDA Master, § 6(c)(ii) (Ex. A, p. 7).)

    c. Following designation of an Early Termination Date, each party is required to provide calculations of "Loss" to the other, as well as information on how and when "Loss" payments are to be made. (ISDA Master, §§ 6(d)(i)-(ii) (Ex. A, pp. 7-8).)

17. GSLLC completed its performance under the ISDA Master Agreements and Schedules. LBHI's bankruptcy constituted an "Event of Default" allowing GSLLC to terminate the Transactions. (ISDA Master, § 5(a)(vii)(4) (Ex. A, p. 5).) On September 18, 2008, GSLLC hand-delivered to LBSF notice of termination designating September

18, 2008, as the Early Termination Date.[3] GSLLC submitted its loss calculations as Proofs of Claim in the Debtors' bankruptcy proceedings. GSLLC has no performance outstanding under the swap contracts; and Debtors' only outstanding performance is to pay GSLLC's Loss. The swap contracts relating to the Transactions are therefore non-executory and cannot be assumed. *See In re Penn Traffic Co.*, 2005 WL 2276879, at *2.[4]

18.    Even assuming *arguendo*, despite the three years of Debtors' silence in the face of GSLLC's notices of termination and Claims, that the Transactions are somehow "executory," the contracts still cannot be assumed. Debtors list a cure amount of $0, indicating no intention to cure the over $300 million Loss by GSLLC. Nor can Debtors cure the nonmonetary harm of LBHI's disappearance as guarantor from the Transactions, *see Empire Equities*, 405 B.R. at 691, or the ongoing Event of Default represented by LBSF and LBHI's bankruptcies. As Debtors' Plan intends to wind-down LBSF, LBSF can give no adequate assurance that it can perform the interest rate swap payments for the

---

[3]    GSLLC has provided Debtors with documentary evidence that GSLLC hand-delivered a notice of termination to LBSF on September 18, 2008, and that an employee of LBSF signed a receipt for hand-delivery on that date. (McCombs Decl., Exhibits C & E.) These documents on their face establish that the Transactions were terminated; to the extent Debtors wish to challenge this evidence or the termination generally, they must do so through a contested matter or an adversary proceeding, not *sub rosa* through a motion to assume. *Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F. 3d 1095, 1099 (2d Cir. 1993) (parties cannot litigate legal and factual contract disputes on a motion to assume that contract).

[4]    Even if the Transactions were not properly terminated, they cannot be considered executory. The swap contracts excuse a non-defaulting party from its payment obligations while the other party is in a continuing Event of Default. (ISDA Master, § 2(a)(iii) (Ex. A, p. 2).) Thus, even if not terminated, "performance remains due on only one side" of the Transactions, and they are not executory. *In re Penn Traffic Co.*, 2005 WL 2276879, at *2.

7

next 35 years. For all these reasons, Debtors cannot assume the contracts between GSLLC and LBSF, even if they were considered "executory." *See* 11 U.S.C. § 365(b)(1).

19. Debtors' attempt to assume these Transactions, after three years of silence in the face of the Transactions' termination and refinancing, flagrantly disregards economic realities, is unjustifiable, and should be rejected by this Court.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, Giants Stadium respectfully requests that the Court either strike GSLLC from the Debtors' Plan Supplement, Exhibit 2, Part A, or deny confirmation of the Plan, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 10, 2011

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:  /s/ _____
     Bruce E. Clark
     Matthew A. Schwartz
     Theodore A.B. McCombs
     SULLIVAN & CROMWELL LLP
     125 Broad Street
     New York, New York 10004
     Telephone: (212) 558-4000
     Facsimile: (212) 558-3588

     *Attorney for Giants Stadium LLC*