**Hearing Date: December 6, 2011 at 10:00 a.m.**
**Objections Due: November 10, 2011 at 4:00 p.m.**

SNR DENTON US LLP
Carole Neville, Esq.
1221 Avenue of the Americas
New York, NY 10020-1089
(212) 768-6700

*Counsel For Anthracite Balanced Company (R-26) Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                                                            :    Chapter 11
                                                                                         :
Lehman Brothers Holdings Inc., *et al.*,                     :    Case No. 08-13555 (JMP)
                                                                                         :
                                         Debtors.                        :    (Jointly Administered)
                                                                                         :
                                                                                         :
---------------------------------------------------------------- x

**ANTHRACITE BALANCED COMPANY (R-26) LTD'S OBJECTION TO THE DEBTORS' PROPOSED ASSUMPTION OF DERIVATIVE CONTRACTS PURSUANT TO THE CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

Anthracite Balanced Company (R-26) Limited ("R-26"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the proposed assumption by the above captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant to Sections 11.1 and 11.2 of the Debtors' Third Amended Joint Chapter 11 Plan, of (i) derivatives contracts between R-26 and Lehman Brothers Special Finance Inc. ("LBSF"), and (ii) derivatives contracts between R-26 and Lehman Commercial Paper Inc. ("LCPI"). In support of its Objection, R-26, states as follows:

**I.    RELEVANT BACKGROUND**

        A.    *Purported FX Transaction and ISDA Master Agreement*

        1.    On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its affiliates, commenced the above-captioned chapter 11 cases by

filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 3, 2008 and October 5, 2008, LBSF and LCPI, respectively, commenced their chapter 11 cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

2. On October 14, 2011, more than three years after the Petition Date, LAMCO acting on behalf of LBSF delivered a letter (the "LBSF Letter") to R-26 referencing a one month foreign exchange forward transaction purporting to exist between R-26 and LBSF (the "FX Transaction") pursuant to an English law governed ISDA Master Agreement dated December 14, 2007 (the "ISDA Master Agreement").

3. The LBSF Letter provided that the purported FX Transaction had matured on September 18, 2008 and that R-26 owed to LBSF a certain amount plus interest under the FX Transaction.

4. On October 26, 2011, R-26 delivered a letter to LBSF acknowledging receipt of the LBSF Letter and requesting additional information in order to investigate the assertions made in the LBSF Letter, including: (i) a signed copy of the ISDA Master Agreement; (ii) a signed copy of the confirmation evidencing the FX Transaction; and (iii) the calculations used in determining the amount allegedly owed by R-26 to LBSF.

5. R-26 is not aware of the existence of a derivative contract between it and LCPI.

B. *The Debtors' Request for the Assumption of Certain Derivative Contracts*

6. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed their Third Amended Joint Chapter 11 Plan (the

2

"Plan"). On September 1, 2011, this Court approved the Debtors' Disclosure Statement for the Plan and scheduled the hearing for confirmation of the Plan to be held at 10:00 a.m. on December 6, 2011.

7.    On October 25, 2011, the Debtors filed their plan supplement to the Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivative contracts as contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Plan (the "Confirmation Order"). Exhibit 2 of the Plan Supplement does not specify the title of any derivative contract between R-26 and LBSF or R-26 and LCPI and, even though the recent LBSF Letter contains the correct address of R-26, specifies incorrect addresses (in one case in a country in which R-26 has no office). The note provided on the cover of Exhibit 2 provides that unless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivative contracts with each counterparty set forth on Exhibit 2, Part A. Accordingly, although unclear from the Debtors' Exhibit 2, it appears that the Debtors are seeking to assume the FX Transaction, the ISDA Master Agreement and any other unspecified derivative contracts between R-26 and either LBSF or LCPI. Because of the sheer lack of information regarding the Debtors' intentions, R-26 is compelled to file this Objection.[1]

II.    **OBJECTION**

A.    *Non-Existing Contracts and Contracts that have Matured Cannot be Assumed*

Section 365 of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11

---

[1] Counsel for R-26 reached out to counsel for the Debtors for further clarity, and while additional general information was provided, the Debtors were unable to provide specific clarity as to their intentions with R-26 derivative contracts.

3

U.S.C. § 365(a). Courts in the Second Circuit have consistently held that section 365 of the Bankruptcy Code applies only if the contract or lease is in existence at the commencement of the case, but where such contract or lease has expired by its own terms or has been terminated under applicable law, then there is nothing left for the debtor to assume or reject and section 365 of the Bankruptcy Code cannot apply. See In re Project Orange Associates, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); see also Bell V. The Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996)(stating that "[o]nce a lease is terminated, however, nothing remains for a debtor to assume under section 365.").

8. Accordingly, LBSF cannot assume the FX Transaction if such transaction does not exist because there is nothing to assume and no performance is required by either R-26 or LBSF. Moreover, to the extent the FX transaction is proven to exist it cannot be assumed because, by LBSF's own admission in the LBSF Letter, it has matured on its own terms. Similarly, the Debtors cannot assume a derivative contract between R-26 and LCPI if no such contract exists.

  B. *Any Dispute as to the Existence of the FX Transaction or to the Amounts (if any) owing under the FX Transaction Should be Determined Upon a Properly Briefed Hearing*

9. The Debtors' listing of R-26 as a counterparty to certain unspecified derivative contracts on Exhibit 2 to the Plan Supplement buried as an exhibit in over 1000 pages of documents scheduled thereto raises obvious due process concerns. In addition, although the Debtors have purported to serve R-26 with notice of the proposed assumption pursuant to Exhibit 2 of the Plan Supplement, no copy of Exhibit 2 of the Plan Supplement was delivered to R-26

4

until it received a copy from a third party on November 4, 2011.  No notice of assumption or of any cure amount has been delivered to R-26.  In spite of LBSF corresponding with R-26 at the correct address during October 2011, it is clear from Exhibit 2 of the Plan Supplement that to the extent LCPI and LBSF did send any court documents to R-26, they chose to send court documents to an invalid address and, in LBSF's case, to the wrong country.

10. Putting aside the obvious due process concerns, the Plan confirmation process is not the proper procedure for determining whether the FX Transaction, ISDA Master Agreement or any other derivative contract exists between R-26 and either LBSF or LCPI (while the ISDA Master Agreement exists, the FX Transaction does not appear to have been documented).  The assumption of unspecified derivatives contracts between R-26 and either LBSF or LCPI before delivery of notice of assumption or cure amounts or any determination as to whether any such contracts exist or are valid is premature and should be determined under English law before the English courts.  The ISDA Master Agreement between LBSF and R-26 is governed by English law and therefore it is most appropriate for the English courts to address issues connected with the existence or non-existence of any Transaction and, if determined to have existed, the termination of such Transaction.

11. The Debtors should not be allowed to use the assumption of unspecified derivative contracts as a means of discovery in the place of a fully briefed merits hearing on the existence, validity and enforceability of any such contracts. The need for substantive contract matters governed by English law and involving transactions entered into in England to be heard by English Courts is important to R-26.  The ISDA Master Agreement between R-26 and LBSF is specifically governed by English law and provides for jurisdiction of English courts.  Consequently, any challenges by the Debtors in connection with that document and the existence

5

and termination of any Transaction thereunder properly should be tried by the English Courts. R-26 believes that English Courts provide the only appropriate forum for such matters. If a contract with LCPI is found to exist and such contract is governed by English law, R-26 reserves the right to argue that the English courts also provide the only appropriate forum for determining matters arising in connection with that contract.

    C.    *Effect of Assumption of Derivative Contracts*

12.    Given the ambiguity of what it is that the Debtors are seeking to assume pursuant to Exhibit 2 of the Plan Supplement, the Debtors should be required to provide additional specificity regarding the derivative contracts it is seeking to assume and R-26 should have an ample opportunity to investigate whether such contracts exist, are valid, have matured or have otherwise been terminated, and to assert any defenses available to it.

13.    Moreover, to the extent that valid derivative contracts exist between R-26 and either LBSF or LCPI and such contracts have not matured or otherwise terminated, then LBSF is required to assume such contracts *cum onere*. See AGV Productions, Inc., v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp., 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984)(holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of it benefits and burdens."); see also In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994)(noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves LBSF's and/or LCPI's assumption, then LBSF and/or LCPI must assume such contracts *cum onere* and therefore be subject to all of the terms and provisions of such contracts.

    D.    *The Debtors May Not Assume Derivative Contracts Unless the Debtors Cure All Existing Defaults*

14.    Section 365 of the Bankruptcy Code requires that in order for a debtor to assume any executory contract, the debtor must cure all existing defaults and compensate the counter-party to the agreement for any pecuniary losses resulting from such defaults or provide adequate assurance that the trustee will promptly cure and provide such compensation. See 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see also In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996). The language of section 365(b)(1) is unequivocal in that a party to an executory contract must be paid all amounts due under the contract before the contract may be assumed. See In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996). Here, the Debtors must cure all known defaults and assume all obligations before any derivative contract, including the ISDA Master Agreement, may be assumed.

15.    As indicated, no cure notices have been delivered to R-26. It would therefore be wholly improper for the court to make any determination in respect of cure amounts before such notices have been delivered. R-26 reserves all of its rights to challenge any cure notice when delivered.

III.    **RESERVATION OF RIGHTS**

16.    R-26 hereby reserves all of its rights and remedies under the ISDA Master Agreement (to the extent that it exists), the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver of any of such rights or remedies. To the extent that the Debtors seek to modify R-26's rights under the ISDA Master Agreement or any other derivative contract through assumption, or through any other provision of the Plan or Confirmation Order, R-26 asserts that such attempt

7

must be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the Plan shall in any way limit, affect or modify: (i) any rights of R-26 under the ISDA Master Agreement or any other derivative contract or (ii) any defenses (including any right of setoff or recoupment) of R-26.

WHEREFORE, without in any way limiting its rights, R-26 hereby respectfully requests that the Court (i) deny the Debtors' assumption of the FX Transaction; (ii) deny the Debtors' assumption of any other derivative contracts between R-26 and either LBSF or LCPI without first determining the existence and validity of such contracts upon discovery, evidence and a properly briefed hearing; (iii) find that the Debtors may not assume any derivative contract, including the ISDA Master Agreement (to the extent it exists), unless it promptly cures and provides for compensation for all defaults under such derivative contracts; (iv) expressly provide in the Confirmation Order that the Debtors will assume all obligations and liabilities under any assumed derivative contracts, including the ISDA Master Agreement; and (iv) grants such other relief that is just and proper.

Dated: November 10, 2011

Respectfully submitted,

SNR DENTON US LLP

*/s/  Carole Neville*
Carole Neville, Esq.
1221 Avenue of the Americas, 25th floor
New York, New York 10020
(212) 768-6700

*Counsel for Anthracite Balanced Company (R-26) Limited*