Hearing Date and Time: To Be Determined
Objection Date and Time: November 10, 2011

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
Edward A. Smith
Rishi Kapoor

*Counsel for LBBW Luxemburg S.A. and Landesbank Baden-Württemberg*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                         :
                                                               :    **Chapter 11**
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                   :
                                                               :    **Case No. 08-13555 (JMP)**
                                  **Debtors.**                 :
                                                               :    **(Jointly Administered)**
---------------------------------------------------------------x

**OBJECTION OF LBBW LUXEMBURG S.A. AND LANDESBANK BADEN-WÜRTTEMBERG TO DEBTORS' PROPOSED ASSUMPTION OF CERTAIN CONTRACTS PURSUANT TO SECTION 11.1 OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

LBBW Luxemburg S.A. ("LBBWL") and Landesbank Baden-Württemberg ("LBBW," and together with LBBWL, the "Noteholders"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the Debtors' proposed assumption of certain purported executory contracts relating to the Series 2006-2 EUR 10,000,000 Orion Enhanced Return Dynamic CDO Credit Linked Synthetic Portfolio Notes due 2013 and Series 2006-3 EUR 50,000,000 Riesling Credit Linked Synthetic Portfolio Notes due 2016, as

identified in Exhibit 2 to the *Plan Supplement* dated October 25, 2011 (the "Plan Supplement") [Docket No. 21254] and submitted in connection with section 11.1 of the *Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* dated August 31, 2011 (the "Third Amended Plan") [Docket No. 19627].[1]  In support of its Objection, the Noteholders respectfully state as follows:

### PRELIMINARY STATEMENT[2]

1. The Court should deny Debtors' request to assume the Swap Agreement. The Swap Agreement at issue here was validly terminated pursuant to section 560 of the Bankruptcy Code based on the bankruptcy filing(s) of LBSF, as swap counterparty, and/or LBHI, as LBSF's credit support provider.  The early termination of the Swap Agreements extinguished the parties' material obligations thereto, and the only obligation that remains is a single, final payment to settle the parties' transactions.  The Swap Agreement no longer satisfies the applicable definition of "executory contract" and thus is not eligible for assumption under section 365 of the Bankruptcy Code.

2. Moreover, in seeking to assume the Swap Agreement, the Debtors are necessarily placing at issue the validity of the agreement's termination.  Under Second Circuit precedent, this Court cannot decide a disputed contractual issue in the context of a motion to assume.

---

[1] The Notices of Proposed Assumption served by Debtors identify the counterparties to the purported executory contracts as "RUBY FINANCE 2006-2" and "RUBY FINANCE 2006-3" (collectively, the "Counterparties"), an apparent reference to the swap agreements entered into in connection with the 2006-2 and 2006-3 series notes issued by Ruby Finance Public Limited Company.  While the Plan Supplement also lists other series issued by Ruby Finance Public Limited Company as counterparties, this Objection pertains solely to those purported executory derivatives contracts relating to the 2006-2 and 2006-3 series, as described further below.

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them elsewhere in the Objection.

3. Because the Debtors' proposed assumption is both defective as a matter of bankruptcy law and procedurally improper, the Court should deny Debtors' request to assume the Swap Agreement.

## BACKGROUND

*The Debtors' Bankruptcy Cases and Proposed Plan of Reorganization*

4. On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.).

5. On October 3, 2008, Lehman Brothers Special Financing Inc. ("LBSF," and together with LBHI and the other jointly-administered debtors, the "Debtors"), an affiliate of LBHI, filed a voluntary petition under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. In re Lehman Brothers Special Fin. Inc., Case No. 08-13888 (JMP) (Bankr. S.D.N.Y.).

6. On October 16, 2008, the United States Bankruptcy Court for the Southern District of New York entered an order directing joint administration of the Debtors' chapter 11 cases and designated In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP) as the lead case [Docket No. 1090].

7. On September 1, 2011, the Debtors filed their Third Amended Plan and related disclosure statement [Docket No. 19629]. The deadline to object to the Third Amended Plan was November 4, 2011 (the "Plan Objection Deadline"). The confirmation hearing for the Third Amended Plan is currently scheduled for December 6, 2011 at 10:00 a.m. (the "Confirmation Hearing Date").

*Assumption of Purported Executory Contracts Under the Third Amended Plan*

8. Pursuant to section 11.1 of the Third Amended Plan, upon confirmation of the plan, and as of the plan's effective date, all executory contracts that exist between a Debtor and any counterparty shall be deemed rejected, except for those executory contracts, among others, that are specifically designated in the Plan Supplement as contracts to be assumed by the Debtor.[3] Third Am. Plan, § 11.1.

9. Debtors filed the Plan Supplement to the Third Amended Plan on October 25, 2011. Exhibit 2, Part A of the Plan Supplement provides a schedule of the purported executory "derivatives" contracts that Debtors intend to assume pursuant to section 11.1 of the Third Amended Plan. The Plan Supplement defines "derivatives contracts" as "CONTRACTS IN WHICH THE CONTRACTUAL OBLIGATIONS AND VALUES ARE KEYED TO ONE OR MORE UNDERLYING ASSETS OR INDICES OF ASSET VALUES." Plan Supplement, Ex. 2. The Plan Supplement further states that "UNLESS A SPECIFIC DERIVATIVES CONTRACT IS NOTED FOR A SPECIFIC COUNTERPARTY, THE DEBTORS INTEND TO ASSUME ALL DERIVATIVES CONTRACTS WITH EACH SUCH COUNTERPARTY SET FORTH ON EXHIBIT 2, PART A." Id.

10. On or about October 27, 2011, Debtors mailed Ruby Finance Public Limited Company (the "Issuer") notices of its proposed assumption (the "Assumption Notices") of the purported executory derivatives contracts between Issuer and LBSF relating to the Orion and Riesling Series notes (as defined below). See supra note 1. The Assumption Notices provide that the deadline to object to the Debtors' proposed assumption is November 10, 2011.

---

[3] Pursuant to section 11.1 of the Third Amended Plan, the Debtors reserved their right to amend the Plan Supplement to add or remove any executory contract prior to the Confirmation Date (as defined therein). Third Amended Plan, § 11.1.

- 4 -

11. As set forth below, under the parties' transactions, the Noteholders have an economic interest, via the Orion and Riesling Series (as defined below) notes, in such derivatives contracts with LBSF.

*The Parties' Transactions*

12. The Noteholders are the holders of certain notes issued under the Dante Finance PLC Multi-Issuer Secured Obligation Programme (the "Dante Programme").[4] Under the Dante Programme, special purpose entities were created to issue various series of credit-linked synthetic portfolio notes. The Dante Programme transactions were thus structured so that the issuers (here, the Issuer), as special purpose entities, would have no economic interest in the outcome of the transactions. Lehman Brothers International (Europe) ("LBIE") served as the arranger and dealer for the Dante Programme.

13. Two series of such notes are relevant to the Debtors' proposed assumption: (i) Series 2006-2 EUR 10,000,000 Orion Enhanced Return Dynamic CDO Credit Linked Synthetic Portfolio Notes due 2013 (the "Orion Series"); and (ii) Series 2006-3 EUR 50,000,000 Riesling Credit Linked Synthetic Portfolio Notes due 2016 (the "Riesling Series"). On or about April 28, 2006, LBBWL purchased 100 Orion Series notes from the Issuer. Similarly, on or around June 16, 2006, LBBW purchased 500 Riesling Series notes from the Issuer. LBBWL is the sole noteholder of the Orion Series and LBBW is the sole noteholder of the Riesling Series.

---

[4] The transactions involving the Orion and Riesling Series (as defined below) notes issued under the Dante Programme are governed by the following documents: Base Prospectus dated August 16, 2005 ("Base Prospectus"); Series Prospectuses (each a "Series Prospectus") for both the Orion Series, dated April 28, 2006, and the Riesling Series, dated June 16, 2006; a Principal Trust Deed dated October 10, 2002 and amended and restated as of July 22, 2005 ("Principal Trust Deed"); Supplemental Trust Deed and Drawdown Agreements (each a "Supplemental Trust Deed") for the both the Orion Series, dated April 28, 2006, and the Riesling Series, dated June 16, 2006. The Base Prospectus, Orion Series Prospectus, Riesling Series Prospectus, Principal Trust Deed, Orion Series Supplemental Trust Deed, and Riesling Series Supplemental Trust Deed (collectively, the "Transaction Documents") are attached to the accompanying Declaration of Edward A. Smith dated November 10, 2011 ("Smith Declaration") as, respectively, Exhibits A, B, C, D, E, and F. The Transaction Documents are governed by English law.

14. The Issuer used the proceeds from the note sales to purchase collateral securities ("Collateral Securities"), which were then pledged to and held in trust by BNY Corporate Trustee Services Limited ("BNY"), as collateral trustee, and used to secure the Issuer's obligations to the Noteholders under the Orion and Riesling Series notes.

15. In connection with the issuance of the Orion and Riesling Series, the Issuer entered into credit default swaps with LBSF, the terms of which are set forth in an ISDA Master Agreement and Schedule dated October 10, 2002 and amended and restated as of July 22, 2005 (the "Master Agreement"). The transactions under the Master Agreement are further governed by a Confirmation dated April 28, 2006 pertaining to the Orion Series (the "Orion Confirmation") and a Confirmation dated June 16, 2006 pertaining to the Riesling Series (the "Riesling Confirmation," and together with the Master Agreement and the Orion Confirmation, the "Swap Agreement").[5] The Swap Agreement, which the Debtors are attempting to assume, is governed by English law. See Smith Decl., Ex. G (Master Agreement), § 13.

16. Under the Swap Agreement, the Issuer provided credit protection to LBSF with respect to a portfolio of certain third-party Reference Entities (as defined therein). The performance of the Orion and Riesling Series notes was similarly "linked" to the same portfolio of Reference Entities such that the Noteholders bore the risk in the event such credit protection was invoked under the Swap Agreement. The swap transaction pertaining to the Orion Series was scheduled to terminate in September 2013, while the swap transaction pertaining to the Riesling Series was scheduled to terminate in June 2016.

17. The Swap Agreement called for certain interim and final payments to be made by both LBSF and the Issuer. During the term of the Swap Agreement, LBSF was

---

[5] The Master Agreement, Orion Confirmation, and Riesling Confirmation are attached to the Smith Declaration as, respectively, Exhibits G, H, and I.

obligated to pay the Issuer amounts equal to the interest payments due under the Orion and Riesling Series notes, and in turn the Issuer was obligated to pay LBSF amounts equal to the coupon payments due under the Collateral Securities.  See Smith Decl., Ex. H (Orion Series Confirmation), §§ 3, 4, 6; id., Ex. I (Riesling Series Confirmation), §§ 3, 4, 6.  Upon the scheduled termination of each swap, provided that no credit events with respect to the Reference Entities had occurred and were properly noticed, LBSF would be obligated to pay the Issuer an amount equal to the redemption payment due under the respective series notes, while the Issuer would be obligated to pay LBSF an amount equal to the redemption proceeds received from the Collateral Securities.  See id., Ex. H (Orion Series Confirmation), §§ 5, 7; id., Ex. I (Riesling Series Confirmation), §§ 5, 7.

18.     The Swap Agreement, however, also allowed for early termination under certain circumstances.  See id., Ex. G (Master Agreement), § 5.  Among other reasons, a party to the Swap Agreement may elect early termination upon the bankruptcy filing of the counterparty or counterparty's Credit Support Provider (as defined therein).  Id., §§ 5(a)(vii)(4), 6(a).  Each such bankruptcy filing constitutes a separate and independent Event of Default (as defined therein), which entitles the non-defaulting counterparty to designate an Early Termination Date (as defined therein).  Id.

19.     Upon designating an Early Termination Date, the parties' obligations to make the interim and final payments described above cease.  See id., §§ 2(a)(iii), 6(c).  As a result, the Swap Agreement requires that a single, final payment to be made representing the settlement amount owing as a result of the termination.  See id., § 6(e), Part 1(i) of the Schedule.

20.     The Swap Agreement at issue here was terminated early by the Issuer based on the Events of Default resulting from the bankruptcy filing of LBHI, as Credit Support

Provider for LBSF under the Swap Agreement. On or about January 15, 2009, the Issuer, as the Non-defaulting party under and as defined in the Swap Agreement, served notices on LBSF (the "Swap Termination Notices").[6] In accordance with section 6(a) of the Swap Agreement, the Swap Termination Notices designated January 20, 2009 as the Early Termination Date for all transactions under the Swap Agreement.

*The UK Litigations and the Adversary Proceeding*

21. LBSF has commenced litigation concerning the Swap Agreement and the Orion and Riesling Series Notes in the United Kingdom (the "UK Litigations") and as an adversary proceeding under the above-captioned bankruptcy cases (the "Adversary Proceeding"). See Lehman Brothers Special Fin. Inc. v. BNY Corporate Tr. Services Ltd., et al., (2011) 2011 Folio No 166 (Q.B.); Lehman Brothers Special Fin. Inc. v. BNY Corporate Tr. Services Ltd., et al., (2010) 2010 Folio No 1458 (Q.B.); Lehman Brothers Special Fin. Inc. v. Bank of New York Mellon Nat'l Ass'n (In re Lehman Brothers Holdings Inc.), Adv. Pro. No. 10-03811 (Bankr. S.D.N.Y. 2010).

22. The Noteholders are named parties in each of the two UK Litigations. Descriptions of the UK Litigations can be found in the "Agreed Case Memorandum" jointly drafted by the parties thereto and submitted in each action.[7]

23. The Adversary Proceeding was filed by LBSF against BNY, as collateral trustee, seeking a judicial declaration that the payment priority "flip" provisions contained in the Transaction Documents are subject to avoidance under sections 547, 548, or 549 of the Bankruptcy Code. See Complaint dated October 1, 2010, Lehman Brothers Special Fin. Inc. v. Bank of New York Mellon Nat'l Ass'n (In re Lehman Brothers Holdings Inc.), Adv. Pro. No.

---

[6] The Swap Termination Notices are attached to the Smith Declaration as Exhibit J.
[7] The Agreed Case Memoranda pertaining to the Orion and Riesling Series are attached to Smith Declaration as, respectively, Exhibits K and L.

10-03811 (Bankr. S.D.N.Y. October 1, 2010) [Docket No. 1].[8] The Adversary Proceeding has been stayed since October 20, 2010 pursuant to this Court's Orders. See id. [Docket Nos. 4, 9].

## BASIS FOR OBJECTION

24. The Noteholders object to the Debtors' proposed assumption of the Swap Agreement relating to the Orion and Riesling Series notes because (i) the Swap Agreement was terminated pursuant to section 560 of the Bankruptcy Code and therefore does not qualify as an executory contract eligible for assumption; and (ii) in any event, because the Debtors' proposed assumption involves disputed contractual issues, it cannot be decided in the context of a contested matter, and thus the Debtors' request is procedurally improper.[9]

**A.    The Swap Agreement Cannot be Assumed Because it is not an Executory Contract.**

25. Section 365 of the Bankruptcy Code governs the Debtors' ability to assume executory contracts. 11 U.S.C. § 365(a). Under section 365, a debtor may not assume a contract unless it is an executory contract. Id. While the Bankruptcy Code itself does not define the term "executory contract," the Court of Appeals for the Second Circuit has adopted the "Countryman" definition for determining whether contracts qualify for executory status under section 365. See In re Penn Traffic Co., 524 F.3d 373, 378-79 (2d Cir. 2008); see also In re

---

[8]    The Court heard a related matter in Lehman Brothers Special Fin. Inc. v. BNY Corporate Tr. Services Ltd. (In re Lehman Brothers Holdings Inc.), 422 B.R. 407 (Bankr. S.D.N.Y. 2010), in which LBSF asserted that the payment priority provisions were unenforceable *ipso facto* clauses. 422 B.R. at 414.

[9]    The Noteholders are the sole holders of the Orion and Riesling Series notes, and therefore the beneficial holder of the Issuer's economic interest in the Swap Agreement, files this Objection as a "party in interest" pursuant to section 1109 of the Bankruptcy Code. See 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter."). While the term "party in interest" is not defined by the Bankruptcy Code, courts construe its meaning broadly to "insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case. . . . [i]t is generally understood that a pecuniary interest directly affected by the bankruptcy proceeding provides standing under § 1109(b)." In re Stone Barn Manhattan LLC, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2008) (internal citations and quotation marks omitted). Here, the Noteholders' economic rights under the Transaction Documents would be directly affected by the Debtors' assumption of the Swap Agreement. A ruling on the proposed assumption would involve an implicit determination of the validity of the swap termination and the settlement amount owing thereto, and, as a result, would affect the disposition of the Collateral Securities and the payments owing by the Issuer to either LBSF or the Noteholders. See Smith Decl., Exs. K-L (Agreed Case Memoranda relating to UK Litigations). Accordingly, the Noteholders have standing to assert this Objection.

Calpine Corp., Case No. 05-60200, 2008 Bankr. LEXIS 2152, at *13-14 (Bankr. S.D.N.Y. Aug. 4, 2008); In re Spectrum Info. Tech., Inc., 190 B.R. 741, 747-48 (Bankr. E.D.N.Y. 1996).

26. Under the Countryman definition, a contract is executory within the meaning of section 365 if the "obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Penn Traffic Co., 524 F.3d at 379 (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)).

27. Once an agreement has been terminated, however, "the right to assume it is extinguished." In re Balco Equities Ltd, Inc., 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004) (quoting Counties Contracting and Const. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1061 (3d Cir. 1988)).

    **1.    The Swap Agreement was Validly Terminated Pursuant to Section 560 of the Bankruptcy Code and Thus Does Not Qualify as an Executory Contract.**

28. The Swap Agreement at issue here was terminated pursuant to section 560 of the Bankruptcy Code. Section 560 of the Bankruptcy Code provides, along with other similar safe harbor provisions, "an exception to the non-enforceability of *ipso facto* clauses in connection with swap agreements in a bankruptcy case." In re Enron Corp., 306 B.R. 465, 473 (Bankr. S.D.N.Y. 2004). Specifically, section 560 allows for the "exercise of any contractual right of any swap participant . . . to cause the . . . termination . . . of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) . . . ." 11 U.S.C. § 560; see also 11 U.S.C. § 362(b)(17) (providing that the automatic stay does not prevent "the exercise by a swap participant . . . to offset or net out any termination value . . . arising under or in connection with 1 or more such agreements, including any master agreement for such

agreements"); Mirant Americas Energy Mktg., L.P. v. Kern Oil & Refining Co. (In re Mirant Corp.), 310 B.R. 548, 553-54 (Bankr. N.D. Tex. 2004).

29.    Thus, "so long as the enforcement of [swap termination] rights is first triggered because of a condition of the kind specified in section 365(e)(1)," a swap counterparty may terminate the swap after the debtor's bankruptcy filing. In re Enron Corp., 306 B.R. at 473. The conditions specified under section 365(e)(1) are based on, among other things, the commencement of a bankruptcy case. See 11 U.S.C. § 365(e)(1).

30.    Where the non-defaulting party exercises its right to terminate pursuant to the Bankruptcy Code's safe harbor provisions, such contract is no longer executory, and therefore "not subject to assumption by the [debtor] pursuant to Section 365." See In re R.M. Cordova Int'l, Inc., 77 B.R. 441, 449 (Bankr. D. N.J. 1987) (holding that contracts terminated pursuant to section 556 of the Bankruptcy Code are not subject to assumption under section 365); see also In re Enron Corp., 306 B.R. at 473-74 (noting that a creditor's ability to terminate a swap agreement post-petition stands in contrast to and supersedes the debtor's rights to assume or reject such contract under section 365(a)); In re Balco Equities Ltd., Inc., 312 B.R. at 750 ("events after the filing of the bankruptcy petition may cause the contract to be regarded as not executory when the motion to assume or reject [is] made"); In re Westfields Apartments, LLC, Case No. 08-12573, 2010 Bankr. LEXIS 1789, at *10-11 (Bankr. S.D. Ga. 2010) ("Even if a contract is executory at the time of the bankruptcy filing, the right to assume that contract under § 365 is extinguished if the contract expires by its own terms or otherwise ceases to exist.").[10]

---

[10]    That a post-petition termination under section 560 prevents the debtor from assuming the agreement comports with the well-established rule that a contract terminated pre-petition does not constitute an executory contract under section 365, and therefore is not assumable, because neither party has any further duty to perform. See generally In re Bernus Watch Co., Inc., 13 B.R. 331, 334 (Bankr. S.D.N.Y. 1981) (holding that contracts terminated prior to Chapter 11 petition "cannot be revived by the bankruptcy court."); In re Tornado Pizza, LLC, 431 B.R. 503, 513-14 (Bankr. D. Kan. 2010) (holding that contracts terminated pre-petition were ineligible for

31. Here, the Swap Agreement was terminated pursuant to an express provision conditioned on the bankruptcy filing of either LBSF, as swap counterparty, or LBHI, as credit support provider for LBSF under the Swap Agreement. See Smith Decl., Ex. G (Master Agreement), §§ 5(a)(vii), 6(a); id., Ex. J (Swap Termination Notices).

32. Moreover, LBSF has expressly acknowledged that the Issuer terminated the Swap Agreement and designated January 20, 2009 as the Early Termination Date pursuant to the Swap Termination Notices. See id., Ex. K (Agreed Case Memorandum for Orion UK Litigation), ¶ 29; id., Ex. L (Agreed Case Memorandum for Riesling UK Litigation), ¶ 25. To date, LBSF has not sought to challenge the validity of the Swap Agreement terminations in the UK Litigations, as shown in the Agreed Case Memoranda jointly drafted by the swap parties (including the Noteholders). Id. By not contesting the validity of these terminations, particularly where it would have been beneficial for LBSF to do so, the Court should infer from LBSF's silence on this point that LBSF in fact accepts the validity of such terminations.

33. Because the Swap Agreement was validly terminated pursuant to section 560, it no longer qualifies as an executory contract that can be assumed by the Debtors. Accordingly, the Court should deny the Debtors' request to assume the agreement.

**2.  Under the Countryman Definition, Early Termination of the Swap Agreement Extinguishes the Parties' Material Performance Obligations, Thereby Rendering the Swap Agreement Non-Executory.**

34. The Countryman test further reinforces the conclusion that because the Swap Agreement was terminated under the safe harbor, it is no longer executory, and therefore the Swap Agreement may not be assumed by the Debtors.

---

assumption by the debtor); In re Southold Dev. Corp., 134 B.R. 705, 710 (Bankr. E.D.N.Y. 1991) ("Contracts terminated prior to the filing of a bankruptcy petition are not property of the debtor's estate . . . .").

35. In applying the Countryman test, courts must first determine whether the unperformed contractual obligations of both parties are sufficiently material such that the failure to perform them would constitute a material breach. In re Calpine Corp., 2008 Bankr. LEXIS 2152, at *13. "In other words, under Countryman's 'material breach' test, a pre-petition contract is executory where both sides are still obligated to render substantial performance." Id.

36. Where the only remaining contractual obligation is for one party to render payment to another, however, such an obligation is insufficient to warrant executory status under the Countryman test. See id. at *14-15; see also In re Digicon, Inc., 71 Fed. Appx. 442 (5th Cir. 2003) ("A contract is not executory if the only performance required by one side is the payment of money."); In re Chateaugay Corp., 102 B.R. 335, 347 (Bankr. S.D.N.Y. 1989) (holding that a tax benefit transfer agreements were not executory as they "merely [represented] obligations for payment of money only"); In re Spectrum Info. Tech., Inc., 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996); In re Wang Lab., Inc., 154 Bankr. 389, 391 (Bankr. D. Mass. 1993).

37. Conversely, where the contract at issue retains reciprocal, ongoing obligations or substantial outstanding obligations to which payment is not directly but rather incidentally related, courts have classified such contracts as executory. See In re Penn Traffic Co., 524 F.3d at 383 (holding that creditor's failure to tender a reimbursement payment of $3.5 million *as a precondition* to the transfer of title to a parcel of real property rendered the underlying contract executory); In Re Helm, 335 B.R. 528, 536-37 (Bankr. S.D.N.Y. 2006) (holding that an agreement calling for the payment of royalties was executory because creditor was subject to a continuing obligation to collect and enforce such royalties from third parties).

38. Here, the termination of the Swap Agreements extinguishes the parties' mutual and ongoing interim and final payment obligations and instead mandates a single, final

payment to settle the parties' transactions. See Smith Decl., Ex. G (Master Agreement), §§ 2(a)(iii), 6(c)(2), 6(e), Part 1(i) of the Schedule. Although section 9(c) of the Swap Agreement provides that the "obligations of the parties under this Agreement will survive the termination of any Transaction," this requirement is expressly qualified by excluding the parties' ongoing payment obligations. Id., § 9(c). In the Swap Agreement, as is typical with credit default swaps, such ongoing payment obligations comprise the material obligations of the swap counterparties. After early termination, however, the only *material* obligation remaining under the Swap Agreement is the obligation to make the settlement payment pursuant to section 6(e). Id., § 6(e). All other remaining obligations are merely incidental to making the settlement payment.

39. Accordingly, the Court should conclude that, because the only material obligation remaining under the Swap Agreement is the tendering of the settlement amount, the Swap Agreement does not qualify as executory and thus cannot be assumed.

**B.    The Debtors' Proposed Assumption is Procedurally Improper.**

40. The Debtors' request for approval to assume the Swap Agreements should be denied because it is procedurally improper and cannot be decided outside the context of an adversary proceeding.

41. Under Second Circuit precedent, "contract issues may not be decided as part of a motion to assume." In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir. 1993); see also In re Harry C. Partridge, Jr. & Sons, Inc., 43 B.R. 669, 672 (Bankr. S.D.N.Y. 1984) (holding that the debtor's request to obtain a declaratory judgment relating to a contract dispute cannot be decided in the context of a motion to assume and instead must be commenced by an adversary proceeding).

42. In Orion Pictures Corp., the Bankruptcy Court approved the debtor's motion to assume a contract that was also the subject of an adversary proceeding. In its adversary proceeding complaint, the debtor claimed that the contract counterparty had committed a breach of its obligations. The Bankruptcy Court held hearings on both the motion to assume and the adversary proceeding, but ultimately dismissed the adversary proceeding as moot after allowing the debtor to assume the agreement. In re Orion Pictures Corp., 4 F.3d at 1098-1100. (noting that the Bankruptcy Court's statement that "in allowing the assumption . . . [the Bankruptcy Court] is ruling that [the counterparty] has demonstrated no grounds on which to refuse to fulfill its obligations under the agreement."). The Second Circuit, however, reversed, stating that "[a]t heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract . . . [i]t is not the time or place for prolonged discovery or a lengthy trial with disputed issues." Id. at 1098-99. Thus, the Second Circuit held that "contract issues may not be decided as part of a motion to assume." Id. at 1099.

43. As discussed above, in seeking to assume the Swap Agreement, the Debtors are necessarily placing at issue the validity of the agreement's termination. Under Orion Pictures Corp., this Court cannot decide a disputed contractual issue in the context of a motion to assume. Accordingly, the Debtors' proposed assumption is procedurally improper and should be denied.

## RESERVATION OF RIGHTS

44. The Noteholders reserve all rights with respect to the agreements discussed herein and any claims relating to those agreements. Without limiting the generality of the foregoing, the Noteholders further reserve all rights to amend or supplement this Objection.

45. The Noteholders further reserve all rights to present additional arguments (i) in the event the Court determines that the agreements at issue constitute executory contracts for the purposes of section 365 of the Bankruptcy Code, (ii) in the event the Debtors argue that the executory contracts they intend to assume with respect to the Counterparties include agreements other than the Swap Agreement, and (iii) to object to the proposed cure amounts.

46. The Noteholders hereby incorporate by reference, as if fully set forth herein, the arguments of other, similarly-situated counterparties to purported executory contracts with the Debtors to the extent such arguments are not inconsistent with arguments in this Objection.

## RELIEF REQUESTED

WHEREFORE, the Noteholders respectfully requests that this Court deny the Debtors' request to assume the purported executory derivatives contracts entered into between the Issuer and LBSF, or any related contract entered into in connection therewith, and for such other relief as the Court deems just and appropriate.

Dated: New York, New York
November 10, 2010

                    VENABLE LLP

By:     */s/ Edward A. Smith*
      Edward A. Smith (easmith@venable.com)
      Rishi Kapoor (rkapoor@venable.com)
      Rockefeller Center
      1270 Avenue of the Americas
      New York, New York 10020
      Telephone: (212) 307-5500
      Facsimile: (212) 307-5598

*Counsel for LBBW Luxemburg S.A. and Landesbank Baden-Württemberg*