Objection Deadline: November 10, 2011 at 4:00 p.m. (prevailing Eastern time)

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION, NOT INDIVIDUALLY BUT AS TRUSTEE, TO NOTICES OF PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

U.S. Bank National Association, not in its individual capacity but as Trustee ("*U.S. Bank*" or the "*Trustee*"), by its undersigned attorneys, respectfully submits this objection (the "*Objection*") to the Notices of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code (collectively, the *"Notices"*) and in support thereof, respectfully states as follows:[1]

**PRELIMINARY STATEMENT**

1.   The Trustee and, to the extent appropriate, U.S. Bank Trust National Association, serve as trustee, owner trustee, indenture trustee and/or administrative agent in over eight hundred transactions, many of which contain swap and derivative contracts (the "*SPV Derivatives Transactions*") involving the Debtors. In connection with the SPV Derivatives Transactions, the Debtors established, or assisted in the establishment of, numerous special

---

[1]   Terms not defined herein shall have the meaning ascribed to them in the Proposed Plan and Disclosure Statement (each as defined herein).

3101266.01.05.doc

purpose vehicles (the "*SPV Counterparties*"), many of which were created under the laws of the Cayman Islands and participated in the various SPV Derivatives Transactions. A central component of many of the SPV Derivatives Transactions was a credit swap or credit derivative agreement (the "*CDSs*") between a SPV Counterparty and a Lehman entity. The 1992 ISDA Master Agreement (the *"Master Agreement"*) forms the basis of each of the CDSs. In addition, U.S. Bank serves as Trustee in connection with certain Reserve Funding Agreements (or similar agreements) (the "*RFAs*") and with respect to certain interest rate swaps (the "*IRSs*") and collectively with the CDSs and the RFAs, the "*Swap and Derivative Agreements*"). Lehman Brothers Holdings, Inc. ("*LBHI*") guaranteed the obligations under many of the Swap and Derivative Agreements (the "*LBHI Guarantees*").

2.    Immediately following the commencement of LBHI's chapter 11 case, which constituted an event of default under the various Swap and Derivative Agreements, the Trustee delivered default and termination notices on behalf of many of the SPV Counterparties (collectively, the "*Early Termination Notices*") with respect to certain of the Swap and Derivative Agreements, including, but not limited to, many of those listed on the attached Exhibit A.[2] Primarily delivered in connection with the CDSs, the Early Termination Notices were served in accordance with the safe harbor provisions of sections 560 and 365(e)(1) of the Bankruptcy Code. Each Early Termination Notice supplied an early termination date (the *"Early Termination Dates"*) for many of the SPV Derivatives Transactions.[3] Following the termination of the Swap and Derivative Agreements, as of the Early Termination Date, no other

---

[2]    Early Termination Notices were not delivered with respect to certain agreements that had previously terminated pursuant to their express terms.

[3]    Attached as Exhibit B is a copy of the Early Termination Notice submitted on behalf of the RACERS 2006-20AT trust. This Early Termination Notice is representative of those disseminated by the Debtors on behalf of each relevant trust. Pursuant to the Plan Supplement, the Debtors are currently seeking to assume an agreement with the RACERS 2006-20AT trust.

obligations were due to either party with respect to the terminated agreements but to determine the amounts of any termination payment due either the Debtors or the respective SPV Counterparty and the priority of such termination payment.

3. Following the delivery of the Early Termination Notices, the Debtors filed a number of adversary proceedings. Many of the SPV Counterparties are defendants in two of these proceedings (the "*Adversary Proceedings*"). *See* Adv. Pro. No. 10-03542 and No. 10-03547. Pursuant to the Adversary Proceedings, the Debtors have asserted claims against certain SPV Counterparties for, among other things, a termination payment that the Debtors claim is due them under certain provisions of the Swap and Derivative Agreements.

4. Pursuant to the Plan Supplement, filed on October 28, 2011 (the "*Plan Supplement*"), the Debtors have now determined to assume certain of the Swap and Derivative Agreements. *See* Plan Agreement, Ex. 2.[4] However, pursuant to the section 365 of the Bankruptcy Code, the Debtors may only assume "executory" contracts. Because: (i) many of the Swap and Derivative Agreements either previously terminated pursuant to their terms or have been terminated in accordance with their express terms and in accordance with the safe harbor provisions of the Bankruptcy Code and (ii) no additional duties are owed by the parties to the Swap and Derivative Agreements with the exception of settling the amounts outstanding thereunder with respect to a termination payment and the Trustee's fees and expenses, the Swap and Derivative Agreements are not executory contracts capable of being assumed pursuant to section 365 of the Bankruptcy Code. As a result, the Debtors' request to assume such agreements must be denied.

---

[4] Debtors have also recently filed their Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code to Establish Procedures for the Consensual Amendment and Assumption of Certain Prepetition Derivatives Contracts, filed on October 25, 2011 (the "*Procedures Motion*") [Docket No. 21297]. As noted, the Trustee previously delivered an Early Termination Notice to Debtors for many of the Swap and Derivative Agreements. Other agreements terminated pursuant to their terms. As a result, the Trustee filed a Reservation of Rights, asserting, among other things, that the Swap and Derivative Agreements should not be included among the derivative agreements that are the subject of the Procedures Motion.

5. Assuming, arguendo, that this Court finds these agreements to be executory contracts (and with respect to any contracts that have not yet been terminated), pursuant to section 365 of the Bankruptcy Code, the Debtors may only assume such agreements after curing any and all outstanding defaults thereunder and providing adequate assurance of future performance.

**BACKGROUND**

6. With respect to of the various SPV Derivatives Transactions, the rights and obligations of the SPV Counterparties, the Trustee and the holders of the notes and/or certificates are each specifically set forth in the governing documents. While various Debtor entities are parties to the various Swap and Derivative Agreements with the SPV Counterparties, the Debtors are not parties to the various indentures and/or trust agreements governing these transactions.

7. In performing its obligations under the various SPV Derivatives Transactions, the Trustee relies upon the specific terms of the governing documents and upon directions, instructions and indemnities with respect to all of the actions it takes in connection with such trusts. The Trustee has no monetary interest in the underlying transactions themselves or in the SPV Counterparties (with the exception of the Trustee's fees, costs and expenses in connection with its service under the relevant governing documents).

8. The Trustee previously filed a Proof of Claim prior to the bar date with respect to each of the Swap and Derivatives Agreements.

9. On August 31, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan (the *"Proposed Plan"*) and related Disclosure Statement for the Proposed Plan (the "*Disclosure Statement*").

4

10. Pursuant to section 11.1 of the Proposed Plan:

> all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease . . . (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor.

11. In addition, section 11.2 of the Proposed Plan provides that:

> [e]ntry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan.

12. Moreover, the notice of the Confirmation Hearing (as defined in the Proposed Plan) directs that:

> [i]f you are a Counterparty to an executory contract or unexpired lease to be assumed or assumed and assigned by the Debtors, you must file and serve any objection to the assumption or the cure amounts listed by the Debtors on the above-referenced schedule by the Plan Objection Deadline.

13. As noted above, the Debtors filed the Plan Supplement on October 28, 2011. Pursuant to the Plan Supplement, the Debtors have now determined to assume many of the Swap and Derivative Agreements as well as certain other contracts. The Trustee previously filed an objection to the Proposed Plan asserting, among other things, that the various Swap and Derivative Agreements were not executory contracts capable of being assumed, and that, to the extent such agreements were deemed executory contracts, the Debtors were required to cure any and all outstanding defaults in accordance with the express terms thereof.

14. On and after October 31, 2011, the Trustee, its counsel and/or the SPV Counterparties began receiving Notices with respect to certain of the Swap and Derivative Agreements. The Trustee has received Notices with respect to many, but not all, of the transactions listed on Exhibit A. Each of these Notices lists a Cure Amount of $0.

5

Notwithstanding its previous objections to the Proposed Plan, in accordance with the procedures established in the Notices, and out of an abundance of caution, the Trustee now hereby objects to the Notices.

**ARGUMENT**

**I.   The Swap and Derivative Agreements are Not Executory Contracts Capable of Being Assumed Pursuant to Section 365 of the Bankruptcy Code**

15.   Section 365 of the Bankruptcy Code authorizes a debtor in possession to "assume or reject any *executory* contract or unexpired lease," subject to the court's approval. 11 U.S.C. § 365(a) (emphasis added). As a result, only executory contracts may be assumed by a chapter 11 debtor. The legislative history of section 365 states that "[t]hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R. Rep. No. 95-595, at 347 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6303; *accord NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6 (1984). An executory contract has also been held to be an agreement "in which a party binds itself to perform at some time in the future." *First Intl. Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.*, 59 N.Y.2d 436, 443 (1983).

16.   In this instance, many of the Swap and Derivative Agreements may not be executory contracts. As noted above, some of these agreements have either previously terminated or were properly terminated by the Trustee in accordance with both the terms of the underlying agreement and in accordance with the safe harbor provisions of the Bankruptcy Code. Owing to their termination, there is no future performance required under the agreements by either party, with the exception of liquidating the amount payable as a termination value.

17.   However, the obligation to pay money at some future date does not make a contract executory. *See In re Chateaugay Corp.*, 130 B.R. 162, 165–166 (Bankr. S.D.N.Y. 1991) ("A debtor's obligation to pay money, standing alone, is insufficient to render a contract

executory"); *In re Masters, Inc.*, 141 B.R. 13, 17 (Bankr. E.D.N.Y.), *aff'd*, 149 B.R. 289 (E.D.N.Y. 1992) ("[A] contract is not executory where the only obligation of a party . . . is the payment of money'") (citation omitted); *see also In re Helm*, 335 B.R. 528, 535 (Bankr. S.D.N.Y. 2006) ("[W]here one party has fully performed, and awaits only payment by the other party . . . an agreement is not executory, as performance is complete, with only payment owed") (citation omitted); *but see Lehman Bros. Spec. Fin. v. BNY Corp. Tr. Servs. (In re Lehman Brothers Holdings, Inc.)*, 422 Bankr. 407, 416 (Bankr. S.D.N.Y. 2010) (finding terminated ISDA agreement to be executory where both parties had continuing obligations to pay).

18.     Each of the various Swap and Derivative Agreements are governed by New York law. The New York Supreme Court in *Controladora* makes this point clearly and concisely, holding "[o]nce terminated, the ISDA Agreement was not, and could not be, executory." *JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 920 N.Y.S.2d 241 (Sup. Ct. 2010). As noted above, the Master Agreement serves as the basis of each of the Swap and Derivative Agreements.

**II.     The Debtors Must Cure Any Outstanding Defaults**

19.     Their prior termination notwithstanding, assuming, arguendo, that such agreements are deemed to be executory contracts capable of assumption, pursuant to section 365 of the Bankruptcy Code the Debtors must cure, or provide adequate assurance that the Debtors will promptly cure, any and all outstanding defaults. In connection with the assumption of any agreement, pursuant to section 365 of the Bankruptcy Code, a debtor must:

> (A) cure[], or provide adequate assurance that the trustee will promptly cure, such default …; (B) compensate[], or provide[] adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provide[] adequate assurance of future performance under the contract or lease.

7

11 U.S.C. § 365(b)(1)(A)-(C).

20. In curing any and all outstanding defaults, the Debtors must comply with the express terms of the underlying agreement. In doing so, the Swap and Derivative Agreements require, where applicable, that all such calculations must be made as of the Early Termination Date.

21. In addition, to properly cure the Swap and Derivative Agreement, the Debtors are also required to cover the Trustee's fees and expenses in connection with the Swap and Derivative Agreements. The Debtor counterparty is in default of its obligations under the terms of many of the Swap and Derivative Agreements. Under the terms of the Master Agreements, which form the basis for the Swap and Derivative Agreements, a "Non-Defaulting Party" is entitled to fees and expenses incurred in connection with the default. Specifically, section 11 of the Master Agreement provides:

> A Defaulting Party will, on demand, indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees and Stamp Tax, incurred by such other party by reason of the enforcement and protection of its rights under this Agreement or any Credit Support Document to which the Defaulting Party is a party by reason of the early termination of any Transaction, including, but not limited to, costs of collection.

Master Agreement, § 11, p. 12-13. The Trustee has incurred fees and expenses in connection with each Swap and Derivatives Agreement and will continue to accrue fees and expenses until the issues surrounding the Swap and Derivative Agreements are resolved. As a result, any Notice that lists the Cure Amount as zero is insufficient.

22. Moreover, to assume the Swap and Derivative Agreements, the Debtors are also required to provide the Trustee adequate assurance of future performance under its express terms, including, among other things, that the Debtors will pay all amounts that may come due, perform all covenants and comply with any and all indemnification obligations. Because the

Debtors are liquidating entities, the Trustee questions whether the Debtors would have the ability to perform these future obligations.

23.  To the extent the Debtors now assert that the Swap and Derivative Agreements are not terminated, no termination payments should be due and owing with respect to the Adversary Proceedings. The Debtors cannot assert, on the one hand, that they are due amounts owing because of an early termination – whether it be on account of the amounts outstanding as of the Early Termination Date or on account of a termination fee being due – and, on the other hand, seek to assume the Swap and Derivative Agreements as executory contracts. However, to the extent that the Debtors assert that the agreements have been terminated and such agreements are found to be executory contracts, the Debtors recovery, if any, should be limited to the express requirements of the underlying agreements, which provide only for the payment of the fees and expenses of the Trustee and the payment of a termination payment in certain circumstances.

24.  Furthermore, many of the Swap and Derivative Agreements explicitly required that the obligations thereunder be guaranteed by LBHI. In order to assume the Swap and Derivative Agreements, the Debtors must comply with all of their express terms thereof. It is certain that a debtor may not "cherry pick" among the provisions of an executory contract to seek out the provisions it finds beneficial and cast off those it finds burdensome. Instead, executory contracts must be assumed or rejected in full. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract . . . it assumes the contract *cum onere*."). Furthermore, a debtor "cannot simply retain the favorable and excise the burdensome provisions of an agreement." *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999). As a result, in order to properly cure the Swap and Derivative Agreements, the Debtors must also assume the related LBHI Guarantees.

9

25. Notwithstanding the above, the Trustee does not currently believe any amounts to be outstanding by either party with respect to the Swap and Derivative Agreements, with the exception of certain termination fees, the payment of which is currently the subject of litigation, and certain fees, costs and expenses incurred by the Trustee on behalf of the investors in the various SPV Counterparties. However, because of the late date upon which the Debtors have distributed the Notices, the Trustee has not had sufficient time to audit such cure amounts prior to the deadline for responses hereunder. Owing to the large number of Swap and Derivative Agreements being assumed by the Debtors, until given adequate opportunity to review each Swap and Derivative Agreement to determine the appropriate cure amount as compared to the amount contained in the Notice, the Trustee must generally object to all of the Debtors' calculations at this time. The Trustee is willing to continue working with the Debtors to resolve any and all outstanding cure issues with respect to each of the Swap and Derivative Agreements.

## CONCLUSION

WHEREFORE, the Swap and Derivative Agreements have been terminated in accordance with their terms and applicable law, and are therefore not executory contracts capable of being assumed pursuant to section 365, the Court should not authorize their assumption by the Debtors. To the extent the Court deems such agreements executory contracts, the Debtors are required to cure each of the Swap and Derivative Agreements pursuant to its express terms, and where applicable, liquidate the amounts payable as of the Early Termination Date. Owing to the express provisions of the underlying agreements, the Debtors should be strictly limited to their rights, if any, to a net termination payment after taking into account the fees and expenses of the Trustee.

As a result, the Trustee respectfully requests that the Court enter an order: (i) denying Debtors' request to assume the Swap and Derivative Agreements, or (ii) to the extent such

agreements are deemed executory contracts, requiring the Debtors to cure any and all outstanding defaults and limiting any recovery to the express terms of such agreements and (iii) granting the Trustee such other and further relief to which it is entitled.

Dated: November 10, 2011

                                Respectfully submitted,

                                U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE

                                By: /s/ Craig Price
                                       One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
Jeremy Schreiber
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000


Craig M. Price (CP 9039)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000