Timothy B. DeSieno
R. Jeffery Black
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York  10022
(212) 705-7000

Attorneys for The Lincoln National Life Insurance Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br><br>08-13555 (JMP)<br><br>(Jointly Administered) |

**OBJECTION OF THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
TO ASSUMPTION OF AGREEMENT AND LIMITED OBJECTION TO THIRD
AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC.
AND ITS AFFILIATED DEBTORS**

The Lincoln National Life Insurance Company ("Lincoln")[1] hereby submits its (i) objection to the Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011, that was served upon Penns Landing CDO 2007-1 (sic) (i.e., Penn's Landing CDO SPC, referred to herein as "Penn's Landing") (the "Assumption Notice"), and (ii) limited objection to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors dated August 31, 2011 [Docket No. 19627],

---

[1] Lincoln files this objection to the Assumption Notice as a party in interest in its capacity as holder of the Class B-1 Notes issued by Penn's Landing CDO SPC, and co-issued by Penn's Landing CDO LLC, for the account of The Series 2007-1 Segregated Portfolio, for which Delaware Investment Advisers acts as Portfolio Manager.

which incorporates the Plan Supplement dated October 25, 2011 [Docket No. 21254] (the "Plan Supplement") (as supplemented, the "Plan"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. In the Assumption Notice, chapter 11 debtor Lehman Brothers Special Financing Inc. ("LBSF") seeks to assume one or more unspecified derivatives contracts with Penn's Landing. But the derivatives contracts to which LBSF seemingly refers relate to a collection of derivatives transactions that were duly terminated and liquidated in accordance with the relevant agreements' terms - and, if applicable, the safe harbor provisions of the United States Bankruptcy Code (the "Bankruptcy Code") - before LBSF even filed its petition. Accordingly, there were and are no derivatives transactions between LBSF and Penn's Landing for LBSF to assume.

2. So Lincoln objects to the purported assumption of any agreement to the extent that such assumption might in and of itself suggest there are any such transactions outstanding or otherwise capable of being assumed. As this Court knows, LBSF has commenced litigation against Penn's Landing, among others, asserting a theory that such transactions may not have been terminated properly (the "Adversary Proceeding"). Lincoln submits this objection, in material part, for the purpose of ensuring that Penn's Landing and Lincoln are not deemed to have acceded to any argument that such transactions were not duly terminated, and are not estopped from asserting that such transactions were duly terminated.

3. Further, LBSF's attempt to assume contracts related to the terminated transactions violates the Court-ordered stay of the Adversary Proceeding, which prohibits the parties from addressing the merits, except in Court-authorized mediation.

4. Finally, due to the impropriety of the proposed assumption of any contract that would purport not to recognize complete transaction terminations, if the proposed assumption of contracts with Penn's Landing forms a part of the Plan, as LBSF states in the Assumption Notice, the Plan is not in compliance with the Bankruptcy Code, threatening the Plan's confirmability.

2

5.     For each of the foregoing reasons, the Court should rule that LBSF may not assume any contracts with Penn's Landing, and Lincoln therefore requests that the Court decline to approve any such assumption in respect of any derivatives contract between LBSF and Penn's Landing.

## BACKGROUND

**Assumption Notice**

6.     On August 31, 2011, Lehman Brothers Holdings Inc. ("LBHI") and its debtor affiliates (collectively, the "Debtors"), including LBSF, filed the Plan. On October 25, 2011, the Debtors filed the Plan Supplement, which included, as Exhibit 2, a schedule of Executory Contracts and Unexpired Leases to be Assumed Pursuant to Section 11.1 of the Plan.

7.     On October 27, 2011, the Assumption Notice, addressed to Delaware Investment Advisers ("Delaware"), was served by the Debtors on Lincoln at Lincoln's address at 100 N. Greene Street, Greensboro, North Carolina 27401. The Assumption Notice states that the Debtors propose to assume the "executory contract" listed on Exhibit A thereto, and to pay the cure amount also set forth on Exhibit A. A true and correct copy of the Assumption Notice is attached to the Declaration of R. Jeffery Black In Support Of Objection Of The Lincoln National Life Insurance Company To Assumption Of Agreement And Limited Objection To The Plan (the "Black Decl.") as Exhibit A.

8.     Exhibit A to the Assumption Notice identifies LBSF as the relevant Debtor, and "Penns Landing CDO 2007-1" (sic) as the "Counterparty". Exhibit A states the "Cure Amount" to be $0.

9.     Although the Assumption Notice does not specify, the contract at issue is apparently the ISDA Master Agreement, dated as of April 10, 2007 (the "Agreement"), between LBSF and Penn's Landing CDO SPC, for the account of the Series 2007-1 Segregated Portfolio, presumably together with all related confirmations, agreements and documents.

10.     The integrated collection of confirmations, agreements, and documents recording the rights and obligations of the parties with respect to transactions under the Agreement (the

3

"Transaction Documents") includes the (i) Agreement, (ii) the Schedule to the Agreement, dated as of April 10, 2007, (iii) the Class B-1 Confirmation, dated as of April 10, 2007, as amended and restated on April 24, 2007 (establishing a collection of credit default swaps between the parties), and (iv) the Standard Terms for Indenture, dated as of April 10, 2007 and the Series Indenture, dated as of April 10, 2007, as amended and restated on April 24, 2007 (collectively, the "Indenture"). True and correct copies of selected Transaction Documents are attached to the Black Declaration as Exhibits B through D.

**Petition Dates and Termination of Transactions**

11. On September 15, 2008, LBHI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "LBHI Petition Date"). LBHI was LBSF's Credit Support Provider in connection with the Agreement.

12. By letter dated September 15, 2008 (the "Termination Notice"), Penn's Landing, by Delaware as Portfolio Manager and attorney-in-fact, delivered to LBSF notice that an Event of Default as defined by the Agreement had occurred and was continuing. Specifically, Penn's Landing notified LBSF that it was the Defaulting Party under Section 5(a)(vii) of the Agreement, based on LBHI's filing of its bankruptcy petition. The Termination Notice designated September 16, 2008 as the Early Termination Date in respect of all outstanding Transactions (as defined in the Agreement) under the Agreement, thereby terminating all such Transactions. *See* Black Decl. Exhibit E.

13. On September 18, 2008, Delaware delivered to LBSF a Notice regarding "Unpaid Amount and Termination Payment Amount Calculations" (the "Calculation Statement"), which included a calculation of amounts payable on early termination of all outstanding Transactions under the Agreement. The calculation in the Calculation Statement reflected and implemented the waterfall (the "Penn's Landing 2007 Agreed Waterfall") contained in the Indenture, namely the waterfall that the parties had originally agreed applies in the event that LBSF is the defaulting party, including in the event LBHI were to file a voluntary petition. *See* Black Decl. Exhibit F.

4

14. On October 3, 2008, LBSF filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "LBSF Petition Date").

**Adversary Proceeding and Court-Ordered Stay**

15. On September 14, 2010, LBSF commenced an adversary proceeding [Adv. Pro. No. 10-03547] in this Court against a number of parties, including Delaware and Penn's Landing (the "Adversary Proceeding"). In the Adversary Proceeding, LBSF seeks, among other relief, a declaration that "Priority Modification Provisions" in numerous credit default swap agreements are unenforceable *ipso facto* clauses. On information and belief, in the Adversary Proceeding, LBSF plans to challenge the enforceability of the Penn's Landing 2007 Agreed Waterfall. LBSF's claims in the Adversary Proceeding are stated to be based on the Court's holding in another adversary proceeding that allegedly similar priority modification provisions in another transaction were unenforceable. *See* First Amended Complaint, ¶ 4 [Adv. Pro. Docket No. 8].

16. On October 20, 2010, the Adversary Proceeding was stayed for nine months, and on June 16, 2011, that stay was extended to January 20, 2012 (the "Stay"). [Adv. Pro. Docket Nos. 31, 115].

17. The terms of the Stay prevent the Debtors from proceeding with the Adversary Proceeding by way of substantive discovery, motion practice, hearings, or other procedures addressing the merits, with the exception of prescribed alternative dispute resolution or negotiations. *See* Stay Order at 2-3 [Adv. Pro. Docket No. 31].

## OBJECTION

**A. Because the Transactions Under the Agreement Were Completely and Validly Terminated (i) Before The LBSF Petition Date and (ii) Pursuant to the Safe Harbor Statute, the Transactions Cannot Be the Subject of Any Assumption.**

18. It is well settled that in order for a contract to be executory and capable of being assumed under Section 365 of the Bankruptcy Code, it must be in effect as of the petition date. *See Robinson v. Chicago Housing Authority*, 54 F.3d 316, 324 (7th Cir. 1995); *Erickson v. Polk*, 921 F.2d 200, 201-02 (8th Cir. 1990); *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill*

5

*Farms, Inc.),* 841 F.2d 1467, 1469 (9th Cir. 1988); *In re Metro Air Northeast, Inc. (N.Y.)*, 131 B.R. 555, 556 (Bankr. W.D.N.Y. 1991).

19. Here, the Transactions under the Agreement were validly and completely terminated as of September 16, 2008, weeks before the LBSF Petition Date. When LBSF filed its petition on October 3, 2008, there were no outstanding Transactions under the Agreement, and accordingly, the Bankruptcy Code does not permit assumption of any such Transactions. To the extent the Assumption Notice seeks authority to assume any such Transaction, such request must therefore be denied.

20. Section 365(e)(1) of the Bankruptcy Code does not aid LBSF at all in this regard. The introductory text to section 365(e)(1) provides that "an executory contract ... of ***the debtor*** may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of ***the*** case solely because of" a prohibited *ipso facto* provision. 11 U.S.C. § 365(e)(1) (emphasis added). This language clearly refers to termination or modification of a contract of the debtor after the commencement of the debtor's case. And in this case, there was no step, much less a contractual termination or modification, that occurred after the LBSF Petition Date. Simply put, LBSF was not in any bankruptcy proceeding at the time of the termination of the Transactions, so Section 365(e)(1) was not applicable to LBSF at such time or at any time thereafter with respect to the Transactions.

21. And because of that inapplicability, this case is different from the case before this Court in *Lehman Bros. Special Financing Inc. v. BNY Corp. Trustee Svcs, Ltd*., 422 B.R. 407, 418-21 (Bankr. S.D.N.Y. 2010) (referred to herein as "Perpetual"). In Perpetual, the Court addressed allegedly executory contracts of LBSF that the counterparty had only terminated after the LBSF Petition Date. As such, in Perpetual, LBSF was at the time of termination entitled to the protections section 365(e)(1) affords it. So in Perpetual, the Court proceeded to interpret the language of section 365(e)(1)(B) of the Bankruptcy Code. That subsection provides that terminations or modifications to executory contracts that are conditioned on the "commencement

6

A/74589995.6

of *a* case" under the Bankruptcy Code shall not be given effect.  The Court in Perpetual concluded that the reference to "a" case, even as applied in LBSF's case, could be interpreted to be a reference to the separate bankruptcy proceeding of LBHI.  So in Perpetual, the Court ruled that steps taken by an LBSF counterparty after the LBSF Petition Date, which steps the counterparty was initially entitled to take as a result of the LBHI petition, ran afoul of section 365(e)(1)'s prohibition on *ipso facto* clauses as applied in LBSF's case, and such steps would not be given effect.  *BNY Corp.*, 422 B.R. at 420.

22. Again, in this case, however, Penn's Landing took no termination or modification steps after the LBSF Petition Date, and so the specific holding in Perpetual is not apposite, nor does it support LBSF's attempt to assume contracts with Penn's Landing.  Instead, all Transactions were properly and completely terminated before the LBSF Petition Date, and as such, the Transactions are not capable of assumption by LBSF.  Accordingly, the Court should deny the relief sought in the Assumption Notice.

23. In any event, this Court did not hold in *Perpetual* that the ipso facto provision bars a counterparty from terminating swap transactions with LBSF in the months after LBHI's or LBSF's petition dates.  This Court has never questioned that the plain terms of the safe harbor statute of the Bankruptcy Code, to the extent that provision permits the "liquidation, **termination**, or acceleration" of a swap agreement, like the Transactions (which were credit default swaps), notwithstanding the ipso facto statute.  11 U.S.C. § 560 (emphasis added).

24. Here, it should be undisputed that Penn's Landing terminated the Transactions in accordance with the terms of both the Agreement and the safe harbor statute.

25. Specifically, section 5(a)(vii) of the Agreement provides that an Event of Default occurs if a party or a Credit Support Provider becomes insolvent or is unable to pay its debts or fails or admits in writing its inability to pay debts as they become due, or institutes a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy law.  *See* Black Decl. Ex. B, Agreement at 6.  Section 6(a) of the Agreement provides that upon such an Event of Default, the non-defaulting party may send notice designating an "Early Termination

7

Date," as defined by the Agreement, regarding all outstanding transactions under the Agreement. *Id*. at 8. If an Early Termination Date is designated, Sections 6(d) and 6(e) of the Agreement require a final payment be made according to the applicable calculation method. *Id*. at 9.

26. The filing of LBHI's bankruptcy petition was an Event of Default under Section 5(a)(vii) of the Agreement. *See* Black Decl. Ex. B, Agreement at 6. In light of that Event of Default, Penn's Landing's Termination Notice and Calculation Statement were duly delivered to LBSF, the defaulting party, in accordance with Sections 6(a), 6(d) and 6(e) of the Agreement. *Id*. at 8-9. Because the Transactions were indisputably swap agreements, their termination was safe harbored from the effect of the *ipso facto* statute. *See Swedbank AB (PUBL) v. Lehman Bros. Holdings Inc.*, 445 B.R. 130, 135 (S.D.N.Y. 2011) (section 560 "permit[s] either the non-debtor swap participant or the trustee to terminate a swap agreement, so that a swap agreement may continue after the bankruptcy petition is filed only by mutual consent"); *see also* 5-560 COLLIER ON BANKRUPTCY ¶ 560.LH (2010).

27. The parties' dispute over the enforceability of the Penn's Landing 2007 Agreed Waterfall is a significant matter to be decided in the Adversary Proceeding, but it is entirely irrelevant here. Because all Transactions under the Agreement were validly terminated, the Transactions simply cannot be assumed by LBSF. Accordingly, the Court should deny the relief sought in the Assumption Notice.

**B.     The Assumption of the Agreement Would Violate the Stay.**

28. LBSF's attempt to assume the Agreement and the Transactions is improper in yet another way: that attempt violates the Stay in the Adversary Proceeding that is in effect until January 20, 2012.

29. The Stay permits LBSF to engage only in two related types of activity in the Adversary Proceeding: seeking limited discovery concerning the identification of potential parties, and effecting service of process upon defendants. LBSF, like the defendants, are prohibited from addressing merits, except in prescribed mediation proceedings or negotiations. and to attempt to resolve disputes regarding swap transactions through alternative dispute

8

resolution procedures or to otherwise settle the stayed avoidance actions. *See* Stay Order at 3 [Adv. Pro. Docket No. 31].

30. By attempting to assume the Agreement and the Transactions, which LBSF cannot do unless the Agreement and the Transactions were not duly terminated, LBSF is effectively seeking a victory on the merits of a substantive issue in the Adversary Proceeding. This attempt violates the Stay, the very purpose of which is to preserve the status quo before litigation on the merits begins.

C.  **The Purported Assumption Does Not Comply With the Bankruptcy Code.**

31. Even if LBSF could assume the Agreement, which it cannot do, the purported assumption does not comply with applicable provisions of the Bankruptcy Code.

32. A debtor may not assume an executory contract if there has been a default unless the debtor cures the default or provides adequate assurance of cure or future performance. 11 U.S.C. § 365(b); *Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.)*, 173 B.R. 844, 857 (S.D.N.Y. 1994) ("Section 365(b)(1) requires that any default must be cured, or adequate assurance of such cure provided, before an executory contract or unexpired lease may be assumed.").

33. Despite there being an Event of Default under the Agreement, the Assumption Notice purports to offer $0 in cure in connection with the proposed assumption, and is silent regarding adequate assurance. Even if the Agreement were executory, which Lincoln disputes, the potential cure amount due to Lincoln is a material factual dispute, which may require discovery and an evidentiary hearing. Lincoln reserves all of its rights in relation to this dispute, which, again, should be subject to the Stay.

34. Finally, the Plan only may be confirmed if it complies with all applicable provisions of Chapter 11. 11 U.S.C. § 1129(a). Therefore, since LBSF's purported assumption of the Agreement does not comply with section 365 of the Bankruptcy Code (as set forth above), the Plan cannot be confirmed to the extent it purports to incorporate the assumption of any of the Transaction Documents. *See, e.g., In re Duval Manor Assocs.*, 203 B.R. 42, 45 (E.D. Pa. 1996)

9

("Objections need not have been raised where, as here, the judge has an independent duty to determine that these statutory [confirmation] requirements had been met."); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 423 (Bankr. S.D. Tex. 2009) (finding court has discretion to strike plan provisions that do not comply with applicable law).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Lincoln respectfully requests that the Court (i) rule that LBSF may not assume any of the Transaction Documents, (ii) avoid the Assumption Notice, (iii) strike the Agreement from Exhibit 2 of the Plan Supplement, and (iv) grant such other and further relief as the Court deems just and proper.

Dated:   November 10, 2011
         New York, New York

**BINGHAM MCCUTCHEN LLP**

 /s/ Timothy B. DeSieno
Timothy B. DeSieno
 tim.desieno@bingham.com
R. Jeffery Black
 jeffery.black@bingham.com
399 Park Avenue
New York, New York  10022
(212) 705-7000

Attorneys for The Lincoln National Life Insurance Company

10

A/74589995.6