Dated as of 16 June 2006

**RUBY FINANCE PUBLIC LIMITED COMPANY**

and

**J.P. MORGAN CORPORATE TRUSTEE SERVICES LIMITED**

and

**JPMORGAN CHASE BANK N.A., LONDON BRANCH**

and

**J.P. MORGAN BANK (IRELAND) PLC**

and

**LEHMAN BROTHERS SPECIAL FINANCING, INC.**

and

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

# SUPPLEMENTAL TRUST DEED AND DRAWDOWN AGREEMENT

in respect of
Ruby Finance Public Limited Company Series 2006-3
EUR 50,000,000 RIESLING Credit Linked Synthetic Portfolio Notes due 2016
issued pursuant to the
Multi-Issuer Secured Obligation Programme

arranged by
**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

Linklaters

Ref: 01/200/MWAF/JZD/APF

This **Deed** is made as of 16 June 2006 **between:**

(1)   **RUBY FINANCE PUBLIC LIMITED COMPANY** (the "**Issuer**");

(2)   **J.P. MORGAN CORPORATE TRUSTEE SERVICES LIMITED** (the "**Trustee**");

(3)   **JPMORGAN CHASE BANK N.A., LONDON BRANCH** (in its capacity as issuing and paying agent, the "**Issuing and Paying Agent**" and in its capacity as custodian, the "**Custodian**");

(4)   **J.P. MORGAN BANK (IRELAND) PLC** (the "**Paying Agent**" and, together with the Issuing and Paying Agent, the "**Paying Agents**");

(5)   **LEHMAN BROTHERS SPECIAL FINANCING, INC.** (in its capacity as swap counterparty, the "**Swap Counterparty**"); and

(6)   **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** (in its capacity as calculation agent, the "**Calculation Agent**", in its capacity as disposal agent, the "**Disposal Agent**" and, in its capacity as dealer under the Programme, the "**Dealer**").

**Whereas:**

(A)   Dante Finance Public Limited Company ("**Dante**") and the Trustee are parties to a principal trust deed dated 10 October 2002 and amended and restated on 22 July 2005, to which the Issuer has acceded pursuant to a Deed of Accession dated 22 July 2005 (the "**Accession Deed**") establishing a programme for the issuance from time to time of secured notes (the principal trust deed dated 10 October 2002 and amended and restated on 22 July 2005, as acceded to by the Issuer pursuant to the Accession Deed, the "**Principal Trust Deed**").

(B)   Pursuant to Clause 2.7 of the Principal Trust Deed, the Issuer has authorised and determined to issue its Series 2006-3 EUR 50,000,000 RIESLING Credit Linked Synthetic Portfolio Notes due 2016 to be constituted and secured as set out below.

(C)   The parties hereto have each resolved to enter into this Deed for the purposes set out below. For the avoidance of doubt each party's obligation is several.

**Now this deed witnesses and it is hereby declared** as follows:

## SECTION I: DETAILS OF THE TRANSACTION

1   The Drawdown

   1.1   **Description of the Notes:**

   The Notes: Series 2006-3 EUR 50,000,000 RIESLING Credit Linked Synthetic Portfolio Notes due 2016

   Principal Amount: EUR 50,000,000

   1.2   **Process Agent Appointment Information:**

   Relevant Agreements: This Deed
   The Swap Agreement
   The Global Note

2

1.3 **Details of Swap Agreement:**

| | |
|---|---|
| Counterparties: | Issuer, Swap Counterparty |
| Master Agreement: | ISDA Master Agreement dated 10 October 2002 and amended and restated on 22 July 2005 between Dante and the Swap Counterparty to which the Issuer has acceded pursuant to the Deed of Accession dated 22 July 2005. |
| Transaction Type: | Credit Default Swap Transaction |
| Effective Date: | 16 June 2006 |

1.4 **Collateral:**

| | |
|---|---|
| The Collateral: | EUR 50,000,000 in principal amount of EUR 50,000,000 Floating Rate Note Public Pfandbriefe due 2016 issued by Hypothekenbank in Essen AG on 16 June 2006 (ISIN: DE000HBE0HS1). |
| Custody Account for the transfer of the Collateral: | Euroclear, Account No. 22066 |

# SECTION II: PROVISIONS SUPPLEMENTAL TO THE PRINCIPAL TRUST DEED AND THE AGENCY AGREEMENT

## 2 Definitions

2.1 **Principal Trust Deed:** Expressions defined in the Principal Trust Deed and the Conditions shall have the same meanings when used herein save to the extent supplemented or modified hereby.

2.2 **Additional Definitions:** The following expressions shall have the following meanings:

"**Agency Agreement**" means the agency agreement dated 10 October 2002 and amended and restated on 22 July 2005 between Dante, the Issuing and Paying Agent and others in respect of the Programme, as further amended by this Deed;

"**Collateral**" has the meaning as set out in Section I of this Deed;

"**Conditions**" means the terms and conditions of the Notes in the form set out in Schedule 2 Part C to the Principal Trust Deed, as supplemented by Schedule 2 to this Deed;

"**Custody Account**" means the account described as such in Section I of this Deed;

"**Issue Date**" means the date (expected to be the date of this Deed) on which the Notes constituted hereby are issued by the Issuer;

"**Moody's**" means Moody's Investors Service, Inc;

"**Mortgaged Property**" means the Collateral, the Prepayment Account, the Issuer's right, title and interest under the Agency Agreement, the Swap Agreement and the Swap Guarantee and the other assets and/or agreement rights from time to time charged in favour of the Trustee for the purpose of securing the Notes;

3

"**Notes**" means the Notes of the Issuer described in Section I of this Deed, constituted and secured by this Deed or the amount of them for the time being outstanding and includes the Global Note to be issued in respect of them;

"**Obligation**" means an obligation and duty of the Issuer under the Trust Deed, each Note, the Agency Agreement and the Swap Agreement;

"**Principal Amount**" means the principal amount of the Notes as set out in Section I of this Deed;

"**Prepayment Account**" means the interest bearing euro-denominated account established with the Custodian in the name of the Issuer;

"**Purchase Price**" means, in respect of the purchase of the Collateral, such valuable consideration, as agreed between the Dealer and the Issuer, to be provided by the Issuer to the Dealer on the Issue Date;

"**Series Prospectus**" means the Series Prospectus specifying the relevant issue details of the Notes, the form of which appears as Schedule 2 to this Deed;

"**Swap Agreement**" means the swap agreement described in Section I of this Deed, comprising the Master Agreement (including the Schedule and Credit Support Annex thereto) (the "**ISDA Master**") and a confirmation relating to the Notes with an effective date of the Effective Date; and

"**Swap Guarantee**" means the guarantee of the obligations of the Swap Counterparty given by Lehman Brothers Holdings Inc.

2.3   **Incorporation by Reference**: Except as otherwise provided herein, the terms of the Principal Trust Deed shall apply to this Deed as if they were set out herein and the Principal Trust Deed shall be read and construed, in relation to the Notes, as one document with this Deed. For the avoidance of doubt, the conditions set out in Schedule 2 Part C to the Principal Trust Deed, as supplemented by Schedule 2 to this Deed shall constitute the Conditions of the Notes.

3   **Amount and Status of Notes**

3.1   **Amount:** The aggregate principal amount of the Notes is limited to EUR 50,000,000.

3.2   **Status:** The Notes constitute secured and limited recourse obligations of the Issuer, secured as provided below.

4   **Form of Notes**

The Notes will be Bearer Notes represented by a Global Note issued in the Principal Amount. The Global Note will be substantially in the form set out in Schedule 1 Part B to the Principal Trust Deed and exchangeable for Definitive Notes in the circumstances set out therein.

5   **Security and Covenants**

5.1   **Security:** The Issuer hereby creates security over the Mortgaged Property in accordance with the provisions of Clause 5 of the Principal Trust Deed.

4

5.2 **The Mortgaged Property:** Without prejudice to the generality of sub-Clause 5.1, the Issuer as sole beneficial owner with full title guarantee and as continuing security in favour of the Trustee hereby:

5.2.1 charges by way of first fixed charge the Collateral;

5.2.2 assigns by way of security all the Issuer's rights, title and interest attaching to or relating to the Collateral and all sums derived therefrom including, without limitation, any right to delivery thereof or to an equivalent number or nominal value thereof which arises in connection with any such assets being held in a clearing system or through a financial intermediary;

5.2.3 assigns by way of security all the Issuer's rights, title and interest against the Custodian, to the extent that they relate to the Collateral and the Prepayment Account;

5.2.4 assigns by way of security all the Issuer's rights, title and interest against the Disposal Agent, to the extent that they relate to any Collateral or the proceeds of sale of any such Collateral;

5.2.5 assigns by way of security all the Issuer's rights, title and interest under the Agency Agreement (the Issuer's "**Agency Rights**"), to the extent that they relate to the Notes and all sums derived therefrom;

5.2.6 assigns by way of security all the Issuer's rights, title and interest under the Swap Agreement and under the Swap Guarantee and in respect of any sums received thereunder (the Issuer's "**Swap Rights**"); and

5.2.7 charges by way of first fixed charge (a) all sums held by the Issuing and Paying Agent and/or the Custodian to meet payments due in respect of the obligations and duties of the Issuer under the Trust Deed, the Notes and the Swap Agreement (including, without limitation, all sums standing to the credit of the Prepayment Account) and (b) any sums received by the Issuing and Paying Agent and/or the Custodian under the Swap Agreement and under the Swap Guarantee (together with the Issuer's Agency Rights and Swap Rights, its "**Note Rights**").

5.3 **Benefit of Security:** Clause 5.2 of the Principal Trust Deed is hereby amended in relation to the issue of the Notes so that the security created pursuant to Clause 5.1 and 5.2 of this Deed is granted to the Trustee as trustee for itself and/or the holders of the Notes, and the Swap Counterparty, the Custodian and the Paying Agents as continuing security (i) for the payment of all sums due under the Trust Deed and the Notes, (ii) for the performance of the Issuer's obligations (if any) under the Swap Agreement and (iii) for payment of all claims of the Custodian (for reimbursement in respect of payments properly made to any party of sums receivable in respect of the Collateral in discharge of an Obligation) and (iv) for the payment of all claims of the Paying Agents (for reimbursement in respect of payments properly made to any person in discharge of an Obligation).

None of the Swap Counterparty, the Custodian or any of the Paying Agents shall benefit from the security in respect of which it is itself the party that owes an obligation to the Issuer pursuant to the Swap Agreement or the Agency Agreement.

5

5.4 **Release of Mortgaged Property:** The Trustee shall release from such charges created pursuant to this Deed:

    5.4.1 any part of the Mortgaged Property (i) when the same becomes payable or deliverable to the extent that payment or delivery of the same may be obtained and duly paid or delivered to the Swap Counterparty under the terms of the Swap Agreement and/or to the holders of the Notes or (ii) to the extent that such part of the Mortgaged Property may be disposed of by the Disposal Agent on behalf of the Issuer in accordance with the terms of this Deed;

    5.4.2 such sums as arise under the Issuer's Note Rights to the intent that payment of all sums due under the Trust Deed be duly made; and

    5.4.3 such sums as arise under the Issuer's Swap Rights to the intent that payment of all sums and delivery of all amounts under the Swap Agreement be duly made.

5.5 **Application of Moneys Received:** The Trustee shall apply all moneys received by it under this Deed in connection with the realisation or enforcement of the Mortgaged Property as follows:

Swap Counterparty Priority unless (i) an Event of Default (as defined in the Swap Agreement) occurs under the Swap Agreement and the Swap Counterparty is the Defaulting Party (as defined in the Swap Agreement) or (ii) a Tax Event upon Merger (as defined in the Swap Agreement) occurs under the Swap Agreement and the Swap Counterparty is the sole Affected Party (as defined in the Swap Agreement) or (iii) an Additional Termination Event (as defined in the Swap Agreement) occurs under the Swap Agreement and the Swap Counterparty is the Affected Party (as defined in the Swap Agreement), in which case Noteholder Priority shall apply.

5.6 **Payments:** The Issuer and the Issuing and Paying Agent hereby agree in accordance with the provisions of Clause 4.1 of the Agency Agreement that payments in respect of the Notes shall be made on a "same-day" basis, and that the provisions of Clause 4.1.1 of the Agency Agreement apply so that the Issuer shall transfer the amounts required in respect of any particular payment on the date on which that payment in respect of the Notes becomes due.

5.7 **Collateral:** The Issuer confirms that it has made arrangements for the Collateral to be delivered to or to the order of the Custodian on or before the date hereof. The Custodian agrees to notify the Issuer and the Calculation Agent if it becomes aware of any material amendment to the terms and conditions of the Collateral.

5.8 **Covenant to pay:** The Trustee hereby agrees to hold the covenant set out in Clause 2.3 of the Principal Trust Deed on trust for the holders of the Notes according to their respective interests.

5.9 **Covenants:** The Swap Counterparty covenants with the Trustee in the terms of Clause 7.2 of the Principal Trust Deed and agrees to comply with and be subject to all other applicable provisions of the Principal Trust Deed.

5.10 **Notice and Acknowledgement:** The Issuer hereby gives notice and each of the Issuing and Paying Agent, the Paying Agent, the Custodian, the Calculation Agent, the Disposal Agent and the Swap Counterparty hereby acknowledges that it has notice of the assignments and security given by the Issuer pursuant to this Deed and each of the above

A06372946/2.0/16 Jun 2006

parties together with the Trustee consents to any further assignments and security by the Issuer to any successor trustee under this Deed.

5.11   **Prepayment Amounts:** The Issuer shall procure that any Prepayment Fixed Rate Payer Payment Amounts and any Additional Prepayment Fixed Rate Payer Payment Amounts received by it pursuant to the Swap Agreement are paid into the Prepayment Account upon receipt.

5.12   **Agency Agreement:**

The Agency Agreement is hereby amended in relation to the issue of the Notes by the addition as Clause 15.16 of the following: "The Custodian agrees to open and maintain in its books such cash and securities accounts (including, without limitation, the Prepayment Account) for and on behalf of the Issuer as may be required in order to give effect to the Conditions and/or the Swap Agreement. Amounts and securities and/or cash credited to such accounts (including, without limitation, the Prepayment Account) will be held by the Custodian subject to the security granted in favour of the Trustee. The Issuer and the Trustee hereby authorise the Custodian and the Custodian hereby agrees to apply such amounts in accordance with Clause 15.8."

## 6   Limited Recourse and Non Petition

The parties to this Deed and the holders of the Notes shall have recourse only to sums derived from the Mortgaged Property, and the Trustee having realised the same, the parties to this Deed, the holders of the Notes, or anyone acting on behalf of any of them shall not be entitled to take any further steps against the Issuer to recover any further sum and no debt shall be owed to any of such persons by the Issuer in respect of any such further sum. In particular, neither the parties to this Deed nor any holder of any Note shall be entitled to institute, or join with any other person in bringing, instituting or joining, insolvency proceedings (whether court based or otherwise) in relation to the Issuer, nor shall any of them have any claim in respect of any sum arising in respect of the Mortgaged Property for any other Series.

## SECTION III: PROVISIONS RELATING TO THE DRAWDOWN

## 7   Issue of and Subscription for the Notes

7.1   **Agreement to subscribe:** The Dealer agrees to subscribe and pay for the Notes in an amount equal to the Principal Amount and for a price equal to the issue price (the "**Issue Price**") of the Notes in accordance with the terms of the Programme Agreement.

7.2   **Agreement to issue:** The Issuer confirms its agreement to issue the Notes to the Dealer.

## 8   Sale of Collateral

8.1   **Agreement to sell and purchase:** The Dealer agrees to sell with full title guarantee, and the Issuer agrees to purchase, the Collateral for the Purchase Price on the Issue Date by delivery of the Collateral to, or to the order of, the Custodian in consideration of the payment of the Purchase Price on the Issue Date by the Issuer to, or to the order of, the Dealer. The Dealer and the Issuer acknowledge that it is their express intention that the transaction shall be a sale and it is not their intention that the sale and purchase of the

7

Collateral shall be deemed to create in favour of the Issuer a mortgage, charge, pledge or any other security interest over such securities.

8.2 **Completion:** The Dealer and the Issuer agree that the Issuer's obligation to pay the Purchase Price shall be satisfied by the delivery of the Notes by the Issuer to, or to the order of, the Dealer.

8.3 **Representations and warranties:** The Dealer and Issuer represent and warrant to each other that:

8.3.1 on the Issue Date and on the date of this Deed, it is duly incorporated and validly existing under the laws of the jurisdiction of its incorporation;

8.3.2 on the Issue Date and in respect of the Collateral sold or bought on such date:

(a) it has the power to enter into the sale (in the case of the Dealer) or purchase (in the case of the Issuer) of such Collateral and has taken all necessary action to authorise such sale or (as the case may be) purchase; and

(b) its obligation to sell (in the case of the Dealer) or buy (in the case of the Issuer) such Collateral constitutes its legal, valid, binding and enforceable obligations (subject to applicable bankruptcy, reorganisation, insolvency, moratorium or similar laws affecting creditors' rights generally and, as to enforceability, subject to equitable principles of general application); and

8.3.3 on the date of this Deed:

(a) it has the power to enter into this Deed and to perform its obligations hereunder in accordance with the terms and conditions hereof and has taken all necessary action to authorise the execution, delivery and performance of this Deed; and

(b) this Deed constitutes its legal, valid, binding and enforceable obligations (subject to applicable bankruptcy, reorganisation, insolvency, moratorium or similar laws affecting creditors' rights generally and, as to enforceability, subject to equitable principles of general application).

8.4 **Additional representations and warranties:** In respect of the sale of the Collateral by the Dealer on the Issue Date, the Dealer hereby represents and warrants to the Issuer that:

8.4.1 the Dealer sells all rights, title and interest therein free and clear of all mortgages, pledges, liens, charges, assignments, security interests, options, equities (including, without limitation, rights of set-off or counterclaim) or other encumbrances of any nature whatsoever (other than any claims of the clearing system (or its operator) through which such Collateral are held);

8.4.2 the Dealer is not, prior to the sale of such Collateral nor will be as a result of such sale, unable to pay its debts as they fall due within the meaning of section 123 of the Insolvency Act 1986;

8.4.3 (i) the Dealer is entering into such sale of Collateral in good faith and for the purpose of carrying on its business, (ii) the Dealer considers such sale to be in its

8

        best interests and (iii) the Dealer has not entered into such sale of Collateral in order to defraud its creditors; and

  8.4.4    the sale of such Collateral will not be made below fair market value.

## 9   Disposal Agent

9.1    **Appointment:** The Issuer appoints the Disposal Agent as its agent for the purposes of arranging for the realisation, disposal or transfer of the Collateral or any part of it that is required to be disposed of or transferred pursuant to the Conditions or in order to meet its obligations under the Swap Agreement or the Notes (the "**Affected Collateral**") on the following terms and conditions.

9.2    **Duties:** The Disposal Agent shall:

  9.2.1    on any date (the "**Solicitation Date**") on which the Issuer becomes obliged under the Conditions or the Swap Agreement to sell the Affected Collateral, use its reasonable endeavours to solicit:

    (a)    offers from third parties (which, for the avoidance of doubt, may not include itself) ("**Offerors**") to purchase the Affected Collateral for settlement on a date no later than 5 Business Days after the Solicitation Date (the "**Disposal Date**"); and

    (b)    quotations from such Offerors of the price at which each would be prepared to purchase the Affected Collateral on such terms;

  9.2.2    as the Issuer's agent, arrange the sale of the Affected Collateral on the Issuer's behalf (the "**Sale**") for settlement on the Disposal Date to the Offeror which made the highest offer to purchase it (the "**Purchaser**"). The Issuer hereby authorises the Disposal Agent to give settlement instructions to the Custodian in connection with such Sale; and

  9.2.3    as the Issuer's agent, arrange the transfer of the Affected Collateral on the Issuer's behalf (the "**Transfer**") for settlement on the Disposal Date to the Purchaser. The Issuer hereby authorises the Disposal Agent to give settlement instructions to the Custodian in connection with such Transfer.

If the Disposal Agent fails to take any action that it is required to take pursuant to this Deed, it shall forthwith notify the Issuer, Moody's, the Trustee and the Issuing and Paying Agent in writing.

9.3    **Dealings in Collateral:** The Custodian may:

  9.3.1    accept settlement instructions from the Disposal Agent in connection with the Sale or the Transfer;

  9.3.2    upon the instruction of the Disposal Agent, accept delivery of the purchase moneys (if any) for the Affected Collateral from the Purchaser. Clause 15.8 of the Agency Agreement shall apply to such purchase moneys in payment to the Swap Counterparty in accordance with the terms of the Swap Agreement;

  9.3.3    deliver the Affected Collateral to, or for the account of, the recipient specified in the instruction of the Disposal Agent against, in the case of the sale of the Affected Collateral, such receipt of the purchase moneys.

A06372946/2.0/16 Jun 2006

The Swap Counterparty hereby agrees that, if an Event of Default (as defined in the ISDA Master Agreement) occurs under the Swap Agreement and the Swap Counterparty is the Defaulting Party (as defined in the ISDA Master Agreement) or if a Tax Event upon Merger (as defined in the ISDA Master Agreement) occurs under the Swap Agreement and the Swap Counterparty is the sole Affected Party (as defined in the ISDA Master Agreement) or an Additional Termination Event (as defined in the Swap Agreement) occurs under the Swap Agreement and the Swap Counterparty is the Affected Party) (as defined in the Swap Agreement) and Unwind Costs are payable by the Issuer to the Swap Counterparty, the Issuer shall apply the net proceeds from the sale or disposal of the Collateral (1) first in redeeming the Notes in an amount as set out in the Conditions and (2) thereafter, in payment of such Unwind Costs to the Swap Counterparty.

9.4 **General**: In acting under this Deed, the Disposal Agent:

9.4.1 may take such steps as it considers appropriate in order to effect an orderly sale of the Affected Collateral but may not delay arrangements of the sale beyond the Disposal Date in the hope of achieving a higher price and will not be liable to the Issuer or any party hereto merely because a higher price could have been obtained had the sale been delayed;

9.4.2 shall not be liable for any costs, charges, losses, damages, liabilities or expenses ("**Losses**") arising from or connected with the sale or from any act or omission in relation to the Affected Collateral or otherwise unless such Losses are caused by its own fraud, negligence, misconduct or wilful default;

9.4.3 shall not have any obligations towards or relationship of agency or trust with the Noteholders;

9.4.4 may consult on any legal matter any legal adviser selected by it, who may be an employee of or adviser to the Issuer, and it shall not be liable in respect of anything done or omitted to be done relating to that matter in good faith in accordance with that adviser's opinion;

9.4.5 shall not be liable in respect of anything done or suffered by it in reliance on a document it reasonably believed to be genuine and to have been signed by the proper parties or on information to which it should properly have regard and which it reasonably believed to be genuine and to have been originated by the proper parties; and

9.4.6 may acquire, hold or dispose of any Notes or other security (or any interest therein) of the Issuer or any other person, may enter into or be interested in any contract or transaction with any such person and may act on, or as depository, trustee or agent for, any committee or body of holders of any securities of any such person in each case with the same rights as it would have had if the Disposal Agent were not the Disposal Agent, and need not account for any profit.

9.5 **Changes in Disposal Agent**

9.5.1 The Disposal Agent may resign its appointment hereunder at any time by giving prior written notice to the Issuer (which notice shall not expire less than 30 days before or after the Disposal Date). If the Disposal Agent is unable or unwilling or otherwise fails to act, the Issuer shall immediately appoint a leading bank or investment banking firm to act as its successor. Resignation by the Disposal

A06372946/2.0/16 Jun 2006

Agent shall not take effect, nor may the Disposal Agent be removed (save as set out herein), until the Issuer has appointed a replacement disposal agent upon substantially the same terms. The Issuer agrees with the Disposal Agent that if, 10 days before the expiry of any notice under this Clause, the Issuer has not appointed a replacement disposal agent, the Disposal Agent shall be entitled, on behalf of the Issuer, to appoint a disposal agent in its place meeting the requirements set out above to which the Issuer shall have no reasonable objection.

9.5.2   The Issuer may forthwith terminate the appointment of the Disposal Agent if (i) at any time the Disposal Agent becomes incapable of acting, or is adjudged bankrupt or insolvent, or files a voluntary petition in bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a receiver, administrator or other similar official of all or any substantial part of its property or admits in writing its inability to pay or to meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for its winding-up or dissolution, or if a receiver, administrator or other similar official of itself or all or any substantial part of its property is appointed, or if an order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency laws, or if any public officer takes charge or control of it or its property or affairs for the purpose of rehabilitation, conservation or liquidation; or (ii) it fails duly to perform any act required to be performed by it under this Deed and the Issuer gives it notice that it intends to appoint a replacement disposal agent.

9.5.3   In accordance with the Conditions the Issuer shall give the Noteholders, the Trustee, Moody's and the Issuing and Paying Agent at least 30 days' notice of any such proposed resignation or termination or, where the appointment is terminated forthwith in accordance with this Clause, shall give notice as soon as possible after such termination.

9.5.4   Any organisation into which the Disposal Agent may be merged or converted or with which the Disposal Agent may be consolidated or which results from any merger, conversion or consolidation ("**Merger**") to which the Disposal Agent shall be a party shall, to the extent permitted by applicable law, be the successor disposal agent under this Deed without any further formality. Notice of any such Merger shall forthwith be given to the parties hereto. In addition, the Disposal Agent may transfer all of its rights and obligations to any organisation to which the Disposal Agent transfers all or substantially all of the Disposal Agent's assets and business and that assumes such obligations. Upon any such transfer and assumption of obligations, the Disposal Agent shall be relieved of and fully discharged from all obligations under this Deed, whether such obligations arose before or after such transfer and assumption.

## 10   Appointment of Calculation Agent

10.1   The Issuer hereby appoints the Calculation Agent to act as calculation agent for the Notes on the terms of, and as if it were expressed to be a party (as Calculation Agent) to, the Agency Agreement. This appointment relates only to the Notes and not to other issues of other obligations under the Programme.

11

10.2  The Calculation Agent accepts its appointment as Calculation Agent on the terms set out herein.

10.3  The Trustee consents to the appointment of the Calculation Agent as Calculation Agent relating to the Notes.

10.4  Each Noteholder and the Issuing and Paying Agent may request that the Calculation Agent shall, as soon as practicable, deliver to or to the order of such Noteholder or the Issuing and Paying Agent, as the case may be, reasonable information as to the manner of, and the bases and assumptions upon which, amounts have been calculated pursuant to the Conditions.

10.5  Upon notification from the Custodian that there has been a material amendment to the terms and conditions of the Collateral, the Calculation Agent will notify Moody's of such material amendment.

## 11 Rating of Custodian and Issuing and Paying Agent

If the rating of the Custodian and/or Issuing and Paying Agent is downgraded at any time below "P-1" by Moody's (in each case in respect of its short term, unsecured, unsubordinated and unguaranteed debt obligations) the Issuer shall, within 30 calendar days appoint a replacement Custodian and/or Issuing and Paying Agent (as the case may be) that has a rating of at least "P-1" by Moody's (in each case in respect of its short term, unsecured, unsubordinated and unguaranteed debt obligations) unless the Trustee has an alternative proposal which Moody's confirms will mean that the then current rating of the Notes will not be reduced.

## 12 Notices

All notices to be given in connection with the Notes shall be given or made by facsimile transmission or letter (by first class post) and shall be deemed to be delivered on receipt (when delivered in person), upon transmission (when made by facsimile transmission) and seven business days after the date of posting (if posted by first class post). The relevant addresses for notices are set out in Schedule 1 to this Deed.

## 13 Series Prospectus

The parties to this Deed acknowledge that the form of Series Prospectus set out in Schedule 2 hereto may be amended after the date of this Deed in connection with, amongst other things, the listing of the Notes on the Irish Stock Exchange. No such amendment may amend the Conditions unless made in accordance with Condition 12.

## 14 Contracts (Rights of Third Parties) Act 1999

A person who is not party to this Deed has no right, whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise, to enforce any term of this Deed except that and to the extent (if any) that this Deed expressly provides for that Act to apply to any of its terms.

## 15 Governing Law and Jurisdiction

15.1  **Governing Law:** This Deed shall be governed by and construed in accordance with English law.

A06372946/2.0/16 Jun 2006

15.2 **Jurisdiction:** The courts of England are to have jurisdiction to settle any disputes which may arise out of or in connection with this Deed, the Principal Trust Deed or the Notes and accordingly any legal action or proceedings arising out of or in connection with this Deed, the Principal Trust Deed or the Notes ("**Proceedings**") may be brought in such courts. The Issuer irrevocably submits to the jurisdiction of such courts and waives any objection on the ground that the Proceedings have been brought in an inconvenient forum. This submission is for the benefit of each of the other parties to this Deed and the holders of Notes, and shall not limit the right of any of them to take Proceedings in any other court of competent jurisdiction nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not).

15.3 **Service of Process:** The Issuer irrevocably appoints Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE to receive, for it and on its behalf, service of process in any Proceedings in England. Such service shall be deemed completed on delivery to such process agent (whether or not it is forwarded to and received by the Issuer). If for any reason its process agent ceases to be able to act as such or no longer has an address in England, the Issuer irrevocably agrees to appoint a substitute process agent acceptable to the parties hereto, and to deliver to the parties hereto a copy of the new agent's acceptance of that appointment, within 30 days. Nothing shall affect the right to serve process in any other manner permitted by law.

A06372946/2.0/16 Jun 2006

08-13555-mg   Doc 21924-9   Filed 11/10/11   Entered 11/10/11 15:45:43   Exhibit F
Pg 14 of 18                                                              EXHIBIT F

This Deed is delivered the day and year first written above.

SIGNED, SEALED AND DELIVERED for and on behalf of

**RUBY FINANCE PUBLIC LIMITED COMPANY**

by

its lawfully appointed attorney:

in the presence of:

Witness signature:

Address:

Occupation:

The COMMON SEAL of :
**J.P. MORGAN CORPORATE TRUSTEE SERVICES LIMITED**
was affixed in the presence of:

Authorised Signatory:          _____

Authorised Signatory:          _____

Executed as a deed by:
For and behalf of:
**JPMORGAN CHASE BANK,N.A.**            _____

GIVEN under the COMMON SEAL of:
**J.P. MORGAN BANK (IRELAND) PLC**

Director:                _____

Director/Secretary:      _____

14

A06372946/2.0/16 Jun 2006

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)** (as Calculation Agent, Disposal Agent and Dealer)

By:

**LEHMAN BROTHERS SPECIAL FINANCING, INC.** (as Swap Counterparty)

By:

A06372946/2.0/16 Jun 2006

## Schedule 1

### Addresses for Service and Notices

| | |
|---|---|
| **Issuer:** | AIB International Centre<br>International Financial Services Centre<br>Dublin 1<br>Ireland<br><br>Tel:   +353 1 874 0777<br>Fax:   +353 1 874 3050<br>Attn:  The Directors |
| **Lehman Brothers International (Europe):** | 25 Bank Street<br>London E14 5LE<br><br>Fax:   +44 20 7067 8388<br>Attn:  General Counsel |
| **Lehman Brothers Special Financing, Inc.** | 745 Seventh Avenue<br>New York<br>NY 10019<br>Fax:   +1646 758 1670<br>Attn:  General Counsel |
| **Issuing and Paying Agent:** | JPMorgan Chase Bank N.A., London Branch<br>Trinity Tower<br>9 Thomas More Street<br>London E1W 1YT<br><br>Tel:    +44 1 202 347430<br>Telex:  8954681 CMB G<br>Fax:    +44 1 202 347438<br>Attn:   Manager, Institutional Trust Services |
| **Paying Agent:** | J.P. Morgan Bank (Ireland) PLC<br>JPMorgan House<br>International Financial Services Centre<br>Dublin 1<br><br>Tel:   +353 1612 3000<br>Fax:  +353 1612 3123<br>Attn:  Manager, Institutional Trust Services |

A06372946/2.0/16 Jun 2006

| | |
|---|---|
| **Trustee:** | J.P. Morgan Corporate Trustee Services Limited<br>Trinity Tower<br>9 Thomas More Street<br>London E1W 1YT |
| | Tel:    + 44 20 7777 5422<br>Telex:  8954681 CMB G<br>Fax:   + 44 20 7777 5410/20<br>Attn:  Manager, Trust Administration |
| **Process Agent:** | 25 Bank Street<br>London E14 5LE |
| | Fax:   +44 20 7067 8388<br>Attn:  General Counsel |

A06372946/2.0/16 Jun 2006

## Schedule 2

Schedule 2