IN THE HIGH COURT OF JUSTICE                                    2010 FOLIO NO 1458

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

BETWEEN:

**LEHMAN BROTHERS SPECIAL FINANCING INC.**

**Claimant**

-and-

(1) **BNY CORPORATE TRUSTEE SERVICES LIMITED**
(2) **LANDESBANK BADEN-WÜTTEMBERG**
(3) **RUBY FINANCE PUBLIC LIMITED COMPANY**

**Defendants**

_____

**AGREED CASE MEMORANDUM**
_____

**A.    CASE SUMMARY**

**Factual Background**

**The Transaction Parties**

1      The Claimant is a corporation organised and incorporated under the laws of Delaware and is registered to carry on business in the state of Delaware.  On 3 October 2008 the Claimant filed a voluntary petition (the "**Chapter 11 Filing**") in the United States Bankruptcy Court for the Southern District of New York seeking relief under chapter 11 of title 11 ("**Chapter 11**") of the United States Code (the "**US Bankruptcy Code**").  Since that date, the Claimant has managed its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the US Bankruptcy Code.

2   The First Defendant is a company incorporated in England and Wales. The First Defendant was previously named J.P. Morgan Corporate Trustee Services Limited before changing its name to BNY Corporate Trustee Services Limited and again changing its name to BNY Mellon Corporate Trustee Services Limited on 1 March 2011. Under the transaction in issue, the First Defendant acted as both the note trustee of the Ruby 2006-3 Notes (as defined at paragraph 11 below) and the security trustee in respect of certain security granted by the Third Defendant to the First Defendant to secure the Third Defendant's obligations under the Transaction (as defined at paragraph 6). Save as set out below, the First Defendant adopts a neutral position in respect of the proceedings.

3   The Second Defendant is a German public limited law institution (rechtsfähige Anstalt des öffentlichen Rechts). The Second Defendant is the sole beneficial holder of the Ruby 2006-3 Notes.

4   The Third Defendant is a public limited company incorporated in the Republic of Ireland. The Third Defendant is a special purpose vehicle in that its purpose was to act as issuer in respect of the Ruby 2006-3 Notes and other note issuances and to enter into certain documents connected with the same. As a special purpose vehicle, Ruby has no significant assets other than the securities and other assets relating to specific notes issuances, over which security was granted in favour of the secured parties for the relevant transactions.

5   Pursuant to an Order of Mr Justice Teare dated 2 March 2011, the Third Defendant has agreed to be bound by any and all judgments or Orders of the Court in this action and to take no further active part in the proceedings.

6   Lehman Brothers International (Europe) is a private unlimited company incorporated in England and Wales and is currently in administration ("**LBIE**"). LBIE arranged, structured and marketed the Programme (as defined at paragraph 10.2 below) and is the calculation agent in respect of both the Ruby 2006-3 Notes and the Swap Agreement (as defined at paragraph 10.6 below) (together, the "**Transaction**"). Its ultimate holding company is Lehman Brothers Holdings Inc. ("**LBHI**").

7   LBHI is a corporation incorporated in the state of Delaware in the United States. Since 15 September 2008 it has carried on business as a debtor in possession under

Chapter 11 of the US Bankruptcy Code. LBHI guaranteed the payment obligations of the Claimant under the Swap Agreement with the Third Defendant.

**8** The Bank of New York Mellon, London Branch is the custodian in respect of the Collateral Securities (as defined at paragraph 12 below).

**9** LBBW Luxembourg S.A. (previously known as LRI Landesbank Rheinland-Pfalz International SA) ("**LBBW Luxembourg**") is a company incorporated in Luxembourg. LBBW Luxembourg is the portfolio manager whose role was to manage the portfolio of reference entities in accordance with the portfolio management agreement dated 21 June 2006 between, *inter alios*, LBBW Luxembourg, the Claimant and LBIE.

**The Transaction Documents**

**10** The dispute between the parties arises from the following documents (the "**Transaction Documents**"):

**10.1** the principal trust deed (the "**Principal Trust Deed**") dated 10 October 2002 as amended and restated on 22 July 2005 between Dante Finance Public Limited Company ("**Dante**") and the First Defendant, to which the Third Defendant acceded pursuant to a deed of accession dated 22 July 2005 (the "**Accession Deed**"), pursuant to which the Programme (defined below) was established;

**10.2** the supplemental trust deed and drawdown agreement (the "**Supplemental Trust Deed**", and together with the Principal Trust Deed, and read and construed, in relation to the Ruby 2006-3 Notes, as one document, the "**Trust Deed**") dated 16 June 2006 between, *inter alios*, the Third Defendant and the First Defendant, pursuant to which the parties thereto set out the specific transaction arrangements constituting the Ruby 2006-3 Notes, in accordance with, or amending, the Dante multi-issuer secured obligation programme (the "**Programme**");

**10.3** the series prospectus found at Schedule 2 to the Supplemental Trust Deed (the "**Series Prospectus**");

**10.4** the programme level terms and conditions of the Ruby 2006-3 Notes (the "**Programme Terms and Conditions**") found at Schedule 2 Part C to the Principal Trust Deed, and the series level terms and conditions of the Ruby 2006-3 Notes found within the Series Prospectus (the "**Series Terms and Conditions**", together with the Programme Terms and Conditions, and read and construed, in relation to the Ruby 2006-3 Notes, as one document, the "**Terms and Conditions**");

**10.5** a master agreement in the form of the 1992 International Swaps & Derivatives Association, Inc. ("**ISDA**") multicurrency - cross border 1992 master agreement ("**ISDA Master Agreement**") and a qualifying schedule thereto (the "**Schedule**", together with the ISDA Master Agreement, the "**Master Agreement**") dated as of 10 October 2002 as amended and restated on 22 July 2005 between the Claimant and Dante to which the Third Defendant acceded pursuant to the Accession Deed; and

**10.6** the confirmation (the "**Confirmation**"), governed by the Master Agreement, between the Claimant and the Third Defendant dated 16 June 2006 (together with the Master Agreement, the "**Swap Agreement**").

**The Ruby 2006-3 Transaction**

**11** On or about 16 June 2006 the Second Defendant purchased 500 Series 2006-3 EUR 50,000,000 RIESLING Credit Limited Synthetic Portfolio Notes due 2016 issued by the Third Defendant (the "**Ruby 2006-3 Notes**").

**12** The Third Defendant used the proceeds of the issuance of the Ruby 2006-3 Notes to purchase EUR 50,000,000 Floating Rate Public Pfandbriefe due 2016 issued by Hypothekenbank in Essen AG on 16 June 2006 (ISIN: DE000HBE0HS1) (the "**Collateral Securities**").

**13** The First Defendant was appointed as trustee under the Trust Deed. The Third Defendant charged the Collateral Securities and other assets deriving from the Transaction in favour of the First Defendant to hold on trust for, *inter alia*, itself, the Claimant and the Second Defendant as continuing security for the Third Defendant's obligations under the above.

**14**   Contemporaneously with the purchase of the Collateral Securities, on 16 June 2006 the Third Defendant also entered into a credit default swap with the Claimant, documented by the Swap Agreement. Pursuant to the Swap Agreement, Ruby agreed to provide credit protection in favour of the Claimant in respect of the Reference Entities in the Reference Registry (each as defined in paragraph 2 of the Swap Confirmation).

**15**   The payment flows under the Swap Agreement included interim and final payments by each of the Claimant and the Third Defendant, the broad effect was that the Claimant would pay the Third Defendant what the Third Defendant had to pay to the Second Defendant under the Ruby 2006-3 Notes, and in return the Third Defendant would pay the Claimant the sums it (the Third Defendant) was to receive in respect of the Collateral Securities.

**16**   More particularly, the payment flows are as follows:

Interim payments:

**16.1**   the Third Defendant agreed to pay the Claimant an amount equal to any coupon payment due and payable under the Collateral Securities on each coupon payment date; and

**16.2**   in return, the Claimant, as swap counterparty under the Swap Agreement, agreed to make payments to the Third Defendant equal to the interest payable by the Third Defendant to the Second Defendant at such times as the interest payments were due under the Ruby 2006-3 Notes.

Final payments:

**16.3**   the Third Defendant agreed to make, on the Scheduled Termination Date (as defined in the Confirmation, being 20 June 2016), a final payment to the Claimant equal to the redemption proceeds which it was scheduled to receive in respect of the Collateral Securities; and

**16.4**   in return, the Claimant agreed to make a final payment to the Third Defendant equal to the redemption amount due under the Ruby 2006-3 Notes.

17   The interaction between the Terms and Conditions and the Swap Agreement is such that, if no Credit Events (as defined in paragraph 8 of the Confirmation) in respect of the Reference Entities occurred and were duly notified by the Claimant in accordance with the "Conditions to Settlement" prescribed by the Swap Agreement, upon the Scheduled Termination Date of the Swap Agreement and the redemption of the Ruby 2006-3 Notes, the Second Defendant would recover the full notional amount of the Ruby 2006-3 Notes upon redemption.  However, where Credit Events in respect of the Reference Entities occurred and were duly notified by the Claimant in accordance with the "Conditions to Settlement" prescribed by the Swap Agreement, if the aggregate loss in respect of each such Reference Entity as calculated by the Swap Calculation Agent and notified by it to the Note Calculation Agent, exceeded the "Subordination Amount" then the "Aggregate Outstanding Nominal Amount" of the Ruby 2006-3 Notes was to be reduced by the Note Calculation Agent by the amount of the excess.

18   If the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes was written down, the final payment to be made to the Claimant under the Swap Agreement would be equal to the principal amount of the Collateral Securities, less only the written down Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes.

19   Whilst it was the Third Defendant which provided the credit protection under the Swap Agreement, the Transaction was structured such that it was the Second Defendant, as holder of the Ruby 2006-3 Notes, who bore the risk of the occurrence and subsequent notification of Credit Event(s).  As an SPV the Third Defendant was intended to have no economic interest in the outcome of the Transaction.

**Chronology of Events from September 2008**

20   On 15 September 2008, LBHI filed for Chapter 11 protection in New York.  LBHI was the Claimant's credit support provider under the Swap Agreement.  That was an Event of Default under the Swap Agreement (as defined therein).

21   On 22 September 2008, payments were due from the Claimant to the Third Defendant under the Swap Agreement and from the Third Defendant to the Second Defendant under the Ruby 2006-3 Notes.  Neither the Claimant nor the Third Defendant performed their interim payment obligations.

22  On 3 October 2008, the Claimant filed for Chapter 11 protection. That was an Event of Default under the Swap Agreement (as defined therein).

23  On 7 October 2008, the First Defendant served a "Notice of Event of Default" under the Ruby 2006-3 Notes on the Second Defendant, notifying it that an Event of Default had occurred in respect of the Ruby 2006-3 Notes and informing it of certain rights arising under the Transaction Documents upon such a default.

24  On 19 November 2008, the Third Defendant terminated LBIE's appointment as Calculation Agent in respect of the Ruby 2006-3 Notes.

25  On 15 January 2009, the Third Defendant as Non-Defaulting Party under the Swap Agreement (as defined therein) served a "Swap Termination Notice" on the Claimant and designated 20 January 2009 as the "Early Termination Date" (as defined in the Swap Agreement).

26  Under the terms of the Master Agreement once an Early Termination Date had been designated, regular payment obligations under the Swap Agreement are terminated and are replaced by an obligation to settle the amount payable (positive or negative) as a result of the termination (the "**Early Termination Amount**").

27  The Master Agreement requires that on or as soon as reasonably practical following the occurrence of an Early Termination Date under the Swap Agreement, the Third Defendant, as Non-Defaulting Party, calculates and provides the Claimant with a statement of the "Early Termination Amount" (the "**Early Termination Statement**"). The Third Defendant has failed to do so.

28  Further, the Third Defendant as the issuer of Ruby 2006-3 Notes, was obliged under the Terms and Conditions (Special Condition 38) to declare an "Early Redemption Date" in respect of the Ruby 2006-3 Notes (as termination of the Swap Agreement was an "Early Redemption Event") when the Ruby 2006-3 Notes would be redeemed at their Early Redemption Amount. The Third Defendant has failed to do so.

29  Various Credit Events occurred in September and October 2008.

30  On 21 April 2010, the Claimant provided an "Early Termination Calculation Statement" to the First and Third Defendants in the form of a Demand for Payment Trustee Distribution Direction (the "**Trustee Direction**").

**The Credit Event Notice of 28 August 2009**

31  On the Claimant's case: (i) on 28 August 2009 it served a "Credit Event Notice and Notice of Publicly Available Information" (the "**Credit Event Notice**") on the Third Defendant in respect of five companies (Freddie Mac, Fanny Mae, Glitnir Banki HF, Kaupthing Banki HF and Washington Mutual Inc.); (ii) the Credit Event Notice was in the form required by the Transaction Documents; (iii) following the service of the Credit Event Notice, an obligation arose upon LBIE as Calculation Agent to make certain calculations under the Transaction Documents; and (iv) LBIE did not perform any of its obligations under the Swap Agreement and in the absence of a functioning Calculation Agent the Claimant itself performed the necessary calculations in order to give rise to such determination.

32  The Second Defendant disputes the validity and effectiveness of the Credit Event Notice served.  In particular, on the Second Defendant's case the Claimant was not entitled under the terms of the Transaction Documents to serve a Credit Event Notice after the Early Termination of the Swap Agreement or to rely upon such a notice to argue for reductions in the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes.  The Second Defendant also disputes the entitlement of the Claimant to perform any of the calculations referred to above and disputes the validity and effect of the calculations.

**The Final Valuation Notice of 19 January 2010**

33  On 19 January 2010, the Claimant served a "Final Valuation Notice" on the First and Third Defendants (the "**Final Valuation Notice**").  The Final Valuation Notice stated that the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes had been reduced to zero as a result of the Credit Events which had occurred.

34  The Claimant asserts that the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 has been reduced to zero and accordingly no amount is repayable to the Second Defendant and that according to the provisions in the Trust Deed, the proceeds of liquidation of the Collateral Security are available to satisfy the Third

Defendant's obligations to pay the Termination Amount (as defined) to the Claimant under the Swap Agreement.

35   The Second Defendant does not accept that the Final Valuation Notice was valid or effective for any purpose. The Final Valuation Notice relied upon the 28 August 2009 Credit Event Notice whose validity and effect is disputed for the reasons above. Further, the Second Defendant asserts that the calculations and determinations in the Final Valuation Notice have no contractual status on the basis that the Transaction Documents allocate responsibility for such calculations and determinations to persons other than the Claimant.

**The Trustee Direction Notice of 21 April 2010**

36   On 21 April 2010, the Claimant issued a demand for payment in the form of the Trustee Direction directing the First Defendant to:

   **36.1**   take possession of and realise the mortgaged property in accordance with Clause 5.6 of the Principal Trust Deed; and

   **36.2**   apply all monies received from such realisation in accordance with the provisions of Clause 5.5 of the Supplemental Trust Deed and Clause 6.2 of the Principal Trust Deed, utilising the sum owed to the Claimant as the termination payment under the Swap Agreement as the Claimant's claim for the purposes of Clause 6.2 of the Principal Trust Deed.

37   The Trustee Direction identified that the Claimant had determined that:

   **37.1**   EUR 52,533,974.53 (plus accrued interest) was payable to the Claimant in relation to the termination of the Swap Agreement; and

   **37.2**   because the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes had been subject to a reduction in whole as stipulated in the Final Valuation Notice, no amounts were payable to the Second Defendant as the holder of the Ruby 2006-3 Notes out of the proceeds of the mortgaged property.

38   The Second Defendant does not accept that the Trustee Direction was valid or effective for any purpose. The Second Defendant does not accept that the calculation

in the Trustee Demand has any contractual status whatsoever. It does not accept that the calculation of the Early Termination Amount was performed by anyone entitled to make such a calculation or that it was performed in compliance with the provisions of the Master Agreement. The Second Defendant asserts that the calculation of interest included in the Trustee Direction is incorrect. The Second Defendant asserts that the calculation of the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes as zero is also incorrect (for the reasons given above).

**Priority of payment/application of monies received by the First Defendant (the "flip clause" issue)**

39  The Second Defendant asserts that the First Defendant is required to realise the proceeds of the mortgaged property and apply the same in accordance with Noteholder Priority (as defined in Clause 5.5 of the Supplemental Trust Deed (i.e. first in favour of the Second Defendant and thereafter in favour of the Claimant)) and in accordance with "Special Condition 44" of the Terms and Conditions.

40  If, as the Claimant contends but the Second Defendant denies, as a result of the occurrence of certain Credit Events the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes has been reduced to zero, the question of priority between the Second Defendant and the Claimant is not material. If however the Second Defendant is entitled to any material payment under the Ruby 2006-3 Notes, the Claimant maintains that the "flip clause" is void and/or unenforceable with the result that Swap Counterparty Priority applies. This issue has already been the subject of litigation in proceedings in the Chancery Division between the Claimant and parties interested in other Series of Notes issued under the Programme. An appeal on this issue was heard in that litigation by the Supreme Court in March 2011 and judgment is awaited.

**The Claimant's Claim Against the Defendants**

41  In summary, the Claimant's case is as follows:

   41.1  Credit Events occurred in September and October 2008 which had the effect of reducing the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes to zero.

**41.2**   The Credit Event Notice, the Final Valuation Notice and Trustee Direction were all validly served in accordance with the Transaction Documents, and accordingly are valid and effective.

**41.3**   Following LBIE's failure to perform the calculation required under the Transaction Documents, the Claimant was entitled to carry out such binding calculations in LBIE's place.

**41.4**   The calculation contained within the Final Valuation Notices are valid (i.e. the amount payable to the Claimant in relation to the termination of the Swap Agreement is EUR 52,533,974.53 (plus accrued interest) and the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes has been subject to reduction in the whole and accordingly, no amounts are payable to the Second Defendant as the holder of the Ruby 2006-3 Notes out of the proceeds of the mortgaged property).

**42**   In summary, the Claimant seeks:

**42.1**   a declaration that, under Clause 5.5 of the Principal Trust Deed, the Collateral Securities is enforceable;

**42.2**   an order that the First Defendant immediately (and subject to the determination of any issue as to the First Defendant's entitlement to any indemnity in respect thereof), takes possession of, and realises the Collateral Securities in accordance with Clause 5.6 of the Principal Trust Deed;

**42.3**   an order that the First Defendant does, as soon as practicable (and subject to the determination of any issue as to the First Defendant's entitlement to any indemnity in respect thereof), apply all moneys received from such realisation in accordance with the provisions of Clause 5.5 of the Supplemental Trust Deed and Clause 6.2 of the Principal Trust Deed and on the basis set out in the Trustee Direction;

**42.4**   alternatively, a declaration that the Outstanding Nominal Amount of the Ruby 2006-3 Notes is zero (or, alternatively, such other amount as the Court shall determine) and the sum to be distributed to the Claimant is to be calculated,

and distribution made (subject to the determination of any issue as to the First Defendant's entitlement to any indemnity in respect thereof) to the Claimant, accordingly;

42.5 an order that any distribution to be made pursuant to 42.4 above shall include interest for the period and at the rate specified in the Trustee Direction or at such other rate and for such other time as the Court shall determine whether under the said agreements or otherwise;

42.6 any such further orders as the Court sees fit; and

42.7 costs.

**The Defendants' Defences**

43 The First Defendant adopts a neutral position in respect of the substantive issues in dispute between the Claimant and the Second Defendant. The First Defendant accepts that the mortgaged property has become enforceable and has no objection to the Court making a declaration to that effect.

44 The Second Defendant asserts that none of the Credit Event Notice, Final Valuation Notice or Trustee Direction are valid or effective for any purpose, principally on the basis: (i) that Credit Events which occurred prior to the termination of the Swap Agreement but were not notified until after the termination of the Swap Agreement are not effective and cannot be relied upon to reduce the Aggregate Outstanding Nominal Amount or the Early Redemption Amount of the Ruby 2006-3 Notes; and (ii) that the Claimant did not have any contractual authority to perform the calculations contained in the Final Valuation Notice or Trustee Direction. The Second Defendant asserts that the Aggregate Outstanding Nominal Amount of the Ruby 2006-3 Notes has not been written down at all and that the Early Redemption Amount of the Note remains at EUR 50,000,000.

45 By way of counterclaim, the Second Defendant seeks declarations that:

45.1 the Ruby 2006-3 Notes have become due and payable at their Early Redemption Amount;

    **45.2**    the Early Redemption Amount is EUR 50,000,000 as there can be no reduction of the Aggregate Outstanding Nominal Amount after the early termination of the Swap Agreement, alternatively such other sum as the Court or a suitable calculation agent to be appointed shall determine;

    **45.3**    pursuant to Clause 5.5 of the Principal Trust Deed that the mortgaged property had become enforceable;

    **45.4**    pursuant to Clause 5.6 of the Principal Trust Deed the First Defendant shall enforce the mortgage property and

    **45.5**    pursuant to Clause 6.2 of the Principal Trust Deed, Clause 5.5 of the Supplement Trust Deed and Series Condition 44 of the Ruby 2006-3 Notes that the First Defendant shall apply the proceeds of the realisation of the mortgage property in accordance with Noteholder Priority.

**46**    The Transaction Documents contain provisions which entitle the First Defendant to be indemnified to its satisfaction prior to enforcing the security over the mortgaged property. Although neutral as to the core substance of the dispute between the Claimant and the Second Defendant, the First Defendant opposes any relief sought by either the Claimant or the Second Defendant in so far as that relief would involve the First Defendant taking enforcement and distribution steps without regard to its indemnification rights. The Claimant, First Defendant and Second Defendant agree that any issue as to the First Defendant's entitlement to any indemnity should be adjourned pending the outcome of the trial of the substantive issues between the Claimant and the Second Defendant.

**47**    The Third Defendant has agreed not to take any active part in these proceedings and agrees to be bound by any Order of the Court in respect of the same.

**B.    PROCEDURAL HISTORY**

| Date | Event |
| --- | --- |
| 07.12.10 | Part 8 Claim Form and First Witness Statement of Alanna Yvette Lee issued |
| 09.12.10 | Part 8 Claim Form and Witness Statement of Alanna Yvette Lee served |

| | |
|---|---|
| 02.03.11 | Consent Order of Mr Justice Teare |
| 21.02.11 | Evidence in Response in served respect of the First and Second Defendants served |
| 11.05.11 | Claimant's Further Evidence in Response served |

2010 FOLIO NO 1458

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

BETWEEN:

LEHMAN BROTHERS SPECIAL FINANCING INC.

**Claimant**

-and-

(1) BNY CORPORATE TRUSTEE SERVICES LIMITED
(2) LANDESBANK BADEN-WÜTTEMBERG
(3) RUBY FINANCE PUBLIC LIMITED COMPANY

**Defendants**

_____

**AGREED CASE MEMORANDUM**
_____

**Weil, Gotshal & Manges**
One South Place
London
EC2M 2WG

Tel: 020 7903 1281
Ref: MS/ EW/58399.0008

**Solicitors for the Claimant**