Response Deadline: November 10, 2011

Nava Hazan (*nhazan@mwe.com*)
Jared Zajac (*jzajac@mwe.com*)
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
Telephone: 212.547.5400
Facsimile: 212.547.5444

Nathan Coco (*ncoco@mwe.com*)
Jeffrey Rossman (*jrossman@mwe.com*)
McDERMOTT WILL & EMERY LLP
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606
Telephone: 312.372.2000
Facsimile: 312.984.7700

*Attorneys for Eskaton Properties, Incorporated*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtor. | (Jointly Administered) |

**OBJECTION BY ESKATON PROPERTIES, INCORPORATED TO DEBTORS' NOTICES OF PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

Eskaton Properties, Incorporated ("*Eskaton*"), a California nonprofit public benefit corporation, by and through its undersigned counsel, hereby objects to the cure amounts listed in the Notices of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code (collectively, the "*Notices*") sent by Lehman Brothers Holding, Inc. ("*LBHI*") and its

DM_US 30701644-4.087872.0011

affiliated debtors (each, a "*Debtor*", and, collectively, the "*Debtors*"), and respectfully states as follows:

## Background

1. Eskaton owns and operates skilled nursing facilities, congregate care facilities, independent living facilities, assisted living facilities and a continuing care retirement facility each of which provides health care and independence support services to senior citizens in northern California. Eskaton historically has used tax exempt bonds to help finance the construction and improvement of its facilities. In order to hedge its interest rate exposure, manage market volatility risk and reduce its debt service costs in connection with such tax exempt bond financing, Eskaton periodically has entered into interest rate swap transactions.

2. On July 28, 1999, Eskaton and Debtor Lehman Brothers Special Financing, Inc. ("*LBSF*") entered into an ISDA Master Agreement and accompanying Schedule in connection with a series of such interest rate swap transactions (the "*1999 Agreement*"). Further, on January 4, 2007, Eskaton and LBSF entered into another ISDA Master Agreement and accompanying Schedule with respect to a separate interest rate swap transaction (the "*2007 Agreement*", and, collectively with the 1999 Agreement, the "*Master Agreements*").[1]

3. Pursuant to the Master Agreements, Eskaton entered into six interest rate swap transactions with LBSF. In particular, Eskaton (i) swapped various floating rate obligations with respect to certain tax exempt bonds in exchange for a fixed rate, (ii) swapped its fixed rate obligation with respect to certain tax exempt bonds in exchange for a variable rate, and (iii) exchanged a one-month LIBOR variable rate for a five-year LIBOR variable rate (collectively, the "*Transactions*").

---

[1] Attached hereto as <u>Exhibits A and B</u>, respectively, are true and correct copies of the 1999 Agreement and the 2007 Agreement.

4.     Eskaton is also a party to a certain Reserve Fund Agreement dated as of July 28, 1999 (the "*DSRF Agreement*") by and among Eskaton, LBSF and BNY Western Trust Company. The DSRF Agreement was entered into in connection with the issuance of certain tax exempt bonds under a Master Trust Indenture dated as of July 1, 1999 between Eskaton and BNY Western Trust Company, as Master Indenture Trustee. The funds on deposit in the debt service reserve fund constitute collateral for the repayment of the bonds.

5.     On October 3, 2008, LBSF filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), triggering an event of default under, and Eskaton's right to terminate as set forth in, the Master Agreements. Accordingly, consistent with the terms of the Master Agreements, Eskaton sent LBSF a notice of default under and a notice of termination of the Master Agreements and the Transactions related thereto on November 20, 2008 and November 25, 2008, respectively.

6.     As a result of the termination of the Transactions, the Master Agreements provide Eskaton (as the non-defaulting party) with a right to termination payments in the amount of the losses Eskaton incurred, including, without limitation, the lost benefit of fully performed Master Agreements, due to LBSF's default. *See* Master Agreement § 6. The Master Agreements further provide for payment netting and setoff. *See Id.* at § 12; *see also Id.* at § 6(e).

7.     On November 5, 2010, Eskaton sent a notice (the "*Calculation Statement*") informing LBSF that the aggregate amount of Eskaton's losses in connection with LBSF's default is $8,315,866.66 (the "*Termination Payments*").

8.     Upon information and belief, the Debtors do not dispute that the Master Agreements and the Transactions documented thereunder have been duly terminated. To the extent that the Master Agreements remain "executory" within the meaning of section 365 of the

Bankruptcy Code, the only issue with respect to such contracts are the Termination Payments due thereunder.

9. On September 21, 2009, Eskaton filed six proofs of claim against LBSF and LBHI for (i) approximately $6,107,277.33 owed to Eskaton with respect to the 1999 Agreement, (ii) approximately $2,208,589.33 owed to Eskaton with respect to the 2007 Agreement, and (iii) an unliquidated amount with respect to any claims arising from the Debtors' default, rejection and/or non-performance under the DSRF Agreement. *See* Proofs of Claim Nos. 24645, 24646, 24647, 24648, 24649, and 24650.

10. On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code (the "*Plan*").

11. On October 27, 2011, the Debtors sent the Notices to inform Eskaton that they intend to assume (i) the Master Agreements and all other derivatives contracts related to the Transactions and (ii) the DSRF Agreement pursuant to the Plan and sections 365(a) and 1123(b)(2) of the Bankruptcy Code. According to the Notices, the proposed cure amount to assume the Master Agreements and the DSRF Agreement is zero ($0) dollars.

### Objection

12. Pursuant to section 365(b)(1) of the Bankruptcy Code, if there has been a default in an executory contract, the debtor-in-possession "may not assume such contract unless, at the time of assumption", the debtor-in-possession satisfies the following conditions: (i) cures, or provides adequate assurance that the debtor-in-possession will promptly cure, such default; (ii) compensates, or provides adequate assurance of prompt compensation, for any loss resulting from such default; and (iii) provides adequate assurance of future performance under the contract to be assumed. *See* 11 U.S.C. § 365(b)(1). The amount required to cure existing defaults under

a contract proposed to be assumed is measured as of the date of assumption. *See In re M. Fine Lumber Co., Inc.*, 383 B.R. 565, 570 (Bankr. E.D.N.Y. 2008) (noting that section 365 requires any default be cured prior to assumption); *In re Bradlees Stores, Inc.*, No. 00-16033, 2001 Bankr. LEXIS 2247, * 5 (Bankr. S.D.N.Y. Aug. 16, 2001) (noting that section 365 applies to both pre- and post-petition defaults).

13. As this Court has stated, these requirements are intended to provide the non-debtor counter-party to the contract in question "the benefit of its bargain by assuring substantial compliance with the terms of the contract." *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 690 (Bankr. S.D.N.Y. 2009); *see also COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.)*, 524 F.3d 373, 378 (2d Cir. 2008) (stating that assumption is "in effect a decision to continue performance…and continues the parties' rights to future performance under the contract").

14. The Debtors' proposed cure payment of zero ($0) dollars with respect to the Master Agreements and the DSRF Agreement does not satisfy the requirements of section 365(b)(1) of the Bankruptcy Code. The Debtors' assertion that no cure is owing is wholly unsupported by the record and ignores the Termination Payments and the proofs of claim filed against LBSF and LBHI in their respective chapter 11 cases. Indeed, a proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the claim's validity and amount. *See* Fed. R. Bankr. P. 3001(f). *See also Feinberg v. Bank of New York (In re Feinberg)*, 422 B.R. 215, 221 (Bankr. S.D.N.Y. 2010); *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 65 (Bankr. D. Del. 2002).

15. As set forth in Eskaton's Calculation Statement and proofs of claim, the aggregate amount owed Eskaton under the Master Agreements is $8,315,866.66. Thus, to comply with the

requirements of section 365 (b)(1) of the Bankruptcy Code, the Debtors must provide payment to Eskaton in the aggregate amount of $8,315,866.66 before the Debtors may assume the Master Agreements and all other derivatives contracts with respect to the Transactions.

16. With respect to the DSRF Agreement, the Debtors have not satisfied their burden of demonstrating adequate assurance of future performance. *See* 11 U.S.C. § 365(b)(1)(C). The Plan contemplates that the Debtors are to be liquidated. *See* Plan, Art. VII. Yet, the Debtors do not suggest how, in liquidation, they intend to continue to perform their obligations under the DSRF Agreement.

17. Eskaton hereby reserves all rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs, and recoupments accruing to it under the Master Agreements, the DSRF Agreement, the Bankruptcy Code, at law, in equity, and otherwise. Eskaton objects to the extent the Debtors' proposed assumption seeks to prejudice or contravene these rights.

- REMAINDER OF PAGE INTENTIONALLY LEFT BLANK -

WHEREFORE, Eskaton respectfully requests that the Court (i) find (a) the proposed cure amount with respect to the Master Agreements and all other derivatives contracts related to the Transactions stated in the Notices is incorrect and (b) the correct cure amount is reflected in the proofs of claim filed against LBSF and LBHI, (ii) condition the Debtors' proposed assumption of the Master Agreements and all other derivatives contracts related to the Transactions on prior payment of the correct cure amount to Eskaton, and (iii) deny the Debtors' proposed assumption of the DSRF Agreement.

Dated: November 10, 2011

Respectfully submitted,

By: /s/ Nava Hazan
Nava Hazan
Jared Zajac
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
Telephone: 212.547.5400
Facsimile: 212.547.5444
nhazan@mwe.com
jzajac@mwe.com

Nathan Coco
Jeffrey Rossman
McDERMOTT WILL & EMERY LLP
227 W. Monroe, Suite 4400
Chicago, IL 60606
Telephone: 312.984.3658
Facsimile: 312.984.7700
ncoco@mwe.com
jrossman@mwe.com

*Counsel to Eskaton Properties, Incorporated*