UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
In re                                                         : Chapter 11
                                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                      : Case No. 08-13555 (JMP)
                                                              :
            Debtors.                                        : (Jointly Administered)
                                                              :
                                                              :
------------------------------------------------------------- X

### OBJECTION OF THOMAS COOK AG TO DEBTORS' ASSUMPTION OF CERTAIN DERIVATIVES CONTRACTS AND TO CONFIRMATION OF CHAPTER 11 PLAN

Thomas Cook AG ("**Thomas Cook**"), by and through its undersigned counsel, Loeb & Loeb LLP, hereby submits its objection to (i) the above-captioned debtors' (the "**Debtors**") assumption of the Thomas Cook Agreement (as defined below) as set forth in the Third Amended Joint Plan of Lehman Brothers Holdings Inc. and It's Affiliated Debtors [Docket No. 19627] (the "**Plan**") and the plan supplement in support thereof [Docket No. 21254] (the "**Plan Supplement**") and (ii) confirmation of the Plan, to the extent it provides for the assumption of the Thomas Cook Agreement. In support of its objection, Thomas Cook respectfully represents as follows:

### PRELIMINARY STATEMENT

1.    The Debtors cannot assume the Thomas Cook Agreement, because it is not an executory contract. Pursuant to well-settled bankruptcy law, a terminated contract is not executory. The Debtors do not contest that the Thomas Cook Agreement has been terminated. Rather, the Debtors have more than once *conceded* that it has been terminated. As a result of this termination, there is now nothing left for the Debtors to assume. On this basis alone, the

Debtors' attempt to assume the Thomas Cook Agreement should be denied.

2. The assumption notice served by the Debtors (the "**Assumption Notice**") seeks to establish a "cure" amount of $0.00, which, if approved, would be binding on Thomas Cook "for all purposes." By seeking to fix the cure amount at $0.00, the Debtors appear to be seeking functionally to establish the amount of Thomas Cook's claims in circumvention of the claim resolution process in which the Debtors and Thomas Cook are currently engaged. It is through that process (and related alternative dispute resolution processes), that the claims of Thomas Cook should be determined. This apparent attempt to circumvent the claim resolution process by effectively setting Thomas Cook's claim via a "cure claim" determination on a contract not capable of being cured or assumed should not be allowed.

3. In any case, even if the Court were to determine that the Thomas Cook Agreement is capable of being assumed (which it should not) and is inclined to fix a cure amount in connection with that assumption, the appropriate cure amount is *far* in excess of the $0.00 proposed by the Debtors. Indeed, Thomas Cook has filed claims against LBCS and LBHI seeking millions of dollars of damages arising under the Thomas Cook Agreement. All of the amounts owed to Thomas Cook are long past due. The cure amount thus cannot be less than the amount of Thomas Cook's claims.

## BACKGROUND

4. On September 15, 2008, Lehman Brothers Holdings Inc. ("**LBHI**") filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. On October 3, 2008, Lehman Brothers Commodity Services Inc. ("**LBCS**") filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

A. **The Thomas Cook Agreement.**

5. Thomas Cook is a travel company, based in Germany. Prior to the Debtors'

bankruptcy filings, Thomas Cook and LBCS entered into and were party to an agreement entitled Rahmenvertrag für Finanztermingeschäfte dated as of April 20, 2007 (the "**Thomas Cook Agreement**").[1] The Thomas Cook Agreement prescribed the terms under which Thomas Cook and LBCS could enter into fuel hedging transactions. The Thomas Cook Agreement is governed by the laws of the Federal Republic of Germany. *See* Thomas Cook Agreement at § 11.2.

6. As an important precondition to entering into the Thomas Cook Agreement, Thomas Cook required that the obligations of LBCS under the Thomas Cook Agreement be guaranteed by LBHI. Thomas Cook obtained such assurance pursuant to the Guarantee of Lehman Brothers Holdings Inc., dated as of April 16, 2007 (the "**LBHI Guarantee**"). That the LBHI Guarantee was an important precondition of Thomas Cook's entry into the Thomas Cook Agreement is evidenced by the execution by LBHI of the LBHI Guarantee at least four days *before* the effectiveness of the Thomas Cook Agreement.

7. As a result of LBHI's bankruptcy filing, and in accordance with the terms of the Thomas Cook Agreement and governing German law, Thomas Cook properly terminated the Thomas Cook Agreement by letter dated September 17, 2008 (the "**Termination Notice**"), pursuant to Section 7.1 of the Thomas Cook Agreement, which provides for termination for a "material reason." Under Section 8.1 of the Thomas Cook Agreement, the terminating party's damages are to "be determined on the basis of replacement transactions, to be effected without undue delay." As a result of this provision and the termination of the Thomas Cook Agreement, Thomas Cook was left in the unfamiliar and unenviable position of having to replace hedging transactions having a volume of 160,000 tonnes within just a few days, a volume which is greatly

---

[1] Copies of the Thomas Cook Agreement, the LBHI Guarantee and the Termination Notice (all as defined herein) were filed along with the Questionnaires (as defined herein). The defined term Thomas Cook Agreement shall include any derivative or other contracts the Debtors seek to assume, and this objection shall apply to all other such contracts (if any).

in excess of Thomas Cook's typical fuel hedging requirements for an entire month. Thomas Cook is a travel company and not a major financial or trading institution, and prior to the Lehman Brothers collapse, none of its hedging counterparties had ever become insolvent, so it had never been forced to replace any hedging transactions.

8.  Although Thomas Cook was very much in uncharted waters, Thomas Cook acted quickly and diligently after termination to replace 16 terminated trades in a very compressed timeframe. Indeed, the replacement of all but two of those trades was completed by September 23, 2008 (*i.e.*, within just four business days of termination), and the final two trades were replaced the very next day, on September 24, 2008. The replacement trades were entered into "without undue delay" in accordance with the terms of the Thomas Cook Agreement and governing German law. As a result of the foregoing, LBCS (and LBHI as guarantor) owes millions of dollars to Thomas Cook under Section 8.1 of the Thomas Cook Agreement.

B.  **The Debtors have acknowledged in writing that the Thomas Cook Agreement has terminated and that they would not seek to assume or assign it.**

9.  On November 13, 2009, the Debtors filed a motion to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket No. 1498] (the "**Derivative Assumption Procedures Motion**"). Thomas Cook filed a limited objection to the Derivative Assumption Procedures Motion [Docket No. 1832]. Among other things, Thomas Cook argued that it could not be subject to the motion because the Thomas Cook Agreement was terminated and thus could not be assumed under the terms proposed by the motion or otherwise. Ultimately, Thomas Cook agreed to withdraw its limited objection in reliance on the Debtors' express, written confirmation of the "valid termination of the" Thomas Cook Agreement and that "the debtor [would] not attempt to assume or assign it." *See* E-Mails Between Walter Curchack of Loeb & Loeb LLP and Maurice Horwitz of Weil, Gotshal & Manges LLP, dated

December 11, 2008, attached hereto as Exh. A.

C. **The Thomas Cook Claims and the Debtors' objection thereto.**

10. On September 22, 2009, Thomas Cook timely filed proofs of claim against LBCS and LBHI in the amount of $65,191,886 in respect of LBCS's and LBHI's indebtedness to Thomas Cook under the Thomas Cook Agreement (the "**Thomas Cook Claims**"). On September 22, 2009, Thomas Cook timely submitted properly completed Derivative and Guarantee Questionnaires (the "**Questionnaires**") and uploaded voluminous information and documents in support of the Thomas Cook Claims.

11. On or about July 11, 2011, the Debtors filed their One Hundred Sixty-Third Omnibus Objection to Claims, by which the Debtors objected to the Thomas Cook Claims, among others [Docket No. 18409] (the "**Claims Objection**"). In the Claims Objection, the Debtors indicated that "the Derivatives Contracts that underlie the No Liability Derivatives Claims," which included the Thomas Cook Agreement, "have either been terminated or matured pursuant to the terms thereof." *See* Claims Objection at ¶ 11.

12. Based almost entirely on the Debtors' conclusory statement that "[a]fter a review of the claimants' supporting documentation and the Debtors' books and records, the Debtors determined that, based on the fair, accurate and reasonable values of the subject Derivative Contracts and the netting provisions thereunder, they do not owe any amounts to the claimants . . ." (Claims Objection at ¶ 11), and without any evidence or legal analysis, the Debtors asked the Court to disallow and expunge the claims, including those of Thomas Cook, in their entirety.

13. On August 10, 2011, Thomas Cook filed an objection to the Claims Objection [Docket No. 19124] (the "**Claims Objection Response**"). The Claims Objection as it applies to Thomas Cook remains pending.

14. At or about the same time as the Debtors filed the Claims Objection, the Debtors

served on Thomas Cook an alternative dispute resolution notice regarding potential claims that LBCS asserts against Thomas Cook under the Thomas Cook Agreement. The alternative dispute resolution process (the "**ADR Process**") is progressing, and mediation has been scheduled for December 8, 2011.

**D.     The Debtors' proposed assumption of the terminated Thomas Cook Agreement.**

15.     On September 1, 2011, the Debtors filed the Plan, which provides, in pertinent part, that:

> Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease . . . (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor . . .

*See* Plan, Art. XI, cl. 11.1. Subsequently, on October 25, 2011, the Debtors filed the Plan Supplement containing a schedule of derivative contracts that the Debtors intend to assume. *See* Plan Supplement at Ex. 2, Part A. The Plan Supplement specifically designated the Thomas Cook Agreement for assumption. *Id.*

16.     By notice dated October 27, 2011 (the "**Assumption Notice**"), the Debtors notified Thomas Cook that they intend to assume the Thomas Cook Agreement (and any other derivative contracts with Thomas Cook (of which Thomas Cook is aware of none). The Assumption Notice further proposed a "cure" amount of $0.00.[2]

---

[2] Thomas Cook would have liked to have tried to resolve its objection with the Debtors regarding the Assumption Notice on a consensual basis, but due to the very short period of time between receiving the Assumption Notice and the deadline for receipt of this objections, it felt compelled to prepare and file this objection in order to preserve its rights.

## ARGUMENT

**A.    The Contract is not executory and therefore is not capable
of being assumed pursuant to Section 365 of the Bankruptcy Code.**

17.    Section 365 of the Bankruptcy Code authorizes a debtor in possession to "assume or reject any executory contract or unexpired lease," subject to the court's approval. 11 U.S.C. § 365(a). As such, only executory contracts may be assumed by a chapter 11 debtor. The legislative history of section 365 states that "[t]hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R. Rep. No. 95-595, at 347 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6303; *accord NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6 (1984). An executory contract has also been held to be an agreement "in which a party binds itself to perform at some time in the future." *First Intl. Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 443 (1983).

18.    The Thomas Cook Agreement is not executory. As noted above, the agreement was properly terminated by Thomas Cook in accordance with the terms of the underlying agreement. The Debtors have acknowledged that termination in writing. Owing to its termination, there is no future performance required under the agreement by either party, with the exception of liquidating the amount payable as a termination value.

19.    The obligation to pay money at some future date does not make a contract executory. *See In re Chateaugay Corp.,* 130 B.R. 162, 165–166 (Bankr. S.D.N.Y. 1991) ("A debtor's obligation to pay money, standing alone, is insufficient to render a contract executory"); *In re Masters, Inc.,* 141 B.R. 13, 17 (Bankr. E.D.N.Y. 1992), *aff'd,* 149 B.R. 289 (E.D.N.Y. 1992) ("[A] contract is not executory where the only obligation of a party . . . is the payment of money'") (citation omitted); *see also In re Helm,* 335 B.R. 528, 535 (Bankr. S.D.N.Y. 2006)

("[W]here one party has fully performed, and awaits only payment by the other party . . . an agreement is not executory, as performance is complete, with only payment owed") (citation omitted); *but see Lehman Bros. Spec. Fin. v. BNY Corp. Tr. Servs. (In re Lehman Brothers Holdings, Inc.)*, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010) (finding terminated ISDA agreement to be executory where both parties had continuing obligation to pay).[3]

20. As noted above, in connection with two matters before this Court, the Debtors have conceded that the Thomas Cook Agreement was terminated. First, in conjunction with its Derivative Assumption Procedures Motion, the Debtors' counsel confirmed to Thomas Cook's counsel in writing that the agreement was terminated. Thomas Cook relied upon this confirmation to withdraw its objection to the motion. The Debtors are therefore estopped from now taking the opposite position on this issue in connection with their Plan, despite that they apparently believe it may lead to a better result for the estates. *In re Bethlehem Steel Corp.*, 291 B.R. 260, 265 (Bankr. S.D.N.Y. 2003) ("[A]n assertion of a legal right by a debtor that is inconsistent with the debtor's prior words or acts is improper as a matter of law where a non-debtor relied upon such prior words or acts."). Second, in the Claims Objection, the Debtors again confirmed that Thomas Cook's claim arose from a derivatives contract that had "either been terminated or matured pursuant to the terms thereof." Claim Objection at ¶ 11. The Debtors' admission that the contract has terminated is binding on the Debtors and removes from contention whether the Thomas Cook Agreement has been terminated. *Keller v. U.S.*, 58 F.3d

---

[3] The facts here are easily distinguishable from those in *In re Lehman Brothers*. The Thomas Cook Agreement is not an ISDA agreement. It is a Rahmenvertrag für Finanztermingeschäfte, which is governed under German law and contains different provisions. Of particular relevance, unlike the ISDA at issue in *Lehman Brothers*, the Thomas Cook Agreement does not provide for obligations of the parties to continue after termination. Rather, the Thomas Cook Agreement provides that "[i]n the event of termination . . . neither party shall be obligated to make any further payment or perform any other obligation . . . which would have become due on the same day or later; the relevant obligations shall be replaced by compensation claims in accordance with Clauses 8 and 9 [the clauses on which the Thomas Cook Claims are based]." Moreover, Clauses 8 and 9 specify that only *one* party (not both) will have a payment obligation after termination. As a result, any reliance by the Debtors on the *Lehman Brothers* decision noted above would be misplaced.

1194, 1199, n. 8 (7th Cir. 1995) ("Judicial admissions are formal concessions in pleadings[,] . . . may not be controverted at trial . . . [and] have the effect of withdrawing a fact from contention.") (quotations omitted). In any event, the termination is a matter of record and the contract is not executory.

21.    For the foregoing reasons, the Thomas Cook Agreement is not executory and cannot be assumed. As a result, assumption of the Thomas Cook Agreement should be denied. Moreover, because the Thomas Cook Agreement cannot be assumed pursuant to Section 365 of the Bankruptcy Code, the plan would run afoul of Section 1129(a)(1) of the Bankruptcy Code, and thus be unconfirmable, if it provided for the assumption of the Thomas Cook Agreement. See 11 U.S.C. § 1129(a)(1) ("The court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title.") (emphasis added).

### B. The Debtors improperly asserted a cure amount of $0.00 in connection with their purported assumption of the Thomas Cook Agreement.

22.    As noted above, Thomas Cook timely filed the Thomas Cook Claims, by which they have asserted millions of dollars of damages as a result of its proper termination of the Thomas Cook Agreement. Thomas Cook attempted to negotiate with the Debtors regarding the Thomas Cook Claims, but its efforts were largely rebuffed. Finally, the Debtors filed the Claim Objection and opted to bring the dispute over the Thomas Cook Claims before the Court. The claim objection process (and the related ADR Process) is the method the Debtors have chosen for resolution of the Thomas Cook Claims.

23.    Notwithstanding that the claims objection process and the ADR Process are ongoing, the Debtors, by the Assumption Notice, seek effectively to determine the amount of the Thomas Cook Claims, in circumvention of those processes, at $0.00. This end-run should

not be countenanced. After confirming in writing to Thomas Cook that the Thomas Cook Agreement was terminated and objecting to the Thomas Cook Claims on the basis that it was terminated, it is inappropriate for the Debtors now to move to preempt the claims objection process by sending the Assumption Notice, with a cure amount of $0.00, to Thomas Cook. The Debtors' efforts in this regard are particularly troubling, given that Thomas Cook's counsel has formally appeared in these cases, and that Thomas Cook's business people to whom the Assumption Notice was addressed had no reason to expect such a notice (or to understand its potential significance) given the Debtors' prior assurances that the Thomas Cook Agreement was terminated. (Notably, the Debtors appear to have served only Thomas Cook, not its counsel of record.)

24.    Putting aside that the Thomas Cook Agreement is not executory (and thus is not capable of being assumed) and that the process by which the Debtors intend to determine the cure amount necessary to assume the terminated Thomas Cook Agreement is grossly flawed and unfair, as discussed above, the Court should deny assumption of the Thomas Cook Agreement, because the amount of the cure claim asserted in the Assumption Notice is wrong.

25.    As set forth in greater detail in the Claims Objection Response, Thomas Cook had "material reason" under Section 7.1 of the Thomas Cook Agreement to terminate the Thomas Cook Agreement as a result of the bankruptcy filing of LBHI. Thomas Cook timely and properly terminated the Thomas Cook Agreement on September 17, 2008 under Section 7.1 of the Thomas Cook Agreement and replaced all of the terminated fuel hedges that required replacement properly and "without undue delay" as required in accordance with the terms of Section 8.1 the Thomas Cook Agreement and governing German law. As a result of LBHI's bankruptcy filing, and the related termination of the Thomas Cook Agreement and replacement

of certain of the terminated transactions thereunder, Thomas Cook is entitled to millions of dollars of compensation under Section 8.1 of the Thomas Cook Agreement, as set forth in the Thomas Cook Claims.

26.  The Debtors cannot cure their defaults under the Thomas Cook Agreement until the full amount of the Thomas Cook Claims have been paid. To the extent the Debtors do not propose to pay the full amount of the Thomas Cook Claims, the Debtors should not be permitted to assume the Thomas Cook Agreement, and, to the extent the Plan continues to call for the assumption of the Thomas Cook Agreement without payment first of the full amount of the Thomas Cook Claims, the Plan cannot be confirmed for the reason discussed above. See 11 U.S.C. § 1129(a)(1).

## NOTICE OF APPLICABILITY OF FOREIGN LAW

27.  The Thomas Cook Agreement is governed by German law. Thomas Cook therefore anticipates that determination of the validity of the Thomas Cook Claims (and therefore any cure amount that may be owing in respect of the proposed assumption of the Terminated Thomas Cook Agreement, will require a determination of the respective rights of Thomas Cook, LBCS and LBHI under and in respect of the Thomas Cook Agreement by application of German law. Specifically, German law is expected to apply with respect to the following issues, perhaps among others: (i) the appropriate date of termination of the Thomas Cook Agreement, (ii) the timeliness of Thomas Cook's entry into the replacement trades and (iii) the propriety of the replacement trades entered into by Thomas Cook. Thomas Cook hereby provides notice to the Court, the Debtors and parties in interest of the applicability of German law in respect of those issues, perhaps among others, pursuant to F.R.C.P. 44.1, incorporated in this proceeding by Bankruptcy Rule 9017, and reserves the right to supplement this notice to the extent necessary.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Thomas Cook respectfully requests that this Court enter an order (i) denying the Debtors' request to assume the Thomas Cook Agreement, (ii) denying confirmation of the Plan to the extent it provides for the assumption of the Thomas Cook Agreement and (iii) granting such other, further or different relief as this Court deems just and proper.

Dated: November 10, 2011
      New York, New York

      Respectfully submitted,

      **LOEB & LOEB LLP**

      By:   /s/ Walter H. Curchack
          Walter H. Curchack
          Daniel B. Besikof
          345 Park Avenue
          New York, New York  10154
          (212) 407-4000

      *Attorneys for Thomas Cook AG*

# EXHIBIT A

## Daniel B. Besikof

**To:** dbesikof@loeb.com
**Subject:** FW: In re Lehman Brothers Holdings Inc. - Limited Objection of Thomas Cook AG [Docket No. 1832]

**From:** maurice.horwitz@weil.com [mailto:maurice.horwitz@weil.com]
**Sent:** Thursday, December 11, 2008 4:42 PM
**To:** Walter H. Curchack
**Cc:** Daniel B. Besikof; vrubenstein@loeb.com; jay.tabor@weil.com; lori.fife@weil.com; robert.lemons@weil.com
**Subject:** RE: In re Lehman Brothers Holdings Inc. - Limited Objection of Thomas Cook AG [Docket No. 1832]

Thank you for confirming.

Regards,

Maurice Horwitz
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Direct: +1.212.310.8883
Fax: +1.212.310.8007
Email: maurice.horwitz@weil.com

| "Walter H. Curchack" <wcurchack@loeb.com>  12/11/2008 04:19 PM | To <maurice.horwitz@weil.com> |
| --- | --- |
| | cc <vrubenstein@loeb.com>, "Daniel B. Besikof" <dbesikof@loeb.com>, <robert.lemons@weil.com>, <jay.tabor@weil.com>, <lori.fife@weil.com> |
| | Subject RE: In re Lehman Brothers Holdings Inc. - Limited Objection of Thomas Cook AG [Docket No. 1832] |

Dear Maurice,

I have just heard from Thomas Cook, and we do agree to withdraw our objection based on Debtors statement acknowledging that the contract has been terminated and that the debtor will not attempt to assume and assign it.

Regards,

Walter

|  | Walter H. Curchack |
| --- | --- |
| LOEB & LOEB | Partner |
| 345 Park Avenue  New York, NY  10154  www.loeb.com | Direct 212.407.4861  Main 212.407.4000  Fax 212.504.8058  wcurchack@loeb.com |

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this

1

transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

---

**From:** maurice.horwitz@weil.com [mailto:maurice.horwitz@weil.com]
**Sent:** Thursday, December 11, 2008 3:18 PM
**To:** Walter H. Curchack
**Cc:** vrubenstein@loeb.com; Daniel B. Besikof; robert.lemons@weil.com; jay.tabor@weil.com; lori.fife@weil.com
**Subject:** In re Lehman Brothers Holdings Inc. - Limited Objection of Thomas Cook AG [Docket No. 1832]
**Importance:** High


Dear Walter,

    Regarding Thomas Cook AG's objection [Docket No. 1832] to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Docket No. 1498], the Debtors acknowledge the valid termination of the contracts identified in your objection. Therefore, the Debtors will not be seeking to assume and assign such contracts pursuant to the procedures set forth in the proposed Order. We assume this resolves your objection, but request that you confirm as much as soon as possible.

Regards,

---
Maurice Horwitz
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Direct: +1.212.310.8883
Fax: +1.212.310.8007
Email: maurice.horwitz@weil.com

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.


The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.

2