Hearing Date: December 6, 2011 at 10:00 a.m.
Objections Due: November 10, 2011 at 4:00 p.m.

Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

Bryan Krakauer
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7515
Fax: (312) 853-7036

*Counsel For UniCredit Bank AG, London Branch*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Lehman Brothers Holdings Inc., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

---

**OBJECTION OF UNICREDIT BANK AG, LONDON BRANCH WITH RESPECT TO RUBY FINANCE PUBLIC LIMITED COMPANY SERIES 2005-1 CLASS A2 NOTES, CLASS A3 NOTES, CLASS A4 NOTES, CLASS A5 NOTES, CLASS A6 NOTES, CLASS A7 NOTES, CLASS A8 NOTES AND CLASS A9 NOTES TO THE DEBTORS' PROPOSED ASSUMPTION OF AN ISDA MASTER AGREEMENT AND THE TRANSACTIONS THEREUNDER PURSUANT TO THE CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

UniCredit Bank AG, London Branch ("UniCredit"), by and through its undersigned counsel, hereby files this objection and reservation of rights (this "Objection") with respect to the notes of Ruby Finance Public Limited Company ("Ruby") having the following series and class designations: Series 2005-1 Class A2 EUR 500,000 Notes, Class A3 EUR 5,800,000 Notes, Class A4 EUR 3,000,000 Notes, Class A5 EUR 1,000,000 Notes, Class A6 EUR 500,000 Notes,

Class A7 EUR 5,500,000 Notes, Class A8 EUR 1,700,000 Notes and Class A9 EUR 1,000,000 Notes (collectively, the "Ruby A2-A9 Notes"), to the proposed assumption by the above captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant to Sections 11.1 and 11.2 of the Debtors' Third Amended Joint Chapter 11 Plan, of certain derivatives contracts between Ruby and Lehman Brothers Special Finance Inc. ("LBSF").  UniCredit acquired the Ruby A2-A9 Notes, and remains an economically interested party in the transactions described in this Objection.  In support of this Objection, UniCredit states as follows:

## I. RELEVANT BACKGROUND

### A. The Transactions were Entered Into and Terminated

1. Ruby is a special purpose entity formed to issue notes secured by assets held in trust pursuant to a multi-issuer secured obligation program (the "Program") arranged by Lehman Brothers International (Europe) ("LBIE"), as evidenced by a Principal Trust Deed dated October 10, 2002, as amended and restated from time to time, between Dante Finance Public Limited Company ("Dante") and BNY Corporate Trustee Services Limited (as successor trustee to J.P. Morgan Corporate Trustee Services Limited, the "Trustee") (the "Principal Trust Deed"), to which Program Ruby acceded by executing deeds of accession from time to time.  On information and belief, the Principal Trust Deed was supplemented pursuant to a Supplemental Trust Deed and Drawdown Agreement dated 16 September 2005, among Ruby, the Trustee, LBSF, LBIE and certain other parties (the "Supplemental Trust Deed"; and the Principal Trust Deed, as so supplemented by the Supplemental Trust Deed, being the "Trust Deed").  Ruby issued, among other securities, the Ruby A2-A9 Notes under and pursuant to the Trust Deed. The terms of the Trust Deed specify that it is to be governed by English law.

2. On October 10, 2002, Dante and LBSF entered into an ISDA Master Agreement (as amended and restated from time to time, the "ISDA Master Agreement"),

1

pursuant to which Ruby and LBSF entered into a credit default swap agreement evidenced by a confirmation dated August 18, 2005 (the "Confirmation").  Pursuant to the Confirmation, Ruby and LBSF entered into eight separate credit derivative transactions, each in respect of one of the above-listed Classes of Ruby A2-A9 Notes (each such transaction, a "Transaction" and collectively, the "Transactions").

3. The terms of each of the ISDA Master Agreement, the Confirmation and each of the Transactions thereunder are governed by English law.

4. Lehman Brothers Holdings Inc. ("LBHI") served as the credit support provider, or guarantor, of LBSF's obligations under the ISDA Master Agreement and the Confirmation.

5. On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates, commenced the above-captioned chapter 11 cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

6. On October 3, 2008, LBSF commenced its chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

7. On October 28, 2008, pursuant to the terms of the ISDA Master Agreement, Ruby sent a notice (the "Default Notice") to LBSF specifying that an Event of Default[1] had occurred under Section 5(a)(vii) of the ISDA Master Agreement as a result of LBSF's bankruptcy filing.  In the Default Notice, Ruby also designated October 31, 2008 as the Early Termination Date in respect of all Transactions under the ISDA Master Agreement.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in or pursuant to the ISDA Master Agreement.

UniCredit believes the Default Notice was valid in accordance with the terms of the applicable documents and applicable law.

8. On December 23, 2008, pursuant to the terms of the ISDA Master Agreement, Ruby sent a letter (the "Statement of Close-Out Calculation") to LBSF specifying, among other things, the Settlement Amount and the Unpaid Amounts payable in respect of the Early Termination Date pursuant to the ISDA Master Agreement. UniCredit also believes the Statement of Close-Out Calculation was valid in accordance with the terms of the applicable documents and applicable law.[2]

B. LBSF Commences an Adversary Proceeding against Ruby

9. On October 1, 2010, LBSF commenced an adversary proceeding captioned LBSF v Bank of America, N.A. et al., Adv. Pro. No. 10-03547 (JMP) (the "Adversary Proceeding") against Ruby ("Ruby Finance PLC, f/a/o the Series 2005-1"), together with other named defendants, by filing a first amended complaint (the "Complaint") seeking, among other things (i) declaratory judgment that certain clauses modifying LBSF's right to priority of payment under certain transaction documents related to credit default swap agreements, based solely upon LBSF and its ultimate parent, LBHI, filing for bankruptcy, constitute unenforceable *ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1) and (ii) alternatively, judgment that such modification of priority constitutes a preferential transfer, or a constructive fraudulent transfer, to or for the benefit of the defendant noteholders and their related trustees

---

[2] On September 27, 2011, almost three years after Ruby's designation of an Early Termination Date under the ISDA Master Agreement, LBSF sent a letter to Ruby in respect of the Ruby Class A2-A9 Notes which (without prejudice to LBSF's rights to dispute the termination of the Transactions and the designation of the Early Termination Date) purported to recalculate close-out amounts payable in connection with Ruby's earlier termination of the Transactions, and demand payment of such amounts from Ruby (with interest calculated at a rate selected by LBSF). UniCredit believes the contentions set forth in LBSF's letter are without foundation.

3

that is avoidable pursuant to sections 547 or 548 (as applicable) of the Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy Code, LBSF is entitled to recover and preserve its senior payment priority for the benefit of its estate.

10. On October 20, 2010, the Bankruptcy Court entered an order staying several avoidance actions, including, the Adversary Proceeding, such that (i) all applicable deadlines (other than those related to completion of service) were suspended, (ii) all discovery and pre-trial conferences were not to be conducted, and (iii) all motion practice and contested hearings or trials were prohibited. Such stay has been subsequently extended and remains in place on the date on which this Objection is filed.

11. To date, alternative dispute resolution proceedings have not been commenced with respect to the ISDA Master Agreement and the Transactions.

C. Ambiguity Over What LBSF Seeks to Assume

12. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed their Third Amended Joint Chapter 11 Plan (the "Plan"). On September 1, 2011, this Court approved the Debtors' Disclosure Statement for the Plan and scheduled the hearing for confirmation of the Plan to be held at 10:00 a.m. on December 6, 2011.

13. On October 25, 2011, the Debtors filed their plan supplement to the Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivative contracts as contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Plan (the "Confirmation Order"). Exhibit 2 of the Plan Supplement identifies the

4

NY1 7900564v.1

following title of a specific derivative contract between "RUBY FINANCE 2005-1 Classes A2-A9" and LBSF: "1992 ISDA MA - Multi-Currency Cross Border dated on 10/10/2002". This would appear to identify the ISDA Master Agreement, but not any specific Transactions thereunder.

14. The notes on the cover of Exhibit 2 of the Plan Supplement provide that unless a specific derivatives contract is noted for a specific counterparty, the applicable Debtor intends to assume all derivative contracts with each counterparty set forth on Exhibit 2, Part A. The notes further state that where a specific derivatives contract has been indicated, the applicable Debtor intends to assume the identified derivatives contract and to reject all other derivatives contracts with the applicable counterparty. It is unclear from the Debtors' Exhibit 2 whether the Debtors are seeking to assume the Confirmation (and all Transactions thereunder) and the ISDA Master Agreement or whether they are seeking to assume solely the ISDA Master Agreement and to reject the Confirmation (and all Transactions thereunder). In part because of the sheer lack of available information regarding the Debtors' intentions, UniCredit is compelled to file this Objection.[3] UniCredit further objects to any assumption of these agreements on the grounds that the Debtors have failed to provide adequate notice of exactly what it is that they intend to assume and what they intend to reject in respect of each of the Transactions.

II. **OBJECTION**

    A. <u>The Transactions Cannot be Assumed</u>

15. If the Debtors' are seeking to assume or reject the Transactions, or any portion thereof, such assumption or rejection must, as a threshold matter, be denied because each

---

[3] Counsel for UniCredit contacted counsel for the Debtors for further information, and while additional general information was provided, the Debtors did not provide specific information as to their intentions with respect to Ruby's derivative contracts. Counsel for UniCredit continues to communicate with counsel for the Debtors in an attempt to reach a resolution, but as of the objection deadline, no such resolution was reached.

5

NY1 7900564v.1

of the Transactions has been terminated more than three years ago, rendering the Transactions non-executory and, thus, not capable of being assumed or rejected under section 365 of the Bankruptcy Code.  Section 365 of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

16.     Courts in the Second Circuit consistently have held that section 365 of the Bankruptcy Code does not permit assumption of a contract or lease that has expired by its own terms or has been terminated under applicable law, in as much as then there is nothing left for the debtor to assume or reject and section 365 of the Bankruptcy Code cannot apply.  See In re Project Orange Associates, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); see also Bell v. The Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996) (stating that "[o]nce a lease is terminated, however, nothing remains for a debtor to assume under section 365.").  Thus, upon the termination of the Transactions three years ago, the Transactions no longer constituted executory contracts and, accordingly, the Transactions cannot be assumed or rejected pursuant to section 365 of the Bankruptcy Code.

17.     Each of the Transactions is a "swap agreement" that was properly terminated pursuant to section 560 of the Bankruptcy Code.  Each Transaction is a "swap agreement" as that term is defined under section 101(53B) of the Bankruptcy Code; Ruby, as an entity that had an outstanding swap agreement with LBSF prior to the commencement of its bankruptcy case, is a "swap participant" afforded all of the safe harbor protections under the Bankruptcy Code, including, but not limited to, under sections 362(b)(17), 362(b)(27), 362(o),

6

546(g), 553, 560 and 561 of the Bankruptcy Code. The Debtors have not challenged that each Transaction is, or that the ISDA Master Agreement together with the Confirmation constitutes, a "swap agreement" or that Ruby is a "swap participant".

18. As described above, and in accordance with section 560 of the Bankruptcy Code, upon the occurrence of the Event of Default, Ruby delivered on October 28, 2008 the Default Notice terminating the Transactions under the Confirmation. Accordingly, because the Transactions were properly terminated by Ruby, they are not executory contracts and, therefore, the Debtors (particularly, LBSF) cannot assume the Confirmation, or the Transactions thereunder, under section 365 of the Bankruptcy Code.

B. <u>Any Dispute as to the Termination of the Transactions or Challenge to any Calculations or Other Actions Relating to such Termination is Presently Before the Bankruptcy Court in the Adversary Proceeding</u>

19. The Debtors' listing of the ISDA Master Agreement on Exhibit 2 to the Plan Supplement (filed at 11:30 p.m. on October 25, 2011) buried as an exhibit in over 1000 pages of documents scheduled thereto, not only raises due process concerns, but also is an improper procedure for seeking to challenge the termination of the Transactions and/or any calculations or other actions relating to such termination. Although the Debtors have purported to serve Ruby with notice of the proposed assumption and cure amount pursuant to a notice of assumption dated October 27, 2011 (the "<u>Assumption Notice</u>"), on information and belief, to the date of this Objection, Ruby has not yet received a copy of the Assumption Notice directly from the Debtors. Further, nothing in the Assumption Notice indicates on what legal or factual basis the Debtors may challenge the termination.

20. Putting aside the obvious due process issues, seeking mass contract assumption pursuant to the Plan confirmation process is not the proper procedure for seeking to

challenge the termination of the Transactions and/or any calculations and other actions relating thereto. As noted above, the dispute between Ruby and LBSF on the termination of the Transactions and any calculations and other actions relating to such termination is presently before this Court in the Adversary Proceeding. Further, such termination and other actions are matters governed by English law and most appropriately matters for the English Courts to address.

21. Indeed, the Debtors should not be allowed to use the proposed assumption or rejection of the Confirmation, the Transactions and/or the ISDA Master Agreement as an end run around appropriate procedures and forums. If the Confirmation and the Transactions under the ISDA Master Agreement were determined to be assumed or rejected pursuant to the Plan and Confirmation Order, then Ruby's actions to terminate the Transactions would arguably be put in question, and Ruby and its noteholders (including UniCredit) would be denied the appropriate opportunity for Ruby (or such noteholders) to have notice of the Debtors' contentions, propound discovery on the Debtors, provide evidence in opposition to the Debtors' contentions, fully brief the issues as contemplated as part of the Adversary Proceeding or, most appropriately, dispute such contentions under governing English law in the English Courts.

22. The need for substantive contract matters governed by English law and involving transactions entered into in England to be heard by the English Courts is important. Each of the Trust Deed, the ISDA Master Agreement, the Confirmation and each of the Transactions thereunder is specifically governed by English law and subject to the jurisdiction of English Courts. Consequently, any challenges by the Debtors to the termination of the Transactions and/or any calculations or other actions relating thereto that are the subject of the

Adversary Proceeding properly should be tried by the Debtors in English Courts. UniCredit believes that English Courts provide the only appropriate forum for such matters.

C.    The Transactions Have Expired in Accordance with their Terms

23.    The Debtors' assumption request should also be denied for an additional independent reason. Even if the termination by Ruby of the Transactions as described above was for some reason not effective, the Transactions would have expired on their own terms and therefore would be non-executory as of the time of such expiration. As noted above, Courts in the Second Circuit have unequivocally found that a counterparty cannot assume or reject a contract that has expired in accordance with its own terms because such a contract cannot be said to be "executory" under any reasonable interpretation of this term, under the Bankruptcy Code or otherwise. See In re Project Orange Associates, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010)

24.    The Confirmation has a Scheduled Termination Date of September 20, 2010, which applies to each of the Transactions. Assuming that any of the conditions which could give rise to an extension of the Termination Date beyond the Scheduled Termination Date was in effect on September 20, 2010 (for example, a Credit Event Notice and/or a Notice of Publicly Available Information was delivered to Ruby in relation to a Credit Event on or before September 17, 2010) it would not be possible for the ultimate Termination Date to extend beyond February 14, 2011. Consequently, even if for some reason it could be found that the Transactions were not properly terminated, the Transactions under the Confirmation expired in accordance with their own terms well before the Debtors filed the Plan Supplement identifying the derivative contracts to be assumed by LBSF.

25.    In fact, the Notice of Assumption itself provides that the "Debtors currently propose to assume the executory contracts or unexpired leases listed on Exhibit A

NY1 7900564v.1

hereto … to the extent not already rejected by Court order or <u>expired by its terms</u>." (*emphasis added*).  It is clear then that the Debtors have allowed for the possibility that they may mistakenly identify already expired agreements as executory contracts which they wish to assume.  As the Confirmation, and all of the Transactions thereunder, have either been properly terminated by Ruby or have by now demonstrably expired by their own terms, they cannot be subject to the Debtors' assumption or rejection pursuant to their Plan and entry of the Confirmation Order.

       D.      <u>Effect of Assumption of Solely the ISDA Master Agreement</u>

           26.      Given the ambiguity of what the Debtors are seeking to assume, Exhibit 2 of the Plan Supplement must be clarified, and any Order approving the assumption of the ISDA Master Agreement must clearly state that only the ISDA Master Agreement and not any of the Transactions is being assumed.  Moreover, to the extent that LBSF is seeking to assume solely the ISDA Master Agreement and not the Confirmation or the Transactions, then LBSF is required to assume the ISDA Master Agreement *cum onere*.  <u>See</u> <u>AGV Productions, Inc., v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp.</u>, 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing <u>National Labor Relations Board v. Bildisco and Bildisco</u>, 465 U.S. 513, 531 (1984) (holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its <u>benefits and burdens</u>.") (*emphasis added*); <u>see also</u> <u>In re Atlantic Computer Sys., Inc.</u>, 173 B.R. 844, 849 (S.D.N.Y. 1994) (noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject).  Accordingly, if the Court approves LBSF's assumption of solely the ISDA Master Agreement, then LBSF must assume the ISDA Master Agreement *cum onere* and therefore be subject to all of the terms and provisions of the ISDA Master Agreement.

       E.      <u>The Debtors May Not Assume the ISDA Master Agreement or any of the Transactions Unless LBSF Cures All Existing Defaults</u>

10

27. Section 365 of the Bankruptcy Code requires that in order for a debtor's trustee to assume any executory contract, the trustee must cure all existing defaults (or provide adequate assurance thereof), compensate the counter-party to the agreement for any pecuniary losses resulting from such defaults (or provide adequate assurance thereof) and provide adequate assurance of future performance under such contract. 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996). The language of section 365(b)(1) is unequivocal that a party to an executory contract must be paid all amounts due under the contract before the contract may be assumed. In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996). Here, the Debtors must cure all known defaults under the ISDA Master Agreement (or adequately assure that such cure will promptly be forthcoming), compensate Ruby for its actual pecuniary loss resulting from LBSF's default (or provide Ruby adequate assurance thereof) and provide adequate assurance of the future performance of all applicable obligations under the ISDA Master Agreement before the ISDA Master Agreement may be assumed.

28. By way of example, notwithstanding the designation in Exhibit A of the Notice of Assumption of a cure amount of zero, the Debtors will be aware that LBSF, as the Fixed Rate Payer under each of the Transactions, has not made a payment of the Fixed Amount in respect of a single Fixed Rate Payer Calculation Period since the Petition Date. Any reasonable calculation of a cure amount would necessarily include the cumulative value of all such missed payments, with interest accruing thereon at the Applicable Rate.

29. Given the lack of information and clarity of the Debtors' intentions and complex nature of swap transactions, no serious attempt has been made to identify cure amounts, or any other defaults which must be cured, or any steps to be taken to assure future contract performance, in order to assume these contracts, and until the Debtors provide clarity, all of

11

Ruby's rights for payment of cure, for compensation in respect of pecuniary losses and for assurance as to future performance, prior to any assumption by LBSF are reserved.

### III. **RESERVATION OF RIGHTS**

30. UniCredit hereby reserves all of its rights and remedies under the ISDA Master Agreement, the Confirmation, the Transactions and all ancillary documents related thereto, including, without limitation, the Default Notice, the Statement of Close-Out Calculation, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver of any of such rights or remedies. To the extent the Debtors seek to modify Ruby's or UniCredit's rights under the ISDA Master Agreement, the Confirmation, the Transactions and/or any ancillary documents related thereto, including, without limitation, the Default Notice and the Statement of Close-Out Calculation, through assumption, or through any other provision of the Plan or Confirmation Order, UniCredit asserts that such attempt must be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the Plan shall in any way limit, affect or modify: (i) any rights of Ruby or UniCredit under the ISDA Master Agreement, the Confirmation and the Transactions and all ancillary documents related thereto, including, without limitation, the Default Notice or the Statement of Close-Out Calculation, or (ii) any defenses (including any right of setoff or recoupment) of Ruby or UniCredit.

WHEREFORE, without in any way limiting its rights, UniCredit hereby respectfully requests that the Court (i) deny the relief requested by the Debtors with respect to the ISDA Master Agreement, the Confirmation and the Transactions; and (ii) grant such other relief as is requested by UniCredit herein or that is otherwise just and proper.

NY1 7900564v.1

Dated: November 10, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Alex R. Rovira

Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599


Bryan Krakauer
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7515
Facsimile: (312) 853-7036

13