**Hearing Date: December 6, 2011 at 10:00 a.m.**
**Objections Due: November 10, 2011 at 4:00 p.m.**

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Steven J. Fink
Thomas C. Mitchell
51 West 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

*Counsel For Ballyrock ABS CDO 2007-1 Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Lehman Brothers Holdings Inc., *et al.*, | : | Case No. 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

**BALLYROCK ABS CDO 2007-1 LIMITED'S OBJECTION TO THE DEBTORS' PROPOSED ASSUMPTION OF DERIVATIVES CONTRACTS PURSUANT TO THE CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

Ballyrock ABS CDO 2007-1 Limited ("Ballyrock"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the proposed assumption by the above captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant to Sections 11.1 and 11.2 of the Debtors' Third Amended Joint Chapter 11 Plan, of certain derivatives contracts between Ballyrock and Lehman Brothers Special Finance, Inc. ("LBSF"). In support of its Objection, Ballyrock states as follows:

I.  **RELEVANT BACKGROUND**

   A.  *Termination Of The Swap Transaction*

   1.  Ballyrock is a special purpose entity formed to issue notes secured by assets held in trust pursuant to an indenture (the "Indenture") among Ballyrock, as Issuer, Ballyrock ABS CDO 2007-1 Inc., as Co-Issuer, and Wells Fargo Bank, N.A., as Trustee.

   2.  On July 12, 2007, Ballyrock and LBSF entered into that certain ISDA Master Agreement (as amended, supplemented or otherwise modified from time to time, and including all annexes, schedules, exhibits, confirmations and any related agreements and other documents, collectively, the "ISDA Master Agreement").  Pursuant to the ISDA Master Agreement, Ballyrock and LBSF entered into a credit default swap transaction (the "CDS"). Lehman Brothers Holdings, Inc. ("LBHI") served as the credit support provider, or guarantor in connection with the CDS.  Thus, under appropriate circumstances (which are not present here), only LBSF, and not LBHI, could have any potential right to assume the CDS.

   3.  On September 15, 2008 (the "Petition Date"), LBHI, and certain of its affiliates (but not LBSF), commenced the above-captioned chapter 11 cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

   4.  On September 16, 2008, pursuant to the terms of the ISDA Master Agreement, Ballyrock sent a notice (the "Default Notice") to LBSF specifying that an Event of Default[1] had occurred and was continuing under Section 5(a)(vii) of the ISDA Master Agreement as a result of LBHI's bankruptcy filing.  In the Default Notice, Ballyrock also

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ISDA Master Agreement.

1

designated September 16, 2008 as the Early Termination Date in respect of all Transactions under the ISDA Master Agreement.

5. On October 3, 2008, LBSF commenced its chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

B. *LBSF Commences An Adversary Proceeding Against Ballyrock*

6. On February 3, 2009, LBSF commenced an adversary proceeding (the "Adversary Proceeding") against Ballyrock by filing a complaint (the "Complaint") seeking, among other things (i) a declaratory judgment that a proposed distribution of collateral to noteholders would be improper because the provision by which such distribution was to be made constituted an unenforceable penalty or forfeiture under New York law and was invalid under the Bankruptcy Code's ipso facto provisions; (ii) a declaratory judgment that the termination of the CDS was improper because it violated the Indenture; and (iii) an injunction preventing Ballyrock and the Trustee from taking any action in furtherance of the termination of the CDS or the distribution to noteholders based on the same grounds.

7. On March 31, 2009, Ballyrock filed a motion to dismiss the Complaint and on May 12, 2011, this Court denied Ballyrock's motion to dismiss but held that Ballyrock had indeed properly terminated all outstanding Transactions under the ISDA Master Agreement, including the CDS. See *LBSF v. Ballyrock ABS CDO 2007-1 Limited*, Adv. Pro. No. 09-01032 (Bankr. S.D.N.Y. May 12, 2011). On June 28, 2011, Ballyrock, among others, filed a motion with the United States District Court for the Southern District of New York for leave to appeal the Bankruptcy Court's denial of its motion to dismiss. Ballyrock's motion for leave to appeal the denial of its motion to dismiss was denied on November 3, 2011.

2

      *C.*    *LBSF Seeks The Assumption Of The ISDA Master Agreement*

      8.    On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed their Third Amended Joint Chapter 11 Plan (the "Plan"). On September 1, 2011, this Court approved the Debtors' Disclosure Statement for the Plan and scheduled the hearing for confirmation of the Plan to be held at 10:00 a.m. on December 6, 2011.

      9.    On October 25, 2011, the Debtors filed their plan supplement to the Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivative contracts as contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Plan (the "Confirmation Order"). Exhibit 2 of the Plan Supplement does not specify the title of any specific derivative contract between Ballyrock and LBSF. The notes on the cover of Exhibit 2 provide that unless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivative contracts with each counterparty set forth on Exhibit 2, Part A. Accordingly, although unclear from the Debtors' Exhibit 2, it appears that the Debtors are seeking to assume the CDS and the ISDA Master Agreement. Because of the sheer lack of information regarding the Debtors' intentions, Ballyrock is compelled to file this Objection.

## II. **OBJECTION**

    A.    The CDS Cannot Be Assumed

      10.    If LBSF is seeking to assume the CDS, such assumption must be denied because Ballyrock terminated the CDS more than two years ago, and prior to LBSF's bankruptcy filing, rendering the CDS non-executory and, thus, non-assumable under section 365 of the

3

Bankruptcy Code. Section 365 of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts in the Second Circuit have defined the term "executory contract" by reference to Professor Vern Countryman's definition, which provides that an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." See In re The Penn Traffic Company, et al., 524 F.3d 373, 379 (2d Cir. 2008) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973)).

11. Courts in the Second Circuit have consistently held that section 365 of the Bankruptcy Code applies only if the contract or lease is in existence at the commencement of the case. Where such contract or lease has expired by its own terms or has been terminated under applicable law, there is nothing left for the debtor to assume or reject and section 365 of the Bankruptcy Code cannot apply. See In re Project Orange Associates, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. § 362 nor may it be assumed by the debtor under 11 U.S.C. §365."); see also Bell v. The Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996) (stating that "[o]nce a lease is terminated, however, nothing remains for a debtor to assume under section 365."). Thus, upon the termination of the CDS more than two years ago, such agreement no longer constitutes an executory contract and, accordingly, the CDS cannot be assumed pursuant to section 365 of the Bankruptcy Code.

4

12. As this Court has already held, "Ballyrock complied with the provisions of the Ballyrock Master Agreement and did all that was necessary to designate an Early Termination Date, terminate all outstanding Transactions, and establish the obligation of the out-of-the money party to pay the termination payment." See <u>LBSF v. Ballyrock ABS CDO 2007-1 Limited</u>, Adv. Pro. No. 09-01032 (Bankr. S.D.N.Y. May 12, 2011). Accordingly, because the CDS was terminated by Ballyrock, it is not an executory contract and therefore, LBSF cannot assume the CDS under section 365 of the Bankruptcy Code. Even if LBSF was to assert that the termination was barred by the automatic stay (a position that it has not taken to date), LBSF's position would be incorrect because the CDS is a "swap agreement" that would be properly terminated pursuant to section 560 of the Bankruptcy Code due to LBHI's bankruptcy filing.

B. Any Dispute As To The Termination Of The Swap Transaction Or Challenge To The Early Termination Payment Is Properly Before The Bankruptcy Court In The Adversary Proceeding

13. The Debtors listed Ballyrock on Exhibit 2 to the Plan Supplement – which was filed at 11:30 p.m. on October 25, 2011 and buried as an exhibit in over 1000 pages of documents scheduled thereto – without specifying the title or date of any specific derivative contract to be assumed between Ballyrock and LBSF. Seeking mass contract assumption pursuant to the Plan confirmation process is not the proper procedure for seeking to challenge the termination of the CDS and/or disputing the distribution of collateral to noteholders.

14. As noted above, the dispute between Ballyrock and LBSF concerning the distribution of collateral to noteholders upon termination of the CDS is presently before this Court in the Adversary Proceeding. Regardless of whether the proposed assumption of derivative contracts is for the assumption of the CDS, the ISDA Master Agreement or some other unidentified derivative contracts between Ballyrock and LBSF, such proposed assumption

5

should not in any way affect the Adversary Proceeding currently pending between Ballyrock and LBSF.

15. Indeed, the Debtors should not be allowed to use the proposed assumption of the CDS and ISDA Master Agreement as an end run around the Adversary Proceeding. If the CDS and the ISDA Master Agreement were determined to be assumed pursuant to the Plan and Confirmation Order, then Ballyrock's actions to terminate the CDS would arguably be undone, and Ballyrock and the noteholders would be irreparably harmed without any opportunity for Ballyrock to propound discovery on the Debtors as to the merits of the adversary proceeding, provide evidence in support of their positions, or fully brief the issues.

C. Assumption Of Solely The ISDA Master Agreement

16. If the Debtors are seeking to assume the ISDA Master Agreement separately, such assumption must also be denied because the ISDA Master Agreement is not an executory contract. The ISDA Master Agreement is an umbrella agreement that sets forth the general terms and conditions that apply to transactions the core economic terms of which are separately negotiated and documented (e.g., the Confirmations). *See Swedbank AB (PUBL) v. Lehman Brothers Holdings Inc. (In re Lehman Brothers Holdings Inc.)*, 445 B.R. 130, 132 n.1 (S.D.N.Y. 2011) (explaining that the ISDA Master Agreement functions as an umbrella agreement). As such, the ISDA Master Agreement is an "agreement to agree." *See* ISDA Master Agreement, prefatory clause ("[The parties] . . . anticipate entering into one or more transactions . . . that . . . will be governed by this Master Agreement."). No party has any performance obligations under the ISDA Master Agreement as a standalone document. *See* 1 *Williston on Contracts* § 1:2 (4th ed. rev. 2011) ("[A] so-called 'agreement to agree,' an understanding that leaves an essential element of a promise open for future negotiation and

6

agreement, constitutes no promise, and creates no legal obligation until the future agreement is actually made."). Accordingly, the ISDA Master Agreement is not an executory contract and cannot be assumed.

17. Even if the Court were to determine that the ISDA Master Agreement is itself executory, moreover, given the ambiguity of what the Debtors are seeking to assume pursuant to Exhibit 2 of the Plan Supplement, any Confirmation Order approving the assumption of the ISDA Master Agreement must clearly state that only the ISDA Master Agreement, and not the CDS, is being assumed. Moreover, to the extent that LBSF is seeking to assume solely the ISDA Master Agreement and not the CDS, then LBSF is required to assume the ISDA Master Agreement *cum onere*. See AGV Productions, Inc., v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp., 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984) (holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of it benefits and burdens."); see also In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994) (noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves LBSF's assumption of solely the ISDA Master Agreement, then LBSF must assume the Master Agreement *cum onere* and therefore be subject to all of the terms and provisions of the ISDA Master Agreement.

    D.    The Debtors May Not Assume The ISDA Master Agreement,
If At All, Unless The Debtors Cure All Existing Defaults
And Provide Adequate Assurance Of Future Performance

18. Section 365 of the Bankruptcy Code requires that, in order for a Debtor to assume any executory contract, the debtor must cure all existing defaults and compensate the counterparty to the agreement for any pecuniary losses resulting from such defaults or provide

7

adequate assurance that the trustee will promptly cure and provide such compensation.  See 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see also In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996).  The language of section 365(b)(1) is unequivocal in that a party to an executory contract must be paid all amounts due under the contract before the contract may be assumed.  In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996).  Here, the Debtors must cure all known defaults and assume all obligations before the ISDA Master Agreement may be assumed.

19. In addition, pursuant to section 365(b)(1)(C), in order for LBSF to assume an executory contract, it must provide adequate assurance of future performance.  See 11 U.S.C. § 365(b)(1)(C).  LBSF has not provided any evidence or other adequate assurance of its ability to perform the ISDA Master Agreement, and likely cannot provide such evidence since it is liquidating.

## III.   RESERVATION OF RIGHTS

20. Ballyrock hereby reserves all of its rights and remedies under the ISDA Master Agreement, the CDS and all ancillary documents related thereto, including, without limitation, the Default Notice, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver of any of such rights or remedies.  To the extent the Debtors seek to modify Ballyrock's rights under the ISDA Master Agreement or the CDS through assumption, or through any other provision of the Plan or Confirmation Order, Ballyrock asserts that such attempt must be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the Plan shall in any way limit, affect or modify: (i) an rights of Ballyrock under the ISDA Master Agreement, the CDS

8

and all ancillary documents related thereto or (ii) any defenses (including any right of setoff or recoupment) of Ballyrock.

WHEREFORE, without in any way limiting its rights, Ballyrock hereby respectfully requests that the Court (i) deny LBSF's assumption of the CDS; (ii) find that LBSF may not assume the ISDA Master Agreement, if at all, unless it promptly cures and provides for compensation for all defaults under the ISDA Master Agreement and provides adequate assurance of future performance; (iii) specifically provide in the Confirmation Order that LBSF will assume all obligations and liabilities under the ISDA Master Agreement; and (iv) grant such other relief that is just and proper.

Dated: November 10, 2011

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

/s/ Steven J. Fink

Steven J. Fink
Thomas C. Mitchell
51 West 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

*Counsel For Ballyrock ABS CDO 2007-1 Limited*

9