**Objection Date and Time: November 10, 2011 at 4:00 p.m. (prevailing Eastern time)**

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top III (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000

Craig M. Price (CP 9039)
Laura E. Appleby (LA 4879)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**PROTECTIVE OBJECTION OF BANK OF MONTREAL TO THE NOTICE OF PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

Bank of Montreal ("*BMO*"), by its undersigned attorneys, respectfully submits this protective objection (the "*Objection*") to the Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan (the "*Proposed Plan*") Pursuant to section 1121 of the Bankruptcy Code (the "*Notice*") and in support thereof, respectfully states as follows:[1]

---

[1] Terms not defined herein shall have the meaning ascribed to them in the Proposed Plan and Disclosure Statement (each as defined herein).

**BACKGROUND**

1. BMO is a party with Lehman Brothers Special Financing Inc. (*"LBSF"*) to an ISDA Master Agreement (multi-currency cross-border) dated as of April 13, 1994, as amended by an Amendment to ISDA Master Agreement dated as of December 16, 1997, and as further amended or restated from time to time between the parties (the *"Master Agreement"*). Lehman Brothers Holdings, Inc. (*"LBHI"*) unconditionally guaranteed the Master Agreement. In connection with the Master Agreement and related Credit Support Annex, BMO posted certain collateral with LBSF (the *"Posted Collateral"*).

2. Pursuant to the terms of the Master Agreement, the commencement of the chapter 11 case by LBHI on September 15, 2008 constituted an Event of Default. (Master Agreement § 5(a)(vii)(4).) On September 16, 2008, pursuant to section 6(a) of the Master Agreement, BMO gave notice of default and termination (the *"Termination Notice"*) to Debtors and designated September 17, 2008 as the early termination date.[2]

3. On September 30, 2008, pursuant to the terms of the applicable Credit Support Annex, BMO, as Pledgor, delivered a notice to Debtors in which BMO demanded the return of the Posted Collateral from Debtors. Pursuant to the terms of the Credit Support Annex, LBSF was holding BMO's Posted Collateral, which consisted of bonds and other securities having a value of approximately $101,200,000.[3]

4. Thereafter, on January 5, 2009, pursuant to section 6(d)(i) of the Master Agreement, BMO provided Debtors with a Statement of Calculation of the amount due by LBSF

---

[2] The Termination Notice was delivered in compliance with the safe harbor provisions of the U.S. Bankruptcy Code. *See* 11 U.S.C. §§ 556-62 (derivatives safe harbor provisions allowing for post-petition termination).

[3] Any funds or securities held by Debtors relating to the Posted Collateral are not property of Debtors' estates but are property of BMO, and that possession or assertion of rights over such funds, property or collateral by Debtors does not transform such funds, property, collateral or proceeds thereof into property of Debtors' estates.

to BMO under the Master Agreement (the "*Statement of Calculation*").  In accordance with the terms of the Master Agreement, as the non-defaulting party, BMO calculated the amounts outstanding consistent with the valuation methodology contained therein.  Using such methodology, BMO initially calculated that Debtors owed BMO approximately $22,636,598.75 plus costs and interest.  This amount does not include any substitute securities that BMO may have been obligated to purchase to replace certain Posted Collateral.

5. On September 21, 2009, BMO filed a Proof of Claim with respect to both its Claim against LBSF and its Claim based on LBHI's guarantee of LBSF's obligations under the Master Agreement.

6. Pursuant to the Plan Supplement, filed on October 28, 2011 (the "*Plan Supplement*"), Debtors are seeking to assume the Master Agreement.  (*See* Plan Supplement at 342 [Docket No. 21254]).  BMO previously filed an Objection (the "*Plan Objection*") to Debtors' Third Amended Joint Plan of LBHI and its Affiliated Debtors (the "*Proposed Plan*") seeking to enforce, among other things, Debtors' requirement to cure any and all defaults under the Master Agreement in accordance with the express terms thereof.

7. In addition, on October 25, 2011, Debtors filed their Motion Pursuant to sections 105, 363 and 365 of the Bankruptcy Code to Establish Procedures for the Consensual Amendment and Assumption of Certain Prepetition Derivatives Contracts (the *"Procedures Motion"*) [Docket No. 21297], whereby Debtors stated that they intend to establish procedures to assume and, with the consent of counterparties, amend certain non-terminated derivatives contracts.  Because BMO has previously delivered a termination notice to Debtors with respect to the Master Agreement and does not consent to the amendment of the Master Agreement, on November 9, 2011, BMO filed a Reservation of Rights with respect to the Procedures Motion.  [Docket No. 21824].

8. As of this date, BMO has not yet received any Notice with respect to the Master Agreement. However, BMO is generally aware of notices received by other parties in this matter and the requirements contained therein, including the requirement to object to the assumption of agreements by November 10, 2011. As noted above, BMO has previously filed its Plan Objection whereby it previously objected to both: (i) the assumption of the Master Agreement and (ii) the Proposed Plan itself. While the Plan Objection sets forth BMO's objections with respect to the assumption of the Master Agreement, in accordance with the instructions contained in the Notice, out of an abundance of caution BMO hereby files this protective objection to any Notice that the Debtors direct to BMO.[4]

## PROTECTIVE OBJECTION

9. BMO objects to any Notice delivered in connection with the Master Agreement. As set forth in its Plan Objection and its Reservation of Rights with respect to the Procedures Motion, which are incorporated herein by reference, the Master Agreement has been terminated and is not subject to assumption under any circumstances.[5]

10. Assuming arguendo that the Court deems the Master Agreement to be capable of assumption, any Notice of proposed assumption that fails to provide that such assumption will comply with all the provisions of section 365 of the Bankruptcy Code is insufficient. Moreover, should the purported cure amount be listed as zero, such cure amount is patently insufficient.

---

[4] BMO asserts that any Notice delivered hereafter is untimely.

[5] In its Plan Objection, BMO also asserts that the Master Agreement is not executory and capable of being assumed pursuant to section 365 of the Bankruptcy Code. *See JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 920 N.Y.S.2d 241 (Sup. Ct. 2010) (noting "[o]nce terminated, [an] ISDA Agreement was not, and could not be, executory."); *but see LBSF v. BNY Corporate Trustee Serv. Ltd.*, 422 B.R. 407, 415-16 (Bankr. S.D.N.Y. 2010) (holding opposite). In this instance, however, the facts are distinguishable from those presented in *LBSF v. BNY*, where this Court found that because both LBSF and BNY had unsatisfied contractual obligations with respect to payment, the contract was executory.

11. For any assumption to be proper, section 365 of the Bankruptcy Code requires that Debtors cure all amounts outstanding pursuant to the express terms of the Master Agreement. In connection with the assumption of any agreement, pursuant to section 365 of the Bankruptcy Code, a debtor must:

> (A) cure[], or provide adequate assurance that the trustee will promptly cure, such default …; (B) compensate[], or provide[] adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provide[] adequate assurance of future performance under the contract or lease.

11 U.S.C. § 365(b)(1)(A)-(C).

12. As noted above, BMO has yet to receive any Notice specifying the Cure Amount. BMO reserves its right to object to any attempt by Debtors to value the Master Agreement in any manner that is not in accordance with the express terms thereof.

13. BMO also asserts that any cure amount must take into account the Posted Collateral. As noted above, the Posted Collateral has a value of $101,200,000. Pursuant to the Statement of Calculation, and in connection with the express terms of the Master Agreement and the related Credit Support Annex and applicable bankruptcy law, BMO set off the amount of the Posted Collateral against amounts outstanding to LBSF with respect to the Master Agreement. To date, Debtors have not returned the Posted Collateral or indicated that they will permit the Posted Collateral to be offset against any amount payable. Debtors have similarly not indicated how they will value the Posted Collateral. It is certain that the Posted Collateral is not Debtors' property or property of their estates. Thus, in order to cure the Master Agreement, Debtors must either value the Posted Collateral in a manner acceptable to BMO and accept set off such amount against any amount payable to Debtors or return the Posted Collateral to BMO.

14. In addition, the Master Agreement explicitly requires LBSF's obligations thereunder be guaranteed by LBHI. (Master Agreement § 4(a) (requiring the delivery of any document specified in the schedule) and § 4(b) (requiring reasonable effort to maintain any credit support document); Schedule to the Master Agreement § 3(b) (requiring LBSF delivery of credit support document) and §§ 4(f)-(g) (designating Guarantee of LBHI as credit support document)). As a result, to properly cure the Master Agreement, Debtors must also assume the related LBHI Guarantee. Debtors, however, have not sought to assume the related LBHI Guarantee. Debtors may not cherry pick among provisions of the Master Agreement to seek out provisions they find beneficial and cast off those they find burdensome. Instead, executory contracts must be assumed or rejected in full. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract . . . it assumes the contract cum onere."). Furthermore, Debtors "cannot simply retain the favorable and excise the burdensome provisions of an agreement." *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999). Thus, the Court may not approve the assumption of the Master Agreement where Debtors, despite the Master Agreement's express terms, have not sought to assume the LBHI Guarantee.

15. Moreover, to properly cure the Master Agreement, Debtors are also required to cover the fees and expenses of BMO, including but not limited to the internal fees of BMO and attorneys' fees that have accrued or may accrue in the future in connection with BMO protecting and enforcing its rights under the Master Agreement and related documents. Such amounts would be due to BMO pursuant to section 11 of the Master Agreement. In addition, Debtors are required to pay BMO interest at the default rate on all amounts past due and on all amounts LBSF has been unable to pay BMO. As a result, given the existence of the Posted Collateral as

well as BMO's fees and expenses with regard to the Master Agreement, no matter what Cure Amount Debtors may assert, it simply cannot be zero.

16.  Moreover, to assume the Master Agreement, Debtors are required to provide BMO adequate assurance of future performance under its express terms, including, among other things, that LBSF will pay all amounts that may come due, perform all covenants, and comply with any and all indemnification obligations.  Relatedly, because assumption of the Master Agreement also requires the concurrent assumption of the LBHI Guarantee, BMO needs assurances that should LBSF fail to act under the terms of the Master Agreement, LBHI would.  Because Debtors are liquidating entities, BMO questions whether Debtors would have the ability to perform these future obligations.

## CONCLUSION

WHEREFORE, on a protective basis, BMO objects to any Notice of Assumption of the Master Agreement as untimely and ineffective as a matter of law since the Master Agreement itself has been terminated.  Assuming *arguendo*, the Court rules the Master Agreement is able to be assumed, BMO respectfully requests that unless Debtors agree to: (i) value the amounts outstanding pursuant under the Master Agreement in accordance with the express terms thereof; (ii) return the Posted Collateral to BMO or agree to accept offset the Posted Collateral in an amount agreed upon by BMO against any amount outstanding with respect to the Master Agreement; (iii) assume the related LBHI Guarantee and (iv) provide adequate assurance of future performance under its express terms, the Court must find that Debtors have not satisfied the requirements to "cure" the Master Agreement pursuant to section 365 of the

Bankruptcy Code and therefore cannot assume such agreement, and grant BMO such other and further related relief as required.

Dated:  November 10, 2011

> Respectfully submitted,
>
> BANK OF MONTREAL
>
> By: _____s/ Craig M. Price_____
> One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top III (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000

Craig M. Price (CP 9039)
Laura E. Appleby (LA 4879)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000