**Hearing Date: December 6, 2011 at 10:00 a.m.**
**Objections Due: November 10, 2011 at 4:00 p.m.**

Lee S. Attanasio
Alex R. Rovira
SIDLEY AUSTIN LLP
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel For Principal Life Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---- --------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Lehman Brothers Holdings Inc., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

---- --------------------------------------------------------- x

**PRINCIPAL LIFE INSURANCE COMPANY'S OBJECTION TO THE DEBTORS'**
**PROPOSED ASSUMPTION OF DERIVATIVES CONTRACTS PURSUANT TO THE**
**CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

Principal Life Insurance Company ("Principal Life"), by and through its undersigned

counsel, hereby files this objection and reservation of rights (the "Objection") to the proposed

assumption by the above captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant

to Sections 11.1 and 11.2 of the Debtors' Third Amended Joint Chapter 11 Plan, of derivatives

contracts  between Principal Life and Lehman Brothers Special Finance, Inc. ("LBSF") and

certain other derivatives contracts.  In support of its Objection, Principal Life, states as follows:

**I.    RELEVANT BACKGROUND**

      C.    *Termination of the Swap Transactions*

      1.    On June 30, 2004, Principal Life and LBSF entered into an ISDA Master

Agreement (as amended, supplemented or otherwise modified from time to time, and including

all annexes, schedules, exhibits, confirmations and any related agreements and other documents,

including, without limitation, the Credit Support Annexes related thereto, collectively, the

"ISDA Master Agreement").  Pursuant to the ISDA Master Agreement, Principal Life and LBSF

entered into various swap transactions (the "Swap Transactions").

        2.        On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings,

Inc. ("LBHI"), and certain of its affiliates, commenced the above-captioned chapter 11 cases by

filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").  On October 3, 2008, LBSF commenced its chapter 11 case by filing a voluntary petition

under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated

for procedural purposes and are being jointly administered.

        3.        On September 16, 2008, pursuant to the terms of the ISDA Master

Agreement, Principal Life sent a notice (the "Default Notice") to LBSF specifying the

occurrence of an event of default under Section 5(a)(vii) of the ISDA Master Agreement (the

"Event of Default") resulting from the commencement of LBHI's chapter 11 case, and

designating September 16, 2008 as the Early Termination Date[1] with respect to all Transactions

under the ISDA Master Agreement, thereby terminating all the Swap Transactions under the

ISDA Master Agreement as of such Early Termination Date.

        4.        On September 19, 2008, Principal Life sent a settlement calculation notice

(the "Calculation Notice") to LBSF which provided Principal Life's calculation of the settlement

amount resulting from the Event of Default and the early termination of the Swap Transactions in

accordance with the methodologies set forth in Section 6 in the ISDA Master Agreements.  As set

forth in the Calculation Notice, Principal Life calculated that there was an amount owing to LBSF

under the Swap Transaction but that such amount was subject to a right of setoff against amounts

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ISDA Master Agreement.

owed by LBSF to Principal Life under certain reimbursement agreements in connection with a commercial paper funding arrangement (the "Reimbursement Agreements").

5.      Since the commencement of these chapter 11 cases, LBSF and Principal Life have continued to exchange information in good faith in order to reconcile the amounts owing to each other under the Reimbursement Agreements and the Swap Transactions.  As of the date hereof, the parties have not finalized the reconciliation process and therefore have not reached a final agreement as to the amounts owing to each other under each of the reimbursement agreements and the Swap Transactions nor the right of setoff in connection therewith.

B.      *LBSF Seeks the Assumption of Derivative Contracts*

6.      On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed their Third Amended Joint Chapter 11 Plan (the "Plan").  On September 1, 2011, this Court approved the Debtors' Disclosure Statement for the Plan and scheduled the hearing for confirmation of the Plan to be held at 10:00 a.m. on December 6, 2011.

7.      On October 25, 2011, the Debtors filed their plan supplement to the Plan [Dkt. No. 21254] (the "Plan Supplement").  Exhibit 2 of the Plan Supplement listed certain derivative contracts as contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Plan (the "Confirmation Order").  Exhibit 2 of the Plan Supplement does not specify the title of any derivative contract between Principal Life and LBSF.  The notes set forth on the cover of Exhibit 2 provide that unless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivative contracts with each counterparty set

2

forth on Exhibit 2, Part A.  Accordingly, although unclear from the Debtors' Exhibit 2, it appears

that the Debtors are seeking to assume the Swap Transactions and the ISDA Master Agreement

(Principal Life has no other derivative contracts with LBSF).  Because of the sheer lack of

information regarding the Debtors' intentions, Principal Life is compelled to file this Objection.[2]

II.  **OBJECTION**

    A.   The Swap Transactions Cannot be Assumed

    8.   If LBSF is seeking to assume the Swap Transactions, such assumption

must be denied because Principal Life terminated the Swap Transactions more than three years

ago, rendering the Swap Transactions non-executory and, thus, non-assumable under section 365

of the Bankruptcy Code.  Section 365 of the Bankruptcy Code provides that a debtor-in-

possession, "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor."  11 U.S.C. § 365(a).  Courts in the Second Circuit have defined

the term "executory contract" by reference to Professor Vern Countryman's definition, which

provides that an executory contract is one "under which the obligation of both the bankrupt and

the other party to the contract are so far unperformed that the failure of either to complete

performance would constitute a material breach excusing performance of the other."  See In re

The Penn Traffic Company, et al., 524 F.3d 373, 379 (2d Cir. 2008)(citing Vern Countryman,

Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973).

    9.   Courts in the Second Circuit consistently have held that section 365 of the

Bankruptcy Code applies only if the contract or lease is in existence at the commencement of the

case.  Where such contract or lease has expired by its own terms or has been terminated under

---

[2] Although counsel for Principal Life reached out to counsel for the Debtors for further clarity, and while additional general information was provided, the Debtors were unable to provide specific clarity as to their intentions with respect to Principal Life's derivative contracts.

3

applicable law, then there is nothing left for the debtor to assume or reject and section 365 of the

Bankruptcy Code cannot apply.  See In re Project Orange Associates, LLC, 432 B.R. 89, 102

(Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated

before the filing of a bankruptcy petition is neither affected by the automatic stay under 11

U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); see also Bell V. The

Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996)(stating that "[o]nce a lease is terminated,

however, nothing remains for a debtor to assume under section 365.").  Thus, upon the

termination of the Swap Transaction three years ago, such agreement no longer constituted an

executory contract and, accordingly, the Swap Transactions cannot be assumed pursuant to

section 365 of the Bankruptcy Code.

        10.     The Swap Transactions are each a "swap agreement" that was properly

terminated pursuant to section 560 of the Bankruptcy Code due to the Debtors' bankruptcy

filing.  The Swap Transactions are each a "swap agreement" as that term is defined under section

101(53B) of the Bankruptcy Code; Principal Life, as an entity that had outstanding swap

agreements with LBSF prior to the commencement of its bankruptcy case, is a "swap

participant" afforded all of the safe harbor protections under the Bankruptcy Code, including, but

not limited to, under sections 362(b)(17), 362(b)(27), 362(o), 546(g), 553, 560 and 561 of the

Bankruptcy Code.  The Debtors have not challenged that the Swap Transactions are each a

"swap agreement" or that Principal Life is a "swap participant".  Accordingly, because the Swap

Transactions were terminated by Principal Life in accordance with section 560 of the Bankruptcy

Code, such Swap Transactions are not executory contracts and, therefore, LBSF cannot assume

the Swap Transactions under section 365 of the Bankruptcy Code.

B.       Any Dispute in Connection with the Amounts Owing between Principal Life and
         LBSF and Rights of Setoff In Connection Therewith Should be Determined Upon
         a Properly Briefed Hearing

11.      The Debtors' listed Principal Life on Exhibit 2 to the Plan Supplement –

which was filed at 11:30 p.m. on October 25, 2011 and buried as an exhibit in over 1000 pages

of documents scheduled thereto – without specifying the title or date of any specific derivative

contract to be assumed between Principal Life and LBSF.  Although the Debtors served Principal

Life with notice of the proposed assumption and cure amount (the "Assumption Notice"),

Principal Life did not received such notice until on or after October 31, 2011.  Moreover,

although the Debtors are aware of counsel representing Principal Life, the Debtors did not serve

counsel for Principal Life with any notice of the assumption or cure amount.  Putting aside the

obvious due process issues, seeking mass contract assumption pursuant to the Plan confirmation

process is also not the proper procedure for seeking to resolve any dispute in connection with the

amounts owing between Principal Life and LBSF, and rights of setoff in connection therewith.

12.      As noted above, since the commencement of these chapter 11 cases, LBSF

and Principal Life have continued to exchange information in good faith in order to reconcile the

amounts owing to each other under the Reimbursement Agreements and the Swap Transactions

and Principal Life has asserted and reserved its rights of setoff in connection therewith.

Regardless of whether the proposed assumption of derivative contracts is for the assumption of

the Swap Transactions, the ISDA Master Agreement or some other unidentified derivatives

contract between Principal Life and LBSF, such proposed assumption should not in any way

affect Principal Life's right to seek a merits hearing to resolve any dispute between it and LBSF.

13.      Indeed, LBSF should not be allowed to use the assumption of the Swap

Transactions as an end around to a fully-briefed hearing on the merits to the extent necessary to

5

resolve any dispute between the parties.  If the Swap Transactions are determined to be assumed

pursuant to the Plan and Confirmation Order, then Principal Life's actions to terminate the Swap

Transactions would arguably be undone and Principal Life irreparably harmed without any

opportunity for Principal Life to propound discovery on LBSF, provide evidence in support of its

positions or fully brief the issues.

> C.    Effect of Assumption of solely the ISDA Master Agreement

12.    Given the ambiguity of what LBSF is seeking to assume pursuant to Exhibit 2 of

the Plan Supplement, the Confirmation Order approving the assumption of the ISDA Master

Agreement must clearly state that only the ISDA Master Agreement and not the Swap

Transactions is being assumed.  Moreover, to the extent that LBSF is seeking to assume solely

the ISDA Master Agreement and not the Swap Transactions, then LBSF is required to assume

the ISDA Master Agreement *cum onere*.  See AGV Productions, Inc., v Metro-Goldwyn-Mayer,

Inc. and Orion Pictures Corp., 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing National Labor

Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984)(holding that "[i]f an

executory contract is assumed, it is said to be assumed *cum onere*, with all of it benefits and

burdens.")(*emphasis added*); see also In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849

(S.D.N.Y. 1994)(noting that a debtor may not "cherry-pick" pieces of a contract it wishes to

assume or reject).  Accordingly, if the Court approves LBSF's assumption of solely the ISDA

Master Agreement, then LBSF must assume the ISDA Master Agreement *cum onere* and

therefore be subject to all of the terms and provisions of the ISDA Master Agreement.

> D.    The Debtors May Not Assume the ISDA Master Agreement Unless LBSF Cures
>       All Existing Defaults

13.    Section 365 of the Bankruptcy Code requires that in order for a debtor to

assume any executory contract, the debtor must cure all existing defaults and compensate the

counterparty to the agreement for any pecuniary losses resulting from such defaults, or provide

adequate assurance that the trustee will promptly cure and provide such compensation.  11

U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996).

The language of section 365(b)(1) is unequivocal that a party to an executory contract must be

paid all amounts due under the contract before the contract may be assumed.  In re Superior Toy

& Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996).  Here, LBSF must cure all known defaults and

assume all obligations before the ISDA Master Agreement may be assumed.

14.    As noted above, Principal Life only received the Assumption Notice on or

after October 31, 2011.  The Assumption Notice provides a cure amount of $0 without

specifying which contracts LBSF seeks to assume and without providing any basis for

calculating the cure amount at $0.  At a minimum, LBSF, as the Defaulting Party under the

ISDA Master Agreement, is required to pay all reasonable out-of-pocket expenses, including

legal fees incurred by Principal Life in connection with the enforcement and protection of its

rights under the ISDA Master Agreement.  Given the lack of information and clarity of LBSF's

intentions and complex nature of swap transactions, no attempt has been made to identify cure

amounts, and until LBSF provides sufficient clarity, Principal Life reserves all of its rights for

payment of cure prior to any assumption by LBSF.

E.    The Debtors May Not Assume the CDO Swap and Derivatives Agreements or
Use the Plan to Obtain the Relief Sought in the Adversary Proceeding

15.    Principal Life  is a noteholder in a number of collateralized debt obligation

transactions created, sponsored and/or marketed by the Debtors, including (i) 801 Grand CDO

SPC Series (Series 2006-1), (ii) Copper Creek (series 2007-1), (iii) Cherry Hill CDO SPC (series

2007-1) (iv) Greystone CDO Limited SPC Series (series 2006-1), (v) Fullerton Drive CDO and

(vi) Tavares Square CDO  (the "CDO Transactions").  On September 14, 2011, LBSF

7

commenced an adversary proceeding to recover funds paid to noteholders in connection with these CDO Transactions as well as various other transactions. See LBSF v.Bank of America National Association, et al. Adv. Pro. No. 10-03547 (the "Adversary Proceeding"). On October 20, 2010, the Debtors sought and obtained an order staying the Adversary Proceeding. See Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) [Docket No. 12199]. As amended, the Stay Order provides, inter alia, that the adversary proceeding (among other avoidance actions) is stayed until January 20, 2012.

16.    Pursuant to the Plan Supplement, it appears that the Debtors have now determined to assume, among other of the CDO transaction documents, the credit swap or credit derivatives agreement between the relevant special purpose vehicle counterparties and a Lehman entity ("CDO Swap and Derivatives Agreements"), which were a central component of many of the CDO Transactions. See Plan Supplement.[3]   However, the Debtors cannot assume these CDO Swap and Derivative Agreements because (i) they have been terminated in accordance with their express terms and in accordance with the safe harbor provisions of the Bankruptcy Code and (ii) no additional duties are owed by the parties to the CDO Swap and Derivative Agreements with the exception of settling the amounts outstanding thereunder. As a result, the Debtors' request to assume such agreements must be denied.

17.    Moreover, the Debtors have placed, among other things, the termination of the CDO Swap and Derivatives Agreements at issue in the adversary proceeding and, as mentioned, any determination of these issues has been stayed. The Debtors should not now be permitted to evade their burden of proof and the procedural requirements of the Adversary

---

[3]  The relevant pages from the Plan Supplement are attached hereto as Exhibit A.

Proceeding by seeking a summary determination of assumption of the CDO Swap and Derivative

Agreements in connection with confirmation of the Plan.  See In re Orion Pictures Corp., 4 F.3d

1095, 1098-99 (adversary proceeding issues are not to be decided as part of a motion to assume).

Accordingly, at best, the Court must stay its determination of whether LBSF can assume the

CDO Swap and Derivative Agreements pending the resolution of the Adversary Proceeding.

### III.    **RESERVATION OF RIGHTS**

18.    Principal Life hereby reserves all of its rights and remedies under the

ISDA Master Agreement, the Swap Transactions and all ancillary documents related thereto,

including, without limitation, the Default Notice, Calculation Notice, the CDO Transactions, the

CDO Swap and Derivative Agreements, the Bankruptcy Code and any and all other rights and

remedies existing under law or in equity or otherwise, whether or not described in this Objection,

and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver

of any of such rights or remedies.  To the extent LBSF seeks to modify Principal Life's rights

under the ISDA Master Agreement, the Swap Transactions and all ancillary documents related

thereto, including, without limitation, the Default Notice and Calculation Notice, the CDO

Transactions, the CDO Swap and Derivative Agreements, through assumption, or through any

other provision of the Plan or Confirmation Order, Principal Life asserts that such attempt must

be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the

Plan shall in any way limit, affect or modify: (i) any rights of Principal Life under the ISDA

Master Agreement, the Swap Transactions and all ancillary documents related thereto, including,

without limitation, the Default Notice and Calculation Notice, the CDO Transactions, the CDO

Swap and Derivative Agreements, or (ii) any defenses (including any right of setoff or

recoupment) of Principal Life.

WHEREFORE, without in any way limiting its rights, Principal Life hereby respectfully requests that the Court (i) deny LBSF's assumption of the Swap Transactions, the CDO Transactions and the CDO Swap and Derivative Agreements; (ii) find that LBSF may not assume the ISDA Master Agreement unless LBSF promptly cures and provides for compensation for all defaults under the ISDA Master Agreement; (iii) specifically provide in the Confirmation Order that LBSF will assume all obligations and liabilities under the ISDA Master Agreement; and (iv) grant such other relief that is just and proper.

Dated: November 10, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Lee S. Attanasio

Lee S. Attanasio
Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599