## **EXHIBIT D**

STANDARD TERMS FOR INDENTURES

Dated as of April 10, 2007

## TABLE OF CONTENTS

Page

### ARTICLE I

### DEFINITIONS

Section 1.1     Definitions............................................................................................1
Section 1.2     Other Definitional Provisions; Rating Specifications.........................12
Section 1.3     Integration of Standard Terms and Series Indenture. .......................12

### ARTICLE II

### THE NOTES

Section 2.1     Forms Generally...............................................................................12
Section 2.2     Execution, Authentication, Delivery and Dating...............................15
Section 2.3     Registration, Transfer and Exchange of Notes. ................................16
Section 2.4     Mutilated, Defaced, Destroyed, Lost or Stolen Notes. .....................31
Section 2.5     Persons Deemed Owners. .................................................................31
Section 2.6     Cancellation. ....................................................................................32
Section 2.7     No Gross Up. ....................................................................................32
Section 2.8     Global Notes; Temporary Notes. ......................................................33
Section 2.9     Required Sale of a Note by the Holder Upon the Occurrence of Certain
                Circumstances. .................................................................................34

### ARTICLE III

### CONDITIONS PRECEDENT; CERTAIN PROVISIONS RELATING TO COLLATERAL

Section 3.1     General Provisions. ...........................................................................35
Section 3.2     Security for Notes. ............................................................................37
Section 3.3     Investment at Direction of the Credit Swap Counterparty; Custodianship
                of Permitted Short-Term Investments................................................38
Section 3.4     Additional Notes – General Provisions..............................................39

### ARTICLE IV

### SATISFACTION AND DISCHARGE

Section 4.1     Satisfaction and Discharge of Indenture. ..........................................41
Section 4.2     Application of Trust Money................................................................42

Section 4.3       Repayment of Monies Held by Paying Agent ..................................................42

## ARTICLE V

## REMEDIES

Section 5.1       Events of Default. .................................................................................42
Section 5.2       Acceleration of Maturity; Recission and Annulment .........................................43
Section 5.3       Collection of Indebtedness and Suits for Enforcement by Trustee....................45
Section 5.4       Remedies.............................................................................................47
Section 5.5       [Reserved.] ..........................................................................................48
Section 5.6       Trustee May Enforce Claims Without Possession of Notes. ............................48
Section 5.7       Application of Money Collected...............................................................48
Section 5.8       Limitation on Suits.................................................................................48
Section 5.9       Unconditional Rights of Noteholders to Receive Principal and Interest ...........49
Section 5.10      Restoration of Rights and Remedies.........................................................49
Section 5.11      Rights and Remedies Cumulative. ............................................................50
Section 5.12      Delay or Omission Not Waiver.................................................................50
Section 5.13      Control by the Noteholders. ....................................................................50
Section 5.14      Waiver of Past Defaults. .........................................................................50
Section 5.15      Undertaking for Costs. ...........................................................................51
Section 5.16      Waiver of Stay or Extension Laws. ...........................................................51
Section 5.17      Sale of Collateral...................................................................................52
Section 5.18      Action on the Notes. ..............................................................................52
Section 5.19      Senior Lien...........................................................................................53

## ARTICLE VI

## THE TRUSTEE

Section 6.1       Certain Duties and Responsibilities...........................................................53
Section 6.2       Notice of Default...................................................................................54
Section 6.3       Certain Rights of Trustee........................................................................55
Section 6.4       Not Responsible for Recitals or Issuance of Notes.......................................56
Section 6.5       May Hold Notes.....................................................................................56
Section 6.6       Money Held in Trust..............................................................................56
Section 6.7       Corporate Trustee Required; Eligibility.....................................................57
Section 6.8       Resignation and Removal; Appointment of Successor....................................57
Section 6.9       Acceptance of Appointment by Successor ..................................................58
Section 6.10      Merger, Conversion, Consolidation or Succession to Business of Trustee ........59
Section 6.11      Co-Trustees and Separate Trustee.............................................................59
Section 6.12      Representations and Warranties of the Trustee ...........................................61
Section 6.13      Authenticating Agent .............................................................................61
Section 6.14      Duties and Responsibilities of Trustee Following Payment in Full of the
                  Notes .................................................................................................62
Section 6.15      Limitation on Duty of Trustee in Respect of Collateral. ...............................62

Section 6.16    No Special Damages ....................................................................62
Section 6.17    Trustee's Instruction to Account Securities Intermediary .................63

## ARTICLE VII

### COVENANTS

Section 7.1     Payment of Principal and Interest ...........................................63
Section 7.2     Compliance with Laws .........................................................63
Section 7.3     Maintenance of Books and Records .......................................63
Section 7.4     Maintenance of Office or Agency...........................................63
Section 7.5     Money for Note Payments to Be Held in Trust ........................64
Section 7.6     Existence of Co-Issuers........................................................65
Section 7.7     Protection of Collateral. ........................................................66
Section 7.8     Issuance of Securities of a Separate Segregated Portfolio.............67
Section 7.9     Performance of Obligations. ..................................................67
Section 7.10    Negative Covenants. .............................................................68
Section 7.11    Statement as to Compliance ..................................................71
Section 7.12    Co-Issuers May Consolidate, Etc., Only on Certain Terms............72
Section 7.13    Successor Substituted............................................................75
Section 7.14    No Other Business ...............................................................76
Section 7.15    Reporting............................................................................76

## ARTICLE VIII

### SUPPLEMENTAL INDENTURES

Section 8.1     Supplemental Indentures without Consent of Noteholders .............76
Section 8.2     Supplemental Indentures with Consent of Noteholders...................78
Section 8.3     Execution of Supplemental Indentures; Delivery of Supplemental
                Indentures...........................................................................81
Section 8.4     Effect of Supplemental Indentures.........................................82
Section 8.5     Reference in Notes to Supplemental Indentures.........................82
Section 8.6     Certain Further Limitations on Supplemental Indentures................82

## ARTICLE IX

### ACCOUNTS AND REPORTS

Section 9.1     Collection of Money. ............................................................83
Section 9.2     Reports by Trustee. ..............................................................83
Section 9.3     Procedures Relating to the Establishment of Accounts Controlled by the
                Trustee; Criteria Applicable to Custodian and Account Securities
                Intermediary. ......................................................................84

ARTICLE X

CREDIT SWAP

Section 10.1    Credit Swaps. ..................................................................................84

ARTICLE XI

NOTEHOLDERS' RELATIONS

Section 11.1    Standard of Conduct ........................................................................85
Section 11.2    Right to List of Holders ...................................................................85

ARTICLE XII

MISCELLANEOUS

Section 12.1     Form of Documents Delivered to Trustee .........................................86
Section 12.2     Acts of Noteholders. ........................................................................86
Section 12.3     Notices ............................................................................................87
Section 12.4     Notices to Noteholders; Waiver.......................................................89
Section 12.5     Effect of Headings and Table of Contents........................................89
Section 12.6     Successors and Assigns.....................................................................89
Section 12.7     Separability .....................................................................................89
Section 12.8     Benefits of Indenture.......................................................................89
Section 12.9     Governing Law ................................................................................89
Section 12.10    Submission to Jurisdiction ...............................................................90
Section 12.11    Counterparts.....................................................................................90
Section 12.12    Judgment Currency ..........................................................................90
Section 12.13    Waiver of Jury Trial.........................................................................91
Section 12.14    Liability of Co-Issuers .....................................................................91
Section 12.15    Security Interest Representations and Warranties of the Issuer..........91
Section 12.16    Limited Recourse .............................................................................93


Exhibit A-1(a)    –    Form of Certificated Note
Exhibit A-1(b)    –    Form of Regulation S Global Note
Exhibit A-1(c)    –    Form of Rule 144A Global Note
Exhibit B-1       –    Form of Transfer Certificate for Transfers From Certificated Note to
                       Certificated Note
Exhibit B-2       –    Form of Transfer Certificate for Transfers from Global Note to Global
                       Note

## STANDARD TERMS FOR INDENTURES

STANDARD TERMS FOR INDENTURES, dated as of April 10, 2007 by and among the Issuer, the Co-Issuer and the Trustee.

### PRELIMINARY STATEMENT

The Co-Issuers are duly authorized to execute and deliver this Indenture to provide for the Notes issuable as provided in this Indenture. All covenants and agreements made by the Co-Issuers herein are for the benefit and security of the Noteholders and the Trustee. The Co-Issuers are entering into this Indenture, and the Trustee is accepting the trusts created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

All things necessary to make this Indenture a valid agreement of the Co-Issuers in accordance with its terms have been done.

### ARTICLE I

### DEFINITIONS

Section 1.1    Definitions. Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Indenture, and the definitions of such terms are equally applicable both to the singular and plural forms of such terms and to the masculine, feminine and neuter genders of such terms. Terms used herein but not defined herein shall have the meaning ascribed thereto in the Series Indenture.

"Accounts Securities Intermediary": The financial institution maintaining the Accounts which, initially, shall be the Custodian.

"Accredited Investor": The meaning set forth therefor in Rule 501(a) promulgated under the Securities Act.

"Act" and "Acts of Noteholders": The meanings specified in Section 12.2.

"Administration Agreement": An agreement dated as of the Closing Date, by and between the Issuer and the Administrator, relating to the administration of the Issuer, as the same may be amended, supplemented or otherwise modified and in effect from time to time in accordance with the terms thereof.

"Administrator": Maples Finance Limited, a licensed trust company incorporated in the Cayman Islands, or any substitute Administrator duly appointed by the Board of Directors of the Issuer.

"Affiliate" or "Affiliated": With respect to a Person, (i) any other Person who, directly or indirectly, is in control of, or controlled by, or is under common control with, such

-1-

Person or (ii) any other Person who is a director, officer or employee (a) of such Person, (b) of any subsidiary or parent company of such Person or (c) of any Person described in clause (i) above. For the purposes of this definition, control of a Person shall mean the power, direct or indirect, (i) to vote more than 50% of the securities having ordinary voting power for the election of directors of such Person or (ii) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise; *provided, however, that* for the avoidance of doubt, the Affiliates of the Issuer shall not include the Administrator or any companies, other than the Issuer, controlled by the Administrator solely by virtue of such control.

"Agent Members": Members of, or participants in, the Depositary.

"Authenticating Agent": The Person designated by the Trustee to authenticate the Notes on behalf of the Trustee pursuant to Section 6.15.

"Authorized Officer": With respect to the Issuer or the Co-Issuer, any officer who is authorized to act for the Issuer or the Co-Issuer, as applicable, in matters relating to, and binding upon, the Issuer or the Co-Issuer. With respect to the Trustee or any other bank or trust company acting as trustee of an express trust or as custodian, a Trust Officer. Each party may receive and accept a certification of the authority of any other party as conclusive evidence of the authority of any person to act, and such certification may be considered as in full force and effect until receipt by such other party of written notice to the contrary.

"Bankruptcy Code": The federal Bankruptcy Code, Title 11 of the United States Code, as amended and any successor statute and/or any bankruptcy, insolvency, reorganization or similar law enacted under the laws of the Cayman Islands.

"Beneficial Owner": Any Person owning a beneficial interest in a Global Note as reflected on the books of the Depositary or on the books of a Depositary Participant or on the books of an indirect participant for which a Depositary Participant of the Depositary acts as agent.

"Benefit Plan Investor": The meaning specified in Section 2.3(h).

"Board of Directors": With respect to the Issuer, the duly appointed directors of the Issuer appointed by Board Resolution or by resolution of the shareholders of the Issuer; and with respect to the Co-Issuer, the Issuer, as sole member of the Co-Issuer, or the manager of the Co-Issuer duly appointed by the Issuer as sole member of the Co-Issuer.

"Board Resolution": With respect to the Issuer, a resolution of the Board of Directors of the Issuer; and with respect to the Co-Issuer, an authorization executed by the Issuer, as sole member of the Co-Issuer, or the manager of the Co-Issuer.

"Cash": Such coin or currency of the United States of America as at the time shall be legal tender for payment of all public and private debts.

"Certificate of Authentication": The meaning specified in Section 2.2(f).

"Certificated Note": The meaning specified in Section 2.1(c).

"Certificated Security":  A security, as defined in Section 8-102(a)(15) of the UCC, that is represented by a certificate.

"Clearing Agency":  An organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act.

"Clearing Corporation":  The meaning specified in Section 8-102(a)(5) of the UCC.

"Clearstream":  Clearstream Banking, société anonyme, a corporation organized under the laws of the Grand Duchy of Luxembourg.

"Code":  The United States Internal Revenue Code of 1986, as amended.

"Controlling Class":  Unless otherwise specified in the Series Indenture, the Holders of a Majority of the Notes, voting together as a single Class.

"Controlling Person":  A Person (other than a Benefit Plan Investor) that has discretionary authority or control with respect to the assets of an entity or that provides investment advice to the entity for a fee (direct or indirect) with respect to such assets, or any Affiliate of such a Person.

"Credit Swaps Guarantor":  Lehman Brothers Holdings Inc.

"Default":  Any Event of Default or any occurrence that is, or with notice or the lapse of time or both would become, an Event of Default.

"Defaulted Interest":  Any interest on any Note that is due and payable but is not punctually paid or duly provided for on or prior to the due date therefor and which remains unpaid and, to the extent not duplicative in any context in which this term "Defaulted Interest" is used, any interest on such amounts at the applicable rate.

"Depositary":  With respect to the Global Notes, DTC, its nominees, and their respective successors.

"Depositary Participant":  A broker, dealer, bank or other financial institution or other Person for whom from time to time the Depositary effects book-entry transfers and pledges of Notes deposited with the Depositary.

"Distribution":  Any payment of principal or interest or any dividend, premium or fee payment made on, or any other distribution in respect of, a security or obligation.

"Dollar" or "$":  A dollar or other equivalent unit in such coin or currency of the United States of America as at the time shall be legal tender for all debts, public and private.

"DTC":  The Depository Trust Company, a New York corporation.

"Determination Date"  The last day of the month.

-3-

"Enforcement Notice":  The meaning specified in Section 5.2.

"Entitlement Holder":  The meaning specified in Section 8-102(a)(7) of the UCC.

"Entitlement Order":  The meaning specified in Section 8-102(a)(8) of the UCC.

"ERISA":  The Employee Retirement Income Security Act of 1974, as amended.

"Euroclear":  Euroclear Bank, S.A./N.V.

"Excepted Property":  With respect to (i) the Issuer, the $250 capital contributed to the Company by Maples Finance Limited as payment for the Shares in accordance with the Issuer Charter, the $250 fee paid to the Issuer for agreeing to issue the Notes and the account established and maintained by the Issuer in the Cayman Islands into which such amounts are deposited and (ii) the Co-Issuer, the $100 capital contributed to the Co-Issuer by the Issuer as sole member of the Co-Issuer in accordance with the Co-Issuer's Limited Liability Company Agreement.

"Exchange Act":  The United States Securities Exchange Act of 1934, as amended.

"Financial Asset":  Except as otherwise provided in Section 8-103 of the UCC: (a) a Security; (b) an obligation of a Person or a share, participation or other interest in a Person or in property or an enterprise of a Person, which is, or is of a type, dealt in or traded on financial markets, or which is recognized in any area in which it is issued or dealt in as a medium for investment; or (c) any property that is held by a Securities Intermediary for another Person in a Securities Account if the Securities Intermediary has expressly agreed with the other Person that the property is to be treated as a financial asset under Article 8 of the UCC.

"Global Notes":  The meaning specified in Section 2.1(b).

"Grant":  To grant, bargain, sell, warrant, alienate, remise, demise, release, convey, assign, transfer, mortgage, pledge and create a security interest in and right of set-off against, deposit, set over and confirm.  A Grant of the Collateral, or of any other instrument, shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including without limitation the immediate continuing right to claim for, collect, receive and receipt for principal and interest payments in respect of the Collateral, and all other Monies payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring Proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

"Holder" or "Noteholder":  With respect to any Note, each Person in whose name such Note is registered in the Note Register.

"Indenture":  Means, collectively, the Series Indenture and this Standard Terms, as originally executed and, if from time to time supplemented or amended by one or more

-4-

indentures supplemental hereto entered into pursuant to the applicable provisions hereof, as so supplemented or amended.

"Independent": As to any Person, any other Person (including, in the case of an accountant, or lawyer, a firm of accountants or lawyers and any member thereof) who (i) does not have and is not committed to acquire any material direct or any material indirect financial interest in such Person or in any Affiliate of such Person, and (ii) is not connected with such Person as an officer, employee, promoter, underwriter, voting trustee, partner, director or Person performing similar functions. "Independent" when used with respect to any accountant may include an accountant who audits the books of such Person if in addition to satisfying the criteria set forth above the accountant is independent with respect to such Person within the meaning of Rule 101 of the Code of Ethics of the American Institute of Certified Public Accountants. Whenever any Independent Person's opinion or certificate is to be furnished to the Trustee, such opinion or certificate shall state that the signer has read this definition and that the signer is Independent within the meaning hereof.

"Indorsement": The meaning specified in Section 8-102(a)(11) of the UCC.

"Insolvency Proceeding": The meaning specified in Section 5.3(g).

"Instruments": The meaning specified in Section 9-102(a)(47) of the UCC.

"Investment Company Act": The United States Investment Company Act of 1940, as amended.

"IRS": The United States Internal Revenue Service.

"Issuer Order" and "Issuer Request": A written order or request (which may be in the form of a standing order of request) dated and signed in the name of the Issuer (and of the Co-Issuer, if applicable) by an Authorized Officer of the Issuer (and of the Co-Issuer, if applicable), as the context may require or permit.

"Long-Term Credit Rating": With respect to an issuer or obligor (i) the long-term credit rating for the senior unsecured debt of such issuer or obligor or (ii) the long-term issuer credit rating of such issuer or obligor.

"Majority": With respect to the Notes or any Class thereof, the holders of more than 50% of the outstanding principal amount of the Notes or the Notes of such Class, as the case may be.

"Managers": Lehman Brothers Inc. and Lehman Brothers International (Europe).

"Moody's": Moody's Investors Service, Inc. and any successor or successors thereto and, if such corporation shall for any reason no longer perform the functions of a securities rating agency, "Moody's" shall be deemed to refer to any other nationally recognized rating agency designated in writing by the Issuer (with a copy to the Trustee), with the written consent of the Controlling Class.

"Money": The meaning specified in Section 1-201(24) of the UCC.

"Note Purchase Agreement": The Note Purchase Agreement, dated as of the Closing Date, among the Issuer and the Managers.

"Note Register" and "Note Registrar": The respective meanings specified in Section 2.3 of this Indenture.

"Officer's Certificate": With respect to any Person, a certificate signed by an Authorized Officer of such Person. Any Officer's Certificate delivered with respect to compliance with a condition or covenant provided for in this Indenture shall include:

   (i)    a statement that each individual signing the certificate has read the covenant or condition and any definitions relating thereto;

   (ii)   a brief statement of the nature and scope of the examination or investigation undertaken by each officer in rendering the certificate;

   (iii)  a statement that each such officer has made such examination or investigation as, in such officer's opinion, is necessary to enable such officer to express an informed opinion as to whether or not such covenant or condition has been complied with; and

   (iv)   a statement as to whether, in the opinion of each such officer, such condition or covenant has been complied with.

"Opinion of Counsel": A written opinion addressed to the Trustee and the Rating Agencies, in form and substance reasonably satisfactory to the Trustee and the Rating Agencies, of an attorney at law admitted to practice in any state of the United States or the District of Columbia (or the Cayman Islands, in the case of an opinion relating to the laws of the Cayman Islands), which attorney may, except as otherwise expressly provided in this Indenture, be counsel for the Issuer or the Co-Issuer and which attorney shall be reasonably satisfactory to the Trustee and the Rating Agencies. Whenever an Opinion of Counsel is required hereunder, such Opinion of Counsel may rely on opinions of other counsel who are so admitted and so satisfactory which opinions of other counsel shall accompany such Opinion of Counsel and shall either be addressed to the Trustee and the Rating Agencies or shall state that the Trustee and the Rating Agencies shall be entitled to rely thereon.

"Ordinary Shares" or "Shares": The 250 ordinary shares, par value $1.00 per share, of the Issuer.

"Outstanding": As of any date of determination, all of the Notes theretofore authenticated and delivered under this Indenture except:

   (i)    Notes theretofore canceled by the Note Registrar or delivered to the Note Registrar for cancellation;

(ii)     Notes or portions thereof for whose payment or redemption funds in the necessary amount have been theretofore irrevocably deposited with the Trustee or any Paying Agent in trust for the Holders of such Notes; *provided, however, that,* if such Notes or portions thereof are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made;

(iii)    Notes in exchange for or in lieu of which other Notes have been authenticated and delivered pursuant to this Indenture, unless proof satisfactory to the Trustee is presented that any such original Notes are held by a holder in due course; and

(iv)    Notes alleged to have been mutilated, defaced, destroyed, lost or stolen for which replacement Notes have been issued as provided in Section 2.4 of this Indenture;

*provided, that* in determining whether the Holders of the requisite Aggregate Outstanding Amount of the Notes have given any request, demand, authorization, direction, notice, consent or waiver hereunder, Notes beneficially owned by the Issuer or the Co-Issuer or any Affiliate of either of them shall be disregarded and deemed not to be Outstanding.

"Paying Agent": Any Person authorized by the Co-Issuers to pay the principal of or interest on any Notes on behalf of the Issuer as specified in Section 7.4 of this Indenture.

"Permitted Short-Term Investments": Any U.S. Dollar-denominated investment that is one or more of the following including, without limitation, Permitted Short-Term Investments for which the Trustee or an Affiliate of the Trustee provides services:

(i)     cash;

(ii)    direct Registered obligations of, and Registered obligations the timely payment of principal of and interest on which is fully and expressly guaranteed by, the United States of America or any full faith and credit agency, instrumentality or government sponsored entity;

(iii)   demand and time deposits in, certificates of deposit of, bankers' acceptances payable within 183 days of issuance issued by, or federal funds sold by any United States federal or state depository institution or trust company (including U.S. Bank National Association, in its individual capacity and not as Trustee), the commercial paper and/or debt obligations of which (or, in the case of the principal depository institution in a holding company system, the commercial paper or debt obligations of such holding company) at the time of such investment or contractual commitment providing for such investment has a Long-Term Credit Rating of not less than "Aa2" by Moody's and not less than "AA-" by S&P, or a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P; *provided, that* in the case of commercial paper and short-term debt obligations with a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "AA-" by S&P;

(iv)    Registered corporate debt securities (other than mortgage-backed securities) which are interest bearing and issued by any corporation incorporated under the laws of the United States of America or any state thereof and which has a Long-Term Credit Rating of at least "Aaa" by Moody's and "AAA" by S&P at the time of such investment or contractual commitment providing for such investment;

(v)    commercial paper or other short-term obligations with a maturity of not more than 183 days from the date of issuance having at the time of such investment a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P; *provided, that* if such security has a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "Aa2" by Moody's and not less than "AA-" by S&P;

(vi)    reinvestment agreements (so long as payments under any such reinvestment agreement are not subject to withholding taxes) issued by any bank (if treated as a deposit by such bank) or reinvestment agreements issued in Registered form by any insurance company or other corporation or entity organized under the laws of the United States of America or any state thereof with a maturity of not more than 364 days from the date of issuance that has a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P; *provided, that* if such security has a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "Aa2" by Moody's and not less than "AA-" by S&P; and

(vii)    any offshore money market fund or similar investment vehicle (including those for which U.S. Bank National Association or its Affiliates may act as manager or advisor, whether or not for a fee) with a maturity of not more than 364 days from the date of issuance having at the time of investment therein a Short-Term Credit Rating of not less than "P-1" by Moody's and "A-1+" by S&P; *provided, that* (x) if such investment has a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "Aa2" by Moody's and not less than "AA-" by S&P;

*provided, that* Permitted Short-Term Investments (a) shall not include obligations bearing interest at inverse floating rates or any investment the interest on which is variable (unless established by reference to a single index plus a fixed spread, if any, which interest rate moves proportionately with that index), any interest only security, any mortgage backed security, any security purchased at a price in excess of 100% of the par value thereof or any security whose repayment is subject to substantial non-credit related risk as determined in the sole judgment of the Credit Swap Counterparty, (b) shall be treated as indebtedness for U.S. federal income tax purposes, or the Issuer has received advice from Allen & Overy LLP or an opinion of another nationally recognized U.S. tax counsel experienced in such matters that the purchase of such investment shall not cause the Issuer to be treated as engaged in a trade or business in the United States for U.S. federal income tax purposes, (c) shall not cause the Issuer to be subject to U.S. federal, state or local income or franchise tax on a net income tax basis, (d) shall not cause non U.S. Holders or non-U.S. Beneficial Owners of Notes to be subject to U.S. federal income tax on a net income basis, (e) shall not be subject to deduction or withholding for or on account

of any withholding or similar tax, unless the payor is required to make "gross-up" payments that ensure that the net amount actually received by the Issuer (free and clear of taxes, whether assessed against such obligor or the Issuer) will equal the full amount that the Issuer would have received had no such deduction or withholding been required, and (f) shall not include obligations whose rating assigned by S&P includes the subscript "p," "pi," "q," "r" or "t".

"Person": An individual, corporation (including a business trust), partnership, limited liability company, joint venture, association, joint stock company, trust (including any beneficiary thereof), bank, unincorporated association or government or any agency or political subdivision thereof.

"Plan Asset Regulation": U.S. Department of Labor's regulation 29 C.F.R. Section 2510.03-101(f).

"Preference Claim": The meaning specified in Section 5.3(g) of this Indenture.

"Proceeding": Any suit in equity, action at law or other judicial or administrative proceeding.

"Proceeds": (i) Any property (including but not limited to Cash and securities) received as a Distribution on the Collateral or any portion thereof, (ii) any property (including but not limited to Cash and securities) received in connection with the sale, liquidation, exchange or other disposition of the Collateral or any portion thereof, and (iii) all proceeds (as such term is defined in Section 9-102(a)(64) of the UCC) of the Collateral or any portion thereof.

"Qualified Institutional Buyer": A "qualified institutional buyer" as defined in Rule 144A promulgated under the Securities Act.

"Qualified Purchaser": A "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act.

"Rating Agency Confirmation": When required pursuant to this Indenture in connection with any particular action, shall mean a written confirmation from each Rating Agency that such action in and of itself will not result in the reduction or withdrawal of its then-current rating, if any, of the Notes Outstanding.

"Record Date": Unless otherwise specified in the Series Indenture, the date on which the Holders of the Notes entitled to receive a payment of principal and/or interest on the next succeeding Payment Date or Distribution Date are determined, such date as to any Payment Date or Distribution Date being the 15th calendar day (whether or not a Business Day) preceding the relevant Payment Date or Distribution Date (as and to the extent applicable); *provided, that* the Record Date for purposes of determining the Holders of the Notes entitled to vote on any matters shall, in each case be the date on which notice of the relevant event is sent to the Holders of the Notes by the Issuer or the Trustee.

"Registered": With respect to any debt obligation, a debt obligation that is issued after July 18, 1984, and that is in registered form within the meaning of Section 881(c)(7) of the Code.

"Regulation D": Regulation D under the Securities Act.

"Regulation S": Regulation S under the Securities Act.

"Regulation S Global Note":   The meaning specified in Section 2.1(a) of this Indenture.

"Relevant Persons":  The meaning specified in Section 2.5 of this Indenture.

"Rule 144A":  Rule 144A under the Securities Act.

"Rule 144A Global Note":   The meaning specified in Section 2.1(b) of this Indenture.

"Rule 144A Information": The meaning specified in Section 7.15.

"Sale": The meaning specified in Section 5.17(a).

"S&P":   Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, and any successor or successors thereto and, if such corporation shall for any reason no longer perform the functions of a securities rating agency, "S&P" shall be deemed to refer to any other nationally recognized rating agency designated in writing by the Issuer (with a copy to the Trustee), with the written consent of the Controlling Class.

"SEC": The United States Securities and Exchange Commission.

"Secured Obligations":   Collectively, all of the indebtedness, liabilities and obligations owed from time to time by the Issuer to the Secured Parties, whether for principal, interest, fees, costs, expenses, premium or otherwise (including all amounts which would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code and the operation of Sections 502(b) and 506(b) thereof or any analogous provisions of any similar laws).

"Secured Parties":   Unless otherwise specified in the Series Indenture, the Noteholders, the Credit Swap Counterparty and the Trustee, collectively.

"Securities Account":   An account to which a Financial Asset is or may be credited in accordance with an agreement under which the Person maintaining the account undertakes to treat the Person for whom the account is maintained as entitled to exercise the rights that comprise the Financial Asset.

"Securities Act": The United States Securities Act of 1933, as amended.

"Securities Intermediary":  (a) A Clearing Corporation; or (b) a Person, including a bank or broker, that in the ordinary course of its business maintains Securities Accounts for others and is acting in that capacity.

"Security Entitlement": The meaning specified in Section 8-102(a)(17) of the UCC.

"Series Indenture": The Series Indenture, dated as of the Closing Date, among the Co-Issuers and Trustee, as amended from time to time.

"Shares": The 250 ordinary shares, par value $1.00 per share, of the Company.

"Short-Term Credit Rating": With respect to an issuer or obligor (i) the short-term issuer credit rating of such issuer or obligor or (ii) the short-term credit rating for the senior unsecured debt of such issuer or obligor.

"Specified Currency": The meaning specified in Section 12.12.

"Specified Person": The meaning specified in Section 2.4.

"Specified Place": The meaning specified in Section 12.12.

"Standard Terms": This Standard Terms for Indentures, dated as of April 10, 2007 by and among the Co-Issuers and the Trustee, as amended from time to time.

"Treasury Regulations": The U.S. Treasury Regulations promulgated under the Code.

"Transfer Agent": The Person or Persons, which may be the Issuer, authorized by the Issuer to exchange or register the transfer of Notes.

"Trust Officer": When used with respect to the Trustee, any officer within the Corporate Trust Office (or any successor group of the Trustee) authorized to act for or on behalf of the Trustee and having direct responsibility for the administration of this Indenture, including any vice president, assistant vice president, or other officer of the Trustee customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred at the Corporate Trust Office because of his or her knowledge of and familiarity with the particular subject.

"UCC": The Uniform Commercial Code as in effect from time to time in the State of New York.

"Uncertificated Security": The meaning specified in Section 8-102(a)(18) of the UCC.

"Unregistered Securities": The meaning specified in Section 5.17(c).

"U.S. Person": The meaning specified under Regulation S under the Securities Act.

"U.S. Resident": A "U.S. resident" within the meaning of the Investment Company Act.

-11-

Section 1.2    <u>Other Definitional Provisions; Rating Specifications</u>.

(a) All references in this Standard Terms to designated "Articles," "Sections," "Subsections" and other subdivisions are to the designated Articles, Sections, Subsections and other subdivisions of this instrument as originally executed.

(b) The words "herein," "hereof," "hereunder," "hereto" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section, Subsection or other subdivision.

(c) Notwithstanding anything herein to the contrary, if a Moody's rating or an S&P rating is specified herein, such rating shall only be applicable if Moody's or S&P is specified as a Rating Agency in the Series Indenture.

Section 1.3    <u>Integration of Standard Terms and Series Indenture</u>.

This Standard Terms shall not be effective with respect to the Notes or otherwise unless the Issuer and the Trustee shall have each executed and delivered the Series Indenture related to such Notes, it being the intent of the parties that the execution and delivery of this Standard Terms shall be solely for the purpose of establishing the provisions that may be incorporated from time to time with respect to a series of Notes, as such provisions may be modified by the Series Indenture executed and delivered in respect of such series of Notes.

## ARTICLE II

## THE NOTES

Section 2.1    <u>Forms Generally</u>.  The form of the Notes, including the Certificate of Authentication, shall be as set forth respectively as <u>Exhibits A-1(a)</u> and <u>A-1(b)</u> attached hereto.

(a) <u>Regulation S Notes</u>.  Except as provided below, the Notes sold to Persons that are neither U.S. Persons nor U.S. Residents in transactions outside of the United States in reliance on Regulation S shall be issued initially in the form of one or more permanent global notes in definitive, fully registered form without interest coupons in the form of, and with the applicable legends set forth in, <u>Exhibit A-1(b)</u> attached hereto (a "<u>Regulation S Global Note</u>"), which shall be deposited on behalf of the subscribers for such Notes represented thereby with the Trustee as custodian for the Depositary and registered in the name of a nominee of the Depositary for the respective accounts of Clearstream and Euroclear, duly executed by the Co-Issuers and authenticated by the Trustee as hereinafter provided.  The Co-Issuers expect that Clearstream and Euroclear shall hold beneficial interests on behalf of their participants through their respective depositories, and such depositories shall hold such beneficial interests in the Regulation S Global Notes in participants' securities accounts in the depositories' names on the books of the Depositary.  The Aggregate Outstanding Amount of the

Regulation S Global Notes may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depositary, or their respective nominees, as the case may be, as hereinafter provided.

(b) <u>Rule 144A Notes</u>. The Notes offered and sold in the United States to Persons that are both Qualified Institutional Buyers and Qualified Purchasers in reliance on the exemption from registration under Rule 144A and qualified for resale to Persons that are both Qualified Institutional Buyers and Qualified Purchasers under Rule 144A, in a transaction exempt from registration under the Securities Act shall be issued initially in the form of one or more permanent global notes in definitive, fully registered form without interest coupons in the form of, and with the applicable legends set forth in, <u>Exhibit A-1(c)</u> attached hereto (a "<u>Rule 144A Global Note</u>" and, together with the Regulation S Global Notes, the "<u>Global Notes</u>"), which shall be deposited on behalf of the subscribers for such Notes represented thereby with the Trustee as custodian for the Depositary and registered in the name of a nominee of the Depositary duly executed by the Co-Issuers and authenticated by the Trustee as hereinafter provided. The Aggregate Outstanding Amount of the Rule 144A Global Notes may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depositary, or their respective nominees, as the case may be, as hereinafter provided.

(c) <u>Certificated Notes</u>. The Notes offered and sold in the United States to Persons that are both Accredited Investors and Qualified Purchasers, in a transaction exempt from registration under the Securities Act shall be issued in definitive, fully registered, certificated form, and with the applicable legends set forth in <u>Exhibit A-1(a)</u> attached hereto (the "<u>Certificated Notes</u>"), which shall be registered in the name of the Holder thereof, duly executed by the Co-Issuers and authenticated by the Trustee as hereinafter provided.

(d) <u>Book-Entry Provisions</u>. This <u>Section 2.1(d)</u> shall apply only to Rule 144A Global Notes and Regulation S Global Notes (collectively, the "<u>Global Notes</u>") deposited with or on behalf of the Depositary.

The Co-Issuers shall execute and the Trustee shall, in accordance with this <u>Section 2.1(d)</u>, authenticate and deliver initially one or more Global Notes that (i) shall be registered in the name of the nominee of the Depositary for such Global Note or Global Notes and (ii) shall be delivered by the Trustee to the Depositary pursuant to the instructions of the Depositary or held by the Trustee, as custodian for the Depositary.

Agent Members shall have no rights under this Indenture with respect to any Global Note held on their behalf by the Trustee, as custodian for the Depositary, or under the Global Note, and the Depositary may be treated by the Co-Issuers, the Trustee, and any agent of the Co-Issuers, or the Trustee as the absolute owner of such Global Note for all purposes whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Co-Issuers, the Trustee, or any agent of the Co-Issuers or the Trustee, from giving effect to any written certification, proxy or other authorization furnished by the Depositary or impair, as between the

Depositary and its respective Agent Members, the operation of customary practices governing the exercise of the rights of a Holder of any Global Note.

(e) <u>Beneficial Interests in Global Notes</u>.  Except as provided in <u>Section 2.09</u> hereof, owners of beneficial interests in Global Notes shall not be entitled to receive physical delivery of certificated Notes.

(f) <u>CUSIP, Common Code, ISIN and "Private Placement" Numbers</u>.  The Co-Issuers in issuing the Notes may use "CUSIP", "Common Code", "ISIN" or "private placement" numbers (if then generally in use), and, if so, the Trustee will indicate the "CUSIP", "Common Code", "ISIN" or "private placement" numbers of the Notes in notices of redemption and related materials as a convenience to Holders; *provided, however, that* with respect to any such notice the Trustee shall not be deemed to make any representation as to the correctness of such numbers either as printed on the Notes or as contained in any such notice.

(g) The Depositary for the Global Notes shall initially be DTC.

(h) The Notes shall be numbered, lettered or otherwise distinguished in such manner as may be consistent herewith, determined by the Authorized Officers of the Co-Issuers executing such Notes as evidenced by their execution of such Notes.

Section 2.2    <u>Execution, Authentication, Delivery and Dating</u>.

(a) The Notes shall be executed on behalf of the Co-Issuers by an Authorized Officer of each of the Co-Issuers.  The signatures of such Authorized Officer on the Notes may be manual or facsimile (including in counterparts).

(b) Notes bearing the manual or facsimile signatures of an individual who was at any time the Authorized Officer of the Issuer shall bind such Person, notwithstanding the fact that such individual has ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such office at the date of issuance of such Notes.

(c) At any time and from time to time after the execution and delivery of this Indenture, the Co-Issuers may deliver the Notes to the Trustee or the Authenticating Agent for authentication, and the Trustee or the Authenticating Agent, upon Issuer Order, shall authenticate and deliver such Notes as provided in this Indenture and not otherwise.

(d) Each Note authenticated and delivered by the Trustee or the Authenticating Agent to or upon Issuer Order on the Closing Date shall be dated as of the Closing Date.  All other Notes that are authenticated after the Closing Date for any other purpose under this Indenture shall be dated the date of their authentication.

(e) Notes issued upon transfer, exchange or replacement of other Notes shall be issued in authorized denominations reflecting the original Aggregate Outstanding Amount of the Notes so transferred, exchanged or replaced, but shall represent only the current Aggregate Outstanding Amount of

the Notes so transferred, exchanged or replaced. In the event that any Note is divided into more than one Note in accordance with this Article II, the original Aggregate Outstanding Amount of such Note shall be proportionately divided among the Notes delivered in exchange therefor and shall be deemed to be the original Aggregate Outstanding Amount of such subsequently issued Notes.

(f) No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication (the "Certificate of Authentication"), substantially in the form provided for herein, executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

Section 2.3    Registration, Transfer and Exchange of Notes.

(a) (i)    The Trustee is hereby appointed as the registrar hereunder (the "Note Registrar") and as Transfer Agent with respect to the Notes. The Note Registrar shall keep a register (the "Note Register") at the Corporate Trust Office in which, subject to such reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and the registration of transfers of Notes. Upon any resignation or removal of the Note Registrar, the Issuer shall promptly appoint a successor or, in the absence of such appointment, assume the duties of Note Registrar.

(ii)    If a Person other than the Trustee is appointed by the Issuer as Note Registrar, the Issuer will give the Trustee prompt written notice of the appointment of a Note Registrar and of the location, and any change in the location, of the Note Registrar, and the Trustee shall have the right to inspect the Note Register at all reasonable times and to obtain copies thereof, and the Trustee shall have the right to rely upon a certificate executed on behalf of the Note Registrar by an Authorized Officer thereof as to the names and addresses of the Holders of the Notes and the Aggregate Outstanding Amount and numbers of such Notes.

(iii)    Subject to this Section 2.3, upon surrender for registration of transfer of any Notes at the office or agency of the Co-Issuers to be maintained as provided in Section 7.4, the Co-Issuers or the Issuer, as applicable, shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes of any authorized denomination and of a like Aggregate Outstanding Amount.

(iv)    At the option of the Holder, Notes may be exchanged for Notes of like terms, in any authorized denominations and of like Aggregate Outstanding Amount, upon surrender of the Notes to be exchanged at such office or agency. Whenever a Note is surrendered for exchange, the Co-Issuers shall execute and the Trustee shall authenticate and deliver the Notes that the Noteholder making the exchange is entitled to receive.

(v)     All Notes issued and authenticated upon any registration of transfer or exchange of Notes shall be the valid obligations of the Co-Issuers, evidencing the same debt and entitled to the same benefits under this Indenture, as the Notes surrendered upon such registration of transfer or exchange.

(vi)     Every Note presented or surrendered for registration of transfer or exchange shall be duly indorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Co-Issuers and the Note Registrar duly executed, by the Holder thereof or his attorney duly authorized in writing.

(vii)     No service charge shall be made to a Holder for any registration of transfer or exchange of Notes, but the Trustee may require payment of a sum sufficient to cover (a) any tax or other governmental charge payable in connection therewith and (b) any expenses of delivery (if any) not made by regular mail.

(viii)     The Co-Issuers hereby appoint the Note Registrar as a Transfer Agent for the exchange or registration of the transfer of the Notes.

(ix)     The Co-Issuers shall not be required (i) to issue, register the transfer of or exchange any Note during (a) the period between the Record Date and Payment Date and (b) a period beginning at the opening of business 15 days before any selection of Notes to be redeemed and ending at the close of business on the day of the mailing of the relevant notice of redemption, or (ii) to register the transfer of or exchange any Note so selected for redemption.

(x)     All payments made by the Co-Issuers under the Notes will be made without any deduction or withholding for or on account of any tax unless such deduction or withholding is required by any applicable law, as modified by the practice of any relevant governmental revenue authority, then in effect.  If the Co-Issuers are so required to deduct or withhold, then the Co-Issuers or the Issuer, as applicable, will not be obligated to pay any additional amounts in respect of such withholding or deduction.

(b) No Note may be sold or transferred by a Holder (including, without limitation, by pledge or hypothecation) unless such sale or transfer is exempt from the registration requirements of the Securities Act and is exempt under applicable state securities laws.

No Note may be offered, sold or delivered within the United States or to, or for the benefit of, U.S. Persons or U.S. Residents except (i) (A) in accordance with Rule 144A, to Persons that are both Qualified Institutional Buyers and Qualified Purchasers, purchasing for their own account or for the accounts of one or more Qualified Institutional Buyers that are Qualified Purchasers for which the purchaser is acting as fiduciary or agent and exercises sole investment discretion or (B) in reliance on an exemption from registration under the Securities Act, to Persons that are both Accredited Investors and Qualified Purchasers or (ii) in accordance with the provisions of this Article II, and any resale of a Note within the United States or to, or for the benefit of, U.S. Persons or U.S. Residents may only be made (i) in accordance with Rule 144A, to Persons that are both Qualified Institutional Buyers and Qualified Purchasers

-17-

purchasing for their own account or for the accounts of one or more Qualified Institutional Buyers that are Qualified Purchasers for which the purchaser is acting as fiduciary or agent and exercises sole investment discretion, or (ii) in reliance on an exemption from registration under the Securities Act, to Persons that are both Accredited Investors and Qualified Purchasers. The Notes may also be sold or resold, as the case may be, in offshore transactions to Persons that are neither U.S. Persons nor U.S. Residents in reliance on Regulation S. None of the Co-Issuers, the Trustee or any other Person may register the Notes under the Securities Act or any state securities laws.

(c) For so long as any of the Notes are Outstanding, the Issuer shall not transfer any stock of the Issuer to U.S. Persons or U.S. Residents and the Co-Issuer shall not transfer any equity interest in the Co-Issuer to U.S. Persons or U.S. Residents.

(d) Upon final payment of unpaid principal due on a Note, the Holder thereof shall present and surrender such Note at the Corporate Trust Office of the Trustee or at the office of any Paying Agent (outside the United States if then required by applicable law in the case of a definitive Note issued in exchange for a beneficial interest in the Regulation S Global Note pursuant to Section 2.09); *provided, however, that* if there is delivered to the Co-Issuers and the Trustee such security or indemnity as may be required by them to save each of them harmless and an undertaking thereafter to surrender such certificate, then, in the absence of notice to the Issuer, the Co-Issuer or the Trustee that the applicable Note has been acquired by a bona fide purchaser, such final payment shall be made without presentation or surrender.

(e) So long as a Global Note remains outstanding and is held by or on behalf of the Depositary, transfers of a Global Note, in whole or in part, shall only be made in accordance with this Section 2.3(e).

(i)    Subject to clauses (ii) through (vi) of this Section 2.3(e), transfers of a Global Note shall be limited to transfers of such Global Note in whole, but not in part, to nominees of the Depositary or to a successor of the Depositary or such successor's nominee. Furthermore, interest in a Global Note may not be transferred to a person taking delivery in the form of an interest in a Certificated Note or exchanged for an interest in a Certificated Note.

(ii)    Rule 144A Global Note to Regulation S Global Note. If a Beneficial Owner of an interest in a Rule 144A Global Note deposited with the Depositary wishes at any time to exchange all or a portion of its interest in such Rule 144A Global Note for an interest in a Regulation S Global Note, or to transfer all or a portion of its interest in such Rule 144A Global Note to a Person who wishes to take delivery thereof in the form of an interest in a Regulation S Global Note, such Beneficial Owner, provided such Beneficial Owner or, in the case of a transfer, the transferee, is not a U.S. Person or a U.S. Resident, may, subject to the rules and procedures of the Depositary, exchange or transfer, or cause the exchange or transfer of, such interest for an equivalent beneficial interest in the Regulation S Global Note; *provided, however,* that the remaining original stated principal

amount of such Beneficial Owner's beneficial interest in the Rule 144A Global Note shall either equal zero or meet the required minimum denomination of $500,000 and integral multiples of $1,000 in excess thereof. Upon receipt by the Note Registrar of (A) instructions given in accordance with the Depositary's procedures from an Agent Member directing the Note Registrar to cause to be credited a beneficial interest in a Regulation S Global Note in an amount equal to the beneficial interest in such Rule 144A Global Note, but not less than the required minimum denomination of $500,000 and integral multiples of $1,000 in excess thereof, to be exchanged or transferred, (B) a written order given in accordance with the Depositary's procedures containing information regarding the participant account of the Depositary and, in the case of an exchange or transfer pursuant to and in accordance with Regulation S, the Euroclear or Clearstream account to be credited with such increase and (C) a certificate substantially in the form of Exhibit B-1 attached hereto given by the Beneficial Owner of such beneficial interest (in the case of an exchange) or the transferee of such beneficial interest (in the case of a transfer) stating, among other things, that the exchange or transfer of such interest has been made in compliance with the transfer restrictions applicable to the Global Securities, including that the transfer or exchange is being made to a Person that is neither a U.S. Person nor a U.S. Resident, the Note Registrar shall instruct the Depositary to reduce the principal amount of the Rule 144A Global Note and to increase the principal amount of the Regulation S Global Note by the aggregate principal amount of the beneficial interest in the Rule 144A Global Note to be exchanged or transferred, and to credit or cause to be credited to the securities account of the Person specified in such instructions a beneficial interest in the Regulation S Global Note equal to the reduction in the principal amount of the Rule 144A Global Note. A U.S. Person or a U.S. Resident may not hold an interest in a Regulation S Global Note at any time. In addition, an interest in a Regulation S Global Note may only be held through Euroclear or Clearstream.

(iii)    Rule 144A Global Note to Rule 144A Global Note. If a Beneficial Owner of an interest in a Rule 144A Global Note deposited with the Depositary wishes at any time to transfer all or a portion of its interest in such Rule 144A Global Note to a transferee who wishes to take delivery thereof in the form of an interest in a Rule 144A Global Note, such Beneficial Owner may, subject to the applicable rules and procedures of the Depositary, transfer, or cause the transfer of, such interest in the Rule 144A Global Note; provided, however, that the remaining original stated principal amount of such Beneficial Owner's beneficial interest in the Rule 144A Global Note shall either equal zero or meet the required minimum denomination of $500,000 and integral multiples of $1,000 in excess thereof.

(iv)    Regulation S Global Note to Rule 144A Global Note. If a Beneficial Owner of an interest in a Regulation S Global Note deposited with the Depositary wishes at any time to exchange all or a portion of its interest in a Regulation S Global Note for an interest in a Rule 144A Global Note, or to transfer all or a portion of its interest in such Regulation S Global Note to a Person who wishes to take delivery thereof in the form of an interest in a Rule 144A Global Note, such Beneficial Owner or, in the case of a transfer, the transferee may, subject to the rules and procedures of Euroclear, Clearstream or the Depositary, as the case may be, exchange or transfer or cause the

-19-

exchange or transfer of, such interest for an equivalent beneficial interest in a Rule 144A Global Note; *provided, however,* that the remaining original stated principal amount of such Beneficial Owner's beneficial interest in the Regulation S Global Note shall either equal zero or meet the required minimum denomination of $500,000 and integral multiples of $1,000 in excess thereof. Upon receipt by the Note Registrar of (A) instructions from Euroclear, Clearstream or the Depositary, as the case may be, directing the Note Registrar to cause to be credited a beneficial interest in a Rule 144A Global Note in an amount equal to the beneficial interest in such Regulation S Global Note, but not less than the required minimum denomination of $500,000 and integral multiples of $1,000 in excess thereof, to be exchanged or transferred, such instructions to contain information regarding the participant account with the Depositary to be credited with such increase, and (B) a certificate substantially in the form of Exhibit B-2 attached hereto given by the Beneficial Owner of such beneficial interest (in the case of an exchange) or the transferee of such beneficial interest (in the case of the transfer) stating, among other things, that the exchange or transfer of such interest has been made in compliance with the transfer restrictions applicable to Global Securities, including that the transfer or exchange is being made in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any State of the United States or any other jurisdiction and that the Beneficial Owner (in the case of an exchange) or the transferee of such beneficial interest (in case of a transfer) is a Qualified Institutional Buyer and a Qualified Purchaser and, then Euroclear or Clearstream or the Note Registrar, as the case may be, shall instruct the Depositary to reduce the Regulation S Global Note by the aggregate principal amount of the beneficial interest in the Regulation S Global Note to be transferred or exchanged and the Note Registrar shall instruct the Depositary, concurrently with such reduction, to credit or cause to be credited to the securities account of the Person specified in such instructions a beneficial interest in the Rule 144A Global Note equal to the reduction in the principal amount of the Regulation S Global Note.

(v)    Other Exchanges. In the event that a Global Note is exchanged for Notes in definitive registered form without interest coupons pursuant to Section 2.09 hereof, such Notes may be exchanged for one another only in accordance with such procedures as are substantially consistent with the provisions above (including certification requirements intended to ensure that such transfers comply with Regulation S and Rule 144A), and as may be from time to time adopted by the Co-Issuers and the Trustee.

(vi)    Restrictions on U.S. Transfers. Interests in any Regulation S Global Note may not be transferred to a U.S. Person or a U.S. Resident at any time.

Notwithstanding anything herein or in the Indenture to the contrary, a beneficial interest in a Global Note may be transferred (directly or indirectly) only if (i) such transfer is approved by the Issuer, (ii) the transferor of such beneficial interest notifies the Administrator in writing of its intention to transfer such beneficial interest, and (iii) such notice (A) identifies the transferee, (B) contains a transfer certificate executed by the transferee which includes each of the representations, warranties and agreements set forth below under in Section 2.3(i) or 2.3(j) as applicable, and (C) contains any other information reasonably requested by the Trustee or the Administrator. **Any purported sales or transfers of any beneficial interest in a Global Note**

**to a transferee which does not comply with the requirements of this paragraph shall be null and void *ab initio*.**

(f) So long as the Certificated Notes remain Outstanding, transfers and exchanges of a Certificated Note, in whole or in part, shall only be made in accordance with this Section 2.3(f).

(i) Transfer of Certificated Notes to Certificated Notes. If a Holder of a Certificated Note wishes at any time to transfer such Certificated Note to a transferee, such Holder may transfer or cause the transfer of such Certificated Note for an equivalent interest in one or more Certificated Notes as provided below; provided, that the Aggregate Outstanding Amount of such Holder's interest in the Certificated Note transferred to the transferee must meet the required minimum denomination of $250,000 and integral multiples of $1,000 in excess thereof and the remaining original Aggregate Outstanding Amount of such Holder's interest in the Certificated Note shall either equal zero or meet such required minimum denominations. Upon receipt by the Issuer and the Note Registrar of (A) such Holder's Certificated Note properly indorsed for assignment in whole or in part to the transferee, (B) a certificate in substantially the form of Exhibit B-2 attached hereto given by the transferee of such interest. No portion of a Certificated Note may be transferred to a person taking delivery in the form of an interest in a Global Note or exchanged for an interest in a Global Note

(ii) Exchange of Certificated Notes. If a Holder of an interest in one or more Certificated Notes wishes at any time to exchange such Certificated Notes for one or more such Certificated Notes of different original Aggregate Outstanding Amount, such Holder may exchange or cause the exchange of such interest for an equivalent interest in the applicable Certificated Notes bearing the same designation as the Certificated Notes indorsed for exchange as provided below. Upon receipt by the Note Registrar of (A) such Holder's Certificated Notes properly indorsed for such exchange and (B) written instructions from such Holder designating the number and original Aggregate Outstanding Amounts of the applicable Certificated Notes to be issued (the aggregate of such original Aggregate Outstanding Amounts being equal to the original Aggregate Outstanding Amount of the Certificated Notes surrendered for exchange), then the Trustee shall cancel such Certificated Notes in accordance with Section 2.6 and instruct the Note Registrar to record the exchange in the Note Register and the Issuer shall execute and, upon receipt of an Issuer Order, the Trustee shall authenticate and deliver one or more applicable Certificated Notes bearing the same designation as the Certificated Notes indorsed for exchange, registered in the same names as the Certificated Notes surrendered by such Holder, in different original Aggregate Outstanding Amounts designated by such Holder (the aggregate of such amounts being equal to the interest in the Certificated Notes surrendered by such Holder), and in the required minimum denominations.

(g) If Notes are issued upon the transfer, exchange or replacement of Notes bearing the applicable legends set forth in Exhibits A-1(a), A-1(b), or A-1(C), as applicable, and if a request is made to remove such applicable legend on such Notes, the Notes so issued shall bear such applicable legend, or such

applicable legend shall not be removed, as the case may be, unless there is delivered to the Co-Issuers such satisfactory evidence, which may include an opinion of counsel licensed to practice law in the State of New York, as may be reasonably required by the Co-Issuers to the effect that neither such applicable legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A, Regulation D or Regulation S, as applicable, and that the Issuer is not required to register under the Investment Company Act. Upon provision of such satisfactory evidence, the Co-Issuers shall execute and the Trustee, at the direction of the Co-Issuers shall authenticate and deliver Notes that do not bear such applicable legend.

(h) Each transferee of a Certificated Note shall be required to make the following representations, warranties and agreements in a transfer certificate substantially in the form of Exhibit B-1 attached hereto:

(i)    *Investor Status.*  The transferee represents and warrants that it is purchasing the Note for its own account, in the minimum denominations of $250,000 and integral multiples of $1,000 in excess thereof, and is (i) both a Qualified Institutional Buyer and a Qualified Purchaser, (ii) both an Accredited Investor and a Qualified Purchaser, or (iii) neither a U.S. Person nor a U.S. Resident.

(ii)    *Securities Law Limitations on Resale.*  The transferee agrees on its own behalf and on behalf of any account for which it is purchasing the Certificated Note to offer, sell or otherwise transfer such Certificated Note only (i) in the required minimum denominations, and (ii)(A) in the United States, only in the form of a Certificated Note (1) to a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, to whom notice is given that the resale, pledge or other transfer is being made in reliance on the exemption from Securities Act registration provided by Rule 144A thereof, and none of which are (x) a dealer of the type described in paragraph (a)(1)(ii) of Rule 144A unless it owns and invests on a discretionary basis not less than $25,000,000 in securities of issuers that are not affiliated to it, or (y) formed for the purpose of investing in the Issuer or the Co-Issuer (except where each beneficial owner of the transferee is a Qualified Purchaser), or (2) to a person that is both an Accredited Investor and a Qualified Purchaser, in a transaction exempt from registration under the Securities Act (*provided*, that in the case of any transfer pursuant to this clause (2), the transferee or the transferee has provided an opinion of counsel to each of the Trustee and the Co-Issuers that such transfer may be made pursuant to an exemption from registration under the Securities Act), or (B) outside the United States in the form of a Certificated Note to a person that is neither a U.S. Person nor a U.S. Resident in an offshore transaction in accordance with Regulation S under the Securities Act. The transferee agrees to provide notice of such transfer restrictions to any subsequent transferee.

(iii)    *Minimum Denominations.*   The transferee agrees that no Note (or any interest therein) may be sold, pledged or otherwise transferred in a denomination of less than $250,000 and integral multiples of $1,000 in excess thereof.

(iv)    *No Governmental Approval.*   The transferee understands that the Notes have not been approved or disapproved by the SEC or any other governmental authority or agency of any jurisdiction, nor has the SEC or any other governmental authority or agency passed upon the accuracy or adequacy of this Offering Memorandum.   Any representation to the contrary is a criminal offense.

(v)    *Transferee Sophistication; Non-Reliance; Suitability; Access to Information.*   The transferee (i) has such knowledge and experience in financial and business matters that the transferee is capable of evaluating the merits and risks (including for tax, legal, regulatory, accounting and other financial purposes) of its prospective investment in the Notes, (ii) is financially able to bear such risk, (iii) in making such investment is not relying on the advice or recommendations of the Managers, the Co-Issuers or any of their respective affiliates (or any representative of any of the foregoing) and (iv) has determined that an investment in the Notes is suitable and appropriate for it.   The transferee has received, and has had an adequate opportunity to review the contents of, the Offering Memorandum.   The transferee has had access to such financial and other information concerning the Co-Issuers and the Notes as it has deemed necessary to make its own independent decision to purchase such Notes, including the opportunity, at a reasonable time prior to its purchase of such Notes, to ask questions and receive answers concerning the Co-Issuers and the terms and conditions of the offering of the Notes.

(vi)    *Limited Liquidity.*   The transferee understands that there is no market for the Notes and that no assurance can be given as to the liquidity of any trading market for the Notes and that it is unlikely that a trading market for the Notes will develop.   It further understands that, although the Managers may from time to time make a market in the Notes, the Managers are under no obligation to do so and, following the commencement of any market-making, may discontinue the same at any time.   Accordingly, the transferee must be prepared to hold the Notes until the legal final maturity date of the Notes.

(vii)    *Investment Company Act.*   The transferee agrees that no sale, pledge or other transfer of a Note (or any interest therein) may be made if such transfer would have the effect of requiring either of the Co-Issuers or the Collateral to register as an investment company under the Investment Company Act.

(viii)    *ERISA.*   The transferee (i) is not using funds to effect the purchase of the Notes that constitute assets of a "Benefit Plan Investor" (as defined in the Plan Asset Regulation of the United States Department of Labor, 29 C.F.R. Section 2510.3-101(f) (the "Plan Asset Regulation")), including but not limited to any insurance company acting on behalf of its general account, any insurance company separate account and any collective investment fund and (ii) is not a person exercising discretionary authority or control over the Issuer's assets or who provides investment advice to the Issuer for a

-23-

direct or indirect fee or any affiliate of any such person (any such person, a "Controlling Person"). The transferee understands and agrees that the information supplied above will be utilized to determine whether Benefit Plan Investors own less than 25% of the Notes as determined under the Plan Asset Regulation after disregarding Notes held by Controlling Persons both upon the original issuance of the Notes and upon any subsequent transfer of Notes for any reason. The transferee agrees to provide prompt written notice to each of the Issuer and the Trustee of any change in the information supplied above and further information regarding its status upon written request by the Issuer or the Trustee to such transferee. The transferee further acknowledges and agrees that the Indenture will entitle the Issuer to require such holder to dispose of its Notes as soon as practicable following such notification by such holder.

The representations to be made pursuant to this subsection (viii) shall be deemed made on each day from the date the transferee makes such representations through and including the date on which such transferee disposes of its interests in the Notes.

(ix)    *Certain Transfers Void.*  The transferee agrees that (i) any sale, pledge or other transfer of a Note (or any interest therein) made in violation of the transfer restrictions contained in this Section 2.3(h), or made based upon any false or inaccurate representation made by the transferee or a subsequent transferee to the Co-Issuers, will be void and of no force or effect and (ii) none of the Co-Issuers, the Trustee or the Note Registrar has any obligation to recognize any sale, pledge or other transfer of a Note (or any interest therein) made in violation of any such transfer restriction or made based upon any such false or inaccurate representation.

(x)    *Cayman Islands.*  The transferee is not a member of the public in the Cayman Islands.

(xi)    *Credit Swap Counterparty.*  The transferee acknowledges that the Credit Swap Counterparty will enter into the Credit Swaps and exercise its rights and perform its obligations thereunder solely on its own behalf and not as agent, fiduciary or in any other capacity on behalf of the Issuer, the holders of the Notes or any other Person.  The transferee understands and acknowledges that (i) the interests of the Credit Swap Counterparty under the Credit Swaps may be adverse to the interests of the Issuer and the Noteholders, (ii) in selecting Reference Entities, Reference Obligations and Benchmark Obligations, declaring Credit Events and taking other actions permitted or required to be taken by the Credit Swap Counterparty under the Credit Swaps, the Credit Swap Counterparty will act within the parameters established under the Credit Swaps, however, any actions taken by the Credit Swap Counterparty will be in the Credit Swap Counterparty's own best interests, as determined by the Credit Swap Counterparty in its sole judgment, and any such action may not be in the interest of, and may be directly adverse to, the Issuer and the Noteholders, and (iii) the Credit Swap Counterparty is not obligated to consider the interests of the Issuer or the Noteholders in selecting Reference Entities, Reference Obligations and Benchmark Obligations, declaring Credit Events or taking other actions permitted or required to be taken by the Credit Swap Counterparty under the Credit Swaps.

-24-

(xii)   *Due Authorization; Capability.*  If the transferee is not a natural person, the transferee has the power and authority to enter into each agreement required to be executed and delivered by or on behalf of the transferee in connection with its purchase of Notes and to perform its obligations thereunder and consummate the transactions contemplated thereby, and the person signing any such documents on behalf of the transferee has been duly authorized to execute and deliver such documents and each other document required to be executed and delivered by the transferee in connection with its purchase of Notes.  If the transferee is an individual, the transferee has all requisite legal capacity to acquire and hold the Notes and to execute, deliver and comply with the terms of each of the documents required to be executed and delivered by the transferee in connection with the subscription for the Notes.  Such execution, delivery and compliance by the transferee does not conflict with, or constitute a default under, any instruments governing the transferee, any applicable law, regulation or order, or any material agreement to which the transferee is a party or by which the transferee is bound.

(xiii)   *Permanent Address.*  If the transferee's permanent address is located in the United States, the transferee was offered the Notes in the state of such transferee's permanent address and intends that the securities law of that state govern the transferee's subscription for the Notes.

(xiv)   *Certain Tax Matters.*  The transferee understands that any Co-Issuer, Trustee or Paying Agent shall require certification acceptable to it (i) as a condition to the payment of principal of and interest on any Notes without, or at a reduced rate of, U.S. withholding or backup withholding tax, and (ii) to enable each Co-Issuer, the Trustee and any Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold from payments in respect of such Notes or the Holder of such Notes under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.  Such certification may include U.S. federal income tax forms (such as IRS Form W-8BEN (Certification of Foreign Status of Beneficial Owner), Form W-8IMY (Certification of Foreign Intermediary Status), IRS Form W-9 (Request for Taxpayer Identification Number and Certification), or IRS Form W-8ECI (Certification of Foreign Person's Claim for Exemption from Withholding on Income Effectively Connected with Conduct of a U.S. Trade or Business) or any successors to such IRS forms).  In addition, any Co-Issuer, Trustee or Paying Agent may require certification acceptable to it to enable the Issuer to qualify for a reduced rate of withholding in any jurisdiction from or through which the Issuer receives payments on its assets.  Each transferee agrees to provide any certification requested pursuant to this paragraph and to update or replace such form or certification in accordance with its terms or its subsequent amendments.

(xv)   *Tax Treatment.*  The Issuer intends, and each purchaser hereby agrees to treat the Notes as described in the "--Certain U.S. Federal Income Tax Considerations" section of the Offering Memorandum for all U.S. federal income tax purposes and such purchaser will take no action inconsistent with such treatment, unless required by law.

(xvi)    *Tax Transfer Restrictions.*

(a) The transferee agrees that it will not (A) acquire, sell, transfer, assign, pledge or otherwise dispose of any of its Notes (or any interest therein that is described in Treasury Regulations Section 1.7704-1(a)(2)(i)(B)) on or through (x) a United States national, regional or local securities exchange, (y) a foreign securities exchange or (z) an interdealer quotation system that regularly disseminates firm buy or sell quotations by identified brokers or dealers (including, without limitation, the National Association of Securities Dealers Automated Quotation System) ((x), (y) and (z), collectively, an "Exchange") or (B) cause any of its Notes or any interest therein to be marketed on or through an Exchange.

(b)    The transferee agrees that it will not enter into any financial instrument payments on which, or the value of which, is determined in whole or in part by reference to the Notes, or the Issuer (including the amount of Issuer distributions or interest on the Notes, the value of the Issuer's assets, or the result of the Issuer's operations), or any contract that otherwise is described in Treasury Regulations Section 1.7704-1(a)(2)(i)(B), without the consent of the holders of a majority of the Notes.

(c)    If the transferee is a partnership, grantor trust or S corporation, less than 50% of the value of any person's interest in such partnership, grantor trust or S corporation is attributable to the transferee's interest in the Issuer, or the Note Registrar otherwise determines that transfer to such partnership, grantor trust, or S Corporation will not cause the Issuer to be unable to rely on the "private placement" safe harbor of Treasury Regulation Section 1.7704-1(h).

(d)    The transferee agrees to be bound by the restrictions and conditions set forth in the Indenture and acknowledge and agree that it may not directly or indirectly assign, participate, pledge, hypothecate, rehypothecate, exchange or otherwise dispose of or transfer in any manner (each a "Transfer") its interest in the Notes unless: (A) the transferee signs a Transfer Certificate and (B) such Transfer does not violate Section 2.3 of the Indenture. Any purported Transfer that does not satisfy the above mentioned conditions shall be null, void and of no effect.

(e)    The transferee agrees that the Note Registrar shall monitor all transfers of Notes so that the aggregate number of Noteholders is limited to 90 or fewer Noteholders. In monitoring such transfers, the Note Registrar shall rely solely and exclusively (without any duty to make further inquiry, including without any duty to inquire whether a Noteholder holds for the account of one or more other persons) on (i) information provided to it by Lehman Brothers Inc. on the Closing Date with respect to the number of Noteholders on the Closing Date and (ii) and any transfer certificates received by the Note Registrar subsequent to the Closing Date pursuant to the terms of the Indenture.

(f)    Any transfer that would cause the Issuer to be unable to rely on the "private placement" safe harbor of Treasury Regulations Section 1.7704-1(h) will be void and of no force or effect unless the Issuer has received an Opinion of Counsel that notwithstanding such transfer the Issuer will be treated as a partnership and not as an entity taxable as a corporation for U.S. federal income tax purposes.

-26-

The transferee understand that the representations, warranties and covenants contained in paragraph (xvi) are intended to permit the Issuer to rely, if necessary, on the "private placement" safe harbor from classification as a publicly traded partnership in U.S. Treasury Regulations Section 1.7704-1(h).

(xvii)    *Reliance on Representations, etc.*    The transferee acknowledges that the Co-Issuers, the Managers and others will rely upon the truth and accuracy of the foregoing acknowledgements, representations and agreements and agrees that, if any of the acknowledgements, representations or warranties made or deemed to have been made by it in connection with its purchase of the Notes are no longer accurate, the transferee will promptly notify the Co-Issuers and the Managers.

(i) Each transferee of a Note taking delivery in the form of an interest in a Rule 144A Global Note will be deemed to make the representations, warranties and agreements made by the transferees of a Certificated Note set forth in clauses (iv) through (xvii) above under Section 2.3(h). Each transferee of a Note taking delivery in the form of an interest in a Rule 144A Global Note will also be deemed to make the following additional representations, warranties and agreements:

(i)    *Qualified Institutional Buyer.*    The transferee represents and warrants that it is purchasing an interest in a Rule 144A Global Note for its own account or one or more accounts with respect to which it exercises sole investment discretion, in each case in minimum denominations of $500,000 and integral multiples of $1,000 in excess thereof, and both it and each such account (if any) (i) is both a Qualified Institutional Buyer and a Qualified Purchaser, (ii) is not a dealer of the type described in paragraph (a)(1)(ii) of Rule 144A unless it owns and invests on a discretionary basis not less than $25,000,000 in securities of issuers that are not affiliated to it, (iii) was not formed for the purpose of investing in the Issuer or the Co-Issuer (except where each beneficial owner of the transferee is a Qualified Purchaser) and (iv) shall provide written notice to any transferee that any transferee taking delivery of the Note or interest therein in accordance with Rule 144A must satisfy the foregoing qualifications.

(ii)    *Securities Law Limitations on Resale.*    The transferee or subsequent transferee agrees on its own behalf and on behalf of any account for which it is purchasing an interest in a Rule 144A Global Note to offer, sell or otherwise transfer such interest only (i) in the required minimum denominations, and (ii)(A) in the United States, only in the form of an interest in a Rule 144A Global Note to a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, to whom notice is given that the resale, pledge or other transfer is being made in reliance on the exemption from Securities Act registration provided by Rule 144A thereof, and none of which are (x) a dealer of the type described in paragraph (a)(1)(ii) of Rule 144A unless it owns and invests on a discretionary basis not less than $25,000,000 in securities of issuers that are not affiliated to it, or (y) formed for the purpose of investing in the Issuer or the Co-Issuer (except where each beneficial

-27-

owner of the transferee is a Qualified Purchaser), or (B) outside the United States in the form of an interest in a Regulation S Global Note, to a person that is neither a U.S. Person nor a U.S. Resident in an offshore transaction in accordance with Regulation S under the Securities Act. The transferee or subsequent transferee agrees to provide notice of such transfer restrictions to any subsequent transferee.

(iii)    *Minimum Denominations.*  The transferee agrees that no interest in a Rule 144A Global Note may be sold, pledged or otherwise transferred in a denomination of less than $500,000 and integral multiples of $1,000 in excess thereof.

(iv)    *Additional Legend.*  Each transferee of a Note taking delivery in the form of an interest in a Rule 144A Global Note in reliance on the exemption from Securities Act registration provided by Rule 144A thereof understands and agrees that an additional legend in substantially form set forth in Exhibit 1-1(c) will be placed on each Note representing an interest in a Rule 144A Global Note.

(v)    *Limitation on Resale of Interests in Rule 144A Global Notes.*  The transferee understands and agrees that before a Note in the form of an interest in a Rule 144A Global Note may be offered, sold, pledged or otherwise transferred to a transferee that takes delivery in the form of an interest in a Regulation S Global Note, the transferee shall be required to provide the Trustee with a transfer certificate in the form provided herein and in the Indenture and such other certificates and other information as the Issuer, any Manager or the Trustee may reasonably require to confirm that the proposed transfer complies with the transfer restrictions contained in this Section 2.3(i);

(vi)    Notwithstanding anything herein to the contrary, a beneficial interest in a Rule 144A Global Note may be transferred only if (i) the transferor of such beneficial interest notifies the Administrator in writing of its intention to transfer such beneficial interest, and (ii) such notice (A) identifies the transferee, (B) contains a representation and warranty from the transferee that the transferee makes each of the representations, warranties and agreements set forth in this <u>Section 2.3(i)</u>, and (C) contains any other information reasonably requested by the Trustee or the Administrator.  Any purported sales or transfers of any beneficial interest in a Rule 144A Global Note to a transferee which does not comply with the requirements of this paragraph shall be null and void *ab initio*.

(vii)    No interest in a Rule 144A Global Note may be transferred to a person taking delivery in the form of an interest in a Certificated Note or exchanged for an interest in a Certificated Note; *provided, however,* that the Managers, as initial purchaser of the Rule 144A Global Note, holding through DTC, may transfer its interest in a Rule 144A Global Note, in whole or in part, to a person taking delivery in the form of an interest in a Certificated Note, in accordance with DTC procedures.

(j) Each transferee of a Note taking delivery in the form of an interest in a Regulation S Global Note will be deemed to make the representations, warranties and agreements made by the transferees of a Note set forth in clauses (iv) through (xvii) above under Section 2.3(h). Each transferee of a Note

-28-

taking delivery in the form of an interest in a Regulation S Global Note will also be deemed to make the following additional representations, warranties and agreements:

(i)  *Non-U.S. Person and Non-U.S. Resident Status.*  The transferee or transferee is neither a U.S. Person nor a U.S. Resident purchasing for its own account or one or more accounts, each of which is neither a U.S. Person nor a U.S. Resident, and as to each of which the transferee or subsequent transferee exercises sole investment discretion, in an offshore transaction in accordance with Regulation S, and is aware that the sale of the Notes to it is being made in reliance on the exemption from registration provided by Regulation S.

(ii)  *Securities Law Limitations on Resale.*  The transferee or subsequent transferee agrees on its own behalf and on behalf of any account for which it is purchasing an interest in a Regulation S Global Note to offer, sell or otherwise transfer such interest only (i) in the required minimum denominations, and (ii)(A) outside the United States in the form of an interest in a Regulation S Global Note, to a person that is neither a U.S. Person nor a U.S. Resident in an offshore transaction in accordance with Regulation S under the Securities Act, or (B) in the United States, only in the form of an interest in a Rule 144A Global Note to a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, to whom notice is given that the resale, pledge or other transfer is being made in reliance on the exemption from Securities Act registration provided by Rule 144A thereof, and none of which are (x) a dealer of the type described in paragraph (a)(1)(ii) of Rule 144A unless it owns and invests on a discretionary basis not less than $25,000,000 in securities of issuers that are not affiliated to it, or (y) formed for the purpose of investing in the Issuer or the Co-Issuer (except where each beneficial owner of the transferee is a Qualified Purchaser).  The transferee agrees to provide notice of such transfer restrictions to any subsequent transferee

(iii)  *Minimum Denominations.*  The transferee agrees that no interest in a Regulation S Global Note may be sold, pledged or otherwise transferred in a denomination of less than $500,000 and integral multiples of $1,000 in excess thereof.

(iv)  *Additional Legend for Notes under Regulation S.*  Each transferee of a Note taking delivery in the form of an interest in a Regulation S Global Note in accordance with Regulation S understands and agrees that an additional legend in substantially the form set forth in Exhibit 1-1(b) will be placed on each Note representing an interest in a Regulation S Global Note.

(v)  *Limitation on Resale of Interests in Regulation S Global Notes under Regulation S.*  The transferee or subsequent transferee understands and agrees that before a Note in the form of an interest in a Regulation S Global Note may be offered, sold, pledged or otherwise transferred to a transferee that takes delivery in the form of an interest in a Rule 144A Global Note, the transferee shall be required to provide the

Trustee with a transfer certificate in the form provided herein and in the Indenture and such other certificates and other information as the Issuer, any Manager or the Trustee may reasonably require to confirm that the proposed transfer complies with the transfer restrictions contained in this Offering Memorandum, in the legend placed on the Notes and in the Indenture.

(vi)    Notwithstanding anything herein to the contrary, a beneficial interest in a Regulation S Global Note may be transferred only if (i) the transferor of such beneficial interest notifies the Administrator in writing of its intention to transfer such beneficial interest, and (ii) such notice (A) identifies the transferee, (B) contains a representation and warranty from the transferee that the transferee makes each of the representations, warranties and agreements set forth in this Section 2.3(j), and (C) contains any other information reasonably requested by the Trustee or the Administrator.  Any purported sales or transfers of any beneficial interest in a Regulation S Global Note to a transferee which does not comply with the requirements of this paragraph shall be null and void *ab initio*.

(vii)    No interest in a Regulation S Global Note may be transferred to a person taking delivery in the form of an interest in a Certificated Note or exchanged for an interest in a Certificated Note; *provided, however,* that the Managers, as initial purchaser of the Regulation S Global Note, holding through DTC, may transfer its interest in a Regulation S Global Note, in whole or in part, to a person taking delivery in the form of an interest in a Certificated Note, in accordance with DTC procedures.

(k) Each initial purchaser of a Note represented by a Certificated Note shall be required to execute and deliver an investor representation letter setting forth the acknowledgments, representations and warranties set forth in the transfer certificate attached hereto as Exhibit B-2.

(l) Each transferee of a Note represented by a Certificated Note shall be required to execute and deliver a transfer certificate in substantially the form attached hereto as Exhibit B-2 to the Trustee in connection with its purchase of the Note.

(m)Notwithstanding anything contained in this Indenture to the contrary, neither the Trustee nor the Note Registrar (nor any other Transfer Agent) shall be responsible or liable for compliance with applicable federal or state securities laws (including, without limitation, the Securities Act or Rule 144A or Regulation S promulgated thereunder), the Investment Company Act, ERISA or the Code (or any applicable regulations thereunder); *provided, however, that* if a specified transfer certificate or Opinion of Counsel is required by the express terms of this Section 2.3 to be delivered to the Trustee or Note Registrar prior to registration of transfer of a Note, the Trustee and/or Note Registrar, as applicable, shall be under a duty to receive such certificate or Opinion of Counsel and to examine the same to determine whether it conforms on its face to the requirements hereof (and the Trustee or Note Registrar, as the case may be, shall promptly

notify the party delivering the same if it determines that such certificate or Opinion of Counsel does not so conform).

Section 2.4    Mutilated, Defaced, Destroyed, Lost or Stolen Notes.    If (a) any mutilated or defaced Note is surrendered to a Transfer Agent, or if there shall be delivered to the Co-Issuers, the Trustee and the Transfer Agent (each, a "Specified Person") evidence to their reasonable satisfaction of the destruction, loss or theft of any Note, and (b) there is delivered to the Specified Persons such security or indemnity as may reasonably be required by them to save each of them harmless (it being understood that if the Holder of such Note is a Qualified Institutional Buyer, such Holder's own unsecured agreement of indemnity shall be deemed to be satisfactory), then in the absence of notice to the Specified Persons that such Note has been acquired by a bona fide purchaser, the Co-Issuers shall execute and, upon Issuer Request, the Trustee shall authenticate and deliver, in lieu of any such mutilated, defaced, destroyed, lost or stolen Note, a new Note of like tenor (including the same date of issuance) and equal original Aggregate Outstanding Amount, registered in the same manner, dated the date of its authentication, bearing interest from the date to which interest has been paid on the mutilated, defaced, destroyed, lost or stolen Note and bearing a number not contemporaneously outstanding.

If, after delivery of such new Note, a bona fide purchaser of the predecessor Note presents for payment, transfer or exchange such predecessor Note, the Specified Persons shall be entitled to recover such new Note from the Person to whom it was delivered or any Person taking therefrom, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Specified Persons in connection therewith.

In case any such mutilated, defaced, destroyed, lost or stolen Note has become due and payable, the Co-Issuers in their discretion may, instead of issuing a new Note, pay such Note without requiring surrender thereof except that any mutilated Note shall be surrendered.

Upon the issuance of any new Note under this Section 2.4, the Co-Issuers, the Trustee or any Transfer Agent may require the payment by the registered holder thereof of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Note issued pursuant to this Section 2.4 in lieu of any mutilated, defaced, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Co-Issuers and such new Note shall be entitled, subject to the second paragraph of this Section 2.4, to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 2.4 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, defaced, destroyed, lost or stolen Notes.

Section 2.5    Persons Deemed Owners.    The Issuer, the Co-Issuer, the Trustee and any agent of any of them (collectively, the "Relevant Persons") may treat the Person in

-31-

whose name any Note is registered as the owner of such Note on the Note Register on the applicable Record Date and on any other date for all other purposes whatsoever (whether or not such Note is overdue), and no Relevant Person shall be affected by notice to the contrary; *provided, however, that* the Depositary shall be deemed the owner of the Global Notes, and Beneficial Owners shall not be considered the owners of any Notes for the purpose of receiving notices.

Section 2.6    Cancellation.    All Notes surrendered for payment, registration of transfer, exchange or redemption, or deemed lost or stolen, shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee, shall promptly be canceled by the Trustee and may not be reissued or resold.  No Notes shall be authenticated in lieu of or in exchange for any Notes canceled as provided in this Section 2.6, except as expressly permitted by this Indenture.  All canceled Notes held by the Trustee shall be destroyed or held by the Trustee in accordance with its standard retention policy unless the Issuer shall direct by an Issuer Order that they be returned to it.  Any Notes purchased by the Co-Issuers shall be immediately delivered to the Trustee for cancellation.

Section 2.7    No Gross Up.    The Issuer shall not be obligated to pay any additional amounts to the Holders or Beneficial Owners as a result of any withholding or deduction for, or on account of, any present or future taxes, duties, assessments or governmental charges.

Section 2.8    Global Notes; Temporary Notes.

(a) A Global Note deposited with the Depositary pursuant to Section 2.1 shall be transferred to the Beneficial Owners thereof only if such transfer complies with Section 2.3 and the Depositary notifies the Co-Issuers that it is unwilling or unable to continue as Depositary for such Global Note or if at any time the Depositary ceases to be a "Clearing Agency" registered under the Exchange Act and a successor depository is not appointed by the Co-Issuers within 90 days after such notice.

(b) Any Global Note that is transferable to the Beneficial Owners thereof pursuant to this Section 2.08 shall be surrendered by the Depositary to the Trustee to be so transferred, in whole or from time to time in part, without charge, and the Trustee shall authenticate and deliver, upon such transfer of each portion of such Global Note, an equal original Aggregate Outstanding Amount of Notes of authorized denominations. Any portion of a Global Note transferred or exchanged pursuant to this Section 2.08 shall be executed, authenticated and delivered only in the required minimum denomination of $500,000 and integral multiples of $1,000 in excess thereof. Any Note delivered in exchange for an interest in a Global Note shall, except as otherwise provided by Section 2.3(g), bear the legend set forth in Exhibits A-1(b) and shall be subject to the transfer restrictions referred to in such legend. The Holder of such a registered individual Note may transfer such Note by surrendering it at the office of the Trustee.

(c) Subject to the provisions of Section 2.08(b), the registered Holder of a Global Note may grant proxies and otherwise authorize any Person, including Agent Members and Persons that may hold interests through Agent Members, to take any action which a Holder is entitled to take under this Indenture or the Notes.

(d) In the event of the occurrence of either of the events specified in Section 2.08(a), the Co-Issuers shall promptly make available to the Trustee a reasonable supply of certificated Notes in definitive, fully registered form without interest coupons.

Pending the preparation of definitive Notes pursuant to this Section 2.08, the Co-Issuers may execute, and upon Issuer Order the Trustee shall authenticate and deliver, temporary Notes that are printed, lithographed, typewritten, mimeographed or otherwise reproduced, in any authorized denomination, substantially of the tenor of the definitive Notes in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the Authorized Officers executing such Notes may determine, as conclusively evidenced by their execution of such Notes.

If temporary Notes are issued, the Co-Issuers shall cause definitive Notes to be prepared without unreasonable delay. The definitive Notes shall be printed, lithographed or engraved, or provided by any combination thereof, or in any other manner permitted by the rules and regulations of any applicable securities exchange, all as determined by the Authorized

Officers executing such definitive Notes. After the preparation of definitive Notes, the temporary Notes shall be exchangeable for definitive Notes upon surrender of the temporary Notes at the office of the Trustee, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Notes, the Co-Issuers shall execute, and, upon receipt of an Issuer Order, the Trustee shall authenticate and deliver, in exchange therefor the same Aggregate Outstanding Amount of definitive Notes of authorized denominations. Until so exchanged, the temporary Notes shall in all respects be entitled to the same benefits under this Indenture as definitive Notes.

Section 2.9    Required Sale of a Note by the Holder Upon the Occurrence of Certain Circumstances. The Co-Issuers shall be entitled to require any Holder of a Certificated Note who is a U.S. Person or a U.S. Resident that is determined not to have been both a Qualified Purchaser and an Accredited Investor at the time of acquisition of the Certificated Note to sell such interest within 30 days after notice of the sale requirement is given to (i) a person who is both an Accredited Investor and a Qualified Purchaser (*provided*, that in the case of any transfer pursuant to this clause (i) the purchaser or the transferee has provided an opinion of counsel to each of the Trustee and the Issuer that such transfer may be made pursuant to an exemption from registration under the Securities Act), (ii) both a Qualified Institutional Buyer and a Qualified Purchaser, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is both a Qualified Institutional Buyer and a Qualified Purchaser, pursuant to and in accordance with Rule 144A, or (iii) a Person taking delivery in the form of an interest in a definitive Regulation S Note that is neither a U.S. Person nor a U.S. Resident in an offshore transaction meeting the requirements of Regulation S. If such Holder fails to effect the sale within such 30-day period, upon direction from the Issuer, the Trustee, on behalf of and at the expense of the Issuer, shall cause such Holder's interest in the Note to be transferred in a commercially reasonable sale (conducted by the Trustee in accordance with Section 9-610 of the UCC as applied to securities that are sold on a recognized market or that may decline speedily in value) to a Person that certifies to the Trustee, the Co-Issuers and the Managers (x) if such Person is taking delivery of the Note in the form of an interest in a Certificated Note, that such Person is both a Qualified Purchaser and an Accredited Investor, together with the other acknowledgments, representations and agreements made in the related transfer certificate by a transferee of an interest in a Note taking delivery in the form of an interest in a Certificated Note pursuant to Section 2.3, or (y) if such Person is taking delivery of the Note in the form of an interest in a Regulation S Note, that such Person is neither a U.S. Person nor a U.S. Resident, together with the other acknowledgments, representations and agreements made by a transferee of an interest in a Note taking delivery in the form of an interest in a Regulation S Note pursuant to Section 2.3. No payments shall be made on the interest on such Note from the date notice of the sale requirement is sent to the date on which the interest is sold. The Co-Issuers shall also be entitled not to honor a transfer of an interest in a Note taking delivery in the form of an interest in a Certificated Note to a transferee that the Co-Issuers believe is not both a Qualified Purchaser and an Accredited Investor. In connection therewith, the Issuer shall also be entitled to require any Holder of a Note in the form of an interest in a Certificated Note to certify, upon request by the Issuer, whether such Holder is a U.S. Person or a U.S. Resident and whether such Holder was both a Qualified Purchaser and an Accredited Investor at the time of acquisition thereof. The Issuer shall be entitled to assume that any Holder of a Note in the form of an interest in a Certificated Note that does not respond to such request is

a U.S. Person or a U.S. Resident and was not both a Qualified Purchaser and an Accredited Investor at the time of acquisition thereof.

## ARTICLE III

## CONDITIONS PRECEDENT; CERTAIN PROVISIONS RELATING TO COLLATERAL

Section 3.1    General Provisions.  The Notes shall be executed by the Issuer and the Co-Issuer and delivered to the Trustee for authentication and thereupon the same shall be authenticated and delivered by the Trustee upon Issuer Request, upon compliance with Section 3.2 and upon receipt by the Trustee of the following:

(a) (i)    an Officer's Certificate of the Issuer evidencing (A) the Issuer's authorization by Board Resolution of the execution, delivery and performance of each Transaction Document, the Administration Agreement and the Securities Account Control Agreement, and the execution, authentication and delivery of the Notes and specifying the Scheduled Final Payment Date the Aggregate Outstanding Amount and Note Interest Rate of the Notes to be authenticated and delivered; and (B) the Issuer's certification that (1) the attached copy of the Board Resolution is a true and complete copy thereof, (2) such resolutions have not been rescinded and are in full force and effect on and as of the Closing Date and (3) the officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon; and

(ii)    an Officer's Certificate of the Co-Issuer evidencing (A) the authorization by Board Resolution of the execution and delivery of this Indenture and the execution, authentication and delivery of the Notes and specifying the Scheduled Final Payment Date, the Aggregate Outstanding Amount and the Note Interest Rate of the Notes to be authenticated and delivered; and (B) the Co-Issuer's certification that (1) the attached copy of the Board Resolution is a true and complete copy thereof, (2) such resolutions have not been rescinded and are in full force and effect on and as of the Closing Date and (3) the officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon;

(b) (i) either (A) a certificate of the Issuer or other official document evidencing the due authorization, approval or consent of any governmental body or bodies at the time having jurisdiction in the premises, together with an Opinion of Counsel satisfactory in form and substance to the Trustee, to the effect that no other authorization, approval or consent of any governmental body is required for the valid issuance of the Notes, or (B) an Opinion of Counsel of the Issuer satisfactory in form and substance to the Trustee, to the effect that no such authorization, approval or consent of any governmental body is required for the valid issuance of such Notes except as may have been given for the purposes of the foregoing; *provided, however, that* the opinions of Allen & Overy LLP and Maples and Calder, substantially in the forms of Exhibits C hereto, respectively, shall satisfy clause (B); and

(ii) either (A) a certificate of the Co-Issuer or other official document evidencing the due authorization, approval or consent of any governmental body or bodies at the time having jurisdiction in the premises, together with an Opinion of Counsel satisfactory in form and substance to the Trustee, to the effect that no other authorization, approval or consent of any governmental body is required for the valid issuance of the Notes, or (B) an Opinion of Counsel of the Co-Issuer satisfactory in form and substance to the Trustee, to the effect that no such authorization, approval or consent of any governmental body is required for the valid issuance of such Notes except as may have been given for the purposes of the foregoing; *provided, however, that* the opinions of Allen & Overy LLP and Maples and Calder, substantially in the forms of Exhibits C, respectively, shall satisfy clause (B);

(c) an opinion of Allen & Overy LLP, United States special counsel to the Co-Issuers, satisfactory in form and substance to the Issuer, dated the Closing Date;

(d) an opinion of Maples and Calder, Cayman Islands counsel to the Issuer, satisfactory in form and substance to the Issuer, dated the Closing Date;

(e) an Officer's Certificate of the Issuer stating that (to the best of the knowledge and belief of the Issuer) no Default has occurred under this Indenture and that the issuance of the Notes will not result in a breach of any of the terms, conditions or provisions of, or constitute a Default under the Company Charter, any indenture or other agreement or instrument to which the Issuer is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which the Issuer is a party or by which it may be bound or to which it may be subject; and that all conditions precedent provided in this Indenture relating to the execution, authentication and delivery of the Notes, have been complied with;

(f) an Officer's Certificate of the Co-Issuer stating that (to the best of the knowledge and belief of the Co-Issuer) no Default has occurred under this Indenture and that the issuance of the Notes will not result in a breach of any of the terms, conditions or provisions of, or constitute a Default under, the Certificate of

Formation or Limited Liability Company Agreement of the Co-Issuer, any indenture or other agreement or instrument to which the Co-Issuer is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which the Co-Issuer is a party or by which it may be bound or to which it may be subject; and that all conditions precedent provided in this Indenture relating to the authentication and delivery of the Notes applied for have been complied with;

(g) an executed copy of the Administration Agreement;

(h) an executed copy of each Transaction Document; and

(i) such other documents as the Trustee may reasonably require.

Section 3.2    Security for Notes. Notes may be executed by the Co-Issuers and delivered to the Trustee for authentication, and thereupon the same shall be authenticated and delivered to the Issuer by the Trustee upon Issuer Order and upon delivery by the Issuer to the Trustee, and receipt by the Trustee, of the following:

(a) Grant. Fully executed copies of this Indenture, and copies of each other instrument or document, fully executed (as applicable), necessary to consummate and perfect the Grant set forth in the Granting Clauses of this Indenture.

(b) Certificate of the Issuer. The delivery to the Trustee of a certificate of an Authorized Officer of the Issuer, dated as of the Closing Date, to the effect that, with respect to the assets pledged to the Trustee for inclusion in the Collateral on the Closing Date and immediately prior to the delivery thereof on the Closing Date:

(i) the Issuer is the owner of such asset free and clear of any liens, claims or encumbrances of any nature whatsoever except for those which are being released on the Closing Date and except for those Granted pursuant to this Indenture and encumbrances arising from due bills, if any, with respect to interest, or a portion thereof, accrued on such asset prior to the Closing Date and owed by the Issuer to the seller of such asset;

(ii) the Issuer has acquired its ownership in such asset in good faith without notice of any adverse claim (as such term is defined in UCC Section 8-102(a)(1)), except as set forth in clause (i) above;

(iii) the Issuer has not assigned, pledged or otherwise encumbered any interest in such asset (or, if any such interest has been assigned, pledged or otherwise encumbered, it has been released) other than interests Granted pursuant to this Indenture;

(iv) the Issuer has full right to Grant a security interest in and assign and pledge all of its right, title and interest in such asset to the Trustee and has taken all actions, if any required of it (including under Section 3.3) for perfection of that interest); and

(v)    upon Grant by the Issuer, the Trustee has a first priority perfected security interest in the Collateral (assuming that any Clearing Corporation, Securities Intermediary or other entity not within the control of the Issuer involved in the Grant of Collateral takes the actions required of it (including under Section 3.3) for perfection of that interest).

In addition, on and as of the Closing Date, the Issuer hereby represents and warrants as set forth above in clauses (i) through (v).

(c) Rating Letters.  The receipt of a letter by the Trustee signed by each Rating Agency assigning the ratings at least as high as those designated in the Series Indenture.

(d) Accounts.    Evidence of the establishment of the Accounts specified in the Series Indenture.

(e) Financing Statement.    The delivery by the Issuer of a UCC financing statement describing the Collateral and naming itself as debtor and the Trustee as secured party on behalf of itself, the Noteholders, and the Credit Swap Counterparty, to be filed by or on behalf of the Issuer with the Records of Deeds of the District of Columbia within ten (10) Business Days of the Closing Date.

Section 3.3    Investment at Direction of the Credit Swap Counterparty; Custodianship of Permitted Short-Term Investments.

(a) The Custodian shall be appointed to act as a securities intermediary with respect to the Accounts.   The Custodian, and any successor Custodian, shall satisfy the criteria set forth in Section 9.3.

(b) The Trustee shall in accordance with the instructions given to the Trustee by the Credit Swap Counterparty cause amounts on deposit in the Accounts to be invested in Permitted Short-Term Investments.  Each time that the Trustee shall cause the acquisition of any Permitted Short-Term Investment, the Trustee shall cause the transfer of such Permitted Short-Term Investment to the Custodian in the manner described in paragraph (c) hereof to be held in the Accounts for the benefit of the Trustee in accordance with the terms of this Indenture.  Notwithstanding the foregoing, the Trustee may cause any Permitted Short-Term Investment to be transferred to the Custodian for the benefit of the Trustee or to the Trustee by such other method for which an Opinion of Counsel specifies will result in a valid, perfected, first-priority security interest in favor of the Trustee in each Permitted Short-Term Investment.  The security interest of the Trustee in the funds or other property utilized in connection with such acquisition shall, immediately and without further action on the part of the Trustee, be released.   The security interest of the Trustee shall nevertheless come into existence and continue in the Permitted Short-Term Investment so acquired, including all rights of the Issuer in and to any contracts related to and proceeds of such Permitted Short-Term Investment.   The Issuer shall also take any and all

other actions necessary to create in favor of the Trustee a valid, perfected, first-priority security interest in each Permitted Short-Term Investment Granted to the Trustee under laws and regulations (including Articles 8 and 9 of the UCC) in effect from time to time.

(c) In the case of any Permitted Short-Term Investment to be transferred to the Custodian for the benefit of the Trustee, Permitted Short-Term Investment shall be delivered as follows:

(i)    in the case of a Certificated Security, by (A) delivering such Certificated Security to the Custodian in the State of New York indorsed to the Custodian or in blank by an effective Indorsement, or registered in the name of the Custodian, (B) causing the Custodian to maintain continuous possession of such Certificated Security in the State of New York, and (C) causing the Custodian to credit such asset to the applicable Account; and

(ii)    in the case of an Instrument, by (A) delivering such Instrument to the Custodian in the State of New York indorsed to the Custodian or indorsed in blank, by an effective Indorsement, (B) causing the Custodian to maintain continuous possession of such Instrument in the State of New York, (C) causing the Custodian to authenticate a record in which it acknowledges that it is holding such Instrument for the benefit of the Trustee, and (D) causing the Custodian to credit such asset to the applicable Account; and

(iii)    in the case of an Uncertificated Security, by (A) causing the Custodian to become the registered owner of such Uncertificated Security, (B) causing such registration to remain effective and (C) causing the Custodian to credit such asset to the applicable Account; and

(iv)    in the case of any Security Entitlement, by (A) causing the Custodian to become the Entitlement Holder of such Security Entitlement and (B) causing the Custodian to credit such Security Entitlement to the applicable Account.

(d) In addition to those steps specified in paragraph (c) above, the Issuer shall, following consultation with qualified counsel, take all steps necessary or advisable under the laws of the Cayman Islands to protect the security interest of the Trustee such as causing the registration of this Indenture in the Register of Mortgages of the Issuer at the Issuer's registered office in the Cayman Islands.

Section 3.4    Additional Notes – General Provisions. Additional Notes of any Class which are issued after the Closing Date pursuant to Section 4 of the Series Indenture may be executed by the Co-Issuers and delivered to the Trustee for authentication and thereupon authenticated and delivered by the Trustee upon Issuer Request, upon compliance with Section 3.2 and upon receipt by the Trustee of the following:

(a) (i)    an Officer's Certificate of the Issuer (A) evidencing the authorization by Board Resolution of the execution, authentication and delivery of the additional Notes specifying the Scheduled Final Payment Date, the principal amount and Note Interest Rate of each such Note to be authenticated and

-39-