delivered; and (B) certifying that (1) the attached copy of the Board Resolution is a true and complete copy thereof, (2) such resolutions have not been rescinded and are in full force and effect on and as of the date of issuance and (3) the Officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon; and

(ii)    an Officer's Certificate of the Co-Issuer (A) evidencing the authorization by Board Resolution of the execution, authentication and delivery of the additional Notes and specifying the Scheduled Final Payment Date, the principal amount and Note Interest Rate of each such Note to be authenticated and delivered; and (B) certifying that (1) the attached copy of the Board Resolution is a true and complete copy thereof, (2) such resolutions have not been rescinded and are in full force and effect on and as of the date of issuance and (3) the Officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon;

(b)  either

(i)    an Officer's Certificate of the Issuer or other official document evidencing the due authorization, approval or consent of any governmental body or bodies, at the time having jurisdiction in the premises, together with an Opinion of Counsel that the Trustee is entitled to rely thereon and that no other authorization, approval or consent of any governmental body is required for the valid issuance of the additional Notes, or (B) an Opinion of Counsel of the Issuer that no such authorization, approval or consent of any governmental body is required for the valid issuance of such additional Notes except as may have been given for the purposes of the foregoing; *provided*, that opinions of Allen & Overy LLP and Maples and Calder in respect of such matters, which opinions are substantially in the form of Exhibits C and D hereto, respectively, shall satisfy this clause (i)(B); and

(ii)    either (A) an Officer's Certificate of the Co-Issuer or other official document evidencing the due authorization, approval or consent of any governmental body or bodies, at the time having jurisdiction in the premises, together with an Opinion of Counsel that the Trustee is entitled to rely thereon and that no other authorization, approval or consent of any governmental body is required for the valid issuance of the additional Notes which are the same Class as the Notes, or (B) an Opinion of Counsel of the Co-Issuer that no such authorization, approval or consent of any governmental body is required for the valid issuance of the additional Notes which are the same Class as the Notes except as may have been given for the purposes of the foregoing; *provided*, that an opinion of Allen & Overy LLP substantially in the form of Exhibit L hereto in respect of such matters shall satisfy this clause (ii)(B);

(c) an Officer's Certificate stating that no Default has occurred under this Indenture, that the issuance of the additional Notes will not result in a breach of any of the terms, conditions or provisions of, or constitute a Default under, the Company Charter, any indenture or other agreement or instrument to which the Issuer is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which the Issuer is a party or

by which it may be bound or to which it may be subject; and that all conditions precedent provided in this Indenture, the Company Charter relating to the authentication and delivery of the Notes applied for have been complied with;

(d) an Officer's Certificate stating that no Default has occurred under this Indenture and that the issuance of the additional Notes will not result in a breach of any of the terms, conditions or provisions of, or constitute a default under, the Certificate of Formation or Limited Liability Company Agreement of the Co-Issuer, any indenture or other agreement or instrument to which the Co-Issuer is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which the Co-Issuer is a party or by which it may be bound or to which it may be subject; and that all conditions precedent provided in this Indenture relating to the authentication and delivery of the Notes applied for have been complied with; and

(e) receipt of Rating Agency Confirmation with respect to the ratings of the previously issued Notes of the relevant Class and receipt by the Trustee of letters signed by the Rating Agencies confirming that the new Notes of such Class have been assigned the same ratings as the previously issued Notes.

## ARTICLE IV

## SATISFACTION AND DISCHARGE

Section 4.1    Satisfaction and Discharge of Indenture.  This Indenture shall be discharged and shall cease to be of further effect with respect to the Collateral securing the Notes (except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, defaced, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon as provided herein (including, without limitation, as provided in the Priority of Payments and Article XIII), (iv) the rights, indemnities and immunities of the Trustee hereunder, (v) the rights of Noteholders as beneficiaries hereof with respect to the property deposited with the Trustee and payable to all or any of them, and (vi) the agreement by the Trustee pursuant to Section 6.14), and the Trustee, on written demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture, when:

(a) either:

(i)    all Notes theretofore authenticated and delivered (other than (A) Notes which have been mutilated, defaced, destroyed, lost or stolen and which have been replaced or paid as provided in Section 2.4 and (B) Notes for whose payment money has theretofore irrevocably been deposited in trust and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 7.5) have been delivered to the Trustee for cancellation; or

(ii)    all Notes not theretofore delivered to the Trustee for cancellation have become due and payable.

(b) the Co-Issuers have paid or caused to be paid all other sums payable by the Co-Issuers hereunder and payable by the Issuer under the Transaction Documents and the Administration Agreement; and

(c) the Co-Issuers have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel stating that all conditions precedent relating to the satisfaction and discharge of this Indenture have been complied with; *provided, however, that* in the case of clause (a)(ii) above, the Issuer has delivered to the Trustee an Opinion of Counsel of Independent U.S. tax counsel to the effect that the Holders of the Notes would recognize no income gain or loss for U.S. federal income tax purposes as a result of such deposit.

Notwithstanding the satisfaction and discharge of this Indenture, the rights and obligations of the Co-Issuers, the Trustee and, if applicable, the Noteholders, as the case may be, under Sections 2.4, 2.5, 2.6, 4.2, 5.4, 5.8, 5.16, 6.1, 6.3, 6.4, 6.6, 6.7, 7.1, 7.2, 7.4 and 7.5, and Article XI and Article XII shall survive.

Section 4.2    Application of Trust Money.   All Monies deposited with the Trustee pursuant to Section 4.1 shall be held in trust and applied by it in accordance with the provisions of the Notes and this Indenture, including, without limitation, the Priority of Payments, for the payment of principal and interest either directly or through any Paying Agent, as the Trustee may determine, and of other sums due and payable hereunder for whose payment such money has been deposited with the Trustee; but such money need not be segregated from other funds except to the extent required herein or required by law.

Section 4.3    Repayment of Monies Held by Paying Agent.  In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all Monies then held by any Paying Agent other than the Trustee under the provisions of this Indenture shall, upon demand of the Co-Issuers, be paid to the Trustee to be held and applied pursuant to Section 7.5 and in accordance with the Priority of Payments and thereupon such Paying Agent shall be released from all further liability with respect to such Monies.

## ARTICLE V

## REMEDIES

Section 5.1    Events of Default.   "Events of Default", wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a) either of the Co-Issuers fails to perform or observe any of its other obligations under the Notes or any Transaction Document which failure materially and adversely affects the rights of Holders of the Notes, and such failure continues unremedied for a period of thirty (30) days (or such longer period as the

Trustee may permit at the direction of the Controlling Class) following the delivery by the Trustee of written notice thereof to the Co-Issuers;

(b) the Trustee does not have a valid and enforceable security interest with respect to more than 5% of the Collateral and such failure if capable of remedy continues unremedied for a period of 30 days following the delivery by the Trustee of written notice thereof to the Co-Issuers;

(c) either (i) the entry of a decree or order by a court having competent jurisdiction adjudging either of the Co-Issuers as bankrupt or insolvent or granting an order for relief or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of, (ii) either of the Co-Issuers under the Bankruptcy Code, the bankruptcy or insolvency laws of the Cayman Islands or any other applicable law, or appointing a receiver, liquidator, assignee, or sequestrator (or other similar official) of either of the Co-Issuers or of any substantial part of its property, or ordering the winding up or liquidation of its affairs; or an involuntary case or proceeding shall be commenced against either of the Co-Issuers seeking any of the foregoing and such case or proceeding shall continue in effect for a period of 60 consecutive days; or (iii) the institution by either of the Co-Issuers of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against, or the filing by it of a petition or answer or consent seeking reorganization or relief under the Bankruptcy Code, the bankruptcy or insolvency laws of the Cayman Islands or any other applicable law, or appointing a receiver, liquidator, assignee, or sequestrator (or other similar official) of either of the Co-Issuers or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due;

(d) it is or will become unlawful for either of the Co-Issuers to comply with its obligations in respect of the Notes or any Transaction Document;

(e) either of the Co-Issuers or the Collateral is required to register as an "investment company" under the United States Investment Company Act of 1940, as amended;

(f) an event of default occurs and is continuing under the Credit Swap or an Early Termination Date is designated under the Credit Swap;

(g) the occurrence of an Additional Event of Default.

Section 5.2    Acceleration of Maturity; Recission and Annulment.

(a) If an Event of Default described in Section 5(a) hereto occurs and is continuing, the Trustee (at the direction of the Controlling Class) may declare the principal of and accrued and unpaid interest on all the Notes to be immediately due and payable by written notice ("Enforcement Notice") to the Co-Issuers with a copy to the holders of the Notes and each Rating Agency. If an

Event of Default described in clause <u>Section 5(b)</u>, <u>Section 5(c)</u>, <u>Section 5(d)</u>, <u>Section 5(e)</u>, <u>Section 5(f)</u> or <u>Section 5(g)</u> hereto occurs, such an acceleration shall occur automatically and without any action by the holders of the Notes (and an Enforcement Notice will be deemed delivered to the Co-Issuers).

If the Notes are accelerated, the Aggregate Outstanding Amount of the Notes and all accrued and unpaid interest thereon shall be payable on the Early Termination Date from Collections, if and to the extent funds are available for such purpose in accordance with <u>Section 5</u> of the Series Indenture.

(b) At any time after such a declaration of acceleration of maturity has been made by the Trustee (at the direction of the Controlling Class) or the Controlling Class and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter provided in this <u>Article V</u>, the Controlling Class by written notice to the Issuer, the Trustee, the Holders of Notes and each Rating Agency, may rescind and annul such declaration and its consequences if:

(i)    the Issuer or the Co-Issuer has paid or deposited with the Trustee a sum sufficient to pay in accordance with the applicable Priority of Payments, and shall pay:

(A) all overdue installments of interest and principal of the Notes (other than amounts payable solely as a result of an acceleration of the Notes) and any interest thereon; and

(B) to the extent that payment of such interest is lawful, interest on Defaulted Interest at the Note Interest Rates; and

(ii)    the Trustee has determined that all Events of Default, other than the non-payment of the interest on or principal of Notes that have become due solely by such acceleration, have been cured and the Controlling Class by written notice to the Trustee have agreed with such determination (which agreement shall not be unreasonably withheld) or waived such Events of Default as provided in <u>Section 5.14</u> hereto.

(c)    No such rescission shall affect any subsequent Default or impair any right consequent thereon.

Section 5.3    <u>Collection of Indebtedness and Suits for Enforcement by Trustee.</u>

(a) The Co-Issuers covenant that if a Default shall occur in respect of the payment of any interest on or principal of any Note, the Co-Issuers shall, upon demand of the Trustee, or any affected Noteholder, pay to the Trustee, for the benefit of the Holder of such Note, the whole amount then due and payable on such Note for principal and interest, with interest upon the overdue principal of the Notes and, to the extent that payments of such interest shall be legally enforceable, upon overdue installments of interest on the Notes at the Note Interest Rate and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee and such Noteholder and their respective agents and counsel.

(b) If the Issuer or the Co-Issuer fails to pay such amounts forthwith upon such demand, the Trustee (at the direction of the Holders of at least a Majority of the Notes), in its own name and as Trustee of an express trust, shall institute a Proceeding for the collection of the sums so due and unpaid, and shall prosecute such Proceeding to judgment or final decree and shall enforce the same against the Co-Issuers and collect the Monies adjudged or decreed to be payable in the manner provided by law out of the Collateral.

(c) If an Event of Default occurs and is continuing, the Trustee may, in its discretion, and upon written direction of the Holders of at least a Majority of the Notes shall, proceed to protect and enforce its rights and the rights of the Noteholders by such appropriate Proceedings as the Trustee shall deem most effectual (if no direction by the Holders of at least a Majority of the Notes is received by the Trustee) or as the Trustee may be directed by the Holders of at least a Majority of the Notes to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Trustee by this Indenture or by law.

(d) In case there shall be pending Proceedings relative to the Issuer or the Co-Issuer under the Bankruptcy Code or any other applicable bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer, the Co-Issuer or their respective property, or in case of any other comparable Proceedings relative to the Issuer or the Co-Issuer, or the creditors or property of the Issuer or the Co-Issuer, the Trustee, regardless of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and regardless of whether the Trustee shall have made any demand pursuant to the provisions of this <u>Section 5.3</u>, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i)    to file and prove a claim or claims for the whole amount of principal, interest owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for reasonable compensation to the Trustee and each predecessor Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee) and of each of the Noteholders allowed in any Proceedings relative to the Issuer or the Co-Issuer or to the creditors or property of the Issuer or the Co-Issuer;

(ii)    unless prohibited by applicable law and regulations, to vote on behalf of the Holders of the Notes, upon the direction of such Holders, in any election of a trustee or a standby trustee in arrangement, reorganization, liquidation or other bankruptcy or insolvency Proceedings or Person performing similar functions in comparable Proceedings; and

(iii)    to collect and receive any Monies or other property payable to or deliverable on any such claims, and to distribute all amounts received with respect to the claims of the Noteholders and of the Trustee on their behalf; and any trustee, receiver or liquidator, custodian or other similar official is hereby authorized by each of the Noteholders to make payments to the Trustee, and, in the event that the Trustee shall consent to the making of payments directly to the Noteholders, to pay to the Trustee such amounts as shall be sufficient to cover reasonable compensation to the Trustee, each predecessor Trustee and their respective agents, attorneys and counsel, and all other reasonable expenses and liabilities incurred, and all advances made, by the Trustee and each predecessor Trustee, except as a result of negligence or bad faith.

(e)  Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting any Notes or the rights of any Holder of Notes or to authorize the Trustee to vote in respect of the claim of any Noteholder in any such Proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f)  All rights of action and of asserting claims under this Indenture, or under the Notes, may be enforced by the Trustee without the possession of any Notes or the production thereof in any trial or other Proceedings relative thereto, and any action or other Proceedings instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the reasonable expenses, disbursements and compensation of the Trustee, each predecessor trustee and their respective agents and attorneys and counsel, shall be for the ratable benefit of the Holders of the Notes payable to such Holders in accordance with the Priority of Payments.

(g)  The Trustee shall promptly notify the Noteholders of either of the following as to which it has actual knowledge: (i) the commencement of any proceeding by or against the Issuer commenced under the Bankruptcy Code or any other applicable bankruptcy, insolvency or other similar law (an "Insolvency

Proceeding") and (ii) the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer (a "<u>Preference Claim</u>") of any payment of principal of, or interest on, the Notes.

Section 5.4    <u>Remedies</u>.

(a) If an Event of Default shall have occurred and be continuing, and the Notes have been declared due and payable and such declaration and its consequences have not been rescinded and annulled, the Co-Issuers agree that the Trustee may (after notice to the Noteholders, and shall, upon direction by the Controlling Class), to the extent permitted by applicable law, exercise (or refrain from exercising, at the direction of the Controlling Class) one or more of the following rights, privileges and remedies:

(i)    institute Proceedings for the collection of all amounts then payable on the Notes or otherwise payable under this Indenture, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Collateral Monies adjudged due;

(ii)    sell all or a portion of the Collateral or rights of interest therein, at one or more public or private sales called and conducted in any manner permitted by law and in accordance with <u>Section 5.15</u>;

(iii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Collateral;

(iv)    exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Trustee and the Holders of such Notes hereunder; and

(v)    exercise any other rights and remedies that may be available at law or in equity.

(b) If an Event of Default as set forth in <u>Section 5(a)</u> hereto shall have occurred and be continuing the Trustee may, and at the direction of a Majority of the Notes shall, institute a Proceeding solely to compel performance of the covenant or agreement or to cure the representation or warranty, the breach of which gave rise to such Event of Default, and enforce any equitable decree or order arising from such Proceeding.

(c) Upon any sale, whether made under the power of sale hereby given or by virtue of judicial proceedings, any Holder of Notes may bid for and purchase the Collateral or any part thereof and, upon compliance with the terms of sale, may hold, retain, possess or dispose of such property in its or their own absolute right without accountability.

Upon any sale, whether made under the power of sale hereby given or by virtue of judicial proceedings, the receipt of the Trustee, or of the Authorized Officer making a sale under judicial proceedings, shall be a sufficient discharge to the purchaser or purchasers at any sale for

its or their purchase money, and such purchaser or purchasers shall not be obliged to see to the application thereof.

Any such sale, whether under any power of sale hereby given or by virtue of judicial proceedings, shall bind the Co-Issuers, the Trustee, and the Noteholders, shall operate to divest all right, title and interest whatsoever, either at law or in equity, of each of them in and to the property sold, and shall be a perpetual bar, both at law and in equity, against each of them and their successors and assigns, and against any and all Persons claiming through or under them.

(d) Notwithstanding any other provision of this Indenture, the Trustee, in its own capacity, and each Noteholder, may not, prior to the date which is one year and one day (or, if longer, the then applicable preference period under any relevant jurisdiction) after payment in full of all notes issued by the Issuer or the Co-Issuer under any segregated portfolio or otherwise, institute against, or join any other Person in instituting against, the Issuer or the Co-Issuer any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceedings, or other proceedings under federal or state bankruptcy or similar laws. Nothing in this Section 5.4 hereto shall preclude, or be deemed to stop, the Trustee or any Noteholder, (i) from taking any action in (A) any case or proceeding voluntarily filed or commenced by the Issuer or the Co-Issuer or (B) any involuntary insolvency proceeding filed or commenced by a Person other than the Trustee or such Noteholder, or (ii) from commencing against the Issuer or the Co-Issuer or any of its properties any legal action which is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceeding. This Section 5.4(d) shall survive the termination of this Indenture.

Section 5.5    [Reserved.]

Section 5.6    Trustee May Enforce Claims Without Possession of Notes. All rights of action and claims under this Indenture or the Notes may be prosecuted and enforced by the Trustee without the possession of any of the Notes or the production thereof in any Proceeding relating thereto, and any such Proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the reasonable expenses and disbursements of the Trustee, each predecessor trustee and their respective agents and attorneys in counsel, shall be applied as set forth in Section 5.7.

Section 5.7    Application of Money Collected. The application of any money collected by the Trustee with respect to the Notes pursuant to this Article V and any money that may then be held or thereafter received by the Trustee with respect to the Notes hereunder, at the date or dates fixed by the Trustee, shall be applied subject to, and in accordance with, Section 5 of the Series Indenture.

Section 5.8    Limitation on Suits. No Holder of any Note shall have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

-48-

(a) such Holder has previously given written notice to the Trustee of a continuing Event of Default;

(b) except as otherwise provided in Section 5.9, the Holders of at least 25% of the then Aggregate Outstanding Amount of the Notes shall have made a written request to the Trustee to institute Proceedings in respect of such Event of Default in its own name as Trustee hereunder;

(c) such Holder or Holders have offered to the Trustee indemnity reasonably satisfactory to it against the costs, expenses and liabilities to be incurred in compliance with such request;

(d) the Trustee for 30 or more days after its receipt of such notice, request and offer of indemnity has failed to institute any such Proceeding; and

(e) no direction inconsistent with such written request has been given to the Trustee during such 30-day period by the Holders of at least 25% of the Aggregate Outstanding Amount of the Notes;

it being understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders of Notes or of or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all the Holders of Notes, subject to and in accordance with Section 5 of the Series Indenture.

In the event the Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of the Notes, each representing less than a Majority of the Notes, the Trustee in its sole discretion may determine what action, if any, shall be taken, notwithstanding any other provisions of this Indenture.

Section 5.9    Unconditional Rights of Noteholders to Receive Principal and Interest. Notwithstanding any other provision in this Indenture, but subject to Section 4(h) of the Series Indenture, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on such Note as such principal and interest becomes due and payable, in accordance with Section 5 of the Series Indenture and, subject to the provisions of Section 5.8 hereto, to institute Proceedings for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.10    Restoration of Rights and Remedies.    If the Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Noteholder, then and in every such case the Co-Issuers, the Trustee and the Noteholder shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.11 <u>Rights and Remedies Cumulative</u>. No right or remedy herein conferred upon or reserved to the Trustee or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing by law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.12 <u>Delay or Omission Not Waiver</u>. No delay or omission of the Trustee or of any Noteholder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this <u>Article V</u> or by law to the Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Noteholders, as the case may be.

Section 5.13 <u>Control by the Noteholders</u>. The Controlling Class shall have the right to cause the institution of and direct the time, method and place of conducting any Proceeding for any remedy available to the Trustee or exercising any trust, right, remedy or power conferred on the Trustee; *provided, that*:

(a) such direction shall not be in conflict with any rule of law or with this Indenture;

(b) the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction;

(c) the Trustee shall have been provided with indemnity satisfactory to it (and the Trustee need not take any action that it determines might involve it in liability unless it has received such indemnity against such liability); and

(d) any direction to the Trustee to undertake a Sale of the Collateral shall be in accordance with <u>Section 5.4</u> hereto.

Section 5.14 <u>Waiver of Past Defaults</u>. Prior to the time a judgment or decree for payment of the money due has been obtained by the Trustee, as provided in this <u>Article V</u>, the Holders of at least a Majority of the Notes may on behalf of the Holders of all Notes, with prior notice to each Rating Agency, waive any past Default and its consequences, except a Default:

(a) in respect of a covenant or provision hereof that under Section 8.2 hereto cannot be modified or amended without the consent of the Holders of the Outstanding Notes affected; or

(b) constituting an Event of Default as specified in Section 5.1(b), Section 5.1(c), Section 5.1(d), Section 5.1(e), Section 5.1(f) or Section 5.1(g) hereto.

Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture and the Co-Issuers, the Trustee and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively, but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.

Section 5.15  Undertaking for Costs.  All parties to this Indenture agree, and each Holder of any Note by its acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.15 shall not apply to any suit instituted by the Trustee, to any suit instituted by any Noteholder, or group of Noteholders, holding in the aggregate more than 25% in Aggregate Outstanding Amount of the Notes, or to any suit instituted by any Noteholder for the enforcement of the payment of the principal of or interest on any Note on or after the legal final maturity of the Notes.

Section 5.16  Waiver of Stay or Extension Laws.  The Co-Issuers covenant (to the extent that they may lawfully do so) that they will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted including, but not limited to, filing a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code, now or at any time hereafter in force, which may affect the covenants, the performance of or any remedies under this Indenture; and the Co-Issuers (to the extent that they may lawfully do so) hereby expressly waive all benefit or advantage of any such law, and covenant that they will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.17    <u>Sale of Collateral</u>.

(a) The power to effect any sale (a "<u>Sale</u>") of any portion of the Collateral pursuant to <u>Section 5.4</u> of the Series Indenture shall not be exhausted by any one or more Sales as to any portion of such Collateral remaining unsold, but shall continue unimpaired until the entire Collateral shall have been sold or all amounts secured by the Collateral shall have been paid. The Trustee may, upon notice to the Noteholders (for so long as any Notes are Outstanding), and shall, upon direction of the Holders of at least a Majority of the Notes from time to time, postpone any Sale by public announcement made at the time and place of such Sale. The Trustee hereby expressly waives its rights to any amount fixed by law as compensation for any Sale; *provided, that* the Trustee shall be authorized to deduct the reasonable costs, charges and expenses incurred by it in connection with such Sale from the proceeds thereof.

(b) The Bank, in its individual capacity, or any Noteholder may bid for and acquire any portion of the Collateral in connection with a public Sale thereof. The Bank may hold, lease, operate, manage or otherwise deal with any property so acquired in any manner permitted by law in accordance with this Indenture.

(c) If any portion of the Collateral consists of securities or debt obligations issued without registration under the Securities Act ("<u>Unregistered Securities</u>"), the Trustee may seek an Opinion of Counsel, or, if no such Opinion of Counsel can be obtained and with the consent of the Holders of at least a Majority of the Notes seek a no-action position from the Securities and Exchange Commission or any other relevant federal or state regulatory authorities, regarding the legality of a public or private sale of such Unregistered Securities.

(d) The Trustee shall execute and deliver an appropriate instrument of conveyance transferring its interest in any portion of the Collateral in connection with a sale thereof. In addition, the Trustee is hereby irrevocably appointed the agent and attorney-in-fact of the Issuer to transfer and convey its interest in any portion of the Collateral in connection with a sale thereof, and to take all action necessary to effect such sale. No purchaser or transferee at such a sale shall be bound to ascertain the Trustee's authority, to inquire into the satisfaction of any conditions precedent or see to the application of any Monies.

Section 5.18    <u>Action on the Notes</u>. The Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking or obtaining of or application for any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Trustee or the Noteholders shall be impaired by the recovery of any judgment by the Trustee against the Issuer or by the levy of any execution under such judgment upon any portion of the Collateral or upon any of the assets of the Issuer or the Co-Issuer.

Section 5.19    Senior Lien. The Trustee shall have a lien ranking senior to that of the Noteholders and any Secured Party, upon all property and funds held or collected as part of the Collateral to secure payment of amounts incurred by the Trustee in conjunction with the enforcement of the rights of Noteholders in the manner set forth in Section 5.4 of the Series Indenture; *provided, that* the Trustee shall not institute any proceeding for enforcement of such lien unless the Credit Swap Counterparty and the Holders of 100% of the Outstanding Notes consent to such action by the Trustee.

## ARTICLE VI

## THE TRUSTEE

Section 6.1    Certain Duties and Responsibilities.

(a) Except during the continuance of an Event of Default:

(i)    the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)    in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, orders or opinions furnished to the Trustee and conforming to the requirements of this Indenture; *provided, that* in the case of any such certificates, orders or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they substantially conform to the requirements of this Indenture and shall promptly notify the party delivering the same if such certificate, order or opinion does not conform. If a corrected form shall not have been delivered to the Trustee within fifteen (15) days after such notice from the Trustee, the Trustee shall so notify the Noteholders.

(b) In case an Event of Default known by a Trust Officer of the Trustee has occurred and is continuing, the Trustee shall, prior to the receipt of directions, if any, from the Controlling Class (or such other percentage as may be required by the terms hereof) in Aggregate Outstanding Amount of the Notes, exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in its exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(c) No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(i)    this subsection (c) shall not be construed to limit the effect of subsection (a) of this Section 6.1;

(ii)    the Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it shall be proven that the Trustee was negligent in ascertaining the pertinent facts;

(iii)    the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Issuer or the Co-Issuer in accordance with this Indenture, the Controlling Class (or such other percentage as may be required by the terms hereof) of the Notes relating to the time, method and place of conducting any Proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture;

(iv)    no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers hereunder, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; and

(v)    the Trustee shall not be liable to the Noteholders for any action taken or omitted by it at the direction of each or both of the Co-Issuers, and/or a specified percentage of the Holders of Notes under circumstances in which such direction is required or permitted by the terms of this Indenture.

(d) Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section 6.1.

(e) The Trustee shall, upon reasonable (but not less than one (1) Business Day) prior written notice to the Trustee, permit a Holder of a Note, during the Trustee's normal business hours, to examine all non-proprietary, privileged books of account, records, reports and other papers of the Trustee relating to the Notes, to make copies and extracts therefrom (the reasonable out-of-pocket expenses incurred in making any such copies or extracts to be reimbursed to the Trustee by such Holder, as applicable) and to discuss the Trustee's actions, as such actions relate to the Trustee's duties with respect to the Notes, with the Trustee's officers and employees responsible for carrying out the Trustee's duties with respect to the Notes.

Section 6.2    Notice of Default.  Promptly (and in no event later than two (2) Business Days) after the occurrence of any Event of Default known by a Trust Officer of the Trustee or after any declaration of acceleration has been made or delivered to the Trustee pursuant to Section 5.2, the Trustee shall transmit by mail to the Issuer, each Rating Agency, the Credit Swap Counterparty and to all Holders of Notes, as their names and addresses appear on the Note Register, notice of all Events of Default hereunder known to the Trustee in a Notice of Default, unless such Event of Default shall have been cured or waived.

Section 6.3    <u>Certain Rights of Trustee</u>.    Except as otherwise provided in <u>Section 6.1</u>:

(a) the Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, note or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b) any request or direction of the Issuer or the Co-Issuer mentioned herein shall be sufficiently evidenced by an Issuer Request or Issuer Order, as the case may be;

(c) whenever in the administration of this Indenture the Trustee shall (i) deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, conclusively rely upon an Officer's Certificate or (ii) be required to determine the value of any Collateral or funds hereunder or the cash flows projected to be received therefrom, the Trustee may, in the absence of bad faith on its part, rely on reports of nationally recognized accountants, investment bankers or other Persons qualified to provide the information required to make such determination, including nationally recognized dealers in securities of the type being valued and securities quotation services;

(d) as a condition to the taking or omitting of any action by it hereunder, the Trustee may consult with counsel of its choice and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or omitted by it hereunder in good faith and in reliance thereon;

(e) the Trustee shall be under no obligation to exercise or to honor any of the rights or powers vested in it by this Indenture at the request or direction of any of the Noteholders pursuant to this Indenture, unless such Noteholders shall have offered to the Trustee reasonable security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities which might reasonably be incurred by it in compliance with such request or direction;

(f) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, note or other paper documents, but the Trustee, in its discretion, may and, upon the written direction of the Controlling Class shall make such further inquiry or investigation into such facts or matters as it may see fit or as it shall be directed, and, the Trustee shall be entitled, on reasonable prior notice to the Co-Issuers, to examine the books and records relating to the Notes and the Collateral and the premises of the Co-Issuers, personally or by agent or attorney during the Co-Issuers' normal business hours;

*provided, that* the Trustee shall, and shall cause its agents to, hold in confidence all such information, except (i) to the extent disclosure may be required by law by any regulatory authority and (ii) to the extent that the Trustee, in its sole judgment, may determine that such disclosure is consistent with its obligations hereunder;

(g) the Trustee may employ or retain such Counsel, accountants, appraisers or other experts or advisers as it may reasonably require for the purpose of determining and discharging its rights and duties hereunder and shall not be responsible for any misconduct on the part of any of them;

(h) the Trustee shall not be liable for any action it takes or omits to take in good faith that it reasonably and, after the occurrence and during the continuance of an Event of Default, prudently believes to be authorized or within its rights or powers hereunder;

(i) the rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder; and

(j) the Trustee may request that the Issuer deliver an Officer's Certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officer's Certificate may be signed by any person authorized to sign an Officer's Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

Section 6.4    Not Responsible for Recitals or Issuance of Notes. The recitals contained herein and in the Notes, other than the Certificate of Authentication thereon, shall be taken as the statements of the Issuer and the Co-Issuer, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Indenture (except as may be made with respect to the validity of the Trustee's obligations hereunder), of the Collateral or of the Notes. The Trustee shall not be accountable for the use or application by the Co-Issuers of the Notes or the proceeds thereof or any money paid to the Co-Issuers pursuant to the provisions hereof.

Section 6.5    May Hold Notes. The Trustee, any Paying Agent, the Note Registrar or any other agent of the Co-Issuers, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with the Co-Issuers or any of their Affiliates, with the same rights it would have if it were not Trustee, Paying Agent, Note Registrar or such other agent.

Section 6.6    Money Held in Trust. Money held by the Trustee hereunder shall be held in trust to the extent required herein. The Trustee shall be under no liability for interest on any money received by it hereunder except as otherwise agreed upon with the Issuer and

except to the extent of income or other gain on investments which are deposits in or certificates of deposit of the Trustee in its commercial capacity.

Section 6.7    Corporate Trustee Required; Eligibility.  There shall at all times be a Trustee hereunder which shall be a corporation, national banking association or trust company organized and doing business under the laws of the United States of America or of any state thereof, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least U.S.$200,000,000, subject to supervision or examination by federal or state authority, having a Long-Term Rating of at least "Baa1" by Moody's and at least "BBB+" by S&P and having an office within the United States.  If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 6.7, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.  If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 6.7, it shall resign immediately in the manner and with the effect hereinafter specified in this Article VI.

Section 6.8    Resignation and Removal; Appointment of Successor.

(a) No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article VI shall become effective until the acceptance of appointment by the successor Trustee under Section 6.9.

(b) The Trustee may resign at any time by giving written notice thereof to the Co-Issuers, the Noteholders, the Credit Swap Counterparty and each Rating Agency.  Upon receiving such notice of resignation, the Co-Issuers shall promptly, in accordance with Section 6.8(e) below, appoint a successor trustee or trustees by written instrument, in duplicate, executed by an Authorized Officer of the Issuer and an Authorized Officer of the Co-Issuer, one copy of which shall be delivered to the Trustee so resigning and one copy to the successor trustee or trustees, together with a copy to each Noteholder; *provided, that* at any time when an Event of Default shall have occurred and be continuing, such successor Trustee shall be appointed only upon the written consent of the Controlling Class.  If no successor trustee shall have been appointed and an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee or any Holder may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c) The Trustee may be removed at any time (including when an Event of Default shall have occurred and be continuing) by Act of the Controlling Class delivered to the Trustee and to the Co-Issuers.

(d) If at any time:

(i)    the Trustee shall cease to be eligible under Section 6.7 and shall fail to resign after written request therefor by the Co-Issuers or by any Holder or

-57-

(ii)    the Trustee shall become incapable of acting or shall be adjudged as bankrupt or insolvent or a receiver or liquidator of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case (subject to Section 6.8(a)), (A) the Co-Issuers, by Issuer Order, may remove the Trustee, or (B) subject to Section 5.13, any Holder may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(e) If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of the Trustee for any reason, the Co-Issuers, by Issuer Order, shall promptly appoint a successor Trustee. If the Co-Issuers shall fail to appoint a successor Trustee within 60 days after such resignation, removal or incapability or the occurrence of such vacancy, a successor Trustee may be appointed by Act of the Controlling Class delivered to the Co-Issuers and the retiring Trustee. The successor Trustee so appointed shall, forthwith upon its acceptance of such appointment, become the successor Trustee and supersede any successor Trustee proposed by the Co-Issuers. If no successor Trustee shall have been so appointed by the Co-Issuers or such Holders and shall have accepted appointment in the manner hereinafter; *provided, however, that* subject to Section 5.15, any Holder may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(f) The Co-Issuers shall give prompt notice of each resignation and each removal of the Trustee and each appointment of a successor Trustee by mailing written notice of such event by first-class mail, postage prepaid, to each Rating Agency, the Credit Swap Counterparty and the Holders as their names and addresses appear in the Note Register. Each notice shall include the name of the successor Trustee and the address of its Corporate Trust Office. If the Co-Issuers fail to mail such notice within ten days after acceptance of appointment by the successor Trustee, the successor Trustee shall cause such notice to be given at the expense of the Co-Issuers.

Section 6.9    Acceptance of Appointment by Successor. Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Co-Issuers and the retiring Trustee an instrument accepting such appointment. Upon delivery of the required instruments, the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts, duties and obligations of the retiring Trustee, but on request of the Co-Issuers or by Act of the Controlling Class delivered to the retiring Trustee or the successor Trustee, such retiring Trustee shall, upon payment of its charges then unpaid, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee, and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder. Upon request of any such successor Trustee,

the Co-Issuers shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts.

No successor Trustee shall accept its appointment unless at the time of such acceptance such successor shall (a) satisfy the criteria under Section 6.7 and (b) be qualified and eligible under this Article VI. No appointment of a successor Trustee shall become effective if the Controlling Class objects to such appointment; and no appointment of a successor shall become effective until the date ten days after notice of such appointment has been given to each Noteholder.

Section 6.10    Merger, Conversion, Consolidation or Succession to Business of Trustee. Any entity into which the Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided such entity shall be otherwise qualified and eligible under this Article VI, without the execution or filing of any paper or any further act on the part of any of the parties hereto. In case any of the Notes have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Notes so authenticated with the same effect as if such successor Trustee had itself authenticated such Notes.

Section 6.11    Co-Trustees and Separate Trustee. At any time or times, for the purpose of meeting the legal requirements of any jurisdiction in which any part of the Collateral may at the time be located, the Co-Issuers and the Trustee shall have power to appoint one or more Persons to act as co-trustee, jointly with the Trustee, of all or any part of the Collateral, with the power to file such proofs of claim and take such other actions pursuant to Section 5.4 and to make such claims and enforce such rights of action on behalf of the Holders of the Notes as such Holders themselves may have the right to do, subject to the other provisions of this Section 6.11. Any such Co-Trustee shall satisfy the criteria applicable to Successor Trustees pursuant to Section 6.7

The Co-Issuers shall join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to appoint a co-trustee. If the Co-Issuers do not join in such appointment within 15 days after the receipt by them of a request to do so, the Trustee shall have power to make such appointment.

Should any written instrument from the Co-Issuers be required by any co-trustee so appointed for more fully confirming to such co-trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Co-Issuers.

Every co-trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following terms:

(i)    the Notes shall be authenticated and delivered by, and all rights, powers, duties and obligations hereunder in respect of the custody of securities, Cash and other

-59-

personal property held by, or required to be deposited or pledged with, the Trustee hereunder, shall be exercised and performed solely by, the Trustee;

(ii)    the rights, powers, duties and obligations hereby conferred or imposed upon the Trustee in respect of any property covered by the appointment of a co-trustee shall be conferred or imposed upon and exercised or performed by the Trustee or by the Trustee and such co-trustee jointly in the case of the appointment of a co-trustee, except to the extent that under any law of any jurisdiction in which any particular act is to be performed, the Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by a co-trustee;

(iii)    the Trustee at any time, by an instrument in writing executed by it, with the concurrence of the Co-Issuers evidenced by an Issuer Order, may accept the resignation of or remove any co-trustee appointed under this Section 6.11, and in case an Event of Default has occurred and is continuing, the Trustee shall have the power to accept the resignation of, or remove, any such co-trustee without the concurrence of the Co-Issuers. A successor to any co-trustee so resigned or removed may be appointed in the manner provided in this Section 6.11;

(iv)    no co-trustee hereunder shall be personally liable by reason of any act or omission of the Trustee hereunder;

(v)    the Trustee shall not be liable by reason of any act or omission of a co-trustee; and

(vi)    any Act of Noteholders delivered to the Trustee shall be deemed to have been delivered to each co-trustee.

Section 6.12    <u>Representations and Warranties of the Trustee</u>.    The Trustee represents and warrants that:

(a) the Trustee is a national banking association, with corporate power and authority to execute, deliver and perform its obligations under this Indenture, and is duly eligible and qualified to act as trustee under this Indenture;

(b) this Indenture has been duly authorized, executed and delivered by the Trustee and constitutes the valid and binding obligation of the Trustee, enforceable against it in accordance with its terms except (i) as limited by bankruptcy, fraudulent conveyance, fraudulent transfer, insolvency, reorganization, liquidation, receivership, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and by general equitable principles, regardless of whether considered in a proceeding in equity or at law, and (ii) that the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought; and

(c) neither the execution or delivery by the Trustee of this Indenture nor performance by the Trustee of its obligations under this Indenture requires the consent or approval of, the giving of notice to or the registration or filing with, any governmental authority or agency under any existing law of the United States of America governing the banking or trust powers of the Trustee.

Section 6.13    <u>Authenticating Agent</u>.    Upon the request of the Issuer and the Co-Issuer, the Trustee shall, and if the Trustee so chooses the Trustee may, appoint one or more Authenticating Agents with power to act on its behalf and subject to its direction in the authentication of Notes in connection with issuances, transfers and exchanges under <u>Sections 2.4</u>, <u>2.5</u>, <u>2.6</u> and <u>8.5</u>, as fully to all intents and purposes as though each such Authenticating Agent had been expressly authorized by those Sections to authenticate such Notes.    For all purposes of this Indenture, the authentication of Notes by an Authenticating Agent pursuant to this <u>Section 6.13</u> shall be deemed to be the authentication of Notes "by the Trustee."

Any entity into which any Authenticating Agent may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, consolidation or conversion to which any Authenticating Agent shall be a party, or any entity succeeding to the corporate trust business of any Authenticating Agent, shall be the successor of such Authenticating Agent hereunder, without the execution or filing of any paper or any further act on the part of the parties hereto or such Authenticating Agent or such successor corporation.

Any Authenticating Agent may at any time resign by giving written notice of resignation to the Trustee and the Co-Issuers.    The Trustee may at any time terminate the agency of any Authenticating Agent by giving written notice of termination to such Authenticating Agent and the Co-Issuers.    Upon receiving such notice of resignation or upon such a termination, the Trustee shall promptly appoint a successor Authenticating Agent and shall give written

notice of such appointment to the Co-Issuers if the resigning or terminated Authenticating Agent was originally appointed at the request of the Issuer or Co-Issuer.

The Trustee agrees to pay to each Authenticating Agent from time to time reasonable compensation for its services, and reimbursement for its reasonable expenses relating thereto and the Trustee shall be entitled to be reimbursed for such payments. The provisions of Sections 2.9, 6.4 and 6.5 shall be applicable to any Authenticating Agent.

Section 6.14    Duties and Responsibilities of Trustee Following Payment in Full of the Notes. Following the payment in full of the Notes, the Trustee shall retain the remaining Collateral intact, collect and cause the collection of the proceeds thereof and make and apply all payments and deposits and maintain all accounts in respect of the Collateral in accordance with the Priority of Payments and the provisions of this Indenture and in return therefor will continue to have all its rights provided for hereunder until the following occurs: the liquidation of the remaining Collateral and the final distribution of the proceeds of such liquidation in accordance with the Priority of Payments.

Section 6.15    Limitation on Duty of Trustee in Respect of Collateral.

(a) Beyond the exercise of reasonable care in the custody thereof, the Trustee shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or bailee or any income thereon or as to preservation of rights against prior parties or any other rights pertaining thereto and the Trustee shall not be responsible for filing any financing or continuation statements or recording any documents or instruments in any public office at any time or times or otherwise perfecting or maintaining the perfection of any security interest in the Collateral. The Trustee shall be deemed to have exercised reasonable care in the custody of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which it accords its own property and shall not be liable or responsible for any loss or diminution in the value of any of the Collateral, by reason of the act or omission of any carrier, forwarding agency or other agent or bailee selected by the Trustee in good faith.

(b) The Trustee shall not be responsible for the existence, genuineness or value of any of the Collateral or for the validity, perfection, priority or enforceability of the Liens in any of the Collateral, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder, except to the extent such action or omission constitutes negligence, bad faith or willful misconduct on the part of the Trustee, for the validity or sufficiency of the Collateral or any agreement or assignment contained therein, for the validity of the title of the Issuer to the Collateral, for insuring the Collateral or for the payment of taxes, charges, assessments or Liens upon the Collateral or otherwise as to the maintenance of the Collateral.

Section 6.16    No Special Damages. Anything in this Indenture to the contrary notwithstanding, in no event shall the Trustee, be liable under or in connection with this

Indenture for indirect, special, incidental, punitive or consequential losses or damages of any kind whatsoever, including but not limited to lost profits, whether or not foreseeable, even if the Trustee has been advised of the possibility thereof and regardless of the form of action in which such damages are sought.

Section 6.17    <u>Trustee's Instruction to Account Securities Intermediary</u>.    The Trustee shall instruct the Account Securities Intermediary to transfer funds from the Accounts as required by the terms hereof and to make payments due to the Noteholders hereunder in accordance with the Priority of Payments.

## ARTICLE VII

## COVENANTS

Section 7.1    <u>Payment of Principal and Interest</u>.    The Co-Issuers will duly and punctually pay all principal of and interest on (including Defaulted Interest) the Notes in accordance with the terms of the Notes and this Indenture. Amounts properly withheld under the Code or other applicable law by any Person from a payment to any Noteholder of principal and/or interest shall be considered as having been paid by the Co-Issuers to such Noteholder for all purposes of this Indenture.

Section 7.2    <u>Compliance with Laws</u>.    The Co-Issuers will comply in all material respects with applicable laws, rules, regulations, writs, judgments, injunctions, decrees, awards and orders with respect to them, their business and their properties.

Section 7.3    <u>Maintenance of Books and Records</u>.    The Co-Issuers shall maintain and implement administrative and operating procedures reasonably necessary in the performance of their obligations hereunder and the Issuer shall keep and maintain at all times, or cause to be kept and maintained at all times in its Cayman Islands office, all documents, books, records, accounts and other information reasonably necessary or advisable for the performance of its obligations hereunder.

Section 7.4    <u>Maintenance of Office or Agency</u>.    The Co-Issuers hereby appoint the Trustee, as the Co-Issuers' agent where notices and demands to or upon the Co-Issuers in respect of the Notes or this Indenture may be served and where such Notes may be surrendered for registration of transfer or exchange.

The Co-Issuers may at any time and from time to time vary or terminate the appointment of any such agent or appoint any additional agents for any or all of such purposes; *provided, however, that* no Paying Agent shall be appointed in a jurisdiction which subjects payments on the Notes to withholding tax. The Co-Issuers shall at all times maintain a Note Registrar with respect to the Notes in the Cayman Islands. The Co-Issuers shall give prompt written notice to the Trustee, each Rating Agency and the Noteholders of the appointment or termination of any such agent and of the location and any change in the location of any such office or agency.

Section 7.5    <u>Money for Note Payments to Be Held in Trust</u>. All payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Interest Collections Payment Account and the Principal Collections Payment Account shall be made on behalf of the Co-Issuers by the Trustee or a Paying Agent with respect to payments on the Notes.

When the Co-Issuers shall have a Paying Agent that is not also the Note Registrar, they shall furnish, or cause the Note Registrar to furnish, no later than the fifth calendar day after each Record Date, a list, if necessary, in such form as such Paying Agent may reasonably request, of the names and addresses of the Holders and of the certificate numbers of individual Notes held by each such Holder.

On or before the Business Day next preceding each Payment Date, the Co-Issuers shall direct the Trustee to instruct the Account Securities Intermediary to deposit on such Payment Date with such Paying Agent, if necessary, an aggregate sum sufficient to pay the amounts then becoming due (to the extent funds are then available for such purpose in the Interest Collections Payment Account), such sum to be held in trust for the benefit of the Persons entitled thereto and the Co-Issuers shall promptly notify the Trustee of its action or failure so to act. Any moneys deposited with a Paying Agent in excess of an amount sufficient to pay the amounts then becoming due on the Notes with respect to which such deposit was made shall be paid over by such Paying Agent to the Account Securities Intermediary for application in accordance with <u>Article X</u>.

The initial Paying Agent shall be as set forth in <u>Section 7.4</u>. Any additional or successor Paying Agents shall be appointed by Issuer Order with written notice thereof to the Trustee; *provided, that* so long as the Notes are rated, (i) such Paying Agent must either (A) have a Long-Term Credit Rating of at least "Baa1" by Moody's and "A+" by S&P and Short-Term Credit Rating "P-1" by Moody's and "A-1" by S&P, or (B) agree not to hold any funds pursuant to this Indenture overnight or (ii) Rating Agency Confirmation must be received prior to utilizing a Paying Agent that does not satisfy the requirements of subclause (A) or (B) of clause (i). The Co-Issuers shall not appoint any Paying Agent (other than an initial Paying Agent) that is not, at the time of such appointment, a depository institution or trust company subject to supervision and examination by federal and/or state and/or national banking authorities. The Co-Issuers shall cause each Paying Agent other than the initial Paying Agent to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this <u>Section 7.5</u>, that such Paying Agent will:

(A) allocate all sums received for payment to the Holders of Notes for which it acts as Paying Agent on each Payment Date among such Holders in the proportion specified in the applicable report or statement in accordance herewith, in each case to the extent permitted by applicable law;

(B) hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(C) if such Paying Agent is not the Trustee, immediately resign as a Paying Agent and forthwith pay to the Account Securities Intermediary all sums held by it in trust for the payment of Notes if at any time it ceases to meet the standards set forth above required to be met by a Paying Agent at the time of its appointment;

(D) if such Paying Agent is not the Trustee, immediately give the Trustee notice of any Default by the Issuer or the Co-Issuer in the making of any payment required to be made; and

(E) if such Paying Agent is not the Trustee, at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Account Securities Intermediary all sums so held in trust by such Paying Agent.

The Co-Issuers may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Account Securities Intermediary all sums held in trust by the Co-Issuers or such Paying Agent, such sums to be held by the Account Securities Intermediary upon the same trusts as those upon which such sums were held by the Co-Issuers or such Paying Agent; and, upon such payment by any Paying Agent to the Account Securities Intermediary, such Paying Agent shall be released from all further liability with respect to such money.

Any money deposited with a Paying Agent that remains unclaimed for twenty Business Days shall be returned to the Account Securities Intermediary with a notice to the Trustee. Except as otherwise required by applicable law, any money deposited with the Trustee or any Paying Agent in trust for the payment of the principal of or interest on any Note and remaining unclaimed for two years after such principal or interest has become due and payable shall be paid to the Co-Issuers on Issuer Request; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer or the Co-Issuer for payment of such amounts, and all liability of the Trustee or such Paying Agent with respect to such trust money (but only to the extent of the amounts so paid to the Co-Issuers) shall thereupon cease. The Trustee or such Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Co-Issuers, any reasonable means of notification of such release of payment, including, but not limited to, mailing notice of such release to Holders whose Notes have been called but have not been surrendered for redemption or whose right to or interest in Monies due and payable but not claimed is determinable from the records of any Paying Agent, at the last address of record of each such Holder.

Section 7.6    Existence of Co-Issuers. Each of the Issuer and the Co-Issuer shall take all reasonable steps to maintain its identity as a separate legal entity from that of its shareholder or member, as applicable. Each of the Issuer and the Co-Issuer shall keep its principal place of business and chief executive office at the address specified in Section 12.3. The Issuer and the Co-Issuer shall keep in full force and effect their rights and franchises as segregated portfolio company with limited liability organized under the laws of the Cayman Islands and a limited liability company in the State of Delaware, respectively, shall comply with

the provisions of their respective organizational documents, and shall obtain and preserve their qualification to do business as foreign corporations in each jurisdiction in which such qualifications are or shall be necessary to protect the validity and enforceability of this Indenture, the Notes and any of the Collateral; *provided, however, that* the Issuer shall be entitled to change its jurisdiction of incorporation from the Cayman Islands to any other jurisdiction reasonably selected by the Issuer so long as (a) such change is not disadvantageous in any material respect to the Holders (including by reason of a change in such Holders' tax treatment or the tax treatment of the Issuer), (b) written notice of such change shall have been given by the Co-Issuers to the Trustee, the Holders, the Credit Swap Counterparty and each Rating Agency and (c) on or prior to the 15th Business Day following such notice, the Trustee shall not have received written notice from the Controlling Class objecting to such change. Without limiting the foregoing, (i) neither the Issuer nor the Co-Issuer shall have any subsidiaries (other than, with respect to the Issuer, the Co-Issuer) and (ii) neither the Issuer nor the Co-Issuer shall have any employees other than their respective directors in their additional capacities as officers of the Issuer and Co-Issuer, respectively.

Section 7.7    Protection of Collateral.

(a) The Issuer shall from time to time, execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and shall take such other action as may be necessary or advisable or desirable to secure the rights and remedies of the Secured Parties hereunder and to:

(i)    grant more effectively all or any portion of the Collateral;

(ii)    maintain or preserve the lien (and the priority thereof) of this Indenture or to carry out more effectively the purposes hereof;

(iii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iv)    enforce any of the Permitted Short-Term Investments or other instruments or property included in the Collateral;

(v)    preserve and defend title to the Collateral and the rights therein of the Secured Parties in the Collateral against the claims of all Persons and parties; or

(vi)    (x) pay or cause to be paid any and all taxes levied or assessed upon the Issuer or in respect of all or any part of the Collateral and timely file all tax returns and information statements as required and (y) if required to prevent the withholding or imposition of United States income tax, deliver or cause to be delivered a United States Internal Revenue Service Form W-8IMY if the Issuer is treated as a partnership (or if the Issuer is treated as a disregarded entity, the appropriate United States tax form with respect to the Noteholder who is the beneficial owner) or successor applicable form, to each issuer, counterparty or paying agent with respect to (as applicable) an item included in the Collateral at the time such item included in the Collateral is purchased or entered into and thereafter prior to the expiration or obsolescence of such form.

The Issuer hereby irrevocably and by way of security designates the Trustee, its agent and attorney-in-fact to execute any financing statement, continuation statement or other instrument required pursuant to this Section 7.7.

(b) The Trustee shall not (i) remove any portion of the Collateral that consists of Money or is evidenced by an Instrument, certificate or other writing (A) from the jurisdiction in which it was held as set forth in the Opinion of Counsel delivered at the Closing Date pursuant to Section 3.1(c), or (B) from the possession of the Person who held it on such date, (ii) cause or permit ownership or the pledge of any portion of the Collateral that consists of book-entry securities to be recorded on the books of a Person (A) whose Securities Intermediary's jurisdiction differs from that governing such ownership or pledge was recorded at such date or (B) other than the Person on whose books such ownership or pledge was recorded at such date, unless the Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions or (iii) cause or permit (to its knowledge) any change in the notice, delivery and/or registration made pursuant to Section 3.3 with respect to any general intangible or participation, as applicable, unless the Trustee shall have received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

(c) The Issuer shall enforce all of its material rights and remedies under the Credit Swaps. The Issuer will not enter into any agreement amending, modifying or terminating such agreement, without (A) ten (10) days prior notice thereof to the Trustee, which notice shall specify the action proposed to be taken by the Issuer (and the Trustee shall promptly deliver a copy of such notice to each Noteholder) and (B) receipt of a Rating Agency Confirmation.

Section 7.8    Issuance of Securities of a Separate Segregated Portfolio.

If at any time (i) the Company creates another segregated portfolio, and (ii) S&P is not specified as a Rating Agency for the relevant transaction, the Issuer agrees that it shall obtain Rating Agency Confirmation from S&P prior to the issuance of such securities.

Section 7.9    Performance of Obligations.

(a) The Co-Issuers shall not take any action, and will use their best efforts not to permit any action to be taken by others, that would release any Person from any of such Person's covenants or obligations under any instrument included in the Collateral.

(b) The Co-Issuers may, with the prior written consent of the Controlling Class (except that no such consent is needed with respect to actions permitted pursuant to the Administration Agreement in effect at such time), and with notice to each Rating Agency contract with other Persons, including the

Administrator for the performance of actions and obligations to be performed by the Co-Issuers hereunder by such Persons and the performance of the actions and other obligations of the nature set forth in the Administration Agreement by the Administrator. Notwithstanding any such arrangement, the Co-Issuers shall remain primarily liable with respect thereto. In the event of such contract, the performance of such actions and obligations by such Persons shall be deemed to be performance of such actions and obligations by the Co-Issuers; and the Issuer will punctually perform, and use its best efforts to cause the Administrator or such other Persons to perform, all of their obligations and agreements contained in the Administration Agreement or such other agreement.

(c) The Co-Issuers agree to comply in all material respects with all requirements applicable to them set forth in any Opinion of Counsel obtained pursuant to any provision of this Indenture including satisfaction of any event identified in any Opinion of Counsel as a prerequisite for the obtaining or maintaining by the Trustee of a valid, first-priority perfected security interest in the Collateral.

Section 7.10    Negative Covenants.

(a) The Issuer will not:

(i)    sell, transfer, assign, participate, exchange or otherwise dispose of, or pledge, mortgage, hypothecate or otherwise encumber (by security interest, lien (statutory or otherwise), preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever or otherwise) (or permit such to occur or suffer such to exist), any part of the Collateral, except as expressly permitted by this Indenture;

(ii)    claim any credit on, or make any deduction from, the principal or interest payable in respect of the Notes (other than amounts withheld in accordance with the Code or any other applicable laws) or assert any claim against any present or future Noteholder by reason of the payment of any taxes levied or assessed upon any part of the Collateral;

(iii)    (A) permit the validity or effectiveness of this Indenture or any Grant hereunder to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to this Indenture or the Notes, except as may be expressly permitted hereby, (B) permit any lien, charge, adverse claim, security interest, mortgage or other encumbrance (including, without limitation, any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever or otherwise (other than the lien of this Indenture)) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof, any interest therein or the proceeds thereof, or (C) take any action that would permit the lien of this Indenture not to constitute a valid, first-priority perfected security interest in the Collateral;

(iv)    make or incur any capital expenditures, except as reasonably required to perform its functions in accordance with the terms of this Indenture;

(v)    become liable in any way, whether directly or by assignment or as a guarantor or other surety, for the obligations of the lessee under any lease, hire any employees or pay any dividends to its shareholders;

(vi)    enter into any transaction with any Affiliate other than (A) the transactions contemplated by the Administration Agreement, (B) the transactions relating to the offering and sale of the Notes or (C) transactions on terms no less favorable than those obtainable in an arms'-length transaction with a wholly unaffiliated Person;

(vii)    elect to be taxable for U.S. federal income tax purposes as a corporation without the unanimous consent of all Holders;

(viii)    maintain any bank accounts other than the Accounts, and the bank account to be established in the Cayman Islands to hold the Excepted Property;

(ix)    change its name without first delivering to the Trustee notice thereof and an Opinion of Counsel that such name change will not adversely affect the lien or the interest hereunder of the Noteholders;

(x)    have any subsidiaries other than (x) the Co-Issuer, and (y) any subsidiaries necessitated by a change of jurisdiction pursuant to Section 7.6;

(xi)    dissolve or liquidate in whole or in part, except as permitted hereunder;

(xii)    (A) incur, assume or guarantee or become directly or indirectly liable with respect to any indebtedness or any contingent obligations (including swap agreements, cap agreements, reimbursement obligations, repurchase obligations or the like), other than pursuant to the Notes, this Indenture, the Transaction Documents and the other agreements and transactions expressly contemplated hereby, or (B) issue any additional securities;

(xiii)    the Issuer will not solicit, advertise or publish the Issuer's ability to enter into credit derivatives;

(xiv)    the Issuer will not register as or become subject to regulatory supervision or other legal requirements under the laws of any country or political subdivision thereof as a bank, insurance company or finance company;

(xv)    the Issuer will not be treated as a bank, insurance company or finance company for purposes of (i) any tax, securities law or other filing or submission made to any governmental authority, (ii) any application made to a rating agency or (iii) qualification for any exemption from tax, securities law or any other legal requirements; and

(xvi)    the Issuer will not hold itself out to the public as a bank, insurance company or finance company.

(b) The Co-Issuer will not:

(i)    claim any credit on, or make any deduction from, the principal or interest payable in respect of the Notes (other than amounts withheld in accordance with the Code or any other applicable laws) or assert any claim against any present or future Noteholder by reason of the payment of any taxes levied or assessed upon any part of the Collateral;

(ii)    (A) incur, assume or guarantee or become directly or indirectly liable with respect to any indebtedness or any contingent obligations (including swap agreements, cap agreements, reimbursement obligations, repurchase obligations or the like), other than pursuant to the Notes, this Indenture, the Transaction Documents and the other agreements and transactions expressly contemplated hereby, or (B) issue any additional securities;

(iii)    (A) permit the validity or effectiveness of this Indenture or any Grant hereunder to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to this Indenture or the Notes, except as may be expressly permitted hereby, (B) permit any lien, charge, adverse claim, security interest, mortgage or other encumbrance (including, without limitation, any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever or otherwise (other than the lien of this Indenture)) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof, any interest therein or the proceeds thereof, or (C) take any action that would cause the lien of this Indenture not to constitute a valid, first-priority perfected security interest in the Collateral, except as may be expressly permitted hereby (or in connection with a disposition of Collateral required hereby);

(iv)    make or incur any capital expenditures;

(v)    become liable in any way, whether directly or by assignment or as a guarantor or other surety, for the obligations of the lessee under any lease, hire any employees or pay any dividends to its shareholders;

(vi)    enter into any transaction with any Affiliate;

(vii)    elect to be taxable for U.S. federal income tax purposes as a corporation without the unanimous consent of all Holders;

(viii)    maintain any bank accounts;

(ix)    change its name without first delivering to the Trustee notice thereof and an Opinion of Counsel that such name change will not adversely affect the lien or the interests hereunder of the Noteholders; and

-70-

(x)    have any subsidiaries.

(c) Neither the Issuer nor the Trustee shall sell, transfer, exchange or otherwise dispose of Collateral, or enter into or engage in any business with respect to any part of the Collateral except as expressly permitted or required by this Indenture.

(d) The Issuer will not agree to any amendments, modifications or waivers to or of (i) the Administration Agreement, (ii) any of the Transaction Documents, (iii) the Swap Guarantee, or (iv) enter into any material new agreements or arrangements without Rating Agency Confirmation and will provide notice of all new material agreements or arrangements to the Holders of the Notes and to each Rating Agency in writing (other than as aforesaid). The foregoing notwithstanding, the Issuer may agree to any amendment, modification, or waiver without the consent of the Controlling Class; *provided, that* (i) the Issuer determines that such amendment, modification or waiver would not, upon or after becoming effective, adversely affect the rights or interests of the Holders of the Notes, (ii) the Issuer gives ten (10) days prior written notice to the Noteholders of such amendment, modification or waiver, (iii) Rating Agency Confirmation is obtained and (iii) the Controlling Class does not provide written notice to the Issuer that, notwithstanding the determination of the Issuer, the Persons provided notice have reasonably determined that such amendment, modification or waiver would, upon or after becoming effective, adversely affect the Noteholders (the failure of the Controlling Class to provide such notice to the Issuer within ten (10) days of receipt of notice of such amendment, modification or waiver from the Issuer being conclusively deemed to constitute hereunder consent to and approval of such amendment, modification or waiver).

Section 7.11    Statement as to Compliance.    On or before five (5) Business Days after each anniversary of the Closing Date or immediately if there has been a Default in the fulfillment of an obligation under this Indenture, the Issuer shall deliver to the Trustee and each Rating Agency an Officer's Certificate stating, as to each signer thereof, that:

(a) a review of the activities of the Issuer and of the Issuer's performance under this Indenture during the prior calendar year (or from the Closing Date until the Initial Payment Date designated in the Series Indenture, in the case of the first Officer's Certificate) has been made under his supervision; and

(b) to the best of his knowledge, based on such review, the Issuer has fulfilled all of its obligations under this Indenture throughout such year, or, if there has been a Default in the fulfillment of any such obligation, specifying each such Default known to him and the nature and status thereof.

Section 7.12    Co-Issuers May Consolidate, Etc., Only on Certain Terms.

(a) The Issuer shall not consolidate or merge with or into any other Person or convey or transfer all or substantially all of its properties and assets to any Person, unless permitted by Cayman Islands law and unless:

(i)    the Issuer shall be the surviving entity, or the Person (if other than the Issuer) formed by such consolidation or into which the Issuer is merged or to which all or substantially all property and assets of the Issuer are transferred shall be a limited purpose company incorporated and existing under the laws of the Cayman Islands or such other jurisdiction approved by the Controlling Class and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee, each Holder of Notes, the due and punctual payment of the principal of and interest on all Notes and the performance of every covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein;

(ii)    each Rating Agency shall have been notified of such consolidation, merger, conveyance or transfer and the Co-Issuers and the Trustee shall have received Rating Agency Confirmation;

(iii)    such consolidation, merger, conveyance or transfer would not adversely affect the tax treatment of the Issuer or a Noteholder to any material extent or otherwise cause any of the statements described in the Offering Memorandum under the heading, "Certain U.S. Federal Income Tax Considerations" to be inaccurate or incorrect to any material extent, or the Noteholders agree by unanimous consent;

(iv)    if the Issuer is not the surviving entity, the Person formed by such consolidation or into which the Issuer is merged or to which all or substantially all property and assets of the Issuer are transferred shall have agreed with the Trustee (A) to observe the same legal requirements for the recognition of such formed or surviving corporation as a legal entity separate and apart from any of its Affiliates as are applicable to the Issuer with respect to its Affiliates and (B) not to consolidate or merge with or into any other Person or convey or transfer the Collateral or all or substantially all of its properties and assets to any other Person except in accordance with the provisions of this Section 7.12;

(v)    if the Issuer is not the surviving entity, the Person formed by such consolidation or into which the Issuer is merged or to which all or substantially all of the

property and assets of the Issuer are transferred shall have delivered to the Trustee and each Rating Agency an Officer's Certificate and an Opinion of Counsel each stating that such Person shall be duly organized, validly existing and (if applicable) in good standing in the jurisdiction in which such Person is organized; that such Person has sufficient power and authority to assume the obligations set forth in clause (i) above and to execute and deliver an indenture supplemental hereto for the purpose of assuming such obligations; that such Person has duly authorized the execution, delivery and performance of an indenture supplemental hereto for the purpose of assuming such obligations and that such supplemental indenture is a valid, legal and binding obligation of such Person, enforceable in accordance with its terms, subject only to bankruptcy, reorganization, insolvency, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law); that, immediately following the event which causes such Person to become the successor to the Issuer, (A) such Person has good and marketable title, free and clear of any lien, security interest or charge, other than the lien and security interest of this Indenture, to the Collateral securing, in the case of a consolidation or merger of the Issuer, all of the Secured Obligations or, in the case of any conveyance or transfer of the Collateral securing any of the Secured Obligations, such Secured Obligations, (B) the Trustee continues to have a valid perfected security interest in the Collateral securing, in the case of a consolidation or merger of the Issuer, all of the Secured Obligations, or, in the case of any conveyance or transfer of the Collateral securing any of the Secured Obligations, such Secured Obligations, and (C) such other matters as the Trustee or any Noteholder may reasonably require;

(vi)    immediately after giving effect to such transaction, the Issuer delivers to the Trustee an Officer's Certificate stating that no Default or Event of Default shall have occurred and be continuing;

(vii)    the Issuer shall have notified each Rating Agency in writing of such consolidation, merger, conveyance or transfer and shall have delivered to the Trustee, the Credit Swap Counterparty and each Noteholder an Officer's Certificate and an Opinion of Counsel each stating that such consolidation, merger, conveyance or transfer and such supplemental indenture comply with this Article VII and that all conditions precedent in this Article VII provided for relating to such transaction have been complied with and that no adverse tax consequences will result therefrom to any Holder of the Notes or the Credit Swap Counterparty;

(viii)    after giving effect to such transaction, neither the Issuer nor the Co-Issuer will be required to register as an investment company under the Investment Company Act;

(ix)    after giving effect to such transaction, the outstanding shares of stock of the Issuer or the Co-Issuer will not be beneficially owned within the meaning of the Investment Company Act by any U.S. Person or U.S. Residents; and

(x)    the Issuer has received advice from Allen & Overy LLP or an opinion of another nationally recognized U.S. tax counsel experienced in such matters that the Issuer

or the Person referred to in clause (a) will not be treated as engaged in a U.S. trade or business or otherwise subject to U.S. federal income tax on a net income tax basis.

(b) The Co-Issuer shall not consolidate or merge with or into any other Person or convey or transfer all or substantially all of its properties and assets to any Person unless:

(i)    the Co-Issuer shall be the surviving entity, or the Person (if other than the Co-Issuer) formed by such consolidation or into which the Co-Issuer is merged or to which all or substantially all of the properties and assets of the Co-Issuer are transferred shall be a limited purpose limited liability company organized and existing under the laws of the State of Delaware or such other jurisdiction approved by the Controlling Class and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee, the due and punctual payment of the principal of and interest on all of the Notes and the performance of every covenant of this Indenture on the part of the Co-Issuer to be performed or observed, all as provided herein;

(ii)    each Rating Agency shall have been notified of such consolidation, merger, conveyance or transfer and the Co-Issuers and the Trustee shall have received a Rating Agency Confirmation;

(iii)    such consolidation, merger, conveyance or transfer would not affect the tax treatment of the Issuer or a Noteholder to any material extent or otherwise cause any of the statements described in the Offering Memorandum under the heading, "Certain U.S. Federal Income Tax Considerations" to be inaccurate or incorrect to any material extent, or the Noteholders agree by unanimous consent;

(iv)    if the Co-Issuer is not the surviving entity, the Person formed by such consolidation or into which the Co-Issuer is merged or to which all or substantially all of the properties and assets of the Co-Issuer are transferred shall have agreed with the Trustee (A) to observe the same legal requirements for the recognition of such formed or surviving corporation as a legal entity separate and apart from any of its Affiliates as are applicable to the Co-Issuer with respect to its Affiliates and (B) not to consolidate or merge with or into any other Person or convey or transfer its properties and assets substantially as an entirety to any other Person except in accordance with the provisions of this Section 7.12;

(v)    if the Co-Issuer is not the surviving entity, the Person formed by such consolidation or into which the Co-Issuer is merged or to which all or substantially all of the properties and assets of the Co-Issuer are transferred shall have delivered to the Trustee and each Rating Agency an Officer's Certificate and an Opinion of Counsel each stating that such Person shall be duly organized, validly existing and (if applicable) in good standing in the jurisdiction in which such Person is organized; that such Person has sufficient power and authority to assume the obligations set forth in clause (i) above and to execute and deliver an indenture supplemental hereto for the purpose of assuming such obligations; that such Person has duly authorized the execution, delivery and performance of an indenture supplemental hereto for the purpose of assuming such obligations and

-74-

that such supplemental indenture is a valid, legal and binding obligation of such Person, enforceable in accordance with its terms, subject only to bankruptcy, reorganization, insolvency, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law); that, immediately following the event which causes such Person to become the successor to the Co-Issuer, (A) such Person has good and marketable title, free and clear of any lien, security interest or charge, other than the lien and security interest of this Indenture, to the Collateral securing, in the case of a consolidation or merger of the Co-Issuer, all of the Secured Obligations or, in the case of any conveyance or transfer of the Collateral securing any of the Secured Obligations, such Secured Obligations, (B) the Trustee continues to have a valid perfected security interest in the Collateral securing, in the case of a consolidation or merger of the Co-Issuer, all of the Secured Obligations, or, in the case of any conveyance or transfer of the Collateral securing any of the Secured Obligations, such Secured Obligations; and (C) such other matters as the Trustee or any Noteholder may reasonably require;

(vi)     immediately after giving effect to such transaction, the Issuer delivers to the Trustee an Officer's Certificate stating that no Default or Event of Default shall have occurred and be continuing;

(vii)     the Co-Issuer shall have notified each Rating Agency in writing of such consolidation, merger, conveyance or transfer and shall have delivered to the Trustee, the Credit Swap Counterparty and each Noteholder an Officer's Certificate and an Opinion of Counsel each stating that such consolidation, merger, conveyance or transfer and such supplemental indenture comply with this Article VII and that all conditions precedent in this Article VII provided for relating to such transaction have been complied with and that no adverse tax consequences will result therefrom to any Holder of the Notes or the Credit Swap Counterparty;

(viii)     after giving effect to such transaction, neither the Issuer nor the Co-Issuer will be required to register as an investment company under the Investment Company Act; and

(ix)     after giving effect to such transaction, the outstanding shares of common stock of the Issuer and the Co-Issuer will not be beneficially owned within the meaning of the Investment Company Act by any U.S. Person or U.S. Resident.

Section 7.13    Successor Substituted.    Upon any consolidation or merger, or conveyance or transfer of all or substantially all the properties and assets of the Issuer or the Co-Issuer, in accordance with Section 7.12, the Person formed by or surviving such consolidation or merger (if other than the Issuer or the Co-Issuer), or, the Person to which such consolidation, merger, conveyance or transfer is made, shall succeed to, and be substituted for, and may exercise every right and power of, and shall be bound by each such obligation and covenant of, the Issuer or the Co-Issuer, as the case may be, under this Indenture with the same effect as if such Person had been named as the Issuer or the Co-Issuer, as the case may be, herein.    In the event of any such consolidation, merger, conveyance or transfer, the Person

named as the "Issuer" or the "Co-Issuer" in the first paragraph of this Indenture or any successor which shall theretofore have become such in the manner prescribed in this <u>Article VII</u> may be dissolved, wound-up and liquidated at any time thereafter, and such Person thereafter shall be released from its liabilities as obligor and maker on all the Notes and from its obligations under this Indenture.

Section 7.14    <u>No Other Business</u>.  The Issuer shall not engage in any business or activity other than issuing and selling the Notes pursuant to this Indenture, entering into the Credit Swaps and acquiring, owning, disposing, holding and pledging and otherwise dealing with the Reference Portfolio and the Collateral in connection therewith, and the Co-Issuer shall not engage in any business or activity other than issuing and selling the Notes, pursuant to this Indenture and, with respect to the Issuer and the Co-Issuer, such other activities which are necessary, including, without limitation, entering into the agreements contemplated hereby, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith.  The Issuer and the Co-Issuer shall not amend their Memorandum of Association or Articles of Association and Certificate of Formation or Limited Liability Company Agreement, respectively, unless prior to making such amendment the Issuer or the Co-Issuer, as the case may be, receives Rating Agency Confirmation.

Section 7.15    <u>Reporting</u>.  At any time when the Co-Issuers are not subject to Section 13 or 15(d) of the Exchange Act and are not exempt from reporting pursuant to Rule 12g3-2(b) under the Exchange Act, upon the request of a Holder of a Certificated Note or the Beneficial Owner of a Regulation S Global Note, the Co-Issuers, as appropriate, shall promptly furnish or cause to be furnished "Rule 144A Information" (as defined below) to such Holder or Beneficial Owner, to a prospective purchaser of such Note designated by such Holder or Beneficial Owner or to the Trustee for delivery to such Holder or Beneficial Owner or a prospective purchaser designated by such Holder or Beneficial Owner, as the case may be, in order to permit compliance by such Holder or Beneficial Owner with Rule 144A under the Securities Act in connection with the resale of such Note by such Holder or Beneficial Owner. "<u>Rule 144A Information</u>" shall be such information as is specified pursuant to Rule 144A(d)(4) under the Securities Act (or any successor provision thereto).

## ARTICLE VIII

## SUPPLEMENTAL INDENTURES

Section 8.1    <u>Supplemental Indentures without Consent of Noteholders</u>. Without the consent of the Holders of any Notes, the Co-Issuers, when authorized by Board Resolutions, and the Trustee, at any time and from time to time subject to the requirement provided below in this <u>Section 8.1</u> with respect to the ratings of the Notes may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(a) to evidence the succession of another Person to the Issuer or the Co-Issuer pursuant to Section 7.12 hereof, and the assumption by any such successor Person of the covenants of the Issuer or the Co-Issuer contained herein and in the Notes;

(b) to add to the covenants of the Issuer, the Co-Issuer or the Trustee, for the benefit of the Holders of all of the Notes, or to surrender any right or power herein conferred upon the Issuer or the Co-Issuer;

(c) to convey, transfer, assign, mortgage or pledge any property to or with the Trustee for the benefit of the Secured Parties, or add to the conditions, limitations or restrictions on the authorized amount, terms and purposes of the issue, authentication and delivery of the Notes;

(d) to evidence and provide for the acceptance of appointment hereunder by a successor Trustee and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one Trustee, pursuant to the requirements of Section 6.8, 6.09 or 6.11;

(e) to correct or amplify the description of any property at any time subject to the lien of this Indenture, or to better assure, convey and confirm unto the Trustee any property subject to or required to be subject to the lien of this Indenture (including, without limitation, any and all actions necessary or desirable as a result of changes in law or regulations), or to cause any additional property to be subject to the lien of this Indenture;

(f) to modify the restrictions on and procedures for resale and other transfer of the Notes in accordance with any change in any applicable law or regulation (or the interpretation thereof) or to enable the Co-Issuers to rely upon any less restrictive exemption from registration under the Securities Act or the Investment Company Act or to remove restrictions on resale and transfer to the extent not required thereunder;

(g) to correct any inconsistency, cure any defect or ambiguity or add any provision to this Indenture not inconsistent with the existing provisions hereof;

(h) to accommodate the settlement of Notes in book-entry form through the facilities of DTC or otherwise;

(i) to conform this Indenture to the Offering Memorandum in any non-material respect;

(j) to prevent the Issuer, the holders of Notes or the Trustee from being subject to withholding or other taxes, fees or assessments, to prevent the Issuer from being treated as engaged in a U.S. trade or business or otherwise

-77-

subject to U.S. federal, state or local income or franchise tax on a net income tax basis, or

(k) to affect any action specified in Section 4(l) or Section 4(m) of the Series Indenture.

The Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations which may be therein contained, but the Trustee shall not be obligated to enter into any such supplemental indenture which affects the Trustee's own rights, duties, liabilities or indemnities under this Indenture or otherwise, except to the extent required by law.

The Trustee shall provide the Rating Agencies at least ten (10) Business Days prior written notice of any such supplemental indenture, as evidenced by a written acknowledgement in respect thereof. The Co-Issuers and the Trustee shall not enter into any such supplemental indenture unless it shall have received Rating Agency Confirmation with respect to such proposed supplemental indenture.

The Co-Issuers and the Trustee shall not enter into any such supplemental indenture if, as a result of such supplemental indenture, the interests of any holder of Notes would be materially and adversely affected thereby. Notwithstanding anything herein to the contrary, if the supplemental indenture is executed for the purposes specified in amended pursuant to clause (i) or clause (k) above the interests of any holder of the Notes shall be deemed to not be materially and adversely affected. The Co-Issuers and the Trustee shall not enter into any such supplemental indenture unless the Trustee has received advice from Allen & Overy LLP or an opinion of another nationally recognized U.S. tax counsel experienced in such matters that the proposed supplemental indenture would not adversely affect the tax treatment of the Issuer or a Noteholder to any material extent or otherwise cause any of the statements described in the Offering Memorandum under the heading, "Certain U.S. Federal Income Tax Considerations" to be inaccurate or incorrect to any material extent. The Co-Issuers and the Trustee shall not enter into any such supplemental indenture without the prior written consent of the Credit Swap Counterparty if such supplemental indenture could reasonably be expected to have an adverse effect on the Credit Swap Counterparty under the Credit Swaps or hereunder. The Co-Issuers and the Trustee shall not enter into any such supplemental indenture without the prior written consent of any Option Counterparty specified in the Series Indenture if such supplemental indenture could reasonably be expected to have an adverse effect on such Option Counterparty under the Option Agreements (if any) specified in the Series Indenture or hereunder. The Trustee may, consistent with the written advice of counsel, determine whether or not any Class of Notes would be materially and adversely affected by any such proposed supplemental indenture; *provided that* such change will be deemed not to adversely affect any Class of Notes upon receipt by the Trustee of an Rating Agency Confirmation with respect to such proposed supplemental indenture. Such determination shall be conclusive and binding on all present and future holders of the Notes.

Section 8.2    <u>Supplemental Indentures with Consent of Noteholders</u>. With the written consent of the Holders of not less than a Majority of each Class of Notes materially and adversely affected thereby (except as set forth in <u>clauses (a)</u> through <u>(i)</u> below), by Act of said

Holders, delivered to the Co-Issuers and the Trustee and with the prior written consent of (i) the Credit Swap Counterparty (if such indenture supplement could reasonably be expected to have an adverse effect on the Credit Swap Counterparty under the Credit Swaps or hereunder) and (ii) any Option Counterparty specified in the Series Indenture (if such indenture supplement could reasonably be expected to have an adverse effect on such Option Counterparty under the Option Agreement (if any) specified in the Series Indenture or hereunder) the Co-Issuers and the Trustee may enter into one or more indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture *provided, however, that* notwithstanding anything in this Indenture to the contrary, no such supplemental indenture shall, without the consent of the Credit Swap Counterparty, any Option Counterparty specified in the Series Indenture and each Holder of each Outstanding Note materially and adversely affected thereby:

(a) change the Scheduled Final Payment Date or the legal final maturity date of any Note, or the date on which any installment of principal or interest on any Note is payable, reduces the principal amount of any Note or Note Interest Rate thereon or the rate at which interest accrues or the manner in which interest accrues or the amount due upon redemption thereof, change the earliest date on which any Note may be redeemed, change the provisions of this Indenture relating to the application of proceeds of the Collateral to the payment of principal of or interest on the Notes or change any place where, or the coin or currency in which, any Note or the principal thereof or interest thereon is payable, or impair the right to institute suit for the enforcement of any such payment on or after the legal final maturity date;

(b) reduce the percentage of the Aggregate Outstanding Amount of Holders of Notes whose consent is required for the authorization of any such supplemental indenture, or for any waiver of compliance with certain provisions of this Indenture or certain Defaults hereunder and their consequences provided for in this Indenture;

(c) impair or adversely affect the Collateral except as otherwise permitted in this Indenture;

(d) affect the tax treatment of the Issuer or a Noteholder to any material extent or otherwise cause any of the statements described in the Offering Memorandum under the heading, "Certain U.S. Federal Income Tax Considerations" to be inaccurate or incorrect to any material extent;

(e) permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Collateral or terminate the lien of this Indenture on any property at any time subject hereto (other than in connection with the sale thereof in accordance with this Indenture) or deprive any Secured Party of the security afforded by the lien of this Indenture;

(f) reduce the percentage of the Aggregate Outstanding Amount of Holders of Notes whose consent is required to request that the Trustee to sell or liquidate the Collateral pursuant to Section 5.4;

(g) modify any of the provisions of this Section 8.2, except to increase any percentage of Outstanding Notes whose Holders' consent is required for any such action or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Note affected thereby;

(h) modify the definition of the term "Outstanding" or the Priority of Payments set forth in the Series Indenture;

(i) modify any of the provisions of this Indenture in such a manner as to affect the calculation of the amount of any payment of principal or interest due on any Note on any Payment Date or to affect the rights of the Secured Parties

to the benefit of any provisions for the redemption of such Notes or otherwise adversely affect the Holders of Notes, the provisions of which are not being altered.

Notwithstanding anything herein to the contrary, no consent of any other action of any holder of the Notes shall be required in connection with a supplemental indenture executed for the purposes specified in Section 8.1(i) and Section 8.1(k).

Not later than 15 Business Days prior to the execution of any such proposed supplemental indenture pursuant to this Section 8.2, the Trustee, at the expense of the Co-Issuers, shall mail to the Noteholders and to the Credit Swap Counterparty, a copy of such supplemental indenture. Not less than ten (10) Business Days prior to the time specified for such mailing, for so long as the Notes are Outstanding and rated by each Rating Agency, the Trustee shall provide a copy of such supplemental indenture to each Rating Agency and request Rating Agency Confirmation, as applicable. The Trustee shall include in the mailing to the Noteholders the response of each Rating Agency to such request; *provided, however,* that if Moody's determines that the execution of such proposed supplemental indenture shall not result in the reduction of or withdrawal of its then current rating of the Notes, it shall not issue its written confirmation until at least a Majority of the Notes have consented (or deemed to have consented) to such proposed supplemental indenture. Unless within 15 Business Days after such mailing, the Trustee shall have received written notice from Holders representing at least a Majority of Notes that such Holders of Notes reasonably consider the Notes to be affected by the proposed supplemental indenture or the Holders of at least a Majority of the Notes shall have consented to or objected to such proposed supplemental indenture in writing, the Trustee may in its discretion determine whether or not the Holders of any Notes would be affected by any supplemental indenture and any such determination shall be conclusive and binding upon all present and future Holders of Notes. The Trustee shall not be liable for any such determination made in good faith and in reliance upon an Opinion of Counsel delivered to the Trustee as set forth in Section 8.3. If any Notes are Outstanding, the Trustee shall not without the written consent of 100% of the Notes enter into any such supplemental indenture if Rating Agency Confirmation is not received prior to the effective date of such supplemental indenture.

It shall not be necessary for any Act of Noteholders under this Section 8.2 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Section 8.3    Execution of Supplemental Indentures; Delivery of Supplemental Indentures. In executing or accepting the additional trusts created by any supplemental indenture permitted by this Article VIII or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive and (subject to Sections 6.1 and 6.3) shall be fully protected in relying upon an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture and that all conditions precedent thereto have been complied with. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties or indemnities under this Indenture or otherwise.

Promptly after the execution by the Co-Issuers and the Trustee of any supplemental indenture, the Trustee, at the expense of the Co-Issuers, shall mail a copy of such supplemental indenture to the Holders of the Notes, the Credit Swap Counterparty, any Option Counterparty specified in the Series Indenture and each Rating Agency (so long as the Notes are outstanding and rated by each Rating Agency). Any failure of the Trustee to publish or mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 8.4    <u>Effect of Supplemental Indentures</u>.   Upon the execution of any supplemental indenture under this <u>Article VIII</u>, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of the Notes theretofore and thereafter authenticated and delivered hereunder shall be bound thereby.

Section 8.5    <u>Reference in Notes to Supplemental Indentures</u>.   Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this <u>Article VIII</u> may, and if required by the Trustee shall, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Co-Issuers shall so determine, new Notes, so modified as to conform in the opinion of the Trustee and the Co-Issuers to any such supplemental indenture, may be prepared and executed by the Issuer and the Co-Issuer and authenticated and delivered by the Trustee in exchange for Outstanding Notes.

Section 8.6    <u>Certain Further Limitations on Supplemental Indentures</u>. Notwithstanding anything to the contrary herein, each of the Issuer and the Co-Issuer agree that they will not consent to or enter into any indenture supplemental hereto or any amendment to any other document related hereto:

(a) that amends any provision of this Indenture or such other document relating to the institution of proceedings for the Issuer or the Co-Issuer to be adjudicated as bankrupt or insolvent, or the consent by the Issuer or the Co-Issuer to the institution of bankruptcy or insolvency proceeding against it, or the filing with respect to the Issuer or the Co-Issuer of a petition or answer or consent seeking reorganization or relief under the Bankruptcy Code or any other similar applicable law, or the consent by the Issuer or the Co-Issuer to the filing of any such petition or to the appointment of a receiver, liquidator, assignee, trustee or sequestrator (or other similar official) of the Issuer or the Co-Issuer or of any substantial part of its property, respectively; or

(b) that amends any provision of this Indenture or such other document that provides that the obligations of the Co-Issuers under the Notes are limited-recourse senior debt obligations of the Issuer and non-recourse debt obligations of the Co-Issuer, in each case payable solely from the Collateral and that following realization of the Collateral shall be extinguished; or

(c) unless the Issuer has received advice of Allen & Overy LLP or an opinion of another nationally recognized U.S. tax counsel experienced in such matters that the proposed supplemental indenture or amendment would not

adversely affect the tax treatment of the Issuer or a Noteholder to any material extent or otherwise cause any of the statements described in the Offering Memorandum under the heading, "Certain U.S. Federal Income Tax Considerations" to be inaccurate or incorrect to any material extent.

## ARTICLE IX

## ACCOUNTS AND REPORTS

Section 9.1    Collection of Money.

(a) Except as otherwise expressly provided herein, the Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all Money and other property payable to or receivable by the Trustee pursuant to this Indenture, including all payments due on the Permitted Short-Term Investments in accordance with the terms and conditions of such Permitted Short-Term Investments. The Trustee shall segregate and hold all such Money and property received by it in trust pursuant to the Granting Clauses, for the Secured Parties. The accounts established by the Trustee pursuant to this Article X may include any number of subaccounts as determined by the Trustee for convenience in administering the Collateral.

(b) Each of the parties hereto hereby agrees that each Account shall be deemed to be a "Securities Account". Each of the parties hereto hereby agrees to cause the Custodian or any other Securities Intermediary that holds any Money or other property for the Issuer or the Co-Issuer in an Account to agree with the parties hereto that (x) the Money and other property is to be treated as a Financial Asset under Article 8 of the UCC and (y) the "securities intermediary's jurisdiction" (within the meaning of Section 8-110 of the UCC) for that purpose will be the State of New York. In no event may any Financial Asset held in any Account be registered in the name of, payable to the order of, or specially Indorsed to, the Issuer unless such Financial Asset has also been Indorsed in blank or to the Custodian or other Securities Intermediary that holds such Financial Asset in such Account.

Section 9.2    Reports by Trustee.

The Trustee shall as promptly as practicable supply in a timely fashion to the Issuer any information regularly maintained by the Trustee that the Issuer may from time to time request with respect to the Interest Collections Payment Account and Principal Collections Payment Account reasonably needed to complete the Monthly Report or to provide any other information reasonably available to the Trustee by reason of its acting as Trustee hereunder and required to be provided by Section 9(e) of the Series Indenture.

Section 9.3    <u>Procedures Relating to the Establishment of Accounts Controlled by the Trustee; Criteria Applicable to Custodian and Account Securities Intermediary.</u>

(a) Notwithstanding anything else contained herein, the Trustee agrees that with respect to each of the Accounts, it will cause each Accounts Securities Intermediary establishing such Accounts to enter into an agreement whereby each such Accounts Securities Intermediary agrees that it will (i) comply with Entitlement Orders relating to such Account issued by the Trustee without further consent by the Issuer; (ii) credit all Permitted Short-Term Investments to the applicable Account; (iii) treat each item of property credited to such Account as a Financial Asset; (iv) not enter into any agreement with any other person relating to any Account pursuant to which agreement it has agreed to comply with Entitlement Orders made by such person; (v) not accept for credit to any Account any Permitted Short-Term Investment which is registered in the name of, or payable to the order of, specially indorsed to, any person other than the Accounts Securities Intermediary unless it subsequently has been indorsed to such Accounts Securities Intermediary or is indorsed in blank; and (vi) waive any right of set-off unrelated to its fees for such Account.

The Account Securities Intermediary shall provide to the Trustee (i) a statement, with respect to each Payment Date, of all deposits to and payments from the Accounts during the preceding Accrual Period and (ii) such additional information as the Trustee shall reasonably request.

(b) The Accounts shall remain at all times with the Accounts Securities Intermediary. Any financial institution acting as Custodian or Account Securities Intermediary shall have a combined capital and surplus of at least U.S.$200,000,000, and shall have a (i) a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P and a Long-Term Credit Rating of not less than "Aa2" by Moody's and not less than "AA-" by S&P (as applicable), provided such financial institution has executed an agreement as identified in <u>Section 9.3(a)</u>. The Trustee shall not permit the Accounts (or any funds required by this Indenture to be credited to such Accounts upon receipt by the Trustee) to be held by the Trustee or any other person or financial institution other than the Custodian or Account Securities Intermediary. The Trustee represents, warrants and agrees for the benefit of the holders of the Notes that it shall issue Entitlement Orders solely to comply with the express duties of the Trustee hereunder.

## ARTICLE X

## CREDIT SWAP

Section 10.1    <u>Credit Swaps.</u>

(a) The Issuer shall enter into the Credit Swaps on or prior to the Closing Date and shall Grant its interest therein to the Trustee pursuant to the