Granting Clauses hereof.  The Credit Swaps shall contain appropriate limited-recourse and non-petition provisions equivalent (*mutatis mutandis*) to those contained in Sections 2.6(h) and 5.4(d).

(b) The Trustee shall, on behalf of the Issuer, pay amounts due to the Credit Swap Counterparty under the Credit Swaps and this Indenture.

(c) In the event the Trustee becomes aware that the Credit Swap Counterparty has defaulted in the payment when due of its obligations to the Issuer under the Credit Swaps, the Trustee shall make a demand on such party, or any guarantor, if applicable, demanding payment by 12:30 p.m., New York time, on such date (or by such time on the next succeeding Business Day if such knowledge is obtained after 11:30 a.m., New York time).  The Trustee shall give notice to the Noteholders upon the continuing failure by such party to perform its obligations during the three (3) New York Business Days following a demand made by the Trustee on the Credit Swap Counterparty.

(d) If at any time the Credit Swaps become subject to early termination due to the occurrence of an Event of Default or a Termination Event (each as defined in the Credit Swaps), the Issuer and the Trustee shall take such actions (following the expiration of any applicable grace period and after the expiration of three (3) New York Business Day period referred to in Section 10.1(c)) to enforce the rights of the Issuer and the Trustee thereunder as may be permitted by the terms of such agreement and consistent with the terms hereof, and shall apply the proceeds of any such actions to Principal Collections.

## ARTICLE XI

## NOTEHOLDERS' RELATIONS

Section 11.1   Standard of Conduct.  In exercising any of its or their voting rights, rights to direct and consent or any other rights as a Noteholder under this Indenture, subject to the terms and conditions of this Indenture, including, without limitation, Section 5.8, a Noteholder or Noteholders shall not have any obligation or duty to any Person or to consider or take into account the interests of any Person and shall not be liable to any Person for any action taken by it or them or at its or their direction or any failure by it or them to act or to direct that an action be taken, without regard to whether such action or inaction benefits or adversely affects any Noteholder, the Issuer, or any other Person, except for any liability to which such Noteholder may be subject to the extent the same results from such Noteholder's taking or directing an action, or failing to take or direct an action, in bad faith or in violation of the express terms of this Indenture.

Section 11.2   Right to List of Holders.  Any Noteholder shall have the right, upon five (5) Business Days prior notice to the Trustee to obtain a complete list of Noteholders.

## ARTICLE XII

## MISCELLANEOUS

Section 12.1    <u>Form of Documents Delivered to Trustee</u>.    In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate of an Authorized Officer of the Issuer, the Co-Issuer may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such Authorized Officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate of an Authorized Officer of the Issuer or the Co-Issuer or any Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate of, or representations by, the Issuer or the Co-Issuer or any other Person, stating that the information with respect to such factual matters is in the possession of the Issuer or the Co-Issuer or such other Person, unless such Authorized Officer of the Issuer or the Co-Issuer or such counsel knows that the certificate or representations with respect to such matters are erroneous. Any Opinion of Counsel may also be based, insofar as it relates to factual matters, upon a certificate of, or representations by, an Authorized Officer of the Issuer or the Co-Issuer, stating that the information with respect to such matters is in the possession of the Issuer or the Co-Issuer unless such counsel knows that the certificate or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture it is provided that the absence of the occurrence and continuation of a Default or Event of Default is a condition precedent to the taking of any action by the Trustee at the request or direction of the Issuer or the Co-Issuer, then notwithstanding that the satisfaction of such condition is a condition precedent to the Issuer's or the Co-Issuer's rights to make such request or direction, the Trustee shall be protected in acting in accordance with such request or direction if it does not have knowledge of the occurrence and continuation of such Default or Event of Default as provided in <u>Section 6.1(d)</u>.

Section 12.2    <u>Acts of Noteholders</u>.

(a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by an agent duly appointed in writing; and, except as herein otherwise expressly provided, such

action shall become effective when such instrument or instruments are delivered to the Trustee, and, where it is hereby expressly required, to the Issuer. Such instrument or instruments (and the action or actions embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and conclusive in favor of the Trustee and the Co-Issuers, if made in the manner provided in this Section 12.2.

(b) The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner which the Trustee deems sufficient.

(c) The Aggregate Outstanding Amount and registered numbers of Notes held by any Person, and the date of his holding the same, shall be proved by the Note Register.

(d) Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder (and any transferee thereof) of such Note and of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Trustee or the Co-Issuers in reliance thereon, whether or not notation of such action is made upon such Note.

Section 12.3    Notices. Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture to be made upon, given or furnished to, or filed with:

(a) the Trustee by any Noteholder or by the Issuer or the Co-Issuer shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to and mailed, by certified mail, return receipt requested, hand delivered, sent by overnight courier service guaranteeing next day delivery or by telecopy in legible form, to the Trustee addressed to it at the address designated in the Series Indenture;

(b) the Issuer by the Trustee or by any Noteholder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, hand delivered, sent by overnight courier service or by telecopy in legible form, to the Issuer addressed to it at the address designated in the Series Indenture;

(c) the Co-Issuer by the Trustee or by any Noteholder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, hand delivered, sent by overnight courier service or by telecopy in legible form, to the Issuer, as sole member, addressed to it at the address designated in the Series Indenture;

(d) to Moody's (if applicable) by the Co-Issuers or the Trustee shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if made, given, furnished or filed in writing to and mailed, by certified mail, return receipt requested, hand delivered, sent by overnight courier service guaranteeing next day delivery or by telecopy in legible form, to Moody's at Moody's Investors Service, 99 Church Street, New York, New York 10007, telecopy No. (212) 553-0355, Attention: Structured Finance Group, CBO/CLO Monitoring or at any other address previously furnished in writing by Moody's (and with a copy via e-mail to "cdomonitoring@moody's.com");

(e) to Standard & Poor's (if applicable) by the Co-Issuers or the Trustee shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if made, given, furnished or filed in writing to and mailed, by certified mail, return receipt requested, hand delivered, sent by overnight courier service guaranteeing next day delivery, to Standard & Poor's at Standard & Poor's Ratings Services, 55 Water Street, 41st Floor, New York, New York 10041-0003 or at any other address previously furnished in writing by Standard & Poor's, Attention: Structured Finance Ratings, CBO/CLO Surveillance (and with a copy via e-mail to "scdo_surveillance@sandp.com");

(f) in writing and mailed, first-class postage prepaid, hand delivered, sent by overnight courier service or by telecopy in legible form, to it at the address designated in the Series Indenture; and

(g) the Managers by the Co-Issuers, any Noteholder or the Trustee shall be sufficient for every purpose hereunder if in writing and mailed first-class postage prepaid, hand delivered, sent by overnight courier service or by telecopy in legible form, to it at the address designated in the Series Indenture.

Delivery of any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents made as provided above will be deemed effective: (i) if in writing and delivered in person or by overnight courier service, on the date it is delivered; (ii) if sent by facsimile or electronic transmission, on the date that transmission is received by the recipient in legible form (it being agreed that the burden of proving receipt will be on the sender and will not be met by a transmission report generated by the sender's facsimile machine); and (iii) if sent by registered mail, postage prepaid, seven (7) Business Days following the date sent.

Section 12.4 <u>Notices to Noteholders; Waiver</u>. Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of Notes of any event:

(a) such notice shall be sufficiently given to Holders of Notes if in writing and mailed, first-class postage prepaid, to each Holder of a Note affected by such event, at the address of such Holder as it appears in the Note Register, not earlier than the earliest date and not later than the latest date, prescribed for the giving of such notice; and

(b) such notice shall be in the English language.

Such notices will be deemed to have been given on the date of such mailing.

The Trustee will deliver to the Holders of the Notes any readily available information or notice requested to be so delivered at the expense of the Issuer.

Neither the failure to mail any notice, nor any defect in any notice so mailed, to any particular Holder of a Note shall affect the sufficiency of such notice with respect to other Holders of Notes. In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification to Holders of Notes as shall be made with the approval of the Trustee shall constitute a sufficient notification to such Holders for every purpose hereunder.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall be filed with the Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

Section 12.5 <u>Effect of Headings and Table of Contents</u>. The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

Section 12.6 <u>Successors and Assigns</u>. All covenants and agreements in this Indenture by the Co-Issuers shall bind their respective successors and assigns, whether so expressed or not.

Section 12.7 <u>Separability</u>. In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 12.8 <u>Benefits of Indenture</u>. Nothing in this Indenture or in the Notes, expressed or implied, shall give to any Person, other than the parties hereto and their successors hereunder, the Secured Parties, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 12.9 <u>Governing Law</u>. THIS INDENTURE AND EACH NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, INCLUDING

ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE (INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW BUT EXCLUDING ALL OTHER CHOICE-OF-LAW AND CONFLICTS-OF-LAW RULES).

Section 12.10 <u>Submission to Jurisdiction</u>.  THE CO-ISSUERS AND THE TRUSTEE HEREBY IRREVOCABLY SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN THE BOROUGH OF MANHATTAN IN THE CITY OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE NOTES OR THIS INDENTURE, AND THE CO-ISSUERS AND THE TRUSTEE HEREBY IRREVOCABLY AGREE THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE OR FEDERAL COURT.  THE CO-ISSUERS AND THE TRUSTEE HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT THAT THEY MAY LEGALLY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING.  THE CO-ISSUERS AND THE TRUSTEE AGREE THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

Section 12.11 <u>Counterparts</u>.  This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

Section 12.12 <u>Judgment Currency</u>.  This is an international financing transaction in which the specification of Dollars (the "<u>Specified Currency</u>"), and the specification of the place of payment, as the case may be (the "<u>Specified Place</u>"), is of the essence, and the Specified Currency shall be the currency of account in all events relating to payments of or on the Notes. The payment obligations of the Co-Issuers under this Indenture and the Notes shall not be discharged by an amount paid in another currency or in another place, whether pursuant to a judgment or otherwise, to the extent that the amount so paid on conversion to the Specified Currency and transfer to the Specified Place under normal banking procedures does not yield the amount of the Specified Currency at the Specified Place.  If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder in the Specified Currency into another currency (the "<u>Second Currency</u>"), the rate of exchange which shall be applied shall be that at which in accordance with normal banking procedures the Trustee could purchase the Specified Currency with the Second Currency on the Business Day next preceding that on which such judgment is rendered.  The obligation of the Co-Issuers in respect of any such sum due from the Co-Issuers hereunder shall, notwithstanding the rate of exchange actually applied in rendering such judgment, be discharged only to the extent that on the Business Day following receipt by the Trustee of any sum adjudged to be due hereunder or under the Notes in the Second Currency the Trustee may in accordance with normal banking procedures purchase and transfer to the Specified Place the Specified Currency with the amount of the Second Currency so adjudged to be due; and the Co-Issuers hereby, as a separate obligation and notwithstanding any such judgment (but subject to the Priority of Payments with respect to indemnities), agree to indemnify the Trustee and each Noteholder against, and to pay the Trustee or such Noteholder, as the case may be, on demand in the Specified Currency, any difference between the sum

originally due to the Trustee or such Noteholder, as the case may be, in the Specified Currency and the amount of the Specified Currency so purchased and transferred.

Section 12.13  Waiver of Jury Trial.  THE TRUSTEE, THE NOTEHOLDERS AND EACH CO-ISSUER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS INDENTURE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF THE PARTIES HERETO.  EACH OF THE CO-ISSUERS, THE TRUSTEE AND THE NOTEHOLDERS ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTIES ENTERING INTO THIS INDENTURE.

Section 12.14  Liability of Co-Issuers.  Notwithstanding any other terms of this Indenture, the Notes or any other agreement entered into between (inter alia) the Co-Issuers or otherwise, neither the Issuer nor the Co-Issuer shall have any liability whatsoever to the other under this Indenture, the Notes, any such agreements or otherwise and, without prejudice to the generality of the foregoing, neither the Issuer nor the Co-Issuer shall be entitled to take any steps to enforce, or bring any action or proceeding, in respect of this Indenture, the Notes, any such agreements or otherwise against the other.  In particular, neither the Issuer nor the Co-Issuer shall be entitled to petition or take any other steps for the winding up or bankruptcy of the other or shall have any claim in respect of any assets of the other.

Section 12.15  Security Interest Representations and Warranties of the Issuer.

(a) This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Collateral in favor of the Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Issuer.

(b) The Issuer owns and has good and marketable title to the Collateral free and clear of any lien, claim or encumbrance of any Person.

(c) The Issuer has caused or will have caused, within ten days of the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in the Collateral granted to the Trustee hereunder.

(d) Other than the security interest granted to the Trustee pursuant to this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Collateral.  The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Collateral other than any financing statement relating to the security interest granted to the Trustee

hereunder or that has been terminated. The Issuer is not aware of any judgment, pension benefit guaranty or tax lien filings against the Issuer.

(e) All original executed copies of each mortgage note, promissory note or other writing constituting an "instrument" (as defined in the applicable UCC) that constitute or evidence the Collateral have been delivered to the Custodian.

(f) None of the "instruments" (as defined in the applicable UCC) that constitute or evidence the Collateral has any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Trustee.

(g) The Issuer has received all consents and approvals required by the terms of the Collateral to the transfer to the Trustee of its interest and rights in the Collateral hereunder.

(h) No Account is in the name of any Person other than the Issuer. The Issuer has not consented to the securities intermediary of any Account to comply with entitlement orders or other instructions of any Person other than the Trustee.

(i) All of the Collateral consisting of "security entitlements" (within the meaning of the applicable UCC) has been credited to the Interest Collections Payment Account or the Principal Collections Payment Account. The securities intermediary for each of the Interest Collections Payment Account or the Principal Collections Payment Account has agreed to treat all assets credited to the Interest Collections Payment Account or the Principal Collections Payment Account as "financial assets" (within the meaning of the applicable UCC).

(j) The Issuer has delivered to the Trustee a fully executed agreement pursuant to which the securities intermediary has agreed to comply with all entitlement orders and other instructions originated by the Trustee relating to the Interest Collections Payment Account or the Principal Collections Payment Account without further consent by the Issuer.

(k) Each of the Interest Collections Payment Account or the Principal Collections Payment Account is a "securities account" (within the meaning of the applicable UCC).

(l) Other than the Interest Collections Payment Account and the Principal Collections Payment Account the Collateral consists of (i) promissory notes or other writings constituting "instruments" (within the meaning of the applicable UCC), (ii) "accounts" within the meaning of the applicable UCC) or (iii) "general intangibles" (within the meaning of the applicable UCC).

(m) Each of the foregoing representations shall, as applicable, be deemed repeated each time new assets become part of the Collateral.

(n) The security interest of the Trustee in the Collateral shall, until payment in full of the indebtedness secured hereunder and termination of this Indenture, be a first-priority perfected security interest.

(o) The foregoing representations shall survive termination of this Indenture.

Section 12.16 <u>Limited Recourse</u>. Notwithstanding anything in this Indenture or the Notes to the contrary, all amounts, payable or expressed to be payable by the Co-Issuers on, under or in respect of their obligations and liabilities under this Indenture or the Notes shall be recoverable only from and to the extent of sums in respect of, or calculated by reference to, the Collateral that are received by the Issuer pursuant to the terms and conditions thereof and the proceeds of any realization of enforcement of any Collateral, subject in any case to the Priority of Payments set out herein. Upon final realization of such sums and proceeds, neither the Trustee nor the Noteholders, nor any person acting on their behalf, shall be entitled to take any further steps against the Co-Issuers to recover any sums due but still unpaid and all claims in respect of such sums due but still unpaid shall be extinguished.

Each holder of a Note by its acquisition thereof shall be deemed to agree as follows: (i) the segregated portfolio assets of any other segregated portfolio shall not be available or used to make any payments in respect of the Notes or satisfy any other obligations of the Issuer in respect of the Notes, (ii) it shall have no recourse to the segregated portfolio assets of any other segregated portfolio of the Company or the general assets of the Company, and (iii) if under any circumstance it were to have recourse to the segregated portfolio assets of any other segregated portfolio of the Company, its recourse to such assets shall be subordinate for all purposes to the creditors of the Company who are creditors of that segregated portfolio. No party shall have recourse to any other segregated portfolio of the Issuer. This Section 12.16 shall survive the termination of this Indenture.

**EXHIBIT A-1(a)**

FORM OF CERTIFICATED NOTE

**CERTIFICATED NOTE**

CLASS [      ] FLOATING RATE NOTE DUE 2017

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER RELEVANT JURISDICTION, AND MAY BE RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A)(1) TO A QUALIFIED PURCHASER (AS DEFINED IN THE INDENTURE) WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT ("RULE 144A"), PURCHASING FOR ITS OWN ACCOUNT OR ONE OR MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES SOLE INVESTMENT DISCRETION, EACH OF WHICH IS A QUALIFIED PURCHASER THAT THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER, AND NONE OF WHICH ARE (X) A DEALER OF THE TYPE DESCRIBED IN PARAGRAPH (a)(1)(ii) OF RULE 144A UNLESS IT OWNS AND INVESTS ON A DISCRETIONARY BASIS NOT LESS THAN $25,000,000 IN SECURITIES OF ISSUERS THAT ARE NOT AFFILIATED TO IT OR (Y) FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER OR THE CO-ISSUER (EXCEPT WHERE EACH BENEFICIAL OWNER IS A QUALIFIED PURCHASER), TO WHOM NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON THE EXEMPTION FROM SECURITIES ACT REGISTRATION PROVIDED BY RULE 144A, (2)   TO A PERSON WHO IS NEITHER A U.S. PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT), PURCHASING FOR ITS OWN ACCOUNT OR ONE OR MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES SOLE INVESTMENT DISCRETION, EACH OF WHICH IS NEITHER A U.S. PERSON NOR A U.S. RESIDENT, IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 (AS APPLICABLE) OF REGULATION S UNDER THE SECURITIES ACT ("REGULATION S"), OR (3) TO A PERSON THAT IS BOTH AN ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a) OF THE SECURITIES ACT) AND A QUALIFIED PURCHASER, IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT (*PROVIDED*, THAT IN THE CASE OF ANY TRANSFER PURSUANT TO THIS CLAUSE (3), THE TRANSFEROR OR THE TRANSFEREE HAS PROVIDED AN OPINION OF COUNSEL TO EACH OF THE TRUSTEE AND THE CO-ISSUERS THAT SUCH TRANSFER MAY BE MADE PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT), IN EACH CASE IN A PRINCIPAL AMOUNT OF NOT LESS THAN $500,000 AND INTEGRAL MULTIPLES OF $1,000 IN EXCESS THEREOF FOR THE PURCHASER AND FOR EACH ACCOUNT FOR WHICH IT IS ACTING, (B) IN COMPLIANCE WITH THE CERTIFICATION AND OTHER REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (C) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER RELEVANT JURISDICTION. NEITHER OF THE CO-ISSUERS HAS BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"). NO TRANSFER OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND NEITHER THE TRUSTEE NOR THE NOTE REGISTRAR WILL RECOGNIZE ANY SUCH TRANSFER) IF (1) SUCH TRANSFER WOULD BE MADE TO A TRANSFEREE WHO IS EITHER A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) THAT IS NOT BOTH A QUALIFIED PURCHASER AND EITHER (A) A QUALIFIED INSTITUTIONAL BUYER OR (B) AN ACCREDITED INVESTOR, (2) SUCH TRANSFER WOULD HAVE THE EFFECT OF REQUIRING EITHER OF THE CO-ISSUERS OR THE COLLATERAL TO REGISTER AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT, (3) SUCH TRANSFER WOULD BE MADE TO A

TRANSFEREE WHO IS A BENEFIT PLAN INVESTOR (OTHER THAN AN INSURANCE COMPANY GENERAL ACCOUNT ACQUIRING ITS INTEREST IN THE NOTE IN ACCORDANCE WITH THE REQUIREMENTS OF THE INDENTURE) OR (4) SUCH TRANSFER WOULD BE MADE TO A PERSON THAT IS OTHERWISE UNABLE TO MAKE THE CERTIFICATIONS AND REPRESENTATIONS DEEMED TO BE MADE BY SUCH PERSON IN THE INDENTURE REFERRED TO HEREIN. ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

THE CO-ISSUERS MAY REQUIRE ANY HOLDER OF THIS NOTE WHO IS A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) WHO IS DETERMINED NOT TO HAVE BEEN BOTH A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER AT THE TIME OF ACQUISITION OF THIS NOTE TO SELL THIS NOTE TO A PERSON WHO IS (I) BOTH A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A, OR (II) NEITHER A U.S. PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) IN A TRANSACTION MEETING THE REQUIREMENTS OF REGULATION S.

NO PORTION OF THIS NOTE MAY BE TRANSFERRED TO A PERSON TAKING DELIVERY IN THE FORM OF AN INTEREST IN A GLOBAL NOTE OR EXCHANGED FOR AN INTEREST IN A GLOBAL NOTE.

ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE PURCHASER OR TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE CO-ISSUER, THE TRUSTEE OR ANY INTERMEDIARY.

30775-00042 NY:2112494.3

PENN'S LANDING CDO SPC, FOR THE ACCOUNT OF
THE SERIES 2007-1 SEGREGATED PORTFOLIO
PENN'S LANDING CDO LLC

CLASS [        ] CERTIFICATED NOTE DUE 2017

ISIN No.: [____]
CUSIP No.: [_____]
Certificate No.: R-1                                             U.S.$ [____]

PENN'S LANDING CDO SPC, for the account of the Series 2007-1 Segregated Portfolio, a segregated portfolio company incorporated in the Cayman Islands with limited liability (the "Issuer"), and PENN'S LANDING CDO LLC, a limited liability company organized under the laws of the State of Delaware (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"), for value received, hereby promise to pay to [        ] or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of up to [____] United States Dollars (U.S.$ [____]) on June 20, 2017 (the "Scheduled Final Payment Date") except as set forth in this Note and in the Series Indenture (the "Series Indenture"), dated April 10, 2007, among the Co-Issuers and U.S. Bank National Association, as trustee (the "Trustee", which term includes any successor trustee as permitted under the Indenture), which supplements and incorporates the Standard Terms for Indentures (the "Standard Terms" and, together with the Series Indenture, as the same may be amended, supplemented or otherwise modified and in effect from time to time in accordance with the terms thereof, the "Indenture"), dated April 10, 2007. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Indenture.

Interest on the Weighted Average Outstanding Principal Amount of this Note (and any interest on any Defaulted Interest in respect thereof) shall accrue during each Accrual Period at a floating rate equal to LIBOR *plus* [__]% per annum. The amount of interest payable on this Note in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class [        ] Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of this Note for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360. The Co-Issuers promise to pay interest on the 20th day of March, June, September and December of each year (or if any such day is not a Business Day, the next following Business Day), commencing on the Payment Date in June 2007.

Except as described below and in the Indenture, no principal of this Note shall be payable until the first Distribution Date to occur.

On the Scheduled Final Payment Date, the Issuer shall pay to the holders of this Note an amount (the "Class [ ] Scheduled Final Payment Date Redemption Amount") equal to the Aggregate Outstanding Amount of the Class [        ] Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class [        ] Notes on the Scheduled Final Payment Date.

If the Contingency Amount with respect to this Note is greater than zero on the Scheduled Final Payment Date, the Issuer shall pay to the Holders of this Note on each relevant Deferred Redemption Date an amount equal to the relevant Deferred Redemption Amount (a "Deferred Amount"). The Issuer shall pay a Deferred Amount from the balance standing to the credit of the Principal Collections Payment Account.

Interest on this Note shall be payable in arrears on each Payment Date.

3

On the date on which a Cash Settlement Amount is determined under the Class [    ]    Credit    Swap,    the Aggregate Outstanding Amount of this Note shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of this Note is reduced to zero.

No amounts shall be payable in respect of this Note as a result of any such reduction.

If an Event of Default shall occur or be continuing or an Early Termination Payment Date occurs, this Note may become or be declared due and payable in the manner and with the effect provided in the Indenture.

Interest shall cease to accrue on this Note from the date of repayment, or in the case of a partial repayment or reduction, on such part, from the date of repayment or reduction, unless payment of principal is improperly withheld or unless Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest shall accrue on any Defaulted Interest on this Note at the Class [          ] Note    Interest Rate until paid as provided in the Indenture.

Payments of principal of and interest on this Note are subordinated to the payment on each Payment Date of certain other amounts in accordance with the Priority of Payments as set forth in the Indenture.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

All reductions in the Aggregate Outstanding Amount of this Note (or one or more predecessor Notes) effected by (A) payments of installments of principal made on any Payment Date, or (B) reductions in the Aggregate Outstanding Amount pursuant to this Note and Section 4 of the Series Indenture shall be binding upon all future Holders hereof and of any Note issued upon the registration of transfer of this Note or in exchange therefor or in lieu thereof, whether or not such payment or reduction is noted on such Note.

This Note is one of a duly authorized issue of the Class [    ] Floating Rate Notes Due 2017 (the "Class [          ] Notes") issued under the Indenture. Reference is hereby made to the Indenture and all supplemental indentures thereto for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered. The Indenture may be amended or supplemented in the manner, and with the effect, provided for by Article VIII of the Standard Terms.

The statements in the legend set forth above are an integral part of the terms of this Note and by acceptance thereof each holder of this Note agrees to be subject to and bound by the terms and provisions set forth in such legend, if any.

Principal of and interest on this Note which is due and payable on any Payment Date shall be paid to the Person in whose name such Note is registered at the close of business on the applicable Record Date for such Payment Date, and, notwithstanding anything to the contrary in this Note, is payable in accordance with the Priority of Payments as set forth in the Indenture.

Payments in respect of principal of and interest on this Note shall be payable by wire transfer in immediately available funds to a Dollar account maintained by the Holder in accordance with wire transfer instructions received from the Holder by any Paying Agent on or before the Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States of America. Such payment shall be made in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts. Payment of any Defaulted

Interest may be made in any other lawful manner in accordance with the Priority of Payments if notice of such payment is given by the Trustee to the Co-Issuers and the Noteholders, and such manner of payment shall be deemed practicable by the Trustee.

As a condition to the payment of any principal of or interest on this Note without the imposition of withholding tax, any Paying Agent shall require certification acceptable to it to enable the Co-Issuers, the Trustee and any Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder of this Note under any present or future law or regulation of the Cayman Islands, the United States or any other applicable jurisdiction or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

The obligations of the Co-Issuers under this Note and the Indenture are limited-recourse obligations of the Co-Issuers payable solely from the Collateral and following realization of the Collateral, all claims of Noteholders and any person acting on their behalf shall be extinguished.

No recourse shall be had against any Officer, member, director, employee, securityholder or incorporator of the Co-Issuers or their respective successors or assigns for the payment of any amounts payable under this Note or the Indenture.  It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Notes or secured by the Indenture until such Collateral has been realized, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name the Issuer or the Co-Issuer as a party defendant in any action or suit or in the exercise of any other remedy under the Notes or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

Title to this Note shall pass by registration in the Note Register kept by the Note Registrar, which initially shall be the Trustee, acting through its Corporate Trust Office.

Upon any exchange or transfer of a beneficial interest in this Note for an interest in a Regulation S Global Note and upon any exchange or transfer of an interest in a Regulation S Global Note for an interest in this Note in accordance with the Indenture, this Note shall be endorsed to reflect any change of the principal amount evidenced hereby.

No service charge shall be made for any registration of transfer or exchange of this Note, but the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith and expenses of delivery (if any) not made by regular mail.

THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE (INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW BUT EXCLUDING ALL OTHER CHOICE-OF-LAW AND CONFLICTS-OF-LAW RULES).

30775-00042 NY:2112494.3

IN WITNESS WHEREOF, the Co-Issuers have caused this Note to be duly executed.

Dated as of _____, 2007.

PENN'S LANDING CDO SPC, for the account of
the Series 2007-1 Segregated Portfolio

By: _____
     Name:
     Title:

PENN'S LANDING CDO LLC

By: _____
     Name:
     Title:

## CERTIFICATE OF AUTHENTICATION

This is one of the Class [ ] Floating Rate Notes due 2017 referred to in the within-mentioned Indenture.

U.S. BANK NATIONAL ASSOCIATION,
    as Trustee

By: _____
    Authorized Signatory

<u>ASSIGNMENT FORM</u>

For value received _____

hereby sell, assign and transfer unto

_____

_____

Please insert social security or
other identifying number of assignee

Please print or type name and address,
including zip code, of assignee:

_____

_____

_____

_____

the within Note and does hereby irrevocably constitute and appoint _____ Attorney to
transfer the Note on the books of the Co-Issuers with full power of substitution in the premises.

| Date: | Your Signature: |
|---|---|
| | (Sign exactly as your name appears on the Note) |

30775-00042 NY:2112494.3

**EXHIBIT A-1(b)**

**FORM OF RULE 144A GLOBAL NOTE**

**RULE 144A NOTE**

CLASS [      ] FLOATING RATE NOTE DUE 2017

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE
SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE
SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER
RELEVANT JURISDICTION, AND MAY BE RESOLD, PLEDGED OR OTHERWISE
TRANSFERRED ONLY (A)(1) TO A QUALIFIED PURCHASER (AS DEFINED IN THE
INDENTURE) WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED
INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE
SECURITIES ACT ("RULE 144A"), PURCHASING FOR ITS OWN ACCOUNT OR ONE OR
MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES SOLE INVESTMENT
DISCRETION, EACH OF WHICH IS A QUALIFIED PURCHASER THAT THE SELLER
REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER, AND NONE OF
WHICH ARE (X) A DEALER OF THE TYPE DESCRIBED IN PARAGRAPH (a)(1)(ii) OF
RULE 144A UNLESS IT OWNS AND INVESTS ON A DISCRETIONARY BASIS NOT LESS
THAN $25,000,000 IN SECURITIES OF ISSUERS THAT ARE NOT AFFILIATED TO IT OR
(Y) FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER OR THE CO-ISSUER
(EXCEPT WHERE EACH BENEFICIAL OWNER IS A QUALIFIED PURCHASER), TO
WHOM NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS
BEING MADE IN RELIANCE ON THE EXEMPTION FROM SECURITIES ACT
REGISTRATION PROVIDED BY RULE 144A, (2) TO A PERSON WHO IS NEITHER A U.S.
PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE
MEANING OF THE INVESTMENT COMPANY ACT), PURCHASING FOR ITS OWN
ACCOUNT OR ONE OR MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES
SOLE INVESTMENT DISCRETION, EACH OF WHICH IS NEITHER A U.S. PERSON NOR
A U.S. RESIDENT, IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE
903 OR RULE 904 (AS APPLICABLE) OF REGULATION S UNDER THE SECURITIES
ACT ("REGULATION S"), OR (3) TO A PERSON THAT IS BOTH AN ACCREDITED
INVESTOR (AS DEFINED IN RULE 501(a) OF THE SECURITIES ACT) AND A
QUALIFIED PURCHASER, IN A TRANSACTION EXEMPT FROM REGISTRATION
UNDER THE SECURITIES ACT (*PROVIDED*, THAT IN THE CASE OF ANY TRANSFER
PURSUANT TO THIS CLAUSE (3), THE TRANSFEROR OR THE TRANSFEREE HAS
PROVIDED AN OPINION OF COUNSEL TO EACH OF THE TRUSTEE AND THE CO-
ISSUERS THAT SUCH TRANSFER MAY BE MADE PURSUANT TO AN EXEMPTION
FROM REGISTRATION UNDER THE SECURITIES ACT), IN EACH CASE IN A
PRINCIPAL AMOUNT OF NOT LESS THAN $500,000 AND INTEGRAL MULTIPLES OF
$1,000 IN EXCESS THEREOF FOR THE PURCHASER AND FOR EACH ACCOUNT FOR
WHICH IT IS ACTING, (B) IN COMPLIANCE WITH THE CERTIFICATION AND OTHER
REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (C) IN
ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE
UNITED STATES AND ANY OTHER RELEVANT JURISDICTION. NEITHER OF THE
CO-ISSUERS HAS BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT OF
1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"). NO TRANSFER OF THIS
NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND NEITHER THE TRUSTEE
NOR THE NOTE REGISTRAR WILL RECOGNIZE ANY SUCH TRANSFER) IF (1) SUCH
TRANSFER WOULD BE MADE TO A TRANSFEREE WHO IS EITHER A U.S. PERSON
(AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF

30775-00042 NY:2112494.3

THE INVESTMENT COMPANY ACT) THAT IS NOT BOTH A QUALIFIED PURCHASER AND EITHER (A) A QUALIFIED INSTITUTIONAL BUYER OR (B) AN ACCREDITED INVESTOR, (2) SUCH TRANSFER WOULD HAVE THE EFFECT OF REQUIRING EITHER OF THE CO-ISSUERS OR THE COLLATERAL TO REGISTER AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT, (3) SUCH TRANSFER WOULD BE MADE TO A TRANSFEREE WHO IS A BENEFIT PLAN INVESTOR (OTHER THAN AN INSURANCE COMPANY GENERAL ACCOUNT ACQUIRING ITS INTEREST IN THE NOTE IN ACCORDANCE WITH THE REQUIREMENTS OF THE INDENTURE) OR (4) SUCH TRANSFER WOULD BE MADE TO A PERSON THAT IS OTHERWISE UNABLE TO MAKE THE CERTIFICATIONS AND REPRESENTATIONS DEEMED TO BE MADE BY SUCH PERSON IN THE INDENTURE REFERRED TO HEREIN. ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

THE CO-ISSUERS MAY REQUIRE ANY HOLDER OF THIS NOTE WHO IS A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) WHO IS DETERMINED NOT TO HAVE BEEN BOTH A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER AT THE TIME OF ACQUISITION OF THIS NOTE TO SELL THIS NOTE TO A PERSON WHO IS (I) BOTH A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A, OR (II) NEITHER A U.S. PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) IN A TRANSACTION MEETING THE REQUIREMENTS OF REGULATION S.

NOTWITHSTANDING ANYTHING IN THIS NOTE OR IN THE INDENTURE TO THE CONTRARY, A BENEFICIAL INTEREST IN THIS NOTE MAY BE TRANSFERRED ONLY IF (I) THE TRANSFEROR OF SUCH BENEFICIAL INTEREST NOTIFIES THE ADMINISTRATOR IN WRITING OF ITS INTENTION TO TRANSFER SUCH BENEFICIAL INTEREST, AND (II) SUCH NOTICE (A) IDENTIFIES THE TRANSFEREE, (B) CONTAINS A REPRESENTATION AND WARRANTY FROM THE TRANSFEREE THAT THE TRANSFEREE MAKES EACH OF THE REPRESENTATIONS, WARRANTIES AND AGREEMENTS SET FORTH IN SECTION 2.3(I) OF THE STANDARD TERMS AND (C) CONTAINS ANY OTHER INFORMATION REASONABLY REQUESTED BY THE ADMINISTRATOR. ANY PURPORTED SALES OR TRANSFERS OF ANY BENEFICIAL INTEREST IN A NOTE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THE REQUIREMENTS OF THIS PARAGRAPH SHALL BE NULL AND VOID *AB INITIO*.

NO INTEREST IN THIS NOTE MAY BE TRANSFERRED TO A PERSON TAKING DELIVERY IN THE FORM OF AN INTEREST IN A CERTIFICATED NOTE OR EXCHANGED FOR AN INTEREST IN A CERTIFIED NOTE.

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("DTC") TO THE NOTE REGISTRAR FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO., OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT MADE TO CEDE & CO., OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS

| | 10 | |
|---|---|---|

WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE PURCHASER OR TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE CO-ISSUER, THE TRUSTEE OR ANY INTERMEDIARY.

30775-00042 NY:2112494.3

PENN'S LANDING CDO SPC, FOR THE ACCOUNT OF
THE SERIES 2007-1 SEGREGATED PORTFOLIO
PENN'S LANDING CDO LLC

RULE 144A CLASS [      ] NOTE DUE 2017

ISIN No.: [      ]
CUSIP No.: [      ]

| Certificate No.: R-1 | | up to U.S.$ [      ] |
|---|---|---|

PENN'S LANDING CDO SPC, for the account of the Series 2007-1 Segregated Portfolio, a segregated portfolio company incorporated in the Cayman Islands with limited liability (the "Issuer"), and PENN'S LANDING CDO LLC, a limited liability company organized under the laws of the State of Delaware (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"), for value received, hereby promise to pay to CEDE & CO., or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of up to [      ] United States Dollars (U.S.$ [      ]) on June 20, 2017 (the "Scheduled Final Payment Date") except as set forth in this Note and in the Series Indenture (the "Series Indenture"), dated April 10, 2007, among the Co-Issuers and U.S. Bank National Association, as trustee (the "Trustee", which term includes any successor trustee as permitted under the Indenture), which supplements and incorporates the Standard Terms for Indentures (the "Standard Terms" and, together with the Series Indenture, as the same may be amended, supplemented or otherwise modified and in effect from time to time in accordance with the terms thereof, the "Indenture"), dated April 10, 2007. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Indenture.

Interest on the Weighted Average Outstanding Principal Amount of this Note (and any interest on any Defaulted Interest in respect thereof) shall accrue during each Accrual Period at a floating rate equal to LIBOR *plus* [      ]% per annum. The amount of interest payable on this Note in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class [      ] Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of this Note for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360. The Co-Issuers promise to pay interest on the 20th day of March, June, September and December of each year (or if any such day is not a Business Day, the next following Business Day), commencing on the Payment Date in June 2007.

Except as described below and in the Indenture, no principal of this Note shall be payable until the first Distribution Date to occur.

On the Scheduled Final Payment Date, the Issuer shall pay to the holders of this Note an amount (the "Class [      ] Scheduled Final Payment Date Redemption Amount") equal to Aggregate Outstanding Amount of the Class [      ] Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class [      ] Notes on the Scheduled Final Payment Date.

If the Contingency Amount with respect to this Note is greater than zero on the Scheduled Final Payment Date, the Issuer shall pay to the Holders of this Note on each relevant Deferred Redemption Date an amount equal to the relevant Deferred Redemption Amount,. The Issuer

30775-00042 NY:2112494.3

shall pay a Deferred Amount from the balance standing to the credit of the Principal Collections Payment Account.

Interest on this Note shall be payable in arrears on each Payment Date.

On the date on which a Cash Settlement Amount is determined under the Class [    ] Credit Swap, the Aggregate Outstanding Amount of this Note shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of this Note is reduced to zero.

No amounts shall be payable in respect of this Note as a result of any such reduction.

If an Event of Default shall occur or be continuing or an Early Termination Payment Date occurs, this Note may become or be declared due and payable in the manner and with the effect provided in the Indenture.

Interest shall cease to accrue on this Note from the date of repayment, or in the case of a partial repayment or reduction, on such part, from the date of repayment or reduction, unless payment of principal is improperly withheld or unless Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest shall accrue on any Defaulted Interest on this Note at the Class [    ] Note Interest Rate until paid as provided in the Indenture.

Payments of principal of and interest on this Note are subordinated to the payment on each Payment Date of certain other amounts in accordance with the Priority of Payments as set forth in the Indenture.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

All reductions in the Aggregate Outstanding Amount of this Note (or one or more predecessor Notes) effected by (A) payments of installments of principal made on any Payment Date, or (B) reductions in the Aggregate Outstanding Amount pursuant to this Note and Section 4 of the Series Indenture shall be binding upon all future Holders hereof and of any Note issued upon the registration of transfer of this Note or in exchange therefor or in lieu thereof, whether or not such payment or reduction is noted on such Note.

This Note is one of a duly authorized issue of the Class [    ] Floating Rate Notes Due 2017 (the "Class [    ] Notes") issued under the Indenture. Reference is hereby made to the Indenture and all supplemental indentures thereto for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered. The Indenture may be amended or supplemented in the manner, and with the effect, provided for by Article VIII of the Standard Terms.

This Note is a Rule 144A Global Note deposited with DTC acting as Depositary, and registered in the name of CEDE & CO., a nominee of DTC, and CEDE & CO., as holder of record of this Note, shall be entitled to receive payments of principal and interest by wire transfer of immediately available funds.

30775-00042 NY:2112494.3

The statements in the legend set forth above are an integral part of the terms of this Note and by acceptance thereof each holder of this Note agrees to be subject to and bound by the terms and provisions set forth in such legend, if any.

Principal of and interest on this Note which is due and payable on any Payment Date shall be paid to the Person in whose name such Note is registered at the close of business on the applicable Record Date for such Payment Date, and, notwithstanding anything to the contrary in this Note, is payable in accordance with the Priority of Payments as set forth in the Indenture.

Payments in respect of principal of and interest on this Note shall be payable by wire transfer in immediately available funds to a Dollar account maintained by the Holder in accordance with wire transfer instructions received from the Holder by any Paying Agent on or before the Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States of America. Such payment shall be made in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts. Payment of any Defaulted Interest may be made in any other lawful manner in accordance with the Priority of Payments if notice of such payment is given by the Trustee to the Co-Issuers and the Noteholders, and such manner of payment shall be deemed practicable by the Trustee.

As a condition to the payment of any principal of or interest on this Note without the imposition of withholding tax, any Paying Agent shall require certification acceptable to it to enable the Co-Issuers, the Trustee and any Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder of this Note under any present or future law or regulation of the Cayman Islands, the United States or any other applicable jurisdiction or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

The obligations of the Co-Issuers under this Note and the Indenture are limited-recourse obligations of the Co-Issuers payable solely from the Collateral and following realization of the Collateral, all claims of Noteholders and any person acting on their behalf shall be extinguished.

No recourse shall be had against any Officer, member, director, employee, securityholder or incorporator of the Co-Issuers or their respective successors or assigns for the payment of any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Notes or secured by the Indenture until such Collateral has been realized, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name the Issuer or the Co-Issuer as a party defendant in any action or suit or in the exercise of any other remedy under the Notes or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

Title to this Note shall pass by registration in the Note Register kept by the Note Registrar, which initially shall be the Trustee, acting through its Corporate Trust Office.

30775-00042 NY:2112494.3

Upon any exchange or transfer of a beneficial interest in this Note for an interest in a Regulation S Global Note and upon any exchange or transfer of an interest in a Regulation S Global Note for an interest in this Note in accordance with the Indenture, this Note shall be endorsed to reflect any change of the principal amount evidenced hereby.

No service charge shall be made for any registration of transfer or exchange of this Note, but the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith and expenses of delivery (if any) not made by regular mail.

THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE (INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW BUT EXCLUDING ALL OTHER CHOICE-OF-LAW AND CONFLICTS-OF-LAW RULES).

30775-00042 NY:2112494.3

IN WITNESS WHEREOF, the Co-Issuers have caused this Note to be duly executed.

Dated as of _____ , 2007.

|  |  |
|---|---|
|  | PENN'S LANDING CDO SPC, for the account of the Series 2007-1 Segregated Portfolio |
|  |  |
|  | By: |
|  |    Name: |
|  |    Title: |
|  | PENN'S LANDING CDO LLC |
|  |  |
|  | By: _____ |
|  |    Name: |
|  |    Title: |

## CERTIFICATE OF AUTHENTICATION

This is one of the Class [   ] Floating Rate Notes due 2017 referred to in the within-mentioned Indenture.

U.S. BANK NATIONAL ASSOCIATION,
   as Trustee


By:_____
   Authorized Signatory

ASSIGNMENT FORM

For value received _____

hereby sell, assign and transfer unto


_____

_____

Please insert social security or
other identifying number of assignee

Please print or type name and address,
including zip code, of assignee:

_____

_____

_____

_____

the within Note and does hereby irrevocably constitute and appoint _____ Attorney to
transfer the Note on the books of the Co-Issuers with full power of substitution in the premises.


| Date: _____ | Your Signature: _____ |
|---|---|
| | (Sign exactly as your name appears on the Note) |

30775-00042 NY:2112494.3

Schedule A

Aggregate principal amount of any Notes issued or canceled in exchange for a portion or portions hereof, any portion or portions hereof exchanged for another global note and any portion or portions of another global note exchanged for a portion or portions hereof (Initial Issuance on April 10, 2007 ($[        ])):

| Date | Principal Amount Issued, Canceled or Exchanged | Remaining Principal Amount of this Rule 144A Global Note | Notation Made by or on Behalf of |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

30775-00042 NY:2112494.3

**EXHIBIT A-1(c)**

**FORM OF REGULATION S GLOBAL NOTE**

**REGULATION S NOTE**

CLASS [    ] FLOATING RATE NOTE DUE 2017

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE
SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE
SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER
RELEVANT JURISDICTION, AND MAY BE RESOLD, PLEDGED OR OTHERWISE
TRANSFERRED ONLY (A)(1) TO A QUALIFIED PURCHASER (AS DEFINED IN THE
INDENTURE) WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED
INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE
SECURITIES ACT ("RULE 144A"), PURCHASING FOR ITS OWN ACCOUNT OR ONE OR
MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES SOLE INVESTMENT
DISCRETION, EACH OF WHICH IS A QUALIFIED PURCHASER THAT THE SELLER
REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER, AND NONE OF
WHICH ARE (X) A DEALER OF THE TYPE DESCRIBED IN PARAGRAPH (a)(1)(ii) OF
RULE 144A UNLESS IT OWNS AND INVESTS ON A DISCRETIONARY BASIS NOT LESS
THAN $25,000,000 IN SECURITIES OF ISSUERS THAT ARE NOT AFFILIATED TO IT OR
(Y) FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER OR THE CO-ISSUER
(EXCEPT WHERE EACH BENEFICIAL OWNER IS A QUALIFIED PURCHASER), TO
WHOM NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS
BEING MADE IN RELIANCE ON THE EXEMPTION FROM SECURITIES ACT
REGISTRATION PROVIDED BY RULE 144A, (2) TO A PERSON WHO IS NEITHER A U.S.
PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE
MEANING OF THE INVESTMENT COMPANY ACT), PURCHASING FOR ITS OWN
ACCOUNT OR ONE OR MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES
SOLE INVESTMENT DISCRETION, EACH OF WHICH IS NEITHER A U.S. PERSON NOR
A U.S. RESIDENT, IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE
903 OR RULE 904 (AS APPLICABLE) OF REGULATION S UNDER THE SECURITIES
ACT ("REGULATION S"), OR (3) TO A PERSON THAT IS BOTH AN ACCREDITED
INVESTOR (AS DEFINED IN RULE 501(a) OF THE SECURITIES ACT) AND A
QUALIFIED PURCHASER, IN A TRANSACTION EXEMPT FROM REGISTRATION
UNDER THE SECURITIES ACT (*PROVIDED*, THAT IN THE CASE OF ANY TRANSFER
PURSUANT TO THIS CLAUSE (3), THE TRANSFEROR OR THE TRANSFEREE HAS
PROVIDED AN OPINION OF COUNSEL TO EACH OF THE TRUSTEE AND THE CO-
ISSUERS THAT SUCH TRANSFER MAY BE MADE PURSUANT TO AN EXEMPTION
FROM REGISTRATION UNDER THE SECURITIES ACT), IN EACH CASE IN A
PRINCIPAL AMOUNT OF NOT LESS THAN $500,000 AND INTEGRAL MULTIPLES OF
$1,000 IN EXCESS THEREOF FOR THE PURCHASER AND FOR EACH ACCOUNT FOR
WHICH IT IS ACTING, (B) IN COMPLIANCE WITH THE CERTIFICATION AND OTHER
REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (C) IN
ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE
UNITED STATES AND ANY OTHER RELEVANT JURISDICTION.  NEITHER OF THE
CO-ISSUERS HAS BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT OF
1940, AS AMENDED (THE "INVESTMENT COMPANY ACT").  NO TRANSFER OF THIS
NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND NEITHER THE TRUSTEE
NOR THE NOTE REGISTRAR WILL RECOGNIZE ANY SUCH TRANSFER) IF (1) SUCH
TRANSFER WOULD BE MADE TO A TRANSFEREE WHO IS EITHER A U.S. PERSON
(AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF

| | 20 | |
|---|---|---|

THE INVESTMENT COMPANY ACT) THAT IS NOT BOTH A QUALIFIED PURCHASER AND EITHER (A) A QUALIFIED INSTITUTIONAL BUYER OR (B) AN ACCREDITED INVESTOR, (2) SUCH TRANSFER WOULD HAVE THE EFFECT OF REQUIRING EITHER OF THE CO-ISSUERS OR THE COLLATERAL TO REGISTER AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT, (3) SUCH TRANSFER WOULD BE MADE TO A TRANSFEREE WHO IS A BENEFIT PLAN INVESTOR (OTHER THAN AN INSURANCE COMPANY GENERAL ACCOUNT ACQUIRING ITS INTEREST IN THE NOTE IN ACCORDANCE WITH THE REQUIREMENTS OF THE INDENTURE) OR (4) SUCH TRANSFER WOULD BE MADE TO A PERSON THAT IS OTHERWISE UNABLE TO MAKE THE CERTIFICATIONS AND REPRESENTATIONS DEEMED TO BE MADE BY SUCH PERSON IN THE INDENTURE REFERRED TO HEREIN.  ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

THE CO-ISSUERS MAY REQUIRE ANY HOLDER OF THIS NOTE WHO IS A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) WHO IS DETERMINED NOT TO HAVE BEEN BOTH A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER AT THE TIME OF ACQUISITION OF THIS NOTE TO SELL THIS NOTE TO A PERSON WHO IS (I) BOTH A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A, OR (II) NEITHER A U.S. PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) IN A TRANSACTION MEETING THE REQUIREMENTS OF REGULATION S.

AN INTEREST IN THIS NOTE MAY NOT BE HELD BY A PERSON THAT IS A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) AT ANY TIME.  IN ADDITION, AN INTEREST IN THIS NOTE MAY ONLY BE HELD THROUGH EUROCLEAR OR CLEARSTREAM AT ANY TIME.

NOTWITHSTANDING ANYTHING IN THIS NOTE OR IN THE INDENTURE TO THE CONTRARY, A BENEFICIAL INTEREST IN THIS NOTE MAY BE TRANSFERRED ONLY IF (I) THE TRANSFEROR OF SUCH BENEFICIAL INTEREST NOTIFIES THE ADMINISTRATOR IN WRITING OF ITS INTENTION TO TRANSFER SUCH BENEFICIAL INTEREST, AND (II) SUCH NOTICE (A) IDENTIFIES THE TRANSFEREE, (B) CONTAINS A REPRESENTATION AND WARRANTY FROM THE TRANSFEREE THAT THE TRANSFEREE MAKES EACH OF THE REPRESENTATIONS, WARRANTIES AND AGREEMENTS SET FORTH IN SECTION 2.3(J) OF THE STANDARD TERMS AND (C) CONTAINS ANY OTHER INFORMATION REASONABLY REQUESTED BY THE ADMINISTRATOR.  ANY PURPORTED SALES OR TRANSFERS OF ANY BENEFICIAL INTEREST IN A NOTE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THE REQUIREMENTS OF THIS PARAGRAPH SHALL BE NULL AND VOID *AB INITIO*.

NO INTEREST IN THIS NOTE MAY BE TRANSFERRED TO A PERSON TAKING DELIVERY IN THE FORM OF AN INTEREST IN A CERTIFICATED NOTE OR EXCHANGED FOR AN INTEREST IN A CERTIFIED NOTE.

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("DTC") TO THE NOTE REGISTRAR FOR

| | 21 | |

REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO., OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT MADE TO CEDE & CO., OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE PURCHASER OR TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE CO-ISSUER, THE TRUSTEE OR ANY INTERMEDIARY.

| | 22 | |
|---|---|---|

PENN'S LANDING CDO SPC, FOR THE ACCOUNT OF
THE SERIES 2007-1 SEGREGATED PORTFOLIO
PENN'S LANDING CDO LLC

REGULATION S CLASS [    ] NOTE DUE 2017

ISIN No.: [   ]
CUSIP No.: [   ]

| Certificate No.:  S-1 | up to U.S.$ [    ] |
|---|---|

PENN'S LANDING CDO SPC, for the account of the Series 2007-1 Segregated Portfolio, a
segregated portfolio company incorporated in the Cayman Islands with limited liability (the
"Issuer"), and PENN'S LANDING CDO LLC, a limited liability company organized under the
laws of the State of Delaware (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"),
for value received, hereby promise to pay to CEDE & CO., or registered assigns, upon
presentation and surrender of this Note (except as otherwise permitted by the Indenture referred
to below), the principal sum of up to [    ] United States Dollars (U.S.$ [  ]) on June 20, 2017 (the
"Scheduled Final Payment Date") except as set forth in this Note and in the Series Indenture (the
"Series Indenture"), dated April 10, 2007, among the Co-Issuers and U.S.  Bank National
Association, as trustee (the "Trustee", which term includes any successor trustee as permitted
under the Indenture), which supplements and incorporates the Standard Terms for Indentures (the
"Standard Terms" and, together with the Series Indenture, as the same may be amended,
supplemented or otherwise modified and in effect from time to time in accordance with the terms
thereof, the "Indenture"), dated April 10, 2007.  Capitalized terms used herein and not otherwise
defined shall have the meanings set forth in the Indenture.

Interest on the Weighted Average Outstanding Principal Amount of this Note (and any interest on
any Defaulted Interest in respect thereof) shall accrue during each Accrual Period at a floating
rate equal to LIBOR *plus* [    ]% per annum.  The amount of interest payable on this Note in
respect of any Payment Date shall be calculated by the Trustee on the relevant Interest
Determination Date by calculating the product of (a) the Class [    ] Note Interest Rate; (b) the
Weighted Average Outstanding Principal Amount of this Note for the relevant Accrual Period;
and (c) the actual number of days elapsed in such Accrual Period *divided* by 360.  The Co-Issuers
promise to pay interest on the 20th day of March, June, September and December of each year (or
if any such day is not a Business Day, the next following Business Day), commencing on the
Payment Date in June 2007.

Except as described below and in the Indenture, no principal of this Note shall be payable until
the first Distribution Date to occur.

On the Scheduled Final Payment Date, the Issuer shall pay to the holders of this Note an amount
(the "Class [    ] Scheduled Final Payment Date Redemption Amount") equal to Aggregate
Outstanding Amount of the Class [    ] Notes on the Scheduled Final Payment Date *minus* the
Contingency Amount with respect to the Class [    ] Notes on the Scheduled Final Payment Date.

If the Contingency Amount with respect to this Note is greater than zero on the Scheduled Final
Payment Date, the Issuer shall pay to the Holders of this Note on each relevant Deferred
Redemption Date an amount equal to the relevant Deferred Redemption Amount.  The Issuer

| 23 |
|---|

shall pay a Deferred Amount from the balance standing to the credit of the Principal Collections Payment Account.

Interest on this Note shall be payable in arrears on each Payment Date.

On the date on which a Cash Settlement Amount is determined under the Class [    ] Credit Swap, the Aggregate Outstanding Amount of this Note shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of this Note is reduced to zero.

No amounts shall be payable in respect of this Note as a result of any such reduction.

If an Event of Default shall occur or be continuing or an Early Termination Payment Date occurs, this Note may become or be declared due and payable in the manner and with the effect provided in the Indenture.

Interest shall cease to accrue on this Note from the date of repayment, or in the case of a partial repayment or reduction, on such part, from the date of repayment or reduction, unless payment of principal is improperly withheld or unless Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest shall accrue on any Defaulted Interest on this Note at the Class [    ] Note Interest Rate until paid as provided in the Indenture.

Payments of principal of and interest on this Note are subordinated to the payment on each Payment Date of certain other amounts in accordance with the Priority of Payments as set forth in the Indenture.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

All reductions in the Aggregate Outstanding Amount of this Note (or one or more predecessor Notes) effected by (A) payments of installments of principal made on any Payment Date, or (B) reductions in the Aggregate Outstanding Amount pursuant to this Note and Section 4 of the Series Indenture shall be binding upon all future Holders hereof and of any Note issued upon the registration of transfer of this Note or in exchange therefor or in lieu thereof, whether or not such payment or reduction is noted on such Note.

This Note is one of a duly authorized issue of the Class [    ] Floating Rate Notes Due 2017 (the "Class [    ] Notes") issued under the Indenture. Reference is hereby made to the Indenture and all supplemental indentures thereto for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered. The Indenture may be amended or supplemented in the manner, and with the effect, provided for by Article VIII of the Standard Terms.

This Note is a Regulation S Global Note deposited with DTC acting as Depositary, and registered in the name of CEDE & CO., a nominee of DTC, and CEDE & CO., as holder of record of this Note, shall be entitled to receive payments of principal and interest by wire transfer of immediately available funds.

| | 24 | |
|---|---|---|

The statements in the legend set forth above are an integral part of the terms of this Note and by acceptance thereof each holder of this Note agrees to be subject to and bound by the terms and provisions set forth in such legend, if any.

Principal of and interest on this Note which is due and payable on any Payment Date shall be paid to the Person in whose name such Note is registered at the close of business on the applicable Record Date for such Payment Date, and, notwithstanding anything to the contrary in this Note, is payable in accordance with the Priority of Payments as set forth in the Indenture.

Payments in respect of principal of and interest on this Note shall be payable by wire transfer in immediately available funds to a Dollar account maintained by the Holder in accordance with wire transfer instructions received from the Holder by any Paying Agent on or before the Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States of America. Such payment shall be made in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts. Payment of any Defaulted Interest may be made in any other lawful manner in accordance with the Priority of Payments if notice of such payment is given by the Trustee to the Co-Issuers and the Noteholders, and such manner of payment shall be deemed practicable by the Trustee.

As a condition to the payment of any principal of or interest on this Note without the imposition of withholding tax, any Paying Agent shall require certification acceptable to it to enable the Co-Issuers, the Trustee and any Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder of this Note under any present or future law or regulation of the Cayman Islands, the United States or any other applicable jurisdiction or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

The obligations of the Co-Issuers under this Note and the Indenture are limited-recourse obligations of the Co-Issuers payable solely from the Collateral and following realization of the Collateral, all claims of Noteholders and any person acting on their behalf shall be extinguished.

No recourse shall be had against any Officer, member, director, employee, securityholder or incorporator of the Co-Issuers or their respective successors or assigns for the payment of any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Notes or secured by the Indenture until such Collateral has been realized, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name the Issuer or the Co-Issuer as a party defendant in any action or suit or in the exercise of any other remedy under the Notes or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

Title to this Note shall pass by registration in the Note Register kept by the Note Registrar, which initially shall be the Trustee, acting through its Corporate Trust Office.

| | 25 | |
|---|---|---|

Upon any exchange or transfer of a beneficial interest in this Note for an interest in a Rule 144A Global Note and upon any exchange or transfer of an interest in a Rule 144A Global Note for an interest in this Note in accordance with the Indenture, this Note shall be endorsed to reflect any change of the principal amount evidenced hereby.

No service charge shall be made for any registration of transfer or exchange of this Note, but the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith and expenses of delivery (if any) not made by regular mail.

THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE (INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW BUT EXCLUDING ALL OTHER CHOICE-OF-LAW AND CONFLICTS-OF-LAW RULES).

30775-00042 NY:2112494.3

IN WITNESS WHEREOF, the Co-Issuers have caused this Note to be duly executed.

Dated as of _____ , 2007.

| | PENN'S LANDING CDO SPC, for the account of the Series 2007-1 Segregated Portfolio |
|---|---|
| | |
| | By: _____ |
| | Name: |
| | Title: |
| | PENN'S LANDING CDO LLC |
| | |
| | By: _____ |
| | Name: |
| | Title: |

## CERTIFICATE OF AUTHENTICATION

This is one of the Class [      ] Floating Rate Notes due 2017 referred to in the within-mentioned Indenture.

U.S. BANK NATIONAL ASSOCIATION,
    as Trustee

By:_____
    Authorized Signatory

## ASSIGNMENT FORM

For value received _____

hereby sell, assign and transfer unto

_____

_____

Please insert social security or
other identifying number of assignee

Please print or type name and address,
including zip code, of assignee:

_____

_____

_____

_____

the within Note and does hereby irrevocably constitute and appoint _____ Attorney to transfer
the Note on the books of the Co-Issuers with full power of substitution in the premises.

| Date: | Your Signature: |
|---|---|
| | (Sign exactly as your name appears on the Note) |

Schedule A

Aggregate principal amount of any Notes issued or canceled in exchange for a portion or portions hereof, any portion or portions hereof exchanged for another global note and any portion or portions of another global note exchanged for a portion or portions hereof (Initial Issuance on April 10, 2007 ($0.00)):

| Date | Principal Amount Issued, Canceled or Exchanged | Remaining Principal Amount of this Regulation S Global Note | Notation Made by or on Behalf of |
|------|------|------|------|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**EXHIBIT B-1**

**FORM OF TRANSFER CERTIFICATE FOR TRANSFERS FROM CERTIFICATED
NOTE TO CERTIFICATED NOTE**

FORM OF TRANSFER CERTIFICATE
FOR TRANSFER FROM A CERTIFICATED NOTE
TO A CERTIFICATED NOTE

(Transfers pursuant to Section 2.3 of the Standard Terms for Indentures)

U.S. Bank National Association
One Federal Street
3rd Floor
Boston, Massachusetts 02110

Re:    PENN'S    LANDING    CDO
Limited SPC, for the account of
the Series 2007-1 Segregate
Portfolio
[Class A Floating Rate Notes due 2017]
[Class B Floating Rate Notes due 2017]
[Class C Floating Rate Notes due 2017]
[Class D Floating Rate Notes due 2017]
[Class E Floating Rate Notes due 2017]
[Class F Floating Rate Notes due 2017]

(the "Notes")

Reference is hereby made to the Series Indenture (the "Series Indenture"), dated as of April 10, 2007, among PENN'S LANDING CDO Limited SPC, for the account of the Series 2007-1 Segregated Portfolio (the "Issuer"), PENN'S LANDING CDO LLC (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers") and U.S. Bank National Association, as trustee (the "Trustee"), which supplements and incorporates the Standard Terms for Indentures (the "Standard Terms" and, together with the Series Indenture, the "Indenture"), dated as of April 10, 2007, among the Co-Issuers and the Trustee. Capitalized terms used but not defined herein shall have the meanings assigned to them pursuant to the Indenture.

This letter relates to the U.S. $[_____] aggregate principal amount of the [Class A Floating Rate Notes][Class B Floating Rate Notes][Class C Floating Rate Notes][Class D Floating Rate Notes][Class E Floating Rate Notes][Class F Floating Rate Notes] due 2017 (the "Notes") in the name of _____ (the "Transferor") to effect the transfer of the Notes in exchange for an equivalent number of Notes in the name of _____ (the "Transferee").

In connection with such request, and in respect of such Notes, the Transferee does hereby certify that such Notes are being transferred (i) in accordance with the applicable transfer restrictions set forth in the Indenture and (ii) pursuant to an exemption from registration under the United States Securities Act of 1933, as amended (the "Securities Act"), and in accordance with any applicable securities laws of any state of the United States or any other jurisdiction. In addition, the Transferor hereby represents, warrants and covenants for the benefit of the Issuer and the Trustee that:

(i)    Investor Status. The Transferee represents and warrants that it is purchasing the Note for its own account, in the minimum denominations of $250,000 and integral

1

multiples of $1,000 in excess thereof, and is (i) both a Qualified Institutional Buyer and a Qualified Purchaser, (ii) both an Accredited Investor and a Qualified Purchaser, or (iii) neither a U.S. Person nor a U.S. Resident.

(ii)     Securities Law Limitations on Resale. The Transferee agrees on its own behalf and on behalf of any account for which it is purchasing the Certificated Note to offer, sell or otherwise transfer such Certificated Note only (i) in the required minimum denominations, and (ii)(A) in the United States, only in the form of a Certificated Note (1) to a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is a Qualified Purchaser that the transferor reasonably believes is a Qualified Institutional Buyer, to whom notice is given that the resale, pledge or other transfer is being made in reliance on the exemption from Securities Act registration provided by Rule 144A thereof, and none of which are (x) a dealer of the type described in paragraph (a)(1)(ii) of Rule 144A unless it owns and invests on a discretionary basis not less than $25,000,000 in securities of issuers that are not affiliated to it, or (y) formed for the purpose of investing in the Issuer or the Co-Issuer (except where each beneficial owner of the Transferee is a Qualified Purchaser), or (2) to a person that is both an Accredited Investor and a Qualified Purchaser, in a transaction exempt from registration under the Securities Act (*provided*, that in the case of any transfer pursuant to this clause (2), the Transferee or the Transferee has provided an opinion of counsel to each of the Trustee and the Co-Issuers that such transfer may be made pursuant to an exemption from registration under the Securities Act), or (B) outside the United States in the form of a Certificated Note to a person that is neither a U.S. Person nor a U.S. Resident in an offshore transaction in accordance with Regulation S under the Securities Act. The Transferee agrees to provide notice of such transfer restrictions to any subsequent transferee.

(iii)    Minimum Denominations. The Transferee agrees that no Note (or any interest therein) may be sold, pledged or otherwise transferred in a denomination of less than $250,000 and integral multiples of $1,000 in excess thereof.

(iv)    No Governmental Approval. The Transferee understands that the Notes have not been approved or disapproved by the SEC or any other governmental authority or agency of any jurisdiction, nor has the SEC or any other governmental authority or agency passed upon the accuracy or adequacy of the Offering Memorandum. Any representation to the contrary is a criminal offense.

(v)     Transferee  Sophistication;  Non-Reliance;  Suitability;  Access  to Information. The Transferee (i) has such knowledge and experience in financial and business matters that the Transferee is capable of evaluating the merits and risks (including for tax, legal, regulatory, accounting and other financial purposes) of its prospective investment in the Notes, (ii) is financially able to bear such risk, (iii) in making such investment is not relying on the advice or recommendations of the Managers, the Co-Issuers or any of their respective affiliates (or any representative of any of the foregoing) and (iv) has determined that an investment in the Notes is suitable and appropriate for it. The Transferee has received, and has had an

2

adequate opportunity to review the contents of, the Offering Memorandum. The Transferee has had access to such financial and other information concerning the Co-Issuers and the Notes as it has deemed necessary to make its own independent decision to purchase such Notes, including the opportunity, at a reasonable time prior to its purchase of such Notes, to ask questions and receive answers concerning the Co-Issuers and the terms and conditions of the offering of the Notes.

(vi)     Limited Liquidity. The Transferee understands that there is no market for the Notes and that no assurance can be given as to the liquidity of any trading market for the Notes and that it is unlikely that a trading market for the Notes will develop. It further understands that, although the Managers may from time to time make a market in the Notes, the Managers are under no obligation to do so and, following the commencement of any market-making, may discontinue the same at any time. Accordingly, the Transferee must be prepared to hold the Notes until the legal final maturity date of the Notes.

(vii)    Investment Company Act. The Transferee agrees that no sale, pledge or other transfer of a Note (or any interest therein) may be made if such transfer would have the effect of requiring either of the Co-Issuers or the Collateral to register as an investment company under the Investment Company Act.

(viii)   ERISA. The transferee (i) is not using funds to effect the purchase of the Notes that constitute assets of a "Benefit Plan Investor" (as defined in the Plan Asset Regulation of the United States Department of Labor, 29 C.F.R. Section 2510.3-101(f) (the "Plan Asset Regulation")), including but not limited to any insurance company acting on behalf of its general account, any insurance company separate account and any collective investment fund and (ii) is not a person exercising discretionary authority or control over the Issuer's assets or who provides investment advice to the Issuer for a direct or indirect fee or any affiliate of any such person (any such person, a "Controlling Person"). The transferee understands and agrees that the information supplied above will be utilized to determine whether Benefit Plan Investors own less than 25% of the Notes as determined under the Plan Asset Regulation after disregarding Notes held by Controlling Persons both upon the original issuance of the Notes and upon any subsequent transfer of Notes for any reason. The transferee agrees to provide prompt written notice to each of the Issuer and the Trustee of any change in the information supplied above and further information regarding its status upon written request by the Issuer or the Trustee to such transferee. The transferee further acknowledges and agrees that the Indenture will entitle the Issuer to require such holder to dispose of its Notes as soon as practicable following such notification by such holder.

The representations to be made pursuant to this subsection (8) shall be deemed made on each day from the date the Transferee makes such representations through and including the date on which such Transferee disposes of its interests in the Notes.

(ix)     Certain Transfers Void. The Transferee agrees that (i) any sale, pledge or other transfer of a Note (or any interest therein) made in violation of the transfer restrictions contained in the Indenture, or made based upon any false or inaccurate representation made by the Transferee or a subsequent Transferee to the Co-Issuers,

3

will be void and of no force or effect and (ii) none of the Co-Issuers, the Trustee or the Note Registrar has any obligation to recognize any sale, pledge or other transfer of a Note (or any interest therein) made in violation of any such transfer restriction or made based upon any such false or inaccurate representation.

(x)     Cayman Islands. The Transferee is not a member of the public in the Cayman Islands.

(xi)    Legend. The Transferee understands and agrees that a legend in substantially the following form will be placed on each certificate representing a Note of each Class unless the Issuer determines otherwise in compliance with applicable law:

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER RELEVANT JURISDICTION, AND MAY BE RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A)(1) TO A QUALIFIED PURCHASER (AS DEFINED IN THE INDENTURE) WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT ("RULE 144A"), PURCHASING FOR ITS OWN ACCOUNT OR ONE OR MORE ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES SOLE INVESTMENT DISCRETION, EACH OF WHICH IS A QUALIFIED PURCHASER THAT THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER, AND NONE OF WHICH ARE (X) A DEALER OF THE TYPE DESCRIBED IN PARAGRAPH (a)(1)(ii) OF RULE 144A UNLESS IT OWNS AND INVESTS ON A DISCRETIONARY BASIS NOT LESS THAN $25,000,000 IN SECURITIES OF ISSUERS THAT ARE NOT AFFILIATED TO IT, OR (Y) FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER OR THE CO-ISSUER (EXCEPT WHERE EACH BENEFICIAL OWNER IS A QUALIFIED PURCHASER), TO WHOM NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON THE EXEMPTION FROM SECURITIES ACT REGISTRATION PROVIDED BY RULE 144A, (2) TO A PERSON THAT IS BOTH AN ACCREDITED INVESTOR AND A QUALIFIED PURCHASER, IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT (*PROVIDED*, THAT IN THE CASE OF ANY TRANSFER PURSUANT TO THIS CLAUSE (2), THE TRANSFEROR OR THE TRANSFEREE HAS PROVIDED AN OPINION OF COUNSEL TO EACH OF THE TRUSTEE AND THE CO-ISSUERS THAT SUCH TRANSFER MAY BE MADE PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT), OR (3) TO A PERSON WHO IS NEITHER A U.S. PERSON (AS DEFINED IN REGULATION S) NOR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT), PURCHASING FOR ITS OWN ACCOUNT OR ONE OR MORE

4

ACCOUNTS WITH RESPECT TO WHICH IT EXERCISES SOLE INVESTMENT DISCRETION, EACH OF WHICH IS NEITHER A U.S. PERSON NOR A U.S. RESIDENT, IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 (AS APPLICABLE) OF REGULATION S UNDER THE SECURITIES ACT ("REGULATION S"), IN EACH CASE IN A PRINCIPAL AMOUNT OF NOT LESS THAN $250,000 AND INTEGRAL MULTIPLES OF $1,000 IN EXCESS THEREOF FOR THE PURCHASER AND FOR EACH ACCOUNT FOR WHICH IT IS ACTING, (B) IN COMPLIANCE WITH THE CERTIFICATION AND OTHER REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (C) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER RELEVANT JURISDICTION. NEITHER OF THE CO-ISSUERS HAS BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"). NO TRANSFER OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND NEITHER THE TRUSTEE NOR THE NOTE REGISTRAR WILL RECOGNIZE ANY SUCH TRANSFER) IF (1) SUCH TRANSFER WOULD BE MADE TO A TRANSFEREE WHO IS EITHER A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) THAT IS NOT (A) BOTH AN ACCREDITED INVESTOR AND A QUALIFIED PURCHASER, OR (B) BOTH A QUALIFIED INSTITUTIONAL BUYER AND A QUALIFIED PURCHASER, (2) SUCH TRANSFER WOULD HAVE THE EFFECT OF REQUIRING EITHER OF THE CO-ISSUERS OR THE COLLATERAL TO REGISTER AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT, (3) AFTER GIVING EFFECT TO SUCH TRANSFER, 25% OR MORE OF THE RELEVANT CLASS OF NOTES, AS DETERMINED UNDER THE PLAN ASSET REGULATION OF THE UNITED STATES DEPARTMENT OF LABOR, 29 C.F.R. SECTION 2510.3-101(f) AFTER DISREGARDING NOTES OF SUCH CLASS HELD BY CONTROLLING PERSONS, WOULD BE HELD BY BENEFIT PLAN INVESTORS (EITHER DIRECTLY OR THROUGH AN INSURANCE COMPANY GENERAL ACCOUNT) OR (4) SUCH TRANSFER WOULD BE MADE TO A PERSON THAT IS OTHERWISE UNABLE TO MAKE THE CERTIFICATIONS AND REPRESENTATIONS REQUIRED BY THE APPLICABLE TRANSFER CERTIFICATE ATTACHED AS AN EXHIBIT TO THE INDENTURE. ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

THE CO-ISSUERS MAY REQUIRE ANY HOLDER OF THIS NOTE WHO IS A U.S. PERSON (AS DEFINED IN REGULATION S) OR A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) WHO IS DETERMINED NOT TO HAVE BEEN

30775-00042 NY:2112494.3