Maturity for the initial interest period shall be the linear interpolation of 2-month LIBOR and 3-month LIBOR (as defined in the Permitted Long-Term Investment).

"**Distribution Date**": The Scheduled Final Payment Date or the Early Termination Payment Date, as and to the extent applicable.

"**Early Termination Date**": The meaning specified in the Credit Swaps.

"**Early Termination Payment Date**": The fifth Business Day following the date of delivery (or deemed delivery) of an Enforcement Notice declaring the Notes to be immediately due and payable after the occurrence of an Event of Default.

"**Failure to Pay**": The meaning specified in the Credit Swaps.

"**Final Price**": The meaning specified in the relevant Credit Swap.

"**Floating Rate Payer Payment Amount**": The meaning set forth in the Class A Credit Swap, the Class B-1 Credit Swap, the Class B-2 Credit Swap, the Class C Credit Swap, the Class D Credit Swap, the Class E Credit Swap and the Class F Credit Swap, respectively.

"**Guarantee**": The guarantee dated April 10, 2007 of Lehman Brothers Holdings Inc. in favor of the Issuer

"**Initial Payment Date**": The Payment Date occurring on June 20, 2007.

"**Interest Collections**": Means, with respect to any Payment Date or Distribution Date (as and to the extent applicable and without duplication), the amount equal to the sum of: (i) interest payments with respect to the Permitted Long-Term Investment received by the Issuer during the applicable Accrual Period (including any liquidation proceeds of the Posted Collateral and/or payments received by the Issuer pursuant to the Policy (if any), in each case allocable to payments owed by the Permitted Long-Term Investment Issuer in respect of interest under the Permitted Long-Term Investment); (ii) the Class A Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class A Credit Swap; (iii) the Class B-1 Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class B-1 Credit Swap; (iv) the Class B-2 Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class B-2 Credit Swap; (v) the Class C Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class C Credit Swap; (vi) the Class D Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class D Credit Swap; (vii) the Class E Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class E Credit Swap; (viii) the Class F Fixed Amount received by the Issuer during the applicable Accrual Period pursuant to the terms of the Class F Credit Swap; (ix) the Base Management Fee received by the Issuer during the applicable Accrual Period pursuant to the terms of the Portfolio Management Agreement; (x) the net investment earnings with respect to Permitted Short-Term Investments received by the Issuer during the applicable Accrual Period; and (xi) (A) in the case of a Failure to Fund under the Class A Credit Swap, (1) the liquidation proceeds of the Credit Swap Posted Amount retained by the Issuer in accordance with the terms of the Class A Credit Swap, and/or (2) payments received by the Issuer from the Credit

Swap Guarantor, (B) in the case of a Failure to Fund under the Class B-1 Credit Swap, (1) the liquidation proceeds of the Credit Swap Posted Amount retained by the Issuer in accordance with the terms of the Class B-1 Credit Swap, and/or (2) payments received by the Issuer from the Credit Swap Guarantor, (C) in the case of a Failure to Fund under the Class B-2 Credit Swap, (1) the liquidation proceeds of the Credit Swap Posted Amount retained by the Issuer in accordance with the terms of the Class B-2 Credit Swap, and/or (2) payments received by the Issuer from the Credit Swap Guarantor, (D) in the case of a Failure to Fund under the Class C Credit Swap, payments received by the Issuer from the Credit Swap Guarantor, (E) in the case of a Failure to Fund under the Class D Credit Swap, payments received by the Issuer from the Credit Swap Guarantor, (F) in the case of a Failure to Fund under the Class E Credit Swap, payments received by the Issuer from the Credit Swap Guarantor, and (G) in the case of a Failure to Fund under the Class F Credit Swap, payments received by the Issuer from the Credit Swap Guarantor.

"**Interest Collections Payment Account**": The payment account for Interest Collections established by the Trustee pursuant to Section 10(a).

"**Interest Determination Date**": Means, (i) the Business Day immediately preceding each Payment Date (other than the Scheduled Final Payment Date), and (ii) the Scheduled Final Payment Date.

"**Interest Distribution Amount**": When used with respect to (i) the Class A Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class A Interest Distribution Amount with respect to such payment date, (ii) the Class B-1 Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class B-1 Interest Distribution Amount with respect to such payment date, (iii) the Class B-2 Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class B-2 Interest Distribution Amount with respect to such payment date, (iv) the Class C Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class C Interest Distribution Amount with respect to such payment date, (v) the Class D Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class D Interest Distribution Amount with respect to such payment date, (vi) the Class E Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class E Interest Distribution Amount with respect to such payment date and (vii) the Class F Notes and a Payment Date or the Scheduled Final Payment Date, shall mean the Class F Interest Distribution Amount with respect to such payment date.

"**Issuer**": Penn's Landing CDO SPC for the account of the Series 2007-1 Segregated Portfolio, until a successor Person shall have become the Issuer pursuant to the applicable provisions of this Indenture, and thereafter "Issuer" shall mean such successor Person.

"**LIBOR Determination Date**": The meaning specified in Schedule A hereto.

"**Long Reference Entity**": The meaning set forth in the Credit Swaps.

"**Management Fee Rate**": For the Class A Notes 0.150%, for the Class B-1 Notes 0.200%, for the Class B-2 Notes 0.200%, for the Class C Notes 0.225%, for the Class D Notes 0.250%, for the Class E Notes 0.275% and for the Class F Notes, 0%.

"**Monthly Report**": The meaning specified in Section 10(d).

21

"**Monthly Report Period**":  The period beginning on the first calendar day of each month and ending on the last calendar day of each month.

"**Net Gain Balance**":  Shall mean, when used with respect to a Class of Notes as of the date of determination, the sum of each positive Trading Adjustment provided by the Credit Swap Counterparty with respect to such Class of Notes and the related Reference Portfolio Modification or Credit Event relating to a Short Reference Entity that is effective on or prior such date.

"**Net Loss Balance**":  Shall mean, when used with respect to a Class of Notes as of the date of determination, the absolute value of sum of each negative Trading Adjustment provided by the Credit Swap Counterparty with respect to such Class of Notes and the related Reference Portfolio Modification or Credit Event relating to a Short Reference Entity that is effective on or prior such date.

"**New York Business Day**":  The meaning specified in the Credit Swaps.

"**Note Interest Rate**":  The Class A Note Interest Rate, the Class B-1 Note Interest Rate, the Class B-2 Note Interest Rate, the Class C Note Interest Rate, the Class D Note Interest Rate, the Class E Note Interest Rate and the Class F Note Interest Rate (as applicable).

"**Notes**":  The Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, , the Class D Notes, the Class E Notes and the Class F Notes.

"**Offering Memorandum**":  The Amended and Restated Offering Memorandum, dated April 24, 2007, relating to the Notes.

"**Optional Reduction**":  The meaning specified in <u>Section 4(r)</u>.

"**Outstanding Adjustment Amount**":    If the Final Price in respect of an Adjustment Reference Entity with respect to a Class of Notes has not been determined on or prior to the Scheduled Final Payment Date or (if applicable) the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) has not been cured on or prior to the Scheduled Final Payment Date, an amount equal to the Adjustment Amount of such Adjustment Reference Entity.

"**Payment Date**":  The 20th day of March, June, September and December of each year (or if any such day is not a Business Day, the next following Business Day), commencing on the Initial Payment Date and ending on the Scheduled Final Payment Date (unless the Notes are redeemed or repaid prior thereto).

"**Permitted Investments**":    The Permitted Short-Term Investments and the Permitted Long-Term Investment, collectively.

"**Permitted Long-Term Investment**":    A collateralised investment agreement dated as of April 10, 2007, issued by the Permitted Long-Term Investment Issuer and made among the Issuer, the Permitted Long-Term Investment Issuer, the Trustee which shall (A) mature on the earlier to occur of (1) June 20, 2017, (2) the Early Termination Payment Date,

and (3) the date on which all of the Available Amounts Invested (as defined in the Permitted Long-Term Investment) have been withdrawn pursuant to an event of default under the Permitted Long-Term Investment, (B) pay interest to the Issuer on the second (2nd) Business Day immediately preceding each Payment Date and (without duplication) the first Distribution Date to occur, and (C) with respect to each applicable Accrual Period, accrue interest on the outstanding principal amount of the Permitted Long-Term Investment at a floating rate equal to three-month LIBOR (computed on the basis of a 360-day year and the actual number of days elapsed in such Accrual Period) *plus* 0.03% per annum provided that the floating rate in respect of the first Accrual Period shall be the linear interpolation of three-month LIBOR and two-month LIBOR *plus* 0.03 % per annum.

**"Permitted Long-Term Investment Insurer"**: MBIA Insurance Corporation. (and any permitted successor thereto).

**"Permitted Long-Term Investment Issuer"**: MBIA Inc. (and any permitted successor thereto).

**"Permitted Short-Term Investments"**: Notwithstanding the definition in the Standard Terms, any U.S. Dollar-denominated investment purchased via an open market transaction or acquired from an entity operating in its capacity as a broker deal in the ordinary course of business that is one or more of the following including, without limitation, Permitted Short-Term Investments for which the Trustee or an Affiliate of the Trustee provides services:

(i)    cash;

(ii)    direct Registered obligations of, and Registered obligations the timely payment of principal of and interest on which is fully and expressly guaranteed by, the United States of America or any full faith and credit agency, instrumentality or government sponsored entity, provided that such Registered Obligations have a maturity on or prior to the immediately following Payment Date;

(iii)    demand and time deposits in, certificates of deposit of, bankers' acceptances payable on or prior to the immediately following Payment Date issued by, or federal funds sold by any United States federal or state depository institution or trust company (including U.S. Bank National Association, in its individual capacity and not as Trustee), the commercial paper and/or debt obligations of which (or, in the case of the principal depository institution in a holding company system, the commercial paper or debt obligations of such holding company) at the time of such investment or contractual commitment providing for such investment has a Long-Term Credit Rating of not less than "Aaa" by Moody's and not less than "AAA" by S&P, or a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P; *provided, that* in the case of commercial paper and short-term debt obligations with a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "AAA" by S&P;

(iv)    Registered corporate debt securities (other than mortgage-backed securities) which are interest bearing and issued by any corporation incorporated under

23

the laws of the United States of America or any state thereof and which has a Long-Term Credit Rating of at least "Aaa" by Moody's and "AAA" by S&P at the time of such investment or contractual commitment providing for such investment, provided that such registered corporate debt securities have a maturity on or prior to the immediately following Payment Date;

(v)    commercial paper or other short-term obligations with a maturity on or prior to the immediately following Payment Date having at the time of such investment a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P; *provided, that* if such security has a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "Aaa" by Moody's and not less than "AAA" by S&P;

(vi)    reinvestment agreements (so long as payments under any such reinvestment agreement are not subject to withholding taxes) issued by any bank (if treated as a deposit by such bank) or reinvestment agreements issued in Registered form by any insurance company or other corporation or entity organized under the laws of the United States of America or any state thereof with a maturity on or prior to the immediately following Payment Date from the date of issuance that has a Short-Term Credit Rating of not less than "P-1" by Moody's and not less than "A-1+" by S&P; *provided, that* if such security has a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "Aaa" by Moody's and not less than "AAA" by S&P, subject to receipt of Rating Agency Confirmation; and

(vii)    any offshore money market fund or similar investment vehicle (including those for which U.S. Bank National Association or its Affiliates may act as manager or advisor, whether or not for a fee) with a maturity on or prior to the immediately following Payment Date from the date of issuance having at the time of investment therein a Short-Term Credit Rating of not less than "P-1" by Moody's and "A-1+" by S&P; *provided, that* (x) if such investment has a maturity of longer than 91 days, the issuer thereof must also have at the time of such investment a Long-Term Credit Rating of not less than "Aaa" by Moody's and not less than "AAA" by S&P;

*provided, that* Permitted Short-Term Investments (a) shall not include obligations bearing interest at inverse floating rates or any investment the interest on which is variable (unless established by reference to a single index plus a fixed spread, if any, which interest rate moves proportionately with that index), any interest only security, any mortgage backed security, any security purchased at a price in excess of 100% of the par value thereof or any security whose repayment is subject to substantial non-credit related risk as determined in the sole judgment of the Credit Swap Counterparty, acting in a commercially reasonable manner, (b) shall be treated as indebtedness for U.S. federal income tax purposes, or the Issuer has received advice from Allen & Overy LLP or an opinion of another nationally recognized U.S. tax counsel experienced in such matters that the purchase of such investment shall not cause the Issuer to be treated as engaged in a trade or business in the United States for U.S. federal income tax purposes, (c) shall not cause the Issuer to be subject to U.S. federal, state or local income or franchise tax on a net income tax basis, (d) shall not cause non U.S. Holders or non-U.S.

24

Beneficial Owners of Notes to be subject to U.S. federal income tax on a net income basis, (e) shall not be subject to deduction or withholding for or on account of any withholding or similar tax, unless the payor is required to make "gross-up" payments that ensure that the net amount actually received by the Issuer (free and clear of taxes, whether assessed against such obligor or the Issuer) will equal the full amount that the Issuer would have received had no such deduction or withholding been required, and (f) shall not include obligations whose rating assigned by S&P includes the subscript "p," "pi," "q," "r" or "t".

"**Policy**": The meaning specified in the Permitted Long-Term Investment.

"**Portfolio Administrator**": U.S. Bank National Association, in its capacity as such under the Portfolio Administration Agreement, and any successor acting in such capacity.

"**Portfolio Administration Agreement**": The portfolio administration agreement dated April 10, 2007, as amended and restated on April 24, 2007, made among the Issuer, the Portfolio Manager and the Portfolio Administrator.

"**Portfolio Manager**": Delaware Investment Advisers.

"**Portfolio Management Agreement**": The portfolio management agreement dated April 10, 2007, as amended and restated on April 24, 2007, made among the Issuer, the Co-Issuer and the Portfolio Manager.

"**Posted Collateral**": The collateral specified in (i) the Permitted Long-Term Investment, and (ii) the Third Party Custodian Agreement.

"**Potential Failure to Pay**": The meaning specified in the Credit Swaps.

"**Potential Repudiation/Moratorium**": The meaning specified in the Credit Swaps.

"**Principal Collections**": Means, with respect to any Distribution Date (as and to the extent applicable and without duplication), an amount equal to the sum of: (i) the principal proceeds (if any) received by the Issuer during the applicable Accrual Period in respect of the Permitted Long-Term Investment (including any liquidation proceeds of the Posted Collateral and/or payments received by the Issuer pursuant to the Policy (if any), in each case allocable to payments owed by the Permitted Long-Term Investment Issuer in respect of principal under the Permitted Long-Term Investment); (ii) the balance of the Principal Collections Payment Account (excluding the net investment earnings with respect to Permitted Short-Term Investments held in the Principal Collections Payment Account); and (iii) the termination fee (if any) paid by the Credit Swap Counterparty upon an early termination of the Credit Swaps.

"**Principal Collections Payment Account**": The payment account for Principal Collections established by the Trustee pursuant to Section 10(a).

"**Priority of Payments**": The meaning specified in Section 5.

"**Rating Agencies**": Shall mean S&P.

25

"**Rating Agency Confirmation**" Shall mean a written confirmation from S&P that the relevant action in and of itself will not result in a reduction or withdrawal of its then-current rating, if any, of the Notes.

"**Reference Entity**": The meaning specified in the Credit Swaps.

"**Reference Entity Calculation Amount**": The meaning specified in the Credit Swaps.

"**Reference Entity Loss Amount**": The meaning specified in the Credit Swaps.

"**Reference Portfolio**": The meaning specified in the Credit Swaps.

"**Reference Portfolio Modification**": The meaning specified in the Credit Swaps.

"**Reference Registries**": The meaning set forth in the Credit Swaps.

"**S&P**": The Standard & Poor's Ratings Service, a division of the McGraw Hill Companies, Inc.

"**Scheduled Final Payment Date**": The meaning specified in <u>Section 3(b)</u>.

"**Scheduled Final Payment Date Redemption Amount**": When used with respect to (i) the Class A Notes, shall mean the Class A Scheduled Final Payment Date Redemption Amount, (ii) the Class B-1 Notes, shall mean the Class B-1 Scheduled Final Payment Date Redemption Amount, (iii) the Class B-2 Notes, shall mean the Class B-2 Scheduled Final Payment Date Redemption Amount, (iv) the Class C Notes, shall mean the Class C Scheduled Final Payment Date Redemption Amount, (v) the Class D Notes, shall mean the Class D Scheduled Final Payment Date Redemption Amount, (vi) the Class E Notes, shall mean the Class E Scheduled Final Payment Date Redemption Amount and (vii) the Class F Notes, shall mean the Class F Scheduled Final Payment Date Redemption Amount.

"**Second Closing Date**": April 24, 2007.

"**Short Reference Entity**": The meaning set forth in the Credit Swaps.

"**Third Party Custodian Agreement**": The Third Party Custodian Agreement, dated as of the Closing Date, by and among the Permitted Long-Term Investment Issuer, the Trustee and Wells Fargo Bank, National Association, as collateral agent for the Issuer.

"**Trading Adjustments**": The meaning set forth in the Credit Swaps.

"**Transaction Documents**": The Credit Swaps, the Permitted Long-Term Investment, the Third Party Custodian Agreement, the Indenture and the Note Purchase Agreement.

26

"**Trustee**": U.S. Bank National Association, a national banking association, in its capacity as trustee for the Noteholders, unless a successor Person shall have become the Trustee pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean such successor Person.

"**Weighted Average Outstanding Principal Amount**": In respect of a Class of Notes, the sum of the Aggregate Outstanding Amount of such Class of Notes for each calendar day during each period for which such amount is calculated, divided by the actual number of calendar days in such period.

For purposes of calculating the Weighted Average Outstanding Principal Amount, if there is an Additional Issuance of a Class of Notes, the Aggregate Outstanding Amount of such Class of Notes shall be deemed to be increased by the principal amount of the new Notes of such Class on the first day of the Accrual Period in which such Additional Issuance occurred solely for purposes of determining the amount of interest payable on such Class of Notes on the next Payment Date or the first Distribution Date to occur (as and to the extent applicable and without duplication).

Section 3. The Authorized Amount; Note Interest Rate; Scheduled Final Payment Date of the Notes.

(a) The Aggregate Outstanding Amount of Notes which may be issued under this Series Indenture may not exceed $283,750,000 excluding (i) Notes issued upon registration of, transfer of, or in exchange for, or in lieu of, other Notes pursuant to Section 2.3, 2.4 or 8.5 of the Standard Terms, or (ii) additional issuances of Notes pursuant to Section 4(q).

(b) The Notes shall have an original Aggregate Outstanding Amount, original Note Interest Rate and Scheduled Final Payment Date as follows:

| Designation | Aggregate Outstanding Amount | Note Interest Rate | Scheduled Final Payment Date* |
|---|---|---|---|
| Class A Notes | $250,000 | 3-month LIBOR *plus* 0.75% | June 20, 2017 |
| Class B-1 Notes | $270,000,000 | 3-month LIBOR *plus* 1.03% | June 20, 2017 |
| Class B-2 Notes | $5,000,000 | 6.30% | June 20, 2017 |
| Class C Notes | $250,000 | 3-month LIBOR *plus* 1.50% | June 20, 2017 |
| Class D Notes | $250,000 | 3-month LIBOR *plus* 2.50% | June 20, 2017 |

27

| | | | |
|---|---|---|---|
| Class E Notes | $4,000,000 | 3-month LIBOR<br>*plus* 5.00% | June  20, 2017 |
| Class F Notes | $4,000,000 | 3-month LIBOR<br>plus 11.00% | June  20, 2017 |

\*    If such day is not a Business Day, the Scheduled Final Payment Date shall be the next following Business Day.

If the Contingency Amount with respect to a Class of Notes is greater than zero on the Scheduled Final Payment Date, the legal final maturity date of such Class of Notes shall be the earlier of (i) December 20, 2017 (or if such day is not a Business Day, the next following Business Day), and (ii) the final Deferred Redemption Date with respect to such Class of Notes.

The Global Notes shall be issuable in minimum denominations of $250,000 and integral multiples of $1,000 in excess thereof.  After issuance, any Note may fail to be in such required minimum denominations due to the reduction of principal thereof in accordance with Section 4(a).

(c)  (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class A Notes at the Class A Note Interest Rate.

The amount of interest payable on the Class A Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class A Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class A Notes for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360 (the "**Class A Interest Distribution Amount**").

(ii)    With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class A Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class A Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class A Credit Swap on or prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class A Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub-paragraphs (a)(1), (a)(2) and (a)(3) a "**Class A Adjustment Reference Entity**"); and (b) the Class A Adjustment Amount is greater than zero, then:

30775-00042 NY:2152055.4

(A) the Aggregate Outstanding Amount of the Class A Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class A Adjustment Amount solely for purposes of determining the Class A Interest Distribution Amount that is "due and payable" with respect to the Class A Notes on such payment date; and

(B) the Class A Deferred Interest Amount (if any) and the related Class A Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class A Notes on the related Deferred Interest Payment Date.

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class A Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub-paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(c)(ii) occurs, a Class A Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred by calculating in accordance with the terms of the Class A Credit Swap (i) a hypothetical Reference Entity Loss Amount for the relevant Class A Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount in respect of such Class A Adjustment Reference Entity. The **"Class A Adjustment Amount"** on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class A Cash Settlement Amount, and (ii) zero.

(d)  (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class B-1 Notes at the Class B-1 Note Interest Rate.

The amount of interest payable on the Class B-1 Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class B-1 Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class B-1 Notes for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360 (the **"Class B-1 Interest Distribution Amount"**).

(ii)  With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class B-1 Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class B-1 Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class B-1 Credit Swap on or

prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class B-1 Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub-paragraphs (a)(1), (a)(2) and (a)(3) a **"Class B-1 Adjustment Reference Entity"**); and (b) the Class B-1 Adjustment Amount is greater than zero, then:

(A) the Aggregate Outstanding Amount of the Class B-1 Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class B-1 Adjustment Amount solely for purposes of determining the Class B-1 Interest Distribution Amount that is "due and payable" with respect to the Class B-1 Notes on such payment date; and

(B) the Class B-1 Deferred Interest Amount (if any) and the related Class B-1 Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class B-1 Notes on the related Deferred Interest Payment Date.

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class B-1 Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub-paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(d)(ii) occurs, a Class B-1 Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred by calculating in accordance with the terms of the Class B-1 Credit Swap (i) a hypothetical Reference Entity Loss Amount for the relevant Class B-1 Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount in respect of such Class B-1 Adjustment Reference Entity. The **"Class B-1 Adjustment Amount"** on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class B-1 Cash Settlement Amount, and (ii) zero.

(e) (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class B-2 Notes at the Class B-2 Note Interest Rate.

The amount of interest payable on the Class B-2 Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class B-2 Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class B-2 Notes for the relevant Accrual Period; and (c) 30/360 (the **"Class B-2 Interest Distribution Amount"**).

30

(ii)    With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class B-2 Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class B-2 Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class B-2 Credit Swap on or prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class B-2 Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub paragraphs (a)(1), (a)(2) and (a)(3) a "Class B-2 Adjustment Reference Entity"); and (b) the Class B-2 Adjustment Amount is greater than zero, then:

(A)    the Aggregate Outstanding Amount of the Class B-2 Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class B-2 Adjustment Amount solely for purposes of determining the Class B-2 Interest Distribution Amount that is "due and payable" with respect to the Class B-2 Notes on such payment date; and

(B)    the Class B-2 Deferred Interest Amount (if any) and the related Class B-2 Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class B-2 Notes on the related Deferred Interest Payment Date.

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class B-2 Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(e)(ii) occurs, a Class B-2 Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred by calculating in accordance with the terms of the Class B-2 Credit Swap (i) a hypothetical Reference Entity Loss Amount for the relevant Class B-2 Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount in respect of such Class B-2 Adjustment Reference Entity.  The "Class B-2 Adjustment Amount" on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class B-2 Cash Settlement Amount, and (ii) zero.

31

(f)  (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class C Notes at the Class C Note Interest Rate.

The amount of interest payable on the Class C Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class C Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class C Notes for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360 (the "**Class C Interest Distribution Amount**").

(ii)    With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class C Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class C Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class C Credit Swap on or prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class C Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub-paragraphs (a)(1), (a)(2) and (a)(3) a "**Class C Adjustment Reference Entity**"); and (b) the Class C Adjustment Amount is greater than zero, then:

(A) the Aggregate Outstanding Amount of the Class C Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class C Adjustment Amount solely for purposes of determining the Class C Interest Distribution Amount that is "due and payable" with respect to the Class C Notes on such payment date; and

(B) the Class C Deferred Interest Amount (if any) and the related Class C Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class C Notes on the related Deferred Interest Payment Date.

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class C Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub-paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(f)(ii) occurs, a Class C Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined

32

to have occurred by calculating in accordance with the terms of the Class C Credit Swap (i) a hypothetical Reference Entity Loss Amount for the relevant Class C Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount in respect of such Class C Adjustment Reference Entity. The **"Class C Adjustment Amount"** on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class C Cash Settlement Amount, and (ii) zero.

(g) (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class D Notes at the Class D Note Interest Rate.

The amount of interest payable on the Class D Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class D Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class D Notes for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360 (the **"Class D Interest Distribution Amount"**).

(ii)    With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class D Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class D Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class D Credit Swap on or prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Reference Entity included in the Reference Portfolio for the Class D Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub-paragraphs (a)(1), (a)(2) and (a)(3) a **"Class D Adjustment Reference Entity"**); and (b) the Class D Adjustment Amount is greater than zero, then:

(A) the Aggregate Outstanding Amount of the Class D Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class D Adjustment Amount solely for purposes of determining the Class D Interest Distribution Amount that is "due and payable" with respect to the Class D Notes on such payment date; and

(B) the Class D Deferred Interest Amount (if any) and the related Class D Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class D Notes on the related Deferred Interest Payment Date.

33

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class D Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub-paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(g)(ii) occurs, a Class D Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred by calculating in accordance with the terms of the Class D Credit Swap (i) a hypothetical change in Reference Entity Loss Amount in respect of the relevant Class D Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount for such Class D Adjustment Reference Entity. The **"Class D Adjustment Amount"** on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class D Cash Settlement Amount, and (ii) zero.

(h) (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class E Notes at the Class E Note Interest Rate.

The amount of interest payable on the Class E Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class E Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class E Notes for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360 (the **"Class E Interest Distribution Amount"**).

(ii)    With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class E Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class E Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class E Credit Swap on or prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Reference Entity included in the Reference Portfolio for the Class E Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub-paragraphs (a)(1), (a)(2) and (a)(3) a **"Class E Adjustment Reference Entity"**); and (b) the Class E Adjustment Amount is greater than zero, then:

(A) the Aggregate Outstanding Amount of the Class E Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be)

34

is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class E Adjustment Amount solely for purposes of determining the Class E Interest Distribution Amount that is "due and payable" with respect to the Class E Notes on such payment date; and

(B) the Class E Deferred Interest Amount (if any) and the related Class E Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class E Notes on the related Deferred Interest Payment Date.

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class E Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub-paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(h)(ii) occurs, a Class E Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred by calculating in accordance with the terms of the Class E Credit Swap (i) a hypothetical change in Reference Entity Loss Amount in respect of the relevant Class E Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount for such Class E Adjustment Reference Entity. The "**Class E Adjustment Amount**" on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class E Cash Settlement Amount, and (ii) zero.

(i) (i) Interest shall accrue during each Accrual Period on the Weighted Average Outstanding Principal Amount of the Class F Notes at the Class F Note Interest Rate.

The amount of interest payable on the Class F Notes in respect of any Payment Date shall be calculated by the Trustee on the relevant Interest Determination Date by calculating the product of (a) the Class F Note Interest Rate; (b) the Weighted Average Outstanding Principal Amount of the Class F Notes for the relevant Accrual Period; and (c) the actual number of days elapsed in such Accrual Period *divided* by 360 (the "**Class F Interest Distribution Amount**").

(ii)    With respect to any Payment Date and the Scheduled Final Payment Date (without duplication), in the event that, in respect of the related Accrual Period and the related Interest Determination Date, (a)(1) an Event Determination Date has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class F Credit Swap on or prior to such Interest Determination Date but the relevant Final Price in respect of such Long Reference Entity has not been determined under the Class F Credit Swap on or prior to such Interest Determination Date; and/or (2) a Potential Failure to Pay has occurred with respect to a Long Reference Entity included in the Reference Portfolio for the Class F Credit Swap on or prior to such Interest Determination Date and such Potential Failure to Pay has not been cured on or prior to such Interest Determination Date; and/or (3) a Potential Repudiation/Moratorium has occurred with respect to a Reference Entity included in the Reference Portfolio for the Class F

35

Credit Swap on or prior to such Interest Determination Date and such Potential Repudiation/Moratorium has not been cured on or prior to such Interest Determination Date (each Reference Entity referred to in sub-paragraphs (a)(1), (a)(2) and (a)(3) a "**Class F Adjustment Reference Entity**"); and (b) the Class F Adjustment Amount is greater than zero, then:

> (A) the Aggregate Outstanding Amount of the Class F Notes will be reduced as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined by the Credit Swap Calculation Agent to have occurred by an amount equal to such Class F Adjustment Amount solely for purposes of determining the Class F Interest Distribution Amount that is "due and payable" with respect to the Class F Notes on such payment date; and

> (B) the Class F Deferred Interest Amount (if any) and the related Class F Adjustment Reference Entity shall be paid by the Issuer to the Holders of the Class F Notes on the related Deferred Interest Payment Date.

The Issuer shall use amounts received from the Credit Swap Counterparty under the Class F Credit Swap on such Deferred Interest Payment Date to pay such Deferred Interest Amount.

If either of the events described in sub-paragraph (a)(1), (a)(2) or (a)(3) of this Section 3(i)(ii) occurs, a Class F Adjustment Amount shall be determined by the Credit Swap Calculation Agent as of the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred by calculating in accordance with the terms of the Class F Credit Swap (i) a hypothetical change in Reference Entity Loss Amount in respect of the relevant Class E Adjustment Reference Entity based on a Final Price of zero, and (ii) a hypothetical Cash Settlement Amount for such Class F Adjustment Reference Entity. The "**Class F Adjustment Amount**" on the applicable Event Determination Date or the date upon which the Potential Failure to Pay or Potential Repudiation/Moratorium (as the case may be) is determined to have occurred shall mean an amount equal to the greater of (i) such hypothetical Class F Cash Settlement Amount, and (ii) zero.

Section 4. Payment of Principal, Reduction of Principal and Payment of Interest; Rights Preserved.

(a) Payment of Principal.

(i)    No principal payments shall be made on any Class of Notes until the first Distribution Date to occur unless the Aggregate Outstanding Amount of such Class of Notes is reduced in connection with an Optional Reduction.

(ii)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class A Notes an amount (the "**Class A Scheduled Final Payment Date Redemption Amount**") equal to Aggregate Outstanding Amount of the Class A Notes

36

on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class A Notes on the Scheduled Final Payment Date.

(iii)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class B-1 Notes an amount (the "**Class B-1 Scheduled Final Payment Date Redemption Amount**") equal to the Aggregate Outstanding Amount of the Class B-1 Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class B-1 Notes on the Scheduled Final Payment Date.

(iv)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class B-2 Notes an amount (the "**Class B-2 Scheduled Final Payment Date Redemption Amount**") equal to the Aggregate Outstanding Amount of the Class B-2 Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class B-2 Notes on the Scheduled Final Payment Date.

(v)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class C Notes an amount (the "**Class C Scheduled Final Payment Date Redemption Amount**") equal to the Aggregate Outstanding Amount of the Class C Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class C Notes on the Scheduled Final Payment Date.

(vi)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class D Notes an amount (the "**Class D Scheduled Final Payment Date Redemption Amount**") equal to the Aggregate Outstanding Amount of the Class D Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class D Notes on the Scheduled Final Payment Date.

(vii)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class E Notes an amount (the "**Class E Scheduled Final Payment Date Redemption Amount**") equal to the Aggregate Outstanding Amount of the Class E Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class E Notes on the Scheduled Final Payment Date.

(viii)    On the Scheduled Final Payment Date, the Issuer shall pay to the holders of the Class F Notes an amount (the "**Class F Scheduled Final Payment Date Redemption Amount**") equal to the Aggregate Outstanding Amount of the Class F Notes on the Scheduled Final Payment Date *minus* the Contingency Amount with respect to the Class F Notes on the Scheduled Final Payment Date

(ix)    If the Contingency Amount with respect to a Class of Notes is greater than zero on the Scheduled Final Payment Date, the Issuer shall pay to the Holders of such Class of Notes on each relevant Deferred Redemption Date with respect to such Class of Notes an amount equal to the relevant Deferred Redemption Amount (each a "**Deferred Amount**"). The Issuer shall pay each Deferred Amount from amounts standing to the credit of the Principal Collections Payment Account, in accordance with the Priority of Payments.

(x)    Subject to the Priority of Payments, the payment of principal of the Class B-1 Notes and Class B-2 Notes may only occur after the principal of the Class A Notes has been paid in full and is subordinated to the payment on the applicable Payment Date of the principal due and payable on the Class A Notes, and other amounts in accordance with the Priority of Payments and any payment of principal of the Class B-1 Notes and Class B-2 Notes which is not paid, in accordance with the Priority of Payments, on the applicable Payment Date, shall not be considered "due and payable" for purposes of Section 5.1(a) of the Standard Terms until the Payment Date on which such principal may be paid in accordance with the Priority of Payments or all of the Class A Notes have been paid in full.

(xi)    Subject to the Priority of Payments, the payment of principal of the Class C Notes may only occur after the principal of the Class B-1 Notes and Class B-2 Notes has been paid in full and is subordinated to the payment on the applicable Payment Date of the principal due and payable on the Class B-1 Notes and Class B-2 Notes, and other amounts in accordance with the Priority of Payments and any payment of principal of the Class C Notes which is not paid, in accordance with the Priority of Payments, on the applicable Payment Date, shall not be considered "due and payable" for purposes of Section 5.1(a) of the Standard Terms until the Payment Date on which such principal may be paid in accordance with the Priority of Payments or all of the Class B-1 Notes and Class B-2 Notes have been paid in full.

(xii)    Subject to the Priority of Payments, the payment of principal of the Class D Notes may only occur after the principal of the Class C Notes has been paid in full and is subordinated to the payment on the applicable Payment Date of the principal due and payable on the Class C Notes, and other amounts in accordance with the Priority of Payments and any payment of principal of the Class D Notes which is not paid, in accordance with the Priority of Payments, on the applicable Payment Date, shall not be considered "due and payable" for purposes of Section 5.1(a) of the Standard Terms until the Payment Date on which such principal may be paid in accordance with the Priority of Payments or all of the Class C Notes have been paid in full.

(xiii)    Subject to the Priority of Payments, the payment of principal of the Class E Notes may only occur after the principal of the Class D Notes has been paid in full and is subordinated to the payment on the applicable Payment Date of the principal due and payable on the Class D Notes, and other amounts in accordance with the Priority of Payments and any payment of principal of the Class E Notes which is not paid, in accordance with the Priority of Payments, on the applicable Payment Date, shall not be considered "due and payable" for purposes of Section 5.1(a) of the Standard Terms until the Payment Date on which such principal may be paid in accordance with the Priority of Payments or all of the Class D Notes have been paid in full.

(xiv)    Subject to the Priority of Payments, the payment of principal of the Class F Notes may only occur after the principal of the Class E Notes has been paid in full and is subordinated to the payment on the applicable Payment Date of the principal due and payable on the Class E Notes, and other amounts in accordance with the Priority of Payments and any payment of principal of the Class F Notes which is not paid, in

accordance with the Priority of Payments, on the applicable Payment Date, shall not be considered "due and payable" for purposes of Section 5.1(a) of the Standard Terms until the Payment Date on which such principal may be paid in accordance with the Priority of Payments or all of the Class E Notes have been paid in full

(b) Reduction of Principal of the Class A Notes. On the date on which a Cash Settlement Amount is determined under the Class A Credit Swap, the Aggregate Outstanding Amount of the Class A Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class A Notes is reduced to zero.

No amounts shall be payable in respect of the Class A Notes as a result of any such reduction.

(c) Reduction of Principal of the Class B-1 Notes. On the date on which a Cash Settlement Amount is determined under the Class B-1 Credit Swap, the Aggregate Outstanding Amount of the Class B-1 Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class B-1 Notes is reduced to zero.

No amounts shall be payable in respect of the Class B-1 Notes as a result of any such reduction.

(d) Reduction of Principal of the Class B-2 Notes. On the date on which a Cash Settlement Amount is determined under the Class B-2 Credit Swap, the Aggregate Outstanding Amount of the Class B-2 Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class B-2 Notes is reduced to zero.

No amounts shall be payable in respect of the Class B-2 Notes as a result of any such reduction.

(e) Reduction of Principal of the Class C Notes. On the date on which a Cash Settlement Amount is determined under the Class C Credit Swap, the Aggregate Outstanding Amount of the Class C Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class C Notes is reduced to zero.

No amounts shall be payable in respect of the Class C Notes as a result of any such reduction.

(f) Reduction of Principal of the Class D Notes. On the date on which a Cash Settlement Amount is determined under the Class D Credit Swap, the Aggregate Outstanding Amount of the Class D Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class D Notes is reduced to zero.

No amounts shall be payable in respect of the Class D Notes as a result of any such reduction.

(g) Reduction of Principal of the Class E Notes. On the date on which a Cash Settlement Amount is determined under the Class E Credit Swap, the Aggregate Outstanding Amount of the Class E Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class E Notes is reduced to zero.

30775-00042 NY:2152055.4

No amounts shall be payable in respect of the Class E Notes as a result of any such reduction.

(h) Reduction of Principal of the Class F Notes. On the date on which a Cash Settlement Amount is determined under the Class F Credit Swap, the Aggregate Outstanding Amount of the Class F Notes shall be reduced by an amount equal to such Cash Settlement Amount until the Aggregate Outstanding Amount of the Class F Notes is reduced to zero.

No amounts shall be payable in respect of the Class F Notes as a result of any such reduction.

(i) Payment of Interest. Interest on the Notes shall be due and payable on each Payment Date and on the first Distribution Date to occur (as and to the extent applicable and without duplication), if and to the extent funds are available for such purpose in accordance with the applicable Priority of Payments. Interest on the Notes is payable in arrears on each such Payment Date and the first Distribution Date to occur (as and to the extent applicable and without duplication). On each Payment Date the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes shall rank *pari passu* with each other in right of payment of interest.

(j) Notwithstanding anything in the Standard Terms or this Series Indenture to the contrary, all payments of principal and interest to the Noteholders shall be paid in accordance with the applicable Priority of Payments, shall be based on the Aggregate Outstanding Amount of each Class of Notes and are subject to Section 12.16 of the Standard Terms.

(k) Interest shall cease to accrue on each Note, or in the case of a partial repayment or reduction, on such part, from the date of repayment or reduction, unless payment of principal is improperly withheld or unless Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest shall accrue on any Defaulted Interest on the Notes at the applicable Note Interest Rate until paid.

(l) As a condition to the payment of principal of and interest on any Note without, or at a reduced rate of, U.S. withholding or backup withholding tax, the Trustee shall require certification reasonably acceptable to it to enable it to determine, and as the Issuer may direct in order to enable the Issuer to determine, its duties and liabilities with respect to any taxes or other charges that the Issuer may be required to pay, deduct or withhold from payments in respect of such Note or the holder of such Note under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation. Such certification may include U.S. federal income tax forms (such as IRS Form W-8BEN (Certification of Foreign Status of Beneficial Owner), Form W-8IMY (Certification of Foreign Intermediary Status), IRS Form W-9 (Request for Taxpayer Identification Number and Certification), or IRS Form W-8ECI (Certification of Foreign Person's Claim for Exemption from Withholding on Income Effectively Connected with Conduct of a U.S. Trade or Business) or any successors to such IRS forms). The Trustee may also require certification reasonably acceptable to it to enable the Issuer to qualify for a reduced rate of withholding in any jurisdiction from or through which the Issuer receives payments on its

40

assets. Each holder of a Note agrees to provide any certification requested pursuant to this paragraph within a reasonable time period after such request is initially made and to update or replace such form or certification in accordance with its terms or its subsequent amendments.

(m)Payments in respect of principal of and interest on Notes shall be payable by wire transfer in immediately available funds to a Dollar account maintained by the Holder thereof in accordance with wire transfer instructions received by any Paying Agent on or before the Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the U.S.

(n) The principal of and interest on any Note which is payable in accordance with the applicable Priority of Payments on a Payment Date or Distribution Date (as applicable) and is punctually paid or duly provided for on a Payment Date or Distribution Date (as applicable) shall be paid to the Person in whose name that Note (or one or more predecessor Notes) is registered in the Note Registrar at the close of business on the Record Date for such payment. All such payments that are mailed or wired and returned to the Paying Agent shall be held for payment as herein provided at the office or agency of the Co-Issuers to be maintained as provided in Section 7.4 of the Standard Terms.

Payments to Holders of the Notes of each Class shall be made in the proportion that the Aggregate Outstanding Amount of the Notes of such Class registered in the name of each such Holder on such Record Date bears to the Aggregate Outstanding Amount of all the Notes of such Class on such Record Date.

(o) All reductions in the Aggregate Outstanding Amount of a Note (or one or more predecessor Notes) effected by (A) payments of installments of principal made on any Payment Date, or (B) reductions in the Aggregate Outstanding Amount of a Note pursuant to Section 4(b), Section 4(c), Section 4(d), Section 4(e), Section 4(f) Section 4(g) or Section 4(h) (as and to the extent applicable) shall be binding upon all future Holders of such Note and of any Note issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof, whether or not such payment or reduction is noted on such Note.

(p) Notwithstanding any other provision of this Indenture, or the Notes, the obligations of the Co-Issuers hereunder and thereunder are limited-recourse or non-recourse obligations of the Issuer or the Co-Issuer, as the case may be, payable solely from the Collateral, and following realization of the Collateral, any claims of the Noteholders, the Trustee and the Credit Swap Counterparty shall be extinguished and neither the Trustee nor any Noteholder or any other Secured Party shall be obliged or entitled to take any further steps against either of the Co-Issuers or their other assets to recover any sums due but still unpaid in respect of this Indenture, the Notes, the Credit Swaps or otherwise. In particular, neither the Trustee nor any Noteholder or any other Secured Party shall be entitled to petition or take any other steps for the winding-up of the Issuer or the Co-Issuer in relation to any such sums or otherwise for a period of one year and one day (or, if longer, the then applicable preference period under any relevant jurisdiction) after payment in full of all notes issued by the Issuer or the Co-Issuer under any segregated portfolio or otherwise nor shall any of them have any claim in respect of any such sums in respect of any assets of the Issuer or the Co-Issuer other than the Collateral. No recourse shall be had for the payment of any amount owing in respect of the Notes, this Indenture, the

41

Credit Swaps or otherwise against any officer or Authorized Officer, member, director, employee, security holder or incorporator of the Co-Issuers or their respective successors or assigns for any amounts payable under the Notes or this Indenture, the Credit Swaps or otherwise. It is understood that the foregoing provisions of this Section 4(o) shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral, or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Notes or secured by this Indenture until such Collateral has been realized, whereupon any outstanding indebtedness or obligation shall be extinguished. No party shall have recourse to any other segregated portfolio of the Issuer. It is further understood that the foregoing provisions of this Section 4(o) shall not limit the right of any Person to name the Issuer or the Co-Issuer as a party defendant in any action or suit or in the exercise of any other remedy under the Notes or this Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity. This Section 4(o) shall survive the termination of this Indenture.

(q) Subject to the foregoing provisions of this Section 4 and the provisions of Sections 2.3 and 2.4 of the Standard Terms, each Note delivered under this Indenture and upon registration of transfer of or in exchange for or in lieu of any other Note shall carry the rights of unpaid interest and principal that were carried by such other Note.

(r)    Additional Issuances of Notes.

(i)    The Co-Issuers may issue and sell additional Notes of any Class of Notes (each an "**Additional Issuance**") on any Business Day prior to the Scheduled Final Payment Date at the direction of the Managers.

(ii)    Any Additional Issuance of a Class of Notes must satisfy the following conditions: (A) the Aggregate Outstanding Amount of such Class of Notes on the date of such Additional Issuance (after giving effect to the interest adjustment provisions for such Class, but prior to giving effect to such Additional Issuance) must be equal to the Aggregate Outstanding Amount of such Class of Notes on the later of (1) the Closing Date, and (2) the date of the most recent Additional Issuance with respect to such Class of Notes; (B) the terms of the new Notes must be substantially identical to the terms of previously issued Notes of the Class of which such new Notes are a part; (C) the Co-Issuers must receive Rating Agency Confirmation with respect to such Additional Issuance; (D) such Additional Issuance must be approved by the Permitted Long-Term Investment Issuer; and (E) an Opinion of Counsel must be delivered to the Trustee to the effect that (1) such Additional Issuance will not cause the Issuer to be engaged in a United States trade or business or otherwise subject to U.S. federal income taxation on a net income basis, and (2) such additional issuance will not have a material adverse affect on the tax treatment, as described in Offering Memorandum under the section titled "Certain U.S. Federal Income Tax Considerations", of the Issuer or of any Class of Notes Outstanding at the time of issuance. Each Class of Notes issued pursuant to an Additional Issuance shall accrue interest from the first day of the Accrual Period in which it was issued.

(iii)     Any additional Notes issued pursuant to this Section 4(q) shall be subject to the terms of this Indenture as if such Notes had been issued on the date hereof and shall be subject to the requirements of Section 3.4 of the Standard Terms.

Any Additional Issuance of a Class of Notes will not be conditioned upon a vote of the existing Holders or Beneficial Owners of Notes or the execution of a supplemental indenture.

(iv)     Upon receipt of the proceeds of any additional issuance of Class A Notes, Class B-1 Notes, the Class B-2 Notes, Class C Notes, Class D Notes, Class E Notes or Class F Notes (as applicable), the Trustee shall (i) pay such proceeds to the Permitted Long-Term Investment Issuer, (ii) direct the Permitted Long-Term Investment Issuer to (A) increase the balance of the Permitted Long-Term Investment by an amount equal to such proceeds, and (B) make any other necessary amendments to the Permitted Long-Term Investment to reflect such increase.

(v)     For all purposes of this Indenture, an Additional Issuance of a Class of Notes shall be deemed to not materially and adversely affect the interests of any Holder or Beneficial Owner of any Class of Notes.

(s) Reduction of a Class of Notes.

(i)     If at any time the Managers or any of their affiliates are the Holders or the Beneficial Owners of all or a portion of any Class of Notes (the "**Lehman Notes**"), the Managers or such affiliates may, provided that no Event of Default (as defined in the Standard Terms) or Event of Default (as defined in the Credit Swaps) has occurred and its continuing, direct the Co-Issuers to redeem the Lehman Notes on any Payment Date upon 10 days' written notice to the Issuer, the Trustee, the Credit Swap Counterparty and the Permitted Long-Term Investment Issuer (each, an "**Optional Reduction**").

(ii)     Any Optional Reduction must be approved by the Permitted Long-Term Investment Issuer and the Credit Swap Counterparty.

(iii)     The amount payable in connection with an Optional Reduction of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, Class D Notes, Class E Notes or the Class F Notes (as applicable) will be (A) equal to the Aggregate Outstanding Amount of the Lehman Notes being redeemed, (B) paid by the Permitted Long-Term Investment Issuer or the Credit Swap Counterparty on the relevant Payment Date, and (C) distributed by the Issuer to the holders of the Lehman Notes being redeemed on such Payment Date without regard to the Priority of Payments.

(iv)     On the date of each Optional Reduction of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, Class D Notes, Class E Notes or the Class F Notes, the Trustee shall direct the Permitted Long-Term Investment Issuer to (A) decrease the balance of the Permitted Long-Term Investment by an amount that corresponds to the Aggregate Outstanding Amount of the Lehman Notes being redeemed, and (B) make any other necessary amendments to the Permitted Long-Term Investment to reflect such decrease. For the avoidance of doubt, no Optional Reduction shall result

43

in a decrease to the Aggregate Outstanding Amount of any Note not being redeemed, as a result of termination costs in relation to the Credit Swaps, or otherwise.

(v)    Any Optional Reduction shall not be conditioned upon a vote of the existing Holders or Beneficial Owners of Notes or the execution of a supplemental indenture.

(vi)    For all purposes of this Indenture, an Optional Reduction of a Class of Notes shall be deemed to not materially and adversely affect the interests of any Holder or Beneficial Owner of any Class of Notes.

(vii)    Notwithstanding anything in this Indenture to the contrary, the provisions of Section 3(c)(ii), Section 3(d)(ii), Section 3(e)(ii), Section 3(f)(ii) and Section 3(g)(ii) shall not apply to any Lehman Notes being redeemed in connection with an Optional Reduction.

(t)    Additional Event of Default.    For purposes of Section 5.1 of the Standard Terms, **"Additional Event of Default"** means (A) a failure by the Permitted Long-Term Investment Issuer and the Permitted Long-Term Investment Insurer on behalf of the Permitted Long-Term Investment Issuer to make any payment due pursuant to the Permitted Long-Term Investment and the Policy, respectively, or (B) the insolvency of the Permitted Long-Term Investment Insurer or, if for any reason there is no Permitted Long-Term Investment Insurer, the insolvency of the Permitted Long-Term Investment Issuer, or (C) the occurrence of any other event under the Permitted Long-Term Investment which results in the entire amount due thereunder becoming immediately due and payable (after giving effect to any notice or declaration requirement in respect thereof).

Section 5.    Disbursements of Monies from Payment Account.    (a)    Notwithstanding anything to the contrary in this Indenture and subject to this Section 5, the Trustee shall disburse amounts from the Interest Collections Payment Account and the Principal Collections Payment Account as follows and for application by the Trustee in accordance with the following priorities (the **"Priority of Payments"**):

(i)    On each Payment Date or the Scheduled Final Payment Date (as and to the extent applicable and without duplication), Interest Collections received for such payment date will be allocated and applied in the following order of priority:

(A) to pay to the Holders of the Outstanding Notes (*pro rata*) the Interest Distribution Amounts due and payable on the Classes of Notes on such Payment Date or the Scheduled Final Payment Date (as and to the extent applicable and without duplication);

(B) to pay the accrued and unpaid Base Management Fee; and

(C) to pay to the Credit Swap Counterparty any remaining Interest Collections.

44

(ii)    On the Scheduled Final Payment Date and each Deferred Redemption Date, Principal Collections received for the Scheduled Final Payment Date (or in respect of each Deferred Redemption Date, standing to the credit of the Principal Collections Payment Account) will be allocated and applied in the following order of priority:

(A) to pay to the Credit Swap Counterparty (i) the Class A Credit Protection Payment Amount owed by the Issuer (if any) under the Class A Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable), (ii) the Class B-1 Credit Protection Payment Amount owed by the Issuer (if any) under the Class B-1 Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable), (iii) the Class B-2 Credit Protection Payment Amount owed by the Issuer (if any) under the Class B-2 Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable), (iv) the Class C Credit Protection Payment Amount owed by the Issuer (if any) under the Class C Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable), (v) the Class D Credit Protection Payment Amount owed by the Issuer (if any) under the Class D Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable), (vi) the Class E Credit Protection Payment Amount owed by the Issuer (if any) under the Class E Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable) and (vii) the Class F Credit Protection Payment Amount owed by the Issuer (if any) under the Class F Credit Swap on the Scheduled Final Payment Date or the relevant Deferred Redemption Date (as applicable);

(B) to pay to the Holders of the Outstanding Class A Notes, the Class A Scheduled Final Payment Date Redemption Amount or the Deferred Redemption Amount relating to the Class A Notes (as applicable);

(C)  to pay to the Holders of the Outstanding Class B-1 Notes and Class B-2 Notes, the Class B-1 Scheduled Final Payment Date Redemption Amount, the Class B-2 Scheduled Final Payment Date Redemption Amount or the Deferred Redemption Amount relating to the Class B-1 Notes or the Class B-2 Notes (as applicable);

(D)  to pay to the Holders of the Outstanding Class C Notes, the Class C Scheduled Final Payment Date Redemption Amount or the Deferred Redemption Amount relating to the Class C Notes (as applicable);

(E) to pay to the Holders of the Outstanding Class D Notes, the Class D Scheduled Final Payment Date Redemption Amount or the Deferred Redemption Amount relating to the Class D Notes (as applicable);

(F) to pay to the Holders of the Outstanding Class E Notes, the Class E Scheduled Final Payment Date Redemption Amount or the Deferred Redemption Amount relating to the Class E Notes (as applicable);

45

(G) to pay to the Holders of the Outstanding Class F Notes, the Class F Scheduled Final Payment Date Redemption Amount or the Deferred Redemption Amount relating to the Class F Notes (as applicable)

(iii)    On the Early Termination Payment Date (if any), Collections received for the Early Termination Payment Date will be allocated and applied in the following order of priority:

(A) to pay to the Credit Swap Counterparty (i) the aggregate of the Class A Cash Settlement Amounts owed by the Issuer (if any) under the Class A Credit Swap on the Early Termination Payment Date, (ii) the aggregate of the Class B-1 Cash Settlement Amounts and Class B-2 Cash Settlement Amounts owed by the Issuer (if any) under the Class B-1 Credit Swap and the Class B-2 Credit Swap on the Early Termination Payment Date, (iii) the aggregate of the Class C Cash Settlement Amounts owed by the Issuer (if any) under the Class C Credit Swap on the Early Termination Payment Date; (iv) the aggregate of the Class D Cash Settlement Amounts owed by the Issuer (if any) under the Class D Credit Swap on the Early Termination Payment Date, (v) the aggregate of the Class E Cash Settlement Amounts owed by the Issuer (if any) under the Class E Credit Swap on the Early Termination Payment Date, (vi) the aggregate of the Class F Cash Settlement Amounts owed by the Issuer (if any) under the Class F Credit Swap on the Early Termination Payment Date;

(B) if the Credit Swap Counterparty is not the Defaulting Party or the sole Affected Party under the Credit Swaps, to pay to the Credit Swap Counterparty all termination payments owed to the Credit Swap Counterparty under the Credit Swaps;

(C) to pay to the Holders of the Outstanding Notes (*pro rata*) the Interest Distribution Amounts due and payable on the Classes of Notes on the Early Termination Payment Date;

(D) to pay to the Holders of the Outstanding Class A Notes an amount equal to the Aggregate Outstanding Amount of the Class A Notes;

(E) to pay to the Holders of the Outstanding Class B-1 Notes and Class B-2 Notes an amount equal to the Aggregate Outstanding Amount of the Class B-1 Notes and Class B-2 Notes;

(F) to pay to the Holders of the Outstanding Class C Notes an amount equal to the Aggregate Outstanding Amount of the Class C Notes;

(G) to pay to the Holders of the Outstanding Class C Notes an amount equal to the Aggregate Outstanding Amount of the Class C Notes;

(H) to pay to the Holders of the Outstanding Class D Notes an amount equal to the Aggregate Outstanding Amount of the Class D Notes;

30775-00042 NY:2152055.4

(I) to pay to the Holders of the Outstanding Class E Notes an amount equal to the Aggregate Outstanding Amount of the Class E Notes;

(J) to pay to the Holders of the Outstanding Class F Notes an amount equal to the Aggregate Outstanding Amount of the Class F Notes

(K) to pay the accrued and unpaid Base Management Fee;

(L) if the Credit Swap Counterparty is the Defaulting Party or the sole Affected Party under the Credit Swaps, to pay to the Credit Swap Counterparty all termination payments owed to the Credit Swap Counterparty under the Credit Swaps; and

(M)    to pay to the Credit Swap Counterparty any remaining Collections.

(b) Except as otherwise expressly provided in this Section 5, if on any Payment Date or Distribution Date the amount available in the Interest Collections Payment Account and the Principal Collections Payment Account (as applicable) from amounts received in the related Accrual Period are insufficient to make the full amount of the disbursements required by a particular lettered subclause of Section 5(a)(i), Section 5(a)(ii), or Section 5(a)(iii), the Trustee shall make the disbursements called for by such subclause from the amount available in the Interest Collections Payment Account or the Principal Collections Payment Account at such time (after payment of the full amount of disbursements required by more senior subclauses) ratably in accordance with the respective amounts of such disbursements then due and payable to the extent funds are available therefor.

Section 6.  Trustee's Duties.

(a) For all purposes under this Indenture, the Trustee shall not be deemed to have notice or knowledge of any Event of Default described in Section 5.1 of the Standard Terms unless a Trust Officer assigned to and working in the Corporate Trust Office has actual knowledge thereof, unless, consistent with the standard of care required hereunder prior to the occurrence of such Event of Default or Default, the Trustee should have known of such an Event of Default or Default or unless written notice of any event which is in fact such an Event of Default or Default is received by the Trustee at the Corporate Trust Office, and such notice references the Notes generally, the Issuer, the Co-Issuer, the Collateral or this Indenture. For purposes of determining the Trustee's responsibility and liability hereunder, whenever reference is made in this Indenture to such an Event of Default or a Default, such reference shall be construed to refer only to such an Event of Default or Default of which the Trustee is deemed to have notice as set forth in this Section 6 of the Series Indenture. Promptly upon having actual knowledge of any Failure to Pay (not taking into account any relevant grace period) by Lehman Brothers Special Financing Inc. under the Credit Swaps the Trustee, on behalf of the Issuer, (i) shall notify Lehman Brothers Special Financing Inc. of the same and (ii) shall make a written demand on Lehman Brothers Holdings Inc. pursuant to the Guarantee dated April 10, 2007 of Lehman Brothers Holdings Inc. in favor of the Issuer.

(b) Certain Duties of the Trustee Related to Delayed Payment of Proceeds. In the event that in any month the Trustee shall not have received a payment with respect to any

47

Permitted Investment on its Due Date, (a) the Trustee shall promptly notify the Issuer and the Rating Agency in writing and (b) unless within three (3) Business Days (or the end of the applicable grace period for such payment, if longer) after such notice such payment shall have been received by the Trustee, the Trustee shall request the issuer of such Permitted Investment, the trustee under the related instrument with respect to such Permitted Investment or paying agent designated by either of them, as the case may be, to make such payment as soon as practicable after such request but in no event later than three (3) Business Days after the date of such request. In the event that such payment is not made within such time period, the Trustee, subject to the provisions of clause (iv) of Section 6.1(c) of the Standard Terms shall take such action as the Holders of at least a Majority of each Class of Notes, voting as separate Classes, shall direct in writing. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture.

(c) <u>Certain Duties of the Trustee with Respect to the Permitted Long-Term Investment</u>.

(i) Upon becoming aware that the Permitted Long-Term Investment Issuer has failed to make a timely payment pursuant to the Permitted Long-Term Investment, the Trustee shall promptly (in any event no later than the close of business on such day) notify the Permitted Long-Term Investment Insurer of such nonpayment.

(ii) Upon becoming aware of an event of default under the Permitted Long-Term Investment, the Trustee shall notify the Permitted Long-Term Investment Issuer and the Permitted Long-Term Investment Insurer thereof and shall promptly exercise the Issuer's remedies under the Permitted Long-Term Investment, including causing the liquidation of the Posted Collateral and/or exercising the Issuer's rights under the Policy (subject, however, to the Trustee's right first to be indemnified to its reasonable satisfaction for any associated costs, expenses and liabilities). The proceeds of the Posted Collateral and/or payments received by the Issuer pursuant to the Policy shall be deposited by the Trustee in the Principal Collections Payment Account and invested in Permitted Short-Term Investments selected by the Credit Swap Calculation Agent; *provided that* in no event may such amounts exceed the amounts owed by the Permitted Long-Term Investment Issuer and any excess proceeds shall be paid by the Issuer to the Permitted Long-Term Investment Issuer and shall not be available to make any payments in respect of the Notes.

(iii) Upon the occurrence of an event specified in Section 5.1 of the Permitted Long-Term Investment, the Trustee shall exercise its right to declare all amounts owed under the Permitted Long-Term Investment to be due and payable immediately.

(d) <u>Portfolio Administrator</u>.

The Portfolio Administrator shall have no duties under this Series Indenture other than those duties expressly set forth in Section 10(d). In acting and performing its duties hereunder, the Portfolio Administrator shall have the rights, immunities, indemnities and other protections granted to it under the Portfolio Administration Agreement.

Section 7. <u>Subordination</u>.

48

(a) Anything in this Series Indenture, the Standard Terms or the Notes to the contrary notwithstanding, the Issuer and the Holders of the Class B-1 Notes and Class B-2 Notes agree for the benefit of the Holders of the Class A Notes, that the Class B-1 Notes, the Class B-2 Notes and the Issuer's rights in and to the Collateral (if any) (as related to the Class A Notes, the "**Subordinate Interests**") shall be subordinate and junior to the Class A Notes to the extent and in the manner set forth in this Indenture including as set forth in Section 5 hereto and hereinafter provided. If any Event of Default has not been cured or waived and acceleration occurs in accordance with Article V of the Standard Terms, including as a result of an Event of Default specified in Section 5.1(c) of the Standard Terms, the Aggregate Outstanding Amount of the Class A Notes shall be paid in full in Cash or, to the extent a Majority in Aggregate Outstanding Amount of the Class A Notes consents, other than in Cash, before any further payment or distribution is made on account of the Subordinate Interests. The Holders of the Class B-1 Notes and Class B-2 Notes agree, for the benefit of the Holders of the Class A Notes not to cause the filing of a petition in bankruptcy against the Issuer or the Co-Issuer for failure to pay to them amounts due under the Class B-1 Notes and Class B-2 Notes hereunder until the payment in full of the Aggregate Outstanding Amount of the Class A Notes and not before one year and one day, or, if longer, the applicable preference period then in effect, has elapsed since such payment.

(b) Anything in this Series Indenture, the Standard Terms or the Notes to the contrary notwithstanding, the Issuer and the Holders of the Class C Notes agree for the benefit of the Holders of the Class A Notes, the Class B-1 Notes and the Class B-2Notes, that the Class C Notes and the Issuer's rights in and to the Collateral (if any) (as related to the Class A Notes, the Class B-1 Notes and the Class B-2 Notes, the "Subordinate Interests") shall be subordinate and junior to the Class A Notes, the Class B-1 Notes and the Class B-2 Notes to the extent and in the manner set forth in this Indenture including as set forth in Section 5 hereto and hereinafter provided. If any Event of Default has not been cured or waived and acceleration occurs in accordance with Article V of the Standard Terms, including as a result of an Event of Default specified in Section 5.1(c) of the Standard Terms, the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes and the Class B-2 Notes shall be paid in full in Cash or, to the extent a Majority in Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes and the Class B-2 Notes consents, other than in Cash, before any further payment or distribution is made on account of the Subordinate Interests. The Holders of the Class C Notes agree, for the benefit of the Holders of the Class A Notes, the Class B-1 Notes and the Class B-2 Notes not to cause the filing of a petition in bankruptcy against the Issuer or the Co-Issuer for failure to pay to them amounts due under the Class C Notes hereunder until the payment in full of the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes and the Class B-2 Notes and not before one year and one day, or, if longer, the applicable preference period then in effect, has elapsed since such payment.

(c) Anything in this Series Indenture, the Standard Terms or the Notes to the contrary notwithstanding, the Issuer and the Holders of the Class D Notes agree for the benefit of the Holders of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes, that the Class D Notes and the Issuer's rights in and to the Collateral (if any) (as related to the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes, the "Subordinate Interests") shall be subordinate and junior to the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes to the extent and in the manner set forth in this Indenture including as set forth in Section 5 hereto and hereinafter provided. If any Event of

49

Default has not been cured or waived and acceleration occurs in accordance with Article V of the Standard Terms, including as a result of an Event of Default specified in Section 5.1(c) of the Standard Terms, the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes shall be paid in full in Cash or, to the extent a Majority in Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes consents, other than in Cash, before any further payment or distribution is made on account of the Subordinate Interests. The Holders of the Class D Notes agree, for the benefit of the Holders of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes not to cause the filing of a petition in bankruptcy against the Issuer or the Co-Issuer for failure to pay to them amounts due under the Class D Notes hereunder until the payment in full of the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes and the Class C Notes and not before one year and one day, or, if longer, the applicable preference period then in effect, has elapsed since such payment.

(d) Anything in this Series Indenture, the Standard Terms or the Notes to the contrary notwithstanding, the Issuer and the Holders of the Class E Notes agree for the benefit of the Holders of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes, that the Class E Notes and the Issuer's rights in and to the Collateral (if any) (as related to the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes, the "Subordinate Interests") shall be subordinate and junior to the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes to the extent and in the manner set forth in this Indenture including as set forth in Section 5 hereto and hereinafter provided. If any Event of Default has not been cured or waived and acceleration occurs in accordance with Article V of the Standard Terms, including as a result of an Event of Default specified in Section 5.1(c) of the Standard Terms, the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes shall be paid in full in Cash or, to the extent a Majority in Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes consents, other than in Cash, before any further payment or distribution is made on account of the Subordinate Interests. The Holders of the Class E Notes agree, for the benefit of the Holders of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes not to cause the filing of a petition in bankruptcy against the Issuer or the Co-Issuer for failure to pay to them amounts due under the Class E Notes hereunder until the payment in full of the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes and the Class D Notes and not before one year and one day, or, if longer, the applicable preference period then in effect, has elapsed since such payment.

(e) Anything in this Series Indenture, the Standard Terms or the Notes to the contrary notwithstanding, the Issuer and the Holders of the Class F Notes agree for the benefit of the Holders of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes, that the Class F Notes and the Issuer's rights in and to the Collateral (if any) (as related to the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes, the "Subordinate Interests") shall be subordinate and junior to the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes to the extent and in the manner set forth in this Indenture including as set forth in Section 5 hereto and hereinafter provided. If any Event of

Default has not been cured or waived and acceleration occurs in accordance with Article V of the Standard Terms, including as a result of an Event of Default specified in Section 5.1(c) of the Standard Terms, the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes shall be paid in full in Cash or, to the extent a Majority in Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes consents, other than in Cash, before any further payment or distribution is made on account of the Subordinate Interests. The Holders of the Class F Notes agree, for the benefit of the Holders of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes not to cause the filing of a petition in bankruptcy against the Issuer or the Co-Issuer for failure to pay to them amounts due under the Class F Notes hereunder until the payment in full of the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes and the Class E Notes and not before one year and one day, or, if longer, the applicable preference period then in effect, has elapsed since such payment.

(f) In the event that notwithstanding the provisions of this Indenture, any Holder of any Subordinate Interests shall have received any payment or distribution in respect of such Subordinate Interests contrary to the provisions of this Indenture, then, unless and until the Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes, the Class E Notes or the Class F Notes, as the case may be, shall have been paid in full in Cash or, to the extent a Majority in Aggregate Outstanding Amount of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes, the Class E Notes or the Class F Notes, as the case may be, consent other than in Cash in accordance with this Indenture, such payment or distribution shall be received and held in trust for the benefit of, and shall forthwith be paid over and delivered to, the Trustee, which shall pay and deliver the same to the Holders of the Class A Notes or the Class B-1 Notes, the Class B-2 Notes or the Class C Notes or the Class D Notes or the Class E Notes or the Class F Notes, as the case may be, in accordance with this Indenture; provided that, if any such payment or distribution is made other than in Cash, it shall be held by the Trustee as part of the Collateral and subject in all respects to the provisions of this Indenture, including, without limitation, this Section 7.

Section 8. Taxation.

(a) Certain Tax Forms and Treatment.

Each Holder and Beneficial Owner of a Note shall timely furnish the Issuer or its agents any U.S. federal income tax form or certification (such as IRS Form W-8BEN (Certification of Foreign Status as Beneficial Owner), IRS Form W-8IMY (Certification of Foreign Intermediary Status), IRS Form W-9 (Request for Taxpayer Identification Number and Certification), or IRS Form W-8ECI (Certification of Foreign Person's Claim for Exemption from Withholding on Income Effectively Connected with Conduct of a U.S. Trade or Business) or any successors to such IRS forms) that the Issuer or its agents may reasonably request and shall update or replace such form or certification in accordance with its terms or its subsequent amendments. Each Holder and Beneficial Owner of a Note understands that the Issuer may require certification acceptable to it (a) to permit the Issuer to make payments to it without, or at

51

a reduced rate of, withholding or (b) to enable the Issuer to qualify for a reduced rate of withholding in any jurisdiction from or through which the Issuer receives payments on its assets. Each Holder and Beneficial Owner of a Note agrees to provide any such certification that is requested by the Issuer.

(b) The Issuer intends, and each Holder and Beneficial Owner of Notes by acquiring Notes hereby agrees to treat the Notes as described in the "-- Certain U.S. Federal Income Tax Considerations" section of the Offering Memorandum for all U.S. federal income tax purposes and shall take no action inconsistent with such treatment unless required by law.

(c)    It is intended that the Issuer will be classified as a partnership and otherwise not as an association or publicly traded partnership taxable as a corporation for U.S. federal income tax purposes. To that end, the Issuer shall file (or caused to be filed), effective as of the date of the issuance of the Notes, an election with the U.S. Internal Revenue Service to be classified as a partnership for U.S. federal income tax purposes, in the time and manner as set forth under Treasury regulations Section 301.7701-3(c) and shall take (or cause to be taken) all actions that are necessary to ensure such election is valid and remains valid at all times. Neither the Issuer nor the Trustee on behalf of the Issuer shall take any action or make any election that would result in the Issuer being classified as an association or publicly traded partnership taxable as a corporation without the unanimous consent of all Holders.

(d) The Issuer shall hire accountants and the accountants shall cause to be prepared and filed for each taxable year of the Issuer the federal, state and local income tax returns, if any, which the Issuer is required to file, and copies of which returns shall be available for inspection and examination by each Holder and their respective representatives.

(e) If pursuant to paragraph (c) above the Issuer is treated as a partnership for U.S. federal income tax purposes:

(i)    The Issuer shall hire accountants, and the accountants shall cause to be prepared, and timely filed with the Internal Revenue Service all partnership tax returns, and furnished to Holders for each taxable year of the Issuer Schedules K-1 and information returns unless such returns and Schedules are not required to be filed and provided under law.

(ii)    In the event that a "tax matters partner" (within the meaning of Section 6231(a)(7) of the Code) is required to be appointed with respect to the Issuer, the Holder selected by a majority of the Holders (by beneficial interest) of the Issuer shall be designated as the tax matters partner, and in the absence of such designation, such partner shall be designated under Section 6231(a)(7) of the Code and the regulations thereunder.

(iii)    The taxable year of the Issuer shall be the calendar year.

(iv)    If so requested by a Holder and the Holder agrees to reimburse the Issuer for all costs associated with such election, the Issuer shall hire accountants, who shall cause to be filed with the initial and, to the extent necessary, any subsequent partnership tax return an election under Section 754 of the Code and the regulations thereunder to

52

adjust the basis of any Issuer property in the event of a distribution of Issuer property or a transfer of Notes.

(v)    Each Holder that transfers their Notes will be required to provide information required by the Issuer to satisfy its tax reporting obligations, which information may include the date of the transfer, the identity of the transferee, the transferee's fiscal year for federal income tax purposes, and the price of the sale. In addition, the transferor and the transferee will be required to reimburse the Issuer for any costs incurred by the Issuer in connection with a transfer.

(vi)    Capital accounts shall be maintained by the Issuer for each Holder in accordance with the Treasury regulations under Section 704(b) of the Code reflecting each such Holder's share of the income, gains, deductions, and losses of the Issuer and contributions to and distributions from the Issuer, as follows:

(A) There shall be credited any contributions to the Issuer (which shall be understood to be equal to the original issue price of the Notes), and any profits allocated to such Holder pursuant to Section 8(e)(vii).

(B)    There shall be debited the amount of cash and the fair market value of any distributions to such Holder, and any losses and expenses allocated to such Holder pursuant to Section 8(e)(vii).

(vii)    Allocations. The Issuer will allocate (i) the Class A Relevant Proportion of the income in respect of the Permitted Long-Term Investment to the holders of the Class A Notes, (ii) the Class B Relevant Proportion of the income in respect of the Permitted Long-Term Investment to the holders of the Class B-1 Notes or Class B-2 Notes, (iii) the Class C Relevant Proportion of the income in respect of the Permitted Long-Term Investment to the holders of the Class C Notes, (iv) the Class D Relevant Proportion of the income in respect of the Permitted Long-Term Investment to the holders of the Class D Notes, (v) the Class E Relevant Proportion of the income in respect of the Permitted Long-Term Investment to the holders of the Class E Notes, (vi) the Class F Relevant Proportion of the income in respect of the Permitted Long-Term Investment to the holders of the Class F Notes, (vi) the income in respect of the Permitted Short-Term Investments, if any, associated with each Class of Notes to the holders of the associated Class of Notes in proportion to the Aggregate Outstanding Amount of their Notes, (vii) the Issuer's income and expense in respect of the Credit Swap associated with each Class of Notes to the holders of the associated Class of Notes in proportion to the Aggregate Outstanding Amount of their Notes, and (viii) losses and expenses (other than expenses allocated under (viii) above and losses attributable to accrued and unpaid interest, which will be allocated among the holders of the Notes based on the relative amount of the accrued and unpaid interest on the Notes) first to the holders of the Class F Notes to the extent of their capital accounts, then to the holders of the Class E Notes to the extent of their capital accounts, then to the holders of the Class D Notes to the extent of their capital accounts, then to the holders of the Class C Notes to the extent of their capital accounts, then to the holders of the Class B-1 Notes and Class B-2 Notes to the extent of

53

their capital accounts, and then to the holders of the Class A Notes to the extent of their capital accounts.

(viii)    All allocations of the Issuer items to Holders of a Class of Notes made pursuant to Section 8(e)(vii) shall be made *pro rata* among such Holders.

(ix)    It is intended by the parties that the allocations provided in Section 8(e)(vii) reflect the entitlements provided under Section 4 hereto and shall be interpreted consistently therewith.

(x)    Transfers. Unless otherwise required by the Code, if a Note is transferred then, for the calendar year of the transfer, except as otherwise provided in Section 8(e)(vii), all allocations of gain, income, loss and deduction shall be allocated between the transferor and transferee based on the number of days in the calendar year preceding and including the date of transfer, on the one hand, and following the transfer, on the other. All other items of income and loss shall be allocated to the transferee. The Issuer will report allocations of partnership items consistently with this provision, and Holders, through their investment in the Issuer, hereby consent to this allocation methodology.

(f) Each Holder that is a United States person for U.S. federal income tax purposes, by purchasing a Note agrees, to directly report income, gain, loss and deductions with respect to its ownership interest in the Notes in a manner consistent with the allocations set forth in this Section 8 and consistent with the statements described in the Offering Memorandum under the heading, "Certain U.S. Federal Income Tax Considerations."

(g) Notwithstanding any provision herein to the contrary, the Issuer, or the Trustee on behalf of the Issuer, may take any and all actions that may be necessary or appropriate to insure that the Issuer satisfies any and all withholding and tax payment obligations under Code Sections 1441, 1445, 1446 or any other provision of the Code or other applicable law. Without limiting the generality of the foregoing, the Issuer may withhold any amount that it or any advisor retained by the Trustee on its behalf determines is required to be withheld from any amounts otherwise distributable to any Holder of a Note. The amount of any such withholding shall be treated as cash distributed to such Holder at the time it is withheld.

Section 9. Rating Agency Confirmation.

The issue of any further series or classes of notes not rated by S&P (including those issued from separate segregated portfolios) shall be subject to receipt of Rating Agency Confirmation.

Section 10. Accounts and Reports.

(a) Payment Account. The Trustee shall, on or prior to the Closing Date, establish at the Accounts Securities Intermediary two segregated non-interest bearing trust accounts in the name of "Penn's Landing CDO SPC, on account of the Series 2007-1 Segregated Portfolio, subject to the lien of U.S. Bank National Association as Trustee", which shall be designated as the Interest Collections Payment Account and the Principal Collections Payment

30775-00042 NY:2152055.4

Account, which shall be held by the Accounts Securities Intermediary in trust for the benefit of the Trustee for the benefit of the Secured Parties and over which the Trustee shall have exclusive control and sole right of withdrawal. The Trustee shall cause the Account Securities Intermediary to credit (i) all Principal Collections and/or amounts received by the Issuer under the Policy (if any) into the Principal Collections Payment Account and (ii) all Interest Collections and the liquidation proceeds of the Credit Swap Posted Amount and/or payments received by the Issuer from the Credit Swap Guarantor into the Interest Collections Payment Account. All Monies deposited from time to time in the Principal Collections Payment Account and the Interest Collections Payment Account pursuant to this Indenture shall be held in trust by the Trustee as part of the Collateral and shall be applied to the purposes provided herein. Following the Scheduled Final Payment Date, the balance standing to the credit of the Principal Collections Payment Account representing the proceeds of redemption of the Permitted Long-Term Investment shall only be invested in cash or money market instruments rated AAAm by S&P.

The Trustee shall, at the written direction of the Credit Swap Counterparty, invest amounts on deposit in the Principal Collections Payment Account and the Interest Collections Payment Account in Permitted Short-Term Investments that mature before the next Payment Date. The only permitted withdrawals from, or application of funds on deposit in, or otherwise to the credit of, the Principal Collections Payment Account and the Interest Collections Payment Account shall be to make the payments specified herein in accordance with the Priority of Payments. The Accounts Securities Intermediary, acting on behalf of the Trustee agrees to give the Issuer prompt notice if a responsible officer thereof becomes aware that the Principal Collections Payment Account or the Interest Collections Payment Account or any funds on deposit in such Accounts, or otherwise to the credit of such Accounts, shall become subject to any writ, order, judgment, warrant of attachment, execution or similar process. The Co-Issuers shall not have any legal, equitable or beneficial interest in the Principal Collections Payment Account or the Interest Collections Payment Account other than in accordance with the Priority of Payments.

(b) Closing Date Deposit Account. The Trustee shall, prior to the Closing Date, establish a single, segregated non-interest bearing trust account which may be maintained at the Corporate Trust Office, and which shall be designated as the Closing Date Deposit Account, for the benefit of the Noteholders and over which the Trustee shall have exclusive control and the sole right of withdrawal. On the Closing Date the proceeds of the offering of the Class A Notes, the Class B-1 Notes, the Class B-2 Notes, the Class C Notes, the Class D Notes, the Class E Notes and the Class F Notes will be paid to the Trustee for deposit into the Closing Date Deposit Account and shall be used by the Trustee to acquire the Permitted Long-Term Investment, in each case as directed by the Issuer. The Closing Date Deposit Account shall be closed promptly following the acquisition of the Permitted Long-Term Investment.

(c) Credit Swap Posted Amount Account. The Trustee shall, on or prior to the Closing Date establish at the Accounts Securities Intermediary, a segregated, non-interest bearing trust account in the name of "Penn's Landing CDO SPC, on account of the Series 2007-1 Segregated Portfolio, subject to the lien of U.S. Bank National Association as Trustee", which shall be designated as the Credit Swap Posted Amount Account, which shall be held by the Accounts Securities Intermediary in trust for the benefit of the Secured Parties and over which

55

the Trustee shall have exclusive control and sole right of withdrawal and into which the Trustee shall from time to time deposit the Credit Swap Posted Amounts pledged pursuant to the Credit Swaps (being either cash or money market instruments rated AAAm by S&P); *provided that* the Credit Swap Posted Amounts and any investment earnings thereon shall not be deemed to be Collateral unless there has been a Failure to Fund. Upon a Failure to Fund, the Trustee shall promptly exercise the Issuer's remedies under the relevant Credit Swap, including liquidating the Credit Swap Posted Amount (subject, however, to the Trustee's right first to be indemnified to its reasonable satisfaction for any associated costs, expenses and liabilities). The Issuer agrees to apply the proceeds of any such liquidation toward Interest Collections for distribution in accordance with the applicable Priority of Payments; *provided that* any liquidation proceeds in excess of the amounts owed by the Credit Swap Counterparty shall be paid by the Issuer to the Credit Swap Counterparty and shall not be available to make any payments in respect of the Notes. The Credit Swap Posted Amount and any investment earnings thereon shall be withdrawn from the Credit Swap Posted Amount Account and delivered to the Credit Swap Counterparty in accordance with the written instructions of the Credit Swap Counterparty.

(d) <u>Monthly Report</u>. Pursuant to the terms of the Portfolio Administration Agreement, and based upon the information maintained by the Portfolio Administrator thereunder, as of each Determination Date (or if such day is not a Business Day, on the next succeeding Business Day) the Portfolio Administrator shall compile a monthly report (the "**Monthly Report**"). The Monthly Report will be posted on the website maintained by the Portfolio Administrator for the benefit of the Holders and Beneficial Owners of Notes, the Portfolio Administrator and the Rating Agency. The Monthly Report will contain the following information (as such terms are defined in the Credit Swaps) relating to the prior Monthly Report Period:

(1) A list of the Reference Entities, Reference Entity Calculation Amounts and the ratings of the Reference Entities;

a.    Reference Portfolio Guidelines and compliance;

b.    Aggregate Trading Adjustments and related Net Loss Balance and Net Gain Balance;

c.    Reference Portfolio Modifications (itemized); and

d.    A list of the Adjustment Reference Entities.

(2) Changes in each Rating Agency's rating of each Reference Entity, including any change in credit watch;

(3) If a Reference Portfolio Modification has occurred during the prior Monthly Period, the S&P SROC;

(4) Whether or not a Credit Event has occurred or is continuing and, if so:

a.  the Reference Entity with respect to which such Credit Event has occurred;

b.  the Final Price, if such price has been determined;

c.  the Reference Entity Loss Amount, if such amount has been determined; and

d.  the applicable Aggregate Loss Amount, if such amount has been determined.

(5) The Aggregate Outstanding Amount of the Notes on the preceding Payment Date or the Scheduled Final Payment Date (as and to the extent applicable) and the interest and principal payments with respect thereto that were paid on such payment date; and

(6) The interest payable on the Notes on the next Payment Date and the amount of principal payments (if any) to be made on the Notes on the next Payment Date.

(e)  A copy of the current Reference Registry shall be provided by the Trustee to any Holder or Beneficial Owner of Notes promptly following the Trustee's receipt of a request therefor from such Holder or Beneficial Owner.

Capitalized terms used in this Section 10(d) and 10(e) but not otherwise defined in this Indenture shall have the meanings assigned to such terms in the Credit Swaps.

Section 11. Calculation Agent.

(a)  The Co-Issuers hereby agree that for so long as any of the Notes remain Outstanding there will at all times be a calculation agent appointed to calculate LIBOR in respect of each Accrual Period for the Notes in accordance with the terms of Schedule A attached hereto (the "**Calculation Agent**").  The Trustee is hereby appointed as the initial Calculation Agent.

(b)  The Calculation Agent may be removed by the Co-Issuers at any time.  If the Calculation Agent is unable or unwilling to act as such or is removed by the Co-Issuers or if the Calculation Agent fails to determine LIBOR, for any applicable Accrual Period, the Co-Issuers shall promptly appoint as a replacement Calculation Agent a leading bank which is engaged in transactions in U.S. Dollar deposits in the international market and which does not control and is not controlled by or under common control with the Co-Issuers or any of their Affiliates.  The Calculation Agent may not resign its duties without a successor having been duly appointed. The determination of LIBOR for each applicable Accrual Period by the Calculation Agent, shall (in the absence of manifest error) be final and binding upon all parties.

Section 12. Rating Letter.  Notwithstanding anything to the contrary in Section 3.2(c) of the Standard Terms and subject to this Section 12, the Notes may be executed by the Co-Issuers and delivered to the Trustee for authentication, and thereupon the same shall be authenticated and delivered to the Issuer by the Trustee upon Issuer Order and upon delivery by the Issuer to the

57

Trustee, and receipt by the Trustee of a letter signed by S&P confirming that the Class A Notes have been rated "AAA" by S&P, the Class B-1 Notes and the Class B-2 Notes have been rated at least "AA" by S&P, the Class C Notes have been rated at least "A" by S&P, the Class D Notes have been rated at least "BBB" by S&P and the Class E Notes have been rated at least "BB-" by S&P. The Class F Notes will not be rated.

Section 13.Legal Holidays.  In the event that the date of any payment date shall not be a Business Day, then notwithstanding any other provision of the Notes or this Indenture, payment need not be made on such date, but may be made on the next succeeding Business Day and the actual number of days elapsed during the applicable Accrual Period shall be adjusted to take into account the number of days elapsed as a result of the payment date being adjusted to the next succeeding Business Day.

Section 14. Amendment. Notwithstanding anything to the contrary in the Standard Terms, the Issuer may not agree to amend this Indenture without the consent of Lehman Brothers Special Financing Inc.

Section 15.Governing Law.

**THIS SERIES INDENTURE AND THE NOTES SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED WITHIN THE STATE OF NEW YORK AND WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAWS PROVISIONS THEREOF.**

Section 16.Process Agent

The Issuer has designated and has appointed Corporation Service Company, located at 1133 Avenue of the Americas, Suite 3100, New York, New York 10036, or such other Persons in the State of New York as may hereafter be selected by such party agreeing in writing to so serve, as its agent to receive on its behalf service of all process in any such proceedings in any such court, such service being hereby acknowledged by such party to be effective and binding service in every respect.  If for any reason such agent shall cease to be available to act as such, then the Issuer shall promptly designate a new agent in the State of New York.  A copy of any such process so served shall be mailed by registered mail to the applicable party at its registered address; *provided, however,* that, unless otherwise provided by applicable law, any failure to mail such copy shall not affect the validity of service of such process.  If any agent appointed by the Issuer refuses to accept service, such party hereby agrees that service of process sufficient for personal jurisdiction in any action against it in the State of New York may be made by registered or certified mail, return receipt requested, to such party at its address, and such party hereby acknowledges that such service shall be effective and binding in every respect. Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of any party hereto to bring proceedings against any other party hereto in the courts of any other jurisdiction.

30775-00042 NY:2152055.4

Section 17.Counterparts.

This Series Indenture may be executed in any number of counterparts, each of which shall be deemed an original, and all of which taken together shall constitute but one and the same instrument.

Section 18.Non-Confidential.

Notwithstanding anything to the contrary contained in this Indenture, all persons may disclose to any and all persons, without limitation of any kind, the U.S. federal, state and local tax treatment of the Notes and the Issuer, any fact that may be relevant to understanding the U.S. federal, state and local tax treatment of the Notes and the Issuer, and all materials of any kind (including opinions or other tax analyses) relating to such U.S. federal, state and local tax treatment and that may be relevant to understanding such U.S. federal, state and local tax treatment, other than the name of the parties or any other person named herein, or information that would permit identification of the parties or such other persons, and any pricing terms or other nonpublic business or financial information that is unrelated to the U.S. federal, state and local tax treatment of the Notes and the Issuer to the taxpayer and is not relevant to understanding the U.S. federal, state and local tax treatment of the Notes and the Issuer to the taxpayer.

Section 19. Amendment and Restatement.

This amended and restated Series Indenture amends and restates in its entirety that certain series indenture dated as of April 10, 2007, among the Co-Issuers and the Trustee.

[Signature Page Follows]

59

IN WITNESS WHEREOF, the parties hereto have caused this Series Indenture to be duly executed by their respective authorized officers as of the date first written above.

Penn's Landing CDO SPC
    for the account of the Series 2007-1
    Segregated Portfolio,
    as Issuer

By: _____
    Name:  **Wendy Ebanks**
    Title:   Director

Penn's Landing CDO LLC,
    as Co-Issuer

By: _____
    Name:
    Title:

U.S. BANK NATIONAL ASSOCIATION,
    as Trustee and Portfolio Administrator

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Series Indenture to be duly executed by their respective authorized officers as of the date first written above.

Penn's Landing CDO SPC
    for the account of the Series 2007-1
    Segregated Portfolio,
    as Issuer


By:_____
    Name:
    Title:


Penn's Landing CDO LLC,
    as Co-Issuer


By:_____
    Name:    Donald J. Puglisi
    Title:    Manager


U.S. BANK NATIONAL ASSOCIATION,
    as Trustee and Portfolio Administrator


By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Series Indenture to be duly executed by their respective authorized officers as of the date first written above.

Penn's Landing CDO SPC
    for the account of the Series 2007-1
    Segregated Portfolio,
    as Issuer


By: _____
    Name:
    Title:


Penn's Landing CDO LLC,
    as Co-Issuer


By: _____
    Name:
    Title:


U.S. BANK NATIONAL ASSOCIATION,
    as Trustee and Portfolio Administrator


By: _____
    Name:    Siu Man Lule
    Title:    Assistant Vice President

Series Indenture – Penn's Landing – A&R

## SCHEDULE A

With respect to each Accrual Period, "LIBOR" will be determined by the Calculation Agent in accordance with the following provisions for purposes of calculating the Rate of Earnings (as defined in the Investment Agreement) and the Note Interest Rate:

        LIBOR for any Accrual Period shall equal the offered rate, as obtained by the Calculation Agent, for U.S. Dollar deposits of the applicable Designated Maturity which appears on Telerate Page 3750 (or such other page as may replace such Telerate Page 3750 for the purpose of displaying comparable rates) as of 11:00 a.m. (London time) on the applicable LIBOR Determination Date as reported by Bloomberg Financial Markets Commodities News. "LIBOR Determination Date" means, with respect to any Accrual Period, the second London Banking Day prior to the first day of such Accrual Period.

        If, on any LIBOR Determination Date, such rate does not appear on Telerate Page 3750 (or such other page as may replace such Telerate Page 3750 for the purpose of displaying comparable rates), the Calculation Agent shall determine the arithmetic mean of the offered quotations of the Reference Banks to prime banks in the London interbank market for U.S. Dollar deposits of the Designated Maturity (except that in the case where such Accrual Period shall commence on a day that is not a Business Day, for the relevant term commencing on the next following Business Day), by reference to requests for quotations as of approximately 11:00 a.m. (London time) on such LIBOR Determination Date made by the Calculation Agent to the Reference Banks. If, on any LIBOR Determination Date, at least two of the Reference Banks provide such quotations, LIBOR shall equal such arithmetic mean. If, on any LIBOR Determination Date, fewer than two Reference Banks provide such quotations, LIBOR shall be deemed to be the arithmetic mean of the offered quotations that one or more leading banks in New York City selected by the Calculation Agent (after consultation with the Issuer) are quoting on the relevant LIBOR Determination Date for U.S. Dollar deposits for the term of such Accrual Period (except that in the case where such Accrual Period) shall commence on a day that is not a Business Day, for the relevant term commencing on the next following Business Day), to the principal London offices of leading banks in the London interbank market.

        If the Calculation Agent is required but is unable to determine a rate in accordance with at least one of the procedures described above, LIBOR with respect to such Accrual Period shall be the arithmetic mean of the Base Rate for each day during such Accrual Period.

        For purposes of clause (i) above, all percentages resulting from such calculations shall be rounded, if necessary, to the nearest one hundred-thousandth of a percentage point. For the purposes of clauses (ii) and (iii) above, all percentages resulting from such calculations shall be rounded, if necessary, to the nearest one thirty-second of a percentage point.

        As used herein:

        "**Base Rate**" means a fluctuating rate of interest determined by the Calculation Agent as being the rate of interest most recently announced by the Base Rate Reference Bank at

its New York office as its base rate, prime rate, reference rate or similar rate for U.S. Dollar loans. Changes in the Base Rate will take effect simultaneously with each change in the underlying rate.

"**Base Rate Reference Bank**" means Morgan Guaranty Trust Company of New York, or if such bank ceases to exist or is not quoting a base rate, prime rate, reference rate or similar rate for U.S. Dollar loans, such other major money center commercial bank in New York City as is selected by the Calculation Agent.

"**Designated Maturity**" has the meaning specified in <u>Section 2</u> of the Series Indenture.

"**London Banking Day**" means a day on which commercial banks are open for business (including dealings in foreign exchange and foreign currency deposits) in London.

"**Reference Banks**" means four major banks in the London interbank market selected by the Calculation Agent.

The determination of LIBOR for each Accrual Period by the Calculation Agent shall (in the absence of manifest error) be final and binding upon all parties.

Appendix A

## STANDARD TERMS FOR INDENTURES

[*TO BE INSERTED*]

30775-00042 NY:2152055.4