**OBJECTION DEADLINE: November 10, 2011**

Thomas J. Moloney
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for LVFN Partners, L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
: 
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    08-13555 (JMP)
                                                   :
     Debtors.                                      :    (Jointly Administered)
                                                   :
                                                   :
----------------------------------------------------------------x

**OBJECTION AND RESERVATION OF RIGHTS OF LVFN PARTNERS, L.P. TO
DEBTORS' PROPOSED ASSUMPTION OF CERTAIN CONTRACTS
PURSUANT TO THEIR THIRD AMENDED JOINT CHAPTER 11 PLAN**

LVFN Partners, L.P. ("LVFN"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the proposed assumption by Lehman Brothers Special Financing Inc. ("LBSF") of certain contracts between LVFN and LBSF pursuant to (i) the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (collectively, the "Debtors"), dated August 31, 2011 (D.I. 19627, the "Plan"), (ii) the Plan Supplement, dated October 25, 2011 (D.I. 21254, the "Plan Supplement"), and (iii) the Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011 (the "Assumption Notice"). In support of its Objection, LVFN respectfully states as follows:

**BASIS FOR OBJECTION**

1.     The Debtors have failed to specifically identify the LVFN contracts they propose to assume in connection with their Plan, either by title, by date or otherwise.  Instead, the Debtors' Assumption Notice indicates that the Debtors intend to assume "all derivative contracts" between LVFN and LBSF.  While LVFN has both consulted with the Debtors and undertaken reasonable efforts to identify any such contracts, it has not identified any outstanding derivative contracts between LVFN and LBSF that the Debtors may assume pursuant to Section 1123(b)(2).  Indeed, as a result of its own investigation, the only derivative contracts that LVFN has identified with LBSF were terminated in June 2009.  As such, there remain no mutual outstanding obligations under those agreements that would render them executory, as the Bankruptcy Code would require in order to permit assumption.

**FACTS AND PROCEDURAL HISTORY**

2.     On Monday, September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), and on October 3, 2008 (the "Petition Date") LBSF, commenced voluntary cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Periodically thereafter, certain of LBHI's other affiliates commenced their own voluntary cases under Chapter 11 of the Bankruptcy Code.  The cases of LBHI, LBSF and their affiliated debtors (collectively, the "Debtors") are jointly administered.

3.     Prior to the Petition Date, LVFN, Lehman Brothers Inc. ("LBI"), Lehman Brothers Special Lending LLC ("LBSL"), and Relationship Funding Company, LLC entered into an Amended and Restated Note Purchase Agreement, dated as of October 23, 2007 (the "Note Purchase Agreement") pursuant to which it issued certain notes (the "Notes").[1]

---

[1]     A true and correct copy of the Note Purchase Agreement is attached as Exhibit A to the Declaration of Luke A. Barefoot dated November 10, 2011 (the "Barefoot Decl."), filed concurrently herewith.

4.      In connection with the Note Purchase Agreement, LVFN and LBSF entered into two interest rate swaps. The first such swap agreement, with a trade date of March 19, 2008 and evidenced by Lehman Global Deal ID 3724533, provided for LVFN to pay 3.065% per annum, while LBSF would pay LIBOR, each on $100 million in notional amount (the "3.065% Swap"). See Barefoot Decl. Ex B. The second swap agreement, with trade date of April 25, 2008 and evidenced by Lehman Global Deal ID 3795484, provided for LVFN to pay 3.79% per annum, while LBSF would pay LIBOR, each on $100 million in notional amount (the "3.79% Swap", and together with the 3.065% Swap, the "Swap Agreements"). See Barefoot Decl. Ex C.

5.      The Swap Agreements made express reference to the Note Purchase Agreement. See Barefoot Decl. Ex B at 1, Ex C at 1. Conversely, the Note Purchase Agreement incorporates the Swap Agreements, which were entered into in connection with the Note Purchase Agreement, as part of the "entire understanding" between the parties. Barefoot Decl. Ex A at Section 8.03(c), Schedule 1.01-10. The Swap Agreements also include a provision entitled "Automatic Termination Upon [LVFN] Reduction of Aggregate VFN Outstanding Amount". Id. Ex B. at 4, Ex C at 4. This provision contemplated that in the event the amount of Notes outstanding under the Note Purchase Agreement was less than the notional amount of the Swap Agreements, there would be a corresponding reduction in the notional amount. Id.

6.      On December 16, 2008, this Court entered its Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (D.I. 2257, the "Derivative Settlement Order"). The Derivative Settlement Order authorized the Debtors to, *inter alia*, enter into and

3

consummate termination agreements with counterparties to derivative contracts. See Derivative Settlement Order at 8.

7. Pursuant to the Derivative Settlement Order, LBSF entered into a Termination and Release Agreement dated June 12, 2009 with (among other parties) LVFN (the "Termination Agreement"). See Barefoot Decl. Ex D. The Termination Agreement provided for redemption of the Notes, after which "all rights, obligations, liabilities, covenants, interests and claims relating [to the Note Purchase Agreement] shall be cancelled, terminated and extinguished and be of no further force or effect." Id. at 2-3. The Termination Agreement further stated that upon redemption "all Parties [including LVFN and LBSF] shall be released and discharged with respect to and from all obligations under or in connection with the Note Purchase Agreement." Id.

8. The Debtors' Plan contemplates that the Debtors will assume, pursuant to Section 1123(b)(2) of the Bankruptcy Code, those executory contracts and unexpired leases that are designated in the Plan Supplement. Plan, § 11.1(c). The Plan Supplement includes unspecified derivative contracts between LVFN and LBSF. Plan Supplement, Ex. 2, Part A at 80.[2] In the Assumption Notice served upon LVFN, the Debtors propose a cure amount of zero dollars. See Barefoot Decl. Ex E. However, the Plan also reserves the Debtors' rights to supplement or amend the Plan Supplement to add additional executory contracts or unexpired leases on or prior to the Confirmation Date (as defined in the Plan). Plan, § 11.1(c).[3]

---

[2] Through counsel, LVFN has contacted the Debtors and requested clarification of which particular contracts between LVFN and LBSF, if any, the Debtors intended to designate for assumption. As of the objection deadline, the Debtors had not completed their investigation in order to respond.

[3] While the Debtors filed their Amendment No. 1 to the Plan Supplement on November 4, 2011 (D.I. 21655), removing certain contracts from the schedule of agreements designated for assumption, that amendment did not include or affect LVFN.

## ARGUMENT

9. Under Section 365 of the Bankruptcy Code, a Debtor may only assume those contracts that are executory, meaning that there are remaining obligations of both parties that if not performed, would constitute a material breach of the agreement. COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 379 (2d Cir. 2008). Where the parties take action post-petition to terminate all material obligations, a contract becomes non-executory and is not susceptible to assumption. See In re Worldcom, Inc., No. 02-13533 (AJG), 2010 Bankr. LEXIS 1917 at * 22-23 (Bankr. S.D.N.Y. June 11, 2010); In re Spectrum Info. Techs., 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996); see also Penn Traffic, 524 F.3d at 381 (acknowledging that a formerly executory contract would lose executory status where "the debtor itself had taken affirmative action under a contract that affected the existence of outstanding performance obligations.").

10. The Termination Agreement extinguishes and terminates all of the obligations, rights and claims of both LVFN and LBSF relating to the Note Purchase Agreement and discharges all obligations "in connection with the Note Purchase Agreement." Barefoot Decl. Ex D at 2-3. The Swap Agreements were entered into in connection with the Note Purchase Agreement. The Swap Agreements make specific reference to the Note Purchase Agreement (Barefoot Decl. Ex B at 1, Ex C at 1), and incorporate by reference certain of its defined terms (Barefoot Decl. Ex B at 4, Ex C at 4 (referencing the "Aggregate VFN Outstanding Amount (as defined in the Note Purchase Agreement)"). Moreover, the Swap Agreements included an "automatic termination" provision triggered by reduction of the amount of Notes outstanding below the notional amount of the Swap Agreements.[4]

---

[4] Indeed, the Note Purchase Agreement provides that the agreements such as the Swap Agreements, which were entered into in connection with the Note Purchase Agreement, represent part of the agreement between the

5

11. Upon effectiveness of the Termination Agreement, there are thus no remaining material obligations of either LBSF or LVFN under the Swap Agreements. LBSF took intentional action, pursuant to the Derivative Procedures Order, to terminate and release those obligations. As a result, the Swap Agreements are no longer executory, and cannot be assumed pursuant to Sections 1123(b)(2) and 365 of the Bankruptcy Code. See Penn Traffic, 524 F.3d at 381; Spectrum Info, 193 B.R. at 404.

### RESERVATION OF RIGHTS

12. To the extent that, subsequent to the filing of this Objection, the Debtors identify contracts other than the Swap Agreements that are purportedly included in the Assumption Notice, or amend the Plan Supplement to include additional contracts or leases to which LVFN is a party, LVFN reserves its rights to supplement this Objection (including, without limitation, as to any cure amounts payable in connection with such subsequently-identified agreements).

---

parties. Barefoot Decl. Ex A at § 8.03(c). As such, even if the Swap Agreements remained executory (which they do not), they could only be assumed as part and parcel of the Note Purchase Agreement, which LBSF does not and cannot seek to assume. See, e.g., In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994) (where parties have memorialized their understanding in separate instruments, those instruments are a single unitary contract that can only be assumed as a whole).

## **REQUEST FOR RELIEF**

WHEREFORE, for the reasons set forth herein, LVFN respectfully requests that this Court: (a) exclude the Interest Rate Swaps from the schedule of executory contracts designated for assumption pursuant to Section 11.1 of the Plan; and (b) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
      November 10, 2011

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Thomas J. Moloney

Thomas J. Moloney
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for LVFN Partners, L.P.*