Hearing Date: December 6, 2011

SEWARD & KISSEL LLP
Jack Yoskowitz, Esq. (JY-3935)
Benay L. Josselson, Esq. (BJ-1278)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Liberty Square CDO I, Ltd. and Liberty Square CDO II, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>08-13555 (JMP)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF LIBERTY SQUARE CDO I, LTD. AND LIBERTY SQUARE CDO II, LTD. TO THE DEBTORS' PROPOSED ASSUMPTION OF CONTRACTS SET FORTH IN THE PLAN SUPPLEMENT**

Liberty Square CDO I, Ltd. ("Liberty Square I") and Liberty Square CDO II, Ltd. ("Liberty Square II", and together with Liberty Square I, the "Issuers"), by and through their undersigned counsel, file this limited objection ("Limited Objection") to the above captioned debtors and debtors-in-possession (collectively "Debtors") proposed assumption of certain contracts that are set forth in the Debtors' Plan Supplement, dated October 25, 2011 [Docket No. 21254] and respectfully submit as follows:

## BACKGROUND

1. Liberty Square I was the derivatives counterparty pursuant to that certain Master Agreement (including all schedules, confirmations and credit support annexes related thereto, the

"Liberty Square I Master Agreement") dated as of March 2, 2001 with Lehman Brothers Financial Products Inc. ("LBFP") and Liberty Square II was the derivatives counterparty pursuant to that certain Master Agreement (including all schedules, confirmations and credit support annexes relating thereto, "Liberty Square II Master Agreement", together with Liberty Square I Swap, the "Master Agreements") dated as of May 8, 2001 with LBFP. Lehman Brothers Holdings, Inc. ("LBHI") was the credit support provider under the Master Agreements.

2.  With regard to the Master Agreements, the Issuers' respective rights and obligations are set forth in the Indenture dated March 14, 2001, by and among Liberty Square I, as issuer, Liberty Square CDO I, Corp., as co-issuer and The Chase Manhattan Bank, as trustee, and the Indenture dated May 8, 2001, by and among Liberty Square II, as issuer, Liberty Square CDO II, Corp, as co-issuer and The Chase Manhattan Bank, as trustee. The Bank of New York Mellon Trust Co. ("Trustee") succeeded to The Chase Manhattan Bank as trustee under the Indentures.

3.  Wellington Management Company, LLP (the "Investment Advisor") is the investment advisor to the respective Issuers pursuant to the Investment Advisory Agreement dated March 14, 2001 between Liberty Square I and the Investment Advisor and the Investment Advisory Agreement dated May 8, 2001 between Liberty Square II and the Investment Advisor.

4.  LBHI and certain of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York on September 15, 2008. On October 5, 2008, LBFP filed a voluntary petition. The Debtors' chapter 11 cases are being jointly administered in this Court.

5.  In October 2008, the Investment Advisor, on behalf of the Issuers, terminated the Master Agreements and designated October 22, 2008 as the Early Termination Date for all open transactions under the Master Agreements. On or around November 24, 2008, the Investment Advisor, on behalf of the Issuers, sent calculation statements to LBFP with respect to the early termination of the Master Agreements. LBFP has not contested the termination of the Master Agreements.

6.  On or around April 23, 2010, LBFP sent the Issuers, the Trustee and the Investment Advisor Derivatives ADR Notice No. 159 (the "ADR Notice") in accordance with the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts, dated September 17, 2009 [Docket No. 5207], which disputes the computation and application of the early termination payments.

7.  On or around September 2, 2011, the Issuers served a response ("Response") to the ADR Notice. The parties are currently engaged in discussions in connection with the issues raised in the ADR Notice and Response.

8.  On or around September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan (the "Plan") [Docket No. 19627]. Section 11.1 and 11.2 of the Plan together provide for the Debtors' assumption of contracts designated in the Plan Supplement upon confirmation of the Plan and the occurrence of the Plan effective date.

9.  On or around October 25, 2011, the Debtors filed the Plan Supplement which, among other things, sets forth a schedule of executory contracts and unexpired leases that the Debtors intend to assume pursuant to section 11.1 of the Plan. Plan Supplement, Ex. 2. The Master Agreements are not specifically identified in the Plan Supplement; however, page 79 of

Exhibit 2 to the Plan Supplement lists each Issuer as a derivatives counterparty with respect to certain derivatives contracts with LBFP.

10. In addition, the Issuers each received a Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code ("Cure Notices"), dated October 27, 2011. The Cure Notices provide, among other things, that if the Issuers do not file an objection on or before November 10, 2011, they will be deemed to have consented to the Debtors' assumption of the Master Agreements and will be bound by the Debtors' $0 cure amount.

11. The Issuers have had preliminary discussions with the Debtors in connection with the proposed assumption of the Master Agreements and the issues raised herein, but have been unable to reach a resolution. The Issuers are filing this Limited Objection to preserve their rights in the event the parties are unable to reach a resolution.

## LIMITED OBJECTION

12. Section 365(a) of the Bankruptcy Code allows the Debtors to assume or reject "executory contracts" subject to the court's approval. 11 U.S.C. § 365(a). Although the Bankruptcy Code does not define the term "executory contract", courts have adopted Professor Vern Countryman's definition which provides that an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Regen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.), 547 F.3d 484, 488 n.1 (2d Cir. 2008) (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)); 3 Collier on Bankruptcy ¶ 365.02[2][a] (15th ed. rev. 2011).

13.     A terminated contract in which the only remaining material obligation is the payment of money is not an executory contract. See e.g., In re Spectrum Info. Techs., Inc., 190 B.R. 741, 752 (Bankr. E.D.N.Y. 1996) (terminated contracts were not executory where only outstanding material obligation was to make termination payments); In re Chateaugay Corp., 102 B.R. 335, 347 (Bankr. S.D.N.Y. 1989) (mere potential for payment of money under contracts was not deemed sufficient to make contracts executory).

14.     As noted above, the Master Agreements have been terminated, and the only remaining dispute under the Master Agreements concerns the early termination payments, which is being resolved by the parties through the ADR procedures. Accordingly, the Master Agreements are not executory contracts that the Debtors are entitled to assume under Section 365 of the Bankruptcy Code.

15.     To the extent that the Master Agreements are found to be executory contracts, the Issuers object to the Debtors' $0 cure amount and reserve the right to assert a cure claim for any defaults, breaches of representations, warranties, covenants or other amounts that LBFP may owe the Issuers under the Master Agreements.

## RESERVATION OF RIGHTS

16.     The Issuers reserve the right to assert additional objections and to amend, modify or supplement this Limited Objection in any way.

17.     The Issuers further reserve the right to assert any and all claims and defenses in the ADR proceeding, and nothing contained herein shall be construed as a waiver of any rights or remedies of the Issuers with respect to any claims or defenses in connection with the ADR proceeding. Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of the Issuers with respect to any other claims that the Issuers, the Trustee, the

Investment Advisor, the holders or any other party in interest may have under the Master Agreements or otherwise.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Issuers (i) object to the Debtors' proposed assumption of the Master Agreements under the Plan and (ii) respectfully request that this Court remove the Master Agreements from the list of executory contracts that are being assumed under the Plan and grant the Issuers such other and further relief as the Court may deem just and proper.

Dated: New York, New York

November 10, 2011

                          SEWARD & KISSEL LLP

By:  /s/ Jack Yoskowitz
      Jack Yoskowitz

Jack Yoskowitz, Esq. (JY-3935)
Benay L. Josselson, Esq. (BJ-1278)
One Battery Park Plaza
New York, New York 10004
(212) 574 – 1200

*Attorneys to Liberty Square CDO I, Ltd.
and Liberty Square CDO II, Ltd.*

7