Hearing Date: December 6, 2011 at 10:00 a.m. (EST)

GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
Telephone: (617) 310-6025
Facsimile: (617) 279-8425
John A. Sten
Joseph P. Davis

GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9278
Facsimile: (212) 805-9278
Maria J. DiConza

*Counsel for Tempe Life Care Village, Inc.,
d/b/a, Friendship Village of Tempe*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br><br>   Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**LIMITED OBJECTION OF TEMPE LIFE CARE VILLAGE, INC.
d/b/a/ FRIENDSHIP VILLAGE OF TEMPE TO DEBTORS'
PROPOSED ASSUMPTION OF CONTRACTS**

Counterparty, Tempe Life Care Village, Inc., d/b/a, Friendship Village of Tempe ("**Friendship Village**") submits the following limited objection to the above-captioned debtors-in-possession (collectively, the "Debtors") designation of certain derivative contracts entered into between Friendship Village and Lehman Brothers Special Financing, Inc. ("LBSF") as "executory" and the purported assumption of those contracts pursuant to Section 11.1 of the Debtors' Third Amended Joint Chapter 11 Plan (the "Plan").

## BACKGROUND

1. Friendship Village was a party to two (2) interest rate swap transactions (the "Transactions" or the "Swap Agreements") entered into with LBSF[1] pursuant to the terms of a 1992 Local Currency-Single Jurisdiction International Swaps and Derivatives Association, Inc. ("ISDA") Master Agreement ("Master Agreement"), the schedule thereto (the "Schedule"), and the Credit Support Annex to the Schedule the ("CSA"). Section 5(a)(vii) of the Master Agreement listed "bankruptcy" as one of the "Events of Default and Termination Events" providing Friendship Village with the right to terminate the transactions.

2. On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 3, 2008, LBSF (an affiliate of LBHI) filed a voluntary petition for relief under the Bankruptcy Code.

3. On or about September 18, 2008, Friendship Village learned that LBSF had commenced a voluntary case under chapter 11 of the Bankruptcy Code. On that same day, Friendship Village began the process of assessing their options regarding the Swap Agreements that they had entered into with LBSF and the implications thereof.

4. On or about November 13, 2008, Debtor LBHI, and its affiliated debtors, made a motion to this Court for an *Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "**November 12 Motion**").

---

[1] Lehman Brothers Holdings, Inc. ("LBHI") was the Credit Support Provider with respect to the Transactions.

5. In paragraph 12 of the November 12 Motion, the Debtors represented to this Court that they "may propose to assume and assign some or all of these 'in the money' Derivatives Contracts to third parties in exchange for consideration that will provide realizable value to the estates."

6. The Swap Agreements with Friendship Village were contemplated by the representation made by Debtors in Paragraph 12 of the November 13 Motion.

7. As a result of such representation to this Court by Debtors, Friendship Village took a "wait-and-see" approach regarding the possible assignment of their Swap Agreements with LBSF.

8. It was not until Spring of 2009 that Friendship Village learned that LBSF was having significant difficulties finding counterparties willing to accept an assignment of the Swap Agreements.

9. In May 2009, Friendship Village contacted LSBF regarding a potential negotiated settlement of the Swap Agreements.

10. During May and part of June 2009, Friendship Village engaged LBSF in negotiations in an effort to reach a negotiated settlement of the Swap Agreements.

11. After that time, it became clear to Friendship Village that a negotiated settlement of the Swap Agreements would not be possible. After exhausting all such efforts, Friendship Village notified LBSF in August 2009 that Friendship Village was terminating the Swap Agreements pursuant to the Master Agreement and Section 560 of the Bankruptcy Code.

12. Following the Debtors' bankruptcy filing, Friendship Village followed the procedures set forth under the Master Agreement to terminate the Transactions. On August

26, 2009, Friendship Village served LBSF with a notice of an Event of Default ("Notice of Default") designating August 27, 2009 as the Early Termination Date with respect to the Transactions. Following the termination, Friendship Village calculated the amounts due and owing to LBSF in accordance with the Master Agreement and provided payment to LBSF.

13. Pursuant to the procedures set forth in this Court's ADR Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts dated September 19, 2009 (the "Order"), on February 15, 2011, LBSF filed a Derivatives ADR Notice (No. 255) and Settlement Demand. On March 17, 2011, Friendship Village filed its Response to Notice and Explanation of Basis for Denial of Settlement Demand. On March 31, 2011, LBSF filed a Reply to Friendship Village's Response to Derivatives ADR Notice No. 255. The confidential mediation of this matter was conducted on July 13, 2011 with no resolution.

14. On October 25, 2011, the Debtors filed the Plan Supplement [Docket No. 21254], which sets for the schedule of Executory Contracts and Unexpired Leases to be Assumed Pursuant to Section 11.1 of the Plan (Exhibit 2, Part A [Derivative Contracts]). On page forty-seven (47) of Exhibit 2 (Part A), the Debtors list the derivative contracts involving Friendship Village, which unquestionably relate to the terminated Transactions referenced above.

## LIMITED OBJECTION

15. Friendship Village objects to the purported assumption of the terminated derivative swap Transactions on the basis that there is simply nothing left to assume. *See e.g.* In re Texscan Corp., 107 B.R. 227, 230 (B.A.P. 9th Cir. 1989) (acknowledging that "[i]t is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist" and that "[i]f

4

a contract has expired by its own terms then there is nothing left to assume or reject."); Counties Contracting & Const. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1061 (3rd Cir. 1988) (noting that "[a] contract may not be assumed under § 365 if its has already expired according to its terms.").[2]

16.   Friendship Village further objects to the inclusion of the derivative swap Transactions in the Plan Supplement and the Debtors' purported assumption of the terminated derivative contracts to the extent that it implies that the Transactions remain open and ongoing.

17.   Friendship Village further submits this limited objection for the purpose of ensuring that Friendship Village is not deemed to accede to any argument that the Transactions were not terminated, and that Friendship Village is not estopped from asserting that the Transactions were terminated.

## **RESERVATION OF RIGHTS**

Friendship Village reserves the right to modify and assert additional objections to the Debtors' proposed assumption of the terminated derivative swap Transactions referenced above. Friendship Village also reserves all other rights and nothing contained herein shall be construed as an admission or waiver of any rights or claims that Friendship Village may be entitled to assert.

---

[2]  While the Second Circuit has not adopted a uniform definition of an "executory contract," it follows the formulation that "a contract is executory if performance is still required by both parties that is sufficiently material such that a failure of either to perform would excuse the other party's performance." *See* In re Helm, 335 B.R. 528, 534 (Bankr. S.D.N.Y. 2006).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Friendship Village respectfully requests that this Court deny Debtors' request to assume the above-referenced terminated Transactions and grant such other and further relief as the Court may deem just and proper.

By: /s/ Maria J. DiConza
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone:  (212) 801-9278
Facsimile:  (212) 805-9278
Maria J. DiConza

GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
Telephone:  (617) 310-6025
Facsimile:  (617) 279-8425
John A. Sten
Joseph P. Davis

*Counsel for Tempe Life Care Village, Inc., d/b/a, Friendship Village of Tempe*

Dated: November 10, 2011