# LEHMAN BROTHERS

### -Revised- Transaction

| | |
|---|---|
| Date: | 21 May, 2008 |
| To: | LVFN Partners, L.P. |
| | Attention: Documentation Unit |
| From: | Lehman Brothers Special Financing Inc. |
| | Capital Markets Contracts - Legal |
| | Facsimile: (+1) 646-885-9551 (United States of America) |
| | Telephone: 646-333-9516 (Louis P. Bardos) |
| Ref. Numbers: | Risk ID: 1858235L / Effort ID: N2082560 / Global Deal ID: 3724533 |

**This Confirmation supersedes and replaces in its entirety any other confirmation referencing the Transaction to which this Confirmation relates.**

---

Dear Sir or Madam:

The purpose of this communication is to set forth the terms and conditions of the transaction entered into on the Trade Date referred to below (the "Transaction"), between Lehman Brothers Special Financing Inc. ("Party A") and LVFN Partners, L.P. ("Party B"). This communication constitutes a "Confirmation" as referred to in the Agreement specified below.

This Confirmation is subject to and incorporates the terms of the 1992 version of the preprinted multicurrency cross-border form of Master Agreement (the "Agreement") published by the International Swaps and Derivatives Association, Inc. ("ISDA"), but without regard to any modifications or elections that the parties may be entitled to make pursuant to a Schedule except as provided in the Additional Provisions paragraph herein. All provisions contained in, or incorporated by reference to, the Agreement shall govern this Confirmation except as expressly modified below. In addition, this Confirmation shall itself evidence a complete and binding agreement between you and us as to the terms and conditions of the Transaction to which this Confirmation relates.

Party A and Party B each represents that entering into the Transaction is authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party and that, upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

The definitions and provisions contained in the 2006 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. (the "Definitions") are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and the terms of this Confirmation, this Confirmation will govern. For the purpose of the Definitions, references herein to a "Transaction" shall be deemed to be references to a "Swap Transaction".

Reference is hereby made to the Amended and Restated Note Purchase Agreement, dated as of October 23, 2007, by and among LVFN Partners, L.P., Lehman Brothers Inc., Relationship Funding Company, LLC, Lehman Brothers Special Lending LLC and the various financial institutions and other persons from time to time parties thereto (as amended, the "Note Purchase Agreement").

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 19 March, 2008 |
| Effective Date: | 25 March, 2008 |
| Termination Date: | 20 September, 2012 |
| Notional Amount: | USD 100,000,000.00; or such lesser amount determined by the Calculation Agent pursuant to a reduction of the Notional Amount as set forth in the Additional Termination Event *"Automatic Termination Upon Party B Reduction of Aggregate VFN Outstanding Amount"*. |

**Fixed Amounts:**

| | |
|---|---|
| Fixed Amount Payer: | Party B |
| Fixed Amount Payer Payment Dates: | The 1st calendar day of each month, from and including 01 April, 2008 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| No Adjustment of Period End Dates: | Applicable |
| Fixed Rate: | 3.065% per annum |
| Fixed Rate Day Count Fraction: | Actual/360 |

**Floating Amounts:**

| | |
|---|---|
| Floating Amount Payer: | Party A |
| Floating Amount Payer Payment Dates: | The 1st calendar day of each month, from and including 01 April, 2008 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| No Adjustment of Period End Dates: | Applicable |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | 1 month except for the initial Calculation Period which shall be the Linear Interpolation of 1 week and 1 month and the final Calculation Period which shall be the Linear Interpolation of 2 Week and 1 Month. |
| Spread: | Inapplicable |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first day of each Calculation Period |

**Business Days:**  London; New York

| | |
|---|---|
| **Collateral:** | Paragraphs one through thirteen of the standard form ISDA Credit Support Annex (New York law) (the "CSA") are incorporated by reference herein subject to the elections and modifications set out below. Terms defined in the CSA have this same meaning herein. |
| Elections and variables for the purposes of Paragraph 13 of the CSA: | "Eligible Collateral" shall include, for both parties, (A) USD cash at a Valuation Percentage of 100% and/or (B) negotiable debt obligations issued by the U.S. Treasury Department having a maturity at issuance of not more than one year ("Treasury Bills") at a Valuation Percentage of 99% and/or (C) negotiable debt obligations issued by the U.S. Treasury Department having a maturity at issuance of more than one year but not more than ten years ("Treasury Notes") at a Valuation Percentage of 98% and/or (D) negotiable debt obligations issued by the U.S. Treasury Department having a maturity at issuance of more than ten years ("Treasury Bonds") at a Valuation Percentage of 97%. |
| | "Threshold" means USD 0 with respect to Party A and Party B. |
| | "Minimum Transfer Amount" means with respect to a party USD500,000; provided that if an Event of Default, Credit Event Upon Merger or Additional Termination Event has occurred and is continuing with respect to a party, the Minimum Transfer Amount with respect to such party shall be zero. |
| | "Valuation Agent" means Party A. Notwithstanding Paragraph 4(c), calculations will only be provided upon a demand made by Party B. |
| | "Valuation Date" means any Local Business Day. |
| | "Valuation Time" means the close of business in the location where the relevant product is traded provided that the calculations of Value and Exposure will be made as of approximately the same time on the same date. |
| | "Notification Time" means 3.00 p.m., New York time, on a Local Business Day. |
| | "Value" For the purpose of Paragraph 5(i)(c) and 5(ii) of the CSA, the Value of Posted Credit Support other than Cash will be calculated as follows: |
| | With respect to any Treasury Bills, Treasury Notes, or Treasury Bonds (referred to herein as "Government |

Obligations") the sum of (I) (x) the bid price quoted on such date by a mutually acceptable principal market maker for such Government Obligations, or (y) if no such quotation is available from a principal market maker for such date, such bid price as of the day, next preceding such date, on which such quotation was available, in either case multiplied by the applicable Valuation Percentage, plus (II) the accrued interest on such Government Obligations (except to the extent Transferred to a party pursuant to any applicable section of this Agreement or included in the applicable price referred to in (I) of this definition) as of such date.

"Interest Rate" means the rate per annum equal to the overnight Federal Funds Rate for each day Cash is held by the Secured Party as reported in Federal Reserve Publication H.15-519.

**Miscellaneous:**

| | |
|---|---|
| Calculation Agent: | Party A |
| Office: | For the purposes of this Transaction, Party A is not a Multibranch Party, and the Office of Party B is its Head Office. |
| Transfer: | Notwithstanding Section 7 of the Agreement, Party A may assign its rights and obligations under this Transaction, in whole and not in part, to any Affiliate of Lehman Brothers Holdings Inc. ("Holdings") effective upon delivery to Party B of the guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate. |
| Governing Law: | New York law. |
| Termination Currency: | USD |

**Additional Termination Event:** The following shall constitute an Additional Termination Event:

**Automatic Termination Upon Party B Reduction of Aggregate VFN Outstanding Amount:**

| | |
|---|---|
| Partial Termination Event: | If, as of any day, the Aggregate VFN Outstanding Amount (as defined in the Note Purchase Agreement), is less than the sum of (a) the Notional Amount for this Transaction and (b) the Notional Amount as defined in the Confirmation for the Transaction with a reference number of "Global ID: 3795484" (the "Other Transaction") (such combined notional amount the "Aggregate Notional Amount"), (such event a "Partial |

Termination Event"), then (1) Party A shall give Party B prompt notice thereof and (2) Party B shall have two (2) Business Days in which to designate in writing a portion of this Transaction and/or the Other Transaction to be terminated equal, in the aggregate, to the difference between the Aggregate Notional Amount and the Aggregate VFN Outstanding Amount (the "Partial Termination Amount") and (3) the Notional Amount(s) of this Transaction and/or the Other Transaction immediately prior to such Partial Termination Event will then be reduced in accordance with Party B's designation; provided, that if Party B fails to designate such portions within such period, or designates an amount less than the Partial Termination Amount, the Calculation Agent shall **apply any remaining** portion of the Partial Termination Amount **first to** the Other Transaction **in full and then, if there is any remaining Partial Termination Amount, to this Transaction,** and the Notional Amount(s) of **the other** Transaction and/or **this** Transaction immediately prior to such Partial Termination Event will be reduced **accordingly.** With respect to the Partial Termination Amount, the amount payable will be determined by the Calculation Agent in accordance with Section 6(e)(ii)(1) of the Agreement (where Party B is the sole Affected Party and with Loss applicable) as if such Partial Termination Amount were itself a Terminated Transaction, and such amount determined by the Calculation Agent shall be paid by the applicable party to the other party within two Business Days of the Partial Termination Event.

**Additional Provisions:**

1. The **"Cross Default"** provisions of <u>Section 5(a)(vi)</u> of the Agreement will apply.

    **"Threshold Amount"** means the lesser of (i) USD 100 million or (ii) two percent (2%) of the Stockholders' Equity of Lehman Brothers Holdings Inc. ("Holdings"), in the case of Party A and Holdings (or its equivalent in any other currency), and the lesser of (i) USD 10 million or (ii) two percent (2%) of the Net Asset Value of Party B, in the case of Party B (or its equivalent in any other currency).

    **"Stockholders' Equity"** means with respect to an entity, at any time, the sum at such time of (i) its capital stock (including preferred stock) outstanding, taken at par value, (ii) its capital surplus and (iii) its retained earnings, minus (iv) treasury stock, each to be determined in accordance with generally accepted accounting principles.

"**Net Asset Value**" of Party B shall be equal to the gross assets of Party B less the aggregate amount of all liabilities of Party B (including all absolute and contingent liabilities of any kind) and shall be determined in accordance with generally accepted accounting principles in the country in which Party B is organized and on a basis consistent with prior periods.

2. The "**Credit Event Upon Merger**" provisions of Section 5(b)(iv) of the Agreement will apply to Party A and Party B; provided, that the term "materially weaker" means, with respect to Party A, that Holdings or the resulting, surviving or transferee entity of Holdings fails to maintain a long-term senior, unsecured debt rating of at least Baa3 as determined by Moody's Investors Service, Inc. and BBB- from Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies Inc.

3. **Payments on Early Termination.** For the purpose of Section 6(e) of the Agreement, Loss and the Second Method will apply.

4. **Representations.** Section 3 of the Agreement is hereby amended by adding the following additional subsections:

    (a) **No Agency.** It is entering into this Transaction as principal (and not as agent or in any other capacity, fiduciary or otherwise).

    (b) **Eligible Contract Participant.** It is an "eligible contract participant" as defined in the Commodity Futures Modernization Act of 2000.

    (c) **No Reliance.** In connection with the negotiation, entering into and execution of this Transaction, Party B acknowledges and agrees that: (i) Party A is acting for its own account and not as a fiduciary for, or financial or investment advisor to, Party B (or in any similar capacity) regardless of whether Party A provides Party B with market information or its views; (ii) Party B is not relying upon any communications (whether written or oral) from Party A as investment advice or as a recommendation to enter into this Transaction (other than the representations expressly set forth in the Agreement), it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction; (iii) Party B has not received from Party A any assurance or guarantee as to the expected results of this Transaction and understands the risks of the Transaction; (iv) Party B has consulted with its own legal, regulatory, tax, business, investment, financial, and accounting advisors to the extent it has deemed necessary, and it has made its own independent investment, hedging, and trading decisions based upon its own judgment and upon any advice from such advisors as it has deemed necessary and not upon any view expressed by Party A; and (v) Party B has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives.

5. **Netting of Payments.** Subparagraph (ii) of Section 2(c) of the Agreement will not apply to any Transaction between the parties hereto.

6.  **Waiver of Trial By Jury.** Insofar as is permitted by law, each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Transaction, and acknowledges that this waiver is a material inducement to the other party's entering into this Transaction hereunder.

**Account for Payment to**
**Party A in USD:**         JPMorgan Chase Bank, New York
                            ABA # 021000021
                            A/C of Lehman Brothers Special Financing Inc.
                            A/C # 066-143543

**Account for Payment to**
**Party B in USD:**         Please advise our Operations Control Supervisor, reachable by telephone at 212-526-0200

08-13555-mg    Doc 21952-2    Filed 11/10/11    Entered 11/10/11 16:41:21    Exhibit B
Pg 8 of 8

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number (+1) 646-885-9551 (United States of America), Attention: Confirmations Group.

Yours sincerely,                                                Accepted and agreed to:

**Lehman Brothers Special Financing Inc.**      **LVFN Partners, L.P.**
                                                                By:   LVFN Genpar, LLC, General Partner
By: *Anatoly Kozlov*
Name: Anatoly Kozlov
Title:  Authorized Signatory                              By: _____
                                                                Name: Ardon E. Moore
                                                                Title: President

Risk ID: 1858235L / Effort ID: **2082560** / Global Deal ID: 3724533

Page 8 of 8