David F. Heroy
Andrew P. R. McDermott
Baker & McKenzie LLP
One Prudential Plaza
130 East Randolph Street, Suite 3500
Chicago, Illinois 60601
Phone: (312) 861-8000
Fax: (312) 698-2370

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | **Hearing: December 6, 2011** |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF PRESBYTERIAN SENIORCARE TO PROPOSED ASSUMPTION OF PURPORTED EXECUTORY CONTRACT

Presbyterian SeniorCare ("PSC") hereby submits this limited objection and reservation of rights (this "Limited Objection") with respect to the proposed assumption, pursuant to the *Third Amended Joint Chapter 11 Plan of Lehman Brothers Holding Inc. And Its Affiliated Debtors* [Dkt. No. 19627] (the "Plan"), of the PSC Swap Agreement (as defined below). In support of this Limited Objection, PSC respectfully states as follows:

#### BACKGROUND

1. On September 15, 2008 (the "Petition Date"), Lehman Brothers Special Financing Inc. ("LBSF") and certain affiliates (together with debtors in jointly consolidated cases, the "Debtors") filed voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (together with other jointly consolidated cases, the "Chapter 11 Cases").

2. PSC was incorporated in the Commonwealth of Pennsylvania as a non-profit corporation in 1928 and provides facilities, services and programs for the care of the elderly and maintains such facilities in the interests of their residents. PSC owns and operates two assisted living facilities licensed as personal care facilities: (i) Westminster Place, located in Allegheny County, Pa. with 102 beds and (ii) Southminster Place, located in Washington County, Pa. with 74 beds. In addition, PSC is the sole member of 21 non-profit membership corporations, which in turn own and operate elderly housing, personal care and nursing care facilities located in Southwestern Pennsylvania. Further, PSC is (i) the controlling general partner of six (6) corporations that provide low-income tax credit housing and (ii) the sole member of a non-stock corporation known as SeniorCare Network, Inc., that manages certain additional senior adult condominiums, elderly housing, personal care and nursing care facilities pursuant to management contracts with non-affiliated owners. Through these facilities (whether owned by PSC or affiliates or managed by its affiliate SeniorCare Network, Inc.), PSC serves over 6,000 older adults each year at 40 locations in Southwestern Pennsylvania. Together these facilities consist of 2,332 elderly and disabled housing units, 283 personal care beds, and 559 nursing facility beds.

3. PSC and its affiliates' services consist of an array of home and community based services including adult day care; private duty/non-skilled home care services; supportive housing for the elderly and disabled; a continuing care retirement community; congregate housing; personal care homes; and skilled and intermediate nursing facilities. These services are principally provided to individuals in low and moderate income groups and are available to all older adults, regardless of race, sex or religious affiliation. PSC provided over $2 million in

charitable and uncompensated care directly through its Westminster Place and Southminster Place operations in 2010 alone.

4. PSC is a party to that certain ISDA Master Agreement with LBSF, dated as of October 17, 2001 (the "Master Agreement"), together with the related Schedule dated as of October 16, 2001, the Credit Support Annex to the Schedule, and the Confirmation dated as of October 16, 2001 (the "PSC Swap Agreement").

5. On November 3, 2008, PSC delivered a Notice of Early Termination to LBSF under Section 6 of the Master Agreement terminating all interest rate swaps entered into under the PSC Swap Agreement in accordance with Section 5(a)(vii) of the Master Agreement.

6. On November 25, 2008, PSC delivered to LBSF, with supporting documentation, the statement required by Section 6 of the Master Agreement that set forth PSC's calculation of the Early Termination Payment. This settlement statement was then amended by letter to LBSF dated April 30, 2010. Together with these settlement statements, PSC delivered payment of all amounts due as a result of Early Termination.

7. Since October 2010, PSC and LBSF engaged in a voluntary dispute resolution with respect to the PSC Swap Agreement, as provided for in this Court's *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts, entered in the Bankruptcy Case on September 17, 2009* [Docket No. 5207], as amended by the Order Supplement The September 17, 2009 Alternative Dispute Resolution Procedures Order to Add a Fourth Mediator dated September 23, 2010. No consensual resolution has resulted from the mediation process at this time.

8. On or about October 27, 2011, the Debtors served PSC with a *Notice of Proposed Assumption of Executory Contracts And Unexpired Leases Pursuant to Debtors Plan* (the "Cure Notice"). The Cure Notice identifies on its Exhibit A an agreement entitled "1992 ISDA MA –

3

Local Currency Single Jurisdiction Dated On 11/17/2001" between PSC and LBSF. The Notice provides that the "Cure Amount" is $0.

9. PSC is also listed on Exhibit 2, Part A (at p. 101) of the Plan Supplement [Dkt No. 21254] as being a party to a derivatives contract with LBSF, however no description is provided. Pursuant to Section 11.1 of the Plan, the listing of this agreement on Exhibit 2 would, in the absence of objection, permit assumption of all derivatives contracts between PSC and one of the Debtors in connection with confirmation of the Plan, including the PSC Swap Agreement. *See* Plan Supplement, Preamble to Exh.2 ("[u]nless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivatives contracts with each counterparty set forth on Exhibit 2, Part A.").

## OBJECTION

10. First, although PSC assumes that the description in the Cure Notice and Plan Supplement refer to the PSC Swap Agreement, the descriptions are insufficient to identify with certainty the agreement implicated. Specifically, PSC is unable to identify whether the Debtors intend to assume contracts with PSC other than the PSC Swap Agreement, on the basis of the Cure Notice and Plan Supplement, Exhibit 2.

11. Second, the PSC Swap Agreement has been terminated by its terms and, as a result, is not an "executory contract," as that term is used in Bankruptcy Code § 365(a). Thus, it may not be assumed in connection with confirmation of the Plan. *Id.*; Bankruptcy Code § 1123(b)(2) (chapter 11 plan "may … subject to 365 of this title, provide for the assumption … of any executory contract").

12. Although the term "executory contract" is not defined in the Bankruptcy Code, "courts have long employed the definition articulated by Professor Countryman, *i.e.*, 'a contract under which the obligation of both the bankrupt and the other party to the contract are so far

4

unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" *In re Wireless Data Inc.*, 547 F.3d 484, 488 n.1 (2d Cir. 2008) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973)).

13. The PSC Swap Agreement has been terminated and neither party has any ongoing performance obligations. Further, although the amount of the Early Termination Payment may still be in dispute, an agreement is *not* executory where the only obligation remaining is the payment of money. *In re Leibinger-Roberts, Inc.*, 105 B.R. 208, 212-13 (Bankr. E.D.N.Y. 1989) (citing *In re Chateaugay Corp.*, 102 B.R. 335, 344-45 (Bankr. S.D.N.Y. 1989)).

### RESERVATION OF RIGHTS

14. If the PSC Swap Agreement is nevertheless determined to be an executory contract, PSC does not object to the Cure Amount of $0 as set forth on the Cure Notice, provided however, that:

   a. The determination that the PSC Swap Agreement is an executory contract and its assumption by LBSF is without prejudice to PSC's continuing assertion that the PSC Swap Agreement was, in fact, properly terminated according to its terms;

   b. Should PSC be found to be obligated to LBSF under the PSC Swap Agreement in any amount, the assumption by LBSF (and PSC's non-objection to cure) shall be without prejudice to PSC's continuing right to set-off and/or recoup against any such obligation amounts owed by LBSF to PSC as provided in the PSC Swap Agreement.

### NOTICE

15. Notice of this Limited Objection has been given to the following parties in accordance with the instructions in the Cure Notice: (a) the chambers of the Honorable James M. Peck; (b) attorneys for the Debtors; (c) the Office of the United States Trustee for Region 2;

and (d) counsel for the official committee of unsecured creditors appointed in the Chapter 11 Cases.

<div style="display: flex; justify-content: space-between;">

Dated: November 10, 2010

/s/ David Heroy
David F. Heroy
Andrew P.R. McDermott
Baker & McKenzie LLP
One Prudential Plaza
130 East Randolph Street, Suite 3500
Chicago, Illinois 60601
Phone: (312) 861-8000
Fax: (312) 698-2370

Counsel to PSC

</div>