**Exhibit D – Transcript of Hearing, Oct. 27, 2010 [docket no. 12552]**

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case Nos. 08-13555(JMP)

5

6    - - - - - - - - - - - - - - - - - - - - - - -x

7    In the Matter of:

8

9    LEHMAN BROTHERS HOLDINGS INC., et al.

10

11              Debtors.

12   - - - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              October 27, 2010

19              10:07 AM

20

21   B E F O R E:

22   HON. JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Debtors' Twenty-Eighth Omnibus Objection to Claims

3    (Valued Derivative Claims)

4

5    HEARING re Debtors' Thirty-Fifth Omnibus Objection to Claims

6    (Valued Derivative Claims)

7

8    HEARING re Debtors' Thirty-Sixth Omnibus Objection to Claims

9    (Failure to Submit Guarantee Questionnaire Claims)

10

11   HEARING re Debtors' Thirty-Seventh Omnibus Objection to Claims

12   (No Liability Claims)

13

14   HEARING re Debtors' Thirty-Eighth Omnibus Objection to Claims

15   (Amended and Superseded Claims)

16

17   HEARING re Debtors' Fortieth Omnibus Objection to Claims (Late-

18   Filed Claims)

19

20   HEARING re Debtors' Forty-First Omnibus Objection to Claims

21   (Late-Filed Claims)

22

23   HEARING re Debtors' Forty-Second Omnibus Objection to Claims

24   (Late-Filed Lehman Programs Securities Claims)

25

Page 3

1

2    HEARING re Debtors' Forty-Third Omnibus Objection to Claims

3    (Late-Filed Lehman Programs Securities Claims)

4

5    HEARING re Debtors' Forty-Fourth Omnibus Objection to Claims

6    (Settled Derivative Claims)

7

8    HEARING re Debtors' Twenty-Ninth Omnibus Objection to Claims

9    (No Blocking Number LPS Claims)

10

11   HEARING re Debtors' Thirty-Ninth Omnibus Objection to Claims

12   (Duplicative Claims)

13

14   HEARING re Debtors' Objection to Proofs of Claim Filed By

15   William Kuntz III (Claim Nos. 33550, 33551, 33552, 35121, and

16   35430)

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

Page 4

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4        Attorneys for Debtors and Debtors-in-Possession

5        767 Fifth Avenue

6        New York, NY 10153

7

8   BY:   SHAI Y. WAISMAN, ESQ.

9         PENNY P. REID, ESQ.

10        MARK BERNSTEIN, ESQ.

11

12  WEIL, GOTSHAL & MANGES LLP

13        Attorneys for Debtors and Debtors-in-Possession

14        200 Crescent Court

15        Suite 300

16        Dallas, TX 75201

17

18  BY:   ERIN D. ECKOLS, ESQ.

19

20

21

22

23

24

25

Page 5

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3       Attorneys for the Official Committee of Unsecured

4        Creditors

5       One Chase Manhattan Plaza

6       New York, NY 10005

7

8   BY:   DENNIS C. O'DONNELL, JR.

9       MATTHEW KANTOR, ESQ.

10

11  DUANE MORRIS LLP

12      Attorneys for Aspecta Assurance International

13       Luxembourg, S.A.

14      1540 Broadway

15      New York, NY 10036

16

17  BY:   PATRICIA H. HEER, ESQ.

18

19  KATTEN MUCHIN ROSENMAN LLP

20      Attorneys for RBC Capital Markets Corp.

21      575 Madison Avenue

22      New York, NY 10022

23

24  BY:   JEFF J. FRIEDMAN, ESQ.

25

Page 6

1

2   THALER & GERTLER LLP

3         Attorneys for August '98 Trust

4         90 Merrick Avenue

5         Suite 400

6         East Meadow, NY 11554

7

8   BY:   KIM D. VICTOR, ESQ.

9

10   POLSINELLI & SHUGHART

11         Attorneys for Interested Party

12         700 West 47th Street

13         Suite 1000

14         Kansas City, MO 64112

15

16   BY:   MICHAEL S. FOSTER, ESQ.

17         (TELEPHONICALLY)

18

19

20

21

22

23

24

25

```
 1

 2   STUTMAN, TREISTER & BLATT

 3        Attorneys for Lehman Brothers Holdings, Inc.

 4        1901 Avenue of the Stars

 5        12th Floor

 6        Los Angeles, CA 90067

 7

 8   BY:   MARINA FINEMAN, ESQ.

 9        (TELEPHONICALLY)

10

11   ALSO APPEARING:

12   WILLIAM A. KUNTZ, PRO SE

13        Box 461

14        Lake Placid, NY 12946

15

16   BY:   WILLIAM A. KUNTZ

17

18

19

20

21

22

23

24

25
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 9 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 8

```
 1                    P R O C E E D I N G S

 2          THE COURT:  Please be seated.  Good morning.

 3          MR. WAISMAN:  Good morning, Your Honor.  Shai Waisman,

 4   Weil Gotshal & Manges on behalf of Lehman Brothers Holdings and

 5   its affiliate debtors.  Your Honor, we're here this morning on

 6   the hearing on our objection to claims.  A rather lengthy

 7   agenda was filed yesterday afternoon.  An amended agenda was

 8   filed last night to reflect a few matters that were being

 9   adjourned.  The length of the agenda really reflects a number

10   of matters being adjourned to future hearings and don't expect

11   a lengthy hearing today.  If Your Honor is okay with it, we

12   would proceed in the manner in which the matters are set forth

13   in the agenda.

14          THE COURT:  That's fine.

15          MR. WAISMAN:  The first two matters, Your Honor,

16   debtors' twenty-eighth and thirty-fifth objections to claims

17   will be handled by my partner, Penny Reid, who has had primary

18   responsibility for derivative related claims.  And I'd like to

19   introduce Ms. Reid to the Court this morning.  From there, Ms.

20   Eckols, who the Court has met, will handle basically the

21   balance of the matters this morning, uncontested matters 3

22   through 10 and contested matters 1 and 2.  And I will clean up

23   with the third contested matter on the agenda and that would be

24   the conclusion of the hearing this morning.

25          THE COURT:  All right.
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 10 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

1          MR. WAISMAN:  Thank you.

2          THE COURT:  Good morning.

3          MS. REID:  Good morning, Your Honor.  My name is Penny

4    Reid with Weil Gotshal on behalf of the debtors.  And I'm going

5    to address the twenty-eighth and thirty-fifth omni objections.

6          With respect to the twenty-eighth omnibus objection,

7    Your Honor, we'll recall that we had adjourned three of the

8    claims in that matter to today's hearing to try to resolve

9    them.  We have been successful.  The debtors have been

10   successful in resolving one of those matters with the U.S.

11   AGBank.  And we have a proposed supplemental order reducing

12   this claim to the settled amount.

13         The other two matters that we adjourned from the

14   twenty-eighth omni are still being negotiated and we are

15   respectfully requesting the Court to adjourn those two matters

16   until the November 10th hearing to allow us a little bit

17   further time.  But we are in negotiations with them.  It's

18   Investcorp and Rutland Hospital.

19         THE COURT:  Okay.

20         MS. REID:  With respect to the thirty-fifth omni

21   objection, Your Honor, the debtors are seeking to reduce and

22   allow six claims that relate to three counterparties who did

23   not file any response to the thirty-fifth omni objection.

24   Specifically, we are seeking to reduce the claim from the city

25   of Tacoma from 509,600 dollars to 135,596 dollars; the claim

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010    Pg 11 of 89

Page 10

```
 1    from De Longhi Capital Services from 1,262,407 dollars to

 2    1,186,071 dollars; and the claim of Poste Italiane S.P.A. from

 3    994,922 dollars to 939,545 dollars.

 4              As to the remaining fourteen claims, which relate to

 5    seven counterparties, the debtors are respectfully requesting

 6    this Court to adjourn the hearing until January 20th, 2011

 7    claims hearing date which will allow the debtors to try and

 8    resolve these matters amicably with the respondents.  And we

 9    have an order both reducing the claims that were responded to

10    as well as adjourning the other seven claims.

11              THE COURT:  All right.  That's fine.

12              MS. REID:  Thank you, Your Honor.

13              MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols on

14    behalf of the debtors.  I will be covering agenda items 3

15    through 12 which cover omnibus objections 36 through 44 as well

16    as the carryover items for omnibus objection 29.

17              The debtors are proceeding today largely on an

18    uncontested basis.  The only contested matters with respect to

19    the omnibus objections are the carryover items from omni 29

20    and one unresolved response to omni 39.

21              Your Honor, the debtors are continuing to diligently

22    process the tens of thousands of claims filed in these Chapter

23    11 cases.  On September 18th, the debtors filed omnibus

24    objections 36 through 44 seeking to disallow and expunge over

25    1800 claims and seeking to reduce and reclassify an additional
```

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 12 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

1    fifty-three.

2          For each of these omnis, Your Honor, the debtors

3    continued their practice of prominently identifying a specific

4    debtor's counsel that claimants could call with any questions

5    with any questions they may have.  And debtors made sure to

6    reach out to every claimant or counsel that contacted them with

7    questions.

8          Because omnis 36 through 38 and 40 to 44 are

9    proceeding uncontested today, I intend to move through each one

10   of these with a very brief description and then move on to the

11   contested matters.

12         Your Honor, agenda item number 3, omnibus objection

13   36, this omnibus objection seeks to disallow and expunge claims

14   for failure to comply with the bar date order.  Specifically,

15   the bar date order required parties asserting guaranty claims

16   to complete a guaranty questionnaire.  The holders of the

17   claims on omnibus objection 36 did not complete the required

18   questionnaire and none of them filed responses.  Thus, the

19   debtors are proceeding uncontested with respect to that omni

20   and request that the Court grant omnibus objection number 38

21   (sic).

22         THE COURT:  It's granted.

23         MS. ECKOLS:  With respect to agenda item number 4,

24   debtors' omnibus objection to claims number 37, no liability

25   claims, this omnibus objection seeks to disallow and expunge

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 13 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

1    that are asserted against nondebtor entities but were filed in

2    these Chapter 11 cases.  Therefore, they are not appropriately

3    filed in these Chapter 11 cases.  Again, this matter is

4    proceeding on an uncontested basis.  The responses received

5    have been adjourned.  And therefore, we ask the Court to grant

6    omnibus objection number 37.

7         THE COURT:  Omnibus objection number 37 is granted.

8         MS. ECKOLS:  Agenda item number 5 is debtors' omnibus

9    to claims number 38.  This omnibus objection is to eliminate

10   claims that have been amended or superseded by other claims on

11   the claims register.  There have been two changes to language

12   on the order since the proposed order was filed and these

13   changes were made of the request of counsel to resolve some

14   questions or concerns that they had raised.  One of those

15   changes was to clarify that not only the surviving claim to the

16   extent it appropriately amended a claim shall be deemed timely

17   filed for that.  That extends to any amended derivative and

18   guaranty questionnaires and supporting documentation that went

19   with those surviving claims.

20        The other change that was requested by counsel and

21   debtors agreed to was to clarify that while debtors reserve the

22   right to object to any of the surviving claims, the debtors

23   will not object to a surviving claim that has been allowed by

24   order of the Court or by a signed settlement or termination

25   agreement authorized by the Court.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 14 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 13

1      So those have been the only two changes to the order.

2   We're proceeding therefore on an uncontested basis and request

3   that the Court grant omnibus objection number 38.

4      THE COURT:  Omnibus objection number 38 is granted.

5      MS. ECKOLS:  Your Honor, agenda items 6 through 9 are

6   omnibus objections 40 through 43.  These are the omnibus

7   objections for late-filed claims and late-filed Lehman program

8   securities claims.  Because these omnibus objections are very

9   similar, I was going to discuss them altogether unless Your

10  Honor has an objection to me doing that.

11     THE COURT:  No.  That's fine.

12     MS. ECKOLS:  Okay.  On omnibus objections 40 and 41,

13  these are the omnibus objections to disallow and expunge claims

14  that were filed after the September 22nd, 2009 bar date.

15  Omnibus objections 42 and 43 are to disallow and expunge Lehman

16  program securities claims that were not filed by the November

17  2nd, 2009 bar date.  There are a total of over 1500 claims on

18  these omnibus objections.  The debtors are proceeding on an

19  uncontested basis having adjourned nearly all of the responses

20  that were received.  And therefore, the debtors respectfully

21  request that the Court grant omnibus objections 40 through 43.

22     THE COURT:  Those are all granted.

23     MS. ECKOLS:  Thank you.  Agenda item number 10 which

24  is debtors' forty-fourth omnibus objection to claims, this is a

25  consensual omnibus objection in order to reduce, reclassify and

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 15 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 14

1      allow claims that were settled pursuant to assigned termination

2      agreements.  These claims were where parties had reached an

3      agreement with the debtors with respect to the claim amount of

4      classification that is not reflected on the group of claims.

5      And omnibus objection is simply seeking to modify those claims

6      to conform to the parties' agreement.  Therefore, the debtors

7      respectfully request that the Court grant omnibus objection 44.

8              THE COURT:  Omnibus objection 44 is granted.

9              MS. ECKOLS:  Your Honor, that wraps up the uncontested

10     claims matters.  And moving on to the contested claim matters,

11     agenda item number 11 which is some carryover items from

12     debtors' twenty-ninth omnibus objection to claims.

13             As Your Honor may recall, omnibus objection 29 sought

14     to disallow and expunge Lehman program securities claims that

15     violated the bar date order because they did not include the

16     required blocking number.  At the September 1 claims hearing,

17     Your Honor granted the omnibus objection with respect to the

18     uncontested claims and today we are taking up the three

19     contested claims.

20             The responses or the parties contesting are RBC

21     Capital Markets, the August '86 Trust and Aspecta Assurances

22     International.  Each of these respondents failed to include the

23     required blocking number with their proof of claim and thus

24     violated the bar date order.  The debtors ask that this Court

25     enforce the blocking number requirement uniformally and expunge

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 16 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 15

1    the noncompliant claims.

2            The blocking number requirement is critical and needs

3    to be enforced in order for debtors to effectively reconcile

4    the Lehman program securities claims.  The bar date order

5    established specific procedures for the filing of those claims

6    because of the unique characteristic of those securities.

7    Specifically, the program securities did not have an indenture

8    trustee that could file a global claim on behalf of the

9    individual holders of those securities.  So the individual

10   holders would have to file their own claims.

11           This presented serious issues as far as reconciliation

12   of the claims because the debtors would not be able to confirm

13   ownership or amount of a particular security.  A security could

14   have been traded every day for thirty days prior to the bar

15   date and each holder could have filed the claim risking

16   duplicative and/or excessive distributions.  The blocking

17   number requirement was specifically designed to address this

18   problem.  The blocking number, when issued, would confirm

19   ownership and amount of a security as of a certain date and,

20   once it was issued, trading for that particular security was

21   frozen through the securities program bar date.  The blocking

22   number requirement was two part.  A claimant had to actually

23   obtain the blocking number and then include it with their

24   timely filed proof of claim.  That again, the blocking number

25   plays a critical role for reconciliation of these claims and

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 17 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 16

1    significantly reduces the burden on debtors of reconciling

2    these claims.

3             THE COURT:  Can I break in for a minute --

4             MS. ECKOLS:  Sure.

5             THE COURT:  -- and just ask a very basic question

6    about how one obtains blocking numbers.  Let's just say that

7    you're the August '86 Trust to pick one that happens to be up

8    today.  And you're trying to comply faithfully with the

9    requirements of the order establishing procedures for filing

10   proofs of claim.  And you know that there is a need to obtain a

11   blocking number.  Procedurally, how would you go about doing

12   that?

13            MS. ECKOLS:  Your Honor, the claimant would need to

14   reach out to the applicable clearing agency, Euroclear or

15   Clearstream, and they would issue the blocking number for the

16   claimant.

17            THE COURT:  And once that blocking number is issued,

18   that becomes, in effect, the tracking number for the claim?

19            MS. ECKOLS:  Yes, Your Honor.  That is correct.

20            THE COURT:  Okay.

21            MS. ECKOLS:  Allowing parties to circumvent the

22   blocking number requirement eviscerates the benefits that it

23   was intended to have and will make it incredibly difficult, if

24   not impossible, for the debtors to reconcile those claims.  And

25   there are a large number of Lehman program securities claims to

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 17

1    reconcile.  There are over approximately 31,000 Lehman program

2    securities claims which is almost half of the amount of claims

3    in total filed in these Chapter 11 cases.  Again, debtors

4    believe that the blocking requirement must be uniformally and

5    strictly enforced.

6          The blocking number requirement was expressly set

7    forth in the bar date order.  It specifically stated that

8    claimants had to obtain the blocking number and include it on

9    their proof of claim.  This requirement was also specifically

10   set forth in the securities program bar date notice and, in

11   fact, that bar date notice had a whole section that said

12   "special note regarding blocking numbers".  That was in bold.

13   And that was on the court-approved bar date notice.

14         The proof of claim form that this Court approved for

15   Lehman program securities claim also expressly said that the

16   claimant had to obtain had to obtain the blocking number and

17   had a space for them to put it on there.  The bar date notice

18   was widely disseminated.  It was given to the clearing agencies

19   and it was also published in twenty-six papers in eighteen

20   countries, ten languages plus seven local dialects.

21         Now the respondents do not dispute that they failed to

22   comply with one or both parts of the blocking number

23   requirement.  And the responses do not dispute that they

24   received notice of the blocking number requirement or that

25   notice was somehow deficient.  The responses do not dispute

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 19 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 18

1    that the requirement to obtain the blocking number and put it

2    on the proof of claims was clear.  Instead, the responses

3    assert that they should be treated differently from other

4    Lehman program securities claimants that had to comply with the

5    bar date order's procedures.

6         Now I did want to alert Your Honor to the fact that

7    the August '86 Trust did file an affidavit on Monday afternoon

8    that did, for the first time, assert that they had no notice of

9    this requirement and that they didn't receive proper notice of

10   it.  So it appears as though the August '86 Trust in response

11   to debtors' reply has changed position a little bit.  Again,

12   debtors just wanted to notify the Court of this.  We believe it

13   is an impermissible surreply but we did want you to know that

14   August '86 Trust was raising this now kind of belatedly.

15        The reasons provided by each respondent are vague and

16   unsubstantiated.  They cite a mistake or inadvertence of some

17   sort.  But whatever the excuse, the respondents all seek to

18   justify their noncompliance with a no harm no foul argument

19   that doesn't withstand scrutiny.

20        Specifically, with respect to Aspecta.  Aspecta failed

21   to obtain a blocking number altogether but claims no harm no

22   foul because it says it held the securities "at all relevant

23   times".  There is no explanation of what "all relevant times"

24   actually means and no support other than two unsubstantiated

25   documents that purport to establish ownership of the securities

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 20 of 89

Page 19

1   as of September 2010 which, obviously, is nearly a year after

2   the applicable bar date.  So even if Aspecta had produced

3   admissible evidence establishing ownership of the securities as

4   of September 2010, which it did not, this does not accomplish

5   the goals of the blocking number requirement or render the

6   blocking number unnecessary.  It does not confirm ownership

7   prior to bar date.  It does not prevent others from claiming

8   those same securities.  And so, the reconciliation issues that

9   the blocking number requirement specifically sought to avoid

10  are present here.  Because Aspecta utterly failed to comply

11  with the blocking number procedures, its claim should be

12  expunged.

13        The no harm no foul arguments asserted by RBC and the

14  August '86 Trust simply miss the point.  RBC and the August '86

15  Trust assert that the failure to include a blocking number with

16  their claim should be excused because they have the number and

17  simply didn't give it to the debtors.  However, the blocking

18  number requirement is two-fold.  The claimant had to obtain the

19  blocking number and actually put it on their timely filed proof

20  of claim.  Obtaining a blocking number but not providing it to

21  the debtors does not allow the debtors to effectively process

22  and reconcile these 31,000 program securities claims.

23        Moreover, the harm to the debtors in making exceptions

24  to the blocking number requirement, whether because the

25  claimant forgot to include it with their proof of claim or

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 21 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 20

1   simply did not obtain one, the harm is that it encourages other

2   claimants to come and seek similar exceptions.  The debtors

3   implemented the blocking number procedures because it knew that

4   the volume of the Lehman program securities claims was going to

5   be large and the reconciliation was going to be difficult.  The

6   blocking number was designed to avoid a parade of claimants

7   seeking to engage in contested hearings, possible lengthy

8   evidentiary hearings, regarding whether or not they are the

9   valid holder as a Lehman program securities claim.  In short,

10  the contested hearing that debtors are engaging in right now

11  with the possibility of hundreds more to follow if leniency is

12  granted demonstrates the harm to the debtors and is precisely

13  why the blocking number requirement should be strictly

14  enforced.

15          THE COURT:  Can I break in and ask you a question --

16          MS. ECKOLS:  Of course.

17          THE COURT:  -- about that?  My understanding of how

18  this works procedurally is that the blocking number is to be

19  included on the filed claim and it's used by those who are

20  processing claims for the debtor in determining how to allow

21  claims based upon Lehman program securities.  Assuming that a

22  claimant has obtained a blocking number and fails for whatever

23  reason to include that number on the documents that are being

24  processed but later cures that defect by providing what I'll

25  call an amended claim saying I'm sorry, I forgot, how is the

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 22 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

```
 1    debtor prejudiced if at all?

 2            MS. ECKOLS:  Your Honor, it's really the slippery

 3    slope problem and the encouraging other parties who did not,

 4    for whatever reason, comply with the blocking number

 5    requirement to come in and seek exceptions.

 6            THE COURT:  Yes.  But if the party who was seeking the

 7    exception has a blocking number that doesn't create an

 8    exception for a party that failed to obtain a blocking number,

 9    does it?

10            MR. WAISMAN:  If I may, Your Honor.  And this is the

11    reason we -- Your Honor's very question is the reason that we

12    are here on this objection and discussing it with the Court.

13    The internal fear and concern is that if we are to say to those

14    folks that call and say I actually complied.  I called my

15    broker or Euroclear or Clearstream obtaining my blocking

16    number.  I just forgot to include it.  Here it is, no harm no

17    foul.  The concern is if we allow those in, we're then going to

18    have the next variation, of which we're hearing about already

19    which is, look, I didn't get the blocking number but I will

20    provide an affidavit and a witness in court saying I held it in

21    the years before the bar date, at the bar date, I still hold it

22    today.  So, in essence, you're blocking number requirement is

23    met, no harm no foul.  And we start to go down this slope where

24    the magnitude of the claims here, 30,000 -- approximately

25    30,000 people got notice, understood the notice complied.
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 23 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 22

```
 1    There's obviously, as with the entirety of this bar date

 2    process, a large number of claimants that didn't comply.  And

 3    if we made exception now, we are concerned that we are just

 4    allowing additional variations on the exception that are going

 5    to bog us down in the claims reconciliation process at this

 6    late date with a plan on file and bog down the process here in

 7    court with a magnitude of claims that have not yet really been

 8    seen in the Chapter 11 cases.  So that's -- those are the

 9    reasons we are pressing the objections.

10              THE COURT:  Okay.

11              MS. ECKOLS:  Your Honor, just in conclusion, the

12    debtors believe that the blocking number requirement -- clear

13    notice was given.  These respondents didn't comply and

14    respectfully request that the Court overrule the responses and

15    grant the twenty-ninth omnibus objection as to the RBC, the

16    August '86 Trust and the Aspecta claims.

17              THE COURT:  Okay.  I see counsel in the room so I'll

18    hear what they have to say.  Mr. Friedman, you're number one.

19              MR. FRIEDMAN:  Thank you, Your Honor.  Jeff Friedman

20    of KattenMuchinRosenman for RBC Capital Markets, Your Honor.

21    According to what Ms. Eckols just said, the crux of the matter

22    this morning is whether the bar date should be strictly and

23    rigidly enforced based on a slippery slope argument that RBC is

24    allowed to amend its claim and add a blocking number that it

25    timely and properly obtained but merely failed to write down on
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 24 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 23

```
 1    the proof of claim form, everyone will want to use that excuse.

 2              I don't know what the magnitude of claims are that fit

 3    into that category.  I do know that this omnibus objection

 4    before the Court, the twenty-ninth omnibus objection, objected

 5    to eleven claims apparently, a number of which didn't obtain

 6    blocking numbers.

 7              It seems to me, Your Honor, that the issue is not

 8    simply the rigid enforcement of the Court's order.  Every Court

 9    that enters a bar date order, Your Honor -- it's not only in

10    this case; it's in other cases -- other judges in this court,

11    bankruptcy judges generally expect their bar date orders will

12    be complied with.  And the penalty for doing so, particularly

13    if you're late, that your claim may be disallowed in its

14    entirety.  But it seems to me, Your Honor, that the issue

15    really is whether, in Lehman's case, decades of jurisprudence

16    regarding amendments to claims, informal proofs of claims, will

17    simply not apply in the Lehman case no matter how insignificant

18    the harm is to Lehman.  This is, in my view, the most

19    hypertechnical objection because Lehman has known since we were

20    put on notice that we had a blocking number, it was timely

21    obtained.  So that if they went to Euroclear and said, send us

22    a list of blocking numbers you have for the bonds, they'd know

23    that RBC obtained its blocking number for these bonds.  And I

24    don't know whether they've done that or not.  But it would be

25    surprising if there was not a double check against sort of
```

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 24

```
 1   Euroclear and Clearstream's master list of blocking numbers.  I

 2   don't know how they're doing this but it would be somewhat

 3   odd --

 4        THE COURT:  Well, let me just ask you something

 5   because I don't know how this procedure would ordinarily work.

 6   Are you saying that the blocking number requirement is

 7   effectively a redundancy because any complying creditor who has

 8   obtained a blocking number can have that number reproduced

 9   through the clearing systems by simply requesting a download?

10   Are you saying that as a matter of fact or is that just surmise

11   on your part?

12        MR. FRIEDMAN:  I'm not suggesting that we could have

13   done it.  I would be somewhat surprised if Lehman, given the

14   nature of what they're doing here, couldn't have done it.  I

15   mean, this whole blocking number system was set up for this

16   procedure.  Now maybe Euroclear has said to Lehman well, we're

17   not telling you who we assigned particular blocking numbers to

18   and what they're claim is.  But clearly, Euroclear's got our

19   blocking number assigned to RBC for at least 300,000 dollars

20   worth of bonds with this ISIN number.  The proof of claim that

21   RBC filed, and it's attached to our response, used the wrong

22   claim form.  I mean, we represent RBC generally in this case

23   and we filed and helped them file a number of properly

24   completed program securities.  RBC is a fairly far flung

25   organization.  For some reason that no one can really explain,
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 26 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 25

1   this claim came through their Minneapolis office, didn't go to

2   the attorneys in New York or Toronto for RBC and there was a

3   guy in RBC's office in Minneapolis that took his best shot.  He

4   had gotten information from the Bank of New York.  That

5   information had the blocking number on it.  It had the

6   Euroclear account number on it.  He wrote the Euroclear account

7   number on the proof of claim.  But because he was using the

8   regular Lehman proof of claim and not the program securities

9   claim, there was no blank that said insert your blocking number

10  here that would have tipped him off.  He just didn't know.

11         Now I'm not claiming that we didn't get notice.  We

12  actually got direct notice.  I'm not even saying this was a

13  publication notice issue.  This was a screw-up.  And the

14  question is, is this screw-up so bad that it's not subject to

15  being amended.  Because we do think in this case that the harm

16  to Lehman is negligible.  Again, I don't know how many claims

17  are going to fit in this.  But the slippery slope argument

18  probably isn't all that significant for people who actually

19  timely got blocking numbers and didn't include them.  I mean,

20  had we included the blocking number but transposed two digits

21  also fatal because it's not the blocking number; it's a

22  different number.  I mean, I don't know where you draw the

23  line, Your Honor.  But it just seems to me that whether you use

24  an informal proof of claim which is simply intended to put the

25  debtor on notice that a particular claimant seeks to hold the

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 27 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 26

 1    debtor and the estate liable with respect to a particular

 2    obligation has been satisfied in spades here.

 3           On a scale of one to ten of the most aggressive

 4    amendments you might make, this is a 1.  This is such a minor

 5    change.  I mean, as the Seventh Circuit said in the Stoecker

 6    case, if I may briefly quote it, "If a documentation is

 7    missing, the creditor cannot rest on the proof of claim.  It

 8    does not follow, however, that he is forever barred from

 9    establishing the claim.  Nothing in the principles or

10    practicalities of bankruptcy or in the language of any rule or

11    statute justifies so disproportionate a sanction for a harmless

12    error.  A creditor should therefore be allowed to amend his

13    incomplete proof of claim to comply with the requirements of

14    3001 provided that other creditors are not harmed by the

15    belated completion of the filing."

16           In fact, Your Honor, with respect to the data required

17    by 3001, this claim meets that in its entirety.  It is only

18    this Court's additional requirement as requested by Lehman that

19    a blocking number be obtained and be put on the proof of claim

20    that's lacking here.  And it's only that second part because we

21    did timely obtain the blocking number.

22           So, Your Honor, we think that this satisfies the

23    claim.  We have filed an amended claim.  We think that that

24    claim satisfies it.  We don't think there's been real harm to

25    Lehman here because there's certainly been no distributions.

LEHMAN BROTHERS HOLDINGS INC., et al.

1    They're still in the reconciliation process.  They  have had

2    our blocking number since we filed our response a couple of

3    months ago.  And we just think that, on these facts, the Court

4    should allow the amended claim to stand.

5              THE COURT:  Okay.  Thank you.

6              MS. VICTOR:  Good morning, Your Honor.  Kim Victor

7    from Thaler & Gertler representing the creditor, the August '86

8    Trust.  I also concur with the arguments that were just made.

9    My client timely filed its proof of claim, signed, fully

10   completed it, put in a broker's number, the brokerage number,

11   the Barclay brokerage number rather than the blocking number.

12   It was clearly just a misunderstanding.  All the information

13   was filled out, twenty-four pages were connected to the proof

14   of claim that sufficiently the nature of the claim for the

15   debtor.  Once the debtor had advised that the blocking number

16   was not included in the proof of claim, the creditor provided

17   it debtors' counsel.  We have also amended the original timely

18   filed proof of claim which corrects any defects as to form to

19   the original timely filed claim.

20              The point is that there is absolutely no harm to the

21   debtor in this case.  The debtor had sufficient knowledge of

22   the claim.  They don't put anywhere in their papers that they

23   were unable to identify the nature of the claim, that they

24   weren't given notice, properly timely filed notice of the

25   claim.  In this case, it's the creditor who stands to

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 29 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 28

1    completely lose a valid claim of 450,000 dollars.  At this

2    time, Your Honor, we ask that the amendment that has been

3    attached to our responsive papers be included as a timely filed

4    proof of claim as amended.

5             THE COURT:  Just a question about the affidavit of

6    Joseph Kelly.  What am I supposed to do with that?  And how

7    does that affidavit which was filed on Monday impact the

8    argument you've just made?

9             MS. VICTOR:  It doesn't really, Your Honor.  It

10   doesn't really.  It's just proof that there is a blocking

11   number, that the blocking number was provided, that now the

12   debtor is able to track the claim and that any amendment to the

13   original claim is purely just to include that blocking number.

14   There will be no changes to the original claim.  So there is no

15   prejudice to the debtor in this case.  It was merely just a

16   misunderstanding as far as the number was concerned.

17            THE COURT:  Okay.

18            MS. HEER:  Good morning, Your Honor.  Patricia Heer

19   Piskorski of Duane Morris on behalf of Aspecta Assurance

20   International Luxembourg.  Your Honor, Aspecta has filed a

21   proof of claim timely and it provided sufficient documentation

22   to sufficiently identify the notes at issue in that proof of

23   claim.

24            THE COURT:  Can I stop you for a second now because if

25   I'm understanding the position of Aspecta which is a little bit

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 29

1    different from the position of RBC and the August '86 Trust.

2    It's that even though you didn't obtain and disclose on your

3    form a blocking number that that shouldn't matter because

4    you've demonstrated that you always held the securities that

5    are the subject to the proof of claim, is that right?

6            MS. HEER:  Your Honor, we have attached documentation

7    to the response to the objection seeking to disallow the claim

8    which does give proof that at the time of the proof of claim

9    those notes at issue in the proof of claim were held and owned

10   and have continued to be held by Aspecta.

11           THE COURT:  Yes.  But it's true that Aspecta did not

12   obtain a blocking number and didn't include a blocking number

13   on its proof of claim.

14           MS. HEER:  That's correct, Your Honor.  And it did

15   not.  And it does understand the requirements of the bar

16   date -- the program securities bar date order and the terms

17   thereof.  And the argument is set forth in the motion and there

18   is the documentation provided in there.  And we do thank you,

19   Your Honor, for considering it.

20           THE COURT:  Okay.  Is there any response from the

21   debtor?

22           MS. ECKOLS:  Just a few points that we wanted to

23   respond to, Your Honor.  First, with respect to the no

24   prejudice to the debtor, this is not a matter of ten or twenty

25   or thirty claims that did not comply with the blocking number

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 31 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 30

1    requirement.  Debtors are still trying to get a handle on the

2    number of claims but right now believe it is definitely north

3    of 500.  So that is a significant number; it's not just one or

4    two.  And that is going to increase the burden significantly on

5    debtors especially if all the claimants decide to come to court

6    and seek to prove ownership of the securities at issue in some

7    other manner.

8            With respect to August '86 request that the Court

9    allow them to amend their claims, that issue -- the issue today

10   is simply whether omnibus objection number 29 should be

11   granted.  No motions have been filed to date to allow

12   amendments to these claims and we do not believe such relief

13   should be considered today.

14           With respect to Aspecta -- Aspecta's argument that

15   they've established that they've had ownership of the security,

16   I guess, from the inception of this Chapter 11 case through the

17   bar date, that is simply incorrect.  The attachments to their

18   response are simply two pages of documents that appear to have

19   been created by the Bank of Luxembourg.  And, at most, what

20   they show is that as of September 2010, which is after the

21   twenty-ninth omnibus objection was filed, that as of that late

22   date, they appeared to own the securities.  Therefore, it does

23   not satisfy the goals of the blocking number requirement.  And

24   thus, Your Honor, we ask that omnibus objection 29 as to those

25   three claimants be granted.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010    Pg 32 of 89

Page 31

```
 1              THE COURT:  One more question about the impact of the

 2      blocking number.  If a blocking number has been obtained and a

 3      proof of claim has been filed in reference to a security

 4      identified by such blocking number, is it permissible for the

 5      claim to be traded or is it, in fact, blocked until such time

 6      as a distribution is available from this estate?

 7              MS. ECKOLS:  Your Honor, I am actually going to allow

 8      Mr. Waisman to answer that question.

 9              MR. WAISMAN:  Your Honor may recall that subsequent to

10      the bar date, there were supplemental procedures that were --

11              THE COURT:  I recall.

12              MR. WAISMAN:  And part of those procedures were to

13      permit the claims to freely trade.

14              THE COURT:  Yes.  I recall.  So here's where I become

15      perplexed.  Is the blocking number which is obtained as a

16      condition to submitting a proof of claim based on Lehman

17      program securities purely designed to facilitate tracking and

18      claim management or is it also designed to limit trading at

19      least up to the point that the proof of claim is filed?  Or

20      does it have no impact on trading?

21              MR. WAISMAN:  It absolutely had impact on trading.

22      Once somebody obtained a blocking number -- it could have been

23      a day before the program securities bar date or a month prior.

24      The moment they obtained that blocking number, that security

25      could not trade.  It was locked.  And it was not until a date
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 33 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 32

 1    well past the Lehman program securities bar date that the

 2    number became unblocked and was freely tradable.  And the

 3    issues become even more complex because the bar date wasn't

 4    purely to track the individual security but it was also to

 5    reconcile duplications with the larger issuances that were held

 6    by the banks.  And we have obviously inferences where the bank

 7    holding the note filed a proof of claim with the blocking

 8    number and then the individual holders who called their brokers

 9    who called Euroclear and Clearstream also obtained blocking

10    numbers.  You have this multiple layer.

11            THE COURT:  I'm reminded by your comment that when

12    there was a request jointly made by the debtors and certain

13    creditor constituencies for a modification of the restrictions

14    building to the bar date order to permit trading of Lehman

15    program securities, even though there were no objections lodged

16    to that request, that's my recollection that I did not

17    immediately approve that motion but carried it to another

18    omnibus hearing date out of expressed concern that there might

19    be an impact upon the integrity of the bar date order itself.

20    And I was  ultimately satisfied that there would be no impact

21    upon the bar date.  And now I find myself at a claims hearing

22    where the integrity of the proof of claim process is at issue

23    as it relates to the blocking number component of the proof of

24    claim.  And what I'm still puzzling over, and I think I'd like

25    just a little bit more explanation from debtors' counsel on

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 33

```
 1    this, is the actual practical use of the blocking number in

 2    tracking claims, reconciling claims and allowing claims

 3    particularly in the environment in which these Lehman program

 4    securities are now being freely traded.

 5              MR. WAISMAN:  Your Honor, may I have a brief moment?

 6              THE COURT:  Sure.

 7         (Pause)

 8              MR. WAISMAN:  Your Honor, Shai Waisman.  Your Honor

 9    recalls correctly that the debtors came back with a group of

10    interested creditors previously known as the Coalition of the

11    Willing to seek an addendum to the Lehman program securities

12    procedures.  Those procedures -- we -- the debtors and, I

13    believe, the committee always thought were part and parcel of

14    the original program securities notice but they were -- there

15    was enough concern that people wanted a supplemental order.

16    Your Honor expressed concern that perhaps the debtors were

17    succumbing to the hew and cry of the street in doing something

18    that would undermine the integrity of the procedures and

19    adjourn the matter.  And we came back with an affidavit of a

20    businessperson setting forth that the purpose of the program

21    securities was to provide the debtors comfort that the party

22    filing the proof of claim had actual ownership of the security

23    at the time the claim was filed and at the time the bar date

24    came.  It was required to illustrate the integrity of the claim

25    that the party held the claim that it wasn't traded every
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 35 of 89

Page 34

 1    single day up until the bar date and multiple claims being

 2    filed.  And given that we were past the program securities bar

 3    date and therefore anybody that filed a proof of claim with the

 4    blocking number, we knew owned the security on that day and

 5    that's the only day that matters for the purpose of

 6    establishing the claims.  Thereafter, there was no reason to

 7    require them to continue to hold the claim.  No benefit to us.

 8    There should be a free market as the bankruptcy rules suggest

 9    there should be in the trading of claims.  And the order was

10    meant to facilitate the fact that we were so far removed from

11    the bar date there was going to be no benefit to us from

12    restricting trading any further.  Parties could continue to

13    trade because what we needed we had at that point.  We had

14    proof that a party that filed the claim owned the security on

15    the day in question.

16         We do not use blocking numbers now to track claims at

17    all.  When we go through the 66,000 claims that sit in a pile,

18    we get to a Lehman program securities claim, we verify that

19    there's a blocking number.  We do check it against our master

20    list to make sure that it's a real blocking number.  And that

21    proves to us that the party that filed the claim owned the

22    security and therefore is the rightful claimant.  The next

23    step, of course, is to make sure whether somebody else filed a

24    proof of claim on behalf of that issuance.

25         THE COURT:  I hear you although I must say that this

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010    Pg 36 of 89

Page 35

1    adds strength to the argument made by Mr. Friedman that on a

2    scale of one to ten, this is a one.  This isn't a ten in terms

3    of technical noncompliance because the blocking number is, in

4    effect, an extra protection designed to make sure that the

5    party who filed the claim with respect to these freely tradable

6    instruments in fact was the owner of the claim at a particular

7    point in time that is relevant for bankruptcy purposes but for

8    no other purpose because the instruments may have traded

9    multiple times already, in some instances, and may continue to

10   trade in the future.

11          Now I have no problem with the free trading of

12   securities.  The only problem I'm having right now is whether

13   the significance of the failure to include a blocking number on

14   a proof of claim is so material a failure to comply with the

15   expressed requirements of the proof of claim bar date

16   procedures as to warrant claim disallowance when a party

17   objects.  And I'm having some trouble with this right now,

18   particularly, I must tell you in the case -- it kind of goes up

19   in significance, A, B and C.  RBC has the strongest position;

20   August '86 Trust has the next strongest position; and Aspecta

21   Assurance has the weakest position, as I see it.  But I think

22   Aspecta is simply making an argument well, we didn't do it but

23   we own the security.  Here.  See this attachment to our

24   response.  They clearly didn't comply with the no blocking

25   number problem.  But they, in effect, make an argument for the

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 37 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

1  great unwashed that didn't comply at all.  That's your

2  floodgates problem, the problem that parties who never obtained

3  a blocking number will come forward and say we have the ability

4  through extrinsic evidence to demonstrate that we, in fact, own

5  the security at the time that we filed the proof of claim.  I

6  have a problem with that.

7       But as to anybody else who actually had a blocking

8  number and somehow messed up, I'm having a hard time seeing why

9  this is such a problem for the debtor.  And I need to

10  understand a little bit more about why procedurally this

11  creates such a potential hornet's nest of claim administration

12  difficulty down the road.

13       MR. WAISMAN:  Your Honor, I'd say a couple things.

14  First of all, there is nothing Your Honor has just said that we

15  disagree with.  We have spent a lot of time struggling with

16  these very issues.  The obvious statement that the bar date in

17  this case was so unique that it does not fit squarely within

18  the precedent, and I understand Mr. Friedman citing to the

19  legend of case law on amendments, but this case just doesn't

20  fit squarely within those parameters and it is difficult to

21  reconcile.

22       The program securities requirement was very explicit

23  and specific and absolutely necessary.  Without it, this case

24  would be a quagmire and we would have no ability to reconcile

25  over 30,000 claims.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010    Pg 38 of 89

Page 37

```
 1              In many ways the program's security's blocking number
 2      is itself the claim.  Without it, you're submitting a statement
 3      that at some point you own something.  But if you don't submit
 4      the program security's number it doesn't -- it doesn't comply
 5      for the purposes of a bar date in this case.  We have, in other
 6      circumstances, been to Your Honor with claims issues, claims
 7      objections and have agreed with Your Honor that we need to
 8      strictly enforce the very specific and very unique requirements
 9      of this bar date order because it is such a slippery slope.
10      And the fear here is that we know of here eleven, we already
11      know of 500 more, it's a reconciliation.  We haven't been
12      through the lion's share of our claims.  The number is
13      certainly to grow of claimants who got the blocking number but
14      simply didn't include, forgot for whatever reason.  And as I
15      said before, we are here because that's a slippery slope to --
16      well, they forgot -- I forgot to get it but I can prove to you
17      that I had it, and then we're going to be inundated with
18      thousands upon thousands of claimants coming to this court to
19      prove that they held the security and that they can meet the
20      purpose of the program securities blocking number requirement
21      by extrinsic evidence, even though they didn't supply the
22      number.
23              And when you try to differentiate those two, you come
24      back to there was a requirement, it was to be strictly enforced
25      and people didn't comply.  And as Ms. Eckols said, a number of
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 39 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 38

```
 1    times, there were two requirements; to get the number and to

 2    include it.  If we start to excuse one people are certainly

 3    going to argue you have to excuse the other, and we have a hard

 4    time differentiating between those two.

 5           THE COURT:  I'm not sure I have such a hard time

 6    differentiating between those two.

 7           MR. WAISMAN:  Well, you wear the black robe.

 8           THE COURT:  That's true.  But obviously claimants that

 9    do everything perfectly are to be applauded for navigating what

10    is a fairly complex claims process in this case.  This is not,

11    by any means, standard issue.  But as I understand the purpose

12    to be served by the obtaining and inclusion of a blocking

13    number, it is to establish, in a user-friendly way from the

14    perspective of the debtors, that a particular claimant within

15    the pool of holders of Lehman program securities, in fact was a

16    holder on the relevant date, correct?

17           MR. WAISMAN:  That's correct.

18           THE COURT:  I think that in the case of RBC capital

19    that there really has been the kind of compliance that fits

20    within the applicable case law that I cited in my omnibus late

21    filed claims decision, in which good faith attempts to comply

22    coupled with confusion can lead to an excuse.  And here there

23    was good faith compliance in the sense of obtaining a blocking

24    number and somebody in Minneapolis goofed, they win.  Now, they

25    win on particularized facts and I don't think that opens a
```

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 39

1    door.

2        My next question to myself is well does August '86

3    Trust win?  And maybe I need to think some more about that

4    after taking a look at the affidavit of Joseph Kelly, which

5    obviously Mr. Kelly, who's a solicitor, thought worthy of my

6    attention.  I haven't paid enough attention to it yet and I

7    want to think about it some more.

8        But let's just say, for the sake of discussion, that

9    August '86 Trust wins too, what's the principle that has just

10   been established?  It seems to me that the principle is that

11   anybody who has gone to the trouble of getting a blocking

12   number but who has failed, through negligence or administrative

13   error, to include the blocking number but who later provides

14   that blocking number is, in effect, curing the defect in a

15   manner that doesn't take away from the integrity of the bar

16   date order.  Nor does it in a material way because I don't

17   imagine there's going to be a huge class, but I could be wrong,

18   of parties who actually obtain the blocking number and then

19   negligently failed to include it.

20       It seems to me that the debtor is still in a position

21   to use the blocking number because the blocking number has been

22   provided and the integrity of the proof of claim, as it relates

23   to Lehman program securities is preserved.

24       The Aspecta case is different.  That's the we didn't

25   do it at all problem but we have other means of establishing,

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 41 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 40

1    in a way that we think should be credible, that we held Lehman

2    program securities at the time that a proof of claim was filed

3    and completely ignored the requirement of including a blocking

4    number.  They lose.

5            And I believe that you can draw a line here that says

6    if you have a blocking number you have done everything that you

7    can reasonably do to meet the spirit of the bar date notice as

8    it relates to Lehman program securities, assuming that you

9    have, for good cause, failed to include.  That you have reason

10   to establish that there was legitimate confusion or a

11   legitimate failure to comply, not just I willfully held it back

12   because I thought it was a stupid requirement, that's not going

13   to work.  But if there was what amounts to good faith efforts

14   to comply with that requirement and you then later provide the

15   number, it seems to me that the blocking number component of

16   this requirement is satisfied.

17           MR. WAISMAN:  Your Honor, if I may interject for one

18   moment.  As Your Honor is describing this narrow exception, it

19   might be helpful if it relates to entities that timely filed

20   proofs of claim, have obtained a blocking number but for good

21   cause failed to include and later provide it.

22           THE COURT:  That's exactly what I'm saying.  That

23   can't be a very big class of claimants and if it turns out to

24   be, well, so be it.

25           That's my best effort at walking a tightrope created

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 42 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

1   by these requested exceptions to the blocking number

2   requirement of the bar date notice.  I'm not making a ruling

3   yet with respect to the August '86 Trust because I want to take

4   some time to look at the affidavit of Joseph Kelly.  But if the

5   August '86 Trust fits within the exception, I've just

6   articulated, then they'll prevail.  I'm sorry Aspecta loses.

7   They just didn't get a blocking number and they're out of

8   court.

9           MR. WAISMAN:  Thank you, Your Honor.  That guidance is

10  very, very helpful as we try to navigate these waters and turn

11  to Your Honor for guidance on the narrow calls.

12          THE COURT:  Okay.

13          MR. WAISMAN:  Greatly appreciated.

14          MS. ECKOLS:  Thank you, Your Honor.

15          MR. FRIEDMAN:  Your Honor, I just want to figure out

16  the best mechanics to get an order reflecting your decision

17  with respect to RBC.

18          MR. WAISMAN:  I think what we would do is remove it

19  from the proposed -- remove your claim from the proposed order

20  that we hand up today and there's no objection pending to your

21  claim.

22          MR. FRIEDMAN:  Okay.  We do have an amended claim; we

23  can deal with that by stipulation.

24          MR. WAISMAN:  Why don't we speak and take care of it?

25          MR. FRIEDMAN:  Thank you very much, Your Honor.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 42

1            THE COURT:  Okay.

2            MR. WAISMAN:  I'm sorry, Your Honor, just one moment.

3    Thank you.

4            THE COURT:  You can feel free to confer.

5        (Pause)

6            MS. ECKOLS:  Your Honor, taking up agenda item number

7    12, which is debtor's thirty-ninth omnibus objection to claims,

8    this is seeking to disallow and expunge claims that are

9    duplicative, either exactly or in substance of another claim

10   filed for the same party.

11           There is only one formal response.  It was filed on

12   behalf of eight claimants.  Hesitate to call it an objection

13   because it states that if our omnibus objection is only seeking

14   to disallow duplicative claims, then it has no objection to us

15   doing so and the debtors are only seeking to disallow and

16   expunge claims that are duplicative by this omni.

17           THE COURT:  Everybody in that category appears to be a

18   citizen and resident of Greece.

19           MS. ECKOLS:  That is correct.

20           THE COURT:  And I read that objection or response or

21   reservation of rights, however we're going to characterize it

22   and it wasn't entirely clear to me whether or not in fact they

23   will have surviving claims.

24           If the answer is that they will have surviving claims,

25   then I have no hesitation in granting the thirty-ninth omnibus

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 44 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 43

```
 1    objection and treating their response as in effect a statement

 2    of no objection provided that they have surviving claims.

 3           MS ECKOLS:  Your Honor, those claimants do have

 4    surviving claims and they're set forth on the exhibit to that

 5    omnibus objection.

 6           THE COURT:  In that event, the thirty-ninth omnibus

 7    objection is granted.

 8           MS. ECKOLS:  Thank you, Your Honor.  And at this point

 9    I am going to cede the podium to Mr. Waisman for the next

10    agenda item.  Thank you.

11           MR. WAISMAN:  Your Honor, Shai Waisman again for the

12    Lehman debtors.  The final contested matter and final matter on

13    the agenda today is the debtor's objection to the proofs of

14    claim filed by William Kuntz, III, filed at docket number

15    11351.

16           THE COURT:  Mr. Kuntz is here.

17           MR. WAISMAN:  Your Honor, as the Court has learned

18    over time, Mr. Kuntz filed eleven proofs of claim in these

19    Chapter 11 cases.  Pursuant to three previous orders of the

20    Court, six of those eleven claims were determined to be amended

21    and superseded by other claims and were disallowed and

22    expunged.  Pursuant to this objection, the debtors seek to

23    disallow and expunge the remaining five claims filed by William

24    Kuntz.

25           Pursuant to the objection and as I indicated there
```

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 45 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 44

1    were five claims that we sought to disallow and expunge, we

2    requested that two of the claims, 35121 and 35430 be expunged

3    on the basis that they were superseded by three of the

4    remaining claims.

5            Mr. Kuntz, in his several replies, did not respond or

6    object to such relief and we request that Your Honor disallow

7    and expunge claims 35121 and 35430 on the basis that there was

8    no objection.

9            In any event, as Mr. Kuntz has stated on the record

10   previously in these proceedings, he has three surviving claims

11   that we reference in our objection and reply as the surviving

12   claims.  Mr. Kuntz asserts that each surviving claim is an

13   unsecured but priority claim against Lehman Brothers Commercial

14   Paper, Inc.  Based on Mr. Kuntz' alleged claims against Grand

15   Union Capital Corporation, an entity not in these Chapter 11

16   cases, not a debtor in these Chapter 11 cases and not

17   affiliated with any of the debtors.

18           Specifically, Mr. Kuntz asserts that he was the holder

19   of certain zero coupon notes issued by Grand Union Capital and

20   that he opted out of a settlement, with respect to such notes,

21   in Grand Union's first Chapter 11 case in 1995.  By opting out

22   of the settlement Mr. Kuntz claims that his notes remained

23   outstanding and that the indentures governing such notes were

24   not cancelled.

25           Mr. Kuntz further alleges that in Grand Union

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 46 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 45

1    Company's third Chapter 11 case in 2000, and Your Honor will

2    note I reference Grand Union Company, which was the entity that

3    filed the third case in 2000, a distinct entity from Grand

4    Union Capital Corporation, which is the entity that issued the

5    zero notes to Mr. Kuntz.

6           Mr. Kuntz, in the third Chapter 11 case which related

7    to Grand Union Company, a certain cash escrow fund that was

8    created in the 1995 case, funded by Grand Union Company, was

9    applied to a purported balance owing to Lehman Commercial

10   Paper, Inc.  Mr. Kuntz alleges to have an interest in such

11   escrow, based on his ownership of the zero notes.

12          In support of his claims Mr. Kuntz has admitted, among

13   other things, his own summaries of his alleged claims against

14   Grand Union Capital Corporation, his indecipherable hand-

15   written notes, certain Grand Union circulars and newspaper

16   articles.  None of the documents submitted by Mr. Kuntz

17   reference Mr. Kuntz or any of the debtors in this case in a

18   manner that would give rise to a claim.

19          The surviving claims provide no evidentiary support as

20   to the legal or factual basis of the claims.  Mr. Kuntz fails

21   to provide actual -- any actual information regarding the Grand

22   Union bankruptcies, either the bankruptcy of Grand Union

23   Capital Corp or Grand Union Company or the relationship between

24   those entities.  He fails to provide any documents or evidence

25   that establish he was a holder of notes issued by Grand Union

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 46

1    Capital Corp, that he had a claim against Grand Union Capital

2    Corp based on such notes, that the escrow fund created in the

3    first Chapter 11 case by Grand Union Company even existed, that

4    he had any interest in such escrow, that LCPI or any other

5    debtor received funds from that escrow, that any claim he had

6    against such escrow, against Grand Union Capital Corp, against

7    Grand Union Company leads to liability on behalf of Lehman

8    Commercial Paper Inc. or any debtor in this Chapter 11 case.

9           As stated in our objection, because Mr. Kuntz has

10   appeared in these Chapter 11 cases as a pro se litigant, we

11   used extra effort to decipher the substance of the surviving

12   claims from the information provided by Mr. Kuntz in all of his

13   claims and the public records relating to the three Grand Union

14   Chapter 11 cases.

15          To the best of the debtor's understanding, the

16   surviving claims are based on the following facts, as set forth

17   in detail in the objection.

18          In January of 1995 two related Grand Union companies

19   filed for Chapter 11, Grand Union Company and Grand Union

20   Capital Corporation.  Grand Union Company was the operating

21   entity; Grand Union Capital was the holding company that issued

22   the debt.

23          Grand Union Capital issued the zero coupon notes well

24   prior to the 1995 Chapter 11 case.  Mr. Kuntz alleges that he

25   is a holder of the notes.  Mr. Kuntz failed to attach to his

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 48 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 47

1    proofs of claim or otherwise provide to the debtors or this

2    Court with a copy of any of such notes that he allegedly holds.

3          That being said, upon our review of the Grand Union

4    Chapter 11 cases we do not dispute that Mr. Kuntz was the owner

5    of zero notes in the amount of 892,000 dollars.  Mr. Kuntz

6    alleges but has yet to provide any evidence that he held two

7    other issuances of the notes totally in excess of, I believe,

8    three million dollars.

9          In the first Grand Union Chapter 11 case Grand Union

10   Company and the Official Committee of Unsecured Creditors

11   entered into a settlement with respect to these zero notes.

12   Pursuant to the settlement, upon the effective date of the

13   Chapter 11 plan in that case, the zero notes issued by Capital

14   Corp would be extinguished and the holders of those notes would

15   receive warrants for the purchase of stock in Grand Union

16   Company.

17         Mr. Kuntz filed an objection to the settlement and his

18   objection in that first Chapter 11 case was overruled.  At the

19   plan confirmation hearing Grand Union Company represented that

20   any holder of the zero notes who did not consent to the

21   settlement would be able to keep -- maintain their notes.  Mr.

22   Kuntz opted out of the settlement and was to maintain his

23   notes.

24         Again, the notes were issued by Grand Union Capital

25   Corporation, pursuant to the first Chapter 11 case and the

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 49 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 48

1    confirmed plan in that case, Grand Union Capital Corporation,

2    was to be dissolved upon the effective date of that plan.  The

3    plan was confirmed.  Grand Union Capital Corp was dissolved.

4           Grand Union Company filed its second Chapter 11 case

5    in 1998.  During the course of that case Mr. Kuntz complained

6    to the bankruptcy court that his notes from the first case were

7    converted to warrants and that was improper based upon the

8    statements made at the confirmation hearing because Mr. Kuntz

9    did not consent to the settlement.

10          As a result, in the second Chapter 11 case, Mr. Kuntz

11   and the debtors, at the Court's direction, entered into a

12   stipulation that provided Mr. Kuntz his zero notes in Grand

13   Union Capital Corporation, the entity that no longer existed.

14   Mr. Kuntz then asserts that in the third Chapter 11 case of

15   Grand Union Company a cash escrow fund created in the first

16   bankruptcy case was, in this third bankruptcy case, paid to

17   LCPI.

18          Mr. Kuntz provides no evidence of the existence of an

19   escrow in which he or the holders of the zero notes had an

20   interest.  He provides no reference for the record Grand Union

21   cases, no plan, no agreement, no order of the Court that

22   established any such escrow.  Even if Mr. Kuntz could establish

23   the existence of an escrow, he fails to provide any evidence

24   that the funds from such an escrow were taken by any debtor in

25   this Chapter 11 case.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010    Pg 50 of 89

1            As stated in the objection, a cash escrow fund was

2    created in the first Grand Union Chapter 11 case.  It was

3    created and funded by Grand Union Company in the amount of

4    three million dollars.  The purpose of the escrow was pursuant

5    to a settlement between Grand Union and its financial advisor,

6    Miller Tabak & Hirsch, MTH.  And pursuant to that relationship

7    MTH provided financial advisory services to Grand Union

8    Company.

9            In connection with the first Chapter 11 case, MTH and

10   Grand Union entered into a settlement of certain disputes

11   between them pursuant to which Grand Union Company agreed to

12   indemnify MTH and fund the escrow.  Grand Union Company

13   deposited the three million into the cash escrow account, which

14   funds were to be used only to indemnify and reimburse MTH with

15   respect to certain claims, if any, brought against MTH with

16   respect to its role in Grand Union.

17           The settlement agreement between MTH and Grand Union

18   is not related to the zero settlement and in fact makes no

19   reference to the zero settlement or the zero notes.  Neither

20   the zero noteholders nor Mr. Kuntz had any interest in this

21   escrow.  In fact, as I indicated, the escrow was established by

22   Grand Union Company, an entity separate and distinct from Grand

23   Union Capital Corporation which issued Mr. Kuntz his zero

24   notes.

25           The funds that were deposited in this escrow in the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 50

1    first case were ultimately not needed to reimburse MTH and were

2    distributed back into the general operating account of Grand

3    Union Company in 2000, during the third bankruptcy case.  No

4    escrow agreement was ever created or ever existed in relation

5    to the zero notes.

6        Mr. Kuntz' responses to our objection contain

7    information and allegations that are unsupported by fact or

8    law.  Mr. Kuntz alleges that a transcript from one Grand Union

9    case reflects that a cash escrow was applied to Lehman debt.

10   Mr. Kuntz did not provide a transcript, a quote from such

11   transcript, any motion filed seeking to disburse such funds, an

12   order of the Court authorizing the disbursement of such funds,

13   no evidence whatsoever.

14       Mr. Kuntz also alleges that a deposition purportedly

15   taken from him by counsel to Grand Union somehow evidences his

16   interest in Grand Union Capital Corporation and in these escrow

17   funds.  Mr. Kuntz fails to provide such -- a transcript of such

18   deposition or any additional details.

19       Pursuant to his surviving claims, Mr. Kuntz alleges

20   claims against LCPI in the aggregate amount of over eleven

21   million dollars, not an insignificant claim.  One would assume

22   that Mr. Kuntz would have sought to recover his eleven million

23   dollars, in his notes, well before September 2009 given that

24   this escrow was created in 1995.

25       Mr. Kuntz provided no evidence of any letters, other

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 52 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

1    communications with Grand Union, seeking to recover the eleven

2    million dollars from any of the Grand Union entities.  He

3    didn't file any action in state or federal court in the fifteen

4    years seeking payment of his eleven million dollars.  In fact,

5    Mr. Kuntz, as I indicated, objected to the zero coupon

6    settlement and got to keep his notes against Grand Union

7    Capital Corporation.

8            He objected to the plan confirming the first Chapter

9    11 case, which established the escrow in favor of MTH in the

10   amount of three million dollars.  He objected to that plan, his

11   objection was overruled, the plan was confirmed.

12           In the second Chapter 11 case he obtained a

13   stipulation, again reinstating his notes against Grand Union

14   Capital Corporation, now a dissolved entity.  And finally, as

15   indicated in our reply and supplied as an exhibit to the reply,

16   in the third Chapter 11 case Mr. Kuntz appeared and filed a

17   lift stay motion seeking to access the escrow funds on account

18   of his interest in the zero notes.  He fully litigated that

19   lift stay motion and the relief was denied.

20           Each of these, separately and taken together, are res

21   judicata for all the claims he seeks to assert here, before we

22   even get to whether or not these funds were disbursed somehow

23   to LCPI, for which there is no evidence.

24           In sum, Your Honor, Mr. Kuntz hasn't provided one

25   shred of evidence to support these fictitious theories

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 53 of 89

Page 52

1    amounting to his signed and filed claims in the amount of

2    eleven million dollars.  Not a single pleading, agreement,

3    letter, decision of the court, transcript or other evidence.

4    Nothing.

5            We, the debtors, have scoured the information he

6    provided and the Grand Union Chapter 11 cases, all three of

7    them, and we have found no evidence that he has any interest in

8    an escrow or that funds were inappropriately disbursed to LCPI.

9            Mr. Kuntz can't provide such evidence because no such

10   evidence exists.  His attempt to collect his fictitious claim

11   from the debtor's estate, to the detriment of all of the

12   legitimate creditors in these Chapter 11 cases, cannot

13   continue.  He has not and cannot meet his burden to establish a

14   valid claim against these debtors and we request that the Court

15   overrule Mr. Kuntz' responses and that the debtor's objections

16   be granted and Mr. Kuntz' remaining claims be expunged.

17           THE COURT:  All right.  Thank you.  Mr. Kuntz?

18           MR. KUNTZ:  Thank you, Mr. Waisman.  I think you

19   should take up a career in writing fiction.

20           THE COURT:  What did you say?

21           MR. KUNTZ:  I think he should take up a career writing

22   fiction, Your Honor.

23           THE COURT:  That's -- that's -- that's really an

24   inappropriate comment.

25           MR. KUNTZ:  That's not inappropriate.  I have the

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 54 of 89

Page 53

1   decision of Judge -- District Court Judge Martini.

2          THE COURT:  What does that have to do with what he

3   just said?

4          MR. KUNTZ:  Weil Gotshal is co-counsel to Grand Union

5   in New Jersey.  Now they profess to know nothing, we don't know

6   anything.  They were paid millions of dollars in fees.  Mr.

7   Tannenbaum was copied on their own exhibit.  He's a partner in

8   their firm.  In their own exhibit it discusses the cash escrow

9   account.  Okay.  I just want to clear this first.

10         THE COURT:  Mr. Kuntz, I've read your papers, I read

11  your affidavit.  This is your opportunity to respond --

12         MR. KUNTZ:  All right, Your Honor.  I will give --

13         THE COURT:  -- will you listen to me, first?

14         MR. KUNTZ:  Yes, Your Honor.

15         THE COURT:  This is your opportunity to respond to the

16  objection that has been and in particular to the allegation

17  that you have no proof that LCPI or any other Lehman entity

18  took, inappropriately, any funds in which you might have a

19  legitimate interest.

20         So the essential question before the Court has nothing

21  to do with Weil Gotshal, it has everything to do with you.  How

22  do you prove a claim?

23         MR. KUNTZ:  I understand, Your Honor.  May I digress

24  for a moment?  Before Your Honor --

25         THE COURT:  If you can just answer the question.

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 55 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 54

1           MR. KUNTZ:  May I digress for a moment?  Before Your

2     Honor has to relive and go through all this Grand Union

3     situation and without the help of counsel for the debtor, I've

4     discovered that there remains unclaimed funds in the Grand

5     Union episode in New Jersey, with the Department of Unclaimed

6     Funds.

7           Now it's my understanding, since they only provided

8     the plan from the first Grand Union things, that those are

9     potentially Lehman Brothers funds.  And in the interest of

10    judicial economy, since Judge Winfield has already lived these

11    two cases in New Jersey, that the question of my interest in

12    the escrow fund be considered by her.  And if Your Honor says

13    no, I'm happy to proceed.  If Your Honor would like to consider

14    it, I think it would save Your Honor a lot of aggravation and a

15    lot of time if Judge Winfield, who considered both cases and

16    came up with the order replacing the missing stock certificate,

17    has an opportunity now, eleven years later, to decide on a cash

18    escrow account that should have been decided fairly and fully

19    eleven years ago.

20          That is, I've heard often in this courtroom, oh but

21    out of an abundance of caution we're coming here, this, that

22    and the other.  They had an opportunity eleven years ago to put

23    the question of the escrow before Judge Winfield and say is it

24    okay that we have the money, can it go into Grand Union, is it

25    not okay?  Should you go back down to Judge Walsh in Delaware,

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 55

1   since it's his original case?  They chose to assume the risk of

2   not putting it before Judge Winfield.  They chose to assume the

3   risk of not putting it before Judge Walsh, okay.

4        And my situation is rather unique and it hasn't been

5   addressed by counsel yet.  I'm the holder of zero coupon notes.

6   I understand that as a holder of the notes my rights to

7   challenge the actual escrow, although I might have gone and

8   said something, the rights to challenge the escrow belong to my

9   indentured trustees, they don't belong to me.  My rights over

10  in New Jersey were the rights to the ownership of the security

11  that went missing in the back office of which is now Wells

12  Fargo advisors.  The rights to go after the escrow belongs to

13  the -- that is the power and the rights, belongs to the

14  indentured trustee of a zero until the date the zeros mature.

15  These zeros did not mature until 2004 and 2007.

16       So my understanding is, I might have been very unhappy

17  with the situation, and I said so before Judge Winfield and I

18  said it in two different cases, but the actual power to go

19  after the escrow didn't belong to me, it belonged to the

20  trustees, U.S. Bank and now HSBC.  And I remember Your Honor's

21  decision with the Hong Kong mini bonds eighteen months ago.  I

22  was very concerned that Mr. Waisman was going to pick up on

23  that because you know what, and I'm being candid, had he used

24  that I would have been out of this case a year and a half ago,

25  because it's my trustees that had, before the maturity of the

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 57 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

1   notes, the power and the right to go after the escrow.

2        Now statistically, 99.7 percent of the bondholders

3   tendered.  So my understanding is there was a 700 million

4   dollar issue sold to bail out Solomon Brothers and

5   statistically that violates the Martin Act in this state.  They

6   sold 700 million dollars worth of securities and nobody got

7   paid.

8        Now the coverage on the notes, 99.7 percent tendered,

9   that is 700 million versus the three million escrow, went down

10  to where my notes were covered.  MHT was not the financial

11  advisor.  MHT, as reflected in many places, was the controlling

12  entity of Grand Union as well as Penn Traffic stores in

13  Syracuse.  It's listed all throughout the papers and Mr.

14  Waisman says, oh there's nothing in our papers.  In their own

15  exhibit it references, in Exhibit 4 I believe, Grand Union,

16  Miller Hirsch Tabak, zero coupon notes, sign the release, we're

17  home free escrow.

18        So what you have here Your Honor is really knotty

19  little problem of bondholders, trustee, a cash escrow account,

20  what happened in their own exhibit it says that the cash escrow

21  account went into Grand Union's operating account.  Lehman was

22  the creditor, the fund were co-mingled.

23        And I've shown in the exhibits, CNS that bought Grand

24  Union is stonewalling me.  The state comptroller's office moves

25  at a speed of snail that would make a race horse at Saratoga

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 58 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 57

1    seem fast.  So I'm here, no discovery, this firm was co-counsel

2    to Grand Union in New Jersey and they're saying we don't have

3    any records, we don't know.  And as I put in my affidavit, all

4    my records were destroyed.  I'm really sorry about that, or

5    else I would have provided copies of the deposition.  But I had

6    an unfortunate episode in upstate New York, a house was sold

7    where all my stuff went and it's all gone.  And I have the

8    original correspondence if Your Honor would choose to look at

9    it at some future point.

10            THE COURT:  I don't mean to break in.

11            MR. KUNTZ:  Go right ahead, Your Honor.

12            THE COURT:  I think you have just said that you lack

13    the ability to present any documents in support of the

14    arguments made in your proof of claim and in your various

15    submissions, that there is Lehman related liability for what

16    happened in the Grand Union bankruptcy case, is that correct?

17            MR. KUNTZ:  No, I didn't say that.  I said in my

18    papers I said all the Grand Union records that are available

19    and have been available to this firm who is co-counsel, are in

20    the federal records repository.

21            Now as I understand, under the local rules --

22            THE COURT:  Just answer my question, which was the

23    first question that I posed to you and you said you were going

24    to, with permission, say some other things that were not

25    responsive and I'm not sure if you're yet to the point of

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 59 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 58

 1    responding to my question, which is why I interrupted.

 2            You said that you lost, as a result of the loss of a

 3    house upstate --

 4            MR. KUNTZ:  Yes, Your Honor.

 5            THE COURT:  -- access to a number of personal records.

 6            MR. KUNTZ:  Yes, Your Honor.

 7            THE COURT:  As a result of which you no longer have

 8    copies of certain documents that used to be in your possession,

 9    is that correct?

10            MR. KUNTZ:  That's correct, Your Honor.

11            THE COURT:  Okay.  So my question to you is, do you

12    have available to you any proof that would connect your claims

13    in the Grand Union case to Lehman Brothers?

14            MR. KUNTZ:  I believe it's in their own exhibit.  It's

15    in the letter from the attorney sent to Judge Winfield.  It

16    discusses the escrow account; it discusses depositing the

17    escrow account in there.  It copies Mr. Waisman's firm.

18    Attached to my first reply is the security -- the outline of

19    the security interest of Lehman Commercial Paper and Grand

20    Union.

21            THE COURT:  Well, this isn't a --

22            MR. KUNTZ:  It's all there before Your Honor.

23            THE COURT:  This isn't a mystery novel.  It's not

24    something I or anybody --

25            MR. KUNTZ:  It's already there, Your Honor.  I've

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 60 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 59

```
 1   already provided it.

 2          THE COURT:  Wait, Mr. Kuntz.  We have to have a

 3   respectful dialogue, which means that I listen to you and you

 4   listen to me.

 5          MR. KUNTZ:  Thank you, Your Honor.

 6          THE COURT:  Where is there proof that connects your

 7   claims, whatever they may be, relating to Grand Union to any

 8   debtor?

 9          MR. KUNTZ:  Can I refer to the May 11, 2011 (sic)

10   letter of Raven Greenberg, co-counsel to Weil Gotshal, which is

11   contained in their objection to my claims?  It's a five-page

12   letter.  I'm not going to, necessarily, read off it.  It says

13   quite clearly in there that they discussed the cash escrow,

14   they discuss it being deposited.

15          THE COURT:  Well, even if there is a cash escrow and

16   even if you have claims against the cash escrow, what is your

17   claim that Lehman improperly took a cash escrow to your

18   detriment?

19          MR. KUNTZ:  I didn't say improperly yet.  I haven't

20   been allowed any discovery, Your Honor.  I'm simply -- you

21   know, for two years I was basically scoffed at.  Your Honor was

22   questioning whether there was even an escrow.  Well, lo and

23   behold, today there was a three million dollar escrow.

24          You know, co-counsel to Grand Union paid fifteen,

25   twenty million dollars in legal fees, full access to all of
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 61 of 89

Page 60

 1   Grand Union records, well we can't find your deposition.

 2   They've had a year and a half, two years, to ask and how many

 3   hundreds of millions of dollars have been paid to professionals

 4   here?  Do you think they could send something off to the

 5   federal records repository, a seventy-five dollar check, send

 6   us a copy of your Grand Union papers.  They haven't done it.

 7         Your Honor has said the burden shifts back and forth.

 8   Valid claim, objection, back to me, the ball's in my court.  In

 9   their own document it discusses the cash escrow.

10         THE COURT:  Mr. Kuntz, I'm asking you a very focused

11   question.

12         MR. KUNTZ:  I don't know the answer to that question,

13   Your Honor.

14         THE COURT:  How --

15         MR. KUNTZ:  Because there's no follow through.

16         THE COURT:  How do you intend, today or any other day,

17   to meet your burden of proof to establish a causal link between

18   your claims, whatever they may be in the Grand Union bankruptcy

19   and any cognizable claim in the Lehman bankruptcies?

20         MR. KUNTZ:  It's very simple, Your Honor.  Under the

21   escrow agreement, if it can be established.  Statistically, I

22   believe, it's already established, but if it can be established

23   to Your Honor's legal satisfaction that the Miller Hirsch firm

24   violated the Martin Act in this state, that would allow me an

25   interest in the escrow fund because the escrow fund was

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 62 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 61

1    created, not them as financial advisors, they were the

2    controllers.

3              It says clearly that they assisted Solomon Brothers in

4    purchasing Grand Union and they did the underwriting when Grand

5    Union went private, so to speak, and Solomon Brothers, and the

6    underwriting was done by Goldman Sachs, 700 million dollars in

7    bonds sold to three or four large mutual funds, Solomon

8    Brothers, at the time controlled by Mr. Goodfriend and then Mr.

9    Buffett got the proceeds.  Five years later, they take the 99.7

10   wipe out, 700 million dollars gone.

11             I think anybody who understand anything about the

12   Martin Act, that's a prima facie case that there's a violation.

13   It may not be a legal case but it's a prime facie case that

14   there's a violation of the Martin Act and a violation of the

15   Martin Act allows me to reach toward the escrow fund.

16             That doesn't mean -- and I don't really know what

17   happened to the escrow fund.  It went in and CNS came along and

18   they gave Lehman I don't know how many hundreds of millions of

19   dollars so there was a co-mingling.  And I'm simply -- it's my

20   belief that I have an interest, now, in that fund and I've done

21   it by filing proof of claims.  And quite frankly, I shouldn't

22   even be standing here.

23             U.S. Bank and HSBC, who were the respective trustees,

24   should be doing this work for me, but they don't care because

25   they already got their money and as far as they've concerned

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 63 of 89

Page 62

1   they've purged their records in their computers.  Nobody knows

2   nothing, nobody cares nothing because I'm just some stupid

3   retail investor who's trying to get to the table in basically a

4   case where the institutional investors are invited and I'm just

5   some sort of interloper who's been after this money for fifteen

6   years.

7          And I'm trying to do it -- and my understanding of the

8   constraints on me as a holder of these securities, where

9   there's trustees, where I did not take the situation in

10  Delaware, where one of the three securities was gobbled up by

11  the back office of the Depository Trust Company, it took two

12  years to get Judge Winfield to order that back.

13         So I'm  here today, after two years of oh there isn't

14  even an escrow account, well there was an escrow account and

15  it's colorable now before Your Honor, or unless Your Honor, as

16  I suggested, wants to send it to Judge Winfield, it remains to

17  be further inquired into.  I've had no discovery.  Nobody

18  showed me anything.  CNS is, like, we're not going to give you

19  anything; if you do anything further we're going to sue you.

20  The state comptroller's office does nothing.

21         THE COURT:  Mr. Kuntz --

22         MR. KUNTZ:  Mr. Waisman's firm has full access to the

23  deposition.

24         THE COURT:  Mr. Kuntz?

25         MR. KUNTZ:  Yes, Your Honor.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 63

1          THE COURT:  Do I understand from what you've said that

2     your claim in the present bankruptcy case before me is based

3     upon your belief, to use the word that I heard you articulate,

4     that the escrow has ended up in Lehman's accounts co-mingled

5     with other funds?  Is that the basis of your claim?

6          MR. KUNTZ:  That's close to it.

7          THE COURT:  What's the basis of your claim?

8          MR. KUNTZ:  The claim would be one step further

9     removed, that it went in co-mingled at Grand Union, subject to

10    Lehman's security interest, then, I believe, a 363 buyer came

11    along and purchased Grand Union and Lehman got paid.

12         So at a certain point the escrow, sort of, goes off

13    the radar.  There was no hearing before Judge Winfield; there

14    was no hearing before Judge Walsh.  And it's now somewhere in

15    the overall Lehman balance sheet of problems and that's what I

16    believe.

17         THE COURT:  Okay.  I understand that's what you --

18         MR. KUNTZ:  I'm sorry I just don't have a cut and

19    dried situation.

20         THE COURT:  I understand that's what you believe.  How

21    does what you believe translate into a claim against the Lehman

22    estate that is entitled to allowance?

23         MR. KUNTZ:  It's the violation of the Martin Act,

24    creates a superior claim to the escrow fund that Lehman, as a

25    creditor of Grand Union, then my claim prevails and therefore

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 65 of 89

Page 64

1    my claim in this case prevails.

2            THE COURT:  I didn't understand what you just said.

3            MR. KUNTZ:  The Martin Act is a law in New York State

4    that prevents the sale, fraudulent sale of securities.  Seven

5    hundred million dollars sold in securities, payment -- very,

6    very micro amount of payment.  Most people would think if you

7    gave somebody a hundred dollars and you got a nickel back or a

8    penny you were swindled, to use Victor Kurtz' term.

9            The escrow fund was created as, sort of, cold comfort

10   to Miller Hirsch & Tabak, who were controlling Grand Union

11   having bought it from Solomon Brothers and underwritten it

12   through Goldman Sachs, as cold comfort for perhaps six, seven,

13   eight years when the writing, in essence, the time and the

14   writing came on the wall that Grand Union was going to be gone

15   and only their trade dress remains in the retail market, they

16   decided to pocket the escrow account.

17           There was no hearing before Judge Winfield.  There was

18   no hearing before Judge Walsh.  It was a very simple deal.  The

19   matter was already before Judge Winfield.  All they had to do

20   was say, Your Honor; we would like Your Honor's approval for us

21   to deposit this escrow into Grand Union's operating account.

22   Judge Winfield would have said, Mr. Kuntz what do you say?

23   That didn't happen.  Judge Winfield was already troubled by the

24   fact that almost a million dollar security had gone missing.

25   And she -- you know, there was paperwork in there and finally I

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 66 of 89

Page 65

1    accepted the return of my security, which is what I wanted all

2    along.

3              It would have been very simple, since she was already

4    up to speed on the situation, for them to say we'd like the

5    Court's approval of the escrow and Judge Winfield could have

6    said, well, this should have been Judge Walsh.  He created --

7    he approved this in '95.  Go down to Delaware, take Amtrak down

8    to Delaware and talk to him.  Or she could have said it's not

9    really in my case, go right ahead.  Mr. Kuntz, if you don't

10   like it go across the street or go upstairs, talk to the

11   district judge in New Jersey.  That didn't happen.  That did

12   not happen.  And I have heard over and over again, ad nauseam,

13   in an abundance of caution.  That didn't happen.

14             You have -- they took a calculated risk.  They never

15   thought Lehman Brothers, in their wildest dreams, eleven years

16   ago would end up here in this court.  The strong of hands of

17   Lehman Brothers, maybe they played a little shell game, it went

18   here, it went there, the fundamental proceeds ended up in

19   Lehman's hands and that's why I'm here today.  And I've already

20   demonstrated I saw trouble come with Lehman, I sold my stock.

21   The excess money that I had in Lehman was deposited there.  I

22   had already started action in New York State Supreme Court

23   before Lehman filed bankruptcy, that was in my automatic stay

24   litigation.

25             I asked to come here to continue with that, Your Honor

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 67 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 66

1   denied it.  Weil Gotshal says we don't know anything about

2   Grand Union, what's this?  It turns out they were co-counsel.

3   District Court judge decision, letter opinion, co-counsel to

4   Grand Union.  It's outrageous that they sit here and act like

5   they don't know anything about Grand Union, they know

6   everything about it.

7          And you know -- and quite frankly the money has

8   nothing to do with it.  The money is just how everybody in this

9   room, the few that are here today, keep score, trading claims,

10  this, that and the other.  The reason for the objection is to

11  still the voice of dissent, just like out in Oklahoma.  But in

12  Oklahoma the CFS case, Judge Rasure's case out in Tulsa.  You

13  may recall, Your Honor, it started off when I asked to have the

14  stay lifted and a large document was filed listing all these

15  various cases that I've been involved in.

16         THE COURT:  I'm familiar with that.

17         MR. KUNTZ:  In that case in Oklahoma my credit card

18  account was an asset of the estate.  I was a judgment debtor of

19  Key Bank.  In this case I'm pursuing an escrow account that I

20  believe is colorable sufficiently enough for my claim to

21  withstand this challenge and go over into an evidentiary

22  hearing, which is provided by the local rules.

23         Now, if the four gentlemen are gentlemen they'll come

24  to court without a subpoena.  I'm not so foolish as to think

25  I'm going to issue subpoenas so the retired chairman of Solomon

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 68 of 89

Page 67

1    Brothers, a partner of the firm, a former partner of the firm.

2    If they'll come along to court, so be it.  If they won't come

3    along to court, Your Honor can draw your own conclusions.  If

4    they're gentlemen they will come, no matter what their personal

5    risk.

6          Solomon Brothers was almost a mirror image of Lehman,

7    except that it didn't collapse.  Thank you, Your Honor.

8          THE COURT:  Mr. Kuntz, I --

9          MR. KUNTZ:  Go ahead and rule.

10         THE COURT:  I actually am not ready to rule, I need to

11   hear more from you.

12         MR. KUNTZ:  Thank you, Your Honor.

13         THE COURT:  I need to hear some more focused comments,

14   though.  You have a burden proof and you recognize that.  You

15   have a belief which you have used as the basis for filing a

16   number of proofs of claim against Lehman Brothers.

17         I am still struggling in my attempts to understand how

18   your sincere belief that money that you have a claim to from a

19   Grand Union bankruptcy case in New Jersey --

20         MR. KUNTZ:  Delaware, Your Honor.

21         THE COURT:  Well, I thought that we had a Judge

22   Winfield case in the third Grand Union case in which you

23   appeared, correct?

24         MR. KUNTZ:  Second and third.

25         THE COURT:  There were two in Delaware and one in New

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 69 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 68

1    Jersey?

2            MR. KUNTZ:  Two in New Jersey.  The first one was in

3    Delaware.

4            THE COURT:  That was Judge Walsh's case?

5            MR. KUNTZ:  Right.  There was Judge Walsh.  There was

6    Grand Union Company, Grand Union Capital and Grand Union

7    Holding.

8            THE COURT:  The record will reflect, in those cases,

9    where they were filed but let me get it right.  First one was

10   in Delaware before Judge Walsh.

11           MR. KUNTZ:  That's correct, Your Honor.

12           THE COURT:  Then the second and third cases were in

13   front of Judge Winfield in New Jersey, correct?

14           MR. KUNTZ:  Yes, Your Honor.

15           THE COURT:  You were a creditor in all three cases?

16           MR. KUNTZ:  No.  I was a creditor in the New Jersey

17   cases only to the extent that the 892,000 face, which is the

18   smallest of the three that I owned, I had -- there was an

19   exchange period.  I waited a year and so many months, I held

20   the security out.  I put the security back into my account on

21   Park Avenue and the depository trust company, the next morning,

22   converted it into warrants.  That is -- I didn't sign the

23   transfer agreement or anything.  We had two years go around.

24   Judge Winfield says give it back and at which point my claim

25   was expunged from the New Jersey case and that was it.

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 70 of 89

Page 69

1            THE COURT:  All right.  I'm just trying to get some

2    basic facts understood and mostly it has to do with your

3    ability to prove a claim here.

4            As I understand your belief, it is that Lehman

5    Brothers --

6            MR. KUNTZ:  Commercial Paper.

7            THE COURT:  -- LCPI, has liability to you in

8    connection with certain activities that took place in a New

9    Jersey bankruptcy, is that correct?

10           MR. KUNTZ:  Yes, Your Honor.

11           THE COURT:  And is it in the second or the third cases

12   or both cases that this liability creating activity took place?

13           MR. KUNTZ:  I believe, if I'm looking at the exhibits

14   to my first one, I'm looking at June 24th, 1998 revolving

15   credit agreement between Grand Union and Lehman Brothers,

16   Lehman Brothers Commercial Paper, SBC Warburg Dillon Read.  A

17   300 million dollar senior secured credit facility between Swiss

18   Bank Corporation, Lehman Commercial Paper and SBC Warburg

19   Dillon, and these are pages -- these are right after the

20   district court letter opinion where -- mentioning Grand Union

21   as co-counsel, they're right in here.

22           And to my knowledge, somehow or the other, and I don't

23   know the nuts and bolts of it, the three million went in and

24   got sucked up into the Lehman vacuum cleaner.  Now whether it

25   went here, there or jumped around, like, you know, a piece of

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 71 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 70

```
 1    popcorn or something on a hot griddle, I don't know because

 2    they won't tell me.  CNS won't tell me.  The State of New York

 3    won't bother.  I haven't had any discovery per se.  And as Mr.

 4    Waisman refers to my handwritten notes, I'm sorry I don't have

 5    a big staff, I've tried to pursue the information that I need

 6    to really prove my claim, rather than get close to my claim.

 7               THE COURT:  Okay.  Well, I'm still trying to

 8    understand what your claim is.  So let's understand first what

 9    your claim is and then understand whether or not you have any

10    ability to prove it.

11               MR. KUNTZ:  Thank you, Your Honor.

12               THE COURT:  Is your claim a claim that is, in effect,

13    a derivative of what happened in New Jersey before Judge

14    Winfield?

15               MR. KUNTZ:  No.

16               THE COURT:  It's not based upon what happened in New

17    Jersey?

18               MR. KUNTZ:  No, it's what happened in Delaware.

19               THE COURT:  What happened in Delaware?

20               MR. KUNTZ:  Grand Union Company made a settlement with

21    Grand Union -- well, let me back up.

22               Grand Union Company went into bankruptcy.  Capital and

23    Holding, the parents, were, sort of, out there and there was a

24    lot of anger when it was determined that, for whatever reason,

25    even though 700 million dollars had gone into Grand Union
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 72 of 89

Page 71

1    Capital in the morning and gone out in the afternoon, Grand

2    Union Capital didn't have promissory note, didn't have a

3    cancelled check, they had no way to really become the major

4    claimant in Grand Union Capital.

5           So a settlement was made and Grand Union Company was

6    reorganized, the grocery store chain, and went on and filed

7    bankruptcy a couple more times and now is liquidated and runs

8    as C&S Wholesalers in New Hampshire.

9           Grand Union Capital and Grand Union Holdings never

10   filed a plan of reorganization.  There was never a confirmation

11   of a plan, that was never filed.  The cases were dismissed by

12   Judge Walsh and the companies were liquidated or dissolved in

13   Delaware without notice or distribution to the creditors.

14   Twelve million dollars of assets that were reported, in my

15   recollection, to the best of my information, twelve million

16   dollars of intercompany assets in Grand Union Capital Corp went

17   missing.

18          The only tail end of that money to ever show up was

19   deposited by Grand Union Capital Corp with the New York State

20   comptroller in Albany, and that's in my exhibit.  That's -- out

21   of twelve million dollars of assets, everything was gone and it

22   all went to some office in Wayne, New Jersey run by Miller

23   Hirsch & Tabak.

24          THE COURT:  Mr. Kuntz --

25          MR. KUNTZ:  Now the three million was separate from

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 73 of 89

Page 72

1    that.  Thank you, Your Honor.

2            THE COURT:  Mr. Kuntz, you had, at some point, zero

3    coupon notes issued by Grand Union Capital Corporation?

4            MR. KUNTZ:  Yes, Your Honor.

5            THE COURT:  And you had various claims evidenced by

6    those notes, were those claims treated in each of the three

7    bankruptcies?

8            MR. KUNTZ:  No.

9            THE COURT:  Did you have a claim in the Delaware

10   bankruptcy?

11           MR. KUNTZ:  The claims that were asserted on my behalf

12   were asserted by Grand Union Capital's indentured trustees, not

13   dissimilar to what's happening in this case.  That is, there

14   was a trustee.  The trustee went forward before Judge Walsh in

15   Grand Union Company.  They approved the settlement and at the

16   settlement hearing there was an oral modification that said Mr.

17   Kuntz is not taking the deal and his notes are not cancelled

18   and his indenture basically remain in full force and effect.

19           THE COURT:  Is it correct that whatever claims you

20   assert here those claims are predicated upon your historical

21   ownership of the zero coupon notes that were issued by Grand

22   Union Capital Corporation?

23           MR. KUNTZ:  Yes, Your Honor.

24           THE COURT:  Do you still have those notes?

25           MR. KUNTZ:  Yes, Your Honor.  Well, I have two

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 74 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 73

 1    physical notes which my son Andrew has at my ex-wife's house in

 2    upstate New York, which is a long story.  And the third is

 3    reflected by the stipulation which is in the exhibit with Judge

 4    Winfield, which actually went back into my account at Wells

 5    Fargo and then they lost it again, but that's another story.

 6    And I can produce those in time, but not today.

 7              THE COURT:  Do those notes represent claims against

 8    the three million dollar escrow fund?

 9              MR. KUNTZ:  I believe they do.

10              THE COURT:  What's the basis for that belief?

11              MR. KUNTZ:  That as the sole remaining -- as a

12    creditor of Grand Union Capital Corp, that is the failure --

13    that is had Grand Union Capital put on a plan, no asset

14    liquidation, whatever, I would have been wiped out.  That would

15    have been it twelve, fifteen years ago.  But when they

16    dismissed the bankruptcy cases without a plan and they

17    dissolved the corporations in Delaware without notice or

18    distribution to the creditors, that's all part of the scheme in

19    the Martin Act.

20              I mean, if I was as clever as some of the lawyers here

21    I might even have been able to make a reco but I'm not that

22    ambitious or that smart.  I just know that if there's -- if you

23    have securities and the company that issues the securities

24    takes off and all the money disappears and there's nothing

25    except teeny little fragments on deposit in Albany, that's

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 75 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 74

 1   basically pretty -- to me it pretty much indicates that there's

 2   a violation of the Martin Act.  Because all through the

 3   documents these things are governed under New York law, not New

 4   Jersey law, not Delaware law, New York law and New York law is

 5   where the Martin Act resides and therefore, I think, that if

 6   statistically, as I said, the violation of the Martin Act is

 7   established.  Legally I don't know because I don't have any

 8   information.  I haven't seen any of the memos.  For instance,

 9   there's no smoking gun, an e-mail from somebody to somebody

10   saying let's do this; let's not put this before Judge Winfield

11   she might give Kuntz the three million.  That's my thought, was

12   that Judge Winfield might have just given me the escrow

13   account.

14          THE COURT:  At what point do you allege that Lehman

15   Commercial Paper did anything to your detriment?

16          MR. KUNTZ:  I believe it would be reflected in the

17   exhibit that they have to their motion, reflected in the letter

18   from their co-counsel.

19          THE COURT:  I'm not understanding that reference.

20          MR. KUNTZ:  There's a letter --

21          THE COURT:  What did they do that hurt you?

22          MR. KUNTZ:  They knowingly took an escrow account, by

23   circuitous routes, that they knew or should have known that I

24   had a superior claim to and they denied it.

25          THE COURT:  What was the amount of that claim?  How

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 76 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 75

```
 1    much of that three million dollar escrow represented anything

 2    that you were entitled to?

 3            MR. KUNTZ:  All of it.

 4            THE COURT:  Why?

 5            MR. KUNTZ:  Because my bonds exceed the amount of the

 6    escrow account.

 7            THE COURT:  And why did the three million dollar

 8    escrow account represent security for your bonds?

 9            MR. KUNTZ:  I didn't say security.

10            THE COURT:  What gave you any entitlement to a nickel

11    in that account?

12            MR. KUNTZ:  Because the escrow account was set up to

13    protect the controllers of Grand Union from violations of law,

14    as said in their papers.  And the Martin Act is a law to

15    prevent the fraudulent sale of securities.  If they sell 700

16    million dollars of securities and nobody gets paid, nobody gets

17    paid, if I don't get paid then, say, Putnam funds sitting in

18    Boston, Lutheran Brotherhood, they might come back and say gee,

19    Solomon Brothers, Smith Barney, Mr. Buffett, where's our money?

20    You can't sell -- I mean, that's what this case is all about,

21    is securities law, bonds, stocks, this, that and the other.

22            In New York State, this is not the Bahamas as Your

23    Honor's already expressed a distrust for or some third world

24    country.  You can't sell 700 million dollars worth of bonds

25    across the stock market and nobody gets paid.  In the old time
```

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 77 of 89

Page 76

 1    parlance of Victor Kurtz, that's a swindle and that's what it

 2    is.

 3            THE COURT:  Mr. Kuntz, I'm simply focused on a very,

 4    very narrow point.

 5            MR. KUNTZ:  I understand, Your Honor.

 6            THE COURT:  And my point is do you have a claim in

 7    this case?

 8            MR. KUNTZ:  Yes, Your Honor.

 9            THE COURT:  That's what I'm trying to understand.

10    You're saying yes, I don't understand why you have a claim in

11    this case.  You haven't made that clear to me nor have you

12    demonstrated an ability to prove that you have a claim.  This

13    is your chance to do just that.

14            MR. KUNTZ:  Your Honor, I believe under the notice for

15    the 9000 Rule notice, it's in the rules that if you're going to

16    call witnesses there's got to be another hearing.

17            Now, I basically laid it out as best I can.

18            THE COURT:  Are you going to call Warren Buffett?

19            MR. KUNTZ:  I wrote a letter to him, you saw it.

20            THE COURT:  I did see it.

21            MR. KUNTZ:  I am not --

22            THE COURT:  What does Warren Buffett have to do

23    with --

24            MR. KUNTZ:  He was the chairman of Solomon Brothers

25    when they took the 700 million.

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 78 of 89

1          THE COURT:  What does that have to do with whether you

2     have a claim?

3          MR. KUNTZ:  He has personal knowledge if it was a

4     fraud or not.

5          THE COURT:  What does that have to do with whether you

6     have a claim against LCPI here?

7          MR. KUNTZ:  Because if the Lehman Brothers -- if the

8     escrow account was tainted by a violation of the Martin Act

9     then my claim to the funds is superior to them as the creditor

10    to Grand Unions.  Proceeds of a crime, call it what you want.

11    If there's a violation of the Martin Act then my rights to that

12    fund is superior to them as a bread and butter lender.

13         THE COURT:  Mr. Kuntz, do you want an evidentiary

14    hearing?

15         MR. KUNTZ:  If Your Honor wishes?

16         THE COURT:  No.

17         MR. KUNTZ:  I've asked for it.

18         THE COURT:  I've asked, do you want an evidentiary

19    hearing?

20         MR. KUNTZ:  Yes, I do.

21         THE COURT:  And what witnesses do you intend to call

22    and what evidence --

23         MR. KUNTZ:  I've already listed them.

24         THE COURT:  -- and what evidence do you intend to

25    offer?

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
LEHMAN BROTHERS HOLDINGS INC., et al.
D-Transcript of Hearing Oct 27 2010   Pg 79 of 89

Page 78

```
 1              MR. KUNTZ:  I'm going to ask their testimony, what

 2      they know about Grand Union.  I'm going to ask Mr. Dannenberg

 3      what about this letter here.  I'm going to ask Mr. Basta the

 4      former partner did you guys cook up the deal to push away the

 5      escrow account?  Why didn't you put it before Judge Winfield?

 6      You were there every week for two years, you had three, four

 7      hundred million dollars tied up with Lehman Brothers, your

 8      client, at the same time you were co-counsel.  Why didn't you

 9      just simply go to Judge Winfield, say Judge Winfield can we

10      take the escrow account?  Kuntz is over there, he's all ticked

11      off about this escrow account, can we have the money.

12              Did they do that?  No, they didn't do it.  They chose

13      to assume the risk and in this case they never thought eleven

14      years ago that Lehman Brothers, Lehman Brothers was the big,

15      strong, 300 billion, you know, whatever, they never thought it

16      would be here.  I never have the opportunity to even get a

17      recovery if Lehman hadn't filed.

18              THE COURT:  Okay.  I'm going to ask --

19              MR. KUNTZ:  Thank you, Your Honor.

20              THE COURT:  I'm going to ask debtor's counsel whether

21      or not debtor's counsel has a position on the request made by

22      Mr. Kuntz for an evidentiary hearing that would include a

23      number of witnesses who so far have simply been asked to

24      consider voluntarily appearing at such a hearing.

25              MR. WAISMAN:  Your Honor, first of all, Mr. Kuntz has
```

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 80 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 79

 1    not made out a prima facie claim.  And even assuming everything

 2    he has said to this Court today and the paltry documentation he

 3    has submitted, even assuming it is all correct, true and

 4    accurate, it does not give a rise to a claim against LCPI or

 5    any of the debtors and there is no need and he has no right to

 6    an evidentiary hearing.

 7            If we're going to entertain an evidentiary hearing,

 8    Your Honor asked him what do you -- what do you intend to

 9    present and everything he's already told us he intends to

10    present is wholly irrelevant.

11            Your Honor saw his request for testimony was never

12    properly served.  He requested voluntary appearances here

13    today.  I don't see Mr. Buffett here; I don't see Jeff

14    Tannenbaum or Paul Basta here today.

15            I think, if we spend a moment looking at the

16    allegations it's absolutely clear that there is no basis for a

17    claim.  Mr. Kuntz obtained zero coupon notes from an entity

18    called Grand Union Capital Corp, up here, okay, prior to the

19    first case.  That company went into the first case and was then

20    dissolved.  That's his only relationship.  That's the only

21    entity he ever had a claim against.

22            There's another entity, Grand Union Company.  Grand

23    Union Company puts money into the cash escrow in the first

24    case.  Kuntz objects to it, his objection's overruled, the

25    escrow is created.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 81 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 80

 1          It goes through the second case.  We then go into the

 2     third case.  Mr. Kuntz has no standing in that case.  He is not

 3     a creditor in that case.

 4          Nevertheless, he makes a motion to modify the stay to

 5     access the escrow for the same reasons, the same arguments he's

 6     making here today, and his request -- his motion is denied.

 7     There's no record of an appeal.  The decision is not reversed.

 8     It is final and binding.  He has no right to the cash escrow.

 9     It's not issued by the same company he has a claim against.  We

10     hear allegations of Martin Act violations, he never prosecuted

11     those.  They don't give rise to a right to the escrow.  At

12     best, from what I hear from Mr. Kuntz, he has a claim that he

13     should bring in federal or state court against MTH.  But that

14     doesn't give him a claim here.  And Your Honor, we did submit

15     the letter brief submitted to Judge Winfield and her order as

16     an exhibit but if I may hand up a copy?

17          THE COURT:  Sure.

18          MR. WAISMAN:  This is the letter that Mr. Kuntz has

19     repeated referred to in his remarks.  On top is Judge

20     Winfield's order denying the relief.  The letter brief, by

21     Raven Greenberg, outlines that Mr. Kuntz has filed a motion for

22     relief from the automatic stay to permit him to take such steps

23     that the Court may deem necessary and proper in order to secure

24     a certain escrow account which was established under the first

25     Grand Union Chapter 11 cases.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 82 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 81

1          The letter goes through chapter and verse, everything

2     we've discussed here today.  Mr. Kuntz was a creditor of

3     Capital Corporation, no other entity.  Capital Corporation does

4     not exist.  The escrow was created in the first case pursuant

5     to order of the court, he objected.  His objection was

6     overruled, that case was confirmed.  And the money is then

7     disbursed into the operating account of Grand Union Capital --

8     of Grand Union Company, an entity as to which he has no

9     standing, he is not a creditor and he has no rights to the

10    escrow.

11         The allegation that somehow there was a Martin Act

12    violation prior to the first case, relating to Grand Union

13    Capital Corporation and that gives him superior rights to an

14    escrow by an unrelated entity for a specific purpose

15    established pursuant to court order is outrageous.  There is no

16    basis for it.  There isn't a single citation to statute or case

17    authority that would give him any right to the escrow, let

18    alone -- and let' get down to detail.  It's not that he's --

19    he's saying he has superior rights to the escrow; the escrow

20    was disbursed into an operating account, that cash was used in

21    the operations of the business.  Ultimately that entity was

22    liquidated and the assets, pursuant to a confirmed plan, were

23    distributed to creditors.

24         He is saying that the cash distributed to all of the

25    creditors in that third case doesn't belong to those creditors,

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 83 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 82

1    it belongs to him.

2         There simply is no basis for a claim, even asserted.

3    Kuntz was a creditor of Capital Corporation, an entity that's

4    been dissolved.

5         THE COURT:  Okay.  Thank you.

6         MR. KUNTZ:  Your Honor, if I may point out, the order

7    that Mr. Waisman refers to has the second bankruptcy case, it's

8    a 1998 case, it's not the 2000 case.

9         So what he says that happened in the third case really

10   happened in the second case where Judge Winfield gave me my

11   security back.  It's right here.  It's case 98-27912.  The

12   Raven Greenberg letter has got the 2000 case number 0039613.

13   So in essence he's putting the second case order forward saying

14   this is what happened in the third case.  That's not the

15   exhibit.

16        MR. WAISMAN:  That's inaccurate, Your Honor.  The

17   order, on its face, says May 21, 2001.

18        MR. KUNTZ:  I've never seen that order, Your Honor.

19        MR. WAISMAN:  Here it is.

20        MR. KUNTZ:  This is -- Your Honor --

21        MR. WAISMAN:  It was submitted with our papers.

22        MR. KUNTZ:  Your Honor, we're already well into -- now

23   we're having an evidentiary hearing with a copy given to the

24   Court, which I've never seen, but he just held it up.  That's

25   why I asked for the evidentiary hearing.

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 84 of 89

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 83

 1          I don't know if the gentlemen, and it says clearly in

 2    my notice, I didn't give them a date to come along.  I said I

 3    expected to have something later in the month.  If Your Honor

 4    chooses to have an evidentiary hearing I will invite them to

 5    come.  I'm not so foolish as to think that I can I can go

 6    around and subpoena Warren Buffett and Mr. Goodfriend and a

 7    partner in his firm and a former partner in his firm to come

 8    and testify.  I'm going to invite them, if they're gentlemen

 9    they will come.  If they're not gentlemen they won't come.

10    Your Honor can draw your own conclusions.

11          THE COURT:  Okay.

12          MR. KUNTZ:  And I'm not trying to make this, like, a

13    grand -- the last thing in the world I want to do was put Mr.

14    Buffett's name on that but he happened to be the chairman of

15    Solomon Brothers when they got the 700 million dollars.

16          THE COURT:  Okay.  I think I --

17          MR. KUNTZ:  Thank you, Your Honor.

18          THE COURT:  I think I've heard enough for the time

19    being.  I'm going to take this under advisement, including the

20    request made by Mr. Kuntz for an evidentiary hearing.  I'll

21    note that one of the things that I'm going to be thinking about

22    is whether any of the witnesses identified by Mr. Kuntz can

23    offer credible and relevant testimony in reference to the

24    fairly narrow issue which is before the Court, which is whether

25    the objection to Mr. Kuntz' various proofs of claim should be

08-13555-mg   Doc 21975-4   Filed 11/11/11   Entered 11/11/11 10:28:40   Exhibit
D-Transcript of Hearing Oct 27 2010   Pg 85 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

1  granted.

2         One of the disturbing aspects of this dispute is that

3  it's so obviously does not relate directly to anything that

4  goes on in this court in the LCPI case.  Everything that is

5  being described by Mr. Kuntz relates to what went on many years

6  ago in the context of three separate bankruptcy cases involving

7  the Grand Union Company.

8         I also note that I have repeatedly asked Mr. Kuntz to

9  explain how he would intend to establish his claim that LCPI

10  has liability in reference to whatever happened to the escrow

11  account that was established in the context of the Grand Union

12  cases and I don't have a very clear understanding as to what he

13  would do other than attempt to demonstrate that there was some

14  fundamental impropriety or illegality in connection with the

15  original financing of Grand Union Capital Corporation and Grand

16  Union Company.

17         Connecting such unsubstantiated allegations to the

18  present bankruptcy case would be a challenge for the most

19  skillful lawyer and is a particular challenge for a non-lawyer

20  such as Mr. Kuntz.  But I note that Mr. Kuntz has ample

21  personal experience in representing himself and his own

22  interests, not only in this bankruptcy case where he has

23  appeared routinely, but in other cases as well.

24         Ordinarily I would urge a pro se litigant to consider

25  retaining counsel in order to properly present legal arguments,

08-13555-mg    Doc 21975-4    Filed 11/11/11    Entered 11/11/11 10:28:40    Exhibit
D-Transcript of Hearing Oct 27 2010    Pg 86 of 89
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 85

1    but Mr. Kuntz appears quite comfortable in court and seems

2    perfectly prepared, on his own, to express himself.  So I'm

3    going to assume that even if I were to urge that he retain

4    counsel he would suggest that that wasn't necessary or that he

5    couldn't afford it.  Do you wish to comment on that, Mr. Kuntz?

6         MR. KUNTZ:  Your Honor could solve that.  He could

7    issue an order to show cause why the indentured trustees don't

8    take my shoes.  They're still the trustees.  The U.S. Bank is

9    already before the Court.  HSBC is already before the Court.

10   It wouldn't be very hard for their lawyers to roll into court

11   and say, gee we're asleep at the switch, we didn't know.  I

12   mean, you know.

13        THE COURT:  If you have any claims against your

14   indentured trustee I'm sure you'll pursue them.

15        MR. KUNTZ:  That, Your Honor, is a very succinct

16   observation.  That's my fall back position.  Thank you.

17        THE COURT:  All right.  This is under advisement and

18   I'm just going to ask if anybody else has anything more to say

19   on this subject?

20        THE COURT:  We're adjourned.

21        (Whereupon these proceedings were concluded at 12:19 p.m.)

22

23

24

25

Page 86

I N D E X

R U L I N G S

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Debtors' omnibus objection to claims with respect to omnibus objection 35 granted | 10 | 11 |
| Debtors' omnibus objection to claims with respect to omnibus objection 36 granted | 10 | 24 |
| Debtors' omnibus objection to claims with respect to omnibus objection 37 granted | 11 | 8 |
| Debtors' omnibus objection to claims with respect to omnibus objection 38 granted | 12 | 6 |
| Debtors' omnibus objection to claims with respect to omnibus objection 40 through 43 granted | 12 | 24 |
| Debtors' omnibus objection to claims with respect to omnibus objection 44 granted | 13 | 10 |
| Debtors' omnibus objection to claims with respect to omnibus objection 29 granted; RBC Capital Markets to be removed from debtors' objection | 40 | 25 |
| Debtors' omnibus objection to claims with respect to omnibus objection 39 granted | 43 | 7 |

Page 87

1

2                          I N D E X, cont'd

3

4                          R U L I N G S

5

6    DESCRIPTION                                    PAGE      LINE

7    Debtors' objections to claims filed by          85        17

8    Mr. Kuntz to be taken under advisement

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 88

1

2                     C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6    Lisa Bar-Leib        Digitally signed by Lisa Bar-Leib
                          DN: cn=Lisa Bar-Leib, c=US
                          Reason: I am the author of this document
7    _____   Date: 2010.10.28 16:54:33 -04'00'

8    LISA BAR-LEIB

9    AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  October 28, 2010

18

19

20

21

22

23

24

25