HEARING DATE AND TIME: December 6, 2011 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: November 11, 2011 at 5:00 p.m. (Eastern Time)

REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)

*Counsel to The Bank of New York Mellon,*
*The Bank of New York Mellon Trust Company, N.A.,*
*and BNY Mellon Corporate Trustee Services Limited,*
*in their representative capacities*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

**OBJECTION OF THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AND BNY MELLON CORPORATE TRUSTEE SERVICES LIMITED TO ASSUMPTION OF DERIVATIVE CONTRACTS PURSUANT TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and BNY Mellon Corporate Trustee Services Limited, each as trustee, indenture trustee, agent, or in its other representative capacity (collectively, the "Trustee") for the holders (the "Holders") of certain notes, certificates, bonds, or other interests issued pursuant to structures created by the Debtors or their affiliates that have entered into derivative contracts with one or more Debtors, by their undersigned counsel, hereby file this objection to the assumption of derivative contracts pursuant to the *Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and its Affiliated Debtors* [Docket No. 19627] (the "Plan"), which incorporates the *Plan Supplement* dated October 25, 2011 [Docket No. 21254] (the "Plan Supplement").

## PRELIMINARY STATEMENT

1. Section 11.1 of the Plan provides that executory contracts that exist between a Debtor and any other entity are deemed rejected as of the effective date of the Plan, except for any executory contract that is designated specifically in the Plan Supplement as a contract to be assumed. Plan at § 11.1. The Plan Supplement designates for assumption certain derivative contracts (the "Derivative Contracts") for which the Trustee serves as trustee or indenture trustee. See Plan Supplement at Ex. 2, Part A. A list of the Derivative Contracts is attached hereto as Schedule 1.

2. As a general matter, the Trustee takes non-ministerial action, such as the exercise of most rights or remedies in a bankruptcy proceeding, only where Holders have given the Trustee direction and indemnification in accordance with the governing documents. This precondition applies to the proposed assumption of Derivative Contracts. While some Holders have provided specific direction with regard to the proposed assumption of Derivative Contracts,[1] a great majority of the Holders have not done so. In many instances, this may be because Holders have not received sufficient notice of the proposed assumptions. The Trustee did not receive any notices of proposed cure amounts before November 2, 2011, when some notices were received in London by standard post, and many other notices were not received until November 8, 2011. The Trustee objects to the proposed assumptions to the extent they are

---

[1] See Objections or Joinders filed by the Trustee at Docket Nos. 21616, 21639, 21908, 21943, 21946, 21956, and 21959.

predicated upon notice that was either inadequate under the circumstances or not in accordance with applicable law.

    3.  The Trustee also objects generally to the assumption of Derivative Contracts for the following reasons:

  a.  the Debtors may not assume Derivative Contracts that terminated prepetition or postpetition, whether as a result of a consensual settlement, a termination notice given in accordance with the governing documents and applicable law, or the contracts' maturity;

  b.  the Debtors may not assume Derivative Contracts without curing existing defaults and providing adequate assurance of future performance; and

  c.  the Debtors may not assume the non-terminated Derivative Contracts without assuming all transaction documents that form part of the parties' agreement.

    4.  The Debtors bear the burden of proving that the requirements for assumption of executory contracts have been met. See In re M. Fine Lumber Co., Inc., 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citing In re Embers 86th Street, Inc., 104 B.R. 892, 902 (Bankr. S.D.N.Y. 1995)); see also In re Chemtura Corp., 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) ("proponent of confirmation bears the burden of proof by a preponderance of the evidence"). Objections to assumption are governed by Fed. R. Bankr. P. 9014 and, accordingly, the Trustee and the Holders are entitled to take discovery. See Fed. R. Bankr. P. 3020(b)(1) ("An objection to confirmation is governed by Rule 9014."); see also In re Dynamic Tooling Sys., Inc., 349 B.R. 847, 853 (Bankr. D. Kan. 2006) (non-debtor contracting party is entitled to "equivalent due process [whether] its contract is rejected in the plan context … [or] under Fed.

R. Bankr. P. 6006.").[2]

5.  For these reasons, and as more fully set forth below, the Trustee respectfully requests that, prior to conducting a hearing on the proposed assumption, the Court enter an order that ensures adequate notice to Holders and establishes pre-hearing and hearing procedures in accordance with Rule 9014 with regard to any assumption of Derivative Contracts.

## OBJECTION

### A.  Notice of the proposed assumption is not legally sufficient.

6.  The Trustee acts in a representative capacity for Holders and other parties in interest in hundreds of transactions that, in most instances, were structured by the Debtors and their affiliates. Many of the transactions include an indenture and a swap or repurchase agreement pursuant to which a trust, special purpose vehicle, or other issuer is the counterparty to the derivative contract with one of the Debtors. Because the obligations of the issuer generally are limited to the trust assets, the true parties in interest to the Derivative Contracts are the Holders.[3]

---

[2] Lehman Brothers Special Financing Inc. ("LBSF") has commenced several adversary proceedings that require a determination of issues that overlap those raised by this and other objections to assumption of derivative contracts. To the extent that resolution of any of these adversary proceedings may be a basis for claim preclusion with respect to assumption of Derivative Contracts, whether by collateral estoppel or otherwise, discovery in and resolution of the adversary proceedings should be coordinated with the contested matter arising from this objection.

[3] In the Perpetual litigation, the Debtors acknowledged that LBSF and the Holder were "the only two stakeholders." See *Joint Motion of Appellees Lehman Brothers Special Financing Inc. and The Official Committee of Unsecured Creditors to Stay Appeal Pending Final Settlement*, at p. 2, BNY Corp. Tr. Servs. Ltd. v. Lehman Bros. Special Fin. Inc., S.D.N.Y., No. M-47. Indeed, the Debtors described the Holder as "the only party other than LBSF with an economic interest in the outcome …." Id. The Debtors went on to explain that the Trustee was not the relevant party for purposes of settlement of that litigation because the Holder "will instruct the trustee" to enter into the settlement, and confirmed that the Trustee "has no economic interest in this dispute." Id. at 2, 3.

7.  Under the terms of these agreements, the Trustee generally is required to serve notices upon Holders, including notices relating to assumption of contracts, and to solicit direction in connection with the exercise of their contractual rights. The Trustee is entitled to indemnification from the directing Holders satisfactory to the Trustee before taking any such action.

8.  Notice of assumption and the proposed cure amounts with respect to the Derivative Contracts is inadequate under the circumstances because the Trustee did not have sufficient time to provide adequate and effective notice to the Holders and to solicit their direction. On or after October 27, 2011, the Debtors sent *Notices of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code* (the "Assumption Notices") by first class mail to the addresses identified in the Plan Supplement. Assumption Notices addressed to BNY Mellon Corporate Trustee Services in London arrived on November 2, 2011. Some Assumption Notices addressed to the Trustee's counsel in New York arrived on November 7, 2011. Many notices relating to Derivative Contracts were sent to third parties, and the Trustee received copies of such notices, following request to the Debtors' counsel, only on November 8, 2011.

9.  Such notice is insufficient because it deprives Holders of timely notice and an opportunity to object, in violation of constitutional Due Process requirements. Due process requires that the Court provide "notice reasonably calculated, under all the circumstances, to apprise interested parties" of proceedings and afford them an opportunity to present their objections. See Jones v. Flowers, 547 U.S. 220, 226 (2006) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Even had the Debtors delivered a

complete set of Assumption Notices to the Trustee immediately after filing the Plan Supplement, the contemplated timeframe would have been insufficient to permit timely notice to Holders because of the complex nature of the transactions. The Trustee sends notices to known Holders, but the many unknown Holders can be reached only through the relevant clearing houses (Depository Trust Clearing Corporation, Euroclear System, and Clearstream Banking S.A.). The clearing houses forward the notices to their participants, who then forward the notice to the Holders – the true economic stakeholders.

10. The Trustee wants to ensure that all Holders receive adequate notice of the proposed assumption and have an opportunity to object or to provide direction to the Trustee. While the Trustee sent notices directly to those Holders who had identified themselves to the Trustee, many are reachable only through the relevant clearing houses, and notices sent through the clearing houses may take two weeks or longer to reach Holders. Holders interested in objecting or giving direction will need additional time to prepare and deliver such objections or directions to the Trustee.

11. The Holders clearly retain certain rights under the transaction documents, including, but not limited to, the right to notice of assumption and the right to direct remedies.[4] The Court should give force and effect to the Holders' rights under the transaction documents, not negate them by permitting assumption of Derivative Contracts without notifying the true

---

[4] As an example of rights held by the Holders directly, several of the indentures provide that the Holders have "the right, which is absolute and unconditional, to receive payment of the principal and interest on [the Notes]."

parties in interest and allowing them a meaningful opportunity to object or to provide direction.[5] Accordingly, the Trustee respectfully requests that the Court establish procedures that afford Holders a reasonable opportunity to receive notice of assumption and to file any objections or provide any direction to the Trustee.[6]

**B.    The Debtors may not assume terminated Derivative Contracts.**

12.    Where contracts have terminated in accordance with their terms, the Debtors no longer have any obligation to perform. Such contracts are not executory and may not be assumed.

13.    Section 365 of the Bankruptcy Code provides in relevant part that "the trustee, subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). It is axiomatic that, "[o]nce the contract is no longer in existence, the right to assume it is extinguished." In re Balco Equities Ltd., Inc., 312 B.R. 734,

---

[5] The Debtors have recognized that notice and a hearing are appropriate where a proposed settlement may affect the rights of other parties to the underlying transactions. By way of example, the Debtors made a point to serve interested third parties with the Debtors' *Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019, for Approval of Settlement Agreement Among Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc., and Societe Generale, New York Branch and Certain Related Relief* [Docket No. 11488]. Similarly, the Debtors should recognize that notice and a hearing are appropriate here, where the proposed assumptions will affect the rights of Holders.

[6] In accordance with section 1109(b) of the Bankruptcy Code, individual Holders have a right to be heard on these issues. See 11 U.S.C. § 1109(b). This section "has been interpreted to mean that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." In re Teligent, Inc., 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009), aff'd sub nom, In re Teligent Servs., Inc., Case No. 09-09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), aff'd sub nom, In re Teligent, Inc., 640 F.3d 53 (2d Cir. 2011) (internal quotations omitted); see In re Stone Barn Manhattan LLC, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009) ("It is generally understood that 'a pecuniary interest … directly affected by the bankruptcy proceeding' provides standing under § 1109(b).") (quoting Nintendo Co. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356 (10th Cir. 1995)). The Holders, as the true economic stakeholders in the Derivative Contracts, are parties in interest entitled to appear and be heard with respect to assumption of the Derivative Contracts. The Debtors have acknowledged the Holders' standing by dealing directly with Holders with respect to litigation, settlement of disputes, and alternative dispute resolution.

750 (Bankr. S.D.N.Y. 2004); accord Counties Contracting & Constr. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1061 (3d Cir. 1988); see also Robinson v. Chicago Hous. Auth., 54 F.3d 316, 324 (7th Cir. 1995) (holding that lease which terminated under nonbankruptcy law cannot be assumed under section 365). "Even if a contract is executory at the time of the bankruptcy filing, the right to assume that contract under § 365 is extinguished if the contract expires by its own terms or otherwise ceases to exist." In re Westfields Apartments, LLC, Case No. 08-12573, 2010 WL 2179622, *4 (Bankr. S.D. Ga. April 27, 2010).

14. Where the only performance remaining under a Derivative Contract is payment of termination related damages, such contract is not executory and not assumable. See, e.g., In re Grayson–Robinson Stores, Inc., 321 F.2d 500 (2d Cir. 1963); S. Chicago Disposal, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 130 B.R. 162, 165-66 (Bankr. S.D.N.Y. 1991) ("A debtor's obligation to pay money, standing alone, is insufficient to render a contract executory."); see also COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 379 (2d Cir. 2008) (an executory contract is a contract "on which performance remains due to some extent on both sides.").

15. Derivative Contracts that were terminated consensually are not executory and may not be assumed.

16. Derivative Contracts that were terminated pursuant to their terms and in accordance with applicable non-bankruptcy law are not executory and may not be assumed. Under English law, governing many of the Derivative Contracts, the Derivative Contracts terminated prior to the filing of LBSF's bankruptcy petition. See Perpetual Tr. Co. Ltd. v. BNY Corporate Tr. Servs. Ltd., [2009] EWHC 1912 (Ch), aff'd, Perpetual Tr. Co. Ltd. v. BNY Corporate Tr. Servs. Ltd., [2009] EWCA Civ 1160, aff'd, Belmont Park Invs. PTY Ltd. v. BNY

Corporate Tr. Servs. Ltd. and Lehman Bros. Special Fin. Inc., [2011] UKSC 38.[7]  Contracts that terminated prepetition may not be assumed.

17. Derivative Contracts that terminated postpetition, in accordance with the safe harbor provisions of sections 362(b)(17) and 560 of the Bankruptcy Code, are not executory and may not be assumed.  See 11 U.S.C. §§ 362(b)(17), 560 (providing safe-harbor that permits counterparties to swap agreements to enforce *ipso facto* default provisions and liquidate their positions notwithstanding the automatic stay); Mirant Americas Energy Marketing, L.P. v. Kern Oil & Refining Co. (In re Mirant Corp.), 310 B.R. 548, 553-54 (Bankr. N.D. Tex. 2004).  See also Swedbank AB (PUBL) v. Lehman Bros. Holdings Inc., Case No. 10-4532 (NRB) (S.D.N.Y. Jan. 27, 2011) ("[A] swap participant may exercise any contractual rights to terminate and net out a swap agreement in the event that the other party files a bankruptcy petition, notwithstanding the automatic stay and trustee avoidance provisions of the Bankruptcy Code.").

18. The terminated Derivative Contracts, having ceased to exist, cannot be assumed.  Accordingly, the Debtors' request to revive and assume the terminated Derivative Contracts should be denied.

**C.    The Debtors may not assume executory contracts without curing existing defaults and providing adequate assurance of future performance.**

19. Under section 365(b)(1) of the Bankruptcy Code, the trustee may not assume an executory contract unless the trustee:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default …;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such

---

[7] The English litigation also confirmed the existence of a direct right or claim of the Holders against LBSF and Lehman Brothers Holdings Inc. ("LBHI").

>contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
>(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1); see Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309-10 (5th Cir. 1985) (noting requirement of providing adequate assurance of future performance); Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.), 173 B.R. 844, 857 (S.D.N.Y. 1994).

20. The non-terminated Derivative Contracts have outstanding defaults. The Debtors indisputably have failed to pay amounts due under the Derivative Contracts since October 3, 2008, and in many instances the chapter 11 filing of LBHI is an additional default. The Debtors are required to cure the defaults and provide adequate assurance of future performance. As discussed below, the Debtors have failed to satisfy their burden of proof with respect these requirements. See Kings Terrace Nursing Home and Health Related Facility v. N.Y. State Dept. of Social Servs., 1995 WL 65531, *9 (Bankr. S.D.N.Y. Jan. 27, 1995) (debtors bear the burden "to prove that the defaults have either been cured or will be cured promptly and that there exists adequate assurance of future performance."); In re F.W. Rest. Assocs., Inc., 190 B.R. 143, 147 (Bankr. D. Conn. 1995) ("the Debtor-in-Possession then bears the burden of proof on the issues of prompt cure and adequate assurance of future performance").

21. Preliminarily, stated cure amounts are incorrect. It appears that the Debtors did not calculate cure amounts at all; most of the Assumption Notices simply state without any explanation that the cure amounts are $0. This cannot be accurate as the Debtors have failed to pay amounts due under the Derivative Contracts for more than three years.

22. Section 365(b)(1) also requires that the Debtors compensate the non-defaulting party for any actual pecuniary loss resulting from the default. 11 U.S.C. §

365(b)(1)(B).  Accordingly, assumption of the Derivative Contracts may require more than just curing payment defaults.

23.     Certain non-monetary defaults may be incurable, thereby precluding assumption.  See In re Empire Equities Capital Corp., 405 B.R. 687, 690-91 (Bankr. S.D.N.Y. 2009) ("Congress provided no room for the contention that non-monetary defaults in non-lease executory contracts are exempt from the cure obligations" and, if a default cannot be cured, the contract cannot be assumed); see also JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns), Adv. Pro. No. 09-01132 (JMP), Memorandum Decision, dated July 7, 2009, at 12 (D.I. 45) ("the existence of [non-curable] prepetition defaults would be … quite literally, a showstopper.").

24.     "A default precludes assumption of an executory contract under § 365 if it is both incurable and 'material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange.'"  Empire Equities Capital, 405 B.R. at 691 (quoting In re Joshua Slocum Ltd., 922 F.2d 1081, 1092 (3d Cir. 1990)).  Given that LBHI is liquidating, its bankruptcy constitutes an incurable event of default under the Derivative Contracts.[8]  The default also is material because LBHI is rejecting its guarantee and will no longer provide credit support for LBSF's obligations under the Derivative Contracts.  LBHI's guarantee was an integral component of the derivative transactions and an essential part of the bargained for exchange.

---

[8] In JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns), this Court noted that cross-default provisions, such as those contained in the Derivative Contracts, are "inherently suspect," and that courts "should carefully scrutinize the facts and circumstances surrounding the particular transaction to determine whether enforcement of the provision would contravene an overriding bankruptcy policy …."  419 B.R. 221, 250-51 (Bankr. S.D.N.Y. 2009).  Accordingly, the cross-default provisions in the Derivative Contracts raise factual issues that require discovery and an evidentiary hearing.

25. Additionally, the Debtors have made no attempt to demonstrate adequate assurance of future performance. The Plan and Assumption Notices are silent on this issue. Considering that the Plan essentially is one of liquidation, the Debtors must establish that they will continue to perform for the duration of the Derivative Contracts. Of course, LBHI does not propose to perform at all.

26. The requirement that the Debtors provide adequate assurance of future performance is particularly significant where the Debtors are proposing to assume significant financial obligations. A derivative is a risk transfer agreement, the value of which is derived from the financial standing of the issuing counterparty. The premium that the issuing party receives is due, in large measure, on the basis of its ability to perform according to the terms of the agreement.

27. Until the Debtors satisfy all of these requirements, the Derivative Contracts cannot be assumed.[9]

**D.  The Debtors may not assume Derivative Contracts without assuming all transaction documents that form part of the parties' agreement.**

28. The Plan Supplement does not clearly identify the agreements that the Debtors propose to assume. The Plan Supplement provides that, "unless a specific derivative contract is noted for a specific counterparty, the Debtors intend to assume all derivative contracts with each counterparty set forth on Exhibit 2, Part A." See Plan Supplement at Ex. 2. The Plan Supplement further provides that "derivatives contracts are contracts in which the contractual obligations and values are keyed to one or more underlying assets or indices of asset values." Id. This does not identify, however, the documents that the Debtors propose to assume. The Plan

---

[9] Also, to the extent any Derivative Contract is a "financial accommodation" within the meaning of section 365(c)(2) of the Bankruptcy Code, it may not be assumed. See 11 U.S.C. § 365(c)(2).

Supplement carefully avoids any reference to the documents that typically comprise a derivative contract. Notably, neither the Plan Supplement nor the Assumption Notices identifies the applicable swap master agreement or the trade confirmations.

29. The Trustee, the Holders, and the Court cannot be left to speculate as to what agreements the Debtors actually intend to assume. Many of the individual Derivative Contracts are part of larger, integrated transactions that include, not only the applicable master agreement and trade confirmation, but additional documents (collectively, the "Transaction Documents") that are integrally related to the Derivative Contracts. Indeed, without the Transaction Documents, the Derivative Contracts have neither economic substance nor a structure for performance.

30. It is well established that, when a debtor assumes an executory contract, it does so *cum onere*, with all of the benefits and burdens. See NLRB v Bildisco and Bildisco, 465 U.S. 513, 531 (1984); Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.), 78 F.3d 18, 24 (2d Cir. 1996) (quoting Bildisco); In re Texaco, Inc., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000) ("The law is clear that a debtor who assumes a lease or other executory contract assumes the contract *cum onere*, without any diminution in its obligations or impairment of the rights of the [counterparty] in the present or the future."); Kopel v. Pasquale Campanile (In re Kopel), 232 B.R. 57, 63 (Bankr. S.D.N.Y. 1999) (It is "axiomatic" that an executory contract "must be assumed *cum onere*"); see also In re Jamesway Corp., 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996); Leslie Fay Cos., Inc. v. Corporate Prop. Assocs. 3, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994).

31. "Where an executory contract contains several agreements, the debtor may not choose to reject some agreements within the contract and not others." Stewart Title Guaranty Co. v. Old Republic Nat'l Title Inc. Co., 83 F.3d 735, 741 (5th Cir. 1996) (citing In re Cutters,

Inc., 104 B.R. 886, 888 (Bankr. M.D. Tenn. 1989)); see City of Covington v. Covington Landing Ltd. P'ship, 71 F.3d 1221, 1226 (6th Cir. 1995); In re Nitec Paper Corp., 43 B.R. 492, 498 (S.D.N.Y. 1984) ("A contract assumed in bankruptcy is accompanied by all its provisions, and conditions. It may not be assumed in part and rejected in part."); In re Abitibibowater Inc., 418 B.R. 815, 823 (Bankr. D. Del. 2009) ("all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract").

    32.  To determine whether several agreements constitute one integrated transaction, courts look to applicable non-bankruptcy law. See Butner v. United States, 440 U.S. 48 (1979). With regard to contracts governed by English law, the English Courts have determined that the Transaction Documents are part of an integrated transaction. See Perpetual, [2009] EWHC 1912 (Ch). With regard to contracts governed by New York law, courts inquire (1) whether the agreements were signed by the same parties, (2) whether the agreements were signed as part of the same transaction, and (3) whether the agreements were signed for the same object or purpose. See e.g., Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 53 (2d Cir. 1993); Carvel Corp. v. Advance Food Serv. Equip., 930 F.2d 228, 233 (2d Cir. 1991) ("instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together"); Republic Western Ins. Co. v. Nobel Ins. Co., 2 F.Supp.2d 548, 549 (S.D.N.Y. 1998). "Even if the writings are executed at different times . . . Williston tells us that contracts should be interpreted together if the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken." Commander Oil Corp., 991 F.2d at 53 (quoting 6 Williston, Contracts, § 863 at 275 (3rd ed. 1970)) (internal quotations omitted).

33. The Transaction Documents are integral to the operation of the Derivative Contracts, and the parties' rights and obligations cannot be determined fully unless the Derivative Contracts are viewed in conjunction with the Transaction Documents. Each depends on the others; none stands alone. The use of multiple documents is common in derivatives transactions, and the result is that the documents are "component parts of a single transaction." See Commander Oil Corp., 991 F.2d at 53; but see In re Lehman Bros. Holdings Inc., 422 B.R. 407, 421 (Bankr. S.D.N.Y. 2010). The Derivative Contracts are part of a larger transaction that constitutes the "contract" for the purposes of section 365(a) of the Bankruptcy Code and, if the Debtors are to assume the Derivative Contracts, they must assume all of the Transaction Documents.

34. The Derivative Contracts and the Transaction Documents also should be treated as a single transaction as a matter of equity. Equity looks at the actual circumstances of an entire transaction and considers whether individual agreements should be treated as part of a larger, integrated transaction. See Orr v. Kinderhill Corp., 991 F.2d 31, 35 (2d Cir. 1993) ("the plan must be viewed as a whole with all its composite implications"). In equity, "substance will not give way to form, [and] technical considerations will not prevent substantial justice from being done." Id.; see In re Best Products, 157 B.R. 222, 229-30 (equity acts "on the economic realities of what took place …."). Given the economic realities of derivative transactions, proper application of equitable principles compels that the Transaction Documents be treated as part of the Derivative Contracts.

## **RESERVATION OF RIGHTS OF HOLDERS**

35. Except as noted in footnote 1, the Trustee has not been directed by Holders to raise specific challenges to assumption of specific Derivative Contracts. As discussed

above, however, many Holders have not received notice of the Debtors' proposed assumption, have not been afforded sufficient time to provide direction, or may have no knowledge of the proposed assumption. Accordingly, it would be inappropriate to deem the lack of particular objections from the Holders or the issuers as acquiescence or consent to assumption. For reasons set forth herein, the Trustee reserves any and all objections, rights, claims, and defenses of the Trustee, the Holders, and the issuers to the proposed assumption and cure amounts, under the Bankruptcy Code or applicable non-bankruptcy law.

## CONCLUSION

36. For the foregoing reasons, the Trustee respectfully requests that, prior to conducting a hearing on the proposed assumption, the Court enter an order that (i) ensures adequate notice to Holders, (ii) establishes pre-hearing and hearing procedures in accordance with Rule 9014 with regard to any assumption of Derivative Contracts, and (iii) grants such other relief as may be just and proper.

Dated: November 11, 2011
      New York, New York

Respectfully submitted,

REED SMITH LLP

By: */s/ Eric A. Schaffer*
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: eschaffer@reedsmith.com
       mvenditto@reedsmith.com

*Counsel to The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and BNY Mellon Corporate Trustee Services Limited, in their representative capacities*