NIXON PEABODY, LLP
Mark N. Berman
Christopher M. Desiderio
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000

*Counsel to The Commonwealth of Puerto Rico
and the Puerto Rico Sales Tax Financing Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al., ) | |
| ) | Case No. 08-13555 (JMP) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO SALES TAX FINANCING CORPORATION TO THE DEBTORS' PROPOSED ASSUMPTION OF SWAP AGREEMENTS AND SWAP TRANSACTIONS**

The Commonwealth of Puerto Rico ("Puerto Rico") and the Puerto Rico Sales Tax Financing Corporation ("COFINA"), by and through their counsel, Nixon Peabody LLP, for their objection (the "Objection") to the proposed assumption of their allegedly executory derivatives contracts with Lehman Brothers Holdings, Inc. ("LBHI"), and/or one or more of its affiliates that may be debtors in these chapter 11 cases (hereinafter collectively referred to as "Debtors"), including Lehman Brothers Special Financing, Inc. ("LBSF"), respectfully states as follows:

**I.  BACKGROUND**

1.  Puerto Rico entered into the following derivative agreements with the Debtors:

    a. Lehman Brothers Derivative Products, Inc. ("<u>LBDF</u>") and Puerto Rico were parties to an ISDA Master Agreement, dated as of November 18, 2004 (the "<u>2004 PR Swap</u>"). In connection with the 2004 PR Swap, LBHI provided Puerto Rico with a guarantee to take effect after substitution of LBSF for LBDF pursuant to the 2004 PR Swap. Subsequently, the parties entered into four Confirmations of interest rate swap transactions (the "<u>2004 PR Transactions</u>") under the 2004 PR Swap. By an Assignment and Amendment Agreement dated as of September 17, 2008, all of LBDF's rights, duties and obligations under the 2004 PR Swap and the 2004 PR Transactions were assigned to LBSF, certain provision of the 2004 PR Swap were amended and the parties agreed that upon assignment the guarantee of LBHI would not be provided.

    b. LBSF and Puerto Rico were parties to an ISDA Master Agreement, dated as of October 2, 2007 (the "<u>2007 PR Swap</u>"). In connection with the 2007 PR Swap, LBHI provided Puerto Rico with a guarantee of LBSF's obligations. Subsequently, the parties entered into three Confirmations of interest rate swap transactions (the "<u>2007 PR Transactions</u>") under the 2007 PR Swap.

2.   COFINA entered into the following agreements with the Debtors:

    a. COFINA and LBSF were parties to a certain ISDA Master Agreement dated as of July 11, 2007 (the "<u>COFINA 2007 Swap</u>"). In connection with the COFINA 2007 Swap, LBHI provided COFINA with a guarantee of LBSF's obligations. Subsequently, the parties entered into one Confirmation of an

interest rate swap transaction (the "COFINA 2007 Transaction") under the COFINA 2007 Swap.[1]

3.  On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of the Bankruptcy Code.  On October 3, 2008, LBSF commenced its own voluntary case under chapter 11 of the Bankruptcy Code.

4.  As a result of these defaults, both COFINA and Puerto Rico terminated each of the Swap Transactions as follows:

   a. COFINA served LBSF with a Notice of Early Termination terminating the COFINA 2007 Transaction governed by the COFINA 2007 Swap and designating November 6, 2008 as the Early Termination Date.  In connection with the termination of the COFINA 2007 Transaction, pursuant to Section 6(d) (i) of the COFINA 2007 Swap, COFINA made a calculation as to the amount due to LBSF.  In accordance with this calculation, COFINA paid LBSF $22,431,935.04 (the "COFINA Termination Amount").

   b. Puerto Rico served LBSF with a Notice of Early Termination terminating both the 2004 PR Transactions governed by the 2004 PR Swap as well as the 2007 PR Transactions governed by the 2007 PR Swap and designating November 10, 2008 as the Early Termination Date for each.  Pursuant to Section 6(d)(i) of the 2004 PR Swap and Section 6(d)(i) of the 2007 PR Swap, Puerto Rico made a calculation as to the amount due to LBSF for the 2004 PR Swap (the "2004 PR Termination Amount") and for the 2007 PR Swap (the "2007 PR Termination

---

[1] (The COFINA 2007 Swap, the 2004 PR Swap and the 2007 PR Swap are hereinafter collectively referred to as the "Swap Agreements" and the COFINA 2007 Transaction, the 2004 PR Transactions and the 2007 PR Transactions are collectively referred to as the "Swap Transactions.")

Amount")[2] . Puerto Rico then paid LBSF the amount of $10,675,147.14 which is the aggregate of the 2004 PR Termination Amount and the 2007 PR Termination Amount.

5.   On August 31, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") and related Disclosure Statement (the "Disclosure Statement"). On September 1, 2011, the Court entered its Amended Order (i) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan (the "Disclosure Statement Order").

6.   On October 25, 2011, the Debtors filed the Plan Supplement which includes a list of "Derivative Contracts" that the Debtors are seeking to assume pursuant to Section 11.1 of the Plan. Exhibit 2, Part A of the Plan Supplement, includes the statement that "Unless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivatives contracts with each counterparty set forth on Exhibit 2, Part A. Where a specific derivatives contract has been indicated, the applicable debtor intends to assume the identified derivatives contract and to reject all other derivatives contracts with the applicable counterparty."

7.   Exhibit A, Part 2, of the Plan Supplement includes two references to the Puerto Rico Sales Tax Financing Corp., but does not identify any specific derivatives contract to be assumed. Similarly, Exhibit A, Part 2, of the Plan Supplement includes two references to the Commonwealth of Puerto Rico, but again does not identify any specific derivatives contract to

---

[2] The COFINA Termination Amount, the 2004 PR Termination Amount and the 2007 PR Termination Amount are collectively referred to herein as the "Termination Amounts".)

be assumed. Accordingly, without further information it appears that LBSF is seeking authority to assume all of the Swap Transactions undertaken in accordance with the Swap Agreements.[3]

8.  Section 365(b)(1) of the Bankruptcy Code requires, in pertinent part, that for a debtor to assume an executory contract, it must cure any defaults under that contract, compensate the non-debtor party to the contract for any actual pecuniary loss to such party resulting from the default, and provide adequate assurance of future performance. In that context, Puerto Rico and COFINA have received four 'Cure Notices' from the Debtors, each indicating that the cure amount is zero.

## II.   ARGUMENT

### A.   The Swap Agreements and the Swap Transactions are Not Executory Contracts That Can Be Assumed

9.  The Bankruptcy Code only permits a debtor to assume contracts that are "executory". *See* 11 U.S.C. § 365(a). It is basic black-letter law that in order for a contract to be considered "executory" there must be material performance obligations owed by both parties. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S. Rep. No. 989, 95th Cong. 2nd Sess. 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6300. *In re Wireless Data, Inc.*, 547 F. 3d 484, 488 n.1 (2d Cir. 2008)(referring to the "Countryman" and noting that no circuit has rejected that test for executory contracts). *In re Teligent, Inc.*, 268 B.R. 723, 729 (Bankr. S.D.N.Y. 2001) (noting that many courts apply the "Countryman test" in determining whether a contract is executory). Some courts have also employed the so-called "Functional Analysis Test" which looks to whether assumption or rejection of the contract would benefit the debtor's

---

[3] Puerto Rico and COFINA reserve the right to supplement this Objection when and if they are provided with additional information from which to understand exactly which agreements they have with the Debtors that are proposed to be assumed.

estate, regardless of whether any material obligations remain outstanding on the part of only one party to the contract. *In re Worldcom*, 343 B.R. 486 (Bankr. S.D.N.Y. 2006).

10. Each of the Swap Transactions has been terminated. Moreover, both COFINA and Puerto Rico have paid LBSF the Termination Amounts. While LBSF has raised certain issues in connection with the calculation of the Termination Amounts, there is simply no material performance remaining from LBSF that would render any of the Swap Transactions executory. Accordingly, under the Countryman test, the Swap Transactions are not executory and cannot be assumed. Furthermore, there is no apparent benefit to LBSF's estate by the assumption of the Swap Transactions since they have been terminated and no reason for its assumption has been advanced by LBSF.

11. Moreover, it is well established that a debtor cannot assume a contract that has been validly terminated prior to such assumption. *See e.g. Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d Cir. 1988); *Matter of Triangle Laboratories, Inc.*, 663 F.2d 463, 467 (3d Cir. 1981); *In re Scarsdale Tires, Inc.*, 47 B.R. 478, 480 (Bankr. S.D.N.Y. 1985). The post-petition termination of swap agreements is clearly contemplated by the Bankruptcy Code. Specifically, section 561 of the Bankruptcy Code provides, in relevant part, that "the exercise of any contractual right, because of a condition of the kind specified in section 365(e)(1), to cause the termination . . . of . . . swap agreements . . . shall not be stayed, avoided, or otherwise limited by operation of any provision of this title . . ." 11 U.S.C. § 561(a). As each of the Swap Transactions was terminated prior to the proposed assumption, they cannot now be assumed by LBSF.

12. Puerto Rico and COFINA are cognizant of this Court's decision in *Lehman Bros. Spec. Fin. v. BNY Corp. Tr. Servs. (In re Lehman Brothers Holdings, Inc.)*, 422 Bankr. 407, 416

(Bankr. S.D.N.Y. 2010), in which the Court stated that the swap agreement involved in that case met the functional definition of executor contracts. However, the facts of the *BNY Corp.* case are easily distinguishable from those involving the case at hand. Notably, in *BNY Corp.* even after termination of the swap agreement, both parties had payment obligations to one another. *Id.* In contrast, here there are no payment obligations owed from LBSF to either COFINA or Puerto Rico and only a contingent payment obligation owed by COFINA and/or Puerto Rico to LBSF if LBSF is ultimately successful in its dispute of the Termination Amounts. Accordingly, there are no material performance obligations owed by both parties to the Swap Transactions.

13.     As the Swap Agreements and the Swap Transactions are not executory contracts, they cannot be assumed.

**B.     The Debtors Have Not Demonstrated Any Business Justification for Assuming the Swap Agreements and Swap Transactions**

14.     Even assuming, arguendo, that the Swap Agreements and the Swap Transactions are executory contracts, the Debtors have failed to present any business justification for their assumption. It is not clear why the Debtors believe that assumption of the Swap Agreements and the Swap Transactions is necessary. To the extent the Debtors believe that assumption is necessary to preserve any rights it may have under the Swap Agreements and the Swap Transactions to dispute either COFINA's or Puerto Rico's calculation of the Termination Amounts, such belief is unfounded. Accordingly, the Debtors have not demonstrated a sound business justification for assumption of the Swap Agreements and the Swap Transactions. Therefore, the Debtors' request to assume the Swap Agreements and the Swap Transactions should be denied.

C. **LBSF Has Not Proposed and Cannot Cure Non-Monetary Defaults Under the Swap Agreements and Swap Transactions and Therefore They Cannot Be Assumed**

15. In the event that this Court determines that the Swap Agreements and the Swap Transactions are executory contracts that can be assumed, LBSF will be unable to cure existing non-monetary defaults and, therefore, cannot assume the Swap Agreements or the Swap Transactions.

16. Under Section 365(b)(1) of the Bankruptcy Code, a debtor cannot assume a contract that has been breached unless, and until, that breach is cured. Accordingly, a contract cannot be assumed if it has been breached in such a way that the breach is both incurable and material. *In re Empire Equities Capital Corp*. 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (citing *In re New Breed Realty Enters*., 278 B.R. 314, 320 (Bankr. E.D.N.Y. 2002)) ("By amending § 365(b)(1)(A) only with respect to unexpired leases of real property, however, Congress provided no room for the contention that non-monetary defaults in non-lease executory contracts are exempt from the cure obligation"); *In re Claremont Acquisition Corp.*, 113 F.3d 1029, 1033 (9th Cir. 1997); *In re Toyota of Yonkers, Inc.*, 135 B.R. 471, 477 (Bankr. S.D.N.Y. 1992).

17. Courts have frequently found that breaches which have become "historical facts," are incurable and prevent contracts from being assumed. *In re Escarent Entities, L.P.*, 2011 WL 1659512 (5th Cir. Apr. 28, 2011); *Empire Equity Capital*, 405 B.R. at 691 (breach of duty to timely exercise an option is an incurable non-monetary default); *In re New Breed Realty Enters.*, 278 B.R. at 320 (failure to timely close was an incurable default); *In re Claremont Acquisition Corp.*, 113 F.3d at 1033 (incurable default prevents the assumption of a franchise agreement); *In re Toyota of Yonkers, Inc.*, 135 B.R. 471, 477 (Bankr. S.D.N.Y. 1992) (same).

18.     Here, there are at least three defaults, namely (i) LBHI's bankruptcy filing (as LBSF's guarantor)[4], (ii) LBSF's bankruptcy filing, and (iii) the lowering and elimination of LBHI's credit rating. While the LBSF bankruptcy filing is an *ipso facto* default that need not be cured pursuant to Section 365(b)(2), the other two defaults simply cannot be cured. To COFINA's and Puerto Rico's knowledge, LBHI does not have a rating required by the Swap Agreements. Furthermore, a guarantee is not an executory contract that can be assumed or rejected, and is not subject to the provisions of section 365 of the Bankruptcy Code. *See e.g., In re Grayson-Robinson Stores, Inc.*, 321 F.2d 500, 502 (2d Cir. 1963) (guarantee was not an executory contract).

19.     As a result of these incurable defaults, LBSF cannot be authorized to assume the Swap Agreements or the Swap Transactions.

**D.    The Debtor Must Cure Any Monetary Defaults Under the Swap Agreements and Swap Transactions**

20.     Pursuant to the Swap Agreements, LBSF, as the defaulting party under the agreement, must "indemnify and hold harmless [Puerto Rico and COFINA] for and against all out-of-pocket expenses, including legal fees, incurred by such other party by reason of the enforcement and protection of rights" under the Swap Agreements or Swap Transactions. Accordingly, LBSF must compensate Puerto Rico and COFINA for such fees and expenses that have, and continue to, accrue in connection with the enforcement and protection of its rights under the Swap Agreements and Swap Transactions before such agreements can be assumed by the Debtors.

---

[4] This default is not applicable to the 2004 PR Swap, but is applicable to the 2007 PR Swap and the COFINA 2007 Swap.

### E. The Debtor Must Provide Adequate Assurance of Future Performance

21. As previously stated, LBHI guaranteed the performance of LBSF under the COFINA 2007 Swap and the COFINA 2007 Transaction as well as under the 2007 PR Swap and the 2007 PR Transactions. As LBHI cannot provide a guarantee of LBSF's future performance in accordance with the terms and conditions that the applicable Swap Agreements and Swap Transactions require, adequate assurance of future performance cannot be provided.

22. Puerto Rico and COFINA reserve the right to supplement this Objection once the Debtors reveal for what purpose the Swap Agreements and Swap Transactions are to be assumed and also should the Debtors identify any other agreements between the Debtors and either Puerto Rico or COFINA which are intended to be assumed pursuant to the Plan Supplement.[5]

---

[5] Puerto Rico and COFINA have incurred ongoing post-petition legal and advisory fees and expenses in connection with the enforcement and protection of their rights under the Swap Agreements and the Swap Transactions. Further, depending on the rationale for the Debtors' proposed assumption of the Swap Agreements and Swap Transactions, other cure costs may be applicable.

### III.  CONCLUSION

WHEREFORE, Puerto Rico requests that this Court deny LBSF's request to assume the Swap Agreements and Swap Transactions and grant such other and further relief this Court deems necessary and appropriate.

Dated: New York, New York
       November 11, 2011

                                          Respectfully Submitted,

By: /s/ Christopher M. Desiderio
    Mark N. Berman
    Christopher M. Desiderio
    NIXON PEABODY LLP
    437 Madison Avenue
    New York, NY 10022
    Telephone: (212) 940-3000
    Facsimile: (212) 940-3111

*Counsel to The Commonwealth of Puerto Rico and the Puerto Rico sales Tax Financing Corporation for the transactions described herein*