FOX ROTHSCHILD LLP
Kathleen Aiello
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900

and

FOX ROTHSCHILD LLP
Samuel Israel (*admitted pro hac vice*)
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
(215) 299-2000

*Attorneys for Defendant, Right Management Consultants, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re                                    :    Chapter 11
                                         :
LEHMAN BROTHERS INC.,                    :    Case No. 08-13555 (JMP)
                                         :
                    Debtor.              :
---------------------------------------------------------x

**RESPONSE OF RIGHT MANAGEMENT, INC. IN OPPOSITION
TO DEBTORS' ONE HUNDRED AND FIFTY-FIRST
OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

Right Management, Inc. ("RMI"), through its undersigned counsel, Fox Rothschild LLP files the following response in opposition to the Debtors' One Hundred and Fifty-First Omnibus Objection to Claims (No Liability Claims) and in support thereof, states as follows:

**JURISDICTION**

1. The Court has jurisdiction over the Debtors' One Hundred and Fifty-First Omnibus Objection to Claims (No Liability Claims) (the "Claims Objection"), and RMI's response in opposition thereto (the "Response"), pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

**INTRODUCTION**

2. On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") (collectively, the "Debtors") and several of its subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases were consolidated for procedural purposes and are being jointly administered under the above-captioned case.

3. Upon information and belief, the Debtors operated as Debtors-in-possession pursuant to Section 1107 of the Bankruptcy Code from the Petition Date to September 22, 2008, when substantially all of the Debtors' assets were sold pursuant to Section 363 of the Bankruptcy Code to Barclay's Capital, Inc. (the "Sale"). The eight days between the Petition Date and the Sale Date shall hereafter be referred to as the "Administrative Claim Period".

4. On July 17, 2009, RMI, by and through its undersigned counsel, filed claim number 5503 in the amount of $133,000.00 for services performed by RMI for the Debtors after the Petition Date (the "Administrative Claim").

5. On June 7, 2011, the Debtors filed the Claims Objection seeking to disallow and expunge certain filed proofs of claim pursuant to Section 502(b) of the Bankruptcy Code and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the "Procedures Order") [Docket No. 6664], seeking disallowance and expungement of claims. The Debtors objected to RMI's Administrative Claim on the basis that the Administrative Claim was asserted against entities that are not the Debtors in these chapter 11 cases. (See Claims Objection, Exhibit A, No. 56].

6.  The Debtors agreed to adjourn the hearing to November 30, 2011 and extended the deadline for RMI to respond to the Claim Objection to November 11, 2011.

7.  RMI files this Response to respectfully request that this Court deny and overrule the Debtors' Claims Objection to the extent it seeks to disallow and expunge RMI's Administrative Claim. Upon further clarification from counsel regarding the above-referenced Sale Date and Administrative Claims Period, RMI also seeks to amend its Administrative Claim to the amount of $37,581.44, rather than $133,000, for services rendered to the Debtors during the Administrative Claims Period. For the foregoing reasons, RMI requests that this Court allow its Administrative Claim in the amount of $37,581.44.

## BACKGROUND

8.  RMI is a talent and career management firm which provides, among other services, outplacement services to employees of its clients.

9.  For several years prior to the Petition Date, RMI provided outplacement services to one or more of the Debtors, including LBHI and Lehman Brothers, Inc. ("LBI").

## BASIS FOR RMI'S ADMINISTRATIVE CLAIM

10. RMI provided services to the Debtors for several years during the prepetition period and continue to provide such services to the Debtors during the post-petition period. RMI's Administrative Claim arises out of the services provided to the Debtors during the post-petition period and before the Sale Date.[1]

11. RMI clients, including the Debtors, refer their separated employees (the "Candidates") to RMI for outplacement services. The fees for RMI's services are typically paid

---

[1] RMI's Administrative Claim, *as filed* in the amount of $133,000 included services performed for the Debtors both pre-Petition and post-Sale Date. Upon further investigation and clarification, however, RMI's Administrative Claim, as set forth in this Response in the amount of $37,581.44, is based upon services provided by RMI to the Debtors exclusively during the eight-day Administrative Claim Period.

3

for by each Candidate's former employer and are part of the former employee's separation package. The length and cost of each outplacement program will vary from client to client, but outplacement programs offered to the Candidates referred by the Debtors typically lasted three months and, on average, cost $3,600.[2]

12. RMI's services are not provided, nor are they billed, per activity performed by RMI for each Candidate. Rather, RMI bills each client, or former employer, once for each Candidate's outplacement program.

13. The "Start Date" of a Candidate's outplacement program is the date when the Candidate engages in his or her "Situational Analysis" (the "Situational Analysis"). RMI considers the Situational Analysis date to be a billable event. During the course of a Candidate's outplacement program, however, RMI provides a variety of additional services, which RMI considers to be earnable events. These earnable events, include, but are not limited to, coaching the Candidates, teaching both live and virtual classes in the Learning Center on topics such as negotiation, networking, as well as providing access to RMI's RightTrack system, which contains RMI's proprietary tools, among other activities (the "Earnable Events").[3] The Situational Analysis and the Earnable Events, as well as other services RMI provides to the Candidates, which RMI does not consider to be billable or earnable, are recorded in the Candidate's profile in RightTrack.

14. The Situational Analysis performed for each Candidate by RMI is the point at which RMI customizes the outplacement program for each Candidate and develops a strategic

---

[2] On or around May 20, 2002, RMI sent a letter to Ms. Karen Coviello, who RMI believed, at that time, was an LBHI employee, setting forth a revised pricing list for the out-placement programs it was providing, and planned to provide, to the Debtors.

[3] It should be noted that RMI, in good faith, excluded certain activities from its calculation of its Administrative Claim, which do not take a lot of time or money to perform. It included only those activities it deems to be billable or earnable from an accounting perspective.

4

career plan. RMI conducts a full career assessment and personality type indicator of the Candidate during the Situational Analysis. Also, upon completion of the Situational Analysis, Candidates are provided with all of RMI's proprietary tools and content. The date on which a Candidate engages in his or her Situational Analysis is typically the billable event for RMI.

15. "Earnable Events" continue to occur throughout the course of the Candidate's outplacement program. During the course of an outplacement program, Candidates generally take advantage of most of the services offered at the beginning of their programs, with engagement decreasing over the course of the program.

## INVOICING FOR SERVICES RENDERED

16. On or about the time a Candidate referred by the Debtors completed his or her Situational Analysis, RMI would typically cause an invoice to be issued to the Debtors. The outplacement program fee, per Candidate, includes the Earnable Events. Prior to August 2007, RMI would typically issue a separate invoice for each Candidate. From and after August 2007, RMI would typically issue a consolidated invoice once a month (at the end of a given month) with respect to all Candidates referred by the Debtors who completed a "Situational Analysis" in that month.

17. On September 25, 2008 and on October 28, 2008, RMI issued invoices (the "Invoices") to the Debtors for outplacement services performed on behalf of one or more of the Debtor entities, before and after the Petition Date, in the amount of $133,000. True and correct copies of such invoices are annexed hereto (in redacted form for confidentiality purposes) as Exhibit A. Those invoices comprise the Administrative Claim, as filed on July 17, 2009.

18. The services performed by RMI post-Petition were either provided directly to separated employees of one or more of the Debtors, and were actual costs and necessary

5

expenses of preserving the Debtors' estate.

19. The Debtors, however, objected to RMI's Administrative Claim on the basis that it was asserted against a "foreign or domestic affiliate of the Debtors that are not Debtors in these jointly administered cases," and not one of the Debtors. (See Claims Objection, ¶ 12).

20. RMI disputes the Debtors' allegations in its Claims Objection to the extent it asserts that RMI did not render services to the Debtors after the Petition Date. On the contrary, based on the attached invoices, it is clear that RMI provided services for the benefit of LBI, one of the Debtors in these cases.

21. Upon further review of the dates the services were provided by RMI to the Debtors, RMI is reducing its Administrative Claim as originally filed (in the amount of $133,000), but RMI submits that its Administrative Claim should not be disallowed in its entirety.

22. By this Response, RMI seeks to clarify that the services it provided to the Debtors during the month of September, 2008 should be broken down according to the dates when the services were specifically performed. In September 2008, RMI provided services with respect to the Debtors in one of three scenarios: (1) pre-Petition services provided to the Debtors; (2) administrative services provided to the Debtors during the eight-day period that comprises the Administrative Claims Period; or (3) services [*unknowingly*] rendered to Barclay's Capital, Inc. after the Sale Date.

23. RMI provided billable services to approximately thirty-three (33) of the Debtors' separated employees during the Administrative Claim Period, including the Situational Analysis and other Earnable Events. To quantify the Administrative Claim, *as amended*, RMI is

6

including only the value of the services provided for those 33 Candidates between September 15, 2008 and September 22, 2008. For example, if 33% of the services for a particular candidate were provided during the Administrative Claim period, RMI is seeking $1,200 for those administrative services (i.e., 33% x $3,600).

24. Based on the above analysis, the total value of the services performed by RMI to the Debtors during the Administrative Claim Period is $37,581.44.

**25.** Accordingly, RMI's Administrative Claim should not be disallowed and expunged as being asserted against non-Debtors. Rather, RMI's Administrative Claim should be awarded an allowed Administrative Claim in the amount of $37,581.44.

## NOTICE

26. The address to which the Debtors must reply to this Response and the person possessing ultimate authority to reconcile, settle, or otherwise resolve RMI's Administrative Claim is:

> Samuel H. Israel, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 20th Floor
> Philadelphia, PA  19103
> (215) 299-2886
> sisrael@foxrothschild.com
>
> *Attorneys for Right Management, Inc.*

## RESERVATION OF RIGHTS[4]

27. RMI reserves its right to supplement this Response should new or different information become available.

## CONCLUSION

---

[4] Nothing in this Response shall in any way affect RMI's pre-petition claim against the Debtors' estate, which was separately asserted or any defenses to preference claims asserted by the SIPC Trustee.

WHEREFORE, Right Management, Inc. respectfully requests that this Court: (a) deny and overrule the Debtors' Claims Objection to the extent it seeks an Order disallowing and/or expunging RMI's Administrative Claim; (b) allow RMI's Administrative Claim in the amount of $37,581.44; and (c) grant such other or further relief as the Court deems just or proper.

Dated:   New York, New York
          November 11, 2011

FOX ROTHSCHILD LLP

By:  */s/ Kathleen Aiello*
      Kathleen Aiello
      100 Park Avenue, 15th Floor
      New York, New York 10017
      (212) 878-7900

      Samuel Israel (*admitted pro hac vice*)
      2000 Market Street, 20th Floor
      Philadelphia, Pennsylvania 19103
      (215) 299-2000

*Attorneys for Defendant, Right Management, Inc.*