**Hearing Date and Time: November 30, 2011 at 10:00 a.m.**
**Response Deadline: November 11, 2011 at 4:00 p.m.**

August C. Venturini, Esq.
VENTURINI & ASSOCIATES
230 Park Avenue, Suite 545
New York, NY 10169
Tel: (212) 826-6800
Fax: (212) 949-6162

*Attorneys for Lamita Jabbour*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.,<br>         Debtors. | Chapter 11 Case No.<br><br>08-13555 (JMP) |

**RESPONSE OF LAMITA JABBOUR TO DEBTORS' TWO HUNDRED FIFTEENTH OMNIBUS OBJECTION TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lamita Jabbour, by her undersigned counsel, hereby responds to the Two Hundred Fifteenth Omnibus Objection to Disallow and Expunge Certain Filed Proofs of Claim, dated September 16, 2011 (the "Objection") by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), that seeks to disallow and expunge, or in the alternative, reclassify as equity interests, *inter alia*, Mrs. Jabbour's proof of claim.

**Summary**

1.  The Debtors improperly rely on a Termination Clause (defined below) to contend that the Debtors have no liability to Mrs. Jabbour. The Termination Clause is not controlling here as it contains a reinstatement provision which is applicable to Mrs. Jabbour and is also directly contradicted by a Survival Clause (defined below). Under New York law, when two contractual provisions are irreconcilable, courts will uphold the provision that is more specific or more principal to the contract. Here, the Survival Clause is not only more specific than the Termination Clause, it also is more central to the overall purpose of the agreement. Further, when ambiguities exist in contracts, courts generally interpret the ambiguities against the drafter, which, upon information and belief, was LBHI. Accordingly, the Termination Clause is not controlling, which means that LBHI is liable to Mrs. Jabbour and Mrs. Jabbour's proof of claim should not be disallowed and expunged.

2.  Mrs. Jabbour's claim should not be reclassified as an equity interest because the Debtors cannot demonstrate an unambiguous subordination right inasmuch as it uses terms that are ambiguous and contradictory. Moreover, the subordination clause merely states that LBHI agrees to reduce their own obligation, with no express agreement by the holders to such subordination. Consequently, Mrs. Jabbour's claim should not be reclassified as an equity interest.

**Background**

3.  The Objection seeks to disallow and expunge, or in the alternative, reclassify as equity interests, *inter alia*, certain proofs of claim that were filed by holders of securities ("Preferred Securities Claims") issued by Lehman Brothers UK Capital Funding V

L.P. ("LB UK V" or the "Issuer"), which are guaranteed by LBHI pursuant to a Subordinated Guarantee (the "Guarantee"). *See* the Objection, ¶¶ 1 and 2.

4. Lamita Jabbour purchased from LB UK V $500,000 worth of the Issuer's securities described in Ex. C[1] at page FT-1 of the document titled "Final Terms." As such, Mrs. Jabbour is the holder of a Preferred Securities Claim as she owned an interest in LB UK V that was defined as Preferred Securities[2] and benefited by the Guarantee.[3] *See* Ex. C.

5. LB GP No. 1, as general partner for LB UK V, was dissolved on June 22, 2010. *See* the Objection, ¶ 10 & n.3; *see also* Ex. E. The general partner's dissolution caused the automatic dissolution of LB UK V pursuant to the terms of the Partnership Agreement establishing LB UK V. *See* the Objection, ¶ 10 & n.2; *see also* Ex. D.

6. Upon the dissolution of the Issuer, holders of Preferred Securities, such as Mrs. Jabbour, became entitled to a Liquidation Distribution (Ex. C, § 3.1 p. 25) consisting of US$1,000 per preferred security (*Id.* at p. 20). LBHI became obligated under the Guarantee for certain Guaranteed Payments owed to Mrs. Jabbour including the Optional Redemption Price. (Ex. C, pp. 33-34). The Optional Redemption Price is defined as including the Liquidation Preference which is defined as including the Liquidation Distribution (Ex. C, pp. 20, 33). Accordingly, LBHI is obligated under the Guarantee to pay the Liquidation Distribution to Mrs. Jabbour.

7. The Debtors claim that the Guarantee provides it "shall terminate and be of no further force and effect upon the earliest of …dissolution of the issuer…" (the "Termination Clause"). *See* the Objection, ¶ 10; *see also* Ex. C, § 4 pp. 36-37. Accordingly,

---

[1] Citations preceded by "Ex." refer to the Exhibits attached to the Objection.
[2] "Preferred Securities" is defined as "…Holders which are entitled to the benefits of this Subordinated Guarantee…" Ex. C, pp. 33-34.
[3] Lamita Jabbour filed a Proof of Claim, Claim No. 56189, in the amount of $500,000 on October 29, 2009.

3

LBHI alleges that it has no liability to the holders of the Preferred Securities Claims and seeks to disallow and expunge those claims. *See* the Objection, ¶ 10.

8. In the alternative, the Debtors allege that the Preferred Securities Claims should be reclassified as equity interests. *See* the Objection, ¶ 1. In support of their claim, the Debtors cite to § 2.9 of the Guarantee (Ex. C, p. 35) which states: "Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank: (a) junior to all subordinated liabilities of LBHI … (b) *pari passu* with Parity Securities, … and (c) senior to the Junior Share Capital of LBHI" (the "Subordination Clause").

### The Termination Clause Is Not Controlling

9. LBHI cannot rely on the Termination Clause because it is directly contradicted by a more specific provision of the Guarantee, which states that "[t]he obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall *in no way be affected or impaired* by reason of the happening from time to time of any of the following: … dissolution…of the Issuer" (the "Survival Clause"). *See* Ex. C, § 2.4(d) pp. 34-35 (emphasis added).

10. The Termination Clause and the Survival Clause cannot be reconciled and thus only one can be effective. *See, e.g., In re Lehman Brothers Holdings Inc.*, 445 B.R. 143, 202 (Bankr. S.D.N.Y. 2011) ("Because these two contemporaneous documents are in conflict with one another as to the same subject matter, one of them must control the outcome.").

11. When two conflicting contractual provisions are irreconcilable, the Court must determine which provision will stand. *See Israel v. Chabra*, 601 F.3d 57 (2d Cir. 2010)

(finding that when two clauses in guaranty agreement were mutually exclusive, court had to "choose which must stand and which must fall").

12.  The Survival Clause should be given effect because it is more specific than the general terms of the Termination Clause. Under New York law[4], "courts construing contracts must give 'specific terms and exact terms ... greater weight than general language.'" *County of Suffolk v. Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001) (citation omitted). Here, the central issue is whether LBHI has an obligation to holders of the Preferred Securities Claims after dissolution of the Issuer. The Survival Clause specifically states that "[t]he obligations, covenants, agreements and duties of LBHI" under the Guarantee are *not* affected by the dissolution of the Issuer. *See* Ex. C, pp. 34-35.

13.  Further, even if there were no Survival Clause, the Termination Clause provides for a reinstatement of the Guarantee as follows:

> this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

(Ex. C, §4 p. 37).

14.  Here, the reinstatement provision is applicable as Mrs. Jabbour's $500,000 paid to purchase the Preferred Securities must be restored to her as a result of the dissolution of the Issuer.

15.  Even without the reinstatement provision, the conflict between the Termination Clause and the Survival Clause should be resolved in favor of Mrs. Jabbour. Upon information and belief, the Guarantee was drafted by LBHI, and under New York law, courts

---

[4] The Guarantee is governed by New York law. Ex. C, p. 38.

"generally interpret contractual ambiguities against the drafter." *Photopaint Techs. v. Smartlens Corp.*, 335 F.3d 152 (2d Cir. 2003). Accordingly, the Termination Clause should not be given effect and the Survival Clause should control the outcome.

16. Further, the Survival Clause is more germane to the investors' agreement than the Termination Clause, and thus the Survival Clause should stand. When resolving irreconcilable differences between contract clauses, the Second Circuit has "enforce[d] the clause relatively more important or principal to the contract." *Israel v. Chabra,* 601 F.3d at 63. In this matter, the Guarantee was executed by LBHI for the benefit of holders of preferred securities to induce the holders to provide necessary funds. *See* Ex. C, p. 33. Holders of the Preferred Securities Claims depended on the Survival Clause and LBHI's declaration that the Guarantee is "continuing, irrevocable and absolute" (Ex. C, § 2.1 p. 34), that holders "may enforce this Subordinated Guarantee directly against LBHI" (Ex. C, § 2.6 p. 35), and that "LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder…" (Ex. C, § 2.8 p. 35). Accordingly, the Survival Clause is of more importance to the contract and more clearly resonates with the overall confidence that the Guarantee sought to build in the holders of the Preferred Securities Claims.

### The Subordination Clause is Ambiguous

17. The Preferred Securities Claims should not be reclassified as equity interests because the Subordination Clause is ambiguous and contradictory.

18. Specifically, the Subordination Clause purports to rank any claims arising from any failure of LBHI to pay under the Guarantee "*pari passu* with Parity Securities…"

19.  The definition of Parity Securities, however, is far from clear and unambiguous as it specifically excludes the Preferred Securities and then apparently seeks to include securities issued by the Issuer which would include the Preferred Securities. *See* Ex. C, p. 33-34.[5]

20.  The Debtors seem to acknowledge the ambiguity by quoting only a small portion of the definition. *See* Objections n.4 pp. 5-6. Parsing through the language, Parity Securities is either any security issued by LBHI that ranks *pari passu* with LBHI's obligations under the Guarantee or any security "issued by the Issuer ... and entitled to the benefit of the Subordinated Guarantee." Ex. C, p. 33. Thus, the interpretation is that the Guarantee ranks *pari passu* with any security that ranks *pari passu* with it or with the Preferred Securities. Such a circular definition does not meet the unambiguous standard that the Debtors concede must be present.

21.  Indeed, the Debtors do not argue that any class of preferred stock of LBHI was issued on a *pari passu* basis with the Preferred Securities as the definition requires. And of course, the Debtors cannot argue that the Preferred Securities were issued on a *pari passu* basis with itself.

22.  Accordingly, the ambiguity of the definition of Parity Securities precludes the Debtors from enforcing the alleged subordination of the Preferred Securities Claims.

23.  Further, the Subordination Clause merely states that "LBHI agrees" that their own obligations to holders of Preferred Securities Claims will be reduced. There is no

---

[5] "Parity Securities" is defined as: "...any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee." *See* Ex. C, p. 33.

indication from the language of the Subordination Clause that holders of the Preferred Securities Claims, such as Mrs. Jabbour, ever agreed to subordinate their claims.

### Reservation of Rights

24.  Mrs. Jabbour reserves any and all applicable rights at law and/or equity, all claims, and all defenses, including without limitation the right to discovery in connection with the Objection and the rights to amend or supplement this Response and to join in any response of any other party to the Objection.

**WHEREFORE**, Lamita Jabbour requests that the Court deny the Objection, with prejudice, and provide such other and different relief as this Court deems just and proper.

Dated: November 11, 2011

VENTURINI & ASSOCIATES

By: _____
August C. Venturini
*Attorneys for Lamita Jabbour*
230 Park Avenue, Suite 545
New York, NY 10169
Tel: (212) 826-6800