WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons
Stephen A. Youngman (admitted pro hac vice)

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
: 
In re                                                                         :    Chapter 11 Case No.
                                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                                                                  :
                                    Debtors.                          :    (Jointly Administered)
                                                                                  :
------------------------------------------------------------------x

### DECLARATION OF DANIEL EHRMANN IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT AND COMPROMISE WITH THE BANK OF NEW YORK TRUST COMPANY, N.A., AS INDENTURE TRUSTEE FOR THE MAIN STREET BONDS AND MAIN STREET NATURAL GAS, INC.

Pursuant to 28 U.S.C. § 1746, I, Daniel Ehrmann, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the *Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of a Settlement and Compromise with the Bank of New York Trust Company, N.A., as Indenture Trustee for the Main Street Bonds and Main Street Natural Gas, Inc.* (the "Motion"),[1] dated November 11, 2011.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

3.  I am a Managing Director with Alvarez & Marsal North America, LLC. I was assigned to the Lehman matter in September 2008. I am a co-head of the derivatives group for the Debtors. In that capacity, I am responsible for and manage all derivatives-related matters of the Debtors. I have knowledge of, or have worked with or overseen Lehman employees who have knowledge of, the discussions related to the transactions discussed in the Motion and in this Declaration. It is in my business judgment that the relief requested in the Motion is in the best interests of the Debtors and their estates.

4.  Pursuant to the Agreement for Purchase and Sale of Natural Gas, dated as of April 1, 2008, among LBCS and Main Street (the "<u>Gas Purchase Agreement</u>"), Main Street paid $681,643,656 to LBCS as a prepayment for the purchase of certain quantities of natural gas over a thirty year period, and LBHI guaranteed certain of LBCS's obligations to Main Street under the Gas Purchase Agreement. To finance the prepayment price, Main Street issued the Main Street Bonds to investors pursuant to the Indenture among Main Street and BNYM, as trustee. To hedge its exposure to movements in gas prices, Main Street entered into a swap agreement with Calyon Bank, London Branch. Main Street sold the natural gas it purchased form LBCS to the Customers pursuant to separate supply contracts with each customer.

5.  On September 17, 2008, LBCS ceased performing its obligations under the Gas Purchase Agreement, and on September 22, 2011, Main Street delivered a Persistent Delivery Default Notice and a Notice of Termination of Gas Purchase Agreement. The Gas Purchase Agreement provides that, in the event of termination, LBCS shall pay to Main Street (i) the Replacement Value of Gas, (ii) the Reimbursement Amount, and (iii) the Unearned Amount, all as defined in the Gas Purchase Agreement.

6. Each of BNYM and Main Street filed proofs of claim in the amount of at least $751 million against each of LBCS and LBHI to recover amounts allegedly owing to Main Street under the Gas Purchase Agreement and the related Guarantee, respectively. The BNYM Proofs of Claim and the Main Street Proofs of Claim are duplicative of each other. BNYM, Main Street, and the Debtors have been involved in ongoing discussions regarding the merits and validity of the Proofs of Claim, and in particular, the parties' dispute regarding the interpretation of the definition of Unearned Amount and the calculation thereof and the inclusion of accrued but unpaid interest in the Reimbursement Amount. The parties have also engaged in ongoing discussions regarding BNYM's assertion that the guarantee claim against LBHI should be included in LBHI Class 5, as a Senior Third Party Guarantee Claim, as opposed to LBHI Class 9A, as a Third party Guarantee Claim Other Than Those of the Racers Trusts.

7. The Debtors and BNYM have spent a significant amount of time and effort negotiating the disputes, including having several telephonic meetings and a face-to-face meeting with principles and counsel. In order to resolve the disputes between BNYM, Main Street, and the Debtors regarding the Proofs of Claim and their classification, and to avoid protracted, costly, and uncertain litigation, the Debtors, BNYM, and Main Street have entered into the Stipulation and Agreement. The Stipulation and Agreement principally provides for (i) the reduction and allowance of the BNYM LBCS Claim in the amount of $722,000,000.00 in LBCS Class 4 under the Plan; (ii) the reduction and allowance of the BNYM LBHI Claim in the amount of $722,000,000.00 in LBHI Class 9A under the Plan; (iii) the withdrawal of the Main Street Claims; (iv) the agreement of each of BNYM, solely in its role as indenture trustee for the Main Street Bonds, and Main Street to not participate in the formulation of, file, prosecute, consent to or support any chapter 11 plan in the chapter 11 cases other than the Plan, or take any

other action to alter, delay or impede the confirmation and consummation of the Plan; and (iv) the agreement of the Debtors that monies held by BNYM in certain funds and accounts established by BNYM or Main Street for the benefit of the bondholders or Main Street, are not property of the Debtors' estates, and the Debtors will relinquish any and all rights, if any, that they may have in these funds.

8.  The Lehman Parties' entry into the Stipulation and Agreement is in their best interests. Litigation over the amounts due under the Gas Purchase Agreement would be expensive and time consuming. Such litigation would require significant discovery regarding the intent of the parties upon entry into the Gas Purchase Agreement and Indenture, as well as the interpretation of certain terms and provisions within the oil and gas industry. The Stipulation and Agreement obviates costly and protracted litigation with BNYM and Main Street.

9.  Under the Stipulation and Agreement, the amount of each allowed claim is below the amount asserted by BNYM. When considered in light of the other benefits of the Stipulation and Agreement, and based upon the Debtors' analysis of likelihood of success in litigation regarding the interpretation of the Gas Purchase Agreement and the Indenture, the amount of the claims to be allowed pursuant to the Stipulation and Agreement is reasonable.

I declare under penalty of perjury under the laws of the Unites States that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of November 2011.

/s/ Daniel Ehrmann
Daniel Ehrmann