Hearing Date and Time: November 16, 2011, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                                           :
**In re**                                                  :    **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,               :    **08-13555 (JMP)**
                                                           :
         Debtors.                                          :    **(Jointly Administered)**
-----------------------------------------------------------x
                                                           :
**In re**                                                  :    **Case No.**
                                                           :
**LEHMAN BROTHERS INC.,**                                  :    **08-01420 (JMP) (SIPA)**
                                                           :
         Debtor.                                           :
-----------------------------------------------------------x

**DEBTORS' REPLY TO OBJECTIONS AND IN FURTHER
SUPPORT OF JOINT MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND JAMES W. GIDDENS, AS TRUSTEE
FOR LEHMAN BROTHERS INC., PURSUANT TO SECTIONS
105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) FOR
AUTHORIZATION AND APPROVAL OF A STOCK PURCHASE
AGREEMENT REGARDING THE VEBA AND (II) FOR AUTHORIZATION
<u>AND APPROVAL OF A SETTLEMENT REGARDING THE SAME</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>") file this Reply to Objections to the Joint

Motion of LBHI and James W. Giddens, as Trustee for Lehman Brothers Inc., Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedures (I) For Authorization and Approval of a Stock Purchase Agreement Regarding the VEBA and (II) For Authorization and Approval of a Settlement Regarding the Same, filed October 21, 2011, ECF No. 21109 (the "Motion"),[1] and respectfully represent:

### DEBTORS' REPLY

1. The Motion seeks narrow and limited relief: (i) authorization and approval, for LBHI and the SIPA Trustee, on behalf of LBI, to enter into the Stock Purchase Agreement pursuant to which LBHI will purchase LBI's 100% ownership interest in Aceso (the "Shares") and (ii) the settlement and release of all claims held by LBHI or LBI against each other or their affiliates related to the VEBA. While over 1,100 parties received notice of the Motion, less than 15 written responses (the "Responses") were received by LBHI. In addition, telephone calls generally seeking information were received at the Debtors' call center. None of the Responses overcome the Debtors' and the SIPA Trustee's sound business judgment to enter into the Stock Purchase Agreement and exchange the releases.

2. The Responses largely express concern that the funds in the VEBA will not be used exclusively for the benefits of retirees under the Aetna Policy, notwithstanding that the VEBA expressly states that its funds may be used to pay claims or premiums under the Group Benefits Plan for participants and beneficiaries of the Group Benefits Plan, including active employees, and that such expenses have not been paid by the VEBA pending this Court's approval of the transfer of Aceso and the VEBA to LBHI. Some Responses raise two issues: (i) the Debtors' intentions with respect to the VEBA in the event the Department of Labor (the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

"DOL") does not authorize the reimbursement of $25 million of eligible expenses from the VEBA to LBHI, and (ii) whether the Debtors properly terminated retiree health benefits in October 2009. Both of these objections are irrelevant to the consideration of the specific, limited relief sought by the Debtors. Specifically, the Responses can be summarized as follows and overruled for the reasons set forth below:

- Objection: The DOL, which has questionable standing to appear in connection with this Motion, concedes that it "has no objection to the limited relief which is explicitly being sought," DOL Response ¶ 1. Rather, the DOL takes issue with and requests clarification of the Debtors' future intentions for the VEBA in the event the DOL exemption is not granted.

  Debtors' Response: While the Debtors can confirm that all of their future actions with respect to the VEBA will comply with applicable law, including ERISA, the Debtors' future intentions with the VEBA are not the subject of the Motion and are irrelevant to the relief requested. The Debtors are not seeking the Court's approval of the future use of the VEBA. In that regard, the Debtors and the SIPA Trustee have revised the proposed order to make clear that the Court is only approving the narrow and limited relief sought by the Motion, *i.e.*, the approval of the purchase of the Shares and the exchange of limited mutual releases between, and only between, the Debtors and the SIPA Trustee. A blackline reflecting the modifications to the order is annexed hereto as Exhibit A.

- Objection: Approximately a dozen retirees submit that the termination of retiree benefits is unfair (but did not allege that they had vested rights) and/or that the VEBA should be used solely for the benefit of retirees and not active employees or for reimbursement to LBHI.

  Debtors' Response: While the Debtors are sympathetic to the circumstances of retirees and the impact that the demise of the Lehman enterprise has had on such individuals, the Debtors must exercise their fiduciary duties in the interests of creditors. As such, the Debtors believe that a prudent exercise of business judgment requires that they utilize the VEBA for its original stated purposes, which includes the payment of medical expenses for active employees under the Group Benefits Plan. In addition, the Debtors seek to preserve the ability to pursue a reimbursement from the VEBA for costs and expenses that they should not have incurred if the SIPA Trustee had permitted the VEBA to have been used for its intended purposes, *i.e.*, the payment of medical expenses of the Debtors' active employees and the retirees, from April through December 2009. *See* Hershan Declaration at ¶ 5.

- Objection: Ms. Wendy Uvino, a <u>former</u> employee of Lehman's human resources department and <u>former</u> trustee for the VEBA, alleges that retiree benefits may have been improperly terminated due to alleged vested rights and disputes certain facts surrounding the termination of retiree benefits, although such statements are not included among her stated objections. *See* Objection of Wendy Uvino, filed Nov. 9, 2011, ECF No. 21797, at ¶¶ 1-7.

  Debtors' Response: Ms. Uvino lacks standing and is not a party in interest with respect to the Motion. Moreover, Ms. Uvino's allegations had not previously been made during her employment at the time of termination of retiree benefits covered under the Group Benefits Plan and are baseless and may be motivated by the circumstances surrounding her departure from LBHI in July 2010.[2] Contrary to Ms. Uvino's allegations, LBHI's termination of retiree benefits, which was implemented, in part, with the assistance and planning of Ms. Uvino in her then-capacity as a senior vice president in the human resources department, was in compliance with the terms of the Debtors' prepetition health care plans and applicable law. Indeed, it is telling that, in over two years since the notice of termination of retiree health care benefits, which was given seventy-five days before the termination was effective, no retirees have contended that they had vested benefits that could not be terminated by the Debtors.

3. Neither the DOL nor Ms. Uvino, the former trustee of the VEBA, dispute that the VEBA failed to pay claims under the Group Benefits Plan, notwithstanding that the payment of such claims was the sole and explicit purpose of the VEBA during the period before termination. It was this inappropriate failure, which LBHI was compelled to address by making direct payments, that LBHI will be seeking to remedy through the proposed reimbursement. The Debtors believe that they will be able to satisfy the requirements to obtain the authorization from the DOL for the reimbursement. The DOL and Ms. Uvino have not and cannot identify any legal or contractual prohibition that precludes the VEBA from segregating funds until the reimbursement described in the Motion is confirmed. In the event the DOL denies the exemption, which exemption is not a condition to LBHI's purchase of the Shares, the Debtors

---

[2] Ms. Uvino brought a wrongful termination suit against the Debtors. *See* Adv Proc. No. 10-05428 (JMP). A majority of Ms. Uvino's complaint was dismissed by the Court. *Memorandum Decision Granting Motion to Dismiss But Allowing Quantum Meruit Claims for Work Performed in 2010*, May 23, 2011. A motion to dismiss Ms. Uvino's amended complaint is scheduled for hearing on November 16, 2011 at 2:00 p.m.

will consider the circumstances at such time and evaluate the most beneficial and appropriate use of the VEBA, consistent with all applicable law, including ERISA. To be clear, the Debtors are not seeking the Court's approval of the Debtors' future conduct or the Debtors' request for reimbursement. The Debtors are simply providing notice to all parties of their current intentions.

4. In addition, contrary to the Responses raised by approximately a dozen retirees, the Motion does not seek to terminate the payment of eligible health and medical benefits for retirees. All retiree health benefits were terminated effective December 31, 2009, in accordance with the terms of the various Lehman health care plans. Notice of such termination was served by LBHI to all Lehman retirees, on or about October 16, 2009. Affected parties have had over two years to voice an objection to the termination of their benefits, and the Debtors are not aware that any parties sought to challenge the Debtors' authority to terminate retiree health benefits or contended that they had vested benefits. Indeed, although certain retirees have objected to the Motion on the grounds that it allegedly terminates retiree benefits, none of the retirees have challenged the Debtors' legal authority to terminate such benefits. Case law within this district clearly establishes that the Debtors had the authority to terminate health care benefits for retirees, in December 2009, and that the regime of section 1114 of the Bankruptcy Code is inapplicable to these circumstances. *In re Delphi Corp.*, Ch. 11 Case No. 05-44481 (RDD), 2009 WL 637315 at *1 (Bankr. S.D.N.Y. March 10, 2009) ("section 1114's regime does not apply … because the various welfare plans are, under the terms of the plan documents themselves, modifiable at will"); Transcript of Record at 109:25-110:2, *In re Gen. Motors Corp.*, 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) ("section 1114 does not trump any agreement between a company and its employees that gives the company the right to amend or terminate a welfare plan"); *see also In re Doskocil Cos., Inc.*, 130 B.R. 870, 877 (Bankr. D. Kan. 1991)

(concluding that section 1114 of the Bankruptcy Code does not apply to modifications to retiree benefits that the debtor has the right to modify or terminate at will under applicable non-bankruptcy law).

5. While the termination of retiree benefits is not the subject of the Motion, the Debtors believe that it is appropriate to clarify the factual record in light of some of the statements in the Responses.

- The Debtors conducted diligence of the retiree benefits being paid by the estate between April 2009 through January 2010 as well as the relevant terms of the policies.[3]

- In October 2009, notice of termination of retiree benefits was sent to all retirees whose benefits were being paid, in part, by LBHI (the "Termination Notice"), attached hereto as Exhibit B.

- The Termination Notice clearly stated, "LBHI is hereby exercising its right to terminate all Retiree Health Benefits effective December 31, 2009." The Termination Notice further stated that "LBHI has arranged for Aetna Life Insurance Company ("Aetna") to offer substitute healthcare . . . The premium cost of your coverage must be borne entirely by you and LBHI will not be responsible for any cost associated with the Group Access-only Plan." (emphasis added)

- At the time of the termination, the VEBA was not available to pay the benefits of retirees and the Termination Notice did not indicate that the VEBA would pay the costs of retirees under Group Access-only Plan.

- No responses were received that objected to the Termination Notice or asserted vested rights.

- The VEBA was subsequently amended by the SIPA Trustee in the beginning of 2010 to allow for the payments of retiree benefits, and a notice of the amendment was sent to retirees on January 11, 2010 (the "Amendment Notice"). A copy of the Amendment Notice is attached hereto as Exhibit C. The Amendment Notice makes clear that while the VEBA would pay retiree benefits temporarily, there was no obligation to continue payments and that any continuation of benefits was still at the retirees' own cost. No responses

---

[3] Ms. Uvino was intimately involved in the decision-making process regarding the termination of retiree benefits and the due diligence process.

were received that objected to the Amendment Notice or asserted vested rights.

6. Finally, the DOL's and Ms. Uvino's assertions that insufficient time was given for retirees to object to the Motion should be overruled. Notice of the Motion complied with the Case Management Order entered in these cases and the applicable Bankruptcy Rules. An individualized notice was delivered to retirees detailing the relief sought by the Motion. The Debtors provided over 25 days' notice of the Motion. The notice included an email and phone number so that individuals could voice their concerns to the Debtors. Indeed, the Debtors have been responding to a number of inquiries from retirees and making information available to them. Accordingly, due and proper notice of the Motion has been provided.

7. While the Responses address a myriad of issues, none of these issues are relevant to the limited relief requested in the Motion, *i.e.*, the approval of the SIPA Trustee's sale and LBHI's purchase of the Shares, and the exchange of limited mutual releases between the SIPA Trustee and LBHI. The Debtors submit that the showing that the Debtors have made in the Motion and in the Hershan Declaration as to the Debtors' exercise of sound and prudent business judgment in deciding to proceed with the proposed transactions, as well as the reasonableness of those to the proposed releases, have not been rebutted. The Motion should, therefore, be granted.

WHEREFORE LBHI respectfully requests that the Court grant the relief requested herein, in the form of proposed order annexed hereto, and such other and further relief as it deems just and proper.

Dated: November 14, 2011
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                                           :
In re                                                      :   Chapter 11 Case No.
                                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,                     :   08-13555 (JMP)
                                                           :
              Debtors.                                     :   (Jointly Administered)
                                                           :
                                                           :
-----------------------------------------------------------x
                                                           :
In re                                                      :
                                                           :   Case No.
LEHMAN BROTHERS INC.,                                      :
                                                           :   08-01420 (JMP) (SIPA)
              Debtor.                                      :
                                                           :
-----------------------------------------------------------x
```

**ORDER GRANTING JOINT MOTION
OF LEHMAN BROTHERS HOLDINGS
INC. AND JAMES W. GIDDENS, AS TRUSTEE
FOR LEHMAN BROTHERS INC., PURSUANT TO
SECTIONS 105(a) AND 363 OF THE BANKRUPTCY
CODE AND RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION
AND APPROVAL OF A STOCK PURCHASE AGREEMENT
REGARDING THE VEBA AND (II) FOR AUTHORIZATION
AND APPROVAL OF A SETTLEMENT REGARDING THE SAME**

Upon the joint motion, dated October 21, 2011 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors") and

James W. Giddens (the "SIPA Trustee"), as trustee for the SIPA liquidation of Lehman

Brothers Inc. ("LBI"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

US_ACTIVE:\43857507\0102\58399.0008

Procedure (the "Bankruptcy Rules"), for (i) authorization and approval of a Stock Purchase Agreement (the "Stock Purchase Agreement") between LBHI and the SIPA Trustee, pursuant to which LBHI will purchase and LBI will sell its 100% ownership interest (the "Shares") in Aceso Holdings Inc., a wholly-owned subsidiary of LBI that owns the VEBA, and (ii) authorization and approval of the settlement and release of all claims by LBHI or LBI against each other or their affiliates related to the VEBA, all as more fully described in the Motion; and upon the Declarations of Robert Hershan on behalf of LBHI and of Spencer L. Harrison, Esq. on behalf of the SIPA Trustee in support of the Motion; and the Court having jurisdiction in the Chapter 11 Cases to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein in the Chapter 11 Cases being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue as to the Chapter 11 Cases being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having jurisdiction to consider the Motion and the relief requested in the SIPA Proceeding pursuant to SIPA § 78eee(b)(4); and venue as to the SIPA Proceeding being proper before this Court pursuant to SIPA § § 78eee(a)(3) and 78aa; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for the chapter 11 cases, LBHI ECF No. 9635, to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases; and due and proper notice of the Motion having been provided in accordance with the amended order entered in the SIPA Proceeding implementing certain notice and case management procedures and other related relief, LBI ECF No. 3466; and personalized notice of the Motion having been provided to each of Lehman's retirees and their beneficiaries, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI and LBI, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

~~ORDERED that the Motion is granted in all respects; and it is further~~

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Stock Purchase Agreement is approved and LBHI is authorized to purchase and the SIPA Trustee, on behalf of LBI, is authorized to sell Aceso on the terms and conditions set forth therein; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, LBHI shall take title to and possession of LBI's interest in the Shares free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI and the SIPA Trustee's settlement and release of claims regarding the VEBA as set forth in the Stock Purchase Agreement is authorized and approved; and it is further

ORDERED that LBHI is a good-faith purchaser of LBI's interest in the Shares and shall be entitled to all of the benefits and protections afforded in section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the consideration provided by LBHI for LBI's interest in the Shares is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that the Court shall retain jurisdiction to enforce and implement the terms and provisions of the Stock Purchase Agreement and this Order, and resolve disputes thereunder; and it is further

ORDERED that all objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

ORDERED that the failure to specifically include any particular provision of the Stock Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the implementation of the transactions ~~contemplated~~ provided for in the Stock Purchase Agreement be approved in its entirety; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry.

Dated: _____, 2011
       New York, New York

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

WGM_TRAILER

# LEHMAN BROTHERS

October 16, 2009

Re:   NOTICE OF TERMINATION OF RETIREE HEALTH
      AND MEDICAL BENEFITS AS OF DECEMBER 31, 2009

You are receiving this letter because you are or may be eligible to become a participant or beneficiary under one of the post-retirement health care programs sponsored by Lehman Brothers Holdings Inc. ("LBHI") on behalf of itself and its subsidiaries ("Lehman"). Throughout its history, Lehman offered, under the LBHI Group Benefits Plan, the following programs for the provision of post-retirement health care benefits, including medical, prescription drug, mental health, vision, extended care, hearing and other similar benefits (collectively, the "Retiree Health Benefits"):

- Retiree Healthcare Program
- Retiree Medical Program
- Senior Care Plus
- Medicare Plus Plan
- AARP Extended Medicare Supplement

On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of the United States Bankruptcy Code. It has become clear that Lehman will not emerge from chapter 11 on a size and scale comparable to its pre-petition enterprise. Moreover, given LBHI's funding in trust prior to the commencement of LBHI's chapter 11 case for medical benefits, among other things, generally described at the end of this letter, continued funding would represent, from LBHI's perspective, duplicative expenditure of such benefits. Accordingly, LBHI has determined that it can no longer continue to pay the costs associated with maintaining Retiree Health Benefits.

**Please be advised that, consistent with each of the aforementioned programs, LBHI is hereby exercising its right to terminate <u>all</u> Retiree Health Benefits effective <u>December 31, 2009</u>.**

<u>Availability of Alternative Coverage</u>

LBHI believes that a December 31, 2009 effective date allows sufficient time for you to consider alternative arrangements. For your consideration, LBHI has arranged for Aetna Life Insurance Company ("Aetna") to offer substitute healthcare through a Group Access-only Plan if you are over 65 years of age, which will provide similar benefits as your current healthcare coverage. The premium cost of your coverage must be borne entirely by you and LBHI will not be responsible for any cost associated with the Group Access-only Plan. LBHI reserves its rights to terminate its consent to the Group Access-only Plan at any time for any reason. In addition, the Group Access-only Plan will be administered exclusively by Aetna. You will receive information in a second mailing with details on the plan design, rates and how to opt out if you do not wish to continue coverage. **<continued on reverse side>**

October 16, 2009
Page 2

    For those under the age of 65 that are not currently eligible for the Group Access-only Plan, LBHI will allow you to continue to maintain your current healthcare coverage for the time being, but the entire cost of such coverage must be borne by you. The premium payments that you will be responsible to pay in full will be determined from time to time (adjusted on an annual basis) by Aetna. LBHI will not be responsible for any cost associated with your continued healthcare coverage and reserves its right to terminate or amend your healthcare coverage or the terms thereof at any time for any reason. This offer is being made solely as an accommodation to allow you to transition to the Group Access-only Plan when you turn 65 years old. You will receive information in a second mailing with details on the Plan design and rates.

**The VEBA Trust**

    With respect to the pre-chapter 11 funding referred to above, on September 12, 2008, LBHI funded in excess of $95 million to its wholly owned subsidiary Lehman Brothers Inc. ("LBI") to enable it to establish a trust (the "Trust") intended to qualify as a voluntary employee beneficiary association or a "VEBA" under section 501(c)(9) of the federal tax code. The purpose of the Trust was to fund medical, dental, prescription drug, death and other eligible benefits for participants in the LBHI Group Benefits Plan eligible for benefits, without distinction between active employees and retirees.

    On September 19, 2008, a liquidation proceeding under the Securities Investor Protection Act of 1970 with respect to LBI was commenced and James W. Giddens was appointed as the trustee to administer LBI's estate (the "LBI Trustee"). Although the Trust was initially fulfilling its intended purpose to fund eligible health and medical benefits, on or about March 2009, the LBI Trustee suspended all payments by the Trust. Accordingly, to avoid an immediate halt of your health and medical coverage, LBHI resumed payment of Retiree Health Benefits on or about that date. However, for the reasons stated above, LBHI can no longer continue to pay for Retiree Health Benefits.

    While we understand that there is currently approximately $45 million in the Trust, given the LBI Trustee's suspension of payments, there is significant uncertainty as to whether or not the LBI Trustee intends to use the Trust funds for payment of eligible benefits. We refer you to the following website maintained by the LBI Trustee for information regarding the status of the LBI proceeding: www.lehman-docket.com.

    We regret that this decision has been made, but under the current circumstances of a bankruptcy, LBHI cannot continue to make payments in respect of Retiree Health Benefits. LBHI has taken all reasonable steps to try to minimize any hardship that you may suffer as a consequence of this difficult determination.

    If you have any questions or concerns, please contact the Lehman Brothers Human Resources Service Center at 1-866-994-6381 or e-mail HRServices@lehmanholdings.com.

# EXHIBIT C

WGM_TRAILER

# LEHMAN GROUP HEALTH CARE TRUST

January 11, 2010

Re: Retiree Medical Coverage Through Aetna

Dear Lehman Brothers Retiree:

You previously received letters from Lehman Brothers Holdings Inc. ("LBHI") advising you of the termination of the Lehman Retiree Health and Medical Plan ("Retiree Plan") and alternative coverage options available separately through Aetna ("Aetna Policy"). The purpose of this letter is to advise you of a recent development relating to the funding of premiums under the Aetna Policy.

**Change in Funding**

Lehman Brothers Inc. ("LBI"), is in the midst of a liquidation proceeding under the Securities Investor Protection Act of 1970 ("SIPA"). James W. Giddens, Trustee for the SIPA liquidation of the business of LBI ("Trustee"), recently determined to permit the Lehman Group Health Care Trust ("Health Care Trust") sponsored by Aceso Holdings, Inc. ("Aceso"), a wholly owned subsidiary of LBI, to fund a portion of the premiums under the Aetna Policy for retirees. In any case, you will nonetheless be required to pay a portion of the premiums in the amount established for 2010 and from time to time thereafter, unless you opt out of coverage.

**LBI has been informed by LBHI that the Lehman benefit plans previously providing Retiree Health Benefits terminated on December 31, 2009, and are not being reinstated.** As a result, the Aetna Policy will be modified to permit premium payments directly by the Health Care Trust. The amount of premiums paid by the Health Care Trust can change at any time, and the Aetna Policy may be amended or terminated at any time.

You were previously advised that there was uncertainty as to whether the Health Care Trust would be used for payment of eligible benefits for retirees. The Trustee has expressed his intent to permit the Health Care Trust to be used for payment of premiums, but arrangements to permit such payments to occur have not been finalized. The Trustee, LBHI and Aetna have begun discussions to work out how the Health Care Trust can pay premiums under the Aetna Policy for retirees.

**No Increase in Your Costs; New Plan Design Applies**
Assuming arrangements for the Health Care Trust to pay premiums are finalized, your plan costs for 2010 will not increase over 2009 costs and therefore you will not be responsible for the full cost of coverage. You will pay the same amount in 2010 as you paid during 2009. The 2010 plan design mailed to you in November will apply, including, if applicable, the Medicare Open[SM] Plan and Enhanced Medicare Part D prescription drug coverage.

The Aetna arrangements and the amounts paid by the Health Care Trust are subject to change from year to year, or at any other time.

US_ACTIVE:\43257045\06\58399.0003

Letter S

**Enrollment & Opt Out Process**
You will be automatically enrolled in the new 2010 benefit plan, unless you contact us **to opt out of the plan.**

If you previously contacted the Lehman Brothers HR Service Center to opt out and you now wish to make a change based on the plan funding, please contact us at **646-285-9800 or 866-994-6381.** Please indicate that you are a Lehman Brothers retiree and be ready to provide the last 4 digits of your Social Security number.

**Questions?**
If you have any questions, please call Aetna toll free at **1-800-307-4830** (TTY/TDD: 1-800-628-3323). The Aetna plan specialists are available Monday through Friday, 8 a.m. to 6 p.m. to personally help you with any questions you might have. You can also visit Aetna online at www.aetnamedicare.com.