# EXHIBIT A

B10 (Official Form 10) (12/08)

**ORIGINAL**

| UNITED STATES BANKRUPTCY COURT: | SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>**Lehman Commercial Paper, Inc.** | Case Number:<br>**08-13900** |
|---|---|

*Note: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>**Highland Credit Strategies Master Fund, L.P.** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>c/o Highland Capital Management, L.P.     Scott Everett<br>13455 Noel Road, Suite 800     Haynes and Boone, LLP<br>Dallas, TX 75240     2323 Victory Avenue, Suite 700<br>Telephone number:     Dallas, TX 75219<br>(972) 628-4100     (214) 651-5000 | Court Claim Number: _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1.   Amount of Claim as of Date Case Filed:  $ 327,021.70**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐  Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5.  Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
| **2.   Basis for Claim:    __See attached Addendum____**<br>(See instruction #2 on reverse side.) | ☐  Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) |
| **3.   Last four digits of any number by which creditor identifies debtor:** _____<br><br>**3a.  Debtor may have scheduled account as:** _____<br>(See instruction #3a on reverse side.) | ☐  Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier. 11 U.S.C. §.507(a)(4) |
| **4.   Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>**Describe:**<br><br>**Value of Property: $**_____     **Annual Interest Rate** _____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**if any: $**_____     **Basis for perfection:** _____<br><br>**Amount of Secured Claim: $**_____     **Amount Unsecured: $**_____ | ☐  Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5)<br><br>☐  Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7)<br><br>☐  Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8)<br><br>☐  Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____) |
| **6.   Credits:**   The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$_____ |
| **7.   Documents:** Attach redact~~ed~~     Filed by: USBC - Southern District of New York<br>promissory notes, purchase order     Lehman Brothers Holdings Inc., Et Al.<br>judgments, mortgages, and securit~~y~~     08-13555 (JMP)     0000003136<br>copies of documents providing evi~~dence~~     [barcode]<br>summary. *(See instruction 7 and* ~~8~~ | ~~c~~laim, such as<br>~~payme~~nts, contracts,<br>~~at~~tach redacted<br>~~must~~ also attach a<br><br>* Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

DO NOT SEND ORIGINAL DOCUMENTS.   ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br>2/19/06 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>**Patrick Boyce** | **FILED / RECEIVED**<br><br>**MAR - 2 2009**<br><br>**FOR COURT USE ONLY**<br>EPIQ BANKRUPTCY SOLUTIONS, LLC |
|---|---|---|

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 11 U.S.C. §§ 152 and 3571.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re                                          :
                                               :
                                               :
LEHMAN COMMERCIAL PAPER, INC.                  :       Case No. 08-13900 (JMP)
                                               :
                                               :
                                               :
                                Debtor.        :
---------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM OF HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.

1.      On September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI") filed its voluntary petition for bankruptcy protection under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Court"). On September 19, 2008 (the "Commencement Date"), the United States District Court for the Southern District of New York entered an order granting the application of the Securities Investor Protection Corporation for issuance of a protective decree adjudicating that the customers of Lehman Brothers, Inc. ("LBI") were in need of the protection afforded by the Securities Investor Protection Act of 1970. On October 5, 2008 (the "Petition Date"), LBHI subsidiary, Lehman Commercial Paper, Inc. ("LCI"), filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code in this Court.

2.      Prior to the Petition Date, LCI, LBI, and Highland Credit Strategies Master Fund, L.P. ("Highland Credit Strategies") entered into that certain Master Repurchase Agreement dated as of October 1, 2007, and each of the Annexes related thereto and all Confirmations and Transactions thereunder, in each case, as such documents were amended and supplemented from

time to time (collectively, the "Agreement") with LCI and LBI.[1]  A copy of the Agreement is attached hereto as *Exhibit A*.

3.        On September 26, 2008, Highland Credit Strategies issued the Notice of Early Termination of Master Repurchase Agreement (the "Notice of Early Termination") whereby Highland Credit Strategies declared an Event of Default under Paragraphs 11(ii) and (vii) of the Agreement.  A copy of the Notice of Early Termination is attached hereto as *Exhibit B*.  As a result of the declaration of an Event of Default, the Repurchase Date in respect of all outstanding Transactions was deemed to immediately occur.

4.        On October 10, 2008, Highland Credit Strategies provided to LCI and LBI its Calculation Statement Under Master Repurchase Agreement (the "Calculation Statement") pursuant to Paragraph 11 of the Agreement as a result of the early designation of the Repurchase Date.  A copy of the Calculation Statement and supporting documents are attached hereto as *Exhibit C*.

5.        Pursuant to Paragraph 11 of the Agreement, the amount of $327,021.70 is due and payable from LCI and LBI as described in the Calculation Statement.

6.        Highland Credit Strategies is filing this proof of claim with full reservation of rights, including the right to further amend or supplement the proof of claim at a later date.

7.        Nothing provided for herein shall limit Highland Credit Strategies' rights under the Agreement.

---

[1] Capitalized terms not otherwise defined shall have the meanings given in the Agreement.

# EXHIBIT "A"



# Master Repurchase Agreement

September 1996 Version

Dated as of **October 1, 2007**



Between:    **Lehman Brothers Inc.**
**Lehman Commercial Paper Inc.**

**Highland Credit Strategies Master Fund, L.P.**

and

## 1. Applicability

From time to time the parties hereto may enter into transactions in which one party ("Seller") agrees to transfer to the other ("Buyer") securities or other assets ("Securities") against the transfer of funds by Buyer, with a simultaneous agreement by Buyer to transfer to Seller such Securities at a date certain or on demand, against the transfer of funds by Seller. Each such transaction shall be referred to herein as a "Transaction" and, unless otherwise agreed in writing, shall be governed by this Agreement, including any supplemental terms or conditions contained in Annex I hereto and in any other annexes identified herein or therein as applicable hereunder.

## 2. Definitions

(a) "Act of Insolvency", with respect to any party, (i) the commencement by such party as debtor of any case or proceeding under any bankruptcy, insolvency, reorganization, liquidation, moratori-um, dissolution, delinquency or similar law, or such party seeking the appointment or election of a receiver, conservator, trustee, custodian or similar official for such party or any substantial part of its property, or the convening of any meeting of creditors for purposes of commencing any such case or proceeding or seeking such an appointment or election, (ii) the commence-ment of any such case or proceeding against such party, or another seeking such an appoint-ment or election, or the filing against a party of an application for a protective decree under the provisions of the Securities Investor Protection Act of 1970, which (A) is consented to or not timely contested by such party, (B) results in the entry of an order for relief, such an appoint-ment or election, the issuance of such a protective decree or the entry of an order having a sim-ilar effect, or (C) is not dismissed within 15 days, (iii) the making by such party of a general assignment for the benefit of creditors, or (iv) the admission in writing by such party of such party's inability to pay such party's debts as they become due;

(b) "Additional Purchased Securities", Securities provided by Seller to Buyer pursuant to Paragraph 4(a) hereof;

(c) "Buyer's Margin Amount", with respect to any Transaction as of any date, the amount obtained by application of the Buyer's Margin Percentage to the Repurchase Price for such Transaction as of such date;

(d) "Buyer's Margin Percentage", with respect to any Transaction as of any date, a percentage (which may be equal to the Seller's Margin Percentage) agreed to by Buyer and Seller or, in the absence of any such agreement, the percentage obtained by dividing the Market Value of the Purchased Securities on the Purchase Date by the Purchase Price on the Purchase Date for such Transaction;

(e) "Confirmation", the meaning specified in Paragraph 3(b) hereof;

(f) "Income", with respect to any Security at any time, any principal thereof and all interest, dividends or other distributions thereon;

(g) "Margin Deficit", the meaning specified in Paragraph 4(a) hereof;

(h) "Margin Excess", the meaning specified in Paragraph 4(b) hereof;

(i) "Margin Notice Deadline", the time agreed to by the parties in the relevant Confirmation, Annex I hereto or otherwise as the deadline for giving notice requiring same-day satisfaction of margin maintenance obligations as provided in Paragraph 4 hereof (or, in the absence of any such agreement, the deadline for such purposes established in accordance with market practice);

(j) "Market Value", with respect to any Securities as of any date, the price for such Securities on such date obtained from a generally recognized source agreed to by the parties or the most recent closing bid quotation from such a source, plus accrued Income to the extent not included therein (other than any Income credited or transferred to, or applied to the obligations of, Seller pursuant to Paragraph 5 hereof) as of such date (unless contrary to market practice for such Securities);

(k) "Price Differential", with respect to any Transaction as of any date, the aggregate amount obtained by daily application of the Pricing Rate for such Transaction to the Purchase Price for such Transaction on a 360 day per year basis for the actual number of days during the period commencing on (and including) the Purchase Date for such Transaction and ending on (but excluding) the date of determination (reduced by any amount of such Price Differential previously paid by Seller to Buyer with respect to such Transaction);

(l) "Pricing Rate", the per annum percentage rate for determination of the Price Differential;

(m) "Prime Rate", the prime rate of U.S. commercial banks as published in The Wall Street Journal (or, if more than one such rate is published, the average of such rates);

(n) "Purchase Date", the date on which Purchased Securities are to be transferred by Seller to Buyer;

(o) "Purchase Price", (i) on the Purchase Date, the price at which Purchased Securities are transferred by Seller to Buyer, and (ii) thereafter, except where Buyer and Seller agree otherwise, such price increased by the amount of any cash transferred by Buyer to Seller pursuant to Paragraph 4(b) hereof and decreased by the amount of any cash transferred by Seller to Buyer pursuant to Paragraph 4(a) hereof or applied to reduce Seller's obligations under clause (ii) of Paragraph 5 hereof;

(p) "Purchased Securities", the Securities transferred by Seller to Buyer in a Transaction hereunder, and any Securities substituted therefor in accordance with Paragraph 9 hereof. The term "Purchased Securities" with respect to any Transaction at any time also shall include Additional Purchased Securities delivered pursuant to Paragraph 4(a) hereof and shall exclude Securities returned pursuant to Paragraph 4(b) hereof;

(q) "Repurchase Date", the date on which Seller is to repurchase the Purchased Securities from Buyer, including any date determined by application of the provisions of Paragraph 3(c) or 11 hereof;

(r) "Repurchase Price", the price at which Purchased Securities are to be transferred from Buyer to Seller upon termination of a Transaction, which will be determined in each case (including Transactions terminable upon demand) as the sum of the Purchase Price and the Price Differential as of the date of such determination;

(s) "Seller's Margin Amount", with respect to any Transaction as of any date, the amount obtained by application of the Seller's Margin Percentage to the Repurchase Price for such Transaction as of such date;

(t) "Seller's Margin Percentage", with respect to any Transaction as of any date, a percentage (which may be equal to the Buyer's Margin Percentage) agreed to by Buyer and Seller or, in the absence of any such agreement, the percentage obtained by dividing the Market Value of the Purchased Securities on the Purchase Date by the Purchase Price on the Purchase Date for such Transaction.

## 3. Initiation; Confirmation; Termination

(a) An agreement to enter into a Transaction may be made orally or in writing at the initiation of either Buyer or Seller. On the Purchase Date for the Transaction, the Purchased Securities shall be transferred to Buyer or its agent against the transfer of the Purchase Price to an account of Seller.

(b) Upon agreeing to enter into a Transaction hereunder, Buyer or Seller (or both), as shall be agreed, shall promptly deliver to the other party a written confirmation of each Transaction (a "Confirmation"). The Confirmation shall describe the Purchased Securities (including CUSIP number, if any), identify Buyer and Seller and set forth (i) the Purchase Date, (ii) the Purchase Price, (iii) the Repurchase Date, unless the Transaction is to be terminable on demand, (iv) the Pricing Rate or Repurchase Price applicable to the Transaction, and (v) any additional terms or conditions of the Transaction not inconsistent with this Agreement. The Confirmation, together with this Agreement, shall constitute conclusive evidence of the terms agreed between Buyer and Seller with respect to the Transaction to which the Confirmation relates, unless with

respect to the Confirmation specific objection is made promptly after receipt thereof. In the event of any conflict between the terms of such Confirmation and this Agreement, this Agreement shall prevail.

(c) In the case of Transactions terminable upon demand, such demand shall be made by Buyer or Seller, no later than such time as is customary in accordance with market practice, by telephone or otherwise on or prior to the business day on which such termination will be effective. On the date specified in such demand, or on the date fixed for termination in the case of Transactions having a fixed term, termination of the Transaction will be effected by transfer to Seller or its agent of the Purchased Securities and any Income in respect thereof received by Buyer (and not previously credited or transferred to, or applied to the obligations of, Seller pursuant to Paragraph 5 hereof) against the transfer of the Repurchase Price to an account of Buyer.

## 4. Margin Maintenance

(a) If at any time the aggregate Market Value of all Purchased Securities subject to all Transactions in which a particular party hereto is acting as Buyer is less than the aggregate Buyer's Margin Amount for all such Transactions (a "Margin Deficit"), then Buyer may by notice to Seller require Seller in such Transactions, at Seller's option, to transfer to Buyer cash or additional Securities reasonably acceptable to Buyer ("Additional Purchased Securities"), so that the cash and aggregate Market Value of the Purchased Securities, including any such Additional Purchased Securities, will thereupon equal or exceed such aggregate Buyer's Margin Amount (decreased by the amount of any Margin Deficit as of such date arising from any Transactions in which such Buyer is acting as Seller).

(b) If at any time the aggregate Market Value of all Purchased Securities subject to all Transactions in which a particular party hereto is acting as Seller exceeds the aggregate Seller's Margin Amount for all such Transactions at such time (a "Margin Excess"), then Seller may by notice to Buyer require Buyer in such Transactions, at Buyer's option, to transfer cash or Purchased Securities to Seller, so that the aggregate Market Value of the Purchased Securities, after deduction of any such cash or any Purchased Securities so transferred, will thereupon not exceed such aggregate Seller's Margin Amount (increased by the amount of any Margin Excess as of such date arising from any Transactions in which such Seller is acting as Buyer).

(c) If any notice is given by Buyer or Seller under subparagraph (a) or (b) of this Paragraph at or before the Margin Notice Deadline on any business day, the party receiving such notice shall transfer cash or Additional Purchased Securities as provided in such subparagraph no later than the close of business in the relevant market on such day. If any such notice is given after the Margin Notice Deadline, the party receiving such notice shall transfer such cash or Securities no later than the close of business in the relevant market on the next business day following such notice.

(d) Any cash transferred pursuant to this Paragraph shall be attributed to such Transactions as shall be agreed upon by Buyer and Seller.

(e) Seller and Buyer may agree, with respect to any or all Transactions hereunder, that the respective rights of Buyer or Seller (or both) under subparagraphs (a) and (b) of this Paragraph may be exercised only where a Margin Deficit or Margin Excess, as the case may be, exceeds a specified dollar amount or a specified percentage of the Repurchase Prices for such Transactions (which amount or percentage shall be agreed to by Buyer and Seller prior to entering into any such Transactions).

(f) Seller and Buyer may agree, with respect to any or all Transactions hereunder, that the respective rights of Buyer and Seller under subparagraphs (a) and (b) of this Paragraph to require the elimination of a Margin Deficit or a Margin Excess, as the case may be, may be exercised whenever such a Margin Deficit or Margin Excess exists with respect to any single Transaction hereunder (calculated without regard to any other Transaction outstanding under this Agreement).

## 5. Income Payments

Seller shall be entitled to receive an amount equal to all Income paid or distributed on or in respect of the Securities that is not otherwise received by Seller, to the full extent it would be so entitled if the Securities had not been sold to Buyer. Buyer shall, as the parties may agree with respect to any Transaction (or, in the absence of any such agreement, as Buyer shall reasonably determine in its discretion), on the date such Income is paid or distributed either (i) transfer to or credit to the account of Seller such Income with respect to any Purchased Securities subject to such Transaction or (ii) with respect to Income paid in cash, apply the Income payment or payments to reduce the amount, if any, to be transferred to Buyer by Seller upon termination of such Transaction. Buyer shall not be obligated to take any action pursuant to the preceding sentence (A) to the extent that such action would result in the creation of a Margin Deficit, unless prior thereto or simultaneously therewith Seller transfers to Buyer cash or Additional Purchased Securities sufficient to eliminate such Margin Deficit, or (B) if an Event of Default with respect to Seller has occurred and is then continuing at the time such Income is paid or distributed.

## 6. Security Interest

Although the parties intend that all Transactions hereunder be sales and purchases and not loans, in the event any such Transactions are deemed to be loans, Seller shall be deemed to have pledged to Buyer as security for the performance by Seller of its obligations under each such Transaction, and shall be deemed to have granted to Buyer a security interest in, all of the Purchased Securities with respect to all Transactions hereunder and all Income thereon and other proceeds thereof.

## 7. Payment and Transfer

Unless otherwise mutually agreed, all transfers of funds hereunder shall be in immediately available funds. All Securities transferred by one party hereto to the other party (i) shall be in suitable form for transfer or shall be accompanied by duly executed instruments of transfer or assignment in blank and such other documentation as the party receiving possession may reasonably request, (ii) shall be transferred on the book-entry system of a Federal Reserve Bank, or (iii) shall be transferred by any other method mutually acceptable to Seller and Buyer.

## 8. Segregation of Purchased Securities

To the extent required by applicable law, all Purchased Securities in the possession of Seller shall be segregated from other securities in its possession and shall be identified as subject to this Agreement. Segregation may be accomplished by appropriate identification on the books and records of the holder, including a financial or securities intermediary or a clearing corporation. All of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date and, unless otherwise agreed by Buyer and Seller, nothing in this Agreement shall preclude Buyer from engaging in repurchase transactions with the Purchased Securities or otherwise selling, transferring, pledging or hypothecating the Purchased Securities, but no such transaction shall relieve Buyer of its obligations to transfer Purchased Securities to Seller pursuant to Paragraph 3, 4 or 11 hereof, or of Buyer's obligation to credit or pay Income to, or apply Income to the obligations of, Seller pursuant to Paragraph 5 hereof.

---

**Required Disclosure for Transactions in Which the Seller Retains Custody of the Purchased Securities**

Seller is not permitted to substitute other securities for those subject to this Agreement and therefore must keep Buyer's securities segregated at all times, unless in this Agreement Buyer grants Seller the right to substitute other securities. If Buyer grants the right to substitute, this means that Buyer's securities will likely be commingled with Seller's own securities during the trading day. Buyer is advised that, during any trading day that Buyer's securities are commingled with Seller's securities, they [will]* [may]** be subject to liens granted by Seller to [its clearing bank]* [third parties]** and may be used by Seller for deliveries on other securities transactions. Whenever the securities are commingled, Seller's ability to resegregate substitute securities for Buyer will be subject to Seller's ability to satisfy [the clearing]* [any]** lien or to obtain substitute securities.

* Language to be used under 17 C.F.R. ß403.4(e) if Seller is a government securities broker or dealer other than a financial institution.
** Language to be used under 17 C.F.R. ß403.5(d) if Seller is a financial institution.

---

## 9. Substitution

(a) Seller may, subject to agreement with and acceptance by Buyer, substitute other Securities for any Purchased Securities. Such substitution shall be made by transfer to Buyer of such other Securities and transfer to Seller of such Purchased Securities. After substitution, the substituted Securities shall be deemed to be Purchased Securities.

(b) In Transactions in which Seller retains custody of Purchased Securities, the parties expressly agree that Buyer shall be deemed, for purposes of subparagraph (a) of this Paragraph, to have agreed to and accepted in this Agreement substitution by Seller of other Securities for Purchased Securities; provided, however, that such other Securities shall have a Market Value at least equal to the Market Value of the Purchased Securities for which they are substituted.

## 10. Representations

Each of Buyer and Seller represents and warrants to the other that (i) it is duly authorized to execute and deliver this Agreement, to enter into Transactions contemplated hereunder and to perform its obligations hereunder and has taken all necessary action to authorize such execution, delivery and performance, (ii) it will engage in such Transactions as principal (or, if agreed in writing, in the form of an annex hereto or otherwise, in advance of any Transaction by the other party hereto, as agent for a disclosed principal), (iii) the person signing this Agreement on its behalf is duly authorized to do so on its behalf (or on behalf of any such disclosed principal), (iv) it has obtained all authorizations of any governmental body required in connection with this Agreement and the Transactions hereunder and such authorizations are in full force and effect and (v) the execution, delivery and performance of this Agreement and the Transactions hereunder will not violate any law, ordinance, charter, by-law or rule applicable to it or any agreement by which it is bound or by which any of its assets are affected. On the Purchase Date for any Transaction Buyer and Seller shall each be deemed to repeat all the foregoing representations made by it.

## 11. Events of Default

In the event that (i) Seller fails to transfer or Buyer fails to purchase Purchased Securities upon the applicable Purchase Date, (ii) Seller fails to repurchase or Buyer fails to transfer Purchased Securities upon the applicable Repurchase Date, (iii) Seller or Buyer fails to comply with Paragraph 4 hereof, (iv) Buyer fails, after one business day's notice, to comply with Paragraph 5 hereof, (v) an Act of Insolvency occurs with respect to Seller or Buyer, (vi) any representation made by Seller or Buyer shall have been incorrect or untrue in any material respect when made or repeated or deemed to have been made or repeated, or (vii) Seller or Buyer shall admit to the other its inability to, or its intention not to, perform any of its obligations hereunder (each an "Event of Default"):

(a) The nondefaulting party may, at its option (which option shall be deemed to have been exercised immediately upon the occurrence of an Act of Insolvency), declare an Event of Default to have occurred hereunder and, upon the exercise or deemed exercise of such option, the Repurchase Date for each Transaction hereunder shall, if it has not already occurred, be deemed immediately to occur (except that, in the event that the Purchase Date for any Transaction has not yet occurred as of the date of such exercise or deemed exercise, such Transaction shall be deemed immediately canceled). The nondefaulting party shall (except upon the occurrence of an Act of Insolvency) give notice to the defaulting party of the exercise of such option as promptly as practicable.

(b) In all Transactions in which the defaulting party is acting as Seller, if the nondefaulting party exercises or is deemed to have exercised the option referred to in subparagraph (a) of this Paragraph, (i) the defaulting party's obligations in such Transactions to repurchase all Purchased Securities, at the Repurchase Price therefor on the Repurchase Date determined in accordance with subparagraph (a) of this Paragraph, shall thereupon become immediately due and payable, (ii) all Income paid after such exercise or deemed exercise shall be retained by the nondefaulting party and applied to the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder, and (iii) the defaulting party shall immediately deliver to the nondefaulting party any Purchased Securities subject to such Transactions then in the defaulting party's possession or control.

(c) In all Transactions in which the defaulting party is acting as Buyer, upon tender by the nondefaulting party of payment of the aggregate Repurchase Prices for all such Transactions, all right, title and interest in and entitlement to all Purchased Securities subject to such Transactions shall be deemed transferred to the nondefaulting party, and the defaulting party shall deliver all such Purchased Securities to the nondefaulting party.

(d) If the nondefaulting party exercises or is deemed to have exercised the option referred to in subparagraph (a) of this Paragraph, the nondefaulting party, without prior notice to the defaulting party, may:

    (i) as to Transactions in which the defaulting party is acting as Seller, (A) immediately sell, in a recognized market (or otherwise in a commercially reasonable manner) at such price or prices as the nondefaulting party may reasonably deem satisfactory, any or all Purchased Securities subject to such Transactions and apply the proceeds thereof to the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder or (B) in its sole discretion elect, in lieu of selling all or a portion of such Purchased Securities, to give the defaulting party credit for such Purchased Securities in an amount equal to the price therefor on such date, obtained from a generally recognized source or the most recent closing bid quotation from such a source, against the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder; and

    (ii) as to Transactions in which the defaulting party is acting as Buyer, (A) immediately purchase, in a recognized market (or otherwise in a commercially reasonable manner) at such price or prices as the nondefaulting party may reasonably deem satisfactory, securities ("Replacement Securities") of the same class and amount as any Purchased Securities that are not delivered by the defaulting party to the nondefaulting party as required hereunder or (B) in its sole discretion elect, in lieu of purchasing Replacement Securities, to be deemed to have purchased Replacement Securities at the price therefor on such date, obtained from a generally recognized source or the most recent closing offer quotation from such a source.

Unless otherwise provided in Annex I, the parties acknowledge and agree that (1) the Securities subject to any Transaction hereunder are instruments traded in a recognized market, (2) in the absence of a generally recognized source for prices or bid or offer quotations for any Security, the nondefaulting party may establish the source therefor in its sole discretion and (3) all prices, bids and offers shall be determined together with accrued Income (except to the extent contrary to market practice with respect to the relevant Securities).

(e) As to Transactions in which the defaulting party is acting as Buyer, the defaulting party shall be liable to the nondefaulting party for any excess of the price paid (or deemed paid) by the nondefaulting party for Replacement Securities over the Repurchase Price for the Purchased Securities replaced thereby and for any amounts payable by the defaulting party under Paragraph 5 hereof or otherwise hereunder.

(f) For purposes of this Paragraph 11, the Repurchase Price for each Transaction hereunder in respect of which the defaulting party is acting as Buyer shall not increase above the

amount of such Repurchase Price for such Transaction determined as of the date of the exercise or deemed exercise by the nondefaulting party of the option referred to in sub-paragraph (a) of this Paragraph.

(g) The defaulting party shall be liable to the nondefaulting party for (i) the amount of all reasonable legal or other expenses incurred by the nondefaulting party in connection with or as a result of an Event of Default, (ii) damages in an amount equal to the cost (including all fees, expenses and commissions) of entering into replacement transactions and entering into or terminating hedge transactions in connection with or as a result of an Event of Default, and (iii) any other loss, damage, cost or expense directly arising or resulting from the occurrence of an Event of Default in respect of a Transaction.

(h) To the extent permitted by applicable law, the defaulting party shall be liable to the non-defaulting party for interest on any amounts owing by the defaulting party hereunder, from the date the defaulting party becomes liable for such amounts hereunder until such amounts are (i) paid in full by the defaulting party or (ii) satisfied in full by the exercise of the nondefaulting party's rights hereunder. Interest on any sum payable by the default-ing party to the nondefaulting party under this Paragraph 11(h) shall be at a rate equal to the greater of the Pricing Rate for the relevant Transaction or the Prime Rate.

(i) The nondefaulting party shall have, in addition to its rights hereunder, any rights other-wise available to it under any other agreement or applicable law.

## 12. Single Agreement

Buyer and Seller acknowledge that, and have entered hereinto and will enter into each Transaction hereunder in consideration of and in reliance upon the fact that, all Transactions hereunder constitute a single business and contractual relationship and have been made in consideration of each other. Accordingly, each of Buyer and Seller agrees (i) to perform all of its obligations in respect of each Transaction hereunder, and that a default in the perfor-mance of any such obligations shall constitute a default by it in respect of all Transactions hereunder, (ii) that each of them shall be entitled to set off claims and apply property held by them in respect of any Transaction against obligations owing to them in respect of any other Transactions hereunder and (iii) that payments, deliveries and other transfers made by either of them in respect of any Transaction shall be deemed to have been made in consideration of payments, deliveries and other transfers in respect of any other Transactions hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted.

## 13. Notices and Other Communications

Any and all notices, statements, demands or other communications hereunder may be given by a party to the other by mail, facsimile, telegraph, messenger or otherwise to the address specified in Annex II hereto, or so sent to such party at any other place specified in a notice of change of address hereafter received by the other. All notices, demands and requests hereun-der may be made orally, to be confirmed promptly in writing, or by other communication as specified in the preceding sentence.

## 14. Entire Agreement; Severability

This Agreement shall supersede any existing agreements between the parties containing general terms and conditions for repurchase transactions. Each provision and agreement herein shall be treated as separate and independent from any other provision or agreement herein and shall be enforceable notwithstanding the unenforceability of any such other provision or agreement.

## 15. Non-assignability; Termination

(a) The rights and obligations of the parties under this Agreement and under any Transaction shall not be assigned by either party without the prior written consent of the other party, and any such assignment without the prior written consent of the other party shall be null and void. Subject to the foregoing, this Agreement and any Transactions shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This Agreement may be terminated by either party upon giving written notice to the other, except that this Agreement shall, notwithstanding such notice, remain applicable to any Transactions then outstanding.

(b) Subparagraph (a) of this Paragraph 15 shall not preclude a party from assigning, charging or otherwise dealing with all or any part of its interest in any sum payable to it under Paragraph 11 hereof.

## 16. Governing Law

This Agreement shall be governed by the laws of the State of New York without giving effect to the conflict of law principles thereof.

## 17. No Waivers, Etc.

No express or implied waiver of any Event of Default by either party shall constitute a waiver of any other Event of Default and no exercise of any remedy hereunder by any party shall constitute a waiver of its right to exercise any other remedy hereunder. No modification or waiver of any provision of this Agreement and no consent by any party to a departure herefrom shall be effective unless and until such shall be in writing and duly executed by both of the parties hereto. Without limitation on any of the foregoing, the failure to give a notice pursuant to Paragraph 4(a) or 4(b) hereof will not constitute a waiver of any right to do so at a later date.

## 18. Use of Employee Plan Assets

(a) If assets of an employee benefit plan subject to any provision of the Employee Retirement Income Security Act of 1974 ("ERISA") are intended to be used by either party hereto (the "Plan Party") in a Transaction, the Plan Party shall so notify the other party prior to the Transaction. The Plan Party shall represent in writing to the other party that the Transaction does not constitute a prohibited transaction under ERISA or is otherwise exempt therefrom, and the other party may proceed in reliance thereon but shall not be required so to proceed.

(b) Subject to the last sentence of subparagraph (a) of this Paragraph, any such Transaction shall proceed only if Seller furnishes or has furnished to Buyer its most recent available audited statement of its financial condition and its most recent subsequent unaudited statement of its financial condition.

(c) By entering into a Transaction pursuant to this Paragraph, Seller shall be deemed (i) to represent to Buyer that since the date of Seller's latest such financial statements, there has been no material adverse change in Seller's financial condition which Seller has not disclosed to Buyer, and (ii) to agree to provide Buyer with future audited and unaudited statements of its financial condition as they are issued, so long as it is a Seller in any outstanding Transaction involving a Plan Party.

## 19. Intent

(a) The parties recognize that each Transaction is a "repurchase agreement" as that term is defined in Section 101 of Title 11 of the United States Code, as amended (except insofar as the type of Securities subject to such Transaction or the term of such Transaction would render such definition inapplicable), and a "securities contract" as that term is defined in Section 741 of Title 11 of the United States Code, as amended (except insofar as the type of assets subject to such Transaction would render such definition inapplicable).

(b) It is understood that either party's right to liquidate Securities delivered to it in connection with Transactions hereunder or to exercise any other remedies pursuant to Paragraph 11 hereof is a contractual right to liquidate such Transaction as described in Sections 555 and 559 of Title 11 of the United States Code, as amended.

(c) The parties agree and acknowledge that if a party hereto is an "insured depository institution," as such term is defined in the Federal Deposit Insurance Act, as amended ("FDIA"), then each Transaction hereunder is a "qualified financial contract," as that term is defined in FDIA and any rules, orders or policy statements thereunder (except insofar as the type of assets subject to such Transaction would render such definition inapplicable).

(d) It is understood that this Agreement constitutes a "netting contract" as defined in and subject to Title IV of the Federal Deposit Insurance Corporation Improvement Act of 1991 ("FDICIA") and each payment entitlement and payment obligation under any Transaction hereunder shall constitute a "covered contractual payment entitlement" or "covered contractual payment obligation", respectively, as defined in and subject to FDICIA (except insofar as one or both of the parties is not a "financial institution" as that term is defined in FDICIA).

## 20. Disclosure Relating to Certain Federal Protections

The parties acknowledge that they have been advised that:

(a) in the case of Transactions in which one of the parties is a broker or dealer registered with the Securities and Exchange Commission ("SEC") under Section 15 of the Securities Exchange Act of 1934 ("1934 Act"), the Securities Investor Protection Corporation has

taken the position that the provisions of the Securities Investor Protection Act of 1970 ("SIPA") do not protect the other party with respect to any Transaction hereunder;

(b) in the case of Transactions in which one of the parties is a government securities broker or a government securities dealer registered with the SEC under Section 15C of the 1934 Act, SIPA will not provide protection to the other party with respect to any Transaction hereunder; and

(c) in the case of Transactions in which one of the parties is a financial institution, funds held by the financial institution pursuant to a Transaction hereunder are not a deposit and therefore are not insured by the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund, as applicable.

**Lehman Brothers Inc.**
**Lehman Commercial Paper Inc.**

By: _____

Name: Robert E. Guglielmo

Title: Senior Vice President

Date: _____

**Highland Credit Strategies Master Fund, L.P.**

By: Highland General Partner LP,
    its general partner

By: Highland GP Holdings LLC,
    its general partner

By: Highland Capital Management, L.P.,
    its general partner

By: Strand Advisors, Inc.,
    its general partner

By: _____

Name: _____

Title: Ken McGovern, Treasurer
Strand Advisors, Inc., General Partner of
Highland Capital Management, L.P.

Date: _____

**ANNEX I**
**Supplemental Terms and Conditions**

This Annex forms a part of the Master Repurchase Agreement dated as of  October 1, 2007
(the "Agreement") between **Lehman Brothers Inc., Lehman Commercial Paper Inc.,** and
**Highland Credit Strategies Master Fund, L.P.**

Capitalized terms used but not defined in this Annex I shall have the meanings ascribed to them in the Agreement.

1.  In addition to this Annex I and Annex II the following Annexes (and any schedules or exhibits attached thereto) shall be deemed executed by the parties hereto and shall also form a part of the Agreement:

    X None
    --Annex IV Party as Agent
    --Annex VI Buy/Sell Back Transactions
    --Annex VII Transactions Involving Registered Investment Companies
    --Annex VIII Transactions in Equity Securities
    --Annex IX Transactions Involving Certain Japanese Financial Institutions

2.  With respect to individual repurchase transactions, this Agreement shall only apply to the Lehman Brothers entity (i.e. Lehman Brothers Inc., Lehman Commercial Paper Inc.) printed in the confirmation (as described in Section 3(b) herein) provided to the counterparty of the Lehman Brothers entity.

3.  Definitions.  For purposes of the Agreement, the following terms shall have the following meanings:

    (a) "Margin Notice Deadline", 10:00 am New York City time.

    (b) "Business Day" or "business day", with respect to any Transaction hereunder, a day on which regular trading may occur in the principal market for the Purchased Securities subject to such Transaction.  In no event shall a Saturday or Sunday be considered a business day.

4.  Purchase Price Maintenance.

    (a) Unless otherwise expressly agreed by the parties hereto, the parties agree that in any Transaction hereunder whose term extends over an Income payment date for the Securities subject to such Transaction, Buyer shall on the date such Income is paid transfer to or credit to the account of Seller an amount equal to such Income payment or payments pursuant to Paragraph 5(i) and shall not apply the Income payment or payments to reduce the amount to be transferred to Buyer or Seller upon termination of the Transaction pursuant to Paragraph 5(ii) of the Agreement.

    (b) Unless otherwise expressly agreed by the parties hereto, notwithstanding the definition of Purchase Price in Paragraph 2 of the Agreement and the provisions of Paragraph 4 of the Agreement, the parties agree (i) that the Purchase Price will not be increased or decreased by the amount of any cash transferred by one party to the other pursuant to Paragraph 4 of the Agreement and (ii) that transfer of cash shall be treated as if it constituted a transfer of Securities (with a Market Value equal to the U.S. dollar amount of such cash) pursuant to Paragraph 4(a) or (b), as the case may be (including for purposes of the definition of "Additional Purchased Securities").

5.  Submission to Jurisdiction; Waiver of Immunity; Waiver of Jury Trial.

    (a) Each party irrevocably and unconditionally (i) submits to the non-exclusive jurisdiction of any United States Federal or New York State court sitting in Manhattan, and any appellate court from any such court, solely for the purpose of any suit, action or proceeding brought to enforce its obligations under the Agreement or relating in any way to the Agreement or any Transaction under the Agreement and (ii) waives, to the fullest extent it may effectively do so, any defense of an inconvenient forum to the maintenance of such action or proceeding in any such court and any right of jurisdiction on account of its place of residence or domicile.

(b) To the extent that either party has or hereafter may acquire any immunity (sovereign or otherwise), such party irrevocably waives, with respect to itself and its revenues and assets, from (i) any legal action, suit or proceeding (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not raise, claim or cause to be pleaded any such immunity at or in respect of any such action or proceeding brought to enforce its obligations under the Agreement or relating in any way to the Agreement or any Transaction under the Agreement.

(c) Insofar as permitted by law, each party hereto hereby irrevocably waives any right that it may have to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or the Transactions contemplated hereby.

6. <u>Right of Set-off</u>

(a) In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the declaration of an Event of Default, the non-defaulting party shall have the right (but not the obligation), without prior notice to the defaulting party, to set-off or apply any obligation of the defaulting party owed to the non-defaulting party or to any affiliate of the non-defaulting party (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation) against any obligation of the non-defaulting party or any affiliate thereof owed to the defaulting party (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation).

(b) For purposes of cross-currency set-off, the non-defaulting party may convert either obligation at the applicable market exchange rate selected by the non-defaulting party on the relevant date.

(c) If the amount of an obligation has not been ascertained, the non-defaulting party may in good faith estimate that amount and set-off in respect of the estimate, subject to a later adjustment when the amount of the obligation has been finally determined.

## Annex II
## Names and Addresses for Communications Between Parties

### LEHMAN BROTHERS
745 Seventh Avenue, 19th Floor
New York, New York 10019

Attn.: Robert Guglielmo, Senior Vice President
Transaction Management
(212) 526-7121  phone
(212) 526-7672 fax

**Legal/Documentation Information:**

Name: _____

Address: _____

_____

_____

Attn: _____

Tel #: _____

Fax #: _____

E-mail: _____

**Business/Trading Information:**

| | |
|---|---|
| Name: | Highland Credit Strategies Master Fund, LP |
| Primary Contact: | Britt Brown |
| Address: | 13455 Noel Rd. Suite 800 Dallas, TX 75240 |
| Tel #: | 972-628-4100 |
| Email Address: | bbrown@hcmlp.com |
| Secondary Contact: | Andrew Lenge |
| Address: | 13455 Noel Rd. Suite 800 Dallas, TX 75240 |
| Tel #: | 972-628-4100 |
| Email Address: | alenge@hcmlp.com |

# EXHIBIT "B"

## <u>NOTICE OF EARLY TERMINATION OF MASTER REPURCHASE AGREEMENT</u>

To:        Lehman Brothers Inc. and Lehman Commercial Paper Inc. (**"Buyer"**)
           c/o Lehman Brothers
           745 Seventh Avenue, 19th Floor
           New York, New York 10019
           Attention:        Robert Guglielmo, Senior Vice President
                             Transaction Management

Phone:     212-526-7121
Facsimile: 212-526-7672

From:      Highland Credit Strategies Master Fund, L.P. (**"Seller"**)
           c/o Highland Capital Management, L.P.
           13455 Noel Road
           Two Galleria Tower, Suite 800
           Dallas, Texas 75240

Phone:     972-628-4100
Facsimile: 972-628-4147

Date:      September 26, 2008

Re:        BMA Master Repurchase Agreement dated as of October 1, 2007 and each of the
           Annexes thereto, between Buyer and Seller and all Confirmations and
           Transactions thereunder, in each case, as such documents are amended and
           supplemented from time to time (collectively, the **"Agreement"**)

---

Pursuant to Paragraph 11(a) of the Agreement, Seller hereby declares that an Event of Default under Paragraphs 11(ii) and (vii) of the Agreement has occurred in respect of Buyer and the Repurchase Date in respect of all outstanding Transactions shall be deemed to occur immediately as provided in Paragraph 11 of the Agreement. All right, title and interest in and entitlement to all Purchased Securities that are subject of an outstanding Transaction shall be deemed transferred to Seller and Buyer shall immediately deliver to Seller such Purchased Securities.

Upon receipt by Seller of confirmation that all Purchased Securities have been returned to Seller and all of Buyer's right, title and interest in and entitlement to such Purchased Securities has been transferred to Seller, Seller will tender payment of the aggregate Repurchase Price for the relevant Transactions net of any amount specified in the Agreement to be set off against such Repurchase Price. Such set-off amounts may include amounts described in the paragraph below as well as any other amounts that Seller is entitled by applicable law, the Agreement or otherwise to set-off against amounts due from Seller to Buyer including to account for failure of Buyer to transfer Purchased Securities.

LAS99 1700927-1.079765.0011

Seller hereby reserves all rights and remedies available to it under the Agreement and applicable law. Pursuant to Paragraph 11(g) of the Agreement, Buyer shall further be liable to Seller for (i) the amount of all reasonable legal or other expenses incurred by Seller in connection with or as a result of the above specified Event of Default, (ii) damages in an amount equal to the cost (including all fees, expenses and commissions) of entering into replacement transactions and entering into or terminating hedge transactions in connection with or as a result of the above specified Event of Default, and (iii) any other loss, damage, cost or expense directly arising or resulting from the occurrence of the above specified Event of Default. In addition Buyer shall be liable for interest on all amounts due to Seller under the Agreement until paid in full at the Post-Default Rate.

We will be sending over separately a statement calculating amounts payable under Paragraph 11 of the Agreement and otherwise.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed thereto in the Agreement.

HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.

By: Highland General Partner, L.P., its general partner
By: Highland GP Holdings, LLC, its general partner
By: Highland Capital Management, L.P., its sole member
By: Strand Advisors, Inc., its General Partner

By: _____
Name: Mark Okada
Title: Executive Vice President

# EXHIBIT "C"

## CALCULATION STATEMENT UNDER
## MASTER REPURCHASE AGREEMENT

| | |
|---|---|
| To: | Lehman Brothers Inc. and Lehman Commercial Paper Inc. ("**Party A**")<br>c/o Lehman Brothers<br>745 Seventh Avenue, 19th Floor<br>New York, New York 10019<br>Attention:    Robert Guglielmo, Senior Vice President<br>                      Transaction Management |
| Phone: | 212-526-7121 |
| Facsimile: | 212-522-0129 |
| | |
| From: | Highland Credit Strategies Master Fund, L.P. ("**Party B**")<br>c/o Highland Capital Management, L.P.<br>13455 Noel Road<br>Two Galleria Tower, Suite 800<br>Dallas, TX 75240 |
| Phone: | (972) 628-4100 |
| Facsimile: | (972) 628-4147 |
| | |
| Date: | October 10, 2008 |
| | |
| Re: | BMA Master Repurchase Agreement dated as of October 1, 2007 and each of the Annexes thereto, between Party A and Party B and all Confirmations and Transactions thereunder, in each case, as such documents are amended and supplemented from time to time (collectively, the "**Agreement**") |

---

Pursuant to Paragraph 11 of the Agreement, Party B hereby provides to Party A this Calculation Statement setting forth amounts due and payable as a result of the early designation of the Repurchase Date in respect of all Transactions under the Agreement pursuant to the Notice of Termination provided by Party B to Party A on September 26, 2008 following an Event of Default in relation to Party A.

Party B hereby demands payment from Party A in the amount of $327,021.70 as calculated pursuant to Annex A hereto (the "Payment Amount"). The Payment Amount is due and payable immediately upon receipt of this calculation statement by Party A pursuant to Paragraph 11 of the Agreement, and shall be paid by Party A in immediately available funds to the following account:

Payment to:

Payment to:
Highland Credit Strategies Master Fund, L.P.
The Bank of New York
ABA #: 021 000 018

For credit to GLA: 211551
FFC Account#: 466107
Attention: Marisela Rodriguez, 713-483-6604
Reference: (Borrower Name, Type of Payment/description)
Email: mariselarodriguez@bankofny.com

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed thereto in the Agreement.

HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.

By: Highland General Partner L.P., its general partner
By: Highland GP Holdings LLC, its general partner
By: Highland Capital Management, L.P., its sole member
By: Strand Advisors, Inc., its General Partner

By: _____
Name: Patrick Boyce
Title: Treasurer

## Annex A to Calculation Statement

**Replacement Securities**

$1,905,667.97      Price determined by Party B of Replacement Securities
                   pursuant to Paragraph 11(d)(ii) including for any Additional
                   Purchased Securities by way of margin

**Excess**

$135,277.44       Amount by which price paid (or deemed paid) for Replacement
                  Securities as set forth above exceeds the Repurchase Price plus
                  any payments then due and unpaid by Party A under Paragraph
                  5 or otherwise under the Agreement to Party B in each case
                  pursuant to Paragraph 11(e)

**Expenses**

$3,500.00         Amounts incurred by Party B and payable by Party A pursuant
                  to Paragraph 11(g)(i) of the Agreement by way of legal and
                  other expenses

**Costs of Replacement Transactions**

$0                Amounts incurred by Party B and payable by Party A pursuant
                  to Paragraph 11(g)(ii) of the Agreement for damages in an
                  amount equal to the cost (including all fees, expenses and
                  commissions) of entering into replacement transactions and
                  entering into or terminating hedge transactions

**Other Losses**

$187,618.67       Amounts incurred by Party B and payable by Party A pursuant
                  to Paragraph 11(g)(iii) of the Agreement for any other losses,
                  damages, costs or expenses directly arising or resulting from
                  the occurrence of the Event of Default in respect of Party A

**Interest**

$625.59            Amounts in respect of interest owing to Party B on all amounts
                   due hereunder from the date of the Event of Default until such
                   amounts are paid in full at the higher of the Pricing Rate for the
                   Relevant Transaction or the Prime Rate pursuant to Paragraph
                   11(h) of the Agreement

**Set-off**

$0                 Any other obligation of Party B to Party A

**Total Net Amount Now Due to Party B    $327,021.70**
                   Subject to accrual interest at Default Rate from date due to date paid in full

*Calculations details are attached hereto on the following pages.*

**Replacement Securities**                          $ 1,905,667.97

**Excess**
Market Value of Replacement Securities                  1,905,667.97
Repo Loan Amount                                        1,766,000.00
All in Term Financing                                        (4,390.53)
Total                                               $      135,277.44

**Expenses**
Brian Albert Legal                                  $        3,500.00

**Other Losses**
Trade Break Fee Guggenheim                                  53,510.61
Principal and Interest Cash Flows not Received             134,108.06
Total                                               $      187,618.67

**Interest**                                        $          625.59

Total Claim                                         $      327,021.70

段



**Highland Credit Strategies Master Fund, L.P.**

| | Cusip | Security | Par | Lehman Security Bid Price | Lehman Security Mark to Market Price (9/12/08) | Highland Security Price | Security Market Value | All In Term Financing Value | Repo Loan Amount | Value |
|---|---|---|---|---|---|---|---|---|---|---|
| 52520MEB5 | | LWT 05-3 2A3 | 3,650.000 | 61.5400 | 61.4529 | 62.0000 | 1,902,657.97 | (4,390.53) | 1,780,000.00 | 135,377.44 |
| | | | | | | | | | | $ 135,377.44 |

## All in Term Financing Calculation

| Portfolio_Name | Issuer_Name | Asset_Name | Financing | Fisc. Mark | Face Amount | Loan Amount | Begin Date | Term Date | Accrued Interest |
|---|---|---|---|---|---|---|---|---|---|
| Highland Credit Strategies Fund - Repo Lehman | LMT 2005-3 | 5.50% - 07/2035 - 2A3 - 52520ME3E5 | 3.10% | 83.04 | 3,650,000.00 | 1,795,000.00 | 6/26/2008 | 9/26/2008  $ | 4,390.53 |

## Jason Post

| | |
|---|---|
| **From:** | Brian Albert [brian.albert@gmail.com] |
| **Sent:** | Wednesday, October 01, 2008 1:35 PM |
| **To:** | Jason Post |
| **Subject:** | Re: Legal fee estimate for Lehman MRA work |

I would estimate $3500 for legal fees for the Lehman MRA as well.

Thanks

Brian

On Tue, Sep 30, 2008 at 2:14 PM, Jason Post <JPost@hcmlp.com> wrote:

Would you have an estimate for this?  Thanks.

---

Highland Capital Management is growing. Check out Careers at www.hcmlp.com.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

--
Brian G. Albert, Esq.
Phone:  323-384-3631
brian.albert@gmail.com

| | Principal and Interest Cash Flows Not Received | | |
|---|---|---|---|
| Date | Principal Claim Amount | Interest Claim Amount | Principal and Interest Claim Total |
| 7/25/2008 | $ 17,466.69 | $ 13,094.28 | $ 30,560.97 |
| 8/25/2008 | 24,267.31 | 13,014.23 | 37,281.54 |
| 9/25/2008 | 53,362.55 | 12,903.00 | 66,265.55 |
| Total | $ 95,096.55 | $ 39,011.51 | $ 134,108.06 |

**Jason Post**

| | |
|---|---|
| **From:** | Nik Tesla |
| **Sent:** | Wednesday, October 01, 2008 4:26 PM |
| **To:** | 'Childs, Nick' |
| **Cc:** | Cash Reconciliation |
| **Subject:** | RE: Missing Coupon Payments (a/c 1891160 | Crusader) |

Nick,

In June 2008 we worked together to get Highland accounts paid for all outstanding repo P&I payments. After truing up the outstanding payments it was our understanding that Lehman was caught up/fully aware of our position and would from then on make payments accordingly.

It has come to our attention that Lehman has failed to pay the below coupon payments to Highland Credit Strategies Master Fund, L.P. for July, August and September.

| Bank | Contract | Issuer Name | Asset Name | Cash |
|---|---|---|---|---|
| LM | 7/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 13,094.2 |
| LM | 7/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 17,466.6 |
| LM | 8/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 13,014.2 |
| LM | 8/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 24,267.3 |
| LM | 9/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 12,903.0 |
| LM | 9/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 53,362.5 |
| | | | **Outstanding** | 134,108.0 |

Please let us know what the resolution will be for these outstanding payments, thanks-

**Nik Tesla**
**Highland Capital Management, L.P.**
*P: 972.419.2586  -  ntesla@hcmlp.com*

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Monday, June 30, 2008 2:05 PM
**To:** Andrew Lenge
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

The P&I was tracked in DTC. Please contact DTC 901 BoNY for the cash.

**From:** Andrew Lenge [mailto:ALenge@hcmlp.com]
**Sent:** Monday, June 30, 2008 10:37 AM
**To:** Childs, Nick
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

Crusader

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Monday, June 30, 2008 10:37 AM
**To:** Andrew Lenge

1

**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

What account is this for?

---

**From:** Andrew Lenge [mailto:ALenge@hcmlp.com]
**Sent:** Monday, June 30, 2008 9:58 AM
**To:** Childs, Nick
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

Nick –

It appears we have only one payment still outstanding (below). Can you please have your P & I group look into and send funds today?

**07401DBC4 Jan. 71,250**

---

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Wednesday, June 25, 2008 3:41 PM
**To:** Andrew Lenge
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

Can you confirm wire instrx for Crusader Fund for today's pmt?

**Total Payable = 258,222.08**

---

**From:** Andrew Lenge [mailto:ALenge@hcmlp.com]
**Sent:** Wednesday, June 25, 2008 10:35 AM
**To:** Childs, Nick
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

Nick – our custodian is tracking down those two payments. While I was talking to them they informed me that the below payments haven't been received. Will you please have your P and I group initiate these wires today?

From below:
These are the outstanding items for a/c 1891150.
cusip 52520MEB5 position 3,650,000 4 months.
12/25/07 due $67796.02
1/25/2008 due 67551.44
3/25/2008 due 22428.48
4/25/2008 due 67127.89

These are the outstanding items for a/c 1097810.00
cusip 52108RAG7 pay date 1/15/2008 pos 40,000,000 amount due 203356.59

---

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Wednesday, June 25, 2008 7:33 AM
**To:** Andrew Lenge
**Subject:** FW: Missing Coupon Payments (a/c 1891160 | Crusader)

We show two payments held for the Crusader fund:

55312TAG8  231,500.00
07401DAH4  26,722.08

Total Payable = 258,222.08

Regarding the CUSIPS you sent, we show no pmts recvd payable:

59025KAG7 Jan. 125,477.71
61754KAG0 Jan 105,101.85

Thanks,

Nick

---

**From:** P&I
**Sent:** Wednesday, June 25, 2008 6:58 AM
**To:** Childs, Nick
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

please see below.

---

**From:** Childs, Nick
**Sent:** Wednesday, June 25, 2008 7:50 AM
**To:** P&I
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

Can you see pmts made on these CUSIPS for Jan pmt dt?

07401DBC4 Jan. 71,250  We show $26,722.08 on a piece of 5,000,000
59025KAG7 Jan. 125,477.71  We do nto show any activity
61754KAG0 Jan 105,101.85  We do nto show any activity

---

**From:** P&I
**Sent:** Wednesday, June 25, 2008 6:45 AM
**To:** Childs, Nick; P&I
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

We have two remaining items.

---

**From:** Childs, Nick
**Sent:** Tuesday, June 24, 2008 5:59 PM

**To:** Childs, Nick; P&I
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

Correction on the account number... do you see these pmts in account 1891160?

**From:** Childs, Nick
**Sent:** Tuesday, June 24, 2008 6:31 AM
**To:** P&I
**Cc:** 'Andrew Lenge '; chic-ops
**Subject:** FW: Missing Coupon Payments (a/c 1891150)

Please advise on Highland Capital's email below.

Nick

**From:** Andrew Lenge [mailto:ALenge@hcmlp.com]
**Sent:** Monday, June 23, 2008 5:38 PM
**To:** Childs, Nick
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891150)

Nick –

We agree to the below but show (3) still missing.  Can you please have your P & I group send all these payments?

07401DBC4 Jan. 71,250
59025KAG7 Jan. 125,477.71
61754KAG0 Jan 105,101.85

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Monday, June 09, 2008 2:32 PM
**To:** Andrew Lenge
**Subject:** FW: Missing Coupon Payments (a/c 1891150)

See below for outstanding items for each of the three accounts...

**From:** P&I
**Sent:** Monday, June 09, 2008 2:14 PM
**To:** Childs, Nick; P&I
**Subject:** RE: Missing Coupon Payments (a/c 1891150)

These are the outstanding items for a/c 1891160.
cusip 07401DAH4 bal. 26,722.08 on 5,000,000 bonds pay ate 1/11/2008
cusip 55312TAG8 bal. 231,500 on 50,000,000 bonds pay date 1/12/2008

These are the outstanding items for a/c 1891150.
cusip 52520MEB5 position 3,650,000 4 months.
12/25/07 due $67796.02
1/25/2008 due 67551.44
3/25/2008 due 22428.48
4/25/2008 due 67127.89

These are the outstanding items for a/c 1097810.00

4

cusip 52108RAG7 pay date 1/15/2008 pos 40,000,000 amount due 203356.59

Please provide payment instructions for each account and let us know if we are sending out separate wires or if we can bulk them. If we bilk the wire then please provide breakdown to client.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

Highland Capital Management is growing. Check out Careers at www.hcmlp.com.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is

strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## Highland Credit Strategies Master Fund, L.P.

| Date | | Claim Interest Amount | Rate | | Daily Interest |
|------|---|------|------|---|------|
| 9/26/2008 | $ | 326,396.11 | 5.0000% | $ | 45.33 |
| 9/27/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 9/28/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 9/29/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 9/30/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/1/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/2/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/3/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/4/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/5/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/6/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/7/2008 | | 326,396.11 | 5.0000% | | 45.33 |
| 10/8/2008 | | 326,396.11 | 4.5000% | | 40.80 |
| 10/9/2008 | | 326,396.11 | 4.5000% | | 40.80 |
| 10/10/2008 | | 326,396.11 | 4.5000% | | 40.80 |
| Total | | | | $ | 625.59 |

GRAB

# CLOSE/MID/YIELD

PRIME  Prime Rate  USA

Index **HP**

Page 1 / 3

| Range [▓▓▓▓] | to [▓▓▓▓] | | Period ☐ Daily | | | | |
|---|---|---|---|---|---|---|---|

|  | DATE | YIELD |  | DATE | YIELD |  | DATE | YIELD |
|---|---|---|---|---|---|---|---|---|
| F | 10/10 L | 4.500 | F | 9/19 | 5.000 | F | 8/29 | 5.000 |
| T | 10/ 9 | 4.500 | T | 9/18 | 5.000 | T | 8/28 | 5.000 |
| W | 10/ 8 | 4.500 | W | 9/17 | 5.000 | W | 8/27 | 5.000 |
| T | 10/ 7 | 5.000 | T | 9/16 | 5.000 | T | 8/26 | 5.000 |
| M | 10/ 6 | 5.000 | M | 9/15 | 5.000 | M | 8/25 | 5.000 |
| F | 10/ 3 | 5.000 | F | 9/12 | 5.000 | F | 8/22 | 5.000 |
| T | 10/ 2 | 5.000 | T | 9/11 | 5.000 | T | 8/21 | 5.000 |
| W | 10/ 1 | 5.000 | W | 9/10 | 5.000 | W | 8/20 | 5.000 |
| T | 9/30 | 5.000 | T | 9/ 9 | 5.000 | T | 8/19 | 5.000 |
| M | 9/29 | 5.000 | M | 9/ 8 | 5.000 | M | 8/18 | 5.000 |
| F | 9/26 | 5.000 | F | 9/ 5 | 5.000 | F | 8/15 | 5.000 |
| T | 9/25 | 5.000 | T | 9/ 4 | 5.000 | T | 8/14 | 5.000 |
| W | 9/24 | 5.000 | W | 9/ 3 | 5.000 | W | 8/13 | 5.000 |
| T | 9/23 | 5.000 | T | 9/ 2 | 5.000 | T | 8/12 | 5.000 |
| M | 9/22 | 5.000 | M | 9/ 1 | 5.000 | M | 8/11 | 5.000 |

4.500 %
HI 5.250    ON  4/29/08
AVE 5.016
LOW 4.500   ON 10/10/08

## Jason Post

| | |
|---|---|
| **From:** | Scott Crowell |
| **Sent:** | Wednesday, September 24, 2008 1:46 PM |
| **To:** | Jason Post |
| **Subject:** | FW: FIN - MTM Statement for LBI - HIGHLAND CAPITAL MGMT LP A/C HIGHLAND CREDIT STRATEGIES |
| **Attachments:** | MTM_Statement_25158705_1.pdf |

$0.00 margin posted as of 9/12/2008

-----Original Message-----
From: Morton Wendell
Sent: Wednesday, September 24, 2008 1:44 PM
To: Scott Crowell
Subject: FW: FIN - MTM Statement for LBI - HIGHLAND CAPITAL MGMT LP A/C HIGHLAND CREDIT
STRATEGIES


Morton Wendell
Highland Capital Management, L.P.
mwendell@hcmlp.com | 972-419-2542 tel | 214-540-4797 FAX
13455 Noel Road, Suite 800 | Dallas, TX 75240

-----Original Message-----
From: cvg@lehman.com [mailto:cvg@lehman.com]
Sent: Friday, September 12, 2008 7:14 AM
To: Morton Wendell
Cc: cvg@lehman.com
Subject: FIN - MTM Statement for LBI - HIGHLAND CAPITAL MGMT LP A/C HIGHLAND CREDIT
STRATEGIES


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not
represent that this information is complete or accurate and it should not be relied upon as
such.  All information is subject to change without notice.

# LEHMAN BROTHERS   ||   Fixed Income Financing MTM Statement

| FROM: | LEHMAN BROTHERS INC |
|---|---|
| | TRACY AGARD |
| PHONE: | 212-526-2170 |
| FAX: | 917-522-0252 |
| EMAIL: | cwg@lehman.com |

| TO: | HIGHLAND CAPITAL MGMT LP/X/CHIGH/AND/CREDIT |
|---|---|
| STRATEGIES: | |
| ACC #: | 1BB1150 |
| CP NAME: | HIGHLAND CREDIT STRATEGIES MASTER FUND LP |
| PHONE: | |
| FAX: | |
| EMAIL: | jhweidell@hcmlp.com |

| DATE: | 12-Sep-2008 |
|---|---|
| COB VALUATION DATE: | 11-Sep-2008 |
| REPORTING CCY: | USD |

*POSITIVE NUMBERS = LEHMAN RECEIVABLE*
*NEGATIVE NUMBERS = LEHMAN PAYABLE*

| Summary | |
|---|---|
| Economic Exposure | (529,823) |
| Margin/Haircut Amount | 529,800 |
| Margin Exposure | 0 |
| Cash Free Collateral | 0 |
| Security Free Collateral | 0 |
| Portfolio Margin Requirement | 0 |

| SINC/USP Deal ID | Trd D/tp Account | Coupon | Description | Original Face | Factor | Mkt Price | On Date | Off Date | | Cur(ren) | Loan | Mkt Value | Margin Amt | Net Exposure USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 52520MEE5 | 1/25/38 | 5.50 | LMT 2005-3 2A3 | 3,650,000 | 0.771300 | 61.4529 | 8/26/08 | 9/25/08 | 3,098 | 2,271 | (4,731) | 1,766,000.00 | (2,293,082) | 130,000 | 529,800 | 277 |

*F* Denotes Free Collateral Fail

## Disclaimer

The above estimated value[s] are as of the date indicated and do not represent actual bids or offers by Lehman Brothers. There can be no assurance that actual trades could be completed at such value[s]. Unless otherwise specified, the above valuations represent mid-market valuations. Mid-market values attempt to approximate the current economic value of a given position using prices and rates at the average of the bid and offer for the respective underlying asset(s) or reference rate(s). The bid-side is the estimated amount a party would pay to purchase the asset.

Discussions of the trade values in general, and indicative or firm price quotations and actual trade prices in particular, may vary significantly from these written estimated values as a result of various factors, which may include (but are not limited to) prevailing credit spreads, market liquidity, position size, transaction and financing costs, hedging costs and risks and use of capital and profit. These estimates may not be representative of any theoretical or actual internal valuations employed by us for our own purposes, may vary during the course of any particular day and may vary significantly from the estimates or quotations that would be given by another dealer. You should consult with your own accounting or other advisors as to the adequacy of this information for your purposes.

As a condition for providing these estimates, you agree that Lehman Brothers makes no representation and shall have no liability in any way arising therefrom to you or any other entity for any loss or damage, direct or indirect, arising from the use of this information.

**Jason Post**

| | |
|---|---|
| **From:** | Scott Crowell |
| **Sent:** | Wednesday, September 24, 2008 1:36 PM |
| **To:** | Jason Post |
| **Subject:** | FW: LMT 2005-3 2A3 |

Last roll details

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]
Sent: Thursday, August 28, 2008 12:58 PM
To: Scott Crowell; Andrew Lenge; Brad Voss
Cc: Fixed Income Group; Morton Wendell
Subject: RE: LMT 2005-3 2A3

Thanks Scott.

-----Original Message-----
From: Scott Crowell [mailto:SCrowell@hcmlp.com]
Sent: Thursday, August 28, 2008 12:57 PM
To: Childs, Nick; Andrew Lenge; Brad Voss
Cc: 'Fixed Income Group'; Morton Wendell
Subject: RE: LMT 2005-3 2A3

Nick,

I agree to today's p/o amount.  Funds will be sent for value 8/28/2008.

Thanks,

Scott

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]
Sent: Thursday, August 28, 2008 12:51 PM
To: Andrew Lenge; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3


See attached.  I show a net payment due Lehman of 201,928.98.  Please confirm.

Thanks,

Nick

-----Original Message-----
From: Andrew Lenge [mailto:ALenge@hcmlp.com]
Sent: Thursday, August 28, 2008 10:42 AM
To: Childs, Nick; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3

Please roll

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]

1

Sent: Thursday, August 28, 2008 6:50 AM
To: Andrew Lenge; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3

Due to the $ px of the bond having fallen.

-----Original Message-----
From: Andrew Lenge [mailto:ALenge@hcmlp.com]
Sent: Thursday, August 28, 2008 6:43 AM
To: Childs, Nick; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3

What is the reason for the inc?


-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]
Sent: Thursday, August 28, 2008 6:42 AM
To: Andrew Lenge; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3

The h/c has been increased to 30%.  We will use $ 81.54.  Let me know.

Thanks,

Nick

-----Original Message-----
From: Andrew Lenge [mailto:ALenge@hcmlp.com]
Sent: Thursday, August 28, 2008 6:22 AM
To: Childs, Nick; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3

Can you please provide the px for us to approve.

Also, I do not agree with the h/c.  Should be 25%

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]
Sent: Wednesday, August 27, 2008 12:48 PM
To: Andrew Lenge; Brad Voss; Scott Crowell
Subject: LMT 2005-3 2A3


You have the following repo for tomorrow... Let me know what you want to do.

   3.65MM  LMT 2005-3 2A3 (52520MEB5)

Can roll for 1 mo @ L+60  30% HC.

Thanks,

Nick Childs
Lehman Brothers
190 South La Salle, 26th Floor
Chicago, IL  60603

2

P 312-609-7332
F 212-419-2290
nchilds@lehman.com

This document is for information purposes only and it should not be regarded as an offer to
sell or as a solicitation of an offer to buy the securities or other instruments mentioned in
it.  No part of this document may be reproduced in any manner without the written permission
of Lehman Brothers Inc.  We do not represent that this information is accurate or complete
and it should not be relied upon as such.  Opinions expressed herein are subject to change
without notice.  The products mentioned in this document may not be eligible for sale in some
states or countries, nor suitable for all types of investors; their value and the income they
produce may fluctuate and/or be adversely affected by exchange rates, interest rates, or
other factors.  Additional information will be provided upon request.

Lehman Brothers Inc. and/or its affiliated companies may make a market or deal as principal
in the securities mentioned in this document or in options or other derivatives based
thereon.  In addition, Lehman Brothers Inc., its affiliated companies, shareholders,
directors, officers and/or employees, may from time to time have long or short positions in
such securities or in options, futures, or other derivative instruments based thereon.  One
or more directors, officers, and/or employees of Lehman Brothers Inc. or its affiliated
companies may be a director of the issuer of the securities mentioned in this document.
Lehman Brothers Inc. or its affiliated companies may have managed or co-managed a public
offering of securities for any issuer mentioned in this document within the last three years.
(c) 2007 Lehman Brothers Inc.  All rights reserved.  Member SIPC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - -


This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate and it should
not be relied upon as such.  All information is subject to change without notice.


- - - - - - - -
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

Highland Capital Management is growing.  Check out Careers at www.hcmlp.com.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or
reproduced without explicit permission. The material provided herein is for informational
purposes only and does not constitute an offer or commitment, a solicitation of an offer, or
any advice or recommendation, to enter into or conclude any transaction.  It may contain
confidential, proprietary or legally privileged information.
If you receive this message in error, please immediately delete it.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate and it should
not be relied upon as such.  All information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate and it should
not be relied upon as such.  All information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate and it should
not be relied upon as such.  All information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not
represent that this information is complete or accurate and it should not be relied upon as
such.  All information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

**Jason Post**

| | |
|---|---|
| **From:** | David Simek |
| **Sent:** | Monday, September 29, 2008 12:07 PM |
| **To:** | Jason Post |
| **Subject:** | trade on lmt 05-3 2a3  $69 |

-----Original Message-----
From: DAVID SIMEK, HIGHLAND CAPITAL MAN [mailto:dsimek4@bloomberg.net]
Sent: Monday, September 29, 2008 12:05 PM
To: David Simek
Subject: 70

--- Original Sender: FERNANDO G LOPEZ, GUGGENHEIM CAPITAL M ---


Reply:
DONE FOR TOMORROW SETTLE..  3.65MM LMT 05-3 2A3 @ $69-00 I BUY

1

**Guggenheim Trade Break Fee**

| | |
|---|---:|
| Net Proceeds Amount on buy at $70.9375 | $ 1,969,727.26 |
| Net Proceeds Amount on sell at $69.00 | 1,916,216.65 |

| | |
|---|---:|
| Difference owed to Guggenheim from Highland for breaking trade from 9/23/08 | $    (53,510.61) |

DES                                                          Mtge  DES
See Page 3 for Additional Comments
Bloomberg                     SECURITY DESCRIPTION       Page 1 of 3
                              LMT 2005-3 2A3        5.5%  1/25/36
CUSIP: 52520MEB5 - Issuer: LEHMAN MORTGAGE TRUST          2 Prospectus
Series 2005-3   Class 2A3  Col Mty 1/25/36
3) CMO: ACCELERATED SECURITY                             1) RATINGS
                                                         S&P      AAA
| CURRENT |          | ORIGINAL ISSUE |                  MDY      Aa1  *-
Sep08   52,254,725   USD       69,059,000
"Fact   .75666784    WAL  3.9Yr @ 100PPC                 CALLABLE
Coupon     5.5%      1st coupon     5.5%                  4) Lead Mgr    LB
Next Paymt 10/25/08  1st paymnt  1/25/06                  Trustee:       LBN
Rcd date   9/30/08   1st settle 12/30/05                 1) VOLATILITY
Beg accrue 9/ 1/08   Dated date 12/ 1/05                 GRADE   2AA
End accrue 9/30/08   px         12/22/05                  FFIEC   "Pass"
Class/Grp Pct 33%    Class/Grp  Pct 33%

                     | Monthly PAYMENT |
                     pays 25th day
                     24 day delay
                     accrues 30/360

65) Personal Notes   14) Identifiers     1)  MH30 5.992 M   319wam 6 24wac

                                                         SMMEA:    Yes
                                                         DTC Book Entry
                                                         DTC SameDay
                                                         Clearstream
                                                         Euroclear

See Page 3 for Comments                    MinSize  25000 Incl      1
Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900   Singapore 65 6212 1000   U.S. 1 212 318 2000   Copyright 2008 Bloomberg Finance L.P.
                                                                      G743-729-2 01-Oct-08 12:29:07

GRAB

# HISTORICAL TOTAL RETURN

Mtge **HTR**

PAGE 3 OF 3

**SUMMARY**

LMT 2005-3 2A3 AS

| | Factor | Tranche Bal |
|---|---|---|
| Start: 12/30/05 | Dec | 3,650,000.00 |
| End: 09/30/02 | Sep | 2,761,837.63 |

Price 5.500%   Original Face

P + I + Reinv    1,420,047.18

Trade Basis

## 4.953% CBE RETURN

14.401% holding period return

Mode: 1 B-Book, T-Trade
Method: 2 1-CUJ 2-CBE

Y=Constant, N=PerPeriod
L=Historical LIBOR, H=Historical

| Date | CMO Balance | Principal | Interest | Total P+I | Reinv to 9/30/08 | Total Value |
|---|---|---|---|---|---|---|
| | | | | | | 3,666,171.53 |
| | | | | | | 4,194,121.28 |
| 1/25/08 | 3,042,397.67 | 53,362.55 | 14,188.90 | 67,551.45 | 759.67 | 1.65 |
| 2/25/08 | 3,011,971.99 | 30,425.67 | 13,944.32 | 44,369.99 | 437.58 | 1.65 |
| 3/25/08 | 3,003,348.58 | 8,623.42 | 13,804.87 | 22,428.29 | 190.19 | 1.65 |
| 4/25/08 | 2,949,986.03 | 53,362.55 | 13,765.35 | 67,127.90 | 476.82 | 1.65 |
| 5/25/08 | 2,910,296.72 | 39,689.30 | 13,520.77 | 53,210.07 | 304.47 | 1.65 |
| 6/25/08 | 2,856,934.18 | 53,362.55 | 13,338.86 | 66,701.41 | 289.87 | 1.65 |
| 7/25/08 | 2,839,467.49 | 17,466.69 | 13,094.28 | 30,560.97 | 90.81 | 1.65 |
| 8/25/08 | 2,815,200.18 | 24,267.31 | 13,014.23 | 37,281.54 | 59.01 | 1.65 |
| 9/25/08 | 2,761,837.63 | 53,362.55 | 12,903.00 | 66,265.55 | 15.13 | 1.65 |
| TOTAL | | 888,162.40 | 505,757.35 | 1,393,919.75 | 26,127.43 | |

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2008 Bloomberg Finance L.P.
G437-95-2 01-Oct-08 10:44:17

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>**Lehman Commercial Paper, Inc.** | Case Number:<br>**08-13900** |
|---|---|

*Note: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Highland Credit Strategies Master Fund, L.P.**

Name and address where notices should be sent:
c/o Highland Capital Management, L.P.          Scott Everett
13455 Noel Road, Suite 800                    Haynes and Boone, LLP
Dallas, TX 75240                              2323 Victory Avenue, Suite 700
Telephone number:                             Dallas, TX 75219
(972) 628-4100                                (214) 651-5000

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):




Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1.  **Amount of Claim as of Date Case Filed:**  $ **327,021.70**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2.  **Basis for Claim:**   **See attached Addendum**
    (See instruction #2 on reverse side.)

3.  **Last four digits of any number by which creditor identifies debtor:** _____

    3a. **Debtor may have scheduled account as:** _____
        (See instruction #3a on reverse side.)

4.  **Secured Claim** (See instruction #4 on reverse side.)
    Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

    **Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
    **Describe:**

    **Value of Property:** $_____   **Annual Interest Rate** ____%

    **Amount of arrearage and other charges as of time case filed included in secured claim,**

    if any: $_____          **Basis for perfection:** _____

    **Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

5.  **Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

    Specify the priority of the claim.

    ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

    ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier. 11 U.S.C. § 507(a)(4)

    ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5)

    ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7)

    ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8)

    ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____)

    **Amount entitled to priority:**

    $_____

    * Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6.  **Credits:**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7.  **Documents:** Attach redacted copies of any documents that support this claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS.   ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br>2/8/06 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>**Patrick Boyce** | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 11 U.S.C. §§ 152 and 3571.

time to time (collectively, the "Agreement") with LCI and LBI.[1]  A copy of the Agreement is
attached hereto as *Exhibit A*.

     3.     On September 26, 2008, Highland Credit Strategies issued the Notice of Early
Termination of Master Repurchase Agreement (the "Notice of Early Termination") whereby
Highland Credit Strategies declared an Event of Default under Paragraphs 11(ii) and (vii) of the
Agreement.  A copy of the Notice of Early Termination is attached hereto as *Exhibit B*.  As a
result of the declaration of an Event of Default, the Repurchase Date in respect of all outstanding
Transactions was deemed to immediately occur.

     4.     On October 10, 2008, Highland Credit Strategies provided to LCI and LBI its
Calculation Statement Under Master Repurchase Agreement (the "Calculation Statement")
pursuant to Paragraph 11 of the Agreement as a result of the early designation of the Repurchase
Date.  A copy of the Calculation Statement and supporting documents are attached hereto as
*Exhibit C*.

     5.     Pursuant to Paragraph 11 of the Agreement, the amount of $327,021.70 is due and
payable from LCI and LBI as described in the Calculation Statement.

     6.     Highland Credit Strategies is filing this proof of claim with full reservation of
rights, including the right to further amend or supplement the proof of claim at a later date.

     7.     Nothing provided for herein shall limit Highland Credit Strategies' rights under the
Agreement.

---

[1] Capitalized terms not otherwise defined shall have the meanings given in the Agreement.



# Master Repurchase Agreement

September 1996 Version

| | |
|---|---|
| Dated as of | **October 1, 2007** |
| Between: | **Lehman Brothers Inc.** **Lehman Commercial Paper Inc.** |
| and | **Highland Credit Strategies Master Fund, L.P.** |

## 1. Applicability

From time to time the parties hereto may enter into transactions in which one party ("Seller") agrees to transfer to the other ("Buyer") securities or other assets ("Securities") against the transfer of funds by Buyer, with a simultaneous agreement by Buyer to transfer to Seller such Securities at a date certain or on demand, against the transfer of funds by Seller. Each such transaction shall be referred to herein as a "Transaction" and, unless otherwise agreed in writing, shall be governed by this Agreement, including any supplemental terms or conditions contained in Annex I hereto and in any other annexes identified herein or therein as applicable hereunder.

## 2. Definitions

(a) "Act of Insolvency", with respect to any party, (i) the commencement by such party as debtor of any case or proceeding under any bankruptcy, insolvency, reorganization, liquidation, moratorium, dissolution, delinquency or similar law, or such party seeking the appointment or election of a receiver, conservator, trustee, custodian or similar official for such party or any substantial part of its property, or the convening of any meeting of creditors for purposes of commencing any such case or proceeding or seeking such an appointment or election, (ii) the commencement of any such case or proceeding against such party, or another seeking such an appointment or election, or the filing against a party of an application for a protective decree under the provisions of the Securities Investor Protection Act of 1970, which (A) is consented to or not timely contested by such party, (B) results in the entry of an order for relief, such an appointment or election, the issuance of such a protective decree or the entry of an order having a similar effect, or (C) is not dismissed within 15 days, (iii) the making by such party of a general assignment for the benefit of creditors, or (iv) the admission in writing by such party of such party's inability to pay such party's debts as they become due;

(b) "Additional Purchased Securities", Securities provided by Seller to Buyer pursuant to Paragraph 4(a) hereof;

(o) "Purchase Price", (i) on the Purchase Date, the price at which Purchased Securities are
transferred by Seller to Buyer, and (ii) thereafter, except where Buyer and Seller agree oth-
erwise, such price increased by the amount of any cash transferred by Buyer to Seller pur-
suant to Paragraph 4(b) hereof and decreased by the amount of any cash transferred by
Seller to Buyer pursuant to Paragraph 4(a) hereof or applied to reduce Seller's obligations
under clause (ii) of Paragraph 5 hereof;

(p) "Purchased Securities", the Securities transferred by Seller to Buyer in a Transaction here-
under, and any Securities substituted therefor in accordance with Paragraph 9 hereof. The
term "Purchased Securities" with respect to any Transaction at any time also shall include
Additional Purchased Securities delivered pursuant to Paragraph 4(a) hereof and shall
exclude Securities returned pursuant to Paragraph 4(b) hereof;

(q) "Repurchase Date", the date on which Seller is to repurchase the Purchased Securities
from Buyer, including any date determined by application of the provisions of Paragraph
3(c) or 11 hereof;

(r) "Repurchase Price", the price at which Purchased Securities are to be transferred from
Buyer to Seller upon termination of a Transaction, which will be determined in each case
(including Transactions terminable upon demand) as the sum of the Purchase Price and
the Price Differential as of the date of such determination;

(s) "Seller's Margin Amount", with respect to any Transaction as of any date, the amount
obtained by application of the Seller's Margin Percentage to the Repurchase Price for
such Transaction as of such date;

(t) "Seller's Margin Percentage", with respect to any Transaction as of any date, a percentage
(which may be equal to the Buyer's Margin Percentage) agreed to by Buyer and Seller or,
in the absence of any such agreement, the percentage obtained by dividing the Market
Value of the Purchased Securities on the Purchase Date by the Purchase Price on the
Purchase Date for such Transaction.

## 3.  Initiation; Confirmation; Termination

(a) An agreement to enter into a Transaction may be made orally or in writing at the initia-
tion of either Buyer or Seller. On the Purchase Date for the Transaction, the Purchased
Securities shall be transferred to Buyer or its agent against the transfer of the Purchase
Price to an account of Seller.

(b) Upon agreeing to enter into a Transaction hereunder, Buyer or Seller (or both), as shall
be agreed, shall promptly deliver to the other party a written confirmation of each
Transaction (a "Confirmation"). The Confirmation shall describe the Purchased
Securities (including CUSIP number, if any), identify Buyer and Seller and set forth (i)
the Purchase Date, (ii) the Purchase Price, (iii) the Repurchase Date, unless the
Transaction is to be terminable on demand, (iv) the Pricing Rate or Repurchase Price
applicable to the Transaction, and (v) any additional terms or conditions of the
Transaction not inconsistent with this Agreement. The Confirmation, together with this
Agreement, shall constitute conclusive evidence of the terms agreed between Buyer and
Seller with respect to the Transaction to which the Confirmation relates, unless with

(e) Seller and Buyer may agree, with respect to any or all Transactions hereunder, that the respective rights of Buyer or Seller (or both) under subparagraphs (a) and (b) of this Paragraph may be exercised only where a Margin Deficit or Margin Excess, as the case may be, exceeds a specified dollar amount or a specified percentage of the Repurchase Prices for such Transactions (which amount or percentage shall be agreed to by Buyer and Seller prior to entering into any such Transactions).

(f) Seller and Buyer may agree, with respect to any or all Transactions hereunder, that the respective rights of Buyer and Seller under subparagraphs (a) and (b) of this Paragraph to require the elimination of a Margin Deficit or a Margin Excess, as the case may be, may be exercised whenever such a Margin Deficit or Margin Excess exists with respect to any single Transaction hereunder (calculated without regard to any other Transaction outstanding under this Agreement).

## 5. Income Payments

Seller shall be entitled to receive an amount equal to all Income paid or distributed on or in respect of the Securities that is not otherwise received by Seller, to the full extent it would be so entitled if the Securities had not been sold to Buyer. Buyer shall, as the parties may agree with respect to any Transaction (or, in the absence of any such agreement, as Buyer shall reasonably determine in its discretion), on the date such Income is paid or distributed either (i) transfer to or credit to the account of Seller such Income with respect to any Purchased Securities subject to such Transaction or (ii) with respect to Income paid in cash, apply the Income payment or payments to reduce the amount, if any, to be transferred to Buyer by Seller upon termination of such Transaction. Buyer shall not be obligated to take any action pursuant to the preceding sentence (A) to the extent that such action would result in the creation of a Margin Deficit, unless prior thereto or simultaneously therewith Seller transfers to Buyer cash or Additional Purchased Securities sufficient to eliminate such Margin Deficit, or (B) if an Event of Default with respect to Seller has occurred and is then continuing at the time such Income is paid or distributed.

## 6. Security Interest

Although the parties intend that all Transactions hereunder be sales and purchases and not loans, in the event any such Transactions are deemed to be loans, Seller shall be deemed to have pledged to Buyer as security for the performance by Seller of its obligations under each such Transaction, and shall be deemed to have granted to Buyer a security interest in, all of the Purchased Securities with respect to all Transactions hereunder and all Income thereon and other proceeds thereof.

## 7. Payment and Transfer

Unless otherwise mutually agreed, all transfers of funds hereunder shall be in immediately available funds. All Securities transferred by one party hereto to the other party (i) shall be in suitable form for transfer or shall be accompanied by duly executed instruments of transfer or assignment in blank and such other documentation as the party receiving possession may reasonably request, (ii) shall be transferred on the book-entry system of a Federal Reserve Bank, or (iii) shall be transferred by any other method mutually acceptable to Seller and Buyer.

## 10. Representations

Each of Buyer and Seller represents and warrants to the other that (i) it is duly authorized to execute and deliver this Agreement, to enter into Transactions contemplated hereunder and to perform its obligations hereunder and has taken all necessary action to authorize such execution, delivery and performance, (ii) it will engage in such Transactions as principal (or, if agreed in writing, in the form of an annex hereto or otherwise, in advance of any Transaction by the other party hereto, as agent for a disclosed principal), (iii) the person signing this Agreement on its behalf is duly authorized to do so on its behalf (or on behalf of any such disclosed principal), (iv) it has obtained all authorizations of any governmental body required in connection with this Agreement and the Transactions hereunder and such authorizations are in full force and effect and (v) the execution, delivery and performance of this Agreement and the Transactions hereunder will not violate any law, ordinance, charter, by-law or rule applicable to it or any agreement by which it is bound or by which any of its assets are affected. On the Purchase Date for any Transaction Buyer and Seller shall each be deemed to repeat all the foregoing representations made by it.

## 11. Events of Default

In the event that (i) Seller fails to transfer or Buyer fails to purchase Purchased Securities upon the applicable Purchase Date, (ii) Seller fails to repurchase or Buyer fails to transfer Purchased Securities upon the applicable Repurchase Date, (iii) Seller or Buyer fails to comply with Paragraph 4 hereof, (iv) Buyer fails, after one business day's notice, to comply with Paragraph 5 hereof, (v) an Act of Insolvency occurs with respect to Seller or Buyer, (vi) any representation made by Seller or Buyer shall have been incorrect or untrue in any material respect when made or repeated or deemed to have been made or repeated, or (vii) Seller or Buyer shall admit to the other its inability to, or its intention not to, perform any of its obligations hereunder (each an "Event of Default"):

(a) The nondefaulting party may, at its option (which option shall be deemed to have been exercised immediately upon the occurrence of an Act of Insolvency), declare an Event of Default to have occurred hereunder and, upon the exercise or deemed exercise of such option, the Repurchase Date for each Transaction hereunder shall, if it has not already occurred, be deemed immediately to occur (except that, in the event that the Purchase Date for any Transaction has not yet occurred as of the date of such exercise or deemed exercise, such Transaction shall be deemed immediately canceled). The nondefaulting party shall (except upon the occurrence of an Act of Insolvency) give notice to the defaulting party of the exercise of such option as promptly as practicable.

(b) In all Transactions in which the defaulting party is acting as Seller, if the nondefaulting party exercises or is deemed to have exercised the option referred to in subparagraph (a) of this Paragraph, (i) the defaulting party's obligations in such Transactions to repurchase all Purchased Securities, at the Repurchase Price therefor on the Repurchase Date determined in accordance with subparagraph (a) of this Paragraph, shall thereupon become immediately due and payable, (ii) all Income paid after such exercise or deemed exercise shall be retained by the nondefaulting party and applied to the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder, and (iii) the defaulting party shall immediately deliver to the nondefaulting party any Purchased Securities subject to such Transactions then in the defaulting party's possession or control.

amount of such Repurchase Price for such Transaction determined as of the date of the exercise or deemed exercise by the nondefaulting party of the option referred to in sub-paragraph (a) of this Paragraph.

(g) The defaulting party shall be liable to the nondefaulting party for (i) the amount of all reasonable legal or other expenses incurred by the nondefaulting party in connection with or as a result of an Event of Default, (ii) damages in an amount equal to the cost (including all fees, expenses and commissions) of entering into replacement transactions and entering into or terminating hedge transactions in connection with or as a result of an Event of Default, and (iii) any other loss, damage, cost or expense directly arising or resulting from the occurrence of an Event of Default in respect of a Transaction.

(h) To the extent permitted by applicable law, the defaulting party shall be liable to the non-defaulting party for interest on any amounts owing by the defaulting party hereunder, from the date the defaulting party becomes liable for such amounts hereunder until such amounts are (i) paid in full by the defaulting party or (ii) satisfied in full by the exercise of the nondefaulting party's rights hereunder. Interest on any sum payable by the default-ing party to the nondefaulting party under this Paragraph 11(h) shall be at a rate equal to the greater of the Pricing Rate for the relevant Transaction or the Prime Rate.

(i) The nondefaulting party shall have, in addition to its rights hereunder, any rights other-wise available to it under any other agreement or applicable law.

## 12. Single Agreement

Buyer and Seller acknowledge that, and have entered hereinto and will enter into each Transaction hereunder in consideration of and in reliance upon the fact that, all Transactions hereunder constitute a single business and contractual relationship and have been made in consideration of each other. Accordingly, each of Buyer and Seller agrees (i) to perform all of its obligations in respect of each Transaction hereunder, and that a default in the perfor-mance of any such obligations shall constitute a default by it in respect of all Transactions hereunder, (ii) that each of them shall be entitled to set off claims and apply property held by them in respect of any Transaction against obligations owing to them in respect of any other Transactions hereunder and (iii) that payments, deliveries and other transfers made by either of them in respect of any Transaction shall be deemed to have been made in consideration of payments, deliveries and other transfers in respect of any other Transactions hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted.

## 13. Notices and Other Communications

Any and all notices, statements, demands or other communications hereunder may be given by a party to the other by mail, facsimile, telegraph, messenger or otherwise to the address specified in Annex II hereto, or so sent to such party at any other place specified in a notice of change of address hereafter received by the other. All notices, demands and requests hereun-der may be made orally, to be confirmed promptly in writing, or by other communication as specified in the preceding sentence.

(b) Subject to the last sentence of subparagraph (a) of this Paragraph, any such Transaction shall proceed only if Seller furnishes or has furnished to Buyer its most recent available audited statement of its financial condition and its most recent subsequent unaudited statement of its financial condition.

(c) By entering into a Transaction pursuant to this Paragraph, Seller shall be deemed (i) to represent to Buyer that since the date of Seller's latest such financial statements, there has been no material adverse change in Seller's financial condition which Seller has not disclosed to Buyer, and (ii) to agree to provide Buyer with future audited and unaudited statements of its financial condition as they are issued, so long as it is a Seller in any outstanding Transaction involving a Plan Party.

## 19. Intent

(a) The parties recognize that each Transaction is a "repurchase agreement" as that term is defined in Section 101 of Title 11 of the United States Code, as amended (except insofar as the type of Securities subject to such Transaction or the term of such Transaction would render such definition inapplicable), and a "securities contract" as that term is defined in Section 741 of Title 11 of the United States Code, as amended (except insofar as the type of assets subject to such Transaction would render such definition inapplicable).

(b) It is understood that either party's right to liquidate Securities delivered to it in connection with Transactions hereunder or to exercise any other remedies pursuant to Paragraph 11 hereof is a contractual right to liquidate such Transaction as described in Sections 555 and 559 of Title 11 of the United States Code, as amended.

(c) The parties agree and acknowledge that if a party hereto is an "insured depository institution," as such term is defined in the Federal Deposit Insurance Act, as amended ("FDIA"), then each Transaction hereunder is a "qualified financial contract," as that term is defined in FDIA and any rules, orders or policy statements thereunder (except insofar as the type of assets subject to such Transaction would render such definition inapplicable).

(d) It is understood that this Agreement constitutes a "netting contract" as defined in and subject to Title IV of the Federal Deposit Insurance Corporation Improvement Act of 1991 ("FDICIA") and each payment entitlement and payment obligation under any Transaction hereunder shall constitute a "covered contractual payment entitlement" or "covered contractual payment obligation", respectively, as defined in and subject to FDICIA (except insofar as one or both of the parties is not a "financial institution" as that term is defined in FDICIA).

## 20. Disclosure Relating to Certain Federal Protections

The parties acknowledge that they have been advised that:

(a) in the case of Transactions in which one of the parties is a broker or dealer registered with the Securities and Exchange Commission ("SEC") under Section 15 of the Securities Exchange Act of 1934 ("1934 Act"), the Securities Investor Protection Corporation has

**ANNEX I**
**Supplemental Terms and Conditions**

This Annex forms a part of the Master Repurchase Agreement dated as of <u>October 1, 2007</u>
(the "Agreement") between **Lehman Brothers Inc., Lehman Commercial Paper Inc.,** and
**Highland Credit Strategies Master Fund, L.P.**

Capitalized terms used but not defined in this Annex I shall have the meanings ascribed to them in the Agreement.

1.   In addition to this Annex I and Annex II the following Annexes (and any schedules or exhibits attached thereto) shall be deemed executed by the parties hereto and shall also form a part of the Agreement:

     X None
     —Annex IV Party as Agent
     —Annex VI Buy/Sell Back Transactions
     —Annex VII Transactions Involving Registered Investment Companies
     —Annex VIII Transactions in Equity Securities
     —Annex IX Transactions Involving Certain Japanese Financial Institutions

2.   With respect to individual repurchase transactions, this Agreement shall only apply to the Lehman Brothers entity (i.e. Lehman Brothers Inc., Lehman Commercial Paper Inc.) printed in the confirmation (as described in Section 3(b) herein) provided to the counterparty of the Lehman Brothers entity.

3.   <u>Definitions</u>.  For purposes of the Agreement, the following terms shall have the following meanings:

     (a) "Margin Notice Deadline", 10:00 am New York City time.

     (b) "Business Day" or "business day", with respect to any Transaction hereunder, a day on which regular trading may occur in the principal market for the Purchased Securities subject to such Transaction.  In no event shall a Saturday or Sunday be considered a business day.

4.   <u>Purchase Price Maintenance</u>.

     (a) Unless otherwise expressly agreed by the parties hereto, the parties agree that in any Transaction hereunder whose term extends over an Income payment date for the Securities subject to such Transaction, Buyer shall on the date such Income is paid transfer to or credit to the account of Seller an amount equal to such Income payment or payments pursuant to Paragraph 5(i) and shall not apply the income payment or payments to reduce the amount to be transferred to Buyer or Seller upon termination of the Transaction pursuant to Paragraph 5(ii) of the Agreement.

     (b) Unless otherwise expressly agreed by the parties hereto, notwithstanding the definition of Purchase Price in Paragraph 2 of the Agreement and the provisions of Paragraph 4 of the Agreement, the parties agree (i) that the Purchase Price will not be increased or decreased by the amount of any cash transferred by one party to the other pursuant to Paragraph 4 of the Agreement and (ii) that transfer of cash shall be treated as if it constituted a transfer of Securities (with a Market Value equal to the U.S. dollar amount of such cash) pursuant to Paragraph 4(a) or (b), as the case may be (including for purposes of the definition of "Additional Purchased Securities").

5.   <u>Submission to Jurisdiction; Waiver of Immunity; Waiver of Jury Trial</u>.

     (a) Each party irrevocably and unconditionally (i) submits to the non-exclusive jurisdiction of any United States Federal or New York State court sitting in Manhattan, and any appellate court from any such court, solely for the purpose of any suit, action or proceeding brought to enforce its obligations under the Agreement or relating in any way to the Agreement or any Transaction under the Agreement and (ii) waives, to the fullest extent it may effectively do so, any defense of an inconvenient forum to the maintenance of such action or proceeding in any such court and any right of jurisdiction on account of its place of residence or domicile.

## Annex II
## Names and Addresses for Communications Between Parties

### LEHMAN BROTHERS
745 Seventh Avenue, 19th Floor
New York, New York 10019

Attn.: Robert Guglielmo, Senior Vice President
Transaction Management
(212) 526-7121 phone
(212) 526-7672 fax

**Legal/Documentation Information:**

Name: _____

Address: _____

_____

_____

Attn: _____

Tel #: _____

Fax #: _____

E-mail: _____

**Business/Trading Information:**

| | |
|---|---|
| Name: | Highland Credit Strategies Master Fund, LP |
| Primary Contact: | Britt Brown |
| Address: | 13455 Noel Rd. Suite 800 Dallas, TX 75240 |
| Tel #: | 972-628-4100 |
| Email Address: | bbrown@hcmlp.com |
| Secondary Contact: | Andrew Lenge |
| Address: | 13455 Noel Rd. Suite 800 Dallas, TX 75240 |
| Tel #: | 972-628-4100 |
| Email Address: | alenge@hcmlp.com |

## NOTICE OF EARLY TERMINATION OF MASTER REPURCHASE AGREEMENT

To:        Lehman Brothers Inc. and Lehman Commercial Paper Inc. ("**Buyer**")
           c/o Lehman Brothers
           745 Seventh Avenue, 19th Floor
           New York, New York 10019
           Attention:     Robert Guglielmo, Senior Vice President
                          Transaction Management
Phone:     212-526-7121
Facsimile: 212-526-7672

From:      Highland Credit Strategies Master Fund, L.P. ("**Seller**")
           c/o Highland Capital Management, L.P.
           . 13455 Noel Road
           Two Galleria Tower, Suite 800
           Dallas, Texas 75240
Phone:     972-628-4100
Facsimile: 972-628-4147

Date:      September 26, 2008

Re:        BMA Master Repurchase Agreement dated as of October 1, 2007 and each of the
           Annexes thereto, between Buyer and Seller and all Confirmations and
           Transactions thereunder, in each case, as such documents are amended and
           supplemented from time to time (collectively, the "**Agreement**")

----

Pursuant to Paragraph 11(a) of the Agreement, Seller hereby declares that an Event of Default under Paragraphs 11(ii) and (vii) of the Agreement has occurred in respect of Buyer and the Repurchase Date in respect of all outstanding Transactions shall be deemed to occur immediately as provided in Paragraph 11 of the Agreement. All right, title and interest in and entitlement to all Purchased Securities that are subject of an outstanding Transaction shall be deemed transferred to Seller and Buyer shall immediately deliver to Seller such Purchased Securities.

Upon receipt by Seller of confirmation that all Purchased Securities have been returned to Seller and all of Buyer's right, title and interest in and entitlement to such Purchased Securities has been transferred to Seller, Seller will tender payment of the aggregate Repurchase Price for the relevant Transactions net of any amount specified in the Agreement to be set off against such Repurchase Price. Such set-off amounts may include amounts described in the paragraph below as well as any other amounts that Seller is entitled by applicable law, the Agreement or otherwise to set-off against amounts due from Seller to Buyer including to account for failure of Buyer to transfer Purchased Securities.

LAS99 1700927-1.079765.0011

# EXHIBIT "C"

For credit to GLA: 211551
FFC Account#: 466107
Attention: Marisela Rodriguez, 713-483-6604
Reference: (Borrower Name, Type of Payment/description)
Email: mariselarodriguez@bankofny.com

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed thereto in the Agreement.

HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.

By: Highland General Partner L.P., its general partner
By: Highland GP Holdings LLC, its general partner
By: Highland Capital Management, L.P., its sole member
By: Strand Advisors, Inc., its General Partner

By: _____
Name: Patrick Boyce
Title: Treasurer

$625.59 _____ Amounts in respect of interest owing to Party B on all amounts due hereunder from the date of the Event of Default until such amounts are paid in full at the higher of the Pricing Rate for the Relevant Transaction or the Prime Rate pursuant to Paragraph 11(h) of the Agreement

**Set-off**

$0 _____ Any other obligation of Party B to Party A

**Total Net Amount Now Due to Party B    $327,021.70**

Subject to accrual interest at Default Rate from date due to date paid in full

*Calculations details are attached hereto on the following pages.*

**Highland Credit Strategies Master Fund, L.P.**

| Cusip | Security | Par | Lehman Security Bid Price | Lehman Security Mark to Market Price (1/12/09) | Indicative Security Price | Security Market Value | All In Term Financing Value | Repo Loan Amount | Value |
|---|---|---|---|---|---|---|---|---|---|
| 52520KEB5 | LMT 05-3 2A3 | 3,850,000 | 81.5400 | 81.4529 | 52.1000 | 1,905,957.97 | ((4,390.53)) | 1,795,000.00 | 135,277.44 |
| | | | | | | | | | $ 135,277.44 |

**Jason Post**

| | |
|---|---|
| From: | Brian Albert [brian.albert@gmail.com] |
| Sent: | Wednesday, October 01, 2008 1:35 PM |
| To: | Jason Post |
| Subject: | Re: Legal fee estimate for Lehman MRA work |

I would estimate $3500 for legal fees for the Lehman MRA as well.

Thanks

Brian

On Tue, Sep 30, 2008 at 2:14 PM, Jason Post <JPost@hcmlp.com> wrote:

Would you have an estimate for this?  Thanks.

---

Highland Capital Management is growing. Check out Careers at www.hcmlp.com.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

--
Brian G. Albert, Esq.
Phone:  323-384-3631
brian.albert@gmail.com

## Jason Post

| | |
|---|---|
| **From:** | Nik Tesla |
| **Sent:** | Wednesday, October 01, 2008 4:26 PM |
| **To:** | 'Childs, Nick' |
| **Cc:** | Cash Reconciliation |
| **Subject:** | RE: Missing Coupon Payments (a/c 1891160 | Crusader) |

Nick,

In June 2008 we worked together to get Highland accounts paid for all outstanding repo P&I payments. After truing up the outstanding payments it was our understanding that Lehman was caught up/fully aware of our position and would from then on make payments accordingly.

It has come to our attention that Lehman has failed to pay the below coupon payments to Highland Credit Strategies Master Fund, L.P. for July, August and September.

| Bank | Contract | Issuer Name | Asset Name | Cash |
|---|---|---|---|---|
| LM | 7/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 13,094.2 |
| LM | 7/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 17,466.6 |
| LM | 8/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 13,014.2 |
| LM | 8/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 24,267.3 |
| LM | 9/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 12,903.0 |
| LM | 9/25/2008 | LMT 2005-3 | 5.50% - 01/2036 - 2A3 - 52520MEB5 | 53,362.5 |
| | | | **Outstanding** | **134,108.0** |

Please let us know what the resolution will be for these outstanding payments, thanks-

Nik Tesla
**Highland Capital Management, L.P.**
*P: 972.419.2586 - ntesla@hcmlp.com*

---

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Monday, June 30, 2008 2:05 PM
**To:** Andrew Lenge
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

The P&I was tracked in DTC. Please contact DTC 901 BoNY for the cash.

---

**From:** Andrew Lenge [mailto:ALenge@hcmlp.com]
**Sent:** Monday, June 30, 2008 10:37 AM
**To:** Childs, Nick
**Cc:** Nik Tesla
**Subject:** RE: Missing Coupon Payments (a/c 1891160 | Crusader)

Crusader

---

**From:** Childs, Nick [mailto:nick.childs@lehman.com]
**Sent:** Monday, June 30, 2008 10:37 AM
**To:** Andrew Lenge

1

We show two payments held for the Crusader fund:

55312TAG8  231,500.00
07401DAH4  26,722.08

**Total Payable = 258,222.08**

Regarding the CUSIPS you sent, we show no pmts recvd payable:

59025KAG7 Jan. 125,477.71
61754KAG0 Jan 105,101.85

Thanks,

Nick

---

**From:** P&I
**Sent:** Wednesday, June 25, 2008 6:58 AM
**To:** Childs, Nick
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

please see below.

---

**From:** Childs, Nick
**Sent:** Wednesday, June 25, 2008 7:50 AM
**To:** P&I
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

Can you see pmts made on these CUSIPS for Jan pmt dt?

07401DBC4 Jan. 71,250  We show $26,722.08 on a piece of 5,000,000
59025KAG7 Jan. 125,477.71  We do nto show any activity
61754KAG0 Jan 105,101.85  We do nto show any activity

---

**From:** P&I
**Sent:** Wednesday, June 25, 2008 6:45 AM
**To:** Childs, Nick; P&I
**Subject:** RE: Missing Coupon Payments (a/c 1891160)

We have two remaining items.

---

**From:** Childs, Nick
**Sent:** Tuesday, June 24, 2008 5:59 PM

3

cusip 52108RAG7 pay date 1/15/2008 pos 40,000,000 amount due 203356.59

Please provide payment instructions for each account and let us know if we are sending out separate wires or if we can bulk them. If we bilk the wire then please provide breakdown to client.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Highland Capital Management is growing. Check out Careers at www.hcmlp.com.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is

## Highland Credit Strategies Master Fund LP

| Date | Claim Interest Amount | Rate | Daily Interest |
|---|---|---|---|
| 9/26/2008 | $ 326,396.11 | 5.0000% | $ 45.33 |
| 9/27/2008 | 326,396.11 | 5.0000% | 45.33 |
| 9/28/2008 | 326,396.11 | 5.0000% | 45.33 |
| 9/29/2008 | 326,396.11 | 5.0000% | 45.33 |
| 9/30/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/1/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/2/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/3/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/4/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/5/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/6/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/7/2008 | 326,396.11 | 5.0000% | 45.33 |
| 10/8/2008 | 326,396.11 | 4.5000% | 40.80 |
| 10/9/2008 | 326,396.11 | 4.5000% | 40.80 |
| 10/10/2008 | 326,396.11 | 4.5000% | 40.80 |
| Total | | | $ 625.59 |

## Jason Post

| | |
|---|---|
| **From:** | Scott Crowell |
| **Sent:** | Wednesday, September 24, 2008 1:46 PM |
| **To:** | Jason Post |
| **Subject:** | FW: FIN - MTM Statement for LBI - HIGHLAND CAPITAL MGMT LP A/C HIGHLAND CREDIT STRATEGIES |
| **Attachments:** | MTM_Statement_25158705_1.pdf |

$0.00 margin posted as of 9/12/2008

-----Original Message-----
From: Morton Wendell
Sent: Wednesday, September 24, 2008 1:44 PM
To: Scott Crowell
Subject: FW: FIN - MTM Statement for LBI - HIGHLAND CAPITAL MGMT LP A/C HIGHLAND CREDIT
STRATEGIES


Morton Wendell
Highland Capital Management, L.P.
mwendell@hcmlp.com | 972-419-2542 tel | 214-540-4797 FAX
13455 Noel Road, Suite 800 | Dallas, TX 75240

-----Original Message-----
From: cvg@lehman.com [mailto:cvg@lehman.com]
Sent: Friday, September 12, 2008 7:14 AM
To: Morton Wendell
Cc: cvg@lehman.com
Subject: FIN - MTM Statement for LBI - HIGHLAND CAPITAL MGMT LP A/C HIGHLAND CREDIT
STRATEGIES


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not
represent that this information is complete or accurate and it should not be relied upon as
such.  All information is subject to change without notice.

52520MEB5    1/25/36    1691150    LMT 2005-3 2A3    5.50    3,650,000    0.771300    61.4528    8/28/08    9/26/08    3,086    2,271    (4,731)    1,786,000.00    (2,293,062)    130,000    528,800    277

8TIK490

*F* Denotes Free Collateral Fail

**Jason Post**

| | |
|---|---|
| From: | Scott Crowell |
| Sent: | Wednesday, September 24, 2008 1:36 PM |
| To: | Jason Post |
| Subject: | FW: LMT 2005-3 2A3 |

Last roll details

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]
Sent: Thursday, August 28, 2008 12:58 PM
To: Scott Crowell; Andrew Lenge; Brad Voss
Cc: Fixed Income Group; Morton Wendell
Subject: RE: LMT 2005-3 2A3

Thanks Scott.

-----Original Message-----
From: Scott Crowell [mailto:SCrowell@hcmlp.com]
Sent: Thursday, August 28, 2008 12:57 PM
To: Childs, Nick; Andrew Lenge; Brad Voss
Cc: 'Fixed Income Group'; Morton Wendell
Subject: RE: LMT 2005-3 2A3

Nick,

I agree to today's p/o amount.  Funds will be sent for value 8/28/2008.

Thanks,

Scott

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]
Sent: Thursday, August 28, 2008 12:51 PM
To: Andrew Lenge; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3


See attached.  I show a net payment due Lehman of 201,928.98.  Please confirm.

Thanks,

Nick

-----Original Message-----
From: Andrew Lenge [mailto:ALenge@hcmlp.com]
Sent: Thursday, August 28, 2008 10:42 AM
To: Childs, Nick; Brad Voss; Scott Crowell
Subject: RE: LMT 2005-3 2A3

Please roll

-----Original Message-----
From: Childs, Nick [mailto:nick.childs@lehman.com]

1

P 312-609-7332
F 212-419-2290
nchilds@lehman.com

This document is for information purposes only and it should not be regarded as an offer to
sell or as a solicitation of an offer to buy the securities or other instruments mentioned in
it.  No part of this document may be reproduced in any manner without the written permission
of Lehman Brothers Inc.  We do not represent that this information is accurate or complete
and it should not be relied upon as such.  Opinions expressed herein are subject to change
without notice.  The products mentioned in this document may not be eligible for sale in some
states or countries, nor suitable for all types of investors; their value and the income they
produce may fluctuate and/or be adversely affected by exchange rates, interest rates, or
other factors.  Additional information will be provided upon request.

Lehman Brothers Inc. and/or its affiliated companies may make a market or deal as principal
in the securities mentioned in this document or in options or other derivatives based
thereon.  In addition, Lehman Brothers Inc., its affiliated companies, shareholders,
directors, officers and/or employees, may from time to time have long or short positions in
such securities or in options, futures, or other derivative instruments based thereon.  One
or more directors, officers, and/or employees of Lehman Brothers Inc. or its affiliated
companies may be a director of the issuer of the securities mentioned in this document.
Lehman Brothers Inc. or its affiliated companies may have managed or co-managed a public
offering of securities for any issuer mentioned in this document within the last three years.
(c) 2007 Lehman Brothers Inc.  All rights reserved.  Member SIPC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - -


This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate and it should
not be relied upon as such.  All information is subject to change without notice.

- - - - - - - -
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

Highland Capital Management is growing.  Check out Careers at www.hcmlp.com.
-----------------------------------------------------------------------
-------------------------------------------------
DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or
reproduced without explicit permission. The material provided herein is for informational
purposes only and does not constitute an offer or commitment, a solicitation of an offer, or
any advice or recommendation, to enter into or conclude any transaction.  It may contain
confidential, proprietary or legally privileged information.
If you receive this message in error, please immediately delete it.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - -

3

This message is intended only for the personal and confidential use of the designated
recipient(s) named above.  If you are not the intended recipient of this message you are
hereby notified that any review, dissemination, distribution or copying of this message is
strictly prohibited.  This communication is for information purposes only and should not be
regarded as an offer to sell or as a solicitation of an offer to buy any financial product,
an official confirmation of any transaction, or as an official statement of Lehman Brothers.
Email transmission cannot be guaranteed to be secure or error-free.  Therefore, we do not
represent that this information is complete or accurate and it should not be relied upon as
such.  All information is subject to change without notice.

--------
IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this communication
(including any attachments) is not intended or written to be used and cannot be used for the
purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

**Guggenheim Trade Break Fee**

| | |
|---|---|
| Net Proceeds Amount on buy at $70.9375 | $ 1,969,727.26 |
| Net Proceeds Amount on sell at $69.00 | 1,916,216.65 |

| | |
|---|---|
| Difference owed to Guggenheim from Highland for breaking trade from 9/23/08 | $ (53,510.61) |

GRAB

Mtge HTR

# HISTORICAL TOTAL RETURN

PAGE 3 OF 3

LMT 2005-3 2A3 AS

| SUMMARY | Factor | Tranche Bal | Original Face | Price | Total Value |
|---|---|---|---|---|---|
| Start: 1/30/08 | Dec | 3,650,000.00 | | 100 | 3,660,171.53 |
| End: 9/30/08 | Sep | 2,761,837.63 | 5.500% | 100 | 4,194,121.28 |

% + I + Reinv: 1,420,047.18

Trade Basis

## 4.953% CBE RETURN

14.401% holding period return

Mode: 1 B-Book  2 T-Trade
Method: 1-CO  2-CBE

V=Constant/N=Preferred
L=Historical LIBOR

| Date | CMO Balance | Principal | Interest | Total P+I | Reinv to 9/30/08 | Reinv Same |
|---|---|---|---|---|---|---|
| 1/25/08 | 3,042,397.67 | 53,362.55 | 14,188.90 | 67,551.45 | 759.67 | 1.65 |
| 2/25/08 | 3,011,971.99 | 30,425.67 | 13,944.32 | 44,369.99 | 437.58 | 1.65 |
| 3/25/08 | 3,003,348.58 | 8,623.42 | 13,804.87 | 22,428.29 | 190.19 | 1.65 |
| 4/25/08 | 2,949,986.03 | 53,362.55 | 13,765.35 | 67,127.90 | 476.62 | 1.65 |
| 5/25/08 | 2,910,296.72 | 39,689.30 | 13,520.77 | 53,210.07 | 304.47 | 1.65 |
| 6/25/08 | 2,856,934.18 | 53,362.55 | 13,338.86 | 66,701.41 | 289.87 | 1.65 |
| 7/25/08 | 2,839,467.49 | 17,466.69 | 13,094.28 | 30,560.97 | 90.81 | 1.65 |
| 8/25/08 | 2,815,200.18 | 24,267.31 | 13,014.23 | 37,281.54 | 59.61 | 1.65 |
| 9/25/08 | 2,761,837.63 | 53,362.55 | 12,903.00 | 66,265.55 | 15.13 | 1.65 |
| TOTAL | | 888,162.40 | 505,757.35 | 1,393,919.75 | 26,127.43 | |

Australia 61 2 9777 8600  Brazil 5511 3048 4500  Europe 44 20 7330 7500  Germany 49 69 9204 1210  Hong Kong 852 2977 6000
Japan 81 3 3201 8900  Singapore 65 6212 1000  U.S. 1 212 318 2000  Copyright 2008 Bloomberg Finance L.P.
G749-7388-3 01-Oct-08 10:44:17

# haynesboone

February 27, 2009

**<u>VIA FEDERAL EXPRESS</u>**

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

Re:   Lehman Commercial Paper, Inc.
      Case No. 08-13900

Dear Sir or Madam:

Enclosed for filing in the above-referenced case please find the original and one (1) copy of the proof of claim of Highland Credit Strategies Master Fund, L.P.  Please return a file-stamped copy to our office in the enclosed Federal Express envelope.

Sincerely,

Dian Gwinnup
Paralegal
Direct Phone Number: (214) 651-5930
Direct Fax Number: (214) 200-0507
dian.gwinnup@haynesboone.com

D_1728839_1.doc

Haynes and Boone, LLP
Attorneys and Counselors
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: 214.651.5000
Fax: 214.651.5940

From:    Origin ID: DALA   (214)651-5000
Dian Gwinnup
Haynes and Boone, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 752197673


FedEx
Express

Ship Date: 27FEB09
ActWgt: 5 LB
CAD: 9778083/WBUS0200
Account#: S ********

Delivery Address Bar Code



Ref #    0034882.00191-20869
Invoice #
PO #
Dept #

SHIP TO: (646)282-2500         BILL SENDER
**Epiq Bankruptcy Solutions LLC**
**Attn: Lehman Brothers Holdings**
**757 3rd Ave Frnt 3**

**New York, NY 100172072**



TRK# 7901 6087 7811
0201

**MON - 02MAR**    **A1**
**PRIORITY OVERNIGHT**

## SB OGSA

**10017**
NY-US
**EWR**



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**FOLD on this line and place in shipping pouch with bar code and delivery address visible**

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

2/27/2009