Hearing Date: December 6, 2011 at 10:00 a.m.
Objections Due: Extended by Debtors to
November 14, 2011 at 4:00 p.m.

Lee S. Attanasio
Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel For East Bay Municipal Utility District*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
In re:                                                                         :     Chapter 11
                                                                                   :
Lehman Brothers Holdings Inc., *et al.*,                      :     Case No. 08-13555 (JMP)
                                                                                   :
                    Debtors.                                                :     (Jointly Administered)
                                                                                   :
                                                                                   :
---------------------------------------------------------- x

**EAST BAY MUNICIPAL UTILITY DISTRICT'S OBJECTION TO THE DEBTORS' PROPOSED ASSUMPTION OF DERIVATIVES CONTRACTS PURSUANT TO THE CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

East Bay Municipal Utility District ("EBMUD"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the proposed assumption by the above captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant to Sections 11.1 and 11.2 of the Debtors' Third Amended Joint Chapter 11 Plan, of derivatives contracts between EBMUD and Lehman Brothers Special Finance, Inc. ("LBSF"). In support of its Objection, EBMUD states as follows:

**I. RELEVANT BACKGROUND**

        A.    *Termination of the Swap Transactions*

        1.    On May 4, 2005, EBMUD and LBSF entered into two separate ISDA Master Agreements (as amended, supplemented or otherwise modified from time to time, and

7896879v.2

including all annexes, schedules, exhibits, confirmations and any related agreements and other documents, including, without limitation, the Credit Support Annexes related thereto), dated as of May 4, 2005 (collectively, the "ISDA Master Agreements").  On June 23, 2005, pursuant to the ISDA Master Agreements, EBMUD and LBSF entered into two swap transactions (the "Swap Transactions").

2.     On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its affiliates (but not LBSF) commenced the above-captioned chapter 11 cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 3, 2008, LBSF commenced its chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

3.     On September 17, 2008, pursuant to the terms of the ISDA Master Agreements, EBMUD sent a notice (the "Default Notice") to LBSF specifying the occurrence of an event of default under Section 5(a)(vii) of the ISDA Master Agreements (the "Event of Default") resulting from the commencement of LBHI's chapter 11 case, and designating September 25, 2008 as the Early Termination Date[1] with respect to all Transactions under the ISDA Master Agreements, thereby terminating each of the Swap Transactions under the ISDA Master Agreements as of such Early Termination Date.

4.     On September 25, 2008, EBMUD sent two settlement calculation notices (the "Calculation Notices") to LBSF which provided EBMUD's calculation of the settlement amounts resulting from the Event of Default and the early termination of the two outstanding Swap Transactions in accordance with the methodologies set forth in Section 6 in the ISDA Master

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ISDA Master Agreement.

1

Agreements. As set forth in the Calculation Notices, EBMUD calculated an amount owing to LBSF under each of the Swap Transactions (the "Early Termination Payments"), and on September 25, 2008, EBMUD paid such Early Termination Payments to LBSF by wire transfer.

B.   *ADR and Mediation Process*

5.   On October 3, 2011, LBSF commenced an alternative dispute resolution process by serving on EBMUD a Derivatives ADR Notice numbered 323 (the "Derivatives ADR Notice") pursuant to this Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts [Docket No. 5207] (the "ADR Order"). EBMUD's response to the Derivatives ADR Notice is due November 17, 2011.

C.   *LBSF Seeks the Assumption of Derivative Contracts*

6.   On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed their Third Amended Joint Chapter 11 Plan (the "Plan"). On September 1, 2011, this Court approved the Debtors' Disclosure Statement for the Plan and scheduled the hearing for confirmation of the Plan to be held at 10:00 a.m. on December 6, 2011.

7.   On October 25, 2011, the Debtors filed their plan supplement to the Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivatives contracts as contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Plan (the "Confirmation Order"). Exhibit 2 of the Plan Supplement does not specify the title of any derivatives contract between EBMUD and LBSF. The notes set forth on the cover of Exhibit 2 provide that unless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivatives contracts with each counterparty set

2

forth on Exhibit 2, Part A. Accordingly, although unclear from the Debtors' Exhibit 2, it appears that the Debtors are seeking to assume each of the Swap Transactions and the ISDA Master Agreements (EBMUD has no other derivative contracts with LBSF). Because of the sheer lack of information regarding the Debtors' intentions, EBMUD is compelled to file this Objection.[2]

II. **OBJECTION**

    A.    <u>The Swap Transactions Cannot be Assumed</u>

    8.    If LBSF is seeking to assume the Swap Transactions, such assumption must be denied because EBMUD terminated the Swap Transactions more than three years ago, rendering the Swap Transactions non-executory and, thus, non-assumable under section 365 of the Bankruptcy Code. Section 365 of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts in the Second Circuit have defined the term "executory contract" by reference to Professor Vern Countryman's definition, which provides that an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." <u>See</u> <u>In re The Penn Traffic Company, et al.</u>, 524 F.3d 373, 379 (2d Cir. 2008)(citing Vern Countryman, <u>Executory Contracts in Bankruptcy: Part I</u>, 57 Minn. L.Rev. 439, 460 (1973).

    9.    Courts in the Second Circuit consistently have held that section 365 of the Bankruptcy Code applies only if the contract or lease is in existence at the commencement of the case. Where such contract or lease has expired by its own terms or has been terminated under

---

[2] Counsel for EBMUD reached out to counsel for the Debtors for further clarity, and while additional general information was provided, the Debtors were unable to provide specific clarity as to their intentions with respect to EBMUD's derivative contracts. Counsel for EBMUD continues to be engaged in settlement discussions with counsel for the Debtors in an effort to consensually resolve the issues described in this Objection.

applicable law, then there is nothing left for the debtor to assume or reject and section 365 of the Bankruptcy Code cannot apply.  See In re Project Orange Associates, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); see also Bell V. The Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996)(stating that "[o]nce a lease is terminated, however, nothing remains for a debtor to assume under section 365.").  Thus, upon the termination of the Swap Transactions three years ago, such agreements no longer constituted executory contracts and, accordingly, the Swap Transactions cannot be assumed pursuant to section 365 of the Bankruptcy Code.

          10.    The Swap Transactions are each a "swap agreement" that was properly terminated pursuant to section 560 of the Bankruptcy Code due to the Debtors' bankruptcy filing over three years ago.  Specifically, the Swap Transactions are each a "swap agreement" as that term is defined under section 101(53B) of the Bankruptcy Code; EBMUD, as an entity that had an outstanding swap agreement with LBSF prior to the commencement of its bankruptcy case, is a "swap participant" afforded all of the safe harbor protections under the Bankruptcy Code, including, but not limited to, under sections 362(b)(17), 362(b)(27), 362(o), 546(g), 553, 560 and 561 of the Bankruptcy Code.  The Debtors have not challenged that the Swap Transactions are each a "swap agreement" or that EBMUD is a "swap participant".  Accordingly, because the Swap Transactions were terminated by EBMUD in accordance with section 560 of the Bankruptcy Code, they are not executory contracts and, therefore, LBSF cannot assume the Swap Transactions under section 365 of the Bankruptcy Code.

B.   <u>Any Dispute as to the Termination of the Swap Transactions or Challenge to the Early Termination Payments Should be Determined Through the ADR Process and/or a Properly Briefed Hearing</u>

11.   The Debtors listed EBMUD on Exhibit 2 to the Plan Supplement – which was filed at 11:30 p.m. on October 25, 2011 and buried as an exhibit in over 1000 pages of documents scheduled thereto – without specifying the title or date of any specific derivative contract to be assumed between EBMUD and LBSF. Although the Debtors have purported to serve EBMUD with notice of the proposed assumption and cure amount, EBMUD has not received such notice as of the date of the filing of this Objection. Moreover, although the Debtors are aware of counsel representing EBMUD, the Debtors did not serve counsel for EBMUD with any notice of the assumption or cure amount. Putting aside the obvious due process issues, seeking mass contract assumption pursuant to the Plan confirmation process is simply not the proper procedure for seeking to challenge the termination of the Swap Transactions and/or disputing the calculation of the Early Termination Payments.

12.   In its ADR Order, this Court approved procedures for an alternative dispute resolution in an attempt to promote judicial efficiency for the resolution of disputes between the Debtors and counterparties to derivatives contracts, which provided procedural protections to counterparties of derivatives contracts with the Debtors. As noted above, the dispute between LBSF and the Debtors regarding the termination of the Swap Transactions and calculation of the Early Termination Payments is presently proceeding through the ADR process. Regardless of whether the proposed assumption of derivatives contracts is for the assumption of the Swap Transactions, the ISDA Master Agreements or some other unidentified derivatives contracts between EBMUD and LBSF, such proposed assumption should not be used as a substitution for, or in any way affect, the ADR Process currently pending between EBMUD and

5

LBSF (or a full trial on the merits if the ADR Process is unsuccessful). If the Swap Transactions were determined to be assumed pursuant to the Plan and Confirmation Order, then EBMUD's actions to terminate the Swap Transactions would arguably be undone and EBMUD irreparably harmed without any opportunity for EBMUD to propound discovery on the Debtors, provide evidence in support of its positions or fully brief the issues.

        C.      <u>Effect of Assumption of Solely the ISDA Master Agreements</u>

        13.      Given the ambiguity of what LBSF is seeking to assume pursuant to Exhibit 2 of the Plan Supplement, the Confirmation Order approving the assumption of the ISDA Master Agreements must clearly state that only the ISDA Master Agreements and not the Swap Transactions are being assumed. Moreover, to the extent that LBSF is seeking to assume solely the ISDA Master Agreements and not the Swap Transactions, then LBSF is required to assume the ISDA Master Agreements *cum onere*. <u>See</u> <u>AGV Productions, Inc., v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp.</u>, 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing <u>National Labor Relations Board v. Bildisco and Bildisco</u>, 465 U.S. 513, 531 (1984)(holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of it <u>benefits and burdens</u>.")(*emphasis added*); <u>see</u> <u>also</u> <u>In re Atlantic Computer Sys., Inc.</u>, 173 B.R. 844, 849 (S.D.N.Y. 1994)(noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves LBSF's assumption of solely the ISDA Master Agreements, then LBSF must assume the ISDA Master Agreements *cum onere* such that LBSF would not be able to "cherry-pick" which pieces of the ISDA Master Agreements it wishes to assume and would therefore be subject to all of the benefits and burdens under the ISDA Master Agreements pursuant to their express terms and provisions.

### D. The Debtors May Not Assume the ISDA Master Agreements Unless the Debtors Cure All Existing Defaults

14. Section 365 of the Bankruptcy Code requires that in order for a debtor to assume any executory contract, the debtor must cure all existing defaults and compensate the counter-party to the agreement for any pecuniary losses resulting from such defaults, or provide adequate assurance that the trustee will promptly cure and provide such compensation. 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996). The language of section 365(b)(1) is unequivocal that a party to an executory contract must be paid all amounts due under the contract before the contract may be assumed. In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996). Here, LBSF must cure all known defaults and assume all obligations before the ISDA Master Agreements may be assumed.

15. At a minimum, LBSF, as the Defaulting Party under the ISDA Master Agreements, is required to pay all reasonable out-of-pocket expenses, including legal fees incurred by EBMUD in connection with the enforcement and protection of its rights under the ISDA Master Agreements. Given the lack of information and clarity of LBSF's intentions and complex nature of swap transactions, no attempt has been made to identify cure amounts, and until LBSF provides clarity, EBMUD reserves all of its rights for payment of cure prior to any assumption of the ISDA Master Agreements by LBSF.

### III. **RESERVATION OF RIGHTS**

16. EBMUD hereby reserves all of its rights and remedies under the ISDA Master Agreements, the Swap Transactions and all ancillary documents related thereto, including, without limitation, the Default Notice, Calculation Notices, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or

7

remedies shall constitute a waiver of any of such rights or remedies. To the extent the Debtors seek to modify EBMUD's rights under the ISDA Master Agreements, the Swap Transactions and all ancillary documents related thereto, including, without limitation, the Default Notice and Calculation Notices, through assumption, or through any other provision of the Plan or Confirmation Order, EBMUD asserts that such attempt must be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the Plan shall in any way limit, affect or modify: (i) any rights of EBMUD under the ISDA Master Agreements, the Swap Transactions and all ancillary documents related thereto, including, without limitation, the Default Notice and Calculation Notices, or (ii) any defenses (including any right of setoff or recoupment) of EBMUD.

WHEREFORE, without in any way limiting its rights, EBMUD hereby respectfully requests that the Court (i) deny LBSF's assumption of the Swap Transactions; (ii) find that LBSF may not assume the ISDA Master Agreements unless LBSF promptly cures and provides for compensation for all defaults under the ISDA Master Agreements; (iii) specifically provide in the Confirmation Order that LBSF will assume all obligations and liabilities under the ISDA Master Agreements; and (iv) grant such other relief that is just and proper.

Dated: November 14, 2011

        Respectfully submitted,

        SIDLEY AUSTIN LLP

        /s/ Lee S. Attanasio

        Lee S. Attanasio
        Alex R. Rovira
        787 Seventh Avenue
        New York, NY 10019
        Telephone: (212) 839-5300
        Facsimile: (212) 839-5599

8