**Hearing Date: December 6, 2011 at 10:00 a.m.**
**Objections Due: Extended by the Debtors**
**to November 14, 2011 at 4:00 p.m.**

Lee S. Attanasio
Alex R. Rovira
SIDLEY AUSTIN LLP
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel For First Data Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Lehman Brothers Holdings Inc., *et al.*, | : | Case No. 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

---

**FIRST DATA CORPORATION'S OBJECTION TO THE DEBTORS' PROPOSED ASSUMPTION OF DERIVATIVES CONTRACTS PURSUANT TO THE CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

First Data Corporation ("First Data"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the proposed assumption by the above captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant to Sections 11.1 and 11.2 of the Debtors' Third Amended Joint Chapter 11 Plan, of derivatives contracts between First Data and Lehman Brothers Special Finance, Inc. ("LBSF"). In support of its Objection, First Data, states as follows:

I.   **RELEVANT BACKGROUND**

   A.   *Termination of the Swap Transaction*

   1.   On October 8, 2007, First Data and LBSF entered into that certain ISDA Master Agreement (as amended, supplemented or otherwise modified from time to time, and

7882688v.4

including all annexes, schedules, exhibits, confirmations and any related agreements and other documents, collectively, the "ISDA Master Agreement"). Pursuant to the ISDA Master Agreement, First Data and LBSF entered into one interest rate swap transaction confirmed in a letter agreement dated the same day (the "Swap Transaction").

2. On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its affiliates, commenced the above-captioned chapter 11 cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 3, 2008, LBSF commenced its chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

3. On October 29, 2008, pursuant to the terms of the ISDA Master Agreement, First Data delivered a notice (the "Default & Calculation Notice") to LBSF specifying the occurrence of an event of default under Section 5(a)(vii) of the ISDA Master Agreement (the "Event of Default") resulting from the commencement of LBSF's chapter 11 case, and designating October 29, 2008 as the Early Termination Date,[1] thereby terminating the Swap Transaction under the ISDA Master Agreement as of such Early Termination Date.

4. The Default & Calculation Notice also provided LBSF with notice of First Data's calculation of the settlement amount resulting from the Event of Default and the early termination of the sole outstanding Swap Transaction in accordance with the methodologies set forth in Section 6 in the ISDA Master Agreement. As set forth in the Default & Calculation Notice, First Data calculated an amount owing to LBSF (the "Early Termination Payment") and on October 29, 2008, First Data paid such Early Termination Payment to LBSF by wire transfer.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the ISDA Master Agreement.

1

B.  *ADR and Mediation Process*

5. On May 11, 2011, LBSF commenced an alternative dispute resolution process by serving on First Data a Derivatives ADR Notice numbered 205 (the "Derivatives ADR Notice") pursuant to this Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts [Docket No. 5207] (the "ADR Order"). On June 24, 2011, First Data served on LBSF its response to the Derivatives ADR Notice (the "ADR Response"), and on July 25, 2011, LBSF served on First Data its reply to the ADR Response. On September 26, 2011, having not reached a resolution through the ADR notice pleadings, LBSF referred the dispute to mediation. The date for mediation has not been set.

C.  *LBSF Seeks the Assumption of Derivatives Contracts*

6. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed their Third Amended Joint Chapter 11 Plan (the "Plan"). On September 1, 2011, this Court approved the Debtors' Disclosure Statement for the Plan and scheduled the hearing for confirmation of the Plan to be held at 10:00 a.m. on December 6, 2011.

7. On October 25, 2011, the Debtors filed their plan supplement to the Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivatives contracts as contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Plan (the "Confirmation Order"). Exhibit 2 of the Plan Supplement does not specify the title of any derivatives contract between First Data and LBSF. The notes set forth on the cover of Exhibit 2 provide that unless a specific derivatives contract is noted for a specific

2

counterparty, the Debtors intend to assume all derivatives contracts with each counterparty set forth on Exhibit 2, Part A. Accordingly, although unclear from the Debtors' Exhibit 2, it appears that the Debtors are seeking to assume both the Swap Transaction and the ISDA Master Agreement (First Data has no other derivatives contracts with LBSF). Because of the sheer lack of information regarding the Debtors' intentions, First Data is compelled to file this Objection.[2]

II. **OBJECTION**

    A.    <u>The Swap Transaction Cannot be Assumed</u>

    8.    If LBSF is seeking to assume the Swap Transaction, such assumption must be denied because First Data terminated the Swap Transaction more than three years ago, rendering the Swap Transaction non-executory and, thus, non-assumable under section 365 of the Bankruptcy Code. Section 365 of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts in the Second Circuit have defined the term "executory contract" by reference to Professor Vern Countryman's definition, which provides that an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." <u>See</u> <u>In re The Penn Traffic Company, et al.</u>, 524 F.3d 373, 379 (2d Cir. 2008)(citing Vern Countryman, <u>Executory Contracts in Bankruptcy: Part I</u>, 57 Minn. L.Rev. 439, 460 (1973).

    9.    Courts in the Second Circuit consistently have held that section 365 of the Bankruptcy Code applies only if the contract or lease is in existence at the commencement of the

---

[2] Counsel for First Data reached out to counsel for the Debtors for further clarity, and while additional general information was provided, the Debtors were unable to provide specific clarity as to their intentions with First Data derivative contracts. Counsel for First Data continues to be engaged in settlement discussions with counsel for the Debtors in an effort to consensually resolve the issues described in this Objection.

3

case. Where such contract or lease has expired by its own terms or has been terminated under applicable law, then there is nothing left for the debtor to assume or reject and section 365 of the Bankruptcy Code cannot apply. See In re Project Orange Associates, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); see also Bell V. The Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996)(stating that "[o]nce a lease is terminated, however, nothing remains for a debtor to assume under section 365."). Thus, upon the termination of the Swap Transaction three years ago, such agreement no longer constituted an executory contract and, accordingly, the Swap Transaction cannot be assumed pursuant to section 365 of the Bankruptcy Code.

10. The Swap Transaction is a "swap agreement" that was properly terminated pursuant to section 560 of the Bankruptcy Code due to the Debtors' bankruptcy filing over three years ago. The Swap Transaction is a "swap agreement" as that term is defined under section 101(53B) of the Bankruptcy Code; First Data, as an entity that had an outstanding swap agreement with LBSF prior to the commencement of its bankruptcy case, is a "swap participant" afforded all of the safe harbor protections under the Bankruptcy Code, including, but not limited to, under sections 362(b)(17), 362(b)(27), 362(o), 546(g), 553, 560 and 561 of the Bankruptcy Code. The Debtors have not challenged that the Swap Transaction is a "swap agreement" or that First Data is a "swap participant". Accordingly, because the Swap Transaction was terminated by First Data in accordance with section 560 of the Bankruptcy Code, such Swap Transaction is not an executory contract and, therefore, the Debtors cannot assume the Swap Transaction under section 365 of the Bankruptcy Code.

      B.      <u>Any Dispute or Challenge to the Early Termination Payment Should be Determined Through the ADR Process and/or a Properly Briefed Hearing</u>

      11.      The Debtors listed First Data on Exhibit 2 to the Plan Supplement – which was filed at 11:30 p.m. on October 25, 2011 and buried as an exhibit in over 1000 pages of documents scheduled thereto – without specifying the title or date of any specific derivative contract to be assumed between First Data and LBSF. Although the Debtors have purported to serve First Data with notice of the proposed assumption and cure amount, First Data has not received such notice as of the date of the filing of this Objection. Moreover, although the Debtors are clearly aware of counsel representing First Data in the ADR process, the Debtors did not serve counsel for First Data with any notice of the assumption or cure amount. Putting aside the obvious due process issues, seeking mass contract assumption pursuant to the Plan confirmation process is simply not the proper procedure for disputing the calculation of the Early Termination Payment.

      12.      In its ADR Order, this Court approved procedures for an alternative dispute resolution in an attempt to promote judicial efficiency for the resolution of disputes between the Debtors and counterparties to derivatives contracts, which provided procedural protections to counterparties of derivatives contracts with the Debtors. As noted above, the dispute between LBSF and the Debtors regarding the calculation of the Early Termination Payment is presently proceeding through the ADR process, with mediation to be scheduled. Upon information and belief, the mediation is likely to be scheduled in January which may be after the confirmation of the Plan. Regardless of whether the proposed assumption of derivative contracts is for the assumption of the Swap Transactions, the ISDA Master Agreement or some other unidentified derivative contracts between First Data and LBSF, such proposed assumption should not be used as a substitution for, or in any way affect, the ADR process currently pending

between First Data and LBSF (or a full trial on the merits if the ADR process is unsuccessful). If the Swap Transaction and the ISDA Master Agreement were determined to be assumed pursuant to the Plan and Confirmation Order, then First Data's actions to terminate the Swap Transaction would arguably be undone and First Data irreparably harmed without any opportunity for First Data to propound discovery on the Debtors, provide evidence in support of its positions or fully brief the issues.

        C.     <u>Effect of Assumption of solely the ISDA Master Agreement</u>

        13.     Given the ambiguity of what the Debtors are seeking to assume pursuant to Exhibit 2 of the Plan Supplement, the Confirmation Order approving the assumption of the ISDA Master Agreement must clearly state that only the ISDA Master Agreement and not the Swap Transaction is being assumed. Moreover, to the extent that LBSF is seeking to assume solely the ISDA Master Agreement and not the Swap Transaction, then LBSF is required to assume the ISDA Master Agreement *cum onere*. See <u>AGV Productions, Inc., v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp.</u>, 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing <u>National Labor Relations Board v. Bildisco and Bildisco</u>, 465 U.S. 513, 531 (1984)(holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of it <u>benefits and burdens</u>.")(*emphasis added*); <u>see also</u> <u>In re Atlantic Computer Sys., Inc.</u>, 173 B.R. 844, 849 (S.D.N.Y. 1994)(noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves LBSF's assumption of solely the ISDA Master Agreement, then LBSF must assume the Master Agreement *cum onere* such that LBSF would not be able to "cherry-pick" which pieces of the ISDA Master Agreement it wishes to assume and would therefore be subject to all of the benefits and burdens under the ISDA Master Agreement pursuant to its express terms and provisions.

### D. The Debtors May Not Assume the ISDA Master Agreement Unless the Debtors Cure All Existing Defaults

14. Section 365 of the Bankruptcy Code requires that in order for a debtor to assume any executory contract, the debtor must cure all existing defaults and compensate the counter-party to the agreement for any pecuniary losses resulting from such defaults, or provide adequate assurance that the trustee will promptly cure and provide such compensation. 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996). The language of section 365(b)(1) is unequivocal that a party to an executory contract must be paid all amounts due under the contract before the contract may be assumed. In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996). Here, the Debtors must cure all known defaults and assume all obligations before the ISDA Master Agreement may be assumed.

15. At a minimum, LBSF, as the Defaulting Party under the ISDA Master Agreement, is required to pay all reasonable out-of-pocket expenses, including legal fees incurred by First Data in connection with the enforcement and protection of its rights under the ISDA Master Agreement. Given the lack of information and clarity of the Debtors' intentions and complex nature of swap transactions, no attempt has been made to identify cure amounts, and until the Debtors provide clarity, First Data reserves all of its rights for payment of cure prior to any assumption of the ISDA Master Agreement by LBSF.

### III. RESERVATION OF RIGHTS

16. First Data hereby reserves all of its rights and remedies under the ISDA Master Agreement, the Swap Transaction and all ancillary documents related thereto, including, without limitation, the Default & Calculation Notice, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute

7

a waiver of any of such rights or remedies. To the extent the Debtors seek to modify First Data's rights under the ISDA Master Agreement, the Swap Transaction and all ancillary documents related thereto, including, without limitation, the Default & Calculation Notice, through assumption, or through any other provision of the Plan or Confirmation Order, First Data asserts that such attempt must be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the Plan shall in any way limit, affect or modify: (i) any rights of First Data under the ISDA Master Agreement, the Swap Transaction and all ancillary documents related thereto, including, without limitation, the Default & Calculation Notice, or (ii) any defenses (including any right of setoff or recoupment) of First Data.

WHEREFORE, without in any way limiting its rights, First Data hereby respectfully requests that the Court (i) deny the Debtors' assumption of the Swap Transaction; (ii) find that LBSF may not assume the ISDA Master Agreement unless LBSF promptly cures and provides for compensation for all defaults under the ISDA Master Agreement; (iii) specifically provide in the Confirmation Order that LBSF will assume all obligations and liabilities under the ISDA Master Agreement; and (iv) grant such other relief that is just and proper.

Dated: November 14, 2011

        Respectfully submitted,

        SIDLEY AUSTIN LLP

        /s/ Lee S. Attanasio

        Lee S. Attanasio
        Alex R. Rovira
        787 Seventh Avenue
        New York, NY 10019
        Telephone: (212) 839-5300
        Facsimile: (212) 839-5599