Objection Deadline: November 14, 2011 at 4:00 p.m. (Eastern)
Hearing Date and Time: December 6, 2011 at 10:00 a.m. (Eastern)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Sarah N. Campbell

*Counsel to CNP Assurances and*
*Counsel to Anthracite Investments (Ireland) Plc.*
*with respect to Series 12, 18 and 27*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                           :
                                                                :   Chapter 11
                                                                :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,   :
                                                                :   Case No. 08-13555 (JMP)
Debtors.                                                        :
                                                                :   (Jointly Administered)
----------------------------------------------------------------x

**OBJECTION OF CNP ASSURANCES AND ANTRHACITE INVESTMENTS (IRELAND) PLC. TO ASSUMPTION OF DERIVATIVES CONTRACTS AS SET FORTH IN THE NOTICE OF PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

CNP Assurances ("CNP" or the "Noteholder") and Anthracite Investments (Ireland) Plc. ("Anthracite" or the "Issuer" and, together with CNP, the "Parties") in relation to each of Series 12, 18 and 27, by and through their undersigned counsel, respectfully submit this objection (the "Objection") to the Notice of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Section 1121 of the Bankruptcy Code, dated October 27, 2011 (the "Assumption and Cure Notice") in connection with the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") and the Plan Supplement,

dated October 25, 2011 (the "Plan Supplement").  In support of their Objection, the Parties respectfully states as follows:

**PRELIMINARY STATEMENT**

On or about October 27, 2011, the Debtors sent Assumption and Cure Notices to parties with which it had one or more contracts, including derivatives contracts, to notify those parties that the Debtors may assume their contracts in connection with the Plan.  These contracts are also identified in the Debtors' Plan Supplement.  Notwithstanding that Anthracite filed claims against Lehman Brothers Special Financing Inc. ("LBSF") based upon terminated derivative transactions with corresponding guarantee claims filed against Lehman Brothers Holdings Inc. ("LBHI"), each of the Assumption and Cure Notices with respect to the Series state that the cure amount is $0.

The derivatives contracts between the Debtors and Anthracite are not executory contracts that can be assumed under sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  All transactions under derivatives contracts Anthracite had with the Debtors have been terminated. The only act remaining to be performed is the payment of money which means, as a matter of long-standing precedent in this Court and elsewhere, the contracts are non-executory. The derivatives contracts are therefore outside the scope of section 365 of the Bankruptcy Code and cannot be assumed.

However, even if the derivatives contracts were deemed to be executory, as a prerequisite to their assumption pursuant to section 365 of the Bankruptcy Code, the Debtors must cure any existing defaults under the contracts and provide adequate assurance of future performance. Here, to cure any existing defaults, LBSF must pay in full any amounts owing to Anthracite as a result of the early termination of the derivative transactions in accordance with the provisions of

the derivatives contracts. Additionally, LBSF must provide adequate assurance of future performance including provision of substitute credit support acceptable to Anthracite or in a form at least equivalent to that provided by LBHI when the parties entered into the contract. The Debtor has failed to address the amounts asserted by Anthracite under the derivatives contracts or the manner in which LBSF, as a liquidating debtor, intends to provide adequate assurance of future performance. Unless and until the Debtors provide those assurances, they have not satisfied the requirements of section 365(a) and 1123(b)(2) of the Bankruptcy Code and cannot assume the contracts.

Accordingly, for the reasons more fully set forth below, the Parties respectfully request that this Court deny the Debtors' request to assume the derivatives contracts.

## BACKGROUND FACTS

1.  Anthracite is the issuer with respect to certain series of notes including, without limitation, Series 12 €28,750,000 French Inflation Linked Bonds Portfolio Notes due 2036 ("Series 12"), Series 18 €78,000,000 French Inflation Linked Bonds Portfolio Notes due 2037 ("Series 18"), and Series 27 French Inflation Linked Bonds Portfolio Notes due 2055 ("Series 27" and collectively, the "Series"), derivative contracts with respect to each of which are referenced on the Debtors' Plan Supplement.[1]

2.  Prior to commencement of the Debtors' chapter 11 bankruptcy cases, derivative agreements were entered into between LBSF and Anthracite pursuant to which various credit

---

[1] This Objection is limited to Series 12, 18 and 27, with respect to which CNP is the noteholder. This Objection is without prejudice to objections (if any) with respect to any other series for which Anthracite may be an issuer. Further, to the extent that the Plan Supplement may be further amended in advance of the confirmation hearing currently scheduled for December 6, 2011, the Parties reserve all rights to amend or supplement this Objection including, without limitation, to address derivative contracts in respect of any additional series.

- 3 -

default swaps, total return swaps and inflation rate swaps were entered into between the parties in respect of the Series. Specifically, Anthracite and LBSF entered into separate ISDA Master Agreements with respect to each of the Series, each dated as of November 3, 2003 (together with the Schedules, Credit Support Annexes and confirmations setting forth terms and conditions for particular transactions thereunder and related agreements, the "Swap Agreements").

3. On September 15, 2008, and at various dates thereafter, LBHI and certain of its affiliates, including LBSF (LBHI, together with its affiliated chapter 11 debtors, including LBSF, the "Debtors") filed a voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. The Debtors' chapter 11 cases are being jointly administered in this Court.

4. The commencement of voluntary bankruptcy proceedings constituted an Event of Default under the Swap Agreements following which Anthracite, as the non-defaulting party, terminated all the transactions under the Swap Agreements and termination payments thereunder were calculated. On September 21, 2009, pursuant to the Bar Date Order,[2] Anthracite timely filed claims in respect of the Swap Agreements for each of the Series against LBSF as well as corresponding guarantee claims against LBHI as follows: (i) claim numbers 20324 and 20325, respectively, each in the amount of $13,115,693.67 (plus interest, fees and costs) in respect of Series 12; (ii) claim numbers 20326 and 20327, respectively, each in the amount of $32,723,011.81 (plus interest, fees and costs) in respect of Series 18; and (iii) claim numbers 20333 and 20329, respectively, in the amount of $62,657,178.81(plus interest, fees and costs) in

---

[2] On July 2, 2009, the Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

respect of Series 27, collectively, the "Claims".  Thereafter, supporting documentation was submitted in connection with completion of the Derivative Questionnaires (as defined in the Bar Date Order).

5. On or about September 1, 2011, the Debtors filed their Plan [Docket No. 19627], which provides for the rejection of all executory contracts not otherwise designated for assumption. *See*, sections 11.1 and 11.2 of the Plan.

6. On October 25, 2011, the Debtors filed the Plan Supplement [Docket No. 21254] which includes, as Exhibit 2, a Schedule of Executory Contracts and Unexpired Leases to Be Assumed Pursuant to Section 11.1 of the Plan.  Part A of Exhibit 2 to the Plan Supplement, entitled "Derivatives Contracts," purports to identify derivatives contracts the Debtors propose to assume.  The Plan Supplement identifies Anthracite as a Counterparty to various derivatives contracts proposed to be assumed, including derivatives contracts with respect to Series 12, 18 and 27 with LBSF as the counterparty.  The cure amount, as per the Assumption and Cure Notices, with respect to each Series is listed as $0.

**OBJECTIONS**

**A.    The Swap Agreements are Not Executory Contracts**

7. It is well settled that "where the only performance that remains is the payment of money, the contract will not be found to be executory." *In re Spectrum Information Technologies, Inc.*, 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996).  See also *In re C&S Grain Co.*, 47 F.3d 233, 237 (7th Cir. 1995); *In re Grayson-Robinson Stores, Inc.*, 321 F.2d 500, 502 (2d Cir. 1963); *In re Chateaugay Corp.*, 102 B.R. 335, 347 (Bankr. S.D.N.Y. 1989).

- 5 -

8.  As noted above, following the commencement of these cases, Anthracite terminated all the transactions under the Swap Agreements as permitted under sections 362(b)(17) and 560 of the Bankruptcy Code and delivered to LBSF a calculation of the amounts owing thereunder. As a result, with respect to each of the Swap Agreements, the only performance remaining is the payment of money. Accordingly, each Swap Agreement is not executory and cannot be assumed. To the extent that this Court's prior Memorandum Decision Granting Motion for Summary Judgment and Declaring Applicable Payment Priorities (the "BNY Decision")[3] cites to the decision of the Second Circuit in *Penn Traffic,*[4] the decision of the Second Circuit is distinguishable and does not support a finding that a contract is executory where the only outstanding obligation is payment by one party. At the time of the Penn Traffic Company's bankruptcy filing, obligations of both parties remained unperformed. *Id.* at 377 (COR had not reimbursed Penn Traffic for the construction costs nor had it leased the supermarket land parcel to Penn Traffic and Penn Traffic had not conveyed to COR the supermarket land parcel). The holding in *Penn Traffic* that the contract was executory was based on the outstanding obligations of both parties, not simply one party's outstanding obligation to make a payment.

B.  **The Debtors Cannot Provide Adequate Assurance of Future Performance**

9.  Even accepting, *arguendo*, that the Swap Agreements are executory contracts that can be assumed, sections 365(a) and 1123(b)(2) of the Bankruptcy Code nevertheless would

---

[3] The BNY Decision is reported at *Lehman Brothers Special Financing Inc. v BNY Corporate Services Limited (In re Lehman Brothers Holdings Inc.)*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010). In that decision, among other things, this Court stated that "outstanding obligations to make payments under the Swap Agreement constitute sufficient grounds to find that the contract in question is executory" *Id*. at 416.

[4] *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.),* 524 F.3d 373 (2d Cir. 2008).

require the Debtors to (i) cure, or provide adequate assurance that they will promptly cure, defaults; and (ii) provide adequate assurance of future performance as a condition to assuming the Swap Agreements. Related to the condition that the Debtors must provide adequate assurance of future performance is the requirement that the Debtors assume the Swap Agreements in their entirety and not in part. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). *See also Collier on Bankruptcy* at ¶365.03[1].

10.     With respect to the Swap Agreements, the Debtors propose a cure amount of $0. Anthracite has delivered to LBSF a calculation of amounts owing under the Swap Agreements as the non-defaulting party and timely filed proofs of claim in these cases.[5] As a prerequisite to assumption, the Debtors must cure, or give assurance that they will cure, all defaults and therefore must make provision for the payment of any amounts owing under the Swap Agreements.

11.     Additionally, LBSF cannot provide adequate assurance of future performance under the Swap Agreements, which are comprised of the ISDA Master, together with a Schedule and Credit Support Annex. Further, LBSF's obligations under the Swap Agreements were guaranteed by LBHI. In order for the Debtors to assume the Swap Agreements, they would have to, among other things, (i) provide credit support in the form of a creditworthy guaranty or other enhancement acceptable to Anthracite and (ii) demonstrate their financial wherewithal to perform all of their other obligations under all of the components of the Swap Agreements. In

---

[5]     A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). Section 502(b) provides, in pertinent part, that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the exceptions enumerated in section 502(b) applies. 11 U.S.C. §502(b); *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).

light of the Debtors' impending liquidation, they cannot provide adequate assurance of future performance.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Parties (i) object to the Debtors' proposed assumption of the Swap Agreements; (ii) request that the Court sustain the Parties' Objection and (iii) request that the Court grant the Parties such other and further relief as the Court may deem just and proper.

## RESERVATION OF RIGHTS

Because the Debtors have not identified all derivatives contracts they propose to assume in connection with the Series or may amend the Plan Supplement to include additional derivatives contracts in respect of additional series, the Parties reserve their rights to assert additional objections. By filing this Objection, the Parties do not consent to the personal jurisdiction of this Court and specifically reserve all rights to object to such jurisdiction.

Dated: New York, New York
November 14, 2011

Respectfully submitted,

CLIFFORD CHANCE US LLP

By: /s/ Jennifer C. DeMarco
Jennifer C. DeMarco
Sarah N. Campbell

31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375

*Counsel to CNP Assurances and*
*Counsel to Anthracite Investments (Ireland)*
*Plc. with respect to Series 12, 18 and 27*