Hearing Date: December 6, 2011 at 10:00 a.m.
Objections Due: Extended by Debtors to
November 14, 2011 at 4:00 p.m.

Michael G. Burke
Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for American Municipal Power, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
In re:

Lehman Brothers Holdings Inc., *et. al*.

                Debtors.

------------------------------------------------------------- x

Chapter 11 Case No:

08-13555 (JMP)

(Jointly Administered)

### OBJECTION OF AMERICAN MUNICIPAL POWER, INC. TO PROPOSED ASSUMPTION OF DERIVATIVES AGREEMENT PURSUANT TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

American Municipal Power, Inc. ("AMP"), by its undersigned attorneys, hereby submits this objection to the Proposed Assumption of Derivatives Agreement Pursuant To The Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Docket No. 19627] (as may be modified from time to time, the "Amended Plan"), and respectfully states as follows:

### RELEVANT BACKGROUND

1. On April 25, 2010, Lehman Brother Commodities Services Inc. ("LBCS") and AMP entered into a Master Power Purchase and Sale Agreement (as amended, supplemented or otherwise modified from time to time, and including all annexes, schedules, exhibits,

NY1 7904693v.1

confirmations and any related agreements and other documents, collectively the "Master Agreement"). Pursuant to the Master Agreement, LBCS and AMP entered into a number of forward transactions for the purchase and sale and physical delivery of various energy-related products (the "Transactions"), which were documented and confirmed by the parties through written confirmations.

2. Both LBCS and AMP acknowledged in the Master Agreement that each of the Transactions constituted a "forward contract" as that term is defined under section 101(25) of the Bankruptcy Code, and that both parties acknowledged that each party is a "forward contract merchant" as that term is defined under section 101(26) of the Bankruptcy Code.

3. On September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI," and together with LBCS and the other affiliated debtors in chapter 11 cases pending in this Court, the "Debtors"), the guarantor of LBSF's obligations under the Master Agreement, filed a voluntary petition for relief under chapter 11, thereby triggering an event of default under Section 5.1 of the Master Agreement (an "Event of Default"), which permitted termination of all outstanding Transactions under the Master Agreement. In accordance with Section 5.4 of the Master Agreement, AMP delivered a "Termination Event Notice" to LBCS on September 19, 2008, which designated September 23, 2008 as the "Early Termination Date" with respect to all Transactions under the Master Agreement.

4. On October 3, 2008, LBCS filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

5. As a result of the termination of Transactions under the Master Agreement (and as more specifically provided in the Notice of Settlement Amounts) AMP provided to LBCS on or about October 7, 2008 (the "Notice of Settlement Amounts"), the following

2

liquidated amount was due and owing to AMP by LBCS as a Termination Payment (as defined in the Master Agreement): $4,110,530.74.

6. On October 25, 2011, the Debtors filed their plan supplement to the Amended Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivative contracts as contracts to be assumed by the Debtors, pursuant to Sections 11.1 and 11.2 of the Amended Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the Amended Plan (the "Assumed Contract List"). Although AMP is listed on Exhibit 2, Part A of the Assumed Contract List as a derivatives contract counterparty, no specific contract with AMP is described in such exhibit. The preamble to Exhibit 2 of the Assumed Contract List notes that "[u]nless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivatives contracts with each counterparty set forth on Exhibit 2, Part A."

7. In the Notice of Proposed Assumption of Executory Contract and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Sections 1121 of the Bankruptcy Code, dated October 27, 2011 (the "Notice of Assumption"), the Debtors list a cure amount of $0.00.

8. In accordance with the Notice of Assumption, AMP contacted the Debtors in an attempt to (i) ascertain what the Debtors were seeking to assume and (ii) consensually resolve any issues related to assumption. It is AMP's understanding that while the Debtors do not dispute that the Transaction were properly terminated,[1] the Debtors are seeking to assume the Master Agreement.[2]

---

[1] The Debtors and AMP have been engaged in confidential settlement discussions for several months regarding the Termination Payment owed to AMP based on the Debtors' default under the Master Agreement.

[2] The Debtors and AMP also discussed certain provisions in the Amended Plan, which the parties were able to

3

**OBJECTION**

A.  <u>The Terminated Transactions Cannot be Assumed</u>

9. Although it is AMP's understanding that the Debtors are not attempting to assume the terminated Transactions, to the extent there is any misunderstanding between the parties and the Debtors are seeking to assume the Transactions that were validly terminated (collectively, the "<u>Terminated Transactions</u>"), such request must be denied because AMP validly terminated the Terminated Transactions more than three years ago, rendering the Terminated Transactions non-executory and, thus, non-assumable under section 365 of the Bankruptcy Code. As noted above, AMP properly terminated the Terminated Transactions prior to LBCS commencing its chapter 11 case, and even if the LBHI and LBCS bankruptcies are determined to be one "singular event" by this Court,[3] section 556 of the Bankruptcy Code permitted the termination of the Terminated Transactions notwithstanding the commencement of the Debtors' chapter 11 cases. See 11 U.S.C. § 556; <u>Calpine Energy Services, L.P. v. Reliant Energy Electric Solutions, L.L.C.</u> (<u>In re Calpine Corp.</u>), Adv. Pro. No. 08-1251 (BRL) (Bankr. S.D.N.Y., May 7. 2009) ("section 556 of the Code allows a creditor to exercise a prepetition contractual right to terminate a forward contract based upon the debtor's filing of a bankruptcy petition"). As such, the Terminated Transactions are not executory contracts and may not be assumed pursuant to section 365 of the Bankruptcy Code. <u>See</u>, e.g., <u>In re Project Orange Associates, LLC</u>, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); <u>In re</u>

---

consensually resolve. To the extent that the next iteration of the Amended Plan do not contained these agreed-upon modifications, AMP reserves the right to object to the Amended Plan.

[3] <u>See</u> <u>Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited (In re Lehman Brothers Holdings Inc.)</u>, 422 B.R. 407 (Bankr. S.D.N.Y. 2010).

4

Westfield Apartments, L.L.C., No. 08-12573, 2010 WL 2179622, *4 (Bankr. S.D. Ga. Apr. 27, 2010) ("Even if a contract is executory at the time of the bankruptcy filing, the right to assume that contract under § 365 is extinguished if the contract expires by its own terms or otherwise ceases to exist." (citations omitted)).

      B.     Effect of Assumption of Master Agreement

      10.     To the extent that the Debtors are seeking to assume solely the Master Agreement, then they are required to assume the Master Agreement *cum onere*. See AGV Productions, Inc. v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp., 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984)(holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of it benefits and burdens."); see also In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994) (noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves the Debtors' assumption of solely the Master Agreement, then the Debtors must assume the Master Agreement *cum onere* and therefore be subject to all of the terms and provisions of the Master Agreement, including without limitation, the provisions that specify the method in which Settlement Amounts and Termination Payments are calculated and the designation of an Early Termination Date. See Master Agreement § 5.2.

      11.     Given the ambiguity of what the Debtors are seeking to assume pursuant to Exhibit 2 of the Plan Supplement, any order approving the assumption of the Master Agreement must clearly state that only the Master Agreement and not the Terminated Transactions are being assumed and that nothing affects the rights of AMP in connection with the Terminated Transactions or the Master Agreement.

      C.      <u>The Debtors May Not Assume the Master Agreement Unless the Debtors Cure All Existing Defaults</u>

      12.      Section 365 of the Bankruptcy Code requires that in order for a Debtor to assume and assign any executory contract, the debtor must cure all existing defaults and compensate the counter-party to the agreement for any pecuniary losses resulting from such defaults or provide adequate assurance that the trustee will promptly cure and provide such compensation. 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); <u>see</u> <u>In re Burger Boys, Inc.</u>, 94 F.3d 755 (2d Cir. 1996). Here, the Debtors must cure all known defaults, or provide adequate assurance that they will promptly cure, and assume all obligations before the Master Agreement may be assumed. As mentioned, the Termination Payment owed by LBCS to AMP, as calculated by AMP in accordance with the express and unequivocal terms of Section 5.2 of the Master Agreement, is $4,110,530.74. Thus, the Debtors must pay this amount as well as all Costs (as defined in the Master Agreement), which include "all reasonable attorneys' fees and expenses incurred by the Non-Defaulting Party in connection with the termination of a Transactions," or provide adequate assurance that they will promptly pay such amounts to AMP before the Master Agreement may be assumed.

      D.      <u>The Debtors Must Decide to Either Assume or Reject Before Plan Confirmation</u>

      13.      Under Section 365(d)(2) of the Bankruptcy Code, a debtor may assume or reject an executory contract "at any time before the confirmation of a plan." Section 1123(b)(2) also permits a debtor, "subject to section 365," to provide for the assumption or rejection of an executory contract under a chapter 11 plan. Here, while the Debtors have purported to assume the Master Agreement, the Debtors want to reserve the right to change their minds if they are unhappy with this Court's future determination. Specifically, the Plan Supplement provides:

6

> In the event that the cure amount or requirements for adequate assurance, *as ultimately determined either before or after the Effective Date*, are in excess of the amounts claimed by the Debtors, the Debtors reserve the right to amend Exhibit 2 to remove the applicable contract(s), in which case the applicable contract(s) shall be deemed rejected as of the Effective Date in accordance with Section 11.1 of the Plan.

Plan Supplement, Exh. 2 (emphasis added).

14.     The Debtors seemingly want to extend indefinitely the deadline to assume or reject the Master Agreement. Section 365(d)(2) and applicable case law, however, explicitly prohibit the Debtors from implementing this scheme. AMP submits that even if the Master Agreement is executory, the Debtors must decide whether to assume or reject the Master Agreement before the Amended Plan is confirmed. The Bankruptcy Code does not permit them to do otherwise.

## RESERVATION OF RIGHTS

15.     AMP reserves the right to supplement this objection to the hearing. AMP also hereby reserves all of its rights and remedies under the Master Agreement, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver of any of such rights, remedies and defenses (including, but not limited to, any rights of setoff or recoupment)

WHEREFORE, without in any way limiting its rights, AMP hereby respectfully requests that the Court (i) deny the Debtors' assumption of the Terminated Transactions; (ii) find that the Debtors may not assume Master Agreement unless they promptly cure by paying the Termination Payment and provide for compensation for all defaults under the Master Agreement; (iii) specifically provide in the Confirmation Order that the Debtors will assume all obligations and liabilities under the Master Agreement; and (iv) grant such other relief that is just and proper.

Dated: November 14, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Michael G. Burke
Michael G. Burke
Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for American Municipal Power, Inc.*