Hearing Date: December 6, 2011 at 10:00 a.m.
Objections Due: Extended by Debtors to
November 14, 2011 at 4:00 p.m.

Michael G. Burke
Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for the Government of Singapore Investment Corporation Pte Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No: |
| Lehman Brothers Holdings Inc., *et. al*. | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF GOVERNMENT OF SINGAPORE INVESTMENT CORPORATION PTE. LTD. TO PROPOSED ASSUMPTION OF DERIVATIVES AGREEMENT PURSUANT TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

The Government of Singapore Investment Corporation Pte Ltd. ("GIC"), by its undersigned attorneys, hereby submits this objection to the Proposed Assumption of Derivatives Agreement Pursuant To The Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Docket No. 19627] (as may be modified from time to time, the "Amended Plan"), and respectfully states as follows:

**RELEVANT BACKGROUND**

1. Prior to the commencement of these chapter 11 cases, GIC (either directly or through its agents on a disclosed agency basis) and Lehman Brothers Special Financing, Inc. ("LBSF") entered into three (3) 1992 Multicurrency-Cross Border ISDA Master Agreements (as

amended, supplemented or otherwise modified from time to time, and including all annexes, schedules, exhibits, confirmations and any related agreements and other documents, including, without limitation, the Credit Support Annexes related thereto, collectively, the "<u>ISDA Master Agreements</u>").

2.   Under the ISDA Master Agreements, the parties subsequently entered into numerous foreign exchange, currency options, interest rate and credit default swaps and other similar transactions (the "<u>Swap Transactions</u>").

3.   On September 15, 2008 (the "<u>Petition Date</u>"), Lehman Brothers Holdings, Inc. ("<u>LBHI</u>," and together with LBSF and the other affiliated debtors in chapter 11 cases pending in this Court, the "<u>Debtors</u>"), filed a voluntary petition for relief under chapter 11, thereby triggering an event of default under Section 5(a)(viii) of each of the ISDA Master Agreements (each an "<u>Event of Default</u>"), which permitted termination of all outstanding Swap Transactions under the ISDA Master Agreements. Accordingly, notices of termination were delivered to LBSF and termination of the Swap Agreements was carried out in accordance with the terms the ISDA Master Agreements.

4.   On October 3, 2008, LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

5.   As set forth in GIC's Notice of Calculation, dated February 2, 2009 (which was subsequently amended on March 3, 2009), as a result of termination and after the appropriate netting and setoff in accordance with the terms of the ISDA Master Agreements, GIC was owed $25,952,581.00 by LBSF, for which a proof of claim was timely filed. (Claim No. No. 23534).

6. On November 23, 2010, the Debtors served GIC with the ADR Notice No. 264 in accordance with the Order Approving the Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors under Derivative Contracts, dated September 17, 2009 (the "ADR Order"). GIC served its response to the ADR Notice on December 23, 2010 (the "GIC Response"), and the Debtors filed their Reply to GIC's Response to the ADR Notice on January 6, 2011. The parties are currently engaged in the ADR Process.[1]

7. On October 25, 2011, the Debtors filed their plan supplement to the Amended Plan [Dkt. No. 21254] (the "Plan Supplement"). Exhibit 2 of the Plan Supplement listed certain derivative contracts as contracts to be assumed by the Debtors, pursuant to Sections 11.1 and 11.2 of the Amended Plan and effective (subject to the occurrence of the Effective Date) upon entry of the order confirming the proposed Amended Plan (the "Assumed Contract List"). Although GIC is listed on Exhibit 2, Part A of the Assumed Contract List as a derivatives contract counterparty, no specific contract with AMP is described in such exhibit. The preamble to Exhibit 2 of the Assumed Contract List notes that "[u]nless a specific derivatives contract is noted for a specific counterparty, the Debtors intend to assume all derivatives contracts with each counterparty set forth on Exhibit 2, Part A."

8. Pursuant to the Notice of Proposed Assumption of Executory Contract and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Sections 1121 of the Bankruptcy Code, dated October 27, 2011 (the "Notice of Assumption"), the Debtors notified GIC that the cure amount was $0.00.

9. In accordance with the Notice of Assumption, GIC contacted the Debtors in an attempt to (i) ascertain what the Debtors were seeking to assume and (ii) consensually

---

[1] In light of the ADR Process, GIC and LBSF are in discussions to consensually resolve the issues raised in this objection. In light of the objection deadline, however, GIC files this objection to reserve of its rights.

3

resolve any issues related to assumption. It is GIC's understanding that while the Debtors do not dispute that the Swap Transactions were properly terminated, it appears that the Debtors are seeking to assume one or more of the underlying ISDA Master Agreements.

**OBJECTION**

    A.    <u>The Terminated Transactions Cannot be Assumed</u>

    10.    Although it is GIC's understanding that the Debtors are not attempting to assume the properly terminated Swap Transactions, to the extent there is any misunderstanding between the parties, and the Debtors are seeking to assume the Swap Transactions that were validly terminated (collectively, the "<u>Terminated Transactions</u>"), such request must be denied because Terminated Transactions were properly terminated, rendering the Terminated Transaction non-executory and, thus, non-assumable under section 365 of the Bankruptcy Code. As noted above, GIC properly terminated the Terminated Transactions prior to LBSF commencing its chapter 11 case, and even if the LBHI and LBSF bankruptcies were determined to be one "singular event,"[2] section 560 of the Bankruptcy Code permitted the termination of the Terminated Transactions notwithstanding the commencement of the Debtors' chapter 11 cases. 11 § U.S.C. 560. As such, the Terminated Transactions are not executory contracts and may not be assumed pursuant to section 365 of the Bankruptcy Code. <u>See</u>, <u>e.g.</u>, <u>In re Project Orange Associates</u>, LLC, 432 B.R. 89, 102 (Bankr. S.D.N.Y. 2010) (noting that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362 nor may it be assumed by the debtor under 11 U.S.C. §365."); <u>In re Westfield Apartments, L.L.C.</u>, No. 08-12573, 2010 WL 2179622, at *4 (Bankr. S.D. Ga. Apr. 27, 2010) ("Even if a contract is executory at the time of the bankruptcy filing, the

---

[2] <u>See Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited (In re Lehman Brothers Holdings Inc.)</u>, 422 B.R. 407 (Bankr. S.D.N.Y. 2010).

4

right to assume that contract under § 365 is extinguished if the contract expires by its own terms or otherwise ceases to exist." (citations omitted)).

    B.    <u>Effect of Assumption of ISDA Master Agreements</u>

11.    To the extent that LBSF is seeking to assume solely the ISDA Master Agreements, then LBSF is required to assume the ISDA Master Agreements *cum onere*. <u>See AGV Productions, Inc. v Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp.</u>, 115 F.Supp. 2d 378, 391 (S.D.N.Y. 2000) (citing <u>National Labor Relations Board v. Bildisco and Bildisco</u>, 465 U.S. 513, 531 (1984) (holding that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of it benefits and burdens."); <u>see</u> also <u>In re Atlantic Computer Sys., Inc.</u>, 173 B.R. 844, 849 (S.D.N.Y. 1994)(noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves LBSF's assumption of solely the ISDA Master Agreements, then LBSF must assume the ISDA Master Agreements *cum onere* and therefore be subject to all of the terms and provisions of the ISDA Master Agreements.

12.    Given the ambiguity of what the Debtors are seeking to assume pursuant to Exhibit 2 of the Plan Supplement, the Confirmation Order approving the assumption of the ISDA Master Agreements must clearly state that only the ISDA Master Agreements and not the Terminated Transactions are being assumed and that nothing affects the rights of GIC's rights in connection with the Terminated Transactions or the ISDA Master Agreements.

    C.    <u>The Debtors May Not Assume the ISDA Master Agreements Unless the Debtors Cure All Existing Defaults</u>

13.    Section 365 of the Bankruptcy Code requires that in order for a Debtor to assume and assign any executory contract, the debtor must cure all existing defaults and compensate the counter-party to the agreement for any pecuniary losses resulting from such

5

defaults or provide adequate assurance that the trustee will promptly cure and provide such compensation. 11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996). As mentioned, and as set for in GIC's proof of claim, the net amount owed to GIC by LBSF in connection with the ISDA Master Agreements is $25,952,581.00 (the "Correct Cure Amount"). Thus, the Debtors must either pay the Correct Cure Amount or provide adequate assurance that the Correct Cure Amount will be paid.

D. The Debtors Must Decide to Either Assume or Reject Before Plan Confirmation

14. Under Section 365(d)(2) of the Bankruptcy Code, a debtor may assume or reject an executory contract "at any time before the confirmation of a plan." Section 1123(b)(2) also permits a debtor, "subject to section 365," to provide for the assumption or rejection of an executory contract under a chapter 11 plan. Here, while the Debtors have purported to assume the ISDA Master Agreements, the Debtors want to reserve the right to change their minds if they are unhappy with this Court's future determination. Specifically, the Plan Supplement provides:

> In the event that the cure amount or requirements for adequate assurance, *as ultimately determined either before or after the Effective Date*, are in excess of the amounts claimed by the Debtors, the Debtors reserve the right to amend Exhibit 2 to remove the applicable contract(s), in which case the applicable contract(s) shall be deemed rejected as of the Effective Date in accordance with Section 11.1 of the Plan.

Plan Supplement, Exh. 2 (emphasis added).

15. The Debtors seemingly want to extend indefinitely the deadline to assume or reject the ISDA Master Agreements. Section 365(d)(2) and applicable case law, however, explicitly prohibit the Debtors from implementing this scheme. GIC submits that even if the ISDA Master Agreements are executory, the Debtors must decide whether to assume or reject

6

the ISDA Master Agreements before the Amended Plan is confirmed.  The Bankruptcy Code does not permit them to do otherwise.

## II. RESERVATION OF RIGHTS

16. GIC reserves the rights to supplement this objection and anytime prior to the hearing.  GIC also reserves all of its rights and remedies under the ISDA Master Agreements, the Swap Transactions and all ancillary documents related thereto, including, without limitation, the Notices of Default, Notices of Termination Calculation Notices, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver of any of such rights or remedies.  To the extent the Debtors seek to modify GICs rights under the ISDA Master Agreements, the Swap Transactions and all ancillary documents related thereto, through assumption, or through any other provision of the Plan or Confirmation Order, GIC asserts that such attempt must be denied and that the Plan, or Confirmation Order, should expressly provide that nothing in the Plan shall in any way limit, affect or modify: (i) any rights of GIC's rights under the ISDA Master Agreements, the Swap Transactions and all ancillary documents related thereto or (ii) any defenses (including any right of setoff or recoupment) of GIC.

17. WHEREFORE, without in any way limiting its rights, GIC hereby respectfully requests that the Court (i) deny the Debtors' assumption of the Terminated Transactions; (ii) find that the Debtors may not assume ISDA Master Agreements unless they promptly cure by paying the Correct Cure Amount and provide for compensation for all defaults under the ISDA Master Agreements no later than the Effective Date; (iii) specifically provide in the Confirmation Order that the Debtors will assume all obligations and liabilities under the ISDA Master Agreements; and (iv) grant such other relief that is just and proper.

Dated: November 10, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Alex R. Rovira
Michael G. Burke
Alex R. Rovira
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for the Government of
Singapore Investment Corporation Pte Ltd.*

# **EXHIBIT A**

- 1992 Multicurrency-Cross Border ISDA Master Agreement, dated as of December 18, 2001, between Lehman Brothers Special Financing Inc. (Party A) and the Government of Singapore Investment Corporation Pte Ltd. (Party B) (as amended, supplemented or otherwise modified from time to time, and including all annexes, schedules, exhibits, confirmations and any related agreements and other documents)

- 1992 Multicurrency-Cross Border ISDA Master Agreement, dated as of October 24, 2007, between Lehman Brothers Special Financing Inc. (Party A) and Diversified Credit Investments LLC, as agent for the Government of Singapore Investment Corporation Pte Ltd. (Party B) (as amended, supplemented or otherwise modified from time to time, and including all annexes, schedules, exhibits, confirmations and any related agreements and other documents)

- 1992 Multicurrency-Cross Border ISDA Master Agreement, dated as of August 20, 2007, between Lehman Brothers Special Financing Inc. (Party A) and Credit Agricole Asset Management Singapore Limited, as agent for the Government of Singapore Investment Corporation Pte Ltd. (Party B) (as amended, supplemented or otherwise modified from time to time, and including all annexes, schedules, exhibits, confirmations and any related agreements and other documents)