PREET BHARARA
United States Attorney for the
Southern District of New York
By:   JOSEPH N. CORDARO
      ROBERT WILLIAM YALEN
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2722/2745
Fax: (212) 637-2702
robert.yalen@usdoj.gov
joseph.cordaro@usdoj.gov

HEARING DATE:   December 6, 2011
TIME:           10:30 AM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re

LEHMAN BROTHERS HOLDINGS INC., et al.,

Debtors.

----------------------------------------------------------------x

Chapter 11

Case No. 08-13555 (jmp)

(Jointly Administered)

## THE UNITED STATES OF AMERICA'S
## LIMITED OBJECTION TO PLAN TRUST AGREEMENT

The United States of America (the "Government"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this limited objection to Debtors' request for approval of the Plan Trust Agreement, filed as Exhibit 3 to the Plan Supplement dated October 25, 2011 [Dkt No. 21254, at 630-48].

The Government objects to the Plan Trust Agreement to the extent that it purports to immunize (*i*) the Trustees appointed thereunder, (*ii*) the Trustees' professionals, and (*iii*) the Trustees' "agents," "representatives," and "designees" from liabilities they may owe to third parties (including the Government) as a result of their activities. To the extent that these

provisions release the liability of non-debtors to third parties such as the Government, they exceed the authority of the Court, and the Court lacks subject-matter jurisdiction to grant the requested relief.  Accordingly, insofar as it seeks to confer such immunity, the Plan Trust Agreement should not be approved.

## BACKGROUND

1.     At various times between September 15, 2008, and December 22, 2009, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 1101 *et seq.*, as amended (the "Code").

2.     On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), dated August 31, 2011 [Dkt No. 19627].  The Plan provides for the establishment of a Plan Trust to hold and vote LBHI's post-Effective Date stock.  *See* Plan, §§ 1.120-122, 4.17(b), 7.4.

3.     As a result of agreements between the Debtors and certain of their creditors, the Plan provides specific interested creditors control over most of the membership of the Plan Trust.  Specifically, the Plan provides that the initial Trustees of the Plan Trust shall be those individuals previously serving as members of the Director Selection Committee ("DSC").  Plan, § 7.4(a). The Plan further provides that most of the DSC members will be chosen by the debtors and certain creditors, and two of the DSC members will be the co-chairs of the Committee of Unsecured Creditors ("UCC"). (Hereinafter, these creditors with a right to select or serve as DSC Members will be referred to as the "Selecting Creditors").  Specifically, the Plan provides as follows:

- One DSC Member will be selected by the Debtors;

- One DSC Member will be selected by creditor Lehman Brothers Treasury Co. B.V. (by its co-bankruptcy trustee);

- One DSC Member will be selected by creditor Lehman Brothers Bankhaus AG (by its administrator);

- One DSC Member will be selected by the Opco Plan Proponents who are creditors that have agreed to the Plan Support Agreement ("PSA Creditors");

- One DSC Member will be selected by PSA creditors within the Ad Hoc Group of Lehman Brothers Creditors;

- Two DSC Members will be selected jointly by Carval Investors UK Limited, Davidson Kempner Capital Management LLC, Elliott Management Corporation, King Street Capital Management LP, Och-Ziff Capital, Management Group LLC, The Baupost Group LLC and Varde Partners LP, all PSA Creditors; and

- The final two DSC Members will be the co-chairs of the UCC.

*See* Plan, § 7.4(b).

4. Although the Plan does *not* purport to provide releases, exculpations, or other immunities from liability to the Trustees of the Plan Trust – other than those releases, exculpations and other protections the Plan makes available to so-called "Released Parties" and "PSA Creditors" generally[1] – the Plan Trust Agreement purports to provide additional immunities to the Trustees and numerous affiliated parties.

5. Specifically, Section 4.2 of the Plan Trust Agreement provides, in relevant part:

> None of the Trustees, their designees or professionals engaged by or on behalf of the Trustees, or any duly designated agent or representative of the Trustees shall be liable for the act or omission of any other agent or representative of the Trustees, nor shall any

---

[1] The Government has objected to the Plan's releases and other liability limiting provisions, to the extent that they relate to non-debtors. *See also Limited Objection of the United States of America to Debtors' Third Amended Joint Chapter 11 Plan* ("US Plan Objection"), dated November 4, 2011 [Dkt No. 19627].

-3-

>Trustee be liable for any action taken, suffered or omitted to be taken in his capacity as Trustee, unless it is ultimately determined by Final Order that such Person's acts or omissions constituted willful misconduct, gross negligence, or bad faith.  In no event shall a Trustee be liable or responsible for special, punitive, indirect, consequential or incidental loss or damages of any kind whatsoever to any Person (including, without limitation, lost profits), even if the Trustee has been advised of the likelihood of such loss or damage. The Trustees may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustees shall not be under any obligation to consult with his attorneys, accountants, financial advisors, or agents, and a determination not to do so shall not result in the imposition of liability on the Trustees or, as applicable, their designees, unless it is ultimately determined by Final Order that the Trustees' determination constituted willful misconduct, gross negligence, or bad faith. . . .

Plan Trust Agreement, § 4.2.

      6.      Thus, the Plan Trust Agreement would provide immunity from any liability (including liabilities owed to third parties such as the Government) for:

    (a)    "special, punitive, indirect, consequential or incidental loss or damages of any kind whatsoever to any Person[2] (including, without limitation, lost profits), even if the Trustee has been advised of the likelihood of such loss or damage,"[3]

    (b)    "any act or omission of any other agent or representative of the Trustees," except in the case of willful misconduct, gross negligence, or bad faith,

    (c)    "any action taken, suffered or omitted to be taken" by a Trustee, except in the case of willful misconduct, gross negligence, or bad faith, and

---

[2] The Plan Trust Agreement defines "Person" to mean "any individual, corporation, partnership, limited liability company, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Unit or other entity." Plan Trust Agreement, § 9.6.

[3] Unlike other clauses in Section 4.2, this language is not limited in the case of "willful misconduct, gross negligence, or bad faith," and so presumably is intended to protect Trustees from liability no matter how egregious their conduct.

  (d) "any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by" any of the following: "attorneys, accountants, financial advisors and agents.

Plan Trust Agreement, § 4.2.

  7. It is impossible to construct a list of each specific entity and individual that would receive protection pursuant to the Plan Trust Agreement, because of the broad categories of protected parties identified therein. In general terms, however, Section 4.2 of the Plan Trust Agreement would extend these protections to the following:

    i. The Trustees,

    ii. "[D]esignees"

    iii. "Professionals engaged by or on behalf of the Trustees,"

    iv. "Any duly designated agent or representative" of the Trustees.

Plan Trust Agreement, § 4.2.

  8. Section 4.2 provides further that the Plan Trust will indemnify the Trustees, their designees, agents, and representatives for any liabilities arising out of acts or omissions with respect to the Plan Trust or administration of the Plan, provided those acts or omissions did not constitute willful misconduct, gross negligence, or bad faith. The Plan Trust Agreement does not, however, specify that third parties that would have claims against the protected parties but for the immunities provided under the Plan Trust Agreement will now be permitted to bring those claims against the Plan Trust for payment pursuant to the indemnities, nor does it create a fund to ensure that moneys are available for payment of such claims following Debtors' anticipated liquidation.

# ARGUMENT

## THE PLAN TRUST AGREEMENT'S
## LIABILITY PROTECTIONS ARE IMPROPER

9. The Plan Trust Agreement's liability protection provisions should be rejected because they exceed the Court's authority under the Second Circuit's *Metromedia* decision[4] and because the Court lacks subject-matter jurisdiction to confer these immunities from liability.

**A.**   *Metromedia* **Requires Rejection of the Non-Debtor Liability Protections**

10. In *Metromedia*, the Second Circuit concluded that "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that *truly unusual circumstances render the release terms important to success of the plan*." *Metromedia*, 416 F.3d at 143 (emphasis added). The Court noted that whether such "truly unusual circumstances" exist requires a Court to focus on the following "considerations," *id.*: (1) whether "the estate received substantial consideration" for the release, *id.* at 142; (2) whether "the enjoined claims were 'channeled' to a settlement fund rather than extinguished," *id.* at 142; (3) whether "the enjoined claims would indirectly impact the debtor's reorganization by way of 'indemnity or contribution,'" *id.*; and whether "the plan otherwise provided for the full payment of the enjoined claims," *id.* The Court emphasized, however, that third-party releases may only be approved "in rare cases," *id.* at 141, and that a prerequisite for non-debtor releases is a "finding of circumstances that may be characterized as unique," *id.* at 142. *See generally, e.g.*, *In re Adelphia Communications Corp.*, 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007) (observing that *Metromedia* "now limits the use of third-party releases to situations that can be regarded as

---

[4] *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005).

-6-

unique"), *appeal dismissed*, 361 B.R. 337 (S.D.N.Y. 2007) *and* 371 B.R. 660 (S.D.N.Y. 2007), *dismissal of appeal affirmed*, 544 F.3d 420 (2d Cir. 2008).[5]

11.    The Plan Trust Agreement's non-debtor liability protections simply cannot be justified under the *Metromedia* standard because there is nothing "unique" about the circumstances giving rise to this request to relieve Trustees of liability.  Rather, these releases are simply one of many negotiated terms by which certain creditors have sought to maximize the return on their claims.  As the *Adelphia* court has explained:

> In the case of creditors, even those that are Settling Parties, they were merely striking the kinds of deals with respect to their shares of the pie that chapter 11 contemplates.  I don't doubt that in this case the Settling Parties engaged, as the Plan Proponents argue, in "tireless efforts" to come together to work out a global compromise aimed at resolving these cases.  But that's not unique.  It's something creditors have to do in every chapter 11 case, at the risk of destroying themselves (or their recoveries in the case) with their own quests for incremental recoveries.

*In re Adelphia Communications Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007); *In re Chemtura Corp.*, 439 B.R. 561, 611 (S.D.N.Y. 2010) ("[The parties] have made what in substance was the same argument I considered and rejected in Adelphia—that they should get [non-debtor releases] because of the benefits of the settlement, supposedly extraordinary efforts in reaching a deal, or give-ups as part of that deal.  Here, as in *Adelphia*, what we saw was simply what chapter 11 contemplates.").  Unlike in *Charter Communications*, where the Court approved non-debtor

---

[5] That the Debtors seek to obtain these non-debtor liability protections through the Plan Trust Agreement, rather than by including them in the Plan, is irrelevant.  As an initial matter, the Plan Trust Agreement is an adjunct to, and implementation of, the Plan, and not a free-standing agreement.  More importantly, however, even if the Plan Trust Agreement were considered to be separate from the Plan, third-party releases and similar protections contained therein would be subject to the same limitations applicable to the Plan, because those limitations derive directly from the Court's limited authority over non-debtors.  *See, e.g.*, *Metromedia*, 416 F.3d at 142 (reviewing the Court's authority under Bankruptcy Code to release non-debtors).

releases demanded by an individual and his affiliates who made available "uniquely personal structuring benefits [where] no other party could stand in their shoes and achieve the same result," *In re Charter Communications*, 419 B.R. 221, 259 (Bankr. S.D.N.Y. 2009), *appeal dismissed*, 449 B.R. 14 (S.D.N.Y. 2011), the creditors in the present case play no such unique role. The proper reward for the creditors' efforts in the Plan process or the bankruptcy case is a Plan that maximizes their return or otherwise satisfies the requirements of the Code; it is not a release from potential liabilities owed to a third party.[6]

12. With the exception of the one Trustee chosen by the Debtors, the Trustees will be selected to serve first as members of the Director Selection Committee and then as Trustees by Selecting Creditors who bargained for the right to make these selections. To the extent that the Selecting Creditors believe that they will be unable to find individuals willing to serve as their designees on the Director Selection Committee and Plan Trust if such individuals faced a risk of personal liability, the Selecting Creditors should allay their designees' concerns by indemnifying them out of the Selecting Creditors' own funds. There is no basis for creditors to obtain the *benefits* of being a Selecting Creditor, but force third parties to pay the cost thereof by giving up potential liabilities the designee may owe those third parties. In any event, there is nothing "unique," within the meaning of *Metromedia*, about a trustee's desire to be immune from future liabilities, or a Selecting Creditor's desire to avoid the cost of fully indemnifying those liabilities.

---

[6] The Government does not object to these provisions to the limited extent that they consist of mutual releases and protections exchanged among the Debtors and the Selecting Creditors.

13. To the extent that the Debtors may ultimately claim that these immunities from liability are justifiable under *Metromedia* because the Selecting Creditors have insisted on them, that rationale for non-debtor protections has been squarely rejected as inconsistent with *Metromedia*'s admonition that such provision are permitted only in "rare cases." As the *Adelphia* Court held:

> Nor can I accept the notion that the releases pass muster under *Metromedia* because the Settling Parties elected to make them an element of their deal. . . . It would set the law on its head if parties could get around it by making a third party release a *sine qua non* of their deal, to establish a foundation for an argument that the injunction is essential to the reorganization, or even 'an important part' of the reorganization.

*In re Adelphia Communications Corp.*, 368 B.R. at 269.

14. Nor are these non-debtor protections saved by the fact that an indemnification provision is contained in the Plan Trust Agreement. Although *Metromedia* did note that one relevant consideration in deciding whether "unique circumstances" existed warranting non-debtor protections, was whether the barred third-party "claims would indirectly impact the debtor's reorganization 'by way of indemnity or contribution,'" *Metromedia*, 416 F.3d at 142, the Court certainly did not suggest that Debtors could deliberately create such an "impact" on reorganization simply by providing for indemnification in the same order providing the non-debtor protections. If this approach were permissible, releases could be justified in every case through a well-crafted agreement or proposed order. Far from this being the rule, indemnifications, standing alone, cannot support non-debtor releases without some other "unique" circumstances being present. *See id.* at 142 (requiring a "finding of circumstances that may be characterized as unique"); *cf. Charter Communications*, 419 B.R. at 259 (permitting non-

debtor releases where indemnifications existed *and* "uniquely personal structuring benefits" were being provided by the party demanding the benefits).[7]

15.   Moreover, although these provisions cover only post-petition activity, courts have squarely held that non-debtor releases are subject to the same *Metromedia* test regardless of whether they relate to pre-petition or post-petition conduct. As the *Adelphia* Court held:

> [T]hough without question it has long been the custom in the bankruptcy community to make distinctions between releases involving pre- and postpetition conduct, . . . after *Metromedia*, limitation to postpetition events, by itself, is insufficient to justify a third-party release.

*In re Adelphia Communications Corp.*, 368 B.R. at 267; *accord In re Motors Liquidation Co.*, 447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) (holding that "the limitations on third-party releases apply to both pre- and post-petition events"). Indeed, "every chapter 11 case, large or small, has a postpetition period. That is hardly unique." *In re Adelphia Communications Corp.*, 368 B.R. at 267.

16.   Further, even if Debtors were to assert that non-debtor releases are needed to avoid disruptive post-Confirmation litigation, such disputes are not extraordinary:

> [M]any large chapter 11 cases, though thankfully not all of them, have intercreditor bickering and threats, aimed at each other and at debtor board members and management, that give the targets of those threats a legitimate fear that they will be sued. But unfortunately, that can't be said to be unique, either.

*In re Adelphia Communications Corp.*, 368 B.R. at 267; *In re Motors Liquidation Co.*, 447 B.R. at 221 ("I well recognize how hard the Debtors, the Chapter 11 Fiduciaries, and their

---

[7] Indemnifications might also be a consideration supporting non-debtor releases where they served, essentially, to channel a third-party's claims from the released party to a fund created by the debtor to pays such claims. *See Metromedia*, 416 F.3d at 142. Here, however, the indemnifications do not clearly channel liabilities and do not provide for continued coverage of liabilities after the Debtors' likely liquidation.

-10-

professionals worked on this case, and how, with thousands of disappointed creditors and stockholders out there to second guess their actions, they would like to be protected for their good faith actions in maximizing value and bringing this case to a successful conclusion. But I'm constrained by existing law to place some limits on their protection.").

17. Nor does the Plan Trust Agreement's exclusion – in some circumstances – of willful misconduct, gross negligence or bad faith support approval. Even with such a carve-out, non-debtor releases must be scrutinized under *Metromedia* and should rejected if the circumstances justifying them are less than "unique." *See In re Motors Liquidation Co.*, 447 B.R. at 220 (non-debtor release rejected by court despite including carveout language for "willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), and ultra vires acts," as well as for certain violations of professional responsibility); *In re Adelphia Communications Corp.*, 368 B.R. at 264 n.21 (non-debtor releases rejected by *Adelphia* court included carve-out for "fraud or willful misconduct").

18. Accordingly, under *Metromedia*, the DSC Order's non-debtor protections are improper and should not be approved.

**B.    The Court Lacks Jurisdiction to Grant the Non-Debtor Protections**

19. Separate from the *Metromedia* test, a bankruptcy court's authority to release future liabilities is limited by the scope of the Court's jurisdiction. "[A] bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly address the *res* of the bankruptcy estate." *In re Johns-Manville Corp.* ("*Manville*"), 517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009), *jurisdictional*

*holding reaffirmed on remand, In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010); *see also In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010) (noting "jurisdictional limits *Manville* imposes on a bankruptcy court"). Where parties "make no claim against an asset of the bankruptcy estate, nor do their actions affect the estate," bankruptcy courts lack jurisdiction to enjoin a claim. *Manville*, 517 F.3d at 65; *see In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (no jurisdiction to enjoin matter that does "not affect property of the estate or the administration of the estate"). In this analysis, "[t]he question is not whether the court has jurisdiction over the settlement [containing the non-debtor releases] but whether it has jurisdiction over the attempts to enjoin the creditors' unasserted claims against the third party." *In re Dreier LLP*, 429 B.R. at 132.[8]

20. Here, the Plan Trust Agreement's non-debtor protections on their face extend to potential claims by third parties against creditors that relate neither to the property of the estate nor the administration of the estate. The non-debtor protections – covering (*i*) "special, punitive, indirect, consequential or incidental loss or damages of any kind whatsoever" (*ii*) "any act or omission of any other agent or representative of the Trustees" except in the case of willful misconduct, gross negligence, or bad faith, (*iii*) "any action taken, suffered or omitted to be taken" by a Trustee, except in the case of willful misconduct, gross negligence, or bad faith, and (*iv*) "any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions" of attorneys, accountants, financial advisors and agents" – are not limited to cases

---

[8] This jurisdictional limitation is not limited to the context of Plan releases. *In re Dreier LLP*, 429 B.R. at 132 ("Although the case law discussed above dealt with plan injunctions, the same jurisdictional principles apply to injunctions required by non-plan settlements.").

where enforcement of those liabilities would affect the estate's property or administration. Plan Trust Agreement, § 4.2.

21.    Aside from this general limitation on the Court's jurisdiction to enjoin third-party claims, particular claims of interest to the Government are subject to jurisdictional limitations. For example, courts lack authority under most circumstances to "restrain[] the assessment or collection of any tax," 26 U.S.C. § 7421, and the grant of authority in 11 U.S.C. § 505 for this Court to determine tax liability is limited only to *debtors*' tax liability, *see Brandt-Airflex Corp. v. Long Island Trust Co. (In re Brandt-Airflex Corp.)*, 843 F.2d 90, 96 (2d Cir. 1988) (holding that 11 U.S.C. § 505 does not apply to the tax liability of non-debtors). Likewise, environmental laws limit judicial jurisdiction over various matters. *See* 42 U.S.C. § 9613(h) (depriving courts of jurisdiction over pre-enforcement environmental disputes). The limitations of liability in the proposed Plan Trust Agreement do not contain any limits excluding such matters, in the event they arise, because of the Court's lack of jurisdiction.

22.    Accordingly, the Court should not approve the Plan Trust Agreement because its provisions purport to affect liabilities beyond this Court's jurisdiction.[9]

---

[9] Additionally, as noted above, the Plan Trust Agreement describes the Trustees as being nominated in a representative capacity and "not in his [or her] individual or personal capacity." Plan Trust Agreement (introductory paragraph). For the reasons discussed above, this Court should not approve this language regarding the Trustees' representative capacity to the extent that such approval amounts to judicially imposed limitation on liability to third parties. Accordingly, the Court should deny approval to the Plan Trust Agreement to the extent that it seeks such a judicially imposed limitation.

## CONCLUSION

23. For the foregoing reasons, the Government respectfully objects to the Plan Trust Agreement and requests that the Court not approve the Plan Trust Agreement to the extent that it seeks to immunize non-debtors from potential liabilities to third parties.

24. For these reasons, the Government respectfully requests that the Court strike the language in Section 4.2 of the Plan Trust Agreement providing for the protections from liability and add the following additional language to the Order approving the Plan Trust Agreement:

> Notwithstanding anything to the contrary here, this Order shall not provide to any person or entity any limitation, exculpation, release, discharge, or preclusion of, or any immunity from or injunction against, (*i*) any liability or other obligation owed by such person or entity to a person or entity other than the Debtors, (*ii*) or any claim, cause of action, or other right held by a person or entity other than the Debtors.

Dated: November 15, 2011
New York, New York

                                                Respectfully submitted,

                                                PREET BHARARA
                                                United States Attorney for the
                                                Southern District of New York
                                                Attorney for the United States of America

By:   /s/ Robert William Yalen
        JOSEPH N. CORDARO
        ROBERT WILLIAM YALEN
        Assistant United States Attorneys
        86 Chambers Street
        New York, New York 10007
        Tel.: (212) 637-2722/2745
        Fax: (212) 637-2702
        robert.yalen@usdoj.gov
        joseph.cordaro@usdoj.gov