# APPENDIX 1

## SECURITIES SPECIFIED BY OBJECTORS

| Security | Allegations in Objection | JPMorgan Response |
|---|---|---|
| Applebees bonds | JPMorgan sold to a third party at a commercially unreasonable price (Objection ¶ 49). | As of February 2008, Lehman had a $2.1 billion position in Applebees/IHOP bonds that it tried to liquidate throughout 2008, including $600 million of the CUSIP referred to in the Objection. Lehman's marks on Applebees bonds dropped continuously through 2008, Lehman's own sales of Applebees bonds during 2008 were substantially below its own marks, and Applebees' stock price continued to fall steeply during the relevant period. Pre-Failure Marks were not representative of realizable value. JPMorgan's sale of this large, illiquid position was at fair market value. |
| AMD bond | JPMorgan sold to a third party and to itself at a commercially unreasonable price (Objection ¶ 50 n. 44). | According to contemporaneous accounts in the Associated Press, AMD had dwindling cash reserves at "dangerous levels," and its "lifeline" loan was from Lehman. This position was 13% of the entire 144A issue. Prior to September 14, 2008, this bond was not eligible for the PDCF; thereafter, Lehman financed the bond in the PDCF with a margin requirement of 120%. Pre-Failure Marks were not representative of realizable value. JPMorgan's sales of this large, illiquid position were at fair market value. |
| JPMCC 06-FL1 Trust bonds | JPMorgan acquired three illiquid bonds without showing them to other potential buyers for strategic purposes related to existing holdings (Objection ¶ 58). | Objectors' allegation is an unfair and unsupported interpretation of the underlying trade documents. In this case, JPMorgan had already been offering other tranches in this particular CMBS structure without success. The Tassimo sale price was based on offered prices that had not |

| | | |
|---|---|---|
| | | been accepted by purchasers and on the price at which another tranche had recently been sold. |
| CMO Bid List and Treasury Bid List | JPMorgan distribution of bid lists to three and two potential purchasers, respectively, was commercially unreasonable private sale and "highly unlikely" to have yielded the best price available (Objection ¶¶ 60-61). | Distribution of bid lists for certain securities was limited to avoid predatory trading and avoid perception of distressed liquidation. The prices at which JPMorgan sold the U.S. Treasury securities were at or near widely distributed market prices. |
| Fannie Mae bond (CUSIP 313586RC5) and other transactions | JPMorgan purchased 13 securities and then resold them at a "profit" within days (Objection ¶¶ 63-64). | Some resales by JPMorgan generated "profits," while others generated losses. It is to be expected that there will be numerous instances of profits and losses in resales of hundreds of securities purchased, particularly in volatile markets. Fannie Mae bond, which accounted for approximately two-thirds of so-called "profit," was a zero-coupon subordinated illiquid instrument with volatile pricing in the wake of the Fannie Mae conservatorship, and would likely have had no value if Fannie Mae were converted to a receivership, a risk that JPMorgan took on by buying in the bond. |
| Georgetown University (CUSIP 254839UE1) | JPMorgan purchased at a below-market price and made a profit when the bond was called 9 months later (Objection ¶ 66). | This was an illiquid auction-rate municipal bond with an unfavorable formulaic maximum interest rate, and it had no assurance of payment or prospect of liquidity. JPMorgan purchased the security at its fair market value and held most of the position for almost a year at an unfavorable interest rate. |
| AIG Matched Funding Corp. bond | JPMorgan realized a profit on the purchase of this bond when it was paid at par (Objection ¶ 67). | This was a large ($50 million principal amount) position, without trading history, in an illiquid market, with a high-profile risky issuer. There existed substantial risk that AIG would fail after Lehman was allowed to fail. This bond was financed in the PDCF with 120% margin, and was |

| | | |
|---|---|---|
| | | priced by IDC on September 17, 2008, at 60% of par. JPMorgan lost substantial sums on other purchases of high-yield corporate debt. |
| Bundled CMO and ABS sales | In late October and November 2008, JPM purchased four groups of CMOs and ABS at "fire sale prices" in commercially unreasonable sales (Objection ¶¶ 68-69). | JPMorgan sold these securities in parcels in a commercially reasonable manner. These securities were principally illiquid subordinate or mezzanine instruments, with little trading history, from sponsors such as SASCO, American Home Mortgage, Lehman, and Washington Mutual. The Pre-Failure Marks for these securities were stale and based on unreliable model prices. In addition, more than half of the securities were based on Lehman's own unrealistic marks. The par values cited in the Objection are wholly unrepresentative of realizable values. |
| Mobile Satellite Ventures (now SkyTerra) bond | JPMorgan sold to a third party and to itself at a commercially unreasonable price (Objection ¶ 50). | This was a large, illiquid position with little trading history. JPMorgan's sales of this large, illiquid position were at fair market value. |

3