# EXHIBIT F

# GUARANTY

**GUARANTY** dated as of September 9, 2008 made by the undersigned (the "Guarantor") in favor of JPMORGAN CHASE BANK, N.A. and its affiliates, subsidiaries, successors and assigns (hereinafter, collectively and individually as the context may require, the "Bank"). This Guaranty shall be in addition to and does not replace that certain Guaranty dated August 26, 2008, made by the undersigned in favor of JPMorgan Chase Bank, N.A.

**PRELIMINARY STATEMENT**: The Guarantor and each of the direct or indirect subsidiaries of the Guarantor (collectively, with their respective successors, the "Borrowers"), desires to transact business and/or trade with and/or enter into derivative transactions with and/or to obtain credit, clearing advances, clearing loans or other financial accommodation from the Bank and to continue such business, trading, derivative activity and/or such extensions of credit, clearing advances, clearing loans or other financial accommodation and the Bank has requested that it receive the following guaranty of the undersigned before it will consider extending such credit. The Guarantor derives, and expects to continue to derive, substantial direct and indirect benefits from the business of the Borrowers and the credit, trading, derivative transactions, clearing advances, clearing loans and other financial accommodations provided by the Bank to the Borrowers.

**THEREFORE**, for good and valuable consideration and in order to induce the Bank from time to time, to extend or continue to extend credit, clearing advances, clearing loans or other financial accommodations to the Borrowers and/or to transact business, trade or enter into derivative transactions with the Borrowers (all of the foregoing extensions of credit, advances, loans, accommodations, business, derivative transactions and trading being the "Facilities" and any writing evidencing, supporting or securing a Facility, consisting of (i) any agreement between a Borrower and the Bank, including without limitation any ISDA Master Agreement, (ii) this Guaranty and (iii) the Security Agreement as of even date hereof (the "Security Agreement") and entered into by Guarantor for the benefit of the Bank, as each such writing may be amended, modified or supplemented from time to time being a "Facility Document";

Section 1. **Guaranty of Payment**. The Guarantor unconditionally and irrevocably guarantees to the Bank the punctual payment of all obligations and liabilities of the Borrowers to the Bank of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by the Bank by assignment or otherwise, whether matured or unmatured and whether absolute or contingent, when the same are due and/or due and payable, whether on demand, at stated maturity, by acceleration or otherwise, and whether for principal, interest, fees, expenses, indemnification or otherwise (all of the foregoing sums being the "Liabilities") and subject to the last two sentences of this Section 1. The Liabilities include, without limitation, interest accruing after the commencement of a case or proceeding under bankruptcy, insolvency or similar laws of any jurisdiction at the rate or rates provided in the Facility Documents, regardless of whether such interest is allowed or allowable as a claim in such case or proceeding. This Guaranty is a guaranty of payment and not of collection only. The Bank shall not be required to exhaust any right or remedy or take any action against the Borrowers or any other person or entity or any collateral. All moneys available to the Bank for application in payment or reduction of the Liabilities may be applied by the Bank to the payment or reduction of such of the Liabilities as the Bank may elect in

its sole discretion and in such manner and in such amounts and at such time or times as it may see fit. The Guarantor agrees that, as between the Guarantor and the Bank, the Liabilities may be declared to be due and payable for the purposes of this Guaranty notwithstanding any stay, injunction or other prohibition which may prevent, delay or vitiate any declaration as regards the Borrowers and that in the event of a declaration or attempted declaration, the Liabilities shall immediately become due and payable by the Guarantor for the purposes of this Guaranty. The Guarantor's maximum liability under this Guaranty shall be THREE BILLION DOLLARS ($3,000,000,000) or such greater amount that the Bank has requested from time to time as further security in support of this Guaranty. Notwithstanding the foregoing, the Guarantor may upon three written days notice to the Bank transfer any Security (as defined in the Security Agreement), provided that the Guarantor shall not transfer any such Security if the Bank has exercised or been stayed or otherwise prohibited from exercising any of its rights under this Guaranty or the Security Agreement or in the event any default (as such term is defined in the Security Agreement) has occurred and is continuing, in any such case, prior to the end of the three day notice period.

Section 2. **Guaranty Absolute**. The Guarantor guarantees that the Liabilities shall be paid strictly in accordance with the terms of the Facilities and any Facility Documents. The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of: (a) any change in the time, manner or place of payment of, or in any other term of, all or any of the Facilities, the Facility Documents or Liabilities, or any other amendment or waiver of or any consent to departure from any of the terms of any Facility, Facility Document or Liability including, without limitation, any increase or decrease in the rate of interest thereon; (b) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or any exchange, release or non-perfection of any collateral, for all or any of the Facilities, Facility Documents or Liabilities; (c) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of any Facility, Facility Document or Liability; (d) without being limited by the foregoing, any lack of validity or enforceability of any Facility, Facility Document or Liability; and (e) any other setoff, defense, or counterclaim whatsoever (in any case, whether based on contract, tort or any other theory) or circumstance whatsoever with respect to the Liabilities, the Facilities or the Facility Documents contemplated thereby which might constitute a legal or equitable defense available to, or discharge of, the Borrowers or a guarantor; and the Guarantor irrevocably waives the right to assert such defenses, set-offs or counterclaims in any litigation or other proceeding relating to the Liabilities, the Facilities or the Facility Documents contemplated thereby.

Section 3. **Guaranty Irrevocable**. This Guaranty is a continuing guaranty of the payment of all Liabilities (absolute or contingent) now or hereafter existing and shall remain in full force and effect until the latest of (hereinafter the "Termination Date") (i) payment in full of all Liabilities and other amounts payable under this Guaranty; (ii) the termination of all of the Borrowers' accounts at the Bank; and (iii) the fulfillment of all obligations and commitments of the Borrowers under the Facilities and any Facility Documents.

2

Section 4. **Reinstatement**. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Liabilities arising or incurred prior to the Termination Date is rescinded or must otherwise be returned by the Bank on the insolvency, bankruptcy or reorganization of the Borrowers or otherwise (including, without limitation, on the grounds of preference or fraudulent transfer), all as though the payment had not been made.

Section 5. **Subrogation**. The Guarantor shall not exercise any rights which it may acquire by way of subrogation, by any payment made under this Guaranty or otherwise, until the Termination Date. If any amount is paid to the Guarantor on account of subrogation rights under this Guaranty at any time prior to the Termination Date, the amount shall be held in trust for the benefit of the Bank and shall be promptly paid to the Bank to be credited and applied to the Liabilities, whether matured or unmatured or absolute or contingent, in accordance with the terms of the Facilities. If the Guarantor makes payment to the Bank of all or any part of the Liabilities and the Termination Date shall have occurred, the Bank shall, at the Guarantor's request, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Liabilities resulting from the payment.

Section 6. **Subordination**. Without limiting the Bank's rights under any other agreement, any liabilities owed by the Borrowers to the Guarantor in connection with any extension of credit or financial accommodation by the Guarantor to or for the account of the Borrowers, including but not limited to interest accruing at the agreed contract rate after the commencement of a bankruptcy or similar case or proceeding (regardless of whether such interest is allowed or allowable as a claim in such case or proceeding), are hereby subordinated to the Liabilities, and such liabilities of the Borrowers to the Guarantor, if the Bank so requests, shall be collected, enforced and received by the Guarantor as trustee for the Bank and shall be paid over to the Bank on account of the Liabilities but without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 7. **Payments Generally**. All payments by the Guarantor shall be made in the manner, at the place and in the currency (the "Payment Currency") required by the Facility Documents; provided, however, that if the Payment Currency is other than U.S. dollars the Guarantor may, at its option (or, if for any reason whatsoever the Guarantor is unable to effect payments in the manner required by the Facility Documents, the Guarantor shall be obligated to) pay to the Bank at its office located at 277 Park Avenue, New York, New York 10017 the equivalent amount in U.S. dollars computed at the selling rate of the Bank, most recently in effect on or prior to the date the Liability becomes due or if such rate is unavailable, at a selling rate chosen by the Bank, for cable transfers of the Payment Currency to the place where the Liability is payable. In any case in which the Guarantor makes or is obligated to make payment in U.S. dollars, the Guarantor shall hold the Bank harmless from any loss incurred by the Bank arising from any change in the value of U.S. dollars in relation to the Payment Currency between the date the Liability becomes due and the date the Bank is actually able, following the conversion of the U.S. dollars paid by the Guarantor into the Payment Currency and remittance of such Payment Currency to the place where such Liability is payable, to apply such Payment Currency to such Liability.

Section 8. [Intentionally Omitted.]

Section 9. **Representations and Warranties**. The Guarantor represents and warrants that: (a) the execution, delivery and performance by the Guarantor under this Guaranty: (i) has been duly authorized by all necessary corporate action; (ii) does not, conflict with or violate any material agreement or instrument or any constitutive document, law, regulation or order applicable to the Guarantor; (iii) does not require the consent or approval of any person or entity, including but not limited to any governmental authority, or any filing or registration of any kind; and (iv) is the legal, valid and binding obligation of the Guarantor enforceable against the Guarantor in accordance with its terms except to the extent that enforcement may be limited by applicable bankruptcy, insolvency and other similar laws affecting creditor's rights generally; and (b) in executing and delivering this Guaranty, the Guarantor has (i) without reliance on the Bank or any information received from the Bank and based upon such documents and information it deems appropriate, made an independent investigation of the transactions contemplated hereby and the Borrowers, the Borrowers' business, assets, operations, prospects and condition, financial or otherwise, and any circumstances which may bear upon such transactions, the Borrowers or the obligations and risks undertaken herein with respect to the Liabilities; (ii) adequate means to obtain from the Borrowers on a continuing basis information concerning the Borrowers; (iii) has full and complete access to the Facility Documents and any other documents executed in connection with the Facility Documents; and (iv) not relied and will not rely upon any representations or warranties of the Bank not embodied herein or any acts heretofore or hereafter taken by the Bank (including but not limited to any review by the Bank of the affairs of the Borrowers). The Guarantor hereby further represents and warrants that the Guarantor owns (directly or indirectly) a substantial amount of the stock or other ownership interests of the Borrowers and is financially interested in its affairs.

Section 10. **Remedies Generally**. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law.

Section 11. **Setoff**. The Guarantor agrees that, in addition to (and without limitation of) any right of setoff, banker's lien or counterclaim the Bank may otherwise have, the Bank shall be entitled, at its option, to offset balances (general or special, time or demand, provisional or final) held by it for the account of the Guarantor at any of the offices of the Bank, J.P. Morgan Securities Inc., or any other affiliate, in U.S. dollars or in any other currency, against any amount payable by the Guarantor under this Guaranty which is not paid when due (regardless of whether such balances are then due to the Guarantor), in which case it shall promptly notify the Guarantor thereof; provided that the Bank's failure to give such notice shall not affect the validity thereof.

Section 12. **Formalities**. The Guarantor waives presentment, notice of dishonor, protest, notice of acceptance of this Guaranty, notice of creation, renewal, extension or accrual of any Liability and notice of any other kind and any other formality with respect to any of the Liabilities or this Guaranty. The Guarantor also waives the right to require the Bank to proceed first against the Borrowers upon the Liabilities before proceeding against the Guarantor hereunder.

Section 13. **Amendments and Waivers**. No amendment or waiver of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall be effective unless it is in writing and signed by the Bank, and then the waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No failure on the part of the Bank to exercise, and no delay in exercising, any right or remedy under this Guaranty shall operate as a waiver or preclude any other or further exercise thereof or the exercise of any other right or remedy.

Section 14. **Expenses**. The Guarantor shall reimburse the Bank on demand for all costs, expenses and charges (including without limitation the reasonable and documented fees and charges of external legal counsel for the Bank) incurred by the Bank in connection with the preparation, performance or enforcement of this Guaranty. The obligations of the Guarantor under this Section shall survive the termination of this Guaranty.

Section 15. **Assignment**. This Guaranty shall be binding on, and shall inure to the benefit of the Guarantor, the Bank and their respective successors and assigns; provided that the Guarantor may not assign or transfer its rights or obligations under this Guaranty.

Section 16. **Captions**. The headings and captions in this Guaranty are for convenience only and shall not affect the interpretation or construction of this Guaranty.

Section 17. **Governing Law, Etc.** THIS GUARANTY SHALL BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK. THE GUARANTOR CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK. SERVICE OF PROCESS BY THE BANK IN CONNECTION WITH ANY SUCH DISPUTE SHALL BE BINDING ON THE GUARANTOR IF SENT TO THE GUARANTOR BY REGISTERED MAIL AT THE ADDRESS SPECIFIED BELOW OR AS OTHERWISE SPECIFIED BY THE GUARANTOR FROM TIME TO TIME. THE GUARANTOR WAIVES ANY RIGHT THE GUARANTOR MAY HAVE TO JURY TRIAL IN ANY ACTION RELATED TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND FURTHER WAIVES ANY RIGHT TO INTERPOSE ANY COUNTERCLAIM RELATED TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY IN ANY SUCH ACTION. TO THE EXTENT THAT THE GUARANTOR HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER FROM SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OF A JUDGMENT, EXECUTION OR OTHERWISE), THE GUARANTOR HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS GUARANTY.

Section 18. **Integration; Effectiveness**. This Guaranty and the Facility Documents sets forth the entire understanding of the Guarantor and the Bank relating to the guarantee of the Liabilities and constitutes the entire contract between the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.; provided, however, that notwithstanding anything to

5

the contrary, this Guaranty shall not effect or impair any other Guaranty made by the Guarantor in support of any of the obligations or liabilities of the Borrowers with respect to or in connection with extensions of credit or facilities other than those related hereto. This Guaranty shall become effective when it shall have been executed and delivered by the Guarantor to the Bank. Delivery of an executed signature page of this Guaranty by telecopy shall be effective as delivery of a manually executed signature page of this Guaranty.

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed and delivered by its authorized officer as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Name: Paolo Tonucci

Vice President and Global Treasurer

Title:

Address: