# EXHIBIT I

EXECUTION COPY
**FOR SETTLEMENT PURPOSES ONLY**

LEHMAN BROTHERS HOLDINGS INC.
1271 Avenue of the Americas
New York, New York 10020

March 16, 2010

JPMorgan Chase Bank, N.A.
270 Park Avenue
New York, New York  10017

Re:    Lehman Brothers Holdings Inc., et al.–JPMorgan Chase Bank, N.A., et al.
       Collateral Disposition Agreement

Ladies and Gentlemen:

This is to confirm our Agreement as to the disposition of certain collateral security that is currently claimed and held by JPMorgan Chase Bank, N.A. ("JPMCB") or its affiliates or subsidiaries or related entities which are signatories hereto (JPMCB and each such entity, a "JPMC Entity" and, collectively, "JPMC") in connection with the claims that JPMC has asserted against Lehman Brothers Holdings Inc. ("LBHI") and its subsidiaries (LBHI, together with all of its subsidiaries, "Lehman"), including Lehman Brothers Inc. ("LBI"). LBHI and certain of its subsidiaries (LBHI, together with such subsidiaries, expressly excluding LBI, the "Debtors") have commenced cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). JPMCB has provided LBHI with copies of all proofs of claim filed by JPMC Entities against the Debtors and LBI, and has provided LBHI with certain additional information about the claims previously asserted by JPMC Entities against Lehman.  All of the claims of JPMC against Lehman, including, without limitation, any and all liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, known, unknown, pre-petition and post-petition rights to payment, are hereinafter referred to collectively as the "Claims." JPMC asserts that LBHI is a guarantor of all of the Claims.  JPMC asserts that the payment and satisfaction of the Claims (including the Excluded Claims, as defined herein) was and is secured by a pledge, mortgage, security interest or other lien (collectively, a "Lien") in, to or against certain property of Lehman (including the proceeds thereof, the "Collateral").  The defined term "Lien" shall include any interest of a JPMC Entity in any securities purported to have been purchased by it in a repurchase agreement, and such securities shall constitute "Collateral" for purposes of this Agreement; provided, however, that all parties reserve their rights as to the proper characterization of such interest and securities.

JPMC has advised the Debtors that, after giving effect to the application of Collateral (including from the receipt of proceeds received from the disposition of Collateral), exercise of alleged setoff rights, account activity, account adjustments and other payments and reductions of the Claims before the date hereof (the "Prior Payments"), the current outstanding amount of the Claims is no less than $7,679,488,724 (as the same shall be adjusted by agreement of JPMCB and LBHI on or before the Effective Date referred to below to reflect agreed

corrections, reconciliations and transactions after the date hereof, the "Designated Claims Balance"). Such amount does not include, among others, certain asserted contingent Claims, post-petition Claims and unliquidated Claims. Examples of such Claims include contingent Claims relating to letters of credit issued by a JPMC Entity and post-petition claims for interest to the extent not reflected in the Designated Claims Balance set forth above. JPMC has further advised the Debtors that it is currently holding (a) the cash Collateral, cash proceeds of securities Collateral and money market fund Collateral posted by the Debtors and LBI set forth on Annex A (including any cash proceeds of securities Collateral not reflected in Annex A but received by JPMC before the Effective Date referred to below and not applied, the "Cash Collateral"), and (b) the securities posted by the Debtors and LBI as Collateral, including such securities set forth on Annex B (including the principal, interest and other distributions received by JPMCB set forth on Annex B, but excluding any such securities sold before the Effective Date, the sale proceeds of which are included in the Cash Collateral, the "Securities Collateral"), which include securities that are largely illiquid. For the avoidance of doubt, the principal, interest and other distributions described in clause (b) of the immediately preceding sentence are Securities Collateral and not Cash Collateral. Annex A and Annex B shall be revised by agreement of JPMCB and LBHI on or before the Effective Date to reflect agreed corrections, reconciliations and transactions after the date hereof.

JPMC and the Debtors desire to enter into this Agreement (a) to reduce the incurrence of interest on the secured Claims (with respect to which Lehman expressly reserves all rights concerning the allowability, accuracy or enforceability of such interest calculation as provided by JPMC) by providing for the prompt application of the Cash Collateral to reduce the Designated Claims Balance and (b) to avoid the loss of potential value with respect to the Securities Collateral by providing for the Cash Payment (as defined below) without the need for JPMC to liquidate the Securities Collateral, all subject to and in accordance with the terms and conditions set forth below:

1.    Application of Cash Collateral.  Within five business days after the Effective Date (as defined below), each of the relevant JPMC Entities shall apply the Cash Collateral to payment of the Designated Claims Balance on a dollar-for-dollar basis. The amount of the Designated Claims Balance remaining unpaid after such application is $557,062,474 (as the same shall be adjusted by agreement of JPMCB and LBHI on or before the Effective Date to reflect agreed corrections, reconciliations and transactions after the date hereof, the "Unpaid Designated Claims Balance"). To the extent that the automatic stay and any other stays entered in the Debtors' chapter 11 cases are applicable to any actions expressly contemplated to be taken by JPMC pursuant to this Agreement, the entry of the Approval Order (as defined below) shall modify such stays to the extent necessary to permit JPMC to take such actions.

2.    Cash Payment.  Simultaneously with the application of the Cash Collateral as provided in Paragraph 1, LBHI shall pay JPMC, on behalf of itself and any other relevant JPMC Entities, the amount of the Unpaid Designated Claims Balance in immediately available funds (the "Cash Payment"). JPMCB and such JPMC Entities shall apply the Cash Payment to the Unpaid Designated Claims Balance. Within 10 business days after the Effective Date, JPMCB shall deliver to LBHI a report specifying in

reasonable detail the Claims against which any portions of the Cash Collateral and/or the Cash Payment are applied and the JPMC Entity applying such amounts.

      3.    <u>Subrogation and Assignment.</u>  (a) In consideration of (i) the Cash Payment made by LBHI with respect to Claims against LBI and other subsidiaries of LBHI, (ii) the application pursuant to Paragraph 1 of Cash Collateral posted by LBHI to the payment of Claims against LBI and other subsidiaries of LBHI, and (iii) Prior Payments of Collateral posted by LBHI to the payment of Claims against LBI and other subsidiaries of LBHI, simultaneously with the payment of the Cash Payment and as described in more detail in this Agreement:

      (1)    LBHI shall be subrogated to the claims of the relevant JPMC Entities against LBI and such other subsidiaries to the full extent of the payments made by LBHI or applied from its property (the "Subrogated Claims") to such Claims; and

      (2)    LBHI shall succeed to any and all alleged Liens of the relevant JPMC Entities against all of the Securities Collateral (in the same priorities as held by the relevant JPMC Entities), which Liens shall be assigned and transferred to LBHI by the relevant JPMC Entities and which Securities Collateral shall be assigned and transferred to LBHI by the relevant JPMC Entities.

      (b)  The parties agree that the Subrogated Claims shall not include any Claims (the "Excluded Claims") held by JPMC Entities against LBI and other subsidiaries of LBHI that have not been paid by LBHI or applied from LBHI's property, including, without limitation, contingent claims, unliquidated claims, claims against Lehman entities other than LBHI for which no claims are asserted against LBHI under a guaranty or otherwise and against which no assets of LBHI are applied, and any Claims arising after the date of this Agreement as a result of Recovered Payments (as defined below), post-petition accruals or otherwise. For the avoidance of doubt, the parties further agree that (x) Claims paid pursuant to Paragraph 5(b) shall constitute Subrogated Claims and not Excluded Claims, and (y) Subrogated Claims that are or become unsecured as a result of a Binding Determination shall thereafter constitute Excluded Claims and not Subrogated Claims to the extent of the Debtor Paid Claim Unsecured Amount (as defined below), if any, with respect to such Claims. For the avoidance of doubt, the Securities Collateral and the Cash Collateral shall not include the cash and securities (and the principal, interest and other distributions on such cash and securities) held in prime brokerage accounts nor the cash provided by the LBI trustee to JPMCB in substitution for certain of such securities (the "LBI Prime Brokerage Collateral"), and this Agreement transfers no interest in or to the LBI Prime Brokerage Collateral to the Debtors. As between the Debtors and JPMCB, JPMCB shall be entitled to continue to (i) hold the LBI Prime Brokerage Collateral to secure the Excluded Claims and (ii) litigate or enter into any settlement with respect to its disputed security interest (including, without limitation, a settlement that compromises or releases all or a portion of such security interest) without any involvement or consent by or from any of the Debtors (it being understood that Paragraph 6(c) is inapplicable to any such settlement or compromise). If (A) it is determined by a Binding Determination or any settlement or compromise between JPMCB and LBI of the kind described in clause (ii) of the immediately preceding

sentence that any of the LBI Prime Brokerage Collateral constitutes Collateral, (B) after such Binding Determination or the performance of such settlement or compromise, as the case may be, any of the LBI Prime Brokerage Collateral which has been so determined to constitute Collateral remains in the possession of JPMCB and has not been applied against the Claims, and (C) the Excluded Claims shall have been paid in full, then JPMCB shall transfer the Lien on such LBI Prime Brokerage Collateral to LBHI and, in connection therewith, transfer such LBI Prime Brokerage Collateral to LBHI.

(c) Simultaneously with the payment of the Cash Payment, each relevant JPMC Entity shall unconditionally and irrevocably transfer and assign to LBHI all of its right, title, interest in, or to, the Subrogated Claims, including, without limitation, the proofs of claim filed with respect to the Subrogated Claims in the proceeding commenced under the Securities Investor Protection Act of 1970 ("SIPA") as to LBI, Case #08-01420(JMP) SIPA, which proceeding is now pending in the Bankruptcy Court. The Claims transferred pursuant to this Paragraph 3 shall include all rights to receive all interest, penalties and fees, if any, which may be paid with respect to such Claims, together with voting and all other rights and benefits arising from, under or relating to any of the foregoing, and all cash, securities, instruments and other property which may be paid or issued by LBI or such other subsidiary in satisfaction of such Claims. The transfer of Claims, Liens and Collateral by each JPMC Entity to LBHI under this Agreement is on an "as is, where is" basis, without recourse, representations or warranties of any kind whatsoever, except that each JPMC Entity represents and warrants that (x) it has the full corporate or other entity power and authority to assign such Claims, Liens and Collateral to LBHI and has not assigned such Claims, Liens and Collateral to any other entity and (y) it has provided to LBHI complete and accurate information as of January 31, 2010 with respect to any principal, interest and other distributions on the Securities Collateral that were received by such JPMC Entity (it being understood that the sole remedy of LBHI and such JPMC Entity in the event that such information is incorrect shall be to promptly adjust the payments and remittances hereunder in accordance with the corrected information). Notwithstanding the subrogation and assignment of the Subrogated Claims and the transfer of the Securities Collateral and Liens to LBHI as provided in this Agreement, the JPMC Entities shall have rights as if they continued to be secured (or oversecured) creditors as set forth in this Agreement, including, without limitation, Paragraphs 3(b), 5(b) and 6 hereof; provided, that (i) such rights are subject to Lehman's reservation of its right to contest such claims and/or security as provided in this Agreement, and (ii) each JPMC Entity hereby waives, effective on the Effective Date, any right of consent that it may have, pursuant to any agreement by which it acquired any Lien or other interest in the Securities Collateral, with respect to any sale, disposition, disaggregation, modification or like transaction by LBHI, any other Debtor or any entity controlled by a Debtor with respect to the Securities Collateral, any assets underlying the Securities Collateral or any issuer of the Securities Collateral.

(d) As between the Debtors and JPMC, each JPMC Entity shall be entitled to retain each Excluded Claim (including any Claim which becomes an Excluded Claim) and all distributions and recoveries received thereon, including any recoveries on the Excluded Claims derived from the LBI Prime Brokerage Collateral. With respect to

any unsecured Excluded Claims held by a JPMC Entity against a Lehman entity that have not been disallowed by a Binding Determination and are guaranteed by LBHI, such JPMC Entity shall be entitled to receive payment in full of such unsecured Excluded Claims against such Lehman entity prior to any receipt or retention by LBHI of any recovery on (i) any unsecured Subrogated Claims against such Lehman entity acquired from such JPMC Entity or (ii) any unsecured reimbursement right or similar claim against such Lehman entity arising in favor of LBHI as a result of LBHI's payment to such JPMC Entity of any Subrogated Claims against such Lehman entity.

(e)  For the avoidance of doubt, the parties agree that all principal, interest, distributions on and other proceeds of the Collateral that have been received by any Debtor or non-Debtor entity controlled by a Debtor prior to the payment of the Cash Payment as provided in Paragraph 2 shall be retained by such Debtor or non-Debtor entity controlled by a Debtor free and clear of all Liens in favor of JPMC.  In addition, if any principal, interest or other distributions on the Securities Collateral is received by any JPMC Entity after the payment of the Cash Payment as provided in Paragraph 2, such JPMC Entity shall promptly remit such amount to the relevant Debtor or non-Debtor entity controlled by a Debtor.

(f)  In the event that, notwithstanding any of the other provisions of this Agreement, any Debtor receives any payment, distribution or other property which, in accordance with the provisions of this Agreement, should have been paid or transferred to a JPMC Entity, such Debtor shall hold such payment, distribution or other property in trust for such JPMC Entity and promptly pay or transfer such payment, distribution or other property to such JPMC Entity.  In the event that, notwithstanding any of the other provisions of this Agreement, any JPMC Entity receives any payment, distribution or other property which, in accordance with the provisions of this Agreement, should have been paid or transferred to a Debtor, such JPMC Entity shall hold such payment, distribution or other property in trust for such Debtor and promptly pay or transfer such payment, distribution or other property to such Debtor.

(g)  LBHI agrees to comply with the Uniform Commercial Code and other similar commercial laws, to the extent applicable, in disposing of the Securities Collateral.

4.     Further Assurances.  To the extent that any Securities Collateral, Lien, Subrogated Claims or other interest related thereto intended to be transferred is not validly transferred to LBHI simultaneously with the payment of the Cash Payment as described in Paragraph 3(a), each relevant JPMC Entity shall cooperate with LBHI, at LBHI's expense, to take all reasonable acts requested by LBHI to effectuate the transfer of the interest of such JPMC Entity in the Securities Collateral, the delivery of any certificated securities constituting Securities Collateral, and the assignment of the interest of such JPMC Entity in the Subrogated Claims, the Liens against the Securities Collateral and any other rights transferred pursuant to Paragraph 3 in accordance with applicable law, including, without limitation, the execution and delivery of all appropriate stock and bond powers and other evidences of transfer. Each relevant JPMC Entity also agrees to deliver to LBHI immediately after the Effective Date, at LBHI's expense, appropriate

notifications to the trustees of the Securities Collateral known as Fenway, Spruce, Verano, Kingfisher, RACERS, Pine and SASCO informing such trustees of the transfer effected pursuant to this Agreement, and LBHI is hereby authorized to deliver such notifications to such trustees.

5.    Provisional Allowance of Claims; Reallocation of Payments.    (a) The Claims shall, to the extent of the amounts to be applied and paid in accordance with Paragraphs 1 and 2, be deemed to be provisionally allowed secured Claims of the relevant JPMC Entities against each of the Debtors against which such claims have been asserted so as to facilitate the application of the Cash Collateral and the Cash Payment to such Claims; provided, however, that nothing in this Agreement shall constitute or be deemed any waiver of any rights, remedies, claims or causes of action on the part of any Lehman entity with respect to, and each Lehman entity expressly reserves, any and all rights and remedies it may have under applicable law, contract or otherwise, including, without limitation, rights and remedies in connection with any such provisionally allowed secured or other Claim (including, without limitation, Excluded Claims) of each such JPMC Entity and any alleged guarantee thereof or security therefor, including, without limitation, the right to contest the validity and enforceability of any such provisionally allowed secured or other Claim and/or to avoid or contest such Claims, any alleged guarantee thereof and any alleged security therefor, including, without limitation, any property alleged by JPMC to constitute Collateral or a Lien on or ownership of any Lehman assets. For the avoidance of doubt, the parties agree that the rights and remedies reserved by each Lehman entity include, without limitation, claims or potential claims that the Collateral suffered a diminution in value as a result of conduct of any JPMC Entity (other than any diminution in value arising from the entry into this Agreement and the performance of the terms hereof). The parties hereto further agree that it is the intent of such parties that the provisions of this Agreement shall not expand or reduce the rights and entitlements of any such party with respect to the Collateral and Liens beyond those rights and entitlements which such party would have if this Agreement had not been entered into.

(b)  Any Collateral, Prior Payment or Cash Payment, or any exercise of alleged setoff rights, account activity, account adjustments or other payments and reductions of the Claims on or after the date hereof (any of the foregoing including, without limitation, a Debtor Recovered Payment, "Applied Property") (i) that has been applied to a Claim which is thereafter disallowed, avoided, invalidated or deemed unsecured pursuant to a Binding Determination, (ii) the application of which to a Claim has been avoided or invalidated pursuant to a Binding Determination, or (iii) that, in lieu of being applied to the particular Claim to which it has been applied, JPMCB determines should be applied instead to another unpaid Claim, may be reallocated and applied by a JPMC Entity to an unpaid Claim (including, without limitation, an Excluded Claim) that has not been disallowed, avoided or invalidated; provided, however, that such Applied Property may be reallocated and applied only to an unpaid Claim that would have been secured by such Applied Property (or, in the case of a Debtor Recovered Payment, would have been secured by or eligible to be validly paid from the Collateral, setoff right, account activity, account adjustment or other payment or reduction of Claims giving rise to such Debtor Recovered Payment) had it not been used to pay such disallowed,

avoided, invalidated or unsecured Claim. It is understood and agreed that upon any such reallocation and application JPMC shall promptly provide LBHI with written notice describing such reallocation and application in reasonable detail. Each JPMC Entity expressly reserves any and all rights and remedies it may have under applicable law, agreements or otherwise to defend or otherwise resist any claims asserted and/or proceedings initiated by or on behalf of Lehman to disallow, avoid or otherwise invalidate any Claims or Liens or to seek any other relief against JPMC.

6.    Post-Effective Date Adjustments.  (a)  The parties agree that amounts under each definition referred to below shall be calculated and applied separately with respect to each Debtor, without aggregation in any way as among the Debtors unless otherwise provided by a Binding Determination (it being understood that, in so calculating and applying such definitions, a Claim for which more than one Debtor is liable is to be treated as a Claim against each such Debtor in the full amount thereof without estimation or reduction on account of any payment not theretofore received); provided, however, that a Binding Determination with respect to a Claim against a particular Debtor shall not affect the rights of a JPMC Entity to reallocate and apply any Collateral or Cash Payment to a Claim against another Debtor in accordance with Paragraph 5(b):

"Allowed Unpaid Secured Claims" means all unpaid Claims (including, without limitation, any Excluded Claims) asserted by each JPMC Entity that are determined by a Binding Determination to be allowed secured claims against any Debtor. The amount of any Allowed Unpaid Secured Claims shall be determined after giving effect to any payment of such Claims received by such JPMC Entity from all sources permitted to be so applied by a Binding Determination (including any reallocation and application pursuant to Paragraph 5(b) above, but excluding any payment pursuant to Paragraph 6(b) below) and any reversal or rescission of any payments or recoveries on such Claims (including, without limitation, any such reversal or rescission resulting from a JPMC Entity's payment, repayment or other disgorgement, or requirement to pay, repay or otherwise disgorge, any Debtor Recovered Payments or Other Recovered Payment). Such Claim's secured status for each JPMC Entity shall be determined as if such JPMC Entity had (i) retained its Lien, if any, against all of the Transferred Collateral (rather than transferring or releasing such Lien pursuant to this Agreement), and (ii) realized at the time of the Cash Payment proceeds from the sale of the Securities Collateral equal in amount to the portion of the Cash Payment received by such JPMC Entity, it being understood that the transfer of the Cash Payment does not increase the value of the Collateral for purposes of determining which claims are allowed secured claims.

"Binding Determination" means (i) a final and non-appealable order of a court of competent jurisdiction, (ii) a written settlement agreement that has become effective to which (x) each of the JPMC Entities holding a Claim purported to be affected thereby is a party and (y) in the case of such a

Claim asserted against one or more Debtors, each such Debtor is a party or (iii) in the case of allowance of a Claim with respect to which an objection has not been filed, the expiration of time to object to the proof of claim (or equivalent) in which such Claim is asserted.

'Debtor Paid Claim' means any Claim that has been paid through application of Cash Collateral posted by a Debtor, application of the Cash Payment, a Prior Payment from a Debtor or from its property or any other payment by a Debtor or from its property.

'Debtor Paid Claim Disallowed Amount' means the amount of any Debtor Paid Claim that is determined by a Binding Determination to have been invalid at the time of its payment because such Claim was then subject to avoidance, disallowance, release, dismissal or reduction. For the avoidance of doubt, a Debtor Paid Claim shall be deemed to have been subject to such a reduction to any extent that a Binding Determination determines that the reduction in the amount of such Claim as a result of the realization against Collateral held in respect thereof should have been greater than the reduction that resulted from the application of the actual proceeds of the realization against such Collateral.

'Debtor Paid Claim Unsecured Amount' means the amount of any Debtor Paid Claim that is determined by a Binding Determination to have been an unsecured claim at the time of its payment because a Lien securing such Claim was then subject to avoidance, disallowance, release, dismissal, reduction or limitation (but only to the extent that there did not then exist other Collateral of sufficient value subject to a valid Lien in favor of the relevant JPMC Entity securing such Claim).

'Disgorgement Amount' means the aggregate amount of (i) any Debtor Paid Claim Disallowed Amounts and any Debtor Paid Claim Unsecured Amounts, less any portions thereof that have been reallocated and applied pursuant to Paragraph 5(b), and (ii) any Debtor Recovered Payments not theretofore paid, repaid or otherwise disgorged to a Debtor and not reallocated and applied pursuant to Paragraph 5(b) above.

'Recovered Payment' means any Prior Payment or any other payment of a Claim (including, without limitation, any payment pursuant to the provisions of this Agreement) that, in any case, has been avoided, rescinded, invalidated or recovered pursuant to a Binding Determination, except to the extent that such Binding Determination gave rise to a Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount with respect to the same underlying Claim (or portion thereof). A 'Debtor Recovered Payment' is a Recovered Payment payable or repayable by JPMC to a Debtor; an 'Other Recovered Payment' is a Recovered Payment paid, repaid or otherwise disgorged (or required to be paid, repaid or

otherwise disgorged) by JPMC to an entity (including LBI) that is not a Debtor.

"Transferred Collateral" means (i) the Securities Collateral, (ii) all distributions on and other proceeds of the Collateral that have been or may be received by Lehman entities or a servicer, trustee, agent or other person acting in a similar capacity with respect to a security or instrument constituting Collateral and not remitted to any JPMC Entity, or (iii) all distributions and other proceeds of the Collateral received by a JPMC Entity and remitted to a Lehman entity, including, without limitation, any amounts remitted by JPMC Entities pursuant to Paragraph 3(e) and (f) above.

(b) The Debtors shall condition their requests for relief with respect to any and all matters that may give rise to a Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to provide that (i) no JPMC Entity shall be required to pay, repay or otherwise disgorge such Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to the Debtors, except at such time and to such extent as may be required by the following provisions of this Paragraph 6(b), and (ii) Bankruptcy Code §§ 502(d), 541 and 542 (and any other provisions that would otherwise require the turnover of such amounts or impose adverse consequences for failing to turnover such amounts) shall not apply with respect to any failure on the part of any JPMC Entity to pay, repay or otherwise disgorge a Recovered Payment, Debtor Paid Claim Disallowed Amount or Debtor Paid Claim Unsecured Amount to the Debtors before the date, if any, that JPMC is required to do so pursuant to the following provisions of this Paragraph 6(b). In the event that any court order or judgment is inconsistent with the foregoing, the Debtors shall not enforce it to the extent of such inconsistency, and will cooperate with any efforts by the affected JPMC Entities to obtain a modification or correction to remove the inconsistency. Notwithstanding anything to the contrary in the foregoing, the parties hereto agree that neither a JPMC Entity nor a Lehman entity is waiving any right to receive pre-judgment interest that may be available under applicable law. Within five business days after all Binding Determinations necessary to make a final determination of the amount of all Allowed Unpaid Secured Claims and Disgorgement Amounts with respect to any Debtor have occurred, which shall occur only after resolution by Binding Determination of all asserted and potential actions, proceedings and challenges with respect to the Claims, the Collateral and payments on the Claims (or, if earlier with respect to any such potential actions, proceedings and challenges, the expiration of all statutes of limitation with respect thereto) with respect to such Debtor:

(1) JPMCB, on behalf of the relevant JPMC Entities, shall pay to such Debtor (or its successor) the amount (the "JPMC Adjustment Amount"), if any, by which the Disgorgement Amounts with respect to such Debtor exceed the Allowed Unpaid Secured Claims with respect to such Debtor; and

(2)  such Debtor shall pay to JPMCB, on behalf of the relevant JPMC Entities, the amount (the "Debtor Adjustment Amount"), if any, by which the Allowed Unpaid Secured Claims with respect to such Debtor exceed the Disgorgement Amounts with respect to such Debtor.

(x) Simultaneously with the effectiveness of any Binding Determination that results in a Disgorgement Amount, LBHI shall transfer to the relevant JPMC Entity the Subrogated Claim (or portion thereof) that gave rise to such Disgorgement Amount, except to the extent that such Subrogated Claim (or portion thereof) has been disallowed by a Binding Determination, and (y) upon the payment of any JPMC Adjustment Amount or Debtor Adjustment Amount pursuant to this Paragraph 6(b), LBHI shall pay (in the case of non-cash property, in kind) to the relevant JPMC Entity any distribution received by LBHI with respect to such Subrogated Claim (or portion thereof).  LBHI shall not, prior to the transfer to the relevant JPMC Entity of a Subrogated Claim pursuant to the immediately preceding sentence, act or fail to act with respect to such Subrogated Claim in a manner less favorable (from the perspective of a holder of such Subrogated Claim) than LBHI would act or fail to act with respect to similar claims in which LBHI has a continuing economic interest.

If, at any time before JPMCB pays the JPMC Adjustment Amount on behalf of a JPMC Entity to a Debtor, such JPMC Entity has been determined to owe a Disgorgement Amount to such Debtor, then such JPMC Entity shall deposit (a "JPMC Deposit") such Disgorgement Amount in a segregated interest-earning cash collateral account with JPMCB (or if JPMCB is not then a Qualified Bank (as defined below), another Qualified Bank) to secure its obligations to pay the JPMC Adjustment Amount (and, if such JPMC Entity is not JPMCB, such JPMC Entity's obligations to JPMCB to reimburse JPMCB for any JPMC Adjustment Amount paid under this Paragraph 6(b) on its behalf).  All amounts in such account shall remain available for reallocation and application pursuant to Paragraph 5(b) above.  Any portion of such deposit remaining after JPMCB has paid such JPMC Adjustment Amount shall be promptly remitted by JPMCB to such JPMC Entity. The applicable Debtor and JPMC Entity shall be entitled to the interest earned in such account proportionally to the principal amount payable to each of them.

If, at any time before a Debtor pays its Debtor Adjustment Amount to one or more JPMC Entities, such Debtor is to make a general distribution of its assets under a chapter 11 plan or otherwise, then before it makes such distribution such Debtor (or its successor) shall deposit (a "Debtor Deposit") for each such JPMC Entity in a segregated interest-earning cash collateral account with a Qualified Bank (as defined below), to secure its obligations to pay such Debtor Adjustment Amount to such JPMC Entity, an amount agreed to in good faith by JPMCB and such Debtor as representing the maximum Debtor Adjustment Amount potentially payable by such Debtor to such JPMC Entity based on the then known facts.  If JPMCB and such Debtor fail to reach agreement on the amount of such Debtor Deposit, the amount of the Debtor Deposit shall be established by a Binding Determination, which shall calculate the maximum amount that such Debtor could be required to pay to such JPMC Entity.  Any portion of the Debtor Deposit and interest thereon remaining after the obligations of the relevant Debtor have been satisfied

shall be promptly remitted to such Debtor (or its successor), to an account or accounts as directed by such Debtor. The relevant Debtor and JPMC Entity shall be entitled to the interest earned in such account proportionally to the principal amount payable to each of them. A "Qualified Bank" is a nationally chartered bank unaffiliated with Lehman whose capital and surplus exceed $10 billion and whose rating with respect to its long term unsecured unsubordinated indebtedness is at least A by Standard & Poor's Ratings Group (or its successor) and A2 by Moody's Investors Service, Inc. (or its successor) or any other bank that the parties mutually agree upon.

To the extent that the amount of a JPMC Deposit or Debtor Deposit is materially in excess of the maximum potential amount of the obligations secured thereby (in the case of a JPMC Deposit, after taking into consideration the maximum amount of such JPMC Deposit as may be required for reallocation and application in accordance with Paragraph 5(b) above) based on the then known facts, then JPMCB or the relevant Debtor, as the case may be, may seek the return of the excess amount of the deposit by agreement with the other or by obtaining a Binding Determination as to such amount.

(c)  If any entity (including a Debtor) commences any objection, counterclaim, crossclaim or other action against LBHI in a court or other tribunal with respect to any Subrogated Claim, Lien or Collateral (including, without limitation, the valuation thereof) that could result in a Debtor Paid Claim Disallowed Amount, a Debtor Paid Claim Unsecured Amount, a Recovered Payment or a reduction in the amount of an Allowed Unpaid Secured Claim (any such objection, counterclaim, crossclaim or action, an "Action") and serves notice of such Action on LBHI, LBHI shall promptly notify JPMCB of such Action in writing (the "Action Notice"), and in any event provide the Action Notice within 10 days of being served with notice of such Action.  JPMCB or any JPMC Entity which would be liable for any JPMC Adjustment Amount payable under Paragraph 6(b) that could increase as a result of the Action, or would be the payee of a Debtor Adjustment Amount payable under Paragraph 6(b) that could be reduced as a result of the Action (the "Relevant JPMC Entity" and, if it elects to assume the defense of such Action, the "Defending Entity") may, at its election and at its own expense and without limiting its rights or obligations under Paragraph 6(b), participate in or assume the defense of such Action with counsel selected by it, by providing LBHI with written notice of such decision within 30 days of JPMCB's receipt of the Action Notice. Notwithstanding anything to the contrary in this Agreement, if LBHI fails to provide JPMCB with the Action Notice within 10 days of being served with notice of such Action and as a result of such failure the Relevant JMPC Entity has fewer than 14 days to file an answer or response in such Action and LBHI has not filed an answer or response, which adequately protects the interests of such Relevant JPMC Entity to the extent reasonably possible through such a pleading, then the JPMC Adjustment Amount payable under Paragraph 6(b) shall not be increased, and the Debtor Adjustment Amount payable under Paragraph 6(b) shall not be reduced, with respect to the results of such Action (and the calculation pursuant to Paragraph 6(b) of the Debtor Adjustment Amount and/or the JPMC Adjustment Amount, as the case may be, shall be adjusted accordingly). Notwithstanding anything to the contrary in this Paragraph 6(c), prior to any assumption of an Action by the Relevant JMPC Entity, LBHI maintains the right to file an answer or

response in such Action if a prompt answer or response is necessary to preserve any right of LBHI and/or the Relevant JMPC Entity in such Action.

If the Defending Entity assumes the defense of the Action and if the Action has not been commenced by a Debtor or an entity whose economic interests with respect to the Action are aligned with LBHI, (i) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, the Defending Entity shall consult with LBHI, at LBHI's request, regarding the Action on an ongoing basis; provided that the Defending Entity shall have the right to determine all aspects of the defense of the Action (except as contemplated in clause (v) of this sentence), (ii) LBHI may participate in such defense at its own expense (but not in any way that conflicts with or otherwise adversely affects the defense by the Defending Entity (except as contemplated in clause (v) of this sentence)) and, in any event, except as contemplated in clause (v) of this sentence, LBHI shall cooperate, at the request and expense of the Defending Entity, with the Defending Entity in all respects reasonably required or desirable (including, without limitation, the execution and filing of pleadings) to enable the Defending Entity to assume and prosecute the defense of the Action, (iii) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, the Defending Entity shall provide LBHI on a confidential basis with drafts of all notices, pleadings, and other papers to be filed or served in such Action by JPMC (and allow LBHI a reasonable opportunity to comment on such drafts before filing or serving such drafts), (iv) the Defending Entity shall promptly provide copies to LBHI of all notices, pleadings, and other papers filed or served in such Action, and (v) LBHI shall maintain the right to conduct the defense of any aspect of such Action that could have an adverse effect on LBHI, other than an adverse effect that gives rise to a corresponding increase in the JPMC Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in the Debtor Adjustment Amount payable under Paragraph 6(b). In the event that clause (v) of the immediately preceding sentence is applicable with respect to any Action, the Defending Entity and LBHI shall cooperate in good faith and coordinate their actions to preserve and protect each other's interests to the full extent reasonably possible except to the extent inconsistent with their respective interests.

If the Relevant JPMC Entity does not elect to assume the defense of the Action as described above, (i) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, LBHI shall consult with the Relevant JPMC Entity, at the Relevant JPMC Entity's request, regarding the Action on an ongoing basis; provided that LBHI shall have the right to determine all aspects of the defense of the Action, (ii) the Relevant JPMC Entity may participate in such defense at its own expense (but not in any way that conflicts with or otherwise adversely affects the defense by LBHI) and, in any event, the Relevant JPMC Entity shall cooperate, at the request and expense of LBHI, with LBHI in all respects reasonably required or desirable (including, without limitation, the execution and filing of pleadings) to enable LBHI to assume and prosecute the defense of the Action, (iii) subject to the execution and the terms of a mutually satisfactory joint defense and confidentiality agreement, LBHI shall provide the Relevant JPMC Entity on a confidential basis with drafts of all notices, pleadings, and other papers to be filed or served in such Action by LBHI (and allow the Relevant JPMC Entity a reasonable opportunity to comment on such drafts before filing

or serving such drafts), and (iv) LBHI shall promptly provide copies to the Relevant JPMC Entity of all notices, pleadings, and other papers filed or served in such Action.

Notwithstanding anything to the contrary in this Agreement:

(i)   LBHI shall not settle or adjust, or enter into any other agreement, stipulation or other arrangement with respect to the disposition of any Action, any issues therein, any matter that would constitute an Action upon the commencement of an objection, counterclaim, crossclaim or action with respect thereto, or any other matter that could affect the amount of a JPMC Adjustment Amount or Debtor Adjustment Amount (any of the foregoing, a "Settlement") without the consent of the Relevant JPMC Entity (which may be withheld in the sole discretion of the Relevant JPMC Entity) if such Settlement could result in an increase in a JPMC Adjustment Amount payable under Paragraph 6(b) or a reduction in a Debtor Adjustment Amount payable under Paragraph 6(b);

(ii)  the JPMC Adjustment Amount payable under Paragraph 6(b) shall not be increased, and the Debtor Adjustment Amount payable under Paragraph 6(b) shall not be reduced, as a result of any Settlement in violation of immediately preceding clause (i) (and the calculation pursuant to Paragraph 6(b) of the Debtor Adjustment Amount and/or the JPMC Adjustment Amount, as the case may be, shall be adjusted accordingly);

(iii) the Relevant JPMC Entity shall not enter into any Settlement without the consent of LBHI (which may be withheld in the sole discretion of LBHI) if such Settlement could result in a reduction in a JPMC Adjustment Amount payable under Paragraph 6(b) or an increase in a Debtor Adjustment Amount payable under Paragraph 6(b); and

(iv)  the JPMC Adjustment Amount payable under Paragraph 6(b) shall not be reduced, and the Debtor Adjustment Amount payable under Paragraph 6(b) shall not be increased, as a result of any Settlement in violation of the immediately preceding clause (iii) (and the calculation pursuant to Paragraph 6(b) of the Debtor Adjustment Amount and/or the JPMC Adjustment Amount, as the case may be, shall be adjusted accordingly).

If the Relevant JPMC Entity elects to assume the defense of an Action in accordance with Paragraph 6(c) above, the Relevant JPMC Entity may enter into a Settlement of such Action without the consent of LBHI unless such Settlement could have an adverse effect on LBHI (other than an adverse effect that gives rise to a corresponding increase in the JPMC Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in the Debtor Adjustment Amount payable under Paragraph 6(b)), in which case LBHI's consent is required and may be withheld in LBHI's sole discretion; provided that, if requested by the Relevant JPMC Entity, LBHI shall consent to any such Settlement (which consent shall not be unreasonably withheld or delayed) if such Settlement does not have an adverse effect on LBHI (other than an adverse effect that gives rise to a corresponding increase in the JPMC Adjustment Amount payable

under Paragraph 6(b) or corresponding reduction in the Debtor Adjustment Amount payable under Paragraph 6(b)). Any Settlement that could give rise to an increase in the Debtor Adjustment Amount payable under Paragraph 6(b) or a reduction in the JPMC Adjustment Amount payable under Paragraph 6(b) is deemed to have an adverse effect on LBHI.

If the Relevant JPMC Entity does not elect to assume the defense of an Action in accordance with Paragraph 6(c) above, LBHI may enter into a Settlement of such Action without the consent of the Relevant JPMC Entity unless such Settlement could have an adverse effect on the Relevant JPMC Entity (other than an adverse effect that gives rise to a corresponding increase in the Debtor Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in JPMC Adjustment Amount payable under Paragraph 6(b)), in which case the Relevant JPMC Entity's consent is required and may be withheld in the Relevant JPMC Entity's sole discretion; provided that, if requested by LBHI, the Relevant JPMC Entity shall consent to any such Settlement (which consent shall not be unreasonably withheld or delayed) if such Settlement has no adverse effect on the Relevant JPMC Entity (other than an adverse effect that gives rise to a corresponding increase in the Debtor Adjustment Amount payable under Paragraph 6(b) or corresponding reduction in the JPMC Adjustment Amount payable under Paragraph 6(b)). Any Settlement that could give rise to a reduction in the Debtor Adjustment Amount payable under Paragraph 6(b) or increase in the JPMC Adjustment Amount payable under Paragraph 6(b) is deemed to have an adverse effect on the Relevant JPMC Entity.

7.    <u>Value of Collateral; Information as to Securities Collateral</u>. (a) At such time as it may become appropriate in the enforcement and performance of the terms and provisions of this Agreement (including, without limitation, Paragraph 6 above), the parties shall agree upon the means, effective date and methodology to determine the value of the Collateral or any relevant part thereof. If the parties are unable to agree upon such means, effective date and methodology, then the Bankruptcy Court shall determine any such valuation issues.

(b)  JPMCB may request from the Debtors on a quarterly basis (or on a more frequent, reasonable basis with respect to Securities Collateral that is the subject of an active dispute), and the Debtors shall promptly provide to JPMCB the following with respect to the loans, participations and other property (the "Underlying Assets") which backed securities and instruments constituting Securities Collateral as of the Effective Date (the "Transferred Securities"): (1) with respect to the Transferred Securities known as Fenway, Spruce and Verano and the real estate assets in RACERS, (i) the principal, interest and other distributions received with respect to such Transferred Securities and Underlying Assets, (ii) a schedule of sales or other dispositions of such Transferred Securities and the Underlying Assets, including any amount by which the proceeds realized differed from the notional balance of the asset disposed of, and (iii) a summary of any material actions taken by the Debtors with respect to such Transferred Securities and Underlying Assets (including, without limitation, any settlements, restructurings, disaggregations or recapitalizations of such Transferred Securities and Underlying Assets), which summary shall include relevant legal documents, identification of other

interests of Lehman entities (or their successors) in the entities or financial structures related to such Transferred Securities and Underlying Assets, and, in the case of a disaggregation of any of such Transferred Security, an identification of the Underlying Assets which backed such Transferred Security prior to its disaggregation, and (2) with respect to the other Transferred Securities and Underlying Assets, JPMCB and the Debtors agree to work together in good faith to develop and refine reporting forms and procedures to enable the information described in clauses (i)-(iii) of this Paragraph 7(b) to be provided to JPMCB, to the full extent such information is available to the Debtors and applicable to such other Transferred Securities and Underlying Assets, while imposing as small a burden on the Debtors as reasonably possible. The parties agree that, from and after the Effective Date, satisfaction by the Debtors of the reporting obligations set forth in this Paragraph 7(b) with respect to the Transferred Securities known as Kingfisher shall satisfy any reporting obligation owed to any JPMC Entity by any Debtor under any other agreement with any JPMC Entity with respect to such Transferred Securities or the Underlying Assets thereof.

(c)  Each JPMC Entity agrees to use the information (the "Information") furnished to it pursuant to Paragraph 7(b) solely for purposes related to valuation of the Securities Collateral and to maintain the confidentiality of the Information, except that the Information may be disclosed by such JPMC Entity (i) on a need-to-know basis, to another JPMC Entity and to its and their directors, officers, investment advisors, employees and agents (including accountants, attorneys and other advisors); provided, that, any Information concerning the Transferred Securities known as Kingfisher and/or the Underlying Assets thereof may be disclosed only to U.S.-based, U.K.-based or Hong Kong-based directors, officers, investment advisors, employees and agents (including accountants, attorneys and other advisors) of a U.S.-based, U.K.-based or Hong Kong-based JMPC Entity (it being understood that the persons to whom such disclosure is made under this clause (i) will be informed of the confidential nature of such Information and instructed to keep such Information confidential and that JPMC shall be liable for any breach of this Paragraph 7(c) (and any unauthorized disclosure of Information) by such persons), (ii) to the extent requested by any regulatory authority with responsibility for the activities of any JPMC Entity or its subsidiaries, parents and affiliates, (iii) to the extent required by applicable laws or regulations or by a subpoena or similar legal process (provided, however, that in the case of this clause (iii), any JPMC Entity that is subject to such requirement or subpoena shall provide LBHI with prompt written notice of such requirement or subpoena so that LBHI may seek a protective order or other appropriate remedy and JPMC shall fully cooperate with LBHI's efforts to obtain the same, at LBHI's sole expense), (iv) in connection with the exercise or enforcement of any rights or remedies under this Agreement, the defense of any Action, or any matter contemplated by Paragraph 7(a) above relating to this Agreement or the Claims, whether involving a JPMC Entity or its directors, officers, investment advisors, employees and agents, including accountants, attorneys and other advisors (provided, however, that (A) in the case of pleadings, petitions, motions, objections, responses, or similar filings in a legal proceeding or arbitration or oral argument in connection therewith, the relevant JPMC Entity shall provide LBHI with prompt written notice of the filing thereof or the calendaring of such oral argument so that LBHI may seek a protective order or other appropriate remedy and JPMC shall fully cooperate with LBHI's efforts to obtain the

same, at LBHI's sole expense and (B) such disclosure other than in filings shall be limited to JPMC's directors, officers, investment advisors, employees and agents (including accountants, attorneys and other advisors) who, if the Information is related to the Transferred Securities known as Kingfisher and/or the Underlying Assets thereof, shall be U.S.-based, U.K.-based or Hong Kong-based directors, officers, investment advisors, employees and agents of a U.S.-based, U.K.-based or Hong Kong-based JMPC Entity), (v) to the extent such Information (x) becomes publicly available other than as a result of a breach of this Paragraph 7(c) or (y) becomes available to such JPMC Entity on a nonconfidential basis from a source other than the Debtors that was not known by JPMC to be prohibited from disclosing such Information to JPMC by a contractual, legal or fiduciary obligation, or (vi) with LBHI's consent (which may be withheld in LBHI's sole discretion).

8.    Effective Date; Payments.  (a)  This Agreement shall become effective at such time (the "Effective Date") as it has been executed and delivered by all of the parties hereto and it has been approved by an order of the Bankruptcy Court (the "Approval Order"), in form and substance satisfactory to JPMC and the Debtors, which order shall have become final and non-appealable. JPMCB and LBHI may, in their sole discretion, mutually agree that an earlier date (but, in any event, not before the entry of the Approval Order or during the pendency of a stay of the Approval Order) shall be the Effective Date. The Debtors shall promptly request approval of the Agreement by the Bankruptcy Court, and shall reasonably endeavor to obtain such approval. Each JPMC Entity shall cooperate with the Debtors in seeking such approval. All payments under this Agreement shall be made by wire transfer of immediately available funds to an account designated by the relevant Debtor, in the case of a payment to any of the Debtors, or by JPMCB or the relevant JPMC Entity, in the case of a payment to any JPMC Entity.

(b)  The parties agree that they shall request that the Approval Order contain the following language (the defined terms used in such language shall have the same meaning ascribed to such terms in this Agreement):

'Nothing in the Agreement is intended, and the Agreement shall not be construed, to impair any right, remedy or obligation of LBI; and the rights and remedies of LBI against the JPMC Entities and the Debtors and the rights and remedies of the JPMC Entities and the Debtors against LBI shall be not be prejudiced or otherwise impaired in any way by the Agreement. Without limiting the generality of the foregoing, and notwithstanding any other provisions of the Agreement, LBI shall not be bound (absent further court order) by (i) any determination among the JPMC Entities and the Debtors of the value of any Collateral or any methodology for valuing Collateral established pursuant to the Agreement, or (ii) any determination among the JPMC Entities and the Debtors of the secured status of any Claim pursuant to the Agreement. LBI retains any and all rights it may have in the Collateral transferred pursuant to the Agreement, and retains any and all rights it may have under any agreement pursuant to which any JPMC Entity acquired any Lien or other interest in any Collateral. In addition, the provisions of the Agreement shall not expand or reduce any rights and entitlements that LBI may otherwise have against any Debtor or any JPMC Entity with respect to the

Collateral or any rights and entitlements that any Debtor or any JPMC Entity may otherwise have against LBI with respect to the Collateral. The Agreement and the entry by the Debtors and the JPMC Entities into the Agreement shall not create any liabilities or causes of action in favor of LBI against any Debtor or any JPMC Entity or in favor of any Debtor or JPMC Entity against LBI."

9.    <u>Full Power and Authority</u>. Each of the undersigned parties represents that it has full power and authority to enter into this Agreement.

10.    <u>Entire Agreement; No Effect if Not Approved</u>. This Agreement constitutes the entire Agreement of the undersigned parties and supersedes any and all prior agreements or understandings among such parties with respect to the subject matter of this Agreement. If this Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur as contemplated by Paragraph 8, this Agreement shall be deemed null and void and of no force and effect and shall not be referenced by any party for any purpose whatsoever in any proceeding or otherwise, except for this Paragraph 10.

11.    <u>Counterparts; Governing Law; Headings</u>. This Agreement may be executed in counterparts and shall be governed by the laws of the State of New York. Paragraph and other headings are for purposes of convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

12.    <u>Jurisdiction</u>. Each of the undersigned parties submits to the exclusive jurisdiction of the Bankruptcy Court as to any dispute arising out of or under this Agreement. The Bankruptcy Court shall have and retain exclusive jurisdiction to enforce the terms of this Agreement and to determine any claims or disputes which may arise or result from, or be connected with, this Agreement, including, without limitation, any claim of breach or default hereunder.

13.    <u>Amendments</u>. Prior to the issuance of the Approval Order and after confirmation of the LBHI chapter 11 plan, this Agreement may be changed, amended, modified, or altered only in a writing executed by each of the parties hereto. After the issuance of the Approval Order and prior to the confirmation of the LBHI chapter 11 plan, this Agreement may be changed, amended, modified, or altered only in a writing executed by each of the parties hereto and approved by the Bankruptcy Court (other than immaterial modifications or amendments, which shall not require Bankruptcy Court approval).

14.    <u>Binding Effect; Successors.</u> This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns (including any successors to the Debtors under a chapter 11 plan and any successors or assignees of the Subrogated Claims). Nothing in this Agreement, express or implied, shall be construed to confer upon any person (other than the parties hereto and their respective successors and assigns) any legal or equitable right, remedy or claim under or by reason of this Agreement.

15.   <u>Notices</u>.  All notices and other communications hereunder shall be in writing and shall be deemed given and received (i) if delivered in person, on the date delivered, (ii) if transmitted by telecopy or electronic mail (provided, in each case, that receipt is confirmed by telephone), on the date sent or (iii) if delivered by an express courier, on the second business day after mailing, to the parties hereto at the following addresses (or at such other address for a party as shall be specified by like notice):

If to any JPMC Entity to:

JPMorgan Chase Bank, N.A.
245 Park Avenue
12th Floor, NY 1-Q653
New York, NY 10017
Telecopy:  (646) 534-6399
Email:  kevin.c.kelley@chase.com
Attention:  Kevin C. Kelley

and

JPMorgan Chase Bank, N.A.
383 Madison Avenue, 23rd Floor
New York, NY 10179
Telecopy:  (212) 622-4556
Email:  ann.kurinskas@jpmorgan.com
Attention:  Ann C. Kurinskas

with a copy (which shall not constitute notice) to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY  10019
Telecopy:  (212) 735-2000
Email:  hsnovikoff@wlrk.com and arwolf@wlrk.com
Attention:  Harold S. Novikoff and Amy R. Wolf

If to any Debtor:

c/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY  10020
Email:  william.olshan@lehmanholdings.com
Attention:  William Olshan

with a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Telecopy:  (212) 310-8007
Email:  harvey.miller@weil.com and michael.lubowitz@weil.com
Attention: Harvey Miller and Michael Lubowitz

Please evidence your acceptance of, and agreement to, the terms and conditions of this letter agreement by executing and returning an executed copy of this letter agreement to the address first written above, with a copy to Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller, as soon as practicable.

Very truly yours,

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name: John Suckow
Title: President and Chief Operating Officer

LB 745 LLC

By: _____
Name: John Suckow
Title: President and Chief Operating Officer

PAMI STATLER ARMS LLC

By: _____
Name: John Suckow
Title: President and Chief Operating Officer

LEHMAN BROTHERS COMMODITY
SERVICES INC.

By: _____
Name: John Suckow
Title: President and Chief Operating Officer

LEHMAN BROTHERS SPECIAL FINANCING
INC.

By: _____
Name: John Suckow
Title: President and Chief Operating Officer

[Signature Page to Collateral Disposition Agreement]

BNC MORTGAGE LLC

By: _____
Name:  Scott Drosdick
Title:  Senior Vice President


STRUCTURED ASSET SECURITIES
CORPORATION


By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


LB ROSE RANCH LLC


By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


LB 2080 KALAKAUA OWNERS LLC


By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


MERIT LLC


By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


LB SOMERSET LLC


By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


[Signature Page to Collateral Disposition Agreement]

BNC MORTGAGE LLC

By: _____
Name:  Scott Drosdick
Title:  Senior Vice President


STRUCTURED ASSET SECURITIES
CORPORATION

By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


LB ROSE RANCH LLC

By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


LB 2080 KALAKAUA OWNERS LLC

By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


MERIT LLC

By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


LB SOMERSET LLC

By: _____
Name:  John Suckow
Title:  President and Chief Operating Officer


[Signature Page to Collateral Disposition Agreement]

LEHMAN SCOTTISH FINANCE L.P.

By: _____
Name: John Suckow
Title: President and Chief Operating Officer


CES AVIATION LLC

By: _____
Name: John Suckow
Title: President and Chief Operating Officer


CES AVIATION V LLC

By: _____
Name: John Suckow
Title: President and Chief Operating Officer


CES AVIATION IX LLC

By: _____
Name: John Suckow
Title: President and Chief Operating Officer


EAST DOVER LIMITED

By: _____
Name: William Fox
Title: Duly authorized officer


LUXEMBOURG RESIDENTIAL PROPERTIES
LOAN FINANCE S.A.R.L.

By: _____
Name: William Fox
Title: Duly authorized officer


[Signature Page to Collateral Disposition Agreement]

LEHMAN BROTHERS OTC DERIVATIVES
INC.

By: _____

Name:  John Suckow
Title:  President and Chief Operating Officer


LEHMAN BROTHERS DERIVATIVE
PRODUCTS INC.

By: _____

Name:  William Fox
Title:  Chief Financial Officer and Controller


LEHMAN COMMERCIAL PAPER INC.

By: _____

Name:  John Suckow
Title:  President and Chief Operating Officer


LEHMAN BROTHERS COMMERCIAL
CORPORATION

By: _____

Name:  John Suckow
Title:  President and Chief Operating Officer


LEHMAN BROTHERS FINANCIAL PRODUCTS
INC.

By: _____

Name:  William Fox
Title:  Chief Financial Officer and Controller


[Signature Page to Collateral Disposition Agreement]

LB PREFERRED SOMERSET LLC

By: _____

Name:  John Suckow
Title:  President and Chief Operating Officer


*ACCEPTED AND AGREED AS OF THE DATE OF THIS AGREEMENT:*

JPMORGAN CHASE BANK, N.A.


By: _____
Name:
Title:


J.P. MORGAN BANK DUBLIN PLC


By: _____
Name:
Title:


JPMORGAN CHASE FUNDING INC.


By: _____
Name:
Title:


J.P. MORGAN CLEARING CORP.


By: _____
Name:
Title:


[Signature Page to Collateral Disposition Agreement]

LB PREFERRED SOMERSET LLC

By: _____
Name:
Title:


*ACCEPTED AND AGREED AS OF THE DATE OF THIS AGREEMENT:*

JPMORGAN CHASE BANK, N.A.

By: _____
Name: ANN VACRINSKAS
Title: MANAGING DIRECTOR


J.P. MORGAN BANK DUBLIN PLC

By: _____
Name:
Title:


JPMORGAN CHASE FUNDING INC.

By: _____
Name:
Title:


J.P. MORGAN CLEARING CORP.

By: _____
Name:
Title:


ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

LB PREFERRED SOMERSET LLC

By: _____
Name:
Title:


*ACCEPTED AND AGREED AS OF THE DATE OF THIS AGREEMENT:*

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:


J.P. MORGAN BANK DUBLIN PLC

By: _____
Name:       Liam MacNamara
Title:      Joint Chief Executive Officer


JPMORGAN CHASE FUNDING INC.

By: _____
Name:
Title:


J.P. MORGAN CLEARING CORP.

By: _____
Name:
Title:


ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

24

LB PREFERRED SOMERSET LLC

By: _____
Name:
Title:


*ACCEPTED AND AGREED AS OF THE DATE OF THIS AGREEMENT:*

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:


J.P. MORGAN BANK DUBLIN PLC

By: _____
Name:
Title:


JPMORGAN CHASE FUNDING INC.

By: _____
Name: Joseph C. Noto
Title: Managing Director

J.P. MORGAN CLEARING CORP.

By: _____
Name:
Title:


ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

LB PREFERRED SOMERSET LLC

By: _____
Name:
Title:

*ACCEPTED AND AGREED AS OF THE DATE OF THIS AGREEMENT:*

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:

J.P. MORGAN BANK DUBLIN PLC

By: _____
Name:
Title:

JPMORGAN CHASE FUNDING INC.

By: _____
Name:
Title:

J.P. MORGAN CLEARING CORP.

By: _____
Name: MICHAEL MINICES
Title:

J.P. MORGAN INTERNATIONAL BANK LIMITED

By: _____
Name:    RICHARD    WALTON
Title:    VP


J.P. MORGAN MARKETS LIMITED

By: _____
Name:
Title:


J.P. MORGAN SECURITIES INC.

By: _____
Name:
Title:


JPMORGAN SECURITIES JAPAN CO., LTD.

By: _____
Name:
Title:


J.P. MORGAN SECURITIES LTD.

By: _____
Name:
Title:


ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

J.P. MORGAN INTERNATIONAL BANK LIMITED

By: _____
Name:
Title:


J.P. MORGAN MARKETS LIMITED

By: _____
Name:    Nishi Singh
Title:    Executive Director


J.P. MORGAN SECURITIES INC.

By: _____
Name:
Title:


JPMORGAN SECURITIES JAPAN CO., LTD.

By: _____
Name:
Title:


J.P. MORGAN SECURITIES LTD.

By: _____
Name:
Title:


ERROR! UNKNOWN DOCUMENT PROPERTY NAME.

[Signature Page to Collateral Disposition Agreement]

25

J.P. MORGAN INTERNATIONAL BANK LIMITED

By: _____
Name:
Title:

J.P. MORGAN MARKETS LIMITED

By: _____
Name:
Title:

J.P. MORGAN SECURITIES INC.

By: _____
Name: Diane Genova
Title: Managing Director

JPMORGAN SECURITIES JAPAN CO., LTD.

By: _____
Name:
Title:

J.P. MORGAN SECURITIES LTD.

By: _____
Name:
Title:

[Signature Page to Collateral Disposition Agreement]

25

J.P. MORGAN INTERNATIONAL BANK LIMITED

By: _____
Name:
Title:


J.P. MORGAN MARKETS LIMITED

By: _____
Name:
Title:


J.P. MORGAN SECURITIES INC.

By: _____
Name:
Title:


JPMORGAN SECURITIES JAPAN CO., LTD.

By: _____
Name:   Gregory L. Guyett
Title:   President & CEO


J.P. MORGAN SECURITIES LTD.

By: _____
Name:
Title:


[Signature Page to Collateral Disposition Agreement]

25

J.P. MORGAN INTERNATIONAL BANK LIMITED

By: _____
Name:
Title:


J.P. MORGAN MARKETS LIMITED

By: _____
Name:
Title:


J.P. MORGAN SECURITIES INC.

By: _____
Name:
Title:


JPMORGAN SECURITIES JAPAN CO., LTD.

By: _____
Name:
Title:


J.P. MORGAN SECURITIES LTD.

By: _____
Name:
Title:        Roger Barbour
              Managing Director


[Signature Page to Collateral Disposition Agreement]

25

J.P. MORGAN (SUISSE) SA

By: _____          By: _____
Name: Valérie Delerue                Name: Vincent Subilia
Title: Vice President                Title: Vice President


J.P. MORGAN VENTURES ENERGY CORPORATION

By: _____
Name:
Title:


JPMORGAN CHASE BANK, N.A.

_____
Abigail J. Feder
Managing Director, JPMorgan Chase Bank, N.A.
In its capacity as investment manager and agent for each of the Commingled Pension Trust
Funds listed in Part A of the attached Schedule I


JPMORGAN MUTUAL FUNDS

_____
Patricia A. Maleski
Vice President, Chief Administrative Officer & Treasurer
On behalf of each of the JPMorgan Mutual Funds listed in Part B of the attached Schedule I


J.P. MORGAN INVESTMENT MANAGEMENT INC.

_____
Abigail J. Feder
Managing Director, J.P. Morgan Investment Management Inc.


[Signature Page to Collateral Disposition Agreement]

26

J.P. MORGAN (SUISSE) SA

By: _____
Name:
Title:


J.P. MORGAN VENTURES ENERGY CORPORATION

By: _____
Name:  Mark Lenczowski
Title:  Managing Director


JPMORGAN CHASE BANK, N.A.

_____
Abigail J. Feder
Managing Director, JPMorgan Chase Bank, N.A.
In its capacity as investment manager and agent for each of the Commingled Pension Trust
Funds listed in Part A of the attached Schedule I


JPMORGAN MUTUAL FUNDS

_____
Patricia A. Maleski
Vice President, Chief Administrative Officer & Treasurer
On behalf of each of the JPMorgan Mutual Funds listed in Part B of the attached Schedule I


J.P. MORGAN INVESTMENT MANAGEMENT INC.

_____
Abigail J. Feder
Managing Director, J.P. Morgan Investment Management Inc.

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

26

J.P. MORGAN (SUISSE) SA

By: _____
Name:
Title:

J.P. MORGAN VENTURES ENERGY CORPORATION

By: _____
Name:
Title:

JPMORGAN CHASE BANK, N.A.

Abigail J. Feder
Managing Director, JPMorgan Chase Bank, N.A.
In its capacity as investment manager and agent for each of the Commingled Pension Trust
Funds listed in Part A of the attached Schedule I

JPMORGAN MUTUAL FUNDS

_____
Patricia A. Maleski
Vice President, Chief Administrative Officer & Treasurer
On behalf of each of the JPMorgan Mutual Funds listed in Part B of the attached Schedule I

J.P. MORGAN INVESTMENT MANAGEMENT INC.

Abigail J. Feder
Managing Director, J.P. Morgan Investment Management Inc.

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

26

J.P. MORGAN (SUISSE) SA


By: _____
Name:
Title:


J.P. MORGAN VENTURES ENERGY CORPORATION


By: _____
Name:
Title:


JPMORGAN CHASE BANK, N.A.


_____
Abigail J. Feder
Managing Director, JPMorgan Chase Bank, N.A.
In its capacity as investment manager and agent for each of the Commingled Pension Trust
Funds listed in Part A of the attached Schedule I


JPMORGAN MUTUAL FUNDS


_____
Patricia A. Maleski
Vice President, Chief Administrative Officer & Treasurer
On behalf of each of the JPMorgan Mutual Funds listed in Part B of the attached Schedule I


J.P. MORGAN INVESTMENT MANAGEMENT INC.


_____
Abigail J. Feder
Managing Director, J.P. Morgan Investment Management Inc.


ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

In its capacity as investment manager and agent for each of the investment funds listed in Part C of the attached Schedule I

JF ASSET MANAGEMENT LIMITED

Robert Hepper Roger Hepper
Managing Director & Chief Operating Officer, JF Asset Management Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part D of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (JAPAN) LIMITED

David Tse
Client Business Chief Operating Officer, JPMorgan Asset Management (Japan) Limited
In its capacity as investment manager for each of the investment funds listed in Part E of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (UK) LIMITED

Campbell David Fleming
Managing Director, JPMorgan Asset Management (UK) Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part F of the attached Schedule I

HIGHBRIDGE ASIA OPPORTUNITIES MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

27

In its capacity as investment manager and agent for each of the investment funds listed in Part C of the attached Schedule I

JF ASSET MANAGEMENT **LIMITED**

_____
Robert Hepper
Managing Director & Chief Operating Officer, JF Asset Management Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part D of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (JAPAN) LIMITED

_____
David Tse
Client Business Chief Operating Officer, JPMorgan Asset Management (Japan) Limited
In its capacity as investment manager for each of the investment funds listed in Part E of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (UK) LIMITED

_____
Campbell David Fleming
Managing Director, JPMorgan Asset Management (UK) Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part F of the attached Schedule I

HIGHBRIDGE ASIA OPPORTUNITIES MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:

[Signature Page to Collateral Disposition Agreement]

27

In its capacity as investment manager and agent for each of the investment funds listed in Part C of the attached Schedule I

JF ASSET MANAGEMENT LIMITED

_____

Robert Hepper
Managing Director & Chief Operating Officer, JF Asset Management Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part D of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (JAPAN) LIMITED

_____

David Tse
Client Business Chief Operating Officer, JPMorgan Asset Management (Japan) Limited
In its capacity as investment manager for each of the investment funds listed in Part E of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (UK) LIMITED

_____
~~Campbell David Fleming~~ Roger Thompson
Managing Director, JPMorgan Asset Management (UK) Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part F of the attached Schedule I

HIGHBRIDGE ASIA OPPORTUNITIES MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.
[Signature Page to Collateral Disposition Agreement]

In its capacity as investment manager and agent for each of the investment funds listed in Part C of the attached Schedule I

JF ASSET MANAGEMENT LIMITED

---

Robert Hepper
Managing Director & Chief Operating Officer, JF Asset Management Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part D of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (JAPAN) LIMITED

---

David Tse
Client Business Chief Operating Officer, JPMorgan Asset Management (Japan) Limited
In its capacity as investment manager for each of the investment funds listed in Part E of the attached Schedule I

JPMORGAN ASSET MANAGEMENT (UK) LIMITED

---

Campbell David Fleming
Managing Director, JPMorgan Asset Management (UK) Limited
In its capacity as investment manager and agent for each of the investment funds listed in Part F of the attached Schedule I

HIGHBRIDGE ASIA OPPORTUNITIES MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:        Jim Glynn
        Chief Financial Officer
        Highbridge Capital Management

27

COBRA LLC

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**

CONTRARIAN VALUE, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**

HIGHBRIDGE CONVERTIBLE ARBITRAGE MASTER FUND, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**

HIGHBRIDGE INTERNATIONAL LLC

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**

SMITHFIELD FIDUCIARY LLC

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**

HIGHBRIDGE STATISTICALLY ENHANCED EQUITY MASTER FUND - EUROPE, L.P.

By: Highbridge Capital Management, LLC, as Trading Manager

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**

HB QUANTITATIVE EQUITY STRATEGIES LIMITED

By: Highbridge Capital Management, LLC, as Investment Adviser

By: _____
Name:
Title:
**Jim Glynn**
**Chief Financial Officer**
**Highbridge Capital Management**