# EXHIBIT L

# SETTLEMENT AGREEMENT

AGREEMENT dated as of April 20, 2011 among JPMORGAN CHASE BANK, N.A. ("JPMCB"), J.P. MORGAN SECURITIES LLC (formerly known as J.P. Morgan Securities Inc., "JPMS") and J.P. MORGAN CLEARING CORP. ("JPMCC" and collectively with JPMCB and JPMS, "JPMorgan"), and JAMES W. GIDDENS, AS TRUSTEE ("Trustee") IN THE SECURITIES INVESTOR PROTECTION ACT ("SIPA") LIQUIDATION OF LEHMAN BROTHERS INC. ("LBI"), IN HIS CAPACITY AS TRUSTEE AND ON BEHALF OF LBI (JPMCB, JPMS, JPMCC and Trustee, each a "Party" and collectively the "Parties").

## Background

  A. Trustee asserts, among other things, that:

    (1) approximately $126 million of cash (the "PB Cash"), which was held in alleged prime brokerage accounts maintained with JPMCB against which JPMCB asserts a lien and which was applied to claims asserted by JPMCB against LBI, was LBI customer property against which JPMCB does not have a valid lien and is recoverable by Trustee for the benefit of LBI's customers;

    (2) certain book entry securities, which were held in alleged prime brokerage accounts maintained with JPMCB against which JPMCB asserts a lien and which were delivered to Trustee in substitution for approximately $582 million of cash (such cash and all principal, interest and other distributions or proceeds on or with respect to such cash and securities received by JPMCB, the total current amount of which is approximately $666.6 million, the "PB B/E Securities Cash"), is LBI customer property against which JPMCB does not have a valid lien and is recoverable by Trustee for the benefit of LBI's customers;

    (3) the physical securities listed on Annex A hereto (the "PB Physical Securities"), which were held in alleged prime brokerage accounts maintained with JPMCB against which JPMCB asserts a lien, is LBI customer property against which JPMCB does not have a valid lien and is recoverable by Trustee for the benefit of LBI's customers;

    (4) approximately $20.9 million of principal and interest and other distributions or proceeds received by JPMCB on or with respect to the PB Physical Securities, of which approximately $1.03 million was received from December 16, 2010 through the date hereof (the portion of such principal, interest, distributions or proceeds received on or before December 15, 2010 is hereinafter referred to as the "Early PB Physical Securities Cash," and the portion received after December 15, 2010 through the date hereof is hereinafter referred to

1

    as the "<u>Late PB Physical Securities Cash</u>") which was held in alleged prime brokerage accounts maintained with JPMCB against which JPMCB asserts a lien, is LBI customer property against which JPMCB does not have a valid lien and is recoverable by Trustee for the benefit of LBI's customers;

  (5) certain securities valued by Trustee at not less than $108 million, which were held in LBI accounts maintained with JPMCB against which JPMCB asserts a lien, are alleged LBI customer property which had not been segregated by close of business on September 19, 2008, against which JPMCB does not have a valid lien and are recoverable by Trustee for the benefit of LBI's customers;

  (6) approximately $29 million of cash (the "<u>Redemption Cash</u>"), which was held in a LBI account maintained with JPMCB against which JPMCB asserts a lien and which was applied to claims asserted by JPMCB against LBI, was alleged redemption proceeds of customer property and, therefore, is LBI customer property against which JPMCB does not have a valid lien and is recoverable by Trustee for the benefit of LBI's customers;

  (7) municipal bonds valued by Trustee at approximately $534 million (the "<u>Muni Bonds</u>"), which were held in LBI accounts maintained with JPMCB against which JPMCB asserts a lien and the proceeds of which were applied to claims asserted by JPMCB against LBI, was alleged customer property of Lehman Brothers Commercial Bank (now known as Woodlands Bank) against which JPMCB does not have a valid lien and is recoverable by Trustee for the benefit of LBI's customers; and

  (8) JPMCB did not liquidate certain securities posted as collateral by LBI in a commercially reasonable manner.

Any Claims (as defined below) relating to the matters, facts and circumstances described in this paragraph A, however denominated, are hereinafter referred to collectively as the "<u>Specified Claims</u>."

  B. Trustee asserts that he also has other claims against JPMorgan. JPMorgan disagrees with Trustee's assertions as to all claims, including the Specified Claims. Nonetheless, JPMorgan and Trustee have engaged in extensive discussions and negotiations, as well as an extensive exchange of information and due diligence process, all in a good faith attempt to reach a consensual resolution of the foregoing disputes so that Trustee can obtain fair recoveries of alleged customer property as soon as reasonably practicable.

  C. The Parties desire to provide for the resolution of all of their foregoing disputes on the terms and conditions set forth below.

08-01420-jmp Doc 4242 Filed 04/21/11 Entered 04/21/11 14:56:51 Main Document
Pg 4 of 15
Pg 20 of 34

**THEREFORE, IT IS AGREED**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged**:**

### Terms and Conditions

1. <u>Transfers to Trustee</u>.  (a)  Within 10 business days after the Effective Time (as defined below), JPMCB shall transfer and deliver to Trustee:

(i)  $755 million, together with interest thereon during any Appeal Period (as defined below) at the effective fed funds rate from time to time during such period (such interest, the "<u>Appeal Interest</u>", and the aggregate payment described in this clause (i), the "<u>Cash Settlement Payment</u>"), by wire transfer of immediately available funds in accordance with wire instructions provided by Trustee to JPMorgan in writing on or before the Effective Time; and

(ii)  The PB Physical Securities, together with the Late PB Physical Securities Cash and any additional principal or interest or other distributions or proceeds on or with respect to the PB Physical Securities received by JPMorgan from the date hereof through the date on which the PB Physical Securities are transferred to Trustee (collectively, the "<u>PB Physical Securities Property</u>"), (x) to an account identified by Trustee to JPMorgan in writing on or before the Effective Time (the "<u>Physical Securities Account</u>"), to the extent in the form of physical securities, (y) by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in Section 1(a)(i), to the extent in the form of money, or (z) as otherwise directed by Trustee, to the extent other than in the form of physical securities or money.

If the occurrence of the Effective Time (as defined below) is delayed as a result of the filing of an appeal of an order authorizing Trustee to perform this Settlement Agreement by a person other than a Party, then the period commencing on (and including) the date on which the Effective Time would have occurred absent such appeal to (but excluding) the date of payment of the Cash Settlement Payment shall be the "<u>Appeal Period</u>."  If the Effective Time is not so delayed, there shall be no Appeal Period.

(b)  JPMCB shall pay the Cash Settlement Payment, (i) first, from (and as the return of) the full amount of the PB B/E Securities Cash and the Early PB Physical Securities Cash, and (ii) second, from its own resources other than the sources described in clause (i).  Any payment pursuant to clause (ii) of the preceding sentence, to the extent in excess of the Appeal Interest, shall be deemed to constitute a reversal (to the extent of such excess) of the prior application of the PB Cash to claims asserted by JPMCB against LBI (any such deemed reversal, the "<u>Deemed PB Cash Application Reversal</u>," and the deemed amount thereof, the "<u>Deemed Reversal Amount</u>").  JPMorgan agrees and covenants that no portion of the Cash Settlement Payment other than the Deemed PB Cash Application Reversal (in the Deemed Reversal Amount) shall be considered, or asserted to constitute, a reversal of any prior application of the PB Cash (or any other

3

property) to claims asserted by JPMCB against LBI or Trustee (or otherwise to increase any outstanding, or be the basis of any new, Claim of JPMorgan against LBI or Trustee).

(c)  If any PB Physical Securities Property delivered to Trustee pursuant to this Section 1 is registered in the name of JPMorgan or any affiliate thereof (or any designee, nominee or other direct or indirect transferee of any thereof), JPMorgan shall, at the time of such delivery, deliver to Trustee a stock power duly executed in blank (or other appropriate instrument of conveyance) executed by the registered holder of such Property.  If JPMorgan or any affiliate thereof shall receive any additional principal or interest payment on, distribution on, or other proceeds in respect of any PB Physical Security after the transfer of such PB Physical Security pursuant to Section 1(a) hereof, JPMorgan shall hold such additional principal or interest payment, distribution or other proceeds in trust for, and forthwith pay the same over to, Trustee.

(d)  For the avoidance of doubt, it is understood and agreed that, (i) automatically upon the making of the Cash Settlement Payment, JPMorgan shall be deemed to have irrevocably and unconditionally released, waived and discharged any claim to, or right, title or interest (including without limitation any security interest or other lien) in, to or under, the PB B/E Securities Cash and/or the Early PB Physical Securities Cash that it might have, and (ii) automatically upon the transfer or delivery of any PB Physical Securities Property to Trustee in accordance with Section 1, JPMorgan shall be deemed to have irrevocably and unconditionally released, waived and discharged any claim to, or right, title or interest (including without limitation any security interest or other lien) in, to or under, such Property that it might have. JPMorgan represents and warrants to Trustee that it has not sold, assigned or otherwise disposed of any right, title or interest (including without limitation any security interest or other lien) in, to or under any of the PB B/E Securities Cash, any PB Physical Securities Property or any Early PB Physical Securities Cash, except that JPMCB has agreed pursuant to Section 3(b) of the Collateral Disposition Agreement (as defined below), upon the occurrence of circumstances that will not occur if this Settlement Agreement becomes effective and is performed in accordance with its terms (and in any event will not occur unless and until this Settlement Agreement is terminated in accordance with its terms), to transfer its lien on the PB B/E Securities Cash, PB Physical Securities Property and Early PB Physical Securities Cash to LBHI.  JPMorgan covenants to Trustee that (unless and until this Settlement Agreement is terminated in accordance with its terms) it will not, sell, assign or otherwise dispose of any right, title or interest (including without limitation any security interest or other lien) in, to or under, or exercise any right or remedy (including without limitation any secured creditor right or remedy) against, any of the PB B/E Securities Cash, any PB Physical Securities Property or any Early PB Physical Securities Cash.

2.  <u>Mutual Releases</u>.  (a)  Automatically upon the consummation of the transactions described in Section 1(a) (the "<u>Consummation Time</u>"), but effective as of (and only as of) the date hereof, Trustee, in his capacity as Trustee and on behalf of LBI (the "<u>Trustee Releasors</u>"), hereby does and shall be deemed to forever generally release, waive and discharge each of JPMCB, JPMS and JPMCC and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment

4

bankers, investment advisors, actuaries, professionals, agents, successors, predecessors and representatives (all of the foregoing collectively, the "JPMorgan Releasees") from and in respect of all claims, causes of action and any other avoidance actions, setoff challenges, debts, obligations, rights, suits, damages, actions, interests, remedies and liabilities, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise (collectively, "Claims"), in each case which either of the Trustee Releasors may have ever had, may now have or hereafter can, shall or may have against the JPMorgan Releasees (or any of them) for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Settlement Agreement, including without limitation, any Specified Claims, *except* that the foregoing release, waiver and discharge shall not release, waive or discharge (i) any Excluded Claim (as defined below), (ii) any Defense/Challenge (as defined below) or any right to assert or maintain any Defense/Challenge (which is governed by Section 3), and (iii) the right to enforce this Settlement Agreement. With respect to the Specified Claims only, the JPMorgan Releasees shall be deemed to include all affiliates, parents and subsidiaries of JPMCB, JPMS and JPMCC and (in each case solely in their capacities as such) all of the respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, predecessors and representatives of such affiliates, parents and subsidiaries.

(b) Automatically upon the Consummation Time, but effective as of (and only as of) the date hereof, each of JPMCB, JPMS and JPMCC (collectively, the "JPMC Releasors") hereby does and shall be deemed to forever generally release, waive and discharge each of Trustee and LBI and (in each case, solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, predecessors and representatives (all of the foregoing collectively, the "Trustee Releasees") from and in respect of all Claims (including, without limitation, any administrative expense Claims pursuant to 11 U.S.C. § 503, and any customer claim pursuant to 15 U.S.C. § 78fff-2(a)(2)), in each case which any of the JPMC Releasors may have ever had, may now have or hereafter can, shall or may have against the Trustee Releasees (or any of them) for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Settlement Agreement, e*xcept* that the foregoing release, waiver and discharge shall not release, waive or discharge (i) any Permitted Allowable Claim (as defined below), (ii) any Claim of JPMorgan against the Non-Released Lehman Entities (as defined below), including without limitation any Claims against any Non-Released Lehman Entity arising under a guaranty of LBI's obligations or out of or resulting from LBI's conduct or omissions, (iii) any Successor Claim or Fiduciary/Agency Claim, (iv) the Claims described in (x) the Amended Proof of Claim filed by JPMCB on May 28, 2009 relating to a guaranteed investment contract in connection with the Kentucky Association of Counties Leasing Trust Program (the "COLT Claim") or (y) any other proofs of claim filed in the LBI SIPA liquidation proceeding before January 1, 2011 by (and expressly in the name of) JPMCB, JPMS or JPMCC, including without limitation the Permitted Allowable Claims (as defined below), (v) a Claim in the amount of approximately

5

$530,000, arising from an adjustment occurring after the filing of the Amended Proofs of Claims dated March 31, 2010 signed by Ann Kurinskas, William P. Marcouilier and Michael Minikes, respectively (the "Principal Proofs of Claim"), with respect to proceeds obtained by JPMCB from the sale of El Paso County CO Single Family Mortgage Revenue Bonds 5.35% maturing 6/01/38 (CUSIP 283487SW7), which proceeds were applied against JPMCB's claims against LBI prior to the filing of the Principal Proofs of Claim, (vi) any claims arising from a proceeds adjustment or other recovery of collateral or proceeds arising from an event occurring, a settlement entered into, or a binding determination entered after January 1, 2011, in each case to the extent that it causes a reduction in the amount applied in payment of a claim (the Claims described in this clause (vi) and immediately preceding clauses (iv) and (v), collectively, the "Other Claims"), (vii) postpetition charges for accounts maintained by JPMorgan for Trustee invoiced during and after December 2010, not to exceed $125,000.00 as of the date of this Settlement Agreement, and (viii) the right to enforce this Settlement Agreement. The "Non-Released Lehman Entities" are LBHI and all of LBHI's subsidiaries (other than LBI) and their respective current and former officers, directors and employees (in their capacities as such).

(c)  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the Claims described in Sections 2(a) and (b). Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

(d)  Each Party represents and warrants that it has not sold, assigned, transferred or otherwise disposed of (other than by release), and will not sell, assign, transfer or otherwise dispose of (other than by release), any Claim purported to be released by such Party pursuant to Sections 2(a) or (b) (a "Released Claim") or, for the avoidance of doubt, any Claim that, if not for any such sale, assignment, transfer or other disposition, would constitute a Released Claim. Trustee represents and warrants that, at the date of this Settlement Agreement, based on inquiry of his counsel at Hughes Hubbard & Reed LLP as to their respective actual knowledge, he personally does not have actual knowledge of any LBI Pre-SIPA Assigned Claim against JPMorgan with respect to the Specified Claims or of any other specific LBI Pre-SIPA Assigned Claim against JPMorgan.

(e)  As used herein:

"Excluded Claim" means any Successor Claim, any Property Claim, any Fiduciary/Agency Claim, any LBI Pre-SIPA Assigned Claim, any Barclays APA Assigned Claim and any Claim against any Person other than the JPMorgan Releasees (including without limitation any Claim against any Non-Released Lehman Entity).

6

"Successor Claim" means any Claim (other than any claim of (in the context of Section 2(b)) or against (in the context of section 2(a)) Washington Mutual Bank or Original JPMSI) now existing or hereafter arising that would not be within the ambit of Section 2(a) or 2(b) but for any merger or acquisition involving any JPMorgan Releasee, or any JPMorgan Releasee otherwise assuming or succeeding to any liabilities of any other person or entity (other than solely another JPMorgan Releasee), in each case occurring at any time after September 19, 2008. "Original JPMSI" means the entity then known as J.P.Morgan Securities Inc. and that merged into Bear Stearns & Co. Inc. on October 1, 2008.

"Property Claim" means any Claim (now existing or hereafter arising) for the return or turnover of any property or asset of Trustee or LBI, other than the Excluded Property (as defined below), that is held by or on behalf of (or otherwise for the benefit of) JPMCB, JPMS or JPMCC as of, or at any time after, the date of this Settlement Agreement (or, for the avoidance of doubt, any proceeds of any such property or asset). The "Excluded Property" is the PB Cash, the PB B/E Securities Cash, the PB Physical Securities, the Redemption Cash, the Early PB Physical Securities Cash, the Muni Bonds, all cash, proceeds and other property applied or credited through the date of this Settlement Agreement against Claims of JPMorgan against LBI (and, in the event any such application or credit is reversed after the date of this Settlement Agreement, any cash, proceeds and other property to the extent validly applied or credited against any Claims that became unpaid as a result of such reversal), and the cash, proceeds and other property, aggregating approximately $5.7 million, held as of the date of this Settlement Agreement for application or credit against Permitted Allowable Claims (as defined below).

"Fiduciary/Agency Claim" means any Claim (now existing or hereafter arising) by or against any of JPMCB, JPMS or JPMCC in its capacity as a trustee or other fiduciary, or as an agent or representative, for anyone other than LBI, Trustee, JPMCB, JPMS or JPMCC; *provided, however* that no Claim arising from JPMorgan's role as an agent or fiduciary in connection with a securities lending program involving LBI or any transaction or agreement giving rise to a Permitted Allowable Claim (as defined below) shall in any event be a Fiduciary/Agency Claim.

"LBI Pre-SIPA Assigned Claim" means any Claim, now existing or hereafter arising, sold, assigned, transferred or otherwise disposed of by LBI at any time prior to the commencement of the liquidation of LBI under SIPA on September 19, 2008.

"Barclays APA Assigned Claim" means any Claim (now existing or hereafter arising) sold, assigned, transferred or otherwise disposed of pursuant to that certain Asset Purchase Agreement, dated as of September 16, 2008 among LBI, LBHI, LB 745 LLC ("745") and Barclays Capital Inc. ("BCI"), as amended (or purported to be amended) by that certain First Amendment thereto dated as of September 19, 2008 among LBI, LBHI, 745 and BCI and as further amended, supplemented or clarified (or purported to be amended, supplemented or clarified) pursuant to that certain letter agreement dated as of September 20, 2008 among Trustee, LBHI, 745 and BCI.

7

3. <u>Permitted Allowable Claims</u>.  Trustee shall not seek to disallow, reduce or subordinate, seek to avoid any payment, recovery or collateral in respect of, or otherwise object to or challenge (any of the foregoing, a "<u>Defense/Challenge</u>") any claim of JPMCB, JPMS or JPMCC against LBI identified in the Exposure Summary dated as of March 29, 2010 (the "<u>Exposure Summary</u>") provided by JPMorgan to Trustee, in each case to the extent of the amount of such claim shown on the Exposure Summary (including without limitation any claim that became unpaid as a result of the Deemed PB Cash Application Reversal, in an amount equal to the Deemed Reversal Amount) (a "<u>Permitted Allowable Claim</u>"); *provided that* the amount of the Permitted Allowable Claim on page 6, line 1g of the Exposure Summary shall be $6,104,767 rather than $7,000,000.  The Parties acknowledge that LBHI has acquired certain of the Permitted Allowable Claims from JPMorgan pursuant to the Collateral Disposition Agreement, and Trustee shall not object to or challenge any Permitted Allowable Claim so acquired by LBHI, *provided that*, notwithstanding anything to the contrary in this Section 3, Trustee may assert any equitable subordination Defense/Challenge against LBHI with respect to any such Permitted Allowable Claim so acquired by LBHI so long as such Defense/Challenge is not based upon any role or conduct of JPMorgan or otherwise is based upon any Claim released pursuant to Section 2(a).  To the extent a Permitted Allowable Claim is unpaid, Trustee shall treat such claim for purposes of distributions in LBI's SIPA liquidation proceeding the same as other similarly situated claims and JPMorgan (or any other holder thereof) may collect and retain any distributions or other recoveries thereon.  This Settlement Agreement shall have no effect on (a) the claims of subsidiaries and affiliates of JPMorgan shown on the Exposure Summary, other than those shown as being held by JPMCB, JPMS or JPMCC, (b) the Colt Claim or (c) the Other Claims.  Any term of this Section 3 to the contrary notwithstanding, Trustee in any event may seek to reduce the amount of any Permitted Allowable Claim on account of any proceeds adjustment or other recovery of proceeds arising from an event occurring, a settlement entered into, or a binding determination entered after January 1, 2011, in each case to the extent that it causes an increase in the amount applied to the payment of a claim.

4. <u>Collateral Disposition Agreement</u>.  This Settlement Agreement shall not be deemed a waiver of any of JPMorgan's rights and remedies under the Collateral Disposition Agreement dated March 16, 2010 to which JPMorgan and LBHI are parties and the March 31, 2010 and July 12, 2010 letter agreements relating thereto to which JPMCB and LBHI are parties (collectively, the "<u>Collateral Disposition Agreement</u>"), all of which are expressly reserved.

5. <u>Entire Agreement</u>.  This Settlement Agreement constitutes the entire contract among the Parties relative to the subject matter hereof.  This Settlement Agreement supersedes any previous agreements or understandings among the Parties, express or implied, with respect to the subject matter hereof, except that the Services and Settlement Agreement dated as of September 22, 2008 (to the full extent it is effective and not expressly superseded hereby) to which JPMCB and Trustee are parties and the Settlement Agreement dated as of December 5, 2008 to which JPMCB and Trustee are parties shall each remain in full force and effect.  No amendment, supplement or modification of this Settlement Agreement, or waiver of rights hereunder, shall be binding unless executed in

8

writing by the Party affected thereby. On the Effective Time, the Tolling Agreement dated as of September 14, 2010 (the "Tolling Agreement") to which JPMorgan and Trustee are parties shall terminate. Unless and until this Settlement Agreement is terminated in accordance with its terms, no Party shall deliver written notice pursuant to paragraph 3 of the Tolling Agreement.

6. No Admissions. Nothing in this Settlement Agreement or any negotiations or proceedings in connection herewith shall be claimed to be evidence of an admission by any Party or its affiliates of any liability, violation of law or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any Party. Neither this Settlement Agreement, nor any negotiations or proceedings in connection herewith, may be used in any proceeding against any Party or its affiliates for any purpose except with respect to the validity, effectuation and enforcement of this Settlement Agreement. Nothing contained herein shall be deemed an admission by any Party of any assertions made herein by any other Party.

7. Counterparts; Signatures. This Amendment may be executed in one or more counterparts, all of which taken together shall constitute one instrument. This Settlement Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

8. Effective Time. (a) Except for Sections 1(d) (last sentence only), 6, 7, 8, 9, 11 and 12, this Settlement Agreement shall not become effective until such time (the "Effective Time") as an order in form and substance satisfactory to the Parties authorizing the execution, delivery and performance of this Settlement Agreement by Trustee (with no modification or deletion of any of the provisions of this Settlement Agreement, except as may be agreed by each of the Parties in their sole discretion) (the "Authorizing Order") has been entered by the United States Bankruptcy Court for the Southern District of New York having jurisdiction over LBI's SIPA liquidation proceeding (the "Bankruptcy Court") and has become final and no longer subject to appeal.

(b) Effective upon the Parties' execution and delivery of this Settlement Agreement, Trustee shall promptly request approval of the Settlement Agreement by the Bankruptcy Court, and shall reasonably endeavor to obtain such approval. Trustee shall consult in good faith with JPMorgan as to the language of the Authorizing Order, the motion and related pleadings seeking the Authorizing Order, and any press releases relating to this Settlement Agreement and the Claims to be released hereunder. JPMorgan shall cooperate in good faith with Trustee's efforts to obtain the Authorizing Order; and JPMorgan and Trustee shall in good faith and to the full extent reasonably possible (i) cooperate with each other's reasonable requests regarding such motions and related pleadings, and (ii) refrain from making disparaging statements about the other in such motion, pleadings and any other written or oral statements (including without limitation public statements and on the record statements to the media) relating to this Settlement Agreement or the Claims to be released hereunder (other than in connection with any action, suit or proceeding to enforce the terms hereof). Nothing in this

9

Settlement Agreement shall affect either Trustee's right to seek information from JPMorgan by formal or informal means in pursuit of his investigatory duties in accordance with the terms of the Order of the Court entered on January 15, 2009 (Case No. 08-1420, Docket No. 561), and pursuant to § 78fff-1(d) of SIPA, 15 U.S.C. § 78fff-(1)d, or any rights of JPMorgan to object to or oppose providing such information, provided that, prior to the issuance of any formal or informal process, demand or request, counsel for Trustee and JPMorgan shall consult in good faith with respect to any information sought by Trustee and JPMorgan shall provide cooperation and assistance to Trustee to the extent reasonable as agreed in such consultations. In the event that the Bankruptcy Court declines to enter the Authorizing Order (or a court enters an order precluding the entry of an order that would qualify as the Authorizing Order or overturning any Authorizing Order entered by the Bankruptcy Court, and such order has become final and no longer subject to appeal), this Settlement Agreement shall terminate and be of no further force or effect.

(c) If this Settlement Agreement terminates in accordance with Sections 8(b), each provision contained in this Settlement Agreement shall be of no further force and effect from and after such date of termination and (without limiting the generality of the foregoing) the mutual releases granted by the Parties in Section 2 and the covenant of Trustee set forth in Section 3 shall be void *ab initio*; provided, however, that Section 6 shall survive any termination of this Settlement Agreement.

9. Governing Law; Jurisdiction. THIS SETTLEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party other than Trustee hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the New York state court located in the Borough of Manhattan, City of New York, the United States District for the Southern District of New York or the Bankruptcy Court (as applicable, the "New York Court"), and any appellate court from any such court, in any proceeding arising out of or relating to this Settlement Agreement, or for recognition or enforcement of any judgment resulting from any such proceeding, and each Party other than Trustee hereby irrevocably and unconditionally agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in the New York Court. Trustee hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, and any appellate court from such court, in any proceeding arising out of or relating to this Settlement Agreement that is brought against Trustee, or for recognition or enforcement of any judgment resulting from any such proceeding against Trustee, and each Party hereby irrevocably and unconditionally agrees that the Bankruptcy Court shall have exclusive jurisdiction of any action, suit or proceeding by or against Trustee arising out of or relating to this Settlement Agreement. Each Party hereby knowingly, voluntarily, intentionally, irrevocably and unconditionally waives, to the full extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any proceeding arising out of or relating to the Settlement Agreement in the New York Court or the Bankruptcy Court, as applicable, specified above, (ii) the defense

10

of an inconvenient forum to the maintenance of such proceeding in any such court, (iii) the right to object, with respect to such proceeding, that such court does not have jurisdiction over such Party and (iv) any right to a trial by jury with respect to any such proceeding. Each Party irrevocably consents to service of process in any manner permitted by law.

10. <u>Binding Effect</u>. This Settlement Agreement shall bind, and be for the benefit of, the Parties hereto and (provided that this sentence shall not expand the scope of the release, waiver and discharge set forth in Sections 2(a) and (b)) their respective successors and assigns. Nothing in this Settlement Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto any rights, remedies, obligations or liabilities under or by reason of this Settlement Agreement, *except* that (provided that this Settlement Agreement in any event may be amended, supplemented or modified in the manner set forth in Section 5) all persons and entities released pursuant to Section 2 of this Settlement Agreement are intended beneficiaries of such release.

11. <u>Construction; No Reliance</u>. This Settlement Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Settlement Agreement or any of its provisions against the Party responsible for drafting this Settlement Agreement will not apply in any construction or interpretation of this Settlement Agreement. All Section references in this Settlement Agreement refer to Sections of this Settlement Agreement, unless otherwise specified. The Parties acknowledge and agree that they have been represented by their own counsel and advisors in connection with this Settlement Agreement, have conducted their own investigations of the relevant facts and circumstances, and are not relying on any representations or warranties of any other Party except for the representations and warranties expressly set forth herein. Trustee acknowledges and agrees that he and his counsel and advisors have had reasonable and adequate access to JPMorgan's books and records in connection with such investigations.

12. <u>Full Power and Authority</u>. Trustee, on the one hand, and each of the other Parties, on the other hand, hereby represent and warrant to each other that it has full power and authority to execute, deliver and perform this Settlement Agreement.

IN WITNESS WHEREOF the Parties have executed this Settlement Agreement as of the date first set forth above.

[Remainder of page intentionally left blank]

11

Signature Page to Settlement Agreement dated as of April 20, 2011

JPMORGAN CHASE BANK, N.A.

By _____

J.P. MORGAN SECURITIES LLC

By _____

J.P. MORGAN CLEARING CORP.

By _____

JAMES W. GIDDENS, as Trustee for the SIPA liquidation of LBI.

By _____

LEHMAN BROTHERS INC., by James W. Giddens as Trustee.

By _____

12

Signature Page to Settlement Agreement dated as of April 20, 2011

JPMORGAN CHASE BANK, N.A.

By_____

J.P. MORGAN SECURITIES LLC

By_____

J.P. MORGAN CLEARING CORP.

By_____

JAMES W. GIDDENS, as Trustee for the SIPA liquidation of LBI.

By */s/ James W. Giddens*

LEHMAN BROTHERS INC., by James W. Giddens as Trustee.

By */s/ James W. Giddens*

12

ANNEX A

PB Physical Securities

[REDACTED]

13