**Hearing Date and Time: November 30, 2011 at 10:00 a.m. (prevailing Eastern Time)**

HOGAN LOVELLS US LLP
Christopher R. Donoho, III
875 Third Avenue
New York, New York 10022
212-918-3000

*Attorneys for Italease Finance S.p.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
 ----------------------------------------------------------------------X
In re:                                                                    :
                                                                          :    Chapter 11
LEHMAN BROTHERS HOLDING INC., et. al.,                                    :
                                                                          :    Case No. 08-13555 (jmp)
                        Debtors.                                          :
                                                                          :    (Jointly Administered)
 ----------------------------------------------------------------------X

### RESPONSE OF ITALEASE FINANCE S.P.A. TO DEBTOR'S ONE HUNDRED AND EIGHTY SEVENTH OMNIBUS OBJECTION TO CLAIMS (MISCLASSIFIED CLAIMS)

Italease Finance S.p.A.. ("Italease"), by and through its undersigned counsel, hereby files

its response (the "Response") to the Debtors' One Hundred Eighty Seventh Omnibus Objection

to Claims (Misclassified Claims) (the "Objection") [Docket No. 19187], and respectfully

represents as follows: [1]

---

[1]Italease is a company organized under the laws of Italy. Italease enters this limited appearance in the Debtors'
chapter 11 cases (collectively, the "**Cases**") for the purpose of making this Response to the Debtors' claims
objection. By making this limited appearance in the Cases, filing related objections, and submitting this Response,
Italease does not submit itself or otherwise consent or acquiesce, and shall not be deemed to have submitted itself,
consented or acquiesced, to the jurisdiction of this Court, or any other court of the United States, for any purpose
other than with respect to this Response. Italease does not waive any, and hereby reserve all, of their rights to object
on jurisdictional grounds to the application of any procedural order or proposed assumption of any alleged contract,
if ordered by this Court, or any other order of this Court, or any other court resident in the United States.

## BACKGROUND

1.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.      Prior to the commencement of the Cases, on March 22, 2005, Italease entered into an ISDA Master Agreement (Multicurrency-Cross-Border) (as amended, the "Master Agreement") with one of the Debtors, Lehman Brothers Special Financing Inc. ("LBSF"). On that same day, Italease entered into a related schedule (the "Schedule") and trade confirmation (the "Confirmation") with LBSF.   Additionally, LBHI unconditionally guaranteed the obligations of LBSF under the Master Agreement pursuant to a Guarantee of Lehman Brothers Holdings Inc., attached to the Master Agreement (the "Guarantee").

3.      Pursuant to the terms of the Master Agreement, Italease issued certain asset backed notes that were traded in the public security markets and are still outstanding.  On August 1, 2008, LBHI (as settlor), HSBC Corporate Trust Company (UK) Limited ("HSBC") (as trustee) and Lehman Brothers International (Europe) (as calculation agent) entered in a Declaration of Trust (the "Declaration of Trust",[2] and together with the Master Agreement, the Schedule, the Confirmation and the Guarantee, the "Master Agreement Documents"), whereby LBHI agreed to provide collateral to Italease to support the obligations of LBSF to Italease under the Master Agreement by crediting funds into a trust account at HSBC for the benefit of Italease (the "Trust Account").  As far as Italease is aware, the Trust Account, and the assets therein, are still in existence and appear to be outside the reach of Italease without the consent of the

---

[2] The Declaration of Trust is attached hereto as **Exhibit A**.

Debtors.  The total amount of assets in such Trust Account should equal or exceed the amount of Italease's Claims (as defined below).

4.        All of the Master Agreement Documents[3] are governed by English law, with the exception of the Guarantee, which is governed by New York law.

5.        The filing of a voluntary petition under chapter 11 of the Bankruptcy Code by LBHI (the 'Credit Support Provider' pursuant to the Master Agreement) constituted an event of default by LBSF under Clause 5(a)(vii) of the Master Agreement.  In accordance with the 'safe harbor' provisions of the Bankruptcy Code, Italease gave notice to LBSF (via a Notice of Event of Default dated September 29, 2008) that, pursuant to Section 6(a) of the Master Agreement, September 30, 2008 was the Early Termination Date (as such term in defined in the Master Agreement) with respect to all Transactions.  Pursuant to Section 6(d) of the Master Agreement, Italease calculated the amount owing by LBSF to Italease with respect to the Early Termination Date for the Transactions in accordance with Sections 6(e) and Section 11 of the Master Agreement.  Italease demanded such payment by a letter dated June 17, 2009, requesting the immediate payment EUR 251,939.78 ($354,347.67) (the "Settlement Amount").  Pursuant to the Declaration of Trust and the other Master Agreement Documents, the assets in the Trust Account should have been used to satisfy Italease's claim for the Settlement Amount, as Italease is entitled to such assets, but they were not.

6.        On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these Cases (the "Bar Date Order") [Docket No. 4271].

---

[3] Because (i) of the voluminous nature of the Master Agreement Documents and other writings executed or delivered in connection with the Master Agreement Documents that support this Response; and (ii) all of these documents are or should be in the Debtors' possession and were provided to the Debtors as part of submitting the Claims pursuant to the Bar Date Order, the only document identified herein that is annexed hereto is the Declaration of Trust.  However, all such documents are expressly incorporated herein by reference and, subject to any confidentiality restrictions, will be made available upon reasonable request by contacting counsel to Italease.

7.      In compliance with the Bar Date Order, Italease timely filed proofs of claim for the Settlement Amount against LBSF and LBHI (as guarantor under the Guarantee), which were assigned proofs of claim number 28075 and 28074, respectively (collectively, the "Claims"). The Claims were filed by Italease as secured claims, given that the Declaration of Trust established a security interest for Italease in the assets in the Trust Account.

8.      On September 9, 2011, the Debtors filed the Objection.  The Objection asserts that "no portion of the Claims . . . are actually secured claims and . . . such claims are not entitled to secured status as asserted in the proof of claim." Objection ¶2.  The Debtors provide no justification for such assertion, beyond vague statements regarding setoff rights under Section 553 of the Bankruptcy Code.  *Id.* ¶9-10.  The Objection contains no facts or arguments relevant to the Claims, beyond listing the Claims as objected to and thus Italease has no basis to believe that the Claims should be reclassified.

## RESPONSE

**The Debtors Have Failed to Meet the Burden of Proof**

9.      Under Section 502 of the Bankruptcy Code, a filed proof of claim is deemed allowed.  "The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The debtor must introduce evidence to rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted). *See also In re Spiegel, Inc.*, 2007 WL 2456626, *15 n.6 (S.D.N.Y. Aug. 22, 2007).

10.      Fundamental principles of bankruptcy law require the Debtors to introduce admissible evidence to overcome the prima facie validity of a claim and to shift the burden of

proof back to the claimant. "Mere denial of [a] claim's validity or amount is not sufficient to rebut prima facie effect of [the] proof of claim." Hon. Barry Russell, <u>Bankruptcy Evidence Manual</u>, § 301.13(3) (West Group, 1999) (citing *In re O'Connor*, 153 F.3d 258 (5th Cir. 1998); *In re Brown*, 221 B.R. 46 (Bankr. S.D. Ga. 1998); *In re Narragansett Clothing Co.*, 143 B.R. 582, 583 (Bankr. D.R.I.1992)).

11.    The Objection fails to provide any such evidence refuting the validity of the Claims' secured status. In contrast to the extensive documentation provided by Italease to support the Claims, the Debtors only offer unsupported statements. On this basis alone, the Objection fails.

**The Claims are Secured Pursuant to the Declaration of Trust**

12.    The Objection to the Claims should also be overruled on the basis that the assets held in the Trust Account pursuant to the Declaration of Trust were in fact segregated and held specifically for the benefit of Italease.  Therefore, Italease has a security interest in such assets in accordance with governing law.

13.    Specifically, pursuant to Section 2 of the Declaration of Trust, the assets held in the Trust Account are held for the "Beneficiaries" (as such term is defined in the Declaration of Trust).  "The Trustee [HSBC] shall hold the Trust Property credited to the Trust Account . . . on trust for the Beneficiaries as follows: . . . [Italease], to the extent that amounts are payable . . . to it by Lehman under the Swap Agreement upon termination of the Swap Transaction." Declaration of Trust, Sec. 2.2.  Therefore, the assets in the Trust Account are held for the sole and express purpose of satisfying the Claims of Italease under the Master Agreement Documents.

14.    As was mentioned above, the Declaration of Trust is an English law-governed document.  On advice of English counsel, it is Italease's understanding that the Declaration of

Trust gives Italease a priority right to secure payments to Italease under the Master Agreement Documents.   The Debtors' Objection does not refute this position.

15.      Accordingly, the Declaration of Trust functions as a 'lien' as such term is used in section 506(a)(1) of the Bankruptcy Code. "Lien" is defined by section 101(37) of the Bankruptcy Code as a "charge or interest in property to secure payment of a debt or performance of an obligation."   Under English law, the Declaration of Trust creates such an interest in property (the Trust Account) to secure performance of the Debtors' obligations to Italease (the Claims).

## CONCLUSION

16.      Italease has established that it is a secured creditor of the Debtors through the existence of the Declaration of Trust.  The Objection fails to offer any evidence that would in any way rebut Italease's right to satisfy its Claims from the Trust Account and to have those Claims regarded as secured, as provided in the Declaration of Trust and the other Master Agreement Documents.  Accordingly, the Objection should be denied with respect to Italease's Claims.

## RESERVATION OF RIGHTS

17.      Italease reserves any and all applicable rights at law and/or equity, all claims, and all defenses, including without limitation the right to discovery in connection with the Debtors' Objection and the right to amend or supplement this Response and to join in the response of any other party to the Objection.

WHEREFORE, Italease respectfully requests that the Court (i) overrule the Objection as set forth herein, and (ii) grant such other and further relief as this Court deems just and proper under the circumstances.

Dated: November 16, 2011
New York, New York

**HOGAN LOVELLS US LLP**

/s/ Christopher R. Donoho, III
Christopher R. Donoho, III
875 Third Avenue
New York, NY 10022
(212) 909-0630 Telephone
(212) 918-3100 Facsimile

*Attorneys for Italease Finance S.p.A.*

## EXHIBIT A

**C L I F F O R D**

**C H A N C E**

CLIFFORD CHANCE LLP

1 AUGUST 2008

**LEHMAN BROTHERS HOLDING INC.**

**AND**

**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

**AND**

**HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**

**DECLARATION OF TRUST**

# CONTENTS

**Clause**                                                                                      **Page**

1.   Construction ............................................................................... 1

2.   Constitution And Declaration Of Trust ...................................... 2

3.   Trusts Terminated At Expiration Of Trust Period ........................ 3

4.   Additions To, And Releases From, Trust Property ........................ 3

5.   Acknowledgments Of The Trustee ............................................. 5

6.   Relief Of Trustee From Liability ............................................... 5

7.   Supplement To Trustee Acts ................................................... 6

8.   Costs And Expenses ............................................................. 8

9.   Other Interests Of Trustee ...................................................... 10

10.  Changes Of Trustee............................................................... 10

11.  Trustee's Powers .................................................................. 10

12.  Modification ........................................................................ 10

13.  Notices................................................................................ 11

14.  Governing Law ..................................................................... 13

15.  Contracts (Rights Of Third Parties) Act 1999 ............................. 13

16.  Counterparts ....................................................................... 13

**THIS DECLARATION OF TRUST** is made 1 August 2008

**BETWEEN:**

(1)     **LEHMAN BROTHERS HOLDING INC.**, in its capacity as settlor of the trusts constituted by this Deed (the "**Settlor**");

(2)     **LEHMAN BROTHERS INTERNATIONAL (EUROPE)**, together with the Settlor, in their capacities as calculation agent (the "**Calculation Agent**"); and

(3)     **HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**, in its capacity as trustee of this Deed (the "**Trustee**", which expression shall include its successors and all other persons acting from time to time as the trustee pursuant to and in accordance with this Deed).

**WHEREAS:**

(A)     Lehman, as swap counterparty, entered into an ISDA Master Agreement dated 22 March 2005 (the "**Swap Agreement**") with the Issuer. Lehman intends to enter into a credit support annex in relation to the Swap Agreement based on the *ISDA form of Credit Support Annex (Bilateral Form - Transfer)* (the "**Credit Support Annex**") under which Lehman is required to provide collateral (the "**Swap Collateral**") to the Issuer in certain circumstances to support the obligations of Lehman to the Issuer under a swap transaction (the "**Swap Transaction**") entered into under and in accordance with the terms of the Swap Agreement.

(B)     Pending the execution of the Credit Support Annex, the Settlor wishes, on behalf of Lehman, to provide for the provision of the Swap Collateral to the Issuer. In order to provide the Swap Collateral, the Settlor wishes to enter into this Deed and settle the Trust Property on the Trustee. The Trustee has agreed to act as trustee of the Trust Property and to hold it on trust for the benefit of the Beneficiaries, subject to and in accordance with this Deed.

**NOW THIS DEED WITNESSETH** as follows:

1.     **Construction**

(a)     In this Deed, where the context so admits or requires, the following expressions shall have the following meanings:

"**Account Mandate**" means the bank account mandate dated on or about the date of this Deed pursuant to which the Trustee opens and operates the Trust Account;

"**Additional Trust Property**" means any further amounts credited to the Trust Account by Lehman after the date of this Deed pursuant to Clause 4.2(a);

"**Beneficial Entitlement**" means the Initial Trust Property and the Additional Trust Property;

"**Beneficiaries**" means the Issuer and Lehman;

"**Business Day**" means a day (other than a Saturday or Sunday) on which banks are open for general business in London;

"**Initial Trust Property**" means the sum of €1,220,000 to be credited to the Trust Account in accordance with Clause 2.1;

"**Issuer**" means Italease Finance S.p.A.;

"**Lehman**" means Lehman Brothers Special Financing Inc.;

"**this Deed**" means this declaration of trust as the same may stand varied or modified from time to time by deed supplemental hereto made in accordance with the terms of this Deed;

"**Trust Account**" means the bank account opened in the name of the Trustee to which the Trust Property is to be credited in accordance with this Deed;

"**Trust Property**" means the Beneficial Entitlement from time to time, together with all interest accruing thereon in accordance with the Account Mandate;

"**Trustee Acts**" means both the Trustee Act 1925 and the Trustee Act 2000 of England and Wales; and

"**Trust Period**" has the meaning given to it in Clause 3.

(b)    In this Deed, where the context so admits or requires, the singular includes the plural and vice versa, references to any gender include all genders and references to persons include bodies corporate.

(c)    The headings in this Deed are inserted for ease of reference only and shall not affect construction.

(d)    References in this Deed to any statutory provision shall be deemed, unless the context otherwise requires, to include references to any such provisions as the same may from time to time be amended or re enacted and to any subordinate legislation made under such provision.

(e)    Unless otherwise provided, references in this Deed to Clauses and Recitals are to Clauses of and Recitals to this Deed. The Recitals form part of this Deed and the expression "**this Deed**" shall therefore include the Recitals.

2.    **Constitution and Declaration of Trust**

2.1    Lehman shall transfer the Initial Trust Property absolutely to the Trustee on or before 1 August 2008 by crediting such amount to the Trust Account. The Trustee shall hold the Trust Property on trust for the Beneficiaries in accordance with Clause 2.2 and the terms of this Deed.

2.2    The Trustee shall hold the Trust Property credited to the Trust Account from time to time during the Trust Period on trust for the Beneficiaries as follows:

(a)     prior to the execution of the Credit Support Annex, as to the Beneficial
Entitlement, on trust for:

(i)     the Issuer, to the extent that amounts are payable (or, if a Credit Support
Annex had been entered into, would have been) to it by Lehman under
the Swap Agreement upon termination of the Swap Transaction in
respect of which the Swap Collateral was required to be provided;

(ii)    Lehman, to the extent that Lehman is (or, if a Credit Support Annex had
been entered into, would have been) entitled to a return of Swap
Collateral (or of property equivalent to the Swap Collateral) under the
Swap Agreement; and

(iii)   Lehman, to the extent that amounts are not yet payable to the Issuer or
Lehman pursuant to Clauses 2.2(a)(i) or (ii) above;

(b)     upon execution of the Credit Support Annex, as to the Beneficial Entitlement,
on trust for:

(i)     the Issuer, to the extent of Lehman's obligation to transfer Swap
Collateral to the Issuer under the Credit Support Annex; and

(ii)    Lehman, to the extent of the balance of the Beneficial Entitlement (if
any); and

(c)     as to interest accruing on the Trust Account from time to time, on trust for
Lehman,

in each case, for payment to or to the order of the relevant Beneficiary subject to and
in accordance with Clause 4.

3.      **Trusts terminated at Expiration of Trust Period**

The trusts constituted by this Deed shall be wound up on the first to occur of (i) the
execution of the Credit Support Annex and (ii) the termination of the Swap Agreement
in accordance with its terms and the payment of the Beneficial Entitlement and all
interest accrued on the Trust Account to the relevant Beneficiary in accordance with
Clause 4 (the "**Trust Period**").

4.      **Additions to, and releases from, Trust Property**

4.1     The Calculation Agent shall, from the date of this Deed, by 5 p.m. (London time) on
the first Business Day of each week:

(a)     notify Lehman and the Trustee in writing of any additional amount of Swap
Collateral which Lehman or the Settlor will provide to the Issuer; or

(b)     subject to Clause 4.3, notify Lehman and the Trustee in writing of any amount
of Swap Collateral which is to be returned to Lehman.

4.2    On receipt of notice in writing from the Calculation Agent in accordance with Clause 4.1:

     (a)      if the notice is delivered pursuant to Clause 4.1(a), Lehman or the Settlor shall transfer absolutely to the Trustee the amount specified in such notice by crediting such amount to the Trust Account promptly and in any event by 5 p.m. (London time) on the following Business Day; and

     (b)      subject to Clause 4.3, if the notice is delivered pursuant to Clause 4.1(b), the Trustee shall promptly, and in any event by 5 p.m. (London time) on the following Business Day, transfer the amount specified in such notice to or to the order of Lehman.

4.3    If the amount which, in the absence of this Clause 4.3, would be specified in a notice in writing provided by the Calculation Agent pursuant to Clause 4.1(a) or Clause 4.1(b) is less than €100,000, then (i) the Calculation Agent shall notify Lehman and the Trustee accordingly and (ii) Lehman shall not be required to transfer any amount to the Trustee in accordance with Clause 4.2(a) or, as the case may be, the Trustee shall not be required to transfer any amount to Lehman in accordance with Clause 4.2(b).

4.4    Any amounts of Swap Collateral credited to the Trust Account by Lehman pursuant to Clause 4.2(a) shall be held on trust by the Trustee as Additional Trust Property subject to and in accordance with this Deed. Any amounts of Swap Collateral transferred to Lehman by the Trustee pursuant to Clause 4.2(b) shall, following such payment, be released from the trusts constituted by this Deed.

4.5    Lehman hereby appoints the Calculation Agent as its agent for the purposes specified in Clause 4.1 only. The Calculation Agent shall only be obliged to perform the duties set out therein and such other duties as are necessarily incidental thereto. The Calculation Agent shall not be under any fiduciary duty or have any other obligation towards or have any relationship of agency or trust for or with any other Beneficiary. The obligations of the Calculation Agent under this Agreement are several not joint.

4.6    Upon execution of the Credit Support Annex, the Calculation Agent shall promptly notify the Trustee in writing thereof, specifying the amount of the Beneficial Entitlement payable by Lehman to the Issuer pursuant to the Credit Support Annex and the payment details of the Issuer. On receipt of such notification, the Trustee shall promptly pay such amount (if any) to the Issuer and pay the balance of the Beneficial Entitlement, if any, to the order of Lehman.

4.7    Payments by the Trustee of a Beneficial Entitlement to the Issuer pursuant to Clause 4.6 shall discharge the obligations of Lehman to provide Swap Collateral to the Issuer pursuant to the Credit Support Annex.

4.8    If a Swap Transaction is terminated under which:

     (a)      Lehman owes an amount to the Issuer, the Issuer shall notify Lehman, with a copy to the Calculation Agent. The Calculation Agent shall calculate the

amount of the Beneficial Entitlement payable to the Issuer and shall notify the Trustee accordingly together with the payment details of the Issuer. On receipt of such notification, the Trustee shall promptly transfer the relevant Beneficial Entitlement to the Issuer with the balance (if any) then being promptly transferred by the Trustee to or to the order of Lehman; or

(b)     Lehman is entitled to receive the return of the Swap Collateral relating to the Swap Transaction, the Trustee shall promptly transfer the Beneficial Entitlement to Lehman upon demand being made in writing to the Trustee by Lehman.

4.9     All interest accruing on the Trust Account shall be payable by the Trustee to or to the order of Lehman on the first Business Day of each month.

## 5.     Acknowledgments of the Trustee

5.1     Subject to Clause 8.8, the Trustee acknowledges that it has no right at any time to set off or transfer any of the Trust Property in or towards satisfaction of any liabilities of the Beneficiaries to the Trustee.

5.2     The Trustee acknowledges and declares that the trusts constituted by this Deed are not intended to create, nor do they create, any encumbrance in favour of any person over any property or assets of the Settlor or Lehman but rather is intended clearly to delineate the beneficial interest of the Beneficiaries in the Trust Property.

## 6.     Relief of Trustee from liability

6.1     Section 1 of the Trustee Act 2000 shall not apply to the duties of the Trustee in relation to this Deed. Where there are any inconsistencies between the Trustee Acts and the provisions of this Deed, the provisions of this Deed shall, to the extent allowed by law, prevail and, in the case of any such inconsistency with the Trustee Act 2000, the provisions of this Deed shall constitute a restriction or exclusion for the purposes of that Act.

6.2     Subject to Sections 750 and 751 of the Companies Act 2006 (if applicable) and notwithstanding anything to the contrary in this Deed, in the professed execution of the trusts and powers hereof the Trustee shall not be liable for any loss to the Trust Property arising by reason of:

(a)     the negligence or fraud of any agent or delegate appointed by it; or

(b)     any mistake or omission made in good faith by it; or

(c)     any other matter or thing whatsoever without limitation, except any wilful default, gross negligence or fraud on its part.

7.  **Supplement to Trustee Acts**

By way of supplement to and without limiting the Trustee Acts and the other provisions of this Deed, it is expressly declared as follows:

(a)  The Trustee may in relation to this Deed act on the advice or opinion of or any information obtained from any lawyer, valuer, accountant, banker, broker or other expert whether obtained by the Trustee or otherwise and shall not be responsible for any loss occasioned by so acting;

(b)  Any such advice, opinion or information may be sent or obtained by letter, facsimile or electronic transmission and the Trustee shall not be liable for acting on any advice, opinion or information purporting to be conveyed by any such letter, facsimile or electronic transmission although the same shall contain some error or omission or shall not be authentic;

(c)  The Trustee may call for and shall be at liberty to accept as sufficient evidence of any fact or matter or the expediency of any transaction or thing a certificate or (in the case of demands in writing as to the amounts to be paid in accordance with Clause 4.1 (*Release of Trust Property*)) demands in writing signed by an authorised signatory of any Beneficiary and the Trustee shall not be bound in any such case to call for further evidence or be responsible for any loss that may be occasioned by the Trustee acting on such certificate or written demand, as the case may be;

(d)  The Trustee shall be at liberty to hold or to place this Deed and any other instruments, documents or deeds delivered to it pursuant hereto or in connection herewith in any part of the United Kingdom in its own vaults or with any banker or banking company or company whose business includes undertaking the safe custody of documents or lawyer or firm of lawyers considered by the Trustee to be of good repute and the Trustee shall not be responsible for or require to insure against any loss incurred in connection with any such deposit and may pay all sums required to be paid on account of or in respect of any such deposit;

(e)  The Trustee shall not be liable for acting in relation to this Deed upon any certificate, notice, request, written instruction or demand or other document or calculation notified to the Trustee by the Calculation Agent which appears to be authentic and purports to emanate from any Beneficiary or the Calculation Agent notwithstanding that the same is subsequently found to contain some error or omission or is not authentic and shall be entitled to rely absolutely on the same without further enquiry; and

(f)  No Trustee shall (unless and to the extent ordered so to do by a court of competent jurisdiction) be required to disclose to any person any confidential, financial, price sensitive or other information made available to the Trustee in

connection with this Deed and no person shall be entitled to take any action to obtain from the Trustee any such information.

(g)    The Trustee shall be under no obligation to monitor or supervise the performance by Lehman of its obligations under this Deed, the Swap Agreement or the Credit Support Annex and shall be entitled, in the absence of actual knowledge of a breach of obligation, to assume that Lehman is properly performing and complying with its obligations.

(h)    The Trustee shall not be liable for any error of judgment made in good faith by any officer or employee of the Trustee assigned by the Trustee to administer its corporate trust matters.

(i)    Notwithstanding anything else contained in this Deed, the Trustee may refrain from doing anything which would or might in its opinion be contrary to any law of any jurisdiction or any directive or regulation of any agency of any state or which would or might otherwise render it liable to any person and may do anything which is, in its opinion, necessary to comply with any such law, directive or regulation.

(j)    The Trustee shall not be responsible for any unsuitability, inadequacy or unfitness of any of the Trust Property in relation to satisfying the obligations of Lehman under the Credit Support Annex and shall not be obliged to make any investigation into, and shall be entitled to assume, the suitability, adequacy and fitness of the Trust Property in relation to satisfying the obligations of Lehman under the Credit Support Annex.

(k)    The Trustee shall have no responsibility whatsoever to Lehman or the Issuer as regards any deficiency which might arise because the Trustee is subject to any tax in respect of all or any of the Trust Property or the proceeds thereof.

(l)    The Trustee shall not be responsible for:

(i)    Any recitals, statements, representations, warranties of any party contained in this Deed, the Swap Agreement or the Credit Support Annex or any document relating to the Swap Collateral or other documents entered into in connection herewith or therewith and shall assume the accuracy and correctness thereof nor shall the Trustee, by execution of this Deed, be deemed to make any representation as to the validity, sufficiency or enforceability of either the whole or any part of this Deed; or

(ii)    The execution, legality, effectiveness, adequacy, genuineness, validity, enforceability or admissibility in evidence of any such agreement or other document or any security created thereby.

(m)    No Beneficiary shall have any rights or remedies against the Trustee other than as expressly set out in this Deed.

(n)     The liability of the Trustee to any Beneficiary under this Deed shall be limited in recourse to the amount of the Trust Property standing to the credit of the Trust Account from time to time to which such Beneficiary is entitled and no Beneficiary shall have any recourse to any other assets of the Trustee, in its capacity as Trustee or otherwise.

(o)     Notwithstanding anything else herein contained, the Trustee may refrain from taking any action or exercising any right, power, authority or discretion vested in it under this Deed or any agreement relating to the transactions herein contemplated until it has been indemnified and/or secured to its satisfaction against any and all liabilities which might be brought, made or conferred against or suffered, incurred or sustained by it as a result and nothing contained in this Deed shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of its duties or the exercise of any right, power, authority or discretion hereunder if it has grounds for believing the repayment of such funds or adequate indemnity against, or security for, such risk or liability is not reasonably assured to it.

(p)     The Trustee shall not be liable or responsible for any loss, damage, cost, charge, claim, demand, expense, judgment, action, proceeding or other liability whatsoever (including, without limitation, in respect of taxes, duties, levies, imposts and other charges) (and including any value added tax or similar tax charged or chargeable in respect thereof and legal fees and expenses on a full indemnity basis) or inconvenience which may result from anything done or omitted to be done by it in accordance with the provisions of this Deed.

## 8.     Costs and Expenses

8.1     The Settlor shall pay to the Trustee remuneration for its services as trustee as from the date of this Deed, such remuneration to be at such rate as may from time to time be agreed between the Settlor and the Trustee. Such remuneration shall be payable promptly upon demand being made by the Trustee for the Settlor for payment thereof. Such remuneration shall accrue from day to day and be payable up to and including the date when the trusts of this Deed are extinguished.

8.2     In the event of the Trustee considering it expedient or necessary or being requested by the Settlor to undertake duties which the Trustee and the Settlor agree to be of an exceptional nature or otherwise outside the scope of the normal duties of the Trustee under this Deed, the Settlor shall pay to the Trustee such additional remuneration as shall be agreed between them.

8.3     The Settlor shall in addition pay to the Trustee an amount equal to the amount of any value added tax or similar tax chargeable in respect of its remuneration under this Deed.

8.4    In the event of the Trustee and the Settlor failing to agree (in a case to which Clause 8.1 applies) upon the amount of the remuneration or in a case to which Clause 8.2 applies) upon whether such duties shall be of an exceptional nature or otherwise outside the scope of the normal duties of the Trustee under this Deed, or upon such additional remuneration, such matters shall be determined by a merchant bank (acting as an expert and not as an arbitrator) selected by the Trustee and approved by the Settlor or, failing such approval, nominated (on the application of the Trustee) by the President for the time being of The Law Society of England and Wales (the expenses involved in such nomination and the fees of such merchant bank being payable by the Settlor) and the determination of any such merchant bank shall be final and binding upon the Trustee and the Settlor.

8.5    The Settlor shall also pay or discharge all costs, charges and expenses incurred by the Trustee in relation to the preparation and execution of, the exercise of its powers and the performance of its duties under, and in any other manner in relation to, this Deed, including but not limited to legal and travelling expenses and any stamp, issue, registration, documentary and other taxes or duties paid or payable by the Trustee in connection with any action taken or contemplated by or on behalf of the Trustee for enforcing, or resolving any doubt concerning, or for any other purpose in relation to, this Deed.

8.6    The Settlor shall indemnify the Trustee (a) in respect of all liabilities and expenses incurred  by it or other person appointed by it to whom any trust, power, authority or discretion may be delegated by it in the execution or purported execution of the trusts, powers, authorities or discretions vested in it by this Deed and (b) against all liabilities, actions, proceedings, costs, claims and demands in respect of any matter or thing done or omitted in any way relating to this Deed other than arising out of the negligence, wilful default or fraud of the Trustee.

8.7    All amounts due and payable pursuant to Clauses 8.5 and 8.6 shall be payable by the Settlor on the date specified in a demand by the Trustee; the rate of interest applicable to such payments shall be three per cent. per annum above the base rate from time to time of HSBC Bank PLC and interest shall accrue:

(a)    in the case of payments made by the Trustee prior to the date of the demand, from the date on which the payment was made or such later date as specified in such demand; and

(b)    in the case of payments made by the Trustee on or after the date of the demand, from the date specified in such demand, which date shall not be a date earlier than the date such payments are made.

All remuneration payable to the Trustee shall carry interest at the rate specified in this Clause 8.7 from the due date thereof.

8.8    Unless otherwise specifically stated in any discharge of this Deed the provisions of this Clause 8 shall continue in full force and effect notwithstanding such discharge.

9.    **Other interests of Trustee**

No Trustee and no director or officer of any corporation being a Trustee hereof shall by reason of the fiduciary position of such Trustee be in any way precluded from making any contracts or entering into any transactions in the ordinary course of business with Lehman or the Settlor or any other Beneficiary or any person or body corporate directly or indirectly associated with Lehman or the Settlor or any other Beneficiary or such other party, or from accepting the trusteeship of any other debenture stock, debentures or securities of Lehman or the Settlor or any other Beneficiary or such other party or any person or body corporate directly or indirectly associated with Lehman or the Settlor or any other Beneficiary or such other party.

10.    **Changes of Trustee**

10.1    A trustee of this Deed may resign at any time having given 30 days' notice thereof to the Settlor without assigning any reason and without being responsible for any costs occasioned by such resignation **provided that** its resignation cannot take effect until there shall be a corporation (whether or not the same shall be a trust corporation) or at least two individuals appointed to act as trustee or trustees to carry out the trusts constituted by this Deed.

10.2    The statutory power of appointing a new trustee or additional trustees as modified by this Deed shall apply to this Deed. The statutory power of appointing new or additional trustees is modified so that the statutory power of appointing additional trustees shall be exercisable notwithstanding that one of the trustees for the time being is a trust corporation.

10.3    The power of appointing a new trustee shall be exercisable by the Settlor alone **provided that** if the Settlor has not procured the appointment of a new trustee within 30 days of the expiry of the Trustee notice referred to in Clause 10.1, the Trustee shall be entitled to procure forthwith a new trustee.

10.4    Any corporate body may at any time be appointed as a trustee on such terms and conditions as to remunerations and otherwise in all respects as the person or persons making the appointment shall prescribe or approve.

11.    **Trustee's powers**

The trusts, powers, rights and authorities conferred upon the Trustee by this Deed shall be in addition to any powers which may from time to time be vested in the Trustee by the general law.

12.    **Modification**

The Trustee may concur with Lehman in making any modification to this Deed which in the opinion of the Trustee it may be proper to make **provided that** the Trustee is of the opinion that it is of a formal, minor or technical nature or to correct any manifest error.

13.    **Notices**

13.1    All notices and other communications hereunder shall be made in writing (by letter, telex, fax or email) and shall be sent as follows:

    (a)    if to the Settlor, to it at:

        339 Park Avenue
        11th Floor
        New York, New York 10022

        Fax:      +1 212 520 0176

        Attention:  Corporate Counsel

        with copies to:

        Lehman Brothers Special Financing Inc.
        c/o Lehman Brothers Inc.
        Capital Markets Contracts - Legal
        745 Seventh Avenue, 28th Floor
        New York, New York 10019

        Fax:      +1 212 526 2726

        Tel:      +1 212 526 7187

        and

        Lehman Brothers International (Europe)
        25 Bank Street
        London E14 5LE

        Fax:      +44 (0)207 102 1324

        Tel:      +44 (0)207 102 8785

        Email:    Derivativesmargin@lehman.com

        Attention:  Collateral Management

    (b)    if to Lehman, to it at:

        c/o Lehman Brothers Inc.
        Capital Markets Contracts - Legal
        745 Seventh Avenue, 28th Floor
        New York, New York 10019

        Fax:      +1 212 526 2726

        with copies to:

Lehman Brothers Holdings Inc.

339 Park Avenue

11th Floor

New York, New York 10022

Fax:        +1 212 520 0176

Attention:  Corporate Counsel

and

Lehman Brothers International (Europe)

25 Bank Street

London E14 5LE

Fax:        +44 (0)207 102 1324

Attention:  Collateral Management

(c)    if to the Trustee, to it at:

8 Canada Square

London E14 5HQ

Fax:        +44 (0)20 7991 4351

Attention:  CTLA Trustee Administration, Anna Danhaive

(d)    if to the Calculation Agent, to it at:

Lehman Brothers International (Europe)

25 Bank Street

London E14 5LE

Fax:        +44 (0)207 102 1324

Tel:        +44 (0)207 102 8785

Email:      Derivativesmargin@lehman.com

Attention:  Collateral Management

or, in either case, to such other address, telex number or fax number or for the attention of such other person or department as the addressee has by prior notice to the sender specified for the purpose.

13.2    Every notice or other communication sent in accordance with Clause 13.2 shall be effective upon receipt by the addressee, **provided that** any such notice or other communication which would otherwise take effect after 4.00 p.m. on any particular day shall not take effect until 10.00 a.m. on the immediately succeeding Business Day in the place of the addressee.

14. **Governing Law**

This Deed shall be governed by, and construed in accordance with, the laws of England.

15. **Contracts (Rights of Third Parties) Act 1999**

No person shall have any right to enforce any provision of this Deed under the Contracts (Rights of Third Parties) Act 1999.

16. **Counterparts**

This Deed may be executed in any number of counterparts, each of which shall be deemed an original.

**IN WITNESS WHEREOF this Deed has been executed as a deed by the parties hereto and is intended to be and is hereby delivered on the date first before written.**

**Trustee**

**Executed as a deed for and behalf of
HSBC CORPORATE TRUSTEE COMPANY (UK) LIMITED**
by:

.............................................

> Anne Danhaive
> Director

(Director)
Name:

In the presence of:

.............................................
Signature of witness

> Leticia Acevedo
> Authorised Signatory

.............................................
Name of witness

8 Canada Square
London E14 5HQ
Address of witness

Banking
Occupation of witness

**Calculation Agent**

**Executed as a deed by**
**LEHMAN BROTHERS INTERNATIONAL (EUROPE)**
acting by its duly authorised signatory:

.......R. Sandilands........

Name:

In the presence of:          .......S. Sh........

Signature of witness

.....JEREMY SHAW..........

Name of witness

.....25 BANK STREET.....

.....LONDON.................

Address of witness

.....LAWYER...................

Occupation of witness

Settlor

**Executed as a deed by**
**LEHMAN BROTHERS HOLDING, INC.**
acting by:

*R. Sandilands.*
..............................................
Name: