*CHAMbers*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**RETURN DATE: 4/26/12**

-------------------------------------------------------------x
:
In re :                                                    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :            08-13555 (JMP)
:
Debtors. :                                              (Jointly Administered)
: -------------------------------------------------------------x

### <u>NOTICE OF MOTION</u>

SIRS/MADAM:

PLEASE TAKE NOTICE, THAT THE UNDERSIGNED, WILLIAM KUNTZ,III WHO
APPEARS HERE PRO SE WILL MOVE UPON THE ANNEXED PAPERS AND
THOSE FURTHER PAPERS THAT MAY BE LODGED WITH THE COURT CLERK
UPON THE 26TH OF APRIL, 2012 @ 10 AM IN THE FORENOON FOR AN ORDER
VACATING OR MODIFYING THAT CERTAIN ORDER/DECISION OF JUDGE
PECK HANDED DOWN ON THE 10TH OF NOV, 2010 WITH RESPECT TO CERTAIN
CLAIMS OF MOVANT.

PLEASE TAKE NOTICE, THAT THE COURT MIGHT RULE WITH OR WITHOUT
CONSIDERING PAPERS IN OPPOSITION AND THAT THE COURT MAY, IN IT'S
OWN JUDGEMENT MADE ANOTHER DATE CERTAIN FOR A HEARING OR
RETURN DATE FOR THIS MOTION.

I THANK YOU IN ADVANCE,

WILLIAM KUNTZ, III
INDIA ST PO BOX 1801
NANTUCKET, MASS 02554-1801
507-775-9717

NANTUCKET ISLAND, MASS Nov 4, 2011



R E C E I V E D
NOV 7
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

FURTHER, AS THE COURT MAY RECALL AND AS REFLECTED IN THE
TRANSCRIPT MOVANT HAS PREVIOUSLY OFFERED AN EXHIBIT TO THE
COURT IN A PRIOR CLAIM OBJECTION HEARING.

TRANSCRIPT OF MARCH 17, 2010 PAGE 108-109  EX 2.

REGRETFULLY, A REVIEW SHOWS THAT TRANSCRIPT DID NOT CAPTURE
THE COURTS EXACT WORDS SPURNING THE OFFERING OF MY EXHIBIT.
CLEARLY, IT IS INCONSISTENT TO SAY THE LEAST TO ACCEPT PAPERS
FROM MR WAISMAN BUT NOT FROM MOVANT. FURTHER, MOVANT HAS
BEEN UNABLE TO DISCOVER ANY UNDERPINNING IN THE FEDERAL RULES
THAT PROVIDES FOR 'EVIDENTARY HEARINGS' ASIDE FROM WHAT IS THE
CUSTOM OF THIS COURT.

IN WORKING BACKWARDS FROM A PREDISPOSITION TO FIND AGAINST
MOVANT THE COURT NEVER ADDRESSED THE CENTRAL AND MOST
IMPORTANT ISSUE.

WHETHER THE $3.5 MILLION DOLLARS FROM THE CASH ESCROW IN
GRAND UNION WAS IN FACT PROPERTY OF THIS ESTATE. WHILE THE
COURT WENT TO GREAT LENGTH TO ADDRESS THE MARTIN ACT, THE
TERMS OF THE ESCROW DIDN'T REQUIRE MOVANT TO INSTITUTE
PROCEEDINGS HIMSELF, ONLY THAT THERE BE A SHOWING THAT THE
FUNDS IN QUESTION WERE 'TAINTED' SO TO SPEAK. FURTHER, AS
REFLECTED IN THE ATTACHED LETTER CLAIMANT HAD ALREADY
DRAWN THIS TO THE ATTENTION OF THE NEW YORK STATE ATTORNEY
GENERAL IN MAY OF 2001, SEVEN FULL YEARS BEFORE THIS DEBTOR
FILED CH 11. AS THE COURT MAY FURTHER NOTE, COPIES WERE
PROVIDED TO THE NEW YORK STATE BANKING DEPT AND THE RESPECT
CEO'S OF THE AWOL INDENTURE TRUSTEES. EX 3

THERE IS NO ORDER THAT MOVANT IS AWARE OF BY JUDGE WINFIELD
WHICH IN FACT AUTHORIZED THIS. EVEN IF THERE WERE SUCH AN
ORDER, IT WOULD HAVE CLEARLY BEEN OBTAINED BY A CALCULATED
MISRESENTATION TO THE COURT.

NOR HAS THE COURT EVER ADDRESSED THE OBVIOUS PROBLEM OF THE
CO-COUNSEL ROLE OF WEIL, GOTSHAL IN GRAND UNION'S 3RD CH 11
WHICH IS SET FORTH IN THE LETTER OPINION[2] ALREADY ON FILE WITH
THE COURT. THE OBVIOUS IS OVERLOOKED. WEIL, GOTSHAL HAS A
VESTED INTEREST IN KEEPING THE LID ON THIS. AS WEIL, GOTSHAL
HAS COLLECTED MORE IN FEE'S IN THIS AND THE GM CASE, THAT THE

---

[2] THE GRAND UNION COMPANY-VS-AMERICE- JUNE 10. 2005 WILLIAM J MARTINI USDJ-
NEW JERSEY.

ECONOMY OF MOST SMALL COUNTRIES, AND MOST COUNTIES AND CITIES IN THE USA, IT IS OBVIOUS THAT THEY WOULD NOT WISH TO HAVE IT LEARNED THAT THEY WERE INVOLVED IN THE HIJACKING OF THIS ESCROW.

THE WEIL, GOTSHAL ROLE IN GRAND UNION IS WELL DOCUMENTED IN THE MAINSTREAM. YET NOT OF THIS COURTS CLERKS BOTHERED TO FIND OUT THIS INFORMATION AND DRAW IT TO THE COURT'S ATTENTION.

THE CONFLICT IS OBVIOUS. EX 4. **Attorney Fee Application Cover Sheet of Weil,Gotshal June 24, 1998**

ACCORDING, THE ONLY CONCLUSION A REAONABLE MIND CAN DRAW IS THAT THE MOTION AND PRIOR RESISTANCE HAS BEEN MADE IN BAD FAITH IN ORDER TO PROTECT WEIL'S LUCRATIVE BANKRUPTCY TRADE.\

IT IS STANDARD WEIL, GOTSHAL TRADECRAFT. *DENY, CONFUSE AND ATTACK.*

FOR EXAMPLE, ON MAY 23, 2007 CLAIMANT SENT A CERTIFIED LETTER EX 5 TO THE DEBTOR SOME 18 MONTHS PRIOR TO THE COMMENCEMENT OF THIS CASE. NO ANSWER WAS EVER SENT TO THIS.

A WEEK PRIOR, CLAIMANT HAD WRITTEN GRAND UNION HOLDING AND GRAND UNION CAPITAL C/ THE AGENCY ADDRESS IN DELAWARE AND ALSO IN KEENE, NH WHERE THE LEGAL DEPT OF C&S OPERATES. C&S OUTBID A&P FOR GRAND UNION COMPANY'S ASSETS IN THE NJ CASE BEFORE JUDGE WINFIELD. EX 6. AGAIN NO RESPONSE.

I CANNOT RECALL THE NUMBER OF TIMES MR WAISMAS SCOFFED AT EVEN THE IDEA THAT THERE HAD BEEN AN ESCROW.  IN ROUND NUMBERS OVER THE TIME CLAIMANT APPEARED IN THIS CASE WEIL, GOTSHAL HAS CAUSED AT LEAST 16 EXPRESS MAIL'S TO BE SENT TO CLAIMANT. THAT DOES NOT INCLUDE FEDERAL EXPRESS.

FURTHER, AT ONE CRITICAL JUNCTURE, NOTWITHSTANDING THE FACT THAT THE EMAIL RULE DOES NOT APPLY TO CLAIMANT, WEIL,GOTSHAL SENT A HUGE DOCUMENT BY EMAIL PERHAPS THE NIGHT BEFORE THE HEARING, WHEN ANY REASONABLE PERSON WOULD KNOW THAT CLAIMANT HAD ALREADY LEFT NANTUCKET AND AS HIS CUSTOM WAS RIDING THE DISCOUNT CHINESE BUS *FUNG WA* TO ARRIVE IN TIME.

THERE WAS AN AFFIDAVIT OF SERVICE BUT DESPITE REPEATED REQUESTS THE NUMBER OF THAT HAS NEVER BEEN PROVIDED AND THE US POSTAL SERVICE HAS NO RECORD OF IT BEING TENDERED.

http://google.brand.edgar-
online.com/EFX_dll/EDGARpro.dll?FetchFilingHTML1?ID=1157616&SessionID=RRKjHS
CVNXcyrl7

http://www.infirmation.com/bboard/clubs-fetch-msg.tcl?msg_id=000V46
**content redacted except for this relevant line.**

\* Weil bankruptcy dept is better if you are their debtor client (**except for Grand
Union which Weil's Bk dept is taking through chp 11 for about the third time in
4 years**), but it is not better if you are a junior associate where you will be buried
under more boring debtor side work than any other BK dept and you will have a
reputation for being part of a dept that most of NY bk lawyers despise (and
admittedly respect at the same time).

The auction was held at the New York City offices of Grand Union's attorneys, Weil Gotshal
& Manges.

http://alb.merlinone.net/mweb/wmsql.wm.request?oneimage&imageid=6049805

http://lopucki.law.ucla.edu/Professional_Fees/Fee%20applications%20and%20orders/Grand%
20Union/Weil%20Gotshal%20Final%20Application%20dkt%20149.pdf
SO WHILE CLEARLY WEIL GOTSHAL HAD IT'S HAND ON THE TILLER OF
GRAND UNION THIS COURT ALLOWED WEIL, GOTSHAL TO PROSECUTE
OBJECTIONS TO MY CLAIMS. HAD THIS COURT HAD ANY COMPETENT STAFF
IN THE FORM OF LAW CLERKS, THIS WOULD HAVE BEEN DISCOVERED LONG
AGO, BUT IT IS WELL KNOWN THAT BEING A LAW CLERK IN THIS COURT IS A
CAREER STEPPING STONE AND FASHIONING AN UNFAVORABLE
OPINION/DECISION WOULD BE MOST UNWELCOME TO SAY THE LEAST IN
CERTAIN HR DEPTS OF BIGLAW.

## CONCLUSION

I WOULD LIKE TO BE THE COURT'S INDULGENCE FOR THE CUT AND PASTE WAY THIS IS PUT TOGETHER. I HAVE HAD TO OVERCOME MANY GLITCHES AND MOST OF THIS WAS COMPOSED INTO EMAIL AND THEN TRANSFERRED ONTO WORD, BUT SOME COMPUTERS HAD OLDER VERSIONS.  I DO NOT OWN A 'MODERN' COMPUTER, THE LAST BEING A OLD DELL I PURCHASED WHEN I WAS GOING TO MIDDLEBURY LONG AGO. AND THAT COMPUTER IS SITTING IN A CLOSET UNUSED. FURTHER, I DO NOT HAVE AN ESTABLISHED MODERN OFFICE FULLY EQUIPTED WITH STATE OF THE ART SYSTEMS  LIKE WEIL,WHICH IS SUPPORTED BY LAVISH[1]  FEE'S AWARDS  IN THIS AND OTHER MEGA-CASES.

EVEN IF THIS COURT WERE REVERSE IT'S DECISION AND ALLOW MOVANT'S CLAIMS IN FULL, THEY WOULD AMOUNT TO LESS THAN 1% OF WEIL FEE'S[2] TO DATE.

AS THE COURT NOTED, THERE IS NO LOVE LOST BETWEEN MOVANT AND CLAIMANT.  HOWEVER, IF CLAIMANT IS CORRECT, AND WEIL, AS CO-COUNSEL IN GRAND UNION HAD A HAND IN THE DIVERSION OF THE WAYWARD CASH ESCROW, IT HAS MUCH TO FEAR IF THIS MISCHIEF BECOMES COMMON KNOWLEDGE.

THIS COURT MADE LIGHT OF MOVANTS SUGGESTION ABOUT CALLING WARREN BUFFETT AND OTHERS TO EXPLAIN THE UNDERWRITING OF GRAND UNION BY

---

[1] Apr 15, 2009 – In the largest quarterly **fee** request ever made by lawyers ... **Weil's Lehman** blogs.wsj.com/
[2] Leading the way once again among the law firms was lead counsel Weil, Gotshal & Manges, which collected $7.7 million, increasing its haul in the case to $326.6 million.
http://amlawdaily.typepad.com/amlawdaily/2011/08/bankruptcy-files-2.html

GOLDMAN TO THE BENEFIT OF SOLOMON BROTHERS.  THE COURT SUGGESTED
THAT MOVANT RETAIN COUNSEL. THAT IS A SELF-SERVING STATEMENT EMPTY
IN MEANING. MOVANT WOULD HAVE TO BE AS RICH AS MR BUFFETT  TO
ENGAGE COUNSEL. MOVANT DOES NOT KNOW ONE LAWYER, WHO IS EITHER
STILL ALIVE OR NOT TAKEN ROBES WHO WOULD EVEN CONSIDER THIS
WITHOUT A VERY HIGH LEVEL OF COMPENSATION.

TO QUOTE THE LATE PROFESSOR ROBERT MANLEY[3], HARVARD GRADUATE AND
NOTED MIDWEST LITIGATOR.   Another Manleyism: "I will defend you to your last dollar."
ACCORDINGLY AS THE 2 TRUSTEE' S OF THESE NOTE ARE AWOL, THE BURDEN
OF PLOTTING A COURSE OF RECOVERY HAS FALLEN UPON MOVANT'S BROW.

IN BRUSHING ASIDE THE REQUEST FOR A HEARING,  THE COURT IN EFFECT
HANDED A LESS THAN CANDID WEIL A UNEARNED VICTORY. IN THE MANY
MONTHS THAT MOVANT HAS APPEARED BEFORE THE COURT, THE REPEATED
THEME WAS IN EFFECT THAT BECAUSE A JUDGE IN OKLAHOMA HAD SAID BAD
THINGS THAT MUST BE TRUE HERE. HOWEVER, AN CLEAR VISION OF WHAT
EACH CASE STANDS FOR WAS NEVER CONDUCTED.
FOR EXAMPLE, IN THE OLKAHOMA CASE, MOVANT WAS A DEBTOR OF KEY
BANK OF NEW YORK, WHO HAD AQUIRED HIS CREDIT CARD BALANCE FROM
THE FEDERAL GOVERNMENT. IN SILICON GRAPHICS, MOVANT WAS ASSERTING
A DERIVITAVE CLAIM OF A COMPUTER COMPANY.
HERE, MOVANT IS THE HOLDER IN DUE COURSE OF SECURITIES, PURCHASED ON

---

[3] Professor Manley's Firm represented Movant in Litigation in Ohio. At that time, Peter J Walsh, Esq (now Judge
Walsh in the Bankruptcy Court in Delaware) was the co-defendant as the Trustee.  See **City of Dayton,Ohio-vs-
Kuntz,et al.**  As the Court is now aware, Judge Walsh approved the Creation of the Cash Escrow in 1995.
http://www.manleyburke.com/In-Memorium-Robert-E.-Manley

THE OPEN MARKET THRU HIS ACCOUNT @ BACHE,HALSEY,STUART[4] ISSUED IN

NEW YORK, FOR THE BENEFIT OF SOLOMON BROTHERS WHEN MR BUFFETT HAD

REPLACED MR GUTFREUND[5] AS ACTING CHAIRMAN AND SOLD GRAND UNION

FOR UPWARDS OF $1 BILLION IN SECURITIES WHICH FOR ALMOST ALL THOSE

WHO PURCHASED THEM LOST THE ENTIRE INVESTMENT. THAT CLEARLY IS

SOMETHING THAT THE MARTIN ACT COMTEMPLATES.


TO BE CANDID, MOVANT DID AND DOES NOT EXCEPT EITHER MR GURFREUND[6]

OR MR BUFFETT TO ACCEPT AN INVITATION TO TESTIFY. THE COURT COULD

DRAW IT'S OWN CONCLUSION. HOWEVER, THE 2 LAWYERS, ARE UNDER THE

COURT'S INDIRECT CONTROL AND GETTING TO THE BOTTOM OF THE FIRST

QUESTION AS TO IF THE CASH  ESCROW IS IN FACT PROPERTY OF THE ESTATE

SEEMS APPROPRIATE. MR. WAISMAN SEEMED TO SAY THAT JUDGE WINFIELD

APPROVED THIS, YET WHAT IT APPARENTLY WAS < AND SOMETHING NEVER

SHARED WITH EITHER MOVANT, THE US TRUSTEE OR COUNSEL TO THE

CREDITORS COMMITTTEE> WAS THAT JUDGE WINFIELD DENIED LIFTING THE

AUTOMATIC STAY, SOMETHING THIS COURT DID WITH RESPECT TO MOVANT

ALMOST 3 YEARS AGO.

---

[4] http://en.wikipedia.org/wiki/Halsey,_Stuart_%26_Co.
[5] http://en.wikipedia.org/wiki/John_Gutfreund
[6] http://www.observer.com/2011/10/the-wee-hours-occupy-easy-street/

ACCORDINGLY, MOVANT REQUESTS THE COURT VACATE THE ORDER AND

DECIISON OF THE 10TH OF NOV, 2011 AND REINSTATE THE CLAIMS AND SUCH

OTHER RELIEF AS MAY BE JUST AND EQUITABLE.


RESPECTFULLY,

WILLIAM KUNTZ, III

INDIA ST

PO BOX 1801

NANTUCKET ISLAND, MASS 02554-1801

508-775-9717

NANTUCKET ISLAND, MASS  Nov 4, 2011

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case Nos. 08-13555(JMP)

5

6    - - - - - - - - - - - - - - - - - - -x

7    In the Matter of:

8

9    LEHMAN BROTHERS HOLDINGS INC., et al.

10

11             Debtors.

12    - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             October 27, 2010

19             10:07 AM

20

21    B E F O R E:

22    HON. JAMES M. PECK

23    U.S. BANKRUPTCY JUDGE

24

25

#/

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 82

1    it belongs to him.

2            There simply is no basis for a claim, even asserted.

3    Kuntz was a creditor of Capital Corporation, an entity that's

4    been dissolved.

5            THE COURT: Okay. Thank you.

6            MR. KUNTZ: Your Honor, if I may point out, the order

7    that Mr. Waisman refers to has the second bankruptcy case, it's

8    a 1998 case, it's not the 2000 case.

9            So what he says that happened in the third case really

10   happened in the second case where Judge Winfield gave me my

11   security back. It's right here. It's case 98-27912. The

12   Raven Greenberg letter has got the 2000 case number 0039613.

13   So in essence he's putting the second case order forward saying

14   this is what happened in the third case. That's not the

15   exhibit.

16           MR. WAISMAN: That's inaccurate, Your Honor. The

17   order, on its face, says May 21, 2001.

18           MR. KUNTZ: I've never seen that order, Your Honor.

19           MR. WAISMAN: Here it is.

20           MR. KUNTZ: This is -- Your Honor --

21           MR. WAISMAN: It was submitted with our papers.

22           MR. KUNTZ: Your Honor, we're already well into -- now

23   we're having an evidentiary hearing with a copy given to the

24   Court, which I've never seen, but he just held it up. That's

25   why I asked for the evidentiary hearing.

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC., et al.

        Debtors.

- - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.

        Debtor.

- - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        March 17, 2010

        10:00 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

#7

108

1     appropriate.

2          And it's important because my interest in Lehman's

3     estate -- my stock -- I sold my stock when it was probably

4     seventy dollars a share.  The surplus money went on deposit

5     with the State Comptroller's office.  The escrow account, which

6     Your Honor's heard endless about, came about before Judge Walsh

7     in 1995.  And somehow, I believe, it ended up in Lehman's

8     hands.  And that's my interest and that's why I filed proof of

9     claim.  And I've brought on my automatic stay request, not

10    because of my own interest but because of what the State

11    Comptroller requested me to do in order to collect funds that

12    are already on deposit in the name, not only of Lehman

13    Brothers, but in the name of Grand Union Capital Corp, of which

14    I am a creditor.

15         Now, this -- to my respect therefore, my interest

16    and, you know, we've been around and around for eighteen months

17    and Lehman's been dragging out this old case from Oklahoma

18    which I don't understand and when Your Honor spoke about the

19    Wing Minibond case, I was a little bit concerned because my

20    position is -- and I'm going to offer this if Your Honor will

21    allow, is an exhibit to the hearing.  The claim that I filed in

22    the liquidation of HSBC Nassau, which is apparently not in this

23    case, it went into liquidation and the time these -- my bonds

24    were issued, Grand Union had business operations in the

25    Bahamas.  And if Your Honor would permit, I'll hand a copy

109

1  to --

2        THE COURT:  You can hand a copy of that to anybody

3  you like but I don't want a copy now.

4        MR. KUNTZ:  No, I'd like to have one attached as an

5  exhibit to the transcript.

6        THE COURT:  No, I'm not -- this is not a court --

7  this is not germane to the fourth omnibus objection to claims,

8  which has --

9        MR. KUNTZ:  I'm simply trying to clarify my position,

10  Your Honor.  Otherwise, I'm going to look forward to another

11  round of objections and Mr. Miller's already stated -- although

12  he's left -- that he wants to challenge my standing, which I

13  welcome.  I very much would welcome a resolution to this

14  because I've spent a lot of time at this.  Your Honor's

15  probably heard more than you care to from me, I'm sure.

16        MR. WAISMAN:  If I could just confirm for Mr. Kuntz

17  and Your Honor, the debtors are, at this point, not objecting

18  to the substance of Mr. Kuntz's claims.  I think he's agreed on

19  the duplicate claims.  He would like three claims to remain on

20  the register.  We have no problem with leaving those on the

21  register, subject to all rights to review and object if

22  appropriate.

23        And I think that resolves the issue here and if there

24  is, later, on a -- an objection to the substance, we can

25  address these issues at that time.

May 28, 2001                                                    #3

Rebecca Mullane,Esq-Assistant Attorney General
Securities Prosecution Union
120 Broadway
New York,New York 10271

Re: Grand Union Capital Corp 0% Notes

Dear Ms Mullane:

A few weeks ago, I wrote to the AG's office on the subject of the Martin Act, which I understand your Office enforces. I have had two (2) form letters sent back to me, but nothing more. While I understand that the local District Attorney could enforce the Martin Act, to date, I have not had a written response from them,despite having brought it up on several occasions over the last few years.

Last Monday,May 21,2001 we had an Adjourned Hearing before Bankruptcy Judge Winfield in Newark,NJ in the 3rd Grand Union Co Ch 11 Case. Without going into all the detail at this point, she gave me the green light to proceed, sans Grand Union Company at this point. I understand that the Bank Lender of Grand Union took in a nice Escrow Fund which had been outstanding from the first Grand Union Case in Delaware. Grand Union Capital was the former owner of Grand Union Company,left over from a LBO about 10 years ago.

The reason I am writing is that the respective Indenture Trustee's who are large banks, in effect, have refused to take those steps to protect my interests. In fact, despite the clear record made in Delaware, they refuse to even accept the fact that they are still the Trustee's for non-tendering Noteholders such as myself.

I thank you in advance,
William Kuntz, III
Bx 461,Lake Placid,NY 12946

cc:Alvin Narin,Esq,State Banking Dept,Albany,NY 12224
Mr Yosef Nasur, CEO-HSBC Bank, 140 Broadway,NYC,NY
Mr Grundelhofer, CEO-Firstar Bank, 777 E Wisconsin,
Milwaukee, Wisconsin 53202

Case 98-27912-NLW    Doc 149    Filed 09/15/98    Entered 09/15/98 16:51:00    Desc
Final Fee Application for the Period June 24    1998 through August 5    1998    Page 1 of 40

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

ATTORNEY FEE APPLICATION COVER SHEET

IN RE:                          APPLICANT:    Weil, Gotshal & Manges LLP

The Grand Union Company         CLIENT:       The Grand Union Company

CASE NO.:    98-27912 (NW)      CASE FILED:   June 24, 1998

CHAPTER:    11

COMPLETION OF THIS FORM CONSTITUTES A CERTIFICATION
UNDER PENALTY OF PERJURY. RETENTION ORDERS ATTACHED

Judy G. Z. Liu, Esq.                            9/14/98

                                                DATE

SECTION I

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE
WILMINGTON DE 19801

| | | |
|---|---|---|
| Postage | $ | $0.41 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.06 |

0554

Postmark Here

NANTUCKET, MA 02554
MAY 23 2007
05/23/2007

Sent To  *Leitman*

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

**7005 1820 0001 7339 3746**



**U.S. POSTAL SERVICE**          **CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received F

William Kuntz, III
c/ 25 Alprilla Farm Rd
Hopkinton, Mass 01748

One piece of ordinary mail addressed to:

GRAND UNION HOLDING CORP
c/ The Corp Trust Co
1209 Orange St
Wilmington, Delaware 19801

PS Form **3817**, January 2001

---

**U.S. POSTAL SERVICE**          **CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received F

William Kuntz, III
c/ 25 Alprilla Farm Rd
Hopkinton, Mass 01748

One

GRAND UNION CAPITAL CORP
c/ The Corp Trust Co
1209 Orange St
Wilmington, Delaware 19801

PS Form **3817**, January 2001

---

**U.S. Postal Service**™
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

KEENE NH 03431

| | | |
|---|---|---|
| Postage | $ | $0.80 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.45 |

Postmark Here

05/23/2007

Sent To    Grand Union

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7005 1820 0001 7338 3777

#6

United States Postal Service®

## Sorry We Missed You! We ℮° Deliver for You

| Today's Date | Sender's Name |
| 5 0 18 01 25 | BANKRUPT Solution |
| 8-78-10 | |

| Item is at: | Available for Pick-up After: | | For Redelivery |
| ___ Post Office™ (See back) | | | Go to usps.com/redelivery |
| | Date: | Time: | or see reverse |

| ___ Letter | For Delivery: (Enter total number of items delivered by service type.) | | ☐ If checked, you or your agent must be present at time of delivery to sign for item. |
| ✓ Large envelope, magazine, catalog, etc. | For Notice Left: (Check applicable item) | | Article Number(s) |
| | ✓ Express Mail® | ___ Insured Mail | EM 46117/044 US |
| ___ Parcel | | | |
| ___ Restricted Delivery | ___ Certified Mail™ (Must claim within 15 days or article will be returned) | ___ Return Receipt for Merchandise | |
| ___ Perishable Item | ___ Firm Bill | ___ Delivery Confirmation™ | |
| ___ Other: | ___ Registered Mail™ | ___ Signature Confirmation™ | **Notice Left Section** |
| | | | Customer Name and Address |
| Article Requiring Payment | | Amount Due | KUNTZ |
| ☐ Postage Due  ☐ COD  ☐ Customs | | $ | |
| ☐ **Final Notice:** Article will be returned to sender on | | | Delivered By and Date |

PS Form **3849**, September 2009    *usps.com*    **Delivery Notice/Reminder/Receipt**

---

United States Postal Service®

## Sorry We Missed You! We ℮° Deliver for You

| Today's Date | Sender's Name |
| 2 78-10 | BANKRUPT Solution |

| Item is at: | Available for Pick-up After: | | For Redelivery |
| ___ Post Office™ (See back) | | | Go to usps.com/redelivery |
| | Date: | Time: | or see reverse |

| ___ Letter | For Delivery: (Enter total number of items delivered by service type.) | | ☐ If checked, you or your agent must be present at time of delivery to sign for item. |
| ✓ Large envelope, magazine, catalog, etc. | For Notice Left: (Check applicable item) | | Article Number(s) |
| | ✓ Express Mail® | ___ Insured Mail | EM46117 1035 US |
| ___ Parcel | | | |
| ___ Restricted Delivery | ___ Certified Mail™ (Must claim within 15 days or article will be returned) | ___ Return Receipt for Merchandise | |
| ___ Perishable Item | ___ Firm Bill | ___ Delivery Confirmation™ | |
| ___ Other: | ___ Registered Mail™ | ___ Signature Confirmation™ | **Notice Left Section** |
| | | | Customer Name and Address |
| Article Requiring Payment | | Amount Due | KUNTZ |
| ☐ Postage Due  ☐ COD  ☐ Customs | | $ | |
| ☐ **Final Notice:** Article will be returned to sender on | | | Delivered By and Date |

PS Form **3849**, September 2009    *usps.com*    **Delivery Notice/Reminder/Receipt**

#7.

**United States Postal Service®**
**Sorry We Missed You! We <sup>Re</sup> Deliver for You**

Today's Date: 8-30-70

Sender's Name: EPIQ Bankruptcy

| Item is at: | | |
|---|---|---|
| ___ Post Office™ *(See back)* | **Available for Pick-up After** | **For Redelivery** Go to *usps.com/redelivery* or see reverse |
| | Date: | |
| | Time: | |

X Letter

X Large envelope, magazine, catalog, etc.

**For Delivery:** *(Enter total number of items delivered by service type.)*

**For Notice Left:** *(Check applicable item)*

X Express Mail® ___ Insured Mail

___ Parcel

___ Certified Mail™ ___ Return Receipt for Merchandise
*(Must claim within 15 days or article will be returned)*

___ Restricted Delivery

___ Perishable Item ___ Firm Bill ___ Delivery Confirmation™

___ Other: ___ Registered Mail™ ___ Signature Confirmation™

☐ **If checked, you or your agent must be present at time of delivery to sign for item**

**Article Number(s)**
EM 461146950US
EM 461146946 US

**Notice Left Section**
**Customer Name and Address**
Williams Runtz
X 1801

**Article Requiring Payment**
☐ Postage Due ☐ COD ☐ Customs $

**Amount Due**

☐ **Final Notice:** Article will be returned to sender on

**Delivered By and Date**

PS Form **3849**, September 2009     *usps.com*     **Delivery Notice/Reminder/Receipt**

---

**United States Postal Service®**
**Sorry We Missed You! We <sup>Re</sup> Deliver for You**

Today's Date: 1-8-10

Sender's Name: EPIQ Bankruptcy

| Item is at: | | |
|---|---|---|
| ___ Post Office *(See back)* | **Available for Pick-up After** | We will redeliver or you or your agent can pick up. See reverse. |
| | Date: | |
| | Time: | |

X Letter

X Large envelope, magazine, catalog, etc.

**For Delivery:** *(Enter total number of items delivered by service type)*

**For Notice Left:** *(Check applicable item)*

X Express Mail® ___ Insured Mail

___ Parcel

___ Certified Mail™ ___ Return Receipt for Merchandise

___ Restricted Delivery

___ Perishable Item ___ Firm Bill ___ Delivery Confirmation™

___ Other: ___ Registered Mail™ ___ Signature Confirmation™

☐ **If checked, you or your agent must be present at time of delivery to sign for item.**

**Article Number(s)**
EM -490994140 US
EM -490 994136 US

**Notice Left Section**
**Customer Name and Address**
William Runtz
X 1801

**Article Requiring Payment**
☐ Postage Due ☐ COD ☐ Customs $

**Amount Due**

☐ **Final Notice:** Article will be returned to sender on

**Delivered By and Date**

PS Form **3849**, May 2008     *usps.com*     **Delivery Notice/Reminder/Receipt**

**United States Postal Service®**
**Sorry We Missed You! We Re Deliver for You**

| | | Today's Date 7-15 | Sender's Name EP19 Banbury |

| Item is at: | | Available for Pick-up After: | For Redelivery |
| ☐ Post Office™ (See back) | | | Go to *usps.com* redelivery |
| | | Date: | or see reverse |
| | | Time: | |

| ☐ Letter | **For Delivery:** (Enter total number of items delivered by service type.) | ☐ If checked, you or your agent must be present at time of delivery to sign for item. | |
| ☐ Large envelope, magazine, catalog, etc. | **For Notice Left:** (Check applicable item) | **Article Number(s)** | |
| ☐ Parcel | ☐ Express Mail® ☐ Insured Mail | EM 491 036 643 US | |
| ☐ Restricted Delivery | ☐ Certified Mail™ ☐ Return Receipt for Merchandise *(Must claim within 15 days or article will be returned)* | | |
| ☐ Perishable Item | ☐ Firm Bill ☐ Delivery Confirmation™ | **Notice Left Section** | |
| ☐ Other: | ☐ Registered Mail™ ☐ Signature Confirmation™ | **Customer Name and Address** W Kenty III # 1809 | |

| Article Requiring Payment | Amount Due | |
| ☐ Postage Due ☐ COD ☐ Customs | $ | Delivered By and Date |

☐ **Final Notice:** Article will be returned to sender on

PS Form **3849**, September 2009    *usps.com*    **Delivery Notice/Reminder/Receipt**

United States Postal Service®
**Sorry We Missed You! We ⁸ᵒ Deliver for You.**

| | |
|---|---|
| Item is at: | Today's Date 5-11-10 |
| ___ Post Office™ (See back) | Sender's Name *Bankruptcy* |

For Redelivery
Go to *usps.com/redelivery*
or see reverse

| Available for Pick-up After | | |
|---|---|---|
| Date: | Time: | |

☐ If checked, you or your agent must be present at time of delivery to sign for item.

| | | |
|---|---|---|
| X Letter 3 | **For Delivery:** (Enter total number of items delivered by service type.) | **Article Number(s)** |
| X Large envelope, magazine, catalog, etc. | **For Notice Left:** (Check applicable item) | EM 383388704 US |
| | X Express Mail® ___ Insured Mail | EM 383388221 US |
| ___ Parcel | | EM 383388735 US |
| ___ Restricted Delivery | ___ Certified Mail™ (Must claim within 15 days or article will be returned) ___ Return Receipt for Merchandise | |
| ___ Perishable Item | ___ Firm Bill ___ Delivery Confirmation™ | |
| ___ Other: | ___ Registered Mail™ ___ Signature Confirmation™ | **Notice Left Section** |

| | |
|---|---|
| Article Requiring Payment | Customer Name and Address |
| ☐ Postage Due ☐ COD ☐ Customs | *William Runtz* |
| Amount Due $ | *1801* |

| ☐ **Final Notice:** Article will be returned to sender on | Delivered By and Date |
|---|---|

PS Form **3849**, September 2009        *usps.com*        **Delivery Notice/Reminder/Receipt**

---

United States Postal Service®
**Sorry We Missed You! We ⁸ᵒ Deliver for You.**

| | |
|---|---|
| Item is at: | Today's Date 10-27-10 |
| ___ Post Office™ (See back) | Sender's Name *Bankruptcy* |

For Redelivery
Go to *usps.com/redelivery*
or see reverse

| Available for Pick-up After | | |
|---|---|---|
| Date: | Time: | |

☐ If checked, you or your agent must be present at time of delivery to sign for item.

| | | |
|---|---|---|
| X Letter 4 | **For Delivery:** (Enter total number of items delivered by service type.) | **Article Number(s)** |
| X Large envelope, magazine, catalog, etc. | **For Notice Left:** (Check applicable item) | EM 490231434 US |
| | X Express Mail® ___ Insured Mail | EM 490231496 US |
| ___ Parcel | | EM 490231451 US |
| ___ Restricted Delivery | ___ Certified Mail™ (Must claim within 15 days or article will be returned) ___ Return Receipt for Merchandise | EM 490231479 US |
| ___ Perishable Item | ___ Firm Bill ___ Delivery Confirmation™ | |
| ___ Other: | ___ Registered Mail™ ___ Signature Confirmation™ | **Notice Left Section** |

| | |
|---|---|
| Article Requiring Payment | Customer Name and Address |
| ☐ Postage Due ☐ COD ☐ Customs | *William Runtz III* |
| Amount Due $ | *1801* |

| ☐ **Final Notice:** Article will be returned to sender on | Delivered By and Date |
|---|---|

PS Form **3849**, September 2009        *usps.com*        **Delivery Notice/Reminder/Receipt**

## THE GRAND UNION CO. v. AMERICE

United States District Court, D. New Jersey

| Buy for $4.95 |

Official citation and/or docket number and footnotes (if any) for this case available
with purchase.

June 10, 2005.

**The Grand Union Co.**
**v.**
**Americe, Inc.**

The opinion of the court was delivered by: WILLIAM J. MARTINI, District Judge

LETTER OPINION

Dear Counsel:

   This matter comes before the Court on The Grand Union Company's ("Grand Union") motion
pursuant to Federal Rules of Civil Procedure 59 and 60 and Local Civil Rule 7.1(g) for
reconsideration of the Court's April 18, 2005 Order dismissing Grand Union's bankruptcy
appeal for want of prosecution. For the reasons set forth below, the motion is DENIED.

BACKGROUND

   Bankruptcy Judge Novalyn L. Winfield entered an Order on August 6, 2004 that, among other
things, denied bankruptcy debtor Grand Union's motion for summary judgment and granted
America, Inc. ("America") leave to file an administrative claim request. Six days later, on
August 12, 2004, Grand Union, through counsel Ravin Greenberg P.C. ("Ravin Greenberg")
and Weil, Gotshal & Manges LLP ("Weil Gotshal"), filed a notice of appeal and shortly
thereafter (on August 23, 2004) filed a designation of items to be included in the record and
statement of issues to be presented on appeal pursuant to Bankruptcy Rule 8006. The
bankruptcy court transmitted these filings to this Court on November 17, 2004. Although
Grand Union was required by rule to submit appellate briefs to this Court within fifteen days of
its appeal having been docketed, Fed.R. Bankr. P. 8009(a)(1), the notation of this
transmission on the docket indicates that Grand Union was given until December 27, 2004.
Despite this generous briefing schedule, Grand Union never filed any appellate brief. This
Court exercised its discretion and dismissed Grand Union's appeal by Order dated April 18,
2005 for want of prosecution.

   Counsel for Grand Union ? specifically, Ravin Greenberg, not Weil Gotshal ? now asks the
Court to reconsider this dismissal on the ground that Grand Union's failure to submit any
appellate brief was attributable to counsel's "mistake and excusable neglect." (See
Memorandum of Law in Support of Motion for Reconsideration [hereinafter "App. Br."].)
Specifically, counsel for Grand Union points out that the attorney who was primarily in charge
of handling Grand Union's appeal, Allan Harris ("Mr. Harris") of Ravin Greenberg, left the firm
December 31, 2004 and that "[i]t was only after [Mr. Harris] left, much past the deadline set
forth in Rule 8009, that [Howard S. Greenberg ("Mr. Greenberg"), also of Ravin Greenberg]
became aware that a brief had not been filed." (See Cert. of Howard S. Greenberg ? 10.)
Because the December 27, 2004 deadline ran several days before Mr. Harris left Ravin
Greenberg, counsel for Grand Union also notes that "[d]uring the time of filing of the appeal,
several complications made it difficult for [Ravin Greenberg] to file a brief on Appellant's
behalf, and to proceed with the appeal." (Id. ? 8.)

ANALYSIS

   Although dismissal of bankruptcy appeals for want of prosecution is discretionary, courts
must at least consider less severe sanctions for a litigant's failure to prosecute its case. See
Jewelcor, Inc. v. Asia Commercial Co., Ltd., 11 F.3d 394, 397 (3d Cir. 1993). Counsel for
Grand Union argues, therefore, that this Court, rather than dismissing Grand Union's appeal
for want of prosecution, should have resorted to the less severe sanction of either issuing an
Order to Show Cause setting forth an expedited briefing schedule or, instead, simply issuing



another briefing schedule. (See App. Br. at 4.) The Court fails to see how giving appellant additional time to submit an appellate brief which at the time of dismissal was already almost four months late is an effective "sanction." Indeed, that would be no sanction at all.

The Court can discern no other effective sanction for failure to submit an appellate brief. As this Court has already explained, the bankruptcy rules require appellant to file a brief with this Court within fifteen days of an appeal having been docketed. Fed.R.Bankr.P. 8009(a)(1). The purpose of the briefing schedule in Bankruptcy Rule 8009 is to provide for the expeditious resolution of bankruptcy proceedings. See Jewelcor, 11 F.3d at 397. It is clear that the purpose of the rule would be completely thwarted were the Court to allow Grand Union to delay indefinitely the filing of its appellate brief, without which the Court cannot even begin to review the merits of its appeal.

Grand Union's failure to prosecute its appeal is the result of its own neglect. Indeed, Ravin Greenberg acknowledges as much. (See App. Br. at 4.) Unable to dispute that it had notice of the December 27, 2004 deadline, Ravin Greenberg offers only the vague excuse that "several complications made it difficult for [Ravin Greenberg] to file a brief on Appellant's behalf." This neglect is all the more inexplicable considering that Grand Union appears to have been represented in bankruptcy proceedings not by one but in fact by two different law firms, the other ? Weil Gotshal ? being known for the strength of its bankruptcy practice. (See Notice of Appeal dated Aug. 12, 2004).

Finally, there is evidence suggesting that Grand Union's failure to prosecute its appeal simply reflects its history of proceeding in a dilatory manner. That is, during the bankruptcy court's October 4, 2004 telephone conference with counsel for Americe and with Ravin Greenberg regarding, among other things, the instant appeal, Judge Winfield stated: "I actually find this issue of appeal a little bit frustrating. [Grand Union] has had an astonishing disinclination to try this case. It's been difficult to get this to final conclusions. . . . I'm tired of fooling around. . . . . [I] implore both parties to act with all due speed to get [Grand Union's appeal] before the district court and adjudicated. . . . This is an old adversary and it shouldn't hang around." (Transcript of October 4, 2004 Telephone Status Conference before Honorable Novalyn L. Winfield at 8:6 ? 11, 10:22 ? 24, 11:4 ? 5.) In response to Judge Winfield's request that Grand Union diligently prosecute its appeal, Mr. Greenberg, who now asks the Court to excuse Grand Union's failure to file any appellate brief because the Ravin Greenberg attorney primarily handling Grand Union's bankruptcy case left the firm four days after the December 27, 2004, stated: "We're trying to, Your Honor." (Id. at 11:3.) Grand Union nevertheless failed to prosecute its appeal despite Mr. Greenberg's representation to Judge Winfield that it would do so with all due speed.

CONCLUSION

For the foregoing reasons, Grand Union's motion for reconsideration of the Court's April 18, 2005 Order dismissing Grand Union's bankruptcy appeal for want of prosecution is DENIED.

An appropriate Order accompanies this Letter Opinion.

20050610

© 1992-2005 VersusLaw Inc.



695 E Main Ave., the site of the former Genße building that's owned by Lehman Brothers, will be put up for sale after being vacant for two years amid Lehman's bankruptcy. Photo: Contributed Photo / CT

#9

18 Isr. L. Rev. 431 (1983)
Relative Wealth of the Parties as a Factor in Tortious Liability, The; Partiente, Gil

## THE RELATIVE WEALTH OF THE PARTIES AS A FACTOR IN TORTIOUS LIABILITY*

### Gil Pariente**

In its desire to reduce the loss and expense involved in the occurrence of accidents, organized society is likely to consider various factors determining the nature of the rules (whether legal or other) that will guide it in its decision. These factors may include *moral* fault (in the accepted meaning of the term), *economic* fault[1] or the relative wealth of the parties involved in causing the loss.

The purpose of this article is to examine the third factor, i.e., relative wealth. By "relative wealth of the parties" we mean the quantity of property of monetary value in the hands of each of the parties relative to the aggregate property of the other parties and to the property of each. The parties in question are not necessarily those physically involved in causing the damage but those persons or groups which the rules for allocation of loss regard as potential bearers of the loss.

The motives for considering the relative wealth of the parties may be utilitarian, political, ideological or moral. The basis of the utilitarian approach lies in recognition of the need to distinguish between the benefit that mankind is likely to derive from property and the value of this property in monetary terms. This conclusion leads to the further conclusion that from a factual point of view the marginal utility, i.e. the increase or reduction in utility per unit of money, that is added to (or taken from) a person's wealth is diminished the greater the sum of that wealth.[2] A further assumption is that, given an equal level of wealth, the marginal utility of the money is identical for every person.[3] Many scholars dispute

---

\* The author wishes to thank Professor Englard and Israel Gilad for their kind help and guidance in the preparation of this article.
\*\* 2nd year LL.M. student, Faculty of Law, Hebrew University of Jerusalem.
1 The reference is to the failure of the party to prevent the accident at a cost lower than the damage caused, taking into account the probability of its occurring. For a comparative study of moral and economic fault, see R. Posner, "A Theory of Negligence" (1972) 1 Journal of Legal Studies 29–96.
2 Marshall, *Principles of Economics* (London, McMillan, 9th ed., 1920) 94–96.
3 Simon, "Interpersonal Welfare Comparisons can be Made and Used for Redistribution Decisions" (1974) 27 Kyklos 60.

431

Short-term subscription options include access for 24 hours, 48 hours or 1 week to HeinOnline's Law Journal Library. This includes access to more than 1,450 Law Journals.

**Prices starting as low as $29.95!**

 

**Already a Subscriber?**

Login to HeinOnline

We also offer annual subscriptions to universities, colleges, law firms, organizations, and other institutions. To request a quote please visit

Please note: the content in the Law Journal Library is constantly changing and some content has restrictions as required per the license. Therefore, please review the available content via the following link to ensure the material you wish to access is included in the database. For a complete list of content included in the Law Journal Library, please view

#10