**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834
(212) 906-1200
Christopher Harris, Esq.
Blake Denton, Esq.

Attorneys for ACTS Retirement-Life Communities, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
                                                               :   Chapter 11
In re                                                          :
                                                               :   Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., et al.                          :
                                                               :   (Jointly Administered)
         Debtors.                                              :
                                                               :   HEARING DATE AND TIME: November
                                                               :   30, 2011 at 10:00 a.m. (Eastern Time)
---------------------------------------------------------------x

**RESPONSE OF ACTS RETIREMENT-LIFE COMMUNITIES, INC.
TO DEBTORS' TWO HUNDRED TWENTY-EIGHTH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)
AND NOTICES OF PROPOSED ASSUMPTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO
DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN
PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

ACTS Retirement-Life Communities, Inc. ("ACTS") hereby files this response (the "Response") to (i) Debtors' Two Hundred Twenty-Eighth Omnibus Objection to Claims (No Liability Derivatives Claims) [Dkt. No. 20886] (the "Omnibus Objection"), and (ii) two Notices of Proposed Assumption of Executory Contracts and Unexpired Leases Pursuant to Debtors' Third Amended Joint Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code (the "Assumption Notices").

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## FACTUAL BACKGROUND

2. Lehman Brothers Special Financing Inc. ("LBSF") and ACTS are parties to the 1992 ISDA Master Agreement (the "Master Agreement"), Credit Support Annex, and Confirmation, dated November 27, 2001 (collectively, the "Swap Agreement"). (*See* Swap Agreement, Decl. Exhibit A.)[1]

3. LBSF and ACTS are also parties to the Reserve Fund Agreement, dated December 18, 2002 (the "Reserve Fund Agreement"). (*See* Reserve Fund Agreement, Decl. Exhibit B.)

4. Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

5. On July 2, 2009, ACTS sent a notice of early termination to LBSF, c/o LBHI, informing it that (i) a Bankruptcy Event of Default occurred pursuant to Section 5(a)(vii) of the Master Agreement and was continuing, and (ii) ACTS designated July 2, 2009 as the Early Termination Date with respect to all Transactions under the Swap Agreement.[2] The letter stated that ACTS would later provide a statement of the amount due. (*See* July 9, 2009 letter (enclosing July 2, 2009 letter), Decl. Exhibit C.)

---

[1] References in the form of "Decl. Exhibit __" refer to the exhibits to the Declaration of Blake Denton, submitted concurrently herewith.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Swap Agreement.

2

6. By a letter dated July 9, 2009, ACTS stated that it was owed by LBSF an aggregate amount of $352,036.32, representing the Settlement Amount ($0), plus all outstanding amounts due and owing under the Swap Agreement ($34,265.92), plus reasonable out-of-pocket expenses, including legal fees incurred by ACTS in connection with the early termination of the Swap Agreement ($24,305.60), plus ACTS' loss arising from LBSF's failure to honor its obligations under the Reserve Fund Agreement ($293,464.80). (*See* Decl. Exhibit C, at 2.) Collection of "reasonable out-of-pocket expenses, including legal fees, incurred by such other party by reason of the enforcement and protection of its rights under this [Swap] Agreement," is authorized by section 9 of the Master Agreement. (Decl. Exhibit A, at 10.)

7. On September 17, 2009, this Court issued the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [Dkt. No. 5207] (the "ADR Order"), pursuant to which any "Debtor may designate any dispute regarding a Derivatives Contract with Recovery Potential to the Derivatives ADR Procedures by serving on a Derivatives Counterparty a copy of this Order and a Derivatives ADR Notice." (ADR Order, at ¶ 3.) "Derivatives Contract" is defined to include "any derivative contract that is a 'swap agreement' or 'forward contract' . . . ." (*Id.* at preamble.)

8. On September 18, 2009, ACTS filed Proof of Claim Number 16217 against LBHI in the amount of $58,571.52 ("Claim No. 16217"). The proof of claim form said that the basis for the claim was a "Guarantee on interest swap agreement." ACTS checked boxes indicating that "all or part of [its] claim is based on a Derivative Contract" and a "Guarantee." (Claim No. 16217, Decl. Exhibit D.)

9. Also on September 18, 2009, ACTS filed Proof of Claim Number 16218 against LBSF in the amount of $58,571.52 ("Claim No. 16218"). The proof of claim form said that the

3

basis for the claim was an "Interest Swap Agreement." ACTS checked a box indicating that "all or part of [its] claim is based on a Derivative Contract." (Claim No. 16218, Decl. Exhibit E.)

10. Also on September 18, 2009, ACTS filed Proof of Claim Number 16219 against LBSF in the amount of $293,464.80 ("Claim No. 16219"). The proof of claim form said that the basis for the claim was the "Reserve Fund Agreement." (Claim No. 16219, Decl. Exhibit F.)

11. On January 26, 2011, LBSF served Derivatives ADR Notice Number 234 on ACTS (the "ADR Notice"), requesting payment from ACTS in the aggregate amount of $342,989.94, representing (i) $334,173.03 in net periodic swap payments due, and (ii) $8,816.91 in interest accrued thereon, at the Default Rate, through January 21, 2011. (ADR Notice, Decl. Exhibit G.)

12. On October 17, 2011, the Debtors filed the Omnibus Objection, in which they requested that the Court disallow and expunge in their entirety certain claims, including Claim Nos. 16217 and 16218. (*See* Omnibus Objection, at ¶ 2 & Ex. A.)

13. On November 3, 2011 and November 4, 2011, the Debtors served the Assumption Notices, in which the Debtors sought assumption of the Swap Agreement with a cure amount of $0. (Nov. 3, 2011 Assumption Notice, Decl. Exhibit H, at Ex. A,; Nov. 4, 2011 Assumption Notice, Decl. Exhibit I, at Ex. A.)

## ARGUMENT

I. **THIS COURT SHOULD NOT DISALLOW CLAIM NOS. 16217 AND 16218 BECAUSE THESE PROOFS OF CLAIM ARE THE SUBJECT OF ALTERNATIVE DISPUTE RESOLUTION ("ADR").**

14. The Debtors seek to compel ACTS to participate in the court-ordered Derivative ADR Procedures, while also asking this Court to disallow recovery to which ACTS is entitled if successful on its claims.

4

15. LBSF contends that ACTS' allegation as to the date of termination of the Swap Agreement is incorrect and that LBSF – not ACTS – is owed money under the Swap Agreement. LBSF filed the ADR Notice to compel ACTS to utilize this Court's ADR procedures to attempt to resolve the dispute. Paradoxically, while the Debtors seek to mediate their own Swap Agreement claims, they seek to have this Court disallow ACTS' Swap Agreement claims – Claim Nos. 16217 and 16218 – which relate to the total liability due by LBSF under the same Swap Agreement. This request is improper, inconsistent with the Debtors' own ADR request, and should be denied.

16. Should ACTS be successful against LBSF in Claim No. 16219 for liability under the Reserve Fund Agreement, pursuant to the Swap Agreement, ACTS will be entitled to enforce Claim Nos. 16217 and 16218 against LBSF and its guarantor, LBFI, for $58,571.52. This amount includes all outstanding amounts due and owing under the Swap Agreement ($34,265.92), plus contractually permitted legal fees incurred by ACTS in connection with the early termination of the Swap Agreement ($24,305.60). The success of Claim Nos. 16217 and 16218 is thus tied to the merit of Claim No. 16219. The Debtors' request to deny recovery for outstanding amounts and legal fees prior to adjudication of the underlying contractual claim is premature.

17. Moreover, based on discussions with the Debtors, our understanding is that the Debtors view Claim Nos. 16217 and 16218 as claims based on the Reserve Fund Agreement, not the Swap Agreement, and hence not subject to the ADR. This is incorrect. Both proofs of claim say that they are "based on a Derivative Contract," in this case, the Swap Agreement, and seek recovery under that contract. (*See* Decl. Exhibits D and E.) They are therefore subject to the ADR Order, which governs "Derivatives Contract[s]." (ADR Order, at ¶ 3.) Additionally,

LBSF's ADR Notice expressly states that it is based on ACTS' alleged liability under that same Swap Agreement. (*See* Decl. Exhibit G ("<u>Derivatives Contracts</u>: (a) an ISDA Master Agreement . . . , a Schedule thereto and a Credit Support Annex to such Schedule, dated as of November 27, 2001, by and between LBSF and ACTS . . . .").) Consequently, because ACTS' Claim Nos. 16217 and 16218 and LBSF's claim are based on different interpretations of which party is liable under the Swap Agreement and because LBSF has in fact served a notice compelling ADR for such claims, it is improper to disallow Claim Nos. 16217 and 16218 prior to ADR or litigation.

## II. THE SWAP AGREEMENT WAS PROPERLY TERMINATED AND CLAIM NOS. 16217 AND 16218 ARE VALID

18.  Claim Nos. 16217 and 16218 are proper and supported by the facts. In a July 2, 2009 letter from ACTS to LBSF, ACTS designated July 2, 2009, as the Early Termination Date with respect to all Terminated Transactions under the Master Agreement due to the occurrence and continuation of an Event of Default under Section 5(a)(vii) (Bankruptcy) of the Master Agreement. (*See* Decl. Exhibit C, at 2.) This letter was sent in accordance with the terms and conditions of the Master Agreement.

19.  As discussed in a letter issued by ACTS to LBSF on July 9, 2009, sent in accordance with Section 6(d)(i) (Statement) of the Master Agreement, ACTS attempted to utilize Second Method and Market Quotation to determine the Settlement Amount pursuant to Section 6(e)(i)(3) of the Master Agreement. (*See id.*, at 1.) ACTS requested Quotations from Reference Market-makers pursuant to bid solicitations issued on June 16, 2009. Despite making requests to ten (10) Reference Market-makers, ACTS received *no* responsive quotations, and in fact, none of the Reference Market-makers expressed any interest in acquiring the Transaction in its then-current form at any price. Because fewer than three (3) quotations from Reference Market-makers were received, pursuant to the definition of "Market Quotation" in the Master

6

Agreement, Market Quotation could not be determined. Therefore, ACTS applied the Loss methodology, as required under the Master Agreement, to determine the Settlement Amount. Consistent with Loss methodology, ACTS calculated the loss and made a good faith determination that the Terminated Transaction under the Master Agreement had no value as of the Early Termination Date and therefore the Settlement Amount was determined to be zero (0). (*Id.* at 1.)

20. This result was commercially reasonable and was arrived at in compliance with the terms of the Master Agreement, pursuant to which "[a] party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets." (Decl. Exhibit A, at 13.)

21. Because ACTS properly terminated the Transaction under the Swap Agreement on July 2, 2009 and properly calculated the Settlement Amount on July 9, 2009, Claim Nos. 16217 and 16218 – which seek amounts due to ACTS under the Swap Agreement, plus contractually permitted out-of-pocket expenses incurred by ACTS in connection with the early termination of the Swap Agreement – are proper.

22. Moreover, the Debtors purport to assume the Swap Agreement at a cure amount of $0. (*See* Decl. Exhibits H & I.) ACTS objects to such an assumption because (i) the Transaction was properly terminated on July 2, 2009, and (ii) it is the subject of the pending ADR, there can be no assumption of the Swap Agreement by the Debtors.

## CONCLUSION

23. For the foregoing reasons, this Court should deny the Debtors' requests for (i) an order disallowing and expunging Claim Nos. 16217 and 16218, and (ii) assumption of the Swap Agreement.

Dated: November 17, 2011  LATHAM & WATKINS LLP
New York, New York

*[signature]*

Christopher Harris
Blake Denton
885 Third Avenue
New York, NY 10022-4834
(212) 906-1200

Attorneys for ACTS Retirement-Life Communities, Inc.