**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC.,** ***et al.*****,** | : | **08-13555 (JMP)** |
| **Debtors.** | : | **(Jointly Administered)** |

NOTICE OF TRANSFER OF CLAIM
PURSUANT TO FRBP RULE 3001(e)(2)

1. TO:

McDonnell Loan Opportunity Ltd. ("Transferor")
c/o McDonnell Investment Management, LLC
1515 West 22nd Street
Oak Brook, Illinois 60523
Attn: General Counsel
Telephone: (630) 684-8600
Email: cecilp@mcdmgmt.com

2. Please take notice that the transfer of your claim against LEHMAN BROTHERS HOLDINGS INC., et al, Case No. 08-13555 (JMP) arising from and relating to Proof of Claim No. 17632 (attached as Exhibit A hereto), has been transferred to:

Barclays Bank PLC ("Transferee")
745 Seventh Avenue
New York, NY 10019
Telephone: (212) 412-2865
Email: daniel.crowley@barclayscapital.com
daniel.miranda@barclayscapital.com

An executed "Evidence of Transfer of Claim" is attached as Exhibit B hereto. All distributions and notices regarding the claim should be sent to the Transferee as provided in Exhibit C hereto.

3. No action is required if you do not object to the transfer of your claim. However, **IF YOU OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU MUST:**

-- **FILE A WRITTEN OBJECTION TO THE TRANSFER** with:

United States Bankruptcy Court
Southern District of New York
Attn: Clerk of Court
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408

-- **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE**

-- Refer to **INTERNAL CONTROL NO.** ________ in your objection and any further correspondence related to this transfer.

4. If you file an objection, a hearing will be scheduled. **IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED FOR THE TRANSFEROR ON OUR RECORDS AS A CLAIMANT IN THIS PROCEEDING.**

CLERK

---

**FOR CLERK'S OFFICE USE ONLY:**

This notice was mailed to the first named party, by first class mail, postage prepaid on __________, 2009.

INTERNAL CONTROL NO._________

Copy: (check) Claims Agent__ Transferee__ Debtors' Attorney__

_______________________
Deputy Clerk

**EXHIBIT A**

[Proof of Claim]

*United States Bankruptcy Court/Southern District of New York*
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held: Lehman Brothers Holdings Inc. | Case No. of Debtor: 08-13555 |

UNIQUE IDENTIFICATION NUMBER: 4000004448

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)**

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

MCDONNELL LOAN OPPORTUNITY LTD.
c/o McDonnell Investment Management, LLC
1515 West 22nd Street
Oak Brook, Illinois 60523
Attention: General Counsel
Tel: (630) 684-8600
Email: cecilp@mcdmgmt.com

With a copy to:
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Attention: Jai Khanna
Tel: (312) 558-6357
Email: jkhanna@winston.com

Telephone number: Email Address:

☑ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: 4448; 4786
(*If known*)

Filed on: 5/19/09; 5/15/09

Name and address where payment should be sent (if different from above)

Telephone number: Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ Not less than $250,000.00

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** CONTRACT - PLEASE SEE ATTACHMENT
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** ____
3a. **Debtor may have scheduled account as:** ____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☑ Other
Describe: CASH ESCROW AMOUNT - PLEASE SEE ATTACHMENT
Value of Property: $____ Annual Interest Rate ____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$____ Basis for perfection: ____
**Amount of Secured Claim: $____ Amount Unsecured: $____**

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $____**
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all pa ... king this proof of claim.
8. **Documents:** Attach redacted ... issory notes, purchase orders, invoices, itemized statemer ... security agreements. Attach redacted copies of documer ... *e definition of "redacted" on reverse side.)* If the documents ...
**DO NOT SEND ORIGINAL DO ... STROYED AFTER SCANNING.**
If the documents are not available,

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP) 0000017632

FOR COURT USE ONLY

FILED / RECEIVED
SEP 18 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: Sept 17/09

**Signature:** The person authorized ... other ... above. Attach cop ... s

MCDONNELL LOAN OPPORTUNITY LTD.
By: McDonnell Investment Management, LLC,
as Investment Manager

Kathleen A. Zarn
Vice President

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Lehman Brothers Holdings Inc., et al., | ) | Case No. 08-13555 (JMP) |
| Debtors. | ) | Jointly Administered |

**ATTACHMENT TO PROOF OF CLAIM FILED BY MCDONNELL LOAN OPPORTUNITY LTD.**

1. This attachment is submitted with and incorporated as part of the proof of claim (the "Claim") filed by McDonnell Loan Opportunity Ltd. ("McDonnell" or the "Claimant") against Lehman Brothers Holdings Inc. (the "Debtor"), which filed a voluntary bankruptcy petition on September 15, 2008 for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Claim supplements and amends the proofs of claim, court claim numbers 4448 and 4786 filed against the Debtor on May 19, 2009 and May 15, 2009, respectively.

2. The Claim against the Debtor is for the amounts owed by the Debtor under that certain Purchase and Sale Agreement, dated as of June 22, 2006, between the Debtor, as seller and McDonnell, as buyer (the "Trade Agreement"). A copy of the Trade Agreement is attached hereto as Exhibit A. Capitalized terms used and not defined herein have the meaning set forth in the Trade Agreement. Claimant incorporates herein by reference all documents that have been or will be submitted by Claimant in connection with the Claim against the Debtor.

3. In accordance with Section 28.5(c) of the Trade Agreement, upon the Debtor's request, McDonnell deposited with the Debtor by wire transfer and in immediately available

funds a cash escrow in the amount of $250,000.00 (the "Escrow Amount") to secure McDonnell's future funding obligations under the Trade Agreement. Such Escrow Amount accrues interest at a rate set forth in Section 28.5(c) of the Trade Agreement and the Debtor is required to pay to McDonnell such accrued interest in arrears on a monthly basis (the "Accrued Interest").

4. Pursuant to Section 8.2(a) of the Trade Agreement, the Debtor is obligated to deliver any Distributions received after the Trade Date to McDonnell.

5. As of June 30, 2009, all of McDonnell's obligations to the Debtor under the Trade Agreement have been paid and satisfied in full, and McDonnell has no further obligations to the Debtor thereunder.

6. To date, the Debtor has failed to return the Escrow Amount and to pay Accrued Interest and Distributions received by the Debtor after the Trade Date to McDonnell in accordance with the terms of the Trade Agreement.

7. McDonnell is therefore entitled to contractual damages in an amount not less than $250,000.00 (the "Claim Amount") plus all Accrued Interest due and payable to McDonnell, Distributions received by the Debtor after the Trade Date and all other amounts due to McDonnell under the Trade Agreement.

8. Additional damages asserted pursuant to this Claim are presently unliquidated, and Claimant reserves its rights to amend this Claim, as necessary, to assert any and all amounts as they become liquidated, including for principal, interest, fees and expenses. Claimant additionally claims for the costs, fees and expenses incurred in enforcing its rights under the Trade Agreement, together with fees, costs and other charges, to the extent provided for at law or in equity. Such amounts are presently unliquidated.

9. In addition to the foregoing amount, Claimant also asserts a claim hereunder for all direct, indirect, nominal or consequential damages and other amounts owed or owing to Claimant pursuant to the Trade Agreement or otherwise, whether or not liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

10. Claimant reserves the right to amend, supplement or modify this Claim at any time. In addition, Claimant reserves its rights to file additional or other pleadings to assert any of the amounts set forth in the Claim or any amendments thereto, including, without limitation, any postpetition administrative expenses pursuant to the Bankruptcy Code, including sections 503 and 507 thereof.

11. To the extent the Debtor asserts claims against Claimant, Claimant reserves the right to assert that such claims are subject to rights of setoff and/or recoupment, which rights are treated as secured claims under the Bankruptcy Code, and state and federal laws of similar import as well as in equity.

12. To the extent that the Debtor or any other party takes any action that would give rise to a counterclaim or other rights or claims Claimant may have against the Debtor, Claimant reserves all of its respective rights.

13. In addition, with the filing of this Claim, Claimant does not waive any of its rights to claim specific assets or any other rights or rights of action that Claimant has or may have against the Debtor, and Claimant expressly reserves such rights.

14. By filing this Claim, Claimant does not waive, and specifically reserves, its respective procedural and substantive defenses to any claim that may be asserted against it by the Debtor, by any trustee of its estates, by any official committee, or by any other party.

15. Claimant reserves all rights accruing to it against the Debtor, and the filing of this Claim is not intended to be, and shall not be construed as, an election of remedy or a waiver or limitation of any rights of Claimant.

16. Claimant reserves the right to withdraw this Claim for any reason whatsoever.

17. Claimant reserves all rights against any other entity, including, without limitation, non-debtor affiliates of the Debtor.

18. The filing of the Claim is not and shall not be deemed or construed as: (i) a waiver, release or limitation of Claimant's rights against any person, entity, or property (including, without limitation, the Debtor or any other person or entity that is or may become a debtor in a case pending in this Court); (ii) a consent by Claimant to the jurisdiction or venue of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Claimant; (iii) a waiver, release or limitation of Claimant's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (iv) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (v) a waiver, release or limitation of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (vi) a waiver of Claimant's right to move to withdraw the reference with respect to the subject matter of the Proof of Claim, any objection thereto or other proceeding which may be

commenced in this case against or otherwise involving Claimant; (vii) an election of remedies; (viii) a consent by Claimant to the termination of the Debtor's liability to Claimant by a particular court, including, without limitation, this Court; or (ix) a consent by Claimant to the final determination or adjudication of any claim or right pursuant to 28 U.S.C. § 157(c).

19. Supporting documentation and all matters concerning this Claim should be addressed to:

Jai S. Khanna
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-6357
(312) 558-5700 (fax)
jkhanna@winston.com

# EXHIBIT A

**Documentation for Trade Agreement between McDonnell Loan Opportunity Ltd. and Lehman Brothers Holdings Inc.**

Attached hereto.

MAY 2005




## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | | |
|---|---|---|
| Trade Date: | March 29, 2006 | |
| Agreement Date: | June 22, 2006 | |
| Seller: | Lehman Brothers Holdings Inc. | |
| Buyer: | McDonnell Loan Opportunity Ltd. | |
| Credit Agreement: | COMPETITIVE ADVANCE AND REVOLVING CREDIT FACILITY, dated as of June 16, 2003, among GENERAL MOTORS CORPORATION, a Delaware corporation, ADAM OPEL AG, a German Aktiengesellschaft, OPEL EISENACH GMBH, a German Gesellschaft mit beschränkter Haftung, GENERAL MOTORS COORDINATION CENTER, BVBA/SPRL, a Belgian Besloten Vennootschap met Beperkte Ansprakelijkheid/ Société Privée à Responsabilité Limitée, ADAM OPEL AG, as guarantor of the obligations of Eisenach, the several banks and other financial institutions from time to time parties thereto, and CITIBANK, N.A., as administrative agent | |
| Borrower: | General Motors Corporation | |
| Purchase Amount(s): | $5,000,000.00 | |
| Tranche(s): | Tranche A Commitment | |
| CUSIP Number(s), if available: | N/A | |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat | |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment | |
| Immediate Prior Seller (if any): | Bank of Tokyo-Mitsubishi UFJ, Ltd. (f/k/a UFJ Bank Limited) | |
| Borrower in Bankruptcy: | Yes ☐ | No ☒ |
| Delivery of Credit Documents: | Yes ☐ | No ☒ |
| Netting Arrangements: | Yes ☐ | No ☒ |



Copyright © LSTA 2005. All rights reserved.

| TRANSACTION SUMMARY | | |
|---|---|---|
| **Flip Representations:** | **Yes** ☐ | **No** ☒ |
| **Step-Up Provisions:** | **Yes** ☐ | **No** ☒ |
| | **Shift Date:** | |
| **Transfer Notice:** | **Yes** ☐ | **No** ☒ |

A. DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Citibank, N.A.

"Assignment" means the Assignment and Acceptance substantially in the form of the Credit Agreement for an assignment of the Loans and Commitments.

"Bankruptcy Case" select one:

☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re __________, No. __________].

"Bankruptcy Court" select one:

☒ none.
☐ means [the United States Bankruptcy Court for the __________ District of __________ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:

☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:

☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:

☐ none.
☒ means the Tranche A Commitment in the principal amount of $5,000,000.00, pursuant to which $0 is outstanding as Loans.

"Covered Prior Seller" select one:

☒ not applicable.

☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the date on which _____________ transferred such Loans and Commitments (if any)].

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means Tranche A Revolving Credit Loans in the outstanding principal amount of $0.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_________].

"Required Consents" means the consent of the Agent and the Borrower.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of $5,000,000.00.

B. SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.

If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.

☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).

☒ None.

☐ The following: __________.

Section 4.1(v) (Proof of Claim).

☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by

☐ the Agent on behalf of the Lenders.

☐ Seller or a Prior Seller.

☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☒ Not applicable

C. SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

C.1 Section 5.1(n) (Buyer Status).

☒ Buyer is not a Lender.

☐ Buyer is a Lender.

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

C.2 If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

D. SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i) If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii) If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

E. SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to

☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to

☐ one-half thereof.

☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Consent.

☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☒ There is no Transfer Fee to assign the sub-participation and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

F. SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

F.1 Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i) If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii) If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

F.2 Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

JPMorgan Chase Bank (Houston, TX)
ABA No.: 021-000-021
BNF Name: Asset Backed - Structured #2
DDA Acct. No.: 00102619468
FFC: McDonnell Loan Opportunity Ltd.
FCC#: 10225724.2
Ref: Attn: Ruben Luna/GM

Seller's Wire Instructions:

Citibank NYC
ABA No.: 021000089
A/C No.: 30545554
A/C LHBI Bank Loans
Ref: General Motors to Bank of America

G. SECTION 9 (NOTICES)

Buyer's Address for Notices and Delivery:

Kathleen Zarn
McDonnell Investment Management, LLC
1515 West 22nd St. - 11th Floor
Oak Brook, IL 60523
Tel: (630) 684-8746
Fax: (866) 861-6825
Email: zarnk@mcdmgmt.com

Seller's Loan Administration/Operations Contact
*(For Notices on Borrowings, Paydowns, Interest & Fees)*

LEHMAN BROTHERS HOLDINGS INC.
745 7th Avenue, 16th Floor
New York, NY 10019
Attn: Michael Herr
Email: mherr@lehman.com
Phone: (212) 526-2023
Fax: (646) 758-4993

Seller's Credit Contact/Intralinks Contact
*(For Credit Documents & Financial Statements)*

LEHMAN BROTHERS HOLDINGS INC.
745 7th Avenue, 19th Floor
New York, NY 10019
Attn: Paul Arzouian
Phone: (212) 526-5803
Fax: (646) 758-4980
Email: parzouian@lehman.com

H. **SECTION 26 (FURTHER PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

1. The definition of "Operative Documents" in Section 1.2 of the Standard Terms shall be deleted in its entirety and the following definition shall be substituted in place thereof:

   "Operative Documents" means (a) this Agreement and (b) the Purchase Price Letter.

2. The definition of "Participation Agreement" shall be added to Section 1.2 of the Standard Terms immediately after the definition of "Operative Documents":

   "Participation Agreement" means that certain Purchase and Sale Agreement, dated as of December 15, 2005, by and between, Bank of Tokyo-Mitsubishi UFJ, Ltd. (f/k/a UFJ Bank Limited), as seller, and Lehman Brothers Holdings Inc., as buyer.

3. The definition of "Transferred Rights" shall be amended by deleting the definition in its entirety and inserting the following:

   "Transferred Rights" means any and all of Seller's right, title, and interest in, to and under the Participation (as defined in the Participation Agreement) and Participation Agreement, each to the extent related to the Loans and the Commitments (if any) and to the extent related thereto, the following (excluding, however, the Retained Interest, if any):

   (a) all other amounts (including any PIK interest) funded by or payable to Seller under the Participation Agreement or Prior Sellers under the Credit Documents, and all obligations owed to Seller or any Prior Seller in connection with the Loans and the Commitments (if any);

   (b) the Credit Documents;

   (c) the Proof of Claim, if any;

   (d) the Predecessor Transfer Agreements (but only to the extent related to the Loans or the Commitments (if any), as specified in the Annex);

   (e) all claims (including "claims" as defined in Bankruptcy Code §101(5)), suits, causes of action, and any other right of Seller or Prior Seller, whether known or unknown, against Borrower, any Obligor, or any of their respective Affiliates, agents, representatives, contractors, advisors, or any other Entity that in any way is based upon, arises out of or is related to any of the foregoing, including, to the extent permitted to be assigned under applicable law, all claims (including contract claims, tort claims, malpractice claims, and claims under any law governing the purchase and sale of, or indentures for, securities), suits, causes of action, and any other right of Seller or Prior Seller against any attorney, accountant, financial advisor, or other Entity arising under or in connection with the Credit Documents or the transactions related thereto or contemplated thereby;

(f) all Guarantees and all Collateral and security of any kind for or in respect of the foregoing;

(g) all cash, securities, or other property, and all setoffs and recoupments, received, applied, or effected by or for the account of Seller or any Prior Seller under the Loans or the Commitments (if any) and other extensions of credit under the Participation Agreement or Credit Documents (whether for principal, interest, fees, reimbursement obligations, or otherwise) from and after the Trade Date (unless excluded pursuant to Section 8.1), including all Distributions obtained by or through redemption, consummation of a plan of reorganization, restructuring, liquidation, or otherwise of Borrower, any Obligor or the Credit Documents, and all cash, securities, interest, dividends, and other property that may be exchanged for, or distributed or collected with respect to, any of the foregoing;

(h) the economic benefit of permanent commitment reductions, permanent repayments of principal and Non-Recurring Fees received by Seller or any Prior Seller from and after the Trade Date; and

(i) all proceeds of the foregoing.

4. Section 3.1 shall be amended by deleting clause 3.1(c)(iii) and replacing it with the following: "Buyer shall have received payment of the Purchase Price from Seller."

5. Section 3.2 shall be amended and restated in its entirety as follows:

"Seller's obligation to sell, transfer, assign, grant, and convey the Transferred Rights to Buyer shall be subject to the conditions that (a) Buyer's representations and warranties in this Agreement shall have been true and correct on the Agreement Date and/or the Settlement Date (as specified in Section 5.1), (b) Buyer shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Settlement Date, and (c) Seller shall have received (i) the Transaction Specific Terms duly executed on behalf of Buyer and (ii) the Purchase Price Letter duly executed on behalf of Buyer.

6. Section 4.1 shall be amended by deleting in its entirety the representation of Seller in Section 4.1 (d) and inserting the following:

"Seller is the sole legal and beneficial owner of and has good title to the Participation (as defined in the Participation Agreement) and is the sole beneficial owner of the Loans, the Commitments (if any) and the other Transferred Rights free and clear of any Encumbrance. "

7. Section 4.2 of the Standard Terms is hereby deleted in its entirety and is replaced with a new Section 4.2 reading as follows:

"Except as expressly stated in this Agreement, Seller makes no representations or warranties, express or implied, with respect to the Transaction."

8. Section 5.2 of the Standard Terms is hereby deleted in its entirety and is replaced with a new Section 5.2 reading as follows:

"Except as expressly stated in this Agreement, Buyer makes no representations or warranties, express or implied, with respect to the Transaction."

9 Section 4.1(h)(i) of the Standard Terms is hereby revised as follows:

The phrase "that will result in Buyer receiving" will be deleted and replaced with "that will result in Seller (prior to the occurrence of the Elevation) and Buyer (after the occurrence of the Elevation) receiving."

10. Section 5.1(j) of the Standard Terms is hereby deleted and replaced with the following:

"For so long as the transfer hereunder remains a Sub-Participation, less than 25%, in the aggregate, of the Sub-Participation is being purchased by, and shall at all times be held by, "benefit plan investors" as defined in Department of Labor Regulation 2510.3-101(f) and no interest in the Sub-Participation is being acquired by or on behalf of an Entity that is, or at any time while the Sub-Participation is held thereby will be, one or more Benefit Plans. The representation set forth in this Section 5.1(j) is for the benefit of the Seller and the Immediate Prior Seller."

11. Section 9.2 of the Standard Terms is hereby deleted and replaced with the following:

"From the Settlement Date through the Elevation Date if Seller receives any notices, correspondence or other documents in respect of the Transferred Rights or any Credit Document, Seller shall promptly forward them to Buyer. From the Elevation Date through the 45th day after the Elevation Date if Seller receives any notices, correspondence or other documents in respect of the Transferred Rights or any Credit Document that, to the best of Seller's knowledge, were not sent to the Lenders generally, Seller shall forward them to Participant. Notwithstanding the foregoing, Seller shall (a) have no liability to Participant regarding the validity or content of the information and documents furnished pursuant to this Section 9.2 and (b) be under no obligation or liability to disclose any information or deliver any document in respect of which Participant has not complied with Section 28.7."

12. Seller and Buyer hereby agree that the following Section 28 is hereby inserted immediately after Section 27 of the Standard Terms.

"28. Sub-Participation

28.1 Grant of Sub-Participation. Notwithstanding anything to the contrary in this Agreement, upon payment of the Purchase Price, automatically and without further action by either Party, Seller hereby grants and sells to Buyer, and Buyer hereby purchases and takes from Seller, an undivided 100% sub-participation interest (the "Sub-Participation") in the Transferred Rights and, until the occurrence of an Elevation (as defined below), the terms and conditions hereof shall be construed accordingly, *mutatis mutandis*.

28.2 Elevation and Termination. Subject to the terms and provisions of the Credit Documents and applicable law, rule or order, the parties thereafter shall use commercially reasonable efforts to convert the Sub-Participation to an outright assignment as contemplated by this Agreement (an "Elevation"). Upon the effective date of such Elevation to an outright assignment (the "Elevation Date"), this Agreement shall be deemed an outright assignment of the Transferred Rights from Seller to Buyer, and the terms and conditions hereof shall be construed accordingly. Each Party shall bear its own costs and expenses in connection with the Elevation and shall share equally any required transfer fees. Upon the Elevation Date, without any further action by the Seller, Buyer or any other party, the Sub-Participation shall terminate and shall be of no further force and effect. Notwithstanding the foregoing, the termination of the Sub-Participation shall not affect either Party's rights or obligations hereunder arising on or before such termination, including, without limitation, any rights or obligations relating to a Party's breach of any of its representations, warranties, covenants or agreements under this Agreement.

28.3 Standard of Care. Prior to the occurrence of an Elevation, (a) Seller shall not be held to the standard of care of a fiduciary and shall not be an agent or a trustee for Buyer but Seller shall exercise the same care in the administration of the Sub-Participation as if it had retained the Sub-Participation beneficially for its own account, (b) Seller may rely on legal counsel (including, without

limitation, legal counsel for the Borrowers or any Obligor), accountants and other experts selected or accepted by Seller from time to time in its own discretion and shall not be liable for any action taken or omitted to be taken by Seller in accordance with the advice of such counsel, accountants or experts, and (c) Seller may rely on any notice, consent, certificate, request or other writing document or communication received by Seller from Buyer or any employee or agent of Buyer and believed by Seller to be genuine.

28.4 Further Transfers by Buyer. Prior to the occurrence of an Elevation, Buyer may not sell, assign or otherwise transfer (each a "Pre-Elevation Transfer") the Sub-Participation or its rights under this Agreement or any part thereof or interest in any of the foregoing without the prior written consent of Seller, which consent shall not be unreasonably withheld or delayed; provided, however, that no Pre-Elevation Transfer shall be effective unless (i) such Pre-Elevation Transfer does not violate the Credit Documents, any applicable law, rule, order or regulation or cause Seller to violate or be in breach of any provision of any Transaction Document, (ii) the transferee in such Pre-Elevation Transfer makes for the benefit of Seller substantially each of the representations and warranties set forth in Section 5.1 and (iii) Buyer shall pay to Seller a consent fee in the amount of $3,000. Notwithstanding the foregoing, prior to the occurrence of an Elevation (as defined above), Buyer shall be entitled to grant a sub-participation in its Sub-Participation, or any part thereof or interest therein, without the consent of, or notice to, Seller, but only if (i) such sub-participation does not violate applicable law, rule, order or regulation or cause Seller to violate or be in breach of any provision of any Transaction Document and (ii) the sub-participant makes for the benefit of Seller substantially the representation and warranty set forth in Section 5.1(j)(i). The documentation governing any Pre-Elevation Transfer must also contain (i) a representation and warranty for the benefit of Seller by the transferee that after giving effect to such transfer, that the transferee is not and will not during the term of the Sub-Participation or a subsequent transfer of the Sub-Participation be a Benefit Plan, and (ii) the transferee must covenant and agree that it will obtain from each of its direct transferees the representations, warranties, covenants and agreements contained in this sentence (including, without limitation, this sub clause (ii)). Notwithstanding anything contained in this Section 28.4, no such Pre-Elevation Transfer or subsequent sub-participation shall relieve or release Buyer of any of its obligations or liabilities hereunder, unless, Seller grants its prior written consent thereto (which consent shall not be unreasonably withheld or delayed). For the avoidance of doubt, Section 10.1 of the Standard Terms shall have no force and effect until after the Elevation Date.

28.5 Assumed Obligations, Funding Obligations and Escrow:

(a) Assumed Obligations. From and after the Settlement Date until the Elevation Date, (i) Buyer's assumption of the Assumed Obligations under Sections 2(b) and 2(c) shall not be effective, (ii) Seller shall remain responsible for the Assumed Obligations, (iii) Buyer shall promptly reimburse Seller for all of the Assumed Obligations, and (iv) Buyer shall pay to Seller all reasonable out-of-pocket costs and expenses of collection, enforcement or defense of the Transferred Rights, including, without limitation, reasonable costs and expenses relating to Seller's participation in any amendments to or restructuring of the Credit Documents or any law suit, arbitration or other judicial proceeding relating to the Transferred Rights ("Administration Costs"). Upon the Elevation Date Buyer's assumption of the Assumed Obligation under Sections 2(b) and 2(c) shall be effective.

(b) Funding Obligations. Without limiting the generality of Section 28.5(a), with respect to any funding obligation in respect of the Sub-Participation (including, in respect of the Loans and Commitment, Administration Costs and reimbursement of any other Assumed Obligations), Seller shall promptly upon receipt of notice of any such obligation notify Buyer in writing (provided, however, that in no event shall Seller, to the extent possible, notify Buyer of any such funding obligation later than 4 pm New York time on the Business Day prior to such Funding Date (as defined hereinafter)) of (i) such funding obligation that Seller will be required to make in respect of the Sub-Participation and (ii) the date (the "Funding Date") on which such payment is required to be made by Seller. Buyer shall pay to Seller in immediately available funds, without set-off, counterclaim or deduction of any kind, the full amount of such payment obligation on or prior to the close of business on such Funding Date. Subject to Buyer's receipt of notice as described above, if Buyer fails to make any such payment on the Funding Date thereof, Buyer shall thereafter pay to Seller interest on the amount of such payment for the period from

and including such Funding Date to but excluding the date on which such payment is made to Seller in full at a per annum rate equal to the Federal Funds Rate.

(c) Escrow. To secure any Funding Obligations (as defined below) included in the Sub-Participation, Seller shall have sole discretion to require Buyer to deposit with Seller a cash escrow (the "Escrow") in the amount up to and not exceeding the product of (i) the difference between the Commitments and the Loans, as of the applicable date (the "Funding Obligations"), multiplied by (ii) one minus seventy-five percent (75%) of the Market Purchase Rate (as defined below), exceeds the product of (x) the Loans, as of the applicable date included in the Sub-Participation, multiplied by (y) seventy-five percent (75%) of the Market Purchase Rate. "Market Purchase Rate" means, on any given date, the prevailing market purchase rate as of the applicable date for Loans and Commitments included in the Sub-Participation (expressed as a percentage of par and determined by Seller in good faith). Buyer shall deposit the cash Escrow with Seller in immediately available funds (without setoff, deduction or withholding of any kind) by wire transfer in accordance with the Seller's wire instructions specified in Section F.2 of the Transaction Specific Terms no later than one Business Day after Buyer's receipt of a written notice from Seller requesting the Escrow. Any cash Escrow amount posted by Buyer with Seller shall accrue interest at a per annum rate equal to the Federal Funds Rate from and including the date on which such collateral is posted to but excluding the date such interest is paid to Buyer. Such interest shall be paid monthly in arrears by Seller to Buyer's account specified in Section F.2 of the Transaction Specific Terms on the last day of each month; provided, however that if the last day of any month is not a Business Day, then such payment shall be made on the next Business Day thereafter. Amounts held in Escrow by Seller shall continue to constitute property of Buyer and Seller agrees to hold such amounts on Buyer's behalf, subject only to Seller's rights set forth herein, including Seller's right to withdraw such amount as set forth in clause (d) below.

(d) Failed Funding. Notwithstanding any other provision of this Agreement, if any amount due and payable by Buyer to Seller under or in connection with this Agreement is not paid as and when due (a "Failed Funding"), then, at Seller's sole discretion, with prior notice to Buyer, Seller may withdraw from the Escrow an amount equal to the amount of the Failed Funding (an "Escrow Withdrawal"). If the amount held in Escrow is less than the amount of the Failed Funding (the "Shortfall"), the Seller may at Seller's sole discretion, without prior notice to Buyer, set-off and deduct all or any portion of the Shortfall from any and all amounts otherwise currently due and payable by Seller to Buyer under this Agreement (a "Distribution Set-off"). If the Distribution Set-off does not satisfy the Shortfall then, after written notice is provided to Buyer by Seller (the "Remaining Shortfall Notice") and three Business Days elapses after Buyer's receipt of the Remaining Shortfall Notice and during such time period any remaining Shortfall has not been cured in its entirety by Buyer, Seller may sell, at Seller's sole discretion, all or any part of the Loans and Commitments subject to the Sub-Participation (a "Loan Sale"), on terms and conditions, acceptable to Seller at the Market Purchase Rate, and set-off and deduct against the proceeds therefrom the remainder of the Shortfall. Buyer shall be responsible for and agrees to pay on demand all out-of-pocket expenses (including, without limitation, the reasonable fees and disbursements of Seller's counsel) associated with an Escrow Withdrawal, a Distribution Set-off, or a Loan Sale. Any proceeds from a Loan Sale in excess of amounts due and payable by Buyer to Seller (which shall include Seller's fees, cost and expense associated with collections and any Escrow Withdrawal, Distribution Set-off, or Loan Sale) shall be deemed a Distribution and shall be distributed to the Buyer according to the terms of this Agreement. In the case of a Loan Sale, all of Buyer's beneficial interest in the Loans and Commitments being sold by the Seller (and the portion of the Sub-Participation related thereto), shall, immediately prior to the settlement of such Loan Sale, be automatically transferred from the Buyer to the Seller without any further action required by either Party and all of Buyer's related rights thereto shall automatically terminate. Notwithstanding the foregoing, Buyer shall remain responsible for all obligations and liabilities related to that portion of the Sub-Participation sold in a Loan Sale relating to facts, events or circumstances arising or occurring prior to the Loan Sale.

28.6 Temporary Participation Voting Rights: Prior to the occurrence of an Elevation, Section 11 of this Agreement shall be replaced with the following Section 11, (provided, however, that upon the occurrence of the Elevation Date the following Section 11 shall be of no further force and effect and Section 11 of the Standard Terms shall govern):

11 Voting.

11.1 Seller agrees that it shall, subject to Section 11.3, act or refrain from acting in respect of any request, act, decision or vote under the Transferred Rights or the Credit Documents (each such request, act, decision or vote an "Act") only as follows: (a) if an Act may be exercised by Seller in a divisible manner in respect of all or any portion of the Transferred Rights and Assumed Obligations, then Seller shall take such Act in accordance with Buyer's written directions; or (b) if the Act involved is not divisible or may not be cast or taken separately in respect of the Transferred Rights and Assumed Obligations (or the relevant portion thereof) and any other claim against Borrower or any other Entity (whether or not included in the Transferred Rights), then Seller shall take (or refrain from taking) such action in accordance with instructions received by Seller and believed by Seller in good faith to have been given by the then current holders (including, as the case may be, Seller) of more than 50% of the aggregate principal amount of the claims then outstanding in respect of which such action is to be taken by Seller (the "Majority Holders") that direct Seller to take action with respect thereto.

11.2 Seller shall as soon as practicable after its having actual notice thereof, but in any event within two (2) Business Days of its receipt of such actual notice, notify Buyer in writing of any matter in respect of which it may exercise any Act in respect of which Buyer may vote under Section 11.1.

11.3 Any consent or other direction of Buyer permitted under this Agreement must be in writing and shall not be effective unless received by Seller at least two (2) Business Days prior to the date on which Seller is required to take any Act in connection therewith; provided, however, that if Seller is required to take any Act within a shorter time period, it may require such consent or other direction to be given in a shorter time period. Absent such timely written consent or other direction (including the withholding of such consent), Seller shall be entitled (but not required) to take any Act on behalf of Buyer with respect to such matters (an "Undirected Act") without liability; provided, however, that in taking such action, Seller shall act in good faith and be subject to the provisions of Section 28.3

11.4 Notwithstanding any other provision of this Section 11, Seller shall not be under any obligation to follow Buyer's direction to take any Act that it reasonably determines in good faith would (i) violate applicable law or the Credit Documents; (ii) would expose it to any liability for which it is not provided reasonable indemnity; or (iii) adversely affect Seller's business relationships or business reputation.

28.7 Confidentiality: Prior to the occurrence of an Elevation, (a) Buyer shall comply with provisions of the Transaction Documents concerning confidentiality, with respect to any information and documents provided by Seller to it, pursuant to Section 9.2, as if Buyer were a party to the Transaction Documents and (b) Buyer shall execute and deliver to Seller any confidentiality agreement or undertaking required by Seller in order for Seller to comply with any law, rule, order or Transaction Document.

28.8 Parties' Other Relationships. Notwithstanding anything to the contrary in this Agreement, each Party and any of its Affiliates may engage in any kind of lawful business or relationship with Borrower, any Obligor or any of their Affiliates without liability to the other Party or any obligation to disclose such business or relationship to the other Party. Furthermore, it is understood and agreed that Seller and its Affiliates may, from time to time, in addition to Seller's arrangements with the Borrower and Obligors evidenced by the Credit Documents: (a) accept deposits from, lend money or extend other financial accommodations to or for the benefit of, and otherwise generally engage in any kind of transaction (including, without limitation, any transaction related, directly or indirectly, to banking or trust business) with, the Borrower, any Obligor or any of their respective Affiliates, all in the same manner and as freely as if Seller were not a party to this Agreement; (b) serve as a member of a creditor's committee performing such acts as may be authorized thereby and vote on behalf of Participant's and Seller's interest as a member of a designated class of creditors with respect to a plan of reorganization; (c) purchase or otherwise acquire, directly or indirectly, any capital stock, shares, participations, certificates of interest, bonds, notes, debentures or other securities, or a beneficial interest therein, issued by the Borrower, any Obligor or any of their respective Affiliates, and may make capital contributions and loans and receive payments in connection with any such instrument; and (d) act as financial advisor to the

Borrower or any Obligor or any of their respective Affiliates or as placement agent for any debt or equity securities of the Borrower, any Obligor or any of their respective Affiliates.

*(Signatures on the following page)*

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

LEHMAN BROTHERS HOLDINGS INC.

By: ______________________
Name: DAVID J. DONNELLY
Title: AUTHORIZED SIGNATORY

BUYER

MCDONNELL LOAN OPPORTUNITY LTD.

By: McDonnell Investment Management, LLC
As Investment Manager

By: ______________________
Name:
Title:

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LEHMAN BROTHERS HOLDINGS INC.**

By:____________________
Name:
Title:

**BUYER**

**MCDONNELL LOAN OPPORTUNITY LTD.**

**By: McDonnell Investment Management, LLC As Investment Manager**

By: [signature]
Name: Kathleen A. Zarn
Title: Vice President

## ANNEX TO PURCHASE AND SALE AGREEMENT

1. If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

   To the extent related to the Loans and Commitments, that certain Purchase and Sale Agreement, dated as of December 15, 2005, by and between The Bank of Tokyo-Mitsubishi UFJ, Ltd. (f/k/a UFJ Bank Limited), as seller, and Lehman Brothers Holdings Inc., as buyer. (distressed)

2. List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

   None.

3. Description of Proof of Claim (if any).[2]

   N/A

4. Description of Adequate Protection Order (if any).[2]

   N/A

5. List any exceptions to Section 4.1(w) (Notice of Impairment).

   None.

6. The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is $0.00.

[1] List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

[2] May apply only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

From: Origin ID: ENLA (630) 684-8600
Marlene Camacho
McDonnell Investment Managemen
1515 W. 22nd Street
11th Floor
Oakbrook, IL 60523

FedEx. Express

E

Ship Date: 17SEP09
ActWgt: 1.0 LB
CAD: 4682111/INET9060
Account#: S *********

Delivery Address Bar Code



SHIP TO: (630) 684-8763 BILL SENDER
**Lehman Brothers Holdings Claims**
**Epiq Bankruptcy Solutions**
**757 3RD AVE FRNT 3**
**3RD FLOOR**
**NEW YORK, NY 10017**

Ref # ACS Dziekan Zam
Invoice #
PO #
Dept #

RECEIVED

SEP 1 8 2009



TRK# 0201 7979 4042 8975

**FRI - 18SEP A1**
**STANDARD OVERNIGHT**
**ASR**

10017
NY-US
EWR

**NQ OGSA**



**After printing this label:**

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**EXHIBIT B**

[Executed Evidence of Transfer of Claim]

EVIDENCE OF TRANSFER OF CLAIM

For good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, **McDonnell Loan Opportunity Ltd** ("Seller") does hereby unconditionally and irrevocably sell, transfer and assign unto **Barclays Bank PLC** ("Buyer") all rights, title and interest in and to the claims of Seller **[referenced as proof of claim number 17632]** in the principal amount of $250,000.00 plus all interest, fees and other amounts related thereto (the "Claim") against Lehman Brothers Holdings Inc. (the "Debtor") whose Chapter 11 bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of New York ( the "Bankruptcy Court") (or any other court with jurisdiction over the bankruptcy proceedings) as In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP).

Seller hereby waives any objection to the transfer of the Claim assigned herein (the "Transferred Claim") to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Transferred Claim and recognizing the Buyer as the sole owner and holder of the Transferred Claim. Seller further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Transferred Claim, and all payments or distributions of money or property in respect of the Transferred Claim, shall be delivered or made to the Buyer.

IN WITNESS WHEREOF, the undersigned has duly executed this Transfer of Claim by its duly authorized representative dated the 20th day of May, 2011.

| SELLER: | BUYER: |
| --- | --- |
| MCDONNELL LOAN OPPORTUNITY LTD. | BARCLAYS BANK PLC |
| By: McDonnell Investment Management, LLC, not in its individual capacity, but solely as investment manager | |
| [signature] | [signature] |
| Name: Kathleen A. Zarn | Name: Daniel Crowley |
| Title: Vice President | Title: Managing Director |