**Objection Date: November 18, 2011 at 4:00 p.m.**
**Hearing Date: November 30, 2011 at 10:00 a.m.**

**NEIGER LLP**
151 West 46th Street, 4th Floor
New York, New York 10036
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Edward E. Neiger, Esq.
Marianna Udem, Esq.

*Counsel to Banque Safdie SA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF BANQUE SAFDIE SA TO DEBTORS' TWO HUNDRED
SIXTEENTH OMNIBUS OBJECTION TO DISALLOW AND EXPUNGE
CERTAIN FILED PROOFS OF CLAIM**

Banque Safdie SA ("Banque Safdie"), by and through its undersigned counsel, hereby files its response (the "Response") to the Debtors' Two Hundred Sixteenth Omnibus Objection to Disallow and Expunge Certain Filed Proofs of Claim (the "Objection") [Docket No. 20105], and respectfully represents as follows:

**BACKGROUND**

1. On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

1

2. Prior to the commencement of these chapter 11 cases, Lehman Brothers UK Capital Funding IV LP ("LB UK IV") and Lehman Brothers UK Capital Funding V LP ("LB UK V" and, together with LB UK IV, the "LB UK Entities"), issued certain series of securities (collectively, the "Securities"). The Securities for LB UK IV were issued pursuant to a prospectus dated January 4, 2007 (the "LB UK IV Prospectus"), and the Securities for LB UK V were issued pursuant to a prospectus dated May 11, 2007 (the "LB UK V Prospectus" and, together with the LB UK IV Prospectus, the "Prospectuses").

3. LBHI guaranteed all obligations of the LB UK Entities to the holders of the Securities by separate guarantees executed contemporaneously with each of the Prospectuses, and attached thereto (collectively, the "LBHI Guarantee").

4. On July 2, 2009, the Court entered an order establishing the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271]. The Bar Date Order established a separate claims process for filing guarantee claims against LBHI for holders of certain "programs securities" issued by non-debtor affiliates of LBHI outside of the United States and establishing November 2, 2009 as the bar date for filing these claims (collectively, the "LPS Claims Process"). As part of the LPS Claims Process, on July 27, 2009, LBHI issued a Notice of Deadlines for Filing Proofs of Claim Based on Lehman Programs Securities (the "LPS Claims Notice").

5. The LPS Claims Notice directed creditors to LBHI's website which contained a list of the securities subject to the LPS Claims Process, including the Securities. The LPS Claims Notice instructed that "You MUST file a Securities Programs Proof of Claim [the LPS Claims Process claims form] to share in LBHI's estate if you have a claim based on a Lehman Programs Security" (capitalization in original).

2

6. Banque Safdie, on behalf of itself and its clients, held securities subject to the LPS Claims Process. Accordingly, in order to pursue its guarantee claim against LBHI for the Securities Banque Safdie was required to file a claim through the LPS Claims Process. Banque Safdie timely filed a LPS Claims Process proof of claim in the amount of $4,969,571.76[1], which was assigned proof of claim number 65272 (the "Claim").

7. On September 1, 2011, the Debtors filed their *Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* dated August 31, 2011 (the "Plan") [Docket No. 19627]. The Plan is currently pending before this Court.

8. According to the Objection, LB UK IV and LB UK V were dissolved on June 22, 2010 and May 17, 2011, respectively.

## ARGUMENT

### A. LBHI Conceded Liability by Including the Securities in the LPS Claims Process

9. LBHI conceded its liability on the LBHI Guarantee by including the Securities on the list of securities subject to the LPS Claims Process.

10. The Debtors now assert that they have no liability for the Securities. Objection ¶10. This contradicts the LBHI Guarantee of the LB UK Entities and the Securities.

### B. The LPS Claims Notice required that Banque Safdie file the Claim against LBHI for the Securities in the LPS Claims Process. Banque Safdie properly relied upon this requirement and incurred legal fees to file the Claim.

### C. Purported Invalidation of the LBHI Guarantee

11. The Debtors argue that the LBHI Guarantee terminated because of the purported dissolution of the LB UK Entities, and therefore the Claim against LBHI should be disallowed and expunged. Objection ¶10. The Debtors assert that, because the LB UK Entities automatically

---

[1] The Debtors are only seeking to disallow $1,800,000.00 of this amount pursuant to the Objection.

3

dissolved pursuant to the terms of their respective partnership agreements when they failed to have at least one general partner or at least one limited partner, as the case may be, the LBHI Guarantee terminated and, thus the Claim must be disallowed and expunged.

12.   This assertion must fail. Banque Safdie timely filed the Claim in 2009. At the time of the filing of the Claim, the LB UK Entities were not dissolved. Indeed, both on the Petition Date and at the time Banque Safdie filed the Claim, Banque Safdie held a valid and enforceable claim against LBHI. The fact that the LB UK Entities were allegedly dissolved after Banque Safdie filed the Claim does not absolve LBHI of liability under timely filed proofs of claim relating to the LBHI Guarantee.

13.   Furthermore, the LBHI Guarantee is ambiguous with respect to whether the dissolution of the LB UK Entities is grounds for termination of LBHI's obligations. Section 4(c) of the LBHI Guarantee, which LBHI relies on for the basis of the disallowance of the Claim, provides that the LBHI Guarantee terminates upon dissolution of the underlying issuer. However, in direct conflict with Section 4(c), Section 2.4(d) of the LBHI Guarantee provides that: "The obligations, covenants, agreements and duties of the Guarantor under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening of any of the following . . . (d) the . . . dissolution of, or other similar proceedings affecting, the Issuer…" Therefore, pursuant to Section 2.4(d) of the LBHI Guarantee, the dissolution of the LB UK Entities did not relieve LBHI of its obligations under the LBHI Guarantee and cannot serve as the basis to disallow and expunge the Claim. *See Guedj v. Dana*, 302 A.D.2d 268 (N.Y. App. Div. 1st Dept. 2003) (dissolution of corporate primary obligor did not terminate guarantor's obligations where necessity of continued existence of the corporate primary obligor was ambiguous under the governing agreement).

14.   In addition, the Debtors provided virtually no detail whatsoever regarding the circumstances surrounding the alleged dissolution of the LB UK Entities. Without such disclosure

4

Banque Safdie cannot determine whether LBHI took, or caused to be taken, any action to dissolve the LB UK Entities in order to try to terminate the LBHI Guarantee and have the Claim disallowed and expunged.

### D.    LBHI Could Not Dissolve UK Capital Funding

15.    Pursuant to Section 3.3 of the LBHI Guarantee, LBHI covenanted to the holders of the Securities that: "unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time)."

16.    At this stage in the proceeding, LBHI was not wound up or dissolved: (i) the Plan has not yet been approved by this Court; (ii) even if the Plan is approved by this Court, LBHI will pass through the effective date of the Plan as a reorganized entity; and (iii) the Plan is a reorganization plan under chapter 11 of the Bankruptcy Code, not a liquidating plan.

17.    Therefore, LBHI is not now being "wound up" within the meaning of the LBHI Guarantee. Moreover, LBHI was not being "wound up" at the time the LB UK Entities were allegedly dissolved and will not be "wound up" for a minimum of multiple years, if ever, should this Court approve the Plan. Accordingly, any action taken, or caused to be taken, by LBHI to dissolve the general or limited partners of the LB UK Entities, as the case may be, or the LB UK Entities themselves (the facts surrounding this issue are not clear and have not been fully disclosed by LBHI) would be in direct violation of the express terms of Section 3.3 of the LBHI Guarantee. Therefore, to the extent LBHI was so involved, it cannot benefit from the resulting termination of the LBHI Guarantee and the disallowance of the Claim. *See Gilpin v. Oswego Builders, Inc.* 930 N.Y.S.2d 120, 124 (N.Y. App. Div. 4th Dept., 2011). It is well settled that the doctrine of unclean hands requires that a party seeking equity must come into court with clean hands. *See Gilpin*, 930

5

N.Y.S.2d at 124 (citing *Pecorella v. Greater Buffalo Press*, 107 A.D.2d 1064, 1065(N.Y. App. Div. 4th Dept. 1985).

### E.  The Debtors Cannot Reclassify the Claim

18.  The Debtors request in the alternative that, in the event that the Court does not disallow and expunge the Claim, the Claim be reclassified as an "equity interest" in LBHI. Objection ¶11. However, pursuant to Section 2.9 of the LBHI Guarantee, the Claim constitutes an unsecured obligation of LBHI which obligation ranks senior to, among other things, LBHI's common stock and *pari passu* with, among other things, its non-cumulative preferred stock and non-cumulative preferred securities, if any. Therefore, there is no basis in the LBHI Guarantee for the Claim to simply be reclassified as "equity interests."

### CONCLUSION

19.  Based upon the foregoing reasons, the Claim should not be disallowed or reclassified.  The Debtors already conceded liability on the LBHI Guarantee by specifically including the Securities among the securities subject to the LPS Claims Process.  Furthermore, the documents governing the LBHI Guarantee are ambiguous with respect to the termination of LBHI's obligations and cannot serve as the basis for the disallowance of the Claim.  Even if the dissolution of the UK Entities could serve as the basis for the termination of the LBHI Guarantee, such dissolution generally required that LBHI be "wound up" itself and this event never occurred. Similarly, the Debtors failed to provide any grounds to reclassify the Claim as equity and essentially render it valueless.

## RESERVATION OF RIGHTS

20.Banque Safdie reserves any and all of its rights at law and/or equity, all claims, and all defenses, including without limitation the right to discovery in connection with the Debtors' Objection and the right to amend or supplement this Response and to join in the response of any other party to the Objection.

WHEREFORE, Banque Safdie respectfully requests that the Court (i) overrule the Objection and allow the Claim as set forth herein, and (ii) grant such other and further relief as this Court deems just and proper under the circumstances.

Dated:New York, New York
November 18, 2011

 /s/ Edward E. Neiger
Edward E. Neiger, Esq.
Marianna Udem, Esq.
NEIGER LLP
151 West 46th Street, 4th Floor
New York, New York 10036
Telephone: (212) 267-7342
Facsimile: (212) 918-3427

*Counsel to Banque Safdie SA*