---

**THE DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO CLAIMS SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS NOTICE SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE  WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL, JAE KIM, AT 212-310-8325.**

---

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                          :   Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :   08-13555 (JMP)
                                               :
                      Debtors.                 :   (Jointly Administered)
-------------------------------------------------------------------x
```

### NOTICE OF HEARING ON DEBTORS'
### TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
### TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM

PLEASE TAKE NOTICE that on September 16, 2011, Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (collectively, the "Debtors"), filed their two hundred thirteenth omnibus

objection to claims (the "Two Hundred Thirteenth Omnibus Objection to Claims"), and that a hearing (the "Hearing") to consider the Two Hundred Thirteenth Omnibus Objection to Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **November 30, 2011 at 10:00 AM (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

 **PLEASE TAKE FURTHER NOTICE** that any responses to the Two Hundred Thirteenth Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq. and Mark Bernstein, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq. and Evan Fleck, Esq.);

so as to be so filed and received by no later than **November 11, 2011 at 4:00 PM (prevailing Eastern Time)** (the "Response Deadline").

    **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Two Hundred Thirteenth Omnibus Objection to Claims or any claim set forth thereon, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Two Hundred Thirteenth Omnibus Objection to Claims, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: September 16, 2011
  New York, New York

        /s/ Robert J. Lemons   
        Robert J. Lemons

        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Debtors
        and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                  :     Chapter 11 Case No.
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :     **08-13555 (JMP)**
                                                       :
                           Debtors.                    :     **(Jointly Administered)**
-------------------------------------------------------------------x

### DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM

---

**THIS OBJECTION SEEKS TO DISALLOW AND
EXPUNGE CERTAIN FILED PROOFS OF CLAIM.
PARTIES RECEIVING THIS TWO HUNDRED THIRTEENTH
OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW
THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S)
AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION
AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE
WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT
DEBTORS' COUNSEL, JAE KIM, AT 212-310-8325.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, as debtors and

debtors in possession (together, the "Debtors"), respectfully represent:

## I. Relief Requested

1.     The Debtors file this two hundred and thirteenth omnibus objection to claims (the

"Two Hundred Thirteenth Omnibus Objection to Claims") pursuant to section 502(b) of title 11

of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures

for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the

"Procedures Order") [ECF 6664], to disallow and expunge, or in the alternative, reclassify as

equity interests, the claims listed on Exhibit A annexed hereto (the "Subordinated Guarantee

Claims").

2.     The proofs of claim listed on Exhibit A were filed by holders of securities issued

by Lehman Brothers UK Capital Funding IV L.P. ("LB UK IV") or Lehman Brothers UK

Capital Funding V L.P. ("LB UK V"), non-Debtor entities that held subordinated debt issued by

LBHI.  The Subordinated Guarantee Claims are based, in whole or in part, on guarantees issued

by LBHI in connection with the securities issued by LB UK IV or LB UK V (the "Subordinated

Guarantees").

3.     However, as described below, pursuant to the terms of the Subordinated

Guarantees, LBHI has no liability to the holders of the Subordinated Guarantee Claims.

Accordingly, the Debtors' file this objection to expunge the Subordinated Guarantee Claims.  In

the alternative, if liability for the Subordinated Guarantee Claims exists, the Subordinated

Guarantee Claims should be subordinated in accordance with the terms of the Subordinated

Guarantees, which rank LBHI's obligations, if any, junior to LBHI's obligations for LBHI's subordinated debt and <u>pari passu</u> with LBHI's preferred equity.  Any liability for the Subordinated Guarantee Claims should therefore be reclassified as equity.

## II. <u>Background</u>

4.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for Region 2 (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

6.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "<u>Examiner</u>") and by order, dated January 20, 2009 [ECF 2583], the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner filed its report with the Court on March 11, 2010 pursuant to section 1106(b) of the Bankruptcy Code [ECF 7531].

7.      On January 14, 2010, the Court entered an order approving procedures for the filing of omnibus objections to proofs of claim (the "<u>Procedures Order</u>") [ECF 6664], which authorizes the Debtors, among other things, to file omnibus objections to up to 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

### III. Jurisdiction

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### IV. Subordinated Guarantee Claims Asserted Against LBHI Should Be Expunged

9.      Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim

may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  A proof

of claim is "deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  If an

objection refuting at least one of the claim's essential allegations is asserted, the claimant has the

burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389

(Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr.

LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524,

539 (Bankr. S.D.N.Y. 2000).

10.     The Debtors have no liability to the holders of Subordinated Guarantee Claims

because the Subordinated Guarantees have terminated.  Pursuant to the terms of the Subordinated

Guarantees, the Subordinated Guarantees "shall terminate and be of no further force and effect

upon the earliest of…dissolution of the issuer…"[1]  LB UK IV and LB UK V, the issuers of those

securities, were automatically dissolved pursuant to the terms of the Partnership Agreements

establishing LB UK IV and LB UK V, which provide for the dissolution of the issuer when the

---

[1]  A copy of the prospectus for the securities issued by LB UK IV, dated January 4, 2007 related to Fixed/Floating
Rate Enhanced Capital Advantaged Preferred Securities ("Prospectus IV") is attached hereto as Exhibit B.  A copy
of the prospectus for the securities issued by LB UK V, dated May 11, 2007 related to Fixed/Floating Rate
Enhanced Capital Advantaged Preferred Securities ("Prospectus V") is attached hereto as Exhibit C.  Prospectus IV
and Prospectus V contain the terms of the Subordinate Guarantees "substantially in the form to be executed by
LBHI" beginning on page 34 and 33, respectively.  See Prospectus IV, section 4(c) at page 38 and Prospectus V,
section 4(c) at page 37.

partnership no longer has at least one general partner or at least one limited partner.[2]  LB GP No.
1 Ltd, as general partner for LB UK IV and LB UK V, and LB Investment Holdings Ltd, as
preferential limited partner for LB UK IV and LB UK V, were dissolved on June 22, 2010 and
May 17, 2011, respectively.[3]  Accordingly, with the dissolution of the issuers, the Subordinated
Guarantees were terminated and LBHI has no further liability to the holders of the Subordinated
Guarantee Claims.  Therefore, the Debtors request that they be disallowed and expunged in their
entirety.

### V. Subordinated Guarantee Claims Asserted Against LBHI Should Be Reclassified

11.    In the alternative, the Debtors request that the Subordinated Guarantee Claims be
reclassified as equity interests.

### A.    The Subordinated Guarantees Contain Subordination Provisions

12.    As described below in paragraph 13, the Subordinated Guarantees provide that
any claims arising from, in connection with, or in any way relating to, any failure of LBHI to pay
under the guarantee shall have the same priority as, and no greater priority than, preferred stock
interests in LBHI.

13.    Prospectus IV clearly states that LBHI's obligations under the Subordinated
Guarantees for the securities issued by LB UK IV

> …constitute unsecured obligations of LBHI subordinated in right of payment to
> Senior Creditors and will at all times rank: (a) junior to all subordinated liabilities
> of LBHI … (b) pari passu with Parity Securities, … and (c) senior to the Junior
> Share Capital of LBHI.  § 2.9 Prospectus IV, at page 36.[4]

---

[2] The relevant excerpts of the Partnership Agreements have been attached hereto as Exhibit D.

[3] See dissolution certificates attached as Exhibit E obtained from the official company register of the United
Kingdom and Wales.  www.direct.companyhouse.gov.uk (September 2011).

[4] "Junior Share Capital" is defined as:  "LBHI's common stock, together with any other securities or obligations of
LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities."  See Prospectus IV at page

Similarly, Prospectus V clearly states that LBHI's obligations under the Subordinated

Guarantees for the securities issued by LB UK V

> …constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank: (a) junior to all subordinated liabilities of LBHI … (b) pari passu with Parity Securities, … and (c) senor to the Junior Share Capital of LBHI.

§ 2.9 Prospectus V, at page 35.[5]

14.     Thus, even if the Subordinated Guarantees existed today, the holders of such

Subordinated Guaranteed Claims are only entitled to an unsecured, subordinated right of

payment from LBHI.

**B.    Subordination Is Enforceable Pursuant to Bankruptcy Code Section 510(a)**

15.     Section 510(a) of the Bankruptcy Code provides that "[a] subordination

agreement is enforceable … to the same extent that such agreement is enforceable under

applicable nonbankruptcy law."  11 U.S.C. § 510(a).

16.     Courts have routinely held that the "enforcement of lawful subordination

agreements by Bankruptcy Courts does not offend the policy of equal distribution of the

bankrupt's estate."  *In re Leasing Consultants, Inc.* 2 B.R. 165, 168 (Bankr. N.Y. 1980), *citing In

re Credit Industrial Corp.*, 366 F.2d 402, 407 (2d Cir. 1966).  Under general contract law

principles, when a subordination agreement is unambiguous, the parties' rights are governed

exclusively by that agreement.  *In re Leasing Consultants, Inc.*, 2 B.R. at 169.

---

34.  "Parity Securities" is defined as:  "…Any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities)…"  *Id.*

[5] "Junior Share Capital" is defined as:  "LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities."  See Prospectus V at 33. "Parity Securities" is defined as:  "…Any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities)…"  *Id.*

17.     Accordingly, to the extent LBHI has any liability on account of the Subordinated Guarantee Claims, the Debtors request that the Subordinated Guarantee Claims be reclassified as equity interests.

## VI. **Reservation of Rights**

18.     The Debtors reserve all their rights to object on any other basis to any Subordinated Guarantee Claim or any portion of any Subordinated Guarantee Claim for which the Court does not grant the relief requested herein.

## VII. **Notice**

19.     No trustee has been appointed in these chapter 11 cases.  Notice of this Two Hundred Thirteenth Omnibus Objection to Claims has been provided to:  (i) each claimant listed on Exhibit A; (ii) the U.S. Trustee for Region 2; (iii) the attorneys for the Creditors' Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF 9635]. The Debtors submit that such notice is sufficient and no other or further notice need be provided.

20.     No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: September 16, 2011
        New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# Exhibit A

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 1 | AIS, LABINAH<br>BATZKES BAKKE 3<br>HILLEROED, DK-3400<br>DENMARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 57469 | $45,679.94 |
| 2 | ALIDIA CV AC II<br>OOSTERDOKSTRAAT 114<br>DK AMSTERDAM, 1011<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50624 | $1,359,052.23 |
| 3 | ALOS FERRANDIZ, MARIA<br>AV. DEL GOLF 8<br>CASTELLON DE LA PLANA, 12100<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44826 | Undetermined |
| 4 | ALPHA BANK A.E.<br>FINANCIAL MARKETS - PLANNING & TRADING DIVISION<br>40, STADIOU STREET<br>ATHENS, 102 52<br>GREECE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56867 | Undetermined |
| 5 | ALVAREZ, ANTONIO ANDREU<br>URB. EL COTO, CALLE EL CIERVO 202, MIJAS COSTA<br>MALAGA, 29650<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45002 | $706,134.90 |
| 6 | ANEAS MOURINO, JOSE LUIS<br>C/ ACTOR ARTURO LLEDO 37 1 7 C<br>ALICANTE, 03008<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44807 | Undetermined |
| 7 | ANGULO, ALFONSO<br>CL ALVARO CABALLERO, 27B<br>EL PLANTIO<br>28023 MADRID,<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24137 | $83,052.87 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 8 | ANSCHOT PENSIOEN BV C/O ORANGEFIELD TRUST (ANTILLES) NV KAYA WFG MENSING 14 CURACAO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/05/2009 | 36301 | $56,972.00 |
| 9 | ANTONIO AMIL ARQUERO, JUAN C/ JULIAN ROMEA 8 AT 6 08006 BARCELONA, SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44741 | Undetermined |
| 10 | ARANAZ MARINAS, JULIO / ELVIRA SEGURA MOVELLAN, MARIA C/ CEDRO 4 LA HIEDRA 28230 LAS ROZAS (MADRID), SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44736 | Undetermined |
| 11 | AUGUSTO MARTINS, GUILHERME RUA DO MERCADO N 63 MIRANDA DO DOURO, 5210-210 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46952 | $144,943.26 |
| 12 | AZEUEDO, JOAO AUGUSTO MARTINS GONCALVES RUA SANTA JOANA PRINCESA, 59 PORTO, 4150-667 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41720 | $57,977.30 |
| 13 | B.J.G. MONSTER HOLDING B.V. C/O THE UNITED TRUST COMPANY N.V. LANDHUIS JOONCHI KAYA RICHARD J. BEAUJON Z/N CURACAO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/06/2009 | 36734 | $54,123.40* |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 14 | BADIAS LOPEZ DE LONGORIA, MARIA CONCEPCION<br>AV. DOCTOR GADEA 5, 1 IZQ.<br>ALICANTE, 03003<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44792 | Undetermined |
| 15 | BALMES, AURELIO MATE<br>C/SAN MARTIN DE PORRES 53-4B<br>MADRID, 28035<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46839 | $71,215.00 |
| 16 | BANCA MONTE PARMA S.P.A.<br>ATTN: MR. ANDREA MOSCONI<br>P.LE JACOPO SANVITALE, 1<br>PARMA PR, 43121<br>ITALY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56273 | $361,688.91 |
| 17 | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. (""BBVA"")<br>ATTN: ANA HIDALGO/ELENA PRIETO, LEGAL DEPARTMENT<br>PASEO DE LA CASTELLANA, 81 - 21ST FLOOR<br>MADRID, 28046<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49904 | $1,985,366.64 |
| 18 | BANCO PASTOR<br>ATTN: GUILLERMO REAL RODRIGUEZ DE LEGISIMA<br>CANTON PEQUENO N.1, 6 PLANTA<br>A CORUNA, 15003<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 58985 | $266,344.10* |
| 19 | BANCO SANTANDER (SUISSE) S.A., AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>5-7 AMI-LEVRIER<br>GENEVA, 1201<br>SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55687 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 20 | BANCO SANTANDER (SUISSE) S.A., AS AGENT ATTN: LEGAL DEPARTMENT 5-7 AMI-LEVRIER GENEVA, 1201 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55688 | Undetermined |
| 21 | BANCO SANTANDER (SUISSE) S.A., AS AGENT ATTN: LEGAL DEPARTMENT 5-7 AMI-LEVRIER GENEVA, 1201 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55689 | Undetermined |
| 22 | BANCO SANTANDER (SUISSE) S.A., AS AGENT ATTN: LEGAL DEPARTMENT 5-7 AMI-LEVRIER GENEVA, 1201 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55691 | Undetermined |
| 23 | BANCO SANTANDER (SUISSE) S.A., AS AGENT ATTN: LEGAL DEPARTMENT 5-7 AMI-LEVRIER GENEVA, 1201 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55692 | Undetermined |
| 24 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55631 | Undetermined |
| 25 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55632 | Undetermined |

*\* - Indicates claim contains unliquidated and/or undetermined amounts*

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 26 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55633 | Undetermined |
| 27 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55634 | Undetermined |
| 28 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55635 | Undetermined |
| 29 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55640 | Undetermined |
| 30 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55641 | Undetermined |
| 31 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55642 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 32 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55643 | Undetermined |
| 33 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55644 | Undetermined |
| 34 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55645 | Undetermined |
| 35 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55646 | Undetermined |
| 36 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55647 | Undetermined |
| 37 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55648 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|------|-------------|-------------|------------|---------|---------------------|
| 38 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55649 | Undetermined |
| 39 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55650 | Undetermined |
| 40 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55651 | Undetermined |
| 41 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55652 | Undetermined |
| 42 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55653 | Undetermined |
| 43 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55654 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 44 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55655 | Undetermined |
| 45 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55656 | Undetermined |
| 46 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55657 | Undetermined |
| 47 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55658 | Undetermined |
| 48 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55659 | Undetermined |
| 49 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55660 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 50 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55661 | Undetermined |
| 51 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55662 | Undetermined |
| 52 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55663 | Undetermined |
| 53 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55664 | Undetermined |
| 54 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55665 | Undetermined |
| 55 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55666 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 56 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55667 | Undetermined |
| 57 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55668 | Undetermined |
| 58 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55669 | Undetermined |
| 59 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55670 | Undetermined |
| 60 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55671 | Undetermined |
| 61 | BANCO SANTANDER INTERNATIONAL AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKWELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55672 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 62 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55673 | Undetermined |
| 63 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55674 | Undetermined |
| 64 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55675 | Undetermined |
| 65 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55676 | Undetermined |
| 66 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55677 | Undetermined |
| 67 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55678 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 68 | BANCO SANTANDER INTERNATIONAL AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKWELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55679 | Undetermined |
| 69 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55576 | Undetermined |
| 70 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55577 | Undetermined |
| 71 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55578 | Undetermined |
| 72 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55579 | Undetermined |
| 73 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55580 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 74 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55581 | Undetermined |
| 75 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55582 | Undetermined |
| 76 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55583 | Undetermined |
| 77 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55584 | Undetermined |
| 78 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55585 | Undetermined |
| 79 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55586 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 80 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55587 | Undetermined |
| 81 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55588 | Undetermined |
| 82 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55589 | Undetermined |
| 83 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55590 | Undetermined |
| 84 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55591 | Undetermined |
| 85 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55592 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 86 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55593 | Undetermined |
| 87 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55594 | Undetermined |
| 88 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55595 | Undetermined |
| 89 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55596 | Undetermined |
| 90 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55597 | Undetermined |
| 91 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55598 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 92 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55599 | Undetermined |
| 93 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55600 | Undetermined |
| 94 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55601 | Undetermined |
| 95 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55602 | Undetermined |
| 96 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55606 | Undetermined |
| 97 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55607 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 98 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55608 | Undetermined |
| 99 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55609 | Undetermined |
| 100 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55610 | Undetermined |
| 101 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55611 | Undetermined |
| 102 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55612 | Undetermined |
| 103 | BANCO SANTANDER INTERNATIONAL, AS AGENT ATTN: LEGAL DEPARTMENT 1401 BRICKELL AVE, SUITE 1500 MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55613 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 104 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55614 | Undetermined |
| 105 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55615 | Undetermined |
| 106 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55616 | Undetermined |
| 107 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55617 | Undetermined |
| 108 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55618 | Undetermined |
| 109 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55619 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 110 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55620 | Undetermined |
| 111 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55621 | Undetermined |
| 112 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55622 | Undetermined |
| 113 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55623 | Undetermined |
| 114 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55624 | Undetermined |
| 115 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55625 | Undetermined |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|------|-------------|-------------|------------|---------|---------------------|
| 116 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55626 | Undetermined |
| 117 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55627 | Undetermined |
| 118 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55628 | Undetermined |
| 119 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55629 | Undetermined |
| 120 | BANCO SANTANDER INTERNATIONAL, AS AGENT<br>ATTN: LEGAL DEPARTMENT<br>1401 BRICKELL AVE, SUITE 1500<br>MIAMI, FL 33131 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55630 | Undetermined |
| 121 | BANK J.SAFRA (GIBRALTAR) LTD<br>SUITE 971<br>EUROPORT<br>PO BOX 542<br><br>GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46108 | $37,031.00* |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 122 | BANK J.SAFRA (GIBRALTAR) LTD<br>SUITE 971<br>EUROPORT<br>PO BOX 542<br><br>GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46115 | $163,795.00* |
| 123 | BANK J.SAFRA (GIBRALTAR) LTD<br>SUITE 971<br>EUROPORT<br>PO BOX 542<br><br>GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46116 | $170,916.00* |
| 124 | BANK J.SAFRA (GIBRALTAR) LTD<br>SUITE 971<br>EUROPORT<br>PO BOX 542<br><br>GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46117 | $35,608.00* |
| 125 | BANK J.SAFRA (GIBRALTAR) LTD<br>SUITE 971<br>EUROPORT<br>PO BOX 542<br><br>GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46118 | $284,860.00* |
| 126 | BANK J.SAFRA (GIBRALTAR) LTD<br>SUITE 971<br>EUROPORT<br>PO BOX 542<br><br>GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46119 | $113,944.00* |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 127 | BANK J.SAFRA (GIBRALTAR) LTD SUITE 971 EUROPORT PO BOX 542 GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46120 | $142,430.00* |
| 128 | BANK J.SAFRA (GIBRALTAR) LTD SUITE 971 EUROPORT PO BOX 542 GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46121 | $142,430.00* |
| 129 | BANK SARASIN-RABO (ASIA) LIMITED BAER & KARRER LTD. ATTN: PETER HSU BRANDSCHENKESTRASSE 90 ZURICH, 8027 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 57505 | $1,822,132.06 |
| 130 | BANQUE DE GESTION EDMOND DE ROTHSCHILD - MONACO 2, AVENUE DE MONTE-CARLO B.P. 317 MONACO CEDEX, 98006 MONACO | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49760 | $87,409.00 |
| 131 | BANQUE POPULAIRE COTE D'AZUR SPORTING D'HIVER - PLACE DU CASINO MONTE-CARLO, 98000 MONACO | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/09/2009 | 37176 | $5,140,305.27 |
| 132 | BARNUEVO VIGIL DE QUINONES, MARIA PILAR ORENSE, 5 MADRID, 28020 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44436 | $28,302.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 133 | BARRINGTON SCHOLFIELD A/C BURT LOCKYER DEC'D WILL TRUST 11 + 12 KING SQUARE BRIDGEWATER SOMERSET, TA6 3AH UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40615 | $30,124.00 |
| 134 | BARRINGTON SCHOLFIELD A/C H.G. PEARCE DECEASED WILL TRUST 11 + 12 KING SQUARE BRIDGEWATER SOMERSET, TA6 3AH UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40616 | $15,062.00 |
| 135 | BARRIUSO LLANOS, CESAR PS. ZORRILLA 106, 7 D VALLADOLID, 47006 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44796 | Undetermined |
| 136 | BAYON SERRANO, JULIAN / MARGARITA PANIZO VEGA PLZA. AMERICA 7 3 B 33005 OVIEDO (ASTURIAS), SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44739 | Undetermined |
| 137 | BBVA (SUIZA) S.A. ATTN: IÑIGO BERASALUCE / DIRECTOR ZELTWEG 63 ZURICH, CH-8021 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51139 | $393,499.28 |
| 138 | BECKMANN, ELONORA ANNA VAN BURENLAAN 1 HAARLEM, 2012 SL NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 48782 | $49,528.50 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 139 | BERGES, LUIS CARRERAS AND VINUALES LOPEZ, ROSA MARIA MANILA, 58  NO. 8 BARCELONA, 08034 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49920 | $10,128.85 |
| 140 | BESNARD, M.E.A & BESNARD-SMITS, H.T.M FLORESSTRAAT 18 EINDHOVEN, 5631 DD NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47824 | $33,962.40 |
| 141 | BILFRANVE LIMITED WICKHAMS CAY I, ROADTOWN TORTOLA, VIRGIN ISLANDS (BRITISH) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/08/2009 | 10596 | $45,000.00 |
| 142 | BITKID B.V. A VAN WOENSEL SINCLAIR LEWISPLAATS 7F ROTTERDAM, 3068 EN NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52186 | $72,626.00 |
| 143 | BNP PARIBAS JER JR1133 BNP PARIBAS HOUSE, ANLEY STREET, ST HELIER JERSEY, JE2 3QE UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47744 | $100,000.00 |
| 144 | BNP PARIBAS JERSEY TRUST CORPORATION LIMITED JT991 BNP PARIBAS HOUSE, ANLEY STREET, ST HELIER JERSEY, JE2 3QE UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47774 | $150,000.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 145 | BNYMELLON SA/NV BRUSSELS BRANCS RUE MONTOYER 46 BRUSSELS, 1040 BELGIUM | | Lehman No Case Asserted/All Cases Asserted | 10/21/2009 | 43190 | $154.78 |
| 146 | BORGES, ERMINDA OLIVEIRA SANTOS LARGO DA FEIRA NOGUEIRA DO CRAVO, 3700-786 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41703 | $144,943.26 |
| 147 | BOSQUED BRINQUIS, MARIA BLANCA AVENIDA TENOR FLETA 57 ESC. DCHA 4 7 ZARAGOZA, 50008 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50919 | $21,704.68 |
| 148 | BROKER, MARTIN CHARLES 34 CROSS STREET BURNHAM-ON-SEA SOMERSET, TA8 1PF UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40617 | $52,717.00 |
| 149 | BUCKLES & BOWLS CORP. AKARA BLDG. 24 DE CASTRO STREET WICKHAMS CAY 1 ROAD TOWN TORTOLA, VIRGIN ISLANDS (BRITISH) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40470 | $42,729.00 |
| 150 | BVI, MERLICO WICKHAM'S CAY, ROAD TOWN TORTOLA, VIRGIN ISLANDS (BRITISH) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40476 | $199,402.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 151 | BYWORTH LTD.<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40570 | $70,000.00 |
| 152 | CALAFIORE, LILIANE EVELINE GREGOIRE<br>URB. EL COTO. CALLE EL CIERVO, 1<br>MIJAS-COSTA MALAGA, 29650<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47194 | $315,567.00 |
| 153 | CAPITAL AT WORK NV<br>ATTN: M. VAN CLEEMPOEL<br>KROONLAAN 153<br>BRUSSELS, B-1050<br>BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/20/2009 | 42644 | $28,302.00 |
| 154 | CAPITAL ONE INVESTMENT CORP<br>AVENIDA F BOYD<br>EOLIFICIO UNIVERSAL PISO 12<br>CINDAD DE PANAMA,<br>PANAMA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45294 | $106,117.50 |
| 155 | CARCASES, LEONARDO MARTINEZ<br>C/ MIRVENA 15 4 C<br>MADRID, 28024<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/14/2009 | 40206 | $15,916.76 |
| 156 | CARRILLO GARAU, PEDRO MIGUEL<br>TORT, 15-2 ACASA, 9 PUIG DE ROS<br>LLUCMAJOR, 07609<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50084 | $70,755.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 157 | CARSTEN GOMARD HOLDING APS<br>GEELSVEJ 1<br>HOLTE, DK-2840<br>DENMARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59035 | $36,543.95 |
| 158 | CASES GREGOIRE, FRANCISCA<br>URB. EL COTO, CALLE EL CIERVO 202 CAMPO-MIJAS<br>MALAGA, 29649<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45003 | $246,227.40 |
| 159 | CASTELA ABECASIS, MARIA RAQUEL FERREIRA<br>AV. ROMA, 38-7-ESQ<br>LISBOA, 1700-347<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45645 | $72,471.63 |
| 160 | CASTELLVI ZARCO, JUAN<br>C/ JAZMIN, 42 - 2 C<br>MADRID, 28033<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45578 | $208,364.90 |
| 161 | CASTELO BRANCO, MARIA GRACA C L P N M<br>TV ABARRACAMENTO PENICHE, 17<br>LISBOA, 1200-001<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45252 | $285,538.22 |
| 162 | CATARINO GALAMBA DE OLIVEIRA, RAUL<br>QTA PATINO, LT 82<br>ALCABIDECHE, 2645-143<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 56989 | $289,886.52 |
| 163 | CEMBORAIN, RAUL OSCAR YEBRA AND PILAR AURELIA GARCIA RUIZ<br>CL. DOCTOR ESQUERDO, 29 4 B<br>MADRID, 28028<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56478 | $84,906.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 164 | CHANDRA UNIVERSAL LIMITED C/O 20/F TUNG WAI COMMERCIAL BUILDING 109-111 GLOUCESTER ROAD WANCHAI, HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47613 | $147,203.04 |
| 165 | CHARLESWORTH, ROBERT NICHOLAS RALPH AND WENDY MAY CHARLESWORTH (JOINT A/C) 39 CLAY CLOSE, DILTON MARSH, WESTBURY WILTSHIRE, BA13 4DU UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35530 | $15,062.00 |
| 166 | CIVERIATI GAIME, MARTINA GIOVANNA BANCO BANIF - RAMBLA DELS DUCS DE PALMA DE MALLORCA 1 PALMA DE MALLORCA, 07003 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44795 | Undetermined |
| 167 | CODINA VALERI, JUAN LUIS / MONTSERRAT PUIG ALEGRE C/ MANDRI 8, 3 2 BARCELONA, 08022 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44769 | Undetermined |
| 168 | COF. Y HOSP. DE S. PEDRO Y S. BERNARDO ATTN: DIONISIO SASTRE ALONSO C/SANT BERNAT 1 PALMA DE MALLORCA, 07001 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51565 | Undetermined |
| 169 | COLE, FRANK KROMVENDREEF 52 SCHOTEN, B-2900 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/08/2009 | 37020 | $41,580.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 170 | COLTON, LTD<br>60 MARKET SQUARE PO BOX 364<br>BZ BELIZE CITY,<br>BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46771 | $169,684.75 |
| 171 | CONSTRUCCIONES J.PEREDA, S.L.<br>STREET MENENDEZ PELAYO, NO 17<br>LAREDO (CANTABRIA), 39770<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/13/2009 | 39784 | $419,220.00 |
| 172 | COOPERATIEVE RAIFFEISEN - BOERELEENBANK B.A<br>CROESELAAN 18/ P.O. BOX 17100<br>UTRECHT, 3500 HG<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56167 | $682,374.00 |
| 173 | COSCOLLA, MIRIAM BANO<br>TRANSFEROR: MAGDALENA PASCUAL, JOSE FRANCISCO<br>C/ SAMUEL ROS, NO 49-1 16<br>VALENCIA, 46023<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44777 | Undetermined |
| 174 | COSTA MARIO, ARMENIO<br>RUA ANTONIO JOSE DE ALMEIDA 15-17, 1 ANDAR<br>FUNCHAL<br>MADERIA, 9000-062<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51260 | $217,414.89 |
| 175 | COUNTRYWALK LTD<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER, NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45030 | $50,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 176 | COUNTRYWALK STATE LTD. MERRILL LYNCH BANK TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER, NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45033 | $37,000.00 |
| 177 | CRAIGIE, ALAN & RITA BEECH HILL DUNLAVIN CO. WICKLOW, IRELAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59011 | $170,400.00 |
| 178 | CREDIMO N.V. WEVERSSTRAAT 6-10 ASSE, B-1730 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55980 | $723,489.26 |
| 179 | CRESPO MOVELLAN, FRANCISCO ANTONIO / & MARIA ASUNCION GUTIERREZ GAMO C/ LACALLE 2 COLOMBRES, ASTURIAS, 33590 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44788 | Undetermined |
| 180 | CRIAMODA IMP EXP CONF LDA RUA S JOAO BAPTISTA 3418 PONTE GMR, 4805-309 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45729 | $72,471.63 |
| 181 | CUADRADO SALMERON, ALBERTO & FRANCISCO JOSE CL MARQUES DE COMILLAS, 13 7 E ESC. DCHA. ALMERIA, 04004 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50077 | $106,133.00 |

* - Indicates claim contains unliquidated and/or undetermined amounts

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 182 | CUELLAR FERNANDEZ, JESUS<br>TR. DEL CABANAL 5, BLQ. 1, ESC. 3, 3A<br>ALICANTE, 03016<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44832 | Undetermined |
| 183 | CUELLAR FERNANDEZ, MARIA DEL CARMEN<br>C/ MENDEZ NUNUEZ, 40, 4<br>ALICANTE, 03002<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44783 | Undetermined |
| 184 | CUNAT BALADER, ELENA<br>C/RUFINO BLANCO, 10 BAJO C<br>MADRID, 28028<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 48732 | $49,197.27 |
| 185 | CYU A/S<br>C/O PETER SVENDSEN<br>SKOVSHOVEDVEJ 40<br>CHARLOTTEN LUND, 2920<br>DENMARK | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41301 | $100,000.00 |
| 186 | DANSKE BANK<br>HOLMENS KANAL 2-12<br>COPENHAGEN K, DK-1092<br>DENMARK | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49997 | $71,335.65 |
| 187 | DE CRUZ SIMOES, NUNO CLAUDIO<br>RUA DUARTE LOB NO. 61<br>LISBOA, 1700-048<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 45809 | $231,909.21 |
| 188 | DE LA HUERTA ROJO, MARIA JOSE /<br>JAVIER TORRUBIA REQUENA<br>BANCO BANIF, S.A. - AV. OSCAR ESPLA 35<br>ALICANTE, 03007<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44762 | Undetermined |

## IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 189 | DE LANDALUCE, CARMELO VICENTE ARIZAGA ORTIZ<br>ESTHER PINEDA GANUZA<br>ESCALANTE NO. 21<br>SANTONA-CANTABRIA, 39.740<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/08/2009 | 37074 | $209,610.00 |
| 190 | DE LEER N. OP DELAAK ENLOF<br>MEVROUW H.A. ABELSMA<br>STEPEKOLK O 15<br>HELMOND, 5706 LA<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47828 | $14,151.00 |
| 191 | DE NORONHA DA SILVA DA CONCEICAO, FRANSICO JOSE<br>AV. MARCIANO BAPTISTA, N 26-54<br>CENTRO COMERCIAL CHEONG FOK, 8 ANDAR H-MACAU<br><br>CHINA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44074 | $89,864.82 |
| 192 | DE PINOL VILLORA, AIDA MARIA DOLORES<br>C/ JERUSALEN, 7-1.-A<br>CACERES, 10005<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/20/2009 | 42363 | $8,681.86 |
| 193 | DECORATRES, S.L.<br>POL. IND. MESES - RONDA NORTE S/N<br>XATIVA, 46800<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45181 | $21,704.68 |
| 194 | DEL COLLELL LAPORTA CASADEMONT, MARIA<br>C/ COLLSEROLA 23 A 2<br>08035 BARCELONA,<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44745 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 195 | DEL ROSARIO BEOBIDE, MARIA<br>ALAMEDA SAN MAMES #4 1ERO<br>BILBAO, 48970<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47397 | $213,645.00* |
| 196 | DESERT ORCHID LTD<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40559 | $300,000.00 |
| 197 | DHAINAUT, FLORENCE<br>AYACUCHO 2151<br>CAPITAL FEDERAL,<br>ARGENTINA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/07/2009 | 36800 | $36,000.00 |
| 198 | DIAS DA CUNHA, INGRID EVA WENDE<br>TRAVESSA LENGUA DA POVOA, 1-5O ESQ<br>LISBOA, 1250-136<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56030 | $57,977.30 |
| 199 | DIEZ EZCURRA, CLARA<br>CARLOS VII, 7 - 4 0 IZDA<br>PORTUGALETE - VIZCAYA, 48920<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/13/2009 | 37672 | $49,528.50 |
| 200 | DOMINGUES GRADE MENDES, JORGE<br>AV. FORCAS ARMADAS, 133 1 ESQ<br>BL D QTA MIL FLORES<br>LISBOA, 1600-081<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/20/2009 | 42359 | $253,650.70 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 201 | DOMINGUES MATIAS, MARIO MIGUEL RUA D AFONSO HENRIQUES 14 SANTA CRUZ SILVEIRA, 2560-565 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46796 | $53,629.01 |
| 202 | DOMINGUEZ LOPEZ, JOSE MARIA AVENIDA TENOR FLETA NO. 57A, 6 A5 ZARAGOZA, 50008 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50910 | $17,363.73 |
| 203 | DOS SANTOS, ANDRE MARQUES AV. ANTONIO AUGUSTO AGUIAR 29-BLOCO C- 5 ""0"" DTO FTE LISBOA, 1050-251 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/20/2009 | 42649 | $72,471.63 |
| 204 | DOTSON INVESTMENTS LTD BES SFE-ES-AV MIGUEL DANTAS - EDIFICIO STATUS VALENCA DO MINHO, 4930-678 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47035 | $237,304.48 |
| 205 | DRAYCOTT INVESTMENTS LIMITED INTERNATIONAL TRUST BUILDING WICKHAMS CAY ROAD TOWN TORTOLA, VIRGIN ISLANDS (BRITISH) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45122 | $392,757.00 |
| 206 | DUARTE SILVA, SONIA CRISTINA - ENG RUA ADELINO AMARO COSTA 33 HAB 31 BAGUIM DO MONTE, 4435-829 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44408 | $24,640.35 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 207 | EDMUNDO LANDER, JESUS<br>AVE. CIRCUNVALACION DEL SOL<br>CONJUNTO RESIDENCIA LA PANCHITA<br>QTA #1 URB. STA. PAULA<br>CARACAS, 1061<br>VENEZUELA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 48634 | $91,155.00* |
| 208 | EGUINOA MASDEU, ENRIQUE<br>C/ BEGONIA 4, 4 D, SOTO DE LA MORALEJA<br>ALCOBENDAS, MADRID, 28109<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44802 | Undetermined |
| 209 | EID, NADA LOUIS<br>MACARON NEE LOUIS EID, HODA, LOUIS<br>LOUIS EID, ROSE MAY, LOUIS<br>BNP PARIBAS WEALTH MANAGEMENT<br>ATTN: DAVID HOWARD<br>PARIS, 75008<br>FRANCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50551 | $290,507.00 |
| 210 | ELOSUA ROJO, ANDRES ELOY<br>LIBRA, 8<br>MADRID, 28023<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44434 | $355,190.10 |
| 211 | EMILIO NEVES BARBOSA, LUCINDO<br>RUA SOARES DOS REIS, 1009 4O ESQ QUINTA<br>CORGES 1<br>VILA NOVA GAIA, 4430-270<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46954 | $36,235.81 |
| 212 | EMMANUEL, DELOGIE<br>MOERSTRAAT 27<br>PULDERBOS, 2242<br>BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16123 | $21,900.00 |

## IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 213 | EMMAUS, VZW EDGARDTINELLAAM 1C MECHELEN, 2800 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16122 | $292,000.00 |
| 214 | ENNIA CARIBE LEVEN N.V. ATTN: AFDELING INVESTMENTS J.B. GORSIRAWEG # 6 CURACAO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44181 | $1,456,376.42 |
| 215 | EPPINK, A.B. DR. V. HAERINGENPLANTSOEN 33 NIEUW VENNEP, 2151 AS NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52666 | $8,550.00 |
| 216 | ERA LIMITED 60 MARKET SQUARE PO BOX 364 BELIZE CITY, BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56089 | $57,977.30 |
| 217 | ESCOLASTICO NAVARRO GONZALEZ SANT RAFEL, 50-BJS PALMA DE MALLORCA, 07008 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50082 | $212,265.00 |
| 218 | ESTUDIO DE INVERSIONES DOS, S.L. ATTN: MR. ADOLFO BLANCO SARTO C/ FRANCISCO DE VITORIA 8 PR 50008 ZARAGOZA, SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44757 | Undetermined |
| 219 | EUGENIO BLANQUER FONQUERNE CALLE SEPULVEDA 80 BARCELONA, 08015 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45283 | $183,963.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 220 | EUROPA FIDELITY S.A. C/ ITUZAINGO NO 1393 ESC 401 MONTEVIDEO, 11000 URUGUAY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50050 | $108,707.44 |
| 221 | EZQUERRA SAMANIEGO, AURELIANO SAN FRANCISCO DE ASIS 1180 DPTO. 622 LAS CONDES SANTIAGO, CHILE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 48626 | $142,430.00* |
| 222 | FALCONE, GIUSEPPE ZABALA 1542 PISO 7 MONTEVIDEO, URUGUAY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47409 | $142,430.00 |
| 223 | FAMILIA TOMAZ, S.A. AV. PRAIA VITORIA 48 - 1 - ESQ. LISBOA, 1050-184 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47034 | $86,818.71 |
| 224 | FARYN HOLDING LTD AV. PRAIA VITORIA 48 - 1 - ESQ. LISBOA, 1050-184 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47033 | $179,425.34 |
| 225 | FERNANDES, LEONOR ROSADO RUA DO BORJA 133B 30B LISBOA, 1350-046 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/05/2009 | 36199 | $72,500.00 |
| 226 | FERNANDEZ CANOVAS, EMILIO & MARIA DE GADOR RODRIGUEZ ALMAGRO C/ LAGO COMO 2, 1 PALMA DE MALLORCA, 07013 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44776 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 227 | FERNANDEZ FERNANDEZ, ELENA<br>C/ SAN IGNACIO 2 4 A<br>VALLADOLID, 47003<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44821 | Undetermined |
| 228 | FERNANDO FLORES RIBEIRO SPINOLA<br>AV CINCO OUTUBRO 81 6 DTO<br>LISBOA, 1050-050<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45724 | $108,707.44 |
| 229 | FERNANDO LINO MARQUES, FRANCISCO<br>RUA XAVIER ARAUJO, JARDIM LARANJEIRAS, 11<br>NUCLEO 1 - 5 B<br>1600-226 LISBOA,<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47020 | $37,685.25 |
| 230 | FERNANDO, MARIA LUISA MARTINS<br>RUA NICOLAU CHANTERENNE, 282 R/C<br>COIMBRA, 3000-292<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41716 | $72,471.63 |
| 231 | FORBES, JACQUELINE MARGARET<br>188 ABINGDON ROAD<br>OXFORD, OX1 4RA<br>UNITED KINGDOM | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35524 | $15,062.00 |
| 232 | FORLER, CHANTAL CATHERINE<br>2701 EVELINA<br>HIRANANDANI ESTATE<br>THANE WEST, 400607<br>INDIA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43231 | $106,125.00 |
| 233 | FRAEFEL, RUHT<br>26 RUMANIA STREET<br>BENIDORM (ALICANTE), 03503<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 42120 | $70,750.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 234 | FRANCINE GAIME, ODETTE<br>C/ BONAIRE 24 4 B<br>PALMA DE MALLORCA (BALEARES), 07012<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44751 | Undetermined |
| 235 | FREITAS, LUIS FILIPE VASCONCELOS MOTA<br>RUA PROF. MOTA PIUTO, 248 10 ""0"" DTO<br>PORTO, 4100-354<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41706 | $86,962.96 |
| 236 | FUNDACIO PRIVADA AMADEU ALTIMIRA<br>ATTN: MR. AMADEO ALTIMIRA TAPIAS<br>PLAZA DE LA VILA 5 BAJOS<br>SANTA MARIA DE PALAUTORDERAO, 08460<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44747 | Undetermined |
| 237 | FUNDACION ANTONIA MAGRANER<br>ATTN: JUAN SERVERA TERRASA<br>C/ SEMINARIO 4<br>PALMA DE MALLORCA, 07001<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44828 | Undetermined |
| 238 | FUNDACION BARCELO<br>ATTN: MR. GABRIEL BARCELO OLIVER<br>C/ SAN JAIME, 4<br>PALMA DE MALLORCA (BALEARES), 07014<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44746 | Undetermined |
| 239 | FUNDACION ROTGER VILLALONGA<br>P CALA MURTA S/N<br>FORMENTOR, 07004<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50086 | $382,077.00 |
| 240 | GARCIA SALAS, JULIO /<br>& MARIA AMPARO GARCIA FERNANDEZ<br>C/ CLAUDIO ALVARGONZALEZ, 6 ENTRE<br>ENTRESUELO<br>GIJON, 33201<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44814 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 241 | GARCIA, JOSE LUIS ALONSO<br>CL. VILLARROEL, 177<br>BARCELONA, 08036<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55064 | $76,415.00 |
| 242 | GELBER, DAVID<br>8 CLORANE GARDENS<br>LONDON, NW3 7PR<br>UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/05/2009 | 36209 | $142,440.00 |
| 243 | GENEVIEVE, DEVERD<br>CARRER IMMANUEL KANT 4<br>PALAU - SAVERDERA (GIRONA), 17495<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47323 | $70,755.00 |
| 244 | GENIO SA<br>60 MARKET SQUARE<br>PO BOX 364<br>BELIZE CITY,<br>BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46338 | $115,954.61 |
| 245 | GESTION PARTICIPATIVA XXI, S.L.<br>ESCALMENDI, 3<br>VITORIA, 01013<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50526 | $73,585.20 |
| 246 | GIAMLUCA, MUSCO<br>VIA GIUSEPPE CUBONI 3<br>ROME, 00196<br>ITALY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40471 | $142,400.00 |
| 247 | GM SIPP A/C MRS. E.R. ASHBURNER, THE<br>C/O GUINNESS MAHON TRUST CORPORATION LTD.<br>3 CASTLEFIELD COURT, CHURCH STREET<br>REIGATE<br>SURREY, RH2 0AH<br>UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35521 | $37,655.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 248 | GOMES, MANUEL<br>NO 54 SITIO DA FONTE FRADE<br>JARDIM DA SERRA<br>ESTREITO DE CAMARA DE LOBOS<br>MADEIRA,<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51254 | $4,841,104.84 |
| 249 | GOMEZ PEREIRA SEOANE, ALVARO<br>J BENITO BLANCO 823/901<br>MONTEVIEDO, CP 11300<br>URUGUAY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 51089 | $92,579.50 |
| 250 | GONZALES GIL, MARIA CRISTINA<br>C/ HILARION ESLAVA 28 4C<br>MADRID, 28015<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44825 | Undetermined |
| 251 | GONZALO PEREZ DE GUZMAN SAN ROMAN<br>CL. BETIS 1, 4-C<br>SEVILLE, 41010<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50562 | $86,818.71 |
| 252 | GORMAN, WINIFRED MARY<br>28 NUTLEY ROAD<br>DUBLIN 4,<br>IRELAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59025 | $142,000.00 |
| 253 | GRABNER, HUBERT<br>FASANGASSE 13<br>ACHAU, 248N<br>AUSTRIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47233 | $35,450.00 |
| 254 | GRACIA ESTEVEZ, ROBERT<br>VIA HISPANIDAD 65, D<br>50012 ZARAGOZA,<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46728 | $28,939.56 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 255 | GRAVEN B.V. A.J.A. 'S-GRAVENDIJK KROMVELD 5 WOUW, 4724 EZ NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52412 | $29,050.00 |
| 256 | GRAY, THERESA CONSTANCE FLAT 5, ST. CHAD'S COURT ST. CHAD'S ROAD HEADINGLY YORKS, LS16 5QX UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35529 | $15,062.00 |
| 257 | GREGOIRE, MARIA CRISTINA CASES PASEO MARITIMO, 17. EDIFICIO LIDO 40A FUENGIROLA MALAGA, 29640 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47195 | $104,717.00 |
| 258 | GROB, MICHAEL DREYFUS SOHNE & CO. AG, BANQUIERS AESCHENVORSTADT 16 BASEL, CH-4002 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/28/2009 | 35099 | $141,850.00 |
| 259 | HAAS, R.G.A QUIRINUSSTRASSE 9A KEVELAER TWISTEDEN, 47624 GERMANY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47829 | $141,510.00 |
| 260 | HALEBY, HENRY MANZANO CURICO 18 OFICINA 501 SANTIAGO, CHILE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/06/2009 | 36737 | $200,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 261 | HANNIBAL LTD. MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40555 | $50,000.00 |
| 262 | HASBO INTERNATIONAL, S.A. ED. ARANGO-ORILLAC 2 CALLE S4 ESTE PANAMA, PANAMA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50049 | $205,819.43 |
| 263 | HASEGAWA, ARATA 9-25-109 EIRAKUDAI-2 KASIWA-CHIBA, CP 2770086 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40457 | $14,469.78 |
| 264 | HEINZ-JOACHIN, ELBE HANS-BOHM-ZEILE 32 BERLIN, 14165 GERMANY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 24466 | $56,744.00 |
| 265 | HONISCH, BRIGITTE VELMER STRASSE 93 HIMBERG, 2325 AUSTRIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47238 | $35,450.00 |
| 266 | HSBC BANK (URUGUAY) SA RINCON 422 PLANTA BAJA MONTEVIDEO, URUGUAY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/20/2009 | 42674 | Undetermined |
| 267 | HSBC BANK MALTA PLC 233 REPUBLIC STREET VALLETTA, VLT 1116 MALTA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49794 | $180,352.70 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 268 | HSBC PRIVATE BANK (MONACO) S.A. ATTN: GAELLE MIGANI, HEAD OF SECURITIES DEPARTMENT 17 AVENUE D'OSTENDE MONACO, 98000 MONACO | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56650 | Undetermined |
| 269 | IBANEZ, JOAN MARIA VINAS AV. POMPEU FABRA, NO 12 MONTBLANC-TARRAGONA, 43400 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/25/2009 | 35003 | $42,453.00 |
| 270 | ICART FRANQUESA, MARIA TERESA ALBERTO BONET LLOVET CL. PROVENZA, 244 ESC. A 2-1 BARCELONA, 08008 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56059 | $75,000.00 |
| 271 | IGNACIO SABATER FERNANDEZ, DAVID C/ MAESTRO CABELLERO 72; PISO 3 03009 ALICANTE, SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44752 | Undetermined |
| 272 | ILLURI, SRIKANT 6511 NELLURHALLI SIDDAPURA ROAD BANGALORE, 66 INDIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/09/2009 | 37276 | $17,092.80 |
| 273 | INDARTE, RAFAEL ANDIVERT EUROPA, 16 ATICO 2 BARCELONA, 08028 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41480 | $15,916.76 |
| 274 | ING LUXEMBOURG 52, ROUTE D'ESCH , L-2965 LUXEMBOURG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44142 | $21,380.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 275 | INTERNATIONAL DOMESTIC BALANCED FUND 7-9 KIFISIAS AV. AND 2 NEAPOLEOS STR. MAROUSI ATHENS, 15123 GREECE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51600 | $212,265.00 |
| 276 | INVENCIONES MEDICO SANITARIAS, S.L. ATTENTION: MS. PATRICIA ELIZABETH USON JAEGER C/O JOAQUIN MARIA LOPEZ, 44 MADRID, 28015 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46994 | Undetermined |
| 277 | ISABEL SOARES A. LINO MARQUES, MARIA RUA XAXIER ARAUJO, JARDIM DAS LARANJEIRAS NUCLEO 4 - 5 B LISBOA, 1600-226 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47018 | $73,921.06 |
| 278 | ISLE OF ARRAN LTD MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40556 | $300,000.00 |
| 279 | JACKAL LTD MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40557 | $300,000.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 280 | JAEGER JORISSEN, WALTRAUT C/ DE LA COMUNIDAD CANARIA 7 1 2 B BOADILLA DEL MONTE, MADRID, 28660 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44797 | Undetermined |
| 281 | JAMES HAY PENSIONS A/C R.G.V. BRIDGE-SIPP 24444 10 LIBERTY WALK ST. ALBANS HERTS., AL1 5PN UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40687 | $30,124.00 |
| 282 | JAQUILLARD, FRANCOISE HOTEL BYBLOS, VILLA 7 MIJAS COSTA, MALAGA, 29650 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45411 | $283,020.00 |
| 283 | JIMENEZ CASADO, MARIA DEL CARMEN C/ ONA, 183 - 5 2 MADRID, 28050 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41120 | $211,258.86 |
| 284 | JIMENEZ CASADO, SANTIAGO C/ MALDONADO, 56 - 4 C MADRID, 28006 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41121 | $138,909.94 |
| 285 | JOAQUIM FRANCISCO SALGUEIRO LOPES SILVA VIA JOSE REGIO: 784 VILAR DO PINHEIRO, 4485-860 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50489 | $144,943.26 |
| 286 | JONES, GARTH BRIAN P.O. BOX 11441 GPO HONG KONG, HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 42977 | $100,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 287 | JOVER SANSO, ANA MARIA<br>ATTN: FERNANDO MARTINEZ JOVER<br>GENERAL DIAZ PORLIER NO. 78, 3 ""0"" A<br>MADRID, 28006<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41322 | $134,420.00 |
| 288 | JOWITT, PETER JOHN RUSSELL<br>27 WOODFIELD GARDENS<br>BELMONT<br>HEREFORD, HR2 9RN<br>UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35527 | $15,062.00 |
| 289 | KATABAS LTD<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40571 | $150,000.00 |
| 290 | KERFAX INTERNATIONAL INC<br>AV. PRAIA VITORIA 48-1-ESQ.<br>LISBOA, 1050-184<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46913 | $1,481,706.00 |
| 291 | KIND, RUDOLF<br>PERLASGASSE 20<br>BIEDERMANNSDORF, 2362<br>AUSTRIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47231 | $28,360.00 |
| 292 | KIRCHMAYR, ALFRED<br>DORNBACHERSTRASSE 107/12<br>VIENNA, 1170<br>AUSTRIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44245 | $10,017.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 293 | KLOOSTERGEMEENSCHAP ZUSTERS ST. VINCENTIUS GYZEGEM PACHTHOFSTRAAT 1 GYZEGEM, 9308 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16110 | $730,000.00 |
| 294 | KOLYMA LTD MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN LTD. 4TH FLOOR HARBOUR CENTER, NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45031 | $50,000.00 |
| 295 | KOOLE, A. ZUIDDIJK 2 HELLEVOETSLUIS, 3221 LJ NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52410 | $29,050.00 |
| 296 | KOOLHAAS, B.H., DE HEER EN/OF MEVROUW J.M.E. KOOLHAAS-GOTTGENS OUDE RETIESBAAN 12 2360 OUD TURNHOUT, BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47599 | $106,132.50 |
| 297 | KORES LTD. PO BOX 307 THIRD FLOOR EXCH. HOUSE 54-58 ATHOL STREET DOUGLAS ISLE OF MAN, IM99 2 BE UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47826 | $35,377.50 |
| 298 | KOUROU, DIMITRA 8 BIZANIOU STR ATHENS, 15237 GREECE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46420 | $849,060.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 299 | KRAGT, Y.I.<br>RUSSELLAAN 5<br>SITTARD, 6132 AS<br>NETHERLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47825 | $33,962.40 |
| 300 | KRUIS, R.<br>KOEKOEKLAAN 16<br>BILHOVEN, 3722 AN<br>NETHERLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 54551 | $5,660.40 |
| 301 | LAGO AZUL LTD<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40552 | $48,000.00 |
| 302 | LAMBROPOULOS, CONSTANTIN & ODIER,<br>LOMBARD<br>11 RUE DE LA CORRATERIE<br>GENEVA, 1204<br>SWITZERLAND | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50519 | $141,900.00 |
| 303 | LANASPA PEREZ, MARIA JOSEFA<br>C/ BISBE CABANELLES 14<br>PALMA DE MALLORCA, 07005<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44810 | Undetermined |
| 304 | LANDETA, ANGEL BENITO DIAZ<br>C/ WENCESLAO LOPEZ ALBO 12<br>LAREDO, CANTABRIA, 39770<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56457 | $205,016.15 |
| 305 | LANZON INVESTMENTS S.A.<br>AV. PRAIA VITORIA 48-1-ESQ<br>LISBOA, 1050-184<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47169 | $955,005.82 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 306 | LECUE SALCEDO, JOSE<br>BARO CASERIO LARRAZABAL, 3-1 DRCHA<br>BILBAO - VIZCAYA, 48007<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55068 | $25,471.80 |
| 307 | LEIJENAAR ADVIES B.V<br>WILHELM LEUSCHNER STR. 75<br>PAPENBURG, 26871<br>GERMANY | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52092 | $1,425.00 |
| 308 | LEISSE, FRITZ<br>HUETTEBRAUCK 13<br>WINTERBERG, 59955<br>GERMANY | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/05/2009 | 36479 | $21,354.00 |
| 309 | LEISSE, JOHANNA<br>GOETHE STRASSE 16<br>WINTERBERG, 59955<br>GERMANY | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/05/2009 | 36481 | $42,708.00 |
| 310 | LIN, YING-YING<br>60 HAVELOCK ROAD, TOWER A, #03-01<br>RIVER PLACE, 169658<br>SINGAPORE | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 54837 | $569,720.00 |
| 311 | LINUESA SANCHEZ, ANDRES<br>MA DOLORES CATALAN SANAHUJA<br>CAMPRODON, 15-17 1-1<br>SANTA COLOMA GRAMANET<br>BARCELONA, 08922<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/20/2009 | 42390 | $36,174.46 |
| 312 | LLOYDS TSB BANK PLC(GENEVA BRANCH), ON BEHALF OF:<br>MR. NITIN JAMNADAS CHAD &/OR MRS. SHOBHA NITIN CHAD<br>PO BOX 251<br>OM-MUSCAT,<br>OMAN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55503 | $146,974.87* |

* - Indicates claim contains unliquidated and/or undetermined amounts

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 313 | LLOYDS TSB BANK PLC(GENEVA BRANCH), ON BEHALF OF: DR.KRISHNA GILL &/OR DR.BHAGWANT SINGH GILL P.O. BOX 6296 AE-SHARJAH, UNITED ARAB EMIRATES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55504 | $146,974.87* |
| 314 | LLOYDS TSB BANK PLC(GENEVA BRANCH), ON BEHALF OF: RSS HOLDINGS LIMITED C/O LLOYDS TSB BANK PLC ATTN:CORPORATE ACTIONS PLACE BEL-AIR 1 1211 GENEVA 11, SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55505 | $146,974.87* |
| 315 | LOMBERG, A.H. KAYA PEPERMUNT 10 CURACAO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/13/2009 | 39754 | $356,075.00 |
| 316 | LOPES CUNHA, FRANCISCO PO BOX 9623 CINDA PARK, 1463 SOUTH AFRICA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51253 | $311,628.01 |
| 317 | LOPEZ DELGADO, MARIA DE LOS ANGELES & CUSTODIA & MAXIMILIANO PZA. PRINCIPES DE ESPANA 1 DCH. 1 A ALCORCON, MADRID, 28924 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44798 | Undetermined |
| 318 | LOPEZ PESTONIT, CONSUELO CM LAS ARENAS 610 SOMIO 33203 GIJON (ASTURIAS), SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44738 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 319 | LOUREIRO, LUIS AMORIM<br>AVENIDA BRASIL 605-20<br>PORTO, 4150-154<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41699 | $43,482.98 |
| 320 | LOYAMT, OLIVIER<br>BP 4524 PAPEETE<br>TAHITI, 98713<br>FRENCH POLYNESIA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40473 | $42,729.00 |
| 321 | LUIS MANUEL PEREIRA FIGUEIREDO<br>RUA PINTOR SULIO RESENDE 45<br>GONDOMAR, 4420<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45727 | $85,516.52 |
| 322 | M. VAN BROUWERSHAVEN HOLDING B.V.<br>M. VAN BROUWERSHAVEN<br>NORENBURG 49<br>S-GRAVENHAGE, 2591 AJ<br>NETHERLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52407 | $14,525.00 |
| 323 | MADOLINA LTD<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD<br>4TH FLOOR HARBOUR CENTER, NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45029 | $100,000.00 |
| 324 | MAISON SERVICES LTD<br>23 PORTLAND HOUSE<br>GLACIS ROAD<br><br>GIBRALTAR | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45286 | $52,179.57 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 325 | MANNINO, STEPHANE<br>LES TERRASSES DU PORT<br>2 AVENUE DES LIGURES<br>MONACO, 98000<br>FRANCE | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40472 | $28,486.00 |
| 326 | MANUEL CARMONA HERRERO, LUIS<br>C/O CHIMBO 10<br>MADRID, 28025<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46993 | Undetermined |
| 327 | MANUEL HENRIQUES JORGE FERREIRA,<br>ANTONIO<br>R. VIANA DA MOTA, 32<br>LISBOA, 1700-367<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47019 | $36,235.81 |
| 328 | MANUEL SANTOS MUSTIELES, JUAN /<br>MARIA DEL ROSARIO MORALES ALFEREZ<br>C/ CABEZA LIJAR 6 4 B<br>28023 MADRID,<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44756 | Undetermined |
| 329 | MARCHARD, ALFRED<br>SCHANZGRABEN 2<br>MUNCHENDORF, 2482<br>AUSTRIA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47237 | $38,286.00 |
| 330 | MARIA ALEXANDRA C G SILVA FEIST<br>RUA CIDADE DE VISEU, NO. 67<br>PAREDE, 2775-393<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41355 | $86,965.96 |
| 331 | MARQUES DOS SANTOS, LUIS<br>RUA VIRGILIO CORREIA, 49-8<br>LISBOA, 1600-222<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47021 | $289,886.52 |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 332 | MARTINEZ, ENRIQUE VILLAGRASA<br>SINIA MORERA, 10 1 1A<br>SITGES (BARCELONA), 08870<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41489 | $47,750.29 |
| 333 | MARTINS, MARCELINO AUGUSTO<br>RUA DO MERCADO N 7<br>MIRANDO DO DOURO, 5210-210<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49955 | $231,909.21 |
| 334 | MASCOT ASSOCIATES LTD<br>60 MARKET SQUARE<br>PO BOX 364<br>BZ,<br>BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49583 | $43,482.98 |
| 335 | MATEOS ESCUDERO, MARIA AGUEDA<br>AVDA JOSE MESA Y LOPEZ 15, 5 E<br>E-35006 LAS PALMAS DE GRAN CANARIA<br>CANARY ISLANDS,<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46683 | $283,020.00 |
| 336 | MAYOL, JUAN PIZA<br>CTRA D' ESPORLES 26 BJS<br>PALMA DE MALLORCA, 07010<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50085 | $70,755.00 |
| 337 | MCALPINE, MELVYN DAVIDSON<br>PO BOX 27<br>CRESTA, 2118<br>SOUTH AFRICA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43264 | $1,087,074.44 |
| 338 | MEI, HUANG FU/LIN YU CHIN<br>C/O CHEN TAH SPECIAL METAL CO<br>NO 134 SEC 1 KWANG FU RD<br>SAN CHUNG CITY<br>TAIPEI,<br>TAIWAN, PROVINCE OF CHINA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/06/2009 | 36669 | $172,672.66* |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 339 | MEJAG LTD. MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40566 | $100,000.00 |
| 340 | MENDIA MORENO, JAIME & CONDE GAZTANAGA, MARIA TERESA CAMPO VOLANTIN, 33 - PISO 3 BILBAO-VIZCAYA, 48007 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55069 | $29,717.10 |
| 341 | MERCEDES TIELAS L.M. ESPINEIRA, MARIA PRACA ANTONIO SARDINHA, 7-2 DTO LISBOA, 1170-028 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 42960 | $144,943.26 |
| 342 | MERCHANT INVESTORS ASSURANCE CO. LTD A/C IAN WRIGHT ANNUITY FUND ST. BARTHOLOMEW'S HOUSE LEWINS MEAD BRISTOL, BS1 2NH UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40688 | $30,124.00 |
| 343 | MERINO MARTINEZ, OSCAR C/ LABRADORES 13 BIS 5 IZ LOGRONO, 26005 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44813 | Undetermined |
| 344 | MESIA FINANCE SA 60 MARKET SQAURE P.O. BOX 364 BZ BELIZE CITY, BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 57277 | $27,539.22 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 345 | MESSRS. BAKER TILLY A/C LS REGAL HOUSE QUEENSWAY PO BOX 191 GIBRALTAR | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40614 | $37,655.00 |
| 346 | MEVALU N.V. C/O ORANGEFILED TRUST (ANTILLES) N.V. KAYA W.F.G. MENSING 14 CURA€AO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44500 | $192,280.50 |
| 347 | MIGUEL-MOTTA ECHEANDIA, MARIA DEL PILAR ALBERTO ALCOCER 19 2 OCHO MADRID, 28036 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44327 | $108,523.38 |
| 348 | MILOS, ADRIANO CH. DU MONT DE FOURCHES, 13A ST-PREX, 1162 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/14/2009 | 40258 | $106,132.50 |
| 349 | MM.2200.CO.LTD. MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40568 | $50,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 350 | MM.2411.CO.LTD MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40554 | $100,000.00 |
| 351 | MODJOUD, SEYED C/O RELLERMEYER PARTNER POSTFACH 10 24 42 DUSSELDORF, 40227 GERMANY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44502 | $2,128,950.00 |
| 352 | MONTEIRO, ANTONIO GONCALVES AV. MIGUEL BOMBARDA, 36-6 A B LISBOA, 1069-049 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44085 | $217,414.89 |
| 353 | MORALES CUENCA, MARIA ESTRELLA ANTONIO FERNANDEZ RANEA CL. FELIX LOMAS, 12 VELEZ MALAGA, 29700 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 50867 | $84,906.00 |
| 354 | MOURAO, ANDRE MARIA NICOLAU ALMEIDA OLIVEIRA RUA DOMINGOS SEQUEIRA 262-4 ""0"" DTO PORTO, 4050-230 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41702 | $36,235.81 |
| 355 | MOURAO, JULIA CASSILDA PINTO CARDOSO OLIVEI R. JOSE FALCAO 110-1 ""0"" PORTO, 4050-315 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41701 | $108,707.44 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 356 | MR. JEAN BAPTISTE ESTA OR L'EMIRA CLAUDE CHEHAB SP. ESTA ESTA BUILDING, NEAR MONASTER MAR TAKLA WADI CHAHROUR, LEBANON | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40474 | $142,430.00 |
| 357 | MULLER, MANFRED HANS JULIO DAVILA, 20 MADRID, 28033 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41362 | $13,022.80 |
| 358 | MUTUALIDAD DE PREVISION SOCIAL EMPLEADOS BANZAJA, A PRIMA FIJA C/BELGICA 8 BAJO 1 DCHA VALENCIA, 46021 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45183 | $434,093.56 |
| 359 | MUÑOZ GARCIA, PEDRO AV GRAN VIA CORTS CATALANES 392 ATICO BARCELONA, 08015 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46395 | $42,453.00 |
| 360 | N7 AZALEA LTD. MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40565 | $50,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 361 | N7 CHULI LTD.<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40564 | $45,000.00 |
| 362 | N7 LEIRE LTD.<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40567 | $90,000.00 |
| 363 | N7 SERRATO LTD.<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40572 | $25,000.00 |
| 364 | NAAMAN, YAIR<br>1, A. BECKER ST.<br>TEL-AVIV, 69643<br>ISRAEL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47723 | $14,243.00 |
| 365 | NADEL ENTERPRISES, LTD<br>AV. PRAIA VITORIA 48-1-ESQ.<br>LISBOA, 1050-184<br>PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46912 | $196,789.08 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 366 | NARCISO SANTOS, VASCO<br>AV. JOAO XXI, 20-4 DTO<br>LISBOA, 1000-302<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 42957 | $144,943.26 |
| 367 | NEDERVEEN, J.<br>LEKDREEF 9<br>2931 AH KRIMPEN AAN DE LEK,<br>NETHERLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52176 | $29,050.00 |
| 368 | NINO GIL, RICARDO<br>UR. RESIDENCIAL PARAISO 6, 5 A<br>ZARAGOZA, 50008<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44775 | Undetermined |
| 369 | NOBREGA THEMUDO GALLEGO, TIAGO MANUEL<br>AV. MIGUEL BOMBARDA NO 36 4 A<br>LISBOA, 1069-049<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 56993 | $579,773.03 |
| 370 | NOGUERA, GARCIA-ALEGRA & JAVIER, FRANCISCO<br>DALIA 65<br>ALCOBENDAS, 28100<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/14/2009 | 40273 | $63,679.50 |
| 371 | NORBERTO VANDROUX ZANELLI<br>AVE. ROMULO GALLEGOS, EDIF.<br>LAS AMERICAS<br>CARACAS, 1071<br>VENEZUELA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 08/27/2009 | 9528 | $84,000.00 |
| 372 | NUEZ MIGUEL MOTTA, EDUARDO<br>ALBERTO ALCOCER 19<br>MADRID, 28036<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44334 | $86,818.71 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 373 | NUNES SALES, MIGUEL<br>AV. PACIFICO, LOTE 10501, APTO 1304<br>LISBOA, 1990-291<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46651 | $55,078.44 |
| 374 | OLAYA GONZALEZ, FRANK<br>CALLE BLASCO DE GARAY 46<br>PRIMERO 5<br>MADRID, 28015<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47396 | $71,215.00* |
| 375 | OLIVEIRA, FRANCISCO COSTA<br>PRACA BOM SUCESSO 127A 131A ESC. 210<br>EDIFICIO PENINSULA<br>PORTO, 4150-146<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41711 | $275,392.19 |
| 376 | OLIVEIRA, LUISA MARIA FARIA LEAL<br>APARTADO 528 - MONTE ESTORIL<br>ESTORIL, 2765<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44083 | $57,977.30 |
| 377 | PALMS SPRINGS UT, THE<br>18 RUE DE CONTAMINES<br>GENEVA, 1206<br>SWITZERLAND | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45034 | $152,000.00 |
| 378 | PARLAVA SL<br>BAIXADA DE MOLI, ED MOLI II, N 15 1<br>ANDORRA LA VELLA, AD500<br>ANDORRA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50051 | $72,471.63 |
| 379 | PARMIDA LTD<br>60 MARKET SQUARE PO BOX 364<br>BZ BELIZE CITY,<br>BELIZE | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51297 | $72,471.63 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 380 | PENSIOENFONDS J.L. HEEMELS B.V. C/O ORANGEFIELD TRUST (ANTILLES) N.V. KAYA W.F.G. MENSING 14 CURACAO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47624 | $132,459.90 |
| 381 | PEREZ GARCIA, BLAS C/AGUERE 13 - 8 A EDF TORRE CRISTAL II S/C DE TENERIFE, 38005 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 57034 | $21,704.68 |
| 382 | PEREZ, MANUEL MATEO CALLE HERMOISMO 34 PRINCIPAL ZARAGOZA, 50002 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51186 | $28,939.56 |
| 383 | PERGAMINO LTD MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD 4TH FLOOR HARBOUR CENTER, NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45032 | $100,000.00 |
| 384 | PERVERSI, PABLO E. WEENA 455 ROTTERDAM, 3013AL NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/07/2009 | 36935 | $96,430.80 |
| 385 | PETERCAM SA CORPORATE ACTIONS DEPARTMENT PLACE ST-GUDULE 19 BRUSSELS, 1000 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55987 | $723,489.26 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 386 | PEÑARROJA MARTINEZ, CONCEPCION CL TORRAS I BAGES, 1 BLQ A PLANTA 3-1 SABADELL (BARCELONA), 08201 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41191 | $36,792.60* |
| 387 | PFEFFER, INGRID FRIEDRICH-RAUCH-GASSE 6 LAXENBURG, 2361 AUSTRIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47232 | $15,598.00 |
| 388 | PINTO CAROLINO, ANA MARIA AL ECA DE RUEIROS, 19, 20 ESQ. PORTO, 4200-273 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41696 | $37,685.25 |
| 389 | PJ HOLDING APS HANS OLE PEDERSEN ENGKARSEVEJ 2 NYKOEBING MORS, DK-7900 DENMARK | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 51518 | $45,679.94 |
| 390 | PLOMBAT, ROGER BRUEL JAFUDA CRESQUES 17, 1 1 PALMA DE MALLORCA, 07004 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50083 | $141,510.00 |
| 391 | POETOCARRERO, MARIA HELENA CASTRO F. RUA CORTE REAL, 419 PORTO, 4150-236 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41715 | $57,977.30 |
| 392 | POPULAR BANCA PRIVADA, S.A. AT// JOSE MARIA TORRES C/ JUAN IGNACIO LUCA DE TENA, 11 , 28027 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49928 | $42,453.00* |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 393 | PORTILLA ZORITA, MIGUEL<br>ATTN: MRS. JIMENEZ<br>CL JUAN GARAY 2<br>BILBAO, 48003<br>SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47091 | $76,415.40 |
| 394 | POWER, LIAM & MARGARET<br>3 CURRAGH WOODS<br>KILANERIN<br>GOREY, CO WEXFORD,<br>IRELAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59026 | $284,000.00 |
| 395 | PRETYMONEY LTD<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40563 | $100,000.00 |
| 396 | PROTECTION HOLDINGS LTD<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40569 | $110,000.00 |
| 397 | PROVIDEO LTD<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER, NORTH<br>CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45035 | $100,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 398 | PROVINCIALAAT DER BROEDERS VAN LIEFDE VEW STROPSTRAAT 119 GENT, 9000 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16109 | $730,000.00 |
| 399 | PURCALLA, LUIS CRISTOBAL AND YERON, MARIA LUISA CL/DE LES ROSES, 8 URBANIZACION AIGUESVERDES REUS (TARRAGONA), 43206 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45184 | $86,818.71 |
| 400 | PURIFICACION VILLATORO GARRIDO GREMIO CARPINTEROS 37, PALMA DE MALLORCA, 07014 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50081 | $424,530.00 |
| 401 | QUER FALCO, JAIME C/ COLON, 24 FIGUERES, GERONA, 17600 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44784 | Undetermined |
| 402 | R.H. SCHOLES CHARITABLE TRUST, THE C/O MR. R.H.C PATTISON FAIRACRE, BONFIRE HILL, SOUTHWATER HORSHAM WEST SUSSEX, RH13 9BU UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35526 | $45,186.00 |
| 403 | RAMON BORJA BADIAS, MARIA INMACULADA AV. SANTANDER 9, 2, 6 D ALICANTE, 03540 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44830 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|------|-------------|-------------|-----------|---------|---------------------|
| 404 | RAPOSO, PEDRO MANUEL CORREIA RUA CROFT DE MOURA, 22-R/C OEIRAS, 2760-035 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/06/2009 | 36745 | $32,547.30* |
| 405 | RECOLONS MALVEHY, ALBERTO CL ROSSELLO, 192 PLANTA 2-1 BARCELONA, 08008 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/09/2009 | 37287 | $31,132.20 |
| 406 | REEVES, RICHARD GUY DONALD NINNAGE LODGE, CROWGATE LANE CHAXHILL WESTBURY-ON-SEVERN GLOUCS, GL14 1QS UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35531 | $30,124.00 |
| 407 | RH PRIVATE FOUNDATION C/O INTERTRUST (CURACAO) N.V. BERG ARRARAT 1 CURACAO, NETHERLANDS ANTILLES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47873 | $681,054.00 |
| 408 | RIBEIRO VAZ, LUIS MIGUEL SILVEIRA HERDADE MATA DUQUE LT 51 CCI 119 SANTO ESTEVAO BENAVENTE, 2130-124 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/05/2009 | 36305 | $72,479.63 |
| 409 | RICA GALLEGO, EULALIA C/ ESPASES 9 TORDERA, BARCELONA, 08490 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44817 | Undetermined |
| 410 | RIVERA RECIO, PASCUAL / CRISTINA ARRANZ BERMEJO C/ RIAZOR 2 CASTELLON DE LA PLANA (CASTELLON), 12100 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44768 | Undetermined |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 411 | RIVERA, TOMAS COROMINAS<br>PINTOR RIVERA, 33<br>MADRID, 28016<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41363 | $21,704.68 |
| 412 | ROCHA, JAIME SILVA<br>CHIOLO 355<br>BARCA MAIA, 4475-045<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49967 | $72,471.63 |
| 413 | RODRIGUES DA SILVA CAIANO, JOSE<br>RUA MARECHAL SALDANHA, 573 10 ESQ<br>PORTO, 4150-658<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41694 | $113,055.74 |
| 414 | ROLIN PEREIRA BARATA LEBROTO, ANA MARIA<br>R. PINHAL 1<br>FONTANELAS<br>SAO JOAO LAMPAS, 2705-617<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/09/2009 | 37154 | $97,111.98 |
| 415 | ROLZEN OVERSEAS, LTD<br>AV. PRAIA VITORIA 48-1-ESQ.<br>LISBOA, 1050-184<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46911 | $199,683.04 |
| 416 | ROYAL BANK OF CANADA (SUISSE)<br>6, RUE DIDAY<br>GENEVE, CH-1204<br>SWITZERLAND | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49660 | $73,385.00 |
| 417 | ROYAL BANK OF CANADA (SUISSE)<br>6, RUE DIDAY<br>GENEVE, CH-1204<br>SWITZERLAND | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49662 | $203,986.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 418 | S-GRAVENDIJK, A.J.A. & E.J.M. 'S-GRAVENDIJK-VAN VENDELOO KROMVELD 5 WOUW, 4724 EZ NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52413 | $14,525.00 |
| 419 | SABATER COROMINAS, CARLOS AVDA. JOSEP TARRADELLAS I JOAN N 235-5 LA HOSPITALET DE LLOBREGAT (BARCELONA), 08901 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 43979 | $28,302.00 |
| 420 | SACRISTAN LLORENTE, FERNANDO DOCTOR GARCIA TAPIA, 126, 1 D MADRID, 28030 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44444 | $31,132.20 |
| 421 | SALEMA, FERNANDA ISABEL VILACA RUA ANTONIO AROSO 119 PORTO, 4100-062 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41705 | $62,325.60 |
| 422 | SALGUEIRO, MARIA IDALINA SOUSA RUA SAO DOMINGOS A LAPA, 59 LISBOA, 1200-833 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/09/2009 | 37208 | $72,471.63 |
| 423 | SANCHEZ-TERIO FERNANDEZ, MARIA DOLORES LIBRA, 8 MADRID, 28023 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/22/2009 | 44433 | $355,190.10 |
| 424 | SARAIVA, JOSE RENATO RUIVO MARTINS, DR. RUN MACHASO SANTOS ESF. LABERIA, ESCRITORIO 16 - 5 - PISO LEIRIA, 2410-128 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/13/2009 | 37738 | $14,494.33 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 425 | SASTRE MARTINEZ, GEMA<br>AV. DEL DOCTOR RICO 33 4 6<br>ALICANTE, 03005<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44806 | Undetermined |
| 426 | SCHLEGEL, THEODOR<br>WALDECK 29<br>KUFSTEIN, A-6330<br>AUSTRIA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/13/2009 | 37703 | $120,283.50 |
| 427 | SCHOONDERWALDT, D. & W.E.T.<br>SCHOONDERWALDT-VERHOEFF<br>PRINSES MARGRIETLAAN 34<br>VOORSCHOTEN, 2252 GL<br>NETHERLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52409 | $21,788.00 |
| 428 | SCOTT, DEREK<br>45 FOXROCK PARK<br>DUBLIN 18,<br>IRELAND | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59022 | $14,200.00 |
| 429 | SCOTT, FERIAL<br>COLUMBIA PALACE<br>11, PRINCESS GRACE AVE.<br>MONACO, 98000<br>FRANCE | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40475 | $28,486.00 |
| 430 | SERRA0 GOMES, PEDRO<br>54 ESTREITO DE CAMARA DE LOBOS<br>FONTE FRADE<br>MADEIRA,<br>PORTUGAL | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43266 | $31,887.52 |
| 431 | SEXTO MONTOIRO, RAMIRO<br>C/ SENANDE NO 79<br>SAN MARTINO DE ARINS (A CORUNA), 15892<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 48723 | $69,339.90* |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 432 | SEXTO SALAVADO, VISITACION/PURIFICACION/LOURDES/MANUEL & RAMIRO SEXTO MONTOIRO CALLE ATENAS NO. 4 PORTAL C 3 B SANTIAGO COMPOSTELA, 15706 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 48718 | $67,924.80* |
| 433 | SG HAMBROS BANK (CHANNEL ISLANDS) LIMITED PO BOX 6 ST PETER PORT GUERNSEY CHANNEL ISLANDS, GY1 3AE UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 08/28/2009 | 9615 | $27,883.47 |
| 434 | SILVA MONTEIRO, PEDRO PO BOX 14337 FARRARMERE, 1518 SOUTH AFRICA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43263 | $79,718.79 |
| 435 | SILVA, FRANCISCO 59 PARKLANE DRIVE, ESTER PARK KEMTON PARK, 1619 SOUTH AFRICA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43265 | $1,449,432.59 |
| 436 | SILVA, JOAQUIM MORGADO SAMORIM SATAO, 3560-148 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41684 | $72,471.63 |
| 437 | SILVA, RUI MANUEL COSTA OLIVEIRA MACEDO RUA CRASTO 707 PORTO, 4150-247 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41708 | $566,728.14 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 438 | SISTERS OF CHARITY OF JESUS & MARY THE COTTAGE ROXELY COURT WILLIAN, LETCHWORTH, HERTS, SG62AJ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59023 | $63,900.00 |
| 439 | SLOVENSKA ODSKODNINSKA DRUZBA, D.D. MALA ULICA 5 LJUBLJANA, SI-1000 SLOVENIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 57448 | $1,014,605.39 |
| 440 | SMS HOLDINGS ESTABLISHMENT PO BOX 23727 NICOSIA, 1686 CYPRUS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56771 | $142,430.00 |
| 441 | SOURE, FRANCISCO ANTONIO FRAGOSO PC NUNO RODRIGUES SANTOS, 13-5 ""0"" ESQ. LISBOA, 1600-171 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 57450 | $71,022.20 |
| 442 | ST MARYS OF THE SERVANT SERVITE PRIORY 10 MAIN STREET BENBURB, CO TYRONE, BT71 7JZ IRELAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/30/2009 | 59024 | $49,700.00 |
| 443 | STANDARD CHARTERED BANK, DUBAI P.O. BOX 999 CONSUMER BANKING CREDIT DEPARTMENT 2ND FLOOR, AL FARDAN BUILDING, AL MANKHOOL STREET STANDARD CHARTED BANK DUBAI, UNITED ARAB EMIRATES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 42989 | $310,000.00 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 444 | STANKOWEIT, MARIUS<br>SENTRUPER HOHE 10<br>MUNSTER, 48149<br>GERMANY | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 09/30/2009 | 35620 | $34,166.00 |
| 445 | STANKOWEIT, PHILIP<br>SENTRUPER HOHE 10<br>MUNSTER, 48149<br>GERMANY | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/02/2009 | 36103 | $14,235.00 |
| 446 | STREUR-PETZEL, E.M.<br>SPINOZAWEG 10<br>NOORDWIJK, 2202 AV<br>NETHERLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52187 | $4,358.00 |
| 447 | STUNDNER, KURT<br>RANDSIEDLUNGSSTRASSE 26<br>TRAISKIRCHEN, 2514<br>AUSTRIA | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47236 | $14,180.00 |
| 448 | SVEBEK LTD.<br>MERRILL LYNCH BANK & TRUST COMPANY<br>(CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40553 | $40,000.00 |
| 449 | SWISSQUOTE BANK SA<br>CASE POSTALE 319<br>ATTN: NOZHA OVERGHI<br>CHEMIN DE LA CRETAUX 33<br>GLAND, CH-1196<br>SWITZERLAND | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 55355 | $652,050.00 |

* - Indicates claim contains unliquidated and/or undetermined amounts

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 450 | SY, JOSEPH LAO SUNRISE TOWNHOUSE, UNIT E 625 CALDERON STREET CORNER A. MABINI MANDALUYONG CITY, PHILIPPINES | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40360 | $569,720.00 |
| 451 | TACK, CARINE VIJVERSHOF 4 2830 WILLEBROEK, BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40882 | $7,088.75 |
| 452 | TENREIRO DA CRUZ, TEOFILO RUA PERO ALENQUER 8 LISBOA, 1400-296 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43351 | $36,235.81 |
| 453 | THURLAND OVERSEAS, LTD AV. PRAIA VITORIA 48-1-ESQ. LISBOA, 1050-184 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46910 | $578,791.41 |
| 454 | TITUS SOCIEDAD ANONIMA ZABALA 1542 PISO 7 MONTEVIDEO, URUGUAY | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47408 | $81,185.10 |
| 455 | TOMLINSON, SYLVIA MAY 10A SUNNYDENE AVENUE LONDON, E4 9RE UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/30/2009 | 35528 | $12,050.00 |
| 456 | TORRE PARK S.A. RONDA UNIVERSITAT, 10 BARCELONA, 08007 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43099 | $76,415.40 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|------|-------------|-------------|------------|---------|---------------------|
| 457 | TORREJON HERBOSA, AMELIA<br>PSO. DE LA HABANA, 144 ESC. DRCH.<br>MADRID, 28036<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45579 | $18,810.70 |
| 458 | TORRENTS CAPDEVILA, JORDI & RIESCO MALET, ANNET<br>CL. DE LES FLORS, 14 4-3<br>VIC BARCELONA, 08500<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49624 | $369,341.00 |
| 459 | TRESCENTS, JOSEP ROCA<br>CALLE MOLI DEL MIG NUMERO 10<br>MATARO<br>BARCELONA, 08304<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46830 | $142,430.00 |
| 460 | TRIESTE INVESTMENTS LLC<br>520 S 7TH STREET, STE C<br>LAS VEGAS, NV 89101 | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50048 | $86,965.96 |
| 461 | TRINIDAD, SANZ FERRANDEZ<br>C/ALCALA, 102-BAJO C<br>MADRID, 28009<br>SPAIN | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41366 | $49,197.27 |
| 462 | UDINESE LTD<br>MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD.<br>4TH FLOOR HARBOUR CENTER<br>NORTH CHURCH STREET<br>GEORGE TOWN<br>GRAND CAYMAN,<br>CAYMAN ISLANDS | 08-13555<br>(JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40562 | $60,000.00 |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 463 | UNION BANCAIRE PRIVEE ATTN CORPORATE ACTIONS DEPARTMENT RUE DU RHONE 96-98 CASE POSTALE 1320 GENEVA 1, 1211 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47119 | $142,010.00 |
| 464 | UNION BANCAIRE PRIVEE ATTN CORPORATE ACTIONS DEPARTMENT RUE DU RHONE 96-98 CASE POSTALE 1320 GENEVA 1, 1211 SWITZERLAND | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47120 | $284,020.00 |
| 465 | USBORNE, ANN 118 B HIGHBURY HILL LONDON, N5 1AT UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35523 | $6,025.00 |
| 466 | VALERIO, MARIA CONCEICAO ALMEIDA AVENIDA D. AFONSO HENRIQUES, 1492 CALENDARIO VILA NOVA DE FAMALICAO, 4760-283 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/19/2009 | 41700 | $72,471.63 |
| 467 | VALESKA ENTERPRISES AS 60 MARKET SQUARE PO BOX 364 BELIZE CITY, BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47994 | $1,514,657.05 |
| 468 | VAN DAM, DE HEER J. P/A ZANDERIJ 37 AMSTELVEEN, 1185 ZM NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52210 | $56,972.00 |

## IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 469 | VAN DAMM, R.S.<br>ZANDERY 37<br>AMSTELVEEN, 1185 ZM<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52214 | $42,729.00 |
| 470 | VAN DER KIEFT, H. & P.E. VAN DER KIEFT-VREUGDENHIL<br>ALMSTEIN 3<br>DORDRECHT, 3328 MP<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52411 | $29,050.00 |
| 471 | VAN DER MEIDE, M.B.P.<br>KORTE ENGELENBURGERKADE 2C<br>DORDRECHT, 3311 CG<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 54550 | $2,830.20 |
| 472 | VAN DER PLAS, J.A.M. & C.E. VAN DER PLAS-VAN DER BIJL<br>NIEUWE WEG 29<br>BREDA, 4811 LW<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52185 | $29,050.00 |
| 473 | VAN KOMMER, C.D.E. & M. VAN KOMMER-GERRITSE<br>HAMMARSKJOLDLAAN 635<br>RIJSWIJK ZH, 2286 HS<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52408 | $21,788.00 |
| 474 | VAN LIEMPD, J.A.H.M. &<br>VAN LIEMPD_V.D. VEN, A.W.A<br>EEUWSELS 21<br>VOLKEL, 5400 AJ<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 47827 | $120,283.50 |
| 475 | VAN ROOY, S.A.B.<br>SCHOONOUWENSEWEG 24<br>STOLWIJK, 2821 NX<br>NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 54549 | $106,132.50 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 476 | VANDEN BULCKE, CECILIA BURGEMEESTER WOUTERSSTRAAT 37 BERCHEM, 2600 BELGIUM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/18/2009 | 16121 | $29,200.00 |
| 477 | VARGAS ASTIZ, PEDRO C/ MUCUBAJI CON C/ YARE QTA MAITE ELENA NO. 165 MACARACUAY ZONA J CARACAS EDO MIRANDA, VENEZUELA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47398 | $71,215.00* |
| 478 | VD KAMP, G. BANDHOLM 140 HOOFDDORP, 2133 DN NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 53651 | $8,508.59 |
| 479 | VEGA FUENTE, LUIS MARIA / & BOADA MASIP, MARIA EULALIA C/ BRUC 124, 3, 2 BARCELONA, 08009 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44800 | Undetermined |
| 480 | VENANCIO, JOSE LOPES 3 RUE CHAIGNEAU LA VARENNE, 94210 FRANCE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 49956 | $173,931.91 |
| 481 | VICEDO MADRONA, ENRIQUE AV. DEL GOLF 8, APDO. 110 CASTELLON DE LA PLANA, CASTELLON, 12100 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44787 | Undetermined |
| 482 | VICTORIA LALLANA RUBIO, MARIA C/ PLAYA DE LA LANZADA 1 28660 BOADILLA DEL MONTE (MADRID), SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44733 | Undetermined |

**IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)**

### OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 483 | VILA VICENS, JOSEP M. CL SABINO DE ARANA 14 -16 4 2 BARCELONA, 08028 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 46413 | $28,302.00 |
| 484 | VILAR, VICENTE IBANEZ AVDA. CHATELLERAULT, 15. 4-1 CASTELLON, 12005 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/29/2009 | 56456 | $35,584.30 |
| 485 | VILLAVERDE FERNANDEZ, ALBERTO / PEREZ POUSO, MARIA CARMEN C/ MANZANARES, 3. SANTA UXIA DE RIBEIRA (LA CORUNA), 15960 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 44758 | Undetermined |
| 486 | VIVAS MONTOLIO, ESMERALDA DEU Y MATA, 156 5 BARCELONA, 08029 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/23/2009 | 45592 | $57,879.13 |
| 487 | WARNER, DIANE AVERIL 11 NANT-Y-COED MOLD, FLINTSHIRE NORTH WALES, CH7 1NX UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35525 | $85,853.00 |
| 488 | WEECH, MARIE-THERESE 7A WEST SIDE COMMON LONDON, SW19 4UD UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/12/2009 | 37372 | $36,235.81 |

IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 489 | WILD SAFFRON LTD MERRILL LYNCH BANK & TRUST COMPANY (CAYMAN) LTD. 4TH FLOOR HARBOUR CENTER NORTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40558 | $300,000.00 |
| 490 | WISSELINK, B. WISSELINKWEG 1 ZELHEM, 7021 MD NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 54548 | $5,660.40 |
| 491 | WITTEVEEN, M.J. RHIJNGEESTERSTRAATWEG 16 OEGSTGEEST, 2342 AM NETHERLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/28/2009 | 52338 | $43,576.00 |
| 492 | WITTIG, JURGEN GUSINDEGASSE 13 LAXENBURG, 2361 AUSTRIA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/26/2009 | 47235 | $14,180.00 |
| 493 | WOOD, LYNDA CAROLINE PETERS, WALTER JAMES BUZON 102 MIMOSA, 81 URB LA SIERREZUELA MIJAS COSTA MALAGA, 29649 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/27/2009 | 50079 | $210,850.00 |
| 494 | WU JIAN BIN C/O MS. CORINNA KO/HEIDI CHAN 63/F. 2 INTERNATIONAL FINANCE CENTRE CENTRAL, HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43014 | $141,740.00 |

## IN RE LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 213: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 495 | YARNOZ DIEZ, ISABEL MARIA CARLOS VII, 7 - 4 0 IZDA PORTUGALETE - VIZCAYA, 48920 SPAIN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/13/2009 | 37668 | $84,906.00 |
| 496 | YOUNG, ELISABETH ANN RIVER COTTAGE, FITTLETON SALISBURY WILTSHIRE, SP4 9QA UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/29/2009 | 35522 | $15,062.00 |
| 497 | ZAMBUJO, JORGE MONIZ BURREIO RUA LUIS CAMOES 126 R/C DT LISBOA, 1300 363 PORTUGAL | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/16/2009 | 40623 | $72,471.63 |
| 498 | ZEBRA TRADING LTD. RG HODGE PLAZA UPPER MAIN ST WICKAMS CAYI ROAD TOWN TORTOLA, VIRGIN ISLANDS (BRITISH) | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/15/2009 | 40469 | Undetermined |
| 499 | ZEELAND INTERNATIONAL LIMITED 10-1 BAMBOO ROAD 2ND HSINCHU, 30079 TAIWAN, PROVINCE OF CHINA | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/12/2009 | 37379 | $427,290.00 |
| 500 | ZOLTAN INVESTMENTS CORP 60 MARKET SQUARE- BOX 364 BELIZE CITY, BELIZE | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 10/21/2009 | 43172 | $60,876.17 |
| | | | | | TOTAL | $68,452,435.11 |

# Exhibit B

**IMPORTANT NOTICE**

## NOT FOR DISTRIBUTION TO ANY US PERSON OR TO ANY PERSON
## OR ADDRESS IN THE US

**IMPORTANT: You must read the following before continuing.** The following applies to the Base Prospectus following this page (the **Base Prospectus**), and you are therefore advised to read this carefully before reading, accessing or making any other use of the Base Prospectus. In accessing the Base Prospectus, you agree to be bound by the following terms and conditions, including any modifications to them any time you receive any information from us as a result of such access.

NOTHING IN THIS ELECTRONIC TRANSMISSION CONSTITUTES AN OFFER OF SECURITIES FOR SALE IN THE UNITED STATES OR ANY OTHER JURISDICTION WHERE IT IS UNLAWFUL TO DO SO. THE PREFERRED SECURITIES AND THE SUBORDINATED GUARANTEE HAVE NOT BEEN, AND WILL NOT BE, REGISTERED UNDER THE US SECURITIES ACT OF 1933, AS AMENDED (THE **SECURITIES ACT**), OR THE SECURITIES LAWS OF ANY STATE OF THE US OR OTHER JURISDICTION AND THE PREFERRED SECURITIES MAY NOT BE OFFERED OR SOLD WITHIN THE US OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, US PERSONS (AS DEFINED IN REGULATION S UNDER THE SECURITIES ACT), EXCEPT PURSUANT TO AN EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND APPLICABLE STATE OR LOCAL SECURITIES LAWS.

THE FOLLOWING BASE PROSPECTUS MAY NOT BE FORWARDED OR DISTRIBUTED TO ANY OTHER PERSON AND MAY NOT BE REPRODUCED IN ANY MANNER WHATSOEVER, AND IN PARTICULAR, MAY NOT BE FORWARDED TO ANY US PERSON OR TO ANY US ADDRESS. ANY FORWARDING, DISTRIBUTION OR REPRODUCTION OF THIS DOCUMENT IN WHOLE OR IN PART IS UNAUTHORISED. FAILURE TO COMPLY WITH THIS DIRECTIVE MAY RESULT IN A VIOLATION OF THE SECURITIES ACT OR THE APPLICABLE LAWS OF OTHER JURISDICTIONS.

**Confirmation of the Representation:** In order to be eligible to view this Base Prospectus or make an investment decision with respect to the securities investors must not be a US Person (within the meaning of Regulation S under the Securities Act). This Base Prospectus is being sent to you on the basis that by accepting the e-mail and accessing this Base Prospectus, you shall be deemed to have represented to us that you are not a US Person, the electronic mail address that you have given to us and to which this e-mail has been delivered is not located in the US, its territories and possessions (including Puerto Rico, the US Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands), and that you consent to delivery of such Base Prospectus by electronic transmission.

**YOU ARE REMINDED THAT THIS BASE PROSPECTUS HAS BEEN DELIVERED TO YOU ON THE BASIS THAT YOU ARE A PERSON INTO WHOSE POSSESSION THIS BASE PROSPECTUS MAY LAWFULLY BE DELIVERED IN ACCORDANCE WITH THE LAWS OF THE JURISDICTION IN WHICH YOU ARE LOCATED AND YOU MAY NOT, NOR ARE YOU AUTHORISED TO, DELIVER THIS BASE PROSPECTUS TO ANY PERSON EXCEPT IN COMPLIANCE WITH ALL APPLICABLE LAWS.**

The materials relating to the offering do not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law. If a jurisdiction requires that the offering be made by a licensed broker or dealer and the underwriters or any affiliate of the underwriters is a licensed broker or dealer in that jurisdiction, the offering shall be deemed to be made by the underwriters or such affiliate on behalf of the Guarantor in such jurisdiction.

Under no circumstances shall this Base Prospectus constitute an offer to sell or the solicitation of an offer to buy nor shall there be any sale of these securities in any jurisdiction in which such offer, solicitation or sale would be unlawful. Recipients of this Base Prospectus who intend to subscribe for or purchase the securities are reminded that any subscription or purchase may only be made on the basis of the information contained in the final prospectus. This Base Prospectus may only be communicated to persons in the United Kingdom in circumstances where section 21(1) of the Financial Services and Markets Act 2000 does not apply to the Guarantor.

This Base Prospectus has been sent to you in an electronic form. You are reminded that documents transmitted via this medium may be altered or changed during the process of electronic transmission. Consequently neither Lehman Brothers International (Europe) nor any person who controls Lehman Brothers International (Europe) nor any director, officer, employee or agent of Lehman Brothers International (Europe) nor any affiliate of any such person accepts any liability or responsibility whatsoever in respect of any difference between the Base Prospectus distributed to you in electronic format and the hard copy version available to you on request from Lehman Brothers International (Europe).

# LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

*(a limited partnership organised under the laws of England and Wales)*

## Euro Fixed Rate Enhanced Capital Advantaged
## Preferred Securities (Euro ECAPS^SM)

having the benefit of a subordinated guarantee of

# LEHMAN BROTHERS HOLDINGS INC.

*(incorporated with limited liability in the State of Delaware)*

The Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (the **Euro ECAPS**^SM or the **Preferred Securities**), each with a liquidation preference of €1,000, will comprise limited partnership interests in Lehman Brothers UK Capital Funding IV LP (the **Issuer**).

Holders of the Preferred Securities will receive (subject as described herein under "*Description of the Preferred Securities*") non-cumulative preferential cash distributions (the **Distributions**) payable annually in arrear on the date specified in the Final Terms referred to herein in each year at the fixed rate per annum specified in the Final Terms referred to herein, all as more fully described herein under "*Description of the Preferred Securities*".

See "**Risk Factors**" for a discussion of certain factors that should be considered by prospective investors, including certain United States federal income tax conseqences.

As an English limited partnership, the Issuer will not be a legal entity separate from its partners. The Preferred Securities will benefit from a subordinated guarantee to be dated the Closing Date (the **Subordinated Guarantee**) entered into by Lehman Brothers Holdings Inc. (**LBHI**) of declared dividends and redemption amounts, all as more fully described herein under "*Subordinated Guarantee*".

Application has been made to the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000 (the **UK Listing Authority**) for the Preferred Securities to be admitted to the Official List of the UK Listing Authority (the **Official List**) and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market.

Application will also be made to Euronext Amsterdam N.V. (**Euronext Amsterdam**) for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam. The London Stock Exchange's Gilt Edged and Fixed Interest Market and Euronext Amsterdam are regulated markets for the purposes of Directive 93/22/EC (the **Investment Services Directive**).

This document has been approved by the UK Listing Authority as a base prospectus within the meaning of Directive 2003/71/EC (the **Prospectus Directive**). Certain information relating to the Preferred Securities will be contained in the Final Terms, see "*Summary − Final Terms*" and "*Form of Final Terms*" for details of such information.

Lead Manager

# LEHMAN BROTHERS

The date of this Base Prospectus is 4 January 2007

ECAPS^SM is a service mark of Lehman Brothers

LB GP No. 1 Ltd. in its capacity as the General Partner (the **General Partner**) and LBHI together (the **Responsible Persons**) accept responsibility for the information contained in this Base Prospectus. To the best of the knowledge and belief of the General Partner and LBHI (each having taken all reasonable care to ensure that such is the case) the information contained in this Base Prospectus is in accordance with the facts and does not omit anything likely to affect the import of such information.

No person is or has been authorised to give any information or to make any representation not contained or incorporated in or consistent with this Base Prospectus and, if given or made, such information or representation must not be relied upon as having been authorised by the Issuer, the General Partner, The Bank of New York Depository (Nominees) Limited (**BNYD**), LBHI or the Managers (as defined under "*Subscription and Sale*" below). Neither the delivery of this Base Prospectus nor any subscription, sale or purchase made in connection herewith shall, in any circumstances, create any implication that there has been no change in the affairs of the Issuer, the General Partner, LBHI or the Group (as defined in the Terms and Conditions of the Preferred Securities) since the date hereof.

Neither this Base Prospectus nor any other information supplied in connection with the Preferred Securities (a) is intended to provide the basis of any credit or other evaluation or (b) should be considered as a recommendation by the Issuer, the General Partner, LBHI, BNYD, any member of the Group or the Managers that any recipient of this Base Prospectus or any other information supplied in connection with the Preferred Securities should purchase the Preferred Securities. Each prospective investor contemplating purchasing Preferred Securities should make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness, of the Issuer and LBHI.

Prospective investors should inform themselves as to the legal requirements and tax consequences within the countries of their residence and domicile for the acquisition, holding or disposal of Preferred Securities and any foreign exchange restrictions that might be relevant to them. This Base Prospectus does not constitute an offer of, or an invitation by or on behalf of, the Issuer or any of its partners, the General Partner, BNYD, LBHI or the Managers to subscribe for or purchase any of the Preferred Securities.

Prospective investors should satisfy themselves that they understand all of the risks associated with making investments in the Preferred Securities. If a prospective investor is in any doubt whatsoever as to the risks involved in investing in the Preferred Securities, he should consult his professional advisers.

The distribution of this Base Prospectus and the offering of the Preferred Securities in certain jurisdictions may be restricted by law. Persons into whose possession this Base Prospectus comes are required by the Issuer, the General Partner, LBHI and the Managers to inform themselves about, and to observe, any such restrictions.

In respect of the United Kingdom, this Base Prospectus is directed only at (a) investment professionals falling within article 14(5) of the Financial Services and Markets Act 2000 (Promotion of Collective Investment Schemes) (Exemptions) Order 2001 (the **Promotion of CIS Order**) and article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (the **Financial Promotion Order**), who have professional experience of participating in unregulated schemes and of matters relating to investments; and/or (b) persons falling within article 22(2) of the Promotion of CIS Order and article 49(2) of the Financial Promotion Order; and/or (c) any other persons to whom this Base Prospectus may be communicated lawfully. Preferred Securities are only available to such persons. Persons who (a) do not have such professional experience in participating in unregulated schemes and in matters relating to investments and/or (b) do not fall within said article 22(2) and 49(2) and/or (c) are not persons to whom this Base Prospectus may be communicated lawfully should not rely on this Base Prospectus.

Notwithstanding anything in this Base Prospectus to the contrary, the Issuer, the General Partner, LBHI, the Managers and each prospective investor (and any employee, representative or other agent of the Issuer, the General Partner, LBHI and the Managers or of any prospective investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this Base Prospectus and all materials of any kind (including opinions or other tax analyses, if any) that are provided to them or to it relating to such tax treatment and tax structure. However, any such information

relating to the tax treatment or tax structure is required to be kept confidential to the extent necessary to comply with any applicable federal or state securities laws.

The Preferred Securities may not be offered or sold, directly or indirectly, and neither this Base Prospectus nor any advertisement or other offering material may be distributed or published in any jurisdiction, except in accordance with the legal requirements applicable in that jurisdiction. In particular, the Preferred Securities have not been, and will not be, registered under the United States Securities Act of 1933, as amended (the **Securities Act**). The Preferred Securities may not be offered, sold or delivered within the United States or to, or for the account or benefit of, US persons. A further description of certain restrictions on the offering and sale of the Preferred Securities and on the distribution of this Base Prospectus is given under "*Subscription and Sale*" below.

**IN CONNECTION WITH THE ISSUE OF THE PREFERRED SECURITIES, LEHMAN BROTHERS INTERNATIONAL (EUROPE) OR ANY PERSON ACTING FOR IT MAY OVER-ALLOT THE PREFERRED SECURITIES (PROVIDED THAT THE AGGREGATE PRINCIPAL AMOUNT OF THE PREFERRED SECURITIES DOES NOT EXCEED 105 PER CENT. OF THE AGGREGATE PRINCIPAL AMOUNT OF THE PREFERRED SECURITIES) OR EFFECT TRANSACTIONS WITH A VIEW TO SUPPORTING THE MARKET PRICE OF THE PREFERRED SECURITIES AT A LEVEL HIGHER THAN THAT WHICH MIGHT OTHERWISE PREVAIL. HOWEVER, THERE IS NO ASSURANCE THAT LEHMAN BROTHERS INTERNATIONAL (EUROPE) (OR PERSONS ACTING ON BEHALF OF LEHMAN BROTHERS INTERNATIONAL (EUROPE)) WILL UNDERTAKE STABILISATION ACTION. ANY STABILISATION ACTION MAY BEGIN ON OR AFTER THE DATE ON WHICH ADEQUATE PUBLIC DISCLOSURE OF THE TERMS OF THE OFFER OF THE PREFERRED SECURITIES IS MADE AND, IF BEGUN, MAY BE ENDED AT ANY TIME, BUT IT MUST END NO LATER THAN THE EARLIER OF 30 DAYS AFTER THE CLOSING DATE AND 60 DAYS AFTER THE DATE OF THE ALLOTMENT OF THE PREFERRED SECURITIES.**

All references in this Base Prospectus to **EUR**, **€**, **Euro** and **euro** are to the single currency introduced at the start of the third stage of European economic and monetary union pursuant to the Treaty establishing the European Community, as amended from time to time. All references in this Base Prospectus to **US$** and **$** are to United States dollars. All references in this Base Prospectus to **£** are to pounds sterling.

## CONTENTS

| Clause | Page |
|---|---|
| Summary | 5 |
| Risk Factors | 13 |
| Available Information | 17 |
| Information Incorporated by Reference | 18 |
| Description of the Preferred Securities | 20 |
| Summary of Provisions Relating to the Preferred Securities in Global Form | 33 |
| Subordinated Guarantee | 34 |
| Use of Proceeds | 40 |
| Lehman Brothers UK Capital Funding IV LP | 41 |
| Lehman Brothers Holdings Inc. | 44 |
| Consolidated Stockholders' Equity of LBHI | 49 |
| Summary Consolidated Financial Information of LBHI | 50 |
| Taxation | 52 |
| Subscription and Sale | 56 |
| General Information | 59 |
| Form of Final Terms | 62 |

## SUMMARY

**This Summary must be read as an introduction to this Base Prospectus and any decision to invest in any Preferred Securities should be based on a consideration of this Base Prospectus as a whole, including the documents incorporated by reference. Following the implementation of the relevant provisions of the Prospectus Directive in each Member State of the European Economic Area no civil liability will attach to the Responsible Persons in any such Member State in respect of this Summary (including any translation hereof required by the competent authority of any Member State where an offer to the public of the Preferred Securities may be made) unless it is misleading, inaccurate or inconsistent when read together with other parts of this Base Prospectus. Where a claim relating to information contained in this Base Prospectus is brought before a court in a Member State of the European Economic Area, the plaintiff may, under the national legislation of the Member State where the claim is brought, be required to bear the costs of translating the Base Prospectus before the legal proceedings are initiated.**

*Capitalised terms used but not defined in this summary shall bear the respective meanings ascribed to them under "Description of the Preferred Securities"*

**Issuer:**

Lehman Brothers UK Capital Funding IV LP (the **Issuer**), an English limited partnership formed and registered under the Limited Partnerships Act 1907 (the **Act**).

The business of the partnership, as administered by, or on behalf of, the General Partner, will include the following:

– raising and providing finance and financial support to LBHI;

– acquiring and holding for investment purposes the Issuer's assets;

– monitoring the Issuer's assets and determining whether they continue to be suitable; and

– functions necessary or incidental thereto.

On the Closing Date, the General Partner will use the total of the partners' capital contributions to acquire the Partnership Assets, being the Subordinated Notes and the Third Party Assets. The Subordinated Notes will represent approximately 95 per cent. of the Partnership Assets.

**General Partner:**

LB GP No.1 Ltd. (incorporated with limited liability in England and Wales with registered number 5355491), a wholly-owned Subsidiary of LBHI.

**Preferential Limited Partner:**

LB Investment Holdings Ltd (incorporated with limited liability in England and Wales with registered number 4385277), a wholly-owned Subsidiary of LBHI or any other Subsidiary of LBHI.

Subject to the payment of the Further Distribution, the Preferential Limited Partner shall be entitled to receive amounts received by the Issuer from its investment in the Partnership Assets in excess of those required to make payments in respect of the Preferred Securities.

**Guarantor:**

Lehman Brothers Holdings Inc. (incorporated with limited liability in the State of Delaware).

5

LBHI is the ultimate parent company of the Lehman Brothers group. Lehman Brothers' principal business activities are investment banking, capital markets and investment management.

Its global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers, through predecessor entities, was founded in 1850.

**Issue:**

Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS℠**), each with a liquidation preference of €1,000 (the **Liquidation Preference**), comprising interests in a limited partnership share in the Issuer.

**Subordinated Guarantee:**

LBHI will provide a subordinated guarantee to be executed by LBHI on the Closing Date (the **Subordinated Guarantee**) in respect of:

– any due Distributions;

– payments on redemption of the Preferred Securities; and

– any Additional Amounts,

which will be in favour of the Holders.

The Subordinated Guarantee will rank *pari passu* with the non-cumulative perpetual preferred securities or preferred stock of LBHI (whether or not in issue).

The Subordinated Guarantee will not cover payments on liquidation of the Issuer. See "*Rights upon Liquidation*" below.

**Distribution Rate:**

The Preferred Securities will entitle Holders to receive (subject as described below) non-cumulative preferential cash distributions (the **Distributions**).

Distributions will be payable out of the Issuer's own legally available resources annually in arrear on the distribution payment date in each year specified in the Final Terms (each a **Distribution Payment Date**).

Distributions will accrue at a rate per annum specified in the Final Terms.

The Holders will receive Distributions from the Issuer only if the Issuer has received sufficient funds from its assets.

In addition the Holders may receive a Further Distribution on redemption.

**Optional Waiver:**

Furthermore, notwithstanding the existence of such resources legally available for distribution by the Issuer, the Holders will not be entitled to receive Distributions if the General Partner has published a No Payment Notice in respect of such Distribution, in which case there will be no payment due under the Preferred Securities.

6

The General Partner will have full discretion to publish the No Payment Notice in respect of any Distribution at any time and for any reason.

**Mandatory Waiver:**

In addition, without limiting the discretion detailed above, the General Partner will deliver a No Payment Notice if:

– such payment will cause a Trigger Event; or

– in respect of the relevant Distribution Payment Date Distributions that would be payable on such date exceed the New Capital Amount if on the Calculation Date relative to such Distribution Payment Date:

(x) the Trailing Two Quarters Consolidated Net Income Amount of LBHI is not a positive amount for the two-fiscal quarter period ending on the last day of the fiscal quarter that is two fiscal quarters prior to the most recently completed fiscal quarter before that Calculation Date; and

(y) the Tangible Common Stockholders' Equity Amount of LBHI as of the end of the most recently completed fiscal quarter before that Calculation Date and as of the end of the fiscal quarter that is two quarters before that fiscal quarter has declined in each case by 10 per cent. or more as compared to the Tangible Common Stockholders' Equity Amount of LBHI at the end of the "benchmark fiscal quarter" for that Distribution Payment Date, which is the sixth fiscal quarter preceding the most recently completed fiscal quarter before that Calculation Date.

**Distributions non-cumulative:**

Save as described above, Holders will have no right to participate in the profits of the Issuer or LBHI and in particular will have no right to receive from the Issuer amounts paid under Partnership Assets or otherwise amounts in excess of Distributions due and payable under the Preferred Securities. In the event that any amounts received by the Issuer on the Partnership Assets, which would otherwise have been used by the Issuer (being the holder thereof) to fund such Distribution, exceed the amount (if any) then due by way of Distribution under the Preferred Securities, the amount of such excess will be allocated, subject to payment of the Further Distribution, to the Preferential Limited Partner as and when they are received. Holders will have no rights in respect of such excess.

**Distribution and Capital Stopper:**

In the event that Distributions are not paid on the Preferred Securities, subject as provided in the next sentence, LBHI has undertaken that, in the event that any Distribution is not paid in full, it will not:

(a) declare or pay any dividend on its shares of common stock; or

(b) repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

7

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock and/or common stock of LBHI equal to the amount of Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)     dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)   purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

|  |  |
|---|---|
| **Trigger Event and Substituted Preferred Stock:** | If a Trigger Event occurs and is continuing, then, provided that (if required at such time) any relevant Supervisory Authority has not objected, the General Partner shall take all reasonable steps to cause the substitution of the Preferred Securities by depositary shares representing Substituted Preferred Stock.

On the substitution date, each Preferred Security of €1,000 in nominal amount will be substituted for one depositary share representing Substituted Preferred Stock which will have a nominal amount of €1,000 (or its equivalent in US$).

The General Partner will notify Holders if a Trigger Event occurs. In the notice, the General Partner will include information on the procedures for effecting the substitution. |
| **Optional Redemption:** | If the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms, then to the extent that the redemption proceeds in respect thereof are not used to acquire Replacement Affiliate Investments, the Preferred Securities will also be redeemed by the General Partner, on the same date, each to be redeemed at the Optional Redemption Price.

Any redemption of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time).

As a result, the relevant Supervisory Authority when granting such a consent for the redemption of the Subordinated Notes or the Replacement Affiliate Investments will also be granting a consent for any redemption of the Preferred Securities.

A Further Distribution may be payable on Optional Redemption. |

8

| | |
|---|---|
| **Capital Disqualification Event:** | If a Capital Disqualification Event occurs and is continuing, the General Partner may substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities so that they become Qualifying Regulatory Capital Securities in accordance with applicable laws and regulations. |
| **Tax Event:** | If a Tax Event occurs and is continuing, the effect of which cannot be avoided by the Issuer, LBHI or the issuer of the Replacement Affiliate Investments, as the case may be, taking reasonable measures available to it or if the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed pursuant to their terms for tax reasons at any time, then, if they are not replaced by Replacement Affiliate Investments, the General Partner at its option may either (i) redeem the Preferred Securities in whole, but not in part, on the same date, each to be redeemed at the Optional Redemption Price or (ii) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will remain as Qualifying Regulatory Capital Securities. |
| **Rating Agency Event:** | If a Rating Agency Event occurs and is continuing, the General Partner at its option may redeem the Preferred Securities in whole, but not in part, at the Optional Redemption Price. |
| | Any redemption of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time). |
| **Ranking of the Preferred Securities:** | The Preferred Securities, together with the Subordinated Guarantee, are intended to provide Holders, with respect to the Issuer, with rights on liquidation of the Issuer equivalent to non-cumulative preferred stock of LBHI, whether or not issued. |
| | Claims under the Preferred Securities in respect of any Liquidation Distributions will rank: |
| | (a)  senior to the rights of the General Partner and the Preferential Limited Partner; and |
| | (b)  junior to the claims of creditors of the Issuer (if any). |
| **Rights upon Liquidation:** | In the event of the dissolution of the Issuer, Holders will be entitled to receive, subject as set out below, for each Preferred Security a Liquidation Distribution out of the assets of the Issuer legally available for distribution. |
| | LBHI has undertaken that, so long as any of the Preferred Securities is outstanding: |
| | (a)  unless a Trigger Event occurs or LBHI is being wound up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and |

|  | (b) | the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred. |

**Withholding Tax and Additional Amounts:**

The Issuer will pay such additional amounts (**Additional Amounts**) as may be necessary in order that the net payment received by each Holder in respect of the Preferred Securities, after deduction or withholding of or on account of any taxes imposed by tax authorities in the United States and the United Kingdom upon payments made by or on behalf of the Issuer, will equal the amount which would have been received in the absence of any such deduction or withholding of or on account of taxes, subject to customary exceptions.

The Subordinated Guarantee will contain a similar provision relating to any taxes imposed by tax authorities in the United States.

**Administrator:**

The Issuer will appoint an administrator to perform those operational matters in relation to the Issuer required under the Financial Services and Markets Act 2000 to be performed by a person authorised by the United Kingdom Financial Services Authority to establish, operate and wind-up collective investment schemes.

**Partnership Assets:**

The proceeds raised by the issue of the Preferred Securities together with the Preferential Limited Partner's capital contribution will be used by the Issuer to purchase the Subordinated Notes and the Third Party Assets.

The Subordinated Notes will represent approximately 95 per cent. of the Partnership Assets. The Subordinated Notes will be issued by LBHI, will have a maturity of 30 years and will be redeemable by LBHI on the interest payment date to be specified in the Final Terms (**First Call Date of Subordinated Notes**) or any interest payment date thereafter, subject to there being no objection from any relevant Supervisory Authority.

Unless the Preferred Securities are redeemed prior to or simultaneously with the maturity of the Subordinated Notes, then on maturity of the Subordinated Notes or any Replacement Affiliate Investments, the General Partner will, subject to prior consent of the relevant Supervisory Authority (if required at such time), reinvest the proceeds of redemption of the Subordinated Notes or Replacement Affiliate Investments in Replacement Affiliate Investments (or further Replacement Affiliate Investments) that will contain the same terms as the Subordinated Notes in respect of tenor, principal amount, interest payment dates and redemption (including redemption for tax reasons) and will be callable on any interest payment date. However, upon issuance of such Replacement Affiliate Investments, the Distribution Rate will be the rate per annum

10

determined by the then prevailing market conditions for instruments of similar risk and 30 year maturity.

The Third Party Assets will represent approximately 5 per cent. of the Partnership Assets.

**Voting Rights:**

Except as described in "*Description of the Preferred Securities – Meetings*" and as provided in the Act, Holders will not be entitled to receive notice of, or attend or vote at, any meeting of partners in the Issuer or participate in the management of the Issuer.

**Form of the Preferred Securities:**

The Preferred Securities will be in registered form.

On or about the Closing Date, a single global certificate (the **Global Certificate**) in respect of the Preferred Securities will be deposited with The Bank of New York (the **Common Depositary**) as common depositary for Euroclear Bank SA/N.V., (**Euroclear**) and Clearstream Banking, société anonyme (**Clearstream, Luxembourg**). The Global Certificate will be issued, and the Preferred Securities will be registered, in the name of The Bank of New York Depository (Nominees) Limited (the **Initial Limited Partner**) as nominee of the Common Depositary.

For so long as the Preferred Securities are deposited and registered as described above, book-entry interests in the Preferred Securities will be shown on, and transfers thereof will be effected only through, records maintained by Euroclear and Clearstream, Luxembourg.

Definitive certificates will not be made available to Holders other than in certain limited circumstances. See "*Summary of Provisions Relating to the Preferred Securities in Global Form*".

**Listings:**

Application has been made to the UK Listing Authority for the Preferred Securities to be admitted to the Official List and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market which is a regulated market for the purposes of the Investment Services Directive.

Application has also been made to Euronext Amsterdam for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam.

**Ratings:**

The Preferred Securities are expected to be assigned, on issue ratings from Standard & Poor's Ratings Group, Moody's Investors Service and Fitch Ratings which will be contained in the Final Terms. A credit rating is not a recommendation to buy, sell or hold securities and may be subject to revision, suspension or withdrawal at any time by the relevant rating organisation.

**Governing Law:**

The Limited Partnership Agreement establishing the Issuer and the Preferred Securities will be governed by, and construed in accordance with, English law.

11

The Subordinated Guarantee will be governed by, and construed in accordance with, New York law.

**Final Terms:**

The following information will be contained in the Final Terms:

- Issue Price and Offer Price per Preferred Security;

- Aggregate Nominal Amount of Preferred Securities;

- Distribution Payment Dates;

- Distribution Rate;

- Closing Date;

- First Call Date of Subordinated Notes;

- Net Proceeds;

- Ratings;

- Names and addresses of Managers;

- Combined selling, management and underwriting commission;

- Total estimated expenses (including the commission);

- ISIN;

- Common Code; and

- WKN number.

## RISK FACTORS

*Prospective investors should carefully consider the following information in conjunction with the other information contained in this Base Prospectus. Capitalised terms used but not defined in this section shall bear the respective meanings ascribed to them under the "Description of the Preferred Securities".*

### Risk Factor relating to LBHI

LBHI is the ultimate parent company of the Lehman Brothers group. The Subordinated Guarantee will be solely LBHI's obligation and no other entity will have any obligation, contingent or otherwise, to make any payments in respect thereof. Because LBHI is a holding company whose primary assets consist of shares of stock or other equity interests in or amounts due from subsidiaries, almost all of its income is derived from those subsidiaries. LBHI's subsidiaries will have no obligation to pay any amount in respect of the Subordinated Guarantee or to make any funds available therefor. Accordingly, LBHI will be dependent on dividends and other distributions or loans from its subsidiaries to generate the funds necessary to meet obligations with respect to the Subordinated Guarantee. Due to covenants contained in certain of LBHI's debt agreements and regulations relating to capital requirements affecting certain of its more significant subsidiaries, the ability of certain subsidiaries to pay dividends and other distributions and make loans to LBHI is restricted. The notes to LBHI's financial statements included in its most recent annual report on Form 10-K set forth the amount of net assets of its subsidiaries that were restricted as to the payment of dividends to LBHI at 30 November 2005. Additionally, as an equity holder, LBHI's ability to participate in any distribution of assets of any subsidiary is subordinate to the claims of creditors of the subsidiary, except to the extent that any claims LBHI may have as a creditor of the subsidiary are judicially recognised. If these sources are not adequate, LBHI may be unable to make payments of principal or interest in respect of the Subordinated Guarantee, and a Holder could lose all or a part of its investment.

### Risk Factors relating to the Group

The financial condition and results of operations of the Group may be affected by uncertain or unfavourable economic, market, legal and other conditions. These conditions include but are not limited to:

#### *Market Risk*

Changes in interest and foreign exchange rates, financial instruments and real estate valuations and increases in volatility can increase credit and market risks and may also affect customer-flow-related revenues and proprietary trading revenues as well as affect the volume of debt and equity underwritings and merger and acquisition transactions.

#### *Competitive Environment*

All aspects of the Group's business are highly competitive. The Group's competitive ability depends on many factors, including its reputation, the quality of its services and advice, intellectual capital, product innovation, execution ability, pricing, sales efforts and the talent of its employees.

#### *Business Environment*

Concerns about geopolitical developments, oil prices and natural disasters, among other things, can affect the global financial markets. Accounting and corporate governance scandals in recent years have had a significant effect on investor confidence.

#### *Liquidity*

Liquidity and liquidity management are of critical importance in the Group's industry. Liquidity could be affected by the inability to access the long-term or short-term debt, repurchase or securities-lending markets or to draw under credit facilities, whether due to factors specific to the Group or to general market conditions. In addition, the amount and timing of contingent events, such as unfunded commitments and guarantees,

could adversely affect cash requirements and liquidity. To mitigate these risks, the liquidity and funding policies of the Group have been conservatively designed to maintain sufficient liquid financial resources to continually fund its balance sheet and to meet all expected cash outflows, for one year in a stressed liquidity environment.

### Credit Ratings

The Group's access to the unsecured funding markets is dependent on its credit ratings. A reduction in credit ratings could adversely affect the Group's access to liquidity alternatives and its competitive position, and could increase the cost of funding or trigger additional collateral requirements.

### Credit Exposure

Credit exposure represents the possibility that a counterparty will be unable to honour its contractual obligations. Although the Group actively manages credit exposure daily as part of its risk management framework, counterparty default risk may arise from unforeseen events or circumstances.

### Operational Risk

Operational risk is the risk of loss resulting from inadequate or failed internal or outsourced processes, people, infrastructure and technology, or from external events. The Group seeks to minimise these risks through an effective internal control environment.

### Legal, Regulatory and Reputational Risk

The securities and financial services industries are subject to extensive regulation under both federal and state laws in the US and under the laws of the many other jurisdictions in which the Group does business. The Group is also regulated by a number of self-regulatory organisations such as the National Association of Securities Dealers, the Municipal Securities Rulemaking Board and the National Futures Association, and by national securities and commodities exchanges, including the New York Stock Exchange. As of 1 December 2005, LBHI became regulated by the SEC as a consolidated supervised entity, and as such, LBHI are subject to group-wide supervision and examination by the SEC, and accordingly, LBHI are subject to minimum capital requirements on a consolidated basis. Violation of applicable regulations could result in legal and/or administrative proceedings, which may impose censures, fines, cease-and-desist orders or suspension of a firm, its officers or employees. The scrutiny of the financial services industry has increased over the past several years, which has led to increased regulatory investigations and litigation against financial services firms.

Legislation and rules adopted both in the US and around the world have imposed substantial new or more stringent regulations, internal practices, capital requirements, procedures and controls and disclosure requirements in such areas as financial reporting, corporate governance, auditor independence, equity compensation plans, restrictions on the interaction between equity research analysts and investment banking employees and money laundering.

The trend and scope of increased compliance requirements has increased costs necessary to ensure compliance. Our reputation is critical in maintaining our relationships with clients, investors, regulators and the general public, and is a key focus in our risk management efforts.

The Group is involved in a number of judicial, regulatory and arbitration proceedings concerning matters arising in connection with the conduct of its business, including actions brought against the Group and others with respect to transactions in which the Group acted as an underwriter or financial advisor, actions arising out of its activities as a broker or dealer in securities and actions brought on behalf of various classes of claimants against many securities firms and lending institutions, including the Group.

See Part I, Item 1A, Risk Factors, in the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2005 of LBHI filed with the SEC on Form 10-K for additional information about these and other risks inherent in our business.

**Risk Factors relating to the Preferred Securities**

*Risks Associated with LBHI's Financial Condition*

The Issuer is a newly established limited partnership with no previous operating history or revenues. It is expected that the Issuer's sole source of funds to pay Distributions on the Preferred Securities will be payments which it receives from its investments in Subordinated Notes (issued by LBHI), in Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets.

The rights of Holders shall be represented solely by the Preferred Securities and the Subordinated Guarantee, and under no circumstances will the rights of Holders be represented by the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets nor shall Holders be entitled to receive or hold the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes or any payments due in respect of the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets.

The Preferred Securities are guaranteed on a limited and subordinated basis by LBHI pursuant to the terms of the Subordinated Guarantee. Accordingly, if LBHI's financial condition were to deteriorate, the Holders may suffer direct and materially adverse consequences, including non-payment of Distributions on the Preferred Securities or of payments under the Subordinated Guarantee.

*Limitations to Remedies of Holders under the Subordinated Guarantee*

In the event that LBHI is in breach of its payment obligations under the Subordinated Guarantee, the terms of the Subordinated Guarantee do not confer rights in favour of the Holders to petition for the winding up of LBHI.

*Distributions are Discretionary and Not Cumulative*

Distributions on the Preferred Securities are not cumulative. The discretion of the General Partner to resolve that a Distribution should not be paid is unfettered. As set out in "Description of the Preferred Securities", Distributions on the Preferred Securities will be paid on each Distribution Payment Date out of interest received by the Issuer from its investment in the Partnership Assets and from other resources legally available, if any, and only if the General Partner has not published a No Payment Notice. If a No Payment Notice is published, the Holders will not be entitled to receive such Distributions (or any payment under the Subordinated Guarantee in respect of such Distributions) or have any claim in respect thereof. In certain circumstances the General Partner must publish a No Payment Notice.

*United States Federal Income Taxation of Holders*

There are certain US federal income tax implications associated with purchasing, owning and disposing of the Preferred Securities. This Base Prospectus contains a section entitled "Taxation - Certain United States Federal Income Tax Considerations" which addresses, among other things, the characterisation of the Issuer and the Subordinated Notes for US federal income tax purposes. The transactions described in this Base Prospectus are complex and characterisations other than those described in this Base Prospectus are possible. See "Taxation - Certain United States Federal Income Tax Considerations - Possible Re-characterisation". Any differing treatment arising from a re-characterisation could affect the amount, timing and character of income, gain or loss in respect of an investment in the Preferred Securities.

Investors are urged to consider the taxation section carefully even if they are not generally subject to taxation in the United States. The taxation section is of a general nature only and does not purport to be a complete analysis of all potential tax considerations relating to the Preferred Securities. Accordingly prospective investors should consult their own professional advisors concerning the possible tax consequences of purchasing, holding and/or selling Preferred Securities

### *Perpetual Nature of the Preferred Securities*

The Preferred Securities have no fixed final redemption date and Holders have no right to call for the redemption of the Preferred Securities. Although the General Partner may redeem the Preferred Securities in whole but not in part in certain circumstances, in each case at the Optional Redemption Price, there are limitations on the General Partner's ability to do so. Therefore, Holders should be aware that they may be required to bear the financial risks of an investment in the Preferred Securities for an indefinite period of time.

### *Substitution*

If a Trigger Event occurs and is continuing, the General Partner will, provided that (if required at such time) no relevant Supervisory Authority has objected, take all reasonable steps to cause the substitution of the Preferred Securities with depositary shares representing fully paid non-cumulative preferred stock issued directly by LBHI. A Trigger Event shall occur (a) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership, (b) if LBHI has capital adequacy levels which are less than the minimum capital adequacy levels which are imposed by the relevant Supervisory Authority or (c) if the relevant Supervisory Authority, in its sole discretion, informs LBHI that it will not meet its minimum capital requirement in the near term.

Although LBHI has undertaken that, in the event that the Preferred Securities are substituted by depositary shares representing Substituted Preferred Stock, LBHI will apply for admission to trading of the Substituted Preferred Stock on a regulated market for the purposes of the Investment Services Directive (outside the United States). However, there can be no assurance that a competent authority will agree to such admission of Substituted Preferred Stock. In addition, the tax treatment for holders of Substituted Preferred Stock may be different from that for Holders of the Preferred Securities.

### *No Limitation on Senior Debt*

The obligations of LBHI under the Subordinated Guarantee will rank junior as to payments to all liabilities to creditors of LBHI (including without limitation general creditors and subordinated debt holders excluding Parity Securities and Junior Share Capital) and claims of holders of senior ranking securities. In the event that LBHI is wound-up, liquidated or dissolved, the assets of LBHI would be available to pay obligations under the Subordinated Guarantee only after all payments have been made on such senior liabilities and claims. LBHI is not prohibited from issuing, guaranteeing or otherwise incurring further debt ranking *pari passu* with, or senior to, its obligations under the Subordinated Guarantee. The issue of any such debt may reduce the amount recoverable by Holders of the Preferred Securities under the Subordinated Guarantee. Accordingly, on the winding-up of LBHI and after payment of senior creditors, there may not be a sufficient amount to satisfy the amounts owing to the Holders of the Preferred Securities.

### *Absence of Prior Public Markets*

The Preferred Securities constitute a new issue of securities by the Issuer. Prior to this issue, there will have been no public market for the Preferred Securities. Although application has been made for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market and on Eurolist by Euronext Amsterdam, there can be no assurance that an active public market for the Preferred Securities will develop and, if such a market were to develop, the Managers are under no obligation to maintain such a market. The liquidity and the market prices for the Preferred Securities can be expected to vary with changes in market and economic conditions, the financial condition and prospects of LBHI and other factors that generally influence the market prices of securities.

## AVAILABLE INFORMATION

LBHI files annual, quarterly and current reports, proxy statements and other information with the Securities and Exchange Commission (the **SEC**). You may read and copy any document LBHI files with the SEC at the SEC's Public Reference Room at 100 F Street, NE, Washington, DC 20549. You may obtain information on the operation of the Public Reference Room by calling the SEC at +1 800 SEC 0330 (or +1 202 551 8090). The SEC maintains an internet site that contains annual, quarterly and current reports, proxy and information statements and other information regarding issuers that file electronically with the SEC. LBHI's electronic SEC filings are available to the public at http://www.sec.gov.

LBHI's public internet site is http://www.lehman.com. LBHI makes available free of charge through its internet site, via a link to the SEC's internet site at http://www.sec.gov, its annual report on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and amendments to those reports filed or furnished pursuant to Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended (the **Exchange Act**), as soon as reasonably practicable after it electronically files such material with, or furnishes it to, the SEC. LBHI also makes available through its internet site, via a link to the SEC's internet site, statements of beneficial ownership of LBHI's equity securities filed by its directors, officers, 10 per cent. or greater shareholders and others under Section 16 of the Exchange Act.

In addition, LBHI currently makes available on http://www.lehman.com its most recent annual report on Form 10-K, its quarterly reports on Form 10-Q for the current fiscal year, its most recent proxy statement and its most recent annual report to stockholders, although in some cases these documents are not available on that site as soon as they are available on the SEC's site.

Copies of the materials referred to in the preceding paragraphs, as well as copies of any current amendment or supplement to this Base Prospectus, may also be obtained from the persons set forth under "*Information Incorporated By Reference*".

## INFORMATION INCORPORATED BY REFERENCE

The following documents which have previously been published or are published simultaneously with this Base Prospectus and have been filed with the Financial Services Authority shall be incorporated in, and form part of, this Base Prospectus:

(a)    the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2004 of LBHI filed with the SEC on Form 10-K including the consolidated and unconsolidated financial statements (including the auditors' report thereon and notes thereto) of LBHI in respect of the years ended 30 November 2004 and 30 November 2003 (set out on pages 63 to 109 and F-l to F-15, respectively);

(b)    the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2005 of LBHI filed with the SEC on Form 10-K including the audited consolidated and unconsolidated financial statements (including the auditors' report thereon and notes thereto) of LBHI in respect of the years ended 30 November 2005 and 30 November 2004;

(c)    the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 28 February 2006 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 28 February 2006 (set out on pages 3 to 39);

(d)    the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 31 May 2006 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 31 May 2006 (set out on pages 3 to 40);

(e)    the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 31 August 2006 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 31 August 2006 (set out on pages 3 to 41);

(f)    the current report of LBHI pursuant to Section 13 or 15(d) of the Exchange Act filed with the SEC on Form 8-K on 14 December 2006 containing preliminary and unaudited financial results for the fiscal quarter and year ended 30 November 2006;

    Certain of the financial data set out in the Information Incorporated by Reference in items (a) to (f) above is not audited and is derived from Lehman Brothers' internal management and accounting records or publicly available information.

(g)    the LBHI notice of 2006 Annual Meeting of Stockholders and proxy statement dated 27 February 2006 (including the details relating to LBHI's board of directors, director independence, audit committee and shareholders set out on pages 1 to 39 thereof) (the **Proxy Statement**),

save that any statement contained in a document which is deemed to be incorporated by reference herein shall be deemed to be modified or superseded for the purpose of this Base Prospectus to the extent that a statement contained herein modifies or supersedes such earlier statement (whether expressly, by implication or otherwise). Any statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute part of this Base Prospectus.

Any documents themselves incorporated by reference in the documents deemed to be incorporated by reference herein shall not form part of this Base Prospectus.

The Issuer will provide, without charge, to each person to whom a copy of this Base Prospectus has been delivered, upon the oral or written request of such person, a copy of any or all of the documents which or portions of which are incorporated herein by reference. Written or oral requests for such documents should be directed to the Issuer at its specified offices below. In addition, such documents and copies of the Final Terms will be available without charge from the registered offices of the Issuer and the Paying Agents in

Amsterdam and London during usual business hours on any weekday (Saturdays and public holidays excepted).

## DESCRIPTION OF THE PREFERRED SECURITIES

*The Preferred Securities are limited partnership interests in the Issuer. The following description should be read in conjunction with, and is subject to the terms of, the Limited Partnership Agreement (as defined below), a copy of which is available for inspection as described under "General Information".*

### 1.    Definitions and Interpretation

In this description of the Preferred Securities, except to the extent that the context otherwise requires:

**Act** means the Limited Partnerships Act 1907, as amended and/or restated from time to time;

**Additional Amounts** means the additional amounts which may be payable by the Issuer in respect of the Preferred Securities as a result of the imposition of United Kingdom or United States withholding taxes as described in paragraph 6;

**Adverse Tax Effect** means the reduction, limitation or denial of any deduction, credit, partnership allocation, deferral, exemption or other relief granted or allowable (including for the avoidance of doubt the ability to surrender any of the foregoing under any consolidation provisions) under US or UK tax principles, as the case may be;

**Agency Agreement** means the agency agreement dated the Closing Date relating to the Preferred Securities between, *inter alios*, LBHI, the Registrar and the Paying and Transfer Agents;

**Business Day** means a day on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealing in foreign exchange and foreign currency deposits) in London and on which the TARGET System, or any successor thereto, is operating;

**Calculation Date**, in respect of any Distribution Payment Date, means the 20th Business Day before such Distribution Payment Date;

A **Capital Disqualification Event** shall occur if a change of the regulations, requirements, guidelines and policies of any relevant Supervisory Authority relating to capital adequacy of financial institutions in the jurisdiction of such Supervisory Authority results in the Preferred Securities or the Subordinated Notes no longer qualifying as regulatory capital pursuant to such regulations, requirements, guidelines and policies;

**Clearstream, Luxembourg** means Clearstream Banking, société anonyme or its successor;

**Closing Date** means the date specified as such in the Final Terms;

**Code** means the United States Internal Revenue Code of 1986;

**Distribution Payment Dates** means the date in each year specified as such in the Final Terms;

**Distribution Period** means the period from, and including, the Closing Date to, but excluding, the first Distribution Payment Date and each period thereafter from, and including, one Distribution Payment Date to, but excluding, the next Distribution Payment Date;

**Distribution Rate** means, in respect of a Distribution Period, the percentage rate determined pursuant to paragraph 2.2;

**Distributions** means the non-cumulative distributions in respect of the Preferred Securities as described under paragraph 2;

**Euroclear** means Euroclear Bank S.A./N.V. or its successor;

**Euro-zone** means the region comprised of the member states of the European Union that have adopted the single currency in accordance with the Treaty establishing the European Community (signed in Rome on 25 March 1957) as amended;

**Final Terms** means the Final Terms relating to the Preferred Securities, the format of which will be substantially as set out in the base prospectus relating to the Preferred Securities approved by the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000;

**First Call Date** means the date specified as such in the Final Terms;

**Further Distribution** means, if upon redemption of the Preferred Securities the Partnership Assets exceed 100 per cent. of the aggregate of the Preferred Capital Contribution and the capital contribution of the Preferential Limited Partner, in respect of each Preferred Security an amount calculated by the General Partner representing a *pro rata* share of 50 per cent. of any such excess. For the avoidance of doubt there is no obligation on the General Partner or any other person to invest the Partnership Assets in such a way as would guarantee the generation of a Further Distribution;

**GAAP** means, at any date or for any period, US generally accepted accounting principles as in effect on such date or for such period;

**General Partner** means LB GP No.1 Ltd. (incorporated in England and Wales with registered number 5355491), a wholly-owned Subsidiary of LBHI;

**Group** means LBHI and its Subsidiaries;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time;

**Initial Limited Partner** means The Bank of New York Depository (Nominees) Limited (incorporated in England and Wales with registered number 03227439);

**Invested Partnership Assets** means the Subordinated Notes or any Replacement Affiliate Investments and the Third Party Assets;

**Issuer** means Lehman Brothers UK Capital Funding IV LP;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to the Subordinated Guarantee and the Parity Securities;

**LBHI** means Lehman Brothers Holdings Inc. (incorporated in the State of Delaware) and its successors and assignees;

**Limited Partnership Agreement** means an agreement dated 3 January 2007 between, *inter alios*, the General Partner and the Preferential Limited Partner establishing the Issuer, as the same may be amended from time to time;

**Liquidation Distribution** means the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment, and (b) any Additional Amounts, in each case in cash only;

**Liquidation Preference** means the liquidation preference of €1,000 per Preferred Security;

**New Capital Amount** means, at any date, the net proceeds received from new issuances of LBHI common stock or perpetual deferrable preferred stock (whether in one or more public offerings or private placements) during the period commencing on the 90th day prior to such date and designated by LBHI's board of directors at or before the time of issuance as relevant for the purposes of the above financial tests in respect of the Preferred Securities;

**No Payment Notice** means a notice which is published pursuant to paragraph 2.4;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

21

**Parity Securities** means any non-cumulative preferred stock non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under the Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of the Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with the Subordinated Guarantee;

**Partnership Assets** means the assets of the Issuer including the Subordinated Notes or Replacement Affiliate Investments and the Third Party Assets;

**Paying and Transfer Agents** means the Principal Paying and Transfer Agent, The Bank of New York (Luxembourg), S.A., ING Bank N.V. and/or such other entities as are appointed by the General Partner on behalf of the Issuer and notified to the Holders as described under paragraph 10;

**Permitted Reorganisation** means a solvent reconstruction, amalgamation, reorganisation, merger or consolidation whereby all or substantially all of the business, undertaking and assets of LBHI are transferred to a successor entity which assumes all of LBHI's obligation under the Subordinated Guarantee;

**Preferential Limited Partner** means, on the Closing Date, LB Investment Holdings Ltd (incorporated in England and Wales with registered number 4385277), a wholly-owned Subsidiary of LBHI or any other Subsidiary of LBHI;

**Preferential Limited Partner Return** means, subject to payment of any Further Distribution, the excess received by the Issuer from Partnership Assets, over any amounts payable to the Holders;

**Preferred Capital Contribution** means, in relation to the Preferred Securities, the aggregate contribution to the assets of the Issuer (being a whole multiple of €1,000) paid in cash by the Holders and the Preferential Limited Partner;

**Preferred Securities** means the outstanding Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**ˢᴹ) of the Issuer, originally issued on the Closing Date, each such security representing an interest of a Holder in the Issuer attributable to the whole of each €1,000 of the Preferred Capital Contribution and including any further Preferred Securities of the Issuer of the same series issued after the Closing Date and ranking *pari passu* with the Preferred Securities as regards participation in the profits and assets of the Issuer and **Preferred Security** shall be construed accordingly;

**Principal Paying and Transfer Agent** means The Bank of New York or such other entity as is appointed by the General Partner on behalf of the Issuer and notified to the Holders as described in paragraph 10;

**Qualifying Regulatory Capital Securities** means securities which (a) qualify as regulatory capital for the purposes of the Supervisory Authority and (b) would be economically equivalent in all material aspects to the Preferred Securities;

**Rating Agency Event** means a change in the methodology employed by any nationally recognised statistical rating organisation within the meaning of Rule 15c3-1 under the Securities Exchange Act of 1934, as amended, that currently publishes a rating for LBHI or any of its subsidiaries (a **rating agency**) in assigning equity credit to securities such as the Preferred Securities, as such methodology is in effect on the Closing Date (the **current criteria**), which change results in a lower equity credit being assigned by such rating agency to the Preferred Securities as of the date of such change than the equity credit that would have been assigned to the Preferred Securities as of the date of such change by such rating agency pursuant to its current criteria;

**Redemption Date** means the date fixed for redemption under a notice given under paragraph 4.2, 4.3 or 4.5;

**Register** means the register of Holders maintained outside the United Kingdom on behalf of the Issuer;

**Registrar** means The Bank of New York (Luxembourg), S.A. or such other entity appointed by the Issuer and notified to the Holders as described under paragraph 10;

**Replacement Affiliate Investments** means

(a)    subordinated debt securities (other than the Subordinated Notes) that are issued or guaranteed by a member of the Group other than LBHI (but of a comparable rating to LBHI at the relevant time); or

(b)    provided that (if required) the relevant Supervisory Authority has not objected, such other instruments issued by a member of the Group other than LBHI (but of a comparable rating to LBHI at the relevant time),

*provided that* in both cases

(i)    the Replacement Affiliate Investments shall, in the event of their issuance, be debt for US federal income tax purposes; and

(ii)    neither the General Partner nor the Preferential Limited Partner shall be an obligor of the Replacement Affiliate Investments;

**Stock Exchanges** means the London Stock Exchange plc, Euronext Amsterdam N.V. and/or such other stock exchange approved by the General Partner on which the Preferred Securities may be listed from time to time;

**Subordinated Guarantee** means the subordinated guarantee in respect of the Preferred Securities executed by LBHI on the Closing Date;

**Subordinated Notes** means the Fixed Rate Subordinated Notes, originally issued on the Closing Date in the principal amount equal to the aggregate nominal amount of the Preferred Securities, by LBHI and held by the Issuer together with the Third Party Assets as initial partnership assets, or any Replacement Affiliate Investments which are held by the Issuer as part of the partnership assets thereafter;

**Subsidiary** means, in relation to any entity, any company (a) in which that entity holds a majority of the voting rights or (b) of which that entity is a member and has the right to appoint or remove a majority of the board of directors or (c) of which that entity is a member and controls a majority of the voting rights, and includes any company which is a Subsidiary of a Subsidiary of that entity;

**Substituted Preferred Stock** means fully-paid non-cumulative preferred stock issued directly by LBHI bearing a right to dividends calculated in the same manner as the Preferred Securities, having no voting rights (except as required by law) and being subject to optional redemption in the same manner as the Preferred Securities;

**Supervisory Authority** means the US Securities and Exchange Commission or any organisation or authority having supervisory responsibility for the prudential supervision of financial institutions engaged in regulated activities carried on by LBHI or its affiliates;

**Tangible Common Stockholders' Equity Amount** means, as of any quarter end and subject to adjustments described below, LBHI's common stockholders' equity minus identifiable intangible assets and goodwill, in each case as reflected on LBHI's consolidated GAAP balance sheet as of such quarter end and such that all financial terms used in this definition will be determined in accordance with GAAP as applied to and reflected in LBHI's consolidated financial statements as of the relevant dates or for the relevant periods, except (a) that LBHI's common stockholders' equity at any date will be adjusted to exclude extraordinary items, unusual items and infrequently occurring items as defined in APB 30, goodwill impairment as defined in Financial Accounting Standards Board Statements of Financial Accounting Standards (**SFAS**) No. 142 and amounts relating to discontinued operations as defined in SFAS No. 1244 and (b) as provided in the next sentence. If because of a change in GAAP that results in a cumulative effect of a change in accounting principle or a restatement, Tangible Common Stockholders; Equity Amount as of a fiscal quarter end is higher or lower than it would have been in the absence of such change, then, for purposes of the calculations described in paragraph 2.4, Tangible Common Stockholders Equity Amount will be calculated on a pro forma basis as if such change had not occurred;

**TARGET** means the Trans European Real-Time Gross Settlement Express Transfer (TARGET) System;

**TARGET Business Day** means a day on which TARGET is operating;

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United Kingdom, the United States, or any political subdivision of or by any authority therein or thereof having power to tax;

**Tax Event** means a UK Tax Event or a US Tax Event;

**Third Party Assets** means (a) cash or (b) debt securities of entities not affiliated with LBHI represented by instruments which (i) are debt for US federal income tax purposes; (ii) have a rating from Standard & Poor's and/or Moody's Investors Services or an internationally recognised rating agency that signifies investment grade; and (iii) in respect of any payment of interest and/or repayment of principal to a holder of such an instrument are not subject to any withholding or deduction for or on account of any tax;

**Trailing Two Quarters Consolidated Net Income Amount** means, for any fiscal quarter and subject to adjustments described below, the sum of LBHI's consolidated net income for the two fiscal quarters ending as of the last day of such fiscal quarter. Financial terms used in this definition will be determined in accordance with GAAP as applied to and reflected in LBHI's consolidated financial statements for the relevant periods, except (a) that LBHI's consolidated net income for any period will be adjusted to exclude extraordinary items, unusual items and infrequently occurring items as defined in APB 30, goodwill impairment as defined in Financial Accounting Standards Board Statements of Financial Accounting Standards (**SFAS**) No. 142 and amounts relating to discontinued operations as defined in SFAS No. 1244 and (b) as provided in the next sentence. If because of a change in GAAP that results in a cumulative effect of a change in accounting principle or a restatement, consolidated net income is higher or lower than it would have been in the absence of such change, then, for purposes of calculating the calculations described in paragraph 2.4, commencing with the fiscal quarter for which such change in GAAP becomes effective, such consolidated net income will be calculated on a pro forma basis as if such change had not occurred;

**Trigger Event** shall occur (a) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership, (b) if LBHI has capital adequacy levels which are less than the minimum capital adequacy levels which are imposed by the relevant Supervisory Authority or (c) if the relevant Supervisory Authority, in its sole discretion, informs LBHI that it will not meet its minimum capital requirement in the near term;

**UK Tax Event** means that, as a result of any change (each a **Relevant Change**) in, or prospective or actual amendment to, the laws of the United Kingdom or any political subdivision or authority thereof having power to tax, or any change in the application of such laws, or in the official or generally published interpretation of such laws (including the enactment of any legislation, any judicial decision or any regulatory determination in the UK), or any interpretation or pronouncement by any relevant tax authority that provides for a position with respect to such laws or regulations that differs from the previously generally accepted position in relation to similar transactions or which differs from any specific written confirmation given by a tax authority in respect of the Preferred Securities and/or the Subordinated Notes, which change or amendment becomes effective or is to take effect, on or after the Closing Date, there is more than an insubstantial risk that:

(a)     the Issuer or the General Partner would be subject to more than a *de minimis* amount of tax in respect of the Subordinated Notes or the Preferred Securities in the UK (except, in the case of the General Partner only, for any such tax that would arise as a result of (i) profits arising to it as a result of payments received by it from the Issuer or (ii) activities (if any) carried on by it other than those permitted or contemplated in the Limited Partnership Agreement in respect of the Subordinated Notes and the Preferred Securities);

(b)     payments to Holders (including payments in respect of the Preferred Securities and the Subordinated Guarantee) would be subject to deduction or to withholding of or on account of tax in the UK or would give rise to any obligation to account for any tax in the UK;

(c)     payments in respect of the Subordinated Notes would be subject to deduction or to withholding of or on account of tax in the UK or would give rise to any obligation to account for any tax in the UK; or

(d)    the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities have, or will have, an Adverse Tax Effect on the Issuer, LBHI, the General Partner, LBHI or any other company with which LBHI is grouped for UK tax purposes;

**US Tax Event** means that, as a result of (a) any amendment to, change in or announced proposed change in the laws (or any regulations thereunder whether in proposed, temporary or final form) of the United States or any political subdivision or taxing authority thereof or therein, (b) a judicial decision interpreting, applying or clarifying such laws or regulations, (c) an administrative pronouncement or action that represents an official position (including a clarification of an official position) of the governmental authority or regulatory body making such administrative pronouncement or taking such action, or (d) a threatened challenge asserted in connection with an audit of the Issuer, LBHI or the General Partner, or a threatened challenge asserted in writing against any other taxpayer that has raised capital through the issuance of securities similar to the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities, which amendment or change is adopted or which decision, pronouncement or proposed change is announced or on which action, clarification or challenge occurs on or after the date of the issuance of the Preferred Securities, there is more than an insubstantial risk that:

(i)    the Issuer is or would be subject to more than a *de minimis* amount of tax or similar assessments (including, for the avoidance of doubt, any withholding tax) in the United States;

(ii)   payments on the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities are or would be subject to deduction or to withholding of or on account of tax imposed by a governmental authority in the United States; or

(iii)  the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities have, or will have, an Adverse Tax Effect on the Issuer, the General Partner, LBHI or any other company with which LBHI is affiliated for US tax purposes.

In this description of the Preferred Securities any reference to a particular time shall, unless otherwise specified, be to Central European time.

## 2.    Distributions

2.1    Subject as provided in paragraphs 2.3 and 2.4, non-cumulative distributions (the **Distributions**) on the Preferred Securities will accrue from the Closing Date (or, in the case of any further preferred securities issued pursuant to paragraph 8.4, from their respective dates of issue) and shall be payable out of the Issuer's own legally available resources annually in arrear on each Distribution Payment Date.

2.2    Distributions will be payable at the Distribution Rate being the rate per annum specified in the Final Terms. Where Distributions are to be calculated in respect of any period, the applicable day count fraction will be the number of days in the relevant period from and including the date from which Distributions begin to accrue to but excluding the date on which they are payable divided by the number of days in the Distribution Period comprising the relevant period or in which the relevant period falls.

2.3    Subject to clause 2.4, Holders will be entitled to receive Distributions from the Issuer if it has received sufficient funds under the Partnership Assets.

2.4    Furthermore, notwithstanding the existence of such resources legally available for distribution by the Issuer, the Holders will not be entitled to receive Distributions if the General Partner has published a No Payment Notice in respect of such Distribution, in which case there will be no payment due under the Preferred Securities.

The General Partner will have the full discretion to publish the No Payment Notice in respect of any Distribution at any time and for any reason.

In addition, without limiting the discretion detailed above, the General Partner will deliver a No Payment Notice if:

- such payment will cause a Trigger Event;

- the Partnership Assets will not be sufficient to allow the Issuer to pay a full distribution when due; or

- in respect of the relevant Distribution Payment Date Distributions that would be payable on such date exceed the New Capital Amount if on the Calculation Date relative to such Distribution Payment Date:

    (x)    the Trailing Two Quarters Consolidated Net Income Amount is not a positive amount for the two-fiscal quarter period ending on the last day of the fiscal quarter that is two fiscal quarters prior to the most recently completed fiscal quarter before that Calculation Date; and

    (y)    the Tangible Common Stockholders' Equity Amount as of the end of the most recently completed fiscal quarter before that Calculation Date and as of the end of the fiscal quarter that is two quarters before that fiscal quarter has declined in each case by 10 per cent. or more as compared to the Tangible Common Stockholders' Equity Amount at the end of the "benchmark fiscal quarter" for that Distribution Payment Date, which is the sixth fiscal quarter preceding the most recently completed fiscal quarter before that Calculation Date.

2.5    No Holder shall have any claim in respect of any Distribution or part thereof not payable as a result of the limitation set out in paragraph 2.4. Accordingly, such amounts will not cumulate for the benefit of Holders or entitle the Holders to any claim in respect thereof against the Issuer or against LBHI under the Subordinated Guarantee.

2.6    Save as described above and in respect of a Further Distribution, Holders will have no right to participate in the profits of the Issuer or LBHI and in particular will have no rights to receive from the Issuer any amounts paid to the Issuer, amounts paid under the Partnership Assets or otherwise amounts in excess of Distributions due and payable under the Preferred Securities. In the event that any amounts received by the Issuer on the Partnership Assets, exceed the amount (if any) then due by way of Distribution under the Preferred Securities, the amount of such excess will be paid to the Preferential Limited Partner as and when they are received. Holders will have no rights in respect of such excess.

## 3.    Liquidation Distributions

3.1    In the event of the dissolution of the Issuer, the Holders will be entitled to receive the Liquidation Distribution, in respect of each Preferred Security held, out of the assets of the Issuer available for distribution to such Holders under the Act. Such entitlement will arise (a) before any payments due to the General Partner and the Preferential Limited Partner and (b) before any distribution of assets is made to the General Partner, but such entitlement will rank equally with the entitlement of the holders of all other preferred securities issued by the Issuer which rank *pari passu* with the Preferred Securities, if any.

3.2    After payment of all Liquidation Distributions, or the relevant proportion thereof if applicable, the General Partner will be entitled to any remaining assets of the Issuer representing proceeds of the sale or redemption of the Issuer's partnership assets and the Holders will have no right or claim to any of the remaining assets of the Issuer or LBHI. For the avoidance of doubt, Holders will have no right to receive the Partnership Assets.

3.3    Subject to the Act, other than in the events referred to in paragraphs 4.2, 4.3, 4.5, 4.8 and 5, the General Partner will not permit, or take any action that would or might cause, the liquidation or dissolution of the Issuer. No Holder shall have any claim (whether against the Issuer or LBHI) in

respect of any Liquidation Distribution or part thereof not paid when it would, but for the operation of this paragraph 3.3, otherwise have become due.

## 4.  Redemption, Purchases, Substitution and Variation

4.1   The Preferred Securities have no fixed final redemption date and Holders have no right to call for the redemption of the Preferred Securities. Any redemption is subject to the provisions of the Act.

4.2   If the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms, then if the redemption proceeds in respect thereof are not used to acquire Replacement Affiliate Investments, the Preferred Securities will also be redeemed, in whole but not in part, by the General Partner on the same date, each to be redeemed at the Optional Redemption Price.

4.3   If a Tax Event occurs and is continuing, the effect of which cannot be avoided by the Issuer, LBHI or the issuer of the Replacement Affiliate Investments, as the case may be, taking reasonable measures available to it or if the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed pursuant to their terms for tax reasons, then if they are not replaced by Replacement Affiliate Investments, the General Partner on the same date at its option may either (a) redeem the Preferred Securities in whole, but not in part, on the same date, each to be redeemed at the Optional Redemption Price or (b) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will be Qualifying Regulatory Capital Securities.

4.4   Prior to the publication of any redemption pursuant to paragraph 4.3, the General Partner shall deliver to the Registrar a certificate signed by two members of the board of directors of LBHI stating that the Issuer is entitled to effect such redemption and an opinion of counsel to LBHI experienced in such matters to the effect that a Tax Event has occurred and specifying which of the clauses as set out in the definition of "Tax Event" is applicable.

4.5   If a Rating Agency Event occurs and is continuing, the General Partner at its option may either (a) redeem the Preferred Securities in whole, but not in part, at the Optional Redemption Price or (b) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will be Qualifying Regulatory Capital Securities which, in either case, have the same equity credit (as such term is used in the definition of Rating Agency Event) as applied to the Preferred Securities before the Rating Agency Event.

4.6   Prior to the publication of any redemption pursuant to paragraph 4.5, the General Partner shall deliver to the Registrar a certificate signed by two members of the board of directors of LBHI stating that the Issuer is entitled to effect such redemption.

4.7   Any redemption or purchase of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time). As a result, the relevant Supervisory Authority when granting such a consent for the redemption or purchase of the Subordinated Notes and/or Replacement Affiliate Investments will also be granting their consent for any redemption or purchase of the Preferred Securities. The relevant Supervisory Authority may impose conditions on any such redemption or purchase.

4.8   All Preferred Securities which are redeemed will forthwith be cancelled and any Preferred Securities which are purchased may be cancelled. Any Preferred Securities cancelled accordingly may not be reissued or resold.

4.9   If a Capital Disqualification Event occurs and is continuing, the General Partner may substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities so that they become Qualifying Regulatory Capital Securities in accordance with applicable laws and regulations.

**5.    Substitution for Preferred Stock**

5.1    If a Trigger Event occurs, then, provided that (if required at such time) no relevant Supervisory Authority has objected, the General Partner shall take all reasonable steps to cause the substitution of the Preferred Securities by depositary shares representing Substituted Preferred Stock (the **Preferred Securities Substitution**) on the Substitution Date, as defined below.

As soon as reasonably practicable following the occurrence of a Trigger Event, the General Partner shall cause notice (the **Trigger Event Notice**) to be given to the Holders (in accordance with paragraph 10) and to the Stock Exchanges that the depositary shares representing Substituted Preferred Stock will be available from the date (the **Substitution Date**) specified in the Trigger Event Notice for the purpose.

Until such time as the Trigger Event Notice is given by the General Partner (in accordance with paragraph 10), Holders will continue to be entitled to receive Distributions and/or a Liquidation Distribution in respect of the Preferred Securities but thereafter Holders will have no further rights, title or interest in or to their Preferred Securities except to have them substituted in the manner and to the persons described below.

The Trigger Event Notice will contain a form of substitution confirmation (the **Preferred Securities Substitution Confirmation**) to be completed by each Holder (or, for so long as the Preferred Securities are registered in the name of a nominee of a common depositary for Euroclear and Clearstream, Luxembourg, by each accountholder named in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in the Preferred Securities). The form of Preferred Securities Substitution Confirmation shall also be made available at the offices of each Paying and Transfer Agent. To receive Substituted Preferred Stock in respect of its holding of Preferred Securities, a Paying and Transfer Agent must receive from the Holder (or such accountholder, as the case may be) a Preferred Securities Substitution Confirmation together with the certificate representing the relative holding of Preferred Securities or other evidence of entitlement satisfactory to the General Partner.

Each share of Substituted Preferred Stock allotted will rank for any dividend from the immediately preceding Distribution Payment Date but otherwise will have no entitlement to any accrued Distributions or any other payment in respect of the Preferred Securities.

Upon a Preferred Securities Substitution, each Holder (or, as the case may be, accountholder) shall receive in respect of each €1,000 Liquidation Preference of Preferred Securities, one depositary share representing Substituted Preferred Stock with a nominal amount of €1,000 (or its equivalent in US$).

No Preferred Securities Substitution will take place and the Holders will continue to hold their Preferred Securities and all their rights thereunder if prior to the Substitution Date, a winding-up of LBHI occurs.

*LBHI has undertaken that it will pay any taxes or capital duties or stamp duties payable in the UK arising on the allotment and issue of the depositary shares representing Substituted Preferred Stock. LBHI will not be obliged to pay, and each Holder (or, as the case may be, accountholder) delivering Preferred Securities and a duly completed Preferred Securities Substitution Confirmation to a Paying and Transfer Agent must pay, any other taxes, stamp duty reserves taxes and capital, stamp, issue and registration duties arising on the relevant Preferred Securities Substitution. LBHI will not be obliged to pay and each recipient must pay all, if any, taxes arising by reference to any disposal or deemed disposal of a Preferred Security in connection with such Preferred Securities Substitution.*

5.2    The General Partner will use all reasonable endeavours to procure that certificates (if any) for depositary shares representing Substituted Preferred Stock issued on a Preferred Securities Substitution will be despatched by mail free of charge (but uninsured and at the risk of the person entitled thereto) within one month after receipt of a duly completed Preferred Securities Substitution Confirmation.

## 6.  Additional Amounts and Characterisation

6.1  All payments in respect of the Preferred Securities by the Issuer will be made without withholding or deduction for, or on account of, any Tax, unless the withholding or deduction of such Tax is required by law. In that event, each Holder will be entitled to receive, as further distributions, such additional amounts (the **Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable in respect of the Preferred Securities in the absence of such withholding or deduction; except that no such Additional Amounts will be payable to a Holder (or to a third party on his behalf) with respect to any Preferred Security:

(a)  to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United Kingdom or the United States, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)  where the Holder is related to LBHI within the meaning of either section 871(h) or section 881(c) of the Code; or

(c)  where the Holder is a bank whose receipt of income from the Preferred Securities is (in whole or in part) pursuant to an extension of credit by the bank to LBHI in the ordinary course of its banking business within the meaning of section 881(c) of the Code; or

(d)  where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive; or

(e)  where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required,

and except that the Issuer's obligation to make any such payments is subject to the limitations provided in paragraphs 2 and 3.

6.2  By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Preferential Limited Partner, General Partner and LBHI agree, to treat the Issuer as a partnership for US federal income tax purposes and for US federal income tax purposes to treat the Preferred Securities as equity interests in such partnership and not as a direct interest in LBHI or in any other person.  In addition, by purchasing the Preferred Securities, each Holder agrees, and the Issuer, Preferential Limited Partner, General Partner and LBHI agree, to treat the Subordinated Notes as indebtedness for all US federal income tax purposes.

## 7.  Payments

7.1  Distributions will be payable in accordance with the Act on the relevant Distribution Payment Date (or where any Distribution Payment Date is not a TARGET Business Day on the next TARGET Business Day (without interest in respect of such delay)) to the Holders of record as they appear on the Register on the relevant record date, which will be five TARGET Business Days prior to the relevant Distribution Payment Date.

If the General Partner gives a notice of redemption pursuant to paragraph 4.2, 4.3 or 4.5 or in respect of the Preferred Securities, then on the relevant Redemption Date the General Partner shall procure that the Optional Redemption Price will be paid by the Registrar or by the Paying and Transfer Agents on behalf of the Issuer to the Holders. To the extent that a Further Distribution falls to be paid on redemption of the Preferred Securities it shall be paid together with the Optional Redemption Price. Upon such payment, all rights of Holders to participate in the assets of the Issuer or to be returned any amount in respect of the Preferred Securities (including the Preferred Capital Contribution (or any part

thereof) made by or on behalf of the Holders) will be extinguished and the Holders shall thereupon cease to be limited partners of the Issuer provided their holding of Preferred Securities is redeemed in accordance with the foregoing, and the Preferred Capital Contribution will, on payment of the Optional Redemption Price, be deemed repaid.

7.2     Subject to all applicable fiscal or other laws and regulations:

(a)     each payment in respect of Distributions will be made by cheque and mailed to the Holder of record at such Holder's address as it appears on the Register on the relevant record date for the Preferred Securities; and

(b)     any payment in respect of the Optional Redemption Price or the Liquidation Distribution in respect of any Preferred Security will be made by cheque against presentation and surrender of the relevant certificate of entitlement at the office of the Registrar or a Paying and Transfer Agent,

provided, however, that a Holder may receive such payment by direct transfer if appropriate direct transfer instructions have been received by the Registrar in sufficient time prior to the relevant date of payment. Holders will not be entitled to any interest or other payment for any delay after the due date in receiving the amount due if the due date is not a TARGET Business Day, if the Holder is late in surrendering certificates (if required to do so) or if a cheque mailed in accordance with this paragraph arrives after the due date for payment.

In the event that payment of the Optional Redemption Price in respect of any Preferred Security is improperly withheld or refused and not paid by the Issuer, Distributions on such Preferred Security, subject as described in paragraphs 2.3 and 2.4, will continue to accrue, from the relevant Redemption Date to the date of actual payment of such Optional Redemption Price.

7.3     The General Partner will, and LBHI has undertaken in the Subordinated Guarantee that it will procure that the General Partner will, maintain at all times whilst the Preferred Securities are outstanding (a) whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission, (b) a Registrar having its office outside the United Kingdom and (c) a Paying and Transfer Agent having a specified office in a European Union Member State other than the United Kingdom that will not be obliged to withhold or deduct tax pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive.

## 8.     Meetings

8.1     Except as described below and provided for in the Act, Holders will not be entitled to receive notice of, or attend or vote at, any meeting of partners in the Issuer or participate in the management of the Issuer.

8.2     The consent in writing of the Holders of at least a simple majority in Liquidation Preference of the outstanding Preferred Securities or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities, shall be required in order to give effect to any variation or abrogation of the rights, preferences and privileges of the Preferred Securities by way of amendment of the Limited Partnership Agreement or otherwise (unless otherwise provided in the terms of the Preferred Securities or as required by applicable law).

8.3     No such sanction shall be required if, as determined by the General Partner, the change is solely of a formal, minor or technical nature or is to correct an error or cure an ambiguity or which does not adversely affect the rights of Holders (provided that the change does not reduce the amounts payable to Holders, impose any obligation on the Holders or any modification of the terms of the Preferred Securities) in which case the General Partner shall be authorised to approve and implement such change.

8.4    Notwithstanding the foregoing, the General Partner may, without the consent or sanction of the Holders, take such action as is required in order to amend the Limited Partnership Agreement:

(a)    to allow an increase in the level of the Preferred Capital Contributions and the corresponding number of Preferred Securities; or

(b)    to authorise, create and issue one or more other series of securities or partnership interests in the Issuer ranking junior, as regards participation in the profits and assets of the Issuer, to the Preferred Securities and to admit, if relevant, new holders in respect thereof.

Thereafter the Issuer may, provided that the circumstances for non-payment of Distributions in paragraph 2.4 are not subsisting, without the consent of the Holders issue any such further securities either having the same terms and conditions as the Preferred Securities in all respects (or in all respects except for the first payment of Distributions on them) and so that such further issue shall be consolidated and form a single series with the Preferred Securities or upon such other terms as aforesaid. References herein to the Preferred Securities include (unless the context requires otherwise) any other securities issued pursuant to this paragraph and forming a single series with the Preferred Securities.

8.5    Notwithstanding the foregoing, no vote of the Holders will be required for the redemption, cancellation or substitution of the Preferred Securities or withdrawal of a Holder in accordance with the Limited Partnership Agreement.

8.6    The General Partner will cause a notice of any meeting at which Holders are entitled to vote and any voting forms to be mailed to each Holder. Each such notice will include a statement setting forth (a) the date, time and place of such meeting, (b) a description of any resolution to be proposed for adoption at such meeting on which such Holders are entitled to vote and (c) instructions for the delivery of proxies.

## 9.    Covenant of the General Partner

The General Partner undertakes not to incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interests in the Issuer, performing its obligations in respect of the Limited Partnership Agreement, maintaining the listing of the Preferred Securities and any other partnership interests in the Issuer (where applicable), the Register, the Registrar, the Paying and Transfer Agents and a listing agent in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the Issuer, the Issuer's holding of the partnership assets and any securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of a custodian therefor, the exercise of the Issuer's rights in respect of the partnership assets and any securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer.

## 10.    Notices

All notices to the Holders will be mailed to the Holder of record and in addition, if and for so long as the Preferred Securities are admitted to trading on the regulated market of a Stock Exchange, notices will be given in accordance with regulations relating to such admission. Any mailed notice shall be deemed to have been given one clear day after the date on which it was posted and any notice published in a newspaper shall be deemed to have been given on the date of publication or, if so published more than once or on different dates, on the date of the first publication.

## 11.    Transfers and Form

The Preferred Securities will be in registered form each with a Liquidation Preference of €1,000.

If definitive certificates are made available in respect of Preferred Securities they will be available from the Registrar and from each of the Paying and Transfer Agents, and will be posted to the relevant Holders at the address shown in the Register or, as applicable, in the relevant instrument of transfer within three Business

Days in London of issue, by uninsured post at the risk of such Holders. Transfers of Preferred Securities if represented by definitive certificates may be effected by presentation of the relevant certificate (with the transfer certificate attached thereto duly completed on behalf of the transferor and transferee) at the specified office of the Registrar or any Paying and Transfer Agent. Where a Holder transfers some only of the Preferred Securities represented by any such certificate he shall be entitled to a certificate for the balance without charge at the specified office of the Registrar or any Paying and Transfer Agent. All transfers of Preferred Securities by Holders must be effected in accordance with the Act and subject to the provisions of the Limited Partnership Agreement.

## 12.    Replacement of Certificates

If a certificate is damaged or defaced or alleged to have been lost, stolen or destroyed, a new certificate representing the same Preferred Securities may be issued on payment of such fee and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses as the General Partner may think fit and on payment of the costs of the General Partner incidental to its investigation of the evidence and, if damaged or defaced, on delivery up of the old certificate at the office of the Registrar or any Paying and Transfer Agent.

## 13.    Prescription

Claims against the Issuer for payment of Distributions and sums in respect of the Optional Redemption Price or Liquidation Distribution of the Preferred Securities will be prescribed in accordance with English law unless made within ten years from the date on which such payment becomes due or, if later, the date on which the Issuer makes such payment available to Holders.

## 14.    Governing Law and Jurisdiction

14.1    The Limited Partnership Agreement and the Preferred Securities shall be governed by, and construed in accordance with, English law.

14.2    The Guarantor agrees for the benefit of the Holders that the courts of England shall have jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with the Preferred Securities (respectively **Proceedings** and **Disputes**) and, for such purposes, irrevocably submits to the jurisdiction of such courts.

14.3    The Guarantor irrevocably waives any objection which it might now or hereafter have to the courts of England being nominated as the forum to hear and determine any Proceedings and to settle any Disputes, and agrees not to claim that any such court is not a convenient or appropriate forum.

14.4    LBHI agrees that the documents which start any Proceedings and any other documents required to be served in relation to those Proceedings may be served on it by being delivered to it at 25 Bank Street, London, E14 5LE, England or at any other address in Great Britain at which service of process may be served on it in accordance with Part XXIII of the Companies Act 1985. This paragraph 14 applies to Proceedings in England and to Proceedings elsewhere. If the appointment of the person mentioned in this paragraph 14.4 ceases to be effective, LBHI shall forthwith appoint a person in England to accept service of process on its behalf in England and notify the name and address of such person to the Principal Paying and Transfer Agent and, failing such appointment within fifteen days, any Holder shall be entitled to appoint such a person by written notice addressed to LBHI and delivered to the LBHI or to the specified office of the Principal Paying and Transfer Agent. Nothing in this paragraph shall affect the right of any Holder to serve process in any other manner permitted by law.

14.5    The submission to the jurisdiction of the courts of England shall not (and shall not be construed so as to) limit the right of any Holder to take Proceedings in any other court of competent jurisdiction, nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not) if and to the extent permitted by law.

### SUMMARY OF PROVISIONS RELATING TO THE PREFERRED SECURITIES IN GLOBAL FORM

**Initial Issue of Preferred Securities**

The Preferred Securities will be issued in registered form and will be initially represented by interests in a Global Certificate which will be deposited with The Bank of New York (the **Common Depositary**) as common depositary for Euroclear and Clearstream, Luxembourg. The Preferred Securities will be registered in the name of the Initial Limited Partner, as nominee for the Common Depositary. For so long as the Preferred Securities are deposited and registered as described above, book-entry interests in the Preferred Securities will be shown on, and transfers of such interests will be effected only through, records maintained by Euroclear and Clearstream, Luxembourg.

**Exchange**

If either or both of Euroclear and Clearstream, Luxembourg is or are closed for business for a continuous period of 14 days (other than for the purposes of a public holiday) or announces an intention permanently to cease business, then a number of Preferred Securities corresponding to its book-entry interest in the Preferred Securities represented by the Global Certificate held by the Common Depositary referred to above will, subject to such reasonable requirements as the General Partner may require, be transferred to each holder of an interest in the Preferred Securities whose name is notified by the Common Depositary to the Registrar. Each such holder will be registered as a Holder in the Register and registered with the Registrar at Companies House in Cardiff on the Limited Partnerships Register in accordance with the Act and will receive a certificate made out in its name. Other than in the circumstances referred to in this paragraph, definitive certificates will not be available to Holders.

**Accountholders**

So long as the Preferred Securities are registered in the name of a nominee for a common depositary for Euroclear and Clearstream, Luxembourg, the nominee for Euroclear and Clearstream, Luxembourg will be the sole registered owner or holder of the Preferred Securities represented by the Global Certificate for all purposes under the Limited Partnership Agreement. Except as set forth under "*Description of Preferred Securities – Transfers and Form*" and under "*Transfers of Interests*" below, the persons shown in the records of Euroclear, Clearstream, Luxembourg or any other clearing system as the holders of the Preferred Securities evidenced by the Global Certificate (each an **Accountholder**) will not be entitled to have Preferred Securities registered in their names, will not receive or be entitled to receive physical delivery of definitive certificates evidencing interests in the Preferred Securities and will not be considered registered owners or holders thereof under the Limited Partnership Agreement. Accordingly, each Accountholder must rely on the rules and procedures of Euroclear and Clearstream, Luxembourg, as the case may be, to exercise any rights and obligations of an investor in Preferred Securities.

**Payment**

Each Accountholder must look solely to Euroclear or Clearstream, Luxembourg, as the case may be, for its share of each payment made by the Issuer to the registered holder of the Preferred Securities and in relation to all other rights arising under the Global Certificate, subject to and in accordance with the respective rules and procedures of Euroclear or Clearstream, Luxembourg, as the case may be. Such persons shall have no claim directly against the Issuer in respect of payments due on the Preferred Securities for so long as the Preferred Securities are represented by the Global Certificate and such obligations of the Issuer will be discharged by payment to the registered holder of the Preferred Securities in respect of each amount so paid.

**Transfers of Interests**

Accountholders will only be able to transfer their beneficial interests in the Preferred Securities in accordance with the restrictions described under "*Description of Preferred Securities – Transfers and Form*" and the rules and procedures of Euroclear or Clearstream, Luxembourg, as the case may be.

## SUBORDINATED GUARANTEE

*The following is the Subordinated Guarantee substantially in the form to be executed by LBHI.*

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated [*Closing Date will be inserted here*], is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

### 1.   Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 3 January 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**SM) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are

entitled to the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

## 2.    Guarantee

2.1    Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2    All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

(a)    to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)    where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

(c)    where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

(d)    where the Holder would not have been entitled to Additional Amounts.

2.3    LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4    The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

(a)    the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

(b)    the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

(c)    any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms

of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

(d) the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e) any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f) the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5 This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6 A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7 LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8 LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9 Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a) junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b) *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c) senior to the Junior Share Capital of LBHI.

2.10 No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event

of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11    In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

**3.    Undertakings of LBHI**

3.1    LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2    Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)    declare or pay any dividend on its shares of common stock; or

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3    LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)    unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)    the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

**4.    Termination**

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)    full payment of the Optional Redemption Price;

(b)    purchase and cancellation of all Preferred Securities;

(c)    dissolution of the Issuer; or

(d)    if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

**5.    Transfer; Amendment; Notices**

5.1    Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2    Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3    Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:   Corporate Counsel
Facsimile:   (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4    This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

**6.      Governing Law**

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor


By: _____
        Name:
        Title:

**USE OF PROCEEDS**

The net proceeds of the issue of the Preferred Securities which will be set out in the Final Terms will augment the capital base of LBHI. The Issuer will use the net proceeds of the issue of the Preferred Securities to subscribe for the Partnership Assets.

## LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

**Introduction**

The Issuer was registered in England and Wales on 3 January 2007 under the Limited Partnerships Act 1907, with LB GP No. 1 Ltd. as the general partner (in such capacity, the **General Partner**) and LB Investment Holdings Ltd as the preferential limited partner (the **Preferential Limited Partner**). The General Partner, the Preferential Limited Partner and BNYD have, *inter alios*, entered into a limited partnership agreement on 3 January 2007 (the **Limited Partnership Agreement**) for the purpose of establishing the Issuer. Pursuant to the Limited Partnership Agreement, it is intended that BNYD, as the nominee company of the common depositary for Euroclear and Clearstream, Luxembourg will become a limited partner (i.e. the Initial Limited Partner) of the Issuer with effect from the Closing Date. The Issuer is not a legal entity separate from its partners and has no subsidiaries. The Limited Partnership Agreement does not create a trust relationship between any of the partners. The Issuer will be dissolved upon redemption of the Preferred Securities. The Issuer's registered office is 25 Bank Street, London E14 5LE. It has no telephone number.

The General Partner, incorporated with limited liability in England and Wales with registered number 5355491 is a wholly-owned subsidiary of LBHI and is the sole general partner of the Issuer. The General Partner's registered office is 25 Bank Street, London E14 5LE. As such, the General Partner solely manages the Issuer (subject to the appointment by the Issuer of the Administrator as described below). The Issuer is a wholly controlled subsidiary undertaking of the General Partner. The General Partner fulfils a similar function for Lehman Brothers UK Capital Funding I LP, Lehman Brothers UK Capital Funding II LP and Lehman Brothers UK Capital Funding III LP. The duties to and functions of the General Partner are contained in the Limited Partnership Agreement. None of such duties or functions give rise to any potential conflict of interest between duties owed to the Issuer and any other interests of the General Partner. LBHI will undertake in the Subordinated Guarantee to ensure that, unless otherwise approved by a simple majority of the Holders, the General Partner will at all times be either LBHI itself or a directly or indirectly wholly-owned subsidiary of LBHI.

The board of Directors of the General Partner comprises:

| Name | Function | Principal outside activities |
|---|---|---|
| Paolo Tonucci | Director | Director of Lehman Brothers Holdings plc |
| Dave Rushton | Director | Director of Lehman Brothers Holdings plc |
| Antony Rush | Director | |

For the purposes of this document, the business address of each of the Directors of the General Partner is 25 Bank Street, London E14 5LE. There are no potential conflicts of interest between the duties of the Directors of the General Partner to the Issuer and their private interests and/or other duties.

The Preferential Limited Partner, incorporated with limited liability in England and Wales with registered number 4385277 is a wholly-owned Subsidiary of LBHI. The Preferential Limited Partner shall be entitled to receive all amounts received by the Issuer from its investment in the Subordinated Notes or Replacement Affiliate Investments (each as defined herein under **Description of the Preferred Securities**), as the case may be, in excess of those required to make payments in respect of the Preferred Securities.

Provided that they do not become involved with the administration of the limited partnership, and subject to compliance with the provisions of the Act, the liability of persons registered as limited partners of the Issuer pursuant to the Act for the debts or obligations of the limited partnership will be limited to the amount of partnership capital which they have contributed or agreed to contribute to the partnership, i.e. €1,000 per Preferred Security.

No financial statements of the Issuer have yet been prepared. The first financial statements of the Issuer are expected to be prepared for the period ending 30 November 2007. Thereafter, it is intended that the Issuer will prepare audited annual financial statements. It is not intended that the Issuer will publish interim financial statements.

## Activity

The business of the Issuer is generally to raise finance for the Group and is more particularly described in the Limited Partnership Agreement. The Issuer has carried out no operations since its registration other than in relation to the creation of the Preferred Securities. The capital contributions to be made by the partners will be used by the Issuer to subscribe for the Subordinated Notes and the Third Party Assets.

## Administration

For UK regulatory purposes, the Issuer will be operated by the General Partner or, insofar as the General Partner is not so authorised, by an administrator (the **Administrator**) authorised by the Financial Services Authority under the Financial Services and Markets Act 2000 (the **FSMA**) to establish, operate and wind-up collective investment schemes. The registered office of the Issuer and the General Partner is 25 Bank Street, London E14 5LE. Neither the Initial Limited Partner nor any Holder may participate in the administration of the Issuer.

The General Partner has agreed to contribute capital from time to time to the extent required for the Issuer to meet any operating expenses which it may have. The General Partner has also agreed that it will at all times maintain sole ownership, whether directly or indirectly, of its general partner interest in the Issuer, subject to the terms of the Limited Partnership Agreement. The Limited Partnership Agreement provides that all of the Issuer's business and affairs will be conducted by the General Partner save for those operational matters required to be performed by an Administrator under the FSMA. The General Partner will have unlimited liability for the debts and obligations of the Issuer to the extent that these cannot be satisfied out of partnership assets.

If the Issuer is dissolved, the Limited Partnership Agreement provides that the General Partner will only be entitled to any assets of the Issuer remaining after (i) all debts and other liabilities of the Issuer have been satisfied in full and (ii) the full Liquidation Preference to which the Holders are entitled and all other amounts to which the holders of any other partnership interests are entitled have been paid to, or irrevocably set aside for, such holders.

## Capitalisation

In addition to the initial capital contribution by the General Partner of €1, the initial capital contribution of €12,500,000 of the Preferential Limited Partner (such initial capital contribution to be supplemented on the Closing Date by such other amount as is necessary in order that the initial capital contribution of the Preferential Limited Partner amounts to 5 per cent. of the aggregate nominal amount of the Preferred Securities) and the preferred capital contribution equating to the aggregate nominal amount of the Preferred Securities to be made by the Initial Limited Partner in relation to the Preferred Securities on the date of issue of the Preferred Securities and such other capital contributions as may be made by the General Partner from time to time to meet certain operating expenses of the partnership, the General Partner may accept additional limited partners and additional capital contributions to the Issuer in accordance with the provisions of the Limited Partnership Agreement. Limited partnerships do not have share capital.

## Indebtedness

Since the date of its registration, the Issuer has not had any loan capital outstanding, has not incurred any borrowings, has had no contingent liabilities, has not granted any guarantees and does not intend to have outstanding any such loan capital, incur any such borrowings, have any such contingent liabilities or grant any such guarantees other than in connection with the issue of the Preferred Securities and other partnership interests in the Issuer. The General Partner has undertaken in the Limited Partnership Agreement not to incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interests in the Issuer, performing its obligations in respect of the Limited Partnership Agreement, maintaining the listings of the Preferred Securities, the Register, the Registrar, the Paying and Transfer Agents and listing agents in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the

Issuer, the Issuer's holding of the partnership assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of any custodian therefor, the exercise of the Issuer's rights in respect of the partnership assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer.

# LEHMAN BROTHERS HOLDINGS INC.

## Information about LBHI

Lehman Brothers Holdings Inc., a Delaware corporation, was incorporated on 29 December 1983, for an indefinite term, pursuant to the General Corporation Law of the State of Delaware, USA, with registration number 2024634. LBHI and its subsidiaries are collectively referred to as "Lehman Brothers". LBHI's executive offices are located at 745 Seventh Avenue, New York, New York 10019, USA, and its telephone number is + 1 212 526 7000. The common stock of LBHI is listed on the New York Stock Exchange under the symbol "LEH".

The stated legal purpose of LBHI is to engage in any lawful act or activity for which corporations may be organised under the General Corporation Law of the State of Delaware (as set out in article 3 of LBHI's Restated Certificate of Incorporation).

To the best of LBHI's knowledge, it is in material compliance with the applicable corporate governance regimes in the United States of America.

## Business Overview

Lehman Brothers, an innovator in global finance, serves the financial needs of corporations, governments and municipalities, institutional clients and individuals worldwide. Lehman Brothers provides a full array of equities and fixed income sales, trading and research, investment banking services and investment management and advisory services. Its global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers, through predecessor entities, was founded in 1850.

Through its subsidiaries, Lehman Brothers is a global market-maker in all major equity and fixed income products. To facilitate its market-making activities, Lehman Brothers is a member of all principal securities and commodities exchanges in the United States, as well as NASD, Inc., and it holds memberships or associate memberships on several principal international securities and commodities exchanges, including the London, Tokyo, Hong Kong, Frankfurt, Paris, Milan and Australian stock exchanges.

Lehman Brothers' principal business activities are investment banking, capital markets and investment management. Through its investment banking, trading, research, structuring and distribution capabilities in equity and fixed income products, Lehman Brothers continues to build on its client flow business model, which is based on its principal focus of facilitating client transactions in all major global capital markets products and services. Lehman Brothers generates client flow revenues from institutional, corporate, government and high-net-worth customers by (i) advising on and structuring transactions specifically suited to meet client needs; (ii) serving as a market maker and/or intermediary in the global marketplace, including having securities and other financial instrument products available to allow clients to adjust their portfolios and diversify risks across different market cycles; (iii) providing investment management and advisory services; and (iv) acting as an underwriter to clients. As part of its client flow activities, Lehman Brothers maintains inventory positions of varying amounts across a broad range of financial instruments. In addition, Lehman Brothers also takes proprietary trading and investment positions. The financial services industry is significantly influenced by worldwide economic conditions as well as other factors inherent in the global financial markets. As a result, revenues and earnings may vary from quarter to quarter and from year to year. Lehman Brothers believes its client flow orientation helps to mitigate overall revenue volatility.

Lehman Brothers operates in three business segments: Investment Banking, Capital Markets and Investment Management. Financial information concerning Lehman Brothers for the fiscal years ended 30 November 2005 and 2004, including the amount of net revenues contributed by each segment in such periods, is set forth in the Consolidated Financial Statements and Notes thereto which are incorporated by reference in this Base Prospectus.

Lehman Brothers is engaged primarily in providing financial services. Other businesses in which Lehman Brothers is engaged represent less than 10 per cent. of each of consolidated assets, revenues and pre-tax income.

## Organisational Structure

LBHI is the ultimate parent company of the Lehman Brothers group. Since LBHI is primarily a holding company, its cash flow and consequent ability to satisfy its obligations under the Subordinated Guarantee are dependent upon the earnings of its subsidiaries and dividends or other distributions of those earnings or loans or other payments by those subsidiaries to LBHI. LBHI's subsidiaries will have no obligation to pay any amount in respect of the Subordinated Guarantee or to make any funds available therefor. Several of LBHI's principal subsidiaries are subject to various capital adequacy requirements promulgated by the regulatory, banking and exchange authorities of the countries in which they operate and/or to capital targets established by various ratings agencies. The requirements referred to above, and certain covenants contained in various debt agreements, may restrict LBHI's ability to withdraw capital from its subsidiaries by dividends, loans or other payments. Additionally, the ability of LBHI to participate as an equity holder in any distribution of assets of any subsidiary is generally subordinated to the claims of creditors of the subsidiary.

As disclosed in the "*Information Incorporated by Reference*", Lehman Brothers is involved in a number of judicial, regulatory and arbitration proceedings concerning matters arising in connection with the conduct of its business, including actions brought against Lehman Brothers and others with respect to transactions in which Lehman Brothers acted as an underwriter or financial advisor, actions arising out of its activities as a broker or dealer in securities and actions brought on behalf of various classes of claimants against many securities firms and lending institutions, including Lehman Brothers. Although there can be no assurance as to the ultimate outcome, Lehman Brothers generally has denied, or believes it has a meritorious defense and will deny, liability in all significant cases pending against it, including the matters described in the "*Documents Incorporated by Reference*", and it intends to defend vigorously each such case. Based on information currently available, Lehman Brothers believes the amount, or range, of reasonably possible losses in connection with the actions against it, including the matters described in the "*Documents Incorporated by Reference*", in excess of established reserves, in the aggregate, not to be material to Lehman Brothers' consolidated financial condition or cash flows. However, losses may be material to Lehman Brothers' operating results for any particular future period, depending on the level of its income for such period.

## Management

### Board of Directors of LBHI

Set forth below are the names, the principal occupations and functions within LBHI and principal outside activities of the current members of the board of directors of LBHI, each of whose business address in their capacity as a director is at LBHI's principal place of business:

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|---|---|---|
| Richard S. Fuld, Jr. | Chairman and Chief Executive Officer of LBHI | Serves on the Board of Directors of the Federal Reserve Bank of New York, Trustee of the Mount Sinai Medical Center and is on the Board of Directors of The Mount Sinai Children's Center Foundation, member of the Executive Committee of the Board of Directors of The Partnership for New York City, member of the Business Roundtable and The Business Council, serves on the Board of Trustees of Middlebury College. |

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|---|---|---|
| Michael L. Ainslie | Private Investor and Former President and Chief Executive Officer of Sotheby's Holdings. Serves as member of the Audit Committee of LBHI | Director of St. Joe Company and Lehman Brothers Bank, FSB, Trustee of Vanderbilt University, Chairman of the Posse Foundation, Inc. and Director of the US Tennis Association Foundation. |
| John F. Akers | Retired Chairman of International Business Machines Corporation. Serves as Chairman of the Compensation and Benefits Committee and as a member of the Finance Committee of LBHI | Director of W. R. Grace & Co., The New York Times Company and PepsiCo, Inc. |
| Roger S. Berlind | Theatrical Producer. Serves as a member of the Audit Committee and the Finance Committee of LBHI | Theatrical producer and principal of Berlind Productions and Governor of the League of American Theatres and Producers. |
| Thomas H. Cruikshank | Retired Chairman and Chief Executive Officer of Halliburton Company. Serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee of LBHI | Director of Lehman Brothers Inc. |
| Marsha Johnson Evans | Rear Admiral, US Navy (Retired). Serves as Chairman of the Nominating and Corporate Governance Committee and as a member of the Finance Committee of LBHI | Director of Office Depot, Inc., Weight Watchers International Inc. and Huntsman Corporation, serves on the Advisory Board of the Pew Partnership for Civic Change, a project of the Pew Charitable Trusts, Director of the Naval Academy Foundation and a Presidential Appointee to the Board of Visitors of the United States Military Academy at West Point. |
| Sir Christopher Gent | Non-Executive Chairman of GlaxoSmithKline plc. Serves as a member of the Audit Committee and the Compensation and Benefits Committee of LBHI | Director of Ferrari SpA and a Senior Advisor to Bain & Company, Inc. |
| Roland A. Hernandez | Retired chairman and Chief Executive officer of Telemundo Group, Inc. Serves as a member of the Finance Committee of LBHI | Director of MGM Mirage, The Ryland Group, Inc., Vail Resorts, Inc. and Wal-Mart Stores, Inc. Serves on advisory boards for Harvard University's David Rockefeller Center for Latin American Studies and Harvard Law School, as well as the board of Yale University's President's Council on International Activities. Dean's advisory board member for the University of Southern California's Annenberg School for Communication. |

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|------|------|------|
| Henry Kaufman | President of Henry Kaufman & Company, Inc. Serves as Chairman of the Finance Committee of LBHI | Member (and the Chairman Emeritus) of the Board of Trustees of the Institute of International Education, a Member of the Board of Trustees of New York University, a Member (and the Chairman Emeritus) of the Board of Overseers of the Stern School of Business of New York University, a Member of the Board of Trustees of the Animal Medical Center, a Member of the International Advisory Committee of the Federal Reserve Bank of New York, a Member of the Advisory Committee to the Investment Committee of the International Monetary Fund Staff Retirement Plan, a Member of the Board of Governors of Tel-Aviv University and Treasurer (and former Trustee) of The Economic Club of New York. |
| John D. Macomber | Principal of JDM Investment Group. Serves as a member of the Compensation and Benefits Committee, the Executive Committee and the Nominating and Corporate Governance Committee of LBHI | Director of AEA Investors Inc., Mettler-Toledo International and Warren Pharmaceuticals, Inc. Chairman of the Council for Excellence in Government and Vice Chairman of the Atlantic Council, Director of the National Campaign to Prevent Teen Pregnancy and a Trustee of the Carnegie Institution of Washington and the Folger Library. |

Except as disclosed in the sections headed "Independence" and "Certain Transactions and Agreements with Directors and Executive Officers" in the Proxy Statement, there are no potential conflicts of interest between any duties of the directors to LBHI and their private interests or other duties.

**Executive Officers of LBHI**

| | |
|------|------|
| Richard S. Fuld, Jr. | Chairman and Chief Executive Officer |
| Scott Freidheim | Co-Chief Administrative Officer |
| Joseph M. Gregory | President and Chief Operating Officer |
| Ian Lowitt | Co-Chief Administrative Officer |
| Christopher M. O'Meara | Chief Financial Officer |
| Thomas A. Russo | Chief Legal Officer |

**Interim Financial Data**

On 14 December 2006, LBHI reported net income of US$1.0 billion, or US$1.72 per common share (diluted), for the fourth fiscal quarter ended 30 November 2006. This compares with net income of US$823 million, or US$1.38 per common share (diluted), in the fourth quarter of fiscal 2005. Revenues and net revenues for LBHI for the fourth fiscal quarter ended 30 November 2006, were US$13.160 billion and US$4.533 billion, respectively, compared with US$9.055 billion and US$3.690 billion for the fourth fiscal quarter ended 30 November 2005.

For the full year of fiscal 2006, LBHI reported net income of US$4.007 billion, or US$6.81 per common share (diluted), compared with US$3.260 billion, or US$5.43 per common share (diluted), for the fiscal year ended 30 November 2005. Revenues and net revenues for LBHI for the fiscal year ended 30 November 2006, were US$46.709 billion and US$17.583 billion, respectively, compared with US$32.420 billion and US$14.630 billion for the fiscal year ended 30 November 2005.

These results are preliminary and unaudited For more detailed information, see LBHI's Current Report on Form 8-K filed with the US Securities and Exchange Commission on 14 December 2006.

## CONSOLIDATED STOCKHOLDERS' EQUITY OF LBHI

All of the financial information below is extracted without material adjustment from the unaudited consolidated financial statements of LBHI included in LBHI's Quarterly Report on Form 10-Q for the quarter ended 31 August 2006 filed with the SEC. The following table sets forth the consolidated capitalisation of LBHI and its subsidiaries as of 30 November 2005 and 31 August 2006[1]:

|  | At 31 August 2006 | At 30 November 2005 |
|---|---|---|
|  | *(US$ millions)* | |
| **Stockholders' equity:** | | |
| Preferred Stock: ...................................................... | 1,095 | 1,095 |
| Common Stock: $0.10 par value ........................................... | | |
| Shares authorised: 1,200,000,000 in 2006 and 2005 ........................... | | |
| Shares issued: 608,845,822 in 2006 and 605,337,946 in 2005[2] ................... | | |
| Shares outstanding: 530,296,514 in 2006 and 542,874,206 in 2005 .................. | 61 | 61 |
| Additional paid-in capital........................................... | 8,941 | 6,283 |
| Accumulated other comprehensive income (loss), net of tax .................. | (17) | (16) |
| Retained earnings ....................................................... | 14,938 | 12,198 |
| Common stock held in RSU trust ....................................... | (1,743) | (1,510) |
| Other stockholders' equity, net........................................ | - | 2,275 |
| Common stock in treasury, at cost: 78,549,308 shares in 2006 and 62,463,740 shares in 2005 .............................................. | (4,879) | (3,592) |
| Total common stockholders' equity ...................................... | 17,301 | 15,699 |
| Total stockholders' equity.............................................. | 18,396 | 16,794 |

_____

Notes:

1.    There has been no material change in the capitalisation of LBHI since 31 August 2006. For more information about LBHI's common stock and preferred stock, see the Notes to Consolidated Financial Statements included in LBHI's Annual Report on Form 10-K for the 12 months ended 30 November 2005

2.    All shares issued are fully paid and non-assessable.

## SUMMARY CONSOLIDATED FINANCIAL INFORMATION OF LBHI

The following table sets forth selected consolidated financial information on LBHI as of the dates and for the periods indicated. The selected consolidated financial information as of and for the 12 month periods ended 30 November, 2005 and 2004 are extracted without material adjustment from the audited consolidated financial statements of LBHI included or incorporated by reference in LBHI's Annual Report on Form 10-K for the 12 month period ended 30 November 2005 or 2004 filed with the SEC and the selected consolidated financial information as of and for the 9 month periods ended 31 August 2006 and 2005 are extracted without material adjustment from the unaudited consolidated financial statements of LBHI included or incorporated by reference in LBHI's quarterly report on Form 10-Q for the period ended 31 August 2006 or 2005 filed with the SEC.

### Statement of Income Data

| | Year ended 30 November 2005 | Year ended 30 November 2004 | Nine months ended 31 August 2006 | Nine months ended 31 August 2005 |
|---|---|---|---|---|
| | *(In US$ millions)* | | | |
| **Revenues:** | | | | |
| Principal transactions | 7,811 | 5,699 | 7,183 | 5,924 |
| Investment banking | 2,894 | 2,188 | 2,302 | 2,077 |
| Commissions | 1,728 | 1,537 | 1,623 | 1,252 |
| Interest and dividends | 19,043 | 11,032 | 21,386 | 13,416 |
| Other | 944 | 794 | 1,055 | 696 |
| Total revenues | 32,420 | 21,250 | 33,549 | 23,365 |
| Interest expense | 17,790 | 9,674 | 20,499 | 12,425 |
| Net revenues | 14,630 | 11,576 | 13,050 | 10,940 |
| **Non-Interest Expenses:** | | | | |
| Compensation and benefits | 7,213 | 5,730 | 6,434 | 5,415 |
| Other expenses | 2,588 | 2,328 | 2,200 | 1,913 |
| **Total non-interest expenses** | 9,801 | 8,058 | 8,634 | 7,328 |
| Income before taxes, dividends on trust preferred securities and cumulative effect of accounting change | 4,829 | 3,518 | 4,416 | 3,612 |
| Provision for income taxes | 1,569 | 1,125 | 1,460 | 1,175 |
| Dividends on trust preferred securities | 0 | 24 | 0 | 0 |
| Net income | 3,260 | 2,369 | 3,003 | 2,437 |
| Net income applicable to common stock | 3,191 | 2,297 | 2,954 | 2,383 |
| **Earnings per common share (diluted):** | 5.43 | 3.95 | 5.09 | 4.05 |

**Balance Sheet Data**

|  | *At 30 November 2005* | *At 30 November 2004* | *At 31 August 2006* |
|---|---|---|---|
|  | *(in US$ millions)* | | |
| Total assets ......................................................................... | 410,063 | 357,168 | 473,737 |
| Net assets[1] ......................................................................... | 211,424 | 175,221 | 239,424 |
| Short-term borrowings and current portion of long-term borrowings ................................................................... | 11,351 | 9,978 | 18,238 |
| Long-term debt ................................................................... | 53,899 | 49,365 | 74,034 |
| Total liabilities .................................................................. | 393,269 | 342,248 | 455,341 |
| Total stockholders' equity .................................................. | 16,794 | 14,920 | 18,396 |
| Total long-term capital[2] .................................................... | 70,693 | 64,285 | 92,430 |

Notes:

1. Net assets represent total assets excluding: (1) cash and securities segregated and on deposit for regulatory and other purposes, (2) securities received as collateral, (3) securities purchased under agreements to resell, (4) securities borrowed and (5) identifiable intangible assets and goodwill. LBHI believes net assets is a measure more useful to investors than total assets when comparing companies in the securities industry because it excludes certain assets considered to have a low-risk profile and identifiable intangible assets and goodwill. Net assets as presented are not necessarily comparable to similarly-titled measures provided by other companies in the securities industry because of different methods of calculation.

2. Total long-term capital includes long-term borrowings (excluding any borrowings with remaining maturities of less than twelve months) and total stockholders' equity. LBHI believes total capital is useful to investors as a measure of its financial strength.

## TAXATION

### UNITED KINGDOM

*The following is a summary of certain UK taxation considerations relevant to persons who purchase, own and dispose of Preferred Securities. This summary addresses only the taxation consequences to holders that acquire Preferred Securities pursuant to the offering at the initial offering price and does not apply to certain classes of holders such as dealers, financial traders and certain persons who are exempt from UK taxation on their income.*

*This summary does not address the position of persons who are resident in the UK or have some connection with the UK beyond the holding of Preferred Securities.*

***This summary is for general information only based on law and practice at the date hereof in the UK and is not exhaustive. Prospective investors are advised to consult with their own taxation advisers as to the taxation consequences of the purchase, ownership and disposition of Preferred Securities, including the effect of tax laws in countries other than the UK.***

### Distributions on the Preferred Securities

On the basis that the Issuer is treated for the purposes of UK taxation as a partnership, payments of Distributions on Preferred Securities may be made without withholding for or on account of UK taxation.

### Stamp Duty and Stamp Duty Reserve Tax (SDRT)

No UK stamp duty will be chargeable in respect of the issue of the Preferred Securities to a Holder. Transfers of the Preferred Securities within a clearing system will not be chargeable to UK stamp duty.

The Issuer has been advised that no liability to SDRT should arise in respect of the issue or subsequent transfer of the Preferred Securities.

### CERTAIN UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS

**To ensure compliance with the Internal Revenue Service Circular 230, you are hereby notified that any discussion of tax matters set forth in this Base Prospectus was written in connection with promotion or marketing of the transactions or matters addressed herein and was not intended or written to be used, and cannot be used by any prospective investor, for the purpose of avoiding tax-related penalties under federal, state or local tax law. Each prospective investor should seek advice based on its particular circumstances from an independent tax advisor.**

The following section describes certain US federal income tax consequences that may be relevant with respect to the acquisition, ownership and disposition of the Preferred Securities. This summary addresses only the US federal income tax considerations for non-US Holders (as defined below) that acquire the Preferred Securities on original issuance at their initial offering price and hold the Preferred Securities as capital assets for US federal income tax purposes. This section is based on the US Internal Revenue Code of 1986 (the **Code**), US Treasury regulations and judicial and administrative interpretations, in each case as in effect and available on the date of this Base Prospectus. All of the foregoing are subject to change, possibly with retroactive effect. Any such change could affect the tax consequences described below.

This section does not purport to be a comprehensive description of all the tax considerations that may be relevant to the Preferred Securities. In particular, this summary does not address tax considerations applicable to Holders that may be subject to special tax rules including, without limitation, the following: (a) financial institutions; (b) insurance companies; (c) dealers or traders in securities, currencies or notional principal contracts; (d) tax-exempt entities; (e) persons that will hold the Preferred Securities as part of a "hedging" or "conversion" transaction or as a position in a "straddle" or as part of a "synthetic security" or other integrated transaction for US federal income tax purposes; (f) persons that have a "functional currency" other than the US dollar; (g) regulated investment companies; (h) real estate investment trusts; (i) controlled

foreign corporations, as defined by section 957 of the Code; (j) persons who hold Preferred Securities through partnerships or other pass-through entities; and (k) persons who own, directly, indirectly or constructively, 10 per cent. or more (in voting power) of LBHI.

Further, this section does not address alternative minimum tax consequences or the indirect effects on the holders of equity interests in a Holder. This section also does not address the US federal estate and gift tax or any non-US tax consequences to Holders of the Preferred Securities.

**Each prospective investor should consult its own tax advisor with respect to the US federal, state, local and foreign tax consequences of acquiring, owning or disposing of the Preferred Securities.**

For the purposes of this section, a "Non-US Holder" is a beneficial owner of Preferred Securities that is not a US Holder. A "US Holder" is a person that is, for US federal income tax purposes: (a) a citizen or resident of the United States, (b) a corporation, or other entity that is treated as a corporation for US federal income tax purposes, created or organised in or under the laws of the United States or any state of the United States (including the District of Columbia), (c) an estate, the income of which is subject to US federal income taxation regardless of its source, or (d) a trust, if it (1) is subject to the primary supervision of a court within the United States and one or more US persons have the authority to control all of the substantial decisions of such trust or (2) has a valid election in effect under the applicable US Treasury regulations to be treated as a United States person.

No statutory, administrative or judicial authority addresses the treatment of the Preferred Securities or Subordinated Notes or instruments similar to the Preferred Securities or Subordinated Notes for US federal income tax purposes and no rulings have been sought or are expected to be sought from the Internal Revenue Service (the **IRS**) with respect to any of the US federal income tax consequences regarding this particular offering. As a result, the Issuer and LBHI cannot assure you that the IRS will agree with the tax characterisations and the tax consequences below.

**If you are considering purchasing the Preferred Securities, you should consult your own tax advisors concerning the US federal tax consequences in light of your particular situation and any consequences arising under the laws of any other taxing jurisdiction.**

The transactions described in this Base Prospectus are complex and characterisations other than those described are possible. See "–Possible Re-characterisation". Any differing treatment arising from a re-characterisation could affect the amount, timing and character of income, gain or loss in respect of an investment in the Preferred Securities.

### Classification of the Issuer

Allen & Overy LLP (**Tax Counsel**) is of the opinion that, under current law and assuming full compliance with the terms of the Limited Partnership Agreement, and based on certain representations, the Issuer will not be treated as an association or a publicly traded partnership taxable as a corporation for US federal income tax purposes. By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Priority Limited Partner, General Partner and LBHI agree, to treat the Issuer as a partnership for US federal income tax purposes and to treat the Preferred Securities as equity interests in such partnership and not as a direct interest in LBHI or in any other person. If, however, the Issuer were re-characterised, income paid on the Subordinated Notes, any Replacement Affiliate Investments or the Preferred Securities could become subject to US tax withholding at the rate of 30 per cent. (or a lower applicable treaty rate if appropriate certifications are provided). Unless indicated otherwise, the remainder of this discussion assumes that the Issuer will be classified as a partnership under US federal income tax principles.

### Classification of the Subordinated Notes

By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Priority Limited Partner, General Partner and LBHI agree, to treat the Subordinated Notes as indebtedness for all US federal income tax purposes. Tax Counsel has advised that, in its opinion, under current law and assuming full compliance with the terms of the Subordinated Notes, and based on certain representations, while the matter is not free from

doubt and there is no authority directly on point, the Subordinated Notes will be characterised as indebtedness. However, such position is not binding on the IRS or the courts. Therefore, while Tax Counsel believes that its conclusions would be sustained if challenged, there can be no assurance that this will be the case. Unless indicated otherwise, the remainder of this discussion assumes that the Subordinated Notes will be classified as indebtedness of LBHI under US federal income tax principles.

**Possible Re-characterisation**

The IRS has issued regulations pursuant to section 701 of the Code under which the IRS may (i) disregard or recast the form of a transaction if a partnership is used with a principal purpose of substantially reducing the partner's tax liability in a manner inconsistent with the intent of the partnership provisions of the Code or (ii) treat a partnership as the aggregate of its partners other than an entity. Moreover, section 7701(*l*) of the Code grants the IRS broad authority to promulgate regulations to prevent tax avoidance through the use of conduit arrangements by re-characterising any multi-party financing transaction as a transaction directly among two or more such parties. Each of the Issuer, General Partner and LBHI believe that these provisions should not apply. However, there can be no assurance that the IRS will not reach a different conclusion or that any such re-characterisation would not be adverse to Holders in light of their particular circumstances.

**Non-US Holders**

The General Partner, on behalf of the Issuer, intends to conduct its affairs in such a manner that its income is not effectively connected with a US trade or business and, accordingly, the General Partner, on behalf of the Issuer, does not intend to withhold tax applicable to effectively connected income for non-US Holders. However, should such withholding be required, the Issuer may withhold the amounts from other distributions payable to the applicable non-US Holder.

As a partnership, the Issuer will not be a taxable entity for US federal income tax purposes. Instead, Holders will be allocated, for US federal income tax purposes, a distributive share of the Issuer's income from the Subordinated Notes (or Replacement Affiliated Investments) and the Third Party Assets and other items of income, gain, loss, and deduction of the Issuer (if any). A non-US Holder's distributive share of such items generally determines the US tax treatment of such Holder even if current distributions are not made on the Preferred Securities.

Because of the "portfolio interest" exception, the General Partner, on behalf of the Issuer, intends not to withhold on distributions in respect of interest payable on the Subordinated Notes (or Replacement Affiliated Investments) to a non-US Holder provided the non-US Holder is not actually or constructively a "10 per cent. shareholder" of LBHI, a "controlled foreign corporation" with respect to which LBHI is related within the meaning of the Code, or a bank whose receipt of interest on the Subordinated Notes (or any Replacement Affiliate Investments) is described in section 881(c)(3)(A) of the Code. As noted above under "Possible Re-characterisation", it is possible that the Issuer might be re-characterised in which case, income derived by the Issuer from the Subordinated Notes, any Replacement Affiliate Investments or distributions on the Preferred Securities could be subject to US tax withholding at the rate of 30 per cent. (or a lower applicable treaty rate if appropriate certifications are provided).

Any gain realised on the sale, redemption, retirement or other taxable disposition of the Preferred Securities will be exempt from US federal income and withholding tax, provided that (1) the gain is not effectively connected with the conduct of a trade or business within the United States by such non-US Holder, and (2) in the case of a non-US Holder that is a foreign individual, such non-US Holder is not present in the United States for 183 days or more in the taxable year.

**Holders considering an investment in the Preferred Securities should consult their own tax advisors.**

**Information Reporting and Backup Withholding**

Non-US Holders are generally exempt from backup withholding requirements with respect to the receipt of income from the Preferred Securities. Backup withholding may apply to the proceeds from the sale of Preferred Securities effected at a United States office of a broker and information reporting (but not generally

backup withholding) may apply if you use the foreign office of a broker or agent that has certain connections with the United States. You may be required to comply with applicable certification procedures in order to avoid the application of the information reporting and backup withholding requirements.

Backup withholding is not an additional tax. An investor may generally obtain a refund of any amounts withheld under the backup withholding rules that exceed its US federal income tax liability by filing a refund claim with the IRS.

## EU DIRECTIVE ON THE TAXATION OF SAVINGS INCOME

Under EC Council Directive 2003/48/EC on the taxation of savings income, Member States are required, from 1 July 2005, to provide to the tax authorities of another Member State details of payments of interest (or similar income) paid by a person within its jurisdiction to an individual resident in that other Member State. However, for a transitional period, Belgium, Luxembourg and Austria are instead required (unless during that period they elect otherwise) to operate a withholding system in relation to such payments (the ending of such transitional period being dependent upon the conclusion of certain other agreements relating to information exchange with certain other countries). A number of non-EU countries and territories including Switzerland have agreed to adopt similar measures (a withholding system in the case of Switzerland) with effect from the same date.

## SUBSCRIPTION AND SALE

Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE, together with banks and other financial institutions to be named in the Final Terms (together, the **Managers**) will jointly and severally agree to subscribe for the entire issued amount of the Preferred Securities pursuant to a Subscription Agreement (the **Subscription Agreement**) expected to be dated on or about the date of publication of the Final Terms at a price per Preferred Security to be set out in the Final Terms. The Managers will receive a combined selling, management and underwriting commission of to be set out in the Final Terms. In addition, the Managers shall be reimbursed for certain of their expenses in connection with the issue of the Preferred Securities. The total estimated expenses of the issue of the Preferred Securities are to be set out in the Final Terms. The Managers will be entitled to terminate the Subscription Agreement in certain circumstances before the issue of the Preferred Securities.

The Issuer will only offer and allot Securities to the Managers. The selection of the Managers will be at the sole discretion of the General Partner.

This Base Prospectus is valid for use in an "offer of securities to the public" relating to the Preferred Securities for the period from its date of publication until the day falling 30 days after the Closing Date.

The aggregate nominal amount of the issue and the initial cash distribution will be as set out in the Final Terms to be published on the date that the Subscription Agreement is entered into. A copy of the Final Terms will be made available as described under "*General Information*".

The Managers will agree in the Subscription Agreement that they will only offer the Preferred Securities in accordance with the following restrictions:

## PLAN OF DISTRIBUTION

### United States

The Preferred Securities and the Subordinated Guarantee have not been and will not be registered under the Securities Act and may not be offered or sold within the United States or to, or for the account or benefit of, US persons. Terms used in this paragraph have the meanings given to them by Regulation S under the Securities Act (**Regulation S**).

Each Manager has agreed that, except as permitted by the Subscription Agreement, it will not offer, sell or deliver the Preferred Securities (i) as part of their distribution at any time or (ii) otherwise until 40 days after the later of the commencement of the offering and the Closing Date within the United States or to, or for the account or benefit of, US persons and that it will have sent to each distributor, dealer or person receiving a selling concession, fee or other remuneration that purchases Preferred Securities from it during the distribution compliance period a confirmation or other notice setting forth the restrictions on offers and sales of the Preferred Securities within the United States or to, or for the account or benefit of, US persons. Terms used in this paragraph have the meanings given to them by Regulation S.

In addition, until 40 days after the commencement of the offering, an offer or sale of Preferred Securities within the United States by any dealer that is not participating in the offering may violate the registration requirements of the Securities Act.

### United Kingdom

Each Manager has represented and agreed that, except as permitted by the Subscription Agreement:

(a)     it has only offered or sold and will only offer or sell Preferred Securities to (a) investment professionals falling within article 14(5) of the Financial Services and Markets Act 2000 (Promotion of Collective Investment Schemes) (Exemptions) Order 2001 (the **Promotion of CIS Order**) and article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (the **Financial Promotion Order**), who have professional experience of participating in unregulated

schemes and of matters relating to investments; and/or (b) persons falling within article 22(2) of the Promotion of CIS Order and article 49(2) of the Financial Promotion Order; and/or (c) any other persons to whom this Base Prospectus may be communicated lawfully;

(b)     it has in place and will have in place proper systems and procedures to prevent any person other than those persons described in (a) above from participating in the Preferred Securities;

(c)     it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the FSMA) received by it in connection with the issue of the Preferred Securities in circumstances in which Section 21(1) of the FSMA does not apply to LBHI; and

(d)     it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the Preferred Securities in, from or otherwise involving the United Kingdom.

**European Economic Area**

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a **Relevant Member State**), each Manager has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the **Relevant Implementation Date**) it has not made and will not make an offer of Preferred Securities to the public in that Relevant Member State prior to the publication of a prospectus in relation to the Preferred Securities which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of Preferred Securities to the public in that Relevant Member State at any time:

(a)     to legal entities which are authorised or regulated to operate in the financial markets or, if not so authorised or regulated, whose corporate purpose is solely to invest in securities;

(b)     to any legal entity which has two or more of (i) an average of at least 250 employees during the last financial year; (ii) a total balance sheet of more than €43,000,000 and (iii) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(c)     in any other circumstances which do not require the publication by the Issuer and LBHI of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of Preferred Securities to the public" in relation to any Preferred Securities in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the Preferred Securities to be offered so as to enable an investor to decide to purchase or subscribe the Preferred Securities, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression **Prospectus Directive** means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

**Singapore**

This Base Prospectus has not been registered as a prospectus with the Monetary Authority of Singapore under the Securities and Futures Act, Chapter 289 of Singapore (the **Securities and Futures Act**). Each Manager has represented, warranted and agreed that the Preferred Securities may not be offered or sold or made the subject of an invitation for subscription or purchase nor may this Base Prospectus or any other document or material in connection with the offer or sale or invitation for subscription or purchase of any Preferred Securities be circulated or distributed, whether directly or indirectly, to any person in Singapore other than (a) to an institutional investor or other person falling within Section 274 of the Securities and Futures Act, (b) to a relevant person, or any person pursuant to Section 275(1A) of the Securities and Futures Act, and in accordance with the conditions specified in Section 275 of the Securities and Futures Act, or (c)

pursuant to, and in accordance with the conditions of, any other applicable provision of the Securities and Futures Act.

Each Manager has further represented, warranted and agreed to notify (whether through the distribution of this Base Prospectus or any other document or material in connection with the offer or sale or invitation for subscription or purchase of any Preferred Securities or otherwise) each of the following relevant persons specified in Section 275 of this Securities and Futures Act which has subscribed or purchased Preferred Securities from and through that Manager, namely a person who is:

(a)     a corporation (which is not an accredited investor) the sole business of which is to hold investments and the entire share capital of which is owned by one or more individuals, each of whom is an accredited investor; or

(b)     a trust (where the trustee is not an accredited investor) whose sole purpose is to hold investments and each beneficiary is an accredited investor,

that shares, debentures and units of shares and debentures of that corporation or the beneficiaries' rights and interest in that trust shall not be transferable for six months after that corporation or trust has acquired the Preferred Securities under Section 275 of the Securities and Futures Act except:

(i)     to an institutional investor under Section 274 of the Securities and Futures Act or to a relevant person, or any person pursuant to Section 275(1A) of the Securities and Futures Act, and in accordance with the conditions, specified in Section 275 of the Securities and Futures Act;

(ii)     where no consideration is given for the transfer; or

(iii)     by operation of law.

## Hong Kong

Each Manager has represented and agreed that:

(a)     it has not offered or sold and will not offer or sell in Hong Kong, Special Administrative Region of the People's Republic of China (**Hong Kong**), by means of any document, any Preferred Securities other than (i) to "professional investors" as defined in the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance or (ii) in other circumstances which do not result in the document being a "prospectus" as defined in the Companies Ordinance (Cap. 32) of Hong Kong or which do not constitute an offer to the public within the meaning of that Ordinance; and

(b)     it has not issued or had in its possession for the purposes of issue and will not issue or have in its possession for the purposes of issue any advertisement, invitation or document relating to the Preferred Securities, whether in Hong Kong or elsewhere, which is directed at, or the contents of which are likely to be accessed or read by, the public in Hong Kong (except if permitted to do so under the securities laws of Hong Kong) other than with respect to Preferred Securities which are or are intended to be disposed of only to persons outside Hong Kong or only to "professional investors" within the meaning of the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance.

## General

Persons into whose hands this Base Prospectus comes are required by the Issuer, LBHI and the Managers to comply with all applicable laws and regulations in each country or jurisdiction in or from which they purchase, offer, sell or deliver Preferred Securities or have in their possession or distribute such offering material, in all cases at their own expense.

## GENERAL INFORMATION

### Authorisations

The Limited Partnership Agreement to establish the Issuer was duly authorised by a resolution of the board of directors of the General Partner passed on 20 December 2006.

The entering into of the Limited Partnership Agreement, the Agency Agreement, the Administration Agreement, the Subscription Agreement and the Subordinated Guarantee by LBHI will be authorised by the Chief Financial Officer of LBHI on the date specified in the Final Terms pursuant to the authority delegated to him by the Guarantor.

All consents, approvals, authorisations or other orders of all regulatory authorities required by the Issuer under the laws of England and Wales and LBHI under the laws of the State of Delaware and the United States of America have been, or will prior to the Closing Date be, given for the issue of the Preferred Securities and for the Issuer, the General Partner and LBHI, as the case may be, to undertake and perform their respective obligations as appropriate under the Limited Partnership Agreement, the Subscription Agreement, the Agency Agreement, the Preferred Securities and the Subordinated Guarantee.

### Listing

Application has been made to the UK Listing Authority for the Preferred Securities to be admitted to the Official List of the UK Listing Authority and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market. The London Stock Exchange plc's Gilt Edged and Fixed Interest Market is a regulated market for the purposes of Directive 93/22/EEC (the Investment Service Directive).

It is expected that listing and admission to trading will take place on or about the Closing Date, subject to issue of the Global Certificate.

Application will also be made to Euronext Amsterdam for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam.

### Clearing Systems

The preferred Securities have been accepted for clearance through Euroclear and Clearstream, Luxembourg. The ISIN for this issue and the Common Code shall be set forth in the Final Terms. The address of Euroclear is 1 Boulevard du Roi Albert III, B-1210 Belgium and the address of Clearstream, Luxembourg is 42 Avenue JF Kennedy, L-1855 Luxembourg.

### No significant change or material adverse change

There has been no significant change in the financial or trading position of the Issuer since its date of establishment.

There has been no material adverse change in the prospects of the Issuer since its date of establishment.

There has been no significant change in the financial or trading position of LBHI and the Group since 31 August 2006 (being the date of the most recent interim accounts of the Gurarantor and the Group).

There has been no material adverse change in the prospects of LBHI or the Group since 30 November 2005.

### Litigation

There are no governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which the Issuer is aware) during the previous 12 months which may have, or have had in the recent past, significant effects on the financial position or profitability of the Issuer.

Except as disclosed in this Base Prospectus, there are no governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which LBHI or any subsidiary of the Group is aware) during the previous 12 months which may have, or have had in the recent past, significant effects on the financial position or profitability of LBHI or any subsidiary of the Group.

**Accounts and Auditors**

The auditors of the Issuer are Ernst & Young LLP, Chartered Accountants and Registered Auditors, of 1 More London Place, London SE1 2AF.

The Issuer is newly established and does not currently have any financial statements (see also "*Documents*" below).

The consolidated financial statements for the years ended 30 November 2004 and 30 November 2005 of LBHI have been prepared in accordance with generally accepted accounting principles in the United States and have been reported upon without qualification for LBHI by Ernst & Young LLP, certified public accountants, which has its principal place of business at 5 Times Square, New York, New York 10036, USA.

Ernst & Young LLP is an independent registered public accounting firm with respect to LBHI and its subsidiaries within the meaning of the Securities Act of 1933, as amended and the applicable rules and regulations thereunder adopted by the Securities and Exchange Commission and the Public Company Accounting Oversight Board (United States) (PCAOB).

**Documents**

Copies of the following financial statements will be available free of charge from the specified offices of the Paying and Transfer Agents for so long as any of the Preferred Securities remains outstanding:

(a)     the annual reports (including the audited consolidated financial statements) of LBHI in respect of the financial years ended 30 November 2005, 2004 and 2003; including the audit reports on such financial statements;

(b)     the most recently published annual reports (including the audited annual consolidated financial statements) of LBHI and the most recently published unaudited interim consolidated financial statements of LBHI.

LBHI currently prepares audited consolidated financial statements on an annual basis and unaudited interim consolidated financial statements on a quarterly basis.

The Issuer is newly established as a limited partnership and has not traded or operated as at the date of this Base Prospectus. The first financial statements of the Issuer are expected to be prepared for the period ending on 30 November 2007. Thereafter, it is intended that the Issuer will prepare audited annual financial statements.

Copies of the Issuer's most recently published annual reports (if any) and audited annual financial statements of the Issuer will be available free of charge at the offices of the Paying and Transfer Agents. It is not intended that the Issuer will publish interim financial statements.

In addition, the following documents are available for inspection at the specified offices of the Paying and Transfer Agents for so long as any of the Preferred Securities remains outstanding:

(a)     the Subscription Agreement;

(b)     the Subordinated Guarantee;

(c)     the Limited Partnership Agreement;

(d)     the Administration Agreement;

(e)     the Agency Agreement;

(f)    the Final Terms; and

(g)    the Restated Certificate of Incorporation and the Amended and Restated By-Laws of LBHI.

**Certificates of Approval**

The UK Listing Authority, in its capacity as competent authority in the United Kingdom for the purposes of the Prospectus Directive will be requested to provide the following competent authorities in other Member States with a certificate of approval under Article 18 of the Prospectus Directive as implemented in the United Kingdom:

(a)    The Banking, Finance and Insurance Commission, or CBFA, which is the competent authority of Belgium for the purposes of the Prospectus Directive;

(b)    The German Federal Financial Supervisory Authority (Bundesanstalt für Finanzdienstleistungsaufsicht), which is the competent authority of Germany for the purposes of the Prospectus Directive;

(c)    The Commissione Nazionale per le Società e la Borsa (CONSOB), which is the competent authority of Italy for the purposes of the Prospectus Directive;

(d)    The Commission de Surveillance du Secteur Financier, which is the competent authority of Luxembourg for the purposes of the Prospectus Directive;

(e)    The Stichting Autoriteit Financiële Markten, or "AFM", which is the competent authority of The Netherlands for the purposes of the Prospectus Directive;

(f)    The Securities Commission (CMVM), which is the competent authority of Portugal for the purposes of the Prospectus Directive; and

(g)    The Comisión Nacional del Mercado de Valores, or CNMV, which is the competent authority of Spain for the purposes of the Prospectus Directive.

In addition to the applications described above, the General Partner, on behalf of the Issuer, may, on or after the date of this Base Prospectus, make applications for one or more further certificates of approval under Article 18 of the Prospectus Directive as implemented in the United Kingdom to be issued by the UK Listing Authority to the competent authority in any Member State.

**Capital Replacement Intent**

If the Preferred Securities are redeemed, it is the intention of the General Partner that they will be redeemed only to the extent the aggregate redemption price is equal to or less than the net proceeds, if any, received by LBHI or any of its subsidiaries from new issuances to purchasers other than affiliates during the period commencing on the 180th calendar day prior to the date of redemption of any securities that have equal or greater equity characteristics as the Preferred Securities.

**FORM OF FINAL TERMS**

**Final Terms**

**Lehman Brothers UK Capital Funding IV LP**

**Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities**

| | |
|---|---|
| **Closing Date:** | [*Insert*] |
| **Issue Price and Offer Price per Preferred Security:** | [*Insert*] |
| **Distribution Rate:** | [*Insert*] per cent. per annum |
| **Distribution Payment Dates:** | [*Insert. NB the distribution payment dates will fall annually following the Closing Date*] |
| **Aggregate Nominal Amount of the Preferred Securities:** | €[*Insert*] |
| **First Call Date of Subordinated Notes:** | [*Insert*] |
| **Net proceeds:** | €[*Insert*] |
| **Names and addresses of Managers:** | [*Insert*] |
| **ISIN:** | XS[*Insert*] |
| **Common Code:** | [*Insert*] |
| **WKN Number:** | [*Insert*] |
| **Combined selling, management and underwriting commission:** | €[*Insert*] per Preferred Security |
| **Total estimated expenses of the issue of the Preferred Securities (including the commission):** | €[*Insert*] |
| **Ratings:** | [*Insert*] |
| **Date of resolution of Chief Financial Officer of LBHI:** | [*Insert*] |
| **Other terms:** | [*Insert*] |

The above pricing gives a yield of [*Insert details*]. Such yield is applicable as of the date of these Final Terms and may fluctuate in the future.

The date of these Final Terms is [*Insert*].

| **ISSUER** | **GUARANTOR** |
|---|---|
| **Lehman Brothers UK Capital Funding IV LP** | **Lehman Brothers Holdings Inc.** |
| 25 Bank Street | 745 Seventh Avenue |
| London E14 5LE | New York, |
| England | New York 10019 |

**PRINCIPAL PAYING AND TRANSFER AGENT**

**The Bank of New York**
One Canada Square
London E14 5AL
England

| **PAYING AND TRANSFER AGENT AND REGISTRAR** | **PAYING AND TRANSFER AGENT** |
|---|---|
| **The Bank of New York (Luxembourg), S.A.** | **ING Bank N.V.** |
| Aerogolf Center | Van Heenvlietlaan 220 |
| 1A Hoehenhof | 1083 CN Amsterdam |
| L - 1736 Senningerberg | The Netherlands |
| Luxembourg | |

**LEGAL ADVISERS**

*to the Managers*

| *as to United States law* | *as to English and United States law* |
|---|---|
| **Barrett DiPaolo** | **Allen & Overy LLP** |
| Lehman Brothers Holdings Inc. | One Bishops Square |
| 745 Seventh Avenue | London E1 6AO |
| New York, | England |
| New York 10019 | |

**AUDITORS**

| *to the Issuer* | *to LBHI* |
|---|---|
| **Ernst & Young LLP** | **Ernst & Young LLP** |
| 1 More London Place | 5 Times Square |
| London SE1 2AF | New York |
| England | New York 10036 |

printed by eprint*financial*.com
tel: + 44 (0) 20 7613 1800   document number 3619

**FINAL TERMS**

**Lehman Brothers UK Capital Funding IV LP (the "Issuer")**

**€200,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities (Euro ECAPS®)
(the "Preferred Securities")**

**having the benefit of a subordinated guarantee of**

**Lehman Brothers Holdings Inc. (the "Guarantor")**

Terms used herein shall be deemed to be defined as such for the purposes of the Description of the Preferred Securities set forth in the Base Prospectus dated 4th January, 2007 which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the **Prospectus Directive**). This document constitutes the Final Terms of the Preferred Securities described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus. Full information on the Issuer and the offer of the Preferred Securities is only available on the basis of the combination of these Final Terms and the Base Prospectus. The Base Prospectus is available for viewing at 25 Bank Street, Canary Wharf, London E14 5LE and copies may be obtained from 25 Bank Street, Canary Wharf, London E14 5LE.

| | |
|---|---|
| **Closing Date:** | 25th January, 2007 |
| **Issue Price and Offer Price per Preferred Security:** | €1,000 |
| **Distribution Rate:** | 5.75 per cent. per annum payable annually in arrear |
| **Distribution Payment Dates:** | 25th April in each year with the first Distribution Payment Date being on 25th April, 2008 (long first coupon). |
| | In respect of the first Distribution accruing from and including the Closing Date, the applicable day count fraction shall be Actual/Actual (ICMA) which, subject to paragraphs 2.3 and 2.4 of the "Description of the Preferred Securities", shall result in a Distribution of €71.68 in respect of each Preferred Security being payable on 25th April, 2008. On each Distribution Payment Date thereafter, subject to paragraphs 2.3 and 2.4 of the "Description of the Preferred Securities", a Distribution of €57.50 shall be payable in respect of each Preferred Security. |

ECAPS® is a registered trademark of Lehman Brothers

| | |
|---|---|
| **Aggregate Nominal Amount of the Preferred Securities:** | €200,000,000 |
| **First Call Date of Subordinated Notes:** | 25th April, 2012 |

In the event that the Subordinated Notes or the Replacement Affiliate Investments are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms and the General Partner intends to redeem the Preferred Securities pursuant to paragraph 4.2 of the "Description of the Preferred Securities", the General Partner shall give not less than 30 nor more than 60 days' notice to the Holders.

| | |
|---|---|
| **Net proceeds:** | €196,000,000 |
| **Names and addresses of Managers:** | **Lead Manager**<br>Lehman Brothers International (Europe)<br>25 Bank Street, Canary Wharf, London E14 4LE, United Kingdom<br><br>**Co-Managers**<br>Banco Bilbao Vizcaya Argentaria, S.A.<br>Via de los Poblados s/n, Madrid 28033, Spain<br><br>Banco Millennium bcp Investimento, SA<br>Avenida José Malhoa, 27, 1070-157 Lisbon, Portugal<br><br>DZ BANK AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main<br>Platz der Republik, D-60265 Frankfurt am Main, Germany<br><br>EFG Eurobank Ergasias S.A.<br>8 Othonos St., 105 57 Athens, Greece<br><br>Nordea Bank Danmark A/S<br>Christiansbro, Strandgade 3, PO Box 850, DK-0900 Copenhagen C, Denmark |
| **ISIN:** | XS0282978666 |
| **Common Code:** | 028297866 |
| **Fondscode:** | 15957 |
| **Combined selling, management and underwriting** | €20 per Preferred Security |

**commission:**

| | |
|---|---|
| **Total estimated expenses of the issue of the Preferred Securities (including the commission):** | The total amount of expenses is estimated to be €4,180,000, broken down as follows (all figures approximate): |

|  |  |
|---|---|
| Commissions payable: | €4,000,000 |
| Legal fees: | €170,000 |
| Listing fees: | €5,000 |
| Other fees: | €5,000 |

| | |
|---|---|
| **Ratings:** | The Preferred Securities are expected to be assigned on issue the following ratings: |

| | |
|---|---|
| Moody's Investors Service: | A3 |
| Fitch, Inc: | A |
| Standard & Poor's Rating Services, a division of The McGraw-Hill Companies Inc.: | A- |

| | |
|---|---|
| **Date of resolution of Chief Financial Officer of LBHI:** | 11th January, 2007 |
| **Other terms:** | Not Applicable |

The above pricing gives a yield of 5.75 per cent. per annum.  Such yield is calculated at the Closing Date on the basis of the Issue Price.  It is not an indication of future yield.

If closing of the Preferred Securities does not take place on the Closing Date or at all, the offer of the Preferred Securities will be withdrawn, all subscriptions for the Preferred Securities will be disregarded, any allotments made will be deemed not to have been made and any subscription payments made will be annulled.  All dealings in the Preferred Securities prior to settlement and delivery are at the sole risk of the parties concerned.

Euronext Amsterdam N.V. is not responsible or liable for any loss incurred by any person as a result of a withdrawal of the offer of the Preferred Securities and/or (the related) annulment of any transactions on Eurolist by Euronext Amsterdam N.V.

The date of these Final Terms is 23rd January, 2007.

**LISTING AND ADMISSION TO TRADING APPLICATION**

These Final Terms comprise the final terms required to list and have admitted to trading the issue by Lehman Brothers UK Capital Funding IV LP of the Preferred Securities described herein.

**RESPONSIBILITY**

Each of the LB GP No. 1 Ltd. (the "**General Partner**"), acting on behalf of the Issuer, and the Guarantor accepts responsibility for the information contained in these Final Terms.


Signed by LB GP No. 1 Ltd.                                     Signed on behalf of the Guarantor:
as General Partner,
acting on behalf of the Issuer:


By:    …………………………………..          By:    …………………………………..

       *Duly authorised*                                              *Duly authorised*

# Exhibit C

COMPOSITE PROSPECTUS

# LEHMAN BROTHERS UK CAPITAL FUNDING V LP

*(a limited partnership organised under the laws of England and Wales)*

## US$500,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities (US$ ECAPS®)

having the benefit of a subordinated guarantee of

# LEHMAN BROTHERS HOLDINGS INC.

*(incorporated with limited liability in the State of Delaware)*

The US$500,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities (the **US$ ECAPS®** or the **Preferred Securities**), each with a liquidation preference of US$1,000, will comprise limited partnership interests in Lehman Brothers UK Capital Funding V LP (the **Issuer**).

This Composite Prospectus comprises the Final Terms dated 30 May 2007 (the **Final Terms**) and the Base Prospectus dated 11 May 2007 (the **Base Prospectus**) relating to the US$ ECAPS.

The Base Prospectus must be read in conjunction with Final Terms. To the extent that there is any inconsistency between (a) any statement in the Base Prospectus and (b) any statement in the Final Terms, the statement in the Final Terms will prevail.

Lead Manager

## LEHMAN BROTHERS

The date of this Composite Prospectus is 30 May 2007

ECAPS® is a registered trademark of Lehman Brothers

## FINAL TERMS

### Lehman Brothers UK Capital Funding V LP (the Issuer)

### U.S.$500,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities (U.S.$ ECAPS®)

### (the Preferred Securities)

### having the benefit of a subordinated guarantee of

### Lehman Brothers Holdings Inc. (the Guarantor)

Terms used herein shall be deemed to be defined as such for the purposes of the Description of the Preferred Securities set forth in the Base Prospectus dated 11 May 2007 which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the **Prospectus Directive**). This document constitutes the Final Terms of the Preferred Securities described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus. Full information on the Issuer and the offer of the Preferred Securities is only available on the basis of the combination of these Final Terms and the Base Prospectus. The Base Prospectus is available for viewing at 25 Bank Street, Canary Wharf, London E14 5LE and copies may be obtained from 25 Bank Street, Canary Wharf, London E14 5LE.

| | |
|---|---|
| **Closing Date:** | 1 June 2007 |
| **Issue Price and Offer Price per Preferred Security:** | U.S.$1,000 |
| **Distribution Rate:** | 6.90 per cent. per annum payable annually in arrear |
| **Distribution Payment Dates:** | 1 June in each year with the first Distribution Payment Date being on 1 June 2008. |
| | On each Distribution Payment Date, subject to paragraphs 2.3 and 2.4 of the "Description of the Preferred Securities", a Distribution of U.S.$69 shall be payable in respect of each Preferred Security. |
| | The General Partner will have the full discretion to publish a No Payment Notice in respect of any Distribution at any time and for any reason. In addition, without limiting the discretion detailed above and without prejudice to the other such circumstances set out in paragraph 2.4 of the "Description of the Preferred Securities", the General Partner will deliver a No Payment Notice if directed to do so by the Supervisory Authority. On the Closing Date, the Supervisory Authority is the US Securities and Exchange Commission. |
| **Aggregate Nominal Amount of the Preferred Securities:** | U.S.$500,000,000 |
| **First Call Date of Subordinated Notes:** | 1 June 2012 |
| | In the event that the Subordinated Notes or the Replacement Affiliate Investments are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms and the General Partner intends to redeem the Preferred Securities pursuant to paragraph 4.2 of |

ECAPS® is a registered trademark of Lehman Brothers

the "Description of the Preferred Securities", the General Partner shall give not less than 30 nor more than 60 days' notice to the Holders.

The Subordinated Notes or the Replacement Affiliate Investments may not be redeemed unless LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) has received the prior approval of the Supervisory Authority. Moreover, unless the Supervisory Authority authorises the General Partner to do otherwise in writing, the General Partner will redeem the Preferred Securities only if they are replaced in accordance with the replacement capital covenant described under "Other terms" below.

| | |
|---|---|
| **Net proceeds:** | U.S.$495,000,000 |

**Names and addresses of Managers:**

**Lead Manager**
Lehman Brothers International (Europe)
25 Bank Street, London E14 5LE, United Kingdom

**Co-Managers**
Cája de Ahorros y Monte de Piedad de Madrid
Plaza de Celenque, 2
28013 Madrid

Danske Bank A/S
Holmens Kanal 2-12
DK-1092 Copenhagen K

Erste Bank der oesterreichischen Sparkassen AG
Graben 21
1010 Vienna

Lloyds TSB Bank plc
25 Gresham Street
London EC2V 7HN

Natixis
45 rue Saint Dominique
75007 Paris

| | |
|---|---|
| **ISIN:** | XS0301813522 |
| **Common Code:** | 030181352 |
| **Fondscode:** | 74063 |
| **Combined selling, management and underwriting commission:** | U.S.$10 per Preferred Security |

**Total estimated expenses of the issue of the Preferred Securities (including the commission):**

The total amount of expenses is estimated to be U.S.$5,275,000, broken down as follows (all figures approximate):

| | |
|---|---|
| Commissions payable: | U.S.$5,000,000 |
| Legal fees: | U.S.$175,000 |
| Other fees (including listing fees): | U.S.$100,000 |

| **Ratings:** | The Preferred Securities are expected to be assigned on issue the following ratings: |
| | |
| | Moody's Investors Service: | A3 |
| | Fitch, Inc: | A |
| | Standard & Poor's Rating Services, a division of The McGraw-Hill Companies Inc.: | A- |

**Date of resolution of Chief Financial Officer of LBHI:**     24 May 2007

**Other terms:**     At or prior to the Closing Date, LBHI will enter into a replacement capital covenant relating to the Preferred Securities, the Qualifying Regulatory Capital Securities and the Substituted Preferred Stock. The replacement capital covenant only benefits holders of covered debt, as defined below, and is not enforceable by holders of the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock. However, the replacement capital covenant could preclude LBHI from redeeming, repaying or purchasing the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock at a time LBHI might otherwise wish to do so. See the attached Annex for further information.

The above pricing gives a yield of 6.90 per cent. per annum. Such yield is calculated at the Closing Date on the basis of the Issue Price. It is not an indication of future yield.

If closing of the Preferred Securities does not take place on the Closing Date or at all, the offer of the Preferred Securities will be withdrawn, all subscriptions for the Preferred Securities will be disregarded, any allotments made will be deemed not to have been made and any subscription payments made will be annulled. All dealings in the Preferred Securities prior to settlement and delivery are at the sole risk of the parties concerned.

Euronext Amsterdam N.V. is not responsible or liable for any loss incurred by any person as a result of a withdrawal of the offer of the Preferred Securities and/or (the related) annulment of any transactions on Eurolist by Euronext Amsterdam N.V.

The date of these Final Terms is 30 May 2007.

## LISTING AND ADMISSION TO TRADING APPLICATION

These Final Terms comprise the final terms required to list and have admitted to trading the issue by Lehman Brothers UK Capital Funding V LP of the Preferred Securities described herein.

## RESPONSIBILITY

Each of the LB GP No. 1 Ltd. (the **General Partner**), acting on behalf of the Issuer, and the Guarantor accepts responsibility for the information contained in these Final Terms.

Signed by LB GP No. 1 Ltd.
as General Partner,
acting on behalf of the Issuer:

Signed on behalf of the Guarantor:

By:  ........................................................................

By:  ........................................................................

*Duly authorised*

*Duly authorised*

### ANNEX - CERTAIN TERMS OF THE REPLACEMENT CAPITAL COVENANT

*The following information and definitions are included for information purposes regarding the Replacement Capital Covenant only and do not constitute part of the Description of the Preferred Securities.*

In the Replacement Capital Covenant, LBHI covenants to the holders of long-term unsecured senior indebtedness that neither LBHI nor any of its subsidiaries will repay, redeem or purchase the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock, except to the extent (i) that the total repayment, redemption or purchase price is equal to or less than the sum of:

- 100% of the aggregate amount of:

  - the net cash proceeds received by LBHI and its subsidiaries from the sale of common stock and rights to acquire Common Stock (including Common Stock or rights to acquire Common Stock issued pursuant to LBHI's dividend reinvestment plan or employee benefit plans), plus

  - the Market Value of any Common Stock that LBHI and its subsidiaries have delivered as consideration for property or assets in an arm's-length transaction, plus

  - the Market Value of any Common Stock that LBHI and its subsidiaries have issued in connection with the conversion or exchange of any convertible or exchangeable securities, other than securities for which LBHI or any of its subsidiaries has received equity credit from any nationally recognised rating organisation within the meaning of Rule 15c 3-1(c)(2)(vi)(F); plus

- 100% of the aggregate amount of net cash proceeds received by LBHI and its subsidiaries from the sale of Qualifying Non-Cumulative Perpetual Preferred Stock; plus

- 100% of the aggregate amount of net cash proceeds received by LBHI and its subsidiaries from the sale of Qualifying Non-Cumulative Perpetual Preferred Securities,

in each case within the 180 days prior to the repayment, redemption or purchase date (without double counting the proceeds received) to persons other than LBHI and its subsidiaries or (ii) the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock are exchanged for at least an equal aggregate Market Value of Common Stock or liquidation preference of Qualifying Non-Cumulative Perpetual Preferred Stock or Qualifying Non-Cumulative Perpetual Preferred Securities; *provided* that the foregoing limitations do not apply to purchases of the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock or any portion thereof in connection with the distribution thereof or in connection with market-making or other secondary-market activities.

LBHI's ability to raise proceeds from Replacement Capital Securities during the 180 days prior to a proposed repayment, redemption or purchase will depend on, among other things, market conditions at such times as well as the acceptability to prospective investors of the terms of such Replacement Capital Securities.

LBHI's covenants in the Replacement Capital Covenant run in favour of persons that buy, hold or sell its unsecured indebtedness during the period that such indebtedness is Covered Debt. Other debt will replace LBHI's Covered Debt under the Replacement Capital Covenant on the earlier to occur of:

- the date two years prior to the maturity of the existing Covered Debt; or

- the date of a redemption or purchase of the existing Covered Debt in an amount such that the outstanding principal amount of the existing Covered Debt is or will become less than U.S.$100 million.

The Replacement Capital Covenant is made for the benefit of persons that buy, hold or sell the specified series of long-term indebtedness. It may not be enforced by the holders of the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock.

LBHI may amend or supplement the Replacement Capital Covenant with the consent of the holders of a majority by principal amount of the debt that at the time of the amendment or supplement is the covered debt. LBHI may also, acting alone and without the consent of the holders of the Covered Debt, amend or supplement the Replacement Capital Covenant if (i) such amendment or supplement eliminates common stock or rights to acquire Common Stock as Replacement Capital Securities if an accounting standards or interpretive guidance of an existing accounting standard issued by an organisation or regulator that has responsibility for establishing or interpreting accounting standards in the United States becomes effective such that there is more than an insubstantial risk that the failure to do so would result in a reduction in LBHI's earnings per share as calculated for financial reporting purposes, (ii) such amendment or supplement is not adverse to the holders of the then-effective series of Covered Debt and an officer of LBHI has delivered a written certificate stating that, in his or her determination, such amendment or supplement is not adverse to the holders of the then-effective series of Covered Debt, (iii) the effect of such amendment or supplement is solely to impose additional restrictions on, or eliminate certain of, the types of securities qualifying as Replacement Capital Securities (other than the securities covered by clause (i) above), and an officer of LBHI has delivered a written certificate to that effect or (iv) the effect of such amendment or supplement is solely to impose additional restrictions on LBHI's ability to repay, redeem or purchase the Preferred Securities, the Qualifying Regulatory Capital Securities or the Substituted Preferred Stock in any circumstance.

The Replacement Capital Covenant may be terminated if the holders of a majority by principal amount of the Covered Debt so agree, or if LBHI no longer have outstanding any long-term indebtedness that qualifies as Covered Debt, without regard to whether such indebtedness is rated by a nationally recognised statistical rating organisation.

The Replacement Capital Covenant will be governed by the laws of the State of New York.

## DEFINITIONS

**Alternative Payment Mechanism** means, with respect to any Qualifying Non-Cumulative Perpetual Preferred Stock or Qualifying Non-Cumulative Perpetual Preferred Securities, provisions in the terms thereof or of the related transaction documents that, during the continuation of the failure to satisfy one or more financial tests set forth in the terms of thereof or of the related transaction documents, permit the issuer of such securities to make payment of dividends on such securities only from the "eligible proceeds" of one or more types of Qualifying APM Securities unless (if LBHI elects to so provide in the terms of such securities) the Commission directs otherwise, and that:

(a)    define **eligible proceeds** to mean, for purposes of such Alternative Payment Mechanism, the net proceeds (after underwriters' or placement agents' fees, commissions or discounts and other expenses relating to the issuance or sale of the relevant securities, where applicable, and including the fair market value of property received by LBHI or any of its Subsidiaries as consideration for such securities) that LBHI has received during the 180 days prior to the related dividend payment date from the issuance of Qualifying APM Securities, up to the Preferred Cap in the case of Qualifying APM Securities that are Qualifying Non-Cumulative Perpetual Preferred Stock or Qualifying Non-Cumulative Perpetual Preferred Securities, where the **Preferred Cap** is an amount from the issuance thereof pursuant to such Alternative Payment Mechanism (including at any point in time from all prior issuances thereof pursuant to such Alternative Payment Mechanism) equal to 25% of the initial liquidation amount of the securities that are the subject of such Alternative Payment Mechanism;

(b)    if such restriction on the payment of dividends continues for more than one year, require LBHI and its Subsidiaries not to redeem or purchase any securities of LBHI that on a bankruptcy or liquidation of LBHI rank *pari passu* with or junior to the most senior Qualifying APM Securities the proceeds of which were used to pay dividends during the relevant dividend restriction period until at least one year after such Qualifying APM Securities have been issued;

(c)     notwithstanding the foregoing provision, if the Commission disapproves the issuer's sale of Qualifying APM Securities, may (if LBHI elects to so provide in the term of such securities) permit LBHI to pay dividends from any source without a breach of its obligations under the transaction documents; and

(d)     if the Commission does not disapprove LBHI's issuance and sale of Qualifying APM Securities but disapproves the use of the proceeds thereof to pay deferred dividends, may (if LBHI elects to so provide in the terms of such securities) permit LBHI to use such proceeds for other purposes.

**Common Stock** means common stock of LBHI (including common stock issued pursuant to LBHI's dividend reinvestment plan and employee benefit plans).

**Commission** means the United States Securities and Exchange Commission.

**Covered Debt** means (a) at the date of this Replacement Capital Covenant and continuing to but not including the first Redesignation Date, the Initial Covered Debt and (b) thereafter, commencing with each Redesignation Date and continuing to but not including the next succeeding Redesignation Date, the Eligible Debt identified pursuant to Clause 3.2 of the Replacement Capital Covenant as the Covered Debt for such period.

**Eligible Debt** means, at any time, Eligible Subordinated Debt or, if no Eligible Subordinated Debt is then outstanding, Eligible Senior Debt.

**Eligible Senior Debt** means, at any time in respect of any issuer, each series of outstanding unsecured long-term indebtedness for money borrowed of such issuer that (a) upon a bankruptcy, liquidation, dissolution or winding up of the issuer, ranks most senior among the issuer's then outstanding classes of unsecured indebtedness for money borrowed, (b) is then assigned a rating by at least one NRSRO (provided that this part (b) shall apply on a Redesignation Date only if on such date the issuer has outstanding senior long-term indebtedness for money borrowed that satisfies the requirements of parts (a), (c) and (d) that is then assigned a rating by at least one NRSRO), (c) has an outstanding principal amount of not less than U.S.$100,000,000, and (d) was issued through or with the assistance of a commercial or investment banking firm or firms acting as underwriters, initial purchasers or placement or distribution agents. For purposes of this definition as applied to securities with a CUSIP number, each issuance of long-term indebtedness for money borrowed that has (or, if such indebtedness is held by a trust or other intermediate entity established directly or indirectly by the issuer, the securities of such intermediate entity that have) a separate CUSIP number shall be deemed to be a series of the issuer's long-term indebtedness for money borrowed that is separate from each other series of such indebtedness.

**Eligible Subordinated Debt** means, at any time in respect of any issuer, each series of the issuer's then-outstanding unsecured long-term indebtedness for money borrowed that (a) upon a bankruptcy, liquidation, dissolution or winding up of the issuer, ranks subordinate to the issuer's then outstanding series of unsecured indebtedness for money borrowed that ranks most senior and ranks senior to the Preferred Securities, (b) is then assigned a rating by at least one NRSRO (provided that this part (b) shall apply on a Redesignation Date only if on such date the issuer has outstanding subordinated long-term indebtedness for money borrowed that satisfies the requirements in parts (a), (c) and (d) that is then assigned a rating by at least one NRSRO), (c) has an outstanding principal amount of not less than U.S.$100,000,000, and (d) was issued through or with the assistance of a commercial or investment banking firm or firms acting as underwriters, initial purchasers or placement or distribution agents. For purposes of this definition as applied to securities with a CUSIP number, each issuance of long-term indebtedness for money borrowed that has (or, if such indebtedness is held by a trust or other intermediate entity established directly or indirectly by the issuer, the securities of such intermediate entity that have) a separate CUSIP number shall be deemed to be a series of the issuer's long-term indebtedness for money borrowed that is separate from each other series of such indebtedness.

**Initial Covered Debt** means LBHI's 6.24% Junior Subordinated Notes due 2054 underlying the 6.24% Preferred Securities, Series N of Lehman Brothers Holdings Capital Trust VI, which have CUSIP No. 52520X208.

**Intent-Based Replacement Disclosure** means, as to any security or combination of securities (together in this definition, **Securities**), that the issuer has publicly stated its intention, either in the prospectus or other offering document under which such securities were initially offered for sale or in filings with the Commission made by the issuer under the Exchange Act prior to or contemporaneously with the issuance of such securities, that the issuer, to the extent the securities provide the issuer with equity credit, will repay, redeem or purchase such securities only with the proceeds of replacement capital securities that have terms and provisions at the time of repayment, redemption or purchase that are as or more equity-like (determined at the time of such repayment, redemption or purchase) than the securities then being repaid, redeemed or purchased, raised within 180 days prior to the applicable repayment, redemption or purchase date.

**Mandatory Trigger Provision** means, as to any Qualifying Preferred Stock, provisions in the terms thereof or of the related transaction documents that during the continuation of the failure to satisfy one or more financial tests set forth in the terms of such securities or related transaction documents, permit the issuer of such securities to make payment of dividends on such securities only pursuant to an Alternative Payment Mechanism. No remedy other than Permitted Remedies will arise by the terms of such securities or related transaction documents in favour of the holders of such securities as a result of the issuer's failure to pay dividends because of the Mandatory Trigger Provision.

**Market Value** means, on any date, the closing sale price per share of Common Stock (or if no closing sale price is reported, the average of the bid and ask prices or, if more than one in either case, the average of the average bid and the average ask prices) on that date as reported in composite transactions by the New York Stock Exchange or, if the Common Stock is not then listed on the New York Stock Exchange, as reported by the principal U.S. securities exchange on which the Common Stock is traded or quoted. If the Common Stock is not listed on any U.S. securities exchange on the relevant date, the "current stock market price" shall be the last quoted bid price for the Common Stock in the over-the-counter market on the relevant date as reported by the National Quotation Bureau or similar organisation. If the Common Stock is not so quoted, the "current stock market price" shall be the average of the mid-point of the last bid and ask prices for the Common Stock on the relevant date from each of at least three nationally recognised independent investment banking firms selected by LBHI for this purpose.

**NRSRO** means a nationally recognised statistical rating organisation within the meaning of Rule 15c3-1(c)(2)(vi)(F) under the Securities Exchange Act.

**Permitted Remedies** means, with respect to any securities, one or more of the following remedies:

(a) rights in favour of the holders of such securities permitting such holders to elect one or more directors of the issuer or the Corporation (including any such rights required by the listing requirements of any stock or securities exchange on which such securities may be listed or traded); and

(b) complete or partial prohibitions on the issuer or the Corporation paying dividends on or repurchasing common stock or other securities that rank *pari passu* with or junior as to dividends to the Corporation's obligations in respect of such securities for so long as distributions on such securities, including unpaid distributions, remain unpaid.

**Qualifying APM Securities** means, with respect to an Alternative Payment Mechanism, one or more of the following (as designated in the transaction documents for the Qualifying Non-Cumulative Perpetual Preferred Stock or Qualifying Non-Cumulative Perpetual Preferred Securities that include an Alternative Payment Mechanism):

(a) Common Stock;

(b) Qualifying Warrants; or

(c) Qualifying Preferred Stock;

provided that if the Qualifying APM Securities for any Alternative Payment Mechanism include both Common Stock and Qualifying Warrants, such Alternative Payment Mechanism may permit, but need not require, LBHI to issue Qualifying Warrants.

**Qualifying Preferred Stock** means LBHI's non-cumulative perpetual preferred stock that ranks *pari passu* with or junior to all of LBHI's other preferred stock and (a) is subject to a Qualifying Replacement Capital Covenant or (b) is subject to both (i) a Mandatory Trigger Provision and (ii) Intent-Based Replacement Disclosure. Additionally, in the case of both parts (a) and (b) the transaction documents shall provide for no remedies as a consequence of non-payment of distributions other than Permitted Remedies.

**Qualifying Non-Cumulative Perpetual Preferred Securities** means non-cumulative preferred securities of LBHI ranking *pari passu* with Qualifying Non-Cumulative Perpetual Preferred Stock (or non-cumulative preferred securities of any Subsidiary of LBHI and which benefit from a guarantee of LBHI ranking *pari passu* with Qualifying Non-Cumulative Perpetual Preferred Stock) (a) that is perpetual and is subject to a Qualifying Replacement Capital Covenant, (b) that is subject to a Mandatory Trigger Provision and (c) as to which the transaction documents provide for no remedies as a consequence of non-payment of dividends other than Permitted Remedies. Qualifying Non-Cumulative Perpetual Preferred Securities may be convertible into Common Stock at a conversion ratio within a range established at the time of its issuance.

**Qualifying Non-Cumulative Perpetual Preferred Stock** means non-cumulative preferred stock of LBHI (a) that is perpetual and is subject to a Qualifying Replacement Capital Covenant, (b) that is subject to a Mandatory Trigger Provision and (c) as to which the transaction documents provide for no remedies as a consequence of non-payment of dividends other than Permitted Remedies. Qualifying Non-Cumulative Perpetual Preferred Stock may be convertible into Common Stock at a conversion ratio within a range established at the time of its issuance.

**Qualifying Replacement Capital Covenant** means a replacement capital covenant, as identified by LBHI's Board of Directors acting in good faith and in its reasonable discretion and reasonably construing the definitions and other terms of this Replacement Capital Covenant, (i) entered into by a company that at the time it enters into such replacement capital covenant is a reporting company under the Exchange Act and (ii) that restricts the related issuer from redeeming, repaying or purchasing identified securities except to the extent of the applicable percentage of the net proceeds from the issuance of specified replacement capital securities that have terms and provisions at the time of redemption, repayment or purchase that are as or more equity-like than the securities then being redeemed, repaid or purchased within the 180-day period prior to the applicable redemption, repayment or purchase date.

**Qualifying Warrants** means any net share settled warrants to purchase Common Stock that (i) have an exercise price greater than the **Market Value** of the Common Stock on a date within five days of the issuance of such warrants, and (ii) LBHI is not entitled to redeem for cash and the holders of which are not entitled to require LBHI to purchase for cash in any circumstances.

**Redesignation Date** means, as to the Covered Debt in effect at any time, the earliest of (a) the date that is two years prior to the final maturity date of such Covered Debt, (b) if LBHI elects to redeem, or LBHI or a subsidiary of LBHI elects to purchase, such Covered Debt either in whole or in part with the consequence that after giving effect to such redemption or purchase the outstanding principal amount of such Covered Debt is less than U.S.$100,000,000, the applicable redemption or purchase date and (c) if such Covered Debt is not Eligible Subordinated Debt of LBHI, the date on which LBHI issues long-term indebtedness for money borrowed that is Eligible Subordinated Debt.

**Replacement Capital Covenant** means the replacement capital covenant dated as of 1 June 2007.

**Replacement Capital Securities** means Common Stock, rights to acquire Common Stock, Qualifying Non-Cumulative Perpetual Preferred Stock or Qualifying Non-Cumulative Perpetual Preferred Securities.

# LEHMAN BROTHERS UK CAPITAL FUNDING V LP

*(a limited partnership organised under the laws of England and Wales)*

## US$ Fixed Rate Enhanced Capital Advantaged
## Preferred Securities (US$ ECAPS®)

having the benefit of a subordinated guarantee of

# LEHMAN BROTHERS HOLDINGS INC.

*(incorporated with limited liability in the State of Delaware)*

The US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities (the **US$ ECAPS®** or the **Preferred Securities**), each with a liquidation preference of US$1,000, will comprise limited partnership interests in Lehman Brothers UK Capital Funding V LP (the **Issuer**).

Holders of the Preferred Securities will receive (subject as described herein under "*Description of the Preferred Securities*") non-cumulative preferential cash distributions (the **Distributions**) payable annually in arrear on the date specified in the Final Terms referred to herein in each year at the fixed rate per annum specified in the Final Terms referred to herein, all as more fully described herein under "*Description of the Preferred Securities*".

See "Risk Factors" for a discussion of certain factors that should be considered by prospective investors, including certain United States federal income tax consequences.

As an English limited partnership, the Issuer will not be a legal entity separate from its partners. The Preferred Securities will benefit from a subordinated guarantee to be dated the Closing Date (the **Subordinated Guarantee**) entered into by Lehman Brothers Holdings Inc. (**LBHI**) of declared dividends and redemption amounts, all as more fully described herein under "*Subordinated Guarantee*".

Application has been made to the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000 (the **UK Listing Authority**) for the Preferred Securities to be admitted to the Official List of the UK Listing Authority (the **Official List**) and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market.

Application will also be made to Euronext Amsterdam N.V. (**Euronext Amsterdam**) for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam. The London Stock Exchange's Gilt Edged and Fixed Interest Market and Euronext Amsterdam are regulated markets for the purposes of Directive 93/22/EC (the **Investment Services Directive**).

This document has been approved by the UK Listing Authority as a base prospectus within the meaning of Directive 2003/71/EC (the **Prospectus Directive**). Certain information relating to the Preferred Securities will be contained in the Final Terms, see "*Summary − Final Terms*" and "*Form of Final Terms*" for details of such information.

Lead Manager

# LEHMAN BROTHERS

The date of this Base Prospectus is 11 May 2007

ECAPS® is a registered trademark of Lehman Brothers

LB GP No. 1 Ltd. in its capacity as the General Partner (the **General Partner**) and LBHI together (the **Responsible Persons**) accept responsibility for the information contained in this Base Prospectus. To the best of the knowledge and belief of the General Partner and LBHI (each having taken all reasonable care to ensure that such is the case) the information contained in this Base Prospectus is in accordance with the facts and does not omit anything likely to affect the import of such information.

No person is or has been authorised to give any information or to make any representation not contained or incorporated in or consistent with this Base Prospectus and, if given or made, such information or representation must not be relied upon as having been authorised by the Issuer, the General Partner, The Bank of New York Depository (Nominees) Limited (**BNYD**), LBHI or the Managers (as defined under "*Subscription and Sale*" below). Neither the delivery of this Base Prospectus nor any subscription, sale or purchase made in connection herewith shall, in any circumstances, create any implication that there has been no change in the affairs of the Issuer, the General Partner, LBHI or the Group (as defined in the Terms and Conditions of the Preferred Securities) since the date hereof.

Neither this Base Prospectus nor any other information supplied in connection with the Preferred Securities (a) is intended to provide the basis of any credit or other evaluation or (b) should be considered as a recommendation by the Issuer, the General Partner, LBHI, BNYD, any member of the Group or the Managers that any recipient of this Base Prospectus or any other information supplied in connection with the Preferred Securities should purchase the Preferred Securities. Each prospective investor contemplating purchasing Preferred Securities should make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness, of the Issuer and LBHI.

Prospective investors should inform themselves as to the legal requirements and tax consequences within the countries of their residence and domicile for the acquisition, holding or disposal of Preferred Securities and any foreign exchange restrictions that might be relevant to them. This Base Prospectus does not constitute an offer of, or an invitation by or on behalf of, the Issuer or any of its partners, the General Partner, BNYD, LBHI or the Managers to subscribe for or purchase any of the Preferred Securities.

Prospective investors should satisfy themselves that they understand all of the risks associated with making investments in the Preferred Securities. If a prospective investor is in any doubt whatsoever as to the risks involved in investing in the Preferred Securities, he should consult his professional advisers.

The distribution of this Base Prospectus and the offering of the Preferred Securities in certain jurisdictions may be restricted by law. Persons into whose possession this Base Prospectus comes are required by the Issuer, the General Partner, LBHI and the Managers to inform themselves about, and to observe, any such restrictions.

In respect of the United Kingdom, this Base Prospectus is directed only at (a) investment professionals falling within article 14(5) of the Financial Services and Markets Act 2000 (Promotion of Collective Investment Schemes) (Exemptions) Order 2001 (the **Promotion of CIS Order**) and article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (the **Financial Promotion Order**), who have professional experience of participating in unregulated schemes and of matters relating to investments; and/or (b) persons falling within article 22(2) of the Promotion of CIS Order and article 49(2) of the Financial Promotion Order; and/or (c) any other persons to whom this Base Prospectus may be communicated lawfully. Preferred Securities are only available to such persons. Persons who (a) do not have such professional experience in participating in unregulated schemes and in matters relating to investments and/or (b) do not fall within said article 22(2) and 49(2) and/or (c) are not persons to whom this Base Prospectus may be communicated lawfully should not rely on this Base Prospectus.

Notwithstanding anything in this Base Prospectus to the contrary, the Issuer, the General Partner, LBHI, the Managers and each prospective investor (and any employee, representative or other agent of the Issuer, the General Partner, LBHI and the Managers or of any prospective investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this Base Prospectus and all materials of any kind (including opinions or other tax analyses, if any) that are provided to them or to it relating to such tax treatment and tax structure. However, any such information

relating to the tax treatment or tax structure is required to be kept confidential to the extent necessary to comply with any applicable federal or state securities laws.

The Preferred Securities may not be offered or sold, directly or indirectly, and neither this Base Prospectus nor any advertisement or other offering material may be distributed or published in any jurisdiction, except in accordance with the legal requirements applicable in that jurisdiction. In particular, the Preferred Securities have not been, and will not be, registered under the United States Securities Act of 1933, as amended (the **Securities Act**). The Preferred Securities may not be offered, sold or delivered within the United States or to, or for the account or benefit of, US persons. A further description of certain restrictions on the offering and sale of the Preferred Securities and on the distribution of this Base Prospectus is given under "*Subscription and Sale*" below.

**IN CONNECTION WITH THE ISSUE OF THE PREFERRED SECURITIES, LEHMAN BROTHERS INTERNATIONAL (EUROPE) OR ANY PERSON ACTING FOR IT MAY OVER-ALLOT THE PREFERRED SECURITIES OR EFFECT TRANSACTIONS WITH A VIEW TO SUPPORTING THE MARKET PRICE OF THE PREFERRED SECURITIES AT A LEVEL HIGHER THAN THAT WHICH MIGHT OTHERWISE PREVAIL. HOWEVER, THERE IS NO ASSURANCE THAT LEHMAN BROTHERS INTERNATIONAL (EUROPE) (OR PERSONS ACTING ON BEHALF OF LEHMAN BROTHERS INTERNATIONAL (EUROPE)) WILL UNDERTAKE STABILISATION ACTION. ANY STABILISATION ACTION MAY BEGIN ON OR AFTER THE DATE ON WHICH ADEQUATE PUBLIC DISCLOSURE OF THE TERMS OF THE OFFER OF THE PREFERRED SECURITIES IS MADE AND, IF BEGUN, MAY BE ENDED AT ANY TIME, BUT IT MUST END NO LATER THAN THE EARLIER OF 30 DAYS AFTER THE CLOSING DATE AND 60 DAYS AFTER THE DATE OF THE ALLOTMENT OF THE PREFERRED SECURITIES. ANY STABILISATION ACTION OR OVER-ALLOTMENT SHALL BE CONDUCTED IN ACCORDANCE WITH ALL APPLICABLE LAWS AND RULES**

All references in this Base Prospectus to **EUR**, **€**, **Euro** and **euro** are to the single currency introduced at the start of the third stage of European economic and monetary union pursuant to the Treaty establishing the European Community, as amended from time to time. All references in this Base Prospectus to **US$** are to United States dollars. All references in this Base Prospectus to **£** are to pounds sterling.

## CONTENTS

|  | Page |
|---|---|
| Summary | 5 |
| Risk Factors | 13 |
| Available Information | 17 |
| Information Incorporated by Reference | 18 |
| Description of the Preferred Securities | 19 |
| Summary of Provisions Relating to the Preferred Securities in Global Form | 32 |
| Subordinated Guarantee | 33 |
| Use of Proceeds | 39 |
| Lehman Brothers UK Capital Funding V LP | 40 |
| Lehman Brothers Holdings Inc. | 43 |
| Consolidated Stockholders' Equity of LBHI | 47 |
| Summary Consolidated Financial Information of LBHI | 48 |
| Taxation | 50 |
| Subscription and Sale | 54 |
| General Information | 57 |
| Form of Final Terms | 60 |

## SUMMARY

**This Summary must be read as an introduction to this Base Prospectus and any decision to invest in any Preferred Securities should be based on a consideration of this Base Prospectus as a whole, including the documents incorporated by reference. Following the implementation of the relevant provisions of the Prospectus Directive in each Member State of the European Economic Area no civil liability will attach to the Responsible Persons in any such Member State in respect of this Summary (including any translation hereof required by the competent authority of any Member State where an offer to the public of the Preferred Securities may be made) unless it is misleading, inaccurate or inconsistent when read together with other parts of this Base Prospectus. Where a claim relating to information contained in this Base Prospectus is brought before a court in a Member State of the European Economic Area, the plaintiff may, under the national legislation of the Member State where the claim is brought, be required to bear the costs of translating the Base Prospectus before the legal proceedings are initiated.**

*Capitalised terms used but not defined in this summary shall bear the respective meanings ascribed to them under "Description of the Preferred Securities"*

| | |
|---|---|
| **Issuer:** | Lehman Brothers UK Capital Funding V LP (the **Issuer**), an English limited partnership formed and registered under the Limited Partnerships Act 1907 (the **Act**). |
| | The business of the partnership, as administered by, or on behalf of, the General Partner, will include the following: |
| | – raising and providing finance and financial support to LBHI; |
| | – acquiring and holding for investment purposes the Issuer's assets; |
| | – monitoring the Issuer's assets and determining whether they continue to be suitable; and |
| | – functions necessary or incidental thereto. |
| | On the Closing Date, the General Partner will use the total of the partners' capital contributions to acquire the Partnership Assets, being the Subordinated Notes and the Third Party Assets. The Subordinated Notes will represent approximately 95 per cent. of the Partnership Assets. |
| **General Partner:** | LB GP No.1 Ltd. (incorporated with limited liability in England and Wales with registered number 5355491), a wholly-owned Subsidiary of LBHI. |
| **Preferential Limited Partner:** | LB Investment Holdings Ltd (incorporated with limited liability in England and Wales with registered number 4385277), a wholly-owned Subsidiary of LBHI or any other Subsidiary of LBHI. |
| | Subject to the payment of the Further Distribution, the Preferential Limited Partner shall be entitled to receive amounts received by the Issuer from its investment in the Partnership Assets in excess of those required to make payments in respect of the Preferred Securities. |
| **Guarantor:** | Lehman Brothers Holdings Inc. (incorporated with limited liability in the State of Delaware). |

LBHI is the ultimate parent company of the Lehman Brothers group. Lehman Brothers' principal business activities are investment banking, capital markets and investment management.

Its global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers, through predecessor entities, was founded in 1850.

**Risk Factors:** There are certain factors that may affect the obligors' ability to fulfil their obligations under the Preferred Securities. These are set out under "*Risk Factors*" below and include the dependence of LBHI on its subsidiaries and the risk of changes in the financial condition and results of operations of the Group by uncertain or unfavourable economic, market, legal and other conditions. In addition, there are certain factors which are material for the purpose of assessing the market risks associated with Preferred Securities. These are set out under "Risk Factors" and include certain risks relating to the structure of the Preferred Securities and certain market risks.

**Issue:** US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities (**US$ ECAPS®**), each with a liquidation preference of US$1,000 (the **Liquidation Preference**), comprising interests in a limited partnership share in the Issuer.

**Subordinated Guarantee:** LBHI will provide a subordinated guarantee to be executed by LBHI on the Closing Date (the **Subordinated Guarantee**) in respect of:

– any due Distributions;

– payments on redemption of the Preferred Securities; and

– any Additional Amounts,

which will be in favour of the Holders.

The Subordinated Guarantee will rank *pari passu* with the non-cumulative perpetual preferred securities or preferred stock of LBHI (whether or not in issue).

The Subordinated Guarantee will not cover payments on liquidation of the Issuer. See "*Rights upon Liquidation*" below.

**Distribution Rate:** The Preferred Securities will entitle Holders to receive (subject as described below) non-cumulative preferential cash distributions (the **Distributions**).

Distributions will be payable out of the Issuer's own legally available resources annually in arrear on the distribution payment date in each year specified in the Final Terms (each a **Distribution Payment Date**).

Distributions will accrue at a rate per annum specified in the Final Terms.

The Holders will receive Distributions from the Issuer only if the Issuer has received sufficient funds from its assets.

In addition the Holders may receive a Further Distribution on redemption.

**Optional Waiver:**

Furthermore, notwithstanding the existence of such resources legally available for distribution by the Issuer, the Holders will not be entitled to receive Distributions if the General Partner has published a No Payment Notice in respect of such Distribution, in which case there will be no payment due under the Preferred Securities.

The General Partner will have full discretion to publish the No Payment Notice in respect of any Distribution at any time and for any reason.

**Mandatory Waiver:**

In addition, without limiting the discretion detailed above, the General Partner will deliver a No Payment Notice if:

–    such payment will cause a Trigger Event; or

–    in respect of the relevant Distribution Payment Date Distributions that would be payable on such date exceed the New Capital Amount if on the Calculation Date relative to such Distribution Payment Date:

(x)    the Trailing Two Quarters Consolidated Net Income Amount of LBHI is not a positive amount for the two-fiscal quarter period ending on the last day of the fiscal quarter that is two fiscal quarters prior to the most recently completed fiscal quarter before that Calculation Date; and

(y)    the Tangible Common Stockholders' Equity Amount of LBHI as of the end of the most recently completed fiscal quarter before that Calculation Date and as of the end of the fiscal quarter that is two quarters before that fiscal quarter has declined in each case by 10 per cent. or more as compared to the Tangible Common Stockholders' Equity Amount of LBHI at the end of the "benchmark fiscal quarter" for that Distribution Payment Date, which is the sixth fiscal quarter preceding the most recently completed fiscal quarter before that Calculation Date.

**Distributions non-cumulative:**

Save as described above, Holders will have no right to participate in the profits of the Issuer or LBHI and in particular will have no right to receive from the Issuer amounts paid under Partnership Assets or otherwise amounts in excess of Distributions due and payable under the Preferred Securities. In the event that any amounts received by the Issuer on the Partnership Assets, which would otherwise have been used by the Issuer (being the holder thereof) to fund such Distribution, exceed the amount (if any) then due by way of Distribution under the Preferred Securities, the amount of such excess will be allocated, subject to payment of the Further Distribution, to the

7

Preferential Limited Partner as and when they are received. Holders will have no rights in respect of such excess.

**Distribution and Capital Stopper:**

In the event that Distributions are not paid on the Preferred Securities, subject as provided in the next sentence, LBHI has undertaken that, in the event that any Distribution is not paid in full, it will not:

(a)    declare or pay any dividend on its shares of common stock; or

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock and/or common stock of LBHI equal to the amount of Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

**Trigger Event and Substituted Preferred Stock:**

If a Trigger Event occurs and is continuing, then, provided that (if required at such time) any relevant Supervisory Authority has not objected, the General Partner shall take all reasonable steps to cause the substitution of the Preferred Securities by depositary shares representing Substituted Preferred Stock.

On the substitution date, each Preferred Security of US$1,000 in nominal amount will be substituted for one depositary share representing Substituted Preferred Stock which will have a nominal amount of US$1,000.

The General Partner will notify Holders if a Trigger Event occurs. In the notice, the General Partner will include information on the procedures for effecting the substitution.

**Optional Redemption:**

If the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms, then to the extent that the redemption proceeds in respect thereof are not used to acquire Replacement Affiliate Investments, the Preferred Securities will also be redeemed by the General Partner, on the

same date, each to be redeemed at the Optional Redemption Price.

Any redemption of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time).

As a result, the relevant Supervisory Authority when granting such a consent for the redemption of the Subordinated Notes or the Replacement Affiliate Investments will also be granting a consent for any redemption of the Preferred Securities.

A Further Distribution may be payable on Optional Redemption.

**Capital Disqualification Event:** If a Capital Disqualification Event occurs and is continuing, the General Partner may substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities so that they become Qualifying Regulatory Capital Securities in accordance with applicable laws and regulations.

**Tax Event:** If a Tax Event occurs and is continuing, the effect of which cannot be avoided by the Issuer, LBHI or the issuer of the Replacement Affiliate Investments, as the case may be, taking reasonable measures available to it or if the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed pursuant to their terms for tax reasons at any time, then, if they are not replaced by Replacement Affiliate Investments, the General Partner at its option may either (i) redeem the Preferred Securities in whole, but not in part, on the same date, each to be redeemed at the Optional Redemption Price or (ii) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will remain as Qualifying Regulatory Capital Securities.

**Rating Agency Event:** If a Rating Agency Event occurs and is continuing, the General Partner at its option may redeem the Preferred Securities in whole, but not in part, at the Optional Redemption Price.

Any redemption of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time).

**Ranking of the Preferred Securities:** The Preferred Securities, together with the Subordinated Guarantee, are intended to provide Holders, with respect to the Issuer, with rights on liquidation of the Issuer equivalent to non-cumulative preferred stock of LBHI, whether or not issued.

Claims under the Preferred Securities in respect of any Liquidation Distributions will rank:

(a)     senior to the rights of the General Partner and the Preferential Limited Partner; and

(b)     junior to the claims of creditors of the Issuer (if any).

**Rights upon Liquidation:**

In the event of the dissolution of the Issuer, Holders will be entitled to receive, subject as set out below, for each Preferred Security a Liquidation Distribution out of the assets of the Issuer legally available for distribution.

LBHI has undertaken that, so long as any of the Preferred Securities is outstanding:

(a)     unless a Trigger Event occurs or LBHI is being wound up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)     the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

**Withholding Tax and Additional Amounts:**

The Issuer will pay such additional amounts (**Additional Amounts**) as may be necessary in order that the net payment received by each Holder in respect of the Preferred Securities, after deduction or withholding of or on account of any taxes imposed by tax authorities in the United States and the United Kingdom upon payments made by or on behalf of the Issuer, will equal the amount which would have been received in the absence of any such deduction or withholding of or on account of taxes, subject to customary exceptions.

The Subordinated Guarantee will contain a similar provision relating to any taxes imposed by tax authorities in the United States.

**Administrator:**

The Issuer will appoint an administrator to perform those operational matters in relation to the Issuer required under the Financial Services and Markets Act 2000 to be performed by a person authorised by the United Kingdom Financial Services Authority to establish, operate and wind-up collective investment schemes.

**Partnership Assets:**

The proceeds raised by the issue of the Preferred Securities together with the Preferential Limited Partner's capital contribution will be used by the Issuer to purchase the Subordinated Notes and the Third Party Assets.

The Subordinated Notes will represent approximately 95 per cent. of the Partnership Assets. The Subordinated Notes will be issued by LBHI, will have a maturity of 30 years and will be redeemable by LBHI on the interest payment date to be specified in the Final Terms (**First Call Date of Subordinated Notes**) or any interest payment date thereafter, subject to there being no objection from any relevant Supervisory Authority.

10

Unless the Preferred Securities are redeemed prior to or simultaneously with the maturity of the Subordinated Notes, then on maturity of the Subordinated Notes or any Replacement Affiliate Investments, the General Partner will, subject to prior consent of the relevant Supervisory Authority (if required at such time), reinvest the proceeds of redemption of the Subordinated Notes or Replacement Affiliate Investments in Replacement Affiliate Investments (or further Replacement Affiliate Investments) that will contain the same terms as the Subordinated Notes in respect of tenor, principal amount, interest payment dates and redemption (including redemption for tax reasons) and will be callable on any interest payment date. However, upon issuance of such Replacement Affiliate Investments, the Distribution Rate will be the rate per annum determined by the then prevailing market conditions for instruments of similar risk and 30 year maturity.

The Third Party Assets will represent approximately 5 per cent. of the Partnership Assets.

**Voting Rights:**

Except as described in "*Description of the Preferred Securities – Meetings*" and as provided in the Act, Holders will not be entitled to receive notice of, or attend or vote at, any meeting of partners in the Issuer or participate in the management of the Issuer.

**Form of the Preferred Securities:**

The Preferred Securities will be in registered form.

On or about the Closing Date, a single global certificate (the **Global Certificate**) in respect of the Preferred Securities will be deposited with The Bank of New York (the **Common Depositary**) as common depositary for Euroclear Bank SA/N.V., (**Euroclear**) and Clearstream Banking, société anonyme (**Clearstream, Luxembourg**). The Global Certificate will be issued, and the Preferred Securities will be registered, in the name of The Bank of New York Depository (Nominees) Limited (the **Initial Limited Partner**) as nominee of the Common Depositary.

For so long as the Preferred Securities are deposited and registered as described above, book-entry interests in the Preferred Securities will be shown on, and transfers thereof will be effected only through, records maintained by Euroclear and Clearstream, Luxembourg.

Definitive certificates will not be made available to Holders other than in certain limited circumstances. See "*Summary of Provisions Relating to the Preferred Securities in Global Form*".

**Listings:**

Application has been made to the UK Listing Authority for the Preferred Securities to be admitted to the Official List and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market which is a regulated market for the purposes of the Investment Services Directive.

Application has also been made to Euronext Amsterdam for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam.

**Ratings:** The Preferred Securities are expected to be assigned, on issue ratings from Standard & Poor's Ratings Group, Moody's Investors Service and Fitch Ratings which will be contained in the Final Terms. A credit rating is not a recommendation to buy, sell or hold securities and may be subject to revision, suspension or withdrawal at any time by the relevant rating organisation.

**Governing Law:** The Limited Partnership Agreement establishing the Issuer and the Preferred Securities will be governed by, and construed in accordance with, English law.

The Subordinated Guarantee will be governed by, and construed in accordance with, New York law.

**Final Terms:** The following information will be contained in the Final Terms:

- Issue Price and Offer Price per Preferred Security;

- Aggregate Nominal Amount of Preferred Securities;

- Distribution Payment Dates;

- Distribution Rate;

- Closing Date;

- First Call Date of Subordinated Notes;

- Net Proceeds;

- Ratings;

- Names and addresses of Managers;

- Combined selling, management and underwriting commission;

- Total estimated expenses (including the commission);

- ISIN;

- Common Code; and

- Fondscode.

## RISK FACTORS

*Prospective investors should carefully consider the following information in conjunction with the other information contained in this Base Prospectus. Capitalised terms used but not defined in this section shall bear the respective meanings ascribed to them under the "Description of the Preferred Securities".*

### Risk Factor relating to LBHI

LBHI is the ultimate parent company of the Lehman Brothers group. The Subordinated Guarantee will be solely LBHI's obligation and no other entity will have any obligation, contingent or otherwise, to make any payments in respect thereof. Because LBHI is a holding company whose primary assets consist of shares of stock or other equity interests in or amounts due from subsidiaries, almost all of its income is derived from those subsidiaries. LBHI's subsidiaries will have no obligation to pay any amount in respect of the Subordinated Guarantee or to make any funds available therefor. Accordingly, LBHI will be dependent on dividends and other distributions or loans from its subsidiaries to generate the funds necessary to meet obligations with respect to the Subordinated Guarantee. Due to covenants contained in certain of LBHI's debt agreements and regulations relating to capital requirements affecting certain of its more significant subsidiaries, the ability of certain subsidiaries to pay dividends and other distributions and make loans to LBHI is restricted. The notes to LBHI's financial statements included in its most recent annual report on Form 10-K set forth the amount of net assets of its subsidiaries that were restricted as to the payment of dividends to LBHI at 30 November 2006. Additionally, as an equity holder, LBHI's ability to participate in any distribution of assets of any subsidiary is subordinate to the claims of creditors of the subsidiary, except to the extent that any claims LBHI may have as a creditor of the subsidiary are judicially recognised. If these sources are not adequate, LBHI may be unable to make payments of principal or interest in respect of the Subordinated Guarantee, and a Holder could lose all or a part of its investment.

### Risk Factors relating to the Group

The financial condition and results of operations of the Group may be affected by uncertain or unfavourable economic, market, legal and other conditions. These conditions include but are not limited to:

#### Market Risk

Changes in interest and foreign exchange rates, financial instruments and real estate valuations and increases in volatility can increase credit and market risks and may also affect customer-flow-related revenues and proprietary trading revenues as well as affect the volume of debt and equity underwritings and merger and acquisition transactions.

#### Competitive Environment

All aspects of the Group's business are highly competitive. The Group's competitive ability depends on many factors, including its reputation, the quality of its services and advice, intellectual capital, product innovation, execution ability, pricing, sales efforts and the talent of its employees.

#### Business Environment

Concerns about geopolitical developments, oil prices and natural disasters, among other things, can affect the global financial markets. Accounting and corporate governance scandals in recent years have had a significant effect on investor confidence.

#### Liquidity

Liquidity and liquidity management are of critical importance in the Group's industry. Liquidity could be affected by the inability to access the long-term or short-term debt, repurchase or securities-lending markets or to draw under credit facilities, whether due to factors specific to the Group or to general market conditions. In addition, the amount and timing of contingent events, such as unfunded commitments and guarantees,

could adversely affect cash requirements and liquidity. To mitigate these risks, the liquidity and funding policies of the Group have been conservatively designed to maintain sufficient liquid financial resources to continually fund its balance sheet and to meet all expected cash outflows, for one year in a stressed liquidity environment.

### Credit Ratings

The Group's access to the unsecured funding markets is dependent on its credit ratings. A reduction in credit ratings could adversely affect the Group's access to liquidity alternatives and its competitive position, and could increase the cost of funding or trigger additional collateral requirements.

### Credit Exposure

Credit exposure represents the possibility that a counterparty will be unable to honour its contractual obligations. Although the Group actively manages credit exposure daily as part of its risk management framework, counterparty default risk may arise from unforeseen events or circumstances.

### Operational Risk

Operational risk is the risk of loss resulting from inadequate or failed internal or outsourced processes, people, infrastructure and technology, or from external events. The Group seeks to minimise these risks through an effective internal control environment.

### Legal, Regulatory and Reputational Risk

The securities and financial services industries are subject to extensive regulation under both federal and state laws in the US and under the laws of the many other jurisdictions in which the Group does business. The Group is also regulated by a number of self-regulatory organisations such as the National Association of Securities Dealers, the Municipal Securities Rulemaking Board and the National Futures Association, and by national securities and commodities exchanges, including the New York Stock Exchange. As of 1 December 2005, LBHI became regulated by the SEC as a consolidated supervised entity, and as such, LBHI is subject to group-wide supervision and examination by the SEC, and accordingly, LBHI is subject to minimum capital requirements on a consolidated basis. Violation of applicable regulations could result in legal and/or administrative proceedings, which may impose censures, fines, cease-and-desist orders or suspension of a firm, its officers or employees. The scrutiny of the financial services industry has increased over the past several years, which has led to increased regulatory investigations and litigation against financial services firms.

Legislation and rules adopted both in the US and around the world have imposed substantial new or more stringent regulations, internal practices, capital requirements, procedures and controls and disclosure requirements in such areas as financial reporting, corporate governance, auditor independence, equity compensation plans, restrictions on the interaction between equity research analysts and investment banking employees and money laundering.

The trend and scope of increased compliance requirements has increased costs necessary to ensure compliance. Our reputation is critical in maintaining our relationships with clients, investors, regulators and the general public, and is a key focus in our risk management efforts.

The Group is involved in a number of judicial, regulatory and arbitration proceedings concerning matters arising in connection with the conduct of its business, including actions brought against the Group and others with respect to transactions in which the Group acted as an underwriter or financial advisor, actions arising out of its activities as a broker or dealer in securities and actions brought on behalf of various classes of claimants against many securities firms and lending institutions, including the Group.

See Part I, Item 1A, Risk Factors, in the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2006 of LBHI filed with the SEC on Form 10-K for additional information about these and other risks inherent in our business.

**Risk Factors relating to the Preferred Securities**

### *Risks Associated with LBHI's Financial Condition*

The Issuer is a newly established limited partnership with no previous operating history or revenues. It is expected that the Issuer's sole source of funds to pay Distributions on the Preferred Securities will be payments which it receives from its investments in Subordinated Notes (issued by LBHI), in Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets.

The rights of Holders shall be represented solely by the Preferred Securities and the Subordinated Guarantee, and under no circumstances will the rights of Holders be represented by the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets nor shall Holders be entitled to receive or hold the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes or any payments due in respect of the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets.

The Preferred Securities are guaranteed on a limited and subordinated basis by LBHI pursuant to the terms of the Subordinated Guarantee. Accordingly, if LBHI's financial condition were to deteriorate, the Holders may suffer direct and materially adverse consequences, including non-payment of Distributions on the Preferred Securities or of payments under the Subordinated Guarantee.

### *Limitations to Remedies of Holders under the Subordinated Guarantee*

In the event that LBHI is in breach of its payment obligations under the Subordinated Guarantee, the terms of the Subordinated Guarantee do not confer rights in favour of the Holders to petition for the winding up of LBHI.

### *Distributions are Discretionary and Not Cumulative*

Distributions on the Preferred Securities are not cumulative. The discretion of the General Partner to resolve that a Distribution should not be paid is unfettered. As set out in "Description of the Preferred Securities", Distributions on the Preferred Securities will be paid on each Distribution Payment Date out of interest received by the Issuer from its investment in the Partnership Assets and from other resources legally available, if any, and only if the General Partner has not published a No Payment Notice. If a No Payment Notice is published, the Holders will not be entitled to receive such Distributions (or any payment under the Subordinated Guarantee in respect of such Distributions) or have any claim in respect thereof. In certain circumstances the General Partner must publish a No Payment Notice.

### *United States Federal Income Taxation of Holders*

There are certain US federal income tax implications associated with purchasing, owning and disposing of the Preferred Securities. This Base Prospectus contains a section entitled "Taxation - Certain United States Federal Income Tax Considerations" which addresses, among other things, the characterisation of the Issuer and the Subordinated Notes for US federal income tax purposes. The transactions described in this Base Prospectus are complex and characterisations other than those described in this Base Prospectus are possible. See "Taxation - Certain United States Federal Income Tax Considerations - Possible Re-characterisation". Any differing treatment arising from a re-characterisation could affect the amount, timing and character of income, gain or loss in respect of an investment in the Preferred Securities.

Investors are urged to consider the taxation section carefully even if they are not generally subject to taxation in the United States. The taxation section is of a general nature only and does not purport to be a complete analysis of all potential tax considerations relating to the Preferred Securities. Accordingly prospective investors should consult their own professional advisors concerning the possible tax consequences of purchasing, holding and/or selling Preferred Securities

### Perpetual Nature of the Preferred Securities

The Preferred Securities have no fixed final redemption date and Holders have no right to call for the redemption of the Preferred Securities. Although the General Partner may redeem the Preferred Securities in whole but not in part in certain circumstances, in each case at the Optional Redemption Price, there are limitations on the General Partner's ability to do so. Therefore, Holders should be aware that they may be required to bear the financial risks of an investment in the Preferred Securities for an indefinite period of time.

### Substitution

If a Trigger Event occurs and is continuing, the General Partner will, provided that (if required at such time) no relevant Supervisory Authority has objected, take all reasonable steps to cause the substitution of the Preferred Securities with depositary shares representing fully paid non-cumulative preferred stock issued directly by LBHI. A Trigger Event shall occur (a) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership, (b) if LBHI has capital adequacy levels which are less than the minimum capital adequacy levels which are imposed by the relevant Supervisory Authority or (c) if the relevant Supervisory Authority, in its sole discretion, informs LBHI that it will not meet its minimum capital requirement in the near term.

Although LBHI has undertaken that, in the event that the Preferred Securities are substituted by depositary shares representing Substituted Preferred Stock, LBHI will apply for admission to trading of the Substituted Preferred Stock on a regulated market for the purposes of the Investment Services Directive (outside the United States). However, there can be no assurance that a competent authority will agree to such admission of Substituted Preferred Stock. In addition, the tax treatment for holders of Substituted Preferred Stock may be different from that for Holders of the Preferred Securities.

### No Limitation on Senior Debt

The obligations of LBHI under the Subordinated Guarantee will rank junior as to payments to all liabilities to creditors of LBHI (including without limitation general creditors and subordinated debt holders excluding Parity Securities and Junior Share Capital) and claims of holders of senior ranking securities. In the event that LBHI is wound-up, liquidated or dissolved, the assets of LBHI would be available to pay obligations under the Subordinated Guarantee only after all payments have been made on such senior liabilities and claims. LBHI is not prohibited from issuing, guaranteeing or otherwise incurring further debt ranking *pari passu* with, or senior to, its obligations under the Subordinated Guarantee. The issue of any such debt may reduce the amount recoverable by Holders of the Preferred Securities under the Subordinated Guarantee. Accordingly, on the winding-up of LBHI and after payment of senior creditors, there may not be a sufficient amount to satisfy the amounts owing to the Holders of the Preferred Securities.

### Absence of Prior Public Markets

The Preferred Securities constitute a new issue of securities by the Issuer. Prior to this issue, there will have been no public market for the Preferred Securities. Although application has been made for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market and on Eurolist by Euronext Amsterdam, there can be no assurance that an active public market for the Preferred Securities will develop and, if such a market were to develop, the Managers are under no obligation to maintain such a market. The liquidity and the market prices for the Preferred Securities can be expected to vary with changes in market and economic conditions, the financial condition and prospects of LBHI and other factors that generally influence the market prices of securities.

## AVAILABLE INFORMATION

LBHI files annual, quarterly and current reports, proxy statements and other information with the Securities and Exchange Commission (the **SEC**). You may read and copy any document LBHI files with the SEC at the SEC's Public Reference Room at 100 F Street, NE, Washington, DC 20549. You may obtain information on the operation of the Public Reference Room by calling the SEC at +1 800 SEC 0330 (or +1 202 551 8090). The SEC maintains an internet site that contains annual, quarterly and current reports, proxy and information statements and other information regarding issuers that file electronically with the SEC. LBHI's electronic SEC filings are available to the public at http://www.sec.gov.

LBHI's public internet site is http://www.lehman.com. LBHI makes available free of charge through its internet site, via a link to the SEC's internet site at http://www.sec.gov, its annual report on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and amendments to those reports filed or furnished pursuant to Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended (the **Exchange Act**), as soon as reasonably practicable after it electronically files such material with, or furnishes it to, the SEC. LBHI also makes available through its internet site, via a link to the SEC's internet site, statements of beneficial ownership of LBHI's equity securities filed by its directors, officers, 10 per cent. or greater shareholders and others under Section 16 of the Exchange Act.

In addition, LBHI currently makes available on http://www.lehman.com its most recent annual report on Form 10-K, its quarterly reports on Form 10-Q for the current fiscal year, its most recent proxy statement and its most recent annual report to stockholders, although in some cases these documents are not available on that site as soon as they are available on the SEC's site.

Copies of the materials referred to in the preceding paragraphs, as well as copies of any current amendment or supplement to this Base Prospectus, may also be obtained from the persons set forth under "*Information Incorporated By Reference*".

## INFORMATION INCORPORATED BY REFERENCE

The following documents which have previously been published or are published simultaneously with this Base Prospectus and have been filed with the Financial Services Authority shall be incorporated in, and form part of, this Base Prospectus:

(a)     the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2005 of LBHI filed with the SEC on Form 10-K including the consolidated and unconsolidated financial statements (including the auditors' report thereon and notes thereto) of LBHI in respect of the years ended 30 November 2005 and 30 November 2004;

(b)     the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2006 of LBHI filed with the SEC on Form 10-K including the audited consolidated and unconsolidated financial statements (including the auditors' report thereon and notes thereto) of LBHI in respect of the years ended 30 November 2006 and 30 November 2005;

(c)     the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 28 February 2007 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 28 February 2007;

Certain of the financial data set out in the Information Incorporated by Reference in items (a) to (c) above is not audited and is derived from Lehman Brothers' internal management and accounting records or publicly available information.

(d)     the LBHI notice of 2007 Annual Meeting of Stockholders and proxy statement dated 26 February 2007 (including the details relating to LBHI's board of directors, director independence, audit committee and shareholders set out on pages 1 to 36 thereof) (the **Proxy Statement**),

save that any statement contained in a document which is deemed to be incorporated by reference herein shall be deemed to be modified or superseded for the purpose of this Base Prospectus to the extent that a statement contained herein modifies or supersedes such earlier statement (whether expressly, by implication or otherwise). Any statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute part of this Base Prospectus.

Any documents themselves incorporated by reference in the documents deemed to be incorporated by reference herein shall not form part of this Base Prospectus.

The Issuer will provide, without charge, to each person to whom a copy of this Base Prospectus has been delivered, upon the oral or written request of such person, a copy of any or all of the documents which or portions of which are incorporated herein by reference. Written or oral requests for such documents should be directed to the Issuer at its specified offices below. In addition, such documents and copies of the Final Terms will be available without charge from the registered offices of the Issuer and the Paying Agents in Amsterdam and London during usual business hours on any weekday (Saturdays and public holidays excepted).

## DESCRIPTION OF THE PREFERRED SECURITIES

*The Preferred Securities are limited partnership interests in the Issuer. The following description should be read in conjunction with, and is subject to the terms of, the Limited Partnership Agreement (as defined below), a copy of which is available for inspection as described under "General Information".*

**1.      Definitions and Interpretation**

In this description of the Preferred Securities, except to the extent that the context otherwise requires:

**Act** means the Limited Partnerships Act 1907, as amended and/or restated from time to time;

**Additional Amounts** means the additional amounts which may be payable by the Issuer in respect of the Preferred Securities as a result of the imposition of United Kingdom or United States withholding taxes as described in paragraph 6;

**Adverse Tax Effect** means the reduction, limitation or denial of any deduction, credit, partnership allocation, deferral, exemption or other relief granted or allowable (including for the avoidance of doubt the ability to surrender any of the foregoing under any consolidation provisions) under US or UK tax principles, as the case may be;

**Agency Agreement** means the agency agreement dated the Closing Date relating to the Preferred Securities between, *inter alios*, LBHI, the Registrar and the Paying and Transfer Agents;

**Business Day** means a day on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealing in foreign exchange and foreign currency deposits) in London and New York;

**Calculation Date**, in respect of any Distribution Payment Date, means the 20th Business Day before such Distribution Payment Date;

A **Capital Disqualification Event** shall occur if a change of the regulations, requirements, guidelines and policies of any relevant Supervisory Authority relating to capital adequacy of financial institutions in the jurisdiction of such Supervisory Authority results in the Preferred Securities or the Subordinated Notes no longer qualifying as regulatory capital pursuant to such regulations, requirements, guidelines and policies;

**Clearstream, Luxembourg** means Clearstream Banking, société anonyme or its successor;

**Closing Date** means the date specified as such in the Final Terms;

**Code** means the United States Internal Revenue Code of 1986;

**Distribution Payment Dates** means the date in each year specified as such in the Final Terms;

**Distribution Period** means the period from, and including, the Closing Date to, but excluding, the first Distribution Payment Date and each period thereafter from, and including, one Distribution Payment Date to, but excluding, the next Distribution Payment Date;

**Distribution Rate** means, in respect of a Distribution Period, the percentage rate determined pursuant to paragraph 2.2;

**Distributions** means the non-cumulative distributions in respect of the Preferred Securities as described under paragraph 2;

**Euroclear** means Euroclear Bank S.A./N.V. or its successor;

**Final Terms** means the Final Terms relating to the Preferred Securities, the format of which will be substantially as set out in the base prospectus relating to the Preferred Securities approved by the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000;

**First Call Date** means the date specified as such in the Final Terms;

19

**Further Distribution** means, if upon redemption of the Preferred Securities the Partnership Assets exceed 100 per cent. of the aggregate of the Preferred Capital Contribution and the capital contribution of the Preferential Limited Partner, in respect of each Preferred Security an amount calculated by the General Partner representing a *pro rata* share of 50 per cent. of any such excess. For the avoidance of doubt there is no obligation on the General Partner or any other person to invest the Partnership Assets in such a way as would guarantee the generation of a Further Distribution;

**GAAP** means, at any date or for any period, US generally accepted accounting principles as in effect on such date or for such period;

**General Partner** means LB GP No.1 Ltd. (incorporated in England and Wales with registered number 5355491), a wholly-owned Subsidiary of LBHI;

**Group** means LBHI and its Subsidiaries;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time;

**Initial Limited Partner** means The Bank of New York Depository (Nominees) Limited (incorporated in England and Wales with registered number 03227439);

**Invested Partnership Assets** means the Subordinated Notes or any Replacement Affiliate Investments and the Third Party Assets;

**Issuer** means Lehman Brothers UK Capital Funding V LP;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to the Subordinated Guarantee and the Parity Securities;

**LBHI** means Lehman Brothers Holdings Inc. (incorporated in the State of Delaware) and its successors and assignees;

**Limited Partnership Agreement** means an agreement dated 10 May 2007 between, *inter alios*, the General Partner and the Preferential Limited Partner establishing the Issuer, as the same may be amended from time to time;

**Liquidation Distribution** means the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment, and (b) any Additional Amounts, in each case in cash only;

**Liquidation Preference** means the liquidation preference of US$1,000 per Preferred Security;

**New Capital Amount** means, at any date, the net proceeds received from new issuances of LBHI common stock or perpetual deferrable preferred stock (whether in one or more public offerings or private placements) during the period commencing on the 90th day prior to such date and designated by LBHI's board of directors at or before the time of issuance as relevant for the purposes of the above financial tests in respect of the Preferred Securities;

**No Payment Notice** means a notice which is published pursuant to paragraph 2.4;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under the Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other

entity and entitled to the benefit of the Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with the Subordinated Guarantee;

**Partnership Assets** means the assets of the Issuer including the Subordinated Notes or Replacement Affiliate Investments and the Third Party Assets;

**Paying and Transfer Agents** means the Principal Paying and Transfer Agent, The Bank of New York (Luxembourg), S.A., ING Bank N.V. and/or such other entities as are appointed by the General Partner on behalf of the Issuer and notified to the Holders as described under paragraph 10;

**Permitted Reorganisation** means a solvent reconstruction, amalgamation, reorganisation, merger or consolidation whereby all or substantially all of the business, undertaking and assets of LBHI are transferred to a successor entity which assumes all of LBHI's obligation under the Subordinated Guarantee;

**Preferential Limited Partner** means, on the Closing Date, LB Investment Holdings Ltd (incorporated in England and Wales with registered number 4385277), a wholly-owned Subsidiary of LBHI or any other Subsidiary of LBHI;

**Preferential Limited Partner Return** means, subject to payment of any Further Distribution, the excess received by the Issuer from Partnership Assets, over any amounts payable to the Holders;

**Preferred Capital Contribution** means, in relation to the Preferred Securities, the aggregate contribution to the assets of the Issuer (being a whole multiple of US$1,000) paid in cash by the Holders and the Preferential Limited Partner;

**Preferred Securities** means the outstanding US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities (**US$ ECAPS**®) of the Issuer, originally issued on the Closing Date, each such security representing an interest of a Holder in the Issuer attributable to the whole of each US$1,000 of the Preferred Capital Contribution and including any further Preferred Securities of the Issuer of the same series issued after the Closing Date and ranking *pari passu* with the Preferred Securities as regards participation in the profits and assets of the Issuer and **Preferred Security** shall be construed accordingly;

**Principal Paying and Transfer Agent** means The Bank of New York or such other entity as is appointed by the General Partner on behalf of the Issuer and notified to the Holders as described in paragraph 10;

**Qualifying Regulatory Capital Securities** means securities which (a) qualify as regulatory capital for the purposes of the Supervisory Authority and (b) would be economically equivalent in all material aspects to the Preferred Securities;

**Rating Agency Event** means a change in the methodology employed by any nationally recognised statistical rating organisation within the meaning of Rule 15c3-1 under the Securities Exchange Act of 1934, as amended, that currently publishes a rating for LBHI or any of its subsidiaries (a **rating agency**) in assigning equity credit to securities such as the Preferred Securities, as such methodology is in effect on the Closing Date (the **current criteria**), which change results in a lower equity credit being assigned by such rating agency to the Preferred Securities as of the date of such change than the equity credit that would have been assigned to the Preferred Securities as of the date of such change by such rating agency pursuant to its current criteria;

**Redemption Date** means the date fixed for redemption under a notice given under paragraph 4.2, 4.3 or 4.5;

**Register** means the register of Holders maintained outside the United Kingdom on behalf of the Issuer;

**Registrar** means The Bank of New York (Luxembourg), S.A. or such other entity appointed by the Issuer and notified to the Holders as described under paragraph 10;

**Replacement Affiliate Investments** means

(a)    subordinated debt securities (other than the Subordinated Notes) that are issued or guaranteed by a member of the Group other than LBHI (but of a comparable rating to LBHI at the relevant time); or

(b)    provided that (if required) the relevant Supervisory Authority has not objected, such other instruments issued by a member of the Group other than LBHI (but of a comparable rating to LBHI at the relevant time),

*provided that* in both cases

(i)    the Replacement Affiliate Investments shall, in the event of their issuance, be debt for US federal income tax purposes; and

(ii)    neither the General Partner nor the Preferential Limited Partner shall be an obligor of the Replacement Affiliate Investments;

**Stock Exchanges** means the London Stock Exchange plc, Euronext Amsterdam N.V. and/or such other stock exchange approved by the General Partner on which the Preferred Securities may be listed from time to time;

**Subordinated Guarantee** means the subordinated guarantee in respect of the Preferred Securities executed by LBHI on the Closing Date;

**Subordinated Notes** means the Fixed Rate Subordinated Notes, originally issued on the Closing Date in the principal amount equal to the aggregate nominal amount of the Preferred Securities, by LBHI and held by the Issuer together with the Third Party Assets as initial partnership assets, or any Replacement Affiliate Investments which are held by the Issuer as part of the partnership assets thereafter;

**Subsidiary** means, in relation to any entity, any company (a) in which that entity holds a majority of the voting rights or (b) of which that entity is a member and has the right to appoint or remove a majority of the board of directors or (c) of which that entity is a member and controls a majority of the voting rights, and includes any company which is a Subsidiary of a Subsidiary of that entity;

**Substituted Preferred Stock** means fully-paid non-cumulative preferred stock issued directly by LBHI bearing a right to dividends calculated in the same manner as the Preferred Securities, having no voting rights (except as required by law) and being subject to optional redemption in the same manner as the Preferred Securities;

**Supervisory Authority** means the US Securities and Exchange Commission or any organisation or authority having supervisory responsibility for the prudential supervision of financial institutions engaged in regulated activities carried on by LBHI or its affiliates;

**Tangible Common Stockholders' Equity Amount** means, as of any quarter end and subject to adjustments described below, LBHI's common stockholders' equity minus identifiable intangible assets and goodwill, in each case as reflected on LBHI's consolidated GAAP balance sheet as of such quarter end and such that all financial terms used in this definition will be determined in accordance with GAAP as applied to and reflected in LBHI's consolidated financial statements as of the relevant dates or for the relevant periods, except (a) that LBHI's common stockholders' equity at any date will be adjusted to exclude extraordinary items, unusual items and infrequently occurring items as defined in APB 30, goodwill impairment as defined in Financial Accounting Standards Board Statements of Financial Accounting Standards (**SFAS**) No. 142 and amounts relating to discontinued operations as defined in SFAS No. 1244 and (b) as provided in the next sentence. If because of a change in GAAP that results in a cumulative effect of a change in accounting principle or a restatement, Tangible Common Stockholders; Equity Amount as of a fiscal quarter end is higher or lower than it would have been in the absence of such change, then, for purposes of the calculations described in paragraph 2.4, Tangible Common Stockholders Equity Amount will be calculated on a pro forma basis as if such change had not occurred;

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United Kingdom, the United States, or any political subdivision of or by any authority therein or thereof having power to tax;

**Tax Event** means a UK Tax Event or a US Tax Event;

**Third Party Assets** means (a) cash or (b) debt securities of entities not affiliated with LBHI represented by instruments which (i) are debt for US federal income tax purposes; (ii) have a rating from Standard & Poor's and/or Moody's Investors Services or an internationally recognised rating agency that signifies investment grade; and (iii) in respect of any payment of interest and/or repayment of principal to a holder of such an instrument are not subject to any withholding or deduction for or on account of any tax;

**Trailing Two Quarters Consolidated Net Income Amount** means, for any fiscal quarter and subject to adjustments described below, the sum of LBHI's consolidated net income for the two fiscal quarters ending as of the last day of such fiscal quarter. Financial terms used in this definition will be determined in accordance with GAAP as applied to and reflected in LBHI's consolidated financial statements for the relevant periods, except (a) that LBHI's consolidated net income for any period will be adjusted to exclude extraordinary items, unusual items and infrequently occurring items as defined in APB 30, goodwill impairment as defined in Financial Accounting Standards Board Statements of Financial Accounting Standards (**SFAS**) No. 142 and amounts relating to discontinued operations as defined in SFAS No. 144 and (b) as provided in the next sentence. If because of a change in GAAP that results in a cumulative effect of a change in accounting principle or a restatement, consolidated net income is higher or lower than it would have been in the absence of such change, then, for purposes of calculating the calculations described in paragraph 2.4, commencing with the fiscal quarter for which such change in GAAP becomes effective, such consolidated net income will be calculated on a pro forma basis as if such change had not occurred;

**Trigger Event** shall occur (a) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership, (b) if LBHI has capital adequacy levels which are less than the minimum capital adequacy levels which are imposed by the relevant Supervisory Authority or (c) if the relevant Supervisory Authority, in its sole discretion, informs LBHI that it will not meet its minimum capital requirement in the near term;

**UK Tax Event** means that, as a result of any change (each a **Relevant Change**) in, or prospective or actual amendment to, the laws of the United Kingdom or any political subdivision or authority thereof having power to tax, or any change in the application of such laws, or in the official or generally published interpretation of such laws (including the enactment of any legislation, any judicial decision or any regulatory determination in the UK), or any interpretation or pronouncement by any relevant tax authority that provides for a position with respect to such laws or regulations that differs from the previously generally accepted position in relation to similar transactions or which differs from any specific written confirmation given by a tax authority in respect of the Preferred Securities and/or the Subordinated Notes, which change or amendment becomes effective or is to take effect, on or after the Closing Date, there is more than an insubstantial risk that:

(a)     the Issuer or the General Partner would be subject to more than a *de minimis* amount of tax in respect of the Subordinated Notes or the Preferred Securities in the UK (except, in the case of the General Partner only, for any such tax that would arise as a result of (i) profits arising to it as a result of payments received by it from the Issuer or (ii) activities (if any) carried on by it other than those permitted or contemplated in the Limited Partnership Agreement in respect of the Subordinated Notes and the Preferred Securities);

(b)     payments to Holders (including payments in respect of the Preferred Securities and the Subordinated Guarantee) would be subject to deduction or to withholding of or on account of tax in the UK or would give rise to any obligation to account for any tax in the UK;

(c)     payments in respect of the Subordinated Notes would be subject to deduction or to withholding of or on account of tax in the UK or would give rise to any obligation to account for any tax in the UK; or

(d)     the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities have, or will have, an Adverse Tax Effect on the Issuer, LBHI, the General Partner, LBHI or any other company with which LBHI is grouped for UK tax purposes;

**US Tax Event** means that, as a result of (a) any amendment to, change in or announced proposed change in the laws (or any regulations thereunder whether in proposed, temporary or final form) of the United States or any political subdivision or taxing authority thereof or therein, (b) a judicial decision interpreting,

23

applying or clarifying such laws or regulations, (c) an administrative pronouncement or action that represents an official position (including a clarification of an official position) of the governmental authority or regulatory body making such administrative pronouncement or taking such action, or (d) a threatened challenge asserted in connection with an audit of the Issuer, LBHI or the General Partner, or a threatened challenge asserted in writing against any other taxpayer that has raised capital through the issuance of securities similar to the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities, which amendment or change is adopted or which decision, pronouncement or proposed change is announced or which action, clarification or challenge occurs on or after the date of the issuance of the Preferred Securities, there is more than an insubstantial risk that:

(i)      the Issuer is or would be subject to more than a *de minimis* amount of tax or similar assessments (including, for the avoidance of doubt, any withholding tax) in the United States;

(ii)     payments on the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities are or would be subject to deduction or to withholding of or on account of tax imposed by a governmental authority in the United States; or

(iii)    the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities have, or will have, an Adverse Tax Effect on the Issuer, the General Partner, LBHI or any other company with which LBHI is affiliated for US tax purposes.

In this description of the Preferred Securities any reference to a particular time shall, unless otherwise specified, be to New York time.

## 2.    Distributions

2.1    Subject as provided in paragraphs 2.3 and 2.4, non-cumulative distributions (the **Distributions**) on the Preferred Securities will accrue from the Closing Date (or, in the case of any further preferred securities issued pursuant to paragraph 8.4, from their respective dates of issue) and shall be payable out of the Issuer's own legally available resources annually in arrear on each Distribution Payment Date.

2.2    Distributions will be payable at the Distribution Rate being the rate per annum specified in the Final Terms. Where Distributions are to be calculated in respect of any period, such Distributions shall be calculated on the basis of a 360-day year consisting of 12 months of 30 days each and rounding the resultant figure to the nearest cent, half a cent being rounded upwards.

2.3    Subject to clause 2.4, Holders will be entitled to receive Distributions from the Issuer if it has received sufficient funds under the Partnership Assets.

2.4    Furthermore, notwithstanding the existence of such resources legally available for distribution by the Issuer, the Holders will not be entitled to receive Distributions if the General Partner has published a No Payment Notice in respect of such Distribution, in which case there will be no payment due under the Preferred Securities.

The General Partner will have the full discretion to publish the No Payment Notice in respect of any Distribution at any time and for any reason.

In addition, without limiting the discretion detailed above, the General Partner will deliver a No Payment Notice if:

•       such payment will cause a Trigger Event;

•       the Partnership Assets will not be sufficient to allow the Issuer to pay a full distribution when due; or

•       in respect of the relevant Distribution Payment Date Distributions that would be payable on such date exceed the New Capital Amount if on the Calculation Date relative to such Distribution Payment Date:

(x)     the Trailing Two Quarters Consolidated Net Income Amount is not a positive amount for the two-fiscal quarter period ending on the last day of the fiscal quarter that is two fiscal quarters prior to the most recently completed fiscal quarter before that Calculation Date; and

(y)     the Tangible Common Stockholders' Equity Amount as of the end of the most recently completed fiscal quarter before that Calculation Date and as of the end of the fiscal quarter that is two quarters before that fiscal quarter has declined in each case by 10 per cent. or more as compared to the Tangible Common Stockholders' Equity Amount at the end of the "benchmark fiscal quarter" for that Distribution Payment Date, which is the sixth fiscal quarter preceding the most recently completed fiscal quarter before that Calculation Date.

2.5    No Holder shall have any claim in respect of any Distribution or part thereof not payable as a result of the limitation set out in paragraph 2.4. Accordingly, such amounts will not cumulate for the benefit of Holders or entitle the Holders to any claim in respect thereof against the Issuer or against LBHI under the Subordinated Guarantee.

2.6    Save as described above and in respect of a Further Distribution, Holders will have no right to participate in the profits of the Issuer or LBHI and in particular will have no rights to receive from the Issuer any amounts paid to the Issuer, amounts paid under the Partnership Assets or otherwise amounts in excess of Distributions due and payable under the Preferred Securities. In the event that any amounts received by the Issuer on the Partnership Assets, exceed the amount (if any) then due by way of Distribution under the Preferred Securities, the amount of such excess will be paid to the Preferential Limited Partner as and when they are received. Holders will have no rights in respect of such excess.

## 3.    Liquidation Distributions

3.1    In the event of the dissolution of the Issuer, the Holders will be entitled to receive the Liquidation Distribution, in respect of each Preferred Security held, out of the assets of the Issuer available for distribution to such Holders under the Act. Such entitlement will arise (a) before any payments due to the General Partner and the Preferential Limited Partner and (b) before any distribution of assets is made to the General Partner, but such entitlement will rank equally with the entitlement of the holders of all other preferred securities issued by the Issuer which rank *pari passu* with the Preferred Securities, if any.

3.2    After payment of all Liquidation Distributions, or the relevant proportion thereof if applicable, the General Partner will be entitled to any remaining assets of the Issuer representing proceeds of the sale or redemption of the Issuer's partnership assets and the Holders will have no right or claim to any of the remaining assets of the Issuer or LBHI. For the avoidance of doubt, Holders will have no right to receive the Partnership Assets.

3.3    Subject to the Act, other than in the events referred to in paragraphs 4.2, 4.3, 4.5, 4.8 and 5, the General Partner will not permit, or take any action that would or might cause, the liquidation or dissolution of the Issuer. No Holder shall have any claim (whether against the Issuer or LBHI) in respect of any Liquidation Distribution or part thereof not paid when it would, but for the operation of this paragraph 3.3, otherwise have become due.

## 4.    Redemption, Purchases, Substitution and Variation

4.1    The Preferred Securities have no fixed final redemption date and Holders have no right to call for the redemption of the Preferred Securities. Any redemption is subject to the provisions of the Act.

4.2    If the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms, then if the redemption proceeds in respect thereof are not used to acquire

Replacement Affiliate Investments, the Preferred Securities will also be redeemed, in whole but not in part, by the General Partner on the same date, each to be redeemed at the Optional Redemption Price.

4.3    If a Tax Event occurs and is continuing, the effect of which cannot be avoided by the Issuer, LBHI or the issuer of the Replacement Affiliate Investments, as the case may be, taking reasonable measures available to it or if the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed pursuant to their terms for tax reasons, then if they are not replaced by Replacement Affiliate Investments, the General Partner on the same date at its option may either (a) redeem the Preferred Securities in whole, but not in part, on the same date, each to be redeemed at the Optional Redemption Price or (b) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will be Qualifying Regulatory Capital Securities.

4.4    Prior to the publication of any redemption pursuant to paragraph 4.3, the General Partner shall deliver to the Registrar a certificate signed by two members of the board of directors of LBHI stating that the Issuer is entitled to effect such redemption and an opinion of counsel to LBHI experienced in such matters to the effect that a Tax Event has occurred and specifying which of the clauses as set out in the definition of "Tax Event" is applicable.

4.5    If a Rating Agency Event occurs and is continuing, the General Partner at its option may either (a) redeem the Preferred Securities in whole, but not in part, at the Optional Redemption Price or (b) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will be Qualifying Regulatory Capital Securities which, in either case, have the same equity credit (as such term is used in the definition of Rating Agency Event) as applied to the Preferred Securities before the Rating Agency Event.

4.6    Prior to the publication of any redemption pursuant to paragraph 4.5, the General Partner shall deliver to the Registrar a certificate signed by two members of the board of directors of LBHI stating that the Issuer is entitled to effect such redemption.

4.7    Any redemption or purchase of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time). As a result, the relevant Supervisory Authority when granting such a consent for the redemption or purchase of the Subordinated Notes and/or Replacement Affiliate Investments will also be granting their consent for any redemption or purchase of the Preferred Securities. The relevant Supervisory Authority may impose conditions on any such redemption or purchase.

4.8    All Preferred Securities which are redeemed will forthwith be cancelled and any Preferred Securities which are purchased may be cancelled. Any Preferred Securities cancelled accordingly may not be reissued or resold.

4.9    If a Capital Disqualification Event occurs and is continuing, the General Partner may substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities so that they become Qualifying Regulatory Capital Securities in accordance with applicable laws and regulations.

**5.    Substitution for Preferred Stock**

5.1    If a Trigger Event occurs, then, provided that (if required at such time) no relevant Supervisory Authority has objected, the General Partner shall take all reasonable steps to cause the substitution of the Preferred Securities by depositary shares representing Substituted Preferred Stock (the **Preferred Securities Substitution**) on the Substitution Date, as defined below.

As soon as reasonably practicable following the occurrence of a Trigger Event, the General Partner shall cause notice (the **Trigger Event Notice**) to be given to the Holders (in accordance with paragraph 10) and to the Stock Exchanges that the depositary shares representing Substituted

26

Preferred Stock will be available from the date (the **Substitution Date**) specified in the Trigger Event Notice for the purpose.

Until such time as the Trigger Event Notice is given by the General Partner (in accordance with paragraph 10), Holders will continue to be entitled to receive Distributions and/or a Liquidation Distribution in respect of the Preferred Securities but thereafter Holders will have no further rights, title or interest in or to their Preferred Securities except to have them substituted in the manner and to the persons described below.

The Trigger Event Notice will contain a form of substitution confirmation (the **Preferred Securities Substitution Confirmation**) to be completed by each Holder (or, for so long as the Preferred Securities are registered in the name of a nominee of a common depositary for Euroclear and Clearstream, Luxembourg, by each accountholder named in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in the Preferred Securities). The form of Preferred Securities Substitution Confirmation shall also be made available at the offices of each Paying and Transfer Agent. To receive Substituted Preferred Stock in respect of its holding of Preferred Securities, a Paying and Transfer Agent must receive from the Holder (or such accountholder, as the case may be) a Preferred Securities Substitution Confirmation together with the certificate representing the relative holding of Preferred Securities or other evidence of entitlement satisfactory to the General Partner.

Each share of Substituted Preferred Stock allotted will rank for any dividend from the immediately preceding Distribution Payment Date but otherwise will have no entitlement to any accrued Distributions or any other payment in respect of the Preferred Securities.

Upon a Preferred Securities Substitution, each Holder (or, as the case may be, accountholder) shall receive in respect of each US$1,000 Liquidation Preference of Preferred Securities, one depositary share representing Substituted Preferred Stock with a nominal amount of US$1,000.

No Preferred Securities Substitution will take place and the Holders will continue to hold their Preferred Securities and all their rights thereunder if prior to the Substitution Date, a winding-up of LBHI occurs.

*LBHI has undertaken that it will pay any taxes or capital duties or stamp duties payable in the UK arising on the allotment and issue of the depositary shares representing Substituted Preferred Stock. LBHI will not be obliged to pay, and each Holder (or, as the case may be, accountholder) delivering Preferred Securities and a duly completed Preferred Securities Substitution Confirmation to a Paying and Transfer Agent must pay, any other taxes, stamp duty reserves taxes and capital, stamp, issue and registration duties arising on the relevant Preferred Securities Substitution. LBHI will not be obliged to pay and each recipient must pay all, if any, taxes arising by reference to any disposal or deemed disposal of a Preferred Security in connection with such Preferred Securities Substitution.*

5.2     The General Partner will use all reasonable endeavours to procure that certificates (if any) for depositary shares representing Substituted Preferred Stock issued on a Preferred Securities Substitution will be despatched by mail free of charge (but uninsured and at the risk of the person entitled thereto) within one month after receipt of a duly completed Preferred Securities Substitution Confirmation.

**6.    Additional Amounts and Characterisation**

6.1     All payments in respect of the Preferred Securities by the Issuer will be made without withholding or deduction for, or on account of, any Tax, unless the withholding or deduction of such Tax is required by law. In that event, each Holder will be entitled to receive, as further distributions, such additional amounts (the **Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable in respect of the Preferred Securities in the absence of such withholding or deduction; except that no such Additional Amounts will be payable to a Holder (or to a third party on his behalf) with respect to any Preferred Security:

(a)    to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United Kingdom or the United States, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)    where the Holder is related to LBHI within the meaning of either section 871(h) or section 881(c) of the Code; or

(c)    where the Holder is a bank whose receipt of income from the Preferred Securities is (in whole or in part) pursuant to an extension of credit by the bank to LBHI in the ordinary course of its banking business within the meaning of section 881(c) of the Code; or

(d)    where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive; or

(e)    where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required,

and except that the Issuer's obligation to make any such payments is subject to the limitations provided in paragraphs 2 and 3.

6.2    By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Preferential Limited Partner, General Partner and LBHI agree, to treat the Issuer as a partnership for US federal income tax purposes and for US federal income tax purposes to treat the Preferred Securities as equity interests in such partnership and not as a direct interest in LBHI or in any other person.  In addition, by purchasing the Preferred Securities, each Holder agrees, and the Issuer, Preferential Limited Partner, General Partner and LBHI agree, to treat the Subordinated Notes as indebtedness for all US federal income tax purposes.

## 7.    Payments

7.1    Distributions will be payable in accordance with the Act on the relevant Distribution Payment Date (or where any Distribution Payment Date is not a Business Day on the next Business Day (without interest in respect of such delay)) to the Holders of record as they appear on the Register on the relevant record date, which will be five Business Days prior to the relevant Distribution Payment Date.

If the General Partner gives a notice of redemption pursuant to paragraph 4.2, 4.3 or 4.5 or in respect of the Preferred Securities, then on the relevant Redemption Date the General Partner shall procure that the Optional Redemption Price will be paid by the Registrar or by the Paying and Transfer Agents on behalf of the Issuer to the Holders. To the extent that a Further Distribution falls to be paid on redemption of the Preferred Securities it shall be paid together with the Optional Redemption Price. Upon such payment, all rights of Holders to participate in the assets of the Issuer or to be returned any amount in respect of the Preferred Securities (including the Preferred Capital Contribution (or any part thereof) made by or on behalf of the Holders) will be extinguished and the Holders shall thereupon cease to be limited partners of the Issuer provided their holding of Preferred Securities is redeemed in accordance with the foregoing, and the Preferred Capital Contribution will, on payment of the Optional Redemption Price, be deemed repaid.

7.2    Subject to all applicable fiscal or other laws and regulations:

(a)    each payment in respect of Distributions will be made by cheque and mailed to the Holder of record at such Holder's address as it appears on the Register on the relevant record date for the Preferred Securities; and

(b)    any payment in respect of the Optional Redemption Price or the Liquidation Distribution in respect of any Preferred Security will be made by cheque against presentation and surrender of

the relevant certificate of entitlement at the office of the Registrar or a Paying and Transfer Agent,

provided, however, that a Holder may receive such payment by direct transfer if appropriate direct transfer instructions have been received by the Registrar in sufficient time prior to the relevant date of payment. Holders will not be entitled to any interest or other payment for any delay after the due date in receiving the amount due if the due date is not a Business Day, if the Holder is late in surrendering certificates (if required to do so) or if a cheque mailed in accordance with this paragraph arrives after the due date for payment.

In the event that payment of the Optional Redemption Price in respect of any Preferred Security is improperly withheld or refused and not paid by the Issuer, Distributions on such Preferred Security, subject as described in paragraphs 2.3 and 2.4, will continue to accrue, from the relevant Redemption Date to the date of actual payment of such Optional Redemption Price.

7.3    The General Partner will, and LBHI has undertaken in the Subordinated Guarantee that it will procure that the General Partner will, maintain at all times whilst the Preferred Securities are outstanding (a) whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission, (b) a Registrar having its office outside the United Kingdom and (c) a Paying and Transfer Agent having a specified office in a European Union Member State other than the United Kingdom that will not be obliged to withhold or deduct tax pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive.

## 8.    Meetings

8.1    Except as described below and provided for in the Act, Holders will not be entitled to receive notice of, or attend or vote at, any meeting of partners in the Issuer or participate in the management of the Issuer.

8.2    The consent in writing of the Holders of at least a simple majority in Liquidation Preference of the outstanding Preferred Securities or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities, shall be required in order to give effect to any variation or abrogation of the rights, preferences and privileges of the Preferred Securities by way of amendment of the Limited Partnership Agreement or otherwise (unless otherwise provided in the terms of the Preferred Securities or as required by applicable law).

8.3    No such sanction shall be required if, as determined by the General Partner, the change is solely of a formal, minor or technical nature or is to correct an error or cure an ambiguity or which does not adversely affect the rights of Holders (provided that the change does not reduce the amounts payable to Holders, impose any obligation on the Holders or any modification of the terms of the Preferred Securities) in which case the General Partner shall be authorised to approve and implement such change.

8.4    Notwithstanding the foregoing, the General Partner may, without the consent or sanction of the Holders, take such action as is required in order to amend the Limited Partnership Agreement:

(a)    to allow an increase in the level of the Preferred Capital Contributions and the corresponding number of Preferred Securities; or

(b)    to authorise, create and issue one or more other series of securities or partnership interests in the Issuer ranking junior, as regards participation in the profits and assets of the Issuer, to the Preferred Securities and to admit, if relevant, new holders in respect thereof.

Thereafter the Issuer may, provided that the circumstances for non-payment of Distributions in paragraph 2.4 are not subsisting, without the consent of the Holders issue any such further securities

either having the same terms and conditions as the Preferred Securities in all respects (or in all respects except for the first payment of Distributions on them) and so that such further issue shall be consolidated and form a single series with the Preferred Securities or upon such other terms as aforesaid. References herein to the Preferred Securities include (unless the context requires otherwise) any other securities issued pursuant to this paragraph and forming a single series with the Preferred Securities.

8.5    Notwithstanding the foregoing, no vote of the Holders will be required for the redemption, cancellation or substitution of the Preferred Securities or withdrawal of a Holder in accordance with the Limited Partnership Agreement.

8.6    The General Partner will cause a notice of any meeting at which Holders are entitled to vote and any voting forms to be mailed to each Holder. Each such notice will include a statement setting forth (a) the date, time and place of such meeting, (b) a description of any resolution to be proposed for adoption at such meeting on which such Holders are entitled to vote and (c) instructions for the delivery of proxies.

## 9.    Covenant of the General Partner

The General Partner undertakes not to incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interests in the Issuer, performing its obligations in respect of the Limited Partnership Agreement, maintaining the listing of the Preferred Securities and any other partnership interests in the Issuer (where applicable), the Register, the Registrar, the Paying and Transfer Agents and a listing agent in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the Issuer, the Issuer's holding of the partnership assets and any securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of a custodian therefor, the exercise of the Issuer's rights in respect of the partnership assets and any securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer.

## 10.    Notices

All notices to the Holders will be mailed to the Holder of record and in addition, if and for so long as the Preferred Securities are admitted to trading on the regulated market of a Stock Exchange, notices will be given in accordance with regulations relating to such admission. Any mailed notice shall be deemed to have been given one clear day after the date on which it was posted and any notice published in a newspaper shall be deemed to have been given on the date of publication or, if so published more than once or on different dates, on the date of the first publication.

## 11.    Transfers and Form

The Preferred Securities will be in registered form each with a Liquidation Preference of US$1,000.

If definitive certificates are made available in respect of Preferred Securities they will be available from the Registrar and from each of the Paying and Transfer Agents, and will be posted to the relevant Holders at the address shown in the Register or, as applicable, in the relevant instrument of transfer within three Business Days in London of issue, by uninsured post at the risk of such Holders. Transfers of Preferred Securities if represented by definitive certificates may be effected by presentation of the relevant certificate (with the transfer certificate attached thereto duly completed on behalf of the transferor and transferee) at the specified office of the Registrar or any Paying and Transfer Agent. Where a Holder transfers some only of the Preferred Securities represented by any such certificate he shall be entitled to a certificate for the balance without charge at the specified office of the Registrar or any Paying and Transfer Agent. All transfers of Preferred Securities by Holders must be effected in accordance with the Act and subject to the provisions of the Limited Partnership Agreement.

**12.    Replacement of Certificates**

If a certificate is damaged or defaced or alleged to have been lost, stolen or destroyed, a new certificate representing the same Preferred Securities may be issued on payment of such fee and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses as the General Partner may think fit and on payment of the costs of the General Partner incidental to its investigation of the evidence and, if damaged or defaced, on delivery up of the old certificate at the office of the Registrar or any Paying and Transfer Agent.

**13.    Prescription**

Claims against the Issuer for payment of Distributions and sums in respect of the Optional Redemption Price or Liquidation Distribution of the Preferred Securities will be prescribed in accordance with English law unless made within ten years from the date on which such payment becomes due or, if later, the date on which the Issuer makes such payment available to Holders.

**14.    Governing Law and Jurisdiction**

14.1    The Limited Partnership Agreement and the Preferred Securities shall be governed by, and construed in accordance with, English law.

14.2    The Guarantor agrees for the benefit of the Holders that the courts of England shall have jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with the Preferred Securities (respectively **Proceedings** and **Disputes**) and, for such purposes, irrevocably submits to the jurisdiction of such courts.

14.3    The Guarantor irrevocably waives any objection which it might now or hereafter have to the courts of England being nominated as the forum to hear and determine any Proceedings and to settle any Disputes, and agrees not to claim that any such court is not a convenient or appropriate forum.

14.4    LBHI agrees that the documents which start any Proceedings and any other documents required to be served in relation to those Proceedings may be served on it by being delivered to it at 25 Bank Street, London, E14 5LE, England or at any other address in Great Britain at which service of process may be served on it in accordance with Part XXIII of the Companies Act 1985. This paragraph 14 applies to Proceedings in England and to Proceedings elsewhere. If the appointment of the person mentioned in this paragraph 14.4 ceases to be effective, LBHI shall forthwith appoint a person in England to accept service of process on its behalf in England and notify the name and address of such person to the Principal Paying and Transfer Agent and, failing such appointment within fifteen days, any Holder shall be entitled to appoint such a person by written notice addressed to LBHI and delivered to the LBHI or to the specified office of the Principal Paying and Transfer Agent. Nothing in this paragraph shall affect the right of any Holder to serve process in any other manner permitted by law.

14.5    The submission to the jurisdiction of the courts of England shall not (and shall not be construed so as to) limit the right of any Holder to take Proceedings in any other court of competent jurisdiction, nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not) if and to the extent permitted by law.

## SUMMARY OF PROVISIONS RELATING TO THE PREFERRED SECURITIES IN GLOBAL FORM

**Initial Issue of Preferred Securities**

The Preferred Securities will be issued in registered form and will be initially represented by interests in a Global Certificate which will be deposited with The Bank of New York (the **Common Depositary**) as common depositary for Euroclear and Clearstream, Luxembourg. The Preferred Securities will be registered in the name of the Initial Limited Partner, as nominee for the Common Depositary. For so long as the Preferred Securities are deposited and registered as described above, book-entry interests in the Preferred Securities will be shown on, and transfers of such interests will be effected only through, records maintained by Euroclear and Clearstream, Luxembourg.

**Exchange**

If either or both of Euroclear and Clearstream, Luxembourg is or are closed for business for a continuous period of 14 days (other than for the purposes of a public holiday) or announces an intention permanently to cease business, then a number of Preferred Securities corresponding to its book-entry interest in the Preferred Securities represented by the Global Certificate held by the Common Depositary referred to above will, subject to such reasonable requirements as the General Partner may require, be transferred to each holder of an interest in the Preferred Securities whose name is notified by the Common Depositary to the Registrar. Each such holder will be registered as a Holder in the Register and registered with the Registrar at Companies House in Cardiff on the Limited Partnerships Register in accordance with the Act and will receive a certificate made out in its name. Other than in the circumstances referred to in this paragraph, definitive certificates will not be available to Holders.

**Accountholders**

So long as the Preferred Securities are registered in the name of a nominee for a common depositary for Euroclear and Clearstream, Luxembourg, the nominee for Euroclear and Clearstream, Luxembourg will be the sole registered owner or holder of the Preferred Securities represented by the Global Certificate for all purposes under the Limited Partnership Agreement. Except as set forth under "*Description of Preferred Securities – Transfers and Form*" and under "*Transfers of Interests*" below, the persons shown in the records of Euroclear, Clearstream, Luxembourg or any other clearing system as the holders of the Preferred Securities evidenced by the Global Certificate (each an **Accountholder**) will not be entitled to have Preferred Securities registered in their names, will not receive or be entitled to receive physical delivery of definitive certificates evidencing interests in the Preferred Securities and will not be considered registered owners or holders thereof under the Limited Partnership Agreement. Accordingly, each Accountholder must rely on the rules and procedures of Euroclear and Clearstream, Luxembourg, as the case may be, to exercise any rights and obligations of an investor in Preferred Securities.

**Payment**

Each Accountholder must look solely to Euroclear or Clearstream, Luxembourg, as the case may be, for its share of each payment made by the Issuer to the registered holder of the Preferred Securities and in relation to all other rights arising under the Global Certificate, subject to and in accordance with the respective rules and procedures of Euroclear or Clearstream, Luxembourg, as the case may be. Such persons shall have no claim directly against the Issuer in respect of payments due on the Preferred Securities for so long as the Preferred Securities are represented by the Global Certificate and such obligations of the Issuer will be discharged by payment to the registered holder of the Preferred Securities in respect of each amount so paid.

**Transfers of Interests**

Accountholders will only be able to transfer their beneficial interests in the Preferred Securities in accordance with the restrictions described under "*Description of Preferred Securities – Transfers and Form*" and the rules and procedures of Euroclear or Clearstream, Luxembourg, as the case may be.

## SUBORDINATED GUARANTEE

*The following is the Subordinated Guarantee substantially in the form to be executed by LBHI.*

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated [*Closing Date will be inserted here*], is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

## 1.    Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 10 May 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities (**US$ ECAPS®**) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are entitled to

the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

## 2. Guarantee

2.1 Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2 All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

(a) to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b) where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

(c) where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

(d) where the Holder would not have been entitled to Additional Amounts.

2.3 LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4 The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

(a) the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

(b) the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

(c) any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms

of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

(d)    the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e)    any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f)    the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5    This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6    A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7    LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8    LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9    Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a)    junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b)    *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c)    senior to the Junior Share Capital of LBHI.

2.10    No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event

of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11   In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

## 3.   Undertakings of LBHI

3.1   LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2   Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)   declare or pay any dividend on its shares of common stock; or

(b)   repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)   dividends or distributions in the form of LBHI's common stock;

(ii)   any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)   purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3   LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)   unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)   the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

## 4.   Termination

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)   full payment of the Optional Redemption Price;

(b)     purchase and cancellation of all Preferred Securities;

(c)     dissolution of the Issuer; or

(d)     if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

**5.     Transfer; Amendment; Notices**

5.1     Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2     Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3     Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:   Corporate Counsel
Facsimile:   (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4     This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

**6.**    **Governing Law**

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor


By: _____
      Name:
      Title:

**USE OF PROCEEDS**

The net proceeds of the issue of the Preferred Securities which will be set out in the Final Terms will augment the capital base of LBHI. The Issuer will use the net proceeds of the issue of the Preferred Securities to subscribe for the Partnership Assets.

## LEHMAN BROTHERS UK CAPITAL FUNDING V LP

**Introduction**

The Issuer was registered in England and Wales on 10 May 2007 under the Limited Partnerships Act 1907, with LB GP No. 1 Ltd. as the general partner (in such capacity, the **General Partner**) and LB Investment Holdings Ltd as the preferential limited partner (the **Preferential Limited Partner**). The General Partner, the Preferential Limited Partner and BNYD have, *inter alios*, entered into a limited partnership agreement on 10 May 2007 (the **Limited Partnership Agreement**) for the purpose of establishing the Issuer. Pursuant to the Limited Partnership Agreement, it is intended that BNYD, as the nominee company of the common depositary for Euroclear and Clearstream, Luxembourg will become a limited partner (i.e. the Initial Limited Partner) of the Issuer with effect from the Closing Date. The Issuer is not a legal entity separate from its partners and has no subsidiaries. The Limited Partnership Agreement does not create a trust relationship between any of the partners. The Issuer will be dissolved upon redemption of the Preferred Securities. The Issuer's registered office is 25 Bank Street, London E14 5LE. It has no telephone number.

The General Partner, incorporated with limited liability in England and Wales with registered number 5355491 is a wholly-owned subsidiary of LBHI and is the sole general partner of the Issuer. The General Partner's registered office is 25 Bank Street, London E14 5LE. As such, the General Partner solely manages the Issuer (subject to the appointment by the Issuer of the Administrator as described below). The Issuer is a wholly controlled subsidiary undertaking of the General Partner. The General Partner fulfils a similar function for Lehman Brothers UK Capital Funding I LP, Lehman Brothers UK Capital Funding II LP, Lehman Brothers UK Capital Funding III LP and Lehman Brothers UK Capital Funding IV LP. The duties to and functions of the General Partner are contained in the Limited Partnership Agreement. None of such duties or functions give rise to any potential conflict of interest between duties owed to the Issuer and any other interests of the General Partner. LBHI will undertake in the Subordinated Guarantee to ensure that, unless otherwise approved by a simple majority of the Holders, the General Partner will at all times be either LBHI itself or a directly or indirectly wholly-owned subsidiary of LBHI.

The board of Directors of the General Partner comprises:

| Name | Function | Principal outside activities |
|---|---|---|
| Paolo Tonucci | Director | Director of a number of wholly-owned Lehman Brothers subsidiaries |
| Dave Rushton | Director | Director of a number of wholly-owned Lehman Brothers subsidiaries |
| Antony Rush | Director | Director of a number of wholly-owned Lehman Brothers subsidiaries |

For the purposes of this document, the business address of each of the Directors of the General Partner is 25 Bank Street, London E14 5LE. There are no potential conflicts of interest between the duties of the Directors of the General Partner to the Issuer and their private interests and/or other duties.

The Preferential Limited Partner, incorporated with limited liability in England and Wales with registered number 4385277 is a wholly-owned Subsidiary of LBHI. The Preferential Limited Partner shall be entitled to receive all amounts received by the Issuer from its investment in the Subordinated Notes or Replacement Affiliate Investments (each as defined herein under **Description of the Preferred Securities**), as the case may be, in excess of those required to make payments in respect of the Preferred Securities.

Provided that they do not become involved with the administration of the limited partnership, and subject to compliance with the provisions of the Act, the liability of persons registered as limited partners of the Issuer pursuant to the Act for the debts or obligations of the limited partnership will be limited to the amount of partnership capital which they have contributed or agreed to contribute to the partnership, i.e. US$1,000 per Preferred Security.

No financial statements of the Issuer have yet been prepared. The first financial statements of the Issuer are expected to be prepared for the period ending 30 November 2007. Thereafter, it is intended that the Issuer will prepare audited annual financial statements. It is not intended that the Issuer will publish interim financial statements.

## Activity

The business of the Issuer is generally to raise finance for the Group and is more particularly described in the Limited Partnership Agreement. The Issuer has carried out no operations since its registration other than in relation to the creation of the Preferred Securities. The capital contributions to be made by the partners will be used by the Issuer to subscribe for the Subordinated Notes and the Third Party Assets.

## Administration

For UK regulatory purposes, the Issuer will be operated by the General Partner or, insofar as the General Partner is not so authorised, by an administrator (the **Administrator**) authorised by the Financial Services Authority under the Financial Services and Markets Act 2000 (the **FSMA**) to establish, operate and wind-up collective investment schemes. The registered office of the Issuer and the General Partner is 25 Bank Street, London E14 5LE. Neither the Initial Limited Partner nor any Holder may participate in the administration of the Issuer.

The General Partner has agreed to contribute capital from time to time to the extent required for the Issuer to meet any operating expenses which it may have. The General Partner has also agreed that it will at all times maintain sole ownership, whether directly or indirectly, of its general partner interest in the Issuer, subject to the terms of the Limited Partnership Agreement. The Limited Partnership Agreement provides that all of the Issuer's business and affairs will be conducted by the General Partner save for those operational matters required to be performed by an Administrator under the FSMA. The General Partner will have unlimited liability for the debts and obligations of the Issuer to the extent that these cannot be satisfied out of partnership assets.

If the Issuer is dissolved, the Limited Partnership Agreement provides that the General Partner will only be entitled to any assets of the Issuer remaining after (i) all debts and other liabilities of the Issuer have been satisfied in full and (ii) the full Liquidation Preference to which the Holders are entitled and all other amounts to which the holders of any other partnership interests are entitled have been paid to, or irrevocably set aside for, such holders.

## Capitalisation

In addition to the initial capital contribution by the General Partner of US$1, the initial capital contribution of US$13,250,000 of the Preferential Limited Partner (such initial capital contribution to be supplemented on the Closing Date by such other amount as is necessary in order that the initial capital contribution of the Preferential Limited Partner amounts to 5 per cent. of the aggregate of all partnership commitments) and the preferred capital contribution equating to the aggregate nominal amount of the Preferred Securities to be made by the Initial Limited Partner in relation to the Preferred Securities on the date of issue of the Preferred Securities and such other capital contributions as may be made by the General Partner from time to time to meet certain operating expenses of the partnership, the General Partner may accept additional limited partners and additional capital contributions to the Issuer in accordance with the provisions of the Limited Partnership Agreement. Limited partnerships do not have share capital.

## Indebtedness

Since the date of its registration, the Issuer has not had any loan capital outstanding, has not incurred any borrowings, has had no contingent liabilities, has not granted any guarantees and does not intend to have outstanding any such loan capital, incur any such borrowings, have any such contingent liabilities or grant any such guarantees other than in connection with the issue of the Preferred Securities and other partnership interests in the Issuer. The General Partner has undertaken in the Limited Partnership Agreement not to incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interests in the Issuer, performing its obligations in respect of the Limited Partnership Agreement, maintaining the listings of the Preferred Securities, the Register, the Registrar, the Paying and Transfer Agents and listing agents in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the

Issuer, the Issuer's holding of the partnership assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of any custodian therefor, the exercise of the Issuer's rights in respect of the partnership assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer.

# LEHMAN BROTHERS HOLDINGS INC.

## Information about LBHI

Lehman Brothers Holdings Inc., a Delaware corporation, was incorporated on 29 December 1983, for an indefinite term, pursuant to the General Corporation Law of the State of Delaware, USA, with registration number 2024634. LBHI and its subsidiaries are collectively referred to as "Lehman Brothers". LBHI's executive offices are located at 745 Seventh Avenue, New York, New York 10019, USA, and its telephone number is + 1 212 526 7000. The common stock of LBHI is listed on the New York Stock Exchange under the symbol "LEH".

The stated legal purpose of LBHI is to engage in any lawful act or activity for which corporations may be organised under the General Corporation Law of the State of Delaware (as set out in article 3 of LBHI's Restated Certificate of Incorporation).

To the best of LBHI's knowledge, it is in material compliance with the applicable corporate governance regimes in the United States of America.

## Business Overview

Lehman Brothers, an innovator in global finance, serves the financial needs of corporations, governments and municipalities, institutional clients and high-net-worth individuals worldwide. Lehman Brothers provides a full array of equity and fixed income sales, trading and research, investment banking services and investment management and advisory services. Its global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers, through predecessor entities, was founded in 1850.

Through its subsidiaries, Lehman Brothers is a global market-maker in all major equity and fixed income products. To facilitate its market-making activities, Lehman Brothers is a member of all principal securities and commodities exchanges in the United States, as well as NASD, Inc., and it holds memberships or associate memberships on several principal international securities and commodities exchanges, including the London, Tokyo, Hong Kong, Frankfurt, Paris, Milan and Australian stock exchanges.

Lehman Brothers' principal business activities are capital markets, investment banking and investment management. Through its investment banking, trading, research, structuring and distribution capabilities in equity and fixed income products, Lehman Brothers continues to build on its client-flow business model, which is based on its principal focus of facilitating client transactions in all major global capital markets products and services. Lehman Brothers generates client-flow revenues from institutional, corporate, government and high-net-worth clients by (i) advising on and structuring transactions specifically suited to meet client needs; (ii) serving as a market maker and/or intermediary in the global marketplace, including having securities and other financial instrument products available to allow clients to adjust their portfolios and risks across different market cycles; (iii) originating loans for distribution to clients in the securitisation or principals market; (iv) providing investment management and advisory services; and (v) acting as an underwriter to clients. As part of its client-flow activities, Lehman Brothers maintains inventory positions of varying amounts across a broad range of financial instruments. In addition, Lehman Brothers also takes proprietary trading and investment positions. The financial services industry is significantly influenced by worldwide economic conditions as well as other factors inherent in the global financial markets. As a result, revenues and earnings may vary from quarter to quarter and from year to year. Lehman Brothers believes its client-flow orientation and the diversity of its business helps to mitigate overall revenue volatility.

Lehman Brothers operates in three business segments: Capital Markets, Investment Banking and Investment Management. Financial information concerning Lehman Brothers for the fiscal years ended 30 November 2006 and 2005, including the amount of net revenues contributed by each segment in such periods, is set forth in the Consolidated Financial Statements and Notes thereto which are incorporated by reference in this Base Prospectus.

**Organisational Structure**

LBHI is the ultimate parent company of the Lehman Brothers group. Since LBHI is primarily a holding company, its cash flow and consequent ability to satisfy its obligations under the Subordinated Guarantee are dependent upon the earnings of its subsidiaries and the distribution of those earnings or dividends or loans or other payments by those subsidiaries to LBHI. LBHI's subsidiaries will have no obligation to pay any amount in respect of the Subordinated Guarantee or to make any funds available therefor. Several of LBHI's principal subsidiaries are subject to various capital adequacy requirements promulgated by the regulatory, banking and exchange authorities of the countries in which they operate and/or to capital targets established by various ratings agencies. The requirements referred to above, and certain covenants contained in various debt agreements, may restrict LBHI's ability to withdraw capital from its subsidiaries by dividends, loans or other payments. Additionally, the ability of LBHI to participate as an equity holder in any distribution of assets of any subsidiary upon liquidation is generally subordinate to the claims of creditors of the subsidiary.

As disclosed in the "*Information Incorporated by Reference*", Lehman Brothers is involved in a number of judicial, regulatory and arbitration proceedings concerning matters arising in connection with the conduct of its business, including actions brought against Lehman Brothers and others with respect to transactions in which Lehman Brothers acted as an underwriter or financial advisor, actions arising out of its activities as a broker or dealer in securities and commodities and actions brought on behalf of various classes of claimants against many securities and commodities firms, including Lehman Brothers. Although there can be no assurance as to the ultimate outcome, Lehman Brothers generally has denied, or believes it has a meritorious defense and will deny, liability in all significant cases pending against it, including the matters described in the "*Documents Incorporated by Reference*", and it intends to defend vigorously each such case. Based on information currently available, Lehman Brothers believes the amount, or range, of reasonably possible losses in connection with the actions against it, including the matters described in the "*Documents Incorporated by Reference*", in excess of established reserves, in the aggregate, not to be material to Lehman Brothers' consolidated financial condition or cash flows. However, losses may be material to Lehman Brothers' operating results for any particular future period, depending on the level of its income for such period.

## Management

### Board of Directors of LBHI

Set forth below are the names, the principal occupations and functions within LBHI and principal outside activities of the current members of the board of directors of LBHI, each of whose business address in their capacity as a director is at LBHI's principal place of business:

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|---|---|---|
| Richard S. Fuld, Jr. | Chairman and Chief Executive Officer of LBHI | Serves on the Board of Directors of the Federal Reserve Bank of New York, member of the Executive Committee of the Board of Directors of The Partnership for New York City, member of the International Business Council of the World Economic Forum and The Business Council, serves on the Board of Trustees of Middlebury College and on the Board of Directors of the Robin Hood Foundation. |

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
| --- | --- | --- |
| Michael L. Ainslie | Private Investor and Former President and Chief Executive Officer of Sotheby's Holdings. Serves as member of the Audit Committee of LBHI | Director of St. Joe Company and Lehman Brothers Bank, FSB, Trustee of Vanderbilt University, Chairman of the Posse Foundation, Inc. |
| John F. Akers | Retired Chairman of International Business Machines Corporation. Serves as Chairman of the Compensation and Benefits Committee and as a member of the Finance and Risk Committee of LBHI | Director of W. R. Grace & Co. and PepsiCo, Inc. |
| Roger S. Berlind | Theatrical Producer. Serves as a member of the Audit Committee and the Finance and Risk Committee of LBHI | Theatrical producer and principal of Berlind Productions and Governor of the League of American Theatres and Producers. |
| Thomas H. Cruikshank | Retired Chairman and Chief Executive Officer of Halliburton Company. Serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee of LBHI | Director of Lehman Brothers Inc. |
| Marsha Johnson Evans | Rear Admiral, US Navy (Retired). Serves as Chairman of the Nominating and Corporate Governance Committee and as a member of the Compensation and Benefit Committee and the Finance and Risk Committee of LBHI | Director of Office Depot, Inc., Weight Watchers International Inc. and Huntsman Corporation, serves on the Advisory Boards for the Ladies Professional Golf Association and the Pew Partnership for Civic Change, a project of the Pew Charitable Trusts, Director of the Naval Academy Foundation and America's Development Foundation. |
| Sir Christopher Gent | Non-Executive Chairman of GlaxoSmithKline plc. Serves as a member of the Audit Committee and the Compensation and Benefits Committee of LBHI | Director of Ferrari SpA, member of the Financial Reporting Council, a Senior Advisor to Bain & Company, Inc., and a member of the Advisory Board of Reform. |

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|---|---|---|
| Roland A. Hernandez | Retired chairman and Chief Executive officer of Telemundo Group, Inc. Serves as a member of the Finance and Risk Committee of LBHI | Director of MGM Mirage, The Ryland Group, Inc., Vail Resorts, Inc. and Wal-Mart Stores, Inc. Serves on advisory boards for Harvard University's David Rockefeller Center for Latin American Studies and Harvard Law School, as well as the board of Yale University's President's Council on International Activities. Dean's advisory board member for the University of Southern California's Annenberg School for Communication. |
| Henry Kaufman | President of Henry Kaufman & Company, Inc. Serves as Chairman of the Finance and Risk Committee of LBHI | Member (and the Chairman Emeritus) of the Board of Trustees of the Institute of International Education, a Member of the Board of Trustees of New York University, a Member (and the Chairman Emeritus) of the Board of Overseers of the Stern School of Business of New York University, a Member of the Board of Trustees of the Animal Medical Center, a Member of the International Advisory Committee of the Federal Reserve Bank of New York, a Member of the Advisory Committee to the Investment Committee of the International Monetary Fund Staff Retirement Plan, a Member of the Board of Governors of Tel-Aviv University and Treasurer (and former Trustee) of The Economic Club of New York. |
| John D. Macomber | Principal of JDM Investment Group. Serves as a member of the Compensation and Benefits Committee, the Executive Committee and the Nominating and Corporate Governance Committee of LBHI | Director of Stem Cell Innovations, Inc. and Stewart & Stevenson LLC. Chairman of the Council for Excellence in Government and Vice Chairman of the Atlantic Council and a Trustee of the Carnegie Institution of Washington and the Folger Library. |

Except as disclosed in the sections headed "Independence" and "Certain Transactions and Agreements with Directors and Executive Officers" in the Proxy Statement, there are no potential conflicts of interest between any duties of the directors to LBHI and their private interests or other duties.

**Executive Officers of LBHI**

| | |
|---|---|
| Richard S. Fuld, Jr. | Chairman and Chief Executive Officer |
| Scott Freidheim | Co-Chief Administrative Officer |
| Joseph M. Gregory | President and Chief Operating Officer |
| Ian Lowitt | Co-Chief Administrative Officer |
| Christopher M. O'Meara | Chief Financial Officer |
| Thomas A. Russo | Chief Legal Officer |

### CONSOLIDATED STOCKHOLDERS' EQUITY OF LBHI

All of the financial information below is extracted without material adjustment from the unaudited consolidated financial statements of LBHI included in LBHI's Quarterly Report on Form 10-Q for the quarter ended 28 February 2007 filed with the SEC. The following table sets forth the consolidated capitalisation of LBHI and its subsidiaries as of 30 November 2006 and 28 February 2007[1]:

| | At 28 February 2007 | At 30 November 2006 |
|---|---|---|
| | *(US$ millions except share data)* | |
| **Stockholders' equity:** | | |
| Preferred Stock: ...................................................................................... | 1,095 | 1,095 |
| Common Stock: $0.10 par value ............................................................ | | |
| Shares authorised: 1,200,000,000 in 2007 and 2006 ............................... | | |
| Shares issued: 610,865,692 in 2007 and 609,832,302 in 2006[2] ............. | | |
| Shares outstanding: 534,877,435 in 2007 and 533,368,195 in 2006 .................... | 61 | 61 |
| Additional paid-in capital........................................................................ | 9,273 | 8,727 |
| Accumulated other comprehensive income/(loss), net of tax ................ | (17) | (15) |
| Retained earnings .................................................................................... | 16,964 | 15,857 |
| Other stockholders' equity, net.............................................................. | (2,274) | (1,712) |
| Common stock in treasury, at cost: 75,988,257 shares in 2007 and 76,464,107 shares in 2006 ................................................................ | (5,097) | (4,822) |
| Total common stockholders' equity ....................................................... | 18,910 | 18,096 |
| Total stockholders' equity........................................................................ | 20,005 | 19,191 |

_____

Notes:

1. There has been no material change in the capitalisation of LBHI since 28 February 2007. For more information about LBHI's common stock and preferred stock, see the Notes to Consolidated Financial Statements included in LBHI's Annual Report on Form 10-K for the 12 months ended 30 November 2006.

2. All shares issued are fully paid and non-assessable.

## SUMMARY CONSOLIDATED FINANCIAL INFORMATION OF LBHI

The following table sets forth selected consolidated financial information on LBHI as of the dates and for the periods indicated. The selected consolidated financial information as of and for the 12 month periods ended 30 November, 2006 and 2005 are extracted without material adjustment from the audited consolidated financial statements of LBHI included or incorporated by reference in LBHI's Annual Report on Form 10-K for the 12 month period ended 30 November 2006 filed with the SEC and the selected consolidated financial information as of and for the 3 month periods ended 28 February 2007 and 2006 are extracted without material adjustment from the unaudited consolidated financial statements of LBHI included or incorporated by reference in LBHI's quarterly report on Form 10-Q for the period ended 28 February 2007 filed with the SEC.

### Statement of Income Data

| | Year ended 30 November 2006 | Year ended 30 November 2005 | Three months ended 28 February 2007 | Three months ended 28 February 2006 |
|---|---|---|---|---|
| | *(In US$ millions except per share data)* | | | |
| **Revenues:** | | | | |
| Principal transactions | 9,802 | 7,811 | 2,921 | 2,462 |
| Investment banking | 3,160 | 2,894 | 850 | 835 |
| Commissions | 2,050 | 1,728 | 540 | 488 |
| Interest and dividends | 30,284 | 19,043 | 9,089 | 6,192 |
| Asset management and other | 1,413 | 944 | 395 | 330 |
| Total revenues | 46,709 | 32,420 | 13,795 | 10,307 |
| Interest expense | 29,126 | 17,790 | 8,748 | 5,846 |
| Net revenues | 17,583 | 14,630 | 5,047 | 4,461 |
| **Non-Interest Expenses**: | | | | |
| Compensation and benefits | 8,669 | 7,213 | 2,488 | 2,199 |
| Other expenses | 3,009 | 2,588 | 860 | 711 |
| **Total non-interest expenses** | 11,678 | 9,801 | 3,348 | 2,910 |
| Income before taxes and cumulative effect of accounting change | 5,905 | 4,829 | 1,699 | 1,551 |
| Provision for income taxes | 1,945 | 1,569 | 553 | 513 |
| Cumulative effect of accounting change | 47 | – | – | 47 |
| Net income | 4,007 | 3,260 | 1,146 | 1,085 |
| Net income applicable to common stock | 3,941 | 3,191 | 1,129 | 1,069 |
| **Earnings per common share (diluted):** | 6.81 | 5.43 | 1.96 | 1.83 |

**Balance Sheet Data**

| | At 30 November 2006 | At 30 November 2005 | At 28 February 2007 |
|---|---|---|---|
| | *(in US$ millions)* | | |
| Total assets ......................................................... | 503,545 | 410,063 | 562,283 |
| Net assets[1] ......................................................... | 268,936 | 211,424 | 300,797 |
| Short-term borrowings and current portion of long-term borrowings ................................................... | 20,638 | 11,351 | 23,997 |
| Long-term borrowings ........................................ | 81,178 | 53,899 | 90,775 |
| Total liabilities ................................................... | 484,354 | 393,269 | 542,278 |
| Total stockholders' equity ................................. | 19,191 | 16,794 | 20,005 |
| Total long-term capital[2] .................................... | 100,369 | 70,693 | 110,780 |

Notes:

1.  Net assets represent total assets excluding: (1) cash and securities segregated and on deposit for regulatory and other purposes, (2) securities received as collateral, (3) securities purchased under agreements to resell, (4) securities borrowed and (5) identifiable intangible assets and goodwill. LBHI believes net assets is a measure more useful to investors than total assets when comparing companies in the securities industry because it excludes certain assets considered to have a low-risk profile and identifiable intangible assets and goodwill. Net assets as presented are not necessarily comparable to similarly-titled measures provided by other companies in the securities industry because of different methods of calculation.

2.  Total long-term capital includes long-term borrowings (excluding any borrowings with remaining maturities of less than twelve months) and total stockholders' equity. LBHI believes total capital is useful to investors as a measure of its financial strength.

# TAXATION

## UNITED KINGDOM

*The following is a summary of certain UK taxation considerations relevant to persons who purchase, own and dispose of Preferred Securities. This summary addresses only the taxation consequences to holders that acquire Preferred Securities pursuant to the offering at the initial offering price and does not apply to certain classes of holders such as dealers, financial traders and certain persons who are exempt from UK taxation on their income.*

*This summary does not address the position of persons who are resident in the UK or have some connection with the UK beyond the holding of Preferred Securities.*

***This summary is for general information only based on law and practice at the date hereof in the UK and is not exhaustive. Prospective investors are advised to consult with their own taxation advisers as to the taxation consequences of the purchase, ownership and disposition of Preferred Securities, including the effect of tax laws in countries other than the UK.***

### Distributions on the Preferred Securities

On the basis that the Issuer is treated for the purposes of UK taxation as a partnership, payments of Distributions on Preferred Securities may be made without withholding for or on account of UK taxation.

### Stamp Duty and Stamp Duty Reserve Tax (SDRT)

No UK stamp duty will be chargeable in respect of the issue of the Preferred Securities to a Holder. Transfers of the Preferred Securities within a clearing system will not be chargeable to UK stamp duty.

The Issuer has been advised that no liability to SDRT should arise in respect of the issue or subsequent transfer of the Preferred Securities.

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS

**To ensure compliance with the Internal Revenue Service Circular 230, you are hereby notified that any discussion of tax matters set forth in this Base Prospectus was written in connection with promotion or marketing of the transactions or matters addressed herein and was not intended or written to be used, and cannot be used by any prospective investor, for the purpose of avoiding tax-related penalties under federal, state or local tax law. Each prospective investor should seek advice based on its particular circumstances from an independent tax advisor.**

The following section describes certain US federal income tax consequences that may be relevant with respect to the acquisition, ownership and disposition of the Preferred Securities. This summary addresses only the US federal income tax considerations for non-US Holders (as defined below) that acquire the Preferred Securities on original issuance at their initial offering price and hold the Preferred Securities as capital assets for US federal income tax purposes. This section is based on the US Internal Revenue Code of 1986 (the **Code**), US Treasury regulations and judicial and administrative interpretations, in each case as in effect and available on the date of this Base Prospectus. All of the foregoing are subject to change, possibly with retroactive effect. Any such change could affect the tax consequences described below.

This section does not purport to be a comprehensive description of all the tax considerations that may be relevant to the Preferred Securities. In particular, this summary does not address tax considerations applicable to Holders that may be subject to special tax rules including, without limitation, the following: (a) financial institutions; (b) insurance companies; (c) dealers or traders in securities, currencies or notional principal contracts; (d) tax-exempt entities; (e) persons that will hold the Preferred Securities as part of a "hedging" or "conversion" transaction or as a position in a "straddle" or as part of a "synthetic security" or other integrated transaction for US federal income tax purposes; (f) persons that have a "functional currency" other than the US dollar; (g) regulated investment companies; (h) real estate investment trusts; (i) controlled

foreign corporations, as defined by section 957 of the Code; (j) persons who hold Preferred Securities through partnerships or other pass-through entities; and (k) persons who own, directly, indirectly or constructively, 10 per cent. or more (in voting power) of LBHI.

Further, this section does not address alternative minimum tax consequences or the indirect effects on the holders of equity interests in a Holder. This section also does not address the US federal estate and gift tax or any non-US tax consequences to Holders of the Preferred Securities.

**Each prospective investor should consult its own tax advisor with respect to the US federal, state, local and foreign tax consequences of acquiring, owning or disposing of the Preferred Securities.**

For the purposes of this section, a "Non-US Holder" is a beneficial owner of Preferred Securities that is not a US Holder. A "US Holder" is a person that is, for US federal income tax purposes: (a) a citizen or resident of the United States, (b) a corporation, or other entity that is treated as a corporation for US federal income tax purposes, created or organised in or under the laws of the United States or any state of the United States (including the District of Columbia), (c) an estate, the income of which is subject to US federal income taxation regardless of its source, or (d) a trust, if it (1) is subject to the primary supervision of a court within the United States and one or more US persons have the authority to control all of the substantial decisions of such trust or (2) has a valid election in effect under the applicable US Treasury regulations to be treated as a United States person.

No statutory, administrative or judicial authority addresses the treatment of the Preferred Securities or Subordinated Notes or instruments similar to the Preferred Securities or Subordinated Notes for US federal income tax purposes and no rulings have been sought or are expected to be sought from the Internal Revenue Service (the **IRS**) with respect to any of the US federal income tax consequences regarding this particular offering. As a result, the Issuer and LBHI cannot assure you that the IRS will agree with the tax characterisations and the tax consequences below.

**If you are considering purchasing the Preferred Securities, you should consult your own tax advisors concerning the US federal tax consequences in light of your particular situation and any consequences arising under the laws of any other taxing jurisdiction.**

The transactions described in this Base Prospectus are complex and characterisations other than those described are possible. See "–Possible Re-characterisation". Any differing treatment arising from a re-characterisation could affect the amount, timing and character of income, gain or loss in respect of an investment in the Preferred Securities.

**Classification of the Issuer**

Allen & Overy LLP (**Tax Counsel**) is of the opinion that, under current law and assuming full compliance with the terms of the Limited Partnership Agreement, and based on certain representations, the Issuer will not be treated as an association or a publicly traded partnership taxable as a corporation for US federal income tax purposes. By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Priority Limited Partner, General Partner and LBHI agree, to treat the Issuer as a partnership for US federal income tax purposes and to treat the Preferred Securities as equity interests in such partnership and not as a direct interest in LBHI or in any other person. If, however, the Issuer were re-characterised, income paid on the Subordinated Notes, any Replacement Affiliate Investments or the Preferred Securities could become subject to US tax withholding at the rate of 30 per cent. (or a lower applicable treaty rate if appropriate certifications are provided). Unless indicated otherwise, the remainder of this discussion assumes that the Issuer will be classified as a partnership under US federal income tax principles.

**Classification of the Subordinated Notes**

By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Priority Limited Partner, General Partner and LBHI agree, to treat the Subordinated Notes as indebtedness for all US federal income tax purposes. Tax Counsel has advised that, in its opinion, under current law and assuming full compliance with the terms of the Subordinated Notes, and based on certain representations, while the matter is not free from

doubt and there is no authority directly on point, the Subordinated Notes will be characterised as indebtedness. However, such position is not binding on the IRS or the courts. Therefore, while Tax Counsel believes that its conclusions would be sustained if challenged, there can be no assurance that this will be the case. Unless indicated otherwise, the remainder of this discussion assumes that the Subordinated Notes will be classified as indebtedness of LBHI under US federal income tax principles.

**Possible Re-characterisation**

The IRS has issued regulations pursuant to section 701 of the Code under which the IRS may (i) disregard or recast the form of a transaction if a partnership is used with a principal purpose of substantially reducing the partner's tax liability in a manner inconsistent with the intent of the partnership provisions of the Code or (ii) treat a partnership as the aggregate of its partners other than an entity. Moreover, section 7701(*l*) of the Code grants the IRS broad authority to promulgate regulations to prevent tax avoidance through the use of conduit arrangements by re-characterising any multi-party financing transaction as a transaction directly among two or more such parties. Each of the Issuer, General Partner and LBHI believe that these provisions should not apply. However, there can be no assurance that the IRS will not reach a different conclusion or that any such re-characterisation would not be adverse to Holders in light of their particular circumstances.

**Non-US Holders**

The General Partner, on behalf of the Issuer, intends to conduct its affairs in such a manner that its income is not effectively connected with a US trade or business and, accordingly, the General Partner, on behalf of the Issuer, does not intend to withhold tax applicable to effectively connected income for non-US Holders. However, should such withholding be required, the Issuer may withhold the amounts from other distributions payable to the applicable non-US Holder.

As a partnership, the Issuer will not be a taxable entity for US federal income tax purposes. Instead, Holders will be allocated, for US federal income tax purposes, a distributive share of the Issuer's income from the Subordinated Notes (or Replacement Affiliated Investments) and the Third Party Assets and other items of income, gain, loss, and deduction of the Issuer (if any). A non-US Holder's distributive share of such items generally determines the US tax treatment of such Holder even if current distributions are not made on the Preferred Securities.

Because of the "portfolio interest" exception, the General Partner, on behalf of the Issuer, intends not to withhold on distributions in respect of interest payable on the Subordinated Notes (or Replacement Affiliated Investments) to a non-US Holder provided the non-US Holder is not actually or constructively a "10 per cent. shareholder" of LBHI, a "controlled foreign corporation" with respect to which LBHI is related within the meaning of the Code, or a bank whose receipt of interest on the Subordinated Notes (or any Replacement Affiliate Investments) is described in section 881(c)(3)(A) of the Code. As noted above under "Possible Re-characterisation", it is possible that the Issuer might be re-characterised in which case, income derived by the Issuer from the Subordinated Notes, any Replacement Affiliate Investments or distributions on the Preferred Securities could be subject to US tax withholding at the rate of 30 per cent. (or a lower applicable treaty rate if appropriate certifications are provided).

Any gain realised on the sale, redemption, retirement or other taxable disposition of the Preferred Securities will be exempt from US federal income and withholding tax, provided that (1) the gain is not effectively connected with the conduct of a trade or business within the United States by such non-US Holder, and (2) in the case of a non-US Holder that is a foreign individual, such non-US Holder is not present in the United States for 183 days or more in the taxable year.

**Holders considering an investment in the Preferred Securities should consult their own tax advisors.**

**Information Reporting and Backup Withholding**

Non-US Holders are generally exempt from backup withholding requirements with respect to the receipt of income from the Preferred Securities. Backup withholding may apply to the proceeds from the sale of Preferred Securities effected at a United States office of a broker and information reporting (but not generally

backup withholding) may apply if you use the foreign office of a broker or agent that has certain connections with the United States. You may be required to comply with applicable certification procedures in order to avoid the application of the information reporting and backup withholding requirements.

Backup withholding is not an additional tax. An investor may generally obtain a refund of any amounts withheld under the backup withholding rules that exceed its US federal income tax liability by filing a refund claim with the IRS.

## EU DIRECTIVE ON THE TAXATION OF SAVINGS INCOME

Under EC Council Directive 2003/48/EC on the taxation of savings income, Member States are required, from 1 July 2005, to provide to the tax authorities of another Member State details of payments of interest (or similar income) paid by a person within its jurisdiction to an individual resident in that other Member State. However, for a transitional period, Belgium, Luxembourg and Austria are instead required (unless during that period they elect otherwise) to operate a withholding system in relation to such payments (the ending of such transitional period being dependent upon the conclusion of certain other agreements relating to information exchange with certain other countries). A number of non-EU countries and territories including Switzerland have agreed to adopt similar measures (a withholding system in the case of Switzerland) with effect from the same date.

## SUBSCRIPTION AND SALE

Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE, together with banks and other financial institutions to be named in the Final Terms (together, the **Managers**) will jointly and severally agree to subscribe for the entire issued amount of the Preferred Securities pursuant to a Subscription Agreement (the **Subscription Agreement**) expected to be dated on or about the date of publication of the Final Terms at a price per Preferred Security to be set out in the Final Terms. The Managers will receive a combined selling, management and underwriting commission of to be set out in the Final Terms. In addition, the Managers shall be reimbursed for certain of their expenses in connection with the issue of the Preferred Securities. The total estimated expenses of the issue of the Preferred Securities are to be set out in the Final Terms. The Managers will be entitled to terminate the Subscription Agreement in certain circumstances before the issue of the Preferred Securities.

The Issuer will only offer and allot the Preferred Securities to the Managers. The selection of the Managers will be at the sole discretion of the General Partner. The Managers will only offer and allot the Preferred Securities to their respective customers.

Offers for the Preferred Securities are conditional on their issue. A prospective Holder will subscribe for Preferred Securities in accordance with the arrangements existing between the relevant Manager and its customers relating to the subscription of securities generally. Holders will not be required to enter into any contractual arrangements directly with the Issuer related to the subscription for the Preferred Securities. There are no pre-identified allotment criteria.

No dealings in the Preferred Securities on a regulated market for the purposes of the Investment Services Directive 93/22EC may take place prior to the Closing Date.

This Base Prospectus is valid for use in an "offer of securities to the public" relating to the Preferred Securities for the period from its date of publication until the Closing Date.

The aggregate nominal amount of the issue and the initial cash distribution will be as set out in the Final Terms to be published on the date that the Subscription Agreement is entered into. A copy of the Final Terms will be made available as described under "*General Information*".

The Managers will agree in the Subscription Agreement that they will only offer the Preferred Securities in accordance with the following restrictions:

## PLAN OF DISTRIBUTION

### United States

The Preferred Securities and the Subordinated Guarantee have not been and will not be registered under the Securities Act and may not be offered or sold within the United States or to, or for the account or benefit of, US persons. Terms used in this paragraph have the meanings given to them by Regulation S under the Securities Act (**Regulation S**).

Each Manager has agreed that, except as permitted by the Subscription Agreement, it will not offer, sell or deliver the Preferred Securities (i) as part of their distribution at any time or (ii) otherwise until 40 days after the later of the commencement of the offering and the Closing Date within the United States or to, or for the account or benefit of, US persons and that it will have sent to each distributor, dealer or person receiving a selling concession, fee or other remuneration that purchases Preferred Securities from it during the distribution compliance period a confirmation or other notice setting forth the restrictions on offers and sales of the Preferred Securities within the United States or to, or for the account or benefit of, US persons. Terms used in this paragraph have the meanings given to them by Regulation S.

In addition, until 40 days after the commencement of the offering, an offer or sale of Preferred Securities within the United States by any dealer that is not participating in the offering may violate the registration requirements of the Securities Act.

**United Kingdom**

Each Manager has represented and agreed that, except as permitted by the Subscription Agreement:

(a) it has only offered or sold and will only offer or sell Preferred Securities to (a) investment professionals falling within article 14(5) of the Financial Services and Markets Act 2000 (Promotion of Collective Investment Schemes) (Exemptions) Order 2001 (the **Promotion of CIS Order**) and article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (the **Financial Promotion Order**), who have professional experience of participating in unregulated schemes and of matters relating to investments; and/or (b) persons falling within article 22(2) of the Promotion of CIS Order and article 49(2) of the Financial Promotion Order; and/or (c) any other persons to whom this Base Prospectus may be communicated lawfully;

(b) it has in place and will have in place proper systems and procedures to prevent any person other than those persons described in (a) above from participating in the Preferred Securities;

(c) it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the FSMA) received by it in connection with the issue of the Preferred Securities in circumstances in which Section 21(1) of the FSMA does not apply to LBHI; and

(d) it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the Preferred Securities in, from or otherwise involving the United Kingdom.

**European Economic Area**

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a **Relevant Member State**), each Manager has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the **Relevant Implementation Date**) it has not made and will not make an offer of Preferred Securities to the public in that Relevant Member State prior to the publication of a prospectus in relation to the Preferred Securities which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of Preferred Securities to the public in that Relevant Member State at any time:

(a) to legal entities which are authorised or regulated to operate in the financial markets or, if not so authorised or regulated, whose corporate purpose is solely to invest in securities;

(b) to any legal entity which has two or more of (i) an average of at least 250 employees during the last financial year; (ii) a total balance sheet of more than €43,000,000 and (iii) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(c) in any other circumstances which do not require the publication by the Issuer and LBHI of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of Preferred Securities to the public" in relation to any Preferred Securities in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the Preferred Securities to be offered so as to enable an investor to decide to purchase or subscribe the Preferred Securities, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression **Prospectus Directive** means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

**Singapore**

This Base Prospectus has not been registered as a prospectus with the Monetary Authority of Singapore under the Securities and Futures Act, Chapter 289 of Singapore (the **Securities and Futures Act**). Each Manager has represented, warranted and agreed that the Preferred Securities may not be offered or sold or made the subject of an invitation for subscription or purchase nor may this Base Prospectus or any other document or material in connection with the offer or sale or invitation for subscription or purchase of any Preferred Securities be circulated or distributed, whether directly or indirectly, to any person in Singapore other than (a) to an institutional investor or other person falling within Section 274 of the Securities and Futures Act, (b) to a relevant person, or any person pursuant to Section 275(1A) of the Securities and Futures Act, and in accordance with the conditions specified in Section 275 of the Securities and Futures Act, or (c) pursuant to, and in accordance with the conditions of, any other applicable provision of the Securities and Futures Act.

Each Manager has further represented, warranted and agreed to notify (whether through the distribution of this Base Prospectus or any other document or material in connection with the offer or sale or invitation for subscription or purchase of any Preferred Securities or otherwise) each of the following relevant persons specified in Section 275 of this Securities and Futures Act which has subscribed or purchased Preferred Securities from and through that Manager, namely a person who is:

(a)     a corporation (which is not an accredited investor) the sole business of which is to hold investments and the entire share capital of which is owned by one or more individuals, each of whom is an accredited investor; or

(b)     a trust (where the trustee is not an accredited investor) whose sole purpose is to hold investments and each beneficiary is an accredited investor,

that shares, debentures and units of shares and debentures of that corporation or the beneficiaries' rights and interest in that trust shall not be transferable for six months after that corporation or trust has acquired the Preferred Securities under Section 275 of the Securities and Futures Act except:

(i)     to an institutional investor under Section 274 of the Securities and Futures Act or to a relevant person, or any person pursuant to Section 275(1A) of the Securities and Futures Act, and in accordance with the conditions, specified in Section 275 of the Securities and Futures Act;

(ii)    where no consideration is given for the transfer; or

(iii)   by operation of law.

**Hong Kong**

Each Manager has represented and agreed that:

(a)     it has not offered or sold and will not offer or sell in Hong Kong, Special Administrative Region of the People's Republic of China (**Hong Kong**), by means of any document, any Preferred Securities other than (i) to "professional investors" as defined in the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance or (ii) in other circumstances which do not result in the document being a "prospectus" as defined in the Companies Ordinance (Cap. 32) of Hong Kong or which do not constitute an offer to the public within the meaning of that Ordinance; and

(b)     it has not issued or had in its possession for the purposes of issue and will not issue or have in its possession for the purposes of issue any advertisement, invitation or document relating to the Preferred Securities, whether in Hong Kong or elsewhere, which is directed at, or the contents of which are likely to be accessed or read by, the public in Hong Kong (except if permitted to do so under the securities laws of Hong Kong) other than with respect to Preferred Securities which are or are intended to be disposed of only to persons outside Hong Kong or only to "professional investors" within the meaning of the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance.

**General**

Persons into whose hands this Base Prospectus comes are required by the Issuer, LBHI and the Managers to comply with all applicable laws and regulations in each country or jurisdiction in or from which they purchase, offer, sell or deliver Preferred Securities or have in their possession or distribute such offering material, in all cases at their own expense.

## GENERAL INFORMATION

**Authorisations**

The Limited Partnership Agreement to establish the Issuer was duly authorised by a resolution of the board of directors of the General Partner passed on 3 May 2007.

The entering into of the Limited Partnership Agreement, the Agency Agreement, the Administration Agreement, the Subscription Agreement and the Subordinated Guarantee by LBHI will be authorised by the Chief Financial Officer of LBHI on the date specified in the Final Terms pursuant to the authority delegated to him by the Guarantor.

All consents, approvals, authorisations or other orders of all regulatory authorities required by the Issuer under the laws of England and Wales and LBHI under the laws of the State of Delaware and the United States of America have been, or will prior to the Closing Date be, given for the issue of the Preferred Securities and for the Issuer, the General Partner and LBHI, as the case may be, to undertake and perform their respective obligations as appropriate under the Limited Partnership Agreement, the Subscription Agreement, the Agency Agreement, the Preferred Securities and the Subordinated Guarantee.

**Listing**

Application has been made to the UK Listing Authority for the Preferred Securities to be admitted to the Official List of the UK Listing Authority and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market. The London Stock Exchange plc's Gilt Edged and Fixed Interest Market is a regulated market for the purposes of Directive 93/22/EEC (the Investment Service Directive).

It is expected that listing and admission to trading will take place on or about the Closing Date, subject to issue of the Global Certificate.

Application will also be made to Euronext Amsterdam for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam.

**Clearing Systems**

The preferred Securities have been accepted for clearance through Euroclear and Clearstream, Luxembourg. The ISIN for this issue and the Common Code shall be set forth in the Final Terms. The address of Euroclear is 1 Boulevard du Roi Albert III, B-1210 Belgium and the address of Clearstream, Luxembourg is 42 Avenue JF Kennedy, L-1855 Luxembourg.

**No significant change or material adverse change**

There has been no significant change in the financial or trading position of the Issuer since its date of establishment.

There has been no material adverse change in the prospects of the Issuer since its date of establishment.

There has been no significant change in the financial or trading position of LBHI and the Group since 28 February 2007 (being the date of the most recent interim accounts of the Gurarantor and the Group).

There has been no material adverse change in the prospects of LBHI or the Group since 30 November 2006.

**Litigation**

There are no governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which the Issuer is aware) during the previous 12 months which may have, or have had in the recent past, significant effects on the financial position or profitability of the Issuer.

Except as disclosed on pages 20 to 25 ("Legal Proceedings") of the Guarantor's annual report for the fiscal year ended 30 November 2006 filed with the SEC on Form 10-K and on page 75 ("Legal Proceedings") of the Guarantor's quarterly report for the quarterly period ended 28 February 2007 filed with the SEC on Form 10-Q (together the **Litigation Documents**), there are no governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which LBHI or any subsidiary of the Group is aware) during the previous 12 months which may have, or have had in the recent past, significant effects on the financial position or profitability of LBHI or any subsidiary of the Group. Other than the proceedings for which a quantifiable claim has been disclosed in the Litigation Documents, the claim amounts of such proceedings are unquantifiable.

**Accounts and Auditors**

The auditors of the Issuer are Ernst & Young LLP, Chartered Accountants and Registered Auditors, of 1 More London Place, London SE1 2AF.

The Issuer is newly established and does not currently have any financial statements (see also "*Documents*" below).

The consolidated financial statements for the years ended 30 November 2005 and 30 November 2006 of LBHI have been prepared in accordance with generally accepted accounting principles in the United States and have been reported upon without qualification for LBHI by Ernst & Young LLP, certified public accountants, which has its principal place of business at 5 Times Square, New York, New York 10036, USA.

Ernst & Young LLP is an independent registered public accounting firm with respect to LBHI and its subsidiaries within the meaning of the Securities Act of 1933, as amended and the applicable rules and regulations thereunder adopted by the Securities and Exchange Commission and the Public Company Accounting Oversight Board (United States) (PCAOB).

**Documents**

Copies of the following financial statements will be available free of charge from the specified offices of the Paying and Transfer Agents for so long as any of the Preferred Securities remains outstanding:

(a)     the annual reports (including the audited consolidated financial statements) of LBHI in respect of the financial years ended 30 November 2006, 2005 and 2004; including the audit reports on such financial statements;

(b)     the most recently published annual reports (including the audited annual consolidated financial statements) of LBHI and the most recently published unaudited interim consolidated financial statements of LBHI.

LBHI currently prepares audited consolidated financial statements on an annual basis and unaudited interim consolidated financial statements on a quarterly basis.

The Issuer is newly established as a limited partnership and has not traded or operated as at the date of this Base Prospectus. The first financial statements of the Issuer are expected to be prepared for the period ending on 30 November 2007. Thereafter, it is intended that the Issuer will prepare audited annual financial statements.

Copies of the Issuer's most recently published annual reports (if any) and audited annual financial statements of the Issuer will be available free of charge at the offices of the Paying and Transfer Agents. It is not intended that the Issuer will publish interim financial statements.

In addition, the following documents are available for inspection at the specified offices of the Paying and Transfer Agents for so long as any of the Preferred Securities remains outstanding:

(a)     the Subscription Agreement;

(b)     the Subordinated Guarantee;

(c)      the Limited Partnership Agreement;

(d)      the Administration Agreement;

(e)      the Agency Agreement;

(f)      the Final Terms; and

(g)      the Restated Certificate of Incorporation and the Amended and Restated By-Laws of LBHI.

**Certificates of Approval**

The UK Listing Authority, in its capacity as competent authority in the United Kingdom for the purposes of the Prospectus Directive will be requested to provide the following competent authorities in other Member States with a certificate of approval under Article 18 of the Prospectus Directive as implemented in the United Kingdom:

(a)      The Banking, Finance and Insurance Commission, or CBFA, which is the competent authority of Belgium for the purposes of the Prospectus Directive;

(b)      The German Federal Financial Supervisory Authority (Bundesanstalt für Finanzdienstleistungsaufsicht), which is the competent authority of Germany for the purposes of the Prospectus Directive;

(c)      The Commissione Nazionale per le Società e la Borsa (CONSOB), which is the competent authority of Italy for the purposes of the Prospectus Directive;

(d)      The Commission de Surveillance du Secteur Financier, which is the competent authority of Luxembourg for the purposes of the Prospectus Directive;

(e)      The Stichting Autoriteit Financiële Markten, or "AFM", which is the competent authority of The Netherlands for the purposes of the Prospectus Directive;

(f)      The Securities Commission (CMVM), which is the competent authority of Portugal for the purposes of the Prospectus Directive; and

(g)      The Comisión Nacional del Mercado de Valores, or CNMV, which is the competent authority of Spain for the purposes of the Prospectus Directive.

In addition to the applications described above, the General Partner, on behalf of the Issuer, may, on or after the date of this Base Prospectus, make applications for one or more further certificates of approval under Article 18 of the Prospectus Directive as implemented in the United Kingdom to be issued by the UK Listing Authority to the competent authority in any Member State.

**Capital Replacement Intent**

If the Preferred Securities are redeemed, it is the intention of the General Partner that they will be redeemed only to the extent the aggregate redemption price is equal to or less than the net proceeds, if any, received by LBHI or any of its subsidiaries from new issuances to purchasers other than affiliates during the period commencing on the 180th calendar day prior to the date of redemption of any securities that have equal or greater equity characteristics as the Preferred Securities.

## FORM OF FINAL TERMS

### Final Terms

### Lehman Brothers UK Capital Funding V LP

### US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities

| | |
|---|---|
| **Closing Date:** | [*Insert*] |
| **Issue Price and Offer Price per Preferred Security:** | [*Insert*] |
| **Distribution Rate:** | [*Insert*] per cent. per annum |
| **Distribution Payment Dates:** | [*Insert. NB the distribution payment dates will fall annually following the Closing Date*] |
| **Aggregate Nominal Amount of the Preferred Securities:** | US$[*Insert*] |
| **First Call Date of Subordinated Notes:** | [*Insert*] |
| **Net proceeds:** | US$[*Insert*] |
| **Names and addresses of Managers:** | [*Insert*] |
| **ISIN:** | XS[*Insert*] |
| **Common Code:** | [*Insert*] |
| **Fondscode:** | [*Insert*] |
| **Combined selling, management and underwriting commission:** | US$[*Insert*] per Preferred Security |
| **Total estimated expenses of the issue of the Preferred Securities (including the commission):** | US$[*Insert*] |
| **Ratings:** | [*Insert*] |
| **Date of resolution of Chief Financial Officer of LBHI:** | [*Insert*] |
| **Other terms:** | [*Insert*] |

The above pricing gives a yield of [*Insert details*]. Such yield is applicable as of the date of these Final Terms and may fluctuate in the future.

The date of these Final Terms is [*Insert*].

| **ISSUER** | **GUARANTOR** |
|---|---|
| **Lehman Brothers UK Capital Funding V LP** | **Lehman Brothers Holdings Inc.** |
| 25 Bank Street | 745 Seventh Avenue |
| London E14 5LE | New York, |
| England | New York 10019 |

## PRINCIPAL PAYING AND TRANSFER AGENT

**The Bank of New York**
One Canada Square
London E14 5AL
England

| **PAYING AND TRANSFER AGENT AND REGISTRAR** | **PAYING AND TRANSFER AGENT** |
|---|---|
| **The Bank of New York (Luxembourg), S.A.** | **ING Bank N.V.** |
| Aerogolf Center | Van Heenvlietlaan 220 |
| 1A Hoehenhof | 1083 CN Amsterdam |
| L - 1736 Senningerberg | The Netherlands |
| Luxembourg | |

## LEGAL ADVISERS

*to the Managers*

| *as to United States law* | *as to English and United States law* |
|---|---|
| **Barrett DiPaolo** | **Allen & Overy LLP** |
| Lehman Brothers Holdings Inc. | One Bishops Square |
| 745 Seventh Avenue | London E1 6AO |
| New York, | England |
| New York 10019 | |

## AUDITORS

| *to the Issuer* | *to LBHI* |
|---|---|
| **Ernst & Young LLP** | **Ernst & Young LLP** |
| 1 More London Place | 5 Times Square |
| London SE1 2AF | New York |
| England | New York 10036 |

# Exhibit D

**CONFORMED COPY**

**Dated 3rd January, 2007**

**LB GP NO. 1 LTD.**
**as General Partner**

**and**

**THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**

**and**

**LB INVESTMENT HOLDINGS LTD.**
**as Preferential Limited Partner**

**and**

**LEHMAN BROTHERS HOLDINGS INC.**
**as Guarantor**

---

**LIMITED PARTNERSHIP AGREEMENT**
establishing
**LEHMAN BROTHERS UK CAPITAL FUNDING IV LP**

---

# ALLEN & OVERY

**ALLEN & OVERY LLP**
**LONDON**

# CONTENTS

Page No

1.      Definitions and interpretation.................................................................... 2
2.      Formation, Nature and Term of the Issuer .............................................. 5
3.      Management of the Issuer ....................................................................... 10
4.      Commitments ........................................................................................... 15
5.      Capital Contributions .............................................................................. 16
6.      Preferred Securities ................................................................................. 18
7.      Preferential Limited Partner .................................................................... 19
8.      Registration of Partnership Interests ...................................................... 19
9.      Certificates of Preferred Securities......................................................... 19
10.     Transfer of interests in the Issuer .......................................................... 20
11.     Capital Accounts ..................................................................................... 23
12.     Allocation of Income and Distributions .................................................. 23
13.     Books, Records and Accounts ................................................................ 24
14.     Withdrawal/Replacement of the General Partner.................................... 24
15.     Partnership Finances............................................................................... 25
16.     Dissolution of Partnership ...................................................................... 25
17.     Partnership Meetings............................................................................... 27
18.     Undertakings of LBHI.............................................................................. 31
19.     General ..................................................................................................... 32
Schedule 1 - Part I Form of Global Certificate for Preferred Securities ............................ 36
Schedule 1 - Part II Form of Certificate for Preferred Securities........................................ 38

**THIS LIMITED PARTNERSHIP AGREEMENT** is made on 3rd January, 2007

**BETWEEN:**

1.      **LB GP NO. 1 LTD.**, a company incorporated in England and Wales with registered number 5355491 whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom (the **General Partner**);

2.      **THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**, a company incorporated in England and Wales with registered number 03227439 whose registered office is at One Canada Square, London E14 5AL (**BNY**);

3.      **LB INVESTMENT HOLDINGS LTD.**, a company incorporated in England and Wales with registered number 4385277 whose registered office is at 25 Bank Street, London E14 5LE (the **Preferential Limited Partner**); and

4.      **LEHMAN BROTHERS HOLDINGS INC.**, a corporation established in Delaware with limited liability (**LBHI**).

**WHEREAS** the General Partner has agreed to become the general partner and the Preferential Limited Partner has agreed to become a limited partner in a limited partnership (the **Partnership**) to be formed under the Limited Partnerships Act 1907 (the **Act**) under the name Lehman Brothers UK Capital Funding IV LP in accordance with the terms and conditions set out in this Agreement and which is referred to herein as the **Issuer**.

**WHEREAS** it is the intention of the parties that BNY, being a nominee for a common depositary for Euroclear and Clearstream, Luxembourg (each as defined below), is to become a limited partner in the Partnership on the Closing Date (as defined below). BNY (acting as principal and not as agent) is party to this Agreement for the purpose of agreeing to become a Limited Partner (as defined below) and agreeing to be bound by the terms of this Agreement as they apply to Limited Partners on and from its admission to the Issuer in accordance with sub-clause 2.6(c), and agreeing to make its Capital Contribution (as defined below) as set out in clauses 4 and 5 on the Closing Date.

**WHEREAS** LBHI is not, and will not become, a partner (general or limited) in the Issuer and LBHI is a party to this Agreement solely for the purposes of acknowledging its terms, agreeing to any actions stated to be performed by LBHI in the Conditions and clause 18.

**NOW IT IS HEREBY AGREED** as follows:

1.      **DEFINITIONS AND INTERPRETATION**

    1.1.    **Definitions**

        In this Agreement, terms defined in the Conditions shall have the same meaning elsewhere in this Agreement subject to the provisions of this clause and unless the context otherwise requires; and

        **Accounts** means the annual accounts of the Issuer prepared in accordance with the provisions of sub-clause 13.2;

        **Administration Agreement** means the agreement between LBHI, the Issuer (acting through the General Partner) and the Administrator to be dated the Closing Date setting out the detailed duties of the Administrator in respect of the operation of the Partnership;

2

2.2    **Name**

(a)    Subject to sub-clause 2.2(b), the name of the Issuer shall be "Lehman Brothers UK Capital Funding IV LP".

(b)    Subject to the provisions of the Act or otherwise at law, the Issuer shall be called by such other name as the General Partner may specify from time to time in its absolute discretion by written notice given to the Limited Partners.

2.3    **Term of the Issuer**

The Issuer shall not be terminable by the General Partner (whether on notice or otherwise) and shall continue until the earlier of the date on which the Issuer is dissolved or terminated in accordance with the provisions of this Agreement, and the first date on which there is not at least one general partner and at least one limited partner for the purposes of the Act.

2.4    **Business**

The business of the Issuer shall be to raise and provide finance and financial support to LBHI and its group.  In carrying on such business, the Issuer shall do (*inter alia*) the following:

(a)    acquire and hold, as investments, the Subordinated Notes and the Third Party Assets;

(b)    admit (through the General Partner) new limited partners from time to time as Limited Partners;

(c)    consider from time to time and advise LBHI in relation to, and agree with LBHI how to take forward, opportunities to raise additional finance and/or provide financial support to LBHI;

(d)    monitor the investments represented by the Partnership Assets (being initially the Subordinated Notes and the Third Party Assets) and dispose of and/or replace them in accordance with the terms of this Agreement; and

(e)    enter into and perform (through the General Partner) any contracts and agreements (including swap agreements), and carry on any other activities as

16.2    **Continuation of Partnership**

The Issuer shall not be dissolved or terminated by the Incapacity of any Limited Partner, the assignment or transfer by any Limited Partner of its Preferred Securities, or the admission of a new or substituted General Partner or Limited Partner.

16.3    **Events Causing Dissolution**

Subject to the Act and the other provisions of this Agreement, the Issuer shall be dissolved and terminated and the Partnership Assets distributed in the manner provided for in sub-clause 16.5 on the occurrence of the following events:

(a)    an order being made for the bankruptcy, dissolution, liquidation or winding up of the General Partner or a special resolution of the General Partner being passed for its winding up other than in circumstances where the business of the General Partner has been transferred pursuant to sub-clause 10.2; or

(b)    an order for dissolution being made by the English Court (under Section 35 of the Partnership Act 1890); or

(c)    payment of the Capital Contribution referred to in sub-clause 5.1 hereof not having been made pursuant to the Subscription Agreement; or

(d)    as set out in sub-clause 2.3; or

(e)    an exercise of redemption or dissolution rights pursuant to the Conditions.

16.4    **General Partner's Liability Upon Dissolution or Retirement**

Upon dissolution of the Issuer or upon the General Partner ceasing to serve as such, whether as a result of its retirement or otherwise, the General Partner shall be obliged to contribute to the capital of the Issuer the amount necessary to restore the deficit, if any, in the General Partner's Capital Account balance to zero. Other than as set forth in the foregoing sentence, the General Partner will not be personally liable for the return of all or any part of any Capital Contribution. Any such return shall be made solely from Partnership Assets (to the extent available therefor after payment of any creditors of the Issuer in accordance with the Act) and in accordance with this Agreement.

16.5    **Distribution of Assets on Dissolution**

(a)    Subject to the Act, and subject to the relevant provisions of the Conditions which include the non-objection of any Regulator, in the event of a dissolution of the Issuer (whether by the General Partner or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer), the General Partner (or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer) shall cause the Partnership Assets (to the extent remaining after payment of any creditors of the Issuer) to be applied as follows to the extent of such Partnership Assets:

(1)    first, in payment of the Liquidation Distributions or the Optional Redemption Price, as the case may be, in respect of each Preferred

CONFORMED COPY

Dated 10th May, 2007

LB GP NO. 1 LTD.
as General Partner

and

THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED

and

LB INVESTMENT HOLDINGS LTD.
as Preferential Limited Partner

and

LEHMAN BROTHERS HOLDINGS INC.
as Guarantor

---

LIMITED PARTNERSHIP AGREEMENT
establishing
LEHMAN BROTHERS UK CAPITAL FUNDING V LP

---

ALLEN & OVERY

ALLEN & OVERY LLP
LONDON

# CONTENTS

Page No

1.    Definitions and interpretation ................................................................. 2
2.    Formation, Nature and Term of the Issuer ............................................. 5
3.    Management of the Issuer .................................................................... 10
4.    Commitments ...................................................................................... 15
5.    Capital Contributions .......................................................................... 16
6.    Preferred Securities ............................................................................ 18
7.    Preferential Limited Partner ................................................................ 19
8.    Registration of Partnership Interests ................................................... 19
9.    Certificates of Preferred Securities ...................................................... 19
10.   Transfer of interests in the Issuer ........................................................ 20
11.   Capital Accounts ................................................................................ 23
12.   Allocation of Income and Distributions ............................................... 23
13.   Books, Records and Accounts ............................................................. 24
14.   Withdrawal/Replacement of the General Partner .................................. 24
15.   Partnership Finances ........................................................................... 25
16.   Dissolution of Partnership ................................................................... 25
17.   Partnership Meetings .......................................................................... 27
18.   Undertakings of LBHI ......................................................................... 31
19.   General .............................................................................................. 32
Schedule 1 - Part I Form of Global Certificate for Preferred Securities ............ 36
Schedule 1 - Part II Form of Certificate for Preferred Securities ...................... 38

**THIS LIMITED PARTNERSHIP AGREEMENT** is made on 10th May, 2007

**BETWEEN:**

1.      **LB GP NO. 1 LTD.**, a company incorporated in England and Wales with registered number 5355491 whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom (the **General Partner**);

2.      **THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**, a company incorporated in England and Wales with registered number 03227439 whose registered office is at One Canada Square, London E14 5AL (**BNY**);

3.      **LB INVESTMENT HOLDINGS LTD.,** a company incorporated in England and Wales with registered number 4385277 whose registered office is at 25 Bank Street, London E14 5LE (the **Preferential Limited Partner**); and

4.      **LEHMAN BROTHERS HOLDINGS INC.,** a corporation established in Delaware with limited liability (**LBHI**).

**WHEREAS** the General Partner has agreed to become the general partner and the Preferential Limited Partner has agreed to become a limited partner in a limited partnership (the **Partnership**) to be formed under the Limited Partnerships Act 1907 (the **Act**) under the name Lehman Brothers UK Capital Funding V LP in accordance with the terms and conditions set out in this Agreement and which is referred to herein as the **Issuer**.

**WHEREAS** it is the intention of the parties that BNY, being a nominee for a common depositary for Euroclear and Clearstream, Luxembourg (each as defined below), is to become a limited partner in the Partnership on the Closing Date (as defined below).  BNY (acting as principal and not as agent) is party to this Agreement for the purpose of agreeing to become a Limited Partner (as defined below) and agreeing to be bound by the terms of this Agreement as they apply to Limited Partners on and from its admission to the Issuer in accordance with sub-clause 2.6(c), and agreeing to make its Capital Contribution (as defined below) as set out in clauses 4 and 5 on the Closing Date.

**WHEREAS** LBHI is not, and will not become, a partner (general or limited) in the Issuer and LBHI is a party to this Agreement solely for the purposes of acknowledging its terms, agreeing to any actions stated to be performed by LBHI in the Conditions and clause 18.

**NOW IT IS HEREBY AGREED** as follows:

1.      **DEFINITIONS AND INTERPRETATION**

        1.1.    **Definitions**

                In this Agreement, terms defined in the Conditions shall have the same meaning elsewhere in this Agreement subject to the provisions of this clause and unless the context otherwise requires; and

                **Accounts** means the annual accounts of the Issuer prepared in accordance with the provisions of sub-clause 13.2;

                **Administration Agreement** means the agreement between LBHI, the Issuer (acting through the General Partner) and the Administrator to be dated the Closing Date setting out the detailed duties of the Administrator in respect of the operation of the Partnership;

2

2.2 **Name**

(a)    Subject to sub-clause 2.2(b), the name of the Issuer shall be "Lehman Brothers UK Capital Funding V LP".

(b)    Subject to the provisions of the Act or otherwise at law, the Issuer shall be called by such other name as the General Partner may specify from time to time in its absolute discretion by written notice given to the Limited Partners.

2.3 **Term of the Issuer**

The Issuer shall not be terminable by the General Partner (whether on notice or otherwise) and shall continue until the earlier of the date on which the Issuer is dissolved or terminated in accordance with the provisions of this Agreement, and the first date on which there is not at least one general partner and at least one limited partner for the purposes of the Act.

2.4 **Business**

The business of the Issuer shall be to raise and provide finance and financial support to LBHI and its group. In carrying on such business, the Issuer shall do (*inter alia*) the following:

(a)    acquire and hold, as investments, the Subordinated Notes and the Third Party Assets;

(b)    admit (through the General Partner) new limited partners from time to time as Limited Partners;

(c)    consider from time to time and advise LBHI in relation to, and agree with LBHI how to take forward, opportunities to raise additional finance and/or provide financial support to LBHI;

(d)    monitor the investments represented by the Partnership Assets (being initially the Subordinated Notes and the Third Party Assets) and dispose of and/or replace them in accordance with the terms of this Agreement; and

6

16.3    **Events Causing Dissolution**

Subject to the Act and the other provisions of this Agreement, the Issuer shall be dissolved and terminated and the Partnership Assets distributed in the manner provided for in sub-clause 16.5 on the occurrence of the following events:

(a)    an order being made for the bankruptcy, dissolution, liquidation or winding up of the General Partner or a special resolution of the General Partner being passed for its winding up other than in circumstances where the business of the General Partner has been transferred pursuant to sub-clause 10.2; or

(b)    an order for dissolution being made by the English Court (under Section 35 of the Partnership Act 1890); or

(c)    payment of the Capital Contribution referred to in sub-clause 5.1 hereof not having been made pursuant to the Subscription Agreement; or

(d)    as set out in sub-clause 2.3; or

(e)    an exercise of redemption or dissolution rights pursuant to the Conditions.

16.4    **General Partner's Liability Upon Dissolution or Retirement**

Upon dissolution of the Issuer or upon the General Partner ceasing to serve as such, whether as a result of its retirement or otherwise, the General Partner shall be obliged to contribute to the capital of the Issuer the amount necessary to restore the deficit, if any, in the General Partner's Capital Account balance to zero. Other than as set forth in the foregoing sentence, the General Partner will not be personally liable for the return of all or any part of any Capital Contribution. Any such return shall be made solely from Partnership Assets (to the extent available therefor after payment of any creditors of the Issuer in accordance with the Act) and in accordance with this Agreement.

16.5    **Distribution of Assets on Dissolution**

(a)    Subject to the Act, and subject to the relevant provisions of the Conditions which include the non-objection of any Regulator, in the event of a dissolution of the Issuer (whether by the General Partner or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer), the General Partner (or such other person or persons as may be appointed by a competent court in accordance with the Act to be the person or persons responsible for the liquidation of the Issuer) shall cause the Partnership Assets (to the extent remaining after payment of any creditors of the Issuer) to be applied as follows to the extent of such Partnership Assets:

(1)    first, in payment of the Liquidation Distributions or the Optional Redemption Price, as the case may be, in respect of each Preferred Security held, payable to any Limited Partners as holders of the Preferred Securities;

(2)    secondly, in payment of any amount payable to the Preferential Limited Partner in respect of its payment rights under this Agreement; and

26

# Exhibit E

# DISSOLVED

05355491          LB GP NO 1 LTD

This Company was dissolved on 22/06/10



*D053554919*

dc 3062

C25C                                                              HC003

# DISSOLVED

04385277    LB INVESTMENT HOLDINGS LTD

---

This Company was dissolved on  17/05/11



*D6O6ISDU1V*

1
dc2

C25C                                                                    HC003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : |
| | : |
| Debtors. | : |

| |
|---|
| **Chapter 11 Case No.** |
| |
| **08-13555 (JMP)** |
| |
| **(Jointly Administered)** |

---------------------------------------------------------------------x

### ORDER GRANTING DEBTORS'
### TWO HUNDRED THIRTEENTH OMNIBUS
### <u>OBJECTION TO DISALLOW AND EXPUNGE CERTAIN CLAIMS</u>

Upon the two hundred thirteenth omnibus objection to claims, dated September

16, 2011 (the "<u>Two Hundred Thirteenth Omnibus Objection to Claims</u>"),[1] of Lehman Brothers

Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors in possession (collectively, the "<u>Debtors</u>"), pursuant to section 502(d) of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>") and this Court's order approving procedures for the

filing of omnibus objections to proofs of claim [ECF 6664], seeking disallowance and

expungement of the Subordinated Guarantee Claims, all as more fully described in the Two

Hundred Thirteenth Omnibus Objection to Claims; and due and proper notice of the Two

Hundred Thirteenth Omnibus Objection to Claims having been provided to: (i) each claimant

listed on <u>Exhibit A</u> attached to the Two Hundred Thirteenth Omnibus Objection to Claims; (ii)

the U.S. Trustee; (iii) the attorneys for the Creditors' Committee; (iv) the Securities and

Exchange Commission; (v) the Internal Revenue Service; and (vi) the United States Attorney for

the Southern District of New York, and (vii) all other parties entitled to notice in accordance

with the procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for these cases [ECF 9635]; and it appearing

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Two Hundred Thirteenth Omnibus Objection to Claims.

that no other or further notice need be provided; and the Court having found and determined that

the relief requested in the Two Hundred Thirteenth Omnibus Objection to Claims is in the best

interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Two Hundred Thirteenth Omnibus Objection to Claims establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefore, it is

      ORDERED that the relief requested in the Two Hundred Thirteenth Omnibus

Objection to Claims is granted to the extent provided herein; and it is further

      ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on <u>Exhibit A</u> annexed hereto are disallowed and expunged in their entirety with prejudice;

and it is further

      ORDERED that the Debtors' Court-appointed claims agent is authorized to

modify the claims register to reflect this order; and it is further

      ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2011
      New York, New York

                _____
                UNITED STATES BANKRUPTCY JUDGE