**Presentment Date and Time: December 6, 2011 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time: December 6, 2011 at 11:00 a.m. (Prevailing Eastern Time)**
**Hearing Date and Time (If an Objection is Filed): December 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF APPLICATION**
**OF THE DEBTORS PURSUANT TO SECTIONS 327(a)**
**AND 328(a) OF THE BANKRUPTCY CODE AND FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE 2014(a) AND 2016 FOR AUTHORIZATION TO**
**EMPLOY AND RETAIN GLEACHER & COMPANY SECURITIES, INC. AS**
**FINANCIAL ADVISOR EFFECTIVE AS OF FEBRUARY 17, 2011**

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI" and, together with its

affiliated debtors in the above-captioned chapter 11 cases, the "Debtors"), pursuant to sections

327(a) and 328(a) of the Bankruptcy Code (the "Bankruptcy Code"), and Rules 2014(a) and

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

Debtors to employ and retain Gleacher & Companies Securities, Inc. as financial advisor to the

Debtors, effective as of February 17, 2011, all as more fully described in the Application, to the

Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on

**December 6, 2011 at 12:00 p.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), and served in accordance with General Order M-399 and on: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Goodwin Procter LLP, 620 Eighth Avenue, New York, New York 10018, Attn: Emanuel C. Grillo, Esq., **so as to be so filed and received by no later than December 6, 2011 at 11:00 a.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed and served, a hearing will be held on **December 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York

10004-1408.  If an objection is filed the objecting parties are required to attend the hearing, and

failure to appear may result in relief being granted or denied upon default.

Dated: November 22, 2011
      New York, New York

                                   /s/ Jacqueline Marcus
                                   Jacqueline Marcus
                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Telephone: (212) 310-8000
                                   Facsimile: (212) 310-8007

                                   Attorneys for Debtors
                                   and Debtors in Possession

**Presentment Date and Time: December 6, 2011 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time: December 6, 2011 at 11:00 a.m. (Prevailing Eastern Time)**
**Hearing Date and Time (If an Objection is Filed): December 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                         :
In re                                    :    Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                         :
                    Debtors.             :    (Jointly Administered)
                                         :
-------------------------------------------------------------------x
```

**APPLICATION OF THE DEBTORS PURSUANT**
**TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY**
**CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**2014(a) AND 2016 FOR AUTHORIZATION TO EMPLOY AND**
**RETAIN GLEACHER & COMPANY SECURITIES, INC. AS**
**<u>FINANCIAL ADVISOR EFFECTIVE AS OF FEBRUARY 17, 2011</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors-in-possession (together, the "<u>Debtors</u>" and, collectively with their non-Debtor affiliates, "<u>Lehman</u>"), file this application (the "<u>Application</u>") and respectfully represent:

<u>**Background**</u>

        1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order dated January

20, 2009, [ECF No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy

Code on March 11, 2010 [ECF No. 7531].

4.    On September 1, 2011, the Debtors filed a third amended joint chapter

11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF Nos.

19627 and 19629].  On September 1, 2011, the Bankruptcy Court entered an amended order

[ECF No. 19631] approving the Disclosure Statement, establishing solicitation and voting

procedures in connection with the Plan, scheduling the confirmation hearing and establishing

notice and objection procedures for the confirmation hearing.  On September 15, 2011, the

Bankruptcy Court entered an order [ECF No. 20016] approving a modification to the Disclosure

Statement.

## Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[ECF No. 2].

## Relief Requested

8.      The Debtors request authorization, pursuant to sections 327(a) and 328(a)

of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, to employ and retain Gleacher

& Company Securities, Inc. ("Gleacher") as financial advisor to the Debtors, effective as of

February 17, 2011, in accordance with the terms of the engagement letter between LBHI and

Gleacher, dated as of November 18, 2011 (the "Engagement Letter"), and the related

indemnification agreement between LBHI and Gleacher attached as Schedule A to the

Engagement Letter (the "Indemnification Agreement" and, together with the Engagement Letter,

the "Engagement Agreement").[1]  Specifically, the Debtors seek to retain Gleacher to act as its

financial advisor solely in connection with a potential transaction, or series of transactions

designed to monetize the Debtors' interest in Archstone Enterprise LP (together with its

subsidiaries and controlled affiliates, "Archstone"), one of the Debtors' largest real estate

positions.

### Archstone

9.      In 2007, certain of the Debtors and their non-Debtor affiliates made

certain equity investments and loans in connection with the leveraged buyout of a publicly-

traded real estate investment trust known as Archstone.  In total, affiliates of Lehman, affiliates

of Bank of America, N.A. ("Bank of America") and affiliates of Barclays Capital Real Estate

Inc. ("Barclays," and collectively with Lehman and Bank of America, the "Co-Sponsors")

invested approximately $4.8 billion in the aggregate in the common equity of Archstone, with

approximately $2.4 billion attributable to the Debtors' indirect interests.  In connection with the

acquisition of Archstone, the Co-Sponsors provided secured financing to Archstone that

consisted of certain term loans, revolving loans, a development loan and mezzanine loans (the

"Acquisition Financing").

10.      In January 2009, the Co-Sponsors committed an additional $485 million,

plus available letters of credit, as new priority financing (the "Priority Financing") to provide

Archstone with customary operating liquidity.[2]  The majority of the Acquisition Financing and

the Priority Financing was extended by the Co-Sponsors to an Archstone entity (the "Archstone

---

[1] In light of commercially sensitive information contained in the Engagement Agreement, it has not been attached to this Application.  Copies of the Engagement Agreement have been provided to the U.S. Trustee and to counsel to the Creditors' Committee and will be provided to the Court, upon request.

[2] The Priority Financing, among other things, was approved by this Court's *Order Granting The Debtors' Motion Pursuant To Sections 105(a), 363(b) And 365(a) Of The Bankruptcy Code And Bankruptcy Rules 6004 And 6006 For Authorization to (I) Assume, As Modified, Certain Loan Agreements, And (II) Consummate Related Loans to be Made by Lehman Commercial Paper Inc. and Other Lenders to Archstone* [ECF No. 2677].

Borrower") and guaranteed by the Archstone Borrower's direct and indirect parents. As a result, such debt is primarily secured by the equity value of the Archstone Borrower's assets rather than specific properties. As of September 30, 2010, Debtors Lehman Commercial Paper Inc., Luxembourg Residential Properties Loan Finance S.a.r.l. and their affiliates collectively held a beneficial interest in the Acquisition Financing provided to Archstone in the aggregate principal amount of approximately $2.6 billion, inclusive of certain corporate loans made to Archstone (the "Cutoff Period Loans") in the aggregate principal amount of approximately $65 million.

11.    On May 25, 2010, the Court approved a restructuring (the "Initial Restructuring") of the investments made in Archstone by the Co-Sponsors, pursuant to the *Order Granting the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 9019 for Authorization to Restructure Certain Terms of the Archstone Credit Facilities* [ECF No. 9229]. The key terms of the Initial Restructuring involved, among other things, (i) the conversion of financing provided to Archstone by the Co-Sponsors in the principal amount of approximately $5.2 billion, plus accrued interest, to classes of new equity interests entitled to a preferred return (the "New Equity Interests"), and (ii) the conversion of the Priority Financing to a new revolving credit facility with an extended maturity date. On November 18, 2010, the Court authorized the Debtors to modify the Initial Restructuring [ECF No. 12894] (the "Modified Restructuring"). The Modified Restructuring essentially reflected a conversion of the Cutoff Period Loans into New Equity Interests as part of an equity conversion, which ultimately resulted in a further reduction of Archstone's debt levels.

12.    As a result of the Acquisition Financing, the Priority Financing, the Initial Restructuring and the Modified Restructuring, LBHI, either directly or indirectly owns

approximately $2.6 billion of face value of preferred equity of Archstone and as of June 30, 2011 has approximately $208 million remaining in outstanding debt. Additionally, through their non-Debtor affiliates, the Debtors currently hold approximately 47% of the common equity interests in Archstone.

13.    As a result of its successful restructuring, Archstone has the opportunity to raise additional capital and to unlock a substantial amount of equity value. In light of the Debtors' sizeable investment in Archstone, a substantial portion of which constitutes equity, any potential transaction or series of transactions that affects Archstone's existing equity will have a significant effect on the estates of LBHI and the other Debtors, either directly or indirectly through non-Debtor affiliates. In the event Archstone engages in any transaction that involves equity financing effected through the formation of a joint venture, an initial public offering of equity securities, or a sale of all or a portion of its assets, Lehman may have an opportunity to realize an increase in liquidity and, potentially, an increase in the value of its investments in Archstone. Accordingly, the Debtors sought the retention of a professional to advise them in developing an appropriate transaction or a series of transactions. After a thorough search, the Debtors decided to retain Gleacher to render such services.

## Gleacher's Qualifications

14.    Since the Commencement Date, the Debtors have been repeatedly approached, on an unsolicited basis, by investment banks in connection with the prospect of rendering services related to Archstone. On or about January 7, 2011, the Debtors began a formal process to engage a financial advisor to assist them in connection with the Archstone Transaction (as defined hereinafter) and proceeded to interview nine potential advisors. These efforts initially involved telephonic and electronic communications and, with respect to certain firms, progressed to meetings and pitch presentations. Ultimately, the Debtors executed non-

disclosure agreements with two firms, one of which was Gleacher.  The Debtors believe there are

three key criteria to be considered in connection with their selection of a financial advisor:

expertise, disinterestedness and cost.  In this regard the Debtors have concluded that Gleacher is

best suited to advise them in connection with the services contemplated under the terms set forth

in the Engagement Agreement.

Expertise

15.     Gleacher is well-known for advising a broad range of clients across the

U.S. and in Europe on complex mergers and acquisitions assignments.  Gleacher brings global

transactional expertise and strong relationships within the U.S. and European corporate, private

equity and lending communities.  Gleacher is a wholly owned subsidiary of Gleacher &

Company, Inc. ("G&C" and together with its various operating subsidiaries, the "Gleacher

Group").  The Gleacher Group is an independent investment bank that provides corporate and

institutional clients with strategic and financial advisory services, including merger and

acquisition, restructuring, recapitalization, and strategic alternative analysis, as well as capital

raising, research based investment analysis, and securities brokerage services, and through

G&C's acquisition of ClearPoint Funding, Inc. ("ClearPoint"), which closed on January 3, 2011,

engages in residential mortgage lending.  The Gleacher Group offers a diverse range of products

through its Investment Banking, Mortgage Backed/Asset Backed & Rates, Corporate Credit and

ClearPoint divisions.  G&C's common stock is traded on the NASDAQ Global Market under the

symbol "GLCH."  The Services set forth in the Engagement Letter are being provided only by

personnel of Gleacher's real estate investment banking group (the "Real Estate Group"), which

falls within Gleacher's Investment Banking Division, and certain other limited personnel outside

the Real Estate Group and the Investment Banking Division who may be needed to assist the

Real Estate Group in this engagement.  Gleacher's investment banking advisory group

distinguishes itself by providing independent, unbiased, senior-level advisory services to clients in the most complex and challenging situations.

16.    In addition to Gleacher's proven track record, another key consideration was that the Debtors received the personal commitment of Eric Gleacher, the chairman of the board of directors of G&C and leader of Gleacher's investment banking advisory group.  Mr. Gleacher was the founder of Gleacher Partners, Inc. in 1990 and acted as its Chairman. Previously, Mr. Gleacher founded the Mergers & Acquisitions department at LBHI in 1978 and headed Global Mergers & Acquisitions at Morgan Stanley & Co. Inc. ("Morgan Stanley") from 1985 to 1990.  Stephen Hentschel, a managing director and head of real estate investment banking at Gleacher, who has primary responsibility for the engagement, has 21 years of experience in real estate investment banking and has been involved in large, high profile and diverse activities that all have direct relevance to the Archstone situation, including REIT initial public offerings, mergers and acquisitions, private equity raises, principal investments and asset sales.  Mr. Hentschel has significant expertise with apartment companies and also spent 10 years as a real estate investment banker at Lehman until 2006.  Mr. Hentschel is quite familiar with Archstone from his tenure at Lehman and has a good relationship with Archstone's management.

Disinterestedness

17.    Due to the sheer magnitude of Archstone and the many monetization options available, the Debtors wanted to be sure to select an advisor that would have no vested interest in the transaction proposed.  For example, an initial public offering of Archstone is likely to generate substantial fees for the investment banks that would act as underwriters. Consequently, the Debtors determined that it would be preferable to engage an advisor that does not build its business primarily around underwriting work and, therefore, would not be motivated to recommend that the Debtors pursue an initial public offering option unless it were truly the

best strategy for Lehman.  Inasmuch as Gleacher does not have an equities business and thus could not serve as an underwriter in connection with an IPO Transaction, the Debtors believe that they will receive such disinterested advice from Gleacher.

Fees

18.    Although it is difficult to point to comparable transactions, the Debtors believe that the monthly fees agreed to by Gleacher are reasonable and are consistent with fees charged by financial advisors in similar situations.  For example, the Debtors have retained Lazard Freres & Co. LLC ("Lazard") to serve as investment banker to the Debtors and their controlled subsidiaries [ECF No. 2275].[3]  The Debtors initially paid Lazard a monthly fee of $400,000 per month which was reduced to $200,000 per month, effective as of December 1, 2009.  Similarly, the Court authorized the Debtors to increase Lazard's monthly fee by $150,000 and pay Lazard $350,000 per month for a six month period in connection with Lazard assisting the Debtors with the exploration of a strategic relationship with a third party with respect to LAMCO Holdings LLC and its subsidiaries [ECF No. 15239].  The monthly fees contemplated under the Engagement Letter are within the range of fees the Court has approved in connection with related services performed by Lazard.

19.    Additionally, the transaction fees agreed to by Gleacher are reasonable and are consistent with fees charged by financial advisors in similar situations.  For example, in January 2010, chapter 11 debtor General Growth Properties, Inc., and its affiliated debtors (collectively, "GGP") received authorization to retain UBS Securities LLC ("UBS") as its capital markets and M&A advisor to primarily advise and assist them in raising exit financing.  GGP

---

[3] Gleacher is being engaged solely to provide advice in connection with the potential Archstone Transaction. Gleacher's services under the Engagement Letter will not overlap with the services being rendered by Lazard in the Debtors' chapter 11 cases, although there is some overlap between the Engagement Letter and Lazard's engagement letter.

was authorized to retain UBS to provide such services despite having retained Miller Buckfire, earlier in the chapter 11 case, as its investment banker and financial advisor.  As reflected in the order approving UBS' final fee application, UBS received a total of $18,070,967.48 in compensation.

20.     In the non-chapter 11 context, another useful comparison is the fee paid to Morgan Stanley, as the advisor to Archstone-Smith Operating Trust.  Based upon publicly available documents, Morgan Stanley received approximately $25 million in compensation for acting as Archstone-Smith Operating Trust's advisor in connection with a sale process that lasted approximately six weeks.  Morgan Stanley's engagement involved a straightforward sale to one of three competing bidders and is readily distinguishable from the current Archstone Transaction, which involves consideration of various strategic alternatives and requires Gleacher to navigate among the Co-Sponsors and deal with any bankruptcy-related issues and requirements.

21.     The fee structure to which Gleacher has agreed provides an additional benefit in that it promotes the disinterestedness described above, because it is designed so that Gleacher receives more or less the same fee, whether the transaction is an IPO, a sale or a joint venture.

22.     For all of the foregoing reasons, the Debtors believe that Gleacher is the best firm to advise them with respect to Archstone.  Given Gleacher's qualifications and the terms of the Engagement Agreement, among other things, the Debtors respectfully submit that the employment of Gleacher is in the best interests of the Debtors, their estates, and their creditors.

## Scope of Services

23.     The terms and conditions of Gleacher's retention are governed by the

Engagement Agreement.  Pursuant to the Engagement Letter, in consideration of the

compensation contemplated thereby, Gleacher will provide the following services:[4]

   a.  Assist and advise Lehman in connection with analyzing, structuring,
       negotiating and effectuating, and identifying potential investors in (i) one
       or a series of private offerings of equity securities by Archstone, including
       an equity financing effected through the formation of a joint venture (any
       such transaction considered in this clause, a "Private Equity Transaction")
       and/or (ii) one or a series of transactions involving the sale of one or more
       assets or the formation of one or more asset-level joint ventures (a
       "Develeraging Transaction");

   b.  Assist and advise Lehman in connection with analyzing, structuring,
       negotiating and effectuating an initial public offering of equity securities
       by Archstone  (an "IPO Transaction");

   c.  Assist and advise Lehman in connection with obtaining corporate and/or
       debt ratings from one or more of any nationally recognized statistical
       rating organization for Archstone including, but not limited to, Moody's,
       Standard & Poor's and Fitch Ratings (a "Credit Rating");

   d.  Assist and advise Lehman in connection with obtaining debt commitments
       for a new credit facility for Archstone ("Credit Facility Commitments");

   e.  Assist and advise Lehman in connection with analyzing, structuring,
       negotiating and effectuating the potential purchase by Lehman or by a
       third party, in one or a series of transactions, including through the
       exercise of any right of first offer, right of first refusal, drag-along, tag-
       along or any other right pursuant to an agreement among the Co-Sponsors
       of all or a portion of the Shares not currently owned by the Debtors, in a
       transaction where Lehman is not selling all or substantially all of its
       Shares and the entry into amendments to the existing governance
       documents controlling the partnership among the Co-Sponsors (an "Equity
       Purchase Transaction");

   f.  Assist and advise Lehman in connection with analyzing, structuring,
       negotiating and effectuating, and identifying potential acquirers in

---

[4]  To the extent that the following summary of the Engagement Letter and the terms of the Engagement Letter are
inconsistent, the terms of the Engagement Letter (as the same may be modified by the Order approving this
Application) shall control.  Capitalized terms that are used in this Application but not defined in this Application
shall have the meanings ascribed to them in the Engagement Agreement.

connection with, the potential sale or re-sale, in one or a series of transactions, of all or a portion of the shares of beneficial interest of Archstone owned by the Debtors at the time, including, through the exercise of any right of first offer, right of first refusal, drag-along, tag-along or any other right pursuant to an agreement among the Co-Sponsors (an "Equity Sale Transaction");

g.  Assist and advise Lehman in connection with analyzing, structuring, negotiating and effectuating, and identifying potential acquirers in connection with, the potential sale, in one or a series of transactions, of all or a portion of Archstone by way of: (i) a third-party sale or transfer of more than 75% of Archstone's shares of beneficial interest, share capital, capital stock, debt securities, equity securities, preferred equity securities, equity-linked securities or other securities; (ii) merger, reverse takeover, consolidation, reorganization, joint venture, transfer, exchange, restructuring, other strategic or business combination or any similar transaction or series of transactions whereby one or more entities gains control of Archstone; (iii) a sale or transfer of more than 50% of Archstone's assets, business or divisions or any right to more than 50% of the revenues or income of Archstone; or (iv) the acquisition directly or indirectly of control of Archstone (including through an issuance of securities or other transaction) (any such transaction considered in this clause, an "M&A Transaction," and collectively with the other transactions described above, the "Archstone Transactions"); provided that, in no case shall a reorganization, restructuring or other similar transaction or series of transactions where ultimate beneficial ownership of Archstone remains substantially the same constitute an Archstone Transaction subject to the Engagement Agreement; and

h.  At the Debtors' request, providing testimony in the Bankruptcy Court with respect to any of the foregoing.

24.    The services that Gleacher has agreed to provide are necessary to enable the Debtors to maximize the value of the sizeable investments made in Archstone. Gleacher has indicated a willingness to act on behalf of the Debtors, on the terms described herein, and will subject itself to the jurisdiction of the Court.

## **Professional Compensation**

25.    Pursuant to the Engagement Letter, LBHI, on behalf of the Debtors, and Gleacher have agreed to the following compensation structure (the "Fee and Expense Structure")

in consideration for the services to be rendered by Gleacher in connection with the potential

Archstone Transactions:[5]

a.  Retention Fee: On the seventeenth (17th) day of each month during the term of this Engagement Agreement, Gleacher shall be paid a fee in the amount of $300,000 for its services, in advance.  In addition, on the effective date hereof the amount of $3,000,000, representing payments due from February 17, 2011 through November 17, 2011, shall be paid to Gleacher.  All such amounts paid pursuant to this subsection (collectively, the "Retention Fee") are subject to a cap of $3.6 million.

b.  Private Equity and Deleveraging Transaction Fees:  Upon the completion of any Private Equity Transaction, a cash fee in an amount equal to 0.75% of the aggregate gross proceeds to Archstone from the sale of any equity securities (the "Private Equity Fee"). Gleacher's total compensation in regard to the Private Equity Fee shall not exceed $10 million. After the aggregate gross equity proceeds raised in one or more Deleveraging Transactions equals or exceeds $250 million (the "Threshold"), a fee payable in cash at the closing of each Deleveraging Transaction at which or after the Threshold has been achieved in an amount equal to 0.50% of the aggregate gross equity proceeds to Archstone (or the applicable joint venture) raised in all Deleveraging Transactions in excess of the Threshold (the "Deleveraging Transactions Fee").  Gleacher's total compensation in regard to the Deleveraging Transactions Fee shall not exceed $10 million.

c.  IPO Advisory Fee:  A fee payable in cash upon completion of any IPO Transaction equal to 0.20% of the gross proceeds of any equity sold in connection with an IPO Transaction, subject to a cap of $10.5 million (the "IPO Advisory Fee").

d.  Ratings Advisor Fee: A fee payable in cash upon the issuance of any Credit Rating equal to 0.10% of the aggregate gross proceeds of Archstone debt subject to such rating, subject to a cap of $2 million.

e.  Credit Facility Fee: A fee payable in cash upon the closing of any Credit Facility Commitments equal to 0.25% of the aggregate principal balance of such Credit Facility Commitments to Archstone, subject to a cap of $5 million.

f.  Equity Purchase Fee: A fee payable in cash upon each closing of an Equity Purchase Transaction equal to $7.5 million multiplied by (x) the portion of the Shares acquired in such Equity Purchase Transaction, and

---

[5] To the extent that the following summary of the Fees and Expense Structure set forth in the Engagement Letter and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter (as the same may be modified by the Order approving this Application) shall control.

divided by (y) the Shares which represent the entire 53% ownership interest in Archstone not currently owned by the Debtors.

g.  Equity Sale Fee: A fee payable in cash upon each closing of an Equity Sale Transaction, which, depending on the type of transaction, shall be equal to the amount set forth on (i) Schedule A attached to the Engagement Letter or (ii) Schedule B attached to the Engagement Letter opposite the total equity value of Lehman, Bank of America and Barclay's shares of beneficial interest of Archstone sold in connection with such Equity Sale Transaction multiplied by (x) the portion of Lehman's Shares sold in such Equity Sale Transaction, and divided by (y) the Shares which represent Lehman's entire ownership interest in Archstone (the "Equity Sale Fee").  Following an IPO Transaction, the Equity Sale Fee shall be payable with respect to transfers of Shares by Lehman occurring during the first 12 months following the closing of such IPO Transaction, regardless of the structure of such transfers (e.g., block sale, private sale, open market sales, distributions to creditors); subject to a cap of $10.5 million (including any IPO Advisory Fee previously payable in connection with any IPO Transaction).

h.  M&A Fee:  A fee payable in cash upon completion of an M&A Transaction equal to the amount set forth on Schedule B attached to the Engagement Letter opposite the total equity value of Lehman, Bank of America and Barclay's shares of beneficial interest of Archstone ascribed to such M&A Transaction (or, if applicable, the proceeds to Archstone in such an Archstone Transaction).

i.  Expenses:  In addition to any fees that may be payable to Gleacher, LBHI agrees to reimburse Gleacher for all reasonable expenses, including travel and lodging and other reasonable and documented out-of-pocket expenses, arising out of Gleacher's engagement.  LBHI shall also reimburse Gleacher, at such times as Gleacher shall request, for any sales, use or similar taxes (including, but not limited to, additions to such taxes, if any) arising in connection with any matter referred to in this Engagement Agreement.  Periodically, Gleacher shall bill for expenses incurred and reimbursable hereunder, whereupon LBHI shall promptly reimburse Gleacher for such expenses. Gleacher shall provide LBHI upon its reasonable request with information on the amount of accrued expenses. The amount to be reimbursed to Gleacher pursuant to this section 2(d) shall not exceed $200,000 without LBHI's prior written consent.

j.  Maximum Fee:  Gleacher's total fees, not including any reimbursement for expenses that may be payable, shall not exceed $15 million; *provided, however,* that any Retention Fee paid shall be credited against the first amounts owed for any individual fees received with respect to an Archstone Transaction.

26.     The hours worked, the results achieved, and the ultimate benefit to LBHI and its affiliate debtors from the services performed by Gleacher in connection with its engagement may vary and LBHI, on behalf of the Debtors, and Gleacher have taken this into account in setting the above fees.  The Fee and Expense Structure described above was established to reflect the difficulty of the extensive assignments Gleacher has been undertaking since February 17, 2011.

27.     In determining the level of compensation to be paid to Gleacher and its reasonableness, LBHI compared Gleacher's proposed fees with investment banking firms of similar stature and qualifications that provided services comparable to those set forth in the Engagement Letter, both in and out of court.  As a result of such review, LBHI determined that the Fee and Expenses Structure is reasonable and within the range of other comparable transactions, both in and out of court.

28.     As more fully described in the affidavit of Stephen Hentschel (the "Hentschel Affidavit"), sworn to on November 18, 2011, a copy of which is annexed hereto as Exhibit A, the services Gleacher has agreed to provide are somewhat unique; however, to the extent comparisons can be made, the Fee and Expense Structure is consistent with Gleacher's normal and customary billing practices for matters of this size and complexity that require the level and scope of services outlined in the Engagement Letter.

29.     Most of Gleacher's professionals, including those professionals involved in the potential Archstone Transactions, do not keep time records in connection with the performance of their services.  Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases, whose fee arrangements are typically not hours-based, Gleacher does not ordinarily maintain contemporaneous time records in one-tenth hour

increments, or provide or conform to a schedule of hourly rates for its professionals.  Gleacher

has agreed to maintain contemporaneous time records beginning as of the date hereof.  The

Debtors request that Gleacher be required only to maintain such records in half-hour increments.

*See, e.g., In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.

December 17, 2009), ECF No. 15239 (permitting Lazard to maintain time records in half hour

increments); *In re General Growth Properties, Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y.

2010), ECF No. 4878 (permitting UBS to maintain time records in half hour increments).

        30.     Gleacher's expertise as well as its private equity and public offerings

knowledge, some or all of which may be required by the Debtors during the term of Gleacher's

engagement, were important factors in determining the Fee and Expense Structure (including the

contingent fees).  Consequently, the ultimate benefit to LBHI and its affiliated debtors of

Gleacher's services cannot be measured merely by reference to the number of hours to be

expended by Gleacher's professionals in the performance of such services.

        31.     In addition, given the numerous issues which Gleacher may be required to

address in the performance of its services hereunder, Gleacher's commitment to the variable

level of time and effort necessary to address all such issues as they arise, and the market prices

for Gleacher's services for engagements of this nature in an out-of-court context, as well as in

chapter 11, the Debtors believe that the Fee and Expense structure is reasonable under the

standards set forth in section 328(a) of the Bankruptcy Code.

**<u>Indemnification Agreement</u>**

        32.     As part of the overall compensation payable to Gleacher under the terms

of the Engagement Agreement, LBHI has agreed to certain indemnification and contribution

obligations.  Specifically, LBHI has agreed to indemnify Gleacher and its affiliates, and each of

their respective owners, security holders, directors, officers, managers, members, parents,

partners, counsel, agents and employees, and each other person or entity, if any, controlling

Gleacher or any of its affiliates (collectively, the "Indemnified Persons") from and against

certain losses arising out of their engagement by the Debtors in connection with the potential

Archstone Transaction, other than claims resulting from the bad faith, fraud, criminal conduct,

self-dealing, breach of fiduciary duty, to the extent one is found to exist, gross negligence or

willful misconduct on the part of such Indemnified Person.

33.    The Debtors and Gleacher believe that the terms of the Indemnification

Agreement are customary and reasonable for financial advisory and investment banking

engagements, in out-of-court matters, as well as in chapter 11 proceedings. *See United Artists*

*Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003); *In re*

*All American Semiconductor, Inc.,* No. 07-12963 (Bankr. S.D. Fla May 25, 2007); *In re Atlas*

*Worldwide Holdings, Inc.,* No. 04-10792 (Bankr. S.D. Fla Apr. 22, 2004)*; see also, In re New*

*Century TRS Holdings, Inc.,* No. 07-10416 (Bankr. D. Del. Apr. 25, 2007).  Further, the terms of

the Indemnification Agreement are similar to indemnification terms that have previously been

approved by bankruptcy courts in this District.  *See In re Lehman Brothers Holdings Inc.*, Case

No. 08-13555 (JMP) (Bankr. S.D.N.Y. December 17, 2009), ECF No. 15239 (authorizing the

Debtors to provide Lazard with a similar indemnity); *In re Calpine Corp.,* Case No. 05-60200

(Bankr. S.D.N.Y. May 2, 2006); *In re Worldcom, Inc.*, 02-13533 (AJG) (Bankr. S.D.N.Y.

January 14, 2003); *In re Adelphia Commc'ns Corp.*, 02-41729 (REG) (Bankr. S.D.N.Y.

September 27, 2002); *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y.

2000), *aff'd*, No. 00-3601 (JSM), 2000 Bankr. WL 1800690 (S.D.N.Y. Dec. 6, 2000).

34.     Accordingly, the Debtors respectfully submit that the terms of the

Indemnification Agreement, are reasonable and customary and should be approved under the

terms set forth in the Engagement Agreement.

### Effective Date of Retention

35.     The Debtors request that Gleacher's retention be made effective as of

February 17, 2011, to ensure that Gleacher is compensated for the substantial services it already

has rendered on behalf of the Debtors' estates.  Since February 17, 2011, Gleacher has been

actively engaged in reviewing the assets and underlying collateral in connection with the

potential Archstone Transactions and advising the Debtors on their interests therein.  This work

has included (i) assisting in the preparation of filings with the Securities Exchange Commission

with respect to an initial public offering; (ii) assisting the Debtors in interviewing and assessing

one or more underwriters for an initial public offering; (iii) negotiations with respect to

underwriter fees and the terms of credit facilities which may be entered into in connection with

an initial public offering; (iv) negotiations regarding multiple forms of private equity capital and

various strategic alternatives for Archstone; and (v) negotiations with the Co-Sponsors regarding

strategic alternatives.

36.     The Debtors and Gleacher have been involved in extensive discussions

with respect to finalizing the Engagement Agreement and have diligently focused for several

months on evaluating, designing and launching the multi-path monetization process with respect

to the Debtors' interests in Archstone.  During this time Gleacher has provided valuable and

uninterrupted services to the Debtors, undertook a significant amount of work without a formal

engagement in place, and served as the Debtors' *de facto* financial advisor.  The Debtors believe

that compensating and reimbursing Gleacher for its reasonable fees and expenses and

indemnifying the Indemnified Persons in connection with the valuable services rendered prior to the submission of this Application, is appropriate and warranted in these circumstances.

37.    The complex, global nature of these chapter 11 cases and the need for professionals to provide immediate services in exigent circumstances has warranted retroactive approval of professional retentions. *See In re Anthony Stylianou*, 2010 Bankr. Lexis 3193 at \*15 (Bankr. S.D.N.Y. 2010) (stating the "determination as to whether the *nunc pro tunc* appointment is appropriate is in essence an equitable one, taking into account all relevant circumstances surrounding the party's omission."); *In re Motors Liquidation Company*¸ 2010 Bankr. Lexis 2367 at \*28 (Bankr. S.D.N.Y. 2010) (stating that in "exercising its discretion regarding the existence of 'extraordinary circumstances,' a bankruptcy court considers factors such as . . . whether the applicant was under time pressure to begin service without approval"); *see also In re Hasset, Ltd.*, 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002) (approving *nunc pro tunc* retention and recognizing that "*nunc pro tunc* applications are disfavored in this Circuit but have been permitted when the attorney performs services of 'value' to the estate" (internal citations omitted)); *In re Piecuil*, 145 B.R. 777, 779 (Bankr. W.D.N.Y. 1992) (stating that "'it is not unreasonable . . . for the court, in its carefully exercised discretion, to utilize *nunc pro tunc* orders' . . . where the failure to make timely application has been explained and no violation of underlying policy has occurred." (internal citations omitted)).  Indeed, this Court has granted *nunc pro tunc* approval of the retention of at least thirty-eight other professionals in these cases.[6]  Based on the foregoing, retroactive approval should be granted.

---

[6] *See, e.g., ECF No. 7824, (approving nunc pro tunc appointment dating approximately 1 year and 4 months prior), ECF No. 9724, (approving nunc pro tunc appointment dating approximately 3 months prior), ECF No. 5305, (approving nunc pro tunc appointment dating approximately 11 months prior), ECF No. 2547, (approving nunc pro tunc appointment dating approximately 4 months prior), ECF No. 9857, (approving nunc pro tunc appointment dating approximately 9 months prior), ECF No. 5037, (approving nunc pro tunc appointment dating approximately 9 months prior), ECF No. 2925, (approving nunc pro tunc appointment dating approximately 4 months prior), ECF*

## Basis for Relief

38.     The Debtors seek approval to retain Gleacher pursuant to section 327(a) of the Bankruptcy Code.  Section 327(a) provides, in relevant part, that the Debtors "with the court's approval, may employ. . . professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in fulfilling its duties under the Bankruptcy Code.

## Gleacher's Disinterestedness

39.     The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on and made in reliance upon the Hentschel Affidavit.

40.     Gleacher has informed the Debtors that Gleacher is not owed any money by the Debtors with respect to services provided by Gleacher prior to the Commencement Date.

41.     It is the Debtors' understanding, as described in more detail in the Hentschel Affidavit, that Gleacher does not own any claims against the Debtors for its own account.  Moreover, the Debtors have been placed on Gleacher's restricted securities list, meaning that Gleacher may not trade in Lehman claims or securities for its own account, nor may Gleacher's employees do so for their personal accounts.

42.     To the best of the Debtors' knowledge, and except as may be set forth in the Hentschel Affidavit, the Debtors believe that (a) Gleacher is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates in connection with

---

No. 7825, (approving *nunc pro tunc* appointment dating approximately 9 months prior), ECF No. 12204, (approving *nunc pro tunc* appointment dating approximately 4 months prior), ECF No. 10647, (approving *nunc pro tunc* appointment dating approximately 6 months prior), ECF No. 4009, (approving *nunc pro tunc* appointment dating approximately 4 months prior), ECF No. 10677, (approving *nunc pro tunc* appointment dating approximately 5 months prior), ECF No. 2680, (approving *nunc pro tunc* appointment dating approximately 4 months prior), ECF No. 10949, (approving *nunc pro tunc* appointment dating approximately 7 months prior).

the matters for which Gleacher is to be retained by the Debtors, as required by section 327(a) of the Bankruptcy Code; and (b) Gleacher has no connection with the Debtors, their creditors, the U.S. Trustee, or other parties in interest in these chapter 11 cases.

43.    The Debtors have been informed that Gleacher will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Gleacher will supplement its disclosure to the Court.

## Approval of This Engagement is Appropriate
## Pursuant to Section 328 (a) of the Bankruptcy Code

44.    Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Thus, section 328(a) permits the Court to approve the terms of Gleacher's engagement as set forth in the Engagement Agreement, including the Fee and Expense Structure, and the terms of the Indemnification Agreement.

45.    As recognized by numerous courts, Congress intended section 328(a) of the Bankruptcy Code to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

46.     The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Gleacher and is consistent with the fee structures typically utilized by leading financial advisors that do not bill their clients on an hourly basis.  Fee arrangements providing for monthly retainers, together with substantial transaction fees have been previously approved by the Court.  For example, by order dated October 21, 2008 [ECF No. 1168], the Court approved the retention of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan") authorizing Houlihan to receive payment of a nonrefundable cash fee of $500,000 per month for the first 6 months of its retention and $400,000 for each month thereafter, as well as payment of deferred fees equal to 0.05% of the first $30 billion of consideration or distribution provided to unsecured creditors of any Debtor.  Additionally, such fee arrangements have been approved and implemented in other large chapter 11 cases in this district and elsewhere.  *See, e.g. In re Calpine Corp., et al.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y April 26, 2006), ECF No. 1370, (granting authority for the debtors to employ and retain UBS Securities LLC as their financial advisor and investment banker pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Dana Corp.*, *et al.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. March 29, 2006), ECF No. 741, (approving the debtors' application to employ and retain UBS Securities LLC as their financial advisor and investment banker pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re NextWave Personal Commc'ns, Inc.*, Case No. 98-21529 (ASH) (Bankr. S.D.N.Y. October 1, 2001), ECF No. 1042 (approving the employment of UBS Warburg LLC as financial advisor for the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Casual Male Corp.*, Case No. 01-41404 (REG) (Bankr. S.D.N.Y. July 19, 2001), ECF No. 197, (authorizing retention of Robertson Stephens, Inc. as investment banker for debtors under section 328); *In re PSINET, Inc.*, Case No. 01-13213 (REG) (Bankr. S.D.N.Y. July

11, 2001), ECF No. 199, (approving the retention of Dresdner Kleinwort Wasserstein as investment banker and financial advisor to the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Burlington Industries, Inc.*, No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (authorizing retention of Miller Buckfire Lewis & Co., LLC and Dresdner Kleinwort Wasserstein, Inc. as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); *In re WCI Steel, Inc.*, Case No. 03-44662 (WTB) (Bankr. N.D. Ohio December 8, 2003), ECF No. 205, (approving the retention of Jefferies & Company, Inc., as financial advisor to the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re W.R. Grace & Co.*, No 01-01139 (JFK) (Bankr. D. Del. Apr. 2, 2001) (order dated June 22, 2001, approving the retention of The Blackstone Group as financial advisor to the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code).

47.    The Debtors believe that the Fee and Expense Structure, including, without limitation, the indemnification, reimbursement, contribution and related provisions set forth in the Engagement Agreement are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code; in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the chapter 11 context, and (iii) Gleacher's substantial experience with respect to financial advisory and investment banking services.  Further, the Fee and Expense Structure and the Indemnification Agreement appropriately reflect the nature of the services to be provided by Gleacher.

48.    Pursuant to section 328 of the Bankruptcy Code, this Application, seeks "pre-approval" of Gleacher's Fee and Expense Structure as contemplated by *Riker v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F. 3d 228 (2d Cir. 2009). As such, upon approval by this Court under section 328(a) of the Bankruptcy Code, Gleacher's

Fee and Expense Structure shall not be subject to a "full post-hoc reasonableness inquiry." Notwithstanding approval of its retention under section 328 of the Bankruptcy Code, Gleacher intends to apply to the Court for interim and final payment of compensation in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines promulgated by the United States Trustee, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

**<u>Notice</u>**

49.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Application in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], on:  (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Gleacher; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

50.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: November 22, 2011
       New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## **<u>EXHIBIT A</u>**

**Hentschel Affidavit**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
In re                                         :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (JMP)**
                                              :
                        **Debtors.**          :    **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x

**AFFIDAVIT OF STEPHEN HENTSCHEL IN SUPPORT OF APPLICATION OF THE
DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 2014(a) AND 2016 FOR AUTHORIZATION TO
EMPLOY AND RETAIN GLEACHER & COMPANY SECURITIES, INC. AS
<u>FINANCIAL ADVISOR, EFFECTIVE FEBRUARY 17, 2011</u>**

| STATE OF NEW YORK | ) |
|---|---|
|  | ) ss.: |
| COUNTY OF NEW YORK | ) |

Stephen Hentschel, being duly sworn, deposes and says:

1.      I am a Managing Director and Head of Real Estate Investment Banking at

Gleacher & Company Securities, Inc. ("<u>Gleacher</u>"), which has its principal office at 1290

Avenue of the Americas, New York, New York 10104.  I am authorized to execute this Affidavit

on behalf of Gleacher.  Unless otherwise stated in this Affidavit, I have personal knowledge of

the facts set forth herein.

2.      This Affidavit is being submitted in support of the application (the

"<u>Application</u>"), filed contemporaneously herewith, of Lehman Brothers Holdings Inc. ("<u>LBHI</u>")

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"),

pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>") and rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for authorization to employ and retain Gleacher as financial advisor to the

Debtors, effective as of February 17, 2011 (the "Retention Effective Date"), in accordance with

the terms of an engagement letter between LBHI and Gleacher, dated as of November 18, 2011

(the "Engagement Letter"), and the related indemnification agreement between LBHI and

Gleacher attached as Schedule A to the Engagement Letter (the "Indemnification Agreement"

and, together with the Engagement Letter, the "Engagement Agreement").  Gleacher's retention

in these cases is contingent upon the Court's approval of all terms and conditions set forth in the

Engagement Agreement.[1]

**Terms of Engagement Agreement Between Gleacher and the Debtors**

3.        Pursuant to the terms of the Engagement Agreement, and subject to approval of

the Court, Gleacher has agreed to act as the Debtors' financial advisor in connection with a

potential transaction, or series of transactions, involving Archstone Enterprise, LP (together with

its subsidiaries and any of its direct or indirect holding companies, "Archstone") and/or the

shares of beneficial interest of Archstone owned directly or indirectly by the Debtors (including

any shares subsequently acquired).  Since the Retention Effective Date Gleacher has provided

certain services (the "Services") as requested by the Debtors, a summary description of which is

set forth in paragraph 23 of the Application, and is more fully described in the Engagement

Agreement.  As compensation for the Services to be provided by Gleacher, LBHI has agreed,

subject to approval by the Court, to pay Gleacher the amounts summarized in paragraph 25 of

the Application, as more fully described in the Engagement Agreement.

---

[1] In light of commercially sensitive information contained in the Engagement Agreement, it has not been attached to
the Application.  Copies of the Engagement Agreement have been provided to the U.S. Trustee and to counsel to
the Creditors' Committee and will be provided to the Court, upon request to the Debtors.  Capitalized terms used
but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Agreement.  To the
extent that this Affidavit and the terms of the Engagement Agreement are inconsistent, the terms of the
Engagement Agreement shall control.

4.      Pursuant to the terms of the Engagement Agreement, and subject to approval of

the Court, Gleacher will be entitled to reimbursement of all of its reasonable expenses, including

travel and lodging and other reasonable and documented out-of-pocket expenses, arising out of

Gleacher's engagement, including, but not limited to, reasonable and documented fees and

expenses of one firm of outside counsel and, if necessary, one firm of local counsel in each

appropriate jurisdiction, and the reasonable and documented fees and expenses of the

professionals identified in the Engagement Agreement, and any accountants and other

professional advisors retained with the prior written consent of LBHI.

5.      In addition, the Engagement Agreement includes certain indemnity, contribution,

expense reimbursement and exculpation provisions for the benefit of Gleacher and other

Indemnified Persons (as defined and set forth in Indemnification Letter).

6.      The terms and conditions of the Engagement Agreement are consistent with and

typical of agreements entered into by Gleacher and other similar investment banking firms in

rendering comparable services for clients both inside and outside of bankruptcy.

**Corporate Structure, Qualifications and Disinterestedness of Gleacher**

7.      Gleacher is a wholly owned subsidiary of Gleacher & Company, Inc. ("G&C" and

together with its various operating subsidiaries, the "Gleacher Group").  The Gleacher Group is

an independent investment bank that provides corporate and institutional clients with strategic

and financial advisory services, including merger and acquisition, restructuring, recapitalization,

and strategic alternative analysis, as well as capital raising, research based investment analysis,

and securities brokerage services, and through G&C's acquisition of ClearPoint Funding, Inc.

("ClearPoint"), which closed on January 3, 2011, engages in residential mortgage lending.  The

Gleacher Group offers a diverse range of products through its Investment Banking, Mortgage

3

Backed/Asset Backed & Rates, Corporate Credit and ClearPoint divisions. G&C's common stock is traded on the NASDAQ Global Market under the symbol "GLCH."

8.        Gleacher and the professionals that it employs are well-qualified to provide to the Debtors the Services described in the Engagement Agreement.  The Services are being provided only by personnel of Gleacher's real estate investment banking group (the "Real Estate Group"), which falls within Gleacher's investment banking division, and certain other limited personnel outside the Real Estate Group and the investment banking division who may from time to time be needed to assist the Real Estate Group in this engagement.  In addition, Eric Gleacher, the Chairman of G&C's Board of Directors, is involved in this engagement.  Mr. Gleacher is well known for his strategic advisory experience having advised in many large, high profile domestic and international Mergers & Acquisition transactions.  Prior to founding Gleacher Partners, Inc. in 1990, Mr. Gleacher founded the Mergers & Acquisitions department at LBHI in 1978 and headed Global Mergers & Acquisitions at Morgan Stanley & Co. Inc. from 1985 to 1990. Gleacher's diverse experience, knowledge, and reputation as a financial advisor and its understanding of the issues involved in complex real estate transactions make it superbly qualified to provide investment banking services to the Debtors in these cases.  The senior professionals of the Real Estate Group have successfully completed numerous transactions, including the following:[2]

Strategic Alternatives / Sell Side M&A

- *Crystal River Capital* – Advised the Board of Directors on strategic alternatives that resulted in the sale of the publicly-traded REIT to Brookfield Asset Management for $792 million in cash and assumed debt

---

[2] With the exception of the Crystal River and the Silverleaf Resorts transactions, the transactions noted below were completed by Real Estate Group senior professionals while employed at other investment banking firms prior to their employment at Gleacher.

4

- *Silverleaf Resorts* – Advised the Board of Directors on strategic alternatives that resulted in the sale of the publicly-traded timeshare company to Cerberus Capital Management for $472 million in cash and assumed debt

- *American Land Lease* – Advised the Board of Directors on strategic alternatives that resulted in the sale of the company to Green Courte Partners for $438 million in cash and assumed debt

- *FBR Asset Investment Corp.*- Advised the Board of Directors in the sale of the publicly-traded REIT to Friedman, Billings, Ramsey Group, Inc. for $4.8 billion in stock and assumed debt

- *Storage USA* – Advised the Board of Directors on strategic alternatives that resulted in sale of the publicly-traded REIT to Security Capital Group for $1.7 billion in cash plus assumed debt

Asset Portfolio Sales

- *Pennsylvania Real Estate Investment Trust* – Advised the company on the $420 million sale of multifamily assets to Mitchell Morgan Co.

- *The Rubenstein Companies* –Advised on asset sales totaling $796 million including a $600 million portfolio sale to Brandywine Realty Trust for cash and OP units, a $118 million asset sale to Corporate Office Properties and a $78 million portfolio sale to BioMed Realty Trust

Buy-Side M&A Advisory

- *Gables Residential* – Advised buyer group consisting of ING Clarion Partners and Lehman Brothers on $3.0 billion acquisition of publicly-traded apartment company, and in connection therewith, acted as a co-provider of an $800 million equity bridge, and as a provider of a $2.0 billion debt bridge

- *KSL Capital Partners* – Advised purchaser on $1.8 billion acquisition of ClubCorp

- *Pennsylvania Real Estate Investment Trust* – Advised purchaser on $1.3 billion acquisition of publicly-traded Crown American Realty Trust and on $548 million acquisition of regional malls from The Rouse Company

Private Equity Raises

- *Gables Residential* – Syndicated $650 million equity for commingled fund investment in Gables following go-private transaction

- *Aimco* – Raised $202 million joint-venture equity through sale of a 47% interest in a Los Angeles apartment portfolio valued at $726 million

5

- *RXR Realty* – Advised on discretionary blind-pool commingled fund raise

- *Origen Financial* – Raised $200 million equity in a 144-A private placement

REIT IPOs

- *Republic Properties Corporation* – $240 million IPO of Republic Properties Trust, an owner and developer of Washington, DC area office properties (Offering date:  December 2005)

- *Diamondrock Hospitality* – $274 million IPO of Diamondrock Hospitality, an operator of premium hotels in the United States  (Offering date:  May 2005)

- *American Campus Communities* – $212 million IPO of American Campus Communities, an owner and operator of student housing properties in the United States (Offering date:  August 2004)

- *Origen Financial* – $69 million IPO of Origen Financial, a specialty finance company in the manufactured home space (Offering date:  May 2004)

- *SL Green* – $244 million IPO of SL Green, an owner of New York City office properties (Offering date:  August1997)

- *Kilroy Realty Corp.* – $288 million IPO of Kilroy Realty Corp., a developer and operator of real estate in Southern California (Offering date:  January 1997)

9.     Gleacher has implemented reasonable policies and procedures designed, among other things, to help prevent conflicts of interest and maintain the confidentiality of client information and other confidential information that Gleacher and its employees receive during the course of their work.  These policies and procedures include an information wall between the Real Estate Group and other personnel in the investment banking division of Gleacher (the "Walled Entities"), on the one hand, and the non-investment banking divisions of Gleacher, G&C and G&C's subsidiaries (the "Unwalled Entities"), on the other hand, including certain (i) physical barriers between the Walled Entities and the Unwalled Entities (including restricting the Unwalled Entities' physical access to the offices of the Walled Entities); (ii) technological barriers between the computer systems of the Walled Entities and the Unwalled Entities; (iii) policies and procedures intended to prevent confidential information from being shared

6

between the Walled Entities and Unwalled Entities; and (iv) compliance and surveillance

mechanisms designed to track approved and necessary exceptions to the above policies and

procedures, and to detect any violations of those policies and procedures.  On occasion, non-Real

Estate Group personnel are needed to assist the Real Estate Group in an engagement and are

brought "over the wall."  To maintain the effectiveness of the information wall, Gleacher has

implemented certain policies and procedures to be followed once a determination has been made

to bring such persons within the Real Estate Group's information wall.  These procedures

include the review of certain factors, including potential conflicts of interest, confidentiality and

business justifications for bringing the particular personnel "over the wall."

10.    In connection with Gleacher's proposed retention by the Debtors, Gleacher

obtained from counsel to the Debtors the names of the parties-in-interest identified in Schedule 1

hereto as of October 13, 2011.[3]  As to those persons or entities identified in Schedule 1, Gleacher

searched or caused to be searched its records and certain records of the Gleacher Group, and

made certain related inquiries of certain employees thereof, to determine if such entities had,

during the past two years, any relationships with such parties-in-interest, or provided services to

such parties-in-interest.[4]  To the extent that Gleacher's research indicated that any corporate

member of the Gleacher Group had, during the past two years, any relationships with such

---

[3] The schedule of parties-in-interest provided to Gleacher by counsel to the Debtors included, in addition to the parties identified on Schedule 1, lists of (a) "Potential Parties in Interest", which counsel to the Debtors identified as entities that have filed notices of appearance in these chapter 11 cases, and (b) "Claimants", which counsel identified as entities which filed claims against one or more of the Debtors with respect to which a claims objection is pending.  The "Potential Parties in Interest" and "Claimants" categories together included over 11,000 entities.  Gleacher limited its conflicts inquiry to the principal creditors and parties-in-interest in these cases, which I believe are the entities and individuals described on Schedule 1.  Accordingly, Gleacher did not perform a conflicts inquiry with respect to the more than 11,000 names of additional persons provided by counsel to the Debtors, which I believe would be unduly burdensome in light of the scope of Gleacher's proposed engagement.

[4] Gleacher does not intend to suggest that Bankruptcy Rule 2014 requires that a professional seeking retention under the Bankruptcy Code must disclose any connection that an *affiliate* of such professional may have to the creditors or other parties-in-interest in the bankruptcy case.  Rather, out of an abundance of caution, Gleacher has elected voluntarily to search the records of the Gleacher Group.

7

parties-in-interest, or provided services to such parties-in-interest, Gleacher has so indicated in

Schedule 1 to this Affidavit.  To the best of my knowledge, information and belief, all such

relationships between the Gleacher Group and the entities listed in Schedule 1 hereto are

unrelated to the Debtors and these chapter 11 cases, unless otherwise described in this Affidavit.

11.     With its diverse practice and many customer accounts and relationships, certain of

the Gleacher Group's clients or a counter-party to a transaction with a Gleacher Group client

may hold claims or otherwise be parties-in-interest in these chapter 11 cases.  In connection with

such activities or potential relationships, and to the best of my knowledge, information and

belief, Gleacher makes the following additional disclosures:

a.  To the best of my knowledge, information and belief, none of the Gleacher Group's business relationships constitute interests adverse to the Debtors herein in matters upon which Gleacher is to be employed, and none are in connection with these cases.  Furthermore, none of these engagements or relationships are material to the financial condition of the Gleacher Group.

b.  Although reasonable efforts have been made to discover and eliminate the possibility of any conflict, including the efforts outlined herein, Gleacher is unable to state with certainty whether one of the Gleacher Group's clients or an affiliated entity of any such client holds a claim or otherwise is a party-in-interest in these chapter 11 cases.

c.  To the best of my knowledge, information and belief, the Gleacher Group does not currently hold any claim against, or interest in, the Debtors, and the Gleacher professionals that will be responsible for this engagement do not hold any direct claims against, or interests in, the Debtors.[5]  During Gleacher's engagement in these cases, the Gleacher Group's fixed income trading divisions may continue to buy, sell or otherwise effectuate transactions in securities, derivative securities or other instruments of the Debtors on an unsolicited basis for customer accounts. Moreover, during the term of Gleacher's engagement in these cases, the Gleacher Group's fixed income trading divisions may also buy, sell or otherwise effectuate

---

[5]  I was an employee of Lehman between 1996-2006, and hold an interest in a Lehman Brothers Pension Plan administered by Fidelity Investments.  In addition, I have investments in several private equity and other funds that at the time of the bankruptcy filing of the Debtors were managed directly or indirectly by one or more of the Debtors and where one or more of the Debtors may own a financial interest, including Lehman Brothers Diversified Private Equity Fund 2004, L.P., Lehman Brothers Partnership Account 2000/2001, L.P., Lehman Brothers Communications Capital Partners I, Lehman Brothers Real Estate Capital Partners I, Lehman Brothers Venture Capital Partners II, and Lehman Brothers Co-Investment Capital Partners.

8

transactions in securities or derivative securities of parties-in-interest in these cases.  In addition, ClearPoint may engage in one or more transactions with individuals who are parties-in-interest, or transactions ancillary to its mortgage lending business with other financial institutions which are parties-in-interest. Gleacher believes that none of these activities constitute interests adverse to the Debtors.

d.  Employees of Gleacher may hold, for their personal account or for an account under their control, equity, debt or derivative securities (whether directly or through mutual funds, private equity funds, or other vehicles) relating to the Debtors or parties-in-interest in these cases.  However, the Gleacher Group does not intend to allow any of its employees, whether inside or outside of the information walls described above, to purchase or sell any securities of the Debtors, and such securities have been placed on Gleacher's restricted securities list.

e.  As a trader of corporate bonds and other securities, the Gleacher Group regularly enters into securities transactions for the accounts of its respective customers or employees with other registered broker-dealers and clients as a part of its daily activities.  In the course of its business, the Gleacher Group may, directly or indirectly, hold long or short positions, trade or otherwise conduct such activities in or with respect to equity, debt or derivative securities relating to, parties-in-interest in these cases.

f.  The Gleacher Group's fixed income desk analysts may from time to time during these cases provide certain notes and fact sheets to the Gleacher Group and its customers and sales teams.  These notes and fact sheets are factual in nature, convey only publicly available information, and do not contain any recommendations regarding the purchase or sale of the securities referenced therein, which may include the securities of the Debtors or parties-in-interest in these cases.  As such, the substance and/or timing of such notes and fact sheets are not anticipated to conflict with the views or advice of members of Gleacher's Real Estate Group or to have an adverse effect on the Debtors' interests in connection with these cases.

g.  Certain employees of the Gleacher Group serve as managers (the "Managers") for investment vehicle(s) (the "Gleacher Funds").  The Gleacher Funds are intended principally for investments by third parties unrelated to the Gleacher Group. However, G&C and its subsidiaries may be investors in the Gleacher Funds, and other investors may also include (i) financial institutions or other parties who may be parties-in-interest in these cases, and (ii) various employees of the Gleacher Group.  The investors in the Gleacher Funds, with the exception of the Managers of such Gleacher Funds, have no control over investment or business decisions made for the Gleacher Funds.  The Managers of the Gleacher Funds maintain control over investment and business decisions with respect to the Gleacher Funds.  The Gleacher Funds may from time to time invest in investments of or relating to the Debtors or parties-in-interest in these cases, and to the extent that

9

any of the Gleacher Funds holds any claim or interest in the Debtors, such fund will be permitted to hold or divest itself of such interest at its discretion. To comply with securities laws, and to avoid any appearance of impropriety, the Gleacher Group employees working with the Gleacher Funds are separated from the other employees of the Gleacher Group, including the Gleacher Real Estate Group. This separation is maintained through the use of information walls as described above. Consequently, Gleacher does not believe that the relationships outlined above constitute adverse interests or render Gleacher not disinterested in these chapter 11 cases.

12.    The Gleacher Group has over 400 employees. It is possible that certain employees of the Gleacher Group may have business associations and other relationships with parties-in-interest in these cases, personal investments in the Debtors, or interests in mutual funds or other investment vehicles that may own securities of the Debtors. To the best of my knowledge, and after due inquiry, the Gleacher professionals that will be responsible for this engagement do not have business associations or other relationships with the Debtors. Furthermore, the Gleacher Group has placed the Debtors on its "restricted list," which precludes any of Gleacher's employees from trading in securities of the Debtors, except as otherwise provided herein.

13.    In the ordinary course of the Gleacher Group's business, the Gleacher Group regularly borrows funds from a variety of lenders, including through warehouse lending agreements, clearing agreements, to assist in the clearance and settlement of securities transactions as well as their day-to-day operations. Some of these lenders may be parties-in-interest in these cases.

14.    As part of its practice, the Gleacher Group appears in numerous cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties-in-interest in these cases. During the course of this engagement and these cases, the Gleacher Group will have no relationship with any such entity, attorney or financial advisor that would be adverse to the Debtors. The

10

professionals whom Gleacher believes to be associated with these cases who are known to be currently providing, or to have provided in the last two years, services to the Gleacher Group are indicated on Schedule 1 hereto.

15.     Members of the Gleacher Group may currently be parties or participants in certain litigation matters involving parties-in-interest in these cases.  All such litigation matters are unrelated to the Debtors and these cases.

16.     Except as set forth in this Affidavit and Schedule 1, Gleacher does not advise, has not advised, and will not advise during the term of this engagement any entity, other than the Debtors, in matters related to these chapter 11 cases.

17.     To the best of my knowledge, information and belief, none of the services rendered by the Gleacher Group to or relationships with the entities set forth in Schedule 1 hereto have been in connection with the Debtors or these cases.  Gleacher believes that such relationships will not impair Gleacher's ability to objectively perform professional services on behalf of the Debtors.  The Gleacher Group will not accept any engagement that would require Gleacher to represent an interest adverse to the Debtors.

18.     To the best of my knowledge, information and belief, the Gleacher professionals expected to assist the Debtors in these cases are not connected to the Judge, U.S. Trustee, Assistant U.S. Trustee or Trial Attorney assigned to these cases.

19.     Despite the efforts described above to identify and disclose connections with parties-in-interest in these cases, because Gleacher is a large enterprise with numerous clients, customers and other relationships, Gleacher is unable to state with certainty that every client representation or other relationship of Gleacher with parties-in-interest in these cases has been identified and disclosed herein.  To the extent that Gleacher learns in the future of any material

11

relationship not disclosed herein, Gleacher will file a related supplemental disclosure affidavit in these cases.

20.     To the best of my knowledge, information and belief:  (i) Gleacher does not hold nor represent any interest adverse to the Debtors; (ii) the proposed employment of Gleacher is not prohibited by or improper under rule 5002 of the Bankruptcy Rules; and (iii) Gleacher is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that, its directors, officers and employees:

     a.   except as otherwise set forth herein, are not creditors, equity security holders or insiders of the Debtors;

     b.   except as otherwise set forth herein, were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

     c.   except as otherwise set forth herein, do not have an interest adverse to the interests of the estate or of any class creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

21.     Accordingly, I believe that Gleacher is eligible for retention by the Debtors in these cases.

## Compensation and Other Matters

22.     To the best of my knowledge, information and belief, Gleacher began performing certain investment banking services for the Debtors as of February 17, 2011.  Thus, Gleacher requests that its retention be authorized effective as of such date.

23.     Except as otherwise set forth herein, Gleacher has not shared or agreed to share any of its compensation in connection with this matter with any other person except its employees and affiliates in the ordinary course of Gleacher's business.  No other arrangement is proposed between the Debtors and Gleacher for compensation to be paid to Gleacher in connection with this engagement.

12

24.     Gleacher intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Agreement, and pursuant to any additional procedures that may be established by the Court in these cases. All such fees and expenses would be subject only to the standard of review set forth in section 328(a) of the Bankruptcy Code, and would not be subject to any other standard of review set forth in section 330 of the Bankruptcy Code; provided, that the Office of the United States Trustee for Region 2 shall retain the right to object to our compensation and reimbursement pursuant to the reasonableness standard provided for in section 330 of the Bankruptcy Code.

25.     It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis or maintain time on a "project category" basis. However, beginning as of the date of this Affidavit, Gleacher's Real Estate Group will keep reasonably detailed time records describing the general daily activities of its professionals, the identity of persons who performed such activities, and the estimated amount of time expended on such activities in one-half hour increments. Gleacher will also provide the name of each non-Real Estate Group personnel who may from time to time be needed to assist the Real Estate Group in this engagement, together with a general description of the type of services rendered by each such personnel. For Gleacher to recreate detailed time entries for its professionals who have been working on this matter since early 2011 or for its non-Real Estate Group personnel, or to keep time records on a "project category" basis for its Real Estate Group or non-Real Estate Group personnel, would be unduly burdensome and time-consuming. Thus, Gleacher requests

13

that the Real Estate Group and non-Real Estate Group personnel be permitted to bill in these

cases as described in this paragraph.

*[Remainder of page intentionally left blank]*

I declare that the foregoing is true and correct to the best of my knowledge.  Executed

this 18th day of November, 2011, in New York, New York.

Stephen Hentschel
Managing Director

Sworn to and subscribed before me
this 8th day of November, 2011

Notary Public

SARAH A LEWIS
Notary Public, State of New York
No. 02LE6246075
Qualified in New York County
Commission Expires September 28, 2015

**Schedule 1**

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| **Affiliates and Other Related Entities** | | | |
| 737 Portfolio Services LLC | X | | |
| 737 Portfolio Trust | X | | |
| Area Assignor Corp. (dissolved) | X | | |
| Area Depository Corporation (dissolved) | X | | |
| Area GP Corporation | X | | |
| Aristos LLC | X | | |
| ASB L.L.C. | X | | |
| Ballybunion Investments No. 2 Ltd. | X | | |
| Ballybunion Investments No. 3 Ltd | X | | |
| Ballybunion Investments No. Ltd. | X | | |
| Banque Lehman Brothers S.A. | X | | |
| Bixen Limited | X | | |
| BK I Realty Inc. (dissolved) | X | | |
| BK II Properties Inc. | X | | |
| BK III Properties Inc. | X | | |
| Blue Jay Realty Corporation | X | | |
| BNC Holdings Inc. | X | | |
| Bromley LLC | X | | |
| Brookson Corp. | X | | |
| Brookwood Energy & Properties Inc. | X | | |
| Canope Credit Corp. | X | | |
| Capital Analytics II, LP | X | | |
| Central Funding (Concord) Corporation (dissolved) | X | | |
| Clarks Summit I, LLC | X | | |
| Clarks Summit II, LLC | X | | |
| CP1 Real Estate Services Inc. | X | | |
| CP4 Real Estate Services Inc. (dissolved) | X | | |
| Dimont Corporation | X | | |
| DL Mortgage Corp. | X | | |
| DRA Management, Inc. (dissolved) | X | | |
| Eagle Energy Management, LLC | | X | |
| Eagle Energy Partners I, L.P. | | X | |
| East Dover Limited | X | | |
| Edibrook Corp. | X | | |
| EHP/GP Inc. (dissolved) | X | | |
| Eldon Street Holdings Limited | X | | |
| ELQ Holdings B.V. | X | | |
| ELQ Hypothekan N.V. | X | | |
| Equipment Management Inc. | X | | |
| Equity Strategies Loans LLC | X | | |
| Equity Strategy Loans LLC | X | | |
| e-Valuate, LP | X | | |
| Executive Monetary Management, Inc. | X | | |
| Falcon Holdings I LLC | X | | |
| First Ward Properties Inc. | X | | |
| Flight Sim I LLC | X | | |
| Flight Sim II LLC | X | | |
| Flight Sim III LLC | X | | |
| Flight Sim IV LLC | X | | |
| Flight Sim V Inc. | X | | |
| FRAH Special Services Inc. | X | | |
| Fundo De Investimento Multimercado Credito Privado Navigator Investmento | X | | |
| Furno & Del Castano CapitalPartners LLP | X | | |
| GA Dekalb Inc. | X | | |
| GKI Korea Development Limited | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Global Principal Strategies Loans Inc. | X | | |
| GmbH | X | | |
| GRA Finance Corporation Ltd. | X | | |
| GRA Finance Corporation Ltd. | X | | |
| Growth Partners Inc. (dissolved) | X | | |
| Hills Funding One, Ltd. | X | | |
| Hydrocarbon Capital II LLC | X | | |
| IL Lombard Inc. (dissolved) | X | | |
| Ivanhoe Lan Pty Limited | X | | |
| Jet Aircraft Leasing Inc. (dissolved) | X | | |
| Jet Partners, LLC | X | | |
| JFM Aviation Once LLC | X | | |
| KM-I Real Estate Company VII (sold) | X | | |
| Laminar Holdings LLC | X | | |
| LB 3 GmbH | X | | |
| LB Alberta Holdings Inc. | X | | |
| LB Beta Finance Cayman Limited | X | | |
| LB GPS Lightfoot L.L.C. | X | | |
| LB Holdings Intermediate 1 Ltd | X | | |
| LB Holdings Intermediate 2 Ltd | X | | |
| LB I Group Inc | X | | |
| LB India Holdings Cayman I Limited | X | | |
| LB India Holdings Cayman II Limited | X | | |
| LB India Holdings Mauritius I Limited | X | | |
| LB India Holdings Mauritius II Limited | X | | |
| LB India Holdings Mauritius III Limited | X | | |
| LB Investment Corp. Inc. | X | | |
| LB Investment Holding Company Limited (dissolved) | X | | |
| LB Investments (UK) Limited | X | | |
| LB Leasing Inc. | X | | |
| LB Lomond Investments Limited | X | | |
| LB Maritim Investor | X | | |
| LB Memphis Brownestone LLC | X | | |
| LB Military Housing LLC | X | | |
| LB Note Corp. | X | | |
| LB Ohana, LLC | X | | |
| LB Skypower Inc. | X | | |
| LB Trade Corp. | X | | |
| LB UK Financing Limited | X | | |
| LB UK RE Holdings Ltd. | X | | |
| LBCCA Holdings I LLC | X | | |
| LBCCA Holdings II LLC | X | | |
| LB-NL Holdings (Cayman) Limited | X | | |
| LB-NL Holdings I Inc. | X | | |
| LB-NL Holdings L.P. | X | | |
| LB-NL U.S. Investor Inc. | X | | |
| LBO Investments Limited | X | | |
| LBQ Funding (UK) | X | | |
| LBQ Hong Kong Funding Ltd | X | | |
| LBQ Hong Kong Services Limited | X | | |
| LCP LTU LLC | X | | |
| LCPI Properties Inc. | X | | |
| LCPI Properties Inv. | X | | |
| Leesburg ACG LLC | X | | |
| Lehman ABS Corporation | X | | |
| Lehman Aircraft Securitization Holdings LLC | X | | |
| Lehman Asset Backed Caps Inc. | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Lehman Brother Venture Capital 2003 Partnership | X | | |
| Lehman Brothers (Israel) Inc. | X | | |
| Lehman Brothers (PTG) Limited | X | | |
| Lehman Brothers (Spain) S.A. | X | | |
| Lehman Brothers 1999 Venture Managers' Partnership L.P. | X | | |
| Lehman Brothers 1999 Vernture GP Partnership L.P. | X | | |
| Lehman Brothers AIM Holding II LLC | X | | |
| Lehman Brothers Alternative Investment Management LLC | X | | |
| Lehman Brothers Argentina S.A. | X | | |
| Lehman Brothers Asset Management (Europe) Ltd | X | | |
| Lehman Brothers Asset Management Asia, Inc. (dissolved) | X | | |
| Lehman Brothers Asset Management France | X | | |
| Lehman Brothers Asset Securitization LLC | X | | |
| Lehman Brothers Capital GmbH, Co | X | | |
| Lehman Brothers Capital Partners I, L.P. | X | | |
| Lehman Brothers Capital Partners II, L.P. | X | | |
| Lehman Brothers Capital Partners IV, L.P. | X | | |
| Lehman Brothers CDO 2003 L.P. | X | | |
| Lehman Brothers CDO Associates (Cayman), Ltd. | X | | |
| Lehman Brothers CDO Associates 2003 L.P. | X | | |
| Lehman Brothers CDO Associates 2004 L.P. | X | | |
| Lehman Brothers CDO Opportunity Partners 2004-2, L.P. | X | | |
| Lehman Brothers Commercial Corporation Asia Limited | X | | |
| Lehman Brothers Commercial Mortgage K.K. | X | | |
| Lehman Brothers Commodity Service Inc. | X | | |
| Lehman Brothers Communications Partnership | X | | |
| Lehman Brothers de Chile, S.A. (dissolved) | X | | |
| Lehman Brothers de Venezuela C.A. (inactive) | X | | |
| Lehman Brothers Derivative Finance LLC | X | | |
| Lehman Brothers Derivative Products Inc. | X | | |
| Lehman Brothers Diversified Private Equity Fund 2004, L.P. | X | | |
| Lehman Brothers do Brasil Ltda | X | | |
| Lehman Brothers Energy Canada, ULC | X | | |
| Lehman Brothers Europe Inc. | X | | |
| Lehman Brothers Europe Limited | X | | |
| Lehman Brothers European Mezzanine 2002 Associates L.P. | X | | |
| Lehman Brothers European Mezzanine 2002 L.P. | X | | |
| Lehman Brothers European Venture Capital Associates L.P. | X | | |
| Lehman Brothers European Venture Capital L.P. | X | | |
| Lehman Brothers Finance (Japan) Inc. | X | | |
| Lehman Brothers Financial Products Inc. | X | | |
| Lehman Brothers Fund of Funds Associates L.P. | X | | |
| Lehman Brothers Fund of Funds L.P. | X | | |
| Lehman Brothers Global Asset Management K.K. (liquidated) | X | | |
| Lehman Brothers Healthcare Venture Capital Associates L.P. | X | | |
| Lehman Brothers Healthcare Venture Capital L.P. | X | | |
| Lehman Brothers Holdings Inc. | X | | |
| Lehman Brothers Holdings International Inc. | X | | |
| Lehman Brothers Holdings Japan Inc. | X | | |
| Lehman Brothers Holdings Plc | X | | |
| Lehman Brothers Holdings Scottish LP | X | | |
| Lehman Brothers Inc. | X | | |
| Lehman Brothers Insurance Agency L.L.C | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Lehman Brothers International (Europe) | X | | |
| Lehman Brothers International Services, Inc. | X | | |
| Lehman Brothers Investment Holding Company Inc. | X | | |
| Lehman Brothers Investment Management Asia Limited | X | | |
| Lehman Brothers Investments PTE Ltd. | X | | |
| Lehman Brothers Japan Inc | X | | |
| Lehman Brothers LBO Inc. | X | | |
| Lehman Brothers Limited | X | | |
| Lehman Brothers Luxembourg Investments Sari | X | | |
| Lehman Brothers MBG Associates III L.L.C. | X | | |
| Lehman Brothers MBG Associates L.P. | X | | |
| Lehman Brothers MBG Capital Partners 1998 (C) LP | X | | |
| Lehman Brothers MBG Finders 1999 (A) L.P. | X | | |
| Lehman Brothers MBG Finders 1999 (B) L.P. | X | | |
| Lehman Brothers MBG Finders 2000 (B) L.P. | X | | |
| Lehman Brothers MBG Partners 1997 (A) L.P. (dissolved) | X | | |
| Lehman Brothers MBG Partners 1997 (B) L.P. (dissolved) | X | | |
| Lehman Brothers MBG Partners 1998 (A) L.P. | X | | |
| Lehman Brothers MBG Partners 1998 (B) L.P. | X | | |
| Lehman Brothers MBG Partners 1998 (C) L.P. | X | | |
| Lehman Brothers MBG Partners 1999 (A) L.P. | X | | |
| Lehman Brothers MBG Partners 1999 (B) L.P. | X | | |
| Lehman Brothers MBG Partners 1999 (C) L.P. | X | | |
| Lehman Brothers MBG Partners L.P. | X | | |
| Lehman Brothers MBG Venture Capital Partners 1997 | X | | |
| Lehman Brothers MBG Venture Capital Partners 1998 (A) L.P. | X | | |
| Lehman Brothers MBG Venture Capital Partners 1998 (B) L.P. | X | | |
| Lehman Brothers MBG Venture Capital Partners 1998 (C) L.P. | X | | |
| Lehman Brothers MBG Venture Capital Partners 1998 (D) L.P. | X | | |
| Lehman Brothers MLP Associates, L.P. | X | | |
| Lehman Brothers MLP Partners, L.P. | X | | |
| Lehman Brothers Offshore Diversified Arbitrage Fund, Ltd. | X | | |
| Lehman Brothers Offshore Diversified Arbitrage Master Fund Ltd. | X | | |
| Lehman Brothers Offshore Diversified Private Equity Fund 2004, L.P. | X | | |
| Lehman Brothers Offshore Investment Partnership L.P. | X | | |
| Lehman Brothers Offshore Investment Partnership-Japan L.P. | X | | |
| Lehman Brothers Offshore long/short fund, ltd | X | | |
| Lehman Brothers Offshore Long/Short Master Fund Ltd. | X | | |
| Lehman Brothers Offshore Partners Ltd. | X | | |
| Lehman Brothers Offshore Partnership Account 2000/2001, L.P. | X | | |
| Lehman Brothers Offshore Partnership GP 2000/2001 L.P. | X | | |
| Lehman Brothers Offshore Real Estate Associates, Ltd | X | | |
| Lehman Brothers OTC Derivatives Inc. | X | | |
| Lehman Brothers Overseas Inc. | X | | |
| Lehman Brothers Pacific Holdings Pte. Ltd. | X | | |
| Lehman Brothers Participation Fund Associates, L.P. | X | | |
| Lehman Brothers Partnership GP 2000/2001 L.P. (dissolved) | X | | |
| Lehman Brothers Private Equity Advisers L.L.C | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Lehman Brothers Private Fund Advisers LP | X | | |
| Lehman Brothers Private Fund Management LP | X | | |
| Lehman Brothers Private Funds Investment Company GP, LLC | X | | |
| Lehman Brothers Private Funds Investment Company LP, LLC | X | | |
| Lehman Brothers Secondary Fund of Funds Associates L.P. | X | | |
| Lehman Brothers Secondary Fund of Funds L.P. | X | | |
| Lehman Brothers Securities Taiwan Limited | X | | |
| Lehman Brothers Services India Private Limited | X | | |
| Lehman Brothers Singapore PTE Ltd. | X | | |
| Lehman Brothers South Asia Limited (Inactive) | X | | |
| Lehman Brothers South East Asia Investments PTE Limited | X | | |
| Lehman Brothers Spain Holdings Limited | X | | |
| Lehman Brothers Special Financing Inc. | X | | |
| Lehman Brothers Sudamerica S.A. | X | | |
| Lehman Brothers U.K. Holdings (Delaware) Inc. | X | | |
| Lehman Brothers Uruguay S.A. | X | | |
| Lehman Brothers VC Partners L.P. | X | | |
| Lehman Brothers Venture Associates Inc. | X | | |
| Lehman Brothers Venture Bankers' Partnership L.P. | X | | |
| Lehman Brothers Venture Capital Partners I, L.P. | X | | |
| Lehman Brothers Venture GP Partnership L.P. | X | | |
| Lehman Brothers Venture Partners L.P. | X | | |
| Lehman Brothers Verwaltungs-und Beteiligungsgesellschaft mbH | X | | |
| Lehman CMO Inc. | X | | |
| Lehman Commercial Paper Inc. | X | | |
| Lehman Crossroads Corporate Investors II, LP | X | | |
| Lehman Insurance Company | X | | |
| Lehman Loan Funding I LLC | X | | |
| Lehman Mortgage Company of Canada (surrendered) | X | | |
| Lehman Mortgage Holdings Canada I Inc. (inactive) | X | | |
| Lehman Mortgage Holdings Canada II Inc. (inactive) | X | | |
| Lehman Municipal ABS Corp.Lehman OPC LLC | X | | |
| Lehman Pass-Through Securities Inc. | X | | |
| Lehman Queens Center Inc. (inactive) | X | | |
| Lehman Queens Limited Inc. (inactive) | X | | |
| Lehman Re Ltd. | X | | |
| Lehman Realty & Development Corp. | X | | |
| Lehman Receivables Corp. (dissolved) | X | | |
| Lehman Risk Advisors Inc. | X | | |
| Lehman Risk Management, Inc. (dissolved) | X | | |
| Lehman Structured Assets Inc. | X | | |
| Lehman Structured Securities Corp. | X | | |
| Lehman Syndicated Loan Inc. | X | | |
| Lehman VIP Holdings Inc. | X | | |
| Lehman VIP Investment LDC | X | | |
| Liberty Corner Inc. (sold) | X | | |
| Liberty GP II Inc. (sold) | X | | |
| Libro Companhia Securitizadora de Creditos | X | | |
| LIBRO Holdings I Inc. | X | | |
| Long Point Funding Pty Ltd. | X | | |
| Louise Y.K. | X | | |
| LPTG Inc. | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| LPTG Intermediate LLC | X | | |
| LPTG LLC | X | | |
| LW-LP Inc. | X | | |
| LW-LP Properties Inc. | X | | |
| M&L Debt Investments Holdings Pty Limited | X | | |
| M&L Debt Investments Pty Limited | X | | |
| Mast Depositor Corp. | X | | |
| MBAM Investor Limited | X | | |
| MBR/GP Corp. | X | | |
| Merit, LLC | X | | |
| Metro Realty Corporation (dissolved) | X | | |
| MMP Funding Corp. | X | | |
| Morganberry Corporation | X | | |
| Nai Ham Hotel 1 Company Limited | X | | |
| Neuberger & Berman Agency, Inc. | X | | |
| Neuberger Berman Asset Management, LLC | X | | |
| Neuberger Berman Inc. | X | | |
| Neuberger Berman Investment Services, LLC | X | | |
| Neuberger Berman Pty Ltd. | X | | |
| Neuberger Berman, LLC | X | | |
| Newark Properties One Inc. | X | | |
| Nexity Investment Partnership L.P. | X | | |
| NL Funding, L.P. | X | | |
| NL GP Inc. | X | | |
| Northstar Equipment Leasing Income Inc. (dissolved) | X | | |
| NPC Inc. (dissolved) | X | | |
| O.M.B. Limited Partner Ltd. | X | | |
| OCI Holdings Limited | X | | |
| OSD Corp. | X | | |
| PAC Aircraft Management Inc. | X | | |
| Pentaring, Inc. | X | | |
| Phuket Hotel 1 Holdings Company Limited. | X | | |
| Pike International Y.K.Pindar Pty Ltd. | X | | |
| Preferred Group Limited | X | | |
| Preferred Holdings Limited | X | | |
| Preferred Mortgages Limited | X | | |
| Principal Transactions Inc. | X | | |
| QP80 Real Estate Services Inc. | X | | |
| Quality Pork Partners, Inc. | X | | |
| Real Estate Investors Inc. (dissolved) | X | | |
| Real Estate Private Equity Inc. | X | | |
| Real Estate Services I Inc. (dissolved) | X | | |
| Real Estate Services VII Inc. (dissolved) | X | | |
| Reliance Energy E&P, LLC | X | | |
| REPE LBREP III LLC | X | | |
| Revival Holdings Limited | X | | |
| RIBCO LLC | X | | |
| RIBCO SPC, Inc. | X | | |
| Rock Hill Real Estate, Inc. | X | | |
| Sage Partners, LLC | X | | |
| SAIL Investor Pte Ltd. | X | | |
| Sambar Properties Inc. | X | | |
| SASCO ARC Corporation | X | | |
| Scranzay, Inc. | X | | |
| Security Assurance Advisers, LP | X | | |
| Select Asset Inc. | X | | |
| Senior Income Fund Inc. (dissolved) | X | | |

Schedule 1

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Serafino Investments Pty Limited | X | | |
| Shearson Lehman Brothers Capital Partners II, L.P. | X | | |
| Shearson Lehman Hutton Capital Partners II | X | | |
| Skratook LLC | X | | |
| Small Business Assets I LLC | X | | |
| Southern Pacific Funding 5 Ltd | X | | |
| Stamford Investment Realty Inc. | X | | |
| STRATUS I Inc. | X | | |
| Structure Asset Securities Corporation II | X | | |
| Structured Asset Securities Corporation | | | X |
| Structured Options Inc. | X | | |
| STUIE CORP. | X | | |
| Sunrise Finance Co., Ltd. | X | | |
| TAL Europe, LLC | X | | |
| Tallus | X | | |
| Thayer Group Limited | X | | |
| Thayer Properties (Jersey) Ltd. | X | | |
| Thayer Properties Limited | X | | |
| Townsend Analytics Japan Ltd. | | | X |
| Townsend Analytics, Ltd. | | | X |
| TX Tower Inc. (sold) | X | | |
| West Dover, LLC | X | | |
| Wharf Reinsurance Inc. | X | | |
| Woori-LB First Asset Securitization Specialty Co., Ltd. | X | | |
| Woori-LB Fourth Asset Securitization Specialty Co., Ltd. | X | | |
| Y.K Tower Funding | X | | |
| Y.K. Park Funding | X | | |
| | | | |
| **Directors and Officers (LBHI)** | | | |
| Aaron Guth | X | | |
| Aida Sarmast | X | | |
| Alex Kirk | X | | |
| Andrew Fischtal | X | | |
| Andrew Yeung | X | | |
| Ann Cairns | X | | |
| Bryan Marsal | X | | |
| Christian Meissner | X | | |
| Christine Searl | X | | |
| Christopher O'Mera | X | | |
| Daniel Ehrmann | X | | |
| Darryl Steinberg | X | | |
| David Coles | X | | |
| David Goldfarb | X | | |
| Denise Troise | X | | |
| E. Todd Whittemore | X | | |
| Eric Felder | X | | |
| Erin Callen | X | | |
| Francine Kittredge | X | | |
| George H. Walker | X | | |
| Gerald A Donini | X | | |
| Gerald Pietroforte | X | | |
| Gwen J. Zeisler | X | | |
| Henry Kaufman | X | | |
| Herbert H. McDade III | X | | |
| Hugh E. McGee III | X | | |
| Hyung S. Lee | X | | |
| Ian T Lowitt | X | | |

Schedule 1

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Jack MCCarthy | X | | |
| James Brogan | X | | |
| James Fogarty | X | | |
| Jasjit S. Bhattal | X | | |
| Jeffrey A. Welikson | X | | |
| Jeffrey Fitts | X | | |
| Jeffry Ciongoli | X | | |
| Jerry A. Grundhofer | X | | |
| Joanne Chormanski | X | | |
| John D. Macomber | X | | |
| John F. Akers | X | | |
| John M. Skoba | X | | |
| John Suckow | X | | |
| Jonathan Beyman | X | | |
| Jonathan Harris | X | | |
| Jospeh M. Gregory | X | | |
| Karen B. Corrigan | X | | |
| Lana Franks | X | | |
| Leo C. Trautman, Jr. | X | | |
| Linda Klang | X | | |
| Madeline L. Shapiro | X | | |
| Marsha Johnson Evans | X | | |
| Martha Solinger | X | | |
| Martin Winter | X | | |
| Michael Geband | X | | |
| Michael L. Ainslie | X | | |
| Neill Poole | X | | |
| Pamela Tibbetts | X | | |
| Riccardo Banchetti | X | | |
| Richard S. Fuld, Jr. | X | | |
| Richard S. Fuld, Jr. | X | | |
| Robert J. Leist | X | | |
| Roger S. Berlind | X | | |
| Roland A. Hernandez | X | | |
| Ronn A. Pisapia | X | | |
| Salvatore Barbuzza | X | | |
| Scott J. Freidheim | X | | |
| Shawnda D. Merriman | X | | |
| Sir Christopher Gent | X | | |
| Stephen M. Lessing | X | | |
| Terry L. Gentry | X | | |
| Thomas A. Russo | X | | |
| Thomas H. Cruikshank | X | | |
| Thomas Hommel | X | | |
| Wendy M. Uvino | X | | |
| William Fox | X | | |
| William Gordon | X | | |
| William Olshan | X | | |
| Yvonne Stich | X | | |
| | | | |
| **Entities Affiliated with Outside Directors** | | | |
| America's Development Foundation. | X | | |
| Atlantic Council | X | | |
| Bain & Company, Inc. | X | | |
| Board of Trustees of New York University | X | | |
| Board of Trustees of the Animal Medical Center | X | | |
| Carnegie Institution of Washington | X | | |

| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
|---|:---:|:---:|:---:|
| **Gleacher and Company - Lehman Brothers/Archstone Conflict Check** | | | |
| Collexis Holdings, Inc. | X | | |
| Council for Excellence in Government | X | | |
| David Rockefeller Center for Latin American Studies at Harvard University | X | | |
| Ferrari SpA | X | | |
| Folger Library | X | | |
| Harvard Law School | X | | |
| Henry Kaufman & Company | X | | |
| Huntsman Corporation | | | X |
| Institute of International Education | X | | |
| International Advisory Committee of the Federal Reserve Bank of New York | X | | |
| Investment Committee of the International Monetary Fund Staff Retirement Plan | | | X |
| Lehman Brothers Bank, FSB | X | | |
| LPGA | X | | |
| MGM Mirage | X | | |
| Naval Academy Foundation | X | | |
| Office Depot, Inc. | X | | |
| Pew Partnership for Civic Change | X | | |
| President's Council on International Activities – Yale University | X | | |
| Reform | X | | |
| Sony Corporation | X | | |
| Stern School of Business of New York University | X | | |
| Stewart & Stevenson LLC | X | | |
| Tel-Aviv University | X | | |
| The Broadway League | X | | |
| The Economic Club of New York. | X | | |
| The Posse Foundation, Inc. | X | | |
| The Ryland Group, Inc. | X | | |
| The St. Joe Company | X | | |
| Vail Resorts, Inc. | X | | |
| Vanderbilt University | X | | |
| W.R. Grace & Co | X | | |
| Weight Watchers International, Inc. | X | | |
| | | | |
| **Underwriting Investment Bankers for Debtor's Securities** | | | |
| | | | |
| ABN AMRO Rothschild | | | X |
| Hoare Govett, Ltd. | X | | |
| Lehman Brothers | X | | |
| Merrill Lynch | | X | |
| UBS Investment Bank | | | X |
| | | | |
| **Secured Creditors** | | | |
| Danske Bank | X | | |
| Fenway Funding LLC | X | | |
| JPMorgan Chase | | | X |
| MetLife | X | | |
| SMBC | X | | |
| State Street | | | X |
| Swedbank | X | | |
| | | | |
| **50 Largest Bond Holders** | | | |
| Advanced Series Trust | X | | |
| AETNA Life Insurance Company | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| AIG Annuity Insurance Company | | | X |
| ALFA Mutual Fire Insurance Company | X | | |
| Allianz Life Insurance Company of North America | X | | |
| Alpha Mutual Fund Management | X | | |
| American Family Life Assurance Company | X | | |
| American Life Insurance Company | X | | |
| AXA Equitable Life Insurance Company | X | | |
| Barclays Global Fund Advisors | | | X |
| BBVA Gestion SA SGIIC (Spain) | X | | |
| Blackrock Advisors | | | X |
| Capital Research and Management | X | | |
| Continental Casualty Company | X | | |
| Federated Investors | X | | |
| Fidelity Management and Research | | | X |
| Franklin Advisors Inc. | | | X |
| Franklin Templeton Investments | X | | |
| Guardian Life Insurance Company | | X | |
| Hartford Life Insurance Company | | X | |
| ING Investment LLC | | X | |
| Jackson National Life Insurance | X | | |
| John Hancock Investment Management Services | X | | |
| John Hancock Life Insurance Company | X | | |
| Liberty National Life Insurance Company | X | | |
| Loomis Sayles & Company L.P. | | | X |
| Medical Liability Mutual Insurance Company | X | | |
| Metlife Insurance Company of Connecticut | X | | |
| Metropolitan Life Insurance Company | X | | |
| Metropolitan West Capital Management | X | | |
| NATIXIS  Asset Management Advisors | X | | |
| Northwest Mutual Life Insurance Company | X | | |
| Phillips Hager & North Investment Management | X | | |
| PIMCO Advisors LP | X | | |
| PIMCO Funds Global Investors | X | | |
| Principal Life Insurance Company | X | | |
| Prudential Financial Inc. | | X | |
| Prudential Insurance Company of America | | X | |
| Riversource Life Insurance Company | X | | |
| Sun Life Assure Co. of Canada | X | | |
| T. Rowe Price Associates | X | | |
| Teachers Insurance and Annuity Association | X | | |
| Thrivent Financial for Lutherans | X | | |
| Transamerica Life Insurance Company | | | X |
| UBS Investment KAG | | | X |
| United States – Indices | X | | |
| Van Kampen Asset Management | X | | |
| Vanguard Group Incorporated | X | | |
| Western Asset Management Company | X | | |
| Zurich American Insurance Company | X | | |
| | | | |
| **Largest (Non-Bondholder) Unsecured Creditors** | | | |
| 1221 Avenue of the Americas | X | | |
| 125 Broad Street | X | | |
| 1301 Properties Owner LP | X | | |
| 55 Broadway | X | | |
| 767 Fifth  Ave | X | | |
| Allen & Overy | | X | |
| Anjarlekar & Associates | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| **Position in Case and Name** | **No Relationship** | **Prior Relationship** | **Current Relationship** |
| ANZ Banking Group Limited | X | | |
| Aozora Bank | X | | |
| Ashurst Morris Crisp | X | | |
| Australia and New Zealand Banking Group Limited | X | | |
| Banctec Ltd. | X | | |
| Bank of America Plaza STE 3500 | | | X |
| Bank of China, New York Branch | X | | |
| Bank of Taiwan, New York Agency | X | | |
| Bats Trading, Inc. | | X | |
| Bloomberg Finance LP | | | X |
| Bloomberg L.P. | | | X |
| BNP Paribas | X | | |
| Broadridge Securities Processing | | | X |
| Caldwalader, Wickersham, and Taft | X | | |
| Canary Warf Management Limited | X | | |
| CB Richard Ellis Client Account RE Gloa | X | | |
| CDW Direct LLC | | | X |
| Chuo Mitsui Trust & Banking | X | | |
| Citibank N.A. Hong Kong Branch | | | X |
| Citibank, NA | | | X |
| Clifford Chance | | X | |
| Commonwealth Bank of Australia, Tokyo Branch | X | | |
| Compucenter (UK) Ltd. | X | | |
| CW Lending II Limited | X | | |
| Davis, Polk and Wardwell | X | | |
| Dell Marketing L.P. | X | | |
| Deutsche Borsche AG | X | | |
| Dimension Data | X | | |
| DnB NOR Bank ASA | X | | |
| Drowst Trading, LLC | X | | |
| Ernst & Young | | | X |
| Ernst and Young Private Limited | | | X |
| Fidessa Plc. | | | X |
| First Commercial Bank Co., Ltd, New York Agency | X | | |
| FT Interactive Data | | | X |
| Haworth Singapore PTE Ltd. | X | | |
| Henegan Construction Co., Inc. | X | | |
| Hewlett-Packard AP (HONG KONG) LIMITED | | | X |
| HSBC Bank | | X | |
| Hua Nan Commercial Bank, Ltd | X | | |
| IBM Corporation | X | | |
| ICAP Securities Limited | | | X |
| Information Builders Inc. | X | | |
| JQ Network PTD Limited | X | | |
| KBC Bank | X | | |
| Kim & Chang | X | | |
| Kingston Communications PLC | X | | |
| Linklaters, S.L. | X | | |
| Lloyds Bank, PLC | X | | |
| London & European Title Insurance Services Ltd. | X | | |
| London Borough of Tower Hamlets Rates | X | | |
| Mace Limited | X | | |
| McKee Nelson LLP | X | | |
| Microsoft Licensing, GP | | | X |
| Millennium Developers PVT LTD | X | | |
| Mizuho Corporate Bank Ltd. | | | X |
| Morse Group Limited | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Morse Service Holdings Limited | X | | |
| National Bank of Australia | X | | |
| National Commerce bank | X | | |
| Network Appliance, Inc. | X | | |
| Nippon Life Insurance Co. | X | | |
| NYSE Market, Inc. | | X | |
| Origin HR Consulting Limited | X | | |
| Paul Weiss | X | | |
| Pricoa Relocation UK Limited | X | | |
| Reuters America Inc. | | | X |
| Reuters Limited | | | X |
| Shinkin Central Bank | X | | |
| Shinsei Bank Ltd. | X | | |
| Sidley Austin Brown & Wood | | | X |
| Standard & Poor's | X | | |
| Standard Chartered Bank | X | | |
| Sumitomo Mitsui Banking Corp | X | | |
| Sungard Securities Finance Inc. | | | X |
| Svenska Handelsbanken | X | | |
| Swapswire Limited | X | | |
| Taipei Fubon Bank, New York Agency | X | | |
| Tata Consultancy Services | X | | |
| The Bank of New York | | | X |
| The Bank of Nova Scotia | X | | |
| The British Land Company PLC | X | | |
| Thomson Financial | | | X |
| TIBCO Software, Inc. | X | | |
| UFJ Bank Limited | X | | |
| Vertex Mortgage Services | X | | |
| Virtx | X | | |
| WIPRO Infotech Enterprise Solutions | X | | |
| YXIME | X | | |
| ZKB (Zurcher Kantonalbank) | X | | |
|  | | | |
| **Largest Holders of Trade Debt** | | | |
| 1221 Avenue of the Americas | X | | |
| 125 Broad Street | X | | |
| 1301 Properties Owner LP | X | | |
| 2027 Collections Center Drive | X | | |
| 4 Connections LLC | X | | |
| 425 Lexington Ave. | X | | |
| 515 South Flower Street | X | | |
| 55 Broadway | X | | |
| 767 Fifth Avenue | X | | |
| 77 West Wacker | X | | |
| A V Services Inc. | X | | |
| AC Nielsen Company | X | | |
| Acronis, Inc. | X | | |
| AFD Contract Furniture Inc. | X | | |
| Agilysys Nj, Inc. | X | | |
| Allen & Overy | | X | |
| Alpha Office Supplies Inc. | X | | |
| Anjarlekar & Associates | X | | |
| ANZ Banking Group Limited | X | | |
| Aperture Technologies | X | | |
| Ashurst Morris Crisp | X | | |
| Australia and New Zealand Banking Group Limited | X | | |

Schedule 1

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Automated Securities Clearance Ltd. | X | | |
| Ayco Services Agency Inc. | X | | |
| Banctec Ltd. | X | | |
| Bank of America Plaza STE 3500 1041. Bank of Taiwan, New York Agency | | | X |
| Bank One Plaza | X | | |
| Bats Trading, Inc. | | X | |
| Bloomberg Finance LP | | | X |
| Bloomberg L.P. | | | X |
| Broadridge Securities Processing | | | X |
| BT Americas, Inc. | | | X |
| Cadwalader, Wickersham and Taft | | | X |
| Canary Wharf Management Limited | X | | |
| CB Richard Ellis Client Account RE Gloa | X | | |
| CDW Direct LLC | | | X |
| Centrale Attivita Finanziarie SPA | X | | |
| CHD Meridian Healthcare | X | | |
| Clayton Fixed Income Services, Inc. | X | | |
| Clifford Chance | X | | |
| Compliance Data Center Inc. | X | | |
| Compucenter (UK) Ltd. | X | | |
| Computer Associates International Inc. | X | | |
| Computer Financial Consultants, Inc. | X | | |
| Cushman & Wakefield Inc. | | | X |
| Cyveillance | X | | |
| Davis Polk and Wardwell | X | | |
| DBRS Inc. | X | | |
| Dell Marketing L.P. | X | | |
| Deutsche Borsche AG | X | | |
| DGWB, Inc. | X | | |
| Dimension Data | X | | |
| Diversified Global Graphics Group DG3 | X | | |
| DnB NOR Bank ASA | X | | |
| Drowst Trading LLC | X | | |
| Elyo Services Limited | X | | |
| Emil Werr | X | | |
| Enterprise Solution Providers Inc. | X | | |
| Ernst & Young LLP | | | X |
| Ernst & Young Private Limited | | | X |
| EXLservice Holdings Inc. | X | | |
| Fidessa Plc. | | | X |
| First Commercial Bank Co., Ltd, New York Agency | X | | |
| FTInteractive Data | | | X |
| Gartner Group Inc. | X | | |
| Gotham Technology Group | | X | |
| Greenline Financial Technologies Inc. | X | | |
| Hanover Moving &Storage Co Inc. | X | | |
| Hatfield Philips International Limited | X | | |
| Haworth Singapore PTE Ltd. | X | | |
| Headstrong Services, LLC | X | | |
| Henegan Construction Co., Inc. | X | | |
| Hewlett Packard AP (Hong Kong) Limited | | | X |
| Hewlett Packard Company | | | X |
| HSBC Bank | | X | |
| IBM Corporation | X | | |
| ICAP Securities Limited 1078. | | | X |
| Information Builders Inc. | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Intuition Publishing | X | | |
| Ikon Office Solutions Inc. | | | X |
| ILOG Inc. | X | | |
| Inconit Corporation | X | | |
| Information Builders Inc | X | | |
| Infusion Development Corp. | X | | |
| Integreon Managed Solutions | X | | |
| Interactive Data Corp. | | | X |
| Intuition Publishing Inc. | X | | |
| IPC Information Systems Inc. | | | X |
| Iron Mountain Digital Archives | | | X |
| Iron Mountain Records Management | | | X |
| JQ Network PTD Limited 1082 | X | | |
| Kepner Tregoe Inc. | X | | |
| Key Systems | X | | |
| Kim & Chang | X | | |
| Kingston Communications PLC | X | | |
| KPMG, LLP | | | X |
| Lancaster Office Cleaning Co. | X | | |
| Lexis Nexis | | | X |
| Linklaters, S.L. | X | | |
| Liquid Engines, Inc. | X | | |
| Logical Information Machines | X | | |
| London & European Title Insurance Services Ltd. | X | | |
| London Borough of Tower Hamlets Rates | X | | |
| London Eastern Railway Limited | X | | |
| Mace Limited | X | | |
| McKee Nelson LLP | X | | |
| Mellon Analytical Solutions | X | | |
| Meridian IT, Inc. | X | | |
| Meridian It, Inc. | X | | |
| Michael Stapleton Associates | X | | |
| Microsoft Corporation | | | X |
| Microsoft Licensing, GP | | | X |
| Millennium Developers PVT Ltd. | X | | |
| Morse Group Limited | X | | |
| Morse Service Holdings Limited | X | | |
| National Bank of Australia | X | | |
| National Commerce Bank | X | | |
| Net One Systems | X | | |
| Network Appliance Inc. | X | | |
| Nishimura & Partners | X | | |
| Northrop Grunman | X | | |
| NYSE Market, Inc. | | X | |
| Origin HR Consulting Limited | X | | |
| Paul Weiss | X | | |
| Polaris Software Lab (India), Ltd. | X | | |
| Pricoa Relocation UK Limited | X | | |
| Quest Software Inc. | | | X |
| Rainmaker Group LLC | X | | |
| Restaurant Associates | X | | |
| Reuters America | | | X |
| Reuters Ltd. | | | X |
| Rittal Corporation | X | | |
| Rockefeller Center North, Inc. | X | | |
| Rolfe & Nolan Systems Inc. | X | | |
| RR Donnelley Receivables Inc. | X | | |

Schedule 1

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| SAS Institute Inc | X | | |
| Sharon Land Company, LLC | X | | |
| SOS Security Inc. | X | | |
| Standard & Poors | | | X |
| Standard and Poors Corp. | | | X |
| Standard Chartered Bank | X | | |
| Standard Register | X | | |
| Storage Technology Corp | X | | |
| Structure Group | X | | |
| Sungard Securities Finance Ltd. | | | X |
| Swapswire Limited | X | | |
| Swets Information Services Inc. | X | | |
| Tac Americas, Inc. | X | | |
| Taipei Fubon Bank, New York Agency | X | | |
| Tata Consultancy Services | X | | |
| The Bank Of New York | X | | |
| The British Land Company PLC | X | | |
| Thomson Financial | | | X |
| Tibco Software, Inc. | X | | |
| Transaction Network Services | X | | |
| Trilogy Leasing Co. LLC | X | | |
| Trimont Real Estate Advisors Inc. | X | | |
| Triple Point Technology, Inc. | X | | |
| Verrazano Consulting Solutions, LLC | X | | |
| Vertex Mortgage Services | X | | |
| Video Corporation Of America | X | | |
| Virtix | X | | |
| Wipro Technologies | X | | |
| Wombat Financial Software, Inc. | X | | |
| ZKB (Zurcher Kantonalbank) | X | | |
|  | | | |
| **Significant Stockholders** | | | |
| AXA and related parties (7.25%) | X | | |
| Clearbridge Advisors, LLC and related parties (6.33%) | X | | |
| FMR LLC and related parties (5.87%) | | | X |
|  | | | |
| **Selected Derivative Counterparties** | | | |
| Advanced Graphic Printing, Inc. | X | | |
| Advanced Micro Devices, Inc. | X | | |
| AIG CDS, Inc. | | | X |
| Aircraft Finance Trust | X | | |
| Allison Transmission | X | | |
| AMBAC Credit Products, LLC | X | | |
| A.M. McGregor Home | X | | |
| American Investor Life Insurance Company | X | | |
| Aviva Life Insurance Company | X | | |
| Aviva Live & Annuity Company | X | | |
| Banca Italease S.p.A. | X | | |
| Banco Espirito Santo Investimento | X | | |
| Banco Espirito Santo | X | | |
| Bayview Financial, L.P. | X | | |
| Bayview Opportunity Master Fund, L.P. | X | | |
| Bremer Financial Corporation | X | | |
| BRM Group, Ltd. | X | | |
| Canadian National Resources Limited | X | | |
| Capital Automotive L.P. | X | | |
| Cheung Kong Bond Finance Limited | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Chevron U.S.A. Inc. | X | | |
| City of Milwaukee, Wisconsin | X | | |
| Colorado Housing Finance Authority | X | | |
| Consolidated Container Company LLC | X | | |
| Convexity Capital Master Fund L. P. | X | | |
| Deer Park Road Corporation | X | | |
| Delaware River Port Authority | X | | |
| Deutsche Bank National Trust Company | | X | |
| Deutsche Bank Trust Company Americas | | X | |
| Dexia Bank Internationale a Luxembourg SA | X | | |
| Dexia Banque Belgique SA | X | | |
| Dexia Credit Local, Dexia Kommunalbank Deutschland AG | X | | |
| Direct Energy Business, LLC | X | | |
| Dollar General Corporation | X | | |
| E-Capital Profits Limited | X | | |
| Embarcadero Aircraft Securitization Trust | X | | |
| Emigrant Bank | X | | |
| Energy America LLC | X | | |
| Enterprise Products Operating, LLC | X | | |
| EPCO Holdings, Inc. | X | | |
| Federal Home Loan Bank of Dallas | X | | |
| FirstBank of Puerto Rico | X | | |
| Florida Power & Light Company | X | | |
| FPL Energy Power Marketing, Inc. | X | | |
| FSA Credit Protection Trust 283 | X | | |
| Gaston Christian School, Inc. | X | | |
| Government of Singapore Investment Corp. | X | | |
| H21 Absolute Return Concepts SPC  ARC-B07-20 | X | | |
| H21 Absolute Return Portfolios SPC Class A | X | | |
| HarbourView CDO III, Limited | X | | |
| HFF I, LLC | X | | |
| Houghton Mifflin Harcourt Publishing Company | X | | |
| Iconix Brand Group, Inc. | X | | |
| Idaho Housing and Finance Association | X | | |
| Indianapolis Life Insurance Company (Inc) | X | | |
| ING Life Insurance & Annuity Company | | X | |
| ING USA Annuity & Life Insurance Company | | X | |
| Intel Corporation | X | | |
| Iowa Telecommunications Services Inc | X | | |
| Irish Life & Permanent PLC | X | | |
| Italease Finance S.p.A. | X | | |
| JA Solar Holdings Co., LTD. | X | | |
| Lexington Insurance Company | X | | |
| Life Investors Insurance Company of America | X | | |
| Lincore Limited | X | | |
| Linn Energy, LLC | X | | |
| MEG Energy Corp. | X | | |
| Metavante Corporation | X | | |
| Ministry of Finance Italy | X | | |
| Monumental Life Insurance Company (INC) | X | | |
| Natixis Environment & Infrastructures | X | | |
| Nebraska Investment Finance Authority | X | | |
| New Generation Funding Trust 15 | | | X |
| New Generation Funding Trust 16 | | | X |
| New Jersey Housing and Mortgage Finance Agency | X | | |
| New York Life & Annuity Insurance Corporation | X | | |
| New York Life INS & Annuity Corp Private Placi | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| New York Life Insurance Company Inc | X | | |
| Northcrest, Inc. | X | | |
| Occidental Power Services, Inc. | X | | |
| Official Committee of Unsecured Creditors | X | | |
| OHP Opportunity Limited Partnership | X | | |
| One Madison Investments (CAYCO) Limited | X | | |
| Pacific Life & Annuity Co | X | | |
| Pacific Lifecorp | X | | |
| Pacific Life Insurance Company | X | | |
| Pinnacle Foods Finance LLC | X | | |
| Portfolio Green German CMBS GMBH | X | | |
| Principal Financial Services Inc. | | | X |
| Putnam (183 ISDA's) | | | X |
| Reliastar Life Insurance Company | X | | |
| Reliastar Life Insurance Company of New York | X | | |
| Reynolds American Defined Benefit Master Trust | X | | |
| Riversource Life Insurance Company of New York | X | | |
| Russell Implementation Services Inc. | X | | |
| Russell Investment Group | X | | |
| Security Life of Denver Insurance Company | X | | |
| Security Life of Denver Insurance Company Inc | X | | |
| Simpson Meadows | X | | |
| Southern California Edison Company | X | | |
| Standard Credit Group LLC | X | | |
| Sunamerica Life Insurance Company | X | | |
| TFS (Germany) | X | | |
| TFS (TX) | X | | |
| TFS Derivatives Corporation | X | | |
| TFS Derivatives Total | X | | |
| TFS Derivatives Total | X | | |
| TFS Oil | X | | |
| TFS Oil Floor | X | | |
| TFS PWR NG | X | | |
| TFS Sing | X | | |
| TFS UK | X | | |
| TFS UK Cleared | X | | |
| TFS-ICAP | X | | |
| Tobacco Settlement Financing Corporation | X | | |
| Tradition (North America) Inc. | X | | |
| Tradition Asiel Securities Inc. | | | X |
| Tradition Services S.A. DE C.V. Mex | X | | |
| Transamerica Financial Life Insurance Co | | | X |
| Transamerica Occidental Life Insurance Co | | | X |
| Tullett Prebon Holdings Corporation | | | X |
| University of Pittsburgh | X | | |
| Verde CDO Ltd. | X | | |
| Verde CDO, LLC | X | | |
| Veyance Technologies, Inc. | X | | |
| Wellmont Health System | X | | |
| West Corporation | X | | |
| Zeeland Aluminium Company AG | X | | |
| | | | |
| **Principal Investments** | | | |
| ASA McJunkin Red Man Corp.(F/K/A McJunkin Corp.) | X | | |
| AlixPartners | X | | |
| Applebees | X | | |
| Brozero Limited | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Castex Energy 2007, L.P. | X | | |
| Castex Energy, Inc. | X | | |
| Celtic Pacific (UK) Two Limited | X | | |
| Classic Cruises Holdings S.a.r.l. | X | | |
| Crimson Exploration Inc. | X | | |
| David Arrington Oil & Gas Barnett Shale IV, LLC | X | | |
| David Arrington Oil & Gas, Inc. | X | | |
| Delta Prefco Limited | X | | |
| Delta Topco Limited | X | | |
| DHS Drilling Company | X | | |
| DHS Holding Company | X | | |
| Energy XXI Gulf Coast, Inc. | X | | |
| FDR Holdings, Ltd. | X | | |
| First Wind Holdings, LLC | X | | |
| Firth Rixson Limited | X | | |
| Forgings International Holdings 1 Limited | X | | |
| Forgings International Holdings Limited | X | | |
| Forgings International Limited | X | | |
| FR Acquisition Corporation (Europe) Limited | X | | |
| FR Acquisition Corporation (Luxembourg) Sarl | X | | |
| FR Acquisition Corporation (US), Inc. | X | | |
| FR Acquisition Finance Subco (Luxembourg) Sarl | X | | |
| FR Acquisition Holding Corporation (Luxembourg) Sarl | X | | |
| FR Acquisition Subco (Luxembourg) Sarl | X | | |
| Frontier Drilling ASA | X | | |
| Frontier Drilling USA, Inc. | X | | |
| Greenbrier Minerals Holdings, LLC | X | | |
| Greenbrier Minerals, LLC | X | | |
| Greenbrier Petroleum Corp. | X | | |
| Hilcorp Energy I, L.P. | X | | |
| Hilcorp Exploration Venture 1 LLC | X | | |
| Hilton Hotels Corporation n/k/a Hilton Worldwide, Inc. | X | | |
| Jazz Pharmaceuticals, Inc. | X | | |
| JFB Firth Rixson, Inc. | X | | |
| JFB Overseas Holdings Limited | X | | |
| JPI Commercial, LLC | X | | |
| Labarge Pipe & Steel Company | X | | |
| Latshaw Drilling & Exploration Company | X | | |
| Latshaw Drilling Company, LLC | X | | |
| LBPS Holding Co. | X | | |
| LIM | X | | |
| McJunkin Nigeria Limited | X | | |
| McJunkin –Puerto Rico Corp. | X | | |
| McJunkin Red Man Development Corp. (F/K/A McJunkin Development Corporation) | X | | |
| McJunkin Red Man Holding Corp. | X | | |
| McJunkin -West Africa Corp. | X | | |
| MEG Energy Corp. | X | | |
| Midway-Tristate Corp. | X | | |
| Milton Oil & Gas Co. | X | | |
| Minrad International, Inc. | X | | |
| Mountain Drilling Company | X | | |
| Mountain Drilling LLC | X | | |
| MRC Management Co. (F/K/A MRM West Virginia Management Company) | X | | |
| MRM Oklahoma Management LLC | X | | |
| Oceana Cruises, Inc. | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Orthovita, Inc. | X | | |
| Pegasus International, Inc. | X | | |
| Petsec Energy Inc. | X | | |
| Pinnacle Entertainment Corp. | X | | |
| Prestige Cruise Holdings Inc. | X | | |
| Radisson Seven Seas France | X | | |
| Red Man Pipe & Supply Co. | X | | |
| Regents | X | | |
| RJO Holdings Corp. | X | | |
| RJO Investor Corp. | X | | |
| Ruffner Realty Co. | X | | |
| Sacher Funding Ltd. | X | | |
| SCP Worldwide I L.P. | X | | |
| Sheridan Healthcare | X | | |
| Sixth Gear Funding Trust | X | | |
| Sixth Gear Inc. | X | | |
| Sixth Gear Solutions Corp. | X | | |
| SkyPower Corp. | X | | |
| Spanish Broadcasting Systems, Inc. | X | | |
| Supplystill Limited | X | | |
| Universal Ensco, Inc. | X | | |
| Universal Pegusus | X | | |
| UP Acquisition Sub Inc. | X | | |
| Up Holdings Inc. | X | | |
| Varel Funding Corp. | X | | |
| Varel International Ind., L.P. | X | | |
| Veyance | X | | |
| Voss of Norway | X | | |
| Vought | X | | |
| Walton Street Capital | X | | |
| Walton Street Real Estate Fund V, L.P. | X | | |
| Wesco Acquisition Partners, Inc. | X | | |
| WTCC Ventana Alpha Mezz V, L.L.C. | X | | |
| WTCC Ventana Investors V, L.L.C. | X | | |
| WTCC Ventana Mezz V, L.L.C. | X | | |
| Yankee Candle | X | | |
|  | | | |
| **Lease Counterparties** | | | |
| 101 Hudson Leasing Associates | X | | |
| 1111 Brickell Office, LLC | X | | |
| 125 High Street LP | X | | |
| 1301 Properties Owner L.L.C | X | | |
| 20 CCC Business Trust | X | | |
| 300 Main L.L.C. | X | | |
| 50 Broadway Realty Corp. | X | | |
| 5450 West Sahara LLC | X | | |
| 600 Partners Co., L.P. | X | | |
| 605 Third Avenue Fee LLC | X | | |
| 70 Hudson Street, LLC | X | | |
| 8 Sound Shore Associates, LLC | X | | |
| 85 Tenth Avenue Associates, LLC | X | | |
| AIG Technologies, Inc. | | | X |
| American Center | X | | |
| Archipelago Holdings, Inc. | | | X |
| Argonne Capital Group | X | | |
| B&R 919, LLC | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Beneficiaries of North Star Trust Company Title Holding Land | X | | |
| BNC Mortgage | X | | |
| Board of Trade of the City of Chicago, Inc. | X | | |
| BP 399 Park Avenue LLC | X | | |
| Brandywine Office Investments LLC | X | | |
| Brookfield Properties One WFC Co. LLC | X | | |
| CA-10880 Wilshire Limited Partnership | X | | |
| CB Office 10, Ltd. | X | | |
| CharterMac Mortgage Capital Corporation | X | | |
| Clearbridge Advisors, LLC (f/k/a CAM North America, LLC) | X | | |
| Clifford Chance US LLP | X | | |
| CMD ST Financial Centre, LLC | X | | |
| Columbia Center Property LLC | X | | |
| Constellation Place, LLC | X | | |
| Consultatio Inversora S.A. | X | | |
| Corporate Park Associates | X | | |
| Corridors I & II/Loudoun II SPE Feeco, L.L.C. | X | | |
| Courtside West, LLC | X | | |
| CPR (USA) Inc. | X | | |
| Creekside Business Mall LLC | X | | |
| Crescent TC Investors LP | X | | |
| Crown Point, L.L.C. | X | | |
| CT Tower Investments Inc | X | | |
| Custer Court, L.P. | X | | |
| DBSI Housing, Inc. | X | | |
| Denver United LLC | X | | |
| Deutsche Bank AG, New York Branch | | X | |
| Deutsche Bank Securities, Inc. | | X | |
| Deutsche Immobilien Fonds Aktiengesellschaft | X | | |
| Dewey Ballantine LLP/Dewey LeBouf LLP | | | X |
| Eastrich No. 167 Corporation | X | | |
| Financial Solutions Partners, LLC | X | | |
| For 1031 Heritage II LLC | X | | |
| Four Point Star Operating Company, L.P. | X | | |
| Franklin Credit Management | | | X |
| Frazee, LLC | X | | |
| Frenkel of New Jersey, Inc. | X | | |
| Galleria Properties, LLC | X | | |
| GRE Glendale LLC | X | | |
| Guggenheim Concourse, L.P. | X | | |
| Hanover Moving & Storage Co., Inc. | X | | |
| Historic TW Inc. | X | | |
| Historic TW Inc. | X | | |
| HQ Global Workplaces | | | X |
| Hunter Financial Group, LLC | X | | |
| Huron Consulting Group LLC | X | | |
| HWA 555 Owners, LLC | X | | |
| JBC Funds 200 West Monroe LLC | X | | |
| JDJ Properties, Inc. | X | | |
| Legacy III Centennial, LLC | X | | |
| Lehman Brothers Commercial Bank | X | | |
| Lehman Brothers Holdings, Inc. | X | | |
| Lempira S.R.L., R.U.C. | X | | |
| Level 3 Communications, LLC | | X | |
| Liberty Property Limited Partnership | X | | |
| Mack-Cali CW Realty Associates L.L.C. | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| **Position in Case and Name** | **No Relationship** | **Prior Relationship** | **Current Relationship** |
| Mackenzie Financial Corporation | | | X |
| MCPR Unit V LP, S.E. | X | | |
| Middlefield Park Associates | X | | |
| Millennium De Investimentos Imobiliarios LTDA | X | | |
| MJH Wacker LLC | X | | |
| Monarch Centre Associates, LLC | X | | |
| Mountain Towers Properties, LLC | X | | |
| National Union Fire Insurance Company of Pittsburgh, PA | X | | |
| NBS Brookside 700/800, L.L.C. | X | | |
| New Tower Trust Company Multi-Employer Property Trust | X | | |
| Nine Penn Center Associates, LP | X | | |
| Normandy Real Estate Partners | X | | |
| One William Street Capital Management, L.P. | X | | |
| Palm Beach Park Centre 4, LLC | X | | |
| PCC Properties (Calgary) Ltd. | X | | |
| Piedmont Operating Partnership, L.P. | X | | |
| Pricewaterhouse Coopers, LLP | | | X |
| R3 Capital Management, L.P. | X | | |
| Regus do Brasil, Ltd | X | | |
| Rock Forty Ninth LLC | X | | |
| Rockefeller Center North, Inc. | X | | |
| Rosemead Properties, Inc. | X | | |
| Sandtrap II, Ltd. | X | | |
| Sharon Land Company, LLC | X | | |
| SLG 220 News Owner LLC | X | | |
| SP4 190 S. LaSalle, L.P. | X | | |
| Stillwater Development, LLC | X | | |
| Sunray Investments | X | | |
| Teachers Insurance and Annuity Assoc. of America | X | | |
| Telwares, Inc. | X | | |
| Tempe Fountainhead Corporate, LLC | X | | |
| Texas Tower Limited | | X | |
| The Irvine Company LLC | X | | |
| The Realty Associates Fund VIII, L.P. | X | | |
| Triple Net Properties, LLC | X | | |
| Trizec Westwood Center LLC | X | | |
| Wacker Drive Limited Partnership | X | | |
| Wasserstein Perella Group Holdings, LLC | X | | |
| Willkie Farr & Gallagher LLP | X | | |
| WLA UPU 1 and 2, LLC | X | | |
| WPGH, LLC | X | | |
| | | | |
| **Utilities** | | | |
| AT&T | | | X |
| Cleveland Division of Water | X | | |
| Cleveland Public Power | X | | |
| ComEd | X | | |
| Con Edison | X | | |
| Dominion | X | | |
| Illuminating | X | | |
| Interstate Gas | X | | |
| NEORSD | X | | |
| NSTAR Electirc | X | | |
| NYC Water Board | X | | |
| Sempra Energy Solutions | X | | |
| The Hess Corporation | X | | |
| Time Warner | | | X |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| **Position in Case and Name** | **No Relationship** | **Prior Relationship** | **Current Relationship** |
| **Litigation Claimants** | | | |
| Alaska Electrical Pension Fund | X | | |
| Alex E. Rinehart | X | | |
| Aliant Bank | X | | |
| American Family Life Assurance Company Of Columbus | X | | |
| Annuity Fund et al. v. Lehman Brothers Holdings, Inc., et al. | X | | |
| Aurora Bank FSB f/k/a Lehman Brothers Bank FSB | X | | |
| Avenius, et, al. v. Banc of America Securities LLC, et., al. | X | | |
| Bader & Yakaitis P S P & Trust | X | | |
| Bank of America Trust and Banking Corporation (Cayman) Limited | | | X |
| Bank of America, N.A. | | | X |
| BHL Capital Partners L.P. | X | | |
| BP Energy Company & BP Corporation North America Inc. | X | | |
| Breakaway Solutions Inc. | X | | |
| Carolina First Bank | X | | |
| City of Cleveland, Ohio | X | | |
| David Trent | X | | |
| Declan Kelly | X | | |
| Deutsche Bank AG | | X | |
| Electronic Trading Group, LLC | X | | |
| Elizabeth Foster | X | | |
| Evergreen Solar, Inc. | X | | |
| FCCD Limited | X | | |
| First Alliance Mortgage Company Class Action | X | | |
| Fogarazzo, et al. v. Lehman Brothers Inc., et al. Claude A. Reese | X | | |
| Fogel Capital Management, Inc. | X | | |
| Forza Capital Management, L.L.C. | X | | |
| Friedman, Billings, Ramsey Group, Inc. | X | | |
| Harrier Finance Limited, | X | | |
| Hugh D. Barton | X | | |
| In re Issuer Plaintiff Initial Public Offering Fee Antitrust Litigation (consolidated class action) | X | | |
| In re Lehman Brothers Holdings, Inc. Derivative Litigation (Garber, Staehr, Locals 302 & 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust, and Saginaw Police & Fire Pension Board, plaintiffs) | X | | |
| In re Mirant Corporation Securities Litigation (class action) | X | | |
| In re Public Offering Antitrust Litigation (consolidated class action) | X | | |
| IPO Class Actions | | | X |
| J. Bader | X | | |
| Keith Carpenter | X | | |
| Keith Cheng | X | | |
| Locals 302 & 612 of the International Union of Operating Engineers-Employers | X | | |
| Mark Montag | X | | |
| Mary Helbeyn | X | | |
| Massachusetts Water Resources Authority | X | | |
| Metropolitan West Low Duration Bond Fund | X | | |
| Miron Berenshteyn | X | | |
| Nomura Global Financial Products Inc. | | | X |
| Oliver Cheng | X | | |

Schedule 1

| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
|---|:---:|:---:|:---:|
| **Gleacher and Company - Lehman Brothers/Archstone Conflict Check** | | | |
| Olivia Bam | X | | |
| Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund | X | | |
| Overstock.Com Inc., et, al. v. Morgan Stanely & Co. Inc., et, al. | X | | |
| PNC Bank, National Association | X | | |
| Prudential Global Funding LLC | | X | |
| Rathgar Capital Corporation | X | | |
| Research Analyst Independence Litigations | X | | |
| Rye Select Broad Market Portfolio Limited | X | | |
| Rye Select Broad Market XL Portfolio Limited | X | | |
| Securities Investor Protection Corporation | | | X |
| Sentinel Management Group, Inc. | X | | |
| Sola Ltd. Royal Bank of America v. Lehman Brothers Special Financing | X | | |
| Southern Community Financial Corporation, Southern Community Bank and Trust | X | | |
| State Street Bank and Trust Company | | | X |
| The Adelphia Recovery Trust | X | | |
| The Options Clearing Corporation | | | X |
| Woodlands Commercial Bank f/k/a Lehman Brothers Commercial Bank | X | | |
| Wright et al v. Lehman Brothers Holdings Inc. et, al. (A. Vernon Wright and Dynoil Refining LLC, plaintiffs) | X | | |
| | | | |
| **Professionals Retained by the Company** | | | |
| Akerman Senterfitt | X | | |
| Allen & Overy LLP | | X | |
| Allen Matkins Leck Gamble Mallory and Natsis | X | | |
| Alvarez & Marsal North America. LLC | X | | |
| Andrews & Kurth LLP | X | | |
| Anthony J. Napolitano & Associates | X | | |
| Appleby Global | X | | |
| Baker & McKenzie LLP | X | | |
| Balcomb & Green, P.C. | X | | |
| Ballard Spahr Anders & Ingersoll, LLP | X | | |
| Bar & Karrer AG | X | | |
| Bedell Cristin | X | | |
| Benesch, Fiedlander, Coplan & Arnoff LLP | X | | |
| Berkman Wechsler Bloom & Co., Law Offices | X | | |
| Bickerton Lee Dang & Sullivan, LLP | X | | |
| Bih Li & Lee | X | | |
| Blake Cassels & Graydon LLP | | | X |
| Bloom Murr & Accomazzo, P.C. | X | | |
| BLP Abogados | X | | |
| BlueGate Partners, LLC | X | | |
| Bonchonsky & Zaino, LLP | X | | |
| Bonelli Erede Pappalardo | X | | |
| Bortstein Legal LLC | X | | |
| Bracewell & Giulliani LLP | | | X |
| Brand Law Group, PC | X | | |
| Broad & Cassel | X | | |
| Brownstein Hyatt Farber Schreck, LLP | X | | |
| Bulboaca & Associatii | X | | |
| Burns, White & Hickton | X | | |
| Cadwalader, Wickersham & Taft LLP | | | X |
| Cains | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Carrington, Coleman, Sloman & Blumenthal, L.L.P. | X | | |
| Cassels Brock & Blackwell LLP | | | X |
| CB Richard Ellis | X | | |
| Cederquist | X | | |
| Chiomenti Studio Legale | X | | |
| Chun Rair & Yoshimoto LLP | X | | |
| Click & Null, P.C. | X | | |
| Clyde Click | X | | |
| Conway and Mrowiec | X | | |
| Cox Castle Nicholson | X | | |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | X | | |
| David Marks QC | X | | |
| Davies Ward Phillips & Vineberg | X | | |
| Davis & Gilbert LLP | X | | |
| De Brauw Blackstone Westbroek | X | | |
| Dechert LLP | | | X |
| Deloitte & Touch USA LLP | X | | |
| Dickstein Shapiro LLP | X | | |
| DLA Piper | X | | |
| Dorsey & Whitney LLP | X | | |
| DTZ Rockwood LLC | X | | |
| Duff and Phelps | X | | |
| Duff and Phelps | X | | |
| Einstein Malanchuk LLP | X | | |
| Epiq | X | | |
| Ernst & Young LLP | | | X |
| Evergreen Law Group | X | | |
| Foster, Graham, Milstein & Calisher, LLP | X | | |
| Fragomen, Del Rey, Bernsen & Loewy, LLP | X | | |
| Freshfields Bruckhaus Deringer | X | | |
| Fried Frank | X | | |
| FTI Consulting Inc. | | X | |
| Fulbright & Jaworski L.L.P. | X | | |
| Gianni, Origoni Grippo & Partners | X | | |
| Gibson, Dunn & Crutcher LLP | X | | |
| Hahn Loeser & Parks LLP | X | | |
| HBN Law | X | | |
| Heller Ehrman LLP | X | | |
| Herbert Smith CIS LLP | X | | |
| Herbert Smith Ltd. | X | | |
| Herrick & Feinstein MMOR Consulting | X | | |
| Herzfeld & Rubin, P.C. | X | | |
| Hoegen & Associates, P.C. | X | | |
| Hogan & Hartson | | X | |
| Houlihan Lokey Howard & Zukin Capital, Inc. | X | | |
| Houser & Allison, APC | X | | |
| Hunt Leibert Jacobson, P.C. | X | | |
| Hunton & Williams LLP | X | | |
| Huron Consulting Group | X | | |
| International Legal Counselors Thailand Ltd. | X | | |
| Jackson Lewis LLP | X | | |
| Jeffer, Mangels, Butler & Marmaro | X | | |
| Jeffery Peter Onions QC | X | | |
| Jenner & Block LLP | X | | |
| Jenner and Block LLP | X | | |
| Jones Day | X | | |
| Juris Law Offices | X | | |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| **Position in Case and Name** | **No Relationship** | **Prior Relationship** | **Current Relationship** |
| Kahrl & Wutcher LLP | X | | |
| Kellerhals Hess | X | | |
| Kelly Matthew Wright | X | | |
| Kepley Brouscious & Biggs | X | | |
| Klavins & Slaidins | X | | |
| Kleyr Grasso Associes | X | | |
| Kramer Levin Naftalis & Frankel LLP | X | | |
| Krebsbach & Snyder, P.C. | X | | |
| Krieg Devault LLP | X | | |
| L.B. Smithplein 3 | X | | |
| Latham & Watkins LLP | | | X |
| Lazard Freres & Co. | X | | |
| Lewis and Roca LLP | X | | |
| Locke Lord Bissell & Liddell LLP | X | | |
| Lombardo Dufresne | X | | |
| LS Horizon Ltd. | X | | |
| Luboja & Thau, LLP | X | | |
| Mandel, Katz & Brosnan LLP | X | | |
| Mannheimer Swartling Advokatbyrå Ab | X | | |
| Maples and Calder (Cayman Office) | X | | |
| Mayo Crowe LLC | X | | |
| Mazars LLP | X | | |
| McCann FitzGerald Solicitors | X | | |
| McDermott Will & Emery LLP | X | | |
| McKee Nelson | X | | |
| McKenna Long & Aldridge LLP | X | | |
| Meitar, Liquornik, Geva & Leshem Brandwein | X | | |
| Menter, Rudin & Trivelpiece, P.C. | X | | |
| Mercer Marsh & McLennan Companies | X | | |
| Merra & Kanakis, P.C. | X | | |
| Milbank, Tweed, Hadley & McCloy LLP | | | X |
| Miller Canfield Paddock Stone | X | | |
| Mitsui Company | X | | |
| MM Arizona Holdings LLC | X | | |
| MMOR Consulting | X | | |
| Momo-o, Matsuo & Namba | X | | |
| Morrison & Foerster LLP | | | X |
| Mourant du Feu & Jeune | X | | |
| Natixis Capital Markets | X | | |
| NautaDutilh N.V. | X | | |
| NBP Clems | X | | |
| Norton Rose LLP | X | | |
| Ogier | X | | |
| Oh-Ebashi LPC & Partners | X | | |
| Pachulski Stang Ziehl & Jones LL | X | | |
| Paul, Hastings, Janofsky & Walker LLP | | | X |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | | | X |
| Pekin & Pekin | X | | |
| PetroVal, Inc. | X | | |
| Pite Duncan | X | | |
| PricewaterhouseCoopers | | | X |
| Prickett Jones & Elliott, P.A. | X | | |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | X | | |
| Raja & Tann | X | | |
| Reilly Pozner & Connelly  LLP | X | | |
| Richard Sheldon QC | X | | |
| Richards, Layton & Finger, P.A. | | | X |

| Gleacher and Company - Lehman Brothers/Archstone Conflict Check | | | |
|---|---|---|---|
| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
| Salvadore Auctions & Appraisals, Inc. | X | | |
| Schulte, Roth, & Zabel LLP | X | | |
| Sidley Austin LLP | | | X |
| Sills Cummis Epstein & Gross P.C. | X | | |
| Simpson Thacher & Bartlett LLP | X | | |
| Skadden, Arps, Slate, Measgher & Flom LLP | X | | |
| Smith Dollar | X | | |
| Snell & Wilmer | X | | |
| Snyder Valuation | X | | |
| Sonnenschein Nath & Rosenthal | X | | |
| Squire, Sanders & Dempsey L.L.P., | X | | |
| Stamford Law Corporation | X | | |
| Stroock, Stroock & Lavan | | | X |
| Sutherland Asbill & Brennan LLP | X | | |
| Thacher Proffitt & Wood LLP | X | | |
| The Madden Law Firm | X | | |
| Tompkins, McGuire, Wachenfeld & Barry LLP | X | | |
| Tozzini Freire Advogados | X | | |
| Travers Smith LLP | X | | |
| Trenam, Kemker, Scharf, Barkin, Frye,O'Neill & Mullis | X | | |
| Valentine S. Grimes & Co. | X | | |
| Wachtel & Masyr LLP | X | | |
| Watson, Farley & Williams (Thailand) Limited | X | | |
| White & Case | | | X |
| Willkie Farr & Gallagher LLP | X | | |
| Wilmer Cutler Pickering Hale and Dorr LLP | | | X |
| Windels Marx Lane & Mittendorf, LLP | X | | |
| Woodbury & Santiago, P.A. | X | | |
| Worldwide Trade Partners | X | | |
| Wynn & Wynn, P.C. | X | | |
| | | | |
| **Professionals Retained by Significant Creditor Groups** | | | |
| Akin Gump Strauss Hauer & Feld LLP | | | X |
| FTI Consulting, Inc. | | X | |
| Houlihan Lokey Howard & Zukin Capital, Inc. | X | | |
| Milbank, Tweed, Hadley & McCloy LLP | | | X |
| Munsch Hardt Kopf & Harr, P.C. | X | | |
| Quinn Emanuel Urquhart Oliver and Hedges LLP | X | | |
| The Wilson Law Firm, PC | X | | |
| | | | |
| **Government and State Regulatory Agencies** | | | |
| Commodity Futures Trading Commission (LBI, NB LLC) | X | | |
| Federal Deposit Insurance Corporation (LB Bank, LB Commercial Bank) | X | | |
| Federal Energy Regulatory Commission (Lehman Brothers Commodity Services Inc.) | X | | |
| Financial Industry Regulatory Authority (non-governmental) | | | X |
| National Futures Association (non-governmental) | | | X |
| New York Stock Exchange (non-governmental) | | | X |
| Office of the Comptroller of Financial Institutions (Lehman Brothers Trust Co.) | X | | |
| Office of Thrift Supervision (LB Bank) | X | | |
| Securities and Exchange Commission | | | X |
| State Bank Commissioner of the State of Delaware (Lehman Brothers Trust Company of Delaware) | X | | |
| State Blue Sky Laws in all 50 states and Puerto Rico | | | X |

Schedule 1

| Position in Case and Name | No Relationship | Prior Relationship | Current Relationship |
|---|---|---|---|
| **Gleacher and Company - Lehman Brothers/Archstone Conflict Check** | | | |
| Utah Commissioner of Financial Institutions (LB Commercial Bank) | X | | |
| | | | |
| **Members of Ad Hoc Ad Hoc Committee of Bondholders of the Main Street Natural Gas, Inc. Gas Project Revenue Bonds** | | | |
| Allstate Insurance Co. | X | | |
| Capital Research Management Co. | X | | |
| Capital Research Management Co. | X | | |
| Franklin Advisors LP | | | X |
| Franklin Federal Intermediate-Term-Tax-Free Income Fund | X | | |
| Franklin Federal Tax-Free Income Fund | X | | |
| Franklin Georgia Tax-Free Income Fund | X | | |
| Franklin High-Yield Tax-Free Income Fund | X | | |
| Independence Holding Co. | X | | |
| Oppenheimer Funds, Inc. | | X | |
| The Vanguard Group | X | | |
| | | | |
| **Members of Informal LBHI Bondholder Group** | | | |
| Alliance Bernstein | | | X |
| Capital Guardian Trust Company | X | | |
| Cyrus Capital Partners, L.P. | X | | |
| King Street Capital Management, L.L.C. | X | | |
| Pacific Management Investment Company | X | | |
| Wexford Capital LLC | X | | |
| York Capital Management | | X | |
| | | | |
| **Current and Former Committee Members** | | | |
| Aegon USA Investment Management | X | | |
| Elliot Management Corp. | X | | |
| Metlife | X | | |
| Mizuho Corporate Bank, Ltd. | | | X |
| RR Donnelley & Sons | X | | |
| Shinsei Bank, Limited | X | | |
| The Bank of NY Mellon | X | | |
| The Royal Bank of Scotland, PLC | X | | |
| The Vanguard Group | X | | |
| U.S. Bank N.A. | X | | |
| Wilmington Trust Company | X | | |

**<u>PROPOSED ORDER</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
:
**In re**                                                    :     **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*    :     **08-13555 (JMP)**
:
**Debtors.**                                    :     **(Jointly Administered)**
:
------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 327(a)**
**AND 328(a) OF THE BANKRUPTCY CODE AND FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE 2014(a) AND 2016 FOR**
**AUTHORIZATION TO EMPLOY AND RETAIN GLEACHER & COMPANY**
**SECURITIES, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF FEBRUARY 17, 2011**

Upon the application dated November 22, 2011 (the "Application")[1] of Lehman

Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11 cases (together,

the "Debtors"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Bankruptcy

Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for authorization to employ and retain Gleacher & Company

Securities, Inc. ("Gleacher") as financial advisor to the Debtors, effective as of February 17, 2011,

on the terms set forth in that certain engagement letter between the Debtors and Gleacher, dated as

of November 18, 2011 (the "Engagement Letter"), and the related indemnification agreement

between LBHI and Gleacher attached as Schedule A to the Engagement Letter (the

"Indemnification Agreement" and, together with the Engagement Letter, the "Engagement

Agreement"), all as more fully set forth in the Application; and upon consideration of the affidavit

of Stephen Hentschel, a managing director and head of real estate investment banking at Gleacher,

---

[1] Capitalized terms that are used but not defined in this order have the meaning ascribed to them in the Application.

sworn to on November 18, 2011; and due and proper notice of the Application having been

provided in accordance with the procedures set forth in the second amended order entered on June

17, 2010 governing case management and administrative procedures for these cases [ECF No.

9635], on:  (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; (vi) Gleacher; and (vii) all parties who have requested notice in

these chapter 11 cases, and it appearing that no other or further notice need be provided; and the

Court having found and determined that the relief sought in the Application is in the best interests

of the Debtors, their estates and their creditors, and all parties in interest and that the legal and

factual bases set forth in the Application establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided for herein; and it is further

ORDERED that pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and

Bankruptcy Rules 2014(a) and 2016, the Debtors are authorized to employ and retain Gleacher as

their financial advisor, effective as of February 17, 2011, in accordance with the terms and

conditions of the Engagement Agreement and this Order; and it is further

ORDERED that the terms of the Engagement Letter are approved and the Debtors

will be bound by such terms, and Gleacher shall be compensated and reimbursed for the services

identified and the Fee and Expense Structure set forth in the Engagement Letter and Application

pursuant to section 328(a) of the Bankruptcy Code; and it is further

ORDERED that the Fee and Expense Structure is hereby approved and Gleacher

shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code, and

not subject to any other standard of review under section 330 of the Bankruptcy Code; and it is further

ORDERED that Gleacher shall apply to the Court for compensation and reimbursement of expenses for all fees payable in connection with an Archstone Transaction pursuant to the standard of review described above, and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures that have been or may be fixed by order of this Court, including but not limited to the Court's Fourth Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No. 15997], the Court's Order Amending the Fee Protocol [ECF No. 15998] and General Order M-389; and it is further

ORDERED that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any orders of this Court or any guidelines regarding submission and approvals of fee applications, Gleacher and its professionals shall only be required to maintain time records for services rendered after the date of the Application and such time records shall be maintained in half-hour increments; and it is further

ORDERED that, notwithstanding the foregoing, the United States Trustee retains all rights to object to fees payable to Gleacher in connection with any Archstone Transaction, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code; *provided, however*, that the number of hours expended by Gleacher shall not be the determinant of such reasonableness; and it is further

ORDERED that the Indemnification Agreement is approved and LBHI will be bound by such terms during the pendency of the Debtors' chapter 11 cases; and it is further

ORDERED that, during the pendency of the Debtors' chapter 11 cases, in the event Gleacher seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Gleacher's own fee application and such invoices and time records shall be subject to the U.S. Trustee guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that to the extent that there may be any inconsistency between the terms of the Application, the Engagement Agreement or this Order, the terms of this Order shall govern; and it is further

ORDERED that this Court will retain jurisdiction to construe and enforce the Engagement Agreement and this Order.

Dated: _____, 2011
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE