UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                                    Case No. 08-13555

LEHMAN BROTHERS                                           Chapter 11
HOLDINGS, INC., et al.,
                                                          Jointly Administered
                              Debtors

### NOTICE OF PARTIAL TRANSFER OF
### CLAIM PURSUANT TO RULE 3001(e)

PLEASE TAKE NOTICE that $4,000,000.00 of or an undivided 32.971% ownership interest in the claim set forth below (the "Transferred Claim"), of Highland Credit Strategies Master Fund, L.P. ("Assignor") filed as an original or amended Proof of Claim against the Debtor(s):

| Proof of Claim Amount | Proof of Claim No. |
|---|---|
| 12,132,000 | 16840 |

has been transferred and assigned to Citigroup Financial Products Inc. ("Assignee"). The signature of Assignor on this document is evidence of the transfer of $4,000,000.00 of or an undivided 32.971% ownership interest in the claim and all rights thereto.

Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Assignee herein as the valid owner of the Transferred Claim. You are hereby requested to make all future payments and distributions, and to give all notices and other communications, in respect of the Transferred Claim to the Assignee.

ASSIGNEE:  Citigroup Financial Products Inc.          ASSIGNOR:  Highland Credit Strategies
Address:   Citigroup Financial Products Inc.                     Master Fund, L.P.
           390 Greenwich Street, 4th Floor           Address:   Highland Credit Strategies
           New York, NY 10013                                   Master Fund, L.P.
           Attention: Mark Heimowitz                            c/o Highland Capital
                                                                Management, LP
                                                                13455 Noel Road, Suite 800
Signature: _____                             Dallas, TX 75240
Name:      BRIAN BLESSING
Title:     AUTHORIZED SIGNATORY                       Signature: _____
                                                      Name:
With a copy to:                                       Title:     CARTER CHISM
                                                      Date:      AUTHORIZED SIGNATORY
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attn:  Douglas R. Davis
Phone: 212-373-3000
Email: ddavis@paulweiss.com

-22-

D1995045

IN WITNESS WHEREOF, the undersigned have executed and delivered this Assignment and Transfer of Claim Agreement as of the date first stated above.

**HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.**
By: Highland General Partner, L.P., its general partner
By: Highland GP Holdings, LLC, its general partner
By: Highland Capital Management, L.P., its sole member
By: Strand Advisors, Inc., its general partner

By: _____

Name: _____
       CARTER CHISM
Title: _____
      AUTHORIZED SIGNATORY

**CITIGROUP FINANCIAL PRODUCTS INC.**
By: _____

Name: _____
    BRIAN BLESSING
Title: _____
    AUTHORIZED SIGNATORY

D1995045

## ASSIGNMENT AND TRANSFER OF CLAIM AGREEMENT

ASSIGNMENT AND TRANSFER OF CLAIM AGREEMENT ("Agreement") dated as of this 8th day of November 2011, by and between Highland Credit Strategies Master Fund, L.P. ("Seller") and Citigroup Financial Products Inc. ("Purchaser"; Seller and Purchaser are referred to herein collectively as the "Parties" and individually as a "Party").

## RECITALS

A.      Seller and Lehman Brothers Special Financing Inc. ("LBSFI") are party to that certain ISDA Master Agreement dated as of July 1, 2008 (the "ISDA Master Agreement").

B.      Lehman Brothers Holdings Inc. ("LBHI"; and, together with LBSFI, each a "Debtor" and collectively the "Debtors") is a Credit Support Provider under the ISDA Master Agreement and a Guarantor pursuant to a guaranty agreement.

C.      Pursuant to the ISDA Master Agreement, Seller and LBSFI entered into the transactions described in the LBSFI Proof of Claim (as such term is defined herein).

D.      On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), and is currently in proceedings for reorganization in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), administered under Chapter 11 Case No. 08-13555 (JMP) et seq. (the "Bankruptcy Proceedings"). On October 3, 2008, LBSFI filed a voluntary petition under chapter 11 of the Bankruptcy Code, and is currently in proceedings for reorganization in the Bankruptcy Court, and is administered under Chapter 11 Case No. 08-13888 (JMP) and is jointly administered with the Bankruptcy Proceedings.

E.      On or about September 22, 2008, by notice to LBSFI, Seller designated an Early Termination Date (as defined in the ISDA Master Agreement) in respect of all outstanding Transactions (as defined in the ISDA Master Agreement) and determined the amount payable in respect of the Early Termination Date (as defined in the ISDA Master Agreement).

F.      On December 16, 2008, the Bankruptcy Court entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption of Prepetition Derivatives Contracts [Dkt. No. 2257] (the "Settlement Order").

G.      Pursuant to the Settlement Order, on September 15, 2009, Seller, LBSFI, and LBHI entered into a Termination Agreement (the "Termination Agreement") to resolve certain claims arising under the ISDA Master Agreement. Pursuant to the Termination Agreement, LBSFI and LBHI agreed to the allowance of (i) a general, unsecured claim in the amount of $12,132,000.00 against LBSFI, and (ii) a general, unsecured claim in the amount of $12,132,000.00 against LBHI, in settlement of the claims held by Seller arising under the ISDA Master Agreement (as more particularly described below as the LBSFI Proof of Claim and the LBHI Proof of Claim); provided, however, the aggregate recovery of Seller was not to exceed $12,132,000.00.

H.      Seller filed the LBSFI Proof of Claim (as such term is defined herein) on September 16, 2009.

I.      Seller filed the LBHI Proof of Claim (as such term is defined herein) on September 18, 2009.

J.      On September 24, 2010, the Debtors filed their Forty-Fifth Omnibus Objection to Claims

(Settled Derivative Claims) [Dkt. No. 11582] (the "Objection"). The LBSFI Proof of Claim and the LBHI Proof of Claim were among the objected claims in the Objection. The Objection sought an order providing (i) that the amount claimed in the LBSFI Proof of Claim was for an allowed unsecured claim in an amount equal to $12,132,000.00; and (ii) that the amount claimed in the LBHI Proof of Claim was for an allowed unsecured claim in an amount equal to $12,132,000.00. On November 10, 2010, the Order Granting Debtors' Forty-Fifth Omnibus Objection to Claims (Settled Derivative Claims) [Dkt. No. 12669] (the "Objection Order") was entered in the Bankruptcy Proceedings providing that (i) the LBSFI Proof of Claim (as hereinafter defined) was allowed as a general, unsecured claim in an amount not greater than $12,132,000.00 (the "LBSFI Claim Amount") and (ii) the LBHI Proof of Claim was allowed as a general, unsecured claim against LBHI in an amount not greater than $12,132,000.00 (the "LBHI Claim Amount").

K.      Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Transferred Rights (as such term is defined herein) on the terms and conditions set forth herein.

In consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      Seller's Claims. Seller hereby represents and warrants to Purchaser and Purchaser's successors and assigns as of the Effective Date that:

(a)     a proof of claim, date-stamped September 16, 2009 and assigned claim number 13206 (the "LBSFI Proof of Claim", of which a true and complete copy is attached to this Agreement as Exhibit A-1) was duly and timely filed by Seller against LBSFI in the amount of $12,534,685.60 (such claim is hereinafter referred to as the "LBSFI Claim") on account of LBSFI's direct obligations to Seller under the ISDA Master Agreement and the Termination Agreement, which, except with respect to the resolution of the Objection by the Objection Order as described above, LBSFI Proof of Claim has not been revoked, withdrawn, amended or modified and no right thereunder has been waived, and all statements in the LBSFI Proof of Claim are true and correct as of the date hereof and no other proof of claim or other document has been submitted by Seller with respect to the LBSFI Claim;

(b)     a proof of claim, date-stamped September 18, 2009 and assigned claim number 16840 (the "LBHI Proof of Claim", of which a true and complete copy is attached to this Agreement as Exhibit B-1) was duly and timely filed by Seller against LBHI in the amount of $12,132,000.00 (such claim is hereinafter referred to as the "LBHI Claim") on account of LBHI's guaranty obligation to Seller under the ISDA Master Agreement and the Termination Agreement, which, except with respect to the resolution of the Objection by the Objection Order as described above, LBHI Proof of Claim has not been revoked, withdrawn, amended or modified and no right thereunder has been waived, and all statements in the LBHI Proof of Claim are true and correct as of the date hereof and no other proof of claim or other document has been submitted by Seller with respect to the LBHI Claim;

(c)     a Derivative Questionnaire (as such term is defined in the Bar Date Order[1]) was duly and timely filed electronically by Seller against LBSFI on October 12, 2009 (the "LBSFI Derivative Questionnaire") and, except with respect to the resolution of the Objection by the Objection Order as described above, has not been revoked, withdrawn, amended or modified and no right thereunder has been waived, and all statements in the LBSFI Derivative

---

[1]     The term "Bar Date Order" refers to that certain Order, entered on July 2, 2009, pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Dkt. No. 4271].

D1995045

<u>Questionnaire</u> are true and correct as of the date hereof and a true and complete copy of the filing confirmation acknowledging completion of the <u>LBSFI Derivative Questionnaire</u> is attached to this Agreement as <u>Exhibit A-2</u>;

(d)     a Guarantee Questionnaire (as such term is defined in the Bar Date Order) was duly and timely filed electronically by Seller against LBHI on October 12, 2009 (the "<u>LBHI Guarantee Questionnaire</u>") and, except with respect to the resolution of the Objection by the Objection Order as described above, has not been revoked, withdrawn, amended or modified and no right thereunder has been waived, and all statements in the LBHI Guarantee Questionnaire are true and correct as of the date hereof and a true and complete copy of the filing confirmation acknowledging completion of the LBHI Guarantee Questionnaire is attached to this Agreement as <u>Exhibit B-2</u>;

(e)     pursuant to Section 1 of the Termination Agreement, the aggregate recovery of Seller with respect to its Claims (as defined herein) shall not exceed the settlement amount of $12,132,000.00; and

(f)     the Official Committee of Unsecured Creditors under the Bankruptcy Proceedings (the "<u>Committee</u>") has consented to such Settlement Amount against each of LBSFI and LBHI, as confirmed in an electronic message from counsel to the Committee (the "<u>Committee Email</u>"), a true and complete print-out of which is attached hereto as <u>Exhibit D</u>.

2.     <u>Assignment and Transfer of Seller's Claims.</u>

(a)     In consideration of the Purchase Price (as defined herein), the mutual covenants and agreements in, and subject to the terms and conditions of, this Agreement:

(i)     subject to the satisfaction or waiver of the conditions in Section 4(b), Seller irrevocably sells, transfers, assigns, grants and conveys the Transferred Rights (as hereinafter defined) to Purchaser with effect on and after the Effective Date; and

(ii)     subject to the satisfaction or waiver of the conditions in Section 4(a), Purchaser irrevocably acquires and assumes the Transferred Rights (as hereinafter defined) with effect on and after the Effective Date.

(b)     As used herein, the following terms shall have the meanings set forth below:

"<u>Average LIBOR</u>" means (i) the sum of all the individual LIBOR for each day in the applicable period, divided by (ii) the total number of days in such period.

"<u>Claim</u>" or "<u>Claims</u>" means the LBSFI Claim and the LBHI Claim individually or collectively.

"<u>LIBOR</u>" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("<u>BBA</u>") and published by the BBA at approximately 11:00 a.m. London time on such day. For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

"<u>Transferred Rights</u>" means, collectively, the Transferred LBSFI Rights and the Transferred LBHI Rights.

"<u>Transferred LBHI Rights</u>" means $4,000,000.00 of the LBHI Claim Amount or an undivided 32.971% ownership interest in Seller's right, title and interest in, to and under:

(i)     the LBHI Claim, including, without limitation, "claims" as defined in Section 101(5)

-3-

of the Bankruptcy Code, any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the LBHI Claim (in each case whether accruing prior to, on or after the date of this Agreement), if any, and, to the extent relating to the LBHI Claim, accounts, accounts receivable and other rights and interest of Seller against LBHI, including, without limitation, all of Seller's right, title and interest in, to and under the LBHI Proof of Claim and LBHI Guarantee Questionnaire, if any;

(ii)     any actions, claims, rights, lawsuits and/or causes of action, whether against LBHI or any other party, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LBHI Claim;

(iii)    all rights in, to and under any collateral or guarantees related to the LBHI Claim;

(iv)    all transfer agreements, if any, under which Seller or any prior seller acquired the rights underlying or constituting the LBHI Claim, but only to the extent related to the LBHI Claim;

(v)     all cash, securities, instruments and other property which may be paid or distributed by LBHI in satisfaction of LBHI Claim under or pursuant to any plan of reorganization or liquidation in the Bankruptcy Proceedings, any redemption, restructuring or other liquidation or otherwise;

(vi)    all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing; and

(vii)   for the avoidance of any doubt, the Transferred LBHI Rights do not include any claims, or any proofs of claim filed by Seller against LBHI or any affiliate of LBHI, including any foreign affiliates such as, but not limited to, Lehman Brothers International (Europe) ("LBIE"), or any other rights against LBHI or obligations owed by LBHI, that Seller possesses against LBHI other than those arising from, contained in or related to the ISDA Master Agreement, the LBHI Proof of Claim, the LBHI Guarantee Questionnaire and the Termination Agreement.

"Transferred LBSFI Rights" means $4,000,000.00 of the LBSFI Claim Amount or an undivided 32.971% ownership interest in Seller's right, title and interest in, to and under:

(i)     the LBSFI Claim, including, without limitation, any and all right to receive principal, interest, fees, damages, penalties, dividends and other amounts in respect of the LBSFI Claim (in each case whether accruing prior to, on or after the date of this Agreement), if any, and, to the extent relating to the LBSFI Claim, accounts, accounts receivable and other rights and interest of Seller against LBSFI, including, without limitation, all of Seller's right, title and interest in, to and under the LBSFI Proof of Claim, if any;

(ii)    any actions, claims, rights, lawsuits and/or causes of action, whether against LBSFI or any other party, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LBSFI Claim;

(iii)   all rights in, to and under any collateral or guarantees related to the LBSFI Claim;

(iv)    all transfer agreements, if any, under which Seller acquired the rights underlying or constituting the LBSFI Claim, but only to the extent related to the LBSFI Claim;

-4-

(v)    all cash, securities, instruments and other property which may be paid or distributed by LBSFI in satisfaction of LBSFI Claim under or pursuant to any plan of reorganization or liquidation in the Bankruptcy Proceedings, any redemption, restructuring or other liquidation or otherwise;

(vi)    all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing; and

(vii)    for the avoidance of any doubt, the Transferred LBSFI Rights do not include any claims, or any proofs of claim filed by Seller against LBSFI or any affiliate of LBSFI, including any foreign affiliates such as, but not limited to, LBIE, or any other rights against LBSFI or obligations owed by LBSFI, that Seller possesses against LBSFI other than those arising from, contained in or related to the ISDA Master Agreement, the LBSFI Proof of Claim, the LBSFI Derivative Questionnaire and the Termination Agreement.

(c)    For the avoidance of doubt, the sale and assignment of the Transferred Rights shall be deemed an absolute and unconditional assignment of the Transferred Rights.

(d)    From and after the date on which Purchaser is, or is deemed to be, substituted for Seller pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Purchaser shall be deemed to be owner of the Transferred Rights, and shall be entitled to identify itself as the owner of the Transferred Rights on the records of each of the Debtors and their respective affiliates in the Proceedings, or the Bankruptcy Court.  If for any reason Purchaser is not substituted or not deemed to be substituted for Seller, then the Parties intend that the contribution be a true participation of the Transferred Rights until such time when the Bankruptcy Court recognizes the transfer and substitution of Purchaser for Seller.

3.    <u>Purchase Price</u>.  The consideration paid by Purchaser to Seller is the sum of (a) the product of the LBHI Purchase Rate (as specified in the purchase price terms contained in <u>Schedule 1</u> hereto) and the LBHI Proof of Claim Amount (the "<u>LBHI Purchase Price</u>") and (b) the product of the LBSFI Purchase Rate (as specified in the purchase price terms contained in <u>Schedule 1</u>) and the LBSFI Claim Amount (the "<u>LBSFI Purchase Price</u>"; and the sum of the LBHI Purchase Price and the LBSFI Purchase Price being the "<u>Purchase Price</u>").  Upon the satisfaction of the conditions set forth in Section 4(a), Purchaser shall immediately and irrevocably pay to Seller the Purchase Price by wire transfer of immediately available funds in US dollars to Seller's account specified on <u>Schedule 2</u>. The date the Purchase Price is paid shall be hereinafter referred to as the "<u>Effective Date</u>".

4.    <u>Conditions Precedent</u>.

(a)    Purchaser's obligations to pay the Purchase Price to Seller and to acquire the Transferred Rights on the Effective Date shall be subject to the conditions that:

(i)    Seller's representations and warranties in this Agreement shall be true and correct on the Effective Date;

(ii)    Seller shall have complied in all material respects with all covenants required in this Agreement to be complied with by it on or before the Effective Date; and

(iii)    Purchaser shall have received (A) this Agreement duly executed on behalf of Seller, (B) an Evidence of Transfer of Claim in the form attached hereto as <u>Exhibit C</u>, duly executed on behalf of Seller, to be filed by the Purchaser with the Bankruptcy Court together with a transfer notice evidencing the transfer of the Transferred LBHI Rights

to Purchaser under Bankruptcy Rule 3001(e) (the "<u>LBHI Notice of Transfer</u>"), and (C) an Evidence of Transfer of Claim in the form attached hereto as <u>Exhibit C</u>, duly executed on behalf of Seller, to be filed by the Purchaser with the Bankruptcy Court together with a transfer notice evidencing the transfer of the Transferred LBSFI Rights to Purchaser under Bankruptcy Rule 3001(e) (the "<u>LBSFI Notice of Transfer</u>") (the documents referenced in clauses (A) through (C), collectively, the "<u>Assignment Documents</u>").  The Assignment Documents shall be provided by the Purchaser and approved by Seller.

(b) Seller's obligation to sell, transfer, assign, grant, and convey the Transferred Rights to Purchaser on the Effective Date shall be subject to the conditions that:

(i) Purchaser's representations and warranties in this Agreement shall be true and correct on the Effective Date;

(ii) Purchaser shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Effective Date; and

(iii) Seller shall have received (A) this Agreement duly executed on behalf of Purchaser, and (B) payment of the Purchase Price from Purchaser.

5. <u>Mutual Representations of Seller and Purchaser</u>. Each of Seller and Purchaser hereby represents and warrants to the other Party, and to the other Party's successors and assigns, as of the Effective Date that:

(a) it is duly organized and validly existing under the laws of its jurisdiction of organization, in good standing under such laws, and has full power and authority and has taken all action necessary to execute and deliver each Assignment Document and to perform its obligations under each Assignment Document and to consummate the transactions contemplated by each Assignment Document;

(b) the execution, delivery and performance by it of each Assignment Document does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound;

(c) each Assignment Document has been duly and validly authorized, executed and delivered by it and is legal, valid, binding and enforceable against it in accordance with its terms except that the enforceability may be limited by bankruptcy, insolvency or laws governing creditors rights generally;

(d) it acknowledges that (i) the other Party currently may have, and later may come into possession of, information relating to the Transferred Rights, Debtors, or Debtors' affiliates or the status of the Bankruptcy Proceedings that is not known to it and that may be material to a decision to transfer or acquire/assume the Transferred Rights and all related rights (as appropriate) (the "<u>Excluded Information</u>"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Transferred Rights and all related rights (as appropriate) hereunder without receiving the Excluded Information, and (iii) the other Party shall have no liability to it, and each Party waives and releases any claims that it might have against the other Party or the other Party's officers, directors, employees, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that each Party's Excluded Information shall not and does not affect the truth or accuracy of such Party's representations or warranties in this Agreement;

(e) it is aware that the Purchase Price may differ both in kind and amount from any distributions

D1995045

or dividends ultimately made pursuant to any plan of reorganization confirmed by the Bankruptcy Court in the Bankruptcy Proceedings and that Seller is not responsible for any difference in the distribution in the Bankruptcy Proceedings with respect to the Claims from the Purchase Price;

(f)    except for filings that are expressly contemplated in this Agreement, no notice to, consent of, registration with, or approval of, or any other action by, any relevant person or entity (including any state, federal or other regulatory agency or commission) is or will be required to execute, deliver and perform its obligations under this Agreement or for the assignment contemplated herein to become effective; and

(g)    (i) it has adequate information concerning the business and financial condition of the Debtors, the Transferred Rights and the status of the Proceedings in order to make an informed decision regarding the purchase and sale under this Agreement, (ii) it is able to bear the economic risk associated with the sale and purchase of the Transferred Rights; (iii) it has such knowledge and experience, and has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights and assumption of liabilities of the type contemplated in this Agreement; and (iv) it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities in this Agreement. Each party acknowledges that the other party has not given it any investment advice, credit information, or opinion on whether the purchase of the Transferred Rights is prudent.

(h)    Assignee is, and should in all respects hereof be deemed to be, a "purchaser" and not an "assignee" with respect to the Transferred Rights, as such terms are discussed and contrasted in *In re Enron Corp. v. Springfield Associates L.L.C.*, 379 B.R. 425 (S.D.N.Y. 2007).

6.    <u>Additional Representations and Warranties of Seller</u>. Seller hereby represents and warrants to Purchaser and to Purchaser's successors and assigns as of the Effective Date that:

(a)    except as described in Recital J, it has not received notice of any objection, expunction, defense or counterclaim relating specifically to the LBSFI Claim, the LBHI Claim or the other Transferred Rights by or on behalf of any Debtor or any other party to reduce the amount of the Transferred Rights or to reduce the value of or impair the Claims;

(b)    as provided in the Objection Order, the LBSFI Claim has been allowed in an amount not greater than $12,132,000.00, and no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred LBSFI Rights;

(c)    as provided in the Objection Order, the LBHI Claim has been allowed in an amount not greater than $12,132,000.00, and no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred LBHI Rights;

(d)    Seller is the sole legal and beneficial owner of and has good and marketable title to the Transferred Rights, free and clear of any and all liens, claims, rights of setoff, security interests, participations, or encumbrances of any kind or nature whatsoever existing as of the Effective Date and will transfer to Purchaser such good and marketable title to the Transferred Rights, free and clear of any and all liens, claims, rights of setoff, security interests, participations, or encumbrances of any kind or nature whatsoever existing as of the Effective Date;

(e)    Seller (i) has not previously sold, conveyed, transferred, assigned, participated, pledged or otherwise encumbered the Transferred Rights, in whole or in part, to any person (or agreed to do any of the foregoing) and (ii) is the original creditor of the Debtors and original holder of

D1995045

the Transferred Rights;

(f)    Seller has not engaged and will not engage in any acts, conduct or omission and Seller has not had any relationship with any Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Rights proportionately less payments or distributions or less favorable treatment (including timing of payments and distributions) than other unsecured creditors of such Debtor;

(g)    Seller does not, and did not on the date of the commencement of the Bankruptcy Proceedings against any Debtor, hold any funds or property of such Debtor of any affiliate of such Debtor;

(h)    the designation of the Early Termination Date under and as defined in the ISDA Master Agreement, giving rise to the Claims, was effected by Seller in accordance with the terms of the ISDA Master Agreement and not in violation of any law to which Seller or the Proceedings are subject, and is reflected in the LBHI Proof of Claim and the LBSFI Proof of Claim;

(i)    to the best of Seller's knowledge, the amount payable by the Debtors in respect of the Early Termination Date has been calculated (including but not limited to the conversion of currencies) by Seller in accordance with the terms of the ISDA Master Agreement;

(j)    the Seller, LBSFI, and LBHI agreed to settle the Claims pursuant to the procedures set forth in the Settlement Order, resulting in the Sellers, LBSFI, and LBHI entering into and executing the Termination Agreement;

(k)    to the best of Seller's knowledge, Seller did not breach any terms or provisions of the ISDA Master Agreement or the related guaranty;

(l)    to the best of Seller's knowledge, Seller did not breach any terms or provisions of the Termination Agreement;

(m)    Seller has no obligation or liability to the Debtors related to or in connection with the Claims, except as set out in the LBSFI Proof of Claim and the LBHI Proof of Claim;

(n)    Seller (i) is not an "affiliate" or "insider" within the meaning of 11 U.S.C. §§101(2) and 101(31), respectively, and is not, and has not been, a member of any official or unofficial creditors' committee appointed in the Bankruptcy Proceedings; and (ii) is not, and shall not be or become, an "underwriter" in respect of all or any part of the Transferred Rights within the meaning of Section 1145 of the Bankruptcy Code;

(o)    Seller has provided to Purchaser (i) complete and accurate copies of all each of the documents related to the Claims or any transfer thereof and all notices, documents and agreements relating thereto, each as amended through the date hereof, which copies are true and complete as of the date hereof and have not been withdrawn, amended or modified and (ii) a complete and accurate summary of all non-written material related to the Claims or the Transferred Rights, if any;

(p)    either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more Prohibited Transaction Exemptions ("PTEs"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions

-8-

determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights. As used herein, "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan";

(q)    as provided for in the Termination Agreement, LBSFI and LBHI have agreed to the allowance of the Claims as general, unsecured claims in an amount not greater than $12,132,200.00; and

 (r)    to the best of Seller's knowledge, there currently are no preference actions against Seller arising out of the Claims.

7.    <u>Additional Representations and Warranties of Purchaser</u>. Purchaser hereby represents and warrants to Seller and to Seller's successors and assigns as of the Effective Date that:

(a)    Purchaser is entitled to receive any payments and distributions to be made to it hereunder without the withholding of any tax; and will furnish to Seller such forms, certifications, statements and other documents as Seller may request from time to time to evidence Purchaser's exemption from the withholding of any tax imposed by any jurisdiction or to enable Seller to comply with any applicable laws or regulations relating thereto;

(b)    [reserved]

(c)    either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Purchaser's rights thereunder;

(d)    without characterizing the Transferred Rights as a "security" within the meaning of applicable securities laws, Purchaser is not purchasing the Transferred Rights with a view towards the sale or distribution thereof in violation of the U.S. Securities Act of 1933, as amended; provided, however, that Purchaser may resell the Transferred Rights; and

(e)    Purchaser understands that the Claims are based upon, and controlled by, the Termination Agreement.  Purchaser is not obtaining any additional "claims" as defined in Section 101(5) of the Bankruptcy Code that the Seller possesses against LBSFI or LBHI (or any other third party) that is not provided for in the Termination Agreement.

8.    <u>Acknowledgments.</u>

(a)    Purchaser acknowledges that (i) Seller makes only the representations and warranties set forth above, (ii) the transfer of the Transferred Rights by Seller to Purchaser is irrevocable and is without representation or warranty, whether express or implied, of any kind or character by Seller except as expressly provided in this Agreement, (iii) Seller makes no representation or warranty and assumes no responsibility with respect to any statements, warranties, or representations made by any person other than Seller in or in connection with the LBSFI Proof

-9-

of Claim or the LBHI Proof of Claim or the execution, legality, validity, or enforceability (with respect to any person other than Seller) of the LBSFI Proof of Claim or LBHI Proof of Claim; (iv) Seller makes no representation or warranty and assumes no responsibility with respect to the financial condition, creditworthiness, properties, affairs, status or nature of the Debtors or the performance or observance by the Debtors of any of their respective obligations under the LBSFI Proof of Claim or LBHI Proof of Claim or any other instrument or document; and (v) Purchaser shall have no recourse to Seller, except for (x) Seller's breaches of its representations, warranties, or covenants expressly stated in this Agreement and (y) Seller's indemnities, in each case as expressly stated in this Agreement; and (vi) while Seller has not previously sold, conveyed, transferred, assigned, participated, pledged or otherwise encumbered the Transferred Rights, in whole or in part, to any party (or agreed to do any of the foregoing), Seller may have already, or may in the future, take such actions with respect to portions of the LBHI Claim Amount and the LBSFI Claim Amount that are not included in the Transferred Rights.

(b)     Seller acknowledges that (i) its sale of the Transferred Rights to Purchaser is irrevocable and (ii) Seller shall have no recourse to Purchaser, except for (x) Purchaser's breaches of its representations, warranties, or covenants and (y) Purchaser's indemnities, in each case as expressly stated in this Agreement.

9.     <u>Indemnification</u>.

Seller agrees to indemnify, defend and hold Purchaser and Purchaser's respective officers, directors, employees, agents and controlling persons and their respective successors and assigns (collectively, the "<u>Purchaser Indemnitees</u>") harmless from and against any and all expenses, losses, claims, damages, suits, proceedings, objections and liabilities which are actually incurred by the Purchaser Indemnitees or any of them, including, but not limited to, attorneys' fees and expenses, caused by, or in any way resulting from or relating to (i) the breach of any of Seller's representations, warranties, agreements or covenants expressly stated in this Agreement or (ii) any obligation to disgorge to or reimburse or pay any person for any payments, property or collateral actually received or applied by Seller under or in connection with the Transferred Rights.

10.    <u>Attorney-In-Fact; Settlement of Seller's Claim; Further Actions</u>.

(a)     Seller hereby irrevocably appoints Purchaser as its true and lawful attorney-in-fact solely with respect to the Transferred Rights, and authorizes Purchaser to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such amounts which are, or may hereafter become, due and payable for or on account of the Transferred Rights herein assigned. Seller hereby grants unto Purchaser full authority to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder. Seller agrees that the powers granted in this paragraph are discretionary in nature and exercisable at the sole option of Purchaser. Purchaser shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Transferred Rights. In the event the Purchaser does take any affirmative actions in connection with the Transferred Rights, including any affirmative actions to prove, defend, or with respect to proving the validity or amount of the Transferred Rights, then the Purchaser solely, and without any recourse against Seller, shall be responsible for any fees, costs, or other expenses taken in connection therewith.

(b)     Seller shall not compromise or settle the Transferred Rights or change the LBSFI Proof of Claim or the LBHI Proof of Claim without the prior written consent of Purchaser. In performing any of its obligation under this Section 10 and in otherwise complying with its obligations under this Agreement, Seller hereby covenants and agrees to act reasonably at all times.

-10-

(c)     Seller further agrees that if Seller receives any distributions on account of the Transferred Rights, whether in the form of cash, securities, instruments or any other property, the aforementioned shall constitute property of the Purchaser to which the Purchaser has an absolute  right. Seller shall hold such property in trust and will at its own expense, deliver to Purchaser any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Purchaser within two business days of receipt in the case of cash and five business days in the case of securities. Should all or any portion of the distributions on account of the Transferred Rights not be assignable by Seller to Purchaser, then Seller grants to Purchaser a participation interest in the Transferred Rights or such distributions, in accordance with applicable law.

11.    Miscellaneous.

(a)    Further Assurances.

(i) Each of the Parties hereto agrees to execute and/or deliver, or cause to be executed and/or delivered, all such instruments and documents (including, without limitation, any supporting documents evidencing the Transferred Rights), and to take all such action as the other Party may reasonable request, promptly upon the request of such other Party and at each Party's own expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement and to cause Purchaser to become the legal and beneficial owner and holder of the Transferred Rights.

(ii) Seller agrees to deal with Purchaser or any of Purchaser's direct or indirect assignees, if applicable, in respect of all matters described in this Clause 11(a) and, if dealing directly with any of Purchaser's direct or indirect assignees in accordance with Purchaser's instructions, shall be deemed to have discharged its obligations under this Clause 11(a) relating to Purchaser.

(b)    Further Transfers. Seller hereby acknowledges that Purchaser may at any time reassign any or all of the Transferred Rights, together with all right, title and interest of Purchaser in to, and under this Agreement without the prior consent of or notice to the Seller.

(c)    Survival. All representations, warranties, covenants and agreements contained herein shall survive the Effective Date and the execution, delivery and performance of this Agreement and any sale, assignment, participation or transfer by Purchaser of any or all of the Transferred Rights, and shall inure to the benefit of Seller, Purchaser and their respective successors and assigns; provided, however, that the obligations of Seller and Purchaser contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied.

(d)    Interest.  If either Party fails to make a payment or distribution to the other Party within the time period specified in this Agreement, the Party failing to make full payment of any amount when due shall, upon five days written demand by the other Party, pay such amount due together with interest on it for each day from (and including) the date when due to (but excluding) the date when actually paid, at a rate per annum equal to Average LIBOR.

(e)    No Set-Off. Each payment to be made by either Party hereunder shall be made without set-off, counterclaim or deduction of any kind.

(f)    Governing Law; Jurisdiction; Service of Process. The laws of the State of New York shall govern this Agreement, without regard to any conflict of laws provisions thereof. Each Party submits to the jurisdiction of the federal or state courts located in the County of New York, State of New York and agrees that any litigation relating to this Agreement shall be brought only in such courts. Each Party consents to service of process by certified mail at its address

-11-

listed in <u>Schedule 2</u> hereto.

(g)   <u>Counterpart Execution</u>. This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all of which, together constitute one and the same instrument. Transmission by facsimile or electronic mail of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

(h)   <u>WAIVER OF JURY TRIAL</u>. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)   <u>3001(e) Transfer</u>. Seller hereby acknowledges and consents to all terms set forth in this Agreement and, upon timely payment of the Purchase Price as provided above, waives its right to raise any objection thereto and its right to receive notice pursuant to Bankruptcy Rule 3001(e), and consents to the substitution of Seller by Purchaser for all purposes in the Bankruptcy Proceedings, including, without limitation, for voting and distribution purposes with respect to the Transferred Rights. Purchaser agrees to file the LBSFI Notice of Transfer and LBHI Notice of Transfer with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e).

(j)   <u>Tax Forms</u>. Purchaser hereby agrees to provide to Seller such forms, certifications, statements and other documents as Seller may request from time to time to evidence Purchaser's exemption from the withholding of any tax imposed by any jurisdiction or to enable Seller to comply with any applicable laws or regulations relating thereto.

(k)   <u>Notices; Payments by Wire Transfer</u>. All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth on <u>Schedule 2</u> hereto, or such other address as may be furnished hereafter by notice in writing. All payments by Seller to Purchaser and Purchaser to Seller under this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds to Seller and Purchaser, as applicable, in accordance with the wire instructions specified in <u>Schedule 1</u>.

(l)   <u>Integration</u>. This Agreement, together with any schedules and exhibits hereto, constitutes the entire agreement and understanding between the Parties with respect to the Claims and supersedes all prior agreements, understandings or representations pertaining to the Claims, whether oral or written. There are no warranties, representations or other agreements between the Parties in connection with the Claims except as specifically and expressly set forth herein.

(m)   <u>Captions and Headings</u>. The captions and headings in this Agreement are for convenience only and are not intended to be full or accurate descriptions of the contents thereof. Such captions and headings shall not be deemed to be part of this Agreement and in no way define, limit, extend or describe the scope or intent of any provisions hereof.

D1995045

(n)    <u>Severability</u>. If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction as long as this Agreement, so modified, continues to express, without material change, the original intent of the parties as to the subject matter of this Agreement and such modification will not substantially impair the parties' respective benefits and expectations hereunder.

(o)    <u>Confidentiality</u>. Each Party agrees that except (i) as may be compelled by legal process, by an order, judgment or decree of a court of other governmental authority of competent jurisdiction, or (ii) disclosures to its own employees, professional advisors or representatives, (iii) as required to implement or enforce the terms of this Agreement, or (iv) disclosures to any governmental entity or authority or regulatory or self-regulatory entity having or asserting jurisdiction over it, it shall not disclose to any person the existence of, or terms and conditions of, this Agreement or any document executed or delivered in connection herewith, except that Purchaser may disclose this Agreement (but not the Purchase Price) to any prospective purchaser or transferee of all or any portion of the Transferred Rights, provided that such prospective purchaser or transferee shall be advised of and agree to be bound by either the provisions of this Section 11(o) or other provisions at least as restrictive as this Section 11(o).

(p)    <u>Amendments; Waivers</u>.

(i)    No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(ii)    No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of each Party provided herein and in other related documents (A) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (B) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

(q)    <u>Successors and Assigns</u>. The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

*[Remainder of page intentionally left blank; signatures follow on next page]*

D1995045

IN WITNESS WHEREOF, the undersigned have executed and delivered this Assignment and Transfer of Claim Agreement as of the date first stated above.

HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.
By: Highland General Partner, L.P., its general partner
By: Highland GP Holdings, LLC, its general partner
By: Highland Capital Management, L.P., its sole member
By: Strand Advisors, Inc., its general partner

By: _____

Name: _____**CARTER CHISM**_____
Title: ___**AUTHORIZED SIGNATORY**___

CITIGROUP FINANCIAL PRODUCTS INC.
By: _____
Name: _____
       BRIAN BLESSING
Title: AUTHORIZED SIGNATORY

-14-

**EXHIBIT B-1**

[LBHI PROOF OF CLAIM]

D1995045

ORIGINAL

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Inc.<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>_____ Debtors.<br>Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered)<br>Case No. of Debtor<br>08-13555 | UNIQUE IDENTIFICATION NUMBER: |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503. Additionally, this form should not be used to make a claim for Lehman Program Securities (See definition on reverse side).

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Highland Credit Strategies
Master Fund, L.P.
c/o Highland Capital Management, LP
13455 Noel Road, Suite 800
Dallas, TX 75240
(972)628-4100

Scott Everett
Haynes and Boone, LLP
2323 Victory Ave., Suite 700
Dallas, TX 75219
(214) 651-5000
scott.everett@haynesboone.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:
_____
(If known)

Filed on: _____

Telephone number: _____    Email Address: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the Debtor or trustee in this case.

Telephone number: _____    Email Address: _____

1. Amount of Claim as of Date Case Filed: $ 12,132,200.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.

☒ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: See attached Exhibit A
   (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____

   Value of Property: $ _____    Annual Interest Rate _____ %
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $ _____    Basis for perfection: _____

   Amount of Secured Claim: $ _____    Amount Unsecured: $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ _____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
   (See instruction _____

7. Credits: The _____
8. Documents: _____ ssory notes, purchase
   orders, invoices, I _____ ecurity agreements,
   Attach redacted c _____ e definition of "redacted"
   on reverse side.) _____
   DO NOT SEND
   SCANNING. If _____ PROVED AFTER
   the documents _____

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000016840

FOR COURT USE ONLY

**FILED / RECEIVED**

**SEP 1 8 2009**

EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 9/17/09 [signature] _____ person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Patrick Boyce
# CFO

# EXHIBIT "A"

**EXHIBIT B-2**

[LBHI GUARANTEE QUESTIONNAIRE]

D1995045

## GUARANTEE CLAIM SUMMARY

**HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.**
**HAYNES AND BOONE, LLP**
**2323 VICTORY AVENUE, SUITE 700**
**Attn: Scott Everett**
**DALLAS, TX 75219**

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Special Financing Inc. (08-13888) |
| If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed. | Highland Credit Strategies Master Fund, L.P., Lehman Brothers Special Financing Inc., and Lehman Brothers Holdings Inc. have entered into that certain Termination Agreement dated September 15, 2009. |

**File Name**
Highland Credit Strategies Master Fund POC.pdf
Highland Credit Strategies Master Fund LP Termination Letter 9-15-09.pdf

| | |
|---|---|
| List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount. | Pursuant to the Termination Agreement, Lehman Brothers Special Financing Inc. has agreed that Highland Credit Strategies Master Fund, L.P. shall have an allowed claim in the amount of $12,132,000. |

**File Name**
Highland Credit Strategies Master Fund LP Termination Letter 9-15-09.pdf

| | |
|---|---|
| Amount of claim against Obligor | $12,132,000.00 |
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | Lehman Brothers Holdings Inc. (08-13555) |
| Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire. | Lehman Brothers Holdings Inc. executed the Termination Agreement in its capacity as the credit support provider and agreed that Highland Credit Strategies Master Fund, L.P. shall have an allowed claim in the amount of $12,132,000. |

**File Name**
Highland Credit Strategies Master Fund LP Termination Letter 9-15-09.pdf

| | |
|---|---|
| Amount of claim against the Guarantor | $12,132,000.00 |

**EXHIBIT D**

**COMMITTEE EMAIL**

D1995045