

Ursuline Academy



Unites States Bankruptcy Court
Second District of New York
Office of the Clerk
One Bowling Green
New York, NY 10004-1408

### RE: Lehman Brothers Holdings Inc., et al    Chapter 11 Case No. 08-13555 (JMP)

Ursuline Academy Objection to the Debtors of Lehman Brothers Holdings, Inc, et al assumption of interest rate cap insurance in the form of interest rate swaps

This is an objection to the assumption and cure payment proposed in the NOTICE OF PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS ANND UNEXPIRED LEASES PURSUANT TO DEBTORS' THIRD AMMENDED JOINT CHAPTER 11 PLAN PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE dated October 27, 2011 (the Notice) regarding the two interest rate swap transactions entered into between Lehman Brothers Special Financing Inc. (LBSF) and Ursuline Academy, Inc. (the Academy).

Swap Trade IDs:    LBSF ref 487271 ref rate 3.45900%
                   LBSF ref 487274 ref rate 3.83000%

The Academy entered into these transactions with LBSF to insure the maximum interest rate it would pay on two-thirds of the Academy's outstanding floating rate debt. Payments were made in a timely manner until, quite unexpectedly for the Academy, Lehman Brothers failed and filed for bankruptcy protection. Initially, the Academy believed that the subsidiary the Academy had the swaps with (LBSF) was not included in the filing. On October 1, 2008, one of the Academy's transactions was slightly in and the other slightly out of the money. The Academy received the regular invoices from LBSF and made its October 1, 2008 payment and recorded the payment it expected LBSF had made. The only communication we had from LBSF was to change the wire instructions for payments to be made to them. It was not until reconciling the October bank statements that the Academy recognized that LBSF had defaulted on its payment. It also realized that they had not received the November invoice from LBSF. Responses to our emails to LBSF were uninformative. After making frantic phone calls to numerous LBSF phone numbers, the Academy became aware that in fact its transactions were with the now-bankrupt portions of the former LBSF empire.

Eventually, in late November and December, 2008, the Academy was able to contact someone with the "management team" representing the debtors. This person recognized that these swaps were problematic for us and promised to "novate" them with a new counterparty. It would take some time but "hang in there" we were told. In the spring of 2009, it became apparent that LBSF would not (could

not?) novate these deals and that Ursuline Academy had lost its rate insurance swaps. LBSF had effectively terminated the transactions with its bankruptcy.

In the summer of 2009, a LBSF representative called to say that the Academy still had to pay on the swaps. When asked what assurance the Debtors would offer that when rates moved above the reference rate the Academy would receive payments, the Academy was told that it would not receive payments. Without acknowledging that it owed anything, the Academy asked what it would have to pay to get out from under these outrageous claims so the school could either refinance or establish new insurance to cap their interest rates. The Academy has asked this question many times. The answer has always been, essentially everything the Academy would have owed had LBSF not defaulted on the contracts. The Academy was expected to pay although it would receive no benefit under the swaps if interest rates increased to above the respective reference rates.

On Tuesday, November 1, 2011, the Academy received the above Notice. In the last paragraph of page two of the Notice, it states that "if no objections are received ... (i) you shall be deemed to have consented to the assumption of the Contract and shall be forever barred from asserting any obligation with regard to such assumption .... and (ii) the cure amount listed on Exhibit A *(for Ursuline Academy, the amount stated is 0 (zero))* shall be binding on you for all purposes and will constitute a final determination of the total cure amount required to be paid by the Debtors ... and you shall be forever barred from asserting any other claims or cure amounts related to such Contract."

The deadline for Ursuline Academy to object if it is "unable to resolve the (its) objection consensually with the Debtors", is November 10, 2011On the top of page three. The Academy has made an offer in full settlement to the Debtors, which offer has not been accepted or rejected as of this time. Given the brevity of time to file an objection it is unlikely that the parties will be able to resolve the objection consensually before the deadline.

### Specific Objections to the Assumption and the Proposed Cure Amounts

| Objection | Cure Amount |
|---|---|
| The Academy objects to the assumption of the Contracts, specifically the shortness of the time the Academy has been given to consider the assumption of its Contract(s). | N/A |
| The Academy objects to the assumption of the Contracts, specifically the lack of specificity in the document it received. The document does not address how, when interest rate changes occur, the Debtors would pay what they would owe under the new contract. There is no information readily available as to the financial strength of the assuming entity. The Academy expects that this is buried in the referenced materials. Unfortunately, the Academy is a small school and does not have the personnel to research this issue in the time period allowed and does not have the resources to compensate legal counsel and experts to do so. | N/A |

| Objection | Cure Amount |
|---|---|
| If the Debtors have sufficient resources to reserve appropriate amount(s), the Academy would expect that all claims against it for accrued amounts and penalty interest would be eliminated. During this period the Academy did not have the interest rate cap that this contract provided. The Academy should not be required to pay for something it did not receive. Note that this objection is not an acknowledgement that the Academy owes the Debtors any money rather that it rejects their claim that the Academy owes anything in regards these contracts. | |
| Accrued payments | $337,000 |
| Legal Counsel (estimated) | 50,000 |
| Swap consultants (estimated) | 20,000 |

Dated: November 9, 2011
Dedham, Massachusetts

Frederick B, Horgan
Business Manager
Ursuline Academy Inc.
85 Lowder street
Dedham, MA  02081

(781) 326 6161

## CERTIFICATE OF SERVICE

I, Frederick B. Horgan, hereby certify that on November 9, 2011, I served a copy of the within Objection by first class mail upon the following persons in interest to:

1. Honorable James M. Peck
   One Bowling Green
   Courtroom 601
   New York, NY 10004

2. Weil, Gotshal & Manges LLP
   Attn: Jacqueline Marcus, Esq.
   767 Fifth Avenue
   New York, NY 10153

3. Office of the United States Trustee for Region 2
   Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq.
   and Andrea Schwartz, Esq.
   33 Whitehall Street, 21st Floor
   New York, NY 10004

4. Milbank, Tweed, Hadley & McCloy LLP
   Attn: Dennis F. Dunne, Esq., Dennis O'Donnel, Esq. and
   Evan Fleck, Esq.
   1 Chase Manhattan Place
   New York, NY 10005

Signed under the pains and penalties of perjury this 9th day of November, 2011.

_____
Frederick B. Horgan, Business Manager
Ursuline Academy, Inc.