**Hearing Date: December 14, 2011 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: December 7, 2011 at 4:00 p.m. (Eastern Time)**

STROOCK & STROOCK & LAVAN LLP
Kenneth Pasquale
Matthew G. Garofalo
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for Walwilhal Associates, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 TO LIFT THE AUTOMATIC STAY TO PERMIT WALWILHAL ASSOCIATES, LLC TO PROSECUTE CERTAIN CAUSES OF ACTION IN STATE COURT**

Walwilhal Associates, LLC ("Walwilhal"), by and through its undersigned counsel, hereby moves for entry of an order granting it relief from the automatic stay pursuant to Section 362(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), so that Walwilhal may file, prosecute and obtain judgment on causes of action arising under state law (the "State Court Claims") in the Supreme Court of the State of New York, County of New York ("State Court"), against debtor Lehman Brothers Holdings Inc. ("LBHI"), or its State Court-appointed Receiver (as defined below), either (i) through the commencement of a plenary action in State Court or (ii) through the intervention in a pending, post-petition civil proceeding commenced by LBHI in

State Court to foreclose on certain real property. In support of this Motion, Walwilhal respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  Walwilhal is the owner of a building located at 41 Broad Street in Manhattan ("41 Broad"), which sits directly adjacent to properties located at 25 Broad Street ("25 Broad") and 45 Broad Street ("45 Broad", and together with 25 Broad, the "Properties"). LBHI is a lender with respect to both Properties. The New York City Department of Buildings ("DOB") and Environmental Control Board ("ECB") issued certain hazardous Violations (defined below) with respect to the Properties that must be cured. As relevant to this Motion, curing such Violations requires, among other things, repairing, waterproofing, and otherwise remediating the east party wall of the 41 Broad building. As a matter of New York City law, it is the responsibility of the owner of 45 Broad to repair the wall and cure the Violations.

2.  In 2009, LBHI commenced proceedings to foreclose on its loans with respect to the respective Properties. In connection with the foreclosure of 45 Broad, the State Court, on motion of LBHI, appointed Patricia Mattoon as Receiver to manage the property (the "Receiver"). Although LBHI represented in its motion to appoint the Receiver that the Receiver's duties would include remediating the unsafe conditions and curing the Violations, and although LBHI subsequently sought and obtained the permission of this Bankruptcy Court to use property of the estates to make approximately $25.1 million in certain "Additional Investments" in the Properties, neither the Receiver nor LBHI has used any portion of those funds to take any action to repair the wall at issue.

3.  The foreclosure sale of 45 Broad was held in early November and LBHI was the prevailing bidder. Accordingly, LBHI is or soon will be the owner of 45 Broad, and the

Receiver will soon be discharged from her duties. Regardless of who now acts as owner of 45 Broad, the fact remains that the wall is unsafe and the Violations have yet to be cured. When Walwilhal recently filed a motion in State Court to compel the Receiver (not LBHI) to perform the repairs, LBHI took the position that the proposed intervention and requested relief would violate the automatic stay. Now that LBHI is, or is about to be, the owner of 45 Broad, it is LBHI's obligation to perform the repairs. Accordingly, Walwilhal seeks an order of this Court lifting the automatic stay so that Walwilhal may pursue its state law remedies against LBHI, as owner of the property, and/or against the Receiver (until she is discharged).

4. Walwilhal respectfully submits that cause exists for this Court to lift the stay because, among other reasons, the Court has already approved the use of estate assets for the Additional Investments that can and should be used to cure the Violations. LBHI should not be permitted to affirmatively assert its rights and foreclose on 45 Broad, yet use the automatic stay as a sword to seek to avoid its obligations to remediate the wall at the adjacent 41 Broad property. Walwilhal, therefore, respectfully requests that this Court grant the requested relief and permit Walwilhal to pursue the State Court Claims against LBHI and/or the Receiver in order to seek remediation of the unsafe condition at the property.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1344. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief sought herein is Section 362 of the Bankruptcy Code and Bankruptcy Rule 4001.

6. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**I.     Procedural Background**

7.     On September 15, 2008 (the "Petition Date"), LBHI and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions in the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code.

8.     The Debtors' cases (the "Chapter 11 Cases") were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors operate their businesses and manage their properties as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

9.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

**II.    Relevant Factual Background**

10.    Prior to the Petition Date, LBHI entered into certain finance transactions whereby it obtained mortgages encumbering 25 Broad and 45 Broad. 41 Broad, which is owned by Walwilhal, is a nine-story structure that was built in or about 1928 and sits adjacent to both Properties. It is leased until 2025, with two ten-year options to renew thereafter, to the Léman Manhattan Preparatory School. The school is a private school for children ages three through nine, from nursery school to fourth grade. There are approximately 317 students, who use the school facilities from 8:00 am until 5:00 pm, with occasional after-school activities. During the summer months, the school is used as a day camp.

11.    The property adjacent to 41 Broad is 45 Broad which, since 2008, has been a vacant lot (previously, it contained a building of approximately eight stories, built in or about

4

1931).  In or about 2008, the owner of 45 Broad (LBHI's mortgagor) demolished the building that was standing on that site.  See Affidavit of F. Robert Brusco, sworn to on October 12, 2009, and submitted in the Foreclosure Proceeding (the "Brusco Affidavit") (emphasis added) ¶¶ 9-10.  A copy of the Brusco Affidavit is attached as Exhibit A to the Declaration of Kenneth Pasquale in Support of the Motion, filed contemporaneously herewith (the "Pasquale Dec.").

12. In demolishing the 45 Broad building, the mortgagor exposed the south wall of 41 Broad, which acted as a party wall supporting the two structures.  The mortgagor failed to repair the party wall.  The DOB and ECB subsequently issued several violations (collectively, the "Violations") against 45 Broad.[1]  The Violations cite the "failure to provide weatherproofing integrity of adjoining building."  The Violations are considered "hazardous".  In fact, an October 2007 violation, is described as "aggravated" and is a "multiple offence" to "site safety".  See Violations.  The Violations remain open and uncured and monetary fines have been imposed.

13. In January of 2009, LBHI commenced a foreclosure proceeding on 45 Broad entitled Lehman Brothers Holdings Inc. v. 45 Broad, LLC, Kent M. Swig, et al, Index No. 100887/09 (N.Y. Sup. Ct., N.Y. Co.) (the "Foreclosure Proceeding").[2]  When LBHI sought the appointment of a receiver in the Foreclosure Proceeding, it submitted the affidavit of F. Robert Brusco, a LBHI employee, who attested, among other things, to the following:

> 2 … a Receiver is necessary in order to: ensure the maintenance and preservation of the Mortgaged Property …; **to cure certain Department of Building violations in order to permit construction**.

                                  ****

---

[1] The Violations include ECB Violation #34582245M; DOB Violation #100207CSSTSCO1B, dated October 2, 2007, and ECB Violation #34714977J; DOB Violation # 111108CSSTMI01, dated November 11, 2008.  Copies of the Violations are attached as Exhibit B to the Pasquale Dec.

[2] The Foreclosure Proceeding was commenced simultaneously with the foreclosure proceeding on 25 Broad entitled Lehman Brothers Holdings Inc. v. 25 Broad, LLC, Kent M. Swig, et al, Index No. 100886/09 (N.Y. Sup. Ct., N.Y. Co.).

5

> 12. There are several critical, complex issues affecting the Mortgaged Property that must be addressed in the short-term, including, but not limited to:
>
> - **Certain open building department violations issued against the Mortgaged Property … must be cured so as to not only comply with controlling law and regulation, but in order to permit construction on the Property**;
>
> - The Mortgaged Property must be inspected in order to **correct potentially unsafe conditions and permit maintenance necessary to preserve and protect the collateral** …
>
> - A Receiver is necessary in order to . . . **cure DOB violations** . . . .

See Brusco Affidavit ¶¶ 2, 12 (emphasis added).

14. In response to the foregoing, the State Court in the Foreclosure Proceeding, in appointing the Receiver, ordered her to correct the potentially unsafe conditions and to undertake the necessary repairs. In particular, the State Court ordered:

> ORDERED, that said Receiver be and hereby is authorized and **directed to inspect the Mortgaged Property and to correct potentially unsafe conditions** and effectuate repairs and maintenance needed to preserve and protect the Mortgaged Property or persons and property thereat . . .
>
> ORDERED, that said Receiver be and hereby is authorized and **directed to resolve all unaddressed building violations issued against the Mortgaged Property and remediate same with regulatory authorities** as is necessary to (i) make such issues that are the subject of such violations safe and complete required construction activities at the Mortgaged Property…and (iii) comply with controlling law and regulations . . .
>
> ORDERED, that said Receiver be and hereby is authorized to **make any prudent, reasonable and necessary repairs** or work to the Mortgaged Property and undertake such action consistent with the Receiver's exercise of its sound business judgment … .

Order Appointing a Receiver, dated November 17, 2009, entered in the Foreclosure Proceeding (the "Receiver Order"), at p 4-5 (emphasis added). A copy of the Receiver Order is attached as

<u>Exhibit C</u> to the Pasquale Dec. Notwithstanding the State Court's Order, the Receiver did not cure the Violations.

15.    On March 22, 2011, the Debtors filed the Motion of Lehman Brothers Holdings Inc. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Authorization to Make Additional Investments with Respect to 25 and 45 Broad Street [Docket No. 15257] (the "<u>Investment Motion</u>").  By the Investment Motion, the Debtors requested authority to use approximately $25.1 million in estate assets for certain "Additional Investments" in the Properties, including $226,000 as part of a proposed agreement with Walwilhal, as the adjacent landowner. <u>See</u> Investment Motion ¶ 25.  The proposed agreement with Walwilhal was never reached or consummated.

16.    The Court approved the Investment Motion by order dated on April 14, 2011 [Docket No. 16000] (the "<u>Investment Order</u>").  The Investment Order authorized the "Additional Investments" and authorized the Debtors to "consummate all of the transactions contemplated thereby, including the advance of funds with respect to the Properties… it being understood that any actions described in this paragraph taken by the Debtors or their affiliates may be taken without the necessity of any further court proceedings or approval."  Investment Order, at 2.

17.    By order to show cause, dated October 31, 2011 (the "<u>Order to Show Cause</u>"), Walwilhal sought relief in the State Court to intervene in the Foreclosure Proceeding for the limited purpose of compelling the Receiver to comply with the Receiver Order and cure the Violations.  Walwilhal did not request any relief from LBHI, as mortgagee.

18.    Although Walwilhal's Order to Show Cause sought relief only against the Receiver, LBHI, by letter from counsel dated November 6, 2011, took the position that such relief was a violation of the automatic stay.  <u>See</u> Letter from Jacqueline Marcus at Weil, Gotshal

7

and Manges LLP to Eva Talel and Dale J. Degenshein at Stroock & Stroock & Lavan LLP, dated November 6, 2011, attached as <u>Exhibit D</u> to the Pasquale Dec. By letter dated November 8, 2011, Walwilhal, by its counsel, responded to LBHI and advised that Walwilhal believed that the relief requested in the Order to Show Cause did not implicate the automatic stay because (i) the relief is sought solely against the Receiver and (ii) this Court previously authorized the Additional Investments to, *inter alia*, fund the necessary repairs to cure the Violations. See Letter from Kenneth Pasquale at Stroock & Stroock & Lavan LLP to Jacqueline Marcus at Weil, Gotshal and Manges LLP, dated November 8, 2011, attached as <u>Exhibit E</u> to the Pasquale Dec. Walwilhal further advised LBHI that if the parties could not reach agreement, Walwilhal would file this Motion to seek relief in this Court from the automatic stay.

## **RELIEF REQUESTED**

19. Walwilhal respectfully requests that it be granted relief from the automatic stay to permit Walwilhal to assert the State Court Claims to compel LBHI and/or the Receiver to cure the Violations and repair the 45 Broad wall. As a result of this Court's order granting the Additional Investments, any relief granted by the State Court would implicate (if at all) estate funds that were previously authorized to be used with respect to the Properties. To the extent that the Receiver remains in her position, Walwilhal will, upon an order granting this Motion, prosecute its Order to Show Cause; should the Receiver be discharged as a result of LBHI's purchase of 45 Broad through foreclosure, then Walwilhal will commence a plenary action against LBHI in State Court to compel the repairs to the wall and cure the Violations.

**BASIS FOR RELIEF**

**I.     The Automatic Stay is Inapplicable to Walwilhal's Claims**

20.    As an initial matter, section 362 of the Bankruptcy Code automatically stays, among other things, "the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding <u>against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title</u>." 11 U.S.C. § 362(a) (emphasis added).  As such, the automatic stay applies only to the commencement or continuation of a proceeding when such proceeding (i) is against the debtors and (ii) was or could have been commenced before the bankruptcy filing.

21.    In its Order to Show Cause, Walwilhal seeks to intervene in the Foreclosure Proceeding and compel the Receiver (not the Debtors) to take action to repair the wall at 45 Broad.  As such, the stay should not apply to any actions against the Receiver.  <u>See</u> <u>Bidermann Indus. U.S.A., Inc. v. Zelnik (In re Bidermann Indus. U.S.A., Inc.)</u>, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996) ("the automatic stay is limited to the debtor, and does not apply to actions against non-debtor third parties").  Moreover, as a result of this Court's order granting the Additional Investments, any relief granted by the State Court would implicate (if at all) estate funds that were previously authorized to be used with respect to the Properties.  As such, the relief requested by Walwilhal would not implicate any additional proceeds of the estates.

22.    To the extent that LBHI is now, or soon will be, the legal owner of 45 Broad, Walwilhal seeks to pursue claims against the Debtor that could not have been commenced before the Petition Date, because the Debtor was not the owner of 45 Broad until well after the Petition

9

Date.[3]  If a proceeding could not have been commenced before the bankruptcy filing, the proceeding is not subject to the automatic stay.  See In re Galgano, 358 B.R. 90, 98 (Bankr. S.D.N.Y. 2007); Pension Benefit Guaranty Corp. v. LTV Corp. (In re Chateaugay Corp.), 86 B.R. 33, 37-38 (S.D.N.Y. 1987) ("the automatic stay, however, does not apply to claims that arise post-petition").  Accordingly, Walwilhal respectfully submits that the automatic stay is inapplicable to the State Court Claims it wishes to assert.

## II.    To the Extent the Stay Applies, Cause Exists to Lift the Stay

23.    Alternatively, Walwilhal respectfully seeks relief from the automatic stay to file, prosecute and obtain judgment on its State Court Claims against LBHI and/or the Receiver to compel repairs to the party wall and to cure the Violations.  Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1).  "[C]ause" is not defined in the Bankruptcy Code, nor in the legislative history of Section 362.  The term is intentionally broad and represents a flexible concept that must be determined on a case-by-case basis.  See In re Project Orange Assocs., LLC, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010).  The determination to lift the automatic stay is in the bankruptcy court's discretion.  Id.  (citing Burger Boys, Inc. v.

---

[3]    Pursuant to the New York City Administrative Code, when demolition of a building exposes an adjoining wall, the party causing the demolition operation is responsible to maintain the structural integrity of the wall and take all necessary steps to maintain that wall.  The statute states, in relevant part:

> Where an adjoining party wall is intended to be used by the person causing an excavation to be made, and such party wall is in good condition and sufficient for the uses of the existing and proposed buildings, it shall be the duty of such person to protect such party wall and support it by proper foundations, so that it shall be and remain practically as safe as it was before the excavation was commenced.

NYC Administrative Code § 3309.4.2 ("Safeguards During Construction or Demolition: Protection of Adjoining Property").

South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 687-88 (Bankr. S.D.N.Y. 1994)).

24.  The Court of Appeals for the Second Circuit, in Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990), identified a number of factors that courts should consider when determining whether cause exists to lift the automatic stay to allow litigation against a debtor to proceed in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id. at 1286.  "Not all of [the Sonnax] factors will be relevant in every case." Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999).  The bankruptcy court does not need to give equal weight to each factor.  See In re Burger Boys, 183 B.R. at 688.  Rather, "[w]hen applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).[4]

---

[4]  Several Sonnax factors are not relevant to this Motion, or clearly weigh in favor of granting the relief requested.  The proceeding against LBHI in State Court does not involve LBHI as a fiduciary, there is no specialized tribunal to hear the claims, there are no insurers in the underlying controversies, there is no issue regarding equitable subordination, and Walwilhal's success will not result in an avoidable judicial lien.

25.     In these circumstances, relief from the stay to permit Walwilhal to assert the State Court Claims is warranted.  Important in analyzing the <u>Sonnax</u> factors is the fact that the Court, by the Investment Order, previously authorized the Debtors to "consummate all of the transactions contemplated thereby, <u>including the advance of funds with respect to the Properties</u> … it being understood that any actions described in this paragraph taken by the Debtors or their affiliates may be taken <u>without the necessity of any further court proceedings or approval</u>."  Investment Order, at 2 (emphasis added).  Accordingly, the Court authorized the Debtors to use property of the estates to pay for improvements at the Properties, which would include, by necessity, cure of the Violations.

26.     Based on the foregoing, the applicable <u>Sonnax</u> factors weigh in favor granting the relief requested.  Allowing Walwilhal to seek relief in the State Court would completely resolve any remaining open issues between these parties.  There should be no need for the parties to return to the Bankruptcy Court following adjudication of the State Court Claims.  Indeed, even were Walwilhal to prevail on its State Court Claims, the judgment will have no impact upon the bankruptcy estates because the funds required to improve the Properties and pay for the repairs have already been authorized by this Court in the Investment Order.  For the same reason, allowing Walwilhal to pursue its claims in State Court will not interfere with the Chapter 11 Cases and is not directly connected to issues in the Chapter 11 Cases.  Accordingly, Walwilhal will be able to obtain relief from the State Court and enforce such relief (to the extent granted) without impacting the bankruptcy process.

27.     The seventh <u>Sonnax</u> factor, whether litigation in another forum would prejudice the interests of other creditors, also weighs in favor of the relief requested.  In addition to the fact that the use of estate assets was previously authorized in the Investment Order, the use of such

assets to cure the Violations was contemplated by the Debtors.  See Brusco Affidavit ¶¶ 2, 12.  Accordingly, any ruling on the State Court Claims in favor of Walwilhal will not take property of the estates from potential distributions to creditors.  Instead, such a ruling would simply require LBHI to spend the funds now to cure an unsafe condition at the Properties.

28.     Analysis of the final Sonnax factor, the impact of the stay on the parties and the balance of the harms, also falls in favor of lifting the stay.  Here, the imposition of the stay would be extremely prejudicial to Walwilhal, which leases 41 Broad to a school, because the stay would prevent Walwilhal from enforcing its rights under local law to compel the property owner to repair its unsafe wall.  LBHI intends to develop the Properties at some future date, but is attempting to use the automatic stay as a sword to restrict Walwilhal's rights and dictate the timing of when LBHI undertakes to cure the Violations.  The Debtors' strategy is misplaced.  "It has often been stated that the automatic stay is a shield, not a sword."  In re Briarpatch Film Corp., 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) (remanding actions back to state court); see also Fox & Co. v. Saxon Indus., Inc. (In re Saxon Indus., Inc.), 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) ("The purpose of the (automatic stay) is the protection of the debtor, but when the debtor is in the position of assailant rather than victim, the potential for abuse of that purpose is manifest.") (internal quotations omitted).  Walwilhal should, therefore, be permitted to prosecute its State Court Claims to seek a remedy of the unsafe condition on its property.

## NOTICE

29.     Notice of this Motion has been provided in accordance with the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 and on those notice parties fully described in the Original Case Management Order dated September 22,

2008 and the Amended Procedures dated February 13, 2009, issued in these Chapter 11 Cases by the Court, including (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel for the Committee; and (iii) and all parties who have requested notice in these chapter 11 cases. Walwilhal submits that no other or further notice need be provided.

## NO PRIOR REQUEST

30.    Walwilhal has not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Walwilhal respectfully requests that the Court enter an Order granting (i) relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit them to file, prosecute and obtain judgment of its State Court Claims against LBHI and/or the Receiver; and (ii) for such other and further relief as may be just and proper.

Dated:   New York, New York
         November 22, 2011

STROOCK & STROOCK & LAVAN LLP

By:  /s/ Kenneth Pasquale
     Kenneth Pasquale

Kenneth Pasquale
Matthew G. Garofalo
180 Maiden Lane
New York, NY 10038-4982
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006

*Attorneys for Walwilhal Associates, LLC*