# EXHIBIT A



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

LEHMAN BROTHERS HOLDINGS INC.,

    Plaintiff,

    vs.

45 BROAD, LLC, KENT M. SWIG, GILSANZ
MURRAY STEFICEK LLP, NEW YORK CITY
DEPARTMENT OF TRANSPORTATION, NEW
YORK CITY BUREAU OF HIGHWAY
OPERATIONS, ENVIRONMENTAL CONTROL
BOARD OF THE CITY OF NEW YORK, NEW
YORK STATE DEPARTMENT OF TAXATION
AND FINANCE , "JOHN DOE 1-50," "MARY
ROE 1-50", "XYZ CORP. 1-50" and "ABC, LLC
1-50"

The names of the "John Doe 1-50" "Mary Roe"
"XYZ Corp. 1-50" and "ABC, LLC 1-50"
Defendants being fictitious and unknown to the
Plaintiff, the persons and the entities being parties
having an interest in or lien against the premises
sought to be foreclosed herein as owner, tenant,
licensee, occupant or otherwise.

    Defendants.

-------------------------------------------------------------x

Index No. 100887/2009

(Justice Emily Goodman)

MS#002

AFFIDAVIT OF F. ROBERT BRUSCO
IN SUPPORT OF MOTION FOR THE
<u>APPOINTMENT OF A RECEIVER</u>



STATE OF NEW YORK  )
                           :ss.:
COUNTY OF NEW YORK )

    F. ROBERT BRUSCO, being duly sworn, deposes and says:

    1.    I am an employee of Plaintiff, Lehman Brothers Holdings Inc. ("Lehman," or "Lender"), and I make this Affidavit in support of Lehman's Motion seeking the appointment of a Receiver in connection with its foreclosure of certain mortgages and other agreements, as set forth more fully herein and in the Complaint filed in the above-captioned matter. For the reasons

{10529479:4}

set forth below, Lehman is entitled to the immediate appointment of a Receiver in order to preserve and protect the property that is the subject of this foreclosure action.

2. In short, a Receiver is necessary in order to: ensure the maintenance and preservation of the Mortgaged Property (defined herein); to obtain and preserve critical permits and approvals that are about to lapse; to complete the transfer of valuable development rights from the adjoining property to the Mortgaged Property; to merge the Mortgaged Property with a portion of the adjoining tax lot; to cure certain Department of Buildings violations in order to permit construction, and to prevent further deterioration and decline in the value of the Mortgaged Property.

3. Moreover, as set forth below, the Defendant Borrower, 45 Broad, LLC ("45 Broad" or the "Borrower"), consented to the appointment of a Receiver in the Loan Documents (defined herein) in the event of a default. Here, Borrower has caused a maturity default, in addition to other defaults, such as its failure to pay real estate taxes and the failure to cure mechanics' liens filed against the Property, as more fully set forth below.

4. By this action, Lehman seeks to foreclose on: (i) a certain "Mortgage, Assignment of Leases and Rents and Security Agreement," dated as of June 12, 2006, in the original principal amount of $37,705,710.51, made by defendant 45 Broad, LLC ("45 Broad") to Lehman (the "First Mortgage"), as modified by that certain "Mortgage Spreader Agreement," dated as of February 26, 2007 (the "Mortgage Spreader")[1]; and (ii) a certain "Mortgage, Assignment of Leases and Rents and Security Agreement," dated as February 26, 2007, in the original maximum principal amount of $11,467,283.00, made by defendant 45 Broad to Lehman (the "Second Mortgage" and, together with the First Mortgage and the Mortgage Spreader, as the "Mortgages"), each as more particularly described in the Verified Complaint in this action (the

---

[1] The Mortgage Spreader spreads Lehman's first mortgage lien over both the initial mortgaged premises located at 45 Broad Street, New York, New York (the "45 Broad Street Property") and additional real property rights acquired by 45 Broad (collectively, the "Mortgaged Property," the "Property" or the "Premises").

{10529479:4}   2

"Complaint"). Lehman is the holder of record of the Mortgages executed and delivered to Lehman by 45 Broad, which are being foreclosed herein.

5.  I am familiar with the Mortgages and other debt instruments in this action and have read the Complaint, a copy of which is annexed hereto as **Exhibit 1** and incorporated herein by reference.[2]

6.  I am fully familiar with: (1) the Mortgages; (2) the facts relating to the defaulted commercial mortgage Loans (defined herein); (3) the planned development of the Mortgaged Property; and (4) other facts and circumstances set forth herein and in the Complaint, all by virtue of both my personal involvement in the underlying transaction and my review of Lehman's business records concerning the Mortgaged Property.

7.  I am authorized to make this affidavit on behalf of Lehman in support of its application for appointment of a Receiver.

8.  As demonstrated herein and as more fully set forth in the accompanying Memorandum of Law, Lehman is entitled to the appointment of a Receiver as a result of 45 Broad's multiple defaults under and the express language set forth in the Loan Documents.

## THE MORTGAGED PROPERTY

9.  Upon information and belief, 45 Broad demolished the building and structures located at the 45 Broad Street leaving an empty lot.

10. It is my understanding that after the acquisition of various development rights and approvals, 45 Broad intended to construct a new building on the Mortgaged Property.

11. Based upon the plans it filed, it appears that 45 Broad intended to construct a new building on the Mortgaged Property that would be a mixed-use building consisting of hotel, residential and commercial uses.

---

[2] All references to the Exhibits and Schedules to the Complaint shall be referred to herein as "Complaint, Exhibit 1-__" and "Complaint, Schedule 1-__," respectively.

{10529479:4}                                                        3

<u>Outstanding Issues</u>

12.     There are several critical, complex issues affecting the Mortgaged Property that must be addressed in the short-term, including, but not limited to:

- Certain open building department violations issued against the Mortgaged Property (*see* Exhibit 2) must be cured so as to not only comply with controlling law and regulations, but in order to permit construction on the Property;

- The Mortgaged Property must be inspected in order to correct potentially unsafe conditions and permit maintenance necessary to preserve and protect the collateral;

- The completion of the transfer of certain valuable development rights held by the adjoining tax lot 19 property (the "Lot 19 Property") to the Mortgaged Property, as, upon information and belief, such rights are currently in jeopardy of lapsing and, thereby, being lost forever;

- Upon information and belief, certain approvals must be obtained from the New York City Department of Buildings ("DOB"), which include: (i) the preservation of certain development rights; (ii) the extension and/or reinstatement of new building applications, previously filed with the DOB, and (iii) approvals necessary to merge the Mortgaged Property with portions of the adjoining lots to form the necessary tax lot and single zoning lot required for construction of the proposed new building at the Mortgaged Property; and

- Advancement of construction activities.

{10529479:4}                                    4

## THE LOAN TRANSACTION
## AND THE LOAN DOCUMENTS

13. On or about June 12, 2006, Lehman, 45 Broad and Defendant Swig entered into a First Loan Agreement (the "First Loan Agreement"), whereby 45 Broad borrowed from Lehman and agreed to repay the principal sum of Thirty Seven Million Seven Hundred Five Thousand Seven Hundred Ten ($37,705,710.51) Dollars and 51/100 Cents, plus interest thereon, in order to refinance the acquisition costs of the 45 Broad Street Property, as described in Schedule 1-A of the Complaint (the "First Loan"). The First Loan Agreement is annexed to the Complaint as Exhibit 1-A.

14. As further evidence of its indebtedness, 45 Broad executed, acknowledged, and delivered to Lehman a Promissory Note (the "First Note") (*see* Complaint, Exhibit 1-B), dated on June 12, 2006, evidencing the $37,705,710.51 principal indebtedness due to Lehman plus interest thereon.

15. Also on or about June 12, 2006, 45 Broad executed, acknowledged, and delivered to Lehman the First Mortgage (described above), dated as of June 12, 2006, in the original principal amount of $37,705,710.51 (*See* Complaint, Exhibit 1-C).

16. On or about February 26, 2007, 45 Broad acquired additional real property rights in the form of a covenant not to build upon, and an easement for light, air and unobstructed view, over certain real property commonly known as 35-41 Broad Street, and designated as Block 25, Lot 10 as shown on the Tax Map of the City of New York (the "Easement Parcel"). 45 Broad thereafter also pledged the Easement Parcel to Lender in order to secure its repayment and performance obligations under the First Loan.

17. In order to memorialize 45 Broad's pledge of its additional real property rights under the First Loan, 45 Broad executed and delivered to Lender the Mortgage Spreader

(described above). (*See* Complaint, Exhibit 1-E). The Mortgage Spreader spread Lehman's First Mortgage lien over both the 45 Broad Street Property and the Easement Parcel acquired by 45 Broad.

18. Upon information and belief, the Mortgage Spreader constitutes a first priority lien encumbering 45 Broad's fee ownership in both the 45 Broad Street Property as well as the Easement Parcel.

19. On or about February 26, 2007, Lehman, 45 Broad and Swig entered into a second commercial loan transaction, in the form of a First Amended Loan Agreement ("Amended Loan Agreement"), whereby 45 Broad borrowed and agreed to repay Lehman the principal sum of Eleven Million Four Hundred Sixty Seven Thousand Two Hundred Eighty Three ($11,467,283.00) Dollars, plus interest thereon (the "Second Loan," together with the First Loan, the "Loans"). (*See* Complaint, Exhibit 1-F). Upon information and belief, the Second Loan was to be used by 45 Broad for the same purposes as the First Loan.

20. In further evidence of its indebtedness under the Second Loan, 45 Broad executed, acknowledged, and delivered to Lehman, a Promissory Note (the "Second Note," together with the First Note, the "Notes"), evidencing the $11,467,283.00 principal indebtedness due to Lehman plus interest thereon. (*See* Complaint, Exhibit 1-G).

21. As still further evidence of its indebtedness under the Second Loan, 45 Broad executed, acknowledged, and delivered to Lehman, the Second Mortgage, dated February 26, 2007, in the original principal amount of $11,467,283.00, constituting a second priority lien encumbering 45 Broad's fee ownership in both the 45 Broad Street Property and the Easement Parcel. (*See* Complaint, Exhibit 1-H).

22. On or about December 10, 2007, 45 Broad executed and delivered to the Lender a certain Second Amendment to Loan Agreement (the "Second Amended Loan Agreement," together with the First Loan Agreement and the Amended Loan Agreement, the "Loan Agreement"), further modifying the terms of the First Loan and Second Loan and further extending the maturity date of the Loans to February 28, 2008 (the "Maturity Date"). (*See* Complaint, Exhibit I-K). The Maturity Date has not been further extended.

23. The Loan Agreement, Mortgages, Notes and other documents concerning the First Loan and the Second Loan are referred to collectively herein as the "Loan Documents."

## THE DEFAULT PROVISIONS

24. Pursuant to the terms of the Loan Documents and, specifically the Second Amended Loan Agreement, 45 Broad agreed that on each monthly Payment Date (as defined in the Loan Agreement), the Debt Service Payment Amount (as defined in the Loan Agreement) then due shall be added to the outstanding principal balance of the Loans and itself bear interest at the Regular Interest Rate (as defined in the Loan Agreement) until the Maturity Date and that the foregoing would constitute "Accrued Interest" under the Loans.

25. Pursuant to the Second Amended Loan Agreement, 45 Broad agreed to pay to Lender on the Maturity Date the then outstanding principal balance of the Loans together with all accrued and unpaid interest, including but not limited to the Accrued Interest, plus all other amounts due under the Loan Documents.

26. Pursuant to the Loan Documents, 45 Broad further agreed to pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Mortgaged Property and not permit to exist any lien or security interest to be recorded against the Mortgaged Property except for Permitted Encumbrances (as defined in the Loan

Agreements). 45 Broad agreed that its failure to do so would constitute an Event of Default (as defined in the Loan Agreement)

27. Pursuant to the Loan Documents, 45 Broad also agreed to pay all Taxes and Other Charges (as such terms are defined in the Loan Agreements) levied, assessed or imposed against the Mortgaged Property as same become due and that the failure to do so would constitute an Event of Default.

28. 45 Broad further agreed to keep the Mortgaged Property in good condition and repair and not commit or permit waste of the Property and that failure to do so would constitute an Event of Default.

29. Section 7.1 of the Mortgages further provide that upon the happening of an Event of Default, Lehman may exercise any and all of the rights and remedies provided in the Loan Agreements or other Loan Documents as it deems necessary, including but not limited to:

 (a) Declaring the entire unpaid Debt (as defined in the Mortgages) to be immediately due and payable;

 (b) Instituting proceedings, judicial or otherwise, for the complete foreclosure of its mortgage liens;

 (c) Instituting actions, suits or proceedings in equity for the specific performance of any covenant, condition or agreement contained in the Loan Documents;

 (d) Applying for the appointment of a Receiver, trustee, liquidator or conservator of the Mortgaged Property without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of 45 Broad or Swig;

 (e) Terminating any and all licenses granted to 45 Broad to collect upon the Rents derived from the Mortgaged Property; and

 (f) Exercising any and all rights afforded to a secured party under the Uniform Commercial Code.

{10529479:4} 8

30.    Under the terms of the Loan Documents, 45 Broad assigned and conveyed to Lehman all rents, issues, and profits of the Mortgaged Property.

## THE DEFAULTS

31.    45 Broad has defaulted under the terms of the Loan Documents by, *inter alia*, failing to pay all unpaid principal and interest on the Notes on the Maturity Date of February 28, 2008, when same became due without defense, counterclaim, reduction, recoupment or offset of any nature whatsoever, and continuing thereafter unabated.

32.    45 Broad further defaulted under the terms of the Loan Documents by failing to pay all real estate taxes relating to the Mortgaged Property when due.

33.    45 Broad further defaulted under the terms of the Loan Documents by allowing the filing of numerous mechanics' liens against the Mortgaged Property by mechanic's lienors without bonding or discharging same.

34.    45 Broad has also defaulted by allowing numerous uncured Department of Buildings violations to occur and failing to take necessary actions to preserve and obtain all approvals and/or development rights with respect to the Mortgaged Property.

35.    Lehman notified 45 Broad in writing of these defaults and demanded immediate payment of the entire indebtedness.

36.    Notwithstanding such notice, Lehman's demands have gone unanswered and no payment has been made.

## TRANSFERABLE DEVELOPMENT RIGHTS AND DEPARTMENT OF BUILDINGS APPROVALS

37.    Annexed hereto as **Exhibit 3** and made a part hereof is that certain pre-consideration application filed by, or on behalf of, 45 Broad with the DOB and accepted by the then Manhattan Borough Commissioner on July 12, 2007 (the "Pre-Con").

{10529479:4}                                                    9

38. Upon information and belief, in connection with the Pre-Con, three applications were filed with the DOB concerning the multi-use building to be constructed on the 45 Broad Street Property and a portion of the Lot 19 Property:

(i) an application for demolition of the rear portion of the existing building located on the Lot 19 Property ("Lot 19 Demolition Application");

(ii) an application for subdivision of a portion of the Lot 19 Property and transfer of a portion of same (including the associated floor area development rights) to the 45 Broad Street Property ("Transfer Application"); and

(iii) an application for construction of a new building at the 45 Broad Street Property ("45 Broad New Building Application," together with the Lot 19 Demolition Application and the Transfer Application, the "Applications").

39. Upon information and belief, certain demolition work at the Lot 19 Property has been performed and certain additional action, which may include additional demolition work, is required in order to alleviate potential safety concerns at the Lot 19 Property.

40. Indeed, upon further information and belief, 45 Broad is unwilling or unable to continue to complete the work, prosecute the pending Applications or pursue construction on the Mortgaged Property.

41. Lehman is concerned that such failure to prosecute the Applications to completion could result in a loss of potential development rights, which could greatly diminish the value of the Mortgaged Property.

42. Upon information and belief, the 45 Broad New Building Application was last reviewed by the DOB examiner on October 18, 2008.

43. Upon information and belief, the Transfer Application has been filed but not approved or finalized.

44. Upon information and belief, if the 45 Broad New Building Application lapses, it will greatly diminish the value of the Mortgaged Property, its development rights and delay its ultimate development.

{10529479:4} 10

45. Given the impending potential lapses in the Applications, it is critical that a Receiver be immediately appointed to: (i) continue to prosecute the 45 Broad New Building Application to completion; (ii) continue with the transfer of the portion of Lot 19 to be subdivided and its associated development rights and (iii) continue advancement of construction activities.

46. As the Mortgaged Property is not generating any revenue, Lehman is permitted to make protective advances under the Loan Documents to fund the necessary work to preserve the potential value of the Mortgaged Property.

### LEHMAN IS ENTITLED TO THE APPOINTMENT OF A RECEIVER

47. Upon information and belief, the building that was on the Mortgaged Property has been demolished. A Receiver is immediately necessary in order to: ensure the maintenance and preservation of the Mortgaged Property; to obtain and preserve critical permits and approvals that are about to lapse; to complete the transfer of valuable development rights from the adjoining property to the Mortgaged Property; to merge the Mortgaged Property with a portion of the adjoining tax lot; to cure certain DOB violations in order to permit construction, and to prevent further deterioration and decline in the value of the Mortgaged Property.

48. Pursuant to the express terms of the Mortgages and the Loan Agreements, 45 Broad expressly covenanted and agreed that Lehman has the right, without notice or regard to the adequacy of security, to the appointment of a Receiver. Specifically, Section 7.1(g) of the Mortgages provides that Lehman may,

> apply for the appointment of a Receiver, trustee, liquidator or conservator of the Property, <u>without notice and without regard for the adequacy of the security for the Debt</u> and without regard for the solvency of Borrower, any guarantor, indemnitor with respect to Loan or of any Person liable for the Payment of the Debt."

(Emphasis added).

49. Additionally, pursuant to the terms of the Loan Agreements, 45 Broad again expressly covenanted and agreed that Lehman has the right, without notice or regard to the adequacy of security, to the appointment of a Receiver. Specifically, Section 8.2(h) of the Loan Agreements provides that,

> Upon the occurrence and during the continuation of an Event of Default, Lehman may appoint or seek appointment of a Receiver, <u>without notice and without regard to the solvency of Borrower or the adequacy of the security</u>, for the purpose of preserving the Property, preventing waste, and to protect all rights accruing to Lehman by virtue of this Agreement and the other [Loan Documents] . . . ."

(Emphasis added.)

50. Upon information and belief, the building on the Mortgaged Property was fully demolished with the intention by 45 Broad to receive various development rights and approvals and ultimately construct a new mixed-use building.

51. Upon information and belief, the Applications need to be pursued to completion to preserve the rights set forth in the Pre-Con.

52. Property taxes and other charges are not being paid by 45 Broad, and Lehman has made a number of protective advances.

53. Lehman's interest in the Mortgaged Property has been jeopardized as a result of 45 Broad's defaults.

54. A Receiver is necessary in order to, *inter alia*: prevent further deterioration of the Mortgaged Property; cure DOB violations; obtain the above-identified approvals, rights and other related development rights; and to advance construction activities.

55. Lehman has instituted this mortgage foreclosure action because of defendants' failure to comply with the terms and conditions of the Loan Documents and their failure to pay the outstanding indebtedness.

### LEHMAN RESPECTFULLY REQUESTS THAT THE COURT APPOINT PATRICIA MATTOON AS RECEIVER

56. Preserving the value of the Mortgaged Property requires special skills and experience. There is no income generated by the Mortgaged Property and, as noted, a number of approvals, applications and development rights must be maintained and preserved forthwith, in order to preserve the value of the Mortgaged Property.

57. Lehman has analyzed the Mortgaged Property's specific requirements and reviewed the qualifications that would be required of a Receiver in order to meet the special challenges presented by the Mortgaged Property.

58. After due consideration by Lehman and a diligent investigation of the matter, Lehman respectfully requests that this Court appoint Patricia Mattoon ("Mattoon") of Mattoon Real Estate Services ("MRES") as Receiver.

59. Mattoon of MRES has been approved as an eligible fiduciary Receiver pursuant to Part 36 of the Rule of the Chief Judge of the Courts of this State. (*See* Exhibit 4).

60. Additionally, Mattoon is a licensed real estate broker in the State of New York, and has relevant experience in the development process as well as managing projects similar to Mortgaged Property, including the preservation of development rights, approvals and related entitlements. (*See* Exhibit 5 (Mattoon Affidavit, filed in support of Lehman's Receiver Motion)).

{10529479;4}                                    13

61. Mattoon and I have inspected the Mortgaged Property and have conducted an extensive review and analysis of the property management, demolition, construction and remedial action needed at the Mortgaged Property. As is clear from her Affidavit, Mattoon is well versed in all aspects of maximizing the value of the Mortgaged Property and protecting the collateral.

62. In short, Lehman is confident that Mattoon will make a good steward of the asset and Mattoon's appointment will benefit not only Lehman, but 45 Broad and the other lien holders.

63. For these reasons, I respectfully request that the court grant Lehman's motion for the appointment of a Receiver, and, more specifically, appoint Mattoon as the Receiver of the Mortgaged Property.

**WHEREFORE,** I respectfully request that the Court grant Lehman's application in its entirety and appoint Mattoon as the Receiver for the Mortgaged Property, and grant such other and further relief as the Court may deem just and proper.

F. ROBERT BRUSCO

Sworn to before me this
12 day of October 2009

Notary Public

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

{10529479:4}                14