Hearing Date and Time: November 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :  Chapter 11 Case No.
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*                       :  08-13555 (JMP)
                                                                  :
          Debtors.                                                :  (Jointly Administered)
                                                                  :
------------------------------------------------------------------x

## NOTICE OF FILING OF FORM OF LIMITED RELEASE AGREEMENT FOR CERTAIN INSURERS UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES

**PLEASE TAKE NOTICE** that on November 9, 2011 the Debtors filed a motion (the "Motion") pursuant to sections 105, 362 and 363 of title 11 of the United States Code and Federal Rule of Bankruptcy Procedure 9019 for (i) approval of a compromise and settlement in connection with three mortgage backed securities related actions, (ii) authority to advance limited legal defense costs, (iii) modification of the automatic stay to allow settlement payments under the directors and officers insurance policies and (iv) authority to grant limited releases to certain insurers under the directors and officers insurance policies [ECF No. 21852].

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Motion, the Debtors are seeking Court approval to, among other things, grant certain insurers under the Debtors' 2007-08 and 2008-09 directors and officers liability insurance programs limited releases in connection with the

funding of settlement payments, with respect to three actions relating to the purchase of mortgage backed securities issued by trusts established by Structured Asset Securities Corporation (the "Debtors' Insurers' Releases"), all as more fully described in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtors' Insurers' Releases as described in the Motion will be in the form of, or substantially in the form of, the agreement annexed hereto as Exhibit A.

Dated: New York, New York
November 23, 2011

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**EXHIBIT A**

**DRAFT**

# AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is made and entered into by and among the following parties ("Parties"): Illinois National Insurance Company ("Illinois National"), Chartis Excess Limited f/k/a Starr Excess Liability Insurance International Limited and AIG Excess Liability Insurance International Limited ("Chartis Excess-Bermuda"), Axis Specialty Limited (Bermuda) ("Axis-Bermuda") (Illinois National, Chartis Excess-Bermuda and Axis-Bermuda collectively, the "2007-08 Insurers"), XL Specialty Insurance Company ("XL"), Federal Insurance Company ("Federal"), and U.S. Specialty Insurance Company ("USSIC") (together with XL and Federal, the "2008-11 Insurers") (collectively, the 2007-08 and 2008-11 Insurers are defined herein as the "Insurers"); Edward Grieb, Lana Franks Harber (also known as Lana Franks), Richard McKinney, Kristine Smith, James Sullivan, Samir Tabet, Mark Zusy, Richard S. Fuld, Jr., Christopher O'Meara and Barry J. O'Brien (collectively, the "Insured Persons"); and Lehman Brothers Holdings Inc. ("LBHI"). This Agreement will become effective on the date it is executed by all Parties.

## RECITALS

WHEREAS, the 2007-08 Insurers issued to LBHI the following insurance policies for the policy period May 16, 2007 to May 16, 2008 that, subject to the terms and conditions of the policies, provide certain insurance to the Insured Persons: Illinois National Insurance Policy No. 742-14-36 (the "Illinois National Policy"), Chartis Excess-Bermuda Liability Policy No. 6299064 (the "Chartis Excess-Bermuda Policy") and Axis-Bermuda Excess Policy No. 1130900107QA (the "Axis-Bermuda Policy") (the Illinois National Policy, Chartis Excess-Bermuda Policy and Axis-Bermuda Policy collectively are defined as the "2007-08 Policies");

1124679v1

**DRAFT**

WHEREAS, the 2008-11 Insurers issued to LBHI the following insurance policies for the policy period May 16, 2008 to May 16, 2009, extended by endorsement to May 16, 2011, that, subject to the terms and conditions of the policies, provide certain insurance to the Insured Persons:  XL Specialty Insurance Company Policy No. ELU104715-08 (the "XL 08-11 Policy"), Federal Insurance Company Policy No. 7043-0876 (the "Federal Policy"), and U.S. Specialty Insurance Company Policy No. 24-MGU-08-A16690 (the "USSIC Policy") (collectively the "2008-11 Policies");

WHEREAS, Edward Grieb, Lana Franks Harber, Richard McKinney, Kristine Smith, James Sullivan, Samir Tabet, and Mark Zusy (the "SASCO Insured Persons") were named as defendants in the purported class action lawsuit captioned *In re Lehman Brothers Mortgage-Backed Securities Litigation*, No. 08 Civ. 6762, United States District Court for the Southern District of New York ("Class Action Lawsuit");

WHEREAS, the Class Action Lawsuit was submitted to the Insurers for coverage under the 2007-08 Policies and the 2008-11 Policies;

WHEREAS, the 2007-08 Insurers raised certain coverage issues and defenses with respect to the Class Action Lawsuit and otherwise reserved all of their rights and defenses under the 2007-08 Policies, and the 2008-11 Insurers denied coverage for the Class Action Lawsuit under the 2008-11 Policies, on the basis that, among other things, the 2008-11 Policies require that the Class Action Lawsuit be treated as related to claims made in the prior policy period;

WHEREAS, the SASCO Insured Persons and LBHI  have taken the position that the Class Action Lawsuit should have been treated as a claim under the 2008-11 Policies, and reserved all of their rights and defenses with respect to insurance coverage for the Class Action Lawsuit;

2

DRAFT

WHEREAS, the SASCO Insured Persons also were named as defendants in the lawsuit captioned *Stichting Pensioenfonds ABP v. Merril Lynch & Co., et al.*, Civil Action No. 10-6637, United States District Court for the Southern District of New York ("Stichting Lawsuit");

WHEREAS, the Stichting Lawsuit was submitted to the Insurers for coverage under the 2007-08 Policies and the 2008-11 Policies;

WHEREAS, the 2007-08 Insurers raised certain coverage issues and defenses with respect to the Stichting Lawsuit and otherwise reserved all of their rights and defenses under the 2007-08 Policies, and the 2008-11 Insurers denied coverage for the Stichting Lawsuit under the 2008-11 Policies, on the basis that, among other things, the 2008-11 Policies require that the Stichting Lawsuit be treated as related to claims made in the prior policy period;

WHEREAS, the SASCO Insured Persons and LBHI have taken the position that the Stichting Lawsuit should have been treated as a claim under the 2008-11 Policies, and reserved all of their rights and defenses with respect to insurance coverage for the Stichting Lawsuit;

WHEREAS, all of the Insured Persons were named as defendants in the lawsuit captioned *Federal Home Loan Bank of Boston v. Ally Financial, Inc. f/k/a GMAC LLC, et al.*, 11-1533 (Mass. Super. Ct. Dept.) ("the FHLB Lawsuit");

WHEREAS, the FHLB Lawsuit was submitted to the Insurers for coverage under the 2007-08 Policies and the 2008-11 Policies;

WHEREAS, the 2007-08 Insurers raised certain coverage issues and defenses with respect to the FHLB Lawsuit and otherwise reserved all of their rights and defenses under the 2007-08 Policies, and the 2008-11 Insurers denied coverage for the FHLB Lawsuit under the 2008-11 Policies, on the basis that, among other things, the policies require that the FHLB Lawsuit be treated as related to claims made in the prior policy period;

WHEREAS, the Insured Persons and LBHI have taken the position that the FHLB Lawsuit should have been treated as a claim under the 2008-11 Policies, and reserved all of their rights and defenses with respect to insurance coverage for the FHLB Lawsuit;

WHEREAS, Loss, including Defense Expenses, as those terms are defined in the XL 07-08 Policy, has been paid under, and has exhausted or shall fully exhaust the limits of liability of, the underlying policies, including the XL 07-08 Policy, issued for the May 16, 2007 to May 16, 2008 policy period, over which the Illinois National Policy, Chartis Excess-Bermuda Policy and Axis-Bermuda Policy provide excess coverage;

WHEREAS, a mediation was held to negotiate the potential settlement of the Class Action Lawsuit, the Stichting Lawsuit and the FHLB Lawsuit (collectively the "Mortgage-Backed Securities Litigation") under the supervision of The Honorable Daniel H. Weinstein (Ret.);

WHEREAS, with the concurrence of LBHI, the SASCO Insured Persons have agreed to settle the claims asserted against them in the Class Action Lawsuit for, among other things, a payment of Forty Million Dollars ($40,000,000), executed term sheets in connection with that settlement on November 2, 2011, and will execute a Stipulation of Settlement and Release (the "Class Action Settlement Agreement") in the Class Action Lawsuit that will, subject to court approvals and other conditions, fully compromise, dismiss with prejudice and settle the claims against them in the Class Action Lawsuit (the "Class Action Settlement");

WHEREAS, with the concurrence of LBHI, the SASCO Insured Persons have agreed to settle the claims asserted against them in the Stichting Lawsuit for, among other things, a payment of Three Million Dollars ($3,000,000), executed Settlement Agreement and Mutual Release in connection with that settlement on November 8, 2011 (the "Stichting Settlement

**DRAFT**

Agreement ") in the Stichting Lawsuit that will, subject to court approvals and other conditions, fully compromise, dismiss with prejudice and settle the claims against them in the Stichting Lawsuit (the "Stichting Settlement");

WHEREAS, with the concurrence of LBHI, the Insured Persons have agreed to settle the claims asserted against them in the FHLB Lawsuit for, among other things, a payment of Three Million Dollars ($3,000,000), executed a Settlement Agreement and Mutual Release in connection with that settlement on November 8, 2011 (the "FHLB Settlement Agreement") in the FHLB Lawsuit that will, subject to court approvals and other conditions, fully compromise, dismiss with prejudice and settle the claims against them in the FHLB Lawsuit ("the FHLB Settlement") (together with the Class Action Settlement and the Stichting Settlement, the "Mortgage-Backed Securities Settlements");

WHEREAS, the limits of liability of the insurance policies over which the 2007-08 Policies provide excess coverage have been, or shall be, fully and completely exhausted by payment of Loss, including Defense Expenses, as such terms are defined in the primary XL 07-08 Policy ;

WHEREAS, subject to, and consistent, with the respective remaining limits of liability of the 07-08 Policies, the 2007-08 Insurers have agreed to contribute on behalf of the Insured Persons Twenty-Nine Million Four Hundred Thousand Dollars ($29,400,000) to fund the Mortgage-Backed Securities Settlements, which will include an amount to be determined by the 2007-08 Insurers from the Illinois National Policy's limit of liability, an amount to be determined by the 2007-08 Insurers from the Chartis Excess-Bermuda Policy's limit of liability, and an amount to be determined by the 2007-08 Insurers from the AXIS-Bermuda Policy's limit of liability, such amounts to be disclosed by the 2007-08 Insurers to the other Parties to this

5

DRAFT

Agreement no later than five (5) business days after the later of entry of the "Comfort Orders" and "Bankruptcy Orders" as such terms are defined at Paragraph 1 below (the "2007-08 Payments");

WHEREAS, the 2008-11 Insurers have agreed to contribute on behalf of the SASCO Insured Persons an additional Eight Million Three Hundred Thousand Dollars ($8,300,000) from the 2008-11 Policies to fund the Class Action Settlement in exchange for the releases described below, such payment to include Four Million Dollars ($4,000,000) from the limits of liability of the XL 08-11 Policy, Two Million Five Hundred Thousand Dollars ($2,500,000) from the limits of liability of the Federal Policy, and One Million Eight Hundred Thousand Dollars ($1,800,000) from the limits of liability of the USSIC Policy (the "2008-11 Payments");

WHEREAS, LBHI will contribute Eight Million Three Hundred Thousand Dollars ($8,300,000) to fund the Class Action Settlement;

WHEREAS, in exchange for such payments by the Insurers, LBHI and the Insured Persons have agreed to release the Insurers as provided below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

1. **<u>Bankruptcy Court Approval</u>.**

For good and valuable consideration the receipt of which is hereby acknowledged, the Insured Persons and/or LBHI shall seek entry by the U.S. Bankruptcy Court for the Southern District of New York of an Order or Orders (a) authorizing relief from the automatic stay to the extent applicable and approving the use of the proceeds of the 07-08 Policies and 08-11 Policies to fund the Mortgage-Backed Securities Settlements ("Comfort Orders"), and (b) approving LBHI's release as set forth at Paragraph 3 below ("Bankruptcy Orders").

6

1124679v1

**DRAFT**

**2**.     **<u>Payments To Be Made in Connection with Mortgage-Backed Securities Settlements</u>.**

On behalf of the Insured Persons, the following payments shall be made:

a.     The 2007-08 Insurers shall make two payments, of Three Million Dollars ($3,000,000) each (the "Stichting Payment" and the "FHLB Payment") (together, totaling Six Million Dollars), into escrow (as provided for in the Stichting and FHLB Settlement Agreements), no later than ten (10) business days after entry of Comfort Order(s) and Bankruptcy Order(s); provided that, at least ten (10) business days prior to such Payments, each of the 07-08 Insurers has received sufficient payment instructions and an executed Form W-9 from the escrow administrator, copies of the fully executed Stichting and FHLB Settlement Agreements, and a fully executed copy of this Agreement.

b.     The following parties shall pay a total of Forty Million Dollars ($40,000,000) (altogether, the "Class Action Payments"), in the following manner:

    i.     Twenty-three Million Four Hundred Thousand Dollars ($23,400,000) to be paid by the 2007-08 Insurers from the respective limits of the Illinois National Policy, Chartis Excess-Bermuda Policy and Axis-Bermuda Policy as specified in the fourth-to-last WHEREAS clause of this Agreement;

    ii.     Four Million Dollars ($4,000,000) to be paid by XL from the limits of the XL 08-11 Policy;

    iii.     Two Million Five Hundred Thousand Dollars ($2,500,000) to be paid by Federal, from the limits of the Federal Policy;

    iv.     One Million Eight Hundred Thousand Dollars ($1,800,000) to be paid by USSIC from the limits of the USSIC Policy; and

1124679v1

           v.        Eight Million Three Hundred Thousand Dollars ($8,300,000) to be paid by LBHI.

    c.    The Class Action Payments shall be made into escrow (as provided in the Class Action Settlement Agreement) by the relevant parties no later than ten (10) business days after entry of a Comfort Order and a Bankruptcy Order, or the execution of the Class Action Settlement Agreement, whichever is later; provided that, at least ten (10) business days prior to such Payments, each such Insurer has received sufficient payment instructions and an executed FormW-9 from the escrow administrator, a copy of the fully executed Class Action Settlement Agreement, and a fully executed copy of this Agreement.

    d.    No Insurer under the 2007-08 Policies shall be liable for or responsible to contribute to any Payment more than its remaining limit of liability under its respective policy or, with respect to the 2008-11 Insurers, more than the agreed upon 2008-11 Payments.

    e.    The Parties acknowledge and agree that the Insurers' obligations under the Policies and under this Agreement are several and not joint and under no circumstances shall any Insurer be responsible for any portion of the payments in excess of the amount allocated to it in this Paragraph 2.

**3.**    **Mutual Releases.**

    a.    Upon the Effective Date (as defined in Class Action Settlement Agreement), LBHI, on its own behalf and on behalf of those of its affiliates that it controls, and the Insured Persons, on their own behalf and on behalf of their respective past and present attorneys, accountants, agents, spouses, children, heirs, successors, predecessors-in-interest, assigns, trusts, executors, estates, administrators, and principals ("Insured Parties"), hereby release and forever discharge the 2007-08 Insurers and their respective parents, affiliates and direct and indirect

8

**DRAFT**

subsidiaries, and their respective present or former directors, officers, partners, members, associates, employees, shareholders, attorneys, accountants, auditors, advisors, insurers, reinsurers, representatives, heirs, executors, administrators, principals, agents, successors and assigns (the "2007-08 Insurer Parties"), from any and all actual or potential actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever, in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise ("Causes of Action"), which the Insured Parties had, have, or may have in the future against the Insurer Parties based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving (i) the 2007-08 Policies exhausted and/or partially exhausted by the payment of Loss, including Defense Expenses, in the Mortgage-Backed Securities Litigation; (ii) the Mortgage-Backed Securities Litigation, the allegations of the Mortgage-Backed Securities Litigation, or the same or related facts, series of related facts, circumstances, situations, transactions or events alleged in the Mortgage-Backed Securities Litigation; (iii) any claim for Defense Expenses, fees and costs incurred in connection with the Mortgage-Backed Securities Litigation; (iv) any notice of claim or notice of potential claim based on the Mortgage-Backed Securities Litigation; or (v) any claim for misrepresentations, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to the pursuit of coverage for the Mortgage-Backed Securities Litigation (the "2007-08 Release"). In the event that the Class Action Settlement does not receive necessary court approval, or if for any other reason the Effective Date of the Class Action Settlement is not triggered, the above release will apply to the requests for coverage for the

9

**DRAFT**

Stichting Lawsuit and the FHLB Lawsuit alone, provided that the Stichting Payment and the FHLB Payment have been paid in full. Notwithstanding the foregoing, with respect to clause (i) above, the Insured Parties and the 2007-08 Insurer Parties recognize and agree that this release extends to the 2007-08 Policies only to the extent that their respective limits of liability have been paid or shall be paid as Loss, as that term is defined in the primary XL 07-08 Policy, in connection with the Settlement and defense of the Mortgage-Backed Securities Litigation.

      b.      Upon the Effective Date (as defined in Class Action Settlement Agreement), LBHI, on its own behalf and on behalf of those of its affiliates that it controls, and the Insured Persons, on their own behalf and on behalf of their respective past and present attorneys, accountants, agents, spouses, children, heirs, successors, predecessors-in-interest, assigns, trusts, executors, estates, administrators, and principals ("Insured Parties"), hereby release and forever discharge the 2008-11 Insurers and their respective parents, affiliates and direct and indirect subsidiaries, and their respective present or former directors, officers, partners, members, associates, employees, shareholders, attorneys, accountants, auditors, advisors, insurers, reinsurers, representatives, heirs, executors, administrators, principals, agents, successors and assigns (the "2008-11 Insurer Parties"), from any and all actual or potential actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever, in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise ("Causes of Action"), which the Insured Parties had, have, or may have in the future against the Insurer Parties based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving (i) the Mortgage-Backed Securities Litigation, the allegations of the Mortgage-Backed Securities Litigation, or the same or related facts, series of

10

related facts, circumstances, situations, transactions or events alleged in the Mortgage-Backed Securities Litigation; (ii) any claim for defense fees and costs incurred in connection with the Mortgage-Backed Securities Litigation; (iii) any notice of claim or notice of potential claim based on the Mortgage-Backed Securities Litigation; or (iv) any claim for misrepresentations, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to the pursuit of coverage for the Mortgage-Backed Securities Litigation (the "2008-11 Release"). For the avoidance of doubt, the foregoing release shall not apply to claims against Insured Persons in connection with the matters captioned *Fried, et al. v. Lehman Brothers Real Estate Associates III, L.P., et al.* (S.D.N.Y.) and *Fried, et al. v. Lehman Brothers Real Estate Associates III, L.P., et al.*, Index No. 651461/2011 (N.Y. Sup. Ct.) (together, the "Fried Litigation").

       c.      Upon the Effective Date (as defined in the Class Action Settlement Agreement), the Insurer Parties hereby release and forever discharge the Insured Parties, and their past and present attorneys, accountants, agents, spouses, children, heirs, successors, predecessors-in-interest, assigns, trusts, executors, estates, administrators and principals from all and any Causes of Action which the Insurer Parties had, have, or may have in the future against the Insured Parties based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the Insured Parties' investigation, evaluation and handling of the claim arising from the Mortgage-Backed Securities Litigation.

**4.** **Unknown Claims.**

With respect to the releases set forth in Paragraph 3 of this Agreement, each of the Parties expressly understands, acknowledges and assumes the risk that claims and/or liabilities may exist

11

1124679v1

but presently be unknown, or that losses resulting from such claims or liabilities may presently be unknown or overestimated or underestimated in amount or severity, and each of the Parties has taken the possibility of unknown, underestimated or overestimated claims and liabilities into account in determining the amount of consideration to be paid in exchange for the releases provided in this Agreement.  The Parties, on their own behalf and on behalf of their respective Insured Parties and Insurer Parties, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of any statute or principle of common law of the United States or any other state, territory or country, which narrowly construes releases purporting by their terms to release such unknown or underestimated or overestimated claims and/or liabilities in whole or in part, or restricts or prohibits the releasing of such claims and/or liabilities or otherwise relates to the release of unknown claims.

5. **Policy Erosion.**

The Parties acknowledge that the payments made under the Illinois National Policy, Chartis Excess-Bermuda Policy, Axis-Bermuda Policy, XL 08-11 Policy, Federal Policy and USSIC Policy will reduce the limits of those Insurers' respective limits of liability under their respective policies.  In connection with the 2008-11 Payments, such payments will be made by the 2008-11 insurers without regard to their policies' language requiring exhaustion of underlying limits of liability, solely with respect to the amounts allocated to each 2008-11 Insurer in the 2008-11 Payments in Paragraph 2 above.

6. **Failure to Obtain Court Approval.**

In the event that any Settlement is terminated, voided or otherwise fails to obtain the necessary final court approvals, then the Payment(s) with respect to such Settlement(s) set forth in Paragraph 2 above shall be fully repaid to the relevant Insurer(s) directly from the escrow

DRAFT

account, as per their respective contributions to the Payment(s), plus any interest or other income earned thereon in proportion to the amount returned to each of the Insurer(s), but less the actual costs of notice and settlement administration except that notice and settlement administration costs shall first be deducted from the amount(s) to be returned to the lower layer 07-08 Insurer(s), and the releases by the Insured Parties of the Insurer Parties and by the Insurer Parties of the Insured Parties shall have no force and effect, except that if the Stichting and FHLB settlements receive final, nonappealable approval, the releases in connection with those lawsuits will remain in effect, per the terms of Paragraph 3.a. above.

**7.     No Admission of Liability or Coverage.**

This Agreement represents a compromise of disputed claims, and payment hereunder shall not be construed as an admission by any Party of coverage or lack of coverage.

**8.     No Assignment.**

The Parties represent and warrant that there has been no, and agree that there will be no, assignment or other transfer of any interest in any part of the Release which they release and discharge pursuant to this Agreement.

**9.     Severability.**

In the event any of the provisions of this Agreement are deemed to be invalid and unenforceable, those provisions shall be severed from the remainder of this Agreement only if and to the extent agreed upon by the Parties.

**10.    Entire Agreement.**

The Parties agree and acknowledge that this Agreement constitutes the entire agreement among the Parties regarding the settlement and release of the matters specified herein and that

this Agreement shall not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a duly executed writing by all of the Parties.

11. **Construction of Agreement.**

All Parties participated in the drafting of this Agreement. This Agreement will not be construed against the Party preparing it, but will be construed as if all Parties had prepared it, and it will not be construed against any Party merely because that Party is an insurance company.

12. **Assumption of Risk.**

Each Party to this Agreement understands, acknowledges and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each Party expressly assumes the risk of such difference in fact and agrees that this Agreement shall and will remain effective notwithstanding any such difference in fact.

13. **Choice of Law.**

The Parties agree New York law (without regard to New York's conflict of law rules) shall govern the interpretation and enforcement of this Agreement.

14. **Advice of Counsel.**

The Parties hereby acknowledge that they have been represented and advised by counsel in connection with the execution of this Agreement.

15. **No Jurisdiction for Bermuda Insurers.**

The Parties agree and acknowledge that the negotiation, execution, and performance of this Agreement and any actions by Chartis Excess-Bermuda and Axis-Bermuda (collectively, the "Bermuda Insurers"), or their respective attorneys or agents, in connection with this Agreement shall not be deemed to be and shall not constitute any admission of or any evidence that the Bermuda Insurers in any way do business in the United States, or any state, territory, or possession of the United States, or that the Bermuda Insurers are

14

1124679v1

**DRAFT**

subject to the jurisdiction of any United States federal or bankruptcy court, or of any court of any state, territory or possession of the United States.

16. **Dispute Resolution.**

Any dispute among the Parties regarding this Agreement shall in the first instance be referred to The Honorable Daniel H. Weinstein (Ret.) or other agreed-upon neutral for mediation.

17. **Execution in Counterparts.**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. Copies of all or part of this Agreement, including signatures thereto, that are transmitted by facsimile or electronic mail shall be presumed valid. Facsimile, electronic or PDF transmitted signatures shall be deemed to have the full force and effect of original ink signatures.

18. **Authority.**

Each person signing this Agreement warrants and represents that he or she has read this Agreement and has the necessary authority to execute this Agreement individually and on behalf of his or her respective principals, if any.

IN WITNESS WHEREOF, each of the undersigned Parties has caused this Agreement to be duly executed on his, her or its behalf.

_____
EDWARD GRIEB

_____
LANA FRANKS HARBER

_____
RICHARD McKINNEY

15

**DRAFT**

_____
KRISTINE SMITH

_____
JAMES SULLIVAN

_____
SAMIR TABET

_____
MARK ZUSY

_____
RICHARD S. FULD, JR.

_____
CHRISTOPHER O'MEARA

_____
BARRY J. O'BRIEN

LEHMAN BROTHERS HOLDINGS INC.

BY:_____

ITS:_____

CHARTIS CLAIMS INC. ON BEHALF OF ILLINOIS NATIONAL INSURANCE COMPANY

BY:_____

ITS:_____

**DRAFT**

CHARTIS CLAIMS INC. ON BEHALF OF CHARTIS EXCESS LIMITED F/K/A STARR EXCESS LIABILITY INSURANCE INTERNATIONAL LIMITED AND AIG EXCESS LIABILITY INSURANCE INTERNATIONAL LIMITED

BY: _____

ITS: _____

AXIS SPECIALTY LIMITED (BERMUDA)

BY: _____

ITS: _____

XL SPECIALTY INSURANCE COMPANY

BY: _____

ITS: _____

FEDERAL INSURANCE COMPANY

BY: _____

ITS: _____

U.S. SPECIALTY INSURANCE COMPANY

BY: _____

ITS: _____

17