**Hearing Date and Time: November 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 25, 2011 at 4:00 p.m. (Prevailing Eastern Time)[1]**

Robert F. Elgidely, Esq. (RE-0512)
Carlos E. Sardi, Esq.
Barry P. Gruher, Esq.
Michael A. Friedman, Esq.
GENOVESE, JOBLOVE & BATTISTA, P.A.
Miami Tower
100 S.E. 2nd Street, Suite 4400
Miami, Florida  33131
(305) 349-2300 (tel.)
(305) 349-2310 (fax)

Attorneys for the Respondent

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                          :    Chapter 11
                                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    Case No. 08-13555-JMP
                                                                :
                         Debtors.                       :
-----------------------------------------------------------------x

**JAMIE MURCIA'S RESPONSE IN OPPOSITION TO DEBTORS' OBJECTION TO CLAIM NO. 57415 IN THEIR TWO HUNDRED FIFTEENTH OMNIBUS OBJECTION TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

TO:    THE HONORABLE JAMES M. PECK,
       UNITED STATES BANKRUPTCY JUDGE:

**JAIME MURCIA** ("Murcia" or "Respondent"), by and through undersigned counsel, files this Response (the "Response") in Opposition to the Two Hundred Fifteenth Omnibus Objection to Disallow and Expunge Certain Filed Proofs of Claim [ECF No. 20104] (the "Objection"), filed by Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates

---

[1] On November 3, 2011, the Debtor agreed to extend the deadline for Banco Sabadell's customers (including the Respondent) to file responses to the Debtor's Two Hundred Fifteenth Omnibus Objection To Disallow And Expunge Certain Filed Proofs of Claim to November 25, 2011.

(collectively with LBHI, the "Debtors"). In support of the Response, the Respondent respectfully states as follows:

## BACKGROUND

1.      On September 15, 2008 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      On May 26, 2009, the Debtors filed a motion seeking to establish a deadline for the filing of claims [ECF No. 3654] (the "Bar Date Motion").

3.      On July 2, 2009, this Court entered an order establishing certain deadlines for filing proofs of claims [ECF No. 4271] (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for claims related to certain securities issued by the Debtors (a "Lehman Programs Security") was set as November 2, 2009 (the "Securities Programs Bar Date").

4.      On July 27, 2009, the Debtors issued a notice of the Securities Programs Bar Date (the "Securities Programs Bar Date Notice"), which stated that "You MUST filed a Securities Programs Proof of Claim to share in LBHI's estate if you have a claim based on a Lehman Programs Security[.]" (emphasis in original).

5.      On October 12, 2009, pursuant to the Securities Programs Bar Date, Respondent timely filed a proof of claim for an unsecured claim in the principal sum of $1,417,829.53[2] against the Debtors (the "Proof of Claim") on account of LBHI's guarantee of securities issued

---

[2] On March 11, 2011, the Debtors filed their One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims) [ECF No. 14950]. The One Hundred Second Omnibus Objection sought to disallow or expunge Respondent's Proof of Claim, among others, because the amount of the claim was denominated in foreign currency rather than U.S. dollars. Respondent filed a Response in Opposition [ECF No. 15945], and ultimately the Debtors withdrew the One Hundred Second Omnibus Objection as to certain creditors, including the Respondent, pursuant to Court Order. *See* Order Granting Debtors' One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims) [ECF No. 16602]. Respondent also filed an amended proof of claim denominating the amount of claim in U.S. currency.

by Lehman Brothers UK Capital Funding IV LP ("LB UK IV"), with ISIN XS0282978666 (the "LB UK IV Securities").

6. The LB UK IV Securities were issued pursuant to a prospectus dated January 4, 2007 (the "Prospectus"). LBHI guaranteed all obligations of LB UK IV to the holders of the LB UK IV Securities by separate guarantee executed contemporaneously with the Prospectus (the "Subordinated Guarantee").

7. On September 16, 2011, the Debtors filed the Objection, seeking to disallow and expunge Respondent's Proof of Claim, among others. The Debtors assert that they have no liability on the Subordinated Guarantee because LB UK IV Securities terminated upon the alleged dissolution of LB UK IV on June 22, 2010. Alternatively, the Debtors assert that the Proof of Claim should be subordinated and reclassified as equity pursuant to the terms of the Subordinated Guarantee.

8. The Objection also seeks to disallow and expunge, or subordinate, securities issued by Lehman Brothers UK Capital Funding V LP ("LB UK V"). All of the arguments in the Objection relating to LB UK IV are identical to those arguments relating to LB UK V, as are the prospectuses of LB UK V and LB UK IV, and LBHI's subordinated guarantees relating to LB UK V and LB UK IV. Accordingly, the arguments set forth in this Response apply with equal force to any rights Respondent may have with respect to LB UK V, which rights Respondent expressly reserves.

## ARGUMENT

9. As set forth below, the Court should overrule the Objection for several reasons.

**A.    The Amount and Validity of Respondent's Proof of Claim should be Determined as of the Petition Date.**

10. Section 502(b) of the Bankruptcy Code provides that the Court shall determine

3

the amount of claims "as of the date of the filing of the petition[.]"  11 U.S.C. § 502(b).

11. As of the Petition Date, LB UK IV (and similarly LB UK V) was in existence and had not yet allegedly dissolved.  Therefore, as of the Petition Date, the LB UK IV Securities had not terminated, and LBHI's guarantee of the LB UK IV was extant, valid and enforceable.  Consequently, Respondent's claim based on the Subordinated Guarantee is valid and enforceable, notwithstanding the alleged subsequent *post-petition* dissolution of LB UK IV, and notwithstanding any alleged impact such dissolution had on the Respondent's unsecured claim against the Debtors' estates as of the Petition Date.

**B.     Issues of Fact Preclude the Court from Sustaining the Objection.**

12. In the Objection, the Debtors rely on LB UK IV's dissolution to argue that the LB UK IV Securities have terminated. Objection ¶ 10. The Debtors' reliance on LB UK IV'S dissolution is troubling, considering that LB UK IV's general partner (the "General Partner") was a wholly owned subsidiary of LBHI pursuant the Subordinated Guarantee and Prospectus.  *See* Subordinated Guarantee at § 3.3(b); Prospectus at page 10.  Further, LBHI's bankruptcy is the event that gave rise to LBHI's ability, if any, to dissolve the General Partner.  *See* Prospectus at 9 ("LBHI will not take any action that would or might cause the liquidation, dissolution, or winding-up of the General Partner" unless a "Triggering Event Occurs or LBHI is being wound up").  Thus, the ultimate event giving rise to the Objection occurred, if at all, as early as the September 2008 Petition Date.

13. Although LBHI was presumably aware of its purported ability to dissolve the General Partner as early as 2008, the Debtors issued the Securities Programs Bar Date Notice on July 27, 2009, which required claimants to file proofs of claim before the November 2, 2009 Securities Programs Bar Date.  Respondent filed the Proof of Claim pursuant to, and in reliance

4

on, the instructions set forth in the Securities Programs Bar Date Notice. Moreover, the Debtors filed their One Hundred Second Omnibus Objection to Claims on March 11, 2011, causing the Respondent to incur attorneys' fees and costs in defending the Proof of Claim.

14. Significantly, at all these times, LBHI *alone* had the ability, if any, to bring about the events on which the instant Objection is premised. These circumstances are at best suspect, let alone extremely inequitable, and at the very least require an evidentiary hearing to determine the circumstances surrounding the alleged dissolution of the General Partner. By way of example, but not limitation, the Court must determine whether this act was *ultra vires*, or whether LBHI was required to obtain court approval before undertaking this action to the extent that a dissolution of LB UK IV was tantamount to the use, sale or other disposition of estate property outside the ordinary course of the Debtors' business, subject to the provisions of Section 363 of the Bankruptcy Code. *See In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 130, 140 (Bankr. D. Me. 1991) (holding that voting shares of stock or membership interests that are property of the estate is "use" of estate property requiring notice and a hearing under § 363(b)(1)).

15. Here, a corollary argument exists: the General Partner of LB UK IV, a wholly owned subsidiary of LBHI, could only have dissolved LB UK IV with the authorization of LBHI. Granting this authorization would require LBHI to exercise its voting and other rights as shareholder, officer, director, member, manager or similar position in or of the General Partner, which in turn would require the Court's authorization pursuant to Section 363(b)(1) of the Bankruptcy Code. Notably, the Objection fails to explain the circumstances under which LB UK IV was dissolved and LBHI's participation, if any, in the dissolution process under applicable law.

16. In addition to the complete lack of disclosure surrounding the dissolution of the General Partner, the Prospectus and Subordinated Guarantee contain numerous ambiguities that preclude the Court from disallowing, expunging, or reclassifying the Respondent's claim without at least the benefit of an evidentiary hearing.[3]

17. As the Objection indicates, Section 4 of the Subordinated Guarantee provides that the Subordinated Guarantee "shall terminate and be of no further force and effect upon the earliest of . . . dissolution of the issuer." However, in the very same sentence, Section 4 also states that notwithstanding an event of termination, "this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever" (the "Saving Clause").

18. The circumstances that trigger the Saving Clause are not clear from the Guarantee itself, and the Objection selectively excerpts language from Section 4 and ignores the Savings Clause altogether in an effort to bolster the Debtors' arguments. The Court should not sustain the Objection without resolving this ambiguity, particularly considering that the Debtors' entire argument as to disallowance relies solely on Section 4 of the Subordinated Guarantee.

19. Additionally, the Debtors' argument that they have no liability under the Subordinated Guarantee as a result of LB UK IV's alleged dissolution is contrary to the terms of the Prospectus.

20. The Prospectus sets forth Respondent's "Rights upon Liquidation" at page 9 thereof. That section provides "[i]n the event of the dissolution of the Issuer, Holders will be entitled to receive, subject as set out below, for each Preferred Security a Liquidation

---

[3] The Prospectus is attached to the Objection as Exhibit B. The Prospectus contains the terms of the Guarantee "substantially in the form to be executed by LBHI," Objection n.1, and both Objection and this Response refer to the terms of the Guarantee as set forth in the Prospectus.

6

Distribution out of the assets of the Issuer legally available for distribution." The Debtors have failed to articulate any basis why they are not liable for such Liquidation Distributions on account of the Subordinated Guarantee.

### C.  The Debtors Cannot "Reclassify" Respondent's Claim.

21. The Debtors alternatively request that the Respondent's claim be reclassified as equity. Objection ¶ 11. There is no basis for this argument under the Prospectus or Guarantee.

22. Section 2.9 of the Subordinated Guarantee provides that LBHI's liability under the Subordinated Guarantee constitutes an "unsecured obligation[,]" and specifically provides that such obligation is senior to "Junior Share Capital of LBHI," which consists, *inter alia*, of LBHI common stock. Further, Section 2.9 provides that LBHI's liability under the Subordinated Guarantee is "*pari passu* with Parity Securities[,]" which Section 1 of the Guarantee defines as "any non-cumulative preferred stock" and "non-cumulative preferred securities[.]" Finally, Section 2.9 of the Subordinated Guarantee provides that LBHI's liability on the Guarantee is junior to "subordinated liabilities of LBHI," which is not a defined term under the Guarantee or Prospectus. Thus, under the plain terms of the Subordinated Guarantee, Respondent's claim is senior to common stock. LBHI concedes as much in its Objection. *See* Objection ¶ 13 and n. 4.

23. However, to the extent that the Court does reclassify Respondent's claim as equity, such equity claim should maintain its priority and respective rights of distribution and remuneration relative to other equity as set forth in the Prospectus or Subordinated Guarantee.

### D.  Reservation of Rights.

24. Respondent reserves any and all rights at law, equity, or arising under the Prospectus or Subordinated Guarantee, including without limitation, the right to seek appropriate discovery in connection with any evidentiary hearing on the Objection, or to raise or join with

new arguments in response to the Objection as they may become available or apparent.

**WHEREFORE,** the Respondent, Jaime Murcia, respectfully requests that the Court overrule the Objection in its entirety and allow Claim No. 57415, and grant such further relief as the Court may deem appropriate.

Dated: November 23, 2011
  Miami, Florida

                Respectfully submitted,

                GENOVESE, JOBLOVE & BATTISTA, P.A.

                By: /s/ Robert F. Elgidely
                    Robert F. Elgidely, Esq. (RE-0512)
                    Carlos E. Sardi, Esq.
                    Barry P. Gruher, Esq.
                    Michael A. Friedman, Esq.
Miami Tower
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Telecopier: (305) 349-2310

*Attorneys for the Respondent*