**Hearing Date:  November 30, 2011 at 10:00 a.m. (Eastern Time)**
**Response Deadline:  November 25, 2011 at 4:00 p.m. (Eastern Time)**
**(by agreement with the Debtors)**

**LOWENSTEIN SANDLER, PC**
Michael S. Etkin
Michael Savetsky
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402

      -and-

65 Livingston Avenue
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400

*Attorneys for Andorra Banc Agricol REIG, S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF ANDORRA BANC AGRICOL REIG, S. A.**
**TO DEBTORS' TWO HUNDRED SIXTEENTH OMNIBUS OBJECTION**
**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

      Andorra Banc Agricol REIG, S. A. ("Andbanc"), by and through its undersigned counsel, hereby files its response (the "Response") to the Debtors' Two Hundred Sixteenth Omnibus Objection to Disallow and Expunge Certain Filed Proofs of Claim (the "Objection") [Docket No. 20105], and respectfully represents as follows:

**BACKGROUND**

      1.      Beginning on September 15, 2008 (the "Petition Date") and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, the

"Debtors") filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.      Prior to the commencement of these chapter 11 cases, Lehman Brothers UK Capital Funding IV LP ("LB UK IV") and Lehman Brothers UK Capital Funding V LP ("LB UK V" and, together with LB UK IV, the "UK Capital Funding Entities" or the "Issuers"), issued certain series of Enhanced Capital Advantaged Preferred Securities (the "LB UK IV Securities" and the "LB UK V Securities" respectively, and collectively, the "Securities").  The LB UK IV Securities were issued pursuant to a prospectus dated January 4, 2007 (the "LB UK IV Prospectus"), and the LB UK V Securities were issued pursuant to a prospectus dated May 11, 2007 (the "LB UK V Prospectus" and, together with the LB UK IV Prospectus, the "Prospectuses").

3.      LBHI guaranteed all obligations of the UK Capital Funding Entities to the holders of the Securities by separate guarantees executed contemporaneously with, and attached to, each of the Prospectuses (collectively, the "LBHI Guarantees").

4.      On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271].  The Bar Date Order created a separate claims process for filing guarantee claims against LBHI for holders of certain "program securities" issued by non-debtor affiliates of LBHI outside of the United States and establishing November 2, 2009 as the bar date for filing these claims (collectively, the "LPS Claims Process"). As part of the LPS Claims Process, on July 27, 2009, LBHI issued a Notice of Deadlines for Filing Proofs of Claim Based on Lehman Programs Securities (the "LPS Claims Notice").

5.      The LPS Claims Notice directed creditors to LBHI's restructuring website, where a list of securities subject to the LPS Claims Process was posted.  The LB UK IV Securities and the LB UK V Securities were included on that list and, as of the date of this Response, remain on that list.

6.      The LPS Claims Notice instructed that "You **MUST** file a **Securities Programs Proof of Claim** [the LPS Claims Process claims form] to share in LBHI's estate if you have a claim based on a Lehman Programs Security" (emphasis in original).

7.      The only way for Andbanc, which held LB UK IV Securities and LB UK V Securities, to pursue its guarantee claims against LBHI was to file claims through the LPS Claims Process.

8.      Andbanc complied with the express requirements of the LPS Claims Notice and timely filed a proof of claim against LBHI in the amount of $9,885,982, which was assigned proof of claim no. 63849 (the "Proof of Claim").  The Proof of Claim asserted claims relating to 15 separate securities, identified in an attachment to the Proof of Claim, including (i) a claim against LBHI in the amount of $1,701,600 on account of LBHI's guarantee of the LB UK IV Securities and (ii) a claim against LBHI in the amount of $538,000 on account of LBHI's guarantee of the LB UK V Securities (such portions of the Proof of Claim are referred to together herein as the "Claims").

9.      On September 1, 2011, the Debtors filed their *Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* dated August 31, 2011 [Docket No. 19627] (the "Plan").  The Plan is currently pending before the Court, and a confirmation hearing is scheduled for December 6, 2011.

10.       On September 16, 2011, the Debtors filed the Objection.

## RESPONSE

11.     In the Objection, the Debtors make two arguments.  First, the Debtors argue that pursuant to the terms of the LBHI Guarantees, LBHI has no liability on account of the Claims because the LBHI Guarantees terminated upon the alleged dissolution of LB UK IV and LB UK V pursuant to the terms of their respective limited partnership agreements.[1]  Second, the Debtors maintain, in the alternative, that even if LBHI continues to have guarantee liability, the Claims should be subordinated and reclassified as equity pursuant to section 2.9 of the LBHI Guarantees.  For the reasons set forth below, each of these arguments should be rejected.

## I.     THE CLAIMS SHOULD NOT BE DISALLOWED

A.     The Claims are Valid Regardless of the Alleged Postpetition Termination of the LBHI Guarantees.

12.     At the time that Andbanc filed the Proof of Claim, the UK Capital Funding Entities were in existence.  Even if LBHI's obligations under the LBHI Guarantees were terminated upon the alleged post-petition and post-Bar Date Order dissolution of the UK Capital Funding Entities on June 22, 2010 and May 17, 2011, respectively (a fact that Andbanc does not concede), the termination of the LBHI Guarantees would not affect any of LBHI's guarantee obligations incurred prior to such termination.  Rather, the termination of the LBHI Guarantees would only cut off any guarantee of obligations incurred subsequent to such termination.  Any contrary interpretation is not only inconsistent with the law relating to guaranties generally, but also inconsistent with the express terms of the LBHI Guarantees, which each provide as follows: "The Obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of

---

[1] In support of this assertion, the Debtors attached as "Exhibit E" to the Objection what appears to be certificates evidencing the dissolution of the General Partner and Preferential Limited Partner of LB UK IV and LB UK V on June 22, 2010 and May 17, 2011, respectively.  The Debtors have provided no detail whatsoever regarding the circumstances surrounding the alleged dissolution of the General Partner and Preferential Limited Partner.

the following: ... (d) the voluntary or involuntary winding up, dissolution ... of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer." (LBHI Guarantees § 2.4(d)).

13.     Further, the purported dissolution of the UK Capital Funding Entities occurred long after LBHI filed its chapter 11 petition and after Andbanc filed its Proof of Claim on November 2, 2009. Bankruptcy Code section 502(b) provides that if a claim is objected to, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*…" 11 U.S.C. § 502(b) (emphasis added). Thus, section 502(b) by its terms requires that claims be determined as of LBHI's petition date of September 15, 2008. Numerous courts are in accord. *See, e.g., In re Oakwood Homes Corp.,* 449 F.3d 588, 595 (3d Cir. 2006) ("11 U.S.C. § 502(b) speaks in terms of determining the 'amount' of a claim 'as of the petition date'"); *Carrieri* v. *Jobs.com Inc.,* 398 F.3d 508, 527 (5th Cir. 2004) ("Under § 502(b), the rights of holders of claims and interests are fixed as of the Petition Date"); *In re Arcade Publ'g, Inc.,* 455 B.R. 373, 378 (Bankr. S.D.N.Y. 2011) ("Under section 502, if an objection is made, the court shall determine the amount of such claim 'as of the filing date'"); *In re South Side House, LLC,* 451 B.R. 248, 261 (Bankr. E.D.N.Y. 2011) (same); *In re Solutia,* 379 B.R. 473, 482-83 (Bankr. S.D.N.Y. 2007) ("Code § 502(b) requires that a claim be determined *as of the filing date* ... Allowance of claims is not a forward-looking process"); *LTV Steel Co.* v. *Aetna Cas. & Surety Co. (In re Chateaugay Corp.),* No. 94-cv-1257, 1996 WL 346010, at *2 (S.D.N.Y. June 24, 1996) (the "underlying purpose of 11 U.S.C. § 502(b)" is to treat "all claimants equally by fixing the amount of their claims as of the filing date").

14.     Here, the Debtors have alleged that the UK Capital Funding Entities dissolved no earlier than June 22, 2010 and May 17, 2011, respectively, nearly 2 and 3 years after LBHI's

Petition Date of September 15, 2008.  Accordingly, as of the Petition Date, Andbanc held a valid

claim against LBHI pursuant to section 502(b) of the Bankruptcy Code, and such claim remains

valid notwithstanding the fact that the General Partner or Preferential Limited Partner of the UK

Capital Funding Entities may have been subsequently dissolved postpetition.

B.    <u>The Termination Provision in the LBHI Guarantees is Not Controlling.</u>

15.    The Debtors argue that section 4(c) of the LBHI Guarantees provide that they

"shall terminate and be of no further force and effect upon the earliest of ...dissolution of the

issuer..."  *See* Objection at ¶ 10 and footnote 2.  Accordingly, the Debtors allege that LBHI has

no liability to the holders of the Securities and seeks to disallow and expunge those claims.

Leaving aside the fact that even if the LBHI Guarantees terminated, such termination would only

operate as to prospective obligations, termination is not supported by the document.  The LBHI

Guarantees are at best ambiguous with respect to whether the dissolution of the UK Capital

Funding Entities is grounds for termination of LBHI's obligations thereunder.  In direct conflict

with section 4(c), section 2.4(d) of each of the LBHI Guarantees provides as follows:

> The Obligations, covenants, agreements and duties of LBHI under
> this Subordinated Guarantee shall in no way be affected or
> impaired by reason of the happening from time to time of any of
> the following: ... (d) the voluntary or involuntary winding up,
> dissolution ... of, or other similar proceedings affecting, the Issuer
> or any of the assets of the Issuer.

(LBHI Guarantees § 2.4(d))

16.    Thus, although section 4(c) of the LBHI Guarantees (the termination provision) is

not even applicable to guarantee obligations incurred by LBHI prior to the purported termination

of the LBHI Guarantees, LBHI cannot rely on section 4(c) because it is directly contradicted by

section 2.4(d).  Sections 4(c) and 2.4(d) cannot be reconciled and thus only one can be effective.

When two conflicting contractual provisions are irreconcilable, the Court must determine which

provision will stand. *See Israel v. Chabra,* 601 F.3d 57, 64 (2d Cir. 2010) (finding that when two clauses in guaranty agreement were mutually exclusive, court had to "choose which must stand and which must fall"). *See also In re Lehman Brothers Holdings Inc.,* 445 B.R. 143, 202 (Bankr. S.D.N.Y. 2011) ("Because these two contemporaneous documents are in conflict with one another as to the same subject matter, one of them must control the outcome.").

17.     Section 2.4(d) should be given effect here because it is more specific than the general terms of section 4(c).  Under New York law,[2] "courts construing contracts must give 'specific terms and exact terms ... greater weight than general language.'"  *County of Suffolk v. Long Island Lighting Co.,* 266 F.3d 131, 139 (2d Cir. 2001) (citation omitted).  Here, the central issue is whether LBHI has an obligation to holders of the Securities after the alleged dissolution of the Issuers. Section 2.4(d) of the LBHI Guarantees specifically states that "[t]he obligations, covenants, agreements and duties of LBHI" under the LBHI Guarantees are *not* affected by the dissolution of the Issuer.

18.     Moreover, any conflict between sections 4(c) and 2.4(d) of the LBHI Guarantees should be resolved in favor of Andbanc.  Upon information and belief, the LBHI Guarantees were drafted by LBHI and, under New York law (which governs the LBHI Guarantees), courts "generally interpret contractual ambiguities against the drafter." *Photopaint Techs, v. Smartlens Corp.,* 335 F.3d 152, 161 (2d Cir. 2003).  Accordingly, even if it was applicable here, section 4(c) of the LBHI Guarantees should not be given effect and section 2.4(d) should control.

19.     Further, section 2.4(d) is more germane to the investors' agreement than section 4(c), and thus section 2.4(d) should stand.  When resolving irreconcilable differences between contract clauses, the Second Circuit has "enforce[d] the clause relatively more important or principal to the contract."  *Israel v. Chabra*, 601 F.3d at 63.  In this matter, the LBHI Guarantees

---

[2] Section 6 of each of the LBHI Guarantees provides that it is governed by New York law.

were executed by LBHI for the benefit of holders of the Securities to induce the holders to provide necessary funds.  Investors in the Securities, such as Andbanc, depended on section 4(c) of the LBHI Guarantees and LBHI's declaration that each of the LBHI Guarantees are "continuing, irrevocable and absolute" (§ 2.1), that holders "may enforce this Subordinated Guarantee directly against LBHI" (§ 2.6), and that "LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder..." (§ 2.8).  Accordingly, section 2.4(d) of the LBHI Guarantees is of more importance to the contract and more clearly resonates with the overall confidence that the LBHI Guarantees sought to build in the investors and holders of the Securities.

20.    Lastly, even absent section 2.4(d), section 4(c) itself provides for reinstatement of the LBHI Guarantees as follows:

> this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

(LBHI Guarantees § 2.4(d))

Thus, the above reinstatement provision is applicable to the extent monies Andbanc paid to purchase the Securities must be restored to Andbanc.

C.    LBHI Could Not Dissolve the UK Capital Funding Entities.

21.    Pursuant to section 3.3 of the LBHI Guarantees, LBHI covenanted to the holders of the Securities that: "unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time)." (LBHI Guarantees § 3.3)

-8-

22.    While the Debtors' proposed Plan currently pending before this Court contemplates the creation of liquidating trusts to assist the reorganized Debtors in disposing of some of their businesses and assets following the effective date of the Plan (Plan, Art. X): (i) the Plan has not yet been confirmed by the Court; and (ii) even if the Plan is confirmed by the Court, LBHI will maintain its existence through and after the effective date of the Plan.

23.    Articles VI and VII of the Plan create an elaborate governance structure of LBHI and certain of the other Debtors that will exist beyond the Plan effective date.  LBHI, as the Plan Administrator (as such term is defined in the Plan), is not an entity that will commence liquidation on the Plan's effective date.  Furthermore, as set forth in Article 15.2 of the Plan, LBHI may issue new securities or create entities to issue such securities (not an activity normally associated with an entity in liquidation)

24.    Therefore, LBHI is not now "being wound-up" within the meaning of section 3.3 of the LBHI Guarantees.  Moreover, LBHI was not "being wound-up" at the time LB UK IV or LB UK V were allegedly dissolved and will not be "wound-up" for a minimum of multiple years, should the Court confirm the Plan.  Accordingly, any action taken, or caused to be taken, by LBHI to bring about the dissolution of the General Partner of LB UK IV or LB UK V, as the case may be, or LB UK IV or LB UK V themselves, would be in direct violation of the express terms of section 3.3 of the LBHI Guarantees.

25.    Curiously, the Debtors have provided no detail whatsoever regarding the circumstances surrounding the alleged dissolution of the General Partner and Preferential Limited Partner of the UK Capital Funding Entities which led to the purported dissolution of the UK Capital Funding Entities.  Without such evidence (as opposed to conclusory statements), Andbanc has no way of determining whether LBHI took, or caused to be taken, any action to

bring about the dissolution of the UK Capital Funding Entities in order to try to terminate the

LBHI Guarantees and have Andbanc's and other parties' claims disallowed.  To the extent LBHI

was so involved, it cannot be permitted to benefit from the resulting termination of the LBHI

Guarantees and the disallowance of guarantee claims based upon such machinations.

## II.   THE CLAIMS SHOULD NOT BE RECLASSIFIED

A.   The Debtors' Attempt to Subordinate Andbanc's Claims without Filing an Adversary Proceeding is Procedurally Improper.

26.      By seeking to reclassify Andbanc's Claims as equity interests, LBHI is seeking to

subordinate those Claims.  Rule 7001 of the Federal Rules of Bankruptcy Procedures requires

that a proceeding to subordinate any allowed claim or interest must be brought by way of an

adversary proceeding.  Fed. R. Bankr. P. 7001(8).  Accordingly, the Objection should be denied

as being procedurally improper.

B.   The Debtors Cannot Reclassify Andbanc's Claims as "Equity Interests".

27.      Pursuant to section 2.9 of the LBHI Guarantees, Andbanc's Claims constitute

unsecured obligations of LBHI, which obligations rank senior to, among other things, LBHI's

common stock, and *pari passu* with, among other things, its non-cumulative preferred stock and

non-cumulative preferred securities, if any.[3]  Therefore, there is no basis in the LBHI Guarantees

for Andbanc's Claims to simply be reclassified as "equity interests" (Objection at ¶ 1, 10, 17),

which, under the Plan, are to be cancelled and no distributions are to be made to holders thereof.

28.      To the extent Andbanc's Claims are reclassified as equity interests in LBHI, such

equity interests must maintain their relative priority *vis-à-vis* LBHI's other equity interests.  This

is critical to ensure that, among other things, any Plan Trust Stock (as such term is defined in the

Plan) or other securities to be issued under the Plan for the benefit of Andbanc and other holders

---

[3] *See* section 2.9 of the LBHI Guarantees and the definitions of the terms "Parity Securities" and "Junior Share Capital" therein.

of claims based on the LBHI Guarantees will have the same relative priority that such claims had in respect to the equity interests in LBHI prior to such reclassification.

## **RESERVATION OF RIGHTS**

29.     Andbanc has requested from the Debtors, but not yet received, complete copies of the limited partnership agreements establishing LB UK IV and LB UK V, excerpts of which were attached as Exhibit D to the Objection. Without this information, Andbanc cannot fully evaluate all of its responses to the Objection. Accordingly, Andbanc reserves the right to amend or supplement this Response after it receives this additional information. Andbanc further reserves any and all applicable rights at law and/or equity, including without limitation the right to discovery in connection with the Objection and to amend or supplement this Response for any reason. In addition, Andbanc joins in the responses of any other parties subject to similar claim objections who dispute such objections.

**WHEREFORE,** Andbanc respectfully requests that the Court deny the Objection

and grant Andbanc such other and further relief as the Court deems just and proper.

Dated:  November 23, 2011
New York, New York

Respectfully Submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ Michael S. Etkin
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400

*Attorneys for Andorra Banc Agricol REIG, S. A.*