WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY**
**TO CERTAIN RESPONSES TO DEBTORS' NINETY-SECOND,**
**ONE HUNDRED TWENTIETH, AND ONE HUNDRED SEVENTIETH**
**OMNIBUS OBJECTIONS TO CLAIMS (NO BLOCKING NUMBER LPS CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), file

this omnibus reply (the "Reply") to certain responses received opposing the (i) Debtors' Ninety-

Second Omnibus Objection to Claims (No Blocking Number LPS Claims) (the "Ninety-Second

Omnibus Objection") [Docket No. 14472], (ii) Debtors' One Hundred Twentieth Omnibus

Objection to Claims (No Blocking Number LPS Claims) (the "One Hundred Twentieth Omnibus

Objection") [Docket No. 16074], and (iii) Debtors' One Hundred Seventieth Omnibus Objection

to Claims (No Blocking Number LPS Claims) (the "One Hundred Seventieth Omnibus

Objection") [Docket No. 19388] (collectively, the "Omnibus Objections")[1] and respectfully

represent as follows:

## I.    PRELIMINARY STATEMENT

1.      The Bar Date Order expressly requires that claims based on Lehman

Program Securities must, among other things, "include either a Euroclear electronic instruction

reference number or a Clearstream blocking reference number" (a "Blocking Number").  The

Lehman Program Securities Procedures, which include the Blocking Number requirement, were

extensively negotiated with numerous creditors and approved by this Court as a necessary

mechanism for the Debtors to confirm the validity of claims based on Lehman Program Securities,

which did not have indenture trustees to file claims on behalf of the individual holders.  Imposition

of the Lehman Program Securities Procedures was an acknowledgement of the complexities

inherent in validating claims based on over 4,000 securities for which the Debtors could not

identify the beneficial holders or the amounts held.  Without the Blocking Number requirement,

the Debtors faced the likelihood of making distributions on numerous duplicative claims.

Subsequently, the Blocking Number requirement has been critical to the Debtors' ability to

reconcile more than 30,000 Lehman Program Securities claims, and even with that critical

information, reconciliation of those claims has required considerable expenditure of the Debtors'

resources, including thousands of hours of analysis.

2.      It is undisputed that the claims included on Exhibit A (the "No Blocking

Number LPS Claims") are based on Lehman Program Securities and that the holders of the No

Blocking Number LPS Claims did not obtain or provide a required Blocking Number.

Accordingly, the No Blocking Number LPS Claims do not comply with the Bar Date Order, are in

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Omnibus Objections.

violation of the Lehman Program Securities Procedures, and should be disallowed and expunged in their entirety with prejudice.  This reply addresses the nine responses (the "Responses") filed by the claimants set forth on Exhibit A (the "Claimants").[2]  The Responses assert a variety of reasons why the failure to obtain a Blocking Number should be excused.[3]  The primary reasons are summarized as follows:

- The Court lacks authority to disallow the No Blocking Number LPS Claims for failure to comply with the Blocking Number requirement;

- Because the No Blocking Number LPS Claims were filed prior to entry of the Bar Date Order, the Claimant was not required to obtain a Blocking Number;

- The Claimant can prove ownership of the securities through alternative means, and thus, the Debtors will not be prejudiced if the Blocking Number requirement is excused;

- The No Blocking Number LPS Claims should be allowed as informal proofs of claim;

- The Claimant made a good faith effort to comply with the Bar Date Order; and

- Notice of the Blocking Number requirement was inadequate.

3.    The Responses lack merit and should be overruled.  The Blocking Number requirement is a critical component of the Lehman Program Securities Procedures that were specifically crafted to allow the Debtors to reconcile more than 30,000 Lehman Program Securities claims and was ordered by this Court.  The Court has authority to enforce the Blocking Number requirement and compliance with the Bar Date Order.  It is not, as the Claimants argue, a

---

[2] This Reply only addresses the Responses listed on Exhibit A.  The Debtors reserve their right to file reply briefs responding to all other responses received in opposition to the Omnibus Objections.

[3] Exhibit A identifies which arguments each of the Claimants assert.

mere "technicality" that can be disregarded without harm to the estates.  The Blocking Number

requirement should be enforced, the Responses overruled, and the Omnibus Objections granted.

## II.    ARGUMENT

### A.    The Court Has Authority to Dictate the Contents of a Proof of Claim

The Blocking Number requirement for Lehman Program Securities Claims was a

valid exercise of the Court's authority to dictate the form and content of the proofs of claim filed

in these cases.  Certain Claimants argue that the Court lacked authority to impose the Blocking

Number requirement because it is beyond what is required to "substantially conform" with

Official Form 10 under Bankruptcy Rule 3001(a).  However, modifications to Official Form 10

are permitted "as may be appropriate," as are the use of customized claims-filing procedures.  *See*

Bankruptcy Rule 9009; *In re A.H. Robins Co.*, 862 F.2d 1092, 1093 (4th Cir. 1988) (affirming

disallowance of claims for failure to comply with court-ordered claim filing procedures requiring,

among other things, claimants to complete questionnaires).  In *In re A.H. Robins Co.*, for example,

the District Court ordered a two-step claims-filing process whereby creditors were required to first

submit a statement to the court that provided the claimant's name and address and that they were

"making a Dalkon Shield claim."  862 F.2d at 1093.  The claimants were then required to

complete a questionnaire that requested additional information, such as the claimants' name,

address, dates of insertion and removal of the Dalkon Shield, type of injury allegedly suffered, and

the names of physicians or clinics consulted.  *Id.*  The bar date order stated that the questionnaire

must be "timely returned to the court or the claim would be disallowed."  *Id.*  The District Court

ultimately disallowed the claims for which the required questionnaire was not completed, *id.* at

1094, and the Court of Appeals for the Fourth Circuit affirmed.  *Id.* at 1097.

Crafting claims-filing procedures to address the unique complexities of a chapter

11 case is not uncommon.  For example:

- In *In re Ephedra Products Liability Litigation; In re TL Admin. Corp.*, 04 MD 1598 (JSR) (S.D.N.Y.), No. 03-15564 (Bankr. S.D.N.Y.), personal injury claimants that filed proofs of claim against the debtors were required to convert their claims into civil actions by filing complaints and verified fact sheets by a certain date. All claims that were not timely converted were deemed waived and expunged, invalidated, and/or disallowed. Copies of the relevant District Court and bankruptcy court orders are attached hereto as Exhibit B and Exhibit C, respectively.

- In *In re Enron*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Aug. 1, 2002), the bankruptcy court required employees asserting claims for retiree benefits, wages, salary, and compensation to complete an eight-page Employee Proof of Claim Form and provide information regarding: the period of work performed and unpaid; amounts owed to the employee for unpaid vacation; amounts owed for unpaid severance or separation pay including the period of the claimed unpaid severance and copies of any agreements, letters, or forms supporting the claims; and amounts owed for unpaid benefits due from employee benefit plans, the name of the employee benefit plans, a detailed explanation of how the employee computed the unpaid amount owed under the employee benefit plan(s), and attachments of any plan agreements that described how payment was calculated. A copy of the Employee Proof of Claim Form is attached hereto as Exhibit D.

- In *In re Federal-Mogul Global Inc.*, No. 01-10578 (Bankr. D. Del. June 4, 2002), the bankruptcy court approved a specialized proof of claim form for claims regarding asbestos property damage that required claimants to complete a three-page form that requested information about each property that was the basis of an asbestos property damage claim, the type and brand name of the asbestos-containing product installed there, the dates of installation and removal of that product, and the resulting damages. The claimants were also required to attach all supporting documents such as invoices, contracts, product samples, and test results. A copy of the specialized proof of claim form is attached hereto as Exhibit E.

The Lehman Program Securities Procedures were designed to address the unique complexity of reconciling the Lehman Programs Securities Claims, and the Blocking Number requirement is a key component of those procedures. Accordingly, the Court was well within its authority to dictate the requirements for filing Lehman Program Securities Claims.

**B.    The Court Has Authority to Enforce Its Own Orders**

4.    The Court has authority to enforce the Bar Date Order, including the Blocking Number requirement, and to disallow the No Blocking Number LPS Claims for violating it. Certain Claimants argue that failure to obtain a Blocking Number is not a legitimate basis to

disallow the No Blocking Number LPS Claims.[4]  The Claimants are effectively arguing that the

Court lacks authority to enforce the Blocking Number requirement and compliance with the Bar

Date Order.  This argument should be rejected.

5.       It is well-settled that a Court has authority to enforce its own orders.  *See*

*Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum*

*Co.)*, 118 F.3d 1056, 1069 (5th Cir. 1997) (stating that a bankruptcy court's power to enforce its

own orders is "undisputed"); *Burrell v. AT&T Corp.*, No. 03 CIV. 2490(SAS), 2006 WL 3802224,

at *8 (S.D.N.Y. Dec. 21, 2006) (stating that a court has the "inherent power" to "enforce its own

rules and orders"); *Ryerson v. Chase Manhattan Mortg. Corp. (In re Ryerson)*, No. 6:03-AP-

00197-ABB, 2006 WL 3804675, at *3 (Bankr. M.D. Fla. Nov. 20, 2006) (stating that a bankruptcy

court has power to enforce its own orders under section 105(a) of the Bankruptcy Code).  Thus, as

in the *A.H. Robins* case, this Court has the authority to disallow claims that fail to comply with the

Lehman Program Securities Procedures mandated by the Bar Date Order, including the Blocking

Number requirement.  *See In re A.H. Robins Co.*, 862 F.2d at 1097 (affirming disallowance of

claims for failure to comply with court-ordered procedures for filing proofs of claim).

6.       The Bar Date Order carries the same force and effect as any court order.  By

questioning the validity of the Debtors' grounds for objection here, the Claimants are challenging

the validity of the Bar Date Order.  Such assertions constitute invalid collateral attacks on the Bar

Date Order, which is final and nonappealable.  *See In re Spiegel Inc.*, No. 03-11540 (BRL), 2006

WL 2577825, at *13 (Bankr. S.D.N.Y. Aug. 16, 2006) (stating that once confirmation order

became final and nonappealable, *res judicata* precluded a collateral attack on the order); *see also*

---

[4]  The Claimants rely on sections 105(a) and 502(b) of the Bankruptcy Code.  By relying on these arguments, the Claimants ignore the Bar Date Order's status as an order of this Court entitled to enforcement, which is dispositive of the Court's authority.  However, the Debtors do not waive the right to specifically address any of the arguments made by the Claimants.

*Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938) (holding that creditor could not enforce guaranty

obligation once that obligation had been released under a reorganization plan approved by a final,

nonappealable order, irrespective of whether the bankruptcy court had the power to initially grant

the release).  Accordingly, the Claimants may not attack the validity of the Bar Date Order's

provisions by challenging the Court's authority to enforce it.[5]

### C.    Claims Filed Before the Bar Date Still Required Blocking Numbers

7.    The Bar Date Order expressly states that claims based on Lehman Program

Securities must include a Blocking Number.  (Bar Date Order at 13.)  The holders of the No

Blocking Number LPS Claims undisputedly failed to comply with this requirement, but some

argue that they are exempted from it because they submitted claims prior to entry of the Bar Date

Order.[6]  This argument is contrary to the plain language of the Bar Date Order and must be

rejected.

---

[5] Claimants' argument also ignores that disallowance for failure to obtain a Blocking Number is contemplated by yet
another of this Court's orders—the Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and
Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objection Procedures (the "Claim Objection Procedures
Order") [Docket No. 7956].  The Claim Objection Procedures Order expressly provides:

> the Debtors . . . are hereby authorized, in addition to those grounds set forth in
> Bankruptcy Rule 3007(d), to file Omnibus Claims Objections to claims seeking
> reduction, reclassification and/or disallowance of claims on one or more of the
> following grounds (the "Additional Permitted Grounds")
>  . . .
>
> (d) the Claims do not include sufficient documentation to ascertain the validity of
> the Claim[.]

(Claim Objection Procedures Order at 2.)  The Blocking Number is a piece of information necessary for the Debtors
to ascertain the validity of a claim.  Accordingly, the Claimants' failure to obtain a Blocking Number is a failure to
sufficiently document the No Blocking Number LPS Claims.

[6] The Claimants assert that the No Blocking Number LPS Claims are entitled to *prima facie* validity.  The Debtors
dispute this because the Claimants did not submit a complete proof of claim as a result of their failures to obtain and
include Blocking Numbers.  Regardless, if an objection refuting at least one of the claim's essential allegations is
asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384,
389 (Bankr. S.D.N.Y. 2009); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an
objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet

8.      The beginning of the Bar Date Order section setting forth the Lehman
Program Securities Procedures, including the Blocking Number requirement, unambiguously
states that those procedures apply to the filing of Lehman Program Securities claims
"notwithstanding anything to the contrary contained in this Order." (*Id.* at 12.)  It further states
that claims must substantially conform to the Securities Program Proof of Claim Form.  (*Id.*)  The
Securities Program Proof of Claim Form not only includes a box for the Blocking Number but
also specifically informed the Claimants that "[y]ou must acquire a Blocking Number . . . ."

9.      Despite the clear language of the Bar Date Order, the Claimants argue that
they are exempt from the Blocking Number requirement.  The Claimants rely on the following
two provisions of the Bar Date Order:

- "ORDERED that the following persons or entities are **not** required to file a Proof of Claim on or before the Bar Date: . . . (f) any holder of a claim who has already filed a Proof of Claim . . . utilizing a claim form which substantially conforms to the Proof of Claim Form . . . ."  (Bar Date Order at 3-4 (emphasis in original).)

- "[N]othing in this Order shall impose a duty or obligation on any party to any agreement related to any Lehman Program Security to file a claim beyond whatever duty or obligation currently exists in the applicable agreements for the Lehman Program Security or applicable law . . . ." (Bar Date Order at 14.)

The Claimants argue that the No Blocking Number LPS Claims are on forms that "substantially
conform" to the Court-approved form for non-Lehman Program Securities claims.  Accordingly,
they contend that, pursuant to the Bar Date Order, they were not required to submit an additional
proof of claim form with a Blocking Number, and by extension, were not required to obtain a

---

the usual burden of proof to establish the validity of the claim."), *aff'd*, No. 09 CIV. 229 (DC), 2010 WL 234827
(S.D.N.Y. Jan. 22, 2010).  It is undisputed that each of the Claimants failed to obtain the required Blocking Number,
and thus, the Debtors have met any burden of persuasion to overcome the *prima facie* validity of the No Blocking
Number LPS Claims.  As a result, the Claimants have the burden to prove by a preponderance of the evidence that the
No Blocking Number LPS Claims should be allowed.  *See Oneida*, 400 B.R. at 389.

Blocking Number.[7]  They further argue that because the Blocking Number requirement is unique

to these cases, it is an additional "duty or obligation" that is not permitted under the "duty or

obligation" language contained in the Lehman Program Securities Procedures.

          10.      Taken to its logical conclusion, the Claimants' argument would render the

Lehman Program Securities Procedures inapplicable not only to Lehman Program Securities

claims filed prior to entry of the Bar Date Order but to *all* claims based on Lehman Program

Securities, as the Lehman Program Securities Procedures create certain additional requirements

and obligations on Lehman Program Securities claimants.  This result is untenable and contrary to

basic principles of interpretation that require all provisions of a document to be read together and

consistent with its intent.  *See Capetan v. Brownell*, 148 F. Supp. 519, 520 (E.D.N.Y. 1957) ("In

construing orders and judgments, the entire contents of the instrument and the record should be

taken into consideration in ascertaining the intent."); *In re Nw. Airlines Corp.*, No. 06-01566, 2007

WL 2713021, at *6 (Bankr. S.D.N.Y. Sept. 14, 2007).  The Bar Date Order's "notwithstanding

anything to the contrary contained in this Order" language set forth at the beginning of the

Lehman Program Securities Procedures establishes that the intent of the Bar Date Order is that the

Lehman Program Securities Procedures control as to claims based on Lehman Program Securities,

including those claims that were submitted prior to entry of the Bar Date Order.  Moreover, the

creation and incorporation of the Blocking Number requirement in the Lehman Program Securities

Procedures manifests an intent that said requirement would be enforced regardless of the "duty or

obligation" language contained in the Lehman Program Securities Procedures.  Otherwise, there

---

[7] Life Insurance Company of Société Générale ("Sogecap") also argues that the Debtors have not provided any evidence in support of the Ninety-Second Omnibus Objection.  (*See* Response of Sogecap to Debtors' Ninety-Second Omnibus Objection to Claims (No Blocking Number LPS Claims) at 4 (the "Sogecap Response").)  However, Sogecap admits that it did not obtain a Blocking Number.  To the extent that this Court requires more evidence that Sogecap failed to comply with the Blocking Number requirement, it can, and should, take judicial notice of Sogecap's proof of claim, which indisputably does not include a Blocking Number.  *See* Fed. R. Evid. 201.

would have been no reason to include the Blocking Number requirement in the Lehman Program

Securities Procedures.[8]

11.     The Blocking Number requirement is no less critical to claims submitted

prior to entry of the Bar Date Order than it is to claims submitted after entry of the Bar Date

Order.  The time of the filing of the No Blocking Number LPS Claims is not a characteristic that

eliminates the concerns giving rise to the Blocking Number requirement.  The intent of the Bar

Date Order cannot be to exempt all Lehman Program Securities Claims filed before the Program

Securities Bar Date from the Lehman Program Securities Procedures.  Accordingly, the Claimants

cannot evade the requirements of the Bar Date Order, and the No Blocking Number LPS Claims

should be disallowed and expunged.

**D.      Allowing the Claimants to Provide Extrinsic Evidence of Ownership in
Lieu of a Blocking Number Will Significantly Prejudice the Debtors**

12.     Certain Claimants argue that failure to obtain a Blocking Number should be

excused if they can provide evidence that they owned Lehman Program Securities before and after

the Program Securities Bar Date.  Allowing Claimants to offer extrinsic evidence of ownership in

lieu of complying with the Blocking Number requirement erodes the integrity of the Bar Date

Order and should not be permitted.

13.     The Claimants' argument has already been rejected by this Court.  In

similar circumstances, this Court held that parties that failed to obtain a Blocking Number cannot

avoid the consequences of doing so by submitting proof of ownership:

> The Aspecta case is different.  That's the ["]we didn't do it at all
> problem but we have other means of establishing, in a way that we

---

[8] Moreover, the "duty or obligation" language was specifically negotiated and included to clarify that the Lehman
Programs Securities Procedures were not enlarging the contractual obligations of any parties, such as a fiscal agent or
banks/brokers holding the Lehman Program Securities on behalf of their customers, to file proofs of claim.  It was not
intended to eviscerate the Lehman Program Securities Procedures.

think should be credible, that we held Lehman program securities at
the time that a proof of claim was filed and completely ignored the
requirement of including a blocking number.["]  They lose.

(Oct. 27, 2010 Hr'g Tr. at 39:24-40:4.)[9]  The holders of the No Blocking Number LPS Claims

should be treated the same, and their claims disallowed and expunged.

14.     Moreover, even if the Claimants could produce credible evidence of

ownership before and through the Program Securities Bar Date, this does not effectively substitute

for a Blocking Number.  Without a Blocking Number, the risk may still exist that the Debtors will

make duplicative distributions on the same holding.  For example, if a Claimant's position is

subsumed within a claim filed by a bank or broker that has a Blocking Number representing

multiple positions for the same security, then the Debtors will pay twice on the same holding.

This, of course, would be prejudicial to the Debtors' legitimate creditors.

15.     If the Blocking Number requirement is not enforced, the Debtors will suffer

significant harm from the erosion of their ability to manage their claims reconciliation in an

equitable and timely manner consistent with their creditors' reasonable expectations.  This Court

has recognized the need for strict application of the Bar Date Order as "the enormity of the claims

allowance process is self-evident, and prejudice needs to be evaluated in this unprecedented

setting . . . ."  *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010), *aff'd*,

445 B.R. 137 (S.D.N.Y. 2011).  While the holders of the No Blocking Number LPS Claims argue

that the Debtors will not be prejudiced if their individual claims are excepted because "it's only

one claim" or because the dollar value is relatively small in comparison to the universe of claims,

this argument should be rejected.  Just as in the context of enforcement of the Bar Dates, "[t]he

prejudice to the Debtors is not traceable to the filing of any additional single claim but to the

---

[9] Relevant excerpts from the transcript of the October 27, 2010 hearing are attached as <u>Exhibit F</u>.

impact of permitting exceptions that will encourage others to seek similar leniency." 433 B.R at

121. The Claimants ignore the cumulative effect that permitting the No Blocking Number LPS

Claims will have on the estate, which this Court has recognized as creating a "floodgates"

problem:

> That's your floodgates problem, the problem that parties who never
> obtained a blocking number will come forward and say we have the
> ability through extrinsic evidence to demonstrate that we, in fact,
> own the security at the time that we filed the proof of claim. I have
> a problem with that.

(Oct. 27, 2010 Hr'g Tr. at 36:1-36:6.) Thus, permitting exceptions to the Blocking Number

requirement does not impact "only one claim" and could have a significant detrimental economic

impact on the estates.

16.     The status of these chapter 11 cases also confirms the prejudice that the

Debtors will suffer if the No Blocking Number LPS Claims are allowed to proceed. The Debtors

filed their third amended chapter 11 plan (as amended or supplemented, the "Plan") on September

1, 2011. The confirmation hearing is fast-approaching on December 6, 2011. The Debtors have

spent significant amounts of time and effort negotiating the Plan as well as reviewing and

objecting to claims. The projected recoveries disclosed in connection with the Plan were based, in

part, on an analysis of the claims filed in compliance with the Bar Date Order. If the holders of

the No Blocking Number LPS Claims are granted leniency, then other claimants will seek similar

relief to be excused from compliance with the Bar Date Order and threaten to undermine the

creditors' legitimate recovery expectations. To avoid such harm, the Blocking Number

requirement should be enforced regardless of what extrinsic evidence the holders of the No

Blocking Number LPS Claims seek to introduce.

**E.      Whether the No Blocking Number LPS Claims**
**Qualify as Informal Proofs of Claim Is Irrelevant**

17.     The argument that the Blocking Number requirement should be waived because the No Blocking Number LPS Claims substantially conform with Official Form 10 and are informal proofs of claim under Bankruptcy Rule 3001(a) is wholly irrelevant.  The Debtors are not objecting to the No Blocking Number LPS Claims on the basis that they fail to conform to Official Form 10 but on the basis that they fail to conform to the Bar Date Order's Blocking Number requirement.  On that basis, the No Blocking Number LPS Claims are properly the subject of objection as they have been presented in a form that does not comply with applicable rules (*i.e.*, the Bar Date Order) imposed to allow the Debtors to validate those claims.  *See* Fed. R. Bankr. P. 3007(d)(6).

18.     Regardless, pursuant to the Bar Date Order, the Claimants were required to submit claims that substantially conform with the Program Securities Proof of Claim Form, which form includes a box for the Blocking Number and a warning that "[y]ou must acquire a Blocking Number . . . ."  Having failed to obtain Blocking Numbers, the Claimants fail to satisfy the substantial conformity requirement.

19.     Moreover, treating the No Blocking Number LPS Claims as informal proofs of claim does nothing to eliminate the risks that the Blocking Number requirement was designed to prevent.  The theory underlying allowance of an informal proof of claim is that a proof of claim that puts "the debtor and/or the court on notice as to the existence, nature and amount of the claim (if ascertainable)" should not be disallowed solely because it was not submitted on a proof of claim form.  *Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 132 (3d Cir. 2005).  Here, the issue is not one of form, but is one of substance; the No Blocking Number LPS Claims omitted a critical piece of information that is necessary to allow the Debtors to validate claims and eliminate risk of duplicative distributions.  If the Court does not

enforce the Blocking Number requirement, a risk exists that the Debtors will make distributions on duplicative claims.  Characterizing the No Blocking Number LPS Claims as informal proofs of claim does not mitigate that risk.

## F.    The Blocking Number Requirement Should Be Strictly Enforced

20.    Certain Claimants assert they made good faith efforts to comply with the Bar Date Order and that their alleged particular circumstances justify an exception to the Blocking Number requirement.  However, the alleged reasons for seeking special treatment are the ordinary type of circumstances within the Claimants' control.  Moreover, the litany of excuses underscores the need for strict enforcement of the Blocking Number requirement.  Permitting exceptions to the Blocking Number requirement is a slippery slope and undoubtedly will encourage others to seek similar leniency with the predictable drain on the Debtors' and this Court's resources.  Whatever the alleged reason for failing to obtain a Blocking Number, it does not render it any less critical to the Debtors' ability to reconcile the Lehman Program Securities claims or diminish the risk of distributions on potentially invalid or duplicative claims.  Accordingly, the No Blocking Number LPS Claims should be disallowed and expunged.

## G.    Notice of the Blocking Number Requirement Was Sufficient

21.    The Debtors provided adequate notice of the Blocking Number requirement, and thus, certain Claimants' efforts to evade the Blocking Number requirement on the grounds of insufficient notice fail.  The Debtors complied with the Court-approved notice procedures for Lehman Program Securities claims, and such notice, per the Bar Date Order, is deemed "good, adequate, and sufficient notice."  (Bar Date Order at 12-13.)

22.    Notice of the Blocking Number requirement was widely disseminated through the Program Securities Bar Date Notice.  The Program Securities Bar Date Notice was published by the Debtors in ten languages, plus eight translations for local dialects, in 26

14

newspapers in 18 countries and was also publicly available on the website of Epiq Bankruptcy

Solutions, the Debtors' claims agent.[10]  For Lehman Program Securities claims, the Bar Date

Order specifically designated notice by publication as "good, adequate, and sufficient notice of the

Bar Date and the Securities Program Bar Date and the procedures for filing Proofs of Claim and

Securities Program Proofs of Claim in these cases."[11]  (Bar Date Order at 14.)  The Debtors'

service of the Program Securities Bar Date Notice on Euroclear, Clearstream, The Depository

Trust Company, similar clearing agencies, and issuers of the Lehman Program Securities with

instructions to distribute it promptly to the accountholders and/or holders of the Lehman Program

Securities also constitutes "good, adequate, and sufficient" notice.  (*See id.* at 13; Aff. of Service

of Financial Balloting Group LLC Regarding Mailing of the Program Securities Bar Date

Documents, a true and correct copy of which is attached hereto as Exhibit G.)

            23.        The Program Securities Bar Date Notice was not the only means by which

notice of the Blocking Number requirement was available to holders of Lehman Program

Securities.  The bankruptcy trustees for Lehman Brothers Treasury Co., B.V.  ("LBT") and

Lehman Brothers Securities, N.V. ("LBS") each posted a notice on their respective websites to the

holders of Lehman Program Securities issued by LBT and LBS.  These notices specifically

discussed the Lehman Program Securities Procedures, including the Blocking Number

requirement.  (*See* Notice to all holders of warrants and certificates issued by LBS, dated Oct. 6,

---

[10] The Bar Date Order specified that "the Debtors shall publish notice (translated into the appropriate language, if necessary) substantially in the form of the Securities Program Bar Date Notice at least once in one leading national newspaper in each of Italy, Spain, France, Germany, The Netherlands (in English), Switzerland, Luxembourg, United Kingdom, Hong Kong, Mexico, Belgium, Austria, Greece, Brazil, Argentina, Australia, and Japan."  (Bar Date Order at 14.)

[11] Millennium Marketing & Management Pty Ltd's ("Millennium") argument that notice of the Program Securities Bar Date by publication was inadequate is contrary to the Court-approved notice procedures for holders of Lehman Program Securities claims.  Regardless, Millennium admits that it would have received actual notice of the Blocking Number requirement but for a clerical error by Millennium's bank, Australia and New Zealand Banking Group Limited, which is not something for which the Debtors are responsible.

2009, attached hereto as <u>Exhibit H</u> and publicly available at

http://www.ekvandoorne.com/bankruptcy-lehman-brothers-securities/38-general-information;

Notice to all holders of notes and certificates issued by LBT, dated Oct. 1, 2009, attached hereto as

<u>Exhibit I</u> and publicly available at http://www.lehmanbrotherstreasury.com)  They also informed

the holders that the Program Securities Bar Date Notice was publicly available and where a copy

could be obtained.  (*See* <u>Exhibit H</u>; <u>Exhibit I</u>.)

      24.      Thus, there was ample opportunity for the holders of the No Blocking

Number LPS Claims to receive notice of the Blocking Number requirement had they been

sufficiently diligent in investigating the claims process.  Given the broad distribution of the

Program Securities Bar Date Notice, the Claimants' assertion that notice of the Blocking Number

requirement was inadequate does not withstand scrutiny.  The holders of the No Blocking Number

LPS Claims should be held to the Blocking Number requirement as other creditors have been, and

their claims disallowed and expunged for failure to follow the clear mandates of the Bar Date

Order.

### III.    <u>CONCLUSION</u>

      WHEREFORE, for the reasons set forth above and in the Omnibus Objections, the

Debtors respectfully request that the Court enter an order disallowing and expunging the No

Blocking Number LPS Claims in their entirety and grant such other and further relief as the Court

may deem just and appropriate.

Dated:  November 23, 2011
         New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

# Exhibit A

| Claimant | Claim Number(s) | Omnibus Objection | Docket No. | Summary of Response |
|---|---|---|---|---|
| Christina Kim | 9491 | 92 | 15337 | • Unfamiliar with bankruptcy procedure and unaware of Blocking Number requirement |
| Procesos Controlados | 2821 | 92 | 18512 22639 | • Failure to obtain a Blocking Number was inadvertent<br>• Claimant owned the securities before and after the Programs Securities Bar Date<br>• Because claim was filed prior to entry of the Bar Date Order and was based on Form 10, which substantially conforms with the claim form attached to the Bar Date Order, Claimant was not required to obtain a Blocking Number<br>• The "floodgates" argument favors Claimant because the interest of creditors holding valid claims should be protected over those "seeking a windfall"<br>• The Debtors cannot avoid having to review the claims filed in these cases<br>• The Court does not have authority to disallow claims for failure to obtain a Blocking Number |
| Punjab National Bank (International) Limited | 63860 | 92 | 15074 | • Punjab attempted to obtain a Blocking Number but did so after the deadline and its request was refused<br>• Claim is entitled to *prima facie* validity<br>• Punjab has not sold the securities at issue<br>• The Court does not have authority to disallow claims for |

| | | | | |
|---|---|---|---|---|
| | | | | failure to obtain a Blocking Number <br> • Permitting an exception to the Blocking Number requirement will not prejudice the Debtors <br> • The *Pioneer* standard is inapplicable because failure to adhere to deadlines is different than failure to document a claim |
| Rakepoll Finance N.V. | 1638 | 92 | 15847 | • Because claim was filed prior to entry of the Bar Date Order, Rakepoll was not required to obtain a Blocking Number <br> • Claim is entitled to *prima facie* validity <br> • Debtors will not be prejudiced if the Blocking Number requirement is excused but Rakepoll will be significantly prejudiced if it is not <br> • Claim qualifies as an informal proof of claim |
| SOGECAP | 1168 | 92 | 15080 | • Because claim was filed prior to entry of the Bar Date Order, SOGECAP was not required to obtain a Blocking Number <br> • Debtors have not carried their burden of proof and produced evidence establishing that SOGECAP's claim did not include a Blocking Number |
| Christine Geldard | 1537 | 120 | 16767 | • Believed claim complied with the Bar Date Order when claim was filed |
| Millenium Marketing & Management Pty, Ltd. | 66106 | 120 | 16931 | • Because claim was filed prior to entry of the Bar Date Order, Millenium was not required to obtain a Blocking Number <br> • Millenium did not receive proper notice of the Blocking |

| | | | | |
|---|---|---|---|---|
| | | | | Number requirement because its bank faxed the Programs Securities Bar Date Notice to the wrong number<br><br>• Publication of the Programs Securities Bar Date Notice was insufficient notice because Millenium was a "known creditor"<br><br>• Claimant owned the securities before and after the Programs Securities Bar Date<br><br>• Debtors will not be prejudiced if the Blocking Number requirement is excused but Millenium will be significantly prejudiced if it is not |
| Optique Pty Ltd ATF Optique Super Pension Fund | 5712 | 120 | 18322 | • Claimant owned the securities before and after the Programs Securities Bar Date<br><br>• Optique made good faith efforts to file its claim<br><br>• Optique did not understand that it needed to obtain a Blocking Number because it received an acknowledgement that its proof of claim was received by Epiq<br><br>• The Blocking Number is for administrative convenience and failure to obtain one is a technicality<br><br>• Debtors will not be prejudiced if the Blocking Number requirement is excused but Optique will be significantly prejudiced if it is not |

| | 2814 | 170 | 20763 | • Failure to obtain a Blocking Number was inadvertent |
|---|---|---|---|---|
| Jose Ildefonso & Mariana Aldaco | 2815 | | 22640 | • Claimant owned the securities before and after the Programs Securities Bar Date |
| | | | | • Because claim was filed prior to entry of the Bar Date Order and was based on Form 10, which substantially conforms with the claim form attached to the Bar Date Order, Claimant was not required to obtain a Blocking Number |
| | | | | • The "floodgates" argument favors Claimant because the interest of creditors holding valid claims should be protected over those "seeking a windfall" |
| | | | | • The Debtors cannot avoid having to review the claims filed in these cases |
| | | | | • The Court does not have authority to disallow claims for failure to obtain a Blocking Number |

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                         :

IN RE: EPHEDRA PRODUCTS LIABILITY LITIGATION  :  04 M.D. 1598 (JSR)

                                         :

-----------------------------------------------------------X
PERTAINS TO ALL CASES

## CASE MANAGEMENT ORDER NO. 1

JED S. RAKOFF, U.S.D.J.

### I.    INTRODUCTION

Prior the creation of the above-captioned multi-district proceeding, there had already been transferred to this Court, pursuant to 28 U.S.C. § 157(b)(5), approximately 65 civil actions making ephedra-related personal injury and wrongful death claims against bankruptcy debtors TL Administration Corp. (f/k/a Twinlab Corporation) and TL Administration Inc. (f/k/a Twin Laboratories Inc.) (collectively, "TL"). These cases, which are before the Court for all purposes, including trial, are hereinafter referred to as the "Twinlabs cases." At an initial case management conference in these cases held on March 1, 2004, the Court directed the parties to submit an agreed upon Case Management Order that would have these cases trial-ready by April, 2005. Thereafter, on April 13, 2004, the Judicial Panel on Multidistrict Litigation transferred 14 ephedra products liability cases (the "MDL cases") to this Court, noting that some 200 more ephedra cases were likely to be transferred here under 28 U.S.C. § 1407 (the "Tag-along cases"). By Order dated April 19, 2004, the Court consolidated the Twinlabs and MDL cases for all pre-trial purposes under the above caption.

On April 21, 2004, the parties to the Twinlabs cases submitted a 31-page draft
Case Management Order No.1, which reflected their agreement on most points and
disagreements chiefly about pretrial procedure for experts and for claiming privileges.
The draft also sought to take account of the MDL transfer and consolidation, subject,
however, to modification after counsel in the MDL cases are heard from in a conference
now scheduled for May 13, 2004. After review and consideration of the parties' draft, the
Court hereby substantially (although not entirely) adopts the points agreed to by the
parties, resolves the disagreements among them, and hereby propounds the following
case management order:

## II.  GENERAL PROVISIONS

### A.  Scope

This Order applies to all pretrial proceedings in the Twinlabs cases (including any
future cases against TL transferred pursuant to 28 U.S.C. § 157(b)(5), hereinafter the
"Subsequent Cases")), the MDL cases, and the Tag-along cases.

### B.  Special Master

By Order dated March 4, 2004, the Court appointed James Niss, Esq., as Special
Master to help coordinate and oversee pretrial proceedings in the Twinlabs Cases
(including any Subsequent Cases).  In this capacity, Mr. Niss functions in effect as an
arm of the Court, and accordingly the Court will engage in such ex parte conversations
with the Special Master as the Court finds useful.  See transcript, 3/1/04 (all parties
consenting to this procedure). By Order dated April 19, 2004, the Court extended the
Special Master's duties to the MDL Cases (including any Tag-along Cases). While all his
fees prior to that date will be paid, at least initially, as an administrative expense of the

2

TL bankruptcy, the Court expects to allocate a portion of his fees subsequent to that date to the parties in the MDL cases, such reallocation to be resolved at the hearing on May 13, 2004.

The Court hereby refers all applications relating to discovery or extensions of time to the Special Master for initial rulings thereon. Such applications shall be submitted by e-mail to the Special Master with copies to all interested parties. Any affected party may ask the Court to review any such ruling of the Special Master by arranging a conference call with the Court and all interested parties as provided in Judge Rakoff's Individual Practices, provided that such conference call is initiated (or attempted to be initiated, see Judge Rakoff's Individual Practices, Rule 2) within two business days following the date of the Special Master's email ruling from which review is sought. Failure to convene (or attempt to convene) such a conference within said period of two business days constitutes a waiver of any and all objections to the applicable ruling of the Special Master. The Court's review of the Special Master's rulings will be de novo, but the Court expects that counsel will exercise professional restraint in deciding whether or not to seek review of the Special Master's rulings.

For non-substantive administrative matters, a party may contact the Special Master by e-mail without copying other parties. If the Special Master believes other parties to be interested in the communication, he shall send the parties potentially interested a copy of his answer together with a copy of the original communication.

3

## C. Plaintiffs' Coordinating Counsel

By Order dated March 4, 2004, the Court directed counsel for any plaintiff objecting to the designation of certain attorneys as coordinating counsel for plaintiffs, or seeking to be included in such group, to submit written position papers to the Court by no later than March 8, 2004. Having considered the written submissions (including an ex-parte submission made, with the permission of the Court, in which a prior objection to the designation of these attorneys was withdrawn), the Court designates the following counsel as Plaintiffs' Coordinating Counsel:

Anne Andrews, Esq.
Andrews & Thornton
820 N. Parton Street, Second Floor
Santa Ana, CA 92701
714-565-7555
aa@andrewsthornton.com

Edward F. Blizzard, Esq.
Blizzard, McCarthy & Nabers LLP
440 Louisiana Street, Suite 1710
Houston, TX 77002
713-844-3750
eblizzard@blizzardlaw.com

Paul Rheingold, Esq.
Rheingold, Valet, Rheingold
Shkolnik McCartney LLP
113 East 37th Street
New York, New York 10016
212-684-1880
prheingold@rheingoldlaw.com

Christopher A. Seeger, Esq.
Seeger Weiss LLP
One William Street
New York, New York 10004
212-584-0700
cseeger@seegerweiss.com

Upon suggestion of the Plaintiffs' Coordinating Counsel, the Court designates Mr. Seeger as Plaintiffs' Liaison Counsel. Among the duties of the Plaintiffs' Liaison Counsel and the Defendants' Liaison counsel (see infra) will be to make themselves available for any telephone conferences convened by the Court and to communicate the substance of any such telephone conference to all other affected counsel on their respective sides of the case.

Any plaintiffs' counsel in the MDL cases desiring to become part of the group serving as Plaintiffs' Coordinating Counsel shall submit to the Court and serve upon all parties a written application for his/her appointment within seven days after entry of this Order or, for plaintiffs' counsel in any Tag-along cases, within seven days after receiving notice of the order of transfer of the Tag-along action to this Court. Any objections to the application shall be filed and served upon all parties within four days after service of the application.

Plaintiffs' Coordinating Counsel shall be generally responsible for coordinating the activities of plaintiffs during pretrial proceedings and shall

(1) Determine (after consultation with other co-counsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings;

(2) Coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1) and (2), and (g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

(3) Conduct settlement negotiations on behalf of plaintiffs without entering binding agreements except to the extent expressly authorized, provided that nothing in this Order shall prohibit individual counsel from

conducting separate settlement negotiations for those cases in which such counsel represents a particular plaintiff;

(4)    Delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the plaintiffs is conducted effectively, efficiently, and economically;

(5)    Enter into stipulations with opposing counsel necessary for the conduct of the litigation, except that any stipulation regarding an individual action must be agreed to by the plaintiff's counsel in that action;

(6)    Perform such other duties as may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the Court;

(7)    Keep the Clerk's office informed by e-mail of any change in the name or address (including e-mail address) of the counsel of record for any plaintiff, and inform new plaintiffs' attorneys of their obligation to register for ECF as provided in ¶ 3 of the 4/19/04 Order;

(8)    Receive and, as appropriate, distribute to co-counsel communications from the Court or Special Master and documents from opposing and other counsel that are not filed or to be filed with the Court; and

(9)    Maintain and make available to co-counsel at reasonable hours a complete file of all documents served or produced by, upon or to each party except those documents that are available to all parties in the Court docket.

Counsel for plaintiffs who disagree with a position taken by Plaintiffs' Coordinating Counsel (or by those acting on behalf of Plaintiffs' Coordinating Counsel), or who have individual or divergent positions, may present written or oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their client(s) as appropriate, provided that in doing so their actions comport with the Federal Rules of Civil Procedure and orders of this Court, and that they do not repeat arguments, questions, or actions of Plaintiffs' Coordinating Counsel.

**D.    Defendants' Coordinating Counsel**

The Court designates the following counsel as Defendants' Coordinating Counsel:

6

Robert M. Hirsh, Esq.
Duane Morris, LLP
380 Lexington Avenue
New York, New York 10168
PH:    (212) 692-1035
FAX:  (212) 692-1020

Rex A. Littrell, Esq.
Ulmer & Berne LLP
88 East Broad Street, Suite 1600
Columbus, Ohio 43215
PH:    (614) 229-0012
FAX:  (614) 229-0013

Peter C. Neger, Esq.
Bingham McCutchen
399 Park Avenue
New York, New York 10022-4689
212-705-7226
peter.neger@bingham.com

Joseph P. Thomas, Esq.
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
PH:    (513) 698-5000
FAX:  (513) 698-5001

The Court also designates Mr. Littrell as Defendants' Liaison Counsel, with the same duties as Plaintiffs' Liaison Counsel (see supra).

Any defendants' counsel in the MDL cases desiring to act as Defendants' Coordinating Counsel shall submit to the Court and serve upon all parties a written application for his/her appointment within seven days after entry of this Order or, for counsel in any Tag-along cases, within seven days after receiving notice of the order of transfer of the Tag-along action to this Court. Any objections to the application shall be filed and served upon all parties within four days after service of the application.

7

Defendants' Coordinating Counsel shall be generally responsible for coordinating

the activities of the Defendants during pretrial proceedings and shall:

(1)    Determine (after consultation with other co-counsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the defendants on all matters arising during pretrial proceedings;

(2)    Coordinate the initiation and conduct of discovery on behalf of the defendants consistent with the requirements of Fed. R. Civ. P. 26(b)(1) and (2), and (g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

(3)    Conduct settlement negotiations on behalf of the defendants, without entering binding agreements except to the extent expressly authorized, provided that nothing in this Order shall prohibit individual counsel from conducting separate settlement negotiations for any case in which such counsel represents a particular defendant;

(4)    Delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the defendants is conducted effectively, efficiently, and economically;

(5)    Enter into stipulations with opposing counsel necessary for the conduct of the litigation, except that any stipulation regarding an individual action must be agreed to by each defendant's counsel in that action;

(6)    Perform such other duties as may be incidental to proper coordination of the defendants' pretrial activities or authorized by further order of the Court;

(7)    Keep the Clerk's office informed by e-mail of any change in the name or address (including e-mail address) of the counsel of record for any defendant, and inform new defendants' attorneys of their obligation to register for ECF as provided in ¶ 3 of the 4/19/04 Order;

(8)    Receive and, as appropriate, distribute to co-counsel communications from the Court or Special Master and documents from opposing and other counsel that are not to be filed with the Court; and

(9)    Maintain and make available to co-counsel at reasonable hours a complete file of all documents served or produced by, upon or to each party except those documents that are available to all parties in the Court docket.

8

Counsel for defendants who disagree with a position taken by Defendants' Coordinating Counsel (or those acting on behalf of Defendants' Coordinating Counsel), or who have individual or divergent positions, may present written or oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their client(s) as appropriate, provided that in doing so their actions comport with the Federal Rules of Civil Procedure and orders of this Court, and that they do not repeat arguments, questions, or actions of Defendants' Coordinating Counsel.

    **E.**    <u>Privileges Preserved</u>

No communication made solely among plaintiffs' counsel or made solely among defendants' counsel shall be taken as a waiver of any privilege or protection to which a given plaintiff or a given defendant would otherwise be entitled.

**III.**    <u>STATUS CONFERENCES, ECF, COURT NOTICES</u>

    **A.**    <u>Status Conferences</u>

The next status conference shall be held on May 13, 2004, at 3 p.m. in Courtroom 14-B, 500 Pearl Street, New York, NY. Thereafter, status conferences shall be held in the same courtroom at 4:30 p.m. on the first Thursday of every month except August. If any counsel of record does not attend the status conference, the Court will assume that attending counsel of the applicable Coordinating Committee is authorized to speak on such non-attending counsel's behalf for all purposes.

    **B.**    <u>Electronic Case Filing (ECF)</u>

As provided in the Order of April 19, 2004, all motions and other papers required to be filed with the Court shall be filed electronically on the Court's ECF system, and all counsel of record must register for ECF by following the instructions at

http://www.nysd.uscourts.gov/cmecf/cmecfattyreg.htm.  Counsel in Tag-along cases are directed to register immediately upon notice of the transfer.

All papers filed shall be filed under both the master docket number 04 M.D. 1598 and the docket number for each individual case to which they pertain.

### C.    Notice to Parties by the Court

Notice by the Court to Plaintiffs' Coordinating Counsel and Defendants' Coordinating Counsel of any matter, ruling, order, schedule, or court hearing relating to all actions shall operate as notice to all parties in these coordinated proceedings.

## IV.    MOTIONS, CASE CAPTIONS, SERVICE, COMMUNICATIONS WITH COURT

### A.    Motions

Notwithstanding the notice-of-motion procedure set forth in Rule 2(d) of Judge Rakoff's Individual Practices (which otherwise govern), motions -- other than any motion pursuant to Fed. R. Civ. P. 26-37. and any request for extension of time, both of which are governed by the Special Master provisions supra -- may be filed on the ECF system without seeking prior permission.  Counsel shall arrange among themselves to deliver to the Court a complete set of courtesy copies on the day when the last paper is filed. Except as otherwise provided infra for "Daubert" and summary judgment motions, the motion briefing schedule set forth in Local Civil Rule 6.1(b) shall apply and oral argument on any motion shall be heard at the next monthly status conference that occurs at least seven days following the completion of briefing.

### B.    Case Captions

All papers filed with the Court shall have the following caption:

UNITED STATES DISTRICT COURT

10



SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                                        :
IN RE: EPHEDRA PRODUCTS LIABILITY LITIGATION  :     04 M.D. 1598 (JSR)
                                                        :
                                                        :
-----------------------------------------------------------------X

   If the papers pertain to the cases generally, the papers shall bear the notation

"PERTAINS TO ALL CASES" directly below the caption box. If the papers pertain to

some but not all of the cases, or have special applicability to particular cases, all papers

must be filed electronically under both 04 M.D. 1598 (JSR) and the individual case

number(s) to which they specially pertain. In such a case, in place of or in addition to the

words "PERTAINS TO ALL CASES," the caption shall read: "[ALSO] PERTAINS TO

____ Civ. ____," giving the docket numbers of the individual case(s).

VI.    **PARTIAL WITHDRAWAL OF THE REFERENCE OF EPHEDRA
       PERSONAL INJURY CLAIMS IN THE BANKRUPTCY AND THE
       FILING OF NEW LAWSUITS AGAINST TWINLABS**

   A.    The "TL Non-Plaintiff Claims" refers to ephedra-related personal-injury

and wrongful-death claims timely filed in the Chapter 11 cases entitled *In re TL*

*Administration Corporation, et al. (f/k/a Twinlab Corporation, et al.),* Case No. 03-15564

(Bankr. S.D.N.Y.) (CB) (Jointly Administered) for which the claimant is <u>not</u> presently a

plaintiff before this Court. The Court has previously withdrawn the underlying reference

of the Chapter 11 proceedings to the extent necessary to avoid interference with the

expeditious conduct and trial of the TL consolidated cases presently before this Court

(the "TL Plaintiff Claims"). <u>See</u> Order, 3/4/04. Additionally, the Court now withdraws

the underlying reference of the Chapter 11 proceedings with respect to the TL Non-

Plaintiff Claims to the extent necessary to avoid any interference with the implementation

11

of this Case Management Order or any proceedings arising therefrom. To this end, the

Court hereby orders the transfer of the TL Non-Plaintiff Claims to this Court for the

limited purpose of implementing the claim-determination procedures set forth infra.

B.     Debtors' counsel shall serve, by first class mail, upon each TL Non-

Plaintiff Claimant a written notice of said claimant's obligations and time deadlines

thereunder (as described infra) within 7 days after approval by the Court of the Fact Sheet

described in ¶ IX.A. below. The service of such notice shall be without prejudice to the

rights of Debtors to object to any claim for any reason, including, without limitation, the

untimely filing of a claim.

C.     Any TL Non-Plaintiff Claimant intending to prosecute a transferred claim

shall convert it into a civil action by filing a complaint to which is appended a verified

Fact Sheet (as provided in Section IX infra) within 60 days from the mailing of the notice

provided in ¶ B supra. Any TL Non-Plaintiff Claim which is not so converted within the

prescribed or extended time shall be deemed waived and treated as expunged, invalid

and/or disallowed. Claimants filing a complaint shall pay the filing fee for commencing

a civil action. TL and the defendants bound by actions of the Defendants' Coordinating

Counsel, by having joined in the request for mandatory conversion as provided in this

paragraph, are deemed to have waived service of the summons that would otherwise be

required by Rule 4 Fed. R. Civ. P.

D.     Until otherwise directed by this Court, TL and other Defendants shall take

no action to respond to a complaint for a converted case or otherwise defend the action,

except as necessary to review the information provided to provide insurance carriers

notice of and information regarding the action. A plaintiff in a converted case may ask

12

the Special Master to classify it as a "pre-2002 case." Such application must be made by

e-mail, with supporting attachments, sent on or before the date for filing the complaint.

Upon such classification by the Special Master, the first sentence of this paragraph shall

not apply to that case, and ¶ VII.B. below shall apply.

     E.    Plaintiffs' Coordinating Counsel shall present a tally and qualitative

summary of the converted cases at the status conference to be held in July, 2004.

## VII.  TEMPORARY STAY OF CERTAIN PENDING ACTIONS

### A.  2002-2004 Cases

    A list of the Twinlabs cases which raise claims made in the TL insurance policy

years 2002, 2003, and 2004 for occurrences in 2001, 2002, 2003, and 2004 and claims for

which coverage has been denied (the "2002-2004 Cases") is attached hereto as Exhibit A.

In accordance with the parties' request, the Court hereby temporarily stays discovery

with respect to, and the obligation of TL and any co-defendants to defend, the 2002-2004

cases. Instead, they shall proceed as follows:

      (1)    Each plaintiff in the 2002-2004 Cases shall serve a Fact Sheet in

accordance with Section IX of this Order within 45 days from the date on which the Fact

Sheet Form is approved by the Court. However, this subparagraph does not apply to the

converted cases described in Section VI, supra (the "Converted Cases"), wherein Fact

Sheets must be served with the complaint pursuant to paragraph VI.C. supra.)

      (2)    TL and all other relevant defendants shall take no further action to

defend the 2002-2004 Cases until after the July 2004 status conference, at which the

parties shall advise the Court of the status of the 2002-2004 Cases and the parties'

respective positions regarding a possible extension of this stay of defense.

(3)    All relevant parties, including the Official Committee of Ephedra Claimants and the General Creditors' Committee in the Chapter 11 proceedings, shall confer and negotiate in good faith, with the assistance of the Honorable Cornelius Blackshear, United States Bankruptcy Judge, Southern District of New York, to devise alternative claims disposition procedures for (i) the 2002-2004 Cases and (ii) such Converted Cases as the parties reasonably believe should be included in the 2002-2004 Cases. The parties shall report to Judge Blackshear regarding their efforts by no later than ten days after entry of this Order.

**B.    Pre-2002 Cases**

All Pre-2002 Cases shall conduct discovery and other pretrial proceedings on the schedule set forth in this Case Management Order No. 1 and subsequent orders of the Court.

**C.    Subsequent Cases**

Within 14 days of the filing date in this Court (the "Filing Date") of any Subsequent Case (as defined supra), transferred after entry of this Order, Plaintiffs' Coordinating Counsel and Defendants' Coordinating Counsel shall advise the Special Master by e-mail whether such action shall be included in the 2002-2004 Cases or the Pre-2002 Cases. If the Special Master determines that the transferred action should be included in the 2002-2004 Cases, the action shall be handled in accordance with Paragraph VII.A.

**VIII.  JOINDER OF PARTIES, AMENDMENT OF PLEADINGS, RULE 12 MOTIONS, ANSWERS, PENDING MOTIONS, AND MOTIONS REGARDING GENERAL EVIDENTIARY ISSUES**

**A.    Joinder of Parties**

14

Joinder of parties in all actions must be accomplished within 30 days after the date of this Order (for pending cases), or after the Filing Date (for Subsequent Cases), or after notice of transfer (for Tag-along cases).

### B.   Amendment of Pleadings

Amended pleadings may be filed without leave of Court within 30 days after (1) the date of this Order (for pending cases), (2) the Filing Date (for Subsequent Cases), or (3) notice of transfer (for Tag-along cases). If the pleading adds or removes any party, there shall be appended thereto a list of the parties added and removed for each action affected. If the pleading adds a party that is not named in any of the consolidated cases, there shall be appended to the pleading a separate list of such newly named parties.

### C.   Rule 12 Motions

Motions under Fed. R. Civ. P. 12 may be filed within 30 days after (1) the date of this Order (for pending cases), (2) the Filing Date (for Subsequent Cases), or (3) notice of transfer (for Tag-along cases).

### D.   Answers

Each defendant who has been served a complaint but has not yet answered shall answer or move under Rule 12 within 30 days after (1) the date of this Order (for pending cases), (2) the Filing Date (for Subsequent Cases), or (3) notice of transfer (for Tag-along cases).

E.    **Pending Motions**

No later than May 13, 2004, i.e., the date of the next status conference, the parties

in each individual case must advise the Court in writing of any pending motions filed in

the transferor court that require decision by this Court.  In the written submission, the

parties must advise the Court if the pending motions require revised briefing under the

Federal Rules of Civil Procedure, the Federal Rules of Evidence, or other applicable

federal law.

IX.    **NON-EXPERT DISCOVERY PROVIDED BY PLAINTIFFS**

A.    On or before April 30, 2004, Plaintiffs' Coordinating Counsel and

Defendants Coordinating Counsel shall present to the Court for approval a form Fact

Sheet and Authorization for Release of Medical Records ("Fact Sheet") suitable for use

in all ephedra cases.  The Fact Sheet shall include a form medical authorization in

compliance with the Health Insurance Portability and Accountability Act.  The final form

of the Fact Sheet shall be determined by the Court.

B.    Except as set forth in subsection (4) below, each plaintiff shall provide

verified answers to the Fact Sheet and an executed medical authorization within 45 days

after approval of the Fact Sheet (for pending cases), or after the Filing Date (for

Subsequent Cases), or after notice of transfer (for Tag-along cases).

C.    Except as provided in Section VI for the Converted Cases and Section VII

for the 2002-2004 Cases, each plaintiff shall produce the documents requested by the

Fact Sheet within 60 days after approval of the Fact Sheet (for pending cases), or 30 days

after the Filing Date (for Subsequent Cases), or 30 days after notice of transfer (for Tag-

along cases).

16

D.    If a plaintiff has provided sworn answers to prior interrogatories

responding to all information requested in the Fact Sheet, that plaintiff shall not be

required to provide answers to the Fact Sheet.  If a plaintiff has provided sworn responses

to prior interrogatories responding to some, but not all information requested in the Fact

Sheet, that plaintiff shall answer those portions of the Fact Sheet for which no prior

interrogatory response has been provided.

E.    A plaintiff's responses to the Fact Sheet shall conform to the standards

applicable to interrogatory answers under Fed. R. Civ. P. 33 and production of documents

responses under Fed. R. Civ. P. 34.  Each plaintiff shall remain bound by the

supplementation duties imposed by Fed.R.Civ.P. 26(e).  The questions contained in the

Fact Sheet shall not be limited by the restrictions of S.D.N.Y. Local Civil Rule 33.3(a).

X.    **NON-EXPERT DISCOVERY PROVIDED BY DEFENDANTS**

A.    On or before May 20, 2004, Plaintiffs' Coordinating Counsel and

Defendants' Coordinating Counsel shall serve and file a proposed Master Set of Requests

for Production of Documents and Interrogatories (the "Master Discovery") in a form

suitable for all ephedra cases. (The limitations imposed by the S.D.N.Y. Local Rule

33.3(a) on the scope of initial interrogatories shall not here apply.) Plaintiffs'

Coordinating Counsel and Defendants' Coordinating Counsel shall meet and confer

regarding (a) the possibility of utilizing prior document production requests from the

transferred actions to serve in whole or in part as document production requests in the

Master Discovery, and (b) the possibility of utilizing prior document productions from

the transferred actions to serve as responses to the document production requests in the

Master Discovery.  Parties to whom the proposed Master Discovery is propounded may

17

serve and file objections within five business days after service of the proposed requests. After reviewing the proposal and any objections thereto, the Court shall order the final form of Master Discovery.

B.    Defendants in the cases now before this Court shall produce documents responsive to the Master Discovery within 60 days after entry of the order approving the Master Discovery; defendants in Subsequent and Tag-along cases shall produce documents within 90 days after entry unless they apply for an extension of time to the Special Master within 30 days after the Filing Date or notice of transfer and such extension is granted for good cause shown.   On the date for producing documents, the producing parties shall provide the information specified in Local Civil Rule 26.2 (the "privilege log") for each document withheld because of a claim of privilege. Objections to privileges are waived unless the objecting party requests a ruling by the Special Master within ten days after the information specified in Local Civil Rule 26.2 is provided in writing by the party claiming the privilege.

## XI.    THIRD-PARTY DOCUMENT DISCOVERY

### A.    Plaintiffs' Medical Records

Prior to using any medical authorization furnished by a plaintiff as part of that plaintiff's Fact Sheet submission in order to obtain medical records or other documents with respect to a plaintiff, the person using such authorization shall provide to the plaintiff's counsel, or to the plaintiff if unrepresented, the names and addresses of the persons to whom the authorizations will be addressed.  A plaintiff shall have 15 days to object to the use of such authorization.  If such an objection is made, the authorization shall not be used to request medical records from such medical provider or third person

18

until the objection is resolved by consent or ruling of the Special Master. Upon request of a plaintiff's counsel and/or a co-defendant's counsel, defendants' counsel shall provide copies of the records requested to plaintiff's counsel and/or co-defendant's counsel at a reasonable cost.

### B.    Third Party Document Production Requests

Subject to the limitations contained in the prior paragraph, any party may request production of documents by a third party through a subpoena duces tecum. The party initiating such discovery shall provide, at a reasonable cost, copies of all documents obtained to any counsel in that action who requests copies of the documents. No such subpoena may be served fewer than 60 days before the Fact Discovery Completion Date as provided below.

### XII.    NON-EXPERT DEPOSITIONS, REQUESTS TO ADMIT, EXPEDITED DISCOVERY, DISCOVERY COMPLETION DATE

### A.    Non-Expert Depositions

(1)    All non-expert depositions must be completed by January 21, 2005, unless, in the case of Subsequent and Tag-along cases, the parties apply for an extension of time to the Special Master within 30 days after the Filing Date or notice of transfer and such extension is granted.

(2)    No witness shall be deposed on the same subject more than once. If a party seeks to take a second deposition of a witness, it shall provide the opposing party its basis for an exception to the rule along with a list of the subject matters as to which interrogation is sought.

19

**B.    Present and Former Employees of Defendants**

(1)    The defendants shall make available any of their present employees requested by plaintiffs for deposition, subject to the defendants' rights to object to the taking of any particular employee's deposition for good cause shown.

(2)    Plaintiffs shall in good faith take only those depositions of defendants' present and former employees deemed reasonably necessary under the circumstances. Plaintiffs shall coordinate with each other to schedule only one deposition of the same present or former employee of a defendant.

(3)    Defendants shall take reasonable steps to make available requested former employees, to the extent possible. If a defendant is unable, despite its best efforts, to produce a former employee, then the defendant shall provide upon request the former employee's last known address and shall cooperate in any effort to obtain this Court's or another court's assistance to compel the former employee's attendance at deposition. Plaintiffs shall not contact former employees of a defendant without permission of the defendant who employed the former employee.

(4)    Absent consent of the parties or order of this Court, all depositions of former employees of TL shall be conducted in (a) New York City, (b) Long Island, New York, (c) Utah, or (d) the employee's state of residence, to be determined by the preference of the former employee. Absent consent of the parties or ruling by the Special Master, all depositions of former employees of other defendants shall be conducted in the state or country of the given defendant's principal place of business or the former employee's state of residence, to be determined by the preference of the former employee.

20

### C.   Requests for Admission

Requests for Admission, if any, must be served no later than 30 days before the

Fact Discovery Completion Date as provided below.

### D.   Expedited Discovery

Expedited discovery of a plaintiff and of the plaintiff's health care provider(s),

including depositions of the same, may be granted, at the option of the Special Master,

where all of the following conditions exist: (a) the plaintiff or a member of the plaintiff's

family is terminally ill; (b) there is an urgent need to record and preserve the testimony

because of the gravity of the illness; (c) the plaintiff has fully completed and served a

Fact Sheet and provided and fully complied with the execution of medical authorizations

as required by the Fact Sheet; and (d) defendants have had an opportunity to conduct

reasonable informal discovery prior to the taking of the deposition.  If necessary, the

defendants in an action may conduct expedited discovery of a plaintiff, including the

deposition of the plaintiff, before the plaintiff has completed and served a Fact Sheet if

the other conditions set forth above are satisfied.

### E.   Fact Discovery Completion Date

All fact discovery is to be completed within 9 months from the date of this Order

(the "Fact Discovery Completion Date") unless, in the case of Subsequent and Tag-along

cases, the parties apply for an extension of time to the Special Master within 30 days after

filing or notice of transfer, and such extension is granted.  Interim deadlines for other

items set forth in this Order may be extended by the parties in an individual action on

consent, provided the parties are certain they can still meet the discovery completion date

set forth in this paragraph, which shall not be extended except upon a showing of

21

extraordinary circumstances.   Expert discovery shall take place pursuant to the schedule

set forth in Section XIV below.

## XIII.   CONFIDENTIALITY

The Court will enter a confidentiality order based on its standard Protective Order

to protect confidential and competitively sensitive information.  By e-mail application to

the Special Master on or before April 30, 2004, the parties may request modifications in

the Court's standard protective order, a copy of which will made available to counsel by

the Special Master.

## XIV.   EXPERT DISCOVERY AND "DAUBERT" PROCEEDINGS

### A.     In General

Every party-proponent of a claim (including any counterclaim, cross-claim, or

third-party claim) that intends to offer expert testimony in support of such claim and

every party-opponent that intends to offer expert testimony in opposition to such claim

must make the disclosures required by Fed. R. Civ. P. 26(a)(2) in accordance with the

requirements of this provision.  No expert testimony (whether designated as "rebuttal" or

otherwise) will be permitted by other experts or beyond the scope of the opinions covered

by the aforesaid disclosures except upon prior express permission of the Court,

application for which must be made no later than 10 days after the date for disclosure of

expert witnesses by party-opponents as set forth infra.  All experts may be deposed, but

such depositions must occur within the time limit for depositions set forth infra.

### B.     Generic Expert Witnesses

(1)     On or before June 18, 2004, Plaintiffs' Coordinating Counsel shall

identify, in a document served on all parties, generic expert witnesses who are reasonably

expected to testify for the plaintiffs on issues of general or widespread applicability

("Generic Experts"), including, but not limited to, experts who will testify on general

causation.   The plaintiffs may identify up to three Generic Experts with respect to each

of the following categories of injuries: (a) ischemic stroke, (b) hemorrhagic stroke, (c)

seizures, (d) cardiac injury, (e) psychotic injury, and (f) primary pulmonary hypertension.

For each Generic Expert so identified, Plaintiffs' Coordinating Counsel, on behalf of all

plaintiffs, shall serve upon all parties the disclosures required by Fed. R. Civ. P. 26(a)(2),

except that such disclosures need not include such testimony, if any, that such Generic

Expert is expected to offer relating only to liability or damages as to a particular plaintiff.

       (2)     Each plaintiff in a Subsequent or Tag-along case shall identify

Generic Experts and provide all disclosures required by Fed. R. Civ. P. 26(a)(2) (with the

exceptions contained in the preceding paragraph), on or before July 16, 2004, unless such

plaintiff applies for an extension of time to the Special Master within 30 days after the

Filing Date or notice of transfer and such extension is granted.

       (3)     Discovery depositions of all Generic Experts identified pursuant to

paragraph (1) above shall be completed no later than September 10, 2004.  Discovery

depositions of all Generic Experts identified pursuant to paragraph (2) shall be completed

no later than two months following the date for the designation of such experts.

       (4)     On or before August 18, 2004, Defendants' Coordinating Counsel

shall identify, in a document served on all parties, Generic Experts who are reasonably

expected to testify in response to the Generic Experts disclosed by the plaintiffs pursuant

to paragraph (1) above.  The defendants may identify up to three Generic Experts with

respect to each of the categories of injuries set forth in paragraph (1) above.  For each

Generic Expert so identified, Defendants' Coordinating Counsel, on behalf of all

defendants, shall serve upon all parties the disclosures required by Fed. R. Civ. P.

26(a)(2), except that such disclosures need not include such testimony, if any, that such

Generic Expert is expected to offer relating only to liability or damages as to a particular

plaintiff.

> (5)     Each defendant in a Subsequent or Tag-along case shall identify

Generic Experts and provide all disclosures required by Federal Rule of Civil Procedure

26(a)(2) (with the exceptions contained in the preceding paragraph), on or before

September 15, 2004, unless such defendant applies for an extension of time to the Special

Master within 30 days after filing or notice of transfer and such extension is granted.

> (6)     Discovery depositions of all Generic Experts identified pursuant to

paragraph (4) above shall be completed no later than November 5, 2004.  Discovery

depositions of all Generic Experts identified pursuant to paragraph (5) above shall be

completed no later than two months following the designation of such experts.

> (7)     On or before December 10, 2004, every party wishing to challenge

the admissibility of an identified Generic Expert's opinion in any case other than a

Subsequent or Tag-along Case shall serve and file a motion to exclude such testimony (a

"*Daubert* motion").  For Subsequent or Tag-along cases, every party wishing to challenge

the admissibility of such Expert's opinion shall serve and file a *Daubert* motion no later

than three months following the date for designation of such Expert.  Answering papers

shall be served within 14 days after service of the motion papers, and reply papers within

7 days after service of the answering papers.

24

(8)    The parties are instructed to avoid duplicative arguments in *Daubert* motions by coordinating arguments with Plaintiffs' Coordinating Counsel, Defendants' Coordinating Counsel, and each other.

(9)    Oral argument on the motions to exclude Generic Expert testimony in any but Subsequent or Tag-along Cases shall be held at 9 a.m. on January 6, 2005. If an evidentiary hearing is required, the Court will so notify counsel that time and set a date for such hearing.

**C.    Case Specific Expert Witnesses**

(1)    On or before October 15, 2004, each plaintiff shall identify, in a document served on all parties, each Case Specific Expert witness who is expected to testify for that plaintiff and, except to the extent that such disclosures already have been made, shall make all expert disclosures required by Fed. R. Civ. P. 26(a)(2).

(2)    On or before December 10, 2004, each defendant shall identify, in a document served on all parties, each Case Specific Expert who is expected to testify for that defendant and, except to the extent that such disclosures already have been made, shall make all expert disclosures required by Fed. R. Civ. P. 26(a)(2).

(3)    Discovery depositions of plaintiffs' Case Specific Experts shall be completed by December 10, 2004. Discovery depositions of defendants' Case Specific Experts shall be completed by January 14, 2005.

(4)    On or before January 28, 2005, every party wishing to challenge the admissibility of a Case Specific Expert's opinion shall serve and file a *Daubert* motion. Answering papers shall be served within 14 days after service of the motion papers, and reply papers within 14 days after service of the answering papers. Oral

argument shall be held at 9 a.m. on March 3, 2005. If an evidentiary hearing is required, the Court will so notify counsel at that time and set a date for such hearing. The parties are instructed to avoid duplicative arguments in *Daubert* motions by coordinating arguments with Plaintiffs' Coordinating Counsel, Defendants' Coordinating Counsel, and each other.

## XV.   SUMMARY JUDGMENT MOTIONS

A.      Motions for summary judgment may be filed no later than 14 days after the Court decides any relevant *Daubert* motions that were filed as provided above. Answering papers shall be served within 14 days after service of the motion papers, and reply papers within 7 days after service of the answering papers. Oral argument will be heard at the next status conference occurring at least ten business days after the last paper is due.

## XVI.  FINAL PRE-TRIAL CONFERENCE;  REMAND;  TRIAL

### A.    Pretrial Order; Final Pre-Trial Conferences

Counsel in the Twinlabs cases shall submit a joint pretrial consent order (in the form prescribed by Rule 4 of Judge Rakoff's Individual Rules) by May 2, 2005. The final pretrial conference will be held on May 5, 2005. Except where extensions of time have been granted as set forth above, the MDL and Tag-along cases will be remanded to their district of origin for trial.

### B.    Trial

Trial of the Twinlabs cases will commence on May 9, 2005, with a consolidated trial of all common issues.

### C.    Demand for Jury Trial

Where any complaint in a Twinlabs case transferred to this Court does not contain a demand for jury trial, the plaintiff may serve and file a jury demand within 30 days after entry of this order or, for Subsequent Cases, after the Filing Date.

## XVII.  EFFECT ON BANKRUPTCY PROCEEDINGS

Nothing contained herein shall prohibit, hinder, impair or in any way affect the rights of TL, the Official Committee of Unsecured Creditors, and the Official Committee of Ephedra Claimants appointed in the Chapter 11 cases of TL, *In re TL Administration Corporation, et al. (f/k/a Twinlab Corporation, et al.)*, Case No. 03-15564 (Bankr. S.D.N.Y.) (CB) (Jointly Administered) (the "Chapter 11 Cases"), filed in the United States Bankruptcy Court for the Southern District of New York, to, *inter alia*, participate in or propose a plan of liquidation or reorganization in the Chapter 11 Cases and/or any pending actions in the Court relating to and encompassed by *In re: Twinlabs Personal Injury Cases*, 21 M.C. 99 (S.D.N.Y.) (JSR) (the "District Court Actions"), and/or which allocates, assigns, marshals, or otherwise treats any insurance coverages which may be applicable to any such claims in the Chapter 11 Cases or causes of action in the District Court Actions.

SO ORDERED.

JED S. RAKOFF
U.S.D.J.

Dated: New York, N.Y.
       April 26, 2004

# EXHIBIT A

1. *Alcantar v. Twin Laboratories Inc., et al.*, Case No. 03CV09169

2. *Alexander v. Twin Laboratories Inc., et al.*, Case No. 04CV00095

3. *Ashment v. Twinlab Corp., et al.*, Case No. 04CV00538

4. *Baines v. Twin Laboratories Inc., et al.*, Case No. 04CV00094

5. *Bonner, et al. v. O'Leary Health Food Distributor Co., Inc., et al.*, Case No. 03CV09275

6. *Carrero, et al. v. Twin Laboratories Inc., et al.*, Case No. 04CV01276

7. *Filardi, et al. v. Twin Laboratories Inc., et al.*, Case No. 04CV00093

8. *Forbes, et al. v. Twin Laboratories Inc., et al.*, Case No. 03CV09272

9. *Fulton v. Twin Laboratories Inc., et al.*, Case No. 03CV09271

10. *Ganir v. FM, Inc., et al.*, Case No. 04CV01961

11. *Garvin v. Twin Laboratories Inc., et al.*, Case No. 04CV02379

12. *Garza v. Twin Laboratories Inc., et al.*, Case No. N/A

13. *Greve, et al. v. Twin Laboratories Inc., et al.*, Case No. 03CV9278

14. *Hawkinson v. Twin Laboratories Inc., et al.*, Case No. 04CV00539

15. *Houghton, et al. v. Twin Laboratories Inc., et al.*, Case No. 03CV09290

16. *Joyner-Wiggins v. Twin Laboratories Inc, et al.*, Case No. 03CV09285

17. *Korizis, et al. v. Twin Laboratories Inc., et al.*, Case No. 03CV09284

18. *McMillan, et al. v. Twin Laboratories Inc., et al.*, Case No. 03CV09267

19. *Millan v. Twin Laboratories Inc., et al.*, Case No. 04CV01988

20. *Parks v. Twin Laboratories Inc., et al.*, Case No. 04CV01037

21. *Parsley, et al. v. Metabolife International, Inc., et al.*, Case No. 03CV09266

22. *Petrovich, et al. v. Twin Laboratories Inc., et al.*, Case No. 04CV02498

23. *Rawert, et al. v. Twin Laboratories Inc., et al.*, Case No. 03CV09265

24.  *Rodriguez, Ronnie v. Twin Laboratories Inc., et al.,* Case No. 03CV09283

25.  *Smith, Jahn v. Twin Laboratories Inc., et al.,* Case No. 04CV01039

26.  *Welch, et al. v. Twin Laboratories Inc., et al.,* Case No. 04CV00091

27.  *White, et al. v. Rexall Sundown, Inc., et al.,* Case No. 03CV09281

29

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                             :
                                                                  :        **Chapter 11 Case No.**
**TL ADMINISTRATION CORPORATION,**               :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**   :        **03-15564 (CB)**
                                                                  :
                                                                  :        **(Jointly Administered)**
                                                                  :
                          **Debtors.**                            :
-----------------------------------------------------------x

**ORDER IDENTIFYING CLAIMS EXPUNGED PURSUANT
TO THE APRIL 26, 2004 CASE MANAGEMENT ORDER #1
OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK IN THE LITIGATION ENCAPTIONED
IN RE EPHEDRA PRODUCTS LIABILITY LITIGATION AND AUTHORIZING
THE DEBTORS' CLAIMS AGENT TO EXPUNGE RELATED CLAIMS**

Upon consideration of Case Management Order No. 1 ("CMO No. 1") dated April

26, 2004, as it pertains to all cases in the multi-district proceeding before the United States

District Court for the Southern District of New York (the "District Court") in the above-

captioned case, as CMO No. 1 relates to the proofs of claim attached hereto as Exhibit A (the

"Expunged Claims"); and CMO No. 1 having provided that any holders of ephedra-related

personal injury and wrongful-death claims timely filed in the Debtors' chapter 11 cases that were

not then plaintiffs before the District Court and that intended to prosecute a claim shall convert it

into a civil action by filing a complaint and a verified Fact Sheet (as provided in CMO No. 1)

within sixty (60) days of the mailing of a written notice of said claimant's obligations and time

deadlines; and CMO No. 1 having provided that any such claim which is not so converted within

the prescribed time shall be deemed waived and treated as expunged, invalid and/or disallowed;

and the prescribed period having expired on July 19, 2004; and it appearing that the Personal

Injury Claims were not properly converted on or before July 19, 2004; and good and sufficient

notice of this order having been provided to (i) the Office of the United States Trustee for the

Southern District of New York, (ii) the attorneys for the General Unsecured Creditors

Committee, (iii) the attorneys for the Committee of Ephedra Claimants, (iv) the holders of the

Expunged Claims listed on Exhibit A attached hereto, and (v) those parties entitled to notice

pursuant to this Court's order dated September 12, 2003 establishing certain notice procedures in

these chapter 11 cases, and it appearing that no other or further notice need be provided; and it

appearing that the; and the Court having jurisdiction to disallow and expunge the Personal Injury

Claims pursuant to sections 157 and 1334 of title 28 of the United States Code; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that Expunged Claims identified on Exhibit A attached hereto are

expunged and disallowed in their entirety.

Dated:  November 3, 2004                    /s/Cornelius Blackshear
                                            UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| ALLOR, CHRISTINA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 26 |
| ALLOR, CHRISTINA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 482 |
| ANA MEJIA REP. HERLINDA GUITIERREZ<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 300 |
| AYERS, ALAN<br>2220 S. 133RD AVENUE<br>TULSA, OK 74134 | 536 |
| AYERS, ALAN<br>2220 S. 133RD AVENUE<br>TULSA, OK 74134 | 631 |
| AYERS, ALAN<br>2220 S. 133RD AVENUE<br>TULSA, OK 74134 | 632 |
| AYERS, ALAN<br>2220 S. 133RD AVENUE<br>TULSA, OK 74134 | 633 |
| BAKER, MARY SHANNON<br>KENNETH B. MOLL & ASSOCIATES, LTD.<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 277 |
| BEATTY, MARY E.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 279 |
| BERTHA J. MCINTOSH REP. WILLIAM MCINTOSH<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 298 |
| BOGGESS, KEITH<br>5123 WINDERMERE ST.<br>HOUSTON, TX 77033 | 539 |
| BOGGESS, KEITH<br>5123 WINDERMERE ST.<br>HOUSTON, TX 77033 | 625 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| BOGGESS, KEITH<br>5123 WINDERMERE ST.<br>HOUSTON, TX 77033 | 626 |
| BOGGESS, KEITH<br>5123 WINDERMERE ST.<br>HOUSTON, TX 77033 | 627 |
| BORRELL, JEANNINE<br>629 PICADILLY DR.<br>HAGERSTOWN, MD 21740 | 538 |
| BORRELL, JEANNINE<br>629 PICADILLY DR.<br>HAGERSTOWN, MD 21740 | 679 |
| BORRELL, JEANNINE<br>629 PICADILLY DR.<br>HAGERSTOWN, MD 21740 | 680 |
| BORRELL, JEANNINE<br>629 PICADILLY DR.<br>HAGERSTOWN, MD 21740 | 681 |
| BRADLEY, ROY<br>P.O. BOX 874<br>LEAKESVILLE, MS 39451 | 533 |
| BRADLEY, ROY<br>P.O. BOX 874<br>LEAKESVILLE, MS 39451 | 594 |
| BRADLEY, ROY<br>P.O. BOX 874<br>LEAKESVILLE, MS 39451 | 595 |
| BRADLEY, ROY<br>P.O. BOX 874<br>LEAKESVILLE, MS 39451 | 596 |
| BRIDGES, WALTER ALLEN<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 282 |
| BROWNE, DAUNA B.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 283 |
| BURKHARDT, PEGGY ANN<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 284 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| BURT, GILBERT<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 286 |
| CANNON, WANDA G.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 287 |
| CARDAMONE, NICHOLAS<br>129 CAMPBELL RD<br>MOCKSVILLE, NC 27028 | 628 |
| CARDAMONE, NICHOLAS<br>129 CAMPBELL RD<br>MOCKSVILLE, NC 27028 | 629 |
| CARDAMONE, NICHOLAS<br>129 CAMPBELL RD<br>MOCKSVILLE, NC 27028 | 630 |
| CARDAMONE, NICHOLAS<br>129 CAMPBELL RD<br>MOCKVILLE, NC 27028 | 547 |
| CHANDA, ALKA AND HAYDEN, MARCIA D. AND<br>HAYDEN, JAMES H ET AL (SETTLEMENT CLASS)<br>MARK A. GRIFFIN - KELLER ROHRBACK, LLP<br>1201 THIRD AVENUE #3200<br>SEATTLE, WA 98101 | 57 |
| CLARK, SALLY<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 27 |
| CLARK, SALLY<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 473 |
| CONNOLLY, KARIN<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 25 |
| CONNOLLY, KARIN<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 483 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| DARRELL BURNS REPRESENTING EDITH BURNS<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 285 |
| DAWSON, REBECCA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 24 |
| DAWSON, REBECCA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 474 |
| DERRELL, MCKENZIE<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 299 |
| EHLING, DEBORAH S.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 289 |
| EVERETT, MELLISSA A.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 290 |
| FONTENOT, JUSTIN<br>PAUL C. COOK<br>WATERS & KRAUS, LLP<br>200 OCEANGATE, SUITE 520<br>LONG BEACH, CA 90802 | 31 |
| FOSTER, MICHAEL<br>3186 IDLEWILD ROAD<br>SUAMICO, WI 54173 | 534 |
| FOSTER, MICHAEL<br>3186 IDLEWILD ROAD<br>SUAMICO, WI 54173 | 591 |
| FOSTER, MICHAEL<br>3186 IDLEWILD ROAD<br>SUAMICO, WI 54173 | 592 |
| FOSTER, MICHAEL<br>3186 IDLEWILD ROAD<br>SUAMICO, WI 54173 | 593 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| FRANCHVILLE, ROBERT<br>SCOTT K. JOHNSON<br>SCHIFFRIN & BARROWAY, LLP<br>THREE BALA PLAZA EAST, SUITE 400<br>BALA CYNWYD, PA 19004 | 268 |
| FREEMAN, CHARLES<br>5239 SW TREECE RD<br>BAXTER SPRINGS, KS 66713 | 549 |
| FREEMAN, CHARLES<br>5239 SW TREECE RD<br>BAXTER SPRINGS, KS 66713 | 609 |
| FREEMAN, CHARLES<br>5239 SW TREECE RD<br>BAXTER SPRINGS, KS 66713 | 623 |
| FREEMAN, CHARLES<br>5239 SW TREECE RD<br>BAXTER SPRINGS, KS 66713 | 624 |
| GARCIA, FAVIOLA<br>532 SHIPMAN AVENUE<br>LA PUENTE, CA 91744 | 691 |
| GARCIA, FAVIOLA<br>532 SHIPMAN AVENUE<br>LA PUENTE, CA 91744 | 692 |
| GARCIA, FAVIOLA<br>532 SHIPMAN AVENUE<br>LA PUENTE, CA 91744 | 693 |
| GARDIA, FAVIOLA<br>532 SHIPMAN AVENUE<br>LA PUENTE, CA 91744 | 535 |
| GARDNER, MIDDLEBROOKS, GIBBONS ET AL.<br>C/O SAMUEL M. HILL; S.C. MIDDLEBROOKS<br>RE: BRYSON V. TWINLAB CORPORATION<br>SUITE 400, MCADORY BLDG 2013 1ST AVE N<br>BIRMINGHAM, AL 35203 | 174 |
| GOMES, KATHLEEN MARIE<br>KENNETH B. MOLL & ASSOCIATES, LTD.<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 450 |
| GOMEZ, OMAR<br>71 NORTH LOCUST AVENUE<br>MARLTON, NJ 08053 | 550 |
| GOMEZ, OMAR<br>71 NORTH LOCUST AVENUE<br>MARLTON, NJ 08053 | 712 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| GOMEZ, OMAR<br>71 NORTH LOCUST AVENUE<br>MARLTON, NJ 08053 | 713 |
| GOMEZ, OMAR<br>71 NORTH LOCUST AVENUE<br>MARLTON, NJ 08053 | 714 |
| GREEN, ROBERT<br>820 SOUTH CATON AVENUE, APT. E.<br>BALTIMORE, MD 21229 | 551 |
| GREEN, ROBERT<br>820 SOUTH CATON AVENUE, APT. E.<br>BALTIMORE, MD 21229 | 655 |
| GREEN, ROBERT<br>820 SOUTH CATON AVENUE, APT. E.<br>BALTIMORE, MD 21229 | 656 |
| GREEN, ROBERT<br>820 SOUTH CATON AVENUE, APT. E.<br>BALTIMORE, MD 21229 | 657 |
| HART, SAMUEL L.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 295 |
| HEITMAN, STEPHANIE<br>ROSILAND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 486 |
| HILE, LIBBY<br>10 AUDREY LANE<br>JONESBOROUGH, TN 37659 | 516 |
| HILE, LIBBY<br>10 AUDREY LANE<br>JONESBOROUGH, TN 37659 | 673 |
| HILE, LIBBY<br>10 AUDREY LANE<br>JONESBOROUGH, TN 37659 | 674 |
| HILE, LIBBY<br>10 AUDREY LANE<br>JONESBOROUGH, TN 37659 | 675 |
| HURST, HUBERT<br>1587 HENDERSON RD<br>MACON, GA 31217 | 524 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| HURST, HUBERT<br>1587 HENDERSON RD<br>MACON, GA 31217 | 676 |
| HURST, HUBERT<br>1587 HENDERSON RD<br>MACON, GA 31217 | 677 |
| HURST, HUBERT<br>1587 HENDERSON RD<br>MACON, GA 31217 | 678 |
| IVORY, DEREK<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 487 |
| JEFFRIES, DARRON<br>12102 JUTLAND DR.<br>HOUSTON, TX 77048 | 518 |
| JEFFRIES, DARRON<br>12102 JUTLAND DR.<br>HOUSTON, TX 77048 | 670 |
| JEFFRIES, DARRON<br>12102 JUTLAND DR.<br>HOUSTON, TX 77048 | 671 |
| JEFFRIES, DARRON<br>12102 JUTLAND DR.<br>HOUSTON, TX 77048 | 672 |
| JOANNE K EDWARDS REP. MICHAEL W. EDWARDS<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 288 |
| JOCHIMS, CHRISTOPHER<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 488 |
| JONES, ANDRE<br>C/O ANDREWS & THORNTON<br>820 N PARTON AVE, 2ND FL<br>SANTA ANA, CA 92701 | 341 |
| JONES, ANDRE<br>C/O ANDREWS & THORNTON<br>820 N PARTON AVE, 2ND FL<br>SANTA ANA, CA 92701 | 342 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| JONES, BEATA<br>630 IRISH AMERICAN ROAD<br>LOVELOCK, NV 84919 | 528 |
| JONES, BEATA<br>630 IRISH AMERICAN ROAD<br>LOVELOCK, NV 84919 | 606 |
| JONES, BEATA<br>630 IRISH AMERICAN ROAD<br>LOVELOCK, NV 84919 | 607 |
| JONES, BEATA<br>630 IRISH AMERICAN ROAD<br>LOVELOCK, NV 84919 | 608 |
| KAVA KAVA LITIGATION<br>C/O MILBERG WEISS BERSHAD ET AL.<br>C/O BONNY E SWEENEY/CHRISTOPHER M. BURKE<br>401 B STREET SUITE 1700<br>SAN DIEGO, CA 92101 | 315 |
| KESLING, JOSHUA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 22 |
| KESLING, JOSHUA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 472 |
| KINDELL, RAMON<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 21 |
| KINDELL, RAMON<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 476 |
| KOCOT, FORD<br>137 GERMAIN STREET<br>BUFFALO, NY 14207 | 513 |
| KOCOT, FORD<br>137 GERMAIN STREET<br>BUFFALO, NY 14207 | 588 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| KOCOT, FORD<br>137 GERMAIN STREET<br>BUFFALO, NY 14207 | 589 |
| KOCOT, FORD<br>137 GERMAIN STREET<br>BUFFALO, NY 14207 | 590 |
| KOLAR, CHRIS<br>7458 JOHNNYCAKE RIDGE RD<br>MENTOR, OH 44060 | 512 |
| KOLAR, CHRIS<br>7458 JOHNNYCAKE RIDGE RD<br>MENTOR, OH 44060 | 682 |
| KOLAR, CHRIS<br>7458 JOHNNYCAKE RIDGE RD<br>MENTOR, OH 44060 | 683 |
| KOLAR, CHRIS<br>7458 JOHNNYCAKE RIDGE RD<br>MENTOR, OH 44060 | 684 |
| KYLE L. GREEN REP. ANNA MAE DOSECK<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 291 |
| KYUKENDALL, TAMARA R.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 292 |
| LANGE & KONCIUS, LLP          C/O<br>JOSEPH J.M. LANGEC/O JEFFREY A. KONCIUS<br>1880 CENTURY PARK EAST, SUITE 900<br>LOS ANGELES, CA 90067 | 554 |
| LOIS M. MCGINN REP. DARRYL PAUL MANJIN<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 297 |
| LOMAX, BRYAN<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 20 |
| LOMAX, BRYAN<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 471 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| LOWDERMILK, BRIEN<br>C/O ANDREWS & THORNTON<br>820 N. PARTON AVENUE, 2ND FL<br>SANTA ANA, CA 92701 | 389 |
| LOWDERMILK, BRIEN<br>C/O ANDREWS & THORNTON<br>820 N. PARTON AVENUE, 2ND FL<br>SANTA ANA, CA 92701 | 390 |
| MACGARVIE, SANDRA<br>257 PRINCIPAL<br>EEL RIVER CROS, NB,<br>CANADA E8E1S4 | 514 |
| MACGARVIE, SANDRA<br>257 PRINCIPAL<br>EEL RIVER CROS, NB,<br>CANADA E8E1S4 | 688 |
| MACGARVIE, SANDRA<br>257 PRINCIPAL<br>EEL RIVER CROS, NB,<br>CANADA E8E1S4 | 689 |
| MACGARVIE, SANDRA<br>257 PRINCIPAL<br>EEL RIVER CROS, NB,<br>CANADA E8E1S4 | 690 |
| MAHUGH, BRAD<br>8048 NE BOTHELL WAY<br>KENMORE, WA 98028 | 515 |
| MAHUGH, BRAD<br>8048 NE BOTHELL WAY<br>KENMORE, WA 98028 | 652 |
| MAHUGH, BRAD<br>8048 NE BOTHELL WAY<br>KENMORE, WA 98028 | 653 |
| MAHUGH, BRAD<br>8048 NE BOTHELL WAY<br>KENMORE, WA 98028 | 654 |
| MARGARET ROSADA REP. ISMAEL MARRERO<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 307 |
| MARTIN, SANDRA<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 296 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| MATTRESSMAN, JESTORN<br>28806 E. MORELAND SCHOOL RD<br>BLUE SPRINGS, MO 64014 | 532 |
| MATTRESSMAN, JESTORN<br>28806 E. MORELAND SCHOOL RD<br>BLUE SPRINGS, MO 64014 | 603 |
| MATTRESSMAN, JESTORN<br>28806 E. MORELAND SCHOOL RD<br>BLUE SPRINGS, MO 64014 | 604 |
| MATTRESSMAN, JESTORN<br>28806 E. MORELAND SCHOOL RD<br>BLUE SPRINGS, MO 64014 | 605 |
| MELTON, COREY<br>7611 HAWTHORNE PLACE<br>ST. LOUIS, MO 63121 | 414 |
| MELTON, COREY<br>C/O ANDREW & THORNTON<br>820 N PARTON AVE, 2ND<br>SANTA ANA, CA 92701 | 415 |
| MICHAEL G. MUNDY, AS REPRESENTATIVE<br>OF STEPHANI L. MUNDY<br>KENNETH B. MOLL & ASSOCIATES, LTD.<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 755 |
| MODY, DIANE E.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 301 |
| MONROE, LEONARD<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 19 |
| MONROE, LEONARD<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 470 |
| MOORE, MALCOLM<br>1510 S. 4TH STREET<br>MUSKOGEE, OK 74401 | 517 |
| MOORE, MALCOLM<br>1510 S. 4TH STREET<br>MUSKOGEE, OK 74401 | 700 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| MOORE, MALCOLM<br>1510 S. 4TH STREET<br>MUSKOGEE, OK  74401 | 701 |
| MOORE, MALCOLM<br>1510 S. 4TH STREET<br>MUSKOGEE, OK  74401 | 702 |
| MURPHY, MELISSA<br>1600 WEST 143RD STREET, APT. 221<br>BURNSVILLE, MN  55306 | 519 |
| MURPHY, MELISSA<br>1600 WEST 143RD STREET, APT. 221<br>BURNSVILLE, MN  55306 | 706 |
| MURPHY, MELISSA<br>1600 WEST 143RD STREET, APT. 221<br>BURNSVILLE, MN  55306 | 707 |
| MURPHY, MELISSA<br>1600 WEST 143RD STREET, APT. 221<br>BURNSVILLE, MN  55306 | 708 |
| NEAL, DIANE<br>7508 CLAASON AVENUE<br>CLEVELAND, OH  44105 | 520 |
| NEAL, DIANE<br>7508 CLASSON AVENUE<br>CLEVELAND, OH  44105 | 697 |
| NEAL, DIANE<br>7508 CLASSON AVENUE<br>CLEVELAND, OH  44105 | 698 |
| NEAL, DIANE<br>7508 CLASSON AVENUE<br>CLEVELAND, OH  44105 | 699 |
| NIDA MOSS REPRESENTING RICHARD MOSS<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL  60602 | 302 |
| NISSENBAUM, MICHAEL<br>2727 N. UNIVERSITY DRIVE, APT. 202<br>WAUKESHA, WI  53188 | 521 |
| NISSENBAUM, MICHAEL<br>2727 N. UNIVERSITY DRIVE, APT. 202<br>WAUKESHA, WI  53188 | 694 |
| NISSENBAUM, MICHAEL<br>2727 N. UNIVERSITY DRIVE, APT. 202<br>WAUKESHA, WI  53188 | 695 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| NISSENBAUM, MICHAEL<br>2727 N. UNIVERSITY DRIVE, APT. 202<br>WAUKESHA, WI 53188 | 696 |
| NIX, RON E.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 303 |
| PAHL, ARTHUR<br>KENNETH B. MOLL & ASSOCIATES, LTD.<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 786 |
| PHILLIPS, ANNA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 489 |
| PHIPPS, TERRY<br>1215 WATERS EDGE<br>EATON PARK, FL 33840 | 715 |
| PHIPPS, TERRY<br>1215 WATERS EDGE<br>EATON PARK, FL 33840 | 716 |
| PHIPPS, TERRY<br>1215 WATERS EDGE<br>EATON PARK, FL 33840 | 717 |
| PHIPPS, TERRY<br>1215 WATERS EDGE<br>LAKELAND, FL 33840 | 527 |
| PIERSOL, CHRIS<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 18 |
| PIERSOL, CHRIS<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 469 |
| PIPKIN-VIEGAS, SUZANNE R.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 306 |
| PRATT, NINA<br>4238 E. COOK AVENUE<br>SAINT LOUIS, MO 63113 | 525 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| PRATT, NINA<br>4238 E. COOK AVENUE<br>SAINT LOUIS, MO 63113 | 703 |
| PRATT, NINA<br>4238 E. COOK AVENUE<br>SAINT LOUIS, MO 63113 | 704 |
| PRATT, NINA<br>4238 E. COOK AVENUE<br>SAINT LOUIS, MO 63113 | 705 |
| QUINN, AUDREY B.<br>KENNTH B. MOLL & ASSOCIATES, LTD.<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 785 |
| RHEINGOLD VALET RHEINGOLD SHKOLNIK &<br>MCCARTNEY LLP, C/O DAVID B. RHEINGOLD<br>RE: CAPATI V. TWIN LABORATORIES INC.<br>113 EAST 37TH STREET<br>NEW YORK, NY 10016 | 168 |
| RHEINGOLD VALET RHEINGOLD SHKOLNIK<br>C/O DAVID B. RHEINGOLD, ESQ.<br>DAVID SCOTT JONES<br>113 EAST 37TH STREET<br>NEW YORK, NY 10016 | 166 |
| ROBINSON, LEON<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 490 |
| RODGERS, NANETTE<br>SCOTT K. JOHNSON<br>SCHIFFRIN & BARROWAY, LLP<br>THREE BALA PLAZA EAST, SUITE 400<br>BALA CYNWYD, PA 19004 | 568 |
| RODRIGUEZ, LINDA R.<br>23000 EDMONDS WAY, #301<br>EDMONDS, WA 98020 | 553 |
| RUSSELL, TYLER<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 17 |
| RUSSELL, TYLER<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 485 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| SALSBURY, HAMILTON<br>4637 E. 10TH ST.<br>TUCSON, AZ  85711 | 526 |
| SALSBURY, HAMILTON<br>4637 E. 10TH ST.<br>TUCSON, AZ  85711 | 718 |
| SALSBURY, HAMILTON<br>4637 E. 10TH ST.<br>TUCSON, AZ  85711 | 719 |
| SALSBURY, HAMILTON<br>4637 E. 10TH ST.<br>TUCSON, AZ  85711 | 720 |
| SHARFENAKER, SANDRA<br>805 LONDON GROVE PORT ROAD<br>LOCKBOURNE, OH  43137 | 542 |
| SHARFENAKER, SANDRA<br>805 LONDON GROVE PORT ROAD<br>LOCKBOURNE, OH  43137 | 709 |
| SHARFENAKER, SANDRA<br>805 LONDON GROVE PORT ROAD<br>LOCKBOURNE, OH  43137 | 710 |
| SHARFENAKER, SANDRA<br>805 LONDON GROVE PORT ROAD<br>LOCKBOURNE, OH  43137 | 711 |
| SIMMONS, FREDERICK<br>429 GOVERNOR HEYWARD<br>EASTOVER, SC  29044 | 531 |
| SIMMONS, FREDERICK<br>429 GOVERNOR HEYWARD<br>EASTOVER, SC  29044 | 634 |
| SIMMONS, FREDERICK<br>429 GOVERNOR HEYWARD<br>EASTOVER, SC  29044 | 635 |
| SIMMONS, FREDERICK<br>429 GOVERNOR HEYWARD<br>EASTOVER, SC  29044 | 636 |
| SIMPSON, LUANN<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL  62024 | 16 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| SIMPSON, LUANN<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 478 |
| SMITH, PAMELA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 491 |
| SMITH, TERRY<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 15 |
| SMITH, TERRY<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 475 |
| SNYDER, DONALD<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 14 |
| SNYDER, DONALD<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 477 |
| SOLES, MICHAEL<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 13 |
| SOLES, MICHAEL<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD,<br>EAST ALTON, IL 62024 | 468 |
| STEWART, CLIFFORD<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD<br>EAST ALTON, IL 62024 | 492 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| THE SHARP FIRM  C/O LANCE D. SHARP, ESQ<br>THE SHARP FIRM<br>3307 NORTHLAND DR STE 470<br>AUSTIN, TX  787314943 | 401 |
| THE SHARP FIRM<br>2307 NORTHLAND DR STE 470<br>AUSTIN, TX  787314943 | 402 |
| THIBODEAU, WILLIAM<br>1129 MAIN STREET<br>WALTHAM, MA  02451 | 540 |
| THIBODEAU, WILLIAM<br>1129 MAIN STREET<br>WALTHAM, MA  02451 | 661 |
| THIBODEAU, WILLIAM<br>1129 MAIN STREET<br>WALTHAM, MA  02451 | 662 |
| THIBODEAU, WILLIAM<br>1129 MAIN STREET<br>WALTHAM, MA  02451 | 663 |
| TINA E. LETT REP. TERRI M. LETT<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL  60602 | 293 |
| TRASK, CHAD<br>325 REVERE DRIVE<br>LAS VEGAS, NV  89107 | 546 |
| TRASK, CHAD<br>325 REVERE DRIVE<br>LAS VEGAS, NV  89107 | 658 |
| TRASK, CHAD<br>325 REVERE DRIVE<br>LAS VEGAS, NV  89107 | 659 |
| TRASK, CHAD<br>325 REVERE DRIVE<br>LAS VEGAS, NV  89107 | 660 |
| TRUE, CHELSEA<br>3366 LINDA MESA WAY<br>NAPA, CA  94558 | 545 |
| TRUE, CHELSEA<br>3366 LINDA MESA WAY<br>NAPA, CA  94558 | 667 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| TRUE, CHELSEA<br>3366 LINDA MESA WAY<br>NAPA, CA 94558 | 668 |
| TRUE, CHELSEA<br>3366 LINDA MESA WAY<br>NAPA, CA 94558 | 669 |
| UNTIED, RAMONA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 11 |
| UNTIED, RAMONA<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 479 |
| WARDEN, BRENDA<br>253 JEAN MARIE STREET<br>RESERVE, LA 70084 | 543 |
| WARDEN, BRENDA<br>253 JEAN MARIE STREET<br>RESERVE, LA 70084 | 664 |
| WARDEN, BRENDA<br>253 JEAN MARIE STREET<br>RESERVE, LA 70084 | 665 |
| WARDEN, BRENDA<br>253 JEAN MARIE STREET<br>RESERVE, LA 70084 | 666 |
| WATSON, PETRISE A.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 309 |
| WEBER STUMPO, BONNIE J.<br>KENNETH B. MOLL & ASSOCIATES, LTD.<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 783 |
| WELCH, CORA<br>5300 ENLOW ROAD<br>ATHENS, OH 45701 | 537 |
| WELCH, CORA<br>5300 ENLOW ROAD<br>ATHENS, OH 45701 | 643 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| WELCH, CORA<br>5300 ENLOW ROAD<br>ATHENS, OH 45701 | 644 |
| WELCH, CORA<br>5300 ENLOW ROAD<br>ATHENS, OH 45701 | 645 |
| WHITE, JAMES<br>631 CHIPLEY WAY<br>CHARLOTTE, NC 28205 | 544 |
| WHITE, JAMES<br>631 CHIPLEY WAY<br>CHARLOTTE, NC 28205 | 646 |
| WHITE, JAMES<br>631 CHIPLEY WAY<br>CHARLOTTE, NC 28205 | 647 |
| WHITE, JAMES<br>631 CHIPLEY WAY<br>CHARLOTTE, NC 28205 | 648 |
| WHITEHURST, CHARLES RICHARD<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 311 |
| WIDDIFIELD, GREGORY D.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 312 |
| WINTERS, VALERIE<br>PO BOX 10952<br>TERRA BELLA, CA | 541 |
| WINTERS, VALERIE<br>PO BOX 10952<br>TERRA BELLA, CA | 640 |
| WINTERS, VALERIE<br>PO BOX 10952<br>TERRA BELLA, CA | 641 |
| WINTERS, VALERIE<br>PO BOX 10952<br>TERRA BELLA, CA | 642 |
| WOODY, JENIFER L.<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 313 |

| CLAIMANT NAME AND ADDRESS | CLAIM NUMBER |
|---|---|
| ZACK BIGGS REPRESENTING TERRY BIGGS<br>KENNETH B. MOLL & ASSOCIATES, LTD<br>THREE FIRST NATIONAL PLAZA, 50TH FLOOR<br>CHICAGO, IL 60602 | 280 |
| ZINEVICH, MATTHEW<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 10 |
| ZINEVICH, MATTHEW<br>ROSALIND M. ROBERTSON<br>THE SIMMONS FIRM<br>707 BERKSHIRE BLVD, PO BOX 521<br>EAST ALTON, IL 62024 | 481 |

# EXHIBIT D

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK<br><br>Enron Corp. et al., Case Number: 01-16034 (AJG) | EMPLOYEE<br>PROOF OF CLAIM |
|---|---|

**Debtor Name and Case Number as Scheduled:**

_____

Indicate Debtor Name and Case Number, if other than above (see Exhibit A to the Bar Date Notice for a complete list of debtors, case numbers, and petition dates): _____

| | **NOTICE OF SCHEDULED CLAIM:**<br>Your claim is scheduled by the Debtor as: |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Employee Name and Address:**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address information provided is incorrect or incomplete. Please provide correct information by striking through the preprinted address and writing the correct information.

IF YOU AGREE WITH THE AMOUNT SCHEDULED BY THE DEBTOR AND HAVE NO OTHER CLAIMS AGAINST THE DEBTOR, YOU DO NOT NEED TO FILE THIS PROOF OF CLAIM, EXCEPT AS FOLLOWS: If the amount shown above is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed.

**Beneficiary Name and Address, if applicable:**

Check here    ☐ supplements
if this claim    ☐ replaces
☐ amends    a previously filed claim, dated: _____

**Telephone Number of Employee/Beneficiary:**

Name of Enron company where most recently employed:

**Social Security Number of Employee:**

Date(s) of employment:

| 1. | Basis for Claim | Total Claim | Amount Entitled to Priority* | | | Total Claim | Amount Entitled to Priority* |
|---|---|---|---|---|---|---|---|
| A. | ☐ Salary or Wages | $_____ | $_____ | E. | ☐ Bonuses/Incentive Plans | $_____ | $_____ |
| B. | ☐ Vacation | $_____ | $_____ | F. | ☐ Sales Commissions | $_____ | $_____ |
| C. | ☐ Severance/ Separation Pay | $_____ | $_____ | G. | ☐ Reimbursable Expenses | $_____ | $_____ |
| D. | ☐ Employee Benefit Plans | $_____ | $_____ | H. | ☐ Other Unpaid Amounts | $_____ | $_____ |
| | | | | | Total: | $_____ | $_____ |

(Use the attached Worksheet to calculate your claims.)
*Please refer to attached instructions for a definition of Priority Claim.

| 2. **Supporting Documents:** *Attach copies of the attached Worksheet and all supporting documents.*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br><br>3. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and a copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| **Date:** | Sign and print the name and title, if any, of the employee, beneficiary or other person authorized to file this claim: |
|---|---|

*Penalty for presenting a fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

EPOC

## INSTRUCTIONS FOR EMPLOYEE PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

### — DEFINITIONS —

**Debtor**
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**Employee**
An employee is any current or former employee of the debtor, to whom the debtor owed a debt on the date that the bankruptcy case was filed.

**Proof of Claim**
A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the Enron Claims Docketing Center, Mega Case Unit, One Bowling Green, New York, New York 10004-1408.

**Unsecured Priority Claim**
Employee claims are entitled to priority payment if they are (1) allowed unsecured claims, but only to the extent of $4,650 for each individual or corporation, as the case may be, earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or

corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor; or (2) allowed unsecured claims for contributions to an employee benefit plan (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (B) for each such plan, to the extent of (i) the number of employees covered by each such plan multiplied by $4,650; less (ii) the aggregate amount paid to such employees under sentence (1) above, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

### Items to be completed in Proof of Claim form (if not already filled in)

**Name of Debtor and Case Number:**
The form indicates the name of the debtor against whom you have a scheduled claim. If you have a claim against a different debtor, please indicate the correct debtor in the blank provided in the top left hand corner of the Proof of Claim form. IF YOU HAVE CLAIMS AGAINST ADDITIONAL DEBTORS, YOU MUST COMPLETE A SEPARATE PROOF OF CLAIM FORM FOR EACH CLAIM AND AGAINST EACH DEBTOR. A complete list of debtors is provided in the Bar Date Notice accompanying this form.

**Information about Employee:**
The section giving the name and address of the current or former employee to whom the debtor owes money or property has been completed for you, based on the debtor's books and records. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about these cases, if your address differs from the information printed on the form, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form. Please update the address information if it is incorrect or incomplete.

**Information about Beneficiary, if any:**
If you are a surviving beneficiary of an Enron employee, complete this section.

**Information about Scheduled Claim:**
If there is a claim amount shown in the upper right hand corner of the Proof of Claim form, the debtor has scheduled your claim in that amount in its Schedules and Statements filed with the Bankruptcy Court. IF YOU AGREE WITH THE AMOUNT SCHEDULED BY THE DEBTOR AND HAVE NO OTHER CLAIMS AGAINST THE DEBTOR, YOU DO NOT NEED TO FILE A PROOF OF CLAIM, EXCEPT AS FOLLOWS: If the amount shown is DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in or order to recover any distributions in respect of your claim. If you have already filed your claim with the Bankruptcy Court, you do not need to file again.

**1. Basis for Claim, Total Claim and Priority Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were **not** an employee of the debtor, you should complete the Standard Proof of Claim form rather than this form. The Standard Proof of Claim form is available at www.enron.com.

Fill in the amounts requested, as calculated on the attached Worksheet.

If a portion of your total claim is an unsecured priority claim (see DEFINITIONS, above), then state the amount entitled to priority. The date of filing for each of the debtors is provided in the Bar Date Notice accompanying this form. A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law.

**2. Supporting Documents:**
COMPLETE THE ATTACHED WORKSHEET AND ATTACH IT TO THIS PROOF OF CLAIM FORM ALONG WITH COPIES OF DOCUMENTS THAT SHOW THE DEBTOR OWES THE DEBT CLAIMED OR, IF THE DOCUMENTS ARE TOO LENGTHY, A SUMMARY OF THOSE DOCUMENTS. If documents are not available, you must attach an explanation of why they are not available.

You need not complete all parts of the Worksheet; certain parts may not apply to you. Exact dollar amounts should be used, but if you are not sure, estimate the amounts as best you can. If you are unable to state the exact amount you are claiming is owed to you because the information necessary to computing the exact amount is known only by the company, please state so next to the appropriate category on the Worksheet.

2

## EXHIBIT A

| | Debtor | Tax/Federal ID Number | Case Number | Petition Date | Bar Date |
|---|---|---|---|---|---|
| 1. | Enron Metals & Commodity Corp. | 13-3910153 | 01-16033 | 12/2/01 | 10/15/02 |
| 2. | Enron Corp. | 47-0255140 | 01-16034 | 12/2/01 | 10/15/02 |
| 3. | Enron North America Corp. | 76-0318139 | 01-16035 | 12/2/01 | 10/15/02 |
| 4. | Enron Power Marketing, Inc. | 76-0413675 | 01-16036 | 12/2/01 | 10/15/02 |
| 5. | PBOG Corp. | 76-0698198 | 01-16037 | 12/2/01 | 10/15/02 |
| 6. | Smith Street Land Company | 76-0348670 | 01-16038 | 12/2/01 | 10/15/02 |
| 7. | Enron Broadband Services, Inc. | 93-1205987 | 01-16039 | 12/2/01 | 10/15/02 |
| 8. | Enron Energy Services Operations, Inc. | 76-0551327 | 01-16040 | 12/2/01 | 10/15/02 |
| 9. | Enron Energy Marketing Corp. | 94-3240290 | 01-16041 | 12/2/01 | 10/15/02 |
| 10. | Enron Energy Services, Inc. | 76-0551325 | 01-16042 | 12/2/01 | 10/15/02 |
| 11. | Enron Energy Services, LLC | 52-2074178 | 01-16043 | 12/2/01 | 10/15/02 |
| 12. | Enron Transportation Services Company | 76-0323922 | 01-16044 | 12/2/01 | 10/15/02 |
| 13. | BAM Leasing Company | 76-0673771 | 01-16045 | 12/2/01 | 10/15/02 |
| 14. | ENA Asset Holdings, L.P. | 76-0629563 | 01-16046 | 12/2/01 | 10/15/02 |
| 15. | Enron Gas Liquids, Inc. | 76-0193183 | 01-16048 | 12/3/01 | 10/15/02 |
| 16. | Enron Global Markets LLC | 47-0255140 | 01-16076 | 12/4/01 | 10/15/02 |
| 17. | Enron Net Works L.L.C. | 76-0255140 | 01-16078 | 12/4/01 | 10/15/02 |
| 18. | Enron Industrial Markets LLC | 76-0255140 | 01-16080 | 12/4/01 | 10/15/02 |
| 19. | Operational Energy Corp. | 95-4168461 | 01-16109 | 12/6/01 | 10/15/02 |
| 20. | Enron Engineering & Construction Company | 76-0172740 | 01-16110 | 12/6/01 | 10/15/02 |
| 21. | Enron Engineering & Operational Services Company | 52-2328736 | 01-16111 | 12/6/01 | 10/15/02 |
| 22. | Garden State Paper Company LLC | 76-0684706 | 01-16280 | 12/17/01 | 10/15/02 |
| 23. | Palm Beach Development Company, L.L.C. | 76-0318139 | 01-16319 | 12/18/01 | 10/15/02 |
| 24. | Tenant Services, Inc. | 52-2205414 | 01-16428 | 12/20/01 | 10/15/02 |
| 25. | Enron Energy Information Solutions, Inc. | 25-1642266 | 01-16429 | 12/21/01 | 10/15/02 |
| 26. | EESO Merchant Investments, Inc. | 52-2310215 | 01-16430 | 12/21/01 | 10/15/02 |
| 27. | Enron Federal Solutions, Inc. | 76-0571895 | 01-16431 | 12/21/01 | 10/15/02 |
| 28. | Enron Freight Markets Corp. | 36-4308789 | 01-16467 | 12/21/01 | 10/15/02 |
| 29. | Enron Broadband Services, L.P. | 93-1311605 | 01-16483 | 12/24/01 | 10/15/02 |
| 30. | Enron Energy Services North America, Inc. | 94-2331224 | 02-10007 | 01/02/02 | 10/15/02 |
| 31. | Enron LNG Marketing LLC | 52-0406201 | 02-10038 | 01/04/02 | 10/15/02 |
| 32. | Calypso Pipeline, LLC | 76--0486649 | 02-10059 | 01/07/02 | 10/15/02 |
| 33. | Enron Global LNG LLC | 76--0486649 | 02-10060 | 01/07/02 | 10/15/02 |
| 34. | Enron International Fuel Management Company | 76-0616051 | 02-10061 | 01/07/02 | 10/15/02 |
| 35. | Enron Natural Gas Marketing Corp. | 76-0481290 | 02-10132 | 01/11/02 | 10/15/02 |
| 36. | ENA Upstream Company LLC | 76-0318139 | 02-10232 | 01/17/02 | 10/15/02 |
| 37. | Enron Liquid Fuels, Inc. | 76-0387023 | 02-10252 | 01/18/02 | 10/15/02 |
| 38. | Enron LNG Shipping Company | None | 02-10346 | 01/24/02 | 10/15/02 |
| 39. | Enron Property & Services Corp. | 76-0487744 | 02-10464 | 02/01/02 | 10/15/02 |
| 40. | Enron Capital & Trade Resources International Corp. | 76-0482792 | 02-10613 | 02/11/02 | 10/15/02 |
| 41. | Enron Communications Leasing Corp. | 76-0611232 | 02-10632 | 02/12/02 | 10/15/02 |
| 42. | Enron Wind Corp. | 77-0085374 | 02-10743 | 02/20/02 | 10/15/02 |
| 43. | Enron Wind Systems, Inc. | 95-3595766 | 02-10747 | 02/20/02 | 10/15/02 |
| 44. | Enron Wind Energy Systems Corp. | 77-0086291 | 02-10748 | 02/20/02 | 10/15/02 |
| 45. | Enron Wind Maintenance Corp. | 77-0397106 | 02-10751 | 02/20/02 | 10/15/02 |
| 46. | Enron Wind Constructors Corp. | 77-0102514 | 02-10755 | 02/20/02 | 10/15/02 |
| 47. | EREC Subsidiary I, LLC | 01-0599698 | 02-10757 | 02/20/02 | 10/15/02 |
| 48. | EREC Subsidiary II, LLC | 03-0388962 | 02-10760 | 02/20/02 | 10/15/02 |
| 49. | EREC Subsidiary III, LLC | 04-3602747 | 02-10761 | 02/20/02 | 10/15/02 |
| 50. | EREC Subsidiary IV, LLC | 04-3603054 | 02-10764 | 02/20/02 | 10/15/02 |
| 51. | EREC Subsidiary V, LLC | 04-3603062 | 02-10766 | 02/20/02 | 10/15/02 |
| 52. | Intratex Gas Company | 74-1652491 | 02-10939 | 03/01/02 | 10/15/02 |
| 53. | Enron Processing Properties, Inc. | 76-0531858 | 02-11123 | 03/12/02 | 10/15/02 |
| 54. | Enron Methanol Company | 76-0266629 | 02-11239 | 03/18/02 | 10/15/02 |
| 55. | Enron Ventures Corp. | 76-0525820 | 02-11242 | 03/18/02 | 10/15/02 |
| 56. | Enron Mauritius Company | None | 02-11267 | 03/19/02 | 10/15/02 |
| 57. | Enron India Holdings Ltd. | None | 02-11268 | 03/19/02 | 10/15/02 |
| 58. | Offshore Power Production C.V. | None | 02-11272 | 03/20/02 | 10/15/02 |

3

## WORKSHEET FOR EMPLOYEE PROOF OF CLAIM

> Please print or type all information.  You may not need to complete all parts of the worksheet; certain parts may not apply to you.  Exact dollar amounts should be used, but if you are not sure, estimate the amounts as best you can.  Please submit a copy of this worksheet with your Employee Proof of Claim form.

Employee Name: _____    SSN _____

Beneficiary Name, if applicable: _____    SSN _____

Debtor Name: _____    Case No. _____

**(A)    Salary or Wages**

  (i)  Amount you claim is owed to you for unpaid salary or wages:

  _____ x $_____ = $_____
  Time            Rate            Total Claim

  (ii)  Amount of your claim that is entitled to priority:

  _____ x $_____ = $_____
  Time            Rate            Priority Claim

  (iii)  Period of work performed and unpaid:

  from    _____  _____  _____
              month        day        year
  to      _____  _____  _____
              month        day        year

**(B)    Vacation Pay**

  (i)  Amount you claim is owed to you for unpaid vacation:

  _____ x $_____ = $_____
  Time            Rate            Total Claim

  (ii)  Amount of your claim that is entitled to priority:

  _____ x $_____ = $_____
  Time            Rate            Priority Claim

4

(C)    **Severance/Separation Pay**

(i)    Amount you claim is owed to you for unpaid severance/separation pay:

_____ x $_____ = $_____
   Time         Rate         Total

Less severance amounts paid: _____

Total Claim: _____

(ii)  Amount of your claim entitled to priority: $ _____

(iii) Period for severance calculation:

from    _____    _____    _____
           month       day        year

to      _____    _____    _____
           month       day        year

(iv) Date you believe you became entitled to severance/separation pay:

_____  _____  _____
    month    day    year

<u>Note:  Attach copies of any agreements, letters or forms supporting your claim.</u>

---

(D)    **Employee Benefit Plans**

(i)    Amount you claim is owed to you for unpaid benefits due from employee benefit plans:

$_____

(ii)   Amount of your claim that is entitled to priority: $_____

(iii) Name or type of employee benefit plans under which you are entitled to claim(s):

_____

(iv) State, in detail, how you computed the unpaid amount you claim is owed to you under
employee benefit plan(s):

_____
_____
_____

<u>Note:  Attach copies of any plan agreements that describe how payment is calculated.</u>

---

5

(E)    **Bonuses/Incentive Plans**

    (i)    Amount you claim is owed to you for unpaid bonuses/incentives:  $_____

    (ii)    Amount of your claim that is entitled to priority:  $_____

    (iii) Incentive program(s) or plan(s) you participated in to entitle you to the unpaid
           bonus/incentive sought, *i.e.* annual bonus or long-term incentive:

    _____

    (iv) Dates you performed the services that entitle you to the unpaid bonus:
    from

| | month | day | year |
|---|---|---|---|

    to

| | month | day | year |
|---|---|---|---|

    (v)    State how you computed the amount you claim is owed to you for unpaid
         bonus(es).

    _____

    Note:  Attach copies of any plans, programs, or award agreements that describe the applicable
    payout formula.

(F)    **Sales Commissions**

    (i)    Amount you claim is owed to you for unpaid sales commissions:

| Percentage | x | $ Total amount on which you claim the commissions were earned | = | $ Total Claim |
|---|---|---|---|---|

    (ii)    Amount of your claim that is entitled to priority:

| Percentage | x | $ Total amount on which you claim the commissions were earned | = | $ Priority Claim |
|---|---|---|---|---|

    (iii) Period covered by unpaid sales commissions:

    from

| | month | day | year |
|---|---|---|---|

    to

| | month | day | year |
|---|---|---|---|

    Note:  Attach copies of any agreements, letters or forms supporting your claim.

6

(G)     **Reimbursable Expenses**

(i)   Amount you claim is owed to you for unpaid reimbursable expenses:  $_____

List items for which you are seeking to be reimbursed:

| Description of Item | Date Incurred | Amount |
|---|---|---|
| _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | \_\_\_\_\_ |
| _____ | Total: | \_\_\_\_\_ |

(If more space is needed, please attach a separate sheet of paper.)

(ii)  Amount of your claim that is entitled to priority:  $_____

Note:  Attach copies of receipts and/or expense reports.

_____

(H)     **Other Unpaid Amounts**

(i)   Amount you claim for any other unpaid amounts not listed above:  $_____

(ii)  Basis of claim that this amount is owed to you (include applicable dates):

_____

_____

Note:  Attach copies of any applicable agreement.

_____

Total amount you claim is owed to you . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

Amount of your claims entitled to priority . . . . . . . . . . . . . . . . . . . . . . $_____

7

**List each Enron company by which you were employed:**

| | From: _____ | To: _____ |
|---|---|---|
| _____ | Month/Year | Month/Year |
| Employer 1 | | |

| | From: _____ | To: _____ |
|---|---|---|
| _____ | Month/Year | Month/Year |
| Employer 2 | | |

| | From: _____ | To: _____ |
|---|---|---|
| _____ | Month/Year | Month/Year |
| Employer 3 | | |

| | From: _____ | To: _____ |
|---|---|---|
| _____ | Month/Year | Month/Year |
| Employer 4 | | |

Note:    Attach separate sheet if more than four.

**If employee name changed after termination, provide name during employment period:**

_____

Last                                    First

**CLAIMANT SIGNATURE:** _____    **DATE:** _____

*Penalty for presenting a fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.*

8

# EXHIBIT E

DUE MARCH 3, 2003

## PROOF OF CLAIM FORM FOR ASBESTOS-RELATED PROPERTY DAMAGE CLAIMS AGAINST FEDERAL-MOGUL CORPORATION OR ANY RELATED DEBTORS

| United States Bankruptcy Court for the District of Delaware | **PROOF OF CLAIM** |
|---|---|
| Federal-Mogul Global, Inc. et al., Case Number: 01-10578 (AMW) Jointly Administered | |

This form should be used to assert an **ASBESTOS-RELATED PROPERTY DAMAGE CLAIM** against Federal-Mogul Corporation or any related Debtor(s). To assert such a claim, YOU MUST COMPLETE AND EXECUTE THIS FORM BY MARCH 3, 2003 OR YOU WILL BE FOREVER BARRED FROM ASSERTING THE CLAIM. See Instruction No. 1 for a definition of Asbestos-Related Property Damage Claim and Instruction No. 3 for a list of Debtors, and how to obtain additional information concerning Debtors.

If you wish to file another claim against the Debtor(s), please visit the Federal-Mogul Claims website at www._____.com or call the Federal-Mogul Claims toll-free number at 800-___-____ for information and instructions.

❑  Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars.

❑  Check box if you have never received any notices from the bankruptcy court in this case

❑  Check box if the address differs from the address on the envelope sent to you by the court.

❑  Check here if this claim

        ❑  Replaces

        ❑  Amends a previously filed claim, dated: _____

**Name of Debtor against which this claim is asserted:** _____

**Name of Claimant (the person or other entity to whom the debtor owes money or property):**

_____

_____

**Name and address where notices should be sent:**

_____

_____

**Telephone Number:** _____

**QUESTIONS 1-10 BELOW <u>MUST</u> BE COMPLETED FOR <u>EACH SITE OR BUILDING OR STRUCTURE</u> (THE "SITE") THAT IS THE BASIS OF AN ASBESTOS PROPERTY DAMAGE CLAIM. IF YOU ARE ASSERTING AN ASBESTOS PROPERTY DAMAGE CLAIM FOR MORE THAN ONE SITE, THEN YOU MUST COPY THIS PAGE AND THE NEXT PAGE BEFORE FILLING THEM OUT AND SUBMIT SEPARATE ANSWERS TO EACH QUESTION FOR EACH SITE THAT IS A BASIS OF YOUR CLAIM.**

1.   What is the exact location, including, if applicable, the name and street address, of the Site:

   Name:   _____

   Address:   _____

   _____

2.   What is your property interest in the Site (for example, owner, operator, lessee) and when did you acquire that interest?

   Interest:   _____

   Date Acquired:   _____

3.   When was the Site built?   (Please check)
   Before 1968 _____   Between 1968 and 1973 _____   After 1973 _____.

4.   What is the product type and trade or brand name of the asbestos-containing product of Debtor(s) which you claim is or was installed at the Site?

   _____

5.   When did you or someone on your behalf install and, if applicable, remove the product set forth in (4) at the Site.

   Date Installed: _____

   Date Removed:   _____

6.   If you or someone on your behalf did not install and, if applicable, remove the product set forth in (4) at the Site, then, to the best of your knowledge, when was the product listed in (4) installed and, if applicable, removed at the Site.

   Date Installed: _____       Don't Know Date Installed: _____
   Date Removed: _____          Don't Know Date Removed: _____

7.   What is the basis for your identification of the product listed in (4) which you claim is or was installed at the Site, (for example, documentary evidence such as a specification, purchase order, invoice or contract; or an expert's or consultant's report; or a testing or sampling result; etc.) .

   _____

   _____

   _____

8. When did you first know of the presence of the product listed in (4), and how did you acquire such knowledge (for example, from documentary evidence; or an expert's or consultant's report; or a testing or sampling result; etc.)

   Date of Knowledge _____

   Basis of Knowledge _____

   _____

9. State whether your claim is for expenses that have already been incurred or for expenses that are anticipated, and describe the nature of the expenses incurred or anticipated?

   Incurred: _____    Anticipated: _____

   Nature of Expenses: _____

10. What is the amount of your claim for this Site? $ _____

| **Supporting Documents and Materials** | This space is for Court Use Only |
|---|---|
| *Attach copies of all supporting documents or materials,* **such as purchase orders, invoices, contracts, specifications, architectural drawings, appraisals, environmental reports, product samples or test results, relating or referring to your claim. DO NOT SEND ORIGINAL DOCUMENTS.**<br><br>**If the documents are not available, explain why not. If the documents are too voluminous to attach, attach a summary of the documents identifying and providing a brief description of each document, identifying the location of the document and who has possession and control of it.**<br><br>**If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to the Debtors upon the Debtors' further request.** | |

**Signature**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach a copy of power of attorney, if any):

_____    Date _____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571

KEEP A COPY OF THIS PROOF OF CLAIM FORM AND ALL ATTACHMENTS FOR YOUR FILES AND MAIL AN ORIGINAL PROOF OF CLAIM FORM AND COPIES OF ALL ATTACHMENTS TO:

FEDERAL-MOGUL CLAIMS PROCESSING
[ADDRESS]

## INSTRUCTIONS

1. **WHO SHOULD USE THIS ASBESTOS-RELATED PROPERTY DAMAGE PROOF OF CLAIM FORM**

   You must complete this Asbestos-Related Property Damage Proof of Claim form if you wish to assert an Asbestos-Related Property Damage Claim against Federal-Mogul Corporation or any of its related Debtors arising from or related to property located in the United States or Canada (see Instruction No. 3 for a list of all Debtors). **An "Asbestos-Related Property Damage Claim" is any claim alleging, arising out of, or in any way relating to physical, economic, or any other damage or injury to any property or property interest for which any Debtor is alleged to be liable, arising out of or in any way relating to the installation, presences, removal of, or release of asbestos from any products or materials containing asbestos. Asbestos-Related Property Damage Claims include all such claims whether in tort, contract, warranty, restitution, conspiracy, contribution, indemnity, guarantee, subrogation, or any other theory of law, equity, or admiralty; whether seeking compensatory, special, economic and non-economic, punitive, exemplary, administrative, or any other costs or damages; or whether seeking any legal, equitable, or other relief of any kind whatsoever.**

   If you wish to file an Asbestos-Related Property Damage Claim against more than one Debtor, you must complete an additional form for each Debtor and submit the forms separately.

   You should NOT use this form for claims other than Asbestos-Related Property Damage Claims. For information about how and when to file other types of claims against the Debtors, please contact the Federal-Mogul Claims Website at www._____.com or call the Federal-Mogul Claims toll-free number at (800) ____-____.

2. **WHERE TO OBTAIN A PROOF OF CLAIM FORM AND INFORMATION FOR ASBESTOS-RELATED PROPERTY DAMAGE CLAIMS**

   If you need a Proof of Claim form or related information, you may contact the Federal-Mogul Claims Website at www._____.com or call the Federal-Mogul Claims toll-free number at (800) ____-____.

3. **DEBTORS**

   Four Debtors have traditionally been sued in Asbestos-Related Property Damage Litigation. They are:

   > T&N Limited
   > J.W. Roberts Limited
   > TAF International Limited
   > Federal-Mogul Corporation

   For a complete list of the 157 Debtors, please visit the Federal-Mogul Claims website at www._____.com or call the Federal-Mogul Claims toll-free number at (800) -____-____.

4. **GENERAL INSTRUCTIONS**

   YOU MUST COMPLETE AND SIGN THIS FORM. THE ORIGINAL, COMPLETED FORM AND COPIES OF REQUIRED DOCUMENTATION MUST BE RECEIVED ON OR BEFORE 4:00 P.M. EASTERN TIME ON MARCH 3, 2003, or you shall be forever barred, estopped, and enjoined from asserting any Asbestos-Related Property Damage Claim against the Debtors arising from or related to property located in the United States or Canada; or voting upon, or receiving any distributions under any plan or plans of reorganization in the Debtors' chapter 11 cases in respect of such claim.

This form must be signed by you or your authorized agent. If you cannot fit all information in any particular section or page, copy the page before completing it, and attach as many additional pages as needed. Neatly type or print all answers on the form.

Be **accurate** and **truthful**. A Proof of Claim Form is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for presenting a fraudulent claim is a fine of up to $500,000 or imprisonment for up to five years or both under 18 U.S.C. §§ 152 & 3571.

If you need additional Proof of Claim forms, you may obtain them by downloading them from the Federal-Mogul Claims Website at www._____.com or by contacting the Federal-Mogul Claims toll-free number at (800) ____-____.

5.    <u>WHERE AND HOW TO SUBMIT CLAIM FORMS</u>

Make a copy of your completed Proof of Claim form for your records. Send only the **original** proof of claim forms and copies of all attachments to the Debtors' Claims Agent at the following address:

**FEDERAL-MOGUL CLAIMS PROCESSING**
**[address]**

The proof of claim form may be submitted in person, by courier service, hand delivery, or mail addressed to the Claims Agent above. In returning this form, allow sufficient time so that this form is received on or before March 3, 2003. Forms that are postmarked before March 3, 2003 but **received** after March 3, 2003 will not be accepted. Only original forms will be accepted for filing. Forms transmitted by facsimile or e-mail will not be accepted and will not be deemed filed.

6.    <u>ADDITIONAL DOCUMENTATION AND INFORMATION</u>

In addition to the completed, original Proof of Claim form, you must provide copies of all supporting documents in your possession referenced in Questions 1-10, or you may provide summaries of those documents in they are voluminous. If documents are not available, you must attach an explanation of why they are not available.

You may attach any additional documentation that supports your claim. However, such information will not be a substitute or information provided in the Proof of Claim form itself.

7.    <u>DEADLINE FOR RECEIPT OF PROOF OF CLAIM FORMS</u>

Proof of Claim forms for Asbestos-Related Property Damage Claims must be **received** on or before 4:00 p.m. Eastern Time on March 3, 2003.

8.    <u>QUESTIONS AND ASSISTANCE</u>

For additional questions and assistance, please visit the Federal-Mogul Claims Website at www._____.com or contact the Federal-Mogul Claims toll-free number at (800) ___-____.

# EXHIBIT F

Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case Nos. 08-13555(JMP)

5

6   - - - - - - - - - - - - - - - - - - - -x

7   In the Matter of:

8

9   LEHMAN BROTHERS HOLDINGS INC., et al.

10

11              Debtors.

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              October 27, 2010

19              10:07 AM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2   HEARING re Debtors' Twenty-Eighth Omnibus Objection to Claims

3   (Valued Derivative Claims)

4

5   HEARING re Debtors' Thirty-Fifth Omnibus Objection to Claims

6   (Valued Derivative Claims)

7

8   HEARING re Debtors' Thirty-Sixth Omnibus Objection to Claims

9   (Failure to Submit Guarantee Questionnaire Claims)

10

11  HEARING re Debtors' Thirty-Seventh Omnibus Objection to Claims

12  (No Liability Claims)

13

14  HEARING re Debtors' Thirty-Eighth Omnibus Objection to Claims

15  (Amended and Superseded Claims)

16

17  HEARING re Debtors' Fortieth Omnibus Objection to Claims (Late-

18  Filed Claims)

19

20  HEARING re Debtors' Forty-First Omnibus Objection to Claims

21  (Late-Filed Claims)

22

23  HEARING re Debtors' Forty-Second Omnibus Objection to Claims

24  (Late-Filed Lehman Programs Securities Claims)

25

Page 3

1

2      HEARING re Debtors' Forty-Third Omnibus Objection to Claims

3      (Late-Filed Lehman Programs Securities Claims)

4

5      HEARING re Debtors' Forty-Fourth Omnibus Objection to Claims

6      (Settled Derivative Claims)

7

8      HEARING re Debtors' Twenty-Ninth Omnibus Objection to Claims

9      (No Blocking Number LPS Claims)

10

11     HEARING re Debtors' Thirty-Ninth Omnibus Objection to Claims

12     (Duplicative Claims)

13

14     HEARING re Debtors' Objection to Proofs of Claim Filed By

15     William Kuntz III (Claim Nos. 33550, 33551, 33552, 35121, and

16     35430)

17

18

19

20

21

22

23

24

25     Transcribed by:  Lisa Bar-Leib

08-13555-mg    Doc 22677    Filed 11/28/11    Entered 11/28/11 11:40:02    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 96 of 132

Page 33

1    this, is the actual practical use of the blocking number in

2    tracking claims, reconciling claims and allowing claims

3    particularly in the environment in which these Lehman program

4    securities are now being freely traded.

5         MR. WAISMAN:  Your Honor, may I have a brief moment?

6         THE COURT:  Sure.

7    (Pause)

8         MR. WAISMAN:  Your Honor, Shai Waisman.  Your Honor

9    recalls correctly that the debtors came back with a group of

10   interested creditors previously known as the Coalition of the

11   Willing to seek an addendum to the Lehman program securities

12   procedures.  Those procedures -- we -- the debtors and, I

13   believe, the committee always thought were part and parcel of

14   the original program securities notice but they were -- there

15   was enough concern that people wanted a supplemental order.

16   Your Honor expressed concern that perhaps the debtors were

17   succumbing to the hew and cry of the street in doing something

18   that would undermine the integrity of the procedures and

19   adjourn the matter.  And we came back with an affidavit of a

20   businessperson setting forth that the purpose of the program

21   securities was to provide the debtors comfort that the party

22   filing the proof of claim had actual ownership of the security

23   at the time the claim was filed and at the time the bar date

24   came.  It was required to illustrate the integrity of the claim

25   that the party held the claim that it wasn't traded every

Page 34

1    single day up until the bar date and multiple claims being

2    filed.  And given that we were past the program securities bar

3    date and therefore anybody that filed a proof of claim with the

4    blocking number, we knew owned the security on that day and

5    that's the only day that matters for the purpose of

6    establishing the claims.  Thereafter, there was no reason to

7    require them to continue to hold the claim.  No benefit to us.

8    There should be a free market as the bankruptcy rules suggest

9    there should be in the trading of claims.  And the order was

10   meant to facilitate the fact that we were so far removed from

11   the bar date there was going to be no benefit to us from

12   restricting trading any further.  Parties could continue to

13   trade because what we needed we had at that point.  We had

14   proof that a party that filed the claim owned the security on

15   the day in question.

16         We do not use blocking numbers now to track claims at

17   all.  When we go through the 66,000 claims that sit in a pile,

18   we get to a Lehman program securities claim, we verify that

19   there's a blocking number.  We do check it against our master

20   list to make sure that it's a real blocking number.  And that

21   proves to us that the party that filed the claim owned the

22   security and therefore is the rightful claimant.  The next

23   step, of course, is to make sure whether somebody else filed a

24   proof of claim on behalf of that issuance.

25         THE COURT:  I hear you although I must say that this

08-13555-mg    Doc 22677    Filed 11/28/11    Entered 11/28/11 11:40:02    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 98 of 132

Page 35

1    adds strength to the argument made by Mr. Friedman that on a

2    scale of one to ten, this is a one.  This isn't a ten in terms

3    of technical noncompliance because the blocking number is, in

4    effect, an extra protection designed to make sure that the

5    party who filed the claim with respect to these freely tradable

6    instruments in fact was the owner of the claim at a particular

7    point in time that is relevant for bankruptcy purposes but for

8    no other purpose because the instruments may have traded

9    multiple times already, in some instances, and may continue to

10   trade in the future.

11        Now I have no problem with the free trading of

12   securities.  The only problem I'm having right now is whether

13   the significance of the failure to include a blocking number on

14   a proof of claim is so material a failure to comply with the

15   expressed requirements of the proof of claim bar date

16   procedures as to warrant claim disallowance when a party

17   objects.  And I'm having some trouble with this right now,

18   particularly, I must tell you in the case -- it kind of goes up

19   in significance, A, B and C.  RBC has the strongest position;

20   August '86 Trust has the next strongest position; and Aspecta

21   Assurance has the weakest position, as I see it.  But I think

22   Aspecta is simply making an argument well, we didn't do it but

23   we own the security.  Here.  See this attachment to our

24   response.  They clearly didn't comply with the no blocking

25   number problem.  But they, in effect, make an argument for the

1    great unwashed that didn't comply at all.  That's your

2    floodgates problem, the problem that parties who never obtained

3    a blocking number will come forward and say we have the ability

4    through extrinsic evidence to demonstrate that we, in fact, own

5    the security at the time that we filed the proof of claim.  I

6    have a problem with that.

7         But as to anybody else who actually had a blocking

8    number and somehow messed up, I'm having a hard time seeing why

9    this is such a problem for the debtor.  And I need to

10   understand a little bit more about why procedurally this

11   creates such a potential hornet's nest of claim administration

12   difficulty down the road.

13        MR. WAISMAN:  Your Honor, I'd say a couple things.

14   First of all, there is nothing Your Honor has just said that we

15   disagree with.  We have spent a lot of time struggling with

16   these very issues.  The obvious statement that the bar date in

17   this case was so unique that it does not fit squarely within

18   the precedent, and I understand Mr. Friedman citing to the

19   legend of case law on amendments, but this case just doesn't

20   fit squarely within those parameters and it is difficult to

21   reconcile.

22        The program securities requirement was very explicit

23   and specific and absolutely necessary.  Without it, this case

24   would be a quagmire and we would have no ability to reconcile

25   over 30,000 claims.

08-13555-mg    Doc 22677    Filed 11/28/11    Entered 11/28/11 11:40:02    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 100 of 132

Page 37

1          In many ways the program's security's blocking number

2     is itself the claim.  Without it, you're submitting a statement

3     that at some point you own something.  But if you don't submit

4     the program security's number it doesn't -- it doesn't comply

5     for the purposes of a bar date in this case.  We have, in other

6     circumstances, been to Your Honor with claims issues, claims

7     objections and have agreed with Your Honor that we need to

8     strictly enforce the very specific and very unique requirements

9     of this bar date order because it is such a slippery slope.

10    And the fear here is that we know of here eleven, we already

11    know of 500 more, it's a reconciliation.  We haven't been

12    through the lion's share of our claims.  The number is

13    certainly to grow of claimants who got the blocking number but

14    simply didn't include, forgot for whatever reason.  And as I

15    said before, we are here because that's a slippery slope to --

16    well, they forgot -- I forgot to get it but I can prove to you

17    that I had it, and then we're going to be inundated with

18    thousands upon thousands of claimants coming to this court to

19    prove that they held the security and that they can meet the

20    purpose of the program securities blocking number requirement

21    by extrinsic evidence, even though they didn't supply the

22    number.

23          And when you try to differentiate those two, you come

24    back to there was a requirement, it was to be strictly enforced

25    and people didn't comply.  And as Ms. Eckols said, a number of

Page 38

1    times, there were two requirements; to get the number and to

2    include it.  If we start to excuse one people are certainly

3    going to argue you have to excuse the other, and we have a hard

4    time differentiating between those two.

5         THE COURT:  I'm not sure I have such a hard time

6    differentiating between those two.

7         MR. WAISMAN:  Well, you wear the black robe.

8         THE COURT:  That's true.  But obviously claimants that

9    do everything perfectly are to be applauded for navigating what

10   is a fairly complex claims process in this case.  This is not,

11   by any means, standard issue.  But as I understand the purpose

12   to be served by the obtaining and inclusion of a blocking

13   number, it is to establish, in a user-friendly way from the

14   perspective of the debtors, that a particular claimant within

15   the pool of holders of Lehman program securities, in fact was a

16   holder on the relevant date, correct?

17        MR. WAISMAN:  That's correct.

18        THE COURT:  I think that in the case of RBC capital

19   that there really has been the kind of compliance that fits

20   within the applicable case law that I cited in my omnibus late

21   filed claims decision, in which good faith attempts to comply

22   coupled with confusion can lead to an excuse.  And here there

23   was good faith compliance in the sense of obtaining a blocking

24   number and somebody in Minneapolis goofed, they win.  Now, they

25   win on particularized facts and I don't think that opens a

1    door.

2         My next question to myself is well does August '86

3    Trust win?  And maybe I need to think some more about that

4    after taking a look at the affidavit of Joseph Kelly, which

5    obviously Mr. Kelly, who's a solicitor, thought worthy of my

6    attention.  I haven't paid enough attention to it yet and I

7    want to think about it some more.

8         But let's just say, for the sake of discussion, that

9    August '86 Trust wins too, what's the principle that has just

10   been established?  It seems to me that the principle is that

11   anybody who has gone to the trouble of getting a blocking

12   number but who has failed, through negligence or administrative

13   error, to include the blocking number but who later provides

14   that blocking number is, in effect, curing the defect in a

15   manner that doesn't take away from the integrity of the bar

16   date order.  Nor does it in a material way because I don't

17   imagine there's going to be a huge class, but I could be wrong,

18   of parties who actually obtain the blocking number and then

19   negligently failed to include it.

20        It seems to me that the debtor is still in a position

21   to use the blocking number because the blocking number has been

22   provided and the integrity of the proof of claim, as it relates

23   to Lehman program securities is preserved.

24        The Aspecta case is different.  That's the we didn't

25   do it at all problem but we have other means of establishing,

08-13555-mg    Doc 22677    Filed 11/28/11    Entered 11/28/11 11:40:02    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 103 of 132

Page 40

1    in a way that we think should be credible, that we held Lehman

2    program securities at the time that a proof of claim was filed

3    and completely ignored the requirement of including a blocking

4    number.  They lose.

5          And I believe that you can draw a line here that says

6    if you have a blocking number you have done everything that you

7    can reasonably do to meet the spirit of the bar date notice as

8    it relates to Lehman program securities, assuming that you

9    have, for good cause, failed to include.  That you have reason

10   to establish that there was legitimate confusion or a

11   legitimate failure to comply, not just I willfully held it back

12   because I thought it was a stupid requirement, that's not going

13   to work.  But if there was what amounts to good faith efforts

14   to comply with that requirement and you then later provide the

15   number, it seems to me that the blocking number component of

16   this requirement is satisfied.

17         MR. WAISMAN:  Your Honor, if I may interject for one

18   moment.  As Your Honor is describing this narrow exception, it

19   might be helpful if it relates to entities that timely filed

20   proofs of claim, have obtained a blocking number but for good

21   cause failed to include and later provide it.

22         THE COURT:  That's exactly what I'm saying.  That

23   can't be a very big class of claimants and if it turns out to

24   be, well, so be it.

25         That's my best effort at walking a tightrope created

Page 41

1   by these requested exceptions to the blocking number

2   requirement of the bar date notice.  I'm not making a ruling

3   yet with respect to the August '86 Trust because I want to take

4   some time to look at the affidavit of Joseph Kelly.  But if the

5   August '86 Trust fits within the exception, I've just

6   articulated, then they'll prevail.  I'm sorry Aspecta loses.

7   They just didn't get a blocking number and they're out of

8   court.

9          MR. WAISMAN:  Thank you, Your Honor.  That guidance is

10  very, very helpful as we try to navigate these waters and turn

11  to Your Honor for guidance on the narrow calls.

12         THE COURT:  Okay.

13         MR. WAISMAN:  Greatly appreciated.

14         MS. ECKOLS:  Thank you, Your Honor.

15         MR. FRIEDMAN:  Your Honor, I just want to figure out

16  the best mechanics to get an order reflecting your decision

17  with respect to RBC.

18         MR. WAISMAN:  I think what we would do is remove it

19  from the proposed -- remove your claim from the proposed order

20  that we hand up today and there's no objection pending to your

21  claim.

22         MR. FRIEDMAN:  Okay.  We do have an amended claim; we

23  can deal with that by stipulation.

24         MR. WAISMAN:  Why don't we speak and take care of it?

25         MR. FRIEDMAN:  Thank you very much, Your Honor.

Page 88

1

2                         C E R T I F I C A T I O N

3

4        I, Lisa Bar-Leib, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6        **Lisa Bar-Leib**    Digitally signed by Lisa Bar-Leib
                               DN: cn=Lisa Bar-Leib, c=US
7                              Reason: I am the author of this document
                               Date: 2010.10.28 16:54:33 -04'00'
         _____

8        LISA BAR-LEIB

9        AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12       Veritext

13       200 Old Country Road

14       Suite 580

15       Mineola, NY 11501

16

17       Date:  October 28, 2010

18

19

20

21

22

23

24

25

# EXHIBIT G

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                    :

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------x

### AFFIDAVIT OF SERVICE OF
### FINANCIAL BALLOTING GROUP LLC REGARDING
### MAILING OF THE PROGRAMS SECURITIES BAR DATE DOCUMENTS

STATE OF NEW YORK    )
                               )   ss:
COUNTY OF NEW YORK  )

       Jane Sullivan, being duly sworn, deposes and says, under the penalty of perjury:

       1.       I am the Executive Director of Financial Balloting Group LLC ("FBG"),
located at 757 Third Avenue, New York, New York 10017. Epiq Bankruptcy Solutions, LLC,
the claims and solicitation agent to the above captioned debtors and debtors-in-possession (the
"Debtors"), requested that FBG, its affiliated company, assist with the service of the Notice of
Deadlines for Filing Proofs of Claim and a Proof of Claim form (together, the "Programs
Securities Bar Date Documents"), on certain parties, as required by the Order Pursuant to Section
502(b)(9) of the Bankruptcy Code and Bankruptcy rule 3003(c)(3) Establishing the Deadline for
Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the
Proof of Claim Form, dated July 2, 2009. Unless otherwise stated, I have personal knowledge
of the facts hereinafter set forth.

2.    I hereby certify that on July 27, 2009[1], I caused the Programs Securities Bar Date Documents to be served by First Class Mail or electronic mail on the parties included on **Exhibit A** hereto.

3.    A true and correct copy of the Programs Securities Bar Date Documents is attached hereto as **Exhibit B**.

4.    In the case of service by First Class Mail to issuers and depositories, a transmittal letter was also included.  A true and correct copy of the transmittal letter is attached hereto as **Exhibit C**.

5.    In the case of service by electronic mail to depositories, a transmittal message was provided.  The text of the transmittal message is attached hereto as **Exhibit D**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_Jane Sullivan_
Jane Sullivan

SUBSCRIBED AND SWORN TO BEFORE ME
This _31st_ day of July, 2009.

_Diane M. Streany_
Notary Public

DIANE M. STREANY
Notary Public, State of New York
No. 01ST5003825
Qualified in Westchester County
Commission Expires November 2, 20_10_

---

[1] On July 28, 2009, an updated address was provided for one of the issuers, and a copy of the Programs Securities Bar Date Documents was sent by First Class Mail to the updated address on July 28, 2009.

**Exhibit A**

U.S. TRUSTEE:

OFFICE OF THE US TRUSTEE
ATTN: ANDREW D VELEZ-RIVERA, PAUL SCHWARTZBERG,
BRIAN MASUMOTO, LINDA RIFKIN, TRACY HOPE DAVIS
33 WHITEHALL STREET, 21ST FLOOR
NEW YORK, NY 10014

ISSUERS AND DEPOSITORIES:

ANTHRACITE RTD INV LTD
ATTN: NEIL CHRISTIE AND JOHN KEEN
25 BANK STREET
LONDON, E14 5LE
UNITED KINGDOM

CAPITAL RAISING GMBH
C/O LEHMAN BROTHERS HOLDINGS INC
745 SEVENTH AVENUE
NEW YORK, NY 10019

LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A.
MAÎTRE JACQUES DELVAUX AND MAÎTRE LAURENT FISCH
COURT APPOINTED BANKRUPTCY RECEIVERS OF
LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A.
2, RUE DE LA CHAPELLE, L-1325
LUXEMBOURG

LEHMAN BROTHERS ALPHA FUND PLC
70 SIR JOHN ROGERSON'S QUAY
DUBLIN, 2
IRELAND

LEHMAN BROTHERS BANKHAUS AG
ATTN: DR. MICHAEL C. FREGE
INSOLVENCY ADMINISTRATOR OF LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENZ)
BARCKHAUSSTRASSE 12-16
FRANKFURT AM MAIN, 60325
GERMANY

LEHMAN BROTHERS FINANCE S.A.
LEHMAN BROTHERS FINANCE AG (IN LIQUIDATION)
PRICEWATERHOUSECOOPERS ZURICH\ CHRISTIANA SUHR BRUNNER
DR. IUR. RECHTSANWALTIN/ ATTORNEY AT LAW
BIRCHSTRASSE 160
ZURICH, CH-8050
SWITZERLAND

LEHMAN BROTHERS HOLDINGS INC
745 SEVENTH AVENUE
NEW YORK, NY 10019

LEHMAN BROTHERS HOLDINGS PLC
ATTN: ANTHONY VICTOR LOMAS, STEVEN ANTHONY PEARSON, DAN YORAM SCHWARZMANN, MICHAEL
JOHN ANDREW JERVIS
PRICEWATERHOUSE COOPERS LLP
PLUMTREE COURT
LONDON,  EC4A 4HT
UNITED KINGDOM

LEHMAN BROTHERS INTERNATIONAL (EUROPE)
ATTN: ANTHONY VICTOR LOMAS, STEVEN ANTHONY PEARSON, DAN YORAM SCHWARZMANN, MICHAEL
JOHN ANDREW JERVIS
PRICEWATERHOUSE COOPERS LLP
PLUMTREE COURT
LONDON,  EC4A 4HT
UNITED KINGDOM

LEHMAN BROTHERS SECURITIES CO. NV
ATTN: MICHIEL R.B. GORSIRA, ATTORNEY AT LAW, TRUSTEE OF LEHMAN BROTHERS SECURITIES N.V.
VAN EPS KUNNEMAN VAN DOORNE
JULIANAPLEIN 22, PO BOX 504
CURACAO,
NETHERLANDS ANTILLES

LEHMAN BROTHERS TREASURY CO. BV
RUTGER SCHIMMELPENNICNCK, BANKRUPTCY TRUSTEE FOR LEHMAN BROTHERS TREASURY CO. B.V.
ATTN: MESSRS. F. VERHOEVEN AND M.F. HORCK
PO BOX 75505
AMSTERDAM, AM NL-1070
THE NETHERLANDS

LEHMAN BROTHERS UK CAPITAL FUNDING II LP
ATTN: NEIL CHRISTIE AND JOHN KEEN
25 BANK STREET
LONDON,  E14 5LE
UNITED KINGDOM

LEHMAN BROTHERS UK CAPITAL FUNDING III LP
ATTN: NEIL CHRISTIE AND JOHN KEEN
25 BANK STREET
LONDON,  E14 5LE
UNITED KINGDOM

LEHMAN BROTHERS UK CAPITAL FUNDING IV LP
ATTN: NEIL CHRISTIE AND JOHN KEEN
25 BANK STREET
LONDON,  E14 5LE
UNITED KINGDOM

LEHMAN BROTHERS UK CAPITAL FUNDING V LP
ATTN: NEIL CHRISTIE AND JOHN KEEN
25 BANK STREET
LONDON,  E14 5LE
UNITED KINGDOM

NB PRIVATE EQUITY
C/O LEHMAN BROTHERS HOLDINGS INC
745 SEVENTH AVENUE
NEW YORK, NY 10019

NEUBERGER BERMAN US REAL ESTATE
C/O LEHMAN BROTHERS HOLDINGS INC
745 SEVENTH AVENUE
NEW YORK, NY 10019

QUARTZ FINANCE LTD
22 GRENVILLE STREET
ST. HELIER, JERSEY J34 8PX
UNITED KINGDOM

SIGMA FINANCE CORP
C/O LEHMAN BROTHERS HOLDINGS INC
745 SEVENTH AVENUE
NEW YORK, NY 10019

THE DEPOSITORY TRUST COMPANY
55 WATER STREET
NEW YORK, NY 10041

JASDAQ
1-1 NIHONBASHI-KAYABA-CHO
2-CHOME
CHUO-KU
TOKYO,  103-0025
JAPAN

VPS NORWAY
POSTBOKS 4
OSLO,  0051
NORWAY

VP DENMARK
VP SECURITIES A/S
WEIDEKAMPSGADE 14
PO BOX 4040
COPENHAGEN S, DK 2300
DENMARK

SIX SIS AG
BRANDSCHENKESTRASSE 47
ZURICH, CH 8002
SWITZERLAND

CA_BOND@CLEARSTREAM.COM

DRIT@EUROCLEAR.COM

WERNER.LAURER@CLEARSTREAM.COM

CORPACTOIONSOVERSEAS.GROUP@SISCLEAR.COM

JULY 28 SUPPLEMENTAL SERVICE:

CAPITAL RAISING GMBH,
KOOGSTRAAT 4,
25870 NORDERFRIEDRICHSKOOG
GERMANY

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

NOTICE OF DEADLINES FOR FILING PROOFS
OF CLAIM BASED ON LEHMAN PROGRAMS SECURITIES

**THIS NOTICE RELATES ONLY TO THE FILING OF CLAIMS AGAINST LEHMAN
BROTHERS HOLDINGS INC. BASED ON LEHMAN PROGRAMS SECURITIES.**

PLEASE TAKE NOTICE THAT, on July 2, 2009, the United States Bankruptcy Court for the Southern
District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc.
("LBHI") and certain of its affiliates, as debtors and debtors in possession in the above referenced chapter 11 cases
(collectively, the "Debtors"), entered an order (the "Bar Date Order") establishing **November 2, 2009, at 5:00 pm
(prevailing Eastern Time)** as the last date and time for each person or entity to file a proof of claim ("Securities
Programs Proof of Claim") based on Lehman Programs Securities (the "Securities Programs Bar Date").

The Securities Programs Bar Date and the procedures set forth in the Bar Date Order and below for the
filing of Securities Programs Proofs of Claim apply only to claims against LBHI based on securities identified on
the "Lehman Programs Securities" list available on http://www.lehman-docket.com (the "Lehman Programs
Securities") that arose prior to September 15, 2008 (the "Commencement Date"), the date on which LBHI
commenced their case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

If you have claims against any Debtor other than those based on Lehman Programs Securities, you should
review the Bar Date Order to determine whether you need to file a proof of claim in accordance with the deadlines
and procedures set forth therein. The Bar Date Order and related information and forms are available at
http://www.lehman-docket.com. All claims other than those based on Lehman Programs Securities must be filed by
September 22, 2009.

**If you have any questions with respect to this Notice, please contact the Debtors' court-approved
claims agent Epiq Bankruptcy Solutions, LLC ("Epiq") at 1-503-597-7691 or, in the United States, (866)-879-
0688.**

**A CLAIMANT MAY WISH TO CONSULT AN ATTORNEY IF THE CLAIMANT HAS ANY
QUESTIONS, INCLUDING WHETHER SUCH CLAIMANT SHOULD FILE A SECURITIES
PROGRAMS PROOF OF CLAIM. PLEASE NOTE THAT EPIQ IS NOT PERMITTED TO GIVE LEGAL
ADVICE.**

**All holders of claims against LBHI based on Lehman Programs Securities are required to file a
Securities Programs Proof of Claim in order to preserve their claims against LBHI.**

1.       WHO MUST FILE A SECURITIES PROGRAMS PROOF OF CLAIM

You **MUST** file a **Securities Programs Proof of Claim** to share in LBHI's estate if you have a claim
based on a Lehman Programs Security that arose prior to the Commencement Date. Claims based on Lehman
Programs Securities must be filed by the Securities Programs Bar Date notwithstanding that such claims may not
have matured or become fixed or liquidated prior to the applicable Commencement Date. Pursuant to section 101(5)
of the Bankruptcy Code and as used herein, the word "claim" means: (a) a right to payment, whether or not such
right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,
legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such

breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

All notices and distributions with respect to any filed claims based on Lehman Programs Securities will be sent to the party that filed the claim at the address set forth on the Securities Programs Proof of Claim Form submitted. Any entity that files a Securities Programs Proof of Claim consents to receive all such notices and distributions at the address specified on the Securities Programs Proof of Claim and is responsible for any objections raised by the Debtors related to such claim.

**An entity that files a claim based on any Lehman Programs Security, by filing such claim, consents to and is deemed to have authorized Euroclear, Clearstream, or other depository, as appropriate, to disclose their identity and holdings of Lehman Programs Securities to LBHI for the purpose of reconciling claims.**

2.    WHO NEED <u>NOT</u> FILE A SECURITIES PROGRAMS PROOF OF CLAIM

**YOU SHOULD NOT FILE A SECURITIES PROGRAMS PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST LBHI BASED ON LEHMAN PROGRAMS SECURITIES.**

3.    WHEN AND WHERE TO FILE

All Programs Securities Proofs of Claim must be filed so as to be **actually received** on or before the Programs Securities Bar Date at the following address:

| If by overnight courier, to: | If by mail, to: |
|---|---|
| Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Brothers Holdings Claims Processing<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017<br>USA | Lehman Brothers Holdings Claims Processing<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, New York  10150-5076<br>USA |
| If by hand delivery, to:<br><br>Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Brothers Holdings Claims Processing<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017<br>USA<br><br>or<br><br>Clerk of the United States Bankruptcy Court<br>Attn: Lehman Brothers Holdings Claims Processing<br>One Bowling Green<br>New York, New York 10004<br>USA | |

Securities Programs Proofs of Claim will be deemed timely filed only if **actually received** by Epiq or the Court on or before the Securities Programs Bar Date.  Securities Programs Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

4.    WHAT TO FILE

If you file a Securities Programs Proof of Claim, your filed Securities Programs Proof of Claim must: (i) be written the English language; (ii) to the extent a claim amount is reflected thereon, be denominated in the lawful currency of the United States using the exchange rate as applicable as of September 15, 2008; (iii) conform

substantially with the form attached to this notice (the "Securities Programs Proof of Claim Form"); (iv) state the name and case number of the specific Debtor against which it is filed; (v) identify the International Securities Identification Number ("ISIN") for each Lehman Programs Security; (vi) include either a Euroclear electronic instruction reference number, a Clearsteam blocking reference number, or other depository blocking reference number, as appropriate; (vii) be signed by the claimant or by an authorized agent of the claimant; and (viii) be submitted in hard copy form with an original signature.

**ANY PERSON OR ENTITY THAT HOLDS CLAIMS AGAINST LBHI OR ANY OF THE OTHER DEBTORS THAT ARE NOT BASED ON LEHMAN PROGRAMS SECURITIES SHOULD REVIEW THE BAR DATE ORDER TO DETERMINE WHETHER THEY NEED TO FILE A PROOF OF CLAIM IN ACCORDANCE WITH THE DEADLINES AND PROCEDURES SET FORTH THEREIN. SUCH CLAIMS MAY NOT BE COMBINED WITH ANY CLAIMS BASED ON LEHMAN PROGRAMS SECURITIES AND FILED ON THE SECURITIES PROGRAMS PROOF OF CLAIM FORM.**

**SPECIAL NOTE REGARDING BLOCKING NUMBERS**

Each Securities Program Proof of Claim must include either a Euroclear Electronic Instruction Reference Number, a Clearsteam Blocking Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") with respect to each Lehman Programs Security for which such Securities Program Proof of Claim is filed.

**Beneficial holders (which includes most individuals) of Lehman Programs Securities that are not Euroclear Bank ("Euroclear"), Clearstream Bank ("Clearstream") or other depository account holders may not contact Euroclear, Clearstream or such other depository directly. Such holders must direct their accountholder (i.e. the bank, broker or other entity that holds such securities on behalf of such beneficial holder) to contact Euroclear, Clearstream or other relevant depository to obtain the Blocking Number.**

Parties that are accountholders with Euroclear, Clearstream or other relevant depository can obtain a Blocking Number for Lehman Programs Securities by following the directions that will be provided by Euroclear, Clearstream or other relevant depository. Accountholders may send a single request for each Lehman Programs Security with the same ISIN, but must send separate requests for Lehman Programs Securities with different ISINs.

**ALL REQUESTS FOR BLOCKING NUMBERS MUST BE SENT TO EUROCLEAR, CLEARSTREAM AND/OR OTHER DEPOSITORY PRIOR TO 5:00 PM (PREVAILING EASTERN TIME)/ 11:00 PM (CET), ON OCTOBER 23, 2009.**

Please note that holders of Lehman Programs Securities will not be permitted to trade such Lehman Programs Securities during the period from the issuance of a Blocking Number by Euroclear, Clearstream or other depository until the Programs Securities Bar Date. During the periods prior to the issuance of a Blocking Number and following the Programs Securities Bar Date, holders of Lehman Programs Securities will be permitted to trade such Lehman Programs Securities in accordance with applicable law and the procedures for the transfer of claims under the Bankruptcy Code.

5.     **CONSEQUENCES OF FAILURE TO FILE A SECURITIES PROGRAMS PROOF OF CLAIM BY THE SECURITIES PROGRAMS BAR DATE**

**Any holder of a claim based on a Lehman Programs Security who fails to file a Securities Programs Proof of Claim in accordance with the Bar Date Order on or before the Securities Programs Bar Date, complying with the requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against LBHI based on a Lehman Programs Security, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Securities Programs Proof of Claim with respect to such claim) against LBHI, the other Debtors and their estates, and properties will be forever discharged from any and all indebtedness or liability with respect to such claim, and the holder of such claim shall not be permitted to vote on any chapter 11 plan or participate in any distribution in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim or with respect to the Debtors' chapter 11 cases.**

3

DATED:    July  27, 2009                                    BY ORDER OF THE COURT
          New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
Lori R. Fife
Shai Y. Waisman

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**Exhibit A**

**Lehman Securities Programs Proof of Claim Form**

| *United States Bankruptcy Court/Southern District of New York*<br><br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|

| Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009 | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br><br><br>Telephone number:                    Email Address: | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br> (*If known*)<br><br>Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above)<br><br><br><br>Telephone number:                    Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

**1.** Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

**Amount of Claim: $** _____ **(Required)**

☐   Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

**2.**   Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN):** _____ **(Required)**

**3.** Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

**(Required)**

**4.** Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**

**(Required)**

| **5. Consent to Euroclear Bank, Clearstream Bank or Other Depository:** By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions. | **FOR COURT USE ONLY** |
|---|---|
| **Date.** | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The questions on the Proof of Claim form include instructions for completing each question. The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____ DEFINITIONS _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy
filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured, reduced to judgment or not, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076**

**Lehman Programs Security**
Any security included on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009.

_____ INFORMATION _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**Exhibit C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

DATE:      July 27, 2009

TO:        Euroclear, Clearstream, The Depository Trust Company and other similar clearing
           systems (the "Clearing Systems") and each of the issuers (and their representative
           or administrator) of the Lehman Programs Securities (the "Issuers").

FROM:      Lehman Brothers Holdings Inc.

RE:        Enclosed *Notice of Deadlines for Filing Proofs of Claim Based on Lehman
           Programs Securities* (the "Programs Securities Bar Date Notice")


The Debtors request that the Clearing Systems and the Issuers promptly distribute the Programs
Securities Bar Date Notice to the account holders and/or holders of any of the securities included
on the list of Lehman Programs Securities, dated July 17, 2009, available on
http://www.lehman-docket.com in the manner in which you would ordinarily communicate with
such accountholders and/or holders.

**Exhibit D**

Re:  Lehman - Programs Securities


Attached is the Securities Programs Bar Date Notice and the Securities Programs Proof of Claim Form.
You are requested to promptly distribute the attached Securities Programs Bar Date Notice and
Securities Programs Proof of Claim Form to the account holders and/or holders of any of the securities
included on the list of Lehman Programs Securities, dated July 17, 2009, available on http://www.lehman-docket.com (a copy of which is attached) in the manner in which you would ordinarily communicate with
such accountholders and/or holders.

# EXHIBIT H

**Notice to all holders of warrants and certificates issued by
Lehman Brothers Securities N.V. ("LBS")**

**Curacao, 6 October 2009**

*This notice serves for information purposes only. In addition to notices to holders of warrants
and certificates, the bankruptcy trustee of LBS will also publish quarterly public reports on
the website www.ekvandoorne.com/bankruptcylbs*

1.      **US Bar Date**

1.1.    Please take notice that, on July 2, 2009, the United States Bankruptcy Court for the
        Southern District of New York (the "U.S. Bankruptcy Court"), having jurisdiction over
        the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI"), entered an order
        (the "Bar Date Order") establishing **November 2, 2009 at 5:00 p.m. (prevailing
        Eastern Time)** (the "Programs Securities Bar Date") as the last date and time for
        each person or entity to file a proof of claim based upon claims arising out of certain
        securities issued by LBHI or any of their affiliates (including LBS) outside of the
        United States (the "Programs Securities"). A list of the Programs Securities to which
        the Programs Securities Bar Date applies can be found at http://www.lehman-
        docket.com on the "Bar Date Information and Forms" page under the heading
        "Lehman Programs Securities And The Securities Programs Bar Date."

1.2.    Most holders of warrants and certificates issued by LBS (jointly: "LBS Securities")
        appear to have claims against LBHI as **guarantor** of the LBS Securities. Note that if
        claims under such guarantees are not filed with LBHI by **November 2, 2009**, such
        claims against LBHI may be forever barred.

1.3.    The Notice of Deadlines for Filing Proofs of Claim Based on Lehman Programs
        Securities (the "Programs Securities Bar Date Notice") contains specific instructions
        on how to assert (guarantee) claims against LBHI based on Programs Securities.
        The Programs Securities Bar Date Notice and the required Programs Securities
        Proof of Claim Form can be found at http://www.lehman-docket.com on the "Bar Date
        Information and Forms" page under the heading "Lehman Programs Securities And
        The Securities Programs Bar Date."

1.4.    Please take further notice that, your bank, broker or any other entity that holds
        Programs Securities on your behalf may choose <u>not</u> to file a Programs Securities
        Proof of Claim on your behalf. In that event, in order to assert claims against LBHI
        based on Programs Securities, ultimate beneficial holders of Programs Securities
        must submit a Programs Securities Proof of Claim Form on their own behalf. In doing
        so, such beneficial holders must comply with the procedures and instructions set

forth in the Programs Securities Bar Date Notice when submitting such Proof of Claim, including, obtaining a Euroclear Electronic Instruction Reference Number, a Clearstream Blocking Reference Number or other depository blocking reference number as appropriate (each, a "Blocking Number").

Beneficial holders (which includes most individuals) of Programs Securities that are not Euroclear Bank, Clearstream Bank or other depository account holders may not be able to contact those depositories directly for a Blocking Number. Such beneficial holders are therefore advised to direct their bank, broker or other entity that holds such securities on their behalf to contact the appropriate depository to obtain the Blocking Number. **All requests for Blocking Numbers must be sent to the appropriate depository prior to 5:00 p.m. (prevailing Eastern Time)/11:00 p.m. (CET) on October 23, 2009.**

1.5.    Holders of LBS Securities and other Programs Securities may wish to consult an attorney if the holder has any questions, including whether such holder has any claims against LBHI and whether such holder should file a Programs Securities Proof of Claim.

**2.    Future communication**

2.1.    The bankruptcy trustee of LBS will from time to time send notices to holders of LBS Securities through the communication channels of the clearing agencies. Intermediary parties, such as banks and brokers that have an account with such clearing agencies, are requested to forward notices to intermediary banks and/or to the ultimate beneficial holders of LBS Securities they represent. All notices will also be made available on the website of the bankruptcy trustee of LBS (www.ekvandoorne.com/bankruptcylbs).

2.2.    Other information on the bankruptcy of LBS, such as quarterly public reports, will also be made public on this website. Holders of LBS Securities that are included on the mailing list will receive a notification by email if information is made available on the website. Holders of LBS Securities that are not yet included on the mailing list can register by sending an email with "*Register*" in the subject field to **bankruptcy_lbs@ekvandoorne.com**.


**Lehman Brothers Securities N.V.**

Michiel R.B. Gorsira,

Bankruptcy Trustee (*curator*)

2/2

# EXHIBIT I

**Notice to all holders of notes and certificates issued by
Lehman Brothers Treasury Co. B.V. ("LBT") under the**

**USD 100,000,000,000 Euro Medium Term Note Program
USD 4,000,000,000 German Note Issuance Program
Certificates Program
Inflation Linked Notes Program**

**1 October 2009**

*This notice serves for information purposes only. In addition to notices to holders of notes and certificates, the bankruptcy trustee of LBT will also publish quarterly public reports in accordance with Dutch bankruptcy law on the website www.lehmanbrotherstreasury.com.*

1.       **US Bar Date**

1.1.     Please take notice that, on July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the "U.S. Bankruptcy Court"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI"), entered an order (the "Bar Date Order") establishing **November 2, 2009 at 5:00 p.m. (prevailing Eastern Time)** (the "Programs Securities Bar Date") as the last date and time for each person or entity to file a proof of claim based upon claims arising out of certain securities issued by LBHI or any of their affiliates (including LBT) outside of the United States (the "Programs Securities"). A list of the Programs Securities to which the Programs Securities Bar Date applies can be found at http://www.lehman-docket.com on the "Bar Date Information and Forms" page under the heading "Lehman Programs Securities And The Securities Programs Bar Date."

1.2.     Most holders of notes and certificates issued by LBT (jointly: "LBT Notes") appear to have claims against LBHI as **guarantor** of the LBT Notes. Note that if claims under such guarantees are not filed with LBHI by **November 2, 2009**, such claims against LBHI may be forever barred.

1.3.     The Notice of Deadlines for Filing Proofs of Claim Based on Lehman Programs Securities (the "Programs Securities Bar Date Notice") contains specific instructions on how to assert (guarantee) claims against LBHI based on Programs Securities. The Programs Securities Bar Date Notice and the required Programs Securities Proof of Claim Form can be found at http://www.lehman-docket.com on the "Bar Date Information and Forms" page under the heading "Lehman Programs Securities And The Securities Programs Bar Date."

1.4.    Please take further notice that, your bank, broker or any other entity that holds
Programs Securities on your behalf may choose <u>not</u> to file a Programs Securities
Proof of Claim on your behalf. In that event, in order to assert claims against LBHI
based on Programs Securities, ultimate beneficial holders of Programs Securities
must submit a Programs Securities Proof of Claim Form on their own behalf. In doing
so, such beneficial holders must comply with the procedures and instructions set
forth in the Programs Securities Bar Date Notice when submitting such Proof of
Claim, including, obtaining a Euroclear Electronic Instruction Reference Number, a
Clearstream Blocking Reference Number or other depository blocking reference
number as appropriate (each, a "<u>Blocking Number</u>").

Beneficial holders (which includes most individuals) of Programs Securities that are
not Euroclear Bank, Clearstream Bank or other depository account holders may not
be able to contact those depositories directly for a Blocking Number. Such beneficial
holders are therefore advised to direct their bank, broker or other entity that holds
such securities on their behalf to contact the appropriate depository to obtain the
Blocking Number. **All requests for Blocking Numbers must be sent to the
appropriate depository prior to 5:00 p.m. (prevailing Eastern Time)/11:00 p.m.
(CET) on October 23, 2009**.

1.5.    Holders of LBT Notes and other Programs Securities may wish to consult an attorney
if the holder has any questions, including whether such holder has any claims
against LBHI and whether such holder should file a Programs Securities Proof of
Claim.

**2.      Future communication**

2.1.    The bankruptcy trustee of LBT will from time to time send notices to holders of LBT
Notes through the communication channels of the clearing agencies. Intermediary
parties, such as banks and brokers that have an account with such clearing
agencies, are requested to forward notices to intermediary banks and/or to the
ultimate beneficial holders of LBT Notes they represent. All notices will also be made
available on the website of the bankruptcy trustee of LBT
(www.lehmanbrotherstreasury.com).

2.2.    Other information on the bankruptcy of LBT, such as quarterly public reports, will
also be made public on this website. Holders of LBT Notes that are included on the
mailing list will receive a notification by email if information is made available on the
website. Holders of LBT Notes that are not yet included on the mailing list can
register by sending an email with "*Register*" in the subject field to
**info.lbtreasurybv@houthoff.com**.

Amsterdam, 1 October 2009

**Lehman Brothers Treasury Co. B.V.**

Rutger Schimmelpenninck,

Bankruptcy Trustee (*curator*)