Mark D. Sherrill (*pro hac vice*)
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 383-0100

Counsel for Aviva S.p.A., Aviva Vita S.p.A.,
Aviva Life S.p.A.,Aviva Italia S.p.A.,
and Aviva Assicurazioni S.p.A.

| | |
|---|---|
| **In re:** § § **LEHMAN BROTHERS HOLDINGS,** § **INC., et al.,** § § **Debtors.** § § | **Chapter 11** **Jointly Administered under** **Case No. 08-13555 (JMP)** |

**LIMITED OBJECTION OF AVIVA S.P.A., AVIVA VITA S.P.A., AVIVA LIFE S.P.A., AVIVA ITALIA S.P.A. AND AVIVA ASSICURAZIONI S.P.A. TO THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Aviva S.p.A., Aviva Vita S.p.A., Aviva Life S.p.A., Aviva Italia S.p.A. and Aviva Assicurazioni S.p.A. (collectively, the "Noteholders") file this Limited Objection (the "Limited Objection") to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), and respectfully state as follows:

**I.  Background**

1.      On March 26, 2007, Ruby Finance Public Limited Company ("Issuer") sold Series 2007-2 Class A EUR 135,000,000 Ulisse Capital Managed Constant Proportion Debt Obligations due 2017 (the "Notes") to the Noteholders.  Issuer is a special purpose entity, which was established for the purpose of issuing credit-linked debt obligations arranged by Lehman Brothers International (Europe) Ltd. under a multi-issuer secured obligation program.

15398075.1

2. Contemporaneously with the sale of the Notes, the Issuer also entered into an over-the-counter total return swap transaction (the "TRS Transaction") with Lehman Brothers Special Financing Inc. ("LBSF").[1]

3. The Issuer pledged the proceeds from the sale of the Notes to BNY Corporate Trustee Services ("Trustee") as trustee to secure its obligations to the Noteholders under the Notes; and to LBSF under the TRS Transaction ("Collateral").[2] Under the respective terms of the Notes, the Noteholders' recourse against the Issuer is limited solely to the Collateral. As such, the Noteholders are the true party-in-interest with LBSF under the TRS Transaction. Accordingly, the Noteholders have standing to file this objection pursuant to section 1109(b) of the Bankruptcy Code.

4. Lehman Brothers Holdings Inc. and its debtor affiliates (the "Debtors") filed the Plan on August 31, 2011, and established November 4, 2011 as the deadline for filing objections to the Plan (the "Confirmation Objection Deadline")

5. Subsequently, on October 25, 2011, the Debtors filed their Plan Supplement, which included as Exhibit 2 a Schedule of Executory Contracts and Unexpired Leases to be Assumed Pursuant to Section 11.1 of the Plan (the "Assumed Contract List"). The TRS Transaction was not included in this initial list.

---

[1] The TRS Transaction was entered into under an International Swaps and Derivatives Association over-the-counter derivatives master agreement ("ISDA Master Agreement);" originally entered into between Dante Finance Public Limited Company ("Dante") and LBSF on October 10, 2002, as amended and restated on July 21, 2006. On the Issue Date, the Issuer acceded to Dante's position under the ISDA Master Agreement pursuant to a Deed of Accession.

[2] This pledge was made pursuant to a principal trust deed (the "Trust Deed"), as supplemented by a supplemental deed of trust, which was also entered into on March 26, 2007. The Trust Deed was originally entered into between Dante and J.P. Morgan Corporate Trustee Services Limited. The Issuer also acceded to Dante's position under this instrument pursuant to the Deed of Accession. The responsibilities of J.P. Morgan was assigned to and assumed by the Trustee on May 19, 2007 pursuant to a April 3, 2007 order of the English High Court.

6.      On November 15, 2011 -- after the Confirmation Objection Deadline -- the Debtors filed their Amendment No. 2 to the Plan Supplement (the "Amendment"), which provided certain additions to and deletions from the Assumed Contract List.  Under the Amendment, the TRS Transaction was added to the Assumed Contract List.

7.      On November 2, 2011, before the TRS Transaction was added to the Assumed Contract List, the Debtors filed a Notice of Service of Cure Amount Notices, indicating that they had served Cure Amount Notices on October 27, 2011 to counterparties of the relevant contracts.  On information and belief, no such notice was given to the Issuer or to the Noteholders as the true party in interest.  Also on information and belief, Cure Amount Notices were given only to counterparties to the contracts on the Assumed Contract List.

8.      On November 18, 2011, the Debtors filed a Notice of Adjournment (the "Adjournment Notice"), giving notice that the hearing had been adjourned to February 14, 2012 (the "February 14 Hearing") for certain executory contracts for which the counterparties had objected to their inclusion on the Assumed Contract List.  The TRS Transaction was not included on the Adjournment Notice, which is unsurprising considering that the Amendment was filed just three days prior.  The Adjournment Notice states that the cure amount issues for all other counterparties listed on the Assumed Contract List (presumably including those on the Amendment) will be addressed at the Plan confirmation hearing (the "Confirmation Hearing") beginning on December 6, 2011.

## II.  Limited Objection

9.      The Noteholders do not object to confirmation of the Plan, but do object to certain aspects related to the Assumed Contracts List, as modified further by the Amendment.  First, on

15398075.1                                3

information and belief, neither the Issuer nor the Noteholders, as the true party in interest, have received any cure amount notice.

10. Second, the Noteholders object to the assumption of the TRS Transaction by the Debtors. Section 365(b)(1) of the Bankruptcy Code expressly requires the Debtors to cure any defaults under an executory contract before such contract is assumed. 11 U.S.C. § 365(b)(1). Although LBSF is in material breach of the TRS Transaction, the Debtors have not proposed -- and in fact, cannot effect -- a cure of this breach.

11. Third, to the extent that the Debtors later seek to adjourn the TRS Transaction to the February 14 Hearing, the Noteholders object to the holding of the Confirmation Hearing before full adjudication of the cure amount issues associated with the inclusion of the TRS Transaction on the Assumed Contract List.

12. Finally, the Noteholders reserve all rights to contend that the TRS Transaction is not an executory contract. Nothing contained herein should be construed as a waiver of any of the Noteholders legal rights or arguments in this regard or as a waiver of any other objections the Noteholders or the Issue may otherwise have to any claim the Debtors may assert under the TRS Transaction.

13. The Noteholders support confirmation of the Plan, but for the reasons above, the TRS Transaction should be deleted from the Assumed Contract List.

WHEREFORE, the Noteholders respectfully request that the Court (a) confirm the Plan, (b) enter an Order requiring the deletion of the TRS Transaction from the Assumed Contract List, and (c) grant the Noteholders such further relief as the Court deems just.

Dated: November 28, 2011
      Washington, DC

SUTHERLAND ASBILL & BRENNAN LLP

By: /s/ Mark Sherrill
Mark D. Sherrill (*pro hac vice*)
1275 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 383-0100
Fax:  (202) 637-3593

*Counsel for Aviva Italia Holding S.p.A., Aviva S.p.A., Aviva Vita S.p.A., Aviva Life S.p.A., Aviva Italia S.p.A., and Aviva Assicurazioni S.p.A.*