**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Joseph D. Pizzurro
L. P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                                : Chapter 11 Case No.
                                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    : 08-13555 (JMP)
                                                                         :
                                              Debtors.           : (Jointly Administered)
------------------------------------------------------------x

**DEBTORS' REPLY TO OBJECTION OF COMMINGLED PENSION TRUST FUND
(CORE BOND) OF JPMORGAN CHASE BANK, N.A., JPMORGAN INTERMEDIATE
BOND TRUST AND COMMINGLED PENSION TRUST FUND
(MARKET PLUS BOND) OF JPMORGAN CHASE BANK, N.A. TO
OBJECTION TO CLAIM NOS. 22886, 23011, AND 23024
(DUPLICATIVE OF INDENTURE TRUSTEE CLAIM)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), file this reply to the Objection of Commingled Pension Trust Fund (Core Bond) of JPMorgan Chase Bank, N.A., JPMorgan Intermediate Bond Trust and Commingled Pension Trust Fund (Market Plus Bond) of JPMorgan Chase Bank, N.A. to Objection to Claim Nos. 22886, 23011 and 23024 (Duplicative of Indenture Trustee Claims) (the "Response"):

10749541

## **PRELIMINARY STATEMENT**

1. Claimants[1] advance the specious argument that because the indebtedness evidenced by the Subordinated Notes was guaranteed by LBHI pursuant to the Guaranty dated as of September 9, 2008 (the "September Guaranty") which was secured pursuant to the Security Agreement dated as of September 9, 2008 (the "September Security Agreement") portions of their claims are not duplicative of the Indenture Trustee Claim. This argument is entirely without merit and should be rejected.[2]

2. The Duplicative Claims are based upon Subordinated Notes for which LBHI is the primary obligor. As a matter of law, LBHI cannot also be guarantor of such claims. Since the September Guaranty does not provide a guaranty for the Duplicative Claims, it necessarily follows that the Duplicative Claims are not secured by the September Security Agreement.

3. In fact, in any distribution under the Plan (defined below), the Bank of New York Indenture explicitly (i) requires that the holders of all Senior Debt (defined therein) of LBHI be paid in full before any payment is made to holders of the Subordinated Notes and (ii) prohibits a single holder of Subordinated Notes from being paid ahead of other similarly situated noteholders. Furthermore, the Bank of New York Indenture expressly prohibits any single holder from obtaining or seeking to obtain priority or preference over any other holders or

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Objection.
[2] For the reasons set forth in the First Amended Complaint of LBHI and the Committee against JPMCB (Adv. Pro. No. 10-03266-JMP), the September Guaranty and September Security Agreement are subject to challenges on a number of grounds, including that they are avoidable as fraudulent conveyances and are invalid because they were procured by JPMCB through unlawful economic coercion. The Objection does not further challenge the validity or enforceability of the September Agreements, rather for the reasons set forth in the Objection and in this Reply, the Duplicative Claims should be disallowed and expunged regardless of the enforceability of the September Guaranty and September Security Agreement.

10749541

enforcing any right under the Indenture except in the manner provided therein and for the equal and ratable benefit of all holders.

4.  Moreover, the wholly illogical and inequitable result that Claimants should recover one hundred cents on the dollar on account of contractually subordinated debt while similarly situated creditors receive nothing and senior creditors receive cents on the dollar is a paradigm example of JPMorgan Chase Bank, N.A.'s ("JPMorgan") overreaching. Under color of the September Guaranty and the September Security Agreement that JPMorgan coerced from LBHI in the days prior to LBHI's bankruptcy, JPMorgan has used over $700 million of LBHI collateral to compensate its customers for losses to their investment portfolios, including the losses suffered by Claimants.[3]

5.  Finally, it is critically important to other creditors of LBHI that the Duplicative Claims be disallowed and expunged prior to the time when LBHI begins making distributions under the Third Amended Joint Chapter 11 Plan of LBHI and its Affiliated Debtors (the "Plan"). As currently proposed, the Plan contemplates that each holder of an allowed claim in LBHI Classes 3, 4A and 4B and 5 (the "Senior Debt Claims") shall receive, among other things, the Subordinated Class 10B distribution. Claims filed on account of the Subordinated Notes are classified in LBHI Class 10B. Accordingly, in order to ensure that creditors holding Senior Debt Claims receive their entitled distributions, it is necessary that any duplicative claims currently classified in LBHI Class 10B be disallowed and expunged.

---

[3] The application of the September Guaranty and September Security Agreement to guaranty and/or secure the claims of JPMorgan's customers is the subject of *Lehman Brothers Holdings Inc.'s and Creditors Committee's Two Hundred Twenty-Ninth Omnibus Objection to JPMorgan's Asset Management Fund Claims (No Liability, Misclassified and Duplicative Claims)* [Docket No. 21293] (the "229th Omnibus Claims Objection"). This Objection provides an independent basis to disallow and expunge the Duplicative Claims and all rights with respect to the 229th Omnibus Claims Objection are expressly reserved.

## A PARTY CANNOT GUARANTEE ITS OWN OBLIGATIONS

6. Claimants argue that the Duplicative Claims are non-duplicative to the extent they are covered by the September Guaranty. (Response ¶3). However, as discussed below, this baseless assertion contravenes a basic tenant of contract law: a party cannot guarantee its own obligations.

7. A guaranty is "a contract of secondary liability" under which "a guarantor will be required to make payment only when the primary obligor has first defaulted." *Weissman v. Sinorm Deli*, 88 N.Y.2d 437, 446 (1996). In other words, a guaranty is an "agreement to pay a debt owed by *another*." *Midland Steel Warehouse Corp. v. Godinger Silver Art*, 714 N.Y.S.2d 466, 468 (1st Dep't 2000) (emphasis supplied); *see also* BLACK'S LAW DICTIONARY 773 (9th ed. 2009) (defining guaranty as a "promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance").

8. The purpose of a guaranty is to assure a creditor that, in the event the primary obligor defaults, the creditor will nevertheless "have someone to look to for reimbursement." *Rojas v. First Bank Nat'l Ass'n*, 613 F. Supp. 968, 971 (E.D.N.Y. 1985). As a result, a guaranty necessarily involves *three* parties: "a promisor, a creditor (the person to whom the promise is made), and a debtor." BLACK'S LAW DICTIONARY 773 (9th ed. 2009) (citations omitted).

9. Accordingly, it is a fundamental principle of contract law that a "a party cannot guarantee its own obligation." *BAII Banking Corp. v. UPG, Inc.*, No. 86 Civ 5544, 1990 WL 160889, at *8 (S.D.N.Y. Oct. 17, 1990) (emphasis supplied). To permit otherwise would obviate the purpose of guaranties. *See e.g., Nike, Inc. v. Arest*, No. 84 Civ 1431, 1985 WL 1436, at *2 (S.D.N.Y. May 30, 1985); *Weissman*, 88 N.Y.2d at 447; *PNC Capital Recovery v.*

*Mechanical Parking Sys.*, 726 N.Y.S. 2d 394, 397 (1st Dep't 2001) (finding that corporation guaranteeing its own indebtedness in case of default would render guaranty "meaningless").

10. As set forth in the Objection, LBHI is the obligor on the Subordinated Notes underlying the Duplicative Claims. As stated above, LBHI is also the guarantor under the September Guaranty. Therefore, the September Guaranty cannot, as a matter of law, apply to the Duplicative Claims. *See BAII Banking Corp.*, 1990 WL 160889, at *8.

11. Since the September Guaranty does not apply to the Duplicative Claims, the September Security Agreement can not provide a basis for an argument that such claims are secured. The very purpose of the September Security Agreement is to secure "Liabilities," which are defined by the September Security Agreement as "all 'Liabilities' as defined in the [September] Guaranty." Thus, the fact that the Duplicative Claims are not Liabilities under the September Guaranty and are not guaranteed by the September Guaranty prevents these claims from being secured by the September Security Agreement. Simply put, if the September Guaranty does not cover a particular liability, the liability is not secured.

12. Because the September Guaranty and September Security Agreement do not provide the Claimants with a different or additional basis for recovery that is not addressed by the Indenture Trustee Claim, the court should disallow and expunge the Duplicative Claims in their entirety.

### THE INDENTURE PROHIBITS CLAIMAINTS FROM RECOVERING AS A SECURED CREDITOR

13. Claimants' assertion that the Duplicative Claims are secured by virtue of the September Guaranty is especially dubious in light of the express terms of the Bank of New York Indenture and certain fundamental legal principles applicable to securities issued under an indenture.

14. The Bank of New York Indenture incorporates by reference the Standard Multiple-Series Indenture Provisions, dated and filed with the Securities and Exchange Commission on July 30, 1987 and refiled on November 16, 1987 (the "Standard Provisions" and together with the Bank of New York Indenture, the "Indenture"). The Subordinated Notes, under which the Duplicative Claims arise, are governed by the terms of the Indenture.

15. The Indenture expressly defines the "Securities" (*i.e.*, the Subordinated Notes) as "unsecured" notes issued by LBHI in one or more series. *See* Preamble, Bank of New York Indenture.

16. The Indenture also expressly provides with respect to the Subordinated Notes that:

> each Holder of the Securities and related coupons by his acceptance thereof likewise agrees, that the payment of the principal of (and premium, if any) and interest, if any, on the Securities and related coupons *is subordinated*, to the extent and in the manner provided in this Article, *to the prior payment in full when due of the principal of (and premium, if any) and interest, if any, on all Senior Debt.*

Bank of New York Indenture § 1401 (emphasis supplied).

17. The Indenture further provides that, upon any distribution pursuant to a plan of reorganization with respect to LBHI:

> (a) the holders of all Senior Debt shall first be entitled to receive payment in full of the Senior Debt *before the Holders of the Securities and any related coupons are entitled to receive any payment on account of the principal of (and premium, if any) and interest, if any on the Securities*;
>
> (b) any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, to which the Holders of the Securities and any related coupons or the Trustee on behalf of the Holders of the Securities and any related coupons would be entitled except for the provisions of this Article

10749541

> *shall be paid by the liquidating trustee or agent or other person making such payment or distribution directly to the holders of Senior Debt or their representative, or to the trustee under any indenture under which Senior Debt may have been issued,* to the extent necessary to make payment in full of all Senior Debt remaining unpaid, after giving effect to any concurrent payment or distribution or provision therefor to the holder of such Senior Debt;
>
> (c) in the event that, notwithstanding the foregoing provisions of this Section 1403, any payment of distribution of assts of the Company of any kind or character, whether in cash, property or securities, shall be received by the Trustee or the Holders of the Securities and any related coupons or any Paying Agent . . . on account of principal of (and premium, if any) and interest, if any, on the Securities before all Senior Debt is paid in full, or effective provision made for its payment, such payment or distribution ... *shall be received and held in trust for and shall be paid over to the holders of the Senior Debt remaining unpaid or unprovided for or their representative, or to the trustee under any indenture under which Senior Debt may have been issued, for application to the payment of such Senior Debt until all such Senior Debt shall have been paid in full.* . . .

Bank of New York Indenture § 1403 (emphasis supplied).

18. "Senior Debt" is defined broadly and, importantly, includes many classes of claims that will not be paid in full pursuant to the Plan. The contractual subordination mandated by the Bank of New York Indenture is reflected in the Plan. Specifically, distributions to LBHI Class 10B are reallocated to provide an additional measure of recovery to the Senior Debt Claims. *See* Plan § 6.4.

19. Furthermore, by its terms, the Indenture provides that any monies collected by the Indenture Trustee following a default under the Indenture (including any amounts to be distributed to the holders of the Subordinated Notes pursuant to a plan of reorganization) must be paid to and among all holders of the Subordinated Notes ratably. *See*

10749541

Standard Provisions § 506 (stating that any amounts to be paid to the noteholders must be distributed "ratably, without preference or priority of any kind").

20. Finally, the Indenture admonishes that:

> it [is] understood and intended that no one or more [ ] Holders shall have any right in any manner whatever by virtue of, or by availing [itself] of, any provision of this Indenture to affect, disturb or prejudice the rights of any other such Holders, *or to obtain or to seek to obtain priority or preference over any other of such Holders or to enforce any right under this Indenture except in the manner herein provided and for the equal and ratable benefit of all such Holders.*

Standard Provisions § 506 (emphasis supplied).

21. In fact, if Claimants were to receive any payment based on the Duplicative Claims, such payment would be held in trust for the holders of LBHI's Senior Debt, and Claimants would be required to turn over such payment to the senior holders. *See* Bank of New York Indenture, at Section 1403(c); *see also UPIC & Co. v. Kinder Care Learning Centers, Inc.*, 793 F. Supp. 448, 461 (S.D.N.Y. 1992).

22. Moreover, permitting the Claimants to receive payments before other holders of the Subordinated Notes and holders of senior debt violates Section 316(b) of the Trust Indenture Act (the "TIA"), which applies to indentures qualified under the TIA, such as the Indenture. The TIA provides that the right of any holder of any indenture security to receive payment on such security on or after the due date, or to institute suit for the enforcement of any such payment, shall not be "impaired or affected" without the consent of such holder. *See* Trust Indenture Act of 1939, as amended, 15 U.S.C. § 77aa et seq. The purpose of Section 316(b) of the TIA is to require the consent of each affected holder for a change of any of the payment terms of the securities under the indenture. *See Upic & Co.*, 793 F. Supp., at 455; *Bank of New York v. First Millennium, Inc.*, 598 F. Supp.2d 550, 564-565 (S.D.N.Y. 2009); *see also* Standard

Terms § 508 (incorporating provisions of Section 316(b) of the TIA into the Indenture). Thus, any change to any of the payment terms under an indenture requires the unanimous consent of each affected noteholder. *See* 15 U.S.C. § 77ppp(b).

23.   Claimants' position that the Duplicative Claims are secured by virtue of the September Guaranty and September Security Agreement, despite the mandatory subordination and the ratable payment and ratable benefit provisions contained in the Indenture, is tantamount to an improper modification of various of the payment terms of the Subordinated Notes under the Indenture. Such a modification of rights resulting in the Claimants recovering one-hundred cents on the dollar while other holders of the Subordinated Notes receive nothing is violative of the TIA unless all such other holders of the Subordinated Notes unanimously approve. The Claimants did not obtain this approval and, as a result, the terms of the Indenture may not be so modified.

24.   Disregarding the express provisions of the Indenture and the Trust Indenture Act, Claimants argue that, by virtue of the September Guaranty and September Security Agreement, the Duplicative Claims should be treated as fully secured. Therefore, Claimants seek to recover one hundred cents on the dollar for contractually subordinated notes while similarly situated creditors receive nothing and senior creditors recover cents on the dollar. This anomalous result is both illogical and inequitable.

10749541

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court grant the relief requested in the Objection and such other and further relief as is just.

Dated: November 28, 2011
New York, New York

                                          **CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

By: */s/ L. P. Harrison 3rd*
Joseph D. Pizzurro
L. P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney
Peter J. Behmke
Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000

*Counsel for Debtors and
Debtors-in-Possession*

-10-

10749541