**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :          08-13555 (JMP)
                                          :
              Debtors.                    :          (Jointly Administered)
                                          :
------------------------------------------------------------------x
```

### MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF
### LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

Dated: New York, New York
       August 31,November 29, 2011

# TABLE OF CONTENTS

**Page**

ARTICLE I          DEFINITIONS AND CONSTRUCTION OF TERMS ................................. 1

ARTICLE II         TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
                   AND PRIORITY TAX CLAIMS .................................................... 17

2.1       Administrative Expense Claims ................................................... 17

2.2       Professional Compensation and Reimbursement Claims ................. 17

2.3       Priority Tax Claims ................................................................... 18

ARTICLE III        CLASSIFICATION OF CLAIMS AND EQUITY
                   INTERESTS ............................................................................ 18

3.1       LBHI ...................................................................................... 18

3.2       LCPI ....................................................................................... 19

3.3       LBCS ...................................................................................... 19

3.4       LBSF ...................................................................................... 19

3.5       LOTC ..................................................................................... 20

3.6       LBCC ..................................................................................... 20

3.7       LBDP ..................................................................................... 20

3.8       LBFP ...................................................................................... 21

3.9       LB 745 .................................................................................... 21

3.10      PAMI Statler ........................................................................... 21

3.11      CES ........................................................................................ 2221

3.12      CES V ..................................................................................... 22

3.13      CES IX .................................................................................... 22

3.14      East Dover ............................................................................... 22

3.15      LS Finance .............................................................................. 2322

3.16      LUXCO ................................................................................... 23

3.17      BNC ....................................................................................... 23

3.18      LB Rose Ranch ........................................................................ 23

3.19      SASCO .................................................................................... 2423

3.20      LB 2080 .................................................................................. 24

3.21      Merit ...................................................................................... 24

3.22      Preferred Somerset ................................................................... 24

**TABLE OF CONTENTS**
**(continued)**

**Page**

| 3.23 | Somerset | 25 24 |
| ARTICLE IV | TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN LBHI | 25 |
| 4.1 | LBHI Class 1 – Priority Non-Tax Claims against LBHI | 25 |
| 4.2 | LBHI Class 2 – Secured Claims against LBHI | 25 |
| 4.3 | LBHI Class 3 – Senior Unsecured Claims against LBHI | 25 |
| 4.4 | LBHI Class 4A – Senior Affiliate Claims against LBHI | 26 25 |
| 4.5 | LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI | 26 |
| 4.6 | LBHI Class 5 – Senior Third-Party Guarantee Claims against LBHI | 26 |
| 4.7 | LBHI Class 6A – Convenience Claims against LBHI | 26 |
| 4.8 | LBHI Class 6B – Convenience Guarantee Claims against LBHI | 27 26 |
| 4.9 | LBHI Class 7 – General Unsecured Claims against LBHI | 27 |
| 4.10 | LBHI Class 8 – Affiliate Claims against LBHI | 27 |
| 4.11 | LBHI Class 9A – Third-Party Guarantee Claims against LBHI | 27 |
| 4.12 | LBHI Class 9B – Third-Party Guarantee Claims of the Racers Trusts against LBHI | 27 |
| 4.13 | LBHI Class 10A – Subordinated Class 10A Claims against LBHI | 28 27 |
| 4.14 | LBHI Class 10B – Subordinated Class 10B Claims against LBHI | 28 |
| 4.15 | LBHI Class 10C – Subordinated Class 10C Claims against LBHI | 28 |
| 4.16 | LBHI Class 11 – Section 510(b) Claims against LBHI | 28 |
| 4.17 | LBHI Class 12 – Equity Interests in LBHI | 29 28 |
| ARTICLE V | TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN SUBSIDIARY DEBTORS | 29 |
| 5.1 | LCPI Class 1 – Priority Non-Tax Claims against LCPI | 29 |
| 5.2 | LCPI Class 2 – Secured Claims against LCPI | 30 29 |
| 5.3 | LCPI Class 3 – Convenience Claims against LCPI | 30 |
| 5.4 | LCPI Class 4A – General Unsecured Claims other than those of Designated Entities against LCPI | 30 |
| 5.5 | LCPI Class 4B – General Unsecured Claims of Designated Entities against LCPI | 30 |

## TABLE OF CONTENTS
### (continued)

| | | Page |
|---|---|---|
| 5.6 | LCPI Class 5A – Affiliate Claims of LBHI against LCPI | 31 30 |
| 5.7 | LCPI Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LCPI | 31 |
| 5.8 | LCPI Class 5C – Affiliate Claims other than those of Participating Debtors against LCPI | 31 |
| 5.9 | LCPI Class 6 – Equity Interests in LCPI | 31 |
| 5.10 | LBCS Class 1 – Priority Non-Tax Claims against LBCS | 32 31 |
| 5.11 | LBCS Class 2 – Secured Claims against LBCS | 32 |
| 5.12 | LBCS Class 3 – Convenience Claims against LBCS | 32 |
| 5.13 | LBCS Class 4 – General Unsecured Claims against LBCS | 32 |
| 5.14 | LBCS Class 5A – Affiliate Claims of LBHI against LBCS | 33 32 |
| 5.15 | LBCS Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LBCS | 33 |
| 5.16 | LBCS Class 5C – Affiliate Claims other than those of Participating Debtors against LBCS | 33 |
| 5.17 | LBCS Class 6 – Equity Interests in LBCS | 33 |
| 5.18 | LBSF Class 1 – Priority Non-Tax Claims against LBSF | 34 33 |
| 5.19 | LBSF Class 2 – Secured Claims against LBSF | 34 |
| 5.20 | LBSF Class 3 – Convenience Claims against LBSF | 34 |
| 5.21 | LBSF Class 4A – General Unsecured Claims other than those of the Racers Trusts against LBSF | 34 |
| 5.22 | LBSF Class 4B – General Unsecured Claims of the Racers Trusts against LBSF | 35 34 |
| 5.23 | LBSF Class 5A – Affiliate Claims of LBHI against LBSF | 35 |
| 5.24 | LBSF Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LBSF | 35 |
| 5.25 | LBSF Class 5C – Affiliate Claims other than those of Participating Debtors against LBSF | 35 |
| 5.26 | LBSF Class 6 – Equity Interests in LBSF | 36 35 |
| 5.27 | LOTC Class 1 – Priority Non-Tax Claims against LOTC | 36 |
| 5.28 | LOTC Class 2 – Secured Claims against LOTC | 36 |
| 5.29 | LOTC Class 3 – Convenience Claims against LOTC | 37 36 |

## TABLE OF CONTENTS
### (continued)

                                                                              **Page**

5.30    LOTC Class 4 – General Unsecured Claims against LOTC.................... ~~37~~36

5.31    LOTC Class 5A – Affiliate Claims of LBHI against LOTC.................... 37

5.32    LOTC Class 5B – Affiliate Claims of Participating Subsidiary
        Debtors against LOTC.................... 37

5.33    LOTC Class 5C – Affiliate Claims other than those of
        Participating Debtors against LOTC.................... 37

5.34    LOTC Class 6 – Equity Interests in LOTC.................... ~~38~~37

5.35    LBCC Class 1 – Priority Non-Tax Claims against LBCC.................... 38

5.36    LBCC Class 2 – Secured Claims against LBCC.................... 38

5.37    LBCC Class 3 – Convenience Claims against LBCC.................... ~~39~~38

5.38    LBCC Class 4 – General Unsecured Claims against LBCC.................... ~~39~~38

5.39    LBCC Class 5A – Affiliate Claims of LBHI against LBCC.................... 39

5.40    LBCC Class 5B – Affiliate Claims of Participating Subsidiary
        Debtors against LBCC.................... 39

5.41    LBCC Class 5C – Affiliate Claims other than those of
        Participating Debtors against LBCC.................... 39

5.42    LBCC Class 6 – Equity Interests in LBCC.................... ~~40~~39

5.43    LBDP Class 1 – Priority Non-Tax Claims against LBDP.................... 40

5.44    LBDP Class 2 – Secured Claims against LBDP.................... 40

5.45    LBDP Class 3 – General Unsecured Claims against LBDP.................... ~~41~~40

5.46    LBDP Class 4A – Affiliate Claims of LBHI against LBDP.................... ~~41~~40

5.47    LBDP Class 4B – Affiliate Claims other than those of LBHI
        against LBDP.................... 41

5.48    LBDP Class 5 – Equity Interests in LBDP.................... 41

5.49    LBFP Class 1 – Priority Non-Tax Claims against LBFP.................... 41

5.50    LBFP Class 2 – Secured Claims against LBFP.................... ~~42~~41

5.51    LBFP Class 3 – General Unsecured Claims against LBFP.................... 42

5.52    LBFP Class 4A – Affiliate Claims of LBHI against LBFP.................... 42

5.53    LBFP Class 4B – Affiliate Claims other than those of LBHI
        against LBFP.................... 42

5.54    LBFP Class 5 – Equity Interests in LBFP.................... ~~43~~42

## TABLE OF CONTENTS
### (continued)

|  | | Page |
|---|---|---|
| 5.55 | LB 745 Class 1 – Priority Non-Tax Claims against LB 745 | ~~43~~42 |
| 5.56 | LB 745 Class 2 – Secured Claims against LB 745 | 43 |
| 5.57 | LB 745 Class 3 – General Unsecured Claims against LB 745 | 43 |
| 5.58 | LB 745 Class 4A – Affiliate Claims of LBHI against LB 745 | ~~44~~43 |
| 5.59 | LB 745 Class 4B – Affiliate Claims other than those of LBHI against LB 745 | ~~44~~43 |
| 5.60 | LB 745 Class 5 – Equity Interests in LB 745 | 44 |
| 5.61 | PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI Statler | 44 |
| 5.62 | PAMI Statler Class 2 – Secured Claims against PAMI Statler | ~~45~~44 |
| 5.63 | PAMI Statler Class 3 – General Unsecured Claims against PAMI Statler | 45 |
| 5.64 | PAMI Statler Class 4A – Affiliate Claims of LBHI against PAMI Statler | 45 |
| 5.65 | PAMI Statler Class 4B – Affiliate Claims other than those of LBHI against PAMI Statler | 45 |
| 5.66 | PAMI Statler Class 5 – Equity Interests in PAMI Statler | ~~46~~45 |
| 5.67 | CES Class 1 – Priority Non-Tax Claims against CES | ~~46~~45 |
| 5.68 | CES Class 2 – Secured Claims against CES | 46 |
| 5.69 | CES Class 3 – General Unsecured Claims against CES | 46 |
| 5.70 | CES Class 4A – Affiliate Claims of LBHI against CES | ~~47~~46 |
| 5.71 | CES Class 4B – Affiliate Claims other than those of LBHI against CES | ~~47~~46 |
| 5.72 | CES Class 5 – Equity Interests in CES | 47 |
| 5.73 | CES V Class 1 – Priority Non-Tax Claims against CES V | 47 |
| 5.74 | CES V Class 2 – Secured Claims against CES V | 47 |
| 5.75 | CES V Class 3 – General Unsecured Claims against CES V | ~~48~~47 |
| 5.76 | CES V Class 4A – Affiliate Claims of LBHI against CES V | 48 |
| 5.77 | CES V Class 4B – Affiliate Claims other than those of LBHI against CES V | 48 |
| 5.78 | CES V Class 5 – Equity Interests in CES V | 48 |
| 5.79 | CES IX Class 1 – Priority Non-Tax Claims against CES IX | ~~49~~48 |

## TABLE OF CONTENTS
### (continued)

**Page**

5.80    CES IX Class 2 – Secured Claims against CES IX ...................49

5.81    CES IX Class 3 – General Unsecured Claims against CES IX ...................49

5.82    CES IX Class 4A – Affiliate Claims of LBHI against CES IX ...................49

5.83    CES IX Class 4B – Affiliate Claims other than those of LBHI against CES IX ...................~~50~~49

5.84    CES IX Class 5 – Equity Interests in CES IX ...................~~50~~49

5.85    East Dover Class 1 – Priority Non-Tax Claims against East Dover ...................50

5.86    East Dover Class 2 – Secured Claims against East Dover ...................50

5.87    East Dover Class 3 – General Unsecured Claims against East Dover ...................~~51~~50

5.88    East Dover Class 4A – Affiliate Claims of LBHI against East Dover ...................51

5.89    East Dover Class 4B – Affiliate Claims other than those of LBHI against East Dover ...................51

5.90    East Dover Class 5 – Equity Interests in East Dover ...................51

5.91    LS Finance Class 1 – Priority Non-Tax Claims against LS Finance ...................~~52~~51

5.92    LS Finance Class 2 – Secured Claims against LS Finance ...................52

5.93    LS Finance Class 3 – General Unsecured Claims against LS Finance ...................52

5.94    LS Finance Class 4A – Affiliate Claims of LBHI against LS Finance ...................52

5.95    LS Finance Class 4B – Affiliate Claims other than those of LBHI against LS Finance ...................~~53~~52

5.96    LS Finance Class 5 – Equity Interests in LS Finance ...................53

5.97    LUXCO Class 1 – Priority Non-Tax Claims against LUXCO ...................53

5.98    LUXCO Class 2 – Secured Claims against LUXCO ...................53

5.99    LUXCO Class 3 – General Unsecured Claims against LUXCO ...................~~54~~53

5.100   LUXCO Class 4A – Affiliate Claims of LBHI against LUXCO ...................54

5.101   LUXCO Class 4B – Affiliate Claims other than those of LBHI against LUXCO ...................54

5.102   LUXCO Class 5 – Equity Interests in LUXCO ...................54

5.103   BNC Class 1 – Priority Non-Tax Claims against BNC ...................~~55~~54

**TABLE OF CONTENTS**
**(continued)**

Page

5.104   BNC Class 2 – Secured Claims against BNC ........................................55

5.105   BNC Class 3 – General Unsecured Claims against BNC ......................55

5.106   BNC Class 4A – Affiliate Claims of LBHI against BNC ......................55

5.107   BNC Class 4B – Affiliate Claims other than those of LBHI against
        BNC ......................................................................................................55

5.108   BNC Class 5 – Equity Interests in BNC ..........................................~~56~~55

5.109   LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB
        Rose Ranch ..........................................................................................56

5.110   LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch ......56

5.111   LB Rose Ranch Class 3 – General Unsecured Claims against LB
        Rose Ranch ..................................................................................~~57~~56

5.112   LB Rose Ranch 4A – Affiliate Claims of LBHI against LB Rose
        Ranch ....................................................................................................57

5.113   LB Rose Ranch Class 4B – Affiliate Claims other than those of
        LBHI against LB Rose Ranch ..............................................................57

5.114   LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch ............57

5.115   SASCO Class 1 – Priority Non-Tax Claims against SASCO ..............57

5.116   SASCO Class 2 – Secured Claims against SASCO ............................58

5.117   SASCO Class 3 – General Unsecured Claims against SASCO ..........58

5.118   SASCO Class 4A – Affiliate Claims of LBHI against SASCO ..........58

5.119   SASCO Class 4B – Affiliate Claims other than those of LBHI
        against SASCO ....................................................................................58

5.120   SASCO Class 5 – Equity Interests in SASCO ..............................~~59~~58

5.121   LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080 ..........59

5.122   LB 2080 Class 2 – Secured Claims against LB 2080 ........................59

5.123   LB 2080 Class 3 – General Unsecured Claims against LB 2080 ......59

5.124   LB 2080 Class 4A – Affiliate Claims of LBHI against LB 2080 ....~~60~~59

5.125   LB 2080 Class 4B – Affiliate Claims other than those of LBHI
        against LB 2080 ..................................................................................60

5.126   LB 2080 Class 5 – Equity Interests in LB 2080 ................................60

5.127   Merit Class 1 – Priority Non-Tax Claims against Merit ....................60

5.128   Merit Class 2 – Secured Claims against Merit ..............................~~61~~60

**TABLE OF CONTENTS**
**(continued)**

Page

| | | |
|---|---|---|
| 5.129 | Merit Class 3 – General Unsecured Claims against Merit | 61 |
| 5.130 | Merit Class 4A – Affiliate Claims of LBHI against Merit | 61 |
| 5.131 | Merit Class 4B – Affiliate Claims other than those of LBHI against Merit | 61 |
| 5.132 | Merit Class 5 – Equity Interests in Merit | 61 |
| 5.133 | Preferred Somerset Class 1 – Priority Non-Tax Claims against Preferred Somerset | 62 |
| 5.134 | Preferred Somerset Class 2 – Secured Claims against Preferred Somerset | 62 |
| 5.135 | Preferred Somerset Class 3 – General Unsecured Claims against Preferred Somerset | 62 |
| 5.136 | Preferred Somerset Class 4A – Affiliate Claims of LBHI against Preferred Somerset | 6362 |
| 5.137 | Preferred Somerset Class 4B – Affiliate Claims other than those of LBHI against Preferred Somerset | 63 |
| 5.138 | Preferred Somerset Class 5 – Equity Interests in Preferred Somerset | 63 |
| 5.139 | Somerset Class 1 – Priority Non-Tax Claims against Somerset | 63 |
| 5.140 | Somerset Class 2 – Secured Claims against Somerset | 6463 |
| 5.141 | Somerset Class 3 – General Unsecured Claims against Somerset | 64 |
| 5.142 | Somerset Class 4A – Affiliate Claims of LBHI against Somerset | 64 |
| 5.143 | Somerset Class 4B – Affiliate Claims other than those of LBHI against Somerset | 64 |
| 5.144 | Somerset Class 5 – Equity Interests in Somerset | 6564 |
| ARTICLE VI | IMPLEMENTATION OF THE PLAN | 65 |
| 6.1 | Plan Administrator | 65 |
| 6.2 | LAMCO | 6766 |
| 6.3 | Debtor Allocation Agreement | 6766 |
| 6.4 | Redistribution of Subordinated Claims Recoveries | 67 |
| 6.5 | Plan Settlement | 6867 |
| 6.6 | Closing of Chapter 11 Case | 70 |
| 6.7 | Indenture Trustee and Creditors' Committee Members Fees | 70 |

**TABLE OF CONTENTS**
**(continued)**

                                                                                    **Page**

ARTICLE VII        CORPORATE GOVERNANCE .................................................... 71̶70

        7.1    Corporate Form ....................................................................... 71̶70

        7.2    LBHI Board of Directors and Officers ..................................... 71̶70

        7.3    Subsidiary Debtor Post-Effective Date Management ............... 72̶71

        7.4    Plan Trust ............................................................................... 73̶72

        7.5    Corporate Existence ................................................................ 73

        7.6    Wind-Down ............................................................................. 73

        7.7    Certificate of Incorporation and By-Laws .............................. 74̶73

        7.8    Stock Trading Restrictions ...................................................... 74̶73

ARTICLE VIII      PROVISIONS REGARDING VOTING AND
                          DISTRIBUTIONS UNDER THE PLAN ............................ 74

        8.1    Voting of Claims ..................................................................... 74

        8.2    Nonconsensual Confirmation ................................................. 74

        8.3    Distributions of Available Cash ............................................. 74

        8.4    Disputed Claims Holdback ..................................................... 75̶74

        8.5    Minimum Distribution and Manner of Payment ..................... 76̶75

        8.6    Distributions Free and Clear .................................................. 76

        8.7    Delivery of Distributions and Undeliverable Distributions ..... 76

        8.8    Withholding and Reporting Requirements ............................... 76

        8.9    Time Bar to Cash Payment Rights .......................................... 77

        8.10   Setoffs and Recoupment ........................................................ 77

        8.11   Claims Register ...................................................................... 77

        8.12   Allocation of Distributions .................................................... 77

        8.13   Maximum Distribution ........................................................... 78̶77

        8.14   Rights of Reimbursement ....................................................... 79

        8.15   Distributions to Non-Controlled Affiliates ............................ 80

ARTICLE IX        PROCEDURES FOR TREATING DISPUTED CLAIMS ......... 80

        9.1    Objections .............................................................................. 80

        9.2    No Distributions Pending Allowance ...................................... 80

        9.3    Estimation of Claims .............................................................. 80

## TABLE OF CONTENTS
### (continued)

**Page**

9.4 Resolution of Disputed Claims .................................................................. 81

ARTICLE X    LIQUIDATING TRUST ................................................................... 81

10.1 Execution of Liquidating Trust Agreement ........................................... 81

10.2 Purpose of the Liquidating Trust ........................................................... 81

10.3 Liquidating Trust Assets ....................................................................... 81

10.4 Administration of the Liquidating Trust ............................................... 81

10.5 Liquidating Trustee's Tax Power for Debtors ...................................... 82

10.6 Cash Investments .................................................................................. 82

10.7 Distribution of Liquidating Trust Interests .......................................... 82

10.8 Federal Income Tax Treatment of Liquidating Trust ........................... 82

10.9 Tax Reporting ....................................................................................... 82

10.10 Dissolution ........................................................................................... 84

ARTICLE XI    TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ............................................................... 84

11.1 Executory Contracts and Unexpired Leases ......................................... 84

11.2 Approval of Assumption and Rejection of Executory Contracts and
Unexpired Leases .................................................................................. 85

11.3 Cure of Defaults ................................................................................... 85

11.4 Bar Date for Filing Proofs of Claim Relating to Executory
Contracts and Unexpired Leases Rejected Pursuant to the Plan ........... 85

11.5 Insurance Policies ................................................................................. 85

11.6 Indemnification Obligations ................................................................. 8586

ARTICLE XII    EFFECTIVENESS OF THE PLAN ................................................ 86

12.1 Conditions Precedent to the Confirmation of the Plan ......................... 86

12.2 Conditions Precedent to the Effective Date of the Plan ........................ 86

12.3 Waiver of Conditions ............................................................................ 86

ARTICLE XIII    EFFECTS OF CONFIRMATION .................................................. 87

13.1 Vesting of Assets .................................................................................. 87

13.2 Binding Effect ....................................................................................... 87

13.3 Release and Exculpation ....................................................................... 87

13.4 Discharge .............................................................................................. 88

**TABLE OF CONTENTS**
**(continued)**

**Page**

| | | |
|---|---|---|
| 13.5 | Injunction | 88 |
| 13.6 | United States Government | ~~88~~89 |
| 13.7 | Terms of Injunctions or Stays | 89 |
| 13.8 | Retention of Litigation Claims and Reservation of Rights | 89 |
| 13.9 | Barclays Sale Order. | 89 |
| 13.10 | No Waiver of Rights and Defenses. | 89 |
| ARTICLE XIV | RETENTION OF JURISDICTION | ~~89~~90 |
| 14.1 | Retention of Jurisdiction | ~~89~~90 |
| ARTICLE XV | MISCELLANEOUS PROVISIONS | 91 |
| 15.1 | Post-Effective Date Role of Creditors' Committee and Fee Committee | 91 |
| 15.2 | Issuance of New Securities | ~~91~~92 |
| 15.3 | Exemption from Securities Laws | 92 |
| 15.4 | Exemption from Transfer Taxes | 92 |
| 15.5 | Plan Supplement | ~~92~~93 |
| 15.6 | Post-Effective Date Reporting. | ~~92~~93 |
| 15.7 | Payment of Statutory Fees. | 94 |
| 15.8 | Amendment or Modification of Plan | 94 |
| 15.9 | Withdrawal or Revocation of the Plan | ~~94~~95 |
| 15.10 | Courts of Competent Jurisdiction | ~~94~~95 |
| 15.11 | Transactions on Business Days | ~~94~~95 |
| 15.12 | Notices | 95 |
| 15.13 | Severability | ~~95~~96 |
| 15.14 | Governing Law | ~~95~~96 |
| 15.15 | Headings | ~~95~~96 |
| 15.16 | Exhibits | ~~95~~96 |
| 15.17 | Successors and Assigns | 96 |

# ARTICLE I
## Definitions and Construction of Terms

Definitions.  As used in the Plan, the following terms shall have the respective meanings specified below:

1.1    Administrative Expense Claim means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business from and after the Commencement Date, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code.

1.2    Affiliate shall have the meaning assigned to such term in section 101(2) of the Bankruptcy Code, excluding a Designated Entity.

1.3    Affiliate Claim means (a) in the case of LBHI, any Claim asserted by an Affiliate of LBHI, other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Affiliate Claim or a Senior Affiliate Guarantee Claim, or (b) in the case of a Subsidiary Debtor, any Claim asserted by an Affiliate of that Subsidiary Debtor, other than an Administrative Expense Claim, a Priority Non-Tax Claim or a Secured Claim.

1.4    Allowed means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed hereunder, (c) any Claim that is not Disputed, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order of the Bankruptcy Court, including, without limitation, the Derivatives Procedures Order, or under Section 9.4 of the Plan, or (e) any Claim that, if Disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.  For purposes of a Foreign Proceeding, an Allowed Claim includes a Claim that has been accepted or allowed in a Foreign Proceeding by settlement with a Foreign Administrator or Final Order of a court of competent jurisdiction.

1.5    Available Cash means (a) all Cash of a Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on its invested funds, recoveries from Litigation Claims or from any other source or otherwise less (b) the amount of Cash (i) necessary to pay holders of Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Convenience Claims and Convenience Guarantee Claims against such Debtor in accordance with the Plan, and (ii) estimated and

1.32    <u>Confirmation Order</u> means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code as applicable to each Debtor.

1.33    <u>Contributing Class</u> means each of LBHI Class 5, LBHI Class 9A, LCPI Class 4A, LCPI Class 4B, LCPI Class 5B, LCPI Class 5C, LBCS Class 4, LBCS Class 5B, LBCS Class 5C, LBSF Class 4A, LBSF Class 5B, LBSF Class 5C, LOTC Class 4, LOTC Class 5B, LOTC Class 4, LBCC Class 4, LBCC Class 5B and LBCC Class 5C.

1.34    <u>Convenience Claim</u> means any Senior Unsecured Claim or General Unsecured Claim other than a Claim on account of a public debt security issued by LBHI, a Claim asserted by a nominee on behalf of one or more beneficial holders of such Claim or a Claim of a Designated Entity that is (a) Allowed in an amount of fifty thousand dollars ($50,000) or less or (b) Allowed in an amount greater than fifty thousand dollars ($50,000) but which is reduced to fifty thousand dollars ($50,000) (i) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot or (ii) pursuant to a settlement agreement between the applicable Debtor and holder of such Claim entered into after the Voting Deadline; *provided, however* that (1) any Claim that was Allowed in excess of fifty thousand dollars ($50,000) may not be subdivided into multiple Claims of fifty thousand dollars ($50,000) or less for purposes of receiving treatment as a Convenience Claim, (2) Claims in the same Class held by a Creditor shall be aggregated for purposes of determining whether such Claims are ~~elgible~~eligible to be Convenience Claims, (3) Claims acquired after the Commencement Date shall not be aggregated unless such Claims are in the same Classes, are held by a Creditor and were originally held by one Creditor, and (4) Claims held by a Creditor prior to the Commencement Date shall not be aggregated with Claims acquired by such Creditor after the Commencement Date.

1.35    <u>Convenience Guarantee Claim</u> means any Senior Third-Party Guarantee Claim or Third-Party Guarantee Claim other than a Claim on account of a public debt security issued by LBHI, a Claim asserted by a nominee on behalf of one or more beneficial holders of such Claim or a Claim of a Designated Entity that is (a) Allowed in an amount of fifty thousand dollars ($50,000) or less or (b) Allowed in an amount greater than fifty thousand dollars ($50,000) but which is reduced to fifty thousand dollars ($50,000) (i) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot or (ii) pursuant to a settlement agreement between the applicable Debtor and holder of such Claim entered into after the Voting Deadline; *provided, however* that (1) any Claim that was Allowed in excess of fifty thousand dollars ($50,000) may not be subdivided into multiple Claims of fifty thousand dollars ($50,000) or less for purposes of receiving treatment as a Convenience Guarantee Claim, (2) Claims in the same Class held by a Creditor shall be aggregated for purposes of determining whether such Claims are ~~elgible~~eligible to be Convenience Guarantee Claims, (3) Claims acquired after the Commencement Date shall not be aggregated unless such Claims are in the same Classes, are held by a Creditor and were originally held by one Creditor, and (4) Claims held by a Creditor prior to the Commencement Date shall not be aggregated with Claims acquired by such Creditor after the Commencement Date.

1.36    <u>Creditor</u> shall have the meaning assigned to such term in section 101(10) of the Bankruptcy Code.

1.47    Distribution means any initial or subsequent payment or transfer made under the Plan.

1.48    Distribution Date means any date on which a Distribution is made upon at least ~~fourteen~~thirty (~~14~~30) Business Days written notice filed on the docket of the Chapter 11 Cases or otherwise communicated to holders of Allowed Claims.

1.49    East Dover means East Dover Limited.

1.50    Effective Date means the first Business Day on which the conditions to effectiveness of the Plan set forth in Article XII have been satisfied or waived and on which the Plan shall become effective with respect to a Debtor.

1.51    Equity Interest means (a) shares of common stock, preferred stock, other forms of ownership interest, or any ~~interest or right to convert into such an equity or ownership interest or to acquire any equity or ownership interest or any interest or right for which the amount owing is determined by reference to an equity or ownership interest, including, without limitation, vested and/or unvested restricted stock units, contingent stock awards, contingent equity awards, performance stock units, and stock options or restricted stock awards granted under management ownership plans, the LBHI 2005 stock incentive plan or the LBHI employee incentive plan,~~other equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor that was in existence immediately prior to or on the Commencement Date for such Debtor, and (b) Allowed Claims against LBHI arising out of, relating to, or in connection with any of the foregoing that are subject to section 510(b) of the Bankruptcy Code.

1.52    Excess LBSF Settlement Amount means the Distributions, if any, made in accordance with the last sentence of Section 6.5(f) of the Plan to holders of Allowed Claims in LBSF Class 5A in the event holders of Allowed Claims in LBSF Class 4A are satisfied in full.

1.53    Excess LCPI Settlement Amount means the Distributions, if any, made in accordance with the last sentence of Section 6.5(e) of the Plan to holders of Allowed Claims in LCPI Class 5A in the event holders of Allowed Claims in LCPI Class 4A are satisfied in full.

1.54    Excess Plan Adjustment means the Distributions (including the Plan Adjustment), if any, made in accordance with the last sentence of Section 6.5(a) of the Plan in the event that holders of Allowed Claims in an LBHI Class 3 or LBHI Class 7 are satisfied in full to Participating Debtors for the exclusive benefit of (i) holders of Allowed Claims in such Participating Debtors' Contributing Classes and, in addition to the foregoing, (ii) (A) in the case of LBHI, LBHI Class 9B or (B) in the case of LBSF, LBSF Class 4B.

1.55    Excess Plan Adjustment Portion means, with respect to each Contributing Class and LBHI Class 9B and LBSF Class 4B, (a) if the Excess Plan Adjustment is equal to the Plan Adjustment, the portion of the Plan Adjustment contributed by such Contributing Class, LBHI Class 9B or LBSF Class 4B and (b) if the Excess Plan Adjustment is less than the Plan Adjustment, the portion of the Excess Plan Adjustment that bears the same relationship to the Excess Plan Adjustment as the portion of the Plan Adjustment contributed by such Contributing

1.123    Plan Trustee means any of the persons acting as trustee of the Plan Trust pursuant to Section 7.4 of the Plan.

1.124    Preferred Somerset means LB Preferred Somerset LLC.

1.125    Primary Claim means a Claim against a Primary Obligor for which a corresponding Guarantee Claim has been asserted.

1.126    Primary Obligor means an entity other than LBHI that is purportedly obligated or liable on a Claim with respect to which a Guarantee Claim has been asserted.

1.127    Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code or, to the extent applicable, 12 U.S.C. § 4617(b)(15).

1.128    Priority Tax Claim means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.129    Property of the Estate means all property of a Debtor pursuant to section 541 of the Bankruptcy Code.

1.130    Pro Rata Share means with respect to an Allowed Claim or Equity Interest (a) within the same Class, the proportion that an Allowed Claim or Equity Interest bears to the sum of all Allowed Claims and Disputed Claims or Allowed Equity Interests and Disputed Equity Interests within such Class, or (b) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims; *provided*, *however*, that Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Convenience Claims, Convenience Guarantee Claims and Section 510(b) Claims shall not be considered for purposes of "Pro Rata Share" among all Classes; *provided*, *further*, *however*, that only the following Claims shall be considered in the determination of "Pro Rata Share" among all Classes with respect to the following Distributions:

(i)    Available Cash in the case of LBHI:  Senior Unsecured Claims, Senior Affiliate Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, General Unsecured Claims, Affiliate Claims, Third-Party Guarantee Claims and Subordinated Claims.

(ii)    Available Cash in the case of a Subsidiary Debtor:  General Unsecured Claims and Affiliate Claims.

(iii)    LBSF Settlement Amount: General Unsecured Claims against LBSF other than Claims of any of the Racers Trusts.

(iv)    LBSF Additional Settlement Amount: (1) General Unsecured Claims against LBSF other than Claims of any of the Racers Trusts, and (2) Affiliate Claims against LBSF other than Claims of any of the Participating Debtors.

(a)    <u>Impairment and Voting</u>.  LBCC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBCC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCC Class 1 shall be paid by LBCC in Cash in full.

5.36    <u>LBCC Class 2 – Secured Claims against LBCC</u>.

(a)    <u>Impairment and Voting</u>.  LBCC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBCC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCC Class 2 shall be satisfied by, at the option of LBCC: (i) payment in Cash by LBCC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.37    <u>LBCC Class 3 – Convenience Claims against LBCC</u>.

(a)    <u>Impairment and Voting</u>.  LBCC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBCC Class 3 shall receive Cash from LBCC in an amount equal to .~~40~~49 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

5.38    <u>LBCC Class 4 – General Unsecured Claims against LBCC</u>.

(a)    <u>Impairment and Voting</u>.  LBCC Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBCC Class 4 shall receive from LBCC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCC Class 4.

(viii)    invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Litigation Claims, and any income earned thereon;

(ix)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(x)    administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) request, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) represent the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xii)    determine whether to create a Liquidating Trust for the assets of a Debtor or Debtor-Controlled Entity pursuant to Section 10.1 of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with Section 15.2 of the Plan;

(xiii)    pay statutory fees in accordance with Section 15.7 of the Plan; and

(xiv)    perform other duties and functions that are consistent with the implementation of the Plan.

(c)    ~~No Liability of Plan Administrator.  The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the~~ Indemnification of Plan Administrator.  Each of the Debtors shall indemnify and hold harmless LBHI solely in its capacity as the Plan Administrator for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence, willful misconduct or criminal conduct.

6.2    LAMCO.  At the discretion of the board of directors of LBHI following the Effective Date and subject to existing agreements, LAMCO may serve as asset manager for certain assets of each of the Debtors under the Plan.  Ownership and ultimate decision making authority with respect to each of the Debtor's assets after the Effective Date will be vested in the applicable Debtor.

6.3    Debtor Allocation Agreement.  The Debtor Allocation Agreement shall become effective on the Effective Date.  The Debtor Allocation Agreement shall, among other things, provide for an Allowed Administrative Expense Claim of LBSF against LBHI in the amount of

Guarantee Claim against LBHI in LBHI Class 9B, subject to the Racers Adjustment, in the amount of $1,947,735,000.  The Racers 2007-A Trust shall not receive aggregate Distributions on account of all such Allowed Claims in excess of the Allowed amount of its General Unsecured Claim against LCPI; *provided* that, to the extent the Allowed Claims of the Racers 2007-A Trust are satisfied in full in accordance with the foregoing and Section 8.13 of the Plan, LCPI or LBHI, as applicable, shall be subrogated to the Allowed Claim of the Racers 2007-A Trust against LBSF pursuant to Section 8.14 of the Plan.  All other Claims of the Racers 2007-A Trust and all Claims of the Racers MM Trust against the Debtors shall be disallowed and subject to Sections 13.4 and 13.5 of the Plan.

(h)    The Fenway Claim shall be Allowed against LCPI as General Unsecured Claims in LCPI Class 4B, subject to the Plan Adjustment, in the aggregate net amount of $230 million.

(i)    The Debtors shall apply the Structured Securities Valuation Methodologies to all Structured Securities Claims held by any PSA Creditor in determining the Allowed amount of such Claims.

(j)    Any settlement agreement entered into among any of the Debtors and any Creditor that is contained in the Plan Supplement is incorporated in the Plan and shall become effective in accordance with its terms.

6.6    Closing of Chapter 11 Case.  After the Chapter 11 Case of a Debtor has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.7    Indenture Trustee and Creditors' Committee Members Fees.  Subject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys fees) of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent accruedincurred and unpaid as ofby a Debtor prior to the ConfirmationEffective Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement upon application to and subject to approval of the Bankruptcy Court, and (ii) to the extent incurred after the ConfirmationEffective Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

## ARTICLE VII
## Corporate Governance

7.1    Corporate Form.  On the Effective Date, each of the Debtors shall maintain its current corporate form.

7.2    LBHI Board of Directors and Officers.

7.3     <u>Subsidiary Debtor Post-Effective Date Management</u>.

(a)     Following the Effective Date, the board of directors of LBSF and LCPI shall each consist of three (3) individuals as follows:

(i)     an individual who is a concurrently serving member of the LBHI board of directors that is selected by the LBHI board of directors;

(ii)     an individual who is a concurrently serving member of the LBHI board of directors that is selected by the LBHI board of directors and, in the case of LBSF or LCPI, acceptable to the Opco Plan Proponents who are PSA Creditors; and

(iii)     an individual who is selected by the individuals appointed pursuant to (i) and (ii) of this section and who is independent from LBHI, the members of the Director Selection Committee and, in the case of LBSF, LBSF, or in the case of LCPI, LCPI.

Each of the initial directors of LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  A director of LBSF and LCPI may be removed from office by Lehman ALI (as directed by LBHI) only for cause.  Upon the resignation, death, incapacity or removal for cause of a director of LBSF or LCPI, the election of a replacement director shall be determined by action of Lehman ALI (as directed by LBHI); *provided* that at all times the LBSF and LCPI boards of directors must be comprised of individuals that satisfy the requirements of <u>Section 7.3(a)</u> hereof.

(b)     Following the Effective Date, the respective boards of directors or managers, as applicable, of the Subsidiary Debtors other than LBSF and LCPI shall consist of one (1) individual who shall be a concurrently serving member of the LBHI board of directors.  With respect to a Subsidiary Debtor incorporated or formed under the laws of a jurisdiction outside of the United States, if the laws of such foreign jurisdiction require the appointment of more than one (1) director or manager to the board of directors or managers of such Subsidiary Debtor or of a director or manager that is not an individual concurrently serving as a member of the LBHI board of directors, such additional or alternative directors or managers shall be appointed by the LBHI board of directors.  Each of the initial directors or managers of the Subsidiary Debtors other than LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  Thereafter, LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall elect successors of the then-serving members of the boards or managers for such Subsidiary Debtor at each annual meeting or upon the removal or resignation of such individuals.  LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall also have the power to act by written consent to remove any director or manager of such Subsidiary Debtor at any time with or without cause.  Notwithstanding the foregoing, any Subsidiary Debtor that is a limited partnership shall continue to be managed by its general partner.

such Debtor's Available Cash) exceeds the amount of Available Cash necessary to be retained pursuant to this section on account of Disputed Claims against such Debtor, the Plan Administrator may, subject to Bankruptcy Court approval, on proper notice to all holders of Disputed Claims against such Debtor, release such Available Cash for Distribution to holders of Allowed Claims and retain, in lieu thereof, such Debtor's non-Cash assets to satisfy its Disputed Claims if such Claims become Allowed Claims.

8.5    <u>Minimum Distribution and Manner of Payment</u>.  Other than with respect to a Convenience Claim or Convenience Guarantee Claim, no payment of Cash of less than $500 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor unless a request therefor is made in writing to the Plan Administrator.  Any payment of Cash made pursuant to the Plan may be made at the option of the Plan Administrator either by check or by wire transfer.

8.6    <u>Distributions Free and Clear</u>.  Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including the Debtors or the Plan Administrator shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

8.7    <u>Delivery of Distributions and Undeliverable Distributions</u>.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of Claim filed by a holder of an Allowed Claim or, (b) in another writing notifying the Plan Administrator (at the addresses set forth in <u>Section 15.12</u>) or the Court appointed claims agent of a change of address or (c) in the notice filed with the Bankruptcy Court in accordance with Bankruptcy Rule 3001(e) to the extent a Claim has been transferred.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder at its then-current address, without interest.  All demands for undeliverable Distributions shall be made on or before six (6) months after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the applicable Debtor as Available Cash for Distributions to the holders of Allowed Claims, and any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against such Debtor or its respective property.

8.8    <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator or the Liquidating Trustee (as applicable) shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as distributed to such holders.  Notwithstanding the above, each holder of an Allowed Claim or Liquidating Trust Interest that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Plan Administrator or the Liquidating Trustee (as applicable), has the right, but not the obligation, to not make a

Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Plan Administrator or the Liquidating Trustee (as applicable), may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim or Liquidating Trust Interest provide a completed Form W-8, W-9 and/or other tax information deemed necessary in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable to each such holder, provided that if the Plan Administrator or Liquidating Trustee (as applicable) makes such a request and the holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the applicable Debtor or Liquidating Trust and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against such Debtor, Liquidating Trust, or its respective property.

8.9    Time Bar to Cash Payment Rights.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90 day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor and its  property.

8.10    Setoffs and Recoupment.  Except as otherwise agreed by ~~the Debtors~~a Debtor, any Debtor may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtor may have against the claimant; *provided, however*, that the claimant ~~is provided~~shall be served with written notice of the proposed setoff or recoupment at least ~~ten (10) Business Days prior thereto~~twenty-eight (28) days prior to exercising any asserted setoff or recoupment right, and, if such claimant ~~files~~serves a written objection to such ~~proposed setoff or recoupment,~~asserted setoff or recoupment on or before twenty-eight (28) days of receipt of such written notice, (i) the objection shall be deemed to initiate a contested matter governed by, *inter alia*, Bankruptcy Rule 9014 and Local Rules 9014-1 and 9014-2, (ii) nothing herein shall affect the respective burden of each party in connection with such contested matter, and (iii) the Debtor shall not proceed with the asserted setoff or recoupment absent the withdrawal of such objection or the entry of a Final Order overruling such objection but the Debtor may withhold such payment pending resolution of such objection; *provided, further~~, however~~,* that neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

8.11    Claims Register.  The register of Claims maintained by the Debtors shall remain open after the Effective Date and the Debtors and Plan Administrator shall recognize any transfer of Claims at any time thereafter ~~other than~~, *provided* that for purposes of each Distribution, the Debtors and the Plan Administrator will not recognize any transfer during the period commencing ~~fourteen~~thirty (~~14~~30) calendar days prior to ~~and concluding fourteen (14) calendar days after~~ a Distribution Date.  Except as otherwise provided in the Plan, any transfer of a Claim, whether occurring prior to or after the Confirmation Date, shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be

by way of subrogation, disgorgement or otherwise, shall be treated as Available Cash of LBHI and distributed accordingly.

       8.14   Rights of Reimbursement.

       (a)   Except as otherwise agreed by the Debtors, to the extent that a Debtor now has or becomes legally entitled to be subrogated to the rights of any Creditor on account of Distributions made to such Creditor, including, without limitation, on account of any Distributions made to received by holders of Allowed Guarantee Claims that are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall be deemed to have consented to the subrogation of its right against any third-party, including, without limitation, a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution, or (ii) the Debtor shall have all rights, title and power as subrogee of the Creditor against any such third-party, including, without limitation, a Primary Obligor, to the fullest extent permitted by applicable law.

       (b)   Except as otherwise agreed by the Debtors, the Debtors' rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any other similar right, including, without limitation, any right to setoff with respect to any of the foregoing, against any entity, including, without limitation, a Primary Obligor, on account of Distributions made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law.

       8.15   Distributions to Non-Controlled Affiliates.  Except as otherwise agreed by the Debtors and a Non-Controlled Affiliate or with respect to LBT or LBSN, the Plan Administrator may determine, in its sole discretion, to withhold all or a portion of a Distribution to a Non-Controlled Affiliate if such Distribution would be distributed by such Non-Controlled Affiliate to satisfy a Claim of a different Non-Controlled Affiliate against which a Debtor has a Claim but the latter Non-Controlled Affiliate has refused to honor such Claim of a Debtor without subordination, reduction or offset unless (a) otherwise agreed to by the Plan Administrator or (b) the priority and amount of a Debtor's Claim against the latter Non-Controlled Affiliate has been determined by Final Order.

## ARTICLE IX
## Procedures for Treating Disputed Claims

       9.1   Objections.  The Debtors' rights to object to, oppose and defend against all Claims on any basis are fully preserved.  Notwithstanding that a Primary Claim is Allowed against a Primary Obligor, the Debtors reserve the right to object to, oppose and defend against all Guarantee Claims.  As of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator, which shall consult with the applicable Debtor regarding the same.  Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is 2 years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

10.3    Liquidating Trust Assets.    Each Liquidating Trust shall consist of Liquidating Trust Assets.  After the creation of a Liquidating Trust pursuant to Section 10.1 of the Plan, the Plan Administrator shall transfer all of the Liquidating Trust Assets to a Liquidating Trust. Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in a Liquidating Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

10.4    Administration of the Liquidating Trust.    Each Liquidating Trust shall be administered by a Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

10.5    Liquidating Trustee's Tax Power for Debtors.    A Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtor.

10.6    Cash Investments.    A Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, *however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

10.7    Distribution of Liquidating Trust Interests.    A Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a semi-annual basis, all Available Cash (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Section 10.7), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonable incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this Section 10.7 of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

10.8    Federal Income Tax Treatment of Liquidating Trust.    ~~For~~Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtors, a Liquidating Trustee and Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets

(subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests.  Accordingly, except in the event of contrary definitive guidance, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims).   The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.  For the purpose of this Section 10.8, the terms "party" and "Liquidating Trust Beneficiary" shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

10.9    Tax Reporting.

(a)    A Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section 10.9(a).  A Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)    Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets allocable Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)    As soon as reasonably practicable after Liquidating Trust Assets are transferred to a Liquidating Trust, a Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(D) that is unrelated to the Debtors, such Liquidating Trust, and any insider of such Liquidating Trustee, and (iii) dissolve such Liquidating Trust.

# ARTICLE XI
## Treatment of Executory Contracts and Unexpired Leases

11.1    Executory Contracts and Unexpired Leases.    Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any prepetition executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; *provided, however*, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any prepetition executory contract or unexpired lease therefrom or add any prepetition executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed.    The Debtors shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts and unexpired leases affected thereby.    The listing of or failure to list a document in the Plan Supplement shall not constitute an admission by the Debtors that such document is or is not an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

11.2    Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases.    Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.    To the extent any provision of an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

11.3    Cure of Defaults.    Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.    All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

11.4    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.    Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court and served upon the relevant Debtor no later than forty-five (45) days after the later of (a)

successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

      13.3    **Release and Exculpation.  On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released (a) the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the negotiation, formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreements or any contract, instrument, document or other agreement related thereto and (b) the PSA Creditors from, and none of the PSA Creditors shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the negotiation, formulation, dissemination or confirmation, consummation or administration of the Plan, or any other act or omission in connection with the Plan, the Disclosure Statement, the Plan Support Agreements, including the filing of any alternative chapter 11 plan and any determination to not pursue solicitation or confirmation of such alternative plan, or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party or PSA Creditor for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, (ii) nothing herein shall affect or release any obligation of the Debtors under the Plan, and (iii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the Debtors, the Creditors' Committee or the PSA Creditors to their respective clients pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.**

      13.4    **Discharge.  Except as expressly provided in the Plan, upon the date that all Distributions under the Plan have been made, (a) each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and (b) all such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Equity Interest in the Debtors.**

      13.5    **Injunction.  Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by a Creditor and the Plan Administrator (on behalf of a Debtor), all entities who have held, hold or may hold**

**Claims against or Equity Interests in any or all of the Debtors ~~and other parties in interest~~ (whether proof of such Claims or Equity Interests has been filed or not) and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims and Causes of Action ~~which~~that will be or are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan.**

    13.6   <u>United States Government</u>.  As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall: (a) discharge, release or otherwise preclude:  (a~~i~~) any liability of the Debtors arising on or after the ~~Effective Date; (b)~~Confirmation Date (defined for purposes of this section as the date the Confirmation Order becomes final and non-appealable), (ii) with respect to the Debtors, any liability that is not a Claim against a Debtor:, (~~c~~iii) any valid right of setoff or recoupment:, or (~~d~~iv) any liability of the Debtors arising under environmental or criminal laws as the owner or operator of property that such Debtor owns after the ~~Effective Date~~Confirmation Date (defined for purposes of this section as the date the Confirmation Order becomes final and non-appealable); or (b) limit or expand the scope of the discharge to which the Debtors are entitled under the Bankruptcy Code.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

    13.7   <u>Terms of Injunctions or Stays</u>.  Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

    13.8   <u>Retention of Litigation Claims and Reservation of Rights</u>.  Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation, (a) any and all Claims against any person or entity,

to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under any tax sharing agreement among the Debtors and their Affiliates (including the tax sharing agreement among the Debtors and LBI based on their regular and consistent course of conduct over many years), (c) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff or other legal or equitable defense and remedies.  The Debtors shall have, retain, reserve, and may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the Chapter 11 Cases had not been commenced.

13.9    Barclays Sale Order.  Nothing contained in the Plan, the Disclosure Statement or the Confirmation Order constitutes or shall be construed as any modification or amendment to the Barclays Sale Order and the rights and defenses of each of the Debtors, the SIPA Trustee (on behalf of LBI), Barclays Bank PLC and Barclays Capital Inc., with respect to any litigation, adversary proceeding, contested matter, claims adjudication, appeal or other dispute against the other are fully preserved, including, without limitation, any rights, defenses, counterclaims and/or cross-claims asserted in connection with or related to the Sale Order.

13.10    No Waiver of Rights and Defenses.  Except as otherwise agreed, the provisions of the Plan shall not enjoin, impair, prejudice, have any preclusive effect upon, or otherwise affect (A) the rights of any Creditor to (x) effectuate a recoupment pursuant to common law or setoff pursuant to common law or otherwise in accordance with (a) section 553 and (b) sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560 or 561 of the Bankruptcy Code (subject to the Debtors' rights to contest the validity of such asserted right of setoff or recoupment or the applicability of any of the foregoing sections of the Bankruptcy Code) or (y) continue to assert the validity of a setoff or recoupment previously taken by such Creditor or to seek authority from the Bankruptcy Court to exercise a right of setoff or recoupment (subject in each case to the Debtors' right to contest the validity of any such setoff or recoupment), or (B) any legal or equitable defense, including any defensive right of setoff or recoupment, that has been, or may be asserted, by any entity in response to a Litigation Claim, Avoidance Action of a Debtor or objections to Claims against a Debtor.

## ARTICLE XIV
## Retention of Jurisdiction

14.1    Retention of Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(b)　　To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases, in each case in accordance with applicable law;

(c)　　To hear and determine any objection to or motion to estimate Claims;

(d)　　To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)　　To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(f)　　To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)　　To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)　　To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any agreements or documents incorporated in or contemplated by the Plan, including, without limitation, Sections 6.4, 6.5, 13.3, 13.4 and 13.5 of the Plan;

(i)　　To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce or to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)　　To hear and determine any actions brought against the Plan Administrator in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan;

(k)　　To hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located or to determine or declare entitlement to such assets and property, including through actions of interpleader or in the nature of interpleader involving the same; *provided*, *however*, that this provision shall not limit the jurisdiction of a foreign court or tribunal overseeing a Foreign Proceeding;

(l)　　To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns of the Debtors and of any Liquidating Trusts for any and all taxable periods ending after the Commencement Date through the Closing Date;

and/or Debtor Controlled Entities to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan.  In the event that the Plan Administrator determines to issue New Securities, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan.  The New Securities shall be valued as of the date of the issuance and the holders of Allowed Claims or Equity Interests receiving such New Securities shall be deemed satisfied to the extent of the value of the New Securities.

15.3    <u>Exemption from Securities Laws</u>.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of any New Securities or Liquidating Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

15.4    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition <u>or acquisition </u>of assets contemplated by the Plan (including by a Liquidating Trust)<u>, in each case whether as a result of sale, assignment, foreclosure or deed in lieu of foreclosure</u>, shall not be subject to any stamp, real estate transfer, mortgage recording, ~~sales, use~~ or other similar tax.

15.5    <u>Plan Supplement</u>.  The Debtor Allocation Agreement, the amended certificate and by-laws of the Debtors (if any) in accordance with <u>Section 7.7</u>, the Plan Trust Agreement, a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with <u>Section 11.1</u>, any settlement agreement among any of the Debtors and a Non-Controlled Affiliate in accordance with <u>Section 6.5(b)(~~vi~~vii)</u> and any settlement agreement among any of the Debtors and a Creditor in accordance with <u>Section 6.5(j)</u> shall be contained in the Plan Supplement that is filed with the Clerk of the Bankruptcy Court at least ten (10) days prior to the Voting Deadline.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at www.lehman-docket.com or by request to the Debtors in accordance with <u>Section 15.12</u> of the Plan.

15.6    <u>Post-Effective Date Reporting</u>.  Beginning the first month-end and first quarter-end following the Effective Date and until the Closing Date, the Plan Administrator shall file with the Bankruptcy Court:

(a)    within thirty (30) days after the end of each month, a monthly operating report for such month presented in a format and containing information similar to that used by

effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.11  <u>Transactions on Business Days</u>.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

15.12  <u>Notices</u>.  Any notices to or requests of the Debtors by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

>If to any Debtor:
>
>c/o Lehman Brothers Holdings Inc.
>1271 Avenue of the Americas
>New York, ~~NY~~ New York 10020
>Attention:      Bryan Marsal
>~~–~~ and John K. Suckow
>
>with a copy to:
>
>Weil, Gotshal & Manges LLP
>767 Fifth Avenue
>New York, New York  10153
>Attention: Harvey R. Miller and Lori R. Fife
>Re:  Lehman Brothers

15.13  <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.14  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and

construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

15.15    Headings.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

15.16    Exhibits.  All exhibits and schedules to the Plan as well as the Plan Supplement and any exhibits or schedules thereto are incorporated into and are a part of the Plan as if set forth in full herein.

15.17    Successors and Assigns.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

Dated:      New York, New York
            August 31,November 29, 2011

                    LEHMAN BROTHERS HOLDINGS INC.


                    By:    /s/ John Suckow
                           Name:  John Suckow
                           Title:  President and Chief Operating Officer


                    LB 745 LLC


                    By:    /s/ John Suckow
                           Name:  John Suckow
                           Title:  President and Chief Operating Officer


                    PAMI STATLER ARMS LLC


                    By:    /s/ John Suckow
                           Name:  John Suckow
                           Title:  Authorized Signatory


                    LEHMAN BROTHERS COMMODITY SERVICES INC.


                    By:    /s/ John Suckow
                           Name:  John Suckow
                           Title:  President and Chief Operating Officer

## Schedule 1

### (Plan Adjustment Percentages)

#### LBHI

| Class | Claims | Plan Adjustment Percentage |
|---|---|---|
| 5 | Senior Third-Party Guarantee Claims | 20% |
| 9A | Third-Party Guarantee Claims other than those of the Racers Trusts | 20% |

#### LCPI

| Class | Claims | Plan Adjustment Percentage |
|---|---|---|
| 4A | General Unsecured Claims other than those of Designated Entities against LCPI | 14% |
| 4B | General Unsecured Claims of Designated Entities against LCPI | 20% |
| 5B | Affiliate Claims of Participating Subsidiary Debtors against LCPI | 20% |
| 5C | Affiliate Claims other than those of Participating Debtors against LCPI | 14% |

#### LBCS

| Class | Claims | Plan Adjustment Percentage |
|---|---|---|
| 4 | General Unsecured Claims against LBCS | 14% |
| 5B | Affiliate Claims of Participating Subsidiary Debtors against LBCS | 20% |
| 5C | Affiliate Claims other than those of Participating Debtors against LBCS | 14% |

**<u>Schedule 2</u>**

**(Debtors' Claims Schedule)**

**Schedule 3**

**(Bankhaus Settlement Agreement)**

**Schedule 4**
**(PSA Creditors)**

1. Angelo, Gordon & Co., L.P.
2. Bank of America, N.A.
3. Bank of America, N.A., as successor in interest to Merrill Lynch Bank USA
4. ~~2.~~ Barclays Bank PLC
5. ~~3.~~ Barclays Bank S.A.
6. ~~4.~~ BNP Paribas
7. Bundesverband deutscher Banken e.V.
8. ~~5.~~ Canyon Capital Advisors LLC
9. ~~6.~~ CarVal Investors UK Limited
10. ~~7.~~ Contrarian Capital Management LLC
11. ~~8.~~ County of San Mateo
12. ~~9.~~ Credit Suisse ~~International~~ AG
13. ~~10.~~ Credit Suisse Loan Funding LLC
14. ~~11.~~ Credit Suisse Securities (Europe) Limited
15. ~~12.~~ Cyrus Capital Partners, L.P.
16. ~~13.~~ Davidson Kempner Capital Management LLC
17. DB Energy Trading LLC
18. ~~14.~~ D. E. Shaw Claims SPV, L.L.C.
19. ~~15.~~ D. E. Shaw Composite Portfolios, L.L.C.
20. ~~16.~~ D. E. Shaw Laminar Portfolios, L.L.C.
21. ~~17.~~ D. E. Shaw Oculus Portfolios, L.L.C.
22. ~~18.~~ D. E. Shaw Valence Portfolios, L.L.C.
~~19. DB Energy Trading LLC~~
23. ~~20.~~ Deutsche Bank AG
24. Deutsche Bundesbank
25. Elliott Associates, L.P.
26. Elliott International, L.P.
27. ~~21.~~ Elliott Management Corporation ~~(also Elliott Associates, L.P.Elliott International, L.P. The Liverpool Limited Partnership)~~
28. Entschädigungseinrichtung deutscher Banken GmbH
29. ~~23.~~ Fir Tree, Inc.
30. ~~24.~~ GLG Ore Hill LLC
31. ~~25.~~ Goldentree Asset Management, LP
32. ~~26.~~ Goldman Sachs Bank USA
33. ~~27.~~ Goldman Sachs International
34. ~~28.~~ Gruss Asset Management, L.P., investment advisor to Gruss Global Investors Master Fund, Ltd. and Gruss Global Investors Master Fund (Enhanced), Ltd.
35. ~~29.~~ Hayman Capital Master Fund, L.P.
36. ~~30.~~ ~~Honk~~ Hong Kong Lehman Entities In Liquidation
37. ~~31.~~ King Street Capital Management GP, L.L.C.
38. ~~32.~~ Knighthead Capital Management, L.L.C.
39. ~~33.~~ Lehman Brothers Bankhaus AG (in Insolvenz)
40. Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*)
41. Lehman Brothers (Luxembourg) S.A. (in liquidation)
42. Lehman Brothers Securities N.V.
43. ~~34.~~ Lehman Brothers Treasury Co. B.V.

44.  Lehman Japan Entities[1]
45.  35. Lehman Singapore Entities
46.  Lehman UK Entities[2]
47.  Merrill Lynch Bank & Trust Co. FSB
48.  Merrill Lynch Capital Services Inc.
49.  Merrill Lynch Commodities (Europe) Ltd
50.  Merrill Lynch Commodities Inc.
51.  Merrill Lynch International
52.  Merrill Lynch International Bank Ltd.
53.  36. Morgan Stanley & Co. International PLC
54.  37. Morgan Stanley Capital Group Inc.
55.  38. Morgan Stanley Capital Services LLC
56.  39. Mount Kellett Master Fund II, L.P.
57.  40. Oak Tree Capital Management, L.P.
58.  41. Och-Ziff Capital Management Group LLC
59.  42. Paulson & Co. Inc.
60.  43. Silver Point Capital, L.P.
61.  44. Societe Generale
62.  45. Societe Generale Asset Management Banque
63.  46. Societe Generale Bank and Trust
64.  47. State of California Public Employees' Retirement System
65.  48. State Street Bank and Trust Company
66.  49. Taconic Capital Advisors L.P.
67.  50. The Baupost Group, L.L.C.
68.  The Liverpool Limited Partnership
69.  51. The Royal Bank of Scotland plc
70.  52. UBS AG
71.  Vallejo Sanitation and Flood Control District
72.  53. Varde Partners, L.P.

[1] Hercules K.K., Lehman Brothers Commercial Mortgage K.K., Lehman Brothers Finance (Japan) Inc., Lehman Brothers Holdings Japan Inc., Lehman Brothers Japan Inc., Lehman Brothers Real Estate Limited, Sunrise Finance Co. Ltd.
[2] Lehman Brothers International (Europe); Lehman Brothers Limited; Lehman Brothers Holdings PLC; LB UK Re Holdings Limited; Storm Funding Limited; Mable Commercial Funding Limited; Lehman Brothers Europe Limited; Lehman Brothers UK Holdings Limited; LB UK Financing Ltd; LB SF No. 1; Cherry Tree Mortgages Limited; Lehman Brothers Lease & Finance No. 1 Limited; Zestdew Limited; Monaco NPL (No. 1) Limited; Lehman Commercial Mortgage Conduit Limited; LB RE Financing No. 3 Limited; Lehman Brothers (PTG) Limited; Eldon Street Holdings Limited; LB Holdings Intermediate 2 Limited; and Thayer Properties Limited (each in administration). Eldon Street (Cube) Limited; Eldon Street (Raven) Limited; Lehman Brothers Equity (Nominees Number 7) Limited; Platform Home Mortgage Securities No. 4 Limited; Platform Commercial Mortgage Limited; Lehman Brothers (Indonesia) Limited; Grace Hotels Limited; LBO Investments Limited; LBQ Funding (UK); LB Lomond Investments (each in liquidation). Acenden Limited (f/k/a Capstone Mortgage Services Limited); Blue I Real Estate Limited; Eldon Street (Birchin) Limited; Eldon Street (Colbert Orco) Limited; Eldon Street (Fidenza) Limited; Eldon Street (Harley) Limited; Eldon Street (Jefferson) Limited; Harley Property Ventures Limited; LB Holdings Intermediate 1 Limited; LB SF Warehouse Limited; LB Yellow (No. 1) Limited; MBAM Investor Limited; Myra Sarl; Parkmetro Limited; Preferred Group Limited; Preferred Holdings Limited; Preferred Mortgages Limited; Resetfan Limited; SM Funding No. 1 Limited; Southern Pacific Funding 3 Ltd.; Southern Pacific Mortgage Ltd.; Southern Pacific Personal Loans Limited; Southern Pacific Residuals 4 Limited; Stepstone Mortgage Funding Limited; Thayer Group Limited (in liquidation); Thayer Properties (Jersey) Limited (in liquidation); Yellow Real Estate Limited.

73. 54. York Capital Management Global Advisors, LLC

**Schedule 5**

**(Hong Kong Settlement Agreement)**

**Schedule 6**

**(LBT Settlement Agreement)**

**Schedule 7**

**(Singapore Settlement Agreement)**