executed and delivered this Agreement, each Confirmation and any Credit Support Document to which it is a party.

(i) **Eligible Contract Participant**. It is an "eligible contract participant" within the meaning of Section 1a(12) of the Commodity Exchange Act, as amended."

(h)   *Acknowledgments*. Each party acknowledges that:

(i)   the proprietary trading and other activities and transactions of the other party and its Affiliates, including risk management transactions entered into or to be entered into in connection with, or in anticipation of, the establishment, maintenance or termination of a particular Transaction, may affect the level of a market price, rate or index underlying a Transaction, the price and terms on which such other party or other dealers are willing to enter into or unwind or terminate a Transaction and the valuations provided by such other party;

(ii)   the "indicative" or "midmarket" valuations of a Transaction provided to it by the other party from time to time may not represent (1) the price at which a new Transaction may be entered into, (2) the price at which the Transaction may be liquidated or unwound, (3) the price at which the Transaction is or would be carried on such other party's books; (4) the price at which a similar Transaction might be available from another dealer in the market or (5) the calculation or estimate of an amount that would be payable following the designation of an Early Termination Date under Section 6(e) or otherwise of this Agreement;

(iii)   (1) absent an express written agreement to the contrary, neither party has undertaken an obligation to unwind or terminate a Transaction prior to its scheduled termination date and (2) the provision by a party of a valuation or indicative unwind price does not constitute an undertaking to unwind or terminate any Transaction at that price unless the party providing such price expressly so indicates in connection with the provision of such price;

(iv)   (1) neither party has undertaken an obligation to quote a price or terms for entering into or unwinding or terminating a Transaction prior to its scheduled termination date, (2) if a party provides such a quote, the price or other terms provided may not be the most favorable price or terms available in the market and (3) except as expressly agreed in writing, the price and terms on which a Transaction is entered into or unwound or terminated have been or will be individually negotiated and no representations or warranties are given with respect to such price or terms;

(v)   the parties are dealing at arm's-length and neither party is acting as a fiduciary or financial, investment, trading or other adviser for the other party;

(vi)   it assumes sole responsibility for (1) evaluating and understanding all of the terms, conditions and risks (economic and otherwise) of this Agreement, any Credit Support Document, each Transaction and any other documentation relating to this Agreement and (2) determining (x) the suitability or appropriateness thereof in light of its circumstances, (y) the extent to which it is necessary or appropriate to consult with its

15

own legal, regulatory, tax, business, investment, financial, and accounting advisers or to obtain additional information or analyses, and (z) whether the rates, prices or amounts and other terms of each Transaction and the indicative quotations (if any) provided by the other party are acceptable to it in light of relevant factors, including rates, prices, amounts or other terms available in the relevant market; and

(vii)    each party is entering into, and determining its responsibilities in connection with, this Agreement, any Credit Support Document and each Transaction in reliance upon the accuracy of the representations and acknowledgments of the other party contained in this Agreement, any Credit Support Document, each Confirmation and any other documentation relating to this Agreement.

(i)    *Section 6(e)(iii)*. Section 6(e)(iii) of this Agreement shall be amended to include the following sentences after the existing sentence:

"In addition to and notwithstanding anything to the contrary in the preceding sentence of this Section 6(e)(iii), if an Early Termination Date is deemed to have occurred under Section 6(a) as a result of Automatic Early Termination, the Defaulting Party hereby agrees to indemnify, to the extent permitted by law, the Non-Defaulting Party on demand against all loss or damage that the Non-Defaulting Party may sustain or incur in respect of each Transaction as a result of movement in interest rates or market quotations between the Early Termination Date and the date (the "Determination Date") upon which the Non-Defaulting Party obtains the information confirming the existence of the Event of Default leading to the deemed Early Termination Date under Section 6(a) that has been derived from reasonably reliable source of information, including publicly available information, such as Telerate, Reuters, Financial Times and The Wall Street Journal.

If the Non-Defaulting Party shall determine that it would gain or benefit from the movement in interest rates or market quotations between the Early Termination Date and the Determination Date, the amount of such gain or benefit shall be deducted from the amount payable by the Defaulting Party pursuant to Section 6(e)(i)(4).

The Determination Date shall be a date not later than the date upon which creditors generally of the Defaulting Party are notified of the occurrence of the Event of Default leading to the deemed Early Termination Date."

(k)    *Confirmation Procedures*. For each Transaction that Party A and Party B enter into hereunder, Party A shall promptly send to Party B a Confirmation in the form of Exhibit A hereto setting forth the terms of such Transaction. Party B shall execute and return the Confirmation to Party A or request correction of any error within five Business Days of receipt. Failure of Party B to respond within such period shall not affect the validity or enforceability of such Transaction and shall be deemed to be an affirmation and acceptance of such terms.

NYK 944741-7.071370.0011

The parties executing this Schedule have executed the Master Agreement and have agreed as to the contents of this Schedule.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:   T. Courtney Jenkins
Title:   Vice President

████████████████████████████████

By: _____
Name:
Title:

NYK 944741-7.071370.0011

The parties executing this Schedule have executed the Master Agreement and have agreed as to the contents of this Schedule.

                                LEHMAN BROTHERS SPECIAL FINANCING INC.

                                By:_____
                                Name:
                                Title:

                                [REDACTED]

                                By:[REDACTED]
                                Name:[REDACTED]
                                Title:[REDACTED]

17

EXHIBIT A to Schedule

GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A") and ▮▮▮▮▮ ("Party B") have entered into a Master Agreement dated as of May 4, 2005 (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defense of payment or statute of limitations, neither of which is waived) provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) This Guarantee shall remain in full force and effect until such time as Party B shall receive written notice of termination. Termination of this Guarantee shall not affect Guarantor's liability hereunder as to obligations incurred or arising out of Transactions entered into prior to the termination hereof.

Exhibit A
Page 1

NYK 944741-7.071370.0011

(e)  Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Master Agreement affecting Party A or Guarantor.

(f)  Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Corporate Counsel, 399 Park Avenue, 11th Floor, New York, NY 10022 with a copy to Lehman Brothers Special Financing Inc., Attention: Transaction Management – Municipal Financial Products, 745 Seventh Avenue, New York, NY 10019.

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.

By:_____
Name:
Title:

EXHIBIT B to Schedule

[Form of Opinion of Counsel for
Lehman Brothers Special Financing Inc. and
Lehman Brothers Holdings Inc.]

May 4, 2005



Ladies and Gentlemen:

I have acted as counsel to Lehman Brothers Special Financing Inc., a Delaware corporation ("Party A") and Lehman Brothers Holdings Inc,. a Delaware corporation ("Guarantor"), and am familiar with matters pertaining to the execution and delivery of the Master Agreement (the "Master Agreement") dated as of May 4, 2005 between Party A and Raleigh-Durham Airport Authority and the guarantee of Guarantor (the "Guarantee") delivered in connection with the Master Agreement.

In connection with this opinion, I have examined, or have had examined on my behalf, an executed copy of the Master Agreement and the Guarantee, certificates and statements of public officials and officers of Party A and Guarantor and such other agreements, instruments, documents and records as I have deemed necessary or appropriate for the purposes of this opinion.

Except as expressly set forth herein, no independent investigation (including, without limitation, conducting any review, search or investigation of any public files, records or dockets) has been undertaken to determine the existence or absence of the facts that are material to my opinions, and no inference as to my knowledge concerning such facts should be made.

When used herein the phrase "to my knowledge" means to my actual knowledge without independent investigation.

References in this letter to "Applicable Laws" are to those laws, rules and regulations of the State of New York and the United States of America which, in my experience, are normally applicable to transactions of the type contemplated by the Master Agreement and the Guarantee. References in this letter to "Governmental Authorities" are to executive, legislative, judicial, administrative or regulatory bodies of the State of New York and the United States of America. References in this letter to "Governmental Approval" are to any consent, approval, license, authorization or validation of, or filing, recording or registration with, any Governmental Authority pursuant to Applicable Laws.

Exhibit B
Page 1

NYK 944741-7.071370.0011

Based on the foregoing but subject to the assumptions, exceptions, qualifications and limitations hereinafter expressed, I am of the opinion that:

(a) [Based on a certificate of the Secretary of State of Delaware dated as of _____, ___, each] Each of Party A and Guarantor is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Delaware.

(b) The execution, delivery and performance of the Master Agreement in the case of Party A, and the Guarantee, in the case of Guarantor, are within its corporate power, have been duly authorized by all corporate action and do not conflict with any provision of its certificate of incorporation or by-laws.

(c) The Master Agreement, in the case of Party A, and the Guarantee, in the case of Guarantor, have been duly executed and delivered and each constitutes a legal, valid and binding obligation, enforceable against it in accordance with its respective terms.

(d) To the best of my knowledge, no Governmental Authority is required in connection with the execution, delivery and performance of the Master Agreement in the case of Party A, or the Guarantee, in the case of Guarantor, except those that have been obtained and, to my knowledge, are in effect.

The foregoing opinions are subject to the following assumptions, exceptions, qualifications and limitations:

A. My opinion in paragraph 3 above is subject: (i) bankruptcy, insolvency, reorganization, receivership, moratorium or similar laws affecting creditors' rights generally (including, without limitation, the effect of statutory or other laws regarding fraudulent or other similar transfers or conveyances); (ii) general principles of equity, regardless of whether enforceability is considered in a proceeding in equity or at law; (iii) laws and considerations of public policy that may limit the enforceability of provisions (a) regarding indemnification and contribution rights and obligations, (b) regarding the waiver or limitation of rights to trial by jury, oral amendments to written agreements or rights of setoff, (c) relating to submission to jurisdiction, venue or service of process, and (d) purporting to prohibit or restrict, or require the consent of the "account debtor" (as defined in Section 9-102 of the Uniform Commercial Code as in effect in the State of New York (the "NYUCC")) for, the creation, perfection or enforcement of a security interest in "accounts" or "general intangibles" (in each case, as defined in Section 9-102 of the NYUCC).

B. I am a member of the Bar of the State of New York and render no opinion on the laws of any jurisdiction other than the laws of the State of New York, the federal laws of the United States of America and the General Corporation Law of the State of Delaware. Except as described, I have not examined, or had examined on my behalf, and I do not express any opinion with respect to, Delaware law.

C. My opinions are limited to the present laws and to the facts as they presently exist, and no opinion is to be inferred or implied beyond the matters expressly so stated. I assume no obligation to revise or supplement this opinion should the present laws of the

jurisdictions referred to in paragraph B above be changed by legislative action, judicial decision or otherwise.

   D.  This letter is rendered solely to you solely for your benefit in connection with the Master Agreement and the Guarantee and the transactions related thereto and may not be relied upon by any other person, entity or agency or by you in any other context or for any other purpose. This letter may not be circulated, used or quoted in whole or in part, nor may copies thereof be furnished or delivered to any other person, without the prior written consent of Lehman Brothers Holdings Inc., except that you may furnish copies hereof (i) to your independent auditors and attorneys, (ii) to any United States, state or local authority having jurisdiction over you or over Party A or Guarantor, (iii) pursuant to the order of any legal process of any court of competent jurisdiction or any governmental agency, and (iv) in connection with any legal action arising out of the Master Agreement or the Guarantee.

   E.  I have assumed with your permission (i) the genuineness of all signatures by each party other than Party A or Guarantor, (ii) the authenticity of documents submitted to me as originals and the conformity to authentic original documents of all documents submitted to me as copies, (iii) the accuracy of the matters set forth in the documents, agreements and instruments I reviewed, (iv) that each party other than Party A and Guarantor is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, (v) the due execution and delivery, pursuant to due authorization, of the Master Agreement by each party other than Party A, and (vi) that the Master Agreement is the legal, valid, binding and enforceable obligation of each party other than Party A, enforceable against each such party in accordance with its terms.

   F.  My opinion in paragraph 3 is subject to the qualification that certain provisions contained in the Agreement and the Guarantee may not be enforceable, but such unenforceability will not render the Agreement or the Guarantee invalid as a whole or substantially interfere with the practical realization of the principal benefits provided thereby.

   The foregoing opinions are given on the express understanding that the undersigned is an officer of Lehman Brothers Inc. and shall in no event incur any personal liability in connection with said opinions.

            Very truly yours,

EXHIBIT C to Schedule

[Form of Opinion of Counsel to Party B]

May 4, 2005

Lehman Brothers Special Financing Inc.
New York, NY

Lehman Brothers Holdings Inc.
New York, NY

Ladies and Gentlemen:

███████████████████████████████████████████ a _____ of the State of North Carolina ("Party B") in connection with the execution and delivery of the Master Agreement, dated as of May 4, 2005 (the "Master Agreement"), between Lehman Brothers Special Financing Inc. ("Party A") and Party B, and the Confirmation(s), dated May 4, 2005 (the "Initial Confirmation(s)"), each between Party A and Party B. The Master Agreement is to be supplemented by additional confirmations of Transactions to be entered into by Party A and Party B from time to time (each an "Additional Confirmation") and the Master Agreement together with the Initial Confirmation(s) and all such Additional Confirmations shall constitute one agreement.

In connection with this opinion, we have examined executed copies of the Master Agreement and the Initial Confirmation(s), and such documents and records of Party B, certificates of public officials and officers of Party B and such other documents as we have deemed necessary or appropriate for the purposes of this opinion. In such opinion, we have assumed the genuineness of all the signatures, the authenticity of all documents submitted to us as originals and the conformity to authentic original documents of all documents submitted to us as certified, conformed or photostatic copies.

Based upon the foregoing, we are of the opinion that:

1.  Party B is a _____ of the State of North Carolina duly organized and validly existing under the laws of the State of North Carolina.

2.  Party B is authorized to enter into the Master Agreement, the Initial Confirmation(s) and each Additional Confirmation and to perform its obligations thereunder.

3.  Party B has taken all necessary action required to be taken to ensure that the Master Agreement, the Initial Confirmation(s) and each Additional Confirmation comply in all respects with [statutory/regulatory authority].

4.  The Master Agreement and the Initial Confirmation(s) have been duly executed and delivered by Party B and constitutes, and each Additional Confirmation, upon

Exhibit C
Page 1

NYK 944741-7.071370.0011

due execution and delivery by Party B, will constitute, a legally valid and binding obligation of Party B enforceable against Party B in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

5. To the best of our knowledge, no consent, authorization, license or approval of, or registration or declaration with, any governmental authority is required in connection with the execution, delivery and performance of the Master Agreement, the Initial Confirmation(s) and each Additional Confirmation by Party B.

6. [Opinion re: security and source of payment of Party B's obligations, enforceability of Covered Indenture.]

7. Party B is subject to suit with respect to its obligations under the Master Agreement, the Initial Confirmation(s) and each Additional Confirmation and neither Party B nor any of its properties and assets has any right to immunity from suit or attachment in aid of execution or other legal process on the grounds of sovereignty or otherwise or, to the extent that Party B and any of its properties have any such right to immunity, Party B has effectively waived such right for the purpose of the Master Agreement, the Initial Confirmation(s) and each Additional Confirmation and the party executing the Master Agreement, the Initial Confirmation(s) and each Additional Confirmation on its behalf has the authority to waive such immunity.

Very truly yours,

Exhibit C
Page 2

NYK 944741-7.071370.0011

EXHIBIT D to Schedule

Form of Resolutions

      RESOLVED that (i) _____ ("_____") enter into interest rate swap and any similar transactions and (ii) the form, terms and provisions of the Master Agreement (the "Agreement") dated as of _____, \_\_\_\_, between Lehman Brothers Special Financing Inc. ("Lehman") and _____, in the form previously presented to _____ (with such changes, not inconsistent with the intent of these resolutions and the intent of the Board of Directors as the officer(s) executing the same, as evidenced by their execution thereof, shall deem necessary or desirable), and the actions contemplated thereby (including the entry by _____ into Transactions with Lehman evidenced by confirmations thereof) be, and they hereby are, in all respects approved, authorized, adopted, ratified and confirmed.

      RESOLVED that _____ is hereby authorized to enter into the Agreement, in substantially the form presented to this meeting and, from time to time, one or more interest rate swap transactions and agreements terminating any such interest rate swap transaction, pursuant to the Agreement and the documents (each a "Confirmation") exchanged between the parties confirming such interest rate swap transactions. The terms of each interest rate swap transaction, including interest rate, term, Notional Amount (as defined in the Agreement) and options as to commencement and termination of payments, and each termination agreement shall be as described in the Agreement and as provided in the related Confirmation, as approved from time to time by the officers of _____ authorized to execute the Confirmation. The aggregate Notional Amount, as defined in the Agreement, of such interest rate swap transactions outstanding at any one time, net of offsetting interest rate swap transactions, shall not exceed $_____ and each such interest rate swap transaction shall terminate not exceeding \_\_\_\_\_ years after its effective date. The aggregate Notional Amount of all such interest rate swap transactions as of any time shall be determined on a net basis, i.e., where any such transaction is entered into to offset or reverse an earlier transaction, to the extent of the offsetting or reversing effect, the Notional Amounts of such offsetting or reversing interest rate swap transactions shall not be included in the aggregate total.

      RESOLVED that the actions contemplated in the Agreement, and each Confirmation, are hereby in all respects approved, authorized, adopted, ratified and confirmed.

      RESOLVED that all officers or officials of _____ be, and each of them hereby is, authorized to execute and deliver (i) the Agreement in the name and on behalf of _____ and if necessary or advisable under its corporate seal (which may be attested by the [Secretary or any Assistant Secretary or the equivalent thereof] of _____) or otherwise and (ii) such other agreements and documents as are contemplated by the Agreement or are otherwise necessary in connection with entering into interest rate swap and any similar transactions, as any such officer or official shall deem appropriate, including without limitation, officer certificates, legal opinions and credit support documents.

      RESOLVED that all officers or officials of _____ and its agents and counsel be, and each of them hereby is, authorized to take all such further actions, to execute and deliver such further instruments and documents in the name and on behalf of _____ and if

Exhibit D
Page 1

necessary or advisable under its corporate seal (which may be attested by the [Secretary or any Assistant Secretary or the equivalent thereof] of _____) or otherwise to pay all such expenses as in his judgment shall be necessary or advisable in order fully to carry out the purposes of the foregoing resolutions.

  RESOLVED that all actions previously taken or that will be taken by any director, officer, official, employee or agent of _____ in connection with or related to the matters set forth in or reasonably contemplated by the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects as the acts and deeds of _____.

EXHIBIT E to Schedule

Officer's Certificate

The undersigned the [Chief Executive Officer] [Chief Financial Officer] of _____ ("_____") hereby certifies in connection with the Master Agreement (the "Master Agreement") dated as of _____, ____, between Lehman Brothers Special Financing Inc. ("Lehman") and _____ that:

(i) _____ has taken all action required to be taken to ensure that the Master Agreement and any Confirmation entered into or to be entered into, and the Transactions contemplated thereby, are authorized under and comply in all respects with [specify statutory and/or regulatory authority] (the Statute"), [its charter and/or its by-laws], including

[set forth any actions required to be taken.]

(ii) _____ is entering into the Master Agreement and any Transactions entered into or to be entered into thereunder, for hedging purposes and not for the purpose of speculation; and

(iii) _____ meets all the requirements of the Statute not referred to above including:

[set forth any requirements of the Statute not referred to above, such as "_____ is entering into the Transaction in connection with or incidental to the sale and issuance of bonds"].

Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Master Agreement.

IN WITNESS WHEREOF, this Certificate has been executed as of this _____ day of _____, ____.

Exhibit E
Page 1

<u>EXHIBIT F to Schedule</u>

# ISDA®

International Swaps and Derivatives Association, Inc.

# CREDIT SUPPORT ANNEX

to the Schedule to the

## ISDA MASTER AGREEMENT

dated as of May 4, 2005

between

| LEHMAN BROTHERS SPECIAL FINANCING INC. | and | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
|---|---|---|
| ("Party A") | | ("Party B") |

This Annex supplements, forms part of, and is subject to, the above-referenced Agreement, is part of its Schedule and is a Credit Support Document under this Agreement with respect to each party.

Accordingly, the parties agree as follows:

**Paragraph 1. Interpretation**

(a)     *Definitions and Inconsistency.*     Capitalized terms not otherwise defined herein or elsewhere in this Agreement have the meanings specified pursuant to Paragraph 12, and all references in this Annex to Paragraphs are to Paragraphs of this Annex. In the event of any inconsistency between this Annex and the other provisions of this Schedule, this Annex will prevail, and in the event of any inconsistency between Paragraph 13 and the other provisions of this Annex, Paragraph 13 will prevail.

(b)     *Secured Party and Pledgor.*     All references in this Annex to the "Secured Party" will be to either party when acting in that capacity and all corresponding references to the Pledgor will be to the other party when acting in that capacity; *provided, however,* that if Other Posted Support is held by a party to this Annex, all references herein to that party as the Secured Party with respect to that Other Posted Support will be to that party as the beneficiary thereof and will not subject that support or that party as the beneficiary thereof to provisions of law generally relating to security interests and secured parties.

**Paragraph 2. Security Interest**

Exhibit - F
- 1 -

Each party, as the Pledgor, hereby pledges to the other party, as the Secured Party, as security for its Obligations and grants to the Secured Party a first priority continuing security interest in, lien on and right of Set-off against all Posted Collateral Transferred to or received by the Secured Party hereunder. Upon the Transfer by the Secured Party to the Pledgor of Posted Collateral, the security interest and lien granted hereunder on that Posted Collateral will be released immediately and, to the extent possible, without any further action by either party.

**Paragraph 3. Credit Support Obligations**

(a)     *Delivery Amount.* Subject to Paragraphs 4 and 5, upon demand made by the Secured Party on or promptly following a Valuation Date, if the Delivery Amount for that Valuation Date equals or exceeds the Pledgor's Minimum Transfer Amount, then the Pledgor will Transfer to the Secured Party Eligible Credit Support having a Value as of the date of Transfer at least equal to the applicable Delivery Amount (rounded pursuant to Paragraph 13). Unless otherwise specified in Paragraph 13, the *"Delivery Amount"* applicable to the Pledgor for any Valuation Date will equal the amount by which:

(i)     the Credit Support Amount

exceeds

(ii)    the Value as of that Valuation Date of all Posted Credit Support held by the Secured Party.

(b)     *Return Amount.* Subject to Paragraphs 4 and 5, upon a demand made by the Pledgor on or promptly following a Valuation Date, if the Return Amount for that Valuation Date equals or exceeds Secured Party's Minimum Transfer Amount, then the Secured Party will Transfer to the Pledgor Posted Credit Support specified by the Pledgor in that demand having a Value as of the date of Transfer as close as practicable to the applicable Return Amount (rounded pursuant to Paragraph 13). Unless otherwise specified in Paragraph 13, the *"Return Amount"* applicable to the Secured Party for any Valuation Date will equal the amount by which:

(i)     the Value as of that Valuation Date of all Posted Credit Support held by the Secured Party

exceeds

(ii)    the Credit Support Amount.

*"Credit Support Amount"* means, unless otherwise specified in Paragraph 13, for any Valuation Date (i) the Secured Party's Exposure for that Valuation Date plus (ii) the aggregate of all Independent Amounts applicable to the Pledgor, if any, minus (iii) all Independent Amounts applicable to the Secured Party, if any, minus (iv) the Pledgor's Threshold; *provided, however,* that the Credit Support Amount will be deemed to be zero whenever the calculation of Credit Support Amount yields a number less than zero.

**Paragraph 4. Conditions Precedent, Transfer Timing, Calculations and Substitutions**

Exhibit - F
- 2 -