# EXHIBIT 25

## LEHMAN BROTHERS
### Indicative Terms and Conditions

_____
_____ \_\_\_, 2004

The general terms and conditions of this term sheet (the "Term Sheet") outlined below are not all inclusive or fully exhaustive.

**Lender:** [Lehman Brothers Holdings Inc.], ("Lehman") or an affiliate or an entity engaged by Lehman to provide origination services.

**Sponsor:** _____ a [partnership, corp., LLC]. At closing and throughout the terms of the Loan, _____ shall own at least \_\_\_\_% of the direct and indirect ownership in Sponsor and control Sponsor.

**Borrower:** The Borrower shall be a special purpose bankruptcy remote single member Delaware limited liability company whose sole member will be the Sponsor or an entity wholly owned and controlled, directly or indirectly, by Sponsor, and whose sole business shall be the ownership and operation of the Property. The Borrower shall have two independent members on its board of managers whose vote will be required in connection with the filing of a bankruptcy, insolvency, dissolution or similar action with respect to Borrower. Borrower shall deliver upon the funding of the Loan (the "Closing Date") (i) a bankruptcy non-consolidation opinion in form and substance satisfactory to Lender from independent counsel satisfactory to Lender, together with (ii) a Delaware opinion in form and substance satisfactory to Lender, from independent counsel satisfactory to Lender with respect to, among other things, the continued existence of the Borrower after the bankruptcy, insolvency or dissolution of its sole member and the enforceability of Delaware law with respect to single member limited liability companies by the federal bankruptcy courts.

**Recourse:** The Loan shall be non-recourse except for standard carve-outs including, but without limitation, environmental matters, intentional misrepresentation, misappropriation of funds (including proceeds paid under any insurance policies or condemnation proceedings, rents and security deposits), fraud, intentional waste, unauthorized transfer, filing of bankruptcy, and any other of Lender's customary carve-outs, all of which shall be recourse to Borrower **[and Sponsor].**

**Property:** The land and improvements known as _____

|  |  |
|---|---|
| | and located in _____. |
| **Principal Amount:** | The lesser of (i) $\_\_\_ million, (ii) **[\_\_]**% of purchase price of the Property (including closing costs as reasonably approved by Lender) and (iii) **[\_\_]**% of the value of the Property as determined by an appraisal satisfactory to Lender (the "Loan"). |
| **Interest Rate:** | The Interest Rate will be the sum of one-month LIBOR plus \_\_\_%. Interest shall be payable monthly, in arrears and calculated on the basis of actual days elapsed in a 360-day year. The Loan Documents shall contain customary provisions (a) protecting the Lender against increased costs or loss of yield resulting from changes in reserve, tax, capital adequacy and other requirements of law and from the imposition of or changes in withholding or other taxes and (b) indemnifying the Lender for "breakage costs" ("Breakage") incurred in connection with, among other things, any prepayment on a day other than the last day of an interest period. |
| **Commitment Fee:** | $_____, payable at closing to Lender or Lender's designee. **[The Commitment Fee shall be deemed earned upon the issuance of a commitment.]** |
| **Amortization:** | **[None.] [The Loan shall amortize on a [30] year schedule assuming an interest rate of \_\_% per annum. Amortization payments shall be paid monthly. The final amortization schedule to be acceptable to Lender in all respects.]** |
| **Anticipated Closing Date:** | _____, [200\_\_] |
| **Initial Term:** | [\_\_\_ months] |
| **Extension Fee:** | [\_\_\_\_%] of the Principal Amount, payable at the exercise of each Extension. |
| **Extension Option:** | The loan may be extended for **[three] [one]** year periods (each an "Extension Period") provided that (i) the loan is not in default, (ii) the borrower has obtained an Interest Rate Cap as defined herein for the Extension Period, and (iii) the Borrower has paid to the Lender the Extension Fee. |
| **Payments:** | Interest on the Loan will be payable monthly, in arrears, on the 10th day of the month (or the next succeeding business day if the first day is not a business day (the "Monthly Payment Date"). |
| **Security:** | The Loan shall be secured by (i) a first mortgage/deed of trust and security agreement, or its equivalent on the fee simple estate of the Borrower in the Property; (ii) a first priority assignment of all |

2

|  |  |
|---|---|
|  | leases and rents, income, **[accounts receivable]** and contracts, with respect to the Property and (iii) a first priority security interest in all personal property owned by the Borrower used in connection with the Property (collectively the "Security Documents"). |
| **Interest Rate Cap:** | The Borrower shall purchase from a counterparty with an unqualified credit rating of "AA" from Standard & Poor's and "Aa2" from Moody's Investors Service an interest rate cap with a notional amount equal to the Principal Amount and a LIBOR strike price equal to ____% for the remaining term of the Loan with payments and interest period calculations in accordance with the Loan documentation. |
| **Prepayment:** | The Loan shall not be prepaid in whole or in part prior to the **[___ month]** anniversary of the initial funding date (the "Lockout Period"). Thereafter, the Loan may be prepaid in whole or in part with no penalty or premium on any payment date; provided that any prepayment shall be accompanied by the amount of interest that would have accrued on the principal amount of such prepayment through the end of the accrual period during which such prepayment is made, together with any Breakage. |
| **Cash Management:** | **[No Lockbox Account is required at origination. At any time upon which the DSCR of the Loan falls below [___x], all rents and gross income from the operation of the Property shall be deposited into an account controlled by Lender (the "Lockbox Account") established by Borrower with a financial institution acceptable to Lender (the "Lockbox Bank")].** OR **[All rents and gross income from the operation of the Property shall be deposited into an account controlled by Lender (the "Lockbox Account") established by Borrower with a financial institution acceptable to Lender (the "Lockbox Bank").]** The Lockbox Account shall be subject to a Cash Management Agreement among Lender, Borrower and the Lockbox Bank. |

The Cash Management Agreement shall provide for all rents and revenues from the Property to be applied in the following order: prior to the occurrence of a default under the Loan:

1.     Deposits into escrow accounts for real estate taxes and insurance premiums;

2.     Debt service payments on the Loan; and

3.     The balance to Borrower;

After the occurrence of a default under the Loan, funds in the Lockbox Account shall be applied to the payment of the Loan, in

3

|   |   |
|---|---|
| **Capital Expenditure Reserve:** | The Lender shall have the right to require a separate Capital Expenditure Reserve in an amount equal to 125% of the cost of the deferred maintenance items, as identified in the engineering and environmental reports. The Borrower shall receive interest on all funds in the Capital Expenditure Reserve. The amount of the Capital Expenditure Reserve shall be determined upon completion of due diligence. |
| **Tax and Insurance Reserves:** | To be funded each month in an amount equal to 1/12 of the estimated annual expense for taxes and insurance. The Borrower shall receive interest on all funds in the Tax and Insurance Reserve. **[Notwithstanding the foregoing, Borrower shall not be required to fund an Insurance Reserve, provided that Borrower, throughout the term of the Loan, delivers evidence reasonably satisfactory to Lender that all premiums then due have been paid under Borrower's blanket insurance policy covering the Property. If Borrower fails to deliver such evidence, or a default occurs and continues beyond the expiration of any applicable notice and cure periods under the Loan, Borrower shall be required to fund an Insurance Reserve.]** |
| **[FF&E Reserves:** | **A Replacement Reserve for FF&E equal to 4% of total gross revenues of the Property shall be established and funded monthly at 1/12 of one year's amount.]** |
| **Other Reserves:** | To the extent Lender's due diligence indicates that additional reserves are necessary, Lender reserves the right to require additional up-front and/or on going reserves, at Lender's discretion, pursuant to Lender's due diligence and third party investigations, including but not limited to reserves for environmental remediation. |
| **Transfer of Property:** | Neither the Property nor any direct or indirect interest in the Borrower may be transferred, directly or indirectly, unless (i) prior to a Secondary Market Transaction, Lender has approved such transfer or, after a Secondary Market Transaction the Rating Agencies have confirmed in writing that such a transfer will not result in the qualification, downgrade or withdrawal of the then-current rating assigned to certificates (the "Certificates") issued in connection with a Secondary Market Transaction, (ii) the transferee meets certain minimum net worth, experience and similar requirements, which will be set forth in the Loan documentation and (iii) the transferee is a bankruptcy remote special purpose entity and a non-consolidation opinion acceptable to (a) prior to a Secondary Market Transaction, Lender or (b) after the Secondary Market Transaction, the Rating Agencies, has been delivered. **[The** |

Before the row that starts with "such order and priority as the Lender shall determine." appears at the top:

such order and priority as the Lender shall determine.

4

|  |  |
|---|---|
|  | **loan documents will contain provisions allowing for the transfer of certain direct and indirect partnership/membership interests in Borrower.]** |
| **Subordinate Debt:** | No subordinate financing will be permitted on the Property and no direct or indirect interest in Borrower may be pledged or encumbered as collateral for any financing. |
| **Insurance:** | Borrower shall maintain liability and "all risk" property insurance coverage on the Property, together with (i) **[(18)]** months of business interruption coverage and (ii) earthquake insurance in an amount equal to **[1]** times the probable maximum loss. Borrower shall also maintain insurance for acts of terrorism (including bio-terrorism) or an insurance policy without a terrorism exclusion. The policies shall be satisfactory to Lender issued by insurers with a claims paying ability rated "AA-" or better or its equivalent by Standard & Poor's Rating Services. All such insurance may be carried in the form of blanket policies covering other properties, provided that such blanket policies conform to the requirements of this section and are otherwise reasonably satisfactory to Lender. |
| **Management[/Franchise] Agreement:** | The Property shall be managed by a manager satisfactory to Lender pursuant to a management agreement satisfactory to Lender. Lender shall have the right to cause Borrower to (i) terminate the manager and (ii) appoint a replacement manager satisfactory to Lender pursuant to an agreement satisfactory to Lender in the event that (A) an event of default occurs under the Loan which continues beyond applicable grace or cure periods (B) the manager becomes insolvent or the debtor in any insolvency or bankruptcy proceeding, or (C) a material uncured default (after the expiration of all applicable notice and cure periods) by the property manager occurs under the management agreement. |
|  | The Manager shall execute a conditional assignment of management agreement confirming, among other things, the terms of this section. |
|  | **[The Property shall be operated as a [_____] hotel or under some other nationally recognized franchise acceptable to Lender, pursuant to a franchise agreement satisfactory to Lender. The franchisor shall execute and deliver a comfort letter satisfactory to Lender as a condition to closing.]** |
| **Loan Documentation/ Due Diligence:** | The closing of the Loan is conditioned upon finalization, execution and delivery of the Lender's standard loan documents, which shall include, but not be limited to, a note, a mortgage or deed of trust, the assignments of rents, and an environmental and hazardous |

5

|  |  |
|---|---|
|  | substance indemnification agreement. |
|  | In addition to Borrower's compliance with all of the terms and conditions of this Term Sheet, Lender's obligation to close and fund the Loan to Borrower shall be subject to Lender's review and approval of the items on Schedule 1 attached hereto. |
|  | Any and all due diligence materials (including, without limitation, appraisals, engineering reports and environmental reports) shall be addressed to and shall run to the benefit of the Lender and its successors and assigns and the Borrower. |
| [*Material Defects*]: | **To the extent that (i) any of the diligence items listed on Schedule 1 to this [Term Sheet] [Commitment] or any other customary loan closing requirements of Borrower are not satisfactory to Lender at closing or (ii) there exists any other material defect with respect to the Propert*[y][ies]* discovered in the course of Lender's due diligence, in either case such that (a) the Propert*[y][ies] [or the Loan]* would not otherwise meet the customary standards for a mortgage loan intended to be the subject of a securitization or syndication of assets of the general asset type of the Propert*[y][ies]* taking into consideration the amount of the Loan and *[the number of Properties] [the Property]* securing such Loan (individually or collectively, the "Material Defect"), the Loan shall nevertheless be funded, provided (i) Borrower shall covenant to correct such Material Defect within time frames to be mutually agreed upon between Lender and Borrower (to the extent curable), and (ii) Borrower shall establish with Lender one or more special reserves in amounts and upon terms and conditions to be mutually agreed upon between Lender and Borrower with respect to the Material Defects (individually or collectively, the "Material Defects Reserve"), and (iii) to the extent that any Material Defect is not curable by the payment of money or the amount required to cure such Material Defect is not determinable, [*Lender shall have the right to change the principal amount, interest rate spreads, [fees,] maturity[y][ies,] and other [economic or] structural terms, or exclude the affected Property from the Loan, to reflect the effect of such Material Defect on the securitization or syndication of the Loan], [provided that the spreads shall not be increased by more than ___ basis points and the principal amount will not be reduced to less than___] [the amount of the reserve shall equal the allocated loan amount for the applicable Property.*]** |
| **Patriot Act:** | Lender is committed to complying with U.S. statutory and regulatory requirements designed to assist the federal government |

|  |  |
|---|---|
|  | in combating money laundering and any activity which facilitates the funding of terrorist or criminal activities. The USA Patriot Act enhances the money laundering prevention requirements imposed on securities firms and other financial institutions. As part of our customer identification and verification procedures, Lender may ask Borrower and Sponsor to provide additional information as necessary to verify their identity and comply with these procedures. Until such additional information or documentation is provided, Lender may not be able to effect any transactions for the Borrower or the Sponsor. |
| **Secondary Market Transactions:** | Borrower acknowledges that Lender intends to sell the Loan or participations, securities or pari passu or senior/subordinate notes representing whole or component interests therein following closing, which sale (or sales) may be accomplished in one or more public or private offerings or syndications (each, a "Secondary Market Transaction"). Lender, Sponsor and Borrower shall enter into a cooperation agreement pursuant to which Borrower shall reasonably cooperate with Lender in connection with any such transaction, including (i) making non-material, non-economic changes to Loan documents, to the extent required by the Rating Agencies, (ii) providing updated information on the Property, (iii) participating in investors and rating agencies meetings if requested by the Lender, provided that, Borrower's and Sponsor's cooperation shall be without significant additional cost or liability to Borrower or Sponsor. |
| **Lender's Right to Sell, Participate, or Assign Mortgage or Create Mezzanine Debt:** | In addition to the provisions of the Section of this Term Sheet captioned "Secondary Market Transactions", Lender will have the right, without the consent of Borrower, to sell, assign or participate the Loan, in whole or in part, including the right to split the Loan into two or more parts, notes or components, or a first or second mortgage on the Property. Such parts, notes or components may have different interest rates, amortization payments, principal amounts and maturities, provided that the initial weighted average of the interest rate spreads for such parts, notes or components does not exceed the interest rate spread set forth in this Term Sheet and the scheduled amortization payments do not exceed the scheduled amortization payments set forth in this Term Sheet. **[Lender] [Borrower]** shall bear any costs associated with such transfer, assignment or participation of the Loan or of the splitting of the Loan as provided above. Further, Lender will also have the right to recast a portion of the Loan into a mezzanine loan which shall be made to one or more newly formed bankruptcy remote single purpose entities that own 100% of the direct and indirect ownership interests in Borrower, and which will be secured by, among other things, a pledge of all of these ownership interests. **[In the event** |

7

|  |  |
|---|---|
|  | **such recasting occurs prior to the Closing Date**,] All costs of such recasting will be borne by Borrower. **[If such recasting occurs after the Closing Date, all expenses (other than Borrower's legal counsel, mortgage recording tax or intangibles tax and title insurance and UCC policy premiums) of such recasting will be borne by Lender.]** Borrower agrees to cooperate with any such sale, securitization, assignment, participation, split, and/or in the creation of a mezzanine loan, including the restructuring of appropriate Loan documents to facilitate the same. |
| **Rating Agency(ies):** | The Rating Agencies shall be any one or more of Moody's Investors Service, Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies, Inc., or Fitch IBCA, as determined by the Lender. |
| **Costs and Expenses:** | Sponsor shall, or shall cause Borrower to, pay, whether or not the Loan closes, all reasonable costs and expenses in connection with the Loan, including without limitation, the fees and disbursements of Lender's counsel, appraisal costs, the costs of engineering and environmental reports, agreed-upon procedures, title insurance premiums, survey charges, mortgage taxes, recording charges, brokerage commissions for brokers engaged by or on behalf of Borrower or Sponsor and lockbox fees.  This provision shall survive the termination, expiration or withdrawal of this Term Sheet or the termination or expiration of a commitment, if issued. |
| **Brokers:** | Sponsor hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transactions contemplated by the this Term Sheet.  Sponsor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all claims, liabilities, costs and expenses of any kind (including Lender's reasonable attorneys' fees and expenses) in any way relating to or arising from a claim by any person that such person acted on behalf of Borrower, Sponsor, or any of their affiliates in connection with the transactions contemplated herein.  This provision shall survive any termination, expiration or withdrawal of this Term Sheet or the termination or expiration of a commitment, if issued. |
| **Confidentiality:** | This Term Sheet is being furnished to Sponsor or Borrower on a confidential basis and may not be disclosed to third parties other than Borrower's or Sponsor's counsel and accountants without Lender's prior written consent unless required by law or required in connection with a legal proceeding or by governmental regulation. **[Notwithstanding the foregoing or any contrary agreement or understanding, the parties may disclose to any and all persons, without limitation of any kind, the U.S. federal income tax** |

8

8

treatment and U.S. federal income tax structure of the transactions contemplated hereby and all materials of any kind (including opinions or other tax analyses) that are provided to them relating to such U.S. federal income tax treatment and U.S. federal income tax structure.]

| | |
|---|---|
| **Material Adverse Change:** | The obligation of Lender to close and fund the Loan is subject to (a) there not occurring or becoming known to Lender any material adverse condition or material adverse change in or affecting the business, operations, Property, condition (financial or otherwise) or prospects of the Borrower or Sponsor, (b) Lender not becoming aware after the date hereof of any information or other matter affecting the Borrower or Sponsor which is inconsistent in a material and adverse manner with any such information or other matter disclosed to Lender prior to the date hereof, (c) there not having occurred material disruption of or material adverse change in financial, banking or capital market conditions that, in Lender's judgment, could materially impair the securitization, sale or syndication of the Loan and (d) there not having occurred an outbreak or escalation of terrorist acts, sabotage or hostilities involving the United States or the declaration by the United States of a national emergency or war. |
| | **[Lender will agree, at Borrower's request, upon the occurrence of [*any Material Adverse Effect or*] any failure of any of the closing condition financial requirements set forth in this Term Sheet (e.g., any provisions relating to [*Debt Yield, DSCR, LTV or Net Cash Flow*]), to fund the Loan but (i) increase the Spread by up to [__] basis points, (ii) establish an interest-bearing special reserve at Closing sufficient to permit Borrower to meet the initial [*Debt Yield, DSCR, LTV, or Net Cash Flow*] requirement, as determined by Lender, (ii) reduce the Loan amount sufficient to permit Borrower to meet the initial [*Debt Yield DSCR, LTV, or Net Cash Flow*] requirement, and /or (iii) provide a guaranty for the amount sufficient to permit Borrower to meet the initial [*Debt Yield DSCR, LTV, or Net Cash Flow*] requirement from an acceptable guarantor.]** |
| *No Commitment:* | This Term Sheet does not constitute a contract or commitment by Lender to provide financing in respect of the Property.  Further, this is not intended to describe all of the terms and conditions of the proposed transaction described herein.  It is intended only to be indicative of certain terms and conditions around which the loan documents will be structured, and not to preclude negotiations within the general scope of these terms and conditions. |

9

This is not a commitment to lend money, nor does the issuance of this Term Sheet obligate Lender to proceed with discussions regarding the financing. This is non-binding and any binding agreement between Lender and Borrower to proceed with the transaction would be subject to a written agreement of mutually acceptable terms and conditions, review by legal counsel, proper execution of documentation and approval by each Lender's appropriate internal committee.

If Sponsor's acceptance of this Term Sheet **[and the Application Deposit]** is not received by Lender by 5:00 PM New York City time on _____ ___, 2003, this Term Sheet shall be of no further force and effect. This Term Sheet shall expire on _____ ___, 2003, by which time the Facility must have closed or this Term Sheet shall be of no further force and effect.

Please indicate your acceptance of the matters set forth herein by signing in the place provided below and returning the executed Term Sheet via fax to _____ at (646) 758-_____.

Sincerely,

| | |
|---|---|
| **[SPONSOR]** | **[LEHMAN BROTHERS HOLDINGS INC.]** |
| By: _____ | By: _____ |

11

11

## SCHEDULE 1

1. A title insurance policy issued by a national title company reasonably acceptable to Lender showing indefeasible fee simple title to the Property vested in Borrower, insuring the first priority of the lien of the mortgage in the principal amount of the Loan, excepting from coverage thereunder only such matters as are approved by Lender and including such co-insurance and/or reinsurance as is required by Lender;

2. MAI appraisal with respect to the Property prepared by a firm approved by Lender;

3. Phase I survey and, if reasonably deemed necessary or appropriate by Lender Phase II surveys of the Property, from a firm reasonably approved by Lender;

4. If deemed necessary or appropriate by Lender, a Seismic Study of the Property from a firm approved by Lender.

5. Structural engineering report from a firm approved by Lender, identifying, among other things, (a) deferred maintenance for the Property and the cost thereof and (b) a 10 year schedule of anticipated capital expenditures and the per annum cost thereof;

6. Three year historical operating statement for the Property (certified by a certified public accounting firm acceptable to Lender), a year-to-date operating statement for the Property and an operating and capital budget for the Property for the year ending _____ ___, 200__;

7. A current ALTA Survey of the Property;

8. Certificate of occupancy for the Property and reasonable evidence of compliance with all applicable zoning, building, environmental and other laws applicable to the Property;

9. Copies of all leases and material contracts for the Property; including without limitation, all management agreements, franchise agreements, property improvement plans and quality assurance reports, satisfactory estoppels from all tenants shall be required prior to Closing. Lender shall determine what subordination, non-disturbance and attornment agreements, if any, will be required after completion of its analysis of the leases.

10. Evidence that all utility services required for the Property are available and that the Property is subject to a separate tax assessment;

11. All organizational documents and evidence of authorization for the transaction of Borrower, Manager and such entities which control each of the foregoing as may be reasonably required by Lender, and in form and substance reasonably satisfactory to Lender;

12. Opinions of counsel and local counsel to Borrower and Sponsors in form and substance reasonably satisfactory to Lender (including, without limitation a substantive non-consolidation opinion and a Delaware opinion);

13.     Agreed upon procedures letter from a "Big Four" accounting firm, acceptable to Lender;

14.     Other information reasonably required by Lender.