# EXHIBIT 29

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO THE QUALIFICATIONS SET FORTH HEREIN IN ALL RESPECTS.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**LEHMAN BROTHERS HOLDINGS INC.,**<br>*et al.*,<br><br>　　　　　**Debtors.** | **Chapter 11 Case No.**<br><br><br>**08-13555 (JMP)**<br><br>**(Jointly Administered)** |

**DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN FOR LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS OTHER THAN MERIT, LLC, LB SOMERSET LLC AND LB PREFERRED SOMERSET LLC PROPOSED BY NON-CONSOLIDATION PLAN PROPONENTS**

Dated: New York, New York
　　　　April 25, 2011

**Attorneys for Plan Proponents:**


BINGHAM MCCUTCHEN LLP
399 Park Ave
New York, NY 10022
T:  212 705 7000
F:  212 752 5378
Joshua Dorchak

*Attorneys for: Deutsche Bank AG*

BINGHAM McCUTCHEN LLP
One Federal Street
Boston, MA 02110
T:  617 951 8000
F:  617 951 8736
Sabin Willett

*Attorneys for: State Street Bank and Trust Company*

BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
T:  617 856 8200
F:  617 856 8201
Steven L. Levine

*Attorneys for: Cyrus Capital Partners, LP, Silver Point Capital, L.P., and York Capital Management Global Advisors, LLC*

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
T:  212 504 6000
F:  212 504 6666
Howard R. Hawkins, Jr.

700 Sixth Street, N.W.
Washington, DC 20001
T:  202 862 2200
F:  202 862 2400
Mark C. Ellenberg

*Attorneys for: Morgan Stanley & Co. International plc. and Morgan Stanley Capital Services Inc.*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T:  212 225 2000
F:  212 225 3999
Thomas J.  Moloney
Sean A. O'Neal

*Attorneys for: D. E. Shaw Composite Portfolios, L.L.C., D.E. Shaw Oculus Portfolios, L.L.C.,
Goldman Sachs Bank USA, and Goldman Sachs International*

CLIFFORD CHANCE LLP
31 West 52nd Street
New York, NY 10019-6131
T:  212 878 8000
F:  212 878 8375
Andrew Brozman

*Attorneys for: Credit Agricole CIB*

CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
T:  212 474 1000
F:  212 474 3700
Richard Levin

*Attorneys for: Credit Suisse International*

DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
T:  213 621 6000
F:  213 621 6100
Bruce Bennett
Monika S. Wiener

*Attorneys for certain funds managed by and/or affiliated with: Angelo, Gordon & Co., L.P.,
Contrarian Capital Management, LLC, Goldentree Asset Management, LP, Hayman Capital
Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC,
Mount Kellett Capital Management, Oaktree Capital Management, L.P., and Serengeti Asset
Management LP*

DEWEY LEBOEUF LLP

1301 Avenue of the Americas

New York, NY 10019-6092

T:  212 259 8000

F:  212 259 6333

Irena M. Goldstein

*Attorneys for: The Royal Bank of Scotland plc*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas

New York, NY 10019

T:  212 373 3000

F:  212 757 3990

Jeffrey D. Saferstein

Alan W. Kornberg

*Attorneys for: Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, and Silver Point Capital, L.P. on behalf of its affiliated investment funds*

# TABLE OF CONTENTS

**Page**

I.      PREAMBLE ..................................................................................................... 1

II.     INTRODUCTION ............................................................................................. 1

        A.      Summary of the Plan.............................................................................. 6

                1.      No Substantive Consolidation.................................................... 6

                2.      Appointment of a Domestic Operating Company Creditor
                        Representative............................................................................. 7

                3.      Resolution of Intercompany Claims ........................................... 7

                4.      Resolution of Derivative Claims................................................. 8

                5.      Resolution of Claims Against LBHI Relating to Structured
                        Securities..................................................................................... 8

                6.      Debtor Allocation Agreement..................................................... 8

        B.      There is No Basis for Substantive Consolidation ................................. 9

                1.      The Legal Standard for Substantive Consolidation Is Not Met Here ....... 9

                2.      The "Facts" the Filing Debtors Identify as Creating a Risk of
                        Substantive Consolidation Do Not Change this Analysis........................ 11

                3.      Substantive Consolidation of LBI or Foreign Non-Debtor
                        Affiliates Is Impermissible....................................................... 13

        C.      Domestic Operating Company Creditor Representative and Governance
                Provisions............................................................................................. 14

III.    OVERVIEW OF PLAN................................................................................... 16

        A.      Classification of Claims and Equity Interests under the Plan.............................. 16

        B.      Holders of Claims Entitled to Vote.................................................... 58

        C.      Voting Procedures............................................................................... 59

        D.      Confirmation Hearing ......................................................................... 60

IV.     GENERAL INFORMATION........................................................................... 60

V.      SUMMARY OF THE CHAPTER 11 PLAN .................................................. 60

        A.      Classification and Treatment of Claims and Equity Interests.............................. 60

        B.      Means for Implementation of the Plan................................................ 70

        C.      Provisions Governing Distributions.................................................... 74

        D.      Treatment of Disputed Claims ............................................................ 78

        E.      Treatment of Executory Contracts and Unexpired Leases ................. 78

        F.      Conditions Precedent to Plan's Confirmation and Effective Date....................... 80

i

# TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| | G. | Effect of Confirmation of the Plan | 81 |
| | H. | Liquidating Trust | 83 |
| | I. | Summary of Other Provisions of Plan | 87 |
| VI. | | CONFIRMATION AND CONSUMMATION OF THE PLAN | 92 |
| | A. | Solicitation of Votes | 92 |
| | B. | The Confirmation Hearing | 93 |
| | C. | Confirmation | 93 |
| | D. | Consummation | 98 |
| VII. | | CORPORATE GOVERNANCE AND MANAGEMENT OF THE DEBTORS ON THE EFFECTIVE DATE | 98 |
| | A. | Board of Directors and Management | 98 |
| VIII. | | SECURITIES LAWS MATTERS | 101 |
| | A. | Existing Equity Interests | 101 |
| | B. | Initial Distribution of New Securities | 102 |
| | C. | Resales of New Securities/Rule 144 and Rule 144-A | 102 |
| IX. | | CERTAIN RISK FACTORS TO BE CONSIDERED | 104 |
| | A. | Certain Bankruptcy Law Considerations | 105 |
| | B. | Conditions Precedent to Consummation of the Plan | 105 |
| | C. | Asset Sales | 105 |
| | D. | Estimation of Allowed Claims | 105 |
| | E. | Certain Tax Considerations | 106 |
| X. | | CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | 106 |
| | A. | Consequences to the LBHI and Subsidiary Debtors | 107 |
| | B. | Consequences to Holders of Claims and LBHI Equity Interests | 112 |
| | C. | Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests | 114 |
| | D. | Withholding on Distributions, and Information Reporting | 117 |
| XI. | | VOTING PROCEDURES AND REQUIREMENTS | 117 |
| | A. | Parties Entitled to Vote | 117 |
| | B. | Ballots and Voting Deadline | 118 |
| | C. | Voting Procedures | 119 |
| | D. | Fiduciaries and other Representatives | 119 |

# TABLE OF CONTENTS
(continued)

**Page**

E.    Agreements Upon Furnishing Ballots ................................................................. 120

F.    Waivers of Defects, Irregularities, Etc ............................................................ 120

G.    Withdrawal of Ballots; Revocation ................................................................... 120

H.    Further Information; Additional Copies ............................................................ 121

XII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ................................................................................................................................ 121

XIII.    CONCLUSION AND RECOMMENDATION ............................................................ 122

# EXHIBITS

Exhibit 1          *Plan*

Exhibit 2          ***The Filing Debtors' Published Balance Sheets of Each Filing Debtor (i) As of the Applicable Commencement Date for Each Filing Debtor; and (ii) As of June 30, 2010; and  Reconciliation of Cash Flow Estimates (Gross Receipts) to the Balance Sheets, As of June 30, 2010 (Debtors' Disclosure Statement Exhibits 2A, 2B and 2C)***

Exhibit 3          ***Reserved***

Exhibit 4          ***The Plan Proponents' Recovery Analysis***

Exhibit 5          ***The Plan Proponents' Liquidation Analysis***

Exhibit 6          ***Reserved***

Exhibit 7          ***The Filing Debtors' Cash Flow Estimates Through 2014 (Debtors' Disclosure Statement Exhibit 7)***

Exhibit 8          ***The Filing Debtors' Significant Intercompany Balances (Debtors' Disclosure Statement Exhibit 8)***

Exhibit 9          ***The Filing Debtors' Lehman Background Information (Debtors' Disclosure Statement Exhibit 9)***

Exhibit 10        ***The Filing Debtors' Reallocation From Subordinated Notes to Senior Obligations (Debtors' Disclosure Statement Exhibit 10)***

## I.    PREAMBLE

The Plan proceeds from the fundamental premise that for these extremely large and complex cases a plan that fully respects the best view of the legal rights and obligations of all entities and constituencies is not only appropriate but also provides the only practical path towards confirmation. Accordingly, the Plan does not purport to substantively consolidate the Filing Debtors nor does it offer any compromise consideration to LBHI standalone creditors who would benefit from any such substantive consolidation.

In this regard, it is unlike the Debtors' Plan which provides recoveries to LBHI bond holders that exceed not only what they are legally entitled to receive but also are greater than even what they would receive if domestic substantive consolidation were justified here, which it is not. This windfall is unprincipled – substantive consolidation is a remedy for harms that LBHI bond holders did not suffer:  they had no reasonable basis to rely on other Lehman entities' assets. LBHI's securities law disclosures made it clear that LBHI is a holding company and that LBHI bond holders could "only depend on [its] earnings and assets, and not those of [its] subsidiaries, for payment of principal and interest on the notes." There is no hopeless confusion here concerning the Filing Debtors' assets or liabilities. To the contrary, LBHI's affiliates operated distinctly from the holding company, and maintained – and continue to maintain – clear and separate records. Tellingly, no Debtor has ever identified any representation made to creditors that LBHI and its subsidiaries operated as a single enterprise.

The argument for consolidation on the grounds that Lehman was run as a single enterprise likewise has no legal force. It is unsupported by the relevant case law and as a policy matter, if accepted, would require almost every major multinational corporation in the world to change the way it does business. Companies routinely set up subsidiaries whose separateness they expect will be respected, including for tax, capital raising and liability management purposes but nevertheless almost uniformly run themselves as, and seek to create a culture of, a single enterprise. The supposed "threat" of substantive consolidation is also irrelevant because, as a practical matter, there is no way to include in a Lehman substantive consolidation plan broker dealer regulated or foreign subsidiaries such as Lehman Brothers Inc. or Lehman Brothers International (Europe), which are the entities on which any single enterprise theory would have to be predicated.

## II.    INTRODUCTION

The Plan Proponents consist of certain creditors of Lehman Brothers Holdings Inc. ("LBHI"), various operating subsidiaries of the Filing Debtors, including Lehman Commercial Paper Inc. ("LCPI"), Lehman Brothers Commodities Services Inc. ("LBCS"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers OTC Derivatives Inc. ("LOTC"), and Lehman Brothers Commercial Corporation ("LBCC"), and creditors of certain other affiliated entities including Lehman Brothers Treasury Co., B.V. ("LBT"). The Plan Proponents believe that The Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and Its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents (as may be amended, modified and/or supplemented, the "Plan") presents a fair and reasonable path for allocating distributions among the various creditor constituencies while respecting the separate legal entities of the Debtors.

1

Unless otherwise defined herein, all capitalized terms contained herein have the meanings ascribed to such terms in the Plan.

The Plan Proponents submit this Disclosure Statement (as may be amended, modified and/or supplemented, the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code to holders of Claims against the Debtors entitled to vote on the Plan in connection with (i) the solicitation of acceptances of the Plan and (ii) the hearing to consider confirmation of the Plan (the "Confirmation Hearing") scheduled for [_____], at [_____], prevailing Eastern Time.  As indicated in the Plan, the term "Debtors" refers to those Filing Debtors, for which "exclusivity" has expired, and does not apply to Merit, LLC, LB Somerset LLC, and LB Preferred Somerset LLC, for which "exclusivity" has been extended (the "Excluded Debtors").  The Plan Proponents, however, reserve the right to (i) seek a termination of exclusivity periods with respect to the Excluded Debtors and (ii) make applicable the Plan or any other plan to the Excluded Debtors in the future.

Annexed as Exhibits to this Disclosure Statement are copies of the following documents:

- The Plan (Exhibit 1).

- The Plan Proponents' Recovery Analysis (Exhibit 4).

- The Plan Proponents' Liquidation Analysis (Exhibit 5).

Unless otherwise noted, the information and data included in the Recovery Analysis and Liquidation Analysis substantially rely on information contained in the Filing Debtors' Disclosure Statement, including without limitation in the recovery analysis presented as Exhibit 4 to the Debtors' Disclosure Statement.  NEITHER THE PLAN PROPONENTS NOR ANY OF THEIR RESPECTIVE ADVISORS HAVE CONDUCTED ANY DUE DILIGENCE OR INDEPENDENT VERIFICATION OF ANY OF THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS SET FORTH BY THE FILING DEBTORS AND RELIED UPON SOLELY FOR PURPOSES OF THIS DISCLOSURE STATEMENT IN THE PLAN PROPONENTS' RECOVERY ANALYSIS.  THE PLAN PROPONENTS CAUTION THAT THEY DO NOT AND CANNOT MAKE ANY REPRESENTATIONS AS TO THE ACCURACY OF ANY OF THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS RELIED UPON OR INCORPORATED THEREIN.  FURTHERMORE, THE PLAN PROPONENTS RESERVE THE RIGHT TO MODIFY ANY SUCH ESTIMATES OR ANY OTHER INFORMATION, DATA, OR ASSUMPTIONS CONTAINED IN THE RECOVERY ANALYSIS.

In addition, attached to the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to section 1125 of the Bankruptcy Code (the "Debtors' Disclosure Statement"), currently being submitted to creditors by the Filing Debtors, are the following key exhibits, which the Plan Proponents incorporate herein by reference.

- The Filing Debtors' published Balance Sheets of each Filing Debtor (i) as of the applicable Commencement Date for Each Filing Debtor; and (ii) as of June 30, 2010; and  Reconciliation of Cash Flow Estimates (Gross Receipts) to the Balance Sheets, as of June 30, 2010 (Debtors' Disclosure Statement Exhibits 2A, 2B and 2C).

- The Filing Debtors' Cash Flow Estimates Through 2014 (Debtors' Disclosure Statement Exhibit 7).

- The Filing Debtors' Significant Intercompany Balances (Debtors' Disclosure Statement Exhibit 8).

- The Filing Debtors' Lehman Background Information (Debtors' Disclosure Statement Exhibit 9).

- The Filing Debtors' Reallocation of Distributions From Subordinated Notes to Senior Obligations (Debtors' Disclosure Statement Exhibit 10).

**The Plan Proponents have not conducted any due diligence or independently verified any information or assumptions contained in these exhibits.  The Plan Proponents reserve the right to modify any and all information contained in the exhibits to the Debtors' Disclosure Statement incorporated herein.**  Nothing contained in any of the exhibits to the Debtors' Disclosure Statement described above shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained therein.

A Ballot for voting to accept or reject the Plan may be provided with this Disclosure Statement for the holders of Claims that are entitled to vote to accept or reject the Plan.

NO STATEMENTS OR INFORMATION CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY HAVE BEEN AUTHORIZED, OTHER THAN THE STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE INFORMATION ACCOMPANYING THIS DISCLOSURE STATEMENT.  ALL OTHER STATEMENTS REGARDING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY, WHETHER WRITTEN OR ORAL, ARE UNAUTHORIZED.

On [_____], 2011, after notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical investor in the relevant classes to make an informed judgment whether to accept or reject the Plan (the "Disclosure Statement Order").  **APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

The Disclosure Statement Order, among other things, sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the record date for voting purposes and the applicable standards for tabulating the ballots. Each holder of a Claim entitled to vote on the Plan should read in their entirety this Disclosure Statement (including the Exhibits attached hereto), the Plan and the instructions accompanying the Ballots before voting on the Plan. These documents contain, among other things, important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made except pursuant to section 1125 of the Bankruptcy Code.

Concurrently with the solicitation of the Plan, the Filing Debtors have on file their own proposed plan (as may be amended, modified and/or supplemented from time to time, the "Debtors' Plan").[1] The Plan Proponents believe that the Debtors' Plan is unconfirmable and subject to numerous legal and equitable defects, which are rectified under the Plan. In addition, on December 15, 2010, the members of the Ad Hoc Group of Lehman Brothers Creditors filed The Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC (as may be amended, modified and/or supplemented from time to time, the "Ad Hoc Group Plan"). The Plan Proponents believe that the Ad Hoc Group Plan is also unconfirmable for numerous reasons, most notably because it is premised on the substantive consolidation of the Debtors for which there is no basis as discussed in detail below.

Notwithstanding that the Plan Proponents believe the Plan to be superior to the Debtors' Plan and the Ad Hoc Group Plan, you are entitled to vote to accept or reject: (i) the Plan; (ii) the Debtors' Plan; (iii) the Ad Hoc Group Plan; (iv) all three plans; or (v) none of the plans. The Bankruptcy Court, however, may confirm only one plan for the Debtors (although it could conceivably confirm one plan as to certain of the Filing Debtors and another plan as to certain or all of the other Filing Debtors). If all three plans are confirmable, pursuant to section 1129(c) of the Bankruptcy Code, the Bankruptcy Court "shall consider the preferences of creditors and equity security holders in determining which plan to confirm."

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT, INCLUDING THE FOLLOWING SUMMARY, ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, EXHIBITS ANNEXED TO THE PLAN, THE PLAN SUPPLEMENT, THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO.

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT RELY UPON THE INFORMATION PROVIDED IN THE DEBTORS' DISCLOSURE STATEMENT DATED JANUARY 25, 2011 AND CERTAIN OTHER PUBLICLY AVAILABLE DOCUMENTS, AND ARE MADE ONLY AS OF THE DATE IN THE**

---

[1] The Plan Proponents have requested that the Court consider approval of the Disclosure Statement on the same schedule as that of the Filing Debtors, and believe that the Plan should be solicited concurrently with the Debtors' Plan. The Plan Proponents reserve the right to seek approval of this Disclosure Statement and solicit acceptances of the Plan in advance of the Filing Debtors.

**DEBTORS' DISCLOSURE STATEMENT OR HEREOF, AS APPLICABLE, UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED IN THE DEBTORS' DISCLOSURE STATEMENT OR HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE.   ALL CREDITORS SHOULD READ CAREFULLY THE "RISK FACTORS" SECTION IN THE DEBTORS' DISCLOSURE STATEMENT AND HEREIN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW.   THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION (THE "SEC") NOR ANY STATE OR FOREIGN SECURITIES REGULATOR, NOR HAS THE SEC OR ANY SUCH REGULATOR PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS SHOULD EVALUATE THE DEBTORS' DISCLOSURE STATEMENT, THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

CERTAIN OF THE STATEMENTS CONTAINED IN THE DEBTORS' DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE PLAN SUMMARY CONTAINED IN THIS DISCLOSURE STATEMENT.   ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENTS, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENTS.

AS TO ANY CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION OR A WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL

RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR ENTITY.  AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS OR ANY OTHER PARTY IN INTEREST.

NONE OF THE OFFER OR SALE OF ANY OF THE SECURITIES BEING OFFERED OR SOLD UNDER THE PLAN HAS BEEN REGISTERED UNDER THE SECURITIES ACT OR ANY SIMILAR STATE OR FOREIGN SECURITIES OR "BLUE SKY" LAWS.  THE OFFERS AND ISSUANCES OF THE PLAN SECURITIES ARE BEING MADE IN RELIANCE ON EXEMPTIONS FROM REGISTRATION SPECIFIED IN SECTION 1145 OF THE BANKRUPTCY CODE OR OTHER EXEMPTIONS FROM REGISTRATION UNDER THE SECURITIES ACT OR APPLICABLE FOREIGN SECURITIES LAWS, SUBJECT TO CERTAIN LIMITATIONS DESCRIBED HEREIN.

A.    **Summary of the Plan**

The Plan is based in large part upon the Debtors' Plan, with the following notable differences:

1.    No Substantive Consolidation

Substantive consolidation is an extraordinary remedy whereby the estates of debtor entities, and occasionally non-debtor entities, are merged together, resulting in a redistribution of creditor recoveries from more asset-rich entities to asset-poor entities, and the elimination of affiliate guarantees and intercompany claims.  The Debtors' Plan purports not to propose the substantive consolidation of the Filing Debtors but does propose to compensate certain Classes of LBHI creditors based on an alleged "risk" of substantive consolidation.  The Filing Debtors' assessment of the "risk" of substantive consolidation appears to give far too much weight to arguments made by creditor constituencies that would benefit from the effects of substantive consolidation.  To achieve a supposed "compromise," the Debtors' Plan proposes a redistribution of a portion of recoveries from certain classes of Domestic Operating Company Creditors to particular LBHI creditor Classes (namely, LBHI Classes 3, 6, and 7) – including holders of Senior Notes that are the proponents of the Ad Hoc Group Plan – if the LBHI Classes 3, 6, and 7 vote to accept the Debtors' Plan.  Inexplicably, the economic effect of this so-called "Plan Adjustment" is an even greater redistribution of recoveries from Domestic Operating Company Creditors and foreign non-Debtor Affiliates to certain LBHI creditors than a domestic substantive consolidation plan would effect.

As explained in greater detail below, there exists no factual or legal basis for the substantive consolidation of the Debtors.  Therefore, the Ad Hoc Group Plan is fundamentally flawed and cannot be confirmed.  The reallocation proposed by the Filing Debtors is likewise untenable and renders the Debtors' Plan unconfirmable because – first, the reallocation is a purported compromise of a substantive consolidation "risk" that is at best remote and, in many

6

cases, nonexistent; second, whatever the quantum of supposed substantive consolidation "risk," the redistribution scheme in the Debtors' Plan benefits certain LBHI creditors *more* than a domestic substantive consolidation plan would benefit them; third, the consideration for the settlement of the substantive consolidation "risk" does not flow to the LBHI estate and all of its creditors; and fourth, the Filing Debtors' reallocation constitutes impermissible gifting and unfair discrimination in violation of section 1129(b) of the Bankruptcy Code.

The Plan eliminates the unfair and unprecedented redistribution from the Domestic Operating Company Creditors and other creditors holding guarantee claims against LBHI to LBHI Classes 3, 6, and 7, for which there is no basis in law or fact. In so doing, the Plan respects the separate corporate form of the Debtor entities and proposes an equitable distribution of assets that is consistent with all documentation evidencing the claims against the Debtors and creditor expectations which are consistent with such documentation.

2.    Appointment of a Domestic Operating Company Creditor Representative

The Plan provides for the appointment of a Domestic Operating Company Creditor Representative to act as a fiduciary on behalf, and in the best interests, of the Domestic Operating Companies and their creditors. Under the Debtors' Plan, LBHI, as "Plan Administrator," is tasked with administering the claims process, including administering intercompany claims held by LBHI itself against the Domestic Operating Companies, and vice versa, creating an inherent conflict of interest. The appointment of a fiduciary to the Domestic Operating Company Creditors cures this conflict of interest by ensuring that the interests of Domestic Operating Companies and their creditors are adequately represented in the claims administration process. Because the interests of LBHI and its creditors may be opposed to those of the Domestic Operating Companies, transferring some authority from the Plan Administrator with respect to decisions primarily affecting the Domestic Operating Companies will ensure a more equitable claims administration process.

3.    Resolution of Intercompany Claims

The Debtors' Plan separates into different subclasses intercompany claims of LBHI and intercompany claims of certain Subsidiary Debtors against certain Domestic Operating Companies and provides for different treatment of such subclasses. The Plan eliminates this differential treatment of intercompany creditors.

The Plan also removes the Filing Debtors' proposed automatic reduction by 20% of the Intercompany Funding Balance – a specific portion of LBHI's Claim against Subsidiary Debtors that purportedly relates to the funding of operations of each Subsidiary Debtor but not specific transactions. Under the Plan, the Domestic Operating Company Creditor Representative is empowered to negotiate the amounts of the intercompany claims. Although certain of the Plan Proponents believe that a large portion of the transfers underlying the intercompany claims held by LBHI against the Domestic Operating Subsidiaries, and in particular a significant portion of the $25 billion claim held by LBHI against LBSF, should be recharacterized as equity contributions rather than debt, the resolution of these issues will be the responsibility of the Domestic Operating Company Creditor Representative or the Court.

4.      Resolution of Derivative Claims

Unlike the Debtors' Plan, the Plan does not include any provisions relating to the Derivative Claims Framework. Valuation of derivatives positions will take place as part of a claims reconciliation process separate and apart from the negotiation of a fair plan.

5.      Resolution of Claims Against LBHI Relating to Structured Securities

Various foreign non-Debtor Affiliates of Lehman, including LBT, Lehman Brothers Securities N.V. ("LBSN"), and Lehman Brothers Bankhaus AG ("LBB"), issued a significant amount of structured securities to investors. In addition, LBHI itself issued certain structured notes (collectively with the securities issued by LBT, LBSN, LBB, and certain other foreign non-Debtor Affiliates, the "Structured Securities"). A large number of holders of Structured Securities issued by foreign non-Debtor Affiliates filed claims against LBHI based on its guarantee of the Structured Securities (or based directly on the securities in the case of structured notes issued by LBHI).

As part of the Debtors' Plan, the Filing Debtors proposed certain valuation methodologies for the Structured Securities as set forth in Exhibit 11 to the Debtors' Disclosure Statement. The Filing Debtors utilized these methodologies to calculate proposed maximum Allowed Claim amounts for the Structured Securities issued by LBT, and have published a summary of such amounts on their website at www.lehman-docket.com. For purposes of the Chapter 11 Cases only, the Plan utilizes these valuations as a basis for determining the Allowed Claim amounts associated with particular Structured Securities or related guarantee claims against LBHI; provided, however, that holders of such Claims may seek, or the Debtors may propose, amendments or corrections of the proposed valuations to the extent that such valuations do not reflect a consistent or accurate application of the proposed Structured Securities Valuation Methodologies, or other manifest errors. The Plan does not address the valuation methodologies for Structured Securities to be applied in any foreign proceedings, and as a result, the Allowed amount of the Primary Claim associated with a particular Structured Security may be greater or less than the Allowed amount of any Guarantee Claim against LBHI that is based on the same Security.

6.      Debtor Allocation Agreement

The Plan Proponents believe that certain of the Domestic Operating Companies are currently bearing a share of the administrative costs that is disproportionate to the amount of work actually completed on behalf of those Domestic Operating Companies and to the benefit that those Domestic Operating Companies are receiving, and have been bearing such costs since the commencement of these cases. Thus, the Plan provides for the equal sharing of costs relating to the administration of the derivatives claim process between LBSF and LBHI, as LBHI benefits equally from such procedures as a guarantor of the derivatives claims. Furthermore, the Plan provides for a Debtor Allocation Agreement which will fairly allocate various additional administrative costs among the Debtors in as close proportion as possible to the relative benefit each Debtor received as a result of such expenses.

**B.      There is No Basis for Substantive Consolidation**

The Debtors' Plan purports to not require substantive consolidation, concluding that a plan requiring substantive consolidation would "invite protracted litigation" that "would take years to resolve." Debtors' Disclosure Statement at 152. The Debtors' Plan, however, seeks to effect a similarly impermissible redistribution from one group of creditors to another on the basis of a supposed "risk" of substantive consolidation.

The Ad Hoc Group Plan, on the other hand, proposes to substantively consolidate numerous Lehman entities. The Ad Hoc Group Plan envisions the forced consolidation of the various Debtor estates and some, but not all, non-Debtor Affiliates – including certain foreign affiliates, such as LBT and Lehman Brothers International (Europe) ("LBIE"), that are currently subject to administration in foreign jurisdictions. This cherry-picking of affiliates for consolidation avoids the full consolidation of all non-Debtor Affiliates and foreign Affiliates purportedly for the sake of "considerations of judicial economy," though in reality a complete consolidation is simply not possible.

Proponents of the Ad Hoc Group Plan incorrectly assert that substantive consolidation is proper here because creditors must have dealt with Lehman as a single entity since: (1) Lehman operated as one, centrally controlled company with three business lines; (2) Lehman presented itself to the world as a single entity; (3) creditors did not conduct a separate credit analysis of each Lehman entity and separate LBHI guarantees eliminated the need for any separate credit analysis; and (4) unregulated Lehman entities produced no financial reports and the market perceived them as merely booking entities. Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc Group Plan Disclosure Statement") at 12-15. The Ad Hoc Group further argues that substantive consolidation is proper because the integrated nature of Lehman's business operations, including intercompany financing and settlements, intercompany repos, pooling of assets, hedging activities, and the substantial unresolved intercompany claims and causes of action render LBHI and the various other Lehman entities so entangled that consolidation is necessary. Id. at 15-27. These arguments are wholly without merit and serve as nothing more than an attempt to favor creditors of LBHI at the expense of a diminished recovery for the creditors of certain of the Debtors' operating companies and foreign non-Debtor Affiliates.

1.      The Legal Standard for Substantive Consolidation Is Not Met Here

There is no legal or equitable basis whatsoever for ignoring the separate business and legal character of the Domestic Operating Companies for the benefit of LBHI's creditors. Substantive consolidation is a rare and an extraordinary remedy, and may not even be considered unless one of the below threshold facts has been established by the proponents of substantive consolidation:

(1) LBHI's creditors and creditors of the Domestic Operating Companies reasonably dealt with LBHI and the Domestic Operating Companies as a single

economic unit, and no other creditors who dealt with the Debtors as separate entities in extending credit would be prejudiced by substantive consolidation; or

(2) the affairs of LBHI and the Domestic Operating Companies were so entangled that consolidation would benefit all creditors.

Neither of these two criteria can be met in this case, and there is no harm to remedy.

The critical issue with respect to the first prong of the substantive consolidation analysis is whether any creditors were misled by the Debtors, when extending credit to them, into viewing them as a single entity. Only after finding that certain creditors were misled in terms of corporate separateness, does the court proceed to determine whether there were also creditors who actually and reasonably relied on the corporate separateness of the entities with which they were dealing. In re Owens Corning, 419 F.3d 195, 212 (3d Cir. 2005). See also In re Am. Camshaft Specialties, Inc., 410 B.R. 765 (Bankr. E.D. Mich. 2009) (granting a motion to dismiss the substantive consolidation count of the debtors' complaint and holding that the fact that some customers viewed the entities as a single company is insufficient to show that corporate separateness was so disregarded as to lead creditors to treat the entities as a single company).

This is far from the case here. LBHI specifically disclosed to its creditors LBHI's separateness from its operating subsidiaries in numerous public SEC filings delivered to purchasers of its publicly traded debt. In particular, LBHI expressly advised its creditors of this corporate separateness as follows:

- We are a holding company and you can only depend on our earnings and assets, and not those of our subsidiaries, for payment of principal and interest on the notes.

- The notes will be solely our obligations, and no other entity will have any obligation, contingent or otherwise, to make any payments in respect of the notes.

- Our subsidiaries will have no obligation to pay any amount in respect of the notes or to make any funds available therefor.

- Due to covenants contained in certain of our debt agreements and regulations relating to capital requirements affecting certain of our more significant subsidiaries, the ability of certain subsidiaries to pay dividends and other distributions and make loans to us is restricted.

- Additionally, as an equity holder, our ability to participate in any distribution of assets of any subsidiary is subordinate to the claims of creditors of the subsidiary.

LBHI Prospectus Supplement (Form 424B2), at S-5 (Aug. 2, 2007); LBHI Prospectus Supplement (Form 424B2), at S-8 to -9 (Aug. 28, 2006); LBHI Prospectus Supplement (Form 424B2), at S-7 (May 30, 2006); LBHI Prospectus Supplement (Form 424B2), at S-6 (May 20, 2005); LBHI Prospectus Supplement (Form 424B2), at S-6 to -7 (May 19, 2005) (emphasis added).

Public proclamations of corporate separateness were also widespread for Lehman Brothers Inc. ("LBI"), Lehman's U.S. regulated broker-dealer, and the entity that was the parent entity of Lehman's various operating companies (including LBSF), which was at all times broken out separately in Lehman's financial statements, was separately rated by Lehman's creditors, and was subject to net-capital rules to which Lehman's operating companies were not subject.  Nor has any evidence been presented to suggest that creditors did not treat LBIE, its regulated European broker-dealer, separately from LBHI, LBI, and Lehman's various operating companies.  Indeed, to facilitate such treatment creditors were provided with organizational charts identifying the legally separate entities and their relationships within the LBHI structure.

Similarly, LBT, an entity organized in the Netherlands to issue structured notes that were unconditionally guaranteed by LBHI, and other Lehman Affiliates represented to investors in various disclosure documents (which included separate financial statement for LBT) that LBT would be treated as a legal entity separate from LBHI and other Affiliates and that they would have separate claims against LBT as issuer of the notes and LBHI as a guarantor of those notes.

Nor is the second prong met here, because there has been no hopeless entanglement of the Debtors' assets.

- Prior to bankruptcy, the Debtors' financial statements – which included the unconsolidated balance sheets of LBHI, the unconsolidated balance sheets of LBI, and the combined balance sheets of all other direct and indirect subsidiaries of LBHI – provided a clear accounting of intercompany payables and receivables, showing both amounts due to and from subsidiaries and affiliates.  Debtors' Disclosure Statement at 82 ("Lehman maintained separate books and records, and _detailed accounts_ of the assets and liabilities of its parent and subsidiaries on an _entity by entity_ basis, such that the assets of each entity can be distinguished" and "transactions among Lehman entities are generally traceable") (emphasis added).

- Since filing for bankruptcy, the Debtors have continued to provide a separate accounting of each affiliate's assets and liabilities in monthly operating reports, and have filed separate schedules, listing in each a clear accounting of intercompany payables and receivables.

Establishing the estates for each Debtor merely requires following the roadmap established by these records.  This is hardly the daunting task described by proponents of the Ad Hoc Group Plan.  See Ad Hoc Group Plan Disclosure Statement at 15-27.  It is precisely the course taken by numerous bankruptcies of complex business organizations.

     2.     The "Facts" the Filing Debtors Identify as Creating a Risk of Substantive Consolidation Do Not Change this Analysis

The main "fact" identified by the Filing Debtors as supposedly supporting substantive consolidation is that Lehman employees viewed the various Debtors as a single entity.  However, allegations that Lehman was internally organized as a single entity that filed a single tax return, shared back office resources and made investment decisions on behalf of the

11

entire business, and had corporate entities that lacked their own physical premises is wholly irrelevant to the dispositive question: whether the Debtors' *creditors* regarded the various separate entities as a single entity.  See In re Augie/Restivo Baking Co., 860 F.2d 515, 518-19 (2d Cir. 1988); In re 599 Consumer Elecs., Inc., 195 B.R. 244, 249 (S.D.N.Y. 1996).

If the "facts" asserted by the Filing Debtors here were sufficient to justify substantive consolidation it would mean that every large corporation filing for bankruptcy would have to be substantively consolidated; an impossible result as substantive consolidation is an extreme remedy to be used "sparingly."  In this regard, Lehman was no different from other large financial enterprises, which generally all operate as a single group of businesses, with one board of directors or executive committee having responsibility for the overall performance of the company, while using various corporate entities for tax and liability management purposes. Importantly, it is difficult to see how the SEC and federal bank and bank holding company regulators could continue to implement customer safety regimes if the "facts" purportedly suggesting substantive consolidation as identified in the Debtors' Disclosure Statement were sufficient to override corporate separateness.

Moreover, the Filing Debtors' fundamental contention that everyone employed by a Lehman entity treated all of Lehman affiliates as one legal entity is demonstrably untrue.  As regulated broker-dealers, LBI and LBIE operated under strict regulatory capital requirements. The U.S. broker-dealer law required LBI to be in compliance with the "net capital" rules and to notify the SEC immediately if at any time it was no longer in compliance with those rules.  As an enterprise, Lehman's business activities were organized to ensure that certain of its businesses were conducted by separate and discrete legal entities not subject to the capital rules applicable to its broker-dealers.

The high quality of the Debtors' books and records is therefore not surprising.  As explained by the Court-appointed Examiner, to ensure compliance with these legal and regulatory requirements, Lehman maintained elaborate legal, accounting and compliance groups that were required to police this corporate separateness.  Specifically:

- Legal Entity Controllers ("LECs") were assigned to each legal entity, including LBSF, and were responsible for monitoring the equity levels of that entity.  LECs were "a critical part of the process whereby the financial data of each entity was assembled in a reportable form," and after May 2008 met at least monthly. Examiner's Report at 1605.

- This focus was driven by the need to make sure that no subsidiary of LBI fell insolvent, as "LBI would be precluded from trading if one of its subsidiaries failed to meet a particular capital requirement."  Id.

- Any suggestion that Lehman's Board, management, legal, compliance or audit functions were unaware or indifferent to corporate separateness concerns is plainly counterfactual.  See, e.g., id.

These safeguards ensured that assets of various Lehman entities did not become hopelessly entangled.

12

There is no question that by substantively consolidating LBHI and the Domestic Operating Companies, the recoveries for the latter's creditors would be substantially diminished and likely also substantially delayed. The burden of justifying such an untoward outcome falls squarely on those seeking substantive consolidation, and it cannot possibly be met here. Moreover, even though there is absolutely no requirement that in opposing this unjust outcome the Domestic Operating Company Creditors demonstrate that they relied on the separate legal identities of the Domestic Operating Companies, they in fact specifically relied on that separateness by executing transactions with the Domestic Operating Companies, purposefully negotiating agreements with those companies – the more asset-rich entities – while obtaining separate guarantees from LBHI. Substantive consolidation would deny Domestic Operating Company creditors the benefit of their very specific contractual bargains – a claim against the Domestic Operating Company *and* a claim against the LBHI guarantee.

Similarly, entities that purchased notes issued by LBT have a claim against LBT in respect of such notes and a separate claim against LBHI as the guarantor of such notes. As with the Domestic Operating Company creditors who negotiated for the benefit of a separate LBHI guaranty claim, substantive consolidation would deny holders of the LBT notes the benefit of their contractual bargain.

3.    Substantive Consolidation of LBI or Foreign Non-Debtor Affiliates Is Impermissible

Finally, it is clear that the substantive consolidation of certain non-Debtor Affiliates, in particular LBI and foreign non-Debtor Affiliates, such as LBIE and LBT, that are under administration in foreign jurisdictions, is unavailable here.

First, there is no precedent for consolidating a regulated broker-dealer with non-broker-dealer entities absent wide ranging fraud by the broker-dealer. Second, substantive consolidation cannot be used offensively as a means to eliminate the purportedly duplicative claims of certain of LBHI's foreign non-Debtor affiliates because the court has no practical ability, nor any legal or factual basis, to substantively consolidate the estates of such entities with those of the Filing Debtors, particularly as many of them are subject to the jurisdiction of foreign regulators or courts – a reality the Filing Debtors concede. Debtors' Disclosure Statement at 82. Indeed, the Plan Proponents are not aware of any instances in which a United States bankruptcy court has ordered substantive consolidation of a domestic debtor with a foreign affiliate that is subject to separate insolvency proceedings in a foreign jurisdiction over the objection of the administrator of the foreign estate. International precedent likewise does not support substantive consolidation in the circumstances presented here, and any attempt at consolidation would therefore disturb the substantial and broad cross-border coordination efforts that have been undertaken so far, and would violate fundamental principles of comity. Nor is there any statutory authority or precedent for the Filing Debtors' suggestion that Claims of foreign affiliates opposing substantive consolidation could be disallowed.

Moreover, creditors of certain foreign non-Debtor affiliates of LBHI, like creditors of the Domestic Operating Companies, in many instances had ample reason to rely upon representations regarding the corporate separateness of LBHI and its affiliates contained in the documentation governing the securities that they purchased. For example, documentation

governing Structured Securities issued by LBT, LBB, and other entities under the EMTN Program included separate financial statements for each of LBHI, LBT and LBB, and expressly encouraged prospective lenders to review such statements when deciding whether or not to purchase EMTN securities.  EMTN Program Base Prospectus at 3 (July 24, 2008).

### C.    Domestic Operating Company Creditor Representative and Governance Provisions

The Plan provides for the appointment of a Domestic Operating Company Creditor Representative to act as a fiduciary on behalf, and in the best interests, of the Domestic Operating Companies and their creditors.  Thus, the Domestic Operating Company Creditor Representative – and not the Plan Administrator – will be responsible for major decisions affecting the Domestic Operating Company.

The Confirmation Order will provide for the appointment of the Primary Creditor Representative, and on the Effective Date, such appointment of the Primary Creditor Representative will be effective.  After the Effective Date, to the extent that an actual or potential conflict (a "Creditor Representative Conflict") exists in connection with the performance of the Primary Creditor Representative's responsibilities under the Plan, an Additional Creditor Representative will be appointed with respect to such Creditor Representative Conflict by (i) the Primary Creditor Representative, without the need for Bankruptcy Court approval, so long as such Additional Creditor Representative has been identified by the Requisite Plan Proponents in the Plan Supplement as a potential Additional Creditor Representative, or (ii) the Bankruptcy Court, upon the motion of the Primary Creditor Representative or any holder of Claims against the Domestic Operating Company with respect to which such Creditor Representative Conflict exists.  A notice of the appointment of any Additional Creditor Representative pursuant to clause (i) of this paragraph will be filed in the Chapter 11 Cases no later than five (5) Business Days after such appointment.

Notwithstanding Section 6.1 of the Plan, the Domestic Operating Company Creditor Representative will have the obligation, authority and right to act as fiduciary on behalf, and in the best interests, of the Domestic Operating Companies and their creditors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out the following responsibilities:

    (i)    subject to Section 6.7 of the Plan, evaluate and determine the proper treatment of all Claims and Causes of Action asserted (or that could be asserted) against a Domestic Operating Company, including whether to object to, litigate, seek to subordinate, compromise or settle such Claim, including, without limitation, any and all Intercompany Claims;

    (ii)    subject to Section 6.7 of the Plan, evaluate and assert each Claim and Litigation Claim of a Domestic Operating Company against a Debtor or non-Debtor Affiliate, including whether to, as applicable, litigate, compromise or settle such Claim or Litigation Claim, including, without limitation, any such Claim or Litigation Claim arising from any repurchase transaction or securitization;

(iii)     subject to Section 6.7 of the Plan, with respect to (A) any Disputed Claims against a Domestic Operating Company not resolved as of the Effective Date, and (B) any other Claim against a Domestic Operating Company that is not Allowed as of the Effective Date, control and effectuate the Claims reconciliation process, including to object to, litigate, seek to subordinate, compromise or settle such Claims, and review and approve objections to and proposed settlements of Disputed Claims as they relate to the Domestic Operating Companies;

(iv)     review any Administrative Expenses proposed to be allocated to a Domestic Operating Company, including any expenses allocated pursuant to the Debtor Allocation Agreement, and approve any such allocations it determines to be in accordance with the Debtor Allocation Agreement or otherwise to reasonably reflect the benefit received by the Domestic Operating Company from the expense incurred;

(v)     supervise the making of Distributions to holders of Allowed Claims against the Domestic Operating Companies in accordance with Article VIII of the Plan;

(vi)     exercise the rights and perform the obligations of the Reserve Agent with respect to the Domestic Operating Companies in accordance with Section 8.4 of the Plan;

(vii)     subject to Section 6.7 of the Plan, request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code;

(viii)     subject to Section 6.7 of the Plan, review and approve the prosecution of Litigation Claims, Causes of Action, and adversary and other proceedings as they relate to any Domestic Operating Company, if any, including approving proposed settlements thereof;

(ix)     retain professionals to assist in performing its duties under the Plan;

(x)     determine whether to create a Liquidating Trust for the assets of a Domestic Operating Company pursuant to Section 10.1 of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with Section 15.2 of the Plan;

(xi)     evaluate, insofar as they relate or affect any Domestic Operating Company, intercompany arrangements among one or more of the Debtors, or among one or more of the Debtors and the non-Debtor Affiliates, including any intercompany arrangements in respect of sharing of tax items, and ensure that such arrangements are executed on arm's length terms;

(xii)    determine whether to take any action to wind-down or dissolve any Domestic Operating Company and exercise its reasonable business judgment to direct and control any such wind-down, liquidation, dissolution and/or abandoning of the assets of the Debtors; and

(xiii)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Domestic Operating Company Creditor Representative;

*provided, however*, that with respect to (a) Intercompany Claims and Causes of Action asserted (or that could be asserted) by a Non-Controlled Affiliate against a Domestic Operating Company or (b) Claims and Causes of Action asserted (or that could be asserted) by a Domestic Operating Company against a Non-Controlled Affiliate (collectively, "Non-Controlled Affiliate Claims"), the authority to object to, litigate, seek to subordinate, compromise, or settle such Non-Controlled Affiliate Claims shall vest with the Plan Administrator; *provided, further* that (x) any such settlement of Non-Controlled Affiliate Claims will be of no force or effect absent entry of a Final Order approving such settlement, upon notice and a hearing, and (y) the Domestic Operating Company Creditor Representative shall have the right and authority to file an objection, response, or to otherwise seek to be heard with respect to any proposed settlement of a Non-Controlled Affiliate Claim.

## III.    OVERVIEW OF PLAN

### A.    Classification of Claims and Equity Interests under the Plan

The Claims asserted against each Debtor and Equity Interests in each Debtor are separated into Classes.  Generally, the classification structure of the Plan includes Classes for senior and subordinated unsecured debt, guarantee claims filed by third parties and intercompany claims.

The following table briefly summarizes the classification, treatment, and estimated recoveries of all Claims against the Debtors and the Equity Interests in the Debtors under the Plan and compares estimated recoveries with those under the Debtors' Plan.  The summary table is qualified in its entirety by reference to the full text of the Plan, which is annexed to this Disclosure Statement as Exhibit 1.  Projected recoveries are based solely upon the financial information publicly disclosed by the Filing Debtors in the Debtors' Disclosure Statement, monthly operating reports, SEC filings as well as other publicly available sources. The Plan Proponents have not independently verified and do not warrant the accuracy of such information.  Actual recoveries may be higher or lower than the amounts indicated based upon the actual realization from the liquidation of assets and reconciliation of claims and liabilities. For a more detailed description of the terms and provisions of the Plan, see Section V, "Summary of the Chapter 11 Plan."

## SUMMARY OF CLASSIFICATION, TREATMENT AND ESTIMATED RECOVERY OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

Further detail regarding the Estimated Recoveries set forth in the tables below is included in the Recovery Analysis and notes annexed hereto as Exhibit 4. Unless otherwise noted, the information and data included in the Recovery Analysis substantially rely on information contained in the Debtors' Disclosure Statement, including without limitation in the recovery analysis presented as Exhibit 4 thereto. **Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth by the Filing Debtors and relied upon solely for purposes of this Disclosure Statement in the Plan Proponents' Recovery Analysis. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein. Furthermore, the Plan Proponents reserve the right to modify any such estimates or any other information, data, or assumptions contained in the Recovery Analysis.**

### Lehman Brothers Holdings Inc. ("LBHI")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims and Equity Interests Under the Plan | Estimated Recovery Under Debtors' Plan[2] | Estimated Recovery Under Plan[3] | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LBHI | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | 100% | 100% | Impaired, Entitled to Vote |

---

[2]     The Estimated Recoveries under the Debtors' Plan assume (i) that the holders of Allowed Claims in each of LBHI Classes 3, 6 and 7 vote to accept the Plan by the requisite majorities required by section 1126 of the Bankruptcy Code (the "Settlement Acceptance") and (ii) reallocation of Distributions from holders of Allowed Claims in certain other classes. If there is no Settlement Acceptance, the Debtors' Disclosure Statement provides that the Estimated Recoveries of LBHI Classes 3 and 7 would be approximately 17% and 15%, respectively (no Claims are expected to be Allowed in LBHI Class 6).

[3]     All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims and Equity Interests Under the Plan | Estimated Recovery Under Debtors' Plan[2] | Estimated Recovery Under Plan[3] | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LBHI | At the option of LBHI: (i) payment in Cash by LBHI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in LBHI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | 100% | 100% | Impaired, Entitled to Vote |
| 3 | 3 | Senior Unsecured Claims against LBHI | Payment in Cash in the amount of its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution and (iv) Subordinated Class 10C Distribution. | 21.4% | 16.0% | Impaired, Entitled to Vote |
| 4A | 4A | Senior Intercompany Claims against LBHI | Payment in Cash in the amount of their Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution and (iv) Subordinated Class 10C Distribution. | 16.6% | 16.0% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims and Equity Interests Under the Plan | Estimated Recovery Under Debtors' Plan[2] | Estimated Recovery Under Plan[3] | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 4B | 4B | Senior Affiliate Guarantee Claims against LBHI | Payment in Cash in the amount of their Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution. | 16.1% | 15.6% | Impaired, Entitled to Vote |
| 5A | 5A | Senior Third-Party Guarantee Claims against LBHI | Payment in Cash in the amount of its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution. | 12.9% | 15.6% | Impaired, Entitled to Vote |
| 5B | 5B | Senior Third-Party LBT/LBSN Guarantee Claims against LBHI | Payment in Cash in the amount of its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution. | 11.2% | 15.6% | Impaired, Entitled to Vote |
| 6 | 6 | Derivative Claims against LBHI | Payment in Cash of its Pro Rata Share of Available Cash from LBHI. | - | - | Impaired, Entitled to Vote |
| 7 | 7 | General Unsecured Claims against LBHI | Payment in Cash of its Pro Rata Share of Available Cash from LBHI. | 19.8% | 14.7% | Impaired, Entitled to Vote |
| 8A | 8A | Intercompany Claims against LBHI | Payment in Cash of its Pro Rata Share of Available Cash from LBHI. | 15.0% | - | Impaired, Entitled to Vote |
| 8B | 8B | Affiliate Guarantee Claims against LBHI | Payment in Cash of its Pro Rata Share of Available Cash from LBHI. | 15.0% | 14.7% | Impaired, Entitled to Vote |
| 9 | 9 | Derivative Guarantee Claims against LBHI | Payment in Cash in the amount of its Pro Rata Share of Available Cash from LBHI. | 12.0% | 14.7% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims and Equity Interests Under the Plan | Estimated Recovery Under Debtors' Plan[2] | Estimated Recovery Under Plan[3] | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 10A | 10A | Subordinated Class 10A Claims against LBHI | No Distribution (because such Distributions are automatically reallocated to Claims in the Senior Unsecured Claims and Senior Intercompany Claims in accordance with the underlying agreements) unless and until all holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10A shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution. | - | - | Impaired, Not Solicited, Deemed to Reject |
| 10B | 10B | Subordinated Class 10B Claims against LBHI | No Distribution (because such Distributions are automatically reallocated to Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims and Senior Third-Party LBT/LBSN Guarantee Claims in accordance with the underlying agreements) unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10B shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution. | - | - | Impaired, Not Solicited, Deemed to Reject |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims and Equity Interests Under the Plan | Estimated Recovery Under Debtors' Plan[2] | Estimated Recovery Under Plan[3] | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 10C | 10C | Subordinated Class 10C Claims against LBHI | No Distribution (because such Distributions are automatically reallocated to Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, Senior Third-Party LBT/LBSN Guarantee Claims, Subordinated Class 10A Claims and Subordinated Class 10B Claims in accordance with the underlying agreements) unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10C shall receive its Pro Rata Share of Available Cash from LBHI. | - | - | Impaired, Not Solicited, Deemed to Reject |
| 11 | 11 | Section 510(b) Claims against LBHI | No Distribution unless and until all holders of Allowed Claims against LBHI other than Claims in LBHI Class 11 are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 11 shall receive its Pro Rata Share of Available Cash from LBHI. | - | - | Impaired, Not Solicited, Deemed to Reject |
| 12 | 12 | Equity Interests in LBHI | No Distributions (unless all other creditors have been paid in full).  All Equity Interests will be cancelled and one new share of LBHI common stock will be issued to the Plan Administrator which will hold such share for the benefit of the holders of the former Equity Interests consistent with their former economic entitlement. | - | - | Impaired, Not Solicited, Deemed to Reject |

## Lehman Commercial Paper Inc. ("LCPI")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LCPI | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |
| 2 | 2 | Secured Claims against LCPI | At the option of LCPI: (i) payment in Cash by LCPI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LCPI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | 100% | 100% | Impaired, Entitled to Vote |
| 3 | 3 | Derivative Claims against LCPI | Payment in Cash of its Pro Rata Share of Available Cash from LCPI. | 51.9% | 60.4% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LCPI | Payment in Cash of its Pro Rata Share of Available Cash from LCPI. | 51.9% | 60.4% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | 49.6% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| N/A | 5 | Intercompany Claims against LCPI | Payment in Cash of its Pro Rata Share of Available Cash from LCPI. | - | 60.4% | Impaired, Entitled to Vote |
| 5B | N/A | Intercompany Claims of Participating Subsidiary Debtors | N/A | 48.3% | - | Impaired, Entitled to Vote |
| 5C | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | N/A | 51.9% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LCPI | No Distributions (unless all other holders of Allowed Claims against LCPI have been paid in full).  Equity Interest shall remain in place until LCPI is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

### Lehman Brothers Commodity Services Inc. ("LBCS")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LBCS | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LBCS | At the option of LBCS: (i) payment in Cash by LBCS in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in LBCS Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | 100% | 100% | Impaired, Entitled to Vote |
| 3 | 3 | Derivative Claims against LBCS | Payment in Cash of its Pro Rata Share of Available Cash from LBCS. | 49.8% | 59.2% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LBCS | Payment in Cash of its Pro Rata Share of Available Cash from LBCS. | 49.8% | 59.2% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | 38.9% | - | Impaired, Entitled to Vote |
| N/A | 5 | Intercompany Claims against LBCS | Payment in Cash of its Pro Rata Share of Available Cash from LBCS. | - | 59.2% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5B | N/A | Intercompany Claims of Participating Subsidiary Debtors | N/A | - | - | Impaired, Entitled to Vote |
| 5C | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | N/A | 49.8% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LBCS | No Distributions (unless all other holders of Allowed Claims against LBCS have been paid in full). Equity Interest shall remain in place until LBCS is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## Lehman Brothers Special Financing Inc. ("LBSF")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LBSF | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |
| 2 | 2 | Secured Claims against LBSF | At the option of LBSF: (i) payment in Cash by LBSF in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such | 100% | 100% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| | | | treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBSF Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | | | |
| 3 | 3 | Derivative Claims against LBSF | Payment in Cash of its Pro Rata Share of Available Cash from LBSF. | 22.3% | 26.1% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LBSF | Payment in Cash of its Pro Rata Share of Available Cash from LBSF. | 22.3% | 26.1% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | 20.7% | - | Impaired, Entitled to Vote |
| N/A | 5 | Intercompany Claims against LBSF | Payment in Cash of its Pro Rata Share of Available Cash from LBSF. | - | 26.1% | Impaired, Entitled to Vote |
| 5B | N/A | Intercompany Claims of Participating Subsidiary Debtors | N/A | 18.7% | - | Impaired, Entitled to Vote |
| 5C | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | N/A | 22.3% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LBSF | No Distributions (unless all other holders of Allowed Claims against LBSF have been paid in full). Equity Interests shall remain in place until LBSF is dissolved. | - | - | Impaired, Not Impaired, Not Solicited, Deemed to Reject |

## Lehman Brothers OTC Derivatives Inc. ("LOTC")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LOTC | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |
| 2 | 2 | Secured Claims against LOTC | At the option of LOTC: (i) payment in Cash by LOTC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LOTC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | Derivative Claims against LOTC | Payment in Cash of its Pro Rata Share of Available Cash from LOTC. | 29.4% | 32.3% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LOTC | Payment in Cash of its Pro Rata Share of Available Cash from LOTC. | 29.4% | 32.3% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | 25.8% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| N/A | 5 | Intercompany Claims against LOTC | Payment in Cash of its Pro Rata Share of Available Cash from LOTC. | - | 32.3% | Impaired, Entitled to Vote |
| 5B | N/A | Intercompany Claims of Participating Subsidiary Debtors | N/A | 25.8% | - | Impaired, Entitled to Vote |
| 5C | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | N/A | 29.4% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LOTC | No Distributions (unless all other holders of Allowed Claims against LOTC have been paid in full). Equity Interest shall remain in place until LOTC is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## Lehman Brothers Commercial Corporation ("LBCC")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LBCC | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LBCC | At the option of LBCC:  (i) payment in Cash by LBCC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | 100% | 100% | Impaired, Entitled to Vote |
| 3 | 3 | Derivative Claims against LBCC | Payment in Cash of its Pro Rata Share of Available Cash from LBCC. | 30.7% | 34.0% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LBCC | Payment in Cash of its Pro Rata Share of Available Cash from LBCC. | 30.7% | 34.0% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | 16.8% | - | Impaired, Entitled to Vote |
| N/A | 5 | Intercompany Claims against LBCC | Payment in Cash of its Pro Rata Share of Available Cash from LBCC. | - | 34.0% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5B | N/A | Intercompany Claims of Participating Subsidiary Debtors | N/A | 27.2% | - | Impaired, Entitled to Vote |
| 5C | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | N/A | 30.7% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LBCC | No Distributions (unless all other holders of Allowed Claims against LBCC have been paid in full).  Equity Interest shall remain in place until LBCC is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## Lehman Brothers Derivative Products Inc. ("LBDP")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LBDP | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LBDP | At the option of LBDP: (i) payment in Cash by LBDP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in LBDP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | Derivative Claims against LBDP | Payment in Cash of its Pro Rata Share of Available Cash from LBDP. | 100% | 100% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LBDP | Payment in Cash of its Pro Rata Share of Available Cash from LBDP. | 100% | 100% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 5 | Intercompany Claims against LBDP | Payment in Cash of its Pro Rata Share of Available Cash from LBDP. | - | 100% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 100% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LBDP | No Distributions (unless all other holders of Allowed Claims against LBDP have been paid in full). Equity Interest shall remain in place until LBDP is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

### Lehman Brothers Financial Products Inc. ("LBFP")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LBFP | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LBFP | At the option of LBFP: (i) payment in Cash by LBFP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBFP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | Derivative Claims against LBFP | Payment in Cash of its Pro Rata Share of Available Cash from LBFP | 100% | 100% | Impaired, Entitled to Vote |
| 4 | 4 | General Unsecured Claims against LBFP | Payment in Cash of its Pro Rata Share of Available Cash from LBFP. | 100% | 100% | Impaired, Entitled to Vote |
| 5A | N/A | Intercompany Claims of LBHI | N/A | 80.1% | - | Impaired, Entitled to Vote |
| N/A | 5 | Intercompany Claims against LBFP | Payment in Cash of its Pro Rata Share of Available Cash from LBFP. | - | 100% | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 100% | - | Impaired, Entitled to Vote |
| 6 | 6 | Equity Interests in LBFP | No Distributions (unless all other holders of Allowed Claims against LBFP have been paid in full).  Equity Interest shall remain in place until LBFP is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## LB 745 LLC ("LB 745")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LB 745 | Payment in full, in Cash.  Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LB 745 | At the option of LB 745: (i) payment in Cash by LB 745 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB 745 Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against LB 745 | Payment in Cash of its Pro Rata Share of Available Cash from LB 745. | 100% | 100% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | 79.1% | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against LB 745 | Payment in Cash of its Pro Rata Share of Available Cash from LB 745. | - | 100% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in LB 745 | No Distributions (unless all other holders of Allowed Claims against LB 745 have been paid in full). Equity Interest shall remain in place until LB 745 is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

### PAMI Statler Arms LLC ("PAMI Statler")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against PAMI Statler | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against PAMI Statler | At the option of PAMI Statler:  (i) payment in Cash by PAMI Statler in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in PAMI Statler Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against PAMI Statler | Payment in Cash of its Pro Rata Share of Available Cash from PAMI Statler. | - | - | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against PAMI Statler | Payment in Cash of its Pro Rata Share of Available Cash from PAMI Statler. | - | - | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in PAMI Statler | No Distributions (unless all other holders of Allowed Claims against PAMI Statler have been paid in full). Equity Interest shall remain in place until PAMI Statler is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## CES Aviation LLC ("CES")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against CES | Payment in full, in Cash.\n\nClaims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against CES | At the option of CES: (i) payment in Cash by CES in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in CES Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against CES | Payment in Cash of its Pro Rata Share of Available Cash from CES. | 100% | 100% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | 80.0% | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against CES | Payment in Cash of its Pro Rata Share of Available Cash from CES. | - | 100% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 100% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in CES | No Distributions (unless all other holders of Allowed Claims against CES have been paid in full). Equity Interest shall remain in place until CES is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## CES Aviation V LLC ("CES V")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against CES V | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against CES V | At the option of CES V: (i) payment in Cash by CES V in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in CES V Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against CES V | Payment in Cash of its Pro Rata Share of Available Cash from CES V. | 37.7% | 37.7% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | 30.1% | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against CES V | Payment in Cash of its Pro Rata Share of Available Cash from CES V. | - | 37.7% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 37.7% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in CES V | No Distributions (unless all other holders of Allowed Claims against CES V have been paid in full). Equity Interest shall remain in place until CES V is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## CES Aviation IX LLC ("CES IX")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against CES IX | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against CES IX | At the option of CES IX:  (i) payment in Cash by CES IX in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in CES IX Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against CES IX | Payment in Cash of its Pro Rata Share of Available Cash from CES IX. | 61.2% | 61.2% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | 49.0% | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against CES IX | Payment in Cash of its Pro Rata Share of Available Cash from CES IX. | - | 61.2% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 61.2% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in CES IX | No Distributions (unless all other holders of Allowed Claims against CES IX have been paid in full).  Equity Interest shall remain in place until CES IX is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## East Dover Limited ("East Dover")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against East Dover | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against East Dover | At the option of East Dover: (i) payment in Cash by East Dover in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in East Dover Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against East Dover | Payment in Cash of its Pro Rata Share of Available Cash from East Dover. | 100% | 100% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | 78.9% | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against East Dover | Payment in Cash of its Pro Rata Share of Available Cash from East Dover. | - | 100% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 100% | - | Impaired, Entitled to Vote |

45

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in East Dover | No Distributions (unless all other holders of Allowed Claims against East Dover have been paid in full). Equity Interest shall remain in place until East Dover is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## Lehman Scottish Finance L.P. ("LS Finance")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LS Finance | Payment in full, in Cash.

Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LS Finance | At the option of LS Finance: (i) payment in Cash by LS Finance in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LS Finance Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | 100% | 100% | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against LS Finance | Payment in Cash of its Pro Rata Share of Available Cash from LS Finance. | 71.2% | 71.2% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against LS Finance | Payment in Cash of its Pro Rata Share of Available Cash from LS Finance. | - | - | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in LS Finance | No Distributions (unless all other holders of Allowed Claims against LS Finance have been paid in full). Equity Interest shall remain in place until LS Finance is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

### Luxembourg Residential Properties Loan Finance S.a.r.l. ("LUXCO")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LUXCO | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LUXCO | At the option of LUXCO: (i) payment in Cash by LUXCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LUXCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against LUXCO | Payment in Cash of its Pro Rata Share of Available Cash from LUXCO. | 4.8% | 4.8% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against LUXCO | Payment in Cash of its Pro Rata Share of Available Cash from LUXCO. | - | 4.8% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 4.8% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in LUXCO | No Distributions (unless all other holders of Allowed Claims against LUXCO have been paid in full). Equity Interest shall remain in place until LUXCO is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## BNC Mortgage LLC ("BNC")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against BNC | Payment in full, in Cash.<br><br>Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against BNC | At the option of BNC: (i) payment in Cash by BNC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in BNC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against BNC | Payment in Cash of its Pro Rata Share of Available Cash from BNC. | 1.9% | 1.9% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against BNC | Payment in Cash of its Pro Rata Share of Available Cash from BNC. | - | 1.9% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 1.9% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in BNC | No Distributions (unless all other holders of Allowed Claims against BNC have been paid in full). Equity Interest shall remain in place until BNC is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

### LB Rose Ranch LLC ("LB Rose Ranch")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LB Rose Ranch | Payment in full, in Cash.  Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LB Rose Ranch | At the option of LB Rose Ranch:  (i) payment in Cash by LB Rose Ranch in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB Rose Ranch Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against LB Rose Ranch | Payment in Cash of its Pro Rata Share of Available Cash from LB Rose Ranch. | 38.9% | 38.9% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against LB Rose Ranch | Payment in Cash of its Pro Rata Share of Available Cash from LB Rose Ranch. | - | - | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in LB Rose Ranch | No Distributions (unless all other holders of Allowed Claims against LB Rose Ranch have been paid in full). Equity Interest shall remain in place until LB Rose Ranch is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## Structured Asset Securities Corporation ("SASCO")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against SASCO | Payment in full, in Cash. Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against SASCO | At the option of SASCO: (i) payment in Cash by SASCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in SASCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against SASCO | Payment in Cash of its Pro Rata Share of Available Cash from SASCO. | 50.1% | 58.3% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | 40.1% | - | Impaired, Entitled to Vote |
| 4 | 4 | Intercompany Claims against SASCO | Payment in Cash of its Pro Rata Share of Available Cash from SASCO. | - | 58.3% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 50.1% | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in SASCO | No Distributions (unless all other holders of Allowed Claims against SASCO have been paid in full).  Equity Interest shall remain in place until SASCO is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

### LB 2080 Kalakaua Owners LLC ("LB 2080")

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims against LB 2080 | Payment in full, in Cash.  Claims in Class 1 shall not receive post petition interest. | - | - | Impaired, Entitled to Vote |

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 2 | 2 | Secured Claims against LB 2080 | At the option of LB 2080: (i) payment in Cash by LB 2080 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB 2080 Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. | - | - | Impaired, Entitled to Vote |
| 3 | 3 | General Unsecured Claims against LB 2080 | Payment in Cash of its Pro Rata Share of Available Cash from LB 2080. | 0.8% | 0.8% | Impaired, Entitled to Vote |
| 4A | N/A | Intercompany Claims of LBHI | N/A | - | - | Impaired, Entitled to Vote |
| N/A | 4 | Intercompany Claims against LB 2080 | Payment in Cash of its Pro Rata Share of Available Cash from LB 2080. | - | 0.8% | Impaired, Entitled to Vote |
| 4B | N/A | Intercompany Claims of Affiliates Other Than LBHI | N/A | 0.8% | - | Impaired, Entitled to Vote |

57

| Debtors' Plan Class | Plan Class | Type of Claim or Equity Interest | Treatment of Allowed Claims Under the Plan | Estimated Recovery Under Debtors' Plan | Estimated Recovery Under Plan | Impairment; Entitlement to Vote |
|---|---|---|---|---|---|---|
| 5 | 5 | Equity Interests in LB 2080 | No Distributions (unless all other holders of Allowed Claims against LB 2080 have been paid in full). Equity Interest shall remain in place until LB 2080 is dissolved. | - | - | Impaired, Not Solicited, Deemed to Reject |

## B.    Holders of Claims Entitled to Vote

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired and that are not deemed to have rejected a proposed plan are entitled to vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are altered under the plan. Classes of claims or equity interests under a Chapter 11 plan in which the holders of claims or equity interests are unimpaired under a Chapter 11 plan are deemed to have accepted the proposed plan and are not entitled to vote to accept or reject the plan. In addition, classes of claims or equity interests in which the holders of claims or equity interests will not receive or retain any property are deemed to have rejected a proposed plan and are not entitled to vote to accept or reject such plan.

Claims in all Classes under the Plan are impaired and, to the extent Claims in such Classes are Allowed, the holders of such Claims will receive Distributions under and to the extent set forth in the Plan. Holders of Claims in all Classes are entitled to vote to accept or reject the Plan. Holders of Claims in LBHI Classes 10A, 10B, 10C and 11, and Equity Interests in all Debtors are impaired and are deemed to have rejected the Plan because their votes to accept or reject the Plan are not being solicited.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan. For a more detailed description of the requirements for confirmation of the Plan, see the "Confirmation and Consummation of the Plan" section of this Disclosure Statement.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Plan Proponents reserve the right to amend the Plan or seek to confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Plan Proponents shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code enables the confirmation of a chapter 11 plan notwithstanding the rejection of a plan by one or more impaired classes of claims or equity interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting class.

### C.    Voting Procedures

The voting deadline is 4:00 p.m., prevailing Eastern Time, [], 2011  (the  "Voting Deadline").

If you are entitled and are being solicited to vote to accept or reject the Plan, a ballot is enclosed for the purpose of voting on the Plan.  If you hold Claims in more than one Class and you are entitled to vote Claims in more than one Class, you will receive ballots enabling you to vote each separate Class of Claims.  Ballots and master ballots ("Master Ballots") should be returned to:

If by overnight mail or hand delivery, to:
Epiq Bankruptcy Solutions, LLC
Attn: Lehman Ballot Processing Center
757 Third Avenue, 3rd Floor
New York, New York 10017

If by first-class mail, to:
Lehman Ballot Processing Center c/o
Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5014
New York, New York 10150-5014

If the return envelope provided with your ballot was addressed to your bank or brokerage firm, please allow sufficient time for that firm to process your vote on a Master Ballot before the Voting Deadline (**4:00 p.m., prevailing Eastern Time, [__], 2011**).

Do not return any other documents with your ballot.

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE **RECEIVED** BY NO LATER THAN **4:00 P.M. (PREVAILING EASTERN TIME) ON [__], 2011**.  ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR A REJECTION OF THE PLAN SHALL NOT BE COUNTED.

Pursuant to the Disclosure Statement Order, the Bankruptcy Court set [__], 2011 as the record date for holders of Claims and Equity Interests entitled to vote on the Plan (the "Voting Record Date").  Accordingly, only holders of record as of the Voting Record Date that otherwise are entitled to vote under the Plan will receive a ballot and may vote on the Plan.

If you are a holder of a Claim entitled to vote on the Plan and you did not receive a ballot with respect to a Claim in a Class that is being solicited under the Plan, received a damaged ballot or lost your ballot or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call Epiq Bankruptcy Solutions, LLC at (866) 879-0688 and 1 (503) 597-7691 (international).

**THE PLAN PROPONENTS URGE CREDITORS TO VOTE TO ACCEPT THE PLAN.**

**IRS CIRCULAR 230 NOTICE:  TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT:  (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS AND**

EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE PLAN PROPONENTS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

### D.    Confirmation Hearing

Pursuant to section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on [__, 2011 at __:__ __.m.] (prevailing Eastern Time) before the Honorable James M. Peck in Room 601, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton House, One Bowling Green, New York, New York 10004.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan must be served and filed so that they are actually filed and received on or before   [_____ __, 2011 at__: __ __.m.] (prevailing Eastern Time) in the manner described below in Section VI, "Confirmation and Consummation of the Plan."  The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

## IV.    GENERAL INFORMATION

For an overview of the chapter 11 process and a description and history of the business of Lehman, events leading up to commencement of the Chapter 11 Cases, the Chapter 11 Cases, the claims reconciliation process and bar date, and the Debtors' relationship with Lehman Brothers, Inc. and LAMCO, please refer to the Debtors' Disclosure Statement, dated January 25, 2011 [Docket No. 14151].  **Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth in the Debtors' Disclosure Statement. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein.  Nothing contained the Debtors' Disclosure Statement shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors. Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained in the Debtors' Disclosure Statement.**

## V.    SUMMARY OF THE CHAPTER 11 PLAN

### A.    Classification and Treatment of Claims and Equity Interests

The following summarizes the classification and treatment of Claims and Equity Interests under the Plan.

### 1.    Treatment of Unclassified Claims

### a.    Administrative Expense Claims

Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. Notwithstanding anything to the contrary herein, all fees and expenses incurred by a Plan Proponent in connection with the preparation, solicitation, and confirmation of the Plan, as well as the implementation, after confirmation, of the Plan, including without limitation any fees and expenses of any financial or legal advisor retained by a Plan Proponent in connection therewith, shall be paid as Administrative Expense Claims no later than three (3) Business Days following presentation to the Debtors of a reasonably detailed invoice indicating the nature of the services rendered; *provided*, *however*, that any such fees and expenses incurred prior to the Effective Date by a Plan Proponent in excess of $500,000.00, in the aggregate, shall be subject to the fee application procedures described in <u>Section 2.2</u> of the Plan.

### b.    Professional Compensation and Reimbursement Claims

Other than a professional retained by the Debtors pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtors and the Creditors' Committee through and including the Effective Date under section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim. The Debtors are authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtors and the Creditors' Committee after the Effective Date in the ordinary course and without Bankruptcy Court approval. The Domestic Operating Company Creditor Representative, and the attorneys and professionals retained by the Domestic Operating Company Creditor Representative shall be compensated in the manner to be set forth in the Plan Supplement. All fees and expenses incurred in the ordinary course of business by the Domestic Operating Company Creditor Representative or the professionals retained by the Domestic Operating Company Creditor Representative may be paid by Debtors without court approval.

### c.        Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive from one or more of the Debtors obligated for the payment of such Allowed Priority Tax Claim, and at the sole option of such Debtor(s), (i) Cash in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (ii) equal Cash payments to be made initially on the Effective Date or as soon thereafter as practicable and semi-annually thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate determined under applicable non-bankruptcy law, over a period from the Effective Date through the fifth (5th) anniversary after the Commencement Date; *provided*, *however*, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

### 2.        Summary of Classes

The Plan places all Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, in the Classes listed below for all purposes (unless otherwise specified) including voting and Distributions.  A Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

Unless otherwise specified below, holders of Claims in each Class will receive a Pro Rata Share of Available Cash from the Debtor against which they hold an Allowed Claim. For further detail regarding the classification and treatment of the Claims and Equity Interests, see the "Classification and Treatment of Claims and Equity Interests" section of this Disclosure Statement or the Plan annexed hereto as Exhibit 1.  The Recovery Analysis included as Exhibit 4 hereto sets forth the Plan Proponents' estimates of the amount of Allowed Claims in each Class and the estimated recoveries to holders of Allowed Claims in each Class based in part on the information contained in the Debtors' Disclosure Statement.

### a.        Treatment of Claims Against and Equity Interests in LBHI

### (i)        LBHI Class 1 – Priority Non-Tax Claims against LBHI

(b)        <u>Impairment and Voting</u>.  LBHI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 1 is entitled to vote to accept or reject the Plan.

(c)        <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBHI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBHI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBHI Class 1 shall be paid by LBHI in Cash in full.

(ii)    **LBHI Class 2 – Secured Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBHI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBHI Class 2 shall be satisfied by, at the option of LBHI: (i) payment in Cash by LBHI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBHI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

(iii)    **LBHI Class 3 – Senior Unsecured Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 3 shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution, and (iv) Subordinated Class 10C Distribution.

(iv)    **LBHI Class 4A – Senior Intercompany Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 4A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4A is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBHI Class 4A shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution and (iv) Subordinated Class 10C Distribution.

(v)    **LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBHI Class 4B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

(vi)     **LBHI Class 5A – Senior Third-Party Guarantee Claims against LBHI**

(a)     <u>Impairment and Voting</u>.  LBHI Class 5A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5A is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 5A shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

(vii)     **LBHI Class 5B – Senior Third-Party LBT/LBSN Guarantee Claims against LBHI**

(a)     <u>Impairment and Voting</u>.  LBHI Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5B is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 5B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

(viii)     **LBHI Class 6 – Derivative Claims against LBHI**

(a)     <u>Impairment and Voting</u>.  LBHI Class 6 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 6 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 6 shall receive its Pro Rata Share of Available Cash from LBHI.

(ix)     **LBHI Class 7 – General Unsecured Claims against LBHI**

(a)     <u>Impairment and Voting</u>.  LBHI Class 7 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 7 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 7 shall receive its Pro Rata Share of Available Cash from LBHI.

(x)     **LBHI Class 8A – Intercompany Claims against LBHI**

(a)     <u>Impairment and Voting</u>.  LBHI Class 8A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8A is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8A shall receive its Pro Rata Share of Available Cash from LBHI.

(xi)    **LBHI Class 8B – Affiliate Guarantee Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 8B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8B shall receive its Pro Rata Share of Available Cash from LBHI.

(xii)    **LBHI Class 9 – Derivative Guarantee Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 9 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 9 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 9 shall receive its Pro Rata Share of Available Cash from LBHI.

(xiii)    **LBHI Class 10A – Subordinated Class 10A Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 10A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10A is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in LBHI Class 10A shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10A shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

(xiv)    **LBHI Class 10B – Subordinated Class 10B Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 10B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10B is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in LBHI Class 10B shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10B shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

(xv)    **LBHI Class 10C – Subordinated Class 10C Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 10C is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10C is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in LBHI Class 10C shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10C shall receive its Pro Rata Share of Available Cash from LBHI.

(xvi)    **LBHI Class 11 – Section 510(b) Claims against LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 11 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 11 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in LBHI Class 11 shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims against LBHI other than Claims in LBHI Class 11 are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 11 shall receive its Pro Rata Share of Available Cash from LBHI.

(xvii)    **LBHI Class 12 – Equity Interests in LBHI**

(a)    <u>Impairment and Voting</u>.  LBHI Class 12 is impaired by the Plan.  Each holder of an Equity Interest in LBHI Class 12 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Stock Exchange</u>.    On the Effective Date, all LBHI Stock shall be cancelled and the Plan Trust Stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative priority and economic entitlements; *provided*, *however*, that the Plan Trust may not exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan.  On or promptly after the Effective Date, the Plan Administrator shall file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of LBHI's publicly traded securities.

(c)    <u>Distributions</u>.  Each holder of an Equity Interest in LBHI (through their interest in the new share of LBHI common stock or otherwise) shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBHI on account of such Equity Interests; *provided*, *however*, that solely in the event that all Allowed Claims in LBHI Classes 1 through 11 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its share of any remaining assets of LBHI consistent with such holder's rights of payment existing immediately prior to the

66

Commencement Date.  Unless otherwise determined by the Plan Administrator, on the date that LBHI's Chapter 11 Case is closed in accordance with <u>Section 6.8</u> of the Plan, the Plan Trust Stock issued pursuant to subsection (b) above shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the Debtors' estates.

(d)    <u>Non-Transferable</u>.  The continuing rights of holders of Equity Interests (including through their interest in the Plan Trust Stock or otherwise) shall be nontransferable except by operation of law.

### b.    Treatment of Claims Against the Debtors and Equity Interests in LCPI, LBCS, LBSF, LOTC, LBCC, LBDP, and LBFP

(i)    **Class 1 – Priority Non-Tax Claims**

(a)    <u>Impairment and Voting</u>.  Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in Class 1 agrees to less favorable treatment or has been paid by or on behalf of the Debtor on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in Class 1 shall be paid by the Debtor in Cash in full.

(ii)    **Class 2 – Secured Claims**

(a)    <u>Impairment and Voting</u>.  Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Class 2 shall be satisfied by, at the option of the Debtor: (i) payment in Cash by the Debtor in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

(iii)    **Class 3 – Derivative Claims**

(a)    <u>Impairment and Voting</u>.  Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in Class 3 shall receive its Pro Rata Share of Available Cash from the Debtor.

(iv)    **Class 4 – General Unsecured Claims**

(a)    _Impairment and Voting_.  Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in Class 4 shall receive its Pro Rata Share of Available Cash from the Debtor.

(v)    **Class 5 – Intercompany Claims**

(a)    _Impairment and Voting_.  Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in Class 5 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Subject to _Section 6.7_ of the Plan, each holder of an Allowed Claim in Class 5 shall receive its Pro Rata Share of Available Cash from the Debtor.

(vi)    **Class 6 – Equity Interests**

(a)    _Impairment and Voting_.  Class 6 is impaired by the Plan.  Each holder of an Equity Interest in Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    _Distributions_.  Equity Interests in the Debtor shall be cancelled if and when the Debtor is dissolved in accordance with _Section 7.4_ of the Plan.  Each holder of an Equity Interest in the Debtor shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of the Debtor on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against the Debtor have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in the Debtor may receive its Pro Rata Share of any remaining assets in the Debtor.

c.    **Treatment of Claims Against the Debtors and Equity Interests in LB 745, PAMI Statler, CES, CES V, CES IX, East Dover, LS Finance, LUXCO, BNC, LB Rose Ranch, SASCO, LB 2080**

(i)    **Class 1 – Priority Non-Tax Claims**

(a)    _Impairment and Voting_.  Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in Class 1 agrees to less favorable treatment or has been paid by or on behalf of on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in Class 1 shall be paid by the Debtor in Cash in full.

(ii)    **Class 2 – Secured Claims**

(a)    <u>Impairment and Voting</u>.  Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Class 2 shall be satisfied by, at the option of the Debtor: (i) payment in Cash by the Debtor in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

(iii)    **Class 3 – General Unsecured Claims**

(a)    <u>Impairment and Voting</u>.  Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed Claim in Class 3 shall receive its Pro Rata Share of Available Cash from the Debtor.

(iv)    **Class 4 – Intercompany Claims**

(a)    <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Each holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in Class 4 shall receive its Pro Rata Share of Available Cash from the Debtor.

(v)    **Class 5 – Equity Interests**

(a)    <u>Impairment and Voting</u>.  Class 5 is impaired by the Plan.  Each holder of an Equity Interest in Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in the Debtor shall be cancelled if and when the Debtor is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in the Debtor shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of the Debtor on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against the Debtor have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in the Debtor may receive its Pro Rata Share of any remaining assets in the Debtor.

B.      **Means for Implementation of the Plan**

1.      **Plan Administrator**

a.      **Appointment of the Plan Administrator**

LBHI shall serve as Plan Administrator for each of the Debtors.

b.      **Authority of the Plan Administrator**

Except with respect to the rights and authority of the Domestic Operating Company Creditor Representative under Section 6.2 of the Plan, the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)      control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors (including, without limitation, Guarantee Claims) subject to Bankruptcy Court approval;

(ii)      supervise the making of Distributions to holders of Allowed Claims against the Debtors in accordance with Article VIII of the Plan;

(iii)      exercise its reasonable business judgment to direct and control the wind down, liquidation and/or abandoning of the assets of the Debtors;

(iv)      prosecute all Litigation Claims, including, without limitation, Avoidance Actions, on behalf of the Debtors, and to elect not to pursue any Litigation Claims and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Litigation Claims, as the Plan Administrator may determine is in the best interests of the Debtors;

(v)      make payments to existing professionals who will continue to perform in their current capacities;

(vi)      retain professionals to assist in performing its duties under the Plan;

(vii)      maintain the books and records and accounts of the Debtors;

(viii)      invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Litigation Claims, and any income earned thereon;

(ix)      incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

70

(x)      administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) request, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) represent the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)      prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required by any Governmental Unit or applicable law; and

(xii)      determine whether to create a Liquidating Trust for the assets of a Debtor or Debtor-Controlled Entity pursuant to Section 10.1 of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with Section 15.2 of the Plan;

*provided that* the Plan Administrator will have the authority and right on behalf of any Debtor other than a Domestic Operating Company, to file an objection, response, or to otherwise seek to be heard with respect to the rights and authority of the Domestic Operating Company Creditor Representative under Section 6.2 of the Plan.

### c.      Liability of Plan Administrator

The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Plan Administrator.

### 2.      Domestic Operating Company Creditor Representative

As described in greater detail in Section II.C of this Disclosure Statement, the Domestic Operating Company Creditor Representative will be appointed and have authority in accordance with Section 6.2(b) of the Plan. The Domestic Operating Company Creditor Representative shall have no liability whatsoever for any acts or omissions in its capacity as Domestic Operating Company Creditor Representative to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Domestic Operating Company Creditor Representative.

### 3.      LAMCO

At the discretion of the board of directors of LBHI following the Effective Date and subject to existing agreements, LAMCO may serve as asset manager for certain assets of each of the Debtors under the Plan.  Ownership and ultimate decision-making authority with respect to each of the Debtor's assets after the Effective Date will be vested in the applicable Debtor.

4.        **Debtor Allocation Agreement**

In order to take into account that expenses incurred prior to the Effective Date in evaluating and resolving Derivatives Claims against any of the Domestic Operating Companies also benefited LBHI both as guarantor and as holder of Allowed Claims against the Domestic Operating Companies, fifty percent (50%) of all costs associated with the review and analysis of Derivatives Claims against the Domestic Operating Company shall be allocated to LBHI (such allocation, the "Derivative Claims Allocation").  On or before the Effective Date, the Debtors shall execute a Debtor Allocation Agreement which will seek to allocate expenses (other than expenses allocated pursuant to the Derivative Claims Allocation) among the Debtors in as close as possible the proportion of the relative benefit each Debtor received as a result of such expenses.  The Plan Administrator shall make whatever adjustments are necessary, including by providing a credit to the estate of a Domestic Operating Company, to account for costs previously allocated to a Domestic Operating Company in excess of the allocation provided for by the Derivative Claims Allocation or the Debtor Allocation Agreement, as applicable. In addition, all other costs allocated to a Domestic Operating Company shall be subject to the review of the Domestic Operating Company Creditor Representative, which may object to any allocation it determines to be in conflict with the Debtor Allocation Agreement or to be otherwise unreasonable.  Any such objection by the Domestic Operating Company Creditor Representative, if not resolved consensually with the Plan Administrator, shall be resolved by the Bankruptcy Court, and such disputed expenses shall be allocated among the Debtors based on the relative benefit such Debtors received from the expense incurred.  The Debtor Allocation Agreement in substantially final form will be included in the Plan Supplement.

5.        **Redistribution of Subordinated Claims Recoveries.**

To give effect to agreements of holders of Subordinated Claims, all Distributions under the Plan made by LBHI shall be calculated as if each holder of an Allowed Claim in LBHI Class 10A, LBHI Class 10B and LBHI Class 10C were to receive its Pro Rata Share of Available Cash from LBHI, and, in the case of each holder of an Allowed Claim in LBHI Class 10A and LBHI Class 10B, its Pro Rata Share of the Subordinated Class 10C Distribution; *provided*, *however*, that:

(a)        the Subordinated Class 10A Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to Sections 4.3(b) and 4.4(b) of the Plan, respectively, until all such Claims are satisfied in full;

(b)        the Subordinated Class 10B Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B pursuant to Sections 4.3(b), 4.4(b), 4.5(b), 4.6(b) and 4.7(b) of the Plan, respectively, until all such Claims are satisfied in full;

(c)        the Subordinated Class 10C Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B pursuant to Sections 4.3(b), 4.4(b), 4.5(b), 4.6(b), 4.7(b), 4.12(b), and 4.13(b) of the Plan, respectively, until all such Claims are satisfied in full; *provided*, *however*, that any portion of the Subordinated Class 10C

Distribution payable to holders of Allowed Claims in LBHI Class 10A shall be automatically distributed to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to Section 6.5(a) of the Plan until all such Claims are satisfied in full; *provided*, *further*, that any portion of the Subordinated Class 10C Distribution payable to holders of Allowed Claims in LBHI Class 10B shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B pursuant to Section 6.5(b) of the Plan until all such Claims are satisfied in full.

## 6.  Closing of Chapter 11 Case

After the Chapter 11 Case of a Debtor has been fully administered, such Debtor shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## 7.  Affiliate Claims Against a Debtor

(a)    Each holder of a Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim, or Affiliate Guarantee Claim against a Debtor shall have an Allowed Claim, as applicable, against that Debtor in an amount that is agreed to by the applicable Debtors and any applicable Affiliates or as otherwise determined by the Bankruptcy Court; *provided, however,* that pursuant to (and subject to the limitations imposed by) Section 6.2(b) of the Plan, the Domestic Operating Company Creditor Representative shall have the authority to object to, litigate, seek to subordinate, compromise or settle Claims asserted by or against a Domestic Operating Company on behalf of such Domestic Operating Company.

(b)    Notwithstanding anything in Section 6.7(a) of the Plan, any Senior Intercompany Claim or Intercompany Claim against any Debtor held by any Cross-Border Protocol Party shall be allowed against such Debtor at the amount set forth in the Debtors' accounting records to the extent those records have been accepted pursuant to Section 9 of the Cross-Border Protocol or any Cross-Border Settlement Guidelines.  Such amounts shall be set forth in the Plan Supplement if accepted prior to the filing thereof.  Section 6.7(b) of the Plan shall not apply to any Cross-Border Protocol Party which has elected not to comply with the Cross-Border Protocol or Cross-Border Settlement Guidelines.

## 8.  LBHI Structured Securities Claims

For purposes of the Chapter 11 Cases only, the Allowed amount of LBHI Structured Securities Claims shall be determined in accordance with the Structured Securities Valuation Methodologies and the Structured Securities Estimated Maximum Allowable Claims Summary, provided, however, that holders of LBHI Structured Securities Claims may seek, or the Debtors may propose, amendments or corrections to the proposed valuations set forth in the Structured Securities Estimated Maximum Allowable Claims Summary (or other documents summarizing application of the Structured Securities Valuation Methodologies to Structured Securities issued by other entities) solely to the extent that such valuations do not reflect a consistent or accurate application of the Structured Securities Valuation Methodologies, or other manifest errors.

### 9.    Indenture Trustee and Creditors' Committee Members Fees

Subject to entry of the Confirmation Order, (a) the reasonable fees and expenses (including attorneys fees) of the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the reasonable expenses (excluding attorneys fees or any other fees) of the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent accrued and unpaid as of the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement, and (ii) to the extent incurred after the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

### C.    Provisions Governing Distributions

1.    <u>Distributions of Available Cash</u>.   On the Effective Date, or as soon thereafter as practicable, after the satisfaction in full of (or establishment of reserves sufficient for the satisfaction in full of) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims (to the extent the Debtor determines to pay such Allowed Secured Claim in Cash) against a Debtor, each Debtor shall make a Distribution of its Available Cash in accordance with the provisions of the Plan to holders of Allowed Claims against such Debtor.  After the initial Distribution, each Debtor shall make Distributions of Available Cash in accordance with the Plan to holders of Allowed Claims against such Debtor semi-annually on March 30 and September 30 of each year, provided that each such Distribution in the aggregate is not less than $10,000,000 of such Debtor's Available Cash.  Notwithstanding the foregoing, the Plan Administrator, or, as applicable pursuant to <u>Section 6.2(b)</u> of the Plan, the Domestic Operating Company Creditor Representative, may determine, in its sole discretion (a) to make a Distribution that is less than $10,000,000 in the aggregate of a Debtor's Available Cash, or (b) not to make a Distribution to the holder of an Allowed Claim on the basis that it has not yet determined whether to object to such Claim and such Claim shall be treated as a Disputed Claim for purposes of Distributions under the Plan until the Plan Administrator, or, as applicable pursuant to <u>Section 6.2(b)</u> of the Plan, the Domestic Operating Company Creditor Representative, determines (i) not to object to such Claim (or the time to object to Claims expires), (ii) agrees with the holder of such Claim to allow such Claim in an agreed upon amount or (iii) objects to such Claim and such Claim is Allowed by a Final Order.  To the extent that a Liquidating Trust is established for a Debtor in accordance with <u>Article X</u> of the Plan, any Distributions to be made to holders of Allowed Claims thereafter shall be made by the Liquidating Trustee to such holders as holders of Liquidating Trust Interests in accordance with the provisions of the Plan.  Distributions of Cash on account of such Liquidating Trust Interests shall be made in accordance with <u>Section 10.7</u> of the Plan.

2.    <u>Disputed Claims Reserve</u>.

(a)  From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, upon each Distribution Date, the Reserve Agent of each Debtor, consistent with and subject to the provisions of section 1123(a)(4) of the Bankruptcy Code, shall (or shall direct the applicable Debtor to) retain and

reserve from Available Cash of such Debtor an aggregate amount (the "Reserved Distribution Amount") equal to the sum of the Pro Rata Share of the Distributions that would have been made on account of each Disputed Claim against such Debtor if such Disputed Claim were an Allowed Claim as of the giving of notice of such Distribution Date in an amount (the "Reserved Claim Amount") equal to the least of (i) the full amount of such Disputed Claim as set forth in the holder's proof of claim (the "Asserted Claim Amount"); (ii) the amount determined, to the extent permitted pursuant to section 502 of the Bankruptcy Code, by the Bankruptcy Court for purposes of fixing the Reserve Distribution Amount; or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reserve Agent.

(b)  In the event and to the extent a Disputed Claim for which a Reserved Claim Amount was fixed under paragraph (a) is (i) disallowed in full by Final Order; or (ii) Allowed in an amount less than such Reserved Claim Amount, the excess of the Reserved Distribution Amount allocable to such Disputed Claim over the amount of the Pro Rata Share of the Distributions that would have been made on account of such Disputed Claim in the amount in which it is Allowed (the "Excess Amount") shall be released to Available Cash of the applicable Debtor.

(c)  Notwithstanding the foregoing provisions of Section 8.4 of the Plan, if determined by a Final Order, entered upon a motion by either (i) the Reserve Agent, on notice to holders of Claims against the applicable Debtor, or (ii) a holder of a Remaining Disputed Claim against a Debtor, upon notice to the Reserve Agent and to holders of Claims against the applicable Debtor,  additional Available Cash of such Debtor shall be reserved to fund the Reserved Distribution Amount of such Debtor for pro rata funding of any shortfall in Distribution (the "Shortfall Amount") to a holder of a Remaining Disputed Claim against such Debtor that is subsequently Allowed against such Debtor in an amount greater than its Reserved Claim Amount.

(d)  In the event and to the extent that the Reserved Distribution Amount of a Debtor (including any amounts retained in such Reserved Distribution Amount for funding Shortfall Amounts of such Debtor) at any time exceeds the aggregate of the Asserted Claim Amounts of the Remaining Disputed Claims against such Debtor, such excess portion of the Reserved Distribution Amount of the Debtor shall be released to Available Cash of such Debtor.

(e)  Nothing in Section 8.4 of the Plan shall preclude any holder of a Disputed Claim from seeking, on notice to the Reserve Agent, an order of the Bankruptcy Court in respect of or relating to the Reserved Claim Amount established in respect of such holder's Disputed Claim.

3.    Minimum Distribution and Manner of Payment.  No payment of Cash of less than $500 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor unless a request therefor is made in writing to the Plan Administrator.  Any payment of Cash made pursuant to the Plan may be made at the option of the Plan Administrator either by check or by wire transfer.

4.    Distributions Free and Clear.  Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and

no other entity, including the Debtors or the Plan Administrator shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

5.    Delivery of Distributions and Undeliverable Distributions.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of Claim filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator (at the addresses set forth in Section 15.10 of the Plan) of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder at its then-current address, without interest.  All demands for undeliverable Distributions shall be made on or before six (6) months after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall be released to Available Cash of the applicable Debtor.

6.    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator or the Liquidating Trustee (as applicable) shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as distributed to such holders.  Notwithstanding the above, each holder of an Allowed Claim or Liquidating Trust Interest that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Plan Administrator or the Liquidating Trustee (as applicable), has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Plan Administrator or the Liquidating Trustee (as applicable), may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim or Liquidating Trust Interest provide a completed Form W-8, W-9 and/or other tax information deemed necessary in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable to each such holder, *provided* that if the Plan Administrator or Liquidating Trustee (as applicable) makes such a request and the holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the applicable Debtor or Liquidating Trust and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against such Debtor, Liquidating Trust, or its respective property.

7.    Time Bar to Cash Payment Rights.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90-day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be released to Available Cash of the applicable Debtor.

8.      Setoffs and Recoupment.  Any Debtor may, but shall not be required to, setoff against or recoup from any Claim in respect of such Claim any Claims of any nature whatsoever that such Debtor may have against the claimant, *provided, however,* that the Debtor has provided such claimant with written notice of the Debtor's proposed setoff or recoupment at least twenty (20) Business Days prior thereto, and, if such claimant files a written objection to such proposed setoff or recoupment, the Debtor shall not proceed with the proposed setoff or recoupment absent  the withdrawal of such objection or the entry of a Final Order overruling such objection; *and provided further that* neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

9.      Claims Register to Remain Open.  The register of Claims maintained by the Debtors shall remain open after the Effective Date and the Debtors and Plan Administrator shall recognize any transfer of Claims at any time thereafter other than during the period commencing fourteen (14) Business Days prior to and concluding fourteen (14) Business Days after a Distribution Date.

10.      Allocation of Distributions.  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes), and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim or is otherwise required to be paid under the Plan).

11.      Maximum Distribution.

(a)      A holder of (i) an Allowed Claim that receives Distributions in the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim that receives Distributions that combined with Distributions or other consideration provided to such holder by a Primary Obligor equal to the greater of the Allowed amount of such Guarantee Claim and the Allowed amount of such holder's Primary Claim, shall, in each case, be deemed satisfied in full for purposes of Distributions.  To the extent that a holder of an Allowed Guarantee Claim that is deemed satisfied in full would otherwise be entitled to receive future Distributions or consideration on account of such holder's Primary Claim, LBHI shall be entitled to receive such Distributions or consideration as subrogee.

(b)      In no event shall any holder of (i) any Allowed Claim receive Distributions in excess of the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim receive Distributions that combined with Distributions or other consideration provided to such holder by a Primary Obligor would allow such holder to receive in excess of the greater of the Allowed amount of such holder's Guarantee Claim and the Allowed amount of such holder's Primary Claim.  The Plan Administrator may seek approval from the Bankruptcy Court to hold back all or a portion of a Distribution ("Distribution Holdback") to a holder of an Allowed Guarantee Claim if the Plan Administrator reasonably determines that such holder has been, or within six months of the date of determination will be, satisfied in full for purposes of Distributions on a corresponding Primary Claim from the Primary Obligor until such time, if ever, the Plan Administrator reasonably determines that such holder has not and, within such

six-month period, will not be satisfied in full from the Primary Obligor or as otherwise ordered by the Bankruptcy Court; *provided* that if and when a Distribution Holdback is released to the holder of such Allowed Guarantee Claim, such holder shall be entitled to interest actually accrued on such Distribution Holdback for the period commencing on the Effective Date.

### D.    Treatment of Disputed Claims

1.    <u>Objections</u>.  Subject to <u>Sections 6.2</u>, <u>6.7</u>, and <u>8.13</u> of the Plan, (a) a Debtor's rights to object to, oppose and defend against all Claims on any basis are fully preserved, and (b) notwithstanding that a Primary Claim is Allowed against a Primary Obligor, the Debtors reserve the right to object to, oppose and defend against all Guarantee Claims. Subject to <u>Sections 6.2</u> and <u>6.7</u> of the Plan, as of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator or, with respect to Claims against a Domestic Operating Company, the Domestic Operating Company Creditor Representative, which in each case shall consult with the applicable Debtor regarding the same.  Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is two (2) years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

2.    <u>No Distributions Pending Allowance</u>.  Notwithstanding any other provision  hereof and unless otherwise agreed, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Disputed portion of the Claim unless and until such Disputed portion of the Claim becomes an Allowed Claim.

3.    <u>Resolution of Disputed Claims</u>.  On and after the Effective Date, the Plan Administrator and with respect to Claims against a Domestic Operating Company, the Domestic Operating Company Creditor Representative shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims in accordance with <u>Sections 6.1(b)(i)</u> and <u>6.2(b)</u> of the Plan, as applicable.

4.    <u>Interest</u>.  If a Disputed Claim becomes an Allowed Claim, the holder of such Claim shall be entitled to interest for the period commencing on the Effective Date at the interest rate at which interest on the Reserved Distribution Amount of the applicable Debtor actually accrued during such period.

### E.    Treatment of Executory Contracts and Unexpired Leases

1.    <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; *provided*, *however*, that the

Debtors and Requisite Plan Proponents reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed.  The Debtors or Requisite Plan Proponents shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts and unexpired leases affected thereby.  The listing of or failure to list a document in the Plan Supplement shall not constitute an admission by the Debtors or the Plan Proponents that such document is or is not an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

2.      Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.  To the extent any provision of an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

3.      Cure of Defaults.  Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

4.      Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court and served upon the relevant Debtor no later than forty-five (45) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease.  **Except as set forth in the preceding sentence, all such Claims must otherwise comply with the provisions of the Bar Date Order, including, without limitation, the Derivative Questionnaire and the Guarantee Questionnaire.  All such Claims not filed in accordance with the foregoing will be forever barred from assertion against the Debtors and their estates.**  Any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be classified as a General Unsecured Claim or Derivative Claim, as applicable, against the Debtor that is a party to such executory contract or unexpired lease.

5.      Insurance Policies.  To the extent that any of the Debtors' insurance policies and any agreements, documents or instruments with insurers relating thereto constitute executory contracts, such contracts shall be deemed assumed under the Plan.  Nothing contained

herein shall constitute or be deemed a waiver of any Litigation Claims that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

6.    <u>Indemnity Obligations</u>.  Subject to the occurrence of the Effective Date, solely to the extent of insurance proceeds that are available to the Debtors in respect of such obligations, the obligations of each Debtor to indemnify, defend, reimburse or limit the liability of (a) directors, officers and any other employee who is held responsible for obligations of the Debtor incurred after the Commencement Date who are directors, officers or employees of such Debtor or a Debtor-Controlled Entity on or after the Commencement Date and (b) Released Parties, respectively, against any Claims or Causes of Action as provided in the Debtor's articles of organization, certificates of incorporation, bylaws, other organizational documents or applicable law, shall survive confirmation of the Plan, shall be assumed by such Debtor and will remain in effect after the Effective Date.  Nothing in the Plan shall in any way limit, modify, alter or amend the Debtor's limitation of liability of the Independent Directors set forth in Section 10.1 of the Restated Certificate of Incorporation of LBHI.

## F.    Conditions Precedent to Plan's Confirmation and Effective Date

### 1.    Conditions Precedent to the Effective Date of the Plan

The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)    The Confirmation Order, in form and substance reasonably satisfactory to the Requisite Plan Proponents, shall have been entered;

(b)    All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance reasonably satisfactory to the Requisite Plan Proponents; and

(c)    All authorizations, consents and regulatory approvals, if any, required in connection with the consummation of the Plan are obtained and not revoked.

### 2.    Waiver of Conditions

Notwithstanding the foregoing, the Requisite Plan Proponents reserve their rights to waive the occurrence of the conditions precedent to the Effective Date set forth in <u>Section 12.1</u> of the Plan other than <u>Section 12.1(a)</u> of the Plan.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Requisite Plan Proponents decide, that any of the conditions precedent to the Effective Date of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Requisite Plan Proponents shall file a notice of the inability to satisfy such condition prior to the Effective Date with the Bankruptcy Court.

G.      **Effect of Confirmation of the Plan**

1.      **Vesting of Assets**

Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Estate of a Debtor shall vest in that Debtor  except as provided herein. From and after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided herein.

2.      **Binding Effect**

On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

3.      **Release, Exculpation and Limitation of Liability**

**On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for, or other assertion of liability for, any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, and (ii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in the Plan shall limit the liability of the professionals of the Debtors or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Model Code of Professional Responsibility.**

### 4.    Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtors are not entitled to receive a discharge under section 1141 of the Bankruptcy Code from Claims against, Equity Interests in, rights against or liabilities against the Debtors.

### 5.    Injunction

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan.  For the avoidance of doubt, as to Claims and Causes of Action against Debtors, <u>Section 13.5</u> of the Plan enjoins actions against Debtors solely to the extent of such Claims and Causes of Action against the Debtors that are released pursuant to, and subject to the limitations of, <u>Section 13.3</u> of the Plan.

### 6.    United States Government Carveout

As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall discharge, release or otherwise preclude: (a) any liability of the Debtors arising on or after the Effective Date; (b) any liability that is not a Claim against a Debtor; (c) any valid right of setoff or recoupment; or (d) any liability of the Debtors arising under environmental or criminal laws as the owner or operator of property that such Debtor owns after the Effective Date.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

### 7.        Retention of Litigation Claims and Reservation of Rights

Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation, (a) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under any tax sharing agreement among the Debtors and their Affiliates (including the tax sharing agreement among the Debtors and LBI based on their regular and consistent course of conduct over many years), (c) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff or other legal or equitable defense. The Debtors shall have, retain, reserve, and may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the Chapter 11 Cases had not been commenced.

### 8.        Terms of Injunctions or Stays

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

### H.        Liquidating Trust

### 1.        Execution of Liquidating Trust Agreement

After the Effective Date, (a) if the Plan Administrator and the board of directors of a Debtor other than a Domestic Operating Company determine that the establishment of a Liquidating Trust in respect of such Debtor is in the best interests of such Debtor and the holders of Allowed Claims against and Equity Interests in such Debtor, the Plan Administrator and a Liquidating Trustee shall execute a Liquidating Trust Agreement with respect to such Debtor, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries, or (b) if the Domestic Operating Company Creditor Representative determines that the establishment of a Liquidating Trust in respect of such Domestic Operating Company is in the best interests of such Domestic Operating Company and the holders of Allowed Claims against and Equity Interests in such Domestic Operating Company, the Domestic Operating Company Creditor Representative and a Liquidating Trustee shall execute a Liquidating Trust Agreement with respect to such Domestic Operating Company, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries.  In the event of any conflict between the terms of Section 10.1 of the Plan and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of Section 10.1 of the Plan shall govern.  A Liquidating Trust

Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of a Liquidating Trust as a "liquidating trust" for United States federal income tax purposes. Notwithstanding any of the foregoing, a Debtor shall not transfer assets to a Liquidating Trust until the Plan Administrator and the Domestic Operating Company Creditor Representative, as applicable, has reasonably concluded that such transfer will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation or such Debtor can make such transfer in a tax efficient manner taking into account the tax attributes of such other Debtors.

### 2.    Purpose of the Liquidating Trust

Each Liquidating Trust shall be established for the sole purpose of liquidating and distributing the assets of the Debtor contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

### 3.    Liquidating Trust Assets

Each Liquidating Trust shall consist of Liquidating Trust Assets.  After the creation of a Liquidating Trust pursuant to Section 10.1 of the Plan, the Liquidating Trust Assets shall be transferred to a Liquidating Trust.  Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in a Liquidating Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

### 4.    Administration of the Liquidating Trust

Each Liquidating Trust shall be administered by a Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan.  In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

### 5.    Liquidating Trustee's Tax Power for Debtors

A Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtor.

### 6.    Cash Investments

A Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, *however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### 7.    Distribution of Liquidating Trust Interests

A Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a semi-annual basis, all Available Cash of such Debtor (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of  Section 10.7 of the Plan), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonable incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to  Section 10.7 of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

### 8.    Federal Income Tax Treatment of Liquidating Trust

For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, a Liquidating Trustee and Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests.  Accordingly, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

### 9.    Tax Reporting

(a)    A Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with  Section 10.9(a) of the Plan.  A Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)    Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets

allocable Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust.  Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)     As soon as reasonably practicable after Liquidating Trust Assets are transferred to a Liquidating Trust, a Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)     A Liquidating Trustee shall be responsible for payment, out of Liquidating Trust Assets, of any taxes imposed on a Liquidating Trust or its assets.

(f)     A Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust or the Debtor for all taxable periods through the dissolution of such Liquidating Trust

## 10.    Dissolution

(a)     A Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) a Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by a Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating

Trust pursuant to <u>Section 10.1</u> of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel reasonably satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)    If at any time a Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, such Liquidating Trust, and any insider of such Liquidating Trustee, and (iii) dissolve such Liquidating Trust.

## 11.    Financial Reporting

Following the Effective Date, and until the Closing Date, the Debtors shall file with the Bankruptcy Court: (i) monthly operating reports, and (ii) quarterly and annual reports (including, in each case, audited financial statements with descriptive notes thereto) providing an equivalent level of financial reporting information as, and subject to the same filing deadlines as, would be required by the Securities and Exchange Act of 1934 with respect to quarterly and annual reports, respectively, of a U.S. corporation subject to such reporting requirements.

## I.    Summary of Other Provisions of Plan

## 1.    Post-Effective Date Role of Creditors' Committee

On the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (i) implementation of the Plan through the date of the initial Distribution in accordance with <u>Section 8.3</u> of the Plan, (ii) defending any appeals from the Confirmation Order to final disposition of such appeals, and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date. Other than with respect to the foregoing, the members of the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents shall terminate.

## 2.    Issuance of New Securities

In the discretion of the Plan Administrator, each Debtor or Debtor Controlled-Entity, other than a Domestic Operating Company, (a) may form and transfer certain assets of such entity to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities (other than Domestic Operating Companies) and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan.  In the discretion of the Domestic Operating Company Creditor Representative, each Domestic Operating Company, (a) may form and transfer certain assets to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Domestic Operating Companies and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan.  In the event that New Securities are to be issued, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan.  The New Securities shall be valued as of the date of the issuance and the holders of Allowed Claims or Equity Interests receiving such New Securities shall be deemed satisfied to the extent of the value of the New Securities.

## 3.    Exemption from Securities Laws

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of any New Securities or Liquidating Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

## 4.    Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition of assets contemplated by the Plan (including by a Liquidating Trust), shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

## 5.    Retention of Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases;

(c)    To hear and determine any objection to or motion to estimate Claims;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any agreements or documents incorporated in or contemplated by the Plan, including, without limitation, Sections 6.4, 6.5, 6.6, 13.3, 13.4 and 13.5 of the Plan;

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)    To hear and determine any actions brought against the Plan Administrator or the Domestic Operating Company Creditor Representative in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan;

(k)    To hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located;

(l)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns of the Debtors and of any Liquidating Trusts for any and all taxable periods ending after the Commencement Date through the Closing Date;

(m)    To hear all matters relating to Article XIII of the Plan, including, without limitation, all matters relating to the releases, exculpation, and injunction granted thereunder.

(n)      To hear all matters relating to the Plan Trust;

(o)      To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(p)      To enter a final decree closing the Chapter 11 Cases;

*provided, however,* that nothing in Section 14.1 of the Plan shall be construed so as to limit the jurisdiction of any foreign court, tribunal or other body overseeing or otherwise supervising a Foreign Proceeding.

## 6.      Plan Supplement

The Plan Supplement, in form and substance reasonably satisfactory to the Requisite Plan Proponents, shall be filed with the Bankruptcy Court no later than ten (10) days prior to the Voting Deadline.  The Plan Supplement shall include (without limitation), each in form and substance reasonably satisfactory to the Requisite Plan Proponents: the Debtor Allocation Agreement, the amended certificate and by-laws of the Debtors (if any) in accordance with Section 7.7 of the Plan, the Plan Trust Agreement, the identities of the Primary Creditor Representative,  potential Additional Creditor Representatives, and members of the Director Selection Committee, the compensation plan for the Domestic Operating Company Creditor Representative and any attorneys or professionals retained thereby, the agreed amounts, if any, of the Senior Intercompany Claims and Intercompany Claims of Cross-Border Protocol Parties, the Structured Securities Maximum Allowable Claims Summary, and a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with Section 11.1 of the Plan.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at www.lehman-docket.com or by request to the Debtors in accordance with Section 15.10 of the Plan.

## 7.      Summary of Recovery Analysis Under the Plan

The Recovery Analysis setting forth the estimated Claims and estimated recoveries for each Class is annexed hereto as Exhibit 4.

## 8.      Amendment and Modification of the Plan

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Requisite Plan Proponents reserve the right to alter, amend or modify the Plan and/or the Disclosure Statement, including, without limitation, (a) alterations, amendments, or modifications of or relating to (i) the determination and classification of Subordinated Notes in LBHI Classes 10A, 10B, and 10C, (ii) the reallocation of Distributions otherwise distributable to holders of such Subordinated Notes, and (iii) the determination and classification of Allowed Claims entitled to receive the benefit of such reallocation, and (b) alterations, amendments, or modifications to exclude one or more Debtors from the Plan; *provided that* the Plan and Disclosure Statement, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, as applicable, and the Requisite Plan Proponents shall have complied with section 1125 of the Bankruptcy Code. Nothing in the Plan, including, without limitation, with respect to the foregoing clauses (a) (i),

(ii), or (iii), of <u>Section 15.6</u> of the Plan, shall constitute an admission by any current or former Plan Proponent or any other person.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claims of such holder.

### 9.        Withdrawal or Revocation of the Plan

The Requisite Plan Proponents reserve the right to withdraw or revoke the Plan, in writing, at any time prior to the Confirmation Date.  If the Requisite Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any current or former Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, each Plan Proponent reserves the right to withdraw from the Plan, solely with respect to itself, in writing executed by such Plan Proponent and filed with the Bankruptcy Court, at any time prior to the Confirmation Date.

### 10.        Courts of Competent Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### 11.        Transactions on Business Days

If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

### 12.        Notices

Any notices to or requests of the Debtors or the Plan Proponents by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to any Plan Proponent, to the address provided for the attorneys for such Plan Proponent in the cover pages to the Plan.

If to any Debtor:

c/o Lehman Brothers Holdings Inc. 1271 Avenue of the Americas
New York, NY 10020
Attention:      Bryan Marsal
                John Suckow

with a copy to:

Weil, Gotshal & Manges LLP 767 Fifth Avenue
New York, New York 10153 Re:    Lehman Brothers

and if to any Domestic Operating Company,
with a copy to:

Domestic Operating Company
Creditor Representative
at the address identified in the Plan Supplement

### 13.      Severability

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Requisite Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.      Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

## VI.    CONFIRMATION AND CONSUMMATION OF THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

### A.      Solicitation of Votes

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in all Classes of the Plan are impaired, and the holders of Allowed Claims in each of these Classes

are entitled to vote to accept or reject the Plan.  The holders of Claims in LBHI Classes 10A, 10B, 10C and 11, and holders of Equity Interests in each of the Debtors are deemed to have rejected the Plan because their votes to accept or reject the Plan are not being solicited.

Any creditor in an impaired Class (i) whose Claim has been listed by the Filing Debtors in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated) or (ii) who filed a proof of claim on or before the Bar Date or Securities Programs Bar Date, as applicable, or any proof of claim filed within any other applicable period of limitations or with leave of the Bankruptcy Court, which Claim is not the subject of an objection or request for estimation, is entitled to vote on the Plan.

### B.    The Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing.  The Confirmation Hearing in respect of the Plan has been scheduled for [_____], commencing at [__:___ __.m] prevailing Eastern Time, before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States District Court for the Southern District of New York, Room 601, Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or amount and description of the Equity Interest held by the objector.  Any such objection must be filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Order and the Second Amended Case Management Order, dated [___], on or before [___] at [_:___ __.m], prevailing Eastern Time. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

### C.    Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of Claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible and (iii) in the "best interests" of creditors and interest holders that are impaired under the plan.

### 1.    Acceptance

As to the classes of Claims entitled to vote on a plan, the Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of that class that have timely voted to accept or reject the plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

93

The Claims in all Classes of the Plan are impaired under the Plan and are entitled to vote to accept or reject the Plan.  The Claims in LBHI Classes 10A, 10B, 10C and 11, and Equity Interests in each Debtor are deemed to have rejected the Plan because their votes to accept or reject the Plan are not being solicited

If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.  With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Plan Proponents shall request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

## 2.    Unfair Discrimination and Fair and Equitable Tests

To obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, nonaccepting Class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."  The Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured Claim and receives on account of its secured Claim deferred cash payments having a present value equal to the amount of its allowed secured Claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured Claim or (iii) the property securing the Claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

Unsecured Creditors.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed Claim or (ii) the holders of Claims and interests that are junior to the Claims of the dissenting class will not receive any property under the plan.

Equity Interests.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of the fixed liquidation preference to which such holder is entitled, or the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

A plan does not "discriminate unfairly" with respect to a nonaccepting class if the value of the cash and/or securities to be distributed to the nonaccepting class is equal to, or otherwise fair when compared to, the value of the distributions to other classes whose legal rights are the same as those of the nonaccepting class.

The Plan Proponents believe that the Plan meets the unfair discrimination test and the fair and equitable tests.

### 3.    Feasibility

The Bankruptcy Code permits a plan to be confirmed only if it is not likely to be followed by liquidation or the need for further financial reorganization unless such liquidation or reorganization is proposed in the plan.

Since the Plan contemplates a liquidation, for purposes of determining whether the Plan meets this requirement, the Plan Proponents have analyzed the Debtors' ability to meet their obligations under the Plan over the expected period of liquidation.  As part of this analysis, this Disclosure Statement relies on the recovery analysis prepared by the Filing Debtors based on cash flow estimates for each of the Filing Debtors for the four and one half year period ending December 31, 2014 (the "Projection Period").  These cash flow estimates, and the assumptions on which the Filing Debtors state they are based are included in Exhibit 7 annexed to the Debtors' Disclosure Statement.  Based upon such estimates, the Plan Proponents believe that the Debtors will be able to make all payments required pursuant to the Plan and, therefore, after confirmation of the Plan they will be able to liquidate their assets and make Distributions as contemplated.  The Plan Proponents expect that the liquidation of the Debtors' assets will last at least as long as the Projection Period.

The Filing Debtors have stated that they have prepared their cash flow estimates based upon certain assumptions that they believe to be reasonable under the circumstances. Those assumptions that the Filing Debtors considered to be significant are described in the cash flow estimates, which are annexed to the Debtors' Disclosure Statement as Exhibit 7.  The cash flow estimates have not been examined or compiled by independent accountants.  **The Plan Proponents make no representation as to the accuracy of the cash flow estimates or the Debtors' ability to achieve the results.**  Many of the assumptions on which the cash flow estimates are based are subject to significant uncertainties.  Inevitably, some assumptions will not materialize and unanticipated events and circumstances may affect the actual financial results.  Therefore, the actual results achieved throughout the Projection Period may vary from the estimated results and the variations may be material.  All holders of Claims that are entitled to vote to accept or reject the Plan are urged to examine carefully all of the assumptions on which the Filing Debtors have based the cash flow estimates in connection with their own independent evaluation of the Plan.

### 4.    Best Interests Test

The Bankruptcy Code requires that the Bankruptcy Court, as a condition to confirming the Plan, find that the Plan is in the best interests of all holders of Claims and Equity Interests that are Impaired by the Plan and that have not accepted the Plan.  The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires the Bankruptcy Court to find that the Plan will provide a holder of an Impaired claim who has not accepted the Plan with a recovery of property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

To calculate the probable distribution to members of each Impaired Class of Claims and Equity Interests if the Debtors were liquidated under chapter 7, the Bankruptcy Court

95

must first determine the aggregate dollar amount that would be generated from the disposition of the Debtors' assets if their Chapter 11 Cases were converted to chapter 7 cases under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from liquidating the Debtors' assets by a chapter 7 trustee.

Once the Bankruptcy Court ascertains the recoveries in liquidation of the Filing Debtors' secured and priority creditors, it would then determine the probable distribution to unsecured creditors from the remaining available proceeds of the liquidation. If this probable distribution has a value greater than the value of distributions to be received by the unsecured creditors under the Plan, then the Plan is not in the best interests of creditors and cannot be confirmed by the Bankruptcy Court.

The amount of liquidation value available to creditors would be reduced by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 cases and the Chapter 11 Cases. Costs of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code would include the compensation of a chapter 7 trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the Debtors in the Chapter 11 Cases (such as compensation of attorneys, financial advisors, and accountants) that are allowed in the chapter 7 cases, litigation costs and Claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority Claims would be paid in full from the liquidation proceeds before the balance would be made available to pay other Claims or to make any distribution in respect of Equity Interests. The liquidation under chapter 7 would also prompt the rejection of executory contracts and unexpired leases and thereby create a significantly greater amount of Unsecured Claims against relevant Debtors.

The Filing Debtors have stated that, as of January 1, 2011, they have postpetition employment agreements with approximately 413 employees, who spent a significant amount of time analyzing and reviewing the Filing Debtors' assets and have built infrastructures to manage such assets. The Plan Proponents have not independently verified this information. A chapter 7 trustee would have the option of either retaining current employees of the Filing Debtors or rejecting the contracts of some or all of the Filing Debtors' employees. If the chapter 7 trustee decides that only a fraction of such employees are required to liquidate the Debtors' assets, and therefore rejects such employment contracts, the Debtors would incur additional administrative expenses from the rejection of postpetition contracts which would be paid prior to Classes of Claims. Furthermore, due to the complexity and size of the Debtors' assets it would take the chapter 7 trustee several months to analyze and review the assets, incurring additional expenses on the estate.

In a chapter 7 liquidation, no junior class of Claims or Equity Interests may be paid unless all classes of Claims or Equity Interests senior to such junior class are paid in full. Section 510(a) of the Bankruptcy Code provides that subordination agreements are enforceable in a bankruptcy case to the same extent that such subordination agreements are enforceable under applicable non-bankruptcy law. Therefore, no class of Claims or Equity Interests that is contractually subordinated to another class would receive any payment on account of its Claims or Equity Interests, unless and until such senior class were paid in full.

96

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Cases, including most notably the costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, the Plan Proponents believe that confirmation of the Plan will provide each holder of an Allowed Claim with a recovery that is not less than, and in most cases greater than, such holder would receive pursuant to the liquidation of the Filing Debtors under chapter 7.

The Liquidation Analysis prepared by the financial advisor for certain of the Plan Proponents is annexed hereto as Exhibit 5 ("Liquidation Analysis").  The information set forth in Exhibit 5 provides a summary of the estimated liquidation values of the Debtors' assets, assuming a chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtors' estates.  Reference should be made to Exhibit 5 for a complete discussion and presentation of the Liquidation Analysis.  NEITHER THE PLAN PROPONENTS NOR ANY OF THEIR ADVISORS HAVE CONDUCTED ANY DUE DILIGENCE OR INDEPENDENT VERIFICATION OF ANY OF THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS SET FORTH BY THE FILING DEBTORS AND RELIED UPON IN THE PLAN PROPONENTS' LIQUIDATION ANALYSIS.  THE PLAN PROPONENTS CAUTION THAT THEY DO NOT AND CANNOT MAKE ANY REPRESENTATIONS AS TO THE ACCURACY OF ANY OF THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS RELIED UPON OR INCORPORATED THEREIN.  FURTHERMORE, THE PLAN PROPONENTS RESERVE THE RIGHT TO MODIFY ANY SUCH ESTIMATES OR ANY OTHER INFORMATION, DATA, OR ASSUMPTIONS CONTAINED IN THEIR LIQUIDATION ANALYSIS.

Furthermore, underlying the Liquidation Analysis are a number of estimates and assumptions, which are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Plan Proponents.  The Liquidation Analysis also is based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if the Debtors were, in fact, to undergo such a liquidation.

## 5.    Competing Plans

The Plan Proponents anticipate that, at the same time the Plan Proponents seek to have the Bankruptcy Court confirm the Plan, the Filing Debtors and the Ad Hoc Group will also seek to have their respective Plans confirmed.  As noted above, the Plan Proponents contend that the Debtors' Plan and the Ad Hoc Group Plan are unconfirmable.  Assuming, however, that all of the Plans are confirmable, the Bankruptcy Court may confirm only one plan.  Pursuant to section 1129(c) of the Bankruptcy Code, "the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm."  However, the Bankruptcy Court is only obligated to consider the preferences of creditors and equity security holders, not simply obey them.

In deciding which competing plan to confirm, the Bankruptcy Court may apply a four-factor analysis, considering (i) the type of plan; (ii) the treatment of creditors and interest holders; (iii) the feasibility of the plan; and (iv) the preferences of creditors and equity security

holders.  Under the "type of plan" analysis, a reorganization plan is usually preferable to a liquidation plan.  Given the Plan, the Debtors' Plan, and the Ad Hoc Group Plan are liquidation plans, the first factor is not dispositive here.  Under the second factor, the Bankruptcy Court should confirm the plan that provides better treatment for the creditors and interest holders.  The feasibility factor dictates the Bankruptcy Court to give preference to the plan that is more feasible than the other proposed plans.  The last factor is statutory, and requires the Bankruptcy Court to "consider the preferences of creditors and equity security holders in determining which plan to confirm."  11 U.S.C. § 1129(c).

### D.    Consummation

If confirmed by the Bankruptcy Court, the Plan will be consummated on the Effective Date.  The Effective Date of the Plan will occur on the first Business Day on which the conditions precedent to the effectiveness of the Plan, as set forth in <u>Section 12.1</u> of the Plan, have been satisfied or waived by the Debtors pursuant to <u>Section 12.2</u> of the Plan.  For a more detailed discussion of the conditions precedent to the Plan and the consequences of the failure to meet such conditions, see the "Conditions Precedent to the Plan's Confirmation and Effective Date" section of this Disclosure Statement.

The Plan is to be implemented pursuant to its terms, consistent with the provisions of the Bankruptcy Code.

## VII.   CORPORATE GOVERNANCE AND MANAGEMENT OF THE DEBTORS ON THE EFFECTIVE DATE

### A.    Board of Directors and Management

#### 1.    Corporate Form

On the Effective Date, each of the Debtors shall maintain its current corporate form.

#### 2.    LBHI Board of Directors and Officers

(a)    Following the Effective Date, the board of directors of LBHI shall consist of nine (9) persons.  The initial board of directors of LBHI shall be selected by the Director Selection Committee in accordance with subsection (b) below.  Each of the initial directors of LBHI shall have initial and, if reelected, subsequent terms of one year.  A director of LBHI may be removed from office by the Plan Trust with or without cause.  Subject to death, incapacity, resignation or removal and reelection by the Plan Trust in accordance with the Plan Trust Agreement, the initial directors shall serve as the board of directors of LBHI through the Closing Date.  Upon expiration of the term of a director of LBHI or his or her resignation, death or removal, the election of such director or a replacement director shall be determined by action of the Plan Trust as sole shareholder of LBHI.

(b)    The Director Selection Committee shall be comprised of seven (7) individuals as listed in the Plan Supplement, of whom two (2) shall be selected by the Creditors' Committee, two (2) shall be selected by LBHI, and three (3) selected by the Requisite Plan

Proponents. The co-chairs of the Creditors' Committee shall be the two (2) appointees of the Creditors' Committee to the Director Selection Committee, each of whom shall exercise his or her independent business judgment in the selection of directors and not act at the direction of the Creditors' Committee. One of the co-chairs of the Creditors' Committee shall serve as the chairperson of the Director Selection Committee. The Director Selection Committee shall try to select the initial board of directors of LBHI by majority vote, but, in the event of a deadlock with respect to a director, the vote of the chairperson of the Director Selection Committee shall control the selection of such director. In undertaking to identify candidates to serve on the initial board of directors of LBHI, the Director Selection Committee shall consider nominations from and, in its discretion, consult with all relevant constituencies, including, without limitation, the holders of significant Claims against the Debtors and Debtor-Controlled Entities. Any member of the Director Selection Committee may be named to serve as a director of LBHI.

(c)    Following the Effective Date, the board of directors of LBHI shall, in addition to its other duties, be responsible for (i) instructing and supervising LBHI, the Subsidiary Debtors other than the Domestic Operating Companies and the Plan Administrator with respect to their responsibilities under the Plan; (ii) reviewing and approving the prosecution of adversary and other proceedings, if any, including approving proposed settlements thereof as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies; (iii) reviewing and approving objections to and proposed settlements of Disputed Claims as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies; and (iv) performing such other duties that may be necessary and proper to assist LBHI, the Subsidiary Debtors other than the Domestic Operating Companies and the Plan Administrator and their retained professionals. In its discretion, following the Effective Date, the board of directors of LBHI may also delegate any duties assigned to the Plan Administrator as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies to any other committee, entity or individual.

### 3.    Subsidiary Debtor Post-Effective Date Management

(a)    Following the Effective Date, LBHI shall cause Lehman ALI to elect the respective boards of directors of LBSF and LCPI. Each board shall consist of five (5) persons selected by LBHI, four (4) of whom shall be concurrently serving members of the LBHI board of directors and one (1) of whom shall be selected in consultation with the holders of significant Claims against LBSF or LCPI, respectively. Each of the initial directors of LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year. Thereafter, LBHI shall cause Lehman ALI to elect successors of the then-serving members of the LBSF and LCPI boards at each annual meeting of LBSF or LCPI, respectively, or upon the removal or resignation of such directors. Lehman ALI (as directed by LBHI) shall also have the power to act by written consent to remove any director on the LBSF or LCPI board at any time with or without cause. Notwithstanding any of the foregoing, nothing in this paragraph nor in any organizational document, bylaw, resolution, or other corporate authorization of LBHI or a Domestic Operating Company, shall limit the authority granted to the Domestic Operating Company Creditor Representative pursuant to the Plan.

(b)    Following the Effective Date, the respective boards of directors or managers, as applicable, of the Subsidiary Debtors other than LBSF and LCPI shall consist of

one (1) individual who shall be a concurrently serving member of the LBHI board of directors. Each of the initial directors or managers of the Subsidiary Debtors other than LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year. Thereafter, LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall elect successors of the then-serving members of the boards or managers for such Subsidiary Debtor at each annual meeting or upon the removal or resignation of such individuals. LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall also have the power to act by written consent to remove any director or manager of such Subsidiary Debtor at any time with or without cause. Notwithstanding any of the foregoing, nothing in this paragraph nor in any organizational document, bylaw, resolution, or other corporate authorization of LBHI or a Domestic Operating Company, shall limit the authority granted to the Domestic Operating Company Creditor Representative pursuant to the Plan.

## 4.    Plan Trust

(a)    The Plan Trust shall be established on the Effective Date and shall continue in existence until the Closing Date. The Plan Trustees shall be the members of the Director Selection Committee. Each of the Plan Trustees shall continue in such capacity until he or she ceases to be a Plan Trustee in accordance with the terms and conditions set forth in the Plan Trust Agreement. In the event of a vacancy in the office of Plan Trustee, the remaining Plan Trustees shall by majority vote of the remaining Plan Trustees fill the vacancy if in their discretion the circumstances of the Plan Trust warrant doing so. The sole purpose of the Plan Trust shall be to hold the Plan Trust Stock as provided in Section 4.10(b) of the Plan. The Plan Trust shall be governed, in accordance with the Plan Trust Agreement (which shall be included in the Plan Supplement), by the Plan Trustees. The Plan Trust shall exercise voting rights associated with the Plan Trust Stock in furtherance of the liquidation of the Debtors and compliance with the provisions of the Plan. In the event of a deadlock with respect to any vote, the vote of the chairperson of the Director Selection Committee shall control. Any distribution from assets of LBHI that is made to the Plan Trust as holder of such share shall be for the benefit of the holders of Equity Interests in accordance with Section 4.10(b) of the Plan.

(b)    The Plan Trust Agreement shall provide that (i) at such time as a vacancy on the board of directors of LBHI is to be filled or there is a vote on the election of a director upon the expiration of a director's term of office, the Plan Trust shall fill such vacancy by majority vote of the Plan Trustees and (ii) at all other times, the Plan Trust may act, by majority vote of the Plan Trustees, to remove and replace directors, with or without cause.

## 5.    Corporate Existence

After the Effective Date, the Plan Administrator, may decide to (a) maintain each Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor have been completed, or (b) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Debtor, dissolve such Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith subject to the filing of a certificate of

dissolution with the appropriate governmental authorities (including, without limitation, the transfer of all or part of the assets of such Debtor to a Liquidating Trust in accordance with Article X of the Plan), or (c) dissolve any Debtor- Controlled Entity and complete the winding up of such Debtor-Controlled Entity in accordance with applicable law; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Debtor-Controlled Entity; *provided, further*, that, notwithstanding the foregoing, only the Domestic Operating Company Creditor Representative may decide to take any action to wind-down or dissolve any Domestic Operating Company. Notwithstanding any of the foregoing, the Plan Administrator and the Domestic Operating Company Creditor Representative, as applicable, shall not wind-down, dissolve or liquidate a Debtor until such Plan Administrator or Domestic Operating Company Creditor Representative, as applicable, has reasonably concluded that such wind-down, dissolution or liquidation will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation, or such Debtor can effect such wind-down, dissolution or liquidation in a tax efficient manner taking into account the tax attributes of such other Debtors.

### 6.    Wind-Down

The wind-down and liquidation of each of the Debtors' assets (as determined for federal income tax purposes) shall occur over a period of three years after the Effective Date (it being understood that such liquidation may include the transfer of all or part of the assets of the Debtors to one or more Liquidating Trusts within the meaning of Treas. Reg. § 301.7701-4 in accordance with Section 10.1 of the Plan); *provided*, *however*, that the wind-down and liquidation may extend over a longer period of time if the Debtors receive a private letter ruling or other equivalent guidance from the IRS from which the Plan Administrator reasonably concludes that the continued wind-down and liquidation should not result in a reduction or limitation of the Debtors' tax attributes for federal income tax purposes that materially impairs the expected actual use of such tax attributes.

### 7.    Certificates of Incorporation and By-laws

As of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be amended to the extent necessary to carry out the provisions of the Plan. The amended certificate and by-laws of such Debtor (if any) shall be included in the Plan Supplement.

### 8.    Stock Trading Restrictions

The restrictions imposed by the Stock Trading Restrictions Order shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

## VIII.   SECURITIES LAWS MATTERS

### A.    Existing Equity Interests

On the Effective Date all existing Equity Interests in LBHI will be cancelled and one new share of LBHI's common stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former Equity Interests consistent with their former

economic entitlements.  On the Effective Date all existing Equity Interests in each of the Debtors other than LBHI will be retained by such holder and only cancelled if and when such Debtor is dissolved in accordance with the Plan.  In the event that all Allowed Claims against such Debtor have been satisfied in full in accordance with the Plan, each holder of an Equity Interest in such Debtor may receive its Pro Rata Equity Share of any remaining assets of such Debtor.

Holders of Equity Interests should consult their own advisors regarding any securities law consequences of the treatment of their Equity Interest under the Plan.

### B.    Initial Distribution of New Securities

Any New Securities issued pursuant to the Plan representing an interest in any entity formed by the Debtors pursuant to the provisions of <u>Section 15.2</u> of the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon the exemption set forth in section 1145(a)(1) of the Bankruptcy Code, to the extent applicable.

Section 1145(a)(1) exempts such offers and sales if three principal requirements are satisfied:

- the securities must be offered and sold under a plan and must be securities of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan;

- the recipients of the securities must hold prepetition or administrative expense claims against the debtor or interests in the debtor; and

- the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in exchange for such claims or interests and partly for cash or property.

To the extent it is determined that the exemption provided by section 1145 is not available, the Debtors would be required to register the New Securities under the Securities Act before issuance.

### C.    Resales of New Securities/Rule 144 and Rule 144-A

Section 1145(c) of the Bankruptcy Code provides that securities issued pursuant to a registration exemption under section 1145(a)(1) of the Bankruptcy Code are deemed to have been issued pursuant to a public offering.  Therefore, if issued pursuant to the section 1145 exemption, New Securities may generally be resold by any holder thereof without registration under the Securities Act pursuant to the exemption provided by section 4(1) thereof, unless the holder is an "underwriter" with respect to such securities, as such term is defined in section 1145(b)(1) of the Bankruptcy Code.  In addition, such securities generally may be resold by the recipients thereof without registration under state securities or "blue sky" laws pursuant to various exemptions provided by the respective laws of the individual states.

Section 1145(b)(1) of the Bankruptcy Code defines an "underwriter" for purposes of the Securities Act as one who, subject to certain exceptions:

- purchases a claim with a view to distribution of any security to be received in exchange for such claim;

- offers to sell securities offered or sold under the plan for the holders of such securities;

- offers to buy securities issued under the plan from the holders of such securities, if the offer to buy is made with a view to distribution of such securities, and if such offer is under an agreement made in connection with the plan, with the consummation of the plan or with the offer or sale of securities under the plan; or

- is an issuer, as used in section 2(11) of the Securities Act, with respect to such securities.

The term "issuer," as used in section 2(11) of the Securities Act, includes any person directly or indirectly controlling or controlled by, an issuer of securities, or any person under direct or indirect common control with such issuer. "Control" (as defined in Rule 405 under the Securities Act) means the possession, direct or indirect, of the power to direct or cause the direction of the policies of a person, whether through the ownership of voting securities, by contract, or otherwise. Accordingly, an officer or director of a reorganized debtor or its successor under a plan may be deemed to be "in control" of such debtor or successor, particularly if the management position or directorship is coupled with ownership of a significant percentage of the reorganized debtor's or its successor's voting securities. Moreover, the legislative history of section 1145 of the Bankruptcy Code suggests that a creditor who owns at least ten percent (10%) of the voting securities of a reorganized debtor or its successor may be presumed to be a "control person."

To the extent that persons deemed "underwriters" receive New Securities under the Plan pursuant to the exemption from registration set forth in section 1145 of the Bankruptcy Code, resales of such securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Holders of such securities may, however, be able, under certain conditions described below, to sell such securities without registration pursuant to the resale provisions of Rule 144 under the Securities Act.

To the extent that persons who receive New Securities are deemed to be "underwriters" (collectively, the "Restricted Holders"), resales of such securities by Restricted Holders would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Restricted Holders would, however, be permitted to sell New Securities without registration if they are able to comply with the applicable provisions of Rule 144 under the Securities Act, as described further below, or if such securities are registered with the Securities and Exchange Commission. Any person who is an "underwriter" but not an "issuer" with respect to an issue of securities (other than a holder of restricted

securities) is, in addition, entitled to engage in exempt "ordinary trading transactions" within the meaning of section 1145(b)(1) of the Bankruptcy Code.

To the extent it is determined that the exemption provided by section 1145 is not available and the Debtors register the New Securities under the Securities Act before issuance, any person who received a distribution of such securities who is not an "affiliate" of the issuer would be permitted to transfer such securities freely under Securities Act. With respect to any person who is an "affiliate," generally, Rule 144 of the Securities Act provides that persons who are affiliates of an issuer who resell restricted securities will not be deemed to be underwriters if certain conditions are met. These conditions include the requirement that the person holds the securities for a six-month period (with respect to a reporting issuer), current public information with respect to the issuer be available, a limitation as to the amount of securities that may be sold in any three-month period, the requirement that the securities be sold in a "brokers transaction" or in a transaction directly with a "market maker" and that notice of the resale be filed with the SEC.

**WHETHER OR NOT ANY PARTICULAR PERSON WOULD BE DEEMED TO BE AN "UNDERWRITER" OF SECURITIES TO BE ISSUED PURSUANT TO THE PLAN OR AN "AFFILIATE" OF THE DEBTORS WOULD DEPEND UPON VARIOUS FACTS AND CIRCUMSTANCES APPLICABLE TO THAT PERSON. ACCORDINGLY, THE PLAN PROPONENTS EXPRESS NO VIEW AS TO WHETHER ANY SUCH PERSON WOULD BE SUCH AN "UNDERWRITER" OR AN "AFFILIATE." IN VIEW OF THE COMPLEX, SUBJECTIVE NATURE OF THE QUESTION OF WHETHER A PARTICULAR PERSON MAY BE AN UNDERWRITER, THE PLAN PROPONENTS MAKE NO REPRESENTATIONS CONCERNING THE RIGHT OF ANY PERSON TO TRADE IN NEW SECURITIES. ACCORDINGLY, IT IS RECOMMENDED THAT POTENTIAL RECIPIENTS OF ANY SECURITIES TO BE ISSUED PURSUANT TO THE PLAN CONSULT THEIR OWN COUNSEL CONCERNING WHETHER THEY MAY FREELY TRADE SUCH SECURITIES.**

IX.    **CERTAIN RISK FACTORS TO BE CONSIDERED**

**HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE DEBTORS' DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

**NO REPRESENTATIONS CONCERNING OR RELATED TO THE DEBTORS, THE CHAPTER 11 CASES, OR THE PLAN ARE AUTHORIZED BY THE BANKRUPTCY COURT OR THE BANKRUPTCY CODE, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF**

**THE PLAN THAT ARE OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

### A.    Certain Bankruptcy Law Considerations

It is not possible to predict with certainty the length of the Chapter 11 Cases or to assure that the Plan will be confirmed.  Even if all voting Classes vote in favor of the Plan and the requirements for "cramdown" are met with respect to any Class deemed to have rejected the Plan, the Bankruptcy Court, which may exercise substantial discretion as a court of equity, may choose not to confirm the Plan.  As discussed in the "Confirmation and Consummation of the Plan" section of this Disclosure Statement, section 1129 of the Bankruptcy Code requires, among other things, a showing that the value of distributions to dissenting holders of Claims and Equity Interests will not be less than the value such holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Although the Plan Proponents believe that the Plan will meet such test with respect to all Classes for each Debtor, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### B.    Conditions Precedent to Consummation of the Plan

The Plan provides for certain conditions that must be satisfied (or waived) prior to the Effective Date.  As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).  Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court, and if the Plan is confirmed, there can be no assurance that the Plan will be consummated and the restructuring completed.

### C.    Asset Sales

Under the Plan, distributions to holders of Allowed Claims will be funded substantially by the liquidation of the Debtors' assets.  Although the Debtors will seek to maximize the price they receive for their assets, it is impossible to predict with certainty the value that the Debtors will receive and the resulting distributions.

### D.    Estimation of Allowed Claims

There can be no assurance that the estimated amounts of Claims set forth in the Debtors' Disclosure Statement are correct, and the actual Allowed amounts of Claims may differ from estimates.  The Plan Proponents have not independently reviewed or verified any estimated amounts of Allowed Claims and such estimated amounts are based solely upon (i) the Filing Debtors' review of the their books and records, (ii) the Filing Debtors' review of the Claims, (iii) the Filing Debtors' estimates as to additional Claims that may be filed in the Chapter 11 Cases or that would arise in the event of a conversion of the cases from chapter 11 to chapter 7 and (iv) the Filing Debtors' estimates of Claims that will be Allowed following the objections to Claims by the Debtors.  Therefore, nothing contained herein shall be deemed to constitute an admission by any Plan Proponent, or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  **The Plan Proponents reserve the right to**

**challenge or otherwise modify any and all Allowed Claim amounts, either partially or in their entirety.**

Furthermore, all such estimated amounts are subject to certain risks, uncertainties and assumptions. Should one or more of these risks or uncertainties materialize or should underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated therein.

### E.    Certain Tax Considerations

There are a number of material income tax considerations, risks and uncertainties associated with consummation of the Plan. Holders of Eligible Claims (as defined below) and other interested parties should read carefully the discussion set forth in the "Certain U.S. Federal Income Tax Consequences of the Plan" section of this Disclosure Statement for a discussion of certain U.S. federal income tax consequences of the transactions contemplated under the Plan.

## X.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain material U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to certain holders of Allowed Claims. This summary does not address the federal income tax consequences to holders whose Claims are entitled to payment in full in Cash. The facts discussed in this section are based solely on the information provided in the Debtors' Disclosure Statement dated January 25, 2011.

This summary is based on the Internal Revenue Code (the "IRC"), existing and proposed Treasury Regulations, judicial decisions, and published administrative rules and pronouncements of the IRS as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties at this time. The Plan Proponents have not requested an opinion of counsel with respect to any of the tax aspects of the Plan. While the Plan Proponents might seek a ruling from the IRS concerning certain, but not all, of the federal income tax consequences of the Plan, there is no assurance that a favorable ruling will be obtained, and the consummation of the Plan is not conditioned upon the issuance of such a ruling. This summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as non-U.S. persons, broker-dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, tax-exempt organizations, any other Debtor entity as part of a hedging, straddle, conversion or constructive sale transaction or other integrated investments, traders in securities that elect to use a mark-to-market method of accounting for their security holding, certain expatriates, or former long term residents of the United States, persons who received Common Stock of LBHI as compensation, or pass-through entities or investors in pass-through entities).

The following discussion generally assumes that the Plan will be treated as a plan of liquidation of the Debtors for U.S. federal income tax purposes, and that all distributions to holders of Claims will be taxed accordingly.

**ACCORDINGLY, THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING OR FOR ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLAN.**

*IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims and Equity Interests are hereby notified that: (a) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims and Equity Interests for the purpose of avoiding penalties that may be imposed on them under the IRC; (b) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (c) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.*

### A.    Consequences to the LBHI and Subsidiary Debtors

### 1.    Tax Filing Status; Tax Attributes

LBHI, on behalf of itself and other affiliates, including the domestic Subsidiary Debtors and other LBHI directly and indirectly owned corporations, including LBI (together, the "LBHI Tax Group") file a federal income tax return on a consolidated basis. According to the Debtors' Disclosure Statement, for the tax year ended December 31, 2008, for federal income tax purposes, the LBHI Tax Group reported a consolidated NOL of approximately $48 billion. For the tax year ended December 31, 2009, the LBHI Tax Group's federal consolidated income tax return reflected an additional NOL of approximately $5 billion. Under recent legislation, LBHI elected to carry back its 2008 NOL for five tax years. The loss carried back to 2003, the fifth previous tax year, is limited to 50% of the taxable income reported for that year. For the tax year that ended December 31, 2010, the Debtors believe the LBHI Tax Group will also report an additional NOL. Based on a historic stock ownership analysis for purposes of the NOL change-in-ownership rules under section 382 of the IRC described below, as well as a Bankruptcy Court order imposing certain restrictions on the trading of LBHI's equity, the Debtors' Disclosure Statement disclosed that the Filing Debtors believe that no limitation under section 382 currently applies to the consolidated NOL carryforwards of the LBHI Tax Group. Though there is generally a limitation on the amount of NOLs that can offset income for alternative minimum tax ("AMT") purposes, pursuant to an IRS Notice, taxpayers availing themselves of the five-year NOL carryback described above are not subject to this limitation with respect to such qualifying NOL, regardless of whether the NOL is carried back or carried forward. However, the amount and use of any NOLs, as well as the application of any limitations, remain subject to review and adjustment by the IRS (including the carry back of a portion of such NOLs to help reduce any

prior year tax adjustments). The tax impact of the Plan on the NOLs and other tax attributes of the LBHI Tax Group is discussed below.

Prior to April 1, 2010, LBHI and LBI owned a significant number of noneconomic residual REMIC (real estate mortgage investment conduit) interests. These REMIC interests produced net excess inclusion income, which represents phantom taxable income to its holders and cannot be offset by other deductions, including an NOL. During 2010, ownership of the REMIC interests were transferred to a third party.

LBI, currently a member of the LBHI Tax Group, and certain other significant foreign subsidiaries that were owned by LBHI prior to bankruptcy and continue to be owned by LBHI now, are in separate bankruptcy administrations or liquidation proceedings that are not under the Debtors' control. The proceedings in those various administrations might result in the LBHI Tax Group having to recognize taxable income or having to relinquish foreign tax credits (including previously utilized foreign tax credits), among other things. Given the Debtors' lack of visibility and control into these various administrations, the Debtors do not have the ability to manage the tax consequences to them associated with these various administrations. The impact of these and other tax events could be material to the Debtors.

## 2.    General Discussion of Plan

The Plan sets forth a plan for resolution of the outstanding Claims against and Equity Interests in each of the Debtors. The Plan recognizes the corporate existence and integrity of each Debtor and Allowed Claims against a Debtor will generally be satisfied from the assets of each such Debtor.

### a.    Asset Dispositions and Transfers

The Plan does not specify the manner in which assets will be disposed of in order to satisfy Claims. However, that notwithstanding, certain assets may be disposed of over time during the pendency of the Plan that may produce taxable income. NOL carryforwards of the Debtors should generally be available to offset any tax gains or operating income that might be realized over time from the Debtor's business operations and disposition of certain of the Debtor's assets, subject to the potential application of section 382 of the IRC, as discussed below.

### b.    Plan Distributions

The Plan calls for Allowed Administrative Expense Claims and Allowed Priority Tax Claims to be paid in Cash in full.

For each Subsidiary Debtor, the Plan provides for a distribution of Available Cash to each of the following Allowed Claims against such Subsidiary Debtor: Priority Non-Tax Claims, Secured Claims (or alternatively, its collateral), Derivative Claims (if applicable), General Unsecured Claims and Intercompany Claims. In the event that all Allowed Claims against a Subsidiary Debtor have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in such Subsidiary Debtor may receive its Pro Rata Share of any remaining assets in such Subsidiary Debtor.

For LBHI, the Plan provides for distributions of Available Cash to each of the following LBHI's claimants:  Priority Non-Tax Claims, Secured Claims, Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, Senior Third-Party LBT/LBSN Guarantee Claims, Derivative Claims, General Unsecured Claims, Intercompany Claims, Affiliate Guarantee Claims, Derivative Guarantee Claims, Subordinated Class 10A, 10B and 10C Claims, and Section 510(b) Claims. In the event that all Allowed Claims against LBHI have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its Pro Rata Equity Share of any remaining assets in LBHI.

### 3.    Tax Impact of the Plan on the Debtors

#### a.    Cancellation of Debt

The IRC provides that a debtor in a bankruptcy case must reduce certain of its tax attributes – such as current year NOLs, NOL carryforwards, tax credits, capital losses and tax basis in assets – by the amount of any cancellation of debt ("COD") incurred that arises by reason of the discharge of the debtor's indebtedness.  Under applicable Treasury Regulations, the reduction in certain tax attributes (such as NOL carryforwards) occurs under consolidated return principles, as in the case of the Debtors who are members of the LBHI Tax Group.  COD is the amount by which the adjusted issue price of indebtedness discharged exceeds the sum of the amount of cash, the issue price of any debt instrument and the fair market value of any other property given in exchange therefore, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD (such as where the payment of the cancelled debt would have given rise to a tax deduction).  Settlement of a guarantee claim should not give rise to COD. Any reduction in tax attributes under the COD rules does not occur until the end of the tax year after such attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year following the tax year in which the COD occurs.

Consistent with the intended treatment of the Plan as a plan of liquidation for federal income tax purposes, the Plan Proponents do not believe that any material amount of COD should be incurred by a Debtor as a result of the implementation of the Plan prior to the disposition by such Debtor of all or substantially all of its assets (other than to the extent any Allowed Claim's distribution is subject to a maximum amount, or has been or is separately settled for less than its carrying value).  Accordingly, the Plan Proponents do not believe that the reduction of tax attributes resulting from such COD (which, as indicated above, only occurs as of the end of the tax year in which the COD occurs) generally should have a material impact on the Debtors.  However, there can be no assurance that all or a substantial amount of the COD will not be incurred earlier due to, among other things, a lack of direct authoritative guidance as to when COD occurs in the context of a liquidating Chapter 11 plan.

### b.       Limitation of NOL Carryforwards and other Tax Attributes

(i)       **Section 382 Limitations – General**

Under section 382 of the IRC, if a corporation (or consolidated group) undergoes an "ownership change," the amount of its pre-change losses (including NOL carryforwards from periods before the ownership change and certain losses or deductions which are "built-in" (i.e., economically accrued but unrecognized) as of the date of the ownership change) that may be utilized to offset future taxable income generally is subject to an annual limitation.

In general, the amount of this annual limitation is equal to the product of (i) the fair market value of the stock of the corporation (or, in the case of a consolidated group, the common parent) immediately before the ownership change (with certain adjustments) multiplied by (ii) the "long-term tax-exempt rate" in effect for the month in which the ownership change occurs (for example, 4.55% for ownership changes occurring in March 2011). For a corporation (or consolidated group) in bankruptcy that undergoes the ownership change pursuant to a confirmed bankruptcy plan, the stock value generally is determined immediately after (rather than before) the ownership change by taking into account the surrender or cancellation of creditors' claims, also with certain adjustments. The annual limitation can potentially be increased by the amount of certain recognized built-in gains, as discussed below. Notwithstanding the general rule, if the corporation (or the consolidated group) does not continue its historic business or use a significant portion of its historic assets in a new business for two years after the ownership change, the annual limitation resulting from the ownership change is zero, thereby precluding any utilization of the corporation's pre-change losses (absent any increases due to any recognized built-in gains).

As indicated above, section 382 of the IRC also limits the deduction of certain built-in losses recognized subsequent to the date of the ownership change. If a loss corporation (or consolidated group) has a net unrealized built-in loss at the time of an ownership change (taking into account most assets and items of "built-in" income and deduction), then any built-in losses recognized during the following five years (up to the amount of the original net unrealized built-in loss) generally will be treated as pre-change losses and similarly will be subject to the annual limitation. Conversely, if the loss corporation (or consolidated group) has a net unrealized built-in gain at the time of an ownership change, any built-in gains recognized during the following five years (up to the amount of the original net unrealized built-in gain) generally will increase the annual limitation in the year recognized, such that the loss corporation (or consolidated group) would be permitted to use its pre-change losses against such built-in gain income in addition to its regular annual allowance. In general, a loss corporation's (or consolidated group's) net unrealized built-in gain or loss will be deemed to be zero unless it is greater than the lesser of (i) $10 million or (ii) 15% of the fair market value of its assets (with certain adjustments) before the ownership change. Due to the LBHI Tax Group's utilization of the mark-to-market method of accounting, the Debtors disclosed in the Debtors' Disclosure Statement that they do not expect the majority of assets will have either built-in-gains or built-in-losses.

(ii)     **Section 382 Limitations – Possible Application to the LBHI Tax Group**

In light of the foregoing, the LBHI Tax Group's ability to utilize certain NOLs (and carryforwards thereof) and certain other tax attributes would be potentially subject to limitation if LBHI were to undergo an "ownership change" within the meaning of section 382 of the IRC by reason of the implementation of the Plan or otherwise.  As indicated above, based on the Debtors' section 382 analysis of the changes in LBHI's stock ownership discussed in the Debtors' Disclosure Statement, as well as the order entered by the Bankruptcy Court effective November 5, 2008 imposing certain restrictions on the trading of LBHI's equity, the Plan Proponents believe that no ownership change under section 382 has occurred to date, nor will occur prior to the Effective Date, that would limit the availability of the tax attributes of the LBHI Tax Group to offset such taxable income.  Moreover, pursuant to the Plan, the holders of Equity Interests in LBHI will maintain their economic interests in any residual assets of the LBHI after the satisfaction of all Allowed Claims against LBHI, which economic interests will be nontransferable, and the holders of Equity Interests in the Subsidiary Debtors will maintain their interests until satisfaction of all Allowed Claims against such Subsidiary Debtors and such Subsidiary Debtor winds down or dissolves and, in the case of Subsidiary Debtors that are Domestic Operating Companies, until such time as the Domestic Operating Company Creditor Representative determines with the board of directors of such Domestic Operating Company to wind down or dissolve such Domestic Operating Company, *in each case* provided that a wind down or dissolution shall not be undertaken with respect to a Debtor unless the Domestic Operating Company Creditor Representative, in the case of a Domestic Operating Company, or the Plan Administrator, in the case of all other Debtors, reasonably concludes that such wind-down or dissolution will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation, or that such Debtor can make such wind-down or dissolution in a tax efficient manner taking into account the tax attributes of such other Debtors. Accordingly, consistent with the intended treatment of the Plan as a plan of liquidation for federal income tax purposes, the Plan Proponents do not believe that the Plan should result in an ownership change of the LBHI Tax Group.  However, due to a lack of direct authoritative guidance in the context of a liquidating Chapter 11 plan, there is no assurance that the IRS would not successfully assert a contrary position (including with respect to the treatment for federal income tax purposes of the holders of Claims as continuing creditors and not as effective equity holders of LBHI throughout the liquidation process).  If, notwithstanding the Plan Proponents' position, an ownership change were considered to occur, the Debtors could incur a material amount of federal income tax unless (1) the Debtors' assets are distributed pursuant to the Plan on or before the date of such ownership change or (2) the amount of the annual limitation (taking into account the increase therein for certain recognized built-in gains) is large enough to permit the LBHI Tax Group to utilize an amount of NOL carryforwards and other attributes sufficient to offset such income tax.

c.     **Non-U.S. Income Tax Matters**

Historically, LBHI and its Affiliates conducted its business activities on a global basis, with offices located throughout the world, through both non-U.S. entities and non-U.S. branch operations of domestic entities.  At present, the LBHI Tax Group continues to maintain material debt and equity positions in many of these non-U.S. entities, notwithstanding the fact

that most of such Affiliates are currently under separate legal administration or receivership and collectability is, consequently, uncertain. Importantly, however, given the current U.S. tax profile of the LBHI Tax Group, any future remittance received from any such separate administration or receivership in satisfaction of historic debt and/or equity positions may be subject to host country, non-U.S. withholding taxes, thereby reducing the amounts available for distribution to creditors by LBHI and the Subsidiary Debtor estates.

**4.        Transfer of Liquidating Trust Assets to a Liquidating Trust**

As indicated above, anytime after the Effective Date throughout the period permitted for the liquidation of the Debtors under Section 7.6 of the Plan (i.e., at least three years), the Plan Administrator, in the case of LBHI and Subsidiary Debtors that are not Domestic Operating Companies, or the Domestic Operating Company Creditor Representative, in the case of a Domestic Operating Company, may if he or they determine that a Liquidating Trust is in the best interests of such a Debtor and holders of Allowed Claims against and Equity Interests in such Debtor, transfer some or all of a Debtor's assets to a Liquidating Trust on behalf of all or a portion of respective claimants and/or holders of Equity Interests of such Debtor. The transfer of assets by the Plan Administrator or Domestic Operating Company Creditor Representative, as the case may be, to a Liquidating Trust may result in the recognition of gain or loss by the Debtor effecting such transfer, depending in part on the value of such assets on the date of such transfer to the Liquidating Trust relative to the Debtor's tax basis in such assets. As indicated above, as disclosed by the Filing Debtors in the Debtors' Disclosure Statement, due to the Debtors' utilization of the mark-to-market method of accounting, the majority of assets are not expected to have either built-in-gains or built-in-losses.

**B.        Consequences to Holders of Claims and LBHI Equity Interests**

**1.        Realization and Recognition of Gain or Loss, In General**

The federal income tax consequences of the implementation of the Plan to a holder of a Claim or LBHI Equity Interest will depend, among other things, upon the origin of the holder's Claim, when the holder receives payment in respect of such Claim or Equity Interest, whether the holder reports income using the accrual or cash method of tax accounting, whether the holder acquired its Claim at a discount, whether the holder has taken a bad debt deduction or worthless security deduction with respect to such Claim or Equity Interest, and whether (as intended and herein assumed) the Plan is treated as a plan of liquidation for federal income tax purposes. A holder of an LBHI Equity Interest should consult its tax advisor regarding the timing and amount of any potential worthless stock loss.

Generally, a holder of an Allowed Claim will realize gain or loss on the exchange under the Plan of its Allowed Claim for Cash or other property (including any Liquidating Trust Interests), in an amount equal to the difference between (i) the sum of the amount of any Cash and the fair market value on the date of the exchange of any other property received by the holder, including, as discussed below, any beneficial interests in a Liquidating Trust (other than any consideration attributable to a Claim for accrued but unpaid interest) and (ii) the adjusted tax basis of the Allowed Claim exchanged therefor (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). With respect to the

treatment of accrued but unpaid interest and amounts allocable thereto, see the section entitled "Allocation of Consideration of Interest."

When gain or loss is recognized as discussed below, such gain or loss may be long-term capital gain or loss if the Claim or Equity Interest disposed of is a capital asset in the hands of the holder and has been held for more than one year. Each holder of an Allowed Claim or Equity Interest should consult its own tax advisor to determine whether gain or loss recognized by such holder will be long-term capital gain or loss and the specific tax effect thereof on such holder.

As discussed below, each holder of an Allowed Claim that receives a beneficial interest in the Liquidating Trust (if and when established) will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner, of its respective share of the Liquidating Trust Assets (consistent with its economic rights in the trust). Pursuant to the Plan, a Liquidating Trustee will in good faith value the assets transferred to the Liquidating Trust, and all parties to the Liquidating Trust (including holders of Claims and Equity Interests receiving Liquidating Trust Interests) must consistently use such valuation for all U.S. federal income tax purposes.

A holder's share of any proceeds received by a Liquidating Trust upon the sale or other disposition of the assets of the Liquidating Trust (other than any such amounts received as a result of the subsequent disallowance of Disputed Claims or the reallocation among holders of Allowed Claims of undeliverable Plan distributions) should not be included, for federal income tax purposes, in the holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such holder's ownership interest in the underlying assets of the Liquidating Trust.

A holder's tax basis in its respective share of the Liquidating Trust Assets will equal the fair market value of such interest, and the holder's holding period generally will begin the day following the establishment of a Liquidating Trust.

### 2.    Holders of All Allowed Claims

Pursuant to the Plan, a holder of an Allowed Claim will receive its Pro Rata Share of Distributions from time to time (not to exceed the amount of its Allowed Claim). The holder of any such Allowed Claim generally will realize gain or loss in an amount equal to the difference, if any, between (a) the amount of Cash and the fair market value of any other property received in the exchange (other than amounts allocable to accrued but unpaid interest) and (b) the holder's adjusted tax basis in the Claim (other than in respect of accrued but unpaid interest). In the case of a guarantee claim, amounts received generally would be aggregated with any amounts received on the holder's primary claim. It is possible that any loss, or a portion of any gain, realized by a holder of a Claim may have to be deferred until all of the distributions to such holder are received.

As discussed in the next section, the amount of Cash or other property received in respect of Claims for accrued but unpaid interest will be taxed as ordinary income, except to the extent previously included in income by a holder under his method of accounting.

113

3.      **Allocation of Consideration to Interest**

Pursuant to the <u>Section 8.12</u> of the Plan, all distributions in respect of Allowed Claims will be allocated first to the principal amount of the Allowed Claim (as determined for federal income tax purposes), with any excess allocated to accrued but unpaid interest. However, there is no assurance that such allocation would be respected by the IRS for federal income tax purposes. In general, to the extent any amount received (whether stock, cash, or other property) by a holder of a debt instrument is received in satisfaction of accrued interest during its holding period, such amount will be taxable to the holder as interest income (if not previously included in the holder's gross income under the holder's normal method of accounting). Conversely, a holder generally recognizes a deductible loss to the extent any accrued interest claimed was previously included in its gross income and is not paid in full. Each holder of an Allowed Claim is urged to consult its own tax advisor regarding the allocation of consideration and the taxation or deductibility of unpaid interest for tax purposes.

C.      **Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests**

1.      **Classification of the Liquidating Trust**

A Liquidating Trust, if created pursuant to the Plan, is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes. In general, a liquidating trust is not a separate taxable entity, but rather is treated for U.S. federal income tax purposes as a "grantor trust" (i.e., all income and loss is taxed directly to the liquidating trust beneficiaries). However, merely establishing a trust as a liquidating trust does not ensure that it will be treated as a grantor trust for U.S. federal income tax purposes. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. Any such Liquidating Trust will be structured to comply with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtor establishing such Liquidating Trust, the Liquidating Trustee, holders of Allowed Claims and Equity Interests, and the Liquidating Trust Beneficiaries) will be required to treat, for U.S. federal income tax purposes, a Liquidating Trust as a grantor trust of which the Liquidating Trust Beneficiaries are the owners and grantors. The following discussion assumes that any such Liquidating Trust will be so respected for U.S. federal income tax purposes. However, no opinion of counsel has been requested, and the Plan Proponents or Liquidating Trustee may or may not obtain a ruling from the IRS, concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position. If the IRS were to challenge successfully the classification of a Liquidating Trust, the U.S. federal income tax consequences to the Liquidating Trust, the Liquidating Trust Beneficiaries and the Debtors could vary from those discussed herein (including the potential for an entity-level tax on income of the Liquidating Trust).

2.      **General Tax Reporting by the Liquidating Trust and Beneficiaries**

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, holders of Allowed Claims and Equity Interests, and the Liquidating Trust Beneficiaries) must treat the transfer of the Liquidating Trust Assets to the

Liquidating Trust in accordance with the terms of the Plan.  Pursuant to the Plan, the Liquidating Trust Assets (other than assets allocable to Disputed Claims) are treated, for U.S. federal income tax purposes, as having been transferred, subject to any obligations relating to those assets, directly to the holders of the respective Claims or Equity Interests receiving Liquidating Trust Interests (with each holder receiving an undivided interest in such assets in accordance with their economic interests in such assets), followed by the transfer by the holders of such assets to the Liquidating Trust in exchange for the Liquidating Trust Interests.  Accordingly, all parties must treat the Liquidating Trust as a grantor trust of which the holders of Liquidating Trust Interests are the owners and grantors, and treat the Liquidating Trust Beneficiaries as the direct owners of an undivided interest in the Liquidating Trust Assets (other than any assets allocable to Disputed Claims), consistent with their economic interests therein, for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) among the Liquidating Trust Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to Disputed Claims) to the Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets.  All parties to the Liquidating Trust (including, without limitation, the respective Debtor, holders of Allowed Claims and Equity Interests, and the Liquidating Trust Beneficiaries) must consistently use such valuation for all U.S. federal income tax purposes.  The valuation will be made available, from time to time, as relevant for tax reporting purposes.

Taxable income or loss allocated to a Liquidating Trust Beneficiary will be treated as income or loss with respect to such Liquidating Trust Beneficiary's undivided interest in the Liquidating Trust Assets, and not as income or loss with respect to its prior Allowed Claim or Equity Interest.  The character of any income and the character and ability to use any loss will depend on the particular situation of the Liquidating Trust Beneficiary.  It is currently unknown whether and to what extent the Liquidating Trust Interests will be transferable.

The U.S. federal income tax obligations of a holder with respect to its Liquidating Trust Interest are not dependent on the Liquidating Trust distributing any cash or other proceeds. Thus, a holder may incur a U.S. federal income tax liability with respect to its allocable share of Liquidating Trust income even if the Liquidating Trust does not make a concurrent distribution

115

to the holder.  In general, other than in respect of cash retained on account of Disputed Claims and distributions resulting from undeliverable distributions (the subsequent distribution of which still relates to a holder's Allowed Claim), a distribution of cash by the Liquidating Trust will not be separately taxable to a Liquidating Trust Beneficiary since the beneficiary is already regarded for federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Liquidating Trust).  Holders are urged to consult their tax advisors regarding the appropriate federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trustee will comply with all applicable governmental withholding requirements (see <u>Section 8.8</u> of the Plan).  Thus, in the case of any Liquidating Trust Beneficiaries that are not U.S. persons, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate).  As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to Non-U.S. holders; accordingly, such holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including owning an interest in the Liquidating Trust.

The Liquidating Trustee will file with the IRS tax returns for the Liquidating Trust consistent with its classification as a granter trust pursuant to Treasury Regulation Section 1.671-4(a).  Except as discussed below with respect to any reserve for Disputed Claims, the Liquidating Trustee also will send annually to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

### 3.    Tax Reporting for Assets Allocable to Disputed Claims

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (A) may elect to treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes.

Accordingly, if a "disputed ownership fund" election is made, any amounts allocable to, or retained on account of, Disputed Claims will be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust Assets in such reserves, and all distributions from such assets (which distributions will be net of the expenses relating to the retention of such assets) will be treated as received by holders in respect of their Claims as if distributed by the Debtors.  All parties (including, without limitation, the

Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will be required to report for tax purposes consistently with the foregoing.

### D.     Withholding on Distributions, and Information Reporting

All distributions to holders of Allowed Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding.  Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 28%).  Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.  These categories are very broad; however, there are numerous exceptions.  Holders of Allowed Claims are urged to consult their tax advisors regarding these regulations regarding the Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to these Regulations.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.  Holders are urged to consult their tax advisors regarding these Regulations and whether the transactions contemplated by the Plan would be subject to these Regulations and require disclosure on the holder's tax returns.

## XI.     VOTING PROCEDURES AND REQUIREMENTS

### A.     Parties Entitled to Vote

Generally, any holder of an Allowed Claim against or Equity Interest in any of the Debtors at the date on which the order approving this Disclosure Statement is entered by the clerk of the Bankruptcy Court whose Claim or Equity Interest has not previously been disallowed by the Bankruptcy Court is entitled to vote to accept or reject the Plan if such Claim or Equity Interest is Impaired under the Plan.  Under section 1124 of the Bankruptcy Code, a class of Claims or Equity Interests is deemed to be "Impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Equity Interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such Claim or Equity Interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such Claim or Equity Interest as it existed before the default.

A holder of a Claim or Equity Interest may vote to accept or reject a plan if the Claim or Equity Interest is "allowed," which means generally that no party-in-interest has objected to such Claim or Equity Interest, and the Claim or Equity Interest is Impaired by the

plan. If, however, the holder of an Impaired Claim or Equity Interest will not receive or retain any property under the plan on account of such Claim or Equity Interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such Claims and Equity Interests do not actually vote on the plan. If a Claim or Equity Interest is not Impaired by the plan, the Bankruptcy Code deems the holder of such Claim or Equity Interest to have accepted the plan and, accordingly, holders of such Claims and Equity Interests are not entitled to vote on the plan.

The Plan does not include any Classes or Equity Interests that are not Impaired. Holders of Claims in LBHI Classes 10A, 10B, 10C, and 11, and all Holders of Equity Interests are deemed to have rejected the Plan because their votes to accept or reject the Plan are not being solicited.

Any Claim or Equity Interest as to which an objection has been filed is not entitled to vote, unless the Bankruptcy Court, upon application of the holder to whose Claim or Equity Interest an objection has been made temporarily allows such Claim or Equity Interest to the extent that it deems proper for the purpose of accepting or rejecting the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## B. Ballots and Voting Deadline

A Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement mailed to the holders of Claims that the Plan Proponents believe may be entitled to vote to accept or reject the Plan. BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE VOTING INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.

If you are entitled and are being solicited to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. If you hold Claims in more than one Class and you are entitled to vote Claims in more than one Class, you will receive separate ballots, which must be used for each separate Class of Claims. Ballots and Master Ballots should be returned to:

| | |
|---|---|
| If by overnight mail or hand delivery, to:<br>Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Ballot Processing Center<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017 | If by first-class mail, to:<br>Lehman Ballot Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5014<br>New York, New York 10150-5014 |

If the return envelope provided with your Ballot was addressed to your bank or brokerage firm, please allow sufficient time for that firm to process your vote on a Master Ballot before the Voting Deadline (**4:00 p.m., prevailing Eastern Time, [___], 2011).**

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE **RECEIVED** BY NO LATER THAN **4:00 P.M.**

**(PREVAILING EASTERN TIME) ON [___], 2011**.   ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR A REJECTION OF THE PLAN SHALL NOT BE COUNTED.

Pursuant to the Disclosure Statement Order, the Bankruptcy Court set [_____,] 2011 as the record date for holders of Claims entitled to vote on the Plan (the "Voting Record Date").  Accordingly, only holders of record as of the Voting Record Date that otherwise are entitled to vote under the Plan will receive a Ballot and may vote on the Plan.

YOU WILL NOTE THAT YOUR BALLOT SETS FORTH A CLAIM AMOUNT THAT IS BASED EITHER ON YOUR PROOF OF CLAIM OR DEBTORS' SCHEDULES OF LIABILITIES.  BY INCLUDING SUCH CLAIM AMOUNT, THE PLAN PROPONENTS ARE NOT ADMITTING THAT YOU HAVE A CLAIM IN THE STATED AMOUNT AND ARE NOT WAIVING ANY RIGHTS THEY MAY HAVE TO OBJECT TO YOUR VOTING OF THE CLAIM IN SUCH AMOUNT OR YOUR RECOVERY UNDER THE PLAN BASED ON SUCH AMOUNT.

### C.    Voting Procedures

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only holders of Impaired Claims who actually vote will be counted.  The failure of a holder to deliver a duly executed ballot will be deemed to constitute an abstention by such holder with respect to voting on the Plan and such abstentions will not be counted as votes for or against the Plan.

Solicitation materials are being provided to certain holders of Claims that are entitled to vote ("Eligible Claims") whose names (or the names of whose Nominees) appear as of the Voting Record Date in the records maintained by the Debtors, the security holders list maintained by the indenture trustee and the list of participants provided by the Depository Trust Company, Euroclear Bank, Clearstream Bank, or other applicable depository.  Nominees should provide copies of the solicitation materials to the beneficial owners of the Eligible Claims.  Any beneficial owner of Eligible Claims who has not received a ballot should contact his/her or its Nominee or the Solicitation Agent.

Holders of Eligible Claims should provide all of the information requested by the ballots they receive.  Holders of Eligible Claims should complete and return all Ballots that they receive in the return envelope provided with each such Ballot.

### D.    Fiduciaries and other Representatives

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or another acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and, unless otherwise determined by the Plan Proponents, must submit proper evidence satisfactory to the Plan Proponents of authority to so act.  Authorized signatories should submit the separate Ballot of each beneficial owner for whom they are voting.

UNLESS THE BALLOT BEING FURNISHED IS TIMELY SUBMITTED TO THE SOLICITATION AGENT ON OR PRIOR TO THE VOTING DEADLINE, SUCH BALLOT WILL BE REJECTED AS INVALID AND WILL NOT BE COUNTED AS AN ACCEPTANCE OR REJECTION OF THE PLAN; *PROVIDED*, *HOWEVER*, THAT THE PLAN PROPONENTS RESERVE THE RIGHT, IN THEIR SOLE DISCRETION, TO REQUEST OF THE BANKRUPTCY COURT THAT ANY SUCH BALLOT BE COUNTED. IN NO CASE SHOULD A BALLOT BE DELIVERED TO ANY ENTITY OTHER THAN THE NOMINEE OR THE SOLICITATION AGENT.

### E.    Agreements Upon Furnishing Ballots

The delivery of an accepting Ballot to the Solicitation Agent by a holder of Eligible Claims pursuant to one of the procedures set forth above will constitute the agreement of such holder to accept (i) all of the terms of, and conditions to the Solicitation and (ii) the terms of the Plan; *provided*, *however*, all parties in interest retain their right to object to Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

### F.    Waivers of Defects, Irregularities, Etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance and revocation or withdrawal of ballots will be determined by the Solicitation Agent and the Plan Proponents in their sole discretion, which determination will be final and binding.  As described in more details below, effective withdrawals of ballots must be delivered to the Solicitation Agent prior to the Voting Deadline.  The Plan Proponents reserve the absolute right to contest the validity of any such withdrawal.  The Plan Proponents also reserve the right to reject any and all ballots not in proper form, the acceptance of which would, in the opinion of the Plan Proponents or its counsel, be unlawful.  The Plan Proponents further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular ballot.  The interpretation (including the ballot and the respective instructions thereto) by the Plan Proponents, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with deliveries of ballots must be cured within such time as the Plan Proponents (or the Bankruptcy Court) determine.  Neither the Plan Proponents nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

### G.    Withdrawal of Ballots; Revocation

Any party who has delivered a valid ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline.  A notice of withdrawal, to be valid, must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the

same manner as the ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn and (iv) be received by the Solicitation Agent in a timely manner at the address set forth in this Section.  Prior to the Confirmation Hearing, the Plan Proponents intend to consult with the Solicitation Agent to determine whether any withdrawals of ballots were received and whether the Requisite Amount of acceptances of the Plan have been received.  As stated above, the Plan Proponents expressly reserve the absolute right to contest the validity of any such withdrawals of ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of ballots which is not received in a timely manner by the Solicitation Agent will not be effective to withdraw a previously cast ballot.

Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed ballot may revoke such ballot and change his or its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed ballot for acceptance or rejection of the Plan.  In the case where more than one timely, properly completed ballot is received, only the ballot which bears the latest date will be counted for purposes of determining whether the Requisite Acceptances have been received.

**H.    Further Information; Additional Copies**

If you have any questions or require further information about the voting procedure for voting your Claim or about the solicitation materials, or if you wish to obtain an additional copy of the Plan, this Disclosure Statement, or any exhibits to such documents (at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d)), please contact the Solicitation Agent:

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Ballot Processing Center**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**
**U.S.: 1 866 879 0688**
**International: 1 503 597 7691**

## XII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponents believe that the Plan affords holders of Allowed Claims the potential for the greatest realization on the Debtors' assets and, therefore, is in the best interests of such holders.  If, however, the requisite acceptances are not received, or the requisite acceptances are received but the Plan is not subsequently confirmed and consummated, the theoretical alternatives include: (i) the Debtors' Plan, (ii) the Ad Hoc Group Plan, (iii) the formulation of an alternative plan or plans of reorganization and (iv) liquidation of all of the Debtors under chapter 7 of the Bankruptcy Code.

## XIII.   CONCLUSION AND RECOMMENDATION

The Plan Proponents believe that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to holders of Claims.  Other alternatives would involve significant delay, uncertainty and substantial additional administrative costs.  The Plan Proponents urge holders of Impaired Claims entitled to vote on the Plan to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than [_:__ ].m., prevailing Eastern Time, on [ , ___].

Dated:  New York, New York
April 25, 2011

*[Signature Pages Follow]*

ANGELO, GORDON & CO., L.P. on behalf of certain
managed accounts and funds

By: _____/s/ Thomas M. Fuller_____
Name:     Thomas M. Fuller
Title:      Authorized Signatory
Address: 245 Park Avenue, 26th Floor
            New York, NY 10167
Attn:      Thomas Boyce
Tel:       (212) 692-2003
Fax:       (212) 867-6395
Email:     tboyce@angelogordon.com

CONTRARIAN CAPITAL MANAGEMENT, LLC


By: _____ /s/ Jon Bauer _____
Name:    Jon Bauer
Title:    Managing Member
Address:  411 West Putnam Ave.
          Greenwich, CT  06830
Tel:     (203) 862-8200
Fax:
Email:    jbauer@contrariancapital.com
Copy to:  eschwartz@contrariancapital.com

CREDIT AGRICOLE CIB


By: _____ /s/ Alan Sidrane _____
Name:    Alan Sidrane
Title:    Managing Director
Address: 1301 Avenue of the Americas
         New York, NY 10019
Tel:     212-261-7875
Fax:     212-261-3259
Email:   alan.sidrane@ca-cib.com


By: _____ /s/ Kathleen Sweeney _____
Name:    Kathleen Sweeney
Title:    Managing Director
Address: 1301 Avenue of the Americas
         New York, NY 10019
Tel:     212-261-7648
Fax:     212-261-3259
Email:   kathleen.sweeney@ca-cib.com

Signature Page to Disclosure Statement

CREDIT SUISSE INTERNATIONAL


By:    /s/ Bik Kwan Chung
Name:    Bik Kwan Chung
Title:    Authorized Signatory
Address:

Tel:
Fax:
Email:


By:    /s/ Carole Villoresi
Name:    Carole Villoresi
Title:    Authorized Signatory
Address:

Tel:
Fax:
Email:

Signature Page to Disclosure Statement

CYRUS CAPITAL PARTNERS, LP
On behalf of funds managed by it


By: _____ /s/ David Milich _____
Name:    David Milich
Title:    Authorized Signatory
Address:  399 Park Avenue
          New York, NY 10022
Attention: Svetoslav Nikov
Tel:      212-380-5822
Fax:      212-380-5922
Email:    snikov@cyruscapital.com

D. E. SHAW COMPOSITE PORTFOLIOS, L.L.C.


By: _____ /s/ Max Stone _____

Name:    Max Stone

Title:    Authorized Signatory

Address: 1166 Avenue of the Americas, 9th Fl.
         New York, NY 10036

Tel:     212-478-0000

Fax:     212-478-0100

Signature Page to Disclosure Statement

D. E. SHAW OCULUS PORTFOLIOS, L.L.C.

By: _____ /s/ Max Stone _____

Name:     Max Stone

Title:     Authorized Signatory

Address:  1166 Avenue of the Americas, 9th Fl.
          New York, NY 10036

Tel:      212-478-0000

Fax:      212-478-0100

Signature Page to Disclosure Statement

DEUTSCHE BANK AG

By:      /s/ Ernest C. Goodrich
Name:      Ernest C. Goodrich, Jr.
Title:      Managing Director & Senior Counsel
Address:      60 Wall Street
             New York, NY 10005
Tel:      212-250-7636
Fax:
Email:      chip.goodrich@db.com

By:      /s/ Steven Kessler
Name:      Steven Kessler
Title:      Director
Address:      60 Wall Street
             New York, NY 10005
Tel:      212-250-8202
Fax:
Email:      steven.kessler@db.com

GOLDENTREE ASSET MANAGEMENT, LP


By: _____/s/ Barry Ritholz_____
Name:    Barry Ritholz
Title:    General Counsel
Address:  300 Park Avenue, 21st Floor
          New York, NY 10021
Tel:      212-847-3420
Fax:      212-847-3494
Email:    britholz@goldentree.com

GOLDMAN SACHS BANK USA (SUCCESSOR BY
MERGER TO GOLDMAN SACHS CAPITAL MARKETS,
L.P.)


By:      /s/ Kevin G. Byrne
Name:    Kevin G. Byrne
Title:   Chief Financial Officer
Address: 200 West Street
         New York, NY 10282
Tel:     212-902-3076
Fax:     917-977-4570
Email:   kevin.byrne@gs.com

GOLDMAN SACHS INTERNATIONAL


By: _____/s/ Andrew Bagley_____
Name:     Andrew Bagley
Title:      Managing Director
Address:  Peterborough Court, 133 Fleet St.,
            London EC4A 2BB
Tel:        + 44 20 7552 2088
Fax:
Email:     Andrew.bagley@gs.com

Signature Page to Disclosure Statement

HAYMAN CAPITAL MANAGEMENT, LP


By: _____ /s/ Debby LaMoy _____

Name:     Debby LaMoy

Title:     Chief Operating Officer

Address:  2101 Cedar Springs Road, Suite 1400
          Dallas, Texas  75019

Tel:      214-347-8050

Fax:      214-347-8051

Email:    dl@haymancapital.com

Signature Page to Disclosure Statement

KNIGHTHEAD CAPITAL MANAGEMENT, LLC
solely as investment manager for certain funds and accounts


By: _____/s/ Thomas Wagner_____
Name:    Thomas Wagner
Title:    Managing Member
Address:  623 Fifth Avenue, 29th Floor
          New York, NY 10022
Tel:      (212) 356-2900

MASON CAPITAL MANAGEMENT LLC

By: _____ /s/ John Grizzetti _____
Name:    John Grizzetti
Title:    Chief Financial Officer
Address: 110 East 59th St.
         New York, NY 10022
Tel:     212.771.1206
Fax:     212.644.4264
Email:   johng@masoncap.com

Signature Page to Disclosure Statement

MORGAN STANLEY & CO. INTERNATIONAL PLC.

By:    /s/ Brian Cripps
Name:    BRIAN CRIPPS
Title:    Authorised Signatory
Address:  20, Bank Street, Canary Wharf
          London E14 4AD
Tel:      + 44 207 677 7974/9891
Fax:      + 44 207 056 1846/0868
Email:    lndistressed@morganstanley.com

MORGAN STANLEY CAPITAL SERVICES INC.

By:    /s/ Donna M. Souza
Name:   Donna Souza
Title:    Vice President
Address: 1585 Broadway
         New York, NY 10036
Tel:     212-761-1054
Fax:    212-507-3572
Email:   donna.souza@morganstanley.com

MOUNT KELLETT CAPITAL MANAGEMENT
for and on behalf of Mount Kellett Master Fund II, L.P.


By: _____ /s/ Jonathan Fiorello _____
Name:    Jonathan Fiorello
Title:    Chief Operating Officer
Address: 623 5th Avenue, 18th Floor
         New York, NY 10022
Tel:     212-588-6128
Fax:
Email:   jporter@mountkellett.com

OAKTREE CAPITAL MANAGEMENT, L.P., SOLELY IN ITS CAPACITY AS AGENT ON BEHALF OF CERTAIN FUNDS ADVISED BY IT OR THEIR RESPECTIVE SUBSIDIARIES

By: _____ /s/ Kenneth Liang _____
Name:    Kenneth Liang
Title:    Managing Director
Address:  333 South Grand Avenue, 28th Floor
          Los Angeles, CA 90071
Tel:      (213) 830-6422
Fax:      (213) 830-6494
Email:    kliang@oaktreecapital.com


By: _____ /s/ Mahesh Balakrishnan _____
Name:    Mahesh Balakrishnan
Title:    Vice President
Address:  333 South Grand Avenue, 28th Floor
          Los Angeles, CA 90071
Tel:      (213) 830-6755
Fax:      (213) 830-6494
Email:    mbalakrishnan@oaktreecapital.com

THE ROYAL BANK OF SCOTLAND PLC


By:       /s/ Michael Fabiano
Name:    Michael Fabiano
Title:     Managing Director
Address:  600 Washington Boulevard
          Stamford, CT 06901
Tel:      (203) 897-3663
Fax:      (203) 897-3418
Email:    michael.fabiano@rbs.com

SERENGETI ASSET MANAGEMENT LP


By: _____ /s/ Marc Baum _____
Name:    Marc Baum
Title:     Director
Address: 632 Broadway
         New York, NY 10012
Tel:      (212) 466-2331
Fax:      (212) 672-2330
Email:    mbaum@serengeti-am.com

SILVER POINT CAPITAL, L.P. ON BEHALF OF ITS
AFFILIATED INVESTMENT FUNDS

By:     /s/ Edward A. Mulé
Name:   Edward A. Mulé
Title:    CEO
Address:  2 Greenwich Plaza
          Greenwich, CT 06830
Tel:      203-542-4010
Fax:     203-542-4110
Email:   emule@silverpointcapital.com

STATE STREET BANK AND TRUST COMPANY

By:      /s/ David C. Phelan
Name:    David C. Phelan
Title:      Executive Vice President and General Counsel
Address:   One Lincoln Street, SFC-21
           Boston, MA 02111
Tel:        617-664-1783
Fax:       617-664-4310
Email:     dcphelan@statestreet.com

YORK CAPITAL MANAGEMENT GLOBAL ADVISORS,
LLC, o/b/o funds and accounts managed by it


By: _____ /s/ Adam J. Semler _____
Name:      Adam J. Semler
Title:      Chief Operating Officer
Address:  767 5th Avenue, 17th Floor,
              New York, NY 10153
Tel:        (212) 300-1300
Fax:        (212) 300-1301
Email:

# Exhibit 1

## *The Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | **:** | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------ x


### JOINT CHAPTER 11 PLAN FOR LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS OTHER THAN MERIT, LLC, LB SOMERSET LLC AND LB PREFERRED SOMERSET LLC PROPOSED BY <u>NON-CONSOLIDATION PLAN PROPONENTS</u>


Dated: New York, New York
     April 25, 2011

**Attorneys for Plan Proponents:**


BINGHAM MCCUTCHEN LLP
399 Park Ave
New York, NY 10022
T:  212 705 7000
F:  212 752 5378
Joshua Dorchak

*Attorneys for: Deutsche Bank AG*

BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110
T:  617 951 8000
F:  617 951 8736
Sabin Willett

*Attorneys for: State Street Bank and Trust Company*

BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
T:  617 856 8200
F:  617 856 8201
Steven L. Levine

*Attorneys for: Cyrus Capital Partners, LP, Silver Point Capital, L.P., and York Capital Management Global Advisors, LLC*

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
T:  212 504 6000
F:  212 504 6666
Howard R. Hawkins, Jr.

700 Sixth Street, N.W.
Washington, DC 20001
T:  202 862 2200
F:  202 862 2400
Mark C. Ellenberg

*Attorneys for: Morgan Stanley & Co. International plc. and Morgan Stanley Capital Services Inc.*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T:  212 225 2000
F:  212 225 3999
Thomas J.  Moloney
Sean A. O'Neal

*Attorneys for: D. E. Shaw Composite Portfolios, L.L.C., D.E. Shaw Oculus Portfolios, L.L.C.,
Goldman Sachs Bank USA, and Goldman Sachs International*

CLIFFORD CHANCE LLP
31 West 52nd Street
New York, NY 10019-6131
T:  212 878 8000
F:  212 878 8375
Andrew Brozman

*Attorneys for: Credit Agricole CIB*

CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
T:  212 474 1000
F:  212 474 3700
Richard Levin

*Attorneys for: Credit Suisse International*

DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
T:  213 621 6000
F:  213 621 6100
Bruce Bennett
Monika S. Wiener

*Attorneys for certain funds managed by and/or affiliated with: Angelo, Gordon & Co., L.P.,
Contrarian Capital Management, LLC, Goldentree Asset Management, LP, Hayman Capital
Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC,
Mount Kellett Capital Management, Oaktree Capital Management, L.P., and Serengeti Asset
Management LP*

DEWEY LEBOEUF LLP

1301 Avenue of the Americas

New York, NY 10019-6092

T:  212 259 8000

F:  212 259 6333

Irena M. Goldstein

*Attorneys for: The Royal Bank of Scotland plc*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas

New York, NY 10019

T:  212 373 3000

F:  212 757 3990

Jeffrey D. Saferstein

Alan W. Kornberg

*Attorneys for: Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, and Silver Point Capital, L.P. on behalf of its affiliated investment funds*

# TABLE OF CONTENTS

**Page**

## ARTICLE I
DEFINITIONS AND CONSTRUCTION OF TERMS

## ARTICLE II
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1     Administrative Expense Claims................................................................ 16

2.2     Professional Compensation and Reimbursement Claims .................................. 16

2.3     Priority Tax Claims............................................................................. 17

## ARTICLE III
CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1     LBHI ............................................................................................. 17

3.2     LCPI ............................................................................................. 18

3.3     LBCS ............................................................................................ 18

3.4     LBSF ............................................................................................ 19

3.5     LOTC ............................................................................................ 19

3.6     LBCC ............................................................................................ 19

3.7     LBDP ............................................................................................ 20

3.8     LBFP ............................................................................................ 20

3.9     LB 745 ........................................................................................... 20

3.10    PAMI Statler ................................................................................... 20

3.11    CES .............................................................................................. 21

3.12    CES V ........................................................................................... 21

3.13    CES IX ........................................................................................... 21

3.14    East Dover ...................................................................................... 21

3.15    LS Finance ...................................................................................... 22

3.16    LUXCO .......................................................................................... 22

3.17    BNC .............................................................................................. 22

3.18    LB Rose Ranch ................................................................................ 22

3.19    SASCO ........................................................................................... 23

3.20    LB 2080 .......................................................................................... 23

i

# TABLE OF CONTENTS
(continued)

**Page**

## ARTICLE IV
## TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN LBHI

| | | |
|---|---|---|
| 4.1 | LBHI Class 1 – Priority Non-Tax Claims against LBHI | 23 |
| 4.2 | LBHI Class 2 – Secured Claims against LBHI | 23 |
| 4.3 | LBHI Class 3 – Senior Unsecured Claims against LBHI | 24 |
| 4.4 | LBHI Class 4A – Senior Intercompany Claims against LBHI | 24 |
| 4.5 | LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI | 24 |
| 4.6 | LBHI Class 5A – Senior Third-Party Guarantee Claims against LBHI | 24 |
| 4.7 | LBHI Class 5B – Senior Third-Party LBT/LBSN Guarantee Claims against LBHI | 24 |
| 4.8 | LBHI Class 6 – Derivative Claims against LBHI | 25 |
| 4.9 | LBHI Class 7 – General Unsecured Claims against LBHI | 25 |
| 4.10 | LBHI Class 8A – Intercompany Claims against LBHI | 25 |
| 4.11 | LBHI Class 8B – Affiliate Guarantee Claims against LBHI | 25 |
| 4.12 | LBHI Class 9 – Derivative Guarantee Claims against LBHI | 25 |
| 4.13 | LBHI Class 10A – Subordinated Class 10A Claims against LBHI | 26 |
| 4.14 | LBHI Class 10B – Subordinated Class 10B Claims against LBHI | 26 |
| 4.15 | LBHI Class 10C – Subordinated Class 10C Claims against LBHI | 26 |
| 4.16 | LBHI Class 11 – Section 510(b) Claims against LBHI | 26 |
| 4.17 | LBHI Class 12 – Equity Interests in LBHI | 27 |

## ARTICLE V
## TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN SUBSIDIARY DEBTORS

| | | |
|---|---|---|
| 5.1 | LCPI Class 1 – Priority Non-Tax Claims against LCPI | 27 |
| 5.2 | LCPI Class 2 – Secured Claims against LCPI | 28 |
| 5.3 | LCPI Class 3 – Derivative Claims against LCPI | 28 |
| 5.4 | LCPI Class 4 – General Unsecured Claims against LCPI | 28 |
| 5.5 | LCPI Class 5 – Intercompany Claims against LCPI | 28 |
| 5.6 | LCPI Class 6 – Equity Interests in LCPI | 28 |
| 5.7 | LBCS Class 1 – Priority Non-Tax Claims against LBCS | 29 |
| 5.8 | LBCS Class 2 – Secured Claims against LBCS | 29 |

# TABLE OF CONTENTS
(continued)

**Page**

5.9    LBCS Class 3 – Derivative Claims against LBCS ................................................ 29

5.10   LBCS Class 4 – General Unsecured Claims against LBCS .............................. 29

5.11   LBCS Class 5 – Intercompany Claims against LBCS ....................................... 30

5.12   LBCS Class 6 – Equity Interests in LBCS ......................................................... 30

5.13   LBSF Class 1 – Priority Non-Tax Claims against LBSF ................................. 30

5.14   LBSF Class 2 – Secured Claims against LBSF ................................................ 30

5.15   LBSF Class 3 – Derivative Claims against LBSF ............................................ 31

5.16   LBSF Class 4 – General Unsecured Claims against LBSF .............................. 31

5.17   LBSF Class 5 – Intercompany Claims against LBSF ....................................... 31

5.18   LBSF Class 6 – Equity Interests in LBSF ........................................................ 31

5.19   LOTC Class 1 – Priority Non-Tax Claims against LOTC ............................... 31

5.20   LOTC Class 2 – Secured Claims against LOTC .............................................. 32

5.21   LOTC Class 3 – Derivative Claims against LOTC .......................................... 32

5.22   LOTC Class 4 – General Unsecured Claims against LOTC............................. 32

5.23   LOTC Class 5 – Intercompany Claims against LOTC ..................................... 32

5.24   LOTC Class 6 – Equity Interests in LOTC....................................................... 32

5.25   LBCC Class 1 – Priority Non-Tax Claims against LBCC................................ 33

5.26   LBCC Class 2 – Secured Claims against LBCC .............................................. 33

5.27   LBCC Class 3 – Derivative Claims against LBCC .......................................... 33

5.28   LBCC Class 4 – General Unsecured Claims against LBCC............................. 34

5.29   LBCC Class 5 – Intercompany Claims against LBCC ..................................... 34

5.30   LBCC Class 6 – Equity Interests in LBCC....................................................... 34

5.31   LBDP Class 1 – Priority Non-Tax Claims against LBDP ................................ 34

5.32   LBDP Class 2 – Secured Claims against LBDP ............................................... 34

5.33   LBDP Class 3 – Derivative Claims against LBDP............................................ 35

5.34   LBDP Class 4 – General Unsecured Claims against LBDP ............................. 35

5.35   LBDP Class 5 – Intercompany Claims against LBDP ..................................... 35

5.36   LBDP Class 6 – Equity Interests in LBDP ....................................................... 35

5.37   LBFP Class 1 – Priority Non-Tax Claims against LBFP ................................. 36

5.38   LBFP Class 2 – Secured Claims against LBFP ................................................ 36

# TABLE OF CONTENTS
(continued)

**Page**

5.39    LBFP Class 3 – Derivative Claims against LBFP ................................ 36

5.40    LBFP Class 4 – General Unsecured Claims against LBFP ................................ 36

5.41    LBFP Class 5 – Intercompany Claims against LBFP ................................ 36

5.42    LBFP Class 6 – Equity Interests in LBFP ................................ 37

5.43    LB 745 Class 1 – Priority Non-Tax Claims against LB 745 ................................ 37

5.44    LB 745 Class 2 – Secured Claims against LB 745 ................................ 37

5.45    LB 745 Class 3 – General Unsecured Claims against LB 745 ................................ 37

5.46    LB 745 Class 4 – Intercompany Claims against LB 745 ................................ 38

5.47    LB 745 Class 5 – Equity Interests in LB 745 ................................ 38

5.48    PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI Statler ............ 38

5.49    PAMI Statler Class 2 – Secured Claims against PAMI Statler ................................ 38

5.50    PAMI Statler Class 3 – General Unsecured Claims against PAMI Statler .......... 39

5.51    PAMI Statler Class 4 – Intercompany Claims against PAMI Statler ................ 39

5.52    PAMI Statler Class 5 – Equity Interests in PAMI Statler ................................ 39

5.53    CES Class 1 – Priority Non-Tax Claims against CES ................................ 39

5.54    CES Class 2 – Secured Claims against CES ................................ 40

5.55    CES Class 3A – General Unsecured Claims against CES ................................ 40

5.56    CES Class 4 – Intercompany Claims against CES ................................ 40

5.57    CES Class 5 – Equity Interests in CES ................................ 40

5.58    CES V Class 1 – Priority Non-Tax Claims against CES V ................................ 41

5.59    CES V Class 2 – Secured Claims against CES V ................................ 41

5.60    CES V Class 3 – General Unsecured Claims against CES V ................................ 41

5.61    CES V Class 4 – Intercompany Claims against CES V ................................ 41

5.62    CES V Class 5 – Equity Interests in CES V ................................ 42

5.63    CES IX Class 1 – Priority Non-Tax Claims against CES IX ................................ 42

5.64    CES IX Class 2 – Secured Claims against CES IX ................................ 42

5.65    CES IX Class 3 – General Unsecured Claims against CES IX ................................ 42

5.66    CES IX Class 4 – Intercompany Claims against CES IX ................................ 43

5.67    CES IX Class 5 – Equity Interests in CES IX ................................ 43

5.68    East Dover Class 1 – Priority Non-Tax Claims against East Dover ................ 43

iv

# TABLE OF CONTENTS
(continued)

**Page**

5.69    East Dover Class 2 – Secured Claims against East Dover.................................. 44

5.70    East Dover Class 3 – General Unsecured Claims against East Dover................ 44

5.71    East Dover Class 4 – Intercompany Claims against East Dover ....................... 44

5.72    East Dover Class 5 – Equity Interests in East Dover ........................................ 44

5.73    LS Finance Class 1 – Priority Non-Tax Claims against LS Finance ................. 45

5.74    LS Finance Class 2 – Secured Claims against LS Finance................................ 45

5.75    LS Finance Class 3 – General Unsecured Claims against LS Finance............... 45

5.76    LS Finance Class 4 – Intercompany Claims against LS Finance ...................... 45

5.77    LS Finance Class 5 – Equity Interests in LS Finance ....................................... 46

5.78    LUXCO Class 1 – Priority Non-Tax Claims against LUXCO ........................... 46

5.79    LUXCO Class 2 – Secured Claims against LUXCO.......................................... 46

5.80    LUXCO Class 3 – General Unsecured Claims against LUXCO........................ 47

5.81    LUXCO Class 4 – Intercompany Claims against LUXCO ................................ 47

5.82    LUXCO Class 5 – Equity Interests in LUXCO ................................................. 47

5.83    BNC Class 1 – Priority Non-Tax Claims against BNC ..................................... 47

5.84    BNC Class 2 – Secured Claims against BNC .................................................... 47

5.85    BNC Class 3 – General Unsecured Claims against BNC .................................. 48

5.86    BNC Class 4 – Intercompany Claims against BNC........................................... 48

5.87    BNC Class 5 – Equity Interests in BNC ........................................................... 48

5.88    LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB Rose
Ranch ................................................................................................................ 48

5.89    LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch................... 49

5.90    LB Rose Ranch Class 3 – General Unsecured Claims against LB Rose
Ranch ................................................................................................................ 49

5.91    LB Rose Ranch Class 4 – Intercompany Claims against LB Rose Ranch .......... 49

5.92    LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch.......................... 49

5.93    SASCO Class 1 – Priority Non-Tax Claims against SASCO............................. 50

5.94    SASCO Class 2 – Secured Claims against SASCO........................................... 50

5.95    SASCO Class 3 – General Unsecured Claims against SASCO.......................... 50

5.96    SASCO Class 4 – Intercompany Claims against SASCO ................................. 51

5.97    SASCO Class 5 – Equity Interests in SASCO................................................... 51

# TABLE OF CONTENTS
(continued)

**Page**

5.98    LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080 ........................... 51

5.99    LB 2080 Class 2 – Secured Claims against LB 2080 ......................................... 51

5.100   LB 2080 Class 3 – General Unsecured Claims against LB 2080 ...................... 52

5.101   LB 2080 Class 4 – Intercompany Claims against LB 2080 ............................... 52

5.102   LB 2080 Class 5 – Equity Interests in LB 2080 ................................................ 52

## ARTICLE VI
## IMPLEMENTATION OF THE PLAN

6.1    Plan Administrator ................................................................................. 52

6.2    Domestic Operating Company Creditor Representative.................................. 54

6.3    LAMCO ................................................................................................... 56

6.4    Debtor Allocation Agreement................................................................... 56

6.5    Redistribution of Subordinated Claims Recoveries ........................................ 57

6.6    Closing of Chapter 11 Case .................................................................... 57

6.7    Affiliate Claims Against a Debtor ............................................................ 57

6.8    LBHI Structured Securities Claims .......................................................... 58

6.9    Indenture Trustee and Creditors' Committee Members Fees ............................ 58

## ARTICLE VII
## CORPORATE GOVERNANCE

7.1    Corporate Form....................................................................................... 58

7.2    LBHI Board of Directors and Officers .................................................... 58

7.3    Subsidiary Debtor Post-Effective Date Management ........................................ 59

7.4    Plan Trust ............................................................................................... 60

7.5    Corporate Existence ................................................................................ 61

7.6    Wind-Down.............................................................................................. 61

7.7    Certificate of Incorporation and By-Laws ............................................... 61

7.8    Stock Trading Restrictions....................................................................... 61

## ARTICLE VIII
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

8.1    Reserved................................................................................................. 61

8.2    Nonconsensual Confirmation................................................................... 62

8.3    Distributions of Available Cash............................................................... 62

# TABLE OF CONTENTS
(continued)

**Page**

8.4     Disputed Claims Reserve ................................................................... 62

8.5     Minimum Distribution and Manner of Payment.................................. 63

8.6     Distributions Free and Clear .............................................................. 63

8.7     Delivery of Distributions and Undeliverable Distributions ................ 63

8.8     Withholding and Reporting Requirements .......................................... 64

8.9     Time Bar to Cash Payment Rights....................................................... 64

8.10    Setoffs and Recoupment ..................................................................... 64

8.11    Claims Register to Remain Open......................................................... 65

8.12    Allocation of Distributions ................................................................. 65

8.13    Maximum Distribution......................................................................... 65

## ARTICLE IX
## PROCEDURES FOR TREATING DISPUTED CLAIMS

9.1     Objections ........................................................................................... 66

9.2     No Distributions Pending Allowance ................................................. 66

9.3     Reserved.............................................................................................. 66

9.4     Resolution of Disputed Claims ........................................................... 66

9.5     Interest................................................................................................. 66

## ARTICLE X
## LIQUIDATING TRUST

10.1    Execution of Liquidating Trust Agreement ........................................ 66

10.2    Purpose of the Liquidating Trust ........................................................ 67

10.3    Liquidating Trust Assets ..................................................................... 67

10.4    Administration of the Liquidating Trust ............................................. 67

10.5    Liquidating Trustee's Tax Power for Debtors .................................... 67

10.6    Cash Investments ................................................................................ 67

10.7    Distribution of Liquidating Trust Interests ........................................ 68

10.8    Federal Income Tax Treatment of Liquidating Trust ......................... 68

10.9    Tax Reporting ..................................................................................... 68

10.10   Dissolution .......................................................................................... 69

10.11   Financial Reporting............................................................................. 70

# TABLE OF CONTENTS
(continued)

**Page**

## ARTICLE XI
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    Executory Contracts and Unexpired Leases ........................................................ 70

11.2    Approval of Assumption and Rejection of Executory Contracts and
Unexpired Leases ................................................................................................ 71

11.3    Cure of Defaults ................................................................................................. 71

11.4    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
Unexpired Leases Rejected Pursuant to the Plan ................................................ 71

11.5    Insurance Policies .............................................................................................. 71

11.6    Indemnification Obligations ............................................................................... 71

## ARTICLE XII
EFFECTIVENESS OF THE PLAN

12.1    Conditions Precedent to the Effective Date of the Plan ...................................... 72

12.2    Waiver of Conditions ......................................................................................... 72

## ARTICLE XIII
EFFECTS OF CONFIRMATION

13.1    Vesting of Assets ............................................................................................... 72

13.2    Binding Effect ................................................................................................... 73

13.3    Release and Exculpation .................................................................................... 73

13.4    Discharge .......................................................................................................... 73

13.5    Injunction .......................................................................................................... 73

13.6    United States Government ................................................................................... 74

13.7    Terms of Injunctions or Stays ............................................................................ 74

13.8    Retention of Litigation Claims and Reservation of Rights ................................. 74

## ARTICLE XIV
RETENTION OF JURISDICTION

14.1    Retention of Jurisdiction .................................................................................... 75

## ARTICLE XV
MISCELLANEOUS PROVISIONS

15.1    Post-Effective Date Role of Creditors' Committee ............................................ 76

15.2    Issuance of New Securities ................................................................................ 76

15.3    Exemption from Securities Laws ........................................................................ 77

# TABLE OF CONTENTS
(continued)

**Page**

15.4    Exemption from Transfer Taxes ......................................................................... 77

15.5    Plan Supplement ............................................................................................... 77

15.6    Amendment or Modification of Plan ................................................................. 77

15.7    Withdrawal or Revocation of the Plan .............................................................. 78

15.8    Courts of Competent Jurisdiction ..................................................................... 78

15.9    Transactions on Business Days.......................................................................... 78

15.10   Notices .............................................................................................................. 78

15.11   Severability ....................................................................................................... 79

15.12   Governing Law .................................................................................................. 79

15.13   Headings ............................................................................................................ 79

15.14   Exhibits ............................................................................................................. 79

15.15   Successors and Assigns...................................................................................... 80

## PLAN EXHIBITS

Exhibit A        Structured Securities Valuation Methodologies

*This document is not and shall not be deemed to be a solicitation for consent to any plan of reorganization or liquidation in contravention of applicable non-bankruptcy law or the Bankruptcy Code.  Among other conditions, this proposal contained in this draft is expressly conditioned upon the receipt of a disclosure statement that is approved by the Bankruptcy Court, after notice and a hearing, as containing adequate information as required by section 1125 of the Bankruptcy Code.*

# ARTICLE I
## Definitions and Construction of Terms

<u>Definitions</u>. As used in the Plan, the following terms shall have the respective meanings specified below:

1.1     <u>Additional Creditor Representative</u> means a person or entity appointed pursuant to Section 6.2(a)(ii) of the Plan.

1.2     <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business from and after the Commencement Date, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code, all fees and expenses of the Plan Proponents in connection with the preparation, solicitation, and implementation of this Plan, and any fees and charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.3     <u>Affected Plan Proponents</u> means any Plan Proponents solely in their capacities as holders of Claims against a Designated Entity whose rights, obligations, treatment or recoveries would be adversely affected in a disproportionate manner (in comparison to other Plan Proponents' rights, obligations, treatment or recovery) by a proposed amendment of, supplement to, waiver or other action under the Plan.

1.4     <u>Affiliate</u> shall have the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

1.5     <u>Affiliate Guarantee Claim</u> means any Guarantee Claim asserted by an Affiliate of LBHI other than a Senior Affiliate Guarantee Claim.

1.6     <u>Allowed</u> means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed hereunder, (c) any Claim that is not Disputed, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order or under <u>Section 9.4</u> of the Plan, or (e) any Claim that, if Disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed

1

Claims" hereunder; *provided*, *further*, *however*, that subject to Section 6.7 and 9.1 of the Plan, except as otherwise provided by a Final Order, a Guarantee Claim (other than a LBHI Structured Securities Claim) shall only be Allowed in an amount that is equal to or less than the Allowed amount of the Primary Claim.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not include interest on such Administrative Expense Claim or Claim from and after the Commencement Date, provided, however, that interest on Allowed Claims against a Debtor from and after the Commencement Date shall be included in "Allowed Claims" against such Debtor that must be satisfied in full before any holder of Equity Interests in such Debtor receives any share of any remaining assets (other than retaining such Equity Interests) of such Debtor pursuant to Articles IV and V of the Plan, provided further, however, that such interest from and after the Commencement Date shall be excluded from the calculation of "Pro Rata Share" of such Allowed Claim unless and until all Allowed Claims against the applicable Debtor have been satisfied in full.  For purposes of a Foreign Proceeding, an Allowed Claim includes a Claim that has been accepted or allowed in a Foreign Proceeding by settlement with a Foreign Administrator or Final Order.

1.7     Asserted Claim Amount shall have the meaning given to such term in Section 8.4(a) of the Plan.

1.8     Available Cash means (a) all Cash of a Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on its invested funds, recoveries from Litigation Claims or from any other source or otherwise less (b) the amount of Cash estimated and reserved by such Debtor to (i) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to such Debtor on and after the Effective Date and (ii) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code.  For the avoidance of doubt, Available Cash shall include the applicable portions of (i) excess amounts that become available in accordance with Section 8.4, (ii) amounts represented by undeliverable Distributions in accordance with Section 8.7, and/or (iii) amounts attributable to voided checks in accordance with Section 8.9.

1.9     Avoidance Actions means any actions commenced or that may be commenced before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.10     Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.11     Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.12     Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

1.13     Bar Date Order means the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim,*

*Approving the Form and Manner of Notice thereof and Approving the Proof of Claim Form* approved and entered by the Bankruptcy Court on July 2, 2009 [Docket No. 4271], as the same may be amended from time to time.

1.14    <u>BNC</u> means BNC Mortgage LLC.

1.15    <u>Business Day</u> means any day other than a Saturday, a Sunday, and any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.16    <u>Cash</u> means legal tender of the United States of America.

1.17    <u>Causes of Action</u> means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.

1.18    <u>CES</u> means CES Aviation LLC.

1.19    <u>CES V</u> means CES Aviation V LLC.

1.20    <u>CES IX</u> means CES Aviation IX LLC.

1.21    <u>Chapter 11 Cases</u> means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently pending before the Bankruptcy Court, styled *In re Lehman Brothers Holdings Inc.*, *et al.*, Chapter 11 Case No. 08-13555 (JMP).

1.22    <u>Claim</u> shall have the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

1.23    <u>Class</u> means a category of holders of Claims or Equity Interests as set forth in <u>Article III</u> of the Plan.

1.24    <u>Class 10A Subordinated Notes</u> means, collectively, (a) the Floating Rate Junior Subordinated Deferrable Interest Debentures due 2035 issued pursuant to the Eighth Supplemental Indenture, dated as of August 19, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (b) the Fixed/Floating Rate Subordinated Notes due 2016 Series 5065, issued pursuant to a final term sheet dated as of September 26, 2006 under the Euro Medium-Term Note Program; (c) the Floating Rate Subordinated Notes due 2037 Series EB17, issued pursuant to a final term sheet dated as of January 23, 2007 under the Euro Medium-Term Note Program; (d) the Fixed/Floating Rate Subordinated Notes due 2019 Series 6222, issued pursuant to the final term sheet dated as of February 14, 2007 under the Euro Medium-Term Note Program; and (e) the Floating Rate Subordinated Notes due 2037 Series EB 18, issued pursuant to a final term sheet, dated as of May 30, 2007, under the Euro Medium-Term Note Program.

1.25    Class 10B Subordinated Notes means, collectively, (a) the 6.375% Subordinated Deferrable Interest Debentures due 2052, issued pursuant to the Fourth Supplemental Indenture, dated as of March 17, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (b) the 6.375% Subordinated Deferrable Interest Debentures due October 2052, issued pursuant to the Fifth Supplemental Indenture, dated as of October 31, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (c) the 6.00% Subordinated Deferrable Interest Debentures due 2053, issued pursuant to the Sixth Supplemental Indenture, dated as of April 22, 2004, between LBHI and JPMorgan Chase Bank, as trustee; (d) the 6.24% Subordinated Deferrable Interest Debentures due 2054, issued pursuant to the Seventh Supplemental Indenture, dated as of January 18, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (e) the 5.75% Subordinated Notes due 2017, issued pursuant to the Ninth Supplemental Indenture, dated as of October 24, 2006, between LBHI and JPMorgan Chase Bank, as trustee; (f) the Fixed and Floating Rate Subordinated Notes Due 2032, issued pursuant to the Tenth Supplemental Indenture, dated as of May 1, 2007, between LBHI and JPMorgan Chase Bank, as trustee; (g) the 6.50% Subordinated Notes Due 2017, issued pursuant to the Thirteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (h) the 6.875% Subordinated Notes Due 2037, issued pursuant to the Fourteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (i) the 6.75% Subordinated Notes Due 2017, issued pursuant to the Fifteenth Supplemental Indenture, dated as of December 21, 2007, between LBHI and The Bank of New York, as trustee; and (j) the 7.50% Subordinated Notes Due 2038, issued pursuant to the Sixteenth Supplemental Indenture, dated as of May 9, 2008, between LBHI and The Bank of New York, as trustee.

1.26    Class 10C Subordinated Notes means, collectively, (a) the 5.707% Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Eleventh Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee; and (b) the Floating Rate Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Twelfth Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee.

1.27    Closing Date means the date upon which all of the Chapter 11 Cases have been closed in accordance with Section 6.6 of the Plan.

1.28    Collateral means any property or interest in Property of the Estates of the Debtors subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

1.29    Commencement Date means (a) September 15, 2008 with respect to LBHI, (b) September 16, 2008 with respect to LB 745, (c) September 23, 2008 with respect to PAMI Statler, (d) October 3, 2008 with respect to LBCS, LBSF and LOTC, (d) October 5, 2008 with respect to LBDP, LCPI, LBCC, LBFP, CES, CES V, CES IX, East Dover and LS Finance, (e) January 7, 2009 with respect to LUXCO, (f) January 9, 2009 with respect to BNC, (g) February 9, 2009 with respect to SASCO and LB Rose Ranch, and (h) April 23, 2009 with respect to LB 2080.

1.30    Confirmation Date means the date upon which the Bankruptcy Court enters a Confirmation Order on the docket of the Chapter 11 Cases as applicable to each Debtor.

1.31    Confirmation Hearing means the hearing held by the Bankruptcy Court, as the same may be continued from time to time, to consider confirmation of the Plan.

1.32    Confirmation Order means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code as applicable to each Debtor.

1.33    Creditor shall have the meaning assigned to such term in section 101(10) of the Bankruptcy Code.

1.34    Creditor Representative Conflict shall have the meaning given to such term in Section 6.2(a)(ii) of the Plan.

1.35    Creditors' Committee means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.36    Cross-Border Protocol means that certain Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies dated as of May 12, 2009 approved by the Bankruptcy Court by order dated June 17, 2009 (Docket No. 4020), as it may be amended, modified or supplemented from time to time.

1.37    Cross-Border Protocol Party means a Non-Controlled Affiliate party to the Cross-Border Protocol, and any Affiliate controlled or managed by any such Non-Controlled Affiliate.

1.38    Cross-Border Settlement Guidelines means, with respect to any Cross-Border Protocol Party, settlement guidelines agreed to or accepted by such party.

1.39    Debtor means each of BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LB Rose Ranch, LBCC, LBCS, LBDP, LBFP, LBHI, LBSF, LCPI, LOTC, LS Finance, LUXCO, PAMI Statler, and SASCO, each in its individual capacity as debtor and debtor in possession in its Chapter 11 Case pursuant to sections 101(13), 1107(a) and 1108 of the Bankruptcy Code.

1.40    Debtor Allocation Agreement means the agreement among two or more of the Debtors that identifies, allocates and sets forth other agreed rights and obligations with respect to (a) the costs and benefits of Jointly Owned Litigation Claims, (b) commonly held tax benefits and obligations, (c) expenses of administration of the Chapter 11 Cases, and (d) certain other inter-Debtor related issues.

1.41    Debtor-Controlled Entity means a non-Debtor Affiliate of the Debtors that is managed and controlled by a Debtor as of the Effective Date.

1.42    Derivative Claim means a Claim asserted by a third-party that is not an Affiliate of the Debtors arising out of the termination or rejection of a Derivative Contract with a Debtor but excluding a Derivative Guarantee Claim.

5

1.43    <u>Derivative Contract</u> means any contract that is (a) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (b) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code; *provided*, *however*, that a cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of "swap agreement" or "forward contract" pursuant to the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition; *provided*, *further*, that any notes, bonds, or other securities issued by the Debtors or their Affiliates (including, without limitation, LBT, LBB, Lehman Brothers Holdings plc, LBSN and LB Lux) shall not be considered "Derivative Contracts."

1.44    <u>Derivative Guarantee Claim</u> means any Guarantee Claim asserted by a third-party that is not an Affiliate of LBHI with respect to a Derivative Contract.

1.45    <u>Derivative Questionnaire</u> shall have the meaning assigned to such term in the Bar Date Order.

1.46    <u>Designated Entity</u> means each Domestic Operating Company, LBHI, LBIE, or LBT.

1.47    <u>Director Selection Committee</u> means the committee established pursuant to <u>Section 7.2(b)</u> of the Plan, the members of which shall be identified in the Plan Supplement.

1.48    <u>Disclosure Statement</u> means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as it may be amended, modified, or supplemented from time to time by the Requisite Plan Proponents.

1.49    <u>Disputed</u> means, with reference to any Claim, (a) the portion of the Claim, proof of which was timely and properly filed, that (i) is disputed under the Plan, including without limitation, any Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim or Affiliate Guarantee Claim that is not Allowed in accordance with Section 6.7 of the Plan or (ii) as to which the Debtors have interposed a timely objection, which objection has not been withdrawn or determined by a Final Order, or (b) the portion of a Claim, proof of which was required to be filed by the Bar Date Order or another Final Order in a form and manner proscribed in such order, but as to which a proof of Claim was not timely or properly filed.

1.50    <u>Distribution</u> means any initial or subsequent payment or transfer made under the Plan.

1.51    <u>Distribution Date</u> means any date on which a Distribution is made upon at least fourteen (14) Business Days written notice filed on the docket of the Chapter 11 Cases or otherwise communicated to holders of Allowed Claims.

1.52    <u>Distribution Holdback</u> shall have the meaning given to such term in <u>Section 8.9</u> of the Plan.

1.53    Domestic Operating Company means each of LCPI, LBCS, LBSF, LOTC, and LBCC.

1.54    Domestic Operating Company Creditor Representative means the Primary Creditor Representative and, solely with respect to each Creditor Representative Conflict, if any, the Additional Creditor Representative appointed with respect to such Creditor Representative Conflict.

1.55    East Dover means East Dover Limited.

1.56    Effective Date means the first Business Day on which the conditions to effectiveness of the Plan set forth in Article XII have been satisfied or waived and on which the Plan shall become effective with respect to a Debtor.

1.57    Equity Interest means (a) shares of common stock, preferred stock, other forms of ownership interest, or any interest or right to convert into such an equity or ownership interest or to acquire any equity or ownership interest or any interest or right for which the amount owing is determined by reference to an equity or ownership interest, including, without limitation, vested and/or unvested restricted stock units, contingent stock awards, contingent equity awards, performance stock units, and stock options or restricted stock awards granted under management ownership plans, the LBHI 2005 stock incentive plan or the LBHI employee incentive plan, in any Debtor that was in existence immediately prior to or on the Commencement Date for such Debtor, and (b) Allowed Claims against LBHI arising out of, relating to, or in connection with any of the foregoing, that are described in section 510(b) of the Bankruptcy Code.

1.58    Estimated Claim means the amount of a Claim estimated by the Bankruptcy Court, to the extent permitted by section 502(c) of the Bankruptcy Code, in one or more Final Orders to become an Allowed Claim.

1.59    Excluded Debtor means each of Merit, Preferred Somerset, and Somerset.

1.60    Excess Amount shall have the meaning given to such term in Section 8.2(b) of the Plan.

1.61    Filing Debtor means each of BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LB Rose Ranch, LBCC, LBCS, LBDP, LBFP, LBHI, LBSF, LCPI, LOTC, LS Finance, LUXCO, Merit, PAMI Statler, Preferred Somerset, SASCO and Somerset, each in its individual capacity as debtor and debtor in possession in its Chapter 11 Case pursuant to sections 101(13), 1107(a) and 1108 of the Bankruptcy Code.

1.62    Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance reasonably satisfactory to the Debtors or, with respect to any orders relating to the matters set forth in Section 6.2 of the Plan, the Domestic Operating Company Creditor Representative, as applicable, or in the event that an appeal, writ of certiorari, or reargument or rehearing thereof

has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.63    <u>Foreign Administrator</u> means each of the persons or entities that is managing the affairs and representing the insolvency estate of a Non-Controlled Affiliate that is subject to a Foreign Proceeding.

1.64    <u>Foreign Proceeding</u> means an insolvency, administration, liquidation, rehabilitation, receivership or like proceeding commenced by or initiated against an Affiliate of a Debtor in a jurisdiction outside of the United States.

1.65    <u>General Unsecured Claim</u> means, (a) in the case of LBHI, any Claim against LBHI other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee Claim, a Senior Third-Party Guarantee Claim, a Senior Third-Party LBT/LBSN Guarantee Claim, a Derivative Claim, an Intercompany Claim, an Affiliate Guarantee Claim, a Derivative Guarantee Claim, a Subordinated Claim or a Section 510(b) Claim, or (b) in the case of each Subsidiary Debtor, any Claim against such Subsidiary Debtor other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, an Intercompany Claim or a Derivative Claim.

1.66    <u>Governmental Unit</u> shall have the meaning assigned to such term in section 101(27) of the Bankruptcy Code.

1.67    <u>Guarantee Claim</u> means a Claim asserted against LBHI on the basis of a guarantee, promise or pledge by LBHI to satisfy an obligation or liability of another entity.

1.68    <u>Guarantee Questionnaire</u> shall have the meaning assigned to such term in the Bar Date Order.

1.69    <u>Independent Directors</u> means Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Jerry A. Grundhofer, Roland A. Hernandez, Henry Kaufman and John D. Macomber.

1.70    <u>Intercompany Claim</u> means (a) in the case of LBHI, any Claim against LBHI asserted by an Affiliate of LBHI other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee Claim, or an Affiliate Guarantee Claim or (b) in the case of a Subsidiary Debtor, any Claim against such Subsidiary Debtor asserted by an Affiliate of a Subsidiary Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim, or a Secured Claim.

1.71    <u>IRS</u> means the Internal Revenue Service.

1.72     Jointly Owned Litigation Claims means any Litigation Claims that may be, are or are asserted to be owned, either jointly or individually, by one or more of the Debtors.

1.73     LAMCO means LAMCO Holdings LLC and its subsidiary Affiliates.

1.74     LB 745 means LB 745 LLC.

1.75     LB 2080 means LB 2080 Kalakaua Owners LLC.

1.76     LBB means Lehman Brothers Bankhaus AG (in Insolvenz).

1.77     LBCC means Lehman Brothers Commercial Corporation.

1.78     LBCS means Lehman Brothers Commodities Services Inc.

1.79     LBDP means Lehman Brothers Derivative Products Inc.

1.80     LBF means Lehman Brothers Finance S.A.

1.81     LBFP means Lehman Brothers Financial Products Inc.

1.82     LBHI means Lehman Brothers Holdings Inc.

1.83     LBHI Stock means the common or preferred stock of LBHI outstanding on the Effective Date.

1.84     LBHI Structured Securities Claims means any Claim against LBHI (including a Guarantee Claim) that is based on a Structured Security.

1.85     LBI means Lehman Brothers Inc.

1.86     LBIE means Lehman Brothers International (Europe).

1.87     LB Lux means Lehman Brothers (Luxembourg) Equity Finance S.A.

1.88     LB Rose Ranch means LB Rose Ranch LLC.

1.89     LBSF means Lehman Brothers Special Financing Inc.

1.90     LBSN means Lehman Brothers Securities N.V.

1.91     LBT means Lehman Brothers Treasury Co. B.V.

1.92     LCPI means Lehman Commercial Paper Inc.

1.93     Lehman means LBHI together with all of its direct and indirect Affiliates existing on or after the LBHI Commencement Date.

1.94     Lehman ALI means Lehman ALI Inc.

1.95    Lien shall have the meaning assigned to such term in section 101(37) of the Bankruptcy Code.

1.96    Liquidating Trust means a trust that may be created after the Effective Date in accordance with the provisions of Article X of the Plan.

1.97    Liquidating Trust Agreement means an agreement evidencing the terms and provisions governing a Liquidating Trust that shall be entered into prior to the establishment of such Liquidating Trust and pursuant to which a Liquidating Trustee shall manage and administer Liquidating Trust Assets.

1.98    Liquidating Trust Assets means the assets of a Debtor or Debtor-Controlled Entity to be transferred to a Liquidating Trust as may be determined by the Plan Administrator, or with respect to a Domestic Operating Company, by the Domestic Operating Company Creditor Representative, which shall be described in a Liquidating Trust Agreement in respect of such Debtor.

1.99    Liquidating Trust Beneficiaries means those holders of Allowed Claims against, or Equity Interests in, a Debtor to the extent such holders receive Liquidating Trust Interests.

1.100    Liquidating Trustee means the person or entity appointed by the Plan Administrator, or with respect to a Domestic Operating Company, the Domestic Operating Company Creditor Representative, prior to the creation of a Liquidating Trust to administer such Liquidating Trust in accordance with the provisions of Article X of the Plan and a Liquidating Trust Agreement; *provided*, *however*, that under no circumstance shall a Liquidating Trustee be a director or officer with respect to any entity over which the Liquidating Trust has control.

1.101    Liquidating Trust Interests means the non-certificated beneficial interests of a Liquidating Trust allocable to holders of Allowed Claims and/or Equity Interests in accordance with the terms and conditions of a Liquidating Trust Agreement, which may or may not be transferable.

1.102    Litigation Claims means any and all Causes of Action held by a Debtor.

1.103    LOTC means Lehman Brothers OTC Derivatives Inc.

1.104    LS Finance means Lehman Scottish Finance L.P.

1.105    LUXCO means Luxembourg Residential Properties Loan Finance S.a.r.l.

1.106    Merit means Merit, LLC.

1.107    New Securities means the securities that may be distributed by a Debtor or Debtor-Controlled Entity after the Effective Date to the holders of Allowed Claims against or Equity Interests in such Debtor representing an interest in an existing or newly formed entity of a Debtor or Debtor-Controlled Entity pursuant to and in a manner consistent with Section 15.2 of the Plan.

1.108   Non-Controlled Affiliate means an Affiliate of the Debtors that is not currently managed and controlled by a Debtor as of the Effective Date, including, without limitation, all Affiliates that are subject to a Foreign Proceeding and LBI.

1.109   Ordinary Course Professional Order means the *Amended Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business*, approved and entered by the Bankruptcy Court on March 25, 2010 [Docket No. 7822], as the same may be amended from time to time.

1.110   PAMI Statler means PAMI Statler Arms LLC.

1.111   Plan means this joint plan, and all exhibits, supplements, appendices, and schedules hereto, including, without limitation, the Plan Supplement, as each of the foregoing may be altered, amended, modified, or supplemented from time to time.

1.112   Plan Administrator means LBHI pursuant to the authority granted in Section 6.1 of the Plan.

1.113   Plan Proponent means each of the entities identified on Schedule A to the Plan, as amended from time to time to reflect any additions thereto or withdrawals therefrom.

1.114   Plan Supplement means the document containing the forms of documents and other information specified in Section 15.5 of the Plan.

1.115   Plan Trust means the trust established under New York law to hold the Plan Trust Stock on and after the Effective Date.

1.116   Plan Trust Agreement means the agreement creating and setting forth the terms and conditions that shall govern the Plan Trust.

1.117   Plan Trust Stock means one new share of LBHI common stock to be issued to the Plan Trust upon cancellation of the LBHI Stock in accordance with Section 4.17(b) of the Plan.

1.118   Plan Trustee means any of the persons acting as trustee of the Plan Trust pursuant to Section 7.4 of the Plan.

1.119   Preferred Somerset means LB Preferred Somerset LLC.

1.120   Primary Affected Plan Proponent means, with respect to a Designated Entity, each Affected Plan Proponent of such Designated Entity, (a) solely to the extent that such Designated Entity is the Designated Entity in which such Plan Proponent has the largest economic interest (based upon the amount of Claims asserted by such Plan Proponent in a proof of claim, multiplied by the then-current market price, as calculated by The Blackstone Group), and (b) the foregoing clause (a) shall not apply with respect to a Designated Entity if such application would result in there being no "Primary Affected Plan Proponents" against such Designated Entity.

1.121  <u>Primary Claim</u> means a Claim against a Primary Obligor for which a corresponding Guarantee Claim has been asserted.

1.122  <u>Primary Creditor Representative</u> means a person or entity, to be identified in the Plan Supplement, nominated by the Requisite Plan Proponents and appointed pursuant to the Confirmation Order and <u>Section 6.2(a)(i)</u> of the Plan .

1.123  <u>Primary Obligor</u> means an entity other than LBHI that is purportedly obligated or liable on a Claim with respect to which a Guarantee Claim has been asserted.

1.124  <u>Priority Non-Tax Claim</u> means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.125  <u>Priority Tax Claim</u> means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.126  <u>Property of the Estate</u> means all property of a Debtor pursuant to section 541 of the Bankruptcy Code.

1.127  <u>Pro Rata Share</u> means with respect to an Allowed Claim or Equity Interest (a) within the same Class, the proportion that an Allowed Claim or Equity Interest bears to the sum of all Allowed Claims and Disputed Claims or Allowed Equity Interests and Disputed Equity Interests within such Class, or (b) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims; *provided*, *however*, that Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims shall not be considered for purposes of "Pro Rata Share"; *provided*, *further*, *however*, that with respect to the following Distributions, only Allowed Claims in the following Classes of Claims shall be considered in the determination of "Pro Rata Share":

(i)  Available Cash in the case of LBHI: Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, Senior Third-Party LBT/LBSN Guarantee Claims, Derivative Claims, General Unsecured Claims, Intercompany Claims, Affiliate Guarantee Claims, Derivative Guarantee Claims, and Subordinated Claims.

(ii)  Available Cash in the case of a Subsidiary Debtor: General Unsecured Claims, Intercompany Claims, and Derivative Claims.

(iii)  Subordinated Class 10A Distribution: Senior Unsecured Claims and Senior Intercompany Claims.

(iv)  Subordinated Class 10B Distribution: Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims and Senior Third-Party LBT/LBSN Guarantee Claims.

(v)  Subordinated Class 10C Distribution: Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee

Claims, Senior Third-Party LBT/ LBSN Guarantee Claims, Subordinated Class 10A Claims and Subordinated Class 10B Claims.

For the avoidance of doubt, interest on Claims against a Debtor from and after the Commencement Date shall not be considered for purposes of "Pro Rata Share" unless and until such interest is required to be paid under this Plan.

1.128   <u>Released Parties</u> means, collectively, and in each case, solely in such capacity, the Debtors, each current and former Plan Proponent, the Independent Directors, the Plan Administrator, the Domestic Operating Company Creditor Representative, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases.

1.129   <u>Remaining Disputed Claim</u> means, at any date of determination, a Disputed Claim which has not been compromised or settled or otherwise determined by Final Order as of such date.

1.130   <u>Requisite Affected Plan Proponents</u> means, at any date of determination, with respect to a Designated Entity, (a) a majority in number of the Affected Plan Proponents of such Designated Entity, and (b) in addition to the foregoing, Affected Plan Proponents holding at least two-thirds of the amount of Claims asserted against such Designated Entity by all Affected Plan Proponents in proofs of claim.

1.131   <u>Requisite Plan Proponents</u> means, at any date of determination, (a) a majority in number of the Plan Proponents and in addition to the foregoing, (b) the Requisite Affected Plan Proponents, if applicable, and (c) the Requisite Primary Affected Plan Proponents, if applicable.

1.132   <u>Requisite Primary Affected Plan Proponents</u> means, at any date of determination, with respect to a Designated Entity, (a) a majority in number of the Primary Affected Plan Proponents of such Designated Entity, and (b) in addition to the foregoing, Primary Affected Plan Proponents holding at least two-thirds of the amount of Claims asserted against such Designated Entity by all Primary Affected Plan Proponents in proofs of claim.

1.133   <u>Reserve Agent</u> means, with respect to a Domestic Operating Company, the Domestic Operating Company Creditor Representative, and with respect to any other Debtor, such Debtor.

1.134   <u>Reserved Claim Amount</u> shall have the meaning assigned to such term in <u>Section 8.4(a)</u> of the Plan.

1.135   <u>Reserved Distribution Amount</u> shall have the meaning assigned to such term in <u>Section 8.4(a)</u> of the Plan.

1.136   <u>SASCO</u> means Structured Asset Securities Corporation.

1.137  <u>Schedules</u> means the schedules of assets and liabilities, schedules of current income and current expenditures and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

1.138  <u>Secured Claim</u> means any Claim (a) to the extent reflected in the Schedules or upon a proof of Claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.139  <u>Section 510(b) Claim</u> means any Claim against LBHI that is described in section 510(b) of the Bankruptcy Code, other than any Claim arising out of, relating to, or in connection with the Equity Interests in LBHI.

1.140  <u>Senior Affiliate Guarantee Claim</u> means any Guarantee Claim asserted by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes).  For the avoidance of doubt, any Guarantee Claim asserted by LBT or LBSN shall be classified as a Senior Affiliate Guarantee Claim under this Plan.

1.141  <u>Senior Intercompany Claim</u> means any Claim asserted by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes), other than a Senior Affiliate Guarantee Claim.  For the avoidance of doubt, any Claim asserted by LBT or LBSN, other than a Senior Affiliate Guarantee Claim, shall be classified as a Senior Intercompany Claim under this Plan.

1.142  <u>Senior Notes</u> means, collectively, the various notes issued by LBHI as to which Wilmington Trust Co. serves as indenture trustee.

1.143  <u>Senior Third-Party Guarantee Claim</u> means any Guarantee Claim asserted by a third-party that is not an Affiliate of LBHI that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes), other than a Senior Third-Party LBT/LBSN Guarantee Claim.

1.144  <u>Senior Third-Party LBT/LBSN Guarantee Claim</u> means any Guarantee Claim on account of an underlying obligation or liability of LBT or LBSN that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes).

1.145  <u>Senior Unsecured Claim</u> means any Claim against LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C

14

Subordinated Notes), other than a Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Senior Third-Party Guarantee Claim, Senior Third-Party LBT/LBSN Guarantee Claim and any Claim of LBT or LBSN.

1.146   Shortfall Amount shall have the meaning given to such term in Section 8.2(b) of the Plan.

1.147   Somerset means LB Somerset LLC.

1.148   Stock Trading Restrictions Order means the *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto* [Docket No. 1386], as the same may be amended from time to time.

1.149   Structured Securities means (i) structured notes issued by LBT, (ii) certificates and warrants issued by LBSN, (iii) structured notes issued by LBHI, (iv) structured notes issued by LBB, (v) structured securities issued by LB Lux, and (vi) certificates issued by LBF.

1.150   Structured Securities Estimated Maximum Allowable Claims Summary means the summary of proposed valuations for certain Structured Securities that will be set forth in the Plan Supplement, as it may be supplemented or amended.

1.151   Structured Securities Valuation Methodologies means the methodologies described in Exhibit A to the Plan, as it may hereafter be supplemented or amended.

1.152   Subordinated Class 10A Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 10A Claims but for the reallocation of such Distribution pursuant to Section 6.5 of the Plan.

1.153   Subordinated Class 10B Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 10B Claims but for the reallocation of such Distribution pursuant to Section 6.5 of the Plan.

1.154   Subordinated Class 10C Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 10C Claims but for the reallocation of such Distribution pursuant to Section 6.5 of the Plan.

1.155   Subordinated Claim means any Subordinated Class 10A Claim, Subordinated Class 10B Claim or Subordinated Class 10C Claim.

1.156   Subordinated Class 10A Claim means any Claim against LBHI arising under the Class 10A Subordinated Notes.

1.157   Subordinated Class 10B Claim means any Claim against LBHI arising under the Class 10B Subordinated Notes.

1.158   Subordinated Class 10C Claim means any Claim against LBHI arising under the Class 1 0C Subordinated Notes.

1.159    <u>Subordinated Notes</u> means, collectively, the Class 10A Subordinated Notes, Class 10B Subordinated Notes and Class 10C Subordinated Notes.

1.160    <u>Subsidiary Debtor</u> means each of the Debtors other than LBHI.

1.161    <u>Voting Deadline</u> means the date fixed by an order of the Bankruptcy Court as the last day upon which holders of Claims may vote to accept or reject the Plan.

<u>Rules of Construction</u>.    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.    Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.    The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.    The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II
## Treatment of Administrative
## <u>Expense Claims and Priority Tax Claims</u>

2.1    <u>Administrative Expense Claims</u>.    Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.    Notwithstanding anything to the contrary herein, all fees and expenses incurred by a Plan Proponent in connection with the preparation, solicitation, and confirmation of the Plan, as well as the implementation, after confirmation, of the Plan, including without limitation any fees and expenses of any financial or legal advisor retained by a Plan Proponent in connection therewith, shall be paid as Administrative Expense Claims no later than three (3) Business Days following presentation to the Debtors of a reasonably detailed invoice indicating the nature of the services rendered; provided, however, that any such fees and expenses incurred prior to the Effective Date by a Plan Proponent in excess of $500,000.00, in the aggregate, shall be subject to the fee application procedures described in <u>Section 2.2</u> of this Plan.

2.2    <u>Professional Compensation and Reimbursement Claims</u>.    Other than a professional retained by the Debtors pursuant to the Ordinary Course Professional Order, any

entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtors and the Creditors' Committee through and including the Effective Date under section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim.   The Debtors are authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtors and the Creditors' Committee after the Effective Date in the ordinary course and without Bankruptcy Court approval.  The Domestic Operating Company Creditor Representative, and the attorneys and professionals retained by the Domestic Operating Company Creditor Representative shall be compensated in the manner to be set forth in the Plan Supplement.  All fees and expenses incurred in the ordinary course of business by the Domestic Operating Company Creditor Representative or the professionals retained by the Domestic Operating Company Creditor Representative may be paid by Debtors without court approval.

2.3    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive from one or more of the Debtors obligated for the payment of such Allowed Priority Tax Claim, and at the sole option of such Debtor(s), (i) Cash in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (ii) equal Cash payments to be made initially on the Effective Date or as soon thereafter as practicable and semi-annually thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate determined under applicable non-bankruptcy law, over a period from the Effective Date through the fifth (5th) anniversary after the Commencement Date; *provided*, *however*, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

## ARTICLE III
## Classification Of Claims And Equity Interests

Claims against the Debtors, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

3.1    LBHI

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 3 | Senior Unsecured Claims | Impaired | Yes |
| 4A | Senior Intercompany Claims | Impaired | Yes |
| 4B | Senior Affiliate Guarantee Claims | Impaired | Yes |
| 5A | Senior Third-Party Guarantee Claims | Impaired | Yes |
| 5B | Senior Third-Party LBT/LBSN Guarantee Claims | Impaired | Yes |
| 6 | Derivative Claims | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8A | Intercompany Claims | Impaired | Yes |
| 8B | Affiliate Guarantee Claims | Impaired | Yes |
| 9 | Derivative Guarantee Claims | Impaired | Yes |
| 10A | Subordinated Class 10A Claims | Impaired | Yes (but deemed to reject) |
| 10B | Subordinated Class 10B Claims | Impaired | Yes (but deemed to reject) |
| 10C | Subordinated Class 10C Claims | Impaired | Yes (but deemed to reject) |
| 11 | Section 510(b) Claims | Impaired | Yes (but deemed to reject) |
| 12 | Equity Interests | Impaired | Yes (but deemed to reject) |

    3.2    <u>LCPI</u>

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

    3.3    <u>LBCS</u>

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |

| | | | |
|---|---|---|---|
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.4    LBSF

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.5    LOTC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.6    LBCC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.7    LBDP

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.8    LBFP

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.9    LB 745

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.10    PAMI Statler

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |

| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.11    CES

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.12    CES V

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.13    CES IX

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.14    East Dover

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |

| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.15    LS Finance

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.16    LUXCO

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.17    BNC

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.18    LB Rose Ranch

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.19    SASCO

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.20    LB 2080

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

## ARTICLE IV

## Treatment of Claims Against and Equity Interests in LBHI

4.1    LBHI Class 1 – Priority Non-Tax Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBHI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBHI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBHI Class 1 shall be paid by LBHI in Cash in full.

4.2    LBHI Class 2 – Secured Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBHI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBHI Class 2 shall be satisfied by, at the option of LBHI: (i) payment in Cash by LBHI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is

23

practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBHI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

4.3    <u>LBHI Class 3 – Senior Unsecured Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 3 shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution, and (iv) Subordinated Class 10C Distribution.

4.4    <u>LBHI Class 4A – Senior Intercompany Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 4A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4A is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 4A shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution and (iv) Subordinated Class 10C Distribution.

4.5    <u>LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 4B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.6    <u>LBHI Class 5A – Senior Third-Party Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 5A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5A is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 5A shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.7    <u>LBHI Class 5B – Senior Third-Party LBT/LBSN Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 5B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.8    <u>LBHI Class 6 – Derivative Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 6 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 6 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 6 shall receive its Pro Rata Share of Available Cash from LBHI.

4.9    <u>LBHI Class 7 – General Unsecured Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 7 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 7 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 7 shall receive its Pro Rata Share of Available Cash from LBHI.

4.10    <u>LBHI Class 8A – Intercompany Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 8A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8A is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8A shall receive its Pro Rata Share of Available Cash from LBHI.

4.11    <u>LBHI Class 8B – Affiliate Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 8B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8B shall receive its Pro Rata Share of Available Cash from LBHI.

4.12    <u>LBHI Class 9 – Derivative Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 9 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 9 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 9 shall receive its Pro Rata Share of Available Cash from LBHI.

4.13    LBHI Class 10A – Subordinated Class 10A Claims against LBHI.

(a)    Impairment and Voting. LBHI Class 10A is impaired by the Plan. Each holder of an Allowed Claim in LBHI Class 10A is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions. Holders of Allowed Claims in LBHI Class 10A shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10A shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

4.14    LBHI Class 10B – Subordinated Class 10B Claims against LBHI.

(a)    Impairment and Voting. LBHI Class 10B is impaired by the Plan. Each holder of an Allowed Claim in LBHI Class 10B is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions. Holders of Allowed Claims in LBHI Class 10B shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10B shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

4.15    LBHI Class 10C – Subordinated Class 10C Claims against LBHI.

(a)    Impairment and Voting. LBHI Class 10C is impaired by the Plan. Each holder of an Allowed Claim in LBHI Class 10C is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions. Holders of Allowed Claims in LBHI Class 10C shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10C shall receive its Pro Rata Share of Available Cash from LBHI.

4.16    LBHI Class 11 – Section 510(b) Claims against LBHI.

(a)    Impairment and Voting. LBHI Class 11 is impaired by the Plan. Each holder of an Allowed Claim in LBHI Class 11 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions. Holders of Allowed Claims in LBHI Class 11 shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims against LBHI other than Claims in LBHI Class 11 are satisfied in full, in which case

each holder of an Allowed Claim in LBHI Class 11 shall receive its Pro Rata Share of Available Cash from LBHI.

4.17    LBHI Class 12 – Equity Interests in LBHI.

(a)    Impairment and Voting.  LBHI Class 12 is impaired by the Plan.  Each holder of an Equity Interest in LBHI Class 12 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Stock Exchange.  On the Effective Date, all LBHI Stock shall be cancelled and the Plan Trust Stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative priority and economic entitlements; provided, however, that the Plan Trust may not exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan.  On or promptly after the Effective Date, the Plan Administrator shall file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of LBHI's publicly traded securities.

(c)    Distributions.  Each holder of an Equity Interest in LBHI (through their interest in the new share of LBHI common stock or otherwise) shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBHI on account of such Equity Interests; provided, however, that solely in the event that all Allowed Claims in LBHI Classes 1 through 11 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its share of any remaining assets of LBHI consistent with such holder's rights of payment existing immediately prior to the Commencement Date.  Unless otherwise determined by the Plan Administrator, on the date that LBHI's Chapter 11 Case is closed in accordance with Section 6.8 of the Plan, the Plan Trust Stock issued pursuant to subsection (b) above shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the Debtors' estates.

(d)    Non-Transferable.  The continuing rights of holders of Equity Interests (including through their interest in the Plan Trust Stock or otherwise) shall be nontransferable except by operation of law.

## ARTICLE V
## Treatment of Claims Against and Equity Interests in Subsidiary Debtors

5.1    LCPI Class 1 – Priority Non-Tax Claims against LCPI.

(a)    Impairment and Voting.  LCPI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LCPI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LCPI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LCPI Class 1 shall be paid by LCPI in Cash in full.

27

5.2     LCPI Class 2 – Secured Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 2 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LCPI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LCPI Class 2 shall be satisfied by, at the option of LCPI: (i) payment in Cash by LCPI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LCPI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.3     LCPI Class 3 – Derivative Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 3 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LCPI Class 3 shall receive its Pro Rata Share of Available Cash from LCPI.

5.4     LCPI Class 4 – General Unsecured Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 4 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LCPI Class 4 shall receive its Pro Rata Share of Available Cash from LCPI.

5.5     LCPI Class 5 – Intercompany Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 5 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LCPI Class 5 shall receive its Pro Rata Share of Available Cash from LCPI.

5.6     LCPI Class 6 – Equity Interests in LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LCPI Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LCPI shall be cancelled if and when LCPI is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LCPI shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LCPI on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LCPI have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LCPI may receive its Pro Rata Share of any remaining assets in LCPI.

5.7    LBCS Class 1 – Priority Non-Tax Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBCS Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCS on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCS Class 1 shall be paid by LBCS in Cash in full.

5.8    LBCS Class 2 – Secured Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBCS Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCS Class 2 shall be satisfied by, at the option of LBCS: (i) payment in Cash by LBCS in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCS Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.9    LBCS Class 3 – Derivative Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBCS Class 3 shall receive its Pro Rata Share of Available Cash from LBCS.

5.10    LBCS Class 4 – General Unsecured Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 4 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Each holder of an Allowed Claim in LBCS Class 4 shall receive its Pro Rata Share of Available Cash from LBCS.

5.11      LBCS Class 5 – Intercompany Claims against LBCS.

(a)      _Impairment and Voting_.  LBCS Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 5 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBCS Class 5 shall receive its Pro Rata Share of Available Cash from LBCS.

5.12      LBCS Class 6 – Equity Interests in LBCS.

(a)      _Impairment and Voting_.  LBCS Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBCS Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)      _Distributions_.  Equity Interests in LBCS shall be cancelled if and when LBCS is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LBCS shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBCS on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against LBCS have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBCS may receive its Pro Rata Share of any remaining assets in LBCS.

5.13      LBSF Class 1 – Priority Non-Tax Claims against LBSF.

(a)      _Impairment and Voting_.  LBSF Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 1 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBSF Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBSF on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBSF Class 1 shall be paid by LBSF in Cash in full.

5.14      LBSF Class 2 – Secured Claims against LBSF.

(a)      _Impairment and Voting_.  LBSF Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 2 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBSF Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBSF Class 2 shall be satisfied by, at the option of LBSF: (i) payment in Cash by LBSF in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such

30

treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBSF Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.15    <u>LBSF Class 3 – Derivative Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBSF Class 3 shall receive its Pro Rata Share of Available Cash from LBSF.

5.16    <u>LBSF Class 4 – General Unsecured Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBSF Class 4 shall receive its Pro Rata Share of Available Cash from LBSF.

5.17    <u>LBSF Class 5 – Intercompany Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 5 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBSF Class 5 shall receive its Pro Rata Share of Available Cash from LBSF.

5.18    <u>LBSF Class 6 – Equity Interests in LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBSF Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in LBSF shall be cancelled if and when LBSF is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LBSF shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBSF on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LBSF have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBSF may receive its Pro Rata Share of any remaining assets in LBSF.

5.19    <u>LOTC Class 1 – Priority Non-Tax Claims against LOTC</u>.

(a)    <u>Impairment and Voting</u>.  LOTC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 1 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Except to the extent that the holder of an Allowed Claim in LOTC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LOTC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LOTC Class 1 shall be paid by LOTC in Cash in full.

5.20    LOTC Class 2 – Secured Claims against LOTC.

(a)      _Impairment and Voting_.  LOTC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 2 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Except to the extent that the holder of an Allowed Claim in LOTC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LOTC Class 2 shall be satisfied by, at the option of LOTC: (i) payment in Cash by LOTC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LOTC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.21    LOTC Class 3 – Derivative Claims against LOTC.

(a)      _Impairment and Voting_.  LOTC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 3 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Each holder of an Allowed Claim in LOTC Class 3 shall receive its Pro Rata Share of Available Cash from LOTC.

5.22    LOTC Class 4 – General Unsecured Claims against LOTC.

(a)      _Impairment and Voting_.  LOTC Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 4 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Each holder of an Allowed Claim in LOTC Class 4 shall receive its Pro Rata Share of Available Cash from LOTC.

5.23    LOTC Class 5 – Intercompany Claims against LOTC.

(a)      _Impairment and Voting_.  LOTC Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 5 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LOTC Class 5 shall receive its Pro Rata Share of Available Cash from LOTC.

5.24    LOTC Class 6 – Equity Interests in LOTC.

(a)    _Impairment and Voting_.  LOTC Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LOTC Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    _Distributions_.  Equity Interests in LOTC shall be cancelled if and when LOTC is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LOTC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LOTC on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against LOTC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LOTC may receive its Pro Rata Share of any remaining assets in LOTC.

5.25    LBCC Class 1 – Priority Non-Tax Claims against LBCC.

(a)    _Impairment and Voting_.  LBCC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBCC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCC Class 1 shall be paid by LBCC in Cash in full.

5.26    LBCC Class 2 – Secured Claims against LBCC.

(a)    _Impairment and Voting_.  LBCC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 2 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBCC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCC Class 2 shall be satisfied by, at the option of LBCC: (i) payment in Cash by LBCC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.27    LBCC Class 3 – Derivative Claims against LBCC.

(a)    _Impairment and Voting_.  LBCC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in LBCC Class 3 shall receive its Pro Rata Share of Available Cash from LBCC.

5.28    LBCC Class 4 – General Unsecured Claims against LBCC.

(a)    <u>Impairment and Voting</u>.  LBCC Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBCC Class 4 shall receive its Pro Rata Share of Available Cash from LBCC.

5.29    LBCC Class 5 – Intercompany Claims against LBCC.

(a)    <u>Impairment and Voting</u>.  LBCC Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 5 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBCC Class 5 shall receive its Pro Rata Share of Available Cash from LBCC.

5.30    LBCC Class 6 – Equity Interests in LBCC.

(a)    <u>Impairment and Voting</u>.  LBCC Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBCC Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in LBCC shall be cancelled if and when LBCC is dissolved in accordance with <u>Section 7.4</u> of the Plan. Each holder of an Equity Interest in LBCC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBCC on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LBCC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBCC may receive its Pro Rata Share of any remaining assets in LBCC.

5.31    LBDP Class 1 – Priority Non-Tax Claims against LBDP.

(a)    <u>Impairment and Voting</u>.  LBDP Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBDP Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBDP on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBDP Class 1 shall be paid by LBDP in Cash in full.

5.32    LBDP Class 2 – Secured Claims against LBDP.

(a)    <u>Impairment and Voting</u>.  LBDP Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBDP Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBDP

Class 2 shall be satisfied by, at the option of LBDP: (i) payment in Cash by LBDP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBDP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.33    LBDP Class 3 – Derivative Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBDP Class 3 shall receive its Pro Rata Share of Available Cash from LBDP.

5.34    LBDP Class 4 – General Unsecured Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBDP Class 4 shall receive its Pro Rata Share of Available Cash from LBDP.

5.35    LBDP Class 5 – Intercompany Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 5 is impaired by the Plan. Each holder of an Allowed Claim in LBDP Class 5 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBDP Class 5 shall receive its Pro Rata Share of Available Cash from LBDP.

5.36    LBDP Class 6 – Equity Interests in LBDP.

(a)    Impairment and Voting.  LBDP Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBDP Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LBDP shall be cancelled if and when LBDP is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LBDP shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBDP on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LBDP have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBDP may receive its Pro Rata Share of any remaining assets in LBDP.

5.37    <u>LBFP Class 1 – Priority Non-Tax Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBFP Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBFP on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBFP Class 1 shall be paid by LBFP in Cash in full.

5.38    <u>LBFP Class 2 – Secured Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBFP Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBFP Class 2 shall be satisfied by, at the option of LBFP: (i) payment in Cash by LBFP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBFP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.39    <u>LBFP Class 3 – Derivative Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBFP Class 3 shall receive its Pro Rata Share of Available Cash from LBFP.

5.40    <u>LBFP Class 4 – General Unsecured Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBFP Class 4 shall receive its Pro Rata Share of Available Cash from LBFP.

5.41    <u>LBFP Class 5 – Intercompany Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 5 is entitled to vote to accept or reject the Plan.

36

(b)    _Distributions_.    Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBFP Class 5 shall receive its Pro Rata Share of Available Cash from LBFP.

5.42    LBFP Class 6 – Equity Interests in LBFP.

(a)    _Impairment and Voting_.    LBFP Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBFP Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    _Distributions_.  Equity Interests in LBFP shall be cancelled if and when LBFP is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LBFP shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBFP on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against LBFP have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBFP may receive its Pro Rata Share of any remaining assets in LBFP.

5.43    LB 745 Class 1 – Priority Non-Tax Claims against LB 745.

(a)    _Impairment and Voting_.  LB 745 Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in LB 745 Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB 745 on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB 745 Class 1 shall be paid by LB 745 in Cash in full.

5.44    LB 745 Class 2 – Secured Claims against LB 745.

(a)    _Impairment and Voting_.  LB 745 Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 2 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in LB 745 Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB 745 Class 2 shall be satisfied by, at the option of LB 745: (i) payment in Cash by LB 745 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB 745 Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.45    LB 745 Class 3 – General Unsecured Claims against LB 745.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed Claim in LB 745 Class 3 shall receive its Pro Rata Share of Available Cash from LB 745.

5.46    <u>LB 745 Class 4 – Intercompany Claims against LB 745</u>.

(a)    <u>Impairment and Voting</u>. LB 745 Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LB 745 Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LB 745 Class 4 shall receive its Pro Rata Share of Available Cash from LB 745.

5.47    <u>LB 745 Class 5 – Equity Interests in LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LB 745 Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in LB 745 shall be cancelled if and when LB 745 is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LB 745 shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB 745 on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LB 745 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB 745 may receive its Pro Rata Share of any remaining assets in LB 745.

5.48    <u>PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI Statler</u>.

(a)    <u>Impairment and Voting</u>.  PAMI Statler Class 1 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in PAMI Statler Class 1 agrees to less favorable treatment or has been paid by or on behalf of PAMI Statler on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in PAMI Statler Class 1 shall be paid by PAMI Statler in Cash in full.

5.49    <u>PAMI Statler Class 2 – Secured Claims against PAMI Statler</u>.

(a)    <u>Impairment and Voting</u>.  PAMI Statler Class 2 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in PAMI Statler Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in PAMI Statler Class 2 shall be satisfied by, at the option of PAMI Statler: (i) payment in Cash by PAMI Statler in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in PAMI Statler Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.50    PAMI Statler Class 3 – General Unsecured Claims against PAMI Statler.

(a)    Impairment and Voting.  PAMI Statler Class 3 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in PAMI Statler Class 3 shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.51    PAMI Statler Class 4 – Intercompany Claims against PAMI Statler.

(a)    Impairment and Voting.  PAMI Statler Class 4 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in PAMI Statler Class 4 shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.52    PAMI Statler Class 5 – Equity Interests in PAMI Statler.

(a)    Impairment and Voting.  PAMI Statler Class 5 is impaired by the Plan. Each holder of an Equity Interest in PAMI Statler Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in PAMI Statler shall be cancelled if and when PAMI Statler is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in PAMI Statler shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of PAMI Statler on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against PAMI Statler have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in PAMI Statler may receive its Pro Rata Share of any remaining assets in PAMI Statler.

5.53    CES Class 1 – Priority Non-Tax Claims against CES.

39

(a)    <u>Impairment and Voting</u>.  CES Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES Class 1 shall be paid by CES in Cash in full.

5.54    <u>CES Class 2 – Secured Claims against CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES Class 2 shall be satisfied by, at the option of CES: (i) payment in Cash by CES in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in CES Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.55    <u>CES Class 3A – General Unsecured Claims against CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in CES Class 3 shall receive its Pro Rata Share of Available Cash from CES.

5.56    <u>CES Class 4 – Intercompany Claims against CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in CES Class 4 shall receive its Pro Rata Share of Available Cash from CES.

5.57    <u>CES Class 5 – Equity Interests in CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in CES shall be cancelled if and when CES is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in CES shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against CES have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES may receive its Pro Rata Share of any remaining assets in CES.

5.58    <u>CES V Class 1 – Priority Non-Tax Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES V Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES V on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES V Class 1 shall be paid by CES V in Cash in full.

5.59    <u>CES V Class 2 – Secured Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES V Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES V Class 2 shall be satisfied by, at the option of CES V: (i) payment in Cash by CES V in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in CES V Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.60    <u>CES V Class 3 – General Unsecured Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in CES V Class 3 shall receive its Pro Rata Share of Available Cash from CES V.

5.61    <u>CES V Class 4 – Intercompany Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in CES V Class 4 shall receive its Pro Rata Share of Available Cash from CES V.

5.62    CES V Class 5 – Equity Interests in CES V.

(a)    Impairment and Voting.    CES V Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES V Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.    Equity Interests in CES V shall be cancelled if and when CES V is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in CES V shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES V on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against CES V have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES V may receive its Pro Rata Share of any remaining assets in CES V.

5.63    CES IX Class 1 – Priority Non-Tax Claims against CES IX.

(a)    Impairment and Voting.    CES IX Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES IX Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in CES IX Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES IX on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES IX Class 1 shall be paid by CES IX in Cash in full.

5.64    CES IX Class 2 – Secured Claims against CES IX.

(a)    Impairment and Voting.    CES IX Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in CES IX Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in CES IX Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES IX Class 2 shall be satisfied by, at the option of CES IX: (i) payment in Cash by CES IX in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in CES IX Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.65    CES IX Class 3 – General Unsecured Claims against CES IX.

(a)    <u>Impairment and Voting</u>.  CES IX Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES IX Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in CES IX Class 3 shall receive its Pro Rata Share of Available Cash from CES IX.

5.66    <u>CES IX Class 4 – Intercompany Claims against CES IX</u>.

(a)    <u>Impairment and Voting</u>.  CES IX Class 4 is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in CES IX Class 4 shall receive its Pro Rata Share of Available Cash from CES IX.

5.67    <u>CES IX Class 5 – Equity Interests in CES IX</u>.

(a)    <u>Impairment and Voting</u>.  CES IX Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES IX Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in CES IX shall be cancelled if and when CES IX is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in CES IX shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES IX on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against CES IX have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES IX may receive its Pro Rata Share of any remaining assets in CES IX.

5.68    <u>East Dover Class 1 – Priority Non-Tax Claims against East Dover</u>.

(a)    <u>Impairment and Voting</u>.  East Dover Class 1 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in East Dover Class 1 agrees to less favorable treatment or has been paid by or on behalf of East Dover on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in East Dover Class 1 shall be paid by East Dover in Cash in full.

5.69    East Dover Class 2 – Secured Claims against East Dover.

(a)    Impairment and Voting.  East Dover Class 2 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in East Dover Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in East Dover Class 2 shall be satisfied by, at the option of East Dover: (i) payment in Cash by East Dover in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in East Dover Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.70    East Dover Class 3 – General Unsecured Claims against East Dover.

(a)    Impairment and Voting.  East Dover Class 3 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in East Dover Class 3 shall receive its Pro Rata Share of Available Cash from East Dover.

5.71    East Dover Class 4 – Intercompany Claims against East Dover.

(a)    Impairment and Voting.  East Dover Class 4 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in East Dover Class 4 shall receive its Pro Rata Share of Available Cash from East Dover.

5.72    East Dover Class 5 – Equity Interests in East Dover.

(a)    Impairment and Voting.  East Dover Class 5 is impaired by the Plan. Each holder of an Equity Interest in East Dover Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in East Dover shall be cancelled if and when East Dover is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in East Dover shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of East Dover on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against East Dover have

44

been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in East Dover may receive its Pro Rata Share of any remaining assets in East Dover.

5.73    LS Finance Class 1 – Priority Non-Tax Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LS Finance Class 1 agrees to less favorable treatment or has been paid by or on behalf of LS Finance on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LS Finance Class 1 shall be paid by LS Finance in Cash in full.

5.74    LS Finance Class 2 – Secured Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 2 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LS Finance Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LS Finance Class 2 shall be satisfied by, at the option of LS Finance: (i) payment in Cash by LS Finance in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LS Finance Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.75    LS Finance Class 3 – General Unsecured Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LS Finance Class 3 shall receive its Pro Rata Share of Available Cash from LS Finance.

5.76    LS Finance Class 4 – Intercompany Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 4 is entitled to vote to accept or reject the Plan.

(b)     Distributions.   Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LS Finance Class 4 shall receive its Pro Rata Share of Available Cash from LS Finance.

5.77    LS Finance Class 5 – Equity Interests in LS Finance.

(a)     Impairment and Voting.  LS Finance Class 5 is impaired by the Plan. Each holder of an Equity Interest in LS Finance Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)     Distributions.  Equity Interests in LS Finance shall be cancelled if and when LS Finance is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LS Finance shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LS Finance on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LS Finance have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LS Finance may receive its Pro Rata Share of any remaining assets in LS Finance.

5.78    LUXCO Class 1 – Priority Non-Tax Claims against LUXCO.

(a)     Impairment and Voting.  LUXCO Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 1 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Claim in LUXCO Class 1 agrees to less favorable treatment or has been paid by or on behalf of LUXCO on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LUXCO Class 1 shall be paid by LUXCO in Cash in full.

5.79    LUXCO Class 2 – Secured Claims against LUXCO.

(a)     Impairment and Voting.  LUXCO Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 2 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Claim in LUXCO Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LUXCO Class 2 shall be satisfied by, at the option of LUXCO: (i) payment in Cash by LUXCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LUXCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.80    LUXCO Class 3 – General Unsecured Claims against LUXCO.

(a)    Impairment and Voting.  LUXCO Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LUXCO Class 3 shall receive its Pro Rata Share of Available Cash from LUXCO.

5.81    LUXCO Class 4 – Intercompany Claims against LUXCO.

(a)    Impairment and Voting.  LUXCO Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LUXCO Class 4 shall receive its Pro Rata Share of Available Cash from LUXCO.

5.82    LUXCO Class 5 – Equity Interests in LUXCO.

(a)    Impairment and Voting.  LUXCO Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LUXCO Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LUXCO shall be cancelled if and when LUXCO is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LUXCO shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LUXCO on account of such Equity Interests thereafter; *provided, however,* that solely in the event that all Allowed Claims against LUXCO have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LUXCO may receive its Pro Rata Share of any remaining assets in LUXCO.

5.83    BNC Class 1 – Priority Non-Tax Claims against BNC.

(a)    Impairment and Voting.  BNC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in BNC Class 1 agrees to less favorable treatment or has been paid by or on behalf of BNC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in BNC Class 1 shall be paid by BNC in Cash in full.

5.84    BNC Class 2 – Secured Claims against BNC.

(a)    Impairment and Voting.  BNC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 2 is entitled to vote to accept or reject the Plan.

47

(b)     _Distributions_.  Except to the extent that the holder of an Allowed Claim in BNC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in BNC Class 2 shall be satisfied by, at the option of BNC: (i) payment in Cash by BNC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in BNC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.85    BNC Class 3 – General Unsecured Claims against BNC.

(a)     _Impairment and Voting_.  BNC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 3 is entitled to vote to accept or reject the Plan.

(b)     _Distributions_.  Each holder of an Allowed Claim in BNC Class 3 shall receive its Pro Rata Share of Available Cash from BNC.

5.86    BNC Class 4 – Intercompany Claims against BNC.

(a)     _Impairment and Voting_.  BNC Class 4 is impaired by the Plan. Each holder of an Allowed Claim in BNC Class 4 is entitled to vote to accept or reject the Plan.

(b)     _Distributions_.  Subject to _Section 6.7_ of the Plan, each holder of an Allowed Claim in BNC Class 4 shall receive its Pro Rata Share of Available Cash from BNC.

5.87    BNC Class 5 – Equity Interests in BNC.

(a)     _Impairment and Voting_.  BNC Class 5 is impaired by the Plan.  Each holder of an Equity Interest in BNC Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)     _Distributions_.  Equity Interests in BNC shall be cancelled if and when BNC is dissolved in accordance with _Section 7.4_ of the Plan.  Each holder of an Equity Interest in BNC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of BNC on account of such Equity Interests thereafter; _provided, however_, that solely in the event that all Allowed Claims against BNC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in BNC may receive its Pro Rata Share of any remaining assets in BNC.

5.88    LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB Rose Ranch.

(a)     _Impairment and Voting_.  LB Rose Ranch Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 1 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Claim in LB Rose Ranch Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB Rose Ranch on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB Rose Ranch Class 1 shall be paid by LB Rose Ranch in Cash in full.

    5.89    LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch.

    (a)     Impairment and Voting.  LB Rose Ranch Class 2 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 2 is entitled to vote to accept or reject the Plan.

    (b)     Distributions.  Except to the extent that the holder of an Allowed Claim in LB Rose Ranch Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB Rose Ranch Class 2 shall be satisfied by, at the option of LB Rose Ranch: (i) payment in Cash by LB Rose Ranch in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB Rose Ranch Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

    5.90    LB Rose Ranch Class 3 – General Unsecured Claims against LB Rose Ranch.

    (a)     Impairment and Voting.  LB Rose Ranch Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 3 is entitled to vote to accept or reject the Plan.

    (b)     Distributions.  Each holder of an Allowed Claim in LB Rose Ranch Class 3 shall receive its Pro Rata Share of Available Cash from LB Rose Ranch.

    5.91    LB Rose Ranch Class 4 – Intercompany Claims against LB Rose Ranch.

    (a)     Impairment and Voting.  LB Rose Ranch Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 4 is entitled to vote to accept or reject the Plan.

    (b)     Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LB Rose Ranch Class 4 shall receive its Pro Rata Share of Available Cash from LB Rose Ranch.

    5.92    LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch.

49

(a)    _Impairment and Voting_. LB Rose Ranch Class 5 is impaired by the Plan. Each holder of an Equity Interest in LB Rose Ranch Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    _Distributions_. Equity Interests in LB Rose Ranch shall be cancelled if and when LB Rose Ranch is dissolved in accordance with Section 7.4 of the Plan. Each holder of an Equity Interest in LB Rose Ranch shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB Rose Ranch on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against LB Rose Ranch have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB Rose Ranch may receive its Pro Rata Share of any remaining assets in LB Rose Ranch.

5.93    _SASCO Class 1 – Priority Non-Tax Claims against SASCO_.

(a)    _Impairment and Voting_. SASCO Class 1 is impaired by the Plan. Each holder of an Allowed Claim in SASCO Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_. Except to the extent that the holder of an Allowed Claim in SASCO Class 1 agrees to less favorable treatment or has been paid by or on behalf of SASCO on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in SASCO Class 1 shall be paid by SASCO in Cash in full.

5.94    _SASCO Class 2 – Secured Claims against SASCO_.

(a)    _Impairment and Voting_. SASCO Class 2 is impaired by the Plan. Each holder of an Allowed Claim in SASCO Class 2 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_. Except to the extent that the holder of an Allowed Claim in SASCO Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in SASCO Class 2 shall be satisfied by, at the option of SASCO: (i) payment in Cash by SASCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in SASCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.95    _SASCO Class 3 – General Unsecured Claims against SASCO_.

(a)    _Impairment and Voting_. SASCO Class 3 is impaired by the Plan. Each holder of an Allowed Claim in SASCO Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_. Each holder of an Allowed Claim in SASCO Class 3 shall receive its Pro Rata Share of Available Cash from SASCO.

5.96    SASCO Class 4 – Intercompany Claims against SASCO.

(a)    Impairment and Voting.  SASCO Class 4 is impaired by the Plan.    Each holder of an Allowed Claim in SASCO Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in SASCO Class 4 shall receive its Pro Rata Share of Available Cash from SASCO.

5.97    SASCO Class 5 – Equity Interests in SASCO.

(a)    Impairment and Voting.  SASCO Class 5 is impaired by the Plan.  Each holder of an Equity Interest in SASCO Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in SASCO shall be cancelled if and when SASCO is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in SASCO shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of SASCO on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against SASCO have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in SASCO may receive its Pro Rata Share of any remaining assets in SASCO.

5.98    LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LB 2080 Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB 2080 on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB 2080 Class 1 shall be paid by LB 2080 in Cash in full.

5.99    LB 2080 Class 2 – Secured Claims against LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LB 2080 Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB 2080 Class 2 shall be satisfied by, at the option of LB 2080: (i) payment in Cash by LB 2080 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB 2080

Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.100    LB 2080 Class 3 – General Unsecured Claims against LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LB 2080 Class 3 shall receive its Pro Rata Share of Available Cash from LB 2080.

5.101    LB 2080 Class 4 – Intercompany Claims against LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 4 is impaired by the Plan.   Each holder of an Allowed Claim in LB 2080 Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.   Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LB 2080 Class 4 shall receive its Pro Rata Share of Available Cash from LB 2080.

5.102    LB 2080 Class 5 – Equity Interests in LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LB 2080 Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LB 2080 shall be cancelled if and when LB 2080 is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LB 2080 shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB 2080 on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LB 2080 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB 2080 may receive its Pro Rata Share of any remaining assets in LB 2080.

**ARTICLE VI**
**Implementation of the Plan**

6.1    Plan Administrator.

(a)    Appointment.   LBHI shall serve as Plan Administrator for each of the Debtors.

(b)    Authority.   Except with respect to the rights and authority of the Domestic Operating Company Creditor Representative under Section 6.2 of the Plan, the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)  control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors (including, without limitation, Guarantee Claims) subject to Bankruptcy Court approval;

(ii)  supervise the making of Distributions to holders of Allowed Claims against the Debtors in accordance with Article VIII of the Plan;

(iii)  exercise its reasonable business judgment to direct and control the wind down, liquidation and/or abandoning of the assets of the Debtors;

(iv)  prosecute all Litigation Claims, including, without limitation, Avoidance Actions, on behalf of the Debtors, and to elect not to pursue any Litigation Claims and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Litigation Claims, as the Plan Administrator may determine is in the best interests of the Debtors;

(v)  make payments to existing professionals who will continue to perform in their current capacities;

(vi)  retain professionals to assist in performing its duties under the Plan;

(vii)  maintain the books and records and accounts of the Debtors;

(viii)  invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Litigation Claims, and any income earned thereon;

(ix)  incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(x)  administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) request, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) represent the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)  prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required by any Governmental Unit or applicable law; and

(xii)  determine whether to create a Liquidating Trust for the assets of a Debtor or Debtor-Controlled Entity pursuant to Section 10.1 of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with Section 15.2 of the Plan;

*provided that* the Plan Administrator shall have the authority and right on behalf of any Debtor other than a Domestic Operating Company, to file an objection, response, or to otherwise seek to be heard with respect to the rights and authority of the Domestic Operating Company Creditor Representative under Section 6.2 of the Plan.

(c)    No Liability of Plan Administrator.  The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Plan Administrator.

6.2    Domestic Operating Company Creditor Representative.

(a)    Appointment.

(i)    The Confirmation Order shall provide for the appointment of the Primary Creditor Representative, and on the Effective Date, such appointment of the Primary Creditor Representative shall be effective.

(ii)    After the Effective Date, to the extent that an actual or potential conflict (a "Creditor Representative Conflict") exists in connection with the performance of the Primary Creditor Representative's responsibilities under this Plan, an Additional Creditor Representative shall be appointed with respect to such Creditor Representative Conflict by (A) the Primary Creditor Representative, without the need for Bankruptcy Court approval, so long as such Additional Creditor Representative has been identified by the Requisite Plan Proponents in the Plan Supplement as a potential Additional Creditor Representative, or  (B) the Bankruptcy Court, upon the motion of the Primary Creditor Representative or any holder of Claims against the Domestic Operating Company with respect to which such Creditor Representative Conflict exists.  A notice of the appointment of any Additional Creditor Representative pursuant to clause (A) of this paragraph shall be filed in the Chapter 11 Cases no later than five (5) Business Days after such appointment.

(b)    Authority.  Notwithstanding Section 6.1 of the Plan, the Domestic Operating Company Creditor Representative shall have the obligation, authority and right to act as fiduciary on behalf, and in the best interests, of the Domestic Operating Companies and their creditors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out the following responsibilities:

(i)    subject to Section 6.7 of the Plan, evaluate and determine the proper treatment of all Claims and Causes of Action asserted (or that could be asserted) against a Domestic Operating Company, including whether to object to, litigate, seek to subordinate, compromise or settle such Claim, including, without limitation, any and all Intercompany Claims;

(ii)    subject to Section 6.7 of the Plan, evaluate and assert each Claim and Litigation Claim of a Domestic Operating Company against a Debtor or non-Debtor Affiliate, including whether to, as applicable, litigate, compromise or settle such Claim

54

or Litigation Claim, including, without limitation, any such Claim or Litigation Claim arising from any repurchase transaction or securitization;

(iii)    subject to <u>Section 6.7</u> of the Plan, with respect to (A) any Disputed Claims against a Domestic Operating Company not resolved as of the Effective Date, and (B) any other Claim against a Domestic Operating Company that is not Allowed as of the Effective Date, control and effectuate the Claims reconciliation process, including to object to, litigate, seek to subordinate, compromise or settle such Claims, and review and approve objections to and proposed settlements of Disputed Claims as they relate to the Domestic Operating Companies;

(iv)    review any Administrative Expenses proposed to be allocated to a Domestic Operating Company, including any expenses allocated pursuant to the Debtor Allocation Agreement, and approve any such allocations it determines to be in accordance with the Debtor Allocation Agreement or otherwise to reasonably reflect the benefit received by the Domestic Operating Company from the expense incurred;

(v)    supervise the making of Distributions to holders of Allowed Claims against the Domestic Operating Companies in accordance with <u>Article VIII</u> of the Plan;

(vi)    exercise the rights and perform the obligations of the Reserve Agent with respect to the Domestic Operating Companies in accordance with <u>Section 8.4</u> of the Plan;

(vii)    subject to <u>Section 6.7</u> of the Plan, request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code;

(viii)    subject to <u>Section 6.7</u> of the Plan, review and approve the prosecution of Litigation Claims, Causes of Action, and adversary and other proceedings as they relate to any Domestic Operating Company, if any, including approving proposed settlements thereof;

(ix)    retain professionals to assist in performing its duties under the Plan;

(x)    determine whether to create a Liquidating Trust for the assets of a Domestic Operating Company pursuant to <u>Section 10.1</u> of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with <u>Section 15.2</u> of the Plan;

(xi)    evaluate, insofar as they relate or affect any Domestic Operating Company, intercompany arrangements among one or more of the Debtors, or among one or more of the Debtors and the non-Debtor Affiliates, including any intercompany arrangements in respect of sharing of tax items, and ensure that such arrangements are executed on arm's length terms;

(xii)    determine whether to take any action to wind-down or dissolve any Domestic Operating Company and exercise its reasonable business judgment to direct

and control any such wind-down, liquidation, dissolution and/or abandoning of the assets of the Debtors; and

(xiii)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Domestic Operating Company Creditor Representative;

*provided, however*, that with respect to (a) Intercompany Claims and Causes of Action asserted (or that could be asserted) by a Non-Controlled Affiliate against a Domestic Operating Company or (b) Claims and Causes of Action asserted (or that could be asserted) by a Domestic Operating Company against a Non-Controlled Affiliate (collectively, "Non-Controlled Affiliate Claims"), the authority to object to, litigate, seek to subordinate, compromise, or settle such Non-Controlled Affiliate Claims shall vest with the Plan Administrator; *provided, further* that (x) any such settlement of Non-Controlled Affiliate Claims will be of no force or effect absent entry of a Final Order approving such settlement, upon notice and a hearing, and (y) the Domestic Operating Company Creditor Representative shall have the right and authority to file an objection, response, or to otherwise seek to be heard with respect to any proposed settlement of a Non-Controlled Affiliate Claim.

(c)    No Liability of Domestic Operating Company Creditor Representative. The Domestic Operating Company Creditor Representative shall have no liability whatsoever for any acts or omissions in its capacity as Domestic Operating Company Creditor Representative to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Domestic Operating Company Creditor Representative.

6.3    LAMCO.    At the discretion of the board of directors of LBHI following the Effective Date and subject to existing agreements, LAMCO may serve as asset manager for certain assets of each of the Debtors under the Plan.  Ownership and ultimate decision making authority with respect to each of the Debtor's assets after the Effective Date will be vested in the applicable Debtor.

6.4    Debtor Allocation Agreement.    In order to take into account that expenses incurred prior to the Effective Date in evaluating and resolving Derivatives Claims against any of the Domestic Operating Companies also benefited LBHI both as guarantor and as holder of Allowed Claims against the Domestic Operating Companies, fifty percent (50%) of all costs associated with the review and analysis of Derivatives Claims against the Domestic Operating Company shall be allocated to LBHI (such allocation, the "Derivative Claims Allocation").  On or before the Effective Date, the Debtors shall execute a Debtor Allocation Agreement which will seek to allocate expenses (other than expenses allocated pursuant to the Derivative Claims Allocation) among the Debtors in as close as possible the proportion of the relative benefit each Debtor received as a result of such expenses.  The Plan Administrator shall make whatever adjustments are necessary, including by providing a credit to the estate of a Domestic Operating Company, to account for costs previously allocated to a Domestic Operating Company in excess of the allocation provided for by the Derivative Claims Allocation or the Debtor Allocation Agreement, as applicable. In addition, all other costs allocated to a Domestic Operating Company shall be subject to the review of the Domestic Operating Company Creditor

Representative, which may object to any allocation it determines to be in conflict with the Debtor Allocation Agreement or to be otherwise unreasonable. Any such objection by the Domestic Operating Company Creditor Representative if not resolved consensually with the Plan Administrator, shall be resolved by the Bankruptcy Court, and such disputed expenses shall be allocated among the Debtors based on the relative benefit such Debtors received from the expense incurred. The Debtor Allocation Agreement in substantially final form will be included in the Plan Supplement.

6.5     Redistribution of Subordinated Claims Recoveries. To give effect to agreements of holders of Subordinated Claims, all Distributions under the Plan made by LBHI shall be calculated as if each holder of an Allowed Claim in LBHI Class 10A, LBHI Class 10B and LBHI Class 10C were to receive its Pro Rata Share of Available Cash from LBHI, and, in the case of each holder of an Allowed Claim in LBHI Class 10A and LBHI Class 10B, its Pro Rata Share of the Subordinated Class 10C Distribution; *provided*, *however*, that:

(a)     the Subordinated Class 10A Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to Sections 4.3(b) and 4.4(b) of the Plan, respectively, until all such Claims are satisfied in full;

(b)     the Subordinated Class 10B Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B pursuant to Sections 4.3(b), 4.4(b), 4.5(b), 4.6(b) and 4.7(b) of the Plan, respectively, until all such Claims are satisfied in full;

(c)     the Subordinated Class 10C Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B pursuant to Sections 4.3(b), 4.4(b), 4.5(b), 4.6(b), 4.7(b), 4.12(b) and 4.13(b) of the Plan, respectively, until all such Claims are satisfied in full; *provided*, *however*, that any portion of the Subordinated Class 10C Distribution payable to holders of Allowed Claims in LBHI Class 10A shall be automatically distributed to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to Section 6.5(a) of the Plan until all such Claims are satisfied in full; *provided*, *further*, that any portion of the Subordinated Class 10C Distribution payable to holders of Allowed Claims in LBHI Class 10B shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B pursuant to Section 6.5(b) of the Plan until all such Claims are satisfied in full.

6.6     Closing of Chapter 11 Case. After the Chapter 11 Case of a Debtor has been fully administered, such Debtor shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.7     Affiliate Claims Against a Debtor. (a) Each holder of a Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim, or Affiliate Guarantee Claim against a Debtor shall have an Allowed Claim, as applicable, against that Debtor in an amount that is agreed to by the applicable Debtors and any applicable Affiliates or as otherwise determined by the Bankruptcy Court; *provided, however,* that pursuant to (and subject to the limitations imposed by) Section 6.2(b) of the Plan, the Domestic Operating Company Creditor

Representative shall have the authority to object to, litigate, seek to subordinate, compromise or settle Claims asserted by or against a Domestic Operating Company on behalf of such Domestic Operating Company.  (b) Notwithstanding anything in Section 6.7(a), any Senior Intercompany Claim or Intercompany Claim against any Debtor held by any Cross-Border Protocol Party shall be allowed against such Debtor at the amount set forth in the Debtors' accounting records to the extent those records have been accepted pursuant to Section 9 of the Cross-Border Protocol or any Cross-Border Settlement Guidelines.  Such amounts shall be set forth in the Plan Supplement if accepted prior to the filing thereof.  This Section 6.7(b) shall not apply to any Cross-Border Protocol Party which has elected not to comply with the Cross-Border Protocol or Cross-Border Settlement Guidelines.

6.8    <u>LBHI Structured Securities Claims</u>.  For purposes of the Chapter 11 Cases only, the Allowed amount of LBHI Structured Securities Claims shall be determined in accordance with the Structured Securities Valuation Methodologies and the Structured Securities Estimated Maximum Allowable Claims Summary, provided, however, that holders of LBHI Structured Securities Claims may seek, or the Debtors may propose, amendments or corrections to the proposed valuations set forth in the Structured Securities Estimated Maximum Allowable Claims Summary (or other documents summarizing application of the Structured Securities Valuation Methodologies to Structured Securities issued by other entities) solely to the extent that such valuations do not reflect a consistent or accurate application of the Structured Securities Valuation Methodologies, or other manifest errors.

6.9    <u>Indenture Trustee and Creditors' Committee Members Fees</u>.  Subject to entry of the Confirmation Order, (a) the reasonable fees and expenses (including attorneys fees) of the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the reasonable expenses (excluding attorneys fees or any other fees) of the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent accrued and unpaid as of the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement, and (ii) to the extent incurred after the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

**ARTICLE VII**
**Corporate Governance**

7.1    <u>Corporate Form</u>.  On the Effective Date, each of the Debtors shall maintain its current corporate form.

7.2    <u>LBHI Board of Directors and Officers</u>.

(a)    Following the Effective Date, the board of directors of LBHI shall consist of nine (9) persons.  The initial board of directors of LBHI shall be selected by the Director Selection Committee in accordance with subsection (b) below.  Each of the initial directors of LBHI shall have initial and, if reelected, subsequent terms of one year.  A director of LBHI may be removed from office by the Plan Trust with or without cause.  Subject to death, incapacity,

resignation or removal and reelection by the Plan Trust in accordance with the Plan Trust Agreement, the initial directors shall serve as the board of directors of LBHI through the Closing Date.  Upon expiration of the term of a director of LBHI or his or her resignation, death or removal, the election of such director or a replacement director shall be determined by action of the Plan Trust as sole shareholder of LBHI.

(b)    The Director Selection Committee shall be comprised of seven (7) individuals as listed in the Plan Supplement, of whom two (2) shall be selected by the Creditors' Committee, two (2) shall be selected by LBHI, and three (3) selected by the Requisite Plan Proponents.  The co-chairs of the Creditors' Committee shall be the two (2) appointees of the Creditors' Committee to the Director Selection Committee, each of whom shall exercise his or her independent business judgment in the selection of directors and not act at the direction of the Creditors' Committee.  One of the co-chairs of the Creditors' Committee shall serve as the chairperson of the Director Selection Committee. The Director Selection Committee shall try to select the initial board of directors of LBHI by majority vote, but, in the event of a deadlock with respect to a director, the vote of the chairperson of the Director Selection Committee shall control the selection of such director.  In undertaking to identify candidates to serve on the initial board of directors of LBHI, the Director Selection Committee shall consider nominations from and, in its discretion, consult with all relevant constituencies, including, without limitation, the holders of significant Claims against the Debtors and Debtor-Controlled Entities.  Any member of the Director Selection Committee may be named to serve as a director of LBHI.

(c)    Following the Effective Date, the board of directors of LBHI shall, in addition to its other duties, be responsible for (i) instructing and supervising LBHI, the Subsidiary Debtors other than the Domestic Operating Companies and the Plan Administrator with respect to their responsibilities under the Plan; (ii) reviewing and approving the prosecution of adversary and other proceedings, if any, including approving proposed settlements thereof as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies; (iii) reviewing and approving objections to and proposed settlements of Disputed Claims as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies; and (iv) performing such other duties that may be necessary and proper to assist LBHI, the Subsidiary Debtors other than the Domestic Operating Companies and the Plan Administrator and their retained professionals.  In its discretion, following the Effective Date, the board of directors of LBHI may also delegate any duties assigned to the Plan Administrator as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies to any other committee, entity or individual.

7.3    <u>Subsidiary Debtor Post-Effective Date Management</u>.

(a)    Following the Effective Date, LBHI shall cause Lehman ALI to elect the respective boards of directors of LBSF and LCPI.  Each board shall consist of five (5) persons selected by LBHI, four (4) of whom shall be concurrently serving members of the LBHI board of directors and one (1) of whom shall be selected in consultation with the holders of significant Claims against LBSF or LCPI, respectively.  Each of the initial directors of LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  Thereafter, LBHI shall cause Lehman ALI to elect successors of the then-serving members of the LBSF and LCPI boards at each annual meeting of LBSF or LCPI, respectively, or upon the removal or resignation of such

directors.  Lehman ALI (as directed by LBHI) shall also have the power to act by written consent to remove any director on the LBSF or LCPI board at any time with or without cause.  Notwithstanding any of the foregoing, nothing in this paragraph nor in any organizational document, bylaw, resolution, or other corporate authorization of LBHI or a Domestic Operating Company, shall limit the authority granted to the Domestic Operating Company Creditor Representative pursuant to this Plan.

(b)    Following the Effective Date, the respective boards of directors or managers, as applicable, of the Subsidiary Debtors other than LBSF and LCPI shall consist of one (1) individual who shall be a concurrently serving member of the LBHI board of directors.  Each of the initial directors or managers of the Subsidiary Debtors other than LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  Thereafter, LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall elect successors of the then-serving members of the boards or managers for such Subsidiary Debtor at each annual meeting or upon the removal or resignation of such individuals.  LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall also have the power to act by written consent to remove any director or manager of such Subsidiary Debtor at any time with or without cause.  Notwithstanding any of the foregoing, nothing in this paragraph nor in any organizational document, bylaw, resolution, or other corporate authorization of LBHI or a Domestic Operating Company, shall limit the authority granted to the Domestic Operating Company Creditor Representative pursuant to this Plan.

7.4    Plan Trust.

(a)    The Plan Trust shall be established on the Effective Date and shall continue in existence until the Closing Date.  The Plan Trustees shall be the members of the Director Selection Committee.  Each of the Plan Trustees shall continue in such capacity until he or she ceases to be a Plan Trustee in accordance with the terms and conditions set forth in the Plan Trust Agreement.  In the event of a vacancy in the office of Plan Trustee, the remaining Plan Trustees shall by majority vote of the remaining Plan Trustees fill the vacancy if in their discretion the circumstances of the Plan Trust warrant doing so.  The sole purpose of the Plan Trust shall be to hold the Plan Trust Stock as provided in Section 4.17(b).  The Plan Trust shall be governed, in accordance with the Plan Trust Agreement (which shall be included in the Plan Supplement), by the Plan Trustees.  The Plan Trust shall exercise voting rights associated with the Plan Trust Stock in furtherance of the liquidation of the Debtors and compliance with the provisions of the Plan.  In the event of a deadlock with respect to any vote, the vote of the chairperson of the Director Selection Committee shall control.  Any distribution from assets of LBHI that is made to the Plan Trust as holder of such share shall be for the benefit of the holders of Equity Interests in accordance with Section 4.17(b).

(b)    The Plan Trust Agreement shall provide that (i) at such time as a vacancy on the board of directors of LBHI is to be filled or there is a vote on the election of a director upon the expiration of a director's term of office, the Plan Trust shall fill such vacancy by majority vote of the Plan Trustees and (ii) at all other times, the Plan Trust may act, by majority vote of the Plan Trustees, to remove and replace directors, with or without cause.

7.5    Corporate Existence.   After the Effective Date, the Plan Administrator, may decide to (a) maintain each Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor have been completed, or (b) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Debtor, dissolve such Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities (including, without limitation, the transfer of all or part of the assets of such Debtor to a Liquidating Trust in accordance with Article X of the Plan), or (c) dissolve any Debtor-Controlled Entity and complete the winding up of such Debtor-Controlled Entity in accordance with applicable law; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Debtor-Controlled Entity; *provided, further*, that, notwithstanding the foregoing, only the Domestic Operating Company Creditor Representative may decide to take any action to wind-down or dissolve any Domestic Operating Company.  Notwithstanding any of the foregoing, the Plan Administrator and the Domestic Operating Company Creditor Representative, as applicable, shall not wind-down, dissolve or liquidate a Debtor until such Plan Administrator or Domestic Operating Company Creditor Representative, as applicable, has reasonably concluded that such wind-down, dissolution or liquidation will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation, or such Debtor can effect such wind-down, dissolution or liquidation in a tax efficient manner taking into account the tax attributes of such other Debtors.

7.6    Wind-Down.  The wind-down and liquidation of each of the Debtors' assets (as determined for federal income tax purposes) shall occur over a period of three years after the Effective Date (it being understood that such liquidation may include the transfer of all or part of the assets of the Debtors to one or more Liquidating Trusts within the meaning of Treas. Reg. § 301.7701-4 in accordance with Section 10.1 of the Plan); *provided*, *however*, that the wind-down and liquidation may extend over a longer period of time if the Debtors receive a private letter ruling or other equivalent guidance from the IRS from which the Plan Administrator reasonably concludes that the continued wind-down and liquidation should not result in a reduction or limitation of the Debtors' tax attributes for federal income tax purposes that materially impairs the expected actual use of such tax attributes.

7.7    Certificate of Incorporation and By-Laws.   As of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended certificate and by-laws of such Debtor (if any) shall be included in the Plan Supplement.

7.8    Stock Trading Restrictions.   The restrictions imposed by the Stock Trading Restrictions Order shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

## ARTICLE VIII
## Provisions Regarding Voting and Distributions Under the Plan

8.1    Reserved.

61

8.2    <u>Nonconsensual Confirmation</u>.  If any impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Requisite Plan Proponents reserve the right to amend the Plan in accordance with <u>Section 15.6</u> of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.  With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Plan Proponents hereby request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

8.3    <u>Distributions of Available Cash</u>.  On the Effective Date, or as soon thereafter as practicable, after the satisfaction in full of (or establishment of reserves sufficient for the satisfaction in full of) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims (to the extent the Debtor determines to pay such Allowed Secured Claim in Cash) against a Debtor, each Debtor shall make a Distribution of its Available Cash in accordance with the provisions of the Plan to holders of Allowed Claims against such Debtor.  After the initial Distribution, each Debtor shall make Distributions of Available Cash in accordance with the Plan to holders of Allowed Claims against such Debtor semi-annually on March 30 and September 30 of each year, provided that each such Distribution in the aggregate is not less than $10,000,000 of such Debtor's Available Cash.  Notwithstanding the foregoing, the Plan Administrator, or, as applicable pursuant to <u>Section 6.2(b)</u> of the Plan, the Domestic Operating Company Creditor Representative, may determine, in its sole discretion (a) to make a Distribution that is less than $10,000,000 in the aggregate of a Debtor's Available Cash, or (b) not to make a Distribution to the holder of an Allowed Claim on the basis that it has not yet determined whether to object to such Claim and such Claim shall be treated as a Disputed Claim for purposes of Distributions under the Plan until the Plan Administrator, or, as applicable pursuant to <u>Section 6.2(b)</u> of the Plan, the Domestic Operating Company Creditor Representative, determines (i) not to object to such Claim (or the time to object to Claims expires), (ii) agrees with the holder of such Claim to allow such Claim in an agreed upon amount or (iii) objects to such Claim and such Claim is Allowed by a Final Order.  To the extent that a Liquidating Trust is established for a Debtor in accordance with <u>Article X</u> of the Plan, any Distributions to be made to holders of Allowed Claims thereafter shall be made by the Liquidating Trustee to such holders as holders of Liquidating Trust Interests in accordance with the provisions of the Plan.  Distributions of Cash on account of such Liquidating Trust Interests shall be made in accordance with <u>Section 10.7</u> of the Plan.

8.4    <u>Disputed Claims Reserve</u>.

(a)    From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, upon each Distribution Date, the Reserve Agent of each Debtor, consistent with and subject to the provisions of Section 1123(a)(4) of the Bankruptcy Code, shall (or shall direct the applicable Debtor to) retain and reserve from Available Cash of such Debtor an aggregate amount (the "<u>Reserved Distribution Amount</u>") equal to the sum of the Pro Rata Share of the Distributions that would have been made on account of each Disputed Claim against such Debtor if such Disputed Claim were an Allowed Claim as of the giving of notice of such Distribution Date in an amount (the "<u>Reserved Claim Amount</u>") equal to the least of (i) the full amount of such Disputed Claim as set forth in the holder's proof of claim (the "<u>Asserted Claim Amount</u>"); (ii)

the amount determined, to the extent permitted pursuant to Section 502 of the Bankruptcy Code, by the Bankruptcy Court for purposes of fixing the Reserve Distribution Amount; or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reserve Agent.

(b)    In the event and to the extent a Disputed Claim for which a Reserved Claim Amount was fixed under paragraph (a) is (i) disallowed in full by Final Order; or (ii) Allowed in an amount less than such Reserved Claim Amount, the excess of the Reserved Distribution Amount allocable to such Disputed Claim over the amount of the Pro Rata Share of the Distributions that would have been made on account of such Disputed Claim in the amount in which it is Allowed (the "Excess Amount") shall be  released to Available Cash of the applicable Debtor.

(c)    Notwithstanding the foregoing provisions of this Section 8.4 of the Plan, if determined by a Final Order, entered upon a motion by either (i) the Reserve Agent, on notice to holders of Claims against the applicable Debtor, or (ii) a holder of a Remaining Disputed Claim against a Debtor, upon notice to the Reserve Agent and to holders of Claims against the applicable Debtor,  additional Available Cash of such Debtor shall be reserved to fund the Reserved Distribution Amount of such Debtor for pro rata funding of any shortfall in Distribution (the "Shortfall Amount") to a holder of a Remaining Disputed Claim against such Debtor that is subsequently Allowed against such Debtor in an amount greater than its Reserved Claim Amount.

(d)    In the event and to the extent that the Reserved Distribution Amount of a Debtor (including any amounts retained in such Reserved Distribution Amount for funding Shortfall Amounts of such Debtor) at any time exceeds the aggregate of the Asserted Claim Amounts of the Remaining Disputed Claims against such Debtor, such excess portion of the Reserved Distribution Amount of the Debtor shall be released to Available Cash of such Debtor.

(e)    Nothing in this Section 8.4 of the Plan shall preclude any holder of a Disputed Claim from seeking, on notice to the Reserve Agent, an order of the Bankruptcy Court in respect of or relating to the Reserved Claim Amount established in respect of such holder's Disputed Claim.

8.5    Minimum Distribution and Manner of Payment.  No payment of Cash of less than $500 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor unless a request therefor is made in writing to the Plan Administrator.  Any payment of Cash made pursuant to the Plan may be made at the option of the Plan Administrator either by check or by wire transfer.

8.6    Distributions Free and Clear.  Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including the Debtors or the Plan Administrator shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

8.7    Delivery of Distributions and Undeliverable Distributions.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the

Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of Claim filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator (at the addresses set forth in Section 15.10) of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder at its then-current address, without interest.  All demands for undeliverable Distributions shall be made on or before six (6) months after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall be released to Available Cash of the applicable Debtor.

8.8    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator or the Liquidating Trustee (as applicable) shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as distributed to such holders.  Notwithstanding the above, each holder of an Allowed Claim or Liquidating Trust Interest that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Plan Administrator or the Liquidating Trustee (as applicable), has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Plan Administrator or the Liquidating Trustee (as applicable), may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim or Liquidating Trust Interest provide a completed Form W-8, W-9 and/or other tax information deemed necessary in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable to each such holder, *provided* that if the Plan Administrator or Liquidating Trustee (as applicable) makes such a request and the holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the applicable Debtor or Liquidating Trust and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against such Debtor, Liquidating Trust, or its respective property.

8.9    Time Bar to Cash Payment Rights.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90-day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be released to Available Cash of the applicable Debtor.

8.10    Setoffs and Recoupment.  Any Debtor may, but shall not be required to, setoff against or recoup from any Claim in respect of such Claim any Claims of any nature whatsoever that such Debtor may have against the claimant, *provided, however,* that the Debtor has provided such claimant with written notice of the Debtor's proposed setoff or recoupment at least twenty (20) Business Days prior thereto, and, if such claimant files a written objection to such proposed

setoff or recoupment, the Debtor shall not proceed with the proposed setoff or recoupment absent the withdrawal of such objection or the entry of a Final Order overruling such objection; *and provided further that* neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

8.11    <u>Claims Register to Remain Open</u>.  The register of Claims maintained by the Debtors shall remain open after the Effective Date and the Debtors and Plan Administrator shall recognize any transfer of Claims at any time thereafter other than during the period commencing fourteen (14) Business Days prior to and concluding fourteen (14) Business Days after a Distribution Date.

8.12    <u>Allocation of Distributions</u>.  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes), and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim or is otherwise required to be paid under the Plan).

8.13    <u>Maximum Distribution</u>.

(a)    A holder of (i) an Allowed Claim that receives Distributions in the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim that receives Distributions that combined with Distributions or other consideration provided to such holder by a Primary Obligor equal to the greater of the Allowed amount of such Guarantee Claim and the Allowed amount of such holder's Primary Claim, shall, in each case, be deemed satisfied in full for purposes of Distributions.  To the extent that a holder of an Allowed Guarantee Claim that is deemed satisfied in full would otherwise be entitled to receive future Distributions or consideration on account of such holder's Primary Claim, LBHI shall be entitled to receive such Distributions or consideration as subrogee.

(b)    In no event shall any holder of (i) any Allowed Claim receive Distributions in excess of the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim receive Distributions that combined with Distributions or other consideration provided to such holder by a Primary Obligor would allow such holder to receive in excess of the greater of the Allowed amount of such holder's Guarantee Claim and the Allowed amount of such holder's Primary Claim.  The Plan Administrator may seek approval from the Bankruptcy Court to hold back all or a portion of a Distribution ("<u>Distribution Holdback</u>") to a holder of an Allowed Guarantee Claim if the Plan Administrator reasonably determines that such holder has been, or within six months of the date of determination will be, satisfied in full for purposes of Distributions on a corresponding Primary Claim from the Primary Obligor until such time, if ever, the Plan Administrator reasonably determines that such holder has not and, within such six-month period, will not be satisfied in full from the Primary Obligor or as otherwise ordered by the Bankruptcy Court; *provided* that if and when a Distribution Holdback is released to the holder of such Allowed Guarantee Claim, such holder shall be entitled to interest actually accrued on such Distribution Holdback for the period commencing on the Effective Date.

## ARTICLE IX
## Procedures for Treating Disputed Claims

9.1    <u>Objections</u>.  Subject to Sections 6.2, 6.7, and 8.13 of the Plan, (a) a Debtor's rights to object to, oppose and defend against all Claims on any basis are fully preserved, and (b) notwithstanding that a Primary Claim is Allowed against a Primary Obligor, the Debtors reserve the right to object to, oppose and defend against all Guarantee Claims.  Subject to Sections 6.2 and 6.7 of the Plan, as of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator or, with respect to Claims against a Domestic Operating Company, the Domestic Operating Company Creditor Representative, which in each case shall consult with the applicable Debtor regarding the same.  Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is two (2) years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

9.2    <u>No Distributions Pending Allowance</u>.    Notwithstanding any other provision hereof and unless otherwise agreed, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Disputed portion of the Claim unless and until such Disputed portion of the Claim becomes an Allowed Claim.

9.3    <u>Reserved</u>.

9.4    <u>Resolution of Disputed Claims</u>.    On and after the Effective Date, the Plan Administrator and with respect to Claims against a Domestic Operating Company, the Domestic Operating Company Creditor Representative shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims in accordance with <u>Sections 6.1(b)(i)</u> and <u>6.2(b)</u> of the Plan, as applicable.

9.5    <u>Interest</u>.  If a Disputed Claim becomes an Allowed Claim, the holder of such Claim shall be entitled to interest for the period commencing on the Effective Date at the interest rate at which interest on the Reserved Distribution Amount of the applicable Debtor actually accrued during such period.

## ARTICLE X
## Liquidating Trust

10.1    <u>Execution of Liquidating Trust Agreement</u>.    After the Effective Date, (a) if the Plan Administrator and the board of directors of a Debtor other than a Domestic Operating Company determine that the establishment of a Liquidating Trust in respect of such Debtor is in the best interests of such Debtor and the holders of Allowed Claims against and Equity Interests in such Debtor, the Plan Administrator and a Liquidating Trustee shall execute a Liquidating Trust Agreement with respect to such Debtor, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries, or (b) if the Domestic Operating Company Creditor Representative determines that the establishment of a Liquidating Trust in respect of such

66

Domestic Operating Company is in the best interests of such Domestic Operating Company and the holders of Allowed Claims against and Equity Interests in such Domestic Operating Company, the Domestic Operating Company Creditor Representative and a Liquidating Trustee shall execute a Liquidating Trust Agreement with respect to such Domestic Operating Company, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries.  In the event of any conflict between the terms of this <u>Section 10.1</u> and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this <u>Section 10.1</u> shall govern.  A Liquidating Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of a Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.  Notwithstanding any of the foregoing, a Debtor shall not transfer assets to a Liquidating Trust until the Plan Administrator and the Domestic Operating Company Creditor Representative, as applicable, has reasonably concluded that such transfer will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation or such Debtor can make such transfer in a tax efficient manner taking into account the tax attributes of such other Debtors.

10.2    <u>Purpose of the Liquidating Trust</u>.  Each Liquidating Trust shall be established for the sole purpose of liquidating and distributing the assets of the Debtor contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

10.3    <u>Liquidating Trust Assets</u>.  Each Liquidating Trust shall consist of Liquidating Trust Assets.  After the creation of a Liquidating Trust pursuant to <u>Section 10.1</u> of the Plan, the Liquidating Trust Assets shall be transferred to a Liquidating Trust.  Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in a Liquidating Trust Agreement. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

10.4    <u>Administration of the Liquidating Trust</u>.  Each Liquidating Trust shall be administered by a Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

10.5    <u>Liquidating Trustee's Tax Power for Debtors</u>.  A Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtor.

10.6    <u>Cash Investments</u>.  A Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, *however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

10.7    Distribution of Liquidating Trust Interests.  A Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a semi-annual basis, all Available Cash of such Debtor (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Section 10.7), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonable incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or Liquidating Trust Agreement; provided, however, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this Section 10.7) of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

10.8    Federal Income Tax Treatment of Liquidating Trust.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, a Liquidating Trustee and Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests. Accordingly, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

10.9    Tax Reporting.

(a)    A Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section 10.9(a).  A Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)    Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets allocable Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust.  Similarly, taxable loss of a Liquidating Trust shall be allocated by reference

to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)    As soon as reasonably practicable after Liquidating Trust Assets are transferred to a Liquidating Trust, a Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)    A Liquidating Trustee shall be responsible for payment, out of Liquidating Trust Assets, of any taxes imposed on a Liquidating Trust or its assets.

(f)    A Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust or the Debtor for all taxable periods through the dissolution of such Liquidating Trust.

10.10    Dissolution.

(a)    A Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) a Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by a Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to Section 10.1 of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3)

69

years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel reasonably satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)    If at any time a Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, such Liquidating Trust, and any insider of such Liquidating Trustee, and (iii) dissolve such Liquidating Trust

10.11    Financial Reporting.  Following the Effective Date, and until the Closing Date, the Debtors shall file with the Bankruptcy Court: (i) monthly operating reports, and (ii) quarterly and annual reports (including, in each case, audited financial statements with descriptive notes thereto) providing an equivalent level of financial reporting information as, and subject to the same filing deadlines as, would be required by the Securities and Exchange Act of 1934 with respect to quarterly and annual reports, respectively, of a U.S. corporation subject to such reporting requirements.

## ARTICLE XI
## Treatment of Executory Contracts and Unexpired Leases

11.1    Executory Contracts and Unexpired Leases.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; *provided*, *however*, that the Debtors and Requisite Plan Proponents reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed.  The Debtors or Requisite Plan Proponents shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts and unexpired leases affected thereby.  The listing of or failure to list a document in the Plan Supplement shall not constitute an admission by the Debtors or the Plan Proponents that such document is or is not an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

11.2    Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.  To the extent any provision of an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

11.3    Cure of Defaults.  Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

11.4    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court and served upon the relevant Debtor no later than forty-five (45) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease. **Except as set forth in the preceding sentence, all such Claims must otherwise comply with the provisions of the Bar Date Order, including, without limitation, the Derivative Questionnaire and the Guarantee Questionnaire.  All such Claims not filed in accordance with the foregoing will be forever barred from assertion against the Debtors and their estates.**  Any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be classified as a General Unsecured Claim or Derivative Claim, as applicable, against the Debtor that is a party to such executory contract or unexpired lease.

11.5    Insurance Policies.  To the extent that any of the Debtors' insurance policies and any agreements, documents or instruments with insurers relating thereto constitute executory contracts, such contracts shall be deemed assumed under the Plan.  Nothing contained herein shall constitute or be deemed a waiver of any Litigation Claims that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

11.6    Indemnification Obligations.  Subject to the occurrence of the Effective Date, solely to the extent of insurance proceeds that are available to the Debtors in respect of such obligations, the obligations of each Debtor to indemnify, defend, reimburse or limit the liability of (a) directors, officers and any other employee who is held responsible for obligations of the Debtor incurred after the Commencement Date who are directors, officers or employees of such Debtor or a Debtor-Controlled Entity on or after the Commencement Date and (b) Released

71

Parties, respectively, against any Claims or Causes of Action as provided in the Debtor's articles of organization, certificates of incorporation, bylaws, other organizational documents or applicable law, shall survive confirmation of the Plan, shall be assumed by such Debtor and will remain in effect after the Effective Date.  Nothing in the Plan shall in any way limit, modify, alter or amend the Debtor's limitation of liability of the Independent Directors set forth in Section 10.1 of the Restated Certificate of Incorporation of LBHI.

## ARTICLE XII
## Effectiveness of the Plan

12.1    Conditions Precedent to the Effective Date of the Plan.  The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)    The Confirmation Order, in form and substance reasonably satisfactory to the Requisite Plan Proponents, shall have been entered;

(b)    All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance reasonably satisfactory to the Requisite Plan Proponents; and

(c)    All authorizations, consents and regulatory approvals, if any, required in connection with the consummation of the Plan are obtained and not revoked.

12.2    Waiver of Conditions.    Notwithstanding the foregoing, the Requisite Plan Proponents reserve their rights to waive the occurrence of the conditions precedent to the Effective Date set forth in Section 12.1 of the Plan other than Section 12.1(a) of the Plan.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Requisite Plan Proponents decide, that any of the conditions precedent to the Effective Date of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Requisite Plan Proponents shall file a notice of the inability to satisfy such condition prior to the Effective Date with the Bankruptcy Court.

## ARTICLE XIII
## Effects of Confirmation

13.1    **Vesting of Assets.  Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Estate of a Debtor shall vest in that Debtor except as provided herein.  From and after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the**

Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided herein.

13.2    **Binding Effect.  On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.**

13.3    Release and Exculpation.  On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for, or other assertion of liability for, any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, and (ii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the Debtors or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Model Code of Professional Responsibility.

13.4    Discharge.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtors are not entitled to receive a discharge under section 1141 of the Bankruptcy Code from Claims against, Equity Interests in, rights against or liabilities against the Debtors**.**

13.5    **Injunction.  Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any**

73

**encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan. For the avoidance of doubt, as to Claims and Causes of Action against Debtors, this Section 13.5 of the Plan enjoins actions against Debtors solely to the extent of such Claims and Causes of Action against the Debtors that are released pursuant to, and subject to the limitations of, Section 13.3 of this Plan.**

13.6    <u>United States Government</u>.  As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall discharge, release or otherwise preclude: (a) any liability of the Debtors arising on or after the Effective Date; (b) any liability that is not a Claim against a Debtor; (c) any valid right of setoff or recoupment; or (d) any liability of the Debtors arising under environmental or criminal laws as the owner or operator of property that such Debtor owns after the Effective Date.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

13.7    <u>Terms of Injunctions or Stays</u>.   Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

13.8    <u>Retention of Litigation Claims and Reservation of Rights</u>.  Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation, (a) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under any tax sharing agreement among the Debtors and their Affiliates (including the tax sharing agreement among the Debtors and LBI based on their regular and consistent course of conduct over many years), (c) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff or other legal or equitable defense.  The Debtors shall have, retain, reserve, and may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the Chapter 11 Cases had not been commenced.

## ARTICLE XIV
## Retention of Jurisdiction

14.1    Retention of Jurisdiction.    The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases;

(c)    To hear and determine any objection to or motion to estimate Claims;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any agreements or documents incorporated in or contemplated by the Plan, including, without limitation, Sections 6.4, 6.5, 6.6, 13.3, 13.4 and 13.5 of the Plan;

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)    To hear and determine any actions brought against the Plan Administrator or the Domestic Operating Company Creditor Representative in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan;

(k)    To hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located;

(l)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns of the Debtors and of any Liquidating Trusts for any and all taxable periods ending after the Commencement Date through the Closing Date;

(m)    To hear all matters relating to <u>Article XIII</u> of the Plan, including, without limitation, all matters relating to the releases, exculpation, and injunction granted thereunder.

(n)    To hear all matters relating to the Plan Trust;

(o)    To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(p)    To enter a final decree closing the Chapter 11 Cases;

*provided, however,* that nothing in this Section 14.1 of the Plan shall be construed so as to limit the jurisdiction of any foreign court, tribunal or other body overseeing or otherwise supervising a Foreign Proceeding.

## ARTICLE XV
## <u>Miscellaneous Provisions</u>

15.1    <u>Post-Effective Date Role of Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (i) implementation of the Plan through the date of the initial Distribution in accordance with <u>Section 8.3</u> of the Plan, (ii) defending any appeals from the Confirmation Order to final disposition of such appeals, and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date.  Other than with respect to the foregoing, the members of the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents shall terminate.

15.2    <u>Issuance of New Securities</u>.  In the discretion of the Plan Administrator, each Debtor or Debtor Controlled-Entity, other than a Domestic Operating Company, (a) may form and transfer certain assets of such entity to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities (other than Domestic Operating Companies) and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan.  In the discretion of the Domestic Operating Company Creditor Representative, each Domestic Operating Company, (a) may form and transfer certain assets to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Domestic Operating Companies and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan.  In the event that New Securities are to be issued, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the

entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan. The New Securities shall be valued as of the date of the issuance and the holders of Allowed Claims or Equity Interests receiving such New Securities shall be deemed satisfied to the extent of the value of the New Securities.

15.3    <u>Exemption from Securities Laws</u>.    To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of any New Securities or Liquidating Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

15.4    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition of assets contemplated by the Plan (including by a Liquidating Trust), shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

15.5    <u>Plan Supplement</u>.    The Plan Supplement, in form and substance reasonably satisfactory to the Requisite Plan Proponents, shall be filed with the Bankruptcy Court no later than ten (10) days prior to the Voting Deadline.  The Plan Supplement shall include (without limitation), each in form and substance reasonably satisfactory to the Requisite Plan Proponents: the Debtor Allocation Agreement, the amended certificate and by-laws of the Debtors (if any) in accordance with <u>Section 7.7</u>, the Plan Trust Agreement, the identities of the Primary Creditor Representative,  potential Additional Creditor Representatives, and members of the Director Selection Committee, the compensation plan for the Domestic Operating Company Creditor Representative and any attorneys or professionals retained thereby, the agreed amounts, if any, of the Senior Intercompany Claims and Intercompany Claims of Cross-Border Protocol Parties, the Structured Securities Maximum Allowable Claims Summary, and a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with <u>Section 11.1</u> .  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at www.lehman-docket.com or by request to the Debtors in accordance with <u>Section 15.10</u> of the Plan.

15.6    <u>Amendment or Modification of Plan</u>.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Requisite Plan Proponents reserve the right to alter, amend or modify this Plan and/or the Disclosure Statement, including, without limitation, (a) alterations, amendments, or modifications of or relating to (i) the determination and classification of Subordinated Notes in LBHI Classes 10A, 10B, and 10C, (ii) the reallocation of Distributions otherwise distributable to holders of such Subordinated Notes, and (iii) the determination and classification of Allowed Claims entitled to receive the benefit of such reallocation, and (b) alterations, amendments, or modifications to exclude one or more Debtors from this Plan; *provided that* the Plan and Disclosure Statement, as altered, amended or modified satisfies the conditions of sections 1122

and 1123 of the Bankruptcy Code, as applicable, and the Requisite Plan Proponents shall have complied with section 1125 of the Bankruptcy Code. Nothing in the Plan, including, without limitation, with respect to the foregoing clauses (a) (i), (ii), or (iii), of this Section 15.6, shall constitute an admission by any current or former Plan Proponent or any other person. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claims of such holder.

15.7    Withdrawal or Revocation of the Plan. The Requisite Plan Proponents reserve the right to withdraw or revoke the Plan, in writing, at any time prior to the Confirmation Date. If the Requisite Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any current or former Plan Proponent or any other person in any further proceedings involving the Debtors. Furthermore, each Plan Proponent reserves the right to withdraw from the Plan, solely with respect to itself, in writing executed by such Plan Proponent and filed with the Bankruptcy Court, at any time prior to the Confirmation Date.

15.8    Courts of Competent Jurisdiction. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.9    Transactions on Business Days. If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

15.10    Notices. Any notices to or requests of the Debtors or the Plan Proponents by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to any Plan Proponent, to the address provided for the attorneys for such Plan Proponent in the cover pages to the Plan.

If to any Debtor:

> c/o Lehman Brothers Holdings
> Inc. 1271 Avenue of the Americas
> New York, NY 10020
> Attention:    Bryan Marsal
> John Suckow

with a copy to:

> Weil, Gotshal & Manges LLP 767
> Fifth Avenue
> New York, New York 10153
> Re:   Lehman Brothers

and if to any Domestic Operating Company,
with a copy to:

> Domestic Operating Company
> Creditor Representative
> at the address identified in  the
> Plan Supplement

15.11  <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Requisite Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.12  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

15.13  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

15.14  <u>Exhibits</u>.  All exhibits and schedules to the Plan as well as the Plan Supplement and any exhibits or schedules thereto are incorporated into and are a part of the Plan as if set forth in full herein.

15.15  <u>Successors and Assigns</u>.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

Dated:      New York, New York
            April 25, 2011

*[Signature Pages Follow]*

ANGELO, GORDON & CO., L.P. on behalf of certain managed accounts and funds

By:      /s/ Thomas M. Fuller
Name:    Thomas M. Fuller
Title:   Authorized Signatory
Address: 245 Park Avenue, 26th Floor
         New York, NY 10167
Attn:    Thomas Boyce
Tel:     (212) 692-2003
Fax:     (212) 867-6395
Email:   tboyce@angelogordon.com

CONTRARIAN CAPITAL MANAGEMENT, LLC

By: _____ /s/ Jon Bauer _____

Name:    Jon Bauer

Title:    Managing Member

Address:  411 West Putnam Ave.
          Greenwich, CT  06830

Tel:      (203) 862-8200

Fax:

Email:    jbauer@contrariancapital.com

Copy to:  eschwartz@contrariancapital.com

CREDIT AGRICOLE CIB


By: _____ /s/ Alan Sidrane _____
Name:    Alan Sidrane
Title:    Managing Director
Address: 1301 Avenue of the Americas
         New York, NY 10019
Tel:     212-261-7875
Fax:     212-261-3259
Email:   alan.sidrane@ca-cib.com


By: _____ /s/ Kathleen Sweeney _____
Name:    Kathleen Sweeney
Title:    Managing Director
Address: 1301 Avenue of the Americas
         New York, NY 10019
Tel:     212-261-7648
Fax:     212-261-3259
Email:   kathleen.sweeney@ca-cib.com

CREDIT SUISSE INTERNATIONAL

By: _____ /s/ Bik Kwan Chung _____
Name:    Bik Kwan Chung
Title:    Authorized Signatory
Address:

Tel:
Fax:
Email:

By: _____ /s/ Carole Villoresi _____
Name:    Carole Villoresi
Title:    Authorized Signatory
Address:

Tel:
Fax:
Email:

CYRUS CAPITAL PARTNERS, LP
On behalf of funds managed by it


By: _____ /s/ David Milich _____
Name:    David Milich
Title:    Authorized Signatory
Address:  399 Park Avenue
          New York, NY 10022
Attention: Svetoslav Nikov
Tel:      212-380-5822
Fax:      212-380-5922
Email:    snikov@cyruscapital.com

**D. E. SHAW COMPOSITE PORTFOLIOS, L.L.C.**

By: _____ /s/ Max Stone _____

Name:    Max Stone

Title:    Authorized Signatory

Address:  1166 Avenue of the Americas, 9th Fl.
          New York, NY 10036

Tel:      212-478-0000

Fax:      212-478-0100

D. E. SHAW OCULUS PORTFOLIOS, L.L.C.


By: _____ /s/ Max Stone _____

Name:    Max Stone

Title:    Authorized Signatory

Address:  1166 Avenue of the Americas, 9th Fl.
          New York, NY 10036

Tel:     212-478-0000

Fax:     212-478-0100

DEUTSCHE BANK AG

By:     /s/ Ernest C. Goodrich
Name:    Ernest C. Goodrich, Jr.
Title:     Managing Director & Senior Counsel
Address:  60 Wall Street
          New York, NY 10005
Tel:      212-250-7636
Fax:
Email:    chip.goodrich@db.com

By:     /s/ Steven Kessler
Name:    Steven Kessler
Title:     Director
Address:  60 Wall Street
          New York, NY 10005
Tel:      212-250-8202
Fax:
Email:    steven.kessler@db.com

Signature Page to Plan

GOLDENTREE ASSET MANAGEMENT, LP


By: _____/s/ Barry Ritholz_____
Name:    Barry Ritholz
Title:    General Counsel
Address:  300 Park Avenue, 21st Floor
          New York, NY 10021
Tel:      212-847-3420
Fax:      212-847-3494
Email:    britholz@goldentree.com

Signature Page to Plan

GOLDMAN SACHS BANK USA (SUCCESSOR BY
MERGER TO GOLDMAN SACHS CAPITAL MARKETS,
L.P.)


By: _____ /s/ Kevin G. Byrne _____
Name:    Kevin G. Byrne
Title:    Chief Financial Officer
Address: 200 West Street
         New York, NY 10282
Tel:     212-902-3076
Fax:     917-977-4570
Email:   kevin.byrne@gs.com

GOLDMAN SACHS INTERNATIONAL


By:     /s/ Andrew Bagley
Name:   Andrew Bagley
Title:    Managing Director
Address:  Peterborough Court, 133 Fleet St.,
          London EC4A 2BB
Tel:     + 44 20 7552 2088
Fax:
Email:   Andrew.bagley@gs.com

HAYMAN CAPITAL MANAGEMENT, LP


By: _____ /s/ Debby LaMoy _____

Name:    Debby LaMoy

Title:    Chief Operating Officer

Address: 2101 Cedar Springs Road, Suite 1400
         Dallas, Texas  75019

Tel:     214-347-8050

Fax:     214-347-8051

Email:   dl@haymancapital.com

KNIGHTHEAD CAPITAL MANAGEMENT, LLC
solely as investment manager for certain funds and accounts

By: _____ /s/ Thomas Wagner _____

Name:     Thomas Wagner
Title:      Managing Member
Address:  623 Fifth Avenue, 29th Floor
              New York, NY 10022
Tel:        (212) 356-2900

MASON CAPITAL MANAGEMENT LLC


By: _____ /s/ John Grizzetti _____
Name:     John Grizzetti
Title:      Chief Financial Officer
Address:  110 East 59th Street, 30th Fl
            New York, NY 10022
Tel:       212.771.1206
Fax:       212.644.4264
Email:     johng@masoncap.com

MORGAN STANLEY & CO. INTERNATIONAL PLC.

By:    /s/ Brian Cripps
Name:    BRIAN CRIPPS
Title:    Authorised Signatory
Address:  20, Bank Street, Canary Wharf
          London E14 4AD
Tel:     + 44 207 677 7974/9891
Fax:     + 44 207 056 1846/0868
Email:    lndistressed@morganstanley.com

MORGAN STANLEY CAPITAL SERVICES INC.

By: _____/s/ Donna M. Souza_____
Name:    Donna Souza
Title:    Vice President
Address:  1585 Broadway
          New York, NY 10036
Tel:      212-761-1054
Fax:      212-507-3572
Email:    donna.souza@morganstanley.com

Signature Page to Plan

MOUNT KELLETT CAPITAL MANAGEMENT
for and on behalf of Mount Kellett Master Fund II, L.P.

By:     /s/ Jonathan Fiorello

Name:    Jonathan Fiorello

Title:    Chief Operating Officer

Address: 623 5th Avenue, 18th Floor
         New York, NY 10022

Tel:    212-588-6128

Fax:

Email:    jporter@mountkellett.com

OAKTREE CAPITAL MANAGEMENT, L.P., SOLELY IN ITS CAPACITY AS AGENT ON BEHALF OF CERTAIN FUNDS ADVISED BY IT OR THEIR RESPECTIVE SUBSIDIARIES

By:    /s/ Kenneth Liang
Name:    Kenneth Liang
Title:    Managing Director
Address:  333 South Grand Avenue, 28th Floor
        Los Angeles, CA 90071
Tel:    (213) 830-6422
Fax:    (213) 830-6494
Email:   kliang@oaktreecapital.com


By:    /s/ Mahesh Balakrishnan
Name:    Mahesh Balakrishnan
Title:    Vice President
Address:  333 South Grand Avenue, 28th Floor
        Los Angeles, CA 90071
Tel:    (213) 830-6755
Fax:    (213) 830-6494
Email:   mbalakrishnan@oaktreecapital.com

THE ROYAL BANK OF SCOTLAND PLC


By: _____/s/ Michael Fabiano_____
Name:    Michael Fabiano
Title:     Managing Director
Address: 600 Washington Boulevard
            Stamford, CT 06901
Tel:      (203) 897-3663
Fax:      (203) 897-3418
Email:   michael.fabiano@rbs.com

SERENGETI ASSET MANAGEMENT LP


By:      /s/ Marc Baum
Name:    Marc Baum
Title:     Director
Address:   632 Broadway
           New York, NY  10012
Tel:      (212) 466-2331
Fax:      (212) 672-2330
Email:    mbaum@serengeti-am.com

SILVER POINT CAPITAL, L.P. ON BEHALF OF ITS
AFFILIATED INVESTMENT FUNDS

By:      /s/ Edward A. Mulé
Name:    Edward A. Mulé
Title:     CEO
Address:   2 Greenwich Plaza
           Greenwich, CT 06830
Tel:      203-542-4010
Fax:     203-542-4110
Email:    emule@silverpointcapital.com

STATE STREET BANK AND TRUST COMPANY


By: _____ /s/ David C. Phelan _____
Name:    David C. Phelan
Title:    Executive Vice President and General Counsel
Address:  One Lincoln Street, SFC-21
          Boston, MA 02111
Tel:     617-664-1783
Fax:     617-664-4310
Email:    dcphelan@statestreet.com

Signature Page to Plan

YORK CAPITAL MANAGEMENT GLOBAL ADVISORS, LLC, o/b/o funds and accounts managed by it

By: _____ /s/ Adam J. Semler _____

Name:      Adam J. Semler

Title:      Chief Operating Officer

Address:  767 5th Avenue, 17th Floor,
              New York, NY 10153

Tel:        (212) 300-1300

Fax:        (212) 300-1301

Email:

Signature Page to Plan

# Schedule A – Plan Proponents

Each of the following (on its own behalf, on behalf of its affiliated investment funds, and/or on behalf of funds advised by it or its affiliates, as applicable) is a Plan Proponent under the Plan:

Angelo, Gordon & Co., L.P.
Contrarian Capital Management, LLC
Credit Agricole CIB
Credit Suisse International
Cyrus Capital Partners, LP
D. E. Shaw Composite Portfolios, L.L.C.
D. E. Shaw Oculus Portfolios, L.L.C.
Deutsche Bank AG
Goldentree Asset Management, LP
Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.)
Goldman Sachs International
Hayman Capital Management, LP
Knighthead Capital Management, LLC
Mason Capital Management LLC
Morgan Stanley & Co. International plc.
Morgan Stanley Capital Services Inc.
Mount Kellett Capital Management
Oaktree Capital Management, L.P.
The Royal Bank of Scotland plc
Serengeti Asset Management LP
Silver Point Capital, L.P.
State Street Bank and Trust Company
York Capital Management Global Advisors, LLC

# EXHIBIT A

## Structured Securities Valuation Methodologies

This exhibit sets forth the Structured Securities Valuation Methodologies that are applicable to all of the Structured Securities. The Structured Securities Valuation Methodology provides that, in the aggregate, the value of Structured Securities issued by (i) LBT is $30,172,529,265, (ii) LBSN is $964,238,804, (iii) LBHI is $5,480,948,872, and (iv) certain other, smaller issuers such as Bankhaus, LBXP, and LBF is, in the aggregate, $346,314,486. The Allowed Claim amounts for each specific security are set forth on www.lehman-docket.com.

### 1.    Categorization

In connection with evaluating the Structured Securities Claims, LBHI reviewed approximately 5,000 securities issuances. Based on the terms and characteristics of each of the Structured Securities, LBHI separated the Structured Securities into the three categories described below.

#### a.    Par Par Notes

"Par Par Notes" are either (A) notes for which the terms of the contract provide for either (i) redemption at par at maturity (whether or not described as being "principal protected") and that pay non-contingent periodic interest or (ii) redemption at par, no payments of interest and do not reflect an accrual yield; or (B) FMV Notes (as defined below) that are described as at least 90% principal protected. Notes that redeem at par may indicate so on their face or may indicate a redemption at par by a formula which calculates to a minimum of par. If there are any factors that may result in a holder of a note receiving less than par for a note upon maturity, the note is not classified as a Par Par Note. This analysis is made without any regard to the probability of redemption in an amount less than par.[1]

#### b.    Zero Coupon Notes

"Zero Coupon Notes" are notes that do not bear interest and were issued at a significant discount to their face amount (and such discount was not solely attributable to distribution fees paid to dealers). These notes specify an accrual yield in their terms and do not pay interest pursuant to their terms.

#### c.    Fair Market Value Notes

Fair Market Value Notes ("FMV Notes") are notes that cannot be included in either of the categories set forth in the two preceding paragraphs. Certain of the FMV Notes provide that a portion (less than 90%) of the final redemption amount is "protected" but interest is fully contingent, while others provide that the final redemption amount is fully contingent. In

---

[1]    The Allowed Claim amounts for the Par Par Notes set forth on www.lehman-docket.com may not include all accrued and unpaid interest as of the Commencement Date. Such amounts may change in the future to include such accrued and unpaid interest.

classifying the FMV Notes, no consideration has been given to probabilities of contingencies occurring. The mere fact that the note is linked to the performance of an Underlying is enough to classify the instrument as a FMV Note. FMV Notes include, without limitation, (a) notes that redeem at par but pay contingent interest, (b) notes that are not redeemable at par and pay simple interest, (c) notes that are not redeemable at par and pay contingent interest and (d) notes that are not redeemable at par and pay no interest at all or pay simple interest for a time converting to contingent interest. The examples above are not intended to be an exhaustive list of the types of notes that are categorized as FMV Notes.

### 2. Lehman's Accounting Treatment of Structured Securities Prior to the Commencement Date

The Structured Securities Valuation Methodology takes into account Lehman's firm-wide accounting treatment of Structured Securities prior to the Commencement Date and applies the overlay of the Bankruptcy Code rules for determining the appropriate amount of Claims. Prior to the Commencement Date, Lehman's balance sheet included as a liability the Outstanding Notional Amount of Structured Securities, as adjusted to take into account (i) the fair value of such securities including the derivative portion (the "FV") and (ii) Lehman's credit risk; provided that with respect to the LBHI Structured Notes, after August 31, 2008, Lehman's balance sheet did not take into account Lehman's credit risk.

The fair value adjustment (the "FVA") is based on the value of Lehman's offsetting derivative hedge trade. In order to hedge exposure to the Structured Securities, certain of the Structured Securities Issuers entered into derivative contracts with other Lehman entities. The mark-to-market value of the derivative hedge was calculated as of the end of the day on September 12, 2008, based upon various Lehman internal derivative models in accordance with the methodology used on previous audited financials. Because interest continued to accrue over the weekend, the September 14, 2008 mark-to-market valuations represent mark-to-market valuations as of September 12, 2008 plus accrued interest on such valuations through the end of the day on September 14, 2008.

### 3. The Structured Securities Valuation Methodology

#### a. General Principles for Valuing Structured Securities Claims Based on Bankruptcy Code

The following general principles apply to the Structured Securities Methodology:

(i) A claim that arises from the Guarantee of an obligation is generally treated no differently under section 502 of the Bankruptcy Code than a direct claim arising from the same obligation would be treated under the Code.

(ii) Under section 502(b) of the Bankruptcy Code, the Bankruptcy Court must determine the amount of a claim as of the Commencement Date. Consequently, interest stops accruing (for Par Par Notes and FMV Notes that bear interest) and stops accreting (for Zero Coupon Notes) as of the Commencement Date.

(iii)    Acceleration of the Structured Securities is not discussed herein because based on the information available there were no Structured Securities accelerated as of the Commencement Date.    Any attempted acceleration after the Commencement Date is disregarded because a creditor may not accelerate debt post petition without first seeking relief from the automatic stay. *See, e.g., In re PCH Assocs.*, 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) ("A post-filing acceleration of the Note[] would clearly have violated the automatic stay of section 362 of the Code and, therefore, would have been null and void."); *In re Texaco Inc.*, 73 B.R. 960, 967 (Bankr. S.D.N.Y. 1987) (holding that acceleration of the debt under the contract's terms was proscribed by the automatic stay); *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 298 (Bankr. S.D.N.Y. 1984) (explaining that "tak[ing] overt steps to accelerate the debt without first seeking a modification of the stay ... would have violated the stay."), *aff'd in part*, 60 B.R. 403 (S.D.N.Y. 1986). As a result, acceleration notices received by LBHI after the Commencement Date in violation of the automatic stay are void and have no effect on claims amounts. *See Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) ("any proceedings or actions [that violate the automatic stay] are void and without vitality if they occur after the automatic stay takes effect.").

(iv)    A credit value adjustment ("CVA") using LBHI's credit spread as of the Commencement Date is not included for the purpose of determining an Allowed Claim under section 502 of the Bankruptcy Code. Accordingly, LBHI's method of determining Structured Securities Claims will add-back the reduction in the Structured Securities liabilities set forth on Lehman's books and records that recognized the credit spread as of the Commencement Date (the "CVA Add-Back"). In addition, for the reasons set forth below, in determining Allowed Claims for Structured Securities the FVA should only apply to FMV Notes. Accordingly, for all categories of Structured Securities *except* FMV Notes, any discount taken on account of the FVA is added back (the "FVA Add-Back").

### b.    Application of the General Principles to Structured Securities

#### (i)    Par Par Notes

With respect to Par Par Notes, Allowed Claims will be equal to the sum of the principal amount *plus* any matured interest (whether or not such interest is contingent) as of the Commencement Date, regardless of principal protection. To the extent that interest is unmatured as of the Commencement Date, it is disallowed. The Allowed Claim amount includes a CVA Add-Back and an FVA Add-Back that adjusts the fair market value of the note to the original notional of the outstanding issue.

#### (ii)    Zero Coupon

With respect to Zero Coupon Notes, Allowed Claims will be equal to the sum of the issue price *plus* any accreted interest as of the Commencement Date. The Allowed Claim amount includes a CVA Add-Back and an FVA Add-Back calculated based on the difference between the fair market value and the original issuance yield to adjust the value of the note back to the original issuance yield.

(iii)    **FMV Notes**

With respect to the FMV Notes, if a Claim is contingent or unliquidated, the Claim is estimated under section 502(c) of the Bankruptcy Code using "whatever method is best suited to the particular contingencies at issue." *See Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982). The method of estimation must be (1) suited to the circumstances and (2) accommodate the underlying purposes of the Bankruptcy Code. *See id.* The point is to recognize what the creditor bargained for, while avoiding a windfall to any party.

The FMV Notes present unique circumstances and challenges due to the diversity and complexity of their structures, the number of issuers and consequent intercompany relationships they entail, and the numerosity and dispersion of investors. Estimating the value of a FMV Note by the replacement cost of the lost investment (*i.e.*, its fair market value) as of the Commencement Date achieves these objectives, is economically realistic, promotes certainty, and eases the administration of the estate, because it follows LBHI's pre-petition internal accounting methodology.

Prior to the Commencement Date, Lehman's fair market value determination inherently incorporated the concept of discounting expected cash flows back to the Commencement Date using a market rate plus LBHI's credit spread. For purposes of the Structured Securities Methodology, however, a CVA Add-Back (but no FVA Add-Back) is applied in order to eliminate the discount for LBHI's credit spread as of the Commencement Date.

c.    **Application of the Structured Securities Valuation Methodology to the Structured Securities**

Based upon the Structured Securities Methodology, the Allowed Claims for each category of Structured Securities have been calculated and are included below. In addition, the proposed valuation for each Structured Security issued by LBHI, LBT, and LBSN, listed by ISIN, is set forth on www.lehman-docket.com (the proposed ISIN by ISIN valuation for each Structured Security issued by LXSP, LBB and LBF will also be set forth on www.lehman-docket.com in due course).

**LBT Allowed Claims Summary**

| Valuation Category | # of ISINs | % of LBT Total Notional | A<br>FV with CVA | B<br>CVA Add-Back | C<br>FVA Add-Back | A + B + C ≤ D<br>Allowed Claims (see Note 1) |
|---|---|---|---|---|---|---|
| FAIR MARKET VALUE NOTES | 2,192 | 36% | $8,120,941,312 | $834,000,998 | $0 | $9,016,634,081 |
| PAR PAR NOTES | 1,589 | 60% | 17,260,673,745 | 1,888,576,795 | 899,898,465 | 20,048,550,005 |
| ZERO COUPON NOTES | 42 | 4% | 784,033,099 | 182,044,408 | 43,325,413 | 1,009,402,920 |
| To Be Determined (see Note 2) | 20 | 0% | 84,994,029 | 3,151,117 | 9,797,114 | 97,942,260 |
| LBT Totals | 3,843 | 100% | $26,250,042,185 | $2,907,773,318 | $953,021,992 | $30,172,529,265 |

Notes:

1. The Allowed Claims amount by ISIN is floored at $0, therefore A + B + C may be less than or equal to D, except for Par Par notes which are limited to Par. The maximum allowed claim amounts for the Par Par notes may not include all accrued and unpaid interest as of the Commencement Date. Such amounts may change in the future to include such accrued and unpaid interest.

2. The classification of To Be Determined (TBD) refers to those issuances for which there is insufficient data in order to properly review and categorize. An FVA Add Back is applied to these issuances on the assumption that all TBDs are Par Par notes.

## LBHI Structured Debt Allowed Claims Summary

| Valuation Category | # of ISINs | % of LBHI Structured Debt Total Notional | A<br>FV with CVA | B<br>CVA Add-Back | C<br>FVA Add-Back | D<br>Accrued Interest | A + B + C + D ≤ E<br>Allowed Claims (see Note 1) |
|---|---|---|---|---|---|---|---|
| FAIR MARKET VALUE NOTES | 213 | 26% | $1,145,126,151 | $55,514,736 | $0 | $8,647,242 | $1,209,993,155 |
| PAR PAR NOTES (see Note 2) | 343 | 62% | 3,240,463,704 | 415,831,282 | (112,235,494) | 22,050,782 | 3,566,110,274 |
| To Be Determined (see Note 3) | 44 | 12% | 681,750,051 | 26,419,805 | (9,917,815) | 6,593,402 | 704,845,443 |
| LBHI Structured Debt Totals | 600 | 100% | $5,067,339,906 | $497,765,823 | ($122,153,309) | $37,291,426 | $5,480,948,872 |

Notes:

1. The Allowed Claims amount by ISIN is floored at $0, therefore A + B + C + D may be less than or equal to E, except for Par Par notes which are limited to Par. The maximum allowed claim amounts for the Par Par notes may not include all accrued and unpaid interest as of the Commencement Date. Such amounts may change in the future to include such accrued and unpaid interest.

2. The aggregate FVA Add-Back is negative for LBHI Structured Debt because as of LBHI's Commencement Date, certain FMV Notes that are at least 90% principal protected, and are therefore categorized as Par Par Notes, had a fair market value that exceeded par.

3. The classification of To Be Determined (TBD) refers to those issuances for which there is insufficient data in order to properly review and categorize. An FVA Add Back is applied to these issuances on the assumption that all TBDs are Par Par notes.

**LBSN Allowed Claims Summary**

| Valuation Category | # of ISINs | Allowed Claims |
|---|---|---|
| FAIR MARKET VALUE CERTIFICATES AND WARRANTS | 292 | $888,570,526 |
| PAR PAR CERTIFICATES | 2 | 2,950,980 |
| To Be Determined (see Note 1) | 22 | 72,717,298 |
| **LBSN Totals** | **316** | **$964,238,804** |

Notes:

1. The classification of To Be Determined (TBD) refers to those issuances for which there is insufficient data in order to properly review and categorize.

# <u>Exhibit 10</u>

***The Filing Debtors' Reallocation From Subordinated Notes to Senior Obligations (Debtors' Disclosure Statement Exhibit 10)***

Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth in the Debtors' Disclosure Statement or the exhibits thereto. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein.  Nothing contained the Debtors' Disclosure Statement or in the exhibits thereto shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained in the Debtors' Disclosure Statement, including any exhibits thereto.

*Please refer Exhibit 10 to the Debtors' Disclosure Statement, dated as of January 25, 2011.*

# Exhibit 2

***The Filing Debtors' Published Balance Sheets of Each Filing Debtor (i) As of the Applicable Commencement Date for Each Filing Debtor; and (ii) As of June 30, 2010; and Reconciliation of Cash Flow Estimates (Gross Receipts) to the Balance Sheets, As of June 30, 2010 (Debtors' Disclosure Statement Exhibits 2A, 2B and 2C)***

Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth in the Debtors' Disclosure Statement or the exhibits thereto. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein.  Nothing contained the Debtors' Disclosure Statement or in the exhibits thereto shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained in the Debtors' Disclosure Statement, including any exhibits thereto.

*Please refer Exhibit 2 to the Debtors' Disclosure Statement, dated as of January 25, 2011.*

## **Exhibit 3**

### *Reserved*

# Exhibit 4

***The Plan Proponents' Recovery Analysis***

<u>Exhibit 4</u>

Recovery Analysis for Each Debtor

1.      **General Assumptions**

        The recovery analysis in this Disclosure Statement (the "<u>Recovery Analysis</u>") has
been prepared by the financial advisor for certain of the Plan Proponents.  Unless otherwise
noted, the information and data included in the Recovery Analysis substantially rely on
information contained in the Debtors' Disclosure Statement, including without limitation in the
recovery analysis presented as Exhibit 4 to the Debtors' Disclosure Statement and the Estimates
of Claims and Claims Data set forth in Exhibit 6 to the Debtors' Disclosure Statement.
**<u>NEITHER THE PLAN PROPONENTS NOR ANY OF THEIR RESPECTIVE
ADVISORS HAVE CONDUCTED ANY DUE DILIGENCE OR INDEPENDENT
VERIFICATION OF ANY OF THE FACTUAL INFORMATION, DATA OR
ASSUMPTIONS SET FORTH BY THE FILING DEBTORS AND RELIED UPON
SOLELY FOR PURPOSES OF THIS DISCLOSURE STATEMENT IN THE PLAN
PROPONENTS' RECOVERY ANALYSIS.  THE PLAN PROPONENTS CAUTION
THAT THEY DO NOT AND CANNOT MAKE ANY REPRESENTATIONS AS TO THE
ACCURACY OF ANY THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS
RELIED UPON OR INCORPORATED HEREIN.</u>  <u>NOTHING CONTAINED IN THE
DEBTORS' DISCLOSURE STATEMENT OR IN THE EXHIBITS THERETO SHALL
BE DEEMED TO CONSTITUTE AN ADMISSION OF A PLAN PROPONENT OR A
WAIVER OR RELEASE OF ANY CLAIM BY OR AGAINST THE DEBTORS OR ANY
OTHER PERSON OR TO PREJUDICE IN ANY MANNER THE RIGHTS OF ANY
PLAN PROPONENT OR ANY OTHER PERSON IN ANY FURTHER PROCEEDINGS
INVOLVING THE DEBTORS.</u>**

        This Recovery Analysis is based on the financial activity of the Debtors and their
Affiliates as of June 30, 2010, including certain pro forma adjustments for material subsequent
events, as described in the Debtors' Disclosure Statement.  The information is presented on a
Debtor by Debtor basis and recoveries include estimated recoveries from other Debtors, Debtor-
Controlled Entities and Non-Controlled Affiliates by way of payment on Intercompany Claims
or equity Distributions.  Intercompany Claims against the Debtors asserted by other Debtors,
Debtor-Controlled Entities and Non-Controlled Affiliates are treated in accordance with the
terms of the Plan.  Certain significant events that occurred subsequent to June 30, 2010,
including (i) the Banks Settlements with Aurora Bank and Woodlands, (ii) certain transactions
that are expected to occur, including a potential acquisition of certain securitization instruments
from Bankhaus, and (iii) estimated recoveries on collateral received as a result of the CDA with
JPMorgan (the Debtors continue to review the assets received as to those for which market
values are not readily available), are incorporated in the Filing Debtors' recovery analysis –
based on available information at the time of the preparation of the analysis – and are also
recognized in this Recovery Analysis.

        The recoveries for each Debtor are based on the Filing Debtors' expected
undiscounted cash flows, from assets managed in an orderly wind down and/or sale over the
period from June 30, 2010 through December 31, 2014 (the "<u>Forecast Period</u>").  For unliquidated

assets at the end of the expected recovery period, the Filing Debtors have estimated the assets' market value at that time.  The Recovery Analysis amounts differ from the presentation of assets in the Balance Sheets disclosed by the Filing Debtors' MORs, where assets are generally presented on a discounted cash flow basis.  A description of the manner in which assets are presented in the MORs is included in each MOR and the notes thereto.

In preparing this Recovery Analysis, the Plan Proponents substantially relied on the Filing Debtors' recovery analysis, which makes various estimates and assumptions based on available information.  Actual results may differ from estimated recoveries and could have a material effect on the estimated recovery percentages.  As more information becomes available to the Plan Proponents, including the outcome of various negotiations and litigation, estimates included in this Recovery Analysis may change, potentially in a material respect.  <u>THE PLAN PROPONENTS RESERVE THE RIGHT TO CHALLENGE OR MODIFY ANY SUCH ESTIMATES OR ANY OTHER INFORMATION, DATA, OR ASSUMPTIONS CONTAINED IN THIS RECOVERY ANALYSIS.</u>

The Filing Debtors have previously categorized their assets into various classes for balance sheet reporting.  Below is a short description of these categories and the treatment accorded to them in the Recovery Analysis.  All descriptions should be read in conjunction with the notes provided in the MORs.

### a.    Cash and Investments

Cash and investments include demand deposits, interest-bearing deposits with banks, U.S. government obligations, U.S. government guaranteed securities with maturities through December 31, 2012, and U.S. and foreign money market funds.

At June 30, 2010, the Filing Debtors (together with all Debtor-Controlled Entities) had approximately $17.4 billion in unrestricted Cash and investments, adjusted for the allocation of restricted Cash related to certain securitizations that is anticipated to be recovered by certain Debtors.

### b.    Cash and Investments Pledged or Restricted

Cash and investments pledged or restricted includes Cash and investments pledged on or prior to September 15, 2008 by the Filing Debtors in connection with certain documents executed by the Filing Debtors and various financial institutions, and collections on assets that secure various borrowing arrangements.

Cash and investments pledged or restricted includes: (i) Cash collected on derivatives trades which collateralize notes, (ii) Cash collected by the Debtors on assets in which other parties (including other Debtors) have a secured interest, (iii) pre-petition balances on administrative hold by certain financial institutions, (iv) Cash remitted to LBHI related to securities transferred to LBHI under the JPM CDA, and (v) misdirected Cash received from third parties and other miscellaneous items.  The Filing Debtors (together with all Debtor-Controlled Entities) had approximately $3.6 billion in Cash and investments pledged or restricted at June 30, 2010, adjusted for the allocation of restricted Cash expected to be recovered by certain Debtors related to certain securitizations.

### c.    Cash Seized

As more fully discussed in section IV.H – "Adversary Proceedings" – of the Debtors' Disclosure Statement, on November 16, 2010 the Bankruptcy Court issued a decision granting summary judgment to LBHI and LBSF with respect to litigation regarding Bank of America's application of approximately $500 million of LBHI's funds to offset its Derivative Claims against the Debtors.[1]   A final judgment has not yet been entered in this Adversary Proceeding, but after that occurs, Bank of America is expected to appeal.   Therefore, such amount (and interest thereon) is not taken into account in the Recovery Analysis.

### d.    Financial Instruments and Other Inventory Positions

Certain Debtors and their Affiliates are parties to repurchase agreements and transactions with third parties.  In certain cases, following a default by a Debtor of its obligation to repurchase the subject securities, the third party seized the subject securities to offset its receivable from a Debtor.

Prior to the Commencement Date, LCPI also entered into repurchase agreements with other Debtors and Debtor-Controlled Entities.  The Plan Proponents understand that the Debtors have reviewed accounting and legal treatment for a default on an intercompany repurchase agreement.  Based on this review, the Debtors' Disclosure Statement states that the Debtors have concluded that LCPI is likely entitled to certain of the assets and any cash collections in respect of such assets since the date of default.  The Recovery Analysis accounts for these assets and cash collections according to the information provided in the Debtors' Disclosure Statement.  A detailed description of the internal repurchase agreements and related Claims is set forth in section IX – "Treatment of Internal Repurchase Agreements" – of the Debtors' Disclosure Statement.

Financial instruments include notes and equity interests (collectively, the "Securitization Instruments") held by certain Debtors issued by securitization structures collateralized by assets (principally corporate and real estate loans) managed by certain Debtors on the Commencement Date.  Recoveries on the Securitization Instruments are based on the Filing Debtors' estimate of undiscounted expected cash flows of the underlying collateral as of June 30, 2010.  The Securitization Instruments are included in the Recovery Analysis as assets of the legal entities that, according to the Debtors' Disclosure Statement, the Filing Debtors expect will receive the ultimate economic interest from such instruments.  A description of the various Securitization Instruments in which the Debtors have an interest is set forth in section IV.G – "Securitization Structures" – of the Debtors' Disclosure Statement.

### e.    Other Disclosures

The Recovery Analysis does not account for any recovery in the various litigation claims that the Debtors have asserted, or may assert in the future, the impact of which on the Debtors' assets cannot be determined at this time.

---

[1] Adversary proceeding No. 08-01753 (JMP) (Bankr. S.D.N.Y.).

Lehman ALI has recorded the value of the PIK Note issued to LBI at zero dollars. (See section IV.C—"Lehman Brothers Inc.'s SIPA Proceeding; Lehman ALI" of the Debtors' Disclosure Statement for further information regarding the PIK Notes).

The Recovery Analysis assumes that certain tax structures related to intercompany transactions among LBHI, Bamburg Investments (UK) Ltd., Kenilworth Investments 2 Ltd., and Alnwick Investments (UK) Ltd, and others, have been fully unwound, as approved by the Bankruptcy Court.

### 2.    Assumptions With Respect To Assets

#### a.    Assumptions With Respect To Derivative Contracts

The Filing Debtors' estimated recovery amounts with respect to Derivative Contracts are determined using various internal models, data sources, and certain assumptions regarding contract provisions. The Derivative Contract recoveries include proceeds in which certain third parties may have a security interest. The Cash recovered from such assets is treated as encumbered by such security interests. The Filing Debtors have stated that they expect to adjust the proceeds recorded for their Derivative Contracts as they obtain additional information concerning security interests in such proceeds. Such adjustments may be material.

Certain of the Debtors have entered into transactions to hedge their post-petition exposure to certain outstanding Derivative Contracts and other assets, and protect their value.

Through June 30, 2010, the Filing Debtors have collected cumulative Cash of $10.7 billion, net of collections on certain Derivative Contracts which collateralize certain notes. The Filing Debtors estimate that they will collect, in the aggregate, an additional $6.0 billion of gross cash flows, including recovery of Cash posted as collateral for hedging ($5.9 billion, net of non-operating expenses) in respect of Derivative Contracts subsequent to June 30, 2010.

#### b.    Assumptions With Respect to Real Estate Assets

Real Estate Assets include residential and commercial loans, residential and commercial real estate owned properties, joint venture equity interests in commercial properties, and other real estate related investments. Recoveries in respect of Real Estate Assets reflect the Debtors' estimates of future undiscounted cash flows over the Forecast Period plus a terminal value equal to the estimated sale value at the end of 2014. Estimated cash flows are consistent with the Debtors' strategy of actively managing core positions as general market conditions normalize, although receipts from certain opportunistic sales have been included. Any non-operating disbursements have been included in the Recovery Analysis.

The Filing Debtors estimate that they (together with all Debtor-Controlled Entities) will collect $12.1 billion in gross cash flows from Real Estate Assets ($11.1 billion, net of non-operating disbursements).

### c.    Assumptions With Respect to Loans

The Filing Debtors' estimated receipts from loans are presented on an undiscounted cash flow basis with termination values equal to the estimated sale proceeds at December 31, 2014.

The Filing Debtors' estimates of cash receipts include (i) principal, interest, and fee collections, (ii) full repayment of funded amounts at maturity for performing loans that mature prior to the end of 2014, (iii) an assumption that a subset of the loans will be restructured or refinanced in 2011 and 2012, (iv) discretionary sales of loans that mature after the end of 2014 during the Forecast Period, (v) sale of the Asian loan portfolios by December 31, 2012, and (vi) sales of remaining non-performing loans at December 31, 2014.

Interest receipts on loans are calculated based on a 3-month LIBOR rate of 0.41125% plus the applicable interest rate spread for each loan.

The Filing Debtors expect to enter into transactions to restructure nonperforming loans and continue terminating their unfunded commitments.  The Filing Debtors estimate that they (together with all Debtor-Controlled Entities) will recover $5.0 billion in respect of Loans.

### d.    Assumptions With Respect to
### Private Equity/Principal Investments

Private Equity/Principal Investments include equity and fixed-income direct investments in corporations, and general partner and limited partner interests in asset managers (including private equity) and in related funds.

The Filing Debtors project that they (together with all Debtor-Controlled Entities) will recover $11.3 billion of gross cash flows ($10.9 billion, net of non-operating disbursements), from investments in private equity, inclusive of LBHI's interest in Neuberger Berman Group, for which the estimated recovery is described below.  Required capital calls from other private equity investments are included in the non-operating disbursements in the Debtors' budgets.

As of September 30, 2010, LBHI owned 93% of the Preferred Units and 48% of the aggregate common equity interests of Neuberger Berman Group. LBHI estimates its recovery on its preferred and common equity interests will be between $1.25 billion and $2 billion.

As disclosed in section IV.F.—"Private Equity/Principal Investments" of the Debtors' Disclosure Statement, certain subsidiaries of LBHI are not in possession or do not have complete control of certain Private Equity/Principal Investment assets amounting to approximately $335 million in forecasted cash flows included in the Recovery Analysis, where the subsidiary is the holder of record of such asset, but the asset is held within an account controlled by an affiliated broker-dealer.

e.      **Assumptions With Respect to The Banks**

LBHI estimates that there will be a recovery of between $1 to 2 billion from the disposition of its interests in Aurora Bank and Woodlands pursuant to the Banks Settlements approved by the Bankruptcy Court in November 2010.  LBHI and certain other Debtors contributed approximately $600 million in Cash to the Banks in November 2010 in connection with those transactions.  Such amount is reflected as an Administrative Expense in the Recovery Analysis.  In addition, the Banks Settlements also provided for LBHI to actively work toward the disposition of its interests in the Banks over a 1-2 year period.

f.      **Assumptions With Respect to**
       **Prepetition Intercompany Receivables**

For the purpose of determining recoveries, the Plan assumes that all Affiliates recognize pre-petition balances as a basis for determining the amount of Debtors' and Debtor-Controlled Entities' claims against such Affiliates.  Exhibit 8 of the Debtors' Disclosure Statement sets forth estimated material intercompany balances as of June 30, 2010.  The Plan Proponents have not independently verified and reserve the right to revise any such estimated intercompany balances.

For purposes of their recovery analysis, these balances have been adjusted by the Filing Debtors in connection with their continued review of intercompany balances.  Balances included in the Filing Debtors' recovery analysis have been netted to reflect the set-off of mutual debts (i.e., pre-petition debts against pre-petition debts), including the set-off of Affiliate Guarantee Claims against LBHI's intercompany receivables.  Since adjusted intercompany balances have not been disclosed by the Filing Debtors, certain intercompany claims amounts and recoveries thereon represent estimates of the Plan Proponents based on publicly available information.  Intercompany receivables include Derivative Contracts recorded at fair value in the Debtors' records as of September 14, 2008 or the applicable termination date, and intercompany receivables derived from financings which are reflected net of Cash and securities collateral and normal course intercompany funding.  This Recovery Analysis includes an estimate of $4 billion as a recovery on net intercompany receivables from Non-Controlled Affiliates.  Such amount is an estimate and the actual result could vary materially.

The Debtors' recovery analysis reflects the implementation by LBHI of the CDA entered into with JPMorgan.  In exchange for authorizing the application of Cash and investments previously pledged to JPMorgan (and an additional Cash payment) as part of a provisional settlement for all known JPMorgan Claims, LBHI was subrogated to JPMorgan's claims against LBHI's Affiliates and recorded a receivable from LBHI's Affiliates of approximately $9.4 billion (the "Subrogated Receivables").  LBHI also received securities from JPMorgan that had been provided to JPMorgan by various of LBHI's Affiliates to secure their obligations to JPMorgan.

The largest three components of the Subrogated Receivables recorded by LBHI are receivables from the following entities:

LBI                                $ 6.6 billion

|         |              |
|---------|--------------|
| LBSF    | $ 1.8 billion |
| LBIE    | $ 0.5 billion |

The Plan Proponents understand that LBHI continues to review the collateral received, which consists primarily of illiquid assets. An initial estimated recovery of $4 - 5 billion has been made, which has been applied against the Subrogated Receivables. As many of the securities returned have not been evaluated, the actual results could vary materially.

For the purposes of the Plan and the Recovery Analysis, a claim by LBHI against another Debtor for a Subrogated Receivable is included in the Class of Intercompany Claims against such Debtor. For example, JPMorgan's Claim against LBSF in the amount of $1.8 billion, which Claim was subrogated to LBHI, has been categorized with Intercompany Claims against LBSF. However, because it was acquired from JPMorgan after the applicable Commencement Dates, the Debtors contend that it is not subject to set off. LBSF and other Debtors in similar circumstances may be able to mitigate these liabilities, which could have a material impact on recoveries at these Debtors.

### 3.    Assumptions With Respect to Claims

The Recovery Analysis takes into account all provisions of the Plan when calculating the recoveries for each Class. In addition, the Recovery Analysis includes Claims at amounts that the Filing Debtors believe will be the Allowed amount of such Claims. Nothing contained in the Debtors' Disclosure Statement (including any exhibits thereto) shall be deemed to constitute an admission by any Plan Proponent, or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors. Furthermore, the Plan Proponents reserve the right to challenge or otherwise modify any and all Allowed Claim amounts, either partially or in their entirety.

### a.    Administrative Expenses

The Debtors have engaged in Cash transfers and transactions following the applicable Commencement Date. In respect of such transfers to a Debtor, the transferor entity is entitled to Administrative Expense Claim. Post petition expenses for all Debtors will generate an allowed administrative expense claim. An estimate of these claims has been incorporated in the Recovery Analysis.

The Plan Proponents believe that certain of the Domestic Operating Companies are currently bearing a share of the administrative costs that is disproportionate to the amount of work actually completed on behalf of those Domestic Operating Companies and to the benefit that those Domestic Operating Companies are receiving, and have been bearing such costs since the commencement of these cases. The Plan provides for the equal sharing of costs relating to the administration of the derivatives claim process between LBSF and LBHI, as LBHI benefits equally from such procedures as a guarantor of the derivatives claims. Furthermore, the Plan provides for a Debtor Allocation Agreement which will fairly allocate various additional administrative costs among the Debtors in as close proportion as possible to the relative benefit each Debtor received as a result of such expenses. For illustrative purposes, the Recovery

Analysis estimates the reallocation of 50% of such additional administrative expenses from LBSF to LBHI.

### b.    Compensation and Reimbursement Claims

The Recovery Analysis includes unpaid expenses relating to the compensation of professionals and reimbursement of expenses incurred by such professionals for amounts through June 30, 2010, as well as estimates through the end of the Forecast Period.

### c.    Priority Tax Claims

The Recovery Analysis includes an estimate of approximately $2 billion for all Priority Tax Claims against the Debtors ($1.5 billion) and Debtor-Controlled Entities ($500 million), based on information disclosed by the Filing Debtors in the Debtors' Disclosure Statement. A preliminary allocation of this amount to Debtors and non-Debtor Affiliates has been made but is subject to continuing review and may be changed in the future. For additional information regarding Priority Tax Claims, see section XI. C.1.C— "Priority Tax Claims" of the Debtors' Disclosure Statement.

### d.    Priority Non-Tax Claims

The Recovery Analysis includes an estimate of $3 million for employee-related Priority Non-Tax Claims, based on information disclosed by the Filing Debtors in the Debtors' Disclosure Statement.

### e.    Secured Claims

For the purposes of the Recovery Analysis, cash flows from encumbered assets have been included, with an offsetting secured claim, as they will continue to be collected for the benefit of secured creditors. Any Cash received from the disposition of assets subject to a security agreement will be subject to the lien of such secured creditor.

### f.    General Unsecured Claims

The Filing Debtors estimate that the amount of Allowed Claims (other than Guarantee Claims), will approximately equal the liabilities on books and records of the applicable Debtor as of the applicable Commencement Date, as set forth on the Debtors' balance sheets as of June 30, 2010, annexed as Exhibit 2B to the Debtors' Disclosure Statement. Certain material adjustments were made to include liabilities not reflected on the books and records, including liabilities related to terminated Derivative Contracts, certain repurchase agreements and Claims based on repurchase or indemnification obligations related to the sales of residential mortgage loans.

The Trustees of the Lehman Brothers Pension Scheme (the "UK Pension Scheme") and the Board of the Pension Protection Fund (together with the Trustees of the UK Pension Scheme, the "UK Pension Claimants") have filed contingent, unliquidated proofs of claim (the "UK Pension Claims") against LBHI and certain other Debtors in these Chapter 11

Cases.[1] For the purpose of estimating claims, but for no other purpose, the UK Pension Claims have been included in the pool of general unsecured claims in LBHI's Chapter 11 Case at the estimated amount of £148M, representing the last official calculation by the UK Pension Scheme's actuaries.  For the basis of liability, the UK Pension Claims cite, among other things, certain regulatory actions which may be commenced by The Pensions Regulator of the United Kingdom (the "UK Pensions Regulator").[2]  Since the filing of the UK Pension Claims, LBHI and certain of its foreign Affiliates have been subject to one such regulatory action; a Determination Notice has been issued stating the intention to subsequently issue a Financial Support Direction ("FSD"), which requires those companies to seek approval of and implement an arrangement to provide financial support to the UK Pension Scheme.  If LBHI or any of its affiliates subject to the FSD do not comply with the FSD, they may be issued a Contribution Notice ("CN") by the UK Pensions Regulator, which constitutes a claim against each such company.  However, the UK Pensions Regulator and the UK Pension Claimants have entered into a Bankruptcy Court-ordered stipulation with LBHI whereby they will not take any enforcement action against LBHI without abiding by certain notice or hearing requirements.  Two separate appeals relating to the FSD and the CN process are currently pending in the UK.

### g.    Subordinated Unsecured Claims

Subordinated Unsecured Claims include Claims against LBHI in respect of Notes subordinated to senior bonds and certain other creditors in accordance with the terms of the underlying agreements.  The Recovery Analysis assumes that such agreements are generally enforced in accordance with their terms.  The Recovery Analysis takes into account Claims filed against the Debtors in respect of Subordinated Notes in the amount set forth on LBHI's balance sheets.

Unlike the Filing Debtors' recovery analysis, the Recovery Analysis includes Senior Intercompany Claims of LBT and LBSN in Class 4A.[3]

### h.    Intercompany Claims

The Recovery Analysis assumes that all Intercompany Claims are recognized in the amounts set forth on the balance sheets as of the applicable Commencement Date.  The material Intercompany Balances are set forth on Exhibit 8 to the Debtors' Disclosure Statement.  The Plan Proponents have not independently verified or reviewed Exhibit 8 to the Debtors' Disclosure Statement.  Solely for purposes of the Recovery Analysis, these balances are subject to reconciliation and adjustment, and have been netted to reflect the set-off of mutual debts identified by the Filing Debtors in their recovery analysis (i.e., pre-petition debts against pre-petition debts, post-petition against post-petition).   For illustrative purposes, the Recovery

---

[1]    The other Debtors are BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LBCC, LBCS, LBDP, LBFP, LB Rose Ranch, LBSF, LCPI, LS Finance, LOTC, LUXCO, PAMI, and SASCO.

[2]    The UK Pension Claims only cite the regulatory actions described herein for the basis of liability, but no such regulatory actions have been taken in the United Kingdom against the other Debtors.

[3]    Senior Affiliate Guarantee Claims of LBT and LBSN should appropriately be classified in Class 4B. However, because the Filing Debtors have not disclosed the amounts of the Senior Affiliate Guarantee Claims of LBT and LBSN Claims, these remain in Class 8B for purposes of the Recovery Analysis.  The Plan Proponents reserve the right to modify the amounts of such Claims and to place them in Class 4B in the future.

Analysis assumes that allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.  Actual reductions in Intercompany Claims of LBHI against other Debtors will be subject to the review of the Domestic Operating Company Creditor Representative, and may differ materially from estimates in the Recovery Analysis.

As noted above, the Recovery Analysis treats the Claims of LBT and LBSN against LBHI, which are classified by the Filing Debtors as Class 8A Intercompany Claims, as Class 4A Senior Intercompany Claims.  Accordingly, LBT and LBSN are entitled to their Pro Rata Share of Subordinated Class 10A Distributions, Subordinated Class 10B Distributions, and Subordinated Class 10C Distributions on account of their Allowed Senior Intercompany Claims.

Intercompany payables consist of Derivative Contracts recorded at fair value in the Debtors' records as of September 14, 2008, or the applicable termination date, intercompany payables derived from financings which are reflected net of collateral inventory and normal course intercompany funding.

Any intercompany transactions that occurred on or after the Commencement Date are treated as Administrative Claims.  In accordance with the terms of the Plan, setoff of Intercompany Claims is calculated based on the Allowed amount of such Claims.

LBHI is the current holder of the note issued by the RACERS MM Trust and therefore is the indirect beneficiary of any distributions from the RACERS A Trust to the RACERS MM Trust.  As a result, the Claim filed by the RACERS A Trust against LBHI is excluded from the Class of Third Party Guarantee Claims.  In addition, as a result of LBHI's interest in the RACERS notes, the Claims filed against LCPI and LBSF by the RACERS Trusts have been classified as Intercompany Claims.   For illustrative purposes, the Recovery Analysis reflects the reduction of LBHI's Intercompany Claim against LBSF by the amount of the RACERS A Trust's recovery from LCPI.

**4.     Net Distributable Assets, Recovery Analysis And Reconciliation Tables**

Included in this Exhibit are tables containing the Recovery Analysis for each Debtor.

**Assets**

| | Debtors' Plan | Non-Consolidation Plan |
|---|---|---|
| Cash and Cash Equivalents | $ 2,704 | $ 2,704 |
| Restricted Cash | 2,910 | 2,910 |
| Financial Instruments and Other Inventory | | |
|   Real Estate | 2,753 | 2,753 |
|   Loans | 457 | 457 |
|   Principal Investments | 1,722 | 1,722 |
|   Derivatives & Other Contracts | - | - |
| Other Assets | 2,732 | 2,732 |
| **Operating Asset Recoveries** | **$ 13,278** | **$ 13,278** |
|   Intercompany Receivables | 31,214 | 31,064 |
|   Equity Interests in Affiliates | 2,823 | 2,823 |
| **TOTAL ASSETS** | **$ 47,315** | **$ 47,165** |
| Administrative Expenses[1] | | |
|   Administrative Expenses & Other | (2,651) | (2,661) |
|   Post-Petition Intercompany Payables | (1,695) | (1,851) |
|   Operating Disbursements | (716) | (1,026) |
| **DISTRIBUTABLE ASSETS** | **$ 42,253** | **$ 41,628** |
| Recovery From Plan Adjustments | 1,277 | - |
| **NET DISTRIBUTABLE ASSETS** | **$ 43,530** | **$ 41,628** |

**Class / Est. Allowed Claims[2] / Estimated Plan Recovery**

| Class Debtors' Plan | Class Non-Consolidation Plan | Description | Est. Allowed Claims Debtors' Plan | Est. Allowed Claims Non-Consolidation Plan | Recovery $ Debtors' Plan | Recovery % Debtors' Plan | Recovery $ Non-Consolidation Plan | Recovery % Non-Consolidation Plan |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Priority Non-Tax Claims | $ 3 | $ 3 | $ 3 | 100.0% | $ 3 | 100.0% |
| 2 | 2 | Secured Claims | 2,447 | 2,447 | 2,447 | 100.0% | 2,447 | 100.0% |
| 3 | 3 | Senior Unsecured Claims | 83,582 | 83,582 | 17,912 | 21.4% | 13,351 | 16.0% |
| 4A[3] | 4A[3] | Senior Intercompany Claims | 12,689 | 51,119 | 2,106 | 16.6% | 8,166 | 16.0% |
| 4B[3] | 4B[3] | Senior Affiliate Guarantee Claims | 10,589 | 10,589 | 1,706 | 16.1% | 1,652 | 15.6% |
| 5A | 5A | Senior Third-Party Guarantee Claims | 21,174 | 21,174 | 2,721 | 12.9% | 3,303 | 15.6% |
| 5B | 5B | Senior Third-Party LBT/LBSN Guarantee Claims | 31,137 | 31,137 | 3,501 | 11.2% | 4,858 | 15.6% |
| 6 | 6 | Derivative Claims | - | - | - | - | - | - |
| 7 | 7 | General Unsecured Claims | 12,281 | 12,281 | 2,430 | 19.8% | 1,808 | 14.7% |
| 8A[3] | 8A | Intercompany Claims | 38,430 | - | 5,746 | 15.0% | - | - |
| 8B[3] | 8B[3] | Affiliate Guarantee Claims | 1,654 | 1,654 | 247 | 15.0% | 243 | 14.7% |
| 9 | 9 | Derivative Guarantee Claims | 39,386 | 39,386 | 4,711 | 12.0% | 5,797 | 14.7% |
| 10A | 10A | Subordinated Class 10A Claims | 3,393 | 3,393 | - | - | - | - |
| 10B | 10B | Subordinated Class 10B Claims | 10,368 | 10,368 | - | - | - | - |
| 10C | 10C | Subordinated Class 10C Claims | 1,503 | 1,503 | - | - | - | - |
| 11 | 11 | Section 510(b) Claims | - | - | - | - | - | - |
| 12 | 12 | Equity Interests | - | - | - | - | - | - |
| | | | $ 268,636 | $ 268,636 | $ 43,530 | | $ 41,628 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | $ Debtors' Plan | % | $ Non-Consolidation Plan | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 1,862 | $ 1,862 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 39 | 39 | 2 | 2 | Secured Claims | 104 | 104 | 104 | 100.0% | 104 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 41 | 41 | 21 | 51.9% | 25 | 60.4% |
| Real Estate | 5,474 | 5,474 | | | | | | | | | |
| Loans | 4,373 | 4,373 | 4 | 4 | General Unsecured Claims | 2,916 | 2,916 | 1,513 | 51.9% | 1,762 | 60.4% |
| Principal Investments | 1,084 | 1,084 | | | | | | | | | |
| Derivatives & Other Contracts | 99 | 99 | 5A[3] | N/A | Intercompany Claims of LBHI | 23,285 | - | 11,539 | 49.6% | - | - |
| Other Assets | 80 | 80 | N/A | 5[3][4] | Intercompany Claims | - | 23,907 | - | - | 14,448 | 60.4% |
| **Operating Asset Recoveries** | **$ 13,011** | **$ 13,011** | 5B[3] | N/A | Intercompany Claims of Participating Subsidiary Debtors | 891 | - | 430 | 48.3% | - | - |
| Intercompany Receivables | 4,047 | 4,076 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | 5C[3] | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | 3,888 | - | 2,017 | 51.9% | - | - |
| Equity Interests in Affiliates | 289 | 289 | | | | | | | | | |
| **TOTAL ASSETS** | **$ 17,347** | **$ 17,376** | 6 | 6 | Equity Interests | - | - | - | - | - | - |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | (144) | (144) | | | | | | | | | |
| Post-Petition Intercompany Payables | (88) | (88) | | | | | | | | | |
| Operating Disbursements | (805) | (805) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 16,311** | **$ 16,339** | | | | | | | | | |
| Contribution to Plan Adjustments | (687) | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 15,624** | **$ 16,339** | | | | **$ 31,126** | **$ 26,968** | **$ 15,624** | | **$ 16,339** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | | | | | | | | $ | % | $ | % |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | | Non-Consolidation Plan | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 1,491 | $ 1,491 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 36 | 36 | 2 | 2 | Secured Claims | 36 | 36 | 36 | 100.0% | 36 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 1,359 | 1,359 | 677 | 49.8% | 805 | 59.2% |
| Real Estate | - | - | | | | | | | | | |
| Loans | 0 | 0 | 4 | 4 | General Unsecured Claims | 776 | 776 | 387 | 49.8% | 460 | 59.2% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 295 | 295 | 5A[3] | N/A | Intercompany Claims of LBHI | 1,515 | - | 590 | 38.9% | - | - |
| Other Assets | - | - | N/A | 5[3][4] | Intercompany Claims | - | 1,033 | - | - | 612 | 59.2% |
| **Operating Asset Recoveries** | **$ 1,822** | **$ 1,822** | | N/A | Intercompany Claims of Participating | - | - | - | - | - | - |
| | | | 5B[3] | | Subsidiary Debtors | | | | | | |
| Intercompany Receivables | 93 | 123 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | 5C[3] | N/A | Intercompany Claims of Affiliates | 20 | - | 10 | 49.8% | - | - |
| Equity Interests in Affiliates | - | - | | | Other Than Participating Debtors | | | | | | |
| **TOTAL ASSETS** | **$ 1,915** | **$ 1,945** | 6 | 6 | Equity Interests | - | - | - | - | - | - |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (18) | (18) | | | | | | | | | |
| Operating Disbursements | (15) | (15) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 1,882** | **$ 1,912** | | | | | | | | | |
| Contribution to Plan Adjustments | (182) | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 1,699** | **$ 1,912** | | | | **$ 3,707** | **$ 3,204** | **$ 1,699** | | **$ 1,912** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | | | | | | | | $ | % | $ | % |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | | Non-Consolidation Plan | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 6,746 | $ 6,746 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 610 | 610 | 2 | 2 | Secured Claims | 707 | 707 | 707 | 100.0% | 707 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 24,149 | 24,149 | 5,389 | 22.3% | 6,305 | 26.1% |
|   Real Estate | - | - | | | | | | | | | |
|   Loans | 2 | 2 | 4 | 4 | General Unsecured Claims | 154 | 154 | 34 | 22.3% | 40 | 26.1% |
|   Principal Investments | - | - | | | | | | | | | |
|   Derivatives & Other Contracts | 4,527 | 4,527 | 5A[3] | N/A | Intercompany Claims of LBHI | 25,336 | - | 5,249 | 20.7% | - | - |
| Other Assets | 25 | 25 | N/A | 5[3][4][5] | Intercompany Claims | - | 20,939 | - | - | 5,467 | 26.1% |
| **Operating Asset Recoveries** | **$ 11,910** | **$ 11,910** | 5B[3] | N/A | Intercompany Claims of Participating Subsidiary Debtors | 445 | - | 83 | 18.7% | - | - |
|   Intercompany Receivables | 917 | 927 | | | | | | | | | |
|   Recovery on Affiliate Guarantees | - | - | 5C[3] | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | 1,234 | - | 275 | 22.3% | - | - |
|   Equity Interests in Affiliates | 157 | 157 | | | | | | | | | |
| **TOTAL ASSETS** | **$ 12,984** | **$ 12,994** | 6 | 6 | Equity Interests | - | - | - | - | - | - |
| Administrative Expenses[1] | | | | | | | | | | | |
|   Administrative Expenses & Other | (19) | (10) | | | | | | | | | |
|   Post-Petition Intercompany Payables | (311) | (156) | | | | | | | | | |
|   Operating Disbursements | (620) | (310) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 12,034** | **$ 12,519** | | | | | | | | | |
| Contribution to Plan Adjustments | (297) | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 11,737** | **$ 12,519** | | | | **$ 52,024** | **$ 45,949** | **$ 11,737** | | **$ 12,519** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.
(5) For illustrative purposes, RACERS Claims included in Class 5 are shown net of recovery to the RACERS A Trust from LCPI.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | | | | | | | | $ | % | | % |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | | Non-Consolidation Plan | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 239 | $ 239 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 563 | 563 | 166 | 29.4% | 182 | 32.3% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | 4 | General Unsecured Claims | 4 | 4 | 1 | 29.4% | 1 | 32.3% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 157 | 157 | 5A[3] | N/A | Intercompany Claims of LBHI | 194 | - | 50 | 25.8% | - | - |
| Other Assets | - | - | N/A | 5[3][4] | Intercompany Claims | - | 577 | - | - | 186 | 32.3% |
| Operating Asset Recoveries | $ 396 | $ 396 | 5B[3] | N/A | Intercompany Claims of Participating Subsidiary Debtors | 8 | - | 2 | 25.8% | - | - |
| Intercompany Receivables | - | - | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | 5C[3] | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | 414 | - | 122 | 29.4% | - | - |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $ 396 | $ 396 | 6 | 6 | Equity Interests | - | - | - | - | - | - |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (7) | (7) | | | | | | | | | |
| Operating Disbursements | (20) | (20) | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 369 | $ 369 | | | | | | | | | |
| Contribution to Plan Adjustments | (28) | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 341 | $ 369 | | | | $ 1,184 | $ 1,144 | $ 341 | | $ 369 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".

(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | $ Debtors' Plan | % Debtors' Plan | $ Non-Consolidation Plan | % Non-Consolidation Plan |
| Cash and Cash Equivalents | $ 461 | $ 461 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 5 | 5 | 2 | 2 | Secured Claims | 5 | 5 | 5 | 100.0% | 5 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 760 | 760 | 234 | 30.7% | 258 | 34.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | 4 | General Unsecured Claims | 11 | 11 | 3 | 30.7% | 4 | 34.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 254 | 254 | 5A[3] | N/A | Intercompany Claims of LBHI | 252 | - | 42 | 16.8% | - | - |
| Other Assets | - | - | N/A | 5[3][4] | Intercompany Claims | - | 1,264 | - | - | 429 | 34.0% |
| Operating Asset Recoveries | $ 720 | $ 720 | N/A | | Intercompany Claims of Participating Subsidiary Debtors | 589 | - | 160 | 27.2% | - | - |
| | | | 5B[3] | | | | | | | | |
| Intercompany Receivables | 6 | 6 | | | | | | | | | |
| Recovery on Affiliate Guarantees | 4 | 4 | 5C[3] | N/A | Intercompany Claims of Affiliates Other Than Participating Debtors | 550 | - | 169 | 30.7% | - | - |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $ 730 | $ 730 | 6 | 6 | Equity Interests | - | - | - | - | - | - |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | (34) | (34) | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 696 | $ 696 | | | | | | | | | |
| Contribution to Plan Adjustments | (83) | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 613 | $ 696 | | | | $ 2,167 | $ 2,040 | $ 613 | | $ 696 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 387 | $ 387 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 75 | 75 | 75 | 100.0% | 75 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | 4 | General Unsecured Claims | 3 | 3 | 3 | 100.0% | 3 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 9 | 9 | 5A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Other Assets | - | - | N/A | 5[3][4] | Intercompany Claims | - | 123 | - | - | 123 | 100.0% |
| **Operating Asset Recoveries** | $ 396 | $ 396 | 5B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 123 | - | 123 | 100.0% | - | - |
| Intercompany Receivables | 2 | 2 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | 6 | 6 | Equity Interests | - | - | 196 | - | 196 | - |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 399 | $ 399 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | (1) | (1) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 398 | $ 398 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 398 | $ 398 | | | | $ 202 | $ 202 | $ 398 | | $ 398 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 424 | $ 424 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | Derivative Claims | 58 | 58 | 58 | 100.0% | 58 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | 4 | General Unsecured Claims | 5 | 5 | 5 | 100.0% | 5 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 44 | 44 | 5A[3] | N/A | Intercompany Claims of LBHI | 2 | - | 1 | 80.1% | - | - |
| Other Assets | - | - | N/A | 5[3][4] | Intercompany Claims | - | 204 | - | - | 204 | 100.0% |
| **Operating Asset Recoveries** | $ 468 | $ 468 | 5B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 203 | - | 203 | 100.0% | - | - |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | 6 | 6 | Equity Interests | - | - | 196 | - | 196 | - |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 468 | $ 468 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (2) | (2) | | | | | | | | | |
| Operating Disbursements | (4) | (4) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 462 | $ 462 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 462 | $ 462 | | | | $ 267 | $ 267 | $ 462 | | $ 462 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 2 | 2 | 2 | 100.0% | 2 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | 46 | - | 36 | 79.1% | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 36 | - | - | 36 | 100.0% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | - | - | - | - | - | - |
| **Operating Asset Recoveries** | $ - | $ - | 5 | 5 | Equity Interests | - | - | 310 | - | 310 | - |
| Intercompany Receivables | 349 | 349 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 349 | $ 349 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 349 | $ 349 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 349 | $ 349 | | | | $ 48 | $ 38 | $ 349 | | $ 349 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | $ Debtors' Plan | % | $ Non-Consolidation Plan | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 3 | 3 | - | - | - | - |
| Real Estate | 16 | 16 | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | - | - | - | - | - |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | - | - | - | - | - | - |
| **Operating Asset Recoveries** | **$ 16** | **$ 16** | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 16** | **$ 16** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (15) | (15) | | | | | | | | | |
| Operating Disbursements | (1) | (1) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ -** | **$ -** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ -** | **$ -** | | | | **$ 3** | **$ 3** | **$ -** | | **$ -** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 0 | $ 0 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 0 | 0 | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 3 | 3 | 3 | 100.0% | 3 | 100.0% |
|   Real Estate | - | - | | | | | | | | | |
|   Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | 22 | - | 17 | 80.0% | - | - |
|   Principal Investments | - | - | | | | | | | | | |
|   Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 18 | - | - | 18 | 100.0% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 1 | - | 1 | 100.0% | - | - |
| **Operating Asset Recoveries** | $ 1 | $ 1 | 5 | 5 | Equity Interests | - | - | 3 | - | 3 | - |
|   Intercompany Receivables | 23 | 23 | | | | | | | | | |
|   Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
|   Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 24 | $ 24 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
|   Administrative Expenses & Other | - | - | | | | | | | | | |
|   Post-Petition Intercompany Payables | - | - | | | | | | | | | |
|   Operating Disbursements | - | - | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 24 | $ 24 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 24 | $ 24 | | | | $ 25 | $ 21 | $ 24 | | $ 24 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 0 | $ 0 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 0 | 0 | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 3 | 3 | 1 | 37.7% | 1 | 37.7% |
|   Real Estate | - | - | | | | | | | | | |
|   Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | 8 | - | 2 | 30.1% | - | - |
|   Principal Investments | - | - | | | | | | | | | |
|   Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 7 | - | - | 2 | 37.7% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 0 | - | 0 | 37.7% | - | - |
| **Operating Asset Recoveries** | **$ 0** | **$ 0** | 5 | 5 | Equity Interests | - | - | - | - | - | - |
|   Intercompany Receivables | 3 | 3 | | | | | | | | | |
|   Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
|   Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 4** | **$ 4** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
|   Administrative Expenses & Other | - | - | | | | | | | | | |
|   Post-Petition Intercompany Payables | - | - | | | | | | | | | |
|   Operating Disbursements | - | - | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 4** | **$ 4** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 4** | **$ 4** | | | | **$ 11** | **$ 10** | **$ 4** | | **$ 4** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $  0 | $  0 | 1 | 1 | Priority Non-Tax Claims | $  - | $  - | $  - | - | $  - | - |
| Restricted Cash | 0 | 0 | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 2 | 2 | 2 | 61.2% | 2 | 61.2% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | 9 | - | 4 | 49.0% | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 7 | - | - | 4 | 61.2% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 0 | - | 0 | 61.2% | - | - |
| Operating Asset Recoveries | $  1 | $  1 | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 6 | 6 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $  6 | $  6 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $  6 | $  6 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $  6 | $  6 | | | | $  12 | $  10 | $  6 | | $  6 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 0 | $ 0 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 2 | 2 | 2 | 100.0% | 2 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | 3 | - | 3 | 78.9% | | |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 3 | - | - | 3 | 100.0% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 0 | - | 0 | 100.0% | - | - |
| Operating Asset Recoveries | $ 0 | $ 0 | | | | | | | | | |
| | | | 5 | 5 | Equity Interests | - | - | 47 | - | 47 | - |
| Intercompany Receivables | 52 | 52 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | 0 | 0 | | | | | | | | | |
| TOTAL ASSETS | $ 52 | $ 52 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 52 | $ 52 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 52 | $ 52 | | | | $ 6 | $ 6 | $ 52 | | $ 52 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 2 | 2 | 2 | 2 | Secured Claims | 2 | 2 | 2 | 100.0% | 2 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 2 | 2 | 1 | 71.2% | 1 | 71.2% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | - | - | - | - | - |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | - | - | - | - | - | - |
| Operating Asset Recoveries | $ 2 | $ 2 | | | | | | | | | |
| | | | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 2 | 2 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $ 3 | $ 3 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 3 | $ 3 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 3 | $ 3 | | | | $ 4 | $ 4 | $ 3 | | $ 3 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
| Cash and Cash Equivalents | $ 7 | $ 7 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 2 | 2 | 0 | 4.8% | 0 | 4.8% |
| Real Estate | 353 | 353 | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 593 | - | - | 29 | 4.8% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 593 | - | 29 | 4.8% | - | - |
| Operating Asset Recoveries | $ 360 | $ 360 | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | - | - | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $ 360 | $ 360 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (286) | (286) | | | | | | | | | |
| Operating Disbursements | (46) | (46) | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 29 | $ 29 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 29 | $ 29 | | | | $ 596 | $ 596 | $ 29 | | $ 29 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | | | | | | | | $ | % | $ | % |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | | Non-Consolidation Plan | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 16 | 16 | 0 | 1.9% | 0 | 1.9% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 1 | - | - | 0 | 1.9% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 1 | - | 0 | 1.9% | - | - |
| Operating Asset Recoveries | $ - | $ - | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | 0 | 0 | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $ 1 | $ 1 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (0) | (0) | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 0 | $ 0 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 0 | $ 0 | | | | $ 16 | $ 16 | $ 0 | | $ 0 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 1 | $ 1 | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 8 | 8 | 3 | 38.9% | 3 | 38.9% |
| Real Estate | 8 | 8 | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | - | - | - | - | - |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | - | - | - | - | - | - |
| Operating Asset Recoveries | $ 9 | $ 9 | | | | | | | | | |
| | | | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| TOTAL ASSETS | $ 9 | $ 9 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (5) | (5) | | | | | | | | | |
| Operating Disbursements | (0) | (0) | | | | | | | | | |
| DISTRIBUTABLE ASSETS | $ 3 | $ 3 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| NET DISTRIBUTABLE ASSETS | $ 3 | $ 3 | | | | $ 8 | $ 8 | $ 3 | | $ 3 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan $ | % | Non-Consolidation Plan $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 165 | 165 | 82 | 50.1% | 96 | 58.3% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | 588 | - | 236 | 40.1% | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 471 | - | - | 274 | 58.3% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 0 | - | 0 | 50.1% | - | - |
| **Operating Asset Recoveries** | $ - | $ - | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 318 | 370 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 318** | **$ 370** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 318** | **$ 370** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 318** | **$ 370** | | | | **$ 753** | **$ 636** | **$ 318** | | **$ 370** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | Class | | | Est. Allowed Claims[2] | | Estimated Plan Recovery | | | |
| | Debtors' Plan | Non-Consolidation Plan | Debtors' Plan | Non-Consolidation Plan | Description | Debtors' Plan | Non-Consolidation Plan | $ Debtors' Plan | % | $ Non-Consolidation Plan | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | 1 | Priority Non-Tax Claims | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | 2 | Secured Claims | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | 3 | General Unsecured Claims | 11 | 11 | 0 | 0.8% | 0 | 0.8% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4A[3] | N/A | Intercompany Claims of LBHI | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | N/A | 4[3][4] | Intercompany Claims | - | 31 | - | - | 0 | 0.8% |
| Other Assets | - | - | 4B[3] | N/A | Intercompany Claims of Affiliates Other Than LBHI | 31 | - | 0 | 0.8% | - | - |
| **Operating Asset Recoveries** | $ - | $ - | 5 | 5 | Equity Interests | - | - | - | - | - | - |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 0** | **$ 0** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (0) | (0) | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 0** | **$ 0** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 0** | **$ 0** | | | | **$ 43** | **$ 43** | **$ 0** | | **$ 0** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

# Exhibit 5

***The Plan Proponents' Liquidation Analysis***

Exhibit 5

Liquidation Analysis for Each Debtor

The liquidation analysis in this Disclosure Statement (the "Liquidation Analysis") has been prepared by the financial advisor for certain of the Plan Proponents. Unless otherwise noted, the information and data included in the Liquidation Analysis substantially rely on information contained in the Filing Debtors' Disclosure Statement, including without limitation in the recovery analysis presented as Exhibit 4 to the Debtors' Disclosure Statement and the Estimates of Claims and Claims Data set forth in Exhibit 6 to the Debtors' Disclosure Statement. **NEITHER THE PLAN PROPONENTS NOR ANY OF THEIR RESPECTIVE ADVISORS HAVE CONDUCTED ANY DUE DILIGENCE OR INDEPENDENT VERIFICATION OF ANY OF THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS SET FORTH BY THE FILING DEBTORS AND RELIED UPON SOLELY FOR PURPOSES OF THIS DISCLOSURE STATEMENT IN THE PLAN PROPONENTS' LIQUIDATION ANALYSIS. THE PLAN PROPONENTS CAUTION THAT THEY DO NOT AND CANNOT MAKE ANY REPRESENTATIONS AS TO THE ACCURACY OF ANY THE FACTUAL INFORMATION, DATA OR ASSUMPTIONS RELIED UPON OR INCORPORATED HEREIN.** NOTHING CONTAINED IN THE DEBTORS' DISCLOSURE STATEMENT OR IN THE EXHIBITS THERETO SHALL BE DEEMED TO CONSTITUTE AN ADMISSION OF A PLAN PROPONENT OR A WAIVER OR RELEASE OF ANY CLAIM BY OR AGAINST THE DEBTORS OR ANY OTHER PERSON OR TO PREJUDICE IN ANY MANNER THE RIGHTS OF ANY PLAN PROPONENT OR ANY OTHER PERSON IN ANY FURTHER PROCEEDINGS INVOLVING THE DEBTORS. **FURTHERMORE, THE PLAN PROPONENTS RESERVE THE RIGHT TO MODIFY ANY SUCH ESTIMATES OR ANY OTHER INFORMATION, DATA, OR ASSUMPTIONS CONTAINED IN THE LIQUIDATION ANALYSIS**.

Pursuant to section 1129(a)(7) of the Bankruptcy Code (the "Best Interest Test"), each holder of an impaired Claim or Equity Interest must either (i) accept the Plan, or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. In determining whether the Best Interest Test has been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in chapter 7. The gross amount of Cash available would be the sum of the proceeds from the disposition of the Debtors' assets and the Cash held by the Debtors at the commencement of their chapter 7 cases. Such amount then would be reduced by the costs and expenses of the liquidation. Prior to determining whether the Best Interest Test has been met for general unsecured creditors, further reductions would be required to eliminate Cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy chapter 7 and chapter 11 Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims that are senior to General Unsecured Claims, including any incremental Administrative Expense Claims that may result from the termination of the Debtors' businesses and the liquidation of assets. Any remaining Cash would be available for Distribution to general unsecured creditors and Equity Interest

holders in accordance with the distribution hierarchy established by section 726 of the Bankruptcy Code.

The Liquidation Analysis below reflects the estimated Cash proceeds, net of liquidation-related costs, that would be available to each of the Debtors' creditors if each Debtor were to be liquidated in a separate chapter 7 case, based upon information provided by the Filing Debtors in the Debtors' Disclosure Statement.

The principal difference between recoveries in the Recovery Analysis and the Liquidation Analysis results from the fees incurred by the chapter 7 trustee that are incorporated into the Liquidation Analysis but not into the Recovery Analysis. The Plan Proponents believe a chapter 7 trustee (like a chapter 11 debtor) would conduct an organized liquidation with a goal of maximizing value for the assets. As such, the Liquidation Analysis assumes that the liquidation period under a chapter 7 liquidation would be the same as the liquidation period under the Debtors' Plan and that the assets would be liquidated by a chapter 7 trustee at the same values as under the Plan.

Underlying the Liquidation Analysis are a number of estimates and assumptions regarding liquidation proceeds that rely on information provided by the Filing Debtors. Such assumptions and estimates are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Plan Proponents. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

Each of the following Liquidation Analyses should be read in conjunction with the following notes.

## 1. Assumptions

For purposes of each Liquidation Analysis, the financial advisor for certain of the Plan Proponents considered many factors and made certain assumptions. Those assumptions that the financial advisor for certain of the Plan Proponents consider significant are described below.

## 2. General

**a.     Conversion:** Each of the Chapter 11 Cases are converted to chapter 7 in 2012.

**b.     Appointment of Chapter 7 Trustee:** One chapter 7 trustee is appointed to liquidate and wind down the Debtors' estates. It should be noted that the selection of a separate chapter 7 trustee for one or more of the Debtors' estates could result in substantially higher administrative expenses associated with the chapter 7 cases from a large duplication of effort by each trustee and his/her professionals.

5-2

     **c.**    **Chapter 7 Trustee:**  The chapter 7 trustee would retain professionals (investment bankers, law firms, accounting firms, consultants, forensic experts, etc.) to assist in the liquidation and wind down of the Debtors' estates.  Given that the Filing Debtors have been managing the orderly wind down of their estates with over 500 employees and financial advisor professionals, and have stayed current on tax filings, regulatory and judicial inquiries, and financial records for hundreds of entities and bank accounts, it is reasonable to expect that the chapter 7 trustee will require the assistance of some portion of the Filing Debtors' professionals and/or their employees to assist in maintaining regulatory compliance and in the short-term liquidations due to their institutional knowledge.

     **d.**    **Start-Up Time:**  Given the complexity of the Chapter 11 Cases and the underlying assets and Claims, the Liquidation Analysis assumes that the chapter 7 trustee and any newly retained professionals will require approximately three to six months to familiarize themselves with the Debtors' estates, the assets, the Claims and related matters.

     **e.**    **Duration of Liquidation:**  The Liquidation Analysis assumes that the actual liquidation of assets of the Debtors would occur over a total of four and a half years, during which time all of the Debtors' major assets would either be sold or conveyed to the applicable lien holders and the Cash proceeds, net of liquidation-related costs, would be available for Distribution to creditors.  In contrast, the Filing Debtors limit the liquidation period to 12-18 months.  The Plan Proponents believe that a four year and six month liquidation period gives the chapter 7 trustee the opportunity to maximize the value of the assets sold for the Debtors' estates.

     Approximately 67,000 Claims were filed against the Debtors prior to the Bar Date, in amounts totaling approximately $1.2 trillion (including the Filing Debtors' estimates of amounts for unliquidated Claims).  As of December 16, 2010, approximately 53,500 Filed Claims remain on the Claims register.  Based in part on the Filing Debtors' estimates, the Liquidation Analysis assumes that a chapter 7 trustee will require approximately two to three years to reconcile Claims and initiate litigation including, but not limited to, claim objections and avoidance actions (to the extent the applicable statute of limitations has been extended pursuant to tolling agreements).  It is possible that some Distributions could be made prior to such period, but Claims would be subject to reserves.

     It is not uncommon in large cases for liquidations to last many years while chapter 7 trustees prosecute difficult Claims-related and other litigation.

     **f.**    **Consolidation for Administrative Purposes:**  This analysis assumes that the Debtors are consolidated for administrative purposes during the chapter 7 cases.  Should one or more Debtors be liquidated in a separately administered chapter 7 case, the total administrative costs of the Debtors' chapter 7 cases could be substantially higher than the costs assumed in this analysis.

     **3.**    **Assets**

     **a.**    **Cash:**  Beginning Cash is based on restricted and unrestricted Cash balances.

**b.** **Assets:** This Liquidation Analysis makes the same assumptions as to the value of each class of assets as the Recovery Analysis with the exception of intercompany receivables, which vary as a result of fees that would be incurred by the chapter 7 trustee. Because this is a liquidating Plan, the Plan Proponents believe that the same assumptions should apply to asset values obtained from a liquidation pursuant to the Plan and a liquidation under chapter 7, particularly given that the liquidation period is the same under both the Liquidation Analysis and the Recovery Analysis.

**4.** **Costs**

**a.** **Employees:** It is not anticipated that the chapter 7 trustee will require a significant number of employees to liquidate the assets. To the extent that the chapter 7 trustee terminates the post-petition employment contracts of any of the Debtors' current employees, the Debtors' estates would be subject to additional Administrative Expense Claims.

**b.** **Trustee Fees:** The chapter 7 trustee would be compensated in accordance with the guidelines of section 326 of the Bankruptcy Code. The Liquidation Analysis assumes that the chapter 7 trustee's fees would equal 0.1% of total Distributions by the Debtors, which would translate into approximately $18 million per year. The fees are divided among the Debtors in proportion to each Debtor's estimated available assets for distribution. However, the actual arrangements with a Trustee may result in a different percentage.

**c.** **Professional Fees:** Given that the chapter 7 trustee and, to the extent applicable, the trustee's professionals must familiarize themselves with the Debtors, their estates, their assets and the Claims asserted against them, and must conduct the liquidation, the Debtors' estates may incur additional professionals' fees in the context of a chapter 7 liquidation.

**5.** **Estimated Recoveries**

**a.** **Determination of Claims:** All Claims are either Allowed or estimated for purposes of establishing a reserve in 2011, such that first Distributions would not be made until 2012. Final determination of all disputed Claims cannot be determined at this time.

**b.** **Classes of Claims:** The estimated recoveries use the Classes established by the Plan to facilitate creditors' ability to compare the recoveries under the Plan versus recoveries in a chapter 7 liquidation.

**c.** **Timing of Distributions:** While cash may be realized sooner, it is currently contemplated that the first Distributions under the Plan would commence in late 2011. In contrast, it is anticipated that the first Distribution to Creditors in a chapter 7 would not be made until late 2012. This assumption is based, in part, upon the assumption that the chapter 7 trustee would be reluctant to make significant interim Distributions prior to the determination of at least 50% of the disputed Claims, which would take longer with fewer employees with institutional knowledge.

5-4

d.    **Additional Claims:**  The liquidation of the Debtors will result in additional Claims being satisfied under chapter 7, including, but not limited to, Claims arising from the rejection of any remaining executory contracts, unexpired leases, and post-petition contracts.  However, due to the uncertainty as to which contracts or leases would ultimately be rejected and the determination of the amount of any rejection damages (if any), no Claims related to the rejection of executory contracts are included in the estimated recoveries.  Any such Claims, if filed, would further dilute any recoveries in a chapter 7 liquidation.

e.    **Amount of Allowed Claims:** The determination of the Allowed Claims is an uncertain process given the number of disputed, contingent and/or unliquidated Claims in the Chapter 11 Cases.  No order or findings have been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Allowed Claims used in the liquidation analysis.  To the extent that Claims have been reduced due to elimination of duplicate and superseded Claims, this is the basis for the Claims used in the Liquidation Analysis.  The actual amount of Allowed Claims could vary materially.

Nothing contained in the Debtors' Disclosure Statement (including any exhibits thereto) shall be deemed to constitute an admission by any Plan Proponent, or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or otherwise modify any and all Allowed Claim amounts, either partially or in their entirety.

f.    **LBT / LBSN Senior Claims:**  Like the Recovery Analysis, the Liquidation Analysis treats the Claims of LBT and LBSN against LBHI, which are classified by the Filing Debtors as Class 8A Intercompany Claims, as Class 4A Senior Intercompany Claims. Accordingly, LBT and LBSN are entitled to their Pro Rata Share of Subordinated Class 10A Distributions, Subordinated Class 10B Distributions, and Subordinated Class 10C Distributions on account of their Allowed Senior Intercompany Claims.

g.    **Intercompany Claims of LBHI Against Other Debtors:**  For illustrative purposes, the Liquidation Analysis assumes that allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.  Additionally, the analysis reflects the reduction of the RACERS A Trust claim against LBSF by the amount of the RACERS A Trust's recovery from LCPI.

h.    **Administrative Expenses:**  The Plan Proponents believe that certain of the Domestic Operating Companies are currently bearing a share of the administrative costs that is disproportionate to the amount of work actually completed on behalf of those Domestic Operating Companies and to the benefit that those Domestic Operating Companies are receiving, and have been bearing such costs since the commencement of these cases.  Thus, the Liquidation Analysis reflects the estimated reallocation of 50% of administrative expenses from LBSF to LBHI.

6.    **Notes to Liquidation Analysis**

a.    **Secured Claims**

To the extent that the value of the collateral securing a Secured Claim is less than the Secured Claim, the remaining amount would be a deficiency Claim and a General Unsecured Claim against the applicable Debtor.

**b.**    **Estimated Aggregate Unpaid Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims**

The amount of Cash that would be available for Distributions to general unsecured creditors in a chapter 7 case would be reduced by any Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims that are senior to General Unsecured Claims in the Chapter 11 Cases.  Any remaining Cash after satisfaction of these Claims would be available for Distribution to general unsecured creditors and Equity Interest holders in accordance with the Distribution hierarchy established by section 726 of the Bankruptcy Code.

**c.**    **Liquidation Analysis**

The Liquidation Analysis for each Debtor is attached below.

| | Assets | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 2,704 | $ 2,704 | 1 | Priority Non-Tax Claims | $ 3 | $ 3 | $ 3 | 100.0% | $ 3 | 100.0% |
| Restricted Cash | 2,910 | 2,910 | 2 | Secured Claims | 2,447 | 2,447 | 2,447 | 100.0% | 2,447 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | Senior Unsecured Claims | 83,582 | 83,582 | 13,351 | 16.0% | 13,329 | 15.9% |
| Real Estate | 2,753 | 2,753 | | | | | | | | |
| Loans | 457 | 457 | 4A[3] | Senior Intercompany Claims | 51,119 | 51,119 | 8,166 | 16.0% | 8,152 | 15.9% |
| Principal Investments | 1,722 | 1,722 | | | | | | | | |
| Derivatives & Other Contracts | - | - | 4B[3] | Senior Affiliate Guarantee Claims | 10,589 | 10,589 | 1,652 | 15.6% | 1,649 | 15.6% |
| Other Assets | 2,732 | 2,732 | 5A | Senior Third-Party Guarantee Claims | 21,174 | 21,174 | 3,303 | 15.6% | 3,298 | 15.6% |
| **Operating Asset Recoveries** | **$ 13,278** | **$ 13,278** | 5B | Senior Third-Party LBT/LBSN Guarantee Claims | 31,137 | 31,137 | 4,858 | 15.6% | 4,849 | 15.6% |
| Intercompany Receivables | 31,064 | 31,045 | | | | | | | | |
| Equity Interests in Affiliates | 2,823 | 2,823 | 6 | Derivative Claims | - | - | - | - | - | - |
| **TOTAL ASSETS** | **$ 47,165** | **$ 47,146** | 7 | General Unsecured Claims | 12,281 | 12,281 | 1,808 | 14.7% | 1,804 | 14.7% |
| Administrative Expenses[1] | | | 8A | Intercompany Claims | - | - | - | - | - | - |
| Administrative Expenses & Other | (2,661) | (2,661) | 8B[3] | Affiliate Guarantee Claims | 1,654 | 1,654 | 243 | 14.7% | 243 | 14.7% |
| Post-Petition Intercompany Payables | (1,851) | (1,851) | | | | | | | | |
| Operating Disbursements | (1,026) | (1,026) | 9 | Derivative Guarantee Claims | 39,386 | 39,386 | 5,797 | 14.7% | 5,787 | 14.7% |
| Chapter 7 Trustee Fees | - | (47) | 10A | Subordinated Class 10A Claims | 3,393 | 3,393 | - | - | - | - |
| | | | 10B | Subordinated Class 10B Claims | 10,368 | 10,368 | - | - | - | - |
| | | | 10C | Subordinated Class 10C Claims | 1,503 | 1,503 | - | - | - | - |
| **DISTRIBUTABLE ASSETS** | **$ 41,628** | **$ 41,562** | 11 | Section 510(b) Claims | - | - | - | - | - | - |
| Recovery From Plan Adjustments | - | - | 12 | Equity Interests | - | - | - | - | - | - |
| **NET DISTRIBUTABLE ASSETS** | **$ 41,628** | **$ 41,562** | | | **$ 268,636** | **$ 268,636** | **$ 41,628** | | **$ 41,562** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Plan | | Liquidation | |
| Cash and Cash Equivalents | $  1,862 | $  1,862 | 1 | Priority Non-Tax Claims | | $     - | $     - | $     - | - | $     - | - |
| Restricted Cash | 39 | 39 | 2 | Secured Claims | | 104 | 104 | 104 | 100.0% | 104 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 41 | 41 | 25 | 60.4% | 25 | 60.4% |
| Real Estate | 5,474 | 5,474 | | | | | | | | | |
| Loans | 4,373 | 4,373 | 4 | General Unsecured Claims | | 2,916 | 2,916 | 1,762 | 60.4% | 1,760 | 60.4% |
| Principal Investments | 1,084 | 1,084 | | | | | | | | | |
| Derivatives & Other Contracts | 99 | 99 | 5[3][4] | Intercompany Claims | | 23,907 | 23,907 | 14,448 | 60.4% | 14,433 | 60.4% |
| Other Assets | 80 | 80 | 6 | Equity Interests | | - | - | - | - | - | - |
| **Operating Asset Recoveries** | **$ 13,011** | **$ 13,011** | | | | | | | | | |
| Intercompany Receivables | 4,076 | 4,076 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | 289 | 289 | | | | | | | | | |
| **TOTAL ASSETS** | **$ 17,376** | **$ 17,376** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | (144) | (144) | | | | | | | | | |
| Post-Petition Intercompany Payables | (88) | (88) | | | | | | | | | |
| Operating Disbursements | (805) | (805) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (17) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 16,339** | **$ 16,322** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 16,339** | **$ 16,322** | | | | **$ 26,968** | **$ 26,968** | **$ 16,339** | | **$ 16,322** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ | % | $ | % |
| | | | | | | | | Plan | | Liquidation | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 1,491 | $ 1,491 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 36 | 36 | 2 | Secured Claims | | 36 | 36 | 36 | 100.0% | 36 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 1,359 | 1,359 | 805 | 59.2% | 804 | 59.2% |
| Real Estate | - | - | | | | | | | | | |
| Loans | 0 | 0 | 4 | General Unsecured Claims | | 776 | 776 | 460 | 59.2% | 459 | 59.2% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 295 | 295 | 5[3][4] | Intercompany Claims | | 1,033 | 1,033 | 612 | 59.2% | 611 | 59.2% |
| Other Assets | - | - | 6 | Equity Interests | | - | - | - | - | - | - |
| **Operating Asset Recoveries** | **$ 1,822** | **$ 1,822** | | | | | | | | | |
| Intercompany Receivables | 123 | 123 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 1,945** | **$ 1,945** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (18) | (18) | | | | | | | | | |
| Operating Disbursements | (15) | (15) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (2) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 1,912** | **$ 1,910** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 1,912** | **$ 1,910** | | | | | **$ 3,204** | **$ 3,204** | **$ 1,912** | | **$ 1,910** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | | | | | | | | $ | % | $ | % |
| | Plan | Liquidation | | Description | | Plan | Liquidation | Plan | | Liquidation | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 6,746 | $ 6,746 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 610 | 610 | 2 | Secured Claims | | 707 | 707 | 707 | 100.0% | 707 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 24,149 | 24,149 | 6,305 | 26.1% | 6,297 | 26.1% |
|   Real Estate | - | - | | | | | | | | | |
|   Loans | 2 | 2 | 4 | General Unsecured Claims | | 154 | 154 | 40 | 26.1% | 40 | 26.1% |
|   Principal Investments | - | - | | | | | | | | | |
|   Derivatives & Other Contracts | 4,527 | 4,527 | 5[3][4][5] | Intercompany Claims | | 20,939 | 20,943 | 5,467 | 26.1% | 5,461 | 26.1% |
| Other Assets | 25 | 25 | 6 | Equity Interests | | - | - | - | - | - | - |
| **Operating Asset Recoveries** | **$ 11,910** | **$ 11,910** | | | | | | | | | |
|   Intercompany Receivables | 927 | 926 | | | | | | | | | |
|   Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
|   Equity Interests in Affiliates | 157 | 157 | | | | | | | | | |
| **TOTAL ASSETS** | **$ 12,994** | **$ 12,993** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
|   Administrative Expenses & Other | (10) | (10) | | | | | | | | | |
|   Post-Petition Intercompany Payables | (156) | (156) | | | | | | | | | |
|   Operating Disbursements | (310) | (310) | | | | | | | | | |
|   Chapter 7 Trustee Fees | - | (13) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 12,519** | **$ 12,505** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 12,519** | **$ 12,505** | | | | **$ 45,949** | **$ 45,953** | **$ 12,519** | | **$ 12,505** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.
(5) For illustrative purposes, RACERS Claims included in Class 5 are shown net of recovery to the RACERS A Trust from LCPI.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 239 | $ 239 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 563 | 563 | 182 | 32.3% | 181 | 32.2% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | General Unsecured Claims | | 4 | 4 | 1 | 32.3% | 1 | 32.2% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 157 | 157 | 5[3][4] | Intercompany Claims | | 577 | 577 | 186 | 32.3% | 186 | 32.2% |
| Other Assets | - | - | 6 | Equity Interests | | - | - | - | - | - | - |
| **Operating Asset Recoveries** | **$ 396** | **$ 396** | | | | | | | | | |
| Intercompany Receivables | - | - | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 396** | **$ 396** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (7) | (7) | | | | | | | | | |
| Operating Disbursements | (20) | (20) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 369** | **$ 369** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 369** | **$ 369** | | | | | **$ 1,144** | **$ 1,144** | **$ 369** | | **$ 369** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | | | | | | | | $ | % | $ | % |
| | Plan | Liquidation | | Description | | Plan | Liquidation | Plan | | Liquidation | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 461 | $ 461 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 5 | 5 | 2 | Secured Claims | | 5 | 5 | 5 | 100.0% | 5 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 760 | 760 | 258 | 34.0% | 258 | 33.9% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | General Unsecured Claims | | 11 | 11 | 4 | 34.0% | 4 | 33.9% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 254 | 254 | 5[3][4] | Intercompany Claims | | 1,264 | 1,264 | 429 | 34.0% | 429 | 33.9% |
| Other Assets | - | - | 6 | Equity Interests | | - | - | - | - | - | - |
| **Operating Asset Recoveries** | **$ 720** | **$ 720** | | | | | | | | | |
| Intercompany Receivables | 6 | 6 | | | | | | | | | |
| Recovery on Affiliate Guarantees | 4 | 4 | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 730** | **$ 730** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | (34) | (34) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (1) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 696** | **$ 695** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 696** | **$ 695** | | | | | **$ 2,040** | **$ 2,040** | **$ 696** | | **$ 695** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 387 | $ 387 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 75 | 75 | 75 | 100.0% | 75 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | General Unsecured Claims | | 3 | 3 | 3 | 100.0% | 3 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 9 | 9 | 5[3][4] | Intercompany Claims | | 123 | 123 | 123 | 100.0% | 123 | 100.0% |
| Other Assets | - | - | 6 | Equity Interests | | - | - | 196 | - | 196 | - |
| **Operating Asset Recoveries** | **$ 396** | **$ 396** | | | | | | | | | |
| Intercompany Receivables | 2 | 2 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 399** | **$ 399** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | (1) | (1) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 398** | **$ 398** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 398** | **$ 398** | | | | | **$ 202** | **$ 202** | **$ 398** | | **$ 398** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 424 | $ 424 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | Derivative Claims | | 58 | 58 | 58 | 100.0% | 58 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4 | General Unsecured Claims | | 5 | 5 | 5 | 100.0% | 5 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | 44 | 44 | 5[3][4] | Intercompany Claims | | 204 | 204 | 204 | 100.0% | 204 | 100.0% |
| Other Assets | - | - | 6 | Equity Interests | | - | - | 196 | - | 196 | - |
| **Operating Asset Recoveries** | **$ 468** | **$ 468** | | | | | | | | | |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 468** | **$ 468** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (2) | (2) | | | | | | | | | |
| Operating Disbursements | (4) | (4) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 462** | **$ 462** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 462** | **$ 462** | | | | | **$ 267** | **$ 267** | **$ 462** | | **$ 462** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

|  | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
|  | Plan | Liquidation | | Description | | Plan | Liquidation | $ | % | $ | % |
|  |  |  |  |  |  |  |  | Plan | | Liquidation | |
| Cash and Cash Equivalents | $ - | $ - | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 2 | 2 | 2 | 100.0% | 2 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 36 | 36 | 36 | 100.0% | 36 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | 310 | - | 310 | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ - | $ - | | | | | | | | | |
| Intercompany Receivables | 349 | 349 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 349 | $ 349 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 349 | $ 348 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 349 | $ 348 | | | | | $ 38 | $ 38 | $ 349 | | $ 348 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

**Liquidation Analysis for PAMI STATLER**

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | $ | % | $ | % | |
| | Plan | Liquidation | | | Description | Plan | Liquidation | Plan | | Liquidation | | |
| Cash and Cash Equivalents | $    - | $    - | 1 | Priority Non-Tax Claims | | $    - | $    - | $    - | - | $    - | - | |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - | |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 3 | 3 | - | - | - | - | |
| Real Estate | 16 | 16 | | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | - | - | - | - | - | - | |
| Principal Investments | - | - | | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - | |
| Other Assets | - | - | | | | | | | | | | |
| **Operating Asset Recoveries** | **$    16** | **$    16** | | | | | | | | | | |
| Intercompany Receivables | 0 | 0 | | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | | |
| **TOTAL ASSETS** | **$    16** | **$    16** | | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | | |
| Post-Petition Intercompany Payables | (15) | (15) | | | | | | | | | | |
| Operating Disbursements | (1) | (1) | | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$    -** | **$    (0)** | | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$    -** | **$    (0)** | | | | **$    3** | **$    3** | **$    -** | | **$    -** | | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 0 | $ 0 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 0 | 0 | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 3 | 3 | 3 | 100.0% | 3 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 18 | 18 | 18 | 100.0% | 18 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | 3 | - | 3 | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ 1 | $ 1 | | | | | | | | | |
| Intercompany Receivables | 23 | 23 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 24 | $ 24 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 24 | $ 24 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 24 | $ 24 | | | | $ 21 | $ 21 | $ 24 | | $ 24 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | | | | | | | | $ | % | $ | % |
| | Plan | Liquidation | | Description | | Plan | Liquidation | Plan | | Liquidation | |
| Cash and Cash Equivalents | $    0 | $    0 | 1 | Priority Non-Tax Claims | | $    - | $    - | $    - | - | $    - | - |
| Restricted Cash | 0 | 0 | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 3 | 3 | 1 | 37.7% | 1 | 37.6% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 7 | 7 | 2 | 37.7% | 2 | 37.6% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $    0 | $    0 | | | | | | | | | |
| Intercompany Receivables | 3 | 3 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $    4 | $    4 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $    4 | $    4 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $    4 | $    4 | | | | $    10 | $    10 | $    4 | | $    4 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 0 | $ 0 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 0 | 0 | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 2 | 2 | 2 | 61.2% | 2 | 61.2% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 7 | 7 | 4 | 61.2% | 4 | 61.2% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ 1 | $ 1 | | | | | | | | | |
| Intercompany Receivables | 6 | 6 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 6 | $ 6 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 6 | $ 6 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 6 | $ 6 | | | | $ 10 | $ 10 | $ 6 | | $ 6 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 0 | $ 0 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 2 | 2 | 2 | 100.0% | 2 | 100.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 3 | 3 | 3 | 100.0% | 3 | 100.0% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | 47 | - | 47 | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | **$ 0** | **$ 0** | | | | | | | | | |
| Intercompany Receivables | 52 | 52 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | 0 | 0 | | | | | | | | | |
| **TOTAL ASSETS** | **$ 52** | **$ 52** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 52** | **$ 52** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 52** | **$ 52** | | | | | **$ 6** | **$ 6** | **$ 52** | | **$ 52** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

**Liquidation Analysis for LS Finance**

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | $ | % | $ | % |
| | Plan | Liquidation | | | Description | Plan | Liquidation | Plan | | Liquidation | |
| Cash and Cash Equivalents | $ - | $ - | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | 2 | 2 | 2 | Secured Claims | | 2 | 2 | 2 | 100.0% | 2 | 100.0% |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 2 | 2 | 1 | 71.2% | 1 | 71.0% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ 2 | $ 2 | | | | | | | | | |
| Intercompany Receivables | 2 | 2 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 3 | $ 3 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 3 | $ 3 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 3 | $ 3 | | | | $ 4 | $ 4 | $ 3 | | $ 3 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 7 | $ 7 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 2 | 2 | 0 | 4.8% | 0 | 4.7% |
| Real Estate | 353 | 353 | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 593 | 593 | 29 | 4.8% | 28 | 4.7% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | **$ 360** | **$ 360** | | | | | | | | | |
| Intercompany Receivables | - | - | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | **$ 360** | **$ 360** | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (286) | (286) | | | | | | | | | |
| Operating Disbursements | (46) | (46) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$ 29** | **$ 28** | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$ 29** | **$ 28** | | | | | **$ 596** | **$ 596** | **$ 29** | | **$ 28** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 16 | 16 | 0 | 1.9% | 0 | 1.9% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 1 | 1 | 0 | 1.9% | 0 | 1.9% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ - | $ - | | | | | | | | | |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | 0 | 0 | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 1 | $ 1 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (0) | (0) | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 0 | $ 0 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 0 | $ 0 | | | | | $ 16 | $ 16 | $ 0 | | $ 0 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

**Liquidation Analysis for LB Rose Ranch**

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ 1 | $ 1 | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 8 | 8 | 3 | 38.9% | 3 | 38.6% |
| Real Estate | 8 | 8 | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | - | - | - | - | - | - |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ 9 | $ 9 | | | | | | | | | |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 9 | $ 9 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (5) | (5) | | | | | | | | | |
| Operating Disbursements | (0) | (0) | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 3 | $ 3 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 3 | $ 3 | | | | $ 8 | $ 8 | $ 3 | | $ 3 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $    - | $    - | 1 | Priority Non-Tax Claims | | $    - | $    - | $    - | - | $    - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 165 | 165 | 96 | 58.3% | 96 | 58.1% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 471 | 471 | 274 | 58.3% | 274 | 58.1% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $    - | $    - | | | | | | | | | |
| Intercompany Receivables | 370 | 370 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $  370 | $  370 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | - | - | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $  370 | $  370 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $  370 | $  370 | | | | $  636 | $  636 | $  370 | | $  370 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

| | Assets | | | Class | | Est. Allowed Claims[2] | | Estimated Recovery | | | |
| | Plan | Liquidation | | Description | | Plan | Liquidation | $ Plan | % Plan | $ Liquidation | % Liquidation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ - | $ - | 1 | Priority Non-Tax Claims | | $ - | $ - | $ - | - | $ - | - |
| Restricted Cash | - | - | 2 | Secured Claims | | - | - | - | - | - | - |
| Financial Instruments and Other Inventory | | | 3 | General Unsecured Claims | | 11 | 11 | 0 | 0.8% | 0 | 0.8% |
| Real Estate | - | - | | | | | | | | | |
| Loans | - | - | 4[3][4] | Intercompany Claims | | 31 | 31 | 0 | 0.8% | 0 | 0.8% |
| Principal Investments | - | - | | | | | | | | | |
| Derivatives & Other Contracts | - | - | 5 | Equity Interests | | - | - | - | - | - | - |
| Other Assets | - | - | | | | | | | | | |
| **Operating Asset Recoveries** | $ - | $ - | | | | | | | | | |
| Intercompany Receivables | 0 | 0 | | | | | | | | | |
| Recovery on Affiliate Guarantees | - | - | | | | | | | | | |
| Equity Interests in Affiliates | - | - | | | | | | | | | |
| **TOTAL ASSETS** | $ 0 | $ 0 | | | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | | | |
| Administrative Expenses & Other | - | - | | | | | | | | | |
| Post-Petition Intercompany Payables | (0) | (0) | | | | | | | | | |
| Operating Disbursements | - | - | | | | | | | | | |
| Chapter 7 Trustee Fees | - | (0) | | | | | | | | | |
| **DISTRIBUTABLE ASSETS** | $ 0 | $ 0 | | | | | | | | | |
| Contribution to Plan Adjustments | - | - | | | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | $ 0 | $ 0 | | | | | $ 43 | $ 43 | $ 0 | | $ 0 | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "-". Values between zero and $500,000 appear as "0".
(1) Comprised of administrative expenses, professional compensation and priority tax claims.
(2) Represents Debtors' estimate of the amount of claims ultimately allowed.
(3) Represents claims after the effects of set-off.
(4) For illustrative purposes, allowed Intercompany Claims of LBHI against other Debtors are reduced by 20% of funding balances.

# Exhibit 6

*Reserved*

# Exhibit 7

### *The Filing Debtors' Cash Flow Estimates Through 2014 (Debtors' Disclosure Statement Exhibit 7)*

Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth in the Debtors' Disclosure Statement or the exhibits thereto. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein.  Nothing contained the Debtors' Disclosure Statement or in the exhibits thereto shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained in the Debtors' Disclosure Statement, including any exhibits thereto.

*Please refer Exhibit 7 to the Debtors' Disclosure Statement, dated as of January 25, 2011.*

# Exhibit 8

### *The Filing Debtors' Significant Intercompany Balances (Debtors' Disclosure Statement Exhibit 8)*

Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth in the Debtors' Disclosure Statement or the exhibits thereto. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein.  Nothing contained the Debtors' Disclosure Statement or in the exhibits thereto shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained in the Debtors' Disclosure Statement, including any exhibits thereto.

*Please refer Exhibit 8 to the Debtors' Disclosure Statement, dated as of January 25, 2011.*

# Exhibit 9

***The Filing Debtors' Lehman Background Information (Debtors' Disclosure Statement Exhibit 9)***

Neither the Plan Proponents nor any of their respective advisors have conducted any due diligence or independent verification of any of the factual information, data or assumptions set forth in the Debtors' Disclosure Statement or the exhibits thereto. The Plan Proponents caution that they do not and cannot make any representations as to the accuracy of any of the factual information, data or assumptions relied upon or incorporated therein.  Nothing contained the Debtors' Disclosure Statement or in the exhibits thereto shall be deemed to constitute an admission of a Plan Proponent or a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, the Plan Proponents reserve the right to challenge or modify any and all aspects of the information and statements contained in the Debtors' Disclosure Statement, including any exhibits thereto.

*Please refer Exhibit 9 to the Debtors' Disclosure Statement, dated as of January 25, 2011.*