Presentment Date and Time: December 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: December 5, 2011 at 5:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): December 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                        :
            Debtors.                    :    (Jointly Administered)
                                        :
-------------------------------------------------------------------x

NOTICE OF PRESENTMENT
OF STIPULATION AND AGREEMENT
BY AND AMONG FANNIE MAE, FREDDIE MAC AND
THE DEBTORS REGARDING THE DEBTORS' THIRD AMENDED PLAN

**PLEASE TAKE NOTICE** that the undersigned will present the annexed Stipulation and Agreement By and Among Fannie Mae, Fredie Mac and the Debtors Regarding the Debtors' Third Amended Plan (the "Stipulation and Agreement") to the Honorable James M. Peck, United States Bankruptcy Judge, for signature on **December 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation and Agreement shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to "Chambers"), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601 ("Chambers"); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) the Office of the United

US_ACTIVE:\43869594\02\58399.0008

States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan R. Fleck, Esq., attorneys for the Creditors' Committee; (v) Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166 Attn: David Neier, Esq., attorneys for Federal National Mortgage Association; and (vi) Landman Corsi Ballaine & Ford P.C., 120 Broadway, New York, New York 10271 Attn: Mark S. Landman, Esq., attorneys for Federal Home Loan Mortgage Corporation, so as to be filed and received no later than **December 5, 2011 at 5:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Stipulation and Agreement is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely served and filed, a hearing (the "Hearing") will be held to consider the Stipulation and Agreement on **December 6, 2011 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 29, 2011
       New York, New York

                                                /s/ Alfredo R. Pérez
                                                Alfredo R. Pérez

                                                WEIL, GOTSHAL & MANGES LLP
                                                767 Fifth Avenue
                                                New York, New York 10153
                                                Telephone: (212) 310-8000
                                                Facsimile: (212) 310-8007

                                                Attorneys for Debtors
                                                and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC, *et. al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**STIPULATION AND AGREEMENT BY
AND AMONG FANNIE MAE, FREDDIE MAC AND THE
DEBTORS REGARDING THE DEBTORS' THIRD AMENDED PLAN**

This stipulation ("**Stipulation**") is entered into as of this 29th day of November 2011, by and among (i) the Federal National Mortgage Association ("**Fannie Mae**"), (ii) the Federal Home Loan Mortgage Corporation ("**Freddie Mac**," and together with Fannie Mae, the "**GSEs**"), and (iii) Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors and debtors-in-possession (collectively with LBHI, the "**Debtors**," and together with Fannie Mae and Freddie Mac, the "**Parties**," and each of them, a "**Party**") in the jointly administered chapter 11 bankruptcy cases captioned In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP) (the "**Bankruptcy Cases**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

**RECITALS**

WHEREAS, on September 6, 2008, the Federal Housing Finance Agency ("**FHFA**") was appointed conservator for Fannie Mae and Freddie Mac (the "**Conservator**"), and granted all rights, titles, powers and privileges as Conservator thereof, pursuant to 12 U.S.C. § 4617, as amended by P.L. 110-289, which was enacted as part of the Housing and Economic Recovery Act of 2008 ("**HERA**");

WHEREAS, LBHI and certain of the Debtors commenced the Bankruptcy Cases on September 15, 2008, with additional chapter 11 petitions filed thereafter for certain of the other Debtors.  The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, on July 2, 2009, the Bankruptcy Court entered an *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (Docket No. 4271), which, among other things set September 22, 2009, as the general bar date for filing proofs of claim in the Bankruptcy Cases;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (together with any supplements, amendments and exhibits thereto, and as each may be further modified from time to time, collectively, the "**Third Amended Plan**") and a related disclosure statement (the "**Disclosure Statement**").  On September 1, 2011, the Bankruptcy Court entered the order approving the adequacy of the information in the Disclosure Statement (the "**Disclosure Statement Order**");

WHEREAS, on October 25, 2011, the Debtors filed their Plan Supplement to the Third Amended Plan (the "**Plan Supplement**"), which Plan Supplement includes "Exhibit 2, Part D – Residential Real Estate Agreements";[1]

---

[1] Exhibit 2, Part D of the Plan Supplement states, in part:

> The Debtors intend to assume all loan servicing contracts relating to residential mortgage loans and real estate owned properties ("REO") owned by the Debtors, including, but not limited to, loan servicing contracts that may be contained within and severable from other contracts that the Debtors do not seek to assume.  To the extent any such contracts do not appear on Exhibit 2, Part D, for any reason, such

Footnote continued on next page

**Fannie Mae Claims**

WHEREAS, Fannie Mae timely filed the below proofs of claim in the Bankruptcy Cases (collectively, the "**Fannie Mae Claims**"):[2]

| Claim Number | Debtor | Filed Claim Amount | Basis for Claim |
|---|---|---|---|
| 29556 (amended and superseded by 40611) | LBSF | Unliquidated | • Derivative Contract |
| 29557 (the "**Fannie Mae LBHI Claim**") | LBHI | $19.058 billion | • Guarantee of Derivative Contract<br>• LBHI's obligation to repurchase mortgage loans and participation interests<br>• LBHI's breach of representations and warranties<br>• Material misstatements or omissions in connection with LBHI's sale of certain bonds to Fannie Mae<br>• Violations by LBHI of Sections 11 and 12 of the Securities Act of 1933 in connection with LBHI's sale of certain notes to Fannie Mae |

---

Footnote continued from previous page

    contracts shall be treated as if they were listed herein and assumed as of the Effective Date and the required cure amounts for such contracts shall be zero.

    The Debtors have not listed on Exhibit 2, Part D, any contracts pursuant to which the Debtors have retained mortgage loan servicing rights or a retained fee interest, either through exclusion or affirmative conveyance, in connection with residential mortgage loans and/or REO currently or previously owned by the Debtors, because of their conclusion that such contracts are not executory. In the event that the Bankruptcy Court determines that such contracts are executory contracts, then all such contracts shall be treated as if they were listed herein and assumed as of the Effective Date and the required cure amounts for such contracts shall be zero.

[2]  The descriptions of the Fannie Mae Claims contained in this Stipulation are for reference only, and are subject in all respects to the terms and conditions of the Fannie Mae Claims, as more specifically set forth therein and, except to the extent any of the Fannie Mae Claims have previously been separately allowed by an order of the Bankruptcy Court or agreement by the Parties, does not represent any admission by the Debtors in any respect.

3

WHEREAS, pursuant to a settlement agreement, Claim Number 40611 and a portion of Claim Number 29557 were allowed (i) against Lehman Brothers Special Financing Inc. ("**LBSF**") as a general, non-priority unsecured claim in the amount of $110 million (the "**Allowed Fannie Mae LBSF Claim**"); and (ii) against LBHI as a general, non-priority unsecured claim in the amount of $110 million (the "**Allowed Fannie Mae LBHI Claim**," and together with the Allowed Fannie Mae LBSF Claim, the "**Allowed Fannie Mae Claims**");

### Freddie Mac Claims

WHEREAS, Freddie Mac timely filed the below proofs of claim in the Bankruptcy Cases (collectively, the "**Freddie Mac Claims**", and together with the Fannie Mae Claims, the "**Claims**")[3]:

| Claim Number | Debtor | Filed Claim Amount | Basis for Claim |
|---|---|---|---|
| 33568 (the "**Freddie Mac Priority Claim**") | LBHI | $1,202,241,875.00 | • Two (2) loans made by Freddie Mac to LBHI on August 19 and August 20, 2008, in the amounts of $450,000,000 and $750,000,000, respectively |
| 33569 | LBSF | $17,239,087.33 | • Derivative Contract |
| 33576 (the "**Freddie Mac LBHI Claim**") | LBHI | $885,839,087.33 | • Guarantee of Derivative Contract<br>• Seller/servicer related obligations |

WHEREAS, pursuant to that certain Termination Agreement, dated July 27, 2011, Claim Number 33569 and a portion of Claim Number 33576 were allowed (i) against LBSF as a general, non-priority unsecured claim in the amount of $16,394,310.08 (the "**Allowed Freddie**

---

[3] The descriptions of the Freddie Mac Claims contained in this Stipulation are for reference only, and are subject in all respects to the terms and conditions of the Freddie Mac Claims, as more specifically set forth therein and, except to the extent any of the Freddie Mac Claims have previously been separately allowed by an order of the Bankruptcy Court or agreement by the Parties, does not represent any admission by the Debtors in any respect.

4

**Mac LBSF Claim**"); and (ii) against LBHI as a general, non-priority unsecured claim in the amount of $16,100,024.63 (the "**Allowed Freddie Mac LBHI Claim**", and together with the Allowed Freddie Mac LBSF Claim, the "**Allowed Freddie Mac Claims**");

### Priority Claims

WHEREAS, pursuant to the Fannie Mae Claims and the Freddie Mac Claims, the GSEs and FHFA as Conservator have asserted that the claims are entitled to priority "superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11 [of the United States Code]," pursuant to 12 U.S.C. § 4617(b)(15)(D);

WHEREAS, subsequent to the filing of the Fannie Mae Claims, and as of the date hereof, Fannie Mae, and FHFA as Conservator thereof, have determined that Fannie Mae and FHFA will not assert any priority under 12 U.S.C. § 4617(b)(15)(D) with respect to approximately $16 billion of the amounts sought in the Fannie Mae LBHI Claim. Fannie Mae, and FHFA as Conservator thereof, continue to assert the statutory priority with respect to approximately a $2.7 billion portion of the Fannie Mae LBHI Claim (the "**Fannie Mae Priority Claim**");

WHEREAS, subsequent to the filing of the Freddie Mac Claims, Freddie Mac, and FHFA as Conservator thereof, determined that Freddie Mac and FHFA will not assert any priority under 12 U.S.C. § 4617(b)(15)(D) as to the Freddie Mac LBHI Claim, but they continue to assert a priority under 12 U.S.C. § 4617(b)(15)(D) as to the full amount of the Freddie Mac Priority Claim (the Freddie Mac Priority Claim, together with the Fannie Mae Priority Claim, the "**Priority Claims**");

### Mortgage Servicing Rights

WHEREAS, LBHI has historically been a seller/servicer of portfolios of residential mortgage loans to each of Fannie Mae and Freddie Mac (the "**GSE Loans**"), and designated

5

Aurora Bank FSB (the "**Bank**") and/or Aurora Loan Services, LLC ("**Aurora**") as subservicer of such loans.  In its capacity as seller of such residential mortgage loans, LBHI has certain obligations, including representations and warranties regarding the status of the loans, such as the regularity of the loan documents and compliance with all applicable GSE guidelines and requirements (collectively, the "**Seller Obligations**").  In addition, any transfer by LBHI of any mortgage servicing rights with respect to any GSE Loans requires the approval of the applicable GSE, and, unless otherwise agreed to by such GSE, any transfer of the applicable mortgage servicing rights is subject to the assumption of the Seller Obligations by the new servicer;

WHEREAS, pursuant to certain Orders entered on July 15, 2010 (Docket No.10222) (the "**July 15 Order**") and on September 23, 2010 (Docket No. 11566) (the "**September 23 Order**," and together with the July 15 Order, the "**Aurora Settlement Orders**"), the Bankruptcy Court approved certain settlements reached among the Debtors, the Bank and certain of their respective affiliated entities, including Aurora (collectively, the "**Aurora Settlement**").[4]  In connection with the Aurora Settlement, LBHI agreed to transfer to Aurora all right, title and interest of LBHI in and to all residential mortgage servicing rights (including any mortgage servicing agreements under which LBHI has any such right) with a GSE (either for loans directly owned by such GSE or held in a securitization sponsored by such GSE) owned by LBHI in partial resolution and satisfaction of the Bank's claims against the Debtors, but only to the extent that the loans subject to such mortgage servicing rights were then currently being serviced by Aurora, either as master servicer, servicer or subservicer.  LBHI agreed to transfer such mortgage servicing rights, free and clear of all liens and encumbrances; provided, however, that in the

---

[4]   The description of the Aurora Settlement and the Aurora Settlement Orders are for reference purposes only and subject in all respect to the terms and conditions of the Aurora Settlement and the Aurora Settlement Orders.

6

event that an applicable GSE failed to approve the transfer of any such mortgage servicing rights to Aurora, LBHI agreed to transfer and assign to Aurora all income attributable to or derived from such excluded mortgage servicing rights from and after the closing date of the Aurora Settlement until such time as such GSE provided the requisite approval of the transfer of such mortgage servicing rights to Aurora;

### Transfer of Fannie Mae Mortgage Servicing Rights

WHEREAS, as set forth in (i) that certain letter agreement, dated July 9, 2010, among Fannie Mae, the Bank and Aurora (the "**Fannie Mae/Aurora Letter Agreement**"); (ii) the Aurora Settlement Orders; and (iii) those agreements, documents and undertakings entered into among, inter alia, Fannie Mae, LBHI and certain of the other Debtors, in furtherance of the Aurora Settlement, the Fannie Mae/Aurora Letter Agreement and the Aurora Settlement Orders (such agreements, Aurora Settlement Orders and related documents and undertakings, in the aggregate, the "**Fannie Mae MSR Transfer Agreements**"), Fannie Mae agreed and consented to the transfer all of LBHI's mortgage servicing rights related to Fannie Mae sponsored residential mortgage loans, mortgages owned or pooled by Fannie Mae, and mortgage loans contained in certain REMIC Trusts (such mortgage servicing rights being collectively referred as the "**Fannie Mae Mortgage Servicing Rights**"), in each case serviced by LBHI or Aurora as the designated subservicer of such mortgage loans, to the Bank or Aurora, as contemplated in the Aurora Settlement and the Fannie Mae MSR Transfer Agreements, without requiring the assumption of responsibility of such assignee of the applicable Seller Obligations;

7

**Transfer of Freddie Mac Mortgage Servicing Rights**

WHEREAS, notwithstanding the Aurora Settlement Orders and LBHI's authorization and agreement to transfer to the Bank or Aurora all mortgage servicing rights owned by LBHI related to the portfolio of Freddie Mac residential mortgage loans (such mortgage servicing rights, including, without limitation, pursuant to the terms and conditions set forth in a certain Master Commitment, dated as of April 26, 2005 (the "**Master Commitment**"), being collectively referred to as the "**Freddie Mac Mortgage Servicing Rights**"), Freddie Mac has not agreed or consented to the transfer of the Freddie Mac Mortgage Servicing Rights to the Bank or Aurora incident to the Aurora Settlement.  Specifically, in connection with the approval of the Aurora Settlement and the entry of the September 23 Order, LBHI stipulated on the record that it had not yet received Freddie Mac's consent to the transfer of the Freddie Mac Mortgage Servicing Rights, and that it would not assign any income received or receivable by the Debtors attributable to or derived from the Freddie Mac Mortgage Servicing Rights without Freddie Mac's consent for a period of at least 120 days, which stipulated period has been extended from time to time by further agreement between Freddie Mac and LBHI, and remains in full force and effect (the "**Servicing Rights Stipulation**");

**Third Amended Plan**

WHEREAS, prior to the Court's approval of the Disclosure Statement, the GSEs and FHFA informally raised certain objections to the disclosure related to the asserted priority of the Fannie Mae Priority Claim and the Freddie Mac Priority Claim, and the rights, titles, powers, and privileges of FHFA, in its statutory capacity under HERA as Conservator, with respect to such claims;

8

WHEREAS, the GSEs and FHFA have informally raised certain objections to the Third Amended Plan, including, without limitation, in respect of the classification and treatment of the Priority Claims, the amount to be reserved on account of any Priority Claim, the assumption/treatment of the agreements and documents giving rise to each of the Fannie Mae Mortgage Servicing Rights (collectively, the "**Fannie Mae Mortgage Servicing Agreements**") and the Freddie Mac Mortgage Servicing Rights, including, without limitation, the Master Commitment (collectively, the "**Freddie Mac Mortgage Servicing Agreements**") and the assignability of such mortgage servicing rights, and the reservation of the rights, titles, powers, and privileges of FHFA, in its statutory capacity under HERA as Conservator, including specifically in respect of the Third Amended Plan (the "**Potential Plan Objections**");

WHEREAS, the Debtors agreed to extend the deadline by which the GSEs and FHFA were required to file any objections to the Third Amended Plan (the "**Plan Objection Deadline**") in order to allow the parties additional time to engage in discussions regarding the Potential Plan Objections;

WHEREAS, in order to resolve the Objection of the GSEs and FHFA, in respect of the classification and treatment of the Priority Claims, the Debtors have amended the definition of Priority Non-Tax Claim in the Third Amended Plan as follows: "Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code or Claims under 12 U.S.C. § 4617(b)(15)"; and

WHEREAS, the Parties have agreed that it is in their mutual interests to enter into this Stipulation in order to consensually address and resolve the remaining Potential Plan Objections, and to preserve all rights, claims and defenses of each of the Parties, and FHFA as Conservator,

9

in respect thereof, including specifically the rights, titles, powers and privileges of FHFA, as Conservator, under HERA.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants, agreements and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, upon the foregoing recitals, which are incorporated herein in all respects, the Parties enter into this Stipulation for purposes of addressing the remaining Potential Plan Objections, and to that end, agree as follows:

### Effectiveness of Stipulation

1. This Stipulation shall become effective on the date (the "**Stipulation Effective Date**") that the Stipulation has been (i) executed by each of the Parties; (ii) approved by entry of an Order of the Bankruptcy Court, which Order may be entered by the Bankruptcy Court "so ordering" this Stipulation; and (iii) entry of a final Order of the Bankruptcy Court confirming the Third Amended Plan (the "**Confirmation Order**").

### Reserves For Distribution Purposes

2. In order to ensure that Fannie Mae and/or Freddie Mac, or FHFA, as applicable, shall receive any priority recovery under or in respect of the Third Amended Plan determined to be payable on account of all or any portion of the Fannie Mae Priority Claim and/or the Freddie Mac Priority Claim, the Debtors shall establish cash reserves on account of the Priority Claims (i) on account of the Freddie Mac Priority Claim in the amount of $1,202,241,875.00; and (ii) on account of the Fannie Mae Priority Claim in such amount as agreed upon among Fannie Mae, and FHFA as Conservator thereof, on the one hand, and LBHI, on the other hand; provided,

10

however, that in the event that Fannie Mae, FHFA and LBHI fail to reach agreement on the amount to be reserved on account of the Fannie Mae Priority Claim, either Fannie Mae or LBHI may petition the Bankruptcy Court on shortened notice for a hearing on or before January 15, 2012 seeking a determination as to the proper amount to be reserved on account of the Fannie Mae Priority Claim.

### Reservation of Rights

3. Except to the extent of the Allowed Freddie Mac Claims and the Allowed Fannie Mae Claims, the Parties hereby reserve all rights of the Parties and FHFA relating to the amount, allowance, classification and/or priority of the Claims for all purposes, including in connection with any distributions under the Third Amended Plan or otherwise in respect of these Bankruptcy Cases, and nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall (i) have any effect on or prejudice the Debtors in respect of the Claims, including the amount, allowance, classification and/or priority of such Claims, or in respect of distributions on account thereof, and nothing herein shall be deemed an admission, release or waiver of the Debtors' rights with respect to such Claims, nor (ii) have any effect on, enjoin, or otherwise prejudice the rights of the GSEs and FHFA in respect of the Claims, including the amount, allowance, classification and/or priority of such Claims, or in respect of distributions on account thereof, including their right to assert that the Fannie Mae Priority Claim and the Freddie Mac Priority Claim are entitled to be treated as priority claims based on the rights, titles, powers, and privileges of FHFA under HERA, and all rights of the GSEs and FHFA under HERA, are fully reserved in that regard, and nothing herein, or in the Third Amended Plan or the Confirmation

Order, shall be deemed an admission, release or waiver of the rights of, or otherwise prejudice, the GSEs and FHFA with respect to such Claims.  In addition, nothing in this Stipulation, or in the Third Amended Plan or the Confirmation Order, shall affect, limit or otherwise prejudice FHFA's rights, titles, powers and privileges under HERA, as Conservator.

4. Nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit, enjoin or otherwise prejudice FHFA's rights, titles, powers, and privileges under HERA as the Conservator, including, without limitation the rights of Fannie Mae and/or Freddie Mac, or FHFA as Conservator thereof, to seek priority status and recovery in respect of the Fannie Mae Priority Claim and/or the Freddie Mac Priority Claim, and nothing in the Third Amended Plan or Confirmation Order shall be construed to restrain or limit any applicable regulatory or enforcement action that may be taken by FHFA, or to confer exclusive jurisdiction of the Bankruptcy Court over matters in respect of Fannie Mae, Freddie Mac, or FHFA as Conservator thereof.

5. With respect to the Fannie Mae Mortgage Servicing Agreements and the Fannie Mae Mortgage Servicing Rights, nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit or otherwise modify the agreements reached among Fannie Mae and the Debtors in respect of the Fannie Mae Mortgage Servicing Agreements and the Fannie Mae Mortgage Servicing Rights, all as set forth in the Fannie Mae MSR Transfer Agreements, or otherwise affect, enjoin, limit or otherwise prejudice the rights of Fannie Mae,

FHFA or the Debtors in respect thereof, including, without limitation, with respect to the transfer and assignment of the Fannie Mae Mortgage Servicing Rights and the requirement for Fannie Mae's consent to any such transfer and assignment, and all rights of the parties are hereby reserved in all such respects.

6. With respect to the Freddie Mac Mortgage Servicing Agreements and the Freddie Mac Mortgage Servicing Rights, nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit or otherwise modify the agreements reached among Freddie Mac and the Debtors in respect of the Freddie Mac Mortgage Servicing Agreements and the Freddie Mac Mortgage Servicing Rights, including as set forth and provided for in the Aurora Settlement and the September 23 Order, or otherwise affect, enjoin, limit or otherwise prejudice the rights of Freddie Mac, FHFA or the Debtors in respect thereof, including, without limitation, with respect to the transfer and assignment of the Freddie Mac Mortgage Servicing Rights and the requirement for Freddie Mac's consent to any such transfer and assignment, and all rights of the Parties and FHFA are hereby reserved in all such respects.

**Deferred Rejection Deadline**

7. In connection with the Freddie Mac Mortgage Servicing Agreements, including, without limitation, the Master Commitment, and the Debtors' possible assumption or rejection of such agreements, Freddie Mac has asserted that the Master Commitment is an executory contract among Freddie Mac and one or more of the Debtors that must be assumed or rejected by the Debtors, and that the assumption of the Master Commitment by the Debtors and the cure of all pre-petition and post-petition defaults thereunder are preconditions to the transferability of the

13

Freddie Mac Mortgage Servicing Rights. To the extent, if any, that the Debtors fail to pay post-petition amounts in the ordinary course of business, Freddie Mac reserves the right to assert claims for such amounts. The Debtors have asserted that the Master Commitment (and any retained master servicing rights) is not an executory contract or otherwise contains severable obligations and, as set forth in the last paragraph of Exhibit 2, Part D, of the Plan Supplement, the Freddie Mac Mortgage Servicing Rights are, in fact, retained rights not requiring assumption or rejection by the Debtors. In addition, the Debtors have also asserted that nothing shall ever convert any prepetition claims of Freddie Mac based on alleged Seller Obligations to cure payments under the Third Amended Plan. In this regard, nothing in this Stipulation, the Third Amended Plan (or any amendments, exhibits, supplements, or agreements filed or entered into incident thereto, or the confirmation thereof), the Confirmation Order, or any other pleadings or documents filed in connection therewith, shall affect, limit or otherwise modify the Master Commitment or convert any prepetition claims of Freddie Mac based on alleged Seller Obligations to postpetition cure payments under the Third Amended Plan or prejudice the rights of Freddie Mac, FHFA and the Debtors in respect thereof or otherwise, and all rights of the parties are hereby reserved in all such respects; _provided_, _however_, that in the event that Freddie Mac and the Debtors fail to resolve their disputes in respect of the Master Commitment prior to the Confirmation Hearing, Freddie Mac and the Debtors hereby agree that, notwithstanding anything in this Stipulation, the Third Amended Plan or the Confirmation Order to the contrary, upon execution of this Stipulation by the Parties hereto, the date by which the Debtors shall be required to elect to either assume or reject the Freddie Mac Mortgage Servicing Agreements, including, without limitation, the Master Commitment, or seek a determination that the Master Commitment is not an executory contract or otherwise contains severable obligations, shall be

14

extended until such date that is ten (10) business days after either Freddie Mac or LBHI shall provide written notice to the other party that consensual agreement is not likely to be reached with respect to the Master Commitment and the rights of the parties in respect thereof, and the Debtors failure to make any such election or seek any such determination prior to the expiration of said ten (10) business day period shall constitute the Debtors' election to treat the Freddie Mac Mortgage Servicing Agreements, including the Master Commitment, as executory contracts rejected by the Debtors, subject to the right of Freddie Mac to file any claim on account of rejection damages within thirty (30) days after such deemed rejection.

## Miscellaneous

8. The Parties further agree that the Confirmation Order shall include a decretal paragraph ordering the approval and incorporation of this Stipulation.

9. Fannie Mae and Freddie Mac each agree that, subject to the occurrence of the Stipulation Effective Date, and except as otherwise provided in this Stipulation, it will not participate in the formulation of, file, prosecute, consent to or support any objection to the Third Amended Plan, or take any other action to alter, delay or impede the confirmation and consummation of the Third Amended Plan.

10. Each Party acknowledges that (a) this Stipulation was drafted jointly by the Parties, (b) it has consulted with attorneys of its choosing and fully understands the terms hereof, (c) it has received legal advice regarding the advisability of entering into this Stipulation, and (d) it is executing this Stipulation voluntarily.  This Stipulation shall not be strictly construed against any Party on the grounds that the rules for the construction of contracts require the resolution of any ambiguity against the Party that drafted the document.

11. This Stipulation shall apply to and be binding upon and inure to the benefit of each Party and their respective agents, employees, successors (including the Debtors' bankruptcy estates and including any trustee appointed to administer the Bankruptcy Cases or any subsequent chapter 7 case(s)) and assigns, and any entity into which such Party may be merged or consolidated.

12.  Each individual signing this Stipulation on behalf of any Party hereto acknowledges and, with respect to his or her own signature below, warrants and represents that he/she is authorized to execute this Stipulation in his/her representative capacity, as reflected below and on behalf of the Party indicated.

13. The provisions of this Stipulation are severable, and the illegality or unenforceability of any part or provision shall not affect the enforceability of any other part or provision, and this Stipulation shall be construed as if such illegal or unenforceable part or provision were omitted but only to the extent of such illegality or unenforceability.

14. This Stipulation may be signed in counterparts and by fax signature or in portable document format (PDF), each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the Parties.

15. Notwithstanding Bankruptcy Rule 6004 or otherwise, this Stipulation shall be effective immediately upon entry of an Order approving this Stipulation.

16. This Stipulation contains the entire agreement between the Parties hereto regarding the subject matter hereof and may not be modified other than by a signed writing executed by all Parties and delivered to each Party.

IN WITNESS WHEREOF, THIS STIPULATION HAS BEEN READ AND SIGNED IN DUPLICATE ORIGINALS BY EACH OF THE PARTIES:

| WEIL, GOTSHAL & MANGES LLP | WINSTON & STRAWN LLP |
|---|---|
| /s/ Alfredo R Pérez<br>Alfredo R. Pérez<br>700 Louisiana, Suite 1600<br>Houston, Texas 77002-2755<br>(713) 546-5040 | /s/ David Neier<br>David Neier<br>200 Park Avenue<br>New York, New York 10166-4193<br>(212) 294-6700 |
| *Attorneys for the Debtors and Debtors-in-Possession* | *Attorneys for Federal National Mortgage Association* |

LANDMAN CORSI BALLAINE & FORD P.C.

/s/ Mark S. Landman
Mark S. Landman
120 Broadway
New York, New York 10271
(212) 238-4800

*Attorneys for Federal Home Loan Mortgage Corporation*

SO ORDERED.

New York, New York
_____ ___, 2011

_____
United States Bankruptcy Judge