WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger, Esq.
Richard L. Levine, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------x

## <u>NOTICE OF MOTION FOR SANCTIONS</u>

　　　　PLEASE TAKE NOTICE that a hearing on the annexed motion (the "<u>Motion</u>") of debtor Lehman Brothers Financial Products, Inc. ("<u>LBFP</u>") for sanctions on two ADR counterparties (and adversary proceeding defendants) (collectively, "<u>Counterparty</u>"), as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on December 14, 2011, at 10:00 a.m. **(Prevailing Eastern Time)** (the "<u>Hearing</u>").[1]

　　　　PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party (unless submitted confidentially, in which case the publicly filed version of the objection may omit the name of the objecting party), the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York,

---

[1]　To protect the confidentiality of the ADR process, the identity of the respondents is not being disclosed in the publicly filed version of this Notice of Motion.

New York 10153, Attn:  Richard L. Levine, Esq., attorneys for LBFP; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004, Attn: Jack Yoskowitz, Esq. and Benay L. Josselson, Esq., so as to be received no later than December 7, 2011, at 4:00 p.m. **(Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
      November 30, 2011

/s/ Richard L. Levine
Peter Gruenberger
Richard L. Levine
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Financial
Products, Inc., Debtor and Debtor in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger, Esq.
Richard L. Levine, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## MOTION FOR SANCTIONS

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

1.       Lehman Brothers Financial Products, Inc. ("LBFP"), a debtor and debtor in possession in the above-captioned jointly administered bankruptcy cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors" and together with their non-debtor affiliates, "Lehman"), by and through its undersigned counsel, files this Motion for Sanctions (the "Motion") and respectfully represents as follows:

### Preliminary Statement

2.       This Motion seeks to hold two SPV issuers (and adversary proceeding defendants) ("Counterparty I" and "Counterparty II," and collectively, "Counterparty") accountable for their contumacious violations of this Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, dated March 3, 2011 [Dkt. No. 14789] (the "SPV ADR

Order"). Awarding sanctions against Counterparty will deter other issuers from adopting Counterparty's tactic of refusing to participate substantively in the SPV ADR process by relying on untenable arguments about their alleged lack of authority to engage in settlement negotiations with the Debtors: despite being the Debtors' contractual counterparties and despite being adversary-proceeding defendants. To allow Counterparty to evade the SPV ADR Order as it is seeking to do would invite the Debtors' numerous other issuer counterparties to make similarly baseless arguments and thereby subvert the purpose of the SPV ADR Order and grind the SPV ADR process to a halt—potentially crippling the Debtors' efforts to resolve the hundreds of outstanding disputes involving derivatives transactions with SPVs. Indeed, the primary purpose of the SPV ADR Order was to bring issuer counterparties into the ADR process so that resolution of these disputes would not be thwarted by claims of trustees that they allegedly lacked authority. In sum, if Counterparty is permitted to disregard its Court-ordered obligation to participate substantively in the SPV ADR process, the SPV ADR Order may be effectively gutted.[1]

3.    Counterparty is the issuer of certain notes held by third-parties and was LBFP's direct contractual counterparty in four now-terminated derivatives transactions (the "Transactions"). Declaration of Locke R. McMurray (the "Declaration") ¶ 2.[2] In that capacity, Counterparty is a defendant in an adversary proceeding filed by LBFP in this Court, [Citation Redacted] (the "Adversary Proceeding"), in which LBFP seeks a declaratory judgment that, among other things, the contractual "flip clause" that purports to modify LBFP's payment rights

---

[1]    To protect the confidentiality of the ADR process, the identity of the respondents is not being disclosed in the publicly filed version of this Motion.

[2]    For the same confidentiality reasons, the exhibits to the Declaration are not being publicly filed.

solely as a result of a chapter 11 filing—in blatant violation of the Bankruptcy Code's prohibition on *ipso facto* provisions—is unenforceable and that LBFP is entitled to Senior Payment Priority.

4.    The Adversary Proceeding is currently stayed under this Court's Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), dated October 20, 2010 (Docket No. 12199) and the Court's subsequent Order Extending the Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), dated June 16, 2011 (Docket No. 17763) (such Orders collectively, the "Stay").

5.    In order to try to bring the dispute to a timely and cost-efficient resolution, and to try to avoid impinging on limited judicial resources, earlier this year LBFP served Counterparty with an ADR notice (as defined in the SPV ADR Order) (the "ADR Notice") in SPV ADR No. 159 seeking payment of the amounts sought in the Adversary Proceeding.    As more fully discussed below, Counterparty, however, ignored its June 15, 2011, deadline to serve an ADR Response (also as defined in the SPV ADR Order).    After numerous attempts by LBFP to persuade Counterparty to engage in good faith in the ADR process, Counterparty served a response to the ADR Notice (the "ADR Response") on September 2, 2011, the adjourned deadline.    Counterparty, however, failed in its ADR Response to admit or deny that its reliance on the flip clause violated the prohibition on *ipso facto* clauses or otherwise respond to LBFP's payment demand, but rather took the frivolous position that, notwithstanding being the contractual counterparty to LBFP and the defendant in the Adversary Proceeding, it does not have authority to engage in settlement discussions.    Counterparty took this position in its ADR Response even though it had previously designated a person with "full authority" to settle the

dispute.  Moreover, Counterparty failed to provide any contractual basis or legal authority for its claimed lack of authority (and LBFP is aware of no such contractual basis or legal authority).

6.      In refusing to engage in the ADR process on the merits, Counterparty is flouting its Court-ordered obligation to participate in the ADR proceedings in good faith and demonstrating contempt for this Court's authority.

7.      LBFP thus reluctantly brings this Motion and only after Counterparty has refused, in response to a letter from LBFP, to: (i) acknowledge its obligation to participate in the ADR process on the merits in good faith with the ability to settle; and (ii) respond substantively to the merits of LBFP's ADR Notice.

8.      Meaningful sanctions thus are warranted to ensure that Counterparty—and other similarly inclined counterparties—are not allowed to disregard the Court's SPV ADR Order and evade the procedures this Court has ordered to govern the attempted consensual resolution of hundreds of derivatives disputes in an efficient manner that otherwise may mire this Court and hundreds of parties in unnecessary, costly, and time-consuming litigation.

### Background

9.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBFP, commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4

10.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors for the Debtors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

## Jurisdiction

11.    This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

12.    This Court has personal jurisdiction over Counterparty pursuant to the Swap Agreements and the governing Indentures (each as defined below), which provide for the application of the laws of the State of New York and pursuant to which the parties submitted to the jurisdiction of the state and federal courts in the State of New York.

## Relief Requested

13.    Pursuant to section 105(a) of the Bankruptcy Code, the SPV ADR Order, and this Court's inherent authority, LBFP requests the entry of an order sanctioning Counterparty by, among other things:  compelling Counterparty to acknowledge to this Court in writing that (1) it has full authority to negotiate a settlement of the dispute with LBFP in SPV ADR No. 159 and (2) it will participate in mediation with LBFP in good faith or, in the alternative, (1) entering a default judgment against Counterparty in the Adversary Proceeding; (2) ordering Counterparty I to pay LBFP $7,154,607 as a termination payment due under the Counterparty I Swap Agreement, as defined below, plus periodic payments due and owing of $1,587,853 (as of April 1, 2010) (the "Counterparty I Unpaid Amounts"), each as sought in the ADR Notice; (3) ordering Counterparty II to pay LBFP $3,165,676 as a termination payment due under the Counterparty II Swap Agreement, as defined below, as also sought in the ADR Notice; and (4) ordering Counterparty to pay interest on all such amounts at the applicable rates, as described in the ADR Notice.  LBFP also requests the award to LBFP of a sum sufficient to reimburse LBFP

for the attorneys' fees and costs incurred in responding to Counterparty's frivolous position, including the attorney's fees and costs associated with preparing and prosecuting this Motion.

### Statement of Facts

14.     Prior to the Commencement Date, LBFP and Counterparty I entered into a 1992 form ISDA Master Agreement dated as of March 2, 2001 (together with any confirmations, schedules, and credit support annexes thereto, the "Counterparty I Swap Agreement").  Also prior to the Commencement Date, LBFP and  Counterparty II entered into a 1992 form ISDA Master Agreement dated as of May 8, 2001 (together with any confirmations, schedules, and credit support annexes thereto, the "Counterparty II Swap Agreement," and with the Counterparty I Swap Agreement, the "Swap Agreements").  The parties subsequently entered into the four Transactions pursuant to the Swap Agreements.

15.     Following the Commencement Date, Counterparty served a notice on LBFP that it was declaring an early termination of the Transactions.  As a result of such early termination, (i) Counterparty I owed LBFP a termination payment of $7,154,607 and the Counterparty I Unpaid Amounts and (ii) Counterparty II owed LBFP a termination payment of $3,165,676. Counterparty, however, refused to pay such amounts based on the "flip clause" in the Swap Agreements that purported to lower LBFP's payment priority.

16.     On April 23, 2010, LBFP served an initial ADR Notice on Counterparty and on the trustee and the investment advisor for Counterparty pursuant to the Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts [Dkt. No. 5207] (the "ADR Order") relating to the amounts that were due LBFP. Declaration ¶ 3.

17.    On September 14, 2010, LBFP filed the Adversary Proceeding seeking a declaratory judgment that the contractual provisions in the deal documents underlying the Transactions that purported to modify LBFP's payment priority solely as a result of a bankruptcy filing are unenforceable *ipso facto* clauses under sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code and violate the automatic stay in section 362(a) of the Bankruptcy Code, and that LBFP is entitled to Senior Payment Priority.  In the alternative, the Adversary Proceeding sought a declaratory judgment that if the provisions at issue ultimately are found to be enforceable in whole or in part, they may be avoided, recovered, and preserved for the benefit of LBFP's estate under the Bankruptcy Code as either (i) a preferential transfer of an interest of LBFP in property, (ii) a constructive fraudulent transfer of an interest of LBFP in property, or (iii) an unauthorized postpetition transfer of property of LBFP's estate.  The Adversary Proceeding currently is stayed until January 2012 pursuant to the Stay.

18.    After the trustee and the investment advisor for the Counterparty deal appeared in the ADR but asserted that they had no authority to settle the disputes and the Debtors faced similar assertions by other trustees, the Debtors determined that a new ADR mechanism was needed to bring parties with actual settlement authority to the negotiating table.  Declaration ¶ 3. The Debtors, in consultation with the Creditors' Committee, then moved for the entry of a new ADR order geared to resolving complex derivatives transactions with special purpose vehicles ("SPVs") (such as Counterparty) to bring into the ADR process the actual contractual counterparties and defendants in the adversary proceedings who, by definition, would have settlement authority.  Declaration ¶ 3.

19.    On March 3, 2011, the Court entered the SPV ADR Order, which provides a comprehensive process for negotiating a resolution of SPV derivatives transactions.  *See* Dkt. No. 14789.  As the cornerstone of the new SPV ADR Order, the Order provides that SPVs that

7

have swap agreements with Debtors (defined as the "SPV Derivatives Counterparty"), who would be named defendants to a legal action, would be required to appear in the action and participate in the ADR procedures. *See* SPV ADR Order §§ 1, 2, 5. In addition, the SPV ADR Order expressly provides that where a trustee lacks authority, the Debtors may proceed solely against the SPV Derivatives Counterparty—which here is Counterparty. *See* SPV ADR Order § 2.

20.     In light of the Counterparty trustee's assertion of a lack of authority to settle the dispute under the original ADR Order, LBFP elected in the Spring of 2011 to proceed under the new SPV ADR Order given its applicability to the unique issues raised by transactions between the Debtors and SPVs such as Counterparty. Declaration ¶ 4. Thus, on April 4, 2011, LBFP served its SPV Derivatives ADR Election and the ADR Notice on Counterparty challenging the contractual terms in the Indentures that purport to modify LBFP's right to receive payment priority ahead of noteholders based on LBFP's chapter 11 filing as violative of the Bankruptcy Code's prohibition on *ipso facto* clauses and demanding a payment by Counterparty I of the $7,154,607 termination amount and the Counterparty I Unpaid Amounts of $1,587,853 (as of April 1, 2010) and demanding a termination payment by Counterparty II of the $3,165,676 termination amount, and also demanding interest on all such amounts at the applicable rates, as described in the ADR Notice. *See* SPV Derivatives ADR Election Form (Declaration Ex. D); Declaration ¶ 5.[3]

21.     Under the terms of the SPV ADR Order, Counterparty's Notice of Settlement Participation Designation (the "Settlement Authority Designation") was due on June 4, 2011,

---

[3]     As noted above, because the ADR Notice and related pleadings and correspondence are governed by the confidentiality provisions of the SPV ADR Order, they are not included in the publicly filed support for the Motion, but will be submitted to the Court and certain interested parties for confidential review.

two months after service of the ADR Notice, and Counterparty's ADR Response was due on June 15, 2011. *See* SPV ADR Order §§ 5(c) (giving counterparties 60 days to file a Designation), 8(b) (giving counterparties 75 days to serve an ADR Response); Declaration ¶ 6. Counterparty ignored both deadlines. Declaration ¶ 7. After multiple discussions with Counterparty over the following weeks regarding the serious implications of noncompliance with the SPV ADR Order, including the possibility of this Court awarding sanctions, in the interests of moving the ADR process forward, LBFP agreed on July 28, 2011, to Counterparty's very belated request for an extension to serve its Settlement Authority Designation to August 5, 2011, and an extension of time to serve its ADR Response to September 2, 2011—some eleven weeks after service of the ADR Notice. *Id.*

22. On August 5, 2011, Counterparty filed its Settlement Authority Designation identifying Martin Couch, a director of Counterparty affiliated with Maples Fiduciary in Grand Cayman, Cayman Islands, as "having complete settlement authority to ***negotiate all disputed amounts*** on behalf of [Counterparty] . . . ." *See* Designation at 2 (Declaration Ex. F) (emphasis added); Declaration ¶ 8.

23. On September 2, 2011, Counterparty finally served its ADR Response (the "ADR Response"). *See* ADR Response (Declaration Ex. G); Declaration ¶ 9. The ADR Response, however, violated the SPV ADR Order by failing to engage on the merits of LBFP's arguments in the ADR Notice and failing to respond to LBFP's payment demand. In fact, Counterparty did not admit or deny that it owed LBFP the amounts demanded in the ADR Notice, nor did it deny that the purported modification of LBFP's payment priority based on a "flip clause" violated the Bankruptcy Code's prohibition on *ipso facto* provisions. Instead, the ADR Response simply asserted that Counterparty did not have authority to negotiate a settlement of the dispute. *Id*. Counterparty took this position in the ADR Response even though it is the contractual

counterparty to LBFP and the defendant in the Adversary Proceeding, and although it had previously designated an individual who had "complete settlement authority." *See* ADR Response at 1 (Declaration Ex. G).

24.     Counterparty's claim of lack of authority to engage in settlement discussions is not a good faith position:  it has been sued, so it faces the real risk of an adverse judgment, and there is no support for Counterparty's claim in the governing documents.  Moreover, it is in direct conflict with the Settlement Authority Designation Counterparty previously filed with this Court professing "complete settlement authority." *See* Designation at 2.

25.     Nevertheless, in an effort to avoid having to burden this Court with a sanctions motion, on September 19, 2011, LBFP sent a letter to Counterparty encouraging it to reconsider and comply with the SPV ADR Order.  *See* Ltr. from R. Levine to J. Yoskowitz, Sept. 19, 2011 (Declaration Ex. H).  LBFP's letter requested that Counterparty comply with the SPV ADR Order on or before September 23, 2011, by:  (i) acknowledging Counterparty's obligation to participate in mediation in good faith with the ability to settle; and (ii) serving an ADR Response on the merits of the ADR Notice.  *Id.*

26.     Counterparty waited until September 26, 2011, the day LBFP's ADR Reply was due, to write a letter that both failed to address the merits of the ADR Notice and persisted in disclaiming authority to engage in settlement negotiations with LBFP.  *See* Ltr. from J. Yoskowitz to R. Levine, Sept. 26, 2011 (Declaration Ex. I).

27.     LBFP then served its ADR Reply to the ADR Response (Declaration Ex. J) (the "Reply"), also on September 26, 2011.  LBFP reasserted therein its position that Counterparty is under a Court-ordered obligation to participate in the ADR proceedings in good faith and was in violation of that obligation.  *Id.* at 1-2.  LBFP's ADR Reply also noted Counterparty's failure to

address the merits of LBFP's claims and asserted that Counterparty's inconsistent posturing regarding its authority to settle showed a lack of good faith.

28.    Subsequent thereto, Counterparty has remained silent and done nothing to comply with the SPV ADR Order.  Counterparty's actions impermissibly subvert the purpose and intent of this Court's SPV ADR Order and threaten to thwart the orderly resolution of LBFP's—and the Debtors'—bankruptcy.

## Arguments and Authorities

### A.    This Court Has The Authority To Award The Sanctions Sought

29.    Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *Casse v. Key Bank Nat'l Assoc. (In re Casse)*, 198 F.3d 327, 335 (2d Cir. 1999).  Indeed, "[t]he basic purpose of section 105 is to assure the bankruptcy courts['] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." *Id.* (quoting 2 *Collier on Bankruptcy* § 105-5 (15th ed. 1999)); *see also Back v. AM Gen. Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997) ("[Section 105] codif[ies] the bankruptcy court's inherent power to enforce its own orders").

30.    Indeed, Courts have inherent authority to protect their jurisdiction and enforce their orders, including by sanctioning parties where appropriate.  *In re FairPoint Commc'ns, Inc.*, 445 B.R. 271, 276 (Bankr. S.D.N.Y. 2011) (citing *In re Chase*, 372 B.R. 142, 155 (Bankr. S.D.N.Y. 2007)) ("Even where a local rule of bankruptcy courts *does not prescribe sanctions* for failure to follow [a court's directives], sanctions can be imposed through the inherent power of the court"); *see also Back*, 213 B.R. at 640.

31.    In the Second Circuit, the purpose of sanctions for failure to comply with a court order is three-fold: (i) to ensure that a party will not benefit from its own failure to comply; (ii) to

obtain compliance with the particular order issued; and (iii) to serve a general deterrent effect on the case at hand and on other litigants. *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (analyzing the purpose of sanctions in the context of discovery).

32. Further, violation of the deadline to serve an ADR Response is expressly sanctionable under the SPV ADR Order: section 8(b) of the SPV ADR Order provides that failure to provide a "timely Response to the SPV Derivatives ADR Notice . . . may result, at the option of the Debtors, . . . in an application to the Court . . . for Sanctions . . . ." SPV ADR Order § 8(c).

33. The SPV ADR Order also expressly provides that failure to comply with the specific terms thereof, including its "good faith" participation requirement, may result in sanctions. SPV ADR Order § 12(b).

34. The sanctions that may be granted under the express terms of the SPV ADR Order can include an award of the amount sought in the ADR Notice and the entry of a default judgment in the underlying adversary proceeding:

Sanctions may include, but are not limited to: . . .

(i) attorneys' fees incurred by the Debtors with respect to the SPV Derivatives ADR Procedures after the sending of a Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) an award in the SPV Derivatives ADR Dispute in the amount specified in the [ADR Notice]; and/or (iv) an entry of a judgment for the Debtor in the related Action.

SPV ADR Order § 12(b).

35. Serving an ADR Response that fails to engage on the merits as contemplated by section 8 of the SPV ADR Order also subjects the respondent to sanctions, including an order or judgment for recovery of the amounts demanded, the rendering of a default judgment, and attorneys' fees and costs. *See* SPV ADR Order § 8(b) (citing § 12).

36.     Moreover, Counterparty is contractually bound to comply with the SPV ADR Order.  Under sections 7.2 of the indenture between Counterparty I and LBFP, dated March 14, 2001 (the "Indenture"), Counterparty contracted to "comply in all material respects with applicable laws, rules, regulations, writs, judgments, injunctions, decrees, awards and orders with respect to them, their business and their properties."  Indenture § 7.2.  Therefore, Counterparty's violations of the SPV ADR Order are a violation both of a Court directive and of its contractual duties to LBFP.

**B.     Counterparty Repeatedly Violated The SPV ADR Order**

37.     As demonstrated above, Counterparty first violated the SPV ADR Order by failing to file its Settlement Authority Designation when it was due on June 4, 2011.  Counterparty next violated the SPV ADR Order by failing to serve its ADR Response when due on June 15, 2011.

38.     Counterparty then violated the SPV ADR Order by serving an ADR Response (on the belatedly adjourned deadline) in bad faith because it failed to engage on the merits of LBFP's claims in the ADR Notice, failed to respond to LBFP's payment demand, and denied authority to negotiate a settlement of the dispute—contrary to its statement in its Settlement Authority Designation that its designee had "complete settlement authority to negotiate all disputed amounts on behalf of [Counterparty]."  Designation at 2.

39.     Indeed, section 8(b) of the SPV ADR Order expressly provides that a respondent must respond to an ADR Notice in one of two ways:  (i) agree to settle at the demand in the ADR Notice; or (ii) "decline to settle *for the amount stated* in the [ADR Notice] demand, in which case [the respondent] ***must*** include a brief explanation in the [Response] setting forth the reason(s) for the denial."  SPV ADR Order § 8(b) (emphasis added).  Here, Counterparty did not satisfy either of these alternatives.

13

40.     Moreover, although the SPV ADR Order expressly recognizes a *trustee's* right to claim lack of authority to settle (*see* SPV ADR Order § 5(b)), the Order does not grant issuers like Counterparty the same right.   In fact, the Order expressly states that recognition of a trustee's possible lack of authority to settle does not "relieve . . . any SPV Derivatives Counterparty from compliance with [the] Order." *Id.*

41.     It is beyond peradventure that the SPV ADR Order requires Counterparty to participate meaningfully in the ADR process.  Specifically, section 5.a of the SPV ADR Order provides that compliance with the SPV ADR Order is mandatory on "each SPV Derivatives Counterparty . . . on whom a Debtor elects to serve [an ADR Notice]," as is participation in the ADR proceeding by "serv[ing] the required responses, engag[ing] in the specified communications *to discuss settlement*, participat[ing] in any mediation *in good faith*, follow[ing] directions of the mediator, and otherwise comply[ing] with the Derivatives ADR Procedures specified" in the Order.  SPV ADR Order § 5.a (emphasis supplied).

42.     In addition, section 12 of the SPV ADR Order requires that parties "must participate in good faith with these SPV Derivatives ADR Procedures."

43.     Here, Counterparty initially failed to respond to the ADR Notice at all. Counterparty finally served its ADR Response almost three months after it was due, and only after LBFP contacted it and raised the possibility of sanctions for noncompliance.  Declaration ¶¶ 7, 9.  When Counterparty finally did "respond" to the ADR Notice, instead of addressing the merits of LBFP's claims, Counterparty simply contended that it "lacks authority" to settle, something that is fundamentally at odds with its earlier Settlement Authority Designation identifying, a director of Counterparty as "having **complete settlement authority to negotiate all disputed amounts** on behalf of [Counterparty] . . . ."  *See* Designation at 2 (emphasis added).

14

Counterparty's continued flouting of the SPV ADR Order, both procedurally and substantively, is unacceptable and deserves to be sanctioned.

44.      Sanctions are especially appropriate because Counterparty has not denied LBFP's entitlement to the funds at issue or the unenforceability of the purported "flip clause" modification of LBFP's payment priority.    Rather, Counterparty refuses to abide by Court-ordered ADR proceedings regardless of the legitimacy of LBFP's demands.    Counterparty's refusal to engage substantively in the ADR process jeopardizes the continued success of this Court's SPV ADR Order as well as the orderly conduct of the Debtors' bankruptcy cases. Moreover, Counterparty's conduct not only violates the SPV ADR Order's general requirement that parties must participate in ADR proceedings, but also the SPV ADR Order's requirement of good faith.  Allowing Counterparty to simply wash its hands of these proceedings and of LBFP's demands will allow it to benefit from its refusal to comply.  Further, Counterparty's actions—if unpunished—will only encourage it and other issuer counterparties to ignore the SPV ADR Order and this Court's authority, which will subvert the purpose of the SPV ADR Order to bring to the negotiating table the issuer counterparties who have the authority to settle, thereby irreparably stalling the orderly resolution of hundreds of SPV derivatives disputes.  It is the threat of precisely such impact that the Second Circuit has called out as a reason to sanction disobedient parties.

**C.      The Court Should Enter A Default Judgment Against Counterparty In The Adversary Proceeding And Order It To Pay The Amounts Demanded**

45.      As discussed above, the SPV ADR Order expressly provides for imposition of sanctions, including the rendering of a default judgment, an order or judgment for the amount requested in the ADR Notice, and the awarding of attorneys' fees and costs.  *See* SPV ADR Order §§ 8, 12.  A Bankruptcy Court is empowered to enter a default judgment against a

15

disobedient defendant if the defendant's "disobedience has been willful, or in bad faith, or otherwise culpable." *Hounddog Prods., LLC v. Empire Film Group, Inc.*, 767 F. Supp. 2d 480, 486 (S.D.N.Y. 2011) (quoting *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990)). Moreover, as recognized by the Second Circuit, "[a] trial court's determination in entering a default judgment is entitled to great deference." *In re Men's Sportswear, Inc.*, 834 F.3d 1134, 1138 (2d Cir. 1987).

46.    In its ADR Response, Counterparty does not dispute any of the allegations made in the ADR Notice that: (i) the purported modifications of LBFP's payment priority under the governing documents are void under the Bankruptcy Code because they are based on impermissible *ipso facto* provisions; (ii) Counterparty I owes LBFP $7,154,607 in a termination payment plus the Counterparty I Unpaid Amount of $1,587,853 (as of April 1, 2010), (iii) Counterparty II owes LBFP $3,165,676 in a termination payment, and (iv) Counterparty I and Counterparty II owe interest at the applicable rates on all such amounts as described in the ADR Notice. Having failed to dispute LBFP's factual and legal claims, even though Counterparty is LBFP's contractual counterparty and the defendant in the litigation, a default judgment and an order requiring Counterparty to pay the amounts demanded is a wholly appropriate remedy for Counterparty's misconduct. Indeed, section 8 of the Order provides that failure to respond to the ADR Notice in one of the two permitted ways may result in precisely such a sanction.

47.    Such sanctions are especially appropriate given that Counterparty's refusal to engage in good-faith negotiations appears to reflect a litigation tactic adopted between the service of the Settlement Authority Designation (indicating full authority to settle) and the service of the ADR Response, likely reflecting Counterparty's recognition in that interval that it lacks meritorious defenses to LBFP's showing that the attempt to modify LBFP's payment

16

priority under the Indenture violates the Bankruptcy Code's prohibition on *ipso facto* clauses.  In any event, under the circumstances, this Court should hold that Counterparty forfeited the right to defend the Adversary Proceeding on the merits.

48.     Further, LBFP would be highly prejudiced if Counterparty is allowed to establish a precedent of issuers ignoring the SPV ADR Order.   Counterparty's unsupported (and apparently foundationless) argument that it lacks authority to negotiate a settlement of a dispute arising from an agreement to which it is a party, which assertion is not supported by the plain terms of its governing documents, leaves LBFP with no one with whom to negotiate and would leave the Debtors no choice but to incur the time and expense of, and take up the Court's limited resources by, litigating the Adversary Proceeding to judgment.  This costly expenditure of time and resources could be entirely unnecessary when reasonable parties may well be able to reach a consensual resolution in the near term with the help of the world class mediators that are part of the ADR process, as the record of ADR success clearly establishes.   Counterparty's tactical posturing—if allowed—jeopardizes LBFP's ability to achieve such a cost-efficient recovery and likely would encourage other ADR respondents to play similar games.  This is precisely what the Court was seeking to avoid when it issued the SPV ADR Order, which specifically allows trustees, but not counterparties, to make a "lack of authority" argument.

49.     In sum, the imposition of the sanctions sought, including entry of a default judgment and an order requiring payment of the amounts demanded, will prevent Counterparty from benefiting from its attempt to make an end run around the SPV ADR Order.  It will further serve as a disincentive to other derivatives counterparties who may likewise consider refusing to participate in the SPV ADR process, contrary to the purpose and intent of the SPV ADR Order. *See Update Art, Inc.*, 843 F.2d at 71.

**D.    The Court Should Award LBFP Attorneys' Fees and Costs**

50.    Section 12(b) of the SPV ADR Order expressly provides for the award of attorneys' fees and costs against non-complying respondents like Counterparty: "Sanctions may include, but are not limited to: . . . (i) attorneys' fees incurred by the Debtors with respect to the SPV Derivatives ADR Procedures after the sending of a Derivatives ADR Package . . . ." SPV ADR Order § 12(b).

51.    This is consistent with the Bankruptcy Code and case law. Specifically, to effectuate their enforcement power, bankruptcy courts can and have often ordered sanctions against a non-complying party, including awards of attorneys' fees and costs under Bankruptcy Code § 105. *See, e.g., In re Ambotiene*, 316 B.R. 25, 36 (Bankr. E.D.N.Y. 2004) (surveying cases that "have concluded that Section 105 provides a sound and appropriate basis for a bankruptcy court to make an award of attorneys' fees and costs," and awarding fees and costs).

52.    Counterparty's violations of the SPV ADR Order, as discussed above, have been repeated, egregious, and calculated to delay the orderly and cost-efficient management of LBFP's bankruptcy case. LBFP thus respectfully asks the Court to also award LBFP its attorneys' fees and costs against Counterparty.

## Conclusion

53.    As demonstrated above, Counterparty has utterly failed to comply with both the letter and the spirit of the SPV ADR Order. Counterparty violated express deadlines created by the Order, and its failure to engage on the merits but rather to try to hide behind a disingenuous claim of lack of authority violates both the Order's requisite procedures and good-faith requirement. Counterparty's flouting of this Court's directives and its disregard for the orderly conduct of the LBFP's bankruptcy case cannot be permitted to pass without consequence. To permit Counterparty to evade the SPV ADR Order in this manner would invite the Debtors'

numerous derivatives issuer counterparties to make similar baseless arguments and thereby paralyze the Debtors' efforts to resolve in a timely and cost efficient manner the hundreds of outstanding disputes involving SPVs.   This Court can and should enforce the terms and provisions of its SPV ADR Order by sanctioning Counterparty in the form of either (a)(1) the entry of a default judgment against it, (2) an order requiring Counterparty to pay the amounts requested by LBFP, and (3) an order requiring Counterparty to pay interest on all such amounts at the applicable rates, as described in the ADR Notice; or, at a minimum, (b) compelling Counterparty to acknowledge to this Court in writing that (i) it has full authority to negotiate a settlement of the dispute with LBFP in SPV ADR No. 159 and (ii) it will participate in mediation with LBFP in good faith.   LBFP also requests the entry of an order awarding LBFP a sum sufficient to reimburse LBFP for the attorneys' fees and costs incurred in responding to Counterparty's frivolous position, including the attorney's fees and costs associated with this Motion.

## Notice

54.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served this Motion (with the name of the counterparties disclosed and with exhibits) on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) counsel for Counterparty; and have served a redacted version of the Motion without identifying Counterparty and without exhibits on all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  While the version of this Motion publicly filed does not name the counterparty or include the referenced exhibits because of the confidentiality of the ADR process, the version so served

per (i) - (vi) above and filed with chambers includes the counterparty's name and the cited exhibits. The Debtors submit that no other or further notice need be provided.

55.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, LBFP respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated: New York, New York
   November 30, 2011

     By:  /s/ Richard L. Levine     
        Peter Gruenberger
        Richard L. Levine
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Debtors
        and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
In re                                                      :        Chapter 11 Case No.
                                                           :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :        08-13555 (JMP)
                                                           :
                               Debtors.                    :        (Jointly Administered)
---------------------------------------------------------------------x

ORDER GRANTING LEHMAN BROTHERS
FINANCIAL PRODUCTS, INC.'S MOTION FOR SANCTIONS

Upon the motion dated November 30, 2011 (the "Motion") of debtor Lehman

Brothers Financial Products, Inc. ("LBFP") pursuant to section 105(a) of title 11 of the United

States Code, this Court's Alternative Dispute Resolution Procedures Order for Affirmative

Claims of the Debtors under Derivatives Transactions with Special Purpose Vehicle

Counterparties dated March 3, 2011, and this Court's inherent authority for sanctions against

Respondent I and Respondent II (collectively, "Respondent")[1] consisting of:  (1) entry of a

default judgment in the underlying adversary proceeding [Citation Redacted] (the "Adversary

Proceeding"); (2) the entry of an order requiring Respondent to pay LBFP the amount sought by

LBFP; and (3) the entry of an order requiring Respondent to pay LBFP a sum sufficient to cover

the fees and costs of obtaining relief, all as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having

---

[1]    The identity of the respondents is not identified in the publicly filed version of this Order to
       protect the confidentiality of the ADR process.

been provided in accordance with the procedures set forth in the amended order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635], and it appearing that no other or further notice need be provided; and a hearing having been held to consider the Motion; and upon the Court's consideration of the Motion and the record of the hearing to consider the relief requested in the Motion; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order; and it is further

ORDERED that Respondent I and Respondent II are sanctioned pursuant to Section 105(a) of the United States Bankruptcy Code, and sections 8 and 12 of the SPV ADR Order, and this Court's inherent authority; and it is therefore

[ORDERED that default judgment is entered against Respondent I and Respondent II in the Adversary Proceeding; and it is further]

[ORDERED that (i) Respondent I must pay LBFP $7,154,607 as a termination payment due and owing plus periodic payments due and owing of $1,587,853 (as of April 1, 2010), (ii) Respondent II must pay LBFP $3,165,676 as a termination payment due and owing and (iii) upon LBFP demonstrating the sum of interest owed by Respondent I and Respondent II at the applicable rates, as described in the ADR Notice, Respondent I and Respondent II shall pay such amounts respectively owed to LBFP; and it is further]

[ORDERED that Counterparty acknowledge to this Court in writing by 5:00 p.m. New York time on _____ __, 201_ that (1) it has full authority to negotiate a settlement of the dispute with LBFP in SPV ADR No. 159 and (2) it will participate in mediation with LBFP in good faith; and it is further]

ORDERED that upon LBFP demonstrating the sum of its reasonable attorneys' fees and others costs incurred in obtaining relief, Respondent must pay such fees and costs.

Dated: New York, New York
        _____, 201_

_____
UNITED STATES BANKRUPTCY JUDGE