WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JCS – 6031)
Eric K. Stodola (ES – 1111)

Attorneys for the Ad Hoc Group
of Lehman Brothers Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re                                              : | Chapter 11 Case No. |
|                                                    : | |
| **LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>,**  : | 08-13555 (JMP) |
|                                                    : | |
|                              Debtors.              : | (Jointly Administered) |

------------------------------------------------------------------x

**STATEMENT OF THE AD HOC GROUP OF
LEHMAN BROTHERS CREDITORS IN SUPPORT OF CONFIRMATION
<u>AND RESPONSE TO CERTAIN OBJECTIONS THERETO</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

      The Ad Hoc Group of Lehman Brothers Creditors (the "<u>Group</u>"), by and through its undersigned counsel, hereby files this statement in support of confirmation and response (the "<u>Response</u>") to certain objections interposed to the confirmation of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "<u>Plan</u>"), proposed in the above-referenced chapter 11 cases (the "<u>Chapter 11 Cases</u>") by Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors (collectively, with LBHI, the "<u>Debtors</u>").  In support of its Response, the Group respectfully represents as follows:

## RESPONSE

### A. The Inter-Debtor and Inter-Affiliate Settlements Embodied in the Plan are Reasonable and in the Best Interests of All Parties in Interest

1. In total, twenty-two creditors and purported parties in interest have interposed objections to confirmation of the Plan (the "Objections"). The Group understands that the Debtors have addressed each of these Objections in detail in both the Settlement Memorandum and the Debtors' Response.[1] Nevertheless, the Group files this Response to address, in part, a small subset of Objections that suggest that the settlements embodied in the Plan of inter-Debtor and inter-affiliate claims, causes of action and defenses are unjustifiable. (See Objection of Andorra Banc Agricole REIG, S.A. ("Andorra") [Docket No. 21664]; Objection of Mark Mazzatta and Michele McHugh-Mazzatta (together, "Mazzatta") [Docket No. 21581]; Objection of China Development Industrial Bank ("CDIB") and Dotson Investments Ltd. ("Dotson") [Docket No. 21649].) Each of these objectors asserts, as to their respective primary obligors, there is no risk of substantive consolidation with LBHI or any other Lehman entity.[2]

2. Simply put, this position is legally and factually unsupportable. The appropriateness of substantively consolidating the Debtors and their foreign affiliates has been at issue since the very beginning of these Chapter 11 Cases. The issue has been so crucial that two competing plans have been filed: one filed by the Group that is premised on the substantive consolidation of the Debtors and certain of their foreign affiliates, and one filed by the so-called

---

[1] The "Settlement Memorandum" and "Debtors' Response" refer respectively to the Debtors' Memorandum of Law, Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure in Support of Plan Settlements [Docket No. 22749] and the Debtors' Response to Objections to Confirmation [Docket No. 22751].

[2] For instance, these objectors assert that (i) "there is no showing whatsoever that LBT and LBHI were treated as anything other than separate and distinct entities in every respect," (Andorra Objection ¶ 4(a)), (ii) "there simply is no such demonstrated risk in the case of LOTC and LBHI," (Mazzatta Objection ¶ 8, 9), (iii) "there is no basis . . . justifying substantively consolidating the Debtors' estates," (CDIB and Dotson Objection ¶ 1), and (iv) "there has been no showing that LBHI could have been substantively consolidated with its foreign affiliates, affiliates subject to the laws of different countries." (CDIB and Dotson Objection ¶ 11).

"Non-Consolidation Plan Proponents" that is premised on the complete deconsolidation of the Debtors. (See generally Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors [Docket No. 13504]; Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and Its Affiliate Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents [Docket No. 16229].) The Group's disclosure statement, which was first filed approximately one year ago, devotes close to twenty single-spaced pages to setting forth the factual bases for substantively consolidating the Debtors and their foreign affiliates. (See Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors [Docket No. 13505] at 9-28.) The majority of the facts set forth therein and others supporting substantive consolidation are supported by the Debtors' Settlement Memorandum and the declarations filed with respect thereto. (See Settlement Memorandum at 13-34; see also Declaration of John K. Suckow in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors 5-17; Declaration of Daniel J. Ehrmann in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors 23-24.) Importantly, the objectors have not challenged the veracity of any of these facts.

3. Moreover, to focus only on the appropriateness of substantive consolidation and evaluate the settlements embodied in the Plan solely with respect thereto is a gross oversimplification. As the Group has stated before, the analysis should center not only on

whether the Court should affirmatively impose substantive consolidation, but also on whether a clear presentation of the assets and liabilities of each Debtor (and those of their foreign affiliates) can ever be achieved through litigation. If such a result cannot be achieved through litigation, then substantive consolidation could be the only legitimate outcome.

4. In that regard, for almost two years now, the Group has sought to apprise the Court and the all parties in interest of the breadth and pervasive nature of pre- and post-petition intercompany claims and causes of action that potentially exist between the various Debtor estates and their Debtor and non-Debtor affiliates (collectively, the "Inter-Debtor Issues"). These issues include, inter alia, the simple, but time consuming, reconciliation of ordinary course pre-petition ledger entries as well as the resolution of a series of extremely complex commercial disputes, each of which individually would constitute one of the largest cases in the district if it were to proceed to actual litigation. In between these two extremes, as the Court has already seen glimpses of, sit a wide array of potential disputes over the ownership of assets, the unwinding of securitization structures, the funding of bank capitalization requirements, the assertion of inter-Debtor preferences and fraudulent conveyance claims, the enforcement of enterprise and transactional guarantees, the allocation of taxes and/or unwinding of derivative instruments, and the pre- and post-petition corporate governance practices. In the absence of the settlements provided for in the Plan or, in the alternative, substantive consolidation, these issues and others would need to be litigated to conclusion. The legal fees alone incurred in that process would dwarf the claims of the parties asserting that the Plan settlements are unjustifiable.

5. In the event of full-blown litigation with respect to the Inter-Debtor Issues, the objectors have no certainty that they or other creditors holding guarantee claims would fair better or even as well as they do under the Plan. Moreover, the path of litigation would be expensive,

arduous, and fraught with delay. Creditors would be forced to wait years to receive distributions while substantial professional fees accrued, reducing the amounts available for distribution.

6. In light of the facts asserted in the Group's Disclosure Statement, the Debtors' Settlement Memorandum and the declarations related thereto, the Group believes that the probability of substantive consolidation of the Debtors and their foreign affiliates with LBHI , if fully litigated, is substantially greater than the economics embodied in the Plan. Nevertheless, the Group recognizes that no settlement is perfect and that there would be substantial costs and delay associated with any litigation. Thus, the Group supports the Plan and respectfully requests that the Objections be overruled. Moreover, given the amount and detail of disclosure already made on substantive consolidation risks, it is incumbent on the objecting parties to do something more than simply say that "we see no risk," particularly when they are risking the recoveries of their peer creditors who have overwhelmingly disagreed with them.

**B.   The PSA Creditor Exculpation Should be Approved**

7. In addition to the foregoing, the Group has filed this Response to respond to Objections filed by the US Attorney and the US Trustee asserting that (i) the Court does not have jurisdiction to grant releases to third parties, and (ii) the third-party releases and exculpations contained in the Plan are impermissibly broad. (Objection of the United States Trustee [Docket No. 21640]; The United States of America's Limited Objection to Debtors' Third Amended Joint Chapter 11 Plan [Docket No. 21624].) These Objections should be overruled in that the PSA Creditor exculpations are narrowly tailored to protect the PSA Creditors from inappropriate litigation and are unique given the unique circumstances of these Chapter 11 Cases.[3]

8. Non-debtor releases are permissible in the Second Circuit. Courts have exercised their discretion to approve non-debtor releases where, by way of example, the release is

---

[3]   The term "PSA Creditor" shall have the meaning ascribed to it in the Plan.

important to a debtor's plan; the claims are channeled to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial consideration; the plan otherwise provided for the full payment of enjoined claims; and the affected creditors consent. Id. at 142 (citations omitted); In re DBSD N. Am., Inc., 419 B.R. 179, 217-18 (Bankr. S.D.N.Y. 2009) (citing In re Adelphia Communc'ns Corp., 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007)). No one factor is necessary for approval of a non-debtor release; but, because they are "subject to abuse" and "proper only in rare circumstances," a court must find "unique circumstances" which make a non-debtor release important to the success of a plan. Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc., 416 F.3d 136, 141-42 (2d Cir. 2005); see also In re Charter Communc'ns Corp., 419 B.R. 221, 258 (Bankr. S.D.N.Y. 2009), appeal dismissed, 449 B.R. 14 (S.D.N.Y. 2011) ("Non-debtor releases are permissible in the Second Circuit where 'truly unusual circumstances render the release terms important to the success of the plan.'") (quoting Metromedia Fiber Network, Inc., 416 F.3d at 142-43).

        9.      The PSA Creditors have played a key role in the plan process and, indeed, have been indispensible in resolving these Chapter 11 Cases. The PSA Creditors, including, in particular, the Group have spent years negotiating the resolution of what are the largest and most complex chapter 11 cases in history. These negotiations ultimately culminated in June 2011 when the PSA Creditors entered into plan support agreements with the Debtors. Without the plan support agreements in place, including the bargained for release and exculpation provisions contained in the Plan, this largely consensual Plan would likely not have been achieved.

Dated:  December 1, 2011
       New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JS – 6031)
Eric K. Stodola (ES – 1111)

By: /s/ Gerard Uzzi
    Gerard Uzzi

ATTORNEYS FOR THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS