Gregory S. Grossman (*pro hac vice* pending)
Rafael J. Valdes (*pro hac vice* pending)
**ASTIGARRAGA DAVIS MULLINS
& GROSSMAN, P.A.**
701 Brickell Avenue, Suite 1650
Miami, Florida  33131
Telephone:  (305) 372-8282
Facsimile:  (305) 372-8202

*Attorneys for Banco Interior de São Paulo, S.A.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) Case No. 08-13555 |
| Debtors. | ) (Jointly Administered) |

**RESPONSE OF BANCO INTERIOR DE SÃO PAULO, S.A.
TO DEBTORS' ONE HUNDRED ELEVENTH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

Banco Interior de São Paulo, S.A. ("Banco Interior"), by and through its undersigned counsel hereby files this response (the "Response") in opposition to the *Debtors' One Hundred Eleventh Omnibus Objection to Claims (No Liability Claims)* [Docket No. 15012] (the "Objection").  In support of this Response, Banco Interior respectfully states as follows:

**Preliminary Statement**

1. On September 21, 2009, Banco Interior timely filed an unsecured claim [Claim No. 21949] (the "Claim") in the amount $14 million against Debtor Lehman Brothers Holdings Inc. ("LBHI").  The basis for this Claim is that LBHI conspired with Banco Interior's principal, Aureo Ferreira, to commit a fraud on Banco Interior, its shareholders, and its creditors through the "renting" of a portion of a government bond that allowed Banco Interior to falsely book an asset on its balance sheet and misrepresent its financial position.  Since filing its Claim,

Banco Interior has furthered its investigation with respect to this Claim and intends to conduct further discovery.

2. Having said that, the Debtors have objected to Banco Interior's Claim by categorizing it as a "No Liability Claim" and arguing that No Liability Claims are based upon the "alleged wrongdoing of non-debtor parties and for which the Debtors are not liable." Notably, the Debtors fail to support this conclusory statement in any way whatsoever. Instead, the Debtors claim that because the liabilities asserted in the No Liability Claims are not claims against LBHI they should be presumptively disallowed and expunged by this Court to prevent an improper recovery. By requesting such extraordinary relief, the Debtors improperly seek to shift the burden of proving the validity of the Claim back to Banco Interior and in the process mischaracterize well-established bankruptcy case law. LBHI's Objection and the arguments contained therein fail as a matter of law and fact. Accordingly, the Objection should be denied so that Banco Interior may engage in discovery pursuant to Bankruptcy Rules 7026-7037 to determine the extent of LBHI's liability.

**Background**

3. On September 21, 2009, Banco Interior timely filed its Claim in the amount of $14 million against Debtor LBHI. On March 14, 2011, the Debtors in the above-captioned chapter 11 cases filed the Objection to Banco Interior's Claim. Pursuant to the Debtors' Objection, the Debtors generally alleged that Banco Interior's Claim, among others, was either filed against or alleged liability against Lehman Brothers Inc. ("LBI") and was based upon alleged wrongdoing by entities which are not debtors in these chapter 11 cases and for which the Debtors are not liable. Although Banco Interior's Claim was properly filed against Debtor LBHI, its supporting documentation referenced LBI and alleged potential liability on behalf of LBI.

2

4.       Following the Debtors' Objection, the parties agreed to adjourn the hearing with respect to Banco Interior's Claim on at least four occasions to allow for further investigations: April 28, 2011, May 24, 2011, June 20, 2011, and October 19, 2011.  [Docket Nos. 16374, 17048, 17900, and 21010].

5.       During this time, Banco Interior has continued to investigate the facts giving rise to its Claim.  To that end, Banco Interior has communicated with Debtor LBHI in an effort to gather information relevant to its Claim.  Debtor LBHI has provided Banco Interior with certain information concerning ownership or control over a bank account relevant to the fraud alleged in the Claim.  This specific account is now known to have belonged in whole or in part, or to have been controlled, in whole or in part, by Debtor LBHI.  This fact was not known to Banco Interior at the time of the filing of the Claim.  Banco Interior still believes that LBHI is in possession of additional information regarding that bank account and potentially other evidence tied to the underlying fraud.  As such, Banco Interior is in the process of drafting a narrowly tailored request for production of documents which it intends to propound on Debtor LBHI shortly.

**The Nature of Banco Interior's Claim**

6.       Banco Interior filed an unsecured claim against LBHI for damages it suffered after it conspired with Banco Interior's principal, Aureo Ferreira ("Ferreira"), to devise and implement a scheme that resulted in the fraudulent misrepresentation of Banco Interior's financial position.  The scheme essentially involved the "renting" of part of a government coupon bond issued by the Brazilian Treasury in the amount of approximately $16.8 million (the "Brazilian Bond").  After Banco Interior became insolvent in 2001 and was forced into liquidation, the Central Bank of Brazil uncovered evidence that Ferreira embarked on a scheme to cover up certain insider loans that were all in default and which totaled $14 million by substituting them on Banco Interior's books with part of the Brazilian Bond as an asset.  Banco

3

Interior acquired an interest in the Brazilian Bond by having each of the individual insiders enter into separate agreements with a Maryland-based company named Financial Services International, Inc. ("FSII") to "purchase" a large majority of FSII's interest in the Brazilian Bond. These purchase agreements are dated as of September 1, 2000. In consideration for FSII's interest in the Brazilian Bond, the borrowers purportedly agreed to make four annual installment payments beginning on September 1, 2000. The first payment was for $420,000 or 3% of the aggregate principal balance of the insider loans. Pursuant to the terms of the purchase agreements, it appears that the Brazilian Bond was in the custody of Lehman Brothers International (Europe). Ultimately, it was never disclosed that the Brazilian Bond was purchased on credit.

7. Based on Banco Interior's trustee's investigation, it appears that on or around August 2000, Ferreira opened one or more bank accounts with Lehman Brothers, Inc. and/or Lehman Brothers International (Europe). Upon further information and belief, these accounts are in the name of Banco Interior and Aufer Empreendimentos Imobiliarios Ltda. (Ferreira's real estate company). The known accounts were numbered 831-20448, 831-20687, 082400BISP, 831-20686-15 399 and 082400AUFL. It is also possible that Ferreira may have opened a bank account(s) with Lehman Brothers, Inc. or Lehman Brothers International (Europe) in New York in the name of Aufer Agropecuaria, S.A (another related entity).

8. Upon information and belief, the initial $420,000 payment related to the acquisition of the Brazilian Bond was deposited into an account with Lehman Brothers Inc. (Account No. 831-20686-15 399). This allegation is based on evidence of a $420,000 deposit in the account of Aufer Emprendimentos Imobiliarios Ltda. at Lehman Brothers, Inc. by an entity named Garter Trading S.A on September 1, 2000. On the same date, there was also an outgoing

transfer in the same amount ($420,000) to an account at Bank of America International (No. 6550161536). *Account No. 6550161536 at Bank of America International is now known to have belonged to, or to have been controlled, in whole or in part by, Lehman Brothers Holdings, Inc. at the relevant time*. Subsequently thereafter, it appears that Ferreira corresponded with a Lehman entity and cancelled this transaction. As such, upon information and belief, Lehman Brothers Holdings, Inc. and/or Lehman Brothers International (Europe) received a "rent fee" of approximately US$420,000.00, and possibly more, as consideration for its or their participation in this scheme.

9. By improperly booking an interest in the Brazilian Bond (which was acquired on credit) as an asset on its balance sheet, Banco Interior misrepresented its financial position and thereby committed fraud against its shareholders, depositors, and Brazilian regulatory authorities. This fraud enabled Ferreira to breach his fiduciary duties and allowed Banco Interior to forestall its insolvency while simultaneously adding to Banco Interior's liabilities and deepening its insolvency to the ultimate detriment of its shareholders and creditors. Upon information and belief, Lehman Brothers Holdings, Inc. and/or Lehman Brothers International (Europe) willingly aided and knowingly conspired with Banco Interior's principal, Ferreira, to commit this fraud on Banco Interior, its shareholders, and its creditors.

## Argument

10. A timely and properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. See FED. R. BANKR. P. 3001(t). The Debtors do not dispute that Banco Interior's Claim was properly and timely filed in accordance with the bar date order entered in these chapter 11 cases and the Bankruptcy Rules. Banco Interior's Claim is therefore *prima facie* valid. In re Martinez, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009).

11. A properly filed proof of claim in a bankruptcy proceeding cannot be defeated by mere formal objection and the sworn proof (in the form of supporting documentation) is to be treated as some evidence even when it is denied by an objecting party. In re Minbatiwalla, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (citation omitted). To successfully rebut the presumption of validity with respect to a claimant's proof of claim, an objecting party must produce sufficient evidence "which, if believed, would refute at least one of the allegations essential to the claim." In re Reilly, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (citing In re Allegheny Int'l, Inc., 954 F.2d 167 (3d Cir. 1992)); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re DJK Residential LLC, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009).

12. If, and only if, the objecting party meets its burden of production does the burden then shift back to the claimant. Reilly, 245 B.R. at 773; Martinez, 409 B.R. at 38. As such, if the objector does not "introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the validity and the amount of the claim." Minbatiwalla, 424 B.R. at 111 (Bankr. S.D.N.Y. 2010) (citing 4 COLLIER on Bankruptcy 502.03[3][f] (rev. ed.2007)).

13. In this case, LBHI has not proffered any evidence to counter Banco Interior's Claim. Thus, the Claim is presumptively valid and the burden has not shifted back to Banco Interior. Accordingly, for the foregoing reasons, Banco Interior respectfully requests that the Court enter an order denying Debtor LBHI's Objection, as it relates to Banco Interior's Claim, without prejudice so that Banco Interior may conduct discovery.

Dated: December 2, 2011  Respectfully submitted,
Miami, Florida

By: /s/ Rafael J. Valdes
Gregory S. Grossman (*pro hac vice* pending)
Rafael J. Valdes (*pro hac vice* pending)
**ASTIGARRAGA, DAVIS, MULLINS & GROSSMAN, P.A.**
701 Brickell Avenue, 16th Floor
Miami, FL 33131
Phone: (305) 372-8282
Facsimile: (305) 372-8202

*Counsel for Banco Interior de São Paulo, S.A.*

.