**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
<u>**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**</u>

# EXHIBIT A



RECEIVED
NOV 2 8 2011
U.S. BANKRUPTCY COURT, SDNY
JMP

From: Ryan.Martin@weil.com
To: sabvanrooy@hotmail.com
CC: lehmanteam@weil.com
Subject: RE: Repeated request Partnerships Agreement and two other questions
Date: Wed, 9 Nov 2011 01:29:02 +0000

Ms. Rooy,

We routinely grant extensions like the one you were offered. I have not yet received a final answer regarding whether we can provide the partnership agreement, but will notify you as soon as I have an answer. You should follow the proceedures described in the objection and the notice you received which require all responses to be filed *electronically* with the court in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov). You can contact the creditors committee at:

Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq. and Evan Fleck, Esq.)

www.lehmancreditors.com

Tel: 212-530-5000

I believe I have answered all of your questions. If you have any questions feel free to write me directly. Please understand that I am making every effort to respond to your requests in a timely manner but have numerous inquiries on related issues. I understand your frustration and will do my best to help address your concerns.

Ryan Martin

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
ryan.martin@weil.com
+1 212 310 8325 Direct


From: Saskia van Rooy [mailto:sabvanrooy@hotmail.com]
Sent: Tuesday, November 08, 2011 7:59 PM
To: Martin, Ryan
Cc: Lehman Team
Subject: Repeated request Partnerships Agreement and two other questions
Importance: High

Dear Mr Martin,

In your email of November 7, 2011 you have promised me to respond my questions. However, until now I did not receive any email from you. I also did not get your email in the so called "JUNK-box".

Please, would you be so kind to respond my questions asap?

Thank you on forehand for your quick reply.

With best regards,
Saskia van Rooy


From: Ryan.Martin@weil.com
To: sabvanrooy@hotmail.com
CC: lehmanteam@weil.com
Subject: Re: Repeated request Partnerships Agreement and two other questions
Date: Mon, 7 Nov 2011 02:22:05 +0000

Your welcome. Your email was filtered to quarantine folder, perhaps mine was as well. I will respond to your questions in detail tomorrow. Please email only me in the future.

Ryan Martin

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, NY 10153

ryan.martin@weil.com

+1 212 310 8325 Direct

+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.

On Nov 6, 2011, at 8:31 PM, "Saskia van Rooy" <sabvanrooy@hotmail.com> wrote:

Dear Mr. Martin,

Thank you for your reply! I did not receive your (first) email you are referring to.

Thank you for the extension of time to November 25th 2011 (on Friday). Do you want to confirm as well that this extension of time is lawful and according the rules of the US Bankruptcy Court?

I ask you again to answer my questions I earlier have mailed you:

1) Please, would you like to send the **complete "Partnerships Agreements"**, because your "Objection" (Exhibit D) does not show the entire document. Because your Objection is mainly based on this Partnerships Agreement, I have the right to get notice of the entire document and all terms, clauses, definitions, conditions of this Agreement etc. I also think the judge of the US Bankruptcy Court should get notice of the entire document and should take all conditions, clauses, terms, definitions of the entire document into account, as the Objection of the Debtors is mainly based on this document.

You write in your email of November 7, 2011 that we have talked about two hours on the phone. I think our phone talk was less time than 2 hours, because you had to interrupt the talk 3 times (because other calls came in an/or collegues needed you to talk to, while I was waiting on the phone). During our three phone calls you did not tell me anything about the content of the missing part of the Partnership Agreements; you just stated that the other pages of this Partnerships Agreements were confidential and not open to public. I request again to send me the entire Partnerships Agreement asap.

2) Do you want to inform me if I could send my response by fax (instead of by post) to the Chambers of the Honorable James Peck, to your office, to the office of the US Trustee for Region 2 and to the attorneys for the official committee of unsecured creditors appointed in this case? If yes, would you be so kind to give me all fax numbers of earlier mentioned persons/offices?

3) Do you want to send me the name, the email address and telephone number of the attorney of the "Official Committee of Unsecured Creditors" appointed in this case?

Thank you very much on forehand for your reply.

With best regards,
Saskia van Rooy

From: Ryan.Martin@weil.com
To: sabvanrooy@hotmail.com
CC: lehmanteam@weil.com
Subject: Re: URGENT !!! - Repeated request confirmation of extension of time for Response Deadline and other questions
Date: Mon, 7 Nov 2011 01:04:56 +0000

Dear Ms Rooy,

I apologize for any miscommunication. I sent you an email confirming an extension to November 25th on Friday of this week. I am happy to discuss with you further if you would like. Until I am able to confirm our ability to provide you with the partnership agreements I am afraid that there is not much more I can convey beyond the information we discussed over the course of our two hour conversation last week. Please let me know if this extension will allow you to respond appropriately or if I can be of further assistance. I will contact you with answers to your questions as soon as I have an answer.

Best,

Ryan Martin

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, NY 10153

ryan.martin@weil.com

+1 212 310 8325 Direct

+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.

From: sabvanrooy@hotmail.com
To: lehmanteam@weil.com; ryan.martin@weil.com
Subject: URGENT !!! - Repeated request confirmation of extension of time for Response Deadline and other questions
Date: Mon, 7 Nov 2011 00:22:12 +0100

Dear Mr. Martin,
Dear Mrs./Mr......,

In re: Confirmation of extension of time - Claim Number 54549

During my three phone calls on November 2, 2011, with Mr. Ryan Martin (tel + 1 212 310 8325), I asked him to give me an extension of time in order to respond to the Objection of the Debtors. Mr. Martin promised and assured me that he - as attorney of the Debtor - is capable of setting the Response Deadline and that he would give me a lawful new Response Deadline of November 18 2011, on or before 5.00 p.m. (prevailing Eastern Time) or - on my request - even a later date than November 18, 2011. He assured me that I did not have to respond on or before 4:00 p.m. November 11, 2011, but that I could respond on or before 5.00 p.m. November 18, 2011 or even a later date.

I asked Mr. Martin to confirm this extension of time by letter (a scanned letter, sent by email). Mr. Martin told me he would mail me November 2, 2011 a letter with a confirmation of the extension of time. Athough Mr Martin promised to send the confirmation with an extension of time immediately, he did not reply any mail and phonecall afterwards (mails and calls on November 3 and 4, 2011).

I urgently ask Mr. Martin or another attorney to give and confirm a longer extension of time than November 18, 2011, because I need more time to read all documents in order to respond properly. I received the Objection of the Debtors very late by normal post.  Besides the sending by post from the Netherlands to the United States will take at least 7 days.

Furthermore I urgently request Mr. Martin or another attorney to reply asap all questions/requests that I have mailed before, see beneath!

Thank you in advance for your quick reply!

With best regards,
Saskia van Rooy

Mrs. S.A.B. van Rooy (claim number 54549)
Schoonouwenseweg 24
2821 NX STOLWIJK
THE NETHERLANDS
Tel. + 31 182 34 34 43
Email: sabvanrooy@hotmail.com

---

From: sabvanrooy@hotmail.com
To: ryan.martin@weil.com
Subject: URGENT !!! - Repeated request extension of time for Response Deadline and other questions
Date: Fri, 4 Nov 2011 19:19:18 +0100

Dear Mr. Martin,

Although you promised me November 2, 2011 to reply the same day, you did not reply until now my emails and did not answer my questions/requests. Please, would you be so kind to reply asap?

On November 2, 2011 I asked you to mail me the complete "Partnership Agreements", because your "Objection" (Exhibit D) does not show the entire document. You told me LBHI did not put the entire Partnership Agreement on purpose on the website www.lehman-docket.com, because some parts of this agreement would be "confidential" and not open to the public. However, I asked you by phone and requested you by mail November 2, 2011 to mail me this entire Agreement as soon as possible. In order to respond properly on your Objection, I need to read/study the entire agreement. As time is running, I urgently request you again to mail the entire agreement as soon as possible.

Do you want to inform me if I could send my response by fax (instead of by post) to the Chambers of the Honorable James Peck, to your office, to the office of the US Trustee for Region 2 and to the attorneys for the official committee of unsecured creditors appointed in this case? If yes, would you be so kind to give me all fax numbers of earlier mentioned persons/offices?

I tried to contact the attorney of LBHI in the UK by phone, but he/she did not respond yet to my request to call me back.

Thank you for your quick reply on forehand!

With best regards,
Saskia van Rooy

---

From: sabvanrooy@hotmail.com
To: ryan.martin@weil.com
Subject: URGENT - Request extension of time for Response Deadline and other questions
Date: Fri, 4 Nov 2011 01:03:24 +0100

Dear Mr Martin,

Please, do you want to respond my requests / questions as soon as possible? You promised me yesterday to reply immediately.

Thank you very much on forehand.

With best regards,

Saskia van Rooy

---

From: sabvanrooy@hotmail.com
To: ryan.martin@weil.com
Subject: Request extension of time for Response Deadline and other questions
Date: Wed, 2 Nov 2011 23:22:10 +0100

Dear Mr. Martin, dear Ryan,

Today I had three phone calls with you concerning the "Objection" of Lehman Brothers Holdings Inc. of my claim (claim number 54549, amount: 106,132.50 American dollars, Fixed Rate Enhanced Capital Advantaged Preferred Securities of issuer Lehman Brothers UK Capital Funding IV LP with the benefit of a subordinated guarantee of Lehman Brohers Holdings Inc.).

I have asked you some questions, by example where I could find the documents belonging to your Objection (as the letter of the US Bankruptcy Court of September 16th 2011 did not mention any motivation for your Objection). You reffered to your website, you have mentioned "Docket 20102" and referred to the "Motion for Objection to claims". You have told me this Motion has a list with creditors (Exhibit A), on which list my name is mentioned (number 475 of the list).

During our calls of today I have asked you to give me an extension of time in order to respond to the Objection. You promised and assured me that you - as attorney of the Debtor - are capable of setting the Response Deadline and that you would give me a new Response Deadline of November 18 2011, on or before 5.00 p.m. (prevailing Eastern Time). This means that you assured me that I don't have to respond on or before 4:00 p.m. November 11, 2011, but that I can respond on or before 5.00 p.m. November 18, 2011.

I asked you a somewhat longer deadline than November 18, 2011, because the reading of alle documents and the sending by post (from the Netherlands to the USA) will take a lot of time. You told me you were willing to give me another new extension of the Response Deadline if this would be necessary for me. I have asked you to confirm this extension of time by letter (a scanned letter, sent by email). You told me you would mail me today a letter with a confirmation of the extension of time. I urgently ask you to give and confirm a longer extension of time than November 18, 2011, because I need more time to read all documents, to respond properly and to send my response by post. The reading of these documents will take a lot of time, because it's very difficult legal English.

Furthermore I have asked you the name and telephone number of the attorney of Lehman Brothers Holdings Inc. in the UK. I asked you if I could lodge my claim also in the UK. You have given me the telephone number + 44 20 79 03 11 74. Please, would you be so kind to mail me the name and email address of this attorney (I did not understand the name you mentioned by phone).

Furthermore I asked you to mail me the complete "Partnership Agreements" (Exhibit D), because Exhibit D does not show the entire document. Do you want to mail me these documents as well?

Do you want to send me the name, the email address and telephone number of the attorney of the "Official Committee of Unsecured Creditors" appointed in this case?

Thank you for your help so far and thank you in advance for your reply.

With best regards,
Saskia van Rooy

Mrs. S.A.B. van Rooy (claim number 54549)
Schoonouwenseweg 24
2821 NX STOLWIJK
THE NETHERLANDS
Tel. + 31 182 34 34 43
Email: sabvanrooy@hotmail.com

**RESPONSE OF MRS. S.A.B. VAN ROOY
TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
<u>TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM</u>**

# EXHIBIT B



*Rabobank*

Mevrouw S.A.B. van Rooy
Schoonouwenseweg`24
2821 NX  STOLWIJK

Utrecht, 25 October 2011

Subject: Bonds Lehman Brothers UK Cap. Fund

Dear Ms. Van Rooy,

Hereby we confirm that we have nominally **€ 75.000,** - bonds Lehman Brothers UK Cap. Fund with
isincode XS0282978666 in your portfolio.
We have the bonds from May 8, 2007 to the present day in the securities account number with
30495466 under management.

With kind regards,

Sander Muller
DSI geregistreerd effectenspecialist
Rabobank Service Centrum Beleggen
✉  info_beleggen@rn.rabobank.nl
☎  0900-0705 ( Keuze 3)

**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

# EXHIBIT C

| United States Bankruptcy Court/Southern District of New York | **LEHMAN SECURITIES PROGRAMS** |
|---|---|
| Lehman Brothers Holdings Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC FDR Station, P.O. Box 5076 New York, NY 10150-5076 | **PROOF OF CLAIM** |

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000054549

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

JLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

MRS. S.A.B. VAN ROOY
SCHOONOUWENSEWEG 24
2821 NX STOLWIJK
THE NETHERLANDS

TELEPHONE NUMBER:
+ 31 182 34 34 43

Sabvanrooy@hotmail.com

Telephone number:          Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

SAME NAME AND ADDRESS AS ABOVE

Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ **106,132.50** (Required)

☐ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN): **XS 0282978 666** (Required)

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number: **9524857** (Required)

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number: **28332**
(Required)

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

**FOR COURT USE ONLY**

FILED RECEIVED

OCT 28 2009

EPIQ BANKRUPTCY SOLUTIONS

| Date: September 29, 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

**Rabobank Nederland**
Directoraat Private Banking



**Rabobank**

Postal address  PO Box 17100, 3500 HG Utrecht, The Netherlands

**BY COURIER**
**Lehman Brothers Holdings Claims**
**Processing Center**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

Visiting address  Eendrachtlaan 10, 3526 LB Utrecht
Telephone  (030) 216 00 00
Telefax  +31 30 21 68168
E-mail  j.v.m.verschuuren@rn.rabobank.nl

Your reference  Lehman Brothers Holdings Inc
Our reference  JVMV/shipment letter lehman
Extension  +31 30 21 62284
Date  20 oktober 2009
Enclosures  1101 forms

Subject  Proof of claim forms

Dear Sir, Madam,

This shipment contains 1101 Lehman Securities Program Proof of Claim Forms which
we have collected from Rabobank's securities account holders.

Would you be so kind to confirm by e-mail (j.v.m.verschuuren@rn.rabobank.nl) the
receipt of this shipment.

Yours faithfully,
Rabobank Nederland

J.V.M. Verschuuren

Assistent General Manager



**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
<u>**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**</u>

# EXHIBIT D

L 345/64        EN        Official Journal of the European Union        31.12.2003

## DIRECTIVE 2003/71/EC OF THE EUROPEAN PARLIAMENT AND OF THE COUNCIL

### of 4 November 2003

### on the prospectus to be published when securities are offered to the public or admitted to trading and amending Directive 2001/34/EC

**(Text with EEA relevance)**

THE EUROPEAN PARLIAMENT AND THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Articles 44 and 95 thereof,

Having regard to the proposal from the Commission ([1]),

Having regard to the opinion of the European Economic and Social Committee ([2]),

Having regard to the opinion of the European Central Bank ([3]),

Acting in accordance with the procedure laid down in Article 251 of the Treaty ([4]),

Whereas:

(1) Council Directives 80/390/EEC of 17 March 1980 coordinating the requirements for the drawing up, scrutiny and distribution of the listing particulars to be published for the admission of securities to official stock exchange listing ([5]) and 89/298/EEC of 17 April 1989 coordinating the requirements for the drawing up, scrutiny and distribution of the prospectus to be published when transferable securities are offered to the public ([6]) were adopted several years ago introducing a partial and complex mutual recognition mechanism which is unable to achieve the objective of the single passport provided for by this Directive. Those directives should be upgraded, updated and grouped together into a single text.

(2) Meanwhile, Directive 80/390/EEC was integrated into Directive 2001/34/EC of the European Parliament and of the Council of 28 May 2001 on the admission of securities to official stock exchange listing and on information to be published on those securities ([7]), which codifies several directives in the field of listed securities.

(3) For reasons of consistency, however, it is appropriate to regroup the provisions of Directive 2001/34/EC which stem from Directive 80/390/EEC together with Directive 89/298/EEC and to amend Directive 2001/34/EC accordingly.

(4) This Directive constitutes an instrument essential to the achievement of the internal market as set out in time-table form in the Commission communications 'Risk capital action plan' and 'Implementing the framework for financial market: Action Plan' facilitating the widest possible access to investment capital on a Community-wide basis, including for small and medium-sized enterprises (SMEs) and start-ups, by granting a single passport to the issuer.

(5) On 17 July 2000, the Council set up the Committee of Wise Men on the regulation of European securities markets. In its initial report of 9 November 2000 the Committee stresses the lack of an agreed definition of public offer of securities, with the result that the same operation is regarded as a private placement in some Member States and not in others; the current system discourages firms from raising capital on a Community-wide basis and therefore from having real access to a large, liquid and integrated financial market.

(6) In its final report of 15 February 2001 the Committee of Wise Men proposed the introduction of new legislative techniques based on a four-level approach, namely framework principles, implementing measures, cooperation and enforcement. Level 1, the directive, should confine itself to broad, general 'framework' principles, while Level 2 should contain technical implementing measures to be adopted by the Commission with the assistance of a committee.

(7) The Stockholm European Council of 23 and 24 March 2001 endorsed the final report of the Committee of Wise Men and the proposed four-level approach to make the regulatory process for Community securities legislation more efficient and transparent.

(8) The resolution of the European Parliament of 5 February 2002 on the implementation of financial services legislation also endorsed the Committee of Wise Men's final report, on the basis of the solemn declaration made before Parliament the same day by the Commission and the letter of 2 October 2001 addressed by the Internal Market Commissioner to the chairman of Parliament's Committee on Economic and Monetary Affairs with regard to the safeguards for the European Parliament's role in this process.

([1]) OJ C 240 E, 28.8.2001, p. 272 and OJ C 20 E, 28.1.2003, p. 122.
([2]) OJ C 80, 3.4.2002, p. 52.
([3]) OJ C 344, 6.12.2001, p. 4.
([4]) Opinion of the European Parliament of 14 March 2002 (OJ C 47 E, 27.2.2003, p. 417), Council Common Position of 24 March 2003 (OJ C 125 E, 27.5.2003, p. 21) and Position of the European Parliament of 2 July 2003 (not yet published in the Official Journal). Decision of the Council of 15 July 2003.
([5]) OJ L 100, 17.4.1980, p. 1. Directive as last amended by Directive of the European Parliament and of the Council 94/18/EC (OJ L 135, 31.5.1994, p. 1).
([6]) OJ L 124, 5.5.1989, p. 8.
([7]) OJ L 184, 6.7.2001, p. 1.

(9) According to the Stockholm European Council, Level 2 implementing measures should be used more frequently to ensure that technical provisions can be kept up to date with market and supervisory developments and deadlines should be set for all stages of Level 2.

(10) The aim of this Directive and its implementing measures is to ensure investor protection and market efficiency, in accordance with high regulatory standards adopted in the relevant international fora.

(11) Non-equity securities issued by a Member State or by one of a Member State's regional or local authorities, by public international bodies of which one or more Member States are members, by the European Central Bank or by the central banks of the Member States are not covered by this Directive and thus remain unaffected by this Directive; the abovementioned issuers of such securities may, however, if they so choose, draw up a prospectus in accordance with this Directive.

(12) Full coverage of equity and non-equity securities offered to the public or admitted to trading on regulated markets as defined by Council Directive 93/22/EEC of 10 May 1993 on investment services in the securities field ([1]), and not only securities which have been admitted to the official lists of stock exchanges, is also needed to ensure investor protection. The wide definition of securities in this Directive, which includes warrants and covered warrants and certificates, is only valid for this Directive and consequently in no way affects the various definitions of financial instruments used in national legislation for other purposes, such as taxation. Some of the securities defined in this Directive entitle the holder to acquire transferable securities or to receive a cash amount through a cash settlement determined by reference to other instruments, notably transferable securities, currencies, interest rates or yields, commodities or other indices or measures. Depositary receipts and convertible notes, e.g. securities convertible at the option of the investor, fall within the definition of non-equity securities set out in this Directive.

(13) Issuance of securities having a similar type and/or class in the case of non-equity securities issued on the basis of an offering programme, including warrants and certificates in any form, as well as the case of securities issued in a continuous or repeated manner, should be understood as covering not only identical securities but also securities that belong in general terms to one category. These securities may include different products, such as debt securities, certificates and warrants, or the same

product under the same programme, and may have different features notably in terms of seniority, types of underlying, or the basis on which to determine the redemption amount or coupon payment.

(14) The grant to the issuer of a single passport, valid throughout the Community, and the application of the country of origin principle require the identification of the home Member State as the one best placed to regulate the issuer for the purposes of this Directive.

(15) The disclosure requirements of the present Directive do not prevent a Member State or a competent authority or an exchange through its rule book to impose other particular requirements in the context of admission to trading of securities on a regulated market (notably regarding corporate governance). Such requirements may not directly or indirectly restrict the drawing up, the content and the dissemination of a prospectus approved by a competent authority.

(16) One of the objectives of this Directive is to protect investors. It is therefore appropriate to take account of the different requirements for protection of the various categories of investors and their level of expertise. Disclosure provided by the prospectus is not required for offers limited to qualified investors. In contrast, any resale to the public or public trading through admission to trading on a regulated market requires the publication of a prospectus.

(17) Issuers, offerors or persons asking for the admission to trading on a regulated market of securities which are exempted from the obligation to publish a prospectus will benefit from the single passport if they comply with this Directive.

(18) The provision of full information concerning securities and issuers of those securities promotes, together with rules on the conduct of business, the protection of investors. Moreover, such information provides an effective means of increasing confidence in securities and thus of contributing to the proper functioning and development of securities markets. The appropriate way to make this information available is to publish a prospectus.

(19) Investment in securities, like any other form of investment, involves risk. Safeguards for the protection of the interests of actual and potential investors are required in all Member States in order to enable them to make an informed assessment of such risks and thus to take investment decisions in full knowledge of the facts.

---

([1]) OJ L 141, 11.6.1993, p. 27. Directive as last amended by Directive 2000/64/EC of the European Parliament and of the Council (OJ L 290, 17.11.2000, p. 27).

L 345/66    EN    Official Journal of the European Union    31.12.2003

(20) Such information, which needs to be sufficient and as objective as possible as regards the financial circumstances of the issuer and the rights attaching to the securities, should be provided in an easily analysable and comprehensible form. Harmonisation of the information contained in the prospectus should provide equivalent investor protection at Community level.

(21) Information is a key factor in investor protection; a summary conveying the essential characteristics of, and risks associated with, the issuer, any guarantor and the securities should be included in the prospectus. To ensure easy access to this information, the summary should be written in non-technical language and normally should not exceed 2 500 words in the language in which the prospectus was originally drawn up.

(22) Best practices have been adopted at international level in order to allow cross-border offers of equities to be made using a single set of disclosure standards established by the International Organisation of Securities Commissions (IOSCO); the IOSCO disclosure standards (¹) will upgrade information available for the markets and investors and at the same time will simplify the procedure for Community issuers wishing to raise capital in third countries. The Directive also calls for tailored disclosure standards to be adopted for other types of securities and issuers.

(23) Fast-track procedures for issuers admitted to trading on a regulated market and frequently raising capital on these markets require the introduction at Community level of a new format of prospectuses for offering programmes or mortgage bonds and a new registration document system. Issuers may choose not to use those formats and therefore to draft the prospectus as a single document.

(24) The content of a base prospectus should, in particular, take into account the need for flexibility in relation to the information to be provided about the securities.

(25) Omission of sensitive information to be included in a prospectus should be allowed through a derogation granted by the competent authority in certain circumstances in order to avoid detrimental situations for an issuer.

(26) A clear time limit should be set for the validity of a prospectus in order to avoid outdated information.

(27) Investors should be protected by ensuring publication of reliable information. The issuers whose securities are admitted to trading on a regulated market are subject to an ongoing disclosure obligation but are not required to publish updated information regularly. Further to this obligation, issuers should, at least annually, list all relevant information published or made available to the public over the preceding 12 months, including information provided to the various reporting requirements laid down in other Community legislation. This should make it possible to ensure the publication of consistent and easily understandable information on a regular basis. To avoid excessive burdens for certain issuers, issuers of non-equity securities with high minimum denomination should not be required to meet this obligation.

(28) It is necessary for the annual information to be provided by issuers whose securities are admitted to trading on a regulated market to be appropriately monitored by Member States in accordance with their obligations under the provisions of Community and national law concerning the regulation of securities, issuers of securities and securities markets.

(29) The opportunity of allowing issuers to incorporate by reference documents containing the information to be disclosed in a prospectus — provided that the documents incorporated by reference have been previously filed with or accepted by the competent authority — should facilitate the procedure of drawing up a prospectus and lower the costs for the issuers without endangering investor protection.

(30) Differences regarding the efficiency, methods and timing of the checking of the information given in a prospectus not only make it more difficult for undertakings to raise capital or to obtain admission to trading on a regulated market in more than one Member State but also hinder the acquisition by investors established in one Member State of securities offered by an issuer established in another Member State or admitted to trading in another Member State. These differences should be eliminated by harmonising the rules and regulations in order to achieve an adequate degree of equivalence of the safeguards required in each Member State to ensure the provision of information which is sufficient and as objective as possible for actual or potential securities holders.

---

(¹) International disclosure standards for cross-border offering and initial listings by foreign issuers, Part I, International Organisation of Securities Commissions, September 1998.

31.12.2003          EN          Official Journal of the European Union          L 345/67

(31) To facilitate circulation of the various documents making up the prospectus, the use of electronic communication facilities such as the Internet should be encouraged. The prospectus should always be delivered in paper form, free of charge to investors on request.

(32) The prospectus should be filed with the relevant competent authority and be made available to the public by the issuer, the offeror or the person asking for admission to trading on a regulated market, subject to European Union provisions relating to data protection.

(33) It is also necessary, in order to avoid loopholes in Community legislation which would undermine public confidence and therefore prejudice the proper functioning of financial markets, to harmonise advertisements.

(34) Any new matter liable to influence the assessment of the investment, arising after the publication of the prospectus but before the closing of the offer or the start of trading on a regulated market, should be properly evaluated by investors and therefore requires the approval and dissemination of a supplement to the prospectus.

(35) The obligation for an issuer to translate the full prospectus into all the relevant official languages discourages cross-border offers or multiple trading. To facilitate cross-border offers, where the prospectus is drawn up in a language that is customary in the sphere of international finance, the host or home Member State should only be entitled to require a summary in its official language(s).

(36) The competent authority of the host Member State should be entitled to receive a certificate from the competent authority of the home Member State which states that the prospectus has been drawn up in accordance with this Directive. In order to ensure that the purposes of this Directive will be fully achieved, it is also necessary to include within its scope securities issued by issuers governed by the laws of third countries.

(37) A variety of competent authorities in Member States, having different responsibilities, may create unnecessary costs and overlapping of responsibilities without providing any additional benefit. In each Member State one single competent authority should be designated to approve prospectuses and to assume responsibility for supervising compliance with this Directive. Under strict conditions, a Member State should be allowed to designate more than one competent authority, but only one will assume the duties for international cooperation. Such an authority or authorities should be established as an administrative authority and in such a form that their independence from economic actors is guaranteed and conflicts of interest are avoided. The designation of a

competent authority for prospectus approval should not exclude cooperation between that authority and other entities, with a view to guaranteeing efficient scrutiny and approval of prospectuses in the interest of issuers, investors, markets participants and markets alike. Any delegation of tasks relating to the obligations provided for in this Directive and in its implementing measures should be reviewed, in accordance with Article 31, five years after the date of entry into force of this Directive and should, except for publication on the Internet of approved prospectuses, and the filing of prospectuses as mentioned in Article 14, end eight years after the entry into force of this Directive.

(38) A common minimum set of powers for the competent authorities will guarantee the effectiveness of their supervision. The flow of information to the markets required by Directive 2001/34/EC should be ensured and action against breaches should be taken by competent authorities.

(39) For the purposes of carrying out their duties, cooperation between competent authorities of the Member States is required.

(40) Technical guidance and implementing measures for the rules laid down in this Directive may from time to time be necessary to take into account developments on financial markets. The Commission should accordingly be empowered to adopt implementing measures, provided that these do not modify the essential elements of this Directive and provided that the Commission acts in accordance with the principles set out in this Directive, after consulting the European Securities Committee established by Commission Decision 2001/528/EC (¹).

(41) In exercising its implementing powers in accordance with this Directive, the Commission should respect the following principles:

— the need to ensure confidence in financial markets among small investors and small and medium-sized enterprises (SMEs) by promoting high standards of transparency in financial markets,

— the need to provide investors with a wide range of competing investment opportunities and a level of disclosure and protection tailored to their circumstances,

— the need to ensure that independent regulatory authorities enforce the rules consistently, especially as regards the fight against white-collar crime,

— the need for a high level of transparency and consultation with all market participants and with the European Parliament and the Council,

_____
(¹) OJ L 191, 13.7.2001, p. 45.

L 345/68    EN    Official Journal of the European Union    31.12.2003

— the need to encourage innovation in financial markets if they are to be dynamic and efficient,

— the need to ensure systemic stability of the financial system by close and reactive monitoring of financial innovation,

— the importance of reducing the cost of, and increasing access to, capital,

— the need to balance, on a long-term basis, the costs and benefits to market participants (including SMEs and small investors) of any implementing measures,

— the need to foster the international competitiveness of the Community's financial markets without prejudice to a much-needed extension of international cooperation,

— the need to achieve a level playing field for all market participants by establishing Community legislation every time it is appropriate,

— the need to respect differences in national financial markets where these do not unduly impinge on the coherence of the single market,

— the need to ensure coherence with other Community legislation in this area, as imbalances in information and a lack of transparency may jeopardise the operation of the markets and above all harm consumers and small investors.

(42) The European Parliament should be given a period of three months from the first transmission of draft implementing measures to allow it to examine them and to give its opinion. However, in urgent and duly justified cases, this period may be shortened. If, within that period, a resolution is passed by the European Parliament, the Commission should re-examine the draft measures.

(43) Member States should lay down a system of sanctions for breaches of the national provisions adopted pursuant to this Directive and should take all the measures necessary to ensure that these sanctions are applied. The sanctions thus provided for should be effective, proportional and dissuasive.

(44) Provision should be made for the right of judicial review of decisions taken by Member States' competent authorities in respect of the application of this Directive.

(45) In accordance with the principle of proportionality, it is necessary and appropriate for the achievement of the basic objective of ensuring the completion of a single securities market to lay down rules on a single passport for issuers. This Directive does not go beyond what is necessary in order to achieve the objectives pursued in accordance with the third paragraph of Article 5 of the Treaty.

(46) The assessment made by the Commission of the application of this Directive should focus in particular on the process of approval of prospectuses by the competent authorities of the Member States, and more generally on the application of the home-country principle, and whether or not problems of investor protection and market efficiency might result from this application; the Commission should also examine the functioning of Article 10.

(47) For future developments of this Directive, consideration should be given to the matter of deciding which approval mechanism should be adopted to enhance further the uniform application of Community legislation on prospectuses, including the possible establishment of a European Securities Unit.

(48) This Directive respects the fundamental rights and observes the principles recognised in particular by the Charter of Fundamental Rights of the European Union.

(49) The measures necessary for the implementation of this Directive should be adopted in accordance with Council Decision 1999/468/EC of 28 June 1999 laying down the procedures for the exercise of implementing powers conferred on the Commission (¹),

HAVE ADOPTED THIS DIRECTIVE:

CHAPTER I

**GENERAL PROVISIONS**

*Article 1*

**Purpose and scope**

1.    The purpose of this Directive is to harmonise requirements for the drawing up, approval and distribution of the prospectus to be published when securities are offered to the public or admitted to trading on a regulated market situated or operating within a Member State.

2.    This Directive shall not apply to:

(a) units issued by collective investment undertakings other than the closed-end type;

(b) non-equity securities issued by a Member State or by one of a Member State's regional or local authorities, by public international bodies of which one or more Member States are members, by the European Central Bank or by the central banks of the Member States;

(c) shares in the capital of central banks of the Member States;

_____
(¹) OJ L 184, 17.7.1999, p. 23.

31.12.2003    [EN]    Official Journal of the European Union    L 345/69

(d) securities unconditionally and irrevocably guaranteed by a Member State or by one of a Member State's regional or local authorities;

(e) securities issued by associations with legal status or non-profit-making bodies, recognised by a Member State, with a view to their obtaining the means necessary to achieve their non-profit-making objectives;

(f) non-equity securities issued in a continuous or repeated manner by credit institutions provided that these securities:

    (i) are not subordinated, convertible or exchangeable;

    (ii) do not give a right to subscribe to or acquire other types of securities and that they are not linked to a derivative instrument;

    (iii) materialise reception of repayable deposits;

    (iv) are covered by a deposit guarantee scheme under Directive 94/19/EC of the European Parliament and of the Council on deposit-guarantee schemes (¹);

(g) non-fungible shares of capital whose main purpose is to provide the holder with a right to occupy an apartment, or other form of immovable property or a part thereof and where the shares cannot be sold on without this right being given up;

(h) securities included in an offer where the total consideration of the offer is less than EUR 2 500 000, which limit shall be calculated over a period of 12 months;

(i) 'bostadsobligationer' issued repeatedly by credit institutions in Sweden whose main purpose is to grant mortgage loans, provided that

    (i) the 'bostadsobligationer' issued are of the same series;

    (ii) the 'bostadsobligationer' are issued on tap during a specified issuing period;

    (iii) the terms and conditions of the 'bostadsobligationer' are not changed during the issuing period;

    (iv) the sums deriving from the issue of the said 'bostadsobligationer', in accordance with the articles of association of the issuer, are placed in assets which provide sufficient coverage for the liability deriving from securities;

(j) non-equity securities issued in a continuous or repeated manner by credit institutions where the total consideration of the offer is less than EUR 50 000 000, which limit shall be calculated over a period of 12 months, provided that these securities:

    (i) are not subordinated, convertible or exchangeable;

    (ii) do not give a right to subscribe to or acquire other types of securities and that they are not linked to a derivative instrument.

3. Notwithstanding paragraph 2(b), (d), (h), (i) and (j), an issuer, an offeror or a person asking for admission to trading on a regulated market shall be entitled to draw up a prospectus in accordance with this Directive when securities are offered to the public or admitted to trading.

*Article 2*

**Definitions**

1. For the purposes of this Directive, the following definitions shall apply:

(a) 'securities' means transferable securities as defined by Article 1(4) of Directive 93/22/EEC with the exception of money market instruments as defined by Article 1(5) of Directive 93/22/EEC, having a maturity of less than 12 months. For these instruments national legislation may be applicable;

(b) 'equity securities' means shares and other transferable securities equivalent to shares in companies, as well as any other type of transferable securities giving the right to acquire any of the aforementioned securities as a consequence of their being converted or the rights conferred by them being exercised, provided that securities of the latter type are issued by the issuer of the underlying shares or by an entity belonging to the group of the said issuer;

(c) 'non-equity securities' means all securities that are not equity securities;

(d) 'offer of securities to the public' means a communication to persons in any form and by any means, presenting sufficient information on the terms of the offer and the securities to be offered, so as to enable an investor to decide to purchase or subscribe to these securities. This definition shall also be applicable to the placing of securities through financial intermediaries;

(e) 'qualified investors' means:

    (i) legal entities which are authorised or regulated to operate in the financial markets, including: credit institutions, investment firms, other authorised or regulated financial institutions, insurance companies, collective investment schemes and their management companies, pension funds and their management companies, commodity dealers, as well as entities not so authorised or regulated whose corporate purpose is solely to invest in securities;

    (ii) national and regional governments, central banks, international and supranational institutions such as the International Monetary Fund, the European Central Bank, the European Investment Bank and other similar international organisations;

    (iii) other legal entities which do not meet two of the three criteria set out in paragraph (f);

(¹) OJ L 135, 31.5.1994, p. 5.

L 345/70    EN    Official Journal of the European Union    31.12.2003

(iv) certain natural persons: subject to mutual recognition, a Member State may choose to authorise natural persons who are resident in the Member State and who expressly ask to be considered as qualified investors if these persons meet at least two of the criteria set out in paragraph 2;

(v) certain SMEs: subject to mutual recognition, a Member State may choose to authorise SMEs which have their registered office in that Member State and who expressly ask to be considered as qualified investors;

(f) 'small and medium-sized enterprises' means companies, which, according to their last annual or consolidated accounts, meet at least two of the following three criteria: an average number of employees during the financial year of less than 250, a total balance sheet not exceeding EUR 43 000 000 and an annual net turnover not exceeding EUR 50 000 000;

(g) 'credit institution' means an undertaking as defined by Article 1(1)(a) of Directive 2000/12/EC of the European Parliament and of the Council of 20 March 2000 relating to the taking up and pursuit of the business of credit institutions (¹);

(h) 'issuer' means a legal entity which issues or proposes to issue securities;

(i) 'person making an offer' (or 'offeror') means a legal entity or individual which offers securities to the public;

(j) 'regulated market' means a market as defined by Article 1(13) of Directive 93/22/EEC;

(k) 'offering programme' means a plan which would permit the issuance of non-equity securities, including warrants in any form, having a similar type and/or class, in a continuous or repeated manner during a specified issuing period;

(l) 'securities issued in a continuous or repeated manner' means issues on tap or at least two separate issues of securities of a similar type and/or class over a period of 12 months;

(m) 'home Member State' means:

(i) for all Community issuers of securities which are not mentioned in (ii), the Member State where the issuer has its registered office;

(ii) for any issues of non-equity securities whose denomination per unit amounts to at least EUR 1 000, and for any issues of non-equity securities giving the right to acquire any transferable securities or to receive a cash amount, as a consequence of their being converted or the rights conferred by them being exercised, provided that the issuer of the non-equity securities is not the issuer of the underlying securities or an entity belonging to the group of the latter issuer, the Member State where the issuer has its registered office, or where the securities were or are to be admitted to trading on a regulated market or where

the securities are offered to the public, at the choice of the issuer, the offeror or the person asking for admission, as the case may be. The same regime shall be applicable to non-equity securities in a currency other than euro, provided that the value of such minimum denomination is nearly equivalent to EUR 1 000;

(iii) for all issuers of securities incorporated in a third country, which are not mentioned in (ii), the Member State where the securities are intended to be offered to the public for the first time after the date of entry into force of this Directive or where the first application for admission to trading on a regulated market is made, at the choice of the issuer, the offeror or the person asking for admission, as the case may be, subject to a subsequent election by issuers incorporated in a third country if the home Member State was not determined by their choice;

(n) 'host Member State' means the State where an offer to the public is made or admission to trading is sought, when different from the home Member State;

(o) 'collective investment undertaking other than the closed-end type' means unit trusts and investment companies:

(i) the object of which is the collective investment of capital provided by the public, and which operate on the principle of risk-spreading; and

(ii) the units of which are, at the holder's request, repurchased or redeemed, directly or indirectly, out of the assets of these undertakings;

(p) 'units of a collective investment undertaking' mean securities issued by a collective investment undertaking as representing the rights of the participants in such an undertaking over its assets;

(q) 'approval' means the positive act at the outcome of the scrutiny of the completeness of the prospectus by the home Member State's competent authority including the consistency of the information given and its comprehensibility;

(r) 'base prospectus' means a prospectus containing all relevant information as specified in Articles 5, 7 and 16 in case there is a supplement, concerning the issuer and the securities to be offered to the public or admitted to trading, and, at the choice of the issuer, the final terms of the offering.

2.    For the purposes of paragraph 1(e)(iv) the criteria are as follows:

(a) the investor has carried out transactions of a significant size on securities markets at an average frequency of, at least, 10 per quarter over the previous four quarters;

(b) the size of the investor's securities portfolio exceeds EUR 0,5 million;

(¹) OJ L 126, 26.5.2000, p. 1. Directive as last amended by Directive 2000/28/EC (OJ L 275, 27.10.2000, p. 37).

(c) the investor works or has worked for at least one year in the financial sector in a professional position which requires knowledge of securities investment.

3.   For the purposes of paragraphs 1(e)(iv) and (v) the following shall apply:

Each competent authority shall ensure that appropriate mechanisms are in place for a register of natural persons and SMEs considered as qualified investors, taking into account the need to ensure an adequate level of data protection. The register shall be available to all issuers. Each natural person or SME wishing to be considered as a qualified investor shall register and each registered investor may decide to opt out at any moment.

4.   In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission shall, in accordance with the procedure set out in Article 24(2), adopt implementing measures concerning the definitions referred to in paragraph 1, including adjustment of the figures used for the definition of SMEs, taking into account Community legislation and recommendations as well as economic developments and disclosure measures relating to the registration of individual qualified investors.

*Article 3*

**Obligation to publish a prospectus**

1.   Member States shall not allow any offer of securities to be made to the public within their territories without prior publication of a prospectus.

2.   The obligation to publish a prospectus shall not apply to the following types of offer:

(a) an offer of securities addressed solely to qualified investors; and/or

(b) an offer of securities addressed to fewer than 100 natural or legal persons per Member State, other than qualified investors; and/or

(c) an offer of securities addressed to investors who acquire securities for a total consideration of at least EUR 50 000 per investor, for each separate offer; and/or

(d) an offer of securities whose denomination per unit amounts to at least EUR 50 000; and/or

(e) an offer of securities with a total consideration of less than EUR 100 000, which limit shall be calculated over a period of 12 months.

However, any subsequent resale of securities which were previously the subject of one or more of the types of offer mentioned in this paragraph shall be regarded as a separate offer and the definition set out in Article 2(1)(d) shall apply for the purpose of deciding whether that resale is an offer of securities to the public. The placement of securities through financial intermediaries shall be subject to publication of a prospectus if none of the conditions (a) to (e) are met for the final placement.

3.   Member States shall ensure that any admission of securities to trading on a regulated market situated or operating within their territories is subject to the publication of a prospectus.

*Article 4*

**Exemptions from the obligation to publish a prospectus**

1.   The obligation to publish a prospectus shall not apply to offers of securities to the public of the following types of securities:

(a) shares issued in substitution for shares of the same class already issued, if the issuing of such new shares does not involve any increase in the issued capital;

(b) securities offered in connection with a takeover by means of an exchange offer, provided that a document is available containing information which is regarded by the competent authority as being equivalent to that of the prospectus, taking into account the requirements of Community legislation;

(c) securities offered, allotted or to be allotted in connection with a merger, provided that a document is available containing information which is regarded by the competent authority as being equivalent to that of the prospectus, taking into account the requirements of Community legislation;

(d) shares offered, allotted or to be allotted free of charge to existing shareholders, and dividends paid out in the form of shares of the same class as the shares in respect of which such dividends are paid, provided that a document is made available containing information on the number and nature of the shares and the reasons for and details of the offer;

(e) securities offered, allotted or to be allotted to existing or former directors or employees by their employer which has securities already admitted to trading on a regulated market or by an affiliated undertaking, provided that a document is made available containing information on the number and nature of the securities and the reasons for and details of the offer.

2.   The obligation to publish a prospectus shall not apply to the admission to trading on a regulated market of the following types of securities:

(a) shares representing, over a period of 12 months, less than 10 per cent of the number of shares of the same class already admitted to trading on the same regulated market;

(b) shares issued in substitution for shares of the same class already admitted to trading on the same regulated market, if the issuing of such shares does not involve any increase in the issued capital;

(c) securities offered in connection with a takeover by means of an exchange offer, provided that a document is available containing information which is regarded by the competent authority as being equivalent to that of the prospectus, taking into account the requirements of Community legislation;

L 345/72    [EN]    Official Journal of the European Union    31.12.2003

(d) securities offered, allotted or to be allotted in connection with a merger, provided that a document is available containing information which is regarded by the competent authority as being equivalent to that of the prospectus, taking into account the requirements of Community legislation;

(e) shares offered, allotted or to be allotted free of charge to existing shareholders, and dividends paid out in the form of shares of the same class as the shares in respect of which such dividends are paid, provided that the said shares are of the same class as the shares already admitted to trading on the same regulated market and that a document is made available containing information on the number and nature of the shares and the reasons for and details of the offer;

(f) securities offered, allotted or to be allotted to existing or former directors or employees by their employer or an affiliated undertaking, provided that the said securities are of the same class as the securities already admitted to trading on the same regulated market and that a document is made available containing information on the number and nature of the securities and the reasons for and detail of the offer;

(g) shares resulting from the conversion or exchange of other securities or from the exercise of the rights conferred by other securities, provided that the said shares are of the same class as the shares already admitted to trading on the same regulated market;

(h) securities already admitted to trading on another regulated market, on the following conditions:

   (i) that these securities, or securities of the same class, have been admitted to trading on that other regulated market for more than 18 months;

   (ii) that, for securities first admitted to trading on a regulated market after the date of entry into force of this Directive, the admission to trading on that other regulated market was associated with an approved prospectus made available to the public in conformity with Article 14;

   (iii) that, except where (ii) applies, for securities first admitted to listing after 30 June 1983, listing particulars were approved in accordance with the requirements of Directive 80/390/EEC or Directive 2001/34/EC;

   (iv) that the ongoing obligations for trading on that other regulated market have been fulfilled;

   (v) that the person seeking the admission of a security to trading on a regulated market under this exemption makes a summary document available to the public in a language accepted by the competent authority of the Member State of the regulated market where admission is sought;

   (vi) that the summary document referred to in (v) is made available to the public in the Member State of the regulated market where admission to trading is sought in the manner set out in Article 14(2); and

   (vii) that the contents of the summary document shall comply with Article 5(2). Furthermore the document shall state where the most recent prospectus can be obtained and where the financial information published by the issuer pursuant to his ongoing disclosure obligations is available.

3.    In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission shall, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning paragraphs 1(b), 1(c), 2(c) and 2(d), notably in relation to the meaning of equivalence.

CHAPTER II

DRAWING UP OF THE PROSPECTUS

*Article 5*

**The prospectus**

1.    Without prejudice to Article 8(2), the prospectus shall contain all information which, according to the particular nature of the issuer and of the securities offered to the public or admitted to trading on a regulated market, is necessary to enable investors to make an informed assessment of the assets and liabilities, financial position, profit and losses, and prospects of the issuer and of any guarantor, and of the rights attaching to such securities. This information shall be presented in an easily analysable and comprehensible form.

2.    The prospectus shall contain information concerning the issuer and the securities to be offered to the public or to be admitted to trading on a regulated market. It shall also include a summary. The summary shall, in a brief manner and in non-technical language, convey the essential characteristics and risks associated with the issuer, any guarantor and the securities, in the language in which the prospectus was originally drawn up. The summary shall also contain a warning that:

(a) it should be read as an introduction to the prospectus;

(b) any decision to invest in the securities should be based on consideration of the prospectus as a whole by the investor;

(c) where a claim relating to the information contained in a prospectus is brought before a court, the plaintiff investor might, under the national legislation of the Member States, have to bear the costs of translating the prospectus before the legal proceedings are initiated; and

(d) civil liability attaches to those persons who have tabled the summary including any translation thereof, and applied for its notification, but only if the summary is misleading, inaccurate or inconsistent when read together with the other parts of the prospectus.

Where the prospectus relates to the admission to trading on a regulated market of non-equity securities having a denomination of at least EUR 50 000, there shall be no requirement to provide a summary except when requested by a Member State as provided for in Article 19(4).

3. Subject to paragraph 4, the issuer, offeror or person asking for the admission to trading on a regulated market may draw up the prospectus as a single document or separate documents. A prospectus composed of separate documents shall divide the required information into a registration document, a securities note and a summary note. The registration document shall contain the information relating to the issuer. The securities note shall contain the information concerning the securities offered to the public or to be admitted to trading on a regulated market.

4. For the following types of securities, the prospectus can, at the choice of the issuer, offeror or person asking for the admission to trading on a regulated market consist of a base prospectus containing all relevant information concerning the issuer and the securities offered to the public or to be admitted to trading on a regulated market:

(a) non-equity securities, including warrants in any form, issued under an offering programme;

(b) non-equity securities issued in a continuous or repeated manner by credit institutions,

   (i) where the sums deriving from the issue of the said securities, under national legislation, are placed in assets which provide sufficient coverage for the liability deriving from securities until their maturity date;

   (ii) where, in the event of the insolvency of the related credit institution, the said sums are intended, as a priority, to repay the capital and interest falling due, without prejudice to the provisions of Directive 2001/24/EC of the European Parliament and of the Council of 4 April 2001 on the reorganisation and winding up of credit institutions (¹).

The information given in the base prospectus shall be supplemented, if necessary, in accordance with Article 16, with updated information on the issuer and on the securities to be offered to the public or to be admitted to trading on a regulated market.

If the final terms of the offer are not included in either the base prospectus or a supplement, the final terms shall be provided to investors and filed with the competent authority when each public offer is made as soon as practicable and if possible in advance of the beginning of the offer. The provisions of Article 8(1)(a) shall be applicable in any such case.

5. In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission shall, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning the format of the prospectus or base prospectus and supplements.

## Article 6

### Responsibility attaching to the prospectus

1. Member States shall ensure that responsibility for the information given in a prospectus attaches at least to the issuer or its administrative, management or supervisory bodies, the offeror, the person asking for the admission to trading on a regulated market or the guarantor, as the case may be. The persons responsible shall be clearly identified in the prospectus by their names and functions or, in the case of legal persons, their names and registered offices, as well as declarations by them that, to the best of their knowledge, the information contained in the prospectus is in accordance with the facts and that the prospectus makes no omission likely to affect its import.

2. Member States shall ensure that their laws, regulation and administrative provisions on civil liability apply to those persons responsible for the information given in a prospectus.

However, Member States shall ensure that no civil liability shall attach to any person solely on the basis of the summary, including any translation thereof, unless it is misleading, inaccurate or inconsistent when read together with the other parts of the prospectus.

## Article 7

### Minimum information

1. Detailed implementing measures regarding the specific information which must be included in a prospectus, avoiding duplication of information when a prospectus is composed of separate documents, shall be adopted by the Commission in accordance with the procedure referred to in Article 24(2). The first set of implementing measures shall be adopted by 1 July 2004.

2. In particular, for the elaboration of the various models of prospectuses, account shall be taken of the following:

(a) the various types of information needed by investors relating to equity securities as compared with non-equity securities; a consistent approach shall be taken with regard to information required in a prospectus for securities which have a similar economic rationale, notably derivative securities;

(¹) OJ L 125, 5.5.2001, p. 15.

L 345/74          EN          Official Journal of the European Union          31.12.2003

(b) the various types and characteristics of offers and admissions to trading on a regulated market of non-equity securities. The information required in a prospectus shall be appropriate from the point of view of the investors concerned for non-equity securities having a denomination per unit of at least EUR 50 000;

(c) the format used and the information required in prospectuses relating to non-equity securities, including warrants in any form, issued under an offering programme;

(d) the format used and the information required in prospectuses relating to non-equity securities, in so far as these securities are not subordinated, convertible, exchangeable, subject to subscription or acquisition rights or linked to derivative instruments, issued in a continuous or repeated manner by entities authorised or regulated to operate in the financial markets within the European Economic Area;

(e) the various activities and size of the issuer, in particular SMEs. For such companies the information shall be adapted to their size and, where appropriate, to their shorter track record;

(f) if applicable, the public nature of the issuer.

3.    The implementing measures referred to in paragraph 1 shall be based on the standards in the field of financial and non-financial information set out by international securities commission organisations, and in particular by IOSCO and on the indicative Annexes to this Directive.

### Article 8

### Omission of information

1.    Member States shall ensure that where the final offer price and amount of securities which will be offered to the public cannot be included in the prospectus:

(a) the criteria, and/or the conditions in accordance with which the above elements will be determined or, in the case of price, the maximum price, are disclosed in the prospectus; or

(b) the acceptances of the purchase or subscription of securities may be withdrawn for not less than two working days after the final offer price and amount of securities which will be offered to the public have been filed.

The final offer price and amount of securities shall be filed with the competent authority of the home Member State and published in accordance with the arrangements provided for in Article 14(2).

2.    The competent authority of the home Member State may authorise the omission from the prospectus of certain information provided for in this Directive or in the implementing measures referred to in Article 7(1), if it considers that:

(a) disclosure of such information would be contrary to the public interest; or

(b) disclosure of such information would be seriously detrimental to the issuer, provided that the omission would not be likely to mislead the public with regard to facts and circumstances essential for an informed assessment of the issuer, offeror or guarantor, if any, and of the rights attached to the securities to which the prospectus relates; or

(c) such information is of minor importance only for a specific offer or admission to trading on a regulated market and is not such as will influence the assessment of the financial position and prospects of the issuer, offeror or guarantor, if any.

3.    Without prejudice to the adequate information of investors, where, exceptionally, certain information required by implementing measures referred to in Article 7(1) to be included in a prospectus is inappropriate to the issuer's sphere of activity or to the legal form of the issuer or to the securities to which the prospectus relates, the prospectus shall contain information equivalent to the required information. If there is no such information, this requirement shall not apply.

4.    In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission shall, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning paragraph 2.

31.12.2003    [EN]    Official Journal of the European Union    L 345/75

### Article 9

**Validity of a prospectus, base prospectus and registration document**

1.    A prospectus shall be valid for 12 months after its publication for offers to the public or admissions to trading on a regulated market, provided that the prospectus is completed by any supplements required pursuant to Article 16.

2.    In the case of an offering programme, the base prospectus, previously filed, shall be valid for a period of up to 12 months.

3.    In the case of non-equity securities referred to in Article 5(4)(b), the prospectus shall be valid until no more of the securities concerned are issued in a continuous or repeated manner.

4.    A registration document, as referred to in Article 5(3), previously filed, shall be valid for a period of up to 12 months provided that it has been updated in accordance with Article 10(1). The registration document accompanied by the securities note, updated if applicable in accordance with Article 12, and the summary note shall be considered to constitute a valid prospectus.

### Article 10

**Information**

1.    Issuers whose securities are admitted to trading on a regulated market shall at least annually provide a document that contains or refers to all information that they have published or made available to the public over the preceding 12 months in one or more Member States and in third countries in compliance with their obligations under Community and national laws and rules dealing with the regulation of securities, issuers of securities and securities markets. Issuers shall refer at least to the information required pursuant to company law directives, Directive 2001/34/EC and Regulation (EC) No 1606/2002 of the European Parliament and of the Council of 19 July 2002 on the application of international accounting standards (¹).

2.    The document shall be filed with the competent authority of the home Member State after the publication of the financial statement. Where the document refers to information, it shall be stated where the information can be obtained.

3.    The obligation set out in paragraph 1 shall not apply to issuers of non-equity securities whose denomination per unit amounts to at least EUR 50 000.

4.    In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission may, in accordance with the proce-

dure referred to in Article 24(2), adopt implementing measures concerning paragraph 1. These measures will relate only to the method of publication of the disclosure requirements mentioned in paragraph 1 and will not entail new disclosure requirements. The first set of implementing measures shall be adopted by 1 July 2004.

### Article 11

**Incorporation by reference**

1.    Member States shall allow information to be incorporated in the prospectus by reference to one or more previously or simultaneously published documents that have been approved by the competent authority of the home Member State or filed with it in accordance with this Directive, in particular pursuant to Article 10, or with Titles IV and V of Directive 2001/34/EC. This information shall be the latest available to the issuer. The summary shall not incorporate information by reference.

2.    When information is incorporated by reference, a cross-reference list must be provided in order to enable investors to identify easily specific items of information.

3.    In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission shall, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning the information to be incorporated by reference. The first set of implementing measures shall be adopted by 1 July 2004.

### Article 12

**Prospectuses consisting of separate documents**

1.    An issuer which already has a registration document approved by the competent authority shall be required to draw up only the securities note and the summary note when securities are offered to the public or admitted to trading on a regulated market.

2.    In this case, the securities note shall provide information that would normally be provided in the registration document if there has been a material change or recent development which could affect investors' assessments since the latest updated registration document or any supplement as provided for in Article 16 was approved. The securities and summary notes shall be subject to a separate approval.

3.    Where an issuer has only filed a registration document without approval, the entire documentation, including updated information, shall be subject to approval.

(¹) OJ L 243, 11.9.2002, p. 1.

L 345/76      EN      Official Journal of the European Union      31.12.2003

CHAPTER III

**ARRANGEMENTS FOR APPROVAL AND PUBLICATION OF
THE PROSPECTUS**

*Article 13*

**Approval of the prospectus**

1.   No prospectus shall be published until it has been approved by the competent authority of the home Member State.

2.   This competent authority shall notify the issuer, the offeror or the person asking for admission to trading on a regulated market, as the case may be, of its decision regarding the approval of the prospectus within 10 working days of the submission of the draft prospectus.

If the competent authority fails to give a decision on the prospectus within the time limits laid down in this paragraph and paragraph 3, this shall not be deemed to constitute approval of the application.

3.   The time limit referred to in paragraph 2 shall be extended to 20 working days if the public offer involves securities issued by an issuer which does not have any securities admitted to trading on a regulated market and who has not previously offered securities to the public.

4.   If the competent authority finds, on reasonable grounds, that the documents submitted to it are incomplete or that supplementary information is needed, the time limits referred to in paragraphs 2 and 3 shall apply only from the date on which such information is provided by the issuer, the offeror or the person asking for admission to trading on a regulated market.

In the case referred to in paragraph 2 the competent authority should notify the issuer if the documents are incomplete within 10 working days of the submission of the application.

5.   The competent authority of the home Member State may transfer the approval of a prospectus to the competent authority of another Member State, subject to the agreement of that authority. Furthermore, this transfer shall be notified to the issuer, the offeror or the person asking for admission to trading on a regulated market within three working days from the date of the decision taken by the competent authority of the home Member State. The time limit referred to in paragraph 2 shall apply from that date.

6.   This Directive shall not affect the competent authority's liability, which shall continue to be governed solely by national law.

Member States shall ensure that their national provisions on the liability of competent authorities apply only to approvals of prospectuses by their competent authority or authorities.

7.   In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission may, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning the conditions in accordance with which time limits may be adjusted.

*Article 14*

**Publication of the prospectus**

1.   Once approved, the prospectus shall be filed with the competent authority of the home Member State and shall be made available to the public by the issuer, offeror or person asking for admission to trading on a regulated market as soon as practicable and in any case, at a reasonable time in advance of, and at the latest at the beginning of, the offer to the public or the admission to trading of the securities involved. In addition, in the case of an initial public offer of a class of shares not already admitted to trading on a regulated market that is to be admitted to trading for the first time, the prospectus shall be available at least six working days before the end of the offer.

2.   The prospectus shall be deemed available to the public when published either:

(a) by insertion in one or more newspapers circulated throughout, or widely circulated in, the Member States in which the offer to the public is made or the admission to trading is sought; or

(b) in a printed form to be made available, free of charge, to the public at the offices of the market on which the securities are being admitted to trading, or at the registered office of the issuer and at the offices of the financial intermediaries placing or selling the securities, including paying agents; or

(c) in an electronic form on the issuer's website and, if applicable, on the website of the financial intermediaries placing or selling the securities, including paying agents; or

(d) in an electronic form on the website of the regulated market where the admission to trading is sought; or

(e) in electronic form on the website of the competent authority of the home Member State if the said authority has decided to offer this service.

A home Member State may require issuers which publish their prospectus in accordance with (a) or (b) also to publish their prospectus in an electronic form in accordance with (c).

3.   In addition, a home Member State may require publication of a notice stating how the prospectus has been made available and where it can be obtained by the public.

31.12.2003    EN    Official Journal of the European Union    L 345/77

4.    The competent authority of the home Member State shall publish on its website over a period of 12 months, at its choice, all the prospectuses approved, or at least the list of prospectuses approved in accordance with Article 13, including, if applicable, a hyperlink to the prospectus published on the website of the issuer, or on the website of the regulated market.

5.    In the case of a prospectus comprising several documents and/or incorporating information by reference, the documents and information making up the prospectus may be published and circulated separately provided that the said documents are made available, free of charge, to the public, in accordance with the arrangements established in paragraph 2. Each document shall indicate where the other constituent documents of the full prospectus may be obtained.

6.    The text and the format of the prospectus, and/or the supplements to the prospectus, published or made available to the public, shall at all times be identical to the original version approved by the competent authority of the home Member State.

7.    Where the prospectus is made available by publication in electronic form, a paper copy must nevertheless be delivered to the investor, upon his request and free of charge, by the issuer, the offeror, the person asking for admission to trading or the financial intermediaries placing or selling the securities.

8.    In order to take account of technical developments on financial markets and to ensure uniform application of the Directive, the Commission shall, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning paragraphs 1, 2, 3 and 4. The first set of implementing measures shall be adopted by 1 July 2004.

### Article 15

### Advertisements

1.    Any type of advertisements relating either to an offer to the public of securities or to an admission to trading on a regulated market shall observe the principles contained in paragraphs 2 to 5. Paragraphs 2 to 4 shall apply only to cases where the issuer, the offeror or the person applying for admission to trading is covered by the obligation to draw up a prospectus.

2.    Advertisements shall state that a prospectus has been or will be published and indicate where investors are or will be able to obtain it.

3.    Advertisements shall be clearly recognisable as such. The information contained in an advertisement shall not be inaccurate, or misleading. This information shall also be consistent with the information contained in the prospectus, if already published, or with the information required to be in the prospectus, if the prospectus is published afterwards.

4.    In any case, all information concerning the offer to the public or the admission to trading on a regulated market disclosed in an oral or written form, even if not for advertising purposes, shall be consistent with that contained in the prospectus.

5.    When according to this Directive no prospectus is required, material information provided by an issuer or an offeror and addressed to qualified investors or special categories of investors, including information disclosed in the context of meetings relating to offers of securities, shall be disclosed to all qualified investors or special categories of investors to whom the offer is exclusively addressed. Where a prospectus is required to be published, such information shall be included in the prospectus or in a supplement to the prospectus in accordance with Article 16(1).

6.    The competent authority of the home Member State shall have the power to exercise control over the compliance of advertising activity, relating to a public offer of securities or an admission to trading on a regulated market, with the principles referred to in paragraphs 2 to 5.

7.    In order to take account of technical developments on financial markets and to ensure uniform application of this Directive, the Commission shall, in accordance with the procedure referred to in Article 24(2), adopt implementing measures concerning the dissemination of advertisements announcing the intention to offer securities to the public or the admission to trading on a regulated market, in particular before the prospectus has been made available to the public or before the opening of the subscription, and concerning paragraph 4. The first set of implementing measures shall be adopted by the Commission by 1 July 2004.

### Article 16

### Supplements to the prospectus

1.    Every significant new factor, material mistake or inaccuracy relating to the information included in the prospectus which is capable of affecting the assessment of the securities and which arises or is noted between the time when the prospectus is approved and the final closing of the offer to the public or, as the case may be, the time when trading on a regulated market begins, shall be mentioned in a supplement to the prospectus. Such a supplement shall be approved in the same way in a maximum of seven working days and published in accordance with at least the same arrangements as were applied when the original prospectus was published. The summary, and any translations thereof, shall also be supplemented, if necessary to take into account the new information included in the supplement.

2.    Investors who have already agreed to purchase or subscribe for the securities before the supplement is published shall have the right, exercisable within a time limit which shall not be shorter than two working days after the publication of the supplement, to withdraw their acceptances.

L 345/78    [EN]    Official Journal of the European Union    31.12.2003

CHAPTER IV

CROSS-BORDER OFFERS AND ADMISSION TO TRADING

*Article 17*

**Community scope of approvals of prospectuses**

1.    Without prejudice to Article 23, where an offer to the public or admission to trading on a regulated market is provided for in one or more Member States, or in a Member State other than the home Member State, the prospectus approved by the home Member State and any supplements thereto shall be valid for the public offer or the admission to trading in any number of host Member States, provided that the competent authority of each host Member State is notified in accordance with Article 18. Competent authorities of host Member States shall not undertake any approval or administrative procedures relating to prospectuses.

2.    If there are significant new factors, material mistakes or inaccuracies, as referred to in Article 16, arising since the approval of the prospectus, the competent authority of the home Member State shall require the publication of a supplement to be approved as provided for in Article 13(1). The competent authority of the host Member State may draw the attention of the competent authority of the home Member State to the need for any new information.

*Article 18*

**Notification**

1.    The competent authority of the home Member State shall, at the request of the issuer or the person responsible for drawing up the prospectus and within three working days following that request or, if the request is submitted together with the draft prospectus, within one working day after the approval of the prospectus provide the competent authority of the host Member State with a certificate of approval attesting that the prospectus has been drawn up in accordance with this Directive and with a copy of the said prospectus. If applicable, this notification shall be accompanied by a translation of the summary produced under the responsibility of the issuer or person responsible for drawing up the prospectus. The same procedure shall be followed for any supplement to the prospectus.

2.    The application of the provisions of Article 8(2) and (3) shall be stated in the certificate, as well as its justification.

CHAPTER V

USE OF LANGUAGES AND ISSUERS INCORPORATED IN THIRD COUNTRIES

*Article 19*

**Use of languages**

1.    Where an offer to the public is made or admission to trading on a regulated market is sought only in the home Member State, the prospectus shall be drawn up in a language accepted by the competent authority of the home Member State.

2.    Where an offer to the public is made or admission to trading on a regulated market is sought in one or more Member States excluding the home Member State, the prospectus shall be drawn up either in a language accepted by the competent authorities of those Member States or in a language customary in the sphere of international finance, at the choice of the issuer, offeror or person asking for admission, as the case may be. The competent authority of each host Member State may only require that the summary be translated into its official language(s).

For the purpose of the scrutiny by the competent authority of the home Member State, the prospectus shall be drawn up either in a language accepted by this authority or in a language customary in the sphere of international finance, at the choice of the issuer, offeror or person asking for admission to trading, as the case may be.

3.    Where an offer to the public is made or admission to trading on a regulated market is sought in more than one Member State including the home Member State, the prospectus shall be drawn up in a language accepted by the competent authority of the home Member State and shall also be made available either in a language accepted by the competent authorities of each host Member State or in a language customary in the sphere of international finance, at the choice of the issuer, offeror, or person asking for admission to trading, as the case may be. The competent authority of each host Member State may only require that the summary referred to in Article 5(2) be translated into its official language(s).

4.    Where admission to trading on a regulated market of non-equity securities whose denomination per unit amounts to at least EUR 50 000 is sought in one or more Member States, the prospectus shall be drawn up either in a language accepted by the competent authorities of the home and host Member States or in a language customary in the sphere of international finance, at the choice of the issuer, offeror or person asking for admission to trading, as the case may be. Member States may choose to require in their national legislation that a summary be drawn up in their official language(s).

*Article 20*

**Issuers incorporated in third countries**

1.    The competent authority of the home Member State of issuers having their registered office in a third country may approve a prospectus for an offer to the public or for admission to trading on a regulated market, drawn up in accordance with the legislation of a third country, provided that:

(a) the prospectus has been drawn up in accordance with international standards set by international securities commission organisations, including the IOSCO disclosure standards;

31.12.2003    [EN]    Official Journal of the European Union    L 345/79

(b) the information requirements, including information of a financial nature, are equivalent to the requirements under this Directive.

2.    In the case of an offer to the public or admission to trading on a regulated market of securities, issued by an issuer incorporated in a third country, in a Member State other than the home Member State, the requirements set out in Articles 17, 18 and 19 shall apply.

3.    In order to ensure uniform application of this Directive, the Commission may adopt implementing measures in accordance with the procedure referred to in Article 24(2), stating that a third country ensures the equivalence of prospectuses drawn up in that country with this Directive, by reason of its national law or of practices or procedures based on international standards set by international organisations, including the IOSCO disclosure standards.

CHAPTER VI

COMPETENT AUTHORITIES

Article 21

Powers

1.    Each Member State shall designate a central competent administrative authority responsible for carrying out the obligations provided for in this Directive and for ensuring that the provisions adopted pursuant to this Directive are applied.

However, a Member State may, if so required by national law, designate other administrative authorities to apply Chapter III.

These competent authorities shall be completely independent from all market participants.

If an offer of securities is made to the public or admission to trading on a regulated market is sought in a Member State other than the home Member State, only the central competent administrative authority designated by each Member State shall be entitled to approve the prospectus.

2.    Member States may allow their competent authority or authorities to delegate tasks. Except for delegation of the publication on the Internet of approved prospectuses and the filing of prospectuses as mentioned in Article 14, any delegation of tasks relating to the obligations provided for in this Directive and in its implementing measures shall be reviewed, in accordance with Article 31 by 31 December 2008, and shall end on 31 December 2011. Any delegation of tasks to entities other than the authorities referred to in paragraph 1 shall be made in a specific manner stating the tasks to be undertaken and the conditions under which they are to be carried out.

These conditions shall include a clause obliging the entity in question to act and be organised in such a manner as to avoid conflict of interest and so that information obtained from carrying out the delegated tasks is not used unfairly or to

prevent competition. In any case, the final responsibility for supervising compliance with this Directive and with its implementing measures and for approving the prospectus shall lie with the competent authority or authorities designated in accordance with paragraph 1.

Member States shall inform the Commission and the competent authorities of other Member States of any arrangements entered into with regard to delegation of tasks, including the precise conditions regulating such delegation.

3.    Each competent authority shall have all the powers necessary for the performance of its functions. A competent authority that has received an application for approving a prospectus shall be empowered at least to:

(a) require issuers, offerors or persons asking for admission to trading on a regulated market to include in the prospectus supplementary information, if necessary for investor protection;

(b) require issuers, offerors or persons asking for admission to trading on a regulated market, and the persons that control them or are controlled by them, to provide information and documents;

(c) require auditors and managers of the issuer, offeror or person asking for admission to trading on a regulated market, as well as financial intermediaries commissioned to carry out the offer to the public or ask for admission to trading, to provide information;

(d) suspend a public offer or admission to trading for a maximum of 10 consecutive working days on any single occasion if it has reasonable grounds for suspecting that the provisions of this Directive have been infringed;

(e) prohibit or suspend advertisements for a maximum of 10 consecutive working days on any single occasion if it has reasonable grounds for believing that the provisions of this Directive have been infringed;

(f) prohibit a public offer if it finds that the provisions of this Directive have been infringed or if it has reasonable grounds for suspecting that they would be infringed;

(g) suspend or ask the relevant regulated markets to suspend trading on a regulated market for a maximum of 10 consecutive working days on any single occasion if it has reasonable grounds for believing that the provisions of this Directive have been infringed;

(h) prohibit trading on a regulated market if it finds that the provisions of this Directive have been infringed;

(i) make public the fact that an issuer is failing to comply with its obligations.

Where necessary under national law, the competent authority may ask the relevant judicial authority to decide on the use of the powers referred to in points (d) to (h) above.

L 345/80          EN          Official Journal of the European Union          31.12.2003

4.    Each competent authority shall also, once the securities have been admitted to trading on a regulated market, be empowered to:

(a) require the issuer to disclose all material information which may have an effect on the assessment of the securities admitted to trading on regulated markets in order to ensure investor protection or the smooth operation of the market;

(b) suspend or ask the relevant regulated market to suspend the securities from trading if, in its opinion, the issuer's situation is such that trading would be detrimental to investors' interests;

(c) ensure that issuers whose securities are traded on regulated markets comply with the obligations provided for in Articles 102 and 103 of Directive 2001/34/EC and that equivalent information is provided to investors and equivalent treatment is granted by the issuer to all securities holders who are in the same position, in all Member States where the offer to the public is made or the securities are admitted to trading;

(d) carry out on-site inspections in its territory in accordance with national law, in order to verify compliance with the provisions of this Directive and its implementing measures. Where necessary under national law, the competent authority or authorities may use this power by applying to the relevant judicial authority and/or in cooperation with other authorities.

5.    Paragraphs 1 to 4 shall be without prejudice to the possibility for a Member State to make separate legal and administrative arrangements for overseas European territories for whose external relations that Member State is responsible.

## Article 22

**Professional secrecy and cooperation between authorities**

1.    The obligation of professional secrecy shall apply to all persons who work or have worked for the competent authority and for entities to which competent authorities may have delegated certain tasks. Information covered by professional secrecy may not be disclosed to any other person or authority except in accordance with provisions laid down by law.

2.    Competent authorities of Member States shall cooperate with each other whenever necessary for the purpose of carrying out their duties and making use of their powers. Competent authorities shall render assistance to competent authorities of other Member States. In particular, they shall exchange information and cooperate when an issuer has more than one home competent authority because of its various classes of securities, or where the approval of a prospectus has been transferred to the competent authority of another Member State pursuant to Article 13(5). They shall also closely cooperate when requiring suspension or prohibition of trading for securities traded in various Member States in order to ensure a level playing field between trading venues and protection of investors. Where

appropriate, the competent authority of the host Member State may request the assistance of the competent authority of the home Member State from the stage at which the case is scrutinised, in particular as regards a new type or rare forms of securities. The competent authority of the home Member State may ask for information from the competent authority of the host Member State on any items specific to the relevant market.

Without prejudice to Article 21, the competent authorities of Member States may consult with operators of regulated markets as necessary and, in particular, when deciding to suspend, or to ask a regulated market to suspend or prohibit trading.

3.    Paragraph 1 shall not prevent the competent authorities from exchanging confidential information. Information thus exchanged shall be covered by the obligation of professional secrecy, to which the persons employed or formerly employed by the competent authorities receiving the information are subject.

## Article 23

**Precautionary measures**

1.    Where the competent authority of the host Member State finds that irregularities have been committed by the issuer or by the financial institutions in charge of the public offer or that breaches have been committed of the obligations attaching to the issuer by reason of the fact that the securities are admitted to trading on a regulated market, it shall refer these findings to the competent authority of the home Member State.

2.    If, despite the measures taken by the competent authority of the home Member State or because such measures prove inadequate, the issuer or the financial institution in charge of the public offer persists in breaching the relevant legal or regulatory provisions, the competent authority of the host Member State, after informing the competent authority of the home Member State, shall take all the appropriate measures in order to protect investors. The Commission shall be informed of such measures at the earliest opportunity.

## CHAPTER VII

### IMPLEMENTING MEASURES

## Article 24

**Committee procedure**

1.    The Commission shall be assisted by the European Securities Committee, instituted by Decision 2001/528/EC (hereinafter referred to as 'the Committee').

2.    Where reference is made to this paragraph, Articles 5 and 7 of Decision 1999/468/EC shall apply, having regard to the provisions of Article 8 thereof and provided that the implementing measures adopted in accordance with this procedure do not modify the essential provisions of this Directive.

31.12.2003    [EN]    Official Journal of the European Union    L 345/81

The period laid down in Article 5(6) of Decision 1999/468/EC shall be set at three months.

3.    The Committee shall adopt its rules of procedure.

4.    Without prejudice to the implementing measures already adopted, on the expiry of a four-year period following the entry into force of this Directive the application of its provisions providing for the adoption of technical rules and decisions in accordance with the procedure referred to in paragraph 2 shall be suspended. On a proposal from the Commission, the European Parliament and the Council may renew the provisions concerned in accordance with the procedure laid down in Article 251 of the Treaty and, to that end, shall review them prior to the expiry of the four-year period.

### Article 25

### Sanctions

1.    Without prejudice to the right of Member States to impose criminal sanctions and without prejudice to their civil liability regime, Member States shall ensure, in conformity with their national law, that the appropriate administrative measures can be taken or administrative sanctions be imposed against the persons responsible, where the provisions adopted in the implementation of this Directive have not been complied with. Member States shall ensure that these measures are effective, proportionate and dissuasive.

2.    Member States shall provide that the competent authority may disclose to the public every measure or sanction that has been imposed for infringement of the provisions adopted pursuant to this Directive, unless the disclosure would seriously jeopardise the financial markets or cause disproportionate damage to the parties involved.

### Article 26

### Right of appeal

Member States shall ensure that decisions taken pursuant to laws, regulations and administrative provisions adopted in accordance with this Directive are subject to the right to appeal to the courts.

### CHAPTER VIII

### TRANSITIONAL AND FINAL PROVISIONS

### Article 27

### Amendments

With effect from the date set out in Article 29, Directive 2001/34/EC is hereby amended as follows:

1. Articles 3, 20 to 41, 98 to 101, 104 and 108(2)(c)(ii) shall be deleted;

2. in Article 107(3), the first subparagraph shall be deleted;

3. in Article 108(2)(a), the words 'the conditions of establishment, the control and circulation of listing particulars to be published for admission' shall be deleted;

4. Annex I shall be deleted.

### Article 28

### Repeal

With effect from the date indicated in Article 29, Directive 89/298/EEC shall be repealed. References to the repealed Directive shall be construed as references to this Directive.

### Article 29

### Transposition

Member States shall bring into force the laws, regulations and administrative provisions necessary to comply with this Directive not later than 1 July 2005. They shall forthwith inform the Commission thereof. When Member States adopt those measures they shall contain a reference to this Directive or shall be accompanied by such a reference on the occasion of their official publication. The methods for making such reference shall be laid down by Member States.

### Article 30

### Transitional provision

1.    Issuers which are incorporated in a third country and whose securities have already been admitted to trading on a regulated market shall choose their competent authority in accordance with Article 2(1)(m)(iii) and notify their decision to the competent authority of their chosen home Member State by 31 December 2005.

2.    By way of derogation from Article 3, Member States which have used the exemption in Article 5(a) of Directive 89/298/EEC may continue to allow credit institutions or other financial institutions equivalent to credit institutions which are not covered by Article 1(2)(j) of this Directive to offer debt securities or other transferable securities equivalent to debt securities issued in a continuous or repeated manner within their territory for five years following the date of entry into force of this Directive.

3.    By way of derogation from Article 29, the Federal Republic of Germany shall comply with Article 21(1) by 31 December 2008.

### Article 31

### Review

Five years after the date of entry into force of this Directive, the Commission shall make an assessment of the application of this Directive and present a report to the European Parliament and the Council, accompanied where appropriate by proposals for its review.

L 345/82    [EN]    Official Journal of the European Union    31.12.2003

*Article 32*

**Entry into force**

This Directive shall enter into force on the day of its publication in the *Official Journal of the European Union*.

*Article 33*

**Addressees**

This Directive is addressed to the Member States.


Done at Brussels, 4 November 2003.


| *For the European Parliament* | *For the Council* |
|---|---|
| *The President* | *The President* |
| P. COX | G. ALEMANNO |

———

31.12.2003          EN                    Official Journal of the European Union                          L 345/83

*ANNEX I*

**PROSPECTUS**

I.   **Summary**

The summary shall provide in a few pages the most important information included in the prospectus, covering at least the following items:

A. identity of directors, senior management, advisers and auditors

B. offer statistics and expected timetable

C. key information concerning selected financial data; capitalisation and indebtedness; reasons for the offer and use of proceeds; risk factors

D. information concerning the issuer
 — history and development of the issuer
 — business overview

E. operating and financial review and prospects
 — research and development, patents and licences, etc.
 — trends

F. directors, senior management and employees

G. major shareholders and related-party transactions

H. financial information
 — consolidated statement and other financial information
 — significant changes

I. details of the offer and admission to trading
 — offer and admission to trading
 — plan for distribution
 — markets
 — selling shareholders
 — dilution (equity securities only)
 — expenses of the issue

J. additional information
 — share capital
 — memorandum and articles of association
 — documents on display

II.   **Identity of directors, senior management, advisers and auditors**

The purpose is to identify the company representatives and other individuals involved in the company's offer or admission to trading; these are the persons responsible for drawing up the prospectus as required by Article 5 of the Directive and those responsible for auditing the financial statements.

III.   **Offer statistics and expected timetable**

The purpose is to provide key information regarding the conduct of any offer and the identification of important dates relating to that offer.

A. Offer statistics

B. Method and expected timetable

IV. **Key information**

The purpose is to summarise key information about the company's financial condition, capitalisation and risk factors. If the financial statements included in the document are restated to reflect material changes in the company's group structure or accounting policies, the selected financial data must also be restated.

   A. Selected financial data

   B. Capitalisation and indebtedness

   C. Reasons for the offer and use of proceeds

   D. Risk factors

V. **Information on the company**

The purpose is to provide information about the company's business operations, the products it makes or the services it provides, and the factors which affect the business. It is also intended to provide information regarding the adequacy and suitability of the company's properties, plant and equipment, as well as its plans for future capacity increases or decreases.

   A. History and development of the company

   B. Business overview

   C. Organisational structure

   D. Property, plant and equipment

VI. **Operating and financial review and prospects**

The purpose is to provide the management's explanation of factors that have affected the company's financial condition and results of operations for the historical periods covered by the financial statements, and management's assessment of factors and trends which are expected to have a material effect on the company's financial condition and results of operations in future periods.

   A. Operating results

   B. Liquidity and capital resources

   C. Research and development, patents and licences, etc.

   D. Trends

VII. **Directors, senior management and employees**

The purpose is to provide information concerning the company's directors and managers that will allow investors to assess their experience, qualifications and levels of remuneration, as well as their relationship with the company.

   A. Directors and senior management

   B. Remuneration

   C. Board practices

   D. Employees

   E. Share ownership

VIII. **Major shareholders and related-party transactions**

The purpose is to provide information regarding the major shareholders and others that may control or have an influence on the company. It also provides information regarding transactions the company has entered into with persons affiliated with the company and whether the terms of such transactions are fair to the company.

   A. Major shareholders

   B. Related-party transactions

   C. Interests of experts and advisers

IX. **Financial information**

The purpose is to specify which financial statements must be included in the document, as well as the periods to be covered, the age of the financial statements and other information of a financial nature. The accounting and auditing principles that will be accepted for use in preparation and audit of the financial statements will be determined in accordance with international accounting and auditing standards.

A. Consolidated statements and other financial information

B. Significant changes

X. **Details of the offer and admission to trading details**

The purpose is to provide information regarding the offer and the admission to trading of securities, the plan for distribution of the securities and related matters.

A. Offer and admission to trading

B. Plan for distribution

C. Markets

D. Holders of securities who are selling

E. Dilution (for equity securities only)

F. Expenses of the issue

XI. **Additional information**

The purpose is to provide information, most of which is of a statutory nature, that is not covered elsewhere in the prospectus.

A. Share capital

B. Memorandum and articles of association

C. Material contracts

D. Exchange controls

E. Taxation

F. Dividends and paying agents

G. Statement by experts

H. Documents on display

I. Subsidiary information

L 345/86    EN    Official Journal of the European Union    31.12.2003

*ANNEX II*

**REGISTRATION DOCUMENT**

I.    **Identity of directors, senior management, advisers and auditors**

The purpose is to identify the company representatives and other individuals involved in the company's offer or admission to trading; these are the persons responsible for drawing up the prospectus and those responsible for auditing the financial statements.

II.    **Key information about the issuer**

The purpose is to summarise key information about the company's financial condition, capitalisation and risk factors. If the financial statements included in the document are restated to reflect material changes in the company's group structure or accounting policies, the selected financial data must also be restated.

A.  Selected financial data

B.  Capitalisation and indebtedness

C.  Risk factors

III.    **Information on the company**

The purpose is to provide information about the company's business operations, the products it makes or the services it provides and the factors which affect the business. It is also intended to provide information regarding the adequacy and suitability of the company's properties, plants and equipment, as well as its plans for future capacity increases or decreases.

A.  History and development of the company

B.  Business overview

C.  Organisational structure

D.  Property, plants and equipment

IV.    **Operating and financial review and prospects**

The purpose is to provide the management's explanation of factors that have affected the company's financial condition and results of operations for the historical periods covered by the financial statements, and management's assessment of factors and trends which are expected to have a material effect on the company's financial condition and results of operations in future periods.

A.  Operating results

B.  Liquidity and capital resources

C.  Research and development, patents and licences, etc.

D.  Trends

V.    **Directors, senior management and employees**

The purpose is to provide information concerning the company's directors and managers that will allow investors to assess their experience, qualifications and levels of remuneration, as well as their relationship with the company.

A.  Directors and senior management

B.  Remuneration

C.  Board practices

D.  Employees

E.  Share ownership

VI. **Major shareholders and related-party transactions**

The purpose is to provide information regarding the major shareholders and others that may control or have an influence on the company. It also provides information regarding transactions the company has entered into with persons affiliated with the company and whether the terms of such transactions are fair to the company.

A. Major shareholders

B. Related-party transactions

C. Interests of experts and advisers

VII. **Financial information**

The purpose is to specify which financial statements must be included in the document, as well as the periods to be covered, the age of the financial statements and other information of a financial nature. The accounting and auditing principles that will be accepted for use in preparation and audit of the financial statements will be determined in accordance with international accounting and auditing standards.

A. Consolidated statements and other financial information

B. Significant changes

VIII. **Additional information**

The purpose is to provide information, most of which is of a statutory nature, that is not covered elsewhere in the prospectus.

A. Share capital

B. Memorandum and articles of association

C. Material contracts

D. Statement by experts

E. Documents on display

F. Subsidiary information

L 345/88          EN          Official Journal of the European Union          31.12.2003

*ANNEX III*

**SECURITIES NOTE**

I.    **Identity of directors, senior management, advisers and auditors**

The purpose is to identify the company representatives and other individuals involved in the company's offer or admission to trading; these are the persons responsible for drawing up the prospectus and those responsible for auditing the financial statements.

II.   **Offer statistics and expected timetable**

The purpose is to provide key information regarding the conduct of any offer and the identification of important dates relating to that offer.

A.  Offer statistics

B.  Method and expected timetable

III.  **Key information about the issuer**

The purpose is to summarise key information about the company's financial condition, capitalisation and risk factors. If the financial statements included in the document are restated to reflect material changes in the company's group structure or accounting policies, the selected financial data must also be restated.

A.  Capitalisation and indebtedness

B.  Reasons for the offer and use of proceeds

C.  Risk factors

IV.  **Interests of experts**

The purpose is to provide information regarding transactions the company has entered into with experts or advisers employed on a contingent basis.

V.   **Details of the offer and admission to trading**

The purpose is to provide information regarding the offer and the admission to trading of securities, the plan for distribution of the securities and related matters.

A.  Offer and admission to trading

B.  Plan for distribution

C.  Markets

D.  Selling securities holders

E.  Dilution (for equity securities only)

F.  Expenses of the issue

VI.  **Additional information**

The purpose is to provide information, most of which is of a statutory nature, that is not covered elsewhere in the prospectus.

A.  Exchange controls

B.  Taxation

C.  Dividends and paying agents

D.  Statement by experts

E.  Documents on display

———

31.12.2003      EN      Official Journal of the European Union      L 345/89

*ANNEX IV*

**SUMMARY NOTE**

The summary note shall provide in a few pages the most important information included in the prospectus, covering at least the following items:

— identity of directors, senior management, advisers and auditors

— offer statistics and expected timetable

— key information concerning selected financial data; capitalisation and indebtedness; reasons for the offer and use of proceeds; risk factors

— information concerning the issuer
  --- history and development of the issuer
  — business overview

---- operating and financial review and prospects
  — research and development, patents and licences, etc.
  — trends

— directors, senior management and employees

— major shareholders and related-party transactions

--- financial information
  — consolidated statement and other financial information
  — significant changes

— details on the offer and admission to trading
  — offer and admission to trading
  — plan for distribution
  --- markets
  — selling shareholders
  — dilution (for equity securities only)
  — expenses of the issue

---- additional information
  — share capital
  — memorandum and articles of incorporation
  --- documents available for inspection

**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

# EXHIBIT E



**Companies House**

### Company Details

Name & Registered Office:
**LEHMAN BROTHERS UK CAPITAL FUNDING IV LP**
25 BANK STREET
LONDON
E14 5LE
**Company No. LP011818**

**Status**: Active
**Date of registration**: 03/01/2007

**Country of Origin**: United Kingdom
**Company Type**: Limited Partnership
**Nature of Business (SIC)**:
None Supplied
**Accounting Reference Date**:
**Last Accounts Made Up To**:  (NO ACCOUNTS FILED)
**Next Accounts Due**:
**Last Return Made Up To**:
**Next Return Due**:
Previous Names:
No previous name information has been recorded over the last 20 years.
**UK Establishment Details**
There are no UK Establishments associated with this company.
**Oversea Company Info**
There are no Oversea Details associated with this company.

**RESPONSE OF MRS. S.A.B. VAN ROOY
TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
<u>TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM</u>**

# EXHIBIT F



**Companies House**

Skea Van Rooy

Schoonouweweg 24 2821 Nx
Stolwejk
Netherlands

2821NX

**Companies House**
**Crown Way**
**Cardiff**
**CF14 3UZ**
Tel: +44 (0)303 1234 500

## PAID INVOICE

**Account No:**
**Invoice Number:**    PS640327
**Order Date:**    07/11/2011 15:42:11
**Telephone No:**    0031182343443
**Fax No:**    0031182343443
**E-mail:**    sabvanrooy@hotmail.com
**Reference:**

Statutory products and services are exempt from VAT

| Company No. | Company Name | Product Description | Year | Qty | Delivery | Price |
|---|---|---|---|---|---|---|
| LP011818 | LEHMAN BROTHERS UK CAPITAL FUNDING IV LP | Limited Partnership | 03/01/2007 | 1 | Fax | 3.00 |
| 03227439 | THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED | ACCOUNTS OF DORMANT COMPANY MADE UP TO 31/12/10 [AA] | 18/08/2011 | 1 | Email | 3.00 |

Order Total: £6

Thank you for your payment. For enquiries about this order please telephone +44 (0)303 1234 500 or fax 029 2038 0517, quoting the above Invoice Number.

COMPANY INFORMATION SUPPLIED BY COMPANIES HOUSE
Companies House is a registry of corporate information. We carry out basic checks to make sure that documents have been fully completed and signed, but we do not have the statutory power or capability to verify the accuracy of the information that corporate entities send to us. We accept all information that such entities deliver to us in good faith and place it on the public record. The fact that the information has been placed on the public record should not be taken to indicate that Companies House has verified and validated it in any way.

*I*

CHFP025

*LP* 11818
(Registration fee £2)

$2 cash.



## LIMITED PARTNERSHIPS ACT 1907

Application for Registration of a Limited Partnership and Statement of particulars
and of the amounts contributed (in cash or otherwise) by the Limited Partners

(Pursuant to section 8 of the Limited Partnerships Act 1907)

FEE
£2
COMPANIES HOUSE

Name of firm or partnership  Lehman Brothers UK Capital Funding IV LP

We, the undersigned, being the partners of the above-named firm, hereby apply for registration as a limited partnership and for that
purpose supply the following particulars:

The general nature of the business
Finance and Financial Services

| The principal place of business | The term, if any, for which the partnership is entered into |
|---|---|
| 25 Bank Street, London E14 5LE | N/A  Please see below |

If no definite term, the conditions of existence of the partnership
As set out in a partnership agreement (the "Partnership Agreement")
dated 3rd January, 2007, governing the relationship between the parties

Date of commencement    3rd        January, 2007

The partnership is limited and the full name and address of each of the partners are as follows:

General partners
LB GP No. 1 Ltd
25 Bank Street
London E14 5LE

| Limited partners | Amounts Contributed (I) |
|---|---|
| LB Investment Holdings Ltd<br>25 Bank Street<br>London E14 5LE | LB Investment Holdings Ltd:<br>Euro 12,500,000 paid in cash |
| TOTAL | Euro 12,500,000 |

Signatures of all the partners

(LB GP No1 LTD
25 BANK STREET
LONDON E14 5LE)

LB Investment Holdings Ltd        Date 3rd January, 2007

Presented by:    Tom Grant, Allen & Overy LLP,
London E1 6AO

Presentor's reference: 15616-01331/ICM3806678.1

Notes
(I)    State amount contributed by each limited partner, and whether paid in cash, or how otherwise.

Laserform International Ltd 1999

WEDNESDAY


*AKZ96LWP*

# FILE COPY



# CERTIFICATE OF REGISTRATION

# OF A LIMITED PARTNERSHIP

No. LP11818

I hereby certify that the firm

LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

having lodged a statement of particulars pursuant to section 8 of the Limited Partnerships Act, 1907, is this day registered as a limited partnership.

Given at Companies House, Cardiff, the 3rd January 2007



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES



*Companies House*
—— *for the record* ——

# Limited Partnership Act 1907





Statement specifying the nature of a change in the Limited Partnership and Statement of increase in the amount contributed (in cash or otherwise) by Limited Partners.

(Pursuant to section 9 of the Limited Partnerships Act 1907 and section 47 of the Finance Act 1973)

Registration No. LP11818

Name of firm or partnership LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

Notice is hereby given that the changes specified below have occurred in this limited partnership:

(Please see notes overleaf)

| | | | |
|---|---|---|---|
| a. | The firms name | | |
| | | Previous Name | New name |
| b. | General nature of the business | | |
| | | Business previously carried on | Business now carried on |
| c. | Principal place of business | | |
| | | Previous place of business | New place of business |

d.    Change in the partners or the name of a partner (see Note 1)
THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED (REGISTERED NUMBER 03227439) WHOSE REGISTERED ADDRESS IS AT ONE CANADA SQUARE, LONDON E14 5AL HAS BECOME A LIMITED PARTNER IN THE PARTNERSHIP

| | | | |
|---|---|---|---|
| e. | Term of character of the partnership (see Note 2) | | |
| | | Previous term | New term |

f.    Change in the sum contributed by a limited partner (see Note 3) (particulars of any increase in capital contributions must be provided at (h) overleaf).
THE CAPITAL CONTRIBUTION OF THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED IS EURO 200,000,000

g.    Change in the liability of any partner by reason of his becoming a limited instead of a general partner or vice versa.

MONDAY

*AXNEEMMU*

A04    29/01/2007    244

| h. | Statement of increase in capital contributions | |
|---|---|---|
| Name of Limited Partners | Increase or additional sum now contributed (if otherwise than in cash, that fact, with particulars, must be stated) | Total amount contributed (if otherwise than in cash, that fact, with particulars, must be stated) |
| CHASE NOMINEES LIMITED | EURO 25,000,000 PAID IN CASH | EURO 225,000,000 PAID IN CASH |
| | IN ACCORDANCE WITH THE | IN ACCORDANCE WITH THE PARTNERSHIP |
| | PARTNERSHIP AGREEMENT | AGREEMENT |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Signature of firms _J. McAULEY_          Date 24 March 2005

Presented by: R. KHIARA                    Presentor's reference: 15616-01143
           ALLEN & OVERY LLP, ONE NEW CHANGE,
           LONDON, EC4M 9QQ

**NOTES**

1.  Changes brought about by death, by transfer of interests, by increase in the number of partners, or by change of name of any partner, must be notified here.

2.  If there is, or was, no definite term, then state against 'previous term' the conditions under which the partnership was constituted and against any 'new term' the conditions under which it is now constituted.

3.  Any variation in the sum contributed by any limited partner must be stated at f. overleaf. A statement of any increase in the amount of the partnership capital, whether arising from increase of contributions, or from introduction of fresh partners must also be stated at h. above.

4.  Each change must be entered in the proper section a., b., c., d., e., f., g., or h., as the case may be. Provision is made in this form for notifying all the changes required by the Act to be notified, but it will frequently happen that only one item of change has to be notified. In any such case, the word 'Nil' should be inserted in the other sections.

5.  The statement must be signed at the end by the firm, and delivered for registration within seven days of the changes taking place.

**RESPONSE OF MRS. S.A.B. VAN ROOY
TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
<u>TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM</u>**

# EXHIBIT G



**Companies House**

### Company Details

Name & Registered Office:
**LB GP NO.1 LTD.**
25 BANK STREET
LONDON
E14 5LE
**Company No. 05355491**

**Status**: Dissolved 22/06/2010
**Date of Incorporation**: 07/02/2005

**Country of Origin**: United Kingdom
**Company Type**: Private Limited Company
**Nature of Business (SIC)**:
6512 - Other monetary intermediation
**Accounting Reference Date**: 30/11
**Last Accounts Made Up To**: 30/11/2006  (GROUP)
**Next Accounts Due**:
**Last Return Made Up To**: 07/02/2009
**Next Return Due**:
**Last Members List**: 07/02/2009
Previous Names:

| Date of change | Previous Name |
| --- | --- |
| 21/03/2005 | ALNERY NO. 2497 LIMITED |

**UK Establishment Details**
There are no UK Establishments associated with this company.
**Oversea Company Info**
There are no Oversea Details associated with this company.

**RESPONSE OF MRS. S.A.B. VAN ROOY
TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

# EXHIBIT H

http://wck2.companieshouse.gov.uk/08a104f14f92d1e2a92a469852ec3e10/wcprodorder?ft=1



Home  Bookmark site  Links

About us   Forms   Press Desk
Careers   Contact us

Login | My Account | My Download
| My Monitor | My Order

Order Information on 'LB GP NO.1 LTD.'

HELP  Use the tick boxes to select documents or reports from the lists below. Select the 'Add to Order' button to add to your shopping basket (up to £50 maximum order limit).

**Prices of documents or reports: £1.00 each.**

**Click here for information on minimum software requirements**

Documents selected will be delivered to your personal download area. Please read the ORDERING GUIDE for detailed instructions.

For company filing history please scroll down the page.

| Company Reports | Order |
|---|---|

indicates that this document contains the latest Statement of Capital

| Company Filing History | | Include Allotment of Shares | |
|---|---|---|---|
| Type | Date | Description | Order |
| GAZ2 | 22/06/2010 | STRUCK OFF AND DISSOLVED | ☐ |
| GAZ1 | 09/03/2010 | FIRST GAZETTE | ☐ |
| TM02 | 27/01/2010 | APPOINTMENT TERMINATED, SECRETARY EMILY UPTON | ☐ |
| 288c | 24/08/2009 | SECRETARY'S CHANGE OF PARTICULARS / EMILY UPTON / 27/07/2009 | ☐ |
| 363a | 18/05/2009 | RETURN MADE UP TO 07/02/09; FULL LIST OF MEMBERS | ☐ |
| 288b | 21/03/2009 | APPOINTMENT TERMINATED DIRECTOR ANTONY RUSH | ☐ |
| 288b | 21/03/2009 | APPOINTMENT TERMINATED DIRECTOR DAVID RUSHTON | ☐ |
| 288b | 29/10/2008 | APPOINTMENT TERMINATED DIRECTOR CARLO PELLERANI | ☐ |

| | | | |
|---|---|---|---|
| AA | 25/07/2008 | GROUP OF COMPANIES' ACCOUNTS MADE UP TO 30/11/06 | ☐ |
| 288a | 27/02/2008 | DIRECTOR APPOINTED CARLO PELLERANI | ☐ |
| 288b | 27/02/2008 | APPOINTMENT TERMINATED DIRECTOR PAOLO TONUCCI | ☐ |
| 363a | 20/02/2008 | RETURN MADE UP TO 07/02/08; FULL LIST OF MEMBERS | ☐ |
| 288b | 07/11/2007 | SECRETARY RESIGNED | ☐ |
| 288c | 24/09/2007 | DIRECTOR'S PARTICULARS CHANGED | ☐ |
| AA | 11/09/2007 | GROUP OF COMPANIES' ACCOUNTS MADE UP TO 30/11/05 | ☐ |
| 363a | 16/04/2007 | RETURN MADE UP TO 07/02/07; NO CHANGE OF MEMBERS | ☐ |
| 244 | 05/10/2006 | DELIVERY EXT'D 3 MTH 30/11/05 | ☐ |
| 363s | 07/03/2006 | RETURN MADE UP TO 07/02/06; FULL LIST OF MEMBERS | ☐ |
| 123 | 12/07/2005 | £ NC 10000/1000000 16/06/05 | ☐ |
| 288a | 12/07/2005 | NEW SECRETARY APPOINTED | ☐ |
| RES04 | 12/07/2005 | NC INC ALREADY ADJUSTED 16/06/05 | ☐ |
| ELRES | 06/06/2005 | S80A AUTH TO ALLOT SEC 16/05/05 | ☐ |
| 123 | 14/04/2005 | £ NC 100/10000 21/03/05 | ☐ |
| RES04 | 14/04/2005 | NC INC ALREADY ADJUSTED 21/03/05 | ☐ |
| MEM/AR TS | 05/04/2005 | MEMORANDUM OF ASSOCIATION ARTICLES OF ASSOCIATION | ☐ |
| 288a | 30/03/2005 | NEW DIRECTOR APPOINTED | ☐ |
| 288a | 30/03/2005 | NEW SECRETARY APPOINTED | ☐ |
| 288a | 30/03/2005 | NEW DIRECTOR APPOINTED | ☐ |
| 288b | 30/03/2005 | DIRECTOR RESIGNED | ☐ |
| 288a | 30/03/2005 | NEW DIRECTOR APPOINTED | ☐ |

| 225 | 30/03/2005 | ACC. REF. DATE SHORTENED FROM 28/02/06 TO 30/11/05 | ☐ |
| 288b | 30/03/2005 | SECRETARY RESIGNED;DIRECTOR RESIGNED | ☐ |
| 287 | 29/03/2005 | REGISTERED OFFICE CHANGED ON 29/03/05 FROM: G OFFICE CHANGED 29/03/05 9 CHEAPSIDE LONDON EC2V 6AD | ☐ |
| CERTNM | 21/03/2005 | COMPANY NAME CHANGED ALNERY NO. 2497 LIMITED CERTIFICATE ISSUED ON 21/03/05 | ☐ |
| NEWINC | 07/02/2005 | INCORPORATION DOCUMENTS CERTIFICATE OF INCORPORATION STATEMENT OF DIRECTORS & REGISTERED OFFICE DECLARATION OF COMPLIANCE MEMORANDUM OF ASSOCIATION ARTICLES OF ASSOCIATION | ☐ |

☞ ADD TO ORDER

SEARCH FOR ANOTHER COMPANY

**IMPORTANT INFORMATION**
Before ordering please ensure you have suitable software:



- Documents are provided as both multi page 'TIFF' images (to view a test image
  click HERE), and as PDF's (a viewer can be downloaded from the Forms
  Online screen).
- Reports are provided in 'RTF' format. To view a test report click HERE and ensure
  that you can both view and download the sample before ordering.

If you are having problems with either of the test documents please contact your Internet
Service Provider.

For more instructions read our...   ORDERING GUIDE

# Top

☎ Contact Centre : +44 (0)303 1234 500 (national call rate)   Minicom -
02920381245 08:30 to 18:00 (UK time) Mon-Fri   ✉ Email: enquiries@companies-
house.gov.uk

Privacy Statement  |  Acceptable use statement  |  Accessibility  |  Use of cookies  |  Information Rights
|  Code of Compliance  |  © Crown Copyright 2003




3

**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

# EXHIBIT I



*Companies House*
*— for the record —*

THE DIRECTORS
LB GP NO 1 LTD
25 BANK STREET LONDON
E14 5LE

If you need to contact us regarding
this notice, please quote reference

**DEF6 / 05355491**

Date  09/03/10

**COMPANIES ACT 2006**
**(Section 1000)**

The REGISTRAR OF COMPANIES gives NOTICE
that, unless cause is shown to the contrary, at the
expiration of 3 months from the above date the name of

**LB GP NO 1 LTD**

will be struck off the register and the company will be
dissolved

Companies House
Cardiff CF14 3UZ
Tel  02920381332
Fax  029 20 380900
DX  33050 Cardiff

# FILE COPY



N B    Upon dissolution all property and rights vested in, or held in trust for, the company
       are deemed to be bona vacantia, and accordingly will belong to the crown
                    *D053554919*



AWARDED FOR EXCELLENCE

BERRI | Department for Business
        Enterprise & Regulatory Reform
A BERR SERVICE

75

dc 4084

**RESPONSE OF MRS. S.A.B. VAN ROOY
TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
<u>TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM</u>**

# EXHIBIT J



**Companies House**

## Company Details

Name & Registered Office:
**LB INVESTMENT HOLDINGS LTD**
c/o PUXON MURRAY LLP
1 ROYAL EXCHANGE AVENUE
LONDON
UNITED KINGDOM
EC3V 3LT
**Company No. 04385277**

**Status**: Dissolved 17/05/2011
**Date of Incorporation**: 01/03/2002

**Country of Origin**: United Kingdom
**Company Type**: Private Limited Company
**Nature of Business (SIC)**:
7415 - Holding companies including head offices
**Accounting Reference Date**: 30/11
**Last Accounts Made Up To**: 30/11/2006  (FULL)
**Next Accounts Due**:
**Last Return Made Up To**: 01/03/2010
**Next Return Due**:
**Last Members List**: 01/03/2010
**Previous Names**:

| Date of change | Previous Name |
| --- | --- |
| 24/04/2002 | LEHMAN SHELFCO 2 LTD. |

**UK Establishment Details**
There are no UK Establishments associated with this company.
**Oversea Company Info**
There are no Oversea Details associated with this company.

**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

# EXHIBIT K



On Sunday 20th November 2011 between 7 am and 8 am (GMT) customers who use 3D Secure or Verified by Visa authentication will be unable to make online payments. This is due to essential maintenance being performed by a third party organisation. Apologies for any inconvenience caused.

Home | Bookmark site | Links

About us | Forms | Press Desk | Careers | Contact us

Login | My Account | My Download | My Monitor | My Order

## Order Information on 'LB INVESTMENT HOLDINGS LTD'

Use the tick boxes to select documents or reports from the lists below. Select the 'Add to Order' button to add to your shopping basket (up to £50 maximum order limit).

HELP

**Prices of documents or reports: £1.00 each.**

**Click here for information on minimum software requirements**

Documents selected will be delivered to your personal download area. Please read the ORDERING GUIDE for detailed instructions.

For company filing history please scroll down the page.

| Company Reports | Order |
| --- | --- |

indicates that this document contains the latest Statement of Capital

| Company Filing History | | | | Include Allotment of Shares |
| --- | --- | --- | --- | --- |
| | Type | Date | Description | Order |
| | GAZ2(A) | 17/05/2011 | FINAL GAZETTE: DISSOLVED VIA VOLUNTARY STRIKE-OFF | |
| | TM01 | 17/03/2011 | APPOINTMENT TERMINATED, DIRECTOR DANIEL EHRMANN | |
| | GAZ1(A) | 01/02/2011 | FIRST GAZETTE NOTICE FOR VOLUNTARY STRIKE-OFF | |
| | DS01 | 24/01/2011 | APPLICATION FOR STRIKING-OFF | |
| | AD01 | 25/06/2010 | REGISTERED OFFICE CHANGED ON 25/06/2010 FROM 68 C/0 PUXON MURRAY LLP LOMBARD STREET LONDON EC3V 9LJ | |
| | AR01 | 14/04/2010 | 01/03/10 FULL LIST | |
| | *LATEST SOC* | *14/04/2010* | *14/04/10 STATEMENT OF CAPITAL;USD 1* | |
| | AP01 | 16/03/2010 | DIRECTOR APPOINTED MR DANIEL EHRMANN | |
| | AD01 | 12/03/2010 | REGISTERED OFFICE CHANGED ON 12/03/2010 FROM 25 BANK STREET LONDON E14 5LE | |
| | TM02 | 17/02/2010 | APPOINTMENT TERMINATED, SECRETARY MARGARET SMITH | |

| | | TM02 | 17/02/2010 | APPOINTMENT TERMINATED, SECRETARY EMILY UPTON | |
| | | TM02 | 09/02/2010 | APPOINTMENT TERMINATED, SECRETARY PARUL DAVE | |
| | | GAZ1 | 09/02/2010 | FIRST GAZETTE | |
| | | 288c | 24/08/2009 | SECRETARY'S CHANGE OF PARTICULARS / EMILY UPTON / 27/07/2009 | |
| | | 363a | 18/05/2009 | RETURN MADE UP TO 01/03/09; FULL LIST OF MEMBERS | |
| | | 288b | 09/03/2009 | APPOINTMENT TERMINATED DIRECTOR DOMINIC GIBB | |
| | | 288b | 09/03/2009 | APPOINTMENT TERMINATED DIRECTOR ANTONY RUSH | |
| | | 288b | 09/03/2009 | APPOINTMENT TERMINATED DIRECTOR IAN JAMESON | |
| | | AA | 29/07/2008 | FULL ACCOUNTS MADE UP TO 30/11/06 | |
| | | 288a | 17/06/2008 | DIRECTOR APPOINTED DOMINIC GIBB | |
| | | 288a | 11/06/2008 | SECRETARY APPOINTED PARUL DAVE | |
| | | 288b | 02/06/2008 | APPOINTMENT TERMINATED DIRECTOR MARCUS JACKSON | |
| | | 363a | 20/03/2008 | RETURN MADE UP TO 01/03/08; FULL LIST OF MEMBERS | |
| | | 288c | 24/09/2007 | DIRECTOR'S PARTICULARS CHANGED | |
| | | 288c | 24/09/2007 | DIRECTOR'S PARTICULARS CHANGED | |
| | | AA | 11/09/2007 | FULL ACCOUNTS MADE UP TO 30/11/05 | |
| | | 288b | 19/08/2007 | DIRECTOR RESIGNED | |
| | | 363s | 25/04/2007 | RETURN MADE UP TO 01/03/07; FULL LIST OF MEMBERS | |
| | | 288c | 27/11/2006 | DIRECTOR'S PARTICULARS CHANGED | |
| | | 363s | 31/03/2006 | RETURN MADE UP TO 01/03/06; NO CHANGE OF MEMBERS | |
| | | AA | 10/10/2005 | FULL ACCOUNTS MADE UP TO 30/11/04 | |
| | | ELRES | 29/04/2005 | S80A AUTH TO ALLOT SEC 22/04/05 | |
| | | 288a | 26/04/2005 | NEW DIRECTOR APPOINTED | |
| | | 363s | 07/04/2005 | RETURN MADE UP TO 01/03/05; NO CHANGE OF MEMBERS | |
| | | 288a | 22/02/2005 | NEW DIRECTOR APPOINTED | |
| | | 288b | 22/02/2005 | DIRECTOR RESIGNED | |
| | | 288a | 22/02/2005 | NEW SECRETARY APPOINTED | |
| | | AA | 05/10/2004 | FULL ACCOUNTS MADE UP TO 30/11/03 | |
| | | 288c | 29/04/2004 | DIRECTOR'S PARTICULARS CHANGED | |
| | | 363s | 06/04/2004 | RETURN MADE UP TO 01/03/04; FULL LIST OF MEMBERS | |
| | | 287 | 21/10/2003 | REGISTERED OFFICE CHANGED ON 21/10/03 FROM: G OFFICE CHANGED 21/10/03 ONE BROADGATE LONDON EC2M 7HA | |
| | | AA | 03/10/2003 | FULL ACCOUNTS MADE UP TO 30/11/02 | |

| | | | | |
|---|---|---|---|---|
| | 363s | 24/03/2003 | RETURN MADE UP TO 01/03/03; FULL LIST OF MEMBERS | |
| | 225 | 14/05/2002 | ACC. REF. DATE SHORTENED FROM 31/03/03 TO 30/11/02 | |
| | MEM/ARTS | 02/05/2002 | MEMORANDUM OF ASSOCIATION ARTICLES OF ASSOCIATION | |
| | CERTNM | 24/04/2002 | COMPANY NAME CHANGED LEHMAN SHELFCO 2 LTD. CERTIFICATE ISSUED ON 24/04/02 | |
| | 288b | 22/03/2002 | DIRECTOR RESIGNED | |
| | 288a | 22/03/2002 | NEW SECRETARY APPOINTED | |
| | 288a | 22/03/2002 | NEW DIRECTOR APPOINTED | |
| | 288b | 22/03/2002 | SECRETARY RESIGNED | |
| | 288a | 22/03/2002 | NEW DIRECTOR APPOINTED | |
| | 287 | 22/03/2002 | REGISTERED OFFICE CHANGED ON 22/03/02 FROM: G OFFICE CHANGED 22/03/02 1 MITCHELL LANE BRISTOL BS1 6BU | |
| | 288a | 22/03/2002 | NEW DIRECTOR APPOINTED | |
| | NEWINC | 01/03/2002 | INCORPORATION DOCUMENTS CERTIFICATE OF INCORPORATION STATEMENT OF DIRECTORS & REGISTERED OFFICE DECLARATION OF COMPLIANCE MEMORANDUM OF ASSOCIATION ARTICLES OF ASSOCIATION | |

☞ ADD TO ORDER

SEARCH FOR ANOTHER COMPANY

**IMPORTANT INFORMATION**
Before ordering please ensure you have suitable software:

Documents are provided as both multi page 'TIFF' images (to view a test image click HERE), and as PDF's (a viewer can be downloaded from the Forms Online screen).
Reports are provided in 'RTF' format. To view a test report click HERE and ensure
that you can both view and download the sample before ordering.

If you are having problems with either of the test documents please contact your Internet Service Provider.

For more instructions read our...   ORDERING GUIDE

**Tell Us**

› Are you satisfied with our service?

› Have you got a question?

⚬ Top

**RESPONSE OF MRS. S.A.B. VAN ROOY**
**TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
<u>**TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM**</u>

# EXHIBIT L

*0000435/10*



In accordance with
Section 1003 of the
Companies Act 2006

# DS01

## Striking off application by a company

**A fee is payable with this form**
Please see 'How to pay' on the last page

✓ **What this form is for**
You may use this form to strike off a
company from the Register  Please
ensure you read the guidance before
completing this form

✗ **What this form is NOT**
You cannot use this form
off a Limited Liability Par
(LLP) To strike off an LLP
use form LL DS01 'Strikin
application by a Limited L
Partnership (LLP)'

THURSDAY



A15        20/01/2011        227
COMPANIES HOUSE

---

## 1 | Company details

| Company number | 0 4 3 8 5 2 7 7 |
|---|---|
| Company name in full | LB IINVESTMENT HOLDINGS LTD |

→ **Filling in this form**
Please complete in typescript or in
bold black capitals

All fields are mandatory unless
specified or indicated by *

---

## 2 | The application

**Warning to all applicants**
It is an offence to knowingly or recklessly provide false or misleading
information on this application

You are advised to read section 4 and to consult the guidance available from
Companies House before completing this form  If in doubt, seek professional
advice

I/We as director(s)/the majority of directors apply for this company to
be struck off the Register and declare that none of the circumstances
described in section 1004 or 1005 of the Companies Act 2006 (being
circumstances in which the directors would otherwise be prohibited
under those sections form making an application) exists in relation to
the company ❶

This form must be signed by the sole director if only 1, by both if there are 2, or
by the majority if there are more than 2

❶ Please read the guidance
on our website
www companieshouse gov uk
or section 1003 or 1004 of
the Companies Act 2006 for
circumstances under which an
application may **not** be made

Please note that on dissolution all
property and rights etc will be passed
to the Crown

**Further Guidance**
Guidance on striking off is available
from our website at
www companieshouse gov uk

---

## 3 | Signatures of the director(s)

| Signature | Signature ✗ | ✗ |
|---|---|---|

**Further signatures**
Please use the next page to enter
further signatures

| Name | DANIEL EHRMANN |
|---|---|
| Date | d 1 9  m 0 1  y 2 0 1 1 |

| Signature | Signature ✗ | ✗ |
|---|---|---|

| Name | |
|---|---|
| Date | d d  m m  y y y y |

---

**BIS** | Department for Business
Innovation & Skills

CHWP000
05/10 Version 4 0

## DS01
### Striking off application by a company

| | | |
|---|---|---|
| Signature | **Signature** ✗ | ✗ |
| Name | | |
| Date | d d  m m  y y y y | |
| Signature | **Signature** ✗ | ✗ |
| Name | | |
| Date | d d  m m  y y y y | |
| Signature | **Signature** ✗ | ✗ |
| Name | | |
| Date | d d  m m  y y y y | |

**Warning to all applicants**
It is an offence to knowingly or recklessly provide false or misleading information on this application

Please note that on dissolution any remaining assets will be passed to the Crown

You are advised to read section 4 and to consult the guidance available from Companies House before completing this form. If in doubt, seek professional advice

**Signatures**
This form must be signed by the sole director if only 1, by both if there are 2, or by the majority if there are more than 2

**Further signatures**
Please use a continuation page if you need to enter further signatures

---

**4**   ## What to do next

**Notify all parties**
Please ensure that you send copies of this application to all notifiable parties e g creditors, employees, shareholders, pension managers or trustees and other directors of the company within 7 days from the day on which the application is made

Please also send copies to anyone who later becomes a notifiable party within 7 days of this taking place This applies from the day of application and before the day on which the application is finally dealt with or withdrawn Please check the guidance which contain a full list of those who must be notified Failure to notify interested parties is an offence It is advisable to obtain and retain some proof of delivery or posting of copies to notifiable parties

**Withdrawal of striking off application by a company**
If the company ceases to be eligible for striking off at any time after the application is made, and before the application is finally dealt with, as specified in section 1009 of the Companies Act 2006, then the application must be withdrawn using form DS02 'Withdrawal of striking off application by a company' available from our website  www.companieshouse.gov.uk

---

**5**   ## Warning to all interested parties

This is an important notice and should not be ignored The company named has applied to the Registrar to be struck off the Register and dissolved Please note that on dissolution any remaining assets will be passed to the Crown The Registrar will strike the company off the register unless there is reasonable cause not to do so Guidance is available on grounds for objection If in doubt, seek professional advice

**Further guidance**
Guidance on all aspects of striking off is available from our website at www.companieshouse.gov.uk

# DS01

**Striking off application by a company**

## 👤 Presenter information

You do not have to give any contact information, but if you do it will help Companies House if there is a query on the form. The contact information you give will be visible to searchers of the public record

Contact name *Paul Dixon*

Company name *Dixon Murray LLP*

Address *One Royal Exchange Avenue*

Post town *London*

County/Region

Postcode *EC3V3LT*

Country *UK*

DX

Telephone *0207 464 4390*

## ✓ Checklist

**We may return the forms completed incorrectly or with information missing**

**Please make sure you have remembered the following**

- ☑ The company name and number match the information held on the public Register
- ☑ The correct number of current directors have signed and dated the form — 1 director if there is only 1 director, both if there are 2, and the majority if there are more than 2 e g Out of 6 directors, 4 must sign
- ☐ You have included a continuation sheet (available from www companieshouse gov uk) if applicable
- ☐ Is the company already dissolved or is being dissolved by the Registrar? If so, you cannot file this form
- ☐ You have enclosed the correct fee

## ❗ Important information

Please note that all information on this form will appear on the public record

## £ How to pay

A fee of £10 is payable to Companies House in respect of a striking off application

Make cheques or postal orders payable to 'Companies House'

## ✉ Where to send

You may return this form to any Companies House address, however for expediency we advise you to return it to the appropriate address below

**For companies registered in England and Wales**
The Registrar of Companies, Companies House, Crown Way, Cardiff, Wales, CF14 3UZ
DX 33050 Cardiff

**For companies registered in Scotland**
The Registrar of Companies, Companies House, Fourth floor, Edinburgh Quay 2, 139 Fountainbridge, Edinburgh, Scotland, EH3 9FF
DX ED235 Edinburgh 1
or LP - 4 Edinburgh 2 (Legal Post)

**For companies registered in Northern Ireland**
The Registrar of Companies, Companies House, Second Floor, The Linenhall, 32-38 Linenhall Street, Belfast, Northern Ireland, BT2 8BG
DX 481 N R Belfast 1

## ℹ Further information

For further information please see the guidance notes on the website at www companieshouse gov uk or email enquiries@companieshouse gov uk

## This form is available in an alternative format. Please visit the forms page on the website at www.companieshouse.gov.uk

This form has been provided free of charge by Companies House

CHWP000
05/10 Version 4 0

**RESPONSE OF MRS. S.A.B. VAN ROOY
TO DEBTORS' TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION
<u>TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM</u>**

# EXHIBIT M



**Companies House**

**Company Details**

Name & Registered Office:
**THE BANK OF NEW YORK DEPOSITORY (NOMINEES) LIMITED**
160 QUEEN VICTORIA STREET
LONDON
EC4V 4LA
**Company No. 03227439**

**Status**: Active
**Date of Incorporation**: 19/07/1996

**Country of Origin**: United Kingdom
**Company Type**: Private Limited Company
**Nature of Business (SIC)**:
7499 - Non-trading company
**Accounting Reference Date**: 31/12
**Last Accounts Made Up To**: 31/12/2010  (DORMANT)
**Next Accounts Due**: 30/09/2012
**Last Return Made Up To**: 12/12/2010
**Next Return Due**: 09/01/2012
**Last Members List**: 12/12/2010
**Previous Names:**

| Date of change | Previous Name |
| --- | --- |
| 17/06/1997 | ALNERY NO. 1604 LIMITED |

**UK Establishment Details**
There are no UK Establishments associated with this company.
**Oversea Company Info**
There are no Oversea Details associated with this company.