08-13555-mg    Doc 22964-1    Filed 11/30/11    Entered 12/05/11 16:44:07
Continuation of Transcript    Pg 1 of 14
LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 98

1  you got -- increase if you signed on for anyhow no matter how

2  good or bad a job review you got.  If you were asked back, you

3  got a 10% increase.

4           So we have a very different situation.  So, the issue

5  that we have here on that agreement, we said the first time

6  that they point to your footnote in the decision; but when we

7  were here the last time, you also said that language has to

8  mean something.  My client negotiated it.  She was told it's

9  already been approved by the Court; you can't change this, but

10 we can put some language in here.  She said I want more money.

11 This is before she knew she was going to have another 500

12 people to supervise, all right, but she said, "I want more

13 money.  I'm not satisfied with this."

14          "Okay.  We will sit down and look at it in six

15 months."  All right.  "In sum and substance, we will sit down

16 and look at -- give you a performance review."

17          What's in there in the terms of that, there is a

18 language and a written agreement that promises something, and

19 the mechanism is clearly not set forth.  But Judge, that's not

20 a motion to dismiss; that's the parol evidence rule, all right,

21 and that's why we need discovery in this case.  We need to find

22 out what Mr. Hershan said to my client at that point, what my

23 client said, what the expectation.

24          We have an ambiguity in a written document.  It's

25 contracts 101.  Under that circumstance, the negotiations come

Page 99

1  in --
2           THE COURT:  What's ambiguous about this?
3           MR. ROSEN:  What -- under -- what's ambiguous --
4           THE COURT:  What's ambiguous about that handwritten
5  note?  It seems to me to be pretty clear.
6           MR. ROSEN:  Well, Your Honor, the question that's in
7  there would be in terms of what would be the standards to be.
8  Well, if it's clear, I mean it's clear to me in terms of the
9  fact that she was to get an enhanced bonus if she got a good
10 review after six months.
11          THE COURT:  Where does it say that?
12          MR. ROSEN:  Well, that, I think, is the inference of
13 it; otherwise, what does it mean, Your Honor?
14          THE COURT:  It means you'll get a performance review;
15 it doesn't mean anything more than that.  That's what it says.
16 How can it mean more than what it says?
17          MR. ROSEN:  Well, Your Honor, I think, to consider,
18 the answer is if you're going to have a performance review and
19 you get an excellent on it, is there no -- one of the things,
20 was there not an expectation between the parties there that
21 there would then be an increase in the bonus?
22          THE COURT:  Well, she may have been induced into
23 signing the original agreement by virtue of that handwritten
24 extra, and she may have had a state of mind that said, "You
25 know what this means to me?  This means I'm going to get a

1  performance review.  I'm going to do a great job, and I'm going

2  to qualify for more money."  She may have thought that, but

3  that's not what it said.

4           MR. ROSEN:  Well, it says that she was going to get

5  the review, Judge.  So at the very least, to address their

6  damages issue because -- and this is the absolute minimal on --

7  minimum on damages, she was entitled.  There is no doubt that

8  as minimal as you may think or you may -- or take the position

9  that that language is as to what the debtor's representative

10 was --

11          THE COURT:  Well, let's --

12          MR. ROSEN:  -- required to do --

13          THE COURT:  Why don't we look at the language

14 together?  Do you have it handy?

15          MR. ROSEN:  It's in ten different places.  Let me get

16 it.  My stuff keeps sliding off this podium, Your Honor.

17          Yes, I do, Your Honor.

18          THE COURT:  Because --

19          MR. ROSEN:  "The parties agree to engage in a

20 performance review no later than 6/30/09 for consideration of a

21 potential increase in bonus potential."

22          THE COURT:  Okay.

23          MR. ROSEN:  All right.

24          THE COURT:  And that didn't happen --

25          MR. ROSEN:  So --

1       THE COURT:  -- on the date that it --

2       MR. ROSEN:  It did not happen --

3       THE COURT:  -- was supposed to happen?

4       MR. ROSEN:  -- Your Honor. And to point out something
5   else on that, my client in March, which is attached to the
6   complaint, the e-mail that counsel was talking about sent in
7   March before that in preparation for that what her expectations
8   were. She sent a proposal. She sent a rubrics. She went
9   through -- she gave them the analysis of what people in her
10  position made, and she sent it to them. And you do not have
11  anything back from Mr. Hershan other than, "I will look at
12  this," thus further include -- inducing her to think that this
13  was relevant in some way to the review. And then you don't
14  have anything from him until August putting off having a
15  meeting because somebody -- I'm not sure who -- was going away
16  that day. And then in November, six months after the review is
17  due, he gives her an excellent review, all right, and gives her
18  no raise --

19      THE COURT:  Well, see --

20      MR. ROSEN:  -- or no increased bonus.

21      THE COURT:  If that handwritten note had said, "If the
22  employee obtains an excellent review, she shall qualify without
23  further ado for a bonus computed in the following manner,"
24  you'd have a good claim.

25      MR. ROSEN:  Well, what's -- Your Honor, if I --

08-13555-mg   Doc 22964-1   Filed 11/30/11   Entered 12/05/11 16:44:07
Continuation of Transcript   Pg 5 of 14
LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 102

1  THE COURT:  The problem is that that's not there.

2  MR. ROSEN:  Well, I guess the question for that is,
3  what is the understanding?

4  And I do think parol evidence comes in because the
5  question is, what's the definition of a performance review?

6  All right.  What was in each person's mind when they
7  were sitting down for a performance review?

8  I think if you get -- when we get -- when and if we
9  get into it, the review is going to be -- a performance review
10 is, "I sit down -- with me.  And if I've done a good job, I get
11 an increase."  Otherwise, all right, why would my client ask
12 for a performance review, or why would they then agree to give
13 it?

14 And traditionally, in this organization, one of the
15 things that would become relevant -- or in the business world
16 of what happens in a performance review?  Do you turn -- and
17 one of the other things that would become relevant, Your Honor,
18 would be in a performance review under all of this, what
19 happened to the other people in this case who were from Lehman
20 who got performance reviews and got ones?

21 All right.  If all of the other ones of them got
22 enhanced bonuses -- and there's a pattern in practice here, and
23 there's a course of dealing issue.  So I don't think it's as
24 simple as saying the words should have been clearer to say you
25 get this if everyone's expectation in the industry is that's

Page 103

1  what happens at this meeting.

2          THE COURT: Well, the thing that makes it difficult to

3  talk about pattern in practice is that this is a handwritten

4  addition to a standard form agreement that was, I expect,

5  written into the document to induce your client to sign it. It

6  may be of some significance to know what the parties were

7  saying to each other around the time that this happened, but

8  the language itself is fully integrated. And it's probably not

9  the sort of language that one would find ordinarily because it

10 was written in.

11         One of the things that also makes this a more

12 challenging situation, frankly, for you is the position your

13 client held within the organization. She was not

14 unsophisticated in matters of the employment relationship.

15         MR. ROSEN: But we addressed that one, Your Honor.

16 Because she was told that this was a form agreement that had

17 already been approved by the Court, and this was the only place

18 this change could be made, was back here. So I normally -- and

19 having known my client now, represented her for two and a half

20 years, in normal circumstances, I would agree with you, but I

21 think that's part of the inducement issue of what went on here.

22 It was kind of this is the best we can possibly give you to

23 protect you, and that's one of -- another reason why it's not

24 appropriate on a motion to dismiss.

25         Maybe it is a motion for summary judgment when we find

1  out exactly what was said. But at this point, it's not
2  appropriate. Your Honor -- and Your -- as I said before --
3  well, I'm not -- hang on one second -- see if I covered all of
4  what I wanted to say, Your Honor.
5      No, Your Honor, that's all I have to say.
6      THE COURT: Okay.
7      MR. ROSEN: I think that covers it.
8      THE COURT: Anything more?
9      MR. BAER: Yes, Your Honor, a couple of points.
10 Number one, plaintiff's counsel has not addressed at all the
11 speculative nature of the damages here. I agree with Your
12 Honor: this is a fully integrated document. There is an
13 integration clause. It says this is it: the four corners of
14 the document is all one looks at. And the document on its face
15 doesn't guarantee any compensation. It just -- it guarantees a
16 discussion and a potential increase in bonus potential, nothing
17 more. I'm not going to belabor that point.
18      Your Honor, I would just like to revisit, if I may,
19 the first point. Your Honor had said that -- had cited the
20 Conley standard on motion to dismiss. No set of facts that
21 this plaintiff could plead that would give rise to this cause
22 of action. But the Conley standard and in fact the relevant
23 law is set forth in --
24      THE COURT: We don't have to go to Iqbal. I know what
25 Iqbal says.

08-13555-mg    Doc 22964-1    Filed 11/30/11    Entered 12/05/11 16:44:07
Continuation of Transcript    Pg 8 of 14
LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 105

1         MR. ROSEN:  Iqbal says plausible --

2         THE COURT:  If you're talking about plausible, it's --
3   for reasons that I'll incorporate by reference from an earlier
4   colloquy, I myself posited a set of plausible explanations that
5   I think could be used to blunt your motion to dismiss in terms
6   of the complaint as drafted.  So I hear you, but I'm unmoving
7   on that point.

8         MR. BAER:  All right.

9         THE COURT:  You're losing on that motion without
10  prejudice.

11        MR. BAER:  Well, like any good lawyer, I know when to
12  sit down.  Thank you, Your Honor.

13        THE COURT:  Okay.

14        MR. ROSEN:  Your Honor, may I address the speculative
15  issue briefly?

16        THE COURT:  You can although it's a tough point for
17  you.

18        MR. ROSEN:  I know it is, Your Honor.  And let me --
19  Your Honor, first of all, it's a standard rule of construction,
20  and I've recently had to deal with this a lot in another case
21  that just went up to the 2nd Circuit on a related matter.  The
22  speculative issue as to damages is removed when the speculation
23  is caused by the other party's breach.

24        In this case, one of our arguments, there are several
25  elements of damages.  One is the fact that she could have gone

08-13555-mg   Doc 22964-1   Filed 11/30/11   Entered 12/05/11 16:44:07
Continuation of Transcript    Pg 9 of 14
LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 106

1  out -- had they sat down with her on May 30th and said exactly
2  what they said to her in November, okay, at that point she
3  could have started her job search and gotten another job. And
4  she would have been in some place probably, all right, in time
5  to be there for the bonus season at the end of the year. She
6  lost that because of this, all right.
7         But the other thing that happened there is -- and yes,
8  we don't know what job we would have got, but she had given
9  them the rubrics and there is -- this is not previously in
10 March. This is -- it is easy to determine in this case, to
11 have expert testimony, as to what someone in her range could
12 have made. They don't get off the hook by stalling for six
13 months and then saying, "Well, we stalled you for six months
14 before we told you, so we don't know what job you would have
15 gotten during that period. So it's speculative," because that
16 uncertainty was caused by their breach. And I think if you --
17 and I think that's part of the problem I have in terms of that.
18 So that's one way I try to get over my very tough road that I
19 have with you on this issue, is to realize that they caused
20 that issue, all right.
21        The other simple element of damages I have, as I said,
22 their breach on that condition, all right, excused her further
23 performance, and she's entitled to the $50,000 dollar holdback
24 that they kept from her out of the bonus for not resigning the
25 agreement because they did not give her the review when she

08-13555-mg   Doc 22964-1   Filed 11/30/11   Entered 12/05/11 16:44:07
Continuation of Transcript   Pg 10 of 14
LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 107

1  should have.  And even if she had gotten the review when she
2  should have, that bonus was supposed to kick in six months
3  earlier, so she would have been entitled to some portion on
4  that.  So there are elements here in terms of a -- yes, on a
5  proof burden.  Maybe I have some issues in terms of getting it
6  in here, or maybe we have a battle of the experts.  But I do
7  not think that, again, it meets the standard that it's so
8  speculative at this point in time that it can't go forward,
9  especially since the only case they rely on for that, the one
10  they made is the one I said before which dealt with a very,
11  very different set of circumstances.
12        And the reality is, as you said, this is not a job
13  that you leave tomorrow and find another one.  It takes -- you
14  know, she found another job in six months, which was pretty
15  good under the circumstances for a search of this time.  And as
16  we all know, during this period of time, the economy was only
17  getting worse when all of this was going on, so six months
18  could have made a big difference.  All of which, as I said, was
19  caused by them not doing the review when they were supposed to,
20  which is the one thing she bargained for.
21        Whether you want to argue whether or not there was a
22  promise of payment or whatever, she bargained to know on May
23  30th if she was going to get more money, all right, and she
24  didn't get that.  Thank you.
25        THE COURT:  Okay.  I'm denying the motion to dismiss

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 108

1   without prejudice to renewing it as a motion for summary
2   judgment after the completion of some discovery. The quantum
3   meruit issue that we talked about does not need further
4   elaboration at this point. I think I've expressed myself fully
5   during the argument.
6       The breach of contract element here is right at the
7   edge of dismissal. This is highly speculative, and I don't
8   think it would be an abuse of discretion on my part were I to
9   dismiss that element of the complaint now. But I'm going to
10  give the plaintiff an opportunity to explore the potential to
11  demonstrate any provable damages that may flow from a failure
12  to have conducted the performance review as specified in the
13  handwritten notation in the agreement.
14      I believe it to be wildly speculative. And while I
15  hear what Mr. Rosen has said in his last argument, it's
16  possible that a rational person in the plaintiff's position
17  would immediately start looking for another job the moment that
18  there was a failure on the part of the employer to perform in
19  accordance with the terms of that agreement, but I don't know
20  what's going on within the organization at this time. No
21  depositions have been taken of either Mr. Hershan or Ms. Uvino.
22      The amount in controversy makes the notion of a battle
23  of the experts borderline preposterous in terms of the expenses
24  of going forward. So while I heard Mr. Rosen's comment about
25  that, it seems to me that there is a role of practicality that

Page 109

1  ultimately will rule the case, and I strongly encourage the
2  parties to stop jockeying for position here and to start
3  thinking about whether there is a sensible business solution to
4  this spat.  We're adjourned.
5         MR. BAER:  Thank you, Your Honor.
6         MR. ROSEN:  Thank you, Your Honor.
7         (Whereupon these proceedings were concluded at 2:56 PM)

Page 110

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Stipulation between Debtors and Colorado plaintiffs approved | 12 | 12 |
| Debtors' motion to establish procedures for the consensual amendment and assumption of certain nonterminated prepetition derivatives contracts approved | 15 | 4 |
| Debtors' motion for approval of a settlement and compromise with Danske Bank approved | 17 | 9 |
| Joint motion of LBHI and the SIPA trustee granted but conditioned with a strong suggestion for voluntary compliance as set forth on the record | 55 | 17 |
| Providence Funds' Motion - status conference to be held sometime after confirmation in the LBHI case or possibly in February 2012 if confirmation isn't achieved. | 75 | 13 |
| Defendant's Motion to Dismiss Amended Adversary Complaint, Denied | 107 | 25 |

```
                                                          Page 111
 1

 2                    C E R T I F I C A T I O N

 3

 4    I, Sharona Shapiro, certify that the foregoing transcript is a

 5    true and accurate record of the proceedings.

 6        Sharona     Digitally signed by Sharona
                      Shapiro
                      DN: cn=Sharona Shapiro, o, ou,
 7                    email=digital1@veritext.com,
          Shapiro     c=US
                      Date: 2011.11.17 15:33:51 -05'00'
 8        ──────────────────────────────────────

 9    SHARONA SHAPIRO

10    AAERT Certified Electronic Transcriber CET**D 492

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:   November 17, 2011

18

19

20

21

22

23

24

25
```