**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re                                      :

                                           :      Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      08-13555 (JMP)

                                           :

          Debtors.                         :      (Jointly Administered)

                                           :

                                           :

------------------------------------------------------------------------x

NOTICE OF TRANSFER OF CLAIM
PURSUANT TO FRBP RULE 3001(e)(2)

1.    TO:              Electrabel NV/SA ("Transferor")
                       Troutman Sanders LLP
                       The Chrysler Building
                       405 Lexington Avenue, 7th Floor
                       New York, NY 10174
                       Attn: Hollace T. Cohen, Esq.
                       Tel: (212) 704-6000

2.    Please take notice that the transfer of your claim against LEHMAN BROTHERS HOLDINGS
INC., et al, Case No. 08-13555 (JMP) arising from and relating to Proof of Claim No. 67243 (attached as
Exhibit A hereto), has been transferred to:

                       Barclays Bank PLC ("Transferee")
                       745 Seventh Avenue
                       New York, NY 10019
                       Telephone: (212) 412-2865
                       Email:  daniel.crowley@barclayscapital.com
                               daniel.miranda@barclayscapital.com

      An executed "Evidence of Transfer of Claim" is attached as Exhibit B hereto.  All distributions
and notices regarding  the claim should be sent to the Transferee as provided in Exhibit C hereto.

3.    No action is required if you do not object to the transfer of your claim.  However, **IF YOU
OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS
NOTICE, YOU MUST:**

--    **FILE A WRITTEN OBJECTION TO THE TRANSFER** with:

      United States Bankruptcy Court
      Southern District of New York
      Attn: Clerk of Court
      Alexander Hamilton Custom House
      One Bowling Green
      New York, NY 10004-1408

--    **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE**

--    Refer to **INTERNAL CONTROL NO.** _____ in your objection and any further correspondence related to this transfer.

4.    If you file an objection, a hearing will be scheduled. **IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED FOR THE TRANSFEROR ON OUR RECORDS AS A CLAIMANT IN THIS PROCEEDING.**

                                                                                CLERK

-----------------------------------------------------------------------------------------------------------------

**FOR CLERK'S OFFICE USE ONLY:**

This notice was mailed to the first named party, by first class mail, postage prepaid on _____, 2009.

INTERNAL CONTROL NO._____

Copy: (check) Claims Agent__ Transferee__ Debtors' Attorney__

                                                                    _____
                                                                    Deputy Clerk

### EXHIBIT A

[Proof of Claim]

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Commodity Services, Inc. | 08-13885 (JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000067243

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

ELECTRABEL NV/SA
Attn: Julien Pochet
Chief Legal Officer
Trading & Portfolio Management (Electrabel SA)
8 Boulevard Du Regent, B-1000 Brussels Belgium

NOTICE ADDRESS:
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York, New York 10174
Attn: Hollace T. Cohen, Esq.
Tel: (212) 704-6000
Email: hollace.cohen@troutmansanders.com

Telephone number: 32 2 510 7098    Email Address: Julien.Pochet@electrabel.com

☑ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: 15659
(If known)

Filed on: 9/17/09

Name and address where payment should be sent (if different from above)

ELECTRABEL NV/SA
Attn: Mr. Didier Ramen
CACG Department
Boulevard du Regent 8
1000 Brussels Belgium

Telephone number:    Email Address: Didier.Ramen@electrabel.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 2,440,499.84

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE TO A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. Basis for Claim: Terminated Derivative Contract - ISDA
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:
3a. Debtor may have scheduled account as:
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection:
Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:

$_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

| Date: 11/30/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. MICHEL BIRAT, Manager TPM Europe  ERIC BOSMAN, General Manager LPM Benelux & Germany (See Creditor Address Above) |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

DOC# 1389341.1

FILED / RECEIVED
DEC 06 2010

**AMENDED**
**ADDENDUM TO DERIVATIVE CONTRACT**
**PROOF OF CLAIM OF ELECTRABEL NV/SA (ISDA)**

1.          Claimant Electrabel NV/SA ("Electrabel") hereby asserts a general unsecured

claim ("Claim") against Lehman Brothers Commodity Services, Inc ("LBCS") based on

Electrabel's early termination of the fuel oil swap transaction (the "Swap Transaction") reflected

in the LBCS and Electrabel confirmations annexed hereto as Exhibit "A" (the "Confirmations").[1]

2.          Pursuant to a letter, dated October 13, 2008, from Electrabel to LBCS, Electrabel

terminated the Swap Transaction, effective as of October 14, 2008.  On or about December 22,

2008, Electrabel sent LBCS a notice of amount payable with respect to the early termination of

the Swap Transaction (the "December 22nd Notice").  The December 22nd Notice reflects the

amount payable to Electrabel as a result of the early termination of the Swap Transaction to be

€ 1,768,350 or USD 2,422,639.50 (the "Termination Amount").[2]  At the request of LBCS and

with their advice of approval by the Official Committee of Unsecured Creditors of Lehman

Brothers Holdings Inc., et al. the Termination Amount is hereby corrected and amended to equal

USD 2,440,499.84 reflecting the Euro-Dollar exchange rate of 1.3801 on October 3, 2008, the

filing date of the LBCS chapter 11 petition.

3.          Electrabel specifically reserves its right to amend and supplement this Claim

and/or the Questionnaires.  Electrabel further reserves its rights to file against LBCS additional

proofs of claim and/or questionnaires.

---

[1] Each of the Confirmations was attached as exhibits to the Derivative Questionnaire and/or the Guarantee Questionnaire (collectively, the "Questionnaires") filed by Electrabel with respect to this Claim in accordance with the Order of this Court dated July 2, 2009 (the "Bar Date Order").
[2] The Termination Amount had been converted to U.S. Dollars as of October 14, 2008 at the exchange rate of 1.370.  Annexed hereto as Exhibit "B" is a screen print from http://www.exchange-rates.org/rate/eur/usd/10-14-2008 reflecting the Euro-Dollar exchange rate on October 14, 2008.  LBCS maintained that the Euro-Dollar exchange rate as of October 3, 2008 of 1.3801 is applicable to the Termination Amount and this claim is hereby amended to reflect that exchange rate.

4.      Neither this proof of claim nor the filing hereof in the Bankruptcy Court shall: (a) prejudice, impair, waive or otherwise affect in any respect the rights of Electrabel to assert, prosecute and enforce any and all claims, causes of action, rights, remedies and interests that Electrabel has or may have, at law or in equity, against LBCS or any third party, and such third party's affiliates, or any other person or entity, all of which claims, causes of action, rights, remedies and interests are hereby reserved, or (b) constitute or be deemed to constitute a consent or submission by Electrabel to the jurisdiction of the Bankruptcy Court with respect to any such claims, causes of action, rights, remedies and interests.

# EXHIBIT

## "A"

# LEHMAN BROTHERS

ELECTRABEL NV/SA
(Party A)

**Commodity Swap: Cash-Settled**

Our Ref. 593502

Lehman Brothers Commodity                                      September 17, 2007
Services Inc. (Party B)
25 Bank Street
London E14 5LE
Fax 0207 067 5503

Dear Sirs,

The purpose of this facsimile (this "Confirmation") is to confirm the terms and conditions of the Transaction entered into between us on the Trade Date specified below (the "Transaction").

The definitions and provisions contained in the 2005 ISDA Commodity Definitions (the "Commodity Definitions" (as published by the International Swaps and Derivatives Association, Inc.), are incorporated into this Confirmation. In the event of any inconsistency between the Commodity Definitions and this Confirmation, this Confirmation will govern.

This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation will supplement, form a part of, and be subject to that agreement. All provisions contained in or incorporated by reference in that agreement upon its execution will govern this Confirmation except as expressly modified below.

Until we execute and deliver that agreement, this Confirmation (together with all other documents referring to the ISDA Form or similar (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation), shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if, on the Trade Date of the first such Transaction between us, we had executed an agreement in such form (but without any Schedule except for (i) the election of English law as the governing law; (ii) Euro as the Termination Currency; (iii) Loss as the Payment Measure; (iv) Second Method as the Payment Method" (v) Section 2(c) sub-paragraph (ii) not applying and (vi) including as Section 6 (f) thereof the set-off provisions of Section V (A) of the User's Guide to the 1992 Master Agreement) would apply. In the event of any inconsistency between the provisions of that agreement and this Confirmation, this Confirmation will prevail for purpose of the Transaction.

The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Trade Date: | September 14, 2007 |
| Effective Date: | July 01, 2008 |
| Termination Date: | September 30, 2009 |
| Commodity: | FUEL OIL-1.0%-BARGE NWE-PLATTS EUROPEAN |
| Notional Quantity per Calculation Period | 01/07/2008 – 31/07/2008 1,250 MT<br>01/08/2008 – 31/08/2008 1,250 MT |

LEHMAN BROTHERS INC
745 SEVENTH AVENUE, NEW YORK NY 10019

| | |
|---|---|
| 01/08/2008 – 30/08/2008 | 1,250 MT |
| 01/10/2008 – 31/10/2008 | 2,500 MT |
| 01/11/2008 – 30/11/2008 | 2,500 MT |
| 01/12/2008 – 31/12/2008 | 2,500 MT |
| 01/01/2009 – 31/01/2009 | 2,500 MT |
| 01/02/2009 – 28/02/2009 | 2,500 MT |
| 01/03/2009 – 31/03/2009 | 2,500 MT |
| 01/04/2009 – 30/04/2009 | 2,500 MT |
| 01/05/2009 – 31/05/2009 | 2,500 MT |
| 01/06/2009 – 30/06/2009 | 2,500 MT |
| 01/07/2009 – 31/07/2009 | 1,250 MT |
| 01/08/2009 – 31/08/2009 | 1,250 MT |
| 01/09/2009 – 30/09/2009 | 1,250 MT |

**Total Notional Quantity:** 30,000 MT Total

**Calculation Period(s):** from and including July 01, 2008, to and including the September 30, 2009

**Payment Date(s):** In respect of each Calculation Period, the fifth Business Day following the end of such Calculation Period, subject to adjustment in accordance with the Modified Following Business Day Convention.

**Fixed Amount Details:**

**Fixed Price Payer:** Electrabel SA

**Fixed Price:** USD 378.31 per MT

**Fixed Amount:** Means an amount equal to the product of the Notional Quantity per Calculation Period multiplied by the Fixed Price.

**Floating Amount Details:**

**Floating Price Payer:** Lehman Brothers Commodity Services Inc.

**Floating Price:** In respect of each Calculation Period, the Commodity Reference Price in respect of each Pricing Date during such Calculation Period.

**Commodity Reference Price:** The price for each Pricing Date will be the average of the high price and low price per metric ton of fuel oil with a sulphur content of up to one percent, stated in U.S. Dollars, published under the heading "Barges FOB Rotterdam: 1 PCT" in the issue of Platts European that reports prices effective on that Pricing Date. "Pricing Date" means each Commodity Business Day during the Calculation Period.

**Floating Amount:** Means an amount equal to the product of the Notional Quantity per Calculation Period multiplied by the Floating Price.

**Pricing Date(s):** Each Commodity Business Day of the relevant Calculation Period.

| | |
|---|---|
| Market Disruption: | |
| Market Disruption Events: | Price Source Disruption, Trading Disruption, Disappearance of Commodity Reference Price, Material Change in Formula, Material Change in Content. |
| Disruption Fallback(s): | Section 7.5(d)(i) of the Commodity Definitions shall apply |
| Rounding: | Averages and Floating Price are rounded to the same degree of accuracy used in publication. |
| Calculation Agent: | Party A, unless it is subject to an Event of Default in which case Party B will be the Calculation Agent. |
| Account Details | |
| Payments to Party A: | FORTIS Bank Brussels 210-0000708-79 Swift GEBA BE BB |
| Payments to Party B: | To be advised separately in writing |
| Offices | |
| Party A: | Electrabel NV/SA Regentlaan 8 1000 Brussels |
| Party B: | Lehman Brothers Commodity Services Inc. |
| Broker/Arranger | |

Other Provisions

Representations

Each Party represents to the other as of the date hereof that:

(1) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether this Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(2) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

(3) Status of the Parties. The other party is not acting as a fiduciary for or an adviser to it in respect of this Transaction.

(4) No Agency. It is entering into this agreement, any credit support document to which it is a party, each transaction and any other documentation relating to this agreement or any transaction, as principal (and not as agent or in any other capacity, fiduciary or otherwise).

(5) Purpose. It has entered into this agreement (including each transaction evidenced hereby) in conjunction with its line of business or the financing of its business.

Page 3 of 4

### Additional Defined Terms

"Dealer Fallback" means, that promptly upon becoming aware of the Market Disruption Event or Additional Market Disruption Event, the parties shall expeditiously and jointly agree upon three independent leading dealers in the relevant underlying commodity market selected in good faith from among dealers of the highest credit standing which satisfy all the criteria that the parties apply generally at the time in deciding whether to offer or to make an extension of credit or to enter into a transaction comparable to the Transaction that is affected by the Market Disruption Event or Additional Market Disruption Event. Such dealers shall be appointed to make a determination of the Relevant Price taking into consideration the latest available quotation for the relevant Commodity Reference Price and any other information that in good faith it deems relevant. The Relevant Price shall be the arithmetic mean of the three amounts determined to be the Relevant Price by such dealers, in which case such calculation shall be binding and conclusive absent manifest error. If the parties have not agreed upon the appointment of the dealers on or before the sixth Commodity Business Day following the first Pricing Date on which the Market Disruption Event or Additional Market Disruption Event occurred or existed, or if a determination of the Relevant Price cannot be obtained from at least three dealers, the next applicable Disruption Fallback shall apply to the Transaction.

### Consent to recording

Each Party is entitled to record telephone conversations held in connection with the Transaction and to use the same as evidence. Each Party waives any further notice of such recording and acknowledges that it has obtained all necessary consents of its officers and employees to such recording. In case of discrepancy between a Confirmation and an electronic record of telephone conversation the latter shall prevail for the purpose of confirming the existence of the Transaction and its terms.

Please confirm that the foregoing correctly sets forth the terms of our agreement by returning an executed copy of this Confirmation via facsimile to +44 207 067 8503, together with your list of authorised signatures, within two Business Days of your receipt, either confirming agreement thereto or requesting a correction of any error(s) contained therein. Failure to respond within such period shall not affect the validity or enforceability of this Transaction and shall be deemed to be an affirmation of the terms contained herein, absent manifest error.

Yours sincerely,                                    Accepted and agreed to:
Lehman Brothers Commodity Services Inc.             Electrabel SA

By: _Michele Gold_                                  By: _____

Michele Gold                                        Name: _____
Senior Vice President

Page 4 of 4



### ELECTRABEL NV/SA
(Party A)

---

#### Confirmation generated by Electrabel BOTPM

Commodity Swap: Cash-Settled

Our Ref. EEL479

---

| | |
|---|---|
| Lehman Brothers Commodity Services, Inc.<br>Corporation Service Company, 271<br><br>Wilmington, New Castle County<br>United States of America<br>(Party B) | 14 Sep 2007 |

Dear Sirs,

The purpose of this facsimile (this "Confirmation") is to confirm the terms and conditions of the Transaction entered into between us on the Trade Date specified below (the "Transaction").

The definitions and provisions contained in the 2005 Commodity ISDA Definitions (the "Commodity Definitions") (as published by the International Swaps and Derivatives Association, Inc.), are incorporated into this Confirmation. In the event of any inconsistency between those definitions and this Confirmation, this Confirmation will govern.

This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation will supplement, form a part of, and be subject to that agreement. All provisions contained in or incorporated by reference in that agreement upon its execution will govern this Confirmation except as expressly modified below.

Until we execute and deliver that agreement, this Confirmation (together with all other documents referring to the ISDA Form or similar (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation), shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if, on the Trade Date of the first such Transaction between us, we had executed an agreement in such form (but without any Schedule except for (i) the election of English law as the governing law; (ii) Euro as the Termination Currency; (iii) Loss as the Payment Measure; (iv) Second Method as the "Payment Method" and (v) including as (v) Section 2(c) sub-paragraph (ii) not applying and (vi) including as Section 6 (f) thereof the set-off provisions of Section V (A) of the User's Guide to the 1992 Master Agreement) would apply.

| | |
|---|---|
| Trade Date: | 14 Sep 2007 |
| Effective Date: | 01 Jul 2008 |
| Termination Date: | 30 Sep 2009 |

---



| | |
|---|---|
| Commodity: | FUEL OIL 1% BARGES FOB ROTTERDAM MEDIUM |
| Notional Quantity per Calculation Period: | 1,250.00 Metric TONS in Jul 2008<br>1,250.00 Metric TONS in Aug 2008<br>1,250.00 Metric TONS in Sep 2008<br>2,500.00 Metric TONS in Oct 2008<br>2,500.00 Metric TONS in Nov 2008<br>2,500.00 Metric TONS in Dec 2008<br>2,500.00 Metric TONS in Jan 2009<br>2,500.00 Metric TONS in Feb 2009<br>2,500.00 Metric TONS in Mar 2009<br>2,500.00 Metric TONS in Apr 2009<br>2,500.00 Metric TONS in May 2009<br>2,500.00 Metric TONS in Jun 2009<br>1,250.00 Metric TONS in Jul 2009<br>1,250.00 Metric TONS in Aug 2009<br>1,250.00 Metric TONS in Sep 2009 |
| Total Notional Quantity : | 30,000.00 Metric TONS |
| Calculation Period(s): | Monthly, from and including the Effective Date, to and including the Termination Date. |
| Payment Date(s): | In respect of each Calculation Period, the fifth (5th) Business Day following the end of such Calculation Period, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Fixed Amount Details: | |
| Fixed Price Payer: | Party A |
| Fixed Price: | 378.31 USD per Metric TONS from 01 Jul 2008 to 31 Jul 2008<br>378.31 USD per Metric TONS from 01 Aug 2008 to 31 Aug 2008<br>378.31 USD per Metric TONS from 01 Sep 2008 to 30 Sep 2008<br>378.31 USD per Metric TONS from 01 Oct 2008 to 31 Oct 2008<br>378.31 USD per Metric TONS from 01 Nov 2008 to 30 Nov 2008<br>378.31 USD per Metric TONS from 01 Dec 2008 to 31 Dec 2008<br>378.31 USD per Metric TONS from 01 Jan 2009 to 31 Jan 2009<br>378.31 USD per Metric TONS from 01 Feb 2009 to 28 Feb 2009<br>378.31 USD per Metric TONS from 01 Mar 2009 to 31 Mar 2009<br>378.31 USD per Metric TONS from 01 Apr 2009 to 30 Apr 2009<br>378.31 USD per Metric TONS from 01 May 2009 to 31 May 2009<br>378.31 USD per Metric TONS from 01 Jun 2009 to 30 Jun 2009<br>378.31 USD per Metric TONS from 01 Jul 2009 to 31 Jul 2009<br>378.31 USD per Metric TONS from 01 Aug 2009 to 31 Aug 2009<br>378.31 USD per Metric TONS from 01 Sep 2009 to 30 Sep 2009 |

Gas Deal Confirmations contacts
Phone : +32-2-519 27 75
Fax : +32-2-501 57 01

Page 2/5

Electrabel NV/SA
Bld. du Regent 8, 1000 Brussels
RPM/R,PR Brussels 0403170701
VAT BE 403 170 701



| | |
|---|---|
| Fixed Amount: | Means an amount equal to the product of the Notional Quantity per Calculation Period multiplied by the Fixed Price. |
| **Floating Amount Details:** | |
| Floating Price Payer: | Party B |
| Floating Price: | The mean of the arithmetic average of the relevant high and low quotations for Fuel Oil 1% under the heading Barges FOB Rotterdam, as reported in issues of the Platts European marketscan for each Determination Period. The rounding of the Floating price is only 3 decimal places. |
| Floating Amount: | Means an amount equal to the product of the Notional Quantity per Calculation Period multiplied by the Floating Price. |
| Pricing Date(s): | Each Commodity Business Day of the relevant Calculation Period. |
| **Market Disruption:** | |
| Market Disruption Event(s): | As provided in the Agreement. In the absence of any provision in the Agreement, the following Market Disruption Events shall apply: Price Source Disruption, Trading Disruption, Disappearance of Commodity Reference Price, Material Change in Formula, Material Change in Content, Tax Disruption. |
| Disruption Fallback(s): | As provided in the Agreement. In the absence of any provision in the Agreement, Section 7.5(d)(i) of the Commodity Definitions shall apply. |
| Rounding: | Averages and Floating Price are rounded to the same degree of accuracy used in publication |
| Calculation Agent: | Party A, unless otherwise provided in the Agreement. |
| Account Details: | |
| Payments to Party A: | FORTIS Bank Brussels 210-0000706-79 Swift GEBA BE BB |
| Payments to Party B: | To be advised separately in writing |
| Offices: | |
| Party A: | Electrabel NV/SA Bld. du Regent 8, 1000 Brussels RPM/RPR Brussels 0403170701 VAT BE 403 170 701 |
| Party B: | Lehman Brothers Commodity Services, Inc. Corporation Service Company, 271 Wilmington, New Castle County United States of America |
| Broker/Arranger: | |

Other Provisions:

Representations
Each Party represents to the other as of the date hereof that:
(1) Non-Reliance. It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether this Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to

Gas Deal Confirmations contacts
Phone : +32-2-519 27 75
Fax : +32-2-501 57 01

Page 3/5

Electrabel NV/SA
Bld. du Regent 8, 1000 Brussels
RPM/RPR Brussels 0403170701
VAT BE 403 170 701



enter into this Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(2) Assessment and Understanding. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

(3) Status of the Parties. The other party is not acting as a fiduciary for or an adviser to it in respect of this Transaction.

(4) No Agency. It is entering into this agreement, any credit support document to which it is a party, each transaction and any other documentation relating to this agreement or any transaction, as principal (and not as agent or in any other capacity, fiduciary to otherwise).

(5) Purpose. It has entered into this agreement (including each transaction evidenced hereby) in conjunction with its line of business or the financing of its business.

Additional Defined Terms

"Dealer Fallback" means, that promptly upon becoming aware of the Market Disruption Event or Additional Market Disruption Event, the parties shall expeditiously and jointly agree upon three independent leading dealers in the relevant underlying commodity market selected in good faith from among dealers of the highest credit standing which satisfy all the criteria that the parties apply generally at the time in deciding whether to offer or to make an extension of credit or to enter into a transaction comparable to the Transaction that is affected by the Market Disruption Event or Additional Market Disruption Event. Such dealers shall be appointed to make a determination of the Relevant Price taking into consideration the latest available quotation for the relevant Commodity Reference Price and any other information that in good faith it deems relevant. The Relevant Price shall be the arithmetic mean of the three amounts determined to be the Relevant Price by such dealers, in which case such calculation shall be binding and conclusive absent manifest error. If the parties have not agreed upon the appointment of the dealers on or before the sixth Commodity Business Day following the first Pricing Date on which the Market Disruption Event or Additional Market Disruption Event occurred or existed, or if a determination of the Relevant Price cannot be obtained from at least three dealers, the next applicable Disruption Fallback shall apply to the Transaction.

Consent to recording

Each Party is entitled to record telephone conversations held in connection with the Transaction and to use the same as evidence. Each Party waives any further notice of such recording and acknowledges that it has obtained all necessary consents of its officers and employees to such recording. In case of discrepancy between a Confirmation and an electronic record of telephone conversation the latter shall prevail for the purpose of confirming the existence of the Transaction and its terms.

Please confirm that the foregoing correctly sets forth the terms of our agreement by returning an executed copy of this Confirmation via facsimile to +32 2 501 5701, together with your list of authorised signatures, within two Business Days of your receipt, either confirming agreement thereto or requesting a correction of any error(s) contained therein. Failure to respond within such period shall not affect the validity or enforceability of this Transaction and shall be deemed to be an affirmation of the terms contained herein, absent manifest error.

Gas Deal Confirmations contacts
Phone : +32-2-519 27 75
Fax : +32-2-501 57 01

Page 4/5

Electrabel NV/SA
Bld. du Regent 8, 1000 Brussels
RPM/RPR Brussels 0403170701
VAT BE 403 170 701

Electrabel

Yours sincerely,

ELECTRABEL NV/SA

By :

Name :    Philippe Sarton
Title :    Deal Confirmation

Confirmed as of the date first above written:

Lehman Brothers Commodity Services, Inc.

By :

Name :
Title :

CATERINA PELLIZZARI
Trader

Gas Deal Confirmations contacts
Phone : +32-2-519 27 75
Fax : +32-2-501 37 01

Page 5/5

Electrabel NV/SA
Bld. du Regent 8, 1000 Brussels
RPM/RPR Brussels 0403170701
VAT BE 403 170 701

# EXHIBIT
# "B"



H
A
N
D

D
E
L
I
V
E
R
Y

_N. Roman_
RECEIVED BY:

_9-17-07_
DATE

_4:19_
TIME

HARRIET ELLEN COHEN
212.704.6341 telephone
harriet.cohen@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0700
212.704.6000 telephone
212.704.6288 facsimile
troutmansanders.com

December 6, 2010

**BY HAND**

Epiq
Attn: Lehman Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

Re:    **Amended Claims of Electrabel NV/SA**

Dear Sirs or Madams:

Enclosed please find two (2) amended proofs of claims for filing in the Lehman Brothers Special Financing, Inc. case and two (2) amended proofs of claims for filing in the Lehman Brothers Holdings Inc. case. We would like to direct your attention to the fact that the claims (i) are on paper that is slightly larger than standard 8.5x11 and (ii) are double-sided.

Thank you for your attention to this matter.

Very truly yours,

Harriet Ellen Cohen
*Paralegal*

HEC

Enclosures

cc:    Hollace Cohen, Esq.

ATLANTA    CHICAGO    HONG KONG    LONDON    NEW YORK    NEWARK    NORFOLK    ORANGE COUNTY
RALEIGH    RICHMOND    SAN DIEGO    SHANGHAI    TYSONS CORNER    VIRGINIA BEACH    WASHINGTON, DC

1433263v1 028356.000001

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

DEC − **6** 2010

EPIQ BANKRUPTCY
SOLUTIONS, LLC

**RECEIVED BY:**

**DATE**

1:40PM

TIME

**EXHIBIT B**

[Executed Evidence of Transfer of Claim]

## EVIDENCE OF TRANSFER OF CLAIM

For good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Electrabel NV/SA ("Seller") does hereby unconditionally and irrevocably sell, transfer and assign unto Barclays Bank PLC ("Buyer") all rights, title and interest in and to the claims of Seller referenced as proof of Claim Number 67243 in the amount of $2,440,499.84 plus all interest, fees and other amounts related thereto (the "Claim") against Lehman Brothers Commodity Services Inc. (the "Debtor") whose Chapter 11 bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of New York ( the "Bankruptcy Court") (or any other court with jurisdiction over the bankruptcy proceedings) as in re Lehman Brothers Commodity Services Inc., Case No. 08-13885.

Seller hereby waives any objection to the transfer of the Claim assigned herein (the "Transferred Claim") to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Transferred Claim and recognizing the Buyer as the sole owner and holder of the Transferred Claim. Seller further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Transferred Claim, and all payments or distributions of money or property in respect of the Transferred Claim, shall be delivered or made to the Buyer.

IN WITNESS WHEREOF, the undersigned has duly executed this Transfer of Claim by its duly authorized representative dated the 23rd day of November, 2011.

SELLER:                                    BUYER:

ELECTRABEL NV/SA                           Barclays Bank PLC

Name: Ulrich WOESLER                       Name:
Title:   Head of Trading                   Title:

Name: Nico VAN WAYENBERGH
Title: Head of Risk Control

-466882 v1

## EXHIBIT A-1

### EVIDENCE OF TRANSFER OF CLAIM

For good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, **Electrabel NV/SA** ("Seller") does hereby unconditionally and irrevocably sell, transfer and assign unto **Barclays Bank PLC** ("Buyer") all rights, title and interest in and to the claims of Seller referenced as proof of Claim Number 67243 in the amount of $2,440,499.84 plus all interest, fees and other amounts related thereto (the "Claim") against Lehman Brothers Commodity Services Inc. (the "Debtor") whose Chapter 11 bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of New York ( the "Bankruptcy Court") (or any other court with jurisdiction over the bankruptcy proceedings) as In re Lehman Brothers Commodity Services Inc., Case No. 08-13885.

Seller hereby waives any objection to the transfer of the Claim assigned herein (the "Transferred Claim") to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Transferred Claim and recognizing the Buyer as the sole owner and holder of the Transferred Claim. Seller further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Transferred Claim, and all payments or distributions of money or property in respect of the Transferred Claim, shall be delivered or made to the Buyer.

IN WITNESS WHEREOF, the undersigned has duly executed this Transfer of Claim by its duly authorized representative dated the 23rd day of November, 2011.

SELLER:

**ELECTRABEL NV/SA**

_____

Name:

Title:

BUYER:

**Barclays Bank PLC**

_____

Name: Daniel Crawley

Title: Managing Director