**HEARING DATE AND TIME: December 21, 2011 at 10:00 a.m. (Eastern Time)**

**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile:  (212) 610-6399
John Kibler
Lisa Kraidin

*Counsel to China Development Bank Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
                                                                  :
In re:                                                            :    Chapter 11
                                                                  :
LEHMAN BROTHERS HOLDINGS INC. *et al.*                            :    Case No. 08-13555 (JMP)
                                                                  :
                                                                  :    (Jointly Administered)
                             Debtors.                             :
                                                                  :
------------------------------------------------------------------X

### RESPONSE OF CHINA DEVELOPMENT BANK CORPORATION TO DEBTORS' TWO HUNDRED THIRTY-THIRD OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)

China Development Bank Corporation ("**CDB**"), by and through its undersigned counsel, hereby submits this response (the "**Response**") to the Debtors' *Two-Hundred Thirty-Third Omnibus Objection to Claims (No Liability Derivatives Claims)* dated November 8, 2011 (the "**Objection**"). In support of this Response, CDB respectfully states as follows:

### BACKGROUND

1. Beginning on September 15, 2008 (the "**Petition Date**") and periodically thereafter, Lehman Brothers Holdings Inc. ("**LBHI**") and certain of its affiliates (collectively, the "**Debtors**") commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**Transactions With the Debtors**

2.CDB and Lehman Brothers Special Financing Inc. ("**LBSF**") were party to a 1992 ISDA Master Agreement dated as of March 26, 2007 (as amended, supplemented or otherwise modified from time to time, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**"). LBHI served as Credit Support Provider under the Master Agreement and, further, guaranteed all obligations of LBSF arising thereunder pursuant to that certain Guarantee of Lehman Brothers Holdings Inc. dated July 10, 2007 (the "**Guarantee**").

3.LBHI's bankruptcy filing on September 15, 2008 constituted an Event of Default under section 5(a)(vii)(4) of the Master Agreement. CDB and LBSF were party at that time to nine outstanding transactions under the Master Agreement: four plain vanilla Interest Rate Swaps, two Cross Currency Interest Rate Swaps, two CNY Quanto USD/JPY Range Accrual Swaps, and a EUR IRS with EUR 30s2s Swap (with Global Deal Identifiers respectively being 3672396, 2584175, 2726876, 3627047, 2572632, 2573699, 3480748, 3477608 and 3027704, and together, the "**Transactions**"). On September 24, 2008, CDB acted in accordance with its contractual rights and gave notice to LBSF that an Event of Default had occurred and designated September 25, 2008 as the Early Termination Date in respect of all outstanding Transactions under the Master Agreement. On September 26, 2008, CDB sent LBSF notice of the amount due and payable by LBSF pursuant to section 6(d) of the Master Agreement. As was its right under section 6(d), CDB calculated such amounts by obtaining market quotations from Credit Suisse First Boston. CDB subsequently sent a corrected 6(d) statement on September 27, 2008, to address certain minor errors in the first statement dated September 26, 2008.

4.     LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008.

### CDB's Proofs of Claim

5.     On July 2, 2009, this Court entered an *Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (the "**Bar Date Order**").

6.     Pursuant to the Bar Date Order, CDB timely filed two proofs of claim on September 18, 2009, asserting (i) a direct claim against LBSF in the amount of USD $13,424,373.77 in respect of the obligations of LBSF under the Master Agreement (the "**Direct Claim**") and (ii) a guarantee claim against LBHI in the same amount pursuant to the Guarantee (the "**Guarantee Claim**," and with the Direct Claim, the "**Claims**"). The Direct Claim and the Guarantee Claim were assigned proof of claim numbers 18876 and 18875, respectively, on the Debtors' official claims register.

7.     In addition, on or about October 22, 2009, CDB timely submitted a derivative questionnaire in support of the Direct Claim and a guarantee questionnaire in support of the Guarantee Claim, both accompanied by supporting documentation, to the Debtors' website at www.lehman-claims.com (the "**Questionnaires**").

8.     On November 16, 2009, CDB filed amended versions of the Direct Claim and the Guarantee Claim, numbered 65580 and 65581, respectively, to reflect additional reconciliation work performed in connection with the completion of the Questionnaires. Such amendments had the effect of reducing the amounts asserted in each Claim to USD $13,423,051.71.

### The Debtor's Objection to CDB's Claims

9. On November 8, 2011, the Debtors filed the Objection, in which the Debtors state that "a fair, accurate, and reasonable valuation of the No Liability Derivatives Claims demonstrates that the Debtors do not owe any of the claimants money and that either no amounts are owed to either party or the claimant in fact owes the Debtors money." Objection at ¶ 14. Accordingly, the Objection seeks to disallow and expunge both Claims in their entirety.

### ARGUMENT

### The Debtors Do Not Provide Evidence to Rebut the Claim

10. The Debtors have failed their burden of proof to rebut the validity of the Claims. It is well settled that a properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Further, "because a properly filed proof of claim is deemed allowed until objected to, 'such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's prima facie case.'" *See In re Adelphia Communs. Corp.*, 2007 Bankr. LEXIS 660 at *16 (Bankr. S.D.N.Y. Feb. 20, 2007) (quoting *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987). A claimant only bears the burden of establishing the validity of its claim "'once an objectant offers sufficient evidence to overcome the prima facie validity of the claim.'" *Id.* (quoting *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)). Such evidence must be "in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

11. As filed, the Objection contains detailed descriptions of the efforts purportedly undertaken by the Debtors to review and value claims based on derivatives contracts, including

the collection and analysis of pertinent information and the attempted initiation of discussions with the applicable counterparties. However, the Objection contains no actual evidence or discussion to support the Debtors' proposed disallowance of the Claims. Instead, the Debtors do little more than recite their bare conclusion that based on the "the fair, accurate and reasonable values" of transactions under the Master Agreement as determined by Debtors, the Claims "provide no basis of liability as to the Debtors." Even if this were the standard for the allowance of a claim under section 502 of the Bankruptcy Code, which it is not, the Debtors have not provided any information to support that statement in either the Objection or through informal communications to CDB. CDB performed its calculations consistent with market practice, in a commercially reasonable manner, and in accordance with its rights under the Master Agreement, as is fully set forth in the Claims and the Questionnaires. The Debtors' position is unsupported and fails the evidentiary burden necessary to support an objection to the Claims.

12.    Accordingly, the Objection should be denied with respect to the Claims based on the Debtors' failure to present any basis for the Objection sufficient to negate the *prima facie* validity of the Claims. To the extent that this Court does not overrule the Objection, CDB reserves the right to (a) seek discovery from the Debtors as to their valuation of the Claims; (b) supplement or otherwise amend this Response to the Objection; and (c) request, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amounts of the Claims.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, CDB respectfully requests that this Court (i) deny the Debtors' Objection to the Claims, (ii) allow the Claims in the amounts originally asserted therein, and (iii) grant such further relief as this Court deems just and proper.

Dated: December 7, 2011
       New York, NY

ALLEN & OVERY LLP

By: /s/ John Kibler
John Kibler
Lisa Kraidin
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
john.kibler@allenovery.com
lisa.kraidin@allenovery.com

*Counsel to China Development Bank Corporation.*