Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 08-13555(JMP)

5   - - - - - - - - - - - - - - - - - - - -x

6

7   In the Matter of:

8

9   LEHMAN BROTHERS HOLDINGS INC., et al.

10

11               Debtors.

12

13   - - - - - - - - - - - - - - - - - - - -x

14

15               United States Bankruptcy Court

16               One Bowling Green

17               New York, New York

18

19               November 30, 2011

20               10:01 AM

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25

1

2    UNCONTESTED MATTER re Debtors' One Hundred Eighty-Sixth Omnibus

3    Objection to Claims (Misclassified Claims)

4

5    UNCONTESTED MATTER re Debtors' One Hundred Eighty-Seventh

6    Omnibus Objection to Claims (Misclassified Claims)

7

8    UNCONTESTED MATTER re Debtors' One Hundred Eighty-Fourth

9    Omnibus Objection to Claims (Claims of Westernbank Puerto Rico)

10

11   UNCONTESTED MATTER re Debtors' Two Hundred Thirteenth Omnibus

12   Objection to Claims (To Disallow and Expunge Certain Filed

13   Proofs of Claim)

14

15   UNCONTESTED MATTER re Debtors' Two Hundred Fourteenth Omnibus

16   Objection (To Disallow and Expunge Certain Filed Proofs of

17   Claim)

18

19   UNCONTESTED MATTER re Debtors' Two Hundred Fifteenth Omnibus

20   Objection (To Disallow and Expunge Certain Filed Proofs of

21   Claim)

22

23   UNCONTESTED MATTER re Debtors' Two Hundred Sixteenth Omnibus

24   Objection (To Disallow and Expunge Certain Filed Proofs of

25   Claim)

1

2   UNCONTESTED MATTER re Debtors' Two Hundred Seventeenth Omnibus

3   Objection (To Disallow and Expunge Certain Filed Proofs of

4   Claim)

5

6   UNCONTESTED MATTER re Debtors' Two Hundred Eighteenth Omnibus

7   Objection (To Disallow and Expunge Certain Filed Proofs of

8   Claim

9

10  UNCONTESTED MATTER re Debtors' Objection to the Claim of

11  Wilmington Trust Company as Indenture Trustee (Claim No. 10082)

12

13  CONTESTED MATTER re Debtors' Ninety-Second Omnibus Objection to

14  Claims (No Blocking Number LPS Claims)

15

16  CONTESTED MATTER re Debtors' One Hundred Twentieth Omnibus

17  Objection to Claims (No Blocking Number LPS Claims)

18

19  CONTESTED MATTER re Debtors' One Hundred Seventieth Omnibus

20  Objection to Claims (No Blocking Number LPS Claims)

21

22

23

24

25  Transcribed by:  Lisa Bar-Leib

**Page 4**

```
 1
 2   A P P E A R A N C E S :
 3   WEIL, GOTSHAL & MANGES LLP
 4        Attorneys for Debtors and Debtors-in-Possession
 5        767 Fifth Avenue
 6        New York, NY 10153
 7
 8   BY:   MARK BERNSTEIN, ESQ.
 9
10   WEIL, GOTSHAL & MANGES LLP
11        Attorneys for Debtors and Debtors-in-Possession
12        200 Crescent Court
13        Suite 300
14        Dallas, TX 75201
15
16   BY:   ERIN D. ECKOLS, ESQ.
17
18   MILBANK, TWEED, HADLEY & MCCLOY LLP
19        Attorneys for the Official Committee of Unsecured
20         Creditors
21        One Chase Manhattan Plaza
22        New York, NY 10005
23
24   BY:   BRADLEY S. FRIEDMAN, ESQ.
25        LENA MANDEL, ESQ.
```

Page 5

1

2    CARTER LEDYARD & MILBURN LLP

3         Attorneys for Punjab National Bank (International) Ltd.

4         2 Wall Street

5         New York, NY 10005

6

7    BY:   AARON R. CAHN, ESQ.

8

9    COVINGTON & BURLING LLP

10        Attorneys for Wilmington Trust Company as Indenture

11         Trustee

12        The New York Time Building

13        620 Eighth Avenue

14        New York, NY 10015

15

16   BY:   SUSAN P. JOHNSTON, ESQ.

17

18   DLA PIPER LLP (US)

19        Attorneys for Rakepoll France N.V.

20        125 Avenue of the Americas

21        New York, NY 10020

22

23   BY:   GEORGE B. SOUTH III, ESQ.

24        VINCENT J. ROLDAN, ESQ.

25

Page 6

1

2    DAVIS POLK & WARDWELL LLP

3         Attorneys for Lehman Brothers International (Europe)

4         450 Lexington Avenue

5         New York, NY 10017

6

7    BY:   JAMES I. MCCLAMMY, ESQ.

8

9    GREENBERG TRAURIG, LLP

10        Attorneys for Optique Pty Ltd Atf Optique Super Pension

11         Fund

12        200 Park Avenue

13        New York, NY 10166

14

15    BY:   MARIA DICONZA, ESQ.

16

17    LAW OFFICE OF JOSEPH L. FOX

18        Attorneys for Procesos Controlodas S.A. de C.V. and Jose

19         Ildefonso and Mariana Aldaco

20        One Grand Central Place

21        60 East 42nd Street

22        Suite 2231

23        New York, NY 10165

24

25    BY:   JOSEPH L. FOX, ESQ.

Page 7

1

2    OTTERBOURG, STEINBERG, HOUSTON & ROSEN, P.C.

3          Attorneys for FDIC, as Receiver of Westernbank Puerto

4           Rico

5          230 Park Avenue

6          New York, NY 10169

7

8    BY:   JOHN BOUGIAMAS, ESQ.

9

10   VENTURINI & ASSOCIATES

11         Attorneys for Claimant Lamita Jabbour

12         230 Park Avenue

13         Suite 545

14         New York, NY 10169

15

16   BY:   AUGUST C. VENTURINI, ESQ.

17

18   HOLME ROBERTS & OWEN LLP

19         Attorneys for Millennium Marketing & Management Pty, Ltd.

20         800 W. Olympic Blvd.

21         4th Floor

22         Los Angeles, CA 90015

23

24   BY:   KERRY MOYNIHAN, ESQ.

25         (TELEPHONICALLY)

Page 8

1

2    MCCARTHY, JOHNSON & MILLER

3         Attorneys for California Winery Workers Trust Fund

4         595 Market Street

5         Suite 2200

6         San Francisco, CA 94105

7

8    BY:   ANA HALLMON, ESQ.

9         (TELEPHONICALLY)

10

11    STUTMAN, TREISTER & GLATT

12         Attorneys for Stutman, Treister & Glatt; Elliott; Baupost

13         1901 Avenue of the Stars

14         12th Floor

15         Los Angeles, CA 90067

16

17    BY:   MICHAEL NEUMEISTER, ESQ.

18         CHRISTINE PAJAK, ESQ.

19         (TELEPHONICALLY)

20

21

22

23

24

25

1

2    ALSO APPEARING PRO SE:

3    FRANK COLE

4    GRACE FUNG

5    MANUEL GIL

6    YUEN SUM KWOK

7    EDWARD SCOTT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Be seated.  Good morning.

 3              MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols

 4    with Weil Gotshal for the debtors.  Before we started today's

 5    agenda, I wanted to discuss one brief housekeeping matter.  We

 6    discovered that there was a clerical error with respect to

 7    certain orders attached to the certificate of no objection that

 8    was filed yesterday such that, in certain instances, the

 9    incorrect orders were actually attached.  The correct orders

10    are the proposed orders that were attached to the omnis as

11    originally filed.  And the only changes to those are the

12    nonsubstantive changes that were actually referenced in the

13    CNO.  And we intend to send down the corrected orders later

14    today.

15              THE COURT:  Okay.

16              MS. ECKOLS:  Thank you.  And I'm going to turn the

17    podium over to Mark Bernstein.

18              MR. BERNSTEIN:  Good morning, Your Honor.  Mark

19    Bernstein from Weil on behalf of Lehman Brothers Holdings Inc.

20    and its affiliated debtors.  We have a number of items on the

21    agenda today, about six or seven uncontested items and then a

22    few contested items as well.  So we'll start with the contested

23    (sic) items and we'll take each item in order.

24              THE COURT:  Did you say you're starting with the

25    contested?
```

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 11 of 67

Page 11

1            MR. BERNSTEIN:  I'm sorry.  The uncontested.

2      Uncontested.

3            THE COURT:  That's the right order.

4            MR. BERNSTEIN:  Item number 1 is debtors' 186th

5      omnibus objection to claims and item number 2 is 187th omnibus

6      objection to claims.  These are both identical objections.

7      They both seek to reclassify certain claims that were filed

8      against the debtors as secured claims -- to be classified

9      secured claims as unsecured claims.  These objections have been

10     heard before and these are carryover items.  Certain parties

11     have requested extensions of their objection deadlines.  They

12     either have not objected or have agreed to language in a

13     revised order, which I can hand up to Your Honor, which is the

14     same language we included in prior orders which preserves their

15     right of setoff notwithstanding that their claim is being

16     reclassified as unsecured to the extent they do assert any

17     right in the future.

18            THE COURT:  Why don't you hand that up?

19            MR. BERNSTEIN:  Sure.

20         (Pause)

21            THE COURT:  Okay.  Thank you.

22            MR. BERNSTEIN:  Point you to the language at the

23     bottom of page 2.  That says "This order has no res judicata,

24     estoppel or other effect on any valid rights of setoff, netting

25     and a recoupment in connection with any claims listed on

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 12 of 67

Page 12

1    Exhibit 1 annexed hereto."

2         THE COURT:  Okay.

3         MR. BERNSTEIN:  Based on the inclusion of this

4    language, these two omnibus objections are going forward

5    uncontested and we respectfully Your Honor grant the 186th and

6    187th omnibus objection.

7         THE COURT:  Those are granted on an uncontested basis.

8         MR. BERNSTEIN:  Thank you, Your Honor.  The next item

9    is the debtors' 184th omnibus objection to claims.  This

10   relates to claims filed by the Westernbank of Puerto Rico

11   against each of the debtors in the amount of approximately 139

12   million dollars.

13        The basis for the claim is a repurchase agreement that

14   Westernbank was party to pre-petition with Lehman Brothers Inc.

15   Westernbank asserted in its proof of claim that certain of the

16   securities that were subject to that repurchase agreement were

17   transferred to Barclays as part of the overall sale, the North

18   American capital markets business back in September of '08 and

19   that certain proceeds of the sale may have been allocated to

20   certain of the debtors.

21        After we filed this objection, we received a call from

22   counsel to the FDIC who apparently had been appointed as a

23   receiver for Westernbank over the summer and the spring of this

24   year.  Following certain -- an investigation or a review of the

25   claim by the FDIC and its counsel, they have determined not to

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 13 of 67

Page 13

1    prosecute the claim and are willing to let the objection go

2    through unopposed to the inclusion of certain language in this

3    order as well.

4           The language -- I have a revised order I can hand up

5    to Your Honor and point you to the language as well.

6           THE COURT:  Okay.

7           MR. BERNSTEIN:  The revised language indicates that

8    the FDIC was appointed by a receiver of Westernbank in April of

9    this year and that Westernbank is reserving all rights to

10   pursue claims against LBI and any other claims against the

11   debtors.  And those claims are not affected by this order in

12   any way.

13          Based on the inclusion of this language, Westernbank

14   does not object to this objection -- or did not respond to this

15   objection and consents to have their claims disallowed.  As a

16   result, we request Your Honor respectfully grant the omnibus

17   objection 184.

18          THE COURT:  Based on those representations, the

19   objection is granted.

20          MR. BERNSTEIN:  Thank you, Your Honor.  The next

21   series of omnibus objections relate to claims that were --

22   sorry -- securities that were issued by trust or partnership

23   entities organized in the UK.  These trusts and capital

24   partnerships hold subordinated debt securities issued by LBHI

25   and then used the proceeds of those subordinated debt

Page 14

1   securities to make payments on securities issues themselves by

2   those trusts and partnerships.

3          In omnibus objection 213 to 216, which are each

4   identical, the securities are actually issued by Lehman

5   Brothers UK Capital Funding IV and V.  LBHI provided a guaranty

6   of the payments on the securities issued by Capital Funding IV

7   and V.  However, LBHI's obligations under that guaranty are

8   subordinated obligations.  The guaranty itself provides that

9   the payment on those securities will be paid -- sorry.  They

10  payment on the guaranty will rank equal with other preferred

11  stock of LBHI which, in the Lehman Chapter 11 plan, is included

12  in the equity class because there's no expected distribution on

13  those claims.

14         The debtors have also asserted that the guaranty

15  itself has terminated in accordance with its terms which

16  provide that if the issuer itself, these Capital Funding

17  entities, are dissolved then the guaranty automatically

18  terminates.  And the issuers dissolve automatically upon the

19  dissolution of their general partner which did happen in this

20  case.  So we view the guaranty as having terminated and LBHI

21  not having any liability for this -- for claims based on this

22  guaranty.

23         So we request that all of the claims be expunged based

24  on the grounds of no liability.  We did receive a couple calls

25  from certain creditors who indicated that they may dispute the

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 15 of 67

Page 15

1    disallowance of their claims on those grounds but did not

2    dispute that the guaranty provided that any claim based on the

3    guaranty is subordinated and they would permit their claim or

4    not object to their claim being reclassified as equity.

5            From the debtors' perspective, it does not make a

6    difference in this case.  And we have agreed for those

7    creditors to reclassify their claims as opposed to expunge

8    their claims.

9            THE COURT:  Does the order which you seek today

10   include separate treatment in which certain parties have their

11   claims subordinated and other parties have their claims

12   disallowed?

13           MR. BERNSTEIN:  It does.  It provides that all -- it

14   provides separate paragraphs and separate schedules.  And for

15   the most part, claims are being disallowed or we're seeking to

16   have claims disallowed except to the extent that parties have

17   contacted us and it's, I think, maybe two or three parties.

18   And we do have a separate schedule for those claims.

19           THE COURT:  But the substantive effect is the same

20   from your perspective because the subordination of a claim to

21   equity is the same as no distribution right.

22           MR. BERNSTEIN:  Correct.

23           THE COURT:  Okay.

24           MR. BERNSTEIN:  So based on that, we will submit

25   orders and respectfully request Your Honor grant the 213th,

1  214th, 215th and 216th omnibus objection disallowing certain

2  claims and reclassifying certain other claims as provided for

3  in the order.

4       THE COURT:  I'm prepared to do that but there's

5  someone in the front row who was standing up and then sat down.

6  And I'm not sure if it relates to this.

7       MR. ROLDAN:  Yes, Your Honor.

8       THE COURT:  Please come forward.

9       MR. BERNSTEIN:  I would just say we are only going

10  forward on an uncontested basis.  To the extent we have

11  received responses, we have adjourned those to a later date.

12       THE COURT:  All right.

13       MR. ROLDAN:  Good morning, Your Honor.  I'm Vincent

14  Roldan at DLA Piper, counsel to certain creditors.  I was in

15  contact with Mr. Bernstein last night by e-mail.  I was one of

16  the people that he made reference to.  What he said was correct

17  but I wanted to just clarify that certain of our -- certain of

18  my clients' claims were based not only upon subordinated

19  guaranties issued by the Lehman entity but also on bonds issued

20  directly by Lehman.  So Mr. Bernstein has included language

21  which should clarify that my clients' claims are only being

22  partially reclassified and that the order only applies to that

23  portion of the claim which relates to the bonds based on the

24  subordinated guaranties and it has no effect on the other

25  bonds.  And I believe that's what the order says and I believe

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 17 of 67

Page 17

1    that's the intent, Your Honor.

2              THE COURT:  Okay.

3              MR. ROLDAN:  Thank you.

4              THE COURT:  Thanks for that clarification.

5              MR. BERNSTEIN:  I agree with that representation.  The

6    order will be clear that this order only relates to the ISNs

7    and the securities with those ISNs issued by these Capital

8    trusts.  And any other securities or other claims on the proofs

9    of claim are not affected by this order in any way.

10             THE COURT:  Fine.  With the statements of counsel

11   incorporated in the record, each of the objections will be

12   granted.

13             MR. BERNSTEIN:  Thank you, Your Honor.  The next item

14   on the agenda is objection number 217 omnibus objection.  This

15   is a similar structure to the ones that we were just discussing

16   where there was a capital trust established to hold

17   subordinated notes issued by LBHI and then that capital trust

18   itself issued securities to third party investors.  However, in

19   this case, there was no guaranty issued by LBHI in favor of

20   these notes.  There was a guaranty issued by Lehman Brothers

21   Holdings PLC which is a nondebtor in these cases.  It is an

22   affiliate but it is an entity in the UK for which LBHI is not

23   responsible.  So from the debtors' perspective, there is no

24   liability at all for claims based on guaranties of the

25   securities issued by Lehman Brothers Capital Funding III which

Page 18

1  are included on omnibus objection 217.

2          We will include similar language previously referenced

3  to make clear that these objections only relate to the

4  securities issued by Capital Funding III.  And to the extent

5  there are securities or claims on those proof of claims, they

6  are not affected by this order.

7          Based on that, I would request Your Honor please grant

8  the 217th omnibus objection to claims.

9          THE COURT:  The 217th omnibus objection is granted on

10  an uncontested basis.

11          MR. BERNSTEIN:  Thank you, Your Honor.  The omnibus

12  objection 218 again is a similar structure to what we've been

13  discussing.  The issuers of these securities are Lehman

14  Brothers Holdings Capital Trust III through VI.  And they also

15  hold subordinated notes issued by LBHI.

16          The LBHI guaranty of these notes is not a payment

17  guaranty as it was for the previous notes.  In this case, it

18  was only a performance guaranty so that if these trusts

19  actually received proceeds on their subordinated notes and did

20  not pass them through to the security holders then LBHI did

21  have an obligation to make a payment to those security holders.

22  No one has asserted that that is the case here that these

23  trusts are holding cash that has not been passed through.  They

24  are seeking to collect on a payment guaranty from LBHI which

25  does not exist.

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
Pg 19 of 67
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 19

1        So based on those facts, the debtors do not believe

2    there's any liability for these guaranties and respectfully

3    Your Honor disallow these claims and grant the 218th omnibus

4    objection to claims.

5        THE COURT:  The 218th omnibus objection is granted.

6        MR. BERNSTEIN:  Thank you, Your Honor.  Moving on from

7    these type structures, the next objection on the agenda is an

8    objection to seek to reduce and allow the claims of Wilmington

9    Trust Company.  Wilmington Trust filed a proof of claim as

10   indenture trustee for hundreds of issuances of debt by LBHI.

11   The claim was filed in an aggregate amount of approximately or

12   up to seventy-three billion dollars which represented the

13   initial issuance amount of all those securities in the

14   aggregate.  It did not take into account any repayments that

15   were subsequently made on any of those securities.  So based on

16   that, the debtors believe the actual amount owed on those bonds

17   is significantly less than the asserted amount in the proof of

18   claim.

19       The debtors and Wilmington worked cooperatively

20   together to reconcile their books and records and determine

21   what the appropriate amount and the proper amount was on those

22   securities.  Many of them were simple plain vanilla debt

23   securities where it was just a matter of determining the

24   accrued interest -- the principal outstanding and the accrued

25   interest through the petition date.  The debtors and Wilmington

Page 20

1   were easily able to reconcile those amounts and agree on what

2   the appropriate claim amount is for those securities.

3          There was also a number of securities included on the

4   proof of claim that are structured securities that are not just

5   tied -- that don't just have an interest rate but are tied to

6   some kind of underlying indice or commodity or other movement

7   of the capital markets.  For these securities, the debtors have

8   valued these securities using the structured securities

9   valuation methodologies which they have used for all other

10  structured securities in this case including the ones issued by

11  LBT, LBSN and some of their foreign affiliates.

12         Wilmington has reviewed those methodologies and the

13  valuations of these particular securities and determined that

14  in this case and under these circumstances, the methodologies

15  were a reasonable way to value these securities.

16         Wilmington sent out notices to each of their holders

17  of the proposed reduction of their proof of claim and the

18  specific values of each security.  And I understand that they

19  did not receive any objections to the reducing of their claim.

20  Certain parties also contacted the debtors with questions about

21  the reduction of the claim or the amounts for specific bonds.

22  We had various discussions but at the end of the day, there

23  were no objections filed to the reduction of the Wilmington

24  claim.

25         Since the Wilmington -- a portion of the Wilmington

Page 21

1    claim is based on these structured securities and the -- the

2    valuation of which is not always a precise calculation but

3    there may be room for variability or difference of opinion

4    within a certain range, Wilmington has requested that all

5    holders be deemed to consent to the reduction of the claim and

6    that holders be enjoined from pursuing claims or actions

7    against Wilmington for agreeing to reduce the claim as

8    Wilmington has no economic interest in this claim, they're

9    merely acting as indenture trustee and they don't have express

10   authority in their indenture to take these actions.

11         Based on the fact that holders received notice -- this

12   objection was filed at least thirty or maybe more days before

13   this hearing -- and there were no responses or anyone seeking

14   to challenge the reduction, the debtors believe it is

15   appropriate to grant this objection with all included language

16   in the order.

17         THE COURT:  Is anyone here on behalf of Wilmington

18   Trust who can make an argument as to why this is appropriate?

19         MR. BERNSTEIN:  Yes.  Counsel for Wilmington Trust is

20   present and available to answer your questions.

21         THE COURT:  I'd like to hear from counsel for

22   Wilmington Trust 'cause I view this as an unusual extra added

23   attraction.

24         MR. BERNSTEIN:  I would just add one thing before

25   counsel for Wilmington Trust steps forward.  The language is

Page 22

1   similar to language that has been included in prior orders

2   where indenture trustees or SPVs in other cases have agreed to

3   settle certain derivative claims based on the fact that, again,

4   like here, they didn't have any economic interest and they were

5   acting on behalf of noteholders.

6           THE COURT:  Well, the focus that I have right now --

7   and I'll hear from counsel in a second, is that this is arising

8   in the context of an uncontested objection to the Wilmington

9   Trust claim.  And I haven't been presented with a stipulation

10  or background materials to support what you've just said.

11          MR. BERNSTEIN:  Understood.

12          THE COURT:  Okay.

13          MS. JOHNSTON:  Good morning, Your Honor.  Susan

14  Johnston from Covington & Burling on behalf of Wilmington

15  Trust.  The difficulty that Wilmington Trust faced in working

16  with the debtor to arrive at an agreed claim amount for this

17  claim arises from the fact that the indenture does not

18  authorize the trustee to compromise the amount of the claim.

19  The right to compromise the claim is reserved to the actual

20  noteholders.  In this case, we have something like 800

21  different CUSIP numbers.  We have hundreds of individual

22  noteholders many of which are retail holders.  Some of them are

23  represented -- some of the holders are -- in fact, the large

24  holders in the case have taken positions on the ad hoc

25  committee.  But many, many, many others are small retail

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 23 of 67

Page 23

1    holders.  And I think Your Honor has heard from some of them in

2    other objections in this case.  And I think Your Honor was able

3    to form the conclusion that although these people are

4    intelligent capable people, they are not necessarily educated

5    about bankruptcy process and claims objections and that sort of

6    thing.

7            So we are faced with the difficulty that we are not

8    expressly authorized under the indenture to compromise the

9    claim amount.  The case law is not particularly helpful in this

10   regard under the facts of this case.  Our facts differ from

11   other cases in which indenture trustees have been authorized to

12   modify the terms of payment under the indenture.

13           And the methodology that the debtor has applied to

14   value the structured securities is -- while we have concluded,

15   after considerable analysis and discussion both with the debtor

16   and the committee and the debtor's financial advisors and the

17   committee's financial advisors, reasonable under the

18   circumstances, it is not strictly consistent with the contract

19   terms of the indenture.  That is, it does not -- in every

20   single structured security CUSIP, it does not take that note

21   and apply the contract terms to come up with the derived

22   number.  And there are reasons why the debtor didn't do that

23   that we accept and we think, under the circumstances, it's

24   reasonable for them not to have done that.  But the numbers, in

25   some respects and maybe in all respects, deviate from the

Page 24

1    actual contract terms.  And for the indenture trustee to agree

2    that the claim amount is a fair and reasonable way to resolve

3    this problem, we are concerned it leaves the indenture trustee

4    open to accusations from noteholders down the road that we did

5    not comply with the strict terms of the contract and that we

6    are not strictly authorized under the terms of the indenture to

7    compromise the number.  That's why we requested the language in

8    the order that would protect us from any after-the-fact claims.

9         We based the language that we requested, as Mr.

10   Bernstein said, on orders that Your Honor has entered that

11   protected U.S. Bank in similar situations in this case in which

12   they, as indenture trustee, were asked to agree to certain

13   terms and concepts that were inconsistent with the indenture

14   and for which they had no express authority.

15        THE COURT:  What is the agreement that has been

16   reached here?  As this was set up on the docket, there's an

17   objection to the claim and, at least according to my agenda, no

18   related documents and no responses in respect of that

19   objection.  So what's the documentation that will provide for

20   this protection to your client?  Is there a stipulation of some

21   sort as to an allowed amount of the claim?

22        MS. JOHNSTON:  No, Your Honor.  We had a number of

23   discussions with the debtor about the format that this

24   procedure should take.  One possibility was a 9019 settlement

25   in which we could have had such a stipulation.  The debtor

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 25

1    preferred to take this reduced and allowed approach.  And I'm

2    not in a position to explain that.  I think maybe Mr. Bernstein

3    is in a better position to do that.

4         The underlying process was an extensive negotiation

5    discussion -- analysis.  This is one of those examples that

6    Your Honor has pointed to in the past of the tip of the

7    iceberg.  There a huge amount of discussion and negotiation

8    over many, many months analyzing -- I mean, I think Your Honor

9    can see from the -- from the attachments to the motion and the

10   proposed order how many CUSIPs there are and the changes in the

11   numbers.  I mean, that is, I guess, Your Honor, some

12   documentation of what you're talking about that shows that, in

13   fact, there were changes in the negotiated amount -- in the

14   claimed amount to the negotiated amounts of these numbers.

15        We've also -- in the record, attached to our proof of

16   claim, which is referred to in the motion and I think could be

17   incorporated in the record of this argument for purposes of

18   today's hearing, our proof of claim to which we attached the

19   indenture which does not contain any language authorizing us to

20   do it.  That's part of the evidentiary record, it seems to me,

21   of this hearing -- and the proof of claim background that

22   explains the basis on which we filed the proof of claim and

23   asserted it in the numbers in which we asserted it.  So that

24   reflects the facts of the amount of the claim.  And then the

25   debtors' reduced and allowed objection reflects the new

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 26

1    numbers.

2            If we had not been provided with the relief that the

3    debtor agreed to provide in the order, we would have had to

4    have filed some kind of objection that explained what the

5    debtor has explained and we have explained of the difficulties

6    that Wilmington Trust found itself in when faced with this

7    reduction.

8            I don't know if that is responsive or helpful at all.

9            THE COURT:  No.  It's certainly illustrative of the

10   documents that are in the record.  But from my perspective, I'm

11   hearing this for the first time now.  And simply because of the

12   volume of material that I deal with on the claims docket in

13   addition to all the volume of material that relates to the case

14   as a whole, when I see a docket reference that shows an

15   uncontested item, which is this one, with responses received as

16   none and related documents as none, and then I hear a

17   representation that this is not a plain vanilla resolution of

18   an uncontested claim simply on the basis that what's in the

19   objection is accepted as true because parties in interest in a

20   position with notice to respond have not done so, here we're

21   seeking through representations of counsel what amounts to

22   something akin to a hold harmless to Wilmington Trust in which

23   Wilmington Trust is being protected against potential claims of

24   noteholders that probably had no actual notice that you would

25   be seeking such protection today.  Did they have notice?

Page 27

1          MS. JOHNSTON:  They did, Your Honor.  We provided them

2    with notices through DTC which is the way indenture trustees

3    provide notice to noteholders that we would be seeking exactly

4    this relief.

5          THE COURT:  Okay.

6          MS. JOHNSTON:  We did actually provide them with --

7          THE COURT:  Tell me about --

8          MS. JOHNSTON:  We provided them with a series of

9    notices in which --

10         THE COURT:  Tell me about those notices.

11         MS. JOHNSTON:  Yes, Your Honor.  And we could -- we

12   could certainly supplement the record by providing you with

13   copies of all the notices that we provided if that would be

14   helpful.  I have them here and I can hand them up although that

15   doesn't help the record; it just helps Your Honor see what we

16   did.

17         THE COURT:  Well, tell me about what you did and then

18   we can talk about --

19         MS. JOHNSTON:  Okay.

20         THE COURT:  -- whether there's a need --

21         MS. JOHNSTON:  All right.

22         THE COURT:  -- to supplement the record in some way.

23         MS. JOHNSTON:  We sent out -- throughout the case,

24   we've sent out a number of notices to the noteholders.  On

25   October 15th, 2008, we sent a notice that advised them of the

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 28 of 67

Page 28

1    event of default caused by the filing of the petition.  And

2    that included all of the CUSIP numbers under the indenture.  So

3    it went to DTC and they presumably sent it to all the

4    noteholders.  And that was a generic notice.

5            On February 27th, 2009, we sent out a supplemental

6    notice.  These are not specifically related to this issue but

7    it establishes a course of providing notice to the noteholders

8    over time.

9            We know that the noteholders got the notices because

10   we've gotten hundreds and hundreds of phone calls in response

11   to them.  So we know that the notice provision is effective.

12           THE COURT:  Well, here's my very narrow question that

13   I'm looking to have you respond to.  Did Wilmington Trust

14   provide the noteholders with a notification that Wilmington

15   Trust, in substance, (a)questioned its authority to compromise

16   claims under the indenture; (b)was acting in good faith in

17   order to compromise those claims and was working actively with

18   the debtors to come up with a compromised number; and (c)by

19   virtue of such activity, expected to be held harmless from any

20   claims that the noteholders might have concerning the conduct

21   of Wilmington Trust in its capacity as indenture trustee.

22           MS. JOHNSTON:  Yes, Your Honor.  Not necessarily --

23           THE COURT:  Tell me how that --

24           MS. JOHNSTON:  -- in so many words and not necessarily

25   in one single document, but yes.  I believe we did communicate

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 29 of 67

Page 29

1    that notice, that kind of information to the noteholders.

2        One of the notices that we sent -- but I need to step

3    back a little bit and say, one of the things that we were

4    concerned about was the various iterations of the debtors'

5    valuation methodology for their structured notes which was

6    issued first not with respect to our notes but with respect to

7    the European notes.  And we provided notice to the noteholders

8    of the existence of that valuation methodology which was not,

9    as was the case with our notes although maybe somewhat less so

10   the case with our notes -- did not strictly follow the contract

11   terms and therefore raised the same issues that it raised with

12   our notes.  We provided that notice and a reference to that

13   when the plan came out that referred to the disclosure -- to

14   the valuation methodology.

15       We provided notice of the filing of the second amended

16   plan and disclosure statement and the valuation methodology

17   applicable to structured securities on July 26th, 2011.  We

18   discussed in that notice the valuation methodology.  And I

19   don't have the details.  I mean, I can't -- you don't want me

20   to read it to you, but we discussed the plan and the disclosure

21   statement and the valuation methodology in that notice.

22       On August 11th, 2011, we sent out a notice that did

23   explicitly disclose and notify the noteholders of our proposed

24   action and our request for direction with respect to the

25   resolution of the proof of claim.  In that notice, we talked

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 30 of 67

Page 30

1   specifically with respect to the LBHI structured notes which

2   are the ones that are the tricky ones here with respect to

3   which we need this protection.  We referred the noteholders to

4   the disclosure statement that provided information about the

5   valuation methodology.  We indicated that the debtors were

6   going to apply the methodology to all of the notes including

7   our notes.  We discussed the Court's order of August 10th

8   approving the motion to -- for approval of procedures to

9   determine the allowed amount of claims filed based on

10  structured securities issued or guaranties by the Lehman

11  Brothers Holdings Inc.  And we referred to the committee

12  statement that was filed in support of that motion on which

13  Wilmington relied.

14       Wilmington does not have the expertise in-house to

15  analyze the structured security notes and to come up with the

16  right numbers.  So Wilmington relied heavily on the committee

17  and its professionals in its scrutiny of the valuation

18  methodology and its working through the process with the

19  debtors to come up with the right approach.  And we advised --

20  we told the noteholders about that in this notice.

21       We referred to the provision of the indenture in --

22  pursuant to which "The senior noteholders holding the majority

23  and principle amount of a series of outstanding senior notes

24  have the right to direct the trustee as to the time, method and

25  place of conducting any proceeding for any remedy available to

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 31 of 67

Page 31

1   the trustee with respect to that series subject to the

2   conditions set forth therein."  And pursuant to Section 603 of

3   the indenture, "The trustee is under no obligation to exercise

4   any rights or powers vested in it at the direction of any

5   senior noteholder unless the trustee is provided reasonable

6   security or indemnity against the costs, expenses and

7   liabilities which might be incurred by the trustee's compliance

8   with any direction."

9        Then we advised them that "FTI had concluded that the

10  pre-petition valuation methods used by LBHI were generally

11  consistent with comparable methods employed by broker-dealers

12  for purposes of valuing securities and their financial

13  statements at the time the general ledger values were

14  determined."

15       And then in bold uppercase language, we said

16  "Accordingly, the trustee presently intends to accept the

17  allowed claim amounts for the LBHI structured notes that are

18  produced by the valuation methodology as set forth on the

19  structured securities list unless directed otherwise in

20  accordance with the terms of the indenture."  And then "Any

21  direction must be from holders of a majority and principle

22  amount of the relevant series of outstanding senior notes and

23  include an appropriate indemnity.  The trustee will determine,

24  in its sole discretion, whether any such direction and

25  indemnification is effective under the terms and conditions of

1    the indenture."

2         So in this one, we told them what we were planning to

3    do.  We did not tell them in this one -- this notice that we

4    were seeking protection.  That came --

5         THE COURT:  Did you tell them anywhere that you were

6    seeking protection?

7         MS. JOHNSTON:  I'm sorry?

8         THE COURT:  Did you tell them anywhere that --

9         MS. JOHNSTON:  Yes, we did.

10        THE COURT:  -- you were seeking protection?

11        MS. JOHNSTON:  We told them that in the last -- in the

12   notice that we sent on October 3rd in which we said "The

13   trustee" -- and in bold but not uppercase language -- "The

14   trustee has requested that any order entered in connection with

15   the objection enjoin the holders of the LBHI structured notes

16   from asserting claims against the trustee arising from its

17   negotiation of and consent to the reduction and allowance of

18   the global proof of claim as it relates to the LBHI structured

19   notes."

20        This notice went out on October 3rd.  And the deadline

21   for filing responses to the objection was November 14th.  So

22   the noteholders had -- I don't know exactly how long it takes

23   DTC to get the notices out.  But I would say at least four

24   weeks if not more to review this material and to respond and

25   object.  So --

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 33 of 67

Page 33

1         THE COURT:  And I take it no noteholder contacted

2    Wilmington Trust or its counsel with respect to this request

3    for protection.

4         MS. JOHNSTON:  That's correct.  We did get, as

5    debtor's counsel got, calls asking about the actual

6    calculations.  But we got no communication from any of the

7    noteholders about the request for protection.

8         THE COURT:  Okay.

9         MS. JOHNSTON:  And I would be very happy to supply all

10   of this in an affidavit if the Court prefers.

11        THE COURT:  I think that, for record purposes, it

12   would be desirable, perhaps most desirable for your client,

13   come to think of it, that there be a factual record to support

14   the requested relief.  And I think that what makes the most

15   sense is to defer entry of any order with respect to the

16   debtors' now uncontested objection to the Wilmington Trust

17   claim in its capacity as indenture trustee to the next hearing

18   unless that's a problem from a case administration perspective.

19   And I'll hear about that in a moment -- so that the record is

20   supplemented.  And we'll then be able to review the actual

21   documents that you've referenced in your presentation to

22   support the entry of any order.

23        MS. JOHNSTON:  Yes, Your Honor.  I'd be happy to do

24   that.  I don't know anything about a case administration --

25        THE COURT:  Mr. Bernstein, is there a timing issue

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 34 of 67

Page 34

1    with respect to this?

2            MR. BERNSTEIN:  There's not a timing issue.  The next

3    hearing is December 21st and that's fine.  But the majority of

4    the dollars, the reduction of the dollars of the claim, relate

5    to the plain vanilla notes to which the releases and the

6    protection that Wilmington is looking for does not apply.  The

7    order specifically only applies that to the structured

8    securities.  So perhaps it would be possible to bifurcate the

9    orders.  We can have one order, if it would work for Your

10    Honor, entered on the vanilla note which does note have the --

11    any of these protections for Wilmington.  It is simply a reduce

12    and allow which there were no responses and it just says that

13    portion of the claim will be reduced and allowed from these

14    dollars, whatever it is, from one dollar amount to another.

15            THE COURT:  Were you always planning to have two

16    separate orders?

17            MR. BERNSTEIN:  No.  But the order -- the language in

18    the order that relates to the protection for Wilmington

19    specifically and expressly provides that it only relates to the

20    reduction of the claims based on structured -- to the portion

21    of the claim based on the structured securities.

22            THE COURT:  What's the relative dollar amount involved

23    in the two categories?

24            MR. BERNSTEIN:  I don't know.  I think maybe

25    Wilmington's counsel can speak to that.

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 35 of 67

Page 35

1          MS. JOHNSTON:  I can't make a representation about

2     this in which I have absolute confidence.  But my recollection

3     is that of the forty-eight billion face amount of the note,

4     about six billion is structured securities.  It's a fairly

5     small percentage of the overall amount.  Is that --

6          MR. BERNSTEIN:  That sounds --

7          MS. JOHNSTON:  -- consistent --

8          MR. BERNSTEIN:  -- consistent with about what I know

9     as well.

10          MS. JOHNSTON:  Yeah.

11          MR. BERNSTEIN:  And these are big dollar amounts for

12     the debtors in contemplation of potential confirmation and

13     reserves for distributions.  It's not urgent.  If we have to go

14     to December 21st, that's fine.  But to the extent that we can

15     get the claim significantly reduced before then, I know that

16     would be appreciated by the debtors.

17          THE COURT:  Well, if you're prepared to have an order

18     that solely relates to the plain vanilla notes, as you've

19     termed them, and that does not include any reference to

20     Wilmington Trust, that can be entered prior to the December 6th

21     start of confirmation.  I would prefer that there be no order

22     entered that makes any reference to the Wilmington Trust issue

23     until we have supplemented the record.

24          MR. BERNSTEIN:  That's fine.  We can certainly

25     bifurcate the orders that way and the order will not reference

LEHMAN BROTHERS HOLDINGS INC., et al.

1    Wilmington in any way.

2         THE COURT:  Okay.  Does anyone else have any comments

3    on this issue which has evolved without a lot of prior notice

4    and at least in terms of a review of the agenda.  Does the

5    committee have any comment?  Does any other party in interest

6    have any comment?

7         MR. FRIEDMAN:  Bradley Scott Friedman on behalf of the

8    official committee of unsecured creditors.  Just at the outset,

9    Wilmington Trust Company is a member of the committee.  And to

10   the extent that we considered this with particular respect to

11   them, they would have been screened.  I think we're fine

12   proceeding in the way that Mr. Bernstein represented.  If the

13   Court would like, we could reach out to the committee and see

14   if they would like to file something in support of this course

15   of action as well.

16        THE COURT:  I don't need to hear anything more from

17   the committee.

18        MR. FRIEDMAN:  Okay.  Thank you, Your Honor.

19        THE COURT:  Okay.  If there are no other comments, the

20   objection to the claim will be granted on the basis of a record

21   that has been established solely with respect to the notes that

22   are not structured notes.  And there'll be a follow-up order

23   with respect to the structured note component of the objection

24   subsequent to the filing of a supplemental declaration

25   concerning the notice to noteholders with respect to this

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 37 of 67

Page 37

1    question.  And it will be heard on December 21 presumably as an

2    uncontested matter.

3              MR. BERNSTEIN:  Thank you, Your Honor.  That will make

4    sense and we will take the appropriate actions.

5              THE COURT:  Okay.

6              MR. BERNSTEIN:  With that, I will turn the podium over

7    to Erin Eckols to handle the contested portion of the agenda.

8              THE COURT:  Okay.

9              MR. BERNSTEIN:  Thank you.

10             MS. ECKOLS:  Your Honor, Erin Eckols with the debtors.

11   I will be handling contested agenda items 11, 12 and 13 which

12   are carryover claims from omnis 92, 120 and 170.  As all three

13   items present the same issue, I propose to handle them

14   together, if that is acceptable to Your Honor.

15             THE COURT:  That's fine.

16             MS. ECKOLS:  The debtors' 92nd, 120th and 170th

17   omnibus objections all seek to disallow and expunge claims for

18   failure to obtain a blocking number in violation of this

19   Court's bar date order.  Today we are proceeding as to the ten

20   claims set forth on Exhibit A to the omnibus reply filed by the

21   debtors at docket entry 22677.

22             The basis for the omnibus objections is

23   straightforward.  The bar date order required claimants seeking

24   to recover for Lehman program securities to obtain a blocking

25   number.  It is undisputed that the ten claims at issue are

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 38 of 67

Page 38

1    seeking to recover for Lehman program securities and that the

2    claimants did not obtain a blocking number.  Accordingly, these

3    ten claims do not comply with the critical component of the bar

4    date order, the blocking number requirement, and should be

5    disallowed.

6         The debtors' position is set forth at length in the

7    omnibus objections and the omnibus reply.  And I will not

8    repeat all those arguments but instead touch on a few key

9    points that go directly to the crux of the matter.

10   Specifically, the three things I want to discuss are why the

11   blocking number requirement is important and not a mere

12   technicality; that the bar date order did, in fact, require the

13   claimants to obtain a blocking number; and the prejudicial

14   effect of excusing the claimant's violation and allowing them

15   to rely on extrinsic evidence in lieu of a blocking number.

16        The blocking number requirement has been critical to

17   the reconciliation of the Lehman program securities claims.

18   The Lehman program securities procedures were specifically

19   created to address the inherent complexity in reconciling

20   claims based on over 4,000 securities for which there was not

21   an indenture trustee to file on behalf of the tens of thousands

22   of beneficial holders that existed worldwide.

23        The debtors needed a method by which they could

24   validate those claims as the debtors did not know the identity

25   of the beneficial holders, the amounts held and the trading

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 39 of 67

Page 39

1    activity for those securities.  For example, a security could

2    have been traded every day for the sixty days leading up the

3    securities program bar date.  And every single one of those

4    holders could have filed a claim.  The request for a blocking

5    number froze trading on that piece of the security through the

6    securities program bar date and allow the debtors to confirm

7    that the party filing the claim actually held the security and

8    in what amount.

9             In my example, the blocking number would prevent the

10   debtors from making duplicative payments on all sixty claims

11   filed as opposed to on the one claim by the actual holder of

12   the security on the bar date.

13            The Lehman program securities procedures, and more

14   specifically the blocking number requirement, is the method the

15   Court ordered that claimants follow in order to prevent invalid

16   or potentially duplicative distributions.  It is a requirement

17   imposed for Lehman program securities claims due to the unique

18   circumstances of these cases and these securities.  It is not a

19   mere technicality but an essential component of the Lehman

20   program security procedures.

21            The bar date order, as such, required Lehman program

22   securities claimants, regardless of whether or not they had

23   previously filed claims, to obtain a blocking number.  The

24   claimants contend that they are exempted from obtaining a

25   blocking number because they submitted claims prior to entry of

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 40

1    the bar date order.  In doing so, they rely on a strained

2    interpretation of the bar date order that ignores the most

3    relevant language on that issue.  The most relevant language

4    being the bar date order's expressed statement that the Lehman

5    program securities procedures, of which the blocking number is

6    one, must be followed "notwithstanding anything to the contrary

7    contained in this order".

8        The langu --

9        THE COURT:  I'm going to stop you there because I've

10   been spending some time with the objections and the bar date

11   order.  And this is an area which I think is less about whether

12   or not there is language that can be interpreted in the manner

13   argued by the debtor in this objection and more a question

14   about whether or not a party who receives the bar date order

15   itself and reviews it reasonably can be confused with respect

16   to what is presented in that notice.  And having reviewed the

17   language with reference to the objections, I believe that the

18   debtor has a weak argument with respect to the notwithstanding

19   language.  And I think it's particularly weak because a party

20   who has been particularly diligent -- we're talking about a

21   class of creditors here that isn't in the zone of a late filer

22   but rather is in the zone of an early filer of a proof of

23   claim, a creditor that was so concerned about asserting its

24   claims in these cases that it didn't wait for the bar date

25   notice; it filed the proof of claim on a Form 10 or on a form

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 41

1   that was equivalent to a Form 10.

2          That being so, and given the fact that the notice

3   makes it clear that unless a party is bringing a claim based

4   upon a derivative or a guaranty claim, there is no obligation

5   to file a proof of claim if one has been previously filed, I

6   have some real concerns about this aspect of your argument

7   which, in effect, goes to a later portion of the bar date order

8   and says that the notwithstanding language trumps everything.

9   That might have been true if the paragraph that dealt with the

10  filing of a proof of claim earlier than the bar date had

11  included in bold language or very, very clear language anybody

12  who has filed a proof of claim with respect to a program

13  security needs to get a blocking number.  And you need to, in

14  effect, do this process all over again.  And we're sorry about

15  that 'cause it may be an inconvenience but it's important to

16  the debtor.  And let's explain why it's important to the debtor

17  so that parties who are retail holders would have some reason

18  to take appropriate action as opposed to be lulled into a sense

19  that we don't have to do anything.

20         So that's my concern with respect to this issue and

21  I'm letting you know it now.

22         MS. ECKOLS:  Thank you, Your Honor.  In response to

23  that, there are other ways other than the bar date order

24  language where I think you could specifically say that

25  claimants were put on notice that they had to acquire a

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 42

1  blocking number.  And specifically in the program securities

2  bar date notice, it specifically stated you must obtain a

3  blocking number.  And those notices or similar notices were

4  also posted on the Lehman Brothers Treasury trustee's website

5  and the Lehman Brother securities.  So in that respect, the

6  language in those notices is certainly clearer than what was in

7  the bar date order.

8        Taken the claimants' interpretation, however, would

9  effectively give the notwithstanding anything to the contrary

10  in this order language no effect.  And arguably, the result of

11  this would be that anyone who filed a claim prior to the entry

12  of the bar date order would not have to comply with the Lehman

13  program securities procedures at all.  And that was certainly

14  not the intent of the careful negotiation and crafting of those

15  procedures.

16        THE COURT:  But it's not clear to me -- and I was

17  around when these procedures were being negotiated but I was

18  not a party to the negotiations.  It's not clear to me that

19  much attention was given to parties that had already filed

20  proofs of claim.  It was prospective the concern at the time of

21  crafting of the bar date procedures, some of which are unique,

22  and the blocking number provision is one such unique provision,

23  was on a go-forward basis to make sure that parties who are

24  responding to the order did so in compliance with the

25  procedures.  And when I have, in the past, made statements

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 43 of 67

Page 43

1    either from the bench or in written opinions concerning the

2    importance of the bar date order, it was to maintain the

3    integrity of that order, at least in my mind, prospectively to

4    make sure that people who received notice were being uniformly

5    treated.

6         So I don't know that what you're saying is entirely

7    true in that a party who has filed the proof of claim and can

8    establish through extrinsic evidence that that party would have

9    qualified for a blocking number because that party was, in

10   fact, in possession of the relevant security at times

11   significant to the proof of claim suggests no harm to the

12   debtor.  And not meaning to diminish the power of your first

13   argument, it does make the blocking number issue seem to be a

14   mere technicality.

15        MS. ECKOLS:  Addressing the kind of no harm no foul

16   point or what's the prejudice to the debtors, allowing the

17   claimants to introduce extrinsic evidence of ownership of the

18   securities does not effectively substitute for a blocking

19   number.  And the reason for that is because the blocking number

20   was also designed to prevent the issue of duplication.  And if

21   an individual claimant says but, here, I own the security; I

22   didn't get a blocking number but I owned it, I should get it,

23   the risk exists that his claim is actually within a bank or

24   broker or larger claim that one of those institutions filed on

25   behalf of a lot of the holders and their clients where they

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 44 of 67

Page 44

1    would get one blocking number for a -- representing multiple

2    holders' positions.  They would file that claim.  And there's

3    no way for the debtors to know whether or not that individual

4    claimant's position is within that larger claim.  So that is

5    why the blocking number requirement and -- is important.  And

6    it doesn't -- extrinsic evidence of ownership doesn't cure all

7    the issues or address all the issues that the blocking number

8    requirement was designed to address.

9        THE COURT:  But can't the issue that you just

10   described be resolved, with some labor obviously, by performing

11   some diligence to be assured that the security in question is

12   not the subject of some other program security that has been

13   filed?  And can't that burden be placed on the claimant if the

14   claimant, in effect, would need to demonstrate it's an

15   independent claim and it's not part of anybody else's claim?

16   And to the extent that there's some need to go to Epiq or to

17   debtors' professionals in order to facilitate the process, it

18   could be a collaborative effort.

19       MS. ECKOLS:  Well, one, I do want to point out that

20   the debtors have, I think, exercised extreme diligence in the

21   reconciliation of these particular claims and spent thousands

22   of hours looking into whether certain claimants' claims were

23   covered or could be covered by one of these institutional

24   clients because we did not want to object and disallow

25   someone's claim that actually had a blocking number but it was

1    in someone else's possession.  So we did try to make sure we

2    weren't doing that.

3         The issue on some of these is that it's not as simple

4    as pulling all the bank and broker claims and looking at them

5    because the bank and brokers didn't necessarily break out who

6    they were filing on behalf of.  If they did and they actually

7    had names and we could match them up, we could match up the

8    blocking number and we would not have objected to those claims.

9    So it is not as easy as it might be --

10        THE COURT:  I don't think anything in this process is

11   easy.  And don't get me wrong in suggesting that I think it's

12   just a matter of putting together a couple of people in a room

13   and then come out with an agreement.  I'm confident that it's

14   harder that.  But the blocking number aspect of the bar date

15   order is perhaps the most atypical aspect of any bar date order

16   that certainly I've ever approved.  And I suspect it may be the

17   most atypical aspect of any bar date order that has ever been

18   approved.  And that's partly due to the nature of the claims

19   that arise out of the Lehman program securities themselves.

20        I know that we've had earlier discussions on the

21   record and I had my memory refreshed by the transcript of the

22   hearing from October of last year when Mr. Waisman was talking

23   about other objections that had been lodged by the debtors to

24   certain claimants that had not obtained blocking numbers.  And

25   there's some colloquy relating to the subject.  That colloquy

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 46 of 67

Page 46

1   illustrates, if anything, the Court's confusion as to the

2   proper role of these blocking numbers in the claims allowance

3   process.  And I suppose I don't have much greater clarity today

4   than I had a year ago except I now have by virtue of the papers

5   that have been filed by counsel on behalf of claimants a deeper

6   appreciation of some of the confusing language in the bar date

7   order itself as it relates to proofs of claim that were filed

8   prior to the entry of the bar date order itself and prior to

9   the advent of the blocking number concept.  And it's, in part,

10  for that reason, and I'm letting everybody know this because I

11  think I'm fairly transparent on this point, that I am

12  sympathetic to the objections that have been lodged to the

13  debtors' request to disallow these claims particularly as to

14  those claims that were filed early.

15       So I hear your argument but I think that this is an

16  area in which the claimants legitimately can assert confusion

17  based upon the language of the bar date order that requires an

18  experienced lawyer to unravel.

19       MS. ECKOLS:  Well, I do think that the securities

20  program bar date notice that was distributed was clearer to the

21  extent the claimants had confusion 'cause it did state

22  specifically you must obtain a blocking number as did the

23  securities program proof of claim.

24       Going to your point about what diligence could be

25  done, at this point, the claimants haven't offered to take the

Page 47

1    step of working with their bank or broker to confirm that there

2    is not duplication.  They've provided -- a lot of them have

3    offered extrinsic evidence of ownership but not taken the

4    additional step of establishing, no, my claim is definitely not

5    included on anyone else's.  And absent the blocking number,

6    it's just something the debtors cannot be a hundred percent

7    sure of.

8              THE COURT:  Can you explain something to me --

9              MS. ECKOLS:  Sure.

10             THE COURT:  -- that I don't appreciate?  If there is a

11   retail holder of a Lehman program security that's held in an

12   account --

13             MS. ECKOLS:  Okay.

14             THE COURT:  -- a brokerage account, and there are

15   certain declarations that confirm those including those

16   submitted by Mr. Fox's client -- clients, plural.  They say,

17   and I'm just using them as an example, we owned the security

18   before there was a bankruptcy.  We owned the security

19   throughout the bankruptcy and never traded it.  And we own the

20   security now.  And here's a copy of our brokerage statement

21   which lists the security.  Just using that as an example, how

22   is it possible for anyone else to have obtained a blocking

23   number relative to that security since there are no indenture

24   trustees here?  There are no other parties in a position, as a

25   matter of law, as I understand it, to act in the same role as,

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 48

1    say, Wilmington Trust was acting earlier in today's hearing.

2    And the very justification for the Lehman program security

3    protocol was these are securities that were issued without

4    indenture trustees.  And so, we need to make sure that the

5    party making the claim isn't constantly trading to somebody

6    else making a claim so that we end up having a mountain of

7    claims relating to the same instrument.  I'm just wondering how

8    that issue could come up.

9        MS. ECKOLS:  Right.  Well, we have encountered several

10   instances where banks and brokers actually filed claims on

11   behalf of their clients and just didn't tell them.  So whatever

12   the reason for that, we know it did actually in fact happen.

13       THE COURT:  So how would a blocking number protect?  I

14   mean, this is the sort of thing that can happen in any

15   circumstance where there are duplicate claims?

16       MS. ECKOLS:  Well, the broker could have obtained the

17   blocking number on their own or maybe the broker, if they held

18   the securities in a different name -- the problem is, we just

19   can't -- we just can't a hundred percent, sure, say that there

20   isn't any duplication.

21       Now the risk -- let's say there's a spectrum between

22   zero and a hundred percent of the risk of duplication and the

23   debtors cannot a hundred percent eliminate the risk of

24   duplication but there is a spectrum.  And it would be

25   dependent on each of the particular securities at issue and how

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 49 of 67

Page 49

1    much was outstanding and how much blocked where you would end

2    up on, well, gee, we have a low risk of duplication, we have a

3    medium risk of duplication or we have a high risk of

4    duplication because of the lack of a blocking number.  So the

5    risk is going to be there just by the simple fact that these

6    claimants did not comply.

7              THE COURT:  Well, I understand that there's -- I hear

8    your argument and I understand that there is a risk that cannot

9    be reduced to absolute zero.  But it doesn't seem to me that

10   it's a risk that can't be accommodated through diligence.  Some

11   of these claimants are from Mexico.  Some of these claimants

12   are from Australia.  I'm not trying to limit the globe to those

13   countries but those are claimants whose papers I recall

14   reviewing.  And I recall, as I was reviewing them, thinking not

15   only is the notion of the blocking number for purposes of

16   Lehman program securities a complicated additional feature for

17   someone who is in the United States and in a position to do

18   diligence with respect to the steps that must be followed to

19   preserve a claim, but for someone in western Australia or for

20   someone in Mexico, particularly where there's some language

21   issues that may be involved, it seems to me that the confusion

22   feature of this moves higher up the scale.

23              So I hear all that you're saying.  And I'm going to

24   hear from the other parties if they wish to be heard on this.

25   Based upon my review just of the papers, I believe that the

LEHMAN BROTHERS HOLDINGS INC., et al.

1    strict application of the no blocking number objection to

2    parties that filed their proofs of claim prior to the issuance

3    of the bar date order itself that including the blocking number

4    requirement should be excluded from that requirement if those

5    claimants have the capacity to demonstrate through acceptable

6    proof that they continue to hold the securities at issue and

7    would have qualified for a blocking number had they applied for

8    a blocking number by the bar date in effect making this a no

9    harm no foul.  But I also recognize that this imposes

10   potentially some incremental administrative burden on the

11   estate to confirm that that party is not double dipping or

12   triple dipping.  And I don't know how hard that is.  But it

13   seems to me that it should be relatively straightforward.  We

14   know who the broker is or who the broker is claimed to be that

15   has possession of the relevant security.  And it should be

16   possible to track whether or not A and Z Bank or a Mexican

17   broker-dealer obtained a blocking number.  Find out all the

18   blocking numbers obtained by that entity.  Do any of those

19   blocking numbers relate to the security?  If the answer is no,

20   there's no duplication.  If the answer is yes, there may be

21   duplication.  I don't know.  It seems to me that it can be

22   done.

23          MS. ECKOLS:  Well, from the debtors' perspective, it

24   was certainly not the intent that the Lehman program securities

25   procedures would -- or that the people who filed claims prior

1    to entry of the bar date order would be exempted from the

2    Lehman program securities procedures.

3         THE COURT:  I totally understand that.  And I'm not

4    suggesting by what I've just said that I have just eviscerated

5    an important feature of the bar date order.  I'm merely saying

6    that those parties who are in court and have objected to the

7    application of the blocking number requirement to their claims

8    and who can demonstrate that they hold the securities, would

9    have qualified for a blocking number and was justifiably

10   confused as to the language of the bar date order have

11   qualified for this exemption that's personal to them because

12   they've demonstrated that, as to them, this is something that

13   provided enough confusion including, in certain instances,

14   telephone calls to Epiq confirming that their claim was filed

15   and they assumed, rightly or wrongly, I don't have to do

16   anything more.  And the language of the bar date order that is,

17   in retrospect, imperfect with respect to notifying those

18   parties that have already filed claims based on program

19   securities that they need to do more because a fair reading of

20   at least one of the paragraphs tells people who have already

21   filed proofs of claim that they don't have to do anything

22   unless they have claims based on derivatives or guaranties.

23        MS. ECKOLS:  That approach does raise the question of

24   what would be deemed acceptable proof and does open the door to

25   certain evidentiary issues that -- and additional burdens in

Page 52

```
 1    the claims reconciliation process.  And there's always the risk
 2    of more people coming forward and raising this issue and saying
 3    me, too; me, too.
 4            THE COURT:  I think that's okay because what we're
 5    engaged in here is a balancing of the integrity of the claims
 6    process, on the one hand, and the rights of individual
 7    claimants, on the other.  And in fairness, the rights of
 8    individual claimants should trump administrative convenience.
 9            MS. ECKOLS:  Understood.  I think that the debtors'
10    position is that the blocking number requirement is something
11    more than an administrative convenience.
12            Unless Your Honor has any other questions, I'm going
13    to turn the podium over to whoever would like to speak next.
14            THE COURT:  Okay.
15            MR. FOX:  Your Honor, may I be heard?
16            THE COURT:  Sure.  Mr. Etkin, you walked in the room
17    and you're leaving.  Were you just here to observe?
18            MR. ETKIN:  A little confusion, Your Honor.
19            THE COURT:  Did you think this was the confirmation
20    hearing?
21            MR. ETKIN:  Yeah.  My watch was a week off.  I think
22    something with the agenda, Your Honor, which I'll have to clear
23    up.
24            THE COURT:  All right.
25            MR. ETKIN:  Thank you for noticing me.
```

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 53 of 67

Page 53

1          MR. FOX:  Good morning, Your Honor.  Joseph Fox.  I

2     represent two creditors, Procesos Controlodas, on objection

3     number 92, and Jose Ildefonso and Mariana Aldaco on objection

4     170.  And, Your Honor, to follow up on some of the comments and

5     questions that the Court had, the process under which this

6     provision was presented to the Court was not in the original

7     application and, as the Court indicated and reflected on, was

8     between a discussion among the debtor, the creditors' committee

9     and some others.

10         In this case in particular, these were specially

11    prepared securities designated for one particular broker-

12    dealer.  The prospect of being able to determine who the

13    holders -- and there were approximately seventy-five of them --

14    who the holders are, it was very simple.  Go to the broker-

15    dealer.  They have -- it was tailored for them.  It is theirs.

16    They can detail it.  And in fact, in these two cases, we were

17    able to follow and trace those claims and present proof to the

18    Court the idea that they need to -- that there's a mountain

19    that's just unimaginable to overcome here is -- I know from the

20    case -- from my client's case is just not relevant.  We have

21    presented to the Court, as the Court had indicated, proof of

22    the holdings continuously.

23         What the debtor is proposing to do here is really to

24    abrogate the rights of a creditor in its regular claims

25    process, which is what goes on in bankruptcy cases all the

08-13555-mg    Doc 23106    Filed 12/01/11    Entered 12/08/11 10:50:52    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 54 of 67

Page 54

1    time; claims determination is what the Court does.  And what

2    happened here, an objection was made and a proof of claim is

3    prima facie proof of the claim itself.  An objection is made.

4    And the claimant then -- if it's an appropriate objection, if

5    it rises to the level of calling it into question, the claimant

6    then has a right to prove its claim or has the burden of

7    proving its claim.

8           The proposal here by the debtor is to really abrogate

9    that right, to say if this wasn't done, you can't prove your

10   claim.  And that conflicts with Section 502(b) and with

11   Bankruptcy Rule 3001.  That's unfair.  I think certainly in

12   this case and the papers that are presented in opposition to

13   the debtors' motion I think bear out a lot of other arguments

14   with respect to the propriety of this provision and whether it

15   can or can't have been made -- or couldn't have been made

16   previously.  I'll rest on the papers that were submitted.

17          But here, these claimants did everything that they

18   were supposed to do.  I filed these proofs of claim in February

19   fearful that -- not to miss a bar date, do it timely, put the

20   debtor on notice.  Nothing behind this other than try to comply

21   in all promptness with the process that was going on.  Indeed,

22   when the bar date order came out, I called Epiq.  And I

23   presented that question and I was told at that time that

24   another proof of claim wasn't required.  I don't have

25   documentation; I don't have an e-mail.  But it was confusing.

LEHMAN BROTHERS HOLDINGS INC., et al.

1    I called Epiq and Epiq told me that a claim wasn't required.

2    And we didn't at that time amend the claims.  Later on, we did

3    amend the claims.  The underwriter did get blocking numbers, a

4    few of them.  There was some confusion.  But that was the case

5    here where we tried as much as we could to follow the rules and

6    comply with the Court and with the process here.

7            I think that --

8            THE COURT:  Let me break in and ask you a question

9    because you said in certain instances, if I heard you right,

10   you said underwriters obtained blocking numbers.  I don't know

11   what you mean.

12           MR. FOX:  Well, as I understand it -- and I'm not a

13   securities person; I do bankruptcy work.  When -- there were

14   underwriters who obtained blocking numbers for various holders.

15   They did that -- they did that.

16           THE COURT:  I don't know what you mean when you -- I

17   don't understand you.

18           MR. FOX:  The under -- as I understand it, the

19   underwriter, if -- I'm not exactly sure how these things are

20   held, but blocking numbers had been obtained in some cases.

21           THE COURT:  Blocking numbers had been obtained in some

22   cases with reference to your clients?

23           MR. FOX:  To some of them.  I believe to some of them,

24   yeah.

25           THE COURT:  Well, but you're saying supports the

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 56 of 67

Page 56

1    debtors' argument that there's the potential here for exactly

2    what the blocking number --

3          MR. FOX:  No.

4          THE COURT:  -- is designed to avoid.

5          MR. FOX:  Your Honor --

6          THE COURT:  You're filing --

7          MR. FOX:  No.  The --

8          THE COURT:  You're filing an objection to something

9    that may already be the subject of somebody else's claim.

10         MR. FOX:  No, no.  That is impossible.  That did not

11   happen.  There was no blocking number obtained for -- these

12   securities were held by these debtors -- by these claimants

13   from the beginning until the end.  And there were no other

14   blocking numbers.  There's no allegation by the debtor that

15   there was another blocking number, that there's another holder.

16   We provided proof that these claimants have held these claims

17   throughout.  And these are the ones that are before the Court

18   today and these are the ones that have been proven are holders

19   of these claims.  And they were and they are.

20         THE COURT:  Okay.

21         MR. FOX:  Thank you.

22         MR. CAHN:  Good morning, Your Honor.  Aaron Cahn,

23   Carter Ledyard & Milburn for the Punjab National Bank.  Your

24   Honor, a lot of what I was planning to say in response to the

25   response that we received a couple of days ago has been covered

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 57

1    in your colloquy with Ms. Eckols so I won't repeat it.  I just

2    wanted to note a couple of quick points.

3          As we noted in our response to the initial objection,

4    that there was confusion is, I think, manifest by the fact that

5    there were literally hundreds of these claims which were

6    subject of even just the 92nd objection which is the one our

7    claim is contained in.  I haven't counted the numbers in the

8    other objections.  So clearly, there was a certain level of

9    confusion among parties of all different shapes and sizes, if

10   you will, as to what they needed to do or didn't do.

11         And by the same token, the universe of parties that

12   responded to the claims objections is quite small.  I mean,

13   there are, I think, five, six or seven claims that are in

14   today's hearing from the 92nd objection.  And there are another

15   number that have been adjourned to -- I believe it's the 21st

16   of December.  I don't recall how many those were but it's a

17   very, very tiny fraction of the actual number of claims that

18   have been objected to.  So -- and, of course, the ones that did

19   not respond have long since been dispatched on Your Honor's

20   uncontested calendar probably back in the spring.

21         So, just in terms of sheer numbers, there's very

22   little, I think, that needs to be done.  The debtor will have

23   to deal with a handful of claimants.  We are -- we'd certainly

24   confirm with our client that they have never sold or otherwise

25   disposed of the securities.  We're prepared to do whatever it

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 58 of 67

Page 58

1    takes to make that presentation to the debtor at our expense,

2    of course.  And we are also -- I noticed Ms. Eckols mentioned

3    that nobody's offered to go to their broker and confirm that

4    the broker didn't get a blocking number.  Well, okay.  I mean,

5    that just surfaced today, that argument.  And let me state for

6    the record that we are prepared to do that.  I make that offer

7    to the Court and to Ms. Eckols.

8           So I think that, as Your Honor suggested, this is a

9    situation which ought to be relatively easily resolvable.  And

10   we're prepared to do whatever it takes to resolve it if given

11   the opportunity.

12          THE COURT:  Okay.

13          MR. CAHN:  Thank you, Your Honor.

14          THE COURT:  Is there anyone else --

15          MS. MOYNIHAN (TELEPHONICALLY):  Your Honor?  Your

16   Honor?

17          THE COURT:  There is someone standing at the podium

18   but --

19          MS. MOYNIHAN:  No.  My apologies.

20          THE COURT:  Who do you represent?

21          MS. MOYNIHAN:  Your Honor, Kerry Moynihan, Holme

22   Roberts & Owen on behalf of Millennium Marketing and

23   Management.  In addition to the comments that have already been

24   made for the Court, I would just like to add that my client has

25   also submitted an affidavit which states that he has been the

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 59 of 67

Page 59

1    holder of the security from the beginning of the bankruptcy

2    through after the blocking dates were -- I'm sorry -- the

3    blocking numbers were released.  And we also have submitted an

4    affidavit from the broker, which in this case is A&Z, stating

5    they did not obtain a blocking number on behalf of the

6    security.

7           THE COURT:  Okay.

8           MS. DICONZA:  Your Honor, Maria DiConza from Greenberg

9    Traurig representing Optique Pension Fund Ltd.  It's an

10   Australian fund.  They're in a similar position that we're

11   talking about, filed a proof of claim before the bar date

12   order, did not obtain a blocking number.  I just wanted to

13   point out that their securities which have been held

14   consistently are under their name in the Clearstream system.  I

15   believe the blocking number is also associated with the

16   Clearstream system.  So it seems that if there's no blocking

17   number associated with the position that's held in the

18   Clearstream system then there couldn't possibly be a

19   duplication situation.  And I believe that the representations

20   from A&Z Bank, which are also applicable to my client, would

21   alleviate the debtors' concerns in that regard.

22           MS. MANDEL:  Good morning, Your Honor.  Lena Mandel,

23   Milbank Tweed Hadley & McCloy on behalf of the committee.  We

24   just want to make a general observation that we certainly agree

25   with the Court that as important as the integrity of the bar

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 60

1    date process is the substantive rights of individual claimants

2    are also important and certainly trump the administrative

3    convenience of the debtor.  So it does not appear to the

4    committee that to the extent that individual claimants who have

5    taken the time and the effort to respond to those objections

6    can, in fact, bear their burden of proof that they're

7    non-double dipping and that no other claims have been filed on

8    behalf of the securities, there's no reason why the debtors

9    could not work with these claimants to work through these

10   issues and to establish whether or not these are valid claims.

11        With respect to what kind of evidence would be

12   required, this should probably be determined on a case by case

13   basis to the satisfaction of this Court.

14        THE COURT:  Okay.  Thank you.

15        MR. SOUTH:  Good morning, Your Honor.  George South on

16   behalf of Rakepoll Finance N.V.  I'm sorry -- DLA Piper.

17        Your Honor, I would just echo sentiments of the Court

18   in the respect that the procedures outlined in the bar date

19   order I think are a little ambiguous and somewhat confusing.

20   As was pointed out by this Court itself during your October

21   27th, 2010 hearing that this claims process is fairly complex

22   and by no means a standard issue.

23        Your Honor, Rakepoll filed a claim on January 9th,

24   2009, well prior to the bar date order being entered and, in

25   good faith, relied on those provisions in that order for the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 61

1   understanding that they would not have to file another amended

2   proof of claim.

3            Your Honor, Rakepoll's claim is based on Lehman

4   program securities and a guaranty.  The Lehman program

5   securities that were issued were obligations of Lehman Brothers

6   Securities N.V. and then were guarantied by LBHI.

7            Your Honor, in addition to the language that you have

8   pointed out on page 4 of the bar date order in that paragraph F

9   about claimants filing a proof of claim previously based upon

10  the proof of claim form that's attached to the bar date order

11  which, Your Honor, is just a regular Form 10, that proof of

12  claim does not include a box for a blocking number or anything

13  like that.  That's the proof of claim that's that form.  We

14  substantially complied with that form.  Rakepoll filed a proof

15  of claim prior to the bar date order complying with that form.

16           When you get to the proviso of that -- that provision

17  which says that if you're filing a claim based on a derivative

18  contract or a guaranty, you have to conform with the procedures

19  set forth for filing proofs of claim based on derivatives and

20  guaranties, that then brings you to paragraph H on page 14 of

21  the order which has language to the effect that if you have a

22  claim based on both a Lehman programs security and any other

23  claim -- in this case, a guaranty claim -- you don't have to

24  file a guaranty unless your claim is based on something other

25  than a Lehman program security.  And here, it is based on a

08-13555-mg   Doc 23106   Filed 12/01/11   Entered 12/08/11 10:50:52   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 62 of 67

Page 62

1    Lehman program security.  Our guaranty is based on a Lehman

2    program security.  So we relied on that provision and paragraph

3    H as well as the paragraph F on page 4 for the notion that we

4    do not have to file an amended proof of claim or the guaranty

5    questionnaire or obtain a blocking number as a result.  And,

6    Your Honor, I think that's just another indication of how the

7    order is ambiguous on this point with respect to claims that

8    were filed prior to the bar date.

9              And again, Rakepoll -- we're perfectly fine with

10   getting evidence of the fact that they currently owned the

11   security -- they owned the security prior to the bar date, they

12   owned it at the bar date and they currently own it.  And we're

13   prepared to make that evidentiary record, Your Honor.  Right

14   now, the debtor, as has been stated -- their sole argument is

15   that these parties did not obtain a blocking number.  They

16   haven't contested the claim -- that we hold the claim.  They

17   haven't contested the amount of the claim.  They haven't asked

18   for any evidence of the claim.  So the debtors' suggestion that

19   we haven't provided any -- you know, our proof of claim is

20   prima facie evidence of the validity of our claim.  And that

21   should stand unless there's a determination that we need to

22   provide more evidence.  Thank you, Your Honor.

23             THE COURT:  Okay.

24             MR. BERNSTEIN:  Your Honor --

25             THE COURT:  Mr. Bernstein, are you responding on

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 63

1    behalf of the debtor?

2           THE COURT:  Yes, and also to give just some additional

3    information on how the blocking numbers were obtained and the

4    process which I think may be helpful in this conversation.

5           THE COURT:  I don't want to in any way cut off your

6    presentation although ordinarily one lawyer will be speaking to

7    a particular issue from any one firm unless there's a

8    particular reason for another lawyer to get up.  I'll hear what

9    you have to say but I'm pretty clear what I'm about to do.  And

10   it isn't that I don't want to hear what you have to say, but

11   you should know what my inclination is before you say it.

12          I think that those parties who have previously filed

13   proofs of claim that relate to Lehman program securities should

14   confer with authorized representatives of the debtor between

15   now and the December 21 hearing for purposes of answering

16   questions or facilitating the process that we've been talking

17   about throughout the morning.  And the questions would be what

18   proof do you have that you hold these securities, what proof do

19   you have that no one else obtained a blocking number that

20   relates to these securities and what issues exist that might

21   impede allowance of the claim as filed.  And that the parties

22   informally should endeavor to resolve those issues that can be

23   resolved by agreement.  And to the extent that there are

24   ongoing and legitimate concerns that the debtors have as to

25   particular claims including those of the claimants who are

Page 64

1   represented here today or on the telephone that we can deal

2   with those at a future hearing.  But I'm not going to grant any

3   relief today.  And I think I've already fairly clearly

4   indicated that I'm not likely to grant such relief unless it

5   can be demonstrated that there is a meaningful risk of double

6   counting.

7          MR. BERNSTEIN:  Sure.  Understood.  And that's

8   somewhat --

9          THE COURT:  Now if you want to say something, go right

10  ahead.

11         MR. BERNSTEIN:  No.  That mostly makes what I was

12  about to say unnecessary.  And we will deal with the issues I

13  was going to raise with the blocking numbers and why we need

14  them and how they were obtained with the individual complaints.

15  And to the extent that we're unable to reconcile or come to an

16  agreement or get comfortable that there is no additional risk

17  then we just obviously reserve our rights to come back before

18  Your Honor.

19         THE COURT:  That's fine.  And this can be carried

20  until the December 21 hearing or, if more time is needed, to a

21  subsequent hearing.

22         MR. BERNSTEIN:  Absolutely.  So with that, that

23  concludes the agenda for the day.

24         THE COURT:  Fine. We are then adjourned.

25         MR. BERNSTEIN:  Thank you, Your Honor.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 65

1          THE COURT:   Thank you.

2     (Whereupon these proceedings were concluded at 11:33 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 66

**I N D E X**

**R U L I N G S**

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Debtors' 186th omnibus objection to claims sustained on an uncontested basis | 12 | 7 |
| Debtors' 187th omnibus objection to claims sustained on an uncontested basis | 12 | 7 |
| Debtors' 184th omnibus objection to claims sustained based on representations made on the record | 13 | 19 |
| Debtors' 213th, 214th, 215th and 216th omnibus objections to claims sustained based on statements made by counsel and incorporated into the record | 17 | 12 |
| Debtors' 217th omnibus objection to claims sustained on an uncontested basis | 18 | 10 |
| Debtors' 218th omnibus objection to claims sustained | 19 | 5 |
| Debtors' objection to Wilmington Trust's claim granted on the basis of a record established solely with respect to the notes that are not structured notes | 36 | 22 |

Page 67

1

2                      C E R T I F I C A T I O N

3

4   I, Lisa Bar-Leib, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8   Lisa Bar-Leib   Digitally signed by Lisa Bar-Leib
                    DN: cn=Lisa Bar-Leib, c=US
                    Date: 2011.12.01 14:13:48 -05'00'
9   _____

10  LISA BAR-LEIB

11  AAERT Certified Electronic Transcriber (CET**D-486)

12

13

14  Veritext

15  200 Old Country Road

16  Suite 580

17  Mineola, NY 11501

18

19  Date:  December 1, 2011

20

21

22

23

24

25