Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 08-13555(JMP)

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    LEHMAN BROTHERS HOLDINGS, INC., et al

9

10                Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                December 6, 2011

19                10:00 AM

20

21   B E F O R E:

22   HON. JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25

**Page 2**

1

2   MATTER:  Modified Third Amended Joint Chapter 11 Plan of Lehman

3   Brothers Holdings Inc. and its Affiliated Debtors

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

Page 3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Debtor

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:    HARVEY R. MILLER, ESQ.

9           RICHARD P. KRASNOW, ESQ.

10          LORI R. FIFE, ESQ.

11          ALFREDO PEREZ, ESQ.

12          JACQUELINE MARCUS, ESQ.

13          GARRETT A. FAIL, ESQ.

14          ROBERT LEMONS, ESQ.

15          SUNNY SINGH, ESQ.

16

17   MILBANK, TWEED, HADLEY & MCCLOY LLP

18        Attorneys for the Official Committee of Unsecured

19         Creditors

20        One Chase Manhattan Plaza

21        New York, NY 10005

22

23   BY:    DENNIS F. DUNNE, ESQ.

24          EVAN R. FLECK, ESQ.

25

Page 4

1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3          Attorneys for the Official Committee of Unsecured

4           Creditors

5          1850 K Street, NW

6          Suite 1100

7          Washington, DC 20006

8

9    BY:   ANDREA MCNAMARA, ESQ.

10          (TELEPHONICALLY)

11

12    HUGHES HUBBARD & REED LLP

13          Attorneys for James W. Giddens, SIPC Trustee

14          One Battery Park Plaza

15          New York, NY 10004

16

17    BY:   JAMES B. KOBAK, JR.

18

19

20

21

22

23

24

25

Page 5

1

2    UNITED STATES DEPARTMENT OF JUSTICE

3          Office of the United States Trustee

4          33 Whitehall Street

5          Suite 2100

6          New York, NY 10004

7

8    BY:   LINDA A. RIFFKIN, ESQ.

9          SUSAN D. GOLDEN, ESQ.

10

11   CHAPMAN & CUTLER LLP

12         Attorneys for U.S. Bank, N.A., as Trustee

13         111 West Monroe Street

14         Chicago, IL 60603

15

16   BY:   FRANKLIN H. TOP III, ESQ.

17         JAMES HEISER, ESQ. (TELEPHONICALLY)

18

19   DAVIS POLK & WARDWELL LLP

20         Attorneys for LBIE

21         450 Lexington Avenue

22         New York, NY 10017

23

24   BY:   MARSHALL S. HUEBNER, ESQ.

25

Page 6

1

2   GIBSON, DUNN & CRUTCHER LLP

3        Attorneys for PricewaterhouseCooper Zurich

4        200 Park Avenue

5        New York, NY 10166

6

7   BY:   MATTHEW KELSEY, ESQ.

8

9   KRAMER LEVIN NAFTALIS & FRANKEL LLP

10        Attorneys for Certain Noteholders of Lehman Brothers

11         Treasury Co. B.V.

12        1177 Avenue of the Americas

13        New York, NY 10036

14

15   BY:   THOMAS MOERS MAYER, ESQ.

16

17   MORRISON & FOERSTER LLP

18        Attorneys for Lehman Brothers Japan

19        1290 Avenue of the Americas

20        New York, NY 10104

21

22   BY:   LORENZO MARINUZZI, ESQ.

23

24

25

Page 7

1

2    MOSES & SINGER LLP

3         Attorneys for China Development Industrial Bank and

4          Dotson Investments Ltd.

5         The Chrysler Building

6         405 Lexington Avenue

7         New York, NY 10174

8

9    BY:   JAMES M. SULLIVAN, ESQ.

10

11   VENABLE LLP

12        Attorneys for Danske Bank A/S London Branch

13        Rockefeller Center

14        1270 Avenue of the Americas

15        Twenty-Fifth Floor

16        New York, NY 10020

17

18   BY:   CAROLLYNN H.G. CALLARI, ESQ.

19

20

21

22

23

24

25

Page 8

1

2    WHITE & CASE LLP

3          Attorneys for the Ad Hoc Group

4          1155 Avenue of the Americas

5          New York, NY 10036

6

7    BY:   CHRISTOPHER SHORE, ESQ.

8          GERARD UZZI, ESQ.

9

10   AKIN GUMP STRAUSS HAUER & FELD LLP

11         Attorneys for the Ad Hoc Committee of Bondholders

12         Robert S. Strauss Building

13         1333 New Hampshire Avenue, N.W.

14         Washington, DC 20036

15

16   BY:   KRISTEN M. HOWARD, ESQ.

17         (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 9

1

2    BALLARD SPAHR LLP

3          Attorneys for Mountain States Properties Incorporated and

4           Riddle Memorial Hospital et al.

5          919 North Market Street

6          11th Floor

7          Wilmington, DE 19801

8

9    BY:   CHRISTOPHER S. CHOW, ESQ.

10          (TELEPHONICALLY)

11

12   BROWN RUDNICK LLP

13          Attorneys for the Official Committee of Unsecured

14           Creditors

15          One Financial Center

16          Boston, MA 02111

17

18   BY:   JONATHAN D. MARSHALL, ESQ.

19          (TELEPHONICALLY)

20

21

22

23

24

25

Page 10

1

2     CLEARY GOTTLIEB STEEN & HAMILTON LLP

3          Attorneys for Goldman Sachs Bank, USA and Goldman Sachs

4           International

5          2000 Pennsylvania Avenue, NW

6          Washington, DC 20006

7

8     BY:   BENJAMIN MEEKS, ESQ.

9          (TELEPHONICALLY)

10

11    DEWEY & LEBOEUF, LLP

12         Attorneys for CAPCO Holdings Inc. and Customer Asset

13          Protection Company

14         333 South Grand Avenue

15         Suite 2600

16         Los Angeles, CA 90071

17

18    BY:   MONIKA S. WIENER, ESQ.

19         (TELEPHONICALLY)

20

21

22

23

24

25

Page 11

1

2   GODFREY & KAHN, S.C.

3          Attorneys for Fee Committee

4          One East Main Street,

5          Suite 500

6          Madison, WI 53701

7

8   BY:    KATHERINE STADLER, ESQ.

9          (TELEPHONICALLY)

10

11  MCCARTER & ENGLISH LLP

12          Attorneys for Occidental Energy

13          Renaissance Centre

14          405 N. King Street

15          8th Floor

16          Wilmington, DE 19801

17

18  BY:    KATHARINE L. MAYER, ESQ.

19          (TELEPHONICALLY)

20

21

22

23

24

25

Page 12

1

2   REED SMITH LLP

3       Attorneys for Bank of New York

4       225 Fifth Avenue

5       Pittsburgh, PA 15222

6

7   BY:   ERIC A. SCHAFFER, ESQ.

8       (TELEPHONICALLY)

9

10   STUTMAN TREISTER & GLATT

11       Attorneys for The Baupost Group, Perry Capital and

12        Elliott Management

13       1901 Avenue of the Stars

14       12th Floor

15       Los Angeles, CA 90067

16

17   By:   JEFFREY H. DAVIDSON, ESQ.

18       MARINA FINEMAN, ESQ.

19       GABRIEL GLAZER, ESQ.

20       MICHAEL NEUMEISTER, ESQ.

21       ISAAC PACHULSKI, ESQ.

22       (TELEPHONICALLY)

23

24

25

1

2   SUTHERLAND ASBILL & BRENNAN LLP

3        Attorneys for Aviva Italia

4        1275 Pennsylvania Avenue, NW

5        Washington, DC 20004

6

7   BY:   MARK D. SHERRILL, ESQ.

8        (TELEPHONICALLY)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2             THE COURT:  Be seated.  It must be a big day; we have

3    a big crowd.

4             MR. MILLER:  Sorry, sir?

5             THE COURT:  I said it must be a big day.  We have a

6    big crowd.

7             MR. MILLER:  Nobody's standing, Your Honor.

8             THE COURT:  That's a good -- well, actually, somebody

9    may be standing over there.

10            MR. MILLER:  Good morning, Your Honor.

11            THE COURT:  Good morning.

12            MR. MILLER:  Harvey Miller, Weil Gotshal & Manges, on

13   behalf of the debtors with Lori R. Fife, my partner.  Your

14   Honor, this is a hearing pursuant to Section 1128 of the

15   Bankruptcy Code to consider confirmation of the debtors'

16   modified third amended joint plan dated December 5, 2011, Your

17   Honor, which we filed last evening which is ECF number 22931.

18            Just in support of this hearing, Your Honor, the

19   debtors have filed the declaration of John K. Suckow in support

20   of confirmation, ECF number 22759, dated November 29, 2011; the

21   declaration of Daniel J. Ehrmann in support of confirmation,

22   ECF number 22760, dated November 29, 2011; the declaration of

23   Steven J. Cohn in support of confirmation, ECF number 22761,

24   dated November 29, 2011; the declaration of Jane Sullivan on

25   behalf of Epiq Bankruptcy Solutions LLC regarding voting and

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 15 of 72

Page 15

1    tabulation of ballots cast on the debtors' third amended joint

2    plan, ECF number 22743, dated November 29, 2011; supplemented

3    declaration of Jane Sullivan on behalf of Epiq Bankruptcy

4    Solutions LLC regarding voting and tabulation of ballots cast

5    on debtors' third amended joint plan, ECF number 22972, dated

6    December 5, 2011; and the debtors' response to objections that

7    were interposed to confirmation, ECF number 22751, dated

8    November 29, 2011; plan supplements, amendments 1 through 7,

9    Your Honor, under ECF number 21254; a proposed order of

10   confirmation; and, in addition to that, Your Honor, the

11   debtors' statement as to post-effective date directors of LBHI,

12   ECF number 22931, dated December 5, 2011.  In addition, Your

13   Honor, the debtors have filed two memoranda of law.

14          I was just thinking, Your Honor, that it seems almost

15   like yesterday that we started this journey.  And in another

16   context, to some of us, it seems we have spent a lifetime

17   working on Lehman, particularly when you look at the time

18   records of some of the attorneys.  It seems, Your Honor, we

19   must have done something right given the overwhelming

20   acceptance of the Chapter 11 plan.  But nevertheless, Your

21   Honor, in my own mind, I look back to that fateful endless day

22   of September 14, 2008 that morphed into the day, the filing of

23   the Chapter 11 petition, the first Chapter 11 petition, by

24   Lehman Brothers Holdings Inc.  That was soon followed by

25   sequential Chapter 11 petitions by subsidiaries and affiliates

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 16

1      of LBHI.

2           I also see the chaos, the confusion and the distress

3      on the faces of hundreds of Lehman employees flooding into the

4      enterprises headquarters at 745 Seventh Avenue in their attempt

5      to gather their personal belongings before a potential lockdown

6      of the building and the beginning of the electronic filing of

7      the Chapter 11 petition.

8           And finally, the anxieties and apprehensions expressed

9      as to what is next.  The challenges were daunting.  It was

10     extremely unlikely that anyone present at that time or even

11     outside of that building thought that the chaos would soon be

12     relieved or that in slightly over three years, we would be

13     standing here today to consider the confirmation of the joint

14     Chapter 11 plan for the twenty-three Chapter 11 debtors.

15          It has been through the dedication, diligence and 24.7

16     obstinance of the debtors, their professionals, the unsecured

17     creditors' committee, and subsequently by other parties in

18     interest and, most importantly, the provisions of the

19     Bankruptcy Code that order evolved out of chaos.  The full

20     magnitude of the issues that would emerge as a consequence of

21     the ill-conceived decision to sink the Lehman enterprise and

22     the collapse of the financial markets in those crisis weeks

23     following September 15, 2008 that had to be confronted was not

24     within the knowledge of any of the parties in interest or,

25     indeed, the government and the public at large.  It was only

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 17

1   through the prism of these Chapter 11 cases that the full scope

2   of the multi-faceted issues, conflicts, international

3   relationships and ramifications came to the forefront.  It was

4   only with the tools provided by the Bankruptcy Code and, with

5   due respect, the dedication exhibited by the Court and the

6   courage that the Court exhibited in administering these cases

7   that they have progressed to the point of confirmation.  It was

8   pursuant to the Court's early suggestion that immediate

9   attention was focused on the international aspects of the

10  failed Lehman enterprise and the need to initiate dialogue and

11  resolution with foreign administrators, receivers and

12  fiduciaries for the over eighty Lehman entities subject to

13  foreign solvency proceedings in sixteen international

14  jurisdictions that were critical to the resolution of these

15  cases.

16         The formulation and adoption of the global close which

17  served as the foundation and point of departure in realizing

18  the amounts and substance of claims was as a result of that

19  suggestion.  And it has formed one of the foundation stones

20  that enabled us to get to the point of confirmation.

21         The global protocol was an essential element in the

22  resolution of major issues that otherwise might have impeded

23  the consideration of the confirmation of the Chapter 11 plan

24  for a very extended time.  Credit must be given to the foreign

25  administrators and fiduciaries and their professionals who

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 18

1    extended themselves to negotiate in good faith and at arm's

2    length to reach accommodations that have helped to establish a

3    basic underlying premise of these Chapter 11 cases, the

4    avoidance of expensive protracted multi-jurisdictional

5    litigation that would indefinitely postpone the distribution of

6    dividends to holders of allowed claims against the Chapter 11

7    debtors.

8          It would be fair to say that these Chapter 11 cases

9    present an unprecedented epic in the annals of financial

10   disasters and the use of bankruptcy law to provide the

11   framework for the protection of all global parties in interest

12   and the disposition of critical issues as well as the

13   administration of extraordinarily difficult and often opaque

14   esoteric assets.  The appointment of Anton Valukas as the

15   examiner and his voluminous report of thousands of pages that

16   was filed in February of 2010 dissipated a lot of the fog of

17   war that surrounded the Chapter 11 cases.

18         The record of these cases is replete with what has

19   been accomplished to date.  Just to put it in the context, once

20   again, as a succinct preamble to today's confirmation hearing,

21   the debtors, with the overwhelming support of their economic

22   stakeholders, request the confirmation of their joint Chapter

23   11 plan for the twenty-three debtors.  Over 67,000 proofs of

24   claim were initially filed against the debtors aggregating in

25   total an approximate amount of 1.2 trillion dollars.  As noted

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 19

1    in prior proceedings, as a result of over 200 omnibus motions

2    objecting to filed claims, over 230,000 claims -- I'm sorry --

3    over 23,000 claims aggregating approximately 220 plus billion

4    dollars have either been withdrawn, reduced, reclassified,

5    disallowed or expunged.  The claims resolution process

6    continues each day.  The global settlement, which is a material

7    element of today's Chapter 11 plan, incorporated into the plan

8    and the bilateral settlements will very significantly reduce

9    the dollar amount of allowed claims by billions of dollars.

10           As the administration moved into 2010, the issues and

11   the conflicts among parties in interest became more clearly

12   defined, particularly, the overhanging issue of potential

13   substantive consolidation of the debtors and their affiliates

14   to create a single pool of assets and liabilities versus

15   treating each debtor and their affiliates as separate

16   independent legal entities that operated separate and distinct

17   businesses.  The contentions and conflicting presentations

18   raged through most of 2010.

19           On March 15, 2010, as the statutory exclusive period

20   for plan filing was about to expire, the debtors filed a

21   proposed Chapter 11 plan that represented their initial and

22   preliminary views and was intended to act as a placeholder.

23   During the fall of 2010 and based upon the continuing

24   investigation and administration of the debtors' assets, in a

25   report to the Court as to the state of the estate, the debtors

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 20 of 72

Page 20

1    indicated the more refined parameters for an amendment of their

2    plan.  Subsequent to that report, meetings and discussions were

3    held with various parties in interest.  An ad hoc group of LBHI

4    creditors had been organized and, apparently in response to

5    disagreements with the debtors' concept, on December 15, 2010,

6    filed a competing proposed Chapter 11 plan and a related

7    disclosure statement for a plan that contemplated substantive

8    consolidation of essentially all of the debtors.

9            Under the ad hoc plan, the equitable doctrine of

10   substantive consolidation was to be applied to all of the

11   respective assets and liabilities with minor exceptions

12   including certain of the debtors' foreign affiliates.  They

13   would be consolidated, eliminating guaranty and intercompany

14   claims.

15           On January 25, 2011, the debtors filed their first

16   amended joint Chapter 11 plan.  The debtors' plan did not

17   propose the substantive consolidation of the debtors and their

18   affiliates but rather sought to achieve a reconciliation of the

19   issues of substantive consolidation and related treatment of

20   the relationships among the debtors and their affiliates

21   through proposed mechanisms incorporated into the plan.  Again,

22   agreement was elusive and negotiations continued.  Substantive

23   consolidation became the leading dispute among the economic

24   stakeholders and the debtors.

25           The situation deteriorated to the point that on April

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 21 of 72

Page 21

1    25, 2011, a proposed joint Chapter 11 plan and a related

2    disclosure statement was filed by twenty-three creditors who

3    together, with certain of their affiliates, had been referred

4    to as the non-con plan proponents or OpCo creditors.

5            The non-con plan took a diametrically opposite

6    approach for the reorganization of the debtors.  The non-con

7    plan proposed a complete separation of the debtors based upon

8    the individual legal entity of each debtor and declared a total

9    denial of any risk of substantive consolidation for any of the

10   debtors.

11           The gap between the parties, particularly the ad hoc

12   group and the non-com plan proponents, appeared almost

13   insurmountable.  The debtors attempted to demonstrate the

14   wisdom of their plan and continued to meet with representatives

15   of different groups.  In a major effort to prevent these

16   Chapter 11 cases sinking into a morass of competing plans,

17   substantial litigation and attendant costs and loss of time to

18   the ultimate detriment of the economic stakeholders, in June of

19   2011, the debtors initiated intensive negotiations with all of

20   the major stockholders.  These intensive June negotiations

21   successfully produced a consensus among many of the major

22   economic stakeholders including the overwhelming majority of

23   the foreign administrators, fiduciaries and receivers.  The

24   negotiations resulted in the debtors modifying their proposed

25   Chapter 11 plan to accommodate the consensus agreed to, a

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 22 of 72

Page 22

1    consensus that include the global settlement of the issues of

2    substantive consolidation, recharacterization and the like that

3    had divided the parties and had produced the three competing

4    plans.

5            The global settlement, Your Honor, is the lynchpin of

6    the debtors' plan.  Consistent with the consensus reached among

7    the major stakeholders and the debtors, the ad hoc group and

8    non-con plan proponents agreed to suspend consideration of

9    their alternative and competing plans pending the prosecution

10   of the debtors' joint plan.  The debtors' joint plan does not

11   substantively consolidate any of the debtors or their

12   affiliates but rather incorporates a series of interconnected

13   concessions by stakeholders designed to expedite the

14   administration and conclusion of these Chapter 11 cases.  Based

15   upon that consensus, the debtors quickly moved for the approval

16   of their joint disclosure statement and related orders to

17   implement the voting procedures and the prosecution of the

18   confirmation of their plan.

19           The disclosure statement approval hearing was held

20   before the Court on August 30, 2011.  Over 110,000 notices of

21   the hearing were transmitted to parties in interest.  Numerous

22   objections were raised to the proposed disclosure statement

23   that were promptly addressed by the debtors and their

24   professionals so that by the time of the hearing, the number of

25   objections to the disclosure statement was de minimis.  If I

Page 23

1    recall correctly, the objections that remained outstanding as

2    of the hearing date and heard by the Court was less than

3    fifteen.

4           To use the Court's word, it was miraculous that the

5    debtors and their professionals were able to muster the

6    exhibited level of support given the nature, issues and

7    contentions that had permeated the cases.  The Court

8    particularly noted that the debtors' plan had been able to

9    obtain by July 1, 2011 plan support agreements executed by

10   forty-seven major claimants asserting over one hundred billion

11   dollars of claims against the Chapter 11 debtors.

12          After hearing the remaining objections and some

13   modifications made by the debtors to the proposed disclosure

14   statement and the debtors' plan, the Court approved the

15   disclosure statement.  And on September 1, 2011, the order of

16   approval of the disclosure statement and the solicitation order

17   were entered.

18          As the solicitation process proceeded, the debtors

19   continued to consider the views of their economic stakeholders

20   and proceeded to explore and make further refinements that

21   would accommodate the comments and questions when appropriate.

22   As noted by the submissions filed by the debtors in support of

23   confirmation, the number of executed plan support agreements

24   has now risen to more than 150 covering creditors asserting

25   claims of over 450 billion/million dollars.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 24

1           At this point, Your Honor, it's almost amazing to

2    report that there is only one objection to confirmation

3    remaining.  Indeed, Your Honor, the one objection, which is

4    noted in the agenda for today's hearing, there's even a change

5    in that respect, Your Honor.  In the agenda for today's

6    hearing, the unresolved objection is referred to as the

7    objection of China Development Industrial Bank and Dotson

8    Investments.  That objection, Your Honor, now is limited to

9    Dotson Investments.  The objection with respect to China

10   Development Industrial Bank has been withdrawn.

11          So the objection that remains, Your Honor, is the

12   objection of Dotson Investments Ltd.  And there are two claims

13   filed by Dotson Investments.  And together, Your Honor, those

14   two claims are less than a million dollars.  And the claims

15   that have been filed by Dotson are a claim in the amount of

16   $653,141.31 against LBHI based upon a guaranty of bonds issued

17   by Lehman Brothers UK Capital Funding LP and guaranties by

18   Lehman Brothers PLC.  That's claim number 47171.

19          And the other claim is a claim in the amount of

20   $237,304.48 against LBHI based on a guaranty of the Lehman

21   program securities issued by Lehman Brothers UK Capital Funding

22   IV LP.  That's claim number 47035.

23          As evidenced, Your Honor, by the declarations of Epiq

24   Bankruptcy Solutions LLC, dated November 29, 2011, and the

25   supplemental declaration, which is dated December 4, I believe,

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 25 of 72

Page 25

1    Your Honor, the level of acceptance of the Chapter 11 plan is

2    overwhelming.  Over 75,000 creditors asserting a total of over

3    405 billion dollars in claims voted on the joint plan.  Of

4    those creditors who voted, in the aggregate, 71,553 creditors

5    accepted the plan.  In the aggregate, Your Honor, that number

6    equals ninety-five percent of the number of creditors who

7    actually voted on the plan.  And those accepting creditors, in

8    the aggregate, represent 98.68 percent in the amount of the

9    creditor claims that were voted.

10          And in the supplemental declaration of Epiq Business

11   Solutions LLC, Your Honor, it sets out as to each debtor, each

12   of the twenty-three debtors, the votes as to that particular

13   case.

14          Now, at this point in the proceedings, Your Honor, and

15   anticipating a great more objections, we had planned to go into

16   a detailed presentation of the provisions of the plan and then

17   get to the objections and deal with the objections.  Ms. Fife

18   is prepared, Your Honor, to present the overview of the plan,

19   the acceptance level if Your Honor desires.

20          THE COURT:  Well, I read everything at the time that

21   we had lots of objections.  And it seemed that every time I

22   read an objection, the objection was resolved.  I'm certainly

23   personally familiar with the background of the case, the

24   circumstances that led to the development of the plan, the

25   structure of the plan and issues that relate to the global

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 26 of 72

Page 26

1    settlement and the bilateral settlements.  However, it's your

2    record.

3            MR. MILLER:  Your Honor, I take Your Honor's comments

4    seriously.  Ms. Fife?

5            MS. FIFE:  Good morning, Your Honor.  Lori Fife from

6    Weil Gotshal & Manges for the debtors.  I'll try to keep this

7    brief since Your Honor is familiar with the plan.

8            Generally, the plan is a joint plan but constitutes

9    twenty-three separate plans, one for each of the Chapter 11

10   debtors.  As Mr. Miller described, the plan does not

11   substantively consolidate the twenty-three debtors.  The

12   allowed claims against each debtor will be satisfied primarily

13   from the assets of that debtor.

14           The plan incorporates separate waterfall

15   classification and distribution schemes for each of the debtors

16   that strictly follow the statutory priorities under the

17   Bankruptcy Code.  The plan separately classifies priority

18   nontax claims, secured claims, unsecured claims and equity

19   interest.

20           As to the participating debtors, which are LBHI, LBSF,

21   LCPI, LOTC, LBCS and LBCC, the plan also provides for

22   administrative convenience classes.  In total, the plan

23   includes 161 classes of which 134 classes were entitled to vote

24   on the plan.  There are seventeen classes in LBHI, nine classes

25   in LBSF and LCPI, eight classes in LBCS, LOTC and LBCC and six

1    classes in the other subsidiary debtors.

2            After satisfying or reserving in full for secured,

3    administrative and priority claims and the payment of

4    convenience claims, in accordance with the plan, each debtor

5    will distribute its available cash to unsecured creditors on a

6    pro rata basis.  In some cases, the cash will be reallocated in

7    accordance with the global settlement which I will describe.

8            The global settlement resolves various plan issues

9    affecting the creditors and incorporates an integrated

10   negotiated resolution.

11           What are the plan issues?  The plan issues addressed

12   by the global settlement include:  whether the equitable

13   doctrine of substantive consolidation may be applied to the

14   debtors and their affiliates; the characterization of

15   intercompany balances owed by LBHI to the subsidiary debtors --

16   by the subsidiary debtors -- sorry; the allowed amounts of

17   affiliate claims; the ownership and rights of various debtors

18   and their affiliates with respect to certain assets; the

19   allocation of costs and expenses of administration among the

20   debtors; and corporate governance of the post-effective date

21   debtors.

22           In order to resolve the plan issues in January of

23   2011, the debtors proposed a settlement in their second amended

24   plan.  That plan introduced a structure and certain mechanisms

25   to implement a global settlement that actually remain the heart

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 28 of 72

Page 28

1   of the plan today.  That plan separately classifies unsecured

2   claims against the debtors based upon the nature of the claims.

3   So claims asserted by an affiliate of the debtors are

4   classified separately from claims of third parties.  Guaranty

5   claims against LBHI are separately classified from direct

6   claims against LBHI.  Senior and subordinated claims are

7   separately classified in order to strictly comply with Section

8   510 of the Bankruptcy Code.

9        The treatment of these various unsecured claims is

10  intended to take into account the risks of the plan issues that

11  I just described.  For example, guaranty claims and affiliate

12  claims would be eliminated if substantive consolidation of the

13  debtors and their affiliates was directed.

14       The resolution of the plan issues is implemented

15  through various mechanics of the global settlement.  The

16  primary settlement mechanism in the plan is the plan adjustment

17  provision.  Specifically, guaranty claims asserted against LBHI

18  by third parties reallocate twenty percent of their recoveries

19  to account for the risk that such claims would be eliminated in

20  the event of substantive consolidation.

21       This was a negotiated percentage among the debtors and

22  the creditors' committee regarding the risk of substantive

23  consolidation.  Claims against the subsidiary debtors, which

24  would receive lower recoveries as substantive consolidation was

25  ordered, also are required to reallocate a percentage of their

1    recoveries to direct creditors of LBHI.  Then the direct third

2    party unsecured creditors of LBHI actually receive the

3    reallocated funds or the plan adjustment, as we call it, as

4    they would benefit in the event of substantive consolidation,

5    essentially, because of the elimination of the dilution caused

6    by the affiliate and guaranty claims against LBHI and the

7    additional recoveries they would realize from the pooled assets

8    of the consolidated entities.

9         The second settlement mechanism in the plan is the

10   resolution and treatment of affiliate claims; in particular,

11   guaranty claims asserted by affiliates against LBHI which were

12   filed in enormous amounts.  To take into account the risks to

13   such claims including the debtors' challenges to the validity

14   and enforceability of the guaranty claims of affiliates, as

15   well as the substantive consolidation risk, the plan provides

16   that affiliate claims against LBHI are to be allowed pursuant

17   to settlement, if possible, or they must be litigated.  The

18   bilateral settlement agreements, many of which were

19   subsequently entered into in connection with the plan, are

20   consistent with the principles of the global settlement and

21   result in very significant reductions to the amounts asserted.

22        Lastly, the plan proposes to allow LBHI's claims

23   against the subsidiary debtors in an amount equal to eighty

24   percent of those claims.  This reduction only applies to LBHI's

25   claims that are based on intercompany funding by LBHI and not

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 30 of 72

Page 30

1    to claims based on derivatives or repos.  The mechanism

2    resolves potential extended litigation that could be brought to

3    recharacterize LBHI's claims from debt to equity.

4           In response to the January 2nd amended plan, many

5    creditors, including the ad hoc group, the non-con proponents

6    and certain LBT noteholders, took opposing positions as to the

7    debtors' proposed resolution.  In order to achieve consensus

8    and avoid cost and prejudicial delay of litigation and reach a

9    rational economic resolution, the debtors intensified their

10   efforts and called all the major stakeholders to the meetings

11   that Mr. Miller described in June of 2011.

12          The meetings were robust.  Negotiations proceeded in

13   good faith and at arm's length.  Over 125 individuals attended

14   including principals, attorneys and financial advisors for many

15   of the major stakeholders.  In fact, we barely had a conference

16   room that was big enough to fit everybody.

17          There were two formal sessions and countless hours of

18   negotiations that followed to finalize the document and

19   consensus was ultimately achieved.  As a result of the June

20   meetings, all of the parties agreed to adopt what was the

21   settlement mechanisms proposed in the January plan and to

22   support confirmation of the debtors' plan including the global

23   settlement but subject to certain required adjustments.  Each

24   of these adjustments was painstakingly negotiated and is highly

25   sensitive to changes.  In that sense, the global settlement

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 31 of 72

Page 31

1    must be viewed holistically.

2           There were seven major settlement mechanisms that were

3    added to the debtors' plan in June in order to achieve the

4    global settlement.  Pursuant to one settlement mechanism, it

5    was agreed that the first one hundred million dollars of

6    distributions that LBHI receives from each of LCPI and LBSF

7    will automatically be distributed to the third party unsecured

8    creditors of those entities.  In addition, the first seventy

9    million that is recovered by LBSF on its assets in excess of

10   14,156,000,000 will be distributed only to unsecured creditors

11   of LBSF.  Effectively, LBHI and the other participating debtors

12   who have claims against LBSF have agreed to waive their rights

13   up to seventy million dollars of value from proceeds of assets,

14   if any, above the debtors' projections of recoveries from LBSF

15   in exchange for other benefits that they will receive from the

16   global settlement.

17          Pursuant to another settlement mechanism, LBSF will

18   have an allowed administrative expense claim against LBHI in

19   the amount of 300 million dollars.  This claim is in

20   recognition of the fact that any settlement of a derivates

21   contract, which in almost every case has a related guaranty

22   claim, benefited not only LBSF but also LBHI.  Up to now, the

23   administrative expenses related to such settlements have been

24   charged solely this LBSF; this mechanism apportions the

25   administrative expenses appropriately.

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
Pg 32 of 72
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 32

1          The treatment and allowance of the claims of certain

2     designated entities, the two Racers Trusts and Fenway, is

3     another settlement mechanism to resolve disputes relating to

4     the amount and allowance of those claims asserted by those

5     designated entities along with the risks of substantive

6     consolidation to those entities, the parties agreed to a single

7     claim of the Racers Trust against LCPI in the amount of five

8     billion, a deficiency claim of the Racers Trust against LBSF in

9     the amount of 1.9 billion and a single claim of Racers Trust

10    against LBHI in the amount of 1.9 billion.  Fenway Trust has a

11    claim against LCPI in the amount of 230 million.  Importantly,

12    each of these claims apply the plan adjustment.

13         The treatment of the intercompany claims of LBT and

14    the guaranty claims of the LBT noteholders against LBHI was

15    also a material part of the June settlement.  The parties

16    agreed that the intercompany claim of LBT against LBHI should

17    be allowed in the amount, 34,548,000,000 on account of no

18    proceeds loaned to LBHI and treated the same as all other

19    direct intercompany claims of affiliates and allowed in its

20    reconciled amount.

21         In addition, as part of the settlement, the parties

22    agreed that the structured securities valuation methodologies

23    proposed by the debtors will be applied to the structured

24    security claims of the plan support creditors.

25         Lastly, as part of the settlement mechanisms, the

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 33 of 72

Page 33

1  parties agreed to modify corporate governance provisions

2  including, among other things, the appointment of the director

3  selection committee comprised of nine individuals.  One member

4  was chosen by the debtors and the balance chose by various

5  creditor groups and the selection of the directors of LBHI by

6  that committee prior to confirmation.  We filed a notice of

7  those directors yesterday, Your Honor.

8           All of the described mechanisms form the basis of the

9  global settlement and the foundation of the plan.  The plan

10  also contains standard provisions such as dealing with

11  distributions, reserves, provisions for disputed claims,

12  executory contracts, retention of jurisdiction and conditions

13  to the effective date which currently, the debtors believe,

14  will occur no earlier than January 31st.

15          As Mr. Miller mentioned, based upon the agreement to

16  the global settlement, the plan is overwhelmingly supported by

17  the debtors' economic stakeholders as evidenced by the plan

18  support agreements, the large number of pleadings filed in

19  support of the global settlement, in support of the plan and

20  confirmation and the creditors' vote to accept the plan.

21          I don't think there's a need to go through the vote.

22  Mr. Miller did that already.

23          As to each of the debtors, all of the requirements of

24  Section 1129 have been satisfied including feasibility, good

25  faith and best interest.  Your Honor, I'm prepared to go

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 34 of 72

Page 34

1    through in more detail regarding each of the provisions of

2    Section 1129(a) and (b) of the Bankruptcy Code.  However, given

3    where we are, we're prepared to rely solely on the memorandum

4    and declarations which Mr. Miller referenced earlier submitted

5    in support of confirmation unless Your Honor has any specific

6    questions.

7            THE COURT:  I don't have any specific questions as to

8    the declarations that I've read.  And I accept those

9    declarations as direct evidence in support of confirmation.

10   (Declaration of John K. Suckow in support of confirmation was

11   hereby received into evidence as of this date.)

12   (Declaration of Daniel J. Ehrmann in support of confirmation

13   was hereby received into evidence as of this date.)

14   (Declaration of Steven J. Cohn in support of confirmation was

15   hereby received into evidence as of this date.)

16   (Declaration and supplemental declaration of Jane Sullivan on

17   behalf of Epiq Bankruptcy Solutions, LLC, regarding voting and

18   tabulation of ballots were hereby received into evidence as of

19   this date.)

20           THE COURT:  I do have a question as to how you propose

21   to deal with the remaining objection of Dotson.  And I don't

22   know whether or not that objection is outstanding because of

23   some inability in communicating with the client or because of a

24   concerted view on the part of that creditor that it wishes to

25   stand up and fight the tide.

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 35 of 72

Page 35

1          MS. FIFE:  Yeah.  Your Honor, we have had numerous

2    conversations with the attorney representing Dotson.  And he's

3    here in the courtroom today.  Unfortunately, we were unable to

4    reach a settlement with Dotson where, based on the record that

5    we've put before the Court today, we're prepared to allow the

6    attorney to go forward and make his case.  Is that okay?

7          MR. MILLER:  I would like to address that with Your

8    Honor, if I may.

9          MS. FIFE:  Oh.  Okay.  Actually, we also wanted to

10   introduce into evidence the declarations.

11         MR. MILLER:  He said they're admitted.

12         MS. FIFE:  Oh, okay.

13         MR. MILLER:  If Your Honor please, Harvey Miller

14   again.  As Ms. Fife indicated, Your Honor, it wasn't for lack

15   of effort.  The effort that was made over the period since the

16   approval of the disclosure statement is outstanding.

17         In addition to the twenty formal objections that were

18   filed, Your Honor, there were many threats of objections which

19   were dissipated through these intensive negotiations.  There

20   were objections, Your Honor, based -- many objections, I should

21   say, that were based upon assumption of executory contracts and

22   cure amounts which have been deferred to a date, I believe, in

23   February.  And those really are not confirmation objections,

24   Your Honor.  So that's out of the picture.

25         Of the twenty formal objections, we are left with one

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 36 of 72

Page 36

1    objection, Your Honor.  And that is the objection of Dotson.

2    And the Dotson objection, Your Honor, is based upon -- let me

3    just find my notes, sir -- three basic points.  There is no

4    risk of substantive consolidation of LBSF -- I'm sorry --

5    that's the CDIB.  But the global settlement and plan adjustment

6    as to Dotson is unjustified and improper.  The plan adjustment

7    of twenty percent as applied to Dotson pursuant to the global

8    settlement is unreasonable.

9         So the basic underlying objection here, Your Honor, is

10    that there is absolutely no risk of substantive consolidation

11    as it relates to the entities involved in the Dotson claims.

12         THE COURT:  In that sense, it's an objection that's

13    comparable to a number of other objections that were filed but

14    withdrawn.

15         MR. MILLER:  That's correct, Your Honor.  And I might

16    say, in connection with the Dotson claims, Your Honor, those

17    claims relate to the purchase of preferred securities that were

18    issued one in the case of Lehman Brothers UK Funding IV LP and

19    one in the case of Lehman Brothers UK Capital Funding LP.  The

20    smaller claim of 237,000 dollars is already subject to

21    objection.  And the basis of the objection, Your Honor, is that

22    this is not a creditors' claim but an equity claim based upon

23    the preferred securities.  A similar objection will be

24    interposed to the larger claim, Your Honor.

25         So what we have, Your Honor, is an objection,

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 37 of 72

Page 37

1    basically, to the global settlement, that the global settlement

2    should not be approved because it essentially results in

3    inequitable treatment of Dotson.  And I think, in that context,

4    Your Honor, we should bear in mind that bankruptcy courts are

5    empowered to approve settlements if they are in the best

6    interest of the estate.  And a settlement need not be in the

7    best possible outcome for the debtor but must not fall beneath

8    the lowest point in the range of reasonableness as the court of

9    appeals in this circuit has determined in Cosoff v. Rodman  and

10   in the Drexel case.

11          Compromises are a normal part of reorganization.  As

12   we have set forth in great detail in the memorandum of law that

13   was filed in support of the compromise and settlement.  So we

14   have to look, Your Honor, at the factors that the Court should

15   consider in relation to the approval of this global settlement

16   which is the lynchpin to this plan.  One is the probability of

17   success.  And what are we talking about, Your Honor?  We're

18   talking about a twenty percent risk that substantive

19   consolidation might be directed by a bankruptcy court.  That's

20   not a very high threshold.  And, Your Honor, we have filed, and

21   Your Honor has taken as evidence of the debtors' affirmative

22   case, the declaration of Mr. Suckow.  And that declaration,

23   Your Honor, is quite voluminous with the exhibits which takes

24   about four inches.  And Mr. Suckow's gone through, in detail,

25   the facts -- and he tried to present to Your Honor a very

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 38

1    balanced view.  Lehman operated, as has been stated in this

2    court many, many times, as a single enterprise under the name

3    Lehman Brothers.

4         The issuance of guaranties by Lehman in connection

5    with transactions, particularly under ISDA contracts and

6    derivatives, were dependent completely on the issuance of

7    guaranties.

8         The entities -- the so-called legal entities, Lehman

9    did not do business based upon legal entities but business

10   lines.

11        By the same token, Mr. Suckow has pointed out, yes,

12   electronically you could say there are books and records.

13   There is no evidence that has been produced in this court or

14   any place that absent the guaranties that were issued by the

15   holding company that anybody would have done business with one

16   of those thinly capitalized entities.  Legal entities -- as a

17   matter of fact, Your Honor, Lehman had 8,000 subsidiaries.

18   They were not all active.  And probably as of the date of the

19   commencement of the case, it was less than 4,000 that had some

20   function.

21        Risk was assigned centrally.  Decisions were made

22   centrally all as set forth, Your Honor, in Mr. Suckow's

23   declaration and as supported by Mr. Cohn and Mr. Ehrmann.

24        So in terms of whether there is a twenty percent risk,

25   Your Honor, in the legal world, I would have to say, Your

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 39 of 72

Page 39

1    Honor, certitude on the part of somebody doesn't mean

2    certainty.  There is always a risk.  Every time attorneys walk

3    into a courtroom, there's a risk.  I've lost a lot of cases I

4    thought I should have won.  And I've won a lot of cases I

5    thought I should lose.  So there's always the risk in

6    litigation.  And a twenty percent risk given the facts that are

7    established through the declarations that we have put in

8    this case, Your Honor, is not a major obstacle.  So we think --

9    we submit to Your Honor that the twenty percent risk is there.

10          The second factor, difficulties of collecting any

11   litigated judgment, that's not really a factor in this

12   situation.  But if substantive consolidation was directed,

13   there would be difficulties in corralling, if I can call it

14   that, foreign entities who are subject to their own insolvency

15   proceedings in different jurisdictions, not that it's

16   insurmountable, at least in our opinion.

17          The complex -- number 3, the complexity and likely

18   duration and expense and inconvenience and delay.  The

19   litigation that would erupt, Your Honor, if this plan is not

20   confirmed, as demonstrated by the polar extremes of the ad hoc

21   group's plan and the OpCo creditors' plan, and just reading the

22   disclosure statements relating to those two competing plans

23   demonstrates the extent of the issues and the time that would

24   be devoted to litigating those issues -- as Your Honor may

25   recall, an attempt was made when were in a competitive plan

Page 40

1    situation for a protocol on discovery.

2         THE COURT:  I think it was more than attempt.  We

3    actually had one.

4         MR. MILLER:  It's relative in one's mind.  In any

5    event, Your Honor, it took four months to get to that document

6    which you think we finally accomplished without a single day of

7    discovery, Your Honor.  No depositions were taken and we had

8    exhausted four months.  The request for documents were

9    astounding, Your Honor.  The burden that was put on the estate

10   to create a data room.

11        So in that context, Your Honor, if we are going to

12   litigate, if we have to litigate all these issues, one, it's

13   going to be a long, long time; two, it's going to be very, very

14   expensive.  It's going to be multi-faceted, multi-party.  I'll

15   just use an example, Your Honor, without -- with all due

16   respect, the litigation involving JPMorgan which has now been

17   pending for over a year, I believe, and I don't know where the

18   trial date is.  It's probably moved back someplace into 2013

19   'cause I know my deposition isn't scheduled till next year.

20        It's just beyond dispute, Your Honor, that the

21   complexity and duration and expense and inconvenience of

22   litigation would be overwhelming.  And what's that in effect,

23   Your Honor?  It delays distributions to creditors.  And there

24   is a time value to money.  And as I said before, Your Honor,

25   nobody thought on September 15, 2008, as Your Honor was waiting

Page 41

```
 1    for us to come down to court to anoint -- no.  I shouldn't say

 2    that -- for you to start acting in the case -- we didn't get

 3    here till Tuesday -- nobody thought that this would be over in

 4    three plus years.  In fact, we got a number of e-mails

 5    yesterday saying I don't believe it.

 6           So --

 7           THE COURT:  Well, it's not over yet.

 8           MR. MILLER:  No.  It's not over yet, Your Honor.  And

 9    unfortunately, there is a post-effective date administration

10    that will occur.

11           Number 4, Your Honor, the proportion of creditors who

12    do not object to the settlement or who affirmatively support

13    the proposed settlement versus the less than one million

14    dollars in opposition to the settlement.  There are twenty-nine

15    pleadings, Your Honor, in support of the settlement.  There are

16    PSA -- plan support agreements by creditors holding more than

17    450 billion dollars in claims, Your Honor.  Against that, we

18    have the one objection that is less than one million dollars of

19    two elements of a claim that are going to be -- that one is

20    disputed and one will be disputed by the debtor as equity

21    claims.

22           Factor number 5, Your Honor, the competence and

23    experience of attorneys and other professionals who support the

24    settlement.  This was not a settlement, Your Honor, that was

25    derived or formulated exclusively by the debtors.  The
```

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 42 of 72

Page 42

1    unsecured creditors' committee was an active, active

2    participant in the development of these compromises and these

3    settlements.  And credit must be given, Your Honor, to the ad

4    hoc group and Mr. Uzzi's participation in these negotiations as

5    well as the OpCo creditors.  The original meetings, everybody

6    had to wear a flack jacket.  That soon dissipated.

7            So the competence and experience of attorneys and

8    other professionals who support the settlement is outstanding,

9    Your Honor.  Leading members of the bar and expert

10   practitioners in this area.

11           Number 6, Your Honor:  the benefits to be received by

12   affected parties.  This, again, Your Honor, is self evident.

13   The recognition of guarantied claims, the reallocation, the

14   plan adjustment resolves all of the issues which would lead to

15   expensive and protracted litigation.  So there are huge

16   benefits.  And there are benefits to Dotson.  If Dotson is able

17   to establish a creditors' claim, Dotson's claim is based on a

18   guaranty.  If there was sub-con, that guaranty would be

19   eliminated.  So there is a real benefit flowing to Dotson if it

20   can establish it has a creditors' claim which is disputed.

21           Number 7, Your Honor:  the extent to which this

22   settlement is the product of arm's length bargaining and not

23   the product of fraud or collusion.  Well, again, Your Honor,

24   that factor is self-evident.  These were extensive

25   negotiations.  They were bitter at times.  There was even

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 43

1   yelling at times.  But eventually, rationality came to the

2   forefront and these settlements were accomplished.

3          And the last factor, Your Honor:  the debtors'

4   informed judgment that the settlement is fair and reasonable.

5   Your Honor, based upon the facts that have been established

6   here through the declarations, it's clear the debtors' informed

7   judgment is that the settlement is fair and reasonable and is

8   recommended as part of the confirmation of the Chapter 11 plan.

9          In terms of substantive consolidation, Your Honor, the

10  equitable doctrine permits a Court in a bankruptcy case

11  involving one or more related corporate entities in appropriate

12  circumstances to disregard separate identity of corporate

13  entities and to consolidate and pool their assets and

14  liabilities and treat them as though held and incurred by one

15  entity.

16         The Drexel-Burnham case, Your Honor, which was in this

17  district, is a comparative to the Lehman case.  And in the

18  debtors' memorandum of law, Your Honor, I think it's at page 15

19  and also cited in Mr. Suckow's declaration, we have side-by-

20  side put the Drexel factors and how they apply to Lehman.

21         There is no contrary evidence, Your Honor.  There is

22  no evidence by the objector of any reliance upon the separate

23  identities of any of the Lehman entities.

24         Consistent with the Drexel matrix, which is on pages

25  16 and 17 of the debtors' memorandum of law, a global

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 44 of 72

Page 44

1    settlement based upon a twenty percent risk of substantive

2    consolidation being directed is, as I said, not a high

3    threshold.  The nature of the Lehman enterprise and the

4    entanglement of its affiliates which evidences a single

5    enterprise accentuate the risk that there is at least a twenty

6    percent risk in any litigation and litigation that would be

7    expensive to conduct and, more importantly, delayed

8    distributions to the holders of allowed claims.

9         The record reflects that few, if any, of the Lehman

10   affiliates, other than LBHI and perhaps LBI, could stand on

11   their own and access credit.  The objector has not produced an

12   iota of evidence that it relied upon the separate identity and

13   creditor of any Lehman entity.  Rather, it's clear from the

14   claims that have been filed by Dotson that it did business with

15   the Lehman entities because of the guaranties issued by LBHI.

16        The debtors have attempted to present a very evenly

17   balanced presentation that demonstrates the risk of potential

18   substantive consolidation and the factors that might support a

19   denial of substantive consolidation.  Due consideration has

20   been given to the strengths and weaknesses of the issues.

21        In the context of all of that, Your Honor, this is a

22   compromise and settlement.  It does not require a mini trial.

23   All that has to be held by Your Honor is that the proposed

24   compromise and settlement does not fall below the lowest range

25   of reasonableness.  We submit to Your Honor that it does fall

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 45 of 72

Page 45

1    way above the lowest range of reasonableness.

2        In addition, Your Honor, as part of the global

3    settlement are the bilateral settlements which we have set

4    forth at length in the submissions to the Court.  We would

5    submit also that each of those settlements -- and there are no

6    objections to any of those settlements, Your Honor -- and the

7    settlement with the LBIE administrators was a major step in the

8    advancement of the progress of this case.  Very, very

9    difficult.  Consumed an awful lot of time.  But there's not one

10   objection to any of the bilateral settlements.  We don't think

11   it's necessary, Your Honor, to burden the Court by going

12   through each of those settlements.  In light of that, there are

13   no objections to those settlements.

14        THE COURT:  There's no need to do that.

15        MR. MILLER:  I beg your pardon.

16        THE COURT:  There's no need to go through the

17   bilateral settlements.

18        MR. MILLER:  So, Your Honor, in the context of the

19   declarations which represent the affirmative case of the

20   debtors in support of confirmation of the Chapter 11 cases and

21   acknowledging that the global settlement is the lynchpin to the

22   plan of reorganization and the overwhelming acceptance of

23   creditors that demonstrates that we must -- as I said before,

24   we must have done something right in this case, we suggest --

25   don't suggest -- we ask Your Honor to confirm the Chapter 11

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 46 of 72

Page 46

1    case and approve the global settlement.  Thank you.

2         THE COURT:  Fine.  Now I have -- I'm about to make a

3    brief statement.  You can sit down.

4         MR. MILLER:  You have my permission, Your Honor.

5         THE COURT:  You can sit down if you'd like.

6         I've read everything that I could get my hands on

7    relating to confirmation including various statements that have

8    been made by parties in interest including the creditors'

9    committee, the ad hoc committee, counsel for LBIE.  I don't

10   mean to leave anybody out that's important.  But I read

11   substantial briefs and statements in support of confirmation.

12   This is, in effect, a time when parties who might wish to be

13   heard in support of confirmation would have that opportunity.

14   This is also a time when counsel for Dotson, the last objector

15   standing, might reasonably explain why this objection is still

16   being prosecuted and how counsel intends to proceed.  If that

17   objection is going to be diligently and ardently pressed, I'd

18   like to know how that's going to happen.  I think it's

19   important for us to know that either before hearing from those

20   who might wish to say a few words in support of the plan.

21        MR. MILLER:  We agree, Your Honor.

22        THE COURT:  So let me hear what counsel for Dotson

23   wishes to say other than "I'm sorry".

24        MR. SULLIVAN:  Your Honor, James Sullivan of Moses &

25   Singer, counsel for Dotson Investment Ltd.

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 47 of 72

Page 47

 1            THE COURT:  You're in a very tough spot, Mr. Sullivan.

 2    You know that.

 3            MR. SULLIVAN:  Pardon?

 4            THE COURT:  I said you're in a very tough spot.

 5            MR. SULLIVAN:  I understand that, Your Honor.  I just

 6    wanted to respond to your question that you posed.  I know we

 7    kind of got a little bit far afield of it when we started to

 8    get into arguments regarding the settlement.  But you had asked

 9    about the discussions between Dotson and the debtor.  We are

10    amenable to a compromise but thus far have not received any

11    offer from the debtors.  So if --

12            THE COURT:  Is this about horse trading or is this

13    about a legitimate concern that the compromise reflected in the

14    global settlement is not fair and appropriate under all the

15    circumstances?

16            MR. SULLIVAN:  Your Honor, I think we have a very

17    sound objection.  You know, I stand here alone, Your Honor.

18    But I've heard from many other creditors who are not here

19    before you today, many of them smaller creditors without the

20    financial incentive to come up here and try to stand in front

21    of a train that looks like it's coming down the tracks right at

22    us.  So I commend the debtors for resolving an unbelievable

23    number of objections.  And I have no qualm that they really did

24    an inordinately good job in trying to resolve all these claims

25    and objections.  But I didn't want the record to reflect that

Page 48

1    the creditor that I represent is being obstinate or

2    unreasonable in an effort to kind of blackmail the debtors into

3    getting something to which it's not entitled.  As far as --

4         THE COURT:  You absolutely have the right to present

5    your objection and to prosecute it fully.  My question to you

6    is how you intend to do that.

7         MR. SULLIVAN:  Your Honor, the way I see it, there are

8    primarily two issues that our objection gets to.  The first one

9    debtors' counsel addressed to a large degree.  And that's the

10   settlement as it pertains to the twenty percent give-up by

11   certain creditors in favor of other creditors.

12        The second issue that I'll be addressing today is the

13   best interest of creditors test.  For similar reasons, I don't

14   believe that the debtors will be able to satisfy that test

15   because the way that their liquidation analysis is performed,

16   it continues to use classes as if the Chapter 7 trustee would

17   basically adopt the plan that the debtors are proposing here

18   today.  And therefore, similarly situated creditors are not

19   receiving similar treatment.  So if you were to go through the

20   liquidation analysis, you would see that a general unsecured

21   creditor would be receiving a different distribution than other

22   general unsecured represented in other classes.  So there's a

23   defect in the liquidation analysis.  And if you were to take

24   away some of the assumptions set forth in that analysis, I

25   think Your Honor would surely come to the conclusion that

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 49 of 72

Page 49

1    Dotson is not better off in this Chapter 11 pursuant to this

2    plan as opposed to a Chapter 7 where it's not going to be

3    subjected to, among other things, a twenty percent give-up in

4    favor of other creditor classes.

5          THE COURT:  Now I ask you whether or not your

6    objection is going to be based purely on legal argument or

7    whether or not you intend to either offer evidence or cross-

8    examine any of the witnesses whose declarations I've already

9    accepted.

10          MR. SULLIVAN:  I would intend to cross-examine two

11    witnesses, Your Honor.  I believe the -- I think it was Mr. --

12    I'm not sure how to pronounce it -- Suckow who I believe was

13    the witness predominantly responsible for giving testimony with

14    respect to the nature of the settlement and the reasonableness

15    of the settlement.  And the second witness would be the

16    debtors' witness who would propose to support the assumptions

17    underlying the liquidation analysis and the end result of that

18    analysis.

19          THE COURT:  Is there anything more at this time?

20          MR. SULLIVAN:  No, Your Honor.  And that would just be

21    followed by argument.

22          THE COURT:  All right.  I think this would be a

23    reasonable time to hear from those who have been active in the

24    plan process who may wish to say a few words or they can simply

25    rely on their papers.  It's up to them.

 1            MR. DUNNE:  Thank you, Your Honor.  Good morning.  For

 2     the record, it's Dennis Dunne of Milbank, Tweed, Hadley &

 3     McCloy on behalf of the official committee of unsecured

 4     creditors.  For the most part, we will rely on our pleadings

 5     but I'll say a few brief words.

 6            Let me start with one reflection on the path to

 7     confirmation.  As I was saying to Mr. Miller recently, who

 8     would have thought three and a quarter years ago that when we

 9     would begin the confirmation hearing, we'd have near universal

10     support among the creditors for our plan.  These cases, as Your

11     Honor no doubt vividly recalls, began amidst chaos,

12     uncertainty, personal anguish and rapidly declining asset

13     values.  The first few months of the case were frenetic and

14     fixated almost exclusively on selling assets that were in the

15     process of vanishing completely and stabilizing other

16     properties for future disposition or monetization after values

17     had rebounded.

18            When the dust finally settled after several large

19     asset sales, the committee and the debtors encountered a

20     cacophony of divergent and competing creditor voices all of

21     whom were equally convinced that their view of the facts and

22     the law as applied to the Lehman universe was the one on a

23     sellable truth.  They had diametrically opposed views on

24     substantive consolidation, recharacterization of intercompany

25     claims, the validity of guaranties and other critical elements

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 51

1    of the plan.  Given that each of these issues drove values and

2    recoveries to one group of creditors at the expense of another

3    group, we originally thought that it was likely that a plan

4    that satisfied all key constituents would be unattainable in

5    these cases.  More probable, there would be some group or

6    another that would decide that a litigated outcome would exceed

7    a settled one.

8             Against these long odds, the debtors and the committee

9    succeeded in crafting a plan that garnered near universal buy-

10   in from creditors.  It proves what I believe is the wisdom and

11   propriety of the plan settlements.  They were calibrated to

12   precisely reflect litigation probabilities.  If those

13   calibrations were incorrectly said, one large group or another

14   would have failed to settle but would have instead viewed the

15   plan as having passed over the inflection point where litigated

16   outcomes would have been preferred.

17            The debtors, the committee and the other ad hoc groups

18   in the case took extreme pains to get it right and we did.  As

19   a result, we are in a place, Your Honor, where we never thought

20   we'd be:  standing before the Court seeking to confirm a plan

21   that faces minimal creditor opposition.

22            I will spend just a couple minutes giving the Court

23   the benefit of the committee's perspective on the plan.  As

24   Your Honor knows well, the committee has been involved in every

25   aspect of the Chapter 11 cases since its formation.  The

1    committee's professionals have worked closely with the estates

2    and the management and wind down of each of the debtors'

3    discreet asset classes.  As we explained to the Court in our

4    written submission and as we discussed during the disclosure

5    statement hearing, the committee developed its own legal

6    theories and strategies regarding a wide array of matters

7    including appropriate allocation of value, distributable under

8    the plan to various classes of creditors.  The committee has

9    reviewed and analyzed the key issues in these cases including

10   substantive consolidation, intercompany claim

11   recharacterization and the enforceability of various

12   guaranties.  As a result of these independent analyses, the

13   committee, as a fiduciary, brought to bear on the plan process

14   a comprehensive knowledge of each debtor's assets and claims

15   pool as well as a global perspective on the key value drivers

16          From the very beginning, Your Honor, the centerpiece

17   of our proposed plan construct was a global settlement of all

18   the plan issues.  As the Court is aware, the global settlement

19   concept was included in all the iterations of the Chapter 11

20   plan and it became a pillar of the plan.

21          Let me speak quickly about the one pending objection.

22   Dotson objects to the plan on the ground that it fails to

23   satisfy the standards of Section 1123(b)(3) and Bankruptcy Rule

24   9019.  As explained by Mr. Miller and Ms. Fife, a Chapter 11

25   plan may include a settlement or adjustment of any claim which

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 53 of 72

Page 53

1    the Court must evaluate under the appropriate approval standard

2    as set forth in Bankruptcy Rule 9019.   The Court must find that

3    the settlement is fair and equitable and in the best interest

4    of the estate.   A settlement should be approved so long as it

5    does not fall below the lowest point in the range of

6    reasonableness.

7         These plan settlements are the most critical component

8    of the plan.   They represent a negotiated resolution of the

9    various plan issues and have garnered the support of creditors

10   asserting over 450 billion dollars in claims as well as several

11   fiduciaries appointed in the foreign insolvency proceedings of

12   eighty-seven affiliates.   Such resolution benefits all the

13   debtors' creditors by avoiding prolonged and costly litigation.

14        The complexity of the controversy surrounding the

15   issue of substantive consolidation is evidenced by the

16   competing plans of reorganization filed by the two ad hoc

17   groups.   These plans were based on diametrically opposed views

18   as to the propriety of substantive consolidation.   And they

19   demonstrated, among other things, that colorable arguments

20   existed on both sides of the dispute

21        Mr. Miller and the debtors' submissions, including the

22   affidavit, have already addressed the Augie/Restivo factors at

23   length so I will not belabor the point.   But I will emphasize

24   that at the outset of the Chapter 11 case, the committee

25   directed its legal and financial advisors to determine whether

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 54

1   sub-con of all or some of the debtors or substantive

2   consolidation of the debtors with some or all of the affiliates

3   was warranted and, if so, whether it would be an appropriate

4   result for the debtors' unsecured creditors.

5          In undertaking the analysis, the committee's advisors

6   investigated all aspects of the debtors' pre-petition

7   businesses relevant to the substantive consolidation inquiry

8   including information developed by the committee's financial

9   advisors, document discovery received from various sources,

10  public information available prior to the commencement of the

11  Chapter 11 cases, interviews with creditors and information

12  received from the debtor and from the examiner.  In the end,

13  the committee recognized that (1) the cost of litigation to

14  resolve substantive consolidation would be substantial; (2) such

15  litigation would not provide any assurance of the outcome

16  deemed most favorable by the committee; and (3) a resolution of

17  such litigation might require several levels of appellate

18  review thereby postponing any prospect of an expeditious

19  distribution to the debtors' creditors of estate assets.

20         The committee concluded that an economic settlement

21  that bridged the gap between substantive consolidation and a

22  deconsolidated plan would be in the best interest of the

23  debtors' creditors.

24         We believe that this compromise is both consistent

25  with our substantive consolidation analysis and the settlement

1    approval standard articulated by Second Circuit and that the

2    plan settlements are fair and equitable and should be approved

3    by the Court today.

4            So, Your Honor, the plan is a remarkable

5    accomplishment by all the parties involved.  The fact that no

6    voting class has opposed the plan is a testament to the

7    carefully calibrated settlements embodied in the plan.  As

8    importantly, it avoids years of litigation and allows

9    distributions to creditors to commence early next year.  We ask

10   the Court to approve the plan and enter an order substantially

11   in the form filed by the debtors.  Thank you, Your Honor.

12           THE COURT:  Thank you.

13           MR. UZZI:  Good morning, Your Honor.  Gerard Uzzi on

14   behalf of the ad hoc group.  Your Honor, I actually wasn't

15   planning on rising today.

16           THE COURT:  That's okay.

17           MR. UZZI:  But I thought there was just a few comments

18   I could make to that that were helpful to the specifics that

19   are before the Court today.

20           THE COURT:  All right.  Thank you.

21           MR. UZZI:  But before I do so, and to not rise again

22   later, I just must take this opportunity to thank the Court for

23   the opportunity that you've given us throughout these cases to

24   be heard throughout the cases and for your patience and for

25   your stewardness in this case.

1          I must also take this opportunity, Your Honor, to

2     thank really all the other professionals in the case in the way

3     that they've interacted with us, but, in particular, I really

4     have to thank and commend both Weil Gotshal and A&M for the way

5     they ran this case.  I do think -- we said it in our papers.

6     I'll say it now and I'll say it again in the future.  It is

7     truly a remarkable result today, certainly not one that I would

8     have predicted even as little as about six months ago.  So,

9     really, my hats off to them and I think they deserve many more

10    accolades going forward.

11          With respect to the issue here -- I'd just like to

12    make a couple of brief points.  And I certainly believe no

13    matter how small a creditor is that they deserve their day in

14    court.  So I don't mean to pick on the objector here today.

15    But we've heard the use of about a million dollar claim.

16    Nobody's going to get par recovery in this case.  At best,

17    maybe we're talking about twenty percent.  So recoveries would

18    be at the LBHI level about 200,000 dollars.  And then we're

19    hearing complaints about a twenty percent payover on 200,000

20    dollars.  So very rough math, we're talking about 40,000

21    dollars in issue today.  Just to frame this for the Court.

22          Now I'm particularly surprised, Your Honor, having

23    been the champion of, I think, the LBHI interest -- and I can

24    assure you we spent much more than 40,000 dollars pursuing and

25    protecting those interests  -- that an LBHI creditor, whether

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 57 of 72

Page 57

1  it be a guaranty creditor or any other creditor is standing up

2  here complaining about this settlement on the grounds that

3  there's no basis for substantive consolidation 'cause you need

4  to think about what the alternative is.  And throughout these

5  cases, Your Honor, I know we've been phrased as the substantive

6  consolidation plan proponents, the substantive consolidation

7  champions.  We have tried to step away from the use of the word

8  "substantive consolidation" because in many of our papers, we

9  said we think it oversimplifies the issues.  It's a bookend.

10  We have sub-con on one end; we have non-con on the other end.

11  And we have countless, infinite probably, permutations in the

12  middle.

13          So what were the non-con plan proponents advocating?

14  They were advocating for the separate treatment of LBHI.  And

15  all of the debtors.  But what does that really mean?  We need

16  to think about that.  Well, the other thing they were

17  advocating for -- or if you look at the recovery analysis --

18  you'll look at LBHI's recovery analysis, you'll see over half

19  of the assets, the actual assets that LBHI receives are

20  recoveries on intercompany claims.  Well, naturally, one of the

21  things the non-con plan proponents were going to argue was for

22  the disallowance of LBHI's claims against the affiliates.

23          So had we not had the settlement, an important part of

24  the settlement was a recognition or a compromise on those

25  intercompany claim issues.  In fact, that was, for us, the

1  settlement.  And so, what we have here is a recognition, a

2  realization, of twenty-five billion dollars worth of

3  distributable value on behalf of the LBHI that the objector

4  wants to put in his pocket and say, well, I have that already

5  and then complain about giving up 40,000 dollars.

6       So, you know, I just urge the Court in considering the

7  fairness of the settlement that -- and we've heard the term

8  "holistic" and -- the settlement maybe isn't pretty in its

9  machinations.  But it's not just about substantive

10  consolidation.  This creditor, I can assure you, would do much

11  worse -- and I don't think they've done the analysis.  I don't

12  think they've run the math.  They would do much worse under

13  what is the alternative outcome which, if we litigated, we

14  don't think would come to fruition.  But I think just the cost

15  of getting there, and I know what my litigation budget was to

16  get there, would dilute his recoveries by more than 40,000

17  dollars, Your Honor.

18       That's all I have.  If you have any questions for us,

19  Your Honor, obviously, we're happy to answer them.  And again,

20  thank you, Your Honor.

21       THE COURT:  Some day I'll ask you what your litigation

22  budget was.

23       MR. UZZI:  Fair enough, Your Honor.

24       THE COURT:  Okay.  I think we're going to hear from

25  LBIE's counsel.  Good morning.

08-13555-mg  Doc 23130  Filed 12/07/11  Entered 12/08/11 14:37:11  Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 59 of 72

Page 59

1        MR. HUEBNER:  Good morning, Your Honor.  For the

2    record, I am Marshall Huebner of Davis Polk & Wardwell on

3    behalf of LBIE.  Your Honor, I'm not going to engage in thanks

4    or congratulations because this is a contested hearing and

5    there is an objector.  So I want to speak very briefly to the

6    objector and in support of confirmation.

7            Your Honor, with all due respect, I think Dotson has a

8    lot of nerve to file a seven-page objection, to take no

9    discovery, to present no evidence and to not proceed in any way

10   except to stand up for the first time at a confirmation

11   hearing I think speaks volumes about the nature of what is

12   really going on here.  As Your Honor may remember, LBIE was not

13   yet settled at the disclosure statement hearing.  And we were

14   prepared to proceed having blocked out two weeks of trial time

15   because that's actually what one probably should have done if

16   one believed that the settlement needed to be proven as

17   inappropriate.

18       THE COURT:  I actually have that time. So we're all

19   set as a result of what you would do on your disclosure

20   statement.

21       MR. HUEBNER:  Well, it would be the most interesting

22   cost benefit ratio for a 27,000 dollar possible benefit against

23   about twenty-seven million dollars of professional fees.

24           But, Your Honor, let me be very clear because the

25   world is much as Mr. Miller described it but actually even

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 60 of 72

Page 60

1    better because what we hope the Court does not do, 'cause I

2    don't think you have to do, is find that there is a twenty

3    percent risk of substantive consolidation.  That's not the test

4    at all.  You only need to find that the twenty percent

5    settlement is somewhere within the range of reasonableness of

6    some risk of substantive consolidation.  And obviously, as a

7    foreign affiliate, possibly among the largest, we have strong

8    views on the risk and probabilities of the various sub-cons.

9    But you don't have to find any of that.  You just have to find

10   that twenty percent is somewhere in the range of

11   reasonableness.

12          And, Your Honor, the legal objection -- I think the

13   best interest argument is going to be a very interesting one

14   for counsel to Dotson to make because when you read their

15   seven-page pleading -- and to be fair to them, I'm counting the

16   signature block and the captions and all those things -- what

17   you actually see is sort of nothing until the end.  They

18   describe the nature of their claims and then they say the

19   debtors have presented no evidence of any of the factors of

20   sub-con.  And they say that in a generic way with no reference

21   to any of the pleadings.  And they cite a bunch of cases with

22   generic parentheticals.  That is not a true statement.  And

23   Your Honor knows that probably better than anyone because you

24   have read all the declarations, the evidence that is admitted

25   and uncontradicted that, in fact, goes to those factors.   So

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 61 of 72

Page 61

1    I'm not really sure how, in a clean conscience, they can sort

2    of say there's nothing here, Your Honor, to support the

3    settlement.

4            And then there is the legal theory that we heard this

5    morning which is really what they intend to explore today is a

6    best interest of creditors, you know, the argument that in a

7    liquidation, they would not suffer sub-con and thus would do

8    better.  It's a very intellectually important and interesting

9    argument.  But here's something that I think is worth thinking

10   about for context.

11           When you read their objection, the 1129(a)(7) argument

12   doesn't appear until the very end when they have an (a) through

13   (h) where they just list flat out sort of every legal theory

14   they could think of.  There isn't even case law or

15   argumentation that I could find -- and I'm going to apologize

16   in advance.  I read it rather quickly on a colleague's iPad

17   here in the courtroom.  I don't think they even sort of made

18   their prima facie case except for tossing it in as one of the

19   theories.

20           So when you think about what it is that they have to

21   prove this morning, they have to essentially prove that they

22   will do better in a liquidation.  That, in essence, means

23   proving that there is zero risk of substantive consolidation

24   and that they're entitled to, essentially, judicial notice that

25   in a liquidation analysis it must be assumed that the debtors

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 62 of 72

Page 62

1    are inherently separate.

2          This is philosophically circular because exactly what

3    the settlement is designed to avoid is a full-scale blown-out

4    trial on the issue of what the risks of sub-con actually are.

5    And so, humbly, I would suggest that once you accept the legal

6    conclusion, as I think the Second Circuit has made very clear,

7    that a settlement is designed to avoid a mini trial on the

8    merits.  It's designed to provide for only a canvassing of the

9    issues.  These you have to sort of take as a given unless I

10   think you surprised a rather great number of participants that

11   there is at least some risk of sub-con.  And once you decide

12   that there is at least some risk of sub-con, that some risk has

13   to be analogously applied to the best interest analysis and

14   they sort of lose as a matter of law.

15         So, again, it's not really my case other than to say

16   that we probably -- LBIE and its affiliates with twenty-six

17   billion dollars of reserved agreed gross claims against the

18   debtors had rather more than 878,000 dollars at stake and had a

19   rather strong impassionate view on the impropriety of sub-con

20   including of the foreign affiliates where, obviously, we stood

21   to lose a great deal.  Which is why we both urge you not to

22   make any specific findings about the probability of sub-con

23   because there are lots of other states still ticking along but

24   merely to find exactly what the debtors have asked you which is

25   that twenty percent is a reasonable settlement.  And speaking

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 63

1     for the tens of billions of dollars on our end that we're in a

2     similar situation, we think that confirmation should be

3     approved.  Thank you.

4          THE COURT:  Thank you.  Are there any other parties

5     who wish to be heard in support of confirmation or in reference

6     to the global settlement or any other issue that we've been

7     discussing?  All right.  Mr. Miller?

8          MR. MILLER:  Your Honor, if I might, I would like to

9     reply to Mr. Sullivan.  As Mr. Huebner has pointed out, Your

10    Honor, if you look at the objection interposed on behalf of

11    Dotson, at paragraph 12, it says, "Consistent with the

12    foregoing", which is the objection to the sub-con risk, "the

13    creditors" -- and at that time, it was CDIB and Dotson --

14    "reserve their right to supplement the objection and to argue

15    any of the following at the confirmation hearing."  One, Your

16    Honor, they never supplemented the objection.  So, as Mr.

17    Huebner described, this is like a laundry list of possible

18    objections.  And as he pointed out, the objection in

19    subparagraph 12(d), the plan's liquidation recovery analysis

20    does not sufficiently demonstrate that dissenting creditors

21    such as the Creditors would receive at least as much under the

22    Plan as under a Chapter 7 liquidation, in violation of

23    §1129(a)(7)."

24          When Mr. Sullivan stood here and responded to Your

25    Honor's question about how he was going to present his case,

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 64 of 72

Page 64

1    the thrust of his argument was that the liquidation analysis

2    and the declaration by Mr. Cohn in support of the analysis of

3    the treatment of the claims is questionable because it assumes

4    that the same settlement would be made by a Chapter 7 trustee.

5         Now, Your Honor, I believe that that is a question of

6    law.  And we have cited in our memorandum, and it is the law in

7    this circuit, as stated in a number of cases include Adelphia

8    Communications Corp. and in the Enron case and in the Capmark

9    Financial Group case, a Delaware case, that considering -- the

10   essence of all of these cases, Your Honor, stand for the

11   proposition that in doing the 1129(a)(7) test, the assumption

12   is proper and appropriate that the Chapter 7 trustee would make

13   the same settlements as contemplated in the Chapter 11 plan

14   because what you're comparing is the Chapter 11 plan versus a

15   Chapter 7 liquidation.

16        So if that's the argument of Dotson, Your Honor, as a

17   matter of law, he has to lose.  And there really isn't any need

18   for cross-examination of Mr. Cohn if Your Honor rules that that

19   is the law.  And if that's the only thing he's talking about,

20   is taking out the assumptions that go into the liquidation

21   analysis, he has not got any legal basis to do that, Your

22   Honor.

23        THE COURT:  Okay.  I think this may be a suitable time

24   for us to take a break.  And I'm going to suggest a ten minute

25   break.  And beyond suggesting a break, I'm going to suggest

1    that Mr. Sullivan think hard about what he's in the midst of

2    doing given the legal arguments that have been made not only by

3    Mr. Miller but by counsel for LBIE concerning the position that

4    he is articulating and the arguments that have been made by

5    counsel for the ad hoc committee and by counsel for the

6    creditors' committee.

7            He represents a creditor that is clearly entitled to

8    press objections and will have time to do that should he choose

9    to proceed.  But it's also true that the objection was filed

10   jointly with another client of Moses & Singer, China

11   Development Industrial Bank, and that client which had joined

12   in the very same objection, withdrew the objection.  I don't

13   think it's a proper use of the confirmation hearing to, in

14   effect, use an objection as a means of coercion to try to

15   obtain a deal.  And that's one of the interpretations to be

16   drawn from Mr. Sullivan's earlier comments that he was, in

17   effect, trying to make a deal for his client.  I think that the

18   value of that deal probably has gone down rather than up as a

19   result of standing in front of a tank.  And I have this image

20   of Tiananmen Square except I don't see this as a principal in

21   command standing in front of the tank.  I see this as someone

22   who is simply doing his best for his client.  But there are

23   bigger issues before the Court than that.

24           So let's use the break for a couple of reasons.  One,

25   we all need it.  Two, I think it makes sense for Mr. Sullivan

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 66 of 72

Page 66

1   to think carefully about how he wishes to proceed so that we

2   can do this as efficiently as we can do it.  And, three, it

3   might be worth having a conversation with other parties who

4   have been particularly active in the case to see if this matter

5   can be resolved.  We'll take a ten minute break.

6          (Recess from 11:26 a.m. until 12:09 p.m.)

7              THE COURT:  Be seated, please.  Where do we stand at

8   this point?

9              MS. FIFE:  Your Honor, Lori Fife on behalf of the

10   debtors again.  I'm pleased to report that during the break, we

11   had an opportunity to meet with Mr. Sullivan on behalf of

12   Dotson.  And he has agreed to withdraw his objection based on

13   the following deal:

14              The debtors have agreed to meet with Mr. Sullivan and

15   his client, if he chooses, within sixty days from the entry of

16   the confirmation order if the order is entered to discuss his

17   client's claim.  We have made it clear to Mr. Sullivan that it

18   is the debtors' position that that claim is not an allowable

19   claim but we will, in fact, meet with him.  We will provide

20   documents to him.  And he's able to articulate any grounds for

21   the allowance of that claim.  And with that, I believe, Mr.

22   Sullivan is willing to withdraw the objection, Your Honor.

23              THE COURT:  Mr. Sullivan, can you confirm?

24              MR. SULLIVAN:  That's correct, Your Honor.  This is

25   James Sullivan.  That's correct.

08-13555-mg   Doc 23130   Filed 12/07/11   Entered 12/08/11 14:37:11   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 67 of 72

Page 67

1          THE COURT:  Okay.  So with that, we now have a fully

2     consensual case which is really quite extraordinary.

3          MR. MILLER:  I just rise, Your Honor, because there's

4     one commitment.  One of the objectors was the city of Coppell

5     in Texas.  And as part of the withdrawal of that objection, we

6     agreed to make a statement on the record, if I might, Your

7     Honor.

8          THE COURT:  Go right ahead.

9          MR. MILLER:  The statement is:  "All secured claims

10    are entitled to interest to the extent permitted under Section

11    506 of the Bankruptcy Code to the extent of the value of the

12    collateral securing the claim and tax liens are retained until

13    the claims have been paid or the collateral is surrendered.  In

14    each case, the debtors retain the right to object to or dispute

15    the asserted claim and validity of the lien on any basis."

16    That's the statement.

17          I would also point out, Your Honor, we are going to

18    make one minor change to the proposed order to accommodate the

19    United States trustee.

20          And there are two stipulations that have been filed,

21    Your Honor.  On the agenda, items 63 and 64, notice of

22    presentment of stipulation and agreement by and among Fannie

23    Mae, Freddie Mac and the debtors regarding the third amended

24    plan.  And number 64, notice of stipulation among debtors and

25    Fidelity National Title Insurance Company resolving disputes in

1   connection with plan.

2           With that, Your Honor, the debtors' case -- we rest.

3           THE COURT:  Is there anything that any other party has

4   to present?  Well, I did reserve two weeks on my calendar for

5   this.  And I'm not sure how I'm going to use the next two

6   weeks.

7           In anticipation of today's hearing and as I was

8   watching the electronic docket and noting that a number of

9   objections that I had been reviewing were falling by the

10  wayside, and that this was becoming a remarkably consensual

11  confirmation hearing and, with the withdrawal of the Dotson

12  objection moments ago, now a completely consensual confirmation

13  hearing, I jotted down some thoughts that I wanted to express.

14  And I'm going to read them into the record because I gave these

15  words enough thought that I might as well follow the script

16  that I made for myself.

17          My world changed when the Lehman cases were assigned

18  to me and so did yours.  For me, it has been a once in a

19  lifetime experience.  To have worked across the bench from so

20  many outstanding professionals in promoting conflict resolution

21  and helping to bring these truly extraordinary one-of-a-kind

22  cases to this culminating substantive moment, superlatives

23  abound.  And we have heard them all and probably used them all.

24  This is the biggest, the most incredibly complex, the most

25  impossibly challenging international bankruptcy that ever was.

08-13555-mg    Doc 23130    Filed 12/07/11    Entered 12/08/11 14:37:11    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 69 of 72

Page 69

1          But the greatest superlative of all is reserved for

2     today.  This largest ever unplanned bankruptcy that started in

3     chaos, accelerated the financial crisis and eroded confidence

4     in the global financial system also has yielded the most

5     overwhelming outpouring of creditor consensus in the history of

6     insolvency law.  What a difference three years can make.

7          Never before have divergent holders of 450 billion

8     dollars in claims recognized the benefits of pragmatic

9     compromise and come together as one in support of a single

10    Chapter 11 plan.  This is a monumental achievement in our

11    field, awe-inspiring, really, that, to me, represents the

12    highest and best use of Chapter 11 in the public interest.

13          For myself, I'm extremely proud to have presided over

14    this transparent, fair and the remarkably successful process

15    that stands out as perhaps the finest example of the

16    flexibility, power and utility of the United States bankruptcy

17    system.

18          Our system is not perfect.  But together we have shown

19    the world that it can work very well indeed.  Lehman may once

20    have been a too-big-to-fail systemically significant global

21    financial institution.  But it was not too big to resolve in

22    Chapter 11.  I congratulate each and every professional in

23    every single law firm and advisory firm here and in foreign

24    jurisdictions that contributed in ways recognized and

25    unrecognized, large and small, to this historic confirmation of

1    Lehman's plan.  You should all feel great pride in what has

2    been accomplished.

3          And I wish each of you a happy and healthy holiday

4    season.  Those who have worked so hard deserve a break.  All

5    objections to confirmation that have not been withdrawn are

6    overruled.  The plan is confirmed and an appropriate order will

7    be entered.  And we're adjourned in time for lunch.

8        (Applause)

9        (Whereupon these proceedings were concluded at 12:17 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 71

```
 1

 2                          I N D E X

 3

 4                        E X H I B I T S

 5    NO.      DESCRIPTION                      ID.     EVID.

 6    ---      Declaration of John K. Suckow in          34

 7             support of confirmation

 8    ---      Declaration of Daniel J. Ehrmann in       34

 9             support of confirmation

10    ---      Declaration of Steven J. Cohn in          34

11             support of confirmation

12    ---      Declaration and supplemental              34

13             declaration of Jane Sullivan on

14             behalf of Epiq Bankruptcy

15             Solutions, LLC, regarding voting

16             and tabulation of ballots

17

18

19                        R U L I N G S

20    DESCRIPTION                            PAGE     LINE

21    Modified third amended joint Chapter 11    70       6

22    plan of reorganization of Lehman

23    Brothers Holdings Inc. and its affiliated

24    debtors confirmed

25
```

Page 72

1

2                          C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7        Lisa Bar-          Digitally signed by Lisa Bar-Leib
                            DN: cn=Lisa Bar-Leib, o, ou,
8        Leib               email=digital1@veritext.com,
                            c=US
9    _____    Date: 2011.12.07 14:59:21 -05'00'

10   LISA BAR-LEIB

11   AAERT Certified Electronic Transcriber (CET**D-486)

12

13

14   Veritext

15   200 Old Country Road

16   Suite 580

17   Mineola, NY 11501

18

19   Date:  December 6, 2011

20

21

22

23

24

25