KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Lauren Macksoud
Joshua Friedman

*Counsel to Southern Pacific Securities 05-1 PLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------ X | | |
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13355 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ------------------------------------------------------------------ X | | |

**RESPONSE OF SOUTHERN PACIFIC SECURITIES 05-1 PLC**
**TO DEBTORS' TWO HUNDRED AND THIRTY-THIRD OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Southern Pacific Securities 05-1 PLC ("SPS") by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' Two Hundred and Thirty-Third Omnibus Objection to Claims (No Liability Derivatives Claims), dated November 8, 2011 (the "Objection"). In support of this response, SPS respectfully states as follows:

**BACKGROUND**

1.     SPS and Lehman Brothers Special Financing Inc. ("LBSF") entered into that certain 1992 ISDA Master Agreement (Multicurrency-Cross Border), dated February 23, 2005 (including the Schedule and any amendments thereto, the "Master Agreement").[1]

---

[1] Pursuant to the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution

1

2. Pursuant to the terms of the Master Agreement, Lehman Brothers Holdings Inc. ("LBHI") served as Credit Support Provider to LBSF.[2] On February 23, 2005, LBHI executed a guarantee (the "Transaction Guarantee"), unconditionally guaranteeing the obligations of LBSF in connection with the Transaction. In addition, LBHI, acting through the Executive Committee of its Board of Directors, guaranteed all obligations of LBSF (together with the Transaction Guarantee, the "Guarantee").

3. Beginning on September 15, 2008 and periodically thereafter, LBHI, LBSF and certain of their affiliates (collectively, the "Debtors") commenced voluntary cases under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures.

4. LBHI's and LBSF's chapter 11 filings each constituted an Event of Default under the Master Agreement, which, pursuant to Section 6(a) of the Master Agreement, entitled SPS, as the Non-defaulting Party, to designate an Early Termination Date, by which all outstanding transactions under the Master Agreement would be terminated. As a result, in the exercise of its rights under Section 6(a) of the Master Agreement and in accordance with Section 12 of the Master Agreement, SPS delivered a notice dated February 9, 2009 to LBSF terminating all outstanding transactions under the Master Agreement and designating February 18, 2009 as the Early Termination Date (the "Termination Notice").

---

Procedures for Claims Against Debtors, dated April 19, 2010, all of the information SPS submitted in connection with the Proofs of Claim and Questionnaires are part of the record, and SPS need not resubmit them in connection with this Response.

[2] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Master Agreement.

5. SPS subsequently delivered, pursuant to Section 6(d) of the Master Agreement, a statement of calculation (the "Calculation Statement"), which, consistent with the terms of the Master Agreement, set forth the amount payable upon termination and all out-of-pocket expenses and costs incurred by SPS in connection with the enforcement and protection of its rights under the Master Agreement, including, without limitation, legal fees and costs, expenses, damages and interest thereon (the "Termination Amount"). Pursuant to Section 11 of the Master Agreement, a "Defaulting Party [here, LBSF] will, on demand, indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees…incurred by such other party by reason of the enforcement and protection of its rights under [the Master] Agreement or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction, including, but not limited to, costs of collection."

6. SPS sought quotations from prospective replacement counterparties to enter into replacement swap transactions on substantially the same terms as those in place with LBSF.

7. On July 2, 2009, the Bankruptcy Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order"). The Bar Date Order established September 22, 2009 as the deadline to file proofs of claims (the "Bar Date").

8. Pursuant to the Bar Date Order, on or about September 22, 2009, SPS timely filed (a) a proof of claim against LBSF (Claim No. 28740) seeking recovery under the Master Agreement in an amount no less than $86,513.76 (the "LBSF Claim") and (b) a proof of claim against LBHI (Claim No. 28828) seeking recovery under the Guarantee in an amount no less than $86,513.76 (the "LBHI Claim"; together with the LBSF Claim, the "SPS Claims"). Consistent with the requirements of the Bar Date Order, SPS filed additional supporting

3

information in connection with their submission of the derivative and guarantee questionnaires (together, the "Questionnaires").

9. Subsequent to the filing of the SPS Claims and the completion of the Questionnaires, SPS's financial advisor engaged with the Debtors in discussions in order to resolve the SPS Claims.

10. On November 8, 2011, the Debtors filed the Objection. The Debtors state in the Objection that the SPS Claims should be expunged and disallowed "on the basis that they provide no liability as to the Debtors . . . . After a review of the claimants' supporting documentation and the Debtors' books and records, the Debtors have determined that, based on the fair, accurate, and reasonable values of the subject Derivative Contracts and the netting provisions thereunder, the Debtors do not owe any amounts to the claimants but rather either no amounts are owed under the Derivative Contracts to either party or the respective claimants actually owe money to the Debtors based on such Derivatives Contracts, and, therefore, the No Liability Derivative Claims do not constitute valid *prima facie* claims." (Objection at ¶ 11).

11. Based on the Debtors' assertion only, and with no further evidence, the Debtors seek to expunge and disallow the SPS Claims.

## **ARGUMENT**

12. It is well-settled law that the SPS Claims are presumptively valid. By putting forward no evidence whatsoever in support of their Objection, the Debtors have not even attempted to satisfy their burden of persuasion that the SPS Claims should be disallowed and expunged. All of the information and documentation filed in support of the SPS Claims demonstrate that SPS calculated the Termination Amount in a fair, accurate and reasonable manner, consistent with the terms of the Master Agreement. Accordingly, the Court should deny

4

the Debtors' Objection and allow the SPS Claims against each of LBSF and LBHI in an amount no less than $86,513.76.

### A. The Debtors Have Failed to Rebut the Validity of the SPS Claims

13.     Notwithstanding the Debtors' gross mischaracterization of the applicable burden of proof, a properly filed proof of claim is prima facie evidence of that claim. See 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). In other words, "If proper objection is made, the objecting party has the burden of presenting evidence sufficient to overcome the *prima facie* validity of the claim." Lawrence P. King, Collier on Bankruptcy, ¶ 501.02[3][d] (15th ed. rev. 1986). Although the Debtors argue that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim", (Objection ¶ 12, citing In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd, sub nom. Solomon v. Oneida Ltd., No. 09/Civ. 2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns Corp., Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)), Oneida itself states that "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the *objector* bears the initial burden of persuasion." 400 B.R. at 389 (emphasis added)(citations omitted). As such, the burden of proof would only shift to SPS if the Debtors had produced "'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" Id. (citations omitted).

14.     Far from having satisfied this burden, the Objection appears to be an unsubstantiated attempt by the Debtors to disallow and expunge SPS's valid, timely and properly filed proofs of claims. The Debtors have not produced any specific information regarding the

5

SPS Claims, let alone information sufficient to shift the burden of proof to SPS. The only information the Debtors provide is a rough outline of the general process that the Debtors utilize to value claims. See Objection at ¶ 13. The Debtors' unsubstantiated and vague assertion that the claims are not reasonable based on a review of supporting documentation and the Debtors' internal books and records is not evidence in equal force to the substantial evidence provided in support of the SPS Claims. On this basis alone, the Objection should be overruled.

### B. The SPS Claims are Supported by the Master Agreement

15. The SPS Claims properly reflect SPS's claims arising under the Master Agreement and the Guarantee. SPS, as the Non-defaulting Party, was the appropriate party to determine the Termination Amount under the Master Agreement. See Master Agreement, Section 6(a) and Section 11. The Debtors' attempt to disallow and expunge the SPS Claims due to the Debtors' purported valuation of the SPS Claims contravenes the Master Agreement's clear terms that it is SPS, as the Non-defaulting Party – and not LBSF, as the Defaulting Party – that is entitled to determine the Termination Amount. In this regard, the very posture of the Objection – that the Debtors, as the Defaulting Party, may substitute their own judgment as to what damages SPS should be entitled to recover – is fallacious.

16. The SPS Claims amply demonstrate that the Termination Amount was fair, reasonable and consistent with the provisions of the Master Agreement. SPS's first course of action to determine the Termination Amount was to apply the Market Quotation methodology. Since fewer than three quotations were provided to SPS, SPS was unable to establish the Market Quotation. See id. ("If fewer than three quotations are provided, it will be deemed that the Market Quotation in respect of such Terminated Transaction or group of Terminated Transactions cannot be determined."). Consistent with the Master Agreement, SPS applied the

6

Loss methodology in order to calculate the Settlement Amount and determined that there were no damages under this methodology.

17.     Pursuant to Clause 16.2(ff) of the deed of charge dated February 23, 2005 between, *inter alios*, SPS and LBSF, in the event of termination of the Interest Rate Cap Agreement (as defined therein), which was governed by the Master Agreement, SPS was obligated to use reasonable endeavors to enter into a replacement Interest Rate Cap Agreement upon the terms required in order to maintain the ratings given to the rated Notes (as defined therein) by the Rating Agencies (as defined therein) and upon terms acceptable to the Trustee (as defined therein).  In taking those required actions as well as other actions related to the termination of the Master Agreement, SPS incurred certain out-of-pocket costs and expenses, which are set out in the Calculation Statement and include SPS's fees, and the fees of SPS's financial and legal advisers (collectively, the "Termination Costs").  LBSF owes SPS the Termination Costs pursuant to Section 11 of the Master Agreement.  Moreover, SPS is entitled to claim payment of *additional* out-of-pocket expenses incurred by SPS in connection with the enforcement and protection of its rights under the Agreement or any Credit Support Document or by reason of the early termination of any Transaction, including, but not limited to, costs of collection, and SPS reserves the right to do so.

18.     SPS's service of the Termination Notice as well as the Calculation Statement, which also reflected SPS's right to recover all reasonable out-of-pocket expenses (including legal fees) was timely and proper in all respects.

19.     In sum, the SPS Claims are well-supported and present a clear and accurate case for the Termination Amount, i.e., the amount owed under the Master Agreement and Guarantee. The Debtors have not satisfied their burden of proof in objecting to the SPS Claims, and, even if

7

they had, the evidence provided by SPS would have been sufficient to overcome the burden-shifting. Accordingly, the Objection should be denied and the SPS Claims should be allowed in full.

## **RESERVATION OF RIGHTS**

20. To the extent this Court finds that SPS has not met its burden of proof regarding the SPS Claims and does not overrule the Objection, SPS reserves the right to: (i) seek discovery from the Debtors regarding the Debtors' valuation of the SPS Claims; (ii) supplement or amend the Response; and (iii) request a full evidentiary hearing pursuant to Bankruptcy Rule 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amount of the SPS Claims.

[The remainder of this page intentionally has been left blank.]

## CONCLUSION

WHEREFORE, for the foregoing reasons, SPS respectfully requests that this Court deny the Debtors' Objection as to the SPS Claims, allow the SPS Claims in an amount no less than $86,513.76 against each of LBSF and LBHI, and grant such other relief as this Court deems just and proper.

Dated: New York, New York
December 8, 2011

        Respectfully submitted,

        Kramer Levin Naftalis & Frankel LLP

        By:   */s/* Lauren Macksoud
             Lauren Macksoud
             Joshua Friedman
        1177 Avenue of the Americas
        New York, New York 10036
        Telephone: (212) 715-9100
        Fax: (212) 715-8000

        *Counsel to Southern Pacific Securities 05-1 PLC*