**HEARING DATE AND TIME: December 21, 2011 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: December 8, 2011 at 4:00 p.m. (Eastern Time)**

MAYER BROWN LLP
Brian Trust
Jeffrey G. Tougas
Christine A. Walsh
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910

*Attorneys for CypressTree Investment Management, LLC,*
*as Subadvisor to Primus CLO I, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                          :
In re                                                    :    Chapter 11 Case No.
                                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al*.    :    08-13555 (JMP)
                                                          :
                            Debtors.              :    (Jointly Administered)
_____:

### RESPONSE OF PRIMUS CLO I, LTD. TO DEBTORS' TWO HUNDRED THIRTY-THIRD OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)

CypressTree Investment Management, LLC ("**CypressTree**"), as Subadvisor to Primus CLO I, Ltd. ("**Primus**"), by and through its undersigned counsel, hereby submits this response (the "**Response**") in opposition to the Debtors' Two Hundred Thirty-Third Omnibus Objection to Claims (No Liability Derivatives Claims) [docket no. 21741], dated November 8, 2011 (the "**Objection**"). In support of its Response, CypressTree respectfully states as follows:

#### Background

1.     On December 19, 2006, Primus and Lehman Brothers Special Financing Inc. ("**LBSF**") entered into a 1992 ISDA Master Agreement (Multicurrency-Cross Border) (as

amended, supplemented or otherwise modified from time to time, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**").[1] Lehman Brothers Holdings Inc. ("**LBHI**") unconditionally guarantees the obligations of LBSF under the Master Agreement pursuant to the Guarantee of Lehman Brothers Holdings Inc., dated as of December 19, 2006 (the "**Guarantee**").

2.  Beginning on September 15, 2008 and on certain dates thereafter, LBHI and certain of its affiliates (collectively, the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York. LBSF commenced its chapter 11 case on October 3, 2008. These chapter 11 cases have been consolidated, for procedural purposes only, and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.  The separate chapter 11 filings of LBHI (as Credit Support Provider)[2] and LBSF constituted Events of Default under Section 5(a)(vii) of the Master Agreement. In the exercise of its rights under Section 6(a) of the Master Agreement, as such rights are permitted to be exercised pursuant to section 560 of the Bankruptcy Code,[3] on or about October 8, 2008, Primus

---

[1] Pursuant to the Order Pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information Primus submitted in connection with the Proofs of Claim and related submissions required by the Bar Order are part of the record and Primus need not resubmit them in connection with this Response.

[2] Capitalized terms not defined herein shall have the meaning given to them in the Master Agreement.

[3] Section 560 of the Bankruptcy Code provides, in pertinent part, that "[the exercise of any contractual right of any swap participant or financial participant to cause the . . . termination of one or more swap agreements because of [the filing of a bankruptcy case by the counterparty] shall not be stayed, avoided, or otherwise limited by operation of any provision of [the Bankruptcy Code]." 11 U.S.C. § 560. That Primus qualifies as a "swap participant" under section 101(53C) of the Bankruptcy Code is beyond question. Thus, Primus's termination of its swap agreement with LBSF is precisely the type of action contemplated, and permitted, by section 560.

sent LBSF a notice terminating all Transactions under the Master Agreement and designating October 8, 2008 as the Early Termination Date.

4. Pursuant to Section 6(d) of the Master Agreement, on or about October 8, 2008, Primus sent LBSF a calculation statement of the early termination payments due under the Master Agreement in the amount of $7,000,000 (the "**Calculation Statement**").

5. Having subsequently determined that it is also entitled to an additional claim in the amount of $1,400,000 on account of an upfront payment, on January 30, 2009, Primus filed a proof of claim in the amount of $8,400,000 plus accrued interest and fees against LBSF [claim no. 2282] (as amended, the "**LBSF Proof of Claim**")[4] and a proof of claim in the amount of $8,400,000 plus accrued interest and fees against LBHI on account of the Guarantee [claim no. 2283] (as amended, the "**LBHI Proof of Claim**"[5] and, together with the LBSF Proof of Claim, the "**Proofs of Claim**").

6. On July 2, 2009, this Court entered its Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [docket no. 4271] (the "**Bar Date Order**").

7. On November 8, 2011, the Debtors filed the Objection seeking the disallowance of the claims evidenced by the Proofs of Claim, solely on the basis that "they provide no basis of liability as to the Debtors." Objection, at ¶ 2. The Debtors submit no documentary or other evidence in support of the Objection.

---

[4]. The LBSF Proof of Claim amended claim no. 395 filed on October 28, 2008.

[5]. The LBHI Proof of Claim amended claim no. 396 filed on October 28, 2008

3

**Argument**

**Primus Calculated the Amounts in the Proofs of Claim as Required by the Master Agreement**

8. Pursuant to Section 6(e) of the Master Agreement, Primus and LBSF agreed to the "Loss" and "Second Method" methodology of calculating the amount due following an Early Termination Date. Under the Loss methodology, the Non-defaulting Party must determine the amount that it reasonably believes, in good faith, to be its total losses and costs in connection with the terminated transactions. *Id*.

9. As detailed in the Calculation Statement and related submissions, Primus has complied with *all* of the requirements set forth in Section 6(e) of the Master Agreement.

10. Under the Loss methodology, *only* the Non-defaulting Party is allowed to determine the Settlement Amount due and payable in respect of the early termination of the Master Agreement. The Non-defaulting Party in this case is Primus, not LBSF. Therefore, LBSF, as the Defaulting Party, is *not entitled* to calculate the Settlement Amount and the calculations set forth in the Objection do not constitute the true value of the claims. Therefore, the Objection should be overruled.

11. In summary, the amounts asserted in the Proofs of Claim are correct, in all respects, having been determined in accordance with the terms of the underlying documents, and the relief sought in the Objection (which fails to offer anything approaching a meaningful justification for the proposed disallowance) must be denied.

**The Debtors Do Not Provide Any Evidence to Dispute the Allowance of the Claims**

12. The Debtors have not carried their burden of proof in objecting to the Proofs of Claim. It is well recognized that "[a] proof of claim is *prima facie* evidence of the validity and amount of a claim." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re*

4

*Adelphia Comms. Corp.*, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 2007); F.R.Bankr.P. 3001(e) (providing that "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."). Furthermore, the Debtors "bear[] the initial burden of persuasion" and must produce "evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id*. (citation omitted).

13. The Debtors have not provided *any* evidence to dispute the allowance of the Proofs of Claim. Instead, the Objection only discusses a general four-step process *the Debtors* undertook to reconcile the claims that resulted in their conclusion that the Proofs of Claim should be disallowed in their entirety. *See* Objection ¶ 13. The Objection states that the process consists of (i) reviewing documents provided by the claimant, (ii) reconciling posted collateral, (iii) reviewing valuation methodology, and (iv) where the claimant was amenable, engaging in lengthy negotiations with the claimant. *See Id*.

14. The description of the Debtors' general claims reconciliation process does not provide *any* substantive evidence to support their conclusion that "…the Debtors have determined that, based on the fair, accurate, and reasonable values of the subject Derivatives Contracts and the netting provisions thereunder, the Debtors do not owe any amounts to the claimants but rather either no amounts are owed under the Derivatives Contracts to either party or the respective claimants actually owe money to the Debtors based on such Derivatives Contracts, and, therefore, the No Liability Derivative Claims do not constitute valid *prima facie* claims." *See* Objection ¶ 11. Other than the foregoing bald assertion, the Debtors have not provided *any* data or calculation methodologies in support of this position. Simply put, the Debtors have failed to offer *any* evidence or justification of any kind to support (i) the

conclusory statements in the Objection or (ii) the assertion that the Proofs of Claim should be entirely disallowed.

15.     Because the Debtors have failed to meet their initial burden of persuasion and have not provided any evidence to overcome the *prima facie* validity of the Proofs of Claim, these claims <u>remain</u> *prima facie* valid.  Therefore, the Objection should be overruled. Furthermore, the Proofs of Claim and related submissions required by the Bar Order constitute more than sufficient evidence for the amounts claimed thereunder.  Such amounts are fully supported by the terms of the Master Agreement and should be allowed as set forth in the Proofs of Claim.

16.     Even assuming, *arguendo*, that the Debtors were successful in their attempt to refute even a single allegation that is essential to the legal sufficiency of the Proofs of Claim, Primus must then be afforded the opportunity to refute the Objection and to prove that the Proofs of Claim should be allowed.  *See In re Oneida Ltd.*, 400 B.R. at 389 (recognizing that "[w]hen the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed.")

17.     To the extent this Court does not overrule the Objection, the Objection to the Proofs of Claim should proceed in accordance with this Court's April 19, 2010 Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390, Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims against Debtors (the "**Procedures Order**").  Primus further reserves the right to seek discovery and to request a full evidentiary hearing pursuant to Bankruptcy Rule 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure, if necessary, to determine the allowance of the Proofs of Claim.

18. This Response is made under compulsion of the Procedures Order. Primus and CypressTree fully reserve all of their respective rights under the Bankruptcy Code, other applicable law and all Orders issued by this Court in these cases including, without limitation, the right to designate additional bases, documentation or other evidence of the claims evidenced by the Proofs of Claim upon which Primus will rely in opposing the Objection.

WHEREFORE, Primus respectfully requests that the Court (i) overrule the Objection as it pertains to the Proofs of Claim, (ii) enter an Order allowing each of the Proofs of Claim in an amount not less than $8,400,000 (plus all accrued but unpaid interest, legal fees and other items payable under applicable law) and (iii) grant Primus such further relief as the Court deems just.

Dated: New York, New York
December 8, 2011

/s/   Brian Trust
MAYER BROWN LLP
Brian Trust
Jeffrey G. Tougas
Christine A. Walsh
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910

*Attorneys for CypressTree Investment Management, LLC, as Subadvisor to Primus CLO I, Ltd.*