**Presentment Date: December 6, 2011 at 12:00 p.m.**
**Objection Date: Extended by Consent to December 9, 2011**

SOUTHERN DISTRICT OF NEW YORK
UNITED STATES BANKRUPTCY COURT
--------------------------------------------------------x
                                :

In re                             :                Chapter 11
                                :

LEHMAN BROTHERS HOLDINGS INC.,  :        Case No. 08-13555 (JMP)
  et al.,                       :

                                :                (Jointly Administered)
              Confirmed Debtors.      :

                                :
--------------------------------------------------------x

### OBJECTION OF THE UNITED STATES TRUSTEE TO CONFIRMED DEBTORS' APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF GLEACHER & COMPANY SECURITIES, INC. <u>AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO FEBRUARY 17, 2011</u>

TO:    THE HONORABLE JAMES M. PECK,
        UNITED STATES BANKRUPTCY JUDGE:

       Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

submits this objection (the "Objection") to the application dated November 18, 2011 of Lehman

Brothers Holdings Inc. ("LBHI" and, together with its affiliated confirmed debtors, the

"Confirmed Debtors") for an Order authorizing the employment and retention of Gleacher &

Company Securities, Inc. ("Gleacher") as its financial advisor <u>nunc pro tunc</u> to February 17,

2011 (the "Gleacher Application"). [1]

## <u>INTRODUCTION</u>

       Gleacher has been working on behalf of the Confirmed Debtors for at least nine months,

without being retained.  The United States Trustee's objects to the retention of Gleacher on the

following grounds:

-    The Confirmed Debtors have already retained Lazard Frères & Co. LLC to perform the same services proposed in the Gleacher Application;
-    The proposed fees to be paid to Gleacher are not reasonable;

---

[1] No prior notice of the Application was provided to the United States Trustee.

- The Confirmed Debtors have failed to meet their burden to of proof to establish any extraordinary circumstances that warrant <u>nunc</u> <u>pro</u> <u>tunc</u> relief; and

- Gleacher has failed to comply with the disclosure requirements of Bankruptcy Rule 2014.

## FACTS

### A.    The Chapter 11 Cases

1.    On September 15, 2008, and periodically thereafter (collectively, the "Petition Date"), the Confirmed Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  By Order dated September 17, 2008, the Confirmed Debtors' cases are being administered jointly.  ECF Doc. No. 86.

2.    On December 6, 2011, the Court confirmed the third amended joint plan of reorganization (the "Plan").  ECF Doc. No. 23023.

### B.    The Debtors Retention of Lazard

4.    By Order dated December 17, 2008, the Court approved the pre-confirmation Debtors' application to retain Lazard Frères & Co. LLC ("Lazard") as their investment banker (the "Lazard Application").[2]  <u>See</u> ECF Doc. No. 2275; <u>see</u> <u>also</u>, Lazard Application at ¶ 7, ECF Doc. No. 1513.

5.    Lazard is a full service financial advisory and investment banking firm with expertise in a broad range of investment banking and corporate and financial advisory services. Lazard Application at ¶8.

6.    In support of the Lazard Application, the pre-confirmation Debtors represented that they began working with Lazard pre-petition in July 2008 and that Lazard's professionals

---

[2] The Lazard Engagement Letter is incorporated herein by reference.  Capitalized terms used in the Lazard Engagement Letter, but not defined herein, shall have the meaning assigned to them in the Lazard Engagement Letter.

had "become well acquainted with the Debtors' operations, debt structure, businesses and related matters. As a result, Lazard has a well-developed knowledge of the Debtors' financial history and business operations and is well suited to provide the Debtors with the investment banking services contemplated by the Engagement Letter." Id. at ¶10.

7.      Pursuant to the Lazard Application, Lazard is authorized to perform, and has been performing, among other things, the following services for the Confirmed Debtors: (i) rendering investment banking services and financial advice, (ii) assisting them in evaluating restructuring and potential financing transactions and (iii) advising and assisting them in identifying and evaluating candidates for potential "Sale Transactions". Id. at ¶15. A Sale Transaction is defined as a transaction where "all or a portion of assets, voting power, securities or other interests . . . of the [Debtors] . . . are . . . transferred to or assumed by another entity . . . ." Id. at n. 2.

8.      Lazard receives a monthly advisory fee of $200,000. See Second Supplemental Affidavit of Barry W. Ridings sworn to February 3, 2010, ECF Doc. No. 6992. Lazard is also entitled to several transaction fees based on various benchmarks set forth in the Lazard Engagement Letter. Lazard Engagement Letter at ¶2; Lazard Application at ¶ 18. Through September 30, 2011, Lazard has incurred approximately $32 million in fees and expenses and has been paid approximately $30 million. In addition, Lazard will be entitled to receive a fee of $17.5 million upon the effective date of the Plan. Lazard Application at ¶ 18.

C.    **The Confirmed Debtors' Application to Retain Gleacher**

9.      Prior to confirmation, on November 22, 2011, the Confirmed Debtors filed the Gleacher Application. See ECF Doc. No. 22520. The Gleacher Application annexes and incorporates the terms of an engagement letter between the Confirmed Debtors and Gleacher

3

dated November 18, 2011(the "Gleacher Engagement Letter")[3] and an indemnification letter (the "Indemnification").

10.     The Gleacher Application proposes that Gleacher provide the Confirmed Debtors with financial advisory services in connection with a potential transaction, or series of transactions designed to sell the Confirmed Debtors interest in Archstone Enterprise LP (together with its subsidiaries and controlled affiliates, "Archstone").[4]  See Gleacher Application at ¶¶ 8 and 23.

11.     The Gleacher Application provides that Gleacher has been "actively engaged in reviewing the assets and underlying collateral in connection with potential Archstone Transactions" without a formal engagement in place since February 17, 2011.  Id. at ¶¶ 35 and 36.

12.     The Gleacher Application provides for a monthly fee of $300,000.  Id. ¶ 25.  The Application provides that on its effective date, the Confirmed Debtors will pay Gleacher $3.0 million, which amount represents the monthly payments due from February 17, 2011 through November 17, 2011.  Id.  The monthly fee and the $3.0 million payment (together, the "Retention Fee") are subject to an aggregate cap of $3.6 million.  Id.  In addition, the Gleacher Application provides for various fees in connection with an Archstone Transaction, including a Private Equity Fee, an IPO Advisory Fee, a Ratings Advisory Fee, a Credit Facility Fee, an Equity Purchase Fee, and Equity Sale Fee and an M&A Fee.  Id.  Gleacher's total fees, not

---

[3] The Gleacher Engagement Letter and the Indemnification were not filed with the Gleacher Application.  The United States Trustee has been provided with, and has reviewed, the Application.  The Gleacher Engagement Letter and the Indemnification are incorporated herein by reference.  Capitalized terms used in the Gleacher Engagement Letter and the Indemnification, but not defined herein, shall have the meaning assigned to them in the Gleacher Engagement Letter and the Indemnification.

[4] In 2007, certain Confirmed Debtors and their non-Debtor affiliates made approximately $2.4 billion in equity investments and loans in connection with the leveraged buyout of a publicly traded REIT known as Archstone. After a series of further investments and restructurings, the Confirmed Debtors currently hold approximately 47% of the common equity interests in Archstone.  Gleacher Application at ¶¶ 9-13.

including expenses, are capped at $15 million, provided that any paid Retention Fee shall be credited against the first amounts owed for any individual fees received with respect to an Archstone Transaction.  Id.  Upon information and belief, none of the monthly fees have been paid to Gleacher.

    (i)    Gleacher's Bankruptcy Rule 2014 Disclosures

13.    Gleacher discloses that its services will only be provided by personnel of Gleacher's real estate investment banking group (the "Real Estate Group"), which falls within Gleacher's investment banking division as well as "certain other limited personnel" outside this group, who may be needed to assist the Real Estate Group in this engagement.  Affidavit of Stephen Hentschel in Support of Gleacher Application ("Hentschel Aff.") at ¶ 8.

14.    Gleacher states that during its engagement, Gleacher's fixed income trading divisions may "continue to buy, sell or otherwise effectuate transactions in securities, derivative securities or other instruments of the Debtors on an unsolicited basis for customer accounts. . . [and] buy, sell or otherwise effectuate transactions in securities or derivative securities of parties-in-interest in these cases."  Id. at ¶ 11(c).

15.    Gleacher states that during its engagement "[e]mployees of Gleacher may hold, for their personal account or for an account under their control, equity, debt or derivative securities (whether directly or through mutual funds, private equity funds, or other vehicles) relating to the Debtors or parties-in-interest in these cases."  Id. at ¶ 11(d).  However, Gleacher represents that it will not allow its employees to purchase or sell any securities of the Confirmed Debtors, and such securities have been placed on Gleacher's "restricted securities list."  Id.

16.    Gleacher further represents that as a trader of corporate bonds and other securities, it regularly enters into securities transactions for the accounts of its customers or

employees with other registered broker-dealers and clients.  Id. at 11(e).  In the course of its

business, Gleacher states that it may, directly or indirectly, trade or otherwise conduct such

activities in or with respect to equity, debt or derivative securities relating to, parties-in -interest

in these cases."  Id.

17.    Gleacher also asserts that certain employees serve as managers (the "Managers")

for investment vehicles know an as the "Gleacher Funds". Id. at ¶ 11(g).  The Gleacher Funds are

intended for investments by third parties unrelated to Gleacher, although Gleacher and its

subsidiaries may be investors in the Gleacher Funds.  Id.  Other investors may also include (i)

financial institutions or other parties who may be parties-in-interest in these cases, and (ii)

various employees of Gleacher.  Id.  Gleacher represents that the investors in the Gleacher

Funds, with the exception of the Managers, have no control over investment or business

decisions made for the Gleacher Funds and that the Gleacher Funds may invest in investments of

or relating to the Confirmed Debtors or parties-in-interest in these cases, and to the extent that

any of the Gleacher Funds holds any claim or interest in the Confirmed Debtors, such fund will

be permitted to hold or divest itself of such interest at its discretion.  Id.  In order to comply with

securities laws, Gleacher represents that employees working with the Gleacher Funds will be

separated from the other employees of Gleacher, including the Gleacher Real Estate Group,

through the use of information walls.  Id.

18.    Gleacher vaguely describes its "information wall" between its Real Estate

Group/investment banking division and non-investment banking divisions as including physical

barriers, technological barriers, internal policies and "surveillance mechanisms."  Hentschel Aff.

at ¶ 9.

6

**OBJECTION**

### I. Legal Standards

The Confirmed Debtors seek to retain Gleacher under Sections 327 and 328 of the

Bankruptcy Code.  Section 327(a) provides that the professionals employed by a debtor must not

hold or represent an interest adverse to the estate and must be disinterested.  11 U.S.C. § 327(a).

Section 327(a) of the Bankruptcy Code provides, in part, that:

> (a)  Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . .  or other professional persons, **that do not hold or represent an interest adverse to the estate and that are disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).  Thus, a professional must (a) not hold an interest adverse

to the bankruptcy estate, (b) not represent an interest adverse to the estate, and (c) be

disinterested.  In re Worldcom, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004).

Section 328 of the Bankruptcy Code authorizes:

> employment of a professional person under section 327 or 1103 of this title, as the case may be, on any **reasonable terms and conditions** of employment, including on a retainer, on an hourly basis, or on a contingency fee basis.  Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment**, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.**

11 U.S.C. § 328(a) (emphasis added).

Under Section 328(a) of the Bankruptcy Code, the Court "may not award a fee different

from one that it has approved in a retention order unless it finds that the terms in the retention

order were 'improvident in light of developments not capable of being anticipated at the time.'"

Riker, Danzig et al. v. Official Comm. (In re Smart World Techs., LLC), 383 B.R. 869, 877

(S.D.N.Y. 2008); Houlihan Lokey v. High River Ltd. P'ship, 369 B.R. 111, 117 n.8 (S.D.N.Y.

2007) (affirming reduction of $18 million transaction fee sought by Houlihan to $4.0 million).

Thus, in approving a fee arrangement under Section 328(a) of the Bankruptcy Code, it has been

held that "a court may not revisit the reasonableness" of the arrangement when approval of the

fees eventually is sought.  In re XO Comm'ns, Inc., 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005).

> Section 330(a) of the Bankruptcy Code provides:
>
> After notice to the parties in interest and the United States Trustee and a hearing,
> and subject to sections 326, 328, and 329, the court may award to a trustee, an
> examiner, a professional person employed under section 327 or 1103 -
> reasonable compensation for actual, necessary services rendered by the trustee,
> examiner, professional person, or attorney and by any paraprofessional person
> employed by any such person; and reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

Section 331 of the Bankruptcy Code further permits a professional to apply to the court

for compensation "before such date as is provided under section 330 of this title."  11 U.S.C. §

331.  With respect to the interim fee applications pursuant to section 331, interim fee awards are

discretionary, and are subject to reexamination and adjustment during the course of the case.  In

re Spanjer Bros. Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (citing In re Jensen-Farley

Pictures, Inc., 47 B.R. 557 (Bankr. D. Utah 1985)).  Any interim fees awarded or paid are

payable on account of and are subject to the Court's review at the time of the final fee

applications.  Id.

The burden of proof to establish that the terms and conditions of employment – including

the imposition of Section 328(a) of the Bankruptcy Code is on the Confirmed Debtors, as the

applicant.  See Nischwitz v. Miskovic (In re Airspect Air, Inc.), 385 F.3d 915, 921 (6th Cir. 2004)

(quoting Zolfo, 50 F.3d at 262).  To meet its burden, the applicant must provide specific

evidence to establish that "the terms and conditions are in the best interest of the estate."  In re

Gillett Holdings, Inc., 137 B.R. 452, 455 (Bankr. D. Colo. 1991).

> **II.**    **The Application Does Not Support Approval of the Retention and
> Compensation of Two Financial Advisors Under
> The Improvident Standard of Section 328**

The Confirmed Debtors seek to retain Gleacher under Section 328 as their second

investment banker at a cost of $15 million to these estates.  Lazard, the Confirmed Debtors'

retained investment banker, will earn over $55 million for this engagement, $32 million of which

has already been incurred and $30 million of which has been paid.  The United States Trustee

questions the necessity of the Confirmed Debtors' retention of two investment bankers at a cost

of at least $70 million.   In fact, Lazard will continue to be paid even if Gleacher is responsible

for the Confirmed Debtors' consummation of a defined Archstone Transaction.

The Confirmed Debtors assert that the roles of Gleacher and Lazard are not duplicative

because Gleacher's services are solely related to the consummation of an Archstone Transaction.

The Confirmed Debtors further state that Gleacher's services are unique and that Gleacher has

expertise in, among other things, private equity and public offerings, M&A transactions, asset

portfolio sales, and REIT IPOs.  Gleacher Application at ¶ 15; Hentschel Aff. at ¶ 8.

The Confirmed Debtors, however, fail to state why Lazard cannot market, negotiate and

consummate any potential Archstone transactions.  Nor do the Confirmed Debtors state why they

sought another investment banking firm to this work.  The services as described in the Gleacher

Application are not unique and are nearly identical to the services already being performed by

Lazard.  In fact, Lazard will be its monthly fees and its $17.5 million fee regardless of whether

Gleacher responsible for any Archstone Transaction.

9

Moreover, the Court cannot make the findings necessary under Section 328 to approve the proposed compensation to Gleacher because the Confirmed Debtors have not met their burden of proof to demonstrate why – or how – the terms, conditions and structure of Gleacher's compensation is reasonable under Section 328(a) of the Bankruptcy Code. Airspect Air, 385 F.3d at 921 ("burden should rest on the applicant to ensure that the court notes explicitly the terms and conditions if the applicant expects them to be established at that early point."). Parties seeking employment of professionals under Section 328(a) of the Bankruptcy Code "must establish that the terms and conditions of employment are reasonable, and evidence, not conclusory statements, is required to satisfy that burden." In re High Voltage Engineering Corp., 311 B.R. 320, 333 (Bankr. D. Mass. 2004).

The Gleacher Application does not disclose (i) what other investment banking firms the Confirmed Debtors interviewed for this engagement, (ii) what fees were sought by the other investment banking firms to undertake this engagement and (iii) the estimated amount of time to be incurred by Gleacher during this engagement. Accordingly, it is unclear if Gleacher's fee structure is reasonable or that review under Section 328 of the Bankruptcy Code of Gleacher's fees is appropriate.

Finally, the Gleacher Application cites the retention of both Miller Buckfire and UBS Securities LLC as financial advisors in In re General Growth Properties ("GGP"), Case No. 09-11977 (ALG), in support of Gleacher's retention. Gleacher Application at ¶ 19. In GGP, however, Miller Buckfire was not licensed to do the work that UBS was retained to do and Miller Buckfire agreed to a reduction in its fee structure. In re General Growth, ECF Doc. Nos. 1096, 1294 and 4327. In stark contrast, here, there is no representation that Lazard cannot do the

10

work required, nor has Lazard agreed to any fee reduction which permits the work to be done by another investment banker on a more cost effective basis.

### III.    The Confirmed Debtors Have Not Met Their Burden to Prove That a <u>Nunc</u> <u>Pro</u> <u>Tunc</u> Retention is Warranted

Should the Court approve Gleacher's Application, Gleacher should not be retained <u>nunc</u> <u>pro</u> <u>tunc</u> to February 17, 2011. Section 327(a) of the Bankruptcy Code provides that a debtor may retain professionals only with court approval. 11 U.S.C. § 327(a). No service performed by professionals is compensable under Sections 330 or 331 of the Bankruptcy Code unless the court approves the retention. <u>See</u> <u>Lamie v. United States Trustee</u>, 540 U.S. 526 (2004) (Section 330(a)(1) of the Bankruptcy Code does not authorize compensation to debtors' attorneys from estate funds, unless they are employed under Section 327 of the Bankruptcy Code); <u>see</u> <u>also</u> <u>In re CCT Comms., Inc.</u>, No. 07-10210 (SMB), 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing <u>In re Robotics Resources R2, Inc.</u>, 117 B.R. 61, 62 (Bankr. D. Conn. 1990); <u>In re Brown</u>, 40 B.R. 728, 730 (Bankr. D. Conn. 1984); <u>In re Sapolin Paints, Inc.</u>, 38 B.R. 807, 817 (Bankr. E.D.N.Y. 1984)).

In the Second Circuit, there is a <u>per</u> <u>se</u> prohibition against compensating professionals for services rendered prior to a retention order. <u>Id.</u> (citing <u>Futuronics Corp. v. Arutt, Nachamie & Benjamin</u> (<u>In re Futuronics Corp.</u>), 655 F.2d 463, 469 (2d Cir. 1981), <u>cert.</u> <u>denied</u>, 455 U.S. 941 (1982); <u>Smith v. Winthrop, Stimson, Putnam & Roberts</u> (<u>In re Sapphire Steamship Lines, Inc.</u>), 509 F.2d 1242, 1245-46 (2d Cir. 1975); <u>245 Assocs.</u>, 188 B.R. at 749). Enforcement of such a strict rule enables the court to examine any potential conflicts of interest that a professional may have prior to the rendering of services, <u>see</u> <u>Futuronics</u>, 655 F.2d at 469, thereby avoiding the emotional pressure to award fees which can arise if services have already been rendered. <u>In re</u>

11

Bennett Funding Group, Inc., 213 B.R. 234, 242 (Bankr. N.D.N.Y. 1997) (citing In re Rogers-

Pyatt Shellac Co., 51 F.2d 988, 992 (2d Cir. 1931)).  It also discourages volunteer services and

maintains control of costs to the estate by avoiding payment for services which may not

otherwise have been authorized.  Id. (citing In re Eureka Upholstering Co., 48 F.2d 95, 96 (2d

Cir. 1931)).

Nunc pro tunc approval should only be granted in narrow situations and requires that (i)

if the application had been timely, the court would have authorized the appointment, and (ii) the

delay in seeking court approval resulted from extraordinary circumstances.  Cushman &

Wakefield, Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship), 189 F.3d 86, 87-88 (2d Cir.

1999).  "'Simple neglect'" on the part of a debtor in failing to take timely action does not

constitute the 'extraordinary circumstances' necessary to justify nunc pro tunc relief."  In re

Aquatic Dev. Group, Inc., 352 F.3d 671, 679 (2d Cir. 2003) (quoting Land v. First Nat'l Bank of

Alamosa (In re Land), 943 F.2d 1265, 1268 (10th Cir. 1991)); accord In re Carpenter, 392 B.R.

97, 105 (Bankr. D. Vt. 2008).

Factors considered under the "extraordinary circumstances" test include: (i) whether the

applicant or some other person bore responsibility for applying for approval; (ii) whether the

applicant was under time pressure to begin service without approval; (iii) the amount of delay

after the applicant learned that initial approval had not been granted; (iv) the extent to which

compensation to the applicant will prejudice innocent third parties; and (v) other relevant factors.

In re Keren Ltd. P'ship, 225 B.R. 303, 307 (S.D.N.Y. 1998), aff'd, Cushman & Wakefield, Inc.

v. Keren Ltd. P'ship (In re Keren Ltd. P'ship), 189 F.3d 86, 87-88 (2d Cir. 1999)

(citing In re F/S Airlease II, Inc., 844 F.2d 99, 105-06 (3rd Cir. 1988) (citing In re Arkansas, 798

F.2d 645, 650 (3d Cir. 1986))).

The Confirmed Debtors have failed to establish, and the facts do not support, that

extraordinary circumstances are present that warrant Gleacher's <u>nunc</u> <u>pro</u> <u>tunc</u> retention to

February 17, 2011.  <u>Keren</u>, 225 B.R. at 307.  The Gleacher Engagement Letter is dated

November 18, 2011.  The Confirmed Debtors state that the reason for the delay is that they and

Gleacher have been more focused on "evaluating, designing and launching the multi-path

monetization process with respect to the Debtors' interests in Archstone."  Gleacher Application

at ¶ 36.  This explanation does not fall under the "extraordinary circumstances" standard.

Moreover, the Confirmed Debtors creditors will be prejudiced greatly if the Court approves

Gleacher's retention <u>nunc</u> <u>pro</u> <u>tunc</u> to February 17, 2011, because the estates will then be faced

with a more than $15 million legal bill for services that Gleacher provided on behalf of the

Confirmed Debtors.

### IV.    Gleacher Has Failed to Comply with the Disclosure Requirements of Bankruptcy Rule 2014

Federal Rule of Bankruptcy Procedure Rule 2014 ("Bankruptcy Rule 2014") provides

that professionals seeking to be retained disclose "to the best of the applicant's knowledge, all of

the [professional's] connections with the debtor, creditors, any party in interest. . . ."  Fed. R.

Bankr. P. 2014(a).  Compliance with Bankruptcy Rule 2014 is the responsibility and burden of

each retained professional.  <u>See</u> <u>In re Keene Corp.</u>, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).

The term "connections" is broad and strictly construed for the purposes of Bankruptcy Rule

2014.  <u>In re Balco Equities Ltd.</u>, 345 B.R. 87, 112 (Bankr.  S.D.N.Y. 2006) ("Failure to disclose

direct or indirect relations to, connections with, or interest in the debtor violate . . . [s]ection

327(a) and Bankruptcy Rule 2014.").  <u>Granite Partners</u>, 219 B.R. at 35 ("The existence of an

arguable conflict must be disclosed if only to be explained away . . . .").  The court should not

13

have to "rummage through files or conduct independent fact-finding investigations" to determine whether a professional should be disqualified.  Id. at 45 (quoting In re Rusty Jones, Inc., 134 B.R. 321, 345 (Bankr. N.D. Ill. 1991)).

As set forth below, Gleacher has not made adequate disclosures and has not complied with Bankruptcy Rule 2014.  The United States Trustee reserves the right to object to fees for services rendered through the date of the appropriate disclosure.  Leslie Fay, 175 B.R. at 533 (A professional's failure to comply with the strict requirements of Bankruptcy Rule 2014 may form the basis for the court to disallow fees).

(i)    Trading Safeguards

As set forth in ¶ ¶ 14-17, supra, Gleacher disclosed that it regularly engages in trading securities of the Confirmed Debtors and other parties in interest.  See Hatchel Aff. at ¶ 11.  Gleacher discloses that it has implemented policies and procedures, including information walls and restricted securities lists, to prevent conflicts of interest and maintain confidentiality.  Id. at ¶ 9.  Gleacher has not provided sufficient disclosure regarding how it will implement its trading walls and restricted securities lists.  Absent this disclosure, Gleacher cannot demonstrate that it satisfies Bankruptcy Code 327(a), Bankruptcy Rule 2014 and the rules and regulations of the Securities and Exchange Commission.

(ii)    Non-Retained Affiliates

Gleacher disclosed that its services will only be provided by personnel of Gleacher's Real Estate Group, which falls within its investment banking division as well as "certain other limited personnel" outside this group, who may be needed to assist the Real Estate Group in this engagement.  Hentschel Aff. at ¶ 8.  Gleacher has not disclosed who the "limited personnel" are and whether these individuals have complied with the requirements of Bankruptcy Rule 2014.  A

14

professional who provides services to a debtor and does not comply with Bankruptcy Rule 2014 cannot be retained. Balco Equities, 345 B.R. at 112;  Granite Partners, 219 B.R. at 45.  For this reason, the United States Trustee objects to the employment of any Gleacher affiliates and "related persons."

**V.       The Application Improperly Permits Gleacher to Charge the Estates
         For Overhead Expenses of Administration**

The Gleacher Application provides that under the terms of their Engagement Letter, the Confirmed Debtors will reimburse Gleacher for reasonable out-of-pocket expenses.  Gleacher Application at ¶ 25(i).  The Gleacher Engagement Letter includes certain legal fees as a reimbursable expense.  Gleacher Engagement Letter at ¶ 2k.  For an attorney to be paid from a debtor's estate, that attorney must be retained under Section 327 of the Bankruptcy Code.  This issue previously has been briefed and argued with respect to the Rothschild, Inc.'s application in In BB Liquidating, Inc. (f/k/a In re Blockbuster), Case No. 10-14997 (BRL), where Judge Lifland held from the bench that Rothschild could not be reimbursed for fees and disbursements of its legal counsel (see Order Authorizing Retention of Rothschild at ¶ 4, ECF Doc. No. 464); see also In re Crafts Retail Holding Corp., 378 B.R. 44 (Bankr. E.D.N.Y. 2007)(financial advisor precluded, as a matter of law, from being paid the fees of its attorney as a reimbursement of expenses); In re Cenargo Intern., PLC, 294 B.R. 571 (Bankr. S.D.N.Y. 2003) (fees of barristers that debtor's attorney used to assist in English administration proceedings could not be compensated where barristers' retention was not approved by the bankruptcy court); cf In re Borders Group, Inc., 465 B.R. 195 (Bankr. S.D.N.Y. 2011)(retained professionals that hire outside counsel only to represent the professional in connection with retention or preparation of fee applications may be reimbursed for reasonable expenses of such counsel when the

engagement agreement and retention order provide for such expense reimbursement); <u>In re
S'Barro, Inc.</u>, Case No. 11-11527 (SCC)(same, bench ruling).  Accordingly, Gleacher's request
for authority to seek reimbursement of attorneys' fees as an expense should be denied.

Alternatively, should the Court prefer to decide this issue at the time final fee applications will
be heard, the United States Trustee reserves her right to prosecute her objection on all grounds.

**CONCLUSION**

WHEREFORE, the United States Trustee respectfully requests that the Court (i) sustain
the Objection, (ii) deny the Gleacher Application and (iii) grant such other relief as is just.

Dated: New York, New York
December 9, 2011

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:    /s/ *Susan D. Golden*
      Susan D. Golden
      Trial Attorney
      33 Whitehall Street, 21st Floor
      New York, New York  10004
      Tel. No. (212) 510-0500

16
