Objection Date and Time (By Agreement): December 9, 2011 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: December 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                                                                   :
In re:                                                             :   Chapter 11 Case No.
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :   08-13555 (JMP)
                                                                   :
         Debtors.                                                  :   (Jointly Administered)
                                                                   :
------------------------------------------------------------------ x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' APPLICATION FOR AUTHORIZATION TO RETAIN
GLEACHER & COMPANY SECURITIES, INC. AS FINANCIAL ADVISOR**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. and each of its affiliated debtors in possession (collectively, the "Debtors") hereby objects (the "Objection") to the *Application of the Debtors Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014(a) and 2016 For Authorization To Employ and Retain Gleacher & Company Securities, Inc. As Financial Advisor Effective As of February 17, 2011* [Docket No. 22520] (the "Application").[1] In support of the Objection, the Committee respectfully represents as follows:

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Application.

## **PRELIMINARY STATEMENT**

1.  Over ten months ago, the Committee objected to the Debtors' proposal to retain Gleacher in connection with maximizing the value of their interests in Archstone, on the grounds that (a) the Debtors had already retained Lazard to provide them with assistance and advice in connection with any transactions concerning the Debtors' assets; (b) Lazard was well-qualified to assist the Debtors in connection with Archstone; (c) the Debtors were paying Lazard substantial monthly fees for its services; and (d) even if the Debtors retained and paid transaction fees to Gleacher in connection with Archstone, the Debtors could still be obligated to pay Lazard millions of dollars for the same transactions.[2]

2.  Notwithstanding these valid concerns expressed by the Committee, the Debtors went ahead and employed Gleacher, without either seeking the Court's authorization or resolving the issue of duplication of Lazard's and Gleacher's services and their potentially overlapping fees. Now, on the eve of the Debtors' chapter 11 cases concluding, the Debtors are finally seeking *nunc pro tunc* approval of Gleacher's employment and its up to $15 million in fees.

3.  The Application should not be granted because the Debtors cannot meet their burden of demonstrating that the terms of Gleacher's retention are reasonable. The Application acknowledges "some overlap" between the Debtors' proposed engagement of Gleacher and Lazard's ongoing engagement.[3] In fact, "some overlap" means that some of the services Lazard is being paid substantial fees to perform overlap with *all* of the services Gleacher is now being retained to provide. The Application fails to explain either why Lazard cannot

---

[2]   Any references herein to compensation to which Lazard could be entitled in connection with any Archstone Transaction (as defined below) are based upon reports of arguments that have been made by Lazard. The Committee takes no position on the merits of such arguments at this time, and expressly reserves its rights to argue that no such compensation is owing when and if Lazard seeks approval thereof.

[3]   See Application, ¶ 15 n.2.

2

advise the Debtors in connection with transactions involving Archstone, or whether Lazard will be entitled to fees in connection with Archstone Transactions even if Gleacher is entitled to fees for the same transactions.

4. Moreover, the Court should examine the reasonableness of Gleacher's proposed retention in light of the Debtors' failure to obtain timely approval of such retention. For an undisclosed reason, Gleacher—a sophisticated financial advisor that must have known the Bankruptcy Code requirements for the retention of professionals—started working on Archstone without Court authorization and allowed the Debtors to wait until after the plan confirmation before putting the Application before the Court, on a *nunc pro tunc* basis. Notwithstanding that Gleacher has allegedly been providing services to the Debtors for ten months—for which the Debtors seek to pay Gleacher $3 million—the Application fails to include meaningful information regarding the services actually provided during that period, or the benefits, if any, derived by the Debtors' estates from those services.

5. The Committee continues to believe that the engagement of Gleacher is neither necessary nor appropriate because of the ongoing engagement of Lazard, Lazard's ability to adequately represent the Debtors in connection with any Archstone Transaction, and Lazard's existing potential entitlement to transaction fees in connection with such transactions. In addition, the Committee believes that, even had Gleacher's retention been necessary or appropriate, its proposed monthly and transaction fees would be unreasonable.

6. The Committee respectfully submits that the Application should be denied.

## **OBJECTION**

7. Where a debtor seeks approval of the terms and conditions of the retention of a financial advisor under section 328(a) of the Bankruptcy Code, it bears a heavy burden to

3

"establish that the terms and conditions of employment are reasonable, and evidence, not conclusory statements, is required to satisfy that burden." In re High Voltage Eng'g Corp., 311 B.R. 320, 333 (Bankr. D. Mass. 2004) (denying debtors' application to retain financial advisors under § 328(a), where debtors failed to provide sufficient evidence from which court could conclude that proposed retention was reasonable); see also In re Energy Partners, Ltd., 409 B.R. 211, 225-31 (Bankr. S.D. Tex. 2009) (denying equity and noteholder committees' applications to retain investment bankers under § 328(a), where committees failed, among other things, to present evidence of benefit to estate, or that committees could not have obtained comparable services without paying excessive fees).

8.     To meet its burden, a debtor must demonstrate, among other things, that the proposed retention will not result in any duplication of effort.  See In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991) (noting that applications to retain investment bankers or financial advisors "must explain how the investment banker/advisor will eliminate, or at least reduce, the duplication of effort . . . where there are armies of professionals apparently doing the same thing as the investment banker/advisor.  Specifically, the intention is to avoid accountants and investment bankers/advisors massaging the same numbers twice when one trip to the masseuse would generally suffice.").  Under this standard, the Debtors cannot prove that the proposed terms of Gleacher's retention are reasonable.

A.    **Duplication of Services**

9.     Lazard has already been retained to provide—and is being paid for—services that overlap with *all* of the services Gleacher is expected to provide.  The engagement letter that governs the terms of Lazard's retention (the "Lazard Engagement Letter")[4] clearly

---

[4]    See Order approving retention of Lazard [Docket No. 2275], and further Orders [Docket Nos. 12526, 15239] modifying terms of the Lazard Engagement Letter.

4

obligates Lazard to provide the exact same services for which the Debtors now seek to retain Gleacher—unless the Debtors and Lazard agree that the Archstone Transactions (as defined below) are excluded from the scope of certain definitions contained in the Lazard Engagement Letter. Glaringly absent from the Application, however, is any representation that the Debtors and Lazard have, indeed, agreed that the Archstone Transactions are so excluded.

10. According to the Lazard Engagement Letter, Lazard was retained to, among other things, provide the Debtors with assistance and advice in connection with any transaction or series of transactions concerning all or a portion of the Debtors' interests and assets, including any acquisition, purchase, sale, merger, consolidation, exchange, business combination or other transaction (each, a "Sale Transaction") *except for* any transaction with respect to which LBHI and Lazard mutually agree that Lazard shall not provide services. (Lazard Engagement Letter at 1.) The services Lazard has agreed to provide explicitly include assisting the Debtors in identifying and evaluating candidates for potential Sale Transactions, advising the Debtors in connection with negotiations of Sale Transactions, and aiding in the consummation of Sale Transactions. (Lazard Engagement Letter ¶ 1.)

11. Under the Application, Gleacher would be retained to assist and advise the Debtors in connection with any transaction, including any acquisition, merger, private equity sale, public equity sale, equity purchase or financing, concerning the Debtors' interests in Archstone (each, an "Archstone Transaction"). (Application ¶ 23.) The services that Gleacher would provide include identifying candidates for potential Archstone Transactions, assisting and advising the Debtors in connection with analyzing, structuring, and negotiating Archstone Transactions, and assisting and advising the Debtors in effectuating Archstone Transactions. (Application ¶ 23.)

12. A simple textual comparison of these definitions begs the question as to the necessity and reasonableness of Gleacher's retention. A proposal to retain—and substantially compensate—two professionals to provide the *exact same* services cannot be reasonable, nor can it be in the best interests of the Debtors' estates and creditors. Moreover, paying both such professionals would directly violate section 330(a)(4)(A) of the Bankruptcy Code, which prohibits compensation of professionals for (i) unnecessarily duplication of services; or (ii) services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case. See 11 U.S.C. § 330(a)(4)(A).

13. Thus, because the Debtors propose to retain Gleacher to perform services that are duplicative of the services Lazard has already been engaged to perform, the Application must be denied.

**B.    Lazard and Gleacher Are Being Paid For Same Services**

14. The Debtors are already paying Lazard $200,000 per month to provide services related to, among other things, Sale Transactions. The Application fails to explain why Lazard is incapable of adequately assisting and advising the Debtors in connection with the Archstone Transactions (which, by their own definition, constitute a sub-set of the Sale Transactions) and why, instead, the Debtors should now be required to pay Gleacher $300,000 per month, *nunc pro tunc* to February 17, 2011, to provide these services.

15. By the Debtors' own admission, made at the time they were seeking to retain Lazard, Lazard is a "capable and experienced financial advisory and investment banking firm" that was carefully selected to provide strategic and financial advice with respect to transfer or sale of the Debtors' assets or interests, which would appear to encompass any Archstone Transaction. (Lazard Application ¶ 14.)

6

16. For $200,000 per month, plus transaction fees, Lazard has agreed to provide a very broad range of services to the Debtors, including assistance and advice in connection with all Sale Transactions. By contrast, Gleacher is seeking $300,000 per month, plus transaction fees, to provide assistance and advice solely in connection with a subset of Sale Transactions, *i.e.*, the Archstone Transactions. The Debtors should be taking full advantage of the bargain they struck with Lazard, rather than agreeing to pay substantial additional fees to another professional for precisely the same services.

17. The Debtors fail to explain why it is reasonable for them to pay an additional $300,000 per month to Gleacher when they are already obligated to pay $200,000 per month to Lazard **whether or not** they utilize Lazard's services in connection with disposing of their interests in Archstone. No showing has been made that Gleacher possesses special expertise or unique qualifications that would justify the Debtors paying an additional $300,000 per month for services that Lazard can and should provide. Given Lazard's qualifications, intimate knowledge of the Debtors' financial history and business operations, and significant involvement with the Debtors since before their bankruptcy filing, Lazard is at least as qualified as Gleacher to provide services relating to Archstone Transactions. The Committee remains unconvinced, based on its extensive involvement in negotiations concerning Archstone, that Gleacher has brought anything to the table that could not be provided by Lazard.

18. Thus, because Lazard has the necessary skills and expertise to represent the Debtors in connection with Archstone Transactions, and is already being paid to provide those services, the Application must be denied.

C. **Risk of Duplicative Transaction Fees**

19. Furthermore, the respective terms of Lazard's and Gleacher's retentions arguably expose the Debtors to the risk that they may be liable to pay transaction fees to each

7

firm on account of Archstone Transactions. Under the terms of the Lazard Engagement Letter, Lazard appears to be entitled to an "Other Sale Fee" in connection with any Archstone Transaction. (Lazard Engagement Letter ¶ 2.) At the same time, under the proposed retention terms, Gleacher would also be entitled to various fees in connection with the Archstone Transactions—up to $15 million. (Application ¶ 25.)

20. Notwithstanding the fact that the Committee raised with the Debtors the issue of potential double liability more than ten months ago, the Application fails even to acknowledge—let alone resolve—this issue. The Debtors have not represented that "Archstone Transactions" have been excluded by agreement from the definition of the "Sale Transaction" in the Lazard Engagement Letter. Accordingly, approval of the Application may well result in the Debtors' estates being liable for duplicative fees—in the amount of tens of millions of dollars—on account of Archstone Transactions. That, in itself, provides a sufficient basis to deny the Application.

**D.    Reasonableness of Fees Incurred**

21. Finally, while the Committee believes that the Application should be denied outright for the reasons set forth above, if the Court is nonetheless inclined to consider the Application, the Debtors should be required, at a minimum, to provide the Court with detailed information concerning the services Gleacher has provided during the past ten months. Before approving the Application or the reasonableness of proposed fees, the Court should review closely any services Gleacher has provided during this period and determine whether such services, in fact, provided substantial benefit to the Debtors' estates and creditors.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) sustain the Objection; (b) deny the Application; and (c) grant the Committee such other and further relief as is just and proper.

Dated: December 9, 2011
      New York, New York

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis C. O'Donnell
    Dennis F. Dunne
    Evan R. Fleck
    Dennis C. O'Donnell
    1 Chase Manhattan Plaza
    New York, New York 10005
    Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.