HEARING DATE AND TIME: December 21, 2011 at 10:00 a.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                    :

                                          :      Chapter 11

LEHMAN BROTHERS HOLDINGS INC., *et al.*   :

                                          :      Case No. 08-13555 (JMP)

                                          :

                           Debtors.       :      (Jointly Administered)

                                          :

------------------------------------------------------------x

### DECLARATION OF JULIE J. BECKER IN CONNECTION WITH THE DEBTORS' OBJECTION TO THE CLAIM OF WILMINGTON TRUST COMPANY AS INDENTURE TRUSTEE (CLAIM NO. 10082)

Pursuant to 28 U.S.C. §1746, Julie J. Becker, declares as follows:

1.      I am employed by Wilmington Trust, N.A. as a Vice President in the Corporate Client Services Group, located at 50 South Sixth Street, Suite 1290, Minneapolis, Minnesota 55402-1544. Except as otherwise provided herein, the facts set forth in this Declaration are based on my personal knowledge. I am competent to testify to these facts.

2.      Wilmington Trust Company ("Wilmington Trust") serves as successor indenture trustee under the Indenture, dated as of September 1, 1987 (as amended, supplemented, or modified, the "Indenture"), between Lehman Brothers Holdings Inc. (f/k/a Shearson Lehman Brothers Holdings Inc.) ("LBHI") and Wilmington Trust (as successor trustee to Citibank, N.A.).

3.      I submit this declaration in connection with the Debtors' Objection to the Claim of Wilmington Trust Company, as Indenture Trustee (Claim No. 10082) [Docket No. 20510] (the "Objection"), and in response to the Court's request for evidence that Wilmington Trust provided notice to the noteholders of certain relief requested in the proposed order (the "Proposed Order"), as further described below.

**The Global Proof of Claim**

4.      On September 2, 2009, as authorized under the Indenture, Wilmington Trust filed a proof of claim against LBHI (the "Global Proof of Claim") on behalf of itself, as Indenture Trustee, and the holders (the "Senior Noteholders") of the senior unsecured notes issued pursuant to the Indenture (the "Senior Notes").

5.      The Global Proof of Claim encompassed 791 CUSIP numbers that fell within three categories of securities:  (1) simple interest bearing notes; (2) zero coupon notes (with the simple interest bearing notes, the "Non-Structured Notes"); and (3) complex structured securities in which the return to the investor was based upon the performance or price of an index, commodity or stock (the "Structured Notes").  Based on the Debtors' classification of the Senior Notes, as described in the Objection, the aggregate amount of the Structured Notes is approximately $5 billion.

**The Reconciliation of the Global
Proof of Claim and the Objection Hearing**

6.      In September 2011, the Debtors provided Wilmington Trust with proposed reconciled claim amounts for each CUSIP number under the Indenture.  Over the next month, Wilmington Trust and its counsel engaged in extensive discussions with the Debtors and their advisors to reconcile the claim amounts included in the Global Proof of Claim.  The parties ultimately agreed on a total allowed claim amount of $48,783,940,671.27 (the "Proposed Allowed Claim Amount").

7.      The Proposed Allowed Claim Amount was described in the Objection, which was a consensual "reduce and allow" claim objection agreed to by the Debtors and Wilmington Trust. The Proposed Order included provisions, at Wilmington Trust's request, that would enjoin Senior Noteholders holding Structured Notes from asserting claims against Wilmington Trust

arising from its negotiation of and consent to the proposed allowed amount of the Structured Notes (the "Injunctive Relief").

8.      I am informed by counsel that at the hearing on the Objection held November 30, 2011 (the "Objection Hearing"), the Court entered an order that bifurcated the claim between the Structured Notes and the Non-Structured Notes, and granted the Objection with respect to the Non-Structured Notes.  As a result, the Non-Structured Notes portion of the Wilmington Trust Claim is allowed in the amount of $43,830,978,612.84.

9.      I am further informed by counsel that at the Objection Hearing, the Court requested that Wilmington Trust supplement the record of the hearing with evidence that it had provided notice to the Senior Noteholders of its request that the Proposed Order include the Injunctive Relief.  The Court adjourned the hearing on the objection to the Structured Notes portion of the Global Proof of Claim to December 21, 2011, to afford Wilmington Trust an opportunity to supplement the record with such evidence.

**Wilmington Trust's**
**Notices to Noteholders**

10.     Between October, 2008 and October, 2011, Wilmington Trust sent six notices, as described below, to the Senior Noteholders containing information about substantive developments in the Debtors' bankruptcy cases, including the request for Injunctive Relief.

11.     Wilmington Trust provided notice to the Senior Noteholders through three mechanisms: (a) it transmitted each notice to the Depository Trust Company[1] with instructions to forward the notice on to its DTC Participants, (b) it mailed each notice to individual beneficial holders or brokers who had previously provided Wilmington Trust with their contact information (which Wilmington Trust collected into the "Noteholder Mailing Matrix"), and (c) it posted each

---

[1] The Senior Notes are generally held in "street name" meaning that the notes themselves are registered in the name of Cede & Company as the nominee for the Depository Trust Company.

notice on a website that Wilmington Trust maintained (www.wilmingtontrust.com/lehman) to provide the Senior Noteholders with information about the Senior Notes and these cases.

12.    On October 15, 2008, Wilmington Trust sent a notice of event of default under the Indenture to the Senior Noteholders (the "First Notice"), which provided my mailing address, the phone number of a central call line established by Wilmington Trust to which Senior Noteholders could direct inquiries, and a form that the Senior Noteholders could return to be included on the Noteholder Mailing Matrix.  The First Notice also informed the Senior Noteholders that Wilmington Trust intended to file a global proof of claim on their behalf.  A true and correct copy of the First Notice is attached as Exhibit A.

13.    On February 27, 2009, Wilmington Trust sent a notice to the Senior Noteholders (the "Second Notice") that provided the contact information for Covington & Burling LLP ("Covington"), Wilmington Trust's counsel, and another copy of the form Senior Noteholders could return to be included on the Noteholder Mailing Matrix.  A true and correct copy of the Second Notice is attached as Exhibit B.

14.    On February 24, 2011, Wilmington Trust sent a notice to the Senior Noteholders informing them that the Debtors had filed the first amended chapter 11 plan and disclosure statement (the "Third Notice").  The Third Notice advised the Senior Noteholders that the disclosure statement contained a description of the Debtor's proposed methodology (the "Valuation Methodology") for valuing structured securities issued by the Debtors, including the Structured Notes.  A true and correct copy of the Third Notice is attached as Exhibit C.

15.    On July 26, 2011, Wilmington Trust sent a notice informing the Senior Noteholders that the Debtors had filed the second amended chapter 11 plan and disclosure statement and further describing the Valuation Methodology (the "Fourth Notice").  A true and correct copy of the Fourth Notice is attached as Exhibit D.

4

16.    On August 11, 2011, Wilmington Trust sent a notice titled "Notice to Holders of Senior Notes of Lehman Brothers Holdings Inc. Re: Valuation Methodology Applicable to LBHI Structured Notes and Request For Direction" (the "Fifth Notice").  A true and correct copy of the Fifth Notice is attached as Exhibit E.

17.    The Fifth Notice stated in underlined bold capital letters at the top of the page, "**THIS NOTICE PROVIDES IMPORTANT INFORMATION REGARDING THE VALUATION OF LBHI STRUCTURED NOTES (AS DEFINED BELOW).  ACTION MAY BE REQUIRED BY SENIOR NOTEHOLDERS WHO DISAGREE WITH THE TRUSTEE'S PROPOSED ACTION**."  It informed the Senior Noteholders that, based on the conclusion of the Official Committee of Unsecured Creditors that the Valuation Methodology was reasonable, Wilmington Trust intended to accept the allowed claim amounts for the Structured Notes that were produced by the Valuation Methodology, unless directed otherwise by the Senior Noteholders:.

> ...**THE TRUSTEE PRESENTLY INTENDS TO ACCEPT THE ALLOWED CLAIM AMOUNTS FOR THE LBHI STRUCTURED NOTES THAT ARE PRODUCED BY THE VALUATION METHODOLOGY, AS SET FORTH ON THE STRUCTURED SECURITIES LIST, UNLESS DIRECTED OTHERWISE IN ACCORDANCE WITH THE TERMS OF THE INDENTURE.**

18.    On October 3, 2011, Wilmington Trust sent a notice (a) informing the Senior Noteholders that the Debtors had filed the Objection, and that the proposed allowed amount for the Structured Notes resulted from application of the Valuation Methodology, and (b) stating that because Wilmington Trust had not received direction from the Senior Noteholders concerning acceptance of the application of the Valuation Methodology to the Structured Notes, it had agreed to the Debtors' proposed allowed claim amounts for the Structured Notes (the "Sixth Notice").  A true and correct copy of the Sixth Notice is attached as Exhibit F.

19.    The Sixth Notice also advised the Senior Noteholders, in bold lettering, that Wilmington would seek the Injunctive Relief: **"The Trustee has requested that any order entered in connection with the Objection enjoin the holders of the LBHI Structured Notes from asserting claims against the Trustee arising from its negotiation of and consent to the reduction and allowance of the Global Proof of Claim as it relates to the LBHI Structured Notes."** It also advised the Senior Noteholders that any Senior Noteholder who disagreed with the proposed allowed amount of the Senior Noteholder Claim could oppose the relief sought in the Debtor's Objection.

**Communications from**
**Senior Noteholders**

20.    Wilmington Trust and Covington have received and responded to over 4,000 calls, as well as numerous emails and other forms of correspondence, from Senior Noteholders since the beginning of these cases.  Since the distribution of the Fifth Notice, which included the request that the Senior Noteholders provide direction with respect to the acceptance of the allowed claim amounts for the Structured Notes, Wilmington Trust and Covington have received and responded to over 600 calls from Senior Noteholders.

21.    Neither Wilmington Trust, nor, to my knowledge, Covington has received any response from any Senior Noteholder that purported to direct Wilmington Trust to take or to refrain from taking any action in connection with the application of the Valuation Methodology to the Structured Notes.

22.    Neither Wilmington Trust, nor, to my knowledge, Covington, has received any communication from any Senior Noteholder questioning or objecting to the request for Injunctive Relief.

23.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed this ___ day of December, 2011


Julie J. Becker