Hearing Date: December 21, 2011

REDACTED

*Attorneys for*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**REDACTED**
**OBJECTION TO THE DEBTORS' MOTION FOR SANCTIONS**

Issuer I[1] ("Issuer I") and Issuer II ("Issuer II", and together with Issuer I, the "Issuers"), by and through their undersigned counsel, file this objection (the "Objection") in response to the Motion for Sanctions (the "Motion") filed by Lehman Brothers Financial Products, Inc. ("LBFP"), a debtor and debtor-in-possession in the above-captioned jointly administered bankruptcy cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors-in-possession (collectively "Debtors"), and respectfully submit as follows:

---

[1] Due to the confidential nature of the ADR Proceeding, the names of the Issuers and the exhibits to the Affirmation of counsel for Issuers ("Aff.") are being withheld from the public filing.

**PRELIMINARY STATEMENT**

1. LBFP's Motion is patently offensive and purely a tactical maneuver. It is replete with misrepresentations of the Issuers' position and the contents of this Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, dated March 3, 2011 [Dkt. No. 14789] (the "SPV Order"), and unsupported allegations of bad faith. Moreover, it is frivolous, devoid of all merit and a waste of the Court's time.

2. The Issuers have tried on several occasions to open a dialogue with the Debtors regarding their legitimate concern that, absent the Noteholders or Trustee's involvement, the controlling Indentures do not vest in the Issuers the authority to bind the underlying noteholders to a settlement in this ADR Proceeding, both by telephone prior to September 2, 2011, the date on which the Issuers had to file their response, and in writing in each submission in this ADR Proceeding as well as correspondence. The Debtors have simply refused to discuss the issue.

3. By the Debtors' own admission in the Motion, the Trustee for the Noteholders will not be participating in the ADR Proceeding. According to the Debtors, it is the Issuers, and the Issuers alone, which must participate with the Debtors in the ADR Proceeding and ultimately bind the Noteholders. The glaring problem: the Debtors' demand is unsupported by the controlling Indentures.

**STATEMENT OF FACTS**

4. Issuer I was the derivatives counterparty pursuant to a certain Master Agreement (including all schedules, confirmations and credit support annexes related thereto, the "Issuer I Master Agreement") with LBFP, and Issuer II was the derivatives counterparty pursuant to a certain Master Agreement (including all schedules, confirmations and credit support annexes relating thereto, "Issuer II Master Agreement", together with Issuer I Master Agreement, the

2

"Master Agreements") with LBFP. Aff., Exs. 1, 2. LBHI was the credit support provider under the Master Agreements.

5.  With regard to the Master Agreements, the Issuers' respective rights and obligations are set forth in the Indenture, by and among Issuer I, as issuer, a separate entity as co-issuer and a bank ("Bank") as trustee, and the Indenture, by and among Issuer II, as issuer, a separate entity as co-issuer and Bank as trustee (collectively, the "Indentures"). Aff., Exs. 3, 4. A second bank (the "Trustee") succeeded Bank as trustee under the Indentures.

6.  The Investment Advisor to the respective Issuers was appointed pursuant to the Investment Advisory Agreement between Issuer I and the Investment Advisor, and the Investment Advisory Agreement between Issuer II and the Investment Advisor. Aff., Exs. 5, 6.

7.  LBHI and certain of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York on September 15, 2008. On October 5, 2008, LBFP filed a voluntary petition. The Debtors' chapter 11 cases are being jointly administered in this Court.

8.  In October 2008, the Investment Advisor, on behalf of the Issuers, terminated the Master Agreements and designated October 22, 2008 as the Early Termination Date for all open transactions under the Master Agreements. On or around November 24, 2008, the Investment Advisor, on behalf of the Issuers, sent calculation statements to LBFP with respect to the early termination of the Master Agreements. LBFP has not contested the termination of the Master Agreements.

9.  On or around April 23, 2010, LBFP sent the Trustee and the Investment Advisor Derivatives ADR Notice No. 159 (the "ADR Notice") in accordance with the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives

3

Contracts, dated September 17, 2009 [Docket No. 5207], which disputes the computation and application of the early termination payments.

10. The ADR Notice was not sent to the Issuers at this time. However, the Issuers received a copy of the ADR Notice from the Trustee on or around May 10, 2010. Aff., Ex. 7.

11. Approximately one year later, on or around April 6, 2011, the Issuers received a copy of the ADR Notice without any cover letter, and notably, without any changes to the dates detailed therein. Aff., Ex. 8. The ADR Notice was still dated April 23, 2010, and still contained a June 7, 2010 response date.

12. The Issuers were naturally confused as to why they were receiving the ADR Notice out of the blue, one (1) year after it was issued and ten (10) months after the specified response date. Accordingly, the Issuers forwarded the ADR Notice to the Trustee with the belief that the Trustee, as the entity that had been handling the initial ADR Proceeding and which had the authority to bind the Noteholders to a settlement, would be handling the response. The Trustee later informed the Issuers that it would not be participating in the ADR Proceeding.

13. The Issuers then approached the Investment Advisor, who advised that it, too, would not be participating in the ADR Proceeding.

14. The Issuers then sought to engage U.S. counsel, retaining counsel on or around July 14, 2011.

15. Counsel for the Issuers and the Debtors traded telephone calls the following week, and ultimately participated in a conference call on or around July 22, 2011.[2] Due to the Issuers'

---

[2] The Debtors make reference to "multiple discussions with [the Issuers] over the following weeks regarding the serious implications of noncompliance with the SPV ADR Order, including the possibility of this Court awarding sanctions..." Motion at ¶22. Debtors' counsel makes a similar reference in ¶7 of his declaration. The Debtors provide no detail on these conversations. The conversations were with Debtors' counsel and were merely discussions as to an extension.

4

counsel's previously scheduled professional commitments, counsel for the Issuers sought sixty (60) days to respond to the Notice.

16. Debtors' counsel denied the request, and instead agreed to a response date of September 2, 2011 conditioned on the Issuers designating someone with settlement authority by August 5, 2011.

17. The Issuers fully complied with Debtors' requests. On August 5, 2011, the Issuers designated a representative as having settlement authority on the Issuers' behalf. Aff., Ex. 9. When making this designation, Issuers confirmed their intent to participate in the ADR Proceeding in good faith. In no way did the Issuers believe that in so designating a representative, they were indicating their intent to participate in a manner inconsistent with their authority under the Indentures.

18. Subsequently, in preparing their response to the Notice at the end of August, the Issuers were struck by the discrepancies in the scope of their authority under the Indentures versus the authority that was necessary to participate in the ADR Proceeding in the manner demanded by Debtors. The Issuers' representative had full authority to participate in the ADR Proceeding and bind *the Issuers*, but the Issuers did not have authority under the Indentures to bind *the Noteholders* and could therefore not impart such authority on the Issuers' representative.

19. Specifically, pursuant to the Granting Clauses in the respective Indentures, the Issuers granted to the Trustee all of their respective rights, title and interest in the collateral, including the Master Agreements for the benefit of the respective noteholders (the "Noteholders"). Aff., Exs. 3 and 4. Further, under Article 16 of the respective Indentures which governs the rights and authorities afforded to the Issuers and the Trustee after an early termination event, the relevant language provides that "the Issuer *and the Trustee* shall take such

5

actions…to enforce the rights of the Issuer and the Trustee thereunder as may be permitted by the terms of the Hedge Agreement and consistent with the terms hereof…" *Id.* (emphasis added).

20. Accordingly, by the terms of the operative documents, although the Issuers were the contractual counterparty to the Master Agreements, the Trustee held, and continues to hold, all rights, title and interest in the collateral, including the Master Agreements. The financial beneficiaries (either the Noteholders themselves or the Trustee on their behalf) need to be involved in the ADR Proceeding.

21. Counsel for the Issuers contacted counsel for the Trustee to raise this issue of the Trustee's involvement in the ADR Proceeding, and were informed by the Trustee that it did not believe it had the authority to engage in the ADR Proceeding, and as such, would not be participating.

22. On or around September 1, 2011, counsel for the Issuers also contacted Debtors' counsel by telephone in order to discuss the disconnect between the authority of the Issuers' representative and that afforded the Issuers under the Indentures with respect to binding the Noteholders to a settlement. Counsel for the Issuers did not receive, nor have they ever received, a response from Debtors' counsel.

23. In light of the Debtors' decision to ignore the Issuers' efforts to discuss the governing contracts and scope of authority thereunder, on September 2, 2011, the Issuers timely complied with their obligations under the Order by (a) serving and filing their response to the Notice, dated September 2, 2011 (the "<u>Response</u>") and (b) denying Debtors' settlement demand. In their Response, the Issuers explained that they were limited under the Indentures in their authority to bind the underlying Noteholders, the precise problem the Issuers had hoped to

discuss substantively with the Debtors (and possibly resolve) prior to having to file the Response. Aff., Ex. 10.

24. On September 19, 2011, one (1) week before the Debtors were required to reply to the Issuers' Response, Debtors sent the Issuers a letter accusing them of "effectively refusing to participate in mediation," and, moreover, accusing the Issuers of bad faith. Aff., Ex. 11.

25. The Issuers responded to the Debtors on September 26, 2011, again setting forth their position with respect to the Issuers' authority under the Indentures, and asking the Debtors for where they found "authority under the Indentures for the Issuers to bind the noteholders or otherwise direct the Trustee to dispose of the underlying assets." Aff., Ex. 12.

26. Within a matter of hours and without addressing the Issuers' question as to authority under the Indentures, the Debtors filed their Reply, underscoring their disinterest in the Issuers' legitimate position and contractual limitations under the Indentures. Aff., Ex. 12.

27. The Issuers did not hear anything further from the Debtors as to the ADR Proceeding until the instant Motion was filed on November 30, 2011, more than two (2) months after the Issuers replied to the Debtors' accusations. The Motion originally provided for five (5) business days for the Issuers to object.

28. On December 2, 2011, counsel for the Issuers sought by email a brief one (1) week extension for filing its response to the Motion and the December 14, 2011 hearing due to a previously scheduled deposition in another matter. The Debtors refused. Later that day, counsel for the Issuers again requested, as a matter of professional courtesy, that the hearing date be adjourned and deferred to the Debtors to choose the date. More importantly, counsel for the Issuers once again reminded the Debtors that they had reached out to discuss the substantive issues relating to the Issuers' authority in September, and even though they had been ignored

7

them, would like to have the discussion now. Although the Debtors agreed to adjourn the hearing until December 21, 2011, the Debtors, once again, ignored the Issuers' invitation to open a dialogue. Aff., Ex. 14.

29. On December 6, 2011, the Issuers requested that counsel for the Trustee circulate a letter to the Noteholders advising them of the status of the Adversary Proceeding and requesting their involvement in the process. Aff., Ex. 15.

## THE DEBTORS BLATANTLY MISREPRESENT THE ISSUERS' POSITION IN THIS ADR PROCEEDING: THE ISSUERS HAVE, AND WILL CONTINUE TO, PARTICIPATE IN THE ADR PROCEEDING IN GOOD FAITH AND IN A MEANINGFUL AND SUBSTANTIAL WAY

30. The Debtors would have this Court believe that the Issuers have acted in bad faith and determined not to participate in this ADR Proceeding in violation of the SPV Order. Nothing could be farther than the truth.

31. Unlike the Trustee and Investment Advisor, who *did* refuse to participate in this ADR Proceeding on the basis of their lack of authority under the Indentures, the Issuers have (a) designated a representative with full authority to participate in and bind the Issuers to the terms of any settlement; (b) through counsel, proactively reached out to the Debtors in an attempt to ensure any mediation in this ADR Proceeding could be a meaningful one; and (c) despite the Debtors' imprudent decision to ignore the Issuers, filed the Response, which fully complied with all of the Issuers' obligations under the SPV Order. *See infra* ¶¶37-45.

32. As a further sign of their good faith, the Issuers have asked the Debtors, to direct them to where in the Indentures they believe the Issuers, absent the Trustee's involvement, have the authority to bind the Noteholders to a settlement. The Debtors have refused to do so. *See supra* ¶¶25.

33. Despite the Debtors' flagrant misrepresentations to the contrary, the Issuers have not taken, nor do they now take, the position that they lack the authority to engage in settlement discussions. *Cf.* Settlement Authority Designation, Response and Motion at ¶24. What the Issuers contend, and what the Debtors have never addressed, *even in the Motion*, is that while the Issuers do have authority to negotiate the amount of a settlement, they do not have the absolute authority to bind the Noteholders and/or direct the Trustee to pay out a settlement amount.

34. It is foolish for the Debtors to take the position that Section 2 of the SPV Order, which allows the Debtors to proceed solely against SPV Derivatives Counterparties such as the Issuers, permits the Debtors to ignore the contractual limitations placed on the counterparties' authority under the controlling documents. It is similarly imprudent and wholly without support under contract law for the Debtors to argue that Section 5(b) of the SPV Order, which recognizes a trustee's right (but not a derivative counterparty's right) to claim lack of settlement authority, defeats a legitimate and enforceable contractual limitation on any derivative counterparty's authority, including that of the Issuers.

35. There is nothing more to the Issuers' position than a good faith desire to participate in the ADR Proceeding to the fullest extent authorized by the Indentures, which, under the Issuers' good faith interpretation, does not include the authority to bind the Noteholders to any settlement, nor to direct the Trustee to pay out a settlement without input and agreement from the Noteholders (or the Trustee on their behalf) in the event the Issuers and the Debtors reached an agreement at mediation. The Debtors paint this as "bad faith" but, in fact, the Issuers believe the only thing that would be bad faith is if the Issuers exceeded their legal authority by knowingly participating in the Adversary Proceeding without the Noteholders' or the Trustee's involvement and without raising the issue of authority for the Debtors and this

9

Court to consider. In other words, it would be patently improper for the Issuers to act in such a way as to make it seem that the Issuers have certain authorities that, in fact, they do not.

36. Based on the Motion, the Issuers suspect that they are not the only counterparties under similar transactions raising the legitimate issue of the scope of authority to bind the beneficiaries of respective transactions, which makes the Debtors' decision to pursue sanctions against the Issuers even more troubling. It would seem more prudent for the Debtors to consider the substance of the underlying Indentures and legitimate concerns raised by the Issuers, and make an effort to come to a mutually acceptable resolution of how to proceed in accordance with the contractual provisions, and use it as a framework for how to proceed under the SPV Order in other similarly situated ADR proceedings.

## SANCTIONS UNDER THE SPV ORDER ARE UNWARRANTED BECAUSE THE ISSUERS HAVE FULLY COMPLIED WITH THE TERMS OF THE SPV ORDER

37. The Debtors base their entire Motion on the Issuers' alleged violations of the SPV Order, arguing that the Issuers failed to participate in the ADR Proceeding in good faith by (a) failing to "engage on the merits" of the Notice, including not complying with the procedural requirements for its Response; and (b) being untimely. *See e.g.*, Motion at ¶¶ 37, 38. The Debtors' arguments are baseless.

38. Paragraph 8 of the SPV Order prescribes the manner in which a party is to respond to a Derivatives ADR Notice. *See* SPV Order at ¶ 8(b)(i)-(ii). Among other things, section 8(b) of the SPV Order expressly provides that a respondent must respond to an ADR Notice in one of two ways: (i) agree to settle at the demand in the ADR Notice; or (ii) "decline to settle for the amount stated in the [ADR Notice], in which case [the respondent] must include a brief explanation in the [Response] setting forth the reason(s) for such denial." SPV Order ¶ 8(b). Paragraph 8 also underscores the need to timely respond to a Derivatives ADR Notice, stating

10

that the "[f]ailure to provide a timely Response to the Derivative ADR Notice" is a sanctionable offense. SPV Order at ¶ 8(c). Notably, the SPV Order provides that "[s]ervice of a completed Response to a Derivatives ADR Notice in the form annexed to this Order as Exhibit 'B' *shall presumptively be deemed to comply with this Order.*" SPV Order at ¶ 8(b)(ii) (emphasis added).

39. Additionally, paragraph 6 of the SPV Order provides that nothing in the SPV Order prohibits a derivatives counterparty from asserting a "valid defense to a Debtor's demand." SPV Order at ¶ 6.

40. Paragraph 12 of the SPV Order provides for and enumerates certain sanctions that are available where a party fails to participate in good faith with the ADR procedures.

41. The Debtors' allegations that the Issuers have violated the SPV Order, specifically the terms of paragraph 8 therein, is untrue because *the Issuers have fully complied* with the terms therein. Indeed, based upon the plain language for the SPV Order, by serving their Response to the ADR Notice in substantially the same form as that attached as Exhibit B to the SPV Order, the Issuers are entitled to a presumption of compliance. SPV Order at ¶ 8(b)(ii).

42. The Debtors' requirement that the Issuers "engage on the merits" in the Response is simply not what the SPV Order requires. What it does require, however, is for each party to respond to the Notice by agreeing to settle the demand or by denying the demand, and in the case of a denial, including a brief explanation. *See id.*

43. The Issuers did just that: in their Response, the Issuers rejected the Debtors' settlement demand, providing "a brief explanation in the [Response] setting forth the reason(s) for such denial." SPV ADR Order § 8(b)(ii). Specifically, the Issuers explained that they were denying the settlement offer and allegations in the Notice *because the Issuers alone could not bind the Noteholders to a settlement*:

11

> The Issuers are not the proper parties for resolving this dispute at mediation. Substantially all the Issuers' assets are pledged pursuant to the terms of the Indentures. The Issuers have limited authority and rights under the Indentures. For purposes of this mediation, the Issuers lack authority under the Indentures *to bind the underlying noteholders to any settlement*. Nor do the Issuers have any authority under the Indentures *to direct the indenture trustees thereunder to take any action with respect to paying out any settlement amount that may be agreed upon in mediation*. For these reasons, the Issuers deny LBFP's allegations in connection with the transactions described in the Notice and reject LBFP's demand.

Aff., Ex. 10 (emphasis added).

44. In any event, the Issuers *have* engaged "on the merits" in their Response. In fact, the Issuers repeatedly tried to engage Debtors on an issue central to this ADR Proceeding – the authority (or lack thereof) the Issuers have under the Indentures to bind the Noteholders. And on each occasion, the Issuers have been met by silence. The Debtors refuse to accept the opportunity, extended by the Issuers, to engage in a dialogue concerning the Issuers' contractual constraints relating to their authority to bind the Noteholders. Instead they have determined to make an end run around the ADR process by seeking a default judgment against the Issuers by exploiting the generous terms relating to sanctions as set forth in the SPV Order. The Debtors accuse the Issuers of playing games and tactical posturing – but in reality, it is the Debtors who have engaged in such behavior, having made a calculated decision to ignore all of the Issuers' attempts to discuss the terms of the controlling Indentures to ensure the ADR Proceeding and any forthcoming mediation is a success.

45. The Debtors also move for sanctions because it allegedly took the Issuers "eleven weeks" to respond to the Notice, yet at no time during that eleven (11) week period did the Debtors file a motion for sanctions with this Court. Moving for sanctions on this basis is unprofessional because the Debtors *expressly agreed to extend the Issuers' response date to*

*September 2* (on which date the Issuers served its Response in full compliance with the terms of the SPV Order), thereby waiving the Debtors' right to move for sanctions against the Issuers under ¶ 8(c).

46. Moreover, the Motion is plainly frivolous because the Debtors egregiously mischaracterize the facts and the contents of the SPV Order. The Issuers have fully complied with their obligations under the SPV Order by virtue of (a) the explanation of their position in the Response; and (b) their multiple attempts to engage Debtors on an issue central to this ADR Proceeding – the authority they have under the Indentures to bind the Noteholders, which the Debtors refuse to discuss. At no point in this ADR Proceeding have the Issuers, through counsel or otherwise, stated that they lacked the authority to engage in settlement discussions.

47. The Debtors cannot and should not be allowed to abuse the process set forth by the Court in the SPV Order by wasting this Court's limited resources and time with frivolous motion practice that could have been, and should have been, dealt with months ago.

48. For these reasons, the Motion lacks merit and the Court should deny the Debtors' attempt to hoodwink this Court into entering a default judgment and an order requiring the Issuers to pay the amounts demanded by the Debtors in the Notice, along with any attorneys' fees and expenses. The Court should dismiss the Motion and order the Debtors to pay the Issuers an amount equal to the attorneys' fees and costs incurred by the Issuers in objecting the frivolous Motion.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Issuers (i) object to the Debtors' Motion and (ii) request the Court award the Issuers an amount equal to the attorneys' fees and costs incurred by the Issuers in objecting to the Motion, and grant the Issuers such other and further relief as the Court may deem just and proper.

New York, New York
December 12, 2011

REDACTED

By: _____

REDACTED

14