REDACTED

*Attorneys for*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

REDACTED an attorney duly admitted to practice in the State of New York, hereby affirms under penalty of perjury:

1.  I am a member of REDACTED counsel to Issuer I[1] and Issuer II (together with Issuer I, the "Issuers"). The statements made herein are based on my personal knowledge and my review of relevant documents.

2.  I submit this affirmation in support of the Issuers' objection (the "Objection") to the Motion for Sanctions (the "Motion") filed by Lehman Brothers Financial Products, Inc. ("LBFP"), a debtor and debtor-in-possession in the above-captioned jointly administered bankruptcy cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors-in-possession (collectively "Debtors").

---

[1] Due to the confidential nature of the ADR Proceeding, the names of the Issuers and the exhibits to this Affirmation are being withheld from the public filing.

3.  Issuer I was the derivatives counterparty pursuant to a certain Master Agreement (including all schedules, confirmations and credit support annexes related thereto, the "Issuer I Master Agreement") with LBFP, and Issuer II was the derivatives counterparty pursuant to a certain Master Agreement (including all schedules, confirmations and credit support annexes relating thereto, "Issuer II Master Agreement", together with Issuer I Master Agreement, the "Master Agreements") with LBFP. Copies of the Master Agreements are attached hereto as Exhibits 1 and 2, respectively. LBHI was the credit support provider under the Master Agreements.

4.  With regard to the Master Agreements, the Issuers' respective rights and obligations are set forth in the Indenture, by and among Issuer I, as issuer, a separate entity as co-issuer and a bank ("Bank") as trustee, and the Indenture, by and among Issuer II, as issuer, a separate entity as co-issuer and Bank as trustee (collectively, the "Indentures"). Copies of the Indentures are attached hereto as Exhibits 3 and 4, respectively. A second bank (the "Trustee") succeeded Bank as trustee under the Indentures.

5.  The Investment Advisor to the respective Issuers was appointed pursuant to the Investment Advisory Agreement between Issuer I and the Investment Advisor and the Investment Advisory Agreement between Issuer II and the Investment Advisor (the "Investment Advisory Agreements"). Copies of the Investment Advisory Agreements are attached hereto as Exhibits 5 and 6.

6.  On or around April 23, 2010, LBFP sent the Trustee and the Investment Advisor Derivatives ADR Notice No. 159 (the "ADR Notice") in accordance with the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives

Contracts, dated September 17, 2009 [Docket No. 5207], which disputes the computation and application of the early termination payments.

7. I have been advised by the Issuers that they did not receive the ADR Notice from the Debtors, although they received a copy of the ADR Notice from the Trustee on or around May 10, 2010. A copy of the ADR Notice sent by the Trustee is attached hereto as Exhibit 7.

8. Approximately one year later, on or around April 6, 2011, the Debtors sent the Issuers a copy of the ADR Notice without any changes to the dates detailed therein. A copy of the ADR Notice received by the Issuers is attached hereto as Exhibit 8. The ADR Notice was still dated April 23, 2010, and still contained a June 7, 2010 response date. I have been advised by the Issuers that no cover letter was included.

9. I have been advised by the Issuers that they forwarded the ADR Notice to the Trustee with the belief that the Trustee, as the entity that had been handling the initial ADR Proceeding and which had authority to bind the Noteholders to a settlement, would be handling the response.

10. I have been advised by the Issuers that the Trustee later informed them that it would not be participating in the ADR Proceeding. The Issuers then approached the Investment Manager, who advised that it, too, would not be participating in the ADR Proceeding.

11. The Issuers then sought to engage U.S. counsel, retaining counsel on or around July 14, 2011.

12. Over the next several days, I attempted to speak with counsel for the Debtors. On or around July 22, 2011, counsel for both parties participated in a conference call to discuss the pending adversary proceeding. I asked Debtors' counsel for a sixty (60) day extension to

respond to the ADR Notice due to our recent retention and previously scheduled professional commitments.

13. Debtors' counsel denied my request, but agreed to a response date of September 2, 2011 conditioned on the Issuers designating someone with settlement authority by August 5, 2011.[2]

14. The Issuers fully complied with Debtors' requests. On August 5, 2011, the Issuers designated a representative as having settlement authority on the Issuers' behalf (the "Settlement Participation Designation"). A copy of the Settlement Participation Designation is attached hereto as Exhibit 9.

15. Subsequently, in preparing the Issuers' response to the Notice at the end of August, the Issuers were struck by the discrepancies in the scope of their authority under the Indentures versus the authority that was necessary to participate in the ADR Proceeding in the manner demanded by Debtors. Specifically, the Issuers' representative had full authority to participate in the ADR Proceeding and bind the Issuers, but the Issuers did not have authority under the Indentures to bind the Noteholders and could therefore not impart such authority on the Issuers' representative.

16. The Issuers' counsel contacted counsel for the Trustee to raise the issue of the Trustee's involvement in the ADR Proceeding, and was told that the Trustee did not believe it had the authority to engage in the ADR Proceeding, and as such, would not be participating.

---

[2] The Debtors make reference to "multiple discussions with [the Issuers] over the following weeks regarding the serious implications of noncompliance with the SPV ADR Order, including the possibility of this Court awarding sanctions..." Motion at ¶22. Debtors' counsel makes a similar reference in ¶7 of his declaration. The Debtors provide no detail on these conversations. The conversations I had were with Debtors' counsel and were merely discussions as to an extension.

17. On or around September 1, 2011, I contacted Debtors' counsel by telephone in order to discuss the disconnect between the authority of the Issuers' representative and that afforded the Issuers under the Indentures with respect to binding the noteholders. I did not receive, nor have I ever received, a response from the Debtors' counsel. .

18. In light of the Debtors' decision to ignore the Issuers' efforts to discuss the governing contracts and scope of authority thereunder, on September 2, 2011, the Issuers timely complied with their obligations under the Order by (a) serving and filing their response to the Notice, dated September 2, 2011 (the "Response") and (b) denying Debtors' settlement demand. A copy of the Response is attached hereto as Exhibit 10. In their Response, the Issuers explained that they were limited under the Indentures in their authority to bind the underlying noteholders, the precise problem the Issuers had hoped to discuss substantively with the Debtors (and possibly resolve) prior to having to file the Response.

19. On September 19, 2011, one (1) week before the Debtors were required to reply to the Issuers' Response, Debtors sent the Issuers a letter (the "September 19 Letter") accusing them of "effectively refusing to participate in mediation," and, moreover, accusing the Issuers of bad faith. A copy of the September 19 Letter is attached hereto as Exhibit 11.

20. The Issuers responded to the Debtors on September 26, 2011 (the "September 26 Letter"), again setting forth their position with respect to the Issuers' authority under the Indentures, and asking the Debtors for where they found "authority under the Indentures for the Issuers to bind the noteholders or otherwise direct the Trustee to dispose of the underlying assets." A copy of the September 26 Letter is attached hereto as Exhibit 12.

21. Within a matter of hours and without addressing the Issuers' question as to authority under the Indentures, the Debtors filed their reply to the Response (the "Reply"),

5

underscoring their disinterest in the Issuers' legitimate position and contractual limitations under the Indentures. A copy of the Reply is attached hereto as Exhibit 13.

22. The Issuers did not hear anything further from the Debtors as to the ADR Proceeding until the Motion was filed on November 30, 2011, more than two (2) months after the Issuers replied to the Debtors' accusations.

23. On December 2, 2011, the Issuers' counsel sought by e-mail a brief one (1) week extension for filing its response to the Motion and the December 14, 2011 hearing due to a previously scheduled deposition I had in another matter. Debtors' counsel refused. Later that day, I again requested, as a matter of professional courtesy, that the hearing date be adjourned and deferred to Debtors' counsel to choose the date. More importantly, I once again reminded Debtors' counsel that I had reached out to discuss the substantive issues relating to the Issuers' authority in September, and even though I had been ignored them, would like to have the discussion now. Although Debtors' counsel agreed to adjourn the hearing until December 21, 2011, Debtors' counsel, once again, ignored my invitation to open a dialogue. A copy of the aforementioned correspondence is attached hereto as Exhibit 14.

24.     On December 6, 2011, the Issuers requested that counsel for the Trustee circulate a letter to the noteholders advising them of the status of the Adversary Proceeding and requesting them to get involved in light of the Trustee's decision not to engage. A copy of the aforementioned correspondence is attached hereto as Exhibit 15.

New York, New York
December 12, 2011

                                    REDACTED
                        By: _____