**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— X
In re:                                                  )
                                                        )
LEHMAN BROTHERS HOLDINGS INC., et al.                   )    Chapter 11
                                                        )
                                                        )    Case No. 08-13555
                                                        )
Debtors.                                                )    (Jointly Administered)
                                                        )
———————————————————— X

## DECLARATION OF (ALEX) TAE-HO CHANG.

I, (Alex) Tae-Ho Chang, hereby declare that the facts set forth herein are true and correct upon personal knowledge, information and belief:

1.      I am a Vice President in the Default Administration Group of The Bank of New York Mellon.  The Bank of New York Mellon administers trusts on account of The Bank of New York Mellon Trust Company, N.A., ("BNYM").  BNYM serves as indenture trustee for the holders (the "Bondholders") of Series 2008A Bonds (the "Main Street Bonds") issued under that certain Trust Indenture, dated as of April 1, 2008, by Main Street Natural Gas, Inc.

2.      I respectfully submit this declaration in support of the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Settlement and Compromise with the Bank of New York [Mellon] Trust Company, as Indenture Trustee for the Main Street Bonds and Main Street Natural Gas, Inc.* [Docket No. 22024] (the "Motion").[1]

3.      The Motion, which seeks approval of the Stipulation between the Debtors, Main Street and BNYM and certain related releases resolves disputes concerning the classification and allowed amounts of the claims asserted by BNYM and Main Street in the

---

[1]      Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

KL2 2727191.4

Proofs of Claim and certain objections to the Plan. The Stipulation was product of good faith, arms-length negotiations among the parties and was the culmination of protracted discussions spanning more than six months. The asserted claims arise under the Gas Purchase Agreement between LBCS and Main Street and the Guarantee of LBCS's payment obligations under the Gas Purchase Agreement issued by LBHI. All of Main Street's rights, title and interest in, to and under the Gas Purchase Agreement and the Guarantee, among other agreements, were pledged to BNYM by Main Street as a part of the Trust Estate (as defined in the Indenture) which secures Main Street's repayment obligations under the Main Street Bonds.

4.      BNYM has no economic interest in the Main Street Bonds. BNYM received guidance in the form of letters of direction from known Bondholders to enter into the Stipulation. In total, Bondholders owning 79.07% of the Main Street Bonds have directed and authorized BNYM to enter into the Stipulation.[2] Because all Bondholders' economic interests are impacted by the approval of the Motion (and less than 100% of Bondholders provided direction), BNYM has provided appropriate notice of the Motion, the Stipulation, the settlement incorporated therein and the requested finding that BNYM shall have no liability for any claims, demands, suits, actions or causes of action in any way related to the Motion and the Stipulation.

5.      To provide Bondholders with notice and an opportunity to be heard with respect to the Stipulation, on November 18, 2011, I caused a true and complete copy of the notice attached hereto as Exhibit A (the "Notice") to be filed with the Depository Trust Company ("DTC") for dissemination to the Bondholders through such Bondholders' DTC participants and nominees. In compliance with Exchange Act Rule 5c2-12 (Municipal Securities Disclosure), a copy of the Notice was also filed with "Electronic Municipal Market Access"

---

2      Between the entry of the Stipulation and filing of the Motion, an additional Bondholder executed a letter of direction supporting BNYM's entry into the Stipulation.

(www.emma.msrb.org).    The Notice attaches a copy of the Motion and the Stipulation and highlights in bold emphasis the following:

> The Trustee encourages all holders to carefully review the Stipulation, the Rule 9019 Motion and the proposed Order. The proposed Order contemplates that holders of the Bonds will be enjoined from asserting claims against the Trustee, Main Street, and the Debtors arising from the negotiation of and entry into the Stipulation. The Order entered by the Bankruptcy Court will be binding on all holders of the Bonds irrespective of any rights which they may have under the Indenture or any other relevant documents. Accordingly, any holder desiring to contest the Rule 9019 Motion and the relief sought therein must file an objection in the manner set forth in the Notice of Motion.

Through the one or both means, all Bondholders should have received notice of Motion sufficiently in advance of objection deadline, to lodge any objection to the relief sought thereunder.  As of today, I am not aware of the any formal or informal objections to the Motion from any Bondholders.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

I declare under penalty of perjury that the foregoing is true and correct.  Executed at

NY , NY on December 13, 2011

_____

(ALEX) TAE-HO CHANG

**<u>EXHIBIT A</u>**



# NOTICE TO THE HOLDERS OF

**Main Street Natural Gas, Inc. Gas Project Revenue Bonds, Series 2008A (the "Bonds")**

**CUSIP Numbers 56036YED3, 56036YEE1, 56036YEF8, 56036YEG6, and 56036YEH4**

*Note: This notice contains important information that is of interest to the registered and beneficial owners of the subject Bonds. Each registered holder of the Bonds should forward a copy of this Notice immediately to any beneficial owner(s) of the Bonds for whom the holder acts as nominee or in any other capacity.*

By previous notices dated as of October 1, 2008, November 4, 2008, September 22, 2009, April 6, 2011, and October 20, 2011 The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.), as Trustee (the "Trustee"), had advised you of (i) the occurrence of an Event of Default under the Trust Indenture dated as of April 1, 2008 (the "Indenture") between Main Street Natural Gas, Inc. ("Main Street") and the Trustee; (ii) the filing of Chapter 11 (the "Chapter 11 Cases") cases by Lehman Brothers Commodity Services, Inc. ("LBCSI"), the purchaser under the Agreement for Purchase and Sale of Natural Gas between Main Street and LBCSI dated as of April 1, 2008 (the "Gas Purchase Agreement") and Lehman Brothers Holdings, Inc. ("LBHI") in the Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") (under the Indenture, Main Street pledged its interests under the Gas Purchase Agreement as guaranteed by LBHI to the Trustee as security for the payment of the Bonds); (iii) the formation of an Ad Hoc Committee of beneficial owners of the Bonds and the retention of the law firm of Kramer Levin Naftalis and Frankel LLP ("KLN&F"), as special counsel, and Capstone Advisory Group, LLC, as financial advisor ("Capstone"), to represent the Trustee in connection with the exercise of appropriate remedies in the Chapter 11 Cases; (iv) certain discovery requests and other steps taken in the Chapter 11 cases to obtain information relating to the disposition of the proceeds from the sales of the Bonds paid to LBCSI under the Gas Purchase Agreement; (v) the date to file proofs of claim and the circumstances under which individual Holders would be required to file claims against the Debtors; (vi) the filing of a First Amended

Plan of Reorganization ("Initial Plan) and related Disclosure Statement together with estimated recoveries under the Initial Plan and (vii) the filing of a Third Amended Joint Plan of LBHI and its affiliated debtors (the "Amended Plan") together with related recoveries thereunder.

The purpose of this Notice is to advise you that the Trustee, pursuant to a direction from holders of a majority of principal amount of the Bonds, entered into a Stipulation and Agreement (the "Stipulation") dated as of November 9, 2011 with Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") and Main Street to fix the amount of the unliquidated claims filed against the Debtors by the Trustee on September 22, 2009 (the "BNYM Claim") and by Main Street on September 21, 2009 (the "Main Street Claim", together with the BNYM Claim termed the "Claims").

The Stipulation fixes the amount of a single Claim of the Trustee and Main Street against the Debtors arising out of the Gas Purchase Agreement at $722,000,000 (the "Claim Amount"). Pursuant to the Stipulation, the Claim Amount will be allowed as a Class 4, General Unsecured Claim against LBCS and a Class 9A, Third Party Guarantee Claim Other Than Those of the Racer Trusts, against LBHI. Based upon the estimates provided in the Debtors' latest Disclosure Statement, the Stipulation will result in an approximate recovery of 63.44% of the principal amount of the Bonds. In addition, holders will receive a pro rata distribution of approximately $18MM of funds held in reserve funds established under the Indenture.

The Debtors have filed a Motion pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of the Stipulation (the "Rule 9019 Motion"). Copies of the Rule 9019 Motion, the Notice of Motion, the Stipulation and the proposed Order approving the Rule 9019 Motion are attached hereto. The Rule 9019 Motion is scheduled to be heard before the United States Bankruptcy Court for the Southern District of New York on December 14, 2011. Any objections to the Rule 9019 Motion must be filed by December 7, 2011.

**The Trustee encourages all holders to carefully review the Stipulation, the Rule 9019 Motion and the proposed Order. The proposed Order contemplates that holders of the Bonds will be enjoined from asserting claims against the Trustee, Main Street, and the Debtors arising from the negotiation of and entry into the Stipulation. The Order entered by the Bankruptcy Court will be binding on all holders of the Bonds irrespective of any rights which they may have under the Indenture or any other relevant documents. Accordingly, any holder desiring to contest the Rule 9019 Motion and the relief sought therein must file an objection in the manner set forth in the Notice of Motion.**

In the event that you have any questions regarding this Notice, please call Mr. Alex Chang by phone at (212) 815-2816 or email, Alex.Chang@bnymellon.com.

Dated: November 17, 2011

The Bank of New York Mellon Trust Company, N.A.
as Trustee

**Note:    The Cusip numbers appearing herein have been included solely for the convenience of the Holders.   The Bank of New York Mellon Trust Company, N.A. assumes no responsibility for the selection or use of such numbers and makes no representation as to the correctness of the Cusip numbers listed above.**

**Hearing Date and Time: December 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  December 7, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Robert J. Lemons
Stephen A. Youngman (admitted pro hac vice)

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :     Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :     08-13555 (JMP)
                                        :
                       Debtors.         :     (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT AND COMPROMISE WITH THE BANK OF NEW YORK TRUST COMPANY, N.A., AS INDENTURE TRUSTEE FOR THE MAIN STREET BONDS AND MAIN STREET NATURAL GAS, INC.

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion")

of the above-captioned debtors, as debtors and debtors-in-possession (the "Debtors"), for

approval, pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") of a settlement and

compromise with The Bank of New York Trust Company, N.A., as indenture trustee ("BNYM")

and Main Street Natural Gas, Inc. ("Main Street"), all as more fully described in the Motion, will

be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 14, 2011 at 10:00**

**a.m. (Prevailing Eastern Time)** (the "Hearing").

       **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy

Court for the Southern District of New York, shall set forth the name of the objecting party, the

basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

(a) electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on:  (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges

LLP, 200 Crescent Court, Suite 300, Dallas, TX 75201, Attn:  Stephen Youngman, Esq.,

attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall

Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G.

Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1

Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured

creditors appointed in these cases; (v) (a) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue

of the Americas New York, New York 10036, Attn: Amy Caton, Esq., and (b) Emmet, Marvin &

Martin, LLP, 120 Broadway, 32nd Floor, New York, New York, 10271, Attn: Edward P.

Zujkowski, attorneys for BNYM; and (vi) Alston & Bird LLP, One Atlantic Center, 1201 W.

Peachtree Street, NW, Atlanta, Georgia, 30309, Attn: John C. Weitnauer, attorneys for Main

Street, so as to be so filed and received no later than **December 7, 2011 at 4:00 p.m. (prevailing**

**Eastern Time) (the "Objection Deadline").**

> **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

> **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated:  November 14, 2011
      New York, New York

<div style="margin-left:40%;">

/s/ Stephen A. Youngman
Robert J. Lemons
Stephen A. Youngman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

</div>

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Robert J. Lemons
Stephen A. Youngman (admitted pro hac vice)


Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :   08-13555 (JMP)
                                        :
                Debtors.                :   (Jointly Administered)
                                        :
----------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO SECTION**
**105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE**
**9019 FOR APPROVAL OF A SETTLEMENT AND COMPROMISE WITH**
**THE BANK OF NEW YORK TRUST COMPANY, N.A., AS INDENTURE TRUSTEE**
**FOR THE MAIN STREET BONDS AND MAIN STREET NATURAL GAS, INC.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Commodity

Services Inc. ("LBCS" and together with their affiliated debtors in the above-referenced chapter

11 cases, as debtors and debtors-in-possession, the "Debtors"), file this motion and respectfully

represent:

**Preliminary Statement**

1.      After extensive discussions and negotiations, LBHI and LBCS have

entered into a stipulation and agreement with The Bank of New York Trust Company, N.A., in

its capacity as indenture trustee for the Main Street Bonds (as defined below) ("BNYM") and

Main Street Natural Gas, Inc. ("Main Street") to resolve the substantial claims filed by BNYM

and Main Street against LBCS and LBHI arising out the Agreement for Purchase and Sale of

Natural Gas, dated as of April 1, 2008, among LBCS and Main Street (the "Gas Purchase

Agreement"), and the Guarantee of LBHI of LBCS's obligations under the Gas Purchase

Agreement.  A copy of the stipulation and agreement (the "Stipulation and Agreement") is

attached hereto as Exhibit A.[1]

2.      The Stipulation and Agreement is fair, reasonable, and in the best interests

of LBCS and LBHI and their creditors.  Accordingly, the Stipulation and Agreement should be

approved.

### Relief Requested

3.      Pursuant to section 105(a) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), LBCS and LBHI request approval of the Stipulation and Agreement and

authorization to take all steps necessary to consummate the transactions set forth therein.

### Background

4.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of the Bankruptcy Code.  LBCS commenced its

chapter 11 case on October 3, 2008.  The Debtors' chapter 11 cases have been consolidated for

---

[1] The description and characterization in this Motion of (a) the events, facts and circumstances giving rise to the claims and disputes (and the settlement of certain of those claims and disputes) referenced herein and (b) the claims and disputes themselves, are for information purposes only, and are without prejudice to any claims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs, and causes of action of whatever nature of LBCS, LBHI, BNYM, Main Street, and their respective affiliates, which shall be governed solely by the terms of the Stipulation and Agreement.

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

5.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009, ECF No. 2583, the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court, ECF No. 7531.

8.      By order dated July 2, 2009, the Court established various deadlines for creditors to file proofs of claim and related documents against the Debtors, ECF No. 4271.

9.      On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, ECF No. 19628 (the "Plan"), and the Debtors' Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, ECF No. 19629 (the "Disclosure Statement").  The Court approved the Disclosure Statement and voting procedures with respect to the Plan later that day, ECF No.

19631 (the "Disclosure Statement Order").  On September 15, 2011, the Court entered an order

approving a modification to the Disclosure Statement, ECF No. 20016.

### Jurisdiction

10.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

11.    Prior to the events leading up to these chapter 11 cases, the Debtors,

together with their non-Debtor affiliates ("Lehman"), were the fourth largest investment bank in

the United States.  For more than 150 years, Lehman has been a leader in the global financial

markets by serving the financial needs of corporations, governmental units, institutional clients

and individuals worldwide.

12.    Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008, ECF No. 2, and the Disclosure Statement.

### The Gas Purchase Agreement

13.    Pursuant to the Gas Purchase Agreement, Main Street paid $681,643,656

to LBCS as a prepayment for the purchase of certain quantities of natural gas over a thirty year

period.   To finance the prepayment price, Main Street issued the Main Street Natural Gas, Inc.

Gas Project Revenue Bonds (the "Main Street Bonds") to investors pursuant to the Trust

Indenture, dated as of April 1, 2008 among Main Street and BNYM, as trustee (the "Indenture").

To hedge its exposure to movements in gas prices, Main Street entered into a swap agreement

with Calyon Bank, London Branch, pursuant to which Main Street was obligated to pay to

Calyon a specified amount based on the current spot rate of natural gas, and Calyon was

obligated to pay to Main Street a fixed amount, in each case based on the the quantity of natural

gas purchased by Main Street in the relevant period.  Main Street sold the natural gas it

purchased from LBCS to the City of Tallahassee, the Municipal Gas Authority of Georgia and

the Municipal Gas Authority of Georgia (Reedy Creek) (the "Customers") pursuant to separate

supply contracts with each customer.

14.     On September 17, 2008, LBCS ceased performing its obligations under

the Gas Purchase Agreement.   On September 22, 2011, Main Street delivered a Persistent

Delivery Default Notice and a Notice of Termination of Gas Purchase Agreement, both pursuant

to section 4.4 of the Gas Purchase Agreement, which provides that LBCS's failure to deliver gas

for five consecutive days constitutes a "Persistent Delivery Default."

15.     Section 4.4(b) of the Gas Purchase Agreement provides that: "In the event

of termination under this Section 4.4, Seller shall pay Purchaser an amount equal to, without

duplication, the Replacement Value of Gas not delivered prior to the Section 4.4 Termination

Date, plus the Reimbursement Amount, plus the Unearned Amount, in each case determined as

of the Section 4.4 Termination date."

16.     The Replacement Value of Gas is generally defined in the Gas Purchase

Agreement as the actual costs that Main Street or the Customers incurred to purchase substitute

gas.

17.     The Reimbursement Amount is defined in the Gas Purchase Agreement as

"an amount equal to the Redemption Price [of the Main Street Bonds], plus any termination

value of the Guaranteed Investment Contract owed by Purchaser, or minus any termination value

of the Guaranteed Investment Contract to the extent irrevocably paid to Purchaser, plus any net

amounts under Purchaser's Commodity Swap owed by Purchaser, or minus any net amounts

under Purchaser's Commodity Swap to the extent irrevocably paid to Purchaser, less the current

balances in the Debt Service Fund and the Operating Reserve Fund, and plus any incidental or

direct costs incurred by Purchaser as a result of termination of this [Gas Purchase Agreement]."

18.     Unearned Amount is defined in the Gas Purchase Agreement as "the

present value of the aggregate savings yet to be realized by Purchaser from delivery of Gas under

this [Gas Purchase Agreement], discounted to the date of termination of this [Gas Purchase

Agreement] at a fixed rate equal to the true interest cost on the Bonds."

19.     LBHI issued a Guarantee, dated as of April 1, 2008 (the "Guarantee"), for

the benefit of Main Street, of LBCS's obligations under the Gas Purchase Agreement.

### The Claims

20.     On September 22, 2009, BNYM filed, pursuant to the Bar Date Order, (i)

a proof of claim (Claim No. 30106) asserting a claim of at least $751 million in connection the

Gas Purchase Agreement (the "BNYM LBCS Proof of Claim"), and (ii) a proof of claim (Claim

No. 29890) asserting a claim of at least $751 million in connection with the Guarantee (the

"BNYM LBHI Proof of Claim," and, together with the BNYM LBCS Proof of Claim, the

"BNYM Proofs of Claim").  The BNYM Proofs of Claim assert that the Replacement Amount of

Gas is $1,032,958.59, the Reimbursement Amount is $709,060,000.00 (subject to adjustments in

accordance with the definition in the Gas Purchase Agreement) and the Unearned Amount is

$59,174,042.00, among other elements of the claims.

21.     On September 21, 2009, Main Street filed, pursuant to the Bar Date Order,

(i) a proof of claim (Claim No. 21164) asserting a claim of at least $751 million in connection

with the Gas Purchase Agreement (the "Main Street LBCS Proof of Claim"), and (ii) a proof of

claim (Claim No. 21257) asserting a claim of at least $751 million in connection with the
Guarantee (the "Main Street LBHI Proof of Claim," and, together with the Main Street LBCS
Proof of Claim, the "Main Street Proofs of Claim," and, collectively with the "BNYM Proofs of
Claim," the "Proofs of Claim").  The Main Street Claims are based on the same calculations as
the BNYM Claims and are duplicative of the BNYM Claims.

      22.      In connection with their attempt to reconcile the Proofs of Claim, the
Debtors requested, and BNYM provided, additional information regarding the claim amounts.
BNYM provided the Debtors with a supplement to their Proofs of Claim with detailed
calculations regarding each component of the asserted claim amount.

### The Dispute

      23.      The Debtors have engaged in extensive discussions and negotiations with
BNYM regarding the merits and validity of the Proofs of Claim.  As a result of such discussions,
the dispute between the Debtors and BNYM and Main Street over the asserted claim amount is
limited to certain components of the asserted claim.  The Debtors agree to a $674 million portion
of the claim which was based on the Replacement Value of Gas and a portion of the
Reimbursement Amount.

      24.      The dispute between the Debtors on one hand, and BNYM and Main
Street on the other hand, lies primarily in the interpretation of the definition of Unearned Amount
and the calculation thereof and the inclusion of accrued but unpaid interest in the Reimbursement
Amount.  The Debtors believe that the Unearned Amount should be less than the amount
asserted by BNYM and Main Street.  In addition, BNYM and Main Street asserted that the
Reimbursement Amount should include accrued but unpaid interest on the Main Street Bonds as
of the termination date of the Gas Purchase Agreement.  However, the Debtors dispute BNYM's

claim for accrued and unpaid interest as they believe the definition of Reimbursement Amount excludes prepetition interest.

25.       BNYM has also asserted that the BNYM LBHI Proof of Claim should be included in LBHI Class 5, as a Senior Third Party Guarantee Claim, as opposed to LBHI Class 9A, as a Third-Party Guarantee Claim Other Than Those of the Racers Trusts.  The BNYM LBHI Proof of Claim was included in LBHI Class 5 for the purposes of estimating recoveries in the Recovery Analysis included in the Disclosure Statement.  Claims designated as "senior" under the Plan are entitled to an enhanced distribution as compared to claims that are not "senior."  Claims are deemed to be "senior" under the Plan if they fall within the definitions of Senior Debt in the indentures for subordinated notes issued by LBHI.

## The Stipulation and Agreement[2]

26.       The Debtors and BNYM have spent a significant amount of time and effort discussing the terms of the Gas Purchase Agreement, the Indenture and related documents and the proper interpretations thereof.  To avoid protracted, costly, and uncertain litigation, the Debtors, BNYM and Main Street entered into the Stipulation and Agreement to resolve the disputes regarding the allowed amount of the Proofs of Claim.  The salient terms of the Stipulation and Agreement are as follows:

(a) ***The BNYM Claims.***  The BNYM LBCS Claim will be allowed for all purposes under the Plan in LBCS Class 4 (General Unsecured Claims, of third parties) in the amount of $722,000,000.  The BNYM LBHI Claim will be allowed for all purposes under the Plan in LBHI Class 9A (Third Party Guarantee Claims Other Than Those of the RACERS Trusts) in the amount of $722,000,000.

---

[2] This summary is qualified in its entirety by the terms and conditions of the Stipulation and Agreement.  The summary is intended to be used for informational purposes only and shall not in any way affect the meaning or interpretation of the Stipulation and Agreement.

(b) **_The Main Street Claims._**  Upon the effective date of the Stipulation and Agreement, the Main Street Claims will be deemed withdrawn.

(c) **_No Objection to Plan._**  BNYM, solely in its role as indenture trustee for the Main Street Bonds, and Main Street each agrees that it will not participate in the formulation of, file, prosecute, consent to or support any chapter 11 plan in the chapter 11 cases other than the Plan, or take any other action to alter, delay or impede the confirmation and consummation of the Plan.

(d) **_Debtors' Release of Reserve Funds._**  The Debtors agree that monies held by the Trustee in the Debt Service Fund, the Operating Reserve Fund, the General Fund or any of the other funds and accounts established by the Trustee or Main Street for the benefit of the bondholders or Main Street pursuant to Section 5.01 of the Indenture, are not property of the Debtors' estates, and the Debtors will relinquish any and all rights, if any, that they may have in these funds.

27.    BNYM is acting solely in its capacity as indenture trustee for the holders of the Main Street Bonds, and does not have an economic interest in the Main Street Bonds. BNYM has requested a finding by this Court that it has no liability in connection with the Stipulation and Agreement and holders of the Main Street Bonds be enjoined from asserting claims against BNYM arising from its negotiation of and entry into the Stipulation and Agreement.  Main Street assisted BNYM in providing more information for the settlement discussions and has agreed that it will withdraw its claims as a part of the settlement.  Main Street has similarly requested a finding that it has no liability from the negotiation and entry into the Stipulation and Agreement.  BNYM has informed the Debtors that it will serve a copy of this Motion and the Stipulation and Agreement on each holder of the Main Street Bonds.

**The Stipulation and Agreement is Fair and Equitable,
Falls Well Within the Range of Reasonableness, and Should Be Approved**

28.    Entry into the Stipulation and Agreement is in the best interests of the Lehman Parties and should be approved under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C.     § 105(a). Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *Fischer v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank and Trust Co. of Chicago* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

29.    The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a settlement and determine whether it "fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). A court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

30.    A court need not conduct a "mini-trial" of the merits of the claims being settled, *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993), or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "The bankruptcy judge does not have to decide the numerous questions of law and fact. . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

31.    A court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. at 522; *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does

not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for

reasonableness. . . If the Trustee chooses one of two reasonable choices, I must approve that

choice, even if, all things being equal, I would have selected the other.").

32.    The settlement and compromise set forth in the Stipulation and Agreement

satisfies the standard for approval.  LBCS and LBHI have determined that the Stipulation and

Agreement provides a fair and efficient resolution of their disputes with BNYM and Main Street

over the amount of the Proofs of Claim and avoids the expense and risk inherent in litigating

such claims.

33.    Because LBCS and LBHI recognize they may have substantial liabilities

arising out of the transactions with Main Street, the prospects of success with respect to

defending against the claims are uncertain, and in any event, will require costly and protracted

litigation with BNYM and Main Street requiring significant expenditures of both time and

resources by LBCS and LBHI and their professionals.  The amount of each claim allowed

pursuant to the Stipulation and Agreement is below the amount asserted by BNYM and Main

Street.  Based upon their analysis of the likelihood of success in litigation regarding the

interpretation of the Gas Purchase Agreement and the Indenture, LBCS and LBHI have

determined that the amounts of the claims allowed pursuant to the Stipulation and Agreement are

reasonable, particularly when considered in light of the other benefits of the Stipulation and

Agreement.

34.    The terms of the Stipulation and Agreement are the product of an

extended, good-faith, arms'-length negotiation process.  The Debtors, BNYM and Main Street

are each represented by competent counsel, and the Debtors and BNYM participated in

numerous meetings and negotiations.  The terms of the Stipulation and Agreement provide

mutually-acceptable benefits and burdens to the parties.

35.     The Debtors have kept counsel for the Creditors' Committee apprised of

their negotiations with BNYM and of the terms of the Stipulation and Agreement.  The

Creditors' Committee supports the agreement to allow the claims in the amounts set forth in the

Stipulation and Agreement.

### Notice

36.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion on (i) the U.S. Trustee for Region 2; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys

for BNYM; (vii) the attorneys for Main Street; and (viii) all other parties entitled to notice in

accordance with the procedures set forth in the second amended order entered on June 17, 2010

governing case management and administrative procedures for these cases, ECF No. 9635.

BNYM has informed the Debtors that it will provide notice of this Motion, along with a separate

notice prepared by BNYM, to the holders of the Main Street Bonds in a manner consistent with

the terms of the Indenture and Gas Purchase Agreement.  The Debtors submit that no other or

further notice need be provided.

37.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: November 14, 2011
         New York, New York


                              /s/ Stephen A. Youngman
                              Robert J. Lemons
                              Stephen A. Youngman

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone:  (212) 310-8000
                              Facsimile:  (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

**Exhibit A**

**(Stipulation and Agreement)**

EXECUTION COPY

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                               :

In re                                    :      **Chapter 11 Case No.**

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                                             :

                  **Debtors.**        :      **(Jointly Administered)**
                                             :

------------------------------------------------------------x

### STIPULATION AND AGREEMENT AMONG
### THE DEBTORS, THE BANK OF NEW YORK MELLON
### TRUST COMPANY, N.A., AND MAIN STREET NATURAL GAS, INC.

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        This Stipulation and Agreement (the "Stipulation and Agreement") is entered into by and among Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), The Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee for the Main Street Bonds (as defined below) ("BNYM"), and Main Street Natural Gas, Inc. ("Main Street"). The Debtors, BNYM, and Main Street shall each be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

        A.     WHEREAS, BNYM is the indenture trustee for the publicly issued $709,060,000 in aggregate principal amount of Main Street Natural Gas, Inc. Gas Project Revenue Bonds, Series 2008A (the "Main Street Bonds") issued by Main Street pursuant to the terms of a Trust Indenture, dated as of April 1, 2008, between Main Street and BNYM.

US_ACTIVE:\43848041\03\58399.0008

B.      WHEREAS, on September 15, 2008 and periodically thereafter, LBHI and

other Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>").

C.      WHEREAS, on July 2, 2009, this Court issued an *Order Pursuant to*

*Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the*

*Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and*

*Approving the Proof of Claim Form* [ECF No. 4271] (the "<u>Bar Date Order</u>").

D.      WHEREAS, on September 22, 2009, BNYM filed, pursuant to the Bar

Date Order, (i) a proof of claim, assigned claim number 30106 by the Debtors' claims agent, in

connection with that certain Agreement for Purchase and Sale of Natural Gas, dated as of April

1, 2008 (the "<u>Gas Purchase Agreement</u>"), between Lehman Brothers Commodity Services, Inc.

("<u>LBCS</u>") and Main Street (the "<u>BNYM LBCS Proof of Claim</u>"), and (ii) a proof of claim,

assigned claim number 29890 by the Debtors' claims agent, in connection with that certain

Guarantee of Lehman Brothers Holdings Inc., dated as of April 1, 2008 (the "<u>Guarantee</u>"), in

respect of LBCS's obligations under the Gas Purchase Agreement (the "<u>BNYM LBHI Proof of</u>

<u>Claim</u>," and, together with the BNYM LBCS Proof of Claim, the "<u>BNYM Proofs of Claim</u>").

E.      WHEREAS, on September 21, 2009, Main Street filed, pursuant to the

Bar Date Order, (i) a proof of claim, assigned claim number 21164 by the Debtors' claims agent,

in connection with the Gas Purchase Agreement (the "<u>Main Street LBCS Proof of Claim</u>"), and

(ii) a proof of claim, assigned claim number 21257 by the Debtors' claims agent, in connection

with the Guarantee (the "<u>Main Street LBHI Proof of Claim</u>," and, together with the Main Street

LBCS Proof of Claim, the "Main Street Proofs of Claim," and, collectively with the "BNYM Proofs of Claim," the "Proofs of Claim").[1]

F.        WHEREAS, the Debtors have informed BNYM and Main Street that they dispute the amounts set forth in the Proofs of Claim.

G.        WHEREAS, on August 31, 2011, the Debtors filed the Third Amended Chapter 11 Plan [ECF No. 19628] (the "Plan"), and related disclosure statement.

H.        WHEREAS, BNYM has informed the Debtors that it may have objections to confirmation of the Plan.

I.        WHEREAS, BNYM has consulted with holders of the Main Street Bonds that hold over 75.7% of the Main Street Bonds, each of whom has directed the Trustee to enter into this Stipulation and Agreement.

J.        WHEREAS, in light of the foregoing, the Parties have agreed on the terms set forth herein.

**IT IS HEREBY STIPULATED AND AGREED by and among the Debtors, BNYM, and Main Street through their undersigned attorneys, that:**

1.        This Stipulation and Agreement shall be effective immediately upon the approval of this Stipulation and Agreement by the Bankruptcy Court (the "Effective Date").

2.        The BNYM LBHI Claim shall be an Allowed (as defined in the Plan) guarantee claim for all purposes under the Plan in LBHI Class 9A (Third Party Guarantee Claims Other Than Those of the Racers Trusts) in the amount of $722,000,000.  The BNYM LBCS

---

[1] On September 16, 2011, the Debtors, BNYM and Main Street entered into an Stipulation and Agreement [ECF No. 20083] by which the parties agreed, among other things, that: (i) the holders of the Main Street Bonds would receive ballots directly from the Debtors for purposes of voting on the Plan and no ballots would be sent to BNYM or Main Street based on the Proofs of Claims; (ii) BNYM and Main Street would retain authority and standing to prosecute their respective Proofs of Claim, and the ability to exercise, for the benefit of any bond holders, rights either BNYM or Main Street may hold related thereto, including, without limitation, the establishment of any reserves under the Debtors' chapter 11 plan; and (iii) as between the proofs of claim filed by BNYM and Main Street only a single set of claims in connection with the Gas Purchase Agreement and the Guarantee would survive.

Claim shall be an Allowed claim for all purposes under the Plan in LBCS Class 4 (General

Unsecured Claims, of third parties) in the amount of $722,000,000.  These Allowed claims shall

not be subject to any further objection, reduction, recoupment, setoff, defense or counterclaim by

the Debtors or amendment by BNYM.  These claims shall be the only claims Allowed against

the Debtors based on the Gas Purchase Agreement and the related transactions.

3.      Upon the Effective Date of this Stipulation and Agreement, Epiq

Bankruptcy Solutions, the Court-appointed claim's agent (the "Claims Agent"), shall reflect the

terms of this agreement on the official claims register.

4.      BNYM, solely in its role as indenture trustee for the Main Street Bonds,

and Main Street each agrees that it will not participate in the formulation of, file, prosecute,

consent to or support any chapter 11 plan in the chapter 11 cases other than the Plan, or take any

other action to alter, delay or impede the confirmation and consummation of the Plan.

5.      The Debtors shall file a motion with the Bankruptcy Court in form and

substance reasonably acceptable to BNYM on or prior to November 15, 2011 seeking approval

of this Stipulation and Agreement pursuant to Bankruptcy Rule 9019 (the "Motion").  The

proposed order shall include the following language:

> ORDERED that, all holders of the Main Street Bonds are bound by, and
> are deemed to have consented to the settlement of the BNYM Proofs of
> Claims and each of the other terms and conditions of the Stipulation and
> Agreement; and it is further
>
> ORDERED that, the Court having found the compromises set forth in the
> Motion and the Stipulation and Agreement to be fair and reasonable, there
> is no bona fide basis for any claims or actions by any holder of the Main
> Street Bonds, in such capacity, against the Debtors, BNYM (as indenture
> trustee for the Main Street Bonds or in its individual capacity), Main
> Street, or any of their respective legal counsel and/or financial advisors in
> any way related to the matters that are the subject of the Motion, the
> Stipulation and Agreement, this Order, and the prosecution of the BNYM
> Proofs of Claim or the Main Street Proofs of Claim; *provided*, *however*,

that (i) nothing in this Order shall relieve Main Street from its obligations to perform under the Indenture, if any, or restrict the ability of the holders of Main Street Bonds or BNYM, as indenture trustee to enforce such obligations against Main Street, (ii) nothing in this Order shall relieve BNYM from its obligations to perform under the Indenture or restrict the ability of the holders of Main Street Bonds to enforce such obligations against BNYM, and (iii) nothing in this Order shall relieve any party from its respective obligations under the Stipulation and Agreement; and it is further

ORDERED that the Debtors, BNYM (as indenture trustee for the Main Street Bonds or in its individual capacity), Main Street and each of their respective legal counsel and/or financial advisors shall have no liability for any claims, demands, suits, actions or causes of action in any way related to the matters that are the subject of the Motion, the Stipulation and Agreement, this Order, and the prosecution of the BNYM Proofs of Claim or the Main Street Proofs of Claim; *provided*, *however*, that (i) nothing in this Order shall relieve Main Street from its obligations to perform under the Indenture, if any, or restrict the ability of the holders of Main Street Bonds or BNYM, as indenture trustee to enforce such obligations against Main Street, (ii) nothing in this Order shall relieve BNYM from its obligations to perform under the Indenture or restrict the ability of the holders of Main Street Bonds to enforce such obligations against BNYM, and (iii) nothing in this Order shall relieve any party from its respective obligations under the Stipulation and Agreement; and it is further

ORDERED that any holder of the Main Street Bonds, in such capacity, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims against BNYM, individually or as indenture trustee, Main Street or the Debtors that are in any way related to the matters that are the subject of the Motion, the Stipulation and Agreement, this Order, or the prosecution of the BNYM Proofs of Claim or the Main Street Proofs of Claim; *provided*, *however*, that (i) nothing in this Order shall relieve Main Street from its obligations to perform under the Indenture, if any, or restrict the ability of the holders of Main Street Bonds or BNYM, as indenture trustee to enforce such obligations against Main Street, (ii) nothing in this Order shall relieve BNYM from its obligations to perform under the Indenture or restrict the ability of the holders of Main Street Bonds to enforce such obligations against BNYM, and (iii) nothing in this Order shall relieve any party from its respective obligations under the Stipulation and Agreement; and it is further

6.      Monies held by BNYM in the Debt Service Fund, the Operating Reserve

Fund, the General Fund (as such terms are defined in the Gas Purchase Agreement) or any of the

other funds and accounts established by BNYM or Main Street for the benefit of the holders of

the Main Street Bonds or Main Street pursuant to Section 5.01 of the Indenture, are not property

of the Debtors' estates and are not subject to the automatic stay, and the Debtors hereby

relinquish any and all rights, if any, that they may have in these funds.

7.      Upon the Effective Date of this Stipulation and Agreement, the Main

Street Proofs of Claim shall be deemed withdrawn with prejudice and the Claims Agent shall be

authorized to reflect the withdrawal of such claims on the official register.

8.      BNYM represents and warrants to the Debtors that BNYM filed the

BNYM Proofs of Claim and has not sold, assigned or transferred the BNYM Proofs of Claim.

Main Street represents and warrants to the Debtors that Main Street filed the Main Street Proofs

of Claim and has not sold, assigned or transferred the Main Street Proofs of Claim.

9.      This Stipulation and Agreement may only be amended or otherwise

modified by a signed writing executed by the Parties.

10.     Each person who executes this Stipulation and Agreement by or on behalf

of a Party represents and warrants that he or she has been duly authorized and empowered to

execute and deliver this Stipulation and Agreement on behalf of such Party.

11.     This Stipulation and Agreement may be executed in counterparts, each of

which shall be deemed an original but all of which together shall constitute one and the same

instrument, and it shall constitute sufficient proof of this Stipulation and Agreement to present

any copy, copies, electronic copies, or facsimiles signed by the Parties.

12.     This Stipulation and Agreement shall be governed by, construed, and

enforced in accordance with the laws of the State of New York without giving effect to the

provisions, policies, or principles thereof relating to choice of law or conflict of laws.

13. Any disputes or controversies arising from this Stipulation and Agreement

shall be within the exclusive jurisdiction of the Court.


Dated: November 9, 2011
      New York, New York

                    /s/ Amy Caton
                    Gregory A. Horowitz
                    Amy Caton

                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
                    1177 Avenue of the Americas
                    New York, New York 10036
                    Telephone:  (212) 715-9100
                    Facsimile:  (212) 715-8000

                    Attorneys for The Bank of New York Mellon Trust
                    Company, N.A., as Indenture Trustee for the Main
                    Street Bonds

Dated: November 9, 2011
      Atlanta, Georgia

                    /s/ John. C. Weitnauer
                    John C. (Kit) Weitnauer

                    ALSTON & BIRD LLP
                    One Atlantic Center
                    1201 West Peachtree Street
                    Atlanta, Georgia 30309
                    Telephone:  (404) 881-7000
                    Facsimile:  (404) 881-7777

                    Attorneys for Main Street Natural Gas, Inc.


[SIGNATURE PAGE CONTINUED]

Dated: November 9, 2011
     New York, New York

                 /s/ Stephen A Youngman
                 Robert J. Lemons
                 Stephen A.Youngman

                 **WEIL, GOTSHAL & MANGES LLP**
                 767 Fifth Avenue
                 New York, New York 10153
                 Telephone:  (212) 310-8000
                 Facsimile:  (212) 310-8007

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                            :
In re                                       :          Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :          08-13555 (JMP)
                                            :
                        Debtors.            :          (Jointly Administered)
                                            :
-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 105(a) OF THE
### BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR
### APPROVAL OF A SETTLEMENT AND COMPROMISE WITH THE
### BANK OF NEW YORK TRUST COMPANY, N.A., AS INDENTURE TRUSTEE
### FOR THE MAIN STREET BONDS AND MAIN STREET NATURAL GAS, INC.

Upon the motion (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI"),

and Lehman Brothers Commodity Services Inc. ("LBCS" and together with LBHI and their

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession,

the "Debtors"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for approval of a Stipulation and Agreement[1] with The Bank of New York Trust Company, N.A.

("BNYM"), as indenture trustee and Main Street Natural Gas, Inc. ("Main Street"), as more fully

set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

--------------------------------------------

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the attorneys

for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) the attorneys for BNYM; (vii) the attorneys for Main Street and (viii)

all other parties entitled to notice in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures for these cases, ECF No. 9635; and the Court having found and determined that a

reasonable time to object or be heard regarding the relief set forth in the Stipulation and

Agreement has been afforded to all interested persons and entities (including the holders of the

Main Street Bonds), the notice provided to the holders of the Main Street Bonds, as set forth in

the Motion, is proper and sufficient, and that the relief sought in the Motion is in the best

interests of the Debtors and their creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

  ORDERED that the Motion is granted; and it is further

  ORDERED that, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Stipulation and Agreement is approved, and LBHI and LBCS are each duly

authorized to (i) consummate all of the transactions contemplated thereby and (ii) execute and

deliver such documents and instruments and to take such other actions as may be reasonably

necessary to consummate the transactions contemplated by the Stipulation and Agreement; and it

is further

ORDERED that upon, and subject to, the terms and conditions set forth in the

Stipulation and Agreement, the Debtors' Court-appointed claims agent is authorized to modify

the claims register to reflect the terms thereof; and it is further

ORDERED that, all holders of the Main Street Bonds are bound by, and are

deemed to have consented to the settlement of the BNYM Proofs of Claims and each of the other

terms and conditions of the Stipulation and Agreement; and it is further

ORDERED that, the Court having found the compromises set forth in the Motion

and the Stipulation and Agreement to be fair and reasonable, there is no bona fide basis for any

claims or actions by any holder of the Main Street Bonds, in such capacity, against the Debtors,

BNYM (as indenture trustee for the Main Street Bonds or in its individual capacity), Main Street,

or any of their respective legal counsel and/or financial advisors in any way related to the matters

that are the subject of the Motion, the Stipulation and Agreement, this Order, and the prosecution

of the BNYM Proofs of Claim or the Main Street Proofs of Claim; provided, however, that (i)

nothing in this Order shall relieve Main Street from its obligations to perform under the

Indenture, if any, or restrict the ability of the holders of Main Street Bonds or BNYM, as

indenture trustee to enforce such obligations against Main Street, (ii) nothing in this Order shall

relieve BNYM from its obligations to perform under the Indenture or restrict the ability of the

holders of Main Street Bonds to enforce such obligations against BNYM, and (iii) nothing in this

Order shall relieve any party from its respective obligations under the Stipulation and

Agreement; and it is further

ORDERED that the Debtors, BNYM (as indenture trustee for the Main Street

Bonds or in its individual capacity), Main Street and each of their respective legal counsel and/or

financial advisors shall have no liability for any claims, demands, suits, actions or causes of

action in any way related to the matters that are the subject of the Motion, the Stipulation and

Agreement, this Order, and the prosecution of the BNYM Proofs of Claim or the Main Street

Proofs of Claim; provided, however, that (i) nothing in this Order shall relieve Main Street from

its obligations to perform under the Indenture, if any, or restrict the ability of the holders of Main

Street Bonds or BNYM, as indenture trustee to enforce such obligations against Main Street, (ii)

nothing in this Order shall relieve BNYM from its obligations to perform under the Indenture or

restrict the ability of the holders of Main Street Bonds to enforce such obligations against

BNYM, and (iii) nothing in this Order shall relieve any party from its respective obligations

under the Stipulation and Agreement; and it is further

       ORDERED that any holder of the Main Street Bonds, in such capacity, shall be

forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise

pursuing claims against BNYM, individually or as indenture trustee, Main Street or the Debtors

that are in any way related to the matters that are the subject of the Motion, the Stipulation and

Agreement, this Order, or the prosecution of the BNYM Proofs of Claim or the Main Street

Proofs of Claim; provided, however, that (i) nothing in this Order shall relieve Main Street from

its obligations to perform under the Indenture, if any, or restrict the ability of the holders of Main

Street Bonds or BNYM, as indenture trustee to enforce such obligations against Main Street, (ii)

nothing in this Order shall relieve BNYM from its obligations to perform under the Indenture or

restrict the ability of the holders of Main Street Bonds to enforce such obligations against

BNYM, and (iii) nothing in this Order shall relieve any party from its respective obligations

under the Stipulation and Agreement; and it is further

       ORDERED that the Stipulation and Agreement and any related agreements,

documents or other instruments may be modified, amended or supplemented by the parties

thereto, in a writing signed by such parties, and in accordance with the terms thereof, without

further order of the Court, *provided* that any such modification, amendment or supplement does

not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that the Bankruptcy Court retains jurisdiction to enforce the

Stipulation and Agreement, this Order and any disputes arising thereunder.

Dated: _____, 2011
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE