QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- x
In re:                                      :    Chapter 11 Case
                                            :
LEHMAN BROTHERS HOLDINGS INC.,              :    No. 08-13555 (JMP)
et al.                                      :
                                            :    Jointly Administered
                         Debtors.           :
-------------------------------------------------------- x
```

## SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. |
| **Date of Retention** | October 21, 2008, (nunc pro tunc to September 15, 2008) |
| **Compensation Period** | June 1, 2011 – September 30, 2011 |
| **Fees Incurred for Counsel** | $6,632,263.50 |
| **Expenses Incurred** | $398,662.27 |
| **Prior Interim Applications Filed** | This is the Ninth Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $463.23 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $500.20 |

## Schedule 1

## Hours, Rate and Fees for Services Rendered during the Ninth Interim Fee Period.

| Timekeeper | Title | Rate June - August | Rate - September | TOTAL HOURS | TOTAL FEES |
|---|---|---|---|---|---|
| John B. Quinn | Partner | $995.00 | * | 2.50 | $2,487.50 |
| Daniel P. Cunningham | Partner | $995.00 | $1,035.00 | 126.50 | $126,155.50 |
| Andrew J. Rossman | Partner | $885.00 | $920.00 | 367.30 | $327,755.50 |
| James C. Tecce | Partner | $850.00 | $865.00 | 589.90 | $503,033.50 |
| Eric D. Winston | Partner | $825.00 | $860.00 | 127.60 | $107,139.00 |
| Andrew Fulton | Associate | $810.00 | $720.00 | 2.30 | $1,746.00 |
| Erica Taggart | Partner | $750.00 | $780.00 | 757.00 | $572,697.00 |
| Scott C. Shelley | Counsel | $700.00 | * | 0.70 | $490.00 |
| Eric M. Kay | Counsel | $700.00 | $805.00 | 278.00 | $204,627.50 |
| Kristin Madigan | Associate | $595.00 | $650.00 | 282.30 | $168,980.50 |
| Christopher D. Kercher | Associate | $595.00 | $650.00 | 835.90 | $506,441.00 |
| Robert K. Dakis | Associate | $595.00 | $650.00 | 194.90 | $118,528.50 |
| Tyler G. Whitmer | Associate | $535.00 | $590.00 | 841.40 | $460,010.50 |
| Leah M. Ray | Associate | $535.00 | * | 180.00 | $96,300.00 |
| Tigran Vardanian | Associate | $535.00 | * | 220.20 | $117,807.00 |
| Marc A. Palladino | Associate | $535.00 | $590.00 | 70.00 | $38,115.50 |
| Matthew R. Scheck | Associate | $495.00 | $555.00 | 609.30 | $310,345.50 |
| James Shaerf | Associate | $495.00 | $555.00 | 8.60 | $4,395.00 |
| Olga M. Urbieta | Associate | $460.00 | $515.00 | 462.40 | $218,523.00 |
| Christine D. Ely | Associate | $460.00 | $515.00 | 175.40 | $89,693.00 |
| Kate Lydon | Associate | $320.00/ $400.00 | $445.00 | 801.90 | $314,786.50 |
| Patrick T. Schmidt | Associate | $400.00 | $445.00 | 25.70 | $10,433.00 |
| Aileen Kim | Attorney | $460.00 | * | 52.00 | $23,920.00 |
| Ben Odell | Associate | $400.00 | $445.00 | 847.50 | $346,668.00 |
| Cash Rowden | Attorney | $320.00 | $320.00 | 688.00 | $220,160.00 |
| Irene Tokar | Attorney | $320.00 | $320.00 | 347.90 | $111,328.00 |
| Stephanie McCarthy | Attorney | $320.00 | $320.00 | 247.10 | $79,072.00 |
| Lauren Rosenthal | Attorney | $320.00 | $320.00 | 112.40 | $35,968.00 |
| Stephen Chiu | Attorney | $320.00 | $320.00 | 395.70 | $126,624.00 |
| Heather Nolan | Attorney | $320.00 | $320.00 | 369.50 | $118,240.00 |
| Kathleen Fay | Attorney | $320.00 | $320.00 | 538.80 | $172,416.00 |
| Haley Siman | Attorney | $320.00 | $320.00 | 269.20 | $86,144.00 |
| Christopher Clark | Attorney | $320.00 | $320.00 | 431.60 | $138,112.00 |

* Timekeeper did not bill any hours in the month of September 2011.

| Name | Role | Rate 1 | Rate 2 | Hours | Amount |
|---|---|---|---|---|---|
| SoYun Roe | Attorney | $320.00 | $320.00 | 705.40 | $225,728.00 |
| Lauren Hilemann | Law Clerk | $320.00 | * | 28.80 | $9,216.00 |
| Nicholas Hoy | Law Clerk | $320.00 | * | 150.80 | $48,256.00 |
| Roy Nelson | Managing Clerk | $305.00 | $315.00 | 27.40 | $8,380.00 |
| Joan Collopy | Paralegal | $270.00 | $280.00 | 727.30 | $198,094.00 |
| Kristina Grosso | Paralegal | $270.00 | $280.00 | 11.50 | $3,120.00 |
| Cheyoon Im | Paralegal | $270.00 | $280.00 | 675.70 | $183,982.00 |
| Lindsey Kelleher | Paralegal | $270.00 | $280.00 | 653.80 | $178,156.00 |
| Ian Ibarra | Paralegal | $270.00 | * | 53.70 | $14,499.00 |
| Sabrina Hasan | Paralegal | $270.00 | * | 1.50 | $405.00 |
| Raul Vasquez | Lit Support | $150.00 | * | 7.10 | $1,065.00 |
| Linda Jovel | Lit Support | $150.00 | * | 0.60 | $90.00 |
| Boris Sobrevilla | Lit Support | $150.00 | $150.00 | 3.30 | $495.00 |
| Jonathan Espinosa | Lit Support | $150.00 | $150.00 | 10.20 | $1,530.00 |
| Konstantin Dementiev | Lit Support | $150.00 | $150.00 | 0.70 | $105.00 |
| **TOTAL** | | | | 14,317.30 | $6,632,263.50 |

* Timekeeper did not bill any hours in the month of September 2011.

**Schedule 2**

**Hours and Fees for the Ninth Interim Compensation Period As Rendered By Category**

| TASK SUMMARY | TOTAL HOURS | TOTAL FEES |
|---|---|---|
| 0100   General Case Administration | 47.90 | $15,406.00 |
| 0400   Hearings and Court Communications | 11.20 | $8,417.00 |
| 0500   Non-Working Travel | 480.20 | $267,248.50 |
| 0800   Unsecured Creditors Issues/Meetings/Communication | 82.70 | $65,347.00 |
| 2000   Other General Business Operation Issues | 1.20 | $1,020.00 |
| 2500   Derivatives/SWAP Agreement Issues | 502.40 | $365,485.00 |
| 3500 Plan of Reorganization/Plan Confirmation | 0.60 | $192.00 |
| 3700 Non-Derivative Claims Reconciliation | 2.50 | $2,125.00 |
| 3900   Non-Derivative Adversary Proceedings | 12,640.90 | $5,687,501.50 |
| 4600   Firm's Own Billing/Fee Applications | 546.40 | $218,400.00 |
| 4700 Firm's Own Retention Issues | 1.30 | $1,121.50 |
| TOTAL | 14,317.30 | $6,632,263.50 |

1

## Schedule 3

| Description | Total |
|---|---|
| Air travel | $67,671.61 |
| Attorney service (process servers for subpoenas) | $39,631.25 |
| Color Printing | $1,712.00 |
| Conference Fee | $958.87 |
| Digital Prints (blowbacks and slipsheets) | $17,754.52 |
| Document Reproduction | $41,141.95 |
| Express Mail | $12,317.79 |
| Filing Fee | $765.00 |
| Hosting per GB | $24,477.74 |
| Hotel | $60,736.20 |
| iConnect Licensing Fees | $2,137.74 |
| Local Meals | $11,731.04 |
| Local Travel | $13,763.28 |
| Meals During Travel | $6,918.22 |
| Media Create/Dup (CDs & DVDs) | $816.00 |
| Messenger | $680.04 |
| Off-site Document Services | $61,228.40 |
| Online Research | $20,905.59 |
| Other Lit Support Services (including outside labor charges) | $4,222.24 |
| Outside Velobind | $9.00 |
| PACER Charges | $328.32 |
| Paralegal Overtime | $6,309.12 |
| Parking | 4407.50 |
| Postal | $43.59 |
| Professional Services (document delivery and pick-up services) | $103.50 |
| Publication (purchase of research materials) | $23.98 |
| Scanning | $77.20 |
| Telecopier | $46.80 |
| Telephone | $128.13 |
| Travel – Baggage Fee | $25.00 |
| Travel Internet | $1,590.65 |
| **Total** | **$398,662.27** |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official
Committee Of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
In re:                              :    Chapter 11 Case
                                    :
LEHMAN BROTHERS HOLDINGS INC.,      :    No. 08-13555 (JMP)
et al.                              :
                                    :    Jointly Administered
                        Debtors.    :
--------------------------------------------------------- x

**NINTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART
& SULLIVAN, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING
THE PERIOD JUNE 1, 2011 THROUGH SEPTEMBER 30, 2011**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. (the

"Committee"), by this application (the "Application"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated April 14, 2011, (as amended, the "Compensation Order"), for allowance of

interim compensation for professional services rendered in the amount of $6,632,263.50 and

1

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the

amount of $398,662.27, during the period beginning June 1, 2011 through and including

September 30, 2011 (the "Fee Period" or the "Ninth Interim Compensation Period"), and, in

support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    As special counsel to the Committee, Quinn Emanuel is devoted to

substantially advancing the rights of all unsecured creditors.  Quinn Emanuel is responsible for,

among other things, investigating and prosecuting claims and causes of action against major

financial institutions from which the Committee's main counsel, Milbank Tweed, is conflicted.

Such financial institutions were parties to complex transactions with Lehman, and include

JPMorgan Chase Bank, N.A. ("JPMC"), Barclays Capital, Inc. ("Barclays"), and Bank of

America, N.A. ("BofA").  Additionally, Quinn Emanuel reviews the claims of these financial

institutions and is responsible for matters filed by these, and all other entities where the

Committee's lead counsel is conflicted.

2.    Quinn Emanuel is also involved with the comprehensive derivatives

alternative dispute resolution process.  Throughout this Fee Period, Quinn Emanuel attorneys

spent a significant amount of time investigating claims, prosecuting estate causes of action,

drafting hundreds of pages of briefs and memoranda, and participating in numerous derivatives-

related meetings and mediations.

3.    JPMC Litigation.  During this Fee Period, Quinn Emanuel devoted

significant resources to prosecuting considerable causes of action against JPMC seeking the

recovery of billions of assets the estates maintain were transferred fraudulently.  Pursuant to a

litigation protocol among the Debtors and the Committee, Quinn Emanuel plays a lead role in

prosecuting this action.  During this Fee Period, Quinn Emanuel attorneys devoted substantial

time to prosecuting plaintiffs' claims against JPMC and defending against counterclaims asserted

by JPMC.  In particular, Quinn Emanuel attorneys were involved in continuing document

discovery in connection with the adversary proceeding with JPMC.  Quinn Emanuel attorneys

also prepared for and took fifty-three (53) depositions of current and former JPMC and third party

witnesses and coordinated and supported Curtis in taking and/or defending an additional thirty

(30) depositions of former Lehman employees and other third party witnesses.

4.      Quinn Emanuel attorneys have also been engaged in substantial pre-

trial motion practice.  During this Fee Period, Quinn Emanuel attorneys drafted reply papers in

further support of the plaintiffs' motion to dismiss JPMC's amended counterclaims.  Significant

time was also devoted to preparing and filing an objection to portions of JPMC's proofs of claims

related to triparty repo financing and pursuing related discovery.  Finally, Quinn Emanuel

attorneys worked closely with Curtis to prepare extensive briefing on the Supreme Court's

decision in *Stern v. Marshall*.

5.      In addition to the substantial document and deposition discovery

undertaken by Quinn Emanuel during the Fee Period, Quinn Emanuel attorneys also spent

significant time working with expert witnesses, and on analyzing the key issues in the litigation.

6.      Besides its work on the adversary proceeding with JPMC, Quinn

Emanuel continued during the Fee Period to work with co-counsel, the estate and the estate's

financial advisor to research and review JPMC's filed claims against the estate as part of the

claim review and reconciliation process.  In particular, Quinn Emanuel attorneys researched,

drafted, and filed a deficiency objection on behalf of the plaintiffs on August 31, 2011.

7.      BofA Litigation.  During this Fee Period, Quinn Emanuel attorneys

dedicated resources to the BofA appeal from the Bankruptcy Court's November 2010 decision

directing BofA to return more than $500 million to the Lehman Brothers Holdings, Inc. ("LBHI")

3

estate.  This included reviewing BofA's appeal brief and researching and drafting a brief in

response.  At the same time, Quinn Emanuel attorneys also spent time reviewing a potential

settlement with BofA and the Debtors.  BofA and LBHI ultimately came to a settlement

agreement to which the Committee did not object, and a stipulation of dismissal of appeal was

filed on November 16, 2011.

8.          <u>Derivative Transactions</u>.  Quinn Emanuel attorneys devoted

significant time to reviewing numerous derivatives transactions to which the Debtors were parties.

Quinn Emanuel attorneys dedicated time to diligencing certain of these transactions to ensure that

the value for unsecured creditors has been maximized.  Additionally, Quinn Emanuel attorneys

prepared for and attended numerous derivatives mediations on behalf of the Committee.  As a

direct result of the contributions of Quinn Emanuel, the Committee, and the Debtors' other

professionals, the estates obtained significant judgments and have preserved and significantly

enhanced the value of estate assets.

9.          Lastly, on matters where Quinn Emanuel represents the Committee

and where the estates are also a party, Quinn Emanuel makes every effort to coordinate its efforts

with estate counsel and avoid unnecessary duplication.  The fees and expenses charged by Quinn

Emanuel were reasonable, necessary and beneficial to these estates.

## II.     <u>JURISDICTION AND VENUE</u>

10.          This Court has jurisdiction to hear and determine the Application

pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of

the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the

Local Guidelines is attached hereto as Exhibit A.

### III.    GENERAL BACKGROUND

11.    On September 15, 2008, and periodically thereafter (the "Petition

Date"), LBHI, and certain of its subsidiaries and affiliated entities (collectively, the "Debtors")

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors

are operating their business and managing their properties as debtors in possession.

12.    On September 17, 2008, the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

13.    On January 16, 2009, the Court entered an Order directing the

appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2).  By order dated July

13, 2010, the Examiner was discharged of its duties to investigate, inter alia, various transfers and

transactions involving the Debtors and their affiliates as well as the events immediately preceding

the commencement of the Chapter 11 Cases.

14.    On September 1, 2011, the Debtors filed a third amended joint

chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [Nos. 19627

and 19629].  On September 1, 2011, the Bankruptcy Court entered an amended order [No. 19631]

approving the Disclosure Statement, establishing solicitation and voting procedures in connection

with the Plan, scheduling the confirmation hearing and establishing notice and objection

procedures for the confirmation hearing.  On September 15, 2011, the Bankruptcy Court entered

an order [No. 20016] approving a modification to the Disclosure Statement.  On December 6,

2011, the Bankruptcy Court entered an order confirming the Plan [No. 23023].

## IV.    RETENTION OF QUINN EMANUEL

15.    On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, Nunc Pro Tunc to September 17, 2008 (the "Retention Application").

16.    On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. et al., Nunc Pro Tunc to September 17, 2008 (the "Retention Order").  A true and correct copy of the Retention Order is attached hereto as Exhibit B.

17.    On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "Compensation Motion").

18.    The Compensation Order establishes a procedure for, inter alia, the payment of interim fees and expenses to professionals employed by the Committee on a monthly basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is attached as Exhibit C.

---

[1]    Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

6

## V.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

19.    Quinn Emanuel submitted its first quarterly fee application on April 10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing September 15, 2008 through January 31, 2009.

20.    Quinn Emanuel submitted its second quarterly fee application on August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period commencing February 1, 2009 through May 31, 2009.

21.    Quinn Emanuel submitted its third quarterly fee application on December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period commencing June 1, 2009 through September 30, 2009.

22.    Quinn Emanuel submitted its fourth quarterly fee application on April 16, 2010 requesting $2,829,628.18 in fees and $191,748.74 in expenses for the period commencing October 1, 2009 through January 31, 2010.

23.    Quinn Emanuel submitted its fifth quarterly fee application on August 16, 2010 requesting $3,480,537.09 in fees and $281,095.21 in expenses for the period commencing February 1, 2010 through May 31, 2010.

24.    Quinn Emanuel submitted its sixth quarterly fee application on December 16, 2010 requesting $3,187,890.63 in fees and $259,395.28 in expenses for the period commencing June 1, 2010 through September 30, 2010.

25.    Quinn Emanuel submitted its seventh quarterly fee application on June 2, 2011 requesting $4,835,788.00 in fees and $155,800.04 in expenses for the period commencing October 1, 2010 through January 31, 2011.

26.        Quinn Emanuel submitted its eighth quarterly fee application on August 15, 2011 requesting $5,557,558.50 in fees and $194,469.22 in expenses for the period commencing February 1, 2011 through May 31, 2011.  A chart summarizing the amounts requested and approved in Quinn Emanuel's prior fee applications is attached hereto as Exhibit G

27.        This Application is Quinn Emanuel's ninth quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from June 1, 2011 through September 30, 2011.

28.        This Application requests that the Court (a) approve interim fees in the total amount of $6,632,263.50 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $398,662.27 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

29.        During the Fee Period, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements").  Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $5,305,810.80 (representing 80% of the $6,632,263.50 in fees billed by Quinn Emanuel from June 1, 2011 through September 30, 2011) and expenses incurred in the total amount of $398,662.27 (100% of the expenses billed by Quinn Emanuel from June 1, 2011 through September 30, 2011).  For the period commencing on June 1, 2011 through June 30, 2011, Quinn Emanuel requested payment of $1,427,777.60 in fees (representing 80% of the $1,784,722.00 in fees for that period) and $99,655.12 in expenses. For the period commencing on July 1, 2011 through July 31, 2011, Quinn Emanuel requested

8

payment of $1,273,894.80 in fees (representing 80% of the $1,592,368.50 fees for that period) and $102,369.98 in expenses.  For the period commencing on August 1, 2011 through August 31, 2011, Quinn Emanuel requested payment of $1,370,131.20 in fees (representing 80% of the $1,712,664.00 in fees for that period) and $102,741.78 in expenses.  For the period commencing on September 1, 2011 through September 30, 2011, Quinn Emanuel requested payment of $1,234,007.20 in fees (representing 80% of the $1,542,509.00 in fees for that period) and $93,895.39 in expenses.[2]

30.          The fees and expenses requested are reasonable, and all amounts requested were for actual and necessary services rendered on behalf of the Committee.

31.          Quinn Emanuel has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.  No promises have been received by Quinn Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## VI.        SUMMARY OF PROFESSIONAL SERVICES RENDERED

32.          Pursuant to the guidelines promulgated by the United States Trustee, Quinn Emanuel classified all services performed for which compensation is sought into separate categories.  Quinn Emanuel attempted to place the services performed in the category that best relates to the services provided.  However, because certain services may relate to one or more categories, services pertaining to one category may be included in another category.  Schedule 1, attached hereto, lists each timekeeper, his or her respective billing rate, professional information, and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the

---

[2]          Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
(footnote continued)

professional and paraprofessional time expended by project category.  Timekeeping entries and

Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these

categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an

hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description

of services performed by each attorney and paraprofessional on behalf of the Committee.[3]

33.     The following summary is intended only to highlight key services

rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has

expended a considerable number of hours on behalf of the Committee, and is not meant to be a

detailed description of all of the work performed.

## A.     General Case Administration (Hours: 47.90; Fees: $15,406.00)

34.     Quinn Emanuel serves as special counsel to the Committee in respect

of numerous matters, including various estate litigations against major financial institutions.  As

special counsel, Quinn Emanuel also represents the Committee on matters where its main

counsel, Milbank Tweed, is conflicted.  To that end, its attorneys must keep abreast of the

various pleadings filed in the Chapter 11 Cases and in various adversary proceedings.

Accordingly, during this Fee Period, a Quinn Emanuel staff attorney spent time reviewing

pleadings filed each day in the Lehman cases and various adversary proceedings.  In order to

create cost savings to the estate, Quinn Emanuel has arranged for a specially trained staff

attorney (who bills at a rate lower than a first year associate) to conduct a review and assessment

of newly filed pleadings (including, without limitation, whether the pleadings raise issues of

concern to the Committee, or were filed in proceedings where the Committee is a party).  These

---

statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

charges are part of Quinn Emanuel's efforts to prosecute estate claims, are integral to the litigation effort, and are an important part of its role as special counsel to the Committee.

### B.    Hearings and Court Communications (Hours: 11.20; Fees: $8,417.00)

35.    Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus hearings where matters being handled by Quinn Emanuel were being presented for consideration, and specially scheduled hearings with respect to adversary proceedings where it represents the Committee.  To prepare for these hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing documents, including correspondence and pleadings, and conducting independent legal and factual research.

### C.    Non-Derivative Adversary Proceedings (Hours: 12,640.90; Fees: $5,687,501.50)

36.    Time billed to this category generally relates to litigation that Quinn Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors. Consistent with Quinn Emanuel's role as special counsel to the Committee, the majority of the services Quinn Emanuel provides relate to litigation.  For that reason, most of the time in Quinn Emanuel's application falls into this category.

37.    JPMorgan Litigation.  On December 2, 2009, the Committee and LBHI ("Plaintiffs") co-signed a memorandum (the "Protocol") governing, among other things, the joint prosecution of claims against JPMC.  The Protocol provides that the Committee, through its counsel Quinn Emanuel, will play a significant role in any litigation involving the prosecution of

---

3    Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

these claims.  Pursuant to the terms of the Protocol, Quinn Emanuel worked with LBHI's counsel,

Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), to develop potential claims against JPMC,

conduct the legal and fact research required effectively to plead those claims, and draft an

adversary complaint.

        38.      On May 26, 2010, LBHI and the Committee filed an adversary

complaint against JPMC (as amended, the "JPMC Complaint").  The JPMC Complaint seeks the

return of billions of dollars in value to the LBHI estate by invalidating certain guaranties and

security agreements entered into in the weeks before LBHI filed for bankruptcy relief.

        39.      During this Fee Period, Quinn Emanuel attorneys devoted substantial

time to prosecuting Plaintiffs' claims against JPMC and defending against counterclaims asserted

by JPMC.  In particular, Quinn Emanuel attorneys were involved in (i) continuing document

discovery in connection with the adversary proceeding with JPMC, (ii) preparing for and taking

fifty-three (53) depositions of current and former JPMC and third party witnesses and

coordinating and supporting Curtis in taking and/or defending an additional thirty (30)

depositions of former Lehman employees and other third party witnesses, (iii) preparing reply

papers in further support of Plaintiffs' motion to dismiss JPMC's amended counterclaims, (iv)

working with retained non-testifying experts to analyze issues central to the litigation with JPMC

and identifying and retaining additional non-testifying experts, (v) preparing and filing an

objection to portions of JPMC's proofs of claims related to triparty repo financing (the

"Deficiency Objection") and pursuing related discovery, (vi) working with Curtis to prepare

extensive briefing before this Court on the application of the Supreme Court's decision in *Stern v.*

*Marshall*, and (vii) resolving discovery disputes, including with JPMC and Barclays.

40.        *Continued Document Discovery*.  During this Fee Period, Quinn Emanuel attorneys continued to spend significant amounts of time meeting and conferring with counsel for both JPMC and for third parties that received document subpoenas, working toward agreements on the scope and extent of document discovery.  Document production in response to subpoenas and from JPMC continued during this Fee Period.

41.        Quinn Emanuel continued during the Fee Period to coordinate and direct a group team of contract attorneys billed directly to the estate through Alvarez & Marsal ("A&M").  Quinn Emanuel staff attorneys and associates managed the day-to-day workings of the review team and provided substantive guidance as the review team supported Quinn Emanuel attorneys working on fact development and deposition preparation.  During this Fee Period, under the management and guidance of Quinn Emanuel attorneys, the remaining members of the review team reviewed and coded documents on a digital document management platform as new productions came in from JPMC and third parties.  Because the bulk of this primary review was completed in the last Fee Period, however, the review team's focus shifted primarily to reviewing and coding documents to assist Quinn Emanuel associates and partners in preparing for depositions.

42.        Quinn Emanuel attorneys continued to spend time updating document chronologies and factual analyses of key issues in the litigation with JPMC.  Combining these chronologies and analyses with legal research on such key issues, the attorneys updated the detailed memoranda analyzing documents and witness testimony in the context of the overall legal and factual theories of these cases.  Quinn Emanuel and Curtis have used these memoranda (or "modules") to prepare for depositions and will continue to use them for litigation at trial of the substance of Plaintiffs' claims and JPMC's counterclaims.

43.        *Continued Deposition Discovery*.  Quinn Emanuel has taken the lead in deposition discovery with respect to current and former JPMC witnesses and the bulk of third party witnesses and government entity witnesses.  Curtis, on behalf of the estate, has focused on former Lehman employees and the remaining third parties.  During the Fee Period, Quinn Emanuel continued to issue and serve deposition subpoenas to third parties, including both government entities and third-party financial institutions.  Quinn Emanuel attorneys then engaged in meet and confer discussions with subpoena recipients to schedule depositions and resolve any disputes, including preparing materials required by regulation prior to the depositions of certain employees of the federal government.  Quinn Emanuel also continued throughout the Fee Period to negotiate with JPMC regarding witness identification and deposition scheduling.

44.        During this Fee Period, Quinn Emanuel attorneys took the depositions of thirty-two (32) JPMC witnesses, including both present and former employees. These witnesses included, by way of example, (i) the JPMC employee responsible for coordinating the liquidation of Lehman collateral following the bankruptcy, (ii) several senior lawyers in the JPMC legal department, including the attorneys responsible for overseeing the negotiation and drafting of the guaranties and security agreements at issue in the litigation, (iii) senior JPMC executives involved in the decision to demand additional collateral from Lehman prior to the bankruptcy, (iv) JPMC professionals involved in both triparty and derivatives transactions between JPMC and Lehman at issue in the litigation, and (v) JPMC employees identified by the Court-appointed Examiner as central to the JPMC/Lehman relationship.

45.        Quinn Emanuel attorneys also took the lead for Plaintiffs for the depositions of twenty-one (21) third party witnesses.  These witnesses included, by way of example, (i) Barclays employees involved in the acquisition by Barclays of certain assets of Lehman Brothers Inc. and both the pre- and post-bankruptcy negotiations leading to that

14

acquisition, (ii) derivatives professionals from key Lehman derivatives counterparties, (iii) senior

executives from Bank of America and Merrill Lynch with information regarding Lehman's pre-

bankruptcy financial condition, (iv) employees of the Federal Reserve Bank of New York and the

Federal Reserve Board of Governors involved in the events surrounding the bankruptcy and

JPMC's relationship with Lehman, and (v) a key employee of the outside vendor employed by

JPMC to value Lehman collateral held by JPMC.

46.        To prepare for each deposition, Quinn Emanuel leveraged the

document review team to identify relevant documents, which were then passed to an associate or

staff attorney.  The associate or staff attorney further analyzed the documents to prepare an

appropriate set of documents for potential use with the witness at deposition and prepared a bio

and smaller set of documents to share with Curtis and the estate to aid in coordination.  The

partner or associate taking the deposition used the resulting binder of documents to create the

outline or notes for use during the deposition.

47.        In addition to the depositions it led, Quinn Emanuel attorneys worked

with Curtis to identify issues and documents central to the thirty (30) depositions that Curtis took

the lead on during the Fee Period, including former senior Lehman executives and individuals

representing Lehman repo counterparties.

48.        *Case Development: Experts*.  In addition to the substantial document

and deposition discovery undertaken by Quinn Emanuel during the Fee Period, Quinn Emanuel

attorneys also spent significant time working with expert witnesses, including identifying and

engaging appropriate non-testifying experts and working on expert analysis of the key issues in

the litigation.  In all areas of Plaintiffs' work with non-testifying experts, Quinn Emanuel

attorneys have taken the lead, but worked in concert with Curtis, A&M and the estate to ensure

that pre-existing estate and A&M resources are leveraged appropriately to assist and support the

work of experts retained specifically for the JPMC adversary proceeding and analysis of JPMC's claims against the LBHI estate.

49.         During the Fee Period, Quinn Emanuel attorneys leveraged the expertise of Plaintiffs' retained non-testifying experts to focus deposition preparation and began the process of working with the non-testifying experts to prepare materials to be incorporated into expert reports.

50.         *Briefing: Plaintiffs' Reply in Support of Their Motion to Dismiss JPMC's Counterclaims*.  On February 17, 2011, JPMC filed its amended counterclaims against LBHI in response to Plaintiffs' motion to dismiss JPMC's original counterclaims.  Plaintiffs filed their motion to dismiss the amended counterclaims on April 4, 2011.  JPMC opposed Plaintiffs' motion on June 3, 2011.  Quinn Emanuel attorneys spent a significant amount of time during the Fee Period analyzing JPMC's arguments in its opposition brief and preparing Plaintiffs' reply.  To do so, Quinn Emanuel attorneys (i) analyzed all of the cases cited by JPMC in its opposition and the arguments made by JPMC based on those cases, (ii) engaged in additional legal research in all of the key areas subject to litigation, including JPMC's allegations that it relied on representations made by LBHI, whether any such reliance was reasonable (particularly in the face of later representations by Barclays), what qualifies as an actionable representation of fact, whether the Court's decision in the Barclays Rule 60(b) litigation precludes JPMC's claims, and whether JPMC's allegations of scienter are sufficient, and (iii) prepared and filed a nearly fifty-page reply brief in consultation with and with input from Curtis.

51.         *Claims Reconciliation Process: Analysis of JPMC Claims*.  In addition to its work on the adversary proceeding with JPMC, Quinn Emanuel continued during the Fee Period to work with Curtis, the estate, and A&M to research JPMC's claims against the estate as part of the claim review and reconciliation process.  As part of that process, Quinn

16

Emanuel attorneys worked throughout the Fee Period analyzing JPMC's claims against the LBHI

estate, including in-depth analysis of JPMC's claims related to (i) its clearance and triparty

services to Lehman Brothers Inc. ("LBI" and the claims, the "Clearance Claims"), (ii) derivatives

contracts between JPMC and its subsidiaries, on the one hand, and LBHI and its subsidiaries, on

the other (the "Derivatives Claims"), and (iii) losses by investment funds managed by JPMC

and/or its subsidiaries (the "Claimant Funds") related to the Lehman bankruptcy (the "Asset

Management Claims").

   52.   Quinn Emanuel attorneys worked during the Fee Period on legal

research to develop arguments to support objections to all of JPMC's claims against the LBHI

estate.  Quinn Emanuel attorneys also worked with the non-testifying experts retained by

Plaintiffs to develop and define theories for objecting to the claims.  Quinn Emanuel attorneys

spent considerable time reviewing documents produced voluntarily by the Claimant Funds and

began drafting an objection to the Asset Management Claims.

   53.   *The Deficiency Objection*.  On August 31, 2011, Quinn Emanuel filed

the Deficiency Objection on behalf of Plaintiffs.  The Deficiency Objection includes several

theories, including (i) that JPMC failed to dispose of Lehman collateral in a commercially

reasonable manner, (ii) that JPMC received consideration from Barclays in settlement and should

not be able to achieve a double recovery through its claims against the estate, and (iii) that

JPMC's claims improperly include interest.  Quinn Emanuel took the lead in developing the first

two theories, including extensive legal research on the application of the Uniform Commercial

Code to collateral disposition and the effect of prior settlements on claims in bankruptcy.

   54.   Quinn Emanuel attorneys also worked closely with A&M and non-

testifying experts to analyze the factual record related to the collateral disposition.  This process

involved the review of thousands of documents and a large amount of data from trading systems

and JPMC's records on the over four thousand separate securities transactions making up the

liquidation.  Quinn Emanuel attorneys worked to synthesize the information, informed by expert

analysis, to draft the over forty-page Deficiency Objection.  Following the filing of the Deficiency

Objection, Quinn Emanuel attorneys worked on drafting and serving related discovery requests

and continued to work with Curtis to develop a strategy for pursuing the objection through a

ruling.

        55.      *Stern v. Marshall Briefing*.  Also during the Fee Period, the Supreme

Court of the United States issued its decision in *Stern*, which has been argued to impact the ability

of bankruptcy courts to enter final orders with respect to certain claims.  Quinn Emanuel attorneys

spent considerable time analyzing the *Stern* decision and the opinions on which it was based, as

well as subsequent decisions citing to and interpreting *Stern*.  Quinn Emanuel attorneys worked

with Curtis to draft papers requested by the Court explaining the impact of the *Stern* decision on

the JPMC adversary proceeding and participated in conference calls with the Court and meet and

confer discussions with JPMC regarding how to resolve the dispute between the parties regarding

whether and how the *Stern* decision affects the case.

        56.      *Misc. Case Issues*.  Quinn Emanuel attorneys continued to spend

considerable time negotiating with counsel for JPMC and Barclays on a wide variety of litigation-

related topics, ranging from discovery to scheduling issues.  JPMC and Plaintiffs negotiated

extensions to the schedule for the JPMC adversary proceeding that were filed on July 11, 2011

(signed by the Court on July 27, 2011) and September 19, 2011 (signed by the Court on October

3, 2011).  As another example, on August 11, 2011, Quinn Emanuel wrote to the Court to seek a

conference related to a dispute with JPMC regarding deposition scheduling and responded to a

letter on the subject from counsel to JPMC on August 17, 2011.  The parties had a conference call

with the Court on August 18, 2011.  JPMC initiated a similar process with respect to Barclays

witnesses in September, with Quinn Emanuel attorneys participating in discussions between

JPMC and Barclays, including a conference call with the Court.  Quinn Emanuel attorneys also

continued to spend considerable time coordinating with Curtis, A&M and the estate on all issues

in the litigation, from strategy to logistics, to ensure appropriate distribution of labor and effective

and efficient use of estate resources.

      57.      <u>Barclays' Transaction Litigation</u>.  On September 15, 2009 Quinn

Emanuel filed the Rule 60(b) motion on the Committee's behalf seeking relief from the sale order

dated September 20, 2008 (the "<u>Sale Order</u>") approving the sale of assets related to Lehman

Brothers' North American broker dealer business to Barclays (the "<u>Rule 60(b) Motion</u>") arguing,

among other things, that billions in assets were transferred to Barclays without Court approval.

The other movants (<u>i.e.</u>, LBHI and the SIPA Trustee, together with the Committee, the

"<u>Movants</u>") filed the Rule 60(b) Motions on the same day seeking similar relief.

      58.      After extensive discovery, the trial started on April 9, 2010 and

continued (non-consecutively) through October 21, 2010.  Ultimately, the Movants and Barclays

submitted post-trial briefs and findings of fact/conclusions of law on November 22, 2010.  On

February 22, 2011, the Bankruptcy Court issued its memorandum opinion finding that Rule 60(b)

relief was not appropriate.

      59.      During this period, Quinn Emanuel attorneys spent considerable time

reviewing the next steps in connection with the litigation, including, without limitation, the

prospect of an appeal and the Debtors' motion for summary judgment on count II of their

complaint.

      60.      On July 15, 2011, Barclays filed a notice of appeal to the extent the

Court's order denied Barclays' motion and granted the SIPA Trustee's motion.  Quinn Emanuel

attorneys reviewed Barclays' notice of appeal and designation of the record.

61.     During this Fee Period, Quinn Emanuel drafted and filed a notice of appeal, on the Committee's behalf.  Quinn Emanuel attorneys then spent time reviewing the trial record in order to designate the record and to draft a statement of issues on appeal.  Quinn Emanuel attorneys then spent time reviewing Barclays' counter-designation of the record, filed on August 25, 2011.

62.     After a re-evaluation of the record and a considerable number of discussions with the Committee and the Debtors, it was decided that the Committee would file a stipulation to dismiss its appeal with prejudice.  The stipulation and order were filed on September 23, 2011.

63.     <u>Bank of America Litigation</u>.  Quinn Emanuel attorneys actively participated on the Committee's behalf in the litigation between the estates and BofA.  On January 29, 2010, February 1, 2010 and February 2, 2010, an evidentiary hearing was conducted regarding BofA's purported right to offset $509 million maintained in an LBHI bank account against amounts purportedly owed by LBHI and LBSF under certain LBSF derivative contracts. Quinn Emanuel represented the Committee, as intervenor, in connection with the BofA litigation. At the conclusion of the evidentiary hearing, the Court directed the parties to submit post-trial briefing.

64.     On November 16, 2010, the Bankruptcy Court issued its decision (the "<u>BofA Decision</u>") granting motions for summary judgment filed by LBHI and LBSF (and joined by the Committee) against BofA.  The Court directed BofA to return $500 million plus interest to the Debtors, holding that the account at issue "was intended to function and in practice did function as a segregated account established for the special limited purpose of securing any indebtedness that might arise on account of intra-day overdrafts."  As such, BofA's seizure of the

20

collateral violated the automatic stay imposed by section 362 of the Bankruptcy Code, and BofA was not entitled to setoff the $500 million.

65.     On May 20, 2011, the Bankruptcy Court entered final judgment against BofA on all counts of the Complaint, and in favor of LBHI on its counterclaim asserted in the adversary proceeding, in the amount of $501,800,000.00 (the "Funds"), plus simple interest on the Funds calculated at the rate of 9% per annum from November 10, 2008 through December 3, 2010 (the "Final Judgment").  Subject to BofA's appellate rights, BofA agreed to reimburse the Debtors' and the Committee's attorneys' fees incurred in connection with BofA's stay violation up to $1.25 million dollars.

66.     On May 23, 2011, BofA filed a notice of appeal.  Quinn Emanuel attorneys spent time during this Fee Period reviewing BofA's statement of issues, designation of content, as well as, BofA's brief, filed on July 1, 2011.  Quinn Emanuel attorneys also worked closely with LBHI's counsel to coordinate drafting of appellate papers.  They thereafter spent considerable time researching and drafting a brief in response.  As a result of discussions and negotiations among the Debtors and BofA, the parties ultimately came to a settlement agreement. Quinn Emanuel attorneys spent considerable time during this period reviewing and evaluating the propriety of the settlement.  A stipulation of dismissal of appeal was filed on November 16, 2011 after the Bankruptcy Court approved the settlement on October 19, 2011.

67.     Investigation of Claims and Assessment of Pleadings.  During the Fee Period, Quinn Emanuel attorneys spent a significant amount of time conducting investigations regarding certain parties to determine whether the estates would need to commence actions or otherwise take steps to preserve the estates' rights against these parties.  During this period, Quinn Emanuel attorneys worked closely with the estates' professionals in the analysis of potential claims against such entities.  The investigations entailed: (i) in-depth research, (ii) multiple

21

conferences, (iii) document review, (iv) drafting memoranda of law regarding potential claims,

(v) reviewing filed proofs of claim, and (vi) the drafting of pleadings relating to these institutions.

Due to the confidential nature of these investigations, this fee application only discusses this

investigation in general terms.

68.    Quinn Emanuel attorneys also spent time conducting in-depth

analysis of pleadings filed during this Fee Period that relate to these parties.  Quinn Emanuel's

analysis entailed drafting, researching and writing memoranda to the Committee regarding such

pleadings.  Notably, during this Fee Period, Quinn Emanuel spent time reviewing among other

pleadings (i) the settlement between LBI and JPMC, and (ii) LBHI's settlement with HSBC.

69.    *Settlement Between LBI and JPMC*.  On April 20, 2011, James W.

Giddens, as trustee (the "Trustee") for the Securities Investor Protection Act ("SIPA") liquidation

of LBI and JPMC entered into a settlement agreement (the "Settlement") involving certain

disputes between the parties.  On April 21, 2011, the Trustee filed a motion (the "Settlement

Motion") pursuant to Rule 9019(a) of the Bankruptcy Rules seeking approval of the Settlement.

70.    After the filing of the Settlement Motion, Quinn Emanuel worked

closely with the Debtors' counsel, Weil Gosthal and Curtis, Milbank Tweed and FTI to obtain

additional information with respect to the Settlement from the Trustee.  The parties met various

times to address the questions and concerns that the LBHI and Committee advisors had regarding

the Settlement.  Draft responsive pleadings also were prepared to respond to the settlement, which

would be filed, if necessary, absent agreement on the contours of the settlement.  Ultimately, with

modifications to the proposed order approving the settlement that were heavily negotiated, the

Court approved it on June 23, 2011.  The Court's order approving the Settlement between the

Trustee and JPMC established that the Settlement would not affect the rights, claims, defenses or

standing asserted by LBHI or the Committee.

22

### D.    Derivatives  (Hours: 502.40, Fees: $365,485.00)

71.         During the Fee Period, Quinn Emanuel attorneys devoted time to

reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  The

Debtors have been in the process of reconciling and winding down their considerable derivatives

trading activities.  Quinn Emanuel attorneys devoted time to diligencing certain of these

transactions involving various counterparties, including large financial institutions, to ensure that

the value for unsecured creditors has been maximized.

72.         The Debtors have challenged whether counterparties had the right to

unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11

filings.  Given the sheer volume of the Debtors' trading activity, the number of similarly situated

transactions, and the value of such transactions to the estates, the outcome of such challenges can

have substantial effect on the Chapter 11 Cases.  On behalf of the Committee, and working with

the Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn

Emanuel attorneys have devoted substantial time to examining issues, researching legal issues,

drafting memoranda, attending mediations, settlement meetings, and hearings, and providing

updates to the Committee and its derivatives sub-committee concerning such challenges.  Among

the litigation matters handled by Quinn Emanuel are: the Ballyrock Adversary Proceeding (Adv.

Pro. No. 09-01032); the Libra Adversary Proceeding (Adv. Pro. No. 09-01177) and disputes with

parties involved in the Libra and MKP Vela transactions; and aspects of the so-called Bank of

America "flip" Adversary Proceeding (Adv. Pro. No. 10-03547), including matters relating to the

Pyxis transaction.

73.         Big Bank Settlement Framework.  During this Fee Period, Quinn

Emanuel attorneys devoted time to reviewing and analyzing a proposed framework for resolving

disputes regarding over $20 billion in derivatives claims filed by 13 financial institutions.  This

"Big Bank" settlement process involved the review of a complex manual outlining LBSF's proposed calculation of a settlement framework as well as attending multiple meetings with LBSF and the various derivatives counterparties affected by the framework.

74.     <u>Derivatives ADR Process</u>.  During this Fee Period, Quinn Emanuel attorneys also represented the Committee in a number of pre-mediation negotiations and mediation sessions arising through the Court-ordered derivatives alternative dispute resolution process.  Specifically, Quinn Emanuel represents the Committee with respect to 11 derivatives matters subject to the alternative dispute resolution process, several of which resulted in mediation sessions (the counterparties to which are confidential pursuant to the order commencing the ADR process).  Before each session, Quinn Emanuel attorneys would review the confidential mediation statements submitted by the estates and the counterparty, review all the underlying transaction documents and any related correspondence, and prepare a detailed memorandum to the Committee discussing the transaction and recommending an appropriate settlement floor.  Quinn Emanuel attorneys would also liaise with representatives for the estates in advance of each mediation session.

**E.     <u>Nonworking Travel  (Hours: 480.20, Fees: $267,248.50)</u>**

75.     Time billed under this category was for the necessary time that Quinn Emanuel attorneys spent traveling on behalf of the Committee to Committee meetings, depositions and court hearings.  Given the compressed time and magnitude of the litigation in which Quinn Emanuel is involved, it was necessary for attorneys outside of Quinn Emanuel's New York office to travel to New York to participate in meetings, hearings, and settlement negotiations.  As discussed above, the attendance of these attorneys was necessary to the effective and efficient representation of the Committee.  Thus, time billed during this Fee Period, included

cross-country air travel relating to this litigation.[4]  Quinn Emanuel attorneys also spent time

traveling locally to Court, depositions and in-person meetings with the Debtors and other third

parties.

        **F.**       **<u>Quinn Emanuel Fee Applications (Hours: 546.40, Fees: $218,400.00)</u>**

        76.        Pursuant to the Bankruptcy Code, Local Rules, and the Compensation

Order, Quinn Emanuel prepared and served four monthly fee statements (the "<u>Fee Statements</u>")

for approval and allowance of compensation for actual, reasonable and necessary professional

services rendered, and reimbursement of expenses for actual reasonable and necessary expenses

incurred during those fee periods.  Each Fee Statement contained extensive records of the work

performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared the Eighth Interim Fee

Application during this Fee Period.  Preparing the Eighth Interim Fee Application involved

consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and preparing

a detailed narrative in the pleading describing these efforts.  Extensive time was also spent

organizing the time entries and preparing the charts and the summary descriptions of the work

done throughout the Eighth Interim Fee Application.  Lastly, Quinn Emanuel attorneys spent time

reviewing and revising the overall litigation budget and amending Quinn Emanuel's budget

accordingly.

        **VII.**    **<u>ALLOWANCE OF COMPENSATION</u>**

        77.        The factors to be considered in awarding attorneys fees as enumerated

in <u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts, including the Bankruptcy Court for the Southern District of New York.

<u>See, e.g.</u>, <u>In re Drexel Burnham Lambert Group, Inc.</u>, 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.

---

[4]      The airfare incurred was not billed at business class fares.

1991).  Indeed, a majority of the <u>First Colonial</u> factors are now codified in section 330(a)(3).  <u>See,</u>

<u>e.g.</u>, 3 L. King, <u>et al.</u>, Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

78.     Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent

part, that the Court may award to a professional person, "reasonable compensation for actual,

necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded,
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature of
> the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

79.     The congressional policy expressed above provides for adequate

compensation in order to continue to attract qualified and competent professionals to bankruptcy

cases.  <u>In re Busy Beaver Bldg. Ctrs., Inc.</u>, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather

clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists

to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); <u>In re</u>

<u>Drexel Burnham Lambert Group, Inc.</u>, 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress'

objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that

bankruptcy cases were staffed by appropriate legal specialists.").  Quinn Emanuel respectfully

26

submits that the consideration of these factors should result in this Court's allowance of the full

compensation sought.

### A.    The Time and Labor Required

80.    The professional services rendered by Quinn Emanuel have required

the continuous expenditure of substantial time and effort, under time pressures which sometimes

required the performance of services late into the evening and, on a number of occasions, over

weekends and holidays.  The services rendered required a high degree of professional competence

and expertise in order to be administered with skill and dispatch.  During the compensation

period, approximately 14,317.30 recorded hours were expended by Quinn Emanuel' s partners,

associates, and legal assistants in providing the requested professional services.  Quinn Emanuel's

hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly

charges its hourly clients.

### B.    The Necessity of The Services and Benefit to the Estate

81.    These Chapter 11 Cases are generally regarded as among the most

complex and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding

the Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As

detailed above, the services Quinn Emanuel provided to the Committee were necessary to

preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the

Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to

further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will

continue to maximize estate value.

82.    Quinn Emanuel nonetheless made every effort to avoid duplication.

On any matter where Quinn Emanuel attorneys work with estate counsel, Quinn Emanuel aims to

coordinate efforts and maintain efficiency.

27

C.    **The Novelty and Difficulty of Issues Presented in the Cases**

83.        Novel and complex issues have arisen in the course of the Chapter 11

Cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in

many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative

approach to problem solving have helped clarify and resolve difficult issues and will continue to

prove beneficial.

D.    **The Experience, Reputation and Ability of the Attorneys**

84.        Quinn Emanuel has extensive experience in the areas of insolvency,

workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee

have been rendered in a highly efficient manner by attorneys who have achieved a high degree of

expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have

represented the Committee have ensured that these cases have been administered in the most

efficient and expeditious manner.

VIII.   **DISBURSEMENTS**

85.        Quinn Emanuel has incurred a total of $398,662.27 in expenses in

connection with representing the Committee during the Ninth Interim Compensation Period.

Quinn Emanuel records all expenses incurred in connection with the performance of professional

services.  A summary of these expenses and detailed descriptions of these expenses, is annexed

hereto as Exhibit E.

86.        In connection with the reimbursement of expenses, Quinn Emanuel's

policy is to charge its clients in all areas of practice for expenses, other than fixed and routine

overhead expenses, incurred in connection with representing its clients.  The expenses charged to

Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other

charges, mail and express mail charges, special or hand delivery charges, photocopying charges,

28

out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research, and transcription costs.

87.        Quinn Emanuel charges the Committee for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients.  Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

88.        In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

89.        Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications.  Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

90.        Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of air travel expenses in excess of coach fares.  Throughout the Ninth Interim Compensation Period, Quinn

29

Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses

charged to the Debtors' estates.

## IX.    <u>NOTICE</u>

91.            Notice of this Application, as set forth in the Interim Compensation

Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United

States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the

chairperson of the fee committee.

## X.     **CONCLUSION**

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fee Period in the amount of $6,632,263.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $398,662.27, for a total award of $7,030,898.77; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Ninth Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  December 14, 2011
         New York, New York

                          **QUINN EMANUEL URQUHART**
                          **& SULLIVAN, LLP**

                          By:  _/s James C. Tecce_____
                              James C. Tecce

                          Susheel Kirpalani (SK8926)
                          James C. Tecce (JT5910)
                          Robert K. Dakis (RD0626)
                          51 Madison Avenue, 22nd Floor
                          New York, New York 10010
                          Telephone No.:  (212) 849-7000
                          Facsimile No.:  (212) 849-7100

                          *Special Counsel to Official Committee Of*
                          *Unsecured Creditors Of Lehman Brothers*
                          *Holdings Inc., et al.*