WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :      **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :      **08-13555 (JMP)**
                                                                   :
                                          **Debtors.**             :      **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331**
**NINTH INTERIM FEE APPLICATION**

Name of Applicant:        **Weil, Gotshal & Manges LLP**


Time Period:              June 1, 2011 through and including September 30, 2011


Role in the Case:         Attorneys for the Debtors and Debtors in Possession


Current Application:      Total Fees Requested:  $38,936,287.50

                          Total Expenses Requested:  $930,986.57

Prior Applications[1]:  First Interim Fee Application, filed April 13, 2009 [ECF No. 3343], for the period from September 15, 2008 through and including January 31, 2009

    Total Fees & Expenses Requested:  $56,477,671.85

    Total Fees & Expenses Allowed:  $56,477,077.85

Second Interim Fee Application, filed August 14, 2009 [ECF No. 4825], for the period from February 1, 2009 through and including May 31, 2009

    Total Fees & Expenses Requested:  $46,462,615.85

    Total Fees & Expenses Allowed:  $46,191,429.24

Third Interim Fee Application, filed December 14, 2009 [ECF No. 6205], for the period from June 1, 2009 through and including September 30, 2009

    Total Fees & Expenses Requested:  $46,615,231.42

    Total Fees & Expenses Allowed:  $46,373,588.39

Fourth Interim Fee Application, filed April 16, 2010 [ECF No. 8395], for the period from October 1, 2009 through and including January 31, 2010

    Total Fees & Expenses Requested:  $41,385,606.04

    Total Fees & Expenses Allowed:  $40,252,444.70

Fifth Interim Fee Application, filed August 16, 2010 [ECF No. 10791], for the period from February 1, 2010 through and including May 31, 2010

    Total Fees & Expenses Requested:  $47,819,947.03

    Total Fees & Expenses Allowed:  $47,029,684.29

Sixth Interim Fee Application, filed December 15, 2010 [ECF No. 13496], for the period from June 1, 2010 through and including September 30, 2010

    Total Fees & Expenses Requested:  $43,669.789.45

    Total Fees & Expenses Allowed:  $43,369,367.90

Seventh Interim Fee Application, filed June 2, 2011 [ECF No. 17347], for the period from October 1, 2010 through and including January 31, 2011

    Total Fees & Expenses Requested:  $38,071,928.64

    Total Fees & Expenses Allowed:  Application Pending

Eighth Interim Fee Application, filed August 15, 2011 [ECF No. 19269], for the period from February 1, 2011 through and including May 31, 2011

    Total Fees & Expenses Requested:  $40,247,973.07

    Total Fees & Expenses Allowed:  Application Pending

---

[1] Weil, Gotshal & Manges LLP has reserved all rights with respect to any fees and expenses that have been requested but not yet allowed.

\* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation

## SUMMARY SHEET FOR THE NINTH INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Harvey R. Miller | BFR | 1959 | $1,000.00 | 460.30 | $460,300.00 |
| Peter Gruenberger | LIT | 1961 | $1,000.00 | 1,025.40 | $1,025,400.00 |
| Ralph I. Miller | LIT | 1972 | $1,000.00 | 346.00 | $312,750.00 |
| Richard P. Krasnow | BFR | 1972 | $1,000.00 | 589.50 | $589,500.00 |
| Charles E. Roh, Jr. | LIT | 1973 | $900.00 | 14.20 | $12,780.00 |
| David R. Berz | LIT | 1973 | $975.00 | 14.20 | $13,845.00 |
| Gregory D. Hull | LIT | 1973 | $760.00 | 228.80 | $173,888.00 |
| Ted S. Waksman | CORP | 1974 | $1,000.00 | 6.30 | $6,300.00 |
| Irwin H. Warren | LIT | 1975 | $1,000.00 | 57.80 | $57,800.00 |
| Howard B. Comet | LIT | 1976 | $925.00 | 5.10 | $4,717.50 |
| Edward Soto | LIT | 1978 | $1,000.00 | 631.00 | $631,000.00 |
| Elaine Stangland | CORP | 1978 | $975.00 | 8.50 | $8,287.50 |
| Richard A. Rothman | LIT | 1978 | $1,000.00 | 8.10 | $8,100.00 |
| Rupert J. L. Jones | CORP | 1978 | $945.00 | 31.50 | $29,389.50 |
| David I. Bower | TAX | 1979 | $900.00 | 27.00 | $24,300.00 |
| Robert L. Messineo | CORP | 1979 | $1,000.00 | 39.20 | $39,200.00 |
| Alfredo R. Perez | BFR | 1980 | $1,000.00 | 652.30 | $652,300.00 |
| Peter D. Isakoff | LIT | 1980 | $975.00 | 269.80 | $263,055.00 |
| W. M. Bond | CORP | 1980 | $1,000.00 | 503.70 | $503,700.00 |
| Mindy J. Spector | LIT | 1981 | $1,000.00 | 6.10 | $6,100.00 |
| Jacqueline Marcus | BFR | 1983 | $950.00 | 608.70 | $578,265.00 |
| Brenda Coleman | TAX | 1984 | $990.00 | 6.00 | $6,000.00 |
| Daniel J. Mette | CORP | 1984 | $865.00 | 159.60 | $138,054.00 |
| Lawrence J. Baer | LIT | 1984 | $780.00 | 16.70 | $13,026.00 |
| Lori R. Fife | BFR | 1984 | $1,000.00 | 834.70 | $823,700.00 |
| Richard A. Morrison | CORP | 1984 | $975.00 | 687.70 | $670,507.50 |
| Richard L. Levine | LIT | 1984 | $950.00 | 314.60 | $298,870.00 |
| Stuart J. Goldring | TAX | 1984 | $1,000.00 | 147.10 | $147,100.00 |
| Jonathan D. Polkes | LIT | 1985 | $1,000.00 | 18.80 | $18,800.00 |

\* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Stephen A. Youngman | BFR | 1985 | $925.00 | 75.40 | $69,745.00 |
| Holly J. Gregory | CORP | 1987 | $1,000.00 | 14.60 | $14,600.00 |
| Michael K. Kam | TAX | 1987 | $1,000.00 | 21.60 | $21,600.00 |
| Richard W. Slack | LIT | 1987 | $950.00 | 367.90 | $349,505.00 |
| Steven M. Peck | CORP | 1987 | $900.00 | 9.30 | $8,370.00 |
| Juliet Blanch | LIT | 1988 | $1,000.00 | 10.20 | $9,750.00 |
| Larry J. Gelbfish | TAX | 1988 | $925.00 | 77.90 | $72,057.50 |
| Eric J. Peterman | CORP | 1989 | $975.00 | 134.10 | $130,747.50 |
| Frank P. Nocco | CORP | 1989 | $1,000.00 | 43.40 | $43,400.00 |
| John B. Strasburger | LIT | 1989 | $875.00 | 87.00 | $71,750.00 |
| John J. Dedyo | CORP | 1989 | $975.00 | 5.70 | $5,557.50 |
| Nellie P. Camerik | CORP | 1989 | $925.00 | 803.00 | $741,387.50 |
| Penny P. Reid | LIT | 1989 | $950.00 | 267.80 | $254,410.00 |
| Vernon S. Broderick | LIT | 1989 | $875.00 | 37.30 | $32,637.50 |
| Andrew J. Colao | CORP | 1990 | $925.00 | 20.20 | $18,685.00 |
| Barry Fishley | CORP | 1990 | $990.00 | 17.80 | $17,622.00 |
| Christopher Cox | LIT | 1990 | $900.00 | 383.10 | $344,790.00 |
| Joanne Etherton | TAX | 1990 | $1,000.00 | 79.20 | $78,450.00 |
| Steven M. Margolis | TAX | 1990 | $780.00 | 41.00 | $31,980.00 |
| Adam B. Plainer | BFR | 1991 | $1,000.00 | 478.3 | $477,400.00 |
| Christopher R.J. Pace | LIT | 1991 | $900.00 | 189.90 | $166,500.00 |
| Craig W. Adas | CORP | 1991 | $1,000.00 | 66.20 | $66,200.00 |
| Dominic T. McCahill | BFR | 1991 | $1,000.00 | 17.50 | $17,500.00 |
| Michael E. Lubowitz | CORP | 1991 | $1,000.00 | 102.70 | $102,700.00 |
| Patrick J. O'Toole, Jr. | LIT | 1991 | $760.00 | 21.00 | $15,960.00 |
| Robert N. Chiperfield | CORP | 1991 | $1,000.00 | 295.10 | $295,100.00 |
| Steven K. Ong | CORP | 1991 | $1,000.00 | 228.80 | $226,512.00 |
| Joseph T. Verdesca | CORP | 1992 | $900.00 | 6.00 | $5,400.00 |
| Yvette Ostolaza | LIT | 1992 | $925.00 | 36.50 | $33,762.50 |
| Lori L. Pines | LIT | 1993 | $925.00 | 19.50 | $18,037.50 |
| Rodney D. Miller | CORP | 1993 | $1,000.00 | 5.50 | $5,500.00 |
| Sylvia A. Mayer | BFR | 1993 | $900.00 | 11.70 | $10,530.00 |

\* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Vance L. Beagles | LIT | 1993 | $875.00 | 129.90 | $113,662.50 |
| Beatriz Azcuy-Diaz | CORP | 1994 | $850.00 | 192.50 | $163,625.00 |
| Henry Ong | CORP | 1994 | $920.00 | 5.40 | $4,968.00 |
| Sarah Priestley | TAX | 1994 | $1,000.00 | 28.80 | $28,800.00 |
| Holly E. Loiseau | LIT | 1995 | $850.00 | 56.80 | $48,280.00 |
| Thomas Schmid | CORP | 1995 | $775.00 | 5.60 | $4,340.00 |
| Y. S. Grossman | CORP | 1995 | $925.00 | 62.10 | $57,442.50 |
| David E. Wohl | CORP | 1996 | $850.00 | 23.30 | $19,805.00 |
| Jeffrey D. Osterman | CORP | 1996 | $925.00 | 21.80 | $20,165.00 |
| David B. Hird | LIT | 1997 | $900.00 | 60.20 | $54,180.00 |
| Jane E. Morgan | CORP | 1997 | $1,000.00 | 11.40 | $11,400.00 |
| Matthew Shankland | LIT | 1997 | $1,000.00 | 139.00 | $139,000.00 |
| Robert Frastai | TAX | 1997 | $900.00 | 171.00 | $153,900.00 |
| Scarlett E. Collings | LIT | 1997 | $760.00 | 646.80 | $480,358.00 |
| David R. Fertig | LIT | 1998 | $850.00 | 124.00 | $105,400.00 |
| Scott M. Sontag | TAX | 1998 | $900.00 | 20.50 | $18,450.00 |
| Arnold Buessemaker | CORP | 1999 | $745.00 | 101.50 | $75,617.50 |
| Gregory S. Silbert | LIT | 1999 | $760.00 | 105.90 | $80,484.00 |
| Linton Bloomberg | BFR | 1999 | $945.00 | 377.60 | $356,832.00 |
| Nancy E. Lynch | CORP | 1999 | $760.00 | 100.40 | $76,304.00 |
| Randi W.Singer | LIT | 1999 | $850.00 | 239.70 | $203,745.00 |
| Yolanda C. Garcia | LIT | 1999 | $800.00 | 23.70 | $18,960.00 |
| Ardith Bronson | LIT | 2000 | $760.00 | 377.60 | 286,976.00 |
| Ashley R. Altschuler | LIT | 2000 | $830.00 | 11.40 | $9,462.00 |
| Elisa R. Lemmer | BFR | 2000 | $760.00 | 397.00 | $297,578.00 |
| Ivor Gwilliams | LIT | 2000 | $945.00 | 126.10 | $119,164.50 |
| David Herman | CORP | 2001 | $790.00 | 546.00 | $431,340.00 |
| Robert J. Lemons | BFR | 2001 | $850.00 | 568.40 | $474,937.50 |
| Paullette C. Deruelle | LIT | 2002 | $760.00 | 348.60 | $264,936.00 |
| Ronit J. Berkovich | BFR | 2002 | $810.00 | 146.40 | $114,169.50 |
| **Total:** | | | | **16,863.30** | **$15,509,463.50** |

\* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | LIT | 1975 | $665.00 | 59.80 | $39,767.00 |
| Ricardo P. Pellafone | LIT | 1985 | $645.00 | 21.00 | $13,545.00 |
| Roshelle A. Nagar | CORP | 1989 | $750.00 | 39.10 | $29,325.00 |
| Ariel Kronman | CORP | 1993 | $750.00 | 198.90 | $145,610.00 |
| Leslie S. Smith | CORP | 1995 | $750.00 | 43.30 | $32,475.00 |
| Melissa Meyrowitz | CORP | 1996 | $750.00 | 49.60 | $37,200.00 |
| Meredith Parenti | LIT | 1996 | $750.00 | 441.40 | $325,050.00 |
| Adelaja K. Heyliger | CORP | 1998 | $740.00 | 6.30 | $4,662.00 |
| Konrad Von Buchwaldt | CORP | 1998 | $540.00 | 26.50 | $14,310.00 |
| Konstantin Hoppe | CORP | 1998 | $540.00 | 74.60 | $40,284.00 |
| David W. Dummer | LIT | 1999 | $750.00 | 74.50 | $55,875.00 |
| Eugene J. Ng | CORP | 1999 | $740.00 | 80.90 | $59,866.00 |
| Andrew R. Swartz | LIT | 2001 | $750.00 | 238.40 | $178,800.00 |
| Margarita Platkov | LIT | 2001 | $740.00 | 176.40 | $130,536.00 |
| Marcie R. Kaufman | LIT | 2001 | $685.00 | 47.30 | $32,400.50 |
| Inbal Naveh | LIT | 2001 | $430.00 | 188.50 | $81,055.00 |
| Robyn Lewis | LIT | 2001 | $430.00 | 19.20 | $8,256.00 |
| Charles J. Maples | LIT | 2002 | $825.00 | 137.90 | $113,767.50 |
| Adam M. Schloss | LIT | 2002 | $750.00 | 71.30 | $53,475.00 |
| Eleanor H. Gilbane | LIT | 2002 | $750.00 | 277.60 | $208,200.00 |
| Arman Kuyumjian | CORP | 2002 | $740.00 | 130.40 | $96,496.00 |
| Nathanael J. Christensen | CORP | 2002 | $740.00 | 25.30 | $18,722.00 |
| Airi Hammalov | CORP | 2002 | $685.00 | 5.10 | $3,493.50 |
| Jay H. Park Jr. | CORP | 2002 | $685.00 | 43.00 | $29,455.00 |
| Rupert A. Wall | CORP | 2003 | $825.00 | 131.30 | $108,322.50 |
| Denise Alvarez | LIT | 2003 | $750.00 | 137.40 | $103,050.00 |
| Marisa L. Schick | CORP | 2003 | $750.00 | 209.20 | $156,900.00 |
| Andrew W. Nelson | CORP | 2003 | $740.00 | 22.40 | $16,576.00 |
| Edward McCarthy | LIT | 2003 | $740.00 | 285.00 | $204,129.00 |
| Erin D. Eckols | LIT | 2003 | $740.00 | 476.90 | $339,216.00 |
| Gregory Fennell | CORP | 2003 | $720.00 | 29.30 | $21,096.00 |
| Hannah L. Field | LIT | 2004 | $825.00 | 355.70 | $293,452.50 |
| Mirella B. Hart | CORP | 2004 | $825.00 | 337.20 | $278,190.00 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Oliver D. Walker | TAX | 2004 | $825.00 | 22.10 | $18,232.50 |
| David R. Singh | LIT | 2004 | $740.00 | 50.40 | $37,296.00 |
| Garrett Fail | BFR | 2004 | $740.00 | 892.20 | $658,970.00 |
| Max A. Goodman | TAX | 2004 | $740.00 | 158.60 | $115,218.00 |
| Michael Firestone | LIT | 2004 | $740.00 | 148.30 | $109,742.00 |
| Robert C. Shmalo | CORP | 2004 | $740.00 | 495.70 | $366,818.00 |
| Allen S. Blaustein | LIT | 2004 | $720.00 | 795.30 | $546,336.00 |
| Liani G. Kotcher | LIT | 2004 | $720.00 | 243.20 | $175,104.00 |
| Robert S. Velevis | LIT | 2004 | $720.00 | 211.30 | $144,252.00 |
| Benjamin L. Stewart | LIT | 2004 | $685.00 | 19.20 | $13,152.00 |
| Russell J. Stein | TAX | 2004 | $645.00 | 22.20 | $14,319.00 |
| Kian Tauser | TAX | 2004 | $610.00 | 24.70 | $15,067.00 |
| John T. O'Connor | LIT | 2004 | $600.00 | 19.00 | $11,400.00 |
| Alcira Moncada | LIT | 2004 | $290.00 | 69.30 | $20,097.00 |
| Blandine Perret | BFR | 2005 | $770.00 | 506.30 | $389,851.00 |
| Gemma Bullmore | LIT | 2005 | $770.00 | 415.70 | $319,704.00 |
| Pejman Razavilar | CORP | 2005 | $740.00 | 524.00 | $387,760.00 |
| Hyun K. Kim | CORP | 2005 | $720.00 | 207.20 | $149,184.00 |
| Kevin F. Meade | LIT | 2005 | $720.00 | 50.40 | $36,288.00 |
| Mark I. Bernstein | BFR | 2005 | $720.00 | 731.40 | $526,608.00 |
| Samuel J. Comer | CORP | 2005 | $720.00 | 167.50 | $120,600.00 |
| Jaime S. Kaplan | LIT | 2005 | $685.00 | 240.80 | $151,933.00 |
| Julie A. Markum | CORP | 2005 | $685.00 | 452.00 | $309,620.00 |
| Julian Chatterton | LIT | 2005 | $470.00 | 52.20 | $24,534.00 |
| Wilfried Krauss | TAX | 2005 | $370.00 | 6.30 | $2,331.00 |
| Benay H. Lizarazu | CORP | 2006 | $750.00 | 5.40 | $4,050.00 |
| Naomi Munz | CORP | 2006 | $750.00 | 101.70 | $76,275.00 |
| Christine T. DiGuglielmo | LIT | 2006 | $740.00 | 51.70 | $38,258.00 |
| Damon P. Meyer | BFR | 2006 | $685.00 | 75.20 | $51,512.00 |
| Emily L. Gold | CORP | 2006 | $685.00 | 377.30 | $256,669.50 |
| Jae Y. Kim | BFR | 2006 | $685.00 | 119.90 | $82,131.50 |
| Lauren B. Lipson | CORP | 2006 | $685.00 | 175.60 | $120,286.00 |
| Benton B. Bodamer | CORP | 2006 | $645.00 | 19.70 | $12,706.50 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| John Maseli | CORP | 2006 | $645.00 | 74.50 | $48,052.50 |
| Lauren Hoelzer | LIT | 2006 | $645.00 | 254.60 | $164,217.00 |
| Tomasz Kulawik | CORP | 2006 | $560.00 | 60.40 | $33,824.00 |
| John Butenas | CORP | 2007 | $750.00 | 586.20 | $439,650.00 |
| Alicia L. Speake | CORP | 2007 | $665.00 | 26.30 | $17,489.50 |
| Andrew R. Fox | LIT | 2007 | $665.00 | 103.10 | $68,561.50 |
| Lara Kuehl | LIT | 2007 | $665.00 | 82.20 | $54,663.00 |
| Thomas A. Falkus | CORP | 2007 | $665.00 | 5.50 | $3,657.50 |
| Amanjit Arora | BFR | 2007 | $645.00 | 549.90 | $352,557.00 |
| Christopher E. Farmer | LIT | 2007 | $645.00 | 7.40 | $4,773.00 |
| Conray C. Tseng | BFR | 2007 | $645.00 | 82.50 | $53,212.50 |
| Julio C. Gurdian | BFR | 2007 | $645.00 | 104.30 | $67,273.50 |
| Sarah M. Decker | LIT | 2007 | $645.00 | 462.20 | $288,282.75 |
| Sunny Singh | BFR | 2007 | $645.00 | 815.80 | $525,223.50 |
| Teresa Brady | LIT | 2007 | $645.00 | 397.00 | $256,065.00 |
| Aliza Reicher | BFR | 2007 | $600.00 | 104.00 | $62,400.00 |
| Ariane Newell | LIT | 2007 | $600.00 | 111.40 | $66,840.00 |
| Cassie Waduge | CORP | 2007 | $600.00 | 109.30 | $65,580.00 |
| Christine Doktor | LIT | 2007 | $600.00 | 241.50 | $144,900.00 |
| Evert J. Christensen | LIT | 2007 | $600.00 | 62.60 | $37,560.00 |
| Jennifer M. Oliver | LIT | 2007 | $600.00 | 150.20 | $90,120.00 |
| Justin D. Pauls | BFR | 2007 | $600.00 | 43.60 | $26,160.00 |
| Sunny J. Thompson | LIT | 2007 | $560.00 | 249.20 | $139,552.00 |
| Christina Maurer | CORP | 2007 | $440.00 | 12.80 | $5,632.00 |
| Justin G. Mapes | CORP | 2008 | $740.00 | 5.40 | $3,996.00 |
| Allison M. Warner | LIT | 2008 | $720.00 | 28.60 | $20,592.00 |
| Brandon E. Cherry | CORP | 2008 | $645.00 | 6.90 | $4,450.50 |
| Sara Coelho | BFR | 2008 | $645.00 | 60.50 | $38,506.50 |
| Sujan H. Trivedi | LIT | 2008 | $645.00 | 693.50 | $447,178.50 |
| Christina M. Manthei | BFR | 2008 | $600.00 | 656.60 | $393,960.00 |
| Emily L. Katz | LIT | 2008 | $600.00 | 17.20 | $10,320.00 |
| Eoghan P. Keenan | CORP | 2008 | $600.00 | 13.30 | $7,980.00 |
| Farbod Solaimani | TAX | 2008 | $600.00 | 42.20 | $25,320.00 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jakub Biernacki | CORP | 2008 | $600.00 | 33.40 | $20,040.00 |
| Joseph Abadi | CORP | 2008 | $600.00 | 129.30 | $77,580.00 |
| Lacey Laken | BFR | 2008 | $600.00 | 117.20 | $70,320.00 |
| Lisa N. Cloutier | LIT | 2008 | $600.00 | 45.10 | $27,060.00 |
| Marisa A. Sotomayor | CORP | 2008 | $600.00 | 36.10 | $21,660.00 |
| Maurice Horwitz | BFR | 2008 | $600.00 | 660.50 | $391,860.00 |
| Melissa Colon-Bosolet | LIT | 2008 | $600.00 | 25.30 | $15,180.00 |
| Philip Ratner | CORP | 2008 | $600.00 | 18.40 | $11,040.00 |
| Reed Collins | LIT | 2008 | $600.00 | 67.80 | $40,680.00 |
| Steven B. Stein | CORP | 2008 | $600.00 | 9.90 | $5,940.00 |
| Susan Fiore | CORP | 2008 | $600.00 | 10.70 | $6,420.00 |
| Richard I. Ellenbogen | CORP | 2008 | $590.00 | 9.10 | $5,369.00 |
| Amanda M. Hendy | BFR | 2008 | $560.00 | 769.20 | $430,752.00 |
| Brianna N. Benfield | BFR | 2008 | $560.00 | 6.10 | $3,416.00 |
| Casey A. Burton | LIT | 2008 | $560.00 | 22.50 | $12,600.00 |
| Jennifer D. Larson | LIT | 2008 | $560.00 | 209.80 | $117,488.00 |
| Kevin T. Crews | CORP | 2008 | $560.00 | 8.90 | $4,984.00 |
| Kristen L. Depowski | CORP | 2008 | $560.00 | 84.90 | $47,544.00 |
| Lauren L. Zerbinopoulos | LIT | 2008 | $560.00 | 551.60 | $300,636.00 |
| Maria G. Carminati | LIT | 2008 | $560.00 | 192.40 | $107,744.00 |
| Shawn Kodes | CORP | 2008 | $530.00 | 41.20 | $21,836.00 |
| Julie T. Friedman | BFR | 2008 | $500.00 | 429.10 | $214,550.00 |
| Victoria Neave | LIT | 2008 | $430.00 | 31.30 | $13,459.00 |
| Joyce Du | CORP | 2008 | $400.00 | 7.90 | $3,160.00 |
| Kate McGovern | LIT | 2008 | $290.00 | 165.30 | $47,937.00 |
| Allen T. Yancy | LIT | 2009 | $645.00 | 84.70 | $54,631.50 |
| Blaire Cahn | BFR | 2009 | $600.00 | 56.80 | $34,080.00 |
| Christopher M. Neely | LIT | 2009 | $600.00 | 190.80 | $114,480.00 |
| Daniel S. Klein | LIT | 2009 | $600.00 | 360.80 | $216,480.00 |
| Jannelle M. Seales | CORP | 2009 | $600.00 | 76.90 | $46,140.00 |
| Jennifer Cheng | CORP | 2009 | $600.00 | 130.80 | $78,300.00 |
| Pablo Falabella | BFR | 2009 | $600.00 | 112.50 | $67,500.00 |
| S. Alex Khachaturian | LIT | 2009 | $600.00 | 29.20 | $17,520.00 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Adam B. Banks | LIT | 2009 | $560.00 | 205.30 | $114,968.00 |
| Adam J. Feit | CORP | 2009 | $560.00 | 10.40 | $5,824.00 |
| Brian C. Drozda | CORP | 2009 | $560.00 | 43.50 | $24,360.00 |
| Caroline K. Simons | LIT | 2009 | $560.00 | 81.50 | $45,640.00 |
| Christopher R. Gruszczynski | CORP | 2009 | $560.00 | 6.30 | $3,528.00 |
| Christopher T. Luise | LIT | 2009 | $560.00 | 75.00 | $42,000.00 |
| Damien Wint | LIT | 2009 | $560.00 | 6.10 | $3,416.00 |
| David A. Cohen | CORP | 2009 | $560.00 | 85.20 | $47,712.00 |
| Jared Foley | LIT | 2009 | $560.00 | 86.50 | $48,440.00 |
| Kristen M. Echemendia | LIT | 2009 | $560.00 | 23.00 | $12,880.00 |
| Lee J. Goldberg | BFR | 2009 | $560.00 | 620.20 | $346,864.00 |
| Matthew Baudler | LIT | 2009 | $560.00 | 6.20 | $3,472.00 |
| Melanie Conroy | LIT | 2009 | $560.00 | 11.20 | $6,272.00 |
| Nadya Salcedo | LIT | 2009 | $560.00 | 100.90 | $56,504.00 |
| Noam I. Haberman | CORP | 2009 | $560.00 | 10.80 | $6,048.00 |
| Patricia Astorga | LIT | 2009 | $560.00 | 71.30 | $39,928.00 |
| Rachel B. Sherman | LIT | 2009 | $560.00 | 11.30 | $6,328.00 |
| Scott M. Litvinoff | LIT | 2009 | $560.00 | 11.30 | $6,328.00 |
| Tashanna B. Pearson | LIT | 2009 | $560.00 | 40.00 | $22,400.00 |
| Tracy K. Bookspan | CORP | 2009 | $560.00 | 18.90 | $10,584.00 |
| Zaw Win | BFR | 2009 | $560.00 | 547.60 | $305,508.00 |
| Jodie A. Dunlap | BFR | 2009 | $530.00 | 25.50 | $13,515.00 |
| Lorena Wong | CORP | 2009 | $530.00 | 56.70 | $30,051.00 |
| Alexander R. Liroff | CORP | 2009 | $495.00 | 333.80 | $165,231.00 |
| Alicia F. Castro | LIT | 2009 | $495.00 | 58.80 | $29,106.00 |
| Bambo Obaro | LIT | 2009 | $495.00 | 209.80 | $103,851.00 |
| Christopher G. Bradley | LIT | 2009 | $495.00 | 337.70 | $167,161.50 |
| Edward Wu | BFR | 2009 | $495.00 | 48.40 | $23,958.00 |
| Eileen Hren Citron | LIT | 2009 | $495.00 | 29.20 | $14,454.00 |
| Elizabeth M. Velez | LIT | 2009 | $495.00 | 549.70 | $267,621.75 |
| Eric Kasenetz | BFR | 2009 | $495.00 | 587.30 | $290,713.50 |
| Erica Rutner | LIT | 2009 | $495.00 | 456.90 | $226,165.50 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Hongan N. Tran | LIT | 2009 | $495.00 | 403.00 | $199,485.00 |
| Abraham Sinensky | TAX | 2009 | $430.00 | 6.90 | $2,967.00 |
| Cariza D. Arnedo | LIT | 2009 | $430.00 | 40.30 | $17,329.00 |
| John C. Ligon | LIT | 2009 | $430.00 | 67.30 | $28,939.00 |
| Olivia Miller | LIT | 2009 | $430.00 | 123.00 | $52,890.00 |
| Tara Lancaster | TAX | 2009 | $430.00 | 49.60 | $21,328.00 |
| Stefan Saerbeck | LIT | 2009 | $370.00 | 8.60 | $3,182.00 |
| Joanna Bliss | CORP | 2010 | $720.00 | 10.50 | $7,560.00 |
| Brian J. D'Amico | LIT | 2010 | $685.00 | 72.00 | $49,320.00 |
| Jennifer M. Nelsen | LIT | 2010 | $600.00 | 493.60 | $291,360.00 |
| Ajit Gokhale | TAX | 2010 | $560.00 | 343.90 | $192,584.00 |
| Andrea Y. Loh | LIT | 2010 | $560.00 | 105.50 | $59,080.00 |
| Doron Kenter | BFR | 2010 | $560.00 | 13.50 | $7,560.00 |
| Elana R. Pollak | LIT | 2010 | $560.00 | 75.70 | $41,860.00 |
| Jennifer N. Ganesh | BFR | 2010 | $560.00 | 233.80 | $130,928.00 |
| Peter J. Ibrahim | BFR | 2010 | $530.00 | 149.60 | $78,784.50 |
| Ashley Birnbaum | CORP | 2010 | $495.00 | 46.00 | $22,770.00 |
| Candace Arthur | BFR | 2010 | $495.00 | 719.40 | $356,103.00 |
| Christopher Gismondi | LIT | 2010 | $495.00 | 39.40 | $19,503.00 |
| Erika del Nido | BFR | 2010 | $495.00 | 737.70 | $365,161.50 |
| Jesse L. Morris | LIT | 2010 | $495.00 | 24.00 | $11,880.00 |
| Justin C. Lee | CORP | 2010 | $495.00 | 37.30 | $18,463.50 |
| Kevin Kramer | LIT | 2010 | $495.00 | 58.00 | $28,710.00 |
| Sam Limmer | CORP | 2010 | $495.00 | 118.70 | $58,756.50 |
| Shrutee Raina | LIT | 2010 | $495.00 | 168.20 | $83,259.00 |
| Suhan Shim | CORP | 2010 | $495.00 | 12.50 | $6,187.50 |
| Abeer Garousha | BFR | 2010 | $470.00 | 155.80 | $73,226.00 |
| Catherine Gurney | LIT | 2010 | $470.00 | 303.40 | $142,598.00 |
| Emily Wapples | CORP | 2010 | $470.00 | 445.70 | $209,479.00 |
| Lynn Shanshal | CORP | 2010 | $470.00 | 403.30 | $189,551.00 |
| William J. Needham | BFR | 2010 | $470.00 | 185.60 | $86,809.00 |
| Carlos Larkin | CORP | 2010 | $430.00 | 16.00 | $6,880.00 |
| Christina M. Trapani | LIT | 2010 | $430.00 | 227.70 | $97,911.00 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Devin Cain | LIT | 2010 | $430.00 | 11.20 | $4,816.00 |
| Emily L. Pincow | LIT | 2010 | $430.00 | 34.00 | $14,620.00 |
| Eva A. Belich | LIT | 2010 | $430.00 | 27.90 | $11,997.00 |
| Kyle J. Ortiz | BFR | 2010 | $430.00 | 365.60 | $157,208.00 |
| Lara Bueso | LIT | 2010 | $430.00 | 158.90 | $68,327.00 |
| Matthias J. Kleinsasser | BFR | 2010 | $430.00 | 34.60 | $14,878.00 |
| Stacey Ann Harkey | LIT | 2010 | $430.00 | 34.60 | $14,878.00 |
| Vipul Kumar | CORP | 2010 | $430.00 | 23.20 | $9,976.00 |
| Will A. Hueske | BFR | 2010 | $430.00 | 17.10 | $7,353.00 |
| Laura Friederike Brauers | CORP | 2010 | $340.00 | 21.50 | $7,310.00 |
| Hermann-Matthias Bröcker | LIT | 2010 | $335.00 | 18.00 | $6,030.00 |
| Adam Lavine | BFR | 2011 | $430.00 | 304.20 | $130,806.00 |
| Amy Reed | LIT | 2011 | $430.00 | 89.10 | $38,313.00 |
| Andrea Bidegaray | CORP | 2011 | $430.00 | 6.60 | $2,838.00 |
| Arezo S. Yazd | CORP | 2011 | $430.00 | 33.50 | $14,405.00 |
| Joshua I. Schlenger | LIT | 2011 | $430.00 | 123.10 | $52,933.00 |
| Matthew E. Schwartz | CORP | 2011 | $430.00 | 17.60 | $7,568.00 |
| Mei Dan | CORP | 2011 | $430.00 | 43.90 | $18,877.00 |
| Natasha Gopaul | CORP | 2011 | $430.00 | 92.30 | $39,689.00 |
| Raquel Kellert | LIT | 2011 | $430.00 | 109.50 | $47,085.00 |
| Ryan Martin | BFR | 2011 | $430.00 | 656.80 | $281,994.00 |
| Annabell Grupp | CORP | 2011 | $385.00 | 16.80 | $6,468.00 |
| Markus Stappmanns | CORP | 2011 | $335.00 | 184.30 | $61,740.50 |
| Emma Rubin | CORP | ** | $295.00 | 140.00 | $41,300.00 |
| James Nierinck | CORP | ** | $295.00 | 59.10 | $17,434.50 |
| Emma Robinson | CORP | ** | $255.00 | 46.00 | $11,730.00 |
| Hayley Lund | BFR | ** | $255.00 | 22.00 | $5,610.00 |
| Oliver Prakash-Jenkins | LIT | ** | $255.00 | 9.90 | $2,524.50 |
| Raphaele Bouniol | LIT | ** | $255.00 | 19.00 | $4,845.00 |
| Seunghi Ha | LIT | ** | $255.00 | 292.90 | $74,689.50 |
| Thomas Wheaton | CORP | ** | $255.00 | 64.40 | $16,422.00 |
| Tomasz Rodzoch | LIT | ** | $255.00 | 239.10 | $60,639.00 |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT‡ | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christopher Marks | LIT | ** | $250.00 | 82.40 | $20,087.50 |
| Rosemary Villar | BFR | ** | $255.00 | 131.50 | $33,532.50 |
| **TOTAL:** | | | | **37,051.10** | **$21,958,959.50** |

‡BFR – Business Finance & Restructuring, CORP – Corporate, LIT – Litigation, ** – UK Trainee Solicitor

| NAME OF PROFESSIONAL<br><br>Paralegals,<br>Clerks, Library Staff and Other<br>Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Kathleen Lee | BFR | $310.00 | 214.10 | $66,371.00 |
| Christopher A. Stauble | BFR | $290.00 | 647.20 | $187,688.00 |
| Suzanne Inglis | LIT | $290.00 | 116.00 | $33,640.00 |
| Snjezana Pesa | LIT | $275.00 | 285.60 | $78,540.00 |
| Barbara Frayle | CORP | $265.00 | 293.50 | $77,777.50 |
| Crystal McCray | LIT | $265.00 | 21.30 | $5,644.50 |
| Deborah C. Flinn | LIT | $265.00 | 13.50 | $3,577.50 |
| John A. Ellsworth | CORP | $265.00 | 158.90 | $42,108.50 |
| Lori A. Seavey | BFR | $265.00 | 338.70 | $89,755.50 |
| Michelle S. Moezzi | CORP | $265.00 | 11.00 | $2,915.00 |
| Nancy P. Cade | LIT | $265.00 | 9.80 | $2,597.00 |
| Odalys C. Smith | LIT | $265.00 | 139.70 | $37,020.50 |
| Peggy Jones | CORP | $265.00 | 61.50 | $16,297.50 |
| Sarah B. Roberts | BFR | $265.00 | 177.80 | $47,117.00 |
| Bill K. Chan | CORP | $250.00 | 9.80 | $2,450.00 |
| Camille A. George | LIT | $250.00 | 22.00 | $5,500.00 |
| Daniel Decker | LIT | $250.00 | 61.90 | $15,475.00 |
| Francheska Marquez | CORP | $250.00 | 21.00 | $5,250.00 |
| Herbert Chan | LIT | $250.00 | 22.10 | $5,525.00 |
| Jose Gutierrez | LIT | $250.00 | 7.00 | $1,750.00 |
| Toby T. Saviano | LIT | $250.00 | 7.50 | $1,875.00 |
| William H. Gordon | LIT | $250.00 | 81.50 | $20,375.00 |
| Cheryl Eng-Bendel | LSS | $235.00 | 6.90 | $1,621.50 |
| Laura Jewett | LSS | $235.00 | 15.00 | $3,525.00 |
| Ann M Scarpa | LIT | $230.00 | 173.50 | $39,905.00 |
| Dannan Fan | LIT | $230.00 | 17.70 | $4,071.00 |
| Duke Amponsah | BFR | $230.00 | 125.40 | $27,945.00 |
| Elizabeth E. Melson | LIT | $230.00 | 36.10 | $8,303.00 |
| Nicole K. Aliseo | BFR | $230.00 | 235.00 | $54,050.00 |
| Sean P. Devaney | CORP | $230.00 | 60.20 | $13,846.00 |

\* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  MC –  Managing Clerk,
LSS – Litigation Support Services,  LIB – Library

| NAME OF PROFESSIONAL Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Victoria A. Bennett | LIT | $230.00 | 23.70 | $5,451.00 |
| Peter Schell | CORP | $225.00 | 28.90 | $6,502.50 |
| Artur Robin | LSS | $220.00 | 9.70 | $2,134.00 |
| Jason E. Masurka | LSS | $220.00 | 6.00 | $1,320.00 |
| Julie B. Mukendi | LIT | $220.00 | 159.10 | $35,002.00 |
| Justin Benjamin | LSS | $220.00 | 46.00 | $10,120.00 |
| Lara Calabrese | LSS | $220.00 | 17.00 | $3,740.00 |
| Peter Nudelman | LSS | $220.00 | 7.00 | $1,540.00 |
| George Scopas | LSS | $215.00 | 13.00 | $2,795.00 |
| James R. Kubicz | LSS | $215.00 | 22.00 | $4,730.00 |
| MaryAnne Bollen | LSS | $215.00 | 9.40 | $2,021.00 |
| Scott Larangeira | LSS | $215.00 | 6.20 | $1,333.00 |
| Robert Condon | LIT | $210.00 | 112.30 | $23,541.00 |
| Andrea Wilmer | BFR | $200.00 | 233.10 | $45,500.00 |
| Donald Etienne | BFR | $200.00 | 331.40 | $62,630.00 |
| Mark Ribaudo | MC | $200.00 | 5.60 | $1,040.00 |
| Matthew Schoenfeld | BFR | $200.00 | 205.30 | $41,060.00 |
| Michael T. Tily | CORP | $200.00 | 21.50 | $4,300.00 |
| Pilar Villa | LIT | $200.00 | 69.10 | $13,820.00 |
| Sabrina M. Ialuna | LIT | $200.00 | 34.20 | $6,840.00 |
| Susana I. Lagasse | LIT | $200.00 | 80.40 | $16,080.00 |
| Edith Hwang | LIB | $195.00 | 5.30 | $1,033.50 |
| Merill Losick | LIB | $195.00 | 6.10 | $1,189.50 |
| Almir Lucevic | MC | $175.00 | 6.40 | $1,120.00 |
| Andrew H. Gern | BFR | $175.00 | 86.00 | $15,050.00 |
| Andrew H. Lyon | BFR | $175.00 | 450.30 | $78,802.50 |
| Anna Tumanova | LIT | $175.00 | 9.70 | $1,697.50 |
| Benjamin Levites | CORP | $175.00 | 6.30 | $1,102.50 |
| Courtney R. Buchanon | CORP | $175.00 | 30.40 | $5,320.00 |
| Daniel P. Sanchez | LIT | $175.00 | 32.30 | $5,652.50 |
| Danielle Z. Sawaya | CORP | $175.00 | 202.70 | $35,472.50 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  MC –  Managing Clerk,
LSS – Litigation Support Services,  LIB – Library

| NAME OF PROFESSIONAL Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Jacob A. Gerber | BFR | $175.00 | 210.70 | $36,872.50 |
| John Badman | CORP | $175.00 | 26.70 | $4,672.50 |
| Kyra M. Kaufman | CORP | $175.00 | 22.80 | $3,990.00 |
| Priya K. Ghodasara | BFR | $175.00 | 295.60 | $51,730.00 |
| R.T. Winston Berkman | CORP | $175.00 | 5.80 | $1,015.00 |
| Sara Jane Panfil | LIT | $175.00 | 29.90 | $5,232.50 |
| Sherri Bell | LIT | $175.00 | 97.10 | $16,992.50 |
| Gregory Bailey | MC | $170.00 | 4.90 | $756.50 |
| Lamia Sampson | CORP | $160.00 | 8.50 | $1,360.00 |
| Deidra M. Mulligan | LIB | $140.00 | 18.80 | $2,632.00 |
| Elio Bettini | LIB | $125.00 | 10.10 | $1,262.50 |
| Maximiliano Greco | LIB | $85.00 | 10.50 | $892.50 |
| **Total:** | | | **6,409.00** | **$1,467,864.50** |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  MC –  Managing Clerk, LSS – Litigation Support Services,  LIB – Library

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $919.71 | 16,863.30 | $15,509,463.50 |
| Associates | $592.66 | 37,051.10 | $21,958,959.50 |
| Paraprofessionals | $229.03 | 6,409.00 | $1,467,864.50 |
| **Blended Attorney Rate** | **$694.96** | | |
| **Total Fees Incurred** | | **60,323.40** | **$38,936,287.50** |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                           :       **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :       **08-13555 (JMP)**
:
Debtors.                   :       **(Jointly Administered)**
:
------------------------------------------------------------------x

**NINTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM JUNE 1, 2011 THROUGH SEPTEMBER 30, 2011**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("Weil"), attorneys for Lehman Brothers Holdings

Inc. ("LBHI"), and its affiliated debtors in the above-referenced chapter 11 cases (together with

LBHI, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), for its ninth

application, pursuant to sections 330(a) and 331 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for the interim allowance of compensation for professional services

performed by Weil for the period commencing June 1, 2011, through and including September

30, 2011 (the "<u>Ninth Compensation Period</u>"), and for reimbursement of its actual and necessary

expenses incurred during the Ninth Compensation Period, respectfully represents:

<u>**PRELIMINARY STATEMENT**</u>

1.    Weil's services during the Ninth Compensation Period continued to

substantially advance the administration of the Debtors' chapter 11 cases, yield major recoveries

for the Debtors' estates, preserve the value of some of the Debtors' largest remaining assets, and

meaningfully reduce the number and aggregate value of claims asserted in these cases.

Specifically:

- As a result of Weil's expertise and guidance, the Debtors achieved major milestones during the Ninth Compensation Period that paved the way for the consensual confirmation of the Third Amended Joint Chapter 11 Plan of LBHI and its Affiliated Chapter 11 Debtors (the "<u>Third Amended Plan</u>") – a result that was unimaginable in these enormously complicated and unprecedented chapter 11 cases. Specifically, Weil provided critical services to the Debtors to negotiate, prepare, document and finalize: the Second Amended Joint Chapter 11 Plan ("<u>Second Amended Plan</u>") filed on July 1, 2011; the Disclosure Statement (the "<u>Disclosure Statement</u>") for the Second Amended Plan, which was approved pursuant to section 1125 of the Bankruptcy Code on August 30, 2011; plan support agreements (the "<u>PSAs</u>") with 30 creditors asserting in excess of $100 billion in aggregate claims against the Debtors; and a stipulation with members of the Ad Hoc Group of Lehman Brothers Creditors and the Non-Con Plan Proponents, pursuant to which such creditors agreed to hold their alternative plans in abeyance pending confirmation of the Third Amended Plan.

- In addition to the above, with the assistance of a dedicated team of Weil attorneys located around the world, the Debtors were able to finalize settlement agreements with their affiliates in Hong Kong and Singapore, as well as Lehman Brothers Treasury Co. B.V., obviating the need for costly and time-consuming litigation and resolving billions of dollars in claims. Weil also counseled the Debtors in their negotiations with Lehman Brothers Inc. (Europe) and its affiliates, Lehman Brothers (Luxembourg) Equity Finance, S.A. (*en faillite*) and Lehman Brothers (Luxembourg S.A.) (in liquidation), Lehman Brothers Securities, N.V., Lehman's affiliates in Japan and certain German governmental entities, and drafted the related settlement agreements, all of which were finalized in October of 2011 and approved at the confirmation hearing.

- With Weil's counseling and active participation in negotiations and mediations, during the Ninth Compensation Period, the Debtors recovered more than $154 million through negotiated settlements with 48 counterparties in alternative dispute resolution ("<u>ADR</u>") proceedings, pursuant to an order Weil obtained approving ADR procedures for the Debtors' affirmative claims under their more than 10,000 derivatives contracts (the "<u>Derivative Contracts</u>"). Through the Ninth Compensation Period, Weil's services have enabled the

Debtors to recover more than $910 million for the Debtors' estates through negotiated settlements with 153 counterparties in 143 ADR matters.

- During the Ninth Compensation Period, the Debtors, with Weil's assistance, finalized settlement agreements with 10 of their 13 largest derivatives counterparties (eight in June and two more in September) regarding the allowance of their respective derivatives claims and the payment of amounts due by such counterparties to the Debtors in accordance with the derivatives claims framework. Pursuant to such settlement agreements, the primary derivatives claims of the settled counterparties have been allowed in the aggregate amount of approximately $7.8 billion and corresponding guarantee claims in approximately the same amount against LBHI, which represents a reduction of $7.3 billion from the $15.1 billion in primary claims originally asserted by such parties.

- Weil's multi-disciplinary real estate team continued to devote substantial resources to preserving, restructuring, and disposing of the Debtors' billions of dollars of residential and commercial real estate assets. This effort required Weil's involvement in more than 50 different projects and resulted in the consummation of several significant transactions, as described below in greater detail.

- Weil obtained orders from the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") granting 46 omnibus objections to claims, reducing, reclassifying, disallowing and/or expunging more than 4,400 proofs of claim asserting more than $11 billion (plus unliquidated amounts) against the Debtors. Weil prepared and filed 36 additional omnibus objections seeking to reduce, reclassify, disallow and/or expunge approximately 1,750 claims asserting more than $12 billion (plus unliquidated amounts) against the Debtors.

2. As the Debtors' lead bankruptcy attorneys, Weil is responsible for the daily administration of these cases. During the Ninth Compensation Period, Weil was required to review and in many instances respond to the more than 3,275 motions, notices, applications, objections, briefs, orders, and other pleadings filed in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented. Weil drafted and filed over 560 motions, objections, replies, applications, stipulations or other pleadings on behalf of the Debtors. In addition, Weil prepared and filed an amended complaint, a memorandum of law, two motions to dismiss, a response to an expedited motion for determination, a motion to stay an adversary proceeding and many other pleadings in the 109 adversary proceedings that were pending during the Ninth Compensation Period (the "<u>Adversary Proceedings</u>"). Weil also

prepared, reviewed and responded to numerous mediation statements in the over 100 ADR matters that were pending during the Ninth Compensation Period. Each of these filings, and the 285 filings that Weil reviewed in the SIPA Proceeding (defined below), required careful consideration and substantial resources from Weil.

3.    Weil's multidisciplinary teams supported the day-to-day management and strategic long-term administration of the Debtors' diverse assets around the world. Members and associates in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax Departments worked closely with the Debtors' Real Estate, Private Equity and Principal Investment, Derivatives, Bank, and Loan and Investment teams on transactions across North and South America, Europe and Asia.

4.    Since the commencement of these cases, Weil has coordinated its efforts with Alvarez and Marsal North America LLC ("A&M"), the Debtors' restructuring advisors, the professionals of the official committee of unsecured creditors (the "Creditors' Committee"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), the SIPA Trustee (defined below), the Examiner (defined below), the foreign administrators appointed to administer the insolvency proceedings of the Debtors' foreign affiliates, and a variety of other constituents to ensure that the interests of the Debtors were adequately represented and all of the Debtors' constituents were apprised of major developments.

5.    Weil's efforts to advise and represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during the Ninth Compensation Period were actual and necessary and of substantial benefit to the Debtors' estates and their creditors. In the perspective of the complexity and scale of these cases, Weil's charges for professional services performed and expenses incurred are reasonable under the applicable standards. Weil

respectfully requests that the Bankruptcy Court grant this application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Ninth Compensation Period as requested.

## **BACKGROUND**

6.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with the Bankruptcy Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.       On October 8, 2008, the Debtors filed an application to employ Weil as their attorneys.  No objections were filed to Weil's retention and, pursuant to an order, dated November 21, 2008 [ECF No. 1660], the Debtors were authorized to retain Weil as their attorneys to render legal services in the prosecution of their chapter 11 cases.   Weil filed affidavits in support of its retention on March 4, 2009 [ECF No. 2985], August 12, 2009 [ECF No. 4779], March 30, 2010 [ECF No. 7904], July 21, 2010 [ECF No. 10358], September 20, 2010 [ECF No. 11466], October 26, 2010 [ECF No. 12302], and January 28, 2011 [ECF No. 14182].

8.       On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

9.       On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman

Brothers Inc. ("LBI").  James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to administer LBI's estate under the SIPA (the "SIPA Proceeding").

10.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner (the "Examiner") and by order, dated January 20, 2009, the Bankruptcy Court approved the U.S. Trustee's appointment of the Examiner.  On March 11, 2010, the Examiner issued his report pursuant to section 1106(b) of the Bankruptcy Code.  On July 13, 2010, the Bankruptcy Court entered an order discharging the Examiner and his professionals.

11.    On January 24, 2011, the Bankruptcy Court entered an order modifying the composition of the fee committee (the "Fee Committee") that had previously been appointed in these chapter 11 cases [ECF No. 14117].  On April 14, 2011, the Bankruptcy Court entered an order approving a revised fee protocol (the "Fee Protocol") setting forth certain procedures and guidelines with respect to the fees and expenses of retained professionals in these cases [ECF No. 15998].

12.    Weil filed applications for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and the Bankruptcy Court entered the orders as to such applications, on:

| Application | Order |
|---|---|
| April 13, 2009 [ECF No. 3343] | August 13, 2009 [ECF No. 4795] |
| August 14, 2009 [ECF No. 4825] | April 9, 2010 [ECF No. 8205]<br>April 9, 2010 [ECF No. 8207] |
| December 14, 2009 [ECF No. 6205] | April 9, 2010 [ECF No. 8218] |
| April 16, 2010 [ECF No. 8395] | September 7, 2010 [ECF No. 11186] |
| August 16, 2010 [ECF No. 10791] | May 19, 2011 [ECF No. 16979] |
| December 15, 2010 [ECF No. 13496] | October 27, 2011 [ECF No. 21345] |
| June 2, 2011 [ECF No. 17347] | Application Pending |
| August 15, 2011 [ECF No. 19269] | Application Pending |

13.    The Debtors have advised Weil that all quarterly fees due to the U.S. Trustee during the Ninth Compensation Period have been paid.  The Debtors filed monthly

operating reports on July 21, 2011 [ECF No. 18714], August 23, 2011 [ECF No. 19454], September 21, 2011 [ECF No. 20182], October 24, 2011 [ECF No. 21188] and October 24, 2011 [ECF No. 21189] that are relevant to the Ninth Compensation Period.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

14.     Weil requests a further allowance of interim compensation for professional services performed during the Ninth Compensation Period in the amount of $38,936,287.50 and for reimbursement of expenses incurred in connection with the performance of such services in the amount of $930,986.57.   These amounts include certain charges and expenses incurred prior to the Ninth Compensation Period which were to be, but were not, paid by third parties for which the Debtors are primarily responsible.[1]

15.     During the Ninth Compensation Period, Weil attorneys and paraprofessionals expended a total of 60,323.40 hours in connection with the necessary services performed.   Of the aggregate time expended, 16,863.30 recorded hours were expended by partners and counsel of Weil, 37,051.10 recorded hours were expended by associates, and 6,409 recorded hours were expended by paraprofessionals of Weil.   To the extent that time or disbursement charges for services performed or disbursements incurred relate to the Ninth

---

[1] As described in Weil's prior applications, in certain instances, Lehman may be entitled to reimbursement from third parties, or third parties may be obligated to pay Lehman's professionals directly, for legal services provided and expenses incurred in connection therewith.  For example, in many instances, borrowers may be responsible for payment of Lehman's costs and expenses in connection with Lehman's role as a lender or agent.  After consultation and upon agreement with the U.S. Trustee, Weil endeavored to segregate legal fees and expenses that may be subject to payment by third parties, and such fees and expenses may not be contained within this Application.  Based upon the agreement with the U.S. Trustee, for each matter in which the Debtors and/or Lehman may be entitled to reimbursement from third parties, Weil has opened, or will open, a new billing account.  Weil has sought and will seek payment from third parties for all applicable fees and expenses charged to these accounts, which will not be subject to any holdback.  Weil has not, and is not required to, submit monthly fee statements to the Debtors or Lehman for such matters unless and until such third-parties fail to pay the amounts due, at which point Weil would seek payment from the Debtors, but will reflect amounts charged and payments received on account of such matters, in summary fashion, in interim fee applications.  References to the Ninth Compensation Period made herein shall include prior periods in which Weil incurred fees and expenses with respect to which Weil has not previously sought Court approval.

Compensation Period, but are processed subsequent to the preparation of this application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.   In accordance with the Administrative Order, Weil received payments totaling $23,702,482.77 for the Ninth Compensation Period, consisting of $23,123,035.80, representing 80% of the charges, and $579,446.97, representing 100% of the expenses invoiced for the Ninth Compensation Period.   As of December 15, 2011, Weil had not yet received payment for either the fees or the expenses invoiced for September 2011.

16.    This application has been prepared in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy Court on April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No. 3102] (the "Administrative Order," and together with the Local Guidelines and the UST Guidelines, the "Guidelines").   Further, Weil has endeavored to comply with the directions provided by the Fee Committee made in connection with Weil's prior applications.   Pursuant to the Fee Protocol, the Debtors will provide a copy of this application to the Fee Committee.

17.    Weil's hourly charges are billed based on Weil's existing billing rates and procedures in effect during the Ninth Compensation Period.   The hourly charges for the services

performed by Weil professionals and paraprofessionals are at the same rates Weil charges for such services performed in comparable bankruptcy and non-bankruptcy related matters. The hourly charges are based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters.

18.    In the regular course of its business Weil adjusts its billing rates from time to time. The customary hourly rates in Weil's domestic offices during the Ninth Compensation Period were $760 and $1,075 per hour for members and counsel, between $430 and $750 for associates, and from $85 to $310 for paraprofessionals. Applicable charges in Weil's foreign offices, subject to change from time to time, range from $745 and $1,072 for members, and from $250 to $865 for associates. Weil has voluntarily capped its hourly charges at $1,000 per hour for members and counsel in these chapter 11 cases. Weil establishes its hourly charges after analysis of, among other things, the hourly charges of comparable law firms and the costs of maintaining its professionals and other staff members and its business operations. As is standard in the profession, the charges for individual attorneys may be adjusted annually to reflect such attorneys increased seniority and experience.

19.    During the Ninth Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly charges ranging from $430 to $1,000 per hour for domestic attorneys and $250 to $1,000 for foreign attorneys.[2] Allowance of compensation in the amount requested would result in a blended hourly billing charge of approximately $694.96 (based on 53,914.40 recorded hours for attorneys at Weil's regular billing rates in effect at the time of the performance of services).

---

[2] Not including staff attorneys or contract attorneys.

20.      Weil consistently monitors its charges and expenses before and after the submission of monthly fee statements for possible errors or charges that should be reduced.  As a result, prior and subsequent to the submission of monthly fee statements for the Ninth Compensation Period, Weil reduced its charges by $852,720.50 and its expenses by $118,307.84, for a total of $971,028.34 in voluntary reductions.  Weil will continue to diligently monitor its charges and expenses and, where appropriate, make applicable reductions.  As of the date hereof, Weil has voluntarily reduced its charges and expenses requested for reimbursement by $6,037,091.37 in aggregate since the Commencement Date.

21.      There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.  Except as explained immediately below, during the Ninth Compensation Period, other than pursuant to the Administrative Order, Weil received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

22.      During the Ninth Compensation Period, Weil has received payment in the aggregate of approximately $860,000, from third parties related to representations of Lehman entities (as described in footnote 1) listed on <u>Exhibit A</u> hereto.  Weil may have incurred, but not yet received payment from third parties for additional charges and expenses in connection with these and other matters.  To the extent any third party fails to reimburse Weil for such charges or expenses, however, Weil is authorized to seek reimbursement from the Debtors or Lehman in accordance with the Administrative Order.[3]

---

[3] As noted in footnote 1 above, based upon an agreement with the U.S. Trustee, Weil is not required to maintain or provide detailed task codes or billing increments for such engagements.

23.     As of the date hereof, Weil has a remaining credit balance in favor of the Debtors for future professional services to be performed, and expenses to be incurred, in the amount of $4,422,608.80.[4]   Weil will file further disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement Date results in charges to such credit.

24.     Annexed hereto as <u>Exhibit B</u> is a certification regarding compliance with the Guidelines.

25.     Pursuant to the UST Guidelines, the Summary Sheet filed in connection with this Application includes a schedule of Weil professionals and paraprofessionals who have performed services for the Debtors during the Ninth Compensation Period, the capacities in which each such individual is employed by Weil, the legal department and discipline in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and charges billed therefor.

26.     Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which Weil is seeking reimbursement and the total amount for each such expense category.   An itemized schedule of all such expenses will be provided to the Debtors, the Bankruptcy Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee.

27.     Annexed hereto as <u>Exhibit D</u>, pursuant to the UST Guidelines, is a summary of Weil's time records billed during the Ninth Compensation Period using project categories hereinafter described.   Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter

---

[4] Weil's previous fee application inadvertently listed the remaining credit balance in favor of the Debtors as $4,431,478.82 instead of $4,422,608.80, which it has been since the beginning of the Chapter 11 Cases.

11 cases.  Copies of these computerized records will be furnished to the Debtors and, subject to

redaction or modification for the attorney-client privilege where necessary to protect the

Debtors' estates, the Bankruptcy Court, the attorneys for the Creditors' Committee, the U.S.

Trustee, and the Fee Committee in the format specified by the UST Guidelines.

### SUMMARY OF SERVICES PERFORMED BY
### WEIL DURING THE NINTH COMPENSATION PERIOD

28.    The Debtors achieved a number of significant milestones in their chapter

11 cases during the Ninth Compensation Period, including the approval of the Disclosure

Statement, the formulation, negotiation and acceptance of the global settlement proposed by the

Debtors, and the settlement of numerous disputes with the Debtors' foreign affiliates involving

hundreds of billions in claims asserted against the Debtors.  Weil was instrumental in the success

of each of these achievements and countless others that helped to maximize the value of the

Debtors' assets, protect the Debtors' interests in the formal and informal legal proceedings

involving the Debtors or their controlled subsidiaries, and ensure the efficient administration of

the Debtors' chapter 11 cases.  Descriptions of some of the more significant tasks performed by

Weil during the Ninth Compensation Period are set forth below.

29.    <u>Third Amended Plan and Disclosure Statement</u>.  Throughout the Ninth

Compensation Period, Weil worked in tandem with the Debtors, led by A&M, to pursue the

Debtors' objective of a consensual confirmation and provided around-the-clock services to the

Debtors to tackle every task leading up to confirmation.  Most significantly, Weil advised the

Debtors and participated in intensive plan negotiations with the Debtors' stakeholders over the

provisions of the Third Amended Plan drafted by Weil.  The Plan negotiations included a series

of meetings in June 2011 among the Debtors and their major stakeholders at Weil's offices.  The

meetings were attended by over 125 individuals, including principals, attorneys and financial

advisors for over 40 of the Debtors' major stakeholders.  Weil obtained confidentiality

agreements with each of the participating creditors and worked side-by-side with the Debtors'

other professionals, the professionals of the Creditors' Committee and the other participants

throughout the meetings to achieve the Debtors' objectives relating to the confirmation of the

Third Amended Plan.

30.    After agreements in principle were reached, Weil drafted the Second

Amended Plan and Disclosure Statement in coordination with each of the many settling creditors

to document the settlement.  Multiple drafts of documents were prepared by Weil and

painstakingly negotiated with each of the settling creditors.  Concurrently, Weil also took the

lead in proposing and negotiating PSAs with the Debtors' stakeholders.  The PSAs were critical

in achieving a consensual confirmation process and avoiding costly and protracted litigation.  On

July 1, 2011, the Debtors filed the Second Amended Plan with the support of 30 institutions who

had executed and delivered PSAs to the Debtors asserting aggregate claims against the Debtors

in excess of $100 billion.

31.    Following the filing of the Second Amended Plan and Disclosure

Statement, the Debtors, represented by Weil, pursued, and ultimately executed bilateral

settlement agreements with, 87 of their Foreign Affiliates that were approved by the Bankruptcy

Court at the confirmation hearing.  With Weil's guidance and global services made available to

the Debtors, the Debtors entered into comprehensive settlements agreements with their affiliates

in Hong Kong and Singapore, as well as Lehman Brothers Treasury Co. B.V., in August 2011.

In addition, during the Ninth Compensation Period, Weil continued to advise and represent the

Debtors in negotiating global settlements with the Debtors' affiliates in Japan, Luxembourg, the

Netherlands-Antilles, and the United Kingdom as well as three additional settlement agreements

with Deutsche Bundesbank ("<u>Bundesbank</u>"), Bundesverband deutscher Banken e.V. ("<u>BdB</u>"),

and Entschädigungseinrichtung deutscher Banken GmbH ("<u>EdB</u>"), which were finalized and

filed with the Debtors' Plan Supplement on October 25, 2011.  As a result of  substantial efforts

of Weil and the Debtors' other professionals, the bilateral settlements (the "<u>Bilateral</u>

<u>Settlements</u>") resulted in reductions in claims asserted against the Debtors by an aggregate

amount of $295 billion.

      32.      While the Bilateral Settlements share some common elements, each of the

Bilateral Settlements is unique, presented highly complex legal and factual issues and was

achieved after intense negotiations.  The most significant claims resolved by the Bilateral

Settlements were guarantee claims asserted against LBHI.  With Weil's guidance and legal

advice, the Debtors developed and pursued strong challenges and legal arguments against the

guarantee claims in order to negotiate substantial reductions.  Weil drafted and exchanged

multiple drafts of each of the 12 comprehensive settlements with the various attorneys

representing the Debtors' counterparties.  In addition, as the agreements were documented and

finalized, multiple issues arose on a daily basis that required Weil's wide-ranging experience and

expertise, including bankruptcy law issues, general corporate law matters, tax issues and issues

of foreign law.  Each of the Foreign Affiliates and German governmental entities also agreed to

support the Third Amended Plan.

      33.      In addition to the above, after the filing of the Second Amended Plan,

Weil devoted substantial resources to revising, finalizing and seeking approval of the Debtors'

proposed Disclosure Statement, consisting of 144 pages exclusive of exhibits and attachments.

From July 1, 2011, when the Debtors filed their proposed Disclosure Statement, until the hearing

on the adequacy of the Disclosure Statement on August 30, 2011, Weil assisted the Debtors in

reviewing formal and informal objections that were raised by certain claimants, and in conferring with many of the potential objectors to resolve their concerns through modifications to the Disclosure Statement. After the objection deadline, Weil represented the Debtors in responding to each of the 18 objections that were ultimately filed and to the numerous informal objections that were raised, and in making further modifications to the Disclosure Statement in order to resolve as many objections as reasonably possible.

34. After the Disclosure Statement was approved by the Bankruptcy Court, Weil immediately began assisting the Debtors in preparing to solicit acceptances to the Third Amended Plan. As part of this process, Weil counseled and assisted the Debtors in reviewing claims in order to determine the proper ballots that should be sent to each claimant, entering into a multitude of voting stipulations with creditors that held significant claims in advance of two key deadlines: the September 16, 2011 deadline for objecting to claims for voting purposes, and the October 7, 2011 deadline for temporary allowance request motions, and generally coordinated with the Debtors to ensure compliance with the solicitation procedures order entered by the Bankruptcy Court.

35. During the month of September, Weil also advised the Debtors in the initial stages of preparing their Plan Supplement, a document that, when finalized in October, exceeded 1,000 pages. In particular, as part of this process, Weil amended, drafted and revised most of the certificates of incorporation and by-laws for each of the Debtors pursuant to section 7.7 of the Third Amended Plan. Moreover, Weil assisted the Debtors in their review of thousands of executory contracts to determine whether the Debtors should assume or reject such contracts pursuant to the Third Amended Plan. With the assistance of Weil, the Debtors were able to finalize and propose the terms of a plan trust agreement, the form of Debtor allocation

agreement, and various amendments to the Third Amended Plan, all of which were included in the Plan Supplement.  Weil also played a critical role in preparing the following documents included in the Plan Supplement: (i) several settlement agreements among the Debtors and Non-Controlled Affiliates, (ii) several settlement agreements among the Debtors and certain third-party creditors, (iii) an updated recovery analyses for Structured Asset Securities Corporation and Lehman Brothers Commercial Corporation Inc., (iv) a schedule of claims by Debtor-controlled entities, (v) a reconciliation of ownership assets, and (vi) a list of Debtors and Debtor-controlled entities to be dissolved or merged pursuant to the Plan.

36.    <u>Derivatives</u>.    As has been the case since the Commencement Date, during the Ninth Compensation Period, Weil devoted substantial resources to implementing the Debtors' global strategies to maximize the value of their derivatives assets.  As widely noted, the volume, size and complexity of the Debtors' derivative contracts are unprecedented in the context of a chapter 11 case and will have an enormous impact on recoveries to creditors.

37.    During the Ninth Compensation Period, Weil continued to devote significant resources and attention to the Debtors' efforts in resolving the claims of their largest derivatives counterparties with whom the Debtors had not yet reached settlements.  Weil participated in multiple group and individual meetings among the Debtors and such counterparties and their professionals regarding legal principles and disputes underlying the counterparties' derivatives claims.  With the significant involvement and contributions of the Weil team, the Debtors were able to reach a settlement with eight institutions asserting enormous derivatives claims against the Debtors in June 2011 and then in September 2011 with Bank of America, N.A. ("<u>BOA</u>") and Merrill Lynch International and certain of its affiliates (the "<u>Merrill Counterparties</u>").  Weil attorneys negotiated and drafted each of these settlement agreements.

These settlements resolved billions of dollars of derivatives direct claims and derivatives guarantee claims asserted by the counterparties against certain of the Debtors and, in some cases, resulted in agreements to pay amounts to the Debtors.  Further, BOA agreed to withdraw its pending appeal of the Bankruptcy Court's order holding that BOA's setoff of amounts owing by LBHI to BOA against approximately $500 million of LBHI funds was a violation of the automatic stay.  Each of these creditors also entered into PSAs and agreed to support confirmation of the Third Amended Plan.  The settlements and the PSAs represent significant achievements in these chapter 11 cases, allowed the Debtors' to achieve a consensual confirmation and also eliminated significant impediments to making meaningful distributions to creditors because, absent such settlements, the Debtors would have had to maintain enormous reserves for such claims.

        38.      Throughout the Ninth Compensation Period, Weil continued to represent the Debtors' interests in various other disputes, including those related to invalid contract terminations, counterparties' non-performance, and assertions of rights of setoff.  These issues were raised both informally in negotiations, and formally, in ADR and in pleadings filed with the Bankruptcy Court.  Weil devoted significant time and effort, in particular, to representing the Debtors in affirmative ADR matters to maximize the Debtors' recovery on their derivative contracts with recovery potential.  During the Ninth Compensation Period, over 100 ADR matters were pending, requiring a large team of Weil attorneys to address complex legal and factual issues, including disputes over valuation of termination payments due under Derivative Contracts, *ipso facto* provisions, triangular setoffs and the scope of the safe-harbor provisions.  Each ADR is a mini-trial that requires an efficient and targeted effort from Weil.  Weil was

required to coordinate its efforts with those of the Creditors' Committee's and the Debtors' other professionals.

39.     In addition, Weil prepared and served 13 subpoenas on derivative counterparties pursuant to Bankruptcy Rule 2004 during the Ninth Compensation Period and negotiated discovery schedules to facilitate the exchange of information and establish parameters for potential settlements.  Weil has devoted, and expects to continue to devote, substantial resources to maximizing the value of the Debtors' derivatives assets for the benefit of the Debtors' estates.

40.     <u>Real Estate</u>.  Throughout the Ninth Compensation Period, Weil continued to provide services to protect the Debtors' interests in the California-based chapter 11 cases (the "<u>SunCal Cases</u>") of Palmdale Hills Property, LLC and its affiliated debtors (collectively, the "<u>SunCal Debtors</u>").  Prior to the Commencement Date, certain of LBHI's Debtor and non-Debtor subsidiaries provided over $2 billion in senior secured financing (the "<u>SunCal Financing</u>") to the SunCal Debtors, which was used to acquire and develop residential real estate projects in California.  Following the commencement of the SunCal Cases, the SunCal Debtors commenced an adversary proceeding seeking, among other things, to subordinate Lehman's claims relating to the SunCal Financing.  In addition, the facts and circumstances of the Debtors' chapter 11 cases and the SunCal Cases resulted in a number of other disputes that required Weil to represent Lehman both in the Debtors' chapter 11 cases and in the SunCal Cases in order to preserve Lehman's interests in the SunCal Debtors' respective estates.  Lehman has filed plans of reorganization in almost all of the SunCal Cases (the "<u>Lehman SunCal Plans</u>").

41.     With Weil's help, Lehman was also able to obtain approval of its proposed disclosure statements in connection with the Lehman SunCal Plans and to proceed with the

solicitation process for the Lehman SunCal Plans.  Weil spent a considerable amount of time during this period providing support to Lehman's local bankruptcy counsel with respect to the solicitation process for the Lehman SunCal Plans, participating in exhaustive discovery, negotiating and documenting settlements with certain interested parties, preparing for a contested confirmation hearing, pursuing claims objections against particular creditors and responding to additional claims and actions filed by the SunCal Debtors (including a state court action seeking breach of contract damages against certain Lehman entities and a fraudulent transfer action with respect to a portion of the SunCal Financing).  Weil also spent time and resources dealing with contract assumptions issues and various property-related matters relating to certain assets of the SunCal Debtors including Ritter Ranch, Emerald Meadows and Marblehead projects, among others.

42.    Weil also represented a partnership 90% owned by LBHI in the sale of the Toy Building, an 800,000 square foot office building located at 200 Park Avenue in New York City.  In a single month, Weil negotiated and drafted a binding sales contract with a real estate fund managed by JP Morgan Asset Management in order to enable LBHI and the partnership to lock in favorable pricing.  The sale transaction, which closed in September, valued the building in excess of $700 million.  The Debtors, with Weil's assistance, had obtained Bankruptcy Court approval to restructure their interests in the Toy Building in December 2009.

43.    During the Ninth Compensation Period, Weil also negotiated and drafted a contract for the sale of LCPI's 78% partnership interest in a portfolio of ten office buildings in Rosslyn, a major office submarket in the Washington, DC area.  In addition to the seller and the buyer, multiple parties joined in the complex sales contract prepared by Weil.  Weil also prepared an escrow agreement addressing the partnership's contingent liabilities to tenants post-

closing, and obtained Bankruptcy Court approval of the sales contract, which valued LCPI's

partnership interest (net of loans to be assumed by the buyer) in excess of $400 million.

44.     Prior to the Commencement Date, LBHI owned certain fixed and floating

rate reverse home equity conversion mortgage loans.  LBHI sold participation interests in these

loans, which interests were then securitized pursuant to a Government National Mortgage

Association ("Ginnie Mae") program.  LBHI, as the issuer of such securitizations, retained

certain obligations with respect to the loans, including the obligation to fund certain additional

draws under the reverse mortgages and to repurchase or satisfy the participation interests in the

loans.  LBHI estimated that these funding obligations alone could total over $75 million.

Through negotiations with both MetLife Bank, N.A. ("MetLife") and Ginnie Mae, Weil assisted

LBHI in completing the sale to MetLife of (i) the unsecuritized balances of the securitized loans

and (ii) the loans containing participation interests that LBHI had repurchased in accordance

with the Ginnie Mae program.  LBHI received approximately $40 million from MetLife in

connection with this sale and was relieved of any further funding obligations related to these

loans.

45.     During the Ninth Compensation Period, Weil continued to serve as the

Debtors' lead counsel in the chapter 11 cases of Moonlight Basin Ranch L.P., *et al.* (the

"Moonlight Debtors") in order to protect the Debtors' interests in such cases.  The Moonlight

Debtors' chapter 11 plan was confirmed on October 26, 2011.  With Weil's assistance, the

Debtors negotiated, entered into, and obtained court approval of a settlement agreement for

Lehman's acquisition of the Moonlight Basin Resort, an 8,000 acre ski area in Big Sky,

Montana, in satisfaction of an aggregate principal amount of $170 million in senior and

mezzanine debt (collectively, the "Moonlight Loans") made by Lehman prior to the

Commencement Date.  This settlement resolves various claims made by the borrowers and

guarantors under the Moonlight Loans against Lehman.  In connection with such settlement,

Weil participated in numerous meetings among the Debtors and the Moonlight Debtors and their

professionals and drafted the settlement agreement and various other pleadings and briefs in

connection therewith.  The closing for this transaction is expected to occur in December 2011.

46.    Weil also obtained approval of a settlement agreement among LBHI,

LCPI and State Street Bank and Trust Company ("State Street") relating to certain claims State

Street asserted against LBHI and LCPI based on LCPI's alleged default under a Master

Repurchase Agreement.  Pursuant to the settlement agreement (i) State Street's asserted claims

against LBHI and LCPI were reduced and allowed as a general, unsecured claims each in the

amount of $400 million, a reduction of approximately 37%, (ii) State Street agreed to withdraw

an adversary proceeding captioned *State Street Bank & Trust Co. v. Lehman Commercial Paper

Inc.* [Adv. Pro. No. 08-01743], and (iii) State Street and the Debtors provided each other with

mutual releases.  This settlement allowed LBHI and LCPI to resolve their disputes with State

Street and avoid the expense and risk inherent in litigating State Street's claims.

47.    Claims Resolution.  During the Ninth Compensation Period, Weil devoted

substantial time and effort to assisting the Debtors in their analysis of the thousands of proofs of

claim filed in these chapter 11 cases and, where appropriate, objecting to such claims.  The

claims objection process is an enormous undertaking that has required significant dedication by a

team of Weil professionals that coordinates with the Debtors to process, review, analyze, and

identify thousands of claims for objection and to prepare, prosecute, and secure orders granting

the Debtors' objections to same.

48.     As noted above, during the Ninth Compensation Period, Weil obtained orders granting 46 omnibus objections with respect to more than 4,400 claims and filed 36 additional objections with respect to approximately 1,750 claims.  These accomplishments alone exceed the scope of the entire claims process in the life of most any chapter 11 case.  During the Ninth Compensation Period, Weil also performed factual and legal research to advance or resolve omnibus objections that were filed in previous compensation periods.  Additionally, Weil further analyzed and identified additional claims that the Debtors intend to object to in the future.

49.     Weil's progress on the claims resolution process during the Ninth Compensation Period was critical to the success of the conformation process for the Third Amended Plan.  By eliminating invalid, misclassified and duplicative claims, Weil and the Debtors were able to substantially improve the accuracy of the recovery analysis that was included with the Disclosure Statement and simplify the process of soliciting votes for the Third Amended Plan.  Further, the continued success of the claims resolution process is expected to expedite the Debtors' efforts with respect to claims estimation – allowing distributions to creditors to commence on a timely basis.

50.     Weil closely coordinated its efforts with the Debtors' Bankruptcy Court-approved claims and noticing agent, to provide notice to all claimants whose claims were subject to objections.  For each omnibus objection, Weil designated a specific attorney whom claimants could contact with any questions or concerns.  A team of Weil attorneys responded to hundreds of informal inquiries and addressed formal objections of claimants.  Substantial attorney time and resources were spent responding to claimant inquiries and addressing issues raised, resulting in a significant reduction in the number of formal responses that were ultimately filed and prosecuted by parties in interest.

51.     Other professional services rendered by Weil during the Ninth Compensation Period, organized in accordance with Weil's project codes, are described below.

a.     Case Administration Issues

(i)    General Case Strategy Meetings

- Conducted meetings, conferences, and teleconferences regarding the chapter 11 case strategy, including: the preparation of and responses to various motions and applications; the Third Amended Plan and the Disclosure Statement; business issues, including numerous transactions of the Debtors and their non-Debtor affiliates; general litigation strategy in connection with the Debtors' various adversary proceedings and non-bankruptcy related litigations; governmental and other investigations; corporate governance; inter-company issues, and related international issues.

(ii)   Project Monitoring/Court Calendar & ECF Maintenance

- Reviewed, analyzed, monitored and distributed pleadings in the Debtors' 23 chapter 11 cases, three related chapter 15 cases, nine appeals, and numerous adversary proceedings and non-Bankruptcy Court litigations pending during the Ninth Compensation Period to the appropriate Lehman and Weil teams; and
- maintained work-in-progress reports and case calendars and distributed same to Lehman and Weil teams to ensure coordination and coverage.

(iii)  Hearings and Court Communications

- Prepared for and participated in numerous hearings, including the Disclosure Statement hearing on August 20, and omnibus Bankruptcy Court hearings on June 15, July 20, August 17, and September 14, and non-omnibus hearings in the Bankruptcy Court and other courts on June 2, 8, 9, 12, 23 and 30, July 8, 12, 15, 21, 22, 26-29, August 9, 25 and 30, and September 7 and 23, 2011;
- participated in additional telephonic and in-person conferences with the Bankruptcy Court and other courts;
- coordinated regularly with the Bankruptcy Court and parties in interest, including the U.S. Trustee and attorneys for the SIPA Trustee, regarding hearings and agenda items and prepared hearing agendas in accordance with the Bankruptcy Court's orders and requests; and
- prepared summaries of significant pleadings considered at various hearings and distributed same to Lehman and Weil teams to ensure coordination.

b.    Constituency and Coordination-Related Issues

(i)    Interested Party Communications/Website/Lehman Team Hotline

- Maintained a "Lehman Team Hotline" and responded to hundreds of telephone and email inquiries from creditors and other parties in interest, including shareholders, secured and unsecured creditors and potential purchasers of assets regarding Debtors' chapter 11 cases.

(ii)    Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- Prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding, among other things, the status of the chapter 11 cases, the Third Amended Plan and related issues, pending and potential causes of action, various asset-disposition and other protocols, various document demands, asset sales, loan restructurings, derivatives transactions, inter-company and international issues.

(iii)    LBI/SIPA Coordination and Issues

- Conducted meetings and teleconferences with the Debtors' and the SIPA Trustee's professionals to address numerous issues, including reconciling customer claims and non-customer claims of the Debtors' domestic and foreign affiliates;
- prepared for and participated in LBI global settlement meetings, reviewed documents and prepared global settlement counter proposals;
- participated in meetings with the Debtors, their professionals, the SIPA Trustee, its professionals, and the Creditors' Committee and its professionals regarding a settlement agreement between LBI and JPMorgan Chase Bank, N.A. related to the compromise of certain claims;
- participated in meetings and teleconferences with counsel to SIPA Trustee regarding settlement with Bank Leumi;
- participated in meetings and reviewed documents regarding Letters of Determination and drafted responses to same;
- reviewed materials related to "PIK" notes issued by Lehman ALI Inc. to LBI and participated in meetings with the Debtors regarding the valuation of same;
- reviewed, revised, filed and obtained authorization for joint motion to approve settlement agreement between LBHI and the SIPA Trustee regarding unclaimed funds in the court registry for the State of New York and participated in meetings and teleconferences regarding same;
- conducted legal and factual research, analyzed documents, and drafted memoranda regarding various claims issues, including the effect of broker-dealer actions on status of customer property, customer status of third party collateral claims, SIPA definition of "any indebtedness," net equity calculations, recoupment and setoff of subordinated claims, SIPA

treatment of futures contracts, restricted securities, and the definition of customer under SIPA; and

▪ reviewed and monitored case docket for the SIPA proceeding.

c.     General Business Operation Issues

(i)   Cash Management

▪ Prepared, filed and obtained Bankruptcy Court approval of stipulation with Citibank N.A. ("Citibank") regarding (i) transfer and turnover of certain deposits, (ii) preservation of Citibank's setoff rights, if any, in respect of deposits transferred or turned over, (iii) maintenance of certain deposit accounts, (iv) indemnification of Citibank in respect of any third party claims arising from the turnover of deposits, and (v) payment of account fees;

▪ obtained Bankruptcy Court approval of stipulation, agreement and order between LBHI and First National Bank with regards to certain deposit accounts and participated in meetings regarding same; and

▪ Participated in conferences and teleconferences with the Debtors, the Creditors' Committee, the U.S. Trustee, the SIPA Trustee's professionals and various parties-in-interest regarding the Debtors' cash management systems, prepetition deposits, misdirected wire transfers and setoffs and conducted legal research and analysis relating to the same;

(ii)   Insurance Issues

▪ Participated in meetings and teleconferences and prepared motion for authorization to (i) expand the scope of legal costs that the Debtors may advance to former employees, and (ii) advance legal costs to current officers and directors;

▪ prepared and filed several motions for modification of the automatic stay to allow advancement of defense costs and/or payment of settlement amounts under the 2007-2008 Directors and Officers insurance policies;

▪ prepared and filed statement in support of motion for an order modifying the automatic stay to allow payment of a judgment under the Debtors' Director and Officer insurance policies issued; and

▪ reviewed and responded to other issues regarding the Debtors' insurance policies and coverage.

(iii)   Employee/ERISA/Benefits/Pension Issues

▪ Advised the Debtors' New York and London teams regarding UK pension issues, including with respect to preparation for, and participation in, two sets of UK proceedings: (i) appeal to the UK Court of Appeal as to interpretation of pensions and insolvency statutes, and (ii) lifting of the stay in relation to the appeal to the Upper Tribunal of decision by Determinations Panel against LBHI and certain affiliates as to their

potential pensions liability in the UK; drafted, reviewed, and revised submissions, memoranda, and other documents in preparation for same; and performed related fact-gathering and legal research.

(iv)  Customer / Vendor Issues

- Reviewed and revised various contracts, agreements, and related documents for the supply of goods and services to the Debtors.

(v)  Intellectual Property

- Negotiated, drafted, and revised several agreements related to the Debtors' use or provision of intellectual property and information technology;
- drafted amendments to transition services agreement with Barclays Capital, Inc., prepared stipulation and obtained Bankruptcy Court approval of second transition services agreement extension amendment and participated in meetings regarding same; and
- attended to additional issues related to data sharing among the Debtors and their non-Debtor affiliates.

(vi)  Tax Issues

- Drafted fourth, fifth and sixth supplemental letter submissions to request a ruling from the Internal Revenue Service ("IRS") in connection with the Third Amended Plan, and subsequent submissions in connection with the Third Amended Plan and in response to requests from the IRS and prepared for and participated in meeting with the IRS regarding same; and
- conducted regular conferences and teleconferences with the Debtors, the Creditors' Committee's professionals, the SIPA Trustee's professionals and others and conducted research regarding various tax matters, including those relating to the Third Amended Plan and Disclosure Statement, issues discussed in the IRS Private Letter Ruling, cancellation of debt, partnership rules related to special allocation/re-evaluations, certain UK tax issues, tax claims and tax efficient structures for various asset sales and restructurings.

(vii) Corporate Governance

- Attended meetings of LBHI's board of directors and audit committee, prepared briefing memorandum and drafted and reviewed resolutions and minutes for same;
- conducted research, reviewed and drafted various consents, resolutions, by-laws, certificates of incorporation, organizational documents for the Debtors and their various direct and indirect subsidiaries and affiliates, and advised their directors and officers regarding same;
- prepared and filed forms 8-K, 12B-25, and 13F and other documents with the United States Securities and Exchange Commission; and

- addressed corporate governance issues arising in the international proceedings and amongst various international entities.

(viii) Other General Business Operation Issues

- Advised the Debtors daily on issues relating to their general business operations, including by telephonic and in person meetings, correspondence, and memoranda; and
- participated in meetings with Debtor and Weil teams regarding simplification of the thousands of entities within the Debtors' control.

(ix)  Intercompany Issues

- Conducted research, prepared documents, drafted memoranda, participated in conferences and teleconferences with the Debtors, the Creditors' Committee's professionals and others regarding numerous intercompany issues including intercompany repurchase agreements, intercompany claims, loans, transfers, and prepared resolutions, demand notices, promissory notes and collateral documents for intercompany loans.

d.    Asset Class-Related Issues

(i)    Real Estate Matters

- Obtained authorization to amend the existing protocol governing restructurings, settlements, and new investments in connection with the Debtors' real estate investments allowing the debtors to streamline the process of protecting, enhancing and monetizing the value of such assets;
- drafted and filed a motion seeking authorization to restructure LCPI's interest in an Italian real estate fund;
- represented the Debtors in a dispute with several Merrill Lynch entities regarding the Debtors' interest in certain Multifamily Housing Revenue Bonds;
- assisted Debtors in obtaining authority to create two entities to serve as credit worthy guarantors to satisfy requirements of senior mortgage lenders; and
- assisted Debtors in negotiating a property management agreement with Cushman & Wakefield for an office building located in Stamford, Connecticut that is owned by an affiliate of the Debtors.

(ii)   Private Equity

- Engaged in negotiations, conducted diligence and drafted documents in connection with potential restructurings and refinancing related to Neuberger Berman Group LLC;

- reviewed and counseled Debtors on strategic alternatives with respect to credit facilities, third party agreements, bridge financing arrangements, and extensions, amendments, and restructurings of certain credit facilities; extensively diligenced transactions and underlying investments of funds; developed structures for other possible transactions; counseled on potential litigation and negotiated and drafted transaction documents (including transaction and purchase agreements, settlement agreements, trust agreements, consents, transition services agreements), as well as notes, collateral agreements, advisory agreements and partnership agreements on various miscellaneous sales by various Lehman affiliates of their interests in private equity investments, including certain follow-on investments made by merchant banking funds and parallel investment vehicles;

- conducted diligence, engaged in negotiations, and drafted various documents and pleadings in connection with restructurings and other transactions and consent processes related to Lehman Real Estate Partners, certain European mezzanine loan funds, and certain merchant banking funds; and

- reviewed and revised materials and counseled Debtors on strategies related to transfers of warrants and purchase of shares held by the Debtors in connection with various public companies.

(iii) Derivatives/SWAP Agreement Issues (Including Derivatives-Related Adversary Proceedings, Alternative Dispute Resolution, and Claims Reconciliation and Litigation)

- Worked with the Debtors to formulate and negotiate the derivative claims framework for the allowance of derivatives claims of the Debtors' largest derivatives counterparties, which allowed the Debtors to reduce the primary claims of such parties by more than $7.3 billion from their filed amounts with a comparable reduction of the corresponding guarantee claims against LBHI;

- drafted and filed a motion seeking Bankruptcy Court approval of a settlement with BOA and Merrill Counterparties providing for the return of approximately $356 million plus interest and, *inter alia*, resolution of BOA's and Merrill Counterparties' asserted primary and guarantee derivatives claims pursuant to which BOA agreed to reduce its primary and guarantee derivatives claims for a total reduction of approximately $4.5 billion and the Merrill Counterparties agreed to a total reduction of approximately $3 billion;

- participated in settlement conferences and mediations with counterparties and drafted and served numerous ADR notices, replies and related documents in the over 100 ADR matters pending during the 9th Compensation Period;

- prepared and served numerous subpoenas on derivatives counterparties pursuant to Bankruptcy Rule 2004 and negotiated related discovery schedules;

- drafted and filed motion to compel production of documents withheld by Giants Stadium LLC;
- revised complaint filed by the Debtors in connection with the adversary proceeding captioned *Lehman Brothers Special Financing Inc. v. Ballyrock ABS CDO 2007-1 Limited & Wells Fargo Bank, N.A.* [Case No. 09-01032];
- negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts and confidentiality agreements related thereto and conducted due diligence of derivatives transactions including collateralized debt obligations and swap novations; and
- drafted and filed two motions opposing appeals of the Bankruptcy Court's orders brought by certain Minibond note holders.

(iv) Loans and Investments

- Participated in strategy meetings, teleconferences, and negotiations regarding restructuring and monetization of the Debtors' loan and investment portfolios, conducted research and analysis regarding same, and drafted agency, credit, collateral, security, guarantee, assignment and transfer documents regarding same;
- drafted and revised agreement, motion, and related documents to terminate the Spruce securitization structure, including performing research and analysis of underlying factual and legal issues;
- performed research and analysis for, and participated in conferences regarding, recovery of amounts owed to LCPI under Latshaw Drilling Company LLC credit agreement; and
- advised Debtors regarding intercompany funding matters.

(v) Domestic Bank and Related Regulatory Issues

- Finalized documents regarding transfer and assignment of master servicing rights from LBHI to Aurora Bank FSB and related matters; and
- finalized and filed stipulation regarding sale of Woodlands Commercial Bank's certificate of deposit portfolio to MetLife and PNC Bank, N.A.

e.    International Insolvency Issues

- Advised the Debtors on the negotiation and execution of a comprehensive settlement agreement with their UK affiliates, including Lehman Brothers International Europe ("LBIE"), resolving, in the aggregate, approximately $166 billion in claims asserted against the Debtors;
- advised LBHI on litigation strategy in connection with the liquidation proceeding of Lehman Brothers (Luxembourg) SA ("LB Lux"), and in particular, the claims asserted by LBIE against LB Lux;
- represented the Debtors in German insolvency proceedings over the assets of LB Capital GmbH and Bankhaus, including communications with the Bankhaus administrator, review of the administrator's reports and advising

the Debtors with respect to the Debtors' interest in the contemplated distribution from Bankhaus' estate;

- advised and represented the Debtors in connection with (i) the German insolvency proceedings over the respective assets of Taurus Holding GmbH & Co. KG, (ii) dissolving and liquidating Sadio Neunundachtzigste Vermögensverwaltungs GmbH, and (iii) a dispute with a German counterparty regarding the termination of a master agreement;

- advised the Debtors in relation to (i) filing claims against entities that are subject to UK administration proceedings as well as in respect of claims which relate to trust assets; (ii) potential UK asset and loan portfolio transactions; (iii) dissolving and unwinding a number of partnership structures; (iv) their rights and obligations in connection with UK leasehold property; and (v) issues relating to inter-company side-letters and set-off rights, possible UK insolvency proceedings relating to certain of the Debtors' investments, certain construction disputes, potential exit strategies, the Debtors' rights and interest as creditors of LB UK Re Holdings Limited, and various tax issues;

- negotiated on behalf of the Debtors with the UK administrators on numerous ongoing matters including (i) intercompany claims; (ii) corporate administration agreements; (iii) release of trapped funds; and (iv) obtaining and preserving information relevant to the Debtors' estates;

- monitored and participated in the UK insolvency proceedings (including court hearings and creditors' committee meetings) of 20 UK companies with PricewaterhouseCoopers LLP as joint administrators and advised with respect to their respective effects on the Debtors' chapter 11 cases; and

- advised LBHI on a number of structuring and corporate governance issues within Europe.

f.    Non-Derivative Automatic Stay/Safe Harbor Issues

- Negotiated, prepared, filed and obtained Bankruptcy Court approval of stipulations providing for relief from the automatic stay with respect to litigation involving loans secured by residential real property;

- obtained Bankruptcy Court approval of stipulations providing for relief from the automatic stay with (i) Raymond Hernandez with respect to certain state court litigation, (ii) Sumitomo Mitusi Banking Corporation with respect to adequate protection and providing for payment of secured claim, and (iii) Saint Joseph's University with respect to state court action;

- prepared and filed LCPI's response to Evangelical Christian Credit Union's motion for relief from the automatic stay and participated in meetings regarding same;

- drafted letters to various third parties related to the automatic stay; and

- addressed various issues related to state court actions commenced or continued in violation of the automatic stay, including calls and correspondence with interested parties and counsel.

g.    Miscellaneous Asset Sales/363 Issues

- Participated in strategy meetings regarding the disposition of a commercial loan portfolio and worked with Debtors to develop strategy to solicit bids from market participants for the management of same;
- obtained Bankruptcy Court approval for the Debtors to (i) enter into an asset management agreement with WCAS Fraser Sullivan Investment Management LLC for the management of the Debtors' commercial loan portfolio, and (ii) sell commercial loans to special purpose entities in connection with the issuance of collateralized loan obligations; and
- prepared and filed monthly reports of assets disposed of pursuant to the *de minimis* asset sale or abandonment procedures.

h.    Non-Derivative Executory Contracts/365 Issues

- Obtained Bankruptcy Court authorization to assume and assign settlement agreement and to enter into sharing agreement with Urbanism-Coral Way LLC;
- participated in teleconferences and meetings with Debtors and opposing counsel regarding the motion of Factiva Inc. to compel assumption or rejection of an executory contract; and
- researched and drafted memos regarding various issues related to executory contracts, including the treatment of loans as executory contracts.

i.    Plan of Reorganization

- Drafted and negotiated multiple proposals, term sheets and settlement agreements with the Debtors and many of their foreign affiliates to resolve the claims asserted by the parties in connection with the Third Amended Plan and participated in meetings and teleconferences regarding same;
- drafted request to establish disclosure procedures, discovery protocol and related protective order and participated in numerous meetings regarding same; participated in meetings and attended to issues related to the document repository for plan discovery, and responded to multiple discovery requests;
- drafted Debtors' motion to sequence consideration of alternative disclosure statements and chapter 11 plans and participated in meetings and conducted research regarding same;
- negotiated compromise and obtained Bankruptcy Court authorization granting (i) approval of stipulation and order pursuant to which the other principal chapter 11 plan proponents agreed to hold in abeyance and not to prosecute or seek confirmation of their respective chapter 11 plans or related disclosure statements and (ii) stay of related discovery;
- participated in teleconferences with the Debtors, the Creditors' Committee and various creditors constituencies regarding the Director Selection Committee and addressed corporate governance issues related to same;

- prepared debtor allocation agreement and participated in teleconferences and meetings regarding same;
- negotiated and drafted nondisclosure and confidentiality agreements with various creditors and creditor groups to facilitate diligence and discovery in connection with, among other things, the Third Amended Plan, the Debtors' pre- and postpetition activities, assets and liabilities, and the potential for substantive consolidation of the Debtors' estates;
- reviewed documents and participated in meetings regarding the treatment of certain claims under the Third Amended Plan; and
- conducted extensive legal and factual research and drafted numerous memoranda in connection with the countless issues raised by the Third Amended Plan.

j.  Disclosure Statement/Solicitation/Voting

- Drafted amendments to the Disclosure Statement and participated in teleconferences and meetings regarding same;
- prepared and filed amended motion for approval of the Disclosure Statement, the form and manner of notice of the Disclosure Statement hearing, establishing solicitation and voting procedures, and scheduling confirmation hearing and establishing notice and objection procedures for confirmation of the Third Amended Plan;
- reviewed and analyzed the 18 formal and additional informal objections to the Disclosure Statement approval motion, created chart summarizing same, prepared and filed Debtors' response to objections to approval of proposed Disclosure Statement and participated in meetings regarding same;
- participated in hearing and obtained approval of the Disclosure Statement; and
- participated in meetings and teleconferences with various creditors regarding claims estimation with respect to voting and negotiated and prepared stipulations and agreements for provisional allowance of claims solely for purposes of voting on the Third Amended Plan.

k.  Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues

- Prepared and filed Debtors' amended motion for approval of procedures for determining the allowed amount of claims filed based on structured securities issued or guaranteed by LBHI and participated in numerous teleconferences and meetings regarding same, participated in conference calls with the Debtors, the Creditors' Committee and its advisors regarding the valuation methodologies and their application to the various types of securities;
- analyzed claims related to Debtors' one hundred forth-eighth through two hundred eighteenth omnibus objections to proofs of claim and drafted and filed same;

- performed research, presented oral argument and obtained Bankruptcy Court orders approving the Debtors' one hundred ninth, one hundred seventeenth through one hundred twenty-fourth, one hundred twenty-sixth through one hundred sixty-fourth omnibus objections to proofs of claim and supplemental orders related to the Debtors' eighth, thirty-fifth (two), fortieth (two), forty-first (two), forty-second, forth-third, sixty-seventh (four), seventy-fourth (three), seventy-fifth, one hundred third (three), one hundred ninth, one hundred eleventh, one hundred twelfth, one hundred eighteenth, one hundred twenty second, one hundred twenty seventh, one hundred ninth, one hundred fifty-first, one hundred fifty-second, one hundred fifty-fifth and one hundred ninety-fifth omnibus objections to claims;

- analyzed and responded to thousands of items of correspondence, Bankruptcy Court filings and telephone calls from creditors whose claims were subject to the 218 omnibus claims objections on file during the Ninth Interim Compensation Period;

- prepared and filed (i) stipulation between Travelers Casualty and Surety Company of America and LBHI regarding the Debtors' one hundred-thirty sixth omnibus objection to claims with respect to the claim of Travelers Casualty and Surety Company of America, (ii) reply to U.S. Bank's response to the Debtors' ninety-eighth, ninety-ninth and one hundred-ninth omnibus objection to claims (insufficient documentation) and related declaration, (iii) omnibus reply to certain responses to Debtors fortieth and forty-first omnibus objections to claims (late-filed claims); (iv) objection to claims of 2138747 Ontario Ltd. and 6785788 Canada Inc. (minority shareholders of SkyPower Corp.), and (v) stipulation between LCPI and Piper Jaffray & Co. regarding settlement of claims and turnover of certain shares;

- performed research, analyzed and participated in various meetings with the Debtors and the Creditors' Committee and their professionals regarding the approximately $570 billion of guarantee claims asserted against the Debtors;

- participated in teleconferences with the Debtors regarding the $4 billion claim filed by Canary Wharf Management Limited and certain of its affiliates against the Debtors arising from an alleged guarantee of a lease agreement for real property located in London which was formerly occupied by certain non-Debtor foreign affiliates and related settlement stipulation and reviewed various documents, conducted research and drafted memorandum related to same and prepared, filed and obtained approval of a stipulation regarding such claims; and

- performed legal research and prepared memoranda regarding guarantee claims, subordination of claims and setoff of claims, notice of bar date, tax penalty claims and subordination of same, distributions to claimants, restricted stock unit claims, residential mortgage-backed securities issues, automatic stay issues, classification of claims, claims estimation, issue and

claim preclusion, good faith and fair dealing under New York law and other claims-related issues.

l.    Other Bankruptcy Motions and Matters

- Participated in meetings and teleconferences regarding avoidance actions against affiliates, including foreign affiliates;
- prepared and filed an amended complaint against Ballyrock ABS CDO 2007-1 Limited, Barclays Bank PLC, Blackrock Mortgage Investors Master Fund, L.P., Long Hill 2006-1, Ltd., Long Island International Limited and Wells Fargo Bank, N.A. in connection with prepetition transfers to the Debtors;
- performed legal research, factual diligence, and analysis in connection with avoidance actions commenced by the Debtors; and
- prepared various settlement agreements with respect to avoidance actions.

m.    Litigation Related Issues

(i)    Non-Derivative Adversary Proceedings Preparation and Litigation

- Attended to issues relating to the following adversary proceedings, including the preparation of various documents, preparation for and participation in depositions, meetings, teleconferences, and hearings, conducted research, and engaged in discovery and document production: (i) *Bank of America, N.A. v. LBSF & LBHI* [Adv. Pro. No. 08-01753] (seeking declaratory relief regarding the setoff of certain amounts allegedly owed by the Debtors), (ii) *European Credit Management Limited Relative European Value S.A., et al., v. LCPI* [Adv. Pro. No. 09-01262] (seeking specific performance with respect to certain participations), (iii) *LH 1440 v. State Street Bank & Trust Company, LCPI and LBHI* [Adv. Pro. No. 09-01138] (seeking declaratory and injunctive relief with respect to a loan agreement), (iv) *Pulsar Re, LTD v. LBHI and LCPI* [Adv. Pro. No. 11-01283 (seeking the imposition of a constructive trust on certain assets allegedly held by LBHI and LCPI), (v) *LBHI v. JPMorgan Chase Bank, N.A.* [Adv. Pro. No. 10-03266] (seeking multiple forms of relief, including damages and the disallowance or subordination of certain claims), (vi) *Kathleen Arnold and Timothy Cotton v. Lehman Brothers Holding Inc.* [Adv. Pro. No. 11-01540 ] (seeking relief related to a residential real property loan), (vii) *Melissa King v. LBHI* [Adv. Pro. No. 11-01875] (seeking determination of Lehman's interest in certain real property), and (viii) *The Brooklyn Hospital Center v. Aurora Bank FSB* [Adv. Pro. No. 11-01353] (seeking determination of the extent, validity and priority of lien).

(ii)  Non-Bankruptcy Litigation

- Provided continuing counsel on litigation and bankruptcy issues in connection with an adversary proceeding captioned *Simeon Moreno v. Property Asset Management, Inc., Mortgage Electronic Registration Systems, Inc., and Litton Loan Servicing Limited Partnership* [Case No. 08-17715] and the underlying bankruptcy case which is pending in the District of Massachusetts;
- participated in meetings, conducted research, reviewed documents and conducted document review and responded to document requests in connection with *In re Lehman Brothers Equity/Debt Securities Litigation* [Case No. 08-CV-5523];
- participated in meetings and teleconferences, conducted research, prepared memorandum of law in further support of defendant's motion to dismiss plaintiff's amended complaint and to stay discovery, prepared response to interrogatories and document requests, conducted document review, prepared motion for protective order and prepared for oral argument in *Aetna Life Insurance Company v. Appalachian Asset management Corp., et al*, [Case No. 103913/2010]; and
- participated in mediations; prepared for and conducted interviews, reviewed, drafted and analyzed complaints, claims and pleadings, performed researched, conducted document review, and responded to document requests in multiple foreign and domestic litigations commenced by and against Lehman entities.

(iii)  2004 Issues

- Prepared and served 13 notices of subpoena, pursuant to an order Weil obtained authorizing the Debtors to issue subpoenas for the production of documents and the examination of persons and entities;
- prepared and filed Debtors' objection to motion of Monti Family Holding Company Ltd. for Bankruptcy Rule 2004 examination and participated in meetings regarding same; and
- reviewed documents and/or prepared document requests pursuant to Bankruptcy Rule 2004.

(iv)  Appeals

- Attended to issues related to Bank of America's appeal of the Bankruptcy Court's order granting the Debtors' summary judgment including the review of and preparation of documents, including brief, joint motion to stay appeal, and participation in meetings regarding same [S.D.N.Y. Case No. 1:11-cv-03958-DAB].

n.    US Trustee/SEC/DOJ/Examiner Issues

  (i)    US Trustee Related Issues

  - Reviewed and filed monthly operating reports for May, June, July and August 2011, a supplemental operating report for March, 2001, and addressed issues related to same;
  - conferred and corresponded with U.S. Trustee on numerous issues including fee committee status and related issues; and
  - monitored compliance with the UST Guidelines.

  (ii)    SEC/DOJ Issues

  - Assisted the Debtors with respect to their preparation and participation in numerous meetings and teleconferences with various governmental and regulatory entities and as witnesses for interviews related to governmental and regulatory investigations, and coordinated with A&M regarding same; and
  - performed and coordinated document review, including the collection and production of documents in response to various governmental and regulatory requests and created and reviewed various privilege logs related to same.

  (iii)    Examiner Issues

  - Participated in teleconferences regarding various residual issues related to the production of materials to the Examiner; and
  - created and revised privilege and clawback logs, conducted diligence, and prepared (e.g., redaction and review for confidential information) materials for production to the Examiner.

o.    Fee-Related Issues

  (i)    Firm's Own Billing/Fee Applications

  - Prepared Weil's eighth interim application for compensation and reimbursement and prepared monthly fee statements in compliance with the Guidelines; and
  - addressed various issues raised by the Fee Committee regarding Weil's seventh interim application for compensation and reimbursement and prepared response to same.

  (ii)    Firm's Own Retention Issues

  - Prepared Weil's eighth supplemental affidavit in support of the Debtors' engagement of Weil in these cases in accordance with the Bankruptcy Code and Bankruptcy Rules.

(iii)  Third Party Retention/Fee Application/Other Issues

- Obtained Bankruptcy Court approval of (i) the expansion of the scope of retention of CB Richard Ellis, Inc., as real estate consultant, (ii) the expansion of the scope of Pachulski Stang Siehl & Jones LLP, as special counsel, (iii) the expansion of the retention of Epiq Bankruptcy Solutions, LLC, as solicitation and voting agent, and (iv) additional applications for certain other professionals;
- prepared applications to retain or expand the scope of the retention of (i) Moulton Bellingham, as special counsel, (ii) Gleacher & Company Securities, Inc. as financial advisors, (iii) Dechert LLP, as special counsel, (iv) Ernst & Young LLP, as auditors, and (v) additional applications for certain other professionals;
- prepared and filed supplemental applications to modify the terms of compensation and reimbursement for (i) Forster Graham Milstein & Calister, LLP, as special counsel, and (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as special counsel;
- assisted the Debtors in negotiating engagement letters with numerous ordinary course professionals, other professionals, and certain other parties;
- regularly conferred with many of the more than 205 ordinary course professionals retained in these cases regarding retention procedures and conflicts issues; and
- participated in meetings with retained professionals, the Creditors' Committee, the U.S. Trustee, and the Fee Committee regarding guidelines, orders, and protocols established for all professionals retained in these chapter 11 cases.

52.    The professional services performed by Weil were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their economic stakeholders.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

53.    Professionals in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax departments in numerous offices across three continents provided the necessary services to support the Debtors in the administration of these chapter 11 cases.  Weil's Business Finance & Restructuring practice is preeminent and enjoys an international reputation

for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys that specialize in this area of law.

## ACTUAL AND NECESSARY DISBURSEMENTS OF WEIL

54.    As set forth in Exhibit C hereto, Weil has disbursed $930,986.57 as expenses incurred in providing professional services during the Ninth Compensation Period. These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.   For example, the novel legal issues invoked by the global scope of the Debtors' businesses and the complex nature of the many financial arrangements they are party to require Weil attorneys to work long hours, engage in numerous long distance and international communications, and perform considerable computerized research in order to effectively prosecute the Debtors' chapter 11 cases.

55.    The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required Weil's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors.   Such services were essential to meet deadlines, timely respond to motions and objections, and to satisfy the extraordinary demands of the Debtors' businesses and the administration of these complex chapter 11 cases.

56.    While Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their costs for transportation from the office to home.   Weil's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of

services.   The reimbursement amounts do not exceed those set forth in the U.S. Trustee Guidelines.

57.    With respect to photocopying expenses, Weil's domestic offices charge all of Weil's clients $.10 per page for black-and-white copies.  With respect to facsimile expenses, in compliance with the U.S. Trustee Guidelines, Weil does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the U.S. Trustee Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the U.S. Trustee Guidelines.   These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into the Weil hourly billing rates.  Only clients who actually use services of the types set forth in <u>Exhibit C</u> are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service.   A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

58.    In addition, because of the global scope of the Debtors' businesses, frequent long distance and international telephone calls are required.   On many occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in Weil's overhead for the purpose of setting billing rates.  Weil has made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services

were absolutely necessary, reasonable, and justified under the circumstances to serve the needs

of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

59.    Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Bankruptcy

Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may

award a professional employed under section 327 of the Bankruptcy Code "reasonable

compensation for actual necessary services rendered . . . and reimbursement for actual, necessary

expenses."  Id. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such

compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court
> should consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial
> at the time at which the service was rendered toward the completion of, a
> case under [the Bankruptcy Code];
>
> (D)    whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed; and
>
> (E)    whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

60.    The services for which Weil seeks compensation and reimbursement of

expenses in this application were necessary for, and beneficial to, the orderly administration of

the Debtors' estates and the prosecution of their chapter 11 cases.  Weil has worked assiduously

to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 process. The professional services were performed expediently and efficiently. Whenever possible, Weil sought to minimize the costs of its services to the Debtors by employing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration. Groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances. The compensation requested is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. Furthermore, Weil has voluntarily reduced its requests for charges and expenses incurred during the Ninth Compensation Period by the aggregate amount of $971,028.34. Approval of the compensation for professional services and reimbursement of expenses requested is warranted.

## **CONCLUSION**

61.    Weil respectfully requests the Bankruptcy Court allow interim compensation for professional services rendered during the Ninth Compensation Period in the amount of $39,867,274.07 consisting of $38,936,287.50, representing 100% of charges incurred during the Ninth Compensation Period, and reimbursement of $930,986.57, representing 100% of actual and necessary expenses incurred during the Ninth Compensation Period, without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Ninth Compensation Period, which were not processed at the time of this application, and direct payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Bankruptcy Court grant the relief requested and such other and further relief as is just.

Dated: December 16, 2011
New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT A

### (Third Party Representations)

| Lehman Entity Represented | Amount Paid |
|---|---:|
| Lehman Commercial Paper Inc. | $1,154.85 |
| Lehman Commercial Paper Inc. | $3,015.30 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $519,238.56 |
| Lehman Commercial Paper Inc. | $20,100.78 |
| Lehman Commercial Paper Inc. | $309,543.50 |
| Lehman Commercial Paper Inc. | $5,005.67 |
| **Total:** | **$858,058.66** |

## EXHIBIT B

**(Certification)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                      :     **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,     :     **08-13555 (JMP)**
                                                                    :
                 **Debtors.**        :     **(Jointly Administered)**
                                                                    :
-------------------------------------------------------------------x

### CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF NINTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Lori R. Fife, hereby certify that:

1.    I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("<u>Weil</u>"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates in the above-captioned cases (collectively, the "<u>Debtors</u>"), in respect of

compliance with the Guidelines for Fees and Disbursements for Professionals in Southern

District of New York Bankruptcy Cases adopted by the Bankruptcy Court on June 20, 1991 (the

"<u>Fee and Disbursement Guidelines</u>") and the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy

Court on April 19, 1995 (together with the Fee and Disbursement Guidelines, the "<u>Local</u>

<u>Guidelines</u>"), the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "U.S. Trustee Guidelines") and the Second Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[ECF No. 3102] (the "Administrative Order," and together with the Local Guidelines and the

U.S. Trustee Guidelines, the "Guidelines").

2.      This certification is made in respect of Weil's application, dated

December 16, 2011 (the "Application"), for interim compensation and reimbursement of

expenses for the period commencing June 1, 2011 through and including September 30, 2011 in

accordance with the Guidelines.

3.      In respect of section A.2 of the Fee and Disbursement Guidelines, I certify

that Weil reviewed the fee application and has approved it.

4.      In respect of section B.1 of the Local Guidelines, I certify that:

    a.      I have read the Application;

    b.      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

    c.      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Weil and generally accepted by Weil's clients; and

    d.      in providing a reimbursable service, Weil does not make a profit on that service, whether the service is performed by Weil in-house or through a third party.

5.      In respect of section B.2 of the Local Guidelines and as required by the

Administrative Order, I certify that Weil has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"Committee") and the Debtors, with a statement of Weil's charges and disbursements accrued

during the previous months, although, due to administrative limitations, such statements were not always provided within the timetables set forth in the Local Guidelines and the Administrative Order.

      6.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, attorneys for the Committee, and the United States Trustee for the Southern District of New York are each being provided with a copy of the Application.

Dated: December 16, 2011
      New York, New York

          /s/ Lori R. Fife
          Lori R. Fife

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors in Possession

## <u>EXHIBIT C</u>

### EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE <u>NINTH INTERIM PERIOD OF JUNE 1, 2011 THROUGH SEPTEMBER 30, 2011</u>

| EXPENSES | AMOUNTS |
|---|---:|
| Business Meals | $43,221.27 |
| Computerized Research / Other Research | $361,208.64 |
| Consultant / Witness / Deposition Fees | $205.00 |
| Corporation Service | $5,980.97 |
| Court / Filing / Regulatory Fees | $10,558.18 |
| Court Reporting | $34,716.86 |
| Duplicating | $149,788.97 |
| E-Discovery Services / Document Scanning and Coding | $9,577.11 |
| Messenger / Process Service | $7,695.31 |
| Online News Monitoring | $1,180.94 |
| Outside Temps-Paralegals / Other | $976.00 |
| Postage and Express Mail | $14,570.50 |
| Special Rentals/Leases | $2,683.77 |
| Telephone / Facsimile | $6,394.04 |
| Translation Fees | $86,226.97 |
| Travel and Transportation | $196,002.04 |
| **Total:** | **$930,986.57** |

**EXHIBIT D**

**COMPENSATION BY WORK TASK CODE FOR SERVICES
RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR NINTH
INTERIM PERIOD OF JUNE 1, 2011 THROUGH SEPTEMBER 30, 2011**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 0100 | General Case Administration | 263.70 | $89,604.50 |
| 0200 | General Case Strategy Meetings | 215.80 | $161,815.50 |
| 0300 | Project Monitoring/Court Calendar & Docket Maintenance | 625.30 | $269,807.50 |
| 0400 | Hearings and Court Communications | 798.30 | $380,162.00 |
| 0500 | Non-Working Travel | 605.20 | $210,010.50 |
| 0600 | Interested Party Communications/Website/Lehman Team Hotline | 146.80 | $86,588.50 |
| 0800 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 13.30 | $12,364.00 |
| 0900 | Secured Creditors' Issues/Meetings/Communications | 3.30 | $2,962.00 |
| 1100 | LBI/SIPC Coordination and Issues | 944.00 | $595,739.00 |
| 1200 | Cash Management | 28.00 | $20,007.50 |
| 1300 | Insurance Issues | 214.30 | $139,679.50 |
| 1400 | Employee/ERISA/Benefits/Pension Issues | 849.20 | $604,005.50 |
| 1500 | Customer/Vendor Issues | 6.50 | $5,564.50 |
| 1700 | Intellectual Property | 71.30 | $54,378.50 |
| 1800 | Tax Issues | 980.20 | $691,946.00 |
| 1900 | Corporate Governance | 967.30 | $380,145.00 |
| 2000 | Other General Business Operation Issues | 40.70 | $26,563.00 |
| 2100 | Intercompany Issues | 2,207.80 | $1,633,424.50 |
| 2300 | Real Estate Matters | 15,235.70 | $10,374,392.50 |
| 2400 | Private Equity | 1,077.20 | $739,907.50 |
| 2500 | All Derivatives (Adversaries, ADR, Claims, etc.) | 5,205.80 | $3,410,163.50 |
| 2501 | Derivatives - Affirmative ADR | 6,314.70 | $4,353,045.00 |
| 2502 | Derivatives - SPVs | 3,275.80 | $2,029,747.00 |
| 2503 | Derivatives - Claims | 1,241.30 | $797,114.50 |

| 2504 | Derivatives - Big Banks | 715.60 | $530,567.50 |
|------|-------------------------|--------|-------------|
| 2505 | Derivatives - General/Other | 1,159.10 | $771,563.00 |
| 2600 | Loans/Investments | 551.40 | $353,414.50 |
| 2700 | Domestic Bank and Related Regulatory Issues | 41.60 | $36,701.50 |
| 2800 | International Insolvency Issues | 581.10 | $445,969.50 |
| 2900 | Schedules/Statement of Financial Affairs | 4.80 | $1,500.50 |
| 3000 | Non-Derivative Automatic Stay/Safe Harbor Issues | 256.20 | $136,316.00 |
| 3100 | Miscellaneous Asset Sales/363 Issues | 932.80 | $756,005.50 |
| 3200 | Non-Derivative Executory Contracts/365 Issues | 45.40 | $20,748.00 |
| 3500 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 3,535.80 | $2,444,142.00 |
| 3600 | Disclosure Statement/Solicitation/Voting | 1,597.00 | $1,091,637.00 |
| 3700 | Non-Derivative Claims Reconciliation, Estimation, Litigation and ADR | 4,168.50 | $2,600,681.50 |
| 3800 | Other Bankruptcy Motions and Matters | 364.40 | $211,143.50 |
| 3900 | Non-Derivative Adversary Proceeding Prep and Litigation | 976.00 | $621,948.00 |
| 4000 | Non-Bankruptcy Litigation | 600.50 | $343,771.50 |
| 4100 | 2004 Issues | 158.70 | $68,042.00 |
| 4200 | Appeals | 531.20 | $363,899.00 |
| 4300 | US Trustee Related Issues | 19.80 | $11,718.00 |
| 4400 | SEC/DOJ Issues | 119.40 | $48,406.00 |
| 4500 | Examiner Issues | 127.90 | $76,499.50 |
| 4600 | Firm's Own Billing/Fee Applications | 1,813.40 | $629,130.00 |
| 4700 | Firm's Own Retention Issues | 159.20 | $50,683.00 |
| 4800 | Third Party Retention/Fee Application/Other Issues | 532.10 | $252,663.00 |
| **TOTAL:** | | **60,323.40** | **$38,936.287.50** |