# JPMORGAN ABSOLUTE RETURN CREDIT MASTER FUND LTD.

## (the "Company")

WRITTEN RESOLUTIONS OF THE SHAREHOLDERS OF THE COMPANY DATED 25ᵗʰ JULY 2007

We, being the shareholders of the above-named company hereby resolve by way of special resolution:

**THAT** the Memorandum and Articles of Association of the Company be amended and restated by the deletion of the existing Memorandum and Articles of Association in their entirety and the substitution in their place of the amended and restated Memorandum and Articles of Association in the form attached.

Jeff Arkley
Director

Signed for and on behalf of

JPMorgan Absolute Return Credit Fund Ltd.

Jeff Arkley
Director

Signed for and on behalf of

JPMorgan Absolute Return Credit Fund LLC

CERTIFIED TO BE A TRUE AND CORRECT COPY

SIG.

CINDY Y. JEFFERSON-BULGIN
Deputy Registrar

Date. 6ᵗʰ August, 2007

REGISTRAR OF COMPANIES
AUG 0 6 2007
CAYMAN ISLANDS

CONFIDENTIAL                    JPMAFF-LBHI00002143

THE COMPANIES LAW (2007 REVISION)

OF THE CAYMAN ISLANDS

COMPANY LIMITED BY SHARES

AMENDED AND RESTATED

MEMORANDUM AND ARTICLES

OF

ASSOCIATION

OF

_____

**JPMORGAN ABSOLUTE RETURN CREDIT MASTER FUND LTD.**
*(adopted by Special Resolution dated 25th July 2007)*

_____

CLW/620615/11867034v4

CONFIDENTIAL          JPMAFF-LBHI00002144

THE COMPANIES LAW (2007 REVISION)

OF THE CAYMAN ISLANDS

COMPANY LIMITED BY SHARES

AMENDED AND RESTATED
MEMORANDUM OF ASSOCIATION

OF

**JPMORGAN ABSOLUTE RETURN CREDIT MASTER FUND LTD.**
*(adopted by Special Resolution dated 25th July 2007)*

1    The name of the Company is **JPMorgan Absolute Return Credit Master Fund Ltd.**

2    The registered office of the Company shall be at the offices of M&C Corporate Services Limited, PO Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands, or at such other place as the Directors may decide.

3    The objects for which the Company is established are unrestricted and the Company shall have full power and authority to carry out any object not prohibited by The Companies Law (2004 Revision) or as revised, or any other law of the Cayman Islands.

4    The liability of each Member is limited to the amount unpaid on such Member's shares.

5    The share capital of the Company is US$50,000 divided into 5,000,000 Shares of US$0.01 par value each.

6    The Company has power to register by way of continuation as a body corporate limited by shares under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

7    Capitalised terms that are not defined in this Memorandum of Association bear the same meaning as those given in the Articles of Association of the Company.

REGISTRAR OF COMPANIES
EXEMPTED
CAYMAN ISLANDS

CERTIFIED TO BE A TRUE AND CORRECT COPY
SIG.
CINDY Y. JEFFERSON-BULGIN
Deputy Registrar
Date. 6th August 2007

CLW/620615/11867034v4

CONFIDENTIAL                     JPMAFF-LBHI00002145

THE COMPANIES LAW (2007 REVISION)

OF THE CAYMAN ISLANDS

COMPANY LIMITED BY SHARES

**AMENDED AND RESTATED**

ARTICLES OF ASSOCIATION

OF

**JPMORGAN ABSOLUTE RETURN CREDIT MASTER FUND LTD.**
*(adopted by Special Resolution dated 25th July 2007)*

## INTERPRETATION

1    In these Articles Table A in the First Schedule to the Statute does not apply and, unless there is something in the subject or context inconsistent therewith:

| | |
|---|---|
| **"Administrator"** | means the person, firm or corporation appointed and from time to time acting as administrator of the Company. |
| **"Adviser"** | means J.P. Morgan Investment Management Inc., or such other person, firm or corporation appointed from time to time and acting as investment adviser the Company. |
| **"Affiliate"** | means, with respect to any person, a person controlling, controlled by or under common control with, that person, either directly or indirectly through one or more intermediaries. |
| **"Articles"** | means these articles of association of the Company. |
| **"Auditor"** | means the person (if any) for the time being performing the duties of auditor of the Company. |
| **"Board"** | means the board of Directors of the Company. |
| **"Business Day"** | means any day normally treated as a business day in such places and/or on such markets as the Directors may from time to time determine. |

| | |
|---|---|
| **"Cayman Islands"** | means the British Overseas Territory of the Cayman Islands. |
| **"Code"** | means the U.S. Internal Revenue Code of 1986, as amended, and as hereafter amended from time to time, or any successor law. |
| **"Company"** | means the above named Company. |
| **"Directors"** | means the directors for the time being of the Company. |
| **"Dollars" or "US$"** | refers to the currency of the United States and references to "cents" should be construed accordingly. |
| **"Electronic Record"** | has the same meaning as in the Electronic Transactions Law (2003 Revision). |
| **"ERISA"** | means the U.S. Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder or any successor thereto. |
| **"Gross Negligence"** | in relation to a person means a standard of conduct beyond negligence whereby that person acts with reckless disregard for the consequences of a breach of a duty of care owed to another. |
| **"Initial Members"** | JPMorgan Absolute Return Credit Fund Ltd. and JPMorgan Absolute Return Credit Fund, a series of JPMorgan Absolute Return Credit Fund LLC and any other Members of the Company that may be admitted from time to time. |
| **"Member"** | each person who holds one or more Shares and whose name is entered on the Register of Members as the holder of such Shares, including the Initial Members. |
| **"Memorandum"** | means the memorandum of association of the Company. |
| **"Net Asset Value"** | means the value of the assets less the liabilities of the Company or a Separate Fund (as the case may be) calculated in accordance with these Articles. |
| **"Net Asset Value per Share"** | means the amount determined in accordance with the Articles as being the Net Asset Value per Share of a |

CLW/620615/11867034v4

CONFIDENTIAL    JPMAFF-LBHI00002147

particular class or series (or sub-series).

| | |
|---|---|
| **"Non-Eligible Investor"** | means those persons who are not eligible to hold Shares, as determined from time to time by the Directors. |
| **"Ordinary Resolution"** | means a resolution passed by a simple majority of such Members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting, and includes a unanimous written resolution. In computing the majority when a poll is demanded regard shall be had to the number of votes to which each Member is entitled by the Articles. |
| **"Plan Assets Rules"** | means Section 3(42) of ERISA, and any rules and regulations issued thereunder, together with the plan assets regulation set forth by the U.S. Department of Labor in the U.S. Code of Federal Regulations at 29 C.F.R. § 2510.3-101, as amended, or any successor laws. |
| **"Redemption Charge"** | means such fee (if any) determined by the Directors as being payable by a Member to the Company on a redemption of Shares. |
| **"Redemption Day"** | means in relation to any class or series (or sub-series) of Share such day or days as may be specified by the Directors from time to time upon which a Member may redeem Shares of that class or series (or sub-series). |
| **"Redemption Notice"** | means a notice in a form approved by the Directors by which a holder of Shares may require the Company to redeem his Shares. |
| **"Redemption Price"** | means the price determined in accordance with these Articles at which Shares of the relevant class or series (or sub-series) may be redeemed. |
| **"Register of Members"** | means the register of Members maintained in accordance with the Statute and includes (except where otherwise stated) any duplicate Register of Members. |
| **"Registered Office"** | means the registered office for the time being of the Company. |
| **"Sales Charge"** | means such sales charge (if any) determined by the |

CONFIDENTIAL          JPMAFF-LBHI00002148

Directors as being payable by a subscriber on a subscription for Shares.

**"Seal"** means the common seal of the Company and includes every duplicate seal.

**"Separate Fund"** means a separate account maintained in accordance with these Articles.

**"Share"** means a participating redeemable share in the capital of the Company of US$0.01 par value and having the rights provided for under these Articles. Shares may be divided into classes in the discretion of the Directors in accordance with the provisions of these Articles and each class may be further divided into different series (or sub-series) of Shares and the term "Share" shall include all such classes and series (or sub-series) of Share and includes a fraction of a Share.

**"Special Resolution"** has the same meaning as in the Statute and includes a unanimous written resolution.

**"Statute"** means the Companies Law (2004 Revision) of the Cayman Islands.

**"Subscription Day"** means in relation to any class or series (or sub-series) of Share such day or days as may be specified by the Directors from time to time upon which a person may subscribe for Shares of that class or series (or sub-series).

**"Subscription Price"** means the price determined in accordance with these Articles at which Shares of the relevant class or series (or sub-series) may be subscribed.

**"Suspension"** means a determination by the Directors to suspend the calculation of the Net Asset Value of Shares of one or more classes or series (or sub-series) and/or the issue and redemption of Shares of one or more classes or series (or sub-series).

**"Unaffiliated"** has the meaning set out in Article 125.

**"Unaffiliated Directors"** has the meaning set out in Article 125.

**"Valuation Day"** means in relation to each class or series (or sub-series)

CONFIDENTIAL          JPMAFF-LBHI00002149

of Share the day or days determined from time to time by the Directors to be the day or days on which the Net Asset Value per Share of that class or series (or sub-series) is calculated.

**"Valuation Point"**   means with respect to any Valuation Day the time or times on such Valuation Day that the Directors determine to calculate the Net Asset Value.

2   In the Articles:

2.1   the singular number includes the plural number and vice-versa;

2.2   the masculine gender includes the feminine gender;

2.3   persons includes corporations and other legal entities;

2.4   "written" and "in writing" include all modes of representing or reproducing words in visible form, including in the form of an Electronic Record;

2.5   references to provisions of any law or regulation shall be construed as references to those provisions as amended, modified, re-enacted or replaced from time to time;

2.6   any phrase introduced by the terms "including", "include", "in particular" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms;

2.7   any reference to the powers of the Directors shall include, when the context admits, the service providers or any other person to whom the Directors may delegate their powers;

2.8   in these Articles Section 8 of the Electronic Transactions Law shall not apply;

2.9   any reference to a class of Shares shall, where the context admits, include a separate series or sub-series of such class; and

2.10   headings are inserted for reference only and shall be ignored in construing these Articles.

## COMMENCEMENT OF BUSINESS

3   The business of the Company may be commenced as soon after incorporation as the Directors shall see fit.

4   The Directors may pay, out of the capital or any other monies of the Company, all expenses

incurred in or about the formation and operation of the Company, including the expenses of registration and the initial issue of Shares.

## SERVICE PROVIDERS

5    The Directors may appoint any person, firm or corporation to act as the Adviser of the Company's business affairs or in respect of any class or series (or sub-series) of Shares. Any Adviser so appointed shall not be removed except with the unanimous vote of the Unaffiliated Directors and upon not less than 60 days notice.

6    The Directors may entrust to and confer upon the Adviser any of the functions, duties, powers and discretions exercisable by them as Directors upon such terms and conditions including the right to remuneration payable by the Company and with such powers of delegation and such restrictions as they think fit.

7    The Directors may appoint any person, firm or corporation to act as a service provider to the Company in respect of any class or series (or sub-series) of Shares and to confer upon such service providers any of the functions, duties, powers and discretions exercisable by them as Directors upon such terms and conditions as they think fit. Without limiting the generality of the foregoing such service providers may include managers, administrators, registrars, transfer agents, custodians and prime brokers.

## ISSUE OF SHARES

8    Subject to these Articles, the Directors may allot, issue, grant options over or otherwise dispose of Shares in separate classes and series (or sub-series) with different terms, including with respect to investment strategy and restrictions, participation in assets of the Company, voting, fees charged, redemption privileges, allocation of cost and expenses (including without limitation the costs and expenses incurred in any hedging activities and any profits and losses arising therefrom) and on such other terms as the Directors may determine.

9    The Company shall not issue Shares to bearer.

10    On or before the allotment of any Share the Directors may resolve the class and series (or sub-series) to which such Share shall be designated. Each class and series (or sub-series) of Shares shall be specifically identified.

11    Fractional Shares may be issued.

12    Shares shall only be issued as fully paid-up.

13    No right of pre-emption or first refusal shall attach to any Shares.

CONFIDENTIAL

## REGISTER OF MEMBERS

14      The Company shall maintain or cause to be maintained the Register of Members in accordance with the Statute.

## CLOSING REGISTER OF MEMBERS OR FIXING RECORD DATE

15      For the purpose of determining Members entitled to notice of, or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any dividend, or in order to make a determination of Members for any other proper purpose, the Directors may provide that the Register of Members shall be closed for transfers for a stated period which shall not in any case exceed thirty days.

16      In lieu of, or apart from, closing the Register of Members, the Directors may fix in advance or arrears a date as the record date for any such determination of Members entitled to notice of, or to vote at any meeting of the Members or any adjournment thereof, or for the purpose of determining the Members entitled to receive payment of any dividend or in order to make a determination of Members for any other proper purpose.

17      If the Register of Members is not so closed and no record date is fixed for the determination of Members entitled to notice of, or to vote at, a meeting of Members or Members entitled to receive payment of a dividend, the date on which notice of the meeting is sent or the date on which the resolution of the Directors declaring such dividend is passed, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## CERTIFICATES FOR SHARES

18      A Member shall only be entitled to a share certificate if the Directors resolve that share certificates shall be issued. Share certificates representing Shares, if any, shall be in such form as the Directors may determine.  Share certificates shall be signed by one or more Directors or another person authorised by the Directors. The Directors may authorise certificates to be issued with the authorised signature(s) affixed by mechanical process. All certificates for Shares shall be consecutively numbered or otherwise identified and shall specify the Shares to which they relate.  All certificates surrendered to the Company for transfer shall be cancelled and subject to these Articles no new certificate shall be issued until the former certificate representing a like number of relevant Shares shall have been surrendered and cancelled.

19      The Company shall not be bound to issue more than one certificate for Shares held jointly by more than one person and delivery of a certificate to one joint holder shall be a sufficient delivery to all of them.

20      If a share certificate is defaced, worn out, lost or destroyed, it may be renewed on such

CONFIDENTIAL                    JPMAFF-LBHI00002152

terms (if any) as to evidence and indemnity and on the payment of such expenses reasonably incurred by the Company in investigating evidence, as the Directors may prescribe, and (in the case of defacement or wearing out) on delivery up of the old certificate.

## SHARES

21    The Directors may from time to time allot and issue Shares of any class or series (or sub-series). The Directors may in their discretion refuse to allot and issue any Shares, and shall not issue any Shares to or for the account of an investor who is a Non-Eligible Investor.

22    Shares of a particular class or series (or sub-series) shall not be allotted or issued during any period when the Directors shall have declared a Suspension with respect to such class or series (or sub-series).

23    The price at which the first issue of Shares of any class or series (or sub-series) shall be effected and the time of such issue shall be determined by the Directors. Thereafter, Shares of an existing class or series (or sub-series) may be allotted and issued on any Subscription Day in the discretion of the Directors, provided that such additional Shares are issued at not less than the Net Asset Value per Share of the same class or series (or sub-series) calculated on the relevant Subscription Day (or if the Subscription Day is not also a Valuation Day then on the immediately preceding Valuation Day).

24    The Directors may add to the Subscription Price per Share (before making any rounding adjustment) an amount which they consider to be an appropriate allowance to reflect fiscal and purchase charges which would be incurred for the account of the Company in investing an amount equal to that Net Asset Value per Share plus the Sales Charge (if any) and an amount equal to any stamp duty and any other governmental taxes or charges payable by the Company with respect to the issue of such Shares.

25    An applicant for Shares shall pay for such Shares in such currencies, in such manner, at such time, in such place and to such person acting on behalf of the Company as the Directors may from time to time determine.

26    Shares shall be issued in such minimum numbers as the Directors shall specify either generally or in any particular case; likewise the Directors may from time to time prescribe an amount as the minimum subscription amount.

27    The Directors may resolve to accept non-cash assets in satisfaction (in whole or in part) of the Subscription Price.

## COMMISSIONS

28    The Directors may require an applicant for Shares to pay to the Company for the benefit of any selling agent such selling commissions or such organisational charges as may have been disclosed to such applicant. The Directors may differentiate between applicants as

to the amount of such selling commissions or such organisational charges.

29     The Company may, in so far as the Statute permits, pay a commission to any person in consideration of his subscribing or agreeing to subscribe whether absolutely or conditionally for any Shares. Such commissions may be satisfied by the payment of cash and/or the issue of fully or partly paid-up Shares. The Company may also on any issue of Shares pay such brokerage as may be lawful.

## SEPARATE FUNDS

30     The Directors shall establish a Separate Fund for each class or series (or sub-series) of Share for which the Directors shall determine, as an internal accounting matter, shall be traded as a separate portfolio of the Company and each Separate Fund so established shall be designated by reference to such class or series (or sub-series) of Shares.

31     The proceeds from the issue of each such class or series (or sub-series) of Shares shall be applied in the books of the Company to the Separate Fund established for that class or series (or sub-series) of Shares. The assets and liabilities and income and expenditure attributable to that Separate Fund shall be applied to such Separate Fund and, subject to the provisions of these Articles, to no other Separate Fund.

32     Where any asset is derived from another asset (whether cash or otherwise), such derivative asset shall be applied in the books of the Company to the same Separate Fund as the asset from which it was derived, and on each revaluation of an asset the increase or diminution in value shall be applied to the same Separate Fund and, subject to the provisions of these Articles, to no other Separate Fund.

33     In the case of any asset or liability of the Company which the Directors do not consider is attributable to a particular Separate Fund the Directors shall have discretion to determine the basis upon which any such asset or liability shall be allocated between or among Separate Funds.

34     The Directors may, in the books of the Company, allocate assets and liabilities to and from Separate Funds if, as a result of a creditor proceeding against certain of the assets of the Company or otherwise, a liability would be borne in a different manner from that in which it would have been borne if applied under the foregoing Articles.

35     The Directors may from time to time transfer, allocate or exchange an asset or liability from one Separate Fund to another Separate Fund provided that at the time of such transfer, allocation or exchange the Directors form the opinion (in good faith) that the value in money or money's worth of each such asset or liability transferred, allocated or exchanged is not significantly less or more than the value in money or money's worth received by the Separate Fund from which such asset or liability is transferred, allocated or exchanged.

## SEPARATE SERIES

CONFIDENTIAL                    JPMAFF-LBHI00002154

36    The Directors, on the recommendation of the Adviser, shall have the power to designate Shares of any class by reference to one or more separate series or sub-series and determine the manner in which Shares of any series or sub-series differ from Shares of any other series or sub-series including the manner in which:

33.1    Shares of any series or sub-series shall participate in the assets of the Company;

33.2    fees payable to any service provider appointed by the Company may be levied or charged against the holders of Shares of any series or sub-series;

33.3    the costs of, and any profits and/or losses arising from, any currency hedging may be levied or charged against the holders of Shares of any series or sub-series; and

33.4    any other assets or liabilities of the Company shall be attributed to or borne by any series or sub-series of Shares.

37    The Directors may, but need not, maintain a Separate Fund for each separate series or sub-series of a class of Share. If a Separate Fund is maintained for a series or sub-series of a class of Shares the provisions of these Articles dealing with the calculation of Net Asset Value shall apply, *mutatis mutandis*, to each such Separate Fund.

## DETERMINATION OF NET ASSET VALUE

38    The Net Asset Value and the Net Asset Value per Share shall be determined by the Directors as at the Valuation Point on each Valuation Day.

39    In calculating the Net Asset Value the Directors shall apply such generally accepted accounting principles as they may determine.

40    The assets of the Company shall be valued in accordance with such policies as the Directors may determine. Any valuations made pursuant to these Articles shall be binding on all persons.

41    Any expense or liability may be amortised over such period as the Directors may determine and the unamortised amount shall be deemed to be an asset of the Company.

42    The Net Asset Value per Share of each class or series (or sub-series) of Share shall be determined by dividing the Net Asset Value as at the relevant Valuation Point of the Separate Fund established for the relevant class or series (or sub-series) by the number of Shares of that class or series (or sub-series) then in issue.

43    Where the assets attributable to two or more classes or series (or sub-series) of Share are traded as a single portfolio, the Net Asset Value per Share of each such class or series (or sub-series) shall be determined by allocating any realised or unrealised increase or

CLW/620615/11867034v4

decrease in the Net Asset Value of the assets attributable to such classes or series (or sub-series) for the period from the immediately preceding Valuation Point among each such class or series (or sub-series) *pro rata* in accordance with the Net Asset Value of each such class or series (or sub-series) at the preceding Valuation Point. The amount so calculated shall then be adjusted to reflect the amount of any assets or liabilities that, as an internal accounting matter for the Company, are attributable to a specific class or series (or sub-series), and then divided by the number of Shares of the relevant class or series (or sub-series) in issue.

44    The price to be paid for Shares which have been applied for shall be deemed to be an asset of the Company and any costs in connection with that issue shall be deemed to be liabilities of the Company at the beginning of the Business Day next following the Subscription Day upon which the application was made.

45    The price to be paid for Shares which are to be redeemed shall be deemed to be a liability of the Company from the Valuation Point on the Redemption Day until the price is paid.

46    Net Asset Value per Share shall be rounded to the nearest cent or such other amount as the Directors may determine and the benefit of any such roundings may be retained by the Company.

47    If the liabilities of a Separate Fund exceed its assets on a calculation of Net Asset Value on a Valuation Day then the Directors may attribute the amount by which the liabilities exceed the assets between the other Separate Funds according to the respective Net Asset Value of the Separate Funds, and treat them as a liability of each such Separate Fund.

### FEES, EXPENSES, ORGANIZATIONAL EXPENSES
REDACTED

### SUSPENSION OF DETERMINATION OF NET ASSET VALUE

50    The Directors may, from time to time, in their absolute discretion and for any reason declare a Suspension of the determination of the Net Asset Value of Shares of any class or series (or sub-series) and the issue and redemption of the Shares.

51    Consistent with each Member's currently effective offering memorandum, a Suspension shall take effect at such times as the Directors shall specify but not later than the close of business on the Business Day next following the declaration and thereafter there shall be

no determination of the Net Asset Value of Shares until the Directors shall declare the Suspension at an end. When possible, all reasonable steps will be taken to bring any period of Suspension to an end as soon as reasonably possible under the then current circumstances. Each declaration of Suspension by the Directors shall be consistent with such official rules and regulations, if any, as shall have been promulgated by any authority having jurisdiction over the Company. To the extent not inconsistent with such official rules and regulations, the determination of the Directors shall be conclusive. The Directors shall promptly notify the Members of any such Suspension and shall promptly notify them upon termination of such Suspension in a manner consistent with each Member's currently effective offering memorandum.

## TRANSFER OF SHARES

52    Subject to these Articles, Shares may not be directly or indirectly sold, transferred or assigned in whole or in part without the prior written consent of the Directors, or the Adviser on their behalf, which may be granted or withheld in their discretion.

53    Any person who acquires Shares by way of transfer shall provide to the Directors such information and documents as the Directors may request:

53.1    to enable the Directors to determine that the proposed transferee is not a Non-Eligible Investor; and

53.2    (concerning the establishment or verification of that person's identity or otherwise) to enable the Company to comply with all applicable laws, including anti-money laundering laws.

54    The instrument of transfer of any Share shall be in writing and shall be executed by or on behalf of the transferor (and, if the Directors so require, signed by the transferee). The transferor shall be deemed to remain the holder of a Share until the name of the transferee is entered in the Register of Members.

## TRANSMISSION OF SHARES

55    If a Member dies the survivor or survivors where he was a joint holder, and his legal personal representatives where he was a sole holder, shall be the only persons recognised by the Company as having any title to his interest. The estate of a deceased Member is not thereby released from any liability in respect of any Share, which had been jointly held by him.

56    Any person becoming entitled to a Share in consequence of the death or bankruptcy or liquidation or dissolution of a Member (or in any other way than by transfer) and who is not a Non-Eligible Investor may, upon such evidence being produced as may from time to time be required by the Directors, elect either to become the holder of the Share or to have some person nominated by him as the transferee. If he elects to become the holder he shall give notice to the Directors to that effect, but the Directors shall, in either case,

CONFIDENTIAL

have the same right to decline or suspend registration as they would have had in the case of a transfer of the Share by that Member before his death or bankruptcy as the case may be.

57    If the person so becoming entitled shall elect to be registered himself as holder he shall deliver or send to the Directors a notice in writing signed by him stating that he so elects.

58    A person becoming entitled to a Share by reason of the death or bankruptcy or liquidation or dissolution of the holder (or in any other case than by transfer), and who is not a Non-Eligible Investor, shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the Share. However, he shall not, before being registered as a Member in respect of the Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company and the Directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the Share. If the notice is not complied with within ninety days the Directors may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the Share until the requirements of the notice have been complied with.

## REDEMPTION OF SHARES

59    Subject to any provisions relating to a specific class or series (or sub-series) of Shares set out in these Articles, or in any resolution constituting a class or series (or sub-series) of Shares, a Member may redeem all or any of such Member's Shares by serving a Redemption Notice on the Company which shall be required to be received on a Redemption Day with respect to such Shares (or such number of days prior to such Redemption Day as may be determined by the Directors). Any Member redeeming Shares shall submit to the Directors the share certificate (if any) issued in respect of those Shares. The Company shall redeem such Shares at the Redemption Price being an amount equal to the Net Asset Value per Share of the relevant class or series (or sub-series) calculated as of the Valuation Day on or prior to the Redemption Day. Any Member which is an investment fund, the purpose of which is to invest substantially all of its assets in the Company, may be permitted to redeem Shares at any time in order to pay its fees, expenses and incentive allocations.

60    The Directors may deduct the Redemption Charge from the Redemption Price. The Board, upon the recommendation of the Adviser, in their sole discretion, may waive the Redemption Charge with respect to any redemption.

61    A Member may not revoke a Redemption Notice once submitted to the Directors unless (i) the Directors, upon the recommendation of the Adviser, shall have declared a Suspension or (ii) the Member has received the prior written consent of the Board, upon the recommendation of the Adviser, to such revocation (which may be withheld in the Adviser's and Board's sole discretion). If a Suspension has been declared by the Directors the right of the Member to have his Shares redeemed shall be suspended and during the period of Suspension he may withdraw his Redemption Notice. Any

CONFIDENTIAL                                    JPMAFF-LBHI00002158

withdrawal of the Redemption Notice shall be made in writing and shall only be effective if actually received by the Directors before the termination of the period of Suspension. If the Redemption Notice is not withdrawn the redemption of the Shares shall be made at the Redemption Price for the Share of the relevant class or series (or sub-series) calculated at the Valuation Point on the Valuation Day next following the end of the Suspension.

62    Notwithstanding any other provisions of these Articles, the Directors may temporarily suspend redemptions in order to effect orderly liquidation of the Company's assets in relation to a particular class or series (or sub-series) of Shares or if the Directors determine that the disposal of the Company's assets or the calculation of the Net Asset Value in relation to a particular class or series (or sub-series) of Shares is not practicable or reasonable and that it would prejudice the interests of the Members.

63    If the Directors receive Redemption Notices in respect of Shares on any Valuation Day which in aggregate exceed such percentage of the Net Asset Value of such class or series (or sub-series) on such Valuation Day as the Directors may determine, the Directors may refuse to redeem all such Shares which are subject to the Redemption Notices, but in such circumstances the Directors may scale down the amounts to be redeemed *pro rata* in response to such extent as they consider may be necessary and may further determine that any Redemption Notices which have been postponed from any prior Redemption Day will have priority on any subsequent Redemption Day.

64    If the Company is required by the laws of any relevant jurisdiction to make a withholding from any redemption monies payable to the holder of a Share the amount of such withholding shall be deducted from the redemption monies otherwise payable to such person.

65    No redemption of part of a Member's holding of Shares of any one class or series (or sub-series) may be made if as a result thereof such Member would hold fewer Shares of such class or series (or sub-series) than such minimum number of Shares of such class or series (or sub-series) as may from time to time be specified (either generally or in any particular case or cases) by the Directors.

66    Notwithstanding any other provisions of these Articles, the Company may, in the absolute discretion of the Directors, refuse to make a redemption payment to a Member if the Directors suspect or are advised that the payment of any redemption proceeds to such Member may result in a breach or violation of any anti-money laundering law by any person in any relevant jurisdiction, or such refusal is necessary to ensure the compliance by the Company, its Directors or the Administrator with any anti-money laundering law in any relevant jurisdiction.

67    Any amount payable to a Member for the redemption of Shares shall be paid in the such currency or currencies as the Directors may determine.  The Company shall remit redemption proceeds (net of the costs of remittance) by cheque or wire transfer within such period as the Directors shall determine.  In the absence of directions as to payment

CONFIDENTIAL    JPMAFF-LBHI00002159

the Company shall remit redemption proceeds by cheque to the address for the Member appearing on the Register of Members. The Company shall not be liable for any loss resulting from this procedure.

68    On a redemption of a Share the Directors shall have the power to divide *in specie* the whole or any part of the assets of the Company and appropriate such assets in satisfaction or part satisfaction of the Redemption Price and any other sums payable on redemption as provided in these Articles.

69    Once a Share is redeemed the Member shall cease to be entitled to any rights in respect of it (except the right to receive a dividend which has been declared prior to such redemption). The Member's name shall be removed from the Register of Members in respect of that Share and that Share shall be available for re-issue, and until re-issue shall form part of the authorised and unissued capital of the Company.

70    The Directors shall, upon the recommendation of the Adviser, be entitled to deduct for the account of the Company from the Redemption Price (before making any rounding adjustment) certain expenses incurred by the Company as a result of a redemption such as fiscal and sale charges which would be incurred for the account of the Company in realising assets or closing out positions to provide funds to meet any redemption request.

## COMPULSORY REDEMPTION

71    The Directors may redeem or cause the Company to redeem all or some of the Shares held by any person at the Redemption Price if, in the opinion of the Directors:

71.1    it is in the interests of the Company to do so;

71.2    Shares are held, or would be held, by or for the benefit of a Non-Eligible Investor;

71.3    to give effect to an exchange, conversion or roll up policy pursuant to which Shares were issued subject to a condition that Shares of one class or series (or sub-series) (the "Old Shares") may, at the option of the Company, be exchanged for Shares of another class or series (or sub-series) (the "New Shares") by means of the redemption of the Old Shares and the immediate re-subscription of the redemption proceeds in paying up the New Shares; and

71.4    in a manner consistent with each Member's currently effective offering memorandum.

72    If the Directors determine compulsorily to redeem any Shares under these Articles they shall give the holder of the Shares such notice of the redemption as they shall determine.

## REPURCHASE OF SHARES

73    Subject to the provisions of the Statute and without prejudice to these Articles, the Company

CONFIDENTIAL                    JPMAFF-LBHI00002160

may purchase its own Shares (including any redeemable Shares) provided that the Members approve the manner of purchase by Ordinary Resolution or, if such proposed purchase by the Company applies only to a particular class of Share, provided that the holders of the class of Shares subject to the proposed purchase by the Company approve the manner of purchase by a simple majority at a class meeting.

74      The Company may make a payment in respect of the redemption or purchase of its own Shares in any manner permitted by the Statute, including out of capital.

## VARIATION OF RIGHTS OF SHARES

75      Subject to the Statute, all or any of the special rights for the time being attached to any Shares in issue (unless otherwise provided by the terms of issue of those Shares) may from time to time (whether or not the Company is being wound up) be altered or abrogated with the consent in writing of the holders of not less than two-thirds of the issued shares of a class of Shares or with the sanction of a resolution passed with a two-thirds majority at a separate class meeting of the holders of such Shares on the Register of Members at the date on which notice of such separate class meeting is given.

76      For the purposes of a separate class meeting the Directors may treat two or more or all the classes of Shares as forming one class if the Directors consider that two or more or all such classes would be affected in the same way by the proposals under consideration, but in any other case shall treat them as separate classes. The Directors may also treat the holders of a separate series (or sub-series) of Shares as a separate class for the purposes of any proposed variation of rights affecting such separate series (or sub-series) of Share.

77      The special rights attached to each class of Share shall be deemed to be varied by the creation or issue of any Shares ranking in priority to them with respect to participation in the profits or assets of the Company, except where the Shares so created or issued are Shares in relation to which a Separate Fund is established, and the priority granted to the holders of such Shares in relation to the profits or assets of such Separate Fund (or any other assets of the Company) is no greater than the priority granted to the holders of the Shares of each other class then in issue in respect of the profits and assets of the Separate Funds to which such last mentioned Shares relate.

78      Subject to the foregoing Articles, the special rights conferred upon the holders of Shares issued with preferred or other special rights shall not (unless otherwise expressly provided by the conditions of issue of such Shares) be deemed to be varied by:

78.1    the creation, allotment or issue of further Shares ranking pari passu therewith;

78.2    by the allotment, issue, repurchase or redemption of Shares of any class;

78.3    by the exercise of the powers to allocate assets (or amounts treated as notional assets), and charge liabilities to the various Separate Funds or any of them and to transfer the same to and from the various Separate Funds or any of them as

CONFIDENTIAL                    JPMAFF-LBHI00002161

provided for in these Articles.

## NON-RECOGNITION OF TRUSTS

79   The Company shall not be bound by or compelled to recognise in any way (even when notified) any equitable, contingent, future or partial interest in any Share, or (except only as is otherwise provided by these Articles or the Statute) any other rights in respect of any Share other than an absolute right to the entirety thereof in the registered holder.

## LIEN ON SHARES

80   The Company shall have a first and paramount lien on all Shares (whether fully paid-up or not) registered in the name of a Member (whether solely or jointly with others) for all debts, liabilities or engagements to or with the Company (whether presently payable or not) by such Member or his estate, either alone or jointly with any other person, whether a Member or not, but the Directors may at any time declare any Share to be wholly or in part exempt from the provisions of this Article. The registration of a transfer of any such Share shall operate as a waiver of the Company's lien thereon. The Company's lien on a Share shall also extend to any amount payable in respect of that Share.

81   The Company may sell, in such manner as the Directors think fit, any Shares on which the Company has a lien, if a sum in respect of which the lien exists is presently payable, and is not paid within fourteen clear days after notice has been given to the holder of the Shares, or to the person entitled to it in consequence of the death or bankruptcy of the holder, demanding payment and stating that if the notice is not complied with the Shares may be sold.

82   To give effect to any such sale the Directors may authorise any person to execute an instrument of transfer of the Shares sold to, or in accordance with the directions of, the purchaser. The purchaser or his nominee shall be registered as the holder of the Shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money, nor shall his title to the Shares be affected by any irregularity or invalidity in the sale or the exercise of the Company's power of sale under these Articles.

83   The net proceeds of such sale after payment of costs, shall be applied in payment of such part of the amount in respect of which the lien exists as is presently payable and any residue shall (subject to a like lien for sums not presently payable as existed upon the Shares before the sale) be paid to the person entitled to the Shares at the date of the sale.

## AMENDMENTS OF MEMORANDUM AND ARTICLES OF ASSOCIATION AND ALTERATION OF CAPITAL

84   The Company may by Ordinary Resolution:

84.1   increase the share capital by such sum as the resolution shall prescribe and with

CONFIDENTIAL                           JPMAFF-LBHI00002162

such rights, priorities and privileges annexed thereto, as the Company in general meeting may determine;

84.2    consolidate and divide all or any of its share capital into Shares of larger amount than its existing Shares;

84.3    by subdivision of its existing Shares or any of them divide the whole or any part of its Share capital into Shares of smaller amount than is fixed by the Memorandum or into Shares without par value; and

84.4    cancel any Shares that at the date of the passing of the resolution have not been taken or agreed to be taken by any person.

85    All new Shares created in accordance with the provisions of the preceding Article shall be subject to the same provisions of the Articles with reference to the payment of calls, liens, transfer, transmission, forfeiture and otherwise as the Shares in the original share capital.

86    Subject to the provisions of the Statute and the provisions of these Articles as regards the matters to be dealt with by Ordinary Resolution, the Company may by Special Resolution:

86.1    change its name;

86.2    alter or add to these Articles;

86.3    alter or add to the Memorandum with respect to any objects, powers or other matters specified therein; and

86.4    reduce its share capital and any capital redemption reserve fund.

## REGISTERED OFFICE

87    Subject to the provisions of the Statute, the Company may by resolution of the Directors change the location of its Registered Office.

## GENERAL MEETINGS

88    All general meetings other than annual general meetings shall be called extraordinary general meetings. The Directors may call general meetings.

89    The Company shall, if required by the Statute, in each year hold a general meeting as its annual general meeting, and shall specify the meeting as such in the notices calling it. The annual general meeting shall be held at such time and place as the Directors shall appoint and if no other time and place is prescribed by them, it shall be held at the Registered Office on the second Wednesday in December of each year at ten o'clock in the morning. At these meetings the report of the Directors (if any) shall be presented.

CONFIDENTIAL                    JPMAFF-LBHI00002163

## CLASS MEETINGS

90    A class meeting for holders of a class of Shares may be held for:

    90.1    a proposed variation in the rights attached to any Share as set out in these Articles; or

    90.2    for the approval of a distribution *in specie* of the assets of the Company by a liquidator as set out in these Articles.

91    To any such class meeting all the provisions of these Articles as to general meetings shall *mutatis mutandis* apply, but so that any holder of a Share present in person or by proxy may demand a poll, and on a poll in respect of a class meeting in which there is more than one class of Shares the voting rights attributable to each Share shall be based on the Net Asset Value per Share (calculated as at the most recent Valuation Day) and not on the basis of one share, one vote.

## NOTICE OF GENERAL MEETINGS

92    At least five days' notice shall be given of any general meeting. Every notice shall be exclusive of the day on which it is given or deemed to be given and of the day for which it is given and shall specify the place, the day and the hour of the meeting and the general nature of the business and shall be given in manner hereinafter mentioned or in such other manner if any as may be prescribed by the Company, provided that a general meeting of the Company shall, whether or not the notice specified in this regulation has been given and whether or not the provisions of the Articles regarding general meetings have been complied with, be deemed to have been duly convened if it is so agreed:

    92.1    in the case of an annual general meeting, by all the Members (or their proxies) entitled to attend and vote thereat; and

    92.2    in the case of an extraordinary general meeting, by a majority in number of the Members (or their proxies) having a right to attend and vote at the meeting, being a majority together holding not less than ninety-five per cent in par value of the Shares giving that right.

93    The accidental omission to give notice of a general meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings of that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

94    No business shall be transacted at any general meeting unless a quorum is present. Two Members entitled to attend and vote being individuals present in person or by proxy or if a corporation or other non-natural person by its duly authorised representative shall be a

CONFIDENTIAL    JPMAFF-LBHI00002164

quorum unless the Company has only one Member entitled to vote at such general meeting in which case the quorum shall be that one Member present in person or by proxy or (in the case of a corporation or other non-natural person) by a duly authorised representative.

95    A person may, with the consent of the Directors, participate at a general meeting by conference telephone or other communications equipment by means of which all the persons participating in the meeting can communicate with each other. Participation by a person in a general meeting in this manner is treated as presence in person at that meeting.

96    A resolution (including a Special Resolution) in writing (in one or more counterparts) signed by all Members for the time being entitled to receive notice of and to attend and vote at general meetings (or, being corporations, signed by their duly authorised representatives) shall be as valid and effective as if the resolution had been passed at a general meeting of the Company duly convened and held.

97    If a quorum is not present within half an hour from the time appointed for the meeting or if during such a meeting a quorum ceases to be present, the meeting, if convened upon the requisition of Members, shall be dissolved and in any other case it shall stand adjourned to the same day in the next week at the same time and place or to such other day, time or such other place as the Directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Members present shall be a quorum.

98    The chairman, if any, of the Board shall preside as chairman at every general meeting of the Company, or if there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting, or is unwilling to act, the Directors present shall elect one of their number to be chairman of the meeting.

99    If no Director is willing to act as chairman or if no Director is present within fifteen minutes after the time appointed for holding the meeting, the Members present shall choose one of their number to be chairman of the meeting.

100    The chairman may, with the consent of a meeting at which a quorum is present, (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a general meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting. Otherwise it shall not be necessary to give any such notice.

101    A resolution put to the vote of the meeting shall be decided on a show of hands unless before, or on the declaration of the result of, the show of hands, the chairman or any other Member or Members collectively present in person or by proxy and holding at least ten

CONFIDENTIAL

per cent. in par value of the Shares giving a right to attend and vote at the meeting demands a poll.

102    Unless a poll is duly demanded a declaration by the chairman that a resolution has been carried or carried unanimously, or by a particular majority, or lost or not carried by a particular majority, an entry to that effect in the minutes of the proceedings of the meeting shall be conclusive evidence of that fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

103    The demand for a poll may be withdrawn.

104    Except on a poll demanded on the election of a chairman or on a question of adjournment, a poll shall be taken as the chairman directs, and the result of the poll shall be deemed to be the resolution of the general meeting at which the poll was demanded.

105    A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the general meeting directs, and any business other than that upon which a poll has been demanded or is contingent thereon may proceed pending the taking of the poll.

106    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman shall be entitled to a second or casting vote.

107    The Directors shall on a Members' requisition forthwith proceed to convene an extraordinary general meeting of the Company.

108    A Members' requisition is a requisition of Members of the Company holding at the date of deposit of the requisition not less than ten per cent. in par value of the Shares of the Company as at that date which carry the right to vote at general meetings of the Company.

109    The requisition must state the objects of the meeting and must be signed by the requisitionists and deposited at the Registered Office, and may consist of several documents in like form each signed by one or more requisitionists.

110    If the Directors do not within twenty-one days from the date of the deposit of the requisition duly proceed to convene a general meeting to be held within a further twenty-one days, the requisitionists, or any of them representing more than one-half of the total voting rights of all of them, may themselves convene a general meeting, but any meeting so convened shall not be held after the expiration of three months after the expiration of the said twenty-one days.

CONFIDENTIAL

111 A general meeting convened as aforesaid by requisitionists shall be convened in the same manner as nearly as possible as that in which general meetings are to be convened by Directors.

## VOTES OF MEMBERS

112 The Directors may issue Shares on terms that they are non-voting or on terms that no matter the number of Shares held by a particular Member, such Member shall not be entitled to exercise voting rights exceeding such percentage of the total voting rights attributable to all the Shares then in issue as the Directors and such Member may agree or as the Directors may determine. Subject thereto and to any rights or restrictions attached to any Shares, on a show of hands every Member holding Shares who (being an individual) is present in person or by proxy or, if a corporation or other non-natural person, is present by its duly authorised representative or proxy, shall have one vote and on a poll every Member shall have one vote for every Share of which he is the holder, save that in respect of a class meeting in which there is more than one class of Shares entitled to vote the voting rights attributable to each Share shall be based on the Net Asset Value per Share (calculated as at the most recent Valuation Day) and not on the basis of one Share, one vote.

113 In the case of joint holders of record the vote of the senior holder who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders, and seniority shall be determined by the order in which the names of the holders stand in the Register of Members.

114 A Member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee, receiver, curator bonis, or other person on such Member's behalf appointed by that court, and any such committee, receiver, curator bonis or other person may vote by proxy.

115 No person shall be entitled to vote at any general meeting unless he is registered as a Member on the record date for such meeting nor unless all calls or other monies then payable by him in respect of such Shares have been paid.

116 No objection shall be raised to the qualification of any voter except at the general meeting or adjourned general meeting at which the vote objected to is given or tendered and every vote not disallowed at the meeting shall be valid. Any objection made in due time shall be referred to the chairman whose decision shall be final and conclusive.

117 On a poll or on a show of hands votes may be cast either personally or by proxy. A Member may appoint more than one proxy or the same proxy under one or more instruments to attend and vote at a meeting. Where a Member appoints more than one proxy the instrument of proxy shall state which proxy is entitled to vote on a show of hands.

CONFIDENTIAL

JPMAFF-LBHI00002167

118   A Member holding more than one Share need not cast the votes in respect of his Shares in the same way on any resolution and therefore may vote a Share or some or all such Shares either for or against a resolution and/or abstain from voting a Share or some or all of the Shares and, subject to the terms of the instrument appointing him, a proxy appointed under one or more instruments may vote a Share or some or all of the Shares in respect of which he is appointed either for or against a resolution and/or abstain from voting.

### PROXIES

119   The instrument appointing a proxy shall be in writing, be executed under the hand of the appointor or of his attorney duly authorised in writing, or, if the appointor is a corporation under the hand of an officer or attorney duly authorised for that purpose. A proxy need not be a Member of the Company.

120   The instrument appointing a proxy shall be deposited at the Registered Office or at such other place as is specified for that purpose in the notice convening the meeting, or in any instrument of proxy sent out by the Company:

120.1   not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote; or

120.2   in the case of a poll taken more than 48 hours after it is demanded, be deposited as aforesaid after the poll has been demanded and not less that 24 hours before the time appointed for the taking of the poll; or

120.3   where the poll is not taken forthwith but is taken not more than 48 hours after it was demanded be delivered at the meeting at which the poll was demanded to the chairman or to the secretary or to any director;

provided that the Directors may in the notice convening the meeting, or in an instrument of proxy sent out by the Company, direct that the instrument appointing a proxy may be deposited at the Registered Office no later than the time for holding the meeting or adjourned meeting. The chairman may in any event at his discretion direct that an instrument of proxy shall be deemed to have been duly deposited. An instrument of proxy that is not deposited in the manner permitted shall be invalid.

121   The instrument appointing a proxy may be in any usual or common form and may be expressed to be for a particular meeting or any adjournment thereof or generally until revoked. An instrument appointing a proxy shall be deemed to include the power to demand or join or concur in demanding a poll.

122   Votes given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed, or the transfer of the Share in respect of which the proxy is given unless notice in writing of such death, insanity, revocation or transfer was received by the Company at the Registered Office before the commencement of

the general meeting, or adjourned meeting at which it is sought to use the proxy.

## CORPORATE MEMBERS

**123**   Any corporation or other non-natural person which is a Member of the Company may in accordance with its constitutional documents, or in the absence of such provision by resolution of its directors or other governing body, authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any class of Members, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as the corporation could exercise if it were an individual Member.

## SHARES BENEFICIALLY OWNED BY THE COMPANY

**124**   Shares in the Company that are beneficially owned by the Company shall not be voted, directly or indirectly, at any meeting and shall not be counted in determining the total number of outstanding Shares at any given time.

## DIRECTORS

**125**   There shall be a Board consisting of not less than two persons nor more than ten persons (exclusive of alternate Directors) provided however that the Company may from time to time by Ordinary Resolution increase or reduce the limits in the number of Directors and provided further that a majority of the Directors shall at all times be "Unaffiliated Directors". For purposes of these Articles, a Director shall be deemed "Unaffiliated" if, in the reasonable judgment of the Board, such Director (i) does not have a material business or professional business relationship with the Company, the Adviser or any of their Affiliates (other than such relationship as exists solely by reason of such person being a Director); (ii) is not an employee, executive officer, director, member or controlling shareholder of the Company, the Adviser or any of their Affiliates (other than being a Director); (iii) is not entitled to receive, or has not received during the three years prior to the date a determination is made under this definition, payment in excess of REDACTED per year from the Company, the Adviser or any of their Affiliates (other than Director's fees); or (iv) has not engaged in any principal transaction with, or distributed shares, limited partnership interests or other securities or participation interests issued by the Company, the Adviser or any of their Affiliates. In applying this definition, all facts and circumstances concerning an individual shall be considered, including without limitation, all commercial, industrial, banking, consulting, legal, accounting, charitable and familial relationships.

**126**   The first Directors of the Company shall be determined in writing by, or appointed by a resolution of, the subscribers.

## POWERS OF DIRECTORS

CONFIDENTIAL          JPMAFF-LBHI00002169

127   Subject to the provisions of the Statute, the Memorandum and the Articles and to any directions given by Special Resolution, the business of the Company shall be managed by the Directors who may exercise all the powers of the Company. No alteration of the Memorandum or Articles and no such direction shall invalidate any prior act of the Directors which would have been valid if that alteration had not been made or that direction had not been given. A duly convened meeting of Directors at which a quorum is present may exercise all powers exercisable by the Directors. Notwithstanding anything contained herein to the contrary, during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules and subject to the prohibited transaction rules of ERISA and/or Section 4975 of the Code, any discretionary authority with respect to the management and disposition of such "plan assets" during such period shall be exercised by the Adviser.

128   All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for monies paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed as the case may be in such manner as the Directors shall determine by resolution.

129   The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof and to issue debentures, debenture stock, mortgages, bonds and other such securities whether outright or as security for any debt, liability or obligation of the Company or of any third party.

## APPOINTMENT AND REMOVAL OF DIRECTORS

130   Subject to Article 125, the Company may, by a resolution of a simple majority in number of the Members appoint any person to be a Director and may by a resolution of a simple majority in number of the Members remove any Director.

131   Subject to Article 125, the Directors may appoint any person to be a Director, either to fill a vacancy or as an additional Director, provided that that the appointment does not cause the number of Directors to exceed any number fixed by or in accordance with these Articles as the maximum number of Directors.

## VACATION OF OFFICE OF DIRECTOR

132   The office of a Director shall be vacated if:

132.1   he gives notice in writing to the Company that he resigns the office of Director;

132.2   if he absents himself (without being represented by proxy or an alternate Director appointed by him) from three consecutive meetings of the Board without special leave of absence from the Directors, and they pass a resolution that he has by reason of such absence vacated office;

CONFIDENTIAL

132.3    if he dies, becomes bankrupt or makes any arrangement or composition with his creditors generally;

132.4    if he is of unsound mind or becomes of unsound mind; or

132.5    if all the other Directors of the Company (being not less than two in number) resolve that he should be removed as a Director.

## PROCEEDINGS OF DIRECTORS

133    The quorum for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall be two if there are two or more Directors, and shall be one if there is only one Director. A person who holds office only as an alternate Director shall, if his appointor is not present, be counted in the quorum.

134    Subject to the provisions of the Articles, the Directors may regulate their proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In the case of an equality of votes, the chairman shall have a second or casting vote. A Director who is also an alternate Director shall be entitled in the absence of his appointor to a separate vote on behalf of his appointor in addition to his own vote.

135    A person may participate in a meeting of the Directors or committee of Directors by conference telephone or other communications equipment by means of which all the persons participating in the meeting can communicate with each other at the same time. Participation by a person in a meeting in this manner is treated as presence in person at that meeting. Unless otherwise determined by the Directors the meeting shall be deemed to be held at the place where the chairman is at the start of the meeting.

136    A resolution in writing (in one or more counterparts) signed by all the Directors or all the members of a committee of Directors (an alternate Director being entitled to sign such a resolution on behalf of his appointor) shall be as valid and effectual as if it had been passed at a meeting of the Directors, or committee of Directors as the case may be, duly convened and held.

137    A Director or alternate Director may, or other officer of the Company on the requisition of a Director or alternate Director shall, call a meeting of the Directors by at least two days' notice in writing to every Director and alternate Director which notice shall set forth the general nature of the business to be considered unless notice is waived by all the Directors (or their alternates) either at, before or after the meeting is held.

138    The continuing Directors may act notwithstanding any vacancy in their body, but if and so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors the continuing Directors or Director may act for the purpose of increasing the number of Directors to that number, or of summoning a general meeting of the Company, but for no other purpose.

139    The Directors may elect a chairman of their Board and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

140    All acts done by any meeting of the Directors or of a committee of Directors (including any person acting as an alternate Director) shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any Director or alternate Director, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and qualified to be a Director or alternate Director as the case may be.

141    A Director but not an alternate Director may be represented at any meetings of the Board by a proxy appointed in writing by him. The proxy shall count towards the quorum and the vote of the proxy shall for all purposes be deemed to be that of the appointing Director.

## PRESUMPTION OF ASSENT

142    A Director who is present at a meeting of the Board at which action on any Company matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent from such action with the person acting as the chairman or secretary of the meeting before the adjournment thereof or shall forward such dissent by registered post to such person immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Director who voted in favour of such action.

## DIRECTORS' INTERESTS

143    A Director may hold any other office or place of profit under the Company (other than the office of Auditor) in conjunction with his office of Director for such period and on such terms as to remuneration and otherwise as the Directors may determine (provided that, with respect to an Unaffiliated Director, the holding of such office or place of profit would not result in that Unaffiliated Director ceasing to be Unaffiliated).

144    A Director may act by himself or his firm in a professional capacity for the Company and he or his firm shall be entitled to remuneration for professional services as if he were not a Director or alternate Director (provided that, with respect to an Unaffiliated Director, any such action would not result in that Unaffiliated Director ceasing to be Unaffiliated), but only to the extent it would not result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules.

145    A Director or alternate Director of the Company may be or become a director or other officer of or otherwise interested in any company promoted by the Company or in which the Company may be interested as shareholder or otherwise (provided that, with respect to an Unaffiliated Director, the holding of such office or interest would not result in that Unaffiliated Director ceasing to be Unaffiliated), and no such Director or alternate Director

CONFIDENTIAL        JPMAFF-LBHI00002172

shall be accountable to the Company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company, but only to the extent it would not result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules.

146 Except as required under ERISA during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules, no person shall be disqualified from the office of Director or alternate Director or prevented by such office from contracting with the Company, either as vendor, purchaser or otherwise, nor shall any such contract or any contract or transaction entered into by or on behalf of the Company in which any Director or alternate Director shall be in any way interested be or be liable to be avoided, nor shall any Director or alternate Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or transaction by reason of such Director holding office or of the fiduciary relationship thereby established. A Director (or his alternate Director in his absence) shall be at liberty to vote in respect of any contract or transaction in which he is interested provided that the nature of the interest of any Director or alternate Director in any such contract or transaction shall be disclosed by him at or prior to its consideration and any vote thereon, and only to the extent it would not result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules.

147 A general notice that a Director or alternate Director is a shareholder, director, officer or employee of any specified firm or company and is to be regarded as interested in any transaction with such firm or company shall be sufficient disclosure for the purposes of voting on a resolution in respect of a contract or transaction in which he has an interest, and after such general notice it shall not be necessary to give special notice relating to any particular transaction.

## MINUTES

148 The Directors shall cause minutes to be made in books kept for the purpose of all appointments of officers made by the Directors, all proceedings at meetings of the Company or the holders of any class of Shares and of the Directors, and of committees of Directors including the names of the Directors or alternate Directors present at each meeting.

## DELEGATION OF DIRECTORS' POWERS

149 The Directors may delegate any of their powers to any committee consisting of one or more Directors or such other persons as the Directors may designate. They may also delegate to any managing director or any Director holding any other executive office such of their powers as they consider desirable to be exercised by him provided that an alternate Director may not act as managing director and the appointment of a managing director shall be revoked forthwith if he ceases to be a Director. Any such appointment may be made subject to any conditions the Directors may impose, and either collaterally with or to the exclusion

CONFIDENTIAL

of their own powers and may be revoked or altered. Subject to any such conditions, the proceedings of a committee of Directors shall be governed by the Articles regulating the proceedings of Directors, so far as they are capable of applying.

150    The Directors may establish any committees, local boards or agencies or appoint any person to be a manager or agent for managing the affairs of the Company and may appoint any person to be a member of such committees or local boards. Any such appointment may be made subject to any conditions the Directors may impose, and may be revoked or altered. Subject to any such conditions, the proceedings of any such committee, local board or agency shall be governed by the Articles regulating the proceedings of Directors, so far as they are capable of applying.

151    The Directors may by power of attorney or otherwise appoint any person to be the agent of the Company on such conditions as the Directors may determine, provided that the delegation is not to the exclusion of their own powers and may be revoked by the Directors at any time.

152    The Directors may by power of attorney or otherwise appoint any company, firm, person or body of persons, whether nominated directly or indirectly by the Directors, to be the attorney or authorised signatory of the Company for such purpose and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such powers of attorney or other appointment may contain such provisions for the protection and convenience of persons dealing with any such attorneys as the Directors may think fit and may also authorise any such attorney or other company, firm or person to delegate all or any of the powers, authorities and discretions vested in him.

153    The Directors may appoint such officers as they consider necessary on such terms, at such remuneration and to perform such duties, and subject to such provisions as to disqualification and removal as the Directors may think fit. Unless otherwise specified in the terms of his appointment an officer may be removed by resolution of the Directors or Members.

## ALTERNATE DIRECTORS

154    Any Director (other than an alternate Director) may by writing appoint any other Director, or any other person willing to act, to be an alternate Director and by writing may remove from office an alternate Director so appointed by him.

155    An alternate Director shall be entitled to receive notice of all meetings of Directors and of meetings of committees of Directors of which his appointor is a member, to attend and vote at every such meeting at which the Director appointing him is not personally present, and generally to perform all the functions of his appointor as a Director in his absence.

156    An alternate Director shall cease to be an alternate Director if his appointor ceases to be a Director.

CONFIDENTIAL                    JPMAFF-LBHI00002174

157    Any appointment or removal of an alternate Director shall be by notice to the Company signed by the Director making or revoking the appointment or in any other manner approved by the Directors.

158    An alternate Director shall be deemed for all purposes to be a Director and shall alone be responsible for his own acts and defaults and shall not be deemed to be the agent of the Director appointing him.

## NO MINIMUM SHAREHOLDING FOR DIRECTORS

159    The Company in general meeting may fix a minimum shareholding required to be held by a Director, but unless and until such a shareholding qualification is fixed a Director is not required to hold Shares.

## REMUNERATION OF DIRECTORS

160    Directors shall be paid fees as set forth in the Initial Member's currently effective offering memorandum. Any changes thereto shall be approved by the Members. The Directors shall also be entitled to be paid all travelling, hotel and other expenses properly incurred by them in connection with their attendance at meetings of Directors or committees of Directors, or general meetings of the Company, or separate meetings of the holders of any class of Shares or debentures of the Company, or otherwise in connection with the business of the Company, or to receive a fixed allowance in respect thereof as may be determined by the Directors, or a combination partly of one such method and partly the other.

161    The Directors may by resolution approve additional remuneration to any Director for any services other than his ordinary routine work as a Director, provided, that, during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules, such additional remuneration shall be subject to the approval of the Adviser. Any fees paid to a Director who is also counsel or solicitor to the Company, or otherwise serves it in a professional capacity shall be in addition to his remuneration as a Director.

## SEAL

162    The Company may, if the Directors so determine, have a Seal. The Seal shall only be used by the authority of the Directors or of a committee of the Directors authorised by the Directors. Every instrument to which the Seal has been affixed shall be signed by at least one person who shall be either a Director or some officer or other person appointed by the Directors for the purpose.

163    The Company may have for use in any place or places outside the Cayman Islands a duplicate Seal or Seals each of which shall be a facsimile of the common Seal of the Company and, if the Directors so determine, with the addition on its face of the name of every place where it is to be used.

164    A Director or officer, representative or attorney of the Company may without further

CONFIDENTIAL

authority of the Directors affix the Seal over his signature alone to any document of the Company required to be authenticated by him under seal or to be filed with the Registrar of Companies in the Cayman Islands or elsewhere wheresoever.

## DIVIDENDS, DISTRIBUTIONS AND RESERVE

**165**    Subject to the Statute and these Articles, the Directors may, in their absolute discretion, declare dividends and distributions on any class or series (or sub-series) of Shares in issue and authorise payment of the dividends or distributions out of the relevant Separate Fund in respect of each class or series (or sub-series) of Share. No dividend or distribution shall be paid except out of the realised or unrealised profits of the Company, or out of the share premium account attributable to the class or series (or sub-series) of Shares in respect of which the dividend is proposed to be paid, or as otherwise permitted by the Statute.

**166**    Except as otherwise provided by the rights attached to Shares, all dividends in respect of a particular class or series (or sub-series) of Shares shall be declared and paid according to the par value of the Shares of the class or series (or sub-series) that a Member holds. If any Share is issued on terms providing that it shall rank for dividend as from a particular date, that Share shall rank for dividend accordingly.

**167**    The Directors may deduct and withhold from any dividend or distribution payable to any Member all sums of money (if any) then payable by him to the Company on account of calls or otherwise or any monies which the Company is obliged by law to pay to any taxing or other authority.

**168**    The Directors may, in respect of any one or more class or series (or sub-series) of Shares, resolve to accumulate the income or profits arising or accruing to that class or series (or sub-series) and for so long as such resolution remains in effect, no dividend shall be declared or paid in respect of such class or series (or sub-series).

**169**    Under no circumstances may the assets (or the income derived from such assets) attributed to a Separate Fund in respect of any class or series (or sub-series) of Shares be used to pay a dividend in respect of a Separate Fund which is attributed to any other class or series (or sub-series) of Shares.

**170**    The Directors may declare that any dividend or distribution be paid wholly or partly by the distribution of specific assets and in particular of shares, debentures, or securities of any other company or in any one or more of such ways and where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient and in particular may issue fractional Shares and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Members upon the basis of the value so fixed in order to adjust the rights of all Members and may vest any such specific assets in trustees as may seem expedient to the Directors.

**171**    Any dividend, distribution, interest or other monies payable in cash in respect of Shares may be paid by wire transfer to the holder or by cheque or warrant sent through the post directed

CONFIDENTIAL

to the registered address of the holder or, in the case of joint holders, to the registered address of the holder who is first named on the Register of Members or to such person and to such address as such holder or joint holders may in writing direct. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent. Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other monies payable in respect of the Share held by them as joint holders.

172    Any dividend which cannot be paid to a Member and/or which remains unclaimed after six months from the date of declaration of such dividend may, in the discretion of the Directors, be paid into a separate account in the Company's name, provided that the Company shall not be constituted as a trustee in respect of that account and the dividend shall remain as a debt due to the Member. Any dividend which remains unclaimed after a period of six years from the date of declaration of such dividend shall be forfeited and shall revert to the Company.

173    No dividend or distribution shall bear interest against the Company.

## CAPITALISATION

174    The Directors may capitalise any sum standing to the credit of any of the Company's reserve accounts (including share premium account and capital redemption reserve fund) or any sum standing to the credit of profit and loss account or otherwise available for distribution and to appropriate such sum to Members of any class or series (or sub-series) in the proportions in which such sum would have been divisible amongst them had the same been a distribution of profits by way of dividend and to apply such sum on their behalf in paying up in full unissued Shares for allotment and distribution credited as fully paid-up to and amongst them in the proportion aforesaid. In such event the Directors shall do all acts and things required to give effect to such capitalisation, with full power to the Directors to make such provisions as they think fit for the case of Shares becoming distributable in fractions (including provisions whereby the benefit of fractional entitlements accrue to the Company rather than to the Members concerned). The Directors may authorise any person to enter into an agreement with the Company on behalf of all of the Members interested, providing for such capitalisation and matters incidental thereto and any agreement made under such authority shall be effective and binding on all concerned.

## BOOKS OF ACCOUNT

175    The Directors shall cause proper books of account to be kept with respect to all sums of money received and expended by the Company and the matters in respect of which the receipt or expenditure takes place, all sales and purchases of goods by the Company and the assets and liabilities of the Company. Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs, and to explain its transactions.

176    The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the

Company or any of them shall be open to the inspection of Members not being Directors and no Member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by Statute, or authorised by the Directors or by the Company in general meeting.

177    The Directors may from time to time cause to be prepared and to be laid before the Company in general meeting profit and loss accounts, balance sheets, group accounts (if any) and such other reports and accounts as may be required by law.

## AUDIT

178    The Directors may appoint an Auditor of the Company who shall hold office until removed from office by a resolution of the Directors, and may fix his or their remuneration.

179    Every Auditor of the Company shall have a right of access at all times to the books and accounts and vouchers of the Company and shall be entitled to require from the Directors and officers of the Company such information and explanation as may be necessary for the performance of the duties of the Auditor.

180    Auditors shall, if so required by the Directors, make a report on the accounts of the Company during their tenure of office at the next annual general meeting following their appointment in the case of a company which is registered with the Registrar of Companies as an ordinary company, and at the next extraordinary general meeting following their appointment in the case of a company which is registered with the Registrar of Companies as an exempted company, and at any other time during their term of office, upon request of the Directors or any general meeting of the Members.

## NOTICES

181    Notices shall be in writing and may be given by the Company to any Member either personally or by sending it by post, cable, telex, fax or e-mail to him or to his address as shown in the Register of Members (or where the notice is given by e-mail by sending it to the e-mail address provided by such Member).  Any notice, if posted from one country to another, is to be sent airmail.

182    Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, pre-paying and posting a letter containing the notice, and shall be deemed to have been received on the fifth day (not including Saturdays or Sundays or public holidays in the Cayman Islands) following the day on which the notice was posted.  Where a notice is sent by cable, telex or fax, service of the notice shall be deemed to be effected by properly addressing and sending such notice and shall be deemed to have been received on the same day that it was transmitted.  Where a notice is given by e-mail service shall be deemed to be effected by transmitting the e-mail to the e-mail address provided by the intended recipient and shall be deemed to have been received on the same day that it was sent, and it shall not be necessary for the receipt of the e-mail to be acknowledged by the recipient.

183    A notice may be given by the Company to the person or persons which the Company has been advised are entitled to a Share or Shares in consequence of the death or bankruptcy of a Member in the same manner as other notices which are required to be given under these Articles and shall be addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt, or by any like description at the address supplied for that purpose by the persons claiming to be so entitled, or at the option of the Company by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

184    Notice of every general meeting shall be given in the manner authorised by these Articles to every person shown as holding Shares in the Register of Members on the record date for such meeting except that in the case of joint holders the notice shall be sufficient if given to the joint holder first named in the Register of Members and every person upon whom the ownership of a Share devolves by reason of his being a legal personal representative or a trustee in bankruptcy of a Member of record where the Member of record but for his death or bankruptcy would be entitled to receive notice of the meeting, and no other person shall be entitled to receive notices of general meetings.

## WINDING UP

185    If the Company shall be wound up the liquidator shall apply the assets of the Company in satisfaction of creditors' claims in such manner and order as he thinks fit. The liquidator shall in relation to the assets available for distribution among the Members make in the books of the Company such transfers thereof to and from Separate Funds as may be necessary in order that the effective burden of such creditors' claims may be shared among the holders of Shares of different classes or series (or sub-series) in such proportions as the liquidator in his absolute discretion may think equitable.

186    The balance shall then be paid to the holders of Shares *pro rata* based on the Net Asset Value of the Shares held, subject to a deduction from those Shares in respect of which there are monies due, of all monies due to the Company for unpaid calls, or otherwise.

187    If the Company shall be wound up (whether the liquidation is voluntary or by or under the supervision of the Court) the liquidator may, with the authority of a resolution or resolutions passed by the holders of Shares (whether as a whole or at separate class meetings), divide among the Members in kind the whole or any part of the assets of the Company, and whether or not the assets shall consist of property of one kind or shall consist of properties of different kinds, and may for such purposes set such value as he deems fair upon any one or more class or classes of property, and may determine how such division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like authority, vest any part of the assets in trustees upon such trusts for the benefit of Members as the liquidator, with the like authority, shall think fit, and the liquidation of the Company may be closed and the Company dissolved, but so that no Member shall be compelled to accept any shares in respect of which there is a liability.

CONFIDENTIAL        JPMAFF-LBHI00002179

## INDEMNITY

188    None of the Adviser, Administrator, the Board, officers of the Company or, in each case, any officers, directors, members, partners, representatives, managers, employees, shareholders or agents or affiliates thereof, or any officers, directors, members, partners, representatives, managers, employees, shareholders or agents of any such affiliates (each an "Indemnified Person") shall be liable to the Company or to the holders of Shares of the Company for any losses, claims, damages, liabilities, judgements, demands, charges or expenses of every kind or nature whatsoever (including without limitation, legal fees) (one or more, "Damages") arising from any act or omission performed or omitted by it in connection with the Company's business or affairs except for any such Damages determined by final judgment of a court of competent jurisdiction to have been primarily attributable to such Indemnified Person's Gross Negligence, wilful misconduct or, only with respect to Members that are subject to ERISA, during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules, violation of the fiduciary standard imposed by ERISA by any person who would be considered a "fiduciary" (within the meaning of Section 3(21) of ERISA) with respect to the assets of the Company or the Members who are subject to ERISA.

189    To the fullest extent permitted by law, the Company shall indemnify each Indemnified Person with respect to the Company for any damages incurred by such Indemnified Person arising from any act or omission performed or omitted by it in connection with the Company's business or affairs except for any such Damages determined by final judgment of a court of competent jurisdiction to have been primarily attributable to such Indemnified Person's Gross Negligence, wilful misconduct or, during any period in which the assets of the Company would be considered to be "plan assets" under the Plan Assets Rules, violation of the fiduciary standard imposed by ERISA by any person who would be considered a "fiduciary" (within the meaning of Section 3(21) of ERISA) with respect to the assets of the Company or the Members who are subject to ERISA.

## DISCLOSURE

190    If required to do so under the laws of any jurisdiction to which the Company, the Adviser, Administrator or any service provider is subject, or in compliance with the rules of any stock exchange upon which the Company's shares are listed, or to ensure the compliance by any person with any anti-money laundering law in any relevant jurisdiction, any Director, Officer, Adviser, Administrator or Auditor of the Company shall be entitled to release or disclose any information in his or its possession regarding the affairs of the Company or a Member including, without limitation, any information contained in the Register of Members or subscription documentation of the Company relating to any Member.

## FINANCIAL YEAR

191    Unless the Directors otherwise prescribe, the financial year of the Company shall end on 31st December in each year and, following the year of incorporation, shall begin on 1st January in each year.

## TRANSFER BY WAY OF CONTINUATION

192    If the Company is exempted as defined in the Statute, it shall, subject to the provisions of the Statute and with the approval of a Special Resolution, have the power to register by way of continuation as a body corporate under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

CERTIFIED TO BE A TRUE AND CORRECT COPY
SIG.

CINDY Y. JEFFERSON-BULGIN
Deputy Registrar

Date. 6th August, 2007

REGISTRAR OF COMPANIES
EXEMPTED
CAYMAN ISLANDS

CONFIDENTIAL