TO:    The Registrar of Companies
       George Town
       Grand Cayman

**HIGHBRIDGE FIXED INCOME OPPORTUNITY FUND, LTD. (the "Company")**

**TAKE NOTICE** that by way of special resolution on 21st April 2006, it was **RESOLVED:**

**THAT** the Articles of Association of the Company be and they are hereby amended by their entire deletion and their substitution by the Articles of Association attached to this resolution and marked "A".

Carolyn Smith
For and On behalf of
M&C Corporate Services Limited

Dated this 21st April, 2006

CERTIFIED TO BE A TRUE AND CORRECT COPY
SIG.
DONNELL H. DIXON
Snr/Assistant Registrar
Date. 24th April, 2006



REGISTRAR OF COMPANIES
APR 2 4 2006
CAYMAN ISLANDS

CONFIDENTIAL                    JPMAFF-LBHI00001460

"A"

THE COMPANIES LAW (2004 REVISION)

COMPANY LIMITED BY SHARES

AMENDED AND RESTATED
ARTICLES OF ASSOCIATION

OF

**HIGHBRIDGE FIXED INCOME OPPORTUNITY FUND, LTD.**

(Amended and restated pursuant to a special resolution of the subscriber dated 21st April, 2006)

INTERPRETATION

1.    In these Articles Table A in the Schedule to the Companies Law (2004 Revision) does not apply and the following words and expressions, shall bear the meanings set out below, if not inconsistent with the subject or context:

| | |
|---|---|
| "Administrator" | means BNY Alternative Investment Services, Inc. or such other person, firm or corporation appointed and for the time being acting as such for the Company. |
| "Articles" | means these Articles as originally framed or as from time to time altered by Special Resolution. |
| "Auditor" | means the auditor or auditors for the time being of the Company. |
| "Company" | means the above named **Highbridge Fixed Income Opportunity Fund, Ltd.** |
| "Confidential Memorandum" | means the confidential memorandum relating to the issue of Participating Shares. |
| "Commodity Pool Operator" | means Highbridge Capital Management, LLC or such other person, firm or corporation appointed and for the time being acting as such for the Company. |

-2-

| | |
|---|---|
| "Directors" | means the Directors of the Company for the time being. |
| "dollars" or "$" | refers to the dollar currency of the United States of America and references to "cents" should be construed accordingly. |
| "Electronic Transactions Law" | means the Electronic Transactions Law (2003 Revision) of the Cayman Islands. |
| "fiscal charges" | includes stamp duty and any other governmental taxes or charges. |
| "Initial Price" | means the price at which the Participating Shares shall be allotted and issued at the termination of the Offering Period and as set out in the Confidential Memorandum. |
| "Islands" | means the Cayman Islands. |
| "Law" | means the Companies Law (2004 Revision) of the Cayman Islands as amended and every statutory modification or re-enactment thereof for the time being in force. |
| "may" | shall be construed as permissive. |
| "Net Asset Value" | when used with reference to a Participating Share means the price determined in accordance with the provisions of Article 16. |
| "New Issues" | shall have the meaning ascribed to such term from time to time in National Association of Securities Dealers, Inc. Rule 2790 or any successor rule. |
| "notice" | means written notice unless otherwise specifically stated. |
| "Offering Period" | means the offering period for Participating Shares as determined by the Directors. |
| "Ordinary Resolution" | means a resolution passed by a simple majority of the Shareholders as, being |

CAS/615202/1543452/v4

-3-

|  |  |
|---|---|
|  | entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting, and includes a unanimous written resolution. In computing the majority when a poll is demanded regard shall be had to the number of votes to which each Shareholder is entitled by the Articles. |
| "Participating Share" | means a participating redeemable share in the capital of the Company of U.S.$0.001 par value per share issued subject to and in accordance with the provisions of Section 34 of the Law and of these Articles and having the rights provided for under these Articles. |
| "Redemption Value" | means the amount payable by the Company with respect to a Participating Share upon its redemption determined in accordance with the provisions of Article 17. |
| "Register of Shareholders" | means the Register maintained in accordance with Article 8 and includes except where otherwise stated any duplicate Register of Shareholders. |
| "Seal" | means the Common Seal of the Company, if any, and includes every duplicate seal. |
| "Secretary" | shall include a temporary or assistant secretary and any person appointed by the Directors to perform any of the duties of the Secretary; and in the event of two or more persons being appointed as joint Secretaries means any one or more of the persons so appointed. |
| "shall" | shall be construed as imperative. |
| "Shareholder" | means any person registered in the Register of Shareholders as the holder of Participating Shares in the Company, and, when two or more persons are so registered as joint holders of shares, means the person |

CONFIDENTIAL                    JPMAFF-LBHI00001463

-4-

| | |
|---|---|
| | whose name stands first in the Register of Shareholders as one of such joint holders. |
| "signed" | includes a signature or representation of a signature affixed by mechanical means. |
| "Special Resolution" | means a resolution passed by a majority as set out in Section 60 of the Law or approved in writing by all Shareholders by written consent. |
| "Trading Manager" | means Highbridge Capital Management, LLC or such other person, firm or corporation appointed and for the time being acting as trading manager of the Company. |
| "United Kingdom" | means the United Kingdom of Great Britain and Northern Ireland. |
| "United States" or "U.S." | means the United States of America (including the states and the District of Columbia) its territories, its possessions and other areas subject to its jurisdiction |
| "U.S. person" | means: (i) an individual who is a citizen or resident of the United States; (ii) a corporation, partnership or other entity created or organised under the laws of or existing in the United States or any political subdivision thereof; (iii) an estate or trust the income of which is subject to United States Federal income tax regardless of its source; or (iv) any corporation, partnership, trust, estate or other entity in which an individual or entity described in (i), (ii) or (iii) has a beneficial interest, whether directly or indirectly. |
| "Valuation Date" | means the last day of each calendar month or such other date or dates as the Directors shall from time to time determine. |
| "in writing" and "written" | includes printing, lithography, photography and other modes of representing or |

reproducing words in permanent visible form.

## PRELIMINARY

2.    The Company shall pay all expenses incurred in or about the formation and establishment of the Company, including the expenses of registration and the issue of Participating Shares.

## SITUATIONS OF REGISTERED OFFICE
## AND PRINCIPAL OFFICE OF COMPANY

3.    The registered office of the Company shall be at such address in the Islands as the Directors shall from time to time determine.  No place of business may be established in the United States or the United Kingdom.

4.    A principal office may be located at any location other than the United States or the United Kingdom as the Directors shall from time to time determine, subject to the provisions of the Law.

## SHARES

5.    (1)    On or before the allotment of any Participating Shares, if applicable, the Directors shall resolve the class (or series of a class) to which such Participating Shares shall be designated.  Each class (or series) of Participating Shares shall be specifically identified. Any such designation made by or on behalf of the Directors may be cancelled by subsequent resolution of the Directors, and such Participating Shares shall after such redesignation be available for allotment and issue as a part of any other class (or series) of Participating Shares.  Except as otherwise determined by the Directors and subject as provided herein, the Company on receipt by it or its authorised agents of a written or telexed application in such form as the Directors may determine, may allot and issue Participating Shares of any class (or series of a class) at the termination of the Offering Period at the Initial Price and thereafter, on the first day of each month at their Net Asset Value as of the close of business on the immediately preceding Valuation Date or on such other dates as the Directors may determine.  The Directors may in their discretion refuse to allot and issue any Participating Shares.  Subject to these Articles, the Directors may allot, issue, grant options over or otherwise dispose of all shares in the capital of the Company with or without preferred, deferred or other rights or restrictions, whether in regard to dividend, voting, return of capital or otherwise and to such persons, at such times and on such other terms as they think proper.

CONFIDENTIAL

-6-

(2)    No contract note in respect of any allotment of Participating Shares in the Company shall be issued and no Participating Shares in the Company shall be issued unless the Company is in receipt of value in cleared funds.

(3)    The following provisions shall apply in connection with the issue of Participating Shares pursuant to the preceding paragraphs of this Article:

(a)    The Directors may issue Participating Shares on terms that the persons to whom they are issued shall bear any fiscal charges which may be incurred outside the Islands and may require the subscribers therefor to pay such selling commissions and organisational charges as may be disclosed in the Confidential Memorandum to such persons as may be specified in the Confidential Memorandum.

(b)    Subject to receipt of any necessary governmental consents payment shall be made in such currency at such time and in such place and to such person on behalf of the Company as the Directors may from time to time determine.

(c)    Any subscription monies received by the Company which shall be insufficient to pay the Initial Price or subsequent issue price of a Participating Share in full shall be applied to the issue of fractional Shares.

(d)    Unless the Directors shall otherwise determine at the time of allotment and issue of such Participating Shares, the holder of a Participating Share shall be entitled to receive notice of attend at and vote at general meetings of the Company.

(4) In order to give effect to the calculation and/or payment of the incentive fees payable to the Trading Manager and the proper equalization of Net Asset Value per Share for Participating Shares and any equalization policy which they may adopt from time to time and notwithstanding any other provision of these Articles the Directors may:

(i)    compulsorily redeem Participating Shares of any class or series at prices equal to or other than Net Asset Value per Share;

(ii)    issue Participating Shares of any class or series by way of bonus to existing Shareholders on an individual basis and at prices equal to or other than Net Asset Value per Share;

(iii)    determine the manner in which such incentive fee shall be payable on a transfer of Participating Shares of any class or series;

(iv)    on any subscription require that all applicants for Participating Shares pay such additional amounts as the Directors may determine necessary to ensure that all holders of Participating Shares have the same amount per Participating Share at risk;

CAS/615202/1543452/v4

-7-

(v)     on any redemption require that all Shareholders receive such additional amounts as the Directors may determine necessary to ensure that all holders of Participating Shares have the same amount per Participating Share at risk;

(vi)    determine such other procedures as the Directors consider necessary in order to equalize the Net Asset Value per Share between Shareholders holding Participating Shares; and

(vii)   determine such other procedures as the Directors considers necessary or desirable in connection with the calculation and/or payment of any incentive fee.

(5)     The Directors shall, for accounting purposes, establish a separate account for each class of Participating Shares, and to the extent a separate series is established within a class, the Directors shall establish a separate account for each such series. Each separate account shall be designated by reference to such class (or series) of Participating Shares, and the following provisions shall apply thereto:

(a)     The proceeds from the allotment and issue of each class (or series) of Participating Shares shall be applied in the books of the Company to the separate account established for that class (or series) of Participating Shares and designated by reference to it, and the assets and liabilities and income and expenditure attributable thereto shall be applied to such separate account subject to the provisions of this Article 5(5);

(b)     Where any asset is derived from another asset (whether cash or otherwise), such derivative asset shall be applied in the books of the Company to the same separate account as the asset from which it was derived, and on each revaluation of an asset, the increase or diminution in value shall be applied to the relevant separate account;

(c)     In the case of any asset of the Company which the Directors do not consider is attributable to a particular separate account or separate accounts, the Directors shall have discretion, subject to the approval of the Auditors, to determine the basis upon which any such asset shall be allocated between or among (all or less than all of the) separate accounts, and the Directors shall have power at any time and from time to time, subject to the approval of the Auditors, to vary such basis; PROVIDED THAT the approval of the Auditors shall not be required in any case where the asset is allocated between or among all the separate accounts pro rata to the aggregate Net Asset Values of the class (or series) of Participating Shares to which they relate;

CAS/615202/1543452/v4

-8-

(d)    The Directors shall have discretion, subject to the approval of the Auditors, to determine the basis upon which any liability shall be allocated between or among separate accounts (including conditions as to subsequent reallocations thereof if circumstances so permit), and shall have power at any time and from time to time, subject to the approval of the Auditors, to vary such basis; PROVIDED THAT the approval of the Auditors shall not be required in any case where a liability is allocated to the separate account or separate accounts to which in the Directors' opinion it relates or, if in the Directors' opinion it does not relate to any particular separate account or separate accounts, between or among all the separate accounts pro rata to the aggregate Net Asset Values of the class (or series) of Participating Shares to which they relate;

(e)    Subject to the approval of the Auditors, the Directors may in the books of the Company transfer any assets to and from separate accounts if, as a result of a creditor proceeding against certain of the assets of the Company or otherwise, a liability would be borne in a different manner from that in which it would have been borne under paragraph (d) above, or in any similar circumstances.

6.    No person shall be recognised by the Company as holding any share upon any trust and the Company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future, or partial interest in any share or (except only as is otherwise provided by these Articles or the Law) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

7.    The Company shall not be bound to register more than four persons as the joint holders of any share and in the case of joint holders any such holder may give an effectual receipt.

## REGISTER OF SHAREHOLDERS

8.    (1)    The Directors shall keep or cause to be kept at the registered office of the Company or such other place determined by the Directors a Register of Shareholders containing such particulars relating to each Shareholder as they may deem appropriate provided that the following particulars are recorded:

(a)    the name and address of each Shareholder, a statement of the shares of each class held by him and of the amount paid or agreed to be considered as paid on such shares;

(b)    the date on which each person was entered in the Register as a Shareholder;

(c)    the date on which any person ceased to be a Shareholder.

CAS/615202/1543452/v4

CONFIDENTIAL                    JPMAFF-LBHI00001468

-9-

(2)    The Register of Shareholders shall be kept in such manner as to show at all times the Shareholders of the Company for the time being and the shares respectively held by them.

(3)    The Company may after giving fifteen days notice to the Shareholders close the Register of Shareholders for any time or times not exceeding in the whole thirty days in each year.

(4)    No certificates shall be issued in respect of Participating Shares.

## TRANSFER OF SHARES

9.    Subject to the provisions of these Articles and any restrictions on transfer stipulated by the Directors from time to time, Participating Shares in the Company shall be transferable by a transfer in any usual or common form in use in the Islands or in such other form as the Directors shall from time to time sanction or allow, and shall state the full name and address (and, if required by the Directors, the nationality and country of residence and domicile) of the transferor and of the transferee.

10.    Instruments of transfer shall be signed by the transferor (and in the case of partly paid shares by the transferee).

11.    The transferor of a Participating Share shall be deemed to remain the holder of such Participating Shares until the same has been transferred to the transferee in the Register of Shareholders.

12.    No transfer of Participating Shares shall be effected without the prior written consent of the Directors who may, in their absolute discretion refuse to register any such transfer without assigning any reason therefor.  If the Directors shall so refuse they shall within two months send to the transferor and proposed transferee notice of the refusal.

## TRANSMISSION OF SHARES

13.    Subject to Article 12, in case of the death of a Shareholder, the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the Company as having any title to his interest in the Participating Shares, but nothing herein contained shall release the estate of any such deceased holder from any liability in respect of any shares which had been held by him solely or jointly with other persons.

14.    (1)    Subject to Article 12, any person becoming entitled to a Participating Share in consequence of the death, incompetency, termination, insolvency, dissolution or bankruptcy of a Shareholder (or in any other way than by transfer) may, upon such evidence being produced as may from time to time be required by the Directors and

CONFIDENTIAL                    JPMAFF-LBHI00001469

-10-

subject as hereinafter provided, elect either to be registered himself as holder of the Participating Share or to make such transfer of the Participating Share to such other person nominated by him as the deceased, incompetent, dissolved, insolvent, terminated or bankrupt person could have made and to have such person registered as the transferee thereof, but the Directors shall, in such case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that Shareholder (before the relevant event).

(2)    Subject to Article 12, if the person so becoming entitled shall elect to be registered himself as holder he shall deliver or send to the Company a notice in writing signed by him stating that he so elects.

15.    Subject to Article 12, a person becoming entitled to a Participating Share by reason of the death, incompetency, termination, insolvency, dissolution or bankruptcy of the holder (or in any other case than by transfer) shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the Participating Share, except that he shall not, before being registered as a Shareholder in respect of the Participating Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company PROVIDED HOWEVER that the Directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the Participating Share and if the notice is not complied with within ninety days the Directors may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the Participating Share until the requirements of the notice have been complied with.

## DETERMINATION OF NET ASSET VALUE

16.    (1)    Net Asset Value of the Participating Shares shall be determined by the Administrator as at the close of business on each Valuation Date, except when determination of prices has been suspended under the provisions of paragraph (2) of this Article 16. Any determination of prices made pursuant to this Article 16 shall be binding on all parties.

(2)    The Directors may declare a suspension of the determination of the prices of Participating Shares for the whole or any part of any period during the existence of any state of affairs as a result of which the Company is unable (or, in the opinion of the Directors, it is not reasonably practicable or would be prejudicial to Shareholders) to value or dispose of the assets of the Company. Such suspension shall take effect at such times as the Directors shall specify but not later than the day next following the declaration and thereafter there shall be no determination of the redemption price of Participating Shares until the Directors shall declare the suspension at an end, except that the suspension shall terminate in any event on the day following the first day on which (i) the condition giving rise to the suspension shall have ceased to exist and (ii) no other condition under which suspension is authorised under this paragraph (2) shall exist. Each

CONFIDENTIAL                    JPMAFF-LBHI00001470

-11-

declaration by the Directors pursuant to this paragraph (2) shall be consistent with such official rules and regulations, if any, relating to the subject-matter thereof as shall have been promulgated by any authority having jurisdiction over the Company and as shall be in effect at the time.    To the extent not inconsistent with such official rules and regulations, the determination of the Directors shall be conclusive.    Whenever the Directors shall declare a suspension of the determination of the redemption price of Participating Shares under the provisions of this paragraph of this Article 16, then as soon as may be practicable after any such declaration the Directors shall cause a notice to be given to the holders of the Participating Shares stating that such declaration has been made, and at the end of any period of suspension the Directors shall cause another notice to be given to the holders of Participating Shares stating that the period of suspension has ended.

(3)    The Net Asset Value of a Participating Share as at any Valuation Date shall be calculated by (i) aggregating the value of the assets of the relevant separate account owned or contracted for by the Company (ii) deducting therefrom the liabilities of the relevant separate account (which shall where appropriate be deemed to accrue from day to day) and (iii) dividing the resulting sum by the number of Participating Shares of the relevant class (or series) outstanding.

(4)    The value of the assets of the Company shall be such as the Administrator shall in its discretion deem to be reasonable or fair based on the following valuation principles:

(i)    Securities (other than options) that are listed on a national securities exchange and are freely transferable shall be valued at their last sales price on the principal exchange on which such securities are listed, and options that are listed on a national securities exchange shall be valued at their last sales price on the principal exchange on which such options are traded; provided, however, that if the trading of any such securities is suspended at the date of determination, then the securities shall be valued at their last sales price on the first subsequent day on which trading is resumed on the principal exchange on which such securities are listed.

(ii)    Securities (including options) traded over-the-counter that are freely transferable shall be valued at the mean of the current bid and asked prices as reported by the National Association of Securities Dealers, Inc. Automatic Quotation System or if not quoted on such system, by one of the principal market makers in such security selected by the Administrator.

(iii)    Futures, options on futures and other commodity interests traded on a commodity exchange shall be valued at the settlement price on the commodity exchange on which the particular commodity interest is traded by the Company on the close of the day with respect to which Net Assets are being determined; provided that if a commodity interest could not be liquidated on such day due to the operation of

CAS/615202/1543452/v4

CONFIDENTIAL                    JPMAFF-LBHI00001471

-12-

daily limits or other rules of the commodity exchange upon which that interest is traded or otherwise, the settlement price on the first subsequent day on which the contract could be liquidated shall be the market value of such contract for such day.

(iv)    Forward, spot and swap contracts, other off-exchange instruments, derivative instruments or commodity interests traded on a foreign exchange or any other investment not set forth above shall be valued by the Administrator on a basis consistently applied.

(v)    Notwithstanding the foregoing, if the security to be valued constitutes a block which, in the judgment of the Administrator could not be liquidated in a reasonable time without depressing the market, such block shall then be valued by the Administrator but not at a unit value in excess of the quoted market price for the security.

(vi)    In special circumstances in which the Administrator determines that market prices or quotations do not fairly represent the value of particular securities or if no quotation exists, the Administrator is authorized to assign a value to such securities which differs from the market prices or quotations in its good faith discretion.

(vii)    Except as provided above, all other assets (including options not listed on any national securities exchange or traded over-the-counter) of the Company shall be valued in the manner determined by the Administrator. The Directors may, from time to time, establish or abolish reserves for estimated or accrued expenses and for unknown or contingent liabilities.

(5)    (i) The liabilities of the Company shall be deemed to comprise all liabilities of the Company of whatsoever kind and nature in accordance with United States generally accepted accounting principles, except liabilities represented by outstanding Shares and Shareholder equity of the Company (subject always to paragraph (6) of this Article).
    (ii) Any expense or liability of each separate account may be amortised over such period as the Directors may determine and the unamortised amount shall be deemed to be an asset of such separate account.

(6)    For the purpose of this Article 16 and paragraph (2) of Article 17 Participating Shares of the Company to be redeemed shall be deemed to be outstanding until and including the close of business on the day as at which the Net Asset Value is determined and after that time until paid the price thereof shall be deemed to be a liability of the Company.

### REDEMPTION OF SHARES AND TERMINATION

CONFIDENTIAL                    JPMAFF-LBHI00001472

-13-

17.    (1)    Subject to the provisions of the Law and the provisions set forth in the Confidential Memorandum and as hereinafter provided and except as otherwise agreed by the Directors as of the last day of each calendar month ("Redemption Date"), the Company shall, upon at least 30 days' prior written notice to the Administrator from a holder of Participating Shares for the redemption of all or any Participating Shares held by him, redeem such shares for an amount based on Net Asset Value determined in accordance with Article 16 hereof (plus any additional amount pursuant to Article 5(4)) or procure the purchase thereof at a price not less than such amount.

(2)    Subject to the provisions of the Confidential Memorandum, the following provisions of this Article 17 and unless otherwise agreed by the Directors the redemption or purchase of Participating Shares pursuant hereto shall take effect at the Net Asset Value calculated as at the close of business on the first Valuation Date which next follows receipt of such written request.

(3)    Subject as in this Article 17 provided, the Shareholder shall not be entitled to withdraw his request.

(4)    If the determination of the Net Asset Value is suspended beyond the day on which it would normally occur by reason of a declaration of the suspension of prices pursuant to paragraph (2) of Article 16 hereof, the right of the Shareholder to have his or her shares redeemed or purchased pursuant to this Article 17 shall be similarly suspended and during the period of suspension he or she may withdraw his or her request for redemption. Any withdrawal under the provisions of this paragraph shall be made in writing and shall only be effective if actually received by the Company before the termination of the period of suspension. If the request is not so withdrawn, the redemption or purchase of the Participating Shares shall be made at the Net Asset Value calculated at the close of business on the Valuation Date next following the end of the suspension.

18.    (1) The Directors may, in their absolute discretion, on giving not less than ten days' written notice to any holder of Participating Shares effect the compulsory redemption of all or some of the Participating Shares registered in the name of such person on the Valuation Day next following the expiry of the notice period at the Net Asset Value determined on the last preceding Valuation Date.

(2) If the Administrator receives redemption requests in respect of a class or series of Participating Shares for any Valuation Date which in aggregate exceed such percentage of the Net Asset Value of such class or series on such Valuation Date as the Directors may determine, the Directors may refuse to redeem all such Participating Shares which are subject to the redemption requests, but in such circumstances the Directors may scale down the amounts to be redeemed pro rata in response to such extent as they consider may be necessary and may further determine that any redemption requests which have been postponed from any prior Redemption Date will have priority on the next Redemption Date.

CAS/615202/1543452/v4

CONFIDENTIAL          JPMAFF-LBHI00001473

-14-

(3) If a Shareholder's status changes from unrestricted to restricted, or vice versa, as defined in Rule 2790, or any successor rule, of the National Association of Securities Dealers, Inc., the Directors may effect a redemption of the Participating Shares held by such Shareholder at Net Asset Value (calculated by reference to the Valuation Date immediately preceding such redemption) and shall use the redemption proceeds therefrom to issue Participating Shares of a different class and/or series to the relevant Shareholder which Participating Shares shall have the same terms and conditions as the Participating Shares redeemed save in respect of New Issue profits and losses.

19.    (1)    Any amount payable to the Shareholders in connection with the redemption or purchase of Participating Shares pursuant to Articles 17 or 18 hereof shall be paid in kind or U.S. dollars by wire transfer in accordance with instructions provided by the Shareholder (or in the case where no wire transfer instructions have been provided, to the Shareholder by cheque in U.S. dollars posted to the Shareholder at his last address on the Register of Shareholders at risk of the Shareholder and at his expense).

(2)    Any amount payable to the Shareholders in connection with the redemption or purchase of Participating Shares pursuant to Articles 17 or 18 hereof shall be paid within such period as the Directors may determine from time to time.

(3)    Upon the redemption of a Participating Share being effected the Shareholder shall cease to be entitled to any rights in respect thereof (excepting always the right to receive a dividend which has been declared in respect thereof prior to such redemption being effected) and accordingly his name shall be removed from the Register of Shareholders with respect thereto and the Participating Share shall form part of the unissued capital of the Company.

## ALTERATIONS OF SHARE CAPITAL

20.    (1)    Subject to and in so far as permitted by the provisions of the Law, the Company may from time to time by Ordinary Resolution alter or amend its Memorandum of Association otherwise than with respect to its name and objects and may, without restricting the generality of the foregoing:

(a)    increase the share capital by such sum to be divided into shares of such amount or without nominal or par value as the resolution shall prescribe and with such rights, priorities and privileges annexed thereto, as the Company in general meeting may determine.

(b)    consolidate and divide all or any of its share capital into shares of larger amount than its existing Shares;

CAS/615202/1543452/v4

-15-

(c)     by subdivision of its existing shares or any of them divide the whole or any part of its share capital into shares of smaller amount than is fixed by the Memorandum of Association or into shares without nominal or par value;

(d)     cancel any shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person.

(2)     All new shares created hereunder shall be subject to the same provisions with reference to the payment of calls, liens, transfer, transmission, forfeiture and otherwise as the shares in the original share capital.

(3)     Subject to the provisions of the Law, the Company may by Special Resolution change its name or alter its objects.

(4)     Subject to the provisions of the Law, the Company may by Special Resolution reduce its share capital, any capital redemption reserve fund, or any share premium account.

(5)     Subject to the provisions of the Law, the Company may by resolution of the Directors change the location of its registered office.

## GENERAL MEETINGS

21.     As a company registered as an exempted company, the Company may in the discretion of the Directors in each year hold a general meeting as its Annual General Meeting (but shall not be required to do so) in addition to any other meeting, if any, in that year.

22.     All general meetings (other than Annual General Meetings) shall be called Extraordinary General Meetings.

23.     (1)     The Directors may whenever they think fit, and they shall, on the requisition of Shareholders holding at the date of the deposit of the requisition not less than one-tenth of the nominal capital of the Company as at the date of the deposit carries the right of voting at general meetings of the Company, proceed to convene a general meeting of the Company.

(2)     The requisition must state the objects of the meeting and must be signed by the requisitionists and deposited at the Registered Office of the Company and may consist of several documents in like form each signed by one or more requisitionists.

(3)     If the Directors do not within twenty-one days from the date of the deposit of the requisition duly proceed to convene a general meeting, the requisitionists, or any of them representing more than one-half of the total nominal capital of all of them, may

CAS/615202/1543452/v4

-16-

themselves convene a general meeting, but any meeting so convened shall not be held after the expiration of three months after the expiration of the said twenty-one days.

(4)    A general meeting convened as aforesaid by requisitionists shall be convened in the manner as nearly as possible as that in which general meetings are to be convened by Directors.

## NOTICE OF GENERAL MEETINGS

24.    (1)    Twenty clear days' notice at least specifying the place, the day and the hour of the meeting and the agenda shall be given to the holders of the Participating Shares.

(2)    In every notice there shall appear with reasonable prominence a statement that a Shareholder entitled to attend and vote is entitled to appoint one or more proxies to attend and vote instead of him and that a proxy need not also be a Shareholder.

(3)    The accidental omission to give notice to, or the non-receipt of notice by, any person entitled to receive notice shall not invalidate the proceedings at any general meeting.

## PROCEEDINGS AT GENERAL MEETINGS

25.    The holder(s) of 51% of the issued and outstanding Participating Shares present in person or by proxy shall be a quorum.

26.    Subject and without prejudice to any provisions of the Law, a resolution in writing (in one or more counterparts) signed by all holders of Participating Shares for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

27.    The Chairman, if any, of the Board of Directors shall preside as Chairman at every general meeting of the Company, or if there is no such Chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting, or is unwilling to act, the Directors present shall elect one of their number to be Chairman of the meeting.

28.    At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is, before or on the declaration of the result of the show of hands, demanded by the Chairman or any other Shareholder present in person or by proxy.

29.    Unless a poll be so demanded a declaration by the Chairman that a resolution has on a show of hands been carried, or carried unanimously, or by a particular majority, or lost,

CONFIDENTIAL                    JPMAFF-LBHI00001476

-17-

and an entry to that effect in the Company's Minute Book containing the Minutes of the proceedings of the meeting shall be conclusive evidence of that fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

## VOTES OF SHAREHOLDERS

30.    Subject to any special rights or restrictions for the time being attached to any class or classes of shares:-

    (a)    On a show of hands every Shareholder who holds a Participating Share who is present in person or by proxy shall have one vote; and

    (b)    On a poll every Shareholder present in person or by proxy shall be entitled to one vote in respect of each Participating Share held by him.

31.    In the case of joint holders of record the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders, and for this purpose seniority shall be determined by the order in which the names stand in the Register of Shareholders.

32.    No Shareholder shall be entitled to vote at any general meeting unless he is registered as a Shareholder of the Company on the record date for such meeting nor unless all calls or other sums presently payable by him in respect of shares in the Company have been paid.

33.    No objection shall be raised to the qualification of any voter except at the general meeting or adjourned general meeting at which the vote objected to is given or tendered and every vote not disallowed at such general meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the Chairman of the general meeting whose decision shall be final and conclusive.

34.    The instrument appointing a proxy shall be in writing in usual or common form and shall be executed under the hand of the appointor or of his attorney duly authorised in writing, or, if the appointor is a corporation under the hand of an officer or attorney duly authorised in that behalf.

35.    A proxy need not be a Shareholder of the Company.

36.    A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed, or the transfer of the share in respect of which the proxy is given provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the Company at the office before the commencement of the general meeting, or adjourned meeting at which it is sought to use the proxy.

CAS/615202/1543452/v4

CONFIDENTIAL    JPMAFF-LBHI00001477

-18-

37.     Any corporation which is a Shareholder of record of the Company may in accordance with its articles or in the absence of such provision by resolution of its Directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any class of Shareholders of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as the corporation could exercise if it were an individual Shareholder of record of the Company.

38.     Shares of its own stock belonging to the Company or held by it in a fiduciary capacity shall not be voted, directly or indirectly, at any meeting and shall not be counted in determining the total number of outstanding shares at any given time.

## MODIFICATION OF RIGHTS

39.     (1)     Subject to the provisions of the Law, all or any of the special rights attached to any class of shares issued may (unless otherwise provided by the terms of issue of the shares of that class) from time to time (whether or not the Company is being wound up) be altered or abrogated with the consent in writing of the holders of not less than three-fourths of the issued shares of that class or with the sanction of a resolution passed at a separate general meeting of the holders of such shares on the Register of Members on the date on which notice of such separate general meeting is given by a majority of two-thirds of the votes cast at such meeting. For such purposes the Directors may treat all the classes of shares as forming one class if they consider that all such classes would be affected in the same way by the proposals under consideration but in any other case shall treat them as separate classes.

        (2)     To any such separate general meeting all the provisions of these Articles as to general meetings of the Company shall mutatis mutandis apply.

40.     The rights attached to each class of Participating Shares shall be deemed to be varied by the creation or issue of any shares of any class ranking in priority to them as respects participation in the profits or assets of the Company designated by reference to that class.

41.     Subject to Article 40 of these Articles the special rights attached to any class of shares having preferential rights shall (unless otherwise expressly provided by the conditions of issue of such shares) be deemed not to be varied by:

        (a)     the creation, allotment or issue of further shares of the class ranking pari passu therewith; or

        (b)     the allotment, issue or redemption of shares of any separate class.

## DIRECTORS

CAS/615202/1543452/v4

CONFIDENTIAL                    JPMAFF-LBHI00001478

-19-

42.  There shall be a Board of Directors consisting of not less than two or more than ten persons PROVIDED HOWEVER that the Company may from time to time by Special Resolution increase or reduce the limits in the number of Directors. The first Directors of the Company shall be appointed by the subscribers of the Memorandum of Association or a majority of them.

43.  A Director may hold any other office or place of profit under the Company (other than the office of Auditor) in conjunction with his office of Director for such period and on such terms as to remuneration and otherwise as the Directors may determine.

44.  A Director may act by himself or his firm in a professional capacity for the Company and he or his firm shall be entitled to remuneration for professional services as if he were not a Director.

45.  A shareholding qualification for Directors may be fixed by the Company in general meeting, but unless and until so fixed no qualification shall be required.

46.  A Director of the Company may be or become a Director or other Officer of or otherwise interested in any company promoted by the Company or in which the Company may be interested as Shareholder or otherwise and no such Director shall be accountable to the Company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company.

47.  No person shall be disqualified from the office of Director or prevented by such office from contracting with the Company, either as vendor, purchaser or otherwise, nor shall any such contract or any contract or transaction entered into by or on behalf of the Company in which any Director shall be in any way interested be or be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or transaction by reason of such Director holding office or of the fiduciary relation thereby established. A Director shall be at liberty to vote in respect of any contract or transaction in which he is so interested as aforesaid PROVIDED HOWEVER that the nature of the interest of any Director in any such contract or transaction shall be disclosed by him appointed by him at or prior to its consideration and any vote thereon and provided that any such interest which exists by virtue of the Director being a director, officer, shareholder or employee of the Trading Manager or any parent, subsidiary or affiliate of the Trading Manager shall be deemed to be duly disclosed hereby.

48.  A general notice that a Director is a Shareholder of any specified firm or company and is to be regarded as interested in any transaction with such firm or company shall be sufficient disclosure under Article 47 and after such general notice it shall not be necessary to give special notice relating to any particular transaction.

CAS/615202/1543452/v4

                    JPMAFF-LBHI00001479

-20-

## POWERS AND DUTIES OF DIRECTORS

49.     The business of the Company shall be managed by the Directors (or a sole Director if
only one is in office) who may pay all expenses incurred in promoting, registering and
setting up the Company (to the extent authorised by Article 2), and may exercise all such
powers of the Company to buy, sell, invest, borrow, deposit and otherwise howsoever or
whatsoever, as are not, from time to time by the Law, or by these Articles, or such
regulations, being not inconsistent with the aforesaid, as may be prescribed by the
Company in general meeting required to be exercised by the Company in general meeting
PROVIDED HOWEVER that no regulations made by the Company in general meeting
shall invalidate any prior act of the Directors which would have been valid if that
regulation had not been made.

50.     (1)     The Directors may from time to time and at any time by powers of attorney
appoint any company, firm, person or body of persons, whether nominated directly or
indirectly by the Directors, to be the attorney or attorneys of the Company for such
purpose and with such powers, authorities and discretions (not exceeding those vested in
or exercisable by the Directors under these Articles) and for such period and subject to
such conditions as they may think fit, and any such powers of attorney may contain such
provisions for the protection and convenience of persons dealing with any such attorneys
as the Directors may think fit and may also authorise any such attorney to delegate all or
any of the powers, authorities and discretions vested in him.  Without limiting the
generality of the foregoing the Directors may delegate any of their powers to the
Administrator and may engage affiliates of theirs to act for the Company including
delegation of management of the Company to the Trading Manager and selection of an
affiliate as an administrator.

        (2)     The Directors shall appoint a Commodity Pool Operator of the Company and shall
entrust to and confer upon the Commodity Pool Operator so appointed complete authority
(to the exclusion of the Directors' own powers) to perform any and all duties required of
a commodity pool operator under the United States Commodity Exchange Act and
regulations of the United States Commodity Futures Trading Commission.    Such
appointment shall be upon such terms and conditions including the right to remuneration
payable by the Company as determined by the Directors.  The Directors, in their
discretion, may delegate other or additional duties to the Commodity Pool Operator.

## PROCEEDINGS OF DIRECTORS

51.     (1)     Except as otherwise provided by these Articles, the Directors shall meet together
for the despatch of business, convening, adjourning and otherwise regulating their
meetings as they think fit.  Questions arising at any meeting shall be decided by a
majority of votes of the Directors present at a meeting at which there is a quorum.  In case
of an equality of votes, the Chairman shall not have a second or casting vote.

CAS/615202/1543452/v4

-21-

(2)     A Director may, and the Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors by at least five days' notice in writing to every Director which notice shall set forth the general nature of the business to be considered unless notice is waived by all the Directors either at, before or after the meeting is held and PROVIDED FURTHER if notice is given in person, by cable, telex, telecopy or electronic mail the same shall be deemed to have been given on the day it is delivered to the Directors or transmitting organisation as the case may be.

52.     The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors but unless so fixed shall be one.

53.     The continuing Directors or a sole continuing Director may act notwithstanding any vacancy in their number, but if and so long as their number is reduced below the number fixed by or pursuant to these Articles the continuing Directors or Director may act for the purpose of filling up vacancies in their number, or of summoning a general meeting of the Company, but for no other purpose.   If there be no Directors or Director able or willing to act, then any Shareholder may summon a general meeting for the purpose of appointing Directors.

54.     The Directors may elect a Chairman of their Board and determine the period for which he is to hold office; but if no such Chairman is elected, or if at any meeting the Chairman is not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be Chairman of the meeting.

55.     All acts done by any meeting of the Directors or of a committee of the Directors shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any Director or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and qualified to be a Director as the case may be.

56.     Members of the Board of Directors or of any committee thereof may participate in a meeting of the Board or of such committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other and participation in a meeting pursuant to this provision shall constitute presence in person at such meeting.   A resolution in writing (in one or more counterparts), signed by all the Directors or all the members of a committee of Directors for the time being shall be as valid and effectual as if it had been passed at a meeting of the Directors, or a meeting of a committee of the Directors, as the case may be, duly convened and held.

57.     A Director may be represented at any meetings of the Board of Directors by a proxy appointed by him in which event the presence or vote of the proxy shall for all purposes be deemed to be that of the Director.

CONFIDENTIAL                    JPMAFF-LBHI00001481

-22-

58.    The Directors shall cause minutes to be made of:-

(a)    all appointments of officers made by the Directors;

(b)    the names of the directors present at each meeting of the Directors;

(c)    all resolutions and proceedings of all meetings of the Company and of the Directors or a committee of the Directors.

Any such minute, if purporting to be signed by the Chairman of the meeting at which the proceedings took place, or by the Chairman of the next succeeding meeting, shall be evidence of their proceedings.

## VACATION OF OFFICE OF DIRECTOR

59.    The office of a Director shall be vacated:

(a)    If he gives notice in writing to the Company that he resigns the office of Director;

(b)    If he absents himself (without being represented by proxy appointed by him) from three consecutive meetings of the Board of Directors without special leave of absence from the Directors, and they pass a resolution that he has by reason of such absence vacated office;

(c)    If he dies, becomes bankrupt or makes any arrangement or composition with his creditors generally;

(d)    If he is found a lunatic or becomes of unsound mind.

(e)    If he ceases to be a Director by virtue of, or becomes prohibited from being a Director by reason of, an order made under any provisions of any law or enactment;

(f)    If he is requested by all the other Directors to vacate office.

## DELEGATION OF DIRECTORS' POWERS

60.    (1)    The Directors may delegate any of their powers to any committee consisting of one or more Directors.  Any such delegation may be made subject to any conditions the Directors may impose, and either collaterally with or to the exclusion of their own powers and may be revoked or altered.  Subject to any such conditions, the proceedings of a committee of Directors shall be governed by the Articles regulating the proceedings of Directors, so far as they are capable of applying.

CAS/615202/1543452/v4

CONFIDENTIAL                    JPMAFF-LBHI00001482

-23-

(2)    The Directors may establish any committees, local boards or agencies or appoint any person to be a manager or agent for managing the affairs of the Company and may appoint any person to be a member of such committees or local boards.  Any such appointment may be made subject to any conditions the Directors may impose, and either collaterally with or to the exclusion of their own powers and may be revoked or altered.  Subject to any such conditions, the proceedings of a committee of Directors shall be governed by the Articles regulating the proceedings of Directors, so far as they are capable of applying.

## APPOINTMENT AND REMOVAL OF DIRECTORS

61.    The Company may by Special Resolution appoint any person to be a Director and may in like manner remove any Director and may in like manner appoint another person in his stead.

62.    The Directors shall have power at any time and from time to time to appoint any person to be a Director, either to fill a casual vacancy or as an addition to the existing Directors but so that the total amount of Directors shall not at any time exceed the number fixed in accordance with these Articles.

## PRESUMPTION OF ASSENT

63.    A Director of the Company who is present at a meeting of the Board of Directors at which action on any Company matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the Minutes of the meeting or unless he shall file his written dissent from such action with the person acting as the Secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the Secretary of the Company immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Director who voted in favour of such action.

## SECRETARY AND OFFICERS

64.    (1)    The Secretary may be appointed by the Directors.   Anything required or authorised to be done by or to the Secretary, may, if the office is vacant or there is for any other reason no Secretary capable of acting be done by or to any Assistant or Deputy Secretary or if there is no Assistant or Deputy Secretary capable of acting, by or to any person authorised generally or specially in that behalf by the Directors.

(2)    The Directors may appoint such officers as they consider necessary on such terms, at such remuneration and to perform such duties, and subject to such provisions as to disqualification and removal as the Directors may think fit.  Unless otherwise specified in the terms of his appointment an officer may be removed by resolution of the Directors or Shareholders.

CAS/615202/1543452/v4

    JPMAFF-LBHI00001483

-24-

## DIVIDENDS

65.    All dividends shall be declared and paid to the holders of Participating Shares in proportion to the number of Participating Shares held by them.

66.    The Directors may declare dividends on Participating Shares at such times, from time to time, as they consider appropriate. The Directors need not declare dividends at any time throughout the existence of the Company.

67.    All dividends declared in respect of Participating Shares shall be declared payable to the holders thereof registered as such on the record date specified by the Directors at the time such dividends are declared.

68.    No dividend shall be declared or paid except out of the profits of the Company, realised or unrealised, or out of the Share Premium Account or as otherwise permitted by the Law.

69.    Any dividend, interest or other monies payable in cash in respect of Participating Shares shall be paid in the same manner as set forth in Article 19 with respect to amounts payable in connection with a redemption or purchase of Participating Shares.

70.    No dividend or other distribution shall bear interest against the Company.

71.    The Directors may direct that any dividend be paid wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures, or debenture stock of any other company or in any one or more of such ways and where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient and in particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Shareholders upon the footing of the value so fixed in order to adjust the rights of all Shareholders and may vest any such specific assets in trustees as may seem expedient to the Directors.

## SHARE PREMIUM AND RESERVE ACCOUNTS

72.    (1)    The Directors shall establish an account to be called the Share Premium Account and shall carry to the credit of such account from time to time a sum equal to the amount or value of the premium paid on the issue of any Participating Share in the Company.

(2)    The Directors may before recommending that any dividends be set aside out of the profits of the Company carry to the credit of any reserve account such sums as they think proper, which shall, at the discretion of the Directors, be applicable for any purpose to which the profits or reserves may be properly applied and pending such application may

CONFIDENTIAL                                    JPMAFF-LBHI00001484

-25-

at the like discretion either be employed in the business of the Company or be invested in such manner as the Directors may from time to time think fit.

(3)     The Company shall at all times comply with the provisions of the Law in relation to the Share Premium Account and the premiums attaching to the Participating Shares and in relation to redemption of the Shares.

### BOOKS OF ACCOUNT

73.     The Directors shall cause proper books of account to be kept with respect to:

(a)     all sums of money received and expended by the Company and the matters in respect of which the receipt or expenditure takes place;

(b)     all sales and purchases of goods by the Company;

(c)     the assets and liabilities of the Company.

Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions.

74.     Within 90 days after the end of the fiscal year, the Company will prepare and send to each Shareholder a financial report setting forth the Company's balance sheet, a statement of the Company's Net Asset Value and a statement of such Shareholder's Net Asset Value per Share and the manner of its calculation.  After the end of each fiscal year, each Shareholder will be provided with certain tax information for preparation of its tax return together with a report prepared by the Company's Auditor.  In addition, each Shareholder will be sent at least quarterly unaudited financial information from the Company.  Each Shareholder will be sent at least monthly an estimated performance report.  The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors and no Shareholder (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by Law or authorised by the Directors or by the Company in general meeting.

75.     The Directors may from time to time cause to be prepared and to be laid before the Company in general meeting profit and loss accounts, balance sheets, group accounts (if any) and such other reports and accounts as may be required by law.

CONFIDENTIAL                                                    JPMAFF-LBHI00001485

-26-

## AUDIT

76. The Company may at any Annual General Meeting appoint an Auditor or Auditors of the Company who shall hold office until the next Annual General Meeting and may fix his or their remuneration.

77. The Directors may before the first Annual General Meeting appoint an Auditor or Auditors of the Company who shall hold office until the first Annual General Meeting unless previously removed by an Ordinary Resolution in which case the Shareholders at that meeting may appoint Auditors. If the Company does not have an Annual General Meeting appointment and removal of the Company's Auditors may be effected by resolution of the Directors. The Directors may fill any casual vacancy in the office of Auditor but while any such vacancy continues the surviving or continuing Auditor or Auditors, if any, may act. The remuneration of any Auditor appointed by the Directors under this Article may be fixed by the Directors.

78. Every Auditor of the Company shall have a right of access at all times to the books and accounts and vouchers of the Company and shall be entitled to require from the Directors and Officers of the Company such information and explanation as may be necessary for the performance of the duties of the auditors.

79. Auditors shall at the next Annual General Meeting following their appointment and at any other time during their term of office, upon request of the Directors or any general meeting of the Shareholders, make a report on the accounts of the Company in general meeting during their tenure of office.

## NOTICES

80. Notices shall be in writing and may be given by the Company to any Shareholder either personally or by sending it by post, cable, telex, telecopy or electronic mail to him or to his address as shown in the Register of Shareholders, such notice, if mailed, to be forwarded airmail if the address be outside the Cayman Islands. For the purpose of these Articles section 8 of the Electronic Transactions Law (2003 Revision) shall not apply.

81. (1)    Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, pre-paying and posting a letter containing the notice, and to have been effected at the expiration of sixty hours after the letter containing the same is posted as aforesaid.

    (2)    Where a notice is sent by cable, telex, telecopy or electronic mail, service of the notice shall be deemed to be effected by properly addressing, and sending such notice through a transmitting organisation and to have been effected on the day the same is sent as aforesaid.

CAS/615202/1543452/v4

-27-

82.    A notice may be given by the Company to the joint holders of record of a Participating Share by giving the notice to the joint holder first named on the Register of Shareholders in respect of the share.

83.    A notice may be given by the Company to the person or persons which the Company has been advised are entitled to a share or shares in consequence of the death or bankruptcy of a Shareholder by sending it through the post as aforesaid in a pre-paid letter addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt, or by any like description at the address supplied for that purpose by the persons claiming to be so entitled, or at the option of the Company by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

84.    Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)    every person shown as a holder of a Participating Share in the register of Shareholders as of the record date for such meeting except that in the case of joint holders the notice shall be sufficient if given to the joint holder first named in the Register of Shareholders;

(b)    every person upon whom the ownership of a share devolves by reason of his being a legal personal representative or a trustee in bankruptcy of a Shareholder of record where the Shareholder of record but for his death or bankruptcy would be entitled to receive notice of the meeting;

(c)    each Director of the Company;

(d)    the Auditor;

(e)    the Trading Manager; and

(f)    such other person as the Directors shall at any time and from time to time determine.

No other person shall be entitled to receive notices of general meetings.

## WINDING-UP

85.    If the Company shall be wound up, the assets available for distribution among the Shareholders shall be distributed pari passu on an equal per share basis to the holders of Participating Shares.

86.    If the Company shall be wound up the Liquidator may, with the sanction of a Special Resolution of the Company and any other sanction required by the Law, divide amongst the holders of the Participating Shares in specie or kind the whole or any part of the assets

CONFIDENTIAL                JPMAFF-LBHI00001487

-28-

of the Company (whether they shall consist of property of the same kind or not) and may for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the holders of the Participating Shares.

## INDEMNITY

87.    The Directors and officers for the time being of the Company and any trustee for the time being acting in relation to any of the affairs of the Company and their heirs, executors, administrators and personal representatives respectively shall be indemnified out of the assets of the Company from and against all actions, proceedings, costs, charges, losses, damages and expenses which they or any of them shall or may incur or sustain by reason of any act done or omitted in or about the execution of their duty in their respective offices or trusts, except such (if any) as they shall incur or sustain by or through their own negligence or misconduct respectively and no such Director, officer or trustee shall be answerable for the acts, receipts, negligence or misconduct of any other Director, officer or trustee or for joining in any receipt for the sake of conformity or for the solvency or honesty of any banker or other persons with whom any monies or effects belonging to the Company may be lodged or deposited for safe custody or for any insufficiency of any security upon which any monies of the Company may be invested or for any other loss or damage due to any such cause as aforesaid or which may happen in or about the execution of his office or trust unless the same shall happen through the negligence or misconduct of such Director, officer or trustee.

## DISCLOSURE

88.    Any Administrator, Auditor, the Trading Manager, Director or Officer of the Company shall if lawfully required to do so under the laws of any jurisdiction to which the Company is subject or in compliance with the rules of any Stock Exchange upon which the Company's shares are listed or in accordance with any contract entered into by the Company be entitled to release or disclose any information in its possession regarding the affairs of the Company including, without limitation, any information contained in the Register of Shareholders of the Company relating to any Shareholder.

## FISCAL YEAR

89.    The Fiscal Year of the Company shall begin on the date of incorporation of the Company and shall end on 31st December and on the anniversary thereof in each succeeding year unless the Directors prescribe some other period therefor.

## AMENDMENTS OF ARTICLES

90.    Subject to the Law, the Company may at any time and from time to time by Resolution alter or amend these Articles in whole or in part.

CAS/615202/1543452/v4