Hearing Date and Time: December 21, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  December 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger, Esq.
Richard L. Levine, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## REPLY TO OBJECTION TO DEBTOR'S MOTION FOR SANCTIONS

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

1.      Lehman Brothers Financial Products, Inc. ("LBFP"), a debtor and debtor in

possession in the above-captioned jointly administered bankruptcy cases of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors" and

together with their non-debtor affiliates, "Lehman"), by and through its undersigned counsel,

files this reply (the "Reply") to respondents' Objection to the Debtors' Motion for Sanctions (the

"Objection") and respectfully represents as follows:

### Preliminary Statement

2.      In the Objection to LBFP's November 30, 2011 Motion for Sanctions (the

"Motion"), Counterparty I and Counterparty II (collectively, "Counterparty")[1] attempt to cast

---

[1]    To protect the confidentiality of the ADR process, the identity of the respondents was not disclosed in the
    publicly filed version of the Motion or in this Reply.

their refusal to participate in good faith in the ADR process as a mere disagreement about the

scope of their authority to bind noteholders under the Indentures.[2]  They also seek to create the

misimpression that they attempted to engage in substantive discussions with LBFP.  Neither is

accurate.  In fact, the Objection itself is but another example of the shell game Counterparty has

played to stall the ADR process and delay resolution of the Adversary Proceeding.  Fortunately,

rather than engage in such machinations, about 175 other counterparties in the ADR process

have taken seriously this Court's ADR orders, leading to intensely negotiated settlements that

this week surpassed the $1 billion level.

### Arguments and Authorities

### A.    Counterparty's Statements About Lack Of Authority Are Specious

3.    Counterparty identifies two contradictory and baseless grounds for its contention

that noteholder approval of, or participation in, the ADR process is a prerequisite to

Counterparty's participation in ADR.  First, Counterparty falsely claims that LBFP demands that

Counterparty bind its noteholders.  Objection. ¶ 3; *see also id*. ¶ 18.  As demonstrated below,

however, LBFP has made no such demand but rather seeks only to negotiate and hopefully settle

with Counterparty itself because only Counterparty *is in privity* with LBFP.   Second,

Counterparty contends that the noteholders *must* be involved in the ADR process because

Counterparty otherwise lacks authority *under the Indentures* to negotiate a settlement:  "The

financial beneficiaries (either the Noteholders themselves or the Trustee on their behalf) need to

be involved in the ADR proceeding."  *See, e.g.*, Objection ¶ 20.  As also demonstrated below,

such assertion flies in the face of the Master Agreements, the Indentures, and the Court's SPV

ADR Order; Counterparty, in fact, has full authority to settle.

---

[2]    All capitalized terms not defined herein are as defined in the Motion.

1.      **LBFP Never Demanded That Counterparty Bind Its Noteholders**

4.      Contrary to Counterparty's mischaracterization of the Motion, LBFP has never demanded that Counterparty participate in the ADR process *with the authority to bind the Noteholders*.

5.      Counterparty's Objection asserts:  "According to the Debtors, it is the Issuers, and the Issuers alone, which must participate with the Debtors in the ADR Proceeding and ultimately bind the Counterparty's Noteholders."   Objection ¶ 3.   This is a disingenuous attempt by Counterparty to put into LBFP's mouth what may be Counterparty's concern—the theoretical possibility of claims by noteholders against Counterparty with respect to any potential settlement with LBFP that one or more noteholders may not like.   In fact, LBFP has asked only the Counterparty to participate in the ADR process and only on its own behalf: "LBFP demands that [Counterparty] comply with the [SPV ADR] Order on or before September 23, 2011, by . . . acknowledging [**Counterparty's**] obligation to participate in mediation in good faith with the ability to settle."   Declaration of Locke R. McMurray [Docket No. 22818] ("McMurray Decl.") Ex. H.

6.      As established in the Motion, and as discussed further below, it is Counterparty that is in privity with LBFP, not the noteholders, and it is Counterparty that is the defendant in the Adversary Proceeding, not the noteholders, and so it is only Counterparty that can defend the Adversary Proceeding, win or lose the Adversary Proceeding, and settle the Adversary Proceeding with LBFP.   Indeed, in the original round of this ADR, the trustee disclaimed authority to settle, which is why LBFP converted that pending ADR into one under the SPV ADR Order, naming just Counterparty.   And while Counterparty is free to seek protection from potential noteholder claims in any settlement (such as a Court Order releasing any such noteholder claims on a Rule 9019 motion following notice to noteholders), that does not detract

3

one iota from the simple fact that Counterparty and only Counterparty has authority to settle, and Counterparty and only Counterparty is an indispensable party to the ADR process.

### 2.      Counterparty Is The Only Party In Contractual Privity With LBFP

7.      The terms of the Master Agreements confirm that Counterparty is the appropriate party to the Adversary Proceeding and the ADR because Counterparty is the sole counterparty to LBFP under the Master Agreements and thus *the sole party owing LBFP the payment due upon Counterparty's early termination of the swap transactions.  See* Counterparty Ex. 2 § 6(e)(i)(3);[3] McMurray Decl. Ex. C, Sched. Pt. 1(d).  Specifically, LBFP and Counterparty selected Second Method and Market Quotation as the payment measure to be used in the event of an early termination.  McMurray Decl. Ex. C, Sched. Pt. 1(d).[4]  As a result, if calculation of the amounts owed in respect of the terminated transactions results in a negative number, it is payable by the Non-defaulting Party (here, Counterparty) to the Defaulting Party (here, LBFP).  Counterparty Ex. 2 § 6(e)(i)(3).  At the heart of the dispute in the ADR and the underlying Adversary Proceeding is LBFP's contention that, in light of the Bankruptcy Code's prohibition on *ipso facto* clauses, it is owed the amount due to it by *Counterparty*—not the noteholders—as a result of *Counterparty's* early termination of the transaction notwithstanding the Indentures' provisions purporting to modify LBFP's right to receive payment priority.  *See* Adversary Proceeding; McMurray Decl. Exs. E, J (the Indentures for Counterparty I and Counterparty II, respectively).[5]

---

[3] Because the copies of the Master Agreements found by LBFP in its files include only the first page and signature page, LBFP cites to the version attached as Ex. 2 to Counterparty's Declaration.

[4] While only one of the Master Agreements was annexed to the McMurray Declaration, the two agreements are substantially the same.

[5] Indeed, by letters dated October 22, 2008, from the investment advisor on behalf of each of Counterparty I and Counterparty II, after defining Counterparty I and Counterparty II as "Party B" under their respective Master Agreements with LBFP, notice was provided that "Party B hereby designates October 22, 2008 as the Early Termination Date in respect of all Transactions . . . under the Master Agreement."  Declaration of Meredith Parenti ("Parenti Decl.") Exs. K, L.  Thus, it is clear that the parties always have understood that, with respect to each of the

8.     The terms of the parties' contract thus destroy Counterparty's attempt to evade its continuing role as LBFP's contractual counterparty.

**3.     There Is Nothing In The Indentures That Excuses Counterparty's Refusal To Engage In The ADR Process In Good Faith**

9.     Counterparty's position that it lacks authority to negotiate a settlement not only conflicts with the terms of the Master Agreements, as demonstrated above, but nothing in the Indentures precludes Counterparty from good-faith participation and agreeing to a settlement in the ADR process without noteholder or trustee approval or participation.

10.     Counterparty cites both the Granting Clauses and Section 16 of the respective Indentures to support its position that the trustee is more properly the party to the ADR process. Objection ¶ 19.  Neither citation withstands analysis.

11.     First, Counterparty cites the Granting Clauses in the Indentures to argue that it "granted to the Trustee all of Counterparty's respective rights, title and interest in the collateral, including the Master Agreements for the benefit of the respective noteholders."  Objection ¶ 19 (citing Counterparty Exs. A, B at 1).  While it is true that the Granting Clauses for each Indenture granted a security interest to the trustee in the swap with LBFP, such grant of a security interest was no more than just that.  What it was not was a novation of the swap agreement to the trustee or the noteholders, and thus the Granting Clauses had no effect on Counterparty's status as the only party in contractual privity with LBFP under each of the Master Agreements.

12.     This was expressly contemplated by the Master Agreements themselves because LBFP acknowledged and consented therein to the assignment of the Master Agreements to the

---

swaps, LBFP's one and only counterparty is Counterparty itself, and it is only Counterparty that has rights and obligations under the Master Agreements.

trustee "solely for security purposes," and made explicit therein by the provision that "[t]he

Trustee shall not be deemed to be a party to this Agreement . . . ."  McMurray Decl. Ex. C,

Sched. Pt. 5(l).

13.     The terms of the Granting Clauses do not support a different conclusion.  While

under the Granting Clauses, Counterparty assigned its rights, title, and interest in *collateral*,

nothing in the Granting Clauses strips Counterparty of any rights or relieves Counterparty of any

obligations under the Indentures.  McMurray Decl. Exs. A, B at 1-3.  In fact, Counterparty

retains numerous rights under the Indentures, including the right to demand that third-parties

make payments to the trustee, *id.* § 7.5, at 109-110, the right to certain disbursements under

Section 11 of the Indentures,[6] *id*. § 11, at 145-46, and the right to enforce its own rights, *id.* § 16,

at 166-67.

14.     And the trustee itself rejects Counterparty's self-serving construction of the

Granting Clauses.  Counterparty argues that the trustee "needs to be involved in the ADR

Proceeding" because of such clauses.  Objection ¶ 20.  The trustee, however, disclaimed any

authority to settle in the first round of this ADR process (Motion ¶¶ 18, 20; McMurray Decl. ¶ 3)

and then declined Counterparty's "invitation" to become involved in the ADR this time around

because, in the trustee's opinion—and contrary to Counterparty's tortured interpretation of the

Granting Clauses—it has, "no authority to engage in the ADR Proceeding . . . ."  Objection ¶ 21.

15.     Counterparty therefore continues to be LBFP's sole contractual counterparty

under the Master Agreements and the appropriate party with whom LBFP must either resolve

this dispute in the ADR process or litigate this matter should it not be resolved in ADR—

notwithstanding the Granting Clauses.

---

[6]     LBFP does not concede that Counterparty is entitled to any such disbursements, but only notes Section 11 as an
       example of the Counterparty's continued role under the Indentures.

16.     Second, Counterparty cites Section 16 of the Indentures, which provides that "[i]f

at any time a Hedge Agreement becomes subject to early termination due to the occurrence of an

event of default or a termination event, *the Issuer and the Trustee* shall take such actions . . . to

enforce the rights of the Issuer and the Trustee thereunder . . . ." Exs. A, B § 16.1(h) (emphasis

added); *see* Objection ¶ 19. But this provision does not, as Counterparty suggests, establish the

Counterparty's *lack* of authority, but rather it expressly requires the Counterparty—and the

trustee—to enforce Counterparty's rights *vis à vis* LBFP under the Master Agreements. Section

16 therefore, if anything, contradicts Counterparty's contention that it lacks authority to negotiate

a settlement.

17.     In sum, nothing in the Indentures precludes Counterparty from litigating with

LBFP, enforcing its rights against LBFP, or negotiating and settling with LBFP.

### 4.     Counterparty Has Selectively Exercised Rights Under The Indentures

18.     Counterparty would have the Court believe that it has no real continuing role

under the Indentures. *See, e.g.*, Objection ¶¶ 18-20, 35. The Indentures, however, provide for

reimbursement of Counterparty's ongoing costs and Counterparty has, in fact, requested such

reimbursements—demonstrating its ongoing role.

19.     Specifically, Section 11.1(a)(i)(C) of each of the Indentures provides for

reimbursement of expenses incurred by Counterparty up to $100,000. Exs. A, B § 11.1(a)(i)(C),

at 144-45.    And if the expenses exceed $100,000, the Indentures provide for further

reimbursement to Counterparty at a lower priority level. *Id.* § 11.1(a)(i)(Q), at 147.

20.     And Counterparty has claimed such reimbursements. According to Noteholder

Reports, attached to the declaration of Meredith Parenti as Exhibits M and N, for the June 15,

2011, and the October 17, 2011, Payment Dates respectively, *signed by Counterparty's designee*

*identified in its Settlement Authority Designation* (*see* Parenti Decl. Exs. M, N; McMurray Decl.

Ex. F), $35,773.63 in expenses is payable under the Indentures to Counterparty I and $77,881.25

in expenses is payable under the Indentures to Counterparty II—pursuant to Section 11.1 of the

Indentures.  Parenti Decl. Ex. M at 2, Ex. N at 3.[7]

### 5.        The SPV ADR Order Requires Only Issuer Participation

21.        Counterparty's contention in its September 26, 2011, letter that any ADR must

necessarily end in an "impasse" in the absence of noteholder participation (McMurray Decl. Ex.

I at 2) shows contempt for this Court's SPV ADR Order.  In fact, one of the primary goals of the

SPV ADR Order was to address situations such as this in which the noteholders are unknown

and the trustee has disclaimed authority.  *See* Motion ¶¶ 2, 18; McMurray Decl. ¶¶ 3, 4.  The

SPV ADR Order thus expressly authorizes the Debtors to proceed *solely* against an SPV issuer

such as Counterparty.  *See* SPV ADR Order ¶ 2 (providing that the Debtor "will serve" the SPV

Derivatives Counterparties with the SPV Derivatives ADR Package, "and, in the Debtor's

discretion, after consultation with the Creditors' Committee, it may also serve" the trustee,

noteholders, a collateral manager, or other fiduciary).

22.        Moreover, while the SPV ADR Order recognizes that *trustees* may decline to

participate in the ADR process if they lack authority, SPV Derivatives Counterparties such as

Counterparty are given no such "out"—precisely because they are the ones in privity with the

Debtor:  "Nothing contained in this paragraph 5(b) with respect to SPV Trustees shall relieve or

be construed to relieve any SPV Derivatives Counterparty from compliance with this Order."

SPV ADR Order ¶ 5.b.4.

23.        The SPV ADR Order thus places the onus on SPV Derivatives Counterparties to

actively participate in the ADR process and attempt in good faith to settle the dispute by

---

[7] The exhibits are not annexed to the publicly filed version of this reply.

requiring them to, among other things, (i) serve a Settlement Participation Designation; (ii)

notify noteholders of the ADR proceeding, the Settlement Participation Designation, and the

underlying Adversary Proceeding; (iii) serve an ADR Response; and (iv) appear in person at

mediation and negotiate in good faith.  SPV ADR Order ¶¶ 5.c, 5.c.iii, 8.b, 10.f.

24.    Counterparty never acknowledges that the SPV ADR Order itself provides that a

settlement may be reached *without* noteholder participation and provides that noteholders may be

given notice of any settlement by, among other things, "a Bankruptcy Rule 9019 Motion with

notice to all Noteholders of the hearing date and objection deadline."  SPV ADR Order ¶ 4.

Indeed, this Court has approved a proposed SPV settlement order reflecting a settlement with a

trustee reached in ADR without noteholder participation containing a release of any potential

noteholder claims against the trustee following notice of the proposed settlement to noteholders.

*See* Order Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rule 9019(b)

Authorizing And Approving The Settlement Between Lehman Brothers Financial Products Inc.,

Madison Avenue Structured Finance CDO I, Ltd., Madison Avenue Structured Finance CDO I,

Corp., Metlife Investment Advisors Company LLC, And U.S. Bank National Association (Dec.

16, 2010) [Dkt. 13531].

25.    Were Counterparty permitted to evade its obligations under the SPV ADR Order

based on the excuse that it is unable to bind noteholders, the guiding principles and governing

provisions of SPV ADR Order effectively would be nullified.

**B.**    **Counterparty Has Not Yet Addressed The Merits Of The ADR Notice**

26.    Counterparty to this date still has not responded to LBFP's claims that:  (i) any

modification to LBFP's payment priority under the Indentures as a result of LBFP's chapter 11

filing with respect to the early termination amount owed by Counterparty to LBFP is void

because it is based on an impermissible *ipso facto* provision; (ii) the settlement amounts

calculated by the investment advisor are unjustified and unsupported; and (iii) Counterparty

owes LBFP the amounts stated in the ADR Notice.  *See* McMurray Decl. Ex. E; Ex. J.

Counterparty's failure to address these issues on the merits conclusively refutes Counterparty's

contention (Objection ¶ 43) that it substantively responded to the ADR Notice.  Counterparty's

parallel contention that its mere service of an ADR Response devoid of substance presumptively

complies with the SPV ADR Order (Objection ¶ 38) should be similarly rejected as frivolous.

Until Counterparty remedies its failure to engage on the merits, it will remain in violation of the

SPV ADR Order.

**C.**    **Counterparty's New Assertion Of A Willingness To Participate In ADR Is
Insufficient**

27.    Counterparty has made, and continues to make, inconsistent statements about its

willingness to participate in the ADR in good faith.  As discussed in the Motion, Counterparty

initially filed a Settlement Authority Designation professing that its designee had "complete

settlement authority."  McMurray Decl. Ex. F at 2.  Counterparty subsequently stated in its ADR

Response that it is "not the proper part[y] for resolving this dispute at mediation."  McMurray

Decl. Ex. G at 1.  Counterparty then stated in its September 26, 2011, letter that it would

participate in mediation but necessarily the "mediation [would] end at an impasse . . . ."

McMurray Decl. Ex. I at 1-2.  Counterparty now says that it has "authority to engage in

settlement discussions" and that Counterparty can, in fact, bind itself to such a settlement but,

effectively, any such settlement will be doomed without noteholder participation.  Objection

¶¶ 18, 33, 46.

28.    Thus, Counterparty's position now seems to be that it is willing to go through the

motions but without a good-faith intent to reach a binding settlement.  Such an intent would

undermine the ADR process in its entirety, waste LBFP's resources, and violate the SPV ADR

Order.

29.     In any event, having proved repeatedly that it has no good-faith intention to

negotiate towards a binding settlement, Counterparty's pious statements that it is now willing to

participate cannot be credited.  Anything less than full, good-faith participation in the ADR

process runs contrary both to the spirit and the letter of the SPV ADR Order and violates the

Indentures' provisions requiring compliance with court orders.  *See* McMurray Decl. Exs. A, B

§ 7.2.

**D.      Counterparty Continues To Advance Inaccurate And Misleading Arguments**

30.     Contrary to its contention (Objection ¶¶ 11, 12), Counterparty was fully informed

of the ADR process.

31.     On April 4, 2011, LBFP served the SPV Derivatives ADR Election Form, the

ADR Notice, *and* the SPV ADR Order on Counterparty (together, the ADR Notice and the SPV

ADR Order are defined in the SPV ADR Order as the "SPV Derivatives ADR Package").

McMurray Decl. ¶ 5; McMurray Decl. Exs. D, E; SPV ADR Order ¶ 2.  Counterparty alleges it

was "confused" because the SPV Derivatives ADR Package was sent "without any cover letter."

Objection ¶¶ 11, 12.   But Counterparty did receive the ADR Election Form and the SPV

Derivatives ADR Package, as expressly contemplated by the SPV ADR Order.  McMurray Decl.

¶ 5; McMurray Decl. Exs. D, E; *see also* SPV ADR Order ¶ 8.a.  The problem thus was not the

lack of a cover letter;  the problem was and always has been Counterparty's refusal to heed this

Court's Orders.

32.     Counterparty further alleges it "proactively reached out to [LBFP] in an attempt to

ensure any mediation in this ADR proceeding could be a meaningful one."  Objection ¶ 31.

Such self-serving assertion flies in the face of reality.  It cannot be contested that LBFP has

always sought to mediate—this is the second time around with respect to these same transactions—but Counterparty, to LBFP's shock when it belatedly received the ADR Response, refused to engage on the merits of the dispute, never bothering to address LBFP's claims that the "flip clause" is not enforceable and that the investment advisor did not accurately calculate the termination amounts owed to LBFP. Counterparty has never offered to discuss these matters but now complains that LBFP did not wish to discuss Counterparty's disingenuously claimed "lack of authority." LBFP saw no reason to waste its time and resources by conferring about that bad-faith contention. Such dilatory tactics are not a "proactive" attempt to ensure a meaningful mediation.

**E.     Counterparty's Position That Others Should Mediate On Its Behalf Is Untenable**

33.     Counterparty concedes—as it must—that the trustee already has denied that it has authority to participate in the ADR process. Objection ¶ 21. And as detailed in the Motion, it was the trustee's position that it has no authority to negotiate a settlement that initially prompted LBFP to pursue its remedies under the SPV ADR Order. Motion ¶ 18; McMurray Decl. ¶¶ 3, 4. The shell game being played here must come to an end.

34.     Further, Counterparty's position, if accepted, would lead to the untenable situation whereby LBFP, after contacting and attempting to involve the investment advisor, the trustee, and the Counterparty, is left with no one with whom to negotiate. And as detailed in the Motion, if Counterparty—or any other issuer—is allowed to take such a position, the SPV ADR process may well grind to a halt. That should not be allowed to happen given its obvious benefit—now over $1 billion in the aggregate—to the various estates.

**Conclusion**

35.     As demonstrated above, Counterparty continues to refuse to comply with both the letter and the spirit of the SPV ADR Order. Counterparty's flouting of this Court's directives

and its disregard for the orderly conduct of the LBFP's bankruptcy case cannot be permitted to pass without consequence. To permit Counterparty to evade the SPV ADR Order in this manner would invite the Debtors' numerous derivatives issuer counterparties to make similar baseless arguments and thereby paralyze the Debtors' efforts to resolve in a timely and cost-efficient manner the hundreds of outstanding disputes involving SPVs. This Court can and should enforce the terms and provisions of its SPV ADR Order by sanctioning Counterparty in the form detailed in the Motion.

## Notice

36.     No trustee has been appointed in these chapter 11 cases. The Debtors have served this Reply (with the name of counterparties disclosed and with exhibits) on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) counsel for Counterparty; and have served a redacted version of the Reply without identifying the Counterparty and without exhibits on all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]. While the version of this Reply publicly filed does not name the counterparty or include the referenced exhibits because of the confidentiality of the ADR process, the version served per (i) - (vi) above and filed with chambers includes the counterparty's name and the cited exhibits. The Debtors submit that no other or further notice need be provided.

37.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, LBFP respectfully requests that the Court grant the relief requested in the Motion and such other and further relief as is just.

Dated: New York, New York
      December 19, 2011

By: */s/ Richard L. Levine*
    Peter Gruenberger
    Richard L. Levine
    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors
    and Debtors in Possession