Hearing Date and Time: December 21, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO
APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS
327(a) AND 328(a) OF THE BANKRUPTCY CODE AND FEDERAL RULES OF
BANKRUPTCY PROCEDURE 2014(a) AND 2016 FOR AUTHORIZATION TO
EMPLOY AND RETAIN GLEACHER & COMPANY SECURITIES, INC. AS
<u>FINANCIAL ADVISOR EFFECTIVE AS OF FEBRUARY 17, 2011</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>"), file this reply to the *Objection of Official Committee of Unsecured Creditors to Debtors' Application for Authorization to Retain Gleacher & Company Securities, Inc. as Financial Advisor*, filed on December 9, 2011 [ECF No. 23177] (the "<u>Committee Objection</u>"), and the *Objection of the United States Trustee to Confirmed Debtors' Application for Order Authorizing Employment and Retention of Gleacher & Company Securities, Inc. as Financial Advisor Nunc Pro Tunc to*

US_ACTIVE:\43881286\06\58399.0008

*February 17, 2011*, filed on December 9, 2011 [ECF No. 23161] (the "U.S. Trustee Objection" and, together with the Committee Objection, the "Objections"), and respectfully represent:

## Preliminary Statement

1.  On November 22, 2011, the Debtors filed the *Application of the Debtors Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014(a) and 2016 for Authorization to Employ and Retain Gleacher & Company Securities, Inc. as Financial Advisor Effective as of February 17, 2011* (the "Application") [ECF No. 22520].  The Application seeks authority for the Debtors to retain Gleacher & Company Securities, Inc. ("Gleacher") to act as their financial advisor solely in connection with a potential transaction, or series of transactions, designed to maximize the value of the Debtors' interests in Archstone Enterprise LP (together with its subsidiaries and controlled affiliates, "Archstone"), one of the Debtors' largest real estate positions.  Specifically, Gleacher has advised the Debtors over the past ten months in connection with various potential transactions that affect Archstone's existing equity and, thus, have a significant effect on the estates of LBHI and the other Debtors, either directly or indirectly through non-Debtor affiliates.

2.  As the Court is aware, the Debtors have made substantial investments in Archstone, amounting to billions of dollars.  As a consequence of heightened third party interest in Archstone and substantial discussions with Bank of America[1] and Barclays with respect to the Archstone enterprise, the Debtors were acutely cognizant of the need to fully explore viable options to preserve and maximize the value of their interests in Archstone.  Accordingly, the Debtors sought the services of a financial advisor.  As set forth in the Application, the Debtors believed there were three key criteria in connection with their selection of a financial advisor:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Application.

expertise, disinterestedness and cost. *Application* ¶ 14. With those considerations in mind, the Debtors concluded that Gleacher is particularly well suited to advise them in connection with a potential Archstone Transaction, on the terms set forth in the Engagement Agreement. The Debtors submit that the proposed retention of Gleacher, to provide services solely with respect to a potential Archstone Transaction, is a valid exercise of the Debtors' business judgment, made with the express aim of fulfilling their fiduciary duty to their respective estates.

3. The Debtors submit that the terms of Gleacher's retention, including its proposed fee structure, are appropriate and reasonable in these circumstances and in the best interests of the Debtors' estates and their creditors. Accordingly, the Debtors submit that the Application, as modified herein, should be granted.

## The Objections

4. The Objections essentially raise three points. First, both the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the United States Trustee for Region 2 (the "U.S. Trustee") question the necessity of Gleacher's retention in light of the engagement of Lazard Frères & Co. LLC ("Lazard") as the Debtors' financial advisor. *See Committee Objection*, ¶¶ 3, 5, 9-20; *U.S. Trustee Objection* at 9-11.

5. Second, both the Creditors' Committee and the U.S. Trustee object to the *nunc pro tunc* nature of the Gleacher retention. *See Committee Objection*, ¶ 4; *U.S. Trustee Objection* at 11-13.

6. Finally, the U.S. Trustee Objection contends that Gleacher has not complied with Bankruptcy Rule 2014 and objects to the provisions of the Engagement Agreement that provide for reimbursement of Gleacher's attorneys' fees.

**Debtors' Reply to the Objections**

*The Need for Gleacher's Services*:

7. The Creditors' Committee and the U.S. Trustee question the Debtors' need for Gleacher's services and raise concerns about possible duplication of efforts and/or fees. *See Committee Objection* ¶¶ 9-13; *U.S. Trustee Objection* at 9. While Lazard has the expertise to render services in connection with the Debtors' interests in Archstone, the Debtors have determined, in their sound business judgment, that Gleacher is uniquely suited to perform such services. Consequently, the Debtors request that the Court approve the retention of Gleacher.

8. As set forth in the Application, when it became apparent to the Debtors that they needed a firm to represent them in connection with Archstone, they endeavored to find the firm best suited for that project. Although Lazard had already been engaged as the Debtors' financial advisor, the Debtors considered the qualifications of Lazard, as well as 9 other firms. A list of the other firms considered by the Debtors is annexed hereto as Exhibit A.

9. The Debtors selected Gleacher largely because of the fact that the Debtors would have access to the expertise and experience of Stephen Hentschel and Eric Gleacher. Mr. Hentschel was previously employed at LBHI as a real estate investment banker and initiated the Debtors' initial approach to, and evaluation of, Archstone for a go-private transaction. Additionally, Mr. Hentschel has direct and significant experience with all of the strategic alternatives evaluated and pursued by the Debtors since February 17, 2011, in connection with Archstone, including REIT initial public offerings, M&A transactions, joint ventures and private equity and asset sales. Another key consideration for the Debtors was receiving the personal commitment of Gleacher's chairman, Eric Gleacher, who was employed at LBHI until 1983, to be involved in the engagement. Further, Messrs. Hentschel and Gleacher have a good

relationship with Archstone's management.  The Debtors believe that such a relationship with Archstone was, and remains, key for pursuing any of the various monetization options available.

*Reasonableness of Gleacher's Fee & Expense Structure*:

10. While the Application noted that there might be a technical overlap between the services to be rendered by Lazard and the services to be rendered by Gleacher, *Application*, fn. 3, there need not be any concern about duplication of efforts, because Lazard has not rendered any services in connection with Archstone.

11. Although, as a theoretical matter, Lazard may have a right to seek a transaction fee if an Archstone Transaction is consummated, in light of the fact that Lazard has not rendered any services related to Archstone, the Debtors believe there is little likelihood that such a fee would be approved by the Court.  Given that Lazard's compensation remains subject to review by the Court under the standards set forth in section 330 of the Bankruptcy Code, *see Order Granting Supplemental Application of the Debtors Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure to Amend the Engagement Letter Between the Debtors and Lazard Frères & Co. LLC as Investment Banker to the Debtors, Nunc Pro Tunc to June 1, 2010* [ECF No. 15239] at 3, Lazard's entitlement to such fee will be considered by the Court at a later date if Lazard files an application seeking compensation relating to Archstone.

*Nunc Pro Tunc Nature of the Engagement*:

12. Subsequent to the filing of the Objections, in order to ameliorate the concerns of the U.S. Trustee and the Creditors' Committee, the Debtors and Gleacher have agreed to modify the terms of the Engagement Letter to eliminate the $300,000 monthly retainer fee and to amend Schedule B to modify the transaction fee payable to Gleacher in the event that

the Debtors consummate a transaction relating to Archstone. Consequently, Gleacher will rely solely upon its negotiated transaction fee, as set forth in the Engagement Letter, for its compensation. Copies of the revised Schedule B to the Engagement Letter, together with a blacklined copy that reflects the changes, have been provided to the U.S. Trustee and counsel to the Creditors' Committee and will be provided to the Court upon request.

13. As a result of this change to the Engagement Letter, the remaining *nunc pro tunc* nature of the engagement primarily relates to Gleacher's rights to indemnification under the Engagement Agreement. In light of the extensive and valuable services that have been rendered by Gleacher since February 17, 2011, the Debtors believe that such indemnification is appropriate.

14. The Debtors have been advised that the modification of the Engagement Letter resolves the objections of the U.S. Trustee and the Creditors' Committee regarding the *nunc pro tunc* nature of the engagement.

*Gleacher Satisfies the Disclosure Requirements of Bankruptcy Rule 2014*:

15. The U.S. Trustee Objection contends that Gleacher fails to satisfy Bankruptcy Rule 2014, specifically raising issues relating to Gleacher's trading safeguards and utilization of alleged "non-retained affiliates." *U.S. Trustee Objection*, at ¶¶14-15. In order to provide further clarification regarding these issues, the Debtors have filed, contemporaneously herewith, the Supplemental Affidavit of Stephen Hentschel, dated December 19, 2011 (the "Supplemental Hentschel Affidavit"). As set forth in both the Application and Hentschel Affidavit affixed thereto, "[t]he Services set forth in the Engagement Letter are being provided only by personnel of Gleacher's real estate investment banking group . . . and certain other limited personnel . . ." *see, e.g., Application* ¶15. Any such limited personnel are employed by

Gleacher and, further, as noted in footnote 4 of the Hentschel Affidavit, Gleacher performed a conflicts check to ensure that Gleacher and all of its subsidiaries are disinterested in accordance with Bankruptcy Rule 2014. The results of this exhaustive search are set forth in the Hentschel Affidavit.

16.     Moreover, both the Debtors and Gleacher asserted that the use of any personnel outside of the Real Estate Group <u>may</u> be needed. Bankruptcy Rule 2014 does not require professionals to (i) demonstrate the disinterestedness of employees or affiliates that <u>may or may not</u> be utilized or (ii) possess the foresight necessary to divine any and all individuals, entities or professionals that could be used on a myriad of transactions.

17.     The Debtors believe that the Application, the Hentschel Affidavit and the Supplemental Hentschel Affidavit demonstrate that Gleacher has satisfied the disclosure requirements of Bankruptcy Rule 2014 and the U.S. Trustee's objection with respect to this matter should be overruled. The Debtors intend to continue to work with the U.S. Trustee to resolve this issue prior to the hearing.

*<u>Reimbursement of Gleacher's Counsel is Appropriate</u>*:

18.     The U.S. Trustee Objection asserts that Gleacher's request for authority to seek reimbursement of attorneys' fees as a permissible expense should be denied. Section 330(a)(1)(B) of the Bankruptcy Code states that professionals may be reimbursed for expenses, without excluding any category of expenses. Despite the absence of a provision specifically providing for legal expenses of non-attorneys, case law supports the proposition that such expenses are permissible. In *In re Geneva Steel Co.*, 258 B.R. 799, 803 (Bankr. D. Utah 2001) the court explained:

> [t]here is no provision in the Code for a professional appointed pursuant to section 327 to seek appointment of another

> professional to represent its interest at a fee hearing. For attorneys this is not a problem because they are usually well equipped to represent themselves at fee hearings, and they are permitted to seek reimbursement for reasonable fees and expenses incurred in the preparation and defense of their fee applications. To expect Blackstone, a non-attorney professional, to either accept representation from counsel who may suffer a conflict of interest or absorb the cost of representation itself is fundamentally unfair. This is especially true in light of the engagement agreement which specifically provided for reimbursement of such fees by Geneva.

*Id.* (citation omitted); *see In re Borders Group, Inc.*, 456 B.R. 195 (MG) (Bankr. S.D.N.Y. 2011) (citing to *Geneva Steel* for same proposition).

19.  Judge Glenn recently addressed the U.S. Trustee's position in *Borders*, noting that such a position was "apparently a revised stance over the past two or three years. . . ." *Id.* at 204. Judge Glenn held, after a review of the very same cases the U.S. Trustee cites to for support in the U.S. Trustee Objection, that:

> nothing in the language of section 327 suggests that counsel retained to represent a retained professional in connection with its retention or fee applications should or even could be retained under section 327—that is work being done for the professional, not for the estate. And nothing in section 327 excludes such expenses as "necessary" where the work was required to comply with the Bankruptcy Code, Rules, or General Orders.

*Id.* at 250. The Debtors submit that Judge Glenn's rejection of the U.S. Trustee's proposed *per se* rule that an attorney cannot receive compensation from a debtor's estate unless it is retained by a chapter 11 debtor is correct and should be followed. Further, the U.S. Trustee's characterization of expenses incurred by a retained professional for outside legal fees as "overhead expenses" has already been overruled in this District in at least two prior instances. *See Borders*, 456 B.R. at 212 (finding that outside legal fees are not overhead); *In re Sbarro, Inc., et al.* Case No. 11-11527 (SCC) (Bankr. S.D.N.Y. 2011) (noting that overhead is akin to fixed costs such as electricity and the administrative staff—but not outside counsel to assist a

professional during the retention process); *cf. In re Blockbuster, Inc., et al.*, Case No. 10-14997 (BRL) (holding from the bench that a professional's legal fees cannot be approved in advance).

20. Additionally, the U.S. Trustee fails to note that this Court has approved the engagement of other professionals on terms that included reimbursement for the legal fees of their outside counsel.[2] Further, as set forth in the Application and the proposed form of order attached thereto, in the event Gleacher seeks reimbursement for attorneys' fees incurred during the pendency of the Debtors' chapter 11 cases, the invoices and supporting time records for such fees shall be included in Gleacher's own fee application and such invoices and time records shall be subject to the U.S. Trustee guidelines for compensation and reimbursement of expenses and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code.

21. Based upon the prevailing case law in this District and otherwise and the procedural safeguards in place allowing the U.S. Trustee to review any requests for reimbursement of Gleacher's attorneys' fees, the Debtors request that the Court overrule the U.S. Trustee's objection to the reimbursement of Gleachers' attorneys' fees.

## Conclusion

22. For the reasons set forth above and in the Application, the Debtors submit that they have met their burden of establishing that the relief requested in the Application is in the best interests of the Debtors, their respective estates and creditors. Accordingly, the

---

[2] *See, e.g.,* [ECF No. 2275] (order approving the terms of Lazard's retention, including the reimbursement of reasonable legal fees); [ECF No. 3019] (order approving the terms of retention of Huron Consulting Group Inc., including the reimbursement of "all reasonable expenses incurred . . . including, but not necessarily limited to . . . reasonable legal fees that may be incurred in connection with the engagement).

Objections should be overruled and the Application granted.

WHEREFORE the Debtors respectfully request that the Court (i) overrule the Objections, (ii) grant the relief sought in the Application as modified, and (iii) grant the Debtors such other or further relief as is just.

Dated: December 19, 2011
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# **EXHIBIT A**

US_ACTIVE:\43881286\06\58399.0008

**Other Financial Advisors Considered by the Debtors**

1. Citigroup

2. Deutsche Bank

3. Morgan Stanley

4. Wells Fargo

5. UBS

6. Goldman Sachs

7. J.P. Morgan Chase

8. Evercore Partners Inc.

9. Gleacher & Company Securities, Inc.