Hearing Date: January 11, 2012
Time: 10:00 a.m. (EST)
Location: New York, New York
Objection Deadline: January 4, 2012 at 4:00 p.m. (EST)

BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Telephone: 315-218-8000
Facsimile: 315-218-8100
Stephen A. Donato, Esq.
Jonathan B. Fellows, Esq.
Sara C. Temes, Esq.

*Attorneys for Creditor Benisasia Investment and Properties Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

Chapter 11

Case No. 08-13555 (JMP)

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION
362(d) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001
TO LIFT THE AUTOMATIC STAY TO PERMIT BENISASIA
INVESTMENT AND PROPERTIES LIMITED TO PROSECUTE
CERTAIN CAUSES OF ACTION IN STATE OR FEDERAL COURT**

Benisasia Investment and Properties Limited ("Benisasia") by and through its counsel, Bond, Schoeneck & King, PLLC, as and for its Motion for Entry of an Order pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to Permit Benisasia to Prosecute Certain Causes of Action in State or Federal Court against Lehman Brothers Holdings, Inc. (the "Debtor"), Lamco, LLC ("Lamco"), Genwood Paradise Ltd. ("Paradise"), Genwood

1926186.2

Nassau, Ltd. ("Nassau") and International Data Management, Inc. ("IDM", and together with the Debtor, Lamco, Paradise and Nassau, the "Defendants"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.  Benisasia is a corporation incorporated under the laws of the Commonwealth of the Bahamas solely for the purposes of purchasing two hotels, the first known as Paradise Island Harbour Resort, Paradise Island Commonwealth of the Bahamas ("Paradise Island Resort") and the second known as Nassau Palm Resort, West Bay Street Nassau Commonwealth of the Bahamas ("Nassau Resort" and together with Paradise Island Resort, the "Properties").

2.  On February 11, 2011, Benisasia entered into two separate contracts (as amended, the "Purchase Agreements") with Paradise and Nassau (collectively, the "Sellers"), as beneficial owners of the Paradise Island Resort and the Nassau Resort, respectively, and Lamco and the Debtor, as holders of debentures or mortgages with respect to the Properties. The purchase price for the Paradise Island Resort was US $14,000,000.00 with a deposit paid by Benisasia in the amount of US $700,000.00 and the purchase price for the Nassau Resort was US $3,250,000.00 with a deposit paid by Benisasia in the amount of US $162,500.00. The Purchase Agreements were executed by Lehman as power of attorney for Paradise and Nassau. Copies of the Purchase Agreements are attached hereto as Exhibits 1A and 1B.

3.  The deposits totaling US $862,500.00 (the "Deposits") are held by IDM, as escrow agent pursuant to the terms and conditions of two separate escrow agreements attached hereto as Exhibits 2A and 2B. Amendments to the Purchase Agreements which, among other things, extended the time for closing of the transactions, were signed on May 26, 2011 and June

23, 2011 by the parties. The amendments to the Purchase Agreements with Paradise Island and Nassau are attached hereto as Exhibits 3A and 3B, respectively.

4. Benisasia seeks authority to commence a cause of action (the "Action") in state or federal court to seek return of the Deposits and for general damages and special damages due to Defendants' breach of contract, bad faith, and negligent and fraudulent misrepresentation arising from the Purchase Agreements.

5. Benisasia respectfully submits that cause exists under 11 U.S.C. § 362(d)(1) for this Court to lift the automatic stay, to the extent the stay is applicable, to allow Benisasia to commence the Action[1] against the Debtor and the other Defendants. It is unclear whether commencement of the Action impacts the automatic stay, as it is not one that could have been commenced by Benisasia prior to the commencement of the Debtor's chapter 11 case, because the Purchase Agreements were signed nearly three years after the Debtor's chapter 11 filing.

6. Moreover, the balance of harms is in favor of modification of the automatic stay in this case. The Debtor's interest in the Properties is unclear and, as the non-debtor Sellers are listed as beneficial owners of the Properties, the impact of a claim against the Debtor would appear to be minimal. On the other hand, Benisasia would be irreversibly prejudiced by the inability to commence the Action to recover the Deposits at this time.

---

[1] On August 30, 2011, Benisasia filed an action against the Defendants in the Ontario Superior Court of Justice in Ontario, Canada (the "Ontario Action"), alleging that the Defendants invalidly terminated the contracts for the purchase of the Paradise Island Resort and Nassau Resort properties, that Benisasia was entitled to a return of the deposits it made to IDM, as escrow agent, and for general damages and special damages in excess of US $26,000,000.00 due to Defendants' breach of contract, bad faith, and negligent and fraudulent misrepresentation arising out of the contracts for the purchase of the Paradise Island Resort and Nassau Resort properties. The Ontario Action has been voluntarily withdrawn by Benisasia.

1926186.2

## BACKGROUND

7. On September 15, 2008 (the "Commencement Date"), the Debtor and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions in the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code.

8. The Debtors' chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On September 17, 2008, the United States Trustee for the Southern District of New York (the "US Trustee") appointed the statutory committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

### The Purchase Agreements

10. The Purchase Agreements required Benisasia to obtain approvals and permits from the Bahamas Investment Authority and the Central Bank of the Bahamas for the transactions contemplated by the Purchase Agreements in order to close the transactions for purchase of the Properties, as Benisasia was a non-Bahamanian resident subject to the International Persons Landholdings Act, Ch. 140-3, a statute that was enacted on January 1, 1994 to facilitate the holding of land by non Bahamanians and by companies under their control. *See* Purchase Agreement for Paradise Island Resort, ¶ 3 and Purchase Agreement for Nassau Resort, ¶ 3. Benisasia timely requested such approvals.

11. In response to Benisasia's request to the Bahamas Investment Authority for issuance of the permits, it was informed by letters dated May 25, 2011 that the permits would

be issued subject to evidence of payment of more than US $1,000,000.00 in outstanding real property taxes on the Properties.

12. It was a fundamental term of the Purchase Agreements that the sellers, Paradise and Nassau, pay all outstanding real property taxes on the Properties. After conditional issuance of the permits, Benisasia immediately requested that the Sellers pay the real property taxes, as required by the Purchase Agreements, in order to facilitate the issuance of the permits.

13. As set forth more clearly in the Affidavit of Rick Benisasia sworn to on December 16, 2011, a telephone call regarding the status of the payment of real property taxes occurred on June 21, 2011 between Benisasia, representatives of IDM, representatives of the Defendants and representatives of CB Richard Ellis Hotels. During the course of that call, Benisasia represented that it was ready, willing and able to close the transactions contemplated by the Purchase Agreements the next day, June 22, 2011. The Defendants represented that the arrears of the outstanding real property taxes on both properties would be resolved in full as soon as possible to facilitate the issuance of the permits by the Bahamas Investment Authority. Based on these representations, Benisasia executed Deeds of Addendum dated June 23, 2011 which, among other things, extended the closing dates under the Purchase Agreements. A subsequent request for a waiver of payment of taxes was denied by the Bahamas Investment Authority in a letter dated June 24, 2011. The tax payments were never made, and as a result the permits were not issued to Benisasia.

14. IDM, which also served as Benisasia's title company for the transactions, requested evidence that the Defendants were authorized to sell the Properties in light of the pending chapter 11 case of the Debtor. Benisasia did not receive the requested documentation

1926186.2

regarding the Debtor's ability to sell the Properties and was as a result unable to obtain required title insurance.

15. On July 13, 2011, the attorneys for the Defendants gave notice of termination relative to the Purchase Agreements and stated their intention to obtain the Deposits from IDM.

16. Benisasia was not provided with evidence that the Debtor had obtained any of the required approvals to allow the Defendants to close the transactions until several weeks after the Defendants gave notice of termination of the Purchase Agreements.

## JURISDICTION AND VENUE

17. The Court has jurisdiction over this motion by virtue of 28 U.S.C. § 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 326(a)(1), 362(d) and Bankruptcy Rule 4001.

18. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

19. Benisasia respectfully requests that it be granted relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, to the extent that the automatic stay applies, to allow Benisasia to commence the Action against the Defendants, including the Debtor. The claims held by Benisasia under the Purchase Agreements do not appear to implicate the automatic stay, as the Purchase Agreements are post-petition agreements which were signed nearly three years after the Commencement Date, and therefore are clearly actions that could not have been commenced by Benisasia prior to the Commencement Date. Furthermore, the

1926186.2

Debtor's interest in the Action is solely in its capacity as holder of a "power of attorney" for the Sellers and as alleged mortgagee of the Properties. Benisasia respectfully requests that the Court should grant relief from the automatic stay, to the extent it applies, as the balance of harms favors modification of the automatic stay in this case.

A. <u>**The Automatic Stay Does Not Apply to the Action**</u>.

20. Section 362 of the Bankruptcy Code automatically stays, among other things, "the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commence before the commencement of a case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). As the Purchase Agreements were executed after the Commencement Date, Benisasia respectfully submits that 11 U.S.C. 362(a)(1) is not implicated by the commencement of the Action. If a proceeding could not have been commenced before the filing of a bankruptcy case, that proceeding is not subject to the automatic stay. *See In re Galgano*, 358 B.R. 90, 98 (Bankr. S.D.N.Y. 2007); *Pension Benefit Guaranty Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33, 37-38 (S.D.N.Y. 1987) ("the automatic stay, however, does not apply to claims that arise post-petition"). Benisasia respectfully submits that the automatic stay is inapplicable to the Action.

1926186.2

21. Further, Benisasia primarily seeks, among other things, recovery of its Deposits and damages from Sellers, therefore the Action is not primarily a case "against the debtor" that would be prohibited under section 362(a)(1).

### B. To the Extent the Automatic Stay Applies to the Action, Benisasia is Entitled to Relief Pursuant to Section 362(d)(1).

22. To the extent the Action is determined to impact the automatic stay pursuant to 362(a), Benisasia respectfully submits that it is entitled to relief from the automatic stay pursuant to section 362(d). Section 362(d) of the Bankruptcy Code governs relief from the automatic stay. Specifically, section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay …
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; …

11 U.S.C. § 362(d)(1). Relief from the automatic stay may only be granted by the bankruptcy court. *In re Arbitration between Barbier & Shearson Lehman Hutton, Inc.*, 943 F.2d 249, 250 (2d Cir. 1991). "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re M.J. & K Co., Inc.*, 161 B.R. 586, 590-91 (Bankr. S.D.N.Y. 1993).

23. The Second Circuit has developed a useful analysis for determining whether "cause" exists under section 362(d)(1) to modify the automatic stay to allow litigation to proceed in another forum. *See Sonnax Industries, Inc., v. TRI Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286-87 (2d Cir. 1990).[2] Several of the *Sonnax* factors

---

[2] The *Sonnax* court considered several of the following twelve factors:
(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear

8

1926186.2

overlap. Additionally, not all of the factors will be relevant in every case, nor does a court need to assign equal weight to each factor. *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999); *In re New York Medical Group, P.C.*, 265 B.R. 408 (S.D.N.Y. 2001). In the present case, the most relevant factors that this Court should consider include: (a) the interests of judicial economy and the expeditious and economical resolution of litigation; (b) lack of any connection with or interference with the bankruptcy case; (c) the action primarily involves third parties; and (d) the impact of the stay on the parties and the balance of harms. *See Sonnax*, 907 F.2d at 1286. Benisasia satisfies each of the relevant factors, as discussed in turn more fully below, and none of the factors militate against lifting the stay. Therefore Benisasia has established "cause" for stay relief.

24.   The commencement of the Action would promote the interests of judicial economy. It would be unwieldy for Benisasia to attempt to bring this contractual dispute against the Defendants, including several non-debtor parties, in the context of these chapter 11 cases. Second, due to the fact that the Purchase Agreements were primarily with non-debtor parties, the Action has little connection with the Debtor's chapter 11 case, nor would the commencement of the Action have any impact on these chapter 11 cases, which would raise serious questions of jurisdiction over several of the parties. Third, the Action primarily involves Defendants other than the Debtor, and the Debtor has an unclear, and in any case minimal, connection to the

---

the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of the litigation; (11) whether the parties are ready for trial in the other proceeding; (12) [the] impact of the stay on the parties and the balance of harms.
*Sonnax*, 907 F.2d at 1286. The factors laid out in *Sonnax* were derived from the case *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) which catalogs decisions of various courts. It is not uncommon for some factors to be irrelevant to a particular set of facts.

9

1926186.2

Properties as a mortgagee and/or debenture holder. Fourth, there are no "harms" to balance with regard to the Debtor, however, it is imperative for Benisasia to have the issues related to the Purchase Agreements, including the Deposits, resolved as quickly as possible. If Benisasia is not permitted to commence the Action immediately, it will suffer injury, loss and damage.

25. For all the foregoing reasons, Benisasia respectfully requests that the Court issue an Order terminating the automatic stay in this case, to the extent applicable, for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code to permit the commencement and continuation of the Action.

## NOTICE

26. Notice of this Motion has been provided in accordance with the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated June 17, 2010 (the "Case Management Order") and the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 and on those notice parties fully described in the Case Management Order, including (i) the US Trustee, (ii) counsel to the Debtors, (iii) counsel for the Committee, and (iv) all parties who have requested notice in these chapter 11 cases. Benisasia submits that no other or further notice need be provided.

## NO PRIOR REQUEST

27. Benisasia has not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Benisasia respectfully requests that the Court issue an Order (a) terminating the automatic stay in this case, to the extent applicable, for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code to permit the commencement of the Action, and (b) granting such other and further relief as may be just and proper.

Dated: Syracuse, New York
December 20, 2011

BOND, SCHOENECK & KING, PLLC

By: _____
Stephen A. Donato, Esq.
Jonathan B. Fellows, Esq.
Sara C. Temes, Esq.
*Attorneys for Creditor Benisasia Investment and Properties Limited*
One Lincoln Center
Syracuse, New York 13202
Telephone: 315-218-8000
Facsimile: 315-218-8100

1926186.2