18.    Assignment.

(a)    Purchaser shall neither assign its rights nor delegate its obligations hereunder without obtaining Seller's prior written consent, which consent will not be unreasonably withheld. Notwithstanding anything to the contrary contained in this Section 18, Purchaser may assign all of its rights and delegate all of its obligations hereunder to one or more Affiliates (as hereinafter defined) of Purchaser that are under the control of Purchaser, provided that (a) such assignment would not delay or impair Purchaser or such Affiliate from obtaining the Required Approvals by the Closing Date, and (b) any such Affiliate shall be capitalized in a manner reasonably satisfactory to Seller and shall have an equity source available with a financial condition and net worth sufficient, in Seller's sole judgment, to assure that the Closing shall occur and the Purchase Price shall be paid by the Closing Date. In connection with any assignment permitted or consented to hereunder, such assignee shall assume in writing all of the assignor's obligations under this Agreement in form and substance satisfactory to Seller, provided that Purchaser originally named herein shall not be relieved from its obligations under this Agreement. Any other purported or attempted assignment or delegation without obtaining Seller's prior written consent or not otherwise permitted hereunder shall be void and of no effect. Any change in control of Purchaser or of any of the direct or indirect ownership interests in Purchaser, at any level or tier of ownership, whether in one transaction or a series of transactions, shall constitute an assignment for purposes of this Section 18. For purposes of this Section 18, the capitalized term (a) "Affiliate" means (i) any corporation in which Purchaser or any partner, shareholder, director, officer, member, or manager of Purchaser directly or indirectly owns or controls more than twenty five percent (25%) of the beneficial interest, (ii) any partnership, joint venture or limited liability company in which Purchaser or any partner, shareholder, director, officer, member, or manager of Purchaser is a partner, joint venturer or member, (iii) any trust in which Purchaser or any partner, shareholder, director, officer, member or manager of Purchaser is a trustee or beneficiary and (b) "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the entity in question, whether through the ownership of voting stock, by contract or otherwise. No consent given by Seller to any transfer or assignment of Purchaser's rights or obligations hereunder shall be construed as a consent to any other transfer or assignment of Purchaser's rights or obligations hereunder. If Purchaser assigns its rights hereunder to one or more Affiliates of Purchaser in accordance with the provisions of Section 18(a), then, provided that Purchaser shall provide Seller with at least five (5) days' prior notice of such assignment and if there is more than one assignee, such notice shall be accompanied by a statement allocating the various portions of the Property to be acquired among the assignees, Seller shall revise the closing documents required to be executed and delivered by Seller and Purchaser as set forth in Section 6 to refer to the appropriate assignee or assignees.

19.    Notices. Any notice, demand or other communication required or permitted to be given hereunder shall be in writing addressed to the respective party as set forth below and may be personally served, sent by facsimile to compatible equipment or sent by overnight courier or certified mail, return receipt requested, and shall be deemed given: (a) if served in person, when served; (b) if sent by facsimile (provided that such facsimile transmission is confirmed by telephone or a statement generated by the transmitting machine, and further provided that a copy of the notice, demand or other communication is also sent by overnight courier or by certified mail, return receipt requested) upon completion of transmission, or if transmission is completed

20

after 6:00 p.m. Eastern Time or on a day other than a business day, on the next succeeding business day; (c) if by overnight courier, on the first business day after delivery to the courier.

Notices to Seller:

Genwood Paradise Ltd.
C/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 38th Floor
New York, NY 10020
Attention: Michael Lascher & Joelle Halperin
Tel: (646).285.9073
Facsimile:(646).285.9336

with a copy to:

Valentine S. Grimes & Co
93 Collins Avenue
FloMar House
P.O. Box N-7536
Nassau, Bahamas
Tel:(242).322.1616
Facsimile:(242).328.1696

with a copy to:

TriMont Real Estate Advisors
Monarch Tower
3424 Peachtree Road NE
Suite 2200
Atlanta GA 30326
Attention: Tim Dick
Tel: (404) 954 5267
Facsimile: (404) 420 5610

Notices to Purchaser:

Benisasia Investment and Properties Ltd.
C/o Rick Benisasia
3623 Derry Road East
Mississaga, Ontario
L4T 1A8
Tel:( 416) 720 0467
Facsimile: (905).362.0248

with a copy to:

Higgs & Johnson
Deltec House, Lyford Cay
P.O. Box N3247
Nassau, Bahamas
Attention: Adrian R. White
Tel:(242) 502.5200
Facsimile (242) 362.5569

21

Notices to Escrow Agent:

International Data Management
11369 Okeechobee Boulevard
Building B., Suite 100,
Royal Palm Beach, Florida 33411
Tel: (561).798.6645
Facsmile:(561).798.3183

or to any other party or any other address as any of the foregoing parties may indicate by notice to the other parties made in accordance with the terms of this Section 19.

Attorneys for a party shall be authorized to give notices on behalf of such party. Written adjournments and extensions of time signed by an attorney for a party shall be binding upon that party.

20.    **Further Assurances.** Each party, upon request of the other party, from time to time, on or before the Closing Date or at any time thereafter, shall execute and deliver any instruments, agreements or other documents reasonably requested by the other party that are necessary or convenient in order to evidence or confirm any of the agreements of the parties hereunder or to effectuate any of the provisions of this Agreement.

21.    **Title to Personal Property.**

(a)    All fixtures and articles of personal property attached or appurtenant to the Property that are owned by the Seller are included in this sale subject, however, to any Permitted Exceptions. Purchaser acknowledges and agrees that other than expressly provided herein, Seller makes no representation in connection with such fixtures and articles of personal property, and Seller expressly disclaims any implied warranties of merchantability or fitness for a particular purpose.

22.    **Brokerage.** Seller hereby represents and warrants to Purchaser that other than CB Richard Ellis Hotels ("CBRE") that it has not engaged any finder, broker or other sales agent with respect to any of the transactions described in this Agreement or otherwise relating to the sale of all or any portion of the Property. Purchaser represents and warrants to Seller that other than Damianos Sotheby's International Realty (Damianos) which it has agreed to pay one (1%) of the Purchase Price at Closing, he  has not engaged any finder, broker or other sales agent with respect to any of the transactions described in this Agreement or otherwise relating to the purchase of all or any portion of the Property; nor, has any finder, broker or other sales agent brought about such transactions, brought the Property to the attention of Purchaser or otherwise communicated with Purchaser with respect to any such transactions or the Property. Each party agrees to indemnify, defend and hold harmless the other from and against any and all claims, liabilities, damages, costs and expenses (including, without limitation, reasonable attorneys' fees) caused by or arising out of: (a) a breach of any of the aforesaid representations and

22

warranties of the indemnifying party; and (b) any claims for any brokerage or sales commissions, finder's fees, consultant's fees or any other similar fees or compensation of any person (other than CBRE from the Seller and Damianos from the Purchaser ) claiming to have dealt with, on behalf of, through or under such indemnifying party. The provisions of this Section 21 shall survive the Closing or the earlier termination of this Agreement.

23.     **Confidentiality.** Purchaser and Seller covenant and agree not to communicate the terms or any aspect of this Agreement or the transactions contemplated hereby to any person or entity, and Purchaser and Seller agree to hold, in the strictest confidence, the content of any and all information in respect of the Property that is supplied by or on behalf of either Purchaser or Seller and is not of public record or acquired by either party (or readily available to such party) from other sources ("**Confidential Information**"), without the express written consent of the other party; provided, however, that either party may disclose the terms hereof, the transactions contemplated hereby and Confidential Information: (a) to its respective Transaction Parties without the express written consent of the other party, so long as any such Transaction Parties to whom disclosure is made have been instructed to keep all such information confidential in accordance with the terms hereof; and (b) if disclosure is required by law or by regulatory or judicial process or in any legal or quasi-legal proceeding; provided, further, that Seller may disclose Confidential Information to any other prospective purchasers of the Property, but Seller shall not permit any such prospective purchaser from discussing the Property or any proposed sale with any governmental officer, representative or employee. If this Agreement is terminated, such confidentiality shall be maintained and each party shall promptly deliver to the other party all copies of written Confidential Information delivered to it by or on behalf of either Purchaser or Seller. Each party hereby indemnifies the other party against, and holds the other party harmless from, any and all claims, losses, damages, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements) arising in connection with each party's obligations under this Section 23. The provisions of this Section 23 shall survive the termination of this Agreement.

24.     **Miscellaneous.**

(a)     At the Closing, subject to Section 11(f), Seller shall pay for (i) the legal fees and disbursements of Seller's counsel, (ii) 50% of the transfer/stamp tax on the Indenture of Conveyance, and (iii) the agreed Brokerage fee to CBRE. Purchaser shall pay (i) 50% of the transfer/stamp tax on the Indenture of Conveyance (ii) all costs and expenses in connection with the Commitment and any survey required by the Purchaser further to the one attached hereto as Exhibit A, (iii) all fees, costs and all title charges, including the premium and any endorsement charges on Purchaser's title insurance policy and any Purchaser's lender's mortgagee title insurance policy, and all transfer taxes, recording costs, assumption fees and other fees, costs and expenses associated with or relating to Purchaser's financing and all costs related to engineering and environmental inspections and reports, and (iv) the legal fees and disbursements of Purchaser's counsel. Each of the parties hereto shall bear and pay the fees and disbursements of its own accountants and other advisors in connection with the negotiation and preparation of this Agreement and the Closing. The provisions of this Section 24(a) shall survive the Closing.

(b)     Purchaser acknowledges and agrees that this Agreement does not contain any mortgage contingency, either express or implied, and that neither this Agreement nor any of



its terms or Purchaser's obligations hereunder shall be subject to or conditioned upon Purchaser's ability to obtain a mortgage, other financing or a commitment therefore for Purchaser's acquisition of the Property.

(c)    Notwithstanding anything to the contrary contained in this Agreement the Seller and Purchaser acknowledge the necessity of having an understanding/agreement with the Treasury in order that stamp duty which shall be payable at completion is determined before the expiration of the Due Diligence Period. The Seller and Purchaser agree to engage the services of Mr. Wilshire Bethell a government licenced appraiser. The Purchaser will immediately upon the execution of this Agreement pay Five Thousand (B$5000.00) Dollars towards the appraisal cost being incurred and the Seller will be responsible for any remaining balance payable however if this Agreement continues in effect past the Due Diligence Period the amount payable to the appraiser will be paid equally by the Seller and Purchaser.

(d)    It is hereby acknowledged and agreed that it is mandatory that this Agreement for Sale be completed contemporaneously with an Agreement for Sale of even date between the Purchaser herein and Genwood Nassau Ltd. an affiliate of the Seller.

(e)    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of the Bahamas, without regard to the principles of conflict of laws.

(f)    Neither this Agreement nor any provision hereof may be waived, amended, discharged or terminated except by instrument in writing signed by the party against which the enforcement of such waiver, amendment, discharge or termination is sought and then only to the extent set forth in such instrument.

(g)    It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this Agreement, which alone fully and completely express their agreement.

(h)    Whenever the context shall require, the singular shall include the plural, the plural shall include the singular and words of any gender shall be deemed to include words of any other gender. As used herein, "Purchaser" shall mean each individual or other entity signing this Agreement both individually and collectively. If two or more persons or entities constitute Purchaser hereunder, then they shall be jointly and severally liable for the obligations of Purchaser hereunder, and Seller may rely on, and all of such persons or entities shall be bound by, any writing executed by any one or more of them.

(i)    References to the "actual knowledge" of Seller shall refer only to the actual knowledge of Bradley Burwell and David Buddemeyer (collectively, the "**Designated Party**") and shall not be construed, by imputation or otherwise, to refer to the knowledge of Seller, any affiliate of Seller, any property manager, or any other officer, agent, manager, representative or employee of Seller or any affiliate of Seller, or to impose upon the Designated Party any duty to investigate the matter to which such actual knowledge, or the absence thereof, pertains.

24

(j)    The time in which any act required or permitted by this Agreement is to be performed shall be determined by excluding the day upon which the event occurs from whence the time commences. The term "business day" shall mean a day other than a Saturday, Sunday, public holiday or other day on which commercial banks in New York, New York or on the Island of New Providence, Commonwealth of the Bahamas are authorized or required by law or executive order to close or any other public holiday recognized by the Commonwealth of the Bahamas. If the last day upon which performance hereunder would otherwise be required or permitted is not a business day, then the time for such performance shall be extended to the next day that is a business day.

(k)    The terms "herein," "hereof" or "hereunder" or similar terms used in this Agreement refer to the entire Agreement and not to the particular provision in which the term is used unless the context otherwise requires.

(l)    The captions in this Agreement are for convenience and reference only and in no way define, limit or describe, the scope of this Agreement or the intent of any provision hereof.

(m)    This Agreement shall be interpreted without the aid of any presumption against the party drafting or causing the drafting of the provision in question.

(n)    This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and their assigns (but only to an assignee of Purchaser that is permitted under this Agreement). This Agreement and all documents, understandings and arrangements relating hereto or to the transactions contemplated hereby have been negotiated, executed and delivered on behalf of Seller and Purchaser by their partners or members, as the case may be, in their representative capacities and not individually, and no officer, director, employee, member, partner, agent or shareholder of Seller or Purchaser shall be bound or held to any personal liability or responsibility in connection with the agreements, obligations and undertakings of Seller or Purchaser hereunder or under any documents, understandings and arrangements relating hereto or in connection with the transactions contemplated hereby.

(o)    This Agreement shall not be effective unless and until it is executed and delivered by each of Purchaser and Seller, and the Deposit has been received by Escrow Agent pursuant to Section 2(a). This Agreement may not be modified, changed, supplemented or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein. If any provision in this Agreement is found by a court of competent jurisdiction to be in violation of any applicable law, and if such court should declare such provision of this Agreement to be unlawful, void, illegal or unenforceable in any respect, the remainder of this Agreement shall be severable, and the rights, obligations and interests of the parties hereto under the remainder of this Agreement shall continue in full force and effect. To the extent permitted by applicable law, the parties hereto waive any provision of law that prohibits or renders void or unenforceable any provision hereof.

(p)    Purchaser shall not record this Agreement or any evidence thereof without the written consent of Seller.

25

(q)    Any and all payments to be made by Purchaser under this Agreement to, on behalf of or at the request of Seller or Escrow Agent shall be made by wire transfer of immediately available United States of America federal funds to a bank account designated by Seller. Notwithstanding the foregoing, any payment to be made to Escrow Agent on account of the Purchase Price must be made by wire transfer of United States of America federal funds to a bank account designated by Escrow Agent. Any payment made by wire transfer shall not be deemed to have been made until confirmed as received by the transferee bank and credited to the transferee account.

(r)    Except as expressly stated herein, no representations, warranties or obligations of Seller or Purchaser contained in this Agreement shall survive the Closing; and with respect to such representations, warranties and obligations, if any, that are expressly stated herein to survive the Closing, any action based thereon shall be commenced within twelve months after the Closing Date.

(s)    This Agreement may be executed in several counterparts, each of which, when taken together, shall be deemed an original and constitute one and the same document.

(t)    This Agreement may be executed by facsimile signature or email of pdf signatures, and delivering by a party hereto of the facsimile signature or email of pdf signatures of such party shall have the same force and effect as the delivery of an original signature of such party.

(u)    Seller shall have the right at any time prior to or after the date hereof to enter into any contract or agreement which concerns or relates to the Property and to require Purchaser to assume such contracts and agreements in writing at Closing, as long as such contract or agreement is terminable by Seller or Purchaser (as applicable) on notice of sixty (60) days or less to the other party thereto without penalty or premium and Seller provides Purchaser with a copy of such contract or agreement at or prior to Closing. With respect to Service Contracts in existence as of the Effective Date, Purchaser shall notify Seller in writing, at least fifteen (15) days prior to the initial Closing Date, as to the Service Contracts that Purchaser does not desire to assume, and Seller shall endeavor to cancel such Service Contracts within thirty (30) days after closing provided same are cancelable by Seller without penalty or premium.

(v)    On or before the date that is Thirty-one (31) days prior to the initial Closing Date (time being of the essence), Purchaser shall send a notice (the "**Employee Notice**") to Seller stating which of the employees at the Resort (the "**Employees**") that Purchaser elects to accept, retain and employ . If Purchaser timely sends the Employee Notice and elects to accept, retain and employ certain of the Employees, such Employees shall be deemed to be "**Accepted Employees**" and all of the remaining Employees not to be accepted, retained and employed by Purchaser shall be deemed "**Rejected Employees**" for purposes of this Agreement. If Purchaser does not timely send the Employee Notice, Purchaser shall be deemed to have accepted all of the Employees and all of the Employees shall be deemed "**Accepted Employees**" for purposes for this Agreement. Purchaser hereby agrees to assume all of Seller's obligations with respect to the Accepted Employees accruing prior to, from and after the Closing Date. Purchaser agrees to indemnify and hold harmless Seller from and against all claims, liabilities, losses, costs and expenses (including, without limitation, reasonable attorneys' fees) caused by or arising out of

26

Accepted Employees accruing prior to, from and after the Closing Date. Purchaser agrees to indemnify and hold harmless Seller from and against all claims, liabilities, losses, costs and expenses (including, without limitation, reasonable attorneys' fees) caused by or arising out of any claim by any Accepted Employee with respect to the employment, discharge or layoff of any Accepted Employee based on facts arising prior to, on or after the Closing Date or any claim by any Accepted Employee arising from actions taken by Purchaser prior to the Closing Date. If Purchaser timely sends the Employee Notice, Seller shall be responsible for terminating the employment of the Rejected Employees as of the Closing Date and shall pay all accrued redundancy amounts and vacation time deemed due and owing to the Rejected Employees; provided that, in no event the Seller shall be required to pay in excess of Three Hundred and Fifty Thousand ($350,000.00) Dollars in connection with the termination of the Rejected Employees and Purchaser shall be responsible for any and all amounts/costs in excess of the said Three Hundred and Fifty Thousand ($350,000.00) Dollars.. If requested by Seller, at the Closing, Purchaser shall execute and deliver an instrument confirming the obligations of Purchaser as set forth in this Section 24(u). The provisions of this Section 24(u) shall survive the Closing.

(w)    Purchaser and Seller agree that in the event either party is entitled to receipt of the Deposit in accordance with this Agreement, Purchaser and Seller will each execute joint instructions to the Escrow Agent instructing the Escrow Agent to release the Deposit to the party so entitled to receive it in accordance with the terms and conditions of this Agreement.

(x)    All references to "dollars" in this Agreement shall mean United States Dollars except where otherwise indicated.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

SELLER:

GENWOOD NASSAU LTD.
Executed by LEHMAN BROTHERS
HOLDING INC. as per its Power of
Attorney.

Name: Jeffrey Fitts (Authorized Signatory)

PURCHASER:

BENISASIA    INVESTMENTS    AND
PROPERTIES LTD.

By: 

27

any claim by any Accepted Employee with respect to the employment, discharge or layoff of any Accepted Employee based on facts arising prior to, on or after the Closing Date or any claim by any Accepted Employee arising from actions taken by Purchaser prior to the Closing Date. If Purchaser timely sends the Employee Notice, Seller shall be responsible for terminating the employment of the Rejected Employees as of the Closing Date and shall pay all accrued redundancy amounts and vacation time deemed due and owing to the Rejected Employees; provided that, in no event the Seller shall be required to pay in excess of Eight Hundred and Fifty Thousand ($850,000.00) Dollars in connection with the termination of the Rejected Employees and Purchaser shall be responsible for any and all amounts/costs in excess of the said Eight Hundred and Fifty Thousand ($850,000.00) Dollars. If requested by Seller, at the Closing, Purchaser shall execute and deliver an instrument confirming the obligations of Purchaser as set forth in this Section 24(u). The provisions of this Section 24(u) shall survive the Closing. \

(w)    Purchaser and Seller agree that in the event either party is entitled to receipt of the Deposit in accordance with this Agreement. Purchaser and Seller will each execute joint instructions to the Escrow Agent instructing the Escrow Agent to release the Deposit to the party so entitled to receive it in accordance with the terms and conditions of this Agreement.

(x)    All references to "dollars" in this Agreement shall mean United States Dollars except where otherwise indicated.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

SELLER:

GENWOOD PARADISE LTD.
Executed by LEHMAN BROTHERS HOLDING INC. as per its Power of Attorney.

Name:  Jeffrey Fitts (Authorized Signatory)


PURCHASER:

BENISASIA    INVESTMENT    AND PROPERTIES LTD.

By:

Name: Rick Benisasia
Title:   President

27

## Exhibit B

### LEASES

| | |
|---|---|
| Naomi Hawkins | Hair braiding /souvenir's |
| MAJESTIC TOURS | Tour package |
| BAHAMA DIVERS/Stuart Cove | Diving Equipment & Dive Package / Mr. Steven Stuart |
| J& S SCOOTER | Scooter's Rental / Mr. Turnquest |
| Gift Shop | Souvenirs, Toiletries and Sundry-Thelma M. Grimes |
| Bahamas Vacations International (Nassau) Limited. | ROYAL HOLIDAY Club- Soliciting /membership of vacation club –Mr. Joshua Forbes |
| BOOZE CRUISE | Dockage Fees Guest Pick up on the dock / Mr. Hugo Barry |
| Alfred Moxey | CIGAR/SOUVENIR BOOTHS |
| BO JANGLES | Antenna on top Roof /Dolphin Encounters |
| Hidden Treasures | Alfred Moxey DENERO CIGAR / Souvenirs |
| PARTY CAT CRUISES | Alfred Moxey / Denero Cigar/Cruise |
| DOLPHIN ENCOUNTERS | Antenna on top Roof /Dolphin Encounters |

## Exhibit C

### SERVICE CONTRACTS

| | |
|---|---|
| Ecolab | Fixed Fee Pricing for Laundry, Housekeeping and Kitchen Wares. |
| ADP | Payroll system |
| Federal Express | Express Shipping |
| Royal Cup | Coffee Supplies |
| Guest Supply | Guest Room Supplies |

### Contracts/Agreements and Recurring Vendor Relationships

| | |
|---|---|
| Ace Amusements | Game Room Fees |
| Appalachia-Markomm Group | Wholesaler Agreement |
| Authentic Caribbean Holidays | Wholesaler Agreement |
| Apple Vacations | Rooms Wholesaler 2009-2010 |
| Apple Vacations | Rooms Wholesaler 2010 -2011 |
| Bahamas Communication Service | Telephone Commission |

| | |
|---|---|
| Bahamas Telecommunication | Telephone Service |
| Bahamas Electricity | Electric |
| Bahamas Cargo | Shipping |
| Bahamas Food Service | Hotel Supplier - Merchandise |
| Bahamas Hotel Association | Membership |
| Bahamas Hotel Managerial Association (collective bargaining) | Union Agreement |
| Bahamas Hotel Union | Catering Workers |
| Bahamas Waste | Waste Removal |
| BBG Global | Telecommunications |
| Beverly Clark | RFP Processor for Weddings |
| Bookit.com | Room Wholesaler |
| Cable Bahamas | Cable Television |
| Certified Vacations | Room Wholesaler |

| | |
|---|---|
| Cheapcaribbean.com Inter Island Tours | Room Wholesaler 2009-2010 |
| Cheapcaribbean.com | Room Wholesaler (room only) |
| Cleopatra Albury | Swimming Pool Labor |
| Commonwealth of the Bahamas | Hotel Encouragement Letter |
| Conquest Vacations | Room Wholesaler |
| Creative Images Photography | Photographer services |
| DC Technologies | Computer Service |
| Delta Hydronics | Domestic Hot Water Heater Retrofit |
| Dynamic Travel and Cruises | Room Wholesaler 2009-2010 |
| Dynamic Travel and Cruises | Room Wholesaler 2010-2011 |
| Elevator Services Ltd. | Elevator Maintenance |
| Elverton Bain | Maintenance Services |

| | |
|---|---|
| Wayde Bain | Maintenance Services |
| Elverton/Wayde Bain Quality Pool | Maintenance Services |
| Expedia Corporate Travel | Internet Distribution Addendum |
| Expedia Inc | Room Participation |
| Expedia Inc | Room Revenue 2009-2010 |
| Expedia-Hotels.Com | Room Revenue 2010 -2011 |
| EZ Yield | Room rate shop report |
| Dion Burrows | Security |
| Aaron Ferguson | Temporary Labor |
| Festa Holidays-Vacation Travel Mart | Wholesale Agreement |
| Festiva Resorts | Wholesale Agreement |
| FQ Tours & Travel | Wholesale Agreement |
| Fun Sun Vacations | Wholesale Agreement |

| | |
|---|---|
| Galaxy Telecom | Telephone Maintenance |
| Global United Shipping | Shipping of Pay checks |
| Grand Incentives | Room Wholesaler 2009-2010 |
| Grand Incentives | Room Wholesaler 2010-2011 |
| Hotel Anywhere | Rate Contractual Agreement |
| Hotelbeds Accom. & Destination | Room's Agreement |
| ICS Security Concepts | Hotel Security |
| Inter Island Tours | Room Wholesaler |
| Interline Value Vacations | Room Wholesaler 2009-2010 |
| Interline Value Vacations | Room Wholesaler    2010-2011 |
| Island Gases | Gas Distributor |
| Interval International | Room Wholesaler – Exhibit A-2 |

| | |
|---|---|
| Interval International | Membership Application |
| Interval International | Space Lease (Currently not in use) |
| Island Resort Tours | Room Agreement |
| Mycka Kelly | Temporary Labor |
| Jet Blue Vacations | Room Only Wholesaler |
| Liberty Travel – GoGo Worldwide Vacations | Rooms Wholesale agreement |
| Mad Marketing | Marketing Tool |
| Market Metrix | Web Based Marketing |
| Maxcom World | High Speed Internet |
| Micronet Inc | Copier Maintenance |
| MLT Vacations | Room Wholesale agreement |
| MLT Vacations | Room Wholesaler |

| | |
|---|---|
| Multi Systems, Inc. | PMS and Licenses |
| Multi Systems Inc | Annual PMS Maintenance |
| New Image Marketing | Room Wholesaler 2009-2010 |
| New Image Marketing | Room Wholesaler 2010-2011 |
| One Stop Vacations | Room Wholesaler 2009-2010 |
| Orbitz | Participation Agreement |
| Open Skies Interline Vacation | Participation Agreement |
| Paradise Utilities | Utilities |
| Priceline.com | Participation Agreement |
| Priceline.com | Confidentiality Agreement |
| RCI | Room Agreement |
| Resort Condominium | Wholesale Agreement |
| Resort Marketing International | Credit Contractual (2008-2010) |

| | |
|---|---|
| Resort Marketing International | Rooms Agreement |
| Resort Marketing International | Lodging 2008-2010 |
| Resort Marketing International | Prepayment Contractual 2008-2010 |
| Resort Marketing International | Room Revenue |
| Resort Marketing International | TUI – Tour Operator |
| Resort Marketing International | Lodging 2010-2011 |
| Resort Marketing International | Room Agreement |
| Resource Technology Management | Phone Consultant |
| Roombar S.A. | Guest Pay TV Agreement |
| Supertour.com | Participation Agreement |
| The Bahamas Hotel Bargaining Union Agreement August 2005-August 2009 | Collective Bargaining Agreement |
| TDS Operations Agreement | Hotel Participation |

| | |
|---|---|
| The Mark Travel Corporation | Wholesale Agreement 2010-2011 |
| The Mark Travel – Fun Jet Vacations | Wholesale Agreement 2009-2010 |
| Thomas Cook Group UK | Tour Sales |
| Thomas Cook Tour Operators | Market and Use Agreement |
| TIG Global and marketing agreement | Addendum – management |
| TIG Global | Addendum |
| TNT Vacations | Room Wholesaler |
| Trane Bahamas Ltd | HVAC Maintenance |
| Trane US | HVAC Maintenance |
| Travel Impressions | Room Only Agmt 2010-2011 |
| Travel Impressions | Room Only Agmt 2009-2010 |
| Travel Impressions and conditions | Room Wholesaler – Terms |

| | |
|---|---|
| Travel Ticker | Room Agreement |
| Travelclick | Consortia Participation |
| Travelclick | Electronic Media Order |
| Travelclick | Reservation Service Addendum |
| Travelclick | Travel Agent Comm. Processing |
| Travelclick | Preferred Limited Participation |
| Travelclick | Hoteligence Subscription |
| Travelco USA | Room agreement |
| Travelscape    d/b/a WWTE | Room night's addendum |
| Travelweb | Participation Agreement |
| Travelweb | Participation Agreement |
| Tropical Shipping | Shipments from US |

| | |
|---|---|
| US Airways Vacations | Wholesale Agreement 2009-2010 |
| US Airways Vacations | Wholesale Agreement 2010-2011 |
| Various Entertainment | Various entertainments are contracted locally |
| Virgin Holidays | Rooms Agreement 2009-2010 |
| Virgin Holidays | Rooms Agreement 2010-2011 |
| Virgin Holidays Resort Marketing | Room Revenue 1 of 3 |
| Virgin Holidays Resort Marketing | Room Revenue 2 of 3 |
| Virgin Holidays Resort Marketing | Room Revenue 3 of 3 |
| Water and Sewer Corporation | Water and Sewer |
| West Jet Vacations | Wholesale Agreement |
| World Travel Holdings | Room Wholesaler |

## LEASED EQUIPMENT

| | |
|---|---|
| Copyco (GE) | Copier |
| Copyco (GE) | Fax |
| Maxcom | Internet Kiosk-wireless internet |

National Contracts through Driftwood Hospitality Management (Will automatically be cancelled at time  of management transition.

## Exhibit D

## BILL OF SALE

GENWOOD PARADISE LTD.    a company incorporated under the laws of the Commonwealth of the Bahamas ("Assignor"), in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), the receipt and sufficiency of which are hereby acknowledged, does hereby grant, bargain, sell, convey, assign, transfer, set over and deliver (collectively, "assign") unto [_____], [a _____] ("Assignee"), all of Assignor's right, title and interest in and to all of the Personal Property (as such term is defined in that certain Contract of Sale dated as of the ___ day of February 2011, by and between Assignor, as seller, and Assignee, as purchaser).

TO HAVE AND TO HOLD the Personal Property unto Assignee and Assignee's heirs, legal representatives, successors and assigns forever.

The personal property is being assigned and conveyed "as is", "where is", and "with all faults" as of the date of this bill of sale, without any representation or warranty whatsoever as to its condition, fitness for any particular purpose, merchantability or any other warranty, express or implied.  Assignee is hereby acquiring the personal property based solely upon assignee's own independent investigations and inspections and not in reliance on any information provided by assignor or assignor's agents or contractors.  Assignor has made no agreement to alter, repair or improve any of the personal property.  Assignor specifically disclaims any warranty, guaranty or representation, oral or written, past or present, express or implied, concerning the personal property or assignor's title thereto.

IN WITNESS WHEREOF, the parties have signed and delivered this Bill of Sale as of the _____ day of _____, 2011.

ASSIGNOR:

GENWOOD PARADISE LTD.


By:    _____
       Name:
       Title:

Exhibit E

ASSIGNMENT AND ASSUMPTION OF SELLER'S INTEREST IN LEASES

THIS ASSIGNMENT AND ASSUMPTION OF SELLER'S INTEREST IN LEASES (this "Assignment"), dated the ____ day of _____, 2011, is made by and between GENWOOD PARADISE LTD. a company incorporated under the Laws of the Commonwealth of the Bahamas ("Assignor"), and [_____], [a _____] ("Assignee").

WHEREAS, Assignor and Assignee entered into that certain Contract of Sale dated the ____ day of _____ 2011 (the "Sales Contract") for the sale and purchase of the Property (as such term is defined in the Sales Contract);

WHEREAS, Assignor desires to assign, transfer, set over and deliver to Assignee absolutely all of Assignor's right, title and interest in and to the Leases (as hereinafter defined) as hereinafter provided; and

WHEREAS, Assignee desires to assume the duties and obligations of Assignor with respect to the Leases.

NOW, THEREFORE, in accordance with the Sales Contract and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), the receipt and sufficiency of which are hereby acknowledged, the parties do hereby covenant and agree as follows and take the following actions:

1.      Assignor does hereby assign, transfer, set over and deliver unto Assignee all of Assignor's right, title and interest in and to any and all leases, tenancies, licenses and other rights of occupancy or use of or for any portion of the Property by third parties, including all amendments, renewals and extensions thereof, in effect as of the date of this Assignment (collectively, the "Leases"), together with any and all refundable tenant security and other deposits in Assignor's possession with respect to said Leases as of the date of this Assignment (collectively, the "Deposits"). A schedule of the Leases and Deposits is attached hereto as Exhibit "A". Notwithstanding the foregoing, this Assignment will not include any rights or claims of Assignor under the Leases accrued prior to the date hereof, including, without limitation, the right to receive any rents or other sums remaining unpaid under any of the Leases for any period prior to the date hereof, and Assignor hereby retains all such rights and claims. Assignor has the right to pursue collection of unpaid sums, but shall have no right to terminate any of the Leases or occupancy of any tenants.

2.      Except as provided in the sales contract, the leases and deposits are being assigned without any representation or warranty whatsoever. Assignee is hereby acquiring the leases and deposits based solely upon assignee's own independent investigations and not in reliance on any information provided by assignor or assignor's agents or contractors. Assignor specifically disclaims any warranty, guaranty or representation, oral or written, past or present, express or implied, concerning the leases and deposits or assignor's title thereto.

3.      Assignee hereby accepts the foregoing assignment of the Leases and Deposits and hereby absolutely assumes all duties and obligations of Assignor thereunder and thereof, arising

on and after the date hereof, including, without limitation the obligation to refund the Deposits. Assignee shall defend, indemnify and hold harmless Assignor from and against any and all Claims (as hereinafter defined) asserted against or incurred by Assignor as a result of any acts or omissions (including, without limitation, any default with respect to the performance or observance of any of the terms, covenants and conditions to be performed on the part of landlord under any of the Leases) occurring on or after the date of this Assignment in connection with the Leases. Assignor shall defend, indemnify and hold harmless Assignee from and against any and all Claims (as hereinafter defined) asserted against or incurred by Assignee as a result of any acts or omissions (including, without limitation, any default with respect to the performance or observance of any of the terms, covenants and conditions to be performed on the part of landlord under any of the Leases) occurring prior to the date of this Assignment in connection with the Leases. "Claims" means claims, demands, causes of action, losses, damages, liabilities, judgments, costs and expenses (including attorneys' fees, whether suit is instituted or not).

4.    Notwithstanding anything in this Assignment to the contrary, nothing shall limit or otherwise affect any indemnification or other obligations of the Purchaser, its successor or assign, or Assignor under the Sales Contract.

5.    This Assignment shall be (a) binding upon, and inure to the benefit of, the parties to this Assignment and their respective heirs, legal representatives, successors and assigns, and (b) construed in accordance with the laws of the jurisdiction in which the Property is located, without regard to the application of choice of law principles, except to the extent such laws are superseded by federal law.

6.    This Assignment may be executed in any number of counterparts, which together shall constitute a single agreement of the parties hereto.

IN WITNESS WHEREOF, this Assignment has been signed and delivered by the parties as of the date first above written.

ASSIGNOR:

GENWOOD PARADISE LTD.

By: _____
       Name:
       Title:

ASSIGNEE:

[_____]

By: _____
       Name:
       Title:



## Exhibit F

ASSIGNMENT AND ASSUMPTION OF SERVICE CONTRACTS AND INTANGIBLES

THIS ASSIGNMENT AND ASSUMPTION OF SERVICE CONTRACTS AND INTANGIBLES (this "Assignment"), dated the ____ day of _____, 2011, is made by GENWOOD PARADISE LTD. ., a  company incorporated under the Laws of the Commonwealth of the Bahamas ("Assignor"), and [_____], [a _____] ("Assignee").

WHEREAS, Assignor and Assignee entered into that certain Contract of Sale dated the ____ day of 2011 (the "Sales Contract") for the sale and purchase of the Property (as such term is defined in the Sales Contract);

WHEREAS, Assignor desires to assign, transfer, set over and deliver to Assignee absolutely all of Assignor's right, title and interest in and to the Intangible Property (as hereinafter defined); and

WHEREAS, Assignee desires to assume the duties and obligations of Assignor with respect to the Intangible Property.

NOW, THEREFORE, in accordance with the Sales Contract and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), the receipt and sufficiency of which are hereby acknowledged, the parties do hereby covenant and agree as follows and take the following actions:

1.    Assignor does hereby assign, transfer, set over and deliver unto Assignee all of Assignor's right, title and interest in and to the following property to the extent the same is transferable and assignable by Assignor (collectively, the "Intangible Property"):

(a)    any and all contracts and agreements of any kind for the management, repair and/or operation of the Property in effect as of the date of this Assignment, other than leases (collectively, the "Contracts").  To Assignor's belief, a schedule of Contracts is attached hereto as Exhibit "A"; and

(b)    any and all assignable contract rights and intangible property pertaining to the Real Property and/or the development, construction, ownership, use or operation thereof (excluding the Contracts), including, without limitation: (i) all guaranties and warranties, (ii) all designs, plans, specifications, engineering drawings and prints, and surveys, (iii) all development rights, entitlements, licenses, approvals and agreements, (iv) all consents, variances, waivers, licenses, permits, registrations, notifications, comfort letters, reliance letters, estoppels, certificates, authorizations and other approvals and all applications for any of the foregoing, and (v) all trade names, trademarks, service marks, copyrights, telephone numbers, websites, email addresses, domain name and content and goodwill to the extent same are used exclusively for the Property (collectively, the "General Intangibles").

2.    The intangible property is being assigned "as is", "where is", and "with all faults" as of the date of this assignment, without any representation or warranty whatsoever as to its condition, fitness for any particular purpose, merchantability or any other warranty, express or

implied. Assignee is hereby acquiring the intangible property based solely upon assignee's own independent investigations and not in reliance on any information provided by assignor or assignor's agents or contractors. Assignor specifically disclaims any warranty, guaranty or representation, oral or written, past or present, express or implied, concerning the intangible property or assignor's title thereto.

3.    Assignee hereby accepts the foregoing assignment of the Intangible Property, and hereby absolutely assumes all duties and obligations of Assignor arising under or in connection with the Intangible Property on and after the date hereof. Assignee shall defend, indemnify and hold harmless Assignor from and against any and all Claims (as hereinafter defined) asserted against or incurred by Assignor as a result of any acts or omissions occurring on or after the date of this Assignment in connection with the Intangible Property. Assignor shall defend, indemnify and hold harmless Assignee from and against any and all Claims (as hereinafter defined) asserted against or incurred by Assignee as a result of any acts or omissions occurring prior to the date of this Assignment in connection with the Intangible Property. "Claims" means claims, demands, causes of action, losses, damages, liabilities, judgments, costs and expenses (including attorneys' fees, whether suit is instituted or not).

4.    Notwithstanding anything in this Assignment to the contrary, nothing shall limit or otherwise affect any indemnification or other obligations of the Purchaser, its successor or assign, or Assignor under the Sales Contract.

5.    This Assignment shall be (a) binding upon, and inure to the benefit of, the parties to this Assignment and their respective heirs, legal representatives, successors and assigns, and (b) construed in accordance with the laws of the jurisdiction in which the Property is located, without regard to the application of choice of law principles, except to the extent such laws are superseded by federal law.

6.    This Assignment may be executed in any number of counterparts, which together shall constitute a single agreement of the parties hereto.

IN WITNESS WHEREOF, this Assignment has been signed, sealed and delivered by the parties as of the date first above written.

ASSIGNOR:
GENWOOD PARADISE LTD.

By:    _____
       Name:
       Title:
ASSIGNEE:

[_____]

By:    _____
       Name:
       Title:

**Exhibit G**

TENANT NOTICE

_____, 2011

Letter to    _(insert name & address of each tenant)_

_____

    **Re:**_____
         _Lease with_ _____

Dear _____:

This will advise that on this date _____ has transferred the captioned Lease to _____. From and after today, please make all checks for rent and other charges payable to "_____" and forward to:

          (Information to be supplied by Buyer)

From and after today, please send all notices to landlord addressed to "_____" and forward to:

          (Information to be supplied by Buyer)

Many thanks in advance for complying with the above request.  If you have any questions or need assistance in the future, please contact _____(telephone #_____).

          Sincerely,

          _____
          Name: _____
          Title: _____

## Exhibit H

## RENT ROLL

| Naomi HAWKINS | Hair braiding /souvenir's | $400.00 |
|---|---|---|
| MAJESTIC TOURS | Tour package | $500.00 |
| BAHAMA DIVERS/Stuart Cove | Diving Equipment & Dive Package / Mr. Steven Stuart | $2500.00 |
| J& S SCOOTER | Scooter's Rental / Mr. Shavane Turnquest | $1000.00 |
| Gift Shop | Souvenirs, Toiletries and Sundry-Thelma M. Grimes | $600.00 |
| Bahamas Vacations International (Nassau) Limited. | ROYAL HOLIDAY Club- Soliciting /membership of vacation club –Mr. Joshua Forbes | $3500.00 |
| BOOZE CRUISE | Dockage Fees Guest Pick up on the dock / Mr. Hugo Barry | $1000.00 |
| Alfred Moxey | CIGAR/SOUVENIR BOOTHS | $450.00 |
| BO JANGLES | Antenna on top Roof /Dolphin Encounters | $1500.00 |
| Hidden Treasures | Alfred Moxey DENERO CIGAR / Souvenirs | $300.00 |
| PARTY CAT CRUISES | Alfred Moxey / Denero Cigar/Cruise | $400.00 |
| DOLPHIN ENCOUNTERS | Antenna on top Roof /Dolphin Encounters | $100.00 |

## EXHIBIT I

1. **CONVEYANCE**-dated the 3rd of September, A.D. 1980 Flagler Hotels of the Bahamas Inc. to Hotels of New Providence Limited. Recorded in Volume 3334 at Pages 159 to 172.

2. **CONVEYANCE**- dated the 26th of November, A.D. 1990 Hotels of New Providence Limited to Four Star Resort Bahamas Limited. Recorded in Volume 5519 at pages 336 to 356.

3. **CONVEYANCE**-dated the 9th of September, A.D. 1999 from Four Star Bahamas Limited to Driftwood Bahamas Limited. Recorded in Volume 7627 at pages 586 to 603.

4. **CERTIFIED COPY OF MORTGAGE**- dated the 16th November, 1995 between Four Star Resort Bahamas Limited and CIBC Bahamas Limited. Recorded in Book 6573 at pages 600 to 608. **SATISFACTION ATTACHED** dated the 22nd November, A.D. 1999 recorded in Volume 7627 at pages 584 to 585.

5. **DEBENTURE AND LEGAL MORTGAGE**-dated the 10th September, A.D. 1999 from Driftwood Bahamas Limited to Lehman Brothers Holdings Inc. Recorded in Book 7627 at pages 559 to 583.

6. **AFFIDAVIT OF LOST DOCUMENTS**-dated the 9th September, A.D.1999 from Four Star Resort Bahamas Limited and Driftwood Bahamas Limited. Recorded in Book 7628 at pages 1 to 3.

7. **COLLATERAL SECURITY DEBENTURE**-dated the 18th January, A.D. 2000 from Driftwood Bahamas Limited to Lehman Brothers Holdings Inc. recorded in Book 7714 at pages 303 to 321.

8. **CONVEYANCE**-dated the 31st August, A.D. 2006 from Driftwood Bahamas Limited and Genwood Paradise Ltd. Recorded in Book 9907 at pages 101 to 109.

## Schedule 1

1.      Any and all present and future laws, regulations, restrictions, requirements, ordinances, resolutions and orders (including, without limitation, any of the foregoing relating to zoning, building and environmental protection) as to the use, occupancy, subdivision or improvement of the Property adopted or imposed by any bureau, board, commission, legislature, department or other governmental body.

2.      Liens for taxes, water charges, sewer rents and assessments not yet deemed payable on the Property, subject to adjustment at Closing pursuant to the terms and provisions of the Agreement.

3.      The right, if any, to maintain vaults, street and sidewalk and other off-site spaces, excavations and signs.

4..     Variations between tax lot lines and the record lines.

5.      Encroachments of the Building, nonstructural walls, lawns, walks, fences, cellar doors, sidewalk elevators, fire escapes, sheds, stoops, areas, steps, trim and cornices, balconies, ornamental columns, windows, door caps, keystones, ledges, pilasters, coping, or other similar projections or structures, if any, upon, under or above any street or highway or any adjoining property and any similar encroachments projecting upon, under or above the Property.

6.      Any lien, encumbrance or lis pendens either for which the instrument required to remove said encumbrance of record is delivered on or prior to the Closing to the Title Company together with the required recording or filing fee, or which the Title Company is otherwise willing to omit from the title policy issued to Purchaser in connection with the Closing.

7.      The lien of any assessment which is or may become payable in annual installments of which any installment is then a charge or a lien, provided that apportionment thereof is made as provided in this Agreement.

8.      Any covenants, restrictions and easements or other encumbrances not violated by the existing building(s) and improvements on the Property.

9.      Rights of electric, telephone, cable, water and any other utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cables, boxes and related equipment upon, under and above the Property.

10.     Violations of law, regulations, ordinances, orders or requirements, if any noted in or issued prior to or subsequent to the date hereof by any governmental or Government department or Public Corporation or authority having jurisdiction over the Property and any condition constituting such violations, although not so noted or issued, provided that, subject to the terms of paragraph 13 of this Schedule, same have not been reduced to money judgment or have a specific dollar amount assessed which, in either case, constitute a lien against the Property.

11.     Leases and parties in possessions, as tenants only.

12.     Any statement of facts a personal inspection of the Property would show.

13.     Any matter which a title insurer will omit as an exception from coverage or insure Purchaser against collection or enforcement of such matter out of or against the Property (excluding personal property).

14.     Real property   taxes and assessments not yet due and payable, subject to adjustment at Closing pursuant to this Agreement

15.     The following additional exceptions:

(a)     Any dispute as to the boundaries caused by a change in the location of any water body adjacent to the land prior to Date of Policy.

(b)     Any mining and/or mineral rights in favor of the Government of The Commonwealth of the Bahamas.

### GENWOOD PARADISE LTD.

as Seller,

-and-

### BENISASIA INVESTMENT AND PROPERTIES LTD as Purchaser.

### CONTRACT OF SALE

**Property:**    Paradise Island Harbour Resort, Paradise Island, Commonwealth of the Bahamas

### VALENTINE S. GRIMES & CO.
### 93 COLLINS AVENUE
### FloMar HOUSE
### NASSAU, BAHAMAS

Exhibit "A"

BOOK 9 9 0 7 PAGE 103

SURVEY PLAN

A PARCEL OF LAND CONTAINING 2.953 ACRES BEING LOT-16 BLOCK -2 OF
" PARADISE ISLAND COLONY "
SITUATE
BETWEEN HARBOUR DRIVE AND THE NASSAU HARBOUR ON
THE SOUTHERN COAST OF
PARADISE ISLAND
IN THE COMMONWEALTH OF THE BAHAMAS

SURVEYED AT THE INSTANCE OF VALENTINES GRIMES

| SURVEYED BY | | DATE |
| ROLAND JOHN | CHEE-A-TOW & COMPANY LIMITED | 15TH, MAY, 2006 |
| DRAWN BY | | JOB NO |
| TONY | SURVEYORS, ENGINEERS & PLANNERS | 7408 A / 06 |
| CHECKED BY | | SCALE |
| PATRICK | NASSAU, BAHAMAS | 1 INCH = 100 FEET |

APPROVED BY

RONALD W. THOMPSON
SECRETARY
INVESTMENTS BOARD

DATE

Exhibit "H"



BOOK **9907** PAGE **116**

SURVEY PLAN

SEVERAL PARCELS OF LAND
SITUATE
AT THE SOUTH-WESTERN JUNCTION OF WEST BAY STREET
AND NASSAU STREET , IN THE WESTERN DISTRICT OF
NEW PROVIDENCE ISLAND

IN THE COMMONWEALTH OF THE BAHAMAS

SURVEYED AT THE INSTANCE OF VALENTINES GRIMES

| SURVEYED BY | CHEE-A-TOW & COMPANY LIMITED | DATE |
|---|---|---|
| ROLAND JOHN | | 15TH, MAY, 2006 |
| DRAWN BY | | JOB NO |
| TONY | SURVEYORS, ENGINEERS & PLANNERS | 7407 A / 06 |
| CHECKED BY | | SCALE |
| PATRICK | NASSAU, BAHAMAS | 1 INCH = 100 FEET |

APPROVED BY

RONALD W. THOMPSON
SECRETARY
INVESTMENTS BOARD

25TH August 2006
DATE