Hearing Date and Time: January 11, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: January 4, 2012 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                        Debtors.          :      (Jointly Administered)
                                          :
------------------------------------------------------------------x
```

## NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN BROTHERS SPECIAL FINANCING INC. PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT AGREEMENT WITH MERRILL LYNCH PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC.

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF," together with LBHI and their affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of settlement agreement with Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc. (together, "Merrill"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 11, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to

Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.); (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.); and (v) attorneys for Merrill, Kutak Rock LLP, 1 1111 East Main Street, Suite 800, Richmond, Virginia 23219 (Attn: David A. Nix, Esq. and Peter J. Barrett, Esq.) so as to be so filed and received by no later than **January 4, 2012 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 21, 2011
     New York, New York

          /s/ Jacqueline Marcus
          Jacqueline Marcus

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                    :
**In re**                                           :    **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :    **08-13555 (JMP)**
                                                    :
                            **Debtors.**            :    **(Jointly Administered)**
                                                    :
-----------------------------------------------------------------x

## MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN BROTHERS SPECIAL FINANCING INC. PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT AGREEMENT WITH MERRILL LYNCH PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC.

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special

Financing Inc. ("LBSF," together with LBHI and their affiliated debtors in the above-referenced

chapter 11 cases, the "Debtors," and collectively with their non-Debtor affiliates, "Lehman") file

this motion pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for approval of settlement agreement with Merrill Lynch Portfolio Management, Inc. ("MLPM")

and Merrill Lynch Capital Services, Inc. ("MLCS," together with MLPM, "Merrill," and

collectively with LBHI and LBSF, the "Parties"), and respectfully represent:

## Preliminary Statement

1.     Merrill is the holder of certain debt instruments that are secured by senior mortgages on five multifamily housing projects located in Florida.  LBHI and LBSF are holders of related debt instruments that are secured by junior liens on the same real properties.  The borrower under these debt instruments has defaulted on its obligations to Merrill and, accordingly, Merrill is seeking to enforce and/or monetize its various interests in the related real properties.  In order to expedite this process, Merrill has requested that the Debtors provide Merrill with releases of their security interests in the real properties.  There is a dispute between Merrill and the Debtors as to whether LBHI and LBSF are obligated to provide such releases pursuant to a Subordination Agreement (as defined below).  As described below in greater detail, this dispute has previously been the subject of litigation in this Court.

2.     In order to avoid the expense and uncertainty attendant to litigating this dispute, the Parties have agreed to resolve their differences in accordance with the terms set forth in that certain Agreement Regarding Applicable Proceeds (the "Settlement Agreement"), substantially in the form attached hereto as Exhibit A.  The Parties expect to execute the Settlement Agreement prior to the hearing on this Motion.  In effect, the Settlement Agreement provides that in exchange for the Debtors' agreement to release, or consent to the release of, their security interests in the Projects (as defined below), Merrill shall pay to LBHI certain proceeds from the disposition of the Projects (as defined below).

3.     The Debtors believe that the compromise embodied in the Settlement Agreement is a reasonable resolution of the dispute between the Parties because it allows LBHI, which is the next subordinate creditor, to share in the proceeds of the disposition of the Projects even under circumstance (such as foreclosure of a senior mortgage) where, as holder of the

Series B Bonds (as defined below), it would not obtain any recovery from the disposition of a particular Project, while retaining the incentive for Merrill to maximize the recovery from each of the Projects.

## Background

4.      Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, a proceeding was commenced under the Security Investor Protection Act of 1970, as amended (the "SIPA"), with respect to LBI.  A trustee appointed under the SIPA is administering LBI's estate (the "SIPA Trustee").

7.      On December 6, 2011, the Court entered an order [ECF No. 23023] confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan").  As of the date hereof, the Plan has not become effective.

## Jurisdiction

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

9.      The Debtors seek approval of the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  The Debtors have determined, in the exercise of their sound business judgment, that the Settlement Agreement and the transactions contained therein are in the best interests of their respective estates and their creditors and should be approved.

## The AHF Bonds

10.      Pursuant to that certain Indenture of Trust, dated as of November 1, 2005 (the "Indenture"), between Capital Trust Agency (the "Issuer") and U.S. Bank National Association (the "Trustee"), the Issuer issued the following Multifamily Housing Revenue Bonds: $62,030,000 Series A Bonds (the "Series A Bonds"), $20,680,000 Subordinate Series B Bonds (the "Series B Bonds"), $20,680,000 Subordinate Series C Bonds (the "Series C Bonds") and $1,915,000 Subordinate Series D Bonds (the "Series D Bonds" and, together with the Series A Bonds, Series B Bonds and Series C Bonds, the "Bonds").

11.      The Debtors understand that Merrill Lynch, Pierce, Fenner & Smith Inc. ("MLPFS") was the initial purchaser, and that MLPM is the current beneficial owner, of the Series A Bonds.

12.      LBI was the initial purchaser and LBHI is currently the sole beneficial owner of the Series B Bonds.[1]

---

[1] In order to resolve any uncertainty as to the ownership of the Series B Bonds, the SIPA Trustee has delivered to LBHI a certificate regarding ownership of the Series B Bonds that acknowledges LBHI's superior interest in the Series B Bonds, and waives, releases and relinquishes (and to the extent not already waived, released or extinguished, transfers, assigns and conveys to LBHI) any and all legal, beneficial, contingent, residual or any other kind of interest that LBI may have in the Series B Bonds.  In connection therewith, LBHI has agreed that an amount equal to the amount of any payments it receives with respect to the principal or interest on, or proceeds of, any disposition of the Series B Bonds will be applied against any amounts that may be due and

13.     NAHTEF Bond Fund I – 2005, L.P. ("NAHTEF Bond") is the beneficial owner of the Series C Bonds and NAHTEF Acquisitions, LLC ("NAHTEF Acquisitions," together with NAHTEF Bond, "NAHTEF," and collectively with LBSF and LBHI (solely in its capacity as successor in interest to LBI), the "Subordinate Lenders") is the beneficial owner of the Series D Bonds.

14.     The proceeds of the Bonds were loaned (the "Loan") to AHF-Bay Fund, LLC ("AHF") by the Issuer pursuant to that certain Loan Agreement, dated as of November 1, 2005, and were used for the acquisition and rehabilitation of five multifamily housing projects (the "Projects") including (i) the Brampton Court Apartments, which are located in Broward County, Florida (the "Brampton Project"); (ii) the Brittany Bay Apartments, which are located in Pinellas County, Florida; (iii) the Mariners Pointe Apartments, which are located in Pinellas County, Florida; (iv) the Village Lakes Apartments, which are located in Seminole County, Florida; and (v) the Waterman's Crossing Apartments, which are located in Hillsborough County, Florida.

15.     The Loan is evidenced by a senior promissory note from AHF in the amount of the Series A Bonds, a junior promissory note from AHF in the amount of the Series B Bonds and certain other subordinate promissory notes from AHF in the amounts of the Series C Bonds and Series D Bonds.

16.     In connection with the Loan, AHF entered into the following additional agreements:

---

owing to LBHI as subrogee of JPMorgan Chase Bank, N.A. and its affiliates with respect to obligations of LBI (collectively, the "LBI-Related Subrogated Claims").  If any such payments are received by LBHI following the satisfaction in full of all LBI-Related Subrogated Claims, an amount equal to the amount of such additional payments will be paid by LBHI to LBI.

- That certain ISDA Master Agreement, dated November 1, 2005, and related documents, under the terms of which MLCS and AHF agreed to make certain payments to one another relating to the Series A Bonds (collectively, the "Merrill TRS"); and

- That certain ISDA Master Agreement, dated November 1, 2005, and related documents, under the terms of which LBSF and AHF agreed to make certain payments to one another relating to the Series B Bonds (collectively, the "Lehman TRS" and, together with the Merrill TRS, the "Swaps").

17.    In order to secure AHF's various obligations under the Bonds and the

Swaps, AHF granted the following mortgages:

- Five separate first mortgages executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series A Bonds held by MLPM (collectively, the "First Mortgages");

- Five separate second mortgages executed by AHF in favor of MLCS to secure the obligations of AHF under the Merrill TRS (collectively, the "Second Mortgages");

- Five separate third mortgages executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series B Bonds held by LBHI (together with the related documents, the "LBHI Mortgage");

- Five separate fourth mortgages executed by AHF in favor of LBSF and LBHI to secure the obligations of AHF under the Lehman TRS (together with the related documents, the "LBSF/LBHI Mortgage"); and

- Five separate fifth mortgages executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series C Bonds and Series D Bonds held by NAHTEF (together with the related documents, the "NAHTEF Mortgage" and, together with the LBHI Mortgage and the LBSF/LBHI Mortgage, the "Subordinate Mortgages").

18.    In connection with the Bonds and the Swaps, Merrill, LBI, LBSF and

NAHTEF Bond also entered into that certain subordination agreement, dated as of November 10,

2005 (the "Subordination Agreement").  LBHI, in its capacity as co-mortgagee of the

LBSF/LBHI Mortgage, is not a party to the Subordination Agreement.

**The Previous Litigation Between the Parties**

19.    On April 26, 2011, the Court so ordered a stipulation among LBHI, LBSF,

the SIPA Trustee and Merrill (the "Stipulation") [ECF No. 16252].  The Stipulation provided for

relief from the automatic stay to allow Merrill to enforce its rights under state law and the

Subordination Agreement in connection with the Brampton Project.  Subsequently, there was a

dispute among the Parties as to the scope of Merrill's rights under the Subordination Agreement

and, on June 23, 2011, Merrill filed a motion seeking specific performance of the Debtors'

obligations under the Subordination Agreement (the "Specific Performance Motion") [ECF No.

18033].  The essence of Merrill's argument in the Specific Performance Motion was that, upon

the occurrence of an event of default with respect to the Series A Bonds or the Merrill TRS,

Merrill has the unilateral right to release or cause the release of the Subordinate Mortgages.

20.    The Debtors filed an objection to the Specific Performance Motion on July

13, 2011 in which they argued, among other things, that the plain language of the Subordination

Agreement merely required the Subordinate Lenders to consent to various actions by or against

AHF and that nothing in the Subordination Agreement required the Subordinate Lenders to

release the Subordinate Mortgages [ECF No. 18486].  Additionally, the Debtors pointed out that

LBHI, in its capacity as co-mortgagee for the LBSF/LBHI Mortgage, is not even a party to the

Subordination Agreement.  Accordingly, LBHI, as co mortgagee for the LBSF/LBHI Mortgage

had no obligation to deliver consents, releases, or any other documents to Merrill under the

Subordination Agreement.

21.    On July 27, 2011, the Court entered an order denying the relief requested

by Merrill in the Specific Performance Motion (the "Specific Performance Order") [ECF No.

18806].

22.    As set forth in the declaration of Ronald Dooley (the "Dooley

Declaration"), attached hereto as Exhibit B, following the entry of the Specific Performance

Order, and in an effort to reach a consensual resolution of the disputes among the Parties, the

Debtors and Merrill engaged in a lengthy negotiation process regarding the sale of the Brampton

Project and the potential disposition of the other Projects that lasted through the summer and fall

of 2011.[2]  The Settlement Agreement is the result of these negotiations.

### The Settlement Agreement

23.    Pursuant to the Settlement Agreement, LBHI, as holder of the Series B

Bonds, will receive a percentage of the proceeds that Merrill realizes in connection with the

disposition of a Project (including by virtue of a foreclosure of the First Mortgage or the Second

Mortgages).  After the Series A Bonds or the Merrill TRS, as applicable, have been paid in full,

the Debtors will receive all amounts that they are otherwise entitled to under the Series B Bonds

or the Lehman TRS.  The Settlement Agreement includes, *inter alia*, the following significant

terms:[3]

| | |
|---|---|
| ***Distribution of Applicable Proceeds*** | Upon the occurrence of a sale of a Project to a third party unaffiliated with Merrill (a "Third Party Sale"), all Applicable Sales Proceeds[4] received shall be distributed as follows:<br><br>Unless previously reimbursed to Merrill pursuant to the terms of the Indenture or otherwise, the aggregate amount of any protective advances made by Merrill to AHF and any other out of pocket expenses actually incurred by Merrill with respect to such Project for which Merrill is entitled to reimbursement or repayment under the terms of the Loan Documents, the Swap Documents and/or the Subordination Agreement shall be disbursed to Merrill. |

---

[2] While the Stipulation already provides the Debtors with authority to release their security interests in the Brampton Project, the Debtors believe that Court approval of the Settlement Agreement, which covers all of the Projects, is more efficient than seeking approval for the disposition of each Project on a stand-alone basis going forward.

[3] The terms listed below are provided as a summary of the terms of the Settlement Agreement.  In the case of an inconsistency between the terms set forth in the summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

| | |
|---|---|
| | Five percent of the aggregate amount of Net Sales Proceeds shall be paid to LBHI and applied by the Trustee to amounts due under the Series B Bonds.<br><br>The balance shall be paid to Merrill until all amounts due under the Series A Bonds or the Merrill TRS, as applicable, have been paid in full. Following such payments, the Trustee shall distribute any balance in accordance with the terms of the Indenture.<br><br>Upon the occurrence of an acquisition (whether by foreclosure sale, deed in lieu of foreclosure, or similar) of a Project by Merrill or its affiliates (a "Merrill Acquisition"), Merrill shall pay to LBHI an amount equal to 5% of the aggregate Net Economic Proceeds attributable to such Project; payment of such amount is to be made on the earlier of (i) a Merrill Third Party Sale or (ii) the date that is one year after the date of the Merrill Acquisition. |
| *Notification of Proposed Transfer* | Merrill will provide a written notice (a "Transfer Notice") to the Debtors at least 15 days in advance of any proposed sale or transfer of a Project pursuant to a Third Party Sale or a Merrill Acquisition and the calculation of Net Sales Proceeds or Net Economic Proceeds.<br><br>LBHI will have 10 business days to deliver a written objection (an "Objection") to the Transfer Notice. If the Parties are unable to resolve the issues raised in the Objection prior to the closing of the proposed sale or transfer, the Parties shall submit such dispute to binding mediation. |
| *Delivery of Releases by the Lehman Parties.* | Upon delivery of a Transfer Notice with respect to a Project (other than in connection with a Merrill Acquisition or Third Party Sales pursuant to which the liens of the Third Mortgages and the Fourth Mortgages are extinguished), LBHI and/or LBSF (as applicable) shall deliver to Merrill any and all documents, instruments, conveyances or agreements reasonably requested by Merrill evidencing the release, cancellation, reconveyance or termination of any claim, right, title and interest that LBHI or LBSF (as applicable) may have, directly or indirectly, in such Project (the "Releases"). The Releases shall be held in escrow pending consummation of the Third Party Sale, if applicable, and payment in full of all amounts owed to LBHI as the Series B Bondholder following such Third Party Sale or following a Merrill Acquisition, as applicable.<br><br>If LBHI or LBSF (as applicable) fails to deliver a Release in accordance with the requirements of the Settlement Agreement, Merrill may, in accordance with a power of attorney granted to Merrill in the Settlement Agreement, following payment to LBHI of the amount set forth in the Transfer Notice, release, cancel, reconvey or terminate (i) the Lehman Mortgages encumbering such Project, together with any other Lehman Mortgage Documents encumbering such Project and (ii) all other claim, |

| | |
|---|---|
| | right, title and interest the Debtors may have, directly or indirectly, in such Project. |
| *Delivery of Releases by Merrill* | Upon the repayment in full of (a) the Series A Bonds and all obligations secured by the First Mortgages or (b) any amounts due under the Merrill TRS and secured by the Second Mortgages, the applicable Merrill entity shall release or cause to be released each of the First Mortgages or each of the Second Mortgages, as applicable, and all other security interests or collateral securing the Series A Bonds or the obligations related to the Merrill TRS, as applicable. |

## The Settlement Agreement Meets The Legal Standard Established Under Bankruptcy Rule 9019 and is in the Best Interests of the Debtors and Their Respective Estates

24.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

25.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness. *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its

discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown &*

*Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the

question of whether a particular compromise is "fair and equitable, and in the best interest of the

estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

26.    While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation.  *Drexel Burnham Lambert Group*, 134

B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact. . . .  The court need only canvass the settlement to determine whether it is within the

accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

27.    The court may give weight to the "informed judgments of the . . . debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." *Drexel Burnham Lambert*

*Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness. . . .  If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have

selected the other.").

28.    Significantly, there is no requirement that "the value of the compromise

. . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

29.    The compromise set forth in the Settlement Agreement is fair and equitable, in the best interests of the Debtors' respective estates and creditors, and an appropriate exercise of the Debtors sound business judgment.  The Settlement Agreement provides that a portion of the amounts due to LBHI under the Series B Bonds will be paid in connection with the disposition (including foreclosure) of each of the Projects, guaranteeing LBHI some recovery from the Series B Bonds in spite of the fact that such recoveries would otherwise be contractually subordinated to the Series A Bonds.  Additionally, this profit sharing mechanism is expected to incentivize Merrill to maximize recovery from each of the Projects, making it more likely that there will be some residual value available to satisfy the remaining amounts due under the Series B Bonds after the Series A Bond or the Merrill TRS, as applicable, have been paid in full.  Finally, the Settlement Agreement will relieve the Debtors from the expense attendant to litigating the dispute with Merrill.

30.    Although LBSF is not expected to receive a direct benefit from the transactions set forth in the Settlement Agreement, Merrill would not agree to the settlement without including LBSF as a settling party.  Additionally, although LBSF could elect to separately litigate the Subordination Agreement dispute with Merrill (and potentially reach some kind of a settlement with Merrill), given that it is extraordinarily unlikely that there will be any residual value remaining for distribution to LBSF after the Series A Bonds, the Merrill TRS obligations and the Series B Bonds have been paid in full, the expense of pursuing such a

strategy simply is not justified by the potential benefit to LBSF's estate.  Thus, LBSF's estate is not being deprived of any valuable property interests.

31.     For the reasons stated above, and in the Debtors' informed business judgment, the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the issues described herein, are well within the "range of reasonableness," and are in the best interests of the Debtors' estate and its creditors.  Accordingly, the Debtors request that LBHI's and LBSF's entry into the Settlement Agreement be approved.

## Relief Under Bankruptcy Rule 6004(h)

32.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  Waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) will allow Merrill to employ an aggressive marketing strategy for the remaining Projects thereby maximizing the potential for recoveries to LBHI related thereto.  Accordingly, the Debtors respectfully request that any order approving the relief requesting herein be effective immediately by waiving the 14-day stay.

## Notice

33.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys

for Merrill; and (vii) all parties who have requested notice in these chapter 11 cases.  The

Debtors submit that no other or further notice need be provided.

34.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated:  December 21, 2011
     New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>Exhibit A</u>**
**(The Settlement Agreement)**

DRAFT 12/19/11

## AGREEMENT REGARDING APPLICABLE PROCEEDS

THIS AGREEMENT REGARDING APPLICABLE PROCEEDS (this "Agreement"), dated as of December __, 2011 (the "Execution Date"), is made by and among **MERRILL LYNCH CAPITAL SERVICES, INC.** ("MLCS"), **MERRILL LYNCH PORTFOLIO MANAGEMENT, INC.** ("MLPMI" and together with MLCS, collectively, "Merrill" or "Merrill Entities"), **LEHMAN BROTHERS SPECIAL FINANCING INC.** ("LBSF"), and **LEHMAN BROTHERS HOLDINGS INC.** ("LBHI" and together with LBSF, the "Lehman Parties"). The Merrill Entities and the Lehman Parties are collectively referred to herein as the "Parties" and each is individually referred to herein as a "Party."

### Recitals

WHEREAS, in November 2005, AHF-Bay Fund, LLC, a Florida limited liability company ("AHF"), was loaned the proceeds of the Bonds (defined below) for purposes of acquiring and rehabilitating five multifamily housing projects in the State of Florida (collectively, the "Projects" and, each individually, a "Project").

WHEREAS, the five multifamily housing projects comprising the Projects and financed with the Bonds are:

(a)    Brampton Court Apartments located in Broward County, Florida (the "Brampton Project");

(b)    Brittany Bay Apartments located in Pinellas County, Florida;

(c)    Mariners Pointe Apartments located in Pinellas County, Florida;

(d)    Village Lakes Apartments located in Seminole County, Florida; and

(e)    Waterman's Crossing Apartments located in Hillsborough County, Florida.

WHEREAS, pursuant to that certain Indenture of Trust, dated as of November 1, 2005 (the "Indenture"), between Capital Trust Agency (the "Issuer") and U.S. Bank National Association (the "Trustee"), the Issuer issued the following Multifamily Housing Revenue Bonds: $62,030,000 Series A Bonds (the "Series A Bonds" or "Senior Bonds") (CUSIP Number 14052TBH6), $20,680,000 Subordinate Series B Bonds (the "Series B Bonds") (CUSIP Number 14052TBJ2), $20,680,000 Subordinate Series C Bonds (the "Series C Bonds") and $1,915,000 Subordinate Series D Bonds (the "Series D Bonds" and, together with the Series B Bonds and

the Series C Bonds, the "<u>Subordinate Bonds</u>")  (The Series A Bonds and the Subordinate Bonds are collectively referred to as to the "<u>Bonds</u>").

WHEREAS, with regard to the Bonds:

(f)    Merrill Lynch, Pierce, Fenner & Smith Incorporated ("<u>MLPFS</u>") was the initial purchaser and MLPMI is the current sole beneficial owner of the Series A Bonds;

(g)    Lehman Brothers, Inc. ("<u>LBI</u>") was the initial purchaser and LBHI is the current sole beneficial owner of the Series B Bonds;

(h)    NAHTEF Bond Fund I – 2005, L.P. ("<u>NAHTEF</u>") was the initial purchaser and is the current sole beneficial owner of the Series C Bonds; and

(i)    NAHTEF Acquisitions, LLC was the initial purchaser and is the current sole beneficial owner of the Series D Bonds.

WHEREAS, the proceeds of the Bonds were loaned (the "<u>Loan</u>") to AHF by the Issuer pursuant to that certain Loan Agreement, dated as of November 1, 2005 (the "<u>Loan Agreement</u>"), which Loan is evidenced by a Senior Promissory Note (the "<u>Senior Note</u>") executed by AHF in the amount of the Series A Bonds and certain subordinate promissory notes (collectively, the "<u>Junior Notes</u>") executed  by AHF in the amounts of each of the series of the Subordinate Bonds.

WHEREAS, in connection with the Bonds, AHF entered into the following additional agreements:

(j)    That certain ISDA Master Agreement, dated as of November 10, 2005, between MLCS and AHF, together with the (a) Multicurrency Cross-Border Schedule and Credit Support Annex thereto, each dated as of November 10, 2005 and (b) Confirmation Letter entered into connection therewith for a transaction under the terms of which MLCS and AHF agreed to make certain payments to one another relating to the Series A Bonds (the foregoing, collectively, as amended, restated and/or supplemented from time to time, the "<u>Merrill TRS</u>"); and

(k)    That certain ISDA Master Agreement, dated as of November 1, 2005, between LBSF and AHF, together with the (a) Multicurrency Cross-Border Schedule and Credit Support Annex thereto, each dated as of November 10, 2005 and (b) the Confirmation Letter entered into connection therewith for a transaction under the terms of which LBSF and AHF agreed to make certain payments to one another relating to the Series B Bonds (the foregoing, collectively, the "<u>Lehman TRS</u>" and, together with the Merrill TRS, the "<u>Swaps</u>") .

WHEREAS, to secure the various obligations of AHF under the Bonds and the Swaps, AHF granted the following mortgages (listed in order of lien priority) on each of the five multifamily housing projects comprising the Projects:

(l)    Five separate First Mortgage, Security Agreement and Fixture Filings, each dated as of November 1, 2005 (collectively, the "First Mortgages"), and each executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series A Bonds as more particularly described on Exhibit A attached hereto and made a part hereof;

(m)    Five separate Second Mortgage, Security Agreement and Fixture Filings, each dated as of November 1, 2005 (collectively, the "Second Mortgages" and, together with the First Mortgages, the "Merrill Mortgages"), and each executed by AHF in favor of MLCS to secure the obligations of AHF under the Merrill TRS as more particularly described on Exhibit A attached hereto and made a part hereof;

(n)    Five separate Third Mortgage, Security Agreement and Fixture Filings, each dated as of November 1, 2005 (collectively, the "Third Mortgages"), each executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series B Bonds as more particularly described on Exhibit A attached hereto and made a part hereof;

(o)    Five separate Fourth Mortgage, Security Agreement and Fixture Filings, each dated as of the November 1, 2005 (collectively, the "Fourth Mortgages" and, together with the Third Mortgages, the "Lehman Mortgages"), and each executed by AHF in favor of LBSF and LBHI to secure the obligations of AHF under the Lehman TRS; and

(p)    Five separate Fifth Mortgage, Security Agreement and Fixture Filings, each dated as of November 1, 2005, and each executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series C Bonds and the Series D Bonds as more particularly described on Exhibit A attached hereto and made a part hereof.

WHEREAS, on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Lehman Parties are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

WHEREAS, by notice dated October 8, 2008 from MLCS to AHF (the "AHF Default Notice"), MLCS notified AHF that an Event of Default had occurred under the Merrill TRS (the "Merrill TRS Default") as a result of the failure by AHF to post collateral with MLCS required pursuant to the Merrill TRS and by notice dated October 8, 2008 (the "Default Period Notice"), MLCS notified the Lehman Parties, LBI and NAHTEF of the Merrill TRS Default such that a "Default Period" respecting AHF became in effect under that certain Subordination Agreement, dated as of November 10, 2005 (the "Subordination Agreement"), by and among LBI, LBSF, MLPFS and NAHTEF governing certain rights of the parties thereto with respect to the Bonds and Projects.

WHEREAS, the parties previously agreed by stipulation, *inter alia*, to relief from Section 362 of the Bankruptcy Code respecting the sale of the Brampton Project and such stipulation was

approved by order of the Bankruptcy Court entered on April 26, 2011 (the "Brampton Stipulation");

WHEREAS, the Merrill Entities and the Lehman Parties are in dispute as to certain of their respective rights under the Subordination Agreement and have agreed to resolve such dispute by entering into this Agreement in order to reflect their agreement as to the use, application, distribution and/or payment of Applicable Proceeds (as defined below) generated from a Third Party Sale (as defined below) or determined upon the occurrence of a Merrill Acquisition (as defined below), in each case with respect to any of the Projects.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.      **Incorporation of Recitals.**  The Parties hereby incorporate the foregoing recitals by reference and make them a part of this Agreement and warrant and represent that all such recitals are true and correct.

2.      **Capitalized Terms; Definitions.**

(a)      All initially capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Indenture.

(b)      The term "final non-appealable order" as used herein shall mean an order of the Bankruptcy Court that has not been reversed, modified, amended or stayed, and the time for appeal or to seek review or rehearing thereof, has expired and as to which no appeal, review or rehearing is pending.

(c)      The term "Applicable Proceeds" as used herein shall mean, collectively, Applicable Sales Proceeds and Net Economic Proceeds.

(d)      The term "Applicable Sales Proceeds" as used herein shall mean, as applicable with respect to any Third Party Sale, that portion of the sales proceeds received by AHF or the Trustee, as applicable, which, pursuant to the terms of the Indenture, is payable or otherwise distributable to the Series A Bondholder and/or the holder of the applicable Second Mortgage and all other amounts which are paid to or received by the Series A Bondholder or MLCS or by the Trustee and otherwise payable to the Series A Bondholder or MLCS, in each case, upon consummation of such sale.

(e)      The term "Economic Value" as used herein shall mean, as applicable with respect to any Merrill Acquisition of a Project, the fair market value of such Project on an as-is basis as of a date not more than sixty (60) days prior to and not later than the date of such Merrill Acquisition (the "Valuation Period") as determined by an appraisal obtained by Merrill, at its own expense, in accordance with its internal procedures but which appraisal shall be prepared by a Qualified Appraiser in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Practice of the Appraisal

Institute (including the Uniform Standards of Professional Appraisal Practice) (the "Merrill Valuation") and which Merrill Valuation is provided to the Series B Bondholder within fifteen (15) days following Merrill's receipt of the Merrill Valuation; provided, however, if the Series B Bondholder disputes the Merrill Valuation, the Series B Bondholder may engage, at its own expense, a Qualified Appraiser to provide a separate appraisal of the fair market value of such Project on an as-is basis as of any date during the Valuation Period on or after the date of the Merrill Valuation (the "Lehman Valuation"), which appraisal shall be in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Practice of the Appraisal Institute (including the Uniform Standards of Professional Appraisal Practice), in which case (i) if the Parties are able to agree upon a valuation of the Project, such agreed upon amount shall be the Economic Value of such Project, or (ii) if the Parties are unable to agree upon a valuation of the Project, the Series B Bondholder may dispute, in any Objection asserted by the Series B Bondholder pursuant to Section 4 hereof, the Economic Value reflected in the applicable Transfer Notice (in addition to any other disputes that the Series B Bondholder may have) in which case the Parties agree that the mediator shall determine the Economic Value for purposes of calculating any Deficiency; provided that, if, prior to any determination of Economic Value by the mediator pursuant to Section 4 hereof, there is a Third Party Sale of the Project, the parties agree that, notwithstanding anything to the contrary contained in this Agreement, the Economic Value shall be deemed to be equal to the gross sales price being paid by the purchaser in connection with such Third Party Sale.

(f)     The term "Merrill Acquisition" as used herein with respect to any Project, shall mean the transfer and conveyance of such Project by AHF to Merrill or its affiliate, pursuant to or in connection with a deed-in-lieu of foreclosure transaction, a foreclosure sale under any Merrill Mortgage, a sale under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code or comparable state law, a plan of reorganization of AHF, or by any other means whatsoever.

(g)     The term "Merrill Third Party Sale" as used herein with respect to any Project acquired by Merrill or its affiliate pursuant to a Merrill Acquisition, shall mean any of the following, whichever may first occur with respect to such Project:  (a) the transfer and conveyance of such Project by Merrill or its affiliate to a third party that is unaffiliated with Merrill or its affiliates and pursuant to an arms-length transaction, or (b) the transfer and conveyance of such Project to a third party that is unaffiliated with Merrill or its affiliates, pursuant to or in connection with a foreclosure sale under any then-existing mortgage encumbering such Project, a sale under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code or comparable state law, a plan of reorganization of the owner of such Project, or by any other means whatsoever.

(h)     The term "Net Economic Proceeds" as used herein shall mean, as applicable to any Merrill Acquisition of a Project, (a) ninety-seven percent (97%) of the Economic Value of such Project, less (b) the aggregate amount of any protective advances made by Merrill to AHF (either directly or through the Trustee) in an amount up to $1,000,000 in respect of protective advances made by Merrill to date and, following (i) the reimbursement to Merrill of such $1,000,000 in protective advances through Net

Sales Proceeds from any Third Party Sale of one or more of the Projects and/or (ii) the deduction of such $1,000,000 in protective advances for purposes of deriving Net Economic Proceeds in connection with a Merrill Acquisition of one or more of the Projects, any additional protective advances made by Merrill for the benefit of such Project, and <u>less</u> (c) any other out of pocket expenses actually incurred by Merrill with respect to such Project, if any, for which Merrill is entitled to reimbursement or repayment under the terms of the Loan Documents (as defined in the Indenture), the Swap Documents (as defined in the Merrill TRS) and the Subordination Agreement (exclusive of any such protective advances or out of pocket expenses that have been reimbursed to Merrill or previously deducted in deriving the Net Sales Proceeds or Net Economic Proceeds of any other Project).

(i)      The term "<u>Net Sales Proceeds</u>" as used herein shall mean, as applicable to any Third Party Sale of a Project, (a) the Applicable Sales Proceeds generated from such Third Party Sale, <u>less</u> (b) the aggregate amount of any protective advances made by Merrill to AHF (either directly or through the Trustee) in an amount up to $1,000,000 in respect of protective advances made by Merrill to date and, following (i) reimbursement to Merrill of such $1,000,000 in protective advances through Net Sales Proceeds from any Third Party Sale of one or more of the Projects and/or (ii) the deduction of such $1,000,000 in protective advances for purposes of deriving Net Economic Proceeds in connection with a Merrill Acquisition of one or more of the Projects, any additional protective advances made by Merrill for the benefit of such Project, and <u>less</u> (c) any other out of pocket expenses actually incurred by Merrill with respect to such Project, if any, for which Merrill is entitled to reimbursement or repayment under the terms of the Loan Documents (as defined in the Indenture), the Swap Documents (as defined in the Merrill TRS) and the Subordination Agreement (exclusive of any such protective advances or out of pocket expenses that have been reimbursed to Merrill or previously deducted in deriving the Net Sales Proceeds or Net Economic Proceeds of any other Project).

(j)      The term "<u>Prime Rate</u>" shall mean the prime rate published from time to time in the Money Rates section of *The Wall Street Journal*

(k)      The term "<u>Qualified Appraiser</u>" shall mean an independent third party appraisal firm that is licensed in the State of Florida and that is a member of the American Institute of Real Estate Appraisers and which firm is not affiliated with the Party retaining such firm.

(l)      The term "<u>Series A Bondholder</u>" shall mean MLPMI and/or any other holder of the Series A Bonds.

(m)      The term "<u>Series B Bondholder</u>" shall mean LBHI and/or any other holder of the Series B Bonds.

(n)      The term "<u>Third Party Sale</u>" as used herein with respect to any Project, shall mean any of the following, whichever may first occur with respect to such Project: (a) the transfer and conveyance of such Project by AHF to a third party that is unaffiliated with AFH or Merrill or its affiliates and pursuant to an arms-length transaction, or (b) the

transfer and conveyance of such Project to a third party that is unaffiliated with AFH or Merrill or its affiliates, pursuant to or in connection with a foreclosure sale under any Merrill Mortgage, a sale under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code or comparable state law, a plan of reorganization of AHF, or by any other means whatsoever.

3.     **Conditions to Effectiveness of Agreement**.  The Parties hereby agree that this Agreement shall become effective upon the issuance of the Bankruptcy Court Final Order (as defined below) by the Bankruptcy Court approving this Agreement.

4.     **Notification of Proposed Transfer.**  Merrill hereby agrees to provide to each Lehman Party written notice (a "<u>Transfer Notice</u>") of the proposed sale or transfer of a Project pursuant to a Third Party Sale or a Merrill Acquisition not less than fifteen (15) Business Days prior to the proposed closing date of such sale or transfer, as applicable.  Each Transfer Notice shall include a calculation of Net Sales Proceeds or Net Economic Proceeds, as applicable (including the amount of Applicable Sales Proceeds or Economic Value used in such calculation and the calculation of all protective advances and other amounts to be deducted from Applicable Sales Proceeds or Economic Value, as applicable, in determining Net Sales Proceeds or Net Economic Proceeds, as applicable), and shall be accompanied by evidence reasonably satisfactory to the Series B Bondholder substantiating the Applicable Sales Proceeds or Economic Value, as applicable, and any such protective advances and/or other amounts deducted therefrom to derive Net Sales Proceeds or Net Economic Value.

The Series B Bondholder may deliver a written objection (an "<u>Objection</u>") to a Transfer Notice on or before the tenth (10th) Business Day following the Series B Bondholders' receipt of a Transfer Notice and the accompanying documents described above.  If the parties are unable to resolve the issues raised in the Objection prior to the closing of the proposed sale or transfer, the Parties hereby agree that such dispute regarding the calculation of the amount of Net Sales Proceeds or Net Economic Proceeds, as applicable, and, based thereon, the resultant amount due to the Series B Bondholder under the terms of this Agreement, will be submitted to binding mediation at and be administered by the Judicial Arbitration and Mediation Service before a mediator mutually acceptable to the Parties in the City of New York, New York.  The Parties will request a written opinion from the mediator which written opinion will be fully binding upon the Parties and which opinion shall not be subject to appeal by any Party.  The judgment on the award rendered by the mediator may be entered in any court having jurisdiction thereof.

In the event the mediator determines that the amount due the Series B Bondholder is in excess of the amount set forth in the Transfer Notice (such excess amount being referred to as a "<u>Deficiency</u>"), Merrill shall pay (a) to the Series B Bondholder, in addition to the amount set forth in the Transfer Notice, an amount equal to (i) the amount of such Deficiency, and (ii) the amount of all expenses incurred by the Series B Bondholder in the mediation proceeding (e.g., reasonable attorneys' fees and out of pocket expenses) up to an amount equal to the greater of $10,000 or the amount of such Deficiency, and (b) to the mediator, all mediation fees and expenses of the mediator.  Such payment to the Series B Bondholder shall be made within five (5) Business Days following the determination of the Deficiency (provided that, as to the payment of any expenses incurred by the Series B Bondholder, evidence of such expenses has been provided to Merrill).  Each Merrill Entity shall be jointly and severally liable for all such

payments to the Series B Bondholder. The Series B Bondholder may apply any payments which may be due to the Series B Bondholder by Merrill under this paragraph against any payments which may be due to Merrill under this Agreement.

In the event the mediator determines that there is no Deficiency, the Series B Bondholder shall pay to Merrill all expenses incurred by Merrill in the mediation proceeding (e.g., reasonable attorneys' fees and out of pocket expenses) up to an amount equal to $10,000, and shall pay to the mediator, all mediation fees and expenses of the mediator. Such payment to Merrill shall be made within five (5) Business Days following the determination by the mediator that there is no Deficiency (provided that evidence of such expenses has been provided to the Series B Bondholder). Merrill may apply any payments which may be due to Merrill by the Series B Bondholder under this paragraph against any payments which may be due to the Series B Bondholder under this Agreement.

In the event that a Deficiency is determined to exist and is paid to the Series B Bondholder in accordance with the terms of this Agreement, Merrill shall send written notice to the Trustee (with a copy to the Series B Bondholder) recalculating the Net Sales Proceeds or Net Economic Proceeds, as applicable, for purposes of any application thereof to amounts due under the Series B Bonds pursuant to the terms of the Indenture.

5.    **Distribution of Applicable Proceeds.**

(a)    Upon the occurrence of a Third Party Sale with respect to a Project, Merrill shall deliver, and shall direct the Trustee or AHF, as applicable, to deliver, all Applicable Sales Proceeds received by Merrill, AHF or the Trustee, as follows:

(i)    Unless previously reimbursed to Merrill pursuant to the terms of the Indenture or otherwise, a portion of such Applicable Sales Proceeds in the aggregate amount of any protective advances made by Merrill to AHF (either directly or through the Trustee) and any other out of pocket expenses actually incurred by Merrill with respect to such Project (exclusive of any such protective advances or out of pocket expenses that have been reimbursed to Merrill or previously deducted in deriving the Net Sales Proceeds or Net Economic Proceeds of any other Project), if any, for which Merrill is entitled to reimbursement or repayment under the terms of the Loan Documents (as defined in the Indenture), the Swap Documents (as defined in the Merrill TRS) and/or the Subordination Agreement shall be disbursed to Merrill.

(ii)    A portion of such Applicable Sales Proceeds in an aggregate amount equal to five percent (5%) of the aggregate amount of Net Sales Proceeds, shall be paid to the Series B Bondholder and applied by the Trustee to amounts due under the Series B Bonds and Merrill shall so direct the Trustee. Notwithstanding the foregoing, Merrill hereby agrees that if, for any reason, the Trustee refuses or fails to deliver such share of Net Sales Proceeds to the Series B Bondholder as provided in this Section 5(a)(ii), Merrill shall pay to the Series B Bondholder an amount equal to the amount of Net Sales Proceeds that Merrill

directed the Trustee (or was required to direct the Trustee pursuant to this Section 5) to deliver to the Series B Bondholder.

(iii)    All remaining Applicable Sales Proceeds shall be distributed to the Series A Bondholder until the Series A Bondholder is paid in full and to MLCS as party to the Merrill TRS until MLCS is paid in full and following such payments, shall be distributed by the Trustee in accordance with the terms of the Indenture but subject to the terms of the Subordination Agreement by and among Lehman Brothers Inc., Lehman Brothers Special Financing Inc. and NAHTEF Bond Fund I – 2005, L.P. dated as of November 10, 2005.

(b)    Upon the occurrence of a Merrill Acquisition with respect to a Project, Merrill shall pay to the Series B Bondholder an amount equal to five percent (5%) of the aggregate Net Economic Proceeds attributable to such Project, with such amount to be determined as of the date of such Merrill Acquisition and payment of such amount to be made on the earlier of (i) a Merrill Third Party Sale or (ii) the date that is one (1) year following the date of the Merrill Acquisition (the earlier of such dates being referred to as the "Payment Due Date"), with interest to accrue on any such unpaid amount from and after the Payment Due Date at a rate per annum equal to the sum of the Prime Rate (as the same may vary from time to time) plus five percent (5%).

6.    **Delivery of Releases by the Lehman Parties**.

(a)    In exchange for Merrill's agreement to the provisions of Section 4 and 5 hereof, each of the Lehman Parties hereby agrees, for itself and not with respect to any other Lehman Party, that, upon delivery of a Transfer Notice with respect to a Project (other than in connection with a Third Party Sale or Merrill Acquisition pursuant to which the liens of the Lehman Mortgages are to be extinguished solely by operation of law and for which any title company issuing a policy relating to the transfer of the Project does not require a separate release), such Lehman Party shall, within fifteen (15) Business Days' of receipt of such Transfer Notice, deliver or cause to be delivered to Merrill, any and all documents, instruments, conveyances or agreements reasonably requested by Merrill evidencing the release, cancellation, reconveyance or termination of any claim, right, title and interest that such Lehman Party may have, directly or indirectly, in such Project (the "Releases"), including, without limitation, any Lehman Mortgages and any Lehman Mortgage Documents (as defined in the Lehman Mortgages) then in effect and encumbering such Project.  The Releases shall be held in escrow pending consummation of the Third Party Sale, if applicable, and payment in full of all amounts owed to the Series B Bondholder following such Third Party Sale or following a Merrill Acquisition, as applicable, and shall be released immediately upon receipt by the Series B Bondholder of the amount set forth in the Transfer Notice in accordance with the provisions of Section 11 hereof.  For purposes of clarity, Releases delivered in connection with a Merrill Acquisition shall not be released from escrow until all amounts due to the Series B Bondholder under Section 4 hereof have been paid in full.

(b)    Upon failure by a Lehman Party to deliver, or cause to be delivered, a Release in accordance with Section 6(a) above, to the extent Merrill, acting in its sole and

absolute discretion, finds it necessary or desirable in connection with the sale of the applicable Project, Merrill shall have the right, following payment to the Series B Bondholder of the amount set forth in the Transfer Notice, to release, cancel, reconvey or terminate (a) the Lehman Mortgages encumbering such Project, together with any other Lehman Mortgage Documents encumbering such Project and (b) all other claim, right, title and interest such Lehman Party may have, directly or indirectly, in such Project.  In furtherance of the foregoing, each Lehman Party hereby appoints Merrill as such Lehman Party's attorney-in-fact, with full power in such Lehman Party's name and on such Lehman Party's behalf, to execute, deliver and record any Releases of the Lehman Mortgages and other Lehman Mortgage Documents encumbering such Project, along with such other documentation Merrill deems necessary or appropriate to release, cancel, reconvey or terminate all claim, right, title and interest such Lehman Party may have, directly or indirectly, in such Project, all in such form and substance as Merrill, acting in its sole and absolute discretion, deems necessary or appropriate.  The foregoing power of attorney is irrevocable and is coupled with an interest.

(c)    Merrill hereby agrees that neither the payment to the Series B Bondholder of the amount set forth in the Transfer Notice nor the release of the Lehman Mortgages or other Lehman Mortgage Documents shall prejudice or impair in any way the Series B Bondholder's right to dispute the amount set forth in the Transfer Notice as the required payment to the Series B Bondholder in connection with the applicable Third Party Sale or Merrill Acquisition in accordance with Section 4 hereof nor shall they prejudice or impair in any way the Series B Bondholder's entitlement to a Deficiency and other amounts which may be determined to be payable to the Series B Bondholder pursuant to Section 4 hereof.

7.    [**Intentionally Omitted.**]

8.    **Delivery of Releases by Merrill**.  Upon the repayment in full of (a) the Series A Bonds and all obligations secured by the First Mortgages or (b) any amounts payable to MLCS and all obligations secured by the Second Mortgages (the "<u>Merrill Swap Obligations</u>"), the applicable Merrill Entity shall release or cause to be released each of the First Mortgages or each of the Second Mortgages, as applicable, and all other security interests or collateral securing the Series A Bonds or the Merrill Swap Obligations, as applicable, in accordance with the Loan Documents (as defined in the Indenture) and the Swap Documents (as defined in the Merrill TRS).

9.    **Approval by Bankruptcy Court.**  Upon execution and delivery of this Agreement by all Parties, the Lehman Parties will file a motion (or separate motions) seeking approval of this Agreement by the Bankruptcy Court and provide Merrill with notice of such filing(s). If the Bankruptcy Court denies approval of such motion(s) or otherwise fails to approve this Agreement on or prior to January 11, 2011, this Agreement shall terminate and be of no further force or effect and the Parties shall be restored to their respective legal positions as if this Agreement had never been executed and delivered.  Upon the issuance of a final non-appealable order by the Bankruptcy Court approving this Agreement pursuant to the motion(s) filed by the Lehman Parties ("<u>Bankruptcy Court Final Order</u>"), this Agreement shall become effective in accordance with its terms (the date on which this Agreement becomes effective being referred to

as the "Effective Date"). The Parties hereby acknowledge that the sale of the Brampton Project may occur prior to the Effective Date of this Agreement on the basis of the Brampton Stipulation.

10. **Interference**. Each Lehman Party acknowledges and agrees that it will not, directly or indirectly, contest, oppose or otherwise interfere in any way with (or cause any other person, firm or entity to do, or acquiesce to) the foreclosure of any Project, or deed-in-lieu thereof (including, without limitation, any Merrill Acquisition), or the approval of any Third Party Sale by Merrill provided that Merrill has complied with its payment obligations hereunder in all respects.

11. **Payments to Series B Bondholder**. Merrill shall make, and shall instruct the Trustee to make, all payments to be made to the Series B Bondholder under this Agreement by wire transfer of immediately available funds to the account and in accordance with the wire transfer instructions set forth on Exhibit B attached hereto and made a part hereof; provided, that the Series B Bondholder may, from time to time, amend such instructions by written notice to Merrill.

12. **Lehman Debtors' Representations and Warranties.** The Lehman Debtors hereby represent and warrant to Merrill that the following statements are true and correct as of the Execution Date and will be true and correct as of the Effective Date:

(a) Authority. Subject to the issuance of a Bankruptcy Court Final Order, the Lehman Debtors have all the requisite power and authority to execute and deliver this Agreement and to perform all of their respective obligations under this Agreement.

(b) Due Authorization. Subject to the issuance of a Bankruptcy Court Final Order, the execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of each of the Lehman Debtors and do not and will not require any consent or approval of any party, court (other than the Bankruptcy Court) or governmental authority that has not been obtained, except as otherwise set forth herein.

(c) Enforceability. When duly executed and delivered and upon issuance of a Bankruptcy Court Final Order, all of the Lehman Debtors' obligations hereunder will be the legal, valid and binding obligations of the respective Lehman Debtor, enforceable in accordance with the terms of this Agreement.

(d) Performance. The performance by the Lehman Debtors of their respective duties and obligations under this Agreement will not conflict with, result in a breach of or default under, or be adversely affected by, any agreements, instruments, decrees, judgments, injunctions, orders, writs, laws, rules or regulations, or any determination or award of any arbitrator, to which any of the Lehman Debtors is a party or by which any of the Lehman Debtors or their respective assets are bound.

13. **Merrill Representations and Warranties.** Each of the Merrill Entities hereby represents and warrants to Lehman that the following statements are true and correct as of the Execution Date and will be true and correct as of the Effective Date:

(a)    <u>Authority</u>.  The Merrill Entities have all the requisite power and authority to execute and deliver this Agreement and to perform all of their respective obligations under this Agreement.

(b)    <u>Due Authorization</u>.  The execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of each of the Merrill Entities and do not and will not require any consent or approval of any party, court or governmental authority that has not been obtained.

(c)    <u>Enforceability</u>.  When duly executed and delivered, all of the Merrill Entities' obligations hereunder will be the legal, valid and binding obligations of the respective Merrill Entity, enforceable in accordance with the terms of this Agreement.

(d)    <u>Performance</u>.  The performance by the Merrill Entities of their respective duties and obligations under this Agreement will not conflict with, result in a breach of or default under, or be adversely affected by, any agreements, instruments, decrees, judgments, injunctions, orders, writs, laws, rules or regulations, or any determination or award of any arbitrator, to which any of the Merrill Entities is a party or by which any of the Merrill Entities or their respective assets are bound.

14.    **Authority.**  Each Party represents and warrants that it has had full opportunity to consult its own attorney in connection with the review of this Agreement, that it understands the meaning and effect of this Agreement, that it has carefully read and understands the scope and effect of each provision contained in this Agreement, and that it is not relying upon any representations made by the other Parties or the other Parties' attorneys or other representatives except for such representations and warranties expressly provided in this Agreement.  Each Party further represents and warrants to the other Parties that the person executing this Agreement on its behalf has the authority to do so, that it specifically authorized the execution of this Agreement, and that it has the sole right and exclusive authority to execute this Agreement in its stated capacity hereunder. LBHI further represents and warrants to Merrill that it has full beneficial ownership (with legal title currently being held by a nominee of the Depository Trust Company) of the Series B Bonds and no other person, firm or entity has any entitlement to any of the Applicable Proceeds to be paid to the Series B Bondholder under Section 5 of this Agreement or under the Lehman Mortgages.  Merrill further represents and warrants to the  Lehman Parties that Merrill has the power and authority, pursuant to the Indenture and the Subordination Agreement, to direct the Trustee to deliver the Applicable Sales Proceeds as set forth under Section 5 hereof.  Attached hereto as <u>Exhibit C</u> is an acknowledgment of the Trustee confirming that the Trustee will comply with any written direction of MLPMI, as the Series A Bondholder, with respect to the disbursement and application of the Applicable Sales Proceeds. Merrill further represents and warrants that no consent of any holder of any Bonds, other than the Series A Bondholder, under the Indenture is required in connection with the execution and delivery, effectiveness or performance of this Agreement by any Party and that neither this Agreement nor anything contained herein will adversely affect the tax-exempt status of the Bonds.  Prior to the execution and delivery of the Agreement, Merrill shall cause Bond Counsel (which may be Kutak Rock LLP) to deliver an opinion to the effect that neither this Agreement nor any of the agreements and transactions reflected herein adversely affect the exclusion of interest on the Bonds from gross income for federal income tax purposes.

15.     **[Intentionally Omitted]**.

16.     **Events of Default**.  A breach by any Party of its obligations hereunder or of any representations or warranties made by such Party hereunder and failure of such Party to cure such breach upon five (5) days' written notice from any other Party, shall entitle the other Parties to pursue any and all rights and remedies available at law or in equity including, without limitation, the right to seek specific performance or injunctive relief, without the necessity of posting any bond or other collateral that may be required under applicable law.

17.     **Further Assurances.**  The Parties, without further consideration, agree to execute and deliver such other documents and take such other action as may be reasonably necessary to effectuate the terms and provisions of this Agreement.

18.     **Severability.**  If any portion of any term or provision of this Agreement shall, to any extent, be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby.

19.     **Interpretation.**  Should any of the provisions or terms of this Agreement require judicial interpretation, the court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one Party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared it, it being agreed that all Parties and their counsel have participated in the preparation and review of this Agreement.

20.     **Survival of Representations and Warranties.**   All representations and warranties made by the Parties in this Agreement or any other document furnished in connection with this Agreement shall survive the execution and delivery of this Agreement and the other documents, and nothing shall affect the right of the other Parties to rely upon such representations and warranties or their accuracy.

21.     **Binding Effect.**  This Agreement shall inure to the benefit of and be binding upon the Parties and their successors and permitted assigns.  MLPMI, as holder of the Series A Bonds, agrees and covenants not to transfer or assign the Series A Bonds or any interest therein other than to a transferee or assignee that assumes all of MLPMI's obligations hereunder and agrees to be bound by the terms of this Agreement as the holder of the Series A Bonds.  LBHI hereby agrees and covenants not to transfer or assign the Series B Bonds or any interest therein other than to a transferee or assignee that assumes all of the Series B Bondholder's obligations hereunder and agrees to be bound by the terms of this Agreement as the holder of the Series B Bonds.

22.     **Captions.**  The captions and headings of this Agreement are for convenience of reference only.

23.     **Entire Agreement.**  This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and may only be amended by a written instrument executed by all Parties.

24.     **Counterparts.**  This Agreement may be executed in any number of duplicate originals or counterparts, each of which deemed to be an original and all of which taken together

shall constitute a single agreement. The Parties further agree that a signature transmitted electronically or by facsimile may be treated and given the same legal effect as the original.

25. **Consent to Jurisdiction; Governing Law.** This Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement or any matters of construction, validity and performance relating to this Agreement and the obligations arising hereunder), shall be governed by, and construed in accordance with, the internal laws of the State of New York without reference to choice of law doctrine. Each of the Parties irrevocably consents to service of process in the manner provided for notices in Section 29 hereof. Nothing in this Agreement will affect the right, or requirement, of the Parties to serve process in any other manner permitted or required by law. Subject to the Parties' agreement to resolve certain disputes through binding mediation as provided in Section 4 hereof, each of the Parties agrees that (i) jurisdiction over any disputes arising out of or related to this Agreement shall lie with any court of the State of New York and the United States District Court located in the Borough of Manhattan in New York City and (ii) venue shall be in any court of the State of New York and the United States District Court located in the Borough of Manhattan in New York City; provided, however, that the Parties expressly agree that the Bankruptcy Court shall have jurisdiction over any disputes regarding payments that may be due and owing to the Lehman Parties under this Agreement (subject, however to the Parties' agreement to resolve certain disputes through binding mediation as provided in Section 4 hereof); provided, further, that nothing contained herein shall in any way prejudice the Lehman Parties' rights to seek to remove any other dispute arising out of or related to this Agreement from any court of the State of New York or any United States District Court to the Bankruptcy Court. Nothing in this Section 25 shall be construed in any manner so as to permit jurisdiction of the Bankruptcy Court over any disputes arising under Section 6 hereof, which disputes shall be subject to the exclusive jurisdiction of any court in the State of New York or the United States District Court in the Borough of Manhattan in New York City. Each of the Parties hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effective do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other documents executed and delivered in connection herewith to the extent in accordance with the provisions above; and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court, which submission shall be exclusive unless none of such courts has lawful jurisdiction over such action or proceeding.

26. **Attorneys' Fees.** In the event any action be instituted by a Party to enforce this Agreement, the prevailing party in such action (as determined by the court, agency or other authority before which such suit or proceeding is commenced), shall be entitled to such reasonable attorneys' fees, costs and expenses as may be fixed by the decisionmaker. The foregoing includes, but is not limited to, reasonable attorneys' fees relating to the enforcement of this Agreement and/or in any post-judgment proceedings to collect or enforce the judgment with respect to this Agreement.

27.     **Time Is of the Essence.**    Time is of the essence with respect to all matters required of the Parties under this Agreement.

28.     **Ratification.**    The Subordination Agreement shall continue in full force and effect, and is hereby ratified, verified and approved in all respects except to the extent any provisions thereof conflict with the express provisions of this Agreement in which case this Agreement shall govern and control.

29.     **Notices.**    All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to any Party to be notified, (b) when sent by electronic mail or facsimile confirmed by the recipient, (c) on the date of a registered or certified mail receipt prepared by the U.S. Postal Service, or (d) the date of a nationally recognized overnight courier's written verification of receipt. All communications shall be sent to the following, unless a written notice of changed recipient or address is exchanged between the Parties:

To LBHI at:

Lehman Brothers Holdings, Inc.
1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attn:  Joelle Halperin, Esq. and Daniel Glanz
Facsimile: (646) 834-0874
Email:  joelle.halperin@lamcollc.com
           daniel.glanz@lamcollc.com


           and

Alvarez & Marsal
1271 Avenue of the Americas, 35th Floor
New York, New York 10020
Attn:  Jason Haggins and Ron Dooley
Facsimile: (646) 285-9337
Email: jhaggins@alvarezandmarsal.com
           rdooley@alvarezandmarsal.com


With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, 12th Floor
Miami, Florida  33131
Attn:  Nellie P. Camerik, Esq.
Facsimile (305) 374-7159
Email:  nellie.camerik@weil.com

To LBSF at:

Lehman Brothers Structured Financing
c/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 40th Floor
New York, New York 10020
Attn:  Derivatives Legal
Facsimile:  (646) 285-9701

With a copy (which shall not constitute notice) to:

Alvarez & Marsal
1271 Avenue of the Americas, 35th Floor
New York, New York 10020
Attn:  Jason Haggins and Ron Dooley
Facsimile: (646) 285-9337
Email: jhaggins@alvarezandmarsal.com
        rdooley@alvarezandmarsal.com


        and

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, 12th Floor
Miami, Florida  33131
Attn:  Nellie P. Camerik, Esq.
Facsimile (305) 374-7159
Email: nellie.camerik@weil.com

To Merrill Entities at:

Merrill Lynch Capital Services, Inc.
Merrill Lynch Portfolio Management, Inc.
c/o Bank of America Merrill Lynch
Merrill Lynch, Pierce, Fenner & Smith Incorporated
One Bryant Park, NY1-100-12-3
New York New York  10036
Attn:  Daniel R. Nussbaum
Facsimile:  (646) 855-0634
Email: dan.nussbaum@baml.com

With a copy (which shall not constitute notice) to:

Kutak Rock LLP
Suite 2100
Peachtree Center South Tower
225 Peachtree Street, N.E.

Atlanta, Georgia  30303
Attn:  David A. Nix, Esq.
Facsimile:  (404) 222-4654
Email: david.nix@kutakrock.com

30.    **Waiver of Jury Trial.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HEREBY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY CLAIM, ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY, OR ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT**.

[Signatures appear on following page]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the Execution Date.

**MERRILL LYNCH CAPITAL SERVICES, INC**.


By: _____
Name:  Daniel Nussbaum
Title:  Authorized Signatory


**MERRILL LYNCH PORTFOLIO MANAGEMENT, INC**.


By: _____
Name:  Daniel Nussbaum
Title:  Authorized Signatory


[Signatures continued on next pages]

[Signature page to Agreement Regarding Applicable Proceeds]

**LEHMAN BROTHERS HOLDINGS INC.**, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: _____

Title: _____

[Signatures continued on next page]

[Signature page to Agreement Regarding Applicable Proceeds]

**LEHMAN BROTHERS SPECIAL FINANCING INC.**, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: _____

Title: _____

[Signatures continued on next page]

<u>EXHIBIT A</u>

<u>Description of Mortgages</u>

1.      Senior Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 28, 2005 in Official Records Book 40964, page 841, Broward County, Florida.  (Brampton Court)

2.      Senior Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14761, page 2583, Pinellas County, Florida.  (Brittany Bay)

3.      Senior Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 108, Pinellas County, Florida.  (Mariner's Pointe)

4.      Senior Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 21, 2005 in Official Records Book 6004, page 1674, Seminole County, Florida.  (Village Lakes)

5.      Senior Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 22, 2005 in Official Records Book 15792, page 240, Hillsborough County, Florida.  (Waterman's Crossing)

6.      Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Merrill Lynch Capital Services, Inc., dated as of November 1, 2005, recorded November 28, 2005 in Official Records Book 40964, page 891, Broward County, Florida.  (Brampton Court)

7.      Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Merrill Lynch Capital Services, Inc., dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14761, page 2634, Pinellas County, Florida.  (Brittany Bay)

8.      Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Merrill Lynch Capital Services, Inc., dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 158, Pinellas County, Florida. (Mariner's Pointe)

9.      Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Merrill Lynch Capital Services, Inc., dated as of November 1, 2005, recorded

November 21, 2005 in Official Records Book 6004, page 1724, Seminole County, Florida.  (Village Lakes)

10.   Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Merrill Lynch Capital Services, Inc., dated as of November 1, 2005, recorded November 22, 2005 in Official Records Book 15792, page 290, Hillsborough County, Florida.  (Waterman's Crossing)

11.   Third Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 28, 2005 in Official Records Book 40964, page 943, Broward County, Florida.  (Brampton Court)

12.   Third Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14761, page 2686, Pinellas County, Florida.  (Brittany Bay)

13.   Third Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 210, Pinellas County, Florida.  (Mariner's Pointe)

14.   Third Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 21, 2005 in Official Records Book 6004, page 1776, Seminole County, Florida.  (Village Lakes)

15.   Third Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 22, 2005 in Official Records Book 15792, page 342, Hillsborough County, Florida.  (Waterman's Crossing)

16.   Fourth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., dated as of November 1, 2005, recorded November 28, 2005 in Official Records Book 40964, page 992, Broward County, Florida.  (Brampton Court)

17.   Fourth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 10, Pinellas County, Florida.  (Brittany Bay)

18.   Fourth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 260, Pinellas County, Florida.  (Mariner's Pointe)

19.  Fourth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., dated as of November 1, 2005, recorded November 21, 2005 in Official Records Book 6004, page 1825, Seminole County, Florida.  (Village Lakes)

20.  Fourth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., dated as of November 1, 2005, recorded November 22, 2005 in Official Records Book 15792, page 391, Hillsborough County, Florida.  (Waterman's Crossing)

21.  Fifth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 28, 2005 in Official Records Book 40964, page 1041, Broward County, Florida.  (Brampton Court)

22.  Fifth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 59, Pinellas County, Florida.  (Brittany Bay)

23.  Fifth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 23, 2005 in Official Records Book 14762, page 310, Pinellas County, Florida.  (Mariner's Pointe)

24.  Fifth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 21, 2005 in Official Records Book 6004, page 1874, Seminole County, Florida.  (Village Lakes)

25.  Fifth Mortgage, Security Agreement and Fixture Filing by and between AHF-Bay Fund, LLC and U.S. Bank National Association, as Trustee, dated as of November 1, 2005, recorded November 22, 2005 in Official Records Book 15792, page 440, Hillsborough County, Florida.  (Waterman's Crossing)

<u>EXHIBIT B</u>

<u>Wire Transfer Instructions</u>

Bank:          Citibank N.A., New York
ABA:           021000089
Account:       30804181
Reference:      Merrill Lynch Housing Deal

<u>EXHIBIT C</u>

<u>Acknowledgement of Trustee</u>

**<u>Exhibit B</u>**
**(The Dooley Declaration)**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                        :
**In re**                                               :    **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,            :    **08-13555 (JMP)**
                                                        :
                        **Debtors.**                    :    **(Jointly Administered)**
                                                        :
                                                        :
-----------------------------------------------------------------x

**DECLARATION OF RONALD DOOLEY**
**IN SUPPORT OF MOTION OF LEHMAN BROTHERS**
**HOLDINGS INC. AND LEHMAN BROTHERS SPECIAL FINANCING INC.**
**PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND**
**RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR APPROVAL OF SETTLEMENT AGREEMENT WITH MERRILL LYNCH**
**PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC.**

I, Ronald Dooley, do hereby declare that the following is true to the best of my

knowledge, information, and belief:

1.      I submit this declaration in support of the *Motion of Lehman Brothers*

*Holdings Inc. and Lehman Brothers Special Financing Inc. Pursuant to Section 105(a) of the Bankruptcy*

*Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of Settlement Agreement*

*with Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc.* (the "Motion")

filed on December 21, 2011.

2.      I am a Director at Alvarez and Marsal North America, LLC ("A&M") and,

since May, 2009, I have been working at LBHI.  I am currently serving as a Vice President in the

Residential & Structured Products Group, and in that capacity, I supervise the other employees in

the group and oversee the assets managed by the group.  From 1997 until I joined A&M, I

worked at Scotia Capital.   I have been actively involved in finalizing the terms of the Settlement

Agreement[1] described in this Declaration and in the Motion.  If called to testify at the January

11, 2012 hearing on the Motion, the following would be my direct testimony.

3.    I first became aware of the dispute over the scope of Merrill's rights under

the Subordination Agreement in the spring of 2011.  In consultation with the Debtors' legal

counsel, I reviewed the relevant transaction documents and considered the arguments raised by

Merrill in the Specific Performance Motion.  I was also involved in the discussions that preceded

the filing of the Debtors' objection to the Specific Performance Motion.   Accordingly, I am

familiar with the respective positions of Merrill and the Debtors regarding the issue of whether

the Subordination Agreement requires the Subordinate Lenders to release the Subordinate

Mortgages.

4.    Following the entry of the Specific Performance Order, I have been the

lead negotiator on behalf of the Debtors and have participated in numerous discussions with

Merrill in an effort to reach a consensual resolution of this dispute.  The Settlement Agreement is

the result of this process.

5.    Entry into the Settlement Agreement will benefit LBHI in the following

respects.  First, notwithstanding the fact that LBHI's recoveries under the Series B Bonds are

subordinated to Merrill's recoveries under the Series A Bonds and the Merrill TRS. Merrill has

agreed to pay a percentage of its recoveries from the disposition (including foreclosure) of the

each of the Projects to LBHI in satisfaction of a portion of the amounts due under the Series B

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms
in the Motion.

Bonds.  Second, the profit sharing mechanism contained in the Settlement Agreement is expected to incentivize Merrill to maximize recovery from of each of the Projects, making it more likely that there will be some residual value available to satisfy the remaining amounts due under the Series B Bonds after the Series A Bonds or the Merrill TRS, as applicable, have been paid in full.  Third, the Settlement Agreement will enable LBHI to avoid the expense attendant to litigating the Subordination Agreement dispute.

6.      Although LBSF is not expected to receive a direct benefit from the transactions set forth in the Settlement Agreement, Merrill would not agree to the settlement without including LBSF as a settling party.  Additionally, although LBSF could elect to separately litigate the Subordination Agreement dispute with Merrill (and potentially reach some kind of a settlement with Merrill), given that it is extraordinarily unlikely that there will be any residual value remaining for distribution to LBSF after the Series A Bonds, the Merrill TRS obligations and the Series B Bonds have been paid in full, the expense of pursuing such a strategy simply is not justified by the potential benefit to LBSF's estate.  Thus, LBSF's estate is not being deprived of any valuable property interests.

7.      In light of these factors, I believe that the Debtors' entry into the Settlement Agreement is in the best interests of the respective estates and creditors of both LBHI and LBSF and should be approved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 21st day of December 2011.


/s/ Ronald Dooley
Ronald Dooley

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
                                    :

In re                              :     Chapter 11 Case No.
                                      :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :     **08-13555 (JMP)**
                                      :

               Debtors.           :     **(Jointly Administered)**
                                      :
---------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT WITH MERRILL LYNCH PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC.

Upon the motion, dated December 21, 2011 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of Settlement Agreement,[1] all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion

[ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) the attorneys for Merrill; and (vii) all parties who have requested notice in these chapter 11

cases, and it appearing that no other or further notice need be provided; and upon consideration

of the Declaration of Ronald Dooley in support of the Motion; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

respective estates and creditors, and all other parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted; and it is further

ORDERED that, pursuant section 105(a) of the Bankruptcy Code and Bankruptcy

Rule 9019, the Settlement Agreement, dated as of December __, 2011 and attached hereto as

Exhibit 1, is approved, and LBHI and LBSF are each duly authorized, but not directed, to (i)

consummate all of the transactions contemplated thereby and (ii) execute and deliver such

documents and instruments and to take such other actions as may be reasonably necessary to

consummate the transactions contemplated by the Settlement Agreement; and it is further;

ORDERED that LBHI and LBSF are authorized to amend, modify, or supplement

any of the terms of the Settlement Agreement, without the necessity of further Court proceedings

or approval and without the consent of any other party, except to the extent that such changes

have a material adverse effect on the respective estates of LBHI or LBSF; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), the terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: January __, 2012
    New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**
**(Executed Settlement Agreement)**