UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                  :     Chapter 11 Case No.
                                                       :
LEHMAN BROTHERS HOLDINGS INC., et al.,                 :     08-13555 (JMP)
                                                       :
                              Debtors.                 :     (Jointly Administered)
---------------------------------------------------------------x

### DECLARATION OF JACK MCCARTHY, SR. IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO MONETIZE EQUITY INTERESTS IN WILTON RE HOLDINGS LIMITED

Pursuant to 28 U.S.C. § 1746, I, Jack McCarthy Sr., declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Motion Pursuant To Sections 105 and 363 of The Bankruptcy Code For Authorization To Sell Equity Interests In Wilton Re Holdings Limited* (the "Motion").

3. I am a Managing Director with Alvarez & Marsal Financial Industry Advisory Services LLP ("A&M"). A&M, along with Alvarez & Marsal North America, LLC, have been providing restructuring and general operational and managerial services to the Debtors[1] in connection with their chapter 11 cases.

4. I have knowledge of the facts and representations set forth in the Motion regarding LBHI's sale of the LBHI Shares to Wilton Re. On behalf of LBHI, I led negotiations with Wilton Re that resulted in the SPA that is the subject of the Motion. I have reviewed the Motion, and as it relates to LBHI, it accurately reflects the facts regarding these negotiations and the terms of the SPA.

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

US_ACTIVE:\43883626\04\58399.0008

5. I first became involved with Wilton Re soon after the commencement of LBHI's chapter 11 case. Prior to the commencement of LBHI's chapter 11 case, in October 2006, LBHI had committed to acquire up to $300 million of Wilton Re's common stock at a per share price determined based on Wilton Re's book value per share, subject to certain adjustments, as set forth in the Amended and Restated Subscription Agreement, dated as of October 20, 2006 (the "Subscription Agreement"). Pursuant to this agreement, LBHI initially acquired an interest in Wilton Re in 2008 and invested $100 million at $52.50 per share, and an additional $78 million at $59.45 per share. Following the commencement of LBHI's chapter 11 case, I led LBHI in negotiating improved terms for the funding of the remaining commitment. Pursuant to Amendment No. 1 to the Subscription Agreement (the "Amendment"), the remaining commitment of approximately $122 million was effected at a per share price of $50, representing a 9% discount to, *i.e.*, 91% of, the then current adjusted book value per share. LBHI obtained approval from this Court to assume the Subscription Agreement, execute and deliver the Amendment, and fund the remaining $122 million. After investing a total of approximately $300 million, LBHI now owns 5,655,627 voting Class A common shares of Wilton Re (the "LBHI Shares"), or approximately 25% of the shares outstanding.

6. It is my understanding that Wilton Re has accumulated considerable excess capital, but that market conditions have limited its ability to identify suitable and attractive investment opportunities in which to invest this capital. Because of this, Wilton Re initiated discussions with LBHI in September 2011 regarding the repurchase by Wilton Re of the LBHI Shares for a purchase price of $69 per share (the "Per Share Amount"), *i.e.*, $390,238,263 in aggregate proceeds to LBHI (the "Purchase Consideration"). The Per Share Amount represents 104% of Wilton Re's adjusted book value per share as of September 30, 2011 and

implies 100% of Wilton Re's estimated adjusted book value per share as of December 31, 2011.

In addition, the Purchase Consideration represents a 1.30x multiple of invested capital.

      7.     LBHI has consulted with Lazard to evaluate Wilton Re's offer.  In my business judgment, a sale of the LBHI Shares to Wilton Re pursuant to the terms of the SPA is in the best interests of LBHI and its creditors for the following reasons:

- The sale of the LBHI Shares to Wilton Re for the Purchase Consideration will yield 1.30x LBHI's $300 million investment in Wilton Re.  The price offered by Wilton Re for the LBHI Shares is also above market.  As stated in the Declaration of David Descoteaux dated December 21, 2011 and filed contemporaneously herewith (the "Descoteaux Decl."), the price per share offered by Wilton Re for the LBHI Shares represents an offer that is (i) significantly higher than the trading multiples of the only publicly-traded U.S. life reinsurance company (RGA), and (ii) significantly above median and mean of the trading multiples of other selected publicly-traded U.S. life insurers.  *See* Descoteaux Decl. at ¶ 8.  In the context of this analysis, I believe that the Per Share Amount negotiated by LBHI for its highly illiquid, minority stake in Wilton Re is substantially above market.  In addition, in light of current market comparables, I do not believe that a higher or better offer could be obtained for LBHI's minority stake in Wilton Re.

- Wilton Re's other shareholders do not intend to monetize their investment in the near future through either a strategic sale of Wilton Re as a going concern to a third party, an initial public offering, or otherwise, and LBHI has no influence or governance rights related to initiating or forcing any such sale or initial public offering.  Any such transaction would therefore be subject to the timing and terms of the other large institutional investors.  In addition, a sale of Wilton Re or an initial public offering is unlikely to generate a higher return for LBHI because (i) the most likely strategic buyers for a company such as Wilton Re are public companies that are unlikely to pay an above-market price, and (ii) the public company comparables currently trade at a discount to the valuation represented by the Per Share Amount.

- Due to certain transfer restrictions, a sale of the LBHI Shares back to Wilton Re is the most efficient means for LBHI to maximize the value of this highly illiquid asset.  A sale of the LBHI Shares to any party other than Wilton Re will require the approval of Wilton Re's Board of Directors and will also trigger a right of first refusal for Wilton Re and any other shareholders of Wilton Re.  The requirement of Board approval and the right of first refusal, in addition to the lack of any material governance or consent rights (other than LBHI's right to appoint two of eleven current positions on Wilton Re's Board of Directors) are likely to act as significant barriers to any third-party who would already be competing with

an above-market offer from Wilton Re.  Furthermore, any sale to a third party would trigger "tag-along" rights for the other shareholders of Wilton Re which, if and to the extent exercised, may diminish the number of shares that such third party would be required to purchase from LBHI.  The SPA requires Wilton Re to acquire 100% of the LBHI Shares without regard to whether other parties exercise their "tag-along" rights.

- LBHI is preparing to make initial distributions to its creditors.  By seizing the opportunity to sell the LBHI Shares at a premium, LBHI will accelerate the realization of a return on an investment that might otherwise take several years to mature.

8. Although LBHI will consider any higher or better offers for the LBHI Shares, LBHI has concluded that a private sale to Wilton Re is the most efficient means of maximizing the value of the LBHI Shares.  Given the current market comparables and the transfer restrictions referenced above, I believe it is unlikely that LBHI will identify a superior alternative to Wilton Re's current offer for the LBHI Shares, through an auction process or otherwise.  Moreover, if market conditions improve or if different investment opportunities otherwise arise, Wilton Re may elect to use its excess capital for other opportunities such that an offer at this price would no longer be available.  It is therefore in LBHI's best interest to act promptly on the opportunity and the transaction negotiated between LBHI and Wilton Re.

9. LBHI has requested that the sale of the LBHI Shares be free and clear of any interest, claim or lien of any entity.  To the best of my knowledge, the LBHI Shares are not subject to any liens, claims or encumbrances in favor of any third-parties.  In addition, the proposed sale of the LBHI Shares to Wilton Re is the product of arm's-length, good faith negotiations between LBHI and Wilton Re.  Each party was represented in connection with the negotiations by attorneys.

10. In my business judgment, I have concluded for the reasons stated above that the sale of the LBHI Shares to Wilton Re pursuant to the terms of the SPA constitutes the

optimal means of realizing maximum value from the LBHI Shares.  The proposed transaction is in the best interests of LBHI and its creditors, and should be approved.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

      Executed on this 21st day of December 2011.

                             /s/ Jack McCarthy, Sr.
                             Jack McCarthy, Sr.