

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

### Southern District of New York

In re Lehman Brothers Holdings Inc., et al.    ,    Case No.   08-13555 (JMP)

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

ADI CONSEIL
Name of Transferee

KALLISTA CREDIT ARBITRAGE *MASTER FUND*
Name of Transferor

Name and Address where notices to transferee should be sent:

1 rue Vernier 75017 PARIS FRANCE

Court Claim # (if known):   19663
Amount of Claim:    1,973,422.19$
Date Claim Filed:    09/18/2009

Phone:  + 33 1 40 68 18 17
Last Four Digits of Acct #:    2835

Phone:   + 33 1 40 68 18 17
Last Four Digits of Acct. #:    9780

Name and Address where transferee payments should be sent (if different from above):
C/O SG Paris Elysees Entrepr (03392)
FR76 3000 3033 9200 0203 1283 590

Phone: +33 1 40 68 18 17
Last Four Digits of Acct #:

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____    Date: 12/06/2011
    Transferee/Transferee's Agent

Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

ADI CONSEIL
1 RUE VERNIER - 75017 PARIS
TEL. +33 (0)1 40 68 17 17
FAX +33 (0)1 40 68 17 18
SA AU CAPITAL DE 165 419,64 EUROS
RCS 384 854 812 PARIS - APE 7022Z





## NOTICE TO THE DEBTOR'S ADMINISTRATORS AND THE DEBTOR

To: the Joint Administrators named below, of **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** (the « **Debtor** ») in administration

The Joint Administrators are:
Anthony Victor Lomas,
Steven Anthony Pearson,
Dan Yoram Schwarzmann,
Michael John Andrew Jervis
Derek Anthony Howell

Fax. : + 44 (0) 20 7212 6598
counterparties@lbia-eu.com
uk.terminationnoticesqueries@ lbia-eu.com



Paris, May 24, 2010

---

**From: « KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED » (the "Assignor") and ADI CONSEIL (previously ADI - ALTERNATIVE INVESTMENTS (the "Assignee")**

---

Dear Sirs

1. We refer to the ISDA Master Agreement dated as of 22nd November 2001 and to the TBMA/ISMA 2000 GMRA Master Agreement dated as of 7th October 2002 between the Assignor and the Debtor (the "Master Agreements"). Terms defined in the Master Agreements have the same meanings when used in this notice.

2. We hereby notify you that as of 21 October 2009 the Assignor has assigned to the Assignee its claims against the Debtor under the applicable Master Agreements, in the sum of **USD 1,956,761.52** + the applicable interest rate + out-of-pockets expenses.

3. **According to Section 6(f) of the Schedule of the applicable ISDA Master Agreement, the Assignor has used the right of set-off of the amount owed by you to us regarding terminated ISDA transactions (i.e. USD 1,973,422.19) against the amount owed by us to you regarding GMRA transactions (USD 16,660.67).**

**Please find herewith details of amounts set off and the basis on which we, as Assignee, claims to exercise the abovementioned right.**

4. According to Section 7 of the Master Agreement, we, as Non-defaulting Party and Assignor, are entitled to transfer our interest in any amount payable to us from the Debtor as Defaulting Party under Section 6(e).

5. The administrative details of the Assignee are as follows:

      **Address for Notices:**
             **ADI CONSEIL (previously ADI – Alternative Investments)**
             **Attn. : Legal Department**

**Bank Account Details:**



+-------------------------------------+
| RELEVE D'IDENTITE BANCAIRE          |
+-------------------------------------+

Titulaire
**A.D.I. ALTERNATIVE INVESTMENTS**

Domiciliation
**SG PARIS ELYSEES ENTREPR (03392)
91 AV CHAMPS ELYSEES
75008 PARIS**

Référence bancaire

| Code banque | Code guichet | N° compte | Clé RIB |
|-------------|--------------|-----------|---------|
| 30003 | 03392 | 00020312835 | 90 |

IBAN : **FR76 3000 3033 9200 0203 1283 590**
BIC-ADRESSE SWIFT : **SOGEFRPP**

5.  Please  acknowledge  this  notice  by  signing  and  returning  to  the  Assignee  the  attached
acknowledgement.

ASSIGNOR:                                             ASSIGNEE:

Signature:                                            Signature:

Name: **Alain REINHOLD**                              Name: **Nicolas GOMART**

Title: Director, duly authorized to execute the Agreement     Title: CEO

Acknowledgement of Receipt
of Notice of Assignment

By Facsimile / Facsimile No.: + 33 1 40 68 17 72

Email : sgrasset@ofi-am.fr / cdimi@ofi-am.fr

**For the attention of:**

**ADI CONSEIL (previously ADI – Alternative Investments)**

**Attn. : Legal Department**

**1 rue Vernier 75017 PARIS**

**FRANCE**

[DATE:                          ]

Dear Sirs:

**Re. : The Sale by « KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED » (the "Assignor") to ADI CONSEIL (previously ADI - ALTERNATIVE INVESTMENTS) (the "Assignee") of the amount payable to it pursuant** to the ISDA Master Agreement dated as of 22nd November 2001 and to the TBMA/ISMA 2000 GMRA Master Agreement dated as of 7th October 2002 **between the Assignor and Lehman Brothers International (Europe), in the sum of USD 1,956,761.52** (plus the applicable interest rate and plus out-of-pockets expenses) **(the "Assigned Claim")**.

We hereby acknowledge receipt of a copy of the Notice of Assignment between Assignor and Assignee dated the 21st of October 2009 regarding the Assigned Claim referred to above.

We note the sale, assignment and transfer of the Claim to **ADI CONSEIL** (previously **ADI - ALTERNATIVE INVESTMENTS)** and that **ADI CONSEIL (previously ADI - ALTERNATIVE INVESTMENTS)** is entitled to any and all amounts payable from the Administration proceeding with regard to the Assigned Claim

The Joint Administrators

for and on behalf of **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** (in administration)

of Notice of Assignment

By Facsimile / Facsimile No.: + 33 1 40 68 17 72

Email : sgrasset@ofi-am.fr / cdimi@ofi-am.fr

**For the attention of:**

**ADI CONSEIL (previously ADI – Alternative Investments)**

**Attn. : Legal Department**

**1 rue Vernier 75017 PARIS**

**FRANCE**

[DATE:                              ]

Dear Sirs:

**Re. : The Sale by « KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED » (the "Assignor") to ADI CONSEIL (previously ADI - ALTERNATIVE INVESTMENTS) (the "Assignee") of the amount payable to it pursuant** to the ISDA Master Agreement dated as of 22nd November 2001 and to the TBMA/ISMA 2000 GMRA Master Agreement dated as of 7th October 2002 **between the Assignor and Lehman Brothers International (Europe), in the sum of USD 1,956,761.52** (plus the applicable interest rate and plus out-of-pockets expenses) **(the "Assigned Claim")**.

We hereby acknowledge receipt of a copy of the Notice of Assignment between Assignor and Assignee dated the 21st of October 2009 regarding the Assigned Claim referred to above.

We note the sale, assignment and transfer of the Claim to **ADI CONSEIL** (previously **ADI - ALTERNATIVE INVESTMENTS)** and that **ADI CONSEIL (previously ADI - ALTERNATIVE INVESTMENTS)** is entitled to any and all amounts payable from the Administration proceeding with regard to the Assigned Claim

The Joint Administrators

for and on behalf of **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** (in administration)



# KALLISTA
**KALLISTA CREDIT ARBITRAGE MASTER FUND LTD**

LEHMAN BROTHERS INTERNATIONAL (EUROPE)
Transaction Management
7 place d'Iéna
75773 PARIS CEDEX 16

**With copy to:** LEHMAN BROTHERS INTERNATIONAL (EUROPE)
25 Bank Street
London E14 5LE
UNITED KINGDOM
For the attention of: Legal Department / PWC Administrators

October 6th, 2008

**Re : DEFAULT VALUATION NOTICE IN ACCORDANCE WITH TBMA/ISMA GLOBAL MASTER REPURCHASE AGREEMENT**

Dear Sirs,

We refer to (a) the TBMA/ISMA 2000 version Global Master Repurchase Agreement between us, KALLISTA CREDIT ARBITRAGES MASTER FUND LIMITED and you LEHMAN BROTHERS INTERNATIONAL (EUROPE) dated as of 7th of October 2002 (the **Agreement**), (b) the outstanding Transactions thereunder, as listed in the attached Appendix (the **Terminated Transactions**), and (c) the notice in relation to the Terminated Transactions dated 16th September 2008 that was served on 16th September 2008 specifying that an Event of Default under Paragraph 10(a)iv had occurred in relation to you (the **Default Notice**).

Terms not otherwise defined in this letter shall have the meanings set out in the Agreement.

This letter constitutes a Default Valuation Notice for the purposes of the Agreement.

In accordance with paragraph 10(e) of the Agreement, we have determined the Default Market Value as of 16th September 2008 of

(a) the following Equivalent Securities or Equivalent Margin Securities that are <u>Deliverable Securities</u>:

| | | | | | | |
|---|---|---|---|---|---|---|
| EUR | 409459 | 19/02/2008 | 21/02/2008 | DE000A0GPYR7 | COMMERZBANK CAP FUND TRU( | -890 000 |
| EUR | | | | | | -890 000,00 |



## A   DELIVERABLE SECURITIES

### A1 Terminated Transactions 405459

Acting in good faith, we have been able to obtain offer quotations in respect of Transaction 405459 from only one maker in the Appropriate Market in a commercially reasonable size and we have therefore determined the Net Value of the relevant Deliverable Securities to be:



We elect to treat such Net Value as the Default Market Value of the relevant Deliverable Securities.

The amount due pursuant to paragraph 10(c) including, as of September the 16th, the Agreement in respect of the Terminated Transaction is therefore as follows:

    (i) Aggregated cash collateral,
    (ii) All margin calls since relevant Effective Dates
    (iii) Interest,
    (iv) Income Due.

| Currency | Initial Net Amount | Accrued Interest on Repo | Income Due | Collateral + MTM on Repo | Collateral Interest on 16/09/2008 | TOTAL Default Transactions | VALUATIONS Default Transactions 16/09/2008 | P & L | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| GBP | 0,00 | | | | | 0,00 | 0,00 | 0,00 | 0,00 |
| USD | 0,00 | | 263.903,32 | 1.813,14 | | 265.716,46 | 0,00 | 265.716,46 | 188.829,97 |
| EUR | -390.000,00 | -24.912,58 | | | | -914.912,58 | -715.150,00 | -199.762,58 | -199.762,58 |
| **TOTAL AMOUT DUE** | -24.912.58 | | | | | -649.196.12 | -715.150.00 | 65.953,88 | 11.741.61 |

Accordingly, pursuant to paragraph 10(c) of the Agreement, by this notice we hereby notify you that the net sum due by us is 11,741.61 EUR.
For further details, please refer to the relevant fund's sheet in the file attached.

For further details, please refer to the relevant fund's sheet in the attached file:

- Transaction's details on sheet KALLISTA CREDIT ARBITRAGES
- Price sourcing on the relevant sheet.

Nothing in this letter shall preclude our rights pursuant to paragraph 10(f) of the Agreement to recover any amounts in respect of legal and professional expenses incurred by us in connection with the termination of the Terminated Transactions.

KALLISTA CREDIT ARBITRAGES MASTER FUND LIMITED

**Alain REINHOLD**
DIRECTOR

# Assignment Agreement

between

**Kallista Credit Arbitrage Master Fund Limited**

(as the « **Assignor** » or the « **Company** »)



**ADI-Alternative Investments SA**

(as the « **Assignee** »)

in the presence of **Kallista Credit Arbitrage Fund Limited**

(as the « **the Feeder Fund** »)

**Relating to the transfer of all the Assignor's interest in the estimated claim amount payable to it by the Defaulting Party (as the « Claim Amount »)**

# CONTENTS

1.      Interpretation .................................................................................................... 2

2.      Assignment of the Claims ................................................................................. 4

3.      Authority and Claim Enforcement .................................................................... 5

4.      Purchase price.................................................................................................. 6

5.      Claw-back provision ......................................................................................... 6

6.      Limitation of duties towards the Identified Shareholders and/or the Assignor.................... 7

7.      Acknowledgements, Representations, Warranties and Covenants of the Assignor........... 7

8.      Acknowledgements, Representations, Warranties and Covenants of the Assignee.......... 8

9.      Responsibility and Indemnification.................................................................... 9

10.     No Licence ....................................................................................................... 9

11.     Confidentiality................................................................................................... 10

12.     Survival and transferability............................................................................... 10

13.     Notices ............................................................................................................. 10

14.     Reservation of rights......................................................................................... 11

15.     Whole Agreement............................................................................................. 11

16.     Amendments .................................................................................................... 11

17.     Severability....................................................................................................... 11

18.     Counterparts..................................................................................................... 12

19.     No Partnership.................................................................................................. 12

20.     Conflicts of interests - Multiple interests.......................................................... 12

21.     Consent and Waiver ......................................................................................... 12

22.     Governing Law - Jurisdiction............................................................................ 12

Schedule 1: Details of the calculation of the Claim Amount................................... 14

Schedule 2 : Notice to the Debtor's Administrators and the debtor......................... 15

Schedule 3 : List of Identified Shareholders .......................................................... 18

Schedule 4: Letter to Identified Shareholders of the Feeder Fund......................... 19

**THIS AGREEMENT** is dated 21 October 2009 and made

**BETWEEN:**

(1)    **KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED**, a company incorporated in the Cayman Islands whose registered address is PO Box 309, Ugland House, George Town, Cayman Islands, Cayman Islands (the « **Assignor** » or the « **Company** », as the context requires); and

(2)    **ADI - ALTERNATIVE INVESTMENTS SA**, a company incorporated in France, whose registered address is at 1 rue Vernier, 75017 Paris, France (the « **Assignee** » or the « **Investment Manager** », as the context requires);

a « **Party** » or the « **Parties** ».

In the presence of **KALLISTA CREDIT ARBITRAGE FUND LIMITED,** a company incorporated in the Cayman Islands whose registered address is PO Box 309, Ugland House, George Town, Cayman Islands, Cayman Islands (the « **the Feeder Fund** »)

**BACKGROUND:**

(A)    Kallista Credit Arbitrage Fund Limited is organised as a "feeder" fund and all of the Feeder Fund's assets (to the extent not retained in cash) are invested in the ordinary shares of the Company (organised as a "master" fund).

(B)    The Company and the Feeder Fund have appointed the Investment Manager to act as their investment manager pursuant to an investment management agreement entered into between the Company, the Feeder Fund, Kallista Management Limited and the Investment Manager on 08 October 2001, as amended from time to time.

(C)    The Applicable ISDA Master Agreement has been entered into between the Assignor and LBIE on 22rd November 2001. A guaranty agreement (the "**Guaranty Agreement**") has been entered into between the Assignor and LBHI pursuant to which LBHI guaranteed to the Assignor LBIE's performance and satisfaction of its obligation pursuant to the Applicable ISDA Master Agreement.

(D)    The Applicable TBMA/ISMA 2000 GMRA Master Agreement has been entered into between the Assignor and LBIE on 7th October 2002.

(E)    On the date of 15th September 2008:-

(i)    Administration orders were made in respect of LBIE under Rules 2.47(3)(a) of the UK Insolvency rules 1986. Having been appointed as joint administrators, Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann, Michael John Andrew Jervis and/or Derek Anthony Howell (as applicable) each a partner at PricewaterhouseCoopers LLP assumed responsibility for LBIE's affairs (from the date of 9th December 2008);

(ii)    LBHI announced that it has filed for Chapter 11 bankruptcy protection in the US Thus, LBHI is debtor in the Chapter 11 bankruptcy proceedings in the US

bankruptcy Court for the Southern District of New York captioned In re Lehman Brothers Holdings Inc., et al., Chapter 11 Case number 08-13555 (JMP);

together the "**Proceedings**".

The deadlines for the filing of proofs of claims against LBIE in the aforesaid Proceedings have not yet been established. The bar date has been determined for LBHI as of the 22nd of September 2009.

(F)     The Assignor has duly exercised the remedies available to it to date and has sent notices to LBIE and LBHI in order to protect its interests. The Administrators' website has been duly contacted and a law firm appointed by the Assignor has sent notices to LBHI. The Assignor has filed a proof of claim against LBHI.

(G)     The Parties acknowledge that the March Net Asset Value Per Share of the Company (and correlatively of the Feeder Fund) ("**March NAVPS**") has taken into account a valuation of the Claims against the Debtors at USD 0 (it being understood that the related Redemption Price per Share, as defined in the Prospectus, has incorporated the Claims valued at zero into the calculation because the Claims have been and are still considered as an illiquid asset which cannot be realized and converted into cash).

(H)     Given the illiquidity of the Claims and with a view to facilitating the business of the Company and to ensuring the protection of the Identified Shareholders, the Board of Directors has decided to transfer to the Assignee all of the Assignor's right, title and interest in and to the Claims subject to the terms and conditions mentioned in this Agreement.

(I)     This Agreement has been approved by the Board of Directors of the Company and by the Board of Directors of the Feeder Fund, both dated as of the 20 October 2009 (the "**Resolutions**"). The Company shall duly inform the Identified Shareholders of the execution of this Agreement and, in this respect, shall explain this scheme to them, by using the draft letter attached in **Schedule 4**. The Company shall briefly describe the terms of the benefit from the claw-back provision provided for in **Article 5** which enables Identified Shareholders to receive payments from the Assignee (after the deduction of expenses) corresponding to payments received by the Assignee in respect of the Claim Amount.

The Parties hereto agree as follows:-

1.     **Interpretation**

1.1    In this Agreement, unless the context otherwise requires, the following words have the following meanings:-

"**Administrators**"          means the joint administrators of LBIE:

"**Agreement**"              means this agreement, whose purpose is, in compliance with Section 7 of the Applicable ISDA Master Agreement, to transfer all of the Assignor's interest in the Early Termination Amount payable to it by the Debtor under Section 6(e) of the Applicable ISDA Master Agreement,, after having used the right to set-off the amount owed by LBIE to the Company regarding terminated ISDA transactions against the amount

2

owed by the Company to LBIE regarding GMRA transactions.

| | |
|---|---|
| **"Applicable Rules"** | means all applicable law and regulations. |
| **"Applicable ISDA Master Agreement"** | means the 1992 ISDA Master Agreement entered into between LBIE and the Assignor dated as of 19th March 2008, as amended and supplemented from time to time; |
| **"Applicable TBMA/ISMA 2000 GMRA Master Agreement"** | means the TBMA/ISMA 2000 GMRA Master Agreement entered into between the Assignor and LBIE dated as of 7th October 2002, as amended and supplemented from time to time; |
| **"Articles"** | means the memorandum and articles of association of the Company; |
| **"Beneficiaries"** | means the Identified Shareholders, being those listed in **Schedule 3**, who will have agreed to benefit from the Claw Back Provision and will accordingly participate to the distribution of the net proceeds of the Claim Amount. |
| **"Board of Directors"** | means the board of the directors of the Company; |
| **"Business Day"** | means any day that it is not (i) a Saturday, (ii) a Sunday or (iii) any other day on which commercial banks are authorised or required by Law to be closed in New York, Paris or London; |
| **"Claim Amount"** | means the amount arises from the set-off of the amount owed by LBIE to the Company regarding terminated ISDA transactions (i.e. USD 1,973,422.19) against the amount owed by the Company to LBIE regarding GMRA transactions (i.e USD 16,660.67), and **which is equal to USD 1,956,761.52** together with interest in USD from and including the termination date at the applicable rate (as defined in the ISDA Master Agreement and the GMRA Master Agreement entered into between the Company and LBIE), and as described in **Schedule 1**; |
| **"Claims"** | means: |

      (a)    the whole of the Assignor's claim against LBIE in respect of the amount payable to it under Section 6(e) of the Applicable ISDA Master Agreement (the "**Contract Claim**"), and

      (b)    the whole of the Assignor's claim against LBHI under the Guaranty Agreement (the "**Guaranty Claim**").

      as well as all related rights as described in Article 2.2 below;

| | |
|---|---|
| **"Debtors"** | means LBIE and its guarantor or credit support provider, LBHI; |
| **"Identified Shareholders"** | means shareholders who have redeemed their shares of the Feeder Fund on the March NAVPS (listed in **Schedule 3**); |
| **"LBHI"** | means LBHI Lehman Brothers Holdings Inc. |

**"LBIE**               means Lehman Brothers International (Europe);

**"March NAVPS"**       means the March 2009 net asset value per share of the Feeder Fund;

**"Notice of**          means the notice to the Administrators in compliance with **Schedule 2**;
**Assignment"**

**"Prospectus"**        means the prospectus relating to the Company as the same may be modified or amended from time to time; and

**"Purchase Price"**    means the amount as set forth in **Article 4.1**.

1.2    References to statutory provisions, regulations, Applicable Rules or notices shall include those provisions, regulations or notices as amended, extended, consolidated, substituted or re-enacted from time to time.

1.3    Unless a term is otherwise defined in or pursuant to this or other Articles, the terms defined in the Applicable Rules shall bear the same meaning herein. References to Articles are to clauses of this Agreement and headings are inserted for convenience only and shall not affect the construction of this Agreement

1.4    Unless the context otherwise requires and except as varied or otherwise specified in this Agreement words and expressions contained in this Agreement shall bear the same meaning as in the Prospectus or the Articles provided that any alteration or amendment of the Prospectus or the Articles shall not be effective for the purposes of this Agreement unless both Parties shall by endorsement hereon or otherwise have assented thereto and provided that if there is any conflict between words defined in the Articles and the Prospectus, the Articles shall prevail.

1.5    References herein to a Party are to any Party or together the Parties to this Agreement.

1.6    References in this Agreement to the singular include references to the plural and vice versa and a reference to the masculine includes a reference to the feminine and neuter and reference to a person shall include a reference to any company as well as to any legal or natural person.

1.7    The Schedules to this Agreement form part of it.

2.    **Assignment of the Claim Amount**

2.1    The Assignor, with full title guarantee hereby sells, assigns and transfers to the Assignee all of Assignor's right, title and interest in and to the Claim Amount, and warrants that it has exercised the remedies under the applicable agreements and, to the best of its knowledge and belief, that:-

(A)    the Contract Claim has been estimated at USD **1,973,422.19** (the "**Contract Claim Amount**") arising pursuant to the Applicable ISDA Master Agreement;

(B)    the Guaranty Claim has been estimated at USD **1,973,422.19** (the "**Guaranty Claim Amount**") arising pursuant to the Guaranty Agreement (the "**LBHI Guaranty**"); and

(C)    the estimated amount payable to LBIE by the Assignor is equal to **USD 16,660.67** regarding terminated GMRA transactions.

**The Claim Amount arises from the set-off is equal to USD 1,956,761.52.**

Such sale, assignment and transfer being designated as the "**Assignment**".

2.2    To the extent such an Assignment would not be so permitted, the Assignor agrees to hold on trust the Claim Amount for the Assignee absolutely.

2.3    The Claim Amount include all rights of the Assignor relating to the Claim Amount including without limitation the Assignor's rights to receive any interest, penalties and fees relating to the Claims, all cash, securities, instruments and other property which with may be paid or issued by Debtors in satisfaction of the Claims, any legal rights or claims against any third party with respect thereto and all rights arising from any and all proofs claims (formal and informal) that might be filed with respects to the Claims, and including without limitation all of Assignor's right, title, interest pursuant or with respect to the Applicable ISDA Master Agreement, the Guaranty Agreement and any and all claims arising thereunder,

2.4    The assignment of the Claim Amount shall be an absolute and unconditional sale, assignment and transfer of the Claim Amount and shall not be deemed to create a security interest.

2.5    A purpose of this Agreement is to enable the Assignor to deal with other subscribers and redeemers in the normal course of business (after having removed the Claims from the assets of the Assignor) and to strengthen the protection of the interests of the Beneficiaries thanks to the claw-back mechanism described in **Article 5**.

2.6    If the Assignor receives any interest, dividend or other payments which is for the account of the Assignee, the Assignor shall promptly (and, in any event, within 2 Business Days of receipt) pay the same to the Assignee. Pending such payment, the Assignor shall hold that amount on trust for the Assignee. If any interest, dividend or other payments are settled in favour of the Assignor by way of a Non-Cash Distribution, the Assignor shall hold such Non-Cash Distribution as agent of the Assignee and, as soon as practicable thereafter, have such Non-Cash Distribution registered in the name of the Assignee (or such other name or names as the Assignee may reasonably and lawfully require) and until it does so, the Assignor shall account to the Assignee for any income or other sums yielded in respect of such Non-Cash Distribution. Any transfer or registration fees payable in connection with the registration of such Non-Cash Distribution shall be for the account of the Assignee.

2.7    Completion of the Assignment and establishment of the trust, in each case pursuant to **Articles 2.1** and **2.2** above, shall take effect (without any further formality) on the Settlement Date on payment by the Assignee of the Purchase Price.

3.    **Authority and Claim Enforcement**

3.1    The Assignor hereby irrevocably appoints the Assignee as its true and lawful attorney and authorizes the Assignee to act in the Assignor's stead, in connection with any act or thing required to be done by the Assignor under this Agreement. Furthermore, the Assignee shall be entitled, without reference to the Identified Shareholders or the Assignor, to demand, sue for, compromise and recover all such amounts as now are, or thereafter might become, due and payable for or on account of the Claims.

3.2   The Assignee shall have full authority to do all things necessary to enforce the Claims including, without limitation, the right to file proofs of claim in the Proceedings or any other necessary or appropriate indicia of the Claims and the Assignee's ownership and control of, and rights in and to the Claims, provided that the Assignee may, if it so elects, decline to take any relevant action in respect of the Claims unless it is indemnified to its satisfaction by the Assignor and/or the Beneficiaries.

3.3   The Assignee may accept a bid price offered by a third party to purchase the Claim Amount if the latter is considered by the Assignee as fair and satisfactory in its opinion and according to the information available at that time.

3.4   The powers granted to the Assignor pursuant to this **Article 3** are discretionary in nature, and the Assignee may exercise or decline to exercise such powers at the Assignee's sole option.

3.5   The Assignor shall do all such acts and things as may be necessary or desirable to give effect to the assignment and transfer in Article 2.1 above. The Assignor will accordingly in good faith take all necessary or appropriate actions at its own expense to effect such assignment and transfer, including without limitation the delivery of all appropriate agreements, instruments or documents requested by the Assignee and the execution of appropriate transfer powers, corporate resolutions, consents and transfer notices.

## 4.   Purchase price

4.1   The purchase price is USD 1 (the **"Purchase Prise"**).

4.2   The Parties agree that the Purchase Price has been determined after taking into account the claw-back provision, as described in **Article 5**.

4.3   On the Settlement Date the Assignee shall pay to the Assignor the Purchase Price.

## 5.   Claw-back provision

5.1   If and when the Assignee receives any recovery in respect of the Claim Amount, it shall pay a corresponding amount (a "**Claw-Back Amount**") to the Beneficiaries, after deducting all and any costs and expenses, including legal fees, incurred in connection with such recovery. For such purposes, a "recovery" shall include, without limitation, any proceeds of sale of the Claim Amount, and any relevant distribution received from the Debtors or their successors or affiliates, in respect of the Claim Amount.

5.2   The Assignee undertakes to comply with this **Article 5** and the Assignor, acting in the interests of the Beneficiaries, accordingly agrees to the Purchase Price.

5.3   The Assignee shall not be liable to the Beneficiaries or the Assignor for recoveries (or the absence of recoveries) giving rise to a Claw-Back Amount, and will act in good faith and in a reasonable manner in order to assert the Claim Amount, subject to Article 4 above.

5.4   The Assignee gives no guarantee in whole or part or in part regarding the distribution of the Claw-Back Amount and the Claw-Back Amount itself.

5.5   Pursuant to **Article 5.1**, the Assignee may reduce any Claw-Back Amount in order to take into account the duly proved expenses and costs incurred by the Assignee in order to assert the Claim Amount. The Assignee shall, without prejudice to Article 3.2 above, seek the prior approval of all of the Beneficiaries to the extent that relevant costs and/or expenses give rise to, constitute or result in an amount which is in excess of USD 75,000.

6

5.6    For the purposes of this Agreement, the Assignee shall be entitled to treat the Assignor as the agent of the Identified Shareholders.

6.    **Limitation of duties towards the Identified Shareholders and/or the Assignor**

6.1    The Assignee does not assume any fiduciary duty or responsibility in respect of the Identified Shareholders and/or the Assignor apart from its gross negligence or its wilful misconduct.

6.2    The Assignee does not guarantee or otherwise assume any responsibility for any Claw-Back Amount or the absence of any Claw-Back Amount and shall incur no liability to anyone upon any signature, instrument, statement, notice, resolution, request, direction, consent, order, certificate, report, opinion, or other document, paper or data reasonably believed by it to be genuine and reasonably believed by it to be properly authorised, executed, issued or signed by the proper party or parties.

6.3    The Assignee shall not have any liability to the Identified Shareholders and/or the Assignor arising from its inability to assert in whole or part the rights of the Claims resulting from a cause beyond its reasonable control and which directly and indirectly makes it impracticable or impossible, including but not limited to force majeure or suspension, unavailability for use, breakdown, failure or damage (however caused) of any communication equipment essential for the Assignor to communicate with the Administrators, strike or other industrial action.

7.    **Acknowledgements, Representations, Warranties and Covenants of the Assignor**

7.1    The Assignor acknowledges, represents and warrants to the Assignee that:-

    (A)    it is validly existing, duly empowered and authorised to execute, deliver and perform this Agreement and to give effect to the transactions contemplated hereby;

    (B)    this Agreement constitutes a valid and legally binding agreement enforceable against it and is enforceable in accordance with its terms except insofar as enforcement may be limited by bankruptcy, insolvency or other laws relating to or affecting enforcement of creditors' rights or general principles of equity;

    (C)    it has complied with and will continue to comply with all laws, rules and regulations or court and governmental orders by which it is bound or to which it is subject in connection with the execution and performance of this Agreement.

    (D)    the Contract Claim is based on estimated amounts owed to the Assignor by LBIE pursuant to the Applicable ISDA Master Agreement, the estimated amount payable to LBIE by the Assignor regarding terminated GMRA transactions has not been disputed by LBIE and the Guaranty Claim is based on estimated amounts owed to the Assignor by LBHI pursuant to the LBHI Guaranty and that the Claims are allowable unsecured claims;

    (E)    no payment has been received by the Assignor or by any third party claiming through the Assignor, in full or partial satisfaction of the Claim Amount;

    (F)    it has not previously assigned, sold, factored, transferred, participated or pledged the Claim Amount to any third party in whole or part;

    (G)    it has delivered to the Debtors all notices, claims forms, calculations and other documents or materials necessary or required pursuant to the Applicable ISDA Master Agreement, the Applicable TBMA/ISMA 2000 GMRA Master Agreement

7

and/or the LBHI Guaranty in order for the Assignor to assert and maintain its claims pursuant to the Applicable ISDA Master Agreement and the LBHI Guaranty underlying the Claims and to provide LBIE with an estimated amount payable to the latter, including without limitation, the notice of the termination of the Applicable ISDA Master Agreement and the Applicable TBMA/ISMA 2000 GMRA Master Agreement and the notices of calculation of the overall positions with respect to the Applicable ISDA Master Agreement and to the Applicable TBMA/ISMA 2000 GMRA Master Agreement;

(H)   notwithstanding the reduction of expenses and costs incurred by the Assignee in order to assert the rights of the Claim Amount, the amount of recoveries distributed in the Proceedings may differ from the Claim Amount; and

(I)   except as set forth in this Agreement, neither ADI-Alternative Investments (both in its capacities as Assignee and Investment Manager of the Assignor) nor any agent or representative of ADI-Alternative Investment has made any representation whatsoever to the Assignor, agent or representative of the Assignor, regarding the status of the Proceedings, the conditions of the Debtors (financial or otherwise) or any other matter relating to the Proceedings, the Debtors, the Claims or the Claim Amount; and

(J)   it has adequate information concerning the condition of the Debtors and the status of the Proceedings to make an informed decision regarding the sale of the Claim Amount and that the Assignor, the Board of the Directors of the Assignor and the Feeder Fund independently and without reliance on the Assignee have made their own analysis and decisions to approve this Assignment;

(K)   the Board of Directors or in the case of a subsequent winding-up of the Company entities in charge of this winding-up will do their best efforts to resolve any issue raised by the contestation of LBIE relating to the free assignment of the Claims by the Assignor to the Assignee ; and

(L)   if at any time during the term of this Agreement the Assignor discovers any fact or omission, or any event or change of circumstances has occurred which would make any of the Assignor's acknowledgements, representations or warranties herein inaccurate or incomplete in any material respect, the Assignor shall provide immediate written notification to the Assignee of any such fact, omission, event, change or circumstance, and the fact related thereto, and it is agreed that the failure to provide such notification or the failure to continue to be in compliance with the foregoing acknowledgements, representations and warranties during the term of this Agreement shall entitle the Assignee to immediately terminate this Agreement upon written notice to the Assignor.

8.   **Acknowledgements, Representations, Warranties and Covenants of the Assignee**

8.1   The Assignee acknowledges, represents and warrants to the Assignor that:-

(A)   it is validly existing, duly empowered and authorised to execute, deliver and perform this Agreement and to give effect to the transactions contemplated hereby;

(B)   this Agreement constitutes a valid and legally binding agreement enforceable against it and is enforceable in accordance with its terms except insofar as enforcement may be limited by bankruptcy, insolvency or other laws relating to or affecting enforcement of creditors' rights or general principles of equity.

8

(C)    it has complied with and will continue to comply with all laws, rules and regulations or court and governmental orders by which it is bound or to which it is subject in connection with the execution and performance of this Agreement; and

(D)    it will do its best efforts and will act in good faith and with reasonable care and judgment in order to assert the rights related to the Claim Amount.

9.    **Responsibility and Indemnification**

9.1    Each Party is only responsible for the performance of its obligations under this Agreement. The liability of each Party is excluded for any other matter. As a result, and without prejudice to **Article 2** above and **Article 9.4** below, *neither the Assignee nor the Assignor* is liable (pursuant to this Agreement) if their breach of the Agreement was the result of the actions or omissions of any other party provided that the Assignee or the Assignor (as the case may be) (i) was not directly or indirectly the cause of any such act or omission and/or (ii) did not directly or indirectly participate in such breach.

9.2    *The Assignee will not be responsible to the Assignor* or otherwise for any indirect or consequential loss including but not limited to loss of opportunity whereby the value of the Claim Amount could have been increased or for any decline in the value of the Claim Amount howsoever except to the extent that such loss or decline is due to the Assignee's gross negligence, wilful misconduct, bad faith, reckless disregard or fraud, or that of any of its directors or employees.

9.3    The Assignee will not be liable for any loss arising from errors of fact or judgement or any action taken (or omitted to be taken) by it howsoever arising except to the extent that any such error or action (or the omission thereof) is due to the Assignee's gross negligence, wilful misconduct, bad faith, reckless disregard or fraud, or that of any of its directors or employees. No liability is given by the Assignee as to the recovery of the Claim Amount or any part of it.

9.4    The Assignor shall indemnify and keep indemnified the Assignee and the directors, employees, officers and agents of the Assignee from and against any and all liabilities, obligations, losses, damages, suits, losses, expenses and costs (including reasonable attorney fees) (together the "**Losses**") which may be incurred by or asserted against the Assignee in relation to the Claims or this Agreement other than those resulting from the *Assignee's gross negligence, wilful misconduct, bad faith, reckless disregard or fraud*, or that of any of its directors or employees and other than expenses incurred by the Assignee for which it is responsible hereunder.

9.5    The Assignor shall in no case admit any claim, procedure or suit (the "**Suit**") which could give rise to Losses or make any compromise, settlement or carry out any other form of negotiation in relation to such Suit without the prior written consent of the Assignee (irrespective of whether or not the Assignor is or may become a party to the relevant Claim) provided that the Assignor may make any settlement pursuant to which the Assignee is irrevocably cleared of any liability to the relevant Suit.

10.    **No Licence**

10.1    The Assignor and the Assignee each acknowledge *for the benefit of the other that*:-

(A)    no provision of this Agreement grants either of them any rights, except as contained herein, in any intellectual property belonging to or developed by any of the Parties; and

(B)     this Agreement does not constitute a licence in respect of any such intellectual property.

## 11.    **Confidentiality**

11.1    The Parties shall at all times respect and protect the confidentiality of information acquired in consequence of this Agreement except pursuant to any right or obligation to or by which the Assignee or the Assignor (as the case may be) may be entitled or bound to disclose information or under compulsion of law or pursuant to the requirements of competent regulatory, tax or other authority authorities

11.2    Nothing in this **Article 11** shall prevent the disclosure of information by either Party to its auditors, legal or other professional advisers where reasonably required for the proper performance of their duties.

11.3    Neither of the Parties hereto shall do nor commit any act, matter or thing which would or might prejudice or bring into disrepute in any manner the business or reputation of another Party or any director of such Party.

## 12.    **Survival and transferability**

12.1    The terms of this Agreement shall be binding upon and shall inure to the benefit of the Assignor, the Assignee and their respective successors and assigns.

12.2    The Assignor hereby acknowledges that at any time the Assignee may resign the Claim Amount, or all or any part thereof or right or interest therein together with all right, title and interest of the Assignee in, to and under this Agreement.

12.3    All representations, warranties, covenants, indemnities and agreements made in this Agreement shall survive the execution of delivery of this Assignment and any such reassignment by the Assignee

## 13.    **Notices**

13.1    All notices, requests, demands and other communications under this Agreement shall be in writing and delivered in person, sent by fax, sent by recognised overnight courier or sent by registered or certified mail, postage prepaid, and properly addressed as follows:-

To the Assignor:-                    Kallista Credit Opportunities Fund Limited
                                     PO Box 309
                                     Ugland House
                                     Grand Cayman
                                     KY1-1104
                                     Cayman Islands
                                     Attention: Alain Reinhold

To the Assignee:-                    ADI - Alternative Investments
                                     1 rue Vernier
                                     75017 Paris
                                     France
                                     Attention: Nicolas Gomart

13.2    In the case of a subsequent winding-up of the Assignor, all notices, requests, demands and other communications under this Agreement intended to be addressed to the Company shall instead be properly addressed or as follows:-

10

To the Identified Shareholders: **please refer to Schedule 3.**

13.3    Notices given by hand or facsimile shall be deemed to have been given when delivered or despatched.  Notices given by pre-paid airmail or first class post as appropriate shall be deemed to have been given seven days after posting.  Evidence that the notice was properly addressed, stamped and put in the post shall be conclusive evidence of posting.  Evidence that the facsimile was duly despatched to a current facsimile of the addressee shall be conclusive evidence

13.4    Either Party may from time to time change its address for the purpose of notices to that Party by a similar notice specifying a new address, but no such change shall be deemed to have been given until it is actually received by the other Party.

13.5    All notices and other communications required or permitted under this Agreement which are addressed as provided in this Article, shall be effective upon delivery.

14.    **Reservation of rights**

14.1    The rights, powers, privileges and remedies provided in this Agreement are cumulative and are not exclusive of any rights, powers, privileges or remedies provided by Law or otherwise.  No failure to exercise nor any delay in exercising by either Party to this Agreement of any right, power, privilege or remedy under this Agreement shall impair or operate as a waiver thereof in whole or in part.  No single or partial exercise of any right, power, privilege or remedy under this Agreement shall prevent any further or other exercise thereof or the exercise of any other right, power, privilege or remedy.

15.    **Whole Agreement**

15.1    This Agreement, together with the Schedules and any documents referred to in it, constitutes the whole agreement between the Parties relating to its subject matter and supersedes and extinguishes any prior drafts, agreements, undertakings, representations, warranties and arrangements of any nature, whether in writing or oral, relating to such subject matter.

16.    **Amendments**

16.1    No variation of this Agreement shall be effective unless made in writing and signed by the Parties hereto

16.2    The consent of the Identified Shareholders shall not be required to any amendment to this Agreement.

17.    **Severability**

17.1    In the event that any term, condition or provision of this Agreement is held to be in violation of any applicable law, statute or regulation the same shall be deemed to be deleted from this Agreement and shall be of no force and effect and this Agreement shall remain in full force and effect as if such term, condition or provision had not originally been contained in this Agreement.  Notwithstanding the foregoing in the event of such deletion the Parties shall negotiate in good faith in order to agree the terms of a mutually acceptable and satisfactory alternative provision in place of the provision so deleted.

18.    **Counterparts**

18.1    This Agreement may be executed in any number of counterparts. which shall be an original but so that such counterparts shall together constitute one Agreement. Either Party may enter into this Agreement by signing any such counterpart.

19    **No Partnership**

19.1    Nothing in this Agreement shall constitute or be deemed to create any constitute a partnership, joint venture or similar relationship between the Parties and/or any other person nor, except as expressly provided, shall it constitute, or be deemed to constitute either party the agent of the other party for any purpose

20.    **Conflicts of interests - Multiple interests**

20.1    The Parties and any person acting on their behalf may act in multiple capacities. In that event, each of them shall act in the interest of the Beneficiaries.

20.2    The Assignee has multiple interests. In consideration of its capacity as Investment Manager of the Assignor. the Assignee shall act in the sole interest of the Beneficiaries. The Assignee agrees to assert the rights of the Claim for the sole benefit of the Beneficiaries in accordance with the terms of the Agreement and in good faith and with reasonable care and judgement, in a manner which is consistent with practices and procedures.

21    **Consent and Waiver**

21.1    The Assignor hereby acknowledges and consents to all terms of this Agreement and waivers its right to raise any objection thereto and its rights to receive notice to the US Rule 3001 of the Rules of Bankruptcy Procedure

22.    **Governing Law - Jurisdiction**

22.1    This Agreement shall be governed by and construed in accordance with English law

22.2    In relation to any legal action or proceedings arising out of or in connection with this Agreement ("**Proceedings**"). each of the parties irrevocably submits to the exclusive jurisdiction of the Paris courts and waives any objection to Proceedings in such courts on the grounds of venue or on the grounds that Proceedings have been brought in an inappropriate forum

**IN WITNESS** whereof the Parties hereto have caused this Agreement to be signed as a deed as of the day and year first above written.

**KALLISTA    CREDIT    ARBITRAGE
MASTER FUND LIMITED**

Represented by

Alain Reinhold

Title Director

Simon Brock

Title Director

**ADI - ALTERNATIVE INVESTMENTS SA**

Represented by.

Nicolas Gomart

Title  CEO

**In the presence of:**

**KALLISTA CREDIT ARBITRAGE FUND LIMITED**

Represented by

Alain Reinhold

Title  Director

Simon Brock

Title  Director

13

**SCHEDULE 1: DETAILS OF THE CALCULATION OF THE CLAIM AMOUNT**

*[This page is intentionally left blank; please refer to the attached documents]*





**KALLISTA CREDIT ARBITRAGE MASTER FUND LTD**

LEHMAN BROTHERS INTERNATIONAL (EUROPE)
Transaction Management
7 place d Iena
75773 PARIS CEDEX 16

**With copy to:** LEHMAN BROTHERS INTERNATIONAL (EUROPE)
25 Bank Street
London E14 5LE
UNITED KINGDOM
For the attention of Legal Department / PWC Administrators

October 6ᵗʰ 2008

**Re : DEFAULT VALUATION NOTICE IN ACCORDANCE WITH TBMA/ISMA GLOBAL MASTER REPURCHASE AGREEMENT**

Dear Sirs,

We refer to (a) the TBMA/ISMA 2000 version Global Master Repurchase Agreement between us, KALLISTA CREDIT ARBITRAGES MASTER FUND LIMITED and you LEHMAN BROTHERS INTERNATIONAL (EUROPE) dated as of 7ᵗʰ of October 2002 (the **Agreement**), (b) the outstanding Transactions thereunder, as listed in the attached Appendix (the **Terminated Transactions**) and (c) the notice in relation to the Terminated Transactions dated 16ᵗʰ September 2008 that was served on 16ᵗʰ September 2008 specifying that an Event of Default under Paragraph 10(a)iv had occurred in relation to you (the **Default Notice**)

Terms not otherwise defined in this letter shall have the meanings set out in the Agreement

This letter constitutes a Default Valuation Notice for the purposes of the Agreement

In accordance with paragraph 10(e) of the Agreement we have determined the Default Market Value as of 16ᵗʰ September 2008 of

(a) the following Equivalent Securities or Equivalent Margin Securities that are <u>Deliverable Securities</u>:

| | | | | | | |
|---|---|---|---|---|---|---|
| EUR | 409459 | 19/02/2008 | 21/02/2008 | DE000A0GPYR7 | COMMERZBANK CAP FUND TRU C | 890 000 |
| EUR | | | | | | 890 000.00 |



## A   DELIVERABLE SECURITIES

### A1 Terminated Transactions 405459

Acting in good faith, we have been able to obtain offer quotations in respect of Transaction 405459 from only one maker in the *Appropriate Market* in a commercially reasonable size and we have therefore determined the Net Value of the relevant Deliverable Securities to be



We elect to treat such Net Value as the Default Market Value of the relevant Deliverable Securities.

The amount due pursuant to paragraph 10(c) including, as of September the 16th, the Agreement in respect of the Terminated Transaction is therefore as follows

      (i) Aggregated cash collateral.
      (ii) All margin calls since relevant Effective Dates
      (iii) Interest.
      (iv) Income Due

| Currency | Index Net Amount | Accrued Interest on Repo | Income Due | Collateral MTM on Repo | Collateral Interest on 15/09/2008 | TOTAL Netted Transactions | Value of the Default Transactions 15/09/2008 | P&L | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| GBP | | | | | | | | | -9.00 |
| USD | 0.01 | | 39,543.12 | -4.14 | | -39,215.00 | 0.00 | 366,378.91 | 388,098.97 |
| EUR | 24,912.58 | | | | | | | | 199,762.58 |
| **TOTAL AMOUT DUE** | 24,912.58 | | | | | 649,196.12 | 715,150.00 | 65,953.88 | **11,741.61** |

Accordingly, pursuant to paragraph 10(c) of the Agreement, by this notice we hereby notify you that the net sum due by us is 11,741.61 EUR
For further details, please refer to the relevant fund's sheet in the file attached.

For further details, please refer to the relevant fund's sheet in the attached file

      Transaction's details on sheet KALLISTA CREDIT ARBITRAGES
      Price sourcing on the relevant sheet

Nothing in this letter shall preclude our rights pursuant to paragraph 10(f) of the Agreement to recover any amounts in respect of legal and professional expenses incurred by us in connection with the termination of the Terminated Transactions

**Alain REINHOLD**



**KALLISTA CREDIT ARBITRAGE MASTER FUND LTD**

LEHMAN BROTHERS INTERNATIONAL (EUROPE)
Transaction Management
7 place d'Iéna
75773 PARIS CEDEX 16

With copy to: LEHMAN BROTHERS INTERNATIONAL (EUROPE)
25 Bank Street
London E14 5LE
UNITED KINGDOM
For the attention of Legal Department / PWC Administrators

October 17th, 2008

*Via hand and FedEx*

**STATEMENT UNDER SECTION 6(d) OF THE ISDA MASTER AGREEMENT – KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED** (previsously named Kallista High Yield Master Fund Limited)

**RE: 1992 ISDA Master Agreement dated as of 22nd November, 2001 between Lehman Brothers International (Europe) ("you") and Kallista Credit Arbitrage Master Fund Limited ("us/we")**

Dear Sirs,

We refer to:

(i)     the above ISDA Master Agreement entered into by Lehman Brothers International (Europe) and Kallista Credit Arbitrage Master Fund Limited (as amended from time to time between the parties, the "**Agreement**"), and

(ii)    the outstanding Transactions thereunder, as listed in the spreadsheet enclosed.

We refer also to the 1995 English Law Credit Support Annex between by Lehman Brothers International (Europe) and Kallista Credit Arbitrage Master Fund Limited, dated as of 22nd November, 2001 (as amended from time to time between the parties, the "**CSA**"), which forms part of and is subject to the Agreement

Terms starting with a capital letter and not otherwise defined in this letter shall have the same meanings set out in the Agreement.

By a notice dated September 16th, 2008, we designated September 16th 2008 as the Early Termination Date in respect of all outstanding Transactions under the Agreement

This letter constitutes the statement required by Section 6(d)(i) of the Agreement.

In accordance with provisions of Section 6(e)(i)(4) the Agreement, we have determined our Loss in respect of each Transaction.

In accordance with provisions of Section 6(e)(i)(4) the Agreement, we have determined our Loss in respect of each Transaction.

Please note that in relation to Transactions listed in spreadsheet (sheet Kallista Credit Arbitrages Master Fund Limited), Loss has been determined as follows.

Loss includes the direct cost linked to transaction termination along with the hedging cost, the replacement cost and the opportunity cost.

<u>hedging cost</u>

Most of OTC equity options were hedged in delta using securities as underlying on September 12th 2008. The suppression of all options positions has left hedge positions bared from September 12th to September 16th 2008. The hedging cost claim refers to the P&L of underlying positions between September 12th and September 16th 2008.

<u>replacement cost</u>

The replacement cost (repurchase or resell of OTC positions) being the cost of liquidity, this cost is estimated within a semi market spread ([Ask- Bid]/2) and has been estimated on OTC Equity options as well as on Variance Swaps using numerous market makers' quotations. We have distinguished the index varswaps from the single names varswaps of which liquidity varies.

<u>the opportunity cost:</u>

Most of OTC Equity options' positions were used to build a convex (positive gamma) portfolio. The suppression of options led the impossibility to adjust the portfolio within these high volatility days. This represents a high opportunity cost estimated at

$$\frac{1}{2}\Gamma\, dS^2 + \Theta\, dt \text{ for each option position}$$

With:
- dS = variation of the stock
- dt = variation of the time

Details relating to the valuation at the date of September 16th of the Terminated Transactions are listed in the booklet and the CD-Rom support here enclosed (sheet Kallista Credit Arbitrages Master Fund Limited), according to the fund's valuation policy and process stated independently by the administrator of the Fund.
You will find in the above mentioned support the declaration of the said administrator and method of calculation for each category of transaction.

The Termination Currency selected by us as the Non-defaulting Party in accordance with paragraph (f) of Part 1 of the Schedule to the Agreement is US Dollar ("USD")



Accordingly, pursuant to Section 6(e), the amount payable to us by you is **USD 2.064.504,09** (EUR 1 460 843,09), including Termination Currency Equivalent of the Loss in respect of the CSA owed by you to us **USD 2.678.216,27** (EUR 1 895 105,83), determined as follows:

| | | Total | | | | |
|---|---|---|---|---|---|---|
| 1 | VARSWAP | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| 2 | CDS | -507 211,17 | 0,00 | 0,00 | 0,00 | 507 211,17 |
| 3 | OPTION | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| 4 | EQUITY SWAP | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| 5 | OUTPERFORM | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| 6 | FORWARD | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| 7 | FAILED TRANSACTIONS | -52 286,13 | 0,00 | 0,00 | 0,00 | -52 286,13 |
| 8 | COLLATERAL | 1 895 105,83 | 0,00 | 0,00 | 0,00 | 1 895 105,83 |
| 9 | INTEREST RATE SWAP | 125 234,55 | 0,00 | 0,00 | 0,00 | 125 234,55 |
| 10 | INCOME DUE | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| 11 | TRS | 0,00 | 0,00 | 0,00 | 0,00 | 0,00 |
| | | 1 460 843,09 | 0,00 | 0,00 | 0,00 | 1 460 843,09 |

This amount is due from the date of this letter together with interest thereon in US Dollar from and including the Early Termination Date at the Applicable Rate. Because the amount payable pursuant to Section 6(e) is payable by you, the Applicable Rate for these purposes is equal to the Default Rate, which is a rate per annum equal to the cost to us if we were to fund, or of funding, such amount plus 1 per cent per annum.

We hereby certify that the current Default Rate is accordingly FED + 25 bp per cent per annum. In accordance with Section 6(d)(ii) interest will continue to accrue on the amount due to the date of payment at the Default Rate on the basis of daily compounding and the actual number of days elapsed.

The Default Rate reflects our cost of funding from time to time and accordingly may change. We will inform you of any changes to the Default Rate which occur after the date of this letter and prior to the date on which you make payment in full of the amounts due by you under the Agreement.

In accordance with Section 6(d)(i), the relevant account to which payment of the above number should be made is as follows:

Our SSI's are:
Payment to: Bank of New York
ABA: 021 000 018
SWIFT IRVTUS3N
Beneficiary: Credit Suisse Securities (Europe) Ltd
SWIFT CSFBGB2L
A/C No: 890 0361 158
For further credit: KALLISTA CREDIT ARBITRAGES O8G8



Please note that pursuant to Section 11 of the Agreement we will, in due course, be claiming under the indemnity for our reasonable out-of-pocket expenses including legal fees incurred by reason of the enforcement and protection of our rights under the Agreement and any Credit Support Document and/or by reason of the early termination of the Transactions, including, but not limited to, costs of collection.

Yours faithfully,

For and on behalf of KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED

Alain REINHOLD   ,
DIRECTOR

**SCHEDULE 2 : NOTICE TO THE DEBTOR'S ADMINISTRATORS AND THE DEBTOR**

To: the Joint Administrators named below, of **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** (the « **Debtor** ») in administration

The Joint Administrators are:
Anthony Victor Lomas,
Steven Anthony Pearson,
Dan Yoram Schwarzmann,
Michael John Andrew Jervis
Derek Anthony Howell

Fax. : + 44 (0) 20 7212 6598

counterparties@lbia-eu.com
uk.terminationnoticesqueries@ lbia-eu.com

Paris, the 21st of October 2009

**From: « KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED » (the "Assignor") and ADI - ALTERNATIVE INVESTMENTS (the "Assignee")**

Dear Sirs

1. We refer to the ISDA Master Agreement dated as of 22nd November 2001 and to the TBMA/ISMA 2000 GMRA Master Agreement dated as of 7th October 2002 between the Assignor and the Debtor (the "Master Agreements"). Terms defined in the Master Agreements have the same meanings when used in this notice.

2. We hereby notify you that as of 21 October 2009 the Assignor has assigned to the Assignee its claims against the Debtor under the applicable Master Agreements, in the sum of **USD 1,956,761.52** + the applicable interest rate + out-of-pockets expenses.

3. **According to Section 6(f) of the Schedule of the applicable ISDA Master Agreement, the Assignor has used the right of set-off of the amount owed by you to us regarding terminated ISDA transactions (i.e. USD 1,973,422.19) against the amount owed by us to you regarding GMRA transactions (USD 16,660.67).**

**Please find herewith details of amounts set off and the basis on which we, as Assignee, claims to exercise the abovementioned right.**

4. According to Section 7 of the Master Agreement, we, as Non-defaulting Party and Assignor, are entitled to transfer our interest in any amount payable to us from the Debtor as Defaulting Party under Section 6(e).

5 The administrative details of the Assignee are as follows

**Address for Notices:**

**ADI – Alternative Investments**
**Attn. : Legal Department**
**1 rue Vernier 75017 PARIS**
**FRANCE**



15

**Bank Account Details:**



## RELEVE D'IDENTITE BANCAIRE

Titulaire
### A.D.I. ALTERNATIVE INVESTMENTS

Domiciliation
### SG PARIS ELYSEES ENTREPR (03392)
### 91 AV CHAMPS ELYSEES
### 75008 PARIS

Référence bancaire

| Code banque | Code guichet | N° compte | Clé RIB |
|---|---|---|---|
| 30003 | 03392 | 00020312835 | 90 |

IBAN   **FR76 3000 3033 9200 0203 1283 590**
BIC-ADRESSE SWIFT   **SOGEFRPP**

5. Please acknowledge this notice by signing and returning to the Assignee the attached acknowledgement.

ASSIGNOR:                                                ASSIGNEE:

Signature:                                                Signature:

Name: **Alain REINHOLD**                      Name: **Nicolas GOMART**

Title: *Director*, duly authorized to execute the Agreement        Title: CEO

Phone: + 33 1 40 68 17 17                     Phone: + 33 1 40 68 17 17

Acknowledgement of Receipt
of Notice of Assignment

By Facsimile / Facsimile No.: + 33 1 40 68 17 72

Email : sgrasset@ofi-am.fr / cdimi@ofi-am.fr

**For the attention of:**

**ADI – Alternative Investments**

**Attn. : Legal Department**

**1 rue Vernier 75017 PARIS**

**FRANCE**

[DATE:                                    ]

Dear Sirs:

**Re. : The Sale by « KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED » (the** 'Assignor") to ADI - ALTERNATIVE INVESTMENTS (the "Assignee") of the amount payable **to it pursuant** to the ISDA Master Agreement dated as of 22nd November 2001 and to the TBMA/ISMA 2000 GMRA Master Agreement dated as of 7th October 2002 **between the Assignor and Lehman Brothers International (Europe), in the sum of USD 1,956,761.52** (plus the applicable interest rate and plus out-of-pockets expenses) (the "**Assigned Claim**").

We hereby acknowledge receipt of a copy of the Notice of Assignment between Assignor and Assignee dated the 21st of October 2009 regarding the Assigned Claim referred to above.

We note the sale, assignment and transfer of the Claim to **ADI - ALTERNATIVE INVESTMENTS** and that **ADI - ALTERNATIVE INVESTMENTS** is entitled to any and all amounts payable from the Administration proceeding with regard to the Assigned Claim

The Joint Administrators

for and on behalf of **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** *(in administration)*

17

## SCHEDULE 3: LIST OF IDENTIFIED SHAREHOLDERS

| IDENTIFIED SHAREHOLDERS |
| --- |
| ADI (for its own account) |
| OFI GLOBAL HIGH YIELD |
| CARDIF ASSURANCES |
| ADI BOND ABSOLU |
| ADI ARBITRAGES ABSOLU (fka MATMUT STRATEGIES) |
| MATMUT (00069697201) |
| CRCA NORD EST |
| ADI CREDIT ARB ABSOLU |
| UMR INVESTISSEMENTS EN DIRECT |

**SCHEDULE 4: LETTER TO IDENTIFIED SHAREHOLDERS OF THE FEEDER FUND**

*[This page is intentionally left blank; please refer to the attached document]*



**KALLISTA**
KALLISTA CREDIT ARBITRAGE MASTER FUND LTD

**For the attention of: the Identified Shareholders
of the Feeder Fund**

<u>By email and registered mail</u>

CAYMAN ISLANDS , the 21st of October 2009

**Object: KALLISTA CREDIT ARBITRAGE MASTER FUND Ltd**

Dear Sirs,

*Capitalized terms used and not otherwise defined in this letter shall have the meanings given them in the last updated version of the Memorandum of Association of KALLISTA CREDIT ARBITRAGE MASTER FUND LIMITED (the "Company"), in the last updated version of the Prospectus of KALLISTA CREDIT ARBITRAGE FUND LIMITED (the "Feeder Fund"), or in the attached copy of the Assignment Agreement.*

- The March 2009 Net Asset Value Per Share (the "March NAVPS") of the **Company** (and correlatively of the Feeder Fund) has taken into account a valuation of the claim (the "Claim") against LEHMAN BROTHERS INTERNATIONAL EUROPE[1] ("LBIE") at USD 0 (it being understood that the related Redemption Price per Share, as defined in the Prospectus of the Company, has incorporated the Claim valued at zero into the calculation in accordance with the valuation methodology set out in the Prospectus and Articles of Association of the Company because the Claim has been and is still considered as an illiquid asset which cannot be realized and converted into cash)[2].

- Given the illiquidity of the Claim and with a view to facilitating the business of the Company and to ensuring the protection of the interests of the remaining shareholders who had redeemed all their shares in the Feeder Fund on the basis of the March NAVPS (the "**Identified Shareholders**" or "**Beneficiaries**"), the board of directors of the Company (the "**Board of Directors**") has decided to transfer all of the Company's right, title and interest in and to the **Claim** subject to certain conditions as described hereunder to **ADI-ALTERNATIVE INVESTMENTS (or "ADI")**, the Investment Manager of the Company, by a way of an assignment agreement approved by the Board of Directors at a meeting held on the 20th of October 2009 (the "**Resolution**"). The board of directors of the Feeder Fund has also approved this assignment at a meeting held on the same date.

---

[1] We remind that the Company and LBIE had entered into a 1992 ISDA master agreement dated 22nd November 2001 (the "ISDA Master Agreement") and into a TBMA/ISMA 2000 GMRA (the "GMRA Master Agreement") dated 7th October 2002. On the 15th of September 2008, administration orders were made in respect of LBIE under Rule 2.47(3)(a) of the UK Insolvency Rules 1986. Having been appointed as joint administrators, Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann, Michael John Andrew Jervis and/or Derek Anthony Howell (as applicable) each a partner at PricewaterhouseCoopers LLP assumed responsibility for LBIE's affairs (as at 9th December 2008).
On the 15th of September 2008, LEHMAN BROTHERS HOLDING INC. ("LBHI") announced that it has filed for Chapter 11 bankruptcy protection in the US. Thus, LBHI is debtor in the Chapter 11 bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of New York captioned In re Lehman Brothers Holdings Inc., et al., Chapter 11 Case Number 08-13555 (JMP).

[2] The Company has used the right of set-off of the estimated amount owed by LBIE to the Company regarding terminated ISDA transactions (i.e. USD 1,973,422.19) against the estimated amount owed by the Company to LBIE regarding GMRA transactions (i.e USD 16,660.67).
The Claim arises from this set-off is equal to USD 1,956,761.52 together with interest in USD from and including the termination date at the applicable rate (as defined in the ISDA Master Agreement and the GMRA Master Agreement entered into between the Company and LBIE).



• Indeed to the best of its knowledge and belief, the Board of Directors had considered that it was in the best interest of the Identified Shareholder, subject to their own personal status, to assign the Claim to ADI (the **"Assignee"**) subject to a commitment of the Assignee to repay the recoveries to the Identified Shareholders (the **"Claw Back Provision"**) pro rata according to the terms and conditions mentioned in the enclosed copy of the assignment agreement (the **"Assignment Agreement"**). The Board of Directors had considered different organisations to monitor the Claim and to recover monies accordingly, and concluded that such assignment to the Assignee with the insertion of the Claw Back Provision in the Assignment Agreement was in the best interest of the Identified Shareholders. ADI, in its capacity as Investment Manager, considers also that it is in the best interests of the Identified Shareholders (including you) for the Claim to have been assigned subject to the Claw Back Provision.

• Accordingly the enclosed copy of the Assignment Agreement has been approved by the Resolution of the Board of Directors and duly executed.

• Thus, the Assignee agrees to repay to the Beneficiaries (i.e. the Identified Shareholders) all of the recoveries distribution from (i) LBIE, (ii) its successors or affiliates on account of the Claims or (iii) in the event of transfer of the Claims, which distribution or bid price shall be transferred to the Beneficiaries. Please note that the Assignee agrees to repay all of the recoveries with reduction of any duly proven expenses and costs (including reasonable legal fees and costs) incurred by it in order to assert the rights of the Claims.

• As mentioned in the Assignment Agreement, the Assignee expressly undertakes to comply with the Claw-Back Provision but shall not be responsible for the amount of recoveries or the absence of recoveries and will act in good faith and in a reasonable manner in order to assert the rights of the Claims. **The Assignee does not, will not, and its undertaking under the Assignment Agreement does not purport to give an express or implied guarantee, in whole or in part, regarding the distribution of recoveries and the amount of recoveries.**

• **The Board of Directors and the Assignee consider that each and every Beneficiaries should seek and obtain professional tax, financial and legal advice as to the merits of receiving its part of recoveries according to the Claw Back for itself and disclaim accordingly any and all liabilities as to the potential impact of receiving the proceeds of the implementation of the Claw Back and its direct or indirect consequences.**

• The Board of Directors would be grateful for your view on this scheme and your intention to benefit *in fine* from this Claw Back. To the extent that you intend to benefit from this Claw Back, could you please provide us, within one month from the receipt of this letter, with a copy of the attached Assignment Agreement by affixing the signature of your duly authorised representative together with these two phrases above the signature of the authorised representative: "*In my capacity as a former shareholder in the Feeder Fund who had redeemed its shares in the Feeder Fund on the basis of the March 2009 Net Asset Value Per Share of the Company, I acknowledge that I have received a copy of this Assignment Agreement and I intend to benefit from the Claw Back Provision subject to the terms and conditions of the latter agreement and the letter sent by the Board of Directors of the Master Fund to me on the 21st of October 2009. I have carefully reviewed and understood the terms and conditions of these documents and I expressly acknowledge to the Company, its Board of Directors and ADI-Alternative Investments that neither of them gives any express or implied guarantee, in whole or in part, regarding the distribution of any amount under the Claw-Back*".

- Please note that if you fail to respond within one month from the receipt of this letter, you will be deemed to have waived your right to benefit from the Claw Back and you will be deemed to have refused to benefit from the Assignment Agreement and accordingly you will not be in a position to benefit from the Claw Back Provision.

- To the extent that you refuse *in fine* to receive the proceeds from the Claw Back Provision, the Assignee will consider that you waive your right to benefit from the Claw Back. Please note that the only consequence attached to this refusal is that you will not be in a position to benefit from the Assignment Agreement and accordingly you will not be in a position to benefit from the Claw Back Provision. Only the Identified Shareholders who will have agreed to benefit from the aforesaid Claw Back Provision (the "Accepting Identified Shareholders") will participate to the distribution of the net proceeds of the Claims.

- Given the fact that the Board of Directors has approved the Assignment Agreement and executed it, the Investment Manager is organizing (1) the transfer of the Claim (2) and the transfer of the assigned assets from the Company to the Assignee.

- The net proceeds of the Claims will be distributed to the Accepting Identified Shareholders on a *prorata basis* based on their holdings in the Feeder Fund at the date of March NAVPS.

- In the event that there is no Accepting Identified Shareholders *in fine*, the net proceeds of the Claims will be paid to the holder of the Founder Share of the Company.

- We would be grateful if you could arrange for the Assignee to be informed of any event which could prejudice in any manner the ability to identify you in the future. Moreover, we would appreciate you arrange for any of your successor/assigne or transferee to provide us with its contact details and a document evidencing that such event occurred.

Yours sincerely,

**KALLISTA CREDIT ARBITRAGE**
**MASTER FUND LIMITED**

*Enclosed.*

