Hearing Date and Time: January 11, 2012 at 10:00 a.m. (ET)
Objection Date and Time: January 4, 2012 at 4:00 p.m. (ET)

James H.M. Sprayregen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

—and—

David R. Seligman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for the Liquidators of Lehman Brothers Australia Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : |
| | : Case No. 08-13555 (JMP) |
| Debtors. | : |
| | : (Jointly Administered) |
| | : |

**LIMITED OBJECTION OF THE LIQUIDATORS OF LEHMAN BROTHERS
AUSTRALIA LIMITED TO DEBTORS' MOTION, PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND
STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

Stephen Parbery and Marcus Ayres, in their capacity as the court-appointed liquidators (the "Australia Liquidators") of Lehman Brothers Australia Limited ("LBA"), a company organized under the laws of Australia and a wholly-owned, indirect subsidiary of Lehman Brothers Holdings Inc. ("LBHI"), hereby file this limited objection (the "Limited Objection") to the Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay

K&E 20885218

of Avoidance Actions and Grant Certain Related Relief [Docket No. 23674] (the "Motion").[1] In support of this Limited Objection, the Liquidators respectfully state as follows:

## BACKGROUND

1. On September 26, 2008 and pursuant to § 436a of the *Corporations Act* 2001 (Cth), the directors of LBA appointed Mr. Stephen Parbery and Mr. Neil Singleton as Joint and Several Administrators of LBA. On October 2, 2009, Justice Rares of the Federal Court of Australia ordered that LBA be placed in liquidation (proceeding no. NSD 538 of 2009). On April 14, 2011, Marcus Ayres was appointed Administrator to LBA by the Federal Court of Australia, replacing Neil Singleton, who had resigned from this position on the same date. The Australia Liquidators are fiduciaries charged with the statutory obligation to wind up and liquidate the estate for LBA for purposes of distributing the net proceeds to LBA's creditors.

2. One of the significant assets in the LBA estate are certain notes issued as part of the "Dante Programme," a structured products program arranged by Lehman Brothers International (Europe). In connection with the Dante Programme, certain special purpose entities ("SPVs") issued various series of credit-linked synthetic portfolio notes ("Notes") to investors (the "Noteholders"). The performance of the Notes are linked to various credit-default swap transactions that were executed between Lehman Brothers Special Financing, Inc. ("LBSF") and the various SPVs, with LBHI serving as guarantor, or credit enhancer, to LBSF. The funds raised from the issuance of the Notes were placed into various investments and serve as collateral (the "Collateral") securing both the SPVs' obligations to the Noteholders and the SPVs' obligations to LBSF pursuant to the credit-default swap transactions. The Dante Programme Notes held by LBA have a collective face value of AUS $17,847,000.00.

---

[1]  Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

K&E 20885218

3. LBA also served as placement agent for the sale of certain Dante Programme Notes to third-party purchasers (the "Australian Noteholders"). To date, the Australian Noteholders, most of whom are pension funds, religious entities, local government entities and charities, have filed over 225 claims against LBA in Australia, in connection with LBA's role as placement agent for Dante Programme Notes. Such claims allege negligence, misleading and deceptive conduct, breaches of fiduciary obligations and breach of contract against LBA in connection with the sale of such Notes. The amount of damages that may be alleged by the Australian Noteholders against LBA depends primarily on whether such Noteholders recover the full amount due under the Notes. The Australia Liquidators understand that the principal amount invested by the Australian Noteholders in the Dante Programme was approximately $250 million.

4. The Australia Liquidators understand that the Collateral supporting the Dante Programme Notes is significant, but BNY Mellon Corporate Trustee Services Limited, the Dante Programme Collateral Trustee (the "Dante Collateral Trustee"), has not distributed any of that Collateral to the investors due to the conflicting judgments in the so-called Dante Programme "flip clause" litigation pending in the United Kingdom and this Court.[2] That is why the Australian Noteholders have asserted contingent deficiency claims against the LBA estate for amounts due after whatever recoveries – if any – they may receive from the relevant Collateral once the Dante Programme "flip clause" dispute is finally resolved.

5. The Australia Liquidators estimate that, using a "left in hand" test for mark to market valuation, the Australian Noteholders' claims could range from an amount as low as AUS $3 million to an amount exceeding AUS $20 million, depending on the outcome of the "flip clause" dispute and

---

[2] This Court is well aware of the Dante Programme and the associated "flip clause" litigation, and LBA need not recite history of that Programme or the "flip clause" litigation currently pending in this Court and the courts in the United Kingdom. See *Order Granting Pl. Lehman Bros. Special Fin. Inc.'s Mot. for Summ. J.*, In re Lehman Bros. Holdings, Inc., Case No. 09-01242 (Bankr. S.D.N.Y. July 19, 2010) [Docket No. 100]; *Order Granting Debtor's Mot. for Approval of a Settlement Among Lehman Bros. Special Fin. Inc., BNYU Corp. Tr. Serv. Ltd., & Others, Relating to Certain Swap Transactions with Saphir Fin. Pub. Ltd. Co.*, In re Lehman Bros. Holdings, Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Dec. 16, 2010) [Docket No. 13511] (approving settlement of "flip clause" dispute between LBHI and Perpetual).

3

whether those claims should be reduced by the amount of any relevant Collateral. However, the Australian Noteholders have filed claims against the LBA estate for significantly higher amounts, often for the full face value of their Notes, given there remains uncertainty regarding the "flip clause" dispute and whether they will recover any of the Collateral at all.

6. On September 14, 2010, LBSF commenced adversary proceeding no. 10-3545 (JMP) (the "September 14 Adversary Proceeding") seeking, *inter alia*, a declaratory judgment against the Dante Collateral Trustee that the Dante Programme "flip clauses" were unenforceable *ipso facto* clauses. This Court stayed the September 14 Adversary Proceeding, along with other Avoidance Actions, as part of its initial stay order of October 20, 2010 ("Initial Stay Order"). On June 16, 2011, this Court further stayed the September 14 Adversary Proceeding as part of its orders until January 20, 2012 ("Stay Extension Order")

## **LIMITED OBJECTION**

7. By their Motion, the Debtors seek to extend the stay of the September 14 Adversary Proceeding for an additional six months to July 20, 2012 on the grounds that the Stay has enabled the Debtors to focus on engaging in alternative dispute resolutions of various derivatives claims without "the enormous costs and burdens to all parties and the Court associated with prematurely pursuing active litigation in the Avoidance Actions."[3] While the Debtors certainly have made substantial progress to date resolving a significant number of derivatives claims with the Stay in place, the Australia Liquidators submit that now is the time, particularly with the Debtors' largely consensual plan of reorganization having been confirmed a month ago, for the Stay to be lifted and for the September 14 Adversary Proceeding to move forward, for the following three reasons.

---

[3] Motion, ¶6

4

8.      *First*, the Stay no longer serves whatever purpose it may have served in the past. The Debtors sought the Stay to focus on settling derivatives claims pursuant to the Derivatives ADR Procedures without the burden of "premature litigation." However, according to the Debtors' own submissions, the pace of settlement of derivatives claims pursuant to the Derivatives ADR Procedures has slowed significantly. As at September 17, 2009, the Debtors had identified approximately 250 derivatives counterparties.[4] As of March 31, 2011, the Debtors had settled 58% of their Derivatives Contracts (equating to 150 of the original 250 derivatives counterparties),[5] and as of December 12, 2011, the Debtors had settled with 173 derivatives counterparties.[6] The slowdown in settlement pace makes sense, as the Debtors likely resolved the "low hanging fruit" and now have turned to more difficult Derivatives Contracts where settlements pursuant to the Derivatives ADR Procedures may not be readily achievable, if at all, without litigation and judicial guidance. To date the Stay may have furthered its desired effect, but at this point it is clear that the remaining Derivatives Contracts that could have been readily settled would have been settled. For the September 14 Adversary Proceeding claims not capable of alternative dispute resolution, the benefits of maintaining the Stay are far outweighed by the prejudice that parties in interest suffer from the Stay remaining in place for another six months (equating to a stay of almost two years since it was implemented). Even the Debtors have acknowledged that not all of the disputes can be settled consensually[7] and some will have to be litigated. Now that the Debtors have confirmed their plan, if the parties to any particular Derivatives Contract wish to commence or continue to engage in

---

[4] Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts Docket No 5207, ¶2 , page 2

[5] Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holding Inc. and its affiliated debtors Pursuant to Section 1125 of the Bankruptcy Code Docket No 19629, p34.

[6] Motion, ¶12

[7] ADR Procedures Order Dated 9/17/09 Twenty-fifth Status Report dated December 12, 2011 Docket No 23207

5

Derivatives ADR procedures, then that should be done on a voluntary basis. Otherwise, the Stay of the September 14 Adversary Proceeding should not be extended yet again.

9.     Second, regarding the Stay of the September 14 Adversary Proceeding with respect to the Dante Programme Notes, the maintenance of the Stay is all the more troubling because in the over 15 months since the Stay has been in place – supposedly to allow the Debtors time to focus on alternative dispute resolution – the Debtors have not taken a single step towards initiating Derivatives ADR Procedures regarding the Dante Programme flip clause dispute. It is clear that if in 15 months the Debtors have not initiated Derivatives ADR Procedures regarding the Dante Programme flip clause, the Debtors simply have no intention of doing so. The Liquidators submit that it is inappropriate for the Stay to remain in place for the supposed benefit of avoiding and resolving supposed "premature litigation" when it is absolutely clear that the Debtors have no intention of availing themselves of the Derivatives ADR Procedures to resolve those disputes. Unless the Debtors are willing to commit to utilizing immediately the Derivatives ADR Procedures with respect to the Dante Programme flip clause dispute, the Stay should be lifted.

10.    Third, contrary to the assertions by the Debtors, at least with respect to the Australia Liquidators, the maintenance of the Stay continues to prejudice the LBA estate and its creditors. Without a legal determination as to whether the Dante Programme flip clause dispute, the Australia Liquidators cannot begin to meaningfully determine the size of the claims pool in the LBA proceeding and thus cannot determine how the LBA estate should be distributed to LBA's creditors. For as long as the flip clause dispute is unresolved, the winding up of the LBA estate cannot be completed and any possibility for the development of a LBA scheme of arrangement among LBA estate creditors and stakeholders is significantly diminished.

6

11. In contrast, lifting the Stay in the September 14 Adversary Proceeding – at least with respect to the Dante Programme flip clause dispute – not only benefits the LBA estate, but causes no prejudice to the Debtors. As this Court is aware, this Court already ruled on the Dante Programme flip clause dispute on summary judgment in connection the Debtors' adversary proceeding no. 09-01242 (JMP) against Perpetual. If the September 14 Adversary Proceeding proceeds, the parties likely would submit similar briefs and ask this Court to adjudicate the same contractual language on summary judgment. In fact, the Debtors have claimed as much in Adversary Proceeding 10-03547 (JMP).[8] At this point – where the Debtors have failed to engage in the Derivatives ADR Procedures in the over 15 months since commencing the September 14 Adversary Proceeding and after the Debtors have confirmed their plan – a summary judgment briefing schedule hardly seems like the costly and burdensome "premature litigation" that the Stay was designed to avoid.

## CONCLUSION

12. For the foregoing reasons, the Australia Liquidators respectfully request that the Court (a) modify the Motion such that it does not include an extension of the stay applicable to the September 14 Adversary Proceeding, and (b) grant such other and further relief as the Court deems proper.

---

[8] See the First Amended Complaint, Docket no 8 at ¶ 4, where the Debtors plead *"In a prior adversary proceeding in this consolidated Chapter 11 case, the Court held that substantially similar priority modification provisions were unenforceable ipso facto clauses under Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code and that any attempt to enforce such provisions would violate the automatic stay triggered by LBSF's bankruptcy filing… Lehman Bros. Special Financing, Inc. v. BNY Corp. Trustee Svcs, Ltd., 422 B.R. 407, 420-21 (Bankr. S.D.N.Y 2010) (Peck, J.) ("LBSF v. BNY"). The Court further held that the priority modification provisions do not fall within the limited "safe harbor" for ipso facto clauses in swap agreements pursuant to Section 560 of the Bankruptcy Code because, among other reasons, the safe harbor applies only to "the liquidation, termination or acceleration" of swap agreements or the "offset or net out" of the parties' positions and does not apply to modifications of a debtor's payment rights. Id. at 421".* See also ¶5 and ¶30 where the Debtors plead *"The central issues raised in this Complaint regarding whether (i) the Priority Modification Provisions are unenforceable ipso facto clauses and (ii) application of the Priority Modification Provisions would violate the automatic stay have already been resolved by the Court. The terms of the applicable contracts and the relevant conduct of the Defendants are substantially similar with respect to each of the 47 CDOs. Therefore, the class claims principally, if not exclusively, raise legal issues (including, in particular, the application of the Court's prior ruling in LBSF v. BNY) rather than factual issues."*

| | |
|---|---|
| Dated:  January 4, 2012<br>       New York, New York | */s/ James H.M. Sprayregen*<br>James H.M. Sprayregen<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York  10022-4611<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br><br>And<br><br>David R. Seligman (admitted *pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois  60654-3406<br>Telephone:  (312) 862-2000<br>Facsimile:   (312) 862-2200<br><br>*Counsel for the Liquidators of Lehman Brothers Australia Limited* |

K&E 20885218