Hearing Date: January 11, 2012 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                             :    **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :    **08-13555 (JMP)**
                                                  :
                         Debtors.                 :    (Jointly Administered)
------------------------------------------------------------------x

**DEBTORS' LIMITED RESPONSE TO MOTION OF BENISASIA INVESTMENT
AND PROPERTIES LIMITED FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), for their response to the motion of Benisasia Investment and Properties Limited ("Benisasia"), dated December 20, 2011, for relief from the automatic stay extant in the Chapter 11 Cases pursuant to section 362 of the Bankruptcy Code to permit Benisasia to prosecute certain causes of action in state or federal court (the "Motion") [ECF No. 23614], respectfully represent:

**Background**

1.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this voluntary cases in the United States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for Region 2 appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code.

3. On December 6, 2011, the Court entered an order [ECF No. 23023] confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan"). As of the date hereof, the Plan has not become effective.

## The Bahamian Properties

4. The properties that underlie this dispute are two hotels located in the Commonwealth of the Bahamas (the "Properties"). The first hotel, known as the Paradise Island Harbour Resort, is owned by Genwood Paradise Ltd. ("GPL"). The second hotel, known as the Nassau Palm Resort, is owned by Genwood Nassau Ltd. ("GNL," together with GPL, the "Property Owners," and collectively with LBHI and Benisasia, the "Parties"). Prior to the Commencement Date, LBHI provided financing to the Property Owners that was secured by certain mortgages on the Properties (the "Loans"). Each of the Property Owners subsequently defaulted on its respective obligations under the Loans.

5. In order to avoid the expense and delay of foreclosing on the Properties, LBHI orchestrated a marketing process on behalf of the Property Owners. Proceeds from the sale of the Properties were to flow directly to LBHI in partial satisfaction of the amounts due to LBHI under the Loans. Benisasia was the highest bidder for the Properties and LBHI, on behalf of the Property Owners (under powers of attorney granted to LBHI by the Property Owners), and

Benisasia entered into certain contracts for sale on or about February 11, 2011 (the "Sale Agreements").

6. Pursuant to the Sale Agreements, Benisasia was required to deposit the aggregate amount of approximately $862,500 into an escrow account to secure Benisasia's obligations under the Sale Agreements (the "Escrow Account"). The Sale Agreements also contained a number of conditions to closing including (i) the requirement that Benisaisa obtain all approvals required by the Bahamas Investment Authority and the Central Bank of the Bahamas necessary for Benisasia to acquire the Properties (¶3(c) of the Sale Agreements); (ii) the requirement that the closing dates for the sales occur no later than the date that was 90 days after February 11, 2011, subject to the Property Owners' unilateral right to extend the closing dates (¶4(a) of the Sale Agreements);[1] and (iii) a provision expressly providing that the failure of the Bahamas Department of Valuation to issue a letter stating that all real property taxes had been paid was not a basis for Benisasia to refuse to close (¶5(a)(xiii) of the Sale Agreements). Paragraph 5(a)(xiii) of the Sale Agreements also provided that, in such instance, the real property taxes could be escrowed pending the Property Owners' reasonable efforts to obtain the tax clearance letter from the Department of Valuation or, in the alternative, the Property Owners could, in their sole discretion, opt to pay any real property taxes from the proceeds of the sale immediately after the closing.

7. Benisasia failed to obtain the required approvals by the applicable closing dates. Instead, Benisasia and the Property Owners (as applicable) entered into a series of deeds of addendum that ultimately (i) extended the closing date to July 19, 2011, (ii) required Benisasia to provide the Property Owners with written notice of their successful acquisition of all required

---

[1] Paragraph 4(b) also allowed Benisasia to adjourn the closing dates one time for an additional 45 days subject to the deposit of additional funds into the Escrow Account.

approvals by no later than July 12, 2011 and (iii) expressly provided that the Property Owners were entitled to retain the funds in the Escrow Account as liquidated damages in the event that Benisasia failed to obtain the required approvals and provide written evidence thereof to the Property Owners prior to July 12, 2011 (the "Deeds of Addendum").  In addition, Benisasia and the Property Owners (as applicable) delivered letters to the escrow agent confirming that a failure to timely close would result in the termination of the Sale Agreements and that the escrow agent was authorized to transfer any funds contained in the Escrow Account to LBHI unless the escrow agent received contrary written instructions from both Benisasia and the Property Owners (the "Escrow Instruction Letters").

8.     Benisasia failed to meet the July 12, 2011 deadline to obtain the required approvals and provide written evidence thereof to the Property Owners.  Accordingly, on June 13, 2011, LBHI, on behalf of the Property Owners, delivered to Benisasia written notices of Benisasia's failure to perform and the consequent termination of the Sale Agreements.  LBHI also delivered a notice of same to the escrow agent and requested that the funds in the Escrow Account be released to LBHI.

9.     Notwithstanding its consent to the terms of Deeds of Addendum and Escrow Instruction Letters, Benisasia delivered a notice to the escrow agent disputing LBHI's right to the funds in the Escrow Account.  To date, such funds have not been released to LBHI.

**The Dispute Among the Parties**

10.    The Parties have been unable to reach a consensual resolution of their dispute over LBHI's entitlement to the funds in the Escrow Account.  On August 30, 2011, without seeking prior leave from this Court, Benisasia filed an action (the "Ontario Action") in the Ontario Superior Court of Justice in Ontario, Canada against the Property Owners, LBHI and LAMCO LLC, a non-Debtor subsidiary of LBHI (collectively, the "Ontario Defendants").  On

November 22, 2011, the Ontario Defendants filed a motion seeking to stay or dismiss the Ontario Action. On or about December 12, 2011, Benisasia voluntarily withdrew the Ontario Action.

11. LBHI does not believe that a consensual resolution of the dispute between the Parties over their respective rights to the funds contained in the Escrow Account is likely. Accordingly, LBHI, on behalf of itself and on behalf of the Property Owners, intends to commence an action to enforce its rights under the Sale Agreements, the Deeds of Addendum, and any other relevant documents in the Bankruptcy Court or the Commercial Division of the New York State Supreme Court prior to the return date for the Motion (the "LBHI Action"). LBHI does not contest Benisasia's right to assert any related counterclaims or defenses that it may have in the LBHI Action.

12. Further, to the extent that Benisasia seeks to bring a separate action, LBHI does not object to limited relief from the automatic stay so long as such action is brought in the state or federal courts of the State of New York. As Benisasia noted in the Motion, one of the considerations for determining whether cause, as such term is used in section 362(d)(1) of the Bankruptcy Code, exists for relief from the automatic stay is the interests of judicial economy and the expeditious and economical resolution of litigation. *In re Sonnax*, 907 F.2d 1280, 1286 (2d Cir. 1990). While the most expeditious and economical venue for the resolution of this dispute is likely the LBHI Action, if separate actions are required, both actions should be in the same jurisdiction so that the Parties are relieved from the unnecessary expense of retaining local counsel in two different jurisdictions to litigate a single dispute.[2]

---

[2] LBHI reserves its right to seek to consolidate any action commenced by Benisasia with the LBHI Action.

**Conclusion**

13.     LBHI does not object to the allowance of limited relief from the automatic stay, consistent with the limitations described herein, and requests that it be granted such other and further relief as is just.

Dated:  January 4, 2011
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession