> **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS NOTICE OF DEBTORS' TWO HUNDRED FORTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**
>
> **IF YOU HAVE QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL, ERIKA DEL NIDO, AT 212-310-8323.**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                    :     Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :     08-13555 (JMP)
                                         :
                         Debtors.        :     (Jointly Administered)
-------------------------------------------------------------------x
```

## NOTICE OF HEARING ON DEBTORS' TWO HUNDRED FORTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

**PLEASE TAKE NOTICE** that on January 5, 2012, Lehman Brothers Holdings

Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (collectively, the "Debtors"), filed their two hundred forty-seventh omnibus objection

to claims (the "Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims"), and that a

hearing (the "Hearing") to consider the Debtors' Two Hundred Forty-Seventh Omnibus

Objection to Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **February 22, 2012 at 10:00 AM (prevailing Eastern Time),** or as soon thereafter as counsel may be heard.

   **PLEASE TAKE FURTHER NOTICE** that any responses to the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.); and (iv) attorneys for the Official Committee of Unsecured Creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), so as to be so filed and received by no later than **February 6, 2012 at 4:00 PM (prevailing Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims or any claim set forth thereon, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: January 5, 2012
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

### DEBTORS' TWO HUNDRED FORTY-SEVENTH
### OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS TWO HUNDRED FORTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL, ERIKA DEL NIDO, AT 212-310-8323.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. ("LCPI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (collectively, the "Debtors"), respectfully represent as follows:

## **Relief Requested**

1.      The Debtors file this omnibus objection to claims (the "Two Hundred Forty-Seventh Omnibus Objection to Claims"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 6664] (the "Procedures Order"), seeking to disallow and expunge certain claims for which the Debtors have no liability.

2.      The proofs of claim listed on Exhibit A annexed hereto (collectively, the "No Liability Claims") were filed against LCPI based upon alleged or potential liabilities arising out of certain credit agreements pursuant to which LCPI was lender, collateral agent, or administrative agent.  With respect to each of the loans referenced in the No Liability Claims, LCPI either transferred its agency role or sold its interest in the loan or there is no ongoing obligation of LCPI with respect to any credit agreement with the claimant.  Because LCPI is not liable for obligations arising under such agreements and no damages have actually been suffered, the No Liability Claims should be expunged and disallowed in their entirety.

## **Jurisdiction**

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

4.      Commencing on September 15, 2008 and periodically thereafter, (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On January 14, 2010, the Court entered the Procedures Order, which authorizes the Debtors, among other things, to file omnibus objections to up to 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

7.      On December 6, 2011, the Court entered the order confirming the Modified Third Amended Joint Chapter 11 Plan of LBHI and its Affiliated Debtors [Docket No. 23023].

**The No Liability Claims**

***West Corporation***

8.      West Corporation ("West") filed a proof of claim, claim number 14198, against LCPI in the amount of no less than $10 million on September 16, 2009 (the "West Claim").  The West Claim arises from that certain credit agreement dated as of October 24, 2006, as amended, among West, LCPI, and certain other lenders (the "West Credit Agreement").

3

Pursuant to the West Credit Agreement, LCPI and certain other lenders agreed to make certain term loans, revolving credit loans in an amount not to exceed $250 million, and certain "swing line" loans in an amount not to exceed $30 million. Additionally, LCPI agreed to act as administrative agent. In an amendment to the West Credit Agreement, dated as of August 6, 2009 and effective as of August 10, 2009, Wachovia Bank, National Association ("Wachovia") replaced LCPI as the administrative agent and swingline lender; however, at that time LCPI remained a party to the West Credit Agreement as a revolving credit lender.

9.       The West Claim alleges that LCPI is liable for certain damages suffered by West due to LCPI's failure to fund certain loans pursuant to the West Credit Agreement. Pursuant to the Assignment and Assumption Agreement, dated as of October 5, 2010, a copy of which is attached hereto as Exhibit B (the "West Assignment Agreement"), among LCPI, West, as borrower, Morgan Stanley Bank, N.A., as assignee, Goldman Sachs Bank USA, as assignee, and Wells Fargo Bank, National Association, as assignee, among others, LCPI assigned its positions in the West Credit Agreement to the aforementioned assignees. Inasmuch as no damages have arisen under the West Credit Agreement and LCPI is no longer a party to the West Credit Agreement, LCPI is not liable to West, and the West Claim should be disallowed and expunged in its entirety.

**_Wachovia_**

10.       Wachovia filed a contingent proof of claim, claim number 29860, against LCPI on September 22, 2009 (the "Wachovia Claim"). The Wachovia Claim arises from certain credit agreements, including the West Credit Agreement, to which Wachovia and LCPI are parties and under which Wachovia is administrative agent, swingline lender, and/or an issuer of a letter of credit (collectively, the "Wachovia Credit Agreements"). The Wachovia Claim asserts

4

that, pursuant to the Wachovia Credit Agreements, LCPI is obligated to reimburse Wachovia for

certain disbursements, to purchase participations in letters of credit issued by Wachovia, and to

indemnify Wachovia.  The Wachovia Claim was filed as a contingent proof of claim for damages

that might arise under the Wachovia Credit Agreements.  The Debtors have undertaken an

analysis of each of the Wachovia Credit Agreements and have made a determination that there

are no outstanding obligations of LCPI under any of the Wachovia Credit Agreements or related

documents.  The Wachovia Claim should, therefore, be disallowed and expunged in its entirety.

### *Sequa Corporation*

11.     Sequa Corporation ("Sequa") filed a contingent proof of claim, claim

number 15940, against LCPI on September 18, 2009 (the "Sequa Claim").  The Sequa Claim

arises from that certain credit agreement, dated as of December 3, 2007, among Sequa, as

borrower, LCPI, as administrative agent, collateral agent, and swingline lender, and certain other

parties (the "Sequa Credit Agreement").  Section 8 of the Amendment, Resignation, Waiver,

Consent and Appointment Agreement, dated as of October 14, 2011, among LCPI, Barclays

Bank PLC  ("Barclays"), and Sequa, among others (the "Sequa Amendment Agreement"), a

copy of which is attached hereto as Exhibit C, provides, in pertinent part, as follows:

> Each of [Sequa] and the other Loan Parties hereby unconditionally
> and irrevocably waives all claims, suits, debts, liens, losses, causes
> of action, demands, rights, damages or costs, or expenses of any
> kind, character or nature whatsoever, known or unknown, fixed or
> contingent, which any of them may have or claim to have against
> Lehman (whether in its capacity as an agent or lender) or its
> agents, employees, officers, affiliates, directors, representatives,
> attorneys, successors or assigns (collectively, the "Released
> Parties") to the extent arising out of or in connection with the Loan
> Documents (collectively, the "Claims").  Each of [Sequa] and the
> other Loan Parties further agrees forever to refrain from
> commencing, instituting or prosecuting any lawsuit, action or other
> proceeding against any Released Parties with respect to any and all
> of the foregoing described waived, released, acquitted and

5

> discharged Claims or from exercising any right or recoupment of
> setoff that it may have under a master netting agreement or
> otherwise against any Released Party with respect to Obligations
> under the Loan Documents.  Each of the Released Parties shall be
> a third party beneficiary of this Agreement.

Pursuant to the foregoing provision, Sequa released all claims, including the Sequa Claim, against LCPI.  Furthermore, pursuant to Section 1 of the Sequa Amendment Agreement, LCPI transferred its agency and lender roles to Barclays.  Inasmuch as all claims that may have arisen under the Sequa Credit Agreement have been released and LCPI is no longer a party to the Sequa Credit Agreement, LCPI is not liable to Sequa, and the Sequa Claim should be disallowed and expunged in its entirety.

### *OFS Funding, LLC*

12.     OFS Funding, LLC ("OFS") filed a contingent claim, claim number 33417, against LCPI on September 21, 2009 (the "OFS Claim").  The OFS Claim arises from three credits agreements under which LCPI was administrative agent, collateral agent, and swingline lender (the "OFS Credit Agreements").  LCPI transferred its agency and lender roles in the OFS Credit Agreements to Barclays pursuant to the following agreements: (i) the Amendment, Resignation, Waiver, Consent and Appointment Agreement, dated as of January 31, 2011, among LCPI, Barclays, Wesco Aircraft Hardware Corp., as borrower, and Wesco Holdings, Inc., as guarantor, a copy of which is attached hereto as Exhibit D; (ii) the Amendment, Resignation, Waiver, Consent and Appointment Agreement, dated as of January 31, 2011, among LCPI, Barclays, Wesco Aircraft Hardware Corp., as borrower, and Wesco Holdings, Inc., as guarantor, a copy of which is attached hereto as Exhibit E; and (iii) the Amendment, Resignation, Waiver, Consent and Appointment Agreement, dated as of August 24, 2010, among LCPI, Barclays, Veyance Technologies, Inc., as borrower, among others, a copy of

6

which is attached hereto as <u>Exhibit F</u>.  Inasmuch as no damages have arisen under the OFS

Credit Agreements and LCPI is no longer a party to the OFS Credit Agreements, LCPI is not

liable to OFS, and the OFS Claim should be disallowed and expunged in its entirety.

### **The No Liability Claims Should Be Disallowed and Expunged**

13.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  A proof

of claim is "deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  If an

objection refuting at least one of the claim's essential allegations is asserted, the claimant has the

burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389

(Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr.

LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524,

539 (Bankr. S.D.N.Y. 2000).

14.    In their review of the claims filed on the claims register in these chapter 11

cases, the Debtors have identified the No Liability Claims as claims based upon potential or

alleged damages for which LCPI is not liable, because LCPI is no longer a party to the applicable

credit agreements and/or LCPI no longer has any obligation arising under the credit agreements.

15.    Unless the No Liability Claims are disallowed and expunged, parties who

do not hold valid claims against the Debtors' estates may nonetheless recover from the Debtors.

The Debtors respectfully request the Court enter an order disallowing and expunging the No

Liability Claims in their entirety.

7

**Reservation of Rights**

16.    The Debtors reserve all rights to object on any basis to any No Liability

Claim as to which the relief requested herein is not granted.

**Notice**

17.    No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this objection, in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures [Docket No. 9635], on:  (i) each claimant listed on Exhibit A; (ii) the U.S. Trustee;

(iii) the attorneys for the Creditors' Committee; (iv) the Securities and Exchange Commission;

(v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of

New York; and (vii) all parties who have requested notice in these chapter 11 cases.  The

Debtors submit that no other or further notice need be provided.

18.    No previous request for the relief sought herein has been made by the

US_ACTIVE:\43891497\04\58399.0008

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: January 5, 2012
          New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x
In re                                                    :        **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                                         :
                            **Debtors.**                  :        **(Jointly Administered)**
----------------------------------------------------------------------x

**ORDER GRANTING DEBTORS' TWO HUNDRED**
**FORTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

Upon the two hundred forty-seventh omnibus objection to claims, dated January 5, 2012 (the "Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 6664], seeking disallowance and expungement of the No Liability Claims on the basis that the Debtors have no liability for such claims, all as more fully described in the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims; and due and proper notice of the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Debtors'

---

[1] Terms not defined herein shall have the same meaning ascribed to them in the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims.

Two Hundred Forty-Seventh Omnibus Objection to Claims establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Debtors' Two Hundred Forty-Seventh

Omnibus Objection to Claims is granted to the extent provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on Exhibit 1 are disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that the Debtors' Court-appointed claims agent is authorized and

directed to reflect the No Liability Claims as disallowed and expunged pursuant to this Order;

and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of, and all rights to object and defend on any basis are

expressly reserved with respect to, any claim listed on Exhibit A to the Two Hundred Forty-

Seventh Omnibus Objection to Claims that does not appear on Exhibit 1 annexed hereto; and it is

further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2012
　　　　New York, New York

2

**EXHIBIT A**

IN RE:  LEHMAN BROTHERS HOLDINGS INC., CASE NO:  08-13555 (JMP)

OMNIBUS OBJECTION 247:  EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | TOTAL CLAIM DOLLARS | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 1 | WEST CORPORATION ATTN:  JOE MULLIN 11808 MIRACLE HILLS DRIVE OMAHA, NE 68154 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/16/2009 | 14198 | $10,000,000* | No Liability Claim |
| 2 | WACHOVIA BANK, NATIONAL ASSOCIATION 301 SOUTH COLLEGE STREET CHARLOTTE, NC 28288

REBECCA HENDERSON 301 SOUTH COLLEGE STREET, SUITE 3000 MAC D1053-300 CHARLOTTE, NC 28288 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 9/22/2009 | 29860 | $0.00* | No Liability Claim |
| 3 | SEQUA CORPORATION 200 PARK AVENUE NEW YORK, NY 10166 ATTN:  JAMES P. LANGELOTTI, VICE PRESIDENT AND TREASURER CC:  DAVID S. DANTZIC, LATHAM WATKINS LLP 555 ELEVENTH STREET, NW SUITE 1000, WASHINGTON, DC 20004-1304 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/18/2009 | 15940 | $0.00* | No Liability Claim |
| 4 | OFS FUNDING LLC ATTN:  KATHI J. INORIO 2850 WEST GOLF ROAD, 5th FLOOR ROLLING MEADOWS, IL 60008 | 08-13900 (JMP) | Lehman Commercial Paper Inc. | 09/21/2009 | 33417 | $0.00* | No Liability Claim |

* - Indicates claim contains unliquidated and/or undetermined amounts

**EXHIBIT B**

## ASSIGNMENT AND ASSUMPTION

This Assignment and Assumption (this "Assignment and Assumption") is dated as of the Effective Date set forth below and is entered into by and between the Assignor (as defined below) and each Assignee (as defined below). Capitalized terms used in this Assignment and Assumption and not otherwise defined herein have the meanings specified in the Credit Agreement dated as of October 24, 2006 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), among West Corporation, as Borrower, each Lender from time to time party thereto, Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association., as Administrative Agent (in such capacity, the "Administrative Agent") and Swing Line Lender, Deutsche Bank Securities Inc. and Bank of America, N.A., as Syndication Agents, and Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association and General Electric Capital Corporation, as Co-Documentation Agents, receipt of a copy of which is hereby acknowledged by each Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to each Assignee, and each Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the facility identified below (including participations in any Letters of Credit or Swing Line Loans included in such facility) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

Notwithstanding any other provision hereof, all agreements, undertakings, representations, and warrantees made by any Assignee under this Assumption and Assumption (including Annex I) are made separately and only as to itself, and not jointly nor as to any other Assignee.

1.    Assignor (the "Assignor"):  Lehman Commercial Paper Inc.

2.    Assignee (the "Assignee"):  Morgan Stanley Bank, N.A.

3.    Borrower:  West Corporation

4.    Administrative Agent:  Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association

5.    Assigned Interest:

| Facility | Aggregate Amount of Commitment/Loans of all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/ Loans |
|---|---|---|---|
| Revolving Credit Facility | $250,000,000 | $7,031,250 | 2.81250000% |
| Term Loans | $ | $ | % |

Effective Date: October 5, 2010

1.     Assignor (the "Assignor"):  Lehman Commercial Paper Inc.

2.     Assignee (the "Assignee"):  Goldman Sachs Bank USA

3.     Borrower:  West Corporation

4.     Administrative Agent:  Wells Fargo Bank, National Association, successor
by merger to Wachovia Bank, National  Association

5.     Assigned Interest:

| Facility | Aggregate Amount of Commitment/Loans of all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/ Loans |
|---|---|---|---|
| Revolving Credit Facility | $250,000,000 | $7,031,250 | 2.81250000% |
| Term Loans | $ | $ | % |

Effective Date: October 5, 2010

1.    Assignor (the "Assignor"):  Lehman Commercial Paper Inc.

2.    Assignee (the "Assignee"):  Wells Fargo Bank, National Association

3.    Borrower:  West Corporation

4.    Administrative Agent:  Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National  Association

5.    Assigned Interest:

| Facility | Aggregate Amount of Commitment/Loans of all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/ Loans |
|---|---|---|---|
| Revolving Credit Facility | $250,000,000 | $14,062,500 | 5.62500000% |
| Term Loans | $ | $ | % |

Effective Date: October 5, 2010

The terms set forth in this Assignment and Assumption are hereby agreed to:

LEHMAN COMMERCIAL PAPER INC.,
as
Assignor

By: _____
Name:        **TINA CHEN**
Title:    **AUTHORIZED SIGNATORY**

The terms set forth in this Assignment and Assumption are hereby agreed
to:

LEHMAN COMMERCIAL PAPER INC.,
as
Assignor

By: _____
Name:
Title:

MORGAN STANLEY BANK, N.A., as an
Assignee

By: _____
Name: Sherrese Clarke
Title: Authorized Signatory

GOLDMAN SACHS BANK USA, as an
Assignee

By: _____
Name:
Title:

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as an
Assignee

By: _____
Name:
Title:

5

The terms set forth in this Assignment and Assumption are hereby agreed to:

LEHMAN COMMERCIAL PAPER INC.,
as
Assignor


By: _____
Name:
Title:



MORGAN STANLEY BANK, N.A., as an
Assignee


By: _____
Name:
Title:


GOLDMAN SACHS BANK USA, as an
Assignee

By: _____
Name:        MARK WALTON
Title:     AUTHORIZED SIGNATORY


WELLS FARGO BANK, NATIONAL
ASSOCIATION, as an
Assignee


By: _____
Name:
Title:

5

The terms set forth in this Assignment and Assumption are hereby agreed to:

LEHMAN COMMERCIAL PAPER, as Assignor

By: _____
Name:
Title:

MORGAN STANLEY BANK, N.A., as an Assignee

By: _____
Name:
Title:

GOLDMAN SACHS BANK USA, as an Assignee

By: _____
Name:
Title:

WELLS FARGO BANK, NATIONAL ASSOCIATION, as an Assignee

By: _Mark B Felke_____
Name: Mark B. Felke
Title: Managing Director

5

Consented to and Accepted:

Wells Fargo Bank, National Association,
successor by merger to
Wachovia Bank, National Association
as Administrative Agent

By: _____
Name:    Mark B. Felke
Title:    Managing Director

Consented to:

WELLS FARGO BANK, NATIONAL ASSOCIATION, as L/C Issuer

By: _____
Name:    Mark B. Felke
Title:    Managing Director

Wells Fargo Bank, National Association,
successor by merger to
Wachovia Bank, National Association
as Swing Line Lender

By: _____
Name:    Mark B. Felke
Title:    Managing Director

6

**WEST CORPORATION,**
as Borrower

By: _____

Name: Paul M. Mendlik
Title: Chief Financial Officer and
Treasurer

*[Signature Page to Lehman Assignment & Assumption Agreement]*

Annex 1

# CREDIT AGREEMENT[1]

## STANDARD TERMS AND CONDITIONS FOR
## ASSIGNMENT AND ASSUMPTION

1.    Representations and Warranties.

1.1    Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Credit Agreement, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, (iii) the financial condition of the Borrower or any of its Subsidiaries or Affiliates or any other Person obligated in respect of the Credit Agreement or (iv) the performance or observance by the Borrower or any of its Subsidiaries or Affiliates or any other Person of any of their obligations under the Credit Agreement.

1.2    Assignee. Each Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it satisfies the requirements, if any, specified in the Credit Agreement that are required to be satisfied by it in order to acquire the Assigned Interest and become a Lender, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement, together with copies of the most recent financial statements delivered pursuant to Section 6.01 thereof, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest on the basis of which it has made such analysis and decision independently and without reliance on any Agent or any other Lender, and (v) if it is a Foreign Lender, attached to this Assignment and Assumption is any documentation required to be delivered by it pursuant to Section 10.15 of the Credit Agreement, duly

---

[1] Capitalized terms used in this Assignment and Assumption and not otherwise defined herein have the meanings specified in the Credit Agreement dated as of October 24, 2006 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), among West Corporation, as Borrower, each Lender from time to time party thereto, Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association, as Administrative Agent (in such capacity, the "Administrative Agent") and Swing Line Lender, Deutsche Bank Securities Inc. and Bank of America, N.A., as Syndication Agents, and Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association and General Electric Capital Corporation, as Co-Documentation Agents

completed and executed by each Assignee; and (b) agrees that (i) it will, independently and without reliance on the Assignor, any Agent or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Agreement, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Agreement are required to be performed by it as a Lender.

2.      Payments.  From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to each Assignee for amounts which have accrued from and after the Effective Date.

3.      General Provisions.  This Assignment and Assumption shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  This Assignment and Assumption may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment and Assumption by facsimile or other electronic transmission shall be as effective as delivery of a manually executed counterpart of this Assignment and Assumption.  This Assignment and Assumption shall be construed in accordance with and governed by the law of the State of New York.

2

**EXHIBIT C**

EXECUTION COPY

### AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT

This Amendment, Resignation, Waiver, Consent and Appointment Agreement (this "Agreement") is entered into as of October 14, 2011, by and among Lehman Commercial Paper Inc. ("Lehman"), a debtor and debtor in possession under chapter 11 of the Bankruptcy Code (defined below) acting alone or through one or more of its branches as the Administrative Agent and Collateral Agent (in such capacities, the "Existing Agent") and as Swingline Lender (in such capacity, the "Existing Swingline Lender") under that certain Credit Agreement (as defined below), the Required Lenders party hereto, the Successor Agent (as defined below), the Successor Swingline Lender (as defined below), Sequa Corporation (the "Borrower") and each other Loan Party. Defined terms in the Credit Agreement have the same meanings where used herein, unless otherwise defined.

### RECITALS

WHEREAS, the Borrower, Blue Jay Acquisition Corporation ("Holdings"), the Lenders, the Existing Agent, Lehman Brothers Inc., Citigroup Global Markets Inc. and J.P. Morgan Securities Inc., as Syndication Agents, C.I.T. Leasing Corporation and HSBC Bank plc, as Documentation Agents, and Lehman Brothers Inc., Citigroup Global Markets Inc. and J.P. Morgan Securities Inc., as Joint Lead Arrangers and Joint Bookrunners, have entered into the Credit Agreement dated as of December 3, 2007 (as amended, restated, supplemented or otherwise modified, the "Credit Agreement");

WHEREAS, on October 5, 2008, the Existing Agent commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Existing Agent desires to resign as Administrative Agent and Collateral Agent and the Existing Swingline Lender desires to resign as Swingline Lender, in each case, under the Credit Agreement and the other Loan Documents;

WHEREAS, the Required Lenders desire to appoint Barclays Bank PLC as successor Administrative Agent and successor Collateral Agent (in such capacities together, the "Successor Agent") under the Credit Agreement and the other Loan Documents and the Borrower desires to ratify such appointment, and the Borrower desires to designate Barclays Bank PLC as successor Swingline Lender (in such capacity, the "Successor Swingline Lender") under the Credit Agreement and the other Loan Documents, and the Successor Agent and the Successor Swingline Lender wish to accept such appointments;

WHEREAS, the Loan Parties party to the Credit Agreement, the Required Lenders and each of the Revolving Lenders wish to amend the provisions of the Credit Agreement relating to the Revolving Credit Loans, as provided herein; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.    Agency Resignation, Waiver, Consent and Appointment.

(a)    As of the Effective Date (as defined below), (i) the Existing Agent hereby resigns as the Administrative Agent and the Collateral Agent as provided under *Section 9.9 (Successor Agents)* of the Credit Agreement and shall have no further obligations under the Loan Documents

in such capacities; (ii) the Existing Swingline Lender hereby resigns as the Swingline Lender under the Credit Agreement and shall have no further obligations under the Loan Documents in such capacity, (iii) the Required Lenders hereby appoint Barclays Bank PLC as successor Administrative Agent and Collateral Agent under the Credit Agreement and the other Loan Documents; (iv) the Borrower and the Required Lenders hereby waive any notice requirement provided for under *Section 9.9 (Successor Agents)* of the Credit Agreement in respect of such resignation or appointment and the requirement in *Section 9.9 (Successor Agents)* that the successor agent must be selected from among the Lenders; (vi) the Borrower and the Required Lenders hereby consent to the appointment of the Successor Agent; (vi) Barclays Bank PLC hereby accepts its appointment as Successor Agent; (vii) the Successor Agent shall bear no responsibility for any actions taken or omitted to be taken by the Existing Agent while the Existing Agent served as Administrative Agent and Collateral Agent under the Credit Agreement and the other Loan Documents and (viii) each of the Existing Agent and Borrower authorizes the Successor Agent to file any Uniform Commercial Code assignments or amendments with respect to the Uniform Commercial Code Financing Statements, mortgages, and other filings in respect of the Collateral as the Successor Agent deems necessary or desirable to evidence the Successor Agent's succession as the Administrative Agent and the Collateral Agent under the Credit Agreement and the other Loan Documents and each party hereto agrees to execute any documentation and to take such other actions as may reasonably be necessary to evidence the resignation and appointment described herein; <u>provided</u> that the Existing Agent shall bear no responsibility for any actions taken or omitted to be taken by the Successor Agent under this clause (viii).

(b)    The parties hereto hereby confirm that (i) the Successor Agent succeeds to the rights and obligations of the Administrative Agent and the Collateral Agent under the Credit Agreement and the other Loan Documents and becomes vested with all of the rights, powers, privileges and duties of the Administrative Agent and the Collateral Agent thereunder, (ii) the Successor Swingline Lender succeeds to the rights and obligations of the Swingline Lender under the Credit Agreement and the other Loan Documents and becomes vested with all of the rights, powers, privileges and duties of the Swingline Lender thereunder, (iii) the Existing Agent is discharged from all of its duties and obligations as the Administrative Agent and the Collateral Agent under the Credit Agreement and the other Loan Documents and (iv) the Existing Swingline Lender is discharged from all of its duties and obligations as the Swingline Lender under the Credit Agreement and the other Loan Documents, in each case, as of the Effective Date.

(c)    The parties hereto hereby confirm that, as of the Effective Date, all of the provisions of the Credit Agreement, including, without limitation, *Section 9 (The Agents)* and *Section 10.5 (Payment of Expenses; Indemnification)*, to the extent they pertain to the Existing Agent and the Existing Swingline Lender, continue in effect for the benefit of the Existing Agent and the Existing Swingline Lender, their respective sub-agents and affiliates in respect of any actions taken or omitted to be taken by any of them while the Existing Agent was acting as Administrative Agent and Collateral Agent and the Existing Swingline Lender was acting as Swingline Lender and inure to the benefit of the Existing Agent and the Existing Swingline Lender.

(d)    The Existing Agent hereby assigns to the Successor Agent each of the Liens and security interests granted to the Existing Agent under the Loan Documents and the Successor Agent hereby assumes all such Liens, for the ratable benefit of the Secured Parties.

(e)    On and after the Effective Date, all possessory collateral held by the Existing Agent for the benefit of the Lenders shall be deemed to be held by the Existing Agent as agent

and bailee for the Successor Agent for the ratable benefit of the Secured Parties until such time as such possessory collateral has been delivered to the Successor Agent.  Notwithstanding anything herein to the contrary or the effectiveness of the terms hereof, each Loan Party agrees that all of such Liens granted by any Loan Party shall, unless heretofore released in accordance with the terms of the Loan Documents, in all respects be continuing and in effect and are hereby ratified and reaffirmed by each Loan Party.  Without limiting the generality of the foregoing, any reference to the Existing Agent in any publicly filed document, to the extent such filing relates to the liens and security interests in the Collateral assigned hereby and until such filing is modified to reflect the interests of the Successor Agent, shall, with respect to such liens and security interests, constitute a reference to the Existing Agent as collateral representative of the Successor Agent (provided, that the parties hereto agree that the Existing Agent's role as such collateral representative shall impose no duties, obligations, or liabilities on the Existing Agent, including, without limitation, any duty to take any type of direction regarding any action to be taken against such Collateral, whether such direction comes from the Successor Agent, the Required Lenders, or otherwise and the Existing Agent shall have the full benefit of the protective provisions of the Credit Agreement, including, without limitation, *Section 9 (The Agents)* and *Section 10.5 (Payment of Expenses; Indemnification)*, while serving in such capacity).  The Successor Agent agrees to take possession of any possessory collateral delivered to the Successor Agent following the Effective Date upon tender thereof by the Existing Agent.

(f)     As of the Effective Date, the Borrower hereby designates Barclays Bank PLC, and Barclays Bank PLC hereby agrees to act, as Successor Swingline Lender under the Credit Agreement.  The parties hereto confirm that Barclays Bank PLC as Successor Swingline Lender shall bear no responsibility for any actions taken or omitted to be taken by the Existing Swingline Lender while the Existing Swingline Lender served as the Swingline Lender under the Credit Agreement and the other Loan Documents.

2.     Revolving Credit Commitment Reduction.  The Borrower and each of the Revolving Lenders hereby agrees that, on the Effective Date, the Revolving Commitments of Lehman (which, immediately prior to the Effective Date, are in the aggregate principal amount of $7,000,000 and are Multicurrency Revolving Commitments) shall be reduced to zero ($0.00) and the aggregate Revolving Commitments shall correspondingly be reduced to $143,000,000 (the "Revolving Commitment Reduction").  As of the Effective Date, all reimbursement obligations of the Revolving Lenders to the Issuing Lenders with respect to L/C Obligations will be re-allocated to the Revolving Lenders other than Lehman, ratably in proportion to their respective Revolving Percentages after giving full effect to this Agreement and Lehman shall cease to be an L/C Participant.  Each of the Revolving Lenders (other than Lehman) hereby agrees that the Revolving Commitment Reduction shall not affect its Revolving Commitment and its Revolving Commitment shall remain the same as its Revolving Commitment immediately prior to the Revolving Commitment Reduction.  In the event that, immediately prior to of the Effective Date, Lehman as a Revolving Lender is owed any amounts in respect of accrued interest and/or fees under the Credit Agreement, the Borrower shall pay such amounts to Lehman on the next scheduled payment dates for such interest and fees pursuant to the Credit Agreement until such amounts are paid in full.

3.     Amendment.  As of the Effective Date, the Credit Agreement is hereby amended as follows:

(a)     The definition of "LCPI" in *Section 1.01 (Defined Terms)* is hereby deleted in its entirety.

(b)        all references in the Loan Documents to "Lehman Commercial Paper Inc." (other than such references in (i) the definition of "Senior Interim Loan Agreement", (ii) *Section 10.2 (Notices)* of the Credit Agreement and (iii) the signature page of the Credit Agreement) shall be deemed to be references to "Barclays Bank PLC", and, without limiting the foregoing, all references therein to "Lehman Commercial Paper Inc." in its capacity as the Existing Agent shall be deemed to refer to Barclays Bank PLC as the Successor Agent.

(c)        The definition of "Swingline Commitment" in *Section 1.01 (Defined Terms)* is hereby deleted and amended in its entirety to read:

"<u>Swingline Commitment</u>": the obligation of the Swingline Lender to make Swingline Loans pursuant to Section 2.6 in an aggregate amount at any one time outstanding not to exceed $15,000,000.  Notwithstanding anything herein to the contrary, so long as Barclays Bank PLC is the Swingline Lender, the Swingline Commitment will be available for Swingline Loans in Dollars only.

(d)        *Section 9.7 (Indemnification)* of the Credit Agreement is hereby amended as follows:

(i) by inserting a new second sentence thereof to read as follows:

"In the case of any investigation, litigation or proceeding giving rise to any liabilities or other amounts that are indemnified under this Section 9.7, this Section 9.7 applies whether any such investigation, litigation or proceeding is brought by any Lender or any other Person."

(ii) by inserting the following two new paragraphs at the end thereof to reads as follows:

"Without limitation of the foregoing, each Lender shall reimburse the Administrative Agent upon demand for its ratable share of any costs or out-of-pocket expenses (including the fees, disbursements and other charges of counsel) incurred by the Administrative Agent in connection with preparation, execution, delivery, administration, modification, amendment or enforcement (whether through negotiations, legal proceedings or otherwise) of, or legal advice in respect of rights and responsibilities under, this Agreement, any other Loan Document, or any document contemplated by or referred to herein, to the extent that the Administrative Agent is not reimbursed for such costs or expenses by or on behalf of the Borrower.

To the extent required by any applicable law, the Administrative Agent may withhold from any payment to any Lender an amount equivalent to any U.S. Federal income tax.  If the Internal Revenue Service or any other Governmental Authority asserts a claim that the Administrative Agent did not properly withhold U.S. Federal income tax from amounts paid to or for the account of any Lender because the appropriate form was not delivered or was not properly executed or because such Lender failed to notify the Administrative Agent of a change in circumstance which rendered the exemption from, or reduction of, U.S. Federal income tax ineffective or for any other reason, or if the Administrative Agent reasonably determines that a payment was made to a Lender pursuant to this Agreement without deduction of applicable withholding tax from such payment, such Lender shall indemnify the Administrative Agent fully for all amounts paid, directly or indirectly, by the Administrative Agent as tax or otherwise, including any penalties or interest and together with all reasonable costs and out-of-pocket expenses (including reasonable fees and expenses of counsel) incurred in connection therewith."

(e)      A new *Section 9.12* (*Administrative Agent May File Proofs of Claim*) shall be inserted at the end of *Section 9* (*The Agents*) of the Credit Agreement to read as follows:

"9.12.   <u>Administrative Agent May File Proofs of Claim</u>.  In case of the pendency of any proceeding under the U.S. Bankruptcy Code (Title 11 of the United States Code entitled "Bankruptcy") or any other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief Laws of the United States or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally or any other judicial proceeding relative to the Borrower, the Administrative Agent (irrespective of whether the principal of any Loan or L/C Obligation shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise:

(a)      to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Loans, all L/C Obligations and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders, the Issuing Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders, the Issuing Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due to the Lenders, the Issuing Lenders and the Administrative Agent under Sections 2.9 and 10.5) allowed in such judicial proceeding; and

(b)      to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender and Issuing Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders and the Issuing Lenders, to pay to the Administrative Agent any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due the Administrative Agent under Sections 2.9 and 10.5."

4.      <u>Address for Notices</u>.

(a)      As of the Effective Date, the address of the "Administrative Agent" and "Collateral Agent" for the purposes of *Section 10.2 (Notices)* shall be as follows:

Barclays Bank PLC
745 Seventh Avenue
New York, NY 10019
Attention: Craig Malloy
Telecopy no: (212) 526-7150
E-Mail Address: craig.malloy@barcap.com

with a copy to:

Barclays Capital Services LLC
1301 Sixth Avenue

New York, New York 10019
Attention: Sookie Siew
Telecopy No:  (915) 522-0569
E-Mail Address:  XraUSLoanOps5@barcap.com

(b)     As of the Effective Date, the Borrower hereby agrees that any payment required to be made to the Successor Agent (whether for its own account or for the account of the Lenders) under the Credit Agreement, including, without limitation, *Section 10.5 (Payment of Expenses; Indemnification)*, shall be made to the address set forth in <u>Section 4(a)</u> hereof.

5.     <u>Representations and Warranties</u>.

(a)     Lehman hereby represents and warrants on and as of the date hereof, and on and as of the Effective Date, that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement and (ii) the execution and delivery by Lehman of this Agreement and the performance of its obligations hereunder have been approved by the Order Pursuant to Sections 105(a), 363(b), and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency Relationships and (C) Elevate Loan Participations, dated October 6, 2008 and entered by the United States Bankruptcy Court for the Southern District of New York, as to which no stay has been ordered and which has not been reversed, modified, vacated or overturned, and that no further notice, consent or order is required.

(b)     Each of the Successor Agent and the Successor Swingline Lender hereby represents and warrants on and as of the date hereof, and on and as of the Effective Date, that it is legally authorized to enter into and has duly executed and delivered this Agreement.

(c)     The Borrower and each other Loan Party hereby represents and warrants on and as of the date hereof, and on and as of the Effective Date, that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement, (ii) no Default or Event of Default has occurred and is continuing, (iii) the representations and warranties set forth in *Section 4 (Representations and Warranties)* of the Credit Agreement and the representations and warranties in each other Loan Document are true and correct in all material respects on and as of (a) the date of this Agreement and (b) the Effective Date with the same effect as though made on and as of the Closing Date (as defined in the Credit Agreement), except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties were true and correct in all material respects as of such earlier date; (iv) <u>Schedule 1</u> hereto contains a complete list of all possessory Collateral and security filings related to the Collateral delivered to the Existing Agent; (v) the actions described in <u>Schedule 2</u> hereto have been performed on or prior to the date hereof; and (vi) all Liens and security interests created under the Loan Documents for the ratable benefit of the Secured Parties under the Loan Documents are valid and enforceable Liens on and/or security interests in the Collateral, as security for the Obligations.

6.     <u>Conditions Precedent to Effectiveness</u>.  For purposes of this Agreement, the term "Effective Date" means the first date on which all of the following conditions have been satisfied:

(a)     Each of the parties hereto shall have executed and delivered this Agreement;

(b)        The Borrower shall have paid in immediately available funds the reasonable fees and expenses of (i) Weil, Gotshal & Manges LLP, counsel for the Existing Agent and (ii) Milbank, Tweed, Hadley & McCloy LLP, counsel for the Successor Agent (to the extent, in each case, reasonably detailed invoices therefor have been provided to the Borrower);

(c)        The Successor Agent and the Borrower shall have executed and delivered a fee letter in relation to the annual agency fee paid to the Administrative Agent by the Borrower;

(d)        The Existing Agent shall have confirmed in writing that it has delivered the items set forth on <u>Schedule 1</u> hereto to the Successor Agent and the Successor Agent shall have confirmed in writing that it has received the items set forth on <u>Schedule 1</u> hereto; and

(e)        The Successor Agent shall have confirmed in writing that the Existing Agent has completed each of the tasks listed on <u>Schedule 3</u> hereto.

7.        <u>Further Assurances</u>.

(a)        Without limiting their obligations in any way under any of the Loan Documents, the Borrower and each other Loan Party reaffirms and acknowledges its obligations to the Successor Agent with respect to the Credit Agreement and the other Loan Documents and that the delivery of any agreements, instruments or any other document and any other actions taken or to be taken shall be to the satisfaction of Successor Agent notwithstanding whether any of the foregoing was or were previously satisfactory to the Existing Agent.

(b)        Each of the Borrower, each other Loan Party and the Existing Agent agrees that, following the Effective Date, it shall furnish, at the Borrower's expense, additional releases, amendment or termination statements and such other documents, instruments and agreements as are customary and may be reasonably requested by the Successor Agent from time to time in order to effect the matters covered hereby.

(c)        The Borrower shall reimburse the Existing Agent for all reasonable out-of-pocket costs and expenses incurred by the Existing Agent in connection with any actions taken pursuant to this Agreement.

8.        <u>Release</u>.  Each of the Borrower and the other Loan Parties hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have against Lehman (whether in its capacity as an agent or lender) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors or assigns (collectively, the "<u>Released Parties</u>") to the extent arising out of or in connection with the Loan Documents (collectively, the "<u>Claims</u>").  Each of the Borrower and the other Loan Parties further agrees forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims or from exercising any right or recoupment of setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the Loan Documents.  Each of the Released Parties shall be a third party beneficiary of this Agreement.

9.    <u>Effect of Agreement</u>.  The parties hereto acknowledge that from and after the Effective Date Lehman shall have no obligation to provide any further financial accommodations to or for the benefit of the Borrower or its Affiliates pursuant to the Loan Documents.

10.    <u>Return of Payments</u>.

(a)    As soon as reasonably practicable following the Effective Date, the Existing Agent shall pay to the Borrower in immediately available funds an amount equal to the ratable portion of the annual agency fee heretofore paid to the Existing Agent for the annual period ending on December 3, 2011 pursuant to the fee agreement with the Existing Agent that is attributable to the period from the Effective Date to such date.

(b)    In the event that, after the Effective Date, the Existing Agent receives any principal, interest or other amount owing to any Lender or the Successor Agent under the Credit Agreement or any other Loan Document, the Existing Agent agrees that such payment shall be held in trust for the Successor Agent, and the Existing Agent shall return such payment to the Successor Agent for payment to the Person entitled thereto.

(c)    In the event that, after the Effective Date, the Successor Agent receives any principal, interest or other amount owing to Existing Agent under the Credit Agreement or any other Loan Document, the Successor Agent agrees that such payment shall be held in trust for the Existing Agent, and the Successor Agent shall return such payment to the Existing Agent.

11.    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of each of the parties hereto.

12.    <u>Limitation</u>.  Each party hereto hereby agrees that this Agreement (i) does not impose on the Existing Agent or the Existing Swingline Lender affirmative obligations or indemnities to which it was not already subject, as of the date of its petition commencing its proceeding under chapter 11 of the Bankruptcy Code, and that could give rise to any administrative expense claims other than claims arising as a result of (x) the failure by Lehman to perform any of its obligations hereunder or (y) any representation or warranty of Lehman set forth herein not being true and correct on and as of the date hereof and on and as of the Effective Date and (ii) is not inconsistent with the terms of the Credit Agreement.

13.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall be one and the same instrument.

14.    <u>Headings</u>.  The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

15.    <u>Interpretation</u>.  This Agreement is a Loan Document for the purposes of the Credit Agreement.

16.    <u>Confidentiality</u>.  The information provided by the Existing Agent or its counsel pursuant to <u>Section 6(b)</u> hereof is exclusively for the information of the parties hereto and such information therein may not be disclosed to any third party or circulated or referred to publicly without the prior written consent of Lehman, which consent shall not be unreasonably withheld, delayed or conditioned, except that this Agreement, including such Schedules, may be disclosed, if required, in any legal, judicial or

administrative proceeding or as otherwise required by law or regulation or as requested by a governmental or regulatory authority.

17.    <u>Confirmation of Guaranties</u>.    By signing this Agreement, each Loan Party hereby confirms that (i) the obligations of the Loan Parties under the Credit Agreement as modified hereby and the other Loan Documents (x) are entitled to the benefits of the guarantees set forth in the Guarantee and Collateral Agreement and (y) constitute Obligations, and (ii) notwithstanding the effectiveness of the terms hereof, the Guarantee and Collateral Agreement is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects.

18.    <u>APPLICABLE LAW</u>.    THIS AGREEMENT SHALL BE GOVERNED BY, AND BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

**LEHMAN COMMERCIAL PAPER INC.**,
as Existing Agent, Existing Swingline Lender
and Lender

By: _____

Name:
Title:    RANDALL BRAUNFELD
AUTHORIZED SIGNATORY

[Signature Page to Amendment, Resignation, Waiver, Consent and Appointment Agreement]

**BARCLAYS BANK PLC**,
as Successor Agent, Successor Swingline
Lender and Lender

By: _____

Name:
Title:      Craig Malloy
            Director

**SEQUA CORPORATION**,
as Borrower

By: _____
Name:  James P. Langelotti
Title:  Vice President and Treasurer

**BLUE JAY ACQUISITION CORPORATION**,
**ARC AUTOMOTIVE, INC.**,
**ARC/ASIA, INC.**,
**ATLANTIC RESEARCH CORPORATION**,
**CASCO INVESTORS CORPORATION**,
**CASCO PRODUCTS CORPORATION**,
**CHROMALLOY AMERICAN LLC**,
**CHROMALLOY CASTINGS TAMPA CORPORATION**,
**CHROMALLOY COMPONENT SERVICES, INC.**,
**CHROMALLOY COOPERATIVE HOLDINGS LLC**,
**CHROMALLOY GAS TURBINE LLC**,
**CHROMALLOY POWER SERVICES CORPORATION**,
**CHROMALLOY SAN DIEGO CORPORATION**,
**JET SERVICES (DELAWARE), INC.**,
**SEQUA K&I COMPANY**,
**MIDWEST METAL COATINGS, LLC**,
**PACIFIC GAS TURBINE CENTER, LLC**,
**SEQUA COATINGS LLC**,
**SEQUA FINANCIAL CORPORATION**,
**SEQUA HOLDINGS, INC.**,
**SEQUA INVESTMENTS CORPORATION I**,
**SEQUA MEN'S APPAREL INC.**,
**TPZ CORPORATION**,
each, as a Loan Party

By: _____
Name:  James P. Langelotti
Title:  Vice President and Treasurer

**SEQUA CAPITAL CORPORATION**,
as a Loan Party

By: _____
Name:  James P. Langelotti
Title:  Chief Financial Officer and Treasurer

Schedule 1

Collateral

**Notes and Associated Allonges**

| Maker | Holder | Principal Amount | Date of Note | Due date |
|-------|--------|------------------|--------------|----------|
| Chromalloy Holland B.V. | Sequa Corporation | $6,159,078.33 | 12/3/2007 | 12/4/2014 |

**Equity Interest Certificates and Associated Transfer Powers[1]**

| Issuer | Grantor | Class | Cert. No. | No. of Interests Issued | Percentage Pledged |
|--------|---------|-------|-----------|-------------------------|--------------------|
| Sequa Corporation | Blue Jay Acquisition Corporation | Common | CS-1 | 100 | 100% |
| ARC Automotive, Inc. | Atlantic Research Corp. | Common | 1 | 100 | 100% |
| ARC/Asia, Inc. | Atlantic Research Corporation | Common | 1 | 100 | 100% |
| Casco Investors Corporation | Sequa Corporation (f/k/a Sun Chemical Corporation) | Common | 1 | 200 | 100% |
| Casco Products Corporation | Casco Investors Corporation | Common | 1 | 10,000 | 100% |
| Chromalloy Castings Tampa Corporation | Chromalloy Gas Turbine LLC (f/k/a Chromalloy Gas Turbine Corporation) | Common | 1 | 1,000 | 100% |
| Chromalloy Component Services, Inc. | Chromalloy Gas Turbine LLC (f/k/a Chromalloy Gas Turbine Corporation) | Common | 1 | 1,000 | 100% |
| Chromalloy Power | Chromalloy Gas Turbine LLC (f/k/a | Common | 1 | 1,000 | 100% |

---

[1] Please note that Schedule 1 does not include pledged equity interests that are not certificated.

| Issuer | Grantor | Class | Cert. No. | No. of Interests Issued | Percentage Pledged |
|--------|---------|-------|-----------|------------------------|--------------------|
| Services Corporation | Chromalloy Gas Turbine Corporation) | | | | |
| Chromalloy San Diego Corporation (f/k/a Jet Services West, Inc.) | Chromalloy American Corporation (f/k/a Chromalloy American Corporation) | Common | 1 | 150 | 100% |
| Jet Services (Delaware), Inc. | Casco Investors Corporation | Common | 4 | 106 | 100% |
| Kassel & Irons Ltd. (n/k/a Sequa K&I Company) | Sequa Corporation | Common | 1 | 100 | 100% |
| Sequa Capital Corporation (f/k/a Forsun Leasing Corp.) | Sequa Corporation (f/k/a Sun Chemical Corporation)[2] | Common | 1 | 200 | 100% |
| Sequa Financial Corporation | Sequa Corporation | Common | 2 | 1,000 | 100% |
| Sequa Holdings, Inc. | Casco Investors Corporation | Ordinary | 5 | 106 | 100% |
| Sequa Investments Corporation I | Sequa Financial Corporation | Common | 2 | 1,000 | 100% |
| TPZ Corporation | Sequa Financial Corporation | Common | 2 | 1,000 | 100% |
| ARC Automotriz de México, S. de R.L. de C.V. | Atlantic Research Corp. | Quota | 5-A | 1 @ 1 peso | 65% |
| ARC Automotriz Servicios de México, S. de R.L. de C.V. | Atlantic Research Corp. | Quota | 4 | 1 @ 1 peso | 65% |
| ARC Automotriz de México, S. de R.L. de C.V. | ARC Automotive Inc. | Quota | 3 | 1 @ 2,999 pesos | 65% |
| ARC Automotriz Servicios de México, | ARC Automotive Inc. | Quota | 3 | 1 @ 2,999 pesos | 65% |

[2] The attached stock power represents Cert No. 1 of 200 Shares of Sequa Capital Corporation owned by Sequa Corporation.

| Issuer | Grantor | Class | Cert. No. | No. of Interests Issued | Percentage Pledged |
|---|---|---|---|---|---|
| S. de R.L. de C.V. | | | | | |
| Atlantic Research Corporation | Bankers Trust New York Corp.[3] | Class A Common | C 28949 | 7 | 100% |
| Atlantic Research Corporation | Chromalloy Gas Turbine LLC (f/k/a Chromalloy Gas Turbine Corporation) | Class B Common | C 28946 | 93 | 100% |
| Chromalloy, S.A. de C.V. | Martin Weinstein | Capital Fijo | 1 | 625 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Robert Brown | Capital Fijo | 2 | 625 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Chris Richardson | Capital Fijo | 3 | 1,250 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Gerald J. Sulaica | Capital Fijo | 4 | 625 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Martin Weinstein | "A" C.V. Primera Emision | 1 | 51,375 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Robert Brown | "A" C.V. Primera Emision | 2 | 51,375 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Chris Richardson | "A" C.V. Primera Emision | 3 | 102,750 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Gerald J. Sulaica | "A" C.V. Primera Emision | 4 | 51,375 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Robert Brown | "B" C.V. Primera Emision | 1 | 1,000,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Martin Weinstein | "C" C.V. Primera | 1 | 1,000,000 Acciones | 65% |

---

[3] Certificate says Bankers Trust of New York Corp., but Stock Power says Chromalloy Gas Turbine LLC

| Issuer | Grantor | Class | Cert. No. | No. of Interests Issued | Percentage Pledged |
|---|---|---|---|---|---|
| | | Emision | | | |
| Chromalloy, S.A. de C.V. | Chris Richardson | "D" C.V. Primera Emision | 1 | 1,000,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Gerald J. Sulaica | "E" C.V. Primera Emision | 1 | 1,000,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Martin Weinstein | "F" C.V. Primera Emision | 1 | 413,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Robert Brown | "F" C.V. Primera Emision | 2 | 413,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Chris Richardson | "F" C.V. Primera Emision | 3 | 174,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Martin Weinstein | "A" C.V. Segunda Emision | 1 | 600,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Robert Brown | "A" C.V. Segunda Emision | 2 | 600,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Chris Richardson | "A" C.V. Segunda Emision | 3 | 787,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Gerald J. Sulaica | "A" C.V. Segunda Emision | 4 | 1,013,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Martin Weinstein | "A" C.V. Tercera Emision | 1 | 5,010,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Robert Brown | "A" C.V. Tercera Emision | 2 | 5,010,000 Acciones | 65% |

| Issuer | Grantor | Class | Cert. No. | No. of Interests Issued | Percentage Pledged |
|---|---|---|---|---|---|
| Chromalloy, S.A. de C.V. | Chris Richardson | "A" C.V. Tercera Emision | 3 | 5,010,000 Acciones | 65% |
| Chromalloy, S.A. de C.V. | Gerald J. Sulaica | "A" C.V. Tercera Emision | 4 | 5,010,000 Acciones | 65% |
| Chromalloy Dallas Mexico, S.A. de C.V. | Michael Rivera Cabrera | Capital Fijo | 30 | 140 Acciones | 65% |
| Chromalloy Dallas Mexico, S.A. de C.V. | Gerald Hellmund Gutierrez | Capital Fijo | 31 | 80 Acciones | 65% |
| Chromalloy Dallas Mexico, S.A. de C.V. | Michael Rivera Cabrera | Capital Fijo | 32 | 180 Acciones | 65% |
| Silonex, Inc. | Casco Products Corporation | Class A Common | CA-32R | 881,445 | 65% |
| Silonex, Inc. | Casco Products Corporation | Class B Common | CB-21R | 646,211 | 65% |
| Silonex, Inc. | Casco Products Corporation | Class C Common | CC-7R | 28,030 | 65% |
| Chromalloy American LLC | Sequa Corporation | Membership Units | 001 | 100 | 100% |
| Chromalloy Cooperative Holdings LLC | Chromalloy Gas Turbine LLC | Membership Units | 002 | 100 | 100% |
| Chromalloy Gas Turbine LLC | Chromalloy American LLC | Membership Units | 001 | 100 | 100% |
| Midwest Metal Coatings, LLC | Sequa Corporation | Membership Units | 001 | 100 | 100% |
| Sequa Coatings LLC | Sequa Corporation | Membership Units | 001 | 100 | 100% |
| Pacific Gas Turbine Center, LLC | Chromalloy Gas Turbine LLC | Membership Units | 001 | 100 | 100% |

<u>Schedule 2</u>

1.      The Borrower and each other Loan Party to the Agreement is party to the Guarantee and Collateral Agreement.

2.      All outstanding equity interests and promissory notes (with appropriate transfer instruments) owned by or on behalf of each Loan Party and required to be pledged pursuant to the Guarantee and Collateral Agreement have been pledged pursuant to the Guarantee and Collateral Agreement.

3.      All Uniform Commercial Code financing statements and other appropriate documents and instruments required to create and/or perfect the Liens intended to be created and/or perfected under the Guarantee and Collateral Agreement have been filed, registered, recorded or delivered.

4.      All Mortgages, title insurance policies, abstracts, appraisals, legal opinions and other appropriate real estate security documents with respect to all Mortgaged Properties have been filed, registered, recorded or delivered pursuant to the Credit Agreement.

5.      All consents and approvals required to be obtained in connection with the execution and delivery of all Security Documents, the performance of the obligations thereunder and the granting of the Liens thereunder have been obtained.

<u>Schedule 3</u>

The Existing Agent shall have delivered to the Successor Agent:

a)       copies of the Loan Documents existing as of the date hereof, together with all amendments and supplements thereto;

b)       a list of all of the Lenders and their respective commitments as of the close of business on the date of this Agreement;

c)       an executed assignment of mortgage or deed of trust (as applicable and if reasonably necessary) with regard to each of the mortgages and deeds of trust in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content or filing of any such assignments or the applicable mortgages);

d)       description of any additional documents prepared to transfer, as of record, the security interests, financing statements and all other notices of security interests and Liens previously filed by it in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content or filing of any such financing statements, instruments or notices);

e)       (i) copies of all of the Existing Agent's books and records concerning the Loans (including without limitation all of those books and records that evidence the amount of principal, interest and other sums due under the Loan Documents), (ii) such other information and data as shall be reasonably necessary for the Successor Agent to establish an IntraLinks website (or substantially similar electronic transmission system) for purposes of general communications with the parties to the Loan Documents; and

f)       an executed assignment of each Intellectual Property Security Agreement in its capacity as Collateral Agent (<u>provided</u> that the Existing Agent shall not be responsible for the form or content of any such assignment).

**EXHIBIT D**

EXECUTION VERSION

## AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT

This Amendment, Resignation, Waiver, Consent and Appointment Agreement (this "Agreement") is entered into as of January 31, 2011 by and among Lehman Commercial Paper Inc. ("Lehman"), a debtor and debtor in possession under chapter 11 of the Bankruptcy Code (defined below) acting alone or through one or more of its branches as the Administrative Agent, Collateral Agent and Swingline Lender (in such capacities, the "Existing Agent") under that certain Credit Agreement (as defined below), the Required Lenders party hereto, the Majority Facility Lenders under the Dollar Revolving Facility party hereto, the Majority Facility Lenders under the Multicurrency Revolving Facility party hereto, the Successor Agent (as defined below), Wesco Holdings, Inc. ("Holdings"), and Wesco Aircraft Hardware Corp. (the "Borrower"). Defined terms in the Credit Agreement have the same meanings where used herein, unless otherwise defined.

RECITALS

WHEREAS, the Borrower, Holdings, the Lenders, the Existing Agent, Bank of America, N.A., as syndication agent, Union Bank, N.A. (formerly Union Bank of California, N.A.), as documentation agent, and Lehman Brothers Inc. and Bank of America Securities LLC, as Joint Lead Arrangers and Joint Bookrunners, have entered into the First Lien Credit Agreement dated as of September 29, 2006 (as amended, restated, supplemented or otherwise modified, the "Credit Agreement");

WHEREAS, on October 5, 2008, the Existing Agent commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Existing Agent desires to resign as Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents;

WHEREAS, the Required Lenders desire to appoint Barclays Bank PLC as successor Administrative Agent, successor Collateral Agent and successor Swingline Lender (in such capacities together, the "Successor Agent") under the Credit Agreement and the other First Lien Loan Documents, the Borrower desires to ratify such appointment, and the Successor Agent wishes to accept such appointment; and

WHEREAS, the Required Lenders, the Majority Facility Lenders under the Dollar Revolving Facility and the Majority Facility Lenders under the Multicurrency Revolving Facility wish to amend the provisions of the Credit Agreement relating to Revolving Loans, as provided herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.    Agency Resignation, Waiver, Consent and Appointment.

(a)    As of the Effective Date (as defined below), (i) the Existing Agent hereby resigns as the Administrative Agent, Collateral Agent and Swingline Lender as provided under *Section 9.9 (Successor Agents)* of the Credit Agreement and shall have no further obligations under the First Lien Loan Documents in such capacities; (ii) the Required Lenders hereby appoint Barclays Bank PLC as successor Administrative Agent, successor Collateral Agent

and successor Swingline Lender under the Credit Agreement and the other First Lien Loan Documents; (iii) the Borrower and the Required Lenders hereby waive any notice requirement provided for under *Section 9.9 (Successor Agents)* of the Credit Agreement in respect of such resignation or appointment and the requirement in *Section 9.9 (Successor Agents)* that the successor agent must be selected from among the Lenders; (iv) the Borrower and the Required Lenders hereby consent to the appointment of the Successor Agent; (v) Barclays Bank PLC hereby accepts its appointment as Successor Agent; (vi) the Successor Agent shall bear no responsibility for any actions taken or omitted to be taken by the Existing Agent while the Existing Agent served as Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents and (vii) each of the Existing Agent and Borrower authorizes the Successor Agent to file any Uniform Commercial Code assignments or amendments with respect to the Uniform Commercial Code Financing Statements, mortgages, and other filings in respect of the Collateral as the Successor Agent deems necessary or desirable and each party hereto agrees to execute any documentation and to take such other actions as may reasonably be necessary to evidence the resignation and appointment described herein; provided that the Existing Agent shall bear no responsibility for any actions taken or omitted to be taken by the Successor Agent under this clause (vii).

(b)     The parties hereto hereby confirm that the Successor Agent succeeds to the rights and obligations of the Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents and becomes vested with all of the rights, powers, privileges and duties of the Administrative Agent, Collateral Agent and Swingline Lender under each of the First Lien Loan Documents, and the Existing Agent is discharged from all of its duties and obligations as the Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents, in each case, as of the Effective Date.

(c)     The parties hereto hereby confirm that, as of the Effective Date, all of the provisions of the Credit Agreement, including, without limitation, *Sections 9 (The Agents)*, and *10.5 (Payments of Expenses; Indemnification)* to the extent they pertain to the Existing Agent, continue in effect for the benefit of the Existing Agent, its sub-agents and their respective affiliates in respect of any actions taken or omitted to be taken by any of them while the Existing Agent was acting as Administrative Agent, Collateral Agent and Swingline Lender and inure to the benefit of the Existing Agent.

(d)     The Existing Agent hereby assigns to the Successor Agent each of the Liens and security interests granted to the Existing Agent under the First Lien Loan Documents and the Successor Agent hereby assumes all such Liens, for its benefit and for the benefit of the Secured Parties.

(e)     On and after the Effective Date, all possessory collateral held by the Existing Agent for the benefit of the Lenders shall be deemed to be held by the Existing Agent as agent and bailee for the Successor Agent for the benefit of the Secured Parties until such time as such possessory collateral has been delivered to the Successor Agent.  Notwithstanding anything herein to the contrary or the effectiveness of the terms hereof, each Loan Party agrees that all of such Liens granted by any Loan Party shall, unless heretofore released in accordance with the terms of the First Lien Loan Documents, in all respects be continuing and in effect and are hereby ratified and reaffirmed by each Loan Party.  Without limiting the generality of the foregoing, any reference to the Existing Agent on any publicly filed document, to the extent such filing relates to the liens and security interests in the Collateral

assigned hereby and until such filing is modified to reflect the interests of the Successor Agent, shall, with respect to such liens and security interests, constitute a reference to the Existing Agent as collateral representative of the Successor Agent (provided, that the parties hereto agree that the Existing Agent's role as such collateral representative shall impose no duties, obligations, or liabilities on the Existing Agent, including, without limitation, any duty to take any type of direction regarding any action to be taken against such Collateral, whether such direction comes from the Successor Agent, the Required Lenders, or otherwise and the Existing Agent shall have the full benefit of the protective provisions of *Section 9 (The Agents)* including, without limitation, *Section 10.5 (Payment of Expenses; Indemnification)*, while serving in such capacity). The Successor Agent agrees to take possession of any possessory collateral delivered to the Successor Agent following the Effective Date upon tender thereof by the Existing Agent.

2.    <u>Commitment Termination.</u> Each of the Borrower, the Majority Facility Lenders under the Dollar Revolving Facility and the Majority Facility Lenders under the Multicurrency Revolving Facility hereby agrees that on the Effective Date, the aggregate outstanding and unfunded Revolving Commitments of Lehman shall be reduced to zero ($0.00) and, concurrently with such termination, the aggregate Revolving Commitments shall be reduced by the Revolving Commitment of Lehman without impacting any other Lender's individual Revolving Commitment (it being understood that the Borrower may not terminate any such Revolving Commitments if, after giving effect to such termination, the aggregate outstanding Revolving Loans would exceed the aggregate Revolving Commitments of all Lenders). Concurrently with any subsequent payment of principal or interest or fees to the Lenders with respect to any period before the foregoing termination of Revolving Commitments, the Borrower shall pay to Lehman its ratable share (based on its Revolving Commitments before giving effect to such termination) of such interest or fees, as applicable to the extent required under the Credit Agreement. The Borrower and Lehman hereby acknowledge and agree that, as of the date hereof, there are no fees, outstanding principal or interest owing to Lehman as a Revolving Facility Lender under the Credit Agreement and the other First Lien Loan Documents. From and after the Effective Date, Lehman shall have no further obligation to fund any amount or extend any credit under the First Lien Loan Documents.

3.    <u>Amendment.</u> Effective as of the Effective Date, the Credit Agreement is hereby amended as follows:

(a)    The definition of "<u>LCPI</u>" in *Section 1.1* is hereby deleted in its entirety.

(b)    Each instance of the words "Lehman Commercial Paper Inc.", "Lehman Brothers Inc." and "LCPI" is hereby replaced with "Barclays Bank PLC.

4.    <u>Address for Notices.</u>

(a)    As of the Effective Date, the address of the "Agents" for the purposes of *Section 10.2 (Notices)* shall be as follows:

Barclays Bank PLC
200 Park Avenue
New York, NY 10166
Attention: Craig Malloy
Telecopy no: (646) 758-4617

E-Mail Address: Craig.Malloy@barclayscapital.com

with a copy to:

Barclays Capital Services LLC
70 Hudson Street
Jersey City, NJ 07302
Attention: May Wong
Telecopy no: (973) 576-3014
E-Mail Address: May.Wong@barclayscapital.com

(b)    As of the Effective Date, the Borrower hereby agrees that any payment required to be made to the Successor Agent (whether for its own account or for the account of the Lenders) under the Credit Agreement, including, without limitation, *Sections 2.18(d) (Pro Rata Treatment and Payments)* and *10.5 (Payment of Expenses; Indemnification)* shall be made to the address set forth in Section 4(a) hereof.

5.    Representations and Warranties.

(a)    Lehman hereby represents and warrants on and as of the date hereof and on and as of the Effective Date that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement and (ii) the execution and delivery by Lehman of this Agreement and the performance of its obligations hereunder have been approved by the Order Pursuant to Sections 105(a), 363(b), and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency Relationships and (C) Elevate Loan Participations, dated October 6, 2008 and entered by the United States Bankruptcy Court for the Southern District of New York, as to which no stay has been ordered and which has not been reversed, modified, vacated or overturned, and that no further notice, consent or order is required.

(b)    Successor Agent hereby represents and warrants on and as of the date hereof and on and as of the Effective Date that it is legally authorized to enter into and has duly executed and delivered this Agreement.

(c)    Each Loan Party hereby represents and warrants on and as of the date hereof and on and as of the Effective Date that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement, (ii) no Default or Event of Default has occurred and is continuing, including, specifically, *Sections 6.8 (Additional Collateral, etc.)* and *6.9 (Further Assurances)*, (iii) the representations and warranties set forth in *Section 4 (Representations and Warranties)* of the Credit Agreement and the representations and warranties in each other First Lien Loan Document, including, specifically, *Section 4.17 (Security Documents)* are true and correct in all material respects on and as of (a) the date of this Agreement and (b) the Effective Date with the same effect as though made on and as of the Closing Date (as defined in the Credit Agreement), except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties were true and correct in all material respects as of such earlier date; (iv) Schedule 1 contains a complete list of all possessory Collateral and security filings related to the Collateral delivered to the Existing Agent; (v) the actions described in Schedule 2 hereto have been performed prior to the date hereof and (vi) all Liens and security interests created under the First Lien Loan

Documents for the benefit of the Secured Parties under the First Lien Loan Documents are valid and enforceable Liens on and/or security interests in the Collateral, as security for the Obligations.

6.    Conditions Precedent to Effectiveness.  For purposes of this Agreement, the term "Effective Date" means the first date on which all of the following conditions have been satisfied:

(a)    Each of the parties hereto shall have executed and delivered this Agreement;

(b)    The Borrower shall have paid, in immediately available funds, to Milbank, Tweed, Hadley & McCloy LLP and Weil, Gotshal & Manges LLP, their respective reasonable fees and expenses in connection with this Agreement;

(c)    The Successor Agent and the Borrower shall have executed and delivered a fee letter in relation to the annual agency fee paid to the Administrative Agent by the Borrower;

(d)    The Existing Agent shall have confirmed in writing that it has delivered the items set forth on Schedule 1 hereto to the Successor Agent and the Successor Agent shall have confirmed in writing that it has received the items set forth on Schedule 1 hereto;

(e)    The Successor Agent shall have confirmed in writing that the Existing Agent has completed each of the tasks listed on Schedule 3 hereto;

(f)    The Borrower shall have withdrawn the Proof of Claim (Claim Number 15943) filed by Borrower against Lehman relating to the Credit Agreement; and

(g)    The Effective Date under and as defined in the Amendment, Resignation, Waiver, Consent and Appointment Agreement dated as of the date hereof among the Existing Agent, the Required Lenders party thereto, the Successor Agent, Holdings and the Borrower relating to the Second Lien Credit Agreement shall have occurred.

7.    Further Assurances.

(a)    Without limiting their obligations in any way under any of the First Lien Loan Documents, the Borrower and each Guarantor reaffirms and acknowledges its obligations to the Successor Agent with respect to the Credit Agreement and the other First Lien Loan Documents and that the delivery of any agreements, instruments or any other document and any other actions taken or to be taken shall be to the satisfaction of Successor Agent notwithstanding whether any of the foregoing was or were previously satisfactory to the Existing Agent.

(b)    Each of the Loan Parties and the Existing Agent agrees that, following the Effective Date, it shall furnish, at the Borrower's expense, additional releases, amendment or termination statements and such other documents, instruments and agreements as are customary and may be reasonably requested by the Successor Agent from time to time in order to effect the matters covered hereby.

(c)    The Borrower shall reimburse the Existing Agent for all reasonable out-of-pocket costs and expenses incurred by the Existing Agent in connection with any actions taken pursuant to this Agreement.

8.  <u>Release</u>.  Upon the Effective Date, each of the Loan Parties hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have against Lehman (whether in its capacity as an agent, lender, hedging counterparty or otherwise) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors or assigns (collectively, the "<u>Released Parties</u>") to the extent arising out of or in connection with the First Lien Loan Documents or any prior Borrower request to fund or make an extension of credit under the Credit Agreement including, without limitation, any past or future failure by Lehman to fund any amounts required to be funded by it under the Credit Agreement (collectively, the "<u>Claims</u>").  Each of the Loan Parties further agrees forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims or from exercising any right or recoupment of setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the First Lien Loan Documents.  Each of the Released Parties shall be a third party beneficiary of this Agreement.

9.  <u>Effect of Agreement</u>.  The parties hereto acknowledge that from and after the Effective Date Lehman shall have no obligation to provide any further financial accommodations to or for the benefit of the Borrower or its Affiliates pursuant to the First Lien Loan Documents.

10. <u>Return of Payments</u>.

(a)     The Borrower shall have received from the Existing Agent payment in immediately available funds of the ratable portion of the annual agency fee paid to the Existing Agent in September 2010 pursuant to the fee agreement with the Existing Agent attributable to the period from the Effective Date to September 29, 2011.

(b)     In the event that, after the Effective Date, the Existing Agent receives any principal, interest or other amount owing to any Lender or the Successor Agent under the Credit Agreement or any other First Lien Loan Document, the Existing Agent agrees that such payment shall be held in trust for the Successor Agent, and the Existing Agent shall return such payment to the Successor Agent for payment to the Person entitled thereto.

(c)     In the event that, after the Effective Date, the Successor Agent receives any principal, interest or other amount owing to Existing Agent under the Credit Agreement or any other First Lien Loan Document, the Successor Agent agrees that such payment shall be held in trust for the Existing Agent, and the Successor Agent shall return such payment to the Existing Agent.

11. <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of each of the parties hereto.

12. <u>Limitation</u>.  Each of the Loan Parties, the Successor Agent and each Required Lender hereby agrees that this Agreement (i) does not impose on the Existing Agent affirmative obligations or indemnities to which it was not already subject, as of the date of its petition commencing its proceeding under chapter 11 of the Bankruptcy Code, and that could give rise to any administrative expense claims other than claims arising as a result of (x) the failure by Lehman to perform any of its obligations hereunder or (y) any representation or warranty of Lehman set forth herein not being true and correct on and as of the date hereof and on and as of the Effective Date and (ii) is not inconsistent with the terms of the Credit Agreement.

13. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall be one and the same instrument.

14. <u>Headings</u>. The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

15. <u>Interpretation</u>. This Agreement is a First Lien Loan Document for the purposes of the Credit Agreement.

16. <u>Confirmation of Guaranties</u>. By signing this Agreement, each Guarantor hereby confirms that (i) the obligations of the Loan Parties under the Credit Agreement as modified hereby and the other First Lien Loan Documents (x) are entitled to the benefits of the guarantees set forth in the Guarantee and Collateral Agreement and (y) constitute Obligations, and (ii) notwithstanding the effectiveness of the terms hereof, the Guarantee and Collateral Agreement is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects.

17. <u>APPLICABLE LAW</u>.  THIS AGREEMENT SHALL BE GOVERNED BY, AND BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

LEHMAN COMMERCIAL PAPER, INC.,
as Existing Agent

By: _____
Name:
Title:

**BARCLAYS BANK PLC,**
as Successor Agent

By: _____
Name: Craig J. Malloy
Title:  Director

**WESCO AIRCRAFT HARDWARE CORP.,**
as Borrower

By: _____
Name: GREG HAND
Title: CFO

**WESCO HOLDINGS, INC.**
as Guarantor

By: _____
Name: Greg Mann
Title: CFO

Schedule 1

Collateral

1.  Stock Certificate No. 29 issued by Wesco Aircraft Hardware Corp. to Wesco Aircraft Hardware Corp. to Wesco Holdings, Inc. representing 17,000 shares and stock power in respect of the same.

2.  Stock power executed by Wesco Holdings, Inc. with respect to the shares of Wesco Merger Sub, Inc.

3.  Stock power executed by Wesco Holdings, Inc. with respect to the shares of S.A.S Wesco Aircraft France.

4.  Stock power executed by Wesco Holdings, Inc. with respect to the shares of Wesco Aircraft Germany GmbH.

5.  Stock power executed by Wesco Holdings, Inc. with respect to the shares of Wesco Aircraft Israel Ltd.

6.  Stock certificate No. 12 issued by Airtechnics, Inc. to Wesco Aircraft Hardware Corp. representing 27 shares.

<u>Schedule 2</u>

1.    Each of Wesco Aircraft Hardware Corp. and Wesco Holdings is party to the Guarantee and Collateral Agreement.

2.    All outstanding equity interests and promissory notes (with appropriate transfer instruments) owned by or on behalf of each Loan Party have been pledged pursuant to the Guarantee and Collateral Agreement.

3.    All Uniform Commercial Code financing statements and other appropriate documents and instruments required to create and/or perfect the Liens intended to be created and/or perfected under the Guarantee and Collateral Agreement have been filed, registered, recorded or delivered.

4.    All Mortgages, title insurance policies, abstracts, appraisals, legal opinions and other appropriate real estate security documents with respect to all Mortgages have been filed, registered, recorded or delivered pursuant to the First Lien Loan Documents.

5.    All consents and approvals required to be obtained in connection with the execution and delivery of all Security Documents, the performance of the obligations thereunder and the granting of the Liens thereunder have been obtained.

<u>Schedule 3</u>

The Existing Agent shall have delivered to the Successor Agent:

a) copies of the First Lien Loan Documents existing as of the date hereof, together with all amendments and supplements thereto;

b) a list of all of the Lenders and their respective commitments as of the close of business on the date of this Agreement;

c) an executed assignment of mortgage or deed of trust (as applicable and if reasonably necessary) with regard to each of the mortgages and deeds of trust in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content of any such assignments or the applicable mortgages);

d) description of any additional documents prepared to transfer, as of record, the security interests, financing statements and all other notices of security interests and Liens previously filed by it in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content or filing of any such financing statements, instruments or notices);

e) (i) copies of all of the Existing Agent's books and records concerning the Loans (including without limitation all of those books and records that evidence the amount of principal, interest and other sums due under the First Lien Loan Documents), (ii) such other information and data as shall be reasonably necessary for the Successor Agent to establish an Intralinks website (or substantially similar electronic transmission system) for purposes of general communications with the parties to the First Lien Loan Documents; and

f) an executed assignment of each Intellectual Property Security Agreement in its capacity as Collateral Agent (provided that the Existing Agent shall not be responsible for the form or content of any such assignment).

**EXHIBIT E**

## AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT

This Amendment, Resignation, Waiver, Consent and Appointment Agreement (this "Agreement") is entered into as of January 31, 2011 by and among Lehman Commercial Paper Inc. ("Lehman"), a debtor and debtor in possession under chapter 11 of the Bankruptcy Code (defined below) acting alone or through one or more of its branches as the Administrative Agent and Collateral Agent (in such capacities, the "Existing Agent") under that certain Credit Agreement (as defined below), the Required Lenders party hereto, the Successor Agent (as defined below), Wesco Holdings, Inc. ("Holdings"), and Wesco Aircraft Hardware Corp. (the "Borrower"). Defined terms in the Credit Agreement have the same meanings where used herein, unless otherwise defined.

### RECITALS

WHEREAS, the Borrower, Holdings, the Lenders, the Existing Agent, Bank of America, N.A., as syndication agent, Union Bank, N.A. (formerly Union Bank of California, N.A.), as documentation agent, and Lehman Brothers Inc. and Bank of America Securities LLC, as Joint Lead Arrangers and Joint Bookrunners, have entered into the Second Lien Credit Agreement dated as of September 29, 2006 (as amended, restated, supplemented or otherwise modified, the "Credit Agreement");

WHEREAS, on October 5, 2008, the Existing Agent commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Existing Agent desires to resign as Administrative Agent and Collateral Agent under the Credit Agreement and the other Second Lien Loan Documents; and

WHEREAS, the Required Lenders desire to appoint Barclays Bank PLC as successor Administrative Agent and successor Collateral Agent (in such capacities together, the "Successor Agent") under the Credit Agreement and the other Second Lien Loan Documents, the Borrower desires to ratify such appointment, and the Successor Agent wishes to accept such appointment.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.    Agency Resignation, Waiver, Consent and Appointment.

(a)    As of the Effective Date (as defined below), (i) the Existing Agent hereby resigns as the Administrative Agent and Collateral Agent as provided under *Section 8.9 (Successor Agents)* of the Credit Agreement and shall have no further obligations under the Second Lien Loan Documents in such capacities; (ii) the Required Lenders hereby appoint Barclays Bank PLC as successor Administrative Agent and successor Collateral Agent under the Credit Agreement and the other Second Lien Loan Documents; (iii) the Borrower and the Required Lenders hereby waive any notice requirement provided for under *Section 8.9 (Successor Agents)* of the Credit Agreement in respect of such resignation or appointment and the requirement in *Section 8.9 (Successor Agents)* that the successor agent must be selected from among the Lenders; (iv) the Borrower and the Required Lenders hereby consent to the appointment of the Successor Agent; (v) Barclays Bank PLC hereby accepts its appointment as Successor Agent; (vi) the Successor Agent shall bear no responsibility for any actions taken

or omitted to be taken by the Existing Agent while the Existing Agent served as Administrative Agent and Collateral Agent under the Credit Agreement and the other Second Lien Loan Documents and (vii) each of the Existing Agent and Borrower authorizes the Successor Agent to file any Uniform Commercial Code assignments or amendments with respect to the Uniform Commercial Code Financing Statements, mortgages, and other filings in respect of the Collateral as the Successor Agent deems necessary or desirable and each party hereto agrees to execute any documentation and to take such other actions as may reasonably be necessary to evidence the resignation and appointment described herein; provided that the Existing Agent shall bear no responsibility for any actions taken or omitted to be taken by the Successor Agent under this clause (vii).

(b)      The parties hereto hereby confirm that the Successor Agent succeeds to the rights and obligations of the Administrative Agent and Collateral Agent under the Credit Agreement and the other Second Lien Loan Documents and becomes vested with all of the rights, powers, privileges and duties of the Administrative Agent and Collateral Agent under each of the Second Lien Loan Documents, and the Existing Agent is discharged from all of its duties and obligations as the Administrative Agent and Collateral Agent under the Credit Agreement and the other Second Lien Loan Documents, in each case, as of the Effective Date.

(c)      The parties hereto hereby confirm that, as of the Effective Date, all of the provisions of the Credit Agreement, including, without limitation, *Sections 8 (The Agents)*, and *9.5 (Payments of Expenses; Indemnification)* to the extent they pertain to the Existing Agent, continue in effect for the benefit of the Existing Agent, its sub-agents and their respective affiliates in respect of any actions taken or omitted to be taken by any of them while the Existing Agent was acting as Administrative Agent and Collateral Agent and inure to the benefit of the Existing Agent.

(d)      The Existing Agent hereby assigns to the Successor Agent each of the Liens and security interests granted to the Existing Agent under the Second Lien Loan Documents and the Successor Agent hereby assumes all such Liens, for its benefit and for the benefit of the Secured Parties.

(e)      On and after the Effective Date, all possessory collateral held by the Existing Agent for the benefit of the Lenders shall be deemed to be held by the Existing Agent as agent and bailee for the Successor Agent for the benefit of the Secured Parties until such time as such possessory collateral has been delivered to the Successor Agent. Notwithstanding anything herein to the contrary or the effectiveness of the terms hereof, each Loan Party agrees that all of such Liens granted by any Loan Party shall, unless heretofore released in accordance with the terms of the Second Lien Loan Documents, in all respects be continuing and in effect and are hereby ratified and reaffirmed by each Loan Party. Without limiting the generality of the foregoing, any reference to the Existing Agent on any publicly filed document, to the extent such filing relates to the liens and security interests in the Collateral assigned hereby and until such filing is modified to reflect the interests of the Successor Agent, shall, with respect to such liens and security interests, constitute a reference to the Existing Agent as collateral representative of the Successor Agent (provided, that the parties hereto agree that the Existing Agent's role as such collateral representative shall impose no duties, obligations, or liabilities on the Existing Agent, including, without limitation, any duty to take any type of direction regarding any action to be taken against such Collateral, whether such direction comes from the Successor Agent, the Required Lenders, or otherwise and the Existing Agent shall have the full benefit of the protective provisions of *Section 8 (The*

*Agents)* including, without limitation, *Section 9.5 (Payment of Expenses; Indemnification),* while serving in such capacity). The Successor Agent agrees to take possession of any possessory collateral delivered to the Successor Agent following the Effective Date upon tender thereof by the Existing Agent.

2.    Amendment. Effective as of the Effective Date, the Credit Agreement is hereby amended as follows:

(a)    The definition of "LCPI" in *Section 1.1* is hereby deleted in its entirety.

(b)    Each instance of the words "Lehman Commercial Paper Inc.", "Lehman Brothers Inc." and "LCPI" is hereby replaced with "Barclays Bank PLC.

3.    Address for Notices.

(a)    As of the Effective Date, the address of the "Agents" for the purposes of *Section 9.2 (Notices)* shall be as follows:

Barclays Bank PLC
200 Park Avenue
New York, NY 10166
Attention: Craig Malloy
Telecopy no: (646) 758-4617
E-Mail Address: Craig.Malloy@barclayscapital.com

with a copy to:

Barclays Capital Services LLC
70 Hudson Street
Jersey City, NJ 07302
Attention: May Wong
Telecopy no: (973) 576-3014
E-Mail Address: May.Wong@barclayscapital.com

(b)    As of the Effective Date, the Borrower hereby agrees that any payment required to be made to the Successor Agent (whether for its own account or for the account of the Lenders) under the Credit Agreement, including, without limitation, *Sections 2.12 (b) (Pro Rata Treatment and Payments)* and *9.5 (Payment of Expenses; Indemnification)* shall be made to the address set forth in Section 3(a) hereof.

4.    Representations and Warranties.

(a)    Lehman hereby represents and warrants on and as of the date hereof and on and as of the Effective Date that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement and (ii) the execution and delivery by Lehman of this Agreement and the performance of its obligations hereunder have been approved by the Order Pursuant to Sections 105(a), 363(b), and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency Relationships and (C) Elevate Loan Participations, dated October 6, 2008 and entered

by the United States Bankruptcy Court for the Southern District of New York, as to which no stay has been ordered and which has not been reversed, modified, vacated or overturned, and that no further notice, consent or order is required.

(b)    Successor Agent hereby represents and warrants on and as of the date hereof and on and as of the Effective Date that it is legally authorized to enter into and has duly executed and delivered this Agreement.

(c)    Each Loan Party hereby represents and warrants on and as of the date hereof and on and as of the Effective Date that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement, (ii) no Default or Event of Default has occurred and is continuing, including, specifically, *Sections 5.8 (Additional Collateral, etc.)* and *5.9 (Further Assurances)*, (iii) the representations and warranties set forth in *Section 3 (Representations and Warranties)* of the Credit Agreement and the representations and warranties in each other Second Lien Loan Document, including, specifically, *Section 3.17 (Security Documents)* are true and correct in all material respects on and as of (a) the date of this Agreement and (b) the Effective Date with the same effect as though made on and as of the Closing Date (as defined in the Credit Agreement), except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties were true and correct in all material respects as of such earlier date; (iv) the actions described in Schedule 1 hereto have been performed prior to the date hereof and (v) all Liens and security interests created under the Second Lien Loan Documents for the benefit of the Secured Parties under the Second Lien Loan Documents are valid and enforceable Liens on and/or security interests in the Collateral, as security for the Obligations.

5.    Conditions Precedent to Effectiveness. For purposes of this Agreement, the term "Effective Date" means the first date on which all of the following conditions have been satisfied:

(a)    Each of the parties hereto shall have executed and delivered this Agreement;

(b)    The Borrower shall have paid, in immediately available funds, to Milbank, Tweed, Hadley & McCloy LLP and Weil, Gotshal & Manges LLP, their respective reasonable fees and expenses in connection with this Agreement;

(c)    The Successor Agent and the Borrower shall have executed and delivered a fee letter in relation to the annual agency fee paid to the Administrative Agent by the Borrower;

(d)    The Successor Agent shall have confirmed in writing that the Existing Agent has completed each of the tasks listed on Schedule 2 hereto;

(e)    The Borrower shall have withdrawn the Proof of Claim (Claim Number 15943) filed by Borrower against Lehman relating to the Credit Agreement; and

(f)    The Effective Date under and as defined in the Amendment, Resignation, Waiver, Consent and Appointment Agreement dated as of the date hereof among the Existing Agent, the Required Lenders party thereto, the Majority Facility Lenders under the Dollar Revolving Facility party thereto, the Majority Facility Lenders under the Multicurrency Revolving Facility (the Majority Facility Lenders, the Dollar Revolving Facility and the Multicurrency Revolving Facility, each as defined in the First Lien Credit Agreement) party

thereto, the Successor Agent, Holdings and the Borrower relating to the First Lien Credit Agreement shall have occurred.

6.      Further Assurances.

(a)      Without limiting their obligations in any way under any of the Second Lien Loan Documents, the Borrower and each Guarantor reaffirms and acknowledges its obligations to the Successor Agent with respect to the Credit Agreement and the other Second Lien Loan Documents and that the delivery of any agreements, instruments or any other document and any other actions taken or to be taken shall be to the satisfaction of Successor Agent notwithstanding whether any of the foregoing was or were previously satisfactory to the Existing Agent.

(b)      Each of the Loan Parties and the Existing Agent agrees that, following the Effective Date, it shall furnish, at the Borrower's expense, additional releases, amendment or termination statements and such other documents, instruments and agreements as are customary and may be reasonably requested by the Successor Agent from time to time in order to effect the matters covered hereby.

(c)      The Borrower shall reimburse the Existing Agent for all reasonable out-of-pocket costs and expenses incurred by the Existing Agent in connection with any actions taken pursuant to this Agreement.

7.      Release.  Upon the Effective Date, each of the Loan Parties hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have against Lehman (whether in its capacity as an agent, lender, hedging counterparty or otherwise) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors or assigns (collectively, the "Released Parties") to the extent arising out of or in connection with the Second Lien Loan Documents or any prior Borrower request to fund or make an extension of credit under the Credit Agreement including, without limitation, any past or future failure by Lehman to fund any amounts required to be funded by it under the Credit Agreement (collectively, the "Claims").  Each of the Loan Parties further agrees forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims or from exercising any right or recoupment of setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the Second Lien Loan Documents.  Each of the Released Parties shall be a third party beneficiary of this Agreement.

8.      Effect of Agreement.  The parties hereto acknowledge that from and after the Effective Date Lehman shall have no obligation to provide any further financial accommodations to or for the benefit of the Borrower or its Affiliates pursuant to the Second Lien Loan Documents.

9.      Return of Payments.

(a)      The Borrower shall have received from the Existing Agent payment in immediately available funds of the ratable portion of the annual agency fee paid to the Existing Agent in September 2010 pursuant to the fee agreement with the Existing Agent attributable to the period from the Effective Date to September 29, 2011.

(b)    In the event that, after the Effective Date, the Existing Agent receives any principal, interest or other amount owing to any Lender or the Successor Agent under the Credit Agreement or any other Second Lien Loan Document, the Existing Agent agrees that such payment shall be held in trust for the Successor Agent, and the Existing Agent shall return such payment to the Successor Agent for payment to the Person entitled thereto.

(c)    In the event that, after the Effective Date, the Successor Agent receives any principal, interest or other amount owing to Existing Agent under the Credit Agreement or any other Second Lien Loan Document, the Successor Agent agrees that such payment shall be held in trust for the Existing Agent, and the Successor Agent shall return such payment to the Existing Agent.

10. Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of each of the parties hereto.

11. Limitation. Each of the Loan Parties, the Successor Agent and each Required Lender hereby agrees that this Agreement (i) does not impose on the Existing Agent affirmative obligations or indemnities to which it was not already subject, as of the date of its petition commencing its proceeding under chapter 11 of the Bankruptcy Code, and that could give rise to any administrative expense claims other than claims arising as a result of (x) the failure by Lehman to perform any of its obligations hereunder or (y) any representation or warranty of Lehman set forth herein not being true and correct on and as of the date hereof and on and as of the Effective Date and (ii) is not inconsistent with the terms of the Credit Agreement.

12. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall be one and the same instrument.

13. Headings. The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

14. Interpretation. This Agreement is a Second Lien Loan Document for the purposes of the Credit Agreement.

15. Confirmation of Guaranties. By signing this Agreement, each Guarantor hereby confirms that (i) the obligations of the Loan Parties under the Credit Agreement as modified hereby and the other Second Lien Loan Documents (x) are entitled to the benefits of the guarantees set forth in the Guarantee and Collateral Agreement and (y) constitute Obligations, and (ii) notwithstanding the effectiveness of the terms hereof, the Guarantee and Collateral Agreement is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects.

16. APPLICABLE LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

LEHMAN COMMERCIAL PAPER, INC.,
as Existing Agent

By: _____

Name:
Title:

[RESIGNATION AND ASSIGNMENT AGREEMENT – SECOND LIEN CREDIT AGREEMENT]

**BARCLAYS BANK PLC,**
as Successor Agent

By: _____
Name: Craig J. Malloy
Title:   Director

**WESCO AIRCRAFT HARDWARE CORP.,**
as Borrower

By: _____

Name: GREG HANN

Title: CFO

[RESIGNATION AND ASSIGNMENT AGREEMENT – SECOND LIEN CREDIT AGREEMENT]

**WESCO HOLDINGS, INC.**
as Guarantor

By: _____
Name: GREG HANN
Title: CFO

<u>Schedule 1</u>

1.      Each of Wesco Aircraft Hardware Corp. and Wesco Holdings is party to the Guarantee and Collateral Agreement.

2.      All outstanding equity interests and promissory notes (with appropriate transfer instruments) owned by or on behalf of each Loan Party have been pledged pursuant to the Guarantee and Collateral Agreement.

3.      All Uniform Commercial Code financing statements and other appropriate documents and instruments required to create and/or perfect the Liens intended to be created and/or perfected under the Guarantee and Collateral Agreement have been filed, registered, recorded or delivered.

4.      All Mortgages, title insurance policies, abstracts, appraisals, legal opinions and other appropriate real estate security documents with respect to all Mortgages have been filed, registered, recorded or delivered pursuant to the Second Lien Loan Documents.

5.      All consents and approvals required to be obtained in connection with the execution and delivery of all Security Documents, the performance of the obligations thereunder and the granting of the Liens thereunder have been obtained.

<u>Schedule 2</u>

The Existing Agent shall have delivered to the Successor Agent:

a) copies of the Second Lien Loan Documents existing as of the date hereof, together with all amendments and supplements thereto;

b) a list of all of the Lenders and their respective commitments as of the close of business on the date of this Agreement;

c) an executed assignment of mortgage or deed of trust (as applicable and if reasonably necessary) with regard to each of the mortgages and deeds of trust in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content of any such assignments or the applicable mortgages);

d) description of any additional documents prepared to transfer, as of record, the security interests, financing statements and all other notices of security interests and Liens previously filed by it in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content or filing of any such financing statements, instruments or notices);

e) (i) copies of all of the Existing Agent's books and records concerning the Loans (including without limitation all of those books and records that evidence the amount of principal, interest and other sums due under the Second Lien Loan Documents), (ii) such other information and data as shall be reasonably necessary for the Successor Agent to establish an Intralinks website (or substantially similar electronic transmission system) for purposes of general communications with the parties to the Second Lien Loan Documents; and

f) an executed assignment of each Intellectual Property Security Agreement in its capacity as Collateral Agent (provided that the Existing Agent shall not be responsible for the form or content of any such assignment).

## **EXHIBIT F**

EXECUTION COPY

## AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT

This Amendment, Resignation, Waiver, Consent and Appointment Agreement (this "Agreement") is entered into as of August 24, 2010, by and among Lehman Commercial Paper Inc. ("Lehman"), a debtor and debtor in possession under chapter 11 of the Bankruptcy Code (defined below) acting alone or through one or more of its branches as the Administrative Agent, Collateral Agent and Swingline Lender (in such capacities, the "Existing Agent") under that certain Credit Agreement (as defined below), the Required Lenders party hereto and each Revolving Lender, Successor Agent (as defined below), each Guarantor, and Veyance Technologies, Inc. (the "Borrower"). Defined terms in the Credit Agreement have the same meanings where used herein, unless otherwise defined.

## RECITALS

WHEREAS, the Borrower, EPD Holdings, Inc. ("Holdings"), the Lenders, the Existing Agent, J.P. Morgan Securities Inc., as syndication agent, Goldman Sachs Credit Partners L.P., as documentation agent, and Lehman Brothers Inc., J.P. Morgan Securities Inc. and Goldman Sachs Credit Partners L.P., as Joint Lead Arrangers and Joint Bookrunners, have entered into the First Lien Credit Agreement dated as of July 31, 2007 (as amended, restated, supplemented or otherwise modified, the "Credit Agreement");

WHEREAS, on October 5, 2008, the Existing Agent commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Existing Agent desires to resign as Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents;

WHEREAS, the Required Lenders desire to appoint Barclays Bank PLC as successor Administrative Agent, successor Collateral Agent and successor Swingline Lender (in such capacities together, the "Successor Agent") under the Credit Agreement and the other First Lien Loan Documents, the Borrower desires to ratify such appointment, and the Successor Agent wishes to accept such appointment; and

WHEREAS, the Required Lenders and each of the Revolving Lenders wish to amend the provisions of the Credit Agreement relating to the Revolving Credit Loans, as provided herein; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.      Agency Resignation, Waiver, Consent and Appointment.

(a)      As of the Effective Date (as defined below), (i) the Existing Agent hereby resigns as the Administrative Agent, Collateral Agent and Swingline Lender as provided under *Section 9.9 (Successor Agents)* of the Credit Agreement and shall have no further obligations under the First Lien Loan Documents in such capacities; (ii) the Required Lenders hereby appoint Barclays Bank PLC as successor Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents; (iii) the Borrower and the Required Lenders hereby waive any notice requirement provided for under *Section 9.9 (Successor Agents)* of the Credit Agreement in respect of such resignation or appointment and the requirement in *Section 9.9 (Successor Agents)* that the successor agent must be selected from

1

among the Lenders; (iv) the Borrower and the Required Lenders hereby consent to the appointment of the Successor Agent; (v) Barclays Bank PLC hereby accepts its appointment as Successor Agent; (vi) the Successor Agent shall bear no responsibility for any actions taken or omitted to be taken by the Existing Agent while the Existing Agent served as Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents and (vii) each of the Existing Agent and Borrower authorizes the Successor Agent to file any Uniform Commercial Code assignments or amendments with respect to the Uniform Commercial Code Financing Statements, mortgages, and other filings in respect of the Collateral as the Successor Agent deems necessary or desirable and each party hereto agrees to execute any documentation and to take such other actions as may reasonably be necessary to evidence the resignation and appointment described herein; provided that the Existing Agent shall bear no responsibility for any actions taken or omitted to be taken by the Successor Agent under this clause (vii).

(b)    The parties hereto hereby confirm that the Successor Agent succeeds to the rights and obligations of the Administrative Agent under the Credit Agreement and becomes vested with all of the rights, powers, privileges and duties of the Administrative Agent, Collateral Agent and Swingline Lender under each of the First Lien Loan Documents, and the Existing Agent is discharged from all of its duties and obligations as the Administrative Agent, Collateral Agent and Swingline Lender under the Credit Agreement and the other First Lien Loan Documents, in each case, as of the Effective Date.

(c)    The parties hereto hereby confirm that, as of the Effective Date, all of the provisions of the Credit Agreement, including, without limitation, *Section 9 (The Agents)*, and *Section 10.5 (Payment of Expenses; Indemnification)* to the extent they pertain to the Existing Agent, continue in effect for the benefit of the Existing Agent, its sub-agents and their respective Affiliates in respect of any actions taken or omitted to be taken by any of them while the Existing Agent was acting as Administrative Agent, Collateral Agent and Swingline Lender and inure to the benefit of the Existing Agent.

(d)    The Existing Agent hereby assigns to the Successor Agent each of the Liens and security interests granted to the Existing Agent under the First Lien Loan Documents and the Successor Agent hereby assumes all such Liens, for its benefit and for the ratable benefit of the Secured Parties.

(e)    On and after the Effective Date, all possessory collateral held by the Existing Agent for the benefit of the Lenders shall be deemed to be held by the Existing Agent as agent and bailee for the Successor Agent for the ratable benefit of the Secured Parties until such time as such possessory collateral has been delivered to the Successor Agent. Notwithstanding anything herein to the contrary or the effectiveness of the terms hereof, each Loan Party agrees that all of such Liens granted by any Loan Party, shall in all respects be continuing and in effect and are hereby ratified and reaffirmed by each Loan Party. Without limiting the generality of the foregoing, any reference to the Existing Agent in any publicly filed document, to the extent such filing relates to the liens and security interests in the Collateral assigned hereby and until such filing is modified to reflect the interests of the Successor Agent, shall, with respect to such liens and security interests, constitute a reference to the Existing Agent as collateral representative of the Successor Agent (provided, that the parties hereto agree that the Existing Agent's role as such collateral representative shall impose no duties, obligations, or liabilities on the Existing Agent, including, without limitation, any duty to take any type of direction regarding any action to be taken against such Collateral, whether such direction comes from the Successor Agent, the Required Lenders, or otherwise and the Existing Agent shall have the full benefit of the protective

2

provisions of the Credit Agreement, including, without limitation, *Section 9 (The Agents)*, and *Section 10.5 (Payment of Expenses; Indemnification)*, while serving in such capacity). The Successor Agent agrees to take possession of any possessory collateral delivered to the Successor Agent following the Effective Date upon tender thereof by the Existing Agent.

2.    <u>Revolving Credit Commitment Reduction</u>. The Borrower and each of the Revolving Lenders hereby agrees that, on the Effective Date, the Revolving Commitments of Lehman (which, immediately prior to the Effective Date, are in the aggregate principal amount of $12,666,666.67) shall be reduced to zero ($0.00) and the aggregate Revolving Commitments shall correspondingly be reduced to $87,333,333.33 (the "<u>Revolving Commitment Reduction</u>"). As of the Effective Date, all reimbursement obligations of the Revolving Lenders to the Issuing Lenders with respect to L/C Obligations will be re-allocated to the Revolving Lenders other than Lehman, ratably in proportion to their respective Revolving Percentages after giving full effect to this Agreement and Lehman shall cease to be an L/C Participant. Each of the Revolving Lenders (other than Lehman) hereby agrees that the Revolving Commitment Reduction shall not affect its Revolving Commitment and its Revolving Commitment shall remain the same as its Revolving Commitment immediately prior to the Revolving Commitment Reduction. It is understood and agreed that prior to the earlier (such date, the "<u>Final Revolving Termination Date</u>") of (x) the Revolving Termination Date or (y) such other date as the Revolving Commitments shall be terminated in full, no prepayments of Revolving Loans shall be made in respect of the outstanding Revolving Loans held by Lehman and that Lehman's ratable share of any prepayment or repayment of Revolving Loans shall be allocated to the other Revolving Lenders in accordance with their respective Revolving Percentages after giving effect to this Agreement. The outstanding principal amount of Revolving Loans held by Lehman shall be paid in full, along with any accrued and unpaid fees and interest in respect thereof, on the Final Revolving Termination Date. As of the Effective Date, Lehman shall continue to be a Revolving Lender and a holder of Revolving Loans under the Credit Agreement and shall continue to hold all rights of a Lender and Secured Party thereunder for all purposes (including, without limitation, benefits of collateral security, voting rights (provided that for purposes of calculating the Commitments of the Lenders or the Revolving Lenders with respect to any vote, at any time of determination, Lehman's Revolving Commitment shall be deemed to be equal to its Revolving Extensions of Credit outstanding at such time) and rights to receive payment of interest on the dates provided in the Credit Agreement on such Revolving Loans); <u>provided</u> that, for the avoidance of doubt, from and after the Effective Date, (i) solely for purposes of Section 2.9(a) of the Credit Agreement, Lehman's Available Revolving Commitment shall be zero dollars ($0), and (ii) solely for purposes of Section 3.3(a) of the Credit Agreement, Lehman shall not be deemed to be a Revolving Lender.    From and after the Effective Date, Lehman shall have no further obligation to fund any amount or extend any credit under the Loan Documents (including Revolving Loans, Swingline Loans and any reimbursement obligations with respect to Letters of Credit).

3.    <u>Amendment</u>. Effective as of the Effective Date, the Credit Agreement is hereby amended as follows:

(a)    The definition of "LCPI" in *Section 1.01 (Defined Terms)* is hereby deleted in its entirety.

(b)    all references in the First Lien Loan Documents to "Lehman Commercial Paper Inc." and "LCPI" shall be deemed to be references to "Barclays Bank PLC".

(c)    The definition of "Swingline Commitment" in *Section 1.01 (Defined Terms)* is hereby deleted and amended in its entirety to read:

3

"Swingline Commitment": the obligation of the Swingline Lender to make Swingline Loans pursuant to Section 2.6(a) in an aggregate amount at any one time outstanding not to exceed $10,000,000.

(d)    The definition of "Swingline Lender" in *Section 1.01 (Defined Terms)* is hereby deleted and amended in its entirety to read:

"Swingline Lender": (a) Barclays Bank PLC, in its capacity as the lender of Swingline Loans or (b) upon the resignation of Barclays Bank PLC, any Revolving Lender from time to time designated by the Borrower as the Swingline Lender (with the consent of such Revolving Lender (in its sole discretion)).

4.    Address for Notices.

(a)    As of the Effective Date, the address of the "Administrative Agent" and "Collateral Agent" for the purposes of *Section 10.02 (Notices)* shall be as follows:

Barclays Bank PLC
200 Park Avenue
New York, NY 10166
Attention: Craig Malloy
Telecopy no: (646) 758-4617
E-Mail Address: craig.malloy@barclayscapital.com

with a copy to:

Barclays Capital Services LLC
70 Hudson Street
Jersey City, NJ 07302
Attention: May Wong
Telecopy no: (973) 576-3014
E-Mail Address: may.wong@barclayscapital.com

(b)    As of the Effective Date, the Borrower hereby agrees that any payment required to be made to the Successor Agent (whether for its own account or for the account of the Lenders) under the Credit Agreement, including, without limitation, *Section 10.5 (Payment of Expenses; Indemnification)* shall be made to the address set forth in Section 4(a) hereof.

5.    Representations and Warranties.

(a)    Lehman hereby represents and warrants on and as of the date hereof, and on and as of the Effective Date, that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement and (ii) the execution and delivery by Lehman of this Agreement and the performance of its obligations hereunder have been approved by the Order Pursuant to Sections 105(a), 363(b), and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency Relationships and (C) Elevate Loan Participations, dated October 6, 2008 and entered by the United States Bankruptcy Court for the Southern District of New York, as to which no stay has been ordered and which has not been reversed, modified, vacated or overturned, and that no further notice, consent or order is required.

4

#4815-1626-7268

(b)      Successor Agent hereby represents and warrants on and as of the date hereof, and on and as of the Effective Date, that it is legally authorized to enter into and has duly executed and delivered this Agreement.

(c)      The Borrower and each Guarantor hereby represents and warrants on and as of the date hereof, and on and as of the Effective Date, that (i) it is legally authorized to enter into and has duly executed and delivered this Agreement, (ii) no Default or Event of Default has occurred and is continuing, (iii) the representations and warranties set forth in *Section 4 (Representations and Warranties)* of the Credit Agreement and the representations and warranties in each other First Lien Loan Document are true and correct on and as of (a) the date of this Agreement and (b) the Effective Date with the same effect as though made on and as of the Closing Date (as defined in the Credit Agreement), except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties were true and correct in all material respects as of such earlier date; (iv) Schedule 2 hereto contains a complete list of all possessory Collateral and security filings related to the Collateral delivered to the Existing Agent; (v) the actions described in Schedule 3 hereto have been performed prior to the date hereof and (vi) all Liens and security interests created under the First Lien Loan Documents for the benefit of the Secured Parties under the First Lien Loan Documents are valid and enforceable Liens on and/or security interests in the Collateral, as security for the Obligations.

6.      Conditions Precedent to Effectiveness.  For purposes of this Agreement, the term "Effective Date" means the first date on which all of the following conditions have been satisfied:

(a)      Each of the parties hereto shall have executed and delivered this Agreement;

(b)      The Existing Agent shall have received from the Borrower payment in immediately available funds of all costs, expenses, accrued and unpaid fees and other amounts payable to it as the Existing Agent and as a Lender pursuant to the First Lien Loan Documents (including fees and expenses of counsel), set forth on Schedule 1 hereto (to the extent, with respect to expenses, reasonably detailed invoices have been provided therefor), in each case to the account specified on Schedule 1 hereto;

(c)      The Successor Agent and the Borrower shall have executed and delivered a fee letter in relation to the annual agency fee paid to the Administrative Agent by the Borrower;

(d)      The Existing Agent shall have confirmed in writing that it has delivered the items set forth on Schedule 2 hereto to the Successor Agent and the Successor Agent shall have confirmed in writing that it has received the items set forth on Schedule 2 hereto;

(e)      The Successor Agent shall have confirmed in writing that the Existing Agent has completed each of the tasks listed on Schedule 4 hereto; and

(f)      The Borrower shall have withdrawn the Proof of Claim (Claim Number 19334) filed by Borrower against Lehman relating to the Credit Agreement.

7.      Further Assurances.

(a)      Without limiting their obligations in any way under any of the First Lien Loan Documents, the Borrower and each Guarantor reaffirms and acknowledges its obligations to the

5

Successor Agent with respect to the Credit Agreement and the other First Lien Loan Documents and that the delivery of any agreements, instruments or any other document and any other actions taken or to be taken shall be to the satisfaction of Successor Agent notwithstanding whether any of the foregoing was or were previously satisfactory to the Existing Agent.

(b)    Each of the Borrower, each Guarantor and the Existing Agent agrees that, following the Effective Date, it shall furnish, at the Borrower's expense, additional releases, amendment or termination statements and such other documents, instruments and agreements as are customary and may be reasonably requested by the Successor Agent from time to time in order to effect the matters covered hereby.

(c)    The Borrower shall reimburse the Existing Agent for all reasonable out-of-pocket costs and expenses incurred by the Existing Agent in connection with any actions taken pursuant to this Agreement.

8.    <u>Release</u>.    Each of the Borrower and the Guarantors hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have against Lehman (whether in its capacity as an agent, lender, hedging counterparty or otherwise) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors or assigns (collectively, the "<u>Released Parties</u>") to the extent arising out of or in connection with the First Lien Loan Documents or any prior Borrower request to fund or make an extension of credit under the Credit Agreement including, without limitation, any past failure by Lehman or any of its affiliates to fund any Loan required to be funded by it under the Credit Agreement (collectively, the "<u>Claims</u>"), other than those claims set forth in Veyance Technologies, Inc. v. Lehman Brothers Special Financing, 90 Civ 8851 (S.D.N.Y. Bankr.).    Each of the Borrower and the Guarantors further agrees forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims or from exercising any right or recoupment of setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the First Lien Loan Documents.  Each of the Released Parties shall be a third party beneficiary of this Agreement.  For the avoidance of doubt, nothing in this section shall release any claims regarding, or affect the rights of the parties in, Veyance Technologies, Inc. v. Lehman Brothers Special Financing, 90 Civ 8851 (S.D.N.Y. Bankr.), including any settlement thereof.

9.    <u>Effect of Agreement</u>.  The parties hereto acknowledge that from and after the Effective Date Lehman shall have no obligation to provide any further financial accommodations to or for the benefit of the Borrower or its Affiliates pursuant to the First Lien Loan Documents.

10.    <u>Return of Payments</u>.

(a)    In the event that, after the Effective Date, the Existing Agent receives any principal, interest or other amount owing to any Lender or the Successor Agent under the Credit Agreement or any other First Lien Loan Document, the Existing Agent agrees that such payment shall be held in trust for the Successor Agent, and the Existing Agent shall return such payment to the Successor Agent for payment to the Person entitled thereto.

(b)    In the event that, after the Effective Date, the Successor Agent receives any principal, interest or other amount owing to Existing Agent under the Credit Agreement or any other First Lien Loan Document, the Successor Agent agrees that such payment shall be held in

6

trust for the Existing Agent, and the Successor Agent shall return such payment to the Existing Agent.

11.    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of each of the parties hereto.

12.    <u>Limitation</u>.  Each of the Borrower, each Guarantor, the Successor Agent and each Required Lender hereby agrees that this Agreement (i) does not impose on the Existing Agent affirmative obligations or indemnities to which it was not already subject, as of the date of its petition commencing its proceeding under chapter 11 of the Bankruptcy Code, and that could give rise to any administrative expense claims other than claims arising as a result of (x) the failure by Lehman to perform any of its obligations hereunder or (y) any representation or warranty of Lehman set forth herein not being true and correct on and as of the date hereof and on and as of the Effective Date and (ii) is not inconsistent with the terms of the Credit Agreement.

13.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall be one and the same instrument.

14.    <u>Headings</u>.  The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

15.    <u>Interpretation</u>.  This Agreement is a First Lien Loan Document for the purposes of the Credit Agreement.

16.    <u>Confidentiality</u>.  Schedule 1 to this Agreement is exclusively for the information of the parties hereto and the information therein may not be disclosed to any third party or circulated or referred to publicly without the prior written consent of Lehman, which consent shall not be unreasonably withheld, delayed or conditioned, except that this Agreement, including such Schedules, may be disclosed, if required, in any legal, judicial or administrative proceeding or as otherwise required by law or regulation or as requested by a governmental or regulatory authority.

17.    <u>Confirmation of Guaranties</u>.  By signing this Agreement, each Guarantor hereby confirms that (i) the obligations of the Loan Parties under the Credit Agreement as modified hereby and the other First Lien Loan Documents (x) are entitled to the benefits of the guarantees set forth in the First Lien Guarantee and Collateral Agreement and (y) constitute Obligations, and (ii) notwithstanding the effectiveness of the terms hereof, the guarantees set forth in the First Lien Guarantee and Collateral Agreement are, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects.

18.    <u>APPLICABLE LAW</u>.  THIS AGREEMENT SHALL BE GOVERNED BY, AND BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[Signature page follows]

7

      IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

**LEHMAN COMMERCIAL PAPER INC.,**
as Existing Agent

By: _____

Name: FRANCIS CHANG

Title: Authorized Signatory

**BARCLAYS BANK PLC,**
as Successor Agent

By: _____
Name: Craig J. Malloy
Title: Director

**VEYANCE TECHNOLOGIES, INC.,**
as Borrower

By: _____

Name: Benjamin J. Schlater

Title: Treasurer & Director of Corporate
Strategy

[SIGNATURE PAGE TO AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT]

**EPD HOLDINGS, INC.,**
as a Guarantor

By: _____
Name: Benjamin J. Schlater
Title:
        Treasurer & Director of Corporate
        Strategy

**EPD INTERNATIONAL SALES CORP.,**
as a Guarantor

By: _____
Name: Benjamin J. Schlater
Title:
        Treasurer

**BELT CONCEPTS OF AMERICA, INC.,**
as a Guarantor

By: _____
Name: Benjamin J. Schlater
Title:
        Treasurer

**COSMOFLEX, INC.,**
as a Guarantor

By: _____
Name: Benjamin J. Schlater
Title:
        Treasurer

**SPECIALTY FABRICS AND CONVERTING, INC.,**
as a Guarantor

By: _____
Name: Benjamin J. Schlater
Title:
        Treasurer

[SIGNATURE PAGE TO AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT]

**SPECIALTY YARN & CONVERTING, INC.,**
as a Guarantor

By:  _____
Name:  Benjamin J. Schlater
Title:
       Treasurer


**VEYANCE INDUSTRIAL SERVICES, INC.,**
as a Guarantor

By:  _____
Name:  Benjamin J. Schlater
Title:
       Treasurer


**MONK MINING SUPPLY, INC.,**
as a Guarantor

By:  _____
Name:  Benjamin J. Schlater
Title:
       Treasurer


[SIGNATURE PAGE TO AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT]

**LEHMAN COMMERCIAL PAPER INC.,**
as a Lender

By: _____

Name: Francis J. Chang
Title: Authorized Signatory

[SIGNATURE PAGE TO AMENDMENT, RESIGNATION, WAIVER, CONSENT AND APPOINTMENT AGREEMENT]

Barclays Bank PLC,
as a Lender

By: _____
Name: Craig J. Malloy
Title: Director


By: _____
Name:
Title:

Schedule 1

Expenses

Payment in full of the following amounts (in the aggregate, the "Expenses"):

Amount

Costs and Expenses Payable by Borrower (the "Costs and Expenses"):

| | |
|---|---|
| Costs and Expenses (including legal fees) | $8,833.50 |

Wire Transfer Information for the Payoff Amount:

Credit Bank: JPMorgan Chase Bank, 500 Stanton Christiana Road, Newark, DE 19713
ABA#: 021000021
For Credit To: Weil, Gotshal & Manges LLP
Account No. 0158-37-430
Ref: 73683.4013

Schedule 2

Collateral

**Notes and Associated Allonges**

| Payor | Payee | Principal Amount | Date of Note | Due date |
|---|---|---|---|---|
| Veyance Hong Kong Co., Ltd. | Veyance Technologies, Inc. | USD $17,000,000 | March 20, 2009 | March 20, 2010 |
| EPD Luxembourg S.a.r.l. | Veyance Technologies, Inc. | EUR 44,230,791.42 | July 14, 2008 | July 31, 2017 |
| Veyance Hong Kong Co., Ltd. | Veyance Technologies, Inc. | USD $10,000,000 | May 8, 2008 | May 29, 2009 |
| Veyance Hong Kong Co., Ltd. | Veyance Technologies, Inc. | USD $20,000,000 | May 9, 2008 | May 29, 2009 |
| Veyance Hong Kong Co., Ltd. | Veyance Technologies, Inc. | USD $7,366,000 | April 2, 2008 | November 30, 2017 |
| Veyance Hong Kong Co., Ltd. | Veyance Technologies, Inc. | USD $29,000,000 | November 30, 2007 | November 30, 2017 |
| EPD Australia Pty Ltd. | Veyance Technologies, Inc. | AUD $27,848,511 | July 31, 2007 | July 31, 2017 |
| Engineered Rubber Products of Mexico, S. de R.L. de C.V. | Veyance Technologies, Inc. | $527,155,435 Mexican Pesos | July 31, 2007 | July 31, 2017 |
| Veyance Technologies South Africa (Pty) Ltd. | Veyance Technologies, Inc. | ZAR 155,120,186 | July 31, 2007 | July 31, 2017 |
| EPD Participacoes do Brasil Ltda. | Veyance Technologies, Inc. | BRL 126,894,722.75 | July 31, 2007 | July 31, 2017 |
| Veyance Technologies Canada, Inc. | Veyance Technologies, Inc. | CAD $126,214,919 | July 31, 2007 | July 31, 2017 |

**Stock Certificates and Associated Stock Powers**

| Grantor | Stock Issuer | Class of Stock | Stock Cert. No. | Par Value | No. of Shares Owned |
|---|---|---|---|---|---|
| The Goodyear Tire & Rubber Company | Belt Concepts of America, Inc. | Capital stock | 2 | $100 | 100 |
| The Goodyear Tire & Rubber Company | Cosmoflex, Inc. | Capital stock | 1 | No par value | 350 |
| The Goodyear Tire and Rubber Company | Cosmoflex, Inc. | Capital stock | 3 | No par value | 350 |
| The Goodyear Tire & Rubber Company | Cosmoflex, Inc. | Capital stock | 5 | No par value | 1,300 |
| Veyance Technologies, Inc. | EPD International Sales Corp. | Common stock | 3 | $.01 | 1,000 |
| Veyance Technologies, Inc. | Veyance Technologies | Common stock | 4 | - | 41,019,849 |

| Grantor | Stock Issuer | Class of Stock | Stock Cert. No. | Par Value | No. of Shares Owned |
|---|---|---|---|---|---|
| | Canada, Inc. | | | | |
| Veyance Technologies, Inc. | EPD Australia Pty Limited | Ordinary shares | 2 | - | 5,742,723 |
| EPD Holdings, Inc. | Veyance Technologies, Inc. | Common stock | 2 | $.01 | 1,000 |
| Belt Concepts of America, Inc. | Specialty Fabrics & Converting, Inc. | Common stock | 1 | $1.00 | 1,000 |
| Veyance Technologies, Inc. | Specialty Yarn & Converting, Inc. | Common stock | 1 | No par value | 100 |
| Veyance Technologies, Inc. | Veyance Industrial Services, Inc. | Common stock | 1 | $0.0001 | 100 |
| Veyance Technologies, Inc. | Monk Mining Supply, Inc. | Common stock | 2 | $10.00 | 1,000 |
| Veyance Technologies, Inc. | Specialty Fabrics & Converting, Inc. | Common Stock | 2 | $1.00 | 1,000 |

<u>Schedule 3</u>

1.      Each of (a) EPD Holdings, Inc., Veyance Technologies, Inc., EPD International Sales Corp., Belt Concepts of America, Inc., Cosmoflex, Inc. and Specialty Fabrics and Converting, Inc. and (b) by entry into an Assumption Agreement, Specialty Yarn & Converting, Inc., Veyance Industrial Services, Inc., and Monk Mining Supply, Inc., in each case of clauses (a) and (b), is party to the First Lien Guarantee and Collateral Agreement.

2.      All outstanding equity interests and promissory notes (with appropriate transfer instruments) owned by or on behalf of each Loan Party and required to be pledged pursuant to the First Lien Guarantee and Collateral Agreement have been pledged pursuant to the First Lien Guarantee and Collateral Agreement.

3.      All Uniform Commercial Code financing statements and other appropriate documents and instruments required to create and/or perfect the Liens intended to be created and/or perfected under the First Lien Guarantee and Collateral Agreement have been filed, registered, recorded or delivered.

4.      All consents and approvals required to be obtained in connection with the execution and delivery of all Security Documents, the performance of the obligations thereunder and the granting of the Liens thereunder have been obtained.

#4815-1626-7268

<u>Schedule 4</u>

The Existing Agent shall have delivered to the Successor Agent:

a)        copies of the First Lien Loan Documents existing as of the date hereof, together with all amendments and supplements thereto;

b)        a list of all of the Lenders and their respective commitments as of the close of business on the date of this Agreement;

c)        an executed assignment of mortgage or deed of trust (as applicable and if reasonably necessary) with regard to each of the mortgages and deeds of trust in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content or filing of any such assignments or the applicable mortgages);

d)        description of any additional documents prepared to transfer, as of record, the security interests, financing statements and all other notices of security interests and Liens previously filed by it in its capacity as Administrative Agent (<u>provided</u> that neither the Existing Agent nor the Successor Agent shall be responsible for the form, content or filing of any such financing statements, instruments or notices);

e)        (i) copies of all of the Existing Agent's books and records concerning the Loans (including without limitation all of those books and records that evidence the amount of principal, interest and other sums due under the First Lien Loan Documents), (ii) such other information and data as shall be reasonably necessary for the Successor Agent to establish an IntraLinks website (or substantially similar electronic transmission system) for purposes of general communications with the parties to the First Lien Loan Documents; and

f)        an executed assignment of each Intellectual Property Security Agreement in its capacity as Collateral Agent (provided that the Existing Agent shall not be responsible for the form or content of any such assignment).