**Hearing Date and Time: February 14, 2012 at 10:00 a.m. (Eastern Time)**

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
Tel:  (212) 839-5300
Fax:  (212) 839-5599
Bryan Krakauer
Robert J. Robinson
Alex R. Rovira
Sophia P. Mullen

*Counsel For Heungkuk Life Insurance Co. Ltd.,*
*Heungkuk Fire & Marine Insurance Co. Ltd.,*
*Meritz Fire and Marine Insurance Co, Ltd. And Woori Bank*
*And Special Counsel For BNY Mellon Corporate*
*Trustee Services Limited And Granite Finance Limited,*
*In Each Case As Their Respective Interests Shall Appear*

| | |
|---|---|
| REED SMITH LLP<br>599 Lexington Avenue<br>New York, NY  10022<br>Tel: (212) 521-5400<br>Fax:  (212) 521-5450<br>Eric A. Schaffer<br>Michael J. Venditto<br>*Counsel For BNY Mellon Corporate Trustee Services Limited* | CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, NY  10019<br>Tel:  (212) 878-8000<br>Fax:  (212) 878-8375<br>Jennifer C. DeMarco<br>David A. Sullivan<br>*Counsel For Granite Finance Limited* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
Lehman Brothers Holdings Inc., et al.,                      :    Case No. 08-13555 (JMP)
                                                            :
            Debtors.                                        :    (Jointly Administered)
                                                            :
------------------------------------------------------------ x

**OBJECTION TO PROPOSED ASSUMPTION OF DERIVATIVE CONTRACTS**
**PURSUANT TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Heungkuk Life Insurance Co. Ltd. and Heungkuk Fire & Marine Insurance Co. Ltd. (together, "Heungkuk"), Meritz Fire and Marine Insurance Co, Ltd. ("Meritz"), Woori Bank ("Woori"), BNY Mellon Corporate Trustee Services Limited (as successor trustee to J.P. Morgan Corporate Trustee Services Limited and formerly known as BNY Corporate Trustee Services Limited, the "Dante Trustee") and Granite Finance Limited (solely in connection with its USD 30,000,000 Series 2006-11 and USD 10,000,000 Series 2006-6 issues of Credit Linked Notes due 2013, "Granite"; collectively, the "Objecting Parties"), by and through their undersigned counsel, hereby file this objection and reservation of rights (the "Objection") relating to the proposed assumption of certain contracts in connection with:

(i) the notes of Granite having the following series designations: Series 2006-11 issue of USD 30,000,000 Credit Linked Notes due 2013 and Series 2006-6 issue of USD 10,000,000 Credit Linked Notes due 2013, and

(ii) the notes of Lion City CDO Limited ("Lion City") having the following series designations: Series No: 2006-3 USD 30,000,000 Synthetic Portfolio Notes Due 2013, Series No: 2006-1 USD 10,000,000 Synthetic Portfolio Notes Due 2013 and Series No: 2006-2 USD 20,000,000 Synthetic Portfolio Notes Due 2013.[1]

This Objection pertains only to the series of transactions related to these referenced notes.[2]

Heungkuk and Meritz are direct owners of the Series 2006-11 and 2006-6 notes issued by Granite and beneficiaries of the related Series 2006-3 and 2006-1 notes issued by Lion City. Woori is the direct owner of the Series 2006-2 notes issued by Lion City. Heungkuk, Meritz and Woori are the principal non-debtor parties with an economic interest in the Lion City

---

[1] The Debtors have consented to Heungkuk filing this Objection on January 6, 2012, notwithstanding an original filing deadline of November 10, 2011. To the extent that the Debtors do not consent or otherwise object to the other Objecting Parties also filing this Objection on January 6, 2012, the Objecting Parties are prepared to supplement this Objection to demonstrate why this filing should be allowed with respect to the other Objecting Parties and to seek leave of the Court to allow this filing.

[2] This Objection by Granite is limited to those items set forth herein that relate to the agreements in connection with the Granite Notes (as defined herein), and this Objection by the Dante Trustee is limited to those items set forth herein that related to the agreements in connection with the Lion City Notes (as defined herein).

and Granite contracts which are the subject of this Objection. The Dante Trustee serves as trustee in respect of certain notes issued under the Dante Programme (as defined below), including those issued by Lion City.[3] Granite is an issuer of certain notes issued under a repackaging program arranged by Lehman Brothers International (Europe) ("LBIE").[4]

The Objecting Parties are filing this Objection in response and in opposition to the proposed assumption by the above-captioned debtors (collectively, "Lehman" or the "Debtors"), pursuant to Sections 11.1 and 11.2 of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 19627] (the "Plan"), of certain executory contracts involving over-the-counter derivative transactions between Granite and Lehman Brothers Special Financing Inc. ("LBSF") and between Lion City and LBSF. Specifically, the Objecting Parties object to the Debtors' stated proposal to assume the following:

(i) LBSF contract with counterparty Granite Finance Limited Series 2006-11;
(ii) LBSF contract with counterparty Granite Finance Limited Series 2006-6;
(iii) LBSF contract with counterparty Lion City CDO 2006-3 LTD;
(iv) LBSF contract with counterparty Lion City CDO Limited Series 2006-1; and
(v) LBSF contract with counterparty Lion City CDO 2006-2 LTD.

See Debtors' Plan Supplement [Docket No. 21254] (the "Plan Supplement"), Exhibit 2, at pp. 52, 79.[5]

---

[3] On November 11, 2011, the Dante Trustee filed an objection [Docket No. 22010] (the "Dante Trustee Objection") to the Debtors' proposed assumption of derivative contracts, arguing, inter alia, that in many cases notice of such assumption and the corresponding proposed cure amounts was inadequate. This Objection supplements the Dante Trustee Objection as it pertains to the series of transactions noted in this Objection.

[4] On November 15, 2011, Granite filed an objection [Docket No. 22175] (the "Granite Objection") to the Debtors' proposed assumption of derivative contracts on grounds substantially similar to those set forth in the Dante Trustee Objection, and further on the ground that the Debtors had failed to demonstrate adequate assurance of future performance under such derivative contracts. This Objection supplements the Granite Objection and corrects the Granite Objection to the extent that the Granite Objection can be read as suggesting that any of the contracts solely in respect of the series of transactions noted in this Objection have been terminated.

[5] On December 6, 2011, the Court entered an order confirming the Plan [Docket No. 23023] (the "Confirmation Order"). Pursuant to 11 U.S.C. § 1123(b)(2), the Debtors were required to seek to assume or to reject their executory contracts and unexpired leases no later than the date of the Confirmation Order. Based upon this affirmative statutory requirement, the Debtors may not reserve an option to assume or reject post-confirmation.

3

**RELEVANT BACKGROUND**

A.   **The Granite Transactions**

    1.   Heungkuk is the beneficial holder of Series 2006-11 USD 30,000,000 Credit Linked Notes due 2013 issued by Granite on June 13, 2006 (the "Heungkuk Granite Notes"). Meritz is the beneficial holder of Series 2006-6 USD 10,000,000 Credit Linked Notes due 2013 issued by Granite on February 26, 2006 (the "Meritz Granite Notes"; together with the Heungkuk Granite Notes, the "Granite Notes").[6]

    2.   Granite is a company incorporated with limited liability in the Cayman Islands, commonly referred to as a special purpose entity, formed to issue notes pursuant to a repackaging program designed and implemented by LBIE. HSBC Trustee (C.I.) Limited serves as trustee in relation to the Granite Notes (the "Granite Trustee").

    3.   On or about June 13, 2006, pursuant to a multi-party "Constituting Instrument", Granite and LBSF entered into an ISDA Master Agreement (the "Heungkuk Granite ISDA") and a credit default swap transaction evidenced by a corresponding confirmation (the "Heungkuk Granite Confirmation") in connection with the issuance of the Heungkuk Granite Notes.

    4.   On or about February 28, 2006, pursuant to a multi-party "Constituting Instrument", Granite and LBSF entered into an ISDA Master Agreement (the "Meritz Granite ISDA"; together with the Heungkuk Granite ISDA, the "Granite ISDA Master Agreements") and a credit default swap transaction evidenced by a corresponding confirmation (the "Meritz Granite

---

Rather, any modification to the confirmed status of assumed or rejected executory contracts is subject to the consent of all parties, and, in the case of the Debtors' contracts with either Granite or Lion City, to the consent of the Objecting Parties.

[6] The terms of issuance of the Meritz Granite Notes were, on information and belief, amended and restated on July 12, 2006.

4

Confirmation"; together with the Heungkuk Granite Confirmation, the "Granite Confirmations"; the credit default swap transactions evidenced by the Granite Confirmations, collectively, the "Granite Swap Transactions") in connection with the issuance of the Meritz Granite Notes.

5.     The terms of each of the Granite ISDA Master Agreements, the Granite Swap Transactions thereunder and substantively all transaction documentation in respect of the Granite Notes, all of which entered into effect pursuant to the above-referenced "Constituting Instruments", are governed by English law, and all relevant parties thereto expressly submitted to the jurisdiction of the English courts in connection with proceedings thereunder.

6.     Lehman Brothers Holdings Inc. ("LBHI") served as the credit support provider, or guarantor, of LBSF's obligations under the Granite ISDA Master Agreements (including, consequently, under the Granite Swap Transactions).

**B.     The Lion City Transactions**

7.     The Heungkuk Granite Notes are secured by, inter alia, Series No: 2006-3 USD 30,000,000 Synthetic Portfolio Notes Due 2013 issued by Lion City on June 12, 2006 (the "Heungkuk Lion City Notes").  The Meritz Granite Notes are secured by, inter alia, Series No: 2006-1 USD 10,000,000 Synthetic Portfolio Notes Due 2013 issued by Lion City on March 7, 2006 (the "Meritz Lion City Notes").  Woori is the holder of Series No: 2006-2 USD 20,000,000 Synthetic Portfolio Notes Due 2013 issued by Lion City on April 13, 2006 (the "Woori Lion City Notes"; together with the Heungkuk Lion City Notes and the Meritz Lion City Notes, the "Lion City Notes").

8.     Lion City is a company incorporated with limited liability in the Cayman Islands, commonly referred to as a special purpose entity, formed to issue notes secured by assets held in trust pursuant to a multi-issuer secured obligation program (the "Dante Programme")

5

arranged by LBIE.  The Dante Programme is evidenced by a Principal Trust Deed (the "Principal Trust Deed") dated October 10, 2002, as amended and restated from time to time, between Dante Finance Public Limited Company ("Dante") and the Dante Trustee.  Lion City acceded to the Principal Trust Deed by executing deeds of accession from time to time.  The Principal Trust Deed was supplemented pursuant to Supplemental Trust Deed and Drawdown Agreements respectively dated March 7, 2007 (as to the Meritz Lion City Notes), April 13, 2006 (as to the Woori Lion City Notes) and June 12, 2006 (as to the Heungkuk Lion City Notes), among Lion City, the Dante Trustee, LBSF, LBIE and certain other parties (the "Supplemental Trust Deeds"; and the Principal Trust Deed, as supplemented by the relevant Supplemental Trust Deed with respect to a series of Lion City Notes, being the "Trust Deed" therefor).  Lion City issued each series of the Lion City Notes under and pursuant to the relevant Trust Deed.  The terms of each Trust Deed specify that it is to be governed by English law.

    9. On October 10, 2002, Dante and LBSF entered into an ISDA Master Agreement, which was amended and restated from time to time thereafter and to which Lion City acceded, on information and belief, contemporaneously and in connection with the issuance of the Heungkuk Lion City Notes (the "Heungkuk Lion City ISDA").  Pursuant to the Heungkuk Lion City ISDA, Lion City and LBSF entered into a credit default swap transaction evidenced by a corresponding confirmation dated June 12, 2006 (the "Heungkuk Lion City Confirmation").  Lion City similarly acceded again to such ISDA Master Agreement, contemporaneously and in connection with the issuance of the Meritz Lion City Notes (the "Meritz Lion City ISDA").  Pursuant to the Meritz Lion City ISDA, Lion City and LBSF entered into a credit default swap transaction evidenced by a corresponding confirmation dated March 7, 2006 (the "Meritz Lion City Confirmation").  Likewise, Lion City acceded yet again to such ISDA Master Agreement,

6

contemporaneously and in connection with the issuance of the Woori Lion City Notes (the "Woori Lion City ISDA"; together with the Heungkuk Lion City ISDA and Meritz Lion City ISDA, the "Lion City ISDA Master Agreements"). Pursuant to the Woori Lion City ISDA, Lion City and LBSF entered into a credit default swap transaction evidenced by a corresponding confirmation dated April 13, 2006 (the "Woori Lion City Confirmation"; together with the Heungkuk Lion City Confirmation and Meritz Lion City Confirmation, the "Lion City Confirmations"; and the credit default swap transactions evidenced thereby, the "Lion City Swap Transactions").

10. The terms of each of the Lion City ISDA Master Agreements, the Lion City Swap Transactions thereunder and substantially all transaction documentation in respect of the Lion City Notes, all of which are subject to the applicable Trust Deed, are governed by English law, and all relevant parties thereto expressly submitted to the jurisdiction of the English courts in connection with proceedings thereunder.

11. LBHI served as the credit support provider, or guarantor, of LBSF's obligations under the Lion City ISDA Master Agreements (including, consequently, under the Lion City Swap Transactions).

C. **Early Termination of the Lion City Swap Transactions**

12. On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates commenced the above-captioned chapter 11 cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

13. On October 3, 2008, LBSF commenced its chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

7

14. On January 7, 2009, February 19, 2009 and February 20, 2009, Lion City sent notices (each, a "Lion City Default Notice") to LBSF specifying that an Event of Default[7] had occurred under Section 5(a)(vii) of the each of the Woori, Heungkuk and Meritz Lion City ISDAs, respectively, as a result of LBSF's bankruptcy filing.

    a. The Lion City Default Notice with respect to the Woori Lion City ISDA specified January 12, 2009 as the Early Termination Date in respect of "all of" the Lion City Swap Transactions thereunder.

    b. In the Lion City Default Notices regarding the Heungkuk and Meritz Lion City ISDAs, Lion City designated February 23, 2009 as the Early Termination Date in respect of "all of" the Lion City Swap Transactions thereunder.[8] The latter two Lion City Default Notices further stated that an Additional Termination Event as described in Paragraph 11(h)(iv)(d) of the Credit Support Annex to the Schedule to the respective Lion City ISDA Master Agreement had occurred following the occurrence of a "Rating Event" as so described, in connection with which LBSF was the Affected Party.

    c. Lion City sent a supplemental notice (for these purposes also a "Lion City Default Notice") to LBSF on July 17, 2009 relating to the Woori Lion City ISDA, stating that a similar Additional Termination Event had occurred thereunder and further specifying an Early Termination Date of July 24, 2009 as to "all transactions" under such Lion City ISDA Master Agreement to the extent the prior designation of January 12, 2009 as such an Early Termination Date was not effective.

Lion City explicitly reserved all of its rights under each of the Lion City Default Notices. The Lion City Default Notices were valid and effectively given in accordance with the terms of the respective transaction documents and applicable law so as to designate the stated Early Termination Dates as such for the purposes of the Lion City ISDA Master Agreements, with the consequences of such designation being set forth in the Lion City ISDA Master Agreements and

---

[7] Capitalized terms used but not defined herein shall, in this paragraph and the following paragraph, have the meanings ascribed to such terms in or pursuant to the Lion City ISDA Master Agreements.

[8] Only one Lion City Swap Transaction was entered into under each of the Lion City ISDA Master Agreements.

also, to the extent set forth in the Lion City ISDA Master Agreements, in the applicable Trust Deed.

15. On January 12, 2010, Lion City sent three letters (each, a "Statement of Close-Out Calculation") to LBSF each specifying, among other things, the respective Settlement Amount and the Unpaid Amounts payable in respect of the designated Early Termination Date pursuant to the Lion City ISDA Master Agreements. The Statements of Close-Out Calculation were valid and effectively given in accordance with the terms of the respective transaction documents and applicable law.

D. **LBSF Commences an Adversary Proceeding against Lion City**

16. On September 14, 2010, LBSF commenced an adversary proceeding captioned LBSF v. The Bank of New York Mellon Corporation, BNY Corporate Trustee Services Limited, Adv. Pro. No. 10-3545 (JMP) (the "Adversary Proceeding") against numerous defendants, including Lion City, by filing a complaint (the "Complaint") seeking, among other relief: (i) declaratory judgment that certain clauses modifying LBSF's right to priority of payment under certain transaction documents related to credit default swap agreements, based solely upon LBSF and its ultimate parent, LBHI, filing for bankruptcy, constitute unenforceable ipso facto clauses that violate sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code and, alternatively, (ii) judgment that such modification of priority constitutes a preferential transfer, or a constructive fraudulent transfer, to or for the benefit of the defendant noteholders and their related trustees that is avoidable pursuant to sections 547 or 548 (as applicable) of the Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy Code, LBSF is entitled to recover and preserve its senior payment priority for the benefit of its estate.

9

17. On October 29, 2010, the Bankruptcy Court entered an order staying several avoidance actions, including the Adversary Proceeding, such that (i) all applicable deadlines (other than those related to completion of service) were suspended, (ii) all discovery and pre-trial conferences were not to be conducted and (iii) all motion practice and contested hearings or trials were prohibited. Such stay was subsequently extended on July 19, 2011 and may be extended further.

18. Granite is not a party to the Adversary Proceeding or any other similar adversary proceeding commenced by the Debtors.

19. An "SPV Derivatives ADR Proceeding" within the meaning of this Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, dated March 3, 2011 [Docket No. 14789] is currently pending in relation to the Woori Lion City Notes. No ADR proceedings have been commenced with respect to the transactions in which Heungkuk or Meritz participated.

E.  **Ambiguity Over What LBSF Seeks to Assume**

20. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan, which was subsequently amended on June 30, 2011, and most recently amended on August 31, 2011, when the Debtors filed the Plan.

21. On October 25, 2011, the Debtors filed the Plan Supplement. Exhibit 2 to the Plan Supplement listed certain derivative contracts as executory contracts to be assumed by the Debtors, pursuant to Section 11.1 and 11.2 of the Plan and effective (subject to the occurrence of the Effective Date) upon entry of the Confirmation Order. Exhibit 2 of the Plan Supplement identifies each of the following as counterparties: Granite Finance Limited Series

10

2006-11, Granite Finance Limited Series 2006-6, Lion City CDO 2006-3, Lion City CDO Limited Series 2006-1 and Lion City CDO 2006-2 LTD. The Debtors have not specified any agreements in any of the five corresponding fields entitled "Title of Agreement".

22. The notes on the cover of <u>Exhibit 2</u> of the Plan Supplement provide that, unless a specific derivative contract is noted for a specific counterparty, the applicable Debtor intends to assume all derivative contracts with each counterparty set forth on <u>Exhibit 2</u>, Part A. But nowhere does the Plan Supplement specifically identify exactly which contracts the Debtors are seeking to assume, and, for example, whether or not LBHI's guarantee is, or is not, asserted by the Debtors to constitute part of the derivative contracts which the Debtors seek to assume. What is more, there is also no indication in the Plan Supplement as to whether the Debtors are seeking to assume the Granite and Lion City ISDA Master Agreements as well as the Granite and Lion City Swap Transactions thereunder. As a preliminary matter, the Debtors need to specify their intentions in this regard, and after such specification, provide the Objecting Parties a reasonable period to respond.

## OBJECTION

### A. The Granite Transactions Can Be Assumed Only In Accordance With Section 365

23. Based on the limited information provided by the Debtors, the Objecting Parties and the Court cannot determine which transactions and/or agreements the Debtors seek to assume in connection with the Granite Notes. To the extent that the Debtors seek to assume the agreements specifically related to the Granite Notes in their entirety, the Objecting Parties do not object to such assumption of the relevant agreements (including the Granite ISDA Master Agreements, the Granite Swap Transactions thereunder, and related guarantees and contractual conditions, rights and obligations). The Objecting Parties do object to any attempt to assume

11

less than all such obligations, or to assume obligations under some documents (or parts thereof) and not others. The agreements to which the Debtors are party in connection with the Granite Notes (or other agreements or documents which are incorporated by reference therein, in whole or in part) comprise an integrated executory contract that can be assumed only in its entirety. See NLRB v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984); Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.), 78 F.3d 18, 24 (2d Cir. 1996) (quoting Bildisco); In re Texaco, Inc., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000) ("The law is clear that a debtor who assumes a lease or other executory contract assumes the contract cum onere, without any diminution in its obligations or impairment of the rights of the [other parties] in the present or the future."); Kopel v. Pasquale Campanile (In re Kopel), 232 B.R. 57, 63 (Bankr. S.D.N.Y. 1999) (noting that it is "axiomatic" than an executory contract "must be assumed cum onere").

24. Apart from the issue of the scope of executory contract assumption, there appears to be a separate dispute among the parties pertaining to LBSF's efforts to purport to terminate the Granite Swap Transactions. By notices, each dated July 14, 2009 (each, a "Granite Termination Notice"), LBSF notified Granite and the Granite Trustee of LBSF's assertion that a "Default Event" had occurred on October 28, 2008 with respect to the collateral (i.e., the Lion City Notes) for each of the Granite Notes and that an "Early Redemption Event" had therefore occurred with respect to each of the Granite Notes. The Granite Termination Notices further stated that the Granite Swap Transactions automatically terminated on October 28, 2008 as a result of such Early Redemption Events. Granite and, respectively, Heungkuk and Meritz, challenge the validity of the Granite Termination Notices, among other things, on the basis that such termination is contrary to the terms of the applicable documents and applicable English law.

25.   It is unnecessary and inappropriate to decide this contract dispute in the context of the Debtors' proposed assumption of derivative contracts. Matters of contract interpretation and application cannot, consistent with due process, be resolved as part of a broader, mass executory contract assumption process. Also, as a matter of comity, questions of English law should be heard and determined by the English courts.[9] Further, these are matters of private rights which are not susceptible for determination by a court of the United States that is a non-Article III court. See Stern v. Marshall, 131 S. Ct. 2594 (2011).

B.   **The Lion City Swap Transactions Cannot be Assumed**

26.   The Objecting Parties oppose the terms of the Debtors' proposed assumption of the Lion City-related derivative contracts. Early Termination Dates were duly designated with respect to the Lion City Swap Transactions almost three years ago, rendering the applicable Lion City Swap Transaction non-executory and incapable of being assumed under section 365 of the Bankruptcy Code.

27.   Courts in this Circuit consistently have held that section 365 of the Bankruptcy Code does not permit assumption of a contract or lease that has expired by its own terms or has been terminated under applicable law because there is nothing left for the debtor to assume. See In re Balco Equities Ltd., Inc., 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004) ("Once the contract is no longer in existence, the right to assume it is extinguished. A contract may not be assumed under § 365 if it has already expired according to its terms.") (citations omitted); see also Bell v. The Alden Owners Inc., 199 B.R. 451, 462 (S.D.N.Y. 1996) (stating that "[o]nce a lease is terminated, however, nothing remains for a debtor to assume under section 365").

---

[9] It is not presently clear whether or not there are any material disputes between the parties as to applicable cure amounts under the relevant Granite derivative contracts. To the extent any disputes with respect to the appropriate cure amounts exist, they should also be determined by English courts and under English law.

13

Because early termination of the Lion City Swap Transactions occurred in January and February 2009, these transactions cannot be assumed now.[10]

28.  The Debtors have not challenged the Early Termination Dates for the Lion City Swap Transactions and do not have a legal basis to do so now. Each of the Lion City Swap Transactions is a "swap agreement" as that term is defined in section 101(53B) of the Bankruptcy Code, and each of the Lion City ISDA Master Agreements is a "swap agreement" within the meaning of clause (v) of section 101(53B). Lion City, as an entity that had an outstanding swap agreement with LBSF prior to the commencement of its bankruptcy case, is a "swap participant" as that term is defined in section 101(53C) of the Bankruptcy Code, entitled to all of the safe harbor protections under the Bankruptcy Code. The Debtors have not challenged these facts.

29.  In accordance with the Lion City ISDA Master Agreements and section 560 of the Bankruptcy Code, upon the occurrence of an "Event of Default" as defined in the Lion City ISDA Master Agreements, Lion City delivered the Lion City Default Notices on January 7, February 19 and 20, and July 17, 2009, designating an "Early Termination Date" for the Lion City Swap Transactions. Because the Lion City Swap Transactions were properly liquidated, terminated or accelerated by Lion City, such transactions are no longer executory and, therefore, the Debtors cannot assume such contracts under section 365.

---

[10] The Objecting Parties also submit that all the contracts pertaining to the Debtors and each of the series of Lion City Notes are integrated and may only be assumed in total (as to each Lion City Notes series). See AGV Productions, Inc., v. Metro-Goldwyn-Mayer, Inc. and Orion Pictures Corp., 115 F.Supp.2d 378, 391 (S.D.N.Y. 2000) (citing National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984) (holding that "[i]f an executory contract is assumed, it is said to be assumed cum onere, with all of its benefits and burdens") (emphasis added); see also In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994) (noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject). Accordingly, if the Court approves LBSF's assumption of solely the Lion City ISDA Master Agreements, then LBSF must assume the Lion City ISDA Master Agreements cum onere and therefore be subject to all of the terms and provisions of the Lion City ISDA Master Agreements, including the associated transaction documents such as the Trust Deeds to which the rights of LBSF under the Lion City ISDA Master Agreements are expressly made subject.

30. Because an Early Termination Date was duly designated in accordance with the applicable terms of the Lion City ISDA Master Agreements in relation to the Lion City Swap Transactions, the Debtors cannot assume the Lion City Swap Transactions.

C. **Any Substantive Disputes Relating to the Lion City Swap Transactions Should Not Be Addressed in the Context of the Assumption Request**

31. To the extent that there are disputes as to whether or not the instant derivative contracts have been terminated or any other disputes regarding the substantive terms or rights of the parties thereunder, such matters should not be determined in connection with the assumption request. The points made above in paragraph 25 with respect to the Granite transactions apply with even greater force with respect to the substantive disputes related to the Lion City transactions.

32. First, as noted above, there are obvious due process issues in trying to shoehorn the resolution of these and related contract disputes into an assumption process. A mass assumption process is not the proper procedure to litigate the substantive aspects of the Lion City Swap Transactions (if that is indeed what the Debtors are seeking to do). In addition to the Objecting Parties' right to be heard in the proper forum, the Objecting Parties are entitled to be apprised of and to respond to the Debtors' specific contentions, to propound discovery, to adduce evidence in opposition to the Debtors' contentions and to fully brief any issues. Notably, a dispute between Lion City and LBSF relating to the Lion City Swap Transactions is already the subject of an Adversary Proceeding brought by the Debtors against Lion City and others.

33. Second, the substantive rights of the parties are matters of English law and matters of private rights that arise out of integrated and co-dependent transaction documents rather than separate, severable agreements that exist and can be construed in isolation from one another. Interpretation of the governing documents for the derivative contracts that the Debtors

15

seek to assume is a matter of English law to be decided by the English courts. There are matters of comity and lack of Article III jurisdiction in connection with the litigation of private rights at issue in these disputes (see Stern v. Marshall, 131 S. Ct. 2594 (2011)) which preclude substantive contract determinations by this Court in connection with the assumption process.

34.    It would not be appropriate to allow the Debtors to use the proposed assumption of the Lion City derivative contracts to avoid the proper forum, assume jurisdiction, and circumvent the rules of procedure.[11] The Objecting Parties respectfully request that the issues addressed before this Court in connection with any assumption request be appropriately limited.

### D. The Debtors May Not Assume the Lion City or Granite Contracts Unless the Debtors Cure All Existing Defaults

35.    Due to the lack of information and clarity of the Debtors' intentions with respect to the specific contracts it seeks to assume, as well as the complex and interrelated nature of the relevant swap transactions and associated debt issuances, the Objecting Parties and the Court cannot determine exactly what defaults currently exist under the subject documents. It also appears that no serious attempts have yet been made by the Debtors to identify cure amounts or any other defaults which must be cured, or any steps to be taken to assure future contract performance in order to assume these contracts. Until the Debtors provide such clarity and the Objecting Parties have a reasonable time period to respond, all of the Objecting Parties'

---

[11] The need for substantive contract matters governed by English law to be heard by the English courts is important. Each of the Trust Deeds, the Granite Notes "Constituting Instruments" and other transaction documents, the Lion City and Granite ISDA Master Agreements and the Lion City and Granite Swap Transactions thereunder are explicitly governed by English law and subject to the jurisdiction of the English courts. Consequently, any disputes relating to the Lion City ISDA Master Agreements or the Lion City Swap Transactions that are the subject of the Adversary Proceeding properly should be tried by the Debtors in the English courts. The Objecting Parties believe that the English courts provide the only appropriate forum for such matters.

respective rights for payment of cure amounts, compensation for pecuniary losses and assurance as to future performance, prior to any assumption by LBSF, are reserved.

36.     The Objecting Parties are entitled to such protections under applicable bankruptcy law.  Section 365 requires a debtor to cure all existing defaults (or provide adequate assurance that it will cure all such defaults), compensate the counterparty to the agreement for any pecuniary losses resulting from such defaults (or provide adequate assurance that it will so compensate such counterparty) and provide adequate assurance of future performance under such contract.  11 U.S.C. § 365(b)(1)(A) & (B), (f)(2)(A); see In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996) (requiring the cure of both prepetition and post-petition defaults in lease payments or adequate assurance of such cure prior to assumption of the subject lease).  The language of section 365(b)(1) is unequivocal that a party to an executory contract must be paid all amounts due under the contract before the contract may be assumed.  In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996).  Here, the Debtors must cure all known defaults under the relevant Lion City and Granite contracts (or adequately assure that such cure will be forthcoming) promptly, compensate Lion City, Granite and each other relevant party under the applicable transaction documents for the actual pecuniary loss resulting from LBSF's default (or provide each such party adequate assurance thereof) and provide adequate assurance of the future performance of all applicable obligations to each relevant party under the relevant Lion City and Granite contracts before these contracts may be assumed.

## RESERVATION OF RIGHTS

37.     The Objecting Parties reserve all of their rights and remedies under the Granite ISDA Master Agreements and the Lion City ISDA Master Agreements, the respective Granite Swap Transactions and Lion City Swap Transactions thereunder and all ancillary

17

documents related thereto, including, without limitation, the Lion City Default Notices, the Statements of Close-Out Calculation, the Bankruptcy Code and any and all other rights and remedies existing under law or in equity or otherwise, whether or not described in this Objection, and no failure to exercise or delay in exercising any rights or remedies shall constitute a waiver of any of such rights or remedies. To the extent the Debtors seek to modify Granite's, Lion City's, the Granite Trustee's, the Dante Trustee's, Heungkuk's, Meritz's or Woori's rights under the Granite and/or Lion City ISDA Master Agreements/Swap Transactions and/or any ancillary documents related thereto, including, without limitation, the Lion City Default Notices, through assumption, or through any other provision of the Plan or Confirmation Order, such attempt must be denied and the Court should confirm that nothing in the Plan limits, affects or modifies: (i) any rights of any such parties under the Granite and Lion City ISDA Master Agreements/Swap Transactions and all ancillary documents related thereto or (ii) any defenses (including any right of setoff or recoupment) of any such parties.

WHEREFORE, without in any way limiting its rights, the Objecting Parties hereby respectfully request that the Court (i) deny the relief requested by the Debtors with respect to the Granite and Lion City derivative contracts; and (ii) grant such other relief as is requested by the Objecting Parties herein or that is otherwise just and proper.

Dated: January 6, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Sophia P. Mullen

Bryan Krakauer
Robert J. Robinson
Alex R. Rovira
Sophia P. Mullen
787 Seventh Avenue
New York, NY  10019
Tel:  (212) 839-5300
Fax:  (212) 839-5599

*Counsel For Heungkuk Life Insurance Co. Ltd., Heungkuk Fire & Marine Insurance Co. Ltd., Meritz Fire and Marine Insurance Co, Ltd. And Woori Bank And Special Counsel For BNY Mellon Corporate Trustee Services Limited And Granite Finance Limited], In Each Case As Their Respective Interests Shall Appear*

REED SMITH LLP

/s/ Eric A. Schaffer

Eric A. Schaffer
Michael J. Venditto
599 Lexington Avenue
New York, NY  10022
Tel:  (212) 521-5400
Fax:  (212) 521-5450

*Counsel For BNY Mellon Corporate Trustee Services Limited*

19

CLIFFORD CHANCE US LLP

/s/ David A. Sullivan

Jennifer C. DeMarco
David A. Sullivan
31 West 52nd Street
New York, NY  10019
Tel:  (212) 878-8000
Fax:  (212) 878-8375

*Counsel For Granite Finance Limited*