WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell

-and-

MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500
David S. Cohen

Attorneys for the Official Committee
of Unsecured Creditors of the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    08-13555 (JMP)
                                              :
                      Debtors.                :    (Jointly Administered)
                                              :
------------------------------------------------------------------x
```

**REPLY IN SUPPORT OF JOINT MOTION OF DEBTORS**
**AND CREDITORS' COMMITTEE TO EXTEND STAY OF**
**AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors in possession (together, the "Debtors," and collectively with their

non-Debtor affiliates, "Lehman") and the Official Committee of Unsecured Creditors of the

Debtors (the "Committee"), file this reply to the objection interposed to the joint motion of the

Debtors and the Committee, dated December 22, 2011, to extend the stay of avoidance actions

and grant certain related relief [ECF No. 23674] (the "Motion")[1] and respectfully represent:

**Preliminary Statement**

1.     The extension of the Stay affects hundreds of parties who are named

defendants in various Avoidance Actions filed by the Debtors.  Yet, only one objection to the

requested relief has been filed:  the liquidators of Lehman Brothers Australia Limited ("LB

Australia"), which is not even a party to any of the Avoidance Actions, filed an objection to the

Motion, dated January 4, 2012 [ECF No. 24029] (the "Original Objection").  On January 6,

2012, LB Australia filed an amended objection [ECF No. 24100] (the "Objection").  The

Objection by LB Australia seeks to activate an Avoidance Action that would force the Debtors

and over 100 defendants who do not object to an extension of the Stay to actively litigate and

spend significant sums doing so.  The Objection of LB Australia should be overruled.

2.     LB Australia is a noteholder that holds interests in six series of notes

under a synthetic debt repackaged note issuance program known as the "Dante Programme."  *See

Limited Objection of Liquidators of Lehman Brothers Australia Limited to Third Amended Joint

Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, dated November

4, 2011, pp. 3-4 [ECF No. 21602]; *see also* Objection, at ¶ 2.  In addition, LB Australia contends

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2

that it is the subject of third-party claims in Australia related to its role as placement agent for the sale of Dante notes.  *See* Objection, at ¶ 3.

3.      LB Australia makes three arguments against extending the Stay, each of which is without merit and should be overruled.  First, LB Australia argues that because the pace of ADR settlements allegedly has slowed, it no longer makes sense to extend the Stay to promote the ADR initiative.  *See* Objection, at ¶ 8.  Second, LB Australia incorrectly asserts that because the Debtors have not initiated Derivatives ADR Procedures regarding the Dante Programme flip clause dispute to date, the Debtors should commence such ADR procedures immediately or the Stay should be lifted.  Third, LB Australia argues that it is prejudiced by a modest extension of the Stay because it cannot wind up the LB Australia estate "without a legal determination of the Dante Programme flip clause dispute."  *See* Objection, at ¶ 10.

4.      LB Australia's arguments are meritless and, in any event, the substantial benefits to be derived by the Debtors and all of their creditors by the extension of the Stay far outweigh any inconvenience to LB Australia.  Moreover, as discussed immediately below, LB Australia lacks standing to appear in these proceedings and oppose the Stay.  Accordingly, the Motion should be granted.

## LB Australia Lacks Standing

5.      As a threshold matter, LB Australia does not have standing to interpose the Objection.  LB Australia is a noteholder and neither a derivatives counterparty nor a defendant in any Avoidance Action.  LB Australia is an investor in an SPV, which is not even a creditor of the Debtors, but a party that Debtor Lehman Brothers Special Financing Inc. ("LBSF") believes owes it money.  LB Australia's direct right to payment comes from the SPV, not from the Debtors.  As set forth in the *Omnibus Reply in Support of Debtors' Motion to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated June 13, 2011 [ECF

No. 17602] (the "June 13 Reply"), which is incorporated herein, there is controlling Second

Circuit case law demonstrating that LB Australia is not a "party in interest" under section

1109(b) of the Bankruptcy Code and, therefore, lacks standing to assert the Objection.

Accordingly, as an investor in a counterparty to LBSF, LB Australia is not a party in interest

under section 1109. *See In re Refco Inc.*, 505 F.3d 109, 118-19 (2d Cir. 2007); *see also In re*

*Innkeepers USA Trust*, 2011 WL 1206173, *8-10 (Bankr. S.D.N.Y. 2011).[2]

      6.     During the June 15, 2011 hearing (the "June 15 Hearing"), at the

conclusion of which the Court issued the Stay Extension Order, the Court indicated that it was

familiar with the *Refco* and *Innkeepers* cases and had the following colloquy with counsel for LB

Australia:

> THE COURT: Well, at this moment, you're not a party-
> in-interest.
> MR. SAUCIER: That is correct.
> THE COURT: Okay. So at this moment, what standing do
> you have to complain about the extension of the stay?
> MR. SAUCIER: Again, I think that issue has not been
> resolved. So for purposes of preserving our right to object
> now or later, we wanted to raise this issue for the Court.
> THE COURT: Okay. You've raised it but I think we
> understand each other. You haven't waived the argument that
> you've just made because you've made it but you also don't have
> standing to be heard as a party-in-interest in any litigation
> that is the subject of the motion to stay.
> MR. SAUCIER: Correct, Your Honor.
> THE COURT: All right. in that case, you lose.
> MR. SAUCIER: Okay.
> THE COURT: And you understand that.
> MR. SAUCIER: Yes, absolutely, Your Honor.

Tr. of Hr'g, June 15, 2011, at 36:4-21.  Thus, LB Australia's counsel conceded that it understood

that LB Australia does not have standing as the matter now stands to raise objections to an

---

[2] In the June 13 Reply, the Debtors responded to the *Limited Objection of the Liquidators of Lehman Brothers Australia Limited to Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated June 8, 2011 [ECF No. 17511] and discussed the *Refco* and *Innkeepers* decisions in detail.

extension of the Stay.  Northing has changed (except that United States District Court for the

Southern District of New York has dismissed LB Australia's appeal of its motion to intervene in

Adversary Proceeding No. 10-3545 (JMP) ("Adversary Proceeding 3545") and that dismissal is

being appealed to the United States Court of Appeals for the Second Circuit).  Therefore, based

on LB Australia's lack of standing alone, the Court should overrule the Objection as it did at the

June 15 Hearing.

### The Extension of the Stay Will Benefit the Debtors' Estates

7.      LB Australia implies that the benefits of the Stay have been exhausted and

cites certain statistics as support for its position.  *See* Objection, at ¶ 8.  The statistics cited by LB

Australia are misleading, at best.  The more relevant statistics are those cited in the Motion,

which LB Australia ignored completely in its Objection.  Currently, there are over 40 SPV

transactions in progress under the SPV Derivatives ADR Procedures.  Between May 27, 2011,

when the Debtors filed the prior motion to the extend the Stay, and December 12, 2011, when the

Debtors filed the Motion, the Debtors have served 18 SPV ADR notices, which equates to

service of one SPV ADR notice every 11 days.  In addition, the Debtors commenced over 90

additional ADRs under the Affirmative ADR Procedures during this period.  Thus, taking into

account both the regular ADRs and the SPV ADRs, the Debtors have served an ADR notice

approximately every two days.  The Debtors' pace in commencing SPV ADRs is appropriate and

shows that the Debtors continue to use the ADR tools approved by the Court to avoid

burdensome and costly litigation with counterparties.  In total, the Debtors and the Committee

have reached final settlement with over 60 defendants in connection with the transactions at issue

in the Avoidance Actions involving SPV derivative matters, and the Debtors have reached

resolution in principle with another 19 defendants, pending final documentation.[3]

        8.     That the pace of settlements overall has slowed somewhat is not surprising

given the number of SPV ADRs commenced in the most recent periods and the requirements of

the SPV Derivatives ADR Procedures, which provide additional time for responses by

counterparties. The commencement of a mediation under those procedures takes longer than

under the Affirmative ADR Procedures, as SPV counterparties are provided with 60 days to

designate a party with settlement authority and then 75 days from service of an SPV ADR notice

to serve a response. These provisions are protective measures that ensure that the parties

responding to an SPV ADR notice have adequate notice and an opportunity to respond.

Accordingly, commencement of a mediation under the SPV Derivatives ADR Procedures

therefore takes a minimum of four and a half months.

        9.     Moreover, during the period from June through December 2011, the

Debtors, the Committee, and their respective professionals were consumed with their number

one priority in these cases – developing and prosecuting a consensual chapter 11 plan that would

appropriately deal with the claims and interests of all constituencies. Having accomplished that

goal, the Debtors, the Committee, and their respective professionals now have additional time to

spend on the monetization of the Debtors' derivatives portfolio, whether through negotiation,

mediation, or litigation.

        10.    In addition, the Stay has enabled the Debtors to engage in informal

negotiations with counterparties outside of the formal ADR process, which is even more cost-

---

[3] LB Australia's challenge to the efficacy of the Debtors' ADR program is belied by the evidence:  as of the June 13
Reply, the ADR process had resulted in the Debtors recovering more than $759.8 million for their estates as a result
of 84 ADR settlements with 95 counterparties; as of the date of the Motion, the ADR process had resulted in the
Debtors recovering more than $1 billion for their estates as a result of 164 ADR settlements with 173 counterparties.
The Debtors' progress during that period, based solely on their ADR program, is self-evident.

effective for the Debtors and counterparties than engaging in ADR.  The mere fact that more ADRs were not commenced, therefore, does not lead to the conclusion that the Stay is ineffective or that a further extension is unwarranted.

11.    LB Australia was simply wrong when it claimed in the Original Objection that the Debtors have not initiated Derivatives ADR Procedures regarding any Dante Programme flip clause disputes to date.  *See* Original Objection, at ¶ 9.[4]  On the contrary, the Debtors have commenced ADR procedures as to certain SPVs involved in the Dante Programme, but they have not commenced ADR procedures as to those SPVs in which LB Australia is a noteholder.  Contrary to the suggestion in the Objection, the Debtors have engaged in negotiations with SPVs in the Dante Programme in which LB Australia purports to be a noteholder.  *Cf.* Objection, at ¶ 9.  The Debtors remain committed to resolving disputes as cost-effectively as possible, which often means not commencing ADR until informal negotiations have proven fruitless.

12.    LB Australia's third argument for termination of the Stay, that it cannot wind up the LB Australia estate "without a legal determination as to whether [sic] the Dante Programme flip clause dispute," also lacks merit.  As LB Australia acknowledges in its Objection, this Court has ruled on the identical flip clause language in another adversary proceeding.  Consequently, LB Australia can make a reasoned judgment as to the likelihood of a similar result in Adversary Proceeding 3545.  Moreover, the Objection fails to indicate what constitutes a "legal determination."  Would LB Australia consider a ruling by this Court in Adversary Proceeding 3545 to be a "legal determination"?  If not, how far up the appellate process would the matter have to proceed to satisfy LB Australia?  The fact that LB Australia might want an opinion by the United States Supreme Court before it considers the issue resolved

---

[4] In the Objection, LB Australia retracted this broad assertion.  *Compare* Objection, ¶ 9, *with* Original Objection, ¶ 9.

in the United States does not entitle LB Australia to force the actual parties to the swaps (which

LB Australia is not) to litigate rather than negotiate.

13.     In this regard, LB Australia wholly ignores the real prejudice to the over

100 parties who are defendants in Adversary Proceeding 3545 and who have not objected to the

extension of the Stay.  Termination of the Stay at this juncture would require such parties, who

truly are parties-in-interest, to spend time and effort litigating the Avoidance Action.  No

individual party, let alone LB Australia, which is not even a party to Adversary Proceeding 3545,

should be able to foist that result upon the Debtors and the defendants to that action.

14.     Finally, LB Australia's proposal that further participation in ADR be

solely voluntary represents a collateral attack on the Derivatives ADR Procedures that have been

approved by this Court.  The time has long passed for an objection to the ADR procedures

adopted by this Court.

### Conclusion

15.     The Stay has been enormously beneficial to the resolution of numerous

actions and an extension of that Stay is an integral part of the implementation of the Court's

ADR procedures in these cases.  In that vein, the Debtors and the Committee respectfully request

that the Court extend the Stay for an additional six months so that, among other things, the ADR

procedures have a continued opportunity for success.  In addition, the Debtors and the

Committee request that the Court extend the deadline for service of process.[5]

WHEREFORE the Debtors and the Committee respectfully request that the Court

---

[5] On January 6, 2012, the Debtors and the Committee filed the *Notice of Filing of Revised Proposed Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [ECF No. 24098] (the "Revised Order").

8

overrule the Objection, enter the Revised Order, and grant the Debtors and the Committee such

other and further relief as is just.

Dated: January 9, 2012
      New York, New York

                   /s/ Jacqueline Marcus
                   Richard W. Slack
                   Jacqueline Marcus

                   WEIL, GOTSHAL & MANGES LLP
                   767 Fifth Avenue
                   New York, New York 10153
                   Telephone: (212) 310-8000
                   Facsimile: (212) 310-8007

                   Attorneys for Debtors
                   and Debtors in Possession

                   /s/ Dennis F. Dunne
                   Dennis F. Dunne
                   Evan R. Fleck
                   Dennis C. O'Donnell
                   MILBANK, TWEED, HADLEY & M$^c$CLOY LLP
                   1 Chase Manhattan Plaza
                   New York, New York 10005
                   Telephone:  (212) 530-5000

                   -and-

                   David S. Cohen
                   MILBANK, TWEED, HADLEY & M$^c$CLOY LLP
                   1850 K Street, NW, Suite 1100
                   Washington, D.C. 20006
                   Telephone:  (202) 835-7500

                   Attorneys for the Official Committee
                   of Unsecured Creditors of the Debtors