Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case Nos. 08-13555 (JMP) 08-01420 (JMP)

5    - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7   LEHMAN BROTHERS HOLDINGS INC., et al.,

8                 Debtors.

9   - - - - - - - - - - - - - - - - - - - - -x

10   In the Matter of:

11   LEHMAN BROTHERS INC.,

12                 Debtor.

13   - - - - - - - - - - - - - - - - - - - - -x

14

15                 United States Bankruptcy Court

16                 One Bowling Green

17                 New York, New York

18

19                 December 14, 2011

20                 10:05 AM

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25

Page 2

1

2    Forty-Fifth Omnibus Hearing

3

4    Hearing re:  Debtors' Motion for Authorization to Monetize

5    Equity Interests in Neuberger Berman Group LLC [ECF No. 21847]

6

7    Hearing re:  Debtors' Motion for Approval of a Settlement and

8    Compromise with The Bank of New York Trust Company, N.A., as

9    Indenture Trustee for the Main Street Bonds and Main Street

10   Natural Gas, Inc. [ECF No. 22024]

11

12   Hearing re:  Motion of Setai (Turks & Caicos) Ltd., et al. for

13   Relief from the Automatic Stay to Permit Assertion of

14   Counterclaims and Third-Party Claims against Debtor in Pending

15   State Court Litigation Commenced by the Debtor [ECF No. 21438]

16

17   Hearing re:  Final Fee Application of Duff & Phelps LLC, as

18   Financial Advisors to the Examiner, Anton R. Valukas, for Final

19   Allowance of Compensation for Services Rendered and

20   Reimbursement of Expenses Incurred [ECF No. 22290]

21

22

23

24

25   Transcribed by:  Hana Copperman

Page 3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Debtor

5          767 Fifth Avenue

6          New York, NY 10153

7

8    BY:   GARRETT A. FAIL, ESQ.

9

10

11   PRYOR CASHMAN LLP

12         Attorneys for Setai movants

13         Seven Times Square

14         New York, NY 10036

15

16   BY:   ROBERT M. FLEISCHER, ESQ.

17

18

19   WHITE & CASE LLP

20         Attorneys for Ad Hoc Group of Lehman Brothers Creditors

21         1155 Avenue of the Americas

22         New York, NY 10036

23

24   BY:   ERIC K. STODOLA, ESQ.

25

Page 4

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3        Attorneys for Official Committee of Unsecured Creditors

4        One Chase Manhattan Plaza

5        New York, NY 10005

6

7   BY:   DENNIS C. O'DONNELL, ESQ.

8         MATTHEW L. KANTER, ESQ.

9

10

11   PROSKAUER ROSE LLP

12        Attorneys for Neuberger Berman Group LLC

13        Eleven Times Square

14        New York, NY 10036

15

16   BY:   JEFFREY W. LEVITAN, ESQ.

17

18

19   JENNER & BLOCK LLP

20        Attorneys for the Examiner

21        919 Third Avenue

22        37th Floor

23        New York, NY 10022-3908

24

25   BY:   HEATHER D. MCARN, ESQ.

Page 5

1

2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Bank of New York, Mellon, as Indenture

4        Trustee for Main Street Bonds

5        1177 Avenue of the Americas

6        New York, NY 10036

7

8   BY:   AMY D. CATON, ESQ.

9

10

11   EMMET, MARVIN & MARTIN, LLP

12        Attorneys for Bank of New York, Mellon

13        120 Broadway

14        32nd Floor

15        New York, NY 10271

16

17   BY:   EDWARD P. ZUJKOWSKI, ESQ.

18

19

20   HUGHES HUBBARD & REED LLP

21        Attorneys for SIPA Trustee

22        One Battery Park Plaza

23        New York, NY 10004

24

25   BY:   JEFFREY S. MARGOLIN, ESQ.

Page 6

1

2    COVINGTON & BURLING LLP

3          Attorneys for Wilmington Trust Company

4          The New York Times Building

5          620 Eighth Avenue

6          New York, NY 10018-1405

7

8    BY:   SUSAN JOHNSTON, ESQ.

9

10

11   DUFF & PHELPS LLC

12          Financial Advisors to the Examiner

13          300 Headquarters Plaza

14          East Tower

15          Floor 12

16          Morristown, NJ 07960

17

18   BY:   ALLEN PFEIFFER, ESQ.

19          JOE LEIWANT, ESQ.

20

21

22

23

24

25

Page 7

1

2    BINGHAM MCCUTCHEN LLP

3         Attorneys for Lincoln National Life Insurance Company

4         399 Park Avenue

5         New York, NY 10022

6

7    BY:   R. JEFFREY BLACK, ESQ. (TELEPHONICALLY)

8

9

10   FARALLON CAPITAL MANAGEMENT, L.L.C.

11        One Maritime Plaza

12        Suite 2100

13        San Francisco, CA 94111

14

15   BY:   ANATOLY BUSHLER, ESQ. (TELEPHONICALLY)

16

17

18   CHAPMAN & CUTLER LLP

19        Attorneys for U.S. Bank, N.A., as Trustee

20        111 West Monroe Street

21        Chicago, IL 60603

22

23   BY:   FRANKLIN H. TOP III, ESQ. (TELEPHONICALLY)

24        JAMES HEISER, ESQ. (TELEPHONICALLY)

25

Page 8

1

2    STUTMAN TREISTER & GLATT

3         Attorneys for The Baupost Group, Perry Capital and

4         Elliott Management

5         1901 Avenue of the Stars

6         12th Floor

7         Los Angeles, CA 90067

8

9    BY:   MARINA FINEMAN, ESQ. (TELEPHONICALLY)

10        GABRIEL GLAZER, ESQ. (TELEPHONICALLY)

11        MICHAEL NEUMEISTER, ESQ. (TELEPHONICALLY)

12

13

14   CANYON CAPITAL ADVISORS

15        Creditor, Lehman Brothers Holdings Inc.

16        2000 Avenue Of The Stars

17        Los Angeles, CA 90067-4732

18   BY:   RAJ VENKATARAMAN IYER (TELEPHONICALLY)

19

20

21

22

23

24

25

08-13555-mg   Doc 24192   Filed 12/15/11   Entered 01/11/12 13:35:10   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 9 of 28

Page 9

1                    P R O C E E D I N G S

2            THE COURT:  Good morning.  Be seated, please.

3            MR. FAIL:  Good morning, Your Honor.  Garrett Fail,

4    Weil, Gotshal & Manges, for Lehman Brothers Holdings Inc. and

5    its affiliated debtors.  There are four uncontested items on

6    this morning's agenda.  I'm taking them in the order that they

7    appear.  The first item is the debtors' motion for

8    authorization to monetize certain equity interests in Neuberger

9    Berman Group LLC, which I'll refer to as NBG.

10           The equity interests that are subject to today's

11   hearings were acquired by Lehman Brothers Holdings Inc. and

12   certain of its nondebtor affiliates pursuant to a transaction

13   that was approved by Your Honor pursuant to an order entered

14   almost exactly three years ago today on December 22, 2008.

15   Pursuant to that transaction, in May, 2009 LBHI and certain of

16   its affiliates, which I'll refer to collectively as "the

17   sellers", transferred to NBG a substantial portion of the

18   investment management business formerly owned and conducted by

19   the sellers, including the equity business, the fixed income

20   business, parts of the hedge fund of funds and single manager

21   business, the private funds investment group of private equity

22   businesses and certain assets related to Asian and European

23   asset management businesses.

24           In consideration NBG issued to the sellers preferred

25   equity representing approximately ninety-three percent of the

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 10

1    total preferred equity issued and outstanding in NBG, which had

2    a face value of 814 million, and common equity representing

3    approximately forty-nine percent of the total common equity

4    issued and outstanding in NBG.

5           As stated in the motion, Your Honor, over the course

6    of many months the sellers and NBG negotiated at arm's length

7    for an agreed upon path to monetize the sellers' equity

8    positions.  In the negotiations the sellers were represented by

9    Alvarez & Marsal and LAMCO employees, Weil, Gotshal and Lazard.

10   NBG was represented by NBG employees, Proskauer Rose and

11   Goldman Sachs.  The interests of the sellers' joint venture

12   partners and NBG had to be considered.  The debtors' creditors'

13   committee, through its attorneys and financial advisors, were

14   kept up to date, and Houlihan was directly involved throughout

15   the various stages of the negotiations.

16          On November 9th the debtors and NBG finalized the

17   terms of a proposed series of transactions that would both

18   generate in the short term liquidity for the sellers and also

19   allow the sellers to benefit from future increases in NBG over

20   time.  The debtors filed the negotiated term sheet as an

21   attachment to their motion on the same day.

22          As summarized in the motion, the series of proposed

23   transactions would result in a redemption at par of the

24   sellers' preferred equity in NBG, potential repurchase of a

25   portion of the sellers' common equity at closing, and a defined

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 11

1    path to monetize the sellers' remaining common equity

2    interests.  The proposed transaction was supported by the

3    creditors' committee.

4           After the term sheet was disclosed LBHI was contacted

5    by and met with a number of its creditors regarding the

6    transactions.  In consultation with NBG the debtors extended

7    the objection deadline for these creditors, and representatives

8    of the creditors, the debtors, NBG and the committee proceeded

9    to engage in a series of calls, meetings and negotiations

10   regarding the terms of the transactions.  The result of those

11   negotiations was an amended term sheet, agreed upon by the

12   debtors and NBG, that the debtors filed with the Court on

13   December 9th.  As illustrated in the blackline that was filed

14   with the amended term sheet the structures of the transaction

15   remains the same.  Modifications were made that enhanced the

16   benefits of the transactions for the sellers.

17          If the motion is approved, Your Honor, and the

18   proposed transactions consummated the sellers' preferred equity

19   will be redeemed at par plus accrued preferred return.  In

20   addition, the sellers will receive an additional 2.5 percent,

21   or approximately 20.34 million dollars additional return on

22   their preferred equity.  NBG will be entitled to purchase up to

23   ten percent of the outstanding common interests of NBG from the

24   sellers as of the date of the closing at an agreed upon

25   valuation.  Annually thereafter NBG will be entitled to

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 12

1   purchase a portion of the sellers' remaining common equity in

2   NBG subject to an annual aggregate cap.

3        The sellers' governance and other related rights will

4   be modified but in light of the continuing reduction in their

5   ownerships.  The sellers will retain core protections.

6        The debtors estimate that the total proceeds received

7   to date and as a result of the proposed transaction will

8   aggregate approximately 1.5 billion dollars.  The Lehman estate

9   will have received at least two-thirds of this upon closing of

10  the initial transaction.  As the Court will recall, this

11  aggregate is two times the value that would have been received

12  by the Lehman estate had the Bain and Hellman stalking horse

13  transaction been selected in 2008 and consummated.

14       This is a significant achievement for the debtors and

15  a significant benefit for their creditors.  The transaction is

16  illustrative of the strategy that the debtors and A&M have

17  employed throughout these cases to enhance the Lehman estate's

18  asset values.

19       Your Honor, no objection to the reliefs requested was

20  filed.  Statements in support of the debtors' motion were filed

21  by the creditors' committee and the ad hoc group.  Your Honor,

22  William Fox is in the courtroom today.  He is a managing

23  director at Alvarez & Marsal, chief financial officer of Lehman

24  Brothers Holdings Inc., and a member and a representative of

25  the debtors on the board of Neuberger Berman Group.  He's

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 13

1    responsible for the negotiations of the term sheet on behalf of

2    the sellers and is available should the Court have any

3    questions that I can't answer.

4            The debtors submit that the proposed transactions are

5    an exercise of their sound business judgment and, accordingly,

6    request that the motion and relief be granted.

7            THE COURT:  The motion's unopposed, and I've read the

8    papers in support.  I do have a question about the process that

9    led to the enhancements that you describe, and, in

10   particular -- I don't want any group to take credit for those

11   enhancements, but I'm interested in knowing how they came

12   about.  You neutrally described the processes involving certain

13   creditors, although the ad hoc committee's papers suggest

14   ownership of the improvements.  I'd like to know a little bit

15   more about the process of enhancement, in particular, how that

16   came about, who took the lead, and whether or not any group is

17   actually entitled to credit.

18           MR. FAIL:  Would you like me to attempt to address

19   that in the first instance and then others --

20           THE COURT:  Sure.

21           MR. FAIL: -- others can feel free to join in?

22           THE COURT:  And I'm sure that --

23           MR. FAIL:  Mr. Fox is here.

24           THE COURT:  I'm sure those involved in the discussions

25   will be pleased to explain.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 14

1          MR. FAIL:  Certainly.  In the first instance, as I

2     mentioned, Your Honor, the first time that this was disclosed

3     publicly was in the filing of the initial term sheet.

4     Creditors, other than those on the creditors' committee, were

5     not privy to the ongoing discussions or the terms of the final

6     transaction until it was publicly disclosed.  At that point a

7     number of creditors, including those that are on the steering

8     committee of the ad hoc group, contacted the debtors, and their

9     attorneys contacted Weil, Gotshal.  The ad hoc group members

10    were some of them.  There were additional substantial creditors

11    that didn't file pleadings but that were granted an extension

12    of time and that were represented by counsel and that had

13    requests and that were part of the negotiations.

14          My description wasn't intended to take anything away

15    from the ad hoc group, which brought additional, perhaps,

16    leverage to the table.  The debtors and the creditors'

17    committee and Neuberger Berman Group negotiated long and hard,

18    arm's length, for a prolonged period of time to reach the

19    initial term sheet, but, I think, the result today is proof

20    that the process works.  The debtors and the creditors'

21    committee's best efforts were put forward.  It was tested.

22    Parties, additional parties-in-interest that had the benefit of

23    that information raised questions, brought those questions and

24    desires to the table, and Neuberger Berman Group, not to take

25    away from them, also came actively to the table, both members

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 15

1    of the Neuberger Berman Group themselves as well as their

2    professionals, to make additional concessions.  It wasn't a

3    one --there was not one party that gave, and the debtors did

4    wind up receiving benefits of this.

5         THE COURT:  Okay.  Is there anyone else who wishes to

6    comment with regard to the transaction or to supplement the

7    remarks just made?

8         MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

9    Tweed, Hadley & McCloy, on behalf of the official committee.

10   Really, just to iterate what Mr. Fail said.  It was a process

11   that involved a number -- the final process involved a number

12   of different creditors, many of whom had been involved in the

13   plan process, many of the PSA creditors who came to the table

14   in a series of very long phone calls and meetings that resulted

15   in the better results for the debtors here.

16        And the committee had been involved from the very

17   outset.  We had played a role in the transaction back in 2008

18   that resulted in the current stake that Lehman has in it.  I

19   think we played a large role, and when the opportunity or the

20   desire to monetize Lehman's interest in it reemerged the

21   committee specifically, as Mr. Fail mentioned, Houlihan was

22   heavily involved in a long process with the debtors and

23   Neuberger Berman that resulted in the deal reflected in the

24   motion as filed, which the committee was fully supportive of,

25   and had every reason to be, given the long course of

Page 16

1    negotiation.

2         When the other creditors surfaced we were more than

3    glad to listen to them and, I think, try to mediate the

4    situation to some extent, and we ultimately got to a result

5    here with the debtors and all the parties that we think is

6    extremely beneficial for the debtors.  As Mr. Fail indicated,

7    it's twice what we would have gotten if we had done the Bain

8    deal three years ago, and that speaks -- basically, all I need

9    to say.

10        THE COURT:  Okay.  Thank you.  Does anyone else wish

11   to be heard?  This is an uncontested motion that, at least at

12   this juncture, enjoys the support of both the creditors'

13   committee and the ad hoc committee.  I've reviewed the papers.

14   This is a complex transaction.  The adjustments are themselves

15   hard to understand without having a deep understanding of the

16   overall transaction.  Given the value to the estate, the

17   support of creditors, including those with a meaningful stake

18   in the outcome, this transaction is approved, and, in

19   retrospect, I believe that the transaction structure from 2008

20   has proven itself to be a very sound one.

21        MR. FAIL:  Thank you very much, Your Honor.  There are

22   a number of people in the courtroom that may wish to be excused

23   if it please the Court.

24        THE COURT:  If people wish to leave at this point I

25   will not be offended.  People are excused if they wish to go.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 17

1          MR. FAIL:  Your Honor, the next item on the agenda is

2     the debtors' motion for approval of a settlement and compromise

3     with the Bank of New York Trust Company, N.A. as indenture

4     trustee for the Main Street bonds and Main Street Natural Gas,

5     Inc.  Your Honor, as described in the motion, on November 9th

6     Lehman Brothers Holdings Inc. and Lehman Brothers Commodity

7     Services, Inc. reached an agreement to resolve the substantial

8     claims filed by the indenture trustee and Main Street related

9     to a 2008 gas purchase agreement.  The indenture trustee and

10    Main Street each filed separate claims against LBHI and LBCS in

11    the amount of not less than 751 million dollars, a total of 4

12    claims.

13         Over the course of the months the debtors worked with

14    the indenture trustee to reconcile the various claims.  The

15    indenture trustee worked cooperatively and provided the debtors

16    with additional information that the debtors requested.  As a

17    result of the efforts of the parties the debtors agreed to the

18    propriety of substantial claims against each of LBHI and LBCS,

19    and the parties were able to limit the scope of the remaining

20    dispute.

21         The settlement reached among the parties takes into

22    account the work that was done to reconcile the substantial

23    portion of the claims as well as the costs and benefits of

24    litigating the remaining disputes.  The settlement provides for

25    the allowance of one claim of the indenture trustee against

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 18

1    LBHI in the reduced amount of 722 million dollars and one claim

2    of the indenture trustee against LBCS in the reduced amount of

3    722 million dollars.  The claim against LBHI will be allowed as

4    a Class 9A, a third-party guarantee claim, in other words, not

5    a senior claim, as was asserted at one point.  The claim

6    against LBCS will be allowed as a Class 4 general unsecured

7    claim against LBCS.

8         The two Main Street claims will be deemed withdrawn.

9    In addition, the debtors agreed to relinquish any rights to

10   certain funds held by the indenture trustee, which the debtors

11   agree are not property of their estate.

12        The debtors believe that the settlement is in the best

13   interests of their estates and their creditors.  The business

14   judgment of the debtors is supported by the declaration of

15   Daniel Ehrmann, a managing director of Alvarez & Marsal and the

16   co-head of the debtors' derivatives group.  The creditors'

17   committee has also filed a statement in support of the motion.

18        The indenture trustee and Main Street have requested

19   the order approving the settlement include a finding that they

20   have no liability in connection with the settlement and an

21   injunction against claims of the bondholders.

22        A declaration in support of this relief was filed by

23   Alex Change, a vice president of the Bank of New York, and

24   that's at docket number 23271.  The declaration states that

25   bondholders owning 79.07 percent of the Main Street bonds

08-13555-mg   Doc 24192   Filed 12/15/11   Entered 01/11/12 13:35:10   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 19 of 28

Page 19

1   directed and authorized the indenture trustee to enter into the

2   stipulation.  The declaration further states that the indenture

3   trustee provided notice to be filed with DTC and Electronic

4   Municipal Market Access.  A copy of the motion, according to

5   the declaration, was attached to the notice filed with

6   Electronic Municipal Market Access.  The declaration states

7   that the indenture trustee has not received any formal or

8   informal objections to the relief stated in the motion, and

9   counsel for the indenture trustee is here today, Your Honor, to

10  answer any questions you may have.

11          No objections to the relief sought in this motion have

12  been filed.  Accordingly, the debtors request that the Court

13  approve this motion.

14          THE COURT:  It's another one of the uncontested

15  matters.  One question that I have relates, really, to case

16  administration.  A somewhat similar matter was on the docket of

17  the claims hearing that took place on November 30th, and that

18  was in reference to certain claims made by Wilmington Trust

19  Company as indenture trustee, and during the course of that

20  hearing I raised some questions as to the adequacy of notice to

21  the affected bondholders, and a supplemental declaration is

22  likely to be filed in the near term so that that can be

23  resolved at the next claims hearing.  My question is why is

24  this being heard on the omnibus calendar as opposed to the

25  claims calendar, and is there something special about this that

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 20

1    makes this an omnibus matter that I'm missing?

2         MR. FAIL:  Nothing special as compared to the

3    Wilmington, Your Honor.  They're both significant.

4         THE COURT:  It's really much the same thing, isn't it?

5         MR. FAIL:  It's very similar.  The reason this was

6    scheduled for the omnibus day was it was a 9019 motion, and

7    when this was reached the debtors agreed to put it on for the

8    first available date that it may be heard by the Court.  In

9    light of Your Honor's comments in connection with the

10   Wilmington motion we did file a declaration in support of this

11   motion.  Or we didn't -- a declaration was filed in support of

12   this motion, which we hope addressed the concerns that were

13   raised in connection with Wilmington.  There is nothing that --

14   other than that and the debtors' agreement to put it on for the

15   first date that requires it.

16        THE COURT:  Okay.  Fine.  When I was reading Mr.

17   Chang's declaration it occurred to me that I was reading

18   something that I actually had requested from Wilmington Trust's

19   counsel a week before.

20        MR. FAIL:  And if that hasn't been filed -- I believe

21   it will be if it already hasn't been in connection with

22   Wilmington.

23        THE COURT:  Oh, she's here.  So we're -- this is

24   conversions.  We're bringing together the claims docket and the

25   omnibus docket.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 21

```
 1           MS. JOHNSTON:  Yes, Your Honor.  Susan Johnston from

 2   Covington & Burling for Wilmington Trust.  We filed that

 3   declaration yesterday, I believe, and we can make a copy

 4   available to the Court this afternoon, a courtesy copy

 5   available.

 6           THE COURT:  That's fine.  I can look at it online.

 7           MS. JOHNSTON:  Yes, Your Honor.

 8           THE COURT:  I have no other questions about this but

 9   will simply ask if there's any party who wishes to be heard.

10   Is counsel present who represents BONY as trustee?

11           MS. CATON:  Yes, Your Honor.  Amy Caton from Kramer

12   Levin on behalf of Bank of New York, Mellon as indenture

13   trustee for the Main Street bonds.  Your Honor saw the

14   declaration that we filed yesterday.  We did receive direction

15   from four bondholders who held 79. -- close to 80 percent of

16   the bonds, and, in addition, we've received calls and questions

17   from other bondholders who, I believe, are rather substantial

18   as well, and everybody that we've spoken to is very positive

19   about the settlement.

20           There are some mom and pops out there that did not

21   contact us, but from our review and negotiation of the

22   settlement we believe that the settlement is in the best

23   interests of bondholders and we'd ask that Your Honor approve

24   it.  If Your Honor has any other questions about the release or

25   the notice I'm happy to answer those.
```

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 22

1        THE COURT:  No.  The declaration really supplied all

2    the information that I needed to understand -- for all of the

3    facts about the transaction.  I think that the one aspect of

4    this that is procedurally unusual is that the stipulation

5    itself actually specifies decretal paragraphs for the form of

6    order that the Court is to enter in approving the transaction.

7    I'm not going to make any further comment about it except to

8    say that I consider that to be a little extreme and would hope

9    not to see such mandates as to the form of order in future

10   stipulations.  It, in effect, makes the approval process almost

11   too automatic in terms of the content of the order, and while

12   there may be an overriding fiction as to the hand of the Court

13   in crafting the language of certain pro forma orders I actually

14   do like to occasionally exercise some role of authorship with

15   respect to orders, including editing and changing.  So for

16   future reference please don't do it.

17        MS. CATON:  We'll keep that in mind, Your Honor, and I

18   apologize.  We weren't trying to be heavy handed, but we did

19   feel that those provisions were important, but we'll try to

20   come up with another mechanism the next time.

21        THE COURT:  Okay.  I understand.  Remember that BONY

22   is a nondebtor and is not entitled as a matter of law to any

23   releases.

24        MS. CATON:  I understand, Your Honor.

25        THE COURT:  Okay.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 23

1           MS. CATON:  Thank you.

2           THE COURT:  It's approved.

3           MR. FAIL:  Thank you very much, Your Honor, and we'll

4     take that very seriously.

5           The next item on the agenda is a motion that was filed

6     by Setai Group, LLC and other parties for relief from the

7     automatic stay to file and prosecute certain counterclaims and

8     third-party claims against LBHI in a civil action commenced by

9     LBHI in New York State Court earlier this year.  The debtors

10    and the movants have entered into a stipulation to resolve this

11    motion.  I can hand up a copy if you'd like at this point, Your

12    Honor or I could just describe it generally.

13          THE COURT:  I'd be happy to see it.  You can hand that

14    up.  Can I just ask a question before even getting into the

15    content of the stipulation?  I looked at this and noted that

16    this really relates to a pleading in state court litigation,

17    and according to the moving papers a request for stipulated

18    stay relief appears to have been rejected.  I don't know what

19    the facts are.  But I'm just wondering why it had to get to

20    this level of a motion and a stipulation and all the extra work

21    that that entails when this seems to be, at least in relative

22    terms, ministerial in nature.

23          MR. FAIL:  Your Honor, I wasn't personally involved in

24    the process leading up.  Counsel for the plaintiffs is here.

25    My understanding is that in the time that was required to

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 24

1    comply with filings in the state court the parties weren't able

2    to reach an agreement, but I'm happy to have, and I suggest the

3    plaintiffs' counsel will respond.

4         MR. FLEISCHER:  Good morning, Your Honor.  Robert

5    Fleischer, Pryor Cashman, for the movants.  I also wasn't

6    personally involved in those discussions, but I have a fair

7    understanding of what happened.  Those negotiations were

8    occurring, literally, in the last couple of days prior to the

9    deadline to file the answer and counterclaims in the state

10   court action.  The parties had been discussing a stipulation.

11   We're fairly close to getting there, but there were some

12   conditions that were placed by the debtor on the plaintiff, or,

13   rather, on the movants, that were just not acceptable, so, as a

14   consequence, because of the very short fuse, the very short

15   timing, there really wasn't a lot of choice but to go ahead and

16   file the motion and, simultaneously, file the counterclaims and

17   third-party papers in the state court action so as not to miss

18   that deadline.  It was close, but it was -- it just didn't

19   happen.  Fortunately, at least, the parties were able to come

20   to an agreement as --

21        THE COURT:  Okay.

22        MR. FLEISCHER: -- as Your Honor is aware of,

23   subsequently.

24        THE COURT:  Fine.  It's uncontroversial.  The

25   stipulation is approved.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 25

```
 1            MR. FAIL:  Thank you very much, Your Honor.

 2            MR. FLEISCHER:  Thank you, Your Honor.

 3            MR. FAIL:  And the last item on the agenda is not the

 4      debtors' motion.  It's a final fee application of Duff & Phelps

 5      as financial advisors to the examiner.

 6            MR. PFEIFFER:  Good morning, Your Honor.  I am Allen

 7      Pfeiffer representing Duff & Phelps.  I am joined by my

 8      colleague Joe Leiwant and counsel for the Lehman examiner,

 9      Heather McArn of Jenner & Block, and I am here to present Duff

10      & Phelps final fee application.  The final fee application was

11      timely submitted in accordance with the fourth interim

12      compensation order.  We have included voluntary reductions in

13      excess of 400,000 dollars in addition to the ten percent

14      reduction in our hourly rate, and we have received no

15      objections from any parties.  In addition, the fee committee

16      has reviewed our application, and on December 7th the fee

17      committee filed a statement of no objection in regards to our

18      final fee application.

19            I have with me an order requesting granting of

20      allowance of our final compensation and reimbursement of

21      expenses.

22            THE COURT:  Your fees and expenses are allowed. I've

23      reviewed the application and the statement of the fee

24      committee, and everything is in order, and you can submit the

25      order.
```

1          MR. PFEIFFER:  Thank you very much.  It was a pleasure

2     to serve the examiner and the public in this role.  Thank you.

3          THE COURT:  All right.  I think that completes the

4     morning agenda.  If there's nothing further we're adjourned

5     until 2 o'clock when we have a contested matter listed.

6          MR. FAIL:  Thank you, Your Honor.

7          (Whereupon these proceedings were concluded at 10:31 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1

2                              I N D E X

3

4                              RULINGS

5                                                   Page      Line

6    Granting of Motion for Authorization to        16        18

7    Monetize Equity Interests in Neuberger

8    Berman Group LLC

9

10   Granting of Motion for Approval of a           23        2

11   Settlement and Compromise with BONY

12   as Indenture Trustee for Main Street

13

14   Granting of Motion for Relief from the         24        25

15   Automatic Stay to Permit Assertion of

16   Counterclaims and Third-Party Claims

17   Against the Debtor in Pending State Court

18   Litigation

19

20   Granting of Final Fee Application of Duff &     25        22

21   Phelps

22

23

24

25

Page 28

```
 1
 2                  C E R T I F I C A T I O N
 3
 4    I, Hana Copperman, certify that the foregoing transcript is a
 5    true and accurate record of the proceedings.
 6
 7
 8
 9    Hana              Digitally signed by Hana
                        Copperman
10    Copperman         DN: cn=Hana Copperman, c=US
                        Date: 2011.12.15 14:29:50 -05'00'
11
      HANA COPPERMAN
12
      AAERT Certified Electronic Transcriber CET**D 487
13
14
      Veritext
15
      200 Old Country Road
16
      Suite 580
17
      Mineola, NY 11501
18
19
      Date:  December 15, 2011
20
21
22
23
24
25
```