**HEARING DATE AND TIME: January 26, 2012 at 10:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: January 19, 2012 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                    :
In re                                               :      Chapter 11 Case No.
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :      **08-13555 (JMP)**
                                                    :
                        Debtors.                    :      **(Jointly Administered)**
                                                    :
---------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO SECTION 8.4**
**OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LEHMAN**
**BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE**
**THE AMOUNT OF DISPUTED CLAIMS FILED BY LEHMAN BROTHERS**
**FINANCE AG (IN LIQUIDATION) FOR PURPOSES OF ESTABLISHING RESERVES**

      **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")
of Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., as a debtors and
debtors-in-possession (together with their affiliated debtors in the above-captioned cases, the
"Debtors") for approval, pursuant to Section 8.4 of the Modified Third Amended Chapter 11
Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan"), to estimate the
amount of certain claims filed by Lehman Brothers Finance AG (In Liquidation) ("LBF") for the
purposes of establishing reserves in connection with the Plan, all as more fully described in the
Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at
the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One
Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 26, 2012 at
10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion
shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local
Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of
the objecting party, the basis for the objection and the specific grounds thereof, shall be filed
with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which
can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing

system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY, 10153, Attn: Lori R. Fife and Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received no later than **January 19, 2012 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 12, 2012
      New York, New York

                    /s/ Lori R. Fife
                    Lori R. Fife
                    Alfredo R. Pérez

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone:  (212) 310-8000
                    Facsimile:  (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
|   |   |
|---|---|
| In re | : Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : 08-13555 (JMP) |
| Debtors. | : (Jointly Administered) |
------------------------------------------------------------------x

**MOTION PURSUANT TO SECTION 8.4
OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LEHMAN
BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE
THE AMOUNT OF DISPUTED CLAIMS FILED BY LEHMAN BROTHERS
FINANCE AG (IN LIQUIDATION) FOR PURPOSES OF ESTABLISHING RESERVES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special

Financing ("LBSF," and together with LBHI and their affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession, the "Debtors"), file this motion and

respectfully represent:

**Preliminary Statement**

1.       On December 6, 2011, the Court approved, and entered an order confirming, the Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, ECF No. 23023 (the "Plan").  Now that the Plan has been confirmed, the Debtors will commence distributions to creditors as soon as possible.  However, because section 8.4 of the Plan requires the Debtors to maintain reserves for Disputed Claims – including any claims asserted by foreign affiliates that have not been resolved pursuant to the Plan – LBHI and LBSF will need to maintain significant reserves on account of claims filed by the Debtors' Swiss affiliate, Lehman Brothers Finance AG (in Liquidation) a/k/a Lehman Brothers Finance SA (en Liquidation) ("LBF") against (i) LBHI, in the aggregate amount of approximately $15.4 billion (the "LBF Holdings Claims"), and (ii) LBSF, in the amount of approximately $552.8 million (the "LBF Special Financing Claim" and together with the LBHI Claim, the "LBF Claims").  Such large reserves, if required, would substantially diminish the initial distributions that LBHI and LBSF can make to their creditors.

2.       To avoid the need to maintain disproportionately large reserves on account of the LBF Claims, LBHI and LBSF request, pursuant to section 8.4 of the Plan, that this Court estimate the amount of the LBF Holdings Claims as $0 in LBHI Class 4B, and the LBF Special Financing Claim as $63.5 million in LBSF Class 5C, solely for the purpose of establishing reserves under the Plan (the "Estimated Reserve Amounts") so that LBHI and LBSF can effectuate the administration of their Plan without diminishing distributions and unfairly prejudicing their other creditors.

## Jurisdiction

3.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

4.      LBF is a wholly-owned subsidiary of LBHI.  Prior to the commencement

of the Debtors' chapter 11 cases, LBF engaged in the execution of bespoke over-the-counter

equity derivatives contracts for institutional clients, including certain Lehman affiliates.  Since

December 22, 2008, LBF has been the subject of a Swiss *Bankenkonkurs*, or bank/security dealer

bankruptcy proceeding (the "LBF Bankruptcy") pursuant to Swiss law.  LBF is now controlled

by PricewaterhouseCoopers AG, Zurich ("PWC") which has been appointed as bankruptcy

liquidator of LBF.  On February 10, 2009, PWC filed a petition with this Court in Case No. 09-

10583 (the "LBF Chapter 15 Case") seeking, *inter alia*, recognition of the LBF Bankruptcy as a

"foreign main proceeding" and of PWC as the "foreign representative" of LBF under chapter 15

of the Bankruptcy Code.  On March 12, 2009, this Court entered an *Order Granting Recognition*

*of Foreign Main Proceeding and Related Relief Under Chapter 15*, ECF No. 24 in the LBF

Chapte 15 Case.[1]

5.      LBF is one of nearly one hundred (100) of LBHI's foreign direct and

indirect subsidiaries (the "Foreign Affiliates") that have commenced, or in some cases, had

initiated against them a variety of insolvency, administration, liquidation, rehabilitation,

receivership or like proceedings across sixteen foreign jurisdictions, and before different courts

---

[1]      The most recent report on the status of the LBF Bankruptcy is contained in the *Sixth Report of*
*PricewaterhouseCoopers AG, Zurich as Appointed Liquidators for Lehman Brothers Finance AG, in Liquidation,*
*a/k/a Lehman Brothers Finance SA, in Liquidation*, filed in the LBF Chapter 15 Case on December 28, 2011, ECF
No. 41 (the "Sixth Report").  Based on the Sixth Report, it appears that three years since the commencement of the
LBF Bankruptcy, LBF has not objected to any claims filed against it, and will not be in a position to do so – much
less make distributions – until the third quarter of 2012.  *See* Sixth Report at ¶ 16 ("It is scheduled that third party
creditors will be notified of the status of their claims towards the end of the third quarter 2012.").

and governmental, regulatory, or administrative bodies.  As this Court is aware, the Debtors

recognized as early as October 2008 that the efficient administration of their chapter 11 cases

would benefit from cooperation among themselves and the Foreign Affiliates.  As a result, on

May 12, 2009, the Debtors and Foreign Affiliates from Hong Kong, Singapore, Australia, and

Germany executed the Cross-Border Insolvency Protocol for the Lehman Brothers Group of

Companies (the "Protocol").  Periodically thereafter, administrators from the Netherlands, the

Netherlands-Antilles, and Luxembourg (as well as Lehman Brothers Inc.) were added as

signatories to the Protocol.  On September 14, 2009, LBF signed the Protocol, with the approval

of the Swiss Financial Market Supervisory Authority ("FINMA").

    6.   Section 9 of the Protocol provides that

> it is in the best interests of the Debtors' [and Foreign Affiliates']² creditors…to agree to a common set of financial accounting records that form the basis of Intercompany Claims, and that those financial records shall be *prima facie* valid unless there are elements of proof suggesting that a transaction was recorded in error, or that no such transaction ever occurred or is inconsistent with the inter-company accounting records of the relevant Debtor(s) [or Foreign Affiliates].

Protocol § 9.1.

    7.   The signatories to the Protocol held several meetings from July to October

of 2009.  During this time, a procedures committee was established and LBHI made multiple

presentations to the procedures committee regarding a global accounting close of Lehman's

books and records that was conducted in the months following the commencement of LBHI's

chapter 11 case with employees from most of Lehman's affiliates in Europe and Asia (the

"Global Close").

---

²    In the Protocol, the definition of "Debtors" includes the Foreign Affiliates.

8.      At the same time, in order to satisfy section 9.4 of the Protocol (set forth above), LBHI developed a set of proposed intercompany settlement guidelines (the "Guidelines").  The Guidelines essentially provide practical steps for the reconciliation of intercompany balances by using the Global Close as a starting point, subject to further analysis of any material breaks in Lehman's records.  Although the Guidelines were never drafted as a binding agreement among the Protocol signatories, their provisions were discussed extensively among the Protocol signatories, several of whom provided detailed comments to the Guidelines.

9.      Ultimately, the Guidelines and the Global Close formed the basis for nine (9) comprehensive bilateral settlements (the "Bilateral Settlements") with the administrators of eighty-seven (87) of the Debtors' Foreign Affiliates, including the Lehman Brothers International (Europe) (in Administration) and its affiliates in the UK, Lehman Brothers Bankhaus AG (*in Insolvenz*), Lehman Brothers Treasury Co. B.V., Lehman Brothers Securities N.V., Lehman Brothers Asia Ltd. and its affiliates in Hong Kong, Lehman Brothers (Luxembourg) S.A. (in liquidation), Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*), Lehman Brothers Japan Inc. and its affiliates in Japan, and several Foreign Affiliates located in Singapore.  Indeed, the only major Foreign Affiliate that has not entered into a settlement with the Debtors is LBF.  The Bilateral Settlements have reduced by 81% the $327.8 billion in claims asserted by these settling Foreign Affiliates, and provide for an aggregate amount of approximately $61.4 billion in allowed claims.

10.      For more than a year after signing the Protocol, LBF was one of the most active, supportive, and productive signatories in favor of the Protocol's aspiration "to agree to a common set of financial accounting records that form the basis of Intercompany Claims."  *See* Protocol § 9.1.  During this time, LBF never once voiced its objection to the use of the

Guidelines or to the use of the Global Close as the "common set of financial accounting records" that the Signatories would use as the "basis of Intercompany Claims," pursuant to section 9.1 of the Protocol. LBF engaged the Debtors in settlement discussions that effectively applied most, if not all of the principles set forth in the Protocol and the Guidelines.

11.    Inexplicably, in October of 2010, LBF completely reversed its position with respect to the Global Close, the Guidelines, and the Protocol, and for the first time began to challenge the validity of Lehman's books and records. Since that time, the Debtors and LBF have been unable to resume meaningful settlement negotiations concerning the claims that they have asserted against each other. This impasse has left the Debtors with no choice but to request the relief herein and then shortly thereafter to pursue objections to the claims filed by LBF, described below.

### The LBF Claims

12.    On November 11, 2009, LBF filed the proofs of claim set forth on Exhibit A (attached hereto) against the Debtors (the "Initially Filed Claims"). As part of the Initially Filed Claims, LBF asserted the LBF Holdings Claims in the aggregate amount of approximately $59.3 billion, and the LBF Special Financing Claims in the amount of approximately $2.9 billion. These amounts were, by any measure, astounding – far greater than most of the more than 67,000 proofs of claim initially filed against the Debtors. Following extensive discussions with the Debtors over a period of more than two years, during which the Debtors vigorously disputed the Initially Filed Claims, LBF filed amendments to the Initially Filed Claims on December 13, 2011 (the "Amended Claims") as set forth on Exhibit B attached hereto. The Amended Claims include the LBF Holdings Claims, which LBF has reduced to an aggregate

amount of approximately $15.4 billion, and the LBF Special Financing Claim, which LBF has

reduced to approximately $552.8 million.

13.     These claims are still grossly overstated.  Unless there is a consensual

resolution, the Debtors *will* object to these claims.

A.     **The LBF Holdings Claims**

14.     The largest LBF Holdings Claim is Claim No. 63847 (the "Corp-Res

Claim"), initially filed in the amount of approximately $52.3 billion.  The Corp-Res Claim

purports to be a guarantee claim based upon board resolutions adopted by the Executive

Committee of LBHI's Board of Directors (the "Corporate Resolutions").  LBF asserts that the

Corporate Resolutions constitute valid and enforceable guarantees of the obligations of certain

other Lehman affiliates, and accordingly, as part of the Initially Filed Claims, LBF asserted the

following amounts in the Corp-Res Claim, based on its transactions with, and asserted claims

against, the following Lehman affiliates:

| SUMMARY OF CORP-RES CLAIM (CLAIM NO. 63847) | |
|---|---|
| **LEHMAN AFFILIATE** | **CLAIM ASSERTED BY LBF (IN USD)** |
| Lehman Brothers International (Europe) | 38,472,583,769 |
| Lehman Brothers Securities N.V. | 4,486,966,784 |
| Lehman Brothers Treasury Co. B.V. | 3,816,016,452 |
| LBSF | 2,954,507,228 |
| Lehman Brothers Securities Asia Limited | 860,449,254 |
| Lehman Brothers OTC Derivatives Inc. | 783,959,849 |
| Lehman Brothers Commercial Corp. Asia Ltd. | 373,835,292 |
| Lehman Brothers (Luxembourg) Equity Finance S.A. | 151,690,550 |
| Lehman Brothers Bankhaus AG | 134,797,711 |
| Lehman Brothers Commodity Services Inc. | 83,015,075 |

| Lehman Brothers Commercial Corp. | 78,152,568 |
|---|---|
| Lehman Brothers Japan Inc. | 73,907,133 |
| Lehman Brothers Commercial Bank | 3,880,430 |
| Lehman Brothers Bank, FSB | 3,363,813 |
| Other | 3,116,737 |
| Lehman Commercial Paper Inc. | 35,348 |
| Lehman Brothers Equity Finance (Cayman) Limited | 32,945 |
| **TOTAL** | **52,280,310,938** |

15.     As part of the Amended Claims, LBF has reduced the amounts asserted based on the Corporate Resolutions to approximately $12.7 billion, and asserted additional amounts as part of the same claim, based on other alleged guarantees, in the amount of $1.8 billion.  Thus, LBF now asserts a total of $14.6 billion in claims against LBHI based on purported guarantees issued by LBHI.  *See* Amended Claim No. 67800.

16.     LBF also filed (i) claims against LBHI relating to intercompany derivatives transactions, and other direct claims, in the amount of approximately $953 million (Claim No. 63460), which it subsequently amended, as part of the Amended Claims, to $652 million (Amended Claim No. 67792), and (ii) other claims in an aggregate amount of approximately $6 billion (Claim No. 63459) which, as part of the Amended Claims, have been reduced to $132 million (Amended Claim No. 67798).  Three of LBF's Initially Filed Claims, in the aggregate amount of approximately $67 million, were never amended (Claim Nos. 19596, 19597, and 63461).

17.     LBHI currently disputes the validity of these claims and the amounts asserted in their entirety.  The Corp-Res Claim is particularly susceptible to challenge, because applicable law generally requires the purported beneficiary of a guarantee to demonstrate both

knowledge of, and reliance upon, a guarantee.  LBF has demonstrated neither.  LBHI also has serious concerns as to whether the Corporate Resolutions are enforceable contracts at all.

18.    Irrespective of these challenges to the validity and enforceability of the Corp-Res Claim, the amounts asserted by LBF in the LBHI Holdings Claim far exceed LBHI's potential liability.  Based on LBHI's own review of Lehman's books and records and all other available information – including information obtained from the Global Close – the Debtors estimate that the maximum total liability of LBHI could not exceed $9.7 billion, which amount does not take into account any of the legal risks associated with the enforceability of the Corp-Res Claim.  If LBHI applied a legal risk analysis consistent with what was applied in connection with the Bilateral Settlements, the LBF Holdings Claim would be reduced to less than $3 billion.  LBHI has also filed a substantial claim in the amount of $14.2 billion against LBF in the LBF Bankruptcy (the "LBHI Claim"), based entirely on the Global Close.  The Global Close indicates that LBF owes LBHI approximately $14.2 billion primarily on account of intercompany funding.  The LBHI Claim is based upon the same records that formed the basis of the Bilateral Settlements.

19.    To date, LBF has not made any progress with respect to its claims resolution process and as a result, has not formally objected to the LBHI Claim.  LBHI believes, however, that LBF takes the position that the LBHI Claim should be subordinated under Swiss law.  Based upon advice from Swiss counsel, LBHI vigorously disputes this assertion.  Nevertheless, and even if LBF were ultimately to prevail in subordinating the LBHI Claim – which it will not – under applicable law (as set forth below), LBHI would offset the entire LBF Holdings Claims with the LBHI Claim.  Accounting for this setoff, LBF would have, at best, a claim against LBHI of approximately $1.4 billion.  However, LBHI intends to prosecute its

objection against the LBF Holdings Claim, and believes that such objection will be sustained.

While LBHI believes the LBF Holdings Claim is at most $9.7 billion, even if LBHI is only

successful in reducing the LBF Holdings Claim by 10%, the LBHI Claims and the LBF Holdings

Claims would completely offset each other.  Therefore, LBHI should not be required to maintain

any reserves for the LBF Holdings Claim.

### B.    The LBF Special Financing Claim

20.    The LBF Special Financing Claim is based on intercompany derivatives

transactions between LBSF and LBF.  As such, the valid amount of the claim depends on a

reconciliation and valuation of the derivatives transactions between the parties.  As this Court is

aware, the process of calculating these amounts is highly complex and often results in widely

different valuations between the parties.  As part of the Initially Filed Claims, the LBF Special

Financing Claim was filed in the amount of $2.95 billion (Claim No. 63455).  After discussions

between LBSF and LBF, LBF substantially reduced the asserted amount of the LBF Special

Financing Claim to $552.8 million (Amended Claim No. 67795).

21.    Despite this substantial reduction, LBSF disagrees with LBF's

calculations.  Although LBSF reserves its right to continue to revise its calculations, based on

LBSF's current analysis, the maximum amount that LBSF could possibly owe LBF based on its

derivatives trades with LBF is no greater than $367 million.  In addition, LBSF has asserted

colorable claims against LBF that would be offset against the LBF Special Financing Claim.  In

an adversary proceeding pending before this Court (*Prudential Global Funding LLC v. Lehman

Brothers Special Financing Inc., Lehman Brothers Holdings Inc., and Lehman Brothers Finance

AG*, Adv. Proc. 09-01423) (the "Prudential Adversary"), LBSF has asserted cross-claims against

LBF based on several legal theories, and seeks payment in the amount of approximately $488.6

million (the "LBSF Cross-Claims").  Having stated claims against LBF for $488.6 million, it

would be inequitable to require LBSF to reserve the entire $552.8 million for the LBF Special

Financing Claim, thus reducing distributions to LBSF's creditors.  At a minimum, LBSF should

only be required to reserve $63 million, to account for the possibility that LBSF's widely

differing calculations are correct *and* the possibility that LBSF will prevail in respect of the

LBSF Cross-Claims.

### Basis for Relief Requested

22.     The Plan provides that the Court has authority to estimate, for reserve

purposes, claims that constitute Disputed Claims under the Plan.  Section 8.4 of the Plan permits

the Debtors to reserve for Disputed Claims in "the amount determined, to the extent permitted by

the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the

amount to be retained for such Disputed Claim."  *See* Section 8.4 of the Plan.  The definition of

Disputed Claim includes any claim filed by an affiliate of the Debtors that is not allowed in

accordance with Section 6.5 of the Plan.  Because the LBF Claims were not allowed pursuant to

Section 6.5 of the Plan, they are Disputed Claims.  In addition, Section 9.3 of the Plan provides

that "the Plan Administrator may at any time request on behalf of any Debtor that the

Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent

permitted by the Bankruptcy Code and Bankruptcy Rules."  *See* Section 9.3 of the Plan.

23.     The Court has broad authority under sections 1142(b) and 105(a) of the

Bankruptcy Code over the property of the estate administered under the Plan and to issue any

order necessary to implement the provisions of the Plan and the Bankruptcy Code.  *See* 11

U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or

deliver or to join in the execution or delivery of any instrument required to effect a transfer of

property dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the consummation of the plan"); *id.* § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."). In addition, estimation is proper under section 502(c) of the Bankruptcy Code, which provides as follows:

> (c) There shall be estimated for purposes of allowance under this section –
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c). Further, courts have recognized the ability to estimate disputed claims under section 502(c). *See In re Wallace's Bookstores, Inc.*, 317 B.R. 720, 724 (Bankr. E.D. Ky. 2004) (holding that a liquidating supervisor had the right under section 502(c) to seek estimation of disputed claims pursuant to a plan of reorganization); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003) (estimating the disputed unliquidated amount of an administrative claim under section 502(c)).

24.    Under the terms of the Plan, absent the relief requested herein or other agreement by LBF, LBHI would be required to reserve the Pro Rata Share (as defined in the Plan) of distributions for the LBF Holdings Claims in the amount of $15.4 billion, notwithstanding the uncontested facts set forth above and that LBHI has asserted a claim against LBF in the amount of $14.2 billion. In addition, LBSF would be required to reserve in the Pro Rata Share of the approximately $522.8 million LBF Special Financing Claims, despite LBSF's counter-claims against LBF for approximately $488.6 million. The amount of such reserves would substantially diminish the distributions that LBHI and LBSF can make to creditors with Allowed Claims (as defined in the Plan), including substantially all of the other foreign affiliates

that have agreed to significant reductions of their claims.  Precisely to avoid this inequitable

result, the Debtors included in Section 8.4 of the Plan a mechanism to estimate Disputed Claims

such as the LBF Claims in amounts that are reasonable and that will not unfairly prejudice their

other creditors.

        25.      Even in the event that LBF prevails in *both* prosecuting the LBF Holdings

Claims in this Court *and* challenging the priority of the LBHI Claim in the Swiss courts, under

applicable US law, LBHI would be entitled to use the entire LBHI Claim to set off the LBF

Holdings Claim.  *See*, *e.g.*, *Fisher v. The Outlet Company (In re Denby Stores, Inc.)*, 86 B.R.

768, 780-81 (Bankr. S.D.N.Y. 1988) (finding that a guarantor's subordinated claim may be

eligible for setoff); *In re Lambert Oil Co., Inc.*, 347 B.R. 508, 519 (W.D. Va., 2006)

(subordination would not destroy the mutuality requirement of section 553 of the Bankruptcy

Code); *see also*, *Rochelle v. United States*, 521 F.2d 844 (5th Cir. 1975), *modified on other*

*grounds*, 526 F.2d 405 (5th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185

(1976) (allowing the government to set off tax refunds owing to a bankrupt partner against a

bankrupt partnership's tax liabilities, even though partnership creditors were subordinated as

creditors of individual partners to non-partnership creditors of those partners); *In re Sound*

*Emporium, Inc.*, 70 B.R. 22 (W.D. Tex. 1987) (permitting the United States to setoff its unpaid

tax claim against funds due the debtor's estate from two contracts involving the United States

Army over the opposition of a creditor with a prior perfected security interest in the debtor's

accounts receivables, including the Army contracts); *accord In re Defense Services, Inc.*, 104

B.R. 481, 485-86 (Bankr. S.D. Fla. 1989) (it is irrelevant to bankruptcy setoff rights that creditor

seeking setoff is subordinated to another creditor regarding the funds offset).

26.    Moreover, LBHI intends, absent an acceptable settlement, to object to the LBF Holdings Claim and vigorously pursue such objection.  LBHI believes that its objection to the LBF Holdings Claim will be sustained by this Court.  However, to estimate the LBF Holdings Claim at $0 for reserve purposes, this Court need only make a determination that LBHI would have at least a 10% likelihood in expunging the entire $15.4 billion LBF Holdings Claim.  *See In re Chemtura Corp.*, 448 B.R. 635, 650 (…courts in the Southern and Eastern Districts of New York have…cho[sen]…to estimate the expected value of a claim based on the probability of the success of various potential outcomes if decided on the merits.").  A reduction of the LBF Holdings claim by a mere 10% would reduce the LBF Holdings Claim from $15.4 billion to $14 billion, thus totally offset by the LBHI Claim.  Given that any claims litigation necessarily entails some degree of risk, LBHI submits that assigning a 10% probability of success to its objection to the LBF Holdings Claim is eminently reasonable.  Therefore, the LBF Holdings Claim should be estimated at $0 for reserve purposes.

27.    Similarly, the LBSF Cross-Claims, which have been pending for more than two years, may remain unresolved for the duration of 2012, if not longer.  Given that LBSF has pled colorable claims for a fixed amount of $488 million, and considering how much the LBF Special Financing Claim has fluctuated between the time that the Initially Filed Claims and the Amended Claims were filed, it is not unreasonable for LBSF to request that the LBSF Special Financing Claim be estimated merely for reserves purposes at a more reasonable amount.

28.    The proposed order preserves LBF's right to continue to assert that the allowed amounts of the LBF Claims should be up to the filed amounts.[3]  Moreover, section 8.4

---

[3]    In addition, the estimation of the LBF Claims does not preclude LBHI and LBSF from continuing to dispute the validity, amount and priority of the LBF Claims (which remain a Disputed Claims).  LBHI and LBSF do not intend to allow the LBF Claims the Estimated Reserve Amount, and reserve all rights to further object to the LBF Claims – and any other claims filed by LBF against the Debtors – on any basis whatsoever.

of the Plan allows creditors to "catch up" on distributions if a Disputed Claim is ultimately

allowed in an amount higher than the reserve amount.  Section 8.4 provides, in pertinent part:

> On the date of the first Distribution that is at least forty-five (45) days (or
> such fewer days as may be agreed between the applicable Debtor and the
> holder of the applicable Disputed Claim) after the date on which a
> Disputed Claim becomes an Allowed Claim against a Debtor, such Debtor
> shall remit to the holder of such Allowed Claim Available Cash equal to
> the amount that would have been distributed from the Effective Date
> through and including the date of such Distribution on account of such
> Allowed Claim had such Claim been Allowed as of the Effective Date
> [together with interest].

Thus, if the LBF Claims are estimated in the Estimated Reserve Amounts, LBF's distributions

will be in no way diminished.  No similar provision would allow the creditors of LBHI and

LBSF to "catch up" in the same way, even if the LBF Claims are ultimately allowed in lower

amounts, or disallowed entirely.

   29. For the reasons set forth in this Motion, the Debtors hereby request that

the Court enter the proposed order annexed hereto.

## **Notice**

   30. No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; and (vi)  all other parties

entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases, ECF No. 9635.  The Debtors submit that no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE LBHI and LBSF respectfully request that the Court grant the

relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
        January 12, 2012

/s/ Lori R. Fife
Lori R. Fife
Alfredo R. Pérez


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**

### Initially Filed Claims

| Claim No. | Debtor | Asserted Amount |
|---|---|---|
| 63847 | LBHI | $    52,280,310,938 |
| 63460 | LBHI | 953,950,560 |
| 63459 | LBHI | 5,955,424,047 |
| 19596 | LBHI | 30,491,608 |
| 19597 | LBHI | 28,960 |
| 63461 | LBHI | 37,456,390 |
| 63462 | LBHI | N/A[1] |
| **Total claims asserted against LBHI:** | | 59,257,662,503 |
| | | |
| 63456 | LBSF | 2,954,507,228 |
| 63455 | LOTC | 783,959,849 |
| 63454 | LBCC | 78,152,568 |
| 63457 | LCPI | 35,348 |
| 63458 | LBCS | 83,015,075 |
| **Total claims asserted against other Debtors:** | | 3,899,670,068 |
| | | |
| **Total claims:** | | **$ 63,157,332,570** |

---

[1]     Claim No. 63462 has been withdrawn.

**Exhibit B**

## Amended Claims[5]

| Amended Claim No. | Debtor | Asserted Amount |
|---|---|---|
| 67800 (Amends Claim No. 63847) | LBHI | $  14,608,906,300 |
| 67792 (Amends Claim No. 63460) | LBHI | 652,183,137 |
| 67798 (Amends Claim No. 63459) | LBHI | 132,079,210 |
| 67795 (Amends Claim No. 63456) | LBSF | 552,816,931 |
| 67796 (Amends Claim No. 63455) | LOTC | 386,290,348 |
| 67797 (Amends Claim No. 63454) | LBCC | 150,321,706 |
| 67794 (Amends Claim No. 63457) | LCPI | 0 |
| 67793 (Amends Claim No. 63458) | LBCS | Undetermined |

---

[5]    Claim Nos. 19596, 19597, and 63461 were not amended.

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :

| | |
|---|---|
| In re | :    **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | :    **08-13555 (JMP)** |
| | : |
| Debtors. | :    **(Jointly Administered)** |
| | : |

-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 8.4**
**OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LEHMAN**
**BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE**
**THE AMOUNT OF DISPUTED CLAIMS FILED BY LEHMAN BROTHERS**
**FINANCE AG (IN LIQUIDATION) FOR PURPOSES OF ESTABLISHING RESERVES**

Upon the motion (the "Motion") dated January 12, 2012, of Lehman Brothers

Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF"), as a debtors and

debtors-in-possession (together with their affiliated debtors in the above-captioned cases, the

"Debtors") for approval, pursuant to sections 105(a), 502(c) and 1142(b) of title 11 of the United

States Code (the "Bankruptcy Code"), to estimate the amount of certain claims filed by Lehman

Brothers Finance AG (In Liquidation) ("LBF") for the purposes of establishing reserves in

connection with the  chapter 11 plan, as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) the attorneys for Fannie Mae; (vii) the attorneys for the Conservator and (viii) all other

parties entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases, ECF No. 9635; and that the relief sought in the Motion is in the best interests of LBHI and

LBSF, and their creditors, and all parties in interest and that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the LBF Claims[1] are hereby estimated in the Estimated Reserve

Amounts for purposes of determining the reserves to be set for the LBF Claims under the Plan;

and it is further

ORDERED that the estimation of the LBF Claims is not deemed to determine or

affect in any respect the allowed amount of the LBF Claims for any purpose other than

establishing the reserve amount for the LBF Claims under the Plan; and it is further

ORDERED that the estimation of the LBF Claims is without prejudice to the

rights of LBF to assert that the allowed amount of the LBF Claims should be greater than the

Estimated Reserve Amounts; and it is further

ORDERED that the estimation of the LBF Claims is without prejudice to the

rights defenses and objections of LBHI, LBSF, or the Plan Administrator (as defined in the Plan)

---

[1]        Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2

to the merits, amount and priority of the LBF Claims and that by estimating the LBF Claims, all

rights of LBHI, LBSF and the Plan Administrator with respect to the LBF Claims are fully

preserved; and it is further

          ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
       [_____], 2012

                                    _____
                                    Honorable James M. Peck
                                    United States Bankruptcy Judge