WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                           :
In re                                      :     Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :     08-13555 (JMP)
                                           :
                      Debtors.             :     (Jointly Administered)
                                           :
-------------------------------------------------------------------x
```

## NOTICE OF MOTION PURSUANT TO SECTION 8.4 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS AND SECTIONS 105(a), 502(c) AND 1142(b) OF THE BANKRUPTCY CODE TO ESTIMATE THE AMOUNTS OF CLAIMS FILED BY INDENTURE TRUSTEES ON BEHALF OF ISSUERS OF RESIDENTIAL MORTGAGE-BACKED SECURITIES FOR PURPOSES OF ESTABLISHING RESERVES

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")

of Lehman Brothers Holdings Inc. and Structured Assets Securities Corporation ("SASCO"), as

debtors and debtors-in-possession (together with their affiliated debtors in the above-captioned

cases, the "Debtors") for approval, pursuant to section 8.4 of the Modified Third Amended Plan

of Lehman Brothers Holdings Inc. and its Affiliated Debtors and sections 105(a), 502(c) and

1142(b) of title 11 of the United States Code (the "Bankruptcy Code"), to estimate the amount of

certain claims filed by indenture trustees on behalf of issuers of residential mortgage-backed

securities for the purposes of establishing reserves in connection with the Debtors' chapter 11

plan, all as more fully described in the Motion, will be held before the Honorable James M.

Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court"), on **January 26, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

           **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local

Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of

the objecting party, the basis for the objection and the specific grounds thereof, shall be filed

with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which

can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing

system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable

portable document format (PDF) (with a hard copy delivered directly to Chambers), in

accordance with the customary practices of the Bankruptcy Court and General Order M-399, to

the extent applicable, and served in accordance with General Order M-399 and on:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004;

(ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY, 10153, Attn: Alfredo R.

Perez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2,

33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq.,

Elisabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley &

McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne,

Esq., Evan Fleck, Esq. and Dennis O'Donnell, Esq., attorneys for the official committee of

unsecured creditors appointed in these cases; (v) Chapman and Cutler LLP., 111 West Monroe

Street, Chicago, Illinois 60603, Attn: Franklin H. Top III, Esq., attorneys for U.S. Bank National

Association; (vi) Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, Georgia 30309-3424,

Attn: J. William Boone, Esq., attorneys for Wilmington Trust Company; (vii) Hinckley, Allen &

Snyder LLP, 28 State Street, Boston, MA 02109-1775, Attn: Jennifer V. Doran, Esq., attorneys

for Citibank, N.A. and Wilmington Trust Company; (viii) Nixon Peabody LLP, 437 Madison

Avenue, New York, NY 10022, Attn: Christopher M. Desiderio, Esq., attorneys for Deutsche

Bank National Trust Company; (ix) Pryor Cashman LLP, 7 Times Square, New York, NY

10036-6569, Attn: Sean Connery, Esq., attorneys for HSBC Bank USA, N.A., (x) Faegre Baker

Daniels LLP, 2200 Wells Fargo Center, 90 S. Seventh Street, Minneapolis, MN 55402-3901,

Attn: Mike Doty, Esq., attorneys for Wells Fargo Bank, N.A.; and (xi) Hunton & Williams LLP,

Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, VA 23219, Attn: Jason Harbour,

Esq., attorneys for Bank of America, N.A., so as to be so filed and received no later than

**January 19, 2012 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

    **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated: January 12, 2012
      New York, New York

                      /s/ Alfredo R. Perez
                      Alfredo R. Perez

                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone:  (212) 310-8000
                      Facsimile:  (212) 310-8007

                      Attorneys for Debtors
                      and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                  Debtors.                :    (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

**MOTION PURSUANT TO SECTION
8.4 OF THE MODIFIED THIRD AMENDED
JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS
HOLDINGS INC. AND ITS AFFILIATED DEBTORS AND
SECTIONS 105(a), 502(c) AND 1142(b) OF THE BANKRUPTCY CODE
TO ESTIMATE THE AMOUNTS OF CLAIMS FILED BY INDENTURE
TRUSTEES ON BEHALF OF ISSUERS OF RESIDENTIAL MORTGAGE-
BACKED SECURITIES FOR PURPOSES OF ESTABLISHING RESERVES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and Structured Assets Securities

Corporation ("SASCO"), together with their affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (the "Debtors"), file this motion and respectfully

represent:

US_ACTIVE:\43896411\04\58399.0008

## **Preliminary Statement**

1.      On December 6, 2011, the Bankruptcy Court approved, and entered an

order confirming, the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors (the "Plan").  ECF No. 23023.  Now that the Debtors'

Plan has been confirmed, LBHI and SASCO intend to expeditiously commence distributions to

creditors.  U.S. Bank N.A., Citibank N.A., Wilmington Trust Company, Bank of America, N.A.,

Deutsche Bank National Trust Company, HSBC Bank USA, N.A. and Wells Fargo Bank, N.A.,

each in their capacity as a trustee or an indenture trustee for trusts that issued mortgage-backed

securities (the "Indenture Trustees"), asserted claims in the aggregate amount of approximately

$37 billion against LBHI and SASCO based on alleged breaches of representations and

warranties relating to the loans transferred to such trusts by SASCO.  These claim amounts are

drastically overstated and the claims are actually contingent and unliquidated claims.  The claims

are based on damages that may arise if it is determined that the Debtors breached certain

representations or warranties and such breaches result in damages to the trusts.  Certain of the

Indenture Trustees have conceded that the claims are actually contingent and/or unliquidated

claims and that the actual amount will be less than the maximum asserted amount.

2.      LBHI and SASCO seek authority to estimate the claims of the Indenture

Trustees at an amount that LBHI and SASCO believe is a reasonable and conservative estimate

of the possible allowed amount of the claims, solely for the purposes of establishing reserves

under the Plan.  Absent the relief requested herein, under the terms of the Plan, LBHI and

SASCO would be required to retain substantial reserves on account of these claims which will

reduce distributions to LBHI's and SASCO's creditors for an extended period of time.  It would

be inequitable to all other creditors of LBHI and SASCO for these contingent and overstated

claims to prevent larger initial distributions.

## Jurisdiction

3.        This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

4.        The Debtors request that this Court, pursuant to section 8.4 of the Plan and

sections 105(a), 502(c), and 1142(b) of the Bankruptcy Code, estimate the amount of the claims

set forth on Exhibit A attached hereto (the "Claims") as unsecured claims in the amounts set

forth on Exhibit A (the "Estimated Reserve Amounts"), which aggregates to approximately $2.4

billion, so that reserves for the Claims will not unnecessarily reduce initial distributions by LBHI

and SASCO under the Plan.

## The Claims Process

5.        On July 2, 2009, this Court entered an order setting forth the procedures

and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") ECF

No. 4271.

6.        The Debtors provided notice of the Bar Date to all known creditors and

potential creditors in accordance with the requirements of the Bar Date Order.  More than 67,000

proofs of Claim were filed in the Debtors' cases.

7.        The Debtors have made every effort to expedite the claims resolution

process.  The Debtors have reviewed and reconciled claims and pursued the resolution of claims

through filing and prosecution over 254 omnibus claims objections.  In addition, the Debtors

have engaged in settlement negotiations with many of their large creditors.  The claims objection

process, taken together with various settlements, have resulted in the voluntary withdrawal,

reduction, reclassification, disallowance or expungement of approximately 32,000 claims in the amount of approximately $455 billion.

### The RMBS Claims Are Filed In Drastically Overstated Amounts

8.      Prior to the Commencement Date, in the ordinary course of business, LBHI would acquire residential mortgage loans either originated or purchased by its subsidiaries. LBHI would transfer the loans to SASCO and then SASCO would securitize such loans. Securitization of the loans entailed the establishment of a trust or other special purpose vehicle to acquire the loans, hold the loans and issue securities supported by the proceeds of the loans.  In connection with the transfer of the loans by SASCO to the securitization trusts, LBHI and/or SASCO made certain representations and warranties regarding the nature and quality of certain of the loans or the documents included in the loan file.  The loan purchase agreements and trust agreements pursuant to which the trusts acquired the loans (the "Governing Agreements") from SASCO typically provide that the trustee may seek a contractually defined "Repurchase Price" in the event there are breaches of representations and warranties.  In order to assert a claim for the "Repurchase Price," the Governing Agreements require the trustee to establish that (1) a breach of a representation and warranty exists; (2) the breach was material; (3) the breach adversely impaired the value of the mortgage loan; and (4) the trustee provided prompt notice of the breach to the Debtors.  The relevant sections of a representative example of a Trust Agreement is attached hereto as Exhibit C.  See section 2.04 of Exhibit C.

9.      The Indenture Trustees, on behalf of the securitization trusts, have asserted more than 300 claims aggregating to approximately $37 billion for damages incurred by trusts that issued residential mortgage-backed securities ("RMBS").  These Claims allege that LBHI and/or SASCO breached representations and warranties.  The Claims represent the single largest

group, by amount, of disputed claims remaining in the Debtors' chapter 11 cases. The ultimate allowed amount of the Claims is indeterminate at this time because the amounts are dependent upon the potential occurrence of events in the future. By their nature, these are contingent and unliquidated claims.

10.     The Debtors believe the asserted amounts of the Claims are drastically overstated for several reasons: (a) in most cases, the Indenture Trustees filed duplicate claims against LBHI and SASCO on behalf of the same securitization; (b) the Claims largely do not identify breaches of representations and warranties with respect to certain loans, nor do they set forth any of the other elements of contractual liability of the Debtors; (c) the Claims are asserted in amounts that bear no correlation to existing or expected breaches and resulting damages; (d) the Claims fail to distinguish between Debtors' direct representations and warranties and representations and warranties by third-party sellers for which the Debtors are not liable; and (e) there is no basis for the Claims to be secured claims. Each of these assertions is described in more detail below.

11.     The Debtors and the Indenture Trustees are continuing to negotiate the terms of a settlement protocol that would facilitate the final resolution and allowance of the Claims. However, based on the current status of the negotiations, it is unlikely that the Debtors and the Indenture Trustees will agree on the terms of the protocol, and the Bankruptcy Court will have the opportunity to consider the protocol prior to the initial distributions in the Debtors' chapter 11 cases.

### Claims Filed Against LBHI and SASCO are Duplicative

12.     As discussed above, LBHI and/or SASCO made certain representations and warranties with respect to the transfer of some of the loans to securitization trusts and are subject

to repurchase claims for breaches thereof.  However, generally, LBHI and SASCO made

different representations and warranties.  LBHI's representations and warranties generally

related to the origination and quality of the loans while SASCO's representations and warranties

generally related to the delivery of a complete loan file including any and all collateral

documents (e.g., promissory notes, mortgages/deeds of trusts, title insurance policies).  It is

therefore unlikely that both LBHI and SASCO would incur liability in connection with the same

loans, and therefore inappropriate for Claims to be allowed against both Debtors in the same

amounts without specific allegations of liability.  It may ultimately be determined that LBHI has

liability for breaches with respect to certain loans and SASCO has liability for breaches with

respect to other loans.  However, since the representations made by the Debtors differ, it is not

possible that both Debtors breached the same representation relating to a loan that led to a loss

by a trust.  Therefore, the Claims asserting the same liability against LBHI and SASCO are at

least in part duplicative.

***Indenture Trustees Have Not Provided Loan-Level Breach Information***

13.     There are more than 1.5 million mortgage loans held by the trusts

represented by the Indenture Trustees, yet as a group, the Indenture Trustees have only provided

specific information regarding breaches and damages for a small percentage of these loans.  The

Debtors have made requests for information from the Indenture Trustees.  The below table

identifies the number of loans included, in the aggregate, on each Indenture Trustees proofs of

claim and the number of loans for which the Indenture Trustees have provided loan-level breach

information:

| Trustee | Number of Loans Included on Proofs of Claim (Approx.) | Number of Loans For which Breaches Have Been Identified |
|---|---|---|
| U.S. Bank ("US Bank")/Bank of America, N.A. | More than 1,000,000 | 916[1] |
| Citibank, N.A. ("Citibank") and Wilmington Trust Co. as Successor Trustee | 70,000 | 6 |
| HSBC Bank USA, N.A. | 15,300[2] | 15 |
| Deutsche Bank National Trust Company | 13,500[3] | 1 |
| Wilmington Trust Company ("Wilmington") | 60,300[4] | 147 |
| Wells Fargo Bank, N.A. ("Wells Fargo") | 323,000[5] | 360[6] |

14.    The aggregate claim amount for the loans with identified breaches is $208 million; a miniscule fraction of the approximately $37 billion asserted claim amounts. At this time, the Debtors do not agree that even the $208 million represents a valid liability. As

---

[1] In response to requests for claim information, U.S. Bank has also provided certain "document exception" reports that may be evidence of document deficiencies in certain loan files. U.S. Bank has not, however, (1) stated a claim based on document deficiencies, (2) identified which loans in these reports have the kind of deficiencies that would entitle the trusts to a remedy, or (3) otherwise complied with the contractual requirements necessary to force a cure or repurchase of any of the loans.

[2] Based on numbers of loans into trusts at time of securitization.

[3] Based on numbers of loans into trusts at time of securitization.

[4] Based on numbers of loans into trusts at time of securitization.

[5] Based on numbers of loans into trusts at time of securitization.

[6] In response to requests for claim information, Wells Fargo has also provided certain "document exception" reports that may be evidence of document deficiencies in certain loan files. Wells Fargo has not, however, (1) stated a claim based on document deficiencies, (2) identified which loans in these reports have the kind of deficiencies that would entitle the trusts to a remedy, or (3) otherwise complied with the contractual requirements necessary to force a cure or repurchase of any of the loans.

discussed above, a condition precedent to asserting a Claim for a repurchase/indemnity

obligation under the Governing Agreements is that the claimants provide information for each

loan and each breach.  Unless the creditors can ultimately provide such information, they cannot

establish valid claims under the Governing Agreements.

***Claims Are Filed In Amounts That Bear No Correlation to Existing or Expected Breaches***

15.    While the amount of detail provided by each Indenture Trustee varies, in

general, the Claims do not assert amounts that relate or are tied in any way to the existing or

expected breaches of representations and warranties.  Some of the Claims assert amounts equal

to the total outstanding amount of all loans held by the trusts.  It is not reasonable to assume that

there will exist breaches of representations and warranties with respect to all of the mortgage

loans held by a trust, and that such trust will not collect any amounts from the sale, foreclosure or

other remedial action with respect to such loan.

16.    Certain Indenture Trustees have conceded that they have not established

that their asserted claim amounts are valid, and that they do not presently know the amount of

their claims that will ultimately be asserted.  At a hearing before the Bankruptcy Court on June

30, 2011 relating to an objection to certain of the Claims for the failure to comply with the Bar

Date Order (the "June 30 Hearing"), U.S. Bank's counsel stated that U.S. Bank does not "know

if there are latent breaches with regard to any of those [one million] mortgages" that are at issue

in U.S. Bank's proofs of claim and agreed with the Bankruptcy Court that "there's a whole class

of residential mortgage loans where it's not possible to know whether there are breaches or

potential breaches."  June 30 Hearing Tr. at 57 and 60. U.S. Bank also conceded that the Claims

were filed "as a prophylactic measure, as a protective measure for the bank, and that this is an

unliquidated claim."  June 30 Hearing Tr. at 57.

17.    Citibank and Wilmington have also stated that they are aware of liability for only a small number of loans.  See Citibank and Wilmington's Response to Debtor's One Hundred and Ninth Omnibus Objection, ECF No. 17883, at 8 ("Citibank Response") ("At this point, the Trustees are aware of defects with only a handful of the underlying mortgage loans"). Moreover, Citibank and Wilmington admit to overstating their claims.  Counsel for Citibank and Wilmington stated at the June 30 Hearing that they viewed their Claims as filed as "contingent and/or unliquidated as to the amount…we don't stand before this Court and suggest that the claims should be allowed in the total aggregate unpaid balance of the mortgage loans in each trust.  That would not be an accurate presentation of what we think the amount would be."  June 30 Hearing Tr. at 43 and 68.  See also Citibank Response at 8 (agreeing their claim in the aggregate amount of the underlying mortgage loans would "grossly overstate the amount of the Claims").

18.    The Debtors have requested numerous times that the Indenture Trustees justify or reduce their Claim amounts.  Despite the admissions by the Indenture Trustees that the Claims are overstated, the Indenture Trustees have declined requests to provide more realistic claim amounts.

***The Debtors Are Not Liable For Breaches of Representations and Warranties With Respect to Certain Loans***

19.    Portions of the Claims of most of the Indenture Trustees relate to loans for which neither LBHI nor SASCO are liable for breaches of representations or warranties.  Prior to the Commencement Date, the Debtors and their subsidiaries acquired residential mortgages in three ways:  (a) loans were originated by subsidiaries of LBHI ("Lehman Originated Loans"), (b) subsidiaries of LBHI acquired loans from small banks or mortgage lenders on an ongoing basis pursuant to standardized loan purchase and broker agreements ("Bank Originated Loans"), and

(c) loans were acquired by LBHI or its subsidiaries from large mortgage lenders in bulk purchases of a pool of loans ("Transferor-Originated Loans").  Loans acquired by subsidiaries were typically transferred to LBHI which subsequently transferred these loans to SASCO.  SASCO then securitized such loans and transferred loans to the securitization trusts.

20.    In connection with the transfer of the Lehman Originated Loans or the Bank Originated Loans to the securitization trusts, SASCO and/or LBHI typically made certain representations or warranties regarding the nature or quality of the loans and the delivery thereof to the securitization trusts.  With respect to Transferor-Originated Loans, LBHI, in some circumstances, made some representations and warranties regarding the nature or quality of those loans, in addition to assigning to the securitization trusts the representations and warranties that the originator or initial seller made when it sold the loans to a subsidiary of LBHI or LBHI directly.  Under the Governing Agreements, when a representation and warranty was made by both LBHI and the initial seller, the trust's sole recourse is to the initial seller, not LBHI.  Approximately 70% of the loans subject to the Claims against LBHI and SASCO are Transferor Originated Loans.  Section 2.03(b) of the representative example Trust Agreement sections attached as Exhibit C clearly provides that the trustee's sole recourse is to the initial seller, not LBHI.  SASCO made certain representations regarding contents of the loan files for Transferor-Originated Loans.  However, any breaches of such representations are typically cured through non-monetary actions, so it is unlikely claims will result therefrom.  There is no basis for liability for these portions of these Claims.

***There is No Basis for the Claims to be Treated as Secured Claims***

21.    Certain Claims assert that they are secured claims.  However, the Governing Agreements do not provide any basis for the creditors to assert that their claims for

breaches of representations and warranties are secured.  In addition, the proofs of claim do not identify any of the Debtors' assets that allegedly secure the obligations.

### The Plan and Distributions Under the Plan

22.     LBHI and SASCO dispute the amount and asserted security of the Claims. The Debtors anticipate commencing distributions under the Plan promptly following the effective date of the Plan.  Section 8.4 of the Plan provides that if a claim is a Disputed Claim (as defined in the Plan) the applicable Debtor is required to retain Available Cash (as defined in the Plan) in the amount equal to the Pro Rata Share (as defined in the Plan) of the distributions that would have been made to a holder of a Disputed Claim if such Disputed Claim were an Allowed Claim in an amount equal to the least of (a) the filed amount of such Disputed Claim, (b) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claim, and (c) such other amount as may be agreed upon by the holder of such Disputed Claim.  See section 8.4 of the Plan.

23.     Even in the context of the Debtors' chapter 11 cases, the Claims are large and the reserves required in connection with the Claims will have a material affect on the amount of the initial distributions to creditors that have allowed claims.  Absent the relief requested herein, the Debtors would be obligated to reserve for the Claims based on the asserted amount of approximately $37 billion.  These amounts dwarf the Debtors' estimates for all LBHI Class 7 and SASCO Class 3 Claims, the Classes in which the Claims will be included in the Plan that will ultimately be allowed against LBHI and SASCO.  *See* Debtors' Disclosure Statement at Ex. 4.  The amount of such reserves for the excessively overstated Claims would limit LBHI's and SASCO's ability to make meaningful distributions to other creditors for an extended period of

time.  It is particularly inequitable for the Debtors to be required to reserve for Claims in amounts for which some Indenture Trustees have conceded that the asserted amount is not the actual liability.

### Proposed Estimated Reserve Amounts

24.     Since each of the Claims is based on similar transactions, the Debtors propose to implement a uniform methodology for the estimation of the reserve amounts for each of the Claims.  LBHI and SASCO propose the Estimated Reserve Amounts set forth on Exhibit A attached hereto based on a comprehensive review of (a) the Claims, (b) their books and records, (c) communications with the Indenture Trustees; (d) the Debtors' historical experience with similar claims (both prior to and during these cases); (e) the legal issues, if any, associated with the Claims; and (f) such other factors as LBHI and SASCO deemed relevant.  *See* Decl. of Zachary Trumpp at 12.

25.     In summary, the methodology for the calculation of the Estimated Reserve Amount for each Claim, starts with unpaid principal balance of all loans held by each trust, and then takes into account assumptions regarding the (a) default rates for the loans, (b) loss rates on the defaulted loans, (c) percentage of defaulted loans for which breaches of representations and warranties exist, (d) the ability of an indenture trustee to prove a breach, (e) the percentage of the loans in each deal that relate to loans for which LBHI or SASCO made representations and warranties.  A detailed description of the Debtors' valuation methodology is set forth on Exhibit B attached hereto and in the Declaration of Zachary Trumpp.

26.     The Debtors considered the effect of using a range of assumptions in the methodology, and the resulting range of probable liability for the Debtors.  The Debtors determined that the probable liability will be between $1.1 and $2.4 billion in the aggregate for

all Claims.  LBHI and SASCO seek to establish the reserves for the Claim based on the

conservative estimate of $2.4 billion in the aggregate for each of the Claims.  *See* Decl. of

Zachary Trumpp at 20.

### Basis for Relief Requested

27.    The Plan provides that the Court has authority to estimate, for reserve

purposes, claims that are disputed under the Plan.  Section 8.4, permits the Debtors to reserve in

"the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules,

by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed

Claim."  See section 8.4 of the Plan.   In addition, Section 9.3 of the Plan provides that "the Plan

Administrator may at any time request on behalf of any Debtor that the Bankruptcy Court

estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the

Bankruptcy Code and Bankruptcy Rules."   See section 9.3 of the Plan.

28.    The Court has broad authority under sections 1142(b) and 105(a) of the

Bankruptcy Code over the property of the estate administered under the Plan and to issue any

order necessary to implement the provisions of the Plan and the Bankruptcy Code.  *See* 11

U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or

deliver or to join in the execution or delivery of any instrument required to effect a transfer of

property dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the

consummation of the plan"); *id.* § 105(a) ("The court may issue any order, process or judgment

that is necessary or appropriate to carry out the provisions of this title."); *see also Hosp. & Univ.*

*Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34

(2d Cir. 1993) (finding that bankruptcy courts retain post confirmation jurisdiction to the extent

provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535

(Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. § 1142(b)…

and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly

implemented.'") (internal citations omitted).

29.    Estimation is proper under section 502(c) of the Bankruptcy Code, which

provides as follows:

> (c) There shall be estimated for purposes of allowance under
> this section –
>
> (1) any contingent or unliquidated claim, the fixing or
> liquidation of which, as the case may be, would unduly delay the
> administration of the case; or
>
> (2) any right to payment arising from a right to an equitable
> remedy for breach of performance.

11 U.S.C. § 502(c).

30.    Bankruptcy Courts may estimate claims in order "to avoid undue delay in

the administration of bankruptcy proceedings." *Frito-Lay, Inc. v. LTV Steel Co. (In re

Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993). As such, bankruptcy courts may estimate

claims under section 502(c)(1) of the Bankruptcy Code in order: "1) [t]o avoid the need to await

the resolution of outside lawsuits to determine issues of liability or amount owed by means of

anticipating and estimating the likely outcome of these actions, and 2) . . . to promote a fair

distribution to creditors through a realistic assessment of uncertain claims." *O'Neill v. Cont'l

Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 981 F.2d 1450, 1461 (5th Cir. 1993). In addition,

estimation of a claim under section 502(c)(1) is appropriate if liquidation of a claim "will take

too long and unduly delay the distribution of the estate's assets." *In re N.Y. Med. Group, P.C.*,

265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001). Moreover, section 502(c) uses the word "shall,"

and, therefore, estimation is mandatory rather than permissive if the criteria of section 502(c) are

met. *See, e.g., Int'l Bhd. of Teamsters v. IML Freight, Inc.*, 789 F.2d 1460, 1463 (10th Cir.

1986); Bunn v. Frontier Airlines, Inc. (*In re Frontier Airlines, Inc.*), 137 B.R, 811, 814 (D. Colo. 1992); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986); *In re The Nova Real Estate Inv.*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982).

31.    Both factors supporting the estimation of claims pursuant to section 502(c)(1) are present here: (a) it would take a long time to commence and conclude litigation of the allowed amount of the Claims; and (b) waiting for the liquidation of the Claims will unduly delay the administration of the LBHI's and SASCO's estates.  Litigation to determine the allowed amount of the Claim would be extraordinarily lengthy and complex.  Each Claim relates to thousands of mortgage loans.  The allowed amount of each Claim necessarily requires a review and determination for each loan underlying each Claim.  Discovery regarding each individual loan, its historical performance and any reasons for losses sustained would be extraordinarily extensive and complex.  The Indenture Trustees asserted at the June 30 Hearing, that a review of each loan file to determine the breaches of representations and warranties would be extremely burdensome and commercially impractical.  Litigation to finally determine the allowed amount of the Claims would take years to complete.

32.    Meanwhile, waiting for the Claims to become liquidated is not a reasonable alternative.  The Indenture Trustees informed the Bankruptcy Court at the June 30 Hearing that the common practice for trustees is to only review loans for breaches following the occurrence of an event of default by the borrower of a loan.  *See* June 30 Hearing Tr. at 47. Many of the loans underlying the Claims are thirty-year term mortgage loans, which do not mature for many years.  Waiting for all of the Claims to liquidate and/or mature on their own would greatly limit distributions in these cases for an extended period of time.

33.     Under the terms of the Plan, absent the relief requested herein or other agreement by the Indenture Trustees, LBHI would be required to reserve the Pro Rata Share of each Distribution based on Claims of approximately $18,535,064,721 and SASCO would be required to reserve the Pro Rata Share of each Distribution based on Claims of approximately $18,477,277,598.  Such exaggerated claim amounts would substantially dilute the claims pool and limit LBHI's and SASCO's distributions to their creditors for an extended period of time.  It would be inequitable for initial distributions to creditors to be reduced because of contingent claims filed in overstated amounts by the Indenture Trustees, which certain Indenture Trustees have already admitted are not the proper amounts of the Claims.

34.     It is not possible for courts to estimate the value of claims with absolute certainty; thus, estimation requires only "sufficient evidence on which to base a *reasonable estimate* of the claim."  *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (emphasis added); *see also In re Windsor Plumbing Supply Co.,* 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use of probabilities in estimation of claims).  The principal consideration when estimating the value of a claim is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims."  *Cont'l Airlines*, 981 F.2d at 1461; *see also In re Enron Corp.,* Ch. 11 Case No. 01-16034, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) ("[T]he estimation of claims promotes the purpose of establishing the amount of claims that are to receive distributive shares") (citing *In re Thomson McKinnon Sec., Inc.*, 143 B.R. at 619).

35.     Section 502(c) does not prescribe the method for estimating a claim, and the Court therefore has discretion to select the valuation model that best suits the circumstances of the case at hand when estimating the value of claims.  "[W]hen estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the

procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007).

36.    LBHI and SASCO propose to use a uniform methodology for estimating the amount of the Claims for purposes of establishing reserves.  LBHI and SASCO arrived at its estimate for the reserve amounts for the Claims in good faith, conservatively, and based upon appropriate review and analysis.  A detailed description of the Debtors' valuation methodology is set forth on Exhibit B attached hereto and in the Declaration of Zachary Trumpp.  LBHI and SASCO seek to establish the reserves for the Claim in the aggregate amount of $2.4 billion which represents the high end of their estimates for the Claims.  The Debtors' valuation methodologies and the assumptions included therein are a reasonable means to estimate the amount of the Claims.  *See* Decl. of Zachary Trumpp at 25.  This represents the fairest possible course to protect the interests of all creditors, including the Indenture Trustees, while allowing for the expedient administration of these cases.

37.    The estimation of the Claims solely for reserve purposes does not prejudice the substantive rights of the Indenture Trustees, or the trusts on whose behalf the Claims are filed, in any respect.  The proposed order preserves the Indenture Trustees' rights to continue to assert that the allowed amounts of the Claims should be the filed amounts and does not preclude LBHI or SASCO from continuing to dispute the validity, amount and priority of the Claims.  As discussed above, the Debtors and the Indenture Trustees have been negotiating the terms of a protocol to determine the allowed amount of the Claims.  If an agreement can be reached among the parties and the Bankruptcy Court approves a protocol for determining the allowed amount of the Claims, the reserve amounts for the Claims will be modified to reflect the

terms of the consensual protocol.  To the extent that any of the Claims are ultimately allowed in amounts greater than the applicable Estimated Reserve Amount, the Plan provides that such Claim is entitled to catch-up payments in the amounts that would have been distributed on such Claim had the Claim been allowed as of the effective date of the Plan.  The relief sought by the Debtors is temporary until such time as the parties will hopefully reach a fully consensual resolution of the Claims.

38.    For the reasons set forth in this Motion, the Debtors hereby request that the Bankruptcy Court enter the Proposed Order annexed hereto.  It is unfair to all other creditors of LBHI and SASCO for distributions to be reduced until the conclusion of litigation regarding the allowed amounts of the Claims, which likely will take significant time due to the nature of the claims, before making amounts available for distribution under the Plan.  The relief requested herein will allow LBHI and SASCO to effectuate larger initial distributions under the Plan, without undue delay.

39.    To be clear, the Debtors are not intending to allow the Claims at the Estimated Reserve Amounts, and reserve all rights to further object to the Claims on any basis whatsoever.

## Notice

40.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee for Region 2; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for each of the Indenture Trustees; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases, ECF No. 9635.

41.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE, LBHI respectfully requests entry of an order granting the relief

requested herein and such other and further relief as is just.

Dated: New York, New York
        January 12, 2012

                                    /s/ Alfredo R. Perez
                                    Alfredo R. Perez

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

**Exhibit A**

**Estimated Reserve Amounts**[7]

---

[7] Claim amounts of "$0" in the attached tables indicates the proof of claim did not specify a claim amount.  If a proof of claim included more than one RMBS security and did not allocate the asserted claim amount among the RMBS securities, the claimed amount is included in the attached tables once, and to avoid duplicate aggregate claim amounts, in all other places, the asserted claim amount is denoted as "-".

| Bank of America, National Association | | | | | | |
|---|---|---|---|---|---|---|
| **LBHI Claim Number** | **SASCO Claim Number** | **RMBS Security** | **LBHI Asserted Claim Amount** | **LBHI Estimated Reserve Amount** | **SASCO Asserted Claim Amount** | **SASCO Estimated Reserve Amount** |
| 16389 | 16353 | SASCO 2003-1[1] | $0 | TERMINATED | $0 | TERMINATED |

**TOTALS:**          **$0**          **$0**          **$0**          **$0**

[1]This deal does not have a UPB or Cumulative Loss as of 9/25/2011 as the deal has been terminated and collapsed thus the deal is no longer active

| | | | | | | |
|---|---|---|---|---|---|---|
| **Citibank, N.A. As Trustee** | | | | | | |
| **LBHI Claim Number** | **SASCO Claim Number** | **RMBS Security** | **LBHI Asserted Claim Amount** | **LBHI Estimated Reserve Amount** | **SASCO Asserted Claim Amount** | **SASCO Estimated Reserve Amount** |
| 22604 | 22774 | SARM 2005-3XS | $3,386,836,805 | $1,833,754 | $3,386,836,805 | $96,513 |
| 22604 | 22774 | SASCO 2003-S1 | - | $592,367 | - | $31,177 |
| 22604 | 22774 | SASCO 2004-18H | - | $92,259 | - | $4,856 |
| 22604 | 22774 | SASCO 2004-23XS | - | $4,981,565 | - | $262,188 |
| 22604 | 22774 | SASCO 2005-10 | - | $20,125,508 | - | $1,059,237 |
| 22604 | 22774 | SASCO 2005-17 | - | $14,109,393 | - | $742,600 |
| 22604 | 22774 | SASCO 2005-9XS | - | $4,731,040 | - | $249,002 |
| 22604 | 22774 | SASCO 2005-15 | - | $12,722,353 | - | $669,598 |
| 22604 | 22774 | SASCO 2006-3H | - | $0 | - | $0 |
| 22604 | 22774 | SASCO 2006-ARS1 | - | $0 | - | $0 |
| 22604 | 22774 | SASCO 2006-S2 | - | $43,210,748 | - | $2,274,250 |
| 22604 | 22774 | SASCO 2006-S3 | - | $33,099,247 | - | $1,742,066 |
| 22604 | 22774 | SASCO 2006-S4 | - | $50,268,645 | - | $2,645,718 |
| 22605 | 22719 | LXS 2005-1 | $5,041,254,234 | $13,603,512 | $5,041,254,234 | $715,974 |
| 22605 | 22719 | LXS 2005-3 | - | $15,380,651 | - | $809,508 |
| 22605 | 22719 | LXS 2005-8 | - | $14,010,972 | - | $737,420 |
| 22605 | 22719 | LXS 2006-1 | - | $13,873,190 | - | $730,168 |
| 22605 | 22719 | LXS 2006-13 | - | $23,124,081 | - | $1,217,057 |
| 22605 | 22719 | LXS 2006-17 | - | $32,842,942 | - | $1,728,576 |
| 22605 | 22719 | LXS 2006-5 | - | $26,218,329 | - | $1,379,912 |
| 22605 | 22719 | LXS 2006-7 | - | $30,147,655 | - | $1,586,719 |
| 22605 | 22719 | LXS 2006-9 | - | $20,427,189 | - | $1,075,115 |
| 22605 | 22719 | LXS 2007-11 | - | $22,356,163 | - | $1,176,640 |
| 22605 | 22719 | LXS 2005-10 | - | $15,055,138 | - | $792,376 |
| 22605 | 22719 | LXS 2005-6 | - | $22,235,236 | - | $1,170,276 |
| 22606 | 22721 | LMT 2006-1 | $999,992,177 | $855,852 | $999,992,177 | $45,045 |
| 22606 | 22721 | LMT 2006-4 | - | $1,559,974 | - | $82,104 |
| 22606 | 22721 | LMT 2006-3 | - | $0 | - | $0 |
| 22639 | 22775 | SASCO 2006-RM1[1] | $927,988,327 | $0 | $927,988,327 | $0 |
| 22639 | 22775 | SASCO 2007-RM1[2] | - | TERMINATED | - | TERMINATED |
| 22761 | 22718 | BNC 2007-3 | $600,488,172 | $0 | $600,488,172 | $0 |
| | | **TOTALS:** | **$10,956,559,715** | **$437,457,761** | **$10,956,559,715** | **$23,024,093** |

[1]Unable to access the current balances, defaulted to $0 as LBHI does not have liability

[2]This deal does not have a UPB or Cumulative Loss as of 9/25/2011 as the deal has been terminated and collapsed thus the deal is no longer active

| Deutsche Bank National Trust Company, As Trustee | | | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 18542 | NA | SAIL 2004-1 | $0 | $1,021,680 | NA | NA |

**TOTALS:**       **$0**       **$1,021,680**       **$0**       **$0**

| HSBC Bank USA, N.A., As Trustee | | | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 28538 | 28773 | SARM 2007-9 | $0 | $16,015,303 | $0 | $842,911 |
| 30060 | 28761 | SARM 2005-1 | $0 | $15,904,423 | $0 | $837,075 |
| 30061 | 28760 | SARM 2004-1 | $0 | $4,066,024 | $0 | $214,001 |
| 30062 | 28763 | SARM 2005-7 | $0 | $13,436,788 | $0 | $707,199 |
| 30526 | 28534 | SARM 2007-7 | $0 | $16,796,094 | $0 | $884,005 |
| 30529 | 28772 | SARM 2007-5 | $0 | $6,366,637 | $0 | $335,086 |
| | | **TOTALS:** | **$0** | **$72,585,270** | **$0** | **$3,820,277** |

| U.S. Bank, N.A. | | | | | |
|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 15981 | 16374 | SAIL 2004-5 | $0 | $319,339 | $0 | $16,807 |
| 15982 | 16373 | SAIL 2004-4 | $0 | $432,231 | $0 | $22,749 |
| 15983 | 16372 | SAIL 2004-3 | $0 | $1,086,849 | $0 | $57,203 |
| 15984 | 16371 | SAIL 2004-2 | $0 | $274,350 | $0 | $14,439 |
| 15985 | 16370 | SAIL 2003-BC13 | $0 | $129,236 | $0 | $6,802 |
| 15986 | 16369 | SAIL 2003-BC10 | $0 | $127,067 | $0 | $6,688 |
| 15987 | 16368 | SAIL 2003-BC5 | $0 | $321,936 | $0 | $16,944 |
| 15988 | 16349 | SAIL 2003-BC1 | $0 | $135,321 | $0 | $7,122 |
| 15989 | 16367 | LXS 2007-8H | $0 | $59,171,461 | $0 | $3,114,287 |
| 15990 | 16366 | LXS 2006-15 | $0 | $16,728,089 | $0 | $880,426 |
| 15992 | 16418 | LXS 2005-4 | $0 | $10,848,876 | $0 | $570,993 |
| 15993 | 16416 | LMT 2006-2[1] | $0 | NA | $0 | NA |
| 15994 | NA | GPMF 2005-HE3 | $0 | $2,667,485 | NA | NA |
| 15995 | NA | LABS 2005-1 | $0 | $0 | NA | NA |
| 15996 | NA | LABS 2004-1 | $0 | $5,938,870 | NA | NA |
| 15997 | 16417 | FFMLT 2004-FFA | $0 | $0 | $0 | $0 |
| 15998 | 16419 | ARC 2004-1 | $0 | $41,910 | $0 | $2,206 |
| 16351 | 16364 | SARM 2005-6XS | $0 | $2,970,665 | $0 | $156,351 |
| 16352 | 16365 | SARM 2005-8XS | $0 | $3,030,689 | $0 | $159,510 |
| 16378 | 16361 | SASCO 2005-RM1 | $0 | $0 | $0 | $0 |
| 16380 | 16359 | SASCO 2005-3 | $0 | $4,817,015 | $0 | $253,527 |
| 16381 | 16358 | SASCO 2004-21XS | $0 | $4,984,335 | $0 | $262,333 |
| 16383 | 16357 | SASCO 2004-13 | $0 | $5,473,109 | $0 | $288,058 |
| 16384 | 16356 | SASCO 2003-21 | $0 | $3,140,898 | $0 | $165,310 |
| 16385 | 16355 | SASCO 2003-16 | $0 | $2,000,705 | $0 | $105,300 |
| 16386 | 16354 | SASCO 2003-10 | $0 | $2,063,785 | $0 | $108,620 |
| 16388 | NA | SASCO 2003-4[2] | $0 | NA | NA | NA |
| 16390 | 16420 | SASCO 2002-6 | $0 | $0 | $0 | $0 |
| 16391 | 16421 | SASCO 2002-15 | $0 | $0 | $0 | $0 |
| 16392 | 16422 | SAIL 2005-2 | $0 | $1,426,415 | $0 | $75,074 |
| 16393 | 16423 | SAIL 2004-BNC2 | $0 | $0 | $0 | $0 |
| 16394 | 16424 | SAIL 2004-BNC1 | $0 | $0 | $0 | $0 |
| 16395 | 16426 | SAIL 2004-10 | $0 | $1,682,388 | $0 | $88,547 |
| 16396 | 16427 | SAIL 2004-9 | $0 | $378,014 | $0 | $19,895 |
| 16397 | 16428 | SAIL 2004-8 | $0 | $2,348,724 | $0 | $123,617 |
| 16398 | 16376 | SAIL 2004-7 | $0 | $275,118 | $0 | $14,480 |
| 16399 | 16375 | SAIL 2004-6 | $0 | $557,694 | $0 | $29,352 |

| | | U.S. Bank, N.A. | | | | |
|---|---|---|---|---|---|---|
| **LBHI Claim Number** | **SASCO Claim Number** | **RMBS Security** | **LBHI Asserted Claim Amount** | **LBHI Estimated Reserve Amount** | **SASCO Asserted Claim Amount** | **SASCO Estimated Reserve Amount** |
| 19289 | NA | GSMC 2007-GG10 | $0 | $75,896,350 | NA | NA |
| 20495 | 20494 | Fremont Home Loan 2004-3 | $10,131,854 | $0 | $10,138,738 | $0 |
| 20497 | 20496 | HLTV 2004-1 | $311,972 | $0 | $321,350 | $0 |
| 20500 | 20501 | SLH 1989-1 | $40,853 | $0 | $50,231 | $0 |
| 20502 | 20503 | TBW Mortgage Backed 2006-3 | $413,409,203 | $0 | $413,418,581 | $0 |
| 20505 | 20504 | Thornburg Mortgage 2005-3 | $1,742,758,407 | $12,204,760 | $1,742,764,285 | $642,356 |
| 20507 | 20506 | Thornburg Mortgage 2006-4 | $1,072,249,503 | $0 | $1,072,255,381 | $0 |
| 20508 | NA | Lehman Home Equity Loan 1998-2 | $3,298,104 | $0 | NA | NA |
| 20510 | 20596 | RLT 2008-2[3] | $0 | $110,842,145 | $0 | $5,833,797 |
| 20510 | 20596 | RLT 2008-AH1[3] | - | $7,036,662 | - | $370,351 |
| 20512 | 20511 | SAIL 2003-BC11 | $0 | $76,828 | $0 | $4,044 |
| 20512 | 20511 | SAIL 2003-BC2 | - | $135,761 | - | $7,145 |
| 20512 | 20511 | SAIL 2003-BC6 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2003-BC7 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2003-BC8 | - | $138,098 | - | $7,268 |
| 20512 | 20511 | SAIL 2003-BC9 | - | $182,500 | - | $9,605 |
| 20512 | 20511 | SAIL 2005-10 | - | $621,218 | - | $32,696 |
| 20512 | 20511 | SAIL 2005-3 | - | $802,324 | - | $42,228 |
| 20512 | 20511 | SAIL 2005-4 | - | $4,245,550 | - | $223,450 |
| 20512 | 20511 | SAIL 2005-5 | - | $3,313,502 | - | $174,395 |
| 20512 | 20511 | SAIL 2005-6 | - | $3,048,366 | - | $160,440 |
| 20512 | 20511 | SAIL 2005-7 | - | $3,067,511 | - | $161,448 |
| 20512 | 20511 | SAIL 2005-8 | - | $4,639,530 | - | $244,186 |
| 20512 | 20511 | SAIL 2005-9 | - | $1,365,775 | - | $71,883 |
| 20512 | 20511 | SAIL 2005-HE1 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2005-HE2 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2005-HE3 | - | $2,754,108 | - | $144,953 |
| 20512 | 20511 | SAIL 2006-1 | - | $728,671 | - | $38,351 |
| 20512 | 20511 | SAIL 2006-2 | - | $2,359,227 | - | $124,170 |
| 20512 | 20511 | SAIL 2006-3 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2006-4 | - | $841,183 | - | $44,273 |
| 20512 | 20511 | SAIL 2006-BNC1 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2006-BNC3 | - | $0 | - | $0 |
| 20512 | 20511 | SAIL 2005-11 | - | $191,392 | - | $10,073 |
| 20512 | 20511 | SAIL 2006-BNC2 | - | $0 | - | $0 |
| 20514 | 20513 | SARM 2005-16XS | $0 | $0 | $0 | $0 |
| 20514 | 20513 | SARM 2005-19XS | - | $0 | - | $0 |

| | | U.S. Bank, N.A. | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 20514 | 20513 | SARM 2005-9 | - | $0 | - | $0 |
| 20514 | 20513 | SARM 2006-10 | - | $2,849,626 | - | $149,980 |
| 20514 | 20513 | SARM 2006-11 | - | $7,352,103 | - | $386,953 |
| 20514 | 20513 | SARM 2007-10 | - | $8,088,242 | - | $425,697 |
| 20514 | 20513 | SARM 2008-2 | - | $4,995,942 | - | $262,944 |
| 20514 | 20513 | SARM 2005-22 | - | $16,061,970 | - | $845,367 |
| 20514 | 20513 | SARM 2005-23 | - | $14,168,197 | - | $745,695 |
| 20514 | 20513 | SARM 2006-1 | - | $19,908,483 | - | $1,047,815 |
| 20514 | 20513 | SARM 2006-12 | - | $9,087,966 | - | $478,314 |
| 20514 | 20513 | SARM 2006-2 | - | $21,463,472 | - | $1,129,656 |
| 20514 | 20513 | SARM 2006-3 | - | $10,790,082 | - | $567,899 |
| 20514 | 20513 | SARM 2006-4 | - | $18,383,427 | - | $967,549 |
| 20514 | 20513 | SARM 2006-5 | - | $11,784,909 | - | $620,258 |
| 20514 | 20513 | SARM 2006-6 | - | $9,016,696 | - | $474,563 |
| 20514 | 20513 | SARM 2006-7 | - | $6,634,206 | - | $349,169 |
| 20514 | 20513 | SARM 2006-8 | - | $2,716,837 | - | $142,991 |
| 20514 | 20513 | SARM 2006-9 | - | $4,763,225 | - | $250,696 |
| 20514 | 20513 | SARM 2007-8 | - | $22,292,721 | - | $1,173,301 |
| 20516 | 20515 | SASCO 1996-4 | $0 | $0 | $0 | $0 |
| 20516 | 20515 | SASCO 2006-OW1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 1997-2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 1998-2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 1998-3 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 1999-ALS3 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 1999-RF1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2001-1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2001-16H | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2001-19 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2001-2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2001-SB1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2002-17 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2003-25XS | - | $618,760 | - | $32,566 |
| 20516 | 20515 | SASCO 2003-32 | - | $5,593,947 | - | $294,418 |
| 20516 | 20515 | SASCO 2003-39EX | - | $952,409 | - | $50,127 |
| 20516 | 20515 | SASCO 2003-4 | - | $1,123,451 | - | $59,129 |
| 20516 | 20515 | SASCO 2003-8 | - | $2,002,057 | - | $105,371 |
| 20516 | 20515 | SASCO 2003-AL1 | - | $2,010,221 | - | $105,801 |
| 20516 | 20515 | SASCO 2003-AL2 | - | $2,381,683 | - | $125,352 |

| U.S. Bank, N.A. | | | | | |
|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 20516 | 20515 | SASCO 2003-GEL1 | - | $352,164 | - | $18,535 |
| 20516 | 20515 | SASCO 2004-10 | - | $5,386,295 | - | $283,489 |
| 20516 | 20515 | SASCO 2004-17XS | - | $1,972,916 | - | $103,838 |
| 20516 | 20515 | SASCO 2004-2AC | - | $5,385,601 | - | $283,453 |
| 20516 | 20515 | SASCO 2004-3 | - | $4,632,013 | - | $243,790 |
| 20516 | 20515 | SASCO 2004-GEL1 | - | $408,854 | - | $21,519 |
| 20516 | 20515 | SASCO 2004-S2 | - | $1,557,794 | - | $81,989 |
| 20516 | 20515 | SASCO 2004-S3 | - | $1,735,215 | - | $91,327 |
| 20516 | 20515 | SASCO 2004-S4 | - | $2,472,296 | - | $130,121 |
| 20516 | 20515 | SASCO 2005-AR1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2005-GEL1 | - | $18,261 | - | $961 |
| 20516 | 20515 | SASCO 2005-GEL2 | - | $193,915 | - | $10,206 |
| 20516 | 20515 | SASCO 2005-GEL3 | - | $446,370 | - | $23,493 |
| 20516 | 20515 | SASCO 2005-GEL4 | - | $1,458,273 | - | $76,751 |
| 20516 | 20515 | SASCO 2005-RF2 | - | $20,468 | - | $1,077 |
| 20516 | 20515 | SASCO 2005-RF3 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2005-RF4 | - | $36,052 | - | $1,897 |
| 20516 | 20515 | SASCO 2005-RF5 | - | $66,942 | - | $3,523 |
| 20516 | 20515 | SASCO 2005-RF6 | - | $8,470 | - | $446 |
| 20516 | 20515 | SASCO 2005-RF7 | - | $25,317 | - | $1,332 |
| 20516 | 20515 | SASCO 2005-S5 | - | $9,597,983 | - | $505,157 |
| 20516 | 20515 | SASCO 2005-WF2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2005-WF3 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2005-WF4 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-AM1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-BC1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-BC2 | - | $959,470 | - | $50,498 |
| 20516 | 20515 | SASCO 2006-BC3 | - | $9,321,508 | - | $490,606 |
| 20516 | 20515 | SASCO 2006-BC4 | - | $4,011,551 | - | $211,134 |
| 20516 | 20515 | SASCO 2006-BC5 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-BC6 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-EQ1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-GEL2 | - | $373,415 | - | $19,653 |
| 20516 | 20515 | SASCO 2006-GEL3 | - | $183,310 | - | $9,648 |
| 20516 | 20515 | SASCO 2006-GEL4 | - | $947,454 | - | $49,866 |
| 20516 | 20515 | SASCO 2006-NC1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-RF2 | - | $39,547 | - | $2,081 |
| 20516 | 20515 | SASCO 2006-RF3 | - | $446,138 | - | $23,481 |

| | | U.S. Bank, N.A. | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 20516 | 20515 | SASCO 2006-RF4 | - | $73,812 | - | $3,885 |
| 20516 | 20515 | SASCO 2006-W1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-WF1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-WF2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-WF3 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2007-BC3 | - | $719,388 | - | $37,863 |
| 20516 | 20515 | SASCO 2007-BC4 | - | $735,379 | - | $38,704 |
| 20516 | 20515 | SASCO 2007-BNC1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2007-EQ1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2007-GEL1 | - | $325,819 | - | $17,148 |
| 20516 | 20515 | SASCO 2007-GEL2 | - | $727,842 | - | $38,307 |
| 20516 | 20515 | SASCO 2007-RF1 | - | $25,278 | - | $1,330 |
| 20516 | 20515 | SASCO 2007-RF2 | - | $12,973 | - | $683 |
| 20516 | 20515 | SASCO 2007-TC1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2007-WF1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2007-WF2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO FHA/VA 1998-RF2 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO FHA/VA 1998-RF3 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO FHA/VA 1998-RF4 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 1998-6 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2002-10H | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2002-12 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2002-NP1[3] | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2003-20 | - | $2,220,285 | - | $116,857 |
| 20516 | 20515 | SASCO 2003-NP1[3] | - | $283,330 | - | $14,912 |
| 20516 | 20515 | SASCO 2003-NP2[3] | - | $325,087 | - | $17,110 |
| 20516 | 20515 | SASCO 2003-NP3[3] | - | $704,213 | - | $37,064 |
| 20516 | 20515 | SASCO 2003-RNP2 | - | $1,105,808 | - | $58,200 |
| 20516 | 20515 | SASCO 2004-6XS | - | $1,716,275 | - | $90,330 |
| 20516 | 20515 | SASCO 2004-GEL2 | - | $368,209 | - | $19,379 |
| 20516 | 20515 | SASCO 2004-GEL3 | - | $273,176 | - | $14,378 |
| 20516 | 20515 | SASCO 2004-NP1[3] | - | $822,159 | - | $43,272 |
| 20516 | 20515 | SASCO 2004-NP2[3] | - | $745,449 | - | $39,234 |
| 20516 | 20515 | SASCO 2005-7XS | - | $5,536,022 | - | $291,370 |
| 20516 | 20515 | SASCO 2005-OPT1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2005-RF1 | - | $100,922 | - | $5,312 |

| | | U.S. Bank, N.A. | | | | |
|---|---|---|---|---|---|---|
| **LBHI Claim Number** | **SASCO Claim Number** | **RMBS Security** | **LBHI Asserted Claim Amount** | **LBHI Estimated Reserve Amount** | **SASCO Asserted Claim Amount** | **SASCO Estimated Reserve Amount** |
| 20516 | 20515 | SASCO 2005-RMS1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2005-S1 | - | $3,746,783 | - | $197,199 |
| 20516 | 20515 | SASCO 2005-S2 | - | $4,502,296 | - | $236,963 |
| 20516 | 20515 | SASCO 2005-S3 | - | $5,089,047 | - | $267,845 |
| 20516 | 20515 | SASCO 2005-S4 | - | $1,214,345 | - | $63,913 |
| 20516 | 20515 | SASCO 2005-SC1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO 2006-GEL1 | - | $657,312 | - | $34,595 |
| 20516 | 20515 | SASCO 2006-S1 | - | $24,768,752 | - | $1,303,619 |
| 20516 | 20515 | SASCO 2006-Z | - | $151,619 | - | $7,980 |
| 20516 | 20515 | SASCO 2007-BC2 | - | $2,732,553 | - | $143,819 |
| 20516 | 20515 | SASCO 2007-RNP1 | - | $0 | - | $0 |
| 20516 | 20515 | SASCO FHA/VA 1998-RF1 | - | $0 | - | $0 |
| 20517 | 20518 | AAMES 2003-1 | $48,426,057 | $1,220,570 | $48,426,057 | $64,241 |
| 20519 | 20493 | Finance America 2004-1 | $70,874,032 | $0 | $70,883,410 | $0 |
| 20533 | 20532 | BNC 2006-1 | $0 | $0 | $0 | $0 |
| 20533 | 20532 | BNC 2006-2 | - | $0 | - | $0 |
| 20533 | 20532 | BNC 2007-1 | - | $0 | - | $0 |
| 20533 | 20532 | BNC 2007-2 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2005-FF10 | $1,000 | $0 | $0 | $0 |
| 20585 | 20584 | FFMLT 2005-FF9 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2006-FF10 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2006-FF12 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2006-FF14 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2006-FF2 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2005-FF3 | - | $0 | - | $0 |
| 20585 | 20584 | FFMLT 2005-FFH2 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2006-AR4 | $0 | $0 | $0 | $0 |
| 20587 | 20586 | Greenpoint 2006-AR5 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2006-AR7 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2006-AR8 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2006-AR6 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2006-HE1 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2007-AR1 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2007-AR2 | - | $0 | - | $0 |
| 20587 | 20586 | Greenpoint 2007-AR3 | - | $0 | - | $0 |
| 20591 | 20590 | LABS MH 2001-B | $0 | $0 | $0 | $0 |
| 20591 | 20590 | LABS 2002-A | - | $0 | - | $0 |
| 20591 | 20590 | LABS 2004-2 | - | $0 | - | $0 |

| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
|---|---|---|---|---|---|---|
| | | **U.S. Bank, N.A.** | | | | |
| 20593 | 20592 | LMT 2005-1 | $0 | $18,778,930 | $0 | $988,365 |
| 20593 | 20592 | LMT 2007-3 | - | $1,076,471 | - | $56,656 |
| 20593 | 20592 | LMT 2005-2 | - | $26,388,415 | - | $1,388,864 |
| 20593 | 20592 | LMT 2006-2 | - | $2,715,117 | - | $142,901 |
| 20593 | 20592 | LMT 2006-8 | - | $15,367,267 | - | $808,804 |
| 20593 | 20592 | LMT 2007-10 | - | $6,706,482 | - | $352,973 |
| 20593 | 20592 | LMT 2007-2 | - | $5,749,981 | - | $302,631 |
| 20593 | 20592 | LMT 2007-6 | - | $5,909,928 | - | $311,049 |
| 20593 | 20592 | LMT 2007-7 | - | $7,538,051 | - | $396,740 |
| 20593 | 20592 | LMT 2007-8 | - | $17,200,404 | - | $905,284 |
| 20593 | 20592 | LMT 2008-1 | - | $1,233,858 | - | $64,940 |
| 20595 | 20594 | LXS 2005-2 | $0 | $10,007,323 | $0 | $526,701 |
| 20595 | 20594 | LXS 2005-5N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2005-7N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2005-9N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-12N | - | $3,056,042 | - | $160,844 |
| 20595 | 20594 | LXS 2006-16N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-18N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-2N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-3 | - | $18,440,172 | - | $970,535 |
| 20595 | 20594 | LXS 2006-4N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-GP2 | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-GP3 | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-GP4 | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2007-15N | - | $12,342,255 | - | $649,592 |
| 20595 | 20594 | LXS 2007-16N | - | $17,884,645 | - | $941,297 |
| 20595 | 20594 | LXS 2007-17H | - | $39,473,599 | - | $2,077,558 |
| 20595 | 20594 | LXS 2007-18N | - | $11,065,539 | - | $582,397 |
| 20595 | 20594 | LXS 2007-20N | - | $9,430,316 | - | $496,332 |
| 20595 | 20594 | LXS 2007-2N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-10N | - | $7,206,205 | - | $379,274 |
| 20595 | 20594 | LXS 2006-14N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2006-8 | - | $19,758,369 | - | $1,039,914 |
| 20595 | 20594 | LXS 2006-GP1 | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2007-10H | - | $47,980,792 | - | $2,525,305 |
| 20595 | 20594 | LXS 2007-12N | - | $17,592,676 | - | $925,930 |
| 20595 | 20594 | LXS 2007-4N | - | $0 | - | $0 |
| 20595 | 20594 | LXS 2007-7N | - | $8,045,980 | - | $423,473 |

| U.S. Bank, N.A. | | | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 20595 | 20594 | LXS 2007-9 | - | $11,150,321 | - | $586,859 |
| 24349 | 24582 | LXS 2007-5H | $0 | $76,193,086 | $0 | $4,010,162 |
| 66613 | 16415 | LXS 2006-11 | $0 | $12,523,947 | $0 | $659,155 |
| 66614 | 16360 | SASCO 2005-NC1 | $0 | $0 | $0 | $0 |
| NA | 25654 | WFHET 2004-1 | NA | NA | $0 | $2,847,353 |
| NA | 16425 | SAIL 2004-11 | NA | NA | $0 | $1,231,313 |
| NA | 16362 | SASCO 2005-WF1 | NA | NA | $0 | $0 |
| NA | 16363 | SASCO 2006-RF1 | NA | NA | $0 | $5,007 |

**TOTALS:**     **$3,361,500,984**     **$1,116,683,136**     **$3,358,258,035**     **$58,408,959**

N.B.  Securitizations issued prior to December 31, 2002 have a Lehman liability of $0 and a SASCO liability of $0 due to the New York Statute of Limitations

[1]Duplicate claim filed by two parties, LMT 2006-2 is accounted for in POC 20593, 20592

[2]Duplicate claim filed by two parties, SASCO 2003-4 is accounted for in POC 20516

[3]For some Scratch and Dent/Non-Performing deals, the LBHI liability factor was kept consistent even though the representation exposure is probably lower given the limited representations and warranties in these deals

| | | Wells Fargo Bank, N.A., As Trustee | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 24747 | 24749 | SARM 2007-1 | $0 | $14,284,981 | $0 | $751,841 |
| 24750 | 24751 | SARM 2004-10 | $0 | $14,204,701 | $0 | $747,616 |
| 24753 | 24755 | LMT 2008-6 | $0 | $3,199,860 | $0 | $168,414 |
| 24754 | 24768 | LMT 2007-1 | $216,500 | $10,114,701 | $0 | $532,353 |
| 24769 | 24774 | FFMLT 2003-FFB | $0 | $0 | $0 | $0 |
| 24773 | 24772 | SASCO 2001-11 | $0 | $0 | $0 | $0 |
| 24775 | 24748 | FFMLT 2006-FFB | $0 | $0 | $0 | $0 |
| 24776 | 24832 | FFMLT 2006-FFA | $0 | $0 | $0 | $0 |
| 24778 | 24779 | SASCO 2007-OSI | $297,347 | $6,319,980 | $0 | $332,631 |
| 24780 | 24791 | SASCO 2007-MLN1 | $537,468 | $0 | $0 | $0 |
| 24782 | 24781 | SASCO 2003-26A | $0 | $4,769,811 | $0 | $251,043 |
| 24784 | 24783 | SASCO 2003-34A | $0 | $5,757,289 | $0 | $303,015 |
| 24786 | 24785 | SASCO 2003-6A | $0 | $2,088,943 | $0 | $109,944 |
| 24788 | 24787 | SASCO 2003-S2 | $107,944 | $635,263 | $0 | $33,435 |
| 24790 | 24789 | SASCO 2005-NC2 | $0 | $0 | $0 | $0 |
| 24792 | 24793 | SASCO 2003-17A | $0 | $2,677,215 | $0 | $140,906 |
| 24794 | 24848 | SASCO 2001-21A | $0 | $0 | $0 | $0 |
| 24796 | 24795 | SASCO 2002-5A | $0 | $0 | $0 | $0 |
| 24798 | 24797 | SASCO 2002-AL1 | $0 | $0 | $0 | $0 |
| 24800 | 24799 | SASCO 2002-HF2 | $0 | $0 | $0 | $0 |
| 24802 | 24801 | SASCO 2003-15A | $0 | $1,781,805 | $0 | $93,779 |
| 24803 | 24777 | SASCO 2007-SC1[7] | $0 | TERMINATED | $0 | TERMINATED |
| 24805 | 24806 | SARM 2007-3 | $0 | $10,234,744 | $0 | $538,671 |
| 24807 | 24808 | SARM 2007-4 | $0 | $28,053,725 | $0 | $1,476,512 |
| 24810 | 24811 | SARM 2004-5 | $254,207 | $10,282,642 | $0 | $541,192 |
| 24812 | 32168 | SARM 2004-18 | $0 | $11,575,709 | $0 | $609,248 |
| 24814 | 24815 | SARM 2004-16 | $0 | $18,096,802 | $0 | $952,463 |
| 24818 | 24816 | SARM 2005-17 | $0 | $10,293,357 | $0 | $541,756 |
| 24819 | 24820 | SARM 2005-15 | $0 | $3,290,886 | $0 | $173,205 |
| 24821 | 24822 | SARM 2005-14 | $0 | $0 | $0 | $0 |
| 24823 | 24824 | SARM 2005-12 | $0 | $7,914,299 | $0 | $416,542 |
| 24825 | 24809 | SARM 2005-11 | $0 | $6,130,789 | $0 | $322,673 |
| 24826 | 24817 | SARM 2007-11 | $300,454 | $12,541,465 | $0 | $660,077 |
| 24828 | 24827 | SAIL 2003-BC3 | $0 | $65,644 | $0 | $3,455 |
| 24829 | 24830 | SARM 2008-1 | $0 | $0 | $0 | $0 |
| 24831 | 24847 | SARM 2007-2 | $0 | $19,168,022 | $0 | $1,008,843 |

| | | Wells Fargo Bank, N.A., As Trustee | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 24833 | 24834 | FFMLT 2006-FF17 | $0 | $0 | $0 | $0 |
| 24835 | 24836 | FFMLT 2006-FF15 | $0 | $0 | $0 | $0 |
| 24837 | 24838 | FFMLT 2004-FF7 | $0 | $0 | $0 | $0 |
| 24839 | 24840 | Encore 2003-1 | $0 | $0 | $0 | $0 |
| 24842 | 24843 | ARC 2002-BC6 | $0 | $0 | $0 | $0 |
| 24844 | 24845 | ARC 2002-BC5 | $0 | $0 | $0 | $0 |
| 32118 | 33102 | ARC 2001-BC1 | $0 | $0 | $0 | $0 |
| 32119 | NA | SAIL 2003-BC3[1] | $0 | NA | NA | NA |
| 32122 | 32121 | SAIL 2003-BC12 | $0 | $205,907 | $0 | $10,837 |
| 32124 | 32123 | SAIL 2003-BC4 | $0 | $50,360 | $0 | $2,651 |
| 32126 | 32125 | LMT 2008-2 | $0 | $5,406,715 | $0 | $284,564 |
| 32153 | 33097 | LMT 2007-4 | $518,000 | $10,933,881 | $0 | $575,467 |
| 32154 | 33100 | SASCO 2006-OPT1 | $0 | $0 | $0 | $0 |
| 32156 | 32155 | SASCO 2005-S6 | $0 | $13,251,533 | $0 | $697,449 |
| 32157 | 33101 | ARC 2002-BC8 | $0 | $0 | $0 | $0 |
| 32159 | NA | LABS 2004-2[2] | $0 | NA | NA | NA |
| 32161 | 32160 | LABS 2007-1 | $0 | $0 | $0 | $0 |
| 32163 | 32162 | LMT 2006-9 | $239,789 | $8,680,006 | $0 | $456,842 |
| 32165 | 32164 | LMT 2008-3 | $0 | $2,144,866 | $0 | $112,888 |
| 32167 | 32166 | LMT 2008-4 | $0 | $1,967,625 | $0 | $103,559 |
| 32169 | NA | SARM 2004-20 | $422,410 | $11,300,557 | NA | NA |
| 32170 | 33096 | SARM 2005-20 | $0 | $10,009,060 | $0 | $526,793 |
| 33066 | 33067 | FFMLT 2002-FF3 | $0 | $0 | $0 | $0 |
| 33070 | 33071 | SARM 2004-9XS | $0 | $892,239 | $0 | $46,960 |
| 33073 | 33072 | SASCO 2001-6 | $0 | $0 | $0 | $0 |
| 33075 | 33076 | FFMLT 2003-FF3 | $0 | $0 | $0 | $0 |
| 33077 | 33078 | SASCO 2002-BC1 | $0 | $0 | $0 | $0 |
| 33079 | NA | CSFB 2005-CND2[7] | $0 | TERMINATED | NA | TERMINATED |
| 33081 | 33080 | SARM 2007-6 | $0 | $22,373,984 | $0 | $1,177,578 |
| 33082 | 33074 | SASCO 2002-HF1 | $0 | $0 | $0 | $0 |
| 33093 | NA | ARC 2002-BC5[3] | $0 | NA | NA | NA |
| 33099 | 33098 | SASCO 2005-S7 | $1,446,010 | $18,394,569 | $0 | $968,135 |
| 33103 | 32127 | LMT 2007-9 | $0 | $4,141,492 | $0 | $217,973 |
| 33106 | 33105 | SASCO 2007-BC1 | $109,687 | $4,091,054 | $0 | $215,319 |
| 33108 | 33109 | ARC 2002-BC9 | $0 | $0 | $0 | $0 |

| Wells Fargo Bank, N.A., As Trustee | | | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 33111 | 33095 | BNC 2007-4 | $7,188,850 | $0 | $0 | $0 |
| 33153 | 33255 | LMT 2007-5 | $241,300 | $7,728,434 | $0 | $406,760 |
| 34319 | NA | LMT 2007-5[4] | $2,573,980 | NA | NA | NA |
| NA | 33086 | Acredited Mortgage Loan Trust 2002-BC1 TAGGS[5] | NA | NA | $0 | NA |
| NA | 33086 | LB-UBS 1999-C2[5] | NA | NA | - | NA |
| NA | 24813 | SARM 2004-18[6] | NA | NA | $0 | NA |
| NA | 33092 | ARC 2002-BC10 | NA | NA | $0 | $0 |
| NA | 24752 | Resmae 2007-1[7] | NA | NA | $0 | TERMINATED |
| NA | 32120 | SASCO 2002-RM1 | NA | $0 | $0 | $0 |
| | | TOTALS: | $14,453,946 | $325,054,916 | $0 | $16,513,387 |

N.B.  Securitizations issued prior to December 31, 2002 have a Lehman liability of $0 and a SASCO liability of $0 due to the New York Statute of Limitations

[1]Duplicate claims were filed by one party, SAIL 2003-BC3 is accounted for in POC 24828

[2]Duplicate claims were filed by two parties, LABS 2004-2 is accounted for in POC 20591

[3]Duplicate claims were filed by one party, ARC 2002-BC5 is accounted for in POC 24844

[4]Duplicate claims were filed by one party, LMT 2007-5 is accounted for in POC 33153

[5]Questionable SASCO liability

[6]Duplicate claims were filed by one party, SARM 2004-18 is accounted for in POC 32168

[7]This deal does not have a UPB or Cumulative Loss as of 9/25/2011 as the deal has been terminated and collapsed thus the deal is no longer active

| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
|---|---|---|---|---|---|---|
| | | | **Wilmington Trust Company, As Trustee** | | | |
| 16382 | NA | SASCO 2004-20[3] | $0 | NA | NA | NA |
| 20420 | 21103 | SASCO 2005-4XS | $0 | $4,183,250 | $0 | $220,171 |
| 21105 | 21104 | SASCO 2005-14 | $0 | $7,427,173 | $0 | $390,904 |
| 21107 | 21106 | SASCO 2005-6 | $0 | $4,469,467 | $0 | $235,235 |
| 21109 | 21108 | SASCO 2004-20 | $0 | $9,030,575 | $0 | $475,293 |
| 21111 | 21110 | SASCO 2004-19XS | $0 | $2,512,871 | $0 | $132,256 |
| 21112 | 21113 | SASCO 2004-11XS | $0 | $2,813,672 | $0 | $148,088 |
| 21114 | 21115 | SASCO 2004-9XS | $0 | $3,412,576 | $0 | $179,609 |
| 21116 | 21117 | SASCO 2004-7 | $0 | $5,416,756 | $0 | $285,092 |
| 21118 | 21119 | SAIL 2005-1 | $0 | $2,051,258 | $0 | $107,961 |
| 21120 | 21121 | LXS 2007-14H | $4,779,486 | $38,404,954 | $0 | $2,021,313 |
| 21122 | 21123 | LXS 2007-6 | $405,183 | $59,137,615 | $0 | $3,112,506 |
| 21124 | 21125 | LXS 2007-3 | $16,997,066 | $37,806,447 | $0 | $1,989,813 |
| 21126 | 21127 | LXS 2007-1 | $5,020,241 | $23,229,420 | $0 | $1,222,601 |
| 21129 | 66525 | LXS 2006-20 | $8,367,512 | $18,897,821 | $0 | $994,622 |
| 21130 | 21131 | LXS 2006-19 | $4,520,740 | $21,445,545 | $0 | $1,128,713 |
| 21132 | 21133 | LMT 2005-3 | $0 | $11,677,152 | $0 | $614,587 |
| 21134 | NA | LABS 2003-1 | $0 | $2,052,829 | NA | NA |
| 21135 | 21136 | Contingent Claim[4] | $0 | NA | $0 | NA |
| 22773 | 22766 | SASCO 2002-13 | $4,162,459,849 | $0 | $4,162,459,849 | $0 |
| 22773 | 22766 | SASCO 2002-22H | - | $0 | - | $0 |
| 22773 | 22766 | SASCO 2003-12XS | - | $153,009 | - | $8,053 |
| 22773 | 22766 | SASCO 2003-14 | - | $3,071,910 | - | $161,679 |
| 22773 | 22766 | SASCO 2003-18XS | - | $513,377 | - | $27,020 |
| 22773 | 22766 | SASCO 2003-23H | - | $0 | - | $0 |
| 22773 | 22766 | SASCO 2003-28XS | - | $842,652 | - | $44,350 |
| 22773 | 22766 | SASCO 2003-29 | - | $7,783,065 | - | $409,635 |
| 22773 | 22766 | SASCO 2003-30 | - | $6,432,324 | - | $338,543 |
| 22773 | 22766 | SASCO 2003-33H | - | $0 | - | $0 |
| 22773 | 22766 | SASCO 2003-35 | - | $5,847,705 | - | $307,774 |
| 22773 | 22766 | SASCO 2003-36XS | - | $589,062 | - | $31,003 |
| 22773 | 22766 | SASCO 2003-38 | - | $2,375,357 | - | $125,019 |
| 22773 | 22766 | SASCO 2003-3XS | - | $259,163 | - | $13,640 |
| 22773 | 22766 | SASCO 2003-7H | - | $0 | - | $0 |
| 22773 | 22766 | SASCO 2004-12H | - | $0 | - | $0 |
| 22773 | 22766 | SASCO 2004-15 | - | $3,586,568 | - | $188,767 |
| 22773 | 22766 | SASCO 2004-16XS | - | $2,050,716 | - | $107,932 |
| 22773 | 22766 | SASCO 2004-22 | - | $4,526,510 | - | $238,237 |
| 22773 | 22766 | SASCO 2004-4XS | - | $2,669,912 | - | $140,522 |
| 22773 | 22766 | SASCO 2004-5H | - | $0 | - | $0 |
| 22773 | 22766 | SASCO 2005-1 | - | $16,553,920 | - | $871,259 |

| Wilmington Trust Company, As Trustee | | | | | | |
|---|---|---|---|---|---|---|
| LBHI Claim Number | SASCO Claim Number | RMBS Security | LBHI Asserted Claim Amount | LBHI Estimated Reserve Amount | SASCO Asserted Claim Amount | SASCO Estimated Reserve Amount |
| 22773 | 22766 | SASCO 2005-2XS | - | $4,872,390 | - | $256,442 |
| 22773 | 22766 | SASCO 2005-5 | - | $14,221,060 | - | $748,477 |
| 22773 | 22766 | SASCO 2005-11H | - | $19,697 | - | $1,037 |
| | | TOTALS: | $4,202,550,076 | $330,337,776 | $4,162,459,849 | $17,278,155 |

N.B.  Securitizations issued prior to December 31, 2002 have a Lehman liability of $0 and a SASCO liability of $0 due to the New York Statute of Limitations

[1]Duplicate claims were filed by two parties, SASCO 2004-20 is accounted for in POC 21109

[2]Wilmington Trust Company filed two contingent claims for unknown deals at the time of filing

**Exhibit B**

**Valuation Methodology**

Below is a description of the methodology utilized by the Debtors to calculate the Estimated Reserve Amounts. The below description includes certain assumptions that result in reaching the Debtors' high end estimates (the "High Estimate") of the Claim amounts:

Step 1: In order to calculate the Estimated Reserve Amounts for each Claim, the Debtors began with the aggregate unpaid principal balance of the loans held by each securitization trust as of September 25, 2011 (the "UPB"). This amount represents the maximum potential liability of the Debtors. The Debtors obtained this information from various sources, including Intex, which is a subscription based securitization data source. If Intex did not contain the UPB for a particular deal, the Debtors then looked to the monthly trustee remittance statements.

Step 2: The Debtors multiplied the UPB for each securitization trust by 45% which, for the High Estimate, represents the assumption regarding the percentage of loans that have or will incur a default.

Step 3: The result from Step 2 is multiplied by the "severity factor" which takes into account the estimate of losses on the loans that are currently delinquent or will go delinquent in the future. This step is necessary because a default on a loan does not mean that the securitization issuer will not recover any amounts from a sale of a defaulted loan, a foreclosure or other remedial action. The severity factor that is used for the High Estimate is a 55% loss rate.

Step 4: The cumulative losses that have already been incurred for the loans in each securitization are added to the result of Step 3. This adds the current and existing losses to

the amount of future losses estimated by this methodology. The Debtors obtained the cumulative

losses for each securitization trust from Intex or the monthly trust remittance reports.

Step 5: The result of Step 4 is multiplied by the percentage of the UPB for each

securitization trust that relates to Lehman-Originated Loans and Bank-Originated Loans. This

calculation is necessary because as discussed above, the trusts should be seeking recourse against

the originator or initial seller, and not Debtors, for the Transferor Originated Loans. Therefore

this portion of the calculation excludes from the estimated liability any losses that relate to the

Transferor Originated Loans. The Debtors were unable to identify the number of Lehman

Originated Loans and Bank Originated Loans for some of the securitizations subject to the

Claims. For the purposes of these calculations, an estimate of 30% was used. This represents a

close approximation to the average of Lehman-Originated Loans and Bank-Originated Loans in

SASCO-issued securitizations.

Step 6: Not all defaults and losses are the result of breaches of representations

and warranties. In many cases when a default occurs with respect to a loan there are not

breaches of representations and warranties. To account for such scenario, the calculation of the

High Rate assumes that 35% of the losses are caused by a breach of a representation or warranty.

Therefore the result of Step 5 is multiplied by 35%.

Step 7: Under the Governing Agreements, the elements required for repurchase

and/or indemnification are that such a breach was material, that the trustee provided notice of the

breach to the Debtors, that the trust suffered damages as a result of the breach, and that the trust

could seek recourse against LBHI. *See* Trust Agreement, § 2.04. These methodologies assume

that following the identification of a breach of a representation or warranty, the rate of breached

loans that are "validated," meaning they meet every element required for repurchase and/or

indemnification under the Governing Agreements, is approximately 40% for the High Rate. Therefore, the result from Step 6 is multiplied by 40%. The result of Step 7 represents the High Rate, which the Debtors propose to use at the Estimated Reserve Amount for each Claim. The aggregate amount of the Estimated Reserve Amounts using the High Rate is approximately $2.4 billion. The Estimated Reserve Amounts for each Claim set forth on Exhibit A are based on the High End estimates.

As indicated, the above calculations take into account certain assumptions. The Debtors believe that such rates included in the High Rate are on the high-end of probable results and are thus conservative. Therefore, the Debtors also calculated the reserve amounts using lower rates, which may ultimately be closer to the ultimate default, severity, breach and validation rates. For the low-end of the Debtors' estimates of the range of potential liability for the Claims, the Debtors utilized a 25% default rate, 45% severity rate, 30% breach rate and 30% validation rate. The aggregate amount of the Estimated Reserve Amounts using the Low Rate is approximately $1.1 billion.

For securitizations issued prior to January 1, 2003, the Debtors do not believe LBHI or SASCO have any liability for breaches of representations and warranty.

LBHI and SASCO made separate and distinct different types of representations and warranties to the securitization issuers. LBHI typically made representations and warranties relating to the origination and quality of the loans, while SASCO typically made representations and warranties relating to the delivery of a complete loan file including any and all collateral documents (e.g., promissory notes, mortgages/deeds of trusts). It is significantly more likely that there would be breaches of the type of representations and warranties made by LBHI than of the type made by SASCO. If SASCO did breach representations regarding the delivery of

documents, typically, the breaches are cured with non-monetary remedies such as re-executing certain documents and/or providing affidavits, rather than paying monetary damages.   As discussed above, the Indenture Trustees generally filed a claim against both LBHI and SASCO relating to each securitization trust.

As a result, the Debtors' have allocated the estimates for reserve for the claim of each securitization trust as between LBHI and SASCO, with 95% allocated to LBHI and 5% to SASCO.   If a Claim for a particular securitization was filed only against LBHI and not SASCO, the Estimated Reserve Amount was allocated entirely to the Claim against LBHI.   Conversely, if a Claim for a particular securitization was filed only against SASCO and not LBHI, the Estimated Reserve Amount was allocated entirely to the Claim against SASCO.

**<u>Exhibit C</u>**


**<u>Redacted Example of Trust Agreement</u>**

evidencing the completeness of the Mortgage Files in its possession or control, with any exceptions noted thereto.

(e) Nothing in this Agreement shall be construed to constitute an assumption by the Trust Fund, the Trustee or the Certificateholders of any unsatisfied duty, claim or other liability on any Mortgage Loan or to any Mortgagor.

(f) Each of the parties hereto acknowledges that each Custodian shall perform the applicable review of the Mortgage Loans covered by its Custodial Agreement and deliver the respective certifications thereof as provided in this Section 2.02.

(g) Notwithstanding anything to the contrary contained herein, the parties hereto acknowledge that the functions of the Trustee with respect to the custody, acceptance, inspection and release of Mortgage Files, including but not limited to certain insurance policies and documents contemplated by this Agreement or the Servicing Agreement(s), and preparation and delivery of the certifications shall be performed by the Custodians pursuant to the terms and conditions of the Custodial Agreements.

(h) The Trustee, solely in its capacity as Trustee, is hereby authorized and directed by the Depositor to execute and deliver, concurrently with the execution of this Agreement, the Custodial Agreements and Servicing Agreements.

Section 2.03.  Representations and Warranties of the Depositor.

(a) The Depositor hereby represents and warrants to the Trustee, for the benefit of Certificateholders, and to the Master Servicer, as of the Closing Date or such other date as is specified, that:

(i)      the Depositor is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, to carry on its business as presently conducted, to enter into and perform its obligations under this Agreement, and to create the trust pursuant hereto;

(ii)      the execution and delivery by the Depositor of this Agreement have been duly authorized by all necessary corporate action on the part of the Depositor; neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Depositor or its properties or the certificate of incorporation or bylaws of the Depositor;

(iii)      the execution, delivery and performance by the Depositor of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

205365 LMT 2006-8
Trust Agreement

51

CONFIDENTIAL

(iv)    this Agreement has been duly executed and delivered by the Depositor and, assuming due authorization, execution and delivery by the Trustee and the Master Servicer, constitutes a valid and binding obligation of the Depositor enforceable against it in accordance with its terms except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law;

(v)    there are no actions, suits or proceedings pending or, to the knowledge of the Depositor, threatened or likely to be asserted against or affecting the Depositor, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by this Agreement or (B) with respect to any other matter which in the judgment of the Depositor will be determined adversely to the Depositor and will if determined adversely to the Depositor materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under this Agreement; and

(vi)    immediately prior to the transfer and assignment of the Mortgage Loans to the Trustee, the Depositor was the sole owner of record and holder of each Mortgage Loan, and the Depositor had good and marketable title thereto, and had full right to transfer and sell each Mortgage Loan to the Trustee free and clear, subject only to (1) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's Title Insurance Policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan, and (3) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement.

(b) The representations and warranties of each Transferor with respect to the related Mortgage Loans in the applicable Transfer Agreement, which have been assigned to the Trustee hereunder, were made as of the date specified in the applicable Transfer Agreement (or underlying agreement, if such Transfer Agreement is in the form of an assignment of a prior agreement).  To the extent that any fact, condition or event with respect to a Mortgage Loan constitutes a breach of both (i) a representation or warranty of the applicable Transferor under the applicable Transfer Agreement and (ii) a representation or warranty of LBH under the Mortgage Loan Sale Agreement, the only right or remedy of the Trustee or of any Certificateholder shall be the Trustee's right to enforce the obligations of the applicable Transferor under any applicable representation or warranty made by it.  The Trustee acknowledges that LBH shall have no obligation or liability with respect to any breach of a representation or warranty made by it with

CONFIDENTIAL

respect to the Mortgage Loans if the fact, condition or event constituting such breach also constitutes a breach of a representation or warranty made by the applicable Transferor in the applicable Transfer Agreement, without regard to whether such Transferor fulfills its contractual obligations in respect of such representation or warranty.  The Trustee further acknowledges that the Depositor shall have no obligation or liability with respect to any breach of any representation or warranty with respect to the Mortgage Loans (except as set forth in Section 2.03(a)(vi)) under any circumstances.

Section 2.04.  <u>Discovery of Breach.</u>

It is understood and agreed that the representations and warranties (i) of the Depositor set forth in Section 2.03 hereof, (ii) of LBH set forth in the Mortgage Loan Sale Agreement and assigned to the Trustee by the Depositor hereunder and (iii) of each Transferor, assigned by LBH to the Depositor pursuant to the Mortgage Loan Sale Agreement and assigned to the Trustee by the Depositor hereunder, shall each survive delivery of the Mortgage Files and the Assignment of Mortgage of each Mortgage Loan to the Trustee and shall continue throughout the term of this Agreement.  Upon discovery by any of the Depositor, the Master Servicer or the Trustee of a breach of any of such representations and warranties that adversely and materially affects the value of the related Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties; provided, to the extent that knowledge of such breach with respect to any Mortgage Loan is known by any officer, director, employee or agent of Aurora acting in any capacity other than as Master Servicer hereunder, the Master Servicer shall not be deemed to have knowledge of any such breach until an officer of the Master Servicer has actual knowledge thereof.  Within 90 days of the discovery of a breach of any representation or warranty given to the Trustee by the Depositor, any Transferor or LBH and assigned to the Trustee hereunder, the Depositor, such Transferor or LBH shall either (a) cure such breach in all material respects, (b) repurchase such Mortgage Loan or any property acquired in respect thereof from the Trustee at the Purchase Price or (c) within the two year period following the Closing Date, substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan.  In the event of the discovery of a breach of any representation and warranty of any Transferor assigned to the Trustee, the Trustee shall enforce its rights under the applicable Transfer Agreement and the Mortgage Loan Sale Agreement for the benefit of the Certificateholders.  As provided in the Mortgage Loan Sale Agreement, if any Transferor substitutes for a Mortgage Loan for which there is a breach of any representations and warranties in the related Transfer Agreement which adversely and materially affects the value of such Mortgage Loan and such substitute mortgage loan is not a Qualifying Substitute Mortgage Loan, under the terms of the Mortgage Loan Sale Agreement, LBH will, in exchange for such Substitute Mortgage Loan, either (i) provide the applicable Purchase Price for the affected Mortgage Loan or (ii) within two years of the Closing Date, substitute such affected Mortgage Loan with a Qualifying Substitute Mortgage Loan.

Section 2.05.  <u>Repurchase, Purchase or Substitution of Mortgage Loans.</u>

(a) With respect to any Mortgage Loan repurchased by the Depositor pursuant to this Agreement by LBH pursuant to the Mortgage Loan Sale Agreement or by any Transferor pursuant to the applicable Transfer Agreement, the principal portion of the funds received by the Trustee in respect of such repurchase of a Mortgage Loan will be considered a Principal Prepayment and shall be deposited in the Certificate Account.

205365 LMT 2006-8
Trust Agreement

53

CONFIDENTIAL

## Exhibit D

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                         :
In re                                                    :        **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,             :        **08-13555 (JMP)**
                                                         :
                                    **Debtors.**         :        **(Jointly Administered)**
                                                         :
------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION
8.4 OF THE MODIFIED THIRD AMENDED
JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS
HOLDINGS INC. AND ITS AFFILIATED DEBTORS AND
SECTIONS 105(a), 502(c) AND 1142(b) OF THE BANKRUPTCY CODE
ESTIMATING THE AMOUNTS OF CLAIMS FILED BY INDENTURE
TRUSTEES ON BEHALF OF ISSUERS OF RESIDENTIAL MORTGAGE-
BACKED SECURITIES FOR PURPOSES OF ESTABLISHING RESERVES**

Upon the motion (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI")

and Structured Assets Securities Corporation ("SASCO") and their affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors-in-possession (the "Debtors"),

pursuant to section 8.4 of the Plan and sections 105(a), 502(c) and 1142(b) of title 11 of the

United States Code, to estimate the amount of a claims filed by indenture trustees on behalf of

issuers of mortgage-backed securities for the purposes of establishing reserves in connection

with the Plan, as more fully set forth in the Motion; and the Court having jurisdiction to consider

the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and

the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided to (i) the United States

Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) the attorneys for each of the

Indenture Trustees; and (vii) all other parties entitled to notice in accordance with the procedures

set forth in the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases, ECF No. 9635; and that the relief sought in the Motion

is in the best interests of LBHI and SASCO and their creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Claims are estimated as unsecured Claims in the Estimated

Reserve Amounts set forth on Exhibit A annexed to the Motion for purposes of determining the

reserves to be established for Claims under the Plan; and it is further

ORDERED that the estimation of the Claims is not deemed to determine or affect

in any respect the allowed amount, validity or priority of the Claims for any purpose other than

establishing the reserve amounts for the Claims under the Plan; and it is further

ORDERED that the estimation of the Claims is without prejudice to the rights of

the Indenture Trustees to assert that the allowed amount of the Claims should be greater than the

Estimated Reserve Amounts; and it is further

ORDERED that the estimation of the Claims is without prejudice to LBHI,

SASCO or the Plan Administrator's rights, defenses and objections to the merits, amount and

priority of the Claims, and all rights of LBHI, SASCO and the Plan Administrator with respect to

the Claims are fully preserved; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
        [_____], 2012

_____
Honorable James M. Peck
United States Bankruptcy Judge