Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 08-13555(JMP)

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    LEHMAN BROTHERS HOLDINGS INC., et al.

9

10              Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              January 11, 2012

19              10:03 AM

20

21    B E F O R E:

22    HON. JAMES M. PECK

23    U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    Debtors' Motion for Authorization to Sell Equity Interests in

3    Wilton Re Holdings Limited

4

5    Motion of Lehman Brothers Holdings Inc. and Lehman Brothers

6    Special Financing Inc. for Approval of Settlement Agreement

7    with Merrill Lynch Portfolio Management, Inc. and Merrill Lynch

8    Capital Services, Inc.

9

10   Motion of Benisasia Investment and Properties, Ltd. for Relief

11   from the Automatic Stay

12

13   Debtors' Motion for Authority to Exercise Right of First Offer

14   Regarding Securities of Archstone Trust

15

16   Joint Motion of Debtors and Creditors' Committee to Extend Stay

17   of Avoidance Actions and Grant Certain Related Relief

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

Page 3

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4        Attorneys for Debtors and Debtors-in-Possession

5        767 Fifth Avenue

6        New York, NY 10153

7

8   BY:   JACQUELINE MARCUS, ESQ.

9         RICHARD W. SLACK, ESQ.

10        MAURICE HORWITZ, ESQ.

11        ZAW WIN, ESQ.

12

13  MILBANK, TWEED, HADLEY & MCCLOY LLP

14       Attorneys for the Official Committee of Unsecured

15        Creditors

16       One Chase Manhattan Plaza

17       New York, NY 10005

18

19  BY:   DENNIS O'DONNELL, ESQ.

20        BRADLEY S. FRIEDMAN, ESQ.

21

22

23

24

25

Page 4

1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         1850 K Street, NW

6         Suite 1100

7         Washington, DC 20006

8

9    BY:   DAVID S. COHEN, ESQ.

10        (TELEPHONICALLY)

11

12   KIRKLAND & ELLIS LLP

13        Counsel for the Liquidators of Lehman Brothers Australia

14         Limited

15        300 North LaSalle

16        Chicago, IL 60654

17

18   BY:   DAVID R. SELIGMAN, ESQ.

19

20

21

22

23

24

25

```
 1

 2    CHAPMAN & CUTLER LLP

 3         Attorneys for U.S. Bank, N.A., as Trustee

 4         111 West Monroe Street

 5         Chicago, IL 60603

 6

 7    BY:   FRANKLIN H. TOP III, ESQ.

 8         JAMES HEISER, ESQ.

 9         (TELEPHONICALLY)

10

11    CLEARY, GOTTLIEB, STEEN & HAMILTON LLP

12         Attorneys for Goldman Sachs Bank, USA and Goldman Sachs

13          International

14         2000 Pennsylvania Avenue, NW

15         Washington, DC 20006

16

17    BY:   BENJAMIN MEEKS, ESQ.

18         (TELEPHONICALLY)

19

20

21

22

23

24

25
```

Page 6

1

2   REED SMITH LLP

3        Attorneys for Bank of New York Mellon

4        Reed Smith Centre

5        225 Fifth Avenue

6        Pittsburgh, PA 15222

7

8   BY:   ERIC A. SCHAFFER, ESQ.

9        (TELEPHONICALLY)

10

11   STUTMAN, TREISTER & GLATT

12        Attorneys for Baupost Group and Elliott

13        1901 Avenue of the Stars

14        12th Floor

15        Los Angeles, CA  90067

16

17   BY:   JEFFREY H. DAVIDSON, ESQ.

18        MICHAEL NEUMEISTER, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

08-13555-mg    Doc 24388    Filed 01/12/12    Entered 01/18/12 15:17:47    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 7 of 46

Page 7

P R O C E E D I N G S

1

2          THE COURT:  Be seated, please.  Good morning.

3          MR. HORWITZ:  Good morning, Your Honor.  Maurice

4     Horwitz, Weil Gotshal & Manges, for the debtors.  The first

5     item on today's agenda is the debtors' motion seeking

6     authorization to settle LBHI's equity interest in a reinsurance

7     company, Wilton Re Holdings Limited, ECF number 23638.

8          LBHI owns approximately twenty-five percent of Wilton

9     Re's outstanding shares which it purchased in three phases for

10    an aggregate total of 300 million dollars.  The last purchase

11    which was for an aggregate of 122 million dollars at a per

12    share price of fifty dollars per share occurred post-petition

13    and was approved by this Court on January 21st, 2009.

14          By today's motion, LBHI seeks authorization all of its

15    shares back to Wilton Re at a purchase price of sixty-nine

16    dollars per share.  This equates to more than 390 million

17    dollars in the aggregate and enables LBHI to realize a thirty

18    percent return on its investment.

19          As stated in the declaration of Jack McCarthy, Sr.

20    that was filed concurrently with the motion, LBHI has concluded

21    in its business judgment that the proposed transaction is in

22    the best interest of its estate and creditors and is the best

23    means of maximizing its investment in Wilton Re.  In addition

24    to offering LBHI an attractive return, the proposed purchase

25    price equates to a slight premium of Wilton Re's book value at

Page 8

1    a time when comparable insurance companies are trading at

2    significantly lower multiples of book value.

3              As stated in the declaration of David Descoteaux,

4    which was filed contemporaneous with the motion, Lazard ran a

5    number of analyses focused on the trading multiples of selected

6    publicly traded U.S. life insurers in order to evaluate the

7    proposed purchase price.  Lazard determined that the price per

8    share offered by Wilton Re represents an offer that is both

9    significantly higher than the trading multiples of the only

10   publicly traded U.S. Life Reinsurance Company, Reinsurance

11   Group of America and significantly above the median and mean of

12   the trading multiples of other selected publicly traded U.S.

13   life insurers.

14             In light of the current market comparables, LBHI has

15   concluded that it is unlikely that any parties would be willing

16   to make an above-market offer for what is essentially a highly

17   liquid minority stake in Wilton Re.

18             LBHI's shares are also subject to certain transfer

19   restrictions that would make their purchase less attractive to

20   a third party.  For example, a sale of LBHI's shares to a third

21   party triggers a right to first refusal for both Wilton Re and

22   for any shareholders of Wilton Re.  Wilton Re's other

23   shareholders could also exercise tagalong rights that, if

24   implemented, may diminish the number of shares that a third

25   party would be required to purchase from LBHI.

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 9 of 46

Page 9

1           It is unlikely, as well, that an alternative means of

2    monetizing LBHI's investment could materialize in the near

3    future such as an initial public offering or a strategic sale

4    as a going concern.  Given that LBHI intends to begin making

5    distributions in the near future, LBHI has concluded that it is

6    in its best interest to seize upon this opportunity, to sell

7    its shares at a premium and to accelerate the return on its

8    investment ultimately.

9           I should note, Your Honor, that LBHI faces no risk of

10   being diluted on account of the tagalong rights just mentioned.

11   The share purchase agreement before the Court today requires

12   Wilton Re to purchase one hundred percent of LBHI's shares

13   irrespective of any tagalong rights.

14          In addition, it is LBHI's understanding that Wilton Re

15   has obtained waivers of such tagalong rights from the other

16   shareholders of Wilton Re in connection with this transaction.

17          As noted in the motion, the proposed transaction is

18   subject to certain regulatory approvals from the Minnesota

19   Department of Commerce and the Bermuda Monetary Authorities.

20   Although technically, these regulators have not begun their

21   review of the transaction and will not begin their review until

22   this Court has approved the transaction, Wilton Re has been

23   informed that there will be -- or there has been no negative

24   feedback as of yet.

25          Your Honor, there are no objections to the motion.

1   The creditors' committee has evaluated the proposed transaction

2   and filed the statement in support of the motion.  That is ECF

3   24118.  Unless Your Honor has any questions, the debtors would

4   request entry of the order approving the motion.

5              THE COURT:  I have no questions.  I've read the papers

6   including the supporting declarations and the committee's

7   statement and this certainly appears on its face to be an

8   attractive transaction.  I approve it.

9              MR. HORWITZ:  Thank you, Your Honor.  I'll turn the

10  podium over to my colleague, Zaw Win.

11             MR. WIN:  Good morning, Your Honor.  Zaw Win from Weil

12  Gotshal & Manges for the debtors.  The next item on the agenda

13  is the motion of Lehman Brothers Holdings Inc. and Lehman

14  Brothers Special Financing pursuant to Section 105 of the

15  Bankruptcy Code and Rule 9019 of the Federal Rules of

16  Bankruptcy Procedure for approval of the settlement agreement

17  with Merrill Lynch Portfolio Management, Inc. and Merrill Lynch

18  Capital Services, Inc.  This motion is listed at ECF number

19  23637.  No objections have been filed to this motion.

20             The settlement agreement that is the subject of the

21  motion resolves a dispute between Lehman and Merrill that has

22  come before this Court on several previous occasions, first, in

23  connection with a stipulation provided for relief from the

24  automatic stay; and second, in connection with a motion by

25  Merrill for specific performance that this Court denied last

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 11

```
 1    summer.

 2           Unless this Court has any specific questions about the

 3    factual background of the dispute, I'll get right into the

 4    benefits to the estate.

 5           THE COURT:  You can get right into it.  I remember the

 6    deal.

 7           MR. WIN:  As set forth in the declaration of Ronald

 8    Dooley that was filed contemporaneously with the motion, the

 9    settlement agreement is expected to benefit the debtors in

10    several ways.  First, the settlement agreement provides for the

11    portion of the amounts due to LBHI and the Series B bonds,

12    which are subordinate, will be paid in connection with the

13    disposition of each of the five properties that are the subject

14    of the bonds despite the fact that recoveries under the Series

15    B bonds would otherwise be subordinate to Series A bonds.

16           Second, the profit sharing mechanisms contained in the

17    settlement agreement incentivizes Merrill to get the highest

18    return for each of the properties making it more likely that

19    there will be some amounts remaining to pay off the Series B

20    bonds after the Series A bonds have been paid in full.

21           And finally, the settlement agreement will relieve the

22    necessity for the debtors to expend any further funds in

23    connection with the dispute with Merrill.

24           Several of the conditions for closing, notably,

25    Merrill's delivery of the executed confirmation from the
```

Page 12

1    trustee and the opinion of bond counsel, have not occurred yet.

2    So the settlement agreement has not been executed.

3    Accordingly, the debtors have made a few modifications to the

4    proposed order just to recognize the fact that they're now

5    seeking approval to enter into an order substantially in the

6    form that was submitted with the motion instead of an executed

7    order.  I have a redline of the proposed order if the Court

8    would like to take a look.

9             THE COURT:  Please hand that up.  Thank you.

10            MR. WIN:  As the Court will note, there's a slight

11   change in the first page, again, reflecting the fact that the

12   settlement agreement has not been executed.  And then again, on

13   the second page, in the second "Ordered" paragraph, just

14   eliminating the execution dates since it hasn't, in fact, been

15   executed yet.

16            THE COURT:  Can you tell me if there's any issue in

17   particular that's allege of the delay?

18            MR. WIN:  We understand that there isn't an issue.

19   It's just a question of timing over the holiday.  Merrill

20   wasn't able to line up all the necessary consents.  But we

21   expect to have everything in order in the next few days.

22            THE COURT:  Okay.  Fine.

23            MR. WIN:  Unless the Court has any questions, the

24   debtor requests that the order be entered.

25            THE COURT:  It's fine.  I approve it.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 13

1          MR. WIN:  Okay.  Thank you, Your Honor.  The next

2     matter on the agenda is the motion of Benisasia Investment and

3     Properties Ltd. for relief from the automatic stay which was

4     listed at ECF 23614.  The debtors had filed a limited response

5     to this at ECF number 24042.  I am  pleased to report that the

6     debtors and Benisasia were able to reach a consensual

7     resolution of their dispute last night and have a stipulation

8     that we'd be prepared to hand up at the end of the hearing

9     provided for a limited relief from the automatic stay to allow

10    Benisasia to commence an action against LBHI in state or

11    federal court in New York.  Unless the Court has any questions

12    about that, we just propose to hand it up at the end of the

13    hearing.

14          THE COURT:  The only question I would have is about

15    the venue and jurisdiction for that proposed litigation.  Is

16    that going to be a bankruptcy court litigation or litigation

17    elsewhere?

18          MR. WIN:  We don't expect it to be brought in the

19    bankruptcy court.  It likely will be brought in state or the

20    dis -- state court in New York or the district court in New

21    York.

22          THE COURT:  Okay.

23          MR. WIN:  Okay.  Thank you, Your Honor.  Jacqueline

24    Marcus is going to handle the next matter on the agenda.

25          THE COURT:  Fine.  Thank you.

Page 14

1         MS. MARCUS:  Good morning, Your Honor.  Jacqueline

2    Marcus of Weil Gotshal & Manges on behalf of Lehman Brothers

3    Holdings Inc. and its affiliated debtors.  Item number 4 on the

4    agenda is the debtors' motion for authority to exercise the

5    right of first offer regarding securities of Archstone Trust.

6    And that's at ECF number 23620.  Jeffrey Fitts, co-head of

7    Lehman's real estate group, filed a declaration in support of

8    the motion and he is present in Court today.

9         There are no objections to the motion, Your Honor.  As

10   reflected in the agenda each of Bank of America and Barclays

11   filed their response to the motion, but those responses were in

12   the nature of reservation of rights relating to the Archstone

13   adversary proceeding.  And the banks do not oppose the relief

14   requested in the motion.  The creditors' committee has filed a

15   statement in support of the motion.

16        I know the Court is very familiar with the facts

17   regarding the right of first offer, but, with your permission,

18   I will very, very briefly summarize.

19        THE COURT:  That's fine.

20        MS. MARCUS:  Bank of America and Barclays Bank are

21   parties to an interest purchase agreement with ERP Operating

22   Limited Partnership, an affiliate of Equity Residential which

23   is an Archstone competitor, pursuant to which they would sell

24   half their stake or twenty-six and a half percent of Archstone

25   to Equity Residential.  Under the documents governing their

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 15

1    investment in Archstone, the debtors have a right of first

2    offer to buy the stake at the price the banks contract it for

3    with Equity.

4            In the motion, the debtors requested authorization to

5    spend approximately 1.325 billion to acquire twenty-six and a

6    half percent of Archstone from the banks by exercising their

7    right of first offer.  The motion also provided that in the

8    event the Court rules in the adversary proceeding that the

9    debtors were entitled to exercise the right of first offer for

10   the banks' entire interest then the debtors requested authority

11   to purchase the entire fifty-three percent interest.

12           Inasmuch as the Court has not ruled on the merits in

13   the adversary proceeding, the debtors now seek authority to

14   exercise their right of first offer for the twenty-six and a

15   half percent interest in Archstone.  Consequently, if the

16   motion is granted after the closing, the banks collectively

17   would own twenty-six and a half percent of Archstone and Lehman

18   would own seventy-three and a half percent.  For the reasons

19   set forth in the motion and in the declaration of Mr. Fitts,

20   the debtors believe that the exercise of the right of first

21   offer is in their best interest and should be approved pursuant

22   to Sections 105 and 363 of the Bankruptcy Code.

23           Specifically, the debtors believe that Equity

24   Residential has undervalued Archstone by as much as a billion

25   dollars.  There are two consequences of that:  first, that

Page 16

```
 1   means that the debtors would acquire this additional interest

 2   at a favorable price; and second, it means that one of the

 3   alternatives that was available to the debtors exercising their

 4   tagalong rights to participate in the sale to Equity

 5   Residential does not make sense from the debtors' point of

 6   view.

 7           In addition, the debtors believe that the value of

 8   Archstone will be adversely affected if they do nothing and

 9   have Equity Residential, a competitor, as a partner in the

10   investment.  Therefore, they feel it is essential to exercise

11   their right of first offer particularly at a favorable price,

12   in order to maximize the value of their interest in Archstone.

13           Unless the Court has further questions, the debtors

14   request that the Court grant the motion and authorize them to

15   exercise the right of first offer.

16           THE COURT:  I have no questions and I approve the

17   motion as unopposed.  And I treat the fact that the creditors'

18   committee has given a statement indicating its approval as a

19   sign that this is viewed as being in the best interest of the

20   estate and its creditors.  It's approved.

21           MS. MARCUS:  Thank you, Your Honor.  Item number 5 on

22   the agenda is the joint motion of the debtors and the

23   creditors' committee to extend the stay of the avoidance

24   actions and grant certain related relief.  Pursuant to this

25   motion, the debtors seek the following relief:
```

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 17 of 46

Page 17

1            First, an extension of the order staying avoidance

2    actions which currently expires on January 20th, 2012 to July

3    20th, 2012;

4            Second, the debtors seek an extension of the time to

5    complete service of process on avoidance action defendants

6    until the later of March 30, 2012, or the time otherwise

7    provided by the bankruptcy rules.  This portion of the motion

8    relates primary to a handful of defendants in Austria and

9    Taiwan and has not been objected to.

10           As set forth in the motion as well as the reply, the

11   debtors have taken full advantage of this day to initiate

12   settlement discussions with avoidance action defendants and to

13   continue the ADR process.  That the ADR process has been a

14   success cannot be disputed.  As indicated in the twenty-sixth

15   monthly status report filed yesterday by Peter Gruenberger, as

16   a result of mediation, the debtors have achieved settlements of

17   173 ADR matters involving 182 counterparties and generating in

18   excess of a billion dollars for the estate.

19           Another measure of the success is that out of the

20   sixty-nine ADR matters that have reached the mediation stage,

21   sixty-four of them have been settled.  As indicated in Mr.

22   Gruenberger's letter, another fifteen mediations have been

23   scheduled to commence between today and the end of February.

24           The debtors seek an extension of the stay to enable

25   them to continue to build on the successful ADR process and to

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 18

1    resolve pending matters while minimizing the time and expense

2    expended by the debtors and the avoidance action defendants as

3    well as the burden on the Court.  The debtors submit that under

4    Section 105 of the Bankruptcy Code, the number and complexity

5    of the actions, the lack of prejudice to any of the avoidance

6    action defendants and the progress achieved to date warrant the

7    requested extension of the stay.

8          The extension of the stay would affect more than 350

9    parties; yet, the liquidators of LB Australia have filed the

10   only objection to the proposed extension.  As the Court is well

11   aware, LB Australia is neither an avoidance action defendant

12   nor even a creditor in these cases.  As noted in our reply as

13   well as the reply we filed in response to LB Australia's

14   objection to the prior extension motion, LB Australia is not a

15   parties in interest in these cases and therefore is not even

16   entitled to be heard with respect to the stay.  I refer Your

17   Honor again to the Second Circuit's decision in Refco and Judge

18   Chapman's decision in Innkeepers as support for the proposition

19   that LB Australia lacks standing here.  Indeed, as cited in our

20   reply, during the hearing on June 15th, LB Australia's counsel

21   virtually conceded the point.

22         Like it did in connection with the debtors' prior

23   request to extend the stay, LB Australia contends that it

24   cannot wind up its own estate without "a legal determination"

25   of the Dante program flip-clause dispute.  This argument

08-13555-mg    Doc 24388    Filed 01/12/12    Entered 01/18/12 15:17:47    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 19 of 46

Page 19

1    completely ignores the real prejudice in time and money to the

2    actual defendants in adversary proceeding number 3545 who would

3    be forced to start spending real litigation dollars if the stay

4    were lifted as well as the prejudice to the debtors and the

5    burden on the Court.

6         Moreover, as noted by the Court at the June 15th

7    hearing, the issue of interpretation of the Dante flip-cause

8    language has already been decided by this Court.  In fact, what

9    LB Australia has in mind is some type of appellate review.

10        At what stage would LB Australia be satisfied that

11   there is a "legal determination"?  It lost on its motion to

12   intervene in the avoidance action in this court.  Its appeal

13   was dismissed by the district court.  And LB Australia has

14   appealed that decision to the Second Circuit.  One can only

15   imagine that LB Australia envisions the same appellate process

16   with respect to the flip-cause dispute.

17        LB Australia also argues that the pace of ADR

18   settlements has slowed and therefore it is "clear that the

19   remaining derivatives contracts that could have been readily

20   settled would have been settled".  That's a quote from their

21   objection in paragraph 8.

22        As reflected by the progress reflected in the

23   Gruenberger report, the debtors continue to make substantial

24   progress.  Since the last motion filed for extension of the

25   stay, the debtors have continued to commence ADRs at the rate

LEHMAN BROTHERS HOLDINGS INC., et al.

1    of one every two days.  And the debtors have kept up that pace

2    notwithstanding the fact that during the past six month period,

3    the debtors formulated, negotiated and obtained confirmation of

4    their plan of reorganization.  Now that the plan has been

5    confirmed, the debtors and their professionals will be able to

6    devote even more time and energy to resolution of these

7    disputes and the debtors fully expect to settle many more of

8    them.  However, in order to be able to devote their energies to

9    the settlement and ADR process, it's essential that the stay be

10   continued.

11         LB Australia's last point is that the stay should be

12   terminated because Lehman has not taken any steps to commence

13   ADRs with respect to Dante program flip-clauses with respect to

14   the Australian noteholders.  LB Australia fails to take into

15   account that another alternative to the debtors is negotiation.

16   Indeed, there is one Dante series in which LB Australia has

17   notes in which the debtors are close to reaching a negotiated

18   settlement even without the commencement of an ADR.  And

19   indeed, LB Australia, among others, is expected to sign a

20   settlement agreement with respect to that series shortly.

21         As noted in our reply, there have been other ADRs

22   commenced with respect to other Dante program series.  LB

23   Australia's speculation that Lehman has "no intention of

24   initiating ADR procedures with respect to the Dante program

25   flip-clause with the Australian noteholders is just that, mere

Page 21

1    speculation, and, in fact, it's not correct.

2            In conclusion, Your Honor, LB Australia, which is not

3    even a defendant in an avoidance action, should not be

4    permitted to singlehandedly derail the ADR and settlement

5    process that has been so successful to date.  The issues raised

6    in the objection pale in comparison to the success of the

7    debtors' efforts, the potential for continued success resolving

8    these matters, and the prejudice to the debtors and their

9    estates and the actual avoidance action defendants in the event

10   that there were a full scale resumption of the litigation.  As

11   a result, the debtors request that the objection be overruled

12   and the Court extend the stay for an additional six months.

13           On December 6th, Your Honor, we filed a revised

14   proposed order, docket number 24098.  The change is that we

15   added a new paragraph which is the second decretal paragraph on

16   page 3 of the blacklined order.  I don't know if you have it in

17   front of you.

18           THE COURT:  I don't have it in front of me.

19           MS. MARCUS:  I have a copy, if I may?

20           THE COURT:  Please.  Thank you.

21           MS. MARCUS:  The new language is on page 3 which,

22   actually, on your copy is marked as page 6.  It makes clear

23   what the timetable will be upon the expiration of the stay.

24   The new paragraph provides that unless the stay is extended by

25   another order or the parties otherwise agree, each avoidance

Page 22

1   action defendant would be required to answer or otherwise

2   respond to the complaint by September 15th, 2012 or thirty days

3   after the filing of any amended complaint.  The debtors request

4   that the Court enter the revised order.

5               THE COURT:  Okay.  I have a few questions.  And I

6   think it should be noted that Lehman Brothers Australia filed a

7   Chapter 15 case in the southern district of New York as a case

8   related to the Lehman Brothers bankruptcies and that the

9   Chapter 15 has been assigned to me.  No matters have yet

10  transpired with respect to that filing.

11              I also want to note that I have some -- apparently, a

12  lot of people want to leave at this moment.  But why don't we

13  let them continue to file out.  Lehman Brothers Australia

14  should not be offended.  I'm not.  But we just lost about

15  twenty people.

16              I do have a question about the debtors' intentions

17  with respect to the portfolio of litigation that is subject to

18  the proposed extended stay.  I recognize the decretal paragraph

19  that is blacklined noting that unless there's a further order,

20  things may start happening in September.  Is it necessary for

21  there to be a stay as to all of the litigation?  I mean, in

22  effect, one of the questions that I have here is that while ADR

23  is indisputably a success -- and the results speak for

24  themselves as being beneficial to the estate and also

25  beneficial to the Court, I might add, because this means that

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 23

1    matters that might otherwise be burdening the Court are being

2    managed in a private fashion.

3         One of the things that Lehman Brothers Australia is,

4    in effect, saying -- and they'll speak for themselves even

5    though there are questions as to their standing -- is that the

6    stay as to us is prejudicial because we're looking for a

7    toehold as to a legal issue the resolution of which is

8    important to the administration of our estate.

9         Your papers indicate and your oral argument today

10   indicates that negotiations are proceeding with respect to the

11   flip-clause issue as to certain aspects of the Dante program.

12   But it's not clear to me whether or not that has anything to do

13   with the litigation that LBA cares about.  My sense is it does

14   not.  But you can clarify that.  Nor is it clear to me how many

15   of the cases that are being made the subject of this proposed

16   stay are Dante-related litigations or litigations that

17   otherwise relate to the flip-clause issue.

18        So I've said a lot but what I'm really trying to get

19   my arms around is what this really means in terms of the number

20   of cases that are affected and the practical benefits to the

21   debtor in terms of managing this portfolio of litigation in

22   having a stay that applies across the board.

23        MS. MARCUS:  Okay.  I'll do my best to answer your

24   questions, Your Honor.  One of your questions was did the

25   settlement that I alluded to relate to the matters in which LB

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 24 of 46

Page 24

1  Australia is interested.  And some of them do.  Some of them to

2  date and undoubtedly more of them in the future.  So, for

3  example, I think it was in their -- the LB Australia objection

4  to assumption of executory contracts where they noted that

5  there were six series of Dante notes that they own.  One of

6  those series, which is a series in which I believe LB Australia

7  has its largest position, is the one that is within inches of

8  being settled at this moment.

9          So the effect on the litigation is that if matters get

10 settled, the scope of the litigation or any particular

11 litigation may be narrowed.  The adversary proceeding that LB

12 Australia claims affects it indirectly is one in which there

13 are a hundred -- I think it's a hundred defendants or nearly a

14 hundred defendants.  So it is possible that the process of

15 settlement will result in one or more, hopefully more, of those

16 defendants settling out of that litigation therefore narrowing

17 the scope of that matter.

18          The one that I can answer -- and maybe my partners,

19 Mr. Slack can, is how many of the cases are Dante-related

20 litigation.

21          MR. SLACK:  There's one major mass action that

22 contains all of the Dante --

23          MS. MARCUS:  That's the 3545 --

24          MR. SLACK:  Exactly.

25          MS. MARCUS:  Then it's that one.

08-13555-mg    Doc 24388    Filed 01/12/12    Entered 01/18/12 15:17:47    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 25 of 46

Page 25

1          MR. SLACK:  And it contains the hundred defendants.

2          MS. MARCUS:  Your Honor, as to the other matters, I'm

3     sure Your Honor is aware, the defendants to those other matters

4     haven't objected to a continuation of the stay.

5          THE COURT:  Right.

6          MS. MARCUS:  And I believe that the creditors'

7     committee which, for example, is handling the LMA actions is

8     involved in negotiations regarding settlement of those actions.

9     So even though they're not part of the formal ADR process or

10    may not be, there's still a benefit to preserving the status

11    quo on the litigation front and enabling the creditors'

12    committee with respect to those actions to continue their

13    discussions.

14         THE COURT:  Do individual defendants have the

15    unfettered right to seek relief from this blanket stay to the

16    extent that it can be demonstrated that a party is prejudiced

17    or that the stay is no longer a useful exercise because the

18    parties have negotiated to frustration?

19         MS. MARCUS:  I believe that the order provides that

20    parties -- defendants can seek to have the stay terminated

21    before the, in this case, six-month extension.

22         THE COURT:  And have defendants contacted the debtors

23    with respect to this to express any comment or position or has

24    there simply been no objection by a defendant?

25         MS. MARCUS:  There were two.  One led to the change in

1    the language in the order which was -- this particular law firm

2    at least wanted to make sure that they knew what would happen

3    when the stay ended in terms of time period.  And another one

4    who is a defendant that has not yet been named but has been

5    identified as -- represents someone who has been identified as

6    a noteholder was concerned that the language, that new

7    language, not shorten the time that they would otherwise have

8    to answer or move.  And so, in a separate, basically, side

9    letter/exchange of e-mails, we confirmed that that would be the

10   case and they would have the necessary thirty days to respond

11   when they were added as a defendant.

12        THE COURT:  Okay.  Thank you.

13        MR. COHEN:  Your Honor, David Cohen, Milbank, Tweed,

14   Hadley & McCloy, here on behalf of the official committee of

15   unsecured creditors as a joint movant.  There's one small point

16   that I want to briefly address.  The LBA objection seems to

17   suggest that the ADR process has run its course and if these

18   cases would have settled they would have settled by now.  I'd

19   like to refer the Court back to the twenty-sixth status report

20   that was received yesterday and have the Court note that over

21   the next six weeks, there are an additional fifteen mediations

22   that are on the calendar.  This is a robust process.  It is

23   working.  There is nothing broken with it.  We agree with the

24   Court and with the debtors that it's been an overwhelming

25   success.  We see no reason to change the status quo.

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 27 of 46

Page 27

1          THE COURT:  Thank you.  I'll hear from counsel for

2     Lehman Brothers Australia notwithstanding the fact that the

3     debtor takes the position that you have no standing to be heard

4     here.

5          MR. SELIGMAN:  Your Honor, we are here in the

6     unenviable position at being the only objecting party to this.

7          THE COURT:  What gives you standing to object since

8     you're not a party and your motion to intervene was denied and

9     the district court effectively stripped your rights and you're

10    now pleading for some kind of relief in the court of appeals?

11         MR. SELIGMAN:  Your Honor, two things on that.  And

12    there's one at least new fact which is there's two adversaries

13    amongst all the various adversary proceedings here, there are

14    two adversaries that we've been sort of talking about.  One is

15    3545 which is the adversary which is what I'll call sort of the

16    Dante flip-clause adversary proceeding.  The defendants in

17    there are two collateral trustees and approximately ten of

18    these SPVs which are basically sort of pass-through creations.

19         In addition, there's 3547 which is -- and I'm sorry.

20    3545 is obviously the one where the request by LBHI was the

21    termination of the flip-clause issue.  3547, that's the

22    adversary where it's brought against a larger group of

23    defendants.  In that proceeding, the swap was unwound and

24    monies were actually paid out to noteholders.  So part of that

25    proceeding is not only a request for declaration on the

Page 28

1   enforceability of flip-clause but also a recovery action

2   against noteholders who've received monies.

3        Since we were last before Your Honor, we were

4   contacted through Citibank and an intermediary that this second

5   adversary, 3547, did relate to funds that actually LB Australia

6   did receive.  So that 3547 is actually against a -- it's

7   against named defendants and also a class of noteholders who

8   received funds, apparently erroneously as they allege.  We did

9   inform, after we received notice, that there was this

10  proceeding and that it related to funds that we'd received.  We

11  did provide notice to the debtors in November that -- 'cause

12  they were in the process obviously doing discovery to find out

13  who the defendants were.  We did notify them that we were

14  actually a party who had received funds under this.  And we

15  were willing to accept service if they so chose to do so.

16       So, as a technical matter, we are, though not

17  necessarily named, we are in the class of defendants that did

18  receive funds under 3547. And so, I think that's a new fact in

19  terms of standing as a party with respect to one of the

20  adversary proceedings that is --

21       THE COURT:  Without going too far down this path --

22       MR. SELIGMAN:  Yes.

23       THE COURT:  -- your client is the entity in Australia

24  that's in administration.  And you act as counsel to the

25  liquidators, is that correct?

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 29 of 46

Page 29

1          MR. SELIGMAN:  That's correct, Your Honor.

2          THE COURT:  That being so, how does a claim against

3    creditors of your estate give your client standing in any

4    litigation?

5          MR. SELIGMAN:  Well, I would say, Your Honor, that

6    there's two ways in which we have capacity here.  First, also,

7    we are actually a holder of some of the very notes that are at

8    issue.  So all the litigation against the collateral trustees

9    and the noteholders with respect to the enforceability of the

10   flip-clause, we are actually a holder of some of these notes

11   ourselves, approximately seventeen million.  The -- and then

12   the second issue is that other noteholders to the extent that -

13   - and depending on how the flip-clause is ultimately resolved,

14   may have claims back against the LB Australia estate for the

15   amount of -- for various claims that we cited in our pleadings.

16   We have also -- the LB estate -- we have also filed contingent

17   claims against LBHI for a contribution to the extent that the

18   LB estate is liable.  So we have filed those claims, too, as

19   considered contribution claims against the estate.

20          THE COURT:  To be clear, though, is it more correct

21   that LBA is not a defendant in the adversary 3545 nor is it a

22   defendant in adversary 3547?

23          MR. SELIGMAN:  On 3545, yes, it is not a defendant.

24   On 3547, I would actually argue although we're not named, it

25   was brought against a group and a class of people who received

08-13555-mg    Doc 24388    Filed 01/12/12    Entered 01/18/12 15:17:47    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 30 of 46

Page 30

1    money.  When the complaint was filed, LBHI obviously didn't

2    know who those recipients were.  And part of what they've been

3    doing over the past year or so is conducting discovery to

4    ascertain who those noteholders are.  I presume at some point

5    they will be amending their complaint and serving people and

6    naming them as actual defendants 'cause as of -- they're

7    probably in the process of identifying the actual recipients

8    and will so name them as defendants.  But --

9              THE COURT:  So are you acknowledging here publicly

10   that you are vulnerable to a claim that LBA should turn over

11   property to the estate?

12             MR. SELIGMAN:  Well, we would contest the substance --

13             THE COURT:  But you're --

14             MR. SELIGMAN:  -- but, yes, we are acknowledging

15   that --

16             THE COURT:  You're acknowledging that you received

17   distributions in your capacity as a noteholder although you are

18   not named as a defendant in 3547.

19             MR. SELIGMAN:  That's correct.  And we have so

20   notified that to the debtors in writing.

21             THE COURT:  Okay.

22             MR. SELIGMAN:  Your Honor, just briefly with some

23   other points.  We haven't -- the LB estate, as Your Honor has

24   noted, is, in effect, stuck in being able to complete its

25   windup and its administration.  We have not challenged the

Page 31

1   success of the alternative dispute resolution program.  The

2   numbers speak for itself.  Obviously, the -- not only do they

3   need time to do it in a methodical and organized process but

4   certainly over the past six months, they've been focused on

5   their plan of reorganization which obviously consumed a great

6   deal of time.

7          I think, Your Honor, though, at some point with the

8   stay, it's a question of balancing the benefits to the debtors

9   and the estate for a -- as you said, a blanket stay in

10  comparison to the relative harms that may exist with respect to

11  other parties.  And I would argue, Your Honor, that at this

12  point with the stay being in place for approximately fifteen

13  months and this request for another six months that now is the

14  time that they've emerged -- or in the very near future that

15  the stay should be lifted at least with respect to the

16  adversary proceedings or at least just with respect to us as

17  parties with respect to those adversary proceedings.  And I

18  would say so, Your Honor, because of the harm to us that we've

19  noted in terms of the fact that we can't move forward with our

20  estate, the fact that the confirmation process is behind on the

21  debtors' side.  To date, there really hasn't been any

22  alternative dispute resolutions with respect to the notes in

23  which we have an interest.

24         THE COURT:  Have you, on behalf of your clients,

25  affirmatively sought to engage in an ADR process in order to

Page 32

1   negotiate some kind of resolution that would be beneficial to

2   your estate?

3            MR. SELIGMAN:  Absolutely, Your Honor.  We have

4   reached out over the past several years.  We've brought our

5   clients from Australia here to New York to meet with the

6   debtors.  The last meeting, I believe, was probably about a

7   year ago when the -- in the UK when the flip-clause litigation

8   was under consideration by the UK Supreme Court.  And nothing

9   really has happened since then.

10            The liquidators were trying as best as they could to

11  also serve as an intermediary between LBHI and all of these

12  various noteholders who have claims against the Australian

13  estate to try and put people together to try and see if we can

14  work a holistic resolution.  And we remain willing anytime

15  anywhere to be able to do that.  We'd do that as soon as we

16  could get someone from Australia on a plane here.  We would do

17  that immediately.  But to date, none of that has happened.

18            The one potential -- and I don't want to get into

19  settlement discussions, but the one potential settlement of a

20  Dante-related issue that was mentioned, that's one where it's

21  clear that the LBHI estate is out of the money.  And so, the

22  flip-clause issue is irrelevant to that because the flip-clause

23  only matters if LBHI is in the money.  So that one is a

24  completely separate issue.

25            But on the core issue of the flip-clause and the Dante

08-13555-mg    Doc 24388    Filed 01/12/12    Entered 01/18/12 15:17:47    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 33 of 46

Page 33

1   litigation with respect to our noteholders, that has been on

2   ice.  And we would love to be able to do that.  And our point

3   is that if the stay has been in place for this long and there

4   hasn't been any -- in the past year, any discussions or any

5   instigation of an ADR process, we don't know what's going to

6   change.  And given that, we see that if they're not intending

7   to do that -- certainly, if we were engaged in that, we would

8   not be here arguing that that litigation should commence.  And

9   so, we only want the opportunity to try and have that happen

10  and get the issue decided how ever it's decided so that the

11  liquidators can fulfill their fiduciary duties.  And --

12          THE COURT:  Do the liquidators have the discretion to

13  settle?

14          MR. SELIGMAN:  They do.  I'm not an expert on what the

15  Australian rules are for settlement.  But, yes, they have the

16  authority to settle.  I'm sure there are rules and mechanisms

17  for how they go about getting court approval from the

18  Australian court.  But obviously, we have the ability to

19  settle; otherwise we wouldn't have reached out and tried to

20  engage in settlement discussions in the past.

21          The last point I'd just mention again about 3545, it's

22  not this hundred defendants.  It's two collateral trustees.

23  They're the real parties in interest.  They're the ones who

24  litigated the flip-clause litigation in the UK, this being Bank

25  of New York.  They're the ones who litigated the Mahogany

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 34 of 46

Page 34

1    dispute previously before Your Honor.  The other ten defendants

2    to SPV for this series, for that series, again, their share

3    into these is probably one person sitting at a desk in

4    Luxembourg or something like that who just gets a fee for being

5    a director of an SPV.  So they're not going to really be a

6    party to the adversary proceeding.  So I think if the debtors

7    are not going to try to engage in either ADR procedures,

8    mediation, settlement discussions, we just don't see that

9    things are going to change and we'll be back here in six

10   months.  And we would argue that this issue should go forward

11   especially since it's an issue that's a relatively

12   straightforward legal issue.  The Court has heard it before.

13   And the briefs would be relatively easy to submit to Your

14   Honor.  So we don't see a huge amount of prejudice on this

15   particular issue.

16          THE COURT:  Tell me the status of your court appeals

17   proceeding and to what extent do you even have the ability to

18   re-enter the foray here while you are litigating your right to

19   intervene in the appellate court?  Haven't you lost twice on

20   the very issue that you're now urging me to, in effect,

21   reconsider because to grant your objection to the extension of

22   the stay is, in effect, to give you the ability to intervene in

23   the litigation which I previously denied as an interlocutory

24   matter and to allow you to energize that litigation as a party

25   for your own purposes thereby seeking to use it as a platform

Page 35

1  to relitigate an issue that I have already twice ruled on and

2  use that as a platform for further appellate review.  That's

3  exactly what I said no to quite a while ago which the district

4  court said was interlocutory and what you're now seeking to

5  pursue at the court of appeals level.  Why should I even hear

6  you now?  Don't you need to wait until the court of appeals

7  rules on the matter that you're prosecuting there?

8          MR. SELIGMAN:  Your Honor, I don't believe so.  And

9  the reason why is because when Your Honor did originally deny

10  our motion to intervene, you did do so without prejudice --

11          THE COURT:  Absolutely.

12          MR. SELIGMAN:  -- given the fact that things may

13  change or the fact that there was a stay that was a stay that

14  was going to come up again for renewal.  And so, I don't

15  believe we're -- I don't believe we're precluded on that score.

16          I would also mention, Your Honor, that our interest

17  really is in -- and perhaps I was actually thinking about this,

18  Your Honor, as I prepared this argument.  When I was last

19  before Your Honor, I probably didn't convey our position as

20  articulately as I could.  Our desire is to get this issue

21  resolved, again, one way or the other.  If Your Honor were -- I

22  don't think we necessarily need to be a party to the

23  proceedings.  If the matter was litigated and it was litigated

24  between the debtors and the collateral trustee and they

25  submitted briefs, I think we would be fine with that.  Our

Page 36

1    interest is not interjecting another party that's going to file

2    another set of briefs that's going to engage in other aspects

3    of things.  We're just interested in getting the issue

4    resolved.  And the problem is, is that although Your Honor has

5    ruled on this issue before, it was in a different adversary

6    proceeding.  I don't expect Your Honor would come to a

7    different conclusion.  But at this point in time, the

8    collateral trustee is subject to a UK decision saying that the

9    money should go to the bondholders and yet, they know Your

10   Honor's ruling in a different adversary proceeding.  And so,

11   they're not -- they can't proceed with making any distributions

12   or winding up.  And so, I think that they're just looking for

13   clarity in this particular adversary proceeding, 3545 (sic).

14        THE COURT:  Well, you're speaking as if you're in the

15   head of the collateral trustee and speaking as if you are the

16   collateral trustee.  Do you have a clue as to what the

17   collateral trustee wants or believes or thinks is right?

18        MR. SELIGMAN:  We have spoken certainly to the

19   collateral trustee.  I don't want to necessarily speak for them

20   but I do know that they have communicated to us that until

21   there's a resolution of this matter collectively -- they

22   recognize the UK decision.  But until there's a resolution

23   here, they don't want obviously take the risk of complying with

24   the UK decision but being in violation of the stay or being in

25   violation of Your Honor's previous ruling.  So --

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 37 of 46

Page 37

1          THE COURT:  Well --

2          MR. SELIGMAN:  -- they have at least communicated that

3     to me.

4          THE COURT:  Well, isn't it notable that the collateral

5     trustee does not oppose the extension of the stay for six

6     months?

7          MR. SELIGMAN:  Well, from their perspective, I don't

8     think that's particularly notable because --

9          THE COURT:  I do.

10         MR. SELIGMAN:  Well, I would say they right now -- the

11    status quo isn't necessarily hurting them in the sense that

12    there's money set aside and the passage of time doesn't really

13    matter to the collateral trustee.

14         THE COURT:  Have you made demand that the collateral

15    trustee sit down with the debtor as part of an expedited and

16    diligent ADR process in which you might participate and that

17    that be done promptly so that you can move ahead with the

18    administration of the LBA estate?

19         MR. SELIGMAN:  I myself have not.  Our --

20         THE COURT:  No.  But has anybody done that?

21         MR. SELIGMAN:  You know what, it may have -- I don't

22    want to misspeak.  That specific request may have come from our

23    Australian client.  I just don't know.  But we have certainly

24    attempted in speaking with LBHI to have discussions and we

25    would love to have discussions tomorrow.

1       THE COURT:  What is your real objective here?  I know

2   that the Chapter 15 case was filed on Friday.  I don't know if

3   that was coincidental to today's argument but I certainly took

4   note of it as did the newspapers.  What are you trying to

5   accomplish in the southern district of New York that would

6   facilitate the administration of the LBA case in Australia?

7       MR. SELIGMAN:  Your Honor, it was coincidental.  There

8   are some other matters and potential resolutions with other

9   parties that I'm not at liberty to publicly disclose.

10      THE COURT:  Fine.  I'm not trying to put you --

11      MR. SELIGMAN:  Yeah.

12      THE COURT:  -- on the spot.

13      MR. SELIGMAN:  But it was not --

14      THE COURT:  And we haven't had -- we have had no

15  proceedings whatsoever with respect to that separate Chapter 15

16  case.  But I think it is publicly disclosed to the parties in

17  the litigation.  I'm going to publicly disclose it now that

18  Justice Peter Jacobson of the federal court in Sidney,

19  Australia issued an opinion in December of last year relating

20  to the LBA case.  And attached to that opinion was a letter

21  addressed to me as a result of that letter, which initiated

22  court-to-court communication, Justice Jacobson and I spoke by

23  telephone and were reported to the parties in the litigation

24  the general outlines of that conversation.  There's no need to

25  go into it here.  But I think it notable that the Court in

08-13555-mg   Doc 24388   Filed 01/12/12   Entered 01/18/12 15:17:47   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 39 of 46

Page 39

1     Australia and the Court in the United States have had some

2     initial conversations about possible future cooperation and

3     communication between the two Courts.  It is not at all clear

4     at this juncture whether anything substantive will ever be

5     discussed by the two Courts or whether there will be a need for

6     such communication at any time in the future.  But at least the

7     opportunity for some Court to "dialogue" has been established.

8     I wanted that to be clearly understood on the public record.

9           But it's also completely obscure to me at the moment

10    as to what you're trying to accomplish here other than to make

11    some trouble.

12          MR. SELIGMAN:  Your Honor, in all sincerity, we are

13    really not trying to make trouble.  We really are trying -- the

14    liquidators haven't been able to move forward in the resolution

15    of their estate because the contingent claims against their

16    estate relating to this flip-clause issue are such a potential

17    large portion of the claims against their estate.  And we -- at

18    the end of the -- the liquidators are looking for resolution.

19    At the end of the day, if there's a resolution that says that

20    the flip-clause -- that this money belongs to LBHI -- well, I

21    guess, the liquidators wouldn't be happy 'cause the amount that

22    they would be able to distribute in their estate would be -- or

23    the amount of claims they would have would be larger.  At the

24    end of the day, it is what it is.

25          We are looking for resolution because the liquidators

Page 40

1    do have a fiduciary duty and a court directive to wind up their

2    estate as efficiently and as administratively expeditiously as

3    they can.  And we are really just looking for resolution -- a

4    holistic resolution so that the money can be distributed,

5    somebody in claims can be determined.  That's really what we're

6    after.  And how ever it plays out is how it's going to play

7    out.  And that's really what we want to seek.  And that's been

8    our effort to just try and get the issue decided in the right

9    way.

10             THE COURT:  It seems to me that's best accomplished by

11   means of participating in the ADR program.

12             MR. SELIGMAN:  Your Honor, we would be pleased to

13   commence -- to have that process commence with us.  We would be

14   happy to coordinate with the Belmont noteholders, with the

15   collateral trustee, bring our clients from Australia here.  We

16   would be willing to do that tomorrow.

17             THE COURT:  All right.

18             MR. SELIGMAN:  Thank you, Your Honor.

19             MS. MARCUS:  Just a couple of points, Your Honor.

20   First, LB Australia acknowledged that the Court should be

21   balancing the benefits and harms to other parties.  And in my

22   notes, I underlined the word "parties".  As Your Honor has

23   noted, LB Australia is not a party to either one of the

24   adversary proceedings.

25             Secondly, you asked, Your Honor, whether LB Australia

Page 41

1    had affirmatively sought to engage in ADR.  And I believe there

2    have been discussions.  As indicated, it was quite a while ago.

3    But in terms of anybody picking up the phone and saying let's

4    go into ADR now, I don't believe or at least to my knowledge,

5    that request has not been made.

6            Thirdly, Your Honor asked what will change over -- or

7    counsel for LB Australia asked what will change over the next

8    six months.  I can report, Your Honor, that Lehman does expect

9    to file ADRs with respect to the Dante deals, in which LBA is a

10   noteholder, within the next quarter.  So, as we indicated, we

11   have made substantial progress.  Plan's done.  We're focusing

12   our attention on this process.  And we do expect things to

13   change within the next six months.

14           THE COURT:  Okay.

15           MS. MARCUS:  Thank you, Your Honor.

16           THE COURT:  The joint motion of the debtors and the

17   creditors' committee to extend the stay is granted.  The

18   objections lodged by counsel for the administrators or the LBA

19   estate are overruled.  The reason for overruling the objection

20   is manifest.  First, LBA really has no standing to object.  LBA

21   is not a party to the pending litigation.  And even the

22   somewhat strained reference to being within the class of

23   defendants in adversary 3547 does not get to the question of

24   standing in 3545 which is the Dante flip litigation.

25           The procedural posture of the case is such that LBA's

Page 42

1    standing has been rejected on at least two prior occasions.

2    And it is pursuing its appellate rights and the court of

3    appeals at the moment with respect to earlier orders of the

4    Court denying the right to intervene in 3545.

5            On the merits, which I think is a better way to

6    address this, we can assume for the sake of argument solely

7    that LBA has rights that maybe align with a party and that LBA

8    is simply endeavoring by virtue of objecting to the extension

9    of the stay to prosecute in this court its argument that the

10   flip clause determinations previously made in both the

11   perpetual litigation and the Ballyrock litigation should be

12   reconsidered anew and, depending upon the outcome, become a

13   vehicle for further appellate review.  That may well happen one

14   day.  The district court, in considering and ultimately

15   rejecting an earlier appeal by LBA, noted that at some point it

16   is foreseeable that issues with respect to the flip-clause may

17   end up and revisited by the district court, the court of

18   appeals or perhaps even the Supreme Court although she did not

19   say that part.

20           The goal here is not to frustrate any party.  The goal

21   here is to deal fairly with the interests of all creditors,

22   with the interest of the estate as a whole, and to maximize the

23   likelihood of favorable distributions to creditors under a

24   confirmed plan.  No one disputes the efficacy and success of

25   the ADR program that has been undertaken to date.  The results

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 43

1    really do speak for themselves.

2         Now as to the specifics of LBA's concern, the best and

3    most practical approach to dealing with the needs of the LBA

4    estate as those needs may be tied to the disposition of the

5    flip-clause issue, it would be for that issue to be the subject

6    of ongoing negotiations either negotiations simply between the

7    parties themselves or negotiations that are facilitated through

8    alternative dispute resolution procedures.

9         To state the obvious, in order for there to be a final

10   determination of the conflict between the bankruptcy court's

11   determination of ipso facto provisions of the U.S. Bankruptcy

12   Code and the UK court's determination of anti-deprivation

13   principles would require years of litigation.  To the extent

14   that LBA is focused on a prompt determination of issues in its

15   own case, it needs to address this on a consensual basis and

16   come up with some pragmatic solution.  That solution is not

17   litigating this to the Supreme Court although that might happen

18   one day.  I predict if it does happen one day, it will be many

19   years from now.  And the six-month extension of the global stay

20   of litigation will be by a rounding error in that calculation

21   of time.

22        For that substantive reason, regardless of standing,

23   the objection of LBA is overruled.

24        MS. MARCUS:  Thank you, Your Honor.  That brings us to

25   the end of the LBHI calendar.  And I know that there's

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 44

1    something on the calendar for LBI.

2            THE COURT:  Okay.

3            MR. SELIGMAN:  Your Honor, may I be excused?

4            THE COURT:  Yes.

5            MR. SELIGMAN:  Thank you, Your Honor.

6        (Whereupon these proceedings were concluded at 11:03 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                          Page 45

 1

 2                        I N D E X

 3

 4                      R U L I N G S

 5

 6   DESCRIPTION                                    PAGE    LINE

 7   Debtors' motion seeking authorization to        10      8

 8   settle LBHI's equity interest in a reinsurance

 9   company, Wilton Re Holdings Limited granted

10   Motion of Lehman Brothers Holdings Inc. and     12      25

11   Lehman Brothers Special Financing for approval

12   of the settlement agreement with Merrill Lynch

13   Portfolio Management, Inc. and Merrill Lynch

14   Capital Services, Inc. granted

15   Motion of Benisasia Investment and Properties   13      22

16   Ltd. for relief from the automatic stay granted

17   Debtors' motion for authority to exercise the   16      16

18   right of first offer regarding securities of

19   Archstone Trust granted

20   Joint motion of the debtors and the creditors'  41      17

21   committee to extend the stay of the avoidance

22   actions and grant certain related relief granted

23

24

25
```

Page 46

1

2                       C E R T I F I C A T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7       Lisa Bar-          Digitally signed by Lisa Bar-Leib
                           DN: cn=Lisa Bar-Leib, o, ou,
                           email=digital1@veritext.com,
8       Leib               c=US
                           Date: 2012.01.12 15:26:34 -05'00'
9      _____

10     LISA BAR-LEIB

11     AAERT Certified Electronic Transcriber (CET**D-486)

12

13

14

15     Veritext

16     200 Old Country Road

17     Suite 580

18     Mineola, NY 11501

19

20     Date:  January 12, 2012

21

22

23

24

25