UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
------------------------------------------------------------------x

**STIPULATION, AGREEMENT AND ORDER AMONG LEHMAN BROTHERS HOLDINGS INC., FACTIVA, INC., FACTIVA LIMITED AND DOW JONES & COMPANY, INC. RESOLVING MOTION FOR AN ORDER (A) COMPELLING IMMEDIATE PAYMENT OF POST-PETITION ADMINISTRATIVE EXPENSE CLAIMS AND (B) COMPELLING THE DEBTORS TO ASSUME OR REJECT EXECUTORY CONTRACTS OR ALTERNATIVELY MODIFYING THE AUTOMATIC STAY TO PERMIT MOVANTS TO TERMINATE THE EXECUTORY CONTRACTS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

This Stipulation, Agreement and Order (the "Stipulation, Agreement and Order") is entered into by Lehman Brothers Holdings Inc. ("LBHI"), as debtor and debtor-in-possession, Factiva, Inc., Factiva Limited and Dow Jones & Company, Inc. (together, "Factiva," and collectively with LBHI, the "Parties").

**RECITALS**

A. On September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries (together, the "Debtors," and collectively with their non-Debtor affiliates, "Lehman") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

B. Prior to the Commencement Date, LBHI and Factiva were parties to a series of services agreements pursuant to which Factiva provided Lehman employees with access to certain web-based news and business information published by Factiva (the "Services").

These services agreements are identified as account number 9LEH000300 (the "October 29, 2002 Contract"), account number 9LEH001600 (the "June 30, 2006 Contract") and account number 41N00432 (the "November 30, 2001 Contract," together with the October 29, 2002 Contract and the June 30, 2006 Contract, the "Factiva Services Contracts"). The Services were provided to Lehman on an enterprise basis with access for up to 26,000 users and were billed at an enterprise rate regardless of the volume of actual usage.

        C.      On February 15, 2010, Factiva filed a motion seeking (i) immediate payment by LBHI of $1,957,848.75 for Lehman's post-petition usage of the Services, and (ii) to compel LBHI to assume or reject the Factiva Services Contracts (the "Motion") [ECF No. 7102]. On March 26, 2010, Factiva filed an amendment to the Motion (the "Amendment") in which it acknowledged that two of the three services agreements had previously been terminated [ECF No. 7834]. The Amendment also limited the scope of the relief requested in the Motion to the October 29, 2002 Contract, and revised the amount due Factiva in connection with Lehman's alleged post-petition usage of the Services from $1,957,848.75 to $1,921,731.57.

        D.      Since the filing of the Motion, the Debtors have engaged with Factiva to try to ascertain whether Factiva had provided the Services to, and conferred an actual benefit on, the Debtors or whether the Debtors are responsible for the post-petition charges asserted by Factiva.

        E.      In furtherance thereof, Factiva provided the Debtors with a schedule listing the names and last usage date of each Lehman employee who accessed the Services post-petition (the "Lehman Users"). The Debtors reviewed this information and divided the Lehman Users into four categories: (i) Lehman Users who were employed by the Debtors or their controlled affiliates; (ii) Lehman Users who were employed by non-controlled affiliates of the

2

Debtors, but for whom LBHI is responsible for the costs attributable to usage of the Services pursuant to a post petition transition services agreement (the "TSA Parties"); (iii) Lehman Users who were transferred to Nomura Holdings Inc. or Barclays Capital Inc. ("Nomura/Barclays"); and (iv) Lehman Users who were no longer employed by the Debtors, their controlled affiliates, the TSA Parties, or Nomura/Barclays, but who nevertheless continued to use the Services through their Lehman-issued access passwords (the "Unauthorized Users").

F.   The Parties agree that (i) LBHI should be responsible for the use of the Services provided to the Lehman Users who continued to be employed by the Debtors, the Debtors' controlled subsidiaries or the TSA Parties; (ii) pursuant to the terms of the October 29, 2002 Contract, Factiva is entitled to a non-priority unsecured claim in connection with the usage of the Services by Unauthorized Users; and (iii) Factiva is not entitled to reimbursement for Services provided to the Lehman Users who were transferred to Nomura/Barclays.

G.   The Parties have also agreed to apply a rate for actual usage of the Services and not an enterprise rate.

H.   On December 6, 2011, the Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") [ECF No. 23023]. Pursuant to Article 11 of the Plan, the October 29, 2002 Contract was rejected as of the effective date of the Plan.

I.   In light of the foregoing, the Parties have agreed, subject to approval of this Court, to resolve the Motion and their related disputes on the terms set forth below.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

3

1. This Stipulation, Agreement and Order shall not become effective unless and until it is entered by this Court (the "Effective Date").

2. On the Effective Date, in exchange for the consideration and obligations of LBHI set forth in paragraphs 3 and 4 hereto, the October 29, 2002 Contract is rejected pursuant to the Plan and shall be terminated and of no further force or effect. The Parties acknowledge and agree that the June 30, 2006 Contract and the November 30, 2001 Contract were previously terminated and are of no further force or effect.

3. On the Effective Date, Factiva shall have (i) an allowed administrative expense claim against LBHI in the amount of $300,000 (the "Administrative Claim"); and (ii) an allowed General Unsecured Claim against LBHI in LBHI Class 7 in the amount of $869,958.50 (the "Allowed General Unsecured Claim").

4. Within five (5) business days after the Effective Date, LBHI shall pay to Factiva $300,000 in full and final satisfaction of the Administrative Claim.

5. Upon the Effective Date, the Debtors shall forever waive and release any and all claims, liabilities, causes of action, demands, and damages of whatever kind or nature and whether known or unknown, asserted or unasserted, against Factiva arising before or after the Commencement Date related to or arising out of the Factiva Services Contracts or the Services provided thereunder; provided, however, that nothing contained herein shall release Factiva from its obligations or waive the Debtors' rights set forth in this Stipulation, Agreement and Order.

6. Upon the Effective Date, Factiva shall forever waive and release any and all claims, liabilities, causes of action, demands, and damages of whatever kind or nature and whether known or unknown, asserted or unasserted, against Lehman arising before or after the Commencement Date related to or arising out of the Factiva Services Contracts or the Services

4

provided thereunder; provided, however, that nothing contained herein shall release the Debtors from their obligations or waive Factiva's rights set forth in this Stipulation, Agreement and Order.

7. Promptly after the Effective Date, Factiva shall file a proof of claim against LBHI consistent with the terms of this Stipulation, Agreement and Order for the Allowed General Unsecured Claim, which shall be deemed allowed and no longer subject to objection by the Debtors, their successors or assigns, or any other parties acting on behalf of the Debtors.

8. Upon the Effective Date, the Motion and the Amendment shall be deemed withdrawn with prejudice.

9. The Parties agree that this Court shall be the exclusive forum with respect to any disputes or controversies relating to or arising under this Stipulation, Agreement, and Order.

10. This Stipulation, Agreement, and Order can only be amended or otherwise modified by a signed writing executed by the Parties.

11. The person who executes this Stipulation, Agreement, and Order by or on behalf of each respective Party represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation, Agreement, and Order on behalf of such Party.

12. This Stipulation, Agreement, and Order may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement, and Order to present any copy, copies, electronic copies, or facsimiles signed by the Parties here to be charged.

13. This Stipulation, Agreement, and Order is subject to the approval of the Court and upon such approval shall inure to the benefit of the Parties hereto and their respective successors and assigns.

14. This Stipulation, Agreement, and Order shall be governed by the laws of the State of New York, without regard to the application of New York's conflict of law principles.

Dated: January 6, 2012
      New York, New York

/s/ Ira M. Levee
Ira M. Levee

LOWENSTEIN SANDLER PC
1251 Avenue of the Americas, 18th Floor
New York, NY 10022
Telephone: (212) 262-6700
Facsimile: (212) 262-7402

Attorneys for Factiva, Inc., Factiva Limited and
Dow Jones & Company, Inc.

Dated: January 6, 2012
      New York, New York

/s/ Alfredo R. Perez
Alfredo R. Perez

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**SO ORDERED:**

Dated:  New York, New York
       January 19, 2012

*s/ James M. Peck*
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE