NIXON PEABODY LLP
Christopher M. Desiderio
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
and
Amanda D. Darwin
Richard C. Pedone (admitted *pro hac vice*)
100 Summer Street
Boston, MA  02110
Telephone: (617) 345-1000

*Deutsche Bank National Trust Company,*
*as Trustee of Structured Asset Investment Loan Trust 2004-1*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., <u>et al.</u>, ) | |
| ) | Case No. 08-13555 (JMP) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

---

**OBJECTION OF DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE,
TO THE DEBTORS' MOTION PURSUANT TO SECTION 8.4 OF
THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF
LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS AND
SECTIONS 105(A), 502(C) AND 1142(B) OF THE BANKRUPTCY CODE TO
ESTIMATE THE AMOUNTS OF CLAIMS FILED BY INDENTURE TRUSTEES ON
BEHALF OF ISSUERS OF RESIDENTIAL MORTGAGE BACKED SECURITIES FOR
<u>PURPOSES OF ESTABLISHING RESERVES AND REQUEST FOR A CONTINUANCE</u>**

Deutsche Bank National Trust Company, as Trustee of Structured Asset Investment Loan

Trust, 2004-1 (the "<u>Trustee</u>"), by and through its counsel, Nixon Peabody LLP, for its objection

(the "<u>Objection</u>") to the *Debtors' Motion Pursuant to Section 8.4 of the Modified Third Amended*

*Plan of Lehman Brothers Holdings Inc. And Its Affiliated Debtors and Sections 105(a), 502(c)*

*and 1142(b) of the Bankruptcy Code To Estimate the Amounts of Claims Filed by Indenture*

*Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities For Purposes of*

*Establishing Reserves* (the "<u>Motion</u>") respectfully states as follows:

## I.   BACKGROUND

1.      The Trustee acts as trustee for the Structured Asset Investment Loan Trust 2004-1 (the "Trust") which is governed by (a) that certain Trust Agreement, dated as of January 1, 2004 (the "Trust Agreement") by and among Structured Asset Securities Corporation (the "Depositor"), Aurora Loan Services Inc. ("Aurora"), the Murrayhill Company and the Trustee; (b) that certain Mortgage Loan Sale Agreement dated as of January 1, 2004 (the "MLSA") between the Depositor and the Debtor; and (c) all other related agreements, documents and amendments  (collectively, with all other documents executed or entered into with respect to the Trust, the "SAIL Transaction Documents").

2.      Pursuant to the MLSA, Lehman Brothers Holdings, Inc. ("LBHI") transferred and assigned certain mortgage loans (the "Mortgage Loans") to the Depositor who subsequently transferred and assigned all of its rights to the Mortgage Loans (including the rights under the MLSA and other related transfer agreements) to the Trustee for the benefit of the holders of the certificates (the "Certificateholders") issued in connection with the Trust Agreement.  In connection with such transfer, LBHI made numerous representations, warranties and covenants pertaining to the Mortgage Loans that have given rise, or may give rise, to claims by the Trustee (for the benefit of the Certificateholders) related to breaches of such representations and warranties and indemnification for losses.

3.      Pursuant to the applicable SAIL Transaction Documents, in the event that LBHI breaches any representations and warranties, LBHI is required to (i) make certain cure payments or (ii) repurchase certain Mortgage Loans affected by LBHI's breaches at the purchase price provided in the applicable SAIL Transaction Documents.  In addition to the payment of the purchase price, LBHI is obligated to indemnify the Trustee and the Certificateholders and hold

2

them harmless against any losses, damages, penalties, fines, forfeitures, legal fees and related

costs, judgments, and other costs and expenses resulting from any claim, demand, defense or

assertion based on or grounded upon, or resulting from, a breach of LBHI's representations and

warranties contained in the SAIL Transaction Documents.

4.      Notably, LBHI's obligations under the SAIL Transaction Documents are broader

than similar deals of later vintages now before this Court.  The MLSA provides that "The

representations made by [LBHI] pursuant to Sections 1.04(b)(xiii), (xiv), (xv), (xvi) and (xvii)

shall be direct obligations of [LBHI]."  MLSA, Section 1.04(b).  The MLSA is annexed hereto as

**Exhibit A**.  The representations and warranties for which LBHI is responsible, include, without

limitation:[1]

- That each Mortgage Loan complied in all material respects with applicable local, state and federal laws at the time it was made.  MLSA, Section 1.04(b)(xiii).

- That no Mortgage Loan is a "high-cost," "high-cost home," "covered," "high-risk home" or "predatory" loan under any applicable federal, state, or local lending law.  MLSA, Section 1.04(b)(xiv).

- That no Mortgage Loan was subject to the Home Ownership and Equity Protection Act of 1994.  MLSA, Section 1.04(b)(xv).

- That the applicable Servicer for each Pool 1 Mortgage furnished accurate and complete information on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company, on a monthly basis.  MLSA, Section 1.04(b)(xvii)(d).

- That the outstanding Scheduled Principal Balance of each Pool 1 Mortgage Loan does not exceed the applicable maximum original loan amount limitations with respect to first lien or second lien one-to-four family residential mortgage loans, as applicable, as set forth in the Freddie Mac Selling Guide.  MLSA, Section 1.04(b)(xvii)(f).

---

[1]      This summary is provided for convenience purposes only.  To the extent any description set forth in this Objection are inconsistent with LBHI's obligations under the MLSA, the terms of the MLSA shall control.  All capitalized terms not otherwise defined in this paragraph shall have the meaning set forth in the MLSA.

- With respect to Pool 1 Mortgage Loans secured by manufactured housing the fair market value of the manufactured home servicing each contract was at least 80% of the adjusted price of the contract either (i) the time the contract was originated or (ii) the time the contract was transferred to LBHI.  MLSA, Section 1.04(b)(xvii)(g).

5.     In the event that a breach of the foregoing representations and warranties is discovered, within sixty (60) days, LBHI must (a) cure such breach in all material respects, (b) repurchase such Mortgage Loan or (c) within the two-year period following the Closing Date substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan.  MLSA, Section 1.04(d) and Trust Agreement, Section 2.04.  A copy of the Trust Agreement is annexed hereto as **Exhibit B**.

6.     On September 18, 2009, the Trustee filed proof of claim number 18542 on behalf of the Trust (the "SAIL Claim") in an unliquidated amount asserting the aforementioned contingent claims.

7.     On January 12, 2012, the Debtors filed the Motion seeking to estimate the SAIL Claim in the amount of $1,021,680 (the "Estimated Claim").

8.     As of December 27, 2011, the cumulative losses of the Trust were approximately $45.28 million.  Moreover, the remaining aggregate unpaid principal balance of the Mortgage Loans in the Trust is approximately $134 million.  As of December 27, 2011, approximately 30% of the outstanding Mortgage Loans are in various stages of delinquency (i.e. missed payments, in foreclosure, or in bankruptcy).

9.     The Trustee does not have the information needed to make a determination as to whether any of the existing losses, or potential future losses, are the result of a breach of one of the representations and warranties provided by LBHI.  The only party that has access to that information is Aurora, the Debtor's affiliate.

4

## II.   ARGUMENT

10.     By this Objection, the Trustee adopts by reference, as though fully set forth herein, the arguments set forth in (i) the objection to the Motion filed U.S. Bank National Association, not individually but as Trustee, and (ii) the Declaration of Jim Burke In Support of Objections of Various Indenture Trustees to the Motion (collectively, the "Estimation Opposition Pleadings"). For the reasons more fully set forth in the Estimation Opposition Pleadings, it is apparent that the estimation process and formulas proposed by the Debtors are fatally flawed and should not be adopted by this Court.

11.     Notably, neither the Motion nor the Declaration filed in support of the Motion make any specific or particularized factual allegations concerning the specific facts at issue in connection with the estimation of the SAIL Claim and the Debtor's generic allegations should not serve as a basis to establish an estimation methodology with one broad stroke. Further, the Debtors have failed to demonstrate how the SAIL Claim, if not estimated at this time, will "unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Accordingly, the Debtors have not met their burden as it relates to the estimation of the SAIL Claim.

12.     However, in the event the Court determines that the Motion should be granted, the SAIL Claim should be estimated in an amount of not less than $68 million based on the current cumulative losses and delinquency rate of the Mortgage Loan Portfolio or the Court should grant a continuance of the hearing on the Motion so that the parties can gather the necessary facts in order to set the appropriate Estimated Reserve Amount.

### III.    CONCLUSION

WHEREFORE, the Trustee requests that this Court (1) either (a) deny the relief requested

in the Motion and defer the estimation of the SAIL Claim, or, in the alternative, (b) estimate the

SAIL Claim in the amount of no less than $68 million for purposes of the Motion, or (c) grant a

continuance of the hearing on the Motion, and (2) grant such other and further relief this Court

deems necessary and appropriate.


Dated:  New York, New York
        January 20, 2012

                              Respectfully Submitted,


                              By: */s/ Christopher M. Desiderio*
                              Christopher M. Desiderio
                              NIXON PEABODY LLP
                              437 Madison Avenue
                              New York, NY 10022
                              Telephone: (212) 940-3000
                              Facsimile: (212) 940-3111
                                      and
                              Amanda D. Darwin
                              Richard C. Pedone (admitted *pro hac vice*)
                              NIXON PEABODY LLP
                              100 Summer Street
                              Boston, MA  02110
                              Telephone: (617) 345-1000

                              *Counsel to Deutsche Bank National Trust Company,*
                              *as Trustee of Structured Asset Investment Loan Trust 2004-1*