**SILVERMANACAMPORA LLP**
Counsel to Caisse des Dépôts et Consignations,
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Jay S. Hellman
Brett S. Silverman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re                                                              Chapter 11

LEHMAN BROTHERS HOLDING INC., *et al.*           Case No. 08-13555 (JMP)

                    Debtors.                                       (Jointly Administered)
-------------------------------------------------------------------X

### CAISSE DES DÉPÔTS ET CONSIGNATIONS' REPLY TO THE OBJECTION FILED BY LEHMAN BROTHERS SPECIAL FINANCING INC. TO THE MOTION SEEKING AN ORDER TO PERMIT A LATE-FILED CLAIM

Caisse des Dépôts et Consignations ("**CDC**"), by and through its undersigned counsel, for its reply (the "**Reply**") to the objection (the "**Objection**") filed by Lehman Brothers Special Financing Inc. ("**LBSF**") and its affiliated co-debtors in the above-captioned jointly administered cases (collectively, the "**Debtors**") to CDC's motion seeking the entry of an order to permit a late-filed claim against LBSF, with such claim being deemed timely filed (the "**Motion**"), respectfully represents as follows:

**I.**

**CDC IS A KNOWN CREDITOR THAT WAS NOT PROVIDED WITH EITHER ACTUAL NOTICE OR LEGALLY SUFFICIENT NOTICE PURSUANT TO THE MASTER AGREEMENT**

1.      The Objection should be overruled, and the Motion should be granted because CDC did not receive "actual", legally sufficient notice of the claims bar date in the Debtors' cases (the "**Bar Date**").

2.      In the Objection, the Debtors assert that CDC was provided with "actual" notice of the Bar Date because (a) CDC was noticed by publication through the International Editions of the Wall Street Journal, Financial Times, and New York Times, (b) notice was mailed to CDC

Capital, Inc., in New York, and to an alternate CDC office in Paris, France, and neither notice was returned, and (c) notice of the Bar Date was mailed to CDC at its main address (without the specific routing information required by the Master Agreement).[1]

3. Under applicable bankruptcy law, creditors are entitled to different types of notice depending on whether a creditor is "known" or "unknown." *See In re Brunswick Hospital Center, Inc.*, 1997 WL 836684, *3 (Bankr. E.D.N.Y. Sept. 12, 1997).

4. "According to well-established case law, due process requires that a debtor's ***known creditors be afforded actual written notice of the bankruptcy filing and of the bar date***." *In re Brunswick Hospital Center, Inc.*, 1997 WL 836684 at *3 (emphasis supplied) (*citing In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 674, 680 (Bankr.S.D.N.Y.1993); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir.1995); *Waterman Steamship Corp. v. Aguiar*, 141 B.R. 552, 557 (Bankr. S.D.N.Y. 1992); *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 443–44 (Bankr. S.D.N.Y. 1991)).[2]

5. Moreover, "knowledge of a corporate reorganization petition does not necessarily enable a creditor to estimate the bar date." *In re XO Communications, Inc.*, 301 B.R. 782, 792, n.5 (Bankr. S.D.N.Y. 2003) (*quoting In re Medaglia*, 52 F.3d 451 (2d Cir. 1995).[3] In *In re*

---

[1] Capitalized terms not defined herein have the same meaning ascribed to them in the Motion.

[2] *See also In re L.F. Rothschild Holdings, Inc.*, 1992 WL 200834, *3 (S.D.N.Y. Aug. 3, 1992) ("[I]t is well established that a debtor's known creditors are entitled to actual notice of the bar date for filing claims.") (*citing City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296 (1953)); *In re Chateaugay Corp. Reomar, Inc.*, 2009 WL 367490, *5 (Bankr. S.D.N.Y. Jan. 15, 2009) ("[t]o discharge claims of known creditors, due process requires that known creditors receive actual notice"); *In re Victory Memorial Hosp.*, 435 B.R. 1, *5 (Bankr. E.D.N.Y. 2010) ("all known creditors must be given actual notice of the bar date").

[3] *See also In re Brunswick Hospital Center, Inc.*, 1997 WL 836684 at *3 (*quoting In re Somar Concrete, Inc.*, 102 B.R. 44, 50 (n. 4) (Bankr.D.Md.1989) ("[T]he creditor with actual knowledge of the bankruptcy case has a burden of inquiry in an individual case while a creditor with knowledge of a corporate Chapter 11 case suffers no prejudice unless it has actual knowledge of the bar date.")).

2

*Brunswick Hospital Center, Inc.*, the court stated that "[a] known creditor must receive proper, adequate notice before its claim is barred forever."[4]

6. It is undisputed that CDC was a "known" creditor of LBSF since the Master Agreement was listed on Schedule "G" of the Debtors' chapter 11 petitions as an unexpired executory derivative contract with specific reference to Master Derivative Account Number 080494CDDC.[5] Accordingly, due to its status as a "known" creditor of LBSF, the Debtors were obligated to provide CDC with "actual" notice of the Bar Date.

Notice By Publication
Is Not Legally Sufficient

7. Notice by publication is not legally sufficient notice for "known" creditors of a debtor. *See In re Brunswick Hospital Center, Inc.*, 1997 WL 836684 at *3 ("notice by newspaper publication does not satisfy the minimum due process protections to which known creditors are entitled.").[6] Moreover, as the court in *In re Thomson McKinnon Securities Inc.*,[7] stated:

> Notice by publication satisfies the requirements of due process when the names, addresses and interests of potential parties are unknown. 130 B.R. at 719; *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

8. Based on the foregoing, notice by publication is not legally sufficient notice and should not foreclose CDC's claims against the Debtors.

---

[4] 1997 WL 836684 at *3 (*quoting In re Best Products Co., Inc.*, 140 B.R. 352 (Bankr.S.D.N.Y.1992); *see also In re XO Communications, Inc.*, 301 B.R. at 792 ("If a creditor is 'known' to a debtor, actual notice of a debtor's bankruptcy filing and bar date must be given to the creditor in order to achieve a legally effective discharge of the creditor's claim.").

[5] The Master Agreement was annexed to the Motion as Exhibit "A". The Master Agreement was entered into between CDC and LBSF on July 29, 1994, and was intended to govern certain financial transactions between CDC and LBSF pursuant to the terms and conditions contained therein.

[6] See also *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319–20, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *In re Allegheny Int'l*, 158 B.R. 356, 359 (Bankr. W.D.Pa. 1993) (notice by publication in national newspapers is insufficient to give actual notice of bankruptcy filing to known creditors); *In re Grand Union Co.*, 204 B.R. 864, 872 (Bankr. D. Del. 1997) (published notice of claims bar date notice is inadequate for known creditors) ("[C]onstructive notice by publication is not reasonable notice to creditors whose names, addresses and interests are known to the debtor.").

[7] 130 B.R. 717 (Bankr. S.D.N.Y. 1991).

Actual Notice was
<u>Not Legally Sufficient</u>

9.    CDC further submits that "actual" notice, ***must*** be "legally sufficient" notice and, as such, the Debtors failed to provide proper notice to CDC regarding the Bar Date.

10.    The Debtors assert that, even if the notice provided to CDC at the scheduled address was not "sufficient or reasonable under the circumstances," the Motion should be denied because mailing of the notice of the Bar Date to (a) CDC Capital, Inc., in New York, and (b) to an alternate CDC office in Paris, France (collectively, the "**Alternative Mailings**") was "actual" notice. *See Objection*, at ¶14. The Debtors further assert that the Alternative Mailings created a rebuttable presumption that CDC cannot overcome. *See Id.*, at ¶16. Lastly, relying predominantly upon *In re Drexel Burnham Lambert Group, Inc., et al.*,[8] the Debtors assert that CDC, once in receipt of the Alternative Mailings, was responsible for routing it to the proper personnel within its organization. *See Id*, at ¶¶17-18 (also *citing In re Petroleum Prod. Mgmt. Co.*, 240 B.R. 407, 414-415 (Bankr. D. Kan. 1999)).

11.    Despite the Alternative Mailings, however, and despite the Debtors' reliance on *Drexel*, the notice of the Bar Date was not "legally sufficient" because the Debtors did not satisfy their contractual obligations under the Master Agreement to serve the notice of the Bar Date upon CDC at the specified address contained in the Master Agreement.

12.    Indeed, the failure to abide by the specific notice provisions in the Master Agreement dooms the Debtors' argument. *See e.g. National Union Fire Ins. Co. of Pittsburgh, P.A. v. Broadhead*, 155 B.R. 856, 859 (S.D.N.Y. 1993) ("Although the notice complied with due process, it did not comply with the indemnity agreement, which unambiguously required Broadhead to include in the address "Attention Special Programs Division." In vindication of its contract rights, National Union is entitled to the opportunity to demonstrate that it could have affected the outcome of the bankruptcy proceeding to its advantage if it had received the notice

---

[8] 129 B.R. 22 (Bankr. S.D.N.Y. 1991).

4

for which it contracted."); *see also IHS of Brunswick, Inc. v. State of Michigan*, 219 B.R. 324 (Bankr. S.D. Ga. 1998) (debtor failed to provide legally sufficient notice to invoke discharge when debtor did not comply with contract that designated the manner of notice); *In re Green River Biodiesel, Inc.*, 2010 WL 3905214 (Bankr. N.D. Ala. Sept. 24, 2010) (notices provided to alternative addresses were not legally sufficient when parties had entered into contract specifying the location for notice to be sent and debtor failed to send notice to the specified location).

13.     The facts of the instant matter are more closely analogous to *National Union,* and far more instructive than the *Drexel* case relied upon by the Debtors.  In *National Union*, the debtor and National Union entered into an agreement that required notices be sent to a specific address, and include a specific "attention" line that read: "Attention: Special Programs Division". *National Union*, 155 B.R. at 857.  After the debtor filed bankruptcy, notice was sent to National Union at the correct address but failed to include the attention line.  *Id.*  In its initial analysis, the District Court stated that:

> There is no statutory requirement, however, that one identify the specific division of a company on a bankruptcy notice.  Nor is it required by due process.  Once delivered, it is the responsibility of the creditor to distribute the notice to the appropriate party within its organization.

*Id.* at 858-859, *citing In re Drexel Burnham Lambert Group Inc.*, 129 B.R. 22, 24 (S.D.N.Y. 1991).

14.     But the District Court did not stop there.  It further analyzed the facts and circumstances of the case, and held that, because of the contractual agreement entered into by the parties, "[a]lthough the notice complied with due process, ***it did not comply with the indemnity agreement***."  *Id.* at 859 (emphasis supplied).

15.     In the instant matter, and as stated in the Motion, CDC, due to its massive size and the expansive, non-contiguous layout of its offices throughout Paris, always includes specific noticing provisions in all of its contracts and transactional documents which, if not

5

adhered to, can cause notice to go undelivered to the intended party.  The Master Agreement was no exception.  CDC included a specific noticing provision to ensure that all notices were delivered to the proper departments (the "**Specific Notice Provision**").  The Specific Noticing Provision was included in Part 4(a) of the Schedule to the Master Agreement, which requires that all communications to CDC in connection with the Master Agreement be directed to:

> Caisse des Dépôts et Consignations
> 56 rue de Lille
> 75356 Paris Cedex-France
> ***Attention:  Service FMP 20/Back Office Monétaire***

(emphasis supplied).

16.     Akin to *National Union*, LBSF and CDC negotiated the Specific Notice Provision and, thus, all notices, including the Bar Date, should have been addressed to CDC, with the attention line reading: "Attention: Service FMP 20/Back Office Monétaire."  Despite their contractual obligation, however, the Debtors failed to include the Specific Notice Provision when they addressed and noticed the Bar Date.  Consequently, the proper parties at CDC were never aware of the Bar Date.

17.     Furthermore, on July 7, 2009, LBSF sent correspondence to CDC using the Specific Notice Provision (the "**LBSF Letter**").  A copy of the LBSF Letter is annexed hereto as **Exhibit A**.  The post-petition mailing of the LBSF Letter evidences the Debtors' knowledge of the proper notice requirements and their failure to properly notice the Bar Date. The LBSF Letter demonstrates that LBSF was aware of the need to utilize the Specific Notice Provision. Because CDC was receiving mail from LBSF through the Specific Noticing Provisions, it follows that Debtors' did not use reasonable methods to provide CDC with "actual" notice of the Bar Date.  Therefore, pursuant to the holding and reasoning of the District Court in *National Union*, the Debtors failed to provide legally sufficient notice of the Bar Date, which resulted in CDC's inability to file a claim.

18.     Therefore, the objection should be overruled and the Motion should be granted.

6

## II.

## CDC HAS ESTABLISHED EXCUSABLE NEGLECT

19. Even if the Court believes that the Debtors managed to provide "actual" notice, the Motion should be granted anyway because CDC can establish excusable neglect.

<u>Standard for Excusable Neglect</u>

20. Bankruptcy Rule 9006(b)(1) allows the enlargement of the bar date at the discretion of the Court. The relevant provision of Bankruptcy Rule 9006(b)(1) reads, in part:

> [W]hen an act is required or allowed to be done at or within a specified period . . . by order of the court, the court for cause shown may at any time in its discretion . . . permit the act to be done where the failure to act was the result of excusable neglect.[9]

21. In *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380 (1993), the Supreme Court set out four factors to determine if excusable neglect exists (the "**Pioneer Test**"). Those factors are: (1) "the danger of prejudice to the debtor", (2) "the length of the delay and its potential impact on the judicial proceeding", (3) "the reason of the delay, including whether it was in reasonable control of the movant", and (4) "whether the movant acted in good faith." *Id.* at 395.

22. The Second Circuit takes a "hard line" approach in applying the Pioneer Test, giving most weight to the reason for the delay, including whether the delay was within the reasonable control of the movant. *In re Lehman Brothers Holdings, Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010) (JMP). The remedy of allowing a late-filed claim is an equitable one. *Pioneer*, 507 U.S. at 395. Because the factors of the Pioneer Test weigh in favor of CDC, the Motion should be granted.

<u>Pioneer Test</u>

---

[9] Under Bankruptcy Rule 9006(b)(3) enlargement of time to file a proof of claim under 3002(c) can only be granted to the extent and under the condition stated in that rule. Rule 3002(c)(6) provides that, where a court finds that service of notice of the time to file a proof of claim upon a foreign creditor is insufficient, the court may extend the time by not more than 60 days.

7

*CDC Was Not in Reasonable Control of the Delay*

23. CDC had no reasonable control over the delay because the Debtors, by failing to comply with the Master Agreement, caused the delay. The cases cited by the Debtors are all inapplicable here because neither an "office mix-up" nor "clerical mistake" occurred. As previously discussed, CDC was not properly provided with legally sufficient notice of the Bar Date because the notice of the Bar Date was not delivered to the place specified by the Specific Noticing Provision negotiated into the Master Agreement.

24. The Debtors' actual and constructive notice arguments in this particular instance are irrelevant because the Debtors did not comply with the Master Agreement, and thereby failed to provide legally sufficient notice to CDC. *See National Union*, 155 B.R. at 857.

25. Therefore, the Debtors caused the delay by failing to give legally sufficient notice.

*Debtor's Prejudice is Not Substantial*

26. To determine if prejudice exists, this District has looked at:

> [T]he size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated.

*In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). In the Objection, the Debtors suggest that granting the pending Motion would open the flood gates to claims by others. Due to the specific nature of the facts in this proceeding, however, it is unlikely that other claimants will satisfy the Pioneer Test.

27. Additionally, the Debtors had knowledge, and even used, the Specific Noticing Provision post-petition, as evidenced by **Exhibit A**, yet the Debtors failed to provide legally sufficient notice of the Bar Date to CDC.

28. The Debtors now attempt to insulate themselves from their failure to comply with the Master Agreement. Certainly, the prejudice to the Debtors does not overshadow the fact

8

that the Debtors were the cause of the delay. The Debtors, at this juncture, cannot simply shield themselves from their obligation to provide legally sufficient notice.

29. Moreover, CDC's total claim, in the context of one of the largest and most historic bankruptcy cases, is minimal in relation to the size of the estate.

30. Accordingly, the prejudice is not substantial.

*Length of Delay & Potential Impact*

31. Although it is nearly two years since the Bar Date, CDC did not become aware of the bar date until after e-mail correspondence in May, 2010, when the director for the estate of Lehman Brothers Holdings Inc. ("**LBHI**"), Mr. Dermot Doyle, claimed to have authority to settle CDC's claim against LBSF. Then, as soon as CDC was informed of the Bar Date, it contacted a American Counsel to analyze the file, the merits of its claim and the arguments to support its claim. This resulted in the filing of the Motion.

32. If the Court grants the Motion, the potential impact on the proceeding, if any, is minimal. CDC's claim is comparatively minimal and, to this date, no distributions have been made to creditors. Therefore, the length of delay is not unreasonable for an international claimant who failed to receive proper and legally sufficient notice of the Bar Date, pursuant to a contractual obligation with Debtor as mandated by the Specific Notice Provision. Thus, the Motion should be granted.

*Bad Faith is Not Present*

33. There is no bad faith present in this case. CDC never received notice of the Bar Date. The Debtors themselves acknowledge that bad faith does not seem to present itself in this matter. *Objection*, at ¶16. Accordingly, this factor weighs in favor of CDC. The Motion should be granted.

### **Conclusion**

CDC respectfully requests that the Court (a) overrule the Objection, and (b) enter an order to permit a late-filed claim against LBSF, with such claim being deemed timely filed, together with such other and further relief as the Court deems just and proper.

Dated: Jericho, New York
      January 23, 2011

**SILVERMANACAMPORA LLP**
Counsel to Caisse des Dépôts et Consignations

By:   s/Jay S. Hellman
      Ronald J. Friedman
      Jay S. Hellman
      Brett S. Silverman
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300