UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                   :

In re                                                  :       Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :       08-13555 (JMP)

                         Debtors.        :       (Jointly Administered)

-----------------------------------------------------------------x

### SUPPLEMENTAL DECLARATION OF DANIEL J. EHRMANN IN SUPPORT OF THE MOTION PURSUANT TO SECTION 8.4 OF THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE THE AMOUNT OF DISPUTED CLAIMS FILED BY LEHMAN BROTHERS FINANCE AG (IN LIQUIDATION) FOR PURPOSES OF ESTABLISHING RESERVES

Pursuant to 28 U.S.C. § 1746, I, Daniel J. Ehrmann, declare:

1. I am over 18 years of age and make these statements based on my personal knowledge, my review of the business records of the Debtors,[1] and/or my consultation with employees of the Debtors, their affiliates, and Alvarez & Marsal North America, LLC ("A&M"). If called to testify, I could testify to the truth of the matters set forth herein.

2. I make this declaration on behalf of LBHI and LBSF in further support of their motion, pursuant to Section 8.4 of the Plan, to estimate the amount of the LBF Claims, ECF No. 24253 (the "Motion").

3. I am a Managing Director with A&M. I began my career as an attorney practicing law in France for five years. I have specialized in turnaround and restructuring with A&M since 2000, serving in a variety of interim management, advisory, and financial restructuring roles.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion (as defined below).

4. I was assigned to the Lehman matter in September 2008. In addition to the management of all international and foreign matters of the Debtors, I also have been directly involved in preparing for the effective date of the Debtors' Plan and, in particular, the Debtors' initial distributions to their creditors.

5. An essential step for the Debtors in preparing to make their initial distributions to creditors has been the establishment of reserves for Disputed Claims, as required by section 8.4 of the Plan. To date, the Debtors have made every effort to reach agreements with their creditors on reserve amounts that are reasonable in the circumstances. The Debtors have entered into stipulations with respect to some of the largest priority claims asserted in these cases, by the United States Internal Revenue Service and Fannie Mae, which resulted in a total reduction of $28.4 billion in reserves, and substantially increased the distributions that they will be able to make to their creditors in the coming months.

6. The Debtors have been in discussions with LBF for more than two years. They have proposed multiple settlement structures to LBF, all of which have been rejected. The discussions have been fruitless to date – and yet the Debtors have settled with virtually every other foreign administrator. To my knowledge, LBF has settled with none. The Debtors declined LBF's proposal for mediation over reserves because mediation will take too long and unnecessarily complicate the issue. The Debtors have nevertheless attempted to reach an agreement with LBF on reserves. In fact, the Debtors had previously advised LBF that they would file a motion to be heard on January 26, 2012 if a consensual reserve could not be established. These efforts have been unsuccessful. For this reason, the Debtors have filed the Motion, and concurrently filed a motion seeking to estimate RMBS-based claims, ECF No. 24254.

7. The LBF Claims are among the largest Disputed Claims that have been asserted against the Debtors. The LBF Holdings Claim represents more than 20% of the difference between the asserted amounts of Disputed Claims against LBHI and the amounts that the Debtors estimate will ultimately be allowed with respect to such Disputed Claims against LBHI. To the extent that the Debtors cannot agree on appropriate reserves with their creditors, including LBF, it is critical that the Debtors be able to avail themselves of the provisions of the Plan that allow them to seek estimation of Disputed Claims for reserve purposes. If the Debtors are unable to establish reasonable reserves for Disputed Claims pursuant to section 8.4 of the Plan, the incremental impact of maintaining reserves for LBF's Disputed Claims (and the Disputed Claims of other creditors) will significantly diminish distributions to the Debtors' creditors, and unfairly prejudice them. Section 8.4 of the Plan was drafted to avoid this inequitable result.

8. Estimating the LBF Claims at the Estimated Reserve Amounts will not harm LBF. If the LBF Claims are ultimately allowed in amounts in excess of the Estimated Reserve Amounts, the Plan provides that the Debtors will make catch-up payments on such Claims. Particularly with respect to the LBF Holdings Claim, there will be ample distributable value to allow LBF to catch up in the event that the LBF Holdings Claim is allowed in amount greater than $0 in the next few years. As described in the Debtors' Disclosure Statement, many of LBHI's assets are illiquid, and it is estimated that the final disposition of LBHI's assets will take years. Exhibit 7 of the Disclosure Statement, sets forth LBHI's estimated cash flows through 2014. The Debtors estimate that LBHI will collect approximately $3 billion of assets in 2013 and 2014. Such delayed monetization of certain of LBHI's assets provide LBHI and LBF with sufficient time to resolve the LBF Holdings Claim in full.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 24th day of January, 2012.

/s/ Daniel J. Ehrmann<br>Daniel J. Ehrmann