WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Adam M. Schloss

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

## NOTICE OF MOTION TO COMPEL
## COMPLIANCE WITH SUBPOENA *DUCES TECUM*

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "<u>Motion</u>") of Lehman Brothers Holdings Inc., *et al.*, as debtors and debtors in possession ("<u>Lehman</u>" or "<u>Debtors</u>"), for entry of an order compelling Bond Logisitx LLC to produce approximately 200 valuation spreadsheets in native file format pursuant to a subpoena issued on May 13, 2011, as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **February 15, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the "<u>Hearing</u>").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq., attorneys for Debtors; (iii) the Office of the United States Trustee for the Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Andrea B. Schwartz, Esq., and Elisabetta Gasparini, Esq.; and (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be received no later than **February 8, 2012 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 24, 2012
New York, New York

/s/ Richard W. Slack_____
Richard W. Slack
Adam M. Schloss

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Adam M. Schloss

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## <u>MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ................................................................................................. 6

I.      BLX Is Obligated to Reproduce the Spreadsheets in Native File Format ....................... 6

II.     BLX Has No Right to Reimbursement from Lehman .................................................. 7

CONCLUSION ............................................................................................. 10

NOTICE ................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................. 6

*In re Ecam Publ'ns, Inc.*,
    131 B.R. 556 (Bankr. S.D.N.Y. 1991) ................................................................. 6

*In re Honeywell Int'l Inc. Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ................................................................. 2, 6, 8

*In re Ionosphere Clubs Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2nd Cir. 1994) ....................................... 7

*The Tutor-Saliba Corp. v. U.S.*,
    32 Fed. Cl. 609 (Fed. Cl. Jan. 6, 1995) ................................................................. 9

*Wells Fargo Bank, N.A. v. Konover*,
    259 F.R.D. 206 (D. Conn. 2009) ................................................................. 9

*Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*,
    No. 91 Civ. 2287 (PKL), 1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) ....................................... 8

## Other Authorities

Fed. R. Bankr. P. 2004 ................................................................. 1, 2, 6, 7

Fed. R. Civ. P. 45 ................................................................. 2, 7, 8

Lehman Brothers Holdings Inc., *et al.* ("Lehman" or "Debtors") respectfully submit this motion to compel compliance with a subpoena *duces tecum*, pursuant to the Court's Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities, dated November 23, 2009 (ECF No. 5910) (the "Rule 2004 Order"), and Section 105(a) of the United States Bankruptcy Code.

## PRELIMINARY STATEMENT[1]

1.    Bond Logistix LLC ("BLX") is a paid financial advisor to Idaho Housing Finance Association ("Idaho Housing") and a number of additional Lehman swap counterparties.  BLX provided Idaho Housing with financial advice with respect to Idaho Housing's swaps with Lehman after Lehman's bankruptcy filing in September 2008.  Lehman is investigating these swaps and the amounts due thereunder.

2.    In May 2011, Lehman served BLX with a subpoena *duces tecum* (the "Subpoena") under Rule 2004 of the Federal Rules of Bankruptcy Procedure and the Rule 2004 Order.  The Subpoena seeks several categories of documents related principally to Idaho Housing's swaps with Lehman.  Although BLX has created approximately 200 valuation spreadsheets (the "Spreadsheets") responsive to the Subpoena, BLX has refused to produce these documents in native file format.  Instead, BLX has produced the Spreadsheets in paper form. But most of the Spreadsheets are unreadable in this form:  the pages of these documents are impossible to piece together, for example, because many of these pages lack headings. Accordingly, BLX is obligated to reproduce the Spreadsheets, this time in native file format.

---

[1] References to "Ex. __" herein are to the exhibits attached to the accompanying Declaration of Raquel Kellert, dated January 24, 2012 ("Kellert Decl.").

3.      Despite its assertion to the contrary, BLX is not entitled to compensation from Lehman for the costs of reproducing the Spreadsheets.  Neither Rule 2004 nor the Rule 2004 Order states that a bankrupt entity must reimburse a witness for the costs of responding to a Rule 2004 subpoena, and in fact, that kind of requirement would be inconsistent with the purposes of Rule 2004 discovery.  Not surprisingly, BLX has not cited any authority directing a debtor to reimburse the recipient of a Rule 2004 subpoena for the costs of complying with the subpoena.  And indeed, Lehman has never been required to compensate the recipient of a Rule 2004 subpoena for the expense in with complying with the subpoena.

4.      Further, even if Rule 45 of the Federal Rules of Civil Procedure applied here, it would not authorize reimbursement in this case.  Although Rule 45 requires a party serving a Rule 45 subpoena to avoid unduly burdening the witness, Lehman has avoided unduly burdening BLX.  Moreover, BLX would not be entitled to cost-shifting under the three-factor test that courts have used to determine whether a witness should bear the costs of responding to a Rule 45 subpoena:  (i) "'whether the nonparty actually has an interest in the outcome of the case,'" (ii) "'whether the nonparty can more readily bear the costs than the requesting party,'" and (iii) "'whether the litigation is of public importance.'"  *In re Honeywell Int'l Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (citation omitted).

5.      Each of these factors weighs heavily against cost-shifting in this case.  BLX is not a disinterested party; to the contrary, it acted as a paid financial advisor to Idaho Housing in the latter's swaps with Lehman.  In addition, BLX can much more readily bear the costs of complying with the Subpoena than Lehman, as Lehman is a bankrupt entity.  Finally, Lehman has numerous creditors located throughout the United States and the world; if Lehman were directed to reimburse BLX, these creditors (which have already lost significant amounts of

money in this bankruptcy case) would be further harmed.  Thus, the public interest factor also militates against Lehman's reimbursing BLX in this case.

6.      In any event, BLX has waived its right to seek costs and fees from Lehman by failing to move for a protective order within the time period set forth in the Rule 2004 Order. The Rule 2004 Order states that if "Debtor and an objecting witness cannot resolve the objection within ten (10) days following the date such objection is served on the Debtor," the objecting witness "shall . . . file the objection with the Court and promptly schedule a hearing."  (Rule 2004 Order at 2-3.)  To date, BLX has failed to move the Court for relief under the Rule 2004 Order.

7.      For all these reasons, BLX should be directed to promptly reproduce the Spreadsheets in native file format, without reimbursement from Lehman.

## STATEMENT OF FACTS

8.      BLX is registered as an investment advisor with the United States Securities and Exchange Commission.  (Ex. A at 1.)  BLX was founded in 2000 and is affiliated with Orrick, Herrington & Sutcliffe LLP, BLX's legal counsel.  (*Id.* at 4, 8.)  BLX has over $1 billion in assets under management.  (*Id.* at 5.)  BLX has served as a paid financial advisor to a number of Lehman swap counterparties, including Idaho Housing.  (Kellert Decl. ¶ 2.)

9.      On or about May 13, 2011, Lehman served the Subpoena on BLX.  (Kellert Dec. ¶ 3; Ex. B.)  The Subpoena seeks production of electronic documents concerning, among other things, the valuation of the Lehman-Idaho Housing swaps.  (Ex. B.)

10.     On July 13, 2011, BLX served written objections and responses to the Subpoena. (Kellert Decl. ¶ 4; Ex. C.)  On July 21, 2011, Lehman and BLX held a meet-and-confer to discuss these objections and responses.  (Kellert Decl. ¶ 5.)  BLX stated that it would comply

with the Subpoena if (i) BLX and Lehman signed a confidentiality agreement and (ii) BLX were permitted to produce the Spreadsheets in paper or PDF form, so that any allegedly proprietary information in the Spreadsheets would not be visible to Lehman. (*Id.*) BLX also requested reimbursement for the costs of producing documents responsive to the Subpoena. (*Id.*) Lehman rejected this request. (*Id.*)

11.     On July 22, 2011, Lehman sent BLX a draft confidentiality agreement. (Kellert Decl. ¶ 6; Ex. D.) In response, BLX stated: "This looks acceptable, presuming that we can produce in paper form the excel spreadsheets we discussed." (Ex. E.)

12.     On the afternoon of July 25, 2011, Lehman sent BLX an email summarizing the July 21, 2011 meet-and-confer. (Kellert Decl. ¶ 7; Ex. F.) Lehman stated: "[Lehman] would like the documents in native file format; however, [Lehman] is willing to accept a paper or .pdf production *provided that the spreadsheets are readable* (for example, that there are not an excessive number of tabs or columns)." (*Id.* (emphasis added).)

13.     Later that afternoon, BLX replied: "Given your willingness to accept paper production of excel files, we are proceeding with that production and expect to have the documents ready to produce at the end of next week. The documents have been sent to an outside vendor for printing." (Kellert Decl. ¶ 8; Ex. G.) Accordingly, BLX proceeded to produce the Spreadsheets to Lehman in paper form, even though Lehman did not agree to reimburse BLX for the cost of this production.

14.     On July 26, 2011, the parties signed the Stipulation Governing the Production of Confidential Materials (the "Stipulation"), which protects BLX's allegedly proprietary information. (Kellert Decl. ¶ 9; Ex. H.) The Stipulation states that documents that contain "a trade secret or other confidential research, development or sensitive commercial information,"

"information subject by law or by contract to a legally protected right of privacy," or "information which Bond Logistix is legally obligated to keep confidential, as reasonably determined by Bond Logistix" will be designated and stamped CONFIDENTIAL and disclosed to a limited universe of parties listed in paragraph 5 of the Stipulation. (Ex. H ¶¶ 4-5.)

15. On the evening of Friday, August 5, 2011, BLX produced 51 boxes of documents containing the Spreadsheets, nearly all of which are unreadable. (Kellert Decl. ¶ 10.) Specifically, most of the Spreadsheets are hundreds of pages long. (*Id.*) Moreover, since a majority of these pages does not contain headings, it is practically impossible to understand most of the Spreadsheets. (*Id.*) In addition, many of these pages are missing numbers and instead contain strings of incomprehensible characters (*e.g.*, "#"; "#N/A"; or "#VALUE!"). (*Id.*) And some of these pages contain graphs that are cut off. (*Id.*) Even if one could figure out how to put the Spreadsheets together, some of the documents would take up hundreds of square feet. (*Id.*)

16. In late August 2011, Lehman explained to BLX that the Spreadsheets were unreadable and therefore requested that BLX produce these documents in native file format. (Kellert Decl. ¶ 11.) Lehman suggested two cost-effective ways for BLX to produce the Spreadsheets in native file format without disclosing BLX's allegedly proprietary information, though the Stipulation already protects such information: (i) BLX could password protect the calculations in the Excel Spreadsheets and then produce the password-protected Excel Spreadsheets or (ii) BLX could copy the numbers and headings from the Excel Spreadsheets and then paste the numbers and headings into new Excel spreadsheets, so that only the numbers and headings would be visible to Lehman. (*Id.*; Ex. I.)

17.     Although BLX initially stated that it "will look into the options you [Lehman] outline" (Ex. J), it later stated that it would not consider these options unless Lehman agreed to compensate BLX for the costs of reproducing the Spreadsheets in native file format.  (Kellert Decl. ¶ 12.)  To date, BLX has still not produced its valuation work in native file format.  (*Id.* ¶ 13.)

## ARGUMENT

## I.     BLX IS OBLIGATED TO REPRODUCE THE SPREADSHEETS IN NATIVE FILE FORMAT

18.     BLX is required to reproduce the Spreadsheets in native file format.  Rule 2004 authorizes the Court to order discovery from "any entity" concerning "any matter which may affect the administration of the debtor's estate."  Fed. R. Bankr. P. 2004(a)-(b).  "Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs."  *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991).  The scope of matters subject to discovery under Rule 2004 is "very broad" and "is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards.  It can be legitimately compared to a fishing expedition."  *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).

19.     Here, the Spreadsheets are responsive to the Subpoena and most of them are unreadable in paper form.  Accordingly, BLX should reproduce the Spreadsheets in native file format, consistently with the purposes of Rule 2004.  Given BLX's failure to produce the Spreadsheets in native file form, the relief requested herein is warranted.  *See Honeywell*, 230 F.R.D. at 297 (ordering nonparty to reproduce documents in electronic form so that document attachments could be read).

## II.    BLX HAS NO RIGHT TO REIMBURSEMENT FROM LEHMAN

19.    Neither Rule 2004 nor the Rule 2004 Order requires a bankrupt entity to reimburse a witness for the costs of complying with a Rule 2004 subpoena. Not surprisingly, BLX has failed to furnish Debtors with any case law standing for the proposition that a debtor is required to compensate a witness for complying with a Rule 2004 subpoena. Indeed, the rule that BLX advocates here would deter a bankrupt entity from seeking Rule 2004 discovery—an outcome that would be inconsistent with the purposes of Rule 2004. *See In re Ionosphere Clubs Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), *aff'd*, 17 F.3d 600 (2nd Cir. 1994).

20.    Further, the Rule 2004 Order details the procedures for serving and responding to Rule 2004 subpoenas, yet it does not require Lehman to reimburse any witness for anything. In fact, Lehman has never been ordered to compensate a witness under Rule 2004, despite the numerous Rule 2004 subpoenas that it has served.

21.    Nor would BLX be entitled to reimbursement from Lehman under Rule 45, even if the rule applied to this case. Although Rule 45 states that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" (Fed. R. Civ. P. 45(c)(1)), Lehman has repeatedly sought to avoid imposing an undue burden on BLX. Indeed, Lehman originally requested the Spreadsheets in native file format and agreed to accept a (readable) paper production from BLX only after *BLX* insisted upon producing the Spreadsheets in that manner.[2]  And after BLX produced the Spreadsheets in paper form, Lehman suggested that BLX employ one of two cost-

---

[2] It is generally far less expensive to produce documents in native file format than in paper form.

effective methods to reproduce the Spreadsheets in native file format, without providing Lehman any allegedly proprietary information in the Spreadsheets:  (i) password protect the calculations in the Excel Spreadsheets or (ii) copy and paste the Excel Spreadsheets into new Excel spreadsheets without the calculations.  BLX rejected these proposals without explanation, fatally undermining its claim of undue burden.

22.    Moreover, although Rule 45 requires a court to protect a witness from "significant expense" when complying with a Rule 45 subpoena, (Fed. R. Civ. P. 45(c)(2)), the expenses at issue here are modest.  In addition, BLX is not entitled to reimbursement under the three-part test for reimbursement under Rule 45:  (i) "'whether the nonparty actually has an interest in the outcome of the case,'" (ii) "'whether the nonparty can more readily bear the costs than the requesting party,'" and (iii) "'whether the litigation is of public importance.'"  *Honeywell*, 230 F.R.D. at 303 (citation omitted).

23.    These factors weigh heavily against cost-shifting in this case.  BLX is far from "the classic disinterested non-party"; rather, it served as a paid financial adviser to Idaho Housing in connection with the swaps that are the subject of Lehman's investigation of Idaho Housing.  *See id.* at 303.  Accordingly, BLX knew (or should have known) that it could be ordered to provide discovery relating to Idaho Housing's swaps with Lehman.  *See, e.g.*, *id.* at 296, 303 (denying reimbursement in part because it was "not a classic disinterested non-party"; nonparty served as auditor to defendant in a case concerning alleged "accounting machinations"); *Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*, No. 91 Civ. 2287 (PKL), 1995 WL 6259, at *7 (S.D.N.Y. Jan. 9, 1995) (denying reimbursement:  "Morgan Stanley was not a mere bystander to the transactions at issue; it provided advice about them for which it received compensation.  Under these circumstances, Morgan Stanley could reasonably anticipate

continuing involvement, whether as a litigant or as a nonparty."); *see also The Tutor-Saliba Corp. v. U.S.*, 32 Fed. Cl. 609, 610 (Fed. Cl. Jan. 6, 1995) (denying sanctions under Rule 45(c)(1) of the Federal Rules of Civil Procedure against party serving subpoena in part because "unlike many nonparties, EBI was substantially involved in the underlying transaction and could have anticipated that the contract on which it was a subcontractor might, given its size, reasonably spawn some litigation, and discovery of EBI"); *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) ("In determining whether the requesting party should be required to bear the costs of production, a number of courts have looked to whether the non-party was substantially involved in the underlying transaction and could have anticipated that such transaction could potentially spawn litigation or discovery.").

24.     Further, BLX is far better suited to bear the costs of production than Lehman, a bankrupt entity.  Finally, to the extent that this factor applies here, the public interest weighs against cost-shifting, in that Lehman has many thousands of creditors that will be forced to bear the burden of reimbursement.  Indeed, ordering cost-shifting here will almost certainly open a huge floodgate whereby all witnesses will demand reimbursement for responding to Rule 2004 subpoenas.

25.     In any event, under the plain terms of the Rule 2004 Order, BLX is not now permitted to seek reimbursement from Lehman.  The Rule 2004 Order states:

> if the Debtor and an objecting witness cannot resolve the objection within ten (10) days following the date such objection is served on the Debtor (or such later date agreed to by the Debtor and the witness), the witness shall either (i) produce responsive documents in accordance with this Order or (ii) file the objection with the Court and promptly schedule a hearing.

(Rule 2004 Order at 2-3.)  To date, BLX has failed to move for a protective order compelling reimbursement from Lehman; hence, BLX has waived any alleged right to reimbursement from Lehman.

## CONCLUSION

26.    Lehman respectfully submits that the Court should enter an order compelling BLX to fully comply with the Subpoena and produce the approximately 200 Spreadsheets in native file format (*i.e.*, as Excel spreadsheets) within 20 business days of entry of an order granting this relief, without compensation from Lehman.

## NOTICE

27.    No trustee has been appointed in these chapter 11 cases.  Debtors have served notice of this motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases (Docket No. 9635).  Debtors submit that no other or further notice need be provided.

28.    Debtors have not made any previous request for the relief sought herein to this or any other Court.

WHEREFORE Debtors respectfully request that this Court grant the relief requested herein and such other and further relief as is just.

Dated:  January 24, 2012
       New York, New York

By: /s/ Richard W. Slack
     Richard W. Slack
     Adam M. Schloss

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
In re                                                                                  :          **Chapter 11 Case No.**
                                                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :          **08-13555 (JMP)**
                                                                                       :
                                **Debtors.**                     :          **(Jointly Administered)**
--------------------------------------------------------------------x

## DECLARATION OF RAQUEL KELLERT

I, RAQUEL KELLERT, declare under penalty of perjury that the following is true and

correct:

1.        I am an associate at Weil, Gotshal & Manges LLP, counsel for debtors Lehman

Brothers Holdings Inc., *et al.* ("Lehman" or "Debtors").  I submit this declaration in support of

Debtors' Motion to Compel Compliance with Subpoena *Duces Tecum*.  The facts set forth below

are based on my personal knowledge and are true to the best of my knowledge, information, and

belief.

2.        Based on Lehman's records, Bond Logistix LLC ("BLX") was a paid financial

advisor to a number of Lehman swap counterparties, including Idaho Housing Finance

Association ("Idaho Housing").  Lehman is investigating Idaho Housing's swaps with Lehman

and the amounts due thereunder.

3.        On or about May 13, 2011, Lehman served the subpoena *duces tecum* (the

"Subpoena") on BLX.  Attached hereto as Exhibit B is a true and correct copy of the Subpoena.

4.        On July 13, 2011, BLX served objections and responses to the Subpoena (the

"Objections and Responses").  Attached hereto as Exhibit C is a true and correct copy of the

Objections and Responses.

5.       On July 21, 2011, counsel for Lehman and BLX discussed the Objections and Responses.  BLX stated that it would produce documents responsive to the Subpoena if (i) Lehman and BLX signed a confidentiality agreement and (ii) BLX were permitted to produce approximately 200 valuation spreadsheets responsive to the Subpoena (the "Spreadsheets") in paper or PDF form, so that any allegedly proprietary information in the Spreadsheets would not be visible to Lehman.  In addition, BLX requested that Lehman reimburse it for the costs of complying with the Subpoena.  Lehman declined this request.

6.       On July 22, 2011, I emailed William Molinski, counsel for BLX, a draft confidentiality agreement.  Attached hereto as Exhibit D is a true and correct copy of this email and attachment.  Later that day, Mr. Molinski responded:  "This looks acceptable, presuming that we can produce in paper form the excel spreadsheets we discussed."  Attached hereto as Exhibit E is a true and correct copy this email.

7.       On July 25, 2011, Lehman sent BLX an email summarizing the July 21, 2011 meet-and-confer.  Lehman stated:  "[Lehman] would like the documents in native file format; however, [Lehman] is willing to accept a paper or .pdf production provided that the spreadsheets are readable (for example, that there are not an excessive number of tabs or columns)."  Attached hereto as Exhibit F is a true and correct copy of this email.

8.       In response, BLX sent Lehman an email that stated:  "Given your willingness to accept paper production of excel files, we are proceeding with that production and expect to have the documents ready to produce at the end of next week.  The documents have been sent to an outside vendor for printing."  Attached hereto as Exhibit G is a true and correct copy of this email.

9.      On July 26, 2011, Lehman and BLX executed the Stipulation Governing the Production of Confidential Materials (the "Stipulation"), a true and correct copy of which is attached hereto as Exhibit H.

10.     BLX produced 51 boxes of documents containing the Spreadsheets on the evening of Friday, August 5, 2011.  Most of the Spreadsheets encompass hundreds of pages and most of these pages do not contain any headings, making it practically impossible to put them together or otherwise comprehend the Spreadsheets.  Moreover, numerous pages are missing numbers and instead contain strings of indecipherable characters (*e.g.*, "#"; "#N/A"; or "#VALUE!").  In addition, some pages contain graphs that are cut off.  Even if one could figure out how to put the Spreadsheets together, some of the documents would take up hundreds of square feet.

11.     In late August 2011, Lehman explained to BLX that the Spreadsheets were unreadable and therefore requested that BLX produce these Spreadsheets in native file format.  Lehman suggested two cost-effective ways for BLX to produce the Spreadsheets in native file format without disclosing BLX's allegedly proprietary information.  Although we were skeptical that the Spreadsheets contained any propriety information that the Stipulation could not adequately protect, these suggestions would have added protection for BLX's allegedly proprietary information:   (i) BLX could password protect the calculations in the Excel Spreadsheets and then produce the password-protected Excel Spreadsheets or (ii) BLX could copy the numbers and headings from the Excel Spreadsheets and then paste them into new Excel spreadsheets, so that only the numbers and headings in the new Excel spreadsheets would be visible to Lehman.  Lehman again explained these two options in an email on October 12, 2011, a true and correct copy of which is attached hereto as Exhibit I.

12.    Although BLX initially agreed during a meet-and-confer in late August 2011 and in an email dated October 14, 2011 (a true and correct copy of which is attached hereto as Exhibit J), to consider whether to produce the Spreadsheets in native file format in one of these two ways that Lehman proposed, BLX later refused to consider these options unless Lehman first agreed to compensate BLX for the costs of producing the Spreadsheets.

13.    To date, BLX has not produced the Spreadsheets in any readable format.

14.    Attached hereto as Exhibit A is a true and correct copy of the Form ADV Part 2A, dated March 31, 2011, for BLX Group LLC, obtained from the website of the Securities and Exchange Commission (www.adviserinfo.sec.gov) (last visited January 23, 2012).

Dated:  January 24, 2012
         New York, New York

                                   /s/ Raquel Kellert
                                   RAQUEL KELLERT

# Exhibit A



# BLX Group LLC

777 S. Figueroa St., Suite 3200

Los Angeles, California 90017

213-612-2200

www.BLXGroup.com

March 31, 2011

Form ADV, Part 2A

This Brochure provides information about the qualifications and business practices of BLX Group LLC. If you have any questions about the contents of this Brochure, please contact us at 213-612-2200 or rrobertson@blxgroup.com. The information in this Brochure has not been approved or verified by the United States Securities and Exchange Commission or by any state securities authority. Additional information about BLX Group LLC is also available on the SEC's Website at www.adviserinfo.sec.gov. BLX Group LLC is a registered investment adviser. Registration of an Investment Adviser does not imply any level of skill or training.

**MATERIAL CHANGES**

On October 12, 2010 the United States Securities and Exchange Commission ("SEC") published "Amendments to Form ADV," which amends the disclosure document that we provide to clients as required by SEC Rules.  This Brochure dated March 31, 2011 is prepared according to the SEC's new requirements and rules.  As such, this Document is materially different in structure and requires certain new information that our previous brochure did not require.

On an ongoing basis, this item will discuss only specific material changes that are made to this Brochure and provide BLX clients with a summary of such changes.  We will further provide you with a new Brochure, as necessary, based on changes or new information, at any time, without charge.

Our Brochure may be requested by contacting Rob Robertson at 213-612-2200 or via email at rrobertson@blxgroup.com.  Additionally, our Brochure is available on our Website at www.blxgroup.com, also free of charge.

Additional information about BLX Group LLC is also available via the SEC's Website at www.adviserinfo.sec.gov.  The SEC's Website also provides information about any persons affiliated with BLX Group LLC, who are registered or are required to be registered, as investment adviser representatives of BLX Group LLC.

# Table of Contents

COVER PAGE ............................................................................................................................... 1

MATERIAL CHANGES ............................................................................................................... 2

TABLE OF CONTENTS ............................................................................................................... 3

ADVISORY BUSINESS ............................................................................................................... 4

FEES AND COMPENSATION ..................................................................................................... 5

PERFORMANCE-BASED FEES AND SIDE-BY-SIDE MANAGEMENT .................................. 6

TYPES OF CLIENTS..................................................................................................................... 6

METHODS OF ANALYSIS, INVESTMENT STRATEGIES AND RISK OF LOSS ..................... 6

DISCIPLINARY INFORMATION ................................................................................................ 8

OTHER FINANCIAL INDUSTRY ACTIVITIES AND AFFILIATIONS ...................................... 8

CODE OF ETHICS, PARTICIPATION OR INTEREST IN CLIENT TRANSACTIONS AND PERSONAL
TRADING ..................................................................................................................................... 8

BROKERAGE PRACTICES ........................................................................................................ 9

REVIEW OF ACCOUNTS............................................................................................................10

CLIENT REFERRALS AND OTHER COMPENSATION ...........................................................10

CUSTODY.....................................................................................................................................10

INVESTMENT DISCRETION......................................................................................................11

VOTING CLIENT SECURITIES .................................................................................................11

FINANCIAL INFORMATION .....................................................................................................11

## ADVISORY BUSINESS

### BLX Overview

BLX Group LLC ("BLX") offers tax compliance, consulting, financial advisory and investment advisory services primarily to state and local governments and other issuers of tax-exempt debt obligations. The services are managed in three business groups: 1) Investment Services, which includes investment advisory services and the business of Fund Services Advisors, Inc.("FSA"), a limited business broker-dealer under common control with BLX.   2) Advisory Services, including cash flow modeling, financing strategies and other financial advisory services related to municipal debt issuance, swap advisory, monitoring and reporting services, and bidding services for guaranteed investment contracts and similar agreements, and 3) Compliance Services including arbitrage rebate analysis and reporting, post issuance compliance services and program administration services.  Fees for services not subject to an investment advisory agreement are separately negotiated with individual clients and are unrelated to fees associated with BLX's investment advisory services**.**

BLX was incorporated as Bond Logistix LLC in 2000 as a subsidiary of the law firm Orrick, Herrington & Sutcliffe LLP ("Orrick").  From 1989 until 2000, the business operated as the Financial Services Group within Orrick focused on providing arbitrage rebate analysis.  In 2010, the corporate name was changed to BLX Group LLC.  Orrick continues to be the sole owner of BLX Group LLC.  The business activities of BLX are described in more detail below.

### Investment Services

BLX provides discretionary and non-discretionary investment advisory and management services to its investment management clients. These services are generally limited to fixed income debt instruments such as U.S. Agency or Treasury bills, notes and bonds, guaranteed investment contracts, repurchase agreements, commercial paper, certificates of deposit, money market funds, and local government investment pools.  BLX owns FSA, a limited business broker-dealer which markets money market funds to municipal entities and other issuers of tax-exempt debt obligations.

### Structured Products

BLX provides advice and bidding agent services with regard to Structured Products that are routinely bid out to counter-parties, including or commonly known as: i) Investment Agreements, ii) Bank Investment Contracts; iii) Guaranteed Investment Contracts; iv) Flexible-Term Repurchase Agreements; v) Forward Delivery Agreements; vi) Forward Purchase and Sale Agreements.

### Advisory Services

BLX Group LLC ("BLX") provides consulting and financial advisory services associated with municipal finance transactions, including structuring of municipal bond transactions and other financings, bond pricing advisory services, and derivative advisory, monitoring and reporting services.  Fees for these services are separately negotiated with individual clients and are unrelated to fees associated with BLX's investment advisory services.

### Compliance Services:

BLX provides consulting services to municipalities and other tax-exempt debt issuers involving areas such as arbitrage rebate compliance services, continuing disclosure services, and general post-issuance technical and administrative services. Fees for these services are separately negotiated with individual clients and are unrelated to fees associated with BLX's investment advisory services.

### Arbitrage Rebate Compliance Services

BLX provides ongoing comprehensive arbitrage rebate compliance reporting and consulting services to approximately 1,000 municipalities. These services assist state and local governments with their efforts to comply with the federal arbitrage restrictions, thereby protecting the tax-exempt status of its debt instruments. Federal tax law prohibits issuers of tax-exempt debt instruments from retaining any investment or "arbitrage" profit from investments purchased with monies derived from such instruments. Therefore, under complex regulations provided by the U.S. Treasury and enforced by the Internal Revenue Service, issuers of tax-exempt debt instruments (i.e., municipalities) must rebate any arbitrage profit as a condition of maintaining the tax-exempt status of such instruments. In certain cases, we provide these services on a subcontracting basis for certain clients of US Bank Trust Company and BNY Western Trust Company (each a "Trust Bank".). In these cases, the aggregate fee charged by BLX and the Trust Bank is equal to the fee charged to the client if it engages BLX directly (i.e. the client does not pay a higher fee for engaging the Trust Bank).

### SEC Continuing Disclosure Service

SEC Rule 15c2-12 requires that underwriters cannot underwrite municipal debt unless the issuer of such debt contractually agrees to meet certain public disclosure requirements. BLX provides monitoring, reporting, and dissemination services which allows municipal debt issuers to meet disclosure requirements on a timely, complete, and efficient basis.

### Post Issuance Technical/Administrative Services

BLX provides a variety of technical and administrative post issuance services to municipal issuers, investment bankers, law firms, corporate trustees, and financial advisers. These services include complex debt restructuring, cash flow analyses, private use analysis and miscellaneous reporting services.

### Municipal Advisor Registration

Certain BLX business activities described above constitute "municipal advisory" activities, as that term is defined by the Dodd Frank Wall Street Reform and Consumer Protection Act of 2010. Therefore, in 2010, BLX registered with the Securities and Exchange Commission ("SEC") and Municipal Securities Rulemaking Board ("MSRB") as a municipal advisor.

### Assets Under Management

As of December 31, 2010, BLX Group managed approximately $1.13 billion in assets. Of this number, approximately $837 million is managed on a discretionary basis and $297 million on a non-discretionary basis.

## FEES AND COMPENSATION

The specific manner in which investment management and advisory fees are charged by BLX Group is established in a client's written agreement with BLX. Fees associated with the BLX Group Advisory Program are negotiated on a case by case basis. However, the range is generally from 1/100ths (.01%) to 25/100ths (.25%) of one percent (1%) of the assets subject to BLX's analysis. From time to time, BLX may negotiate a fixed fee ($500 - $1,000,000)

and/or provide such services on a per hour basis ($200.00-$700.00/hr) depending upon the complexity, as well as other factors associated with the service.

BLX's fee shall be assessed and payable quarterly or monthly, in arrears. Fees are calculated by multiplying the average market or book value of assets under management by the annual fee (as a percentage of assets under management) times the number of calendar days in the quarter and dividing by 365.  Accounts opened in mid-quarter will be assessed a pro-rated management fee.  Accounts terminated during a calendar quarter will be charged a prorated fee.

The relationship between BLX and its investment management clients may be terminated by either party upon 30 days written notice.  Notwithstanding the above, if the appropriate disclosure statement was not delivered to an investment advisory client at least 48 hours prior to the client entering into any written or oral advisory contract with this investment adviser, then the client has the right to terminate the contract, without a penalty, within five business days after entering into the contract. Upon termination of any account, any prepaid, unearned fees will be promptly refunded and any earned unpaid fees will be due and payable.

BLX's fees are exclusive of brokerage commissions, transaction fees, and other related costs and expenses which shall be incurred by the client.  Clients may incur certain charges imposed by custodians, brokers, and other third parties, such as fees charged by managers, custodial fees, deferred sales charges, odd-lot differentials, transfer taxes, wire transfer and electronic fund fees, and other fees and taxes on brokerage accounts and securities transactions.  Mutual funds and exchange traded funds also charge internal management fees, which are disclosed in a fund's prospectus.  Such charges, fees and commissions are exclusive of and in addition to BLX's fee, and BLX shall not receive any portion of these commissions, fees, and costs.

To the extent mutual funds are selected by BLX to fill components of the overall investment strategy, BLX will endeavor to purchase such mutual fund shares at Net Asset Value ("NAV") or no load. Thus, the client will not be subject to any initial distribution cost (front-end sales charge) or redemption fee (back-end sales charge), if any, that might normally be incurred upon the purchase or sale of mutual fund shares.  FSA, BLX's wholly-owned broker-dealer subsidiary, may receive Rule 12b-1 fees from the issuers of such mutual funds and will credit the 12b-1 fees earned against any management fees to avoid any form of double charging on the balances.

## PERFORMANCE-BASED FEES AND SIDE-BY-SIDE MANAGEMENT

BLX does not charge any performance-based fees (fees based on a share of capital gains or capital appreciation of the assets of a client).

## TYPES OF CLIENTS

BLX investment advisory clients include municipal governments, other municipal entities and non-profit corporations or foundations, including hospitals, schools, colleges, museums and cultural .  The firm does not maintain any strict minimums to open or maintain an account, but evaluates accounts on a case-by-case basis.

## METHODS OF ANALYSIS, INVESTMENT STRATEGIES AND RISK OF LOSS

Operating within the constraints of each client's unique investment policy or other regulatory guidelines, BLX conducts an investment strategy that seeks to generate market or better rates of return given the unique objectives, liquidity needs, preferences, and risk tolerances of each client.

BLX's investment process begins with an analysis of the economic environment and credit market conditions, focusing on potential changes to growth, inflation expectations, monetary and fiscal policy, and overall credit conditions.  These ongoing analyses result in the development of an economic perspective which serves as the

foundation for all subsequent analysis and provides the framework (within appropriate client-specific guidelines) for our yield curve strategies, duration management, sector/quality allocation, and individual security selection.

**Yield Curve Strategies**:  Like the general level of interest rates, yield spreads between maturity points change as the shape and slope of the yield curve adjusts with market conditions and expectations.  Yield curve analysis enables BLX to identify opportunities across the term structure of interest rates and allocate investments to those areas of the yield curve (within client-specific constraints), which afford the greatest value and potential for return in the prevailing and anticipated market environment.

**Duration:**  Based on each client's cash flow requirements and tolerance for interest rate risk, BLX works to establish a target duration for the portfolio. The most appropriate target duration is that which represents the best balance of risk and reward given each client's unique characteristics, asset-liability profile, and tolerance for risk.  Starting with the target duration, portfolio returns can be enhanced by making subtle and prudent changes to the duration relative to the interest rate environment and outlook.  In short, reducing portfolio duration in a rising interest rate environment can reduce interest rate risk, mitigate the related depreciation of market value, and provide liquidity with which to take advantage of the higher interest rate environment.  Conversely, extending portfolio duration in a declining interest rate environment can reduce reinvestment rate risk and maximize the market value appreciation associated with falling interest rates.  Importantly, BLX believes that long-term performance is best enhanced by making only subtle duration adjustments relative to the target or benchmark and avoiding outright interest rate speculation.

**Sector/quality spreads:**  Within the context of an appropriately diversified portfolio, the allocation of assets to those sectors and credit categories which afford relative-value opportunities can add significantly to portfolio performance.  BLX analyzes the relative movement in yield relationships to identify pricing inefficiencies and relative value opportunities.  Fundamental analysis is utilized to compare the current risk in the economy to the relative yield premium, or spread, received by holding securities other than U.S. Treasury securities.  Value opportunities are then identified by comparing such yield premiums relative to historical relationships.   In general, and within investment policy and other prudent parameters, overweighting those sectors which afford greater relative value can enhance portfolio return over time.

**Issue selection:**  Individual security selection is based on the assessment of relative value and the analysis of each securities contribution to total portfolio risk and potential return.  BLX recommends aggressively "shopping" for all securities to identify individual securities which provide the opportunity to add incremental yield relative to the market while controlling overall portfolio risks.

The development of a fixed income investment strategy is a dynamic process which entails the constant surveillance and analysis of economic trends, credit and market conditions, and client circumstances.  This ongoing analysis ensures that BLX's investment strategies remain sufficiently flexible to take advantage of changing market conditions and relative value opportunities.  In addition, and perhaps most importantly, such oversight ensures that the portfolio reflects an appropriate balance of safety, liquidity, and expected return throughout market cycles.  To formalize this process and control portfolio risk and volatility, BLX conducts a full range of security and portfolio analyses.  These analyses include the simulation or "stress-testing" of current and alternative portfolio structures across a range of potential interest rate scenarios (i.e., static, parallel and non-parallel shifts, and changing sector/quality spreads).

### *Risk of Loss*

All investment programs have certain risks that are borne by the investor.  While BLX's investment approach seeks to control portfolio risks and volatility, as with all investments, clients face investment risks including the following: Loss of Principal Risk, Interest-rate Risk, Market Risk, Inflation Risk, Currency Risk, Reinvestment Risk, Business

Risk, Liquidity Risk, and Financial Risk. Clients should be aware that investing in securities involves risk of loss that clients should be prepared to bear.

## DISCIPLINARY INFORMATION

Registered investment advisers are required to disclose all material facts regarding any legal or disciplinary events that would be material to your evaluation of BLX or the integrity of BLX's management. BLX Group LLC has no information applicable to this Item. Neither BLX nor any of its employees have been subject to regulatory disciplinary action.

## OTHER FINANCIAL INDUSTRY ACTIVITIES AND AFFILIATIONS

### *Corporate Affiliations*

**Fund Services Advisors, Inc. ("FSA")** FSA is a registered broker-dealer and member of FINRA. FSA is under common ownership and control as BLX. FSA is a limited business broker-dealer that offers shares of money market mutual funds. Certain BLX employees and members of management are also registered representatives of FSA and some of those employees may receive commission-based compensation directly from FSA.

**Orrick, Herrington & Sutcliffe, LLP ("Orrick")** – the firm of Orrick wholly owns BLX. BLX and Orrick maintain an arrangement wherein complementary services may be referred to the other. Any services utilized by the other will be fully disclosed and consented to in writing by the client. Representatives of BLX may also be employees of Orrick. Orrick provides office space and certain administrative, financial and legal services to BLX pursuant to service agreements between the two firms. While these related entities and/or their representatives may refer their customers to each other for related services, neither will be compensated above their usual respective fees. BLX's management reports to a management committee consisting of three Orrick partners. These partners are responsible for monitoring and advising BLX on its risk management and operating procedures to ensure that the highest ethical standards are maintained in all of BLX's business activities.

## CODE OF ETHICS, PARTICIPATION OR INTEREST IN CLIENT TRANSACTIONS AND PERSONAL TRADING

BLX maintains a policy of strict compliance with the highest standards of ethical business conduct and the provisions of applicable laws federal securities laws, including rules and regulations promulgated by the Securities and Exchange Commission. BLX has adopted a Code of Business Conduct and Ethics ("Code of Ethics") for all supervised persons of the firm describing its high standard of business conduct and fiduciary duty to its clients. This Code of Ethics applies to each employee of the Company. It is designed to ensure compliance with legal requirements and the Company's standards of business conduct. The Code of Ethics includes provisions relating to expected standards of conduct, ethical business practices, protection of proprietary and confidential information, managing real or potential conflicts of interest, and prohibition against insider trading. All supervised persons at BLX must sign an acknowledgement, acceptance, and understanding of the terms of the Code of Ethics, annually.

BLX's Code of Ethics and Written Supervisory Procedures are designed to reasonably ensure that securities transactions by BLX employees are consistent with BLX's fiduciary duty to its clients and to ensure compliance with legal requirements and BLX's standards of business conduct. The Code of Ethics and our Written Supervisory Procedures prohibit employees from trading for employee-related accounts based on information learned from customers and require transaction confirmation and quarterly reporting of all personal securities transactions.

BLX does not trade or invest in securities for its own account or for the accounts of employees, managers or related persons of the firm.

A written copy of BLX's Code of Ethics is available upon request by contacting Rob Robertson at 213-612-2200 or rrobertson@blxgroup.com.

## BROKERAGE PRACTICES

It is BLX's duty to seek the best overall execution of transactions for client accounts consistent with the firm's judgment as to the business qualifications of the various broker-dealers with which BLX may do business. In selecting broker-dealers to effect securities transactions for clients, BLX will select broker-dealers based on its consideration of the broker's financial soundness, the broker's ability to effectively and efficiently execute, report, clear and settle the order, and accurately communicate with BLX's portfolio management team. BLX's approach to seeking best execution focuses on consideration of explicit commission costs or spreads as well as on critically important factors such as minimizing market impact and price movements and achieving the firm's overall investment goals. BLX strives to execute each client's securities transactions in such a manner that the client's total costs or proceeds in each transaction are the most favorable under the circumstances. Accordingly, orders to buy or sell fixed income securities are placed on a competitive basis with a reasonable attempt made to obtain at least three competitive bids or offers. While the majority of transactions are executed in accordance with this competitive process, exceptions may include: (1) securities for which there are only one or two market makers; (2) block purchases considered relatively large; (3) swaps, a simultaneous sale of one security and purchase of another in substantially equal amounts for the same account intended to take advantage of an aberration in a spread relationships; (4) purchases of fixed income securities for which more than one offering of the same issue is unobtainable. In determining the reasonableness of such offers, the portfolio manager will consider comparisons between the bond being offered and bonds with similar characteristics trading in the market at the time. Comparisons are made based on credit quality, name, issue size, and structure (e.g. coupon, and maturity, and call/put options).

BLX is not currently a party to any soft dollar arrangements whereby an executing broker-dealer provides or purchase on BLX's behalf investment research materials or brokerage-related services known as "soft dollar" products or services (such as economic and market information, portfolio strategy advice, research conferences, periodical subscription fees, performance measurement data, online pricing, news wire charges, quotation services, computer hardware and software) in exchange for BLX directing trade executions to that broker-dealer. BLX's only consideration in the selection of broker-dealers is achieving the most favorable execution for our clients.

BLX does not use client brokerage to compensate or otherwise reward brokers for client referrals.

BLX does not routinely recommend, request, or require that clients direct it to execute transactions through a specified broker-dealer.

In some instances, clients may direct BLX to use a specified broker-dealer or list of broker-dealers for portfolio transactions in their account. In these cases, BLX is unable to negotiate commission rates or spreads, obtain volume discounts, or select broker-dealers based upon the best price and execution for the transaction. A client that directs BLX to use a particular broker-dealer or list may pay higher transaction costs or receive less favorable pricing that would have otherwise been the case had it not designated the broker-dealer.

When possible, BLX seeks to aggregate the purchase and sale of securities for various client accounts (a process known as "bunching" or "blocking" trades) for purposes of seeking better execution in terms of both timing and security pricing. Trade allocations are determined prior to execution and are generally applied to all accounts utilizing that particular strategy, taking into consideration client restrictions, instructions and individual needs. BLX, when rebalancing individual accounts, may or may not have an opportunity to aggregate or "bunch" trades; thus there may be disparity in pricing among clients.

## REVIEW OF ACCOUNTS

Client accounts are monitored on a systematic basis, and each account is reviewed at least monthly. Notwithstanding the above, more active accounts and larger accounts may be reviewed on a daily basis or other more frequent interval. With respect to account performance, BLX reviews each account on a monthly basis, and compares each investment on a transaction basis to insure that each transaction is: (1) suitable to the respective client's investment objective, (2) meets each client's quality standards. and (3) ensures that their investment objectives are still pertinent to the managed account arrangement. More frequent reviews may be triggered by material changes in variables such as the client's individual circumstances or the market economic or political environment.

The nature and frequency of reports to clients are determined primarily by the particular needs of each client. Generally, clients are issued reports at least monthly, which are generally intended to demonstrate the performance of account assets as well as providing an asset holding summary and contribution/withdrawals for the term. Additionally, the client receives any related brokerage transaction confirmations and monthly custodial statements directly from the relevant broker or custodian.

## CLIENT REFERRALS AND OTHER COMPENSATION

If a client is introduced to BLX by a solicitor, BLX may pay that solicitor a referral fee in accordance with the requirements of Rule 206(4)-3 of the Investment Advisers Act of 1940 and the rules set forth by the respective state jurisdictions. Any such referral fee shall be paid solely from BLX's investment management fee, and shall not result in any additional charge to the client. If the client is introduced to BLX by a solicitor, the solicitor shall provide the client with a copy of BLX's Form ADV Part 2 and a copy of the disclosure statement between BLX and the solicitor containing the items and conditions of the solicitation arrangement, including compensation.

## CUSTODY

BLX does not take possession of client assets or funds at any stage of the investment process. Client assets are required to be held by an independent third party custodian in the name of each client. All security transactions are settled on a delivery-versus-payment basis ("DVP") directly between the broker-dealer and the client custodian.

At such time as the Company maintains possession or custody of client funds or securities, the CCO shall ensure compliance with the restrictions and requirements of the rule. At present, the firm does not have custody of client funds or securities.

Clients should receive at least quarterly statements from the broker-dealer, bank or other qualified custodian that holds and maintains clients' investment assets. BLX Group LLC urges you to carefully review such statements and compare such official custodial records to the account statements that we may provide to you. Our statements may vary from custodial statements based on accounting procedures, reporting dates, or valuation methodologies of certain securities.

## INVESTMENT DISCRETION

BLX will supervise and direct the investments of the client accounts subject to such limitations as the client may impose in writing. BLX, as agent and attorney-in-fact with respect to the client's account, without prior consultation with the client, may, (a) direct the purchase, sell, exchange, conversion, and otherwise trade in stocks, bonds and other securities including money market instruments, and (b) direct the amount of securities purchased, sold, exchanged, and otherwise traded. BLX will allocate brokerage transactions in a manner it believes to be fair and responsible to its clients, and consistent with client objectives. Adhering to a strict formula will not be practicable given the variation in client objectives and guidelines.

## VOTING CLIENT SECURITIES

It is the general policy of BLX to not take any action or render any advice in reference to the voting of proxies for those securities held in all client accounts.

## FINANCIAL INFORMATION

BLX does not have any financial commitments that impair its ability to meet contractual and fiduciary commitments to clients, and has not been the subject of a bankruptcy proceeding.

# Exhibit B

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

<u>Southern</u> _____ DISTRICT OF_____ <u>New York</u>

In re Lehman Brothers Holdings Inc., et al.,

**SUBPOENA FOR RULE 2004 EXAMINATION**

Debtor

Case No. <u>08-13555(JMP)</u> _____

Chapter <u>11</u> _____

To:
Bond Logistix
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below, by an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A Attached Hereto.  A copy of the court order authorizing the examination is also attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

## Documents Requested By Exhibit A Attached Hereto

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | June 13, 2011 at 10am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
|  | May 13, 2011 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard W. Slack, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

FORM 254  Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business In person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the

information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which

the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

2.      "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes, and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form, and includes metadata.  A draft or non-identical copy is a separate Document within the meaning of this term.  The word "including" means including but not limited to.

3.      The terms "Debtor" and "Debtors" mean Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Financial Products Inc. ("LBFP"), Lehman Brothers Derivatives Products Inc. ("LBDP"), or any of their affiliated debtors in the Bankruptcy Case captioned *In re Lehman Brothers Holdings Inc.* (Case No. 08-13555 (JMP)).

4.      "Bond Logistix," "You," and "Your" shall mean Bond Logistix and any person acting on its behalf or under its control, including any of its agents, subsidiaries, affiliates, predecessors, successors, or representatives.

5.      "Client" shall mean any entity set forth in Exhibit 1 hereto, including any person acting on any such entity's behalf or under its control, including any of its agents, subsidiaries, affiliates, predecessors, successors, or representatives, to which You provided financial advisory services in connection with any Applicable Transaction (as defined below) with the Debtors.

6.      The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all Documents that might otherwise be considered to be outside of that scope.

7.      The word "each" shall mean both "each" and "every," and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this request Documents that might otherwise be beyond its scope.

8.      The term "Master Agreement" shall mean the standard form 1987, 1992, and/or 2002 ISDA Master Agreement, and/or any other ISDA Master Agreements, and the schedules thereto entered into by any Client and Debtor.

9.      The term "Assignment Agreement" shall refer to any and all agreements between any Lehman entity and any Client to assign or transfer derivative transactions from one Lehman entity to another Lehman entity.

10.     The term "Calculation Statement" shall mean the correspondence from any Client to Debtor purporting to set forth the Client's calculation statement in connection with any Applicable Transactions (as defined below) and any attachments thereto.

2

11.    The term "Market Quotation" shall have the meaning ascribed to it in the Master Agreement.

12.    The term "Close Out Amount" shall have the meaning ascribed to it in the Master Agreement.

13.    The term "Loss" shall have the meaning ascribed to it in the Master Agreement.

14.    The term "Reference Market-makers" shall have the meaning ascribed to it in the Master Agreement.

15.    The term "Applicable Transaction" means any transaction entered into pursuant to a Master Agreement.

16.    The term "Unpaid Amounts" shall have the meaning ascribed to it in the Master Agreement.

17.    The term "Replacement Transaction" shall mean any transaction entered into by a Client to replace, or establish a hedge in lieu of, any Applicable Transaction, whether or not the terms of such Replacement Transaction are identical to the terms of any Applicable Transaction.

18.    The term "Multi-Party Advice Document" means any Document (a) which sets forth general advice, strategies, counseling, or guidance that You gave to multiple counterparties to swap transactions with Debtor, including counterparties that have terminated transactions with Debtor; or (b) which although sent to one particular counterparty expressly states that advice, strategy, counsel, or guidance was given to any other counterparty.

## GENERAL INSTRUCTIONS

The following General Instructions apply to each request set forth herein.

19.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

20.    You are requested to produce all electronic Documents with Optical Character Recognition ("OCR") text files and in single page TIFF format, including metadata. To the extent that any audio or video recordings responsive to the Requests are in Your possession, custody, or control, You are requested to produce them in audio and/or video files.

21.    If any Document requested herein was formerly in Your possession, custody, or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted, and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

22.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter,

4

email, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute

work product, and (e) identifying the paragraph of this request to which the Document relates.

23.     If a portion of an otherwise responsive Document contains information

subject to a claim of privilege, those portions of the Document subject to the claim of privilege

shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall

be applicable, and the rest of the Document shall be produced.

24.     All Documents are to be produced as kept in the usual course of business

or are to be organized and labeled to correspond with the categories in this request.  The method

for production of each category is to be identified at the time of production.  Documents are to be

produced in full and unexpurgated form.

25.     Each page of each Document should be numbered consecutively.  A

request for a Document shall be deemed to include a request for any and all file folders within

which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or

attachments to the Document in addition to the Document itself.

26.     Documents attached to each other (physically or via electronic mail)

should not be separated.

27.     In producing the requested Documents, even though the requests are

directed to You, furnish all Documents that are within Your possession, custody, or control,

including Documents in the possession of any of Your officers, directors, employees, agents,

attorneys, investigators, accountants, or consultants and not merely such Documents in Your

physical possession.

28.     The requests that follow are to be regarded as continuing.  You are

requested to provide by the way of supplementary compliance herewith, such additional

Documents as You may hereafter obtain, which will augment the Documents now produced in response to the requests below.  Such additional Documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after receipt thereof.

## RELEVANT TIME PERIOD

The relevant time period for each of the following requests is from and including September 12, 2008, through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All engagement letters executed by You in connection with Your work as a financial advisor to any Client, as well as any Documents, including email or memoranda, describing the scope of work to be conducted by You.

REQUEST NO. 2

All Documents concerning the valuation of any Applicable Transactions.

REQUEST NO. 3

All Documents, including but not limited to presentations made to Clients, discussing, containing, or reflecting a description, in whole or in part, of the methodology used or theretofore to be used, to determine value or termination value of any Applicable Transaction, including but not limited to any Documents describing how Market Quotations should be obtained and utilized and how Loss or Close Out Amount may or should be computed.

REQUEST NO. 4

All Documents concerning or documenting any communications between You and any Client or any Client's representatives, advisors, agents, accountants, and counsel concerning Debtors and/or the Applicable Transactions.

REQUEST NO. 5

All Documents concerning or documenting any communications between You and any Reference Market-makers (as that term is defined in the Master Agreement) concerning (i) Your engagement by a counterparty in connection with the Debtors, (ii) the Applicable Transactions, and/or (iii) any Replacement Transactions.

REQUEST NO. 6

All Documents concerning any quotations (executable, indicative, or otherwise) or Replacement Transaction, including, but not limited to, Documents concerning (i) any bid requests and related information circulated to a party from whom quotations (for Market Quotations, Replacement Transactions, or otherwise) were sought, (ii) any responses provided such party, (iii) any consideration paid or received in connection with a Replacement Transaction, (iv) the names of any entity which effectuated a replacement, (v) when any such transaction was effected, and (vi) confirmations, Master Agreements, and all relevant documentation.

REQUEST NO. 7

Documents sufficient to identify all Your personnel who were involved in any Client engagement.

REQUEST NO. 8

All Documents concerning fees and expenses incurred by You in connection with Client engagements, including, but not limited to, invoices, statements of account, bills, and timesheets.

REQUEST NO. 9

All Documents concerning any summit or meeting of financial or swap advisors, whether such summit or meeting took place in a physical location, on-line, or by correspondence, electronic or otherwise, discussing, strategizing, or otherwise concerning, in whole or in part, derivative transactions, Master Agreements, or other derivatives documentation between a Client and a Debtor.

REQUEST NO. 10

All financial statements concerning any Applicable Transactions, including the value thereof.

REQUEST NO. 11

All Documents concerning the negotiation and execution of any Assignment Agreement.

REQUEST NO. 12

All Documents concerning the interpretation of any provision in any Assignment Agreement.

REQUEST NO. 13

All Documents concerning the performance under, or compliance with, any Assignment Agreement.

REQUEST NO. 14

All Multi-Party Advice Documents.

# EXHIBIT 1

IDAHO HOUSING FINANCE ASSOCIATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                 :

In re                              :     Chapter 11 Case No.
                                 :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :     08-13555 (JMP)
                                 :

               Debtors.          :     (Jointly Administered)
                                 :
------------------------------------------------------------x

## ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

4

ORDERED that, this Order is without prejudice to the Debtors' right to

file further motions seeking additional documents and testimony pursuant to Bankruptcy

Rule 2004(a) or any other applicable law.

Dated: New York, New York
     November 23, 2009

                 _s/ James M. Peck_____
                 HONORABLE JAMES M. PECK
                 UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X

IN RE    LEHMAN BROTHERS
            HOLDINGS, INC., et al.
                    Debtor.
-----------------------------------------------X

STATE OF CALIFORNIA        )
                                              S.S.:
COUNTY OF LOS ANGELES  )

Index No. 08-13555

AFFIDAVIT OF SERVICE

        MARIO LOPEZ, being duly sworn, deposes and says that he is over the age of eighteen

years, is an agent of METRO ATTORNEY SERVICE INC., and is not a party to this action.

        That on the 13th day of May, 2011, at approximately 3:01 pm, deponent served a true copy

of the SUBPOENA FOR RULE 2004 EXAMINATION and ORDER GRANTING THE DEBTORS

AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND

AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES upon Bond Logistix at 777

South Figueroa Street, Suite 3200, Los Angeles, California, by personally delivering and leaving the same with

William Robertson, Director of Finance Planning, who informed deponent that he is an agent authorized by

appointment to receive service at that address.

        William Robertson is a white male, approximately 50 years of age, stands approximately 5 feet 10

inches tall, and weighs approximately 190 pounds with brown hair.

_____
MARIO LOPEZ

Sworn to before me this
16th day of May, 2011

_____
NOTARY PUBLIC

Comm exp 12/20/2014

SERGIO GARCIA
COMM. #1918083
Notary Public - California
Los Angeles County
My Comm. Expires Dec. 20, 2014

# Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____ :

In re LEHMAN BROTHERS HOLDINGS INC.,
et al.,                                  :

                                         :

                    Debtor.              :        Case No. 08-13555 (JMP)

                                         :

                                         :        Chapter 11 Case

_____ :

## OBJECTIONS OF NON-PARTY BOND LOGISTIX TO SUBPOENA OF DEBTOR LEHMAN BROTHERS HOLDINGS INC., ET AL.

Pursuant to Federal Rules of Civil Procedure 34 and 45, non-party Bond Logistix ("BLX") hereby objects to Lehman Brothers Holdings Inc.'s ("LBHI") subpoena (the "Subpoena"), to BLX, issued on May 13, 2011:

## GENERAL OBJECTIONS

1.      BLX objects to the Subpoena as overbroad and unduly burdensome on the grounds, and to the extent, that it seeks documents that are not relevant to the claim or defense of any party in the above-captioned case.

2.      BLX objects to the Subpoena on the grounds that it is unduly burdensome and oppressive in that it fails to allow a reasonable time to comply.

3.      BLX objects to all definitions and instructions to the extent they are vague and ambiguous or to the extent they attempt to impose obligations beyond those permitted in the Federal Rules of Civil Procedure, the Court's Local Rules and/or the Judge's Individual Practices.

4.      BLX objects to the definitions of "Assignment Agreement", "Applicable Transaction", and "Replacement Transaction" as vague and ambiguous. The use of these terms in the Subpoena is overbroad and likely to lead to the production of documents that are irrelevant in that they are not reasonably calculated to lead to the discovery of admissible evidence.

5.      BLX objects to the definition of "Bond Logistix," "You," and "Your" as overbroad in that it includes predecessors, successors, affiliates, and other parties over which

BLX has no control.  BLX further objects to the definition of "YOU" and "YOUR" as vague and ambiguous as to "any person acting on its behalf or under its control."

6.      The Subpoena seeks documents relating principally to LBHI and other Lehman entities that are available and should be sought in the first instance from another source that is more convenient, less burdensome, and less expensive: namely, LBHI, Lehman Brothers Special Financing ("LBSF"), Lehman Brothers Financial Products Inc. ("LBFP"), Lehman Brothers Derivatives Products ("LBDP"), or any of their affiliated debtors in the above-captioned bankruptcy case.

7.      BLX  objects to the Subpoena to the extent that it seeks documents or information protected by the attorney-client privilege.

8.      BLX  objects to the Subpoena to the extent that it seeks documents or information that are protected by contractual or confidentiality obligations, absent the entry of an appropriate protective order.

9.      BLX objects to the Subpoena to the extent it seeks information or the production of documents or things containing trade secrets, confidential or other proprietary business information, the disclosure of which could injure BLX or any other party, absent the entry of an appropriate protective order.

10.      BLX objects to the Subpoena to the extent it seeks information and documents previously produced in the above-captioned litigation to the extent that such information and documents would be duplicative of documents already in the possession, custody, or control of LBHI and that production of the same would be unduly burdensome, particularly to a non-party such as BLX.  BLX further objects to the Subpoena on the grounds that compliance would impose substantial expense on a non-party and no provision has been made for reimbursement. BLX further objects to producing any information in the absence of a commitment by LBHI to pay all reasonable costs of production, including attorney's fees and administrative costs.

11.      The Subpoena violates Fed. R. Civ. P. 45(c)(1) because its proponents have failed to take reasonable steps to avoid imposing undue burden and expense upon BLX, a non-party. Many, if not all, responsive documents have been previously produced in response to a prior subpoena to the Idaho Housing Finance Association.

12.      The preceding General Objections apply to and are incorporated by reference in each and every Specific Objection below.  Specific Objections to each request in the Subpoena

are made individually.  BLX's objections to the Subpoena are made without prejudice to, and without waiving, any General Objections not expressly set forth in this response.  The inclusion of any Specific Objection is not intended to be a waiver of any General Objection or any other Specific Objection made herein or later asserted.  BLX's objections to this Subpoena are ongoing and BLX reserves the right to supplement, amend or clarify its responses and objections to these Requests.

## SPECIFIC OBJECTIONS

**Document Request No. 1Error! Bookmark not defined..**

All engagement letters executed by You in connection with Your work as a financial advisor to any Client, as well as any Documents, including email or memoranda, describing the scope of work to be conducted by You.

**Objections to Document Request No. 1.**

BLX incorporates its General Objections as if fully set forth herein.  BLX objects that this Request is not reasonably calculated to lead to the discovery of admissible evidence.  BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges.  BLX further objects to this Request as overbroad, burdensome, and duplicative.  BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.


**Document Request No. 2Error! Bookmark not defined..**

All Documents concerning the valuation of any Applicable Transactions.

**Objections to Document Request No. 2.**

BLX incorporates its General Objections as if fully set forth herein.  BLX objects to the term "valuation" as it is vague and ambiguous.  BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges.  BLX further objects to this Request as overbroad, burdensome, and duplicative.  BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 3**Error! Bookmark not defined.**.**

All Documents, including but not limited to presentations made to Clients, discussing, containing, or reflecting a description, in whole or in part, of the methodology used or theretofore to be used, to determine value or termination value of any Applicable Transaction, including but not limited to any Documents describing how Market Quotations should be obtained and utilized and how Loss or Close Out Amount may or should be computed.

**Objections to Document Request No. 3.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the terms "presentations", "methodology", and "termination value" as vague and ambiguous. BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 4**Error! Bookmark not defined.**.**

All Documents concerning or documenting any communications between You and any Client or any Client's representatives, advisors, agents, accountants, and counsel concerning Debtors and/or the Applicable Transactions.

**Objections to Document Request No. 4.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 5.**

All Documents concerning or documenting any communications between You and any Reference Market-makers (as that term is defined in the Master Agreement) concerning

(i) Your engagement by a counterparty in connection with the Debtors, (ii) the Applicable Transactions, and/or (iii) any Replacement Transactions.

## Objections to Document Request No. 5.

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the terms "engagement" and "counterparty" as vague, ambiguous, and calling for a legal conclusion. BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

## Document Request No. 6.

All Documents concerning any quotations (executable, indicative, or otherwise) or Replacement Transaction, including, but not limited to, Documents concerning (i) any bid requests and related information circulated to a party from whom quotations (for Market Quotations, Replacement Transactions, or otherwise) were sought, (ii) any responses provided such party, (iii) any consideration paid or received in connection with a Replacement Transaction, (iv) the names of any entity which effectuated a replacement, (v) when any such transaction was effected, and (vi) confirmations, Master Agreements, and all relevant documentation.

## Objections to Document Request No. 6.

BLX incorporates its General Objections as if fully set forth herein. BLX objects that this Request is not reasonably calculated to lead to the discovery of admissible evidence. BLX further objects to the term "quotation" as vague and ambiguous. BLX further objects that the terms "consideration" and "effected" call for a legal conclusion. BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as grossly overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 7.**

Documents sufficient to identify all Your personnel who were involved in any Client
engagement.

**Objections to Document Request No. 7.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the terms
"personnel" and "engagement" as vague and ambiguous. BLX further objects to the extent that
this Request seeks information that is protected by attorney work product or attorney client
privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative.
BLX further objects to this Request to the extent it seeks trade secrets or other confidential or
proprietary information. BLX further objects to this Request to the extent it seeks documents
previously produced and already in LBHI's possession, custody or control.

**Document Request No. 8.**

All Documents concerning fees and expenses incurred by You in connection with Client
engagements, including, but not limited to, invoices, statements of account, bills, and
timesheets.

**Objections to Document Request No. 8.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects that this
Request is not reasonably calculated to lead to the discovery of admissible evidence. BLX
further objects to the extent that this Request seeks information that is protected by attorney
work product or attorney client privileges. BLX further objects to this Request as overbroad,
burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade
secrets or other confidential or proprietary information. BLX further objects to this Request to
the extent it seeks documents previously produced and already in LBHI's possession, custody or
control.

**Document Request No. 9.**

All Documents concerning any summit or meeting of financial or swap advisors, whether such
summit or meeting took place in a physical location, on-line, or by correspondence, electronic or
otherwise, discussing, strategizing, or otherwise concerning, in whole or in part, derivative
transactions, Master Agreements, or other derivatives documentation between a Client

and a Debtor.

**Objections to Document Request No. 9.**

BLX incorporates its General Objections as if fully set forth herein.  BLX objects to the terms "summit" and "financial or swap advisors" as vague and ambiguous.  BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges.  BLX further objects to this Request as overbroad, burdensome, and duplicative.  BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information.  BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 10.**

All financial statements concerning any Applicable Transactions, including the value thereof.

**Objections to Document Request No. 10.**

BLX incorporates its General Objections as if fully set forth herein.  BLX objects to the term "financial statements" as vague and ambiguous.  BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges.  BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information.  BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 11.**

All Documents concerning the negotiation and execution of any Assignment Agreement.

**Objections to Document Request No. 11.**

BLX incorporates its General Objections as if fully set forth herein.  BLX objects to the term "negotiation" as vague and ambiguous.  BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges.  BLX further objects to this Request as overbroad, burdensome, and duplicative.  BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information.  BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 12.**

All Documents concerning the interpretation of any provision in any Assignment Agreement.

**Objections to Document Request No. 12.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the term "interpretation" as vague and ambiguous. BLX further objects that this Request calls for a legal conclusion. BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 13.**

All Documents concerning the performance under, or compliance with, any Assignment Agreement.

**Objections to Document Request No. 13.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the terms "performance" and "compliance" as vague and ambiguous. BLX further objects that this Request calls for a legal conclusion. BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

**Document Request No. 14.**

All Multi-Party Advice Documents.

**Objections to Document Request No. 14.**

BLX incorporates its General Objections as if fully set forth herein. BLX objects to the term "Multi-Party Advice Documents" as vague, ambiguous, and calling for a legal conclusion. BLX

objects that this Request is not reasonably calculated to lead to the discovery of admissible evidence. BLX further objects to the extent that this Request seeks information that is protected by attorney work product or attorney client privileges. BLX further objects to this Request as overbroad, burdensome, and duplicative. BLX further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary information. BLX further objects to this Request to the extent it seeks documents previously produced and already in LBHI's possession, custody or control.

Dated: July 13, 2011

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By:_____

William A. Molinski
David P. Fuad
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
*Attorneys for Bond Logistix*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she served a copy of the foregoing **OBJECTIONS OF NON-PARTY BOND LOGISTIX TO SUPBOENA OF DEBTOR LEHMAN BROTHERS HOLDINGS INC., ET AL.** to the following by depositing a true and correct copy of the document(s) listed above with Fed Ex in Los Angeles, California, on July 13, 2011:

> Richard W. Slack, Esq.
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> Telephone: (212) 310-8000

_____

Maria Mercado-Navarro

# Exhibit D

| | |
|---|---|
| **From:** | Kellert, Raquel |
| **Sent:** | Friday, July 22, 2011 11:01 AM |
| **To:** | Molinski, William A. |
| **Cc:** | Schloss, Adam |
| **Subject:** | Bond Logistix Confi |
| **Attachments:** | Bond Logistix- confi.pdf |

Bill,

Attached please find the confi we have used in connection with multiple other Rule 2004 subpoenas (adopted for use by Bond Logistix).  Please let me know if you have any comments or questions; otherwise, please sign and email it back for a countersignature.

Thank you,

Raquel



**Raquel Kellert**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
raquel.kellert@weil.com
+1 212 310 8264 Direct

---

**From:** Molinski, William A. [mailto:wmolinski@orrick.com]
**Sent:** Friday, July 15, 2011 3:39 PM
**To:** Schloss, Adam
**Cc:** Slack, Richard; Kellert, Raquel
**Subject:** RE: Bond Logistix

Adam, I am flying on Monday and in meetings in New York all Tuesday and Wednesday. I could meet and confer on Thursday or Friday.

---

**From:** Schloss, Adam [mailto:adam.schloss@weil.com]
**Sent:** Thursday, July 14, 2011 9:22 AM
**To:** Molinski, William A.
**Cc:** Slack, Richard; Kellert, Raquel
**Subject:** Bond Logistix
**Importance:** High

Bill:

We just received Bond Logistix's responses and objections to Lehman's Rule 2004 subpoena in which Bond Logistix appears to take the position that it will not be producing any documents

in response to the subpoena.  We need to schedule a meet and confer as soon as possible.  Please let me know your availability for tomorrow or Monday.


Regards,


Adam




**Adam M. Schloss**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
adam.schloss@weil.com
+1 212 310 8450 Direct
+1 917 207 1574 Mobile
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.
=========================================================
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.
=========================================================
NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/
=========================================================

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
In re                                       :       Chapter 11
                                            :       Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC. *et al.*,     :
                                            :       Jointly Administered
                          Debtors.          :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## STIPULATION GOVERNING THE PRODUCTION
## OF CONFIDENTIAL MATERIALS

        In connection with Lehman Brothers Holdings Inc. and Lehman Brothers Special

Financing Inc.'s ("Debtors") subpoena (the "Subpoena") directed at Bond Logistix ("Bond

Logistix," and with Debtors, the "Parties") dated May 13, 2011 and served pursuant to the

November 23, 2009 order (the "Order") of the United States Bankruptcy Court for the Southern

District of New York granting the Debtors authority to issue subpoenas for the production of

documents and authorizing the examination of persons and entities in the Chapter 11 proceeding

captioned *In re Lehman Brothers Holdings Inc., et al.* (Case No. 08-13555) (the "Bankruptcy

Case"), the Parties hereby stipulate and agree, through their undersigned counsel of record, to the

following Stipulation Governing the Production of Confidential Materials (the "Stipulation"):

        1.      This Stipulation shall govern the designation and handling of any

document, deposition testimony, electronic data, interrogatory response, response to requests for

admissions, expert report or other information disclosed or produced by or on behalf of Bond

Logistix to Debtors in response to the Subpoena or to any other subpoena issued by Debtors

pursuant to the Order (the "Discovery Materials").

2.     "Document" or "Documents" shall have the meaning set forth in Rule 26.3(c)(2) of the Local Rules of the United States District Court for the Southern District of New York.

3.     "Person" or "Persons" shall have the meaning set forth in Rule 26.3(c)(6) of the Local Rules of the United States District Court for the Southern District of New York.

4.     Bond Logistix may designate any Discovery Materials as "CONFIDENTIAL" pursuant to this Stipulation by affixing to them the legend "CONFIDENTIAL" in a size and location that makes the designation readily apparent. Designation of Discovery Materials as "CONFIDENTIAL" shall be based on a good faith belief by Bond Logistix that such materials contain (a) a trade secret or other confidential research, development or sensitive commercial information protected by Rule 26 of the Federal Rules of Civil Procedure, (b) information subject by law or by contract to a legally protected right of privacy, or (c) information which Bond Logistix is legally obligated to keep confidential, as reasonably determined by Bond Logistix.

5.     Except as set forth herein or in any order of the Court, Discovery Materials designated "CONFIDENTIAL" and any part of the information contained in those Discovery Materials shall not be delivered, exhibited or disclosed, directly or indirectly, to persons other than:

(a) the Court and persons employed by it or appointed by it, including mediators;

(b) court reporters, videographers or other qualified persons taking testimony;

(c) the Parties, including their current employees, consultants, advisors, parents, subsidiaries and affiliates, and the Official Committee of Unsecured Creditors of

Lehman Brothers Holdings, Inc. (the "Committee"), as well as the Committee's consultants, advisors, and counsel;

(d) counsel retained by the Parties hereto, and the paralegal, clerical and secretarial staff employed by such counsel;

(e) independent copying and computer services firms, or their employees, retained to copy or index any Discovery Materials;

(f) actual or potential party or non-party fact witnesses, provided there is a reasonable basis to believe that the fact witness may give relevant testimony regarding the designated Discovery Materials;

(g) expert witnesses at or in preparation for deposition or trial, provided there is a reasonable basis to believe the witness may give relevant testimony regarding the designated Discovery Materials;

(h) persons identified on the face of the Discovery Materials as having authored or previously received the Discovery Materials; and

(i) such other persons as Bond Logistix and Debtors may agree upon in writing or as ordered by the Court and further provided that nothing herein shall prevent or prejudice a Party from seeking to enlarge the recipients of Confidential information herein by making such a motion with the Court.

6.    All "CONFIDENTIAL" Discovery Materials may be used by the Debtors in connection with the Bankruptcy Case, or any litigation, dispute, proceeding, or mediation arising under, or in connection with, derivative transaction(s) (the "Transactions") entered into by any Debtor entity.

7.    Any Party wishing to designate as "CONFIDENTIAL" portions or all of any deposition testimony may do so on the record during the deposition, or within ten (10)

business days after receipt of the final deposition transcript by providing written notice of the designation to the other Party and any other affected person(s).  The Party making the designation shall be responsible for ensuring that those portions of the deposition transcript designated as "CONFIDENTIAL" are appropriately marked and sealed by the reporter.  The Parties shall avoid designating entire transcripts as "CONFIDENTIAL" where only a portion thereof qualifies for such protection, and, to the extent reasonably practicable, only those portions that qualify for protection should be so designated.  To the extent that deposition testimony later designated "CONFIDENTIAL" is disclosed by a Party prior to the other Party's designation of that testimony, such disclosure shall not constitute a breach of this Stipulation, but such testimony shall thereafter be deemed "CONFIDENTIAL" for all purposes as if it had been so designated at the time it was given.  To the extent that transcripts of deposition testimony given prior to the date of this Stipulation already have been designated by agreement of two or more parties hereto as CONFIDENTIAL in their entirety, nothing herein shall be construed to, or shall, change such designation or in any way reduce the protections that it affords.

8.      Discovery Materials previously designated "CONFIDENTIAL" that are marked as exhibits during a deposition shall be treated by the Parties as "CONFIDENTIAL."

9.      Whenever Discovery Materials designated as "CONFIDENTIAL" are to be discussed or disclosed in a deposition, any Party discussing or disclosing such Discovery Materials must first exclude from the room any person who is not entitled to receive or review such material under this Stipulation.

10.     Any Discovery Materials that are inadvertently produced, after the entry of this Stipulation, without a "CONFIDENTIAL" designation may be subsequently redesignated by the producing Party as "CONFIDENTIAL" upon written notice making such designations by specific reference to the Bates numbers of documents previously produced.  No person shall be

liable for disclosing a document marked "CONFIDENTIAL" if that disclosure occurred prior to receipt of the written notice described in the previous sentence.

11.     "CONFIDENTIAL" Discovery Materials shall not be filed with the Court, absent consent of the producing Party or, to the extent consent is not obtained, unless the Party seeking to file "CONFIDENTIAL" materials first obtains from the Court an appropriate sealing order pursuant to Section 107 of the United States Bankruptcy Code or, to the extent that the Court declines to enter a sealing order, the Party seeking to file "CONFIDENTIAL" materials obtains relief from the Court from this Stipulation, enabling such materials to be filed as part of the public record.

12.     The Parties agree that all persons employed by either Bond Logistix or Debtors who are given access to protected Discovery Materials will be instructed that such persons and the Parties are bound by the terms of this Stipulation.

13.     All persons described in paragraphs 5(f), (g), and (h), and any other party who attends a deposition or Rule 2004 examination in connection with the Subpoena and is not identified in paragraph 5, must read and agree to be bound by this Stipulation before they are given access to protected Discovery Materials.  Additionally, in the event the protected Discovery Materials are used at a Rule 2004 examination, portions of the transcript of such examination shall also be treated as "CONFIDENTIAL," pursuant to this Stipulation, to the extent that said portions discuss the protected Discovery Materials.

14.     The provisions of this Stipulation, insofar as they restrict the disclosure and use of "CONFIDENTIAL" Discovery Materials, shall continue to be binding on all parties and persons subject to the terms of this Stipulation, as well as undersigned counsel, notwithstanding the final termination of the Bankruptcy Case or any adversarial proceedings commenced in connection with the Transactions.

15.     If any Party receives a subpoena seeking, or court order requiring, the production or disclosure of any "CONFIDENTIAL" Discovery Materials received from another Party, that Party shall give written notice to the producing Party within five (5) business days of receipt of such subpoena or court order, and in no event less than five (5) business days prior to the time for production of such Discovery Materials pursuant to the subpoena or court order, if possible.  If such written notice cannot be made, the Party receiving the subpoena must immediately give notice to counsel for the producing Party by telephone.  In no event shall production or disclosure be made before notice is given, unless the Party receiving the subpoena or court order is prohibited by law or regulatory order from providing such notice.  The purpose of this paragraph is to provide the producing Party the opportunity to intervene at its own expense to object to the production of such Discovery Materials.

16.     Any Party may object at any time to the designation of any document as "CONFIDENTIAL" made by the other Party.  Any such objection must be in writing to the designating Party and the objecting Party must request a meeting to attempt to resolve the dispute.  If the dispute is not resolved through this meet-and-confer process, the objecting Party may seek appropriate relief from the Court on an expedited basis.  The designating Party shall have the burden to demonstrate that the Discovery Materials that are the subject of any motion before the Court were properly designated pursuant to this Stipulation and applicable law.  In the event that a large number of such Discovery Materials are in dispute, the Parties shall use their best efforts to agree upon a reasonable amount of time during which any Party may move the Court for appropriate relief.  Any disputed Discovery Materials shall be treated in accordance with their designation under this Stipulation until the Court rules otherwise.

17.     The inadvertent production of any document or other disclosure of any document or information that the producing Party contends is subject to the attorney-client

privilege, work-product doctrine or any other privilege or immunity from disclosure shall not be deemed a waiver in whole or in part of the claim of privilege or protection, either as to the specific document or the information disclosed or as to any other document or information relating thereto. Within five (5) business days after the discovery of the inadvertent production, the producing Party shall provide written notice to the receiving Party that privileged documents or information have been inadvertently produced or disclosed and request the return of such documents or information. Any document or portion of transcript, including all copies thereof, constituting or containing information as to which notice of inadvertent production is given shall be returned within five (5) business days of such demand.

18.    If any Party objects to a claim of privilege or a claim of inadvertent production given pursuant to the preceding paragraph, it shall so notify the other Party in writing. The Parties shall attempt to resolve the dispute amicably within the five (5) business days following such written notice. If the dispute is not resolved, the Party claiming privilege or inadvertent production may move the Court for appropriate relief concerning the document(s) at issue. From the time of the notification of inadvertent production, any documents or information as to which notice is given shall be deemed and treated as privileged and shall not be used for any purpose until the Court enters an order ruling otherwise, or until the Parties otherwise agree.

19.    Upon the later of (a) termination of this Stipulation, (b) the termination of all litigation or proceedings, including mediations, commenced in connection with the Transactions or (c) the resolution of all disputes between the Parties relating to the Transactions (whichever occurs latest), Bond Logistix may request the destruction or the return of all copies of all Discovery Materials produced in connection with the Rule 2004 Discovery, except those filed with the Court. If such a request is made in writing, the recipient of such a request shall have thirty (30) days in which to (a) return all copies of the Discovery Materials, if that is the request,

or (b) destroy all copies of the Discovery Materials, if that is the request, and, if the Discovery Materials are destroyed, to certify in writing that such destruction has occurred.  Nothing herein shall prevent the Parties from maintaining a set of documents and pleadings filed with the Court even if those filed documents and pleadings were filed under seal and contain Confidential information.

20.    Nothing in this Stipulation shall limit Bond Logistix's use of its own documents or prevent it from disclosing its own "CONFIDENTIAL" information to any person. Such disclosures shall not affect any "CONFIDENTIAL" designations made pursuant to the terms of this Stipulation so long as disclosure is made in a manner in which is reasonably calculated to maintain the confidentiality of the information.

21.    The failure to designate Discovery Materials as "CONFIDENTIAL" shall not constitute a waiver of any claim outside of the Rule 2004 Discovery process or related litigation that such materials contain trade secrets or proprietary business information, or are otherwise confidential.

22.    Nothing in this Stipulation shall relieve a Party of its obligations under the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure or under any future stipulations and orders, regarding the production of documents or the making of timely responses to discovery requests.

23.    This Stipulation may be signed in counterparts.

24.    The Parties agree to be bound by the terms of this Stipulation upon the signing of the Stipulation by their respective undersigned counsel.

Nothing in this Stipulation shall prejudice the right of either Debtors or Bond

Logistix to apply to the Court for appropriate relief.


IT IS HEREBY STIPULATED AND AGREED:


Date:_____


WEIL, GOTSHAL & MANGES LLP               ORRICK, HERRINGTON &
                                         SUTCLIFFE LLP



By:_____      By:_____
    Richard W. Slack, Esq.                   William Molinski, Esq.
    Adam M. Schloss, Esq.                     777 South Figueroa Street
    767 Fifth Avenue                          Suite 3200
    New York, New York  10153                 Los Angeles, CA 90017-5855
    Telephone:  (212) 310-8017                Telephone:  (213) 612-2256

*Counsel for Lehman Brothers*            *Counsel for Bond Logistix*
*Holdings Inc. and Lehman Brothers*
*Special Financing Inc.*

# Exhibit E

**From:**        Molinski, William A. <wmolinski@orrick.com>
**Sent:**        Friday, July 22, 2011 5:09 PM
**To:**          Kellert, Raquel
**Cc:**          Schloss, Adam
**Subject:**     RE: Bond Logistix Confi

This looks acceptable, presuming that we can produce in paper form the excel spreadsheets we discussed. I believe we will be able to do that. I am waiting for an estimate of the cost of doing so and will let you know when I hear. We should have an estimate by Monday.

**From:** Kellert, Raquel [mailto:Raquel.Kellert@weil.com]
**Sent:** Friday, July 22, 2011 8:01 AM
**To:** Molinski, William A.
**Cc:** Schloss, Adam
**Subject:** Bond Logistix Confi

Bill,

Attached please find the confi we have used in connection with multiple other Rule 2004 subpoenas (adopted for use by Bond Logistix). Please let me know if you have any comments or questions; otherwise, please sign and email it back for a countersignature.

Thank you,

Raquel



**Raquel Kellert**

*Weil, Gotshal & Manges LLP*
*767 Fifth Avenue*
*New York, NY 10153*
raquel.kellert@weil.com
+1 212 310 8264 Direct

**From:** Molinski, William A. [mailto:wmolinski@orrick.com]
**Sent:** Friday, July 15, 2011 3:39 PM
**To:** Schloss, Adam
**Cc:** Slack, Richard; Kellert, Raquel
**Subject:** RE: Bond Logistix

Adam, I am flying on Monday and in meetings in New York all Tuesday and Wednesday. I could meet and confer on Thursday or Friday.

**From:** Schloss, Adam [mailto:adam.schloss@weil.com]
**Sent:** Thursday, July 14, 2011 9:22 AM
**To:** Molinski, William A.
**Cc:** Slack, Richard; Kellert, Raquel

**Subject:** Bond Logistix
**Importance:** High

Bill:

We just received Bond Logistix's responses and objections to Lehman's Rule 2004 subpoena in which Bond Logistix appears to take the position that it will not be producing any documents in response to the subpoena.  We need to schedule a meet and confer as soon as possible.  Please let me know your availability for tomorrow or Monday.

Regards,

Adam



**Adam M. Schloss**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
adam.schloss@weil.com
+1 212 310 8450 Direct
+1 917 207 1574 Mobile
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.
============================================================
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.
============================================================
NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US

IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND
PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM.
THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit http://www.orrick.com/
============================================================

The information contained in this email message is intended only for use of the individual or entity named above. If the
reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please immediately notify us by email
(postmaster@weil.com), and destroy the original message. Thank you.
============================================================

IRS Circular 230 disclosure: To ensure compliance with requirements
imposed by the IRS, we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not intended or
written to be used, and cannot be used, for the purpose of (i) avoiding
tax-related penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any tax-related matter(s)
addressed herein.
============================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY
THE INTENDED RECIPIENT OF THE TRANSMISSION, AND
MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU
RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE,
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS
E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US
IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND
PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM.
THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit http://www.orrick.com/
============================================================

Exhibit F

**From:**          Schloss, Adam
**Sent:**          Monday, July 25, 2011 5:13 PM
**To:**            Molinski, William A.
**Cc:**            Kellert, Raquel
**Subject:**       BLX

Bill,

Below is a summary of our meet and confer on July 21, 2011 and follow up email correspondence concerning the draft confidentiality agreement we circulated on July 22, 2011:

- You said that Bond Logistix was willing to produce non-privileged, responsive documents to the extent not previously produced by Idaho Housing Finance Association.  You said that Bond Logistix was not withholding any documents based on any objections (other than based on the alleged confidentiality of information).  You said that you would provide supplemental responses on July 22, 2011.  We have not yet received these responses.

- You said that Bond Logistix would produce documents after the parties signed an appropriate confidentiality agreement.  You requested a two-tiered confidentiality agreement in which you would have the ability to mark documents "attorneys eyes only" to protect purportedly proprietary information contained in excel spreadsheets.  I said that Lehman would not agree to such a two-tiered structure because it has the potential to prevent Lehman from using documents in court and ADR proceedings.  Until a confidentiality agreement is signed, please produce all documents on an attorneys' eyes only basis.

- Your email of July 22, 2011, then said that Lehman's proposed confidentiality agreement was acceptable to you provided that you could make a paper production.  Our client would like the documents in native file format; however, my client is willing to accept a paper or .pdf production provided that the spreadsheets are readable (for example, that there are not an excessive number of tabs or columns).

- I said that Lehman was not in a position to agree to your request that your firm (or client) be reimbursed for time spent reviewing, printing, or copying documents, as you requested.

- Your responses and objections claimed that numerous terms were vague and ambiguous, including, for example, "presentations," "methodology," "engagement," "counterparty," and "financial advisor."  We fail to see what is ambiguous about these terms.  Yet, when I asked you to explain why these and other terms were supposedly ambiguous, you refused to do so.

- You said that you would produce a privilege log once you determined what documents were responsive and would be produced.

- Your document production is due today.  Please let us know when we can expect to receive it.



**Adam M. Schloss**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
adam.schloss@weil.com
+1 212 310 8450 Direct
+1 917 207 1574 Mobile
+1 212 310 8007 Fax

# Exhibit G

**From:**     Molinski, William A. <wmolinski@orrick.com>
**Sent:**     Monday, July 25, 2011 5:40 PM
**To:**       Schloss, Adam
**Cc:**       Kellert, Raquel
**Subject:**  RE: BLX

Adam:

Your recitation below is not an accurate description of our meet and confer in a number of respects.

1. I said that we would provide a supplemental response in which we would agree to production of documents if we were able to resolve the issues concerning confidentiality and burden that we discussed. As you know, we were not able to resolve those issues on Thursday, although I believe we made significant progress. You agreed that we need not reproduce documents already produced by IHFA.

2. Given your willingness to accept paper production of excel files, we are proceeding with that production and expect to have the documents ready to produce at the end of next week. The documents have been sent to an outside vendor for printing.

3. When I asked if your client would reimburse for costs of production, you said there was no obligation to do so. Our preliminary research suggests that is not accurate. My understanding of the Rule 2004 process is that FRCP 45 still applies to production of records by third parties. Under Rule 45, a third party is entitled to have any excessive costs reimbursed. We agreed, however, to defer that discussion until after we determine what the cost would be. If the cost is a reasonable one, we would not seek reimbursement.

4. With respect to the use of ambiguous terms, as I informed you, we have made clear in our written response which terms we believe were ambiguous. Nonetheless, I indicated that we would be producing all responsive documents as we understood those requests using their ordinary meaning. I invited you to further define any or all of those requests to assist in our interpretation but you refused to do so.

5. You agreed that it made sense for us to produce a privilege log after we had discussed and agreed what would be produced. To the extent the Rules require such a log, we will provide one.

Regards,
Bill

---

**From:** Schloss, Adam [mailto:adam.schloss@weil.com]
**Sent:** Monday, July 25, 2011 2:13 PM
**To:** Molinski, William A.
**Cc:** Kellert, Raquel
**Subject:** BLX

Bill,

Below is a summary of our meet and confer on July 21, 2011 and follow up email correspondence concerning the draft confidentiality agreement we circulated on July 22, 2011:

- You said that Bond Logistix was willing to produce non-privileged, responsive documents to the extent not previously produced by Idaho Housing Finance Association.  You said that Bond Logistix was not withholding any documents based on any objections (other than based on the alleged confidentiality of

information).  You said that you would provide supplemental responses on July 22, 2011.  We have not yet received these responses.

- You said that Bond Logistix would produce documents after the parties signed an appropriate confidentiality agreement.  You requested a two-tiered confidentiality agreement in which you would have the ability to mark documents "attorneys eyes only" to protect purportedly proprietary information contained in excel spreadsheets.  I said that Lehman would not agree to such a two-tiered structure because it has the potential to prevent Lehman from using documents in court and ADR proceedings.  Until a confidentiality agreement is signed, please produce all documents on an attorneys' eyes only basis.

- Your email of July 22, 2011, then said that Lehman's proposed confidentiality agreement was acceptable to you provided that you could make a paper production.  Our client would like the documents in native file format; however, my client is willing to accept a paper or .pdf production provided that the spreadsheets are readable (for example, that there are not an excessive number of tabs or columns).

- I said that Lehman was not in a position to agree to your request that your firm (or client) be reimbursed for time spent reviewing, printing, or copying documents, as you requested.

- Your responses and objections claimed that numerous terms were vague and ambiguous, including, for example, "presentations," "methodology," "engagement," "counterparty," and "financial advisor."  We fail to see what is ambiguous about these terms.  Yet, when I asked you to explain why these and other terms were supposedly ambiguous, you refused to do so.

- You said that you would produce a privilege log once you determined what documents were responsive and would be produced.

- Your document production is due today.  Please let us know when we can expect to receive it.



**Adam M. Schloss**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
adam.schloss@weil.com
+1 212 310 8450 Direct
+1 917 207 1574 Mobile
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.

==========================================================

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

==========================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/

==========================================================

# Exhibit H

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |   |
|---|---|---|
| In re | : | Chapter 11 |
|   | : | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC. *et al.*, | : |   |
|   | : | Jointly Administered |
| Debtors. | : |   |
|   | : |   |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### STIPULATION GOVERNING THE PRODUCTION
### OF CONFIDENTIAL MATERIALS

        In connection with Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc.'s ("Debtors") subpoena (the "Subpoena") directed at Bond Logistix ("Bond Logistix," and with Debtors, the "Parties") dated May 13, 2011 and served pursuant to the November 23, 2009 order (the "Order") of the United States Bankruptcy Court for the Southern District of New York granting the Debtors authority to issue subpoenas for the production of documents and authorizing the examination of persons and entities in the Chapter 11 proceeding captioned *In re Lehman Brothers Holdings Inc., et al.* (Case No. 08-13555) (the "Bankruptcy Case"), the Parties hereby stipulate and agree, through their undersigned counsel of record, to the following Stipulation Governing the Production of Confidential Materials (the "Stipulation"):

        1.    This Stipulation shall govern the designation and handling of any document, deposition testimony, electronic data, interrogatory response, response to requests for admissions, expert report or other information disclosed or produced by or on behalf of Bond Logistix to Debtors in response to the Subpoena or to any other subpoena issued by Debtors pursuant to the Order (the "Discovery Materials").

2.    "Document" or "Documents" shall have the meaning set forth in

Rule 26.3(c)(2) of the Local Rules of the United States District Court for the Southern District of

New York.

3.    "Person" or "Persons" shall have the meaning set forth in Rule 26.3(c)(6)

of the Local Rules of the United States District Court for the Southern District of New York.

4.    Bond Logistix may designate any Discovery Materials as

"CONFIDENTIAL" pursuant to this Stipulation by affixing to them the legend

"CONFIDENTIAL" in a size and location that makes the designation readily apparent.

Designation of Discovery Materials as "CONFIDENTIAL" shall be based on a good faith belief

by Bond Logistix that such materials contain (a) a trade secret or other confidential research,

development or sensitive commercial information protected by Rule 26 of the Federal Rules of

Civil Procedure, (b) information subject by law or by contract to a legally protected right of

privacy, or (c) information which Bond Logistix is legally obligated to keep confidential, as

reasonably determined by Bond Logistix.

5.    Except as set forth herein or in any order of the Court, Discovery

Materials designated "CONFIDENTIAL" and any part of the information contained in those

Discovery Materials shall not be delivered, exhibited or disclosed, directly or indirectly, to

persons other than:

(a) the Court and persons employed by it or appointed by it, including

mediators;

(b) court reporters, videographers or other qualified persons taking

testimony;

(c) the Parties, including their current employees, consultants, advisors,

parents, subsidiaries and affiliates, and the Official Committee of Unsecured Creditors of

Lehman Brothers Holdings, Inc. (the "Committee"), as well as the Committee's consultants, advisors, and counsel;

(d) counsel retained by the Parties hereto, and the paralegal, clerical and secretarial staff employed by such counsel;

(e) independent copying and computer services firms, or their employees, retained to copy or index any Discovery Materials;

(f) actual or potential party or non-party fact witnesses, provided there is a reasonable basis to believe that the fact witness may give relevant testimony regarding the designated Discovery Materials;

(g) expert witnesses at or in preparation for deposition or trial, provided there is a reasonable basis to believe the witness may give relevant testimony regarding the designated Discovery Materials;

(h) persons identified on the face of the Discovery Materials as having authored or previously received the Discovery Materials; and

(i) such other persons as Bond Logistix and Debtors may agree upon in writing or as ordered by the Court and further provided that nothing herein shall prevent or prejudice a Party from seeking to enlarge the recipients of Confidential information herein by making such a motion with the Court.

6.    All "CONFIDENTIAL" Discovery Materials may be used by the Debtors in connection with the Bankruptcy Case, or any litigation, dispute, proceeding, or mediation arising under, or in connection with, derivative transaction(s) (the "Transactions") entered into by any Debtor entity.

7.    Any Party wishing to designate as "CONFIDENTIAL" portions or all of any deposition testimony may do so on the record during the deposition, or within ten (10)

business days after receipt of the final deposition transcript by providing written notice of the designation to the other Party and any other affected person(s). The Party making the designation shall be responsible for ensuring that those portions of the deposition transcript designated as "CONFIDENTIAL" are appropriately marked and sealed by the reporter. The Parties shall avoid designating entire transcripts as "CONFIDENTIAL" where only a portion thereof qualifies for such protection, and, to the extent reasonably practicable, only those portions that qualify for protection should be so designated. To the extent that deposition testimony later designated "CONFIDENTIAL" is disclosed by a Party prior to the other Party's designation of that testimony, such disclosure shall not constitute a breach of this Stipulation, but such testimony shall thereafter be deemed "CONFIDENTIAL" for all purposes as if it had been so designated at the time it was given. To the extent that transcripts of deposition testimony given prior to the date of this Stipulation already have been designated by agreement of two or more parties hereto as CONFIDENTIAL in their entirety, nothing herein shall be construed to, or shall, change such designation or in any way reduce the protections that it affords.

8.      Discovery Materials previously designated "CONFIDENTIAL" that are marked as exhibits during a deposition shall be treated by the Parties as "CONFIDENTIAL."

9.      Whenever Discovery Materials designated as "CONFIDENTIAL" are to be discussed or disclosed in a deposition, any Party discussing or disclosing such Discovery Materials must first exclude from the room any person who is not entitled to receive or review such material under this Stipulation.

10.      Any Discovery Materials that are inadvertently produced, after the entry of this Stipulation, without a "CONFIDENTIAL" designation may be subsequently redesignated by the producing Party as "CONFIDENTIAL" upon written notice making such designations by specific reference to the Bates numbers of documents previously produced. No person shall be

liable for disclosing a document marked "CONFIDENTIAL" if that disclosure occurred prior to receipt of the written notice described in the previous sentence.

        11.    "CONFIDENTIAL" Discovery Materials shall not be filed with the Court, absent consent of the producing Party or, to the extent consent is not obtained, unless the Party seeking to file "CONFIDENTIAL" materials first obtains from the Court an appropriate sealing order pursuant to Section 107 of the United States Bankruptcy Code or, to the extent that the Court declines to enter a sealing order, the Party seeking to file "CONFIDENTIAL" materials obtains relief from the Court from this Stipulation, enabling such materials to be filed as part of the public record.

        12.    The Parties agree that all persons employed by either Bond Logistix or Debtors who are given access to protected Discovery Materials will be instructed that such persons and the Parties are bound by the terms of this Stipulation.

        13.    All persons described in paragraphs 5(f), (g), and (h), and any other party who attends a deposition or Rule 2004 examination in connection with the Subpoena and is not identified in paragraph 5, must read and agree to be bound by this Stipulation before they are given access to protected Discovery Materials. Additionally, in the event the protected Discovery Materials are used at a Rule 2004 examination, portions of the transcript of such examination shall also be treated as "CONFIDENTIAL," pursuant to this Stipulation, to the extent that said portions discuss the protected Discovery Materials.

        14.    The provisions of this Stipulation, insofar as they restrict the disclosure and use of "CONFIDENTIAL" Discovery Materials, shall continue to be binding on all parties and persons subject to the terms of this Stipulation, as well as undersigned counsel, notwithstanding the final termination of the Bankruptcy Case or any adversarial proceedings commenced in connection with the Transactions.

15.     If any Party receives a subpoena seeking, or court order requiring, the production or disclosure of any "CONFIDENTIAL" Discovery Materials received from another Party, that Party shall give written notice to the producing Party within five (5) business days of receipt of such subpoena or court order, and in no event less than five (5) business days prior to the time for production of such Discovery Materials pursuant to the subpoena or court order, if possible. If such written notice cannot be made, the Party receiving the subpoena must immediately give notice to counsel for the producing Party by telephone. In no event shall production or disclosure be made before notice is given, unless the Party receiving the subpoena or court order is prohibited by law or regulatory order from providing such notice. The purpose of this paragraph is to provide the producing Party the opportunity to intervene at its own expense to object to the production of such Discovery Materials.

16.     Any Party may object at any time to the designation of any document as "CONFIDENTIAL" made by the other Party. Any such objection must be in writing to the designating Party and the objecting Party must request a meeting to attempt to resolve the dispute. If the dispute is not resolved through this meet-and-confer process, the objecting Party may seek appropriate relief from the Court on an expedited basis. The designating Party shall have the burden to demonstrate that the Discovery Materials that are the subject of any motion before the Court were properly designated pursuant to this Stipulation and applicable law. In the event that a large number of such Discovery Materials are in dispute, the Parties shall use their best efforts to agree upon a reasonable amount of time during which any Party may move the Court for appropriate relief. Any disputed Discovery Materials shall be treated in accordance with their designation under this Stipulation until the Court rules otherwise.

17.     The inadvertent production of any document or other disclosure of any document or information that the producing Party contends is subject to the attorney-client

privilege, work-product doctrine or any other privilege or immunity from disclosure shall not be deemed a waiver in whole or in part of the claim of privilege or protection, either as to the specific document or the information disclosed or as to any other document or information relating thereto. Within five (5) business days after the discovery of the inadvertent production, the producing Party shall provide written notice to the receiving Party that privileged documents or information have been inadvertently produced or disclosed and request the return of such documents or information. Any document or portion of transcript, including all copies thereof, constituting or containing information as to which notice of inadvertent production is given shall be returned within five (5) business days of such demand.

18.    If any Party objects to a claim of privilege or a claim of inadvertent production given pursuant to the preceding paragraph, it shall so notify the other Party in writing. The Parties shall attempt to resolve the dispute amicably within the five (5) business days following such written notice. If the dispute is not resolved, the Party claiming privilege or inadvertent production may move the Court for appropriate relief concerning the document(s) at issue. From the time of the notification of inadvertent production, any documents or information as to which notice is given shall be deemed and treated as privileged and shall not be used for any purpose until the Court enters an order ruling otherwise, or until the Parties otherwise agree.

19.    Upon the later of (a) termination of this Stipulation, (b) the termination of all litigation or proceedings, including mediations, commenced in connection with the Transactions or (c) the resolution of all disputes between the Parties relating to the Transactions (whichever occurs latest), Bond Logistix may request the destruction or the return of all copies of all Discovery Materials produced in connection with the Rule 2004 Discovery, except those filed with the Court. If such a request is made in writing, the recipient of such a request shall have thirty (30) days in which to (a) return all copies of the Discovery Materials, if that is the request,

or (b) destroy all copies of the Discovery Materials, if that is the request, and, if the Discovery Materials are destroyed, to certify in writing that such destruction has occurred. Nothing herein shall prevent the Parties from maintaining a set of documents and pleadings filed with the Court even if those filed documents and pleadings were filed under seal and contain Confidential information.

20.      Nothing in this Stipulation shall limit Bond Logistix's use of its own documents or prevent it from disclosing its own "CONFIDENTIAL" information to any person. Such disclosures shall not affect any "CONFIDENTIAL" designations made pursuant to the terms of this Stipulation so long as disclosure is made in a manner in which is reasonably calculated to maintain the confidentiality of the information.

21.      The failure to designate Discovery Materials as "CONFIDENTIAL" shall not constitute a waiver of any claim outside of the Rule 2004 Discovery process or related litigation that such materials contain trade secrets or proprietary business information, or are otherwise confidential.

22.      Nothing in this Stipulation shall relieve a Party of its obligations under the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure or under any future stipulations and orders, regarding the production of documents or the making of timely responses to discovery requests.

23.      This Stipulation may be signed in counterparts.

24.      The Parties agree to be bound by the terms of this Stipulation upon the signing of the Stipulation by their respective undersigned counsel.

Nothing in this Stipulation shall prejudice the right of either Debtors or Bond

Logistix to apply to the Court for appropriate relief.

IT IS HEREBY STIPULATED AND AGREED:

Date: _July 26, 2011_

WEIL, GOTSHAL & MANGES LLP

By: _____
    Richard W. Slack, Esq.
    Adam M. Schloss, Esq.
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8017

*Counsel for Lehman Brothers*
*Holdings Inc. and Lehman Brothers*
*Special Financing Inc.*

ORRICK, HERRINGTON &
SUTCLIFFE LLP

By: _____
    William Molinski, Esq.
    777 South Figueroa Street
    Suite 3200
    Los Angeles, CA 90017-5855
    Telephone: (213) 612-2256

*Counsel for Bond Logistix*

# Exhibit I

**From:**          Kellert, Raquel
**Sent:**          Wednesday, October 12, 2011 1:54 PM
**To:**            Molinski, William A. (wmolinski@orrick.com)
**Cc:**            Schloss, Adam
**Subject:**       Excel Spreadsheets

Bill,

As we previously informed you, Bond Logistix's paper production of excel spreadsheets is largely unreadable because numerous pages contain (i) numbers without headings, (ii) a string of "#," "#N/A," or " "#VALUE!" where there should be numbers, or (iii) only part of a graph.  Moreover, these spreadsheets fill so many pages--at times more than 600--that it is not practically possible to line up all of the columns and rows.

Thus, we request that you re-produce the documents in electronic, native file form (which will allow us to read the documents).  You may exclude the underlying formulas that you claim are proprietary if you have confidentiality concerns, so long as you do not withhold any information responsive to the subpoena.  We understand that there are two ways to do this:  (i) password protect the underlying calculations or (ii) copy and paste the visible numbers and words without the formulas into new electronic spreadsheets.

Thank you,

Raquel



**Raquel Kellert**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
raquel.kellert@weil.com
+1 212 310 8264 Direct

1

Exhibit J

| | |
|---|---|
| **From:** | Molinski, William A. <wmolinski@orrick.com> |
| **Sent:** | Friday, October 14, 2011 5:59 PM |
| **To:** | Kellert, Raquel |
| **Cc:** | Schloss, Adam |
| **Subject:** | Re: Excel Spreadsheets |

Raquel:

As we have discussed, your office informed me both orally and in writing that a paper production of the excel sheets was acceptable to Lehman. We all know that excel sheets translate poorly to paper copying but your office told me nonetheless that you would accept that paper production. In reliance on your representations, BLX incurred a charge of just over $10,000 in retaining a vendor to print those pages. This was all occasioned by your office's adamant refusal to adapt the protective order in any way to accommodate trade secret concerns of BLX.

As you know, I have repeatedly requested reimbursement for the substantial costs incurred by my client, a third party, in responding to the subpoena. You have repeatedly refused even to consider that request.

We will look into the options you outline. If that can be done without cost, we will let you know.

Regards,
Bill

On Oct 12, 2011, at 10:53 AM, "Kellert, Raquel" <Raquel.Kellert@weil.com> wrote:

Bill,

As we previously informed you, Bond Logistix's paper production of excel spreadsheets is largely unreadable because numerous pages contain (i) numbers without headings, (ii) a string of "#," "#N/A," or " "#VALUE!" where there should be numbers, or (iii) only part of a graph.  Moreover, these spreadsheets fill so many pages--at times more than 600--that it is not practically possible to line up all of the columns and rows.

Thus, we request that you re-produce the documents in electronic, native file form (which will allow us to read the documents).  You may exclude the underlying formulas that you claim are proprietary if you have confidentiality concerns, so long as you do not withhold any information responsive to the subpoena.  We understand that there are two ways to do this:  (i) password protect the underlying calculations or (ii) copy and paste the visible numbers and words without the formulas into new electronic spreadsheets.

Thank you,

Raquel

**Raquel Kellert**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
raquel.kellert@weil.com
+1 212 310 8264 Direct

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

==========================================================
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.
==========================================================
NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/
==========================================================