Hearing Date and Time: January 26, 2012 at 10:00 a.m. (Prevailing Eastern Time)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
In re: : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC., et al.,** : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------------ x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
SUPPORT OF MOTION PURSUANT TO SECTION 8.4 OF THE MODIFIED THIRD
AMENDED CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND
ITS AFFILIATED DEBTORS TO ESTIMATE THE AMOUNT OF DISPUTED CLAIMS
FILED BY LEHMAN BROTHERS FINANCE AG (IN LIQUIDATION) FOR
PURPOSES OF ESTABLISHING RESERVES**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. and each of its affiliated debtors in possession (collectively, the "Debtors") hereby files this statement in support of the Debtors' Motion Pursuant to Section 8.4 of the Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors to Estimate the Amount of Disputed Claims filed by Lehman Brothers Finance AG (In Liquidation) for Purposes of Establishing Reserves (the "Motion").

**STATEMENT**

1.  The Committee supports the relief requested in the Motion. As expressly contemplated by the Debtors' confirmed plan of reorganization (the "Plan"), the Court should

estimate the LBF Claims[1] for the purpose of establishing reserves so that proper distributions can be made to the Debtors' unsecured creditors.  To do otherwise would permit a single, intractable claimant to undermine much of what the Debtors, the Committee, the PSA parties and other parties in interest achieved, against heavy odds -- i.e., a confirmed consensual Plan just three years after the collapse of Lehman.  Indeed, one of the primary incentives for creditors asserting approximately $450 billion of claims to forgo scorched-earth litigation of their claims and sign plan support agreements was the prospect of meaningful distributions soon after confirmation.

    2.  LBF was among the original signatories to the international global Protocol.  One of the fundamental premises of the Protocol has been the recognition of intercompany balances among Lehman affiliates and the concept of the "Global Close." Notwithstanding having operated under the Protocol since its inception, LBF has turned its back on those principles in taking the position that the chapter 11 Debtors must substantiate the balance each Debtor is owed by LBF as of their respective petition dates.  If LBF is unwilling to follow the example of thousands of other claimants to work with the estates' fiduciaries to develop a workable construct for settlement, it will have its "day in court."  Because LBF has not demonstrated a risk that there will be insufficient assets available for payment of any legitimate claim that it may have against the Debtors, however, it appears that the purpose of its objection is to gain leverage against the estates with respect to the ultimate allowance of the LBF Claims.

    3.  The Plan provides that the Debtors must establish a reserve on account of each Disputed Claim in an amount equal to the least of the filed or agreed upon amount of such claim or "the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claim." (Plan at § 8.4.)  The purpose of including such an estimation mechanism

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

in the Plan (with the support of the Committee and without objection by any other party in interest) was the same as it has generally been in other chapter 11 plans—i.e., avoiding diluted distributions triggered by claims that are plainly overstated and subject to significant litigation risk.

        4.      Despite LBF's contention to the contrary, under the Plan and the relevant precedent, the Court has ample authority to estimate the value of the LBF Claims for the purpose of establishing reserves. See, e.g., In re Enron Corp., No. 01–16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) (granting substantially the same relief under similar circumstances); In re Chemtura Corp., 448 B.R. 635, 648-49 (Bankr. S.D.N.Y. 2011) (estimating claims for reserve purposes "in accordance with a provision in the Debtors' Plan of Reorganization" and pursuant to section 502(c)); JPMorgan Chase Bank v. U.S. Nat'l Bank Assoc'n (In re Oakwood Homes Corp.), 329 B.R. 19 (D. Del. 2005). Moreover, LBF did not object to the Plan's estimation mechanism or any of the reserve requirements therein in its twenty-one-page objection to the Plan. Now that the Plan has been confirmed, LBF is precluded from collaterally attacking its provisions.

        5.      If the LBF Holdings Claims are reduced by just ten percent of the filed amount, and setoff is permissible, the LBHI Claims and LBF Holdings Claims would completely offset each other.[2] Under New York law, which applies to the LBF Claims,[3] a setoff of these claims against the LBHI Claim is permissible, regardless of whether the LBHI Claim is

---

[2] LBF's insistence that a final resolution of the setoff issue is necessary for the requested estimation of the LBF Claims for reserve purposes is wrong and is an attempt to obfuscate the true nature of the relief requested in the Motion. See In re Chemtura Corp., 448 B.R. 635, 650 (Bankr. S.D.N.Y. 2011) ("courts in the Southern and Eastern Districts of New York have rejected the [exact estimation] method"); In re Thomas McKinnon Secs., 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1996) ("A bankruptcy judge is bound by the legal rules which may govern the ultimate value of the claim. However, there are no other limitations on the court's authority to evaluate the claim . . . .") (internal citation and quotation marks omitted).

[3] The bases of each of the LBF Claims are all either governed by New York law, by agreement, or originate in decisions and actions that occurred in New York; and the LBHI Claim is based on LBHI's books and records.

3

recharacterized or subordinated by a Swiss court.  See Official Comm. Of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re Bennett Funding Group), 146 F.3d 136, 139 (2d Cir. 1998) ("There is [] no question that New York has long recognized a common law right of setoff.") (citations omitted); In re Lambert Oil Co., 347 B.R. 508, 519 (W.D. Va. 2006) (stating that "relevant authority indicates that subordinated claims are eligible for setoff").  However, even if a setoff were not permissible, requiring LBHI to establish a reserve in the filed amount of the LBF Claims would not be justified.

## CONCLUSION

For all the reasons set forth herein and in the Motion, the Committee respectfully requests that the Court (i) grant the relief requested in the Motion, and (ii) grant the Committee such other relief as is just.

Dated:   New York, New York
         January 24, 2012

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/  Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.

4