WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                    :
In re                                               :    **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :    **08-13555 (JMP)**
                                                    :
                                Debtors.            :    **(Jointly Administered)**
                                                    :
--------------------------------------------------------------------x

### NOTICE OF MOTION BY LEHMAN BROTHERS HOLDINGS INC. FOR AUTHORITY TO USE NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")

of Lehman Brothers Holdings Inc. ("LBHI"), as plan administrator, for authority on behalf of

the Participating Debtors[1] to retain non-cash assets in lieu of available cash for disputed claims

reserves, all as more fully described in the Motion, will be held before the Honorable James M.

Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court"), on **February 22, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

---

[1] The Participating Debtors are LBHI; Lehman Commercial Paper Inc.; Lehman Brothers Special Financing Inc.; Lehman OTC Derivatives Inc.; Lehman Brothers Commercial Corporation; and Lehman Brothers Commodities Services Inc..

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY, 10153, Attn: Harvey R. Miller and Lori R. Fife, attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received no later than **February 15, 2012 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated: January 27, 2012
New York, New York

/s/ Harvey R. Miller
Harvey R. Miller
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                    :
In re                                                               :        **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                        :        **08-13555 (JMP)**
                                                                    :
                                        Debtors.                    :        **(Jointly Administered)**
                                                                    :
------------------------------------------------------------------x

## MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR AUTHORITY TO USE NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI," together with its affiliated debtors, as

debtors and debtors-in-possession, the "Debtors," and when referred to with their non-debtor

affiliates, "Lehman") by this motion requests authority to retain non-cash assets in lieu of cash as

reserves for disputed claims pursuant to Section 8.4 of the Debtors' confirmed joint chapter 11

plan and respectfully represents:

### Background

1.      Commencing on September 15, 2008 and periodically thereafter, LBHI

and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the

Bankruptcy Code.  The Debtors' chapter 11 cases were consolidated for procedural purposes

only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The

Debtors were authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On December 6, 2011, the Debtors' Modified Third Amended Joint

Chapter 11 Plan (the "Plan") was confirmed consistent with Section 1129 of the Bankruptcy

Code.[2]  See ECF No. 23023. Pursuant to Section 6.1(a) of the Plan, LBHI shall serve as the Plan

Administrator for each of the Debtors. It is contemplated that the Plan will become effective

within the first quarter of 2012.

## Jurisdiction

3.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334 and Sections 14(e), (j) and (o) of the Plan. This is a core

proceeding pursuant to 28 U.S.C. § 157(b).

## Disputed Claims Reserves

4.    For the purpose of dealing with Disputed Claims against the Debtors,

pursuant to Section 8.4 of the Plan, as to each Distribution made to holders of Allowed Claims,

the Plan Administrator is required to retain an aggregate amount of Available Cash equal to the

Pro Rata Share of the Distributions that would have been made to each holder of a Disputed

Claim as if such Disputed Claim were an Allowed Claim as a reserve for the Disputed Claim.

Thereafter, if a Disputed Claim becomes Allowed, the Debtor:

> shall remit to the holder of such Allowed Claim Available Cash equal to
> the amount that would have been distributed from the Effective Date
> through and including the date of such Distribution on account of such
> Allowed Claim had such Claim been Allowed as of the Effective Date,
> together with any interest earned on the lesser of (i) such amount and (ii)
> the amount retained with respect to such Claim pursuant to this provision,

---

[2] Capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the Plan.

in each case, but only to the extent that such interest is attributable to the amount of the Allowed Claim ….

*See* Plan § 8.4.  Such payments are to be made first from the Available Cash retained on account of such Disputed Claim and then, to the extent it exists, from Available Cash that is not allocated to other Disputed Claims so that the holder of the previously Disputed Claim will have achieved parity in Distributions with other Allowed Claims.  If the Available Cash is insufficient to remit to the holder of a resolved Disputed Claim, then such holder shall be entitled to receive any deficiency on the next Distribution Date(s) before any holder of an Allowed Claim can receive further Distributions.  *See id.*

5.    Under Section 8.4 of the Plan, the Plan Administrator may request authority to use non-cash assets in lieu of Available Cash as part of the reserves for Disputed Claims.  Specifically, Section 8.4 of the Plan states:

> If the Plan Administrator determines, in its sole discretion, that the value of a Debtor's assets (other than such Debtor's Available Cash) exceeds the amount of Available Cash necessary to be retained pursuant to this section on account of Disputed Claims against such Debtor, the Plan Administrator may, subject to Bankruptcy Court approval, on proper notice to all holders of Disputed Claims against such Debtor, release such Available Cash for Distribution to holders of Allowed Claims and retain, in lieu thereof, such Debtor's non-Cash assets to satisfy its Disputed Claims if such Claims become Allowed Claims.

*See* Plan § 8.4.

## **Relief Requested**

6.    LBHI, as Plan Administrator, requests authority for each of the Participating Debtors[3] (i) to substitute a Participating Debtor's unencumbered non-cash assets ("Non-Cash Assets") for a portion of Available Cash for the reserves required on account of

---

[3] The Participating Debtors are LBHI; Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman OTC Derivatives Inc. ("LOTC"); Lehman Brothers Commercial Corporation ("LBCC"); and Lehman Brothers Commodities Services Inc. ("LBCS").

unsecured, non-priority Disputed Claims against such Participating Debtor[4] (the "Reserve Amount"), and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such Participating Debtor in accordance with the Plan, as described more fully below, and thereby accelerate Cash Distributions to holders of Allowed Claims.

### Procedures for Substitution of Non-Cash Assets for Disputed Claims Reserves

7.    The Debtors are continuing to prepare for distributions to claimants and in that context are evaluating Allowed Claims, Disputed Claims and Non-Cash Assets for each of the Debtors' estates.  LBHI, as Plan Administrator, desires to enhance Distributions to holders of Allowed Claims and, at the same time, provide for adequate reserves for Disputed Claims pending the disposition of such claims.  In that connection, the substitution of a reserve of adequate Non-Cash Assets for a portion of the Available Cash required to be retained for Disputed Claims would free up additional Cash for distribution to holders of Allowed Claims.  LBHI has consulted with the Creditors' Committee and certain holders of large claims against the Debtors regarding the Motion.

8.    LBHI proposes that authority be granted on the following terms and conditions:

A.    <u>Minimum Cash Reserve and Minimum Asset-to-Reserve Ratio</u>.  In order to retain Non-Cash Assets in lieu of Available Cash to satisfy Disputed Claims if such Claims become Allowed Claims for a particular Distribution, on the applicable Distribution Date:

i.    the Participating Debtor must retain at least 25% of the Reserve Amount in Available Cash (the "<u>Minimum Cash Reserve</u>") (other than as may be necessary in accordance with C(ii) and (iii) below); and

ii.    the ratio of (A) the value of the Participating Debtor's Non-Cash Assets to (B) the amount equal to the Reserve Amount minus the Minimum Cash

---

[4] For the purpose of this Motion, "Disputed Claims" shall include only the unsecured, non-priority Disputed Claims in any of LBHI Classes 3, 4, 4A, 5, 7, 8 or 9A, LCPI or LBSF Classes 4A or 5C, and LOTC, LBCC or LBCS Classes 4 or 5C.

Reserve for such Participating Debtor must be equal to or greater than 2.5:1 (the "Minimum Asset-to-Reserve Ratio").[5]

B.  Interest.  If a Disputed Claim becomes Allowed and would be entitled to interest pursuant to Section 8.4 of the Plan, the holder of such Claim shall receive interest in an amount equal to the amount that would have been earned if the Debtors had maintained the entire Reserve Amount in Cash only and invested the Cash in the same manner as the Debtors invested the Minimum Cash Reserve.

C.  Disputed Claims Reserves and Distributions.

   i.  The Minimum Cash Reserve and Available Cash generated from Non-Cash Assets of a Participating Debtor – *i.e.*, Cash remaining after satisfaction or reserve for administrative, secured, priority and convenience claims, the projected post-Effective Date costs of administration, and any other postpetition reserve requirements – will be pooled for all holders of Disputed Claims against such Participating Debtor, in the first instance.

   ii.  Thereafter, on each Distribution Date, the Minimum Cash Reserve and the Available Cash generated from Non-Cash Assets shall be used (A) first, to remit to each holder of a Disputed Claim that has become Allowed, on a *pro rata* basis, the amount of Distributions, inclusive of interest, that would have been made on account of each such Allowed Claim up to the applicable Distribution Date as if such Claim had been Allowed on the Effective Date (a "Catch-Up Distribution"), and (B) then, to fund a Minimum Cash Reserve for any outstanding Disputed Claims, before any further Distributions may be made on account of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they are entitled without any deficiency.

   iii.  To the extent there is insufficient Available Cash on a Distribution Date to remit to each holder of a Disputed Claim that has become Allowed its Catch-Up Distribution in accordance with C(ii)(A) above, the deficiency shall be satisfied on the subsequent Distribution Date(s) from Available Cash generated from Non-Cash Assets on a *pro rata* basis with (A) any other previously Disputed Claims that became Allowed but did not receive their entire Catch-Up Distribution, and (B) all holders of Disputed Claims

---

[5]  The value of a Participating Debtor's Non-Cash Assets shall be the value used in the most recent balance sheet in the monthly operating report filed prior to the Distribution Date for all Non-Cash Assets other than intercompany receivables and investments, which shall be valued based on the methodology in the "Recovery Analysis" included in the Disclosure Statement.  The Non-Cash Assets included in the calculation of the Minimum Asset-Reserve Ratio and that may be retained on account of Disputed Claims in lieu of Available Cash shall exclude assets against which an entity has asserted a security interest, whether or not the Debtors dispute the validity of the asserted security interest.

that have become Allowed since the last Distribution Date, in each case, up to the amount of each such holder's Catch-Up Distribution, before a Minimum Cash Reserve is funded and further Distributions are made to holders of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they were entitled.

iv.  If there is any Available Cash remaining on a Distribution Date after all holders of Allowed Disputed Claims have received their entire Catch-Up Distribution and a Minimum Cash Reserve has been funded for outstanding Disputed Claims, such remaining Available Cash shall be distributed to all holders of unsecured, non-priority Allowed Claims in accordance with the Plan.

D.  <u>Exclusion of Plan Adjustment and Subordinated Debt Redistributions</u>.  LBHI shall not substitute Non-Cash Assets for, or advance to holders of Allowed Claims, Cash that has been redistributed pursuant to the Plan Adjustment or Section 6.4 of the Plan (subordinated debt redistributions) and is to be retained and reserved for holders of Disputed Claims to the extent such Claims become Allowed Claims and are entitled to receive such Distributions.  Such amounts shall be retained in Cash and segregated exclusively for the benefit of holders of Disputed Claims in LBHI Classes 3 and 7 (in the case of Plan Adjustment) and LBHI Classes 3, 4A, 4B and 5 (in the case of subordinated debt redistributions).  If a Disputed Claim in LBHI Classes 3, 4A, 4B, 5 or 7 becomes an Allowed Claim, on the first Distribution Date that the holder of such Claim is entitled to receive a Distribution in accordance with Section 8.4 of the Plan, such holder shall receive: (i) in Cash, the redistributed amounts of Plan Adjustment or subordinated debt redistributions, as applicable, retained on account of such Claim equal to the amount of Plan Adjustment or subordinated debt redistributions that would have been distributed under the Plan on account of such Claim if such Claim had been Allowed as of the Effective Date, inclusive of any interest earned on such amount, and (ii) its remaining Catch-Up Distribution in accordance with the above.

E.  <u>Reporting</u>.  The post-Effective Date monthly operating report that is filed by the Plan Administrator at least 20 days after a Distribution Date shall include with respect to each Participating Debtor: (i) the aggregate amount of Distributions remitted to holders of Allowed Claims on the immediately preceding Distribution Date, (ii) the Minimum Cash Reserve amount and percentage retained after such Distribution Date, (iii) the Asset-to-Reserve Ratio existing on such Distribution Date, and (iv) the aggregate shortfall of Catch-Up Distributions, if any, that must be satisfied on subsequent Distribution Dates.

9.      Prior to the exercise of any authority granted pursuant to this Motion,

LBHI, in its sole discretion, may establish additional minimum conditions to be satisfied,

including, but not limited to, satisfaction of a higher ratio of Non-Cash Assets to Reserve

Amount than the Minimum Asset-to-Reserve Ratio or the retention of an Available Cash reserve greater than the Minimum Cash Reserve.[6] LBHI, also, may seek authorization to reduce the minimum terms and conditions set forth in the Motion as to the Participating Debtors or request similar relief on behalf of any other Debtor on the same or different terms and conditions as set forth in the Motion, in each case after due notice to all holders of affected Disputed Claims.

### Establishing a Non-Cash Reserve for
### Disputed Claims is in the Best Interests of Creditors

10.     The relief requested is reasonable and appropriate in light of the unique circumstances of the Debtors' chapter 11 cases and the intent to accelerate Cash Distributions to the extent practicable.  The Court has broad discretion under sections 105(a) and 1142(b) of the Bankruptcy Code to facilitate the administration and implementation of the Plan and to issue any appropriate order in furtherance thereof.  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party…to perform any other act . . . that is necessary to the consummation of the plan").

11.     The Debtors intend to commence distributions to creditors as soon as practicable following the Effective Date.  Due to the extremely large number and amount of the claims asserted against the Participating Debtors that are or may be disputed, absent the relief requested, large Available Cash reserves will need to be maintained by those Debtors.  This will significantly diminish initial Distributions to creditors with Allowed Claims.  The substitution of Non-Cash Assets of value under the appropriate parameters will protect the interests of holders

---

[6] LBHI anticipates that, with respect to certain Participating Debtors, on the initial Distribution Date, a Minimum Cash Reserve of greater than 25% will need to be maintained in order to satisfy the Minimum Asset-to-Reserve Ratio.

of Disputed Claims and will enable the Participating Debtors to accelerate Distributions to holders of Allowed Claims.

12.     LBHI estimates that the benefit to holders of Allowed Claims will be substantial.  For example, based upon the Debtors' preliminary analysis and assuming that Distributions were made as of the date of this Motion, if the Participating Debtors were required to reserve only Available Cash for Disputed Claims, the Debtors estimate that LBHI will be able to distribute approximately $3.3 billion and LBSF will be able to distribute approximately $4.8 billion to holders of unsecured, non-priority Allowed Claims.  In contrast, if the Participating Debtors are authorized to retain and reserve Non-Cash Assets for Disputed Claims as requested (with a 25% Minimum Cash Reserve and 2.5:1 Minimum Asset-to-Reserve Ratio), the Debtors estimate that LBHI will be able to distribute approximately $4.8 billion (approximately $1.5 billion increase) and LBSF will be able to distribute approximately $5.9 billion (approximately $1.1 billion increase) to holders of unsecured, non-priority Allowed Claims.[7]

13.     Holders of Allowed Claims will benefit from the time-value of having larger initial Distributions.  It would also be inequitable to delay appropriate distributions to the many holders of Allowed Claims that have reached settlements with the Debtors, accepting, in many cases, substantially reduced claim amounts in anticipation of the prompt receipt of distributions, because of the necessity to retain unusually large cash reserves for disputed claims filed by other creditors – an unnecessary requirement in light of the substantial value of Non-Cash Assets that are available to serve as reserves for Disputed Claims.

14.     The Debtors have made every effort to expedite the review and reconciliation of the proofs of claim asserted against them.  It is a monumental task that has been

---

[7] These estimated amounts are preliminary and may change materially prior to the initial Distribution.

ongoing, but will require continuing substantial efforts and additional time to complete.  To date,

the Debtors have pursued the resolution of claims through, among other means, filing and

prosecution of over 254 omnibus claims objections.  In addition, the Debtors have had numerous

successful settlement negotiations with many of their larger creditors.  The claims resolution

process, taken together with various settlements, has resulted in the voluntary withdrawal,

reduction, reclassification, disallowance or expungement of approximately 47,000 claims in the

amount of approximately $765 billion.

15.    Despite significant progress in the claims resolution process, a large

number and amount of filed claims must still be reviewed and reconciled by the Debtors.  For

example, as of the date of this Motion, the aggregate amount of outstanding Disputed Claims that

will need to be reserved for on the initial Distribution Date against LBHI total approximately

$112 billion.  The Debtors estimate the aggregate amount of Disputed Claims that will ultimately

be Allowed against LBHI at approximately $59 billion.  Beyond the sheer number and amounts

of outstanding Disputed Claims, the extreme complexity of the claims requires extensive

diligence, legal analyses and, in many instances, discovery and, ultimately, litigation to finally

resolve.

16.    The substitution of valuable Non-Cash Assets as described for Available

Cash as reserves for Disputed Claims is also consistent with the Debtors' practices employed

throughout these cases to maximize the value of their Non-Cash Assets through the active

management and sale of their assets.  Absent the authority requested, to accelerate Cash

Distributions to holders of Allowed Claims, the Debtors would be constrained to dispose of Non-

Cash Assets in less favorable circumstances, which will result in reduced aggregate recoveries.

The substitution of Non-Cash Assets for Available Cash reserves protects all interests and

enables the Debtors to continue to maximize value and, at the same time, increase the amount of Cash Distributions to holders of Allowed Claims.

### Disputed Claim Holders Are Not Prejudiced by the Motion

17.     The Motion satisfies the applicable legal standard and provides more than reasonable assurance that the interests of Disputed Claim holders against the Participating Debtors are protected.  Section 1123(a)(4) of the Bankruptcy Code requires that all allowed claims within a particular class get the same treatment, "and that if claims are disputed and not yet allowed (but have the potential to be allowed), *reasonable measures* must be taken to ensure that the required same treatment is received if and when they're allowed."  *In re Motors Liquidation Co., et al., f/k/a General Motors Corp., et al.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011) (emphasis added).  But, "[r]easonable steps likewise do not require . . . making all of the holders of already allowed claims take lesser distributions so as to accommodate those whose claims are now in dispute."  *Id.* at 216 n.47.  *See also In re Drexel Burnham Lambert Group Inc., et al.*, Case No. 90-10421 (Bankr. S.D.N.Y. March 5, 1992) (Second Amended and Restated Joint Chapter 11 Plan at Section 10.1.6(a) and Exhibit F), ECF No. 4608, which permitted the retention of non-cash assets as reserves for disputed claims at a discounted rate in lieu of cash that was to be distributed to holders of allowed claims.

18.     Holders of Disputed Claims will not be prejudiced by the retention and reservation of valuable Non-Cash Assets in lieu of Available Cash.  As stated in the Disclosure Statement, the Debtors estimate the aggregate value of gross recovery (before the payment of any Claims or expenses) will be approximately $63 billion and that after expenses and the payment of secured, administrative and priority claims, the Debtors (as a group) will distribute approximately $56 billion for their unsecured claims.  The Debtors and their non-debtor affiliates control approximately $29 billion of Cash after payment of operating expenses, costs of asset

preservation and certain priority claims.  Accordingly, substantial recoveries to be realized by creditors will be generated from the monetization of Non-Cash Assets over the next few years.[8]  In particular, due to the large amount and value of Non-Cash Assets held by LBHI (principally, receivables from other Debtors), LBHI's creditors will not realize a substantial portion of their recoveries until the other Debtors dispose of their assets and make payments to LBHI.  The disposition of each Participating Debtors' Non-Cash Assets is expected to be in conjunction with, and similar in timing to, the reconciliation of the many Disputed Claims against the Participating Debtors.

19.    The majority of the Participating Debtors' valuable Non-Cash Assets include commercial and residential real estate, commercial loans, private equity and principal investments, receivables from derivatives contracts and intercompany receivables.  A description of the Debtors' primary Non-Cash Assets is set forth in the Disclosure Statement, at 33-39.  The Debtors' projected asset values as stated in the Disclosure Statement are reasonable.  They were prepared by the Debtors with the advice of their financial advisors, who have been intimately involved in the administration of the Debtors' cases and assets for over three years.  Such advisors have extensive experience in the restructuring industry.  The Disclosure Statement values also were thoroughly reviewed and agreed to by the Creditors' Committee and its financial advisors as well as the many claimants who supported confirmation of the Plan, many of whom were represented by their own legal and financial advisors.

20.    The proposed Minimum Cash Reserve and Minimum Asset-to-Reserve Ratio sets the floor for the Plan Administrator – *i.e.,* the Plan Administrator could retain a higher

---

[8] The recovery analysis included in the Disclosure Statement sets forth the Debtors' estimates of net distributable assets that will be available.  *See* Disclosure Statement, Exhibit 4 at 4-11.  In addition, the Debtors' included a cash flow estimate for each Debtor that included the Debtors' forecast of the cash receipts that would be realized from each Debtor's non-cash assets through 2014.  *See* Disclosure Statement, Exhibit 7.

reserve of Available Cash than the Minimum Cash Reserve or a higher asset-to-reserve ratio than the Minimum Asset-to-Reserve Ratio – and provides holders of Disputed Claims with the same level of assurance that they will have access to the Participating Debtors' Available Cash if their Claims become Allowed as originally contemplated.  The protections for Disputed Claim holders incorporated in Section 8.4 of the Plan are not being modified.  Disputed Claim holders will continue to be entitled to the interest that would be have been earned on their entire Reserve Amount.  They also will retain the right to be paid first from Available Cash that is generated from the applicable Participating Debtor's Non-Cash Assets and, if there is insufficient Available Cash to pay such holders the Distributions that they were entitled to receive on a Distribution Date, such claimants continue to retain the right to receive their Catch Up Distributions ahead of any Distributions to any other holders of Allowed Claims that were not subject to a shortfall.

21.    The authority requested is fair and reasonable and is in the best interests of all parties in interest and the expeditious and efficient administration of the Debtors' cases and the implementation of the Plan.  The Motion should be granted.

## Notice

22.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all holders of affected Disputed Claims against the Participating Debtors in accordance with Section 8.4 of the Plan and the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases, ECF No. 9635.  The Debtors submit that no other or further notice need be provided.

23.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE LBHI respectfully requests that the Motion be granted and that the

Debtors be granted such other and further relief as is just.

Dated: New York, New York
        January 27, 2012


                                    /s/ Harvey R. Miller
                                    Harvey R. Miller
                                    Lori R. Fife

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                    Debtors.              :    (Jointly Administered)
                                          :
-------------------------------------------------------------------x
```

### ORDER AUTHORIZING USE OF NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN

Upon the motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI," together with its affiliated debtors, the "Debtors"), as Plan Administrator, for authority for each of the Participating Debtors (i) to substitute a Participating Debtor's Non-Cash Assets for a portion of Available Cash for the reserves required on account of unsecured, non-priority Disputed Claims against such Participating Debtor,[2] and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such Participating Debtor in accordance with the Plan, as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or Plan, as applicable.

[2] For the purpose of this Order, "Disputed Claims" shall include only the unsecured, non-priority Disputed Claims in any of LBHI Classes 3, 4, 4A, 5, 7, 8 or 9A, LCPI or LBSF Classes 4A or 5C, and LOTC, LBCC or LBCS Classes 4 or 5C.

1409; and due and proper notice of the Motion having been provided to (i) the United States

Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vii) all holders of affected Disputed

Claims against the Participating Debtors in accordance with Section 8.4 of the Plan and the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases, ECF No. 9635; and the relief sought

in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Plan Administrator is authorized for each of the Participating

Debtors (i) to substitute a Participating Debtor's Non-Cash Assets for a portion of Available

Cash for the reserves required on account of Disputed Claims against such Participating Debtor,

and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such

Participating Debtor in accordance with the Plan, on the following terms and conditions:

    A.  <u>Minimum Cash Reserve and Minimum Asset-to-Reserve Ratio</u>.  In order to retain Non-Cash Assets in lieu of Available Cash to satisfy Disputed Claims if such Claims become Allowed Claims for a particular Distribution, on the applicable Distribution Date:

      i.  the Participating Debtor must retain at least 25% of the Reserve Amount in Available Cash (the "<u>Minimum Cash Reserve</u>") (other than as may be necessary in accordance with C(ii) and (iii) below); and

     ii.  the ratio of (A) the value of the Participating Debtor's Non-Cash Assets to (B) the amount equal to the Reserve Amount minus the Minimum Cash

Reserve for such Participating Debtor must be equal to or greater than 2.5:1 (the "Minimum Asset-to-Reserve Ratio").[3]

B.   Interest.  If a Disputed Claim becomes Allowed and would be entitled to interest pursuant to Section 8.4 of the Plan, the holder of such Claim shall receive interest in an amount equal to the amount that would have been earned if the Debtors had maintained the entire Reserve Amount in Cash only and invested the Cash in the same manner as the Debtors invested the Minimum Cash Reserve.

C.   Disputed Claims Reserves and Distributions.

   i.   The Minimum Cash Reserve and Available Cash generated from Non-Cash Assets of a Participating Debtor will be pooled for all holders of Disputed Claims against such Participating Debtor, in the first instance.

   ii.  Thereafter, on each Distribution Date, the Minimum Cash Reserve and the Available Cash generated from Non-Cash Assets shall be used (A) first, to remit to each holder of a Disputed Claim that has become Allowed, on a *pro rata* basis, the amount of Distributions, inclusive of interest, that would have been made on account of each such Allowed Claim up to the applicable Distribution Date as if such Claim had been Allowed on the Effective Date (a "Catch-Up Distribution"), and (B) then, to fund a Minimum Cash Reserve for any outstanding Disputed Claims, before any further Distributions may be made on account of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they are entitled without any deficiency.

   iii. To the extent there is insufficient Available Cash on a Distribution Date to remit to each holder of a Disputed Claim that has become Allowed its Catch-Up Distribution in accordance with C(ii)(A) above, the deficiency shall be satisfied on the subsequent Distribution Date(s) from Available Cash generated from Non-Cash Assets on a *pro rata* basis with (A) any other previously Disputed Claims that became Allowed but did not receive their entire Catch-Up Distribution, and (B) all holders of Disputed Claims that have become Allowed since the last Distribution Date, in each case, up to the amount of each such holder's Catch-Up Distribution, before a Minimum Cash Reserve is funded and further Distributions are made to

---

[3]  The value of a Participating Debtor's Non-Cash Assets shall be the value used in the most recent balance sheet in the monthly operating report filed prior to the Distribution Date for all Non-Cash Assets other than intercompany receivables and investments, which shall be valued based on the methodology in the "Recovery Analysis" included in the Disclosure Statement.  The Non-Cash Assets included in the calculation of the Minimum Asset-Reserve Ratio and that may be retained on account of Disputed Claims in lieu of Available Cash shall exclude assets against which an entity has asserted a security interest, whether or not the Debtors dispute the validity of the asserted security interest.

holders of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they were entitled.

iv.  If there is any Available Cash remaining on a Distribution Date after all holders of Allowed Disputed Claims have received their entire Catch-Up Distribution and a Minimum Cash Reserve has been funded for outstanding Disputed Claims, such remaining Available Cash shall be distributed to all holders of unsecured, non-priority Allowed Claims in accordance with the Plan.

D.  <u>Exclusion of Plan Adjustment and Subordinated Debt Redistributions</u>.  LBHI shall not substitute Non-Cash Assets for, or advance to holders of Allowed Claims, Cash that has been redistributed pursuant to the Plan Adjustment or Section 6.4 of the Plan (subordinated debt redistributions) and is to be retained and reserved for holders of Disputed Claims to the extent such Claims become Allowed Claims and are entitled to receive such Distributions.  Such amounts shall be retained in Cash and segregated exclusively for the benefit of holders of Disputed Claims in LBHI Classes 3 and 7 (in the case of Plan Adjustment) and LBHI Classes 3, 4A, 4B and 5 (in the case of subordinated debt redistributions).  If a Disputed Claim in LBHI Classes 3, 4A, 4B, 5 or 7 becomes an Allowed Claim, on the first Distribution Date that the holder of such Claim is entitled to receive a Distribution in accordance with Section 8.4 of the Plan, such holder shall receive: (i) in Cash, the redistributed amounts of Plan Adjustment or subordinated debt redistributions, as applicable, retained on account of such Claim equal to the amount of Plan Adjustment or subordinated debt redistributions that would have been distributed under the Plan on account of such Claim if such Claim had been Allowed as of the Effective Date, inclusive of any interest earned on such amount, and (ii) its remaining Catch-Up Distribution in accordance with the above.

E.  <u>Reporting</u>.  The post-Effective Date monthly operating report that is filed by the Plan Administrator at least 20 days after a Distribution Date shall include with respect to each Participating Debtor: (i) the aggregate amount of Distributions remitted to holders of Allowed Claims on the immediately preceding Distribution Date, (ii) the Minimum Cash Reserve amount and percentage retained after such Distribution Date, (iii) the Asset-to-Reserve Ratio existing on such Distribution Date, and (iv) the aggregate shortfall of Catch-Up Distributions, if any, that must be satisfied on subsequent Distribution Dates.

; and it is further

ORDERED that prior to the exercise of the authority granted pursuant to this

Order, LBHI, in its sole discretion, may establish additional minimum conditions to be satisfied,

including, but not limited to, satisfaction of a higher ratio of Non-Cash Assets to Reserve

Amount than the Minimum Asset-to-Reserve Ratio or the retention of an Available Cash reserve

greater than the Minimum Cash Reserve; and it is further

ORDERED, except as expressly set forth herein, nothing in this Order shall

modify or amend any provision of the Plan or the Confirmation Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
      [_____], 2012


_____
UNITED STATES BANKRUPTCY JUDGE