Hearing Date and Time: March 21, 2012 at 10:00 a.m. (Eastern Time)
Response Deadline: March 14, 2011 at 4:00 p.m. (Eastern Time)

Craig J. Albert
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, NY 10022
Tel.:   (212) 209-3050
Fax:    (212) 371-5500
*Attorneys for Edward J. Agostini Living Trust
Dated May 12, 2000, Sylvia Agostini Living
Trust Dated May 12, 2000, and
Edward J. Agostini and Sylvia Agostini
as Joint Tenants with Right of Survivorship*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

----------------------------------------------------------------------x

**NOTICE OF HEARING ON
MOTION OF THE AGOSTINI PARTIES
PURSUANT TO 11 U.S.C. §§ 105 AND 362
FOR RELIEF FROM THE AUTOMATIC STAY AND
FOR AN ORDER DIRECTING LEHMAN BROTHERS OTC DERIVATIVES, INC.
TO RELEASE AND RETURN NONESTATE PROPERTY**

**PLEASE TAKE NOTICE** that on January 30, 2012, The Edward J. Agostini Living Trust Dated May 12, 2000, the Sylvia Agostini Living Trust Dated May 12, 2000, and Edward J. Agostini and Sylvia Agostini as Joint Tenants with Right of Survivorship (the "Agostini Parties") filed their Motion Pursuant To 11 U.S.C. §§ 105 And 362 For Relief From The Automatic Stay And For An Order Directing Lehman Brothers OTC Derivatives, Inc. To Release And Return Nonestate Property (the "Agostini Motion"), and that a hearing (the "Hearing") to consider the Agostini Motion will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for

130327

the Southern District of New York, One Bowling Green, New York, New York 10004, on March 21, 2012 at 10:00 a.m. (Eastern Time), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Agostini Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert Lemons, Esq., Penny Reid, Esq., and Ralph Miller, Esq.); (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Elisabeth Gasparini, Esq. and Andrea Schwartz, Esq.); (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.) and (v) attorneys for the Agostini Parties, Reitler Kailas & Rosenblatt LLC, 885 Third Avenue, 20th Floor, New York, New York 10022 (Attn: Craig J. Albert, Esq.); so as to be so filed and received by no later than March 14, 2012 at 4:00 p.m. (Eastern Time) (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Agostini Motion, the relief requested may be granted without a hearing.

Dated: New York, New York
January 30, 2012

        REITLER KAILAS & ROSENBLATT LLC

        /s/ Craig J. Albert
By: _____
        Craig J. Albert
        885 Third Avenue, 20th Floor
        New York, New York 10022
        (212) 209-3050
        *Attorneys for Edward J. Agostini Living Trust Dated May 12, 2000, Sylvia Agostini Living Trust Dated May 12, 2000, and Edward J. Agostini and Sylvia Agostini as Joint Tenants with Right of Survivorship*

Hearing Date and Time: March 21, 2012 at 10:00 a.m. (Eastern Time)
Response Deadline: March 14, 2011 at 4:00 p.m. (Eastern Time)

Craig J. Albert
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, NY 10022
Tel.:   (212) 209-3050
Fax:   (212) 371-5500
*Attorneys for Edward J. Agostini Living Trust*
*Dated May 12, 2000, Sylvia Agostini Living*
*Trust Dated May 12, 2000, and*
*Edward J. Agostini and Sylvia Agostini*
*as Joint Tenants with Right of Survivorship*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------------x

### MOTION OF THE AGOSTINI PARTIES
### PURSUANT TO 11 U.S.C. §§ 105 AND 362
### FOR RELIEF FROM THE AUTOMATIC STAY AND
### FOR AN ORDER DIRECTING LEHMAN BROTHERS OTC DERIVATIVES, INC.
### TO RELEASE AND RETURN NONESTATE PROPERTY

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Edward J. Agostini Living Trust Dated May 12, 2000[1] (the "EA Trust"), the Sylvia Agostini Living Trust Dated May 12, 2000 (the "SA Trust"), and Edward J. Agostini and Sylvia Agostini as Joint Tenants with Right of Survivorship[2] (the "Joint Account") (collectively, the "Agostini Parties") respectfully move this Court pursuant to 11 U.S.C. §§ 105 and 362 for relief

---

[1] The EA Trust is listed on the Debtor's schedules as "Ed Agostini Living Trust DTD 5/12/2000".
[2] The Joint Account is listed on the Debtor's schedules as "Edward J. Agostini and Sylvia Agostini JTWROS".

130327

from the automatic stay and for an order directing Debtor Lehman Brothers OTC Derivatives, Inc. ("LOTC") to release and return certain nonestate property consisting of Class B common shares of United Parcel Service, Inc. (the "UPS-B Shares") or the proceeds thereof. In support of its motion, the Agostini Parties respectfully represent as follows:

## BACKGROUND AND SUMMARY

1.  LOTC is holding as collateral certain shares or proceeds of shares that the Agostini Parties delivered nearly five years ago in May 2007 in connection with three forward derivative contracts (the "Forward Contracts"). Declaration of Edward J. Agostini, sworn to January 30, 2012 (hereinafter referred to as "Agostini Decl."), ¶¶ 4-5. The Agostini Parties delivered the collateral to secure the performance of their promises to deliver to Debtor LOTC a total of 50,000 UPS-B Shares on or about May 2, 2011 (the "Valuation Date"). *Id.* The Forward Contracts were executory when LOTC filed its Chapter 11 petition and they have not been rejected. *Id.* ¶ 9. Now that the Valuation Date has passed, the parties' final obligations to one another under the Forward Contracts can be determined by reference to the contracts and to certain objective market data.

2.  Of the 50,000 shares originally delivered as collateral, LOTC is entitled to keep 46,408 shares and is required to return 3,592 shares, and is further required to turn over $209,687.79, plus interest.[3]

3.  The estate of LOTC stands to gain over $3.53 million dollars by simply closing out the Forward Contracts because it will then have unencumbered possession of 46,408 UPS-B

---

[3] The Agostini Parties have undertaken their own analysis of what the parties' mutual delivery obligations are because LOTC has not performed its duty to perform the calculations in its capacity as "Calculation Agent" pursuant to Master Agreement Schedule Part 4(e). The summary of those calculations is annexed to Agostini Decl. Exh. J.

2

shares.[4] Those unencumbered assets can then be used for the estate's expenses. This motion therefore seeks relief from the automatic stay and an order compelling LOTC to deliver the nonestate property.

**FACTS**

4. Each of the Agostini Parties was party to a forward derivatives contract as documented in a Confirmation with LOTC, dated as of May 7, 2007 (each, a "Forward Contract").[5]

5. Each Forward Contract consists of the following elements:[6]

(a) An ISDA Master Agreement for Over-the Counter Fully-Covered Equity Option and Forward Transactions, dated as of April 19, 2007 (the "Master Agreement") (Copies of the pages delivered by LOTC to the Agostini Parties are annexed as Agostini Decl. Exh. A; a copy of the complete LOTC base form is annexed as Agostini Decl. Exh. B);

(b) A Schedule to the Master Agreement for Over-the Counter Fully-Covered Equity Option and Forward Transactions, dated as of April 19, 2007 (the "Master Agreement Schedule") (Copies of the pages delivered by LOTC to the Agostini Parties are annexed as Agostini Decl Exh. C.)

(c) A Credit Support Annex to the Schedule to the Master Agreement for Over-the Counter Fully-Covered Equity Option and Forward Transactions, dated as of April 19, 2007 (the "Credit Support Annex") (Copies of the pages delivered by LOTC to

---

[4] The closing price of UPS-B shares was $76.04 per share on January 27, 2012.
[5] The Agostini Parties were also party to guarantee contracts with Lehman Brothers Holdings Inc. dated as of April 19, 2007. The guarantee contracts are not at issue in this motion.
[6] The Agostini Parties' Forward Contracts are identical to one another, other than with respect to the identities of the parties and the numbers of shares.

3

the Agostini Parties are annexed as Agostini Decl. Exh. D; a copy of the complete LOTC base form is annexed as Agostini Decl. Exh. E);

(d) A Credit Support Annex Elections and Variables, dated as of April 19, 2007 (the "Credit Support Annex Elections and Variables") (Copies of the pages delivered by LOTC to the Agostini Parties are annexed as Agostini Decl. Exh. F);

(e) A Transaction Confirmation, dated May 7, 2007 (the "Confirmation") (Copies of the pages delivered by LOTC to the Agostini Parties are annexed as Agostini Decl. Exh. G).

The 2002 ISDA Equity Derivatives Definitions were incorporated by reference. (A copy of the definitions is available at http://associacaodeinvestidores.com/blog/wp-content/uploads/2010/06/isda-2002-isda-equity-derivatives-definitions.pdf (last visited January 26, 2011)

6. The Forward Contracts initially obligated EA Trust to deliver 13,513 UPS-B shares, the SA Trust to deliver 24,087 UPS-B shares, and the Joint Account to deliver 12,400 UPS-B shares, after May 2, 2011, subject to later adjustment based on specified market conditions. Master Agreement § 2(a)(i) (Agostini Decl. Exh. A); Confirmation at 2 (Agostini Decl. Exh. G). They required LOTC to make an initial payment to each of the Agostini Parties for those shares on May 7, 2007. Master Agreement § 2(a)(i)-(ii) (Agostini Decl. Exh. A); Confirmation at 2 (Agostini Decl. Exh. G). The balance of payment for those shares – whose amount depended upon a set of variables to be later determined – was to be made in May 2011. Master Agreement § 2(a)(i)-(ii) (Agostini Decl. Exh. A); Confirmation at 2 (Agostini Decl. Exh. G).

7. To secure their promise of a May 2011 future delivery, the Agostini Parties were required to deliver UPS-B Shares to LOTC as collateral in May 2007. Master Agreement §

4

2(a)(i) (Agostini Decl. Exh. A); Master Agreement Schedule, Part 4(f) (Agostini Decl. Exh. B); Credit Support Annex ¶ 2 (Agostini Decl. Exh. E); Credit Support Annex Elections and Variables ¶ 13(b)(ii) (Agostini Decl. Exh. F); Confirmation at 7-8 (Agostini Decl. Exh. G) (describing the Collateral to be delivered). EA Trust delivered 13,513 UPS-B shares as collateral, the SA Trust delivered 24,087 UPS-B shares as collateral, and the Joint Account delivered 12,400 UPS-B shares as collateral. Agostini Decl. ¶ 5.

8. The Agostini Parties also pledged to LOTC the dividends received in respect of the UPS-B shares. Credit Support Annex ¶ 12 (Agostini Decl. Exh. E) (definition of "Distributions"); *see* Confirmation at 7 (Agostini Decl. Exh. G) (pledged Independent Amount includes Distributions). LOTC paid those dividend amounts over to the Agostini Parties from May 2007 to August 2008 pursuant to Credit Support Annex ¶ 6(d)(i). Agostini Decl. ¶ 6.

9. LOTC filed its petition for Chapter 11 protection on October 3, 2008. It has not rejected the Forward Contracts. It ceased forwarding the dividend payments after the Debtors filed for Chapter 11 protection. Agostini Decl. ¶ 6. Accordingly, $6.21 per UPS-B share in dividends were added to the collateral beginning with the first post-petition dividend date pursuant to Credit Support Annex ¶ 12 (Agostini Decl. Exh. E) (definitions of "Posted Collateral"[7] and "Distributions") and continuing through the most recent declared dividend of November 9, 2011.

10. The final price to be paid by LOTC for the UPS-B Shares was to be determined by reference to a formula based upon the closing price of UPS-B on the "Valuation Date" of May 2, 2011. The default method of "physical settlement" was applicable, meaning that instead

---

[7] The "Posted Collateral is defined to include both the UPS-B Shares and the "other property, Distributions, and all proceeds thereof that have been transferred to or received by the Secured Party . . . ." Credit Support Annex ¶ 12 (definition of "Posted Collateral"). Thus, even if LOTC

of cash changing hands, LOTC would receive a portion of the pledged shares for its own account, and the remaining shares would be returned to the Agostini Parties. Confirmation at 3 (Agostini Decl. Exh. G) . The Agostini Parties gave LOTC the required notice to perform the calculations by letter dated July 15, 2011, which then shifted the burden to LOTC to perform the valuation and return the remainder of the collateral. See Agostini Decl. ¶ 11 & Exh. I. LOTC has done neither one. *Id.*

11.     Based upon the formula set forth in the parties' agreements, the Agostini Parties are required to deliver less than 50,000 United Parcel Service Class B common shares, and LOTC is holding those shares – and more – today. Indeed, LOTC is holding both the shares that it is owed plus at least 3,592 shares that belong to the Agostini Parties, and that are not part of the Debtor's Estate. It is also holding $209,687.79 in Proceeds, which is also nonestate property. See Agostini Decl. ¶ 13 & Exh. J.

## JURISDICTION

12.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BASIS FOR RELIEF

13.     Section 105(a) of the Bankruptcy Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14.     Section 541(d) of the Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(l) or (2) of this section only to

---

exercised its rights under the Credit Support Annex to use that collateral, the Agostini Parties' rights continued in whatever LOTC received in respect of that use.

the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. §541(d). The Agostini Parties retained equitable title to the UPS-B Shares and merely granted LOTC a security interest in those shares. Under Section 541, the UPS-B Shares were therefore never property of the estate; only the security interest in those shares was property of the estate.

15. Since LOTC had physical possession of the UPS-B Shares, but only had a security interest in those shares, it has been limited in what it can do with those shares. The Agostini Parties' UPS-B shares, and the proceeds of those shares, are "cash collateral" within the meaning of Section 361. That section provides that

> "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of a case under this title.

The Debtor LOTC has not requested either consent or an order to use the cash collateral under 11 U.S.C. § 361, and therefore that collateral should be in the same condition as it was at the commencement of this case.

16. The Forward Contracts were designed specifically to assure that ownership of the collateral remained with the Agostini Parties, and did not shift to LOTC until the contract was finally settled in May 2011. Were it not so, the transfer of the collateral to LOTC would have been a taxable event to LOTC in May 2007. Thus, the Credit Support Annex Elections and Variables provides:

> Party A [LOTC] and Party B [each of the Agostini Parties] intend that the Secured Party's use of Posted Collateral consisting of securities pursuant to the provisions of Paragraph 6(c) shall constitute a transfer of securities by the Pledgor to the Secured Party pursuant to an agreement meeting the requirements of Section 1058 of the U.S. Internal Revenue Code of 1986, as amended (the 'Code'), and Pledgor

7

agrees to take all reasonable steps necessary to ensure that any such transfer will qualify for nonrecognition treatment pursuant to such Section 1058."[8]

Credit Support Annex Elections and Variables ¶ 13(g)(ii) (Agostini Decl. Exh. F).

17.     The automatic stay has to date operated to prohibit the Agostini Parties from taking steps to reclaim possession of their property from the estate. *See* 11 U.S.C. § 362(a)(3) (automatic stay operates to prohibit "any act to obtain possession . . . of property from the estate"). Now that the Valuation Date has occurred, however, the Debtor no longer has a continuing interest in maintaining possession of the Agostini Parties' property. Section 362(d) of the Bankruptcy Code requires this Court to grant relief from the automatic stay under circumstances such as these. That section provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> . . .

---

[8] Section 1058 of the Internal Revenue Code supports the settled expectation of both LOTC and the Agostini Parties that the documented transfer in 2007 would not result in a realization of gain or loss until 2011. That statute provides as follows:
> (a) General rule
> In the case of a taxpayer who transfers securities (as defined in section 1236(c)) pursuant to an agreement which meets the requirements of subsection (b), no gain or loss shall be recognized on the exchange of such securities by the taxpayer for an obligation under such agreement, or on the exchange of rights under such agreement by that taxpayer for securities identical to the securities transferred by that taxpayer.
> (b) Agreement requirements
> In order to meet the requirements of this subsection, an agreement shall -
> (1) provide for the return to the transferor of securities identical to the securities transferred;
> (2) require that payments shall be made to the transferor of amounts equivalent to all interest, dividends, and other distributions which the owner of the securities is entitled to receive during the period beginning with the transfer of the securities by the transferor and ending with the transfer of identical securities back to the transferor;
> (3) not reduce the risk of loss or opportunity for gain of the transferor of the securities in the securities transferred; and
> (4) meet such other requirements as the Secretary may by regulation prescribe.
> (c) Basis
> Property acquired by a taxpayer described in subsection (a), in a transaction described in that subsection, shall have the same basis as the property transferred by that taxpayer.

26 U.S.C. § 1058.

8

>    (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>    (A) the debtor does not have an equity in such property; and
>
>    (B) such property is not necessary to an effective reorganization;

Here, the debtor no longer has any equity interest in the collateral pledged by the Agostini Parties. Instead, that property is now divided into two separate corpuses. The first is the shares (or proceeds of shares) that the Agostini Parties were required to deliver in May 2011 and which they have tendered, less the setoff for the dividends. That corpus is the property of the estate, and the Agostini Parties have no interest in it. The second is the balance of the shares (or proceeds), which are no longer providing security for the Agostini Parties' past, completed performance. That corpus is the property of the Agostini Parties, and the estate has no interest in it. The test of Section 362(d)(2)(A) is satisfied.

18.    The Agostini Parties' property is not necessary to an effective reorganization. The Debtors' Proposed Plan of Reorganization makes no reference whatsoever to any use of the property pledged by the Agostini Parties. Had the use of the property been necessary, then the Debtors would have moved under 11 U.S.C. § 363 for an order permitting the use of that cash collateral. The fact that they have not done so is cogent evidence that this property is not necessary to an effective reorganization. The test of Section 362(d)(2)(B) is satisfied.

## NOTICE

19.    Notice has been served of this Motion in accordance with the procedures set forth in the order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the attorneys for the Debtors, (ii) the U.S. Trustee, (iii) the attorneys for the Creditors' Committee and (iv) all parties who have requested notice in these chapter 11 cases. The Agostini Parties submit that no other or further notice need be provided.

9

20. No previous request for the relief sought herein has been made by the Agostini Parties to this or any other court.

## CONCLUSION

WHEREFORE the Agostini Parties respectfully requests that the Court grant the relief requested herein and (i) direct the Debtor to deliver immediately to the Agostini Parties' a total of 3,592 UPS-B shares and $209,687.79, plus interest and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
January 30, 2012

Respectfully submitted,

REITLER KAILAS & ROSENBLATT LLC
/s/ Craig J. Albert

By: _____
Craig J. Albert
885 Third Avenue, 20th Floor
New York, New York 10022
(212) 209-3050
*Attorneys for Edward J. Agostini Living Trust Dated May 12, 2000, Sylvia Agostini Living Trust Dated May 12, 2000, and Edward J. Agostini and Sylvia Agostini as Joint Tenants with Right of Survivorship*

10