**Objection Deadline: February 1, 2012, 4 pm EST**

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000
Craig M. Price (CP-9039)
Laura E. Appleby (LA-4879)

*Attorneys for Bank of Montreal*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) |
| | ) Case No. 08-13555 (JMP) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |

**BANK OF MONTREAL'S RESPONSES AND OBJECTIONS TO SUBPOENA OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO RULES 2004 AND 9016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Rule 45 of the Federal Rules of Civil Procedure, made applicable by Rule 9016 of the Federal Rules of Bankruptcy Procedure and the Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities, dated November 23, 2009 (Docket No. 5910) (the "*Subpoena Authorization Order*"), Bank of

3035417.01.13-1.doc

Montreal (*"BMO"*) hereby responds and objects to the Requests for Documents contained in the Subpoena for Rule 2004 Examination, dated June 9, 2011 (the *"Subpoena"*), served by counsel for Lehman Brothers Holdings Inc., *et al*.

## INTRODUCTION

In September of 2009, BMO filed its proof of claim (Number 24930) against Lehman Brothers Special Financing, Inc. (*"LBSF"*) based upon the termination of ISDA Master Agreement (*"ISDA"*) dated as of April 13, 1994 by and between LBSF and BMO together with the schedules, Credit Support Annex,[1] appendices, exhibits and amendments thereto and BMO's proof of claim (Number 24931) against Lehman Brothers Holdings, Inc. (*"LBHI"*) based upon its guarantee. Both claims were filed in the amount of USD 30,757,014.85, plus additional amounts specified in the proofs of claim, taking into account the Posted Collateral, as defined in the Credit Support Annex, that LBSF did not return. Shortly thereafter, in October of 2009, BMO submitted the required, extensive Derivatives Questionnaire and related material further detailing the basis for its claims. In or around May of 2010, BMO was contacted by a representative of Legacy Asset Management Company, a subsidiary of LBHI (*"LAMCO"*) with respect to the claims. Representatives of BMO spent many hours in conversations with representatives of LAMCO and produced the key documents underlying the claims. LAMCO was provided a notebook of key documents, including quotes obtained from dealers, screen shots and trade summaries.

BMO's cooperation with the Debtors did not stop there. At the request of LAMCO, BMO provided the documents contained in the notebook in CD form (quotes, key documents, trade summaries, etc.) which required the scanning of a large number of documents. Soon after BMO provided LAMCO with the CDs, LAMCO then requested that BMO put the same

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to such terms in the ISDA or the Subpoena unless a different meaning is apparent from the context.

- 2 -

information BMO had provided in the CDs in an Excel spreadsheet to aid in LAMCO's analysis. In other words, LAMCO required BMO to create spreadsheets to generate documents that did not previously exist. While BMO considered this request highly unusual, in the spirit of cooperation, BMO utilized its own employees for this task taking them away from their normal duties. Many of the requests of LAMCO were related to LAMCO's theory, which BMO contends is not supported by the ISDA or applicable law, that valuations on termination should be measured at a theoretical "mid-market" regardless of available quotes. Representatives of BMO's trading desk were made available to LAMCO to explain the procedures used in calculating the amount of the claims. This informal discovery between BMO and LAMCO proceeded until June 2011 when the Subpoena was issued.

In accordance with the Subpoena Authorization Order, after BMO's receipt of the Subpoena issued by the Debtors directed to BMO, BMO timely served upon the Debtors its Objections to the Subpoena. Thereafter, while reserving its rights, BMO searched and reviewed 32,057 e-mails of numerous custodians and produced to the Debtors over 4,000 pages of documents, e-mails and electronic documents and an extensive privilege log (the *"Prior Production"*). Since the issuance of the Subpoena, Debtors have continued to request BMO to utilize its resources to create documents that did not previously exist for production to Debtors. Debtors have, for example, requested detail regarding replacement trades, mark-to-market data and internal profit and loss reports well beyond the requirements of the ISDA, the Bankruptcy Code and Rules or any other applicable law. At Debtors' request, BMO prepared Excel spreadsheets with trades that hedged the terminated credit-default-swap trades and created mark-to-market reports on a trade-by-trade basis (necessitating resort to BMO's archives). It is not an understatement for BMO to submit that it has not only met but exceeded any reasonable expectation of cooperation in these discussions. Nevertheless, Debtors continue to request that

- 3 -

BMO create new documents from existing data. BMO respectfully submits that the documents produced already are and should be more than sufficient to permit the Debtors to determine the reasonableness and accuracy of BMO's claims.

Moreover, despite a number of requests by BMO, Debtors have refused to grant reciprocal discovery when requested or provide any response to the documents produced by BMO which it contends support its claims. It is respectfully submitted that this type of one-sided discovery will not lead to a resolution of this matter. Rather than comply with the Debtors' additional discovery requests which would require BMO to create documents which do not currently exist, BMO has little choice but to file this formal response and objection to the Subpoena and seek the Court's assistance.

## GENERAL OBJECTIONS

A. BMO objects to the Relevant Time Period covered by the Subpoena on the grounds that it is overly broad and unduly burdensome on BMO.

B. BMO objects to each Request to the extent that it calls for the production of documents or disclosure of information protected by any privilege, including, without limitation, the attorney client privilege, the work product doctrine, information disclosed in compromise negotiations or any other available and valid grounds for withholding documents or information from production or disclosure.

C. BMO objects to each Request to the extent that it seeks information or documents containing private, confidential, secret, proprietary and/or sensitive business information of BMO, its employees and/or third parties.

D. BMO objects to each Request to the extent that it seeks the production of documents or disclosure of information that BMO has already provided to the Debtors, that is

already in the possession, custody or control of the Debtors and/or may be more readily available from another party.

  E. BMO objects to these Requests on the grounds that they are vague, overly broad and unduly burdensome and seek information or documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors thereto nor reasonably calculated to lead to the discovery of admissible information.

  F. BMO objects to each Request to the extent it purports to require BMO to create documents that do not currently exist.

  G. BMO objects to each Definition, Instruction and Request to the extent it seeks to impose any obligations or responsibilities other than those mandated by the Federal Rules of Civil Procedure made applicable to these proceedings by the Federal Rules of Bankruptcy Procedure or any other applicable rule of law or doctrine.

  H. BMO objects to each Definition, Instruction and Request to the extent that it purports to require BMO to produce documents or disclose information by or with respect to entities other than BMO.

  I. BMO objects to the definitions of "BMO," "you," "your" or "Replacement Transaction" on the grounds that they are overly broad and unduly burdensome and it would be impossible for BMO to discern or identify the identity of any and all such individuals, entities, models or transactions.

  J. BMO's response that it will produce Documents responsive to any particular Request does not mean that it has such Documents, and its response should not be construed in such a manner.

  K. Where BMO has previously produced Documents or disclosed information, this response shall be construed to mean that BMO has produced Documents or disclosed

- 5 -

information located after reasonable inquiry of those employees of BMO whom it reasonably believed might possess relevant information and Documents.

L.  BMO objects to each Definition, Instruction and Request to the extent that it purports to require BMO to search for and produce all e-mails and electronic documents. In this regard, BMO further objects to the Instructions concerning electronically stored information to the extent they seek embedded data, hidden data and metadata.

M.  BMO objects to the Subpoena to the extent it calls for information "concerning" or "relating" to a particular topic on the grounds that gathering all documents containing any reference or relationship to a particular topic is unduly burdensome and is out of proportion to the document's potential relevance.

N.  BMO objects to the Subpoena to the extent that it seeks production of "all Documents" under circumstances in which a production of a subsection of "all documents" would be sufficient to show pertinent information.

O.  BMO reserves all objections as to the competence, relevance, materiality, admissibility or privileged status of any information referenced in response to this Subpoena unless BMO specifically states otherwise.

P.  BMO reserves the right to amend or supplement these responses with additional Documents that may become available or come to its attention in the future and to rely upon such information or Documents in any hearing, trial or other proceeding in this matter.

Q.  All General Objections set forth herein are incorporated into each individual response set forth below and have the same force and effect as if fully set forth therein.

### REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Any and all Documents and/or Communications concerning the Swap Agreement, including the creation, negotiation, or execution of the Swap Agreement (whether created prior to, or during, the Relevant Time Period).

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence.  The Swap Agreement contains an integration clause rendering documentation regarding the creation, negotiation or execution of the Swap Agreement irrelevant for purposes of this Request.  BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 2:**  Any and all Documents and/or Communications concerning the Transactions and/or the Replacement Transactions (whether created prior to, or during, the Relevant Time Period).

**RESPONSE:**  BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence.  BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 3:**  Any and all Documents and/or Communications concerning the trading relationship between or among You and the Debtors.

**RESPONSE:**  BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence.  BMO also objects to this Request to the extent it seeks Documents or Communication other than those generated in connection with the Swap Agreement.  BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 4:** Any and all Documents concerning the Transactions entered into under the Swap Agreement, including the following information, which shall be provided on a weekly basis during the Relevant Time Period except for the period of September 1, 2008 through September 20, 2008, when such information should be provided on a daily basis:

(a) Transaction ID;

(b) Transaction date, effective date, maturity date;

(c) Transaction type;

(d) Transaction price;

(e) Forward marks (include any identification of whether this represented a quotation and/or a bid, mid-market or ask price) or any other valuation method utilized (*e.g.*, amortized cost or accrual);

(f) Notional Amount;

(g) Position reports; and

(h) Intra-day and/or closing risk reports, including BMO's closing report for the Transactions on September 12, 2008.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 5:** Any and all Documents and/or Communications reflecting the calculation of and/or methodology used to determine the value of the Transactions and/or Replacement Transactions, whether or not You consider such Transactions or Replacement Transactions to have matured, expired, terminated or to be outstanding, including:

(a) Policies and/or guidelines relating to termination of the Transactions or Replacement Transactions;

(b) The methodology for determining the values, including add-ons or adjustments, of the terminated Transactions including the calculation of Close-out Amount, Loss, or the determination of Market Quotation, as those terms are defined in the relevant Swap Agreement;

(c)  Documents and Communications generated or received by You setting forth the calculations and determinations of such values and/or the calculation of Close-out Amount, Loss, or the determination of Market Quotation;

(d)  The components of the calculation of Close-out Amount, Loss, or the determination of Market Quotation (including all Documents concerning the relevant price solicitation process);

(e)  Back-up quotations, calculations, journal entries, trade ledgers, blotters, spreadsheets, notes and/or work papers concerning the calculation of Close-out Amount, Loss, or the determination of Market Quotation; and

(f)  Persons involved in those calculations.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 6:** Any and all Documents, including all data, concerning the methodologies or models used to calculate the aforementioned valuations and determinations in Request Nos. 4 and 5 and the application of those methodologies to or use of those models in connection with the Transactions or Replacement Transactions, including any data, used to calculate or otherwise concerning the value of the Transactions or the Replacement Transactions and the outstanding amounts of accounts payable or receivable between the Debtors and You as of the relevant termination date of the Swap Agreement, including:

(a)  Correlation Methodology;

(b)  Discounting methodology:

(c)  Transaction netting methodology;

(d)  Bid-ask spread construction methodology;

(e)  Time stamped pricing runs and/or third party quotes;

(f)  Internally modeled prices;

(g)  Forward curves, interest rate curves or any other curves used by You to calculate the aforementioned valuations and determinations.

- 9 -

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 7:** Any and all Documents and/or Communications reflecting the calculation of and/or methodology used to determine the market value as that term is used in the Documents provided by You to the Debtors, including an explanation of any notes and/or work papers concerning such calculation, any inputs or assumptions utilized in such calculation, and the source, date and time of such inputs.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this request on the grounds that the information sought is not properly the subject of a document request. Additionally, BMO objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 8:** With respect to data provided by You to the Debtors in schedules and/or spreadsheets under the column heading "MKT_VAL" and/or "MKT VALUE,", an explanation of such data, including inputs, methodologies, and assumptions used in calculated the same and/or Documents concerning or reflecting an explanation of such data. If such calculations were as of a date other than September 17, 2008, data reflecting the "MKT_VAL" and/or "MKT VALUE" of the Transactions as of the same time on September 17, 2008, including Documents and/or Communications reflecting such data as well as the calculation of and/or methodology used to determine the "MKT_VAL" and/or "MKT VALUE."

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, seeks information and communications that are privileged in the nature of compromise negotiations and settlement discussions, and, given its

- 10 -

scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this request on the grounds that the information sought is not properly the subject of a document request. Additionally, BMO objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 9:**  Any and all Documents concerning steps taken in connection with the termination of the Swap Agreement, including any Documents concerning: (a) any steps taken by You to obtain quotations for a Replacement Transaction, including all responses thereto and any analysis or modeling conducted as a result thereof or in connection therewith; (b) hedging risk on a transaction.

**RESPONSE:**  BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO also objects to this Request to the extent it seeks documents that are privileged in nature, including but not limited to the attorney-client privilege. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 10:**  Any and all Documents concerning the bid-ask spreads, add-ons and/or adjustments You made in connection with Your valuations of the Transactions, including any Documents concerning: (a) the amount of Your claim attributable to such bid-ask spreads, add-ons and/or adjustments; (b) Your calculations of any bid-ask spreads, add-ons and/or adjustments; and (c) Your rationale for such bid-ask spreads, add-ons and/or adjustments.

**RESPONSE:**  BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 11:** Any and all Documents concerning or explaining Your "CDS adjustment methodology," as referenced in emails from Guadalupe Marquez to John Mawe on March 9, 2011 and March 16, 2011.

Response: BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO also objects to this Request on the grounds that it references communications that are privileged in the nature of compromise negotiations and settlement discussions.

BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 12:** Any and all Documents concerning the Notice of Event of Default and/or the Notice of Calculations, including any documents concerning: (a) any determinations as to the calculation date(s) and/or time(s) to be used therein; (b) any determinations as to whether the calculation date(s) and/or time(s) used therein were commercially reasonable; (c) any documents used in preparing the Notice of Event of Default and/or the Notice of Calculations; and/or (d) any discussions between or among You and/or the Debtors, with respect to the calculation date(s) and/or time(s) to be used therein.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO also objects to this Request on the grounds that it references communications that are privileged in the nature of compromise negotiations and settlement discussions, and that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 13:** Any and all documents concerning the netting of or failure to net payments of amounts due and/or owed under the Swap Agreement, including how You accounted for netting in the calculations set forth in the Notice of Calculations and/or your rationale for netting or not netting.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 14:** Any and all Documents concerning any calculations of margin, collateral, exposure or credit support amounts due and/or owed under the Swap Agreement pursuant to any related Credit Support Document, including any Documents relating to or used in preparing the Demand for Posted Collateral.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 15:** Any and all Documents and/or Communications reflecting the methodology You historically used to determine the value of transactions governed by the 1992 or 2002 standard forms of ISDA Master Agreements, including policies and/or guidelines relating to termination of transactions entered into thereunder and/or the calculation of Loss, Close-out Amount, or the determination of Market Quotation, as defined in the Swap Agreement.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. Only the relevant Master Agreement and the calculation of the termination amount thereunder are appropriate subjects of inquiry by the Debtors. Historical practices with respect to other transactions are irrelevant, particularly in light of the differences in the underlying documentation and the unprecedented market conditions at the time of the Debtors' collapse.

**REQUEST NO. 16:** Any and all Documents, including Your books and records, concerning how You accounted for: (a) the Transactions and/or the Replacement Transactions, including Your treatment of the Transactions and/or the Replacement Transactions in accordance with any applicable Reporting Standards; (b) any transfer of funds or posting of collateral from You to the Debtors or any non-Debtor affiliates; and/or (c) any receipt of funds or collateral by You from the Debtors or any non-Debtor affiliates.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 17:** Any and all Documents concerning Your efforts to mitigate Your alleged losses or damages under the Swap Agreement.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 18:** Any and all Documents that support, refute or otherwise concern the Proofs of Claim or any derivative or guarantee questionnaire submitted by You in connection therewith, including Documents concerning all components of the amounts that You claim are owed from the Debtors (*e.g.*, any Unpaid Amounts, Loss or Settlement Amounts, payments on account of Early Termination under Section 6(e) of any Master Agreement or otherwise, interest (default or otherwise), legal fees and expenses), whether created prior to, or during, the Relevant Time Period.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO also objects to this Request to the extent it seeks documents that are privileged in nature, including but not limited to the attorney-client privilege.

BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 19:** Any and all Documents that You received from or provided to any internal and/or external auditor, accountant, financial analyst or similar advisor, concerning the Swap Agreement and/or the Replacement Transactions.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

**REQUEST NO. 20:** Any and all Documents concerning audits, reviews, risk analyses or other qualitative or quantitative analyses concerning the Transactions and/or Replacement Transactions, including any analyses or review of the risk or exposure of You to the Debtors and any actions, directives, instructions and/or steps undertaken in connection therewith.

**RESPONSE:** BMO objects to this Request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, seeks documents that are not relevant to the Proofs of Claim of BMO or any potential objection of the Debtors, and, given its scope, not reasonably calculated to lead to the discovery of admissible evidence. BMO further objects to this Request on the grounds that its Prior Production is sufficient to respond to this Request.

*       *       *

REMAINDER OF PAGE LEFT INTENTIONALLY BLANK

Dated: February 1, 2012

Respectfully submitted,

BANK OF MONTREAL

By: _____/s/ Craig M. Price_____
One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000

Craig M. Price (CP 9039)
Laura E. Appleby (LA 4879)
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000