**CURTIS, MALLET-PREVOST,**
**  COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000

*Counsel for Debtors and Debtors-in-Possession*

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000

*Counsel for the Official Committee of*
*Unsecured Creditors of Lehman Brothers*
*Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|  |  |  |
|---|---|---|
|  | : |  |
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**MOTION OF THE DEBTORS AND THE COMMITTEE, PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND RULES 6004 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF THE SETTLEMENT TRANSACTION RESOLVING THE TWO HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO JPMORGAN'S ASSET MANAGEMENT FUND CLAIMS (NO LIABILITY, MISCLASSIFIED AND DUPLICATIVE CLAIMS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Movants") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), file this motion pursuant to sections 105(a) and 363 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of the settlement transaction resolving Lehman Brothers Holdings Inc.'s and the Creditors Committee's Two Hundred Twenty-Ninth Omnibus Objection to JPMorgan's Asset Management Fund Claims (No Liability, Misclassified and Duplicative Claims) (the "Claim Objection") [Docket No. 21293] and respectfully represent:

### Preliminary Statement

1.    By this Motion, the Movants seek approval of a settlement transaction (the "Settlement Transaction") that resolves the Movants' claim objection contesting the purported right of certain funds (the "Funds"), sponsored or managed by JPMorgan Chase Bank, N.A. ("JPMorgan Bank") or one of its affiliates, to fully satisfy their claims using the collateral JPMorgan Bank allegedly required LBHI to post before its bankruptcy on September 15, 2008.

2.    As the Court is aware, on September 9, 2008 JPMorgan Bank allegedly required LBHI to issue a guaranty of all liabilities of any type of LBHI and its subsidiaries to JPMorgan Bank and its affiliates, subsidiaries, successors and assigns (such guaranty, the "September Guaranty").  In total, LBHI posted $8.6 billion of cash and cash equivalents to secure the September Guaranty pursuant to a security agreement (the "September Security Agreement" and, together with the September Guaranty, the "September Agreements").

3.      On or about September 22, 2009, the Funds filed over $710 million of purportedly secured claims against LBHI on the basis that, as "affiliates" of JPMorgan Bank, their claims were guaranteed by LBHI under the September Guaranty and secured by the collateral posted by LBHI in connection therewith.  The proofs of claim filed by the Funds included claims for losses related to, among other things, bonds (including claims related to contractually subordinated debt issued by LBHI), unsettled trades, cancelled trades, derivatives unwinds, futures contracts, corporate actions and prime brokerage exposure.

4.      On October 26, 2011, Movants filed the Claim Objection seeking a ruling that the Funds were not "affiliates" of JPMorgan Bank and, thus, were not entitled to rely upon the September Agreements as a basis for asserting secured claims against LBHI.[1]  The Funds filed their opposition on December 16, 2011, and the Movants filed their reply on January 23, 2012.

5.      Rather than litigate the issues presented in the Claim Objection, the Movants and the Funds have agreed to settle their dispute.  In that regard, the parties have negotiated a term sheet, attached hereto as **Exhibit A** (the "Term Sheet"), which sets forth the material terms, provisions, conditions and obligations of the parties.  The parties anticipate that a binding settlement agreement ("Settlement Agreement") memorializing the terms set forth in the Term Sheet will be delivered to the Court on or before the hearing on the Motion.

6.      As set forth in more detail below, the Settlement Transaction (reflected in the Term Sheet and to be memorialized in the Settlement Agreement) contemplates, among other things,

- the return of $699.2 million to LBHI that had previously been provisionally allocated to satisfy the claims filed by the Funds' pursuant to the CDA (as defined below);

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Claim Objection.

- the Funds will retain $15 million of the collateral posted under the CDA in respect of the Funds' claims and any interest earned on the collateral posted under the CDA in respect of the Funds' claims;

- the Retained Cash (as defined in the Term Sheet) and any interest earned on the cash collateral will be retained by the Funds for their own accounts and will not be subject to any disgorgement or defeasance or cause any reduction of the Underlying Claims (as defined in the Term Sheet), and the Funds shall be free to allocate the Retained Cash and interest among one another;

- the other JPMorgan entities that are parties to the CDA will waive their rights to the reallocation of the $699.2 million returned to LBHI and the Retained Cash;

- the Funds will waive a claim for a supplemental $12.5 million payment under the CDA based upon the reversal of a cross-affiliate setoff under certain derivatives contracts;

- the Funds will cease to be parties to the CDA;

- the Funds' claims that were assigned to LBHI under the CDA will be re-assigned to the Funds free and clear of any adverse claims created by or through LBHI;

- LBHI and the Funds shall exchange mutual releases relating to the transactions under the September Agreements and the CDA; and

- the Funds will agree to waive any claims asserted against LBHI based on any corporate board resolution guarantee or Standard & Poor's guarantee issued by LBHI prior to the Petition Date.

7.      The Movants believe that the Settlement Transaction embodied in the Term Sheet is a reasonable resolution of the Claim Objection because the overall value to LBHI is approximately 98% of the amount in dispute and will be immediately available for the first distribution to be made to LBHI's creditors under the Chapter 11 Plan (as defined below). Entering into the Settlement Transaction will also result in significant benefits to the estate by avoiding the costs, delay and litigation risks associated with having to prosecute the issues raised in the Claim Objection.

**Background**

8.      On September 15, 2008 (the "Petition Date"), and periodically thereafter, LBHI and its affiliated Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On March 16, 2010, the Debtors and JPMorgan Bank and certain of its affiliates, subsidiaries and related entities (collectively, the "JPMorgan Entities") entered into the Collateral Disposition Agreement ("CDA") that was approved by this Court on March 24, 2010 (the "CDA Order") [Docket No. 7785], which authorized the transfer of Securities Collateral (as defined in the CDA) from JPMorgan Bank to LBHI.[2]  Entering into the CDA provided the Debtors with the means of recovering and administering certain collateral in a manner that would maximize the value of such collateral while reserving the rights of all parties.  In addition, the CDA contemplates the application of cash and cash equivalents that JPMorgan Bank was holding to the JPMorgan Entities' claims, subject to the estates' rights to challenge those claims through further objections and litigation.  The CDA makes clear, however, that the JPMorgan Entities' claims are not deemed allowed, just satisfied subject to the estates' rights to challenge them.  LBHI also made an additional cash payment to JPMorgan Bank to be applied to the JPMorgan Entities' claims against the Debtors.

---

[2] All descriptions of the CDA contained herein are for convenience only, and are not intended to amend or otherwise alter the provisions of the CDA.

10.     Significantly, the CDA provides that, in the event the JPMorgan Entities' claims are ultimately disallowed, the funds will be held by JPMorgan Bank, either to be applied to other unpaid secured claims, if any, or in a segregated account until an accounting after all disputes between the JPMorgan Entities and the applicable Debtor are resolved or, if earlier, the date on which funds are paid to such Debtor to the extent that the amount in the segregated account is materially in excess of the maximum potential amount of the obligations of such Debtor to the JPMorgan Entities based upon the then known facts.

11.     On December 6, 2011, the Court approved and entered an order [Docket No. 23023] confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Chapter 11 Plan").  As of the date hereof, the Chapter 11 Plan has not become effective.

## Jurisdiction

12.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

13.     The Movants request, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019, approval of the Settlement Transaction in accordance and consistent with the terms, provisions and conditions set forth in the Term Sheet (which is to be memorialized in a Settlement Agreement) and to consummate the transactions contemplated thereunder.

## The Claim Objection

14.     As further explained in detail in the Claim Objection, prior to the Petition Date, LBHI executed the September Guaranty which purported to guarantee the obligations of all

of LBHI's affiliates and subsidiaries to JPMorgan Bank and its "affiliates, subsidiaries, successors and assigns."[3]

15.     As noted above, the Funds asserted over $710 million of secured claims against LBHI on the basis that they are "affiliates" of JPMorgan Bank under the September Agreements.

16.     The Movants filed the Claim Objection on October 26, 2011 seeking a ruling that the Funds were not "affiliates" of JPMorgan Bank, as that term is used in the September Agreements, and thus were not entitled to rely upon such agreements as a basis for asserting secured claims against LBHI.

17.     As set forth in more detail in the Claim Objection, the Movants argued that in light of the context of the September Agreements, it was overreaching in the extreme to claim that the losses to customers of Funds advised by JPMorgan entities would be covered under LBHI's pre-bankruptcy guaranty.  Movants argued that neither JPMorgan Chase & Co. nor any of its subsidiaries share in the Funds' profits and losses.  Movants posited that "affiliates," especially in the context of a parent level guaranty, must mean corporations who share controlling ownership and not contractual service advisor or trustee relationships. Moreover, a conclusion that the Funds are "affiliates" of JPMorgan Bank would lead, in the Movants' view, to absurd results including elevating certain of the Funds' claims based on subordinated notes to fully secured claims.  The Movants argued that this result is contrary to specific indenture provisions governing the treatment of such subordinated notes and that it would be inequitable for the Funds to receive 100% of their claim based on contractually

---

[3] The validity and enforceability of the September Guaranty is the subject of a pending adversary proceeding (the "Adversary Proceeding") in these Chapter 11 Cases styled *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Pro. No. 10-03266 (Bankr. S.D.N.Y. 2010).  As explained in the Claim Objection, the Claim Objection does not further challenge the validity or enforceability of the September Guaranty.  Rather, the Claim Objection challenges claims asserted by the Funds on the ground that, *even if* the September Guaranty were enforceable, such entities are not affiliates of JPMorgan and thus are not covered by the September Guaranty.

subordinated debt while other holders of subordinated debt receive no recovery and senior debt receives pennies on the dollar.

18.    The Funds filed their response to the Claim Objection on December 16, 2011 [Docket No. 23499] arguing that, among other things, the relevant determinant for "affiliate" status is the level of control that JPMorgan Bank or some other subsidiary of JPMorgan Chase & Co. possessed over the Funds and that, under this broad definition, the Funds constitute "affiliates" within the meaning of the September Agreements.

19.    On January 23, 2012, the Movants filed their reply [Docket No. 24513] maintaining that the central element for discerning "affiliate" status, as contemplated by the September Agreements, is common ownership and the shared economic risk of profits and losses and that the Funds failed to meet this definition.  Moreover, the Movants argued that the Funds' control-based definition was a specialized definition designed for a particular regulatory context that is inapplicable when construing the ordinary meaning of a term used in a parent guaranty.

## The Settlement Transaction

20.    The Settlement Transaction (reflected in the Term Sheet and to be memorialized in a binding Settlement Agreement, which will be delivered to the Court on or before the hearing on the Motion) contemplates, among other things:[4]

- the application of the cash collateral to the Underlying Claims under the CDA shall be reversed;

- any right of any of the Other JPM Entities to reallocation pursuant to the CDA of the Retained Cash and the $699.2 million of cash collateral to be paid by the JPM Funds to LBHI as described below, shall be waived by

---

[4] The brief description of the Term Sheet contained in this Motion is included for convenience only.  Nothing herein is intended to supersede the terms of the Term Sheet or the Settlement Agreement to be executed.  In the event of any inconsistencies between the Term Sheet and the descriptions herein, the Term Sheet shall control until the execution and delivery of the Settlement Agreement, at which time the terms of the Settlement Agreement shall control.  Capitalized terms used in this summary but not defined shall have the meanings ascribed to them in the Term Sheet.

the Other JPM Entities. In connection therewith, the Funds shall wire $699.2 million to LBHI;

- the cash collateral, less the Retained Cash, shall be paid to LBHI. The Retained Cash and any interest earned on the cash collateral will be retained by the Funds for their own accounts and will not be subject to any disgorgement or defeasance or cause any reduction in the Underlying Claims. The Funds shall be free to allocate the Retained Cash and interest among one another;

- the Funds shall waive any claim for a supplemental $12.5 million payment under the CDA based upon the reversal of a cross-affiliate setoff under certain derivatives contracts;

- the Funds shall cease to be parties to the CDA, the Funds and Lehman shall have no continuing obligations to each other under the CDA, and the rights and obligations of the Other JPM Entities and Lehman to and against each other under the CDA shall be determined without regard to the claims released pursuant to the settlement, the Underlying Claims, or any other claims by or against the Funds;

- the Underlying Claims, together with all supporting obligations and liens, assigned to LBHI by the Funds under the CDA shall be re-assigned by LBHI to the Funds free and clear of any adverse claims created by or through LBHI. Any subrogation rights with respect to the Underlying Claims obtained by LBHI under the CDA shall be waived or assigned by LBHI in favor of the Funds;

- the Funds and LBHI shall exchange mutual releases relating to the transactions under the September Agreements and the CDA. Each of LBHI and the Other JPM Entities shall withdraw with prejudice any claims in litigation against the other relating to transactions under the September Agreements to the extent (but only to the extent) that such claims are for the benefit or account of the Funds. The litigation includes, without limitation, the pending adversary proceeding commenced by LBHI against JPMorgan Bank to the extent that it relates to the $699.2 million to be returned to LBHI or the Retained Cash; and

- the Funds will agree to waive any claims asserted against LBHI based on any corporate board resolution guarantee or Standard & Poor's guarantee issued by LBHI prior to the Petition Date.

### The Settlement Transaction is Fair and Equitable and
### Falls Within the Range of Reasonableness and Should be Approved

21.     The Debtors' entry into the Settlement Transaction is in the best interests of the estate and should be approved under Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

22.     Moreover, the re-assignment of the claims to the Funds in accordance with the Settlement Agreement shall be free and clear of any adverse claims created by or through LBHI in accordance with section 363 of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor.  *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l*

*Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986). Furthermore, a debtor may transfer property of its estate free and clear of any interest in such property if one of the conditions in section 363(f)(1) – (5) is satisfied. *See* 11 U.S.C. § 365(f); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.*), 5 B.R. 1, 3 (Bankr. D. Me. 1979) (finding the court's power to sell property free and clear of liens has long been recognized).

23.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

24.     The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness.  If the Trustee

chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

25.    Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974)).

26.    The Settlement Transaction satisfies the standard for approval under Bankruptcy Rule 9019 because it falls well above the lowest point in the range of reasonableness.  After the Funds' return of the $699.2 million, the Funds will only be recovering two percent of their total claims against LBHI based on the September Agreements.  The Debtors believe that the Settlement Transaction, embodied in the Term Sheet, which is the product of extensive negotiations, is a reasonable resolution of the Claim Objection because it resolves a dispute over $700 million of the Funds' claims by (i) the Funds waiver of a $12.5 million claim relating to cross-affiliate setoff; and (ii) the return to LBHI's estate $699.2 million in cash, which will be immediately available for the first distribution to be made to LBHI's creditors under the Chapter 11 Plan.  Significantly, the $699.2 million of cash to be returned to LBHI will not be tied up or in any way restricted upon the terms and conditions under the CDA.

27.    The Settlement Transaction is highly beneficial to the estate, particularly at this point in time when the Debtors are anticipating making their first distribution under the confirmed Chapter 11 Plan before the end of the first quarter of 2012.  Furthermore, the Settlement Transaction will result in significant benefits to the estate by avoiding the costs, delay and litigation risk associated with having to prosecute the issues raised in the Claim Objection.

28.     Accordingly, approval of the Settlement Transaction is in the best interests of the Debtors, their estates and creditors.

**Relief Under Bankruptcy Rule 6004(h)**

29.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Settlement Transaction contemplates that upon execution and delivery of the Settlement Agreement, the Funds will wire the $699.2 million to LBHI by February 21, 2012, which the Debtors plan to promptly distribute under the Chapter 11 Plan.  Accordingly, the Debtors respectfully request that any order approving the Settlement Transaction be effective immediately.

**Notice**

30.     No trustee has been appointed in the Chapter 11 Cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee for Region 2; (ii) the attorneys for the Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for the Funds; and (vii) all parties who have requested notice in these Chapter 11 Cases.

Dated:  February 1, 2012
         New York, New York

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: */s/ Joseph D. Pizzurro*
         Joseph D. Pizzurro
         L. P. Harrison 3rd
         Michael J. Moscato
         Nancy E. Delaney
         Peter J. Behmke
         Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile:  (212) 697-1559

*Counsel for Debtors and Debtors-in-Possession*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/  John B. Quinn*
         John B. Quinn
         Erica Taggart
         Matthew Scheck
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Susheel Kirpalani
Andrew J. Rossman
James Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

*Counsel for the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc.*

# EXHIBIT A

**(Term Sheet)**

SETTLEMENT TERM SHEET
for claims filed by the JPM Funds against LBHI
relating to the September 2008 LBHI guaranty and security agreement

February 1, 2012

*This term sheet does not constitute an agreement except with respect to the paragraph entitled "Execution." Any agreement with respect to the other terms hereof would need to be in writing and signed by the appropriate parties and would be subject to the relevant conditions set forth in this term sheet.*

| | |
|---|---|
| <u>Parties</u>: | (1) each of LBHI and its subsidiaries party to the Collateral Disposition Agreement (collectively, "<u>Lehman</u>"), (2) each of the entities listed on Schedule A hereto (collectively, the "<u>JPM Funds</u>") and (3) each of JPMorgan Chase Bank, N.A. and its affiliates, subsidiaries and related entities party to the Collateral Disposition Agreement other than the JPM Funds (collectively, the "<u>Other JPM Entities</u>"). |
| <u>Affected Claims</u>: | The claims to be settled will be: (i) the secured claims filed by the JPM Funds against LBHI to the extent (but only to the extent) based on the September 2008 guaranty and security agreement; and (ii) any claims (the "<u>Corporate Resolutions/S&P Claims</u>") filed by the JPM Funds against LBHI based on any corporate board resolution guarantee, or any guarantee in favor of Standard & Poor's (collectively, the "<u>Board Resolutions/S&P Guarantees</u>"), issued by LBHI prior to its petition date. |
| <u>Excluded Claims</u>: | (1) The underlying claims (the "<u>Underlying Claims</u>") of the JPM Funds against any of the chapter 11 debtors or any of their affiliates guaranteed or secured under, or otherwise existing wholly apart from, the September 2008 guaranty and security agreement or the Board Resolutions/S&P Guarantees. |
| | (2) Claims by the Other JPM Entities against any of the chapter 11 debtors, except claims relating to transactions under the September 2008 guaranty and security agreement or the Board Resolutions/S&P Guarantees to the extent (but only to the extent) for the benefit of the JPM Funds. |
| | (3) Claims by LBHI against any of the Other JPM Entities, except claims relating to transactions under the September 2008 guaranty and security agreement to the extent (but only to the extent) for |

the benefit of the JPM Funds.

Any defense relating to an Excluded Claim is preserved.

<u>Settlement Consideration:</u>    The application of the cash collateral to the Underlying Claims under the Collateral Disposition Agreement shall be reversed. Any right of any of the Other JPM Entities to reallocation pursuant to the Collateral Disposition Agreement of the Retained Cash (as defined below), and the $699.2 million of cash collateral to be paid by the JPM Funds to LBHI as described below, shall be waived by the Other JPM Entities.

The cash collateral, less $15 million (the "<u>Retained Cash</u>"), shall be paid to LBHI. The JPM Funds shall waive any claim for a supplemental $12.5 million payment under the Collateral Disposition Agreement based upon the reversal of a cross-affiliate setoff under certain derivatives contracts. As a result, and after further taking into account adjustments and withdrawals to the cash collateral previously approved by LBHI, the JPM Funds shall wire transfer the cash collateral in the amount of $699.2 million to LBHI.

The Retained Cash and any interest earned on the cash collateral will be retained by the JPM Funds for their own accounts and will not be subject to any disgorgement or defeasance or cause any reduction in the Underlying Claims. The JPM Funds shall be free to allocate the Retained Cash and interest among one another.

The Underlying Claims, together with all supporting obligations and liens, assigned to LBHI by the JPM Funds under the Collateral Disposition Agreement shall be re-assigned by LBHI to the JPM Funds free and clear of any adverse claims created by or through LBHI. Any subrogation rights with respect to the Underlying Claims obtained by LBHI under the Collateral Disposition Agreement shall be waived or assigned by LBHI in favor of the JPM Funds.

LBHI shall account to the JPM Funds for any distribution received by LBHI on account of an Underlying Claim since the assignment to or subrogation for the benefit of LBHI. LBHI will deliver the amount of the distribution to the applicable JPM Fund or, alternatively, the Retained Cash shall be increased by the amount of the distribution. If the distribution is received by LBHI after the cash collateral, less the Retained Cash, has been paid to LBHI, LBHI shall promptly account for and pay over the distribution to the JPM Funds.

| | |
|---|---|
| <u>Concerning the Collateral Disposition Agreement</u>: | The JPM Funds shall cease to be parties to the Collateral Disposition Agreement, the JPM Funds and Lehman shall have no continuing obligations to each other under the Collateral Disposition Agreement, and the rights and obligations of the Other JPM Entities and Lehman to and against each other under the Collateral Disposition Agreement shall be determined without regard to the claims released pursuant to the settlement, the Underlying Claims, or any other claims by or against the JPM Funds. |
| <u>Releases</u>: | The JPM Funds and LBHI shall exchange mutual releases relating to the transactions under the September 2008 guaranty and security agreement and the Collateral Disposition Agreement. Each of LBHI and the Other JPM Entities shall withdraw with prejudice any claims in litigation against the other relating to transactions under the September 2008 guaranty and security agreement to the extent (but only to the extent) that such claims are for the benefit or account of the JPM Funds. The litigation includes, without limitation, the pending adversary proceeding commenced by LBHI against JPMorgan Chase Bank, N.A. to the extent that it relates to the $699.2 million to be returned to LBHI or the Retained Cash. |
| | The JPM Funds shall also release any Corporate Resolutions/S&P Claims. |
| | Lehman and the Other JPM Entities shall agree that the settlement shall not affect, and shall not be cited or referred to in any court pleading or argument with respect to and shall not be construed as being an admission or having any precedential effect with respect to, any of the Excluded Claims. |
| <u>Debtor Deposits Condition</u>: | The settlement shall be subject to the condition that Lehman and JPMorgan Chase Bank, N.A. shall have agreed, pursuant to a written agreement in form and substance satisfactory to Lehman and JPMorgan Chase Bank, N.A., to the amounts of, and terms on which Lehman would make, Debtor Deposits (as such term is defined in the Collateral Disposition Agreement). |
| <u>Other Conditions</u>: | The settlement shall also be subject to the applicable board approvals of the JPM Funds, satisfactory documentation and bankruptcy court approval. |

Execution:    The parties hereto shall use commercially reasonable efforts and work in good faith as expeditiously as possible to: (i) negotiate, finalize, execute and deliver a Settlement Agreement, which reflects the terms of this Term Sheet (other than the conditions set forth herein), and which itself shall be subject to any other conditions expressly provided for therein, and any ancillary documents contemplated to be executed and delivered in connection therewith, (ii) seek bankruptcy court approval on an expedited basis such that the Settlement Agreement may be considered for approval at the omnibus hearing scheduled for February 15, 2012; and (iii) effect the transfer of the Settlement Consideration by February 21, 2012.

SCHEDULE A

**The JPM Funds**

Commingled Pension Trust Fund (Core Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Corporate High Yield) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Emerging Markets-Fixed Income) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Emerging Markets Opportunity-Fixed Income) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Enhanced Cash) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Extended Duration) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Fixed Income Relative Value 4% VAR) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Intermediate Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Intermediate Credit) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Intermediate Public Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Long Credit) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Long Duration Investment Grade) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Long Duration Plus) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Market Plus Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Mortgage Private Placement) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Public Bond) of JPMorgan Chase Bank, N.A.
Commingled Pension Trust Fund (Subadvised Fixed Income - W) of JPMorgan Chase Bank, N.A.
JPMorgan Core Bond Fund, a series of JPMorgan Trust II
JPMorgan Core Bond Trust, a series of JPMorgan Institutional Trust
JPMorgan Core Plus Bond Fund, a series of JPMorgan Trust II
JPMorgan Diversified Fund, a series of JPMorgan Trust I
JPMorgan Emerging Markets Debt Fund, a series of JPMorgan Trust I
JPMorgan Insurance Trust Core Bond Portfolio, a series of JPMorgan Insurance Trust
JPMorgan Intermediate Bond Trust, a series of JPMorgan Institutional Trust
JPMorgan Limited Duration Bond Fund (formerly known as JPMorgan Ultra Short Duration Bond Fund), a series of JPMorgan Trust II
JPMorgan Real Return Fund, a series of JPMorgan Trust I
JPMorgan Short Duration Bond Fund, a series of JPMorgan Trust II
JPMorgan Short Term Bond Fund II, a series of J.P. Morgan Mutual Fund Group
JPMorgan Total Return Fund, a series of JPMorgan Trust I
JPMorgan Absolute Return Credit Master Fund Ltd.
JPMorgan Distressed Debt Master Fund, Ltd.
JPMorgan Fixed Income Opportunity Institutional Fund, Ltd.
JPMorgan Fixed Income Opportunity Master Fund, L.P.
JPMorgan Mortgage-Backed Securities Fund Trust
JPMorgan Funds - Emerging Markets Debt Fund

JPMorgan Funds - US Aggregate Bond Fund
JPMorgan Investment Funds - Highbridge Statistical Market Neutral Fund
JPMorgan Investment Funds - US Bond Fund
J.P. Morgan Tokyo Fund - JPM Japan GTA Fund
JPMorgan Investment Funds - Income Opportunity Fund
JPM Emerging Sovereign Open Mother Fund
JPMorgan Fund ICVC - JPM Institutional Japan Fund
JF Japan Technology Fund
JF SAR Japan Fund
JPMorgan Fleming Japanese Smaller Companies Investment Trust Plc
JPMorgan Funds - JF Japan Equity Fund
JPMorgan Funds - JF Japan Small Cap Fund
JF E - Frontier Open Fund
JF Japan Discovery Fund
JF Japan Open
JF Japan Small Stock Open
JF Japan Tactical Investment Mother Fund
JPM Japan Active Bond Mother Fund
JF Pension Fund - Japanese Bond Portfolio
JF Pension Mother Fund - Japanese Equity Portfolio
JF Smaller Co. Equity Open
JF The Japan
JPMorgan Investment Funds - Europe Short Duration Fund
JPMorgan Funds - Global Convertibles Fund (EUR)
JPMorgan Investment Funds - Global Capital Preservation Fund (EUR)
JP Morgan Europe Aggregate Plus Bond Fund
JPMorgan Funds - Global Aggregate Bond Fund
JPMorgan Investment Funds - Global Bond Fund (EUR)
JPMorgan Investment Funds - Global Bond Fund (USD)
JPMorgan Investment Funds - Global Enhanced Bond Fund
Highbridge Asia Opportunities Master Fund, L.P.
Contrarian Value, L.P.
Highbridge Convertible Arbitrage Master Fund, L.P.
Highbridge International LLC
Smithfield Fiduciary LLC
Highbridge Statistically Enhanced Equity Master Fund - Europe, L.P.
HB Quantitative Equity Strategies Limited
Cobra LLC

## **EXHIBIT B**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    08-13555 (JMP)
                                                    :
                        Debtors.                    :    (Jointly Administered)
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND RULES 6004 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF THE SETTLEMENT TRANSACTION RESOLVING THE TWO HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO JPMORGAN'S ASSET MANAGEMENT FUND CLAIMS (NO LIABILITY, MISCLASSIFIED AND DUPLICATIVE CLAIMS)

Upon the motion, dated February 1, 2012 (the "Motion")[1], of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced Chapter 11 Cases, as

debtors and debtors-in-possession (the "Debtors"), and the Official Committee of Unsecured

Creditors (the "Committee"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code, as amended (the "Bankruptcy Code") and Rules 6004 and 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), of the Settlement Transaction resolving the

Lehman Brothers Holdings Inc. and the Creditors Committee's Two Hundred Twenty-Ninth

Omnibus Objection to JPMorgan's Asset Management Fund Claims (No Liability, Misclassified

and Duplicative Claims), all as more fully described in the Motion; and upon the Declaration of

Philip Kruse on behalf of the Debtors in support of the Motion; and the Court having jurisdiction

in the above-captioned Chapter 11 Cases to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein in the Chapter 11 Cases being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue as to the Chapter 11 Cases being proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in

accordance with the procedures set forth in the second amended order entered on June 17, 2010

governing case management and administrative procedures for the Chapter 11 Cases [Docket

No. 9635], to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) the attorneys for the Funds; and (vii) all parties who have requested notice in these Chapter

11 Cases; and it appearing that no other or further notice need be provided; and a hearing having

been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest; and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is granted in all respects; and it is further

ORDERED that, pursuant to sections 105(a) and 363 of the Bankruptcy Code and

Rules 6004 and 9019 of the Bankruptcy Rules, the Settlement Transaction, which is embodied in

the Settlement Agreement (as defined in the Motion), is approved and the Debtors are duly

authorized (i) to consummate the transactions contemplated thereunder; (ii) execute and deliver

such documents and instruments and to take such other actions as may be reasonably necessary

to consummate the Settlement Agreement, it being understood that any actions described in this

11167957

paragraph taken by the Debtors may be taken without the necessity of any further Court

proceedings or approval, or any consent of any third party, and shall be conclusive and binding

in all respects on all parties in interest in these cases; and it is further

ORDERED that the Settlement Agreement, and any related agreements,

documents or other instruments may be modified, amended or supplemented by the parties

thereto, in a writing signed by such parties, and in accordance with the terms thereof, without

further order of the Court, *provided*, *however*, that any material modification, amendment or

supplement shall be presented for Court approval by motion of the parties thereof; and it is

further

ORDERED that re-assignment of the claims of the Funds in accordance with the

Settlement Agreement shall be free and clear of any adverse claims created by or through LBHI;

and it is further

ORDERED that the Retained Cash (as defined in the Settlement Agreement) and

any interest earned on the cash collateral will be retained by the Funds for their own accounts

and will not be subject to any disgorgement or defeasance or cause any reduction of the

Underlying JPM Funds Claims (as defined in the Settlement Agreement), and the Funds shall be

free to allocate the Retained Cash and interest among one another; and it is further

ORDERED that the terms of Settlement Agreement shall be binding on the

reorganized debtors on and following the effective date of the Chapter 11 Plan (as defined in the

Motion); and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that all objections to the Motion that have not been withdrawn,

-3-

11167957

waived, or settled, and all reservations of rights included therein, are overruled on the merits; and

it is further

ORDERED that this Order shall be effective immediately upon its entry and the

requirements of Bankruptcy Rule 6004(h) are waived; and it is further

ORDERED that the Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation of this Order.

Dated: February __, 2012
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

11167957