Laurie Selber Silverstein, Esquire
R. Stephen McNeill, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-Mail: LSilverstein@potteranderson.com
           RMcNeill@potteranderson.com

*Attorneys for West Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC., *et al.*,** | **Case No. 08-13555 (JMP)** |
| Debtors. | (Jointly Administered) |

**RESPONSE OF WEST CORPORATION TO DEBTORS' TWO HUNDRED FORTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

West Corporation ("West"), by and through its undersigned counsel, hereby responds (the "Response") to the Debtors' Two Hundred Forty-Seventh Omnibus Objection to Claims (No Liability Claims) [D.I. 24088] (the "Objection") and respectfully states as follows:

**PRELIMINARY STATEMENT**

On September 14, 2009, West timely filed a proof of claim in the amount of at least $10 million (the "Claim") based on damages it suffered as a result of LCPI's[1] breaches of the credit agreement West used to fund its business operations.[2] The Debtors argue, as the sole basis for

---

[1] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them below.

[2] Excerpts from the Claim, specifically the date-stamped proof of claim and the accompanying three-page attachment describing the Claim, are attached hereto as **Exhibit 1**. The Claim expressly noted that LCPI was continuing to breach its funding obligations under the Credit Agreement, which could result in additional damages.

their Objection to West's Claim, that they have no liability on the Claim because LCPI is no longer a party to the underlying Credit Agreement as a result of the Assignment attached to the Objection as Exhibit B. As set forth in detail herein (and in the Claim), however, the breaches of the Credit Agreement that form the basis of the Claim significantly pre-date the Assignment. In any event, no document, including the Assignment, purports to grant a release of LCPI's liabilities to West as encompassed in the Claim. Because the Debtors fail to offer any evidence that LCPI was released from the liabilities associated with its breaches of the Credit Agreement and the Assignment itself did not provide such a release, the Objection has no merit and must be overruled.

## BACKGROUND

1.      On October 24, 2006, West, Lehman Commercial Paper Inc. ("LCPI") and a group of other financial institutions (collectively with LCPI, the "Lenders") entered into a senior secured credit facility (as amended, the "Credit Agreement")[3] pursuant to which LCPI and the other Lenders agreed to make certain term loans, revolving credit loans in an amount up to $250 million (the "Revolver") and "swing line" loans in an amount up to $30 million (the "Swing Line").

2.      Pursuant to the Credit Agreement, LCPI was obligated to fund: (i) 11.25% of the Revolver (as lender), and (ii) 100% of the Swing Line (as Swing Line Lender). In addition to its obligations as a Lender, LCPI also served as Administrative Agent under the Credit Agreement.

3.      On September 15, 2008, Lehman Brothers Holding, Inc. filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). At that time, only $15 million was outstanding under the Revolver.

---

[3] A copy of the Credit Agreement is attached to West's Proof of Claim.

2

4. The next day, on September 16, 2008, West requested that LCPI make a Swing Line Loan under the Credit Agreement in the amount of $5 million. LCPI refused to make this advance.

5. Also on September 16, 2008, West requested $5 million under the Revolver. While an affiliate of LCPI funded 9.625% of that request, LCPI refused to fund the remaining 1.625%, resulting in an $81,250 shortfall.

6. On September 22, 2008 and September 29, 2008, West made additional requests under the Revolver in the amounts of $100 million and $130 million, respectively. LCPI refused to fund any portion of its commitment, resulting in an additional shortfall of $25,875,000.

7. LCPI filed a petition for relief under chapter 11 of the Bankruptcy Code on October 5, 2008 (the "Petition Date"). As of the Petition Date, and as a result of LCPI's refusal to fulfill its funding obligations under the Credit Agreement, West was left with an unfunded commitment of $25,956,250 under the Revolver. Further, West was left with an inability to draw same-day cash up to an aggregate amount of $30 million under the terms of the Credit Agreement as a result of LCPI's refusal to honor its obligation to make advances under the Swing Line. Lehman's refusal to fund came at the height of historically bad credit markets, which was worsened as a result of the bankruptcy of the Lehman Brothers empire.

8. Further, beginning in September, 2008, LCPI, did not, or could not, effectively fulfill its duties as Administrative Agent under the Credit Agreement (e.g. administering the loans, administering all disbursements and repayments under the Credit Agreement, giving and receiving all notices to parties under the Credit Agreement and exercising rights and remedies on behalf of the Lenders in case of default).

3

9. After West endured more than nine months of operating without an effective administrative agent, Wachovia Bank, National Association[4] agreed to step in and replace LCPI as administrative agent and Swing Line Lender. Amendment No. 4 to the Credit Agreement, dated August 6, 2009 ("Amendment 4") effected that substitution. Amendment 4 provides that West "expressly reserve[s] all claims against [LCPI] and its affiliates, arising out of any alleged breaches of or otherwise relating to the Loan Documents or any other agreement among [West, LCPI] and/or their respective affiliates, and none of such claims, or any defenses or offsets to any such claims, shall be deemed to have been waived or released or in any way affected by this Agreement." Amendment, at § 11 (the "Reservation of Rights").[5]

10. Notwithstanding that LCPI was replaced as administrative agent, after the execution of Amendment 4, LCPI remained obligated to fund 11.25% of the Revolver, despite its continued refusal to do so.

11. More than a year later, after having refused to comply with its funding obligations under the Credit Agreement since the Petition Date, LCPI assigned (the "Assignment")[6] its 11.25% of the Revolver to three entities (the "Assignees") on October 5, 2010 (the "Assignment Effective Date").

## RESPONSE

12. On January 5, 2012, the Debtors filed the Objection, asking this Court to disallow and expunge the Claim in its entirety. The sole basis for their Objection is that the Debtors have

---

[4] Wachovia Bank, National Association was eventually replaced by Wells Fargo Bank, National Association, its successor by merger.

[5] The Debtors do not appear to rely on Amendment 4 as a basis for their Objection, but they reference it in passing. Given West's unequivocal Reservation of Rights in Amendment 4 with respect to its claims against LCPI and the lack of any language releasing LCPI, Debtors cannot possibly argue that Amendment 4 relieves LCPI of the liabilities West asserted in the Claim.

[6] The Assignment is attached to the Objection as Exhibit B.

no liability on the Claim because LCPI is no longer a party to the Credit Agreement as a result of the Assignment. *See* Objection ¶ 9. Debtors' legal conclusion is incorrect as a matter of law. The Assignment did not absolve LCPI of its existing liabilities to West. Therefore, the Objection must be overruled.

13. Notwithstanding the suggestion to the contrary in the Objection, the Assignment did not, and could not, purport to absolve LCPI of any existing liability to West.[7] *See* 6A N.Y. Jur. 2d, Assignments, § 75 ("It is a well-established rule that a party to a contract cannot be relieved of obligations arising under the contract by assigning the contract, unless the contract specifically provides for a release from liability upon its assignment."). By its express terms, the Assignment is between LCPI and the Assignees; West is not a party to the Assignment. Accordingly, the Debtors cannot argue that West *agreed* to release LCPI from its liabilities to West. *See, e.g., Mandel v. Fischer*, 613 N.Y.S.2d 381, 381 (App. Div. 1994) ("[A]n assignment does not release the assignor of its obligations under the assigned contract absent an express agreement to that effect or one that can be implied from facts other than the other contracting party's mere consent to the assignment.") (citations omitted); *Won's Cards, Inc. v. Samsondale/Haverstraw Equities, Ltd.*, 566 N.Y.S.2d 412, 415–16 (App. Div. 1991) (finding that liability for existing breach of contract remains with assignor notwithstanding assignment of the contract unless the non-breaching party expressly releases or waives its claims against assignor). West's consent to the Assignment does not change that fact. *See 185 Madison Assocs. v. Ryan*, 571 N.Y.S.2d 244, 244 (App. Div. 1991) ("The assignment is solely an agreement between the tenant and subtenant and the plaintiff landlord's consent to the sublease

---

[7] By its terms, the Assignment is governed by New York law. *See* Assignment, Annex 1, at § 3.

5

did not relieve the tenant from its obligation under the lease or defendant from his personal guarantee of the tenant's full performance of the lease.").[8]

14. The Assignment did not relieve LCPI of its liability with respect to the breaches asserted in the Claim, and for that reason alone, the Objection must be overruled with respect to West. The Debtors' conclusory statement that "no damages have arisen under the Credit Agreement" does not justify a different result.

15. A proof of claim, timely and properly filed, is "*prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also In re DJK Residential LLC*, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009). The timely filed Claim includes a three-page attachment describing the Claim along with the Credit Agreement and other relevant documents. Collectively, these documents are more than sufficient to establish the prima facie validity of the Claim.

16. "To overcome this prima facie evidence, the [Debtors] must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). Because the Claim was filed timely, it is *prima facie* valid, and the Debtors have offered no evidence to refute that validity. Accordingly, to the extent the Objection purports to challenge the substantive basis of the Claim, the Objection must be overruled. *See Riverbank, Inc. v. Make Meat Corp. (In re*

---

[8] Even assuming *arguendo*, under some theory not expressed by the Debtors, that West was bound by the terms of the Assignment, the Assignment does not purport to relieve LCPI of its liabilities that arose prior to the Assignment Effective Date, which include the breaches underlying West's Claim. In fact, as among LCPI and the Assignees, the Assignment itself creates a clear line of demarcation at the Assignment Effective Date. Under the Assignment, LCPI sells and assigns all of its rights and obligations in its capacity as a Lender under the Credit Agreement "as of the [Assignment] Effective Date." *See* Assignment, at 1. Further, LCPI retained the pre-Assignment Effective Date benefits of the Credit Agreement as the Administrative Agent was required to "make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to [LCPI] for amounts which have accrued *to but excluding the [Assignment] Effective Date* . . . ." Assignment, Annex 1, at § 2 (emphasis added). If the Assignment did not transfer rights, obligations or benefits that arose prior to the Assignment Effective Date, it could not possibly affect LCPI's obligations to West that arose prior to that time. .

*Make Meat Corp.*), No. 98 Civ. 4990(HB), 1999 WL 178788, at *3 (S.D.N.Y. Mar. 31, 1999) ("Once the claimant has established its prima facie case, the burden of going forward then shifts to the debtor to produce evidence sufficient to negate the prima facie validity of the filed claim."); *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 354–55 (Bankr. S.D.N.Y. 1995) (overruling the debtor's objection to claim where the debtor failed to offer any evidence to support its contention that the claim was unreasonable).

WHEREFORE, West respectfully requests that the Court overrule the Debtors' Objection with respect to West; and grant such other and further relief as the Court deems just and proper.

> POTTER ANDERSON & CORROON LLP
>
> By: /s/ Laurie Selber Silverstein
> Laurie Selber Silverstein
> R. Stephen McNeill
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE 19801
> Tel: (302) 984-6000
> Fax: (302) 658-1192
>
> Attorneys for West Corporation

Dated: February 6, 2012

PAC/1045206