**Hearing Date and Time: February 22, 2012 at 10:00 a.m. (prevailing Eastern Time)**

HOGAN LOVELLS US LLP
Christopher R. Donoho, III
875 Third Avenue
New York, New York 10022
212-918-3000

*Attorneys for Banca Italease S.p.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
In re:                                                                 :
                                                                       :    Chapter 11
LEHMAN BROTHERS HOLDING INC., et. al.,                                 :
                                                                       :    Case No. 08-13555 (jmp)
            Debtors.                                                   :
                                                                       :    (Jointly Administered)
-----------------------------------------------------------------------X

**RESPONSE OF BANCA ITALEASE S.P.A. TO DEBTORS'
TWO HUNDRED FIFTY-THIRD OMNIBUS OBJECTION TO
CLAIMS (VALUED DERIVATIVE CLAIMS – CLAIM NO. 30707)**

Banca Italease S.p.A. ("Italease"), by and through its undersigned counsel, hereby files its response (the "Response") to the *Debtors' Two Hundred Fifty-Third Omnibus Objection to Claims (Valued Derivative Claims)* (the "Objection") [Docket No. 24103], and respectfully represents as follows: [1]

---

[1] Italease is a company organized under the laws of Italy. Italease enters this limited appearance in the Debtors' chapter 11 cases (collectively, the "Cases") for the purpose of making this Response to the Debtors' Objection. By making this limited appearance in the Cases, filing related objections, and submitting this and related responses, Italease does not submit itself or otherwise consent or acquiesce, and shall not be deemed to have submitted itself, consented or acquiesced, to the jurisdiction of this Court, or any other court of the United States, for any purpose other than with respect to this Response. Italease does not waive any, and hereby reserve all, of their rights to object on jurisdictional grounds to the application of any procedural order or proposed assumption of any alleged contract, if ordered by this Court, or any other order of this Court, or any other court resident in the United States.

## BACKGROUND

1.  On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.  Prior to the commencement of the Cases, on October 3, 2003, Italease entered into an ISDA Master Agreement (Multicurrency-Cross-Border) (as amended, the "Master Agreement") with one of the Debtors, Lehman Brothers Special Financing Inc. ("LBSF"). On that same day, Italease entered into a related Credit Support Annex ("CSA") and a related Schedule ("Schedule," and together with the Master Agreement and the CSA, the "Master Agreement Documents") with LBSF and LBHI unconditionally guaranteed the obligations of LBSF under the Master Agreement Documents pursuant to a Guarantee of Lehman Brothers Holdings Inc., attached to the Master Agreement (the "Guarantee").

3.  Pursuant to the terms of the Master Agreement Documents, Italease entered into numerous swap transactions with LBSF (the "Swap Transactions"). Further, as part of the Swap Transactions, Italease from time to time posted collateral with LBSF pursuant to the terms of the Master Agreement Documents (the "Collateral").

4.  All of the Master Agreement Documents[2] are governed by English law, with the exception of the Guarantee, which is governed by New York law.

5.  The filing of voluntary petitions under chapter 11 of the Bankruptcy Code by LBHI (the 'Credit Support Provider' pursuant to the Master Agreement) on the Petition Date and

---

[2] Because (i) of the voluminous nature of the Master Agreement Documents and other writings executed or delivered in connection with the Master Agreement Documents that support this Response; and (ii) all of these documents are or should be in the Debtors' possession and were provided to the Debtors as part of submitting the Claim pursuant to the Bar Date Order (as defined below), the Master Agreement Documents identified herein are not annexed hereto. However, all such documents are expressly incorporated herein by reference and, subject to any confidentiality restrictions, will be made available upon reasonable request by contacting counsel to Italease.

\\NY - 003128/000001 - 2375289 v1

subsequently, by LBSF on October 3, 2008, constituted events of default by LBSF under Clause 5(a)(vii) of the Master Agreement. In accordance with the 'safe harbor' provisions of the Bankruptcy Code, Italease gave notice to LBSF (via a Notice of Event of Default dated September 17, 2008)[3] that, pursuant to Section 6(a) of the Master Agreement, September 22, 2008 was the Early Termination Date (as such term in defined in the Master Agreement) with respect to all Transactions (as such term in defined in the Master Agreement). Pursuant to Section 6(d) of the Master Agreement, Italease calculated the amount owing by LBSF to Italease with respect to the Early Termination Date for the Swap Transactions and the current balance of Collateral posted with LBSF by Italease in accordance with Sections 6(e) and Section 11 of the Master Agreement. Italease demanded such payment from LBSF by a letter dated February 3, 2009, requesting the immediate payment EUR 3,494,439.74 ($5,163,384.15) (the "Settlement Amount").[4] By a letter dated September 17, 2009, Italease demanded that LBHI fulfill its obligations to Italease for the Settlement Amount pursuant to the Guarantee. To date, no payment has been received by Italease.

6. On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these Cases (the "Bar Date Order") [Docket No. 4271].

### The Claim

7. In compliance with the Bar Date Order, on September 22, 2009 Italease timely filed a proof of claim for the Settlement Amount against LBSF, which was assigned proof of claim number 30707 (the "Claim").[5] Pursuant to the terms of the Bar Date Order, Italease timely

---

[3] A copy of this Notice of Event of Default is annexed hereto as **Exhibit A**.
[4] A copy of this letter is annexed hereto as **Exhibit B.**
[5] Italease also timely filed a proof of claim against LBHI, as guarantor under the Guarantee, for the Settlement Amount (claim number 30708).

\\NY - 003128/000001 - 2375289 v1

completed and uploaded the required Derivative Questionnaires and Guarantee Questionnaires in connection with the Claim (together, the "Questionnaires").

8. On January 6, 2012, the Debtors filed the Objection seeking reduction of the Claim. The Objection is based solely on the Debtors' assertion that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values" of the Claim as determined by the Debtors. Objection ¶ 2 and ¶ 11. The Debtors submitted no documentary or other evidence in support of the Objection beyond that which is quoted above. In fact, the Objection fails to provide any reason or basis for the proposed reduction of the Claim beyond the Debtors' unsubstantiated assertion that their undisclosed internal claim valuation process produces a "fair, accurate, and reasonable value of such claims." Objection ¶ 14.

9. Further, the Objection, beyond its non-specific and unsubstantiated assertions, is, upon information and belief with respect to Italease, incorrect when the Debtors assert that they engaged in "lengthy negotiations with the holder of . . . Claims that are often very detailed . . ." Objection ¶ 14. To date, to our knowledge no representative of the Debtors has contacted Italease to begin such negotiations.

10. Lastly, the Debtors did not address the unliquidated claims set forth in the Claim. For example, in accordance with Section 11 of the Master Agreements, Italease expressly claimed legal fees and costs incurred in connection with the enforcement of its rights under the Master Agreement. A statement of all amounts due and owning under the Master Agreement Documents would be presented to the Debtors upon request, yet the Debtors have made no such request.

# RESPONSE

**Applicable Legal Standard**

11. Under Section 502 of the Bankruptcy Code, a filed proof of claim is deemed allowed. "The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The debtor must introduce evidence to rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted). . *See* Fed. R. Bankr. P. 3001(f); *See also In re DJK Residential LLC,* 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009); *In re Alper Holdings USA,* 2008 Bankr. LEXIS 86 at *9 (Bankr. S.D.N.Y. 2008); *In re MarketXT Holdings Corp.,* 2007 Bankr. LEXIS 740 at *17 n.8 (Bankr. S.D.N.Y. 2007); *In re Spiegel, Inc.*, 2007 WL 2456626, *15 n.6 (S.D.N.Y. Aug. 22, 2007).

12. Fundamental principles of bankruptcy law require the Debtors to introduce admissible evidence to overcome the prima facie validity of a claim and to shift the burden of proof back to the claimant. "Mere denial of [a] claim's validity or amount is not sufficient to rebut prima facie effect of [the] proof of claim." Hon. Barry Russell, <u>Bankruptcy Evidence Manual</u>, § 301.13(3) (West Group, 1999) (citing *In re O'Connor*, 153 F.3d 258 (5th Cir. 1998); *In re Brown*, 221 B.R. 46 (Bankr. S.D. Ga. 1998); *In re Narragansett Clothing Co.*, 143 B.R. 582, 583 (Bankr. D.R.I.1992)). Specifically, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's sufficiency, as "the objector bears the initial burden of persuasion." *DJK Residential,* 416 B.R. at 104; *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-174 (3d Cir. 1992), quoting *In re Holm*, 931 F. 2d 620, 623 (9th Cir. 1991).

13. Thus, the burden of proof does not shift to Italease until the objector has first met its burden by providing sufficient evidence to overcome the *prima facie* validity of the claim. *Id.*; *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) ("the objecting party [must] . . . go forward and produce sufficient evidence to rebut the claimant's *prima facie* case"). "Mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence. *See Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at * 3-4 (S.D.N.Y. March 31, 1999).

**The Debtors Have Failed to Meet Their Burden of Going Forward**

14. The Debtors provide no evidence to support their Objection as to the Claim. The unsubstantiated assertion that the Claim is "greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records" is insufficient to overcome the *prima facie* validity and amount of the Claim. The Debtors ask this Court to reduce the Claim without reference to any specific reason for doing so. Their unsupported statement does not constitute "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's sufficiency." *See Alper Holdings USA,* 2008 Bankr. LEXIS 86 at *10; *DJK Residential,* 416 B.R. at 104. Merely filing a claim objection is insufficient to "deprive the proof of claim of presumptive validity unless the objection is supported by **substantial evidence**." *Juniper Dev. Group v. Kahn* (*In re Hemingway Transport, Inc.*), 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in the original). Allegations of overvaluation are not evidence. Therefore, the Debtors have failed to offer any evidence, let alone substantial evidence.

15. Similarly, the Debtors have also failed to offer any concrete support as to why Italease's calculation of the Claim is in any way flawed. In contrast, Italease gave the Debtors extensive documentation to support the basis for its calculations.

16. For the reasons set forth above, the Objection does not negate the *prima facie* validity of the Claim and should be denied.

**Italease Has Met Its Burden of Proving the Validity of Its Claim**

17. Should the Court find that the Debtors' unsupported Objection has transferred the burden of proof to Italease, Italease respectfully submits that it already has met that burden. The Claim and the Questionnaires (complete with all relevant supporting documentation) constitute more than sufficient evidence of the accuracy and validity of the amount of the Claim.

18. The Claim was calculated according to the contractually agreed-upon methodologies, and the Debtors have not offered any justification for deviating from those terms. There is no basis for further reducing the Claim as provided for in the Objection. Moreover, even if the Debtors may have somehow calculated the loss differently, they cannot substitute their judgment for the reasonable judgment of Italease for the simple reason that the Master Agreement Documents do not permit that. The Master Agreement expressly designates the Non-defaulting Party (as such term is defined in the Master Agreements), i.e., Italease, as the party to calculate the Settlement Amount. See Master Agreement § 6(e)(i)(3). The right to determine the Settlement Amount belongs exclusively to Italease as the Non-defaulting Party. Thus, to the extent the Debtors challenge Italease's calculation of the Settlement Amount under each Master Agreement, the Court should overrule the Objection as inconsistent with the terms of the Master Agreement, since the Debtors do not provide evidence of any unreasonableness in Italease's

08-13555-mg    Doc 24977    Filed 02/06/12    Entered 02/06/12 14:37:02    Main Document
Pg 8 of 18

calculations, but simply propose to substitute the Debtors' calculations without a contractual right to do so and without explanation or evidentiary support.

19.     Further, the allowed amount of the Claim should also reflect the outstanding legal fees owed to Italease under the Master Agreement Documents.  *See Ogle v. Fidelity & Deposit Co. of Maryland*, 586 F.3d 143 (2d Cir. 2009), cert. denied, 2010 WL 531913 (U.S. 2010) (Bankruptcy Code allows an unsecured creditor to collect post-petition attorney's fees authorized by a pre-petition contract that is valid under state law).

20.     In the event this Court finds that Italease has not met its ultimate burden of proof as to the validity of the Claim, Italease: (a) requests discovery from the Debtors as to their valuation of the Claim; (b) reserves the right to supplement or otherwise amend this Response to the Objection; and (c) requests, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amounts of the Claim.

## CONCLUSION

21.     Italease has established the validity of the Claim.  The Objection fails to offer any evidence that would in any legally sufficient way rebut Italease's Claim.  Accordingly, the Objection should be denied with respect to Italease's Claim.

## RESERVATION OF RIGHTS

22.     Italease reserves any and all applicable rights at law and/or equity, all claims, and all defenses, including without limitation the right to discovery in connection with the Debtors' Objection and the right to amend or supplement this Response and to join in the response of any other party to the Objection.

\\NY - 003128/000001 - 2375289 v1

WHEREFORE, Italease respectfully requests that the Court (i) overrule the Objection as set forth herein, and (ii) grant such other and further relief as this Court deems just and proper under the circumstances.

Dated: February 6, 2012
New York, New York

**HOGAN LOVELLS US LLP**

/s/ Christopher R. Donoho, III_____
Christopher R. Donoho, III
875 Third Avenue
New York, NY 10022
(212) 909-0630 Telephone
(212) 918-3100 Facsimile

*Attorneys for Banca Italease S.p.A.*

# **EXHIBIT A**



To: Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
Transaction Management
745 Seventh Avenue, 28th Floor
New York, NY 10019
**For the attention of: Documentation Manager**

*Delivery by hand*

17 September 2008

Dear Sirs

**Notice of Event of Default**

We refer to the 1992 ISDA Master Agreement, Schedule and Credit Support Annex dated as of 3 October 2003 between Banca Italease S.p.A. (formerly Banca per il Leasing – Italease S.p.A.) ("**Italease**" or "**us**") and Lehman Brothers Special Financing Inc. ("**LBSF**" or "**you**"), as amended, restated and/or supplemented from time to time (together, the "**ISDA Master Agreement**"). Terms used but not defined herein will have the meaning ascribed thereto in the ISDA Master Agreement.

The filing for Chapter 11 bankruptcy in respect of Lehman Brothers Holdings Inc. (who are acting as LBSF's Credit Support Provider pursuant to the ISDA Master Agreement) on 15 September 2008 constitutes an Event of Default with respect to LBSF under Clause 5(a)(vii) of the ISDA Master Agreement.

We hereby give you notice, pursuant to Section 6(a) of the ISDA Master Agreement, that we designate monday 22nd September 2008 as an Early Termination Date with respect to all outstanding Transactions under the ISDA Master Agreement as a result of this Event of Default.

In accordance with the provisions of Section 6(e) of the ISDA Master Agreement, we will calculate the amount, if any, payable in respect of such Early Termination Date. We will provide you as soon as reasonably practicable with our calculations pursuant to Section 6(d) of the ISDA Master Agreement and specify the amounts payable pursuant to Section 6(e) of the ISDA Master Agreement and the details of the relevant account to which such amount (if any) is to be paid.

Banca Italease S.p.A.
Via Cino Del Duca, 12 - 20122 Milano - Telefono 02 7765.1 - Telefax 027765.2261
Cost. 1968 - N. Iscrizione al Registro Imprese di Milano, Codice Fiscale e Partita IVA 00846180156. Capitale Sociale € 868.966.074,48 i.v.
Iscritta Albo delle Banche - Capogruppo Gruppo bancario Banca Italease iscritto all'Albo dei Gruppi Bancari
Aderente al Fondo Interbancario Tutela dei Depositi e al Fondo Nazionale di Garanzia





Italease hereby reserves all of its rights in respect of the ISDA Master Agreement whether arising under the ISDA Master Agreement, at law or otherwise (and for the avoidance of doubt, this letter does not constitute a waiver of any such rights) including but not limited to the right to serve any further notice on you.

This notice is governed by the laws of England and Wales.

Yours faithfully

**Banca Italease S.p.A.**

By: [signature]
Name:  Massimo Mazzega
Title:   Chief Executive Officer

Banca Italease S.p.A.
Via Cino Del Duca, 12 - 20122 Milano - Telefono 02 7765.1 - Telefax 027765.2261
Cost. 1968 - N. Iscrizione al Registro Imprese di Milano, Codice Fiscale e Partita IVA 00846180156. Capitale Sociale € 868.966.074,48 i.v.
Iscritta Albo delle Banche - Capogruppo Gruppo bancario Banca Italease iscritto all'Albo dei Gruppi Bancari VE_EME
Aderente al Fondo Interbancario Tutela dei Depositi e al Fondo Nazionale di Garanzia
40 ANNI 1968 2008

**<u>EXHIBIT B</u>**

\\NY - 003128/000001 - 2375289 v1



To: Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
Transaction Management
745 Seventh Avenue, 28th Floor
New York, NY 10019
**For the attention of: Documentation Manager**

*By hand*

3 February 2009

Dear Sirs

**Re: ISDA Master Agreement dated as of 3 October 2003 between Banca Italease S.p.A. (formerly Banca per il Leasing – Italease S.p.A.) and Lehman Brothers Special Financing Inc.**

We refer to the notice of Event of Default dated 17 September 2008 (the "**Notice of Default**") served by us on you in accordance with Section 6(a) of the ISDA Master Agreement (as amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, and all confirmations entered into in connection therewith, the "**ISDA Master Agreement**") dated 3 October 2003 between Banca Italease S.p.A. (formerly Banca per il Leasing – Italease S.p.A.) ("**Italease**" or "**us**") and Lehman Brothers Special Financing Inc. ("**LBSF**" or "**you**"). Terms used but not defined herein will have the meaning ascribed in them in the ISDA Master Agreement.

The Notice of Default designated 22 September 2008 as the Early Termination Date in respect of all outstanding Transactions under the ISDA Master Agreement as a result of the Event of Default specified therein. The schedule to this notice (the "**Schedule**") constitutes the statement required by Section 6(d)(i) of the ISDA Master Agreement of the calculations contemplated by Section 6(d) of the ISDA Master Agreement. Such Schedule sets forth such calculations, which have been made by us in accordance with the methodology set out in Section 6(e) of the ISDA Master Agreement.

As stated in the Schedule, pursuant to Section 6(e)(i)(3), the amount payable by LBSF to Italease is equal to the amount of **EUR 3,425,922.38** and such amount is due to Italease pursuant to Section 6(d)(ii) of the ISDA Master Agreement on 3 February 2009.

Pursuant to Section 11 of the ISDA Master Agreement, LBSF is obliged to indemnify us, on demand, for all reasonable out-of pocket expenses, including legal fees, incurred by us by reason of the enforcement and protection of our rights under the ISDA Master Agreement or by reason of the early termination of any Transaction. Our estimated legal fees in this regard are **EUR 68,517.36**.

Banca Italease S.p.A.
Via Cino Del Duca, 12 - 20122 Milano - Telefono 02 7765.1 - Telefax 027765.2201
Cost. 1968 - N. Iscrizione al Registro Imprese di Milano, Codice Fiscale e Partita IVA 00846180156. Capitale Sociale € 868.966.074,48 i.v.
Iscritta Albo delle Banche - Capogruppo Gruppo bancario Banca Italease iscritto all'Albo dei Gruppi Bancari
Aderente al Fondo Interbancario Tutela dei Depositi e al Fondo Nazionale di Garanzia



 BANCAITALEASE

We should be grateful if you would please therefore pay such amounts, plus interest on any overdue amounts calculated in accordance with the ISDA Master Agreement in immediately available funds to the following account:

| Correspondent: | Istituto Centrale delle Banche Popolari Italiane Spa - Milan | Swift Code: CIPBITMM |
|---|---|---|
| For account: | Banca Italease SpA | BIC CODE: BLEAITM1 |
| Favour: | Banca Italease Spa | |
| Account number: | 000000302650 | |
| Iban code | IT50L0302601600000000302650 | |

Italease hereby reserves all of its rights in respect of the ISDA Master Agreement whether arising under the ISDA Master Agreement, at law or otherwise (and for the avoidance of doubt this letter does not constitute a waiver of any such rights) including but not limited to the right to serve any further notice on you.

This letter is governed by the laws of England and Wales.

Yours faithfully

Banca Italease S.p.A.

By:
Name: MASSIMO MAZZEGA
Title: CEO

By:
Name:
Title:

Banca Italease S.p.A.
Via Cino Del Duca, 12 - 20122 Milano - Telefono 02 7765.1 - Telefax 02.7765.2261
Cost 1968 - N. Iscrizione al Registro Imprese di Milano, Codice Fiscale e Partita IVA 00846180156 Capitale Sociale € 868.960.674,48 i.v.
Iscritta Albo delle Banche - Capogruppo Gruppo bancario Banca Italease iscritto all'Albo dei Gruppi Bancari
Aderente al Fondo Interbancario Tutela dei Depositi e al Fondo Nazionale di Garanzia

40 ANNI 1968|2008



## SCHEDULE

1. Pursuant to pursuant to Section 6(e)(i)(3) of the ISDA Master Agreement an amount will be payable equal to:

   (A) the sum of the Settlement Amount (determined by the Non-defaulting Party (Italease Finance)) in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party; less

   (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party (LBSF).

   If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

2. The Settlement Amount [1] with respect to a party and the Early Termination Date, is the sum of:

   (A) the Termination Currency Equivalent of the Market Quotations (whether positive or negative) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation is determined; and

   (B) the relevant party's Loss (whether positive or negative and without reference to any Unpaid Amounts) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation cannot be determined or would not (in the reasonable belief of the party making the determination) produce a commercially reasonable result.

   Therefore, the Settlement Amount is the sum of:

   (A) - EUR 4,583,358.26; and

   (B) - EUR 2,532,856

   = - EUR 7,116,214.26.

3. Therefore, the amount payable pursuant to Section 6(e) of the ISDA Master Agreement is:

   (A) - EUR 7,116,214.26 plus EUR 10,542,136.64 [2]; less

   (B) zero,

   = **EUR 3,425,922.38, payable by LBSF.**

---

[1] Please see the Annex for details of the relevant quotations and other details.
[2] The Unpaid Amount constituted by the Value of the Credit Support Balance pursuant to the Credit Support Annex to ISDA Master Agreement.

Banca Italease S.p.A.
Via Cino Del Duca, 12 - 20122 Milano - Telefono 02 7765.1 - Telefax 027765.2261
Cost. 1968 - N. Iscrizione al Registro Imprese di Milano, Codice Fiscale e Partita IVA 00846180156. Capitale Sociale € 868.966.074,48 i.v.
Iscritta Albo delle Banche - Capogruppo Gruppo bancario Banca Italease iscritto all'Albo dei Gruppi Bancari
Aderente al Fondo Interbancario Tutela dei Depositi e al Fondo Nazionale di Garanzia

40 ANNI  1968 2008

Annex

| N | ref1 | ref2 | ref BanITL | Start Date | Maturity Date | Notional | Quote DB | Quote HVB | Quote Barclays | Quote RBS | Market Quotations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | SWAP TRANSACTIONS | | | | MARKET QUOTATIONS | | | |
| 1 | 408960 | 3178241 | 138 | 29-ott-2003 | 29-ott-2008 | 500.000 | 1.397 | 500 | 2.200 | 1.897 | 1.647 |
| 2 | 422317 | 3243761 | 268 | 03-dic-2003 | 03-dic-2008 | 350.000 | 1.401 | 500 | 1.700 | 2.202 | 1.551 |
| 3 | 438817 | 3331801 | 369 | 21-gen-2004 | 21-gen-2009 | 151.000 | 1.214 | 800 | 3.000 | 2.411 | 1.812 |
| 4 | 443654 | 3357921 | 390 | 28-gen-2004 | 28-gen-2009 | 100.000 | 779 | 1.000 | 1.900 | 2.080 | 1.450 |
| 5 | 471365 | 3531021 | 100258 | 25-mar-2004 | 25-mar-2009 | 100.000 | 989 | 700 | 4.000 | 2.738 | 1.864 |
| 6 | 471529 | 3531381 | 596 | 25-mar-2004 | 25-mar-2009 | 500.000 | 4.701 | 1.400 | 9.800 | 7.313 | 6.007 |
| 7 | 475394 | 3553141 | 100267 | 25-mar-2004 | 25-mar-2009 | 180.000 | 1.781 | 6.600 | 5.000 | 3.728 | 4.364 |
| 8 | 478538 | 3567361 | 619 | 31-mar-2004 | 31-mar-2009 | 250.000 | 3.220 | 2.600 | 6.000 | 4.219 | 3.719 |
| 9 | 2119651 | 4653401 | 290 | 12-mar-2005 | 12-dic-2008 | 500.000 | 990 | 3.100 | 2.000 | 1.489 | 1.745 |
| 10 | 2885001 | 6227121 | 103146 | 28-feb-2007 | 28-feb-2012 | 1.150.000 | 9.991 | 10.500 | 19.000 | 9.255 | 10.245 |
| 11 | 2955866 | 6331281 | 103220 | 01-apr-2007 | 01-apr-2010 | 2.347.585 | 39.455 | 23.800 | 32.000 | 21.987 | 27.900 |
| 12 | 2955887 | 6331301 | 103220 | 01-apr-2007 | 01-apr-2010 | 2.347.585 | 26.886 | 23.800 | 32.000 | 21.987 | 25.343 |
| 13 | 2962976 | 6340221 | 103196 | 30-mar-2007 | 30-dic-2011 | 961.644 | 8.777 | 8.400 | 14.500 | 8.207 | 8.588 |
| 14 | 3791882 | 7933961 | XX95TD | 28-apr-2008 | 28-apr-2011 | 25.000.000 | 75.485 | 53.000 | 64.000 | 60.000 | 62.000 |
| 15 | 3791902 | 7933981 | XX95TE | 28-apr-2008 | 28-apr-2010 | 37.000.000 | -144.513 | -171.000 | -160.000 | -195.000 | -165.500 |
| 16 | 429571 | 3290241 | 100152 | 16-dic-2003 | 16-dic-2008 | 250.000 | 2.246 | 1.200 | 4.000 | 2.666 | 2.456 |
| 17 | 448022 | 3388361 | 423 | 04-feb-2004 | 04-feb-2009 | 240.000 | 600 | 200 | 2.500 | 1.700 | 1.150 |
| 18 | 472955 | 3539781 | 618 | 24-mar-2004 | 24-mar-2009 | 150.000 | -1.088 | -1.700 | 0 | -1.344 | -1.216 |
| 19 | 2061655 | 4386521 | 100105 | 26-nov-2003 | 26-nov-2008 | 300.000 | 0 | 0 | 500 | 1.000 | 250 |
| 20 | 2077001 | 4472081 | 100100 | 25-nov-2004 | 25-nov-2008 | 3.000.000 | 0 | 0 | 0 | 1.000 | 0 |
| 21 | 2268791 | 5016761 | XX92F5 | 19-ott-2005 | 19-ott-2015 | 50.000.000 | -1.570.000 | -1.551.000 | -1.755.000 | -1.500.000 | -1.560.500 |
| 22 | 2273669 | 5027301 | 101575 | 10-ott-2005 | 10-ott-2010 | 3.000.000 | -36.626 | n.a. | -12.000 | 55.000 | -12.000 see Note (1) |
| 23 | 2353438 | DL-108911 | XX92QN | 01-feb-2006 | 01-feb-2012 | 18.150.000 | -881.790 | -1.062.000 | -927.000 | -883.000 | -905.000 |
| 24 | 2374697 | DL-108915 | XX92R7 | 06-mar-2006 | 06-mar-2012 | 30.000.000 | -1.483.744 | -1.740.000 | -1.544.000 | -1.569.000 | -1.566.500 |
| 25 | 404990 | DL-110569 | 100070 | 15-ott-2003 | 15-ott-2008 | 3.000.000 | 0 | 0 | 0 | 1.000 | 0 |
| 26 | 418211 | DL-110585 | 100094 | 21-nov-2003 | 21-nov-2008 | 2.000.000 | 0 | 0 | 0 | 1.000 | 0 |
| 27 | 2151836 | DL-111025 | 762 | 04-mag-2005 | 04-mag-2009 | 300.000 | 1.032 | 0 | 2.500 | 1.500 | 1.266 |
| 28 | 581325 | DL-111700 | 100639 | 08-giu-2008 | 08-giu-2009 | 10.000.000 | -660.000 | -500.000 | -565.000 | -527.000 | -546.000 |

4

| N | ref | ref2 | ref BanITL | SWAP TRANSACTIONS see Note (2) Start Date | Maturity Date | Notional | LOSS see Note (3) |
|---|---|---|---|---|---|---|---|
| 29 | 463984L | XX91VF | | 23-mar-2005 | 14-set-2020 | 811.424.144 | 0 |
| 30 | 531312 | 382362L | XX909Q | 24-giu-2004 | 14-ott-2017 | 908.973.000 | -2.295.226 |
| 31 | 531311 | 383594L | XX909P | 24-giu-2004 | 14-ott-2017 | 151.134.598 | -237.630 |

**Note**

(1) With respect to Transaction N. 22, only three quotations were provided. In such a case, the Market Quotation is the remaining quotation after disregarding the highest and the lowest quotations.

(2) This list consists of three back-to-back interest rate swap transactions entered into relating to two securitisation transactions conducted by Italease Finance S.p.A.

(3) With respect to Transactions N. 29, 30 and 31, in each case less than three quotations were provided and therefore the Market Quotation cannot be determined. As a result, Loss applies to them. The Loss with respect to each of these Transactions have been determined as being the aggregate of:

   (a) the replacement cost of the replacement transactions entered into in respect of them on 29 September 2008 for Transaction N.29 (being zero) and 24 October 2008 for Transactions N. 30 (being EUR 644,000 payable by Banca Italease to the replacement counterparty) and 31 (being EUR 56,000 payable to Banca Italease by the replacement counterparty); and

   (b) the net gain accruing to Banca Italease as a result of the payments due on 1 and 13 October 2008 in respect of Transactions N.30 and 31 (there were no such payments in respect of Transaction N. 29) not having been paid, as follows:

   (i) in respect of Transaction N. 30 on 1 October 2008, LBSF was due to pay EUR 1,467,232 and on 13 October, Italease was due to pay EUR 4,406,458, resulting in a net gain to Italease of EUR 2,939,226; and

   (ii) in respect of Transaction N. 31 on 1 October 2008, LBSF was due to pay EUR 44,079 and on 13 October, Italease was due to pay EUR 225,709, resulting in a net gain to Italease of EUR 181,630.

Therefore:

for Transaction N. 29, the Loss is zero;

for Transaction N. 30, the Loss is (A) EUR 644,000 plus (B) - EUR 2,939,226 = **- EUR 2,295,226**; and

for Transaction N. 31, the Loss is (A) - EUR 56,000 plus (B) - EUR 181,630 = **- EUR 237,630.**