John Ansbro
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

Attorneys for Bond Logistix LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
            :    **Chapter 11 Case No.**
**In re**        :
            :    **08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et*  :
*al.*            :    **(Jointly Administered)**
            :
        **Debtors.** :
            :
------------------------------------------------------------ x

**BOND LOGISTIX LLC'S MEMORANDUM**
**IN OPPOSITION TO DEBTOR'S MOTION TO**
**COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

Third party Bond Logistix LLC ("Bond Logistix" or "BLX") respectfully submits this memorandum in opposition to the motion of Debtors Lehman Brothers Holdings Inc., *et al.* ("Lehman" or "Debtors") to compel compliance with a subpoena issued by Lehman.

**PRELIMINARY STATEMENT**

BLX wants to comply with this subpoena. In fact, from the very beginning, BLX offered to produce the spreadsheets at issue if Lehman simply agreed to treat them as "Attorneys' Eyes Only" under the confidentiality stipulation in this action or otherwise modify the protective order to ensure that no BLX competitors are given access to the native spreadsheets. Lehman refused. Nonetheless, *at Lehman's suggestion and* at great expense to itself, BLX still attempted to

1

comply with the subpoena by producing the spreadsheets at issue in paper format in August 2011. By bringing this motion, Lehman is insisting that BLX produce highly confidential and proprietary spreadsheets in native format without any agreement to prevent their disclosure to members of the financial industry, including BLX's competitors. Accordingly, in order to protect its intellectual property, BLX opposes this motion on the grounds that (a) Lehman must agree to a two-tier confidentiality stipulation under which the spreadsheets may be designated "Attorneys' Eyes Only," or (b) that BLX must be reimbursed for the substantial cost of converting these spreadsheets into a non-confidential format.

## STATEMENT OF FACTS

BLX is a wholly owned subsidiary of Orrick, Herrington & Sutcliffe LLP that provides tax compliance, consulting, financial advisory and investment advisory services primarily to state and local governments and other issuers of tax-exempt debt obligations. BLX served as a financial advisor to the Idaho Housing Finance Association ("Idaho Housing" or "IHFA") on IHFA's swap transactions with Lehman after Lehman filed bankruptcy.

On May 13, 2011, Lehman served BLX with a subpoena (the "Subpoena") seeking documents related to IHFA's swaps with Lehman. The Subpoena was substantially similar to another subpoena that was previously served on IHFA in February 2010, and sought many of the same categories of documents as the Subpoena.

BLX responded to the Subpoena, timely serving objections to preserve its rights and beginning a review process of BLX's documents. After reviewing its documents for responsiveness and privilege, on August 5 and 9, 2011, BLX produced to Lehman disks containing confidential documents responsive to the Subpoena. BLX withheld approximately two hundred Excel spreadsheets (the "Spreadsheets") that contained proprietary trading models

2

and data relating to BLX's methods for providing financial advice to IHFA related to its swap agreements with Lehman. Affidavit of William A. Molinski ("Molinski Aff.") at ¶ 2. The Spreadsheets hold numerous specialized formulas that enable BLX to make certain financial computations. Affidavit of Eric H. Chu ("Chu Aff.") at ¶ 3. These models and formulas are the result of hundreds of hours of development over the course of several years, and they distinguish BLX's capabilities from other swap advisors. *Id.*

At a meet and confer conference with Lehman on July 21, 2011, BLX offered to produce the Spreadsheets, unmodified and in native format, if Lehman would agree to keep the Spreadsheets confidential, including not disclosing them to industry competitors and third parties. Molinski Aff. at ¶ 2. Lehman provided BLX with a stipulation governing the production of confidential materials (the "Stipulation"), which provides that BLX may designate any documents "Confidential" under the stipulation. Molinski Aff. at ¶ 2; *see also* Lehman's Motion to Compel, Kellert Decl. ¶ 9, Ex. H (the Stipulation). Documents designated "Confidential" under the Stipulation cannot be disclosed to certain parties set forth in paragraph 5 and must be filed under seal. However, a "Confidential" designation still permits Lehman to disclose the Spreadsheets to Lehman's "current employees, consultants, advisors, parents, subsidiaries and affiliates, and the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc., as well as the Committee's consultants, advisors, and counsel." *Id.* This provision essentially allows Lehman to disclose these Spreadsheets, which contain proprietary and highly sensitive formulas and swap valuation methods, to an unknowable number of members of the financial industry, including industry competitors, many of whom may be creditors, advisors or consultants of Lehman.[1] Chu Aff. at ¶ 3. Revealing these spreadsheets and formulas to

---

[1] After Lehman filed its motion to compel, Lehman's counsel contacted BLX's counsel to offer

3

competitors would cause harm to BLX by essentially giving away its intellectual property and putting it as a disadvantage to industry competitors. Chu Aff. at ¶ 3.

BLX offered to produce the Spreadsheets natively if Lehman would agree to a two-tier confidentiality stipulation under which BLX could produce the Spreadsheets using an "Attorneys' Eyes Only" designation, which would allow Lehman to achieve its goal of the Subpoena (investigating the swaps and the amounts due thereunder) without disclosing BLX's Spreadsheets to an unknown number of industry competitors. Molinski Aff. at ¶ 2. Lehman refused to sign a stipulation allowing an Attorneys' Eyes Only designation and would not provide BLX with adequate assurances that it would not disclose BLX's confidential documents to other in the financial services industry. *Id.* Lehman refused, in fact, to alter the protective order used with other 2004 recipients. *Id.* Lehman suggested that BLX produce the Spreadsheets in paper format, which it did, at great expense to itself. Molinski Aff. at ¶¶ 3-4. Lehman reported that the Spreadsheets were unreadable in paper format, and suggested that BLX attempt to "copy and paste" the Spreadsheets in order to preserve the values found in each cell without copying the underlying formulas. Molinski Aff. at ¶¶ 5-6. BLX attempted to follow Lehman's suggestions, but found that due to the unique formatting of the Spreadsheets, such an effort would requires dozens of hours of careful editing, which would force BLX to incur even more costs attempting to produce these documents. *Id.* Accordingly, forced to choose between revealing the confidential information that is the heart of BLX's unique services, and spending substantial sums to accommodate Lehman's refusal to treat the documents as highly confidential,

---

to resolve this dispute. Lehman offered, for the first time, to specifically identify the parties to whom BLX's documents would be disclosed. The parties are currently in discussions to try to resolve this issue. Lehman refused, however, to take the Motion off calendar to allow such discussions to occur prior to BLX's Opposition being due. Molinski Aff. at ¶ 7.

4

BLX refused to re-produce the Spreadsheets in native format. Three months later, Lehman brought this motion to compel.

## ARGUMENT

### I. LEHMAN SHOULD BE REQUIRED TO TREAT THE SPREADSHEETS AS ATTORNEYS EYES ONLY.

As stated above, BLX has offered to produce the Spreadsheets in native format without any modifications. All that BLX asks is that Lehman amend the Stipulation to include an "Attorneys' Eyes Only" designation that will prevent the Spreadsheets from being disclosed to the potentially very large group of parties under the current version of the Stipulation, which could conceivably allow disclosure to many financial industry insiders, including BLX's competitors. BLX would also agree to allowing a more narrowed, identified group of advisors or consultants to view BLX's records. Under Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 9018, "the court may make any order which justice requires to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information." Here, BLX respectfully requests that the Court enter an order directing Lehman to accept the Spreadsheets on an Attorneys' Eyes Only basis and to sign an amended confidentiality stipulation preventing the disclosure of the Spreadsheets to third parties.

Indeed, there would be no prejudice to Lehman from allowing an Attorneys' Eyes Only production, particularly if the Stipulation allowed certain *identified* consultants to view the records as well. Lehman's counsel would have access to the Spreadsheets to conduct any analysis it needed to conduct. If Lehman's counsel needed to report its analysis to its client or the Court, it could do so since any summary made from the Spreadsheets would not include the embedded proprietary formulas. If the original documents needed to be filed, they could be filed under seal as the existing Stipulation contemplates.

## II. **BLX IS ENTITLED TO ITS COSTS FOR PRODUCING THE SPREADSHEETS IN NON-CONFIDENTIAL NATIVE FORMAT**

If the Court is not inclined to require Lehman to offer BLX an "Attorneys' Eyes Only" designation under the current Stipulation, then Lehman should be required to reimburse BLX for any costs BLX incurs in attempting to convert the Spreadsheets into a non-confidential format.

Under Fed. R. Civ. P. 45(c)(1)[2], a party serving a subpoena must take reasonable steps to avoid imposing an undue burden or expense on a person subject to a subpoena. This is particularly true when the subpoenaed party is not a party to the case. *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 03 CIV.1382 RWS, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ("the status of a witness as a non-party to the underlying litigation entitles [the party] to consideration regarding expense and inconvenience."). If the serving party compels production of the documents after the subpoenaed party objects, any court order compelling production "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii) (emphasis added). BLX has already incurred substantial fees and costs attempting to comply with the Subpoena, including time spent locating and reviewing potentially responsive documents and the costs associated with producing and printing the documents. To date, excluding attorneys' fees, BLX has already spent nearly ten thousand dollars complying with the Subpoena. Molinski Aff. at ¶ 4.

Courts look at three factors when determining whether a non-party should be required to bear the expenses of complying with a subpoena. Those factors are "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance." *In re Law*

---

[2] Fed. R. Bankr. P. 9016 provides that Fed. R. Civ. P. 45 applies to cases under the Bankruptcy Code.

6

*Firms of McCourts & McGrigor Donald*, M. 19-96 (JSM), 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001) (requiring party requesting documents from nonparty to pay for costs of production and attorneys' fees incurred in responding where nonparty previously voluntarily produced documents without seeking reimbursement). In this case, BLX clearly does not have an interest in the outcome of the Lehman bankruptcy proceedings. What certain transactions are valued at, and which creditors will be the beneficiary of those transactions, are of no consequence to BLX. BLX's documents may be necessary for Lehman to value the swap transactions at issue, but the ultimate result of those valuations is entirely irrelevant to BLX. In addition, BLX is not better suited to bear the cost of compliance with the Subpoena. Lehman was a gargantuan entity, and even in bankruptcy it has enormous resources available to it, as evidenced by the fact that Lehman would rather bring a motion to compel and incur the attendant fees rather than simply agree to maintain the confidentiality of the Spreadsheets, or reimburse BLX what would be less than the cost of bringing this motion. Finally, Lehman's claim that the public interest factor weighs in its favor because its creditors across the world would be harmed is specious. Lehman would have every ability to use BLX's information if it simply agreed to keep that information confidential or agreed to cover the cost of protecting the proprietary formulas. BLX should not be required to bear the costs of ensuring other parties' creditors are sufficiently compensated.

    The case law that Lehman cites in support of its arguments that it can impose the costs of its subpoenas on nonparties is distinguishable. *Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*, No. 91 Civ. 2287 (PKL) 1995 WL 6259, (S.D.N.Y. Jan. 9, 1995) denied reimbursement for discovery requests on a nonparty where the court concluded that "[t]he burden of preparing for a single additional deposition is not substantial, and Morgan Stanley has ample resources." *Id.* Here, BLX has already expended a substantial amount of attorneys' fees reviewing documents in

response to the Subpoena, and now must expend additional costs converting them into a non-confidential format. And BLX's financial wherewithal pales in comparison to the "ample resources" of Morgan Stanley. In *Tutor-Saliba Corp. v. United States*, 92-581C, 1995 WL 50310 (Fed. Cl. Jan. 6, 1995), another case cited by Lehman, the court denied costs to the recipient of a subpoena where the nonparty "did not object to compliance and did not make any effort to indicate it would be seeking reimbursement costs as a condition of compliance. ... Nor did it object in writing to compliance as unreasonable[.]" Here, BLX timely objected to the Subpoena and expressly demanded that Lehman reimburse it for the costs of complying with the Subpoena. Molinski Aff. at ¶¶ 3; 6.[3] In *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 206 (D. Conn. 2009), the "nonparty" required to pay for responding to a subpoena ***was controlled by a defendant in the case*** and had a "substantial interest" in one of the parties succeeding in the litigation. Here, BLX has no such interest. Furthermore, BLX advises clients on thousands of transactions every year; if BLX was required to bear the costs of every subpoena it was served with merely it because it provided advice on a transaction and therefore "could have anticipated that such transaction could potentially spawn litigation or discovery," BLX would be responsible for a virtually unlimited amount of costs.

---

[3] At the end of its Motion, Lehman argues that BLX is not entitled to reimbursement because it failed to move for a protective order under the Rule 2004 Order authorizing the Subpoena. As a third party to this action, BLX was unaware of an Order requiring a specific subpoena objection procedure. BLX preserved its rights by timely serving objections on Lehman under the Federal Rules of Civil Procedure.

8

### III. CONCLUSION

For the reasons laid out above, BLX respectfully requests that this Court deny Lehman's Motion to Compel and require Lehman to reimburse BLX for its reasonable attorneys' fees and costs incurred in responding to the Subpoena and opposing this Motion to Compel.

Dated:  New York, New York
        February 8, 2012

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____

John Ansbro
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000

Attorneys for Bond Logistix LLC