John Ansbro
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

Attorneys for Bond Logistix LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :   Chapter 11 Case No.
In re                                                        :
                                                             :   08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et*                          :
*al.*                                                        :   (Jointly Administered)
                                                             :
                               Debtors.                      :
                                                             :
------------------------------------------------------------ x

**AFFIDAVIT OF WILLIAM A. MOLINSKI IN SUPPORT OF BOND LOGISTIX LLC'S**
**MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION TO**
**COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

I, William A. Molinski, declare and state:

1. I am an attorney with the firm of Orrick, Herrington & Sutcliffe LLP, counsel to third party Bond Logistix LLC ("BLX"). I have personal knowledge of the facts set forth herein.

2. On July 21, 2011, I met and conferred with Adam M. Schloss of Weil, Gotshal & Manges LLP concerning the subpoena served on BLX. At that meeting, I informed him that we would produce all responsive, non-privileged documents. I informed him, however, that BLX wanted to ensure the confidentiality of BLX's proprietary trading models that were embedded within the Excel spreadsheets that were to be produced. I asked for a protective order that would prevent competitors from seeing those models. Mr. Schloss refused. He said there was a standard protective order they used with 2004 subpoena recipients and that they would not agree to alter that protective order. I asked that some variant of an attorneys' eyes only provision be used that would preclude parties or creditors committee members from viewing these models,

but would still allow Lehman's counsel to assess the information in those files and summarize the data as needed for their client or Court. It would also still allow filing with the Court so long as under seal. Mr. Schloss would not agree to this.

3. Mr. Schloss suggested, as an alternative that the excel sheets be produced in paper format to avoid producing the proprietary models. He did not in that call impose any conditions on that production, although he later added in an email that the documents be readable as a condition to production. I asked in that call if Lehman would pay the cost of a paper production. Mr. Schloss said Lehman would not so agree.

4. Despite Lehman's refusal to pay the cost of production, we agreed to and did produce these files in paper format. The cost of that copying was $9,602.40.

5. Several months later, on October 12, 2011, Lehman's counsel emailed me to demand production in electronic format, stating that the documents were "largely unreadable." I again asked for a protective order that would protect the confidentiality of the trading models, and Lehman again refused. Lehman's counsel, at that time Raquel Kellert, suggested that we produce in electronic form, but mask or password protect the trading models. I said we would look into the ability and cost of doing that.

6. I informed Ms. Kellert, a few days later that it would be difficult to do that, according to my IT team, but that some form of masking could be done. I explained, however, that it would require significant time and man hours to do that because of the number of excel sheets involved. This would require manually copying and pasting the data in each cell of each sheet into a new document. I asked Ms. Kellert if Lehman would reimburse BLX either the cost of the prior paper production or the cost of masking the formulas. Ms. Kellert said Lehman would not consider any such reimbursement.

7. On February 6, 2012, after Lehman filed its Motion, Richard Slack of Weil called me to see if we could resolve this issue. I again reiterated my client's confidentiality concerns. I explained how the language of the existing Protective Order, which references unnamed advisors, consultants, subsidiaries, affiliates and creditors, may very well include competitors to BLX. Mr. Slack suggested a solution may exist in Lehman identifying those entities. I asked if he would continue the hearing on the Motion to allow us to explore this possibility and told him we were more than happy to explore such a resolution. Mr. Slack said he would not take the matter off calendar for February 15, 2012, but would email me names of certain parties to whom

OHSWEST:261531141.1                                2

disclosure of BLX information would be made. Mr. Slack confirmed that Lehman would not reimburse BLX any costs.

          I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE THAT THE CONTENTS OF THE FOREGOING PAPER ARE TRUE.

_____
William A. Molinski

Dated: February 7, 2012