# Judson
## at University Circle
The Park - The Manor

Cynthia H. Dunn
*President and CEO*

November 21, 2008

Lehman Brothers
Special Financing Inc.
745 Seventh Avenue, 16th Floor
New York, NY 10019
Attention: Municipal Financial Products –
Middle Office

Lehman Brothers
Special Financing Inc.
1271 Avenue of the Americas, 43rd Floor
New York, New York 10020
Attention:  Allyson Carine — Senior Vice President
Capital Markets Contracts — Legal
Lehman Brothers

Re: ISDA Master Agreement dated as of September 2, 2005, as amended or restated from time to time, between Judson and Lehman Brothers Special Financing Inc. (*"LBSF"*) (together with the Schedule thereto, all annexes thereto and the Confirmations of all Transactions outstanding thereunder, the *"Agreement"*)

## THIS IS NOT A DEMAND FOR PAYMENT

Dear Sirs/Mesdames:

We refer to the above-referenced Agreement and to the Event of Default Notice dated October 20, 2008 and Termination Notice, dated November 4, 2008 attached as Exhibit A hereto (the *"Notices"*) in respect of all Transactions under the Agreement. Capitalized words used herein and not otherwise defined herein shall have the respective meanings attributed thereto in the Agreement.

In accordance with Section 6(d) of the Agreement and the Notices, Judson has calculated the amount payable pursuant to Section 6(e) of the Agreement. Such calculations (shown on the statements attached as Exhibit B hereto) result in the amount of $434,656.17 being payable to Judson.

Nothing contained herein or related hereto shall be deemed to waive, limit or alter any rights, claims and causes of action of Judson under applicable law, the Agreement, any Credit Support Document, any related documents or any matter related thereto. All such rights, claims and causes of action are hereby reserved.

Yours truly,

JUDSON

Name: _____
Title: V.P. OF FINANCE / CFO



2181 Ambleside Drive • Cleveland, Ohio 44106 • (216) 721-1234 • Fax (216) 791-5595
judsonsmartliving.org

A Commitment to Excellence

A not-for-profit, interdenominational organization since 1906





**EXHIBIT A**

## EVENT OF DEFAULT AND TERMINATION NOTICES

*[behind this page]*



2181 Ambleside Drive • Cleveland, Ohio 44106 • (216) 721-1234 • Fax (216) 791-5595
judsonretirement.org
A not-for-profit, interdenominational organization since 1906



## Judson
### at University Circle
The Park – The Manor

Cynthia H. Dunn
*President and CEO*

Date:       October 20, 2008

To:         Lehman Brothers
            1271 Avenue of the Americas, 43rd Floor, New York, NY 10020
            Attention: Allyson Carine – Senior Vice President / Capital Markets Contracts - Legal

            Lehman Brothers Special Financing Inc.
            745 Seventh Avenue, 16th Floor, New York, NY 10019
            Attention: Municipal Financial Products – Middle Office

From:       Judson
            2181 Ambleside Road
            Cleveland, OH  44106
            Attention: Hong Chae, Vice President Finance/CFO

**Event of Default Notice**

Dear Sir or Madam:

Pursuant to the terms of the ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("Party A") and Judson ("Party B") dated as of September 2, 2005 (together with the Schedule thereto, all annexes thereto and the Confirmations of all Transactions outstanding thereunder, the "Agreement") and due to the bankruptcy of Party A and Party A's Credit Support Provider, Lehman Brothers Holdings Inc., each of which constitutes an Event of Default under Section 5(a)(vii) of the Agreement with Party A as the Defaulting Party, Party B hereby notifies you of the following (capitalized terms used and not defined below have the meanings given in the Agreement):

1) Pursuant to Section 6(a) of the Agreement, Party B is entitled to designate an Early Termination Date in respect of all Transactions. Party B's current intent is to designate an Early Termination Date upon the date of receipt or deemed receipt of the consent of Party A described in 8) and 9) below.

2) Party B hereby designates Cain Brothers and Company, LLC as the Calculation Agent under Part 3(b) of the Schedule to the Agreement.

3) If Party B designates an Early Termination Date in respect of all Transactions, the Settlement Amount payable in connection with the designation of the Early Termination


2181 Ambleside Drive · Cleveland, Ohio 44106 · (216) 721-1234 · Fax (216) 791-5595
judsonsmartliving.org
A Commitment to Excellence      A not-for-profit, interdenominational organization since 1906


4) Date will be determined by Party B, as the Non-Defaulting Party in accordance with the terms of the Agreement, including the terms outlined in Section 6(e)(i)(3) of the Agreement and in Part 1(f) of the Schedule to the Agreement.

5) Party B, as the Non-defaulting Party, has identified the following dealers as "Reference Market-makers", each of which qualifies under the terms of Part 1(f) of the Schedule to the Agreement and the definition of "Reference Market-makers" in Section 12 of the Agreement:

   i)   Bank of America
   ii)  Citibank
   iii) Deutsche Bank
   iv)  JP Morgan
   v)   Morgan Stanley
   vi)  US Bank
   vii) Wells Fargo

6) Party B respectfully asks that Party A supply a list of any additional Reference Market-makers it would like to have considered added to the list in 4) above by notifying Party B by the close of business on the second Local Business Day after receipt of this notice by Party A. In the event that Party A does not notify Party B of such additional Reference Market-makers for consideration, none will be added.

7) If Party B designates an Early Termination Date in respect of all Transactions, Party B will solicit quotations for each Transaction from the Reference Market-makers on or as soon as reasonably practicable after the Early Termination Date, in accordance with the Market Quotation payment measure set forth in the Agreement.

8) Once the quotations referred to in 6) above are obtained, the Agreement provides that Party A has the option to either:

   (i) pay to Party B, or receive from Party B, as the case may be, an amount equal to the highest quotation received, in the case of a payment to Party B, or the lowest quotation received, in the case of a payment from Party B, each as the Settlement Amount; or

   (ii) assign its rights and obligations under the Agreement to the Reference Market-maker that provided the highest quotation in the case of a payment to be made to Party A, or to the Reference Market-maker that provided the lowest quotation, in the case of a payment received from Party A, as applicable.

9) In the interest of time and in light of the potential complications associated with any assignment and to mitigate damages to both parties, Party B respectfully asks that Party A agree to the alternative outlined in 7(i) above, modified such that if (i) a payment is owed to Party A, Party B will agree to pay as the Settlement Amount an amount equal to the highest quotation received from the Reference Market-makers or (ii) a payment is owed to Party B, Party B agrees to accept as the Settlement Amount an amount equal to the lowest quotation received from the Reference Market-makers.


*A Commitment to Excellence*

2181 Ambleside Drive · Cleveland, Ohio 44106 · (216) 721-1234 · Fax (216) 791-5595
judsonretirement.org
A not-for-profit, interdenominational organization since 1906



10) In the event that Party A does not respond to our request to consent set forth in 8) above by the close of business on the second Local Business Day after receipt of this notice by Party A, then Party A shall be deemed to have chosen the option set forth in 7(i) above, without the modification set forth in 8) above as of the close of business on the second Local Business Day after receipt of this notice by Party A, and Party B will determine the Settlement Amount in accordance with Section 6(e)(i)(3) of the Agreement.

11) With respect to the considerations in 5) and consent of Party A described in 8) and 9) above, please send them to Party B at:

    Judson
    2181 Ambleside Road
    Cleveland, OH  44106
    Attention:  Hong Chae, Vice President Finance/CFO

Also, please send an electronic copy of the consents to Party B at hchae@judsonretirement.org with additional copies to the Calculation Agent at tsheehan@cainbrothers.com and jmanthei@cainbrothers.com.

We thank you for your cooperation and we look forward to working with you on completing the above process in a timely manner. Nothing contained herein or related hereto shall be deemed to waive, limit or alter any of our rights, claims or causes of action under applicable law, the Agreement, any related documents or any matter related thereto. All such rights, claims and causes of action are hereby reserved.

Sincerely,

Hong S. Chae, CPA
Vice President of Finance/CFO




08-13555-mg    Doc 25090-4    Filed 02/08/12    Entered 02/08/12 15:26:12    Exhibit D
Pg 6 of 8



# Judson
### at University Circle
The Park - The Manor

Cynthia H. Dunn
*President and CEO*

Date:       November 4, 2008

To:         Lehman Brothers
            1271 Avenue of the Americas, 43rd Floor, New York, NY 10020
            Attention: Allyson Carine – Senior Vice President / Capital Markets Contracts - Legal

            Lehman Brothers Special Financing Inc.
            745 Seventh Avenue, 16th Floor, New York, NY 10019
            Attention: Municipal Financial Products – Middle Office

From:       Judson
            2181 Ambleside Road
            Cleveland, OH 44106
            Attention: Hong Chae, Vice President Finance/CFO

**Termination Notice**

Dear Sir or Madam:

Reference is hereby made to that certain ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("Party A") and Judson ("Party B") dated as of September 2, 2005 (together with the Schedule thereto, all annexes thereto and the Confirmations of all Transactions outstanding thereunder, the "Agreement"). Capitalized terms used and not defined herein have the meanings given in the Agreement.

Following the Notice of Event of Default Notice and Request for Consent attached hereto as Annex A (the "Default Notice") sent by Party B on October 20, 2008 with respect to the bankruptcy of Party A and Party A's Credit Support Provider, Lehman Brothers Holdings Inc., each of which constituted and continues to constitute an Event of Default under Section 5(a)(vii) of the Agreement with Party A as the Defaulting Party, Party B hereby notifies you of the following:

1) Pursuant to Section 6(a) of the Agreement, Party B hereby designates November 4, 2008 as the Early Termination Date in respect of all Transactions.

2) The Settlement Amount payable in connection with the designation of the Early Termination Date will be determined by Party B, as the Non-Defaulting Party, in


2181 Ambleside Drive • Cleveland, Ohio 44106 • (216) 721-1234 • Fax (216) 791-5595
judsonsmartliving.org
A Commitment to Excellence    A not-for-profit, interdenominational organization since 1906


accordance with the terms of the Agreement, including the terms outlined in Section 6(e)(i)(3) of the Agreement and in Part 1(f) of the Schedule to the Agreement.

3) Party B, as the Non-defaulting Party, has identified the following dealers as "Reference Market-makers", each of which qualifies under the terms of Part 1(f) of the Schedule to the Agreement and the definition of "Reference Market-makers" in Section 12 of the Agreement and to which Party A did not object and therefore is deemed to have consented in accordance with the terms set forth in the Default Notice:

   i)    Bank of America
   ii)   Citibank
   iii)  Deutsche Bank
   iv)   JP Morgan
   v)    Morgan Stanley
   vi)   US Bank
   vii)  Wells Fargo

4) Party B will solicit quotations for each Transaction from the Reference Market-makers on or as soon as reasonably practicable after the Early Termination Date, in accordance with the Market Quotation payment measure set forth in the Agreement.

5) Once the Settlement Amount is determined, in accordance with the Agreement Party B will provide Party A with a statement of the amount payable under Section 6(e) of the Agreement by Party A or Party B, as the case may be.

6) Please note that pursuant to Section 9 of the Agreement, Party B will, in due course, be claiming an indemnity (whether by set-off or otherwise) for its reasonable out-of-pocket expenses, including, without limitation, legal fees, incurred by reason of the enforcement and protection of Party B's rights under the Agreement or any Credit Support Document and/or by reason of the early termination of the Transactions.

We thank you for your cooperation and we look forward to working with you on completing the above process in a timely manner. Nothing contained herein or related hereto shall be deemed to waive, limit or alter any of our rights, claims or causes of action under applicable law, the Agreement, any related documents or any matter related thereto. All such rights, claims and causes of action are hereby reserved.

Sincerely,

Hong S. Chae, CPA
Vice President of Finance/CFO


A Commitment to Excellence

2181 Ambleside Drive · Cleveland, Ohio 44106 · (216) 721-1234 · Fax (216) 791-5595
judsonretirement.org
A not-for-profit, interdenominational organization since 1906



**EXHIBIT B**

## STATEMENT OF CALCULATION

1) In accordance with the terms of the Agreement, Judson calculated the Settlement Amount in respect of the following Terminated Transaction:

| Description of Terminated Transaction | Notional Amount |
|---|---|
| Fixed Pay LIBOR Swap | $30,490,000 |

2) The payment measure for calculating damages under the Agreement is Market Quotation. To comply with the requirements of the Agreement, Judson sent requests for quotations (including a redacted copy of the Agreement, along with credit material) to the following dealers, each of whom qualified under the definition of "Reference Market-maker" in Section 12 of the Agreement and the terms of Part 1(f) of the Schedule to the Agreement: Bank of America, Citibank, Deutsche Bank, JP Morgan, Morgan Stanley, US Bank and Wells Fargo.

3) On November 4, 2008, Judson received declines to provide quotations in respect of the Terminated Transaction from all of the above dealers.

4) Because Judson did not receive at least three quotations from the above dealers for a Replacement Transaction for each Terminated Transaction, a Market Quotation could not be determined. Therefore, Judson determined the Settlement Amount for each Terminated Transaction using the Loss payment measure, as defined in Section 12 of the Agreement.

5) Judson employed the services of a third party agent in order to obtain a reasonable estimation of the loss or cost to reestablish each Terminated Transaction (or any gain resulting from such reestablishment). Accordingly, in accordance with the terms of the Agreement, Judson has calculated the Settlement Amount to be $434,656.17.

6) The following contains the details of Judson's calculation of the amount payable under Section 6(e) of the Agreement:

| Description | Amount Favorable to Judson/ (Favorable to LBSF) |
|---|---|
| Fixed Pay LIBOR Swap reestablishment value | $453,064.00 |
| Accrued and unpaid amount under Section 2(a)(i) (from 9/1/08 – 11/4/08) | (56,877.79) |
| Interest on amounts that would have been due by Judson under Section 2(a)(i) but for Section 2(a)(iii) at 5.00% (Judson's cost of funds from 10/1/08 – 11/4/08) $36,973.29 x 34/366* 5.00%   (on payment due 10/1/08) $16,847.66 x 1/366 * 5.00%   (on payment due 11/3/08) $3,056.84 x 0   (on accrual to 11/4/08) | (174.04) |
| Judson's out-of-pocket expenses | 38,644.00 |
| Total | $434,656.17 |


