WestlawNext

View National Reporter System version

Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co.
Court of Appeals of New York   March 25, 2004   1 N.Y.3d 470   775 N.Y.S.2d 765
1 N.Y.3d 470, 807 N.E.2d 876, 775 N.Y.S.2d 765, 2004 N.Y. Slip Op. 02257

Vermont Teddy Bear Co., Inc., Respondent

v

538 Madison Realty Company, Appellant

Court of Appeals of New York
Argued February 10, 2004
Decided March 25, 2004

RELATED TOPICS

Judgment
   On Motion or Summary Proceeding
   Original Tenant Assigned Lease Genuine Issue of Material Fact

General Rules of Construction
   Implied Covenant of the Contract

CITE TITLE AS: Vermont Teddy Bear Co. v 538 Madison Realty Co.

### SUMMARY

Appeal from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered June 3, 2003. The Appellate Division, with two Justices dissenting, affirmed a judgment of the Supreme Court, New York County (Herman Cahn, J.), which had awarded plaintiff damages against defendant in the sum of $170,161.29, plus interest, upon an order granting plaintiff's motion for summary judgment.

*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 308 AD2d 33, reversed.

### HEADNOTE

Landlord and Tenant—Lease—Termination of Commercial Lease Following Casualty—Necessity of Written Notice of Restoration

Defendant commercial landlord, having received plaintiff tenant's notice of its intent to terminate the lease if the substantially damaged premises were not restored within one year, was not required under the lease to furnish plaintiff with written notice of restoration within the one-year period. Defendant's failure to furnish written notice of restoration, therefore, did not terminate the lease. Although the lease required defendant to provide plaintiff with written notice of restoration in order to reinitiate plaintiff's liability for rent, the written notice component dealt exclusively with plaintiff's liability for rent. There was neither an explicit requirement that the owner give the tenant notice that the rental premises had been restored, nor any provision allowing the tenant to terminate the lease based on the lack of such notice. A written restoration notice requirement for tenancy termination of the lease should not be judicially inserted in the unambiguous agreement.

### TOTAL CLIENT-SERVICE LIBRARY REFERENCES

Am Jur 2d, Landlord and Tenant §§ 224, 229-232.

Dolan, Rasch's New York Landlord and Tenant including Summary Proceedings (4th ed) §§ 25:6, 25:28, 25:30.

NY Jur 2d, Landlord and Tenant §§ 114, 827-830.

New York Real Property Service §§ 70:73, 70:74.

### ANNOTATION REFERENCE

See ALR Index under Landlord and Tenant; Termination and Expiration. *471

### FIND SIMILAR CASES ON WESTLAW

Database: NY-ORCS

Query: written /2 notice /s restor! /p lease & inten! /s terminat!

## POINTS OF COUNSEL

*Jay Goldberg, PC*, New York City (*Jay Goldberg* of counsel), and *Greenberg Traurig, LLP* (*Israel Rubin* and *James W. Perkins* of counsel), for appellant.
I. The court below improvidently affirmed the grant of summary judgment based upon numerous unresolved issues of fact. (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395; *Financial & Real Estate Consulting Co. v State of New York*, 63 AD2d 802, 45 NY2d 837; *Greenberg v Bar Steel Constr. Corp.*, 22 NY2d 210.) II. The majority below violated the plain meaning rule by engrafting a new condition not contained in the lease. (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *Laba v Carey*, 29 NY2d 302; *Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62; *Reiss v Financial Performance Corp.*, 97 NY2d 195; *Morlee Sales Corp. v Manufacturers Trust Co.*, 9 NY2d 16; *Raner v Goldberg*, 244 NY 438; *Matter of Loew's Buffalo Theatres*, 233 NY 495; *Uribe v Merchants Bank of N.Y.*, 91 NY2d 336; *Schmidt v Magnetic Head Corp.*, 97 AD2d 151; *Nissho Iwai Europe PLC v Korea First Bank*, 99 NY2d 115.) III. The court below erred because its ruling amounted to a forfeiture. (*Lyon v Hersey*, 103 NY 264; *J.N.A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392; *Jones v Gianferante*, 305 NY 135; *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685; *Teitlebaum Holdings v Gold*, 48 NY2d 51.) IV. The court below erred when enforcing a new written notice condition that was futile because The Vermont Teddy Bear Co. had already conceded it was liable for rent. (*Kooleraire Serv. & Installation Corp. v Board of Educ. of City of N.Y.*, 28 NY2d 101; *Jacob & Youngs v Kent*, 230 NY 239.)
*Reed Smith LLP*, New York City (*Andrew B. Messite* of counsel), for respondent.
I. The Appellate Division's interpretation of the lease was the only plausible interpretation. (*Andre v Pomeroy*, 35 NY2d 361; *Dougherty v Kinard*, 215 AD2d 521; *Hay Group Inv. Holding B.V. v Saatchi & Saatchi Co.*, 223 AD2d 458; *Lake Constr. & Dev. Corp. v City of New York*, 211 AD2d 514; *Financial & Real Estate Consulting Co. v State of New York*, 63 AD2d 802; *Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62; *Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64; *Kass v Kass*, 91 NY2d 554; *Ruttenberg v Davidge Data Sys.Corp.*, \*472 215 AD2d 191; *McErlean v Mendelson*, 256 AD2d 391.) II. The Appellate Division's ruling did not create a forfeiture. (*Jones v Gianferante*, 305 NY 135; *J.N.A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392; *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685.) III. No triable issue existed as to the purported restoration of the premises. (*Gala Trading v Adrienne, Inc.*, 174 AD2d 478; *Hirsch v Berger Import & Mfg. Corp.*, 67 AD2d 30, 47 NY2d 1008; *Chase v Skoy*, 146 AD2d 563, 73 NY2d 995; *Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439; *Matter of Union Indem. Ins. Co. of N.Y.*, 89 NY2d 94; *Thomas v Hampton Express*, 208 AD2d 824.) IV. Written notice was not "futile." (*Kooleraire Serv. & Installation Corp. v Board of Educ. of City of N.Y.*, 28 NY2d 101.)

## OPINION OF THE COURT

Graffeo, J.

After substantial damage occurred to its retail store, the tenant in this case terminated its lease on the ground that the building owner had failed to provide timely written notice that the premises had been restored and were ready for occupancy. The courts below agreed with the tenant that the lease required the owner to give such notice. Because our longstanding contract interpretation principles prohibit us from adding a missing term to an unambiguous lease, we reverse the order of the Appellate Division and deny the tenant's motion for summary judgment. \*\*2

Beginning in October 1996, plaintiff Vermont Teddy Bear Co., Inc. (VTB) leased first-floor retail space at 538 Madison Avenue in Manhattan from defendant 538 Madison Realty Company. The parties executed a Real Estate Board of New York standard form store lease and annexed a rider to the document. The lease term was for 10 years, with escalating rental payments beginning at $300,000 per year. On December 7, 1997, during the second year of the lease term, a wall of 540 Madison Avenue--a building adjacent to the leased premises--collapsed. The disaster caused considerable damage to 538 Madison Avenue and temporarily shut down the area.[1] In light of the extensive

damage, the New York City Department of Buildings issued a "Vacate Order" that remained in effect for several months and required the discontinuance of occupancy at 538 Madison Avenue. *473*

The effect of damage or destruction to the rental premises on the parties' lease agreement is addressed in article 9 of the contract, which states that

> "[i]f the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent . . . shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner, . . . subject to Owner's right to elect not to restore the same . . . ."

This provision further establishes that "[t]enant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy."[2]

The rider that was incorporated in the lease contained a provision relating to casualty loss. Specifically, paragraph 3 of the rider gave VTB a limited tenancy termination option in the event of a fire or casualty. If VTB wished to invoke this termination right, the rider required it to

> "provide Landlord within thirty (30) days of the fire or casualty, a written notice of Tenant's election to terminate the Lease if the Premises are not restored within one (1) year after Owner's receipt of such Tenant's notice. In the event the Premises are not restored within such one (1) year period the Lease shall be deemed terminated as of the end of the 12 mos. period and both Landlord and Tenant shall be released from all obligations which may arise after the Termination Date."

After the wall collapsed, VTB exercised its option under paragraph 3 of the **3 rider and notified 538 Madison by letter dated December 16, 1997 that it intended to terminate the lease if the premises were not restored within one year.[3] In response, 538 Madison demanded assurances that VTB intended to continue *474 its tenancy pursuant to the terms of the lease. Despite this demand, VTB removed its remaining possessions from the store in July 1998 and surrendered its keys.

One year having elapsed since the casualty, VTB declared the lease terminated in December 21, 1998 correspondence to the owner stating: "[a]s of today's date we have not received any notice from Landlord advising Tenant that restoration of the Premises has been completed or advising Tenant to reoccupy the Premises or to recommence the payment of rent under the Lease." In addition, VTB demanded return of its $150,000 security deposit and the portion of its prepaid December 1997 rent for the balance of that month after the casualty. 538 Madison promptly rejected termination of the lease, asserting that VTB was aware that the premises had been substantially restored by July 1998 and the lease remained in effect.

In May 1999, VTB initiated this action seeking a declaration that its termination of the lease was effective and a judgment for the return of its security deposit and prepaid rent. 538 Madison answered, raising several counterclaims, and subsequently moved to dismiss the complaint. Supreme Court denied the motion, concluding that issues of fact existed with respect to whether and when the premises were restored. Following discovery, VTB moved for summary judgment. In its opposition to the motion, 538 Madison contended that the lease did not obligate it to provide written notice of restoration to avoid termination. Supreme Court granted the motion, dismissing 538 Madison's affirmative defenses and counterclaims and directing entry of judgment in VTB's favor in the amount of $170,161.29 plus interest.

A divided Appellate Division affirmed. The majority acknowledged that paragraph 3 of the rider "contains no explicit requirement of written notice of the completed restoration" (308 AD2d 33, 36 [1st Dept 2003]), but nevertheless concluded that article 9's written notice provision pertaining to resumption of rental payment obligated 538 Madison to issue notice of restoration to prevent termination. Two Justices dissented and voted to deny the motion for summary judgment, reasoning that "the majority's holding sanctions the judicial rewriting of the parties' lease by imposing a written notice

requirement on the landlord that does not exist under the plain terms of thatdocument" *475 (*id.* at 42). The dissent asserted that a question of fact regarding the restoration of the premises further precluded a grant of summary judgment in VTB's favor. 538 Madison now appeals as of right (*see* CPLR 5601 [a]).

When interpreting contracts, we have repeatedly applied the "familiar and eminently sensible proposition of law [ ] that, when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *see Reiss v Financial Performance Corp.*, 97 NY2d 195, 198 [2001]). We have also emphasized this rule's special import "in the context of real **4 property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length" (*Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 548 [1995] [internal quotation marks and citations omitted]). In such circumstances, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 72 [1978]). Hence, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Reiss*, 97 NY2d at 199 [internal quotation marks and citation omitted]).

In this case, neither party claims that the lease is ambiguous or incomplete. Instead, 538 Madison argues that article 9 and rider paragraph 3 do not require it to send VTB written notice of restoration to prevent termination of the lease; it merely must repair and restore the premises for reoccupancy within the contractual time period. 538 Madison urges that strict construction of the parties' unambiguous agreement demonstrates that the written notice requirement applies only to reinitiating VTB's liability for rent. Similarly relying on the plain meaning of the lease, VTB asserts that, when article 9's written notice provision is read together with the termination right in paragraph 3 of the rider, the only reasonable interpretation is that notice of restoration is required. Thus, VTB submits that its termination was effective because 538 Madison failed within one year of VTB's invocation of its termination option to provide written notice that the premises had been restored.

In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning. Accordingto *476 rider paragraph 3, a tenant's casualty-based termination will occur only in one circumstance-- when, after receiving notice of the tenant's intent to terminate the tenancy, the owner fails to restore the premises within the prescribed one-year time frame. There is neither an explicit requirement that the owner give the tenant notice that the rental premises have been restored, nor any provision allowing the tenant to terminate the lease based on the lack of such notice.

Reading the lease's casualty-related provisions together does not alter our determination. Article 9's written notice component deals exclusively with the tenant's liability for rent, and there is no indication in rider paragraph 3 that the parties intended that written notice requirement to affect the owner's ability to prevent termination of the lease merely by restoring the premises in a timely fashion. Indeed, article 9 expressly provides that, in the event of a casualty, the lease "shall continue in full force and effect except as hereinafter set forth."

Assuming that the premises had been timely restored, it would presumably have been in 538 Madison's financial interest to provide written notice of the completed restoration as soon as possible in order to trigger VTB's obligation to pay rent. The logic of this proposition, however, does not justify judicial insertion of a contract term. The parties could have negotiated and included an explicit notice requirement regarding completion of restoration within the time period set forth in paragraph 3 of the rider (*see Rowe*, 46 NY2d at 72). They did not do so. We therefore conclude that the lease was not terminated by virtue of 538 Madison's failure to furnish written notice of restoration and VTB's motion for summary judgment on this theory should have been denied.

Nor is VTB entitled to summary judgment on its alternative argument that the **5 restoration was incomplete. Pursuant to the contract, VTB could have properly

terminated the lease if 538 Madison did, in fact, fail to restore the premises within one year. On this record, however, we cannot determine whether the lease terminated or continued in effect at the expiration of that period because a threshold issue of fact remains as to whether the restoration was substantially complete within one year of VTB's notice to 538 Madison.

Accordingly, the order of the Appellate Division should be reversed, with costs, and VTB's motion for summary judgment should be denied. *477

Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Read and R.S. Smith concur.

Order reversed, etc.

## FOOTNOTES

Copr. (c) 2011, Secretary of State, State of New York

### Footnotes

1   In *532 Madison Ave. Gourmet Foods v Finlandia Ctr.* (96 NY2d 280 [2001]), we addressed negligence claims against the owners of 540 Madison Avenue in connection with this incident.

2   By agreeing to the standard form provision regarding a casualty loss, VTB waived the option set forth in Real Property Law § 227 that permits a lessee of a destroyed property to "quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he or she is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

3   The letter also indicated that VTB had previously advised 538 Madison of its intention to vacate the premises after the 1997 holiday season for business reasons unrelated to the casualty. VTB therefore requested the owner's assistance in obtaining a successor tenant.

End of Document   © 2011 Thomson Reuters. No claim to original U.S. Government Works.
Preferences   Getting Started   Help   Sign Off
WestlawNext. © 2011 Thomson Reuters   Privacy   Accessibility   Contact Us   1-800-REF-ATTY (1-800-733-2889)   Improve WestlawNext

THOMSON REUTERS