WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Adam M. Schloss

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                        :      Chapter 11 Case No.
                                             :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, :      08-13555 (JMP)
                                             :
                    **Debtors.**             :      (Jointly Administered)
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Debtors respectfully submit this reply memorandum of law in further support of their motion to compel compliance with a subpoena <u>duces tecum</u> (the "<u>Motion</u>") pursuant to the Rule 2004 Order and Section 105(a) of the United States Bankruptcy Code.[1]

## PRELIMINARY STATEMENT

1.  In its Memorandum in Opposition to Debtor's Motion to Compel Compliance with Subpoena <u>Duces Tecum</u> (the "<u>Opposition</u>"), BLX does not dispute the following critical facts:

    - BLX has failed to comply with the Subpoena. BLX concedes that it has failed to produce responsive Spreadsheets in a readable, electronic format and instead produced Spreadsheets in a fashion that requires Lehman to piece together many hundreds of pages, obscures relevant data, and is otherwise indecipherable.

    - BLX has failed to comply with the Rule 2004 Order in a number of critical respects, including by failing to move for a protective order after it decided not to comply with the Subpoena. As a result, it has waived any objection to completely complying with the Subpoena.

    - BLX executed a confidentiality agreement that protects its allegedly confidential information. Thus, a two-tier, "attorneys' eyes only" confidentiality agreement is unnecessary to protect this information and, more importantly, is unworkable.

2.  Indeed, Lehman has served Rule 2004 subpoenas on approximately <u>70</u> witnesses, including numerous swap counterparties and eight financial advisors. In many of these subpoenas, Lehman requested, and many of these swap counterparties and financial advisors produced, financial information similar to that requested here. Lehman has entered into numerous single-tier confidentiality agreements with these persons without incident, and these agreements have adequately protected the allegedly confidential information of these persons. Thus, there is no reason to believe that the confidentiality agreement that BLX signed here will

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Motion.

be insufficient to protect BLX's purportedly confidential information, and BLX has not provided one shred of evidence to the contrary.

3. Moreover, although BLX demands that Lehman sign a two-tier, "attorneys' eyes only" confidentiality agreement with BLX, BLX ignores that Lehman's outside counsel must share the often extremely complex financial information that these swap counterparties and financial advisors produce with Lehman's business employees and financial consultants who understand this information. Requiring lawyers to review, comprehend, and make use of this information without the input of these persons would be unworkable and virtually pointless. (See infra Point I.)

4. Besides, there is no practical impediment that prevents BLX from promptly producing these documents in readable, electronic form. In fact, months ago, Lehman proposed two cost-effective options for BLX to produce the Spreadsheets in readable, electronic form without disclosing any supposedly confidential information. BLX refused even to consider these options. (See infra Point II.)

5. Moreover, the law does not require a bankrupt entity to pay a financial advisor to produce some 200 spreadsheets in readable, electronic form, nor would it be fair or prudent to require a debtor to do so. Indeed, the precedent that such a requirement would set would practically destroy a debtor's ability to take Rule 2004 discovery—a rule that was promulgated pursuant to an act of Congress—since, almost by definition, all Rule 2004 discovery is against third-parties. Not surprisingly, BLX fails to cite a single case in which a debtor was forced to reimburse the recipient of a Rule 2004 subpoena, and given the many thousands of Rule 2004 subpoenas that debtors have issued, this absence in and of itself is telling. (See infra Point II.)

6.  Further, BLX does not, nor could it, dispute that it has violated the Rule 2004 Order. Not only has BLX failed to produce responsive documents in a readable, electronic form; it has admittedly failed to move for a protective order to preserve any objection to its non-compliance with the Subpoena and the Rule 2004 Order. The Court's 2004 Order does not allow self-help—i.e., non-compliance—without Court permission. BLX's supposed justification for not complying with the Rule 2004 Order—that it did not know about the Rule 2004 Order—is demonstrably false: Lehman served a copy of the Rule 2004 Order on BLX, the confidentiality agreement that BLX signed explicitly refers to the Rule 2004 Order, and the notice of the Subpoena that Lehman filed with the Court also refers to the Rule 2004 Order. (See infra Point III.)

7.  In short, BLX has flagrantly violated the Subpoena and the Rule 2004 Order. As a result, the Court should order BLX to produce the Spreadsheets in readable, electronic form (the form in which they currently exist) within 10 business days of the entry of the order.

## ARGUMENT

### I. A TWO-TIER, "ATTORNEYS' EYES ONLY" CONFIDENTIALITY AGREEMENT IS UNNECESSARY AND UNWORKABLE

8.  BLX states that it "wants to comply with this subpoena" but cannot do so unless Lehman "simply" agrees to sign a confidentiality agreement that would limit the disclosure of the Spreadsheets in native file format to Lehman's outside counsel only. (Opp. Mem. at 1.) But a two-tier, "attorneys' eyes only" confidentiality agreement is unnecessary and unworkable in this case. First, BLX has already signed a confidentiality agreement with Lehman (the Stipulation) that more than adequately protects BLX's allegedly confidential information. Indeed, the Stipulation limits the universe of persons that may access confidential materials that BLX produces in response to the Subpoena, and those persons are prohibited from publicly

disclosing that information. (Kellert Decl. Ex. H ¶¶ 5, 6, 11-14.) There is no suggestion that Lehman has violated confidentiality agreements with the recipients of the Rule 2004 Subpoenas that it has issued in the past, and BLX has no basis for suggesting that it would in the future.

9.    In addition, BLX's purported concern that the Spreadsheets could find their way into the hands of "unnamed . . . creditors of Lehman" is entirely misplaced. (Aff. of Eric H. Chu in Support of Opp. Mem. ¶ 4.) Under the Stipulation, the only Lehman creditors that would be permitted to review the Spreadsheets are members of Lehman's Unsecured Creditors' Committee (Kellert Decl. Ex. H ¶ 5), and the composition of that committee is a matter of public record. (See http://dm.epiq11.com/LBH/Project/default.aspx (Key Parties).) Thus, these creditors are not unnamed and are under strict confidentiality restrictions.

10.    Second, Lehman's outside counsel quite appropriately relies on Lehman's business employees and financial consultants to analyze complex financial documents produced in Rule 2004 discovery, and under a two-tier, "attorneys' eyes only" confidentiality agreement, Lehman would be prohibited from disclosing the Spreadsheets to precisely those persons.[2] Accordingly, BLX's insistence upon such an agreement is not only unnecessary; it would hinder Lehman's Rule 2004 investigation and set an unworkable precedent for future such investigations.

---

[2] BLX's suggestion that the Stipulation could be amended to "allow[] certain identified consultants to view the records as well" reflects only part of a conversation with Lehman. (Opp. Mem. at 5 (emphasis in original).) Lehman suggested a possible compromise, to which BLX's counsel has not yet responded.

## II. BLX SHOULD PRODUCE THE SPREADSHEETS IN READABLE, ELECTRONIC FORM

11. BLX should promptly produce the Spreadsheets in readable, electronic form as they are currently kept in the ordinary course of BLX's business. There is no practical impediment that prevents BLX from promptly producing these documents in that form.

12. Prior to filing this motion, Lehman suggested a number of compromises to avoid this discovery dispute, i.e., BLX could produce the Spreadsheets in readable, electronic form without disclosing the underlying financial models. As Lehman's outside counsel explained to BLX's outside counsel months ago, BLX could (i) transfer the financial figures (but not the underlying models) from the Spreadsheets as they currently exist to new Excel spreadsheets and then produce the new Excel spreadsheets in native file format or (ii) produce the Spreadsheets in native file format while password protecting the models. (See Kellert Decl. ¶ 11.)

13. Claiming that it has already expended substantial costs printing and producing the Spreadsheets in (unreadable) paper form, BLX has refused even to consider these options unless Lehman first agrees to compensate BLX for reproducing the Spreadsheets in readable, electronic form. (See Kellert Decl. ¶ 12.) That BLX allegedly spent approximately $10,000 producing unreadable paper Spreadsheets is, however, not Lehman's fault. (See Opp. Mem. 6.) Indeed, as BLX's counsel acknowledges, before BLX produced the Spreadsheets in unreadable paper form, Lehman made it clear that it would not accept from BLX a production of the Spreadsheets in that form (and, of course, Lehman should not have needed to make it clear that documents needed to be produced in a readable and useable format). (See Aff. of William Molinski in Support of the Opp. Mem. ¶ 3.) BLX's costs are the result of its own actions, and do not constitute a justifiable basis for refusing to reproduce the Spreadsheets in a form that Lehman could read and use.

### III. LEHMAN, A BANKRUPT ENTITY, IS UNDER NO OBLIGATION AND SHOULD NOT BE REQUIRED TO PAY BLX'S EXPENSES IN RESPONDING TO THE SUBPOENA

14. As set out in the Motion, the Court need not reach this issue since BLX did not preserve any right to seek reimbursement from Lehman when it failed to comply with the Rule 2004 Order. In any event, neither Rule 2004 nor the Rule 2004 Order requires a bankrupt entity to reimburse a witness for the costs of complying with a Rule 2004 subpoena. (See Mot. ¶¶ 3, 19-20.) Not surprisingly, BLX has failed to cite a single case in which a debtor was compelled to reimburse the recipient of a Rule 2004 subpoena. Given the large number of Rule 2004 subpoenas that bankrupt entities serve on third-parties each year, this failure in and of itself is telling.

15. In the Opposition, BLX cites Rule 45(c)(1) of the Federal Rules of Civil Procedure and a single case, Night Hawk Ltd. v. Briarpatch Ltd., L.P., 03 Civ. 1382 (RWS), 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003), for the proposition that "a party serving a subpoena must take reasonable steps to avoid imposing an undue burden or expense on a person subject to a subpoena." (Opp. Mem. at 6.) Here, Lehman has taken reasonable steps to avoid imposing an undue burden or expense on BLX. First, Lehman served a discrete Rule 2004 Subpoena focused on the precise information that it needed to investigate derivative transactions with the Debtors in which BLX acted as a financial advisor (and received payment for that work). Had BLX produced the Spreadsheets in a readable, electronic form, as Lehman requested, BLX would not have incurred any printing costs. It was BLX's insistence on not producing the Spreadsheets as they currently exist in the ordinary course of BLX's business that generated any cost here. Second, Lehman suggested two cost-effective ways to produce the Spreadsheets in readable, electronic form without disclosing any allegedly confidential information, but BLX refused even to consider these suggestions.

16. <u>Night Hawk</u> is distinguishable. There, the court did not order the party serving the subpoena to reimburse the recipient of the subpoena for the costs of complying with the subpoena or even discuss the issue of cost-shifting. Instead, the court considered whether a defendant properly issued a Rule 45 subpoena that sought information about an entity that was no longer a party to the case. <u>Night Hawk Ltd.</u>, 2003 WL 23018833, at *8. The court granted the non-party's motion to quash the subpoena because the information sought was irrelevant and dismissed the case. <u>Id.</u> In addition, <u>Night Hawk</u> does not involve a bankrupt entity or Rule 2004 discovery.

17. BLX also misapplies the three-factor test that courts have applied when deciding whether to shift costs under Rule 45 of the Federal Rules of Civil Procedure. These three factors are as follows: (i) "'whether the nonparty actually has an interest in the outcome of the case,'" (ii) "'whether the nonparty can more readily bear the costs than the requesting party,'" and (iii) "'whether the litigation is of public importance.'" <u>In re Honeywell Int'l, Inc. Sec. Litig.</u>, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (citation omitted).[3] Each of these factors weighs heavily against cost-shifting in this case.

18. <u>Whether the Nonparty Actually Has an Interest in the Outcome of the Case</u>. BLX's claim that BLX "clearly does not have an interest in the outcome of the Lehman bankruptcy proceedings" is simply untrue. Financial advisors to Lehman swap counterparties often gave critical advice to these counterparties, and this advice is at the heart of the Rule 2004

---

[3] <u>In re Law Firms of McCourts and McGrigor Donald</u>, No. M. 19-96 (JSM), 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001), cited by BLX, does not help it. <u>First</u>, the subpoena at issue there was not a Rule 2004 subpoena, and the issuing party was not a debtor. <u>See</u> <u>id.</u> at *1. <u>Second</u>, the court determined that the responding witnesses (terrorist attack "victims") were "more closely analogous to 'the quintessential, innocent, disinterested bystander[s].'" <u>Id.</u> at *2 (quoting <u>In re First Am. Corp.</u>, 184 F.R.D. 234, 240 (S.D.N.Y. 1998)). Here, BLX was not an "innocent, disinterested bystander[]" but played an integral role in the underlying swap transaction between Lehman and Idaho Housing. <u>Id.</u>

investigations that Debtors are conducting. Indeed, former clients of many of these financial advisors have sued or threatened to sue these advisors for the advice that they provided to these counterparties.

19. Moreover, it was foreseeable that these clients and financial advisors might have to respond to discovery relating to the swap transactions between these clients and Lehman, and that possibility was necessarily a factor in the fees that these advisors charged. Thus, engagement letters between these financial advisors and swap counterparties typically contain indemnification provisions should the advisors have to respond to discovery disputes. Thus, BLX is simply not a classic disinterested party. See, e.g., In re Honeywell, 230 F.R.D. at 296, 303 (denying reimbursement in part because nonparty was "not a classic disinterested non-party"; rather, nonparty served as auditor to defendant in a case concerning alleged "accounting machinations"). To the contrary, BLX acted as a paid financial advisor with respect to the transaction as to which Lehman seeks Rule 2004 discovery from BLX. Accordingly, the first factor counsels against cost-shifting in this case.

20. <u>Whether the Nonparty Can More Readily Bear the Costs than the Requesting Party</u>. A bankrupt entity with billions of dollars of claims against it should not be required to pay the cost of responding to a subpoena under Rule 2004. In its Opposition, BLX suggests that it "is not better suited to bear the cost of compliance with the Subpoena"; rather, according to BLX, Lehman was a "gargantuan" entity with enormous resources (Opp. Mem. at 7.) Although Lehman may have been "gargantuan," it is now insolvent and should not be forced to bear the expense of producing Rule 2004 discovery to investigate claims on behalf of its estate.

21. <u>Whether the Litigation Is of Public Importance</u>. In approving Rule 2004 pursuant to congressional authorization, the United States Supreme Court gave bankrupt entities the

"right" to conduct investigations for the benefit of their creditors. See In re Recoton Corp., 307 B.R. 751, 759 (Bankr. S.D.N.Y. 2004) (stating that Rule 2004 provides "the longstanding right of an estate representative to conduct discovery [and] that a representative's investigation [was] designed in the first instance to benefit creditors"); In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) ("The object of the [Rule 2004] examination of the bankrupt and other witnesses is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.") (citing Cameron v. U.S., 231 U.S. 710, 717 (1914)); see also 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. . . . . The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule."). Requiring a bankrupt entity to compensate every recipient of a Rule 2004 subpoena would chill Rule 2004 investigations and thereby contravene this rule, as well as the intent of the Supreme Court and Congress. That outcome is entirely inconsistent with the public interest. Hence, the public interest factor also counsels against cost-shifting in this case.

### IV.    BLX DOES NOT DISPUTE THAT IT HAS VIOLATED THE RULE 2004 ORDER

22.    Finally, the Court adopted a detailed process for addressing discovery disputes with which BLX has failed to comply. Had BLX desired, it could have attempted to object to the Rule 2004 Order before it was issued and sought a cost-shifting provision. It did not. The Rule 2004 Order provides that if Lehman and the recipient of a Rule 2004 subpoena are unable to resolve a discovery dispute, the onus is on the recipient of the subpoena—not Lehman—to seek court intervention within a set amount of time:

> if the Debtor and an objecting witness cannot resolve the objection within ten (10) days following the date such objection is served on the Debtor (or such later date agreed to by the Debtor and the witness), the witness shall either (i) produce responsive documents in accordance with this Order or (ii) file the objection with the Court and promptly schedule a hearing . . . .

(Rule 2004 Order at 2-3.)

23. Here, BLX does not dispute that it violated the Rule 2004 Order by failing to file the objection with the Court at all, let alone on a timely basis; rather, it states that "[a]s a third party to this action," it was "unaware of an Order requiring a specific subpoena objection procedure." (Opp. Mem. at 8 n.3.) This statement is demonstrably false: when Lehman served BLX with the Subpoena, it included a copy of the Rule 2004 Order. (Reply Decl. of Raquel Kellert in Further Support of the Motion to Compel Compliance with Subpoena Duces Tecum (Feb. 13, 2012) ("Kellert Reply Decl.") Ex. A.) And the Stipulation that BLX signed in July 2011 expressly refers to the Rule 2004 Order. (Kellert Decl. Ex. H (stating that the Subpoena was "served pursuant to the November 23, 2009 order (the 'Order') of the United States Bankruptcy Court for the Southern District of New York granting the Debtors authority to issue subpoenas for the production of documents and authorizing the examination of persons and entities in the Chapter 11 proceeding captions In re Lehman Brothers Holdings Inc., et al. (Case No. 08-13555)").) Moreover, Debtors' filed a Notice of Subpoena Issued Pursuant to Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities (the "Notice of Subpoena"), dated May 16, 2011 (ECF No. 16846), which explicitly refers to the Rule 2004 Order in both the title and body text of the motion. (Kellert Reply Decl. Ex. B.) Accordingly, BLX was served with the Rule 2004 Order, and both the Stipulation and Notice of Subpoena filed with the Court expressly referred to that order.

## CONCLUSION

24. For the reasons set out in the Motion and above, Lehman respectfully submits that the Court should enter an order compelling BLX to fully comply with the Subpoena and at its own expense produce the approximately 200 Spreadsheets in readable, electronic form (i.e., as Excel spreadsheets) within 10 business days of entry of an order granting this relief.

Dated: February 13, 2012
      New York, New York

By: /s/ Richard W. Slack
Richard W. Slack
Adam M. Schloss

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession