UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                       :
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                    :   Case No 08-13555 (JMP)
                                                            :   Chapter 11
Debtors.                                                    :
                                                            :
                                                            :   Response Deadline: February 14, 2012
------------------------------------------------------------x

## RESPONSE OF LISA MARCUS TO
### DEBTORS' SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO DEBTORS' SEVENTY-THIRD, ONE HUNDRED EIGHTEENTH, ONE HUNDRED THIRTIETH, ONE HUNDRED THIRTY-FIRST, ONE HUNDRED THIRTY-THIRD, ONE HUNDRED THIRTYFOURTH, ONE HUNDRED THIRTY-FIFTH, ONE HUNDRED SEVENTY-SIXTH, AND TWO HUNDRED AND SEVENTH OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

Lisa Marcus ("Claimant") hereby responds ("Response") to the Debtors' supplemental annotated omnibus reply (the "Annotated Reply") (Docket No. 24591) to responses filed to certain omnibus claim objections (to Reclassify Proofs of Claims as Equity Interests) (the "Objection") as follows:

### Background and Preliminary Statement

1. The Annotated Reply relates to two claims filed by Claimant: (i) Claim No. 16329 ("Deducted Commissions Claim") and (ii) Claim No. 24889 (the "CSA Claim"). The CSA claim relates to commission draw compensation earned during years prior to 2008 for which the Debtors issued Contingent Stock Awards ("CSA") in exchange at the end of the relevant year. The Deducted Commissions Claim relates to commission draw compensation earned during 2008, and deducted from Claimant's monthly paychecks, but for which the Claimant received no property or right at the time of the chapter 11 filings. The Debtors objected to the CSA Claim in their One Hundred Thirtieth Omnibus Objection to Claims and to the Deducted Commissions

Claim in their One Hundred Seventy Sixth Omnibus Objection to Claims. Claimant hereby incorporates by reference her arguments to those objections set forth in her prior "Objection to One Hundred Thirtieth Omnibus Objection" (Docket No. 17132) and her prior "Objection to One Hundred Seventy Sixth Omnibus Objection" (Docket No. 20147).

2. Boiled to its essentials, Debtors' arguments is that both claims should be disallowed because, in their own words: "the restricted stock units and contingent stock awards bear the hallmarks of equity interests: the employees enjoyed the benefits as shareholders in the increase in value of LBHI, but also bore the risks that LBHI's stock would decline in value." Annotated Reply ¶ 1. However, as set forth below, for the Deducted Commissions Claim, Claimant did not bear *any* of the hallmarks of equity interests – because that claim represents amounts that were deducted from employee compensation during fiscal year 2008, but no contingent stock awards or other property was ever granted, priced or allocated to employees as anticipated during the fourth quarter of 2008 due to the intervening bankruptcy. Prior to actual grant, Claimant bore none of the risks or benefits of common stock ownership, and merely bore the risk of an intervening insolvency with respected to the deducted commission draws in the same way as other unsecured creditors. For the CSA Claim, although one might argue that the expected future value (post conversion) of a contingent stock award would fluctuate with the value of LBHI stock, the CSAs differed in material respects from stock-like instruments in that the CSAs had no voting rights, its value could not be transferred, pledged or otherwise realized, and the CSAs could, in certain circumstances, be converted into cash by Debtors. At most, the CSAs represented a contingent right to convert the unit into common stock, if certain conditions occurred. However, prior to conversion, the CSA was simply a form of deferred compensation.

2

### Response in Relation to Deducted Commissions Claim

3. With respect to the Deducted Commissions Claim, the Debtors' reply to all of Claimant's original arguments is summarized on pg 25 of the Annotated Reply. However, only one of those replies is actually relevant to the distinguishing features of this claim. That reply is:

> "**Amounts were deducted from Respondent's payroll and held in either an escrow account or in constructive trust for their benefit until such time as the funds would be used to purchase Equity Awards.**"

4. The Annotated Reply incorrectly characterizes Claimant's argument for claim treatment of the Deducted Commissions Claim. As the relevant proof of claim states, the Deducted Commissions Claim represents commission draw amounts that Claimant earned for services rendered during the fiscal year ended November 30, 2008 and that were deducted from her monthly paycheck, but for which the Debtors never reimbursed or otherwise provided value at the time of the bankruptcy petition date. Contrary to the Debtors' characterization of these claims and the argument related thereto (see ¶ 26 and 30 of Annotated Reply), Claimant does not assert that these deducted amounts were placed in escrow account or a constructive trust. Claimant is not asserting any type of secured claim or other priority that would arise from a constructive trust or other traceable fund. Claimant simply asserts an *unsecured* claim for amounts deducted from her earned compensation for which the Debtors provided neither Contingent Stock Awards, nor anything else of value either when the amounts were earned or by the time of the bankruptcy.

5. The 2008 Equity Awards Program (the "2008 Program") to which the Deducted Commissions Claim relates applied to both "bonus eligible employees" and "production based employees". A copy of the 2008 Program was attached to the proof of claim and was also

3

attached as part of Exhibit B to the Debtors' Omnibus Reply filed on December 15, 2011 (ECF No. 23470). This program was communicated to employees on July 2, 2008. As described in the 2008 Program, the award of CSAs for fiscal year 2008 consisted of a grants to be made on two separate dates: a) a grant actually made on July 1, 2008; and b) a grant to be made at a date to be determined by the Compensation and Benefits Committee of the Board of Directors during the fourth quarter of 2008 ("2008 Year-End Award"). During the fiscal year, including pay periods prior to the announcement of the terms of the 2008 Program, amounts were deducted from Claimant's commission draw based on her annualized total compensation and the assumed total contingent stock equity award for fiscal year 2008. These deductions were made consistent with prior practice based on the assumption that a 2008 Year-End Award would be granted, as in prior fiscal years, but the Debtors' bankruptcy intervened.[1]

6. Unlike bonus eligible employees, production based employees such as Claimant had amounts deducted from their paychecks throughout the year as a means of accruing for the anticipated year end purchase of CSAs. No such deduction mechanism was needed for other types of employees because the Debtors simply withheld the amount needed to purchase the awarded CSAs from their year end bonuses.

7. During the relevant payroll period, Claimant received a "Compensation Statement" (a redacted copy of which was attached to her proof of claim) that clearly demonstrates a deduction from her earned compensation in the amount of $58,800 for each month during the 2008 fiscal year prior to the bankruptcy. Debtors do not dispute Claimant's factual assertion that no CSAs or other property were exchanged for these amounts prior to the

---

[1] On July 1, 2008, the Debtors did make a grant of some CSAs for a *portion* of the total 2008 award. This portion (believed to be $141,200) has been excluded from the Deducted Commissions Claim since Claimant received CSAs for that amount.

4

Petition Date, except for the CSAs issued on July 1. The essential allegations of the Deducted Commissions Claim are the withholding of earned compensation during the year and the Debtors' failure to deliver anything of value in exchange prior to the Petition Date. There is no dispute that CSAs were not granted for the 2008 Year-End Award. Thus, the Debtors have not refuted any of the allegations essential to the claim's legal sufficiency and the burden of persuasion has not shifted to the Claimant. If necessary, Claimant is prepared to further prove these elements at trial with testimony and other evidence.[2]

8. Had the 2008 Year-End Award occurred, the employee would have received a number of CSAs based on the total compensation amounts withheld *during the year* and the price of LBHI common stock *at the time of grant* – not at the time that amounts were deducted. Although CSAs would presumably have been granted to Claimant in December 2008 had there not been a chapter 11 filing and had the Board not otherwise decided in its exercise of duties to make other changes, the relevant grant never occurred.[3] Hypothetically, had CSAs been delivered in December 2008, under the mechanics of 2008 Program, Claimant would have received – not a previously fixed number of CSAs that would have fluctuated in value throughout the prior year – but, rather, a number of CSAs to be calculated based on the compensation amounts previously withheld and the price of LBHI stock on the date of the grant.[4] In other words, prior to the actual grant of CSAs, Claimant's economic expectations were fixed

---

[2] The Debtors assert that "[b]ased on the Debtors' review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with the Equity Award." ¶ 26. However, Claimant is not seeking amounts held in escrow, constructive trust, or otherwise. The claim is for compensation earned in 2008, but not paid in any form by the time of the bankruptcy. .

[3] The Debtors made material changes to their 2008 Program from prior years based on market conditions in July 2008 and they could have made further changes based on market conditions during the fourth quarter of 2008. The important point is that until a CSA is actually granted, the terms are subject to revision and if circumstances warranted (such as, for example, a change of control transaction), the 2008 Year-End Award could have been eliminated completely.

[4] Presumably, Debtors did not issue the CSAs following the Petition Date, because, among other reasons, the 2008 Program would not be capable of assumption by reason of section 365(c)(2) of the Bankruptcy Code.

5

and were based totally the fixed amount of withheld compensation, rather than fluctuations in the value of common stock. With respect to the 2008 Year-End Award, Claimant never had the opportunity to assume or bear any stock holder risk nor enjoy any benefit from the appreciation of LBHI stock. The fact that the Debtors never exchanged CSAs for withheld compensation prior to bankruptcy is decisive and distinguishes the Deducted Commissions Claim from other claims based on issued equity awards, such as the CSA Claim, even if the Debtors' objection to the CSA Claim is accepted.

9. The case of *In re Motels of America, Inc.*, 146 B.R. 542 (Bankr. D. Del. 1992) is instructive. In that case, an employee of the Debtor had entered into an agreement prepetition that permitted him to sell up to 10% of his shares to the debtor on annual basis at a fixed price per share. *Id.* at 543. All the shares were placed in escrow at the time of the agreement and the debtor had all voting rights associated with the shares. The claim at issue in the case arose from the exercise of this put right following the bankruptcy, for which the debtor never paid. In rejecting the debtor's attempt to subordinate the claim under section 510(b), the bankruptcy court found it decisive that the claimant was not the holder of the shares, since he had no "indicia of ownership" and did not possess the "rights and risks associated with an equity security holder". *Id.* at 544. Similarly, with respect to the Deducted Commissions Claim, since the CSAs had not even been granted by the time of the Petition Date, and Claimant had none of the rights and risks associated with an equity security with respect to those CSAs, the Debtors should not be able to treat this claim as either an equity security or as a claim subject to section 510(b).

10. The cases in this Circuit are similar in analyzing the risk and return expectations of the claim to determine whether subordination under section 510(b) should be applied. *See, e.g, In re Enron*, 341 B.R. 141, 157, 167-68 (Bankr. S.D.N.Y. 2006) (subordinating claims

arising from options because cash value of the option varied with the price of the stock and to that extent resembled a typical equity interest, and any damages would be "damages flowing from changes in the debtor's share price"); *In re Med Diversified, Inc.*, 461 F.3d 251 (2d Cir. 2006) (claim arising from breach by debtor of agreement to issue fixed number of shares to claimant was subordinated because once agreement was concluded, claimant's expectation was he would be able to share in debtor's profits as an owner with respect to those shares). The *Med Diversified* court adopted a test to require subordination under 510(b) only if the creditor (1) took on the risk and return expectations of a shareholder, rather than a creditor or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend credit. *Id.* at 256. Here, with respect to the Deducted Commissions Claim, none of these tests are satisfied because during the period prior to the Petition Date, (1) the CSA's related to the 2008 Year-End Award had not even been granted or allocated (or their quantity even determined), thus precluding risk and return expectations by Claimant and (2) because the CSAs were never issued by the time of the bankruptcy, the Debtors never had the opportunity to setoff the issuance of new shares against the withheld compensation claim, such that, there would then, perhaps arguably, be an increase in the equity pool relied upon by creditors.

11. When one reviews the arguments made by the Debtors with respect to CSAs in general, it is clear that the Debtors are trying to have their cake and eat it too. The Debtors cannot assert both (i) that for claims arising from withheld compensation in which CSAs *were actually granted*, the claim should be treated as an equity security because of the common stock type characteristic of a Contingent Stock Award, such as assuming the benefits and risks of stock ownership, and (ii) that for claims arising from withheld compensation for which CSAs *were never granted* because of an intervening bankruptcy, the claim should also be treated as an equity

7

security. Simply put, for compensation withheld in the nine months prior to bankruptcy, for which the issuance of CSAs was at all times contingent, and in fact never occurred, the employees had neither the risks, nor the potential benefits, associated with equity ownership. In the event that Lehman stock increased in value during the period, it would have absolutely been of no benefit to Claimant, and had Lehman stock decreased in value, that would not have hurt Claimant one iota, because all of the CSAs for the 2008 Year End Award had been neither issued, nor priced, nor allocated to employees such as Claimant, by the time of the bankruptcy. In this situation, there are no equitable or policy arguments for treating these claimants as an equity security holder. Prior to the grant of CSAs, the only risk that Claimant faced in respect of this unpaid 2008 compensation was the possible insolvency of the Debtors during the fiscal year, and before she received anything in value for her rendered services. For that reason she seeks to be treated the same as other unsecured creditors of the Debtors for the Deducted Commissions Claim.

## Response in Relation to CSA Claim

12. With respect to the CSA Claim, the Debtors' reply to Claimant's original arguments is summarized on pg 17 of the Annotated Reply. However, the Debtors have not replied to the essential elements of her argument: **Prior to conversion by the Debtors, upon the occurrence of certain conditions, the CSAs lacked most of the fundamental characteristics of equity securities**. They could not be sold, traded or pledged during the vesting period. They did not represent a present common share in LEH or a similar security, or constitute a warrant or right to purchase shares of LEH in the future. The CSAs had no voting rights. Boiled down to essentials, the CSAs constituted a property right that *could* in the future convert into LEH common stock, upon the occurrence of vesting conditions, and without further action of the

holder, such as the payment of any purchase price (even a nominal one), or the exercise of an option, as is the case with stock options or warrants. In certain instances, however, such as in the case of a friendly change of control, LEH could deliver cash to the employee. Therefore, at most, the CSAs constituted a "right to convert" into common stock when and if the vesting conditions occurred, but such right to convert is specifically excluded from the Bankruptcy Code definition of equity securities. 11 U.S.C. § 101(16)(c) ("equity security means warrant or right, <u>other than a right to convert</u>, to purchase, sell, or subscribe to a share") (emphasis added).

13. Claimant concedes that had the CSAs been converted to LBHI common shares prior to the Petition Date, she would not have a claim for the compensation that was initially withheld for those shares, because by the Petition Date the compensation claim would have been converted to an instrument that then carried all of the hallmarks of an equity security (increase or decrease in value, voting rights, transferability etc.). However, until that time, the CSAs were claims against the Debtors, which the Debtor had a right to convert in the future, but did not convert as of the Petition Date.

9

14. Claimant preserves and reserves all other rights with respect to the CSA Claim and the Deducted Commissions Claim and the right to make additional or supplemental arguments in connection therewith or at any future hearings.

Dated: February 13, 2012

/s/ *Steven M. Abramowitz*

Steven M. Abramowitz
666 Fifth Avenue
New York, New York 10103
212-237-0137

Attorney for
Lisa Marcus
131 DeVriese Court
Tenafly, NJ 07670

917-526-0936