Law Office of A. James Boyajian
355 S. Grand Avenue, Suite 2450
Los Angeles, California 90071
JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile:  424.298.4377

Attorney for Priority Claimant Jeffery K. Wardell

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>Jointly Administered |

**SUPPLEMENTAL RESPONSE OF PRIORITY CLAIMANT JEFFERY K. WARDELL (CLAIM # 24545) TO DEBTORS' SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO RESPONSES TO DEBTORS' SEVENTY-THIRD, ONE HUNDRED EIGHTEENTH, ONE HUNDRED THIRTIETH, ONE HUNDRED THIRTY-FIRST, ONE HUNDRED THIRTY-THIRD, ONE HUNDRED THIRTY-FOURTH, ONE HUNDRRED THIRTY-FIFTH, ONE HUNDRED SEVENTY-SIXTH, AND TWO HUNDRED AND SEVENTH OMNIBUS OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTEREST)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

  Jeffery K. Wardell (the "Priority Claimant") files this supplemental response in support of his claim for $50,638.80 in unpaid wages, salaries, compensation, and/or benefits ("Claim #24545") and in opposition to Debtors' Supplemental Annotated Omnibus Reply filed January 24, 2012 (the "Debtors' Annotated Reply") by Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced cases (collectively, the "Debtors"). Priority Claimant respectfully represents:

**Preliminary Statement**

1.      Claim #24545 is for unpaid employee wages, compensation, or benefits. Debtors seek to reclassify certain omnibus groups of claims, including Claim #24545, as equity interests. However, Claim #24545 cannot reasonably be classified as equity under the U.S. Bankruptcy Code or any other basis. Cash wages withheld monthly from Priority Claimant in the form of unissued restricted stock units (the "RSUs") pursuant to Debtor LBHI's unusual 2008 Equity Awards Program Plan (the "2008 RSU Plan") do not share the hallmarks of equity like common stock, stock options, puts, or warrants: RSUs (1) do not allow sharing in the benefits or risks of fluctuations in LBHI's value; (2) do not give a present right to acquire LBHI common stock; (3) give no voting rights; (4) pay no dividends, (5) are highly forfeitable prior to both issuance and vesting; (6) may never be given since LBHI reserved the right to pay cash instead; and (7) provide no investment power to buy, sell, or trade interests in LBHI. *In re Enron Corp.,* 341 B.R. 141 (Bankr. S.D.N.Y. 2006) ("*Enron*"), and the other cases cited in Debtors' Annotated Reply are irrelevant since none of them discuss RSUs. Because RSUs are not a "security" and cannot therefore relate to "purchase or sale of a security," 11 U.S.C. § 510(b) does not mandate they have the same priority as common stock. Also, since there is no subordination clause in the 2008 RSU Plan, 11 U.S.C. § 510(a) does not require treating RSUs as equity either.

2.      Claim #24545 deserves equitable restitution and priority status. Debtors Annotated Reply ignores 11 U.S.C. § 507(a), which requires giving priority to employees of a bankruptcy petitioner. This Court should reject Debtors' Objection and use its equitable powers to ensure that employee Priority Claimant receives priority distributions for unpaid wages, compensation, and/or benefits as envisioned by the letter and spirit of the Bankruptcy Code.

**Background**

3. Priority Claimant filed two separate claims in the above-captioned Chapter 11 cases, including Claim #24545 for $50,638.80 in unpaid wages, salaries, or compensation for commission-sales based services he performed as a Senior Vice President of LBHI's San Francisco office. LBHI took this money out of his paycheck in monthly increments to issue RSUs at the end of November 2008 under the 2008 RSU plan. The RSUs ultimately could not be issued following the September 15, 2008 bankruptcy petition and do not exist.

4. Debtors filed their "One Hundred Seventy-Sixth Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity Interest)" (the "Debtors' Objection") on August 19, 2011 seeking to reclassify Claim #24545 as a worthless equity interest. Priority Claimant filed a response opposing Debtors' Objection on September 20, 2011 (the "Response"), to which Debtors filed a Reply on December 15, 2011. A hearing was held on December 21, 2011 to consider the Objections. After dozens of claimants appeared to posit dissimilar arguments as to why a reclassification of nine different omnibus groups of claims to equity would be an injustice, this Court ordered annotated and supplemental briefings as well as the establishment of an evidentiary record. Specifically, the Court called on the parties to discuss how RSUs are different from the stock options in Judge Gonzalez' *Enron* decision.

5. Priority Claimant files this Supplemental Response to answer the Court's questions and show that there is no legal or factual basis provided in Debtors' Objection or Debtors' Annotated Reply that warrants reclassification of Claim #24545. Debtors' request to reclassify Claim #24545 should be denied according to Priority Claimant's original Response and the following supplemental reasons, facts, and legal foundations:

**Supplemental Argument**

6.  Debtors' Annotated Reply improperly groups dissimilar claims based on a variety of unissued, issued, unvested, and vested RSUs, contingent stock awards, stock options, and other compensation forms, which are governed by different documents from various years containing dissimilar terms and conditions. (Debtors' Annotated Reply, ¶2-3.) Some of these claims may be properly characterized as equity while others cannot. Each claim, or at least each of the nine omnibus classes of claims, should be heard separately so as to ensure a fair hearing.

7.  Claim #24545 arises out of a "right to payment" or "equitable remedy" for unpaid wages, compensation, or benefits under 11 U.S.C. §§ 101(5) and 507(a); not a theory of breach of contract or fraud arising from the "purchase or sale of a security" under 11 U.S.C. § 510(b) as alleged by some other claims in Debtors' Objection. (See Debtors' Annotated Reply ¶¶ 20-23.)

8.  Debtors have not shifted the burden to prove the validity of Claim #24545 to Priority Claimant since both Debtors' Objection and Debtors' Annotated Reply fail to refute its essential allegations. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("The burden . . . shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'") (citation omitted); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Reckefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Debtors have not set forth sufficient evidence to *refute* an essential allegation in Claim #24545. Contrary to Defendants' evidence-lacking argument, Claim #24545 cannot be equity under Section 510 because unissued RSUs, which do not exist, cannot possibly be anything.

9. Even if this Court believes the burden of proof has shifted to Priority Claimant, the preponderance of evidence shows that Claim #24545 is both a valid claim (that is, a right to a payment or equitable remedy) and deserves priority under Sections 507(a)(5) and 507(a)(4) as well as general unsecured status for any amounts exceeding the priority caps in those Sections.

### A. RSUs are Not Equity

10. Cash compensation withheld from commission-sales employee Priority Claimant as unissued RSUs is not equity. It remains a debt obligation until the RSUs are actually issued and automatically converted to common stock. RSUs are defined as follows:

> An RSU represents the conditional right to receive one share of Lehman Brothers common stock three years after the grant date, on November 30, 2011. Generally, RSUs cannot be sold, traded, pledged or transferred during that three-year period.

*See* 2008 RSU Plan, p. 16 (attached as Exhibit A to Debtors' Annotated Reply). The RSUs for the amounts deducted from Priority Claimant's wages between December 2007 and September 2008 were to be issued on November 30, 2008. That never happened. Even had they been issued, they would have not begun vesting until at least an entire year later. Vesting schedule: November 30, 2009 (33%), November 30, 2010 (33%), and November 30, 2011 (33%). *See Id.* at p. 4. The RSUs would not be converted to LBHI common stock until November 30, 2011 (end of the "Holding Period"). *See id.* These RSUs are not equity because they (I) do not feature the hallmarks of equity in the Debtors' cited cases, (II) are not subject to any legal precedent cited by Debtors requiring they be treated as equity, and (III) are not subject to any subordination clause which requires reclassifying them as equity.

### I. RSUs do not bear the hallmarks of securities or equity interests.

11. Debtors Annotated Reply argues, "Indeed, the [unissued RSUs] bear the hallmarks of equity interests: the employees enjoyed the benefits of shareholders in the increase

5

in the value of LBHI, but also bore the risks that LBHI's stock would decline in value. Thus, such Equity Awards resemble an equity interest to which subordination under section 510(b) is applicable." This is patently false. RSUs, whether issued or not, do not allow the holder to share in the ups and downs of the company's market value. Priority Claimant could not possibly enjoy benefits in increases in value of LBHI merely by holding RSUs; nor did he bear the risks that LBHI's stock would decline in value. Moreover, an employee certainly cannot use RSUs that do not exist to acquire LBHI common stock or any other interest that would allow for the sharing in risks and benefits of fluctuations in LBHI's value.

12. Traditional equity securities usually come with the power to make investment decisions, transferability, dividends, and voting rights. RSUs under the 2008 RSU Plan have none of these features. The Bankruptcy Code defines "equity securities" as:

> (A) a share in a corporation . . . (B) interest of a limited partner in a limited partnership; or (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security or interest of a kind specified in subparagraph (A) or (B) of this paragraphs.

11 U.S.C. § 101(16). An RSU, even if it has issued and vested, is neither an "equity security" under this definition nor one of the forms of "security" enumerated in 11 U.S.C. 101(49)(A). RSUs are fundamentally different from stock, preferred stock, puts, warrants, phantom stock, and stock-options. All of these give a present right to make an investment decision and share in the risks and benefits of having an ownership stake in the company.[1] RSUs, on the other hand, provide no present ownership stake or power to invest and divest in the company. Priority

---

[1] While these terms are not defined in the Bankruptcy Code, their ordinary definitions are in stark contrast to the definition of an RSU. *See supra* ¶ 10. For example, "Stock" is "A proportional part of a corporation's capital represented by the number of equal units (or shares) owned, and granting the holder the right to participate in the company's general management and to share in its net profits or earnings[,]" while a "Stock option" is "1. An option to buy or sell a specific quantity of stock at a designated price for a specified period regardless of shifts in market value during the period . . . 2. An option that allows a corporate employee to buy shares of corporate stock at a fixed price or within a fixed period[.]" BLACK'S LAW DICTIONARY 1551-1554 (7th Ed. 1999).

6

Claimant did not have the power to buy, sell, pledge, trade, or transfer either the RSUs or LBHI common stock like a stockholder or holder of stock options. Also, RSUs come with no dividends or voting rights. Nor do they resemble securities like "stocks" or "investment contracts" under the Securities Act of 1933. *See United Housing Foundation, Inc. v. Forman,* 421 U.S. 837 (1975); *Landreth Timber Company v. Landreth,* 471 U.S. 837 (1975).

13. RSUs are easily-forfeitable units that will not convert to stock equity until three years later and only if several contingencies are met. For example, under the 2008 RSU Plan, 30% of the RSUs were to vest in November 30 of 2009, 2010, and 2011; vested 2008 RSUs were eligible to convert to LBHI common stock on November 30, 2011. But if the employee resigned and left the firm before November 30, 2011, he would have forfeited the RSUs and been deprived of compensation or benefits due for the work he had done in exchange for the RSUs he never received. "If you resign, you will forfeit all RSUs that are unvested at the time of your termination . . ." *See* 2008 RSU Plan, at p. 9.

14. Finally, there was no real promise that LBHI would even give Priority Claimant any RSUs under the plan since it reserved the right to pay cash instead. This translates to, "maybe we will give you RSUs; maybe we won't." Therefore, until the RSUs actually issue to the employee, there is no guarantee the employee will get any RSUs. Priority Claimant could not know if he would ever get an equity interest in LBHI or cash in exchange for these withheld paycheck amounts; any right or promise given to Priority Claimant to acquire LBHI common stock was therefore an illusory promise.

II.   <u>Debtors cite no legal authority that supports reclassifying cash compensation withheld in the form of unissued RSUs as equity.</u>

15.   The fatal flaw in Debtors' Annotated Reply is that it equivocates RSUs under the 2008 RSU Plan with common stock, stock options, and other types of equity securities. The primary issue at bar is whether these unissued RSUs can be best classified as equity. The cases cited by Debtors in support of mandatory Section 510(b) subordination are irrelevant to this issue because none of them deal with RSUs.

16.   Stock options granted to employees qualify as equity securities since they were subject to a mandatory subordination provision and because employee claims of fraud and breach of contract related to electing stock, stock option, and phantom stock compensation packages were claims for damages arising from the "purchase" of securities. 11 U.S.C. §§ 101(49)(A)(xv), 510(a); *In re Enron Corp., et al.,* 341 B.R. 141 (Bankr. Ct. 2006). But Debtors fail to recognize that Judge Gonzalez's holding in *Enron* applies only to stock options, as explained in footnote 3:

> The Court notes that its conclusions apply *only to stock options* similar to those presented here. The Court issues no opinion as to whether stock options might be designed in such a fashion that would result in different treatment under section 510(b). However, as discussed herein, to the extent that *stock options* necessarily implicate the purchase or sale of a security, it is doubtful that any *stock options* can be so designed.

*Id.* at 144 n.3 (emphasis added). RSUs are not stock options; they are fundamentally different. *See* supra ¶¶ 10-15. Stock options are readily tradable; they give the holder the decision of whether to invest or not at a set price regardless of the actual market value of a company's stock at any given time. In contrast, these RSUs – which were forced upon Priority Claimant but never actually issued – do not provide the right to make an investment decision at any time since they automatically convert three years after issuance. Moreover, Priority Claimant is not seeking

damages from fraud or breach of contract theories like the claimants in *Enron*. Even the phantom stock also at issue in *Enron* was a present equity interest with expectation of sharing in profits and losses. *Enron,* 341 B.R. at 162-163. In contrast, since Respondent never received unissued RSUs and knew of the high-risk of forfeiture, he could not expect to participate in the firm's profits and losses. Thus, *Enron* is irrelevant.

17. None of the other cases Debtors cite are relevant to the issue of how to treat RSUs. *In the Matter of Baldwin-United Corp.*, 52 B.R. 549 (Bankr. S.D. Ohio 1985), concerns stock-option plans with a "cash-option"; *Nantahala Capital Partners, LP v. Washington Mut., Inc. (In re Washington Mut., Inc.),* Ch. 11 Case No. 08-12229 (MFW), 2012 Bankr. LEXIS 1, at *28-30 (Bankr. D.Del. Jan. 3, 2012), deals with warrants; *Carrieri v. Jobs,* 393 F.3d 508 (5th Cir. 2004), concerns preferred stock and warrants; *In re Einstein/Noah Bagel Corp.,* 257 B.R. 499 (Bankr. D. Ariz. 2000), deals with put rights (i.e., which give an employee the right to require its interest in the company be purchased back by the company); *In re Alta+Cast, LLC,* 301 B.R. 150 (Bankr. D. Del. 2003), concerns a terminated employee's stock; *Frankum v. Int'l Wireless Commc'ns Holdings, Inc. (In re Int'l Wireless Commc'ns Holdings, Inc.),* 279 B.R. 463, 467 (D. Del. 2002), *aff'd,* 68 Fed. Appx. 275 (3d Cir. 2003), concerns stock given as part of compensation package; *In re U.S. Wireless Corp., Inc. v. Wax,* 384 B.R. 713 (Bankr. D. Del. 2008), discussed stock, stock options, and warrants; *In re Med Diversified Inc.,* 461 F.3d 251 (2d Cir. 2006), deals with common stock given in exchange for stock in another company; *In re Touch America Holdings, Inc., et al.,* 381 B.R. 95 (Bankr. D. Del. 2008), concerns stock compensation packages; and *In re Worldwide Direct, Inc., et al.,* 268 B.R. 69 (2001), deals with stocks based on a severance agreement. None of these cases discuss or are relevant to RSUs, which (as explained above) are fundamentally unlike traditional forms of equity.

9

18.     The only two cases that are on point effectively state that RSUs are not equity like common stock or stock options. *FleetBoston Financial Corp. v. Alt, 668 F. Supp. 2d 277* (D. Mass., 2009) (holding that since former employees who held RSUs never satisfied requirement for stockholder status, they were not equity stockholders in the corporation and therefore may not sue the majority stockholder for breach of fiduciary duty), *aff'd*, 638 F.3d 70 (1st Cir. 2011); *Diab v. Textron*, Inc., Slip Copy, 2010 WL 2696624 (E.D. Mich., 2010) (granting summary judgment to employee on the basis that the RSUs were not substantially the same or equivalent to stock options). According to Delaware Law, an individual retains no stockholder rights unless he is a stockholder. *FleetBoston Financial Corp,* 638 F.3d at 279, *citing Salt Dome Oil Corp. v. Schenck,* 41 A.2d 583 (Del. 1945). Contrary to Debtors' objection, *FleetBoston* demonstrates yet another reason why RSUs are not stockholder-like equity. *See* Debtors' Annotated Reply ¶ 40. Priority Claimant did not hold legal title to the nonexistent unissued RSUs. He would seemingly be precluded from suing for breach of fiduciary duty based on these unissued RSUs.

19.     Lastly, Debtors cite Agreements covering certain of the Equity Awards to argue that none of the claimants had a right to a payment in cash:

> [LBHI]' and any Subsidiary's obligation with respect to the [Restricted Stock Units] granted hereunder is limited solely to the delivery to you or shares of Common Stock in the date when such shares are due to be delivered hereunder, and in no way shall [LBHA] or any subsidiary become obligated to pay in cash in respect of such obligation.

*See* Debtors' Annotated Reply ¶¶ 11, 30, and 41; *See, also,* 2003, 2004, 2005, 2006, and 2007 Equity Award Program Agreements attached to Debtors' Annotated Reply as Exhibit B. Despite Debtors' attempts to equivocate these claims as one and the same, the relevant 2008 RSU Plan does <u>not</u> contain this language and Claim #24545 is therefore not bound thereto.

III.    Debtors cite no contract provision requiring subordination under 510(a)

20.     Debtors do not cite any contract term which requires subordination of Claim #24545 under 510(a). There is no such subordination agreement in the 2008 RSU Plan. Debtors equivocate between the 2008 RSU Plan, which is the only plan relevant to Claim #2454 and contains no subordination term, to the 2003 and 2004 plans which contain a subordination term. *See, e.g.,* Debtors' Annotated Reply ¶15. Nothing in the 2003 and 2004 Agreements is incorporated by reference into the 2008 Agreement. The 2008 Agreement that Debtors attached in Exhibit B of their Reply brief does not even mention the word "bankruptcy." Rather, the fact that this language was removed from the 2008 Agreement is evidence the parties no longer agreed to subordinate RSUs as equity in the case of a bankruptcy.

21.     Also, there was no term in the Debtors' 2008 RSU Plan that states unissued RSUs will issue on the date of bankruptcy petition and be converted to common stock the date bankruptcy is filed.

22.     Debtors' attorneys who drafted the 2008 RSU Plan adhesion contract should have included these clauses with all the other terms they forced onto their employees. LBHI should not be rewarded for failing to carefully craft contractual language that would have allowed them to subordinate unissued RSUs in the case of bankruptcy. Because there is no such term in the relevant 2008 RSU Plan or documents referenced therein, 11 U.S.C. § 510(a) is inapplicable and there is no statutory or equitable basis to subordinate Claim #24545.

**B.    Claim #24545 deserves priority status as an employee's right to payment or equitable remedy for unpaid wages, salary, compensation, and/or benefits.**

23.     The Bankruptcy Code aims to protect employees as priority creditors. 11 U.S.C. § 507(a); *see* Response ¶ 36. Debtors assert that a fundamental policy is at stake with Section

11

510(b) regarding distribution of assets, but they fail to discuss Section 507(a). Since Claim #24545 arises out of services rendered within 180 days prior to bankruptcy filing, Section 507(a) applies and Claim #24545's right to payment of unpaid wages, compensation, or benefits deserves priority.

24.     Moreover, under the unusual 2008 RSU Plan, money was withheld monthly from broker commission-sales employee Priority Claimant's paychecks by LBHI in violation of state labor laws.[2] By withholding the earnings of the employee, Debtor enjoyed the opportunity to do whatever it wished with the cash without actually giving any actual equity in LBHI to the employee. This Court should use its Section 105 equitable powers to cancel and set aside the 2008 RSU Plan due to impossibility because it could not be performed following a voluntary bankruptcy petition on September 15, 2008. Also, this money should be held in a constructive trust[3] for Priority Creditor until it may be recovered from the bankruptcy estate.

25.     If LBHI could not possibly issue the RSUs, they owe their employee cash they withheld from him under state labor laws as well as under the equitable doctrine of Restitution. Claimant believes LBHI owes him this money as consideration for his labor as unpaid compensation towards either a benefit plan or wages. He therefore has a legal and equitable right to payment under Sections 101(5) and 507(a). As such, it is a valid priority claim.

## Conclusion

Based on the foregoing, the Priority Claimant's earlier Response, and the sworn Affidavit of Jeffery K. Wardell (Attached as Exhibit 1 to the Response), the wages withheld give rise to a

---

[2] *See, e.g.,* 19 Del. C. §§ 1107-1113; N.Y. Lab. Law §§ 190-198(c)

[3] Debtors claim that, "[b]ased on the Debtors' review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with the Equity Awards." (Debtors' Annotated Reply ¶¶ 26 and 30) This makes no sense because a constructive trust is merely a judicially remedy. If Debtors were looking for a constructive trust, it is no wonder they could not find it. But one thing is for certain: the compensation records of Priority Claimant show that LBHI withheld wages from his paycheck in accrual for the purpose of issuing RSUs.

valid priority claim for a payment or equitable remedy. Unissued RSUs which do not exist cannot possibly be equity. The only legal precedents on point show that unissued RSUs are not equity because they do not share the hallmarks of equity, do not arise from the purchase or sale of a security, and are not subject to a subordination clause. Reclassification of this 507(a) priority claim as equity would render an unjust result that is unfair and contrary to spirit of the Bankruptcy Code. As such, the only reasonable conclusion under the law and facts is that Debtors' Objection should be denied and Claim #24545 should get priority to the extent possible.

### Reservation of Rights

Priority Claimant reserves the right to amend this supplemental response, conduct discovery, and add any additional relevant details to the extent allowed under law and by this Court. Priority Claimant also reserves all rights to object on any basis to any other claims, objections, or responses made by Debtors at the hearing, in subsequent court filings, and in unrelated cases and controversies involving both Debtors and any non-debtor entities. Priority Claimant does not agree to release any non-debtor parties from liability regardless of the outcome of this issue.

Dated: February 14, 2012
Los Angeles, California

By: /s/ A. James Boyajian
A. James Boyajian
Law Office of A. James Boyajian
333 S. Grand Ave., 25th Floor
Los Angeles, California 90071
JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 323.887.0891

Attorney for Priority Claimant Jeffery K. Wardell.

Law Office of A. James Boyajian
355 S. Grand Avenue, Suite 2450
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile:  424.298.4377

Attorney for Priority Claimant Jeffery K. Wardell

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.*, ) | **Case No. 08-13555 (JMP)** |
| | ) **Jointly Administered** |
| **Debtors.** | ) |
| | ) |

**PROOF OF SERVICE**

I, A. James Boyajian, Esq., do hereby swear and certify that:

1) I am an attorney and counsel to Jeffery K. Wardell, a priority claimant in this action. I am over the age of twenty-one years. I am not a party of interest to this proceeding.

2) On this 14th day of February, 2012, I caused a copy of the SUPPLEMENTAL RESPONSE OF PRIORITY CLAIMANT JEFFERY K. WARDELL (CLAIM # 24545) TO DEBTORS' SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO RESPONSES TO DEBTORS' SEVENTY-THIRD, ONE HUNDRED EIGHTEENTH, ONE HUNDRED THIRTIETH, ONE HUNDRED THIRTY-FIRST, ONE HUNDRED THIRTY-THIRD, ONE HUNDRED THIRTY-FOURTH, ONE HUNDRRED THIRTY-FIFTH, ONE HUNDRED SEVENTY-SIXTH, AND TWO HUNDRED AND SEVENTH OMNIBUS OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTEREST) to be served via hand delivery using Lawson Legal Service, a New York-based legal document service company, on the following parties:

(1) The Chambers of the Honorable James M. Peck,
Re: Courtesy Copy in Ch. 11 Case # 08-13555 (JMP)
Courtroom 601
One Bowling Green
New York, New York 10004

(2)  Weil, Gotshal & Manges LLP,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Robert J. Lemons, Esq.
Mark Bernstein, Esq.
767 Fifth Avenue
New York, New York 10153

(3)  Office of the U.S. Trustee for Region 2,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Tracy Hope Davis, Esq.;
Elisabetta Gasparini, Esq.; and
Andrea B. Schwartz, Esq.
Re: Case # 08-13555 (JMP)
33 Whitehall Street, 21st Floor
New York, New York 10004

(4)  Milbank, Tweed, Hadley & McCloy LLP,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Dennis F. Dunne, Esq.;
Dennis O'Donnell, Esq.;
Evan Fleck, Esq.
1 Chase Manhattan Plaza
New York, New York 10005

Dated: February 14, 2012
Los Angeles, California

By: /s/ A. James Boyajian
A. James Boyajian
Law Office of A. James Boyajian
355 S. Grand Ave., Suite 2450
Los Angeles, California 90071
JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 424.298.4377

Attorney for Priority Claimant Jeffery K. Wardell.