STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006-1404
Telephone: (212) 566-4047
Facsimile:  (212) 566-4061
Email: schager@ssnyc.com
Richard J. Schager, Jr.

*Attorneys for Claimant*
*Michael K. McCully*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re                                                         :   Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,                        :   08-13555 (JMP)
                                                              :
                                                  Debtors.    :   (Jointly Administered)
                                                              :
------------------------------------------------------------- x

**RESPONSES OF CLAIMANT MICHAEL K. MCCULLY IN OPPOSITION TO:**

1. **DEBTORS' DECEMBER 15, 2011 OMNIBUS REPLY TO RESPONSES TO DEBTORS' 118th, 130th, 131st, 133rd, 134th, 135th, 176th, and 207th OMNIBUS OBJECTIONS TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)**

2. **DEBTORS' JANUARY 24, 2012 SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO RESPONSES TO DEBTORS' 73rd, 118th, 130th, 131st, 133rd, 134th, 135th, 176th, and 207th OMNIBUS OBJECTIONS TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)**

| CLAIM SUBJECT TO DEBTORS' 130th OMNIBUS OBJECTION ||
|---|---|
| **Creditor Name and Address:**<br>MCCULLY, MICHAEL K.<br>340 East 23rd Street<br>Apartment 5M<br>New York, NY 10010-4747 | **Claim Number:** 65949 |
| | **Docket:** 21508 (restored by Doc. 22347) |
| | **Date Filed:** 12/15/09 |
| | **Debtor:** 08-13555 |
| | **Classification And Amount:** PRIORITY: $10,950.00<br>UNSECURED: $826,086.00<br>TOTAL: $837,036.00 |

**This Restatement of Opposition to the Debtors' 130th Omnibus Objection** is submitted by Claimant Michael K. McCully, Doc. 21508, Claim No. 65949. Debtors' 130th Objection is an attempt to reclassify as equity interests the claim for unpaid compensation of McCully (and others similarly situated). Debtors' Objection should be denied because:

- By clothing these employee compensation agreements in the garb of equity stock option plans, Debtors are asking the Court to see equity that is simply not there. McCully, and other similarly situated, received only contract obligations to be paid for services, some of which were ongoing. Granting stock options is issuing securities; promising to compensate for services is not.

- Debtors' characterization of McCully's claim as an attempt to "bootstrap" an equity claim into a contract claim is exactly the opposite of what Debtors' motion seeks.[1] Debtors' petition and schedules, as well as the compensation plan documents of pre-petition Lehman Brothers Holdings ("LBH"), recognize that the claims of McCully and others similarly situated are executory contract claims for employee compensation, with priority for a portion as recognized by 11 U.S.C. § 507(a)(4). Debtors' objection is an effort "reclassify" these compensation claims to the same level as that of shareholders, whose claims are sourced in corporate and securities law, not contract law.

- The fundamental reason for subordinating an equity claim to unsecured creditors' claims is that shareholders provide an "equity cushion" on which creditors rely in dealing with the Debtor pre-petition. In two Replies supporting six separate objections, Debtors here have failed to describe the mechanics of the compensation agreements at issue, and failed to document that these compensation claims were anything but contract obligations to employees. The RSU Agreements provided no equity cushion.

Debtors' claim that McCully and other employees are attempting to bootstrap their compensation claims from equity into contract is drawn from the 19th century authority presenting the rhetorical proposition that '[w]hen a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, and to assume the role of a creditor, is very

---

[1] Debtors' December 15, 2011 Omnibus Reply to Responses to Debtors' 118th, 130th, 131st, 133rd, 134th, 135, 176th, and 207th Omnibus Objections to Claims (to Reclassify Proofs of Claims as Equity Interests) (the "Dec. 15 Omnibus Reply") at ¶ 15; Debtors' January 24, 2012 Supplemental Annotated Omnibus Reply to Debtors' 73rd, 118th, 130th, 131st, 133rd, 134th, 135, 176th, and 207th Omnibus Objections to Claims (to Reclassify Proofs of Claims as Equity Interests) (the "Jan. 24 Supplemental Reply") at ¶ 20.

2

strong. . . . ."[2] Putting aside the holding of the case (the shareholder there *was* permitted to proceed with his claim in contract), the authorities in this circuit that have applied the bootstrap concept from *Newton Nat'l* have done so where the claim was unambiguously an equity claim sourced in corporate or securities law.[3] The better 19th century guidance is the Andersen fable of the young boy "who could only see things as his eyes showed them to him."[4] Debtors have not differentiated among the various compensation plans at issue, but rather have presented a "garb of a stockholder" argument that draws largely from stock option plans that are materially different. Unlike the defrauded stockholders in *Stirling Homex* and the holders of stock options in *In re Enron*, McCully and others similarly situated were never security holders. Until the 130th Omnibus Objections, Debtors and the pre-petition LBH recognized that. He, and others similarly situated, have only the contract compensation rights that are the basis for their claim. They have no corporate and securities law rights, and the "stockholders' garb" Debtors have woven from them is simply not there.

## RSUs WERE A CONTRACT PROMISE, NOT AN EQUITY AWARD

In their two Replies in support of nine Omnibus Motions, Debtors have asked this Court to ignore the critical facts of the RSU agreements. In their eagerness to characterize every one of a variety of deferred compensation plans as "equity based compensation," Debtors fail to address

---

[2] *Newton Nat'l Bank v. Newbegin*, 74 F. 135, 140 (8th Cir. 1896).

[3] Citing *Newton Nat'l* in *In re Enron*, Judge Gonzales was looking at the rights of employees who were holders of securities -- stock options -- and found that these security holders failed to distinguish their claims from those of any other holder of stock options "who is unable to exercise his options because the share price has declined." *In re Enron*, 341 B.R. 141, 158, 160 (S.D.N.Y. Ban'cy 2006). In citing the case in *In re Stirling Homex*, the Second Circuit was looking at the rights of stockholders "whose claims are grounded on fraud or securities law violations committed upon them as stockholders . . . ." *In re Stirling Homex*, 579 F. 2d 206, 210, 213-14 (2d Cir. 1978). Debtors cite to *Enron* at ¶¶ 11 & 15 of their Dec. 15 Omnibus Reply and ¶¶ 16, 17, 20 & 22 of the Jan. 24 Supplemental Reply, and to *Stirling Homex* at ¶ 17 of the Dec. 15 Omnibus Reply and ¶ 22 of the Jan. 24 Supplemental Reply.

[4] *The Emperor's New Clothes*, reprinted in The Stories of Hans Christian Andersen (J. Frank and D. Crone, eds., 2005). Version of this classic tale are readily available on the internet, one of which is attached as Exhibit A.

the specific contract provisions of these RSU Agreements, including their contingent nature and the ongoing services required before they ripened into a right to be paid. As discussed below, Debtors also fail to address how "equity" can be characterized as "awarded" when there is no taxation on the "award" (or deduction by Debtors upon granting the award) until much later, after the performance or lapse of the contract obligations. These are distinctions the Court cautioned Debtors' to address in the hearing on December 23, 2011. Rather than respond to this instruction, Debtors argue back that the distinctions are not relevant and the Court should ignore them. Debtors' Jan. 24 Supplemental Reply at ¶ 3.

Pre-petition Debtor Lehman Brothers Holdings, Inc. ("LBH") had the option to issue equity awards, and did issue equity awards, the most common of which were stock options. Several years of Stock Option Plans pursuant to which stock options were issued are attached to Debtors' Dec. 15 Omnibus Reply. (Years 2001-03, Doc. 23470, at pp. 22-41.) In each case, the equity award was a *present* issue of a security:

> [Y]ou are hereby granted . . . a non-qualified stock option to
> purchase the number of common shares . . . set forth on the award
> statement . . . with an exercise price of . . . $63.40 per share . . . .

Debtors' Dec. 15 Omnibus Reply, Doc. 23470 at p. 23 (2001 Stock Option Plan ¶ 1); *see* second 2001 Stock Option Plan ¶ 1 (*id.* at 27), 2002 Stock Option Plan ¶ 1 (*id.* at p. 31), 2003 Stock Option Plan ¶ 1 (*id.* at p. 35), and second 2003 Stock Option Plan ¶ 1 (*id.* at p. 39) (all with the same language).

Unlike the stock options, however, the RSU Agreements did not provide for the present issue of a security, but only a contract promise to issue a security in the future -- "the *conditional right* to receive one share of Lehman Brothers common stock five years after the RSU is granted, *assuming continued employment* with the firm." *See, e.g.*, Debtors' Dec. 15 Omnibus Reply,

4

Doc. 23470, 2003 Award Program at p. 44 (emphasis added). The RSUs did not represent a current entitlement, but rather shares "which you will be entitled to receive at that time [five years hence] *provided you meet certain terms and conditions.*" *Id.* at 45 (emphasis added). In contrast, immediately after this proviso making the contract obligation conditional, LBH described the stock options that would be issued under the same program: The stock option language *does not contain the same proviso* making the stock option grant conditional. *Id.* (Doc. 23470, at p. 45). This document is unambiguous in describing the RSU Agreement as having ongoing contract obligations and conditions that stock options did not have. The stock options constituted a present equity award; the RSU Agreement was a conditional contract undertaking to provide compensation in the future.

## DEBTORS RECOGNIZED THAT THE RSUS PRESENTED AN EXECUTORY CONTRACT CLAIM, NOT A SECURITIES CLAIM

LBH also demonstrated in the RSU Agreements that it viewed the RSUs as a salary holdback to ensure future contract performance. Each year's Plan presented an "Award Schedule" in the form of a chart that provided the "Total Compensation Range," followed by columns that designated the "Amount of Total Compensation ('TC')" for various levels of employees and the portion of their Total Compensation that would be held back. The RSU compensation was described as an "Equity-*based* Award" (emphasis added), measured in dollars or as a percentage of total dollar-measured compensation. *See, e.g.*, Debtors' Dec. 15 Omnibus Reply, Doc. 23470 at p. 63 (RSU Agreement for 2004) and 71 (RSU Agreement for 2005). The compensation promises under the RSU Agreements were subject to rescission in the event of termination of employment. *E.g.*, Debtors' Dec. 15 Omnibus Reply Doc., 23470, at p. 58 (RSU Agreement for 2004 at ¶ 4(d)), p. 66 (RSU Agreement for 2005 at ¶ 4(d)), and p. 74 (RSU Agreement at ¶ 4(d)). In certain circumstances even vested RSUs were subject to rescission.

5

(*id.*, in each Agreement at ¶ 4(d)(ii)), and unvested RSUs were always subject to rescission in certain circumstances (*id.*, in each Agreement at ¶ 4(d)(i) & (iii)).

In light of the contract language in the RSU Agreements described above, it will come as no surprise that it was initially *Debtors* who classified the RSU claims as executory contract claims and not equity claims. Shortly after filing their Petition, Debtors sent to Claimant McCully a partially completed Proof of Claim, containing a code for the claim -- "LBH (MERGE2.DBF.SCHED_NO) SCHEDULE #: 555231120" -- with the Notice of Scheduled Claim on the Proof of Claim form already *completed by Debtors* to state:

> Schedule G - Executory Contract or Unexpired Lease
>
> Description:
> Restricted Stock Unit Agreement.

McCully Aff. Exhibit 1. As stated by McCully, the typewritten portions of this Exhibit are the portions completed by Debtors; the handwritten portions were completed by Claimant McCully. McCully Aff. ¶ 8.

After having instructed Claimant McCully to file his RSU Claim as an executory contract, on April 18, 2011 Debtors filed their 130th Omnibus Objection to reclassify the RSU claims as equity interest claims. McCully filed a timely response opposing the reclassification on May 17, 2011.[5]

As stated by McCully in his supporting affidavit, the economic substance of RSU Agreements is that a portion of his declared bonus was not paid, but rather was reserved for

---

[5] As stated in the Order of this Court entered November 18, 2011 (Docket 22347), "Debtors inadvertently included the McCully Claim on the Exhibit to the Order granting the 130th Omnibus Objection to Claims," even though an opposition had been filed and served. Pursuant to the November 18, 2011 Order, "the McCully Claim is reinstated on the Debtors' Official Claims Register as a claim, . . . against Lehman Brothers Holdings, Inc., as opposed to an equity interest . . . ." Debtors have advised McCully's counsel that the McCully Claim is not technically a subject of the 130th Omnibus Motion, because it was restored after the 130th Omnibus Motion was made. However, Debtors have referred to the McCully Claim in their Jan. 24 Supplemental Reply to Responses (Exhibit A at p. 18), and accordingly this Response of Claimant McCully is being served and filed.

6

future payment five years hence, assuming continued employment and performance with other contractual obligations. As claimant McCully recognized, the grant of a stock option to him involved the issuance of security, which was exercisable at a fixed price into another security, LBH shares, in accordance with its terms. McCully Affidavit ¶¶ 13-15. Claimant McCully received no such rights from the RSU Agreements, which only promised compensation after continued performance of contract obligations for five years. *Id.* at ¶¶ 12-13.

The RSU Agreements, Debtors' Petition, and Debtors' handling of the Proof of Claim forms in July 2009, all point to treatment of the RSU Agreements as executory contracts. Debtors' efforts in the 130th Omnibus Motion to subordinate to the level of equity the compensation claims of McCully and others similarly situated, filed almost two years later in April 2011, is a novel and belated effort to retract Debtors original (and proper) classification.

Debtors' charge that it is McCully and others similarly situated who are trying to change the classification of their claims, to "bootstrap" themselves to the creditor level, is simply intellectual dishonesty.

### THE RSU AGREEMENTS PROVIDED NO "EQUITY CUSHION" WARRANTING SUBORDINATION TO UNSECURED CREIDTORS

Neither in their 130th Omnibus Motion, nor in their two Replies to the responses in opposition to the 130th Omnibus Motion and eight other Omnibus Motions, do Debtors attempt to describe the mechanics by which the RSU Agreements were performed or how, ultimately, the executory contract rights to compensation were to ripen into rights to LBH stock. As outlined in the McCully Affidavit, when he was provided with notice of his annual bonus, the Notice would set forth the portion of the bonus that was to be reserved for RSUs. At the time the bonus were issued there were no vested rights provided by the RSU Agreements, and no vested rights to receive LBH shares. McCully was given the cash portion, recognized as ordinary income, and

7

Debtors would take a compensation deduction for the amount of the cash bonus. McCully Aff. ¶ 11. McCully did not pay taxes on the portion of the bonus reserved by the RSU Agreement, and Debtors have not claimed that they took a compensation deduction for this portion of the bonus. There is nothing in this description of how the RSU Agreements operated to suggest that any creditor could have found them to provide any equity cushion, and Debtors have failed to place anything in the record to suggest otherwise. *See In re Stirling Homex,* 579 F.2d 206, 213-14 (2d Cir. 1978) (discussing creditors' reliance on the protection provided by the "equity cushion"); *Newton Nat'l Bank v. Newbegin,* 74 F. 135, 140 (8th Cir. 1896) (creditors who "elected to take obligations of the reorganized bank" with knowledge of an investor's claim were not entitled to claim status superior to that of the investor).

Further, the provisions of the Internal Revenue Code that would apply to the issuance of equity provide no support for Debtors' argument that equity was issued under the RSU Agreements. Section 83(a) of the Internal Revenue Code specifies the circumstances under which property transferred in connection with the performance of services is to be included in gross income. Under I.R.C. § 83(a), the fair market value of "property transferred" in connection with "the performance of services" is included in the gross income of the person who performed the services. This provision applies equally to RSUs and stock options. The reason stock options are not taxed as "property transferred" is that there is a special provision, I.R.C. ¶ 83(e)(3), stating that § 83 does not apply to "the transfer of an option without a readily ascertainable fair market value . . . ." RSUs did not benefit from any comparable provision, yet they also were not taxed at the time of the entry into the executory contract, and no tax was imposed when the RSUs "vested" some years later. No tax was assessed on the bonus until shares were issued pursuant to the executory contract, and from the amount reserved for the

8

bonus, cash was withheld to pay the federal withholding tax before the shares were issued for the balance of the loans. McCully Aff. ¶ 11; Debtors Dec. 15 Omnibus Reply, Doc. 23470, p. 59 at ¶ 15 (LBH was to "withhold applicable taxes from all amounts payable to you"). In addition, LBH received no corresponding deduction before the bonus was converted to issued shares. The reason is not, as in the case of stock options, because of a provision similar to I.R.C. § 83(e)(3), but because there was no property transferred to McCully on which a tax could be imposed or for which LBH could claim a deduction.[6]

The RSU Agreements simply provided a contract right to receive the bonus shares at whatever the current fair market value was at the time of payment. Claimant McCully's right was to receive shares at the current fair market value, subject to LBH's right to reserve cash from the award to pay the withholding tax on that fair market value. Unlike stock options, the entire value of the shares issued pursuant to the RSU Agreement was taxed at ordinary income rates.[7] Until the time that the executory contract was fully performed, Claimant McCully (and others similarly situated) had no income, no stock, no voting rights, no rights to transfer, no rights that in any way resemble the rights of a holder of a present equity interest, and no property of the type that would be subject to tax under the Internal Revenue Code.

No "equity cushion" would be added to LBH's financial statements, because no equity was issued; nothing existed except a compensation obligation contingent on McCully's ongoing contractual obligations.

---

[6] I.R.C. § 409A, while added to the Code only in 2004 and for amounts deferred after Dec. 31, 2004, also supports the view that no tax could be imposed until the issuance of shares. Distributions were not permitted until a specified date and acceleration of benefits was not permitted. *See* I.R.C. § 409A(a)(1)(A)(i)(I), (a)(2) & (a)(3); Debtors' Dec. 15 Omnibus Reply, Doc. 23470, p. 60 at ¶ 16 (stating intention to comply with I.R.C. § 409A(a)(1)).

[7] Options would involve the payment of an exercise price, and only the gain in excess of the exercise price was subject to tax. The tax could be assessed at ordinary income or capital gain rates, depending on whether the options were Qualified or Nonqualified.

9

\* \* \* \*

Debtors' 130th Omnibus Objection should be denied. Seeing the RSU Agreements for what they are, they promised to pay employees in five years for ongoing services. Unlike stock options, there was no grant of equity until after five years. The Code gives unsecured creditors priority over equity holders; as Debtors initially recognized, employees asserting contract rights to compensation are included in that class.

By: _____
Richard J. Schager, Jr., Esq.
STAMELL & SCHAGER LLP
One Liberty Plaza, 35th Floor
New York, New York 10006-1404
Telephone: (212) 566-4057
Facsimile: (212) 566-4061
schager@ssnyc.com