UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :    08-13555 (JMP)
                                                             :
                                          Debtors.           :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x


**AFFIDAVIT OF CLAIMANT MICHAEL K. MCCULLY IN OPPOSTION TO:**

1. DEBTORS' DECEMBER 15, 2011 OMNIBUS REPLY TO RESPONSES TO DEBTORS' 118$^{th,}$ 130th, 131st, 133rd, 134th, 135th, 176th, and 207th OMNIBUS OBJECTIONS TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

2. DEBTORS' JANUARY 24, 2012 SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO RESPONSES TO DEBTORS' 73rd, 118$^{th,}$ 130th, 131st, 133rd, 134th, 135th, 176th, and 207th OMNIBUS OBJECTIONS TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

Michael K. McCully, being duly sworn, does depose and say:

1. I was employed by Lehman Brothers from September 6, 1988 through March 10, 2008. Lehman Brothers terminated my employment on March 10, 2008, approximately five months before Lehman Brothers filed for bankruptcy.

2. Upon the termination of my employment, Lehman Brothers assured me that my termination was an "involuntary termination without cause" as that phrase is defined in the "RSU Agreements" between Lehman Brothers and employees. *See, e.g.*, Debtors' December 15, 2011 Omnibus Reply to Responses to Debtors' 118$^{th,}$ 130th, 131st, 133rd, 134th, 135th, 176th, and 207th Omnibus Objections to Claims (To Reclassify Proofs of Claim as Equity Interests) (Debtors' "Dec. 15 Omnibus Reply"), 2004 Plan, ¶ 4(d)(iv) at p. 66 and definition of "cause" at p. 68.

3.  Upon my execution of a Separation Agreement and Release dated April 11, 2008, I satisfied the "Release Requirement" set forth in the RSU Agreements.

4.  Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. *See, e.g.,* Debtors' Dec. 15 Omnibus Reply at pp. 65-68 (RSU Agreement for 2004).

5.  After my entry into the RSU Agreements, including after the termination of my employment, I continued to perform all of those contractual obligations.

6.  Attached hereto as Exhibit 1 is the original Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. This initial Claim was assigned Claim No. 32794, and after amendment was assigned Claim No. 65949.

7.  I was provided with this Proof of Claim form by Debtors. In the form provided, Debtors had largely completed the form, including inserting the caption, a bar code, supplying my name and address, and describing the Scheduled Claim as a "Schedule G" claim, for an "Executory Contract or Unexpired Lease." Debtors also provided the "Description" as a claim under a "Restricted Stock Unit Agreement."

8.  On the attached Exhibit 1, all of the typed information was contained in the form when Debtors provided it to me. I added only my phone number, email address, the amount of the claim, $837,036 (based on an "Executive Compensation Summary" provided by Lehman Brothers, which I attached), and my signature and date. All of these documents are attached with Exhibit A, together with Debtors' acknowledgement of receipt of the proof of claim.

9. Through my attorney I amended my claim under the RSU Agreements. The Amended Claim is attached as Exhibit 2. Debtors acknowledged receipt of the Proof of Claim (the final page of Exhibit 2), and assigned the amended claim Claim No. 65949.

10. The practice followed each year by Lehman Brothers was to provide a form stating the bonus to which I was entitled for the year, and describing the portion of the bonus that was to be reserved by Lehman Brothers pursuant to the RSU Agreement for that year.

11. I never paid tax on the portion of any bonus reserved under the RSU Agreements. For prior years, not at issue here, after my interests vested and I was permitted to draw down on them, Lehman Brothers would retain a portion in cash to pay the federal withholding tax, and use the balance to provide me with Lehman Brothers shares. The entire amount of the bonus was treated as ordinary income to me and was taxed at ordinary income rates. My understanding is that Lehman Brothers was entitled to a business expense deduction for the amount of this portion of the bonus, but only at the time that it was actually paid.

12. The economic substance of the RSU Agreements to me was that a portion of the bonus that had been declared for me was held back, and would be paid to me only after passage of five years, during which I was subject to ongoing contractual obligations. At no time did Lehman suggest that I had ever failed to perform any of these contractual obligations, the breach of which could result in rescission of my bonus. However, under the terms of the RSU Agreements, Lehman Brothers was not required to pay me anything from this reserved bonus, and in fact Lehman Brothers did not pay me anything, until five years after we entered into the RSU Agreements.

13. Even after vesting I was not permitted to draw down on the shares until five years after the date of the RSU Agreement. During this entire time my right to draw down on the

shares was contingent on my continued performance of contract obligations. Even after I was terminated without cause, my right to draw down on the shares depended upon my continued observance of certain contract obligations.

14. Stock options issued to me by Lehman Brothers did not work in this way. Upon the grant, I received a security in the form of the stock option. The option provided me with the right to buy LBH shares at a fixed price, the exercise price. While a period of time passed before the option vested, upon vesting I could exercise the option by paying the exercise price, and I would receive LBH shares. No comparable security was issued to me under the RSU Agreement.

15. I did not pay tax on the option when granted, which I understand is due to a special provision of the Internal Revenue Code governing the taxation of options. Upon exercise of the option I was taxed on the difference between the current market price of the LBH shares at the time of exercise and the exercise price.

_____
Michael K. McCully

Sworn to before me this
\_\_ day of February, 2012

_____
Notary Public

RICHARD J. SCHAGER, JR.
NOTARY PUBLIC-STATE OF NEW YORK
No. 02SC4834248
Qualified in Kings County
My Commission Expires March 30, 20\_\_

4