**HEARING DATE AND TIME: February 22, 2012 at 10:00 AM (Eastern Time)**
**RESPONSE DEADLINE: February 15, 2012 at 4:00 PM (Eastern Time)**

Robert F. Elgidely, Esq. (RE-0512)
Carlos Sardi, Esq.
Barry P. Gruher, Esq.
Michael A. Friedman, Esq.

GENOVESE, JOBLOVE & BATTISTA, P.A.
Miami Tower
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
(305) 349-2300 (tel.)
(305) 349-2310 (fax)
Attorneys for Respondent

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555-JMP |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

**JAMIE MURCIA'S RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AUTHORITY TO USE NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTOR'S CONFIRMED JOINT CHAPTER 11 PLAN**

**JAIME MURCIA** ("Murcia" or "Respondent"), by and through undersigned counsel, files this Response in Opposition to Lehman Brothers Holdings Inc.'s ("LBHI," together with its affiliated debtors, the "Debtors") Motion for Authority to Use Non-Cash Assets in Lieu of Available Cash as Reserves for Disputed Claims Pursuant to Section 8.4 of the Debtor's Confirmed Joint Chapter 11 Plan [ECF No. 24726] (the "Motion"), and respectfully states:

**BACKGROUND**

1.      On September 15, 2008 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code").

2.  On July 2, 2009, this Court entered an order establishing certain deadlines for filing proofs of claims [ECF No. 4271] (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for claims related to certain securities, issued by the Debtors and giving rise to Murcia's Claim, was set as November 2, 2009.

3.  On October 12, 2009, pursuant to the applicable bar date as set forth in the Bar Date Order, the Respondent timely filed a proof of claim for an unsecured claim in the principal sum of $1,417,829.53[1] (the "Proof of Claim").

4.  On September 16, 2011, the Debtors filed their Two Hundred Fifteenth Omnibus Objection to Disallow and Expunge Certain Filed Proofs of Claim [ECF No. 20104] (the "Claims Objection"), seeking to disallow and expunge Murcia's Proof of Claim, among others. Murcia filed a Response in Opposition to the Objection [ECF No. 22655] (the "Response"). In the Response, Murcia disputes that there is any basis for disallowing, expunging, or otherwise prejudicing Murcia's claim. A hearing on the Claims Objection and the Response is currently scheduled for March 21, 2012, at 10 a.m.

5.  On January 27, 2012, the Debtors filed the instant Motion. The Motion seeks authority, *inter alia*, to make a distribution to holders of Allowed Claims[2] using Available Cash retained on account, and for the benefit of, Disputed Claims ("Retained Cash").

---

[1] On March 11, 2011, the Debtors filed their One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims) [ECF No. 14950]. The One Hundred Second Omnibus Objection sought to disallow or expunge the Respondent's Proof of Claim, Claim No. 57415, because the amount of the claim was denominated in foreign currency rather than U.S. dollars. The Respondent filed a Response in Opposition [ECF No. 15945], and ultimately the Debtors withdrew the One Hundred Second Omnibus Objection as to certain creditors, including the Respondent, pursuant to Court order. *See* Order Granting Debtors' One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims) [ECF No. 16602]. The Respondent also filed an amended proof of claim, Claim No. 67453, denominating the amount of claim in U.S. currency.

[2] Capitalized terms not defined in this Response have the meaning ascribed to them in the Debtors' Motion.

6. The basis of the Motion is section 8.4 of the Debtor's Confirmed Chapter 11 Plan (the "Plan"). Section 8.4 requires, "consistent with and subject to section 1123(a)(4) of the Bankruptcy Code," that the Debtors hold Retained Cash in an aggregate amount equal to the Pro Rata Share of the Distributions that each holder of a Disputed Claim would be entitled to if such Disputed Claim were allowed. The Motion proposes, pursuant to Section 8.4, to distribute such Retained Cash to holders of Allowed Claims, and proposes to hold certain Non-Cash Assets of the Debtors on account of Disputed Claims in lieu of Retained Cash.

7. Pursuant to the Motion and the Debtors' Disclosure Statement, the Non-Cash Assets that the Debtors propose to hold in lieu of Retained Cash consist of: (i) commercial and residential real estate; (ii) commercial loans; (iii) private equity and principal investments; and (iv) receivables from derivative contracts and intercompany receivables.

## ARGUMENT

8. The relief requested in the Motion would be grossly unfair to holders of Disputed Claims, such as Murcia. Moreover, granting the relief sought in the Motion would violate § 1123(a)(4) of the Bankruptcy Code.

9. The Motion proposes to hold Non-Cash Assets on account of Disputed Claims, rather than Retained Cash. This proposal unfairly shifts the risk that the Debtors' Non-Cash Assets will retain their value onto the holders of Disputed Claims. Such an arrangement would be particularly unfair considering the volatility associated with the value of most of the Debtors' Non-Cash Assets. A review of the Debtors' Disclosure Statement confirms that the Non-Cash Assets that the Debtors propose to substitute for Retained Cash have values that are largely speculative.

3

10. For example, with respect to derivative contracts, the Debtors acknowledge that "recoveries reflected for Derivatives Contracts are estimates based on financial market assumptions, the status of negotiations with counterparties and the Debtors' judgment of the likely resolution of various legal disputes," and that "[a]ctual recoveries could materially vary from the estimates," Disclosure Statement at 34.

11. With respect to real estate, the Debtors acknowledge that they are attempting to "create value" by allowing "Real Estate Assets to evolve from a state of distress." *Id.*

12. With respect to commercial loans, the Debtors acknowledge that as of December 30, 2010, according to the Debtor's own internal grading methodology, ninety-one percent (91%) of the Debtors' commercial loan portfolio consisted of "high yield," presumably high risk, loans. *Id.* at 35.

13. With respect to private equity and principal investments, the Debtors acknowledge that "these investments are not always liquid and the Debtors may ultimately decide to sell their interests in such investments at a discount." *Id.* at 36.

14. In the face of the uncertain value associated with the Debtors' Non-Cash Assets, the Debtors assert that shifting the risk of this uncertainty to the holders of Disputed Claims is appropriate to avoid the necessity of retaining "unusually large cash reserves for disputed claims." Mot. at 11. Yet nowhere do the Debtors demonstrate that the amount of Retained Cash held back to pay Disputed Claims is "unusually large" considering that outstanding Disputed Claims against LBHI total approximately $112 billion.[3] Mot. at 12. In any event, the Debtors' retaining a large cash reserve prejudices no one. By contrast, depletion of the Debtors' cash

---

[3] The Debtor estimates that of the total Disputed Claims, approximately $59 billion will ultimately be allowed against LBHI. Mot. at 12. The Debtors' inability to determine with any precision the amount of Disputed Claims that will ultimately be allowed casts further doubt as to whether the Debtors' Non-Cash Assets will be sufficient to take the place of Retained Cash.

4

reserves poses a significant threat of prejudice to holders of Disputed Claims in light of the volatile value of the proposed replacement Non-Cash Assets. In short, there is little certainty that any money generated from such Non-Cash Assets will be sufficient to pay the Pro Rata Share to holders of Disputed Claims whose claims are ultimately allowed.

15. Additionally, even assuming that the value of the Non-Cash Assets is ultimately sufficient to pay the Pro Rata Share of holders of Disputed Claims, it is impossible to determine with any certainty if the Non-Cash Assets will have such value when the holders of such claims are entitled to receive a distribution due to the speculative and illiquid nature of the Non-Cash Assets. Yet Section 8.4 of the Plan provides that the Debtors "shall" pay previously Disputed Claims that have been allowed "[o]n the date of the *first Distribution* that is at least forty-five (45) days after the date" the Disputed Claim becomes allowed. In other words, while the Plan requires the Debtors to pay Available Cash to the holder of a previously Disputed Claim on the first Distribution after the Disputed Claim is allowed, such a claimant may have to wait *months* or *years* to be fully paid if the Motion is granted. For this additional reason, the relief sought in the Motion is unfair and would result in unequal treatment among claims.

16. In addition to being patently unfair, the relief sought in the Motion would violate § 1123(a)(4) of the Bankruptcy Code. Section 1123(a)(4) states that a plan of reorganization must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest[.]" 11 U.S.C. § 1123(a)(4). Further, Section 8.4 of the Plan provides that any actions taken pursuant to Section 8.4 shall be "consistent with and subject to section 1123(a)(4) of the Bankruptcy Code."

17. Although Murcia does not dispute that § 1123(a)(4) allows for disparate treatment among disputed and allowed claims, § 1123(a)(4) nevertheless requires that "reasonable measures must be taken to ensure that the required same treatment is received if and when [disputed claims are] allowed." *In re Motors Liquidation Co.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011). This requires debtors to "establish reserves with assets sufficient to pay disputed claims in full to allow creditors full pro rata recovery on their claims." *Id.*

18. Contrary to the requirements of § 1123(a)(4) and applicable case law, granting the Debtors' Motion would potentially treat claims differently depending on whether they are Allowed or Disputed Claims: while Allowed Claims are entitled to cash on account of their Pro Rata Share, Disputed Claims (even if later allowed) are only entitled to certain Non-Cash Assets, along with a promise from the Debtors that holders of Disputed Claims are entitled to cash attributable to such Non-Cash Assets, after the Asset either sells or results in the collection of a receivable.

19. For the reasons discussed above, the Debtors cannot demonstrate with any certainty that the arrangement proposed in the Motion will result in reserves sufficient to pay the holders of Disputed Claims their full Pro Rata Share. As such, the Motion would not result in "equal treatment" as required by § 1123(a)(4) and Section 8.4 of the Plan. *Cf. Motors Liquidation Co.*, *supra* at 216 ("Everybody [both holders of allowed and disputed claims] gets a pro rata share of the New GM Securities, if and when claims are allowed. That's equal treatment.").

## RESERVATION OF RIGHTS

20. Murcia reserves any and all rights at law, equity, or arising under the Plan or other appropriate filing, including without limitation the right to seek appropriate discovery in

connection with any evidentiary on the Motion, or to raise or join with new arguments in response to the Motion as they may become available or apparent.

**WHEREFORE,** the Respondent, Jaime Murcia, respectfully requests that the Court deny the Motion with respect to Murcia's Claim, and grant such other and further relief as the Court deems appropriate.

**Dated: February 15th, 2012.**

                                       **GENOVESE JOBLOVE & BATTISTA, P.A.**
Attorneys for Respondent
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile : (305) 349-2310
By: /s/ Robert Elgidely (RE-0512)
Robert Elgidely, Esq.
Carlos Sardi, Esq.
Barry P. Gruher, Esq.
Michael A. Friedman, Esq.