UNITED STATES BANKRUPTCY COURT          Hearing Date: February 22, 2012
SOUTHERN DISTRICT OF NEW YORK           Hearing Time: 10:00 a.m**.**
---------------------------------------------------X
                                   :
In re                                   :
                                   :   Case No. 08-13555 (JMP)
LEHMAN BROTHERS                          :
HOLDINGS INC., et al.,                   :   Chapter 11
                                   :
             Debtors.                 :   (Jointly Administered)
                                   :
---------------------------------------------------X

## OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE
## TO CREDITORS' APPLICATIONS FOR REIMBURSEMENT OF
## PROFESSIONAL FEES AND EXPENSES

**TO THE HONORABLE JAMES M. PECK,**
**UNITED STATES BANKRUPTCY JUDGE**:

        The United States Trustee for Region 2 (the "United States Trustee"), respectfully

submits her objection (the "Objection") to the Omnibus Applications of (I) the Individual

Members of the Creditors' Committee and (II) the Indenture Trustees for Payment of Fees and

Reimbursement of Expenses Pursuant to Section 1129(a)(4), or Alternatively, Sections

503(b)(3)(D) and (b)(4) of the Bankruptcy Code (the "Motion").  In support of her Objection, the

United States Trustee represents and alleges as follows:

**I.**                                        **INTRODUCTION**

        To date, the aggregate fees awarded and expenses reimbursed to professionals in these

cases exceed $800 million.  An additional $100 million in fees and expenses have been

requested, but not yet awarded, thus far.  Over one quarter of this total, or $232 million, is

attributable to the fees and expenses awarded to the five professionals retained by the Creditors'

Committee.  By this Motion, eight individual members of the Creditors' Committee, including

three Indenture Trustees (the "Applicants"), have filed applications seeking the payment of more

than $26 million in fees and expenses for services rendered by their own in-house and outside

non-retained professionals during these Chapter 11 cases (the "Applications").  More

specifically, the Applications request the payment of fees in the aggregate amount of

$25,358,967.55 and the reimbursement of expenses in the aggregate amount of $932,148.66, for

total awards of $26,291,116.21, as set forth below:

| Committee Member | Professional | Fees | Expenses | Total Fees and Expenses |
|---|---|---|---|---|
| **Wilmington Trust Company** (Committee Member and Indentured Trustee) | In-House Staff | $2,569,577.50 | $696,949.14 | $3,266,526.64 |
| | Loeb & Loeb, LLP | $394,029.00 | $8,208.25 | $402,237.25 |
| | Covington & Burling | $7,788,744.00 | $68,759.56 | $7,857,503.56 |
| | Citibank | $96,000.00 | $0 | $96,000.00 |
| **The Bank of NY Mellon** (Committee Member and Indentured Trustee) | In-House Administration Fee | $490,740.00 | $0 | $490,740.00 |
| | Sheppard Mullin | $4,054,024.45 | $35,519.86 | $4,089,544.31 |
| **Mizuho Corporate Bank, Ltd.** | Stroock & Stroock & Lavan | $2,863,196.00 | $17,742.29 | $2,880,938.29 |
| **Metropolitan Life Insurance Co.** | In-House Counsel | $254,402.50 | $0 | $254,402.50 |
| **The Vanguard Group** | Arent Fox LLP | $1,346,234.50 | $21,221.17 | $1,367,455.67 |
| **U.S. Bank N. A.** (Committee Member and Indentured Trustee) | In-House Personnel | $1,051,412.50 | $0 | $1,051,412.50 |
| | Shipman & Goodwin, LLP | $111,232.50 | $1,217.06 | $112,449.56 |
| | Edwards Angell Palmer & Dodge, LLP | $64,796.00 | $2,721.33 | $67,517.33 |
| | Sullivan Worcester, LLP | $1,752,369.00 | $12,928.39 | $1,765,297.39 |
| **Elliott Management Corp** | Greenberg Traurig, LLP | $1,308,655.60 | $53,841.86 | $1,362,497.46 |
| | Kleinberg, Kaplan, Wolff & Cohen, P.C. | $1,142,094.00 | $11,425.69 | $1,153,519.69 |
| **Shinsei Bank, Limited** | Vinson & Elkins LLP | $71,460.00 | $1,614.06 | $73,074.06 |
| **Grand Total** | | $25,358,967.55 | $932,148.66 | $26,291,116.21 |

The United States Trustee is aware of the level of consensus reached by all constituencies in these historic cases in order to resolve the contested issues in advance of Plan confirmation. The Plan provision relating to the standard to be applied for fee application requests by committee members and indenture trustees was, as set forth in the Confirmation Order, to be determined by the Court after applications were filed and parties in interest have been heard.

In an attempt to circumvent the strict standards imposed under Section 503(b) of the Bankruptcy Code, and ignoring recently modified subsection 503(b)(3)(F) which expressly provides that committee members are not entitled to the fees and expenses of their professionals solely for serving on an official creditors' committee, the Applicants argue that the mere confirmation of the Plan entitles them to over $26 million in fees and expenses pursuant to Bankruptcy Code section 1129(a)(4).   Alternatively, the Committee members urge that they have met the standards of "substantial contribution" under Bankruptcy Code section 503(b).

The United States Trustee objects to the Applications on the following grounds:

- Section 503(b) is the appropriate statutory standard for the Court's consideration of the Applications;

- The Applicants' reliance on <u>Adelphia</u> is misplaced;

- The Applicants have not met their burden of proof under Section 503(b) to show that they made a "substantial contribution" to the Debtors' estates; and

- To the extent the Court determines that the reasonableness standard applies, based upon the United States Trustee's review of the Applicants' time records and expense details, the Applications should be denied, in part.[1]

---

[1] The United States Trustee has conducted a thorough review of each Application, consistent with her statutory duties under 28 U.S.C. §586.

3

II.                                  **FACTS**

1.        On September 15, 2008 (the "Petition Date"), and periodically thereafter, the

Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.        On September 17, 2008, the United States Trustee appointed an Official

Committee of Unsecured Creditors (the "Committee").  ECF Doc. No. 62.  The constitution of

the Committee has been amended subsequently from time to time.  See ECF Doc. Nos. 592,

6217, 7034.

3.        During the course of these cases, the Committee retained three law firms and two

financial experts.  By interim orders entered November 5, 2008, the Committee retained (i)

Milbank Tweed Hadley & McCloy LLP ("Milbank Tweed") as its counsel, (ii) Quinn Emanuel

Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") as its special counsel, (iii) Houlihan Lokey

Howard & Zukin Capital, Inc. ("Houlihan Lokey") as its investment banker; and (iv) FTI

Consulting, Inc. ("FTI") as its financial advisor.  ECF Doc. Nos. 1403, 1404, 1407 and 1405.

Final orders approving the retentions of Milbank Tweed, Quinn Emanuel and FTI were entered

by the Court on November 21, 2008.  ECF Doc. Nos. 1652, 1654 and 1655.  The final order

approving the retention of Houlihan Lokey was entered by the Court on December 17, 2008.

ECF Doc. No. 2279.  Richard Sheldon was an ordinary course professional, whose retention as

"Queens Counsel" was ordered on August 11, 2009.  ECF Doc. No. 4763.

4.        Through May 2011, the aggregate fees awarded to the retained professionals were

approximately $800 million.  The fees allowed to the professionals of the Creditors' Committee

aggregate not less than $200 million or 25% of the total fees incurred in these cases from the

Petition Date through May 2011.[2]

5.      On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11

Plan of Reorganization (the "Plan").  ECF Doc. No. 19627.

6.      On November 4, 2011, the United States Trustee filed an Objection to the Plan,

on the grounds that the Plan, among other things, provided for the post-confirmation payment -

without review by the Court - of the reasonable fees and expenses (including attorneys' fees) of

(i) the indenture trustees for the Senior Notes and the Subordinated Notes and (ii) the individual

members of the Creditors' Committee (the "UST Plan Objection").  ECF Doc. No. 21640.  In her

Plan Objection, the United States Trustee argued that the proper standard of review is under

Bankruptcy Code section 503(b).  Id.

7.      After much negotiation among the United States Trustee, the Committee and the

Debtors, the parties agreed that Committee members who sought reimbursement for fees and

expenses would file applications and the Court would determine the appropriate standard of

review.  All parties in interest reserved their rights to object on all grounds, including the right to

object that the fee and expense requests of the Committee members are not authorized at all.

8.      On November 29, 2011, in response to all of the objections filed to the Plan, and

the resolutions reached among all of the parties, the Debtors' filed the amended Plan.  ECF Doc.

No.  22737.

---

[2] For the period June through December 2011, the retained professionals have requested $95 million in fees and expenses.  Approximately $32 million is attributable to the professionals retained by the Creditors' Committee.

9.      Of particular relevance is the amended Plan provision which addressed the United

States Trustee's objection.  The provision provides:

> [s]ubject to entry of the Confirmation Order, the reasonable fees and
> expenses (including attorneys fees) of (a) the indenture trustee for the
> Senior Notes and the Subordinated Notes and (b) the individual members
> of the Creditors' Committee, in each case, incurred in their capacities as
> indenture trustee or members of the Creditors' Committee, respectively,
> shall, (i) to the extent incurred and unpaid by a Debtor prior to the
> Effective Date, be Allowed as Administrative Expense Claims and paid by
> the Debtors in accordance with the Debtor Allocation Agreement upon
> application to and subject to approval of the Bankruptcy Court, and (ii) to
> the extent incurred after the Effective Date, be Allowed as Administrative
> Expense Claims and paid by the Debtors on a monthly basis upon the
> submission of fee statements without further order of the Bankruptcy
> Court.

Plan at §6.7

10.      On December 6, 2011, the Court entered an order confirming the Plan.  ECF Doc.

No. 23023.  The Order provides, in relevant part:

> Fees and Expenses of Indenture Trustees and Creditors' Committee
> Members. The reasonable fees and expenses, including attorneys' fees, of
> (i) the indenture trustees for the Senior Notes and the Subordinated Notes
> issued by LBHI and the (ii) individual members of the Creditors'
> Committee shall be paid in accordance with Section 6.7 of the Plan upon
> application to, and subject to approval of, the Bankruptcy Court, after
> reasonable notice to and with opportunity to object for the United States
> Trustee and all parties in interest; *provided,* that nothing in the Plan or this
> Confirmation Order shall affect any party in interest's right to object to or
> defend any such application. All objections to any such application are
> expressly reserved, including, without limitation, any objections regarding
> the appropriate legal standard for such applications, and any objections
> that payment of such fees is unauthorized under the Bankruptcy Code and
> Bankruptcy Rules.

Confirmation Order at ¶ 74.

III.                                LEGAL STANDARDS

A.      **Section 503(b)**

By enacting Section 503(b) of the Bankruptcy Code, Congress specifically provided a

procedure for the review the approval of fees and expenses incurred by creditors, indenture

trustees, and certain non-retained professionals under certain circumstances. <u>See</u> 4 <u>Collier on

Bankruptcy</u> at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative

expenses, except ordinary course expenses paid pursuant to sections 363 and 364 of the Code,

are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be

actually allowed by court order.").

Sections 503(b)(3)(D), (F) and (4) provide, in part:

> (b) After notice and a hearing, there shall be allowed administrative expenses,
> other than claims allowed under section 502(f) of this title, including –
>     . . .
>
> (3) the actual, necessary expenses, other than compensation and
> reimbursement specified in paragraph (4) of this subsection, incurred by –
>     . . .
>
> (D) a creditor, an indenture trustee, an equity security holder or a
> committee representing creditors or equity security holders other than a
> committee appointed under section 1102 of this title, in making a
> substantial contribution in a case under chapter 9 or 11 of this title;
>     . . .
>
> (F) a member of a committee appointed under section 1102 of
> this title, if such expenses are incurred in the performance of
> the duties of such committee;
>     . . .
>
> (4) reasonable compensation for professional services rendered by an
> attorney or an accountant of an entity whose expense is allowable under
> subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection,
> based on the time, the nature, the extent and the value of such services,

7

and the cost of comparable services other than in a case under this title,
and reimbursement for actual, necessary expenses incurred by such
attorney or accountant . . . .

11 U.S.C. §§ 503(b)(3)(D), (F) and (4).

Compensation based upon a "substantial contribution" is designed to meet policy objectives of encouraging meaningful participation in the reorganization process while keeping fees and administrative expenses at a minimum to preserve as much of the estate as possible for creditors. In re U.S. Lines, Inc., 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989). As a result, Section 503(b) is narrowly construed. Id.; In re Villa Luisa, L.L.C., 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) (citing U.S. Lines) ("Claims for substantial contribution are . . . narrowly construed and are subject to strict scrutiny"). Compensation is limited to those extraordinary actions that lead to an "actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." In re Randall's Island Family Golf Ctrs., Inc., 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003) (quoting In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 569 (Bankr. D. Utah 1985)); accord, In re Best Prods. Co., 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); In re Alert Holdings, Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). Section 503(b) does not change the general rule that an attorney must look to his client for payment of his fees. In re Granite Partners, L.P., 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997).

An attorney or accountant employed by an indenture trustee may also seek "reasonable compensation for professional services rendered" if the indenture trustee has an allowable expense under section 503(b)(3)(D), that is, if there has been a showing that the indenture trustee substantially contributed to the case. 11 U.S.C. §503(b)(4); see also Granite Partners, 213 B.R. at 445; In re General Homes Corp., 143 B.R. 99 (Bankr. S.D. Tex. 1992)(holding that in order to

8

be entitled to any payment from the bankruptcy estate, an indenture trustee must make a prima facie showing that it has made a substantial contribution); In re Revere Copper and Brass, Inc., 60 B.R. 892 (Bankr. S.D.N.Y. 1986) (finding that services rendered by the indenture trustee and its attorneys were not compensable by the estates under sections 503(b)(3), (4) or (5) because they did not make a substantial contribution to the case).

A committee member is entitled to an administrative expense claim for expenses incurred in the performance of committee duties, such as expenses for travel, lodging and meal expenses incurred while attending committee meetings or court hearings, but is not entitled to an administrative expense claim for the committee member's professional fees.  See In re Summit Metals, Inc., 379 B.R. 40, 68 (Bankr. D. Del. 2007), aff'd, 406 Fed. Appx. (3d Cir. 2011); In re Fibrex, 270 B.R. 714, 718 (Bankr. S.D. Ind. 2001); In re FirstPlus Fin., Inc., 254 B.R. 888, 895 (Bankr. N.D. Tex. 2000); see also, 4 Collier on Bankruptcy ¶ 503.11[6].  Section 503(b)(4), however, expressly excludes from its terms the compensation of professionals for an entity whose expenses are reimbursable under Section 503(b)(3)(F).

Whether a creditor has made a substantial contribution in a reorganization case is a question of fact.  In re Hooker Invs., Inc., 188 B.R. 117, 120 (S.D.N.Y. 1995).  The burden of proof is on the applicant to show by a preponderance of the evidence that the services it rendered provided a substantial benefit to the estate.  Best Prods., 173 B.R. at 865; see also Villa Luisa, 354 B.R. at 348 (the burden of proof is on the applicant and it is exceedingly difficult because a litigant is presumed to act in its own interest).  To meet this high threshold, the movant must establish that "'[its] services have some causal relationship to the contribution.'  Mere conclusory statements regarding the causation or provision of a substantial contribution are

9

insufficient to establish that a substantial contribution has been made." <u>U.S. Lines</u>, 103 B.R. at

430.

In determining whether a creditor has made a substantial contribution, courts generally

consider the following factors:

> (1) whether the services benefitted the creditor or all creditors;
>
> (2) whether the services provided a direct, significant and demonstrable benefit to the estate; and
>
> (3) whether the services rendered were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys.

<u>Best Prods.</u>, 173 B.R. at 865.

Active participation alone is insufficient to give rise to a substantial contribution claim.

<u>Granite Partners</u>, 213 B.R. at 446.  Active participation includes involvement in negotiation,

drafting and confirming a plan of reorganization.  <u>In re Baldwin-United Corp.</u>, 79 B.R.321, 340-

41 (Bankr. S. D. Ohio 1987); <u>In re Sentinel Mgmt.</u>, 404 B.R. 488, 496 (Bankr. N.D. Ill. 2009)

(noting that negotiation, even when hard fought by parties involved, of a provision in Chapter 11

plan is an expected and routine activity, that does not give rise to a substantial contribution to the

estate).   Requests for compensation for insubstantial or duplicative services or services that

deplete rather than increase the size of estate assets should be denied.  <u>U.S. Lines</u>, 103 B.R. at

429-430.  An applicant cannot recover fees related to case administration, monitoring and

education, including attending hearings, reviewing documents and consulting with clients

because these services are performed for the client, not the estate.  <u>Granite Partners</u>, 213 B.R. at

453-454.

10

Finally, settlement negotiations require the participation of many parties-in-interest and courts have found that participation in settlement negotiations do not necessarily give rise to substantial contribution.  See Matter of Columbia Gas Syst., Inc., 224 B.R. 540, 549 (Bankr. D. Del. 1998) (creditor's Section 503(b) claims were rejected where the evidence showed that the participation of many parties was needed to effectuate a settlement); In re Alumni Hotel Corp., 203 B.R. 624, 632 (Bankr. E. D. Mich. 1996) (successful reorganizations require consensual activity and if one applicant's fees are approved, others might argue they also made a substantial contribution).  Encouraging compromise, participating in settlement negotiations and proposing settlement terms are the professional obligation of a creditor's counsel.  Id. at 630.  This is because creditors have strong economic self-interest in settlements that may or may not coincide with the interests of creditors as a whole.  Columbia Gas, 224 B.R. at 549.

**B.    Section 1129(a)(4)**

Section 1129(a)(4) is a broad statute which provides that the Court exercise substantive control over fees and costs related to the Chapter 11 case:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. §1129(a)(4).  This section of the Bankruptcy Code is designed to "insure compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan."  See In re TCI 2 Holdings, LLC, 428 B.R. 117, 145-46 (Bankr. D.N.J. 2010) (quotation omitted) ("While a strong argument

11

might be made that payments that are not made to fiduciaries and that do not deplete the

bankruptcy estate need not be subject to court approval, this is simply not the decision that

Congress has chosen to make.").

## IV.                                            OBJECTION

### A.      Section 503(b) is the Appropriate Statutory Standard For the Court's Consideration of the Applications

Section 503(b) provides a specific procedure for the approval of fees and expenses

incurred by a committee member.  Notwithstanding this specific statutory provision that governs

the Applicants' claims, the Applicants urge the Court to bypass Section 503(b) in the first

instance and to consider their claims solely under the more general, non-specific Section

1129(a)(4) of the Bankruptcy Code.  As discussed below, the reasoning underlying the Motion is

clear; that is, the Applicants cannot recover the majority of the fees and expenses they seek under

Section 503(b) because either (i) the statute does not allow them (legal fees for committee

members) or (ii) they have not met their burden of proof to show that they have made a

substantial contribution in these cases.  Thus, the only possible authority for the Applicants' fees

is the more general Section 1129(a)(4) of the Bankruptcy Code, which encompasses Sections

1123(b)(3) and (b)(6) of the Bankruptcy Code.

The United States Supreme Court has held that "in all matters of statutory construction,

the court must begin with 'the language itself [and] the specific context in which that language is

used.'"  McNeill v. United States, 131 S.Ct. 2218 (2011) (quoting Robinson v. Shell Oil Co., 519

U.S. 337, 341 (1997)); see also Lamie v. United States, 540 U.S. 526, 534 (2004) ("[W]hen the

statute's language is plain, the sole function of the courts – at least where the disposition required

by the text is not absurd – is to enforce it according to its terms.").  The Supreme Court also has

found that a specific statutory provision usually governs a general one.  See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992); see also Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991) (specific statutory provision normally controls one of more general application); Bloate v. United States, 130 S.Ct. 1345, 1353-1354 (2010) (same)); Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.") (quoting Morton v. Mancari, 417 U.S. 535, 550-51 (1974)).  The Second Circuit adheres to this approach.  See Greene v. United States, 79 F.3d 1348, 1355 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

Further, the Supreme Court has articulated that a statutory provision should not be construed so as to render any other provision of the statute superfluous.  See Turner v. Rogers, 131 S. Ct. 2507, 2522 (2011) ("The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also *sub silentio* provide that right far more broadly in another, more general, provision.").  When these traditional principles of statutory construction are applied to the issues before this Court, the resulting conclusion is that Section 503(b) of the Bankruptcy Code is the appropriate statutory provision under which this Court should consider the Applications.

Chapter 5 of the Bankruptcy Code deals extensively with creditors and their claims, debtor's rights and obligations, and the handling of the estate.  11 U.S.C. §§ 501 – 562.  Sections 502, 503 and 507 of the Bankruptcy Code address the allowance of administrative claims and the

priority that these claims enjoy with respect to the distribution of assets of the estate. 11 U.S.C. §§ 502, 503 and 507.  A plain reading of these statutory provisions reveals that Chapter 5 of the Bankruptcy Code very specifically addresses the allowance (and disallowance) of the fees and expenses that the Applicants assert against the Reorganized Debtors.  Indeed, Section 503(b) of the Bankruptcy Code provides for the allowance of: (i) actual and necessary expenses incurred by a creditor or an indenture trustee in making a substantial contribution in the case (11 U.S.C. § 503(b)(3)(D)), (ii) actual and necessary expenses incurred by a member of the creditors' committee in the performance of his committee duties (11 U.S.C. § 503(b)(3)(F)), (iii) reasonable compensation for attorneys and accountants of an entity whose actual and necessary expenses are allowed under Section 503(b)(3)(D) of the Bankruptcy Code (that is, where the court has found that the entity has made a substantial contribution to the case) and (iv) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in the case (11 U.S.C. § 503(b)(5)).

There is no dispute that Section 1129(a)(4) of the Bankruptcy Code requires the bankruptcy court to exercise substantive control over fees and costs related to confirmation and the chapter 11 case.  See 7 Collier on Bankruptcy ¶ 1129.04.  As Collier explains, however, "most of [the costs and expenses contemplated by Section 1129(a)(4)] will be the subject of other bankruptcy sections."  Id.  For example, all professionals retained by the estate must have their retentions and fees approved by the court.  See 11 U.S.C. §§ 327, 328, 329, 330 and 331.  Similarly, the fees and expenses of the individual members of the Creditors' Committee and the indenture trustees must meet the requirements of Section 503(b).  By contrast, an investment banker for a plan proponent or a financial institution's fees for funding a plan do not.  See Collier

14

at ¶ 1129.02[4]; see also In re National Paper & Type Co., 120 B.R. 624 (D.P.R.) (fees to be incurred in connection with financing facility allowed under Section 1124(a)(4)).

The clear guidance from the Supreme Court on statutory construction, however, requires that the Court consider the fees and expenses sought in the Motion under Section 503(b), which specifically addresses these claims, and not pursuant to Section 1129(a)(4). The Applicants cite no reported decision whereby a court awarded the fees and expenses of committee members under Section 1129(a)(4). Furthermore, the Applicants cannot argue that they have not received adequate professional assistance in these cases. In fact, the Applicants have had the benefit of more counsel and financial advice than most parties in chapter 11 cases. Here, the members have retained three law firms, namely Milbank Tweed, Quinn Emanuel and Richard Sheldon, and received financial advice from two retained financial advisors, Houlihan Lokey and FTI. Although the aggregate fees sought by the Applicants ($26 million) appear to be relatively small when compared to the aggregate fees awarded to all of the retained professionals in these cases through May 2011 (approximately $800 million), the fees allowed to the Creditors' Committee alone, and thereby to the members which comprise it, aggregate not less than $200 million or 25% of the total fees incurred in these cases from the Petition Date through May 2011.

If the Court were to accept the Applicants' theory for compensation under Section 1129(a)(4), then Section 503(b) would, in essence, be rendered superfluous. Turner, 131 S. Ct. at 2522. This cannot be the result Congress intended. Accordingly, the Court should consider the Motion under Section 503(b), which is the applicable statute under the traditional canons of statutory construction.

15

**B.     The Applicants' Reliance on <u>Adelphia</u> is Misplaced**

If the Court applies the traditional principles of statutory construction to the facts of these

cases, then it need not look to any provision of the Bankruptcy Code other than Section 503(b) to

determine that the $26 million in fees sought by the Applicants should be denied.  If, however,

the Court considers the Applicants' requests for fees under the more general Section 1129(a)(4)

of the Bankruptcy Code, the result should be the same; that is, a denial of the requested fees.

The gravamen of the Applicants' fee request is not complex.  Simply stated, the

Applicants imprecisely argue that the Court should award them their requested fees and expenses

under Section 1129(a)(4) of the Bankruptcy Code and not "subject" them to the rigors of Section

503(b), because there exists one reported decision, namely, <u>In re Adelphia Commc'ns Corp.</u>, 441

B.R. 6 (Bankr. S.D.N.Y. 2010), wherein the bankruptcy court awarded fees and expenses to <u>ad</u>

<u>hoc</u> committee members and other unsecured creditors under Section 1129(a)(4).[3]  The facts and

circumstances of the cases at bar, however, significantly differ from those presented to the court

in <u>Adelphia</u> and, therefore, do not warrant the same result.  In fact, the <u>Adelphia</u> court expressly

acknowledged that "the needs and concerns to be addressed by a court when reviewing payments

by parties as diverse as those named in Section 1129(a)(4) are likely to vary materially from case

to case."  <u>Id.</u> at 13.

The facts underlying the Motion before the Court are not the same facts that were

presented to the court in <u>Adelphia</u> relating to the fee requests under Section 1129(a)(4).  Most

notably, the fee requests considered in <u>Adelphia</u> were lodged by members of 14 <u>ad hoc</u>

---

[3] There does not appear to be a reported decision where a court awarded fees to individual members of a creditors'
committee under Section 1129(a)(4) or otherwise adopted the reasoning of the <u>Adelphia</u> court in such
circumstances.  In fact, as discussed <u>infra</u> at p. 19, the <u>Adelphia</u> court correctly observed that Section 1129(a)(4)
does not provide an affirmative grant of authority for the payment of any fees.  <u>See</u> <u>Adelphia</u>, 441 B.R. at 13.

16

committees of noteholders and individual unsecured creditors, none of whom were members of

an official committee. Adelphia, 441 B.R. at 8. Here, each of the Applicants served as members

of the Creditors' Committee. Thus, whereas the Bankruptcy Code very specifically addresses

expense requests of the Applicants, the same specificity for allowance of fees for members of ad

hoc committees and individual creditors arguably may not be as clear.[4]

In Adelphia, the aggregate amount of fees sought by the ad hoc committees of note

holders and the individual creditors was $88 million. Id. Although this figure is large by any

measure, it pales in comparison to the more than $225 million ($200 million to retained

Committee professionals and $26 million for members' individual advisors) that the Applicants,

members of the Creditors' Committee, have requested be paid by the estate for their legal and

financial counsel.

Similarly, the facts underlying the plan provisions at issue in both of these cases and the

facts leading to their inclusion in the plans are very different. In Adelphia, the debtors initially

proceeded on a dual-track process to determine whether to emerge on a stand-alone plan or

through a sale. Id. at 10. Ultimately, the Adelphia debtors proposed to effect a sale through a

plan. Id. Intense intercreditor feuding ensued to the point where the entire deal was in jeopardy.

Id. In response, the Adelphia debtors proposed that the sale be restructured as a 363 sale, getting

the proceeds into the estate with the creditors left to fight for their share of the proceeds. Id.

This, however, did not stop or even slow down the intercreditor fighting. Id.

With no consensual resolution in sight, the Court granted a Motion in Aid of

Confirmation to establish a framework to resolve the intercreditor disputes. Id. After lengthy

---

[4] Indeed, nothing herein should be construed as a waiver by the United States Trustee of her right to object in this, or any other case, to any fee application under Section 503(b) of the Bankruptcy Code.

17

negotiations the applicants reached a global settlement, part of which included the parties'

agreement that the estate would bear the applicants' fees.  Id.  Toward that end, the Adelphia

plan contained the following Section 6.2(d) which provided that the applicants:

> shall receive reimbursements of their reasonable fees and expenses
> incurred in connection with the Chapter 11 Cases as
> Administrative Claims . . . [and] shall comply with any procedures
> required by the Bankruptcy Court in connection with seeking
> reimbursement.

Id. at §6.2.

The Adelphia plan further provided that:

> [u]nless objected to . . . on the grounds that such fees are
> unreasonable within thirty (3) days of the receipt of detailed
> invoices from each party seeking reimbursement pursuant to
> section 6.2(d)(1), and except to the extent ordered by the
> Bankruptcy Court, claims for reimbursement of fees and expenses
> pursuant to section 6.2(d)(i) shall be deemed Allowed Claims.

Id.

The Adelphia court eventually decided, in a matter of first impression, that "reasonable

fees [could] be paid where, as here, the provision for fees is an element of a chapter 11

reorganization plan."  Id. at 9.  The Court based its ruling on Sections 1123(b)(3) and (6) and

1129(a)(4) of the Bankruptcy Code.

With respect to Section 1129(a)(4), the Adelphia court found only that this section

contemplated that debtors would be making payments "for costs and expenses in or in

connection with the case," or "in connection with the plan and incident to the case" for

"something."  Id. at 13.  Notably, the Adelphia determined that Section 1129(a)(4), in and of

itself, "does not provide for an affirmative grant of authority" and "does not give permission to

do anything."  Id.  The Adelphia court recognized that "the needs and concerns to be addressed

18

by a court when reviewing payments by parties as diverse as those named in 1129(a)(4) are likely to vary materially from case to case." Id.

In Adelphia, the court looked further to Sections 1123(b)(3) and (6) to determine whether the fees requested in that case could be allowed as part of a plan, and determined that the fees provided under Section 6.2(d) were "appropriate" and "not inconsistent with the applicable provisions of [Chapter 11]." Id. at 15-16. The Adelphia court undertook an extensive analysis as to the meaning of the term "appropriate," and ultimately concluded that the case law was "thin" and that the court had to be wary of declaring a plan provision not "appropriate" in the absence of a violation of a statute, case law, a provision plainly contrary to public policy or, perhaps, unusual circumstances or other good reason, which the court did not find in that case. Id. at 20. In addition, the Adelphia court did not find the plan provision inconsistent with title 11 because it found that Section 503(b), nonconsensual in nature, was not the only provision that could provide for fees for committees of ad hoc noteholders or individual creditors. Id. at 12-13.

The facts underlying the fees requested by the instant Motion reflect the diversity of needs and concerns that the Adelphia court recognized that any court, including this Court, would have to address when considering a fee request under Section 1129(a)(4), as well as the fact that the requests and concerns will vary materially from case to case.

In Adelphia, the court found that the plan provision was consensual and the result of a global settlement of the disputes of the applicants in that case. In Lehman, there are at least two important distinctions. First, the "global settlement" that was reached in these cases resolved the disputes among three distinct groups, including: the Debtors, an ad hoc committee of noteholders and another group of noteholders called the "Non-Consolidation Group." None of the

Applicants was a member of these groups. At the core of the disputes underlying the <u>Lehman</u> global settlement was the issue of whether the assets of the Debtors should be substantively consolidated, thus significantly affecting distribution to creditors. The Plan Settlement, which is expressly set forth in Section 6.5 of the Plan, does not state that a term of the settlement was the provision of fees for the individual members of the Creditors' Committee or the indenture trustees. There is nothing in the record of these cases that the provision in the Plan, discussed below, that provides the Applicants with the ability to apply for their fees (subject to various reservations) was a dispute resolved by the "global settlement" reached in the cases before the Court. In fact, the Applicants have not offered any evidence to support this argument.

By the Motion, the Applicants emphasize the "consensual nature" of the Plan provision by which they assert the requested fees and the "commitment" of the Debtors to pay these fees. These characterizations, however, are belied by the terms of the Confirmation Order. Section 6.7 of the Plan provides:

> <u>Indenture Trustee and Creditors' Committee Members Fees</u>.
> Subject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys fees) of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent incurred and unpaid by a Debtor prior to the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement upon application to and subject to approval of the Bankruptcy Court, and (ii) to the extent incurred after the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

Plan at § 6.7.  As the result of the UST Plan Objection, the Debtors modified Section 6.7, which

modification is contained in the Confirmation Order as follows:

> <u>Fees and Expenses of Indenture Trustees and Creditors'
> Committee Members</u>.  The reasonable fees and expenses, including
> attorneys' fees, of (i) the indenture trustees for the Senior Notes
> and the Subordinated Notes issued by LBHI and the (ii) individual
> members of the Creditors' Committee, shall be paid in accordance
> with Section 6.7 of the Plan upon application to, and subject of, the
> Bankruptcy Court, after reasonable notice to and with opportunity
> to object for the United States Trustee and all parties in interest;
> *provided,* that nothing in the Plan or this Confirmation Order shall
> affect any party in interest's right to object to or defend any such
> application.  All objections to any such application are expressly
> reserved, including, without limitation, any objections regarding
> the appropriate legal standard for such applications, and any
> objections that payment of such fees is unauthorized under the
> Bankruptcy Code and Bankruptcy Rules.

Confirmation Order at ¶ 74.  Importantly, not only is the United States Trustee's rights to object

to any fees sought in these cases under Section 6.7 of the Plan preserved, including with respect

to the applicable standard and whether the fees are authorized at all by the Bankruptcy Code and

Rules, but so are the same rights of "all parties in interest," including the Debtors and

Reorganized Debtors.  Thus, the alleged "commitment" by the Debtors to pay these fees is, at a

minimum, questionable.  The characterization that payment of these fees is "consensual" is even

less certain.  Moreover, the Applicants' use of the term "UST Reservation of Rights" in the

Motion, <u>see</u> Motion at n.4, is simply a misnomer since "all parties" rights have been reserved

with respect to the requested fees.

        In conclusion, there is no question that the Applicants devoted a lot of time toward the

achievement of plan confirmation in these cases, as did the Debtors and myriad other parties in

the cases.  The services performed by the Applicants, however, are not at issue here.  Rather, the

Court is being asked to approve fees that simply are not authorized by the Bankruptcy Code.  As

set forth above, the facts in the cases before this Court and the nature of the Applicants making

these fee requests "vary materially" from those in the <u>Adelphia</u> cases.  The Applicants in these

cases received the benefit of more legal and financial assistance than members of creditors'

committees in most chapter 11 cases filed in this country.  Indeed, the not less than $200 million

in fees incurred by the Creditors' Committee professionals and their time records reflect

numerous hours spent by multiple professionals on weekly, some times daily, conferences and

meetings with the Applicants, demonstrate that the estates have paid no less than a reasonable

amount of fees to these professionals.  For all of the reasons above, the Court should deny

Applicants' request for fees under Sections 1129(a)(4) and 503(b).

**C.      The Applicants Have Not Satisfied the Requirements of Section 503(b)(3)(D)
          and 503(b)(4) of the Bankruptcy Code**

The Applications and their supporting Declarations fail to establish facts sufficient for the

finding of substantial contribution under Section 503(b).  All of the Declarations in support of

the Applications are identical, but for the name of the Applicant and the names of their

professionals.  <u>See</u> Exhibit B to the Motion (the "Declarations").  All of the Declarations and

their attached time records reflect general Committee services provided by the Applicants and/or

their respective counsel or activities that were solely to further their own individual interests.  <u>Id.</u>

In fact, none of the Applicants have provided an individual statement of any extraordinary

contribution or achievement.  <u>Id.</u>  The Declarants stressed, among other things, (i) the complexity

of the cases (ii) their length of service on the Committee, (iii) their attendance at Committee

meetings and carrying out their duties as Committee members, (iv) their service on

subcommittees within the Committee and (v) their review of documents and monitoring the

22

cases.  Id.  All of the Declarations also list the same summary of Committee achievements in

these cases.  Id.  None of these activities rise to the level of a "substantial contribution" under

Section 503(b).  See In re WorldWide Direct, Inc., 259 B.R. 56, 62-63 (Bankr. D. Del. 2001)

(holding that legal fees and expenses incurred by member of unsecured creditors committee for

counsel to attend meetings, review pleadings and correspondence, and provide explanations of

same to committee member is non-compensable); Granite Partners, 213 B.R. at 452-53 (holding

that creditor, even one who makes substantial contribution to debtor's bankruptcy case, is not

entitled to substantial contribution award for time that his attorney devoted to case

administration, monitoring, education, and general negotiations); see also In re Envirodyne

Indus., 176 B.R. 815 (Bankr. N.D. Ill. 1995) (holding that attorney was not entitled to be

compensated for services which were allegedly performed on behalf of subcommittee of official

creditors' committee).

Finally, in an unprecedented request, and without citing any legal authority, several

Applicants seek to be reimbursed for the services performed by their in-house counsel and other

in-house personnel.  Accordingly, none of the Applicants have met their burden of proof under

Sections 503(b)(3) and (4) because none of them have demonstrated how their participation

resulted in an extraordinary, "direct, significant and demonstrable benefit to the estate."  Best

Prods., 173 B.R. at 865.

**D.    The Applicants are Not Entitled to Recover Fees and Expenses Pursuant
to Section 503(b)(3)(F) of the Bankruptcy Code**

While the Applicants rely upon Sections 503(b)(3)(D) and 503(b)(4) as the basis for the

reimbursement of fees and expenses, in reality, they are seeking the reimbursement for

professional fees rendered to a member of the Creditors' Committee, which is expressly

prohibited by Section 503(b)(3)(F) and is not compensable.

Section 503(b)(3)(F) of the Bankruptcy Code provides that, after notice and a hearing, a

bankruptcy court shall allow administrative expenses for "(3) the actual, necessary expenses,

other than compensation and reimbursement specified in paragraph (4) of this subsection,

incurred by – (F) a member of a committee appointed under Section 1102 of this title if such

expenses are incurred in the performance of such committee." 11 U.S.C. § 503(b)(3)(F).

Although a committee member is entitled to an administrative expense claim for

expenses that the member incurs in the performance of committee duties, such as for travel,

lodging and meal expenses incurred while attending committee meetings or court hearings, the

Committee member is not entitled to an administrative expense claim for its professional fees.

See Fibrex, 270 B.R. at 718; FirstPlus Financial, 254 B.R. at 895; Summit Metals, 379 B.R. at

68; see also, Collier ¶ 503.11[6].

The United States Trustee objects to the allowance of the Applicants fees and expenses to

the extent that the Applicants seek compensation under Section 503(b)(3)(F).

**E.     The Indenture Trustees Do Not Have an Automatic Right to
         Reimbursement and Compensation as an Administrative Expense**

Even if the three indenture trustees, Wilmington Trust Company, the Bank of New York

Mellon and US Bank (the "Indenture Trustees") have a contractual right to compensation

pursuant to their indentures, these contractual rights do not change the requirements imposed in

the Bankruptcy Code.  Accordingly, the United States Trustee objects the Indenture Trustees'

Applications to the extent that they provide that the requirements of Section 503(b) do not apply

to their claims for fees and expenses as Indenture Trustees.

24

In <u>In re United Merchants and Manufacturers, Inc.</u>, 597 F.2d 348 (2d Cir. 1979), the

Second Circuit denied an indenture trustee's application for compensation and reimbursement of

attorney's and accountant's fees despite the debtors' contractual agreement to pay the indenture

trustee reasonable compensation and reimbursement for expenses.  Specifically, the court held

that the indenture trustee's contractual arrangement with the debtor did not entitle it to fees and

expenses as a priority administrative expense under Section 64 of the Bankruptcy Act of 1898.

<u>Id.</u> at 349.  The Court did not comment upon the indenture trustee's separate, non-statutory

contractual rights to fees and expenses except to state, citing <u>Lane v. Haytian Corp.</u>, 117 F.2d

216 (2d Cir. 1941), that "a Chapter XI debtor is not free to contract to compensate persons when

their compensation is not contemplated by the Act."  <u>Id.</u>

More recent cases have also reached the same conclusion.  In <u>In re Buttes Gas & Oil Co.</u>,

112 B.R. 191 (Bankr. S.D. Tex. 1989), an indenture trustee and its counsel applied for

reimbursement of fees and expenses as administrative expenses under Section 503(b)(3)(D) and

(5).  The Court denied the request because it found that the evidence submitted at the hearing

failed to support a finding of substantial contribution to the estate.  <u>Id.</u> at 195.  In so holding, the

Court also noted that the contractual right to reimbursement of fees and expenses of an indenture

trustee does not result in automatic entitlement to an administrative expense claim:

> Notwithstanding the provisions of the Trust Indenture Act, the proper test for
> awarding legal fees to counsel for an indenture trust is the Bankruptcy Act.  There
> is no distinction between indenture trustees and other applicants for compensation
> under §503, nor any conflict in the statutory language of the Bankruptcy Act and
> the Trust Indenture Act.  The Trust Indenture Act sets forth duties and
> responsibilities of the indenture trustee and has no bearing on the decision by
> Congress via §503 to compensate those particular indenture trustees which
> substantially contribute to the bankruptcy proceeding.  Thus, in order to receive
> compensation for services rendered on behalf of debenture holders in a
> bankruptcy case, the substantial contribution test of §503 must be satisfied.

25

> Further, Chemical Bank claims that §607 of the Indenture between Chemical Ban
> and the Debtor obligates the Debtor to pay for Chemical Bank's fees for services
> rendered in accordance with the indenture.  A contractual right to reimbursement
> and compensation under the Indenture does not result in an automatic entitlement
> to compensation under §503.

112 B.R. at 196 (citations omitted).  <u>See also</u> <u>In re General Homes Corp. FC-MC</u>, 143 B.R. 99

(Bankr. S.D. Tex. 1992) (finding that an indenture trustee and its attorneys had failed to make a

substantial contribution to the reorganization sufficient to justify an administrative claim and

noting, <u>in dicta</u>, that "the party's compensation is not dependent on a contractual entitlement to

reimbursement, but rather on whether a substantial contribution was made.").  <u>Cf</u>. <u>In re Revere</u>

<u>Copper and Brass, Inc.</u>, 60 B.R. 892 (while recognizing that a party's entitlement to

reimbursement under Sections 503(b)(3), (4), and (5) is independent of any contractual

entitlement, the Court ultimately found that the "substantial contribution" standard had not been

met and the indenture trustee had waived its right to receive compensation under the indenture

given that it had made all distribution and there was nothing left for its charging lien to attach to,

and ultimately noting that an indenture trustee's contractual right "does not result in automatic

entitlement to compensation under Code §503(b).").

Even if the Court were to recognize a separate contractual right, the most the Indenture

Trustees could be granted would be an unsecured claim for the fees and expenses sought for

themselves and their counsel.  Accordingly, the Court should not allow the Indenture Trustees to

elevate what would otherwise be an unsecured claim to an administrative claim when the

Bankruptcy Code does not provide for such treatment.

**F.**    **To the Extent That the Court Determines That a Reasonableness Standard Applies, the Fees and Expenses Requested Are Not Reasonable**

Regardless of which standard of review the Court determines will apply to the Applications, the requested fees and expenses will be reviewed for reasonableness.  If the Court determines that "substantial contribution" is the appropriate standard of review and that substantial contribution has been proven, then the standards as set forth in Section 330 of the Bankruptcy Code apply in determining the extent that the fees and expenses of the professional are reimbursable under Section 503(b)(4).  See, e.g., In re Wind N'Wave, 509 F.3d 938, 944 (9th Cir. 2007); In re Celotex Corp., 227 F.3d 1336, 1341 (11th Cir. 2000).

If the Court determines that the "reasonableness" standard under Section 1129(a)(4) applies, even the Adelphia Court implied that the general standards under Section 330 would be used to evaluate the fee applications.  See Adelphia, 441 B.R. at 19-20 ("Some traditional bankruptcy court concerns, like overworking a matter or running up excessive disbursements . . . would apply in this reasonableness context as well."); see also In Adelphia Communications, 368 B.R. 140, 271 n. 316 (Bankr. S.D.N.Y. 2007) ("For the avoidance of doubt, they shall file [applications] in the manner that fee applications are customarily submitted, and not just "something in the nature of a fee statement or a narrative that describes in very general terms who the party is, their role in the case, and then attaches time records for review.").

Section 330[5] of the Bankruptcy Code provides, in part:

(a)(1) After notice . . . and a hearing . . . the court may award to a . . . professional person employed under section 327 or 1103 –

---

[5] 11 U.S.C. § 330, by its terms, applies only to retained professionals.  Lamie v.United States Trustee, 540 U.S. at 536.

(A) reasonable compensation for actual, necessary services rendered by the . . . professional person or attorney and by any paraprofessional employed by any such person; and

(B) reimbursement for actual and necessary expenses.

11 U.S.C. § 330(a)(1).

Factors that the Court considers in determining reasonableness are set forth in Sections

330(a)(3), (4) and (6).  Under Section 330(a)(3),

(3) In determining the amount of reasonable compensation, to be awarded to  . . . a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A) through (F).

Under Section 330(a)(4),

the court shall not allow compensation for --

(i)  unnecessary duplication of services; or

28

(ii) services that were not

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4).

Finally, under Section 330(a)(6)

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

11 U.S.C. §330(a)(6).

The applicant has the burden of proving that the services rendered were actual and necessary, and that the compensation sought was reasonable.  In re Bennett Funding Group, Inc., 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).  The services must be both necessary and reasonable.  In re Keene Corp., 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997).  Services are necessary if they benefit the estate.  Id.  The determination of reasonableness is an objective test that considers what services a reasonable lawyer or legal firm would have performed in the same circumstances.  In re Ames Dep't. Stores, Inc., 76 F.3d 66, 72 (2d Cir.1996) (citing In re Taxman Clothing Co., 49 F.3d 310, 315 (7th Cir.1995)); accord In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991).

Applicants must support their requests for fees and expenses with specific, detailed and itemized documentation to meet their burden of proof.  Bennett Funding, 213 B.R. at 244-245.  Under Section 330(a)(1)(B), a professional seeking an expense reimbursement from the estate "must furnish enough specificity for the Court to establish whether a given expense was both actual and necessary."  In re Fibermark, Inc., 349 B.R. 385, 399 (Bankr. D. Vt. 2006).  Expenses

are actual if they are actually incurred and necessary if "reasonably needed to accomplish proper representation of the client." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005).

In the Southern District of New York, applicants must also comply with United States Trustee Fee Guidelines (the "UST Guidelines"), the Court's Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases ("General Order M-389") (Effective December 4, 2009) (collectively, the "Fee Guidelines"). The Fee Guidelines require, among other things, that applicants arrange detailed time entries in project categories accounting for the amount of time spent on each discrete task for time entires totaling more than a half hour. See UST Guidelines, Sections 4(i) and (b)(4)(v). The Fee Guidelines also require that applicants file a certification, under penalty of perjury, with their applications. General Order M-389, at 1.

## 1.    Objections to All Applications

The United States Trustee has conducted a thorough review of each Applicant's time records and expense detail under the standards set forth Section 330 of the Bankruptcy Code and the Fee Guidelines. For the reasons set forth below, none of the Applications should be granted in their entirety.

### a.    The Applications Fail to Comply with General Order M-389

None of the Applications contain the certification required by the Court's General Order M-389, which provides that each Application for fees and disbursements must contain a certification by the professional that (a) the certifying professional has read the application, (b) to the best of his or her knowledge the information and fees and disbursements sought fall within

the UST Guidelines, (c) the fees and disbursements sought are billed at  rates and in accordance

within customary practice; and (d) the applicant does not make a profit on the service.  See

General Order M-389.

Accordingly, the United States Trustee requests that prior to any fees or disbursements

being allowed by the Court, each Applicant file a certificate in compliance with General Order

M-389.

**b.    The Applications Fail to Comply with the UST Guidelines**

The Applications also fail to comply with the UST Guidelines.  The Applicants' time

records are either not arranged in project categories as required by section (b)(4)(I) of the UST

Guidelines or are arranged into a few vague project categories that do not provide any insight in

the type of work performed.  The Applicants' failure to arrange entries by distinct project

categories makes a proper reasonableness review by the Court and/or the United States Trustee

difficult, if not nearly impossible.  Accordingly, the United States Trustee requests that prior to

any fees or disbursements being allowed, time records be provided in compliance with the UST

Guidelines be filed with the Court.

**2.    Objections to Individual Applications**

In addition to the objections to all of the Applicants raised above, the United States

Trustee also objects to the payment of certain fees and the reimbursement of certain expenses in

the individual Applications.

**a.    Wilmington Trust Company**

Wilmington Trust Company ("Wilmington"), which was both an indenture trustee and a

Committee member, seeks fees in the aggregate amount of $10,848,350.50 and expenses in the

aggregate amount of $773,916.95, for work performed by its in-house personnel, two law firms

and Citibank, which was the security registrar and former indenture trustee.  <u>See</u> Declaration of

Julie J. Becker, attached to the Motion at Exhibit B-8.

More specifically, Wilmington seeks $2,569,577.50 in fees related to the services of

Wilmington's in-house personnel and reimbursement of expenses in the amount of $696,949.14.

Wilmington also seeks an award of fees for its counsel Covington & Burling ("Covington")

totaling $7,788,744.00 and reimbursement of Covington's expenses in the amount of $68,759.56.

In addition, Wilmington seeks an award of fees for its other counsel Loeb & Loeb ("Loeb")

totaling $394,029.00 and reimbursement of Loeb's expenses in the amount of $8,208.25.

Finally, Wilmington seeks an award of fees to Citibank in the amount of $96,000.00.  No

expense reimbursement is sought on behalf of Citibank.

> **(i)    Wilmington**

Wilmington seeks $2,569,577.50 in fees related to the services of Julie J. Becker, Vice

President in the Corporate Client Services Group, and other Wilmington in-house personnel and

reimbursement of expenses in the amount of $696,949.14.  There is no precedent for reimbursing

the fees of in-house counsel and other staff of a creditor, and Wilmington provides no authority

for this fee request.  <u>See</u> <u>In re Baldwin-United Corp.</u>, 79 B.R. at 342 (denying request of fees of

in-house counsel as such fees were not compensable under Section 503(b)(4)).  In addition,

official committee members are not entitled to compensation for their time under 503(b).

<u>Worldwide Direct</u>, 334 B.R. at 116 (under Section 503(b)(3)(F), a member of an official

committee may seek reimbursement for expenses but not for his or her time).

It is unlikely, and Wilmington does not represent, that it incurred, and actually paid, fees of $2,569,577.50 to its in-house staff for services in connection with these cases. Moreover, General Order M-389 requires an applicant to certify that it did not make a profit on the services provided. See General Order M-389. On its face, therefore, the fee request is unreasonable and the Court should disallow this $2,569,577.50 request in its entirety.

The United States Trustee also objects to the reasonableness of certain of Wilmington's expenses. Wilmington seeks reimbursement of $84,844.94 in travel expenses such as meals, airfare, and hotels. Wilmington has not demonstrated whether (i) these expenses are reasonable, (ii) less expensive airfare or accommodations were available, and (iii) the meal expenses comply with the requirements of General Order M-389(E)(5) or the caps imposed in these cases by the Fee Committee. Nor has Wilmington provided any invoices or back-up for their expense requests. In addition, Wilmington seeks $152,180.00 for maintaining a hotline for bondholders and $12,500.00 for maintaining a web site for bondholders. These expenses should be denied unless and until Wilmington can demonstrate that they are reasonable and that Wilmington would have provided these services outside of bankruptcy.

Accordingly, Wilmington's expense request should be reduced in the amount of $249,524.94.

### (ii)    Covington & Burling

Wilmington seeks an award of fees for Covington totaling $7,788,744.00 and reimbursement of Covington's expenses in the amount of $68,759.56.

The United States Trustee objects to the Covington fee request on several grounds. First, Covington's request is overbroad. Covington should not be compensated for services performed

33

prior to September 17, 2008, the date on which Wilmington was appointed to the Committee.

The pre-appointment fees total $35,481.00 and represent 52 hours of service.  Second, the fee

request does not satisfy the reasonableness standard because of numerous vague entries.  UST

Guidelines (b)(4)(v); In re Baker, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007) ("The records must

be detailed enough to enable a Court to determine whether the attorneys are claiming

compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also

Bennett Funding, 213 B.R. at 244 ("In cases where the time entry is too vague or insufficient to

allow for a fair evaluation of the work done and the reasonableness and necessity for such work,

the court should disallow compensation for such services.").  For example, Covington should not

be compensated for services in Task Code 3700 labeled "Other Bankruptcy Motions and

Matters."  Entries in this Task Code total over $638,000.00.  The vast majority of the entries in

the Task Code 3700 are vague ("Review e-mails and pleadings" and "Review of recent court

pleadings" being the most common) and lack any detail as to what services were performed and

with whom the timekeeper communicated.

Third, at least a quarter of Covington's entries outside of Task Code 3700 fail to comply

with UST Guidelines because they are both vague and "block billed."  See UST Guidelines,

Section (b)(4)(v).  Recording multiple tasks as one billing entry, typically referred to as "block

billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine

the reasonableness of the time spent on each of the individual tasks performed.  See Baker, 374

B.R. at 494 (citations omitted) ("A professional is required to bill each task separately.  That

way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted

to inflate the actual time spent and group multiple tasks together hoping to camouflage the true

length of an individual task.").  As a result of "lumping" time, the "timekeeper fails to sustain

[his] burden of providing that [his] fees are reasonable."  In re Brous, 370 B.R. 563, 576 (Bankr.

S.D.N.Y. 2007).  Consequently, courts summarily will disallow time for discrete legal services

merged together in a fee application.  See, e.g., Baker, 374 B.R. at 496 (bankruptcy court

deducted 20 percent from the requested fees for improper block billing); see also, In re M.

Fabrikant & Sons, Inc., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009)

(Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of

Expenses) (Docket No. 926) (bankruptcy court allowed only 30 minutes for each "lumped"

entry, irrespective of the aggregate time billed for that entry); In re CCT Communications, Inc.,

No. 07-10210 (SMB), 2010 WL 3386947, *7 (Bankr. S.D.N.Y Aug. 24, 2010) (allowing only 30

minutes of time for lumped entries).

Accordingly, the Covington's fee request should be reduced by $35,481.55 plus a

percentage reduction to be determined by the Court with respect to the vague and lumped time

entries.  In addition, Covington's expense request fails to provide any back-up information to

support and substantiate its reasonableness and should be disallowed until the Court and the

United States Trustee receive itemized documentation to substantiate the request.

### (iii)    Loeb & Loeb

Wilmington seeks an award of fees for its counsel Loeb & Loeb totaling $394,029.00 and

reimbursement of Loeb's expenses in the amount of $8,208.25.

The United States Trustee objects on several grounds.  First, the United States Trustee

objects to the compensation of any services for which redacted time entries were provided.   The

submission of redacted time entries violates General Order M-389, which provides in pertinent

part:

> If there is a need to omit any information or description of services
> as privileged or confidential, the applicant may make such a
> request of the court; provided, however, that if such a request is
> granted, the court may request that it be furnished with a set of
> unredacted time for in camera inspection.

General Order M-389 at ¶ C.

Redaction of time entries (which in some cases represents a redaction of almost the entire

entry) makes it impossible for the Court or the United States Trustee to fully evaluate the

reasonableness of the entries.  No compensation for Loeb's services should be allowed until

unredacted time records are provided to the Court and to the United States Trustee.

Second, at least a quarter of Loeb's time entries fail to comply with the UST Guidelines

with regard to vagueness and lumping.  See UST Guidelines (b)(4)(v).  Third, Loeb's time

entries lack any project categories, making meaningful review difficult.  Fourth, Loeb's invoices

fail to specify the position of each timekeeper with the firm (i.e., partner, associate, of counsel,

paralegal, summer associate) and, for attorneys, fail to specify whether the relevant professional

has been admitted to the practice of law.

Finally, Loeb's invoices for expenses fail to indicate how much Loeb charged per page of

photocopying, both in-house and by third party vendors.

Accordingly, Loeb's Application should be disallowed until Loeb submits unredacted

and revised time records and clarifies its photocopying charges.

### (iv)    Citibank

Wilmington seeks an award of fees $96,000.00 in fees to Citibank from the Petition Date through December 31, 2011.  Because no information with respect to these requested fees has been provided, the United States Trustee objects to the reimbursement of these fees in their entirety.

### b.    The Bank of New York Mellon

The Bank of New York Mellon ("BNYM"), which was both an Indenture Trustee and a Committee member, seeks fees in the aggregate amount of $4,544,764.45 and expenses in the aggregate amount of $35,519.86, for in-house administration fees and work performed by one law firm.  See Declaration of John Guiliano, attached to the Motion as Exhibit B-1.

More specifically, BNYM seeks $490,740.00 in in-house administrative fees as a Committee member and as an Indenture Trustee.  BNYM also seeks an award of fees for its counsel Sheppard Mullin Richter & Hampton LLP ("Sheppard Mullin") totaling $4,054,024.45 and reimbursement of Sheppard Mullin's expenses in the amount of $35,519.86.

### (i)    BNYM

BNYM seeks $490,740.00 in "administration" fees related to the services of John Guiliano, the Vice President in the Default Administration Group of BNYM.  As stated in section IV.F.2a(i), above, there is no precedent for reimbursing the fees of in-house staff of a creditor, and BNYM cites no authority for this request.  On its face, therefore, the fee request is unreasonable and the Court should disallow this $490,740.00 request in its entirety.

37

(ii)    **Sheppard Mullin**

BNYM also seeks an award of fees for its counsel Sheppard Mullin in the amount of $4,054,024.45 and reimbursement of Sheppard Mullin's expenses in the amount of $35,519.86.

The United States Trustee objects to Sheppard Mullin's fee request on several grounds. First, Sheppard Mullin's request is overbroad. Sheppard Mullin should not be compensated for services performed prior to September 17, 2008, the date on which BNYM was appointed to the Committee. In addition, the pre-appointment time entries attached to Sheppard Mullin's application fail to list the amount charged for the specific services provided. The United States Trustee estimates that the amount at issue is approximately $90,000.00 for 100 hours of service. Accordingly, the United States Trustee requests that the Applicant's request be reduced by that amount.

Second, the fee request does not satisfy the reasonableness standard because of numerous vague and lumped time entries which do not clearly delineate the professionals providing the services with their respective titles making a review for the reasonableness of the services provided very difficult. Accordingly, the United States Trustee requests that revised invoices consistent with the UST Guidelines and the Fee Guidelines be provided in order to complete a full review of their reasonableness.

Finally, Sheppard Mullin's expense request fails to provide any back-up information to support and substantiate its reasonableness and should be disallowed until the Court and the United States Trustee receive itemized documentation to substantiate the request.

38

c.      **Mizuho Corporate Bank, Ltd.**

Mizuho Corporate Bank Ltd. ("Mizuho") seeks $2,863,196.00 in fees and $17,742.29 in

expenses incurred by its counsel, Stroock & Stroock & Lavan ("Stroock").  See Declaration of

Noel P. Purcell, attached to the Motion as Exhibit B-4.  The United States Trustee objects to this

fee request on several grounds.  First, the fee request does not satisfy the reasonableness standard

because of numerous vague entries, such as "review materials for and participate on Committee

call (3.0)"; "worked on issues re co-chair on major issues; received and reviewed materials from

Committee (1.0)"; and "materials from Committee; conference with N. Purcell re Committee

issues; co-chair conference call (2.0)."

Second, all of the time entries are lumped.   Third, approximately $8,500.00 was spent by

Stroock's professionals reviewing time records.  Billing a debtor's estate for time spent

reviewing invoices is not compensable.  See In re Mesa Air Group, Inc., 449 B.R. 441, 446

(Bankr. S.D.N.Y. 2011) citing In re CCT Commc'ns, Inc., 2010 WL 3386947, at *9 (Bankr.

S.D.N.Y. Aug. 24, 2010)("[T]he review and editing of time records – as opposed to fee

applications – is not compensable.  Outside of bankruptcy, lawyers presumably do not charge

their clients for preparing time records.").

Accordingly, the United States Trustee seeks a reduction in fees sought by Mizuho of

$8,500.00 plus a percentage reduction to be determined by the Court with respect to vagueness

and lumping.

The reimbursement of certain of Stroock's expenses should also be disallowed.  While

the Application provides a general outline of the various categories of expenses incurred,

Stroock's invoices fail to provide a detailed explanation and break-down of the expenses.  See

UST Guidelines at (b)(5).  It is therefore not clear how much Stroock charges for duplicating costs or what expenses related to "O/S Information Services" and "In house messenger costs" entail.  Absent further explanation to demonstrate that these charges are not overhead, reimbursement of those expenses should be denied.  Moreover, Stroock charges for "word processing."  Word processing, however, is "a clerical service regardless of who performs it."  Bennett Funding, 213 B.R. at 428; UST Guidelines, 4(b)(5)(vii).  As an overhead expense, word processing cannot be billed to the client.

### d.        Metropolitan Life Insurance Company

Metropolitan Life Insurance Company ("MetLife") seeks reimbursement of $254,402.50 in fees incurred by its in-house counsel.  See Declaration of David G. Yu, attached to the Motion as Exhibit B-3.  As set forth in sections IV.F.2a(i) and IV.F.2b(i) above, there is no precedent for reimbursing the fees of in-house staff of a creditor, and MetLife provides no authority for this fee request.  On its face, therefore, the fee request is unreasonable and the Court should disallow this $254,402.50 request in its entirety.

### e.        Vanguard Group, Inc.

Vanguard Group, Inc. ("Vanguard") seeks $1,346,234.50 in fees and $21,221.17 in expenses incurred by its counsel, Arent Fox LLP ("Arent Fox").  See Declaration of Stuart Hosansky, attached to the Motion as Exhibit B-7.  The United States Trustee objects to Vanguard's fee request on two grounds.  First, Arent Fox's time entries show that many time keepers lumped separate tasks into one entry.  Accordingly, the United States Trustee seeks a percentage reduction to be determined by the Court with respect to the lumped time entries.

40

Second, the time entries show that Arent Fox professionals did not reduce their billing rate for time spent traveling to hearings or meetings. Determining the travel time is complicated by the fact that some of the same entries show multiple lumped tasks associated with the hearing or meeting.

It is customary that non-working travel time is charged at one-half of the professional's full hourly rate. See In re CCT Communications, Inc., 2010 WL 3386947, *10; Petronella v. ACAS, 2004 WL 1688525, at *1 (D. Conn. Jan. 23, 2004) (citing Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 2003 U.S. Dist. LEXIS 13980 (S.D.N.Y. 2003)); Chase v. Molleur, 336 B.R. 681, 687 (Bankr. D. Vt. 2005); see also, In re Raytech Corp., 241 B.R. 785, 790 (D. Conn. 1999) (vacating and remanding bankruptcy court's allowance of full compensation for attorneys' non-working, non-local travel time for determination of "customary billing practice for nonproductive travel time in the 'prevailing community.'"); In re Kuhn, 337 B.R. 668, 676 (Bankr. N.D. Ind. 2006) (travel time in that district was compensated at one-half of the professional's hourly rate); In re Caribbean Const. Servs., Inc., 283 B.R. 388, 395 (Bankr. D.V.I. 2002) (non-working travel time compensable at 50% of customary hourly rate unless evidence establishes that professional used time productively by preparing for meeting or court proceeding). Because Arent Fox's travel entries are lumped with other tasks, it is difficult to determine the actual time that the professionals traveled in order to reduce the travel time by half. Accordingly, absent satisfactory explanation, to the extent that a timekeeper has billable hours spent traveling and to the extent that no work was performed during such travel, the full-time rate should be denied.

41

      **f.**    **US Bank, N.A.**

US Bank, N.A. ("US Bank"), which was both an Indenture Trustee and a Committee member, seeks fees in the aggregate amount of $2,979,810.00 and expenses in the aggregate amount of $16,866.78, for work performed by its in-house staff and three law firms.  <u>See</u> Declaration of Laura L. Moran, attached to the Motion as Exhibit B-6.

More specifically, US Bank seeks $1,051,412.50 in fees related to the services of Laura Moran, a Vice President in the Corporate Trust Securities Division of US Bank and JH Byrnes, another US Bank employee.  US Bank seeks an award of fees of its counsel Shipman & Goodwin LLP ("Shipman") totaling $111,232.50 and reimbursement of Shipman's expenses in the amount of $1,217.06.  US Bank seeks an award of fees of its counsel Edwards Angell Palmer & Dodge LLP ("EAPD") totaling $64,796.00 and reimbursement of EAPD's expenses in the amount of $2,721.33.  Finally, US Bank seeks an award of fees of its counsel Sullivan & Worcester LLP ("Sullivan") totaling $1,752,369.00 and reimbursement of Sullivan's expenses in the amount of $12,928.39.

      **(i)**    **US Bank**

US Bank seeks $1,051,412.50 fees related to the services provided by in-house employees of US Bank.  As stated in sections IV.F.2a(i), IV.F.2.b(i) and IV.F.2d above, there is no precedent for reimbursing the fees of in-house staff of a creditor, and US Bank provides no authority for this fee request.  On its face, therefore, the fee request is unreasonable and the Court should disallow this $1,051,412.50 request in its entirety.

### (ii)    Shipman

US Bank seeks an award of fees for its counsel, Shipman, totaling $111,232.50 and reimbursement of Shipman's expenses in the amount of $1,217.06.  The United States Trustee objects to the fee request on the ground that US Bank seeks compensation for Shipman's work conducted before the Petition Date and also, before US Banks's appointment to the Committee. Specifically, US Bank submitted Shipman's fee records for the period beginning on April 7, 2007, which is over seventeen months prior to the Petition Date and nearly three years prior to US Bank's appointment to the Committee on February 10, 2010.  The amount of fees for the period prior to US Bank's appointment to the Committee totals $49,274 and the amount of expenses totals $1,.217.06.  Accordingly, the United States Trustee requests that the Applicant's request be reduced by that amount.

### (iii)    EAPD

US Bank seeks an award of fees for its counsel EAPD totaling $64,796.00 and reimbursement of EAPD's expenses in the amount of $2,721.33.  The United States Trustee objects to EAPD's fee request on two grounds.  First, EAPD's records indicate that it billed one hour for the day preceding US Bank's appointment to the Committee.  Thus, US Bank's request for $595 charged on February 9, 2010 should be denied.  Second, EAPD's entries show 9.5 hours of combined travel time for two personnel on February 19, 2010.  To the extent that no work was performed during such travel, the full-time charge for this travel should be denied.

### (iv)    Sullivan

US Bank seeks an award of fees for its counsel, Sullivan, totaling $1,752,369.00 and reimbursement of Sullivan's expenses in the amount of $12,928.39The United States Trustee

43

objects to Sullivan's fee request on two grounds. First, the billing records indicate that Sullivan charged a full-time rate for travel in some instances without indicating that work was performed during such travel. For example, these questionable entries occurred on March 31, 2010, April 1, 2010, May 25 and 26, 2010, November 22, 2010, February 7 and 9, 2011, May 3, 2011, July 7, 2011, and September 27, 201. Because some of these entries are lumped with other tasks, the total travel time is unknown. The time entries should be reduced by half where the timekeeper did not perform work during the time charged.

Second, the United States Trustee objects to certain expenses incurred by Sullivan. Specifically, the charge of $553.38 for the Hotel Wellington should be reduced by $53.46 to comply with the maximum allowable hotel charge at $500 per night which has been adopted as the standard in these cases. In addition, the Court should deny the meal expenses of $252.75 for the Cellini Restaurant and $71.78 for the Oak Room on February 7, 2011 and $221.19 for the Grill Room on May 3, 2011. The United States Trustee objects to these expenses to the extent that they do not indicate the number of persons and the necessity of the meal.

### g.    Elliott Management Corp.

Elliott Management Corp. ("Elliott") seeks fees in the aggregate amount of $2,450,749.60 and expenses in the aggregate amount of $65,267.55, for work performed by two law firms. See Declaration of Didric Cederholm, attached to the Motion as Exhibit B-2.

More specifically, Elliott seeks an award of fees for its counsel Greenberg Traurig, LLP ("Greenberg") totaling $1,308,655.60 and reimbursement of Greenberg's expenses in the amount of $53,841.86. Elliott also seeks an award of fees for its counsel Kleinberg, Kaplan, Wolff &

44

Cohen, P.C. ("Kleinberg") totaling $1,142,094.00 and reimbursement of Kleinberg's expenses in the amount of $11,425.69.

### (i)    Greenberg

The United States Trustee objects to Greenberg's entire fee request in the amount of $1,308,655.60 because whole pages of the time records are redacted, which renders the records difficult to review for reasonableness and in violation of General Order M-389.  No compensation for Greenberg's services should be allowed until unredacted time records are provided to the Court and to the United States Trustee.

Certain of Greenberg's expenses should also be disallowed.  The United States Trustee objects to the expenses of $14,135.49 on June 4, 2010 and $2,021.45 on July 1, 2010 for "Transfer Pricing Associates B.V."  Without more information as to the nature of these expenses, neither the Court nor the United States Trustee can determine their reasonableness.

### (ii)    Kleinberg

The United States Trustee objects Kleinberg's entire fee request in the amount of $1,142,094.00 because many of the time records are redacted, which renders them difficult to review for reasonableness and in violation of General Order M-389.  No compensation for Kleinberg's services should be allowed until unredacted time records are provided to the Court and to the United States Trustee.

### h.    Shinsei Bank, Limited

Shinsei Bank, Limited seeks $71,460.00 in fees and $1,615.06 in expenses incurred by its counsel, Vinson & Elkins LLP.  See Declaration of Edward P. Gilbert, attached to the Motion as Exhibit B-5.  The United States Trustee objects this fee request on several grounds.  First, many

45

of Vincent & Elkin's time record entries are redacted, which renders them them difficult to

review for reasonableness and in violation of General Order M-389.  No compensation for

Vincent & Elkin's services should be allowed until unredacted time records are provided to the

Court and to the United States Trustee.

Second, all of the time entries that Vinson & Elkins provided were lumped in violation of

Section (b)(4)(v) of the UST Guidelines.

Third, approximately 8.25 hours spent by Vincent & Elkins' professionals – or $5,568 –

was for services performed prior to Shinsei Bank, Limited's appointment to the Committee on

September 17, 2008.  Accordingly, the United States Trustee requests that the Applicant's

request be reduced by that amount.

Certain of Vincent & Elkin's expenses should also be disallowed.  Vincent & Elkins'

charged twenty cents per page for photocopying when the standard adopted in these cases and in

large cases in general in the Southern District of New York is ten cents.  Accordingly, the United

States Trustee requests that the amount of reimbursements be reduced to allow only for

photocopying charges at ten cents per page.  Finally, Vincent & Elkins is seeking reimbursement

in the amount of $275.00 for membership to the American Bankruptcy Institute.  Such charge is

overhead, not reasonable and not reimbursable by the estates.

**V.**                               **RESERVATION OF RIGHTS**

The United States Trustee reserves her rights to supplement this Objection should the

Applicants file certifications and /or submit revised time records and expense documentation.

46

**VI.**                                     **CONCLUSION**

Based on the foregoing, the United States Trustee requests that the Court sustain her

objections and grant other relief as is just.

Dated: New York, NY
February 15, 2012

                              Respectfully submitted,

                              TRACY HOPE DAVIS
                              UNITED STATES TRUSTEE

                              By:      */s/Susan D. Golden*
                                       Susan D. Golden
                                       Elisabetta G. Gasparini
                                       Andrea B. Schwartz
                                       Trial Attorneys
                                       33 Whitehall Street
                                       New York, New York 10022
                                       (212) 510-0500