

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                       :
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :   Case No 08-13555 (JMP)
                                                            :   Chapter 11
Debtors.                                                    :
                                                            :
                                                            :Response Deadline: February 14, 2012
                                                            :
------------------------------------------------------------x

### RESPONSE OF LINDA LUDWIG TO
### DEBTORS' SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO DEBTORS' SEVENTY-THIRD, ONE HUNDRED EIGHTEENTH, ONE HUNDRED THIRTIETH, ONE HUNDRED THIRTY-FIRST, ONE HUNDRED THIRTY-THIRD, ONE HUNDRED THIRTYFOURTH, ONE HUNDRED THIRTY-FIFTH, ONE HUNDRED SEVENTY-SIXTH, AND TWO HUNDRED AND SEVENTH OMNIBUS OBJECTION (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

TO THE HONORABLE JAMES M. PECK

UNITED STATES BANKRUPTCY JUDGE

Linda Ludwig ("Claimant") hereby responds ("Response") to the Debtors' supplemental annotated omnibus reply (the "Annotated Reply") (Docket No. 24591) to responses filed to certain omnibus claim objections (to Reclassify Proofs of Claims as Equity Interests) (the "Objection") as follows:

### Background and Preliminary Statement

1. The Annotated Reply relates to the claim filed by Claimant: Claim No. 25110 ("Deducted Commissions Claim"). The Deducted Commissions Claim relates to commission draw compensation earned during 2008, and deducted from Claimant's monthly paychecks, but for which the Claimant received no property or right at the time of the Chapter 11 filings.

US 881617v.1

2. The Debtors objected to the Deducted Commissions Claim in their One Hundred Thirty-First Omnibus Objection to Claims. Claimant hereby incorporates by reference her arguments to those objections set forth in her prior "Objection to One Hundred Thirtieth Omnibus Objection" (Docket No 16923).

3. Boiled to its essentials, Debtors' argument in this regard is that the claim should be disallowed because, in their own words: "the restricted stock units and contingent stock awards bear the hallmarks of equity interests: the employees enjoyed the benefits as shareholders in the increase in value of LBHI, but also bore the risks that LBHI's stock would decline in value." Annotated Reply ¶ 1. However, as set forth below, for the Deducted Commissions Claim, Claimant did not bear *any* of the hallmarks of equity interests – because that claim represents amounts that were deducted from employee compensation during fiscal year 2008, but no contingent stock awards or other property was ever granted as anticipated during the fourth quarter of 2008 due to the intervening bankruptcy. Prior to actual grant, Claimant bore none of the risks or benefits of common stock ownership, and merely bore the risk of an intervening insolvency with respected to the deducted commission draws in the same way as other unsecured creditors.

### Response in Relation to Deducted Commissions Claim

4. With respect to the Deducted Commissions Claim, the Debtors' reply to all of Claimant's original arguments is summarized on pg 25 of the Annotated Reply. However, only one of those replies is actually relevant to the distinguishing features of this claim. That reply is:

2

US 881617v.1

> **"Amounts were deducted from Respondent's payroll and held in either an escrow account or in constructive trust for their benefit until such time as the funds would be used to purchase Equity Awards."**

5. The Annotated Reply incorrectly characterizes Claimant's argument for claim treatment of the Deducted Commissions Claim. As the relevant proof of claim states, the Deducted Commissions Claim represents commission draw amounts that Claimant earned for services rendered during the fiscal year ended November 30, 2008 and that were deducted from her monthly paycheck, but for which the Debtors never reimbursed or otherwise provided value at the time of the bankruptcy petition date. Contrary to the Debtors' characterization of these claims and the argument related thereto (see ¶ 26 and 30 of Annotated Reply), Claimant does not assert that these deducted amounts were placed in escrow account or a constructive trust. Claimant is not asserting any type of secured claim or other priority that would arise from a constructive trust or other traceable fund. Claimant simply asserts an *unsecured* claim for amounts deducted from her earned compensation for which the Debtors provided neither Contingent Stock Awards, nor anything else of value either when the amounts were earned or by the time of the bankruptcy.

6. The 2008 Equity Awards Program (the "2008 Program") to which the Deducted Commissions Claim relates applied to both "bonus eligible employees" and "production based employees". A copy of the 2008 Program was attached to the proof of claim and was also attached as part of Exhibit B to the Debtors' Omnibus Reply filed on December 15, 2011 (ECF No. 23470). This program was communicated to employees on July 2, 2008. As described in the 2008 Program, the award of CSAs for fiscal year 2008 consisted of a grants to be made on two separate dates: a) a grant

actually made on July 1, 2008; and b) a grant to be made at a date to be determined by the Compensation and Benefits Committee of the Board of Directors during the fourth quarter of 2008 ("2008 Year-End Award"). During the fiscal year, including pay periods prior to the announcement of the terms of the 2008 Program, amounts were deducted from Claimant's commission draw based on her annualized total compensation and the assumed total contingent stock equity award for fiscal year 2008. These deductions were made consistent with prior practice based on the assumption that a 2008 Year-End Award would be granted, as in prior fiscal years, but the Debtors' bankruptcy intervened.[1]

7. Unlike bonus eligible employees, production based employees such as Claimant had amounts deducted from their paychecks throughout the year as a means of accruing for the anticipated year end purchase of CSAs. No such deduction mechanism was needed for other types of employees because the Debtors simply withheld the amount need to purchase the awarded CSAs from their year end bonuses.

8. During the relevant payroll period, Claimant received a "Compensation Statement" (a redacted copy of which was attached to her proof of claim) that clearly demonstrates a deduction from her earned compensation in the amount of $71,156.25 during the 2008 fiscal year prior to the bankruptcy. Debtors do not dispute Claimant's factual assertion that, no CSAs or other property were exchanged for these amounts prior to the Petition Date... The essential allegations of the Deducted Commissions Claim are the withholding of earned compensation during the year and the Debtors' failure to deliver anything of value in exchange prior to the Petition Date. There is no

---

[1] On July 1, 2008, the Debtors did make a grant of some CSAs for a *portion* of the total 2008 award. .

dispute that CSAs were not granted for the 2008 Year-End Award. Thus, the Debtors have not refuted any of the allegations essential to the claim's legal sufficiency and the burden of persuasion has not shifted to the Claimant. If necessary, Claimant is prepared to further prove these elements at trial with testimony and other evidence.[2]

9. Had the 2008 Year-End Award occurred, the employee would have received a number of CSAs based on the total compensation amounts withheld *during the year* and the price of LBHI common stock *at the time of grant* – not at the time that amounts were deducted. Although CSAs would presumably have been granted to Claimant in December 2008 had there not been a chapter 11 filing and had the Board not otherwise decided in its exercise of duties to make other changes, the relevant grant never occurred.[3] In fact, hypothetically, had CSAs been delivered in December 2008, under the mechanics of 2008 Program, Claimant would have received – not a fixed number of CSAs whose value would fluctuate throughout the year prior to grant – but, rather, a number of CSAs to be calculated based on the compensation amounts previously withheld and the price of LBHI stock on the date of the grant.[4] Thus, with respect to the 2008 Year-End Award, because the grant never occurred, Claimant could not and did not bear any common stock holder risk nor enjoy any benefit from the depreciation or appreciation of LBHI stock prior to grant date. The actual failure to

---

[2] The Debtors assert that "[b]ased on the Debtors' review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with the Equity Award." ¶ 26. However, Claimant is not seeking amounts held in escrow, constructive trust, or otherwise. The claim is for compensation earned in 2008, but not paid in any form by the time of the bankruptcy. .

[3] The Debtors made material changes to their 2008 Program from prior years based on market conditions in July 2008 and they could have made further changes based on market conditions during the fourth quarter of 2008. The important point is that until a CSA is actually granted, the terms are subject to revision and if circumstances warranted (such as, for example, a change of control transaction), the 2008 Year-End Award could have been eliminated completely.

[4] Presumably, Debtors did not issue the CSAs following the Petition Date, because, among other reasons, the 2008 Program would not be capable of assumption by reason of section 365(c)(2) of the Bankruptcy Code.

5

US 881617v.1

deliver CSAs, or for that matter any form of property, is decisive and distinguishes the Deducted Commissions Claim from other claims based on equity awards, such as the CSA Claim, even if Debtors' objection to the CSA Claim is valid..

10. The Debtors are trying to have their cake and eat it too. The Debtors cannot assert both (i) that for claims arising from withheld compensation in which CSAs *were actually granted* (the CSA Claim), the claim should be treated as an equity security because of certain common stock characteristic of a Contingent Stock Award, such as the owner bearing the benefits and risks of stock ownership, and (ii) that for claims arising from withheld compensation for which CSAs *were never granted* because of an intervening bankruptcy (the Deducted Commissions Claim), the claim should also be treated as an equity security. Simply put, for compensation withheld in the nine months prior to bankruptcy, where CSAs were never granted, the employees had neither the benefits nor risk associated with equity ownership for the deducted amounts, and there can be no equitable or policy argument that these claimants should be treated as an equity security holder. The only risk that Claimant faced in respect of this unpaid 2008 compensation was the possible insolvency of the Debtors during the fiscal year, and for that reason she seeks to be treated the same as other unsecured creditors of the Debtors for the Deducted Commissions Claim.

US 881617v.1

11. Claimant preserves and reserves all other rights with respect to the CSA Claim and the Deducted Commissions Claim and the right to make additional or supplemental arguments in connection therewith or at any future hearings.

Dated: February 13, 2012



Linda Ludwig

15 Belvedere Drive

Livingston, New Jersey 07039

973-699-2995

<u>With a copy to :</u>

Arnold J. Ludwig

26 Court Street Suite 400

Brooklyn, New York

718-855-9122

7

US 881617v.1