**HEARING DATE AND TIME: March 22, 2012, at 10:00 a.m. (Eastern Time)**

**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
John Kibler

*Counsel to HSH Nordbank AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X
                                                                     :
In re:                                                               :    Chapter 11
                                                                     :
LEHMAN BROTHERS HOLDINGS INC. *et al.*                               :    Case No. 08-13555 (JMP)
                                                                     :
                                                                     :    (Jointly Administered)
                                                    Debtors.         :
                                                                     :
---------------------------------------------------------------------X

**RESPONSE OF HSH NORDBANK AG TO**
**DEBTORS' TWO HUNDRED FORTY-SIXTH OMNIBUS**
**OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

HSH Nordbank AG ("**HSHN**"), by and through its undersigned counsel, hereby submits this response (the "**Response**") to the Debtors' *Two-Hundred Forty-Sixth Omnibus Objection to Claims (Valued Derivative Claims)* dated December 12, 2011 (the "**Objection**"). In support of the Response, HSHN respectfully states as follows:

## BACKGROUND

1.  Beginning on September 15, 2008 (the "**Petition Date**") and periodically thereafter, Lehman Brothers Holdings Inc. ("**LBHI**") and certain of its affiliates (collectively, the "**Debtors**") commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**Transactions With the Debtors**

2. HSHN and Lehman Brothers Commercial Corporation ("**LBCC**") entered into a series of transactions pursuant to a 1992 ISDA Master Agreement dated as of November 18, 2005 (as amended, supplemented, or otherwise modified from time to time, the "**Master Agreement**"), the Schedule to the Master Agreement (the "**Schedule**") and various related documents, (collectively with the Master Agreement and the Schedule, the "**Transaction Documents**"). All terms not otherwise defined herein shall have the meaning ascribed to them in the Transaction Documents.

3. LBHI served as Credit Support Provider under the Master Agreement and, further, guaranteed all amounts payable by LBCC to HSHN arising thereunder pursuant to a Guarantee dated November 18, 2005 and executed by LBHI in favor of HSHN (the "**Guarantee**"). In addition, pursuant to the Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the "**LBHI Board Resolution**"), LBHI guaranteed the payment of all liabilities, obligations, and commitments of LBCC.

4. On September 15, 2008, LBHI filed a voluntary petition for chapter 11 relief (the "**Bankruptcy Filing**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Bankruptcy Filing of LBHI constituted an Event of Default under section 5(a)(vii) of the Master Agreement. On September 15, 2008, HSHN acted in accordance with its contractual rights and gave notice to LBCC that an Event of Default had occurred and designated September 15, 2008 as the Early Termination Date in respect of all outstanding transactions under the Transaction Documents.

5. By reason of the foregoing, on September 15, 2008, all outstanding transactions (the "**Terminated Transactions**") between HSHN and LBCC under the Transaction Documents were terminated and the value of the Settlement Amount (including default interest) and any Unpaid Amounts were calculated as of that date.

6. On October 5, 2008, LBCC filed a voluntary petition for chapter 11 relief with the Bankruptcy Court.

7. By notice dated January 29, 2009, HSHN, (a) in accordance with Part 1(g) of the Schedule, notified LBCC that it selected United States Dollars as the Termination Currency, (b) advised LBCC that the calculation for each of the Terminated Transactions was either based upon Market Quotations, if available, or Loss if Market Quotations were unavailable, (c) in accordance with Section 6(d) of the Master Agreement, delivered to LBCC a Statement of the Payments on Early Termination (the "**Calculation Statement**"), notifying LBCC that the sum of the Settlement Amount and the Unpaid Amount due on the Early Termination Date was $5,586,780 and that the amount of interest accrued at the Default Rate from (and including) the Early Termination Date to (but excluding) the effective date of the notice, was $33,945 (d) notified LBCC that interest would continue to accrue until payment in full on the amounts due to HSHN, and (e) pursuant to Section 11 of the Master Agreement, notified LBCC that HSHN would be claiming its reasonable out-of-pocket expenses, including, without limitation, legal fees incurred by reason of the enforcement and protection of HSHN's rights under the Master Agreement or Guarantee.

8. Accordingly, as stated in the Calculation Statement, as of January 29, 2009, the amount due and payable to HSHN by the Debtor was comprised of the following (the "**Early Termination Amount**"):

| | |
|---|---|
| Settlement Amount | $ 5,586,780 |
| Interest (9/15/08 – 1/29/09) | $ 33,945 |
| TOTAL | $ 5,620,725 |

9. LBCC did not pay to HSHN the Early Termination Amount as it was required to do under the terms of the Transaction Documents and was thereby in default thereunder. As a result, LBCC was indebted to HSHN in the amount of not less than $5,620,725[1], plus other fees, costs, charges, expenses (including legal fees), and interest accrued and accruing, all as may be allowed under the Transaction Documents, or as permitted by operation of law, including without limitation, the Bankruptcy Code and other applicable law.

## HSHN's Proofs of Claim

10. On July 2, 2009, this Court entered an *Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (the "**Bar Date Order**").

11. Pursuant to the Bar Date Order, HSHN timely filed two proofs of claim on September 18, 2009, asserting (a) a direct claim against LBCC in the amount of USD $5,620,725 in respect of the obligations of LBCC under the Transaction Documents (the "**Direct Claim**") and (b) a guarantee claim against LBHI in the same amount pursuant to the Guarantee (the

---

[1] As stated in the January 29, 2009 notice to LBCC, interest is continuing to accrue until payment in full of the amounts due to HSHN.

4

"**Guarantee Claim**," and with the Direct Claim, the "**Claims**"). The Direct Claim and the Guarantee Claim were assigned proof of claim numbers 20234 and 20232, respectively, on the Debtors' official claims register.

12. In addition, on or about October 22, 2009, HSHN timely submitted a derivative questionnaire in support of the Direct Claim and a guarantee questionnaire in support of the Guarantee Claim, both accompanied by supporting documentation, to the Debtors' website at www.lehman-claims.com (the "**Questionnaires**").

## Transfer of the Claims

13. HSHN irrevocably transferred the Claims to Deutsche Bank AG, London Branch ("**Deutsche Bank**") as evidenced by the filling with the Bankruptcy Court of Evidence of Transfer of Claim forms in respect of both the Direct Claim and the Guarantee Claim on March 2, 2010 (Dkt. No. 7344). Deutsche Bank later irrevocably transferred the Claims to CVI GVF (Lux) Master S.a.r.l. ("**CVI**") as evidenced by the filling with the Bankruptcy Court of Evidence of Transfer of Claim forms in respect of both the Direct Claim and the Guarantee Claim on February 8, 2011 (Dkt. No. 14367). All transfers of the Claims were executed on a recourse basis and as a result HSHN retains the economic risk in the case that the value of the Claims is reduced. Thus, while CVI is the current owner of the Claims, CVI has consented to HSHN's request to file the Response in order to defend against any inappropriate reduction in the value of the Claims.

**The Debtors' Objection to the Claims**

14.     On December 12, 2012, the Debtors filed the Objection, in which the Debtors state that they have determined that the claims on Exhibit A of the Objection "should be reduced and allowed on the basis that the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records." Objection at ¶ 11. Accordingly, the Objection seeks to (a) reduce the value of the Direct Claim to $1,471,682.34 (a reduction of $4,149,042.66) and (b) reduce the value of the Guarantee Claim to $1,468,806.29 (a reduction of $4,151,918.71).

**ARGUMENT**

**The Debtors Do Not Provide Evidence to Rebut the Claim**

15.     The Debtors have failed their burden of proof to rebut the validity of the Claims. It is well settled that a properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  Further, "because a properly filed proof of claim is deemed allowed until objected to, 'such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case.'" *In re Adelphia Communs. Corp.*, 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007) (quoting *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987)).  A claimant only bears the burden of establishing the validity of its claim "'[o]nce an objectant offers sufficient evidence to overcome the prima facie validity of the claim.'" *Id*. (quoting *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)).  Such evidence must be "equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to

the claim's legal sufficiency.'" *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-4 (3d Cir. 1992)).

16. As filed, the Objection contains detailed descriptions of the efforts purportedly undertaken by the Debtors to review and value claims based on derivatives contracts, including the collection and analysis of pertinent information and the attempted initiation of discussions with the applicable counterparties. However, the Objection contains no actual evidence or discussion to support the Debtors' proposed reduction of the Claims. Instead, the Debtors do little more than recite their bare conclusion that based on "the fair, accurate and reasonable values" of the transactions under the Transaction Documents as determined by the Debtors, the value of the Claims should be reduced. This conclusory and unsupported rationale for seeking a reduction in the value of the Claims is all the more problematic in light of the unexplained $2,876.05 discrepancy between the modified values proposed by the Debtors for the Direct Claim and the Guarantee Claim, a result that seems anomalous in light of the fact that the Direct Claim and Guarantee Claim relate to precisely the same underlying liability of LBCC.

17. The Debtors have not provided any material information to support reduction of the Claims in either the Objection or through informal communications to HSHN. HSHN performed its calculations consistent with market practice, in a commercially reasonable manner, and in accordance with its rights under the Transaction Documents, as is fully set forth in the Claims and the Questionnaires. The Debtors' position is unsupported and fails to meet the evidentiary burden necessary to support an objection to the Claims.

18. Accordingly, the Objection should be denied with respect to the Claims based on the Debtors' failure to present any basis for the Objection sufficient to negate the *prima facie*

validity of the Claims.  To the extent that this Court does not overrule the Objection, HSHN reserves the right to (a) seek discovery from the Debtors as to their valuation of the Claims, (b) supplement or otherwise amend the Response to the Objection, and (c) request, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper value of the Claims.

## CONCLUSION

WHEREFORE, for the foregoing reasons, HSHN respectfully requests that this Court (a) deny the Debtors' Objection to the Claims, (b) allow the Claims in the amounts originally asserted therein, and (c) grant such further relief as this Court deems just and proper.

Dated: February 17, 2012
      New York, NY

                        ALLEN & OVERY LLP

                        By: /s/ John Kibler
                        John Kibler
                        1221 Avenue of the Americas
                        New York, New York 10020
                        Telephone (212) 610-6300
                        Facsimile (212) 610-6399
                        john.kibler@allenovery.com

                        *Counsel to HSH Nordbank AG.*