Hearing Date and Time: **February 22, 2012 at 10:00 a.m. (Prevailing Eastern Time)**

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                                        :
In re:                                  :    Chapter 11 Case No.
                                        :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**  :    08-13555 (JMP)
                                        :
                      Debtors.          :    (Jointly Administered)
                                        :
------------------------------------------------------------------ x

### STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF MOTION BY LEHMAN BROTHERS HOLDINGS INC. FOR AUTHORITY TO USE NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN

The Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the "Debtors") files this statement in support of LBHI's Motion for Authority to Use Non-Cash Assets in Lieu of Available Cash as Reserves for Disputed Claims Pursuant to Section 8.4 of the Debtors' Confirmed Joint Chapter 11 Plan (Docket No. 24726; the "Motion") and in response to certain objections interposed to the relief requested in the Motion (the "Objections").[1] In support of the Motion, the Committee respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the Debtors' Modified Third Amended Joint Chapter 11 Plan confirmed on December 6, 2011 (the "Plan").

**PRELIMINARY STATEMENT**

1.      The Committee supports the relief requested in the Motion as it reflects a mechanism by which holders of Allowed Claims will receive the maximum permissible distribution under the Plan, while protecting the rights of other claimants.  Against this backdrop, the sole consideration is whether granting this relief imposes on holders of Disputed Claims risks that are inappropriate under the facts and circumstances of these cases.  After careful consideration, the Committee has determined that the remote risk that Distributions to holders of Disputed Claims **may** be delayed is outweighed by the immediate benefit to the holders of Allowed Claims, many of whom have settled their substantial claims in the expectation of a meaningful Distribution early in 2012.

2.      When first presented with the Debtors' proposal to substitute a portion of the Cash reserves with Non-Cash Assets to enhance the initial Distributions to the holders of Allowed Claims, the Committee had reservations:  the Committee was concerned as to whether there would be sufficient Available Cash on subsequent Distribution Dates to satisfy the currently Disputed Claims to the extent they became Allowed Claims — to the obvious potential prejudice of the holders of such Claims.  However, after analyzing the relief sought in the Motion from both the legal and financial perspectives, the Committee ultimately came to believe that such relief is reasonable and appropriate under the circumstances and, accordingly, should be granted by the Court.

**STATEMENT**

3.      Section 8.4 of the Plan governs the establishment of reserves that LBHI, as the Plan Administrator, must maintain on account of Disputed Claims.  To ensure that there is adequate Available Cash to make Distributions to the holders of Disputed Claims once they

become Allowed (the "Subsequently Allowed Claims"), Section 8.4 requires the Plan Administrator to reserve, until all Disputed Claims have been resolved, an aggregate amount of Available Cash equal to the *pro rata* share of the Distributions that would have been made to each holder of a Disputed Claim if such Disputed Claim were an Allowed Claim.

4. Nevertheless, despite the allegations in certain of the Objections that the relief sought in the Motion is not contemplated in the Plan, Section 8.4 expressly permits the Plan Administrator, to the extent it determines, in its sole discretion, that the value of a Debtor's assets (other than such Debtor's Available Cash) exceeds the amount of Available Cash necessary to be retained, to request authority from the Court to release the excess Available Cash to the holders of Allowed Claims and use its Non-Cash Assets to fund a portion of the Disputed Claims reserves *in lieu* thereof. Thus, the Plan clearly contemplates this eventuality.[2]

5. Pursuant to this provision**,** LBHI, as the Plan Administrator, now requests the authority for each of the Participating Debtors to do just that, using Non-Cash Assets primarily consisting of commercial and residential real estate, commercial loans, private equity and principal investments, receivables from derivatives contracts and intercompany receivables. Through this substitution, LBHI endeavors to enhance the initial Distributions to the holders of Allowed Claims by freeing up additional Cash, while still providing adequate reserves for the Disputed Claims.

6. As a threshold matter, the relief requested by the Debtors should be granted because the benefits that will accrue to the holders of Allowed Claims from larger initial Distributions are substantial. First, all such holders will benefit from the time-value of money. Second, a large subset of these holders will be getting the full benefit of their bargain: one of the

---

[2] As to the details of LBHI's proposal, which, indeed, were not part of the Plan, all holders of Disputed Claims have the opportunity to evaluate them now, before they are approved by the Court.

3

primary incentives for the creditors who signed Plan Support Agreements and had asserted approximately $450 billion of claims to forgo litigating those claims and agree to potentially smaller Allowed Claims was the prospect of a meaningful Distribution promptly after the Plan's effectiveness. In fact, all of the Debtors' creditors will potentially benefit from the proposed relief: larger initial Distributions will yield comparably larger Catch-Up Distributions, thereby ensuring that the current holders of both Allowed and Disputed Claims receive larger Distributions on their Allowed Claims sooner than later.

7. The Committee acknowledges the dearth of precedent for the relief the Debtors seek. Other chapter 11 plans have provided for the funding of disputed claims reserves with both cash and non-cash assets, but such plans also provided for distributions in kind.[3] Under such circumstances, because portions of the distributions themselves were to be in the form of non-cash assets, there was less concern regarding potential prejudice to the holders of disputed claims. Here, by contrast, where no distributions in kind are currently contemplated, the Committee believes that it is imperative to ensure that the interests of the holders of the Subsequently Allowed Claims to future *Cash* Distributions are adequately protected. Having reviewed and analyzed the relief requested in the Motion and consulted with its financial advisors, the Committee has concluded that the protections built into the Debtors' proposal are adequate and ensure that any risk of prejudice to the Debtors' creditors is remote.

8. Specifically, LBHI has proposed various safeguards for the grant of authority it is seeking, such as, *e.g.*, conditioning such authority on the requirement that each

---

[3] See, e.g., In re Refco Inc., Case No. 05-60006 (RDD) (Docket No. 3948, § 6.5(b)(ii)) (Bankr. S.D.N.Y. Dec. 15, 2006) (disputed claims reserve funded by cash and litigation trust interests; holders of allowed claims received both cash and litigation trust interests); In re Enron Creditors Recovery Corp., et al., Case No. 01-16034 (ALG) (Docket No. 19759, Ex. A, § 21.3) (Bankr. S.D.N.Y. July 15, 2004) (disputed claims reserve funded by cash, plan securities and various trust interests; holders of allowed claims received both cash and such non-cash assets).

4

Participating Debtor maintain a certain Minimum Cash Reserve and a certain Minimum Asset-to-Reserve Ratio. Furthermore, LBHI's proposal envisions a priority scheme for subsequent Distributions that should provide additional protection: the Minimum Cash Reserve and any additional Available Cash generated from Non-Cash Assets will be available for distribution, first, to the holders of Disputed Claims as Catch-Up Distributions, second, to fund a Minimum Cash Reserve for outstanding Disputed Claims and, third, to fund a subsequent Distribution to all holders of Allowed Claims.[4]

        9.      Furthermore, although LBHI, in its sole discretion, may establish additional minimum conditions, including satisfaction of a higher ratio of Non-Cash Assets to Reserve Amount than the Minimum Asset-to-Reserve Ratio and the retention of Available Cash greater than the Minimum Cash Reserve, due notice to the holders of Disputed Claims and the Court's approval is required if LBHI ever seeks to reduce the minimum terms and conditions proposed in the Motion.

        10.     Most significantly, the Committee's advisors have analyzed all the variables that will impact the sufficiency of Available Cash to cover the Subsequently Allowed Claims and to fund the Minimum Cash Reserve and Catch-Up Distributions and concluded, based upon all currently available information, that there is no risk of there not being enough Available Cash to pay to all holders of Disputed Claims the amounts in which such claims are ultimately Allowed, and the risk of a potential delay as to their Distributions appears unlikely at this juncture. In connection with this analysis, the Committee's advisors, working in tandem with the Debtors, have looked at, among other things: (i) the outstanding Disputed Claims and the Debtors' projections of the amounts in which such Claims may be Allowed; (ii) the value of

---

[4]     In addition, the holders of Disputed Claims will continue to be entitled to the accrual of the interest that would have been earned on the entire amount of the reserves as if they consisted entirely of Cash.

5

the Participating Debtors' Non-Cash Assets; (iii) the estimated costs of post-Effective Date administration of the Participating Debtors' estates; and (iv) near-term Cash events that are expected to generate Cash from Non-Cash Assets.

11. The Committee has also taken into consideration the fact that the Plan Administrator may establish additional minimum conditions, such as a Minimum Cash Reserve in excess of 25% or a Minimum Asset-to-Reserve Ratio greater than 2.5:1, which would reduce the Distribution of Available Cash to holders of Allowed Claims, but provide greater assurance to the holders of Disputed Claims as to the availability of Cash on future Distribution Dates.

12. Some of the Objections suggest that the proposed mechanism provides for disparate treatment of Allowed and Subsequently Allowed Claims and, thus, results in a violation of section 1123(a)(4) of the Bankruptcy Code. However, in light of the very significant "cushion" that is being provided for the protection of the holders of Disputed Claims, the Committee believes, based upon all currently available information, that the only risk is that there may be a delay in the ultimate Distributions to the holders of the Subsequently Allowed Claims. However, a delay in distribution does not constitute a violation of section 1123(a)(4) of the Bankruptcy Code. See, e.g., In re New Power Co., 438 F.3d 1113, 1122-23 (11th Cir. 2006) (holding that "delay in receipt of distributions for disputed claims does not alone constitute unequal treatment").

13. Based on this analysis, as well as all the other considerations and grounds set forth in the Motion and the Cohn Declaration,[5] the Committee believes that any residual risk that there may be a delay in the holders of the Subsequently Allowed Claims receiving the

---

[5] Declaration Of Steven J. Cohn In Support Of Motion Of Lehman Brothers Holdings Inc. For Authority To Use Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims Pursuant To Section 8.4 Of The Debtors' Confirmed Joint Chapter 11 Plan, dated February 15, 2012 (Docket No. 25393).

entirety of their Catch-Up Distributions is remote and is outweighed by the substantial benefits to the holders of Allowed Claims.

## CONCLUSION

For all the reasons set forth herein and in the Motion, the Committee respectfully requests that the Court grant the relief requested in the Motion, and grant such other relief as is just.

Dated:   New York, New York
         February 17, 2012

        **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

        By: /s/  Dennis F. Dunne
        Dennis F. Dunne
        Evan R. Fleck
        Dennis C. O'Donnell
        1 Chase Manhattan Plaza
        New York, NY 10005
        Telephone:  (212) 530-5000

        Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.