**Hearing Date and Time: March 21, 2012 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: March 14, 2012 at 4:00 p.m. (Prevailing Eastern Time)**

James P. Seery
Bradford A. Berenson (*pro hac vice* pending)
Alex R. Rovira
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212)839-5300
Fax: (212)839-5599

*Counsel for Principal Life Insurance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
                                                            :  Chapter 11
                                                            :
In re:                                                      :
                                                            :  Case No. 08-13555 (JMP)
Lehman Brothers Holdings Inc., *et al.*,                    :
                                                            :  (Jointly Administered)
                                        Debtors,            :
                                                            :
                                                            :
------------------------------------------------------------X

## MOTION FOR AN ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE SETOFF AND (II) ALLOWING PRINCIPAL LIFE'S NET CLAIMS

Principal Life Insurance Company ("Principal Life"), by and through its undersigned counsel, submits this motion (the "Motion") for an order (i) granting Principal Life relief from the automatic stay (to the extent necessary) pursuant to sections 362(d) and 553 of title 11 of the United States Code (the "Bankruptcy Code") to permit Principal Life to exercise its right of setoff against mutual obligations between Principal Life and Lehman Brothers Special Financing Inc. ("LBSF") now that the amounts of such mutual obligations are agreed to between the parties and (ii) allowing Principal Life's net claim against LBSF as a Class 4A claim and against Lehman Brothers Holdings, Inc. ("LBHI") as a Class 9A claim. The facts and circumstances referenced in this Motion are set forth in detail in the concurrently filed

declaration of Debra S. Epp (the "Epp Declaration"), which is fully incorporated herein by

reference.  In further support of the Motion, Principal Life represents:

## PRELIMINARY STATEMENT

1.       There is no real dispute underlying this Motion.  There is no dispute as to

the validity or  amount  of the debts owed between the parties.  There is no dispute that the debts

are mutual.  There is no dispute that the mutual debts create a right of setoff and that Principal

Life is a net creditor of the Debtors.  In December 2011, the parties finally reached agreement

that (i) LBSF owes Principal Life the amount of $34,163,288 and (ii) Principal Life owes LBSF

in the amount of $13,637,229, giving Principal Life a net Class 4A claim against LBSF of

$20,526,059 guaranteed by LBHI and constituting a $20,526,059 Class 9A claim against LBHI.

2.       Not content to do the arithmetic and stipulate a net claim after exercise of

Principal Life's valid right of setoff, LBSF throws out the unsupportable position that Principal

Life inadvertently waived its right of setoff during the calculation and reconciliation discussions,

and the absurd position that Principal Life must pay tribute to LBSF to resolve its claims.

Neither the facts nor the law can support the Debtors abuse of its position.

3.       Principal Life first gave notice to LBSF of its calculation of the amounts

owed to it and the amounts owed by it to LBSF in September of 2008.  Since then, Principal Life

continuously, openly asserted and protected its right of setoff.  The Debtors did not dispute

Principal Life's valid right of setoff, but instead disputed the amounts to be setoff by Principal

Life.  To resolve that dispute, Principal Life worked diligently and in good faith with the Debtors

to reconcile and calculate the amounts owing between LBSF and Principal Life.  In December

2011, LBSF finally completed its claim reconciliation and calculation process, and agreed to the

amounts of the mutual debts.

NY1 7681924

4.     The parties now agree on what LBSF owes to Principal Life and the lesser amount that Principal Life owes to LBSF.  It is time to approve the setoff by Principal Life of the amounts it owes against the amount it is owed and to fix and allow Principal Life's claim for $20,526,059 as a Class 4A claim against LBSF and a Class 9A claim against LBHI.

5.     The relief requested herein is appropriate because Principal Life has a valid right of setoff under contract and under the laws of New York which meet the requirements of, and have been preserved by, section 553 of the Bankruptcy Code.  The parties agree on the mutuality of the obligations and their amounts.  Accordingly, for the reasons set forth herein, Principal Life respectfully requests an order from this Court (i) finding that Principal Life has valid rights of setoff which meet the requirements of and have been preserved in these chapter 11 cases pursuant to section 553 of the Bankruptcy Code, (ii) granting relief from the automatic stay to the extent necessary to permit Principal Life to exercise its right of setoff against the mutual obligations between Principal Life and LBSF, and (iii) allowing Principal Life's net claim against LBSF as a Class 4A claim and against LBHI as a Class 9A claim.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicate for the relief sought in this Motion is sections 362 and 553(a) of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1.

## RELEVANT BACKGROUND

(i)     *Principal Life's Claim against LBSF*

7.     On December 15, 2005, Coral Commercial Paper Trust (the "Issuer"), a special purpose entity sponsored by LBSF, issued a series of commercial paper notes ("Coral

3

Trust Series 1") in an aggregate principal amount of $150,418,366.00 consisting of 12 individual tranches, sequentially identified as Tranches "A" through "L".

8.      On September 25, 2007, the Issuer issued a second series of commercial paper notes (the "Coral Trust Series 2", and together with Coral Trust Series 1, the "Coral CP Notes") in an aggregate principal amount of $576,371,872.00 consisting of 11 individual tranches, sequentially identified as Tranches "M" through "W".

9.      The Coral CP Notes were backed by funding agreements (individually, a "Funding Agreement", and collectively, the "Funding Agreements") entered into between Principal Life and the Issuer.  In connection with the Funding Agreements and the issuance of the Coral CP Notes, LBSF and Principal Life entered into reimbursement agreements dated December 15, 2005 and September 25, 2007 (collectively, the "Reimbursement Agreements").  See Epp Declaration Exhibits 1 and 2.  Paragraph 2 of the Reimbursement Agreements provides, among other things, that if the Issuer makes an early withdrawal under any Funding Agreement ("Early Withdrawal") for any reason, then

> **LBSF shall pay Principal Life**: on the Upfront Payment Date (as defined below), an amount equal to the sum of (i) the product of (x) the aggregate outstanding principal amount of the Funding Agreement(s) that has been withdrawn in respect of such Early withdrawal (the "Original Reduction Amount") and (y) the Applicable Percentage (the "Upfront Termination Amount"); and (ii) the net present value (as determined on the basis of the prevailing LIBOR swap curve as of the Early Withdrawal Date) of an annual fee based on 0.40% per annum on the Original Reduction Amount as amortized on the basis of the expected amortization assumptions under the Expected Amortization Schedule as if such annual fee were payable on each anniversary of such Early Withdrawal Date until the final date set forth in the Expected Amortization Schedule (as defined below)(*emphasis added*).

10.      LBSF's obligations to Principal Life under the Reimbursement Agreements were also guaranteed by LBHI pursuant to guarantee agreements dated December

15, 2005 and September 25, 2007 (the "Guaranty Agreements").  See Epp Declaration Exhibits 3 and 4.

11.     On various dates from October 1, 2008 through February 17, 2009, the Issuer made an Early Withdrawal under the Funding Agreements.  The Early Withdrawals resulted in liquidated amounts being owed by LBSF to Principal Life under Paragraph 2 of the prepetition Reimbursement Agreements.  Principal Life asserted a claim against LBSF on account of the resulting liquidated amounts under Paragraph 2 of the prepetition Reimbursement Agreements in an amount of $34,162,715.  After discussions between LBSF and Principal Life, LBSF confirmed its agreement to the adjusted aggregate claim amount of $34,163,288 owed by LBSF to Principal Life under the Reimbursement Agreements, and by LBHI under the Guaranty Agreements, a total claim which is higher than the original proof of claim file by Principal Life in the amount of $34,162,175.

(ii)     *LBSF's Claim Against Principal Life*

12.     On June 30, 2004, LBSF and Principal Life entered into an ISDA Master Agreement (as amended, supplemented or otherwise modified from time to time, and including all schedules, exhibits, confirmations and any related agreements, including the credit support annex and guaranty (collectively, the "ISDA Master Agreement").  See Epp Declaration Exhibit 7.  Pursuant to the ISDA Master Agreement, from time to time, LBSF and Principal Life entered into various swap transactions including, interest rate swaps, currency swaps and credit default swaps.

13.     On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of the Bankruptcy Code commencing its chapter 11 bankruptcy case.

14.     On September 16, 2008, pursuant to the terms of the ISDA Master Agreement, Principal Life delivered to LBSF a notice (the "Default Notice") of an event of

default under section 5(a)(vii) of the ISDA Master Agreement due to the commencement of

bankruptcy proceedings on September 15, 2008 by LBHI, the Credit Support Provider under the

ISDA Master Agreement. See Epp Declaration Exhibit 8.  Pursuant to the terms of the ISDA

Master Agreement, Principal Life exercised its right to terminate the swap transactions

thereunder with LBSF by designating September 16, 2008 as the Early Termination Date (as

defined in the ISDA Master Agreement).

15.    Subsequently, on September 19, 2008, Principal Life delivered to LBSF a

notice of its damage calculation arising from the early termination of the ISDA Master

Agreement (the "Initial Calculation Notice").  See Epp Declaration Exhibit 9.  The Initial

Calculation Notice provided that pursuant to the ISDA Master Agreement, Principal Life owed

LBSF, on account of the settlement amounts for the termination of the transactions thereunder,

the amount of $4,986,767.54, calculated as follows:

| | |
|---|---|
| Payment on early termination owed by Principal Life to LBSF pursuant to Section 6(e) of the Master Agreement: | $47,541,527.00 |
| Minus Collateral **pledged by Principal Life and held by LBSF**: | $42,554,759.46 |
| Initial Calculation of Amount owed by Principal Life to LBSF: | $4,986,767.54 |

16.    The Initial Calculation Notice also provided to LBSF notice of Principal

Life's right of setoff pursuant to Section 6(f) of the ISDA Master Agreement, as amended by

Part 5(a) of the Schedule to the ISDA Master Agreement, and the calculation of such setoff, as

follows:

| | |
|---|---|
| The Principal Life Claim against LBSF in connection with the Reimbursement Agreements: | $31,781,578.33 |
| Minus the ISDA Master Agreement termination amounts owed by Principal Life to LBSF: | $4,986,767.54 |

6

Initial Calculation of Remaining Principal Life Claim against
LBSF in connection with the Reimbursement Agreements:          $26,794,810.79

17.    On October 3, 2008, LBSF filed a voluntary petition under chapter 11 of
the Bankruptcy Code commencing its chapter 11 bankruptcy case.

(iii)    *Establishment of Termination and Settlement Procedures*

18.    On December 16, 2008, this Court entered an order establishing
termination and settlement procedures (the "Termination and Settlement Procedures") for the
termination of derivative contracts [Docket No. 2257] (the "December Order").  The
Termination and Settlement Procedures expressly allowed the Debtors to enter into and
consummate  termination agreements with derivative counterparties to resolve and fix claims
between the applicable Debtor and the counterparty (including by allowing claims against such
Debtor), and such amounts may incorporate setoff or recoupment solely to the extent that such
setoff or recoupment is legally valid.  See December Order, at pp. 8.

(iv)    *Amended Calculation Notice under the ISDA Master Agreement*

19.    In accordance with the Termination and Settlement Procedures outlined in
the December Order, in May 2009, the parties commenced discussions in order to reconcile
amounts owing under the ISDA Master Agreement.  During this initial stage of the claim
reconciliation process, it was determined that two of the trades included on Principal Life's
Initial Calculation Statement were instead transacted with Lehman Brothers International
(Europe) ("LBIE") and  were therefore improperly included on the Initial Calculation Statement.
In addition to subtracting these two trades from the Initial Calculation Statement and directing
that they be re-booked as LBIE trades, Principal Life also determined that certain amounts owed
under the outstanding transactions just prior to the termination date had been improperly omitted
from Principal Life's initial calculations.  Accordingly, on September 1, 2009, Principal Life

7

amended its Initial Calculation Notice (the "Amended Calculation Notice", and together with the Initial Calculation Notice, the "Calculation Notices") and delivered it to LBSF. See Epp Declaration Exhibit 10. The Amended Calculation Notice amended the initial termination settlement calculation and proposed setoff calculation. The Amended Calculation Notice reflects Principal Life's calculation of the termination amount of $11,632,107.54 owed by Principal Life to LBSF under the ISDA Master Agreement (the "LBSF Claim"). The Amended Calculation Notice laid out the following calculation:

| | |
|---|---|
| Payment on early termination owed by Principal Life to LBSF pursuant to Section 6(e) of the Master Agreement: | $54,186,867.00 |
| Minus Collateral **pledged by Principal Life** and held by LBSF: | $42,554,759.46 |
| Amount owed by Principal Life to LBSF under the ISDA Master Agreement: | $11,632,107.54 |

20.     The Amended Calculation Notice also provided LBSF notice of Principal Life's right of setoff and the proposed calculation of such setoff and net amounts owed to Principal Life, as follows:

| | |
|---|---|
| Principal Life Claim against LBSF in connection with the Reimbursement Agreements: | $34,162,715.00 |
| Minus the LBSF Claim owed by Principal Life to LBSF ISDA Master Agreement Settlement Amount: | $11,632,107.54 |
| Remaining Principal Life Claim against LBSF: | $22,530,607.46 |

(v)     *Principal Life Files its Proofs of Claims In Connection with the Reimbursement Agreements and Guaranty Agreements*

21.     On September 22, 2009, in compliance with this Court's order establishing September 22, 2009 as the deadline (the "Bar Date") for filing proofs of claims against the Debtors [Docket No. 4871] (the "Bar Date Order"), Principal Life filed a proof of claim against LBSF reflecting the amounts owed by LBSF to Principal Life under the Reimbursement

8

Agreements in the total amount of $34,162,715 plus contingent and/or unliquidated claims, including, all reasonable costs, fees and expenses (the "PL LBSF Claim").  See Epp Declaration Exhibit 5.  On the face of the proof of claim form, Principal Life checked box 4 indicating that the claim was a secured claim, and described the nature of the secured claim based on a right of setoff.  Principal Life also described its setoff right on the face of the proof of claims on account of "Termination Amounts under ISDA dated June 30, 2005; See Exhibit A" and set forth on the face of the proof of claim the amount of the secured claim as $11,632,107.54 and the amount of the unsecured claim as $22,530,607.46.  See id.  In addition, Principal Life attached a narrative schedule that described the basis and nature of its claim as well as its right of setoff under the ISDA Master Agreement and the Bankruptcy Code, reserved its setoff right, and asserted the claims as secured claims to the extent of such right of setoff.  See id.

22.     Principal Life also filed a proof of claim against LBHI on account of the Guaranty Agreements which guaranteed the obligations of LBSF's to Principal Life under the Reimbursement Agreements (the "PL LBHI Claim", and together with the PL LBSF Claim, the "Principal Life Claims").  See Epp Declaration Exhibit 6.  The narrative schedule attached to the PL LBHI Claim described the basis and nature of its claim against LBHI as well as its right of setoff under the ISDA Master Agreement and the Bankruptcy Code, reserved its setoff right, and asserted the claims as secured claims to the extent of such right of setoff.  See id.

(vi)     *The Parties Agree on the Amounts of the Mutual Obligations*

23.     Since the submission of its Calculation Notices and Proofs of Claim, Principal Life has worked diligently and in good faith with the Debtors to reconcile and calculate the amounts owed by Principal Life to LBSF under the ISDA Master Agreement.  Concurrently, Principal Life also worked diligently and in good faith with LBSF to reconcile and determine the amounts owed by LBSF to Principal Life under the Reimbursement Agreements.  Finally, in

9

NY1 7681924

December 2011, the parties reached agreement on the amounts of the mutual debts owing

between them under the Reimbursement Agreements and the ISDA Master Agreement as

follows:

| | |
|---|---|
| Agreed Amount LBSF owes Principal Life under the Reimbursement Agreements: | $34,163,288 |
| Agreed Amount Principal Life owes LBSF under the ISDA Master Agreement: | $13,637,229 |
| Net claim in favor of Principal Life in the amount of: | $20,526,059 |

*(vii)    Reservation of Setoff Rights under the Debtors' Confirmed Plan*

24.    On January 25, 2011, the Debtors filed their First Amended Joint Chapter

11 Plan, which was subsequently amended from time to time, and confirmed by this Court on

December 6, 2011 (the "Confirmed Plan").  Prior to the confirmation of the Confirmed Plan,

counsel for Principal Life negotiated with counsel for the Debtors the inclusion in the Confirmed

Plan and confirmation order of a provision preserving creditors' rights of setoff.  See Confirmed

Plan, §13.10 and the Confirmation Order ¶57.

**RELIEF REQUESTED**

25.    Since the commencement of these chapter 11 cases, Principal Life

continuously asserted and gave notice to the Debtors of its right of setoff under the ISDA Master

Agreement, New York law and the Bankruptcy Code.  Throughout these chapter 11 cases, LBSF

and Principal Life have continued to exchange information in good faith in order to reconcile the

amounts owing to each other under the Reimbursement Agreements and the ISDA Master

Agreement.  As illustrated in the chart above, the fruit of such good faith negotiations and

reconciliation efforts is that LBSF and Principal Life reached agreement that the amount owing

10

by LBSF to Principal Life under the Reimbursement Agreements is $34,163,288 and the amount

owing by Principal Life to LBSF under the ISDA Master Agreement is $13,637,229, for a net

claim in favor of Principal Life and against LBSF in the amount of $20,526,059.  However, not

content to reach agreement to include Principal Life's valid right of setoff on the agreed upon

calculations, LBSF now claims that Principal Life some how inadvertently waived its right of

setoff during the calculation and reconciliation discussions.

26.    By this Motion, for the reasons set forth herein, Principal Life respectfully

requests an order from this Court (i) finding that Principal Life has valid rights of setoff under

the ISDA Master Agreement and New York law which have been preserved in these chapter 11

cases pursuant to section 553 of the Bankruptcy Code; (ii) granting relief from the automatic stay

to permit Principal Life to exercise its right of setoff against the mutual obligations by setting off

the amount it owes to LBSF in the amount of $13,637,229 against the amount LBSF owes to

Principal Life in the amount of $34,163,288, resulting in an allowed claim against LBSF in the

amount of $20,526,059; and (iii) allowing Principal Life's net claim in the amount of

$20,526,059 as a Class 4A claim against LBSF and a Class 9A claim against LBHI.

## BASIS FOR RELIEF REQUESTED

**A.    Principal Life has a Valid Right of Setoff Preserved Pursuant to Section 553 of the
Bankruptcy Code**

27.    The right of setoff has long been recognized under the Bankruptcy Code

and by the courts in this Circuit.  See In the Matter of The Bohack Corp., 599 F.2d 1160, 1164-

65 (2d. Cir. 1979) (recognizing that "[t]he doctrine of setoff has long occupied a favored position

in our history of jurisprudence.").  In general, the right of setoff "allows entities that owe each

other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of

making A pay B when B owes A.'"  Citizens Bank of Maryland v Strumpf, 516 U.S. 16, 18 116

S.Ct. 286, 133 L.Ed.2d 258 (1995) (quoting <u>Studley v Boyleston Nat. Bank</u>, 229 U.S. 523, 33

S.Ct. 806, 57 L.Ed. 1313 (1913)).

28.    While the Bankruptcy Code does not create an independent right of setoff,

section 553 of the Bankruptcy Code preserves any existing right of setoff under applicable non-

bankruptcy law.  <u>See</u> 11 U.S.C. § 553(a); <u>see also</u> <u>Strumpf</u>, 116 U.S. at 289; <u>In re Westchester

Structures, Inc.</u>, 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995); <u>Breeden v. Manufacturers and

Traders Trust Co. (In re Bennett Funding Group.)</u>, 146 F.3d 136, 138-39 (2d Cir. 1998).

29.    Here, the applicable non-bankruptcy law is New York law since both the

Reimbursement Agreements and ISDA Master Agreement provide that New York law governs

the transactions.  Thus, the initial issue is whether the setoff provisions contained in the ISDA

Master Agreement are valid and enforceable under New York law.

30.    Under New York law sophisticated parties are entitled to agree to

whatever they choose, as long as the resulting contract is not contrary to law or public policy.

<u>See</u> <u>New England Mut. Life Ins. Co. v. Caruso</u>, 535 N.E.2d 270, 273 (N.Y. 1989).  Indeed, New

York law has consistently recognized parties' right to create contractual rights of setoff.  <u>See,

e.g.</u>, <u>Bank of  N.Y. v. Meridien BIAO Bank Tanz. Ltd.</u>, No. 95 Civ. 4856, 1997 WL 53172, at *2

(S.D.N.Y. Feb. 10, 1997) (noting that in addition to statutory and common law rights of setoff in

New York, New York recognizes a contractual right of setoff).  Section 6(f) of the ISDA Master

Agreement, as amended by Part 5(a) of the Schedule to the ISDA Master Agreement, provides

Principal Life with a contractual right to setoff amounts it owes to LBSF under the ISDA Master

Agreement against amounts LBSF owes to Principal Life under any other agreement such as the

Reimbursement Agreements.[1]  Accordingly, under New York law, the ISDA Setoff Provision is

---

[1] Specifically, Section 6(f) of the ISDA Master Agreement, as amended by Part 5(a) of the Schedule to the ISDA
Master Agreement, provides, in pertinent part, that "[a]ny amount (the 'Early Termination Amount') payable to one

valid and enforceable.  Moreover, upon information and belief, the Debtors have not asserted

that the ISDA Setoff Provision under the ISDA Master Agreement is invalid or unenforceable

under New York law (or any other law).  Indeed, there can be no serious argument that the ISDA

Setoff Provision is not valid and enforceable in accordance with New York law.

      31.     In addition, New York law has long recognized a common law right of

setoff.  See In re Bennett Funding Group., 146 F.3d at 138-39 (citing Straus v. Tradesmen's Nat'l

Bank, 122 N.Y. 379 (N.Y. 1890)).  Under New York common law, to offset debts, they must be

mutual.  See In re Westchester Structures, Inc., 181 B.R. at 740-41 (citing Beecher v. Petier A.

Vogt Mfg., 227 N.Y. 468, 473 (1920)).  "New York Law finds debts are mutual when they are

due to and from the same persons in the same capacity."  Id. at 740-41.

      32.     Section 553 of the Bankruptcy Code  expressly recognizes and preserves

the rights of a creditor seeking setoff against a debtor in bankruptcy.  See In re SemCrude, L.P.,

399 B.R. 388, 393 (Bankr. Del. 2009) (citing Packaging Indus. Group Inc. v. Dennison Mfg. Co.

Inc., 192 B.R. 41, 45 (N.D.N.Y. 1996).  Specifically, section 553(a) of the Bankruptcy Code

provides, in pertinent part, as follows:

> This title [the Bankruptcy Code] does not affect any right of a creditor to
> offset a mutual debt owing by such creditor to the debtor that arose before
> the commencement of the case under this title against a claim of such
> creditor against the debtor that arose before the commencement of the
> case.

11 U.S.C. § 553(a).

---

party (the Payee) by the other party (the Payer) under Section 6(e), in circumstances where there is a Defaulting
Party … will, at the option of the party ('X') other than the Defaulting Party … (and without prior notice to the
Defaulting Party …), be reduced by its set-off against any amount(s) (the 'Other Agreement Amount') payable
(whether at such time or in the future or upon the occurrence of a contingency) by the Payee to the Payer
(irrespective of the currency, place of payment or booking office of the obligation) under any other agreement(s)
between the Payee and the Payer or instrument(s) or undertaking(s) issued or executed by one party to, or in favor
of, the other party (and the Other Agreement Amount will be discharged promptly and in all respects to the extent it
is so set-off)" (the "ISDA Setoff Provision").

33.     A creditor's right of setoff under New York law is therefore preserved under section 553(a) of the Bankruptcy Code when the followings conditions exist: (i) the amount owed by the debtor must be a prepetition debt; (ii) the debtor's claim against the creditor must also be prepetition; and (iii) the debtor's claim against the creditor and the debt owed to the creditor must be mutual.  See In re Ionosphere Clubs, Inc., 164 B.R. 839, 841 (Bankr. S.D.N.Y. 1994); see also 5 Lawrence P. King, Collier on Bankruptcy ¶ 553.01[2] (15th ed. Rev.).

34.     The first and second requirements under section 553(a) of the Bankruptcy Code – that the amount owed by LBSF is a prepetition debt and that LBSF's claim against Principal Life is also prepetition – are satisfied here.  For purposes of setoff, the "debt" owed by a debtor arises when all transactions necessary for liability have occurred, "regardless of whether the claim was contingent when the claim was filed."  In re BOUSA Inc. f/k/a Bulk Oil (USA) Inc. (In re BOUSA), 2006 WL 2864964, *3 (Bankr. S.D.N.Y. Sept. 29, 2006) (citing United States v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993)).  Here, all of the transactions necessary for LBSF to be liable to Principal Life under the Reimbursement Agreements occurred prepetition. As noted above, LBSF entered into the Reimbursement Agreements with Principal Life on December 15, 2005 and September 25, 2007, respectfully.  As of those prepetition dates, all of the transactions necessary for LBSF to be liable under the Reimbursement Agreements were completed.  Upon information and belief, LBSF does not dispute the validity of the prepetition debt it owes to Principal Life under the Reimbursement Agreements and has agreed that the prepetition debt owed by LBSF to Principal Life is $34,163,288.

35.     LBSF's Claim against Principal Life also arose prepetition because all of the transactions necessary for Principal Life to be liable to LBSF under the ISDA Master Agreement occurred prepetition.  Specifically, Principal Life and LBSF entered into the ISDA

Master Agreement on June 30, 2004, several years prior to the commencement of LBSF's

chapter 11 case, and each of the swap transactions thereunder were entered into between

Principal Life and LBSF before the commencement of LBSF's chapter 11 case.  Upon

information and belief, LBSF does not dispute the validity of the prepetition debt owed to LBSF

by Principal Life under the ISDA Master Agreement and has recently agreed that the prepetition

debt owed by Principal Life to LBSF is $13,637,229.

36.    To satisfy the third requirement under section 553, the debts must be

"mutual."  Debts are "mutual" when the debts and credits are in the same right and are between

the same parties, standing in the same capacity.  See In re Westchester Structures, Inc., 181 B.R.

730, 739 (Bankr. S.D.N.Y. 1995); see also In re Bennett Funding Group, Inc., 146 F.3d 136, 139

(2d Cir. 1998); Modern Settings, Inc. v. Prudential-Bache Sec., Inc., 936 F.2d 640, 648 (2d Cir.

1991); In re Drexel Burnham Lambert Group, Inc., 113 R.B. 830, 847 (Bankr. S.D.N.Y. 1990).

37.    The Second Circuit has interpreted debts in the "same right" to mean that

a "pre-petition debt cannot offset a post-petition debt."  See In re Westchester Structures, Inc.,

181 B.R. at 739.  Here, the LBSF Claim owed by from Principal Life to LBSF and the Principal

Life Claim owed LBSF to Principal Life are in the "same right" because they are both prepetition

debts.  The second element of mutuality - that the debts must be between the same parties is also

met here.  Id.  This element is satisfied because the debts under the Reimbursement Agreements

and the ISDA Master Agreement are solely between LBSF and Principal Life.

38.    Lastly, in order to satisfy mutuality, "the parties must stand in the same

capacity in relation to each other."  Id.  If the same parties are involved "but they stand in

different relationships in the various transactions, mutuality does not exist and setoff is

impermissible."  Id.  For example, where one party "owes a fiduciary duty to the other, or has a

claim for trust funds, and the other side's claim is a simple unsecured debt, mutuality is lacking."

Id. (quoting Ross–Viking Merchandise Corp. v. American Cyanamid Co. (In re Ross–Viking

Merchandise Corp.), 151 B.R. 71, 73–74 (Bankr. S.D.N.Y. 1993).  Here, Principal Life and

LBSF entered into the Reimbursement Agreements in the same individual, arms-length capacity

as they entered into the ISDA Agreements, and the amounts owed under each of those

agreements are owed in the same capacity solely as a matter of contract.  Neither Principal Life

nor LBSF hold the debts owing under the Reimbursement Agreement or the ISDA Master

Agreement in any other capacity than in their own individual capacity.  This is not a case where

a debt is owing to the other party on account of a fiduciary duty or under a theory of constructive

trust.  See In re Drexel Burnham Lambert Grp. Inc., 113 B.R. 830, 847-49 (Bankr. S.D.N.Y.

1990) (finding that where a bank's claimed right of setoff arises from a fiduciary duty or is in

nature of trust, requisite mutuality of debts or credits does not exist).

39.    Because the three elements of mutuality are satisfied here, each of the

requirements for set off under New York law and section 553 of the Bankruptcy Code is

satisfied, and this Court should find that Principal Life has valid rights of setoff.

**B.     Principal Life is a Secured Creditor in the Amount of its Valid Rights of Setoff**

40.    Pursuant to section 506(a) of the Bankruptcy Code, the Principal Life

Claim is a secured claim on account of its right of setoff against the LBSF Claim.  Section 506(a)

of the Bankruptcy Code provides, in pertinent part, that

> [a]n allowed claim of a creditor … that is subject to setoff under section 553(a) of this title, is a secured claim … to the extent of the amount subject to setoff, … and is an unsecured claim to the extent that … the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a); see also In re Rehab Project, Inc., 238 B.R. 363, 375 (Bankr. N.D. Ohio

1999) ("Congress bestowed upon creditors having a valid right of setoff, the status of an allowed

secured claim, thus giving that creditor the highest priority under the Bankruptcy Code §

506(a).").

      41.    The Principal Life Claim against LBSF is a secured claim to the extent of

the amount it owes to LBSF under the ISDA Master Agreement.  See 11 U.S.C. §506(a).

Consistent with section 506(b) of the Bankruptcy Code, Principal Life timely submitted its proof

of claim on account of the Principal Life Claim as a secured claim and checked the box on the

court-approved proof of claim form describing its right of setoff in connection with the amount

Principal Life owed to LBSF under the ISDA Master Agreement.  See Epp Declaration Exhibit

5.

**C.    Pursuant to Section 542(b) of the Bankruptcy Code Principal Life is Not Required
to Turnover the Debt owing to LBSF under the ISDA Master Agreement**

      42.    Section 542(b) of Bankruptcy Code provides that "an entity that owes a

debt that is property of the estate and that is matured, payable on demand, or payable on order,

shall pay such debt to, or on the order of the trustee, **except to the extent that such debt may be**

**offset under section 553 of this title against a claim against the debtor."**  11 U.S.C. §

542(b)(*emphasis added*).  That section "enables a creditor who has a valid right of setoff to retain

the property…"  In re Eggemeyer, 75 B.R. 20, 22 (Bankr. S.D. Ill. 1987) (finding that section

542(b) of the Bankruptcy Code "enables a creditor who has a valid right of setoff to retain the

property…").  Both section 542(b) of the Bankruptcy Code and controlling case law indicate that

a creditor may withhold payment of amounts due if such amounts are subject to a right of setoff.

See 11 U.S.C. § 542(b); see also In re Blanton, 105 B.R. 321 (Bankr. E.D. Va. 1989) (finding

that debtor was not entitled to turnover of property of the estate from creditor under section

542(b) because creditor had a superior right of setoff); see also In re Szymanski, 413 B.R. 232,

241 (Bankr. E.D. Pa. 2009) (finding under section 542(b) that creditor was not required to

turnover estate property if it held a right of setoff).  Accordingly, consistent with section 542(b)

of the Bankruptcy Code, Principal Life was not, and is not, required to turnover any amounts on

account of the LBSF Claim owed to LBSF under the ISDA Master Agreement because Principal

Life maintains a valid right of setoff against the LBSF Claim.

**D.      Relief From the Automatic Stay Should Not Be Necessary**

                43.      Principal Life first gave notice to LBSF of the exercise of its rights of

setoff in its Initial Calculation Statement on September 19, 2008, a date prior to the

commencement of LBSF's chapter 11 bankruptcy case.  Arguably there was no automatic stay

enjoining Principal Life's exercise of its setoff rights.  However, cognizant of this Court's

decision in <u>LBSF v BNY Corporate Trustee Services Ltd</u>, Adv. Pro. 09-01242 (Bankr. S.D.N.Y.

January 25, 2010), even if an automatic stay did apply for the benefit of LBSF, Principal Life's

assertion and exercise of its contractual rights of setoff were in accordance with section 560 of

the Bankruptcy Code and therefore excepted from the automatic stay.

                44.      The ISDA Master Agreement and the transactions thereunder are "swap

agreements" as defined under section 101(53B) of the Bankruptcy Code.  Principal Life, as an

entity that had outstanding swap agreements with LBSF prior to the commencement of its

bankruptcy case, is a "swap participant" afforded all of the safe harbor protections under the

Bankruptcy Code, including, but not limited to, under sections 362(b)(17), 362(b)(27), 362(o),

546(g), 553, 560 and 561 of the Bankruptcy Code.  Thus, Principal Life's exercise of its

contractual setoff rights as noticed to LBSF in the Initial Calculation Notice should be upheld

without any requirement to file this Motion.  The only dispute that LBSF had in September of

2008 and the months thereafter was whether the amounts setoff were properly calculated.  Given

that the amounts are now agreed upon between the parties, this Court may also determine that the

exercise of such setoff rights was valid and enforceable as of September 19, 2008 (when

18

Principal Life gave notice of the exercise of such setoff rights in its Initial Calculation Notice) in the amounts now agreed upon by the parties as set forth in paragraph 23 of this Motion.

45.     In addition, pursuant to the Termination and Settlement Procedures, LBSF is authorized to enter into a termination and settlement agreement with Principal Life that fixes the amounts owing between LBSF and Principal Life and incorporates Principal Life's rights of setoff and allows the net claim against LBSF without further authorization of this Court.  Indeed, the same representative from Principal Life that discussed with LBSF the Principal Life Claims and the calculation of the termination amount under the ISDA Master Agreement, held parallel discussions with LBSF regarding the calculation of the termination amounts relating to a swap transactions with Principal Financial Services, Inc. ("PFSI"), an affiliate of Principal Life. Principal Life and LBSF reached a settlement on the PFSI swap and entered into a termination and settlement agreement in November 2009 (the "PFSI Settlement Agreement") in reliance on and under the authority provided under the Termination and Settlement Procedures.  See Epp Declaration at ¶25.  Pursuant to the PFSI Settlement Agreement, PFSI paid a termination payment to LBSF on account of the termination of the swap agreement.

46.     Because the settlement of the PFSI Settlement Agreement with LBSF proceeded from the time of the initial contact with LBSF, Principal Life reasonably expected that LBSF would also promptly reach agreement on the calculation of the amounts owing between the parties under the ISDA Master Agreement and the Principal Life Claims.  See Epp Declaration.  After receiving payment from PFSI in connection with the terms of the PFSI Settlement Agreement, and cognizant that Principal Life's valid right of setoff in connection with the ISDA Master Agreement made Principal Life a net creditor, LBSF seemed to lower its

priority in reaching agreement on the amounts owing under the ISDA Master Agreement and the

Principal Life Claims.  See Epp Declaration at ¶¶ 25, 28.

47.     Principal Life was aware of the Termination and Settlement Procedures

and expected that it would enter into a termination and settlement agreement with LBSF

incorporating the exercise of its setoff right and allowing its net claim against LBSF without any

need for further authorization of this Court.  Although the reconciliation and negotiations are

complete and there is agreement on the mutual debts, LBSF has been unwilling to enter into a

termination and settlement agreement.  Rather, LBSF wants to squeeze an undeserved tribute

from Principal Life without any legitimate basis.  The Debtors abuse of its discretion under the

December Order and its position as a liquidating debtor in chapter 11 should not be

countenanced.

**E.     Relief from the Automatic Stay is Appropriate Now that the Mutual Debts are
         Agreed to Between the Parties**

48.     To the extent that relief from the automatic stay is necessary, section 553

of the Bankruptcy Code preserves Principal Life's valid rights of setoff.  Section 362(a)(7) of the

Bankruptcy Code specifically provides that the filing of a debtor's voluntary petition operates as

an automatic stay against "the setoff of any debt owing to the debtor that arose before the

commencement of the case under [title 11] against any claim against the debtor."  11 U.S.C. §

362(a)(7).  The Bankruptcy Code does not vitiate a creditor's right of setoff.  See H.R. Rep. No.

95-595, at 342 (1977) ("The Bankruptcy Code does not affect the right of a creditor to setoff.").

Instead, the Bankruptcy Code "simply stays its enforcement pending an orderly examination of

the debtor's and creditors' rights."  Id.  Thus, a party may still exercise its right of setoff in a

bankruptcy proceeding upon obtaining an order for relief from the automatic stay allowing the

creditor to exercise any valid right of setoff.  See Strumpf, 516 U.S. at 21; see also In re NTG

Industries, Inc., 103 B.R. 195, 197 (Bankr. N.D.Ill. 1989); 5 Collier on Bankruptcy ¶ 553.10.

> (i)    *Principal Life's Valid Rights of Setoff Establish Cause for Granting Principal Life Relief From the Automatic Stay*

49.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant

a party relief from the automatic stay  for "cause".  11 U.S.C. §362(d)(1).  "[C]ourts have

uniformly ruled that cause under section 362(d)(1), requires the establishment of a legally

sufficient basis for the action sought."  In re Drexel Burnham Lambert Group, Inc., 113 R.B.

830, 847 (Bankr. S.D.N.Y. 1990).  Here, the relief sought by Principal Life is an order lifting the

automatic stay so that Principal Life may exercise its right of setoff against the LBSF Claim.  As

set forth in detail above, Principal Life has a valid right of setoff under the ISDA Master

Agreement and New York law which has been preserved by section 553(a) of the Bankruptcy

Code because (i) the Principal Life Claim owed by LBSF to Principal Life under the

Reimbursement Agreements is a prepetition debt; (ii) LBSF's Claim owed Principal Life to

LBSF under the ISDA Master Agreement is also prepetition; and (iii) the LBSF Claim against

Principal Life and the Principal Life Claim against LBSF are mutual because both claims are

prepetition (same right) and between the same parties in their same capacities.

50.    Courts in the Second Circuit consistently recognize the axiomatic

principle that equity favors setoff, and a creditor's valid setoff right should not be disallowed

"unless compelling circumstances require it…."  In re BOUSA, 2006 WL 2864964 at *8

(quoting Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1164 (2d Cir. 1979); see also In re

Bennett Funding Group, Inc., 146 F.3d 136, 139 (2d Cir. 1998) (recognizing the Second Circuit's

decision in Bohack that "made clear the favored position of setoff and that position extends to

bankruptcy."); In re Applied Logic Corp., 576 F.2d at 957; Pereira v. United Jersey Bank, N.A.,

201 B.R. 644 (S.D.N.Y. 1996) (providing a comprehensive analysis of the Second Circuit's

repeated approval of the right of setoff).

      51.     Although neither the Bankruptcy Code nor its legislative history define the

term "cause", courts in the Second Circuit have looked at the factors identified in the Second

Circuit's decision, <u>In re Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus.,</u>

<u>Inc.)</u>, 907 F.2d 1280, 1285-86 (2d Cir. 1990).  In <u>In re Sonnax Indus.</u>, the Second Circuit

enumerated twelve factors which may be relevant to the determination of whether cause exists to

lift the automatic stay.  The twelve enumerated factors mostly address those cases where a party

is seeking to lift or modify the automatic stay to allow litigation to proceed against the debtor

and/or its property.  <u>Id.</u> at 1286.  Nevertheless, courts in this Circuit, in deciding whether to lift

or modify the automatic stay for purposes of permitting a creditor to exercise a right of setoff,

have found that one of the <u>In re Sonnax Indus.</u> "factors the Court must consider is the impact of

the stay on the parties and the balance of harms."  <u>See</u> <u>In re BOUSA</u>, 2006 WL 2864964 at *8

(citing <u>In re Sonnax Indus.</u>, 907 F.2d at 1286).

      (ii)     <u>*Equity and the Balance of Harms Weigh in Favor of Lifting the Automatic*</u>
             <u>*Stay*</u>

      52.     Courts in this Circuit have consistently and strongly approved setoffs

because "they are based upon long-recognized rights of mutual debtors." <u>In re Bohack</u>, 599 F.2d

at 1165 (stating that "[d]espite the preferential advantages bestowed upon certain creditors by

virtue of §68, setoffs are accepted and approved because they are based upon long-recognized

rights of mutual debtors."); <u>New Jersey Nat'l Bank v. Gutterman (In re Applied Logic Corp.)</u>,

576 F.2d 952, 957 (2d Cir.1978) (acknowledging that while "'[o]ne of the dominant impulses in

bankruptcy is equality among creditors' and that with setoff 'the dominant impulse' is inequality

among creditors", the right of setoff will prevail because "[i]t is a rule that has been embodied in

22

every bankruptcy act the nation has had, and creditors … have long acted in reliance upon it.")
(citations omitted); In re Whimsy, Inc., 221 B.R. 69, 75 (Bankr. S.D.N.Y. 1998) (noting that the
argument that setoff should be denied to avoid the inequity of preferential treatment is an
argument against the very concept of setoff and is not a proper basis for denying relief from the
stay to a creditor to exercise its right of setoff).

53.    Indeed, "[t]he reason that the Bankruptcy Code favors the right of setoff is
the anomalous unfairness, where debts are owed both ways between the debtor and the creditor,
of permitting the bankrupt to collect all the debt owed to him while allowing recognition of the
bankrupt's debt to the creditor." In re Gribben, 158 B.R. 920, 924-25 (S.D.N.Y 1993). As the
Supreme Court set forth in its Strumpf decision, the purpose of allowing setoff is to permit
"entities that owe each other money to apply their mutual debts against each other, thereby
avoiding the absurdity of making A pay B when B owes A." In re BOUSA, 2006 WL 2864964
at *9 (quoting Strumpf, 516 U.S. at 18); see also In re Bohack, 599 F.2d at 1164-65 (2d Cir.
1979). Here, granting relief from the automatic stay to permit Principal Life to exercise its right
of setoff will prevent the unfairness and absurdity described by the Supreme Court in Strumpf of
making Principal Life pay LBSF when LBSF owes Principal Life.

54.    Moreover, LBSF is not harmed nor prejudiced since it is not seeking to
reorganize but rather is a liquidating chapter 11 debtor that is preparing to make distributions
under a confirmed plan. LBSF received notice of Principal Life's setoff rights from before the
commencement of its chapter 11 cases when it received Principal Life's Initial Calculation
Notice, again when Principal Life timely submitted its proofs of claims and throughout the
negotiations between it and Principal Life. As noted by the Supreme Court in Strumpf, Principal
Life would be unfairly harmed if LBSF was permitted to collect all of the debt owed to it while

NY1 7681924

Principal Life would only be able to collect a percentage distribution on the debt owed by LBSF

to Principal Life.  In addition, section 506(a) of the Bankruptcy Code provides that the Principal

Life Claim is a secured claim to the extent of the amount subject to setoff, and section 542(b) of

the Bankruptcy Code provides that Principal Life is not required to pay to LBSF the amount it

owes under the ISDA Master Agreement because such debt is subject to Principal Life's valid

right of setoff.

       55.      Accordingly, "cause" for relief from the automatic stay is satisfied here

because the harm that would be caused to Principal Life in denying it the ability to exercise its

valid rights of setoff outweighs any inequality among creditors and equity favors the long

recognized right of allowing mutual debtors to setoff debts owing to each other.

      (iii)    *No Compelling Circumstances Exist to Deny Relief From the Automatic*
               *Stay*

       56.      Courts in the Second Circuit have generally held that setoff must be

allowed unless "compelling circumstances" against setoff are found.  Courts have not found

compelling circumstances lightly, see, e.g., In re Whimsy, 221 B.R. at 74 (S.D.N.Y. 1998)

(citations omitted), compelling circumstances could be found where the creditor has engaged in

criminal conduct or fraud.  See also In re Bohack, 599 F2d at 1165 ("[a] decision disallowing

setoff must not be made cavalierly.  The statutory remedy of setoff should be enforced unless the

court finds after due reflection that allowance would not be consistent with the provisions and

purposes of the Bankruptcy Act as a whole"); Blanton v. Prudential-Bache Sec., Inc. (In re

Blanton), 105 B.R. 321, 337-38 (Bankr. E.D. Va. 1989) ("Most cases in which courts have

exercised discretion to deny setoff outright have involved creditors who engaged in illegal or

fraudulent conduct."); In re M.Silverman Laces, Inc., 404 B.R. 345, 366 (Bankr. S.D.N.Y. 2009)

(noting that "a creditor's improper or inequitable conduct or, in rare circumstances, other goals

and objectives of the Bankruptcy Code may preclude the exercise of a setoff right.") (citations

omitted); In re Bennett Funding Group, 146 F.3d at 141 (finding that the court was not required

to deprive the financial institution of its setoff right against an account with funds derived from

the debtor's fraudulent scheme in order to increase the chance of recovery of other equally

innocent creditors).  There are no compelling circumstances in this case to deny Principal Life

relief from the automatic stay in order to allow it to exercise its valid rights of setoff.

57.     Here, since the commencement of LBSF's bankruptcy case, Principal Life

has engaged representatives of LBSF to discuss the reconciliation of the amounts owed between

Principal Life and LBSF under both the Reimbursement Agreements and the ISDA Master

Agreement in a good faith attempt to reach agreement on such amounts and to reach agreement

on Principal Life's setoff rights.  Throughout those discussions, Principal Life always reserved

its rights of setoff and maintained that such rights were valid and enforceable.  There is no

credible argument that LBSF can make to assert that Principal engaged in any criminal,

fraudulent nor any other improper or inequitable conduct.   Principal Life has at all times

complied with the Bankruptcy Code and applicable law.[2]

58.     Accordingly, for the reasons set forth above, this Court should find that

consistent with the decisions in this Circuit, the impact of the stay on the parties and the balance

of harms weigh in favor of granting Principal Life relief from the automatic stay in order to

exercise its valid rights of setoff.   Furthermore, granting Principal Life relief from the automatic

---

[2] The facts in this case are distinguishable from cases in which a creditor, before obtaining relief from the automatic stay, actually takes or enforces against the debtor's pledged collateral or cash in a segregated account and applies it to a debt owing to it.  See, e.g., In re Ionosphere Clubs, 177 B.R. 198 (Bankr. S.D.N.Y. 1995) (finding a violation of the automatic stay where the bank retained funds that were deposited by debtor in debtor's account in order to preserve the bank's right of setoff); In re Official Comm. of Unsecured Creditors of Operation Open City, Inc. v. New York State Dep't of State (In re Operation City, Inc.), 148 B.R. 184 (Bankr. S.D.N.Y. 1992) (finding that state violated the automatic stay by setting off debtor's funds in the state's possession without seeking relief from the automatic stay).  Here, Principal Life does not hold cash or other collateral that is property of the debtors' estate.

NY1 7681924

stay comports with the Second Circuit's strong preference to allow setoff as a means to avoid multiplicity of lawsuits, inconvenience, injustice and inefficient use of judicial resources. See, e.g., In re Lehman Bros._, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009); In re Bennett Funding Group., Inc., 146 F.3d 136, 138 (2d Cir. 1998);  In re Applied Logic Corp., 576 F.2d 952, 957-58 (2d Cir. 1978).

**F.      No Waiver of Setoff Rights**

59.      LBSF's throws out the unsupported position that Principal Life somehow inadvertently waived its setoff right or that Principal Life's delay in seeking relief from the automatic stay waived its setoff right under the ISDA Master Agreement, New York law and the Bankruptcy Code.  Nothing can be farther from the truth.  Principal Life has consistently preserved its rights of setoff against LBSF through notice of such right in the Calculation Notices, its proof of claim and in extensive communications with LBSF's representatives and professionals.

60.      In order to determine whether a creditor has waived its right of setoff, the Court "must assess whether the [creditor] acted or failed to act in a manner reflecting a knowing, voluntary and intentional relinquishment of that legal right."  In re BOUSA, 2006 WL 2864964 at *4; see, e.g., United States v. Johnson, 391 F.3d 67, 75 (2d Cir. 2004) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (defining waiver as an "intentional relinquishment or abandonment of a known right or privilege")); In re Frank Santora Equipment Corp., 256 B.R. 354, 370-71 (Bankr. E.D.N.Y. 2004) (stating that waiver is the voluntary and intentional relinquishment or abandonment of a known existing legal right).  The requirements of waiver are not met here because Principal Life has not voluntarily or intentionally relinquished its rights of setoff against LBSF.

26

61.     Although waiver of a right of setoff can be express or implied, Principal

Life has done neither.  A creditor can expressly waive its right of setoff such as by a written

statement that the creditor will not assert such setoff right.  See In re Calore, 288 F.3d 22, 38 (1st

Cir. 2002); In re Metro Int'l, Inc., 616 F.2d 83, 86 (3d Cir. 1980) (finding that a creditor had

expressly waived its right to setoff as a matter of law by oral statements on the record).  Here,

Principal Life has not expressly waived its rights of setoff in any writing or oral communications

with LBSF, and as set forth herein, has at every occasion reserved its right of setoff against the

LBSF Claim.

62.     A court may also imply a waiver of a right to setoff from the creditor's

conduct, provided that such conduct fairly and clearly demonstrates the creditor's intent.  See In

re Calore, 288 F.3d at 38.  For instance, waiver of a right of setoff has been found where a

creditor voluntarily made a payment of its debt to the debtor, without any reservation of a right

of setoff, or, in certain circumstances, where a proof of claim did not assert setoff.  See id.; see

also Hoffman v. Gleason (In re Capital Nat'l Bank of Lansing), 107 F.2d 101, 104 (6th Cir. 1940)

(citing Cumberland Glass Mfg. Co. v. De Witt, 237 U.S. 447, 459 (1915)).  Given that Principal

Life has provided notice of and preserved its right of setoff against LBSF, no waiver can be

implied.[3]

**NOTICE**

63.     Notice of this Motion has been provided in accordance with the Court's

February 13, 2009 Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and

---

[3]  The mere passage of time does not constitute a waiver of setoff "absent some inequitable conduct by the creditor or prejudice accruing to the debtor."  In re Century Brass Prods. Inc., 97 B.R. 152, 155 (Bankr. N.D. Conn. 1989) (quoting L. King, 4 Collier on Bankruptcy ¶ 553.02 at 553-54 (15th ed. 1988) (finding that an unexplained two-and-one-half-year delay between the fling of the bankruptcy petition and the filing of the creditor's motion for relief from stay did not preclude the creditor from asserting setoff absent inequitable conduct by the creditor and prejudice to the debtor); see also In re Northeastern Airways, Inc., 99 B.R. 487, 489 (Bankr. S.D. Fla. 1989) ("The mere passage of time, without more, will not waive a creditor's right to setoff").

NY1 7681924

Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures.

64.      No previous request for the relief requests herein has been made to this or any other court.

WHEREFORE, for all the reasons set forth herein, Principal Life respectfully requests entry of an order (i) finding that Principal Life has a valid contractual rights of setoff under the ISDA Master Agreement and New York law preserved pursuant to section 553 of the Bankruptcy Code, (ii) granting relief from the automatic stay to permit Principal Life to exercise its rights of setoff against mutual obligations between Principal Life and LBSF by setting off the amount it owes to LBSF in the amount of $13,637,229 against the amount LBSF owes to Principal Life in the amount of $34,163,288, and (iii) allowing Principal Life's net claim in the amount of $20,526,059 as a Class 4A claim against LBSF and a Class 9A claim against LBHI.

Dated:  February 17, 2012
New York, New York                    /s/ Alex R. Rovira_____

Alex R. Rovira
James P. Seery
Bradford A. Berenson (*pro hac vice* pending)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile:  (212) 839 -5599

*Counsel for the Principal Life Insurance Company*

NY1 7681924