**Hearing Date and Time: March 21, 2012 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: March 14, 2012 at 4:00 p.m. (Prevailing Eastern Time)**

James P. Seery
Bradford A. Berenson (*pro hac vice* pending)
Alex R. Rovira
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212)839-5300
Fax: (212)839-5599

*Counsel for Principal Life Insurance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
                                                             :  Chapter 11
                                                             :
In re:                                                       :
                                                             :  Case No. 08-13555 (JMP)
Lehman Brothers Holdings Inc., *et al.*,                     :
                                                             :  (Jointly Administered)
                                    Debtors,                 :
                                                             :
-------------------------------------------------------------X

## DECLARATION OF DEBRA S. EPP IN SUPPORT OF PRINCIPAL LIFE'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND ALLOWANCE OF NET CLAIMS

1.      I am over the age of 18 years and make these statements of my own personal knowledge.  If I am called to testify, I could testify to the truth of the matters set forth herein.

2.      I submit this declaration in support of Principal Life Insurance Company's ("Principal Life") Motion for an order (i) granting relief from the automatic stay to effectuate setoff and (ii) allowing Principal Life's net claims (the "Motion").

3.      I am a member of the bar of the State of Iowa and am currently in-house counsel  for the Principal Financial Group, Inc. ("Principal Financial").  Principal Financial is the parent company of Principal Life.  I have been in-house counsel at Principal Financial since 1998.  As counsel for Principal Financial, I am responsible for handling legal matters involving

Principal Financial and its subsidiaries, including Principal Life and Principal Financial Services, Inc. ("PFSI").  Prior to being employed by Principal Financial, I was a judicial clerk for the Honorable John C. Minahan, U.S. Bankruptcy Judge for the District of Nebraska and worked as an attorney for approximately 3 years.

4.    Principal Life is an Iowa insurance company that offers a variety of life insurance and annuity products that provide financial security to individuals, families and businesses and provides protection through various stages of life and enables them to plan for their financial future, including retirement and estate planning, and assist companies in offering valuable benefits to their employees.  Many insurance obligations of Principal Life, as well as the corresponding assets purchased to support its insurance and retirement product liabilities, have durations that extend for one or more decades.  Principal Life's investment management strategies are designed to create portfolios that will generate sufficient yields to satisfy the long term obligations to policyholders without undue risk.  Principal Life engages in over-the-counter derivatives trades with its counterparties primarily for hedging purposes, to reduce risks associated with existing or anticipated assets or liabilities and better align its assets with its liabilities.  Such risks include the risk of changes in value, yield, price, cash flow or quantity of assets or liabilities and currency exchange risk.

5.    As counsel for Principal Financial and its subsidiaries, I am familiar with and have been involved with the matters I discuss herein involving Principal Life and the bankruptcy proceedings of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliate Lehman Brothers Special Financing, Inc.("LBSF") (collectively, the "Debtors").

NY1 8003060v.4

## *Principal Life's Claim against LBSF*

(a)    *The Coral Commercial Paper Notes Obligations to be Paid by LBSF and Guaranteed by LBHI*

6.    On December 15, 2005, Coral Commercial Paper Trust (the "Issuer"), a special purpose entity sponsored by LBSF, issued a series of commercial paper notes ("Coral Trust Series 1") in an aggregate principal amount of $150,418,366.00 consisting of 12 individual tranches, sequentially identified as Tranches "A" through "L".

7.    On September 25, 2007, the Issuer issued a second series of commercial paper notes (the "Coral Trust Series 2", and together with Coral Trust Series 1, the "Coral CP Notes") in an aggregate principal amount of $576,371,872.00 consisting of 11 individual tranches, sequentially identified as Tranches "M" through "W".

8.    The Coral CP Notes were backed by funding agreements (individually, a "Funding Agreement", and collectively, the "Funding Agreements") entered into between Principal Life and the Issuer.  In connection with the Funding Agreements and the issuance of the Coral CP Notes, LBSF and Principal Life entered into reimbursement agreements dated December 15, 2005 and September 25, 2007 (collectively, the "Reimbursement Agreements"). True and correct copies of the Reimbursement Agreements are attached hereto as Exhibits 1 and 2.

9.    Paragraph 2 of the Reimbursement Agreements provides that if the Issuer makes an early withdrawal under any Funding Agreement ("Early Withdrawal") for any reason, then

> LBSF shall pay Principal Life: on the Upfront Payment Date (as defined below), an amount equal to the sum of (i) the product of (x) the aggregate outstanding principal amount of the Funding Agreement(s) that has been withdrawn in respect of such Early withdrawal (the "Original Reduction Amount") and (y) the Applicable Percentage (the "Upfront Termination Amount"); and (ii) the net present value (as determined on the basis of the

3

prevailing LIBOR swap curve as of the Early Withdrawal Date) of an annual fee based on 0.40% per annum on the Original Reduction Amount as amortized on the basis of the expected amortization assumptions under the Expected Amortization Schedule as if such annual fee were payable on each anniversary of such Early Withdrawal Date until the final date set forth in the Expected Amortization Schedule (as defined below).

10.     LBSF's obligations to Principal Life under the Reimbursement Agreements were also guaranteed by LBHI pursuant to guarantee agreements dated December 15, 2005 and September 25, 2007 (collectively, the "Guaranty Agreements"). True and correct copies of the Guaranty Agreements are attached hereto as Exhibits 3 and 4.

11.     On various dates from October 1, 2008 through February 17, 2009, the Issuer made an Early Withdrawal on each of the tranches under the Funding Agreements, and, on or about each such date, Principal Life calculated the amounts owing by LBSF to Principal Life under the Reimbursement Agreements and provided LBSF written notice of this amount. Pursuant to such calculations, Principal Life asserted an aggregate claim against LBSF on account of the resulting liquidated amounts in an amount of $34,162,715.

**(i)     Principal Life files its Proof of Claim and Preserves its Setoff Rights**

12.     I was involved with drafting and submitting a proof of claim on behalf of Principal Life against LBSF based on the amounts owing by LBSF to Principal Life under the Reimbursement Agreements in the amount of $34,162,715 plus contingent and/or unliquidated claims, including, without limitation, all reasonable costs, fees and expenses [Claim Number 30672] (the "PL LBSF Claim"). I also assisted with drafting and submitting a proof of claim for Principal Life against LBHI on account of the Guarantee Agreements [Claim Number 30671] (the "PL LBHI Claim", and together with the PL LBSF Claim, the "Principal Life Claims"). True and correct copies of each of the Principal Life Claims are attached hereto as Exhibits 5 and

4

6 to this Declaration.[1]  On the face of the proof of claim form for the PL LBSF Claim, I checked box 4 indicating the claim was a secured claim, I described the nature of the right of setoff as "Termination Amounts under ISDA dated June 30, 2005; See Exhibit A" and provided the amount of the secured claim as $11,632,107.54 and the amount of the unsecured claim as $22,530,607.46.  See Exhibit 5.  In addition, I attached to each of the Principal Life Claims a narrative schedule that described Principal Life's right of setoff under the ISDA Master Agreement (defined below) and the Bankruptcy Code, reserved Principal Life's setoff right, and asserted the claims as secured claims to the extent of such right of setoff.

13.    The Principal Life Claims were filed on September 22, 2009, in compliance with this Court's order establishing September 22, 2009 as the deadline (the "Bar Date") for filing proofs of claims against the Debtors [Docket No. 4871] (the "Bar Date Order").

**(ii)    Reconciliation of the Claim Amount owed by LBSF and LBHI**

14.    In May 2009, representatives of LBSF reached out to me to reconcile the amounts owing under the Reimbursement Agreements.  From May 2009 to December 2009, upon LBSF's request, Principal Life promptly provided to LBSF additional information further supporting Principal Life's calculation of the amount owing by LBSF to Principal Life under the Reimbursement Agreements and the amounts owed by Principal Life to LBSF under the ISDA Master Agreement.  During this period, from time to time, I, along with other Principal Life business representatives, engaged in telephone conferences with LBSF to reconcile the amount of the Principal Life Claims, and agreed to minor adjustments in the amounts owing under the Reimbursement Agreements, resulting in  a mid-December 2009 agreement among Principal

---

[1]  The proofs of claims with each of their attachments are voluminous and I understand that they are publicly available on the Debtors' claim agent's website: www.epiq11.com.  Accordingly, for purposes of this declaration I only attach the proof of claim form and the narrative schedule attached to each proof of claim form without exhibits.

NY1 8003060v.4

Life and the Debtors of an aggregate adjusted claim under the Reimbursement Agreements in the amount of **$34,163,288**.

15.    My assessment in March 2010 was that LBSF seemed satisfied with the adjustments Principal Life agreed to make during the 2009 discussions concerning reconciliation of the Reimbursement Agreement amounts, and I was hopeful the other claims between the parties would be resolved shortly thereafter as LBSF was only indicating there were two swap trades outstanding in their reconciliation process in connection with the ISDA Master Agreement.  During 2010 and until April 2011, I pressed LBSF from time to time for a final settlement of Principal Life's Claims, but LBSF would not confirm to Principal Life its agreement to the adjusted claim amount, nor net amount due, until December 2011.

16.    In mid December 2011, nearly two years after providing LBSF with an agreed adjusted amount under the Reimbursement Agreement, LBSF confirmed its agreement to the adjusted aggregate amount of **$34,163,288** owed by LBSF to Principal Life under the Reimbursement Agreements, and by LBHI under the Guarantee Agreements**,** a total claim which is slightly *higher* than the original Proof of Claim filed by Principal Life in the amount of $34,162,715.

### *LBSF's Claim Against Principal Life*

*(a)    The ISDA Master Agreement*

17.    On June 30, 2004, LBSF and Principal Life entered into an ISDA Master Agreement (as amended, supplemented or otherwise modified from time to time, and including all schedules, exhibits, confirmations and any related agreements, including the credit support annex and guaranty (collectively, the "<u>ISDA Master Agreement</u>").  A true and correct copy of the ISDA Master Agreement is attached as Exhibit 7.  Pursuant to the ISDA Master Agreement,

from time to time, LBSF and Principal Life entered into various swap transactions including, interest rate swaps, currency swaps and credit default swaps.

### (i) Termination of the Trades Under the ISDA Master Agreement

18.     I assisted with drafting and delivering on September 16, 2008, a notice to LBSF (the "Default Notice") on behalf of Principal Life of an event of default under section 5(a)(vii) of the ISDA Master Agreement due to the commencement of bankruptcy proceedings on September 15, 2008 by LBHI, the Credit Support Provider under the ISDA Master Agreement.  A true and correct copy of the Default Notice is attached hereto as Exhibit 8. Pursuant to the terms of the ISDA Master Agreement, Principal Life exercised its right to terminate the swap transactions thereunder with LBSF by designating September 16, 2008 as the Early Termination Date (as defined in the ISDA Master Agreement).

### (ii) The Initial Calculation Notice Highlights Principal Life's Right of Setoff

19.     I also assisted Principal Life in its calculation of the total amount owed by Principal Life to LBSF under the ISDA Master Agreement due to the early termination of the ISDA Master Agreement (the "Principal Life Termination Amount").  On September 19, 2008, I caused to be delivered to LBSF a notice of Principal Life's damage calculation arising from the early termination of the ISDA Master Agreement (the "Initial Calculation Notice").  A true and correct copy of the Initial Calculation Notice (without exhibits) is attached as Exhibit 9.  The Initial Calculation Notice provided that pursuant to the ISDA Master Agreement, Principal Life calculated that it owed LBSF, on account of the settlement amounts for the termination of the transactions thereunder, the amount of $4,986,767.54, calculated as follows:

Payment on early termination owed by Principal Life
to LBSF pursuant to Section 6(e) of the Master
Agreement:                                                    $47,541,527.00

NY1 8003060v.4

Minus Collateral pledged by Principal Life held by LBSF:          $42,554,759.46

Amount owed by Principal Life to LBSF:          $4,986,767.54

20.      The Initial Calculation Notice also provided to LBSF notice of Principal

Life's exercise of its right of setoff pursuant to Section 6(f) of the ISDA Master Agreement, as

amended by Part 5(a) of the Schedule to the ISDA Master Agreement, and the calculation of

such setoff, as follows:

The Principal Life Claim against LBSF in connection
with the Reimbursement Agreements:          $31,781,578.33

Minus the ISDA Master Agreement termination amounts
owed by Principal Life to LBSF:          $4,986,767.54

Initial Calcualtion of Remaining Principal Life Claim against
LBSF in connection with the Reimbursement Agreements:          $26,794,810.79

### (iii)      The Amended Calculation Notice Highlights Principal Life's Right of Setoff

21.      In May 2009, LBSF contacted me and requested information and

confirmations concerning the swap trades under the ISDA Master Agreement.  During this initial

stage of the claim value reconciliation process, it was determined that two of the ISDA trades

included on Principal Life's Initial Calculation Statement were instead transacted with Lehman

Brothers International (Europe) ("LBIE") and  were therefore improperly included on the Initial

Calculation Statement.  In addition to subtracting these two "in the money trades" from the

Initial Calculation Statement and directing that they be re-booked as LBIE trades, I also

determined that several payments due and owing under the outstanding transactions just prior to

the termination date had been improperly omitted from Principal Life's calculations.

Accordingly, I assisted Principal Life with the recalculation of the amounts owed to LBSF under

the ISDA Master Agreement and, on or about September 1, 2009, I caused to be delivered on

behalf of Principal Life an amended calculation notice amending Principal Life's Initial

8

Calculation Notice (the "Amended Calculation Notice", and together with the Initial Calculation

Notice, the "Calculation Notices").  A true and correct copy of the Amended Calculation Notice

(without exhibits) is attached hereto as Exhibit 10.  The Amended Calculation Notice amended

Principal Life's initial termination settlement calculation and its proposed setoff calculation.  The

Amended Calculation Notice provided that pursuant to the ISDA Master Agreement, Principal

Life calculated that it owed to LBSF, on account of the settlement amounts for the termination of

the transactions thereunder, the amount of $11,632,107.54 (the "LBSF Claim"), calculated as

follows:

| | |
|---|---|
| Payment on early termination owed by Principal Life to LBSF pursuant to Section 6(e) of the Master Agreement: | $54,186,867.00 |
| Minus Collateral pledged by Principal Life held by LBSF: | $42,554,759.46 |
| Amount owed by Principal Life to LBSF: | $11,632,107.54 |

        22.    The Amended Calculation Notice also provided LBSF additional notice of

Principal Life's right of setoff given the revised calculation:

| | |
|---|---|
| Principal Life Claim against LBSF in connection with the Reimbursement Agreements: | $34,162,715.00 |
| Minus the LBSF Claim owed by Principal Life to LBSF ISDA Master Agreement Settlement Amount: | $11,632,107.54 |
| Remaining Principal Life Claim against LBSF in connection with the Coral CP Trust Program: | $22,530,607.46 |

        23.    Principal Life incorporated the foregoing amounts from the Amended

Calculation Notice into its proof of claims of claims filed on September 22, 2009.

### (iv)    Discussions with LBSF Concerning Reconciliation of Amounts Owed Under the ISDA Master Agreement

        24.    In April 2009, representatives of LBSF reached out to me to reconcile the

amounts owing under the ISDA Master Agreement.  From April 2009 to March 2010, I provided

NY1 8003060v.4

information to LBSF further supporting Principal Life's calculation of the amounts owed to

LBSF under the ISDA Master Agreement.  During that time, I engaged in telephone conferences

with LBSF and provided additional information concerning Principal Life's calculations to

reconcile each party's calculations of termination values of trades under the ISDA Master

Agreement.  In addition, Principal Life agreed to compromise some of its trade termination

values in an effort to expedite resolution and a final settlement of the Principal Life Claims and

the Principal Life Termination Amount.  Throughout these telephone conferences and

information exchanges, I at all times maintained that Principal Life had a valid right of setoff

against the amounts owed by LBSF to Principal Life on the Principal Life Claims.

   25. During the time period of July 2009 through November 2009, I also had

discussions with this same LBSF representative regarding a different pre-petition derivatives

contract, also documented under the ISDA Master Agreement, between LBSF and PFSI, an

affiliate of Principal Life.  Those discussions ultimately resulted in a consensual settlement and

the execution of a termination agreement dated November 22, 2009 (the "PFSI/LBSF

Termination Agreement").  In entering into the PFSI/LBSF Termination Agreement, I relied on

the authority of LBSF to enter into a settlement and termination agreement in accordance with

the Bankruptcy Court's Order dated December 16, 2008 [Docket No. 2257] (the "December

Order") which established procedures for the settlement of pre-petition derivatives contracts (the

"Termination and Settlement Procedures").  Because the settlement of the PFSI/LBSF

Termination Agreement with LBSF proceeded on a reasonable pace, I reasonably expected the

Principal Life Termination Amount would similarly be settled promptly, especially since LBSF

was very actively working to reconcile both LBSF's obligations to Principal Life under the

Reimbursement Agreements in connection with the Principal Life Claims and the Principal Life

NY1 8003060v.4

Termination Amount under the ISDA Master Agreement as set forth in the Amended Calculation

Notice.  Principal Life's negotiations on the Principal Life Termination Amount had been

proceeding a along parallel track as the PFSI negotiations with LBSF in Fall 2009.

26.    From March 2010 through late July 2010 Lehman suspended our

discussions.  During this time I unsuccessfully reached out to LBSF to see if I could re-engage

them, as I felt we were close to reaching a final settlement.  The next request from LBSF was on

July 27, 2010, an email requesting documentation concerning any replacement trades Principal

Life had transacted to replace the LBSF trades.  I promptly obtained and provided LBSF with

copies of the replacement trade confirmations on August 5, 2010, and pressed Lehman for a

settlement.  LBSF replied by email on August 5, 2010, and advised me, after well over a year of

exchanging information on the calculation of the Principal Life Termination Amount, that it

would need to conduct more internal conversations before being able to move forward on

resolving the amounts owed under the ISDA Master Agreement.

27.    In January of 2011, I again followed up with my contact at LBSF by email

requesting the status of LBSF's review of the calculation of the Principal Life Termination

Amount and expressing Principal Life's desire to move forward with resolving its claims.  LBSF

again responded by apologizing that it was taking so long for the estate to complete its review of

the Principal Life Claims and Principal Life Termination Amount, but that it hoped to move

forward soon on resolving the amounts and would contact me as soon as it could proceed.  It

would be April 2011 before my next discussion with LBSF representatives.

28.    Essentially one year passed between my March 2010 discussions with

LBSF on resolving the Principal Life Claims and Principal Life Termination Amount before

LBSF requested a call in April 2011 to further discuss Principal Life's Claims and the Principal

NY1 8003060v.4

Life Termination Amount.  During this time Principal Life reached out to LBSF from time to time  by call or email requesting LBSF resume discussions, and Lehman responded that they hoped to move forward soon, without any further discussion concerning claim values, nor any indication by LBSF whatsoever of an objection as to the merits of Principal Life's setoff rights. During this time I was generally aware through news reports of numerous settlements and litigation activities by the Lehman estates and it seemed reasonable to me that LBSF had assigned a low priority to resolution of Principal Life's Claims and the Principal Life Termination Amount, relative to the other activities of the estates, because of Principal Life's net positive claim position.  (That is, the estates owe Principal Life money and not the other way around).  My view was that Principal Life's Claims and the Principal Life Termination Amount were nearly resolved through consensual negotiations in accordance with Termination and Settlement Procedures outlined in the December Order, and LBSF's past actions and negotiations indicated nothing to the contrary.  At no time during this nearly one year period did LBSF demand payment of the termination amounts owed LBSF under the ISDA Master Agreement (either as to trades consensually reconciled or those with agreement still outstanding).  Furthermore, LBSF never indicated it felt Principal Life's claim was not eligible or appropriate for settlement in accordance with the Termination and Settlement Procedures, or that it contested the validity of Principal Life's asserted set off rights.

29.    I did not hear back again from my contact at LBSF until March 31, 2011, when I received an email from her inquiring whether I would be available for a call the following week.  I replied by email the same day regarding my availability and a call was scheduled for April 7th.  On April 7, 2011, the LBSF representative that I had been working with over the past two years to resolve Principal Life's claims, called and quickly introduced me to a different

NY1 8003060v.4

LBSF representative that was stated to be Lehman's "Head of Strategy for Bankruptcy Litigation and Mediation".

30.    This new LBSF representative demanded that Principal Life immediately pay all amounts owing to LBSF under the ISDA Master Agreement, plus interest at 13.5 percent. I responded to LBSF that Principal Life had valid setoff rights under the ISDA Master Agreement and the Bankruptcy Code and that under my understanding of the law, Principal Life was not required to pay LBSF, given its valid setoff rights.  And, in any event, Principal Life and LBSF had not yet reached resolution as to the final termination values owing under either the ISDA Master Agreement or the Reimbursement Agreements.  The LBSF representative then asserted that Principal Life did not have valid set off rights and, even if it did, that Principal Life had waived its rights to set off by not filing a motion to lift the stay during the past two years.  I was stunned by these claims.  To the best of my knowledge and recollection, never before had such a suggestion been made by any representative of LBSF.  When I expressed my surprise and voiced my objections, the LBSF representative indicated that LBSF would be agreeable to negotiating down the interest due if Principal Life agreed to immediately pay the full Amended Calculation Notice amount under the ISDA Master Agreement to LBSF  by no later than April 15, 2011.  None of LBSF's representatives on the call disputed my assertions that Principal Life had been negotiating in good faith to resolve the claim, that Principal Life had not caused the delay in negotiations to resolve the claim, and that Principal Life had been diligent in providing information when requested over the course of the prior negotiations.

31.    In my response regarding LBSF's demand for payment, I referenced sections 553 and 542(b) of the Bankruptcy Code and indicated Principal Life had filed a secured claim and at all times maintained that it had a right to set off which we expected would be

resolved through negotiation of a net claim and entry into a termination agreement like the one I

had negotiated with LBSF on behalf of PFSI, or resolved through the plan confirmation and

claims process.[2]

32.     Shortly after this call with LBSF, in April 2011, I contacted outside

counsel to assist Principal Life with understanding its rights and resolving the apparent,

emerging dispute with LBSF.  Upon information and belief, outside counsel held several

telephone conferences with LBSF from April 2011 to June 2011 seeking to resolve the setoff

dispute.  During late May 2011, LBSF advised me that any further discussions to resolve the

amounts owing under the ISDA Master Agreement were "on hold" until the setoff issue was

resolved.

33.     In July 2011, in effort to resolve the setoff dispute, Principal Life, through

its counsel, proposed a global resolution to LBSF to resolve (i) the amounts owing between the

parties under the ISDA Master Agreement and the Reimbursement Agreements, and (ii) the

dispute regarding Principal Life's rights of setoff.  After LBSF and Principal Life held a couple

of discussions regarding the proposed global resolution, in August 2011, LBSF advised Principal

Life that it would not respond with a counteroffer until LBSF and Principal Life reached

agreement on the Principal Life Termination Amount.  Accordingly, I promptly re-engaged with

LBSF on the amounts owing under the ISDA Master Agreement, and LBSF informed me that it

would reopen all the previously reconciled termination values for review.

34.     In September 2011, Principal Life compromised further on the termination

values that Principal Life had previously determined in good faith, in order to expedite the claim

---

[2]  In a subsequent email, I also sent to LBSF a copy of the December Order regarding the Termination and
Settlement Procedures, on which Principal Life had relied, to remind LBSF that the established procedures for the
settlement of claims arising from the termination of derivative contracts specifically approved the resolution of
claims through a termination agreement incorporating valid rights of setoff.

NY1 8003060v.4

resolution, and later in September, Principal Life reached tentative agreement with LBSF as to the amounts owed under both the Reimbursement Agreements and the ISDA Master Agreement. The mutual debt amounts agreed to between LBSF and Principal Life under the Reimbursement Agreements and the ISDA Master Agreement, respectively, are as follows:

| | |
|---|---|
| Agreed Amount LBSF owes Principal Life under the Reimbursement Agreements: | $34,163,288 |
| Agreed Amount Principal Life owes LBSF under the ISDA Master Agreement: | $13,637,229 |

35.    The resulting net claim **in favor of Principal Life**, after exercising its rights of setoff, equals **$20,526,059**.

36.    LBSF indicated it would need internal approval and the approval of the official committee of unsecured creditors before it could confirm acceptance of these amounts. Principal Life pressed LBSF in October and again in November 2011 as to the status of its internal and creditor committee approvals, but was informed each time that LBSF needed additional time.

37.    Finally, on December 16, 2011, LBSF called me and indicated that it had now obtained internal approvals necessary for agreeing on both the amounts owed Principal Life under the Reimbursement Agreements, and to LBSF under ISDA Master Agreement in the amount of $13,637,229, but was now evaluating the July 2011 global resolution that Principal Life had proposed and wanted further explanation on that proposal.

38.    During January and February of 2012, I engaged in further good faith discussions with LBSF, including a subsequent offer that would have further compromised

Principal Life's valid claim amounts in order to reach a consensual resolution, but have been unable to reach agreement with LBSF.

## No Waiver of Setoff Rights

39.     Since the commencement of the Lehman chapter 11 bankruptcy cases, I have been responsible for and have been the only person from Principal Life in communication with LBSF.  At all times during my discussions with LBSF, I consistently gave notice of Principal Life's valid rights of setoff, filed proofs of claims which plainly and clearly asserted Principal Life's setoff rights, and I maintained Principal Life's setoff rights throughout my discussions with LBSF.  At no time did Principal Life take any actions to waive its rights of setoff under the ISDA Master Agreement, the Bankruptcy Code and New York law.

16

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated:          February 10, 2012

_Debra Svoboda Epp_
Debra Svoboda Epp