# **EXHIBIT 1**

EXECUTION COPY

# EXHIBIT E-1

December 15, 2005

Principal Life

Re:    Coral Commercial Paper Trust

Ladies and Gentlemen:

Reference is made to (i) each Funding Agreement dated as of the date hereof by and between Coral Commercial Paper Trust (the "Issuer") and Principal Life Insurance Company ("Principal Life") and described in Annex A attached hereto (together with any Additional Eligible Assets (as defined in the Trust Agreement), the "Funding Agreements"), (ii) with respect the each Funding Agreement, the related Reserve Fund Agreement entered into by LBSF with various entities (collectively, the "Reserve Fund Counterparties") and described in Annex A attached hereto (collectively, the "Reserve Fund Agreements") and (iii) the Forward Purchase Agreement, dated as of the date hereof (the "Purchase Agreement"), by and between Lehman Brothers Special Financing Inc. ("LBSF") and the Issuer.   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Purchase Agreement.

1.    Delivery of Commercial Paper Notes. (a) So long as LBSF shall be entitled to deliver Qualified Securities to a Reserve Fund Counterparty under and as defined in any relevant Reserve Fund Agreement and the Commercial Paper Notes qualify as Qualified Securities, LBSF shall use commercially reasonable efforts to deliver or arrange for delivery of Commercial Paper Notes issued under the Program Documents to such Reserve Fund Counterparty.  If LBSF fails to perform its obligations under this paragraph and such failure resulted from a Market Disruption (as defined herein) of which LBSF has notified Principal Life no later than the fifth (5th) Business Day immediately following the scheduled date of delivery for such Commercial Paper Notes, then (i) LBSF shall take such actions or cause such actions to be taken in order for the Issuer to issue Commercial Paper Notes, LBSF to purchase of cause to be purchased such Commercial Paper Notes and the proceeds thereof to be deposited or delivered to Principal Life to replenish and fund the Funding Agreement(s) that have been withdrawn as a result of the relevant Market Disruption as soon as practicable (but in no event later than five Business Days following the conclusion, termination or cessation of such Market Disruption) in an amount sufficient to replenish the relevant Funding Agreement(s) to such level immediately preceding such Market Disruption, and (ii) Principal Life shall agree to consent to any commensurate increase in the deposit amount of the Funding Agreement related thereto.

"Market Disruption" means the occurrence or continuance during the period commencing five (5) Business Day preceding any Roll Date (as defined below) and ending on and including such Roll Date of an act of God, natural or man-made disaster, armed conflict, civil or military disturbance, riot, epidemic, loss or malfunction of utilities, computer or communications service, act of terrorism or sabotage, in each case, which prevents LBSF from delivering or arranging for the delivery or otherwise causing the completion of delivery of Qualified Securities to a Reserve Fund Counterparty.

(b)    In the event LBSF determines or has actual knowledge that it is or will be no longer be entitled to deliver Qualified Securities to a Reserve Fund Counterparty, LBSF may at its sole and absolute discretion, on each date on which Commercial Paper Notes mature by their terms (each, a "Roll Date") (i) deliver the Commercial Paper Notes to an alternate Reserve Fund Counterparty, or (ii) cause a Qualified Dealer to purchase the Commercial Paper Notes, in each case, in order that such Funding Agreement will not be withdrawn in respect of such Roll Date.  For the avoidance of doubt, in the event LBSF determines or has actual knowledge that it is or will be no longer be entitled to deliver Qualified Securities to a Reserve Fund Counterparty, LBSF is not obligated in any manner to deliver Commercial Paper Notes or cause a Qualified Dealer to purchase the Commercial Paper Notes under this agreement and instead may make such payments to Principal Life as described in paragraph 2 hereof.

"Qualified Dealer" means a nationally recognized dealer in securities of the type and variety of the Commercial Paper Notes.

2.    Early Withdrawal.  Except as otherwise provided in paragraph 3, if the Issuer shall make an early withdrawal under "Disposition of Fund" of any Funding Agreement for any reason (an "Early Withdrawal") including, without limitation, as a result of the inability of the Issuer to issue replacement Commercial Paper Notes on any stated maturity date of Commercial Paper Notes (other than as a result of a Market Disruption or "Event of Default" with respect to Principal Life under any Funding Agreement; provided that, in the case of an "Event of Default" with respect to a payment default by Principal Life, LBSF has notified Principal Life within three Business Days of such default) (the date of such withdrawal, the "Early Withdrawal Date"), LBSF shall pay Principal Life:  on the Upfront Payment Date (as defined below), an amount equal to the sum of (i) the product of (x) the aggregate outstanding principal amount of the Funding Agreement(s) that has been withdrawn in respect of such Early Withdrawal (the "Original Reduction Amount") and (y) the Applicable Percentage (the "Upfront Termination Amount"); and (ii) the net present value (as determined on the basis of the prevailing LIBOR swap curve as of the Early Withdrawal Date) of an annual fee based on 0.40% per annum on the Original Reduction Amount as amortized on the basis of the expected amortization assumptions under the Expected Amortization Schedule as if such annual fee were payable on each anniversary of such Early Withdrawal Date until the final date set forth in the Expected Amortization Schedule (as defined below).

As used herein:

"Applicable Percentage" means (i) in the case of any notice delivered at least 90 days prior to the Early Withdrawal Date, 0.30%, and (ii) in the case of any notice delivered less than 90 days prior to the Early Withdrawal Date, 0.60%.

"Expected Amortization Schedule" means with respect to any Funding Agreement a schedule specifying the annual amortization schedule expected on such Funding Agreement as set forth on Annex B.

"Upfront Payment Date" means: (a) in the case of any notice delivered at least 6 days prior to the Early Withdrawal Date, the 6th day preceding the Early Withdrawal Date; and

NYLIB5 842620.20

(b) in the case of any notice delivered less than 6 days prior to the Early Withdrawal Date, the fifth (5th) Business Day following the date that notice of early withdrawal is delivered.

3.    Administrative Error.   (a) If LSBF notifies Principal Life that an Early Withdrawal has occurred as a result of an administrative error by LBSF or any affiliate or agent thereof no later than the fifth (5th) Business Day immediately following the related Early Withdrawal Date (an "Administrative Error Withdrawal"), then (i) (i) LBSF shall take such actions or cause such actions to be taken in order for the Issuer to issue Commercial Paper Notes, LSBF to purchase or cause to be purchased such Commercial Paper Notes, and the proceeds thereof to be deposited or delivered to Principal Life to replenish and fund the Funding Agreement(s) that have been withdrawn as a result of the relevant Administrative Error Withdrawal as soon as practicable (but in no event later than five Business Days following Administrative Error Withdrawal) in an amount sufficient to replenish the relevant Funding Agreement(s) to such level immediately preceding such Administrative Error Withdrawal, and (ii) Principal Life shall agree to consent to any commensurate increase in the deposit amount of the Funding Agreement related thereto.

(b) In the event of an Administrative Error Withdrawal, LBSF shall pay or cause to be paid to Principal Life, on the fifth (5th) Business Day following the related Early Withdrawal Date, and amount equal to the sum of the Daily Interest Amounts due from and including such Early Withdrawal Date to but excluding the date of replenishment.

"Daily Interest Amount" means, with respect to any day, an amount equal to the product of (a) the Original Reduction Amount in respect of such Early Withdrawal, and (b) the greater of (i) 0.0025% and (ii) the product of (x) the Funding Cost Percentage for such day and (y) 1/360.

"Funding Cost Percentage" means the greater of (i) zero and (ii) the difference between the overnight fed funds rate, quoted on a per annum basis, minus the current crediting rate on the Funding Agreement for which the Administrative Error Withdrawal has occurred.

4.    Principal Life Downgrade.   (a) If the Short-Term Ratings Requirement and, if applicable, the Long-Term Ratings Requirement (each, as set forth in Annex A attached hereto) are not satisfied in respect of any Commercial Paper Notes as a result of a withdrawal, suspension or downgrade of Principal Life's rating by Moody's or S&P (a "Principal Life Downgrade Event"), (i) Principal Life shall pay LBSF on each Roll Date until the expected maturity date of the related Funding Agreement (based on the Expected Amortization Schedule) any Make-whole Amount (as defined in Annex C attached hereto) for such Roll Date, and (ii) Principal Life shall pay LBSF (if a positive number) or LBSF shall pay Principal Life (if an negative number) on each Roll Date until the expected maturity date of the related Funding Agreement (based on the Expected Amortization Schedule), an amount, if any, equal to absolute value of the Par Differential (as defined in the Annex C attached hereto) for such Roll Date. For the avoidance of doubt, the Short-Term Ratings Requirement and the Long-Term Ratings Requirement shall continue to apply for purposes of this paragraph 4 and this agreement notwithstanding the termination of the applicable Reserve Fund Agreement(s).

-3-

(b)    In addition, following the occurrence of a Principal Life Downgrade Event, Principal Life may elect to notify LBSF to cause an early withdrawal of the Funding Agreement on any Roll Date at par by delivering written notice at least five (5) Business Days prior to such Roll Date; provided, that, Principal Life shall continue to pay the Make-whole Amounts set forth in paragraph 4(a) above as if Commercial Paper Notes were continued to be issued until the expected maturity date of the related Funding Agreement (based on the Expected Amortization Schedule).

(c)    Notwithstanding paragraph 4(a) above, if Principal Life's long-term rating is withdrawn, suspended or downgraded below "Baa2" or "BBB" by Moody's or S&P, respectively, LBSF may, as a condition to the purchase or delivery of any Commercial Paper Notes or in respect of any performance of LBSF's obligations under this agreement or the Purchase Agreement, require Principal Life to deposit an amount equal to the Par Differential due from Principal Life under clause (a) above to an account as specified by LBSF prior to such purchase, delivery or performance, as applicable.

5.    <u>Determination of Amounts</u>.    Any determination of amounts under paragraph 4 above shall be determined in good faith on a commercially reasonable basis.

6.    <u>Payments; Accounts; Notices</u>.    Payment of amounts due under this agreement shall be made within two Business Days upon demand therefor in fully transferable funds by the party receiving such payment for credit to the accounts specified below:

Lehman Brothers Special Financing Inc.:

JPMorgan Chase Bank
ABA# 0210000021
A/C:066143543
fbo SLHIUS3XXXX

Principal Life:

Wells Fargo Bank, N.A.
ABA # 121000248
A/C # 0000901239
A/C Name:  Principal Life Insurance Company (A/C # 0000901239)

All demands, notices and communications upon or to Lehman Brothers Inc. and Principal Life under this agreement shall be in writing, personally delivered, sent by electronic facsimile (with hard copy to follow via first class mail) or mailed by certified mail-return receipt requested, and shall be deemed to have been duly given upon receipt as follows: in the case of Lehman Brothers Inc., at 745 Seventh Avenue, New York, NY 10019, Attention: Fixed Income Structured Credit Trading, facsimile number: (646) 758-4975, telephone confirmation number: (212) 526-6575 in the case of Principal Life, at Principal Life Insurance Company, at 711 High Street, Des Moines, Iowa 50392, Attention:   Legal Department, facsimile number: (312) 853-7036, telephone confirmation number: (515) 247-5111, or at such other address as shall be designated in a written notice to the other party to this agreement.

NYLIB5 842620.20

7.    <u>Delayed Payment</u>.  In the event of a Market Disruption, each party may elect to make payments due under this agreement (and only due under this agreement) up to 30 days after the due date for such payment; provided, that such payment shall be made with interest at the rate of overnight LIBOR from and including the date payment was due to but excluding the date payment was made.

8.    <u>Assignment</u>.  Principal Life agrees that it will not assign its rights and obligations of any Funding Agreement without LBSF's prior written consent.  In the event of any such assignment, such assignee shall assume Principal Life's rights and obligations under this agreement with respect to such Funding Agreement by executing an amendment hereto in a form acceptable to LBSF and, upon the execution and delivery of such amendment, Principal Life shall be released from its obligations hereunder with respect to such Funding Agreement.

9.    <u>Acknowledgement</u>.  Principal Life acknowledges that LBSF shall pay to CDR Financial Products, Inc. ("CDR") a fee of $ 873,315.27 which is approximately equal to 5 basis points per annum on the Funding Agreements calculated to the weighted average maturity of the Funding Agreements and discounted using semi-annual compounding at a rate of 5.00% per annum.

10.    <u>Maintenance of Pledge</u>.  Principal Life hereby agrees that from time to time, at its own commercially reasonable cost and expense, to promptly execute and deliver and will cause to be executed and delivered, all further instruments and documents, including, without limitation, such acknowledgements and assignment and pledge agreements and opinions of counsel reasonably requested which are necessary to effect or maintain a valid pledge in the Funding Agreements, and will take all further action and will cause all further action to be taken that the Collateral Agent and/or Administrative Agent may reasonably request or known by Principal Life to be required by law, in order to create, preserve, perfect and protect each security interest or pledge granted in respect of the Funding Agreements.

11.    <u>Custody of Funding Agreements</u>.  LBSF acknowledges that each Funding Agreement must be held by a custodian of the Issuer in the State of Iowa.

12.    <u>Miscellaneous</u>.  This agreement constitutes the entire agreement among the parties hereto with respect to the matters covered hereby and supersedes all prior agreements and understandings among the parties.

This agreement may be executed in any number of counterparts and by different parties thereto on separate counterparts, each of which counterparts, when executed and delivered, shall be deemed an original and all of which counterparts, taken together, shall constitute one and the same agreement.

Any provision of this agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions hereof or affecting the validity or enforceability, of such provision in any other jurisdiction.

-5-

This agreement shall be construed in accorda    e with and governed by the substantive laws of
the State of New York (without regard to choi    of law principles).

Very truly yours,

LEHMAN BROTHERS SPECIAL
FINANCING INC.

By: _____
    Name:    J. COURTNEY JENKINS
    Title:    VICE PRESIDENT

ACKNOWLEDGED AND AGREED:

PRINCIPAL LIFE INSURANCE COMPANY

By: _____
    Name:
    Title:

[Reimbursement Agreement]

This agreement shall be construed in accordance with and governed by the substantive laws of the State of New York (without regard to choice of law principles).

Very truly yours,

LEHMAN BROTHERS SPECIAL
FINANCING INC.

By:_____
    Name:
    Title:

ACKNOWLEDGED AND AGREED:

PRINCIPAL LIFE INSURANCE COMPANY

By: _____
    Name:   Kelly A. Grossman
    Title:   Authorized Signatory

[Reimbursement Agreement]

<u>Annex A</u>

The Funding Agreements and
Reserve Fund Agreements

1.    Funding Agreement (No. 5-18241), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Reserve Fund Agreement dated as of January 29, 2003, by and among Golden State Tobacco Securitization Corporation, BNY Western Trust Company, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time.  (Golden State Tobacco Securitization Corp.).

> Short-Term Ratings Requirement: A-1/P1
> Long-Term Ratings Requirement: A/A1

2.    Funding Agreement (No. 6-13201), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Reserve Fund Agreement dated as of April 8, 2005, by and among Raleigh-Durham Airport Authority, The Bank of New York Trust Company, N.A., as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Raleigh-Durham Airport Authority).

> Short-Term Ratings Requirement: A-1+/P1

3.    Funding Agreement (No. 8-02631), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Reserve Fund Agreement dated as of January 14, 2005, by and among Catholic Healthcare East, J.P. Morgan Trust Company, National Association, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time.  (Catholic Health East).

> Short-Term Ratings Requirement: A-1/P1

A-1

Reserve Fund Agreement dated as of April 17, 2004, by and among Denver Water Board, BNY Western Trust Company, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Denver Water Board A).

    Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of August 9, 2000, by and among MedCentral Health System, Chase Manhattan Trust Company, National Association, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (MedCentral Health System).

    Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of April 7, 2004, by and among City and County of Denver, acting through its Board of Water Commissioners, BNY Western Trust Company, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Denver Water Board B).

    Short-Term Ratings Requirement: A-1/P1

4.    Funding Agreement (No. 6-13202), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Reserve Fund Agreement dated as of August 4, 2004, by and among Camden-Clarke Memorial Hospital, United Bank, Inc., as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Camden-Clarke Memorial Hospital).

    Short-Term Ratings Requirement: A-1/P1

5.    Funding Agreement (No. 4-53237), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Stabilization Fund Agreement dated as of May 24, 2005, by and among The County of DuPage, Illinois, LaSalle Bank National Association, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (DuPage County).

    Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of August 23, 2005, by and among Val Verde Unified School District, The Bank of New York Trust Company, N.A., as trustee, and Lehman

A-2

Brothers Special Financing Inc., as amended and supplemented from time to time.  (Val
Verde Unified School District).

       Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of October 7, 2005, by and among Twin Oaks Juvenile
Development, Inc., The Bank of New York Trust Company, N.A., as trustee, and
Lehman Brothers Special Financing Inc., as amended and supplemented from time to
time.  (Madison County Twin Oaks).

       Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of November 16, 2005, by and among Tampa Sports
Authority, Sun Trust Bank, as trustee, and Lehman Brothers Special Financing Inc., as
amended and supplemented from time to time.  (Tampa Sports Authority A).

       Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of November 16, 2005, by and among Tampa Sports
Authority, Sun Trust Bank, as trustee, and Lehman Brothers Special Financing Inc., as
amended and supplemented from time to time.  (Tampa Sports Authority B).

       Short-Term Ratings Requirement: A-1/P1

6.    Funding Agreement (No. 4-53238), dated December 15, 2005, between Coral
Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Reserve Fund Agreement dated as of July 28, 2001, by and among Wells Fargo Bank
West, N.A., as trustee, and Lehman Brothers Special Financing Inc., as amended and
supplemented from time to time.  (Northwest Parkway Public Highway Authority).

       Short-Term Ratings Requirement: A-1+/P1

7.    Funding Agreement (No. 4-53236), dated December 15, 2005, between Coral
Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:  As set forth on Annex B.

Debt Service Reserve Fund Agreement dated as of December 18, 1996, by and among
City of Big Bear Lake, California, Union Bank of California, N.A., as trustee, and
Lehman Brothers Special Financing Inc., as amended and supplemented from time to
time.  (Department of Water & Power, City of Big Bear Lake).

       Short-Term Ratings Requirement: A-1/P1

A-3

Reserve Fund Agreement dated as of June 24, 2004, by and among San Mateo County Community College District, BNY Western Trust Company, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (San Mateo County Community College District).

Short-Term Ratings Requirement: A-1/P1

Reserve Fund Agreement dated as of November 16, 2004, by and among California Lutheran University, Union Bank of California, N.A., as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (California Lutheran University).

Short-Term Ratings Requirement: A-1/P1

8.    Funding Agreement (No. 8-02632), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule: As set forth on Annex B.

Reserve Fund Agreement dated as of July 1, 2004, by and among Pleasanton Joint Powers Financing Authority, U.S. Bank National Association, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Pleasanton Joint Powers Financing Authority).

Short-Term Ratings Requirement: A-1/P1

9.    Funding Agreement (No. 5-18242), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule: As set forth on Annex B.

Reserve Fund Agreement dated as of August 22, 2002, by and among California County Tobacco Securitization Agency, BNY Western Trust Company, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (California County Tobacco Securitization Agency).

Short-Term Ratings Requirement: A-1+/P1

10.    Funding Agreement (No. 5-18243), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule: As set forth on Annex B.

Reserve Fund Agreement dated as of August 25, 2005, by and among Monroe Tobacco Asset Securitization, Manufacturers and Traders Trust Company, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Monroe Tobacco Asset Securitization).

A-4

Short-Term Ratings Requirement: A-1/P1

11.    Funding Agreement (No. 7-07554), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule: As set forth on Annex B.

Debt Service Reserve Fund Agreement dated as of June 8, 1998, by and among Conway Hospital, Inc., The Bank of New York, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Conway Hospital).

Short-Term Ratings Requirement: A-1+/P1

12.    Funding Agreement (No. 5-18245), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule: As set forth on Annex B.

Reserve Fund Agreement dated as of July 8, 2005, by and among Sweetwater Authority, Union Bank of California, National Association, as trustee, and Lehman Brothers Special Financing Inc., as amended and supplemented from time to time. (Sweetwater Authority (San Diego County) Water).

Short-Term Ratings Requirement: A-1+/P1

A-5

Expected Amortization Schedule

1.    Funding Agreement (No. 5-18241), dated December 15, 2005, between Coral
Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

Semi-Annual Issuance:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 5/31/2006 | 11/30/2006 | 58,390,000.00 |
| 11/30/2006 | 5/31/2007 | 58,390,000.00 |
| 5/31/2007 | 11/30/2007 | 58,390,000.00 |
| 11/30/2007 | 5/30/2008 | 58,390,000.00 |
| 5/30/2008 | 11/28/2008 | 58,390,000.00 |
| 11/28/2008 | 5/29/2009 | 58,390,000.00 |
| 5/29/2009 | 11/30/2009 | 58,390,000.00 |
| 11/30/2009 | 5/28/2010 | 58,390,000.00 |
| 5/28/2010 | 11/30/2010 | 58,390,000.00 |
| 11/30/2010 | 5/31/2011 | 58,390,000.00 |
| 5/31/2011 | 11/30/2011 | 58,390,000.00 |
| 11/30/2011 | 5/31/2012 | 58,390,000.00 |
| 5/31/2012 | 11/30/2012 | 58,390,000.00 |
| 11/30/2012 | 5/31/2013 | 58,390,000.00 |
| 5/31/2013 | 11/29/2013 | 58,390,000.00 |
| 11/29/2013 | 5/30/2014 | 58,390,000.00 |
| 5/30/2014 | 11/28/2014 | 58,390,000.00 |
| 11/28/2014 | 5/29/2015 | 58,390,000.00 |
| 5/29/2015 | 11/30/2015 | 58,390,000.00 |
| 11/30/2015 | 5/31/2016 | 58,390,000.00 |
| 5/31/2016 | 11/30/2016 | 58,390,000.00 |
| 11/30/2016 | 5/31/2017 | 58,390,000.00 |
| 5/31/2017 | 11/30/2017 | 58,390,000.00 |
| 11/30/2017 | 5/31/2018 | 58,390,000.00 |
| 5/31/2018 | 11/30/2018 | 58,390,000.00 |
| 11/30/2018 | 5/31/2019 | 58,390,000.00 |
| 5/31/2019 | 11/29/2019 | 58,390,000.00 |
| 11/29/2019 | 5/29/2020 | 58,390,000.00 |
| 5/29/2020 | 11/30/2020 | 58,390,000.00 |
| 11/30/2020 | 5/28/2021 | 58,390,000.00 |
| 5/28/2021 | 11/30/2021 | 58,390,000.00 |
| 11/30/2021 | 5/31/2022 | 58,390,000.00 |

B-1

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 5/31/2022 | 11/30/2022 | 58,390,000.00 |
| 11/30/2022 | 5/31/2023 | 58,390,000.00 |
| 5/31/2023 | 11/30/2023 | 58,390,000.00 |
| 11/30/2023 | 5/31/2024 | 58,390,000.00 |
| 5/31/2024 | 11/29/2024 | 58,390,000.00 |
| 11/29/2024 | 5/30/2025 | 58,390,000.00 |
| 5/30/2025 | 12/1/2025 | 58,390,000.00 |

Quarterly Issuance:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 2/28/2006 | 5/31/2006 | 58,390,000.00 |
| 5/31/2006 | 8/31/2006 | 58,390,000.00 |
| 8/31/2006 | 11/30/2006 | 58,390,000.00 |
| 11/30/2006 | 2/28/2007 | 58,390,000.00 |
| 2/28/2007 | 5/31/2007 | 58,390,000.00 |
| 5/31/2007 | 8/31/2007 | 58,390,000.00 |
| 8/31/2007 | 11/30/2007 | 58,390,000.00 |
| 11/30/2007 | 2/29/2008 | 58,390,000.00 |
| 2/29/2008 | 5/30/2008 | 58,390,000.00 |
| 5/30/2008 | 8/29/2008 | 58,390,000.00 |
| 8/29/2008 | 11/28/2008 | 58,390,000.00 |
| 11/28/2008 | 2/27/2009 | 58,390,000.00 |
| 2/27/2009 | 5/29/2009 | 58,390,000.00 |
| 5/29/2009 | 8/31/2009 | 58,390,000.00 |
| 8/31/2009 | 11/30/2009 | 58,390,000.00 |
| 11/30/2009 | 2/26/2010 | 58,390,000.00 |
| 2/26/2010 | 5/28/2010 | 58,390,000.00 |
| 5/28/2010 | 8/31/2010 | 58,390,000.00 |
| 8/31/2010 | 11/30/2010 | 58,390,000.00 |
| 11/30/2010 | 2/28/2011 | 58,390,000.00 |
| 2/28/2011 | 5/31/2011 | 58,390,000.00 |
| 5/31/2011 | 8/31/2011 | 58,390,000.00 |
| 8/31/2011 | 11/30/2011 | 58,390,000.00 |
| 11/30/2011 | 2/29/2012 | 58,390,000.00 |
| 2/29/2012 | 5/31/2012 | 58,390,000.00 |
| 5/31/2012 | 8/31/2012 | 58,390,000.00 |
| 8/31/2012 | 11/30/2012 | 58,390,000.00 |
| 11/30/2012 | 2/28/2013 | 58,390,000.00 |
| 2/28/2013 | 5/31/2013 | 58,390,000.00 |
| 5/31/2013 | 8/30/2013 | 58,390,000.00 |

NYLIB5 842620.20

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 8/30/2013 | 11/29/2013 | 58,390,000.00 |
| 11/29/2013 | 2/28/2014 | 58,390,000.00 |
| 2/28/2014 | 5/30/2014 | 58,390,000.00 |
| 5/30/2014 | 8/29/2014 | 58,390,000.00 |
| 8/29/2014 | 11/28/2014 | 58,390,000.00 |
| 11/28/2014 | 2/27/2015 | 58,390,000.00 |
| 2/27/2015 | 5/29/2015 | 58,390,000.00 |
| 5/29/2015 | 8/31/2015 | 58,390,000.00 |
| 8/31/2015 | 11/30/2015 | 58,390,000.00 |
| 11/30/2015 | 2/29/2016 | 58,390,000.00 |
| 2/29/2016 | 5/31/2016 | 58,390,000.00 |
| 5/31/2016 | 8/31/2016 | 58,390,000.00 |
| 8/31/2016 | 11/30/2016 | 58,390,000.00 |
| 11/30/2016 | 2/28/2017 | 58,390,000.00 |
| 2/28/2017 | 5/31/2017 | 58,390,000.00 |
| 5/31/2017 | 8/31/2017 | 58,390,000.00 |
| 8/31/2017 | 11/30/2017 | 58,390,000.00 |
| 11/30/2017 | 2/28/2018 | 58,390,000.00 |
| 2/28/2018 | 5/31/2018 | 58,390,000.00 |
| 5/31/2018 | 8/31/2018 | 58,390,000.00 |
| 8/31/2018 | 11/30/2018 | 58,390,000.00 |
| 11/30/2018 | 2/28/2019 | 58,390,000.00 |
| 2/28/2019 | 5/31/2019 | 58,390,000.00 |
| 5/31/2019 | 8/30/2019 | 58,390,000.00 |
| 8/30/2019 | 11/29/2019 | 58,390,000.00 |
| 11/29/2019 | 2/28/2020 | 58,390,000.00 |
| 2/28/2020 | 5/29/2020 | 58,390,000.00 |
| 5/29/2020 | 8/31/2020 | 58,390,000.00 |
| 8/31/2020 | 11/30/2020 | 58,390,000.00 |
| 11/30/2020 | 2/26/2021 | 58,390,000.00 |
| 2/26/2021 | 5/28/2021 | 58,390,000.00 |
| 5/28/2021 | 8/31/2021 | 58,390,000.00 |
| 8/31/2021 | 11/30/2021 | 58,390,000.00 |
| 11/30/2021 | 2/28/2022 | 58,390,000.00 |
| 2/28/2022 | 5/31/2022 | 58,390,000.00 |
| 5/31/2022 | 8/31/2022 | 58,390,000.00 |
| 8/31/2022 | 11/30/2022 | 58,390,000.00 |
| 11/30/2022 | 2/28/2023 | 58,390,000.00 |
| 2/28/2023 | 5/31/2023 | 58,390,000.00 |
| 5/31/2023 | 8/31/2023 | 58,390,000.00 |
| 8/31/2023 | 11/30/2023 | 58,390,000.00 |
| 11/30/2023 | 2/29/2024 | 58,390,000.00 |
| 2/29/2024 | 5/31/2024 | 58,390,000.00 |

B-3

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 5/31/2024 | 8/30/2024 | 58,390,000.00 |
| 8/30/2024 | 11/29/2024 | 58,390,000.00 |
| 11/29/2024 | 2/28/2025 | 58,390,000.00 |
| 2/28/2025 | 5/30/2025 | 58,390,000.00 |
| 5/30/2025 | 8/29/2025 | 58,390,000.00 |
| 8/29/2025 | 12/1/2025 | 58,390,000.00 |

2.    Funding Agreement (No. 6-13201), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 5/1/2006 | 11/1/2006 | 8,153,308 |
| 11/1/2006 | 5/1/2007 | 8,153,308 |
| 5/1/2007 | 11/1/2007 | 8,153,308 |
| 11/1/2007 | 5/1/2008 | 8,153,308 |
| 5/1/2008 | 11/3/2008 | 8,153,308 |
| 11/3/2008 | 5/1/2009 | 8,153,308 |
| 5/1/2009 | 11/2/2009 | 8,153,308 |
| 11/2/2009 | 5/3/2010 | 8,153,308 |
| 5/3/2010 | 11/1/2010 | 8,153,308 |
| 11/1/2010 | 5/2/2011 | 8,153,308 |
| 5/2/2011 | 11/1/2011 | 8,153,308 |
| 11/1/2011 | 5/1/2012 | 8,153,308 |
| 5/1/2012 | 11/1/2012 | 8,153,308 |
| 11/1/2012 | 5/1/2013 | 8,153,308 |
| 5/1/2013 | 11/1/2013 | 8,153,308 |
| 11/1/2013 | 5/1/2014 | 8,153,308 |
| 5/1/2014 | 11/3/2014 | 8,153,308 |
| 11/3/2014 | 5/1/2015 | 8,153,308 |
| 5/1/2015 | 11/2/2015 | 8,153,308 |
| 11/2/2015 | 5/2/2016 | 8,153,308 |
| 5/2/2016 | 11/1/2016 | 8,153,308 |
| 11/1/2016 | 5/1/2017 | 8,153,308 |
| 5/1/2017 | 11/1/2017 | 8,153,308 |
| 11/1/2017 | 5/1/2018 | 8,153,308 |
| 5/1/2018 | 11/1/2018 | 8,153,308 |
| 11/1/2018 | 5/1/2019 | 8,153,308 |

B-4

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 5/1/2019 | 11/1/2019 | 8,153,308 |
| 11/1/2019 | 5/1/2020 | 8,153,308 |
| 5/1/2020 | 11/2/2020 | 8,153,308 |
| 11/2/2020 | 5/3/2021 | 8,153,308 |
| 5/3/2021 | 11/1/2021 | 8,153,308 |
| 11/1/2021 | 5/2/2022 | 8,153,308 |
| 5/2/2022 | 11/1/2022 | 8,153,308 |
| 11/1/2022 | 5/1/2023 | 8,153,308 |
| 5/1/2023 | 11/1/2023 | 8,153,308 |
| 11/1/2023 | 5/1/2024 | 8,153,308 |
| 5/1/2024 | 11/1/2024 | 8,153,308 |
| 11/1/2024 | 5/1/2025 | 8,153,308 |
| 5/1/2025 | 11/3/2025 | 8,153,308 |

3.   Funding Agreement (No. 8-02631), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 5/15/2006 | 11/15/2006 | 16,549,453 |
| 11/15/2006 | 5/15/2007 | 16,549,453 |
| 5/15/2007 | 11/15/2007 | 16,549,453 |
| 11/15/2007 | 5/15/2008 | 16,549,453 |
| 5/15/2008 | 11/17/2008 | 16,549,453 |
| 11/17/2008 | 5/15/2009 | 16,549,453 |
| 5/15/2009 | 11/16/2009 | 16,549,453 |
| 11/16/2009 | 5/17/2010 | 16,549,453 |
| 5/17/2010 | 11/15/2010 | 16,549,453 |
| 11/15/2010 | 5/16/2011 | 16,549,453 |
| 5/16/2011 | 11/15/2011 | 16,549,453 |
| 11/15/2011 | 5/15/2012 | 14,228,453 |
| 5/15/2012 | 11/15/2012 | 14,228,453 |
| 11/15/2012 | 5/15/2013 | 14,228,453 |
| 5/15/2013 | 11/15/2013 | 14,228,453 |
| 11/15/2013 | 5/15/2014 | 14,228,453 |
| 5/15/2014 | 11/17/2014 | 14,228,453 |
| 11/17/2014 | 5/15/2015 | 6,966,581 |
| 5/15/2015 | 11/16/2015 | 6,966,581 |

B-5

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 11/16/2015 | 5/16/2016 | 6,966,581 |
| 5/16/2016 | 11/15/2016 | 6,966,581 |
| 11/15/2016 | 5/15/2017 | 3,371,581 |
| 5/15/2017 | 11/15/2017 | 3,371,581 |
| 11/15/2017 | 5/15/2018 | 3,371,581 |
| 5/15/2018 | 11/15/2018 | 3,371,581 |
| 11/15/2018 | 5/15/2019 | 3,371,581 |
| 5/15/2019 | 11/15/2019 | 3,371,581 |
| 11/15/2019 | 5/15/2020 | 3,371,581 |
| 5/15/2020 | 11/16/2020 | 3,371,581 |
| 11/16/2020 | 5/17/2021 | 3,371,581 |
| 5/17/2021 | 11/15/2021 | 3,371,581 |
| 11/15/2021 | 5/16/2022 | 3,371,581 |
| 5/16/2022 | 11/15/2022 | 3,371,581 |
| 11/15/2022 | 5/15/2023 | 3,371,581 |
| 5/15/2023 | 11/15/2023 | 3,371,581 |
| 11/15/2023 | 5/15/2024 | 3,371,581 |
| 5/15/2024 | 11/15/2024 | 3,371,581 |
| 11/15/2024 | 5/15/2025 | 3,371,581 |

4.    Funding Agreement (No. 6-13202), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 2/15/2006 | 8/15/2006 | 6,484,456.00 |
| 8/15/2006 | 2/15/2007 | 6,484,456.00 |
| 2/15/2007 | 8/15/2007 | 6,484,456.00 |
| 8/15/2007 | 2/15/2008 | 6,484,456.00 |
| 2/15/2008 | 8/15/2008 | 6,484,456.00 |
| 8/15/2008 | 2/17/2009 | 6,484,456.00 |
| 2/17/2009 | 8/17/2009 | 6,484,456.00 |
| 8/17/2009 | 2/16/2010 | 6,484,456.00 |
| 2/16/2010 | 8/16/2010 | 6,484,456.00 |
| 8/16/2010 | 2/15/2011 | 6,484,456.00 |
| 2/15/2011 | 8/15/2011 | 6,484,456.00 |
| 8/15/2011 | 2/15/2012 | 6,484,456.00 |
| 2/15/2012 | 8/15/2012 | 6,484,456.00 |
| 8/15/2012 | 2/15/2013 | 6,484,456.00 |

B-6

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 2/15/2013 | 8/15/2013 | 6,484,456.00 |
| 8/15/2013 | 2/18/2014 | 6,484,456.00 |
| 2/18/2014 | 8/15/2014 | 6,484,456.00 |
| 8/15/2014 | 2/17/2015 | 6,484,456.00 |
| 2/17/2015 | 8/17/2015 | 6,484,456.00 |
| 8/17/2015 | 2/16/2016 | 6,484,456.00 |
| 2/16/2016 | 8/15/2016 | 6,484,456.00 |
| 8/15/2016 | 2/15/2017 | 6,484,456.00 |
| 2/15/2017 | 8/15/2017 | 6,484,456.00 |
| 8/15/2017 | 2/15/2018 | 6,484,456.00 |
| 2/15/2018 | 8/15/2018 | 6,484,456.00 |
| 8/15/2018 | 2/15/2019 | 6,484,456.00 |
| 2/15/2019 | 8/15/2019 | 6,484,456.00 |
| 8/15/2019 | 2/18/2020 | 6,484,456.00 |
| 2/18/2020 | 8/17/2020 | 6,484,456.00 |
| 8/17/2020 | 2/16/2021 | 6,484,456.00 |
| 2/16/2021 | 8/16/2021 | 6,484,456.00 |
| 8/16/2021 | 2/15/2022 | 6,484,456.00 |
| 2/15/2022 | 8/15/2022 | 6,484,456.00 |
| 8/15/2022 | 2/15/2023 | 6,484,456.00 |
| 2/15/2023 | 8/15/2023 | 6,484,456.00 |
| 8/15/2023 | 2/15/2024 | 6,484,456.00 |

5.  Funding Agreement (No. 4-53237), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 1/3/2006 | 7/3/2006 | 21,107,281 |
| 7/3/2006 | 1/2/2007 | 21,107,281 |
| 1/2/2007 | 7/2/2007 | 21,107,281 |
| 7/2/2007 | 1/2/2008 | 21,107,281 |
| 1/2/2008 | 7/1/2008 | 21,107,281 |
| 7/1/2008 | 1/2/2009 | 21,107,281 |
| 1/2/2009 | 7/1/2009 | 21,107,281 |
| 7/1/2009 | 1/4/2010 | 21,107,281 |
| 1/4/2010 | 7/1/2010 | 21,107,281 |
| 7/1/2010 | 1/3/2011 | 21,107,281 |
| 1/3/2011 | 7/1/2011 | 21,107,281 |

NYLIB5 842620.20

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 7/1/2011 | 1/3/2012 | 21,107,281 |
| 1/3/2012 | 7/2/2012 | 21,107,281 |
| 7/2/2012 | 1/2/2013 | 21,107,281 |
| 1/2/2013 | 7/1/2013 | 21,107,281 |
| 7/1/2013 | 1/2/2014 | 21,107,281 |
| 1/2/2014 | 7/1/2014 | 21,107,281 |
| 7/1/2014 | 1/2/2015 | 21,107,281 |
| 1/2/2015 | 7/1/2015 | 21,107,281 |
| 7/1/2015 | 1/4/2016 | 19,524,581 |
| 1/4/2016 | 7/1/2016 | 19,524,581 |
| 7/1/2016 | 1/3/2017 | 19,524,581 |
| 1/3/2017 | 7/3/2017 | 19,524,581 |
| 7/3/2017 | 1/2/2018 | 19,524,581 |
| 1/2/2018 | 7/2/2018 | 19,524,581 |
| 7/2/2018 | 1/2/2019 | 19,524,581 |
| 1/2/2019 | 7/1/2019 | 19,524,581 |
| 7/1/2019 | 1/2/2020 | 19,524,581 |
| 1/2/2020 | 7/1/2020 | 19,524,581 |
| 7/1/2020 | 1/4/2021 | 19,524,581 |
| 1/4/2021 | 7/1/2021 | 14,119,137 |
| 7/1/2021 | 1/3/2022 | 14,119,137 |
| 1/3/2022 | 7/1/2022 | 14,119,137 |
| 7/1/2022 | 1/3/2023 | 14,119,137 |
| 1/3/2023 | 7/3/2023 | 14,119,137 |
| 7/3/2023 | 1/2/2024 | 14,119,137 |
| 1/2/2024 | 7/1/2024 | 14,119,137 |
| 7/1/2024 | 1/2/2025 | 14,119,137 |
| 1/2/2025 | 7/1/2025 | 14,119,137 |
| 7/1/2025 | 1/2/2026 | 14,119,137 |

6.    Funding Agreement (No. 4-53238), dated December 15, 2005, between Coral
Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 12/15/2005 | 6/15/2006 | 5,078,245 |
| 6/15/2006 | 12/15/2006 | 5,078,245 |
| 12/15/2006 | 6/15/2007 | 5,078,245 |
| 6/15/2007 | 12/17/2007 | 5,078,245 |

B-8

NYLIB5 842620.20

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 12/17/2007 | 6/16/2008 | 5,078,245 |
| 6/16/2008 | 12/15/2008 | 5,078,245 |
| 12/15/2008 | 6/15/2009 | 5,078,245 |
| 6/15/2009 | 12/15/2009 | 5,078,245 |
| 12/15/2009 | 6/15/2010 | 5,078,245 |
| 6/15/2010 | 12/15/2010 | 5,078,245 |
| 12/15/2010 | 6/15/2011 | 5,078,245 |

7.    Funding Agreement (No. 4-53236), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 4/3/2006 | 10/2/2006 | 7,908,016 |
| 10/2/2006 | 4/2/2007 | 7,908,016 |
| 4/2/2007 | 10/1/2007 | 7,908,016 |
| 10/1/2007 | 4/1/2008 | 7,908,016 |
| 4/1/2008 | 10/1/2008 | 7,908,016 |
| 10/1/2008 | 4/1/2009 | 7,908,016 |
| 4/1/2009 | 10/1/2009 | 7,908,016 |
| 10/1/2009 | 4/1/2010 | 7,908,016 |
| 4/1/2010 | 10/1/2010 | 7,908,016 |
| 10/1/2010 | 4/1/2011 | 7,908,016 |
| 4/1/2011 | 10/3/2011 | 7,908,016 |
| 10/3/2011 | 4/2/2012 | 7,908,016 |
| 4/2/2012 | 10/1/2012 | 7,908,016 |
| 10/1/2012 | 4/1/2013 | 7,908,016 |
| 4/1/2013 | 10/1/2013 | 7,908,016 |
| 10/1/2013 | 4/1/2014 | 7,908,016 |
| 4/1/2014 | 10/1/2014 | 7,908,016 |
| 10/1/2014 | 4/1/2015 | 7,908,016 |
| 4/1/2015 | 10/1/2015 | 7,908,016 |
| 10/1/2015 | 4/1/2016 | 7,908,016 |
| 4/1/2016 | 10/3/2016 | 7,908,016 |
| 10/3/2016 | 4/3/2017 | 7,908,016 |
| 4/3/2017 | 10/2/2017 | 7,908,016 |
| 10/2/2017 | 4/2/2018 | 7,908,016 |
| 4/2/2018 | 10/1/2018 | 7,908,016 |
| 10/1/2018 | 4/1/2019 | 7,908,016 |

B-9

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 4/1/2019 | 10/1/2019 | 7,908,016 |
| 10/1/2019 | 4/1/2020 | 7,908,016 |
| 4/1/2020 | 10/1/2020 | 7,908,016 |
| 10/1/2020 | 4/1/2021 | 7,908,016 |
| 4/1/2021 | 10/1/2021 | 7,908,016 |
| 10/1/2021 | 4/1/2022 | 7,908,016 |
| 4/1/2022 | 10/3/2022 | 4,498,216 |
| 10/3/2022 | 4/3/2023 | 4,498,216 |
| 4/3/2023 | 10/2/2023 | 4,498,216 |
| 10/2/2023 | 4/1/2024 | 4,498,216 |
| 4/1/2024 | 10/1/2024 | 4,498,216 |
| 10/1/2024 | 4/1/2025 | 4,498,216 |
| 4/1/2025 | 10/1/2025 | 4,498,216 |

8.   Funding Agreement (No. 8-02632), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 3/2/2006 | 9/5/2006 | 3,824,250 |
| 9/5/2006 | 3/2/2007 | 3,824,250 |
| 3/2/2007 | 9/4/2007 | 3,824,250 |
| 9/4/2007 | 2/29/2008 | 3,824,250 |
| 2/29/2008 | 9/2/2008 | 3,824,250 |
| 9/2/2008 | 3/2/2009 | 3,824,250 |
| 3/2/2009 | 9/2/2009 | 3,824,250 |
| 9/2/2009 | 3/2/2010 | 3,824,250 |
| 3/2/2010 | 9/2/2010 | 3,824,250 |
| 9/2/2010 | 3/2/2011 | 3,824,250 |
| 3/2/2011 | 9/2/2011 | 3,824,250 |

9.    Funding Agreement (No. 5-18242), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 3/1/2006 | 6/1/2006 | 3,149,269 |
| 6/1/2006 | 9/1/2006 | 3,149,269 |
| 9/1/2006 | 12/1/2006 | 3,149,269 |
| 12/1/2006 | 3/1/2007 | 3,149,269 |
| 3/1/2007 | 6/1/2007 | 3,149,269 |
| 6/1/2007 | 9/4/2007 | 3,149,269 |
| 9/4/2007 | 12/3/2007 | 3,149,269 |
| 12/3/2007 | 3/3/2008 | 3,149,269 |
| 3/3/2008 | 6/2/2008 | 3,149,269 |
| 6/2/2008 | 9/2/2008 | 3,149,269 |
| 9/2/2008 | 12/1/2008 | 3,149,269 |
| 12/1/2008 | 3/2/2009 | 3,149,269 |
| 3/2/2009 | 6/1/2009 | 3,149,269 |
| 6/1/2009 | 9/1/2009 | 3,149,269 |
| 9/1/2009 | 12/1/2009 | 3,149,269 |
| 12/1/2009 | 3/1/2010 | 3,149,269 |
| 3/1/2010 | 6/1/2010 | 3,149,269 |
| 6/1/2010 | 9/1/2010 | 3,149,269 |
| 9/1/2010 | 12/1/2010 | 3,149,269 |
| 12/1/2010 | 3/1/2011 | 3,149,269 |
| 3/1/2011 | 6/1/2011 | 3,149,269 |
| 6/1/2011 | 9/1/2011 | 3,149,269 |
| 9/1/2011 | 12/1/2011 | 3,149,269 |
| 12/1/2011 | 3/1/2012 | 3,149,269 |
| 3/1/2012 | 6/1/2012 | 3,149,269 |
| 6/1/2012 | 9/4/2012 | 3,149,269 |
| 9/4/2012 | 12/3/2012 | 3,149,269 |
| 12/3/2012 | 3/1/2013 | 3,149,269 |
| 3/1/2013 | 6/3/2013 | 3,149,269 |
| 6/3/2013 | 9/3/2013 | 3,149,269 |
| 9/3/2013 | 12/2/2013 | 3,149,269 |
| 12/2/2013 | 3/3/2014 | 3,149,269 |
| 3/3/2014 | 6/2/2014 | 3,149,269 |
| 6/2/2014 | 9/2/2014 | 3,149,269 |
| 9/2/2014 | 12/1/2014 | 3,149,269 |
| 12/1/2014 | 3/2/2015 | 3,149,269 |
| 3/2/2015 | 6/1/2015 | 3,149,269 |
| 6/1/2015 | 9/1/2015 | 3,149,269 |

B-11

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 9/1/2015 | 12/1/2015 | 3,149,269 |
| 12/1/2015 | 3/1/2016 | 3,149,269 |
| 3/1/2016 | 6/1/2016 | 3,149,269 |
| 6/1/2016 | 9/1/2016 | 3,149,269 |
| 9/1/2016 | 12/1/2016 | 3,149,269 |
| 12/1/2016 | 3/1/2017 | 3,149,269 |
| 3/1/2017 | 6/1/2017 | 3,149,269 |
| 6/1/2017 | 9/1/2017 | 3,149,269 |
| 9/1/2017 | 12/1/2017 | 3,149,269 |
| 12/1/2017 | 3/1/2018 | 3,149,269 |
| 3/1/2018 | 6/1/2018 | 3,149,269 |
| 6/1/2018 | 9/4/2018 | 3,149,269 |
| 9/4/2018 | 12/3/2018 | 3,149,269 |
| 12/3/2018 | 3/1/2019 | 3,149,269 |
| 3/1/2019 | 6/3/2019 | 3,149,269 |
| 6/3/2019 | 9/3/2019 | 3,149,269 |
| 9/3/2019 | 12/2/2019 | 3,149,269 |
| 12/2/2019 | 3/2/2020 | 3,149,269 |
| 3/2/2020 | 6/1/2020 | 3,149,269 |
| 6/1/2020 | 9/1/2020 | 3,149,269 |
| 9/1/2020 | 12/1/2020 | 3,149,269 |
| 12/1/2020 | 3/1/2021 | 3,149,269 |
| 3/1/2021 | 6/1/2021 | 3,149,269 |
| 6/1/2021 | 9/1/2021 | 3,149,269 |
| 9/1/2021 | 12/1/2021 | 3,149,269 |
| 12/1/2021 | 3/1/2022 | 3,149,269 |
| 3/1/2022 | 6/1/2022 | 3,149,269 |

10.    Funding Agreement (No. 5-18243), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 4/15/2006 | 10/13/2006 | 12,782,160 |
| 10/13/2006 | 4/13/2007 | 12,782,160 |
| 4/13/2007 | 10/15/2007 | 12,782,160 |
| 10/15/2007 | 4/15/2008 | 12,782,160 |
| 4/15/2008 | 10/15/2008 | 12,782,160 |
| 10/15/2008 | 4/15/2009 | 12,782,160 |

B-12

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 4/15/2009 | 10/15/2009 | 12,782,160 |
| 10/15/2009 | 4/15/2010 | 12,782,160 |
| 4/15/2010 | 10/15/2010 | 12,782,160 |
| 10/15/2010 | 4/15/2011 | 12,782,160 |
| 4/15/2011 | 10/14/2011 | 12,782,160 |
| 10/14/2011 | 4/13/2012 | 12,782,160 |
| 4/13/2012 | 10/15/2012 | 12,782,160 |
| 10/15/2012 | 4/15/2013 | 12,782,160 |
| 4/15/2013 | 10/15/2013 | 12,782,160 |
| 10/15/2013 | 4/15/2014 | 12,782,160 |
| 4/15/2014 | 10/15/2014 | 12,782,160 |
| 10/15/2014 | 4/15/2015 | 12,782,160 |
| 4/15/2015 | 10/15/2015 | 12,782,160 |
| 10/15/2015 | 4/15/2016 | 12,782,160 |
| 4/15/2016 | 10/14/2016 | 12,782,160 |
| 10/14/2016 | 4/14/2017 | 12,782,160 |
| 4/14/2017 | 10/13/2017 | 12,782,160 |
| 10/13/2017 | 4/13/2018 | 12,782,160 |
| 4/13/2018 | 10/15/2018 | 12,782,160 |
| 10/15/2018 | 4/15/2019 | 12,782,160 |
| 4/15/2019 | 10/15/2019 | 12,782,160 |
| 10/15/2019 | 4/15/2020 | 12,782,160 |
| 4/15/2020 | 10/15/2020 | 12,782,160 |
| 10/15/2020 | 4/15/2021 | 12,782,160 |
| 4/15/2021 | 10/15/2021 | 12,782,160 |
| 10/15/2021 | 4/15/2022 | 12,782,160 |
| 4/15/2022 | 10/14/2022 | 12,782,160 |
| 10/14/2022 | 4/14/2023 | 12,782,160 |
| 4/14/2023 | 10/13/2023 | 12,782,160 |
| 10/13/2023 | 4/15/2024 | 12,782,160 |
| 4/15/2024 | 10/15/2024 | 12,782,160 |
| 10/15/2024 | 4/15/2025 | 12,782,160 |
| 4/15/2025 | 10/15/2025 | 12,782,160 |

NYLIB5 842620.20

11.    Funding Agreement (No. 7-07554), dated December 15, 2005, between Coral
Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 1/3/2006 | 7/3/2006 | 2,334,280 |
| 7/3/2006 | 1/2/2007 | 2,334,280 |
| 1/2/2007 | 7/2/2007 | 2,334,280 |
| 7/2/2007 | 1/2/2008 | 2,334,280 |
| 1/2/2008 | 7/1/2008 | 2,334,280 |
| 7/1/2008 | 1/2/2009 | 2,334,280 |
| 1/2/2009 | 7/1/2009 | 2,334,280 |
| 7/1/2009 | 1/4/2010 | 2,334,280 |
| 1/4/2010 | 7/1/2010 | 2,334,280 |
| 7/1/2010 | 1/3/2011 | 2,334,280 |
| 1/3/2011 | 7/1/2011 | 2,334,280 |
| 7/1/2011 | 1/3/2012 | 2,334,280 |
| 1/3/2012 | 7/2/2012 | 2,334,280 |
| 7/2/2012 | 1/2/2013 | 2,334,280 |
| 1/2/2013 | 7/1/2013 | 1,862,500 |
| 7/1/2013 | 1/2/2014 | 1,862,500 |
| 1/2/2014 | 7/1/2014 | 1,862,500 |
| 7/1/2014 | 1/2/2015 | 1,862,500 |
| 1/2/2015 | 7/1/2015 | 1,862,500 |
| 7/1/2015 | 1/4/2016 | 1,862,500 |
| 1/4/2016 | 7/1/2016 | 1,862,500 |
| 7/1/2016 | 1/3/2017 | 1,862,500 |
| 1/3/2017 | 7/3/2017 | 1,862,500 |
| 7/3/2017 | 1/2/2018 | 1,862,500 |
| 1/2/2018 | 7/2/2018 | 1,862,500 |
| 7/2/2018 | 1/2/2019 | 1,862,500 |
| 1/2/2019 | 7/1/2019 | 1,862,500 |
| 7/1/2019 | 1/2/2020 | 1,862,500 |
| 1/2/2020 | 7/1/2020 | 1,862,500 |
| 7/1/2020 | 1/4/2021 | 1,862,500 |
| 1/4/2021 | 7/1/2021 | 1,862,500 |
| 7/1/2021 | 1/3/2022 | 1,862,500 |
| 1/3/2022 | 7/1/2022 | 1,862,500 |
| 7/1/2022 | 1/3/2023 | 1,862,500 |
| 1/3/2023 | 7/3/2023 | 1,862,500 |
| 7/3/2023 | 1/2/2024 | 1,862,500 |
| 1/2/2024 | 7/1/2024 | 1,862,500 |

B-14

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 7/1/2024 | 1/2/2025 | 1,862,500 |
| 1/2/2025 | 7/1/2025 | 1,862,500 |
| 7/1/2025 | 1/2/2026 | 1,862,500 |

12.    Funding Agreement (No. 5-18245), dated December 15, 2005, between Coral Commercial Paper Trust and Principal Life Insurance Company.

Expected Amortization Schedule:

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 4/3/2006 | 10/2/2006 | 4,657,649 |
| 10/2/2006 | 4/2/2007 | 4,657,649 |
| 4/2/2007 | 10/1/2007 | 4,657,649 |
| 10/1/2007 | 4/1/2008 | 4,657,649 |
| 4/1/2008 | 10/1/2008 | 4,657,649 |
| 10/1/2008 | 4/1/2009 | 4,657,649 |
| 4/1/2009 | 10/1/2009 | 4,657,649 |
| 10/1/2009 | 4/1/2010 | 4,657,649 |
| 4/1/2010 | 10/1/2010 | 4,238,875 |
| 10/1/2010 | 4/1/2011 | 4,238,875 |
| 4/1/2011 | 10/3/2011 | 4,238,875 |
| 10/3/2011 | 4/2/2012 | 4,238,875 |
| 4/2/2012 | 10/1/2012 | 4,238,875 |
| 10/1/2012 | 4/1/2013 | 4,238,875 |
| 4/1/2013 | 10/1/2013 | 4,238,875 |
| 10/1/2013 | 4/1/2014 | 4,238,875 |
| 4/1/2014 | 10/1/2014 | 4,238,875 |
| 10/1/2014 | 4/1/2015 | 4,238,875 |
| 4/1/2015 | 10/1/2015 | 4,238,875 |
| 10/1/2015 | 4/1/2016 | 4,238,875 |
| 4/1/2016 | 10/3/2016 | 4,238,875 |
| 10/3/2016 | 4/3/2017 | 4,238,875 |
| 4/3/2017 | 10/2/2017 | 4,238,875 |
| 10/2/2017 | 4/2/2018 | 4,238,875 |
| 4/2/2018 | 10/1/2018 | 4,238,875 |
| 10/1/2018 | 4/1/2019 | 4,238,875 |
| 4/1/2019 | 10/1/2019 | 4,238,875 |
| 10/1/2019 | 4/1/2020 | 4,238,875 |
| 4/1/2020 | 10/1/2020 | 4,238,875 |
| 10/1/2020 | 4/1/2021 | 4,238,875 |

B-15

| Commercial Paper Issuance Date | Commercial Paper Maturity Date | Total Principal Balance($) |
|---|---|---|
| 4/1/2021 | 10/1/2021 | 4,235,450 |
| 10/1/2021 | 4/1/2022 | 4,235,450 |
| 4/1/2022 | 10/3/2022 | 619,500 |
| 10/3/2022 | 4/3/2023 | 619,500 |
| 4/3/2023 | 10/2/2023 | 619,500 |
| 10/2/2023 | 4/1/2024 | 619,500 |
| 4/1/2024 | 10/1/2024 | 619,500 |
| 10/1/2024 | 4/1/2025 | 619,500 |

B-16

NYLIB5 842620.20

<u>Annex C</u>

For purposes hereof:

"<u>Make-whole Amount</u>" means, in respect of the Commercial Paper Notes following the occurrence of a Principal Life Downgrade, an amount, as determined by Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") reasonably and in good faith, equal to the positive difference, if any, between (a) the arithmetic mean of firm offer quotations from at least three Dealers (as defined below) for such Dealer to sell securities that are Qualified Securities for the relevant Reserve Fund Agreement (regardless of whether such Reserve Fund Agreement is in effect as of such time) in an aggregate maturity amount equal to the outstanding maturity amount of the Commercial Paper Notes (the "<u>Offer Quotation Amount</u>") and (b) the par value of the Commercial Paper Notes; <u>provided</u>, <u>however</u>, that:

(i)    if more than three quotations are provided, the Offer Quotation Amount will be the arithmetic mean of such quotations, without regard to the quotations having the highest and lowest values,

(ii)    if exactly three quotations are provided, the Offer Quotation Amount will be the quotation remaining after disregarding the highest and lowest quotations,

(iii)    for purposes of clauses (i) and (ii), if more than one quotation has the same highest value or lowest value, then one of such quotations shall be disregarded, and

if LBSF is unable to obtain three such quotations, the Offer Quotation Amount shall be determined by LBSF in good faith and in a commercially reasonable manner.

"<u>Par Differential</u>" means, in respect of the Commercial Paper Notes following the occurrence of a Principal Life Downgrade, an amount, as determined by Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") reasonably and in good faith, equal to the difference, if any, between (a) the par value of the Commercial Paper Notes and (b) the arithmetic mean of firm bid quotations from at least three Dealers (as defined below) for such Dealer to purchase such Commercial Paper Notes (the "<u>Bid Quotation Amount</u>"); <u>provided</u>, <u>however</u>, that:

(i)    if more than three quotations are provided, the Bid Quotation Amount will be the arithmetic mean of such quotations, without regard to the quotations having the highest and lowest values,

(ii)    if exactly three quotations are provided, the Bid Quotation Amount will be the quotation remaining after disregarding the highest and lowest quotations,

(iii)    for purposes of clauses (i) and (ii), if more than one quotation has the same highest value or lowest value, then one of such quotations shall be disregarded, and

if LBSF is unable to obtain three such quotations, the Bid Quotation Amount shall be determined by LBSF in good faith and in a commercially reasonable manner.

C-1

Upon request by Principal Life, LBSF shall provide, within two (2) Business Days after request thereof, documentation of all of the factors used to determine the amounts for the Make-whole Amount and the Par Differential.

For purposes hereof:

"Dealer" means a lending dealer in the relevant markets selected by LBSF in good faith and reasonably acceptable to Principal Life (a) from among dealers of the highest credit standing which satisfy all the criteria that apply generally at the time in deciding whether to offer or to make an extension of credit and (b) to the extent practicable, from such dealers having an office in the same city.

C-2

NYLIB5 842620.20