# **EXHIBIT 5**

United States Bankruptcy Court/Southern District of New York

**PROOF OF CLAIM**

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Special Financing Inc. | 08-13888 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000030672

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Principal Life Insurance Company
711 High Street
Des Moines, IA 50392-0301
Attn: Debra Epp (G-34-W23)

Telephone number: 515-247-0990    Email Address: epp.deb@principal.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 34,162,715.00    (See attached Exhibit A)
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: See Exhibit A attached
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☑ Other
Describe: Termination Amounts under ISDA dated June 30, 2004; See Exhibit A

Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

Amount of Secured Claim: $ 11,632,107.54    ☒Amount Unsecured: $ 22,530,607.46    ☒

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 9/18/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Karen A. Pearston*    *Debra Svoboda Epp*

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Karen A. Pearston
Vice President &
Associate General Counsel

DEBRA SVOBODA EPP
COUNSEL

# EXHIBIT A
## Attachment to the Proof of Claim of
## Principal Life Insurance Company
### against
## Lehman Brothers Holdings Inc., Case No. 08-13555
### Arising out of that certain Coral Commercial Paper Trust Program

*Basis of Claim:*

This claim arises out of those certain commercial paper transactions between:

>Coral Commercial Paper Trust, as "Issuer,"
>Principal Life Insurance Company (Principal Life), as "Funding Agreements Issuer,"
>US Bank National Assoc. as Owner/Trustee, Collateral Agent and Depositary,
>Lehman Brothers, Inc. (LBI), as Administrative Agent,
>Lehman Brothers Special Financing (LBSF), as Counterparty and
>Lehman Brothers Holdings Inc. (LBHI) as Guarantor.

As described in the two Private Placement Memorandums (attached hereto as Exhibits D-1 and D-2, respectively), Issuer (a special purpose entity sponsored by LBSF) offered two series of commercial paper notes which were backed by funding agreements issued by Principal Life (the "Coral CP Trust Program"). The first series of commercial paper notes was issued on December 15, 2005 ("Coral Trust Series 1"), in an aggregate principal amount of $150,418.634.00 and consisted of 12 individual tranches, sequentially identified as Tranches "A" through "L". The second series of commercial paper notes ("Coral Trust Series 2" and together with Coral Trust Series 1, the "Coral CP Notes") was issued on September 25, 2007 in an aggregate principal amount of $576,371,871 and consisted of 11 individual tranches, sequentially identified as Tranches "M" through "W".

In connection with the issuance of each of Coral Trust Series 1 and Coral Trust Series 2, LBSF entered into letter agreements with Principal Life dated December 15, 2005 and September 25, 2007, respectively (the "Reimbursement Agreements" or "Letter Agreements"), which provided that LBSF would arrange for delivery of the Coral CP Notes and that LBSF or Principal Life, as applicable, would make payments to the other party upon an early withdrawal under the funding agreements issued by Principal Life in accordance with the Reimbursement Agreements. The Reimbursement Agreements are attached hereto as Exhibits E-1 and E-2, respectively. Paragraph 2 of each Reimbursement Agreement provides, in relevant part:

>2. Early Withdrawal. Except as otherwise provided… if the Issuer shall make an early withdrawal under "Disposition of Fund" of any Funding Agreement for any reason (an "Early Withdrawal") including, without limitation, as a result of the inability of the Issuer to issue replacement Commercial Paper Notes on any stated maturity date of Commercial Paper Notes …(the date of such withdrawal, the "Early Withdrawal Date"), LBSF shall pay Principal Life: on the Upfront Payment Date (as defined below), an amount equal to the sum of (i) the product of

Set-Off", attached hereto as Exhibit H. The claims asserted herein are filed in the full amount, without accounting for such setoff and/or netting, out of an abundance of caution to the extent the exercise of Principal Life's rights of setoff and/or netting are challenged.

Without limiting any of the foregoing, Principal Life reserves all of its rights to assert claims for interest, fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement and/or contribution, and other amounts, including, without limitation, legal fees and expenses (including, without limitation, in connection with the preparation, filing and prosecution of the Proof of Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on or subsequent to the Petition Date, in each case to the extent and/or as may be permitted, provided and/or contemplated in the supporting documentation and under applicable law.

To the extent necessary, this Proof of Claim shall serve as notice and a demand of the amounts owing by LBHI to Principal Life under each respective Guarantee, and no further notice or demand shall be required. In addition, to the extent that there are any amounts owing from LBSF to Principal Life which are determined to not be guaranteed by LBHI under the Guarantees, including any and all claims arising under the Letter Agreements or any other related agreements, Principal Life hereby asserts a claim against LBHI for such amounts under that certain guarantee by LBHI pursuant to the unanimous consent of the executive committee of the board of directors through that certain board resolution dated June 9, 2005, a copy of which is attached hereto as "Exhibit H."

Principal Life expressly reserves any rights, remedies, liens, interests, priorities, protections and claims which it may have against LBHI, LBSF, or the other Debtors and other parties under the Bankruptcy Code. Principal Life reserves the right to amend, restate and supplement this Proof of Claim or to file additional Proofs of Claim or further pleadings for additional claims against LBSF and its related entities should Principal Life deem it appropriate. Principal Life hereby reserves all rights and claims accruing to it, including, but not limited to, its rights (a) against all other creditors, (b) to update totals or estimates of liquidated and unliquidated claims, (c) request payment of administrative expenses (whether in respect of claims asserted herein or otherwise), or (d) amend, update, supplement or modify as it believes is appropriate including, but not limited to, fees, expenses and interest.

In executing and filing this Proof of Claim, Principal Life does not submit itself to the jurisdiction of the Bankruptcy Court for any purpose other than with respect to this Proof of Claim against the Debtor and does not waive or release: (a) its rights, claims, defenses and remedies, whether under applicable law, the relevant and applicable documents, or otherwise, against the Debtor or any other person or entity that may be liable for all or part of the claims set forth herein, whether an affiliate or subsidiary of the Debtor, an assignee, guarantor, or otherwise, including any rights that Principal Life may have with respect to any property held by any Debtor or other entity in an actual, constructive, or other trust or similar relationship for the benefit of Principal Life; (b) any obligation owed to it, or any right to any security in connection with the claims; (c) any past, present or future defaults (or events of default) by the Debtor or others in connection with the relevant and applicable documents or otherwise; or (d) any right to the subordination, in favor of Principal Life, of indebtedness or liens held by other creditors of the Debtors.

Nothing contained in the Proof of Claim nor subsequent appearance, pleading, claim or suit is intended to be: (a) a consent to a jury trial in the Bankruptcy Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. § 157(e) or otherwise; (b) an election of remedies or limitation of rights or remedies; or (c) an admission that any property received by Principal Life under the relevant and applicable documents or held by the Debtor or other entity constitutes property of any Debtor's estate.

Nothing contained in the Proof of Claim nor subsequent appearance, pleading, claim or suit is intended to be a waiver or release of: (a) the right of Principal Life to have final orders in non-core matters entered only after de novo review by a district court judge; (b) the right of Principal Life to a jury trial in any proceeding so triable herein or, in any case, any controversy or proceeding related hereto, notwithstanding any designation of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution; (c) the right of Principal Life to seek to have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal, or otherwise to challenge the jurisdiction of the Bankruptcy Court, with respect to the subject matter of this Proof of Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Principal Life, or to assert that the reference has already been withdrawn with respect to the subject matter of this Proof of Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Principal Life; (d) the right of Principal Life to have any unliquidated portions of its Proof of Claim determined by applicable state courts; or (e) any ownership, lien, or other property rights, any rights to setoff, recoupment, or counterclaim, or any other right, rights of action, causes of action, claims, or defenses, whether existing now or hereinafter arising to which Principal Life is or may be entitled under agreements, documents, or instruments, in law or equity, against the Debtor or any other person or persons (including any affiliate of the Debtor).

Nothing herein shall be deemed to waive, estop or derogate from any rights of Principal Life, including, without limitation, Principal Life's rights under the relevant and applicable documents, or otherwise. The Proof of Claim also is without prejudice to any and all of Principal Life's rights, claims and defenses in conjunction with the relevant and applicable documents, the Bankruptcy Code, and otherwise, including, but not limited to the right to vote on any plan(s) in the Debtor's chapter 11 case(s).

The descriptions in the Proof of Claim of the relevant and applicable documents are qualified in their entirety by reference to the applicable provisions of such documents, and such documents are incorporated herein by reference. Each reference to any Debtor as obligor, guarantor, or pledgor, or any other signatory or party to the relevant and applicable documents or any other document is qualified in its entirety by reference to the applicable provisions of such documents. In the event of any inconsistency between the Proof of Claim and such documents, the documents shall control. Additional documentation in support of this claim will be provided upon request.