Hearing Date and Time: February 22, 2012 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                   :
In re                                         :          Chapter 11 Case No.
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :          08-13555 (JMP)
                                                  :
                    Debtors.                  :          (Jointly Administered)
                                                  :
------------------------------------------------------------------x

**REPLY OF LEHMAN BROTHERS HOLDINGS INC. TO OBJECTIONS AND
IN FURTHER SUPPORT OF MOTION FOR AUTHORITY TO USE NON-CASH
ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. files this reply to the objections (the

"Objections") interposed to its motion for authority to use non-cash assets in lieu of available

cash as reserves for disputed claims, ECF No. 24726 (the "Motion")[1] and respectfully represents:

**REPLY**

1.      The benefits of the Motion have been recognized and accepted by virtually

all parties in interest and are supported by the Creditors' Committee. *See* Statement of Official

Committee of Unsecured Creditors in Support of Motion, ECF No. 25546 ("UCC Statement in

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

Support"). Of the approximately 11,900 holders of Disputed Claims that were served with the Motion, only five Objections have been filed.[2]

2.  The substitution of Non-Cash Assets of value within the parameters proposed by the Motion will accelerate Distributions to the holders of Allowed Claims while more than adequately protecting the interests of Disputed Claim holders. As stated in the declaration of Steven J. Cohn in support of the Motion, ECF No. 25393 (the "Cohn Declaration"), if the lowest minimum thresholds in the Motion are applied, the Participating Debtors would make incremental initial distributions of approximately $2.8 billion and holders of Allowed Claims in every Class would realize initial Distributions of up to an additional 4 cents. *See* Cohn Declaration ¶¶ 10-11. Holders of Disputed Claims that become Allowed will also benefit from the Motion. If greater initial Distributions are paid to holders of Allowed Claims, the amounts that will be paid as Catch-Up Distributions to holders of Disputed Claims that become Allowed will also be greater. All holders of Allowed Claims will benefit from the time value of money of receiving increased initial Distributions.

3.  The Objections assert four primary challenges to the Motion. First, that the Debtors' Non-Cash Assets are not identified and that holders of Disputed Claims cannot analyze whether they will be adequately protected.[3] Second, that the Motion seeks an improper modification of the Plan.[4] Third, that the relief requested will violate section 1123(a)(4) of the

---

[2] *See* Objection of Maximilian Coreth, ECF No. 25363; Objection of Golden State Tobacco, ECF No. 25375; U.S. Bank National Association, ECF No. 25376; Objection of Jamie Murcia, ECF No. 25379; Objection of CommerzBank AG, ECF No. 25382.

[3] *See, e.g.,* Objection of Maximilian Coreth ¶ 6.

[4] *See, e.g.,* Objection of U.S. Bank National Association, at 5; Objection of Golden State Tobacco ¶¶ 7-10.

Bankruptcy Code.[5]  Fourth, that the risks of the relief requested to holders of currently Disputed Claims outweigh the benefits to holders of Allowed Claims.[6]  The Objections should be overruled and the Motion granted.

## I. The Debtors' Non-Cash Assets Are Identifiable

4. The objectors that argue that the Debtors' Non-Cash Assets have not been identified are premised on a misunderstanding of the Motion and the procedures contemplated therein.  The Plan Administrator is not seeking authority to substitute only certain assets for the protection of Disputed Claim holders.  Pursuant to the Motion, reserves for Disputed Claims will be comprised of at least 25% in Cash and the balance will be reserved against *all* Non-Cash Assets of a Participating Debtor.  The ratio of (A) a Participating Debtor's Non-Cash Assets to (B) the Reserve Amount minus the Minimum Cash Reserve, must be equal to at least 2.5:1 in order for the Plan Administrator to exercise any authority that may be granted in this Motion.  Available Cash that is generated from *any* Non-Cash Assets of a relevant Participating Debtor will be applied first to satisfy the Catch-Up Distributions to holders of Disputed Claims that have become Allowed.  Thus, holders of Disputed Claims have far greater protections than they would if only certain assets were reserved.

5. The nature and value of the Non-Cash Assets of each Participating Debtor are described in the Disclosure Statement, monthly operating reports filed with the Court and the Cohn Declaration.  The nature and value of Non-Cash Assets will be updated in post-Effective Date reporting.  *See* Plan § 15.6.  The Debtors' projected asset values as stated in the Disclosure Statement have been thoroughly reviewed and tested.  They were accepted by the Court in

---

[5] *See, e.g.,* Objection of Golden State Tobacco ¶¶ 11-18; Objection of Jamie Murcia, ¶¶ 16-18; Objection of CommerzBank AG ¶ 11.

[6] *See, e.g.,* Objection of Jamie Murcia ¶¶ 9, 14; Objection of CommerzBank AG ¶¶ 1, 12.

confirming the Plan and the overwhelming majority of creditors who voted to accept the Plan, many of whom were represented by their own legal and financial advisors. The Disclosure Statement values also were thoroughly reviewed and agreed to by the Creditors' Committee and its financial advisors. The Debtors and their financial advisors, who have been intimately involved in the administration of the Debtors' cases and assets for over three years, continue to believe that the Disclosure Statement values are reasonable. *See* Cohn Declaration ¶ 9, n. 3. The Debtors' asset and claims values will be reevaluated prior to each Distribution Date. Accordingly, the Court should accept the Debtors' projections of asset and claim values.

## II.     The Motion Does Not Seek Or Require An Amendment To The Plan

6.     The Motion does not seek to modify or require a modification of the Plan pursuant to Section 1127(b) of the Bankruptcy Code or otherwise. The relief requested in the Motion was expressly contemplated by Section 8.4 of the Plan and does not alter the expectations of creditors who voted to accept the Plan with respect to the manner for which Disputed Claims are reserved. Specifically, Section 8.4 of the Plan states:

> If the Plan Administrator determines, in its sole discretion, that the value of a Debtor's assets (other than such Debtor's Available Cash) exceeds the amount of Available Cash necessary to be retained pursuant to this section on account of Disputed Claims against such Debtor, the Plan Administrator may, subject to Bankruptcy Court approval, on proper notice to all holders of Disputed Claims against such Debtor, release such Available Cash for Distribution to holders of Allowed Claims and retain, in lieu thereof, such Debtor's non-Cash assets to satisfy its Disputed Claims if such Claims become Allowed Claims.

*See* Plan § 8.4. Although the mechanism by which the Plan Administrator would propose to exercise such authority was not detailed in the Plan, the Plan clearly provided for the possibility that non-cash assets would be substituted for Available Cash, subject to Bankruptcy Court approval.

### III. The Relief Requested Does Not Violate Section 1123(a)(4) Of The Bankruptcy Code

7. Section 1123(a)(4) of the Bankruptcy Code requires a chapter 11 plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The relevant legal standard requires reasonable measures to protect the interests of Disputed Claim holders. *See In re Motors Liquidation Co. f/k/a General Motors Corp.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011) ("if claims are disputed and not yet allowed (but have the potential to be allowed), ***reasonable measures*** must be taken to ensure that the required same treatment is received if and when they're allowed.") (emphasis added); *see also In re Weiss–Wolf, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986) ("a debtor must make provision for payment of disputed claims so that if and when allowed the claims have *reasonable* assurance that they will receive identical treatment.") (emphasis added). The procedures set forth in the Motion (in particular, the Minimum Cash Reserve and the Minimum Asset-to-Reserve Ratio) and the size of the difference between the filed amounts and the estimated amounts of Disputed Claims that will ultimately be Allowed, provide more than reasonable assurances that Disputed Claims that become Allowed will receive the same treatment as currently Allowed Claims.

8. In fact, given the amount of each Participating Debtor's Non-Cash Assets, the Debtors' and the Creditors' Committee's financial advisors are confident that, at worst, there is only a slight risk of insufficient Available Cash to satisfy Catch-Up Distributions. *See* Cohn Declaration ¶ 13; UCC Statement in Support ¶ 10. As described in the Cohn Declaration, there are abundant Non-Cash Assets beyond the Minimum Cash Reserves to protect the interests of Disputed Claim holders. With respect to LBHI, for example, the ratio of Non-Cash Assets to the Reserve Amount is approximately 20:1. Thus, even in the highly unlikely event that the

Debtors' estimates of Non-Cash Asset values (which, as noted above, have been thoroughly tested and accepted) were overstated by 50% *and* if all Disputed Claims were Allowed in their asserted amounts (each highly unlikely), the value of LBHI's Non-Cash Assets would still be approximately ten times greater than the amount necessary for all Catch-Up Distributions.

9. The protection for LCPI's creditors is even greater, as LCPI will have an initial ratio of Non-Cash Assets to Reserve Amount of approximately 190:1. As illustrated in the Cohn Declaration, LBSF, LOTC and LBCS would reserve approximately 50%, 70% and 90% of the Disputed Claims reserve in Cash, and each would still have a 2.5:1 ratio of remaining Non-Cash Assets to Reserve Amount (protecting holders of Disputed Claims from an unlikely 60% overstatement of Non-Cash Asset values).

10. Further, as stated in the Cohn Declaration, "[b]ased on a projected cash flow analysis and the Debtors' review of the outstanding Disputed Claims, sufficient Available Cash should be generated to remit Catch-Up Distributions on the first Distribution Date after a Disputed Claim has been Allowed." Cohn Declaration ¶ 18. The Debtors have built in reasonable measures to mitigate against the possibility that there will be insufficient Available Cash to remit Catch-Up Distributions promptly to holders of Disputed Claims that become Allowed. Most significantly, the Minimum Cash Reserve will be available on subsequent Distribution Dates to pay either all or a portion of the Catch-Up Distributions that are due. To the extent of a deficiency of Available Cash on a Distribution Date, the priority scheme established by the Motion provides that the first Available Cash that is generated from Non-Cash Assets will be used to satisfy outstanding Catch-Up Distributions.

**IV.     The Substantial Benefits To Holders Of All Claims That Are Now Or Will Become Allowed Outweigh The Low Risk To Holders Of Currently Disputed Claims**

11.     The relatively low risks contemplated in the Objections are significantly outweighed by the benefits that holders of Allowed Claims will realize from receiving accelerated Distributions. Objectors that are not satisfied unless the Debtors can disprove even the slightest theoretical risk to disputed claimants should not be permitted to stand in the way of a procedure that benefits all creditors. Creditors have waited more than three years, made significant compromises and supported confirmation of the Plan in anticipation of prompt Distributions. It would be inequitable to delay appropriate Distributions to the tens of thousands of holders of Allowed Claims because of the necessity to retain unusually large cash reserves for the excessive Disputed Claims filed by other claimants – an unnecessary requirement in light of the substantial value of Non-Cash Assets that are available to serve as reserves for Disputed Claims and the minimal risk to Disputed Claim holders.

12.     The Motion is based upon the extensive experience and knowledge of the Debtors, the Creditors' Committee and each of their financial advisors with the Debtors' assets and claims. The Motion adequately balances the interests of all creditors and should be granted.

WHEREFORE the Objections to the Motion should be overruled and the Debtors granted such other and further relief as is just.

Dated: February 20, 2012
    New York, New York

          /s/ Lori R. Fife
          Harvey R. Miller
          Lori R. Fife

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession