WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                           : Chapter 11 Case No.
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   : 08-13555 (JMP)
                                                                :
                        Debtors.                        : (Jointly Administered)
----------------------------------------------------------------x

**NOTICE OF REVISED PROPOSED ORDER AUTHORIZING**
**USE OF NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS**
**RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4**
**OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN**

PLEASE TAKE NOTICE that, on January 27, 2012, Lehman Brothers Holdings Inc., as Plan Administrator, filed the *Motion Of Lehman Brothers Holdings Inc. For Authority to Use Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims Pursuant to Section 8.4 Of The Debtors' Confirmed Joint Chapter 11 Plan* [ECF No. 24726] (the "Motion"). The Debtors have incorporated modifications to the proposed order granting the Motion. Attached hereto as Exhibit A is a blackline, which reflects the changes made to the proposed order since January 27, 2012. A clean copy of the revised proposed order granting the Motion is attached hereto as Exhibit B.

Dated: February 20, 2012
      New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

2

# EXHIBIT A

US_ACTIVE:\43918559\01\03\US.BFR

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,:   08-13555 (JMP)
                                        :
        Debtors.                        :   (Jointly Administered)
                                        :
-----------------------------------------------------------------x

### ORDER AUTHORIZING USE OF NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN

Upon the motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI," together with its affiliated debtors, the "Debtors"), as Plan Administrator, for authority for each of the Participating Debtors (i) to substitute a Participating Debtor's Non-Cash Assets for a portion of Available Cash for the reserves required on account of unsecured, non-priority Disputed Claims against such Participating Debtor,[2] and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such Participating Debtor in accordance with the Plan, as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or Plan, as applicable.

[2] For the purpose of this Order, "Disputed Claims" shall include only the unsecured, non-priority Disputed Claims in any of LBHI Classes 3, 4, 4A, 4B, 5, 7, 8 or 9A, LCPI or LBSF Classes 4A or 5C, and LOTC, LBCC or LBCS Classes 4 or 5C.

1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vii) all holders of affected Disputed Claims against the Participating Debtors in accordance with Section 8.4 of the Plan and the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases, ECF No. 9635; and the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Plan Administrator is authorized for each of the Participating Debtors (i) to substitute a Participating Debtor's Non-Cash Assets for a portion of Available Cash for the reserves required on account of Disputed Claims against such Participating Debtor, and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such Participating Debtor in accordance with the Plan, on the following terms and conditions:

A. <u>Minimum Cash Reserve and Minimum Asset-to-Reserve Ratio</u>.  In order to retain Non-Cash Assets in lieu of Available Cash to satisfy Disputed Claims if such Claims become Allowed Claims for a particular Distribution, on the applicable Distribution Date:

   i. the Participating Debtor must retain at least 25% of the Reserve Amount in Available Cash (the "<u>Minimum Cash Reserve</u>") (other than as may be necessary in accordance with C(ii) and (iii) below); and

   ii. the ratio of (A) the value of the Participating Debtor's Non-Cash Assets to (B) the amount equal to the Reserve Amount minus the Minimum Cash

    Reserve for such Participating Debtor must be equal to or greater than 2.5:1 (the "<u>Minimum Asset-to-Reserve Ratio</u>").[3]

 B. <u>Interest</u>.  If a Disputed Claim becomes Allowed and would be entitled to interest pursuant to Section 8.4 of the Plan, the holder of such Claim shall receive interest in an amount equal to the amount that would have been earned if the Debtors had maintained the entire Reserve Amount in Cash only and invested the Cash in the same manner as the Debtors invested the Minimum Cash Reserve.

 C. <u>Disputed Claims Reserves and Distributions</u>.

  i. The Minimum Cash Reserve and Available Cash generated from Non-Cash Assets of a Participating Debtor will be pooled for all holders of Disputed Claims against such Participating Debtor, in the first instance.

  ii. Thereafter, on each Distribution Date, the Minimum Cash Reserve and the Available Cash generated from Non-Cash Assets shall be used (A) first, to remit to each holder of a Disputed Claim that has become Allowed, on a *pro rata* basis, the amount of Distributions, inclusive of interest, that would have been made on account of each such Allowed Claim up to the applicable Distribution Date as if such Claim had been Allowed on the Effective Date (a "<u>Catch-Up Distribution</u>"), and (B) then, to fund a Minimum Cash Reserve for any outstanding Disputed Claims, before any further Distributions may be made on account of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they are entitled without any deficiency.

  iii. To the extent there is insufficient Available Cash on a Distribution Date to remit to each holder of a Disputed Claim that has become Allowed its Catch-Up Distribution in accordance with C(ii)(A) above, the deficiency shall be satisfied on the subsequent Distribution Date(s) from Available Cash generated from Non-Cash Assets on a *pro rata* basis with (A) any other previously Disputed Claims that became Allowed but did not receive their entire Catch-Up Distribution, and (B) all holders of Disputed Claims that have become Allowed since the last Distribution Date, in each case,

---

[3] ~~The value of a~~A Participating Debtor's Non-Cash Assets <u>will be determined as of the applicable Distribution Date, and the value of such Non-Cash Assets</u> shall be the value used in the most recent balance sheet in the monthly operating report filed prior to the Distribution Date for all Non-Cash Assets <u>(as adjusted for subsequent investments or conversions to Cash)</u> other than intercompany receivables and investments, which shall be valued based on the methodology in the "Recovery Analysis" included in the Disclosure Statement.  The Non-Cash Assets included in the calculation of the Minimum Asset-Reserve Ratio and that may be retained on account of Disputed Claims in lieu of Available Cash shall exclude assets against which an entity has asserted a security interest, whether or not the Debtors dispute the validity of the asserted security interest.

up to the amount of each such holder's Catch-Up Distribution, before a Minimum Cash Reserve is funded and further Distributions are made to holders of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they were entitled.

iv. If there is any Available Cash remaining on a Distribution Date after all holders of Allowed Disputed Claims have received their entire Catch-Up Distribution and a Minimum Cash Reserve has been funded for outstanding Disputed Claims, such remaining Available Cash shall be distributed to all holders of unsecured, non-priority Allowed Claims in accordance with the Plan.

D. <u>Exclusion of Certain Plan AdjustmentSettlement Amounts and Subordinated Debt Redistributions</u>.  LBHI shall not substitute Non-Cash Assets for, or advance to holders of Allowed Claims, Cash that has been redistributed pursuant to the Plan Adjustment, the LCPI Settlement Amount, the LBSF Settlement Amount, the LBSF Additional Settlement Amount or Section 6.4 of the Plan (subordinated debt redistributions) and is to be retained and reserved for holders of Disputed Claims to the extent such Claims become Allowed Claims and are entitled to receive such Distributions.  Such amounts shall be retained in Cash and segregated exclusively for the benefit of holders of Disputed Claims in LBHI Classes 3 and 7 (in the case of Plan Adjustment), LCPI Class 4A (in the case of the LCPI Settlement Amount), LBSF Class 4A (in the case of the LBSF Settlement Amount), LBSF Classes 4A and 5C (in the case of the LBSF Additional Settlement Amount) and LBHI Classes 3, 4A, 4B and 5 (in the case of subordinated debt redistributions).  If a Disputed Claim in LBHIthe foregoing Classes 3, 4A, 4B, 5 or 7 becomes an Allowed Claim, on the first Distribution Date that the holder of such Claim is entitled to receive a Distribution in accordance with Section 8.4 of the Plan, such holder shall receive: (i) in Cash, the redistributed amounts of Plan Adjustment, LCPI Settlement Amount, LBSF Settlement Amount, LBSF Additional Settlement Amount or subordinated debt redistributions, as applicable, retained on account of such Claim equal to the amount of Plan Adjustment or subordinated debt redistributionssuch Distribution(s) that would have been distributed under the Plan on account of such Claim if such Claim had been Allowed as of the Effective Date, inclusive of any interest earned on such amount, andin addition to (ii) its remainingany other Catch-Up Distribution such holder may be entitled to receive, which shall be paid in accordance with the abovethis Order.

E. <u>Reporting</u>.  The post-Effective Date monthly operating report that is filed by the Plan Administrator at least 20 days after a Distribution Date shall include with respect to each Participating Debtor: (i) the aggregate amount of Distributions remitted to holders of Allowed Claims on the immediately preceding Distribution Date, (ii) the Minimum Cash Reserve amount and percentage retained after such Distribution Date, (iii) the Asset-to-Reserve

>    Ratio existing on such Distribution Date, and (iv) the aggregate shortfall of Catch-Up Distributions, if any, that must be satisfied on subsequent Distribution Dates.

; and it is further

ORDERED that prior to the exercise of the authority granted pursuant to this Order, LBHI, in its sole discretion, may establish additional minimum conditions to be satisfied, including, but not limited to, satisfaction of a higher ratio of Non-Cash Assets to Reserve Amount than the Minimum Asset-to-Reserve Ratio or the retention of an Available Cash reserve greater than the Minimum Cash Reserve; and it is further

ORDERED, except as expressly set forth herein, nothing in this Order shall modify or amend any provision of the Plan or the Confirmation Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York  
[_____], 2012

_____  
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                :
In re                                           :   Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :   08-13555 (JMP)
                                                :
                    Debtors.                    :   (Jointly Administered)
                                                :
-------------------------------------------------------------------x
```

### ORDER AUTHORIZING USE OF NON-CASH ASSETS IN LIEU OF AVAILABLE CASH AS RESERVES FOR DISPUTED CLAIMS PURSUANT TO SECTION 8.4 OF THE DEBTORS' CONFIRMED JOINT CHAPTER 11 PLAN

Upon the motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI," together with its affiliated debtors, the "Debtors"), as Plan Administrator, for authority for each of the Participating Debtors (i) to substitute a Participating Debtor's Non-Cash Assets for a portion of Available Cash for the reserves required on account of unsecured, non-priority Disputed Claims against such Participating Debtor,[2] and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such Participating Debtor in accordance with the Plan, as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or Plan, as applicable.

[2] For the purpose of this Order, "Disputed Claims" shall include only the unsecured, non-priority Disputed Claims in any of LBHI Classes 3, 4A, 4B, 5, 7, 8 or 9A, LCPI or LBSF Classes 4A or 5C, and LOTC, LBCC or LBCS Classes 4 or 5C.

1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vii) all holders of affected Disputed Claims against the Participating Debtors in accordance with Section 8.4 of the Plan and the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases, ECF No. 9635; and the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Plan Administrator is authorized for each of the Participating Debtors (i) to substitute a Participating Debtor's Non-Cash Assets for a portion of Available Cash for the reserves required on account of Disputed Claims against such Participating Debtor, and (ii) to remit that portion of the Available Cash to holders of Allowed Claims against such Participating Debtor in accordance with the Plan, on the following terms and conditions:

- A. <u>Minimum Cash Reserve and Minimum Asset-to-Reserve Ratio</u>.  In order to retain Non-Cash Assets in lieu of Available Cash to satisfy Disputed Claims if such Claims become Allowed Claims for a particular Distribution, on the applicable Distribution Date:

    i. the Participating Debtor must retain at least 25% of the Reserve Amount in Available Cash (the "<u>Minimum Cash Reserve</u>") (other than as may be necessary in accordance with C(ii) and (iii) below); and

    ii. the ratio of (A) the value of the Participating Debtor's Non-Cash Assets to (B) the amount equal to the Reserve Amount minus the Minimum Cash

        Reserve for such Participating Debtor must be equal to or greater than 2.5:1 (the "Minimum Asset-to-Reserve Ratio").[3]

B. <u>Interest</u>.  If a Disputed Claim becomes Allowed and would be entitled to interest pursuant to Section 8.4 of the Plan, the holder of such Claim shall receive interest in an amount equal to the amount that would have been earned if the Debtors had maintained the entire Reserve Amount in Cash only and invested the Cash in the same manner as the Debtors invested the Minimum Cash Reserve.

C. <u>Disputed Claims Reserves and Distributions</u>.

    i. The Minimum Cash Reserve and Available Cash generated from Non-Cash Assets of a Participating Debtor will be pooled for all holders of Disputed Claims against such Participating Debtor, in the first instance.

    ii. Thereafter, on each Distribution Date, the Minimum Cash Reserve and the Available Cash generated from Non-Cash Assets shall be used (A) first, to remit to each holder of a Disputed Claim that has become Allowed, on a *pro rata* basis, the amount of Distributions, inclusive of interest, that would have been made on account of each such Allowed Claim up to the applicable Distribution Date as if such Claim had been Allowed on the Effective Date (a "<u>Catch-Up Distribution</u>"), and (B) then, to fund a Minimum Cash Reserve for any outstanding Disputed Claims, before any further Distributions may be made on account of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they are entitled without any deficiency.

    iii. To the extent there is insufficient Available Cash on a Distribution Date to remit to each holder of a Disputed Claim that has become Allowed its Catch-Up Distribution in accordance with C(ii)(A) above, the deficiency shall be satisfied on the subsequent Distribution Date(s) from Available Cash generated from Non-Cash Assets on a *pro rata* basis with (A) any other previously Disputed Claims that became Allowed but did not receive their entire Catch-Up Distribution, and (B) all holders of Disputed Claims that have become Allowed since the last Distribution Date, in each case,

---

[3] A Participating Debtor's Non-Cash Assets will be determined as of the applicable Distribution Date, and the value of such Non-Cash Assets shall be the value used in the most recent balance sheet in the monthly operating report filed prior to the Distribution Date for all Non-Cash Assets (as adjusted for subsequent investments or conversions to Cash) other than intercompany receivables and investments, which shall be valued based on the methodology in the "Recovery Analysis" included in the Disclosure Statement.  The Non-Cash Assets included in the calculation of the Minimum Asset-Reserve Ratio and that may be retained on account of Disputed Claims in lieu of Available Cash shall exclude assets against which an entity has asserted a security interest, whether or not the Debtors dispute the validity of the asserted security interest.

        up to the amount of each such holder's Catch-Up Distribution, before a Minimum Cash Reserve is funded and further Distributions are made to holders of unsecured, non-priority Allowed Claims that have previously received all Distributions to which they were entitled.

    iv. If there is any Available Cash remaining on a Distribution Date after all holders of Allowed Disputed Claims have received their entire Catch-Up Distribution and a Minimum Cash Reserve has been funded for outstanding Disputed Claims, such remaining Available Cash shall be distributed to all holders of unsecured, non-priority Allowed Claims in accordance with the Plan.

D. <u>Exclusion of Certain Plan Settlement Amounts and Subordinated Debt Redistributions</u>.  LBHI shall not substitute Non-Cash Assets for, or advance to holders of Allowed Claims, Cash that has been redistributed pursuant to the Plan Adjustment, the LCPI Settlement Amount, the LBSF Settlement Amount, the LBSF Additional Settlement Amount or Section 6.4 of the Plan (subordinated debt redistributions) and is to be retained and reserved for holders of Disputed Claims to the extent such Claims become Allowed Claims and are entitled to receive such Distributions.  Such amounts shall be retained in Cash and segregated exclusively for the benefit of holders of Disputed Claims in LBHI Classes 3 and 7 (in the case of Plan Adjustment), LCPI Class 4A (in the case of the LCPI Settlement Amount), LBSF Class 4A (in the case of the LBSF Settlement Amount), LBSF Classes 4A and 5C (in the case of the LBSF Additional Settlement Amount) and LBHI Classes 3, 4A, 4B and 5 (in the case of subordinated debt redistributions).  If a Disputed Claim in the foregoing Classes becomes an Allowed Claim, on the first Distribution Date that the holder of such Claim is entitled to receive a Distribution in accordance with Section 8.4 of the Plan, such holder shall receive (i) in Cash, the redistributed amounts of Plan Adjustment, LCPI Settlement Amount, LBSF Settlement Amount, LBSF Additional Settlement Amount or subordinated debt redistributions, as applicable, retained on account of such Claim equal to the amount of such Distribution(s) that would have been distributed under the Plan on account of such Claim if such Claim had been Allowed as of the Effective Date, inclusive of any interest earned on such amount, in addition to (ii) any other Catch-Up Distribution such holder may be entitled to receive, which shall be paid in accordance with this Order.

E. <u>Reporting</u>.  The post-Effective Date monthly operating report that is filed by the Plan Administrator at least 20 days after a Distribution Date shall include with respect to each Participating Debtor: (i) the aggregate amount of Distributions remitted to holders of Allowed Claims on the immediately preceding Distribution Date, (ii) the Minimum Cash Reserve amount and percentage retained after such Distribution Date, (iii) the Asset-to-Reserve Ratio existing on such Distribution Date, and (iv) the aggregate shortfall of

     Catch-Up Distributions, if any, that must be satisfied on subsequent Distribution Dates.

; and it is further

   ORDERED that prior to the exercise of the authority granted pursuant to this Order, LBHI, in its sole discretion, may establish additional minimum conditions to be satisfied, including, but not limited to, satisfaction of a higher ratio of Non-Cash Assets to Reserve Amount than the Minimum Asset-to-Reserve Ratio or the retention of an Available Cash reserve greater than the Minimum Cash Reserve; and it is further

   ORDERED, except as expressly set forth herein, nothing in this Order shall modify or amend any provision of the Plan or the Confirmation Order; and it is further

   ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
    [_____], 2012

                _____
                UNITED STATES BANKRUPTCY JUDGE