By Express & Certified Mail

February 10th, 2012

United States Bankruptcy Court Southern District of New York

In re

Lehman Brothers Holdings Inc., et., al., - Debtors

Debtor          Lehman Brothers Holdings, Inc.
Case Number     08-13555 (Jointly Administered

Creditor/Claimant Name          Rodney A. Plaskett (hereinafter "Creditor")

Re:     Creditor Hereby Opposes Debtor's Motion to Reclassify Creditor's Claims
        Against Debtor as Equity Interests or Equity Awards

        Response to Attorneys for Debtors and Debtors in Possession (hereinafter "Debtor")

        Notice of Debtors Supplemental Annotated Omnibus Reply to Debtors Seventy-Third,
        One Hundred Eighteenth, One Hundred Thirtieth, One Hundred Thirty First, One Hundred Thirty
        Third, One Hundred Thirty-Fourth, One Hundred Thirty-Fifth, One Hundred Seventy-Sixth, and
        Two Hundred And Seventh Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity
        Interest) Dated January 24th, 2012

Description of the basis and the amount of the Claim:
$62,290.47 (the "Amount") in Earned Trading Commissions

**Preliminary Statement**

Creditor was a 100% commission only Investment Representative of Debtor. Creditor was compensated by Debtor for earning stock trading commissions and Creditor was entitled to a portion of said commissions as was determined by Debtor. Creditor received no other compensation other than a portion of the commissions Creditor generated. Pursuant to Creditor's contract with Debtor, Debtor **took** (emphasis supplied) a portion of Creditor's earned commission and periodically placed said commission in restricted stock units ("RSUs"). Debtor did not **give** (emphasis supplied) (as Debtor does with salaried employees) Creditor any compensation in the form of RSU's that Creditor did not **earn**. **Until such time that Debtor determined to convert a portion of Creditor's earned commissions into RSU's, said commissions remained the earnings of Creditor, subject to offset by Debtor in the event that Creditor owed Debtor money.**

The calculation, annual award and other conditions of RSUs were subject to the firm's Stock Award Plan as such conditions might be changed from time to time. At the time of Debtor's bankruptcy the Amount ($62,290.47) was not an RSU. The amount was cash. The amount was a line item on Creditors Compensation Statement which is attached hereto and labeled Exhibit C. In the event that Creditor left the Debtor's employ, Debtor would be legally obligated to pay Creditor said Amount subject to Creditor owing Debtor monies for failing to meet Creditor's draw or for trading errors. Creditor had no draw.



Response to Debtors Supplemental Annotated
Omni bus Reply to Debtors Motion to Reclassify
Proofs of Claim As Equity Interest
Page 2.

## Background

First, Reference is hereby made to Creditor submission dated September 15th, 2011. Creditor hereby affirms and incorporates all statements and claims made therein and said submission is attached hereto and labeled Exhibit A.

Second, attached hereto is a Contract of Employment (the "Contract") dated June 9th, 2005 between the Creditor and Lehman Brothers and labeled Exhibit B.

Third, attached hereto is a Compensation Statement (the "Compensation Statement") that is labeled Exhibit C.

## Response to Debtors Assertions in Section A. Subsection 5
## Respondents Have The Burden of Proof with Respect to the Outstanding Claims

Attached hereto and labeled Exhibit C is Creditor's Compensation Statement which indicates amount of commissions earned by Creditor. Creditor was not paid the earned commissions indicated on Line 10 of Exhibit C. Debtor has failed to provide any evidence that Creditor was holding $62,290.47 of RSUs at the time of the Bankruptcy. Creditor has proof that said amount was a sum certain of earned commissions.

Creditor hereby demands that that Debtor compel Anthony Lombardo who was Creditor's supervisor before and after the Bankruptcy event to testify as to the disposition of Creditor's earned commissions.

## Response to Debtors Assertions Section II. Subsection 14
## Respondents Assertion: the Equity Awards were compensation for services provided to Debtors that would otherwise have been payable in cash.

Debtor's Attorneys continue to fail to understand the difference between salaried employees and commission salespersons. Debtor's Attorneys continue to fail to differentiate between a demand for payment for services definable in a sum certain versus a demand for the delivery of stock.

No RSU's or stock of any kind was ever purchased with Creditor's $62,290.47. The employees in Enron were salaried employees. They could not point to any sum certain that they had earned pursuant to a formula provided by Enron. Debtor provided its 100% at risk commission employees with a formula pursuant to which they would be compensated a definite amount of monies.

This is a claim for earned compensation, cash, not for an "equity award".

08-13555-mg Doc 25664 Filed 02/14/12 Entered 02/22/12 18:14:00 Main Document Pg 3 of 10

Response to Debtors Supplemental Annotated
Omni bus Reply To Debtors Motion to Reclassify
Proofs of Claim As Equity Interest
Page 3

**Creditor's Reponses to Section IV. Subsections 25 & 26**
**Respondents Assertion: the Outstanding Claims are not Equity Interests because Common Stock was not actually delivered or because the Equity Awards did not vest as of the Commencement Date**

**Debtor in Sector IV. Subsections 25 & 26 make certain factually incorrect assertions.**

Debtor states in pertinent part in Paragraph 26:

"Some of the respondents also assert that LBHI escrowed cash for their benefit on account of such amounts. Based on the Debtor's review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with the Equity Awards. Respondents assertions to the contrary as not supported by any evidence and are merely asserted in unsworn statements in certain of the Responses."

**Evidence that Debtor held an amount certain for the benefit of Creditor.**

Exhibit C is a standard Compensation Statement for a Lehman Investment Representative. Creditor was a Lehman Investment Representative. Creditor's Compensation Statement contains line 10 which reports and states $62,290.47/Equity Accrual Calculated.

Creditor asserts pursuant to Creditors contract with Debtor, all commissions earned remained the property of both Creditor and Debtor prior to such time that any commissions where converted into RSUs.

Paragraph 5 of Exhibit C (Creditor's Employment Contract) states in pertinent part that "the Firm (.i.e., Debtor) will have the right, without notice, withhold any amounts payable to you as compensation or otherwise and apply such withheld amounts to repay any recoverable deficit or to satisfy any indebtedness to the Firm to the maximum extent permitted by law."

The $62,290.47 listed in line 10 of Exhibit B was an undeniably an amount payable to Creditor as compensation which was subject to recovery by the Firm in the event that Debtor had a deficit or a debt owed to the Firm. This foregoing amount was cash; not a security, not equity, not a security evidencing a security interest.

Paragraph 5 of Exhibit C states in further pertinent part "If any such deficit or indebtedness exists at the time of your termination from the Firm, the Firm will have the right, to the maximum extent permitted by law, to recover such amount by offset against any amount otherwise awarded, credited or owing to you, including but not limited to amounts awarded to you under the Firm's Stock Award program."

Omni bus Reply To Debtors Motion to Reclassify
Response to Debtors Supplemental Annotated
Proofs of Claim As Equity Interest
Page 4

The foregoing paragraph provides that in the event that Creditor left the firms employ and at that time owed the firm money, the firm could offset said debt with any amount earned or owed to Creditor. The amount of $62,290.47 had been credited to and was owed to Creditor. It was not an RSU or a Stock award. Conversely, if Creditor did not owe and had no debt to the firm, Creditor was then legally entitled to payment of the money he had earned.

Exhibits A, B, and C provide incontrovertible proof that LBHI intended to hold sums of Creditor's earned commissions in trust. In the event of Creditor's separation from LBHI, LBHI would deduct from any amounts of money owed by Creditor to LBHI and the balance would be paid to creditor. The balance in this instance is $62,290.47.

Debtor's asserts in Subsection 26 that "Based on the Debtor's review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with the Equity Awards." If the foregoing is true, Debtor's Attorney's as Officers of the Court, have an obligation to report said finding to New York and Federal Attorneys General as Debtor was clearly criminally defrauding Creditor. Creditor's Contract and Compensation Statement provide for the holding of amounts and Debtor represented to Creditor exactly what constituted said amount ($62.290.47).

## Conclusion

As a 100% commission Investment Representative, Creditor was entitled to all commissions earned subject to Creditor owing Debtor money due to trading errors or failure to meet Creditor's Draw, in the event Creditor had a draw.

If Debtor had determined to separate from Creditor due to Debtor's decision to downsize its sales force or exit Creditor's line of business, Debtor would have paid Creditor every penny of commission earned by Creditor including the $62,290.47 indicated on line 10 of Exhibit C.

Dated: February 10, 2012

I, Rodney A. Plaskett, solely possess ultimate authority to reconcile, settle, or otherwise resolve this Claim.

Rodney A. Plaskett
40 Birchwood Lane
Hartsdale, New York  10530
914-419-0025/raplaskett@aol.com

By _____
Rodney A. Plaskett
       Creditor

Exhibit A

By Express & Certified Mail

September 15th, 20011

United States Bankruptcy Court Southern District of New York

Debtor      Lehman Brothers Holdings, Inc.
Case Number  08-13555

Creditor / Claimant Name    Rodney A. Plaskett

Description of the basis and the amount of the Claim:
$62,290.47 (the "Amount") in earned trading commissions.

The Amount is the sum total of trading commissions that was being held in account for Creditor benefit when the bankruptcy filing by the Debtor.
The Amount is a definable cash amount that was not based on Debtor **giving** (emphasis supplied) Creditor anything. Creditor earned said amount (commissions) working for Debtor and thus was wages. At the time of the Debtor's filing for bankruptcy said Amount was **not**: a restricted stock unit, a contingent stock award, stocks options, or other equity-related compensation, both distributed and not distributed, or vested or unvested (collectively, the "Equity Awards"). Debtor in no manner **gave** Creditor compensation in the manner of Equity Awards. Creditor, in his original filing before the court, showed the court what proof he could acquire from Debtor which showed that Creditor had earned the Amount which is the basis of this claim.

Creditor demands payment of the Amount pursuant to 11 U.S.C. Sec. 507(a)(4) as the Amount was commissions earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business.

Further, in that the Amount was not an Equity Award, but in fact a definable dollar amount, Creditor calls upon the Court to discover from the Debtor or the Debtor's successor in interest, where such monies went.

Further, if the Amount was an Equity Award, Creditor calls upon the Debtor to show proof in writing that Creditor had been granted or received said Equity Award.

Further, in the event the Court determines that the Amount constituted an Equity Award, Creditor hereby claims that the Amount and any other amounts contributed thereto, were in fact contributions to an employee benefit plan pursuant to 11 U.S.C. Sec. 507 (a) (5). Every month Debtor withheld a percentage of Creditor's **earned** commissions to be used and said commissions were to be used in a benefit plan that was completely and totally under Debtor's control and discretion. Clearly, the Debtor's Equity Award Plan which was subtitled "Life @ Lehman Your **Benefits** and Life Balance" should be deemed a benefit play as that is what Debtor itself deemed it.

Page 2.

By Express & Certified Mail

September 15th, 20011

United States Bankruptcy Court Southern District of New York
Debtor
Lehman Brothers Holdings, Inc.
Case Number
08-13555

Creditor / Claimant Name
Rodney A. Plaskett

Description of the basis and the amount of the Claim:
$62, 290.47 (the "Amount") in earned trading commissions.

I, Rodney A. Plaskett, solely possess ultimate authority to reconcile, settle, or otherwise resolve the Claim.
40 Birchwood Lane
Hartsdale, New York 10530
914-419-0025/raplaskett@aol.com

By:    Rodney A. Plaskett


Creditor

# LEHMAN BROTHERS



Exhibit B

GABRIELLE LONGOBARDI
ASSISTANT VICE PRESIDENT
HUMAN RESOURCES
INVESTMENT MANAGEMENT DIVISION

June 9, 2005

Rodney A. Plaskett
40 Birchwood Lane
Hartsdale, NY 10530

Dear Rodney,

We are pleased to extend to you our offer of employment to join Lehman Brothers as an Investment Representative in the New York branch office of Private Investment Management. Your title of Senior Vice President will be submitted for official approval by the Executive Committee of our Board of Directors as part of the next quarterly approval process. We expect your employment to commence on or about July 6, 2005.

1. During the first 12 months of your employment by the Firm, you will receive a monthly draw of $16,666.67 (part in cash and part in conditional equity awards (RSUs, stock options, and/or other equity-based awards)) against your total payout as described below. In the event a deficit occurs during this period, it will not be recoverable by the Firm. Any overage will be accumulated and the cash portion will be paid at the end of this draw period, or earlier upon your termination of employment. Conversion from draw to regular production-based compensation will occur no later than 12 months from your start date and possibly earlier, at the discretion of management after notification from you.

2. During the first 12 months of your employment by the Firm, you will earn total compensation (part in cash and part in conditional equity awards) on the following businesses in accordance with the following payout schedule: ICG Equities (Middle Market), business (as determined by the Firm), 20%. For all other products/businesses and for all other periods of your employment, you will earn total compensation in accordance with the Firm's standard payout formula for the payout of cash commissions and conditional equity awards (RSUs, stock options, and/or other equity-based awards). In the event you are part of a 'team' assigned to any one or more accounts, you will receive payout only on your individual share of the gross production for such accounts. The amount of any such share will be as agreed by team members and approved by the Firm in advance. The monthly calculation, annual award, and other conditions of your conditional equity awards, including conditions on vesting, exercisability, and forfeiture, will be subject to the terms of the Firm's Equity Award Program for Investment Representatives, as that program and formula may be changed from time to time.

3. During your employment by the Firm, you will earn total compensation in accordance with the Firm's standard formula for payout of cash commissions and restricted stock units ('RSUs'). In the event you are part of a 'team' assigned to any one or more accounts, you will receive payout only on your individual share of the gross production for such accounts. The amount of any such share will be as agreed by team members and approved by the Firm in advance. The monthly calculation, annual award, and other conditions of your RSUs will be subject to the terms of the

LEHMAN BROTHERS
399 PARK AVE 6TH FLOOR NEW YORK NY 10022 TELEPHONE 212-526-1513

Page 2

Firm's Stock Award Program for Investment Representatives, as that program and formula may be changed from time to time.

4. The Firm will reimburse you for reasonable expenses associated with travel and client entertainment consistent with the Firm's standard policies.

5. Except as otherwise provided in this letter, the Firm will have the right, without notice, to withhold any amounts payable to you as compensation or otherwise and apply such withheld amounts to repay any recoverable deficit or satisfy any indebtedness to the Firm to the maximum extent permitted by law. If any such deficit or indebtedness exists at the time of your termination of employment from the Firm, the Firm will have the right, to the maximum extent permitted by law, to recover such amount by offset against any amount otherwise awarded, credited or owing to you, including but not limited to amounts awarded to you under the Firm's Stock Award Program. By your signature below, you hereby authorize and consent to the aforementioned deductions.

6. Please understand that this letter is not a contract of continuing employment. Employment is for no fixed term, and either you or the Firm may decide to terminate the employment relationship at any time for any reason. In making this offer of employment, the Firm has relied on your representations (a) that you are not currently party to any agreement or dispute or litigation that might impede your ability to accept this offer or perform the duties of this position and (b) that you are not subject to any non-competition arrangement or other restrictive covenants that might affect your employment by the Firm as contemplated by this letter.

7. Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that you must have and maintain in good standing all applicable licenses and registrations. This also means that this offer of employment is contingent on the successful completion of a background investigation, as well as on your satisfactorily meeting all pre-employment requirements including passing a pre-employment drug screen and producing documentation to verify your identity and eligibility to work in the United States. Please contact Gianna DiMaulo at (212) 526-7535 to schedule pre-employment processing.

8. This letter and your employment by the Firm shall be governed by the laws of the State of New York. By your signature below, you agree that any controversies arising out of or relating to this letter or your employment by the Firm, shall be submitted to and settled by arbitration pursuant to the rules of the National Association of Securities Dealers or the New York Stock Exchange.

9. You will be eligible to participate in the Firm's employee benefits program, in accordance with the terms of the applicable plans and programs, which will be described to you. The Firm reserves the right to change its benefits program, payout formula and other standard policies from time to time.

10. You will keep in strictest confidence the terms of this offer and will not disclose this letter or its terms to anyone other than your immediate family or professional advisors.

Page 3

Rodney, we are enthusiastic and pleased that you are going to be a part of our organization. If you agree with the terms outlined in this letter, please acknowledge same by signing this letter and returning it to me. An additional copy of this letter is enclosed for your files.

Sincerely,

*[signature]*

Gabrielle Longobardi
Assistant Vice President
Human Resources
Investment Management Division

Accepted and agreed to this 15th day of June 2005

by: *[signature]*
Rodney A. Plaskett

## Compensation Statement

Exhibit C

Find: GSID  10239320  [Get]  [Get in Excel]

Fiscal year: 2008  ☐ Show as of before EOM

Sales Org: --------10239320 RODNEY PLASKETT

Name: 10239320 - RODNEY PLASKETT
From: 12/1/2007 To: 12/31/2008
Future payout tradesstrSQL: SCGetIRSummaryHistory '3069070', '10239320', '12/1/2007', '12/31/2008', 2

|   | Year Total |   | 12/2008 | 11/2008 | 10/2008 | 9/2008 | 8/2008 | 7/2008 | 6/2008 |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 4,602,351.21 | Gross Production | 419,835.09 | 347,063.34 | 355,071.46 | 145,398.61 | 266,159.62 | 298,031.27 | 390,294.93 |
| 2 | 644,535.50 | Net Production | 63,694.61 | 50,688.10 | 51,106.19 | 19,096.34 | 35,142.89 | 40,680.88 | 51,862.80 |
| 3 | 14.00 | Average Rate (%) | 15.17 | 14.60 | 14.39 | 13.13 | 13.20 | 13.65 | 13.29 |
| 4 |  | Prior Months -Deficit/Overage | 0.00 | 0.00 | 0.00 | -16,878.34 | 0.00 | -0.01 | 0.00 |
| 5 | -53,546.77 | Adj to Net Production | -5,019.11 | -15.21 | -15.33 | 0.00 | -5,271.43 | -6,102.13 | -7,801.08 |
| 6 |  | Monthly Payout Balance | 58,675.50 | 50,672.89 | 51,090.86 | 2,218.00 | 29,871.45 | 34,578.75 | 44,061.72 |
| 7 | 0.00 | Draw Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 8 | 574,110.38 | Total Sales Compensation | 58,675.50 | 50,672.89 | 51,090.86 | 2,218.00 | 29,871.45 | 34,578.75 | 44,061.72 |
| 9 | 511,819.91 | Cash Commissions | 58,675.50 | 50,672.89 | 51,090.86 | 2,218.00 | 26,594.77 | 30,219.39 | 37,521.28 |
| 10 | *62,290.47 | Equity Accrual Calculated | 0.00 | 0.00 | 0.00 | 0.00 | 3,276.68 | 4,359.36 | 6,540.45 |
|  | 590,988.72 | Recorded Total Sales Compensation | 58,675.50 | 50,672.89 | 51,090.86 | 2,218.00 | 46,749.79 | 34,578.75 | 44,061.73 |
|  |  | -Deficit/Overage | 0.00 | 0.00 | 0.00 | 0.00 | -16,878.34 | 0.00 | -0.01 |