Arthur J. Kenney

200 East End Avenue, Apt. 5-DE

New York City, NY 10128

(646) 756-5393

**UNITED STATES BANKRUPTCY**

**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

| In re | : | Chapter 11 Case No. |
|---|---|---|
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | : | 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------X

**RESPONSE TO DEBTOR'S ANNOTATED REPLY FILED ON JANUARY 24, 2012**

| **Creditor Name & Address:** | Claim Number: 14067   EFC No. of Response: 17160 |
|---|---|
| **KENNEY, ARTHUR J.** | |
| **200 EAST END AVE, APT 5-DE** | Date Filed:    9/16/2009 |
| **NEW YORK, NY 10128** | Classification and Amount:  PRIORITY:   $ 10,950.00 |
| | UNSECURED: $ 54,222.11 |
| | TOTAL:          $ 65,172.11 |



RECEIVED FEB 10 2012 U.S. BANKRUPTCY COURT, SDNY JMP

**SUMMARY:**

As background, at the time of the Lehman Brothers bankruptcy, I, Arthur J. Kenney, was a commission salesman for the firm for over 25 years, and the compensation statement I have provided to all required/interested parties reflects cash commissions and accrued commissions.

Once again, as in my objection dated MAY 13, 2011 and sent to all required/interested parties, and in the objection made before the court during my appearance on DECEMBER 21, 2011, I reiterate my objection to the reclassification of my aforementioned claim in the amount of $ 65,172.11, as it represents earned, unpaid sales commissions that were accrued for the Lehman Brothers fiscal year 2008, starting on DECEMBER 1, 2007 through August 2008.

During that part of the Lehman Brothers fiscal year, a total of $ 94,853.12 earned and unpaid sales commissions were accrued and segregated. On JULY 1, 2008, $ 29,681 of these segregated commissions were used to purchase (converted into) 1,416.06 (Lehman Brothers) Restricted Stock Units (RSUs) at a conversion price of $ 20.96 per Restricted Stock Unit, and this amount was dutifully deducted from the FY 2008 Total accrued commissions.

The balance of the earned, Unpaid Wages/Sales Commissions was a net-total of $ 65, 172 (outstanding through August 2008) at the time of bankruptcy. In addition to this outstanding, accrued Unpaid Wages/Sales Commissions net total, an additional amount of $ 16,425.55 of SEPTEMBER Unpaid Wages/Sales Commissions was also outstanding, as evidenced by the attached compensation print-out (*PLEASE SEE Page 1 OF ATTACHMENTS, Line #9: "Sales Compe" ). Kindly note that I will be concurrently filing an AMENDED CLAIM (dated Feb. 10, 2012) to include these previously, overlooked Unpaid Wages/Sales Commissions for September '08. May I kindly ask all parties to please excuse any inconvenience this amending of my previous oversight may cause.

Debtors' counsel has erroneously referred to the originally-filed **claim (which consists only of Unpaid Wages/Accrued Commissions)** in certain places as stock, and/or as stock options in other places, when instead **a more proper term for these Unpaid Wages/Accrued Commissions would be convertible debt when LBHI was a going concern, and as debt when LBHI entered Bankruptcy.**

**CLAIMANT'S RESPONSES TO DEBTORS' ANNOTATED RESPONSES:**

#9    Debtors' Counsel Reply: " The equity Awards..."

**Rebuttal:** The Debtors' counsel erroneously categorizes my claim (Unpaid Wages/Aggregate Sales Commissions claim) as Equity Awards. It is not a right until a certain price/exchange rate would have been set, and therefore remained an obligation or debt by LBHI to the Employee/Claimant. Further, in each of the cases referenced, Debtor's counsel mischaracterizes my Unpaid Wages/Aggregate Sales Commissions : 1) in citing Baldwin-United Corp., Debtors' counsel mischaracterizes the commission accruals as stock-options (stock options have a set strike price);  in citing Nantahala Capital Partners council again mischaracterizes the commission accruals as tracking warrants (which also have a set conversion price,  hence the term "tracker"); in citing Carrieri vs Jobs.com council references the "claimant's right to redeem stock" (the Unpaid Wages/Aggregate Sales Commissions were not stock); in Einstein/Noah Bagel Corp, debtors' council references a non-transferrable, non-assignable put right (again, the Unpaid Wages/Aggregate Sales Commissions were not a "put" since no strike-price was set).

#10   Debtors' Counsel claims: ' Any rights that Respondents may have under the Equity Awards do not give rise to a claim within the meaning of section 101(5) of the Bankruptcy code because respondents are not entitled to a "right of payment" in cash on behalf of the Equity Awards.

**Rebuttal:** Again, in spite of the observation by the court of the differentiation between claims regarding Unpaid Wages/Aggregate Sales Commissions vs. outstanding RSUs, Debtors' council erroneously aggregates the two trying to blur the differentiation. The Aristeria Capital v. Calpine cited by Debtors' council is not germane to my claim since the case is about "conversion rights which vary with the value of the common stock", not about Unpaid Wages/Aggregate Sales Commissions.

#14    Debtors' Counsel's Reply: Respondents' argument that they received Equity Awards as part of their overall compensation is irrelevant to the treatment and classification of the Outstanding Claims as equity interests and does not impact the applicability of sections 510(a) and 501(b) of the Bankruptcy Code to claims based on the Equity Awards.

**Rebuttal:** Since my claim is about Unpaid Wages/Accrued Sales Commissions, this issue is not germane to my claim.

#16    ..."Second, courts have held that equity interests distributed as part of their compensation are subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

**Rebuttal:** Again, Debtors' counsel has erroneously aggregated disparate RSU v. any claim of Unpaid Wages/Aggregate Sales Commissions despite the differentiation noted by the court at the hearing on DECEMBER 21, 2011. Further, none of the cases cited are germane to my case (Unpaid Wages/Aggregate Sales Commissions): i.e., Enron Corp. (stock options issues); Frankum v. Int'l Wireless Commc'ns Holdings, Inc. (stock/stock options issues); Touch America Holdings, Inc. (stock/stock options issues).

#17     ..."Like the Respondents, the employees in Enron argued that they did not "purchase" the stock options," but rather received them as part of an employee compensation package."

**Rebuttal:** Again, this is not germane to my claim (Enron deals with stock option issues and not Unpaid Wages/Aggregate Sales Commissions), and it shows that the Debtors' counsel has not taken the court's recommendation that claimants/respondents "should be specifically given a chance to reply to those rebuttals pertaining to our specific claim." It is disappointing that debtors' counsel did not heed the request for clarity to facilitate expediting the appropriate resolutions to disparate claims.

#19     " In willingly engaging in the exchange of Labor for Equity Awards, the Respondents bargained not for cash but to become shareholders of LBHI stock."

**Rebuttal:** I never was given the opportunity to Bargain as the program was a "non-negotiated contract of adhesion. " On The Debtors' erroneous assertion that "Employees willingly engaged in the exchange of Labor for Equity Awards, the Respondents bargained not for cash, but to become shareholders of LBHI common stock," **there was no negotiation as evidenced by items in Exhibit B (Provided by Debtors' Counsel** as part of their **"OMNIBUS REPLY TO RESPONSES TO DEBTORS' ONE HUNDRED EIGHTEENTH, ONE HUNDRED THIRTIETH, ONE HUNDRED THIRTY-FIRST, ONE HUNDRED THIRTY-THIRD, ONE HUNDRED THIRTY-FOURTH, ONE HUNDRED THIRTY-FIFTH, ONE HUNDRED SEVENTY-SIXTH, TWO HUNDRED AND SEVENTH OMNIBUS OBJECTIONS TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)":**

1)    The Equity awards Program was imposed on employees by management (this was not bargained for) and was a non-negotiated contract of adhesion. **In "Debtors' Exhibit B" on Page #4 of the 2008 Equity Awards program (Overview of the 2008 Changes)** in the 3rd bullet point Management states:

*"Preserving our ownership culture: as in the past, the overall objective of the Firm's Equity Award Program is to ensure multi-alignment with shareholders through significant ownership stakes for employees".*

2)    The terms of the program demonstrate that the program was imposed on employees and not bargained-for: e.g., Also in **"Debtors' Exhibit B"** on the same page #4, in the first of the "3 primary changes to the 2008 program", Management indicated they were completely eliminating the equity discount and reducing but still maintaining a required holding period :

"***Equity Discount:*** *Beginning with the 2008 equity award, employees will no longer be granted RSUs at a discount from their fair market value at the time of the grant. However, RSUs will be subject to a much shorter holding period (3 years)."*

Nobody would "willingly engage ... and bargain" to buy LBHI stock (without a discount from the market value) at a date in the future and be required to hold it for 3 years starting on that date, when alternatively you could simply purchase the stock "in the open market at that same price without any required holding period, and not incur holding-period/liquidity risk."

#24    Debtors' Reply: Respondents do not provide any support for the assertion that the vesting of Equity Awards, or the actual delivery is necessary for the subordination of the Outstanding Claims.

**Rebuttal:** Again, the claim I have filed pertains to the Unpaid Wages/Aggregate Sales Commissions and not RSUs. The Unpaid Wages/Aggregate Sales Commissions were debt obligations on the part of LBHI. On July 1, 2008, LBHI chose to convert 20% of the accrued commissions into equity. The balance of the Unpaid Wages/Aggregate Sales Commissions remains a debt obligation of LBHI.

#25    Debtors' Reply: Similarly, the analysis under section 510(b) here does not depend on whether Respondents were actual shareholders, but rather the nature of their underlying claim.

**Rebuttal:** Debtors' council makes the case that the Equity Awards (RSUs) are limited buy their status having "rights of a common stockholder and nothing more." The Unpaid Wages/Aggregate Sales Commissions were never converted into Equity Awards (RSUs) and remain a debt obligation of LBHI.

#26    Debtors' reply: "Certain respondents that (sic) earned commissions throughout the year assert that portions of their monthly paychecks for the year 2008 were deducted and because LBHI typically issued equity Awards in November or December, such Respondents never received Equity Awards on account of such deductions. Some of such respondents also assert that LBHI escrowed cash for their benefit on account of such amounts. Based on the Debtors' review of their books and records, no amounts were held in escrow, constructive trusts, or otherwise for the benefit of such amounts. Based on the debtors' review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with Equity Awards.

**Rebuttal:** LBHI was a public company and subject to S.E.C. oversight and adherence to U.S. GAAP Standards. If debtors' council cannot locate the corresponding account, they should access a party in forensic accounting with the expertise required. Scrutinizing the July 1, 2008 daily cash flow statement would easily allow them to ascertain the accounts accessed to convert 20% of the accrued commissions to LBHI stock at a purchase price of $20.96 on that date. Please note that my Amended Filing (dated Feb. 10, 2012 to my original filing # 14067 Filed Sept. 16, 2009) will included the unpaid commissions for Sept. '08, which, through my oversight, were not previously included in the Unpaid, Accrued Net Commissions Outstanding for FY '08 through August 2008.

#30    Debtors' Reply: Respondents' assertions that cash was deducted from their paychecks and escrowed for their benefit are not supported by any evidence and are merely asserted in unsworn statements in certain of the responses.

**Rebuttal:** *__PLEASE SEE Page 1 OF ATTACHMENTS__. It is the last Lehman Brothers -generated Production/Compensation Statement. In my claim that I filed (# 14067 filed on Sept. 16, 2009), I duly deducted the amount that the firm used in converting the 20% into RSUs on JULY 1, 2008 to arrive at a Net-Total Unpaid Wages/Accrued Sales Commissions outstanding for FY '08 through August of $65,172.11.

Also, for you reference, *__PLEASE SEE Page 2 OF ATTACHMENTS__. It is an e-mail from Ms. Rebecca McAdams of Barclays HR Department (__Dated__: Tuesday, Oct. 4, 2011; __Subject__: "Per our conversations"). The e-mail confirms that **the policy for Barclays Capital (which acquired the assets of Lehman Brothers) was to process a CASH Payment for Accrued Commissions for employees who would not be there when the conversion would occur for the Stock/Cash incentive awards** scheduled for February (please see the last bullet-point of that attached e-mail):

- *"Upon your departure from the Firm, **it is our intention to process a cash payment to you Representing the commission pay that has been held back throughout the year (2011).** This amount was earned (and is reflected on your pay statements, I believe); This would have been delivered in the form of SVP/CVP in February of 2012. (N.B.: **SVP**= Stock Value [Incentive] Plan/ **CVP**=Cash Value [Incentive] Plan).* (**PLEASE SEE Page 3 OF ATTACMENTS**: Year End Compensation Statement-__Line #15__: *"Long-Term Incentive Scheme"*).

**IN CONCLUSION:**

Once again, may I reiterate my objection to the reclassification of my aforementioned claim in the amount of $ 65,172.11 with $ 10,950.00 of that amount being granted PRIORITY Status , as it represents earned, Unpaid wages/Sales Commissions that were accrued for the Lehman Brothers fiscal year 2008, starting on DECEMBER 1, 2007 through August 2008. Kindly note that I will be amending the Original Claim # 14067, Filed on Sept. 16, 2009, to include these Unpaid Wages/Earned Commissions for September 2008, which I should have also included but failed to include in the Sept. 14, 2009 filing. Please excuse any inconvenience that this Amended Filing will cause.

Debtor's counsel has erroneously referred to the originally-filed **claim (which consists only of Unpaid Wages/Accrued a more Commissions)** in certain places as stock, and/or as stock options in other places, when instead **proper term for these Unpaid Wages/Accrued Commissions would be convertible debt when LBHI was a going concern, and as debt when LBHI entered Bankruptcy.**

| | Year Total | Sep-08 | Aug-08 | Jul-08 | Jun-08 | May-08 | Apr-08 | Mar-08 | Feb-08 | Jan-08 | Dec-07 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Production | 4,082,282.28 | 100,505.09 | 335,362.74 | 485,245.17 | 330,816.07 | 436,459.74 | 555,973.90 | 411,792.60 | 431,491.57 | 542,848.94 | 451,786.45 |
| Net Production | 628,551.73 | 16,425.55 | 54,745.69 | 75,070.58 | 51,691.32 | 63,551.26 | 86,174.21 | 63,568.54 | 64,238.86 | 82,557.95 | 70,527.78 |
| p Net Produc | 0.48 | 0 | 0 | 0 | 0 | 0 | 0 | 0.34 | 0 | 0 | 0 |
| Average Rate | 15.4 | 16.34 | 16.32 | 15.47 | 15.63 | 14.56 | 15.5 | 15.44 | 14.89 | 15.21 | 15.61 |
| Prior Months - Deficit | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| o Net Produ | -59,096.83 | 0 | -8,199.85 | -11,194.03 | -7,721.77 | -9,521.75 | -12,926.03 | -9,533.40 | 0 | 0 | 0 |
| ly Payout Ba | | 16,425.55 | 46,545.85 | 63,876.54 | 43,969.55 | 54,029.51 | 73,248.18 | 54,035.48 | 64,238.86 | 82,558.08 | 70,527.78 |
| Draw Amount | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sales Compe | 569,455.37 | 16,425.55 | 46,545.85 | 63,876.54 | 43,969.55 | 54,029.51 | 73,248.18 | 54,035.48 | 64,238.86 | 82,558.08 | 70,527.78 |
| sh Commissi | 458,176.71 | 0 | 40,552.54 | 52,541.23 | 40,646.81 | 46,657.63 | 58,140.78 | 46,661.20 | 52,757.72 | 63,703.45 | 56,515.35 |
| Accrual Calc | 94,853.11 | 0 | 5,993.31 | 11,335.31 | 3,322.74 | 7,371.88 | 15,107.40 | 7,374.28 | 11,481.14 | 18,854.63 | 14,012.43 |
| tal Sales Co | 553,029.83 | 0 | 46,545.85 | 63,876.54 | 43,969.55 | 54,029.51 | 73,248.18 | 54,035.48 | 64,238.86 | 82,558.08 | 70,527.78 |
| -Deficit/Overa | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Kenney, Arthur J: Equities Sales (NYK)

**From:** McAdams, Rebecca: HR (NYK)
**Sent:** Tuesday, October 04, 2011 2:07 PM
**To:** Kenney, Arthur J: Equities Sales (NYK)
**Subject:** Per our conversations

Art:

I hope all is going well with your transition. As we have discussed, I can confirm the following:

- Your last day of employment will be December 23rd, 2011 and you will be in active work status through that day (as opposed to serving your notice period out of the office). All access will remain as currently granted until your departure, unless you and the team inform me otherwise before then.
- As a result of the arrangement to work through your last day of employment you will remain on your current commission arrangement through your last day of employment (12/23/2011). This has been approved by Anthony Lombardo as well.
- Upon your departure from the Firm, it is our intention to process a cash payment to you representing all the commission pay that has been held back throughout the year (2011). This amount was earned (and is reflected on your pay statements, I believe); it would have been delivered in the form of SVP/CVP in February of 2012.

Please let me know if we need to further discuss the above, otherwise I will reach out to check in with you as we get closer to the end of the year. And of course, please feel free to contact me if/as any other questions arise.

Best,
Rebecca


**Rebecca McAdams**
Human Resources
**BARCLAYS CAPITAL**
+1 (212) 526 0250 - office
+1 (347) 813 1257 - mobile
rebecca.mcadams@barclayscapital.com

---

**From:** Kenney, Arthur J: Equities Sales (NYK)
**Sent:** Wednesday, September 28, 2011 3:00 PM
**To:** McAdams, Rebecca: HR (NYK)
**Subject:** e-mail

Hello Rebecca,

At your convenience, would you kindly send me the e-mail we spoke about last week (i.e., confirming my revised last date, the release of the Long-Term Incentive Scheme amount, and the conditions or normal commission arrangement until then).

Thank you, Rebecca,
Art

**Arthur J. Kenney**
*Barclays Capital*
Director


12/23/2011

**Institutional Client Group**
Arthur.Kenney@barclayscapital.com
(212) 526-9744

12/23/2011

Compensation Statement

Find: GSID  10017249  Get / Get in Excel
Fiscal year: 2011  ☐ Show as of before EOM
Sales Org: ------10017249 ARTHUR KENNEY

Name: 10017249 - ARTHUR KENNEY
From: 1/1/2011 To: 12/31/2011
Future payout trades

| Year Total | | 12/2011 | 11/2011 | 10/2011 | 9/2011 | 8/2011 | 7/2 |
|---|---|---|---|---|---|---|---|
| 7,153,431.47 | Gross Production | 159,362.21 | 640,805.50 | 591,182.39 | 867,072.77 | 1,016,249.04 | 518,66 |
| 589,096.13 | Net Production | 11,451.60 | 14,574.61 | 49,048.81 | 62,769.66 | 86,274.79 | 42,26 |
| 589,096.13 | Total Net Production | 11,451.60 | 14,574.61 | 49,048.81 | 62,769.66 | 86,274.79 | 42,26 |
| 8.24 | Average Rate (%) | 7.19 | 2.27 | 8.30 | 7.24 | 8.49 | |
| 165,000.00 | ICG Draw | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,75 |
| 2,298.40 | ICG Draw Deficit Writeoff | 2,298.40 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Prior Months -Deficit/Overage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 426,394.55 | Total Balance Due after ICG Draw | 0.00 | 824.61 | 35,298.81 | 49,019.66 | 72,524.79 | 28,51 |
| 13,516.67 | Adj to Net Production | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Monthly Payout Balance | 0.00 | 824.61 | 35,298.81 | 49,019.66 | 72,524.79 | 28,51 |
| 0.00 | Draw Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 604,911.22 | Total Sales Compensation | 13,750.00 | 14,574.61 | 49,048.81 | 62,769.66 | 86,274.79 | 42,26 |
| 151,250.00 | ICG Draw | 0.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,75 |
| 351,713.11 | Cash Commissions | 0.00 | 9,253.14 | 32,260.70 | 36,543.76 | 48,516.11 | 26,07 |
| 88,198.10 | Long-Term Incentive Scheme | 0.00 | -8,428.53 | 3,038.11 | 12,475.90 | 24,008.68 | 2,44 |
| 502,963.10 | Recorded Total Sales Compensation | 0.00 | 23,003.14 | 46,010.70 | 50,293.76 | 62,266.11 | 39,82 |
| | -Deficit/Overage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |