**United States Bankruptcy Court**
**Southern District of New York**

In re: LEHMAN BROTHERS HOLDINGS INC., *et al.*, Debtors

Chapter 11 case number 08-13555 (JMP) (Jointly Administered)

Re: NOTICE OF DEBTORS' SUPPLEMENTAL ANNOTATED OMNIBUS REPLY TO RESPONSES TO DEBTORS SEVENTY-THIRD, ONE HUNDRED EIGHTEENTH, ONE HUNDRED THIRTIETH, ONE HUNDRED THIRTY-FIRST, ONE HUNDRED THIRTY-THIRD, ONE HUNDRED THIRTY-FOURTH, ONE HUNDRED THIRTY-FIFTH, ONE HUNDRED SEVENTY-SIXTH, AND TWO HUNDRED AND SEVENTH OMNIBUS OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

| | |
|---|---|
| **Claimant Name and Address:** | SHOTTON, PAUL NIGEL<br>124 LUKES WOOD ROAD<br>NEW CANAAN<br>CT 06840 |
| **Claim Number:** | 21362 |
| **Date Filed:** | 09/21/2009 |
| **Debtor:** | 08-13555 |
| **Classification and Amount:** | PRIORITY: $10,950.00<br>UNSECURED: $4,755,970.21<br>TOTAL: $4,766,920.21 |

February 13th 2012

To: The Honorable James M. Peck,
One Bowling Green,
New York,
New York 10004,
Court Room 601

Copy to: Weil, Gotschal & Manges LLP,
767 Fifth Avenue,
New York,
New York 10153
(Attn: Robert J. Lemons, Esq. and Mark Bernstein, Esq.)

Copy to: Office of the United States Trustee for Region 2,
33 Whitehall Street, 21st Floor,
New York,
New York, 10004
(Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.)


RECEIVED FEB 14 2012 U.S. BANKRUPTCY COURT, SDNY

Copy to: Milbank, Tweed, Hadley & McCloy LLP,
1 Chase Manhattan Plaza,
New York,
New York 1005
(Attn: Dennis F. Dunne, Esq., Dennis O' Donnell, Esq. and Evan Fleck, Esq.)

I wish to notify the Bankruptcy Court that I **OPPOSE** the reclassification of my claims as equity interests. My claims against the debtors are in respect of emoluments due to me in respect of services I rendered to them as their employee. As further evidence of this I submit a copy of the letter dated March 19th, 2004 offering me employment at the Firm. This letter represents the only employment contract between me and the debtors. The letter makes clear that the compensation agreed in exchange for my labor is set as a fixed amount in US Dollars for the performance year 2004, and that compensation amount, in US Dollars, is furthermore agreed as the reference run-rate to be used for determination of compensation in future years.

The letter goes on to explain that "At the Firm's discretion, a portion of your total 2004 and future years' total compensation....will be payable in conditional equity awards....pursuant to the Firm's employee stock award program as then in effect." In fact, the terms of the Firm's employee equity awards program, including the proportion and nature of the conditional equity awards changed from one year to the next, solely at the Firm's discretion, and I was never consulted nor asked to approve these changes. It is clear from my employment contract letter, and from the employee stock award program documentation, that the Firm viewed the three components of Total Compensation (being salary paid in the form of cash, incentive compensation paid in the form of a cash bonus, and incentive compensation paid in the form of conditional equity) as entirely fungible, with the purpose of the deferred conditional equity award being principally to act as a device to retain employees' services.

The fact that the award program documents make clear that, in the event of a change-of-control of the Firm, conditional equity awards are immediately convertible into cash further demonstrates that the awards were regarded as fungible with cash, and that counsel for the debtors' contention that the awards may be classifiable only as equity is fundamentally incorrect. Further evidence for the fungibility of the awards with cash is given by the fact that employees could opt to have federal and state taxes due upon vesting of contingent equity awards with-held directly by the Firm through the mechanism of withholding the corresponding amount of deferred equity, whereupon the Firm would submit the corresponding cash amounts to the respective federal and state treasury departments.

Counsel for the debtors argues in the Preliminary Statement of the supplemental annotated omnibus reply to responses, and subsequently in points 10 and 19, that restricted stock units and contingent stock awards were provided "to enhance the attractiveness of employment", and that "employees willingly engaged in the exchange of their labor for these awards, and as such, bargained for positions as shareholders of LBHI". This is complete nonsense. LBHI stock traded freely on the stock exchange, and

had employees been paid compensation wholly in cash they would have been free to exercise their choice to use that cash to buy equity in LBHI. It was not necessary for them to receive compensation in the form of LBHI stock to gain exposure to LBHI's equity price performance, nor was it the case that the awards "enhanced the attractiveness of employment". Had employees been given a free choice as to whether to take their compensation in the form of cash or of LBHI equity the overwhelming majority would have opted to take cash.

In summary, I am not seeking a claim against the debtors for the diminution of value of an equity holding that I purchased willingly. Rather, I am pursuing a wage claim in respect of unpaid wages owed to me in respect of services provided to the debtors in good faith.

In respect of further responses from the debtors to these responses, the debtors should reply at my address above, which is identical to that presented in my proof of claim. They may also contact me during office hours at (212) 821 4305. I retain ultimate authority to reconcile, settle or otherwise resolve the claim.

*P. N. Shotton*
Paul N. Shotton

# LEHMAN BROTHERS

MADELYN ANTONCIC
MANAGING DIRECTOR

March 19, 2004

Paul Nigel Shotton
Kent House Oast East
Court Lane
Hadlow
Kent TN11 0PX

Dear Paul:

We are delighted to confirm our offer of full-time employment as the Global Head of Market Risk Management of Lehman Brothers (the "Firm"). Your title of Managing Director will be submitted for official approval by the Executive Committee of our Board of Directors as part of the next quarterly approval process. We expect your employment to commence on or about May 1, 2004.

For the performance year 2004 (your date of hire through November 30, 2004), your compensation will be as follows:

- Salary at the annualized rate of $200,000, payable in biweekly installments in accordance with our customary payroll practices.

- A minimum bonus in the amount of $1,550,000.00, less applicable deductions, payable on or about January 31, 2005.

The foregoing salary will be paid for all periods of your active employment with the Firm in performance year 2004. The bonus amount set forth above will be paid at the time and in the amount stated except that it will not be payable if, before the date of the scheduled payment, you have resigned or have been terminated from the Firm because of misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily. Thus, if you have been terminated for reasons other than those set forth in this paragraph, you will receive the bonus payment as specified above. The bonus amounts set forth above may be reduced in the event of an approved leave of absence during performance year 2004. All payments described in this letter will be subject to applicable payroll and income tax withholding and other applicable deductions.

At the Firm's discretion, a portion of your total 2004 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity awards) pursuant to the Firm's employee stock award program as then in effect.

Mr. Paul Nigel Shotton
March 19, 2004
Page 2

Your compensation for all periods after performance year 2004 will be determined at the Firm's discretion, referencing a run-rate compensation level for compensation year 2004 of $1,750,000.00.

You will also be eligible to participate in the Firm's standard employee benefits program, which will be explained to you during your orientation session.

You will also be eligible for the standard relocation benefits in effect for employees at your level. Your relocation under the Firm's US relocation program will be explained to you and facilitated by Brenda Levis, who can be contacted at (212) 526-8105.

Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that this offer of employment is conditional upon the successful completion of a background investigation, including reference, credit, criminal and other checks, as well as on your satisfactorily meeting all pre-employment requirements, including passing a pre-employment drug screen and producing documentation to verify your identity and eligibility to work in the United States. Please contact Kayla Nation of our Human Resources Department at (212) 526-6156 to schedule pre-employment processing.

While the foregoing compensation commitments will be honored, this letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time and for any reason.

If you agree with the terms outlined in this letter, please acknowledge the same by signing the enclosed copy and returning it in the envelope provided.

Paul, we look forward to your joining the Firm and we are sure that you will find many opportunities to make a contribution to Lehman Brothers. Please contact me at (212) 526-9340 with any additional questions or concerns.

Sincerely,

*M. Antoncic*
Madelyn Antoncic

Accepted on this 20th day of April, 2004

*P. N. Shotton*
Paul Nigel Shotton