**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street
17th Floor
New York, NY 10004
(212) 962-8020



*Attorneys for Claimants: Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Christian Reynolds (Claim No. 28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), David I. Weiner (Claim No. 18314) and Seth Finkel (Claim No. 18067).*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re

LEHMAN BROTHERS HOLDINGS INC., et al.

                        Debtors.
---------------------------------------------------------------x

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

## CLAIMANTS' SUR-REPLY IN FURTHER OPPOSITION TO DEBTORS' SEVENTY THIRD, ONE HUNDRED EIGHTEENTH AND TWO HUNDRED SEVENTH OMNIBUS OBJECTIONS TO CLAIMS
### (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

Claimants Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney

(Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607),

Christian Reynolds (Claim No. 28442), Marvin C. Schwartz (Claim No. 20244), Stephanie

Stiefel (Claim No. 21711), David I. Weiner (Claim No. 18314) and Seth Finkel (Claim

No. 18067) (collectively the "Neuberger Claimants"),[1] submit this Sur-Reply Memorandum of Law in Further Opposition to Debtors' Seventy Third, One Hundred Eighteenth and Two Hundred Seventh Omnibus Objections to Claims, which include the claims made by the Neuberger Claimants.[2] As demonstrated more fully in the Claimants' Opposition to Debtor's One Hundred Eighteenth Omnibus Objection to Claims (collectively the "Responses")(ECF No. 20996) -- and not at all refuted by debtors in either of their initial Omnibus Reply Briefs (ECF Nos. 15406, 23470) or in their Supplemental Annotated Omnibus Reply to Responses, dated January 24, 2012 (ECF Nos. 24591) ("Annotated Reply")[3] -- the Neuberger Claimants' claims should not be reclassified as equity interests under 11 U.S.C. § 510(b).

The Neuberger Claimants were never afforded the opportunity to fairly negotiate their employment and compensation contracts with Lehman Brothers Holdings, Inc. ("Lehman"), when their original employer, Neuberger Berman, Inc. ("Neuberger") was acquired by Lehman. Instead, under duress, the Neuberger Claimants were presented with the Hobson's choice of either 1) starting employment at Lehman, which required a significant portion of their annual, formulaic compensation be withheld from them for at least five years in the form of Restricted Stock Units ("RSUs"), in order to maintain the billions of dollars of assets under their management and, perhaps more importantly, the future revenue stream from that significant book of business or 2) seeking new employment -- most likely not in finance or investment banking -- forsaking millions of dollars worth of previously earned, but yet unpaid, compensation from

---

[1] To the extent not defined herein, defined terms have the same meaning as in Claimant's Opposition to Debtors' One Hundred Eighteenth Omnibus Objection to Claims dated August 16, 2011 (EFC No. 20996).

[2] Oddly, Seth Finkel, one of the Neuberger Claimants, who opposed the Two Hundred Seventh Omnibus Objection (ECF. No. 22573) is not listed in Exhibit A to the Annotated Reply. We suspect this omission is an oversight and not a concession and, for that reason, Mr. Finkel joins herein.

[3] At the December 21, 2011 Conference the Court directed Debtors to detail which arguments applied to which specific claimants and also allowed the relevant claimants to submit a sur-reply to Debtors Annotated Reply.

2

Neuberger and losing their client relationships and income stream that they had cultivated over the course of many years.

The Neuberger Claimants demonstrated that their participation in the Lehman compensation scheme was an involuntary product of the 2003 merger between Neuberger and Lehman that came on the heels of a recession and at a time when the financial and banking industries were still facing uncertainties. The Neuberger Claimants participation was unjustly compelled by their need to preserve their careers, livelihoods and substantial books of business -- which most had spent decades developing and fostering – all of which would have been forfeited unless they continued at Lehman because of restrictive covenants and as a matter of law. *See, e.g., Bessemer Trust Co. N.A. v. Branin*, 16 N.Y.3d 549 (2011). Indeed, unlike others in investment banking that receive bonuses based on the trailing 12 months' revenue, the Neuberger Claimants' compensation was based on the net present value of future cash flows from their substantial books of business and this future, multi-million dollar revenue stream simply would have been lost if the Neuberger Claimants had not acceded to the Lehman pay scheme.

As a result, the amount of RSUs -- representing the formulaic compensation withheld -- that were provided to the Neuberger Claimants by Lehman *were not at all* "a condition of employment that the Claimants willingly accepted in return for their labor . . . [and] thus 'purchased' . . . with their labor." *In re Enron*, 341 B.R. 141, 151 (S.D.N.Y. 2006). To the contrary, unlike *Enron*, here the RSUs were thrust upon the Neuberger Claimants involuntarily and without their having any choice or viable alternative to employment at Lehman and the attendant Lehman pay scheme.

3

In the Claimants' Responses, the Neuberger Claimants also demonstrated that their acquisition of RSUs was not the product of any bargain by them "not for cash but to become a stockholder" or any "choice . . . to trade . . . cash compensation for the upside potential of shareholders status . . .", *In re Med Diversified*, 461 F.3d 251, 256 (2d Cir. 2006). Instead, the "acceptance" of RSUs in lieu of cash was a mandatory condition of their continued employment following the acquisition of Neuberger by Lehman and was the only manner in which they could retain their clients, their respective, substantial books of business and preserve and continue the work that they had spent their careers cultivating. When the merger occurred, the Neuberger Claimants' were forced to choose between: continuing their career at Lehman, with Lehman's requisite, involuntary pay scheme or finding another career in another line of work.

In response to the Neuberger Claimants' overwhelming showing of compulsion – a lack of volition that thoroughly defeats debtors' claim that the Neuberger Claimants voluntarily purchased Lehman securities with their labors and, thus, should have their compensation claims reclassified under 510(b) as equity interests -- the Annotated Reply only repeats the linguistic mantra of the *Enron* court and never responds to or even remotely addresses the clear and convincing position advanced by the Neuberger Claimants.

Rather than responding to the undeniable arguments advanced by the Neuberger Claimants, the Debtors, instead, purport to address the following in the annotations of the Annotated Reply, which the Debtors attribute to the Neuberger Claimants:

- The Equity Awards do not constitute equity in LBHI and, therefore, should not be classified as Equity Interest.
- The Equity Awards were compensation for services provided to the Debtors that would otherwise have been payable in cash.

4

- The Outstanding Claims are not based on damages that arise from the purchase or sale of a security and, therefore, section 510(b) is inapplicable.
- The Outstanding Claims are not Equity Interest because common stock was not actually delivered or because the Equity Awards did not vest as of the Commencement Date.
- There is a longstanding public policy tradition against forfeiture of earned compensation as evidenced by decision under New York state law.
- Because Respondents conferred a benefit upon the Debtors by providing labor and the Debtors now seek to benefit from such labor without fully and adequately compensating the Respondents, the Debtors are the beneficiaries of unjust enrichment.
- Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards.

Annotated Reply, Exhibit A, referencing ¶¶ 5-7, 9-10, 16-19, 25, 35-36, 41 for the Neuberger Claimants.

Conspicuously missing from Lehman's reply is any response to the key argument raised throughout the Neuberger Claimants' briefs, namely that the Neuberger Claimants did not *voluntarily* purchase Lehman securities[4]. The only portion of the Debtor's Annotated Reply that even indirectly touches on the position of the Neuberger Claimants is "[t]he Outstanding Claims are not based on damages that arise from the purchase or sale of a security, and, therefore, Section 510(b) is inapplicable. . . ." *Id.* However, the only argument in the Annotated Reply regarding the supposed applicability of Section 510(b) is actually a non-responsive evasion of the Neuberger Claimants' position that merely repeats the language of *Enron* without the slightest attempt to respond to the clear distinctions between the *Enron* employees and the Neuberger Claimants. Annotated Reply, at ¶ 10. Debtors again blindly argue that "[r]espondents *bargained* for rights to become equity security holders, with all the attendant

---

[4] During the December 21 hearing the Court itself pointed out that this was the crux of the Neuberger Claimants' opposition and that the Debtor's Omnibus Replies did not appear to address such arguments.

5

benefits and risks . . ." *Id.* However, the Neuberger Claimants compellingly demonstrated precisely the contrary in their Responses. Debtors then point to the decision in *Enron* for the proposition that "the exchange of an employee's labor for stock options falls under a broad reading of the term 'purchase'" and that this "was a condition of employment the Claimants willing accepted," *Id.* at ¶ 16 and 17. Again, Debtors' Annotated Reply never even attempts to address the Neuberger Claimants' position that the "exchange" in this instance was *involuntary and compelled* by the very merger that made them Lehman employees, and made them subject to the Lehman pay scheme, in order to continue their careers and maintain their books of business. Debtors simply ignore this factual distinction by claiming that the Neuberger Claimants "willingly engag[ed] in exchange of labor for Equity Awards" *id.*, at ¶ 19, when the truth is just the opposite, as demonstrated herein and in the Neuberger Claimants' Responses.

In short, the Annotated Reply fails to meaningfully address the position of the Neuberger Claimants. Debtors, instead, simply repeat factually inapposite, supposed "*Enron* truisms" that are clearly distinguished here. By doing so, the position of the Neuberger Claimants is further advanced by analyzing their compelled participation in the Lehman compensation scheme in terms akin to unconscionable employment contract of adhesion: "a contract is unconscionable where there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). Here, the "employment" contracts of the Neuberger Claimants plainly are unconscionable. The Neuberger Claimants, in order to preserve their ability to earn a living in their chosen occupation and maintain the substantial books of business they had built over the course of their careers and the income stream flowing therefrom, had no meaningful choice but to participate in the Lehman

pay scheme, a compensation package that unreasonably favored Lehman by allowing it to substitute paper RSUs for the cash compensation that the Neuberger Claimants had earned and to which they were entitled under the long-standing, pre-existing Neuberger formulaic compensation system. *See also, e.g., Rangone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 122 (2d Cir. 2010).

Likewise, the Annotated Reply does not deal with the clear economic duress and business compulsion demonstrated by the Neuberger Claimants when they were told by their superiors to "sign up with Lehman or leave" and forfeit their careers, substantial books of business and future earning capacities. As a result, the Lehman pay scheme was coercively thrust upon them: "A contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will." *Stewart M. Muller Constr. Co. v. New York Tel. Co.*, 40 N.Y.2d 955, 956 (1976); *767 Third Ave. LLC v. Orix Capital Markets, LLC*, 26 A.D.3d 216, 218, 812 N.Y.S.2d 8, 9 (1st Dept. 2006). Here, the threatened loss of their careers, substantial books of business and future revenue and earning streams, plainly depicts a lack of free will by the Neuberger Claimants. *See, e.g., Yuk Fung Ma v. J.C. Sake Inc.*, 2011 N.Y. Slip. Op. 50999 at *3 (Sup. Ct. 2011), (lockout of business co-owner "designed to coerce plaintiff to accept defendants' calculations as to the value of his interest" in the business and sell his shares constituted economic duress). As this Court made clear: "the doctrine of business compulsion provides that the making of a contract may be under such circumstances of business necessity as will render the same involuntary and excuse the allegedly coerced party from its performance, especially where undue advantage or a threat to do unlawful injury is shown." *In re Market Square Assoc. Ltd.*, 56 B.R. 566, 573-74 (S.D.N.Y. 1986).

7

"The doctrine of economic duress arises from the theory that 'the courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury.'" *VKK Corp. v. National Football League*, 244 F.3d 114, 122 (2d Cir. 2001). While invocation of this doctrine "is reserved for extreme and extraordinary cases," *id.*, at 123, such is presented here: "an 'actual or threatened serious injury to business or employment' by a private party can be as coercive as other forms of coercion… and that '[t]o imperil a man's livelihood, his business enterprises, or his solvency, [is] ordinarily quite as coercive as, for example, detaining his property.'" *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 (2007). Indeed, as Justice Holmes long-ago aptly observed: "it always is for the interest of a party under duress to choose the lesser of two evils. But the fact that a choice was made according to interest does not exclude duress. It is the characteristic of duress properly so called." *Union Pac R.R. Co. v. Public Service Comm.*, 248 U.S. 67, 70 (1918). *See also, e.g., First Nat. Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633 (2d Cir. 1972).

The arguments raised by the Neuberger Claimants can be further distinguished from Debtor's generic Annotated Reply because, unlike discretionary bonuses paid to other Lehman employees -- or, for that matter, to the *Enron* employees -- the Neuberger Claimants had a long-standing, formulaic compensation structure that was continued after the Lehman-Neuberger merger. Prior to the merger, Neuberger almost always paid 100% of this employee compensation in cash. However, after the merger, up to 50% of the Neuberger Claimants' formula based compensation was withheld by Lehman as RSUs, rather than being paid out in cash. For example, Neuberger Portfolio Managers were paid a fixed percentage of gross revenue on their accounts above a predetermined revenue benchmark and a lesser percentage of gross

8

revenue below that benchmark, with the only distinction pre- and post-merger being that 50% of this earned compensation was withheld by Lehman for the years 2003 through 2007 as Equity Awards.

Most significantly, the amounts withheld by debtors from the Neuberger Claimants for this "deferred compensation" during the 2008 fiscal year -- from December 1, 2007 through the filing of the Lehman bankruptcy in September 2008 -- were treated quite differently. Recognizing the distinctiveness of Neuberger and its Managing Directors within Lehman, all 2008 deferred amounts were paid to the Neuberger Claimants in *cash* post-petition in January 2009, thereby recognizing that, unlike most Lehman employees, the formulaic compensation scheme utilized by Neuberger made all withheld amounts compensation, and not equity. This further compels the obvious conclusion that the previous years' deferred amounts, that were also determined solely through the use of the Neuberger compensation formula before being placed in RSUs, should now similarly be regarded not as any sort of equity interest, but as compensation that is due and owing to the Neuberger Claimants.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Claimants' Opening Brief, the Neuberger Claimants' Claims should not be reclassified as equity interests and debtors' various omnibus objections should be denied.

Dated:   New York, New York
         February 13, 2012

KAPLAN LANDAU LLP

By: _____
     Eugene Neal Kaplan (EK-4229)

1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

**JULIEN & SCHLESINGER, P.C.**
Michael S. Schlesinger (MS-0399)
One Whitehall Street
17th Floor
New York, New York  10004
(212) 962-8020

*Attorneys for Claimants:*

*Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Chris Reynolds (28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), David I. Weiner (Claim No. 18314) and Seth Finkel (Claim No. 18067)*

TO:   **HONORABLE JAMES M. PECK**
      One Bowling Green
      Courtroom 601
      New York, New York 10004

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for the Debtors*
767 Fifth Avenue
New York, New York 10153
<u>Attn</u>:   Robert J. Lemons, Esq.
        Mark Bernstein, Esq.

**OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 2**
33 Whitehall Street, 21st Floor
New York, New York 10004
<u>Attn</u>:   Tracy Hope Davis, Esq.
        Elisabeth Gasparini, Esq.
        Andrea B. Schwartz, Esq.

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
*Attorneys for the Official Committee of Unsecured Creditors*
1 Chase Manhattan Plaza
New York, New York 10005
<u>Attn</u>:   Dennis F. Dunne, Esq.
        Dennis O'Donnell, Esq.
        Evan Fleck, Esq.

STATE OF NEW YORK    )
                     ) : ss.:
COUNTY OF NEW YORK   )

      LENICE JOHNSON, being duly sworn, deposes and says:  deponent is not a party to the action, is over 18 years of age and resides in New York, New York.

      On February 13, 2012, I served the foregoing Claimants' Sur-Reply in Further Opposition to Debtors' Seventy Third, Hundred Eighteenth and Two Hundred Seventh Omnibus Objections to Claims (To Reclassify Proofs of Claim as Equity Interests), by depositing true and correct copies of same, enclosed in FedEx Envelopes and shipping it FedEx Standard Overnight Express Service under the exclusive care and custody of FedEx, addressed to the following:

    WEIL, GOTSHAL & MANGES LLP
    Attorneys for the Debtors
    767 Fifth Avenue
    New York, New York 10153
    Attn:  Robert J. Lemons, Esq.
           Mark Bernstein, Esq.

    OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 2
    33 Whitehall Street, 21st Floor
    New York, New York 10004
    Attn:  Tracy Hope Davis, Esq.
           Elisabeth Gasparini, Esq.
           Andrea B. Schwartz, Esq.

    MILBANK, TWEED, HADLEY & MCCLOY LLP
    Attorneys for the Official Committee of Unsecured Creditors
    1 Chase Manhattan Plaza
    New York, New York 10005
    Attn:  Dennis F. Dunne, Esq.
           Dennis O'Donnell, Esq.
           Evan Fleck, Esq.

                                                  */s/ Lenice Johnson*
                                                  LENICE JOHNSON

Sworn to before me this
13th day of February, 2012.

*/s/ Marilyn Decos*
Notary Public

MARILYN DECOS
Notary Public, State of New York
NO: 01DE4879924
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Dec. 15, 2014