**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

FILED
U.S. BANKRUPTCY COURT

2012 FEB 21  A 10: 38

**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street
17th Floor
New York, NY 10004
(212) 962-8020

*Attorneys for Claimant Jeremy R. Kramer (Claim No. 18325).*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re

LEHMAN BROTHERS HOLDINGS INC., et al.

                                    Debtors.
-----------------------------------------------------------------------x

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

### REPLY OF CLAIMANT JEREMY R. KRAMER IN FURTHER SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THE RECLASSIFICATION OF HIS CLAIM AS AN EQUITY INTEREST

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       1.     Claimant Jeremy R. Kramer (Claim Number 18325) respectfully submits

this reply in further support of his motion for reconsideration, pursuant to 11 U.S.C. § 502(j),

Fed. R. Bank. P. 3008 and 9024, and Local Bankruptcy Rule 3008-1, of the reclassification of his

compensation claim as an equity interest pursuant to 11 U.S.C. § 510(b).

## PRELIMINARY STATEMENT

2.    As claimant convincingly demonstrated in his opening papers on this motion (the "Motion") (ECF No. 25307), the equities of this case, 11 U.S.C. § 502(j), require that the Motion be granted because Mr. Kramer's default in responding to the 73rd Objection was not willful; Mr. Kramer has a legally supportable defense against the 73rd Objection; and no prejudice will be suffered by the debtor if the motion is granted, particularly since there is a strong preference that disputes be resolved on the merits and not by default.[1] Debtors' Response To Motion of Claimant Jeremy R. Kramer For Reconsideration, dated February 15, 2012 (ECF No. 25377) ("Debtors' Response"), does nothing to alter this conclusion.

## AGRUMENT

A.    Willfulness

3.    In response to Claimant's demonstrated lack of willfulness, debtors simply misconstrue applicable law in order to argue that, as "a sophisticated investment advisor" Debtor's Response at ¶ 2, Mr. Kramer's "default [in responding to the 73[rd] Objection] was deliberate and intentional and thus 'willful.' [And on this basis alone debtors argue], the Motion should be denied." *Id.* at ¶3. This is wrong for several reasons.

4.    First, debtors' ignore that the Motion, brought pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bank. P. 9024, is committed to the sound discretion of the court and that the Second Circuit's tri-partite framework contemplates a balancing approach and not an elimination contest, where, if one factor is not satisfied, the movant cannot prevail. *See, e.g., New York v. Green*, 420 F.3d 99, 104-05, 108 (2d Cir. 2005); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) ("In deciding a motion to vacate a default judgment, the . . . court is to be guided principally by three factors . . ."); *Independence Plaza I Assoc. LLC v. Histon,* 2012 WL

---

[1]  Defined terms used herein the same meaning as in the Motion, unless otherwise indicated.

266892 at *2 (S.D.N.Y. 2012); *Church & Dwight Co., Inc. v. Kaloti Ent. Of Michigan, LLC*,

2011 WL 4529605 at *3 (E.D.N.Y. 2011) ("Courts should weigh these three factors in order to

determine whether on balance, relief under Rule 60(b) . . . would be appropriate to 'accomplish

justice.'").

5.       Remembering that the basic purpose of a default judgment is to

protect the debtor from "undue delay-harassment", *Green*, 420 F.3d at 108, *only* a "finding that

all three factors -- willfulness, lack of a meritorious defense, and resulting prejudice to the non-

defaulting party – weigh[] against vacating the default judgment," compels denial of the Motion.

*Id.* For this reason, even if *arguendo* Mr. Kramer's default was willful -- which it was not -- it is

not "fatal to his request for relief", as debtors wrongly suppose.   Debtors' Response at ¶ 14.

Denial of the Motion is required only if all factors -- legitimacy of his claim and lack of

prejudice, as well -- also are not in Claimant's favor.  *See, e.g., McNulty, 137 F.3d at 738* ("An

absence of prejudice to the nondefaulting party would not itself entitle the defaulting party to

relief from the judgment. . . . [T]he district court has *discretion to deny* the motion to vacate if it

is persuaded that the default was willful *and* is unpersuaded that the defaulting party has a

meritorious defense. . . ." Emphasis supplied.); *Church & Dwight* at *3 ("When a party's default

was willful, this factor [only] weighs against granting relief under Rule 60(b).").

6.       Second, Lehman also ignores the strong preference that disputes be

resolved on the merits, and not by default; that any doubts be resolved in favor of the movant;

that a party appearing *pro se*, no matter how sophisticated in other endeavors, is afforded wide

latitude in meeting procedural rules governing bankruptcy litigation; and that courts must make

every effort to protect a *pro se* party from waving rights because of a lack of legal knowledge.

As a result, leave to set aside a default must be freely granted when the defaulting party has

appeared *pro se*. *See, e.g., Green*, 420 F.3d at 104; *Independence Plaza* at *2; *Church & Dwight* at *3. Mr. Kramer's sophistication as an investment advisor no more alters his *pro se* status than were he sophisticated in any other learned profession, other than law, and makes his default no less explainable than that by, *e.g.,* a veteran heart surgeon. Moreover, defaults are particularly disfavored when "substantial sums of money are demanded", as is Mr. Kramer's $16 million compensation claim here. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2nd Cir. 1993).

7.    Third, while debtors endeavor to distinguish cases, debtors cannot demonstrate that Mr. Kramer's default was the "conduct of . . . [a] litigant [that] was egregious and was not satisfactorily explained, and for that reason, willful." *McNulty*, 137 F.3d at 738. Mr. Kramer has fully explained why he did not to respond to the 73rd Objection and that explanation hardly reveals "a conscious decision not to respond," Debtors' Response at ¶ 14; "a strategic decision to default," *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996); or "an overall plan to delay" *Green*, 420 F.3d at 108-109. Instead, Mr. Kramer's default is convincingly explained by the absence of counsel; the lack of peer support; his having no real experience or knowledge of bankruptcy law and procedure and , as a result, no clear understanding of the consequences of a failure to respond-- all of which is closer to negligence than to the conscious plan envisioned by debtors.

8.    Indeed, the facts demonstrate that Mr. Kramer's default was no less willful than debtors' decision to include only Mr. Kramer in the 73rd Objection, while including most of Mr. Kramer's colleagues in the Straus Group in the 118th Objection. Despite any numerical limitations, there is no justification or good reason for not including similarly situated claimants in one objection. Debtors' deliberate and, thus, "willful" isolation of Mr. Kramer from other members of the Straus Group in order to prevent them from joining in a

collective opposition to the reclassification of identical compensation claims by similarly situated individuals (which, ultimately, was done), evinces debtors' bad faith and further explains, and justifies, Mr. Kramer's lack of response.

B.    Meritorious Defense

9.    Debtors simply are disingenuous in claiming that Mr. Kramer's "sole defense is a bare attempt to bootstrap his claim onto a response filed by *other claimants* in opposition to *a different omnibus objection.*" Debtors' Response at ¶ 15.

10.    Claimants' Opposition To Debtors' One Hundred Eighteenth Omnibus Objection to Claims (Kramer Aff., Ex. F) (ECF No. 20996), on which Mr. Kramer relied in this regard to demonstrate a legally supportable claim, specifically addressed the 73rd Objection, which named Mr. Kramer, when Judith Ann Kenney, who also is named in the 73rd Objection, specifically "join[ed] in this memorandum of law in opposition to Debtors' Seventy Third Omnibus Objection To Claims as a supplement to her previously filed response . . .", *id.* at fn 1, and when her compensation claim was specifically addressed therein. *Id.* at p. 7.

11.    Moreover, the 73rd Objection and the 118th Objection are substantively identical. *Compare,* Kramer Aff., Ex. B, with Kramer Aff., Ex. E. Only the names of the innocent employees that debtors are seeking to avoid compensating for their labors are different. Debtors unequivocally acknowledge as much: "Beginning on December 7, 2010, the Debtors filed nine omnibus objections to claims (collectively, the "Objections") seeking to reclassify as equity interest claims based on restricted stock units and/or contingent stock awards issued between 2003 and 2008. . . . Collectively, the Objections sought to reclassify as equity interests 3,279 proofs of claim (collectively, the "RSU Claims"). . . .[T]he Debtors filed omnibus replies to the responses . . . interposed by holders . . . of the RSU Claims. . . . Notwithstanding the

differing arguments raised . . . *the Debtors believe all Outstanding Claims are substantively similar and should be treated uniformly.*" (Emphasis supplied.) Supplemental Annotated Omnibus Reply to Responses to Debtors Seventy-Third, One Hundred Eighteenth, One Hundred Thirtieth, One Hundred Thirty First, One Hundred Thirty Third, One Hundred Thirty Fourth, One Hundred and Thirty Fifth, One Hundred Seventy Sixth and Two Hundred Seventh Omnibus Objections To Claims, dated January 24, 2012 (ECF No. 24591), at ¶¶ 2-3 ("Annotated Reply").

12.     At best, debtors' counsel, Robert Lemons, failed to take note of debtors' clear concession (by him) in the Annotated Reply before he responded to Mr. Kramer's motion. At worst, counsel deliberately misled the Court. *See*, 22 NYCRR Part 1200, Rules of Professional Conduct, Rule 3.3(a)(1). Debtors argument that "Claimant cannot satisfy the meritorious defense prong by 'borrowing' a response filed in opposition to a *different* objection . . ." thus is baseless. Even were it not -- which, as shown above, it is -- since the Objections are admittedly "substantive similar," the "borrowed" response clearly is sufficient.

13.     Finally, should any doubt remain in this regard, annexed hereto as Exhibit A is a copy of Claimants' Sur-Reply In Further Opposition To Debtors' Seventy Third, One Hundred Eighteenth and Two Hundred Seventh Omnibus Objections to Claims, dated February 13, 2012 (ECF No. _____ ), which further makes clear that Mr. Kramer has raised issues that, if established, would defeat the 73rd Objection and prevent the conversion of his compensation claim. *See, e.g., McNulty*, 137 F.3d at 740.

C.    No Prejudice

14.    "Legal prejudice occurs when the non-defaulting party's ability to proceed with its case has been impaired," such as through a loss of evidence, increased difficulties in discovery or a greater opportunity for fraud and collusion. *In re Globe Metallurgical, Inc.*, 327 B.R. 182, 185 (S.D.N.Y. 2005). *See also, e.g., Green,* 420 F.3d at 110.

15.    No legal prejudice has been demonstrated by debtors here. Instead, debtors simply *imagine*, without one iota of proof, that granting relief to Mr. Kramer will open flood gates for thousands of other claimants to seek relief from defaults. Such wild speculation aside, debtors' suppositions have absolutely no impact on whether or not granting relief to Mr. Kramer results in legal prejudice, which manifestly it does not. Instead, the relief Mr. Kramer seeks simply restores him to the same position as the other Neuberger Claimants in the Straus Group, that of litigating his claim on the merits, as the law prefers. Debtors simply are not prejudiced by having to fulfill the legal obligation to dispute Mr. Kramer's compensation claim and establish that claim to be "equity." As a consequence, "no additional obligation or harm has been established," and no prejudice ensues. *See, e.g., In re Worldcom, Inc.,* 2006 WL 2400094 at *3 (S.D.N.Y. 2006).

CONCLUSION

WHEREFORE, for the foregoing reasons and those set forth in Claimant's

opening papers, Claimant Jeremy Kramer's motion for reconsideration should be granted and his

default should be vacated.

Dated: New York, New York
      February 17, 2012

**KAPLAN LANDAU LLP**

By:                                 
      Eugene Neal Kaplan (EK-4229)

1065 Avenue of the Americas, 27th Floor
New York, New York 10018
(212) 593-1700

Michael S. Schlesinger (MS-0399)
**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street, 17th Floor
New York, New York 10004
(212) 962-8020
*Attorneys for Claimant:*

*Jeremy R. Kramer (Claim No. 18235)*

**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street
17th Floor
New York, NY 10004
(212) 962-8020

*Attorneys for Claimants: Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Christian Reynolds (Claim No. 28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), David I. Weiner (Claim No. 18314) and Seth Finkel (Claim No. 18067).*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re

LEHMAN BROTHERS HOLDINGS INC., et al.

Debtors.

------------------------------------------------------------------x

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

## CLAIMANTS' SUR-REPLY IN FURTHER OPPOSITION TO DEBTORS' SEVENTY THIRD, ONE HUNDRED EIGHTEENTH AND TWO HUNDRED SEVENTH OMNIBUS OBJECTIONS TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

Claimants Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney

(Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607),

Christian Reynolds (Claim No. 28442), Marvin C. Schwartz (Claim No. 20244), Stephanie

Stiefel (Claim No. 21711), David I. Weiner (Claim No. 18314) and Seth Finkel (Claim

No. 18067) (collectively the "Neuberger Claimants"),[1] submit this Sur-Reply Memorandum of Law in Further Opposition to Debtors' Seventy Third, One Hundred Eighteenth and Two Hundred Seventh Omnibus Objections to Claims, which include the claims made by the Neuberger Claimants.[2] As demonstrated more fully in the Claimants' Opposition to Debtor's One Hundred Eighteenth Omnibus Objection to Claims (collectively the "Responses")(ECF No. 20996) -- and not at all refuted by debtors in either of their initial Omnibus Reply Briefs (ECF Nos. 15406, 23470) or in their Supplemental Annotated Omnibus Reply to Responses, dated January 24, 2012 (ECF Nos. 24591) ("Annotated Reply")[3] -- the Neuberger Claimants' claims should not be reclassified as equity interests under 11 U.S.C. § 510(b).

The Neuberger Claimants were never afforded the opportunity to fairly negotiate their employment and compensation contracts with Lehman Brothers Holdings, Inc. ("Lehman"), when their original employer, Neuberger Berman, Inc. ("Neuberger") was acquired by Lehman. Instead, under duress, the Neuberger Claimants were presented with the Hobson's choice of either 1) starting employment at Lehman, which required a significant portion of their annual, formulaic compensation be withheld from them for at least five years in the form of Restricted Stock Units ("RSUs"), in order to maintain the billions of dollars of assets under their management and, perhaps more importantly, the future revenue stream from that significant book of business or 2) seeking new employment -- most likely not in finance or investment banking -- forsaking millions of dollars worth of previously earned, but yet unpaid, compensation from

---

[1] To the extent not defined herein, defined terms have the same meaning as in Claimant's Opposition to Debtors' One Hundred Eighteenth Omnibus Objection to Claims dated August 16, 2011 (EFC No. 20996).

[2] Oddly, Seth Finkel, one of the Neuberger Claimants, who opposed the Two Hundred Seventh Omnibus Objection (ECF. No. 22573) is not listed in Exhibit A to the Annotated Reply. We suspect this omission is an oversight and not a concession and, for that reason, Mr. Finkel joins herein.

[3] At the December 21, 2011 Conference the Court directed Debtors to detail which arguments applied to which specific claimants and also allowed the relevant claimants to submit a sur-reply to Debtors Annotated Reply.

2

Neuberger and losing their client relationships and income stream that they had cultivated over the course of many years.

The Neuberger Claimants demonstrated that their participation in the Lehman compensation scheme was an involuntary product of the 2003 merger between Neuberger and Lehman that came on the heels of a recession and at a time when the financial and banking industries were still facing uncertainties. The Neuberger Claimants participation was unjustly compelled by their need to preserve their careers, livelihoods and substantial books of business -- which most had spent decades developing and fostering – all of which would have been forfeited unless they continued at Lehman because of restrictive covenants and as a matter of law. *See, e.g., Bessemer Trust Co. N.A. v. Branin*, 16 N.Y.3d 549 (2011). Indeed, unlike others in investment banking that receive bonuses based on the trailing 12 months' revenue, the Neuberger Claimants' compensation was based on the net present value of future cash flows from their substantial books of business and this future, multi-million dollar revenue stream simply would have been lost if the Neuberger Claimants had not acceded to the Lehman pay scheme.

As a result, the amount of RSUs -- representing the formulaic compensation withheld -- that were provided to the Neuberger Claimants by Lehman *were not at all* "a condition of employment that the Claimants willingly accepted in return for their labor . . . [and] thus 'purchased' . . . with their labor." *In re Enron*, 341 B.R. 141, 151 (S.D.N.Y. 2006). To the contrary, unlike *Enron*, here the RSUs were thrust upon the Neuberger Claimants involuntarily and without their having any choice or viable alternative to employment at Lehman and the attendant Lehman pay scheme.

In the Claimants' Responses, the Neuberger Claimants also demonstrated that their acquisition of RSUs was not the product of any bargain by them "not for cash but to become a stockholder" or any "choice . . . to trade . . . cash compensation for the upside potential of shareholders status . . ." , *In re Med Diversified*, 461 F.3d 251, 256 (2d Cir. 2006). Instead, the "acceptance" of RSUs in lieu of cash was a mandatory condition of their continued employment following the acquisition of Neuberger by Lehman and was the only manner in which they could retain their clients, their respective, substantial books of business and preserve and continue the work that they had spent their careers cultivating. When the merger occurred, the Neuberger Claimants' were forced to choose between: continuing their career at Lehman, with Lehman's requisite, involuntary pay scheme or finding another career in another line of work.

In response to the Neuberger Claimants' overwhelming showing of compulsion – a lack of volition that thoroughly defeats debtors' claim that the Neuberger Claimants voluntarily purchased Lehman securities with their labors and, thus, should have their compensation claims reclassified under 510(b) as equity interests -- the Annotated Reply only repeats the linguistic mantra of the *Enron* court and never responds to or even remotely addresses the clear and convincing position advanced by the Neuberger Claimants.

Rather than responding to the undeniable arguments advanced by the Neuberger Claimants, the Debtors, instead, purport to address the following in the annotations of the Annotated Reply, which the Debtors attribute to the Neuberger Claimants:

- The Equity Awards do not constitute equity in LBHI and, therefore, should not be classified as Equity Interest.
- The Equity Awards were compensation for services provided to the Debtors that would otherwise have been payable in cash.

4

- The Outstanding Claims are not based on damages that arise from the purchase or sale of a security and, therefore, section 510(b) is inapplicable.
- The Outstanding Claims are not Equity Interest because common stock was not actually delivered or because the Equity Awards did not vest as of the Commencement Date.
- There is a longstanding public policy tradition against forfeiture of earned compensation as evidenced by decision under New York state law.
- Because Respondents conferred a benefit upon the Debtors by providing labor and the Debtors now seek to benefit from such labor without fully and adequately compensating the Respondents, the Debtors are the beneficiaries of unjust enrichment.
- Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards.

Annotated Reply, Exhibit A, referencing ¶¶ 5-7, 9-10, 16-19, 25, 35-36, 41 for the

Neuberger Claimants.

Conspicuously missing from Lehman's reply is any response to the key argument

raised throughout the Neuberger Claimants' briefs, namely that the Neuberger Claimants did not

*voluntarily* purchase Lehman securities[4]. The only portion of the Debtor's Annotated Reply that

even indirectly touches on the position of the Neuberger Claimants is "[t]he Outstanding Claims

are not based on damages that arise from the purchase or sale of a security, and, therefore,

Section 510(b) is inapplicable. . . ." *Id.* However, the only argument in the Annotated Reply

regarding the supposed applicability of Section 510(b) is actually a non-responsive evasion of

the Neuberger Claimants' position that merely repeats the language of *Enron* without the

slightest attempt to respond to the clear distinctions between the *Enron* employees and the

Neuberger Claimants. Annotated Reply, at ¶ 10. Debtors again blindly argue that

"[r]espondents *bargained* for rights to become equity security holders, with all the attendant

---

[4] During the December 21 hearing the Court itself pointed out that this was the crux of the Neuberger Claimants' opposition and that the Debtor's Omnibus Replies did not appear to address such arguments.

benefits and risks . . ." *Id.* However, the Neuberger Claimants compellingly demonstrated

precisely the contrary in their Responses. Debtors then point to the decision in *Enron* for the

proposition that "the exchange of an employee's labor for stock options falls under a broad

reading of the term 'purchase'" and that this "was a condition of employment the Claimants

willing accepted," *Id.* at ¶ 16 and 17. Again, Debtors' Annotated Reply never even attempts to

address the Neuberger Claimants' position that the "exchange" in this instance was *involuntary*

*and compelled* by the very merger that made them Lehman employees, and made them subject to

the Lehman pay scheme, in order to continue their careers and maintain their books of business.

Debtors simply ignore this factual distinction by claiming that the Neuberger Claimants

"willingly engag[ed] in exchange of labor for Equity Awards" *id.*, at ¶ 19, when the truth is just

the opposite, as demonstrated herein and in the Neuberger Claimants' Responses.

      In short, the Annotated Reply fails to meaningfully address the position of the

Neuberger Claimants. Debtors, instead, simply repeat factually inapposite, supposed "*Enron*

truisms" that are clearly distinguished here. By doing so, the position of the Neuberger

Claimants is further advanced by analyzing their compelled participation in the Lehman

compensation scheme in terms akin to unconscionable employment contract of adhesion: "a

contract is unconscionable where there is 'an absence of meaningful choice on the part of one of

the parties together with contract terms which are unreasonably favorable to the other party.'"

*Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). Here, the

"employment" contracts of the Neuberger Claimants plainly are unconscionable. The Neuberger

Claimants, in order to preserve their ability to earn a living in their chosen occupation and

maintain the substantial books of business they had built over the course of their careers and the

income stream flowing therefrom, had no meaningful choice but to participate in the Lehman

pay scheme, a compensation package that unreasonably favored Lehman by allowing it to substitute paper RSUs for the cash compensation that the Neuberger Claimants had earned and to which they were entitled under the long-standing, pre-existing Neuberger formulaic compensation system. *See also, e.g., Rangone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 122 (2d Cir. 2010).

      Likewise, the Annotated Reply does not deal with the clear economic duress and business compulsion demonstrated by the Neuberger Claimants when they were told by their superiors to "sign up with Lehman or leave" and forfeit their careers, substantial books of business and future earning capacities. As a result, the Lehman pay scheme was coercively thrust upon them: "A contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will." *Stewart M. Muller Constr. Co. v. New York Tel. Co.*, 40 N.Y.2d 955, 956 (1976); *767 Third Ave. LLC v. Orix Capital Markets, LLC*, 26 A.D.3d 216, 218, 812 N.Y.S.2d 8, 9 (1st Dept. 2006). Here, the threatened loss of their careers, substantial books of business and future revenue and earning streams, plainly depicts a lack of free will by the Neuberger Claimants. *See, e.g., Yuk Fung Ma v. J.C. Sake Inc.*, 2011 N.Y. Slip. Op. 50999 at *3 (Sup. Ct. 2011), (lockout of business co-owner "designed to coerce plaintiff to accept defendants' calculations as to the value of his interest" in the business and sell his shares constituted economic duress). As this Court made clear: "the doctrine of business compulsion provides that the making of a contract may be under such circumstances of business necessity as will render the same involuntary and excuse the allegedly coerced party from its performance, especially where undue advantage or a threat to do unlawful injury is shown." *In re Market Square Assoc. Ltd.*, 56 B.R. 566, 573-74 (S.D.N.Y. 1986).

"The doctrine of economic duress arises from the theory that 'the courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury.'" *VKK Corp. v. National Football League*, 244 F.3d 114, 122 (2d Cir. 2001). While invocation of this doctrine "is reserved for extreme and extraordinary cases," *id.*, at 123, such is presented here: "an 'actual or threatened serious injury to business or employment' by a private party can be as coercive as other forms of coercion... and that '[t]o imperil a man's livelihood, his business enterprises, or his solvency, [is] ordinarily quite as coercive as, for example, detaining his property.'" *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 (2007). Indeed, as Justice Holmes long-ago aptly observed: "it always is for the interest of a party under duress to choose the lesser of two evils. But the fact that a choice was made according to interest does not exclude duress. It is the characteristic of duress properly so called." *Union Pac R.R. Co. v. Public Service Comm.*, 248 U.S. 67, 70 (1918). *See also, e.g., First Nat. Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633 (2d Cir. 1972).

The arguments raised by the Neuberger Claimants can be further distinguished from Debtor's generic Annotated Reply because, unlike discretionary bonuses paid to other Lehman employees -- or, for that matter, to the *Enron* employees -- the Neuberger Claimants had a long-standing, formulaic compensation structure that was continued after the Lehman-Neuberger merger. Prior to the merger, Neuberger almost always paid 100% of this employee compensation in cash. However, after the merger, up to 50% of the Neuberger Claimants' formula based compensation was withheld by Lehman as RSUs, rather than being paid out in cash. For example, Neuberger Portfolio Managers were paid a fixed percentage of gross revenue on their accounts above a predetermined revenue benchmark and a lesser percentage of gross

8

revenue below that benchmark, with the only distinction pre- and post-merger being that 50% of this earned compensation was withheld by Lehman for the years 2003 through 2007 as Equity Awards.

Most significantly, the amounts withheld by debtors from the Neuberger Claimants for this "deferred compensation" during the 2008 fiscal year -- from December 1, 2007 through the filing of the Lehman bankruptcy in September 2008 -- were treated quite differently. Recognizing the distinctiveness of Neuberger and its Managing Directors within Lehman, all 2008 deferred amounts were paid to the Neuberger Claimants in *cash* post-petition in January 2009, thereby recognizing that, unlike most Lehman employees, the formulaic compensation scheme utilized by Neuberger made all withheld amounts compensation, and not equity. This further compels the obvious conclusion that the previous years' deferred amounts, that were also determined solely through the use of the Neuberger compensation formula before being placed in RSUs, should now similarly be regarded not as any sort of equity interest, but as compensation that is due and owing to the Neuberger Claimants.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Claimants' Opening

Brief, the Neuberger Claimants' Claims should not be reclassified as equity interests and

debtors' various omnibus objections should be denied.

Dated:    New York, New York
February 13, 2012

KAPLAN LANDAU LLP

By: _____
Eugene Neal Kaplan (EK-4229)

1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

**JULIEN & SCHLESINGER, P.C.**
Michael S. Schlesinger (MS-0399)
One Whitehall Street
17th Floor
New York, New York 10004
(212) 962-8020

*Attorneys for Claimants:*

*Richard J. Glasebrook II (Claim No. 9682),
Judith Ann Kenney (Claim No. 13929),
Richard Nackenson (Claim No. 13968),
Henry Ramallo (Claim No. 17607), Chris
Reynolds (28442), Marvin C. Schwartz
(Claim No. 20244), Stephanie Stiefel (Claim
No. 21711), David I. Weiner (Claim No.
18314) and Seth Finkel (Claim No. 18067)*

TO:    **HONORABLE JAMES M. PECK**
One Bowling Green
Courtroom 601
New York, New York 10004

10

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for the Debtors*
767 Fifth Avenue
New York, New York 10153
<u>Attn</u>:    Robert J. Lemons, Esq.
      Mark Bernstein, Esq.

**OFFICE OF THE  UNITED STATES TRUSTEE FOR REGION 2**
33 Whitehall Street, 21st Floor
New York, New York 10004
<u>Attn</u>:    Tracy Hope Davis, Esq.
      Elisabeth Gasparini, Esq.
      Andrea B. Schwartz, Esq.

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
*Attorneys for the Official Committee of Unsecured Creditors*
1 Chase Manhattan Plaza
New York, New York 10005
<u>Attn</u>:    Dennis F. Dunne, Esq.
      Dennis O'Donnell, Esq.
      Evan Fleck, Esq.

11

STATE OF NEW YORK     )
                                  ) : ss.:
COUNTY OF NEW YORK   )

         LENICE JOHNSON, being duly sworn, deposes and says:  deponent is not a party

to the action, is over 18 years of age and resides in New York, New York.

         On February 17, 2012, Reply Of Claimant Jeremy R. Kramer In Further Support

Of His Motion For Reconsideration Of The Reclassification Of His Claim As An Equity Interest,

I served the foregoing Claimants' Sur-Reply in Further Opposition to Debtors' Seventy Third,

Hundred Eighteenth and Two Hundred Seventh Omnibus Objections to Claims (To Reclassify

Proofs of Claim as Equity Interests), by depositing true and correct copies of same, enclosed in

FedEx Envelopes and shipping it FedEx Standard Overnight Express Service under the exclusive

care and custody of FedEx, addressed to the following:

                      WEIL, GOTSHAL & MANGES LLP
                      Attorneys for the Debtors
                      767 Fifth Avenue
                      New York, New York 10153
                      Attn:  Robert J. Lemons, Esq.
                                 Mark Bernstein, Esq.

                      OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 2
                      33 Whitehall Street, 21st Floor
                      New York, New York 10004
                      Attn:  Tracy Hope Davis, Esq.
                                 Elisabeth Gasparini, Esq.
                                 Andrea B. Schwartz, Esq.

MILBANK, TWEED, HADLEY & MCCLOY LLP
Attorneys for the Official Committee of Unsecured Creditors
1 Chase Manhattan Plaza
New York, New York 10005
Attn:   Dennis F. Dunne, Esq.
        Dennis O'Donnell, Esq.
        Evan Fleck, Esq.

_____
LENICE JOHNSON

Sworn to before me this
17th day of February, 2012.

Notary Public

MARILYN DECOS
Notary Public, State of New York
NO: 01DE4878924
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Dec. 15, 20__14

2

MARILYN DECOB
Notary Public, State of New York
NO. 01DE6078924
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Dec. 15, 20___