# Exhibit D

# SECURITY AGREEMENT

In consideration of one or more loans, letters of credit or other financial accommodation made, issued or extended by JPMORGAN CHASE BANK, N.A. and any of its successors or assigns party to the Clearance Agreement referred to below (hereinafter, the "Bank"), the undersigned hereby agree(s) that the Bank shall have the rights, remedies and benefits hereinafter set forth.

The "Accounts" means (i) the securities account of the Guarantor at the Bank known as LCE or any subaccount or replacement accounts thereto (the "Securities Account"), (ii) DDA# 066-141-605 (the "Cash Account") and (iii) any other account at the Bank to which Guarantor transfers (A) cash from the Cash Account, (B) any interest, dividends, cash, instruments and other property from time to time received, receivable (including without limitation sales proceeds) or otherwise distributed in respect of or in exchange for any or all of the cash or securities in the Securities Account or the Cash Account or (C) any cash or securities from the Securities Account or the Cash Account during such time as the Guarantor or an Other Obligor has an outstanding obligation or liability to the Bank under the Guaranty or the Clearance Agreement.

The "Guaranty" means the Guaranty of even date herewith made by the undersigned in favor of the Bank.

The "Other Obligors" mean Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers OTC Derivatives Inc., Lehman Brothers Commercial Paper Inc. and Lehman Brothers Japan Inc. and their respective successors.

The "Clearance Agreement" means the Clearance Agreement dated as of June 15, 2000 to which one or more of the Other Obligors and the Bank are parties (as amended by (i) the Amendment to Clearance Agreement dated as of May, 30, 2008 and (ii) the Amendment to Clearance Agreement dated as of even date herewith and as it may be further amended from time to time).

The term "Liabilities" shall mean (a) all "Liabilities" as defined in the Guaranty, (b) all obligations of the undersigned under this Security Agreement and (c) without duplication of the foregoing, all costs, expenses and charges (including without limitation fees and charges of external legal counsel for the Bank and costs allocated by its internal legal department) incurred by the Bank in connection with the preparation, performance or enforcement of the Guaranty and this Security Agreement.

The term "Security" means (i) the Accounts, together with any security entitlements relating thereto and any and all financial assets, investment property, funds and/or other assets from time to time held in or credited to the Accounts or otherwise carried in the Accounts (or to be received for credit or in the process of delivery to the Account), (ii) any interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all

of the then existing Security and (iii) all proceeds of any and all of the foregoing Security.

As security for the payment of all the Liabilities, the undersigned hereby grant(s) to the Bank a security interest in, and a general lien upon and/or right of set-off of, the Security. Further, for the avoidance of doubt and not in limitation of the rights of the Bank under Sections 9-104(a)(1), 9-106(a) and 8-106(e) of the Uniform Commercial Code as adopted by the State of New York (the "Code"), the undersigned and the Bank (acting as a bank with respect to any Accounts consisting of deposit accounts and as a securities intermediary with respect to any Accounts consisting of securities accounts), acknowledge and agree with respect thereto, that the Bank, as the secured party hereunder, may issue instructions to direct disposition of any and all of the funds in the deposit accounts (and acting as the bank will comply with such instructions) and may issue entitlement orders with respect to any and all securities accounts (and acting as the securities intermediary will comply with such entitlement orders), in either case, without the consent of the undersigned. Terms used herein and defined in Articles 1, 8 and/or 9 of the Code shall have the meanings set forth therein. The undersigned and the Bank agree that the jurisdiction of the Bank (including, without limitation, in its capacities as a bank, a securities intermediary and a commodity intermediary) for purposes of the Code is the State of New York.

The undersigned hereby represents and warrants to the Bank as follows:  (a) it is duly organized and validly existing under the laws of the jurisdiction of its incorporation or organization and has all requisite power and authority to execute and deliver this agreement; (b) the execution, delivery and performance of this agreement has been duly authorized by all necessary corporate action of the undersigned and this agreement constitutes the legal, valid and binding obligation of the undersigned, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability (whether enforcement is sought in equity or at law); (c) the execution, delivery and performance of this agreement does not and will not conflict with the provisions of its governing instruments and will not violate any provisions of applicable law or regulation or any order of any court or regulatory body and will not result in the breach of, or constitute a default, or require any consent, under any material agreement, instrument or document to which the undersigned is a party or by which it or any of its property may be bound or affected; (d) it is the sole owner of the Security; (e) the Security is and will be free and clear of any lien, charge, security interest, claim, encumbrance or other adverse interest whatsoever, except for that created by this agreement, the Guaranty or the Clearance Agreement and other liens in favor of the Bank arising under applicable laws, and (f) it has not agreed to resell any of the Security pursuant to a repurchase agreement or similar arrangement.

The right is expressly granted to the Bank, in each case upon the occurrence and during the continuation of a Default or to preserve the Security or its value, to transfer to or register in the name of itself or its nominee any of the Security; to exchange any of the Security for any other property upon any reorganization, recapitalization or other readjustment and in connection therewith to deposit any of the Security with any committee or depositary upon such terms as it may determine; to notify any account debtor or obligor on an instrument to make payment to the Bank; and to exercise or cause its nominee to exercise all or any powers with respect to the Security with the same force and effect as an absolute owner thereof and to file one or more financing statements under the Uniform Commercial Code naming the undersigned as debtor and the Bank as secured party and indicating therein the types or describing the items of Security herein specified; all without notice (except such notice as may be required by applicable law and cannot be waived) and without liability except to account for property actually received by it. Without limiting the generality of the foregoing, payments, distributions and/or dividends, in securities, property or cash, including without limitation dividends representing stock or

liquidating dividends or a distribution or return of capital upon or in respect of the Security or any part thereof or resulting from any split-up, revision or reclassification of the Security or any part thereof or received in exchange for the Security or any part thereof as a result of a merger, consolidation or otherwise, shall be paid directly to and retained by the Bank and held by it until applied as herein provided, as additional collateral security pledged under and subject to the terms hereof. Without the prior written consent of the Bank the undersigned will not file or authorize or permit to be filed in any jurisdiction any such financing or like statement covering the Security in which the Bank is not named as the sole secured party.

The Bank upon the occurrence and during the continuation of a Default or to preserve the Security or its value may, whether any of the Liabilities may be due, in its name or in the name of the undersigned or otherwise, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for, or make any compromise or settlement deemed desirable with respect to, any of the Security, but shall be under no obligation so to do, or the Bank may upon the occurrence and during the continuation of a Default or to preserve the Security or its value extend the time of payment, arrange for payment in installments, or otherwise modify the terms of, or release, any of the Security, without thereby incurring responsibility to, or discharging or otherwise affecting any liability of, the undersigned. Notwithstanding anything contained herein to the contrary, the Bank shall not be required to take any steps necessary to preserve any rights against prior parties to any of the Security. The Bank may upon the occurrence and during the continuation of a Default or to preserve the Security or its value use or operate any of the Security for the purpose of preserving the Security or its value in the manner and to the extent the Bank deems appropriate, but the Bank shall be under no obligation to do so.

Except as otherwise provided herein, at the end of a business day, if the undersigned has determined that no Obligations (as defined in the Clearance Agreement) remain outstanding, the undersigned may transfer to an account (the "Overnight Account") any and all Security held in or credited to or otherwise carried in the Accounts. Any determination of the undersigned or the Other Obligors that no Obligations remain outstanding shall not be binding upon the Bank.

The Bank shall have in addition to all other rights and remedies available to it under law or otherwise, the rights and remedies with respect to the Security of a secured party under the Uniform Commercial Code (whether or not the Code is in effect in the jurisdiction where the rights and remedies are asserted). In addition, with respect to any security or interest issued by an open-end management or investment company registered as such under the Investment Company Act of 1940 in which the Bank has a security interest hereunder, the Bank shall have upon the occurrence and during the continuation of a Default the right to redeem such securities or interests. Further, with respect to the Security, or any part thereof, upon the occurrence and during the continuation of a Default, the Bank may sell or cause to be sold in the Borough of Manhattan, New York City, or elsewhere, in one or more sales or parcels, at such price as the Bank may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Security, at any broker's board or at public or private sale, in any reasonable manner permissible under the Uniform Commercial Code (except that, to the extent permissible thereunder, the undersigned hereby waives the requirements of said Code), and the Bank or anyone else may be the purchaser of any or all of the Security so sold and thereafter hold the same absolutely, free from any claim or right of whatsoever kind, including any equity of redemption, of the undersigned, any such demand, notice or right and equity being hereby expressly waived and released. In this regard, the undersigned recognizes that due to certain prohibitions contained in the Securities Act of 1933, as amended, or applicable state securities laws, the Bank may consider it advisable to resort to one or more private sales to a restricted

3

group of purchasers who will agree to acquire such of the Security consisting of securities for their own account for investment and not to engage in a distribution or resale thereof, and that private sales so made may be at prices and on other terms less favorable to the seller than if such Security were sold at public sale. The undersigned agrees that private sales made under the foregoing circumstances shall be deemed to have been made in a commercially reasonable manner. The undersigned acknowledges that the Security is of a kind that is customarily sold on a recognized market and is the subject of widely distributed standard price quotations. The undersigned will pay to the Bank all expenses (including reasonable and documented attorneys' fees and legal expenses incurred by the Bank) of, or incidental to, the enforcement of any of the provisions hereof or of any of the Liabilities, or any actual or attempted sale, or any exchange, enforcement, collection, compromise or settlement of any of the Security or receipt of the proceeds thereof, and for the care of the Security and defending or asserting the rights and claims of the Bank in respect thereof, by litigation or otherwise, including expense of insurance; and all such expenses shall be Liabilities within the terms of this agreement. The Bank, at any time, at its option, may apply the net cash receipts from the Security to the payment of principal and/or interest on any of the Liabilities, whether or not then due, making proper rebate of interest or discount. Notwithstanding that the Bank, whether in its own behalf and/or in behalf of another or others, may continue to hold Security and regardless of the value thereof, the undersigned shall be and remain liable for the payment in full of any balance of the Liabilities and expenses at any time unpaid. THE RIGHTS OF THE BANK SET FORTH HEREIN ARE WITHOUT LIMITATION OF, AND IN ADDITION TO, ANY OTHER RIGHT OF THE BANK UNDER ANY OTHER DOCUMENT EVIDENCING OR EXECUTED IN CONNECTION WITH THE LIABILITIES.

If at any time any sum payable upon any of the Liabilities shall not be paid when due (which, for sums payable by the Guarantor in respect of the Liabilities as defined under the Guaranty, are due on demand); or if the undersigned or the Other Obligors shall default in the payment or performance of the Guaranty, the Clearance Agreement, any of its agreements herein or in any instrument or document delivered pursuant hereto, or in connection herewith; or if a decree or order shall be entered for relief by a court having jurisdiction of the undersigned or the Other Obligors in an involuntary bankruptcy case under the federal bankruptcy laws, as now or hereafter constituted, or under any other applicable federal or state bankruptcy, insolvency, or other similar law, or appointing a receiver, liquidator, assignee, custodian, trustee or sequestrator of the undersigned or the Other Obligors or for any substantial part of its property, or ordering the reorganization, dissolution, winding-up of or liquidation of its affairs, and the continuation of any such decree or order shall be unstayed and in effect, or any case or other proceeding seeking any such decree or order shall continue undismissed, for a period of 60 consecutive days; or if the undersigned or the Other Obligors shall, or (if a corporation) shall take any corporate action to, commence a voluntary case under the federal bankruptcy laws, or now or hereafter constituted, or seek to take advantage of any other applicable federal or state bankruptcy, insolvency, or similar law, or apply for or consent to the appointment of or taking of possession by a receiver, liquidator, assignee, trustee, custodian or sequestrator of the undersigned or the Other Obligors or for any substantial part of its property, or the making by the undersigned or the Other Obligors of any assignment for the benefit of creditors; or the undersigned or the Other Obligors shall admit in writing its inability, or be generally unable, to pay its debts as they become due; or if the undersigned or shall suspend the transaction of his, its or their usual business, or if any governmental authority (including, without limitation, the Securities Investor Protection Corporation or any successor) or any court at the instance thereof shall, or shall appoint a receiver or trustee to, take possession of any substantial part of the property of, or assume control over the affairs or operations of, or a receiver or trustee shall be appointed for, or with respect to any substantial part of the property of, or a writ or order of attachment or garnishment shall be issued or made against any substantial part of the property of, the undersigned or the Other Obligors; or if the

4

undersigned or any of the Other Obligors shall (x) default in the payment of any indebtedness (other than indebtedness incurred under the Clearance Agreement or the Guaranty) having an aggregate principal amount of $100,000,000 (or its equivalent in any other currency or currencies) or more beyond the period of grace (not to exceed 30 days), if any, provided in the instrument or agreement under which such indebtedness was created, or (y) default in the observance or performance of any agreement or condition relating to any indebtedness (other than indebtedness incurred under the Clearance Agreement or the Guaranty) or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or condition shall exist, the effect of which default or other event or condition is to cause any such indebtedness to become due prior to its stated maturity in the aggregate principal amount of $100,000,000 (or its equivalent in any other currency or currencies) or more; or any indebtedness of the undersigned or any of the Other Obligors in the aggregate amount of $100,000,000 (or its equivalent in any other currency or currencies) or more shall be declared due and payable prior to the stated maturity thereof; or if the undersigned shall be dissolved; thereupon, unless and to the extent that the Bank shall otherwise elect, it shall be a DEFAULT under this agreement.

The undersigned acknowledges and agrees that the Bank may from time to time request further security or payments on account of any of the Liabilities.

Upon the occurrence and continuation of a Default, the Bank may assign, transfer and/or deliver to any transferee of any of the Liabilities and/or any or all of the Security; and thereafter shall be fully discharged from all responsibility with respect to the Security so assigned, transferred and/or delivered. Such transferee shall be vested with all the powers and rights of the Bank hereunder with respect to such Security, but the Bank shall retain all rights and powers hereby given with respect to any of the Security not so assigned, transferred or delivered. No delay on the part of the Bank in exercising any power or right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right. The rights, remedies and benefits herein expressly specified are cumulative and not exclusive of any rights, remedies or benefits which the Bank may otherwise have. The undersigned hereby waive(s) presentment, notice of dishonor and protest of all instruments included in or evidencing the Liabilities or the Security and any and all other notices and demands whatsoever, whether or not relating to such instruments.

No provision hereof shall be modified or limited except by a written instrument expressly referred hereto and to the provision so modified or limited. This agreement shall be binding upon the assigns or successors of the undersigned, shall constitute a continuing agreement, applying to all future as well as existing transactions applying to all future as well as existing transactions, whether or not of the character contemplated at the date of this agreement, and if all transactions between the Bank and the undersigned shall be at any time closed, shall be equally applicable to any new transactions thereafter; and shall be governed by and construed according to the internal laws of the State of New York without reference to principles of conflicts of laws. By the execution hereof the undersigned hereby submits to the jurisdiction of the Federal and State courts located in New York. The undersigned hereby consents to the service of process in any action or proceeding brought against it by the Bank by means of registered mail to the last known address to the undersigned. Nothing herein, however, shall prevent service of process by any other means recognized as valid by law within or without the State of New York. Unless the context otherwise requires, all terms used herein which are defined in the Uniform Commercial Code shall have the meanings therein stated. All references to agreements, guaranties, documents and other writings herein refer to such writings as the same may be hereafter amended, modified, supplemented and/or restated.

THE UNDERSIGNED HEREBY WAIVES AND AGREES TO WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM INSTITUTED WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS AGREEMENT.

New York, New York

LEHMAN BROTHERS HOLDINGS INC.

Dated: As of August 26, 2008

By: _____
Name:
Title:                    Paolo Tonucci
                          Managing Director
                          Global Treasurer