**Hearing Date: TBD**
**Response Deadline: TBD**

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

David S. Cohen
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
In re:                                              :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., et al.,              :    08-13555 (JMP)
:
Debtors.                       :    (Jointly Administered)
:
------------------------------------------------------------------ x

**PRELIMINARY OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO OMX CLAIM AND DISPUTED BOISE CLAIM**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors") hereby files this preliminary objection (the "Objection") to the proof of claim filed by OMX Timber Finance Investments II, LLC ("OMX") on September 18, 2009 [Claim No. 17120] (the "OMX Claim"), and the disputed portion of the proof of claim filed by Boise Land & Timber II, LLC ("Boise") on April 17, 2009 [Claim No. 3813] (the "Boise Claim"). In support of the Objection, the Committee respectfully represents as follows:

## BACKGROUND

**A.     Prepetition Transactions[1]**

   1. In October 2004, OfficeMax Incorporated (formerly Boise Cascade Corporation, "OfficeMax") sold its timberland assets to Boise Cascade, LLC (the "Purchaser") for $1.650 billion (the "Sale").[2]  The Sale was structured to allow OfficeMax to defer recognition of capital gains and payment of related taxes until 2019, by treating $1.635 billion of the Sale proceeds as financing.[3]  LBHI and the OMX Claimants participated in that structuring with respect to half of those Sale proceeds ($817.5 million).

   2. On October 29, 2004, the Purchaser transferred $817.5 million to LBHI, LBHI issued a promissory note in the amount of $817.5 million to Boise (the "Collateral Note"), Boise issued a back-to-back promissory note in the amount of $817.5 million to OfficeMax (the "Installment Note"), and LBHI issued a guaranty of the Installment Note to OfficeMax (the "Guaranty").[4]

   3. Boise is a special purpose entity that was formed to hold the Collateral Note and issue the Installment Note.[5]  Boise has no assets other than the Collateral Note it

---

[1] The descriptions herein of the transactions giving rise to the OMX Claim and the Boise Claim are based on pleadings filed in these chapter 11 cases by the OMX Claimants (defined below), and documents filed with the Securities and Exchange Commission by OfficeMax, Inc.  The Committee hereby reserves all of its rights to revise, supplement or amend the Objection as new or different information becomes available.

[2] See OfficeMax Inc., Form 10-Q, for the quarterly period ended March 28, 2009 ("OMX 10-Q") at 9.

[3] See OMX 10-Q, at 10.

[4] See OMX 10-Q, at 9-10.

[5] See OMX 10-Q, at 9-10.

2

received from LBHI, and no income other than the interest it received from LBHI.[6] Boise used $1.2 million of the interest it received from LBHI to pay LBHI an annual Guaranty fee.[7]

4.  In December 2004, OfficeMax assigned the Installment Note and Guaranty to OMX, and OMX issued notes due in 2019, in the amount of $735 million, secured by the Installment Note and the Guaranty (the "Notes"), and transferred the proceeds of the Notes to OfficeMax.[8] Wells Fargo Bank Northwest, N.A. is the trustee under the Notes indenture (the "Trustee").[9] The Notes are held by certain financial institutions and funds (the "OMX Bondholders").

**B.  Events in Bankruptcy**

5.  On December 2, 2008, OMX filed the OMX Motion, seeking relief from the automatic stay to allow OMX to issue demand notices under the Guaranty upon LBHI.[10] On December 19, 2008, the Committee objected to the OMX Motion, arguing, among other things, that LBHI has no liabilities under the Guaranty unless demand notices were served upon it by OMX, the automatic stay prohibited OMX from serving the demand notices on LBHI, and cause did not exist to lift the automatic stay to permit OMX to trigger LBHI's obligations under the

---

[6]  See *Objection of Wells Fargo Bank Northwest, N.A., as Indenture Trustee, to Debtors' Amended Motion For (I) Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures For Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 19295] (the "Trustee Objection").

[7]  See Trustee Objection, at 10.

[8]  See *Motion of OMX Timber Finance Investments II, LLC for Limited Relief From the Automatic Stay* [Docket No. 2023] (the "OMX Motion"), at 2 n.1.

[9]  See Trustee Objection.

[10]  See OMX Motion, ¶¶ 1-7.

3

Guaranty.[11] On December 21, 2008, the Debtors joined in the Committee's objection.[12] A hearing to consider the OMX Motion has been adjourned without date.

6. On April 17, 2009, Boise filed the Boise Claim, seeking not less than $833,781,693.00 in connection with the Collateral Note. On September 18, 2009, OMX filed the OMX Claim, seeking not less than $844,896,060.00 in connection with the Guaranty.

7. On November 10, 2011, LBHI, the Committee, Boise, OMX, the Trustee, and certain of the OMX Bondholders (together with OMX and the Trustee, the "OMX Claimants") entered into a stipulation concerning the OMX Claim and the Boise Claim (the "Stipulation").[13] The Court approved the Stipulation on December 14, 2011.[14]

8. On December 6, 2011 the Court confirmed the *Modified Third Amended Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan").[15] Under the Plan, the Committee will be dissolved on the Effective Date (as defined in the Plan) except for certain specified purposes, including "resolving pending litigation."[16]

**C.     Stipulation Regarding OMX and Boise Claims**

9. The Stipulation, among other things, (i) bifurcates the Boise Claim into an allowed claim in the amount of $822,767,607.00 (the "Allowed Boise Claim") and a disputed claim for the remainder of the Boise Claim (the "Disputed Boise Claim") in the amount of

---

[11] See *Objection of Official Committee of Unsecured Creditors to Motion of OMX Timber Finance Investments II, LLC for Limited Relief from the Automatic Stay* [Docket No. 2335].

[12] See *Joinder of the Debtors To Official Committee of Unsecured Creditors' Objection to OMX Timber Finance Investments II, LLC's Motion For Relief from the Automatic Stay* [Docket No. 2340].

[13] See *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of a Settlement and Compromise Relating to Proofs of Claim Number 3813 and 17120* [Docket No. 22654], Exhibit A.

[14] See *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of a Settlement and Compromise Relating to Proofs of Claim Number 3813 and 17120* [Docket No. 23339].

[15] *Order Confirming Modified Third Amended Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket No. 23023].

[16] Plan, § 15.1(a).

$11,014,086.00, and (ii) establishes procedures for resolving the OMX Claim (which is deemed a disputed claim) and the Disputed Boise Claim.[17]

10. The Stipulation sets forth a schedule for negotiating and objecting to the OMX Claim and the Disputed Boise Claim, specifically:

a. within 45 days of the Stipulation Effective Date (as defined in the Stipulation), the parties other than LBHI and the Committee shall submit to LBHI and the Committee all factual and legal support they intend to offer in support of allowance of the OMX Claim and the Disputed Boise Claim (the "Claim Evidence");

b. within 60 days of the Stipulation Effective Date, subject to delivery of the Claim Evidence, the parties shall meet and confer in good faith to discuss a resolution of disputes regarding the allowance of the Disputed Boise Claim and OMX Claim (the "Meet and Confer"); and

c. on or before the 75th day after the Stipulation Effective Date, LBHI or the Committee may file an objection to allowance of the OMX Claim or the Disputed Boise Claim (the "Objection Deadline").[18]

11. Under the Stipulation, LBHI agreed that, in objecting to the OMX Claim, it will not argue that the OMX Claim should be reduced or disallowed (in whole or in part) on that basis that (i) the OMX Claim is duplicative of the Allowed Boise Claim, or (ii) LBHI's obligations under Collateral Note and the Guaranty are not separate obligations but should be collapsed, resulting in only one claim against LBHI (together, the "Duplicative Claim

---

[17] Stipulation, ¶¶ 2-9.
[18] Stipulation, ¶¶ 5-7.

5

Objections"). The Stipulation does not, however, affect any of the Committee's rights to raise and prosecute the Duplicative Claim Objections.[19]

12.     On February 10, 2012, the Trustee submitted certain Claim Evidence to LBHI and the Committee. None of the other OMX Claimants have submitted Claim Evidence to the Committee. As of the date hereof, the parties have not yet scheduled the Meet and Confer.

## OBJECTION

13.     The Committee expects to fully and in good faith participate in the Meet and Confer (after completing its review and analysis of the Claim Evidence submitted by the Trustee), and is hopeful that the parties can reach a resolution of the OMX Claim and the Disputed Boise Claim without further litigation. Out of an abundance of caution, however, the Committee files this preliminary Objection to preserve its rights—for the benefit of the Debtors' estates and their creditors—to prosecute the Duplicative Claim Objections, and any other bases for objecting to the OMX Claim and the Disputed Boise Claim, in the event a satisfactory settlement cannot be reached.

14.     The Committee believes that the OMX Motion and the Committee's objections thereto, which must be resolved in connection with any resolution of the OMX Claim, clearly constitute "pending litigation." In addition, the OMX Claimants agreed under the Stipulation (in exchange for an allowed $822.7 million claim from which they will directly benefit) that the Committee may file an objection to the OMX Claim and Dispute Boise Claim *on or before the Objection Deadline*. Nonetheless, the Committee is concerned that if the Effective Date occurs prior to the Objection Deadline, and the Committee has not yet filed an objection because it is waiting to first participate in the Meet and Confer, the OMX Claimants

---

[19] Stipulation, ¶ 7.

6

will assert that the Committee does not exist for the purpose of (or lacks standing for) objecting to the OMX Claim—and thereby attempt to block any Duplicative Claim Objections from being raised.

15. Accordingly, the Committee hereby objects to allowance of the OMX Claim and Disputed Boise Claim, on the grounds that:

   a. LBHI has no liabilities under the Guaranty because OMX has not served demand notices on LBHI (except to the extent notices may have been served in violation of the automatic stay); therefore, there is no basis for the OMX Claim, and it should be disallowed in full;

   b. Even if the Court permits OMX to trigger LBHI's obligations under the Guaranty, which it should not, the OMX Claim is duplicative of the Allowed Boise Claim; therefore, the OMX Claim should be disallowed in full;

   c. LBHI's obligations under the Guaranty and the Collateral Note are not separate obligations and should be collapsed, resulting in only one claim against LBHI. Because a claim on account of the Collateral Note has already been allowed (the Allowed Boise Claim), the OMX Claim should be disallowed in full; and

   d. Boise has not submitted sufficient factual or legal support for the Disputed Boise Claim; therefore the Disputed Boise Claim it should be disallowed in full.

16. The Committee reserves all of its rights to revise, supplement or amend the Objection after it has participated in the Meet and Confer, and as new or different information concerning the OMX Claim and the Disputed Boise Claim becomes available.

17. The Committee respectfully requests that any hearing on the Objection be adjourned to a date after the Meet and Confer.

WHEREFORE, the Committee respectfully requests that the Court (i) sustain the Objection, and (ii) grant such other relief as is just.

Dated:   New York, New York
         February 29, 2012

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

David S. Cohen
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.