**Hearing Date and Time:  March 21, 2012 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  March 14, 2012 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL**
**OF CERTAIN SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for an order authorizing and approving of certain settlements with the Internal Revenue Service, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 21, 2012 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **March 14, 2012 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 29, 2012
         New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time:  March 21, 2012 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  March 14, 2012 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* :        **08-13555 (JMP)**
                                          :
                    **Debtors.**          :          **(Jointly Administered)**
                                          :
                                          :
-------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL**
**OF CERTAIN SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

            Lehman Brothers Holdings Inc. ("LBHI") as debtor and as debtor in possession

(together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), submits this motion (the "Motion") and

respectfully represents:

**Preliminary Statement**

            1.          LBHI, as parent of an affiliated group with which it filed consolidated

federal income tax returns, has tax disputes with the Internal Revenue Service ("IRS") regarding

its 1997 through 2008 tax years.  LBHI has authority to settle disputes with the IRS on its own

behalf and on behalf of all members of the affiliated group with which it filed consolidated federal income tax returns.  Treas. Reg. § 1.1502-77(a)(1), (2).

2.    In this capacity, LBHI claimed a refund from the IRS for taxes, penalties, and deficiency interest it paid related to eight disputed tax issues reported on its 1997 through 2000 consolidated income tax returns (the "1997-2000 Refund Claims"), seven of which issues were also disputed in certain tax years from 2001 through 2008.  LBHI and the IRS successfully settled six issues from the 1997-2000 Refund Claims, as described in LBHI's Motion for Authorization and Approval of Certain Settlements with the Internal Revenue Service dated March 23, 2010 [Docket No. 7734] (the "First Motion to Authorize"), and these settlements were approved by the Court.  *See* Order (Apr. 15, 2010) [Docket No. 8353].  One additional issue, which was also disputed in the 2001 through 2005 tax years, has now been settled, while the remaining issue has proceeded to litigation.

3.    The IRS proposed thirty-six adjustments to income, tax credits, and penalties after auditing LBHI's 2001 through 2007 consolidated income tax returns and evaluating additional tax positions claimed by LBHI during the audit that were not included on LBHI's originally filed consolidated income tax returns, which LBHI disputed (the "2001-2007 Tax Disputes").  The adjustments proposed by the IRS with respect to the 2001-2007 Tax Disputes had the effect of potentially increasing tax liability by $2.6 billion.

4.    The IRS filed proofs of claim against certain Debtors including LBHI (each a "Claim," and collectively, the "Claims") that included approximately $1.8 billion of taxes and penalties relating to the 2001-2007 Tax Disputes.[1]  As discussed further below at paragraphs 7, 13, and 14, the Claims filed by the IRS incorporated the settlement terms for

---

[1] The Claims also included various non-consolidated tax liabilities of approximately $100 million, and estimated interest of approximately $350 million.

eighteen issues (approximately $1.2 billion) discussed in this Motion.  LBHI's final tax liability

for the 2001 through 2007 tax years will be further reduced by other tax attributes, including

LBHI's election to carry back its 2008 net operating loss five years, and thus LBHI's ultimate

tax liability for 2001 through 2007 cannot be calculated with precision at this time.[2]

       5.      LBHI's tax disputes with the IRS are both factually and legally complex.

They cover a period of time when Lehman was the fourth largest investment bank in the United

States.  As this Court has observed, "the Debtors are perhaps the most complex and multi-faceted

business ventures ever to seek the protection of chapter 11."  *Lehman Brothers Special*

*Financing Inc. v. BNY Corporate Trustee Servs. Ltd. (In re Lehman Brothers Holdings Inc.)*, 422

B.R. 407, 420 (Bankr. S.D.N.Y. 2010).  The facts involved in many of the settled tax disputes are

highly complex and voluminous, and depend, for their resolution, on areas of tax law whose

application to Lehman's complex business is uncertain.  In fact, similar factual and legal issues

are the subject of significant ongoing litigation between taxpayers and the IRS in courts

throughout the country.  If LBHI were forced to litigate each of these issues, the outcome of its

litigation with the IRS would be highly uncertain and, in all cases, such litigation would be

protracted and expensive.

       6.      LBHI and the IRS have, therefore, engaged in a good faith effort to

resolve as many disputes between them as possible and without recourse to litigation.  After two

years of focused negotiations, LBHI and the IRS have settled, subject to the approval of this

Court, twenty-six of the thirty-six issues that constitute the 2001-2007 Tax Disputes (the

"Settlements").  Under the terms of nearly all of the Settlements, the IRS has made concessions

---

[2] In addition, because the deficiency interest on any increased tax liability cannot be calculated definitively until such increased tax liability or penalties are assessed, deficiency interest is not included in the figures used in this motion.  Therefore, this Motion will discuss the settlements in the context of the IRS's proposed adjustments of $2.6 billion in taxes and penalties (excluding interest).

that reduce the amount of its proposed adjustments.  LBHI and the IRS have agreed to continue

further settlement negotiations on the remaining ten issues through the traditional IRS Appeals

process.

    7.  Of the $2.6 billion in adjustments proposed by the IRS due to the 2001-

2007 Tax Disputes, $1.8 billion is attributable to the twenty-six settled issues.  Settlement terms

for eighteen of these issues were reached prior to the IRS filing its Claims, and were

incorporated into the Claims pursuant to the Proof of Claim Amendment Order (defined in

paragraph 14 below).  Since the Claims were filed, Settlements have been reached for eight

additional issues.  As a result of the Settlements, the IRS will concede $1.1 billion of the $1.8

billion in taxes and penalties it sought to impose.  LBHI will agree to $652 million of

adjustments to tax.

    8.  Given the uncertain legal questions and the factual complexity

surrounding many of the settled issues, and the risks and expense attendant to litigating each of

these settled issues, LBHI believes that the Settlements are fair and reasonable, and in the best

interests of the Debtors, their estate, and their creditors.  Accordingly, LBHI requests

authorization pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") to enter into the Settlements.

### Background

    9.  Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The

Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

11.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under the SIPA (the "SIPC Trustee") is administering LBI's estate.

12.     On April 15, 2010, the Court approved Debtors' First Motion to Authorize (Mar. 23, 2010) [Docket No. 7734].  *See* Order (Apr. 15, 2010) [Docket No. 8353].

13.     On December 22, 2010, the IRS filed its Claims relating to the 2001-2007 Tax Disputes and the Non-Income Tax Audits (defined below) for unpaid tax, interest, and penalties against certain Debtors including LBHI.[3]

14.     As described in the Stipulation, Agreement, and Order between the Debtors and the IRS dated November 30, 2010 [Docket No. 13161], and by order dated December 14, 2010 [Docket No. 13452] (the "Proof of Claim Amendment Order"), the IRS took into account certain pending but unfinalized settlements described in the Proof of Claim Amendment Order in calculating the amount of its Claims against the Debtors.  Incorporating these pending but unfinalized settlements into the IRS's computations of the Claims has the effect of reducing the Claims because, for nearly all of the pending settlements, the IRS has conceded at least some amount of its proposed adjustments.  The eighteen Settlements that were incorporated into the Claims are described at paragraphs 34 through 71.

---

[3] Claim numbers 67274, 67275, and 67288 – 67293.  Claim number 67290 against Lehman Brothers Commodity Services Inc. was amended by claim number 67634 on August 15, 2011.

15.     On December 6, 2011, the Court entered an order confirming the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated

Debtors [Docket No. 23023] (the "Plan").  Pursuant to Section 6.1(a) of the Plan, LBHI shall

serve as the Plan Administrator for each of the Debtors.  It is contemplated that the Plan will

become effective within the first quarter of 2012.

### Jurisdiction

16.     This Court has subject matter jurisdiction to consider and determine this

Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### LBHI's Disputes with the Internal Revenue Service

17.     LBHI's tax disputes with the IRS involve a range of issues spanning from

1997 through 2008.  These disputes can generally be categorized as the 1997-2000 Refund

Claims, the 2001-2007 Tax Disputes, and the Non-Income Tax Audits, as defined below.

18.     The 1997-2000 Refund Claims involved eight disputed tax issues arising

from the IRS's audit of LBHI's 1997 through 2000 tax years.  LBHI and the IRS successfully

settled six issues from the 1997-2000 Refund Claims, as described in LBHI's First Motion to

Authorize (Mar. 23, 2010) [Docket No. 7734], and these settlements were approved by the

Court.  *See* Order (Apr. 15, 2010) [Docket No. 8353].  These previous settlements entitle LBHI

to a net refund for the 1997 through 2000 tax years.  One additional issue, which was also

disputed in the 2001 through 2005 tax years, has now been settled,[4] while the remaining issue

has proceeded to litigation.[5]

---

[4] This issue was incorporated into the settlement of the issue for the 2001-2007 Tax Disputes, and is described below at paragraphs 56 through 59.

[5] *Lehman Brothers Holdings Inc. v. United States*, No. 1:10-cv-6200 (S.D.N.Y. Aug. 18, 2010).

19.    In a separate audit cycle for LBHI's 2001 through 2007 consolidated income tax returns, the IRS proposed various adjustments that LBHI disputed. During the audit, LBHI also identified and claimed additional tax positions that were not included on its originally filed returns for 2001 through 2007, and the IRS disputed LBHI's entitlement to certain of those positions. The thirty-six issues that constitute the 2001-2007 Tax Disputes resulted from the disputes that arose during this audit cycle.

20.    In addition, the IRS has two other ongoing audits that involve a review of non-income tax issues independent from the audit of LBHI's consolidated income tax returns (the "Non-Income Tax Audits").[6]

21.    In order to facilitate the administrative settlement of the thirty-six issues that constitute the 2001-2007 Tax Disputes, LBHI and the IRS agreed to group together certain particularly complex transactions with similar tax characteristics and attempt to reach a single resolution for each category of transactions (the "Grouped Transactions").[7] Specifically, seventeen transactions that the IRS has characterized as "foreign tax credit generators" were grouped into three categories. Six of the seventeen were categorized as investment transactions (the "Investment Transactions"),[8] four of the seventeen were categorized as borrowing transactions involving Lehman partnerships that issued bonds whose coupons secured the

---

[6] The IRS has also started its audit of LBHI's 2008 through 2010 consolidated income tax returns, which includes the 2008 net operating loss that LBHI has elected to carry back five years.

[7] Pursuant to the agreement between LBHI and the IRS, these groupings would apply only for administrative settlement purposes and not in any potential litigation related to the issues.

[8] These six issues were listed as pending settlements on Exhibit A to the Proof of Claim Amendment Order and were incorporated into the IRS's Claims. They are referred to by the parties as Stockholm I, Stockholm II, Stockholm NAB, Delta, HBOS, and NAB.

repayment of the loans (the "<u>Bond Borrowing Transactions</u>"),[9] and seven of the seventeen were categorized as borrowing transactions involving loans that were not secured by bond coupons (the "<u>Borrowing Transactions</u>").  Together, the Grouped Transactions involve $1.1 billion of the $2.6 billion proposed adjustments to taxes and penalties for LBHI's 2001 through 2007 tax years.  The use of these Grouped Transactions allowed LBHI and the IRS to treat thirty-six distinct issues as twenty-two issues for settlement purposes, and enabled the parties to resolve these very complex issues more efficiently and effectively.

22.    The remaining nineteen disputed issues in the 2001-2007 Tax Disputes were less complex and did not share similar factual or legal characteristics, and thus each was negotiated for settlement purposes on an individual basis (the "<u>Other Issues</u>").

23.    Since the Commencement Date, LBHI and the IRS have developed a process for attempting to resolve the disputes related to the 1997-2000 Refund Claims, the 2001-2007 Tax Disputes, and the Non-Income Tax Audits.  For the particularly complex issues involved in the 2001-2007 Tax Disputes, *i.e.* the Grouped Transactions, this process involved a detailed administrative review that included three phases:  (i) the collection of additional documents and facts from LBHI by the IRS; (ii) the exchange of written submissions by LBHI and the IRS setting forth their factual and legal arguments; and (iii) settlement negotiations that were mediated by the Appeals Division of the IRS ("<u>IRS Appeals</u>") over multiple days during which LBHI and IRS Counsel (representing the Examination Division of the IRS ("<u>IRS Exam</u>")) formally presented their positions.  The U.S. Attorney's Office for the Southern District of New York has been involved in this dispute resolution process.  This is the same process used to

---

[9] These four issues were listed as pending settlements on Exhibit A to the Proof of Claim Amendment Order and were incorporated into the IRS's Claims.  They are referred to by the parties as Quattro, Olympic, Ballybunion, and Lomond.

resolve the complex issues from the 1997-2000 Refund Claims (each involving more than $100 million in disputed taxes, penalties, and interest) that were previously approved by the court. *See* Order (Apr. 15, 2010) [Docket No. 8353].

24.     Attempts to resolve the less complex Other Issues were made as part of the typical negotiations LBHI conducts with the IRS Exam team on an ongoing basis to resolve issues that arise during the audit process.  This process included LBHI's provision of information to the IRS Exam team, the consideration and discussion of questions posed by the IRS, the exchange of written submissions by LBHI and the IRS setting forth their factual and legal arguments, several meetings between LBHI and the IRS to discuss the issues, the evaluation of the merits of each position by LBHI, and the negotiation of appropriate settlements by LBHI and the IRS Exam team.

## I.    Overview of Settlements with the Internal Revenue Service

25.     From June 2009 through June 2011, LBHI and the IRS engaged in these administrative processes for the Grouped Transactions and Other Issues to attempt to resolve the 2001-2007 Tax Disputes.  Specifically, for the Grouped Transactions during this period, LBHI provided factual information pertaining to certain disputed items, and LBHI and the IRS exchanged written submissions with respect to the issues involved in the 2001-2007 Tax Disputes.  IRS Appeals mediated negotiations for the Grouped Transactions during three separate sessions spanning two days each.  As a result of these negotiations, LBHI and the IRS have settled, subject to the review of this Court, two of the Grouped Transactions—the Investment Transactions and the Bond Borrowing Transactions—which are described below at paragraphs 34 through 38 and 39 through 43, respectively.[10]

---

[10] These two Grouped Transactions represent ten of the thirty-six issues that constitute the 2001-2007 Tax Disputes.

26.     LBHI and the IRS have also settled, subject to the review of this Court, sixteen of the Other Issues as part of the normal audit resolution process.  These issues are described more fully below at paragraphs 44 through 89.

27.     Thus, of the thirty-six issues that constitute the 2001-2007 Tax Disputes, LBHI and the IRS have settled, subject to the approval of this Court, twenty-six of the issues, including two categories of Grouped Transactions, and will continue settlement negotiations on the one remaining Grouped Transaction (the Borrowing Transactions) and the three remaining Other Issues through the traditional IRS Appeals process.[11]

28.     LBHI's management and its in-house tax department have assessed the Settlements and have concluded that the Settlements are fair, equitable, and in the best interest of the Debtors.  *See* Decl. of Jeffry Ciongoli in Supp. of Mot. of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 for Authorization & Approval of Certain Settlements with the Internal Revenue Service ("Ciongoli Declaration") ¶¶ 20-21, February 29, 2012 (Ex. A).

29.     Throughout this process, LBHI has been advised and represented by lawyers from Bingham McCutchen LLP ("Bingham")[12] who have expertise in handling significant tax controversy matters for large institutions.  Lawyers from Bingham have served as LBHI's primary tax controversy counsel since 2005 with respect to the tax disputes involved in the 1997-2000 Refund Claims, 2001-2007 Tax Disputes, and the Non-Income Tax Audits.  Since

---

[11]  The eighteen Settlements for which agreements were reached prior to the filing of the Claims are described at paragraphs 34-71.  The eight Settlements for which agreements were reached after the filing of the Claims are described at paragraphs 72-89.  LBHI and the IRS have already begun this IRS Appeals process, and expect to complete settlement negotiations for all remaining issues by September 30, 2012.

[12]  From March 2005 through August 1, 2009, McKee Nelson LLP advised and represented Lehman as its primary tax controversy counsel.  McKee Nelson combined with Bingham effective August 1, 2009, and Lehman has continued to be advised and represented by lawyers formerly from McKee Nelson and currently at Bingham in all phases of the administrative review process.

the Debtors' bankruptcy filing, lawyers from Bingham have assisted and advised LBHI in all phases of the administrative review process.

30.    Sutherland Asbill & Brennan LLP ("Sutherland"), which also has significant experience with tax controversy matters, has served as LBHI's advisory tax controversy counsel.  Sutherland assisted LBHI in assessing the hazards of litigation for each of the Grouped Transactions and has provided LBHI with its own judgment regarding appropriate settlement levels for those issues.

31.    LBHI and Bingham have kept the Creditors' Committee apprised of the nature of LBHI's disputes with the IRS and the progress of LBHI's settlement negotiations. Based on LBHI and Bingham's briefings and its counsel's review of LBHI's and the IRS's written submissions, the Creditors' Committee concurs that the Settlements for the two Grouped Transactions are fair, equitable, and in the best interest of the Debtors.

32.    Although LBHI and the IRS have agreed to terms for the Settlements, and the U.S. Congress Joint Committee on Taxation (the "Joint Committee") has reviewed certain of the Settlements pursuant to 26 U.S.C. § 6405 and other internal IRS policies,[13] the Settlements will not take effect until this Court approves the settlement terms.

## II.    Description of Settlement Terms

33.    As a result of their negotiations, LBHI, acting on behalf of all members of the affiliated group with which it filed consolidated federal income tax returns, and the IRS agreed to the following Settlements.

---

[13] The Joint Committee has reviewed the following Settlements:  Investment Transactions (described at ¶¶34-38), Bond Borrowing Transactions (¶¶39-43), Capital Loss Issue (¶¶44-47), R&D Credit Issue (¶¶48-51), and DRD Issue (¶¶52-55).

A.      **The Investment Transactions (A Grouped Transaction)**

34.     During the 2002 through 2007 tax years, various subsidiaries of LBHI

entered into six investment transactions for which LBHI claimed foreign tax credits pursuant to

26 U.S.C. §§ 901 *et seq.*, as well as deductions for swap payments and other expenses on its

consolidated income tax returns for the years at issue.

35.     The IRS challenged LBHI's entitlement to the foreign tax credits and

deductions based on LBHI's alleged failure to comply with applicable statutes and common law

doctrine.

36.     In dispute are $494,732,727 in foreign tax credits and $191,294,825 in

deductions claimed in connection with the Investment Transactions on LBHI's 2002 through

2007 consolidated income tax returns.  In addition, penalties pursuant to 26 U.S.C. § 6662 in the

amount of $99,442,976 are in dispute for the 2002 through 2007 tax years.

37.     To resolve the Investment Transactions, LBHI and the IRS have agreed to

the following settlement terms:

a.      LBHI shall be allowed 40 percent of the claimed foreign tax credits in the
        2002 through 2004 tax years, 25 percent of the claimed foreign tax credits
        in the 2005 through 2007 tax years, and 100 percent of the claimed
        deductions in the 2002 through 2007 tax years.  Specifically, LBHI shall
        be allowed $109,011,273 of the $272,528,182 in foreign tax credits
        claimed in the 2002 through 2004 tax years, $55,551,136 of the
        $222,204,545 in foreign tax credits claimed in the 2005 through 2007 tax
        years, and all $191,294,825 of the deductions claimed in the 2002 through
        2007 tax years.

b.      LBHI shall reduce taxable income for the 2002 through 2007 tax years in
        the amount of the disallowed foreign tax credits.  Specifically, LBHI shall
        reduce taxable income by a total of $330,170,318.

c.      No penalties shall be imposed against LBHI with respect to the Investment
        Transactions.

12

38.     The settlement of the Investment Transactions reflects LBHI's assessment of the hazards and costs of litigation, and consideration of all tax attributes.  The existence of both adverse and supportive legal precedent, in conjunction with highly complex facts, creates significant uncertainty in the outcome of any litigation.  Given the risks associated with the potential application of adverse legal precedent to LBHI's case and the costs associated with the factual development, analysis, and litigation of six complex issues with similar yet distinct facts, the settlement of the Investment Transactions is in the best interest of LBHI.

**B.      The Bond Borrowing Transactions (A Grouped Transaction)**

39.     During the 2001 through 2005 tax years, various subsidiaries of LBHI entered into four financing transactions for which LBHI claimed foreign tax credits pursuant to 26 U.S.C. §§ 901 *et seq.*, as well as deductions for interest expense, swap payments, and other expenses on its consolidated income tax returns for the years at issue.

40.     The IRS challenged LBHI's entitlement to the foreign tax credits and deductions based on LBHI's alleged failure to comply with applicable statutes and common law doctrine.

41.     In dispute are $145,786,130 in foreign tax credits and $59,500,128 in deductions claimed in connection with the Bond Borrowing Transactions on LBHI's 2001 through 2005 consolidated income tax returns.  In addition, penalties pursuant to 26 U.S.C. § 6662 in the amount of $33,342,234 are in dispute for the 2001 through 2005 tax years.

42.     To resolve the Bond Borrowing Transactions, LBHI and the IRS have agreed to the following settlement terms:

a.      LBHI shall be allowed 35 percent of the claimed foreign tax credits in the 2003 tax year, and 100 percent of the claimed deductions in the 2001 through 2005 tax years.  Specifically, LBHI shall be allowed $51,025,146 of the $145,786,130 in foreign tax credits claimed in the 2003 tax year, and all $59,500,128 of the deductions claimed in the 2001 through 2005

13

tax years.

b.      LBHI shall reduce taxable income for the 2003 tax year in the amount of the disallowed foreign tax credits.  Specifically, LBHI shall reduce income by a total of $94,760,984.

c.      No penalties shall be imposed against LBHI with respect to the Bond Borrowing Transactions.

43.     The settlement of the Bond Borrowing Transactions reflects LBHI's assessment of the hazards and costs of litigation, and consideration of all tax attributes.  The existence of both adverse and supportive legal precedent, in conjunction with highly complex facts, creates significant uncertainty in the outcome of any litigation.  Given the risks associated with the potential application of adverse legal precedent to LBHI's case and the costs associated with the factual development, analysis, and litigation of four complex issues with similar yet distinct facts, the settlement of the Bond Borrowing Transactions is in the best interest of LBHI.

C.      **The Capital Loss Issue (An Other Issue)**

44.     During the years at issue, LBHI acquired investments in certain capital assets that were later sold for less than their acquisition price.  These dispositions resulted in capital losses claimed on LBHI's consolidated income tax returns for the 2002 and 2004 tax years, as well as capital losses identified during the audit that should have been claimed on LBHI's consolidated income tax return for the 2001 tax year (the "Capital Loss Issue").

45.     The IRS challenged LBHI's entitlement to the capital losses based on LBHI's alleged failure to substantiate the loss and to comply with applicable statutes and common law doctrine.

46.     In dispute are $217,830,827 of capital losses claimed in connection with the Capital Loss Issue on LBHI's 2002 and 2004 consolidated income tax returns.  Also in

14

dispute are $8,207,665 of capital losses identified during the audit that should have been claimed

but were not included on LBHI's originally filed return for the 2001 tax year.

      47.    To resolve the Capital Loss Issue, LBHI and the IRS have agreed to the

following settlement terms:

      a.    LBHI shall be allowed none of the capital losses in dispute for the 2001 tax year, approximately 20 percent of the capital losses in dispute for the 2003 tax year, and none of the capital losses in dispute for the 2004 tax year. Specifically, LBHI shall be allowed $0 of the $8,207,665 of capital losses in the 2001 tax year, $33,905,774 of the $167,707,022 of capital losses claimed in the 2003 tax year, and $0 of the $50,123,805 of capital losses claimed in the 2004 tax year.

      b.    No penalties shall be imposed against LBHI with respect to the Capital Loss Issue.

**D.    The Research and Development Credit Issue (An Other Issue)**

      48.    During the years at issue, LBHI claimed credit for qualified research

activities under 26 U.S.C. § 41 (the "R&D Credit Issue").

      49.    The IRS challenged LBHI's entitlement to the credits based on LBHI's

alleged failure to substantiate the research activities.

      50.    In dispute are $16,227,096 of research credits claimed in connection with

the R&D Credit Issue on LBHI's 2001 through 2007 consolidated income tax returns.

51.      To resolve the R&D Credit Issue, LBHI and the IRS have agreed that LBHI shall

be allowed $10,176,776 in credits attributable to the R&D Credit Issue for the 2001 through

2007 tax years.

**E.    The Dividends Received Deduction Issue (An Other Issue)**

      52.    A corporation that receives a dividend from another corporation is entitled

to a dividends received deduction pursuant to 26 U.S.C. §§ 243 through 246. During the years at

issue, LBHI claimed a dividends received deduction for dividends received on certain equities held by its various subsidiaries (the "DRD Issue").

53.    The IRS challenged LBHI's entitlement to such deductions based on LBHI's alleged failure to substantiate its position and to comply with applicable statutes and regulations.

54.    In dispute are $198,630,735 of the deductions for dividends received on short positions claimed on LBHI's 2001 through 2004 consolidated income tax returns, and $125,840,372 of the deductions for dividends received on risk arbitrage positions claimed on LBHI's 2003 through 2007 consolidated income tax returns.

55.    To resolve the DRD Issue, LBHI and the IRS have agreed that LBHI shall be allowed 75 percent of the disputed deductions relating to the short positions, and none of the disputed deductions relating to the risk arbitrage positions.  Specifically, LBHI shall be allowed $148,973,051 of the $198,630,735 deductions claimed in the 2001 through 2004 tax years related to the short positions, and $0 of the $125,840,372 deductions claimed in the 2003 through 2007 tax years related to the risk arbitrage positions.

**F.    The Double Reporting Of Income Issue (An Other Issue)**

56.    During the years at issue, LBHI and several of its subsidiaries indirectly owned interests in partnerships that held real estate investments.  Due to limitations in LBHI's accounting systems, the income from these partnerships was reported twice on LBHI's consolidated returns, and thus LBHI claimed deductions reversing out one inclusion of the partnership income (the "Double Reporting of Income Issue").

57.    The IRS challenged LBHI's entitlement to the reversal of income based on LBHI's alleged failure to substantiate the double reporting of income.

58.     In dispute is $87,728,743 of income reversal claimed in connection with the Double Reporting of Income Issue on LBHI's 2003 consolidated income tax return and $199,958,924 of income reversal claimed in connection with the Double Reporting of Income Issue on LBHI's 2004 consolidated income tax return.  Also in dispute are $25,667,204 of income reversal claimed in connection with the Double Reporting of Income Issue on LBHI's 1997 through 2000 consolidated income tax returns.[14]

59.     To resolve the Double Reporting of Income Issue, LBHI and the IRS have agreed that LBHI shall be allowed $63,594,475 of income reversal for the 2003 tax year, $199,958,924 of income reversal for the 2004 tax year, and $0 of the income reversal for the 1997 through 2000 tax years.[15]

### G.      The Fuel Credit Issue (An Other Issue)

60.     During the years at issue, LBHI claimed credits for production of fuel from a nonconventional source pursuant to 26 U.S.C. § 45K (the "Fuel Credit Issue").

61.     The IRS challenged LBHI's entitlement to the credits based on LBHI's alleged failure to substantiate the nonconventional fuel production activities.

62.     In dispute are $42,122,166 of nonconventional fuel credits claimed in connection with the Fuel Credit Issue on LBHI's 2007 consolidated income tax return.

63.     To resolve the Fuel Credit Issue, LBHI and the IRS have agreed that LBHI shall be allowed all $42,122,166 of the nonconventional fuel credits claimed by LBHI.

---

[14] This $25,667,204 from the 1997 through 2000 tax years is the last remaining issue from the 1997-2000 Refund Claims.  As described in LBHI's First Motion to Authorize, Mar. 23, 2010 [Docket No. 7734], the parties agreed to consider this issue as part of the 2001-2007 Tax Disputes.

[15] Of the $63,594,475 total income reversal allowed, $45,270,293 was agreed to prior to the filing of the Claims, and $18,324,182 was agreed to after the filing of the Claims.

H.    **The Cost to Carry Issue (An Other Issue)**

64.    Interest on indebtedness incurred to purchase or carry tax-exempt municipal bonds is not deductible pursuant to 26 U.S.C. § 265.  In order to determine the interest expense subject to disallowance, an allocation of interest expense must be performed.  During the years at issue, LBHI incurred indebtedness potentially subject to disallowance pursuant to 26 U.S.C. § 265 (the "Cost to Carry Issue").

65.    The IRS challenged LBHI's entitlement to certain interest expense deductions based on the interest expense allocation methodology used by LBHI on its 2001 through 2007 consolidated income tax returns.

66.    In dispute are $106,757,803 of deductions claimed in connection with the Cost to Carry Issue on LBHI's 2001 through 2007 consolidated income tax returns.

67.    To resolve the Cost to Carry Issue, LBHI and the IRS have agreed that:

a.    LBHI will conform the interest allocation methodology used for the 2001 through 2007 tax years to the methodology agreed with the IRS for the 1997 through 2000 tax years.

b.    As a result of this change in methodology, LBHI will reduce the interest expense deductions claimed on its 2001 through 2007 consolidated income tax returns by $93,767,213.

I.    **The REMIC Issue (An Other Issue)**

68.    During the years at issue, various subsidiaries of LBHI claimed deductions for losses taken when certain REMIC interests were either liquidated or sold to qualified third parties (the "REMIC Issue").

69.    The IRS challenged LBHI's entitlement to these deductions based on LBHI's alleged failure to substantiate that the REMIC interests were either sold to qualified organizations or that the REMICs were liquidated.

18

70.     In dispute are $483,324,181 of deductions claimed in connection with the REMIC Issue on LBHI's 2002 through 2004 consolidated income tax returns, and $89,145,448 of deductions claimed in connection with the REMIC Issue on LBHI's 2005 through 2007 consolidated income tax returns.

71.     To resolve the REMIC Issue, LBHI and the IRS have agreed that LBHI shall be allowed 100 percent of the claimed deductions in the 2002 through 2004 tax years, and none of the claimed deductions in the 2005 through 2007 tax years.  Specifically, LBHI shall be allowed all of the $483,324,181 of the deductions claimed in the 2002 through 2004 tax years, and $0 of the $89,145,448 deductions claimed in the 2005 through 2007 tax years.  This settlement reflects LBHI's assessment of the hazards and costs of litigation, including the fact that the 2008 net operating loss carryback is expected to eliminate substantially all of LBHI's 2005 through 2007 taxable income.  Thus, conceding the REMIC Issue for the 2005 through 2007 years is expected to have no effect on LBHI's tax liability in those years.

**J.      The Indymac Sale Issue (An Other Issue)**

72.     During the years at issue, LBHI failed to report various gains generated by the deemed asset sale to Indymac Bank governed by 26 U.S.C. § 338 (the "Indymac Sale Issue").

73.     In dispute is $8,162,497 of income that should have been reported on LBHI's 2003 and 2004 consolidated income tax returns.

74.     To resolve the Indymac Sale Issue, LBHI and the IRS have agreed that LBHI will increase its reported income for the years at issue by $8,162,497.

**K.      The Partnership Income Issue (An Other Issue)**

75.     During the years at issue, an LBHI subsidiary failed to report certain partnership income received from a partnership in which it was a partner (the "Partnership Income Issue").

19

76.     In dispute is $17,213,638 of income that should have been reported on LBHI's 2005 and 2006 consolidated income tax returns.

77.     To resolve the Partnership Income Issue, LBHI and the IRS have agreed that LBHI will increase reported income for the 2005 and 2006 tax years by $13,127,441.

**L.     The Affiliate Foreign Tax Issues (Other Issues)**

78.     During the years at issue, LBHI claimed deemed paid foreign tax credits pursuant to 26 U.S.C. §§ 901 *et seq.* for foreign taxes paid by certain foreign affiliates (the "Affiliate Foreign Tax Issues").[16]

79.     The IRS challenged LBHI's entitlement to the credits based on LBHI's alleged failure to substantiate the foreign taxes paid.

80.     In dispute are the following deemed paid foreign tax credits claimed in connection with the Affiliate Foreign Tax Issues on LBHI's 2001 through 2007 consolidated income tax returns:

a.     $358,010,475 for foreign taxes paid by LBHI's lower-tier U.K. subsidiary Lehman Brothers International (Europe).

b.     $269,926,289 for foreign taxes paid by Lehman Brothers Japan.

c.     $46,840,246 for foreign taxes paid by PAMI – New Century Finance.

d.     $22,016,443 for foreign taxes paid by Lehman Brothers (PTG).

e.     $14,110,725 for foreign taxes paid by Lehman Brothers (Indonesia).

81.     To resolve the Affiliate Foreign Tax Issues, LBHI and the IRS have agreed that LBHI has provided substantiation for, and will be entitled to claim, the following:

a.     $316,973,764 in deemed paid credits for foreign taxes paid by Lehman Brothers International (Europe).

---

[16] The Affiliate Foreign Tax Issues comprise five of the 2001 - 2007 Tax Disputes.

b.  $184,464,476 in deemed paid credits for foreign taxes paid by Lehman Brothers Japan.

c.  $46,840,246 in deemed paid credits for foreign taxes paid by New Century Finance.

d.  $0 in deemed paid credits for foreign taxes paid by Lehman Brothers (PTG).

e.  $7,826,995 in deemed paid credits for foreign taxes paid by Lehman Brothers (Indonesia).

**M.    The Longmeade Issue (An Other Issue)**

82.    LBHI claimed deemed paid foreign tax credits pursuant to 26 U.S.C. §§ 901 *et seq.* for U.K. taxes paid by Longmeade Limited (the "Longmeade Issue").

83.    The IRS challenged LBHI's entitlement to the losses based on LBHI's alleged failure to comply with applicable statutes and regulations.

84.    In dispute are $45,046,496 of foreign tax credits claimed in connection with the Longmeade Issue on LBHI's 2007 consolidated income tax return.  Also in dispute are $12,714,088 of foreign tax credits identified during the audit that should have been claimed but were not included on LBHI's originally filed return for the 2007 tax year.

85.    To resolve the Longmeade Issue, LBHI and the IRS have agreed that LBHI will be allowed $0 of the $57,760,784 of foreign tax credits in dispute.  This settlement reflects LBHI's assessment of the hazards and costs of litigation, including the fact that the 2008 net operating loss carryback is expected to eliminate all of LBHI's 2007 taxable income, and thus conceding the foreign tax credits attributable to the Longmeade Issue is expected have no effect on LBHI's tax liability in 2007.

21

### N.    The Liberty Hampshire Issue (An Other Issue)

86.    During the years at issue, a subsidiary of LBHI issued certain equity linked notes for which LBHI claimed losses under 26 U.S.C. § 165 on its consolidated income tax return for the 2007 tax year (the "Liberty Hampshire Issue").

87.    The IRS challenged LBHI's entitlement to the losses based on LBHI's alleged failure to substantiate the losses and to comply with applicable statutes and regulations.

88.    In dispute are $41,012,825 of losses claimed in connection with the Liberty Hampshire Issue on LBHI's 2007 consolidated income tax return.

89.    To resolve the Liberty Hampshire Issue, LBHI and the IRS have agreed that LBHI will be allowed $0 of the $41,012,825 of losses claimed.  This settlement reflects LBHI's assessment of the hazards and costs of litigation, including the fact that the 2008 net operating loss carryback is expected to eliminate all of LBHI's 2007 taxable income, and thus conceding the losses attributable to the Liberty Hampshire Issue is expected have no effect on LBHI's tax liability in 2007.

### Relief Requested

90.    By this Motion, LBHI seeks authorization pursuant to Bankruptcy Rule 9019 to enter into and consummate the Settlements on behalf of the Debtors and as common parent of the federal consolidated tax group.

### Argument

91.    The Settlements are in the Debtors' best interests and should be approved under Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interest of the estate.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17F.3d 600 (2d Cir. 1994).

92.    The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

93.    While a court must evaluate "all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a mini-trial of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact . . . . The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

94.    The court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but

only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable

choices, I must approve that choice, even if, all things being equal, I would have selected the

other.").

95.    LBHI and the IRS have spent two years engaging in a carefully structured

process designed to facilitate settlement of the 2001-2007 Tax Disputes, the same process used

to resolve the complex issues from the 1997-2000 Refund Claims that were previously approved

by the Court. *See* Order (Apr. 15, 2010) [Docket No. 8353].  For the Grouped Transactions, by

exchanging extensive written submissions setting forth the parties' factual and legal positions

and participating in multi-day mediation sessions, both LBHI and the IRS have subjected their

positions to rigorous examination and review.  For the Other Issues, LBHI and the IRS engaged

in the normal rigorous audit negotiation process to resolve each issue.  The Settlements,

therefore, were achieved after each party's thorough review and analysis of their substantive

positions and exposure to the hazards of litigation.

96.    Based on an assessment of the hazards of litigation and consideration of

all tax attributes, LBHI's management and its tax department have concluded that the

Settlements are fair, equitable, and in the best interests of the Debtors, their estate, and their

creditors.  *See* Ciongoli Declaration ¶¶ 20-21.  In particular, with respect to the Investment

Transactions and the Bond Borrowing Transactions, LBHI took into account the risk that

unfavorable legal precedent could potentially apply to Lehman's facts.  Litigation of these

Grouped Transactions would also require development of a complex evidentiary record

comprising ten distinct transactions, requiring the estate to incur significant costs.  Similarly,

LBHI resolved the Other Issues after considering all the relevant factors, including applicable

legal precedent, the favorable and unfavorable aspects of the factual record, and the costs of

litigation.  The risks and costs associated with potentially litigating the Settlements, therefore, do not outweigh the benefits gained by resolving these issues with finality through the Settlements.

97.    In analyzing the risks of potential litigation and the benefits of the Settlements, LBHI has consulted with its primary tax controversy counsel (Bingham) and, for the Grouped Transactions, its advisory tax controversy counsel (Sutherland).  After review with such counsel, and after tax professionals in the LBHI tax department have performed their own analyses, LBHI has concluded that the Settlements are fair, equitable, and in the best interests of the Debtors, their estate, and their creditors.  Based on LBHI and Bingham's briefings and its counsel's review of LBHI's and the IRS's written submissions, the Creditors' Committee concurs that the Settlements for the two Grouped Transactions are fair, equitable, and in the best interests of the Debtors, their estate, and their creditors.

## Notice

98.    No trustee has been appointed in these chapter 11 cases.  LBHI has served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  LBHI submits that no other or further notice need be provided.

99.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, LBHI respectfully requests that the Court grant the relief
requested herein and such other and further relief as it deems just and proper.

Dated:  February 29, 2012
        New York, New York


/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time:  March 21, 2012 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  March 14, 2012 at 4:00 p.m. (Prevailing Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                                 :

| | |
|---|---|
| In re | :        Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | :        **08-13555 (JMP)** |
| | : |
| Debtors. | :        **(Jointly Administered)** |
| | : |
| | : |

-------------------------------------------------------------------x

**ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 AUTHORIZING AND APPROVING
OF CERTAIN SETTLEMENTS WITH THE INTERNAL REVENUE SERVICE**

Upon the motion, dated **February 29, 2012** (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI"), as debtor and debtor-in-possession, pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and approval

of certain settlements with the Internal Revenue Service, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered June 17, 2010 governing case management and administrative procedures

[Docket No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; and (vi) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estates and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the compromises and

settlements described in the Motion are approved; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the Settlements[17] are

approved and LBHI is duly authorized to execute, deliver, implement and fully perform any and

all obligations, instruments, documents and papers and to take any and all actions reasonably

necessary or appropriate to consummate the Settlements and perform any and all obligations

contemplated therein; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and the

terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

---

[17]    Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion.

2

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: _____, 2012
          New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

3