*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

## Lehman Brothers Holdings Inc · 425 · Neuberger Berman Inc · On 7/22/03

Filed On 7/22/03 8:22am ET · SEC File 1-15361 · Accession Number 893750-3-408

Find _____ in this entire Filing.  ▼  Show  Docs searched ▼ and  every "hit".  ▼
Help.  *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text |(anywhere), "(&)" (near).

| As Of | Filer | Filing | For/On/As Docs:Size | Issuer | Agent |
|-------|-------|--------|---------------------|--------|-------|
| 7/22/03 | Lehman Brothers Holdings Inc | 425 | 1:7 | Neuberger Berman Inc | Simpson Tha..Bartlett/FA |

**Business-Combination Transaction Communication · Rule 425**
**Filing Table of Contents**

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: 425 | Press Release | 7 | 31K |

SEC Info - Lehman Bro... Doc 2604-1 Filed 03/06/12 Entered 03/06/12 20:40:42 Exhibit 9 Exhs. A to G    Pg 2 of 41

| 425 | 3rd Page of 7 | TOC | 1st | Previous | Next | Bottom | Just 3rd |

2

entered into a definitive agreement whereby Lehman Brothers will acquire Neuberger Berman in a transaction valued, at the time of the announcement, at approximately $2.625 billion (including $42 million in in-the-money options and less $255 million in net excess cash as of June 30, 2002 and excluding 1.6 million unvested restricted shares in employee compensation plans). Under the terms of the agreement, based on yesterday's closing stock price, each Neuberger Berman shareholder would receive an implied price of $41.48 per share consisting of $9.49 in cash and 0.496 shares of Lehman Brothers common stock. The number of shares to be received by each Neuberger Berman shareholder may, however, be adjusted if the price of Lehman Brothers common stock is above $66.51 during a period shortly prior to closing, subject to a collar.

### Transaction Benefits

o  The acquisition of Neuberger Berman's Private Asset Management business will position Lehman Brothers as one of the industry's leading providers of services to high-net-worth investors

o  The addition will bring Lehman Brothers' client assets under management to over $100 billion

o  Neuberger Berman will expand Lehman Brothers' capabilities in the areas of mutual funds, wrap accounts, institutional separate accounts, and alternative investments

o  Lehman Brothers will provide Neuberger Berman's clients with access to an expanded range of investment products and services to manage risk or seek enhanced returns, including structured capital markets products, private equity, and other alternative and asset management products

o  Neuberger Berman's comprehensive portfolio of money management products will create incremental product opportunities to be distributed through Lehman Brothers' global network of institutional and high-net-worth clients

o  The combination is expected to further enhance Lehman Brothers' revenue diversification and earnings stability, raising the percentage of revenues from its Client Services Segment from 13% to 21%, on a pro forma basis for 2002

Lehman Brothers Chairman and Chief Executive Officer Richard S. Fuld, Jr. said, "Neuberger Berman is an ideal partner for Lehman Brothers in every respect. Strategically, this acquisition meets our objectives of enhancing business diversification and growing our higher margin businesses. Financially, we expect the combination to further improve our ability to generate

| 425 | 6th Page of 7 | TOC | 1st | Previous | Next | Bottom | Just 6th |

6

Neuberger Berman Inc., through its subsidiaries, is an investment advisory company with $63.7 billion in assets under management, as of June 30, 2003. For 64 years, the Company has provided clients with a broad range of investment products, services and strategies for individuals, families, and taxable and non-taxable institutions. The Company engages in wealth management services including private asset management, tax and financial planning, and personal and institutional trust services; mutual funds, institutional management and alternative investments; and professional securities services. Its Web site can be accessed at www.nb.com.

Lehman Brothers, an innovator in global finance, serves the financial needs of corporations, governments and municipalities, institutional clients, and high-net-worth individuals worldwide. Founded in 1850, Lehman Brothers maintains leadership positions in equity and fixed income sales, trading and research, investment banking, private equity, and private client services. The Firm is headquartered in New York, London, and Tokyo and operates in a network of offices around the world. For further information about Lehman Brothers' services, products, and recruitment opportunities, please visit its Web site at www.lehman.com.

# # #

This press release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. These forward-looking statements include, but are not limited to, (i) statements about the benefits of the acquisition of Neuberger Berman by Lehman Brothers, including financial and operating results, synergy benefits and any accretion to reported earnings that may be realized from the acquisition; Lehman Brothers' and Neuberger Berman's plans, objectives, expectations and intentions and other statements contained in this presentation that are not historical facts; and (ii) other statements identified by words such as "expects," "anticipates," "intends," "plans," "believes," "seeks," "estimates" or words of similar meaning. These forward-looking statements are based upon management's current beliefs or expectations and are inherently subject to significant business, economic and competitive uncertainties and contingencies and third-party approvals, many of which are beyond our control. The following factors, among others, could cause actual results to differ materially from those described in the forward-looking statements: (1) whether the stockholders of Neuberger Berman approve the proposed transaction; (2) the satisfaction of the other conditions specified in the merger agreement, including without limitation the receipt of required regulatory and other third-party approvals of the proposed transaction; (3) the ability to successfully combine the businesses of Lehman Brothers and Neuberger Berman; (4) the realization of revenue and cost synergy benefits from the proposed transaction; (5) operating costs, customer loss and business disruption following the merger, including adverse effects on relationships with employees; (6) changes in the stock market and interest rate environment that affect revenues; and (7) competition. Lehman Brothers and Neuberger Berman do not

EXHIBIT B

08-13555-mg   Doc 26047-1   Filed 03/06/12   Entered 03/06/12 12:40:42   Exhibit
Exhs. EXHIBIT B Pg 4 of 41

**PROOF OF CLAIM**

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings Inc. | Case No. 08-13555 (JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings, Inc., Et Al.
08-13555 (JMP)      0000030082

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Heidi L. Steiger
c/o Law Offices of Donald Watnick
292 Madison Avenue - 17th Floor.
New York, New York 10017
email address: dwatnick@watnicklaw.com

Telephone number: (212)213-6886     Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Heidi L. Steiger
94 Pine Hill Road
Tuxedo Park, NY 10987

Telephone number:      Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed: $ $16.8 to 30 million; see attached.**

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** STOCK OWNED BY CLAIMANT; SEE ATTACHED SUPPLEMENT AND STATEMENTS.
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 4400 (last 4 digits of acc't)
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other

   Describe: _____

   Value of Property: $_____ Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____ Basis for perfection: _____

   Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(c). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

**Amount entitled to priority:**

$ 0

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ 0**
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:
SEE ATTACHED SUPPLEMENT, WHICH IS FULLY INCORPORATED HEREIN, AND EXHS. THERETO.

**FOR COURT USE ONLY**

FILED / RECEIVED

SEP 22 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: _____    **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

_Heidi L. Steiger_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## SUPPLEMENT TO HEIDI L. STEIGER PROOF OF CLAIM

Claimant Heidi L. Steiger ("Steiger" or "Claimant") submits this proof of claim to
recover damages equal to what Debtor Lehman Brothers Holdings, Inc. ("Lehman" or "Debtor")
agreed to compensate her in exchange for her valuable agreements not to compete with Lehman
for a three-year period after the termination of her employment and to sell her Lehman stock in
annual increments of no more than 10 percent of holdings.

Steiger was a senior executive with Neuberger Berman Inc. ("Neuberger") at the time of
its acquisition by Lehman in or about October 2003. At that time, Steiger was an Executive Vice
President of Neuberger and in charge of managing Neuberger's successful and lucrative private
wealth management group. As part of her compensation from Neuberger, Steiger received
valuable shares of stock in Neuberger. At the time of Lehman's acquisition of Neuberger, these
shares of stock were worth approximately $23,489,208, and were held in both her name,
personally, and/or the name of Steiger Associates LP ("Steiger Associates"), an entity in which
she is the member. (Attached hereto as Exh. A are statements that Steiger received showing the
value of the Lehman shares owned by Steiger and Steiger Associates at the time of the Lehman
acquisition; at that time, the value of shares owned by Steiger equaled $20,225.016, the value of
shares owned by Steiger Associates equaled $3,264,192 and the total of these value shares
equaled $23,489,208.) At the time of Lehman's acquisition of Neuberger, Steiger agreed that her
stock holdings in Neuberger would be converted to shares of Lehman stock and would be subject
to certain restrictions, including, (i) that she and any entity she was affiliated with, such as
Steiger Associates, could sell only 10% of her Lehman shares per year, and (ii) that if she
engaged in certain competitive activities with Lehman, she and affiliated entities would
essentially forfeit all shares of Lehman stock.

1

In February 2004, Steiger's employment with Lehman was voluntarily terminated. At the time, her holdings of Lehman stock, individually and through Steiger Associates, based upon the prevailing publicly traded price, were worth approximately $16,800,000. Thereafter, for a three-year period, Steiger abided by her agreed upon restrictive covenants and did not engage in employment or business activities that competed with Lehman. During that period, Steiger did not pursue valuable opportunities in the investment advisory field, including opportunities from which she could have earned approximately $10 million per year. During that period, Steiger did not pursue employment and other business activities without Lehman's prior approval, and Lehman refused to provide approval to Steiger for certain valuable business activities. By virtue of Steiger abiding by these agreements, Steiger not only lost valuable income during the three-year period, but also lost valuable income during subsequent periods because her agreements with Lehman forced her to delay pursuing possible opportunities.

In view of the foregoing, Steiger is entitled to recover damages equal to the value of the consideration that Lehman agreed to provide to her in exchange for her agreements to restrict her sales of Lehman stock and to not engage in competitive activities for three years, without Lehman's prior consent, and lost earnings. These damages should be awarded based upon causes of action for breach of contract, rescission, unjust enrichment and as a matter of equity. These damages are equal to between $16,800,000 (the value of her Lehman stock holdings when her Lehman employment terminated) less the value of any shares of Lehman stock sold by Claimant thereafter, and $30,000,000 (her lost earnings for the three-year noncompete period), and will be proven at an appropriate hearing.

In the alternative, and without waiving her claims to the foregoing damages, Steiger is entitled to recover the value of the stock she owned in Lehman. As of the date of the bankruptcy

2

filing, Steiger owned 280,502 shares of Lehman. Attached hereto as Exh. B are those pages

from a brokerage statement that evidences Steiger's ownership of these Lehman shares as of

September 30, 2008. (These pages have been redacted as to information that is not relevant to

Steiger's claims in this proceeding.) Pursuant to the requirements of the Bar Date Order,

providing that all claim amounts have been based upon applicable stock prices on or about

September 15, 2008, the value of these shares was $58,157.93, as reflected in the statement,

dated September 30, 2008, contained in Exh. B. Steiger further seeks recovery of interest on

such amount, and any other damages as available under applicable law or ordered by the Court.

Notwithstanding the Bar Date Order, Claimant contends that the actual value of such shares of

stock should exceed the foregoing amount and the value of her claim, based on the shares of

stock owned, should be in excess of that amount.

Claimant reserves all rights with respect to her claims set forth herein and such

stockholding, including the right to modify, supplement or amend the claim amounts based upon

the true value of the shares as determined by the Court or otherwise, including without limitation

to the extent that the value of these shares is established to be at a per share price greater than

that used for the purpose of calculating the amount of Steiger's claim in this proof of claim.

Nothing herein is intended to waive any claims or rights by Steiger, including that the value of

these of stockholdings should exceed the applicable stock price on or about September 15, 2008,

all of which are expressly preserved.

3

EXHIBIT A

# EFFECTS OF THE NEUBERGER BERMAN ACQUISITION BY LEHMAN

## BROKERAGE ACCOUNT SUMMARY
## SUMMARY SCHEDULE (EXCLUDING FRACTIONAL SHARES SUMMARIZED BELOW)
### 02004400   HEIDI L STEIGER

| APPLICABLE PRICES & ECONOMIC CALCULATIONS | | TAX EFFECTS OF TRANSACTION - PER SHARE | | SHARES, CASH, TAXABLE INCOME & CHANGE IN TAX BASIS |
|---|---|---|---|---|

### APPLICABLE PRICES

| CLOSING DATE | 10/31/03 | A PORTION OF ECONOMIC GAINS ARE CURRENTLY TAXABLE | | SUMMARY OF YOUR INFORMATION |
|---|---|---|---|---|

GAINS AND LOSSES FOR TAX PURPOSES ARE CALCULATED LOT BY LOT

NEUBERGER PRICE 10/31/03 CLOSE — 43.35 — NEUBERGER SHARES AFTER CONVERSION — 592,500 / 280,503

LEHMAN (10 DAY AVERAGE) — 69.6270 — THE CURRENT TAXABLE GAIN IS EQUAL TO LESSER OF — NEUBERGER SHARES PRIOR TO CONVERSION — SHARES

LEHMAN "TRANSACTION CLOSING" PRICE (10/31/03 CLOSE) — 72.00 — 1-ECONOMIC GAIN ON THE CLOSING DATE OR — CASH RECEIVED — 5,622,825

2-ECONOMIC GAIN EQUALS TOTAL VALUE RECEIVED LESS COST BASIS — FROM CONVERSION — 5,622,825 / FROM CASH-IN-LIEU — 87 / TOTAL CASH RECEIVED — 5,622,912

### ECONOMIC CALCULATIONS

CALCULATIONS PER SHARE:

LEHMAN (10 DAY AVERAGE) — 69.6270

STOCK CONVERSION RATIO (SCR) — 47.4100%
VALUE OF LEHMAN STOCK RECEIVED — 33.01
CASH — 9.49
TOTAL SALES PRICE — 42.50

1-CASH RECEIVED — 9.49

2-ECONOMIC GAIN ON THE CLOSING DATE LESS
VALUE RECEIVED LESS COST BASIS
CALCULATED LOT BY LOT

TAXABLE INCOME (CALCULATED BELOW)

| | SHORT TERM TAXABLE | LONG TERM TAXABLE | TOTAL |
|---|---|---|---|
| FROM CONVERSION | 103,640 | 5,517,020 | 5,620,660 |
| FROM CASH-IN-LIEU | 82 | | 82 |
| TOTAL | 103,640 | 5,517,101 | 5,620,742 |

A-CALCULATION OF " VALUE RECEIVED"

CASH — 9.49
VALUE OF STOCK ON DAY OF CLOSING
= VALUE OF LEHMAN SHARES PER 1 SHARE NEU — 47.4100% / 72.00
LEH CLOSING PRICE
VALUE OF STOCK RECEIVED — 34.14 / 43.63

TOTAL VALUE RECEIVED

### TOTAL CHANGE IN TAX BASIS

B-A LOT BY LOT COST BASIS IS REFLECTED
IN THE DETAIL SECTION BELOW

OLD BASIS — -3,309,256
LESS CASH RECEIVED — (5,622,912)
PLUS TAXABLE INCOME — 5,620,742
NEW BASIS — 1,307,085

C-THE LOT BY LOT TAXABLE INCOME CALCULATION
IS IN THE DETAIL SECTION BELOW

| Conversion Ratio (Cash & stock) | | | | PERCENT |
|---|---|---|---|---|
| NB | 42.50 / | LB | 69.63 | 61.000% |
| Conversion Ratio (stock only) | 33.01 / | | 69.63 | 47.4100% |

## PAYMENT RECEIVED IN LIEU OF FRACTIONAL SHARES (NOT INCLUDED IN SUB-TOTAL SUMMARY BELOW)

TAX LOSSES ARE NOT CURRENTLY DEDUCTIBLE

| SECURITY DESCRIPTION | # OF SHARES | SALE PRICE PER SHARE | COST PER SHARE | SALE PROCEEDS | COST BASIS | GAIN OR LOSS | ST TAXABLE INCOME | LT TAXABLE INCOME |
|---|---|---|---|---|---|---|---|---|
| NBI | 0.83 | 69.63 | 4.30 | 57.02 | 2.26 | 54.76 | | 54.74 |
| NBI HOME SHS | 0.26 | 69.63 | 4.30 | 17.98 | 1.11 | 16.87 | | 16.87 |
| NBI RELOAD | 0.31 | 69.63 | 4.30 | 21.24 | 1.32 | 20.02 | | 20.02 |
| NBI-144 CNTRL | 0.15 | 69.63 | 4.30 | 10.03 | 0.66 | 10.03 | | 10.03 |
| TOTAL | 1.23 | | | 87.03 | 5.37 | 81.66 | | 81.66 |

This report is intended to be an internal worksheet and should not be relied upon for accuracy.
The Firm does not provide tax advice. Please consult your tax advisor.

SUB-TOTAL SUMMARY (NOT INCLUDING PAYMENTS RECEIVED FOR CASH-IN-LIEU FRACTIONAL SHARES)

EFFECTS OF THE NEUBERGER BERMAN ACQUISITION BY LEHMAN

This report is intended to be an internal worksheet and should not be relied upon for accuracy.
The Firm does not provide tax advice. Please consult your tax advisor.

EFFECTS OF 25 FRACTIONAL SHARES SOLD AT 10 DAY AVG (69.73) VS. CLOSING PRICE (72.00)
EFFECTS OF CASH-IN-LIEU FOR FRACTIONAL SHARES (AT 69.73)
TOTAL INCLUDING EFFECTS OF FRACTIONAL SHARES

# EFFECTS OF THE NEUBERGER BERMAN ACQUISITION BY LEHMAN

## BROKERAGE ACCOUNT SUMMARY
### SUMMARY SCHEDULE (EXCLUDING FRACTIONAL SHARES SUMMARIZED BELOW)
02004404  STEIGER ASSOCIATES LP

### APPLICABLE PRICES & ECONOMIC CALCULATIONS

**APPLICABLE PRICES**

| | 103/103 |
|---|---|
| CLOSING DATE | |
| NEUBERGER PRICE - 103/103 CLOSE | 43.15 |
| LEHMAN (10 DAY AVERAGE) | 69.6270 |
| LEHMAN "TRANSACTION CLOSING" PRICE (103/103 CLOSE) | 72.00 |

### ECONOMIC CALCULATIONS

LEHMAN (10 DAY AVERAGE)    69.6270

| | | PERCENT |
|---|---|---|
| STOCK CONVERSION RATIO (SCR) | 47.4100% | 61.0400% 47.4100% |
| VALUE OF LEHMAN STOCK RECEIVED | 33.01 | |
| CASH | 9.49 | |
| TOTAL SALES PRICE | 42.50 | |

| | LB | |
|---|---|---|
| Conversion Ratio (Cash & stock) | 42.50 / 69.63 | 61.0400% |
| Conversion Ratio (stock only) | 33.01 / 69.63 | 47.4100% |
| | NB | |

### TAX EFFECTS OF TRANSACTION - PER SHARE

**GAINS AND LOSSES FOR TAX PURPOSES ARE CALCULATED LOT BY LOT**

**A PORTION OF ECONOMIC GAINS ARE CURRENTLY TAXABLE**

THE CURRENT TAXABLE GAIN IS EQUAL TO LESSER OF
1-CASH RECEIVED OR
2-ECONOMIC GAIN ON THE CLOSING DATE

ECONOMIC GAIN EQUALS TOTAL VALUE RECEIVED LESS COST BASIS

**CALCULATIONS PER SHARE:**

1-CASH RECEIVED    9.49
2-ECONOMIC GAIN ON THE CLOSING DATE LESS

CALCULATED LOT BY LOT

VALUE RECEIVED LESS COST BASIS

**A—CALCULATION OF "VALUE RECEIVED"**

CASH    9.49
VALUE OF STOCK ON DAY OF CLOSING
LEHMAN SHARES PER 1 SHARE NEU    47.4100%
LEHMAN CLOSING PRICE    72.00
VALUE OF STOCK RECEIVED    34.14
TOTAL VALUE RECEIVED    43.63

**B—A LOT BY LOT COST BASIS IS REFLECTED IN THE DETAIL SECTION BELOW**

**C—THE LOT BY LOT TAXABLE INCOME CALCULATION IS IN THE DETAIL SECTION BELOW**

### SUMMARY OF YOUR INFORMATION
#### SHARES, CASH, TAXABLE INCOME & CHANGE IN TAX BASIS

**SHARES**

| | |
|---|---|
| NEUBERGER SHARES PRIOR TO CONVERSION | 95,628 |
| LEHMAN SHARES AFTER CONVERSION | 45,336 |

**CASH RECEIVED**

| | |
|---|---|
| FROM CONVERSION | 907,491 |
| FROM CASH-IN-LIEU | 20 |
| TOTAL CASH RECEIVED | 907,511 |

**TAXABLE INCOME (CALCULATED BELOW)**

| | SHORT TERM TAXABLE | LONG TERM TAXABLE | TOTAL |
|---|---|---|---|
| FROM CONVERSION | 907,491 | | 907,491 |
| FROM CASH-IN-LIEU | 19 | | 19 |
| TOTAL | 907,509 | | 907,509 |

**TOTAL CHANGE IN TAX BASIS**

| | |
|---|---|
| OLD BASIS | 194,774 |
| LESS CASH RECEIVED | (907,511) |
| PLUS TAXABLE INCOME | 907,509 |
| NEW BASIS | 194,773 |

### PAYMENT RECEIVED IN LIEU OF FRACTIONAL SHARES (NOT INCLUDED IN SUB-TOTAL SUMMARY BELOW)

**TAX LOSSES ARE NOT CURRENTLY DEDUCTIBLE**

| SECURITY DESCRIPTION | # OF SHARES | SALE PRICE PER SHARE | COST PER SHARE | SALE PROCEEDS | COST BASIS | GAIN OR LOSS | ST TAXABLE INCOME | LT TAXABLE INCOME |
|---|---|---|---|---|---|---|---|---|
| NBI FNDRS SHG | 0.29 | 69.63 | 4.30 | 19.96 | 1.23 | 18.72 | 18.72 | |
| NBI-H44 CNTRL | . | 69.63 | 4.30 | . | . | . | . | . |
| **TOTAL** | 0.29 | | | 19.96 | 1.23 | 18.72 | 18.72 | . |

This report is intended to be an internal worksheet and should not be relied upon for accuracy.
The Firm does not provide tax advice. Please consult your tax advisor.

# EFFECTS OF THE NEUBERGER BERMAN ACQUISITION BY LEHMAN

## SUB-TOTAL SUMMARY (NOT INCLUDING PAYMENTS RECEIVED FOR CASH-IN-LIEU FRACTIONAL SHARES)

### NEUBERGER - PRIOR TO CLOSE

| SECURITY DESCRIPTION | LOT QTY | UNIT COST | PURCHASE COST (TAX BASIS) | MKT VALUE | UNREALIZED GAIN OR LOSS PRIOR TO CLOSE | CASH TO BE RECEIVED |
|---|---|---|---|---|---|---|
| | A | B | C | D | E | F |
| EQUITY TOTALS | 95,626 | | 194,774 | 4,145,387 | 3,950,613 | 907,491 |

### TAX EFFECTS OF TRANSACTION

| | TAXABLE GAIN OR LOSS PRIOR TO CLOSE | CASH TO BE RECEIVED | VALUE RECEIVED | REALIZED GAIN PER SHARE | TAXABLE GAIN PER SHARE | TAXABLE INCOME | ST TAXABLE INCOME | LT TAXABLE INCOME |
|---|---|---|---|---|---|---|---|---|
| | G | H | I | J | K | L | M | N |
| EQUITY TOTALS | 3,950,613 | 907,491 | 4,172,162 | | | 907,491 | | 907,491 |

### LEHMAN - BASIS & UNREALIZED GAINS

| | NEW SHARES | NEW BASIS GAIN OR LOSS PER SHARE | COL R/COL O | UNREALIZED GAIN OR LOSS PER SHARE | NEW PURCHASE COST (TAX BASIS) | MKT VALUE | TOTAL UNREALIZED GAIN OR LOSS AFTER CLOSE |
|---|---|---|---|---|---|---|---|
| | O | P | Q | R | | S | |
| EQUITY TOTALS | 45,336 | | | | 194,774 | 3,264,213 | 3,069,438 |

## DETAILS

### NEUBERGER - PRIOR TO CLOSE

| PURCHASE DATE | SECURITY DESCRIPTION | LOT QTY | UNIT COST | PURCHASE COST (TAX BASIS) | MKT VALUE | UNREALIZED GAIN OR LOSS PRIOR TO CLOSE | CASH TO BE RECEIVED |
|---|---|---|---|---|---|---|---|
| | | A | B | C | D | E | F |
| | NBI FRDRS SHS | 85,626 | | 174,406 | 3,711,887 | 3,537,481 | 812,591 |
| | NBI-144 CNTRL | 10,000 | 2.04 | 20,368 | 433,500 | 413,132 | 94,900 |
| EQUITY TOTALS | | 95,626 | | 194,774 | 4,145,387 | 3,950,613 | 907,491 |

### TAX EFFECTS OF TRANSACTION

| PURCHASE DATE | SECURITY DESCRIPTION | TAXABLE GAIN OR LOSS PRIOR TO CLOSE | VALUE RECEIVED | REALIZED GAIN PER SHARE | TAXABLE GAIN PER SHARE | TAXABLE INCOME | ST TAXABLE INCOME | LT TAXABLE INCOME | NEW SHARES |
|---|---|---|---|---|---|---|---|---|---|
| 1/1/93 | NBI FRDRS SHS | 78,171 | 2.04 | 3,320,013 | 3,145,865 | 722,963 | 4.59 | 4.59 | 40,596 |
| 7/1/99 | NBI FRDRS SHS | 9,455 | 2.04 | 409,874 | 390,616 | 88,728 | 4.59 | 4.59 | 4,741 |
| 1/1/93 | NBI-144 CNTRL | 10,000 | 2.04 | 433,500 | 413,132 | 94,900 | | | |
| EQUITY TOTALS | | 95,626 | | 4,145,387 | 3,950,613 | 907,491 | | | 45,336 |

### LEHMAN - BASIS & UNREALIZED GAINS

| PURCHASE DATE | NEW BASIS PER SHARE | GAIN OR LOSS PER SHARE | NEW PURCHASE COST (TAX BASIS) | MKT VALUE | TOTAL UNREALIZED GAIN OR LOSS AFTER CLOSE |
|---|---|---|---|---|---|
| | 4.296 | 67.7039 | 174,406 | 2,922,881 | 2,748,465 |
| | 4.296 | 67.7039 | 20,368 | 341,352 | 320,984 |
| EQUITY TOTALS | | | 194,773 | 3,264,213 | 3,069,438 |

EFFECTS OF CASH-IN-LIEU FOR FRACTIONAL SHARES (AT 69.73)
EFFECTS OF 2.9 FRACTIONAL SHARES SOLD (AT 10 DAY AVG (69.73) VS. CLOSING PRICE (72.00))
TOTAL INCLUDING EFFECTS OF FRACTIONAL SHARES

This report is intended to be an internal worksheet and should not be relied upon for accuracy.
The Firm does not provide tax advice. Please consult your tax advisor.

EXHIBIT B

Redacted

# Client Statement

For the period 08/30/2008 to 09/30/2008

NB Account Number : 555-04400 Ridge Account : 537-04400 MKU
Base Currency   : USD
HEIDI L STEIGER

*Account Value Summary:*
Last Period

This Period

HEIDI L STEIGER
94 PINE HILL ROAD
TUXEDO PARK NY 10987-4221

THE BOLTON GROUP
Neuberger Berman, LLC
605 Third Avenue
New York, NY 10158-3698
Phone : 212-476-9000

| NEUBERGER | BERMAN |

Neuberger Berman, LLC
605 Third Avenue
New York, NY 10158-3698

Your account cleared
through the courtesy of:
Ridge Clearing &
Outsourcing Solutions, Inc.

## Table of Contents

| | Page |
|---|---|
| General Information | 1 |
| Statement Legend | 2 |
| Summary Of Your Account | 3 |
| Performance Report | 4 |
| Positions In Your Account | 5 |
| Monthly Activity | 8 |
| Interested Parties | 11 |
| Special Messages | 12 |

## Items For Your Attention

Please see the Special Messages section for important items
regarding your statement.

Page 1 of 13

Member SIPC

NEUBERGER BERMAN

Redacted

# Client Statement

**For the period 08/30/2008 to 09/30/2008**

HEIDI L STEIGER

Ridge Account : 537-04400  MKU
Base Currency : USD
NB Account Number : 555-04400

## Positions In Your Account

| Quantity | Description | Ticker/Cusip | Purchase Date | Average (1)(4)(9) Unit Cost | Total (1)(4)(9) Cost | Price | Mkt. Value | % Portfolio (12) | Annual Income (6) | Yield (10) |
|---|---|---|---|---|---|---|---|---|---|---|
| | **CASH EQUIVALENT** | | | | | | | | | |
| | **MONEY MARKET FUNDS** | | | | | | | | | |
| | | | | | | | | | | |
| | **TOTAL MONEY MARKET FUNDS** | | | | | | | | | |
| | | | | | | | | | | |
| | **TOTAL CASH EQUIVALENT** | | | | | | | | | |
| | **EQUITIES** | | | | | | | | | |
| | **FINANCIAL** | | | | | | | | | |
| 33,308 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1481 | 71,549.98 | | 7,161.22 | | | |
| 28,116 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1481 | 60,396.87 | | 6,044.94 | | | |
| 12,880 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1480 | 27,666.24 | | 2,769.20 | | | |
| 3,264 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1483 | 7,012.05 | | 701.76 | | | |
| 632 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1480 | 1,357.54 | | 135.88 | | | |
| 550 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1480 | 1,181.40 | | 118.25 | | | |
| 250 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1993 | 2.1480 | 537.00 | | 53.75 | | | |
| 1,778 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1997 | 0.8597 | 1,528.61 | | 382.27 | | | |
| 3,450 | LEHMAN BROTHERS HOLDINGS INC | | 07/01/1999 | 2.1480 | 7,410.60 | | 741.75 | | | |
| 1,048 | LEHMAN BROTHERS HOLDINGS INC | | 01/13/2006 | 70.2250 | 73,595.80 | | 225.32 | | | |
| 732 | LEHMAN BROTHERS HOLDINGS INC | | 01/31/2006 | 70.2250 | 51,404.70 | | 157.38 | | | |
| 458 | LEHMAN BROTHERS HOLDINGS INC | | 01/31/2006 | 70.2250 | 32,163.05 | | 98.47 | | | |
| 86,466 | **POSITION TOTAL** | LEHMQ | | 3.8837 | 335,603.84 | 0.2150 | 18,590.19 | 23.84 | 0.00 | 0.00 |

# Client Statement

For the period 08/30/2008 to 09/30/2008

HEIDI L STEIGER

*Redacted*

NEUBERGER | BERMAN

Ridge Account : 537-04400  MKU
Base Currency : USD
NB Account Number : 355-04400

## Positions In Your Account

| Quantity | Description | Ticker/Cusip | Purchase Date | Average (7)(4)(9) Unit Cost | Total (7)(4)(9) Cost | Price | Mkt. Value | (7) % Portfolio | Annual (8) Income | (10) Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| **EQUITIES (Continued)** | | | | | | | | | | |
| | **UTILITIES** | | | | | | | | | |
| | **TOTAL FINANCIAL** | | | | 335,803.84 | | 18,590.19 | 23.84 | 0.00 | 0.00 |
| | **TOTAL UTILITIES** | | | | | | | | | |
| | **TOTAL EQUITIES** | | | | | | | | | |
| | **NON-DISCRETIONARY** | | | | | | | | | |
| | **FINANCIAL** | | | | | | | | | |
| 36,868 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1997 | 0.8597 | 31,696.80 | | 7,926.62 | | | |
| 30,290 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1997 | 0.8597 | 26,041.45 | | 6,512.35 | | | |
| 28,452 | LEHMAN BROTHERS HOLDINGS INC | | 01/01/1998 | 0.8925 | 25,392.00 | | 6,117.18 | | | |
| 948 | LEHMAN BROTHERS HOLDINGS INC | | 06/20/1998 | 0.8819 | 836.00 | | 203.82 | | | |
| 7,586 | LEHMAN BROTHERS HOLDINGS INC | | 07/20/1998 | 0.8808 | 6,682.00 | | 1,630.99 | | | |
| 17,070 | LEHMAN BROTHERS HOLDINGS INC | | 04/01/1999 | 0.8623 | 14,720.00 | | 3,670.05 | | | |
| 7,348 | LEHMAN BROTHERS HOLDINGS INC | | 06/20/1999 | 0.8534 | 6,270.58 | | 1,579.82 | | | |
| 55,474 | LEHMAN BROTHERS HOLDINGS INC | | 07/01/1999 | 2.1478 | 119,147.09 | | 11,926.91 | | | |
| 184,036 | **POSITION TOTAL** | LEHMQ | | 1.2540 | 230,785.92 | 0.2150 | 39,567.74 | 50.74 | 0.00 | 0.00 |
| | **TOTAL FINANCIAL** | | | | 230,785.92 | | 39,567.74 | 50.74 | 0.00 | 0.00 |
| | **TOTAL NON-DISCRETIONARY** | | | | 230,785.92 | | 39,567.74 | 50.74 | 0.00 | 0.00 |



**ADMIT ONE**

7370385

**H A N D   D E L I V E R Y**

FILED / RECEIVED

SEP 22 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY:

DATE

12:49

TIME

EXHIBIT C

08-13555-mg    Doc 26047-1    Filed 03/06/12    Entered 03/06/12 12:40:42    Exhibit
Exhs. A to G    Pg 18 of 41

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>Case No. 08-13555 (JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000034265

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>Steiger Associates LP<br>c/o Law Offices of Donald Watnick<br>292 Madison Avenue - 17th Floor<br>New York, New York 10017<br>email address: dwatnick@watnicklaw.com<br><br>Telephone number: (212)213-6886    Email Address: dwatnick@watnicklaw.co | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
|---|---|

| Name and address where payment should be sent (if different from above)<br>Heidi L. Steiger<br>94 Pine Hill Road<br>Tuxedo, NY 10987<br><br>Telephone number: _____    Email Address: _____ | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

1. **Amount of Claim as of Date Case Filed:** $ 3,264,192 ; see attached.
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☐ Check this box if all or part of your claim is based on a Derivative Contract.*
   ☐ Check this box if all or part of your claim is based on a Guarantee.*
**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** STOCK OWNED BY CLAIMANT; SEE ATTACHED SUPPLEMENT AND STATEMENTS.
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 7597 (last 4 digits of acct no.)
   3a. **Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$ 0

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ 0 _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:
SEE ATTACHED SUPPLEMENT, WHICH IS FULLY INCORPORATED HEREIN, AND EXHS. THERETO.

Date: _____    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Heidi L. Steiger* For Steiger Associates LP

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## SUPPLEMENT TO STEIGER ASSOCIATES LP PROOF OF CLAIM

The basis for the proof of claim of Steiger Associates LP ("Steiger Associates" or

"Claimant") is stock it owned in Lehman Brothers Holdings, Inc. ("Lehman" or "Debtor"). As

of the date of the bankruptcy filing, Steiger LP owned 40,590 shares of Lehman. Attached

hereto as Exh. A are pages from a brokerage statement that evidences Steiger Associates'

ownership of these Lehman shares as of September 30, 2008. (This statement has been redacted

as to information that is not relevant to Steiger Associates' claims in this proceeding.)   Pursuant

to the requirements of the Bar Date Order, providing that all claim amounts have been based

upon applicable stock prices on or about September 15, 2008, the value of these shares was

$8,726.85, as reflected in the statement, dated September 30, 2008, contained in Exh. A.  Steiger

Associates further seeks recovery of interest on such amount, and any other damages as available

under applicable law or ordered by the Court.  Notwithstanding the Bar Date Order, Claimant

contends that the actual value of such shares of stock should exceed the foregoing amount and

the value of its claim, based on the shares of stock owned, should  be in excess of that amount.

Without limiting the foregoing, Claimant also seeks to recover against Debtor based upon

Claimant being a third party beneficiary of an agreement between Heidi Steiger, Claimant's

partner/member, and Debtor.  As set forth with more particularity in the annexed proof of claim

of Steiger (Exh. B hereto), Claimant's holdings in Lehman were converted from stock owned by

claimant in Neuberger Berman Inc. ("Neuberger").  Such Neuberger stockholdings were

converted to Lehman stockholdings at the time that Lehman acquired Neuberger in or about

October 2003.  At that time, the value of such stockholdings was $3,264,192. (Attached hereto

as Exh. C is a statement showing the value of these stockholdings at that time.)  At the time of

1

the Lehman acquisition of Neuberger, Steiger agreed that her stock holdings in Neuberger, both personal holdings and holdings in her affiliates such as Claimant, would be converted to shares of Lehman stock and would be subject to certain restrictions, including, (i) that she and any entity she was affiliated with, such as Steiger Associates, could sell only 10% of her Lehman shares per year, and (ii) that if she engaged in certain competitive activities with Lehman, she and affiliated entities would essentially forfeit all shares of Lehman stock. Steiger performed her obligations under her foregoing agreements with Lehman. In view of the foregoing, Claimant is entitled to recover damages equal to the value of the consideration that Lehman agreed to provide to Claimant in exchange for Steiger's agreements to restrict her sales of Lehman stock and to not engage in competitive activities for three years, without Lehman's prior consent, and lost earnings. These damages should be awarded based upon causes of action for breach of third party beneficiary contract, rescission, unjust enrichment and as a matter of equity. These damages are equal to the value of Claimant's holdings at the time of the conversion to Lehman shares of stock or approximately $3,264,192, less the value of any shares of stock sold by Claimant thereafter, and will be proven at an appropriate hearing.

Claimant reserves all rights with respect to its claims set forth herein and such stockholding, including the right to modify, supplement or amend the claim amounts based upon the true value of the shares as determined by the Court or otherwise, including without limitation to the extent that the value of these shares is established to be at a per share price greater than that used for the purpose of calculating the amount of Claimant's claim in this proof of claim. Nothing herein is intended to waive any claims or rights by Claimant, including that the value of these of stockholdings should exceed the applicable stock price on or about September 15, 2008, all of which are expressly preserved.

2

Redacted

# Client Statement

For the period 08/30/2008 to 09/30/2008

NB Account Number : 594-04404 Ridge Account : 541-17597 M5Z
Base Currency        : USD
STEIGER ASSOCIATES LP
LB TR CO OF DELAWARE NOMINEE

RICHARD LOOS
Phone : 302-830-4351

This Period

Last Period

*Account Value Summary:*

**NEUBERGER | BERMAN**

Neuberger Berman, LLC
605 Third Avenue
New York, NY 10158-3698

Your account cleared
through the courtesy of:
Ridge Clearing &
Outsourcing Solutions, Inc.

Your account is overseen by
Lehman Brothers
Trust Company of Delaware

STEIGER ASSOCIATES LP
LB TR CO OF DELAWARE NOMINEE
MELLON BANK CENTER
919 MARKET STREET - STE #506
WILMINGTON DE  19801-3065

## Table Of Contents

| | |
|---|---|
| General Information | 1 |
| Statement Legend | 2 |
| Summary Of Your Account | 3 |
| Positions In Your Account | 4 |
| Monthly Activity | 5 |
| Interested Parties | 6 |
| Special Messages | 7 |

## Items For Your Attention

Please see the Special Messages section for important items
regarding your statement.

Member SIPC

P-0000000-T

Redacted

NEUBERGER | BERMAN

# Client Statement

**For the period 08/30/2008 to 09/30/2008**

STEIGER ASSOCIATES LP
LB TR CO OF DELAWARE NOMINEE

Ridge Account : 541-17597  M5Z
Base Currency : US*
NB Account Number : 594-0441

## Positions In Your Account

| Quantity | Description | Ticker/Cusip | Average(1)(4)(9) Unit Cost | Total(1)(4)(9) Cost | Price | Mkt. Value | (12) % Portfolio | Annual (8) Income | (10) Yield |
|---|---|---|---|---|---|---|---|---|---|
| **CASH EQUIVALENT** | | | | | | | | | |
| **TOTAL CASH EQUIVALENT** | | | | | | | | | |
| **EQUITIES** | | | | | | | | | |
| **NON-DISCRETIONARY** | | | | | | | | | |
| 37,940 | LEHMAN BROTHERS HOLDINGS INC | LEHMQ | 0.0100 | 0.01 | 0.2150 | 8,157.10 | 30.05 | 0.00 | 0.00 |
| **TOTAL EQUITIES** | | | | **0.01** | | **8,157.10** | **30.05** | **0.00** | **0.00** |
| **NON-DISCRETIONARY** | | | | | | | | | |
| 2,650 | LEHMAN BROTHERS HOLDINGS INC | LEHMQ | 2.1481 | 5,692.59 | 0.2150 | 569.75 | 2.10 | 0.00 | 0.00 |
| **TOTAL NON-DISCRETIONARY** | | | | **5,692.59** | | **569.75** | **2.10** | **0.00** | **0.00** |
| **GRAND TOTAL (5)** | | | | | | | | | |



**H
A
N
D**

**D
E
L
I
V
E
R
Y**

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY: _____

DATE _____

12:49

TIME _____

**EXHIBIT** D

As Filed Pursuant to Rule 424(b)(4)
Reg. No. 333-84525

[LOGO]

7,250,000 Shares

# NEUBERGER BERMAN INC.

### Common Stock

This is an initial public offering of shares of common stock of Neuberger Berman Inc. This prospectus relates to an offering of 6,250,000 shares in the **United States. In addition, 1,000,000 shares are being offered outside the United States in an international offering.**

Neuberger Berman is offering 3,030,303 of the shares to be sold in the offerings. The selling stockholders identified in this prospectus are offering an additional 4,219,697 shares. Neuberger Berman will not receive any of the proceeds from the sale of the shares being sold by the selling stockholders.

Neuberger Berman will list the common stock on the New York Stock Exchange under the symbol "NEU".

**SEE "RISK FACTORS" BEGINNING ON PAGE 10 TO READ ABOUT FACTORS YOU SHOULD**

**CONSIDER BEFORE BUYING SHARES OF THE COMMON STOCK.**

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER REGULATORY BODY HAS APPROVED OR DISAPPROVED OF THESE SECURITIES OR PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

|  | Per Share | Total |
|---|---|---|
| Initial public offering price | $ 32.00 | $ 232,000,000 |
| Underwriting discount | $ 2.08 | $ 15,080,000 |
| Proceeds, before expenses, to Neuberger Berman | $ 29.92 | $ 90,666,666 |
| Proceeds, before expenses, to the selling stockholders | $ 29.92 | $ 126,253,334 |

To the extent that the underwriters sell more than 7,250,000 shares of common stock, the underwriters have the option to purchase up to an additional 1,087,500 from the selling stockholders at the initial public offering price less the underwriting discount.

The underwriters expect to deliver the shares in New York, New York on October 13, 1999.

GOLDMAN, SACHS & CO.

MERRILL LYNCH & CO.

MORGAN STANLEY DEAN WITTER

SALOMON SMITH BARNEY

BEAR, STEARNS & CO. INC.                    CIBC WORLD MARKETS

DONALDSON, LUFKIN & JENRETTE                SCHRODER & CO. INC.

**SECURITY OWNERSHIP BY MANAGEMENT**
**AND PRINCIPAL STOCKHOLDERS**

The following table sets forth information regarding the beneficial ownership of our common stock by:

- each director of Neuberger Berman and each of our executive officers named in the summary compensation table on the preceding page;

- all directors and executive officers of Neuberger Berman as a group; and

- each person owning beneficially more than 5% of the outstanding shares of the common stock.

Beneficial ownership is shown as of the date of this prospectus:

- after giving effect to the incorporation transactions and the initial contribution of shares of common stock to our defined contribution plan, but without giving effect to the offerings; and

- as adjusted to reflect the sale of the shares of common stock in the offerings.

No executive officer of Neuberger Berman is selling shares of common stock in the offerings.

For purposes of this table, we have assumed that 46,991,617 shares of common stock are outstanding prior to the completion of the offerings and 50,021,920 shares of common stock are outstanding after the offerings, assuming that the underwriters' options to purchase additional shares are not exercised. The shares of common stock assumed to be outstanding prior to the offerings includes 42,727,273 shares to be issued in the incorporation transactions and 4,264,344 shares that we will contribute to our defined contribution plan at, or shortly before, the completion of the offerings.

For purposes of this table, "beneficial ownership" is determined in accordance with Rule 13d-3 under the Securities Exchange Act of 1934, pursuant to which a person or group of persons is deemed to have "beneficial ownership" of any shares of common stock that such person has the right to acquire within 60 days after the date of this prospectus. For purposes of computing the percentage of outstanding shares of common stock held by each person or group of persons named above, any shares which such person or persons has the right to acquire within 60 days after the date of this prospectus are deemed to be outstanding but are not deemed to be outstanding for the purpose of computing the percentage ownership of any other person.

| NAME OF BENEFICIAL OWNER | SHARES BENEFICIALLY OWNED PRIOR TO THE OFFERINGS (1) | | SHARES BENEFICIALLY OWNED AFTER THE OFFERINGS (1) | |
|---|---|---|---|---|
| | NUMBER | PERCENT | NUMBER | PERCENT |
| Lawrence Zicklin (2)................ | 1,590,349 | 3.4% | 1,590,349 | 3.2% |
| Richard A. Cantor (3).............. | 1,474,731 | 3.1% | 1,474,731 | 2.9% |
| Jeffrey B. Lane................... | 536,107 | 1.1% | 536,107 | 1.1% |
| Michael M. Kassen (4)............. | 1,198,347 | 2.6% | 1,198,347 | 2.4% |
| Robert Matza..................... | 321,464 | * | 321,464 | * |
| Marvin C. Schwartz (5)............ | 5,666,219 | 12.1% | 4,937,411 | 9.9% |
| Heidi L. Schneider (6)............ | 609,977 | 1.3% | 609,977 | 1.2% |
| Peter E. Sundman (7).............. | 324,777 | * | 324,777 | * |
| All directors and executive officers as a group (8 persons)........... | 11,721,971 | 25.0% | 10,993,163 | 22.0% |
| Management Stockholders (8)........ | 40,018,653 | 85.2% | 36,141,521 | 72.3% |

http://www.nasdaq.com/markets/ipos/filing.ashx?filingid=1005749                    2/20/2012

NEUBERGER BERMAN INC. 0047 Form: 424B4 Received: 10/07/1999 14:57:18) Page 73 of 105

08-13555-jmp Doc 26047 Filed 02/06/12 Entered 02/06/12 12:40:42 Exhibit
Exhs. A to G Pg 26 of 41

_____

* Less than 1%.

(1) Does not include 10,000,000 shares of common stock issuable under our long-term incentive plan and 200,000 shares of common stock issuable under our directors stock incentive plan. These plans are described under "Management--Compensation of Directors--Directors Stock Incentive Plan" and "--Executive Compensation--Long-Term Incentive Plan".

(2) Includes 768,525 shares held by Zicklin Associates, L.P., with respect to which Mr. Zicklin has sole voting and investment control as the sole stockholder of its sole general partner.

(3) Includes 1,187,756 shares held by Cantor Associates, L.P., with respect to which Mr. Cantor has sole voting and investment control as the sole stockholder of its sole general partner.

(4) Includes 337,804 shares held by Kassen Associates, L.P., with respect to which Mr. Kassen has sole voting and investment control as the sole stockholder of its sole general partner.

(5) Includes (a) prior to the offering, 2,281,801 shares and, after the offering, 1,917,397 shares held by Schwartz CS Associates, L.P., with respect to which Mr. Schwartz has sole voting and investment control as the sole stockholder of its sole general partner, and (b) prior to the offering, 2,281,801 shares and, after the offering, 1,917,397 shares held by Schwartz ES Associates, L.P., with respect to which Mr. Schwartz has sole voting and investment control as the sole stockholder of its sole general partner.

(6) Includes 65,340 shares held by Steiger Associates, L.P., with respect to which Mrs. Schneider has sole voting and investment control as the sole stockholder of its sole general partner.

(7) Includes 130,788 shares held by Sundman Associates, L.P., with respect to which Mr. Sundman has sole voting and investment control as the sole stockholder of its sole general partner.

(8) All of the Neuberger Berman principals and their affiliated family limited partnerships and trusts are parties to the Stockholders Agreement, which will become effective upon consummation of the incorporation transactions, pursuant to which each continuing principal and affiliate has agreed to vote his, her or its shares in accordance with a majority of the shares held by all of the principals and affiliates voting in a preliminary vote. See "Certain Relationships and Related Transactions--Stockholders Agreement--Voting". The business address of each of the parties to the Stockholders Agreement is (a) in the case of each principal, 605 Third Avenue, New York, New York 10158, and (b) in the case of each of the affiliates, c/o Neuberger Berman Trust Company of Delaware, 919 Market Street, Suite 506, Wilmington, Delaware 19801.

72

## CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS

**THE EXCHANGE**

Our business is conducted by Neuberger Berman, LLC and Neuberger Berman Management Inc., which are wholly owned by the Neuberger Berman principals. The principals have formed Neuberger Berman Inc. to be a holding company for Neuberger Berman, LLC and Neuberger Berman Management Inc. and allow for the issuance of the common stock in the offerings.

Neuberger Berman Inc. was organized as a Delaware corporation on August 13, 1998 and has had no business operations. Prior to the completion of the offerings, the Neuberger Berman principals and Neuberger Berman Inc. will engage in a series of transactions (the "Exchange") in which:

- the principals will contribute all of their limited liability company interests in Neuberger Berman, LLC to Neuberger Berman Inc. in exchange for shares of common stock; and

- a subsidiary formed by Neuberger Berman Inc. will merge into Neuberger Berman Management Inc., with Neuberger Berman Management Inc. surviving the merger, and the principals will receive shares of common stock of Neuberger Berman Inc. in exchange for their Neuberger Berman Management Inc. shares.

Immediately following the Exchange, the Neuberger Berman principals will be our sole stockholders. Neuberger Berman will thereafter operate as a holding company and will indirectly own all the entities that are presently owned by either Neuberger Berman, LLC or Neuberger Berman Management Inc. The Exchange will not result in a change of control of either Neuberger Berman, LLC or Neuberger Berman Management Inc.

Neuberger Berman, LLC, a Delaware limited liability company, is an investment adviser and a securities broker-dealer. On November 1, 1996, Neuberger & Berman, L.P., a New York limited partnership, converted to a Delaware limited liability company and, immediately thereafter, ceased doing business as a broker-dealer and investment adviser and was dissolved. Neuberger Berman, LLC, the successor limited liability company, was organized under the name Neuberger & Berman, LLC. As a result of the conversion, Neuberger Berman, LLC assumed all of Neuberger & Berman, L.P.'s existing obligations, assets and liabilities and succeeded to all of its existing rights. The conversion did not result in any change in the ownership, management, or business operations of the firm, or in any change of control. Neuberger & Berman, LLC changed its name to Neuberger Berman, LLC on November 16, 1998. Neuberger & Berman Management Incorporated changed its name to Neuberger Berman Management Inc. on November 9, 1998.

The Neuberger Berman principals have agreed to indemnify us for taxes imposed on or with respect to Neuberger Berman, LLC or Neuberger Berman Management Inc. for periods prior to the completion of the Exchange. We have agreed to pay to the principals any tax refunds received in respect of these prior periods.

**STOCKHOLDERS AGREEMENT**

The Neuberger Berman principals, certain family limited partnerships and trusts formed by them (their "Family Affiliates") and Neuberger Berman Inc. have entered into a Stockholders Agreement that will become effective upon the completion of the Exchange. The Stockholders Agreement will govern transfers and voting of the shares of common stock received by the principals and Family Affiliates in the Exchange (the "Founder Shares").

### TRANSFER RESTRICTIONS

The Stockholders Agreement prohibits any transfers of Founder Shares by the principals or their Family Affiliates prior to January 1, 2002 except in limited circumstances noted below. Thereafter, the principals and their Family

73

Affiliates may transfer their Founder Shares only as follows:

(a) (1) In each calendar year beginning on January 1, 2002, each principal and his or her Family Affiliates may transfer in the aggregate up to 10% of the aggregate number of Founder Shares initially received by them in the Exchange (plus, in 2002, a number of Founder Shares equal to the amount, if any, by which 15% of the aggregate number of Founder Shares initially received by them in the Exchange exceeds the aggregate number of Founder Shares sold by them in the offerings).

(2) Founder Shares eligible to be transferred in any calendar year but not transferred may be transferred at any time thereafter without restriction.

(3) Notwithstanding (1) and (2) above, during the three years following the date on which a principal's employment with Neuberger Berman terminates (the "Employment Termination Date"), that principal and his or her Family Affiliates may not transfer any Founder Shares other than their Founder Shares that were eligible to be transferred but were not transferred before the Employment Termination Date.

(b) Notwithstanding paragraph (a) above, each principal and his or her Family Affiliates must at all times continue to hold at least 30% of the aggregate number of Founder Shares initially received by them in the Exchange until the third anniversary of the principal's Employment Termination Date.

Notwithstanding paragraphs (a) and (b) above, if a principal's Employment Termination Date occurs prior to January 1, 2003 for any reason other than death, disability or termination by Neuberger Berman without cause, that principal and his or her Family Affiliates may not transfer any Founder Shares prior to January 1, 2007. On and after January 1, 2007, that principal and his or her Family Affiliates may in any calendar year transfer in the aggregate a maximum of 20% of the aggregate amount of Founder Shares held by them on the principal's Employment Termination Date. The number of Founder Shares eligible for transfer in any one calendar year but not transferred may be added to the number otherwise eligible to be transferred in any future year.

Notwithstanding the foregoing, if a principal's employment with Neuberger Berman terminates due to disability or death, the principal (or his or her estate) and his or her Family Affiliates may transfer their Founder Shares without restriction. In addition, our board of directors or a body designated by our board of directors has the authority to make exceptions to any or all of the transfer restrictions contained in the Stockholders Agreement and may permit or cause other persons to become party to the agreement.

## VOTING

Prior to any vote of our stockholders, the Stockholders Agreement provides for a separate, preliminary vote of the principals and their Family Affiliates (and any additional stockholders who have agreed with us to vote their shares of common stock in accordance with the Stockholders Agreement) on each matter upon which a vote of the stockholders is proposed to be taken. In this preliminary vote, the participating stockholders may vote all of the shares currently owned by them in such manner as each may determine in his, her or its sole discretion. Each must then vote all of their Founder Shares in accordance with the vote of the majority of the shares of common stock present (in person or by proxy) and voting in such preliminary vote.

Each principal and Family Affiliate will grant to our secretary (or other officer designated by the secretary) an irrevocable proxy to vote his, her or its Founder Shares in order to give effect to the voting provisions. The right and obligation of a principal and his or her Family Affiliates to vote in accordance with the Stockholders Agreement will terminate on that principal's Employment Termination Date.

74

## CALL RIGHT

The Stockholders Agreement provides that we may repurchase the Founder Shares of a principal and his or her Family Affiliates if the principal engages in "Harmful Activity" at any time during his or her employment or during the first three years after leaving. "Harmful Activity" includes:

- soliciting or accepting business from any person or institution who was a client or prospective client of Neuberger Berman during the year prior to the departure of the principal (or, in the case of an action taken during employment, during the prior year);

- soliciting or accepting business from any financial intermediary (or any employee of a financial intermediary) with which the principal had business contact during the year prior to his or her departure (or, in the case of an action taken during employment, during the prior year);

- employing or soliciting for employment employees or consultants of Neuberger Berman;

- using (other than in seeking new employment) the investment performance record of any mutual fund or client account with which the principal was associated during his or her employment;

- using or disclosing confidential information of Neuberger Berman; and

- publicly disparaging our firm or our principals.

If our board of directors or a body designated by our board of directors determines in good faith that a principal has engaged in Harmful Activity, we may purchase from that principal the excess of the number of Founder Shares received by the principal and his or her Family Affiliates in the Exchange over the number of Founder Shares that the principal and his or her Family Affiliates could have transferred prior to the date on which the principal initially engaged in Harmful Activity. If a principal does not hold sufficient Founder Shares, we may purchase Founder Shares from his or her Family Affiliates pro rata in accordance with their then current holdings. The purchase price of any Founder Shares we purchase in this manner will be $2.00 per share.

## TRANSFER ADMINISTRATION AND DISTRIBUTIONS

The certificates representing the Founder Shares beneficially owned by each principal and Family Affiliate will be registered in the name of Neuberger Berman or our nominee and held in our custody at our principal office. During any period in which we are in dispute with any principal regarding his or her obligations under the Stockholders Agreement, the Exchange Agreement or the Non-Competition Agreement, we will not release or transfer any Founder Shares of that principal or his or her Family Affiliates or distribute to them any dividends or distributions received in respect of their Founder Shares.

## AMENDMENTS AND TERM

The Stockholders Agreement may be amended by our board of directors or a body designated by our board of directors, provided that any amendment that materially adversely affects the principals or Family Affiliates (or any group of principals or Family Affiliates) (other than any amendment to cure any ambiguity in the agreement) must be approved by the principals and Family Affiliates holding a majority of the Founder Shares then subject to the agreement. The agreement will terminate on the earlier to occur of (i) the first date on which there are no principals or Family Affiliates who remain bound by its terms and (ii) the date on which we agree with principals and Family Affiliates who are then bound by its terms to terminate the agreement.

## NON-COMPETITION AGREEMENT

The Neuberger Berman principals have also entered into a Non-Competition Agreement that will become effective upon the closing of the Exchange. Each principal has agreed:

- not to compete with us while they are employed by us or during the three years following their Employment Termination Date; and

75

*SEC Info*  Home  Search  My Interests  Help  User Info  **Donald Watnick**

## Lehman Brothers Holdings Inc · 425 · Neuberger Berman Inc · On 7/22/03

Filed On 7/22/03 10:55am ET  ·  SEC File 1-15361  ·  Accession Number 893750-3-409

| Find | in this entire Filing. | ▾ Show Docs searched ▾ and every "hit". ▾ |

Help.  *Wildcards:* ? (any letter). * (many). *Logic:* for Docs: & (and). | (or); for Text: | (anywhere). "(&)" (near).

| As Of | Filer | Filing | For/On/As | Docs:Size | Issuer | Agent |
|-------|-------|--------|-----------|-----------|--------|-------|
| 7/22/03 | Lehman Brothers Holdings Inc | 425 | | 1:7 | Neuberger Berman Inc | Simpson Tha..Bartlett/FA |

---

### Business-Combination Transaction Communication · Rule 425
### Filing Table of Contents

| Document/Exhibit | | Description | Pages | Size |
|------------------|---|-------------|-------|------|
| 1: 425 | Q&A | | 7 | 29K |

3

o   Lehman Brothers will provide Neuberger Berman's clients with access
    to an expanded range of investment products and services to manage
    risk or seek enhanced returns, including structured capital markets
    products, private equity, and other alternative and asset management
    products

o   Neuberger Berman's comprehensive portfolio of money management
    products will create incremental product opportunities to be
    distributed through Lehman Brothers' global network of institutional
    and high-net-worth clients

o   The combination is expected to further enhance Lehman Brothers'
    revenue diversification and earnings stability, raising the
    percentage of revenues from its Client Services Segment from 13% to
    21%, on a pro forma basis for 2002

2.    Terms of the Transaction

o   Based on its closing price as of July 21, 2003, Lehman Brothers will
    be paying an implied price of $41.48 per share for the 68.4 million
    primary shares of Neuberger Berman (excluding 1.6 million unvested
    restricted shares in employee compensation plans)

o   Pursuant to the definitive agreement, each share of Neuberger Berman
    will be exchanged for $9.49 in cash and a fractional share of Lehman
    Brothers common stock based on the average trading price of Lehman
    Brothers common stock during a period of time shortly prior to
    closing. The exchange ratio would be fixed at 0.496 if the average
    stock price during that period were $66.51 or less. If the average
    stock price were greater than $66.51 but not more than $73.00, the
    exchange ratio would vary so that Neuberger Berman shareholders
    would receive total per share consideration of $42.50. Above $73.00,
    the exchange ratio mechanics vary subject to a minimum exchange
    ratio of 0.411 if the average stock price were above $90.41

What is the value of the transaction?

o   The enterprise value of the transaction is $2.625 billion-
    consisting of the $41.48 for each primary share, plus $42 million in
    in-the-money options and less $255 million in net excess cash as of
    June 30, 2003, and excluding 1.6 million unvested restricted shares
    in employee compensation plans

When will the transaction close?

o   The transaction is expected to close by the end of Lehman Brothers'
    fiscal fourth quarter

How will you be able to retain employees? Is there an adequate retention pool?

o   As part of the overall transaction, the 32 active Neuberger Berman
    partners who lead most of the wealth management teams will convert
    their Neuberger Berman stock,

4

including approximately $941 million in shares subject to transfer restrictions, into Lehman Brothers stock and cash on the same basis as the public shareholders. All Lehman Brothers stock received in exchange for these restricted shares will continue to be subject to similar transfer restrictions

o   The 32 active Neuberger Berman founders are all subject to non-compete and non-solicitation agreements

o   Additionally, Lehman Brothers will establish a $120 million retention pool for key producers, subject to vesting

o   Finally, 1.6 million shares of restricted Neuberger stock with a value of $68 million will be exchanged for Lehman Brothers restricted stock and restricted cash, subject to continued vesting

3.   Neuberger Berman

Who is Neuberger Berman?

o   Founded in 1939 by Roy Neuberger

o   One of the most respected and successful private wealth and asset management firms in the industry

o   Became a public company in 1999 (NYSE: NEU)

o   Headquartered in New York, Neuberger Berman has over 1,200 employees in 19 offices located in 17 cities in the U.S.

o   100 portfolio managers with average industry experience of over 20 years

What are its businesses?

o   Private Asset Management, which manages approximately $24 billion in assets for high-net-worth clients throughout the U.S. Provides personalized money management, trust, advisory, and wealth planning services

o   Mutual Fund and Institutional Business, which manages $39.7 billion in assets

o   Professional Securities Services, which offers prime brokerage and correspondent clearing, securities lending, prime brokerage, and other custodial services

4.   Lehman Brothers' Client Services Segment's Wealth and Asset Management Division

What is Lehman Brothers' Wealth and Asset Management Division?

SEC08n13555man BD0do2G0471ilgs IFiled-B3/06/1722/EhterPe203/06/12 12:40:42 PaExhibit86
Exhs. A to G    Pg 33 of 41

EXHIBIT    F

SEC Info    Home    Search    My Interests    Help    Sign In    *Please Sign In*

# Lehman Brothers Holdings Inc · 8-K · For 7/22/03 · EX-2.1

**Filed On 7/22/03 8:21am ET · SEC File 1-09466 · Accession Number 893750-3-407**

| Find | | in this entire Filing. ▾ Show Docs searched ▾ and every "hit". ▾ |
| --- | --- | --- |

Help.   *Wildcards:* ? (any letter), * (many).  *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | For/On/As Docs:Size | Issuer | Agent |
| --- | --- | --- | --- | --- | --- |
| 7/22/03 | Lehman Brothers Holdings Inc | 8-K:(5,7} | 7/22/03    4:106 | | Simpson Tha...Bartlett/FA |

---

## Current Report · Form 8-K
### Filing Table of Contents

| | Document/Exhibit | Description | Pages | Size |
| --- | --- | --- | --- | --- |
| 1: | 8-K | Lehman Brothers Holdings Inc. | 5 | 17K |
| 2: | EX-2.1 | Agreement & Plan of Merger | 83 | 443K |
| 3: | EX-2.2 | Voting Agreement | 13 | 57K |
| 4: | EX-99.1 | Press Release | 5 | 25K |

---

### EX-2.1 · Agreement & Plan of Merger
#### Exhibit Table of Contents

| Page | (sequential) | (alphabetical) | Top |
| --- | --- | --- | --- |
| 1 | 1st Page - Filing Submission | • Alternative Formats (Word, et al.) | |
| " | Neuberger Berman Inc | • Merger, The | |
| 11 | The Merger | • Neuberger Berman Inc | |
| " | 1.1. The Merger | • The Merger | |
| " | 1.2. Closing | • 1.10. Adjustment to Merger Consideration | |
| " | 1.3. Effective Time | • 1.1. The Merger | |
| " | 1.4. Effects of the Merger | • 1.2. Closing | |
| 12 | 1.5. Certificate of Incorporation | • 1.3. Effective Time | |
| " | 1.6. By-Laws | • 1.4. Effects of the Merger | |
| " | 1.7. Officers and Directors of Surviving Corporation | • 1.5. Certificate of Incorporation | |
| " | 1.8. Effect on Capital Stock | • 1.6. By-Laws | |
| 14 | 1.9. Treatment of Options and Other Stock Awards | • 1.7. Officers and Directors of Surviving Corporation | |
| 16 | 1.10. Adjustment to Merger Consideration | • 1.8. Effect on Capital Stock | |
| 18 | 2.1. Exchange Fund | • 1.9. Treatment of Options and Other Stock Awards | |
| " | 2.2. Exchange Procedures | • 2.10. Withholding Rights | |
| 19 | 2.3. Distributions with Respect to Unexchanged Shares | • 2.11. Further Assurances | |
| " | 2.4. No Further Ownership Rights in Company Common Stock | • 2.12. Stock Transfer Books | |
| " | 2.5. No Fractional Shares of Parent Common Stock | • 2.1. Exchange Fund | |
| 20 | 2.6. Termination of Exchange Fund | • 2.2. Exchange Procedures | |
| " | 2.7. No Liability | • 2.3. Distributions with Respect to Unexchanged Shares | |
| " | 2.8. Investment of the Exchange Fund | • 2.4. No Further Ownership Rights in Company Common Stock | |
| " | 2.9. Lost Certificates | • 2.5. No Fractional Shares of Parent Common Stock | |
| 21 | 2.10. Withholding Rights | • 2.6. Termination of Exchange Fund | |
| " | 2.11. Further Assurances | • 2.7. No Liability | |
| " | 2.12. Stock Transfer Books | • 2.8. Investment of the Exchange Fund | |
| " | 3.1. Representations and Warranties of the Company | • 2.9. Lost Certificates | |
| 42 | 3.2. Representations and Warranties of Parent and Merger Sub | • 3.1. Representations and Warranties of the Company | |
| 47 | 4.1. Covenants of Company | • 3.2. Representations and Warranties of Parent and Merger Sub | |
| 51 | 4.2. Covenants of Parent | • 4.1. Covenants of Company | |
| 52 | 5.1. Preparation of Proxy Statement and Registration Statement; Company Stockholders Meeting | • 4.2. Covenants of Parent | |
| 53 | 5.2. Access to Information | • 5.10. Affiliate Letter | |
| 55 | 5.3. Efforts | • 5.11. Qualification of the Proprietary Funds | |
| 60 | 5.4. Acquisition Proposals | • 5.12. Section 15 of the Investment Company Act | |
| 62 | 5.5. Employee Benefits Matters | • 5.13. Enforcement of Agreements | |
| 64 | 5.6. Fees and Expenses | • 5.14. Shareholder Litigation | |
| " | 5.7. Directors' and Officers' Insurance | • 5.15. Maintenance of Insurance | |
| 65 | 5.8. Public Announcements | • 5.16. Obligations of Merger Sub | |
| " | 5.9. Listing of Shares of Parent Common Stock | • 5.17. No Shareholder Rights Plan | |
| " | 5.10. Affiliate Letter | • 5.1. Preparation of Proxy Statement and Registration Statement; Company Stockholders Meeting | |
| " | 5.11. Qualification of the Proprietary Funds | • 5.2. Access to Information | |
| 66 | 5.12. Section 15 of the Investment Company Act | • 5.3. Efforts | |
| " | 5.13. Enforcement of Agreements | • 5.4. Acquisition Proposals | |
| " | 5.14. Shareholder Litigation | • 5.5. Employee Benefits Matters | |
| " | 5.15. Maintenance of Insurance | • 5.6. Fees and Expenses | |
| " | 5.16. Obligations of Merger Sub | • 5.7. Directors' and Officers' Insurance | |
| " | 5.17. No Shareholder Rights Plan | • 5.8. Public Announcements | |
| 67 | 6.1. Conditions to Each Party's Obligation to Effect the Merger | • 5.9. Listing of Shares of Parent Common Stock | |
| " | 6.2. Additional Conditions to Obligations of Parent and Merger Sub | • 6.1. Conditions to Each Party's Obligation to Effect the Merger | |
| | | • 6.2. Additional Conditions to Obligations of Parent and Merger Sub | |

| EX-2.1 | 1st Page of 83 | TOC | Top | Previous | Next | Bottom | Just 1st |

Sponsored Ads...

Exhibit 2.1

EXECUTION COPY

===============================================================================

AGREEMENT AND PLAN OF MERGER

DATED AS OF JULY 21, 2003

AMONG

LEHMAN BROTHERS HOLDINGS INC.,

RUBY ACQUISITION COMPANY

AND

NEUBERGER BERMAN INC.

===============================================================================

(f) Amendment and Agreement. Principals (as defined in the Company Stockholders Agreement) and their Family Affiliates (as defined in the Company Stockholders Agreement) owning not less than a majority of the shares of Company Common Stock subject to the Company Stockholders Agreement as of the Closing Date (for purposes of Section 6.3(a) of the Company Stockholders Agreement) shall have executed an Amendment and Agreement (the "Amendment and Agreement") in the form attached as Exhibit 6.2(f), and the amendments to the Company Stockholders Agreement set forth in the attached Exhibit 6.2(f) shall have been duly approved by the Company's Board of Directors for purposes of Section 6.3(a) of the Company Stockholders Agreement.

(g) Material Adverse Effect. Since the date of this Agreement, there shall not have occurred any changes, circumstances or effects that, individually or in the aggregate, have had or would reasonably be expected to have a Material Adverse Effect on the Company.

(h) S&P 500 Index. The average level of the S&P 500 Index for the 10 consecutive full trading dates immediately preceding the Closing Date shall be at least 75.0% of the level of the S&P 500 Index as of the close of business on the date of this Agreement.

(i) Contracts. Each of the consents and approvals required to be obtained from counterparties to Contracts with the Company or any of its Subsidiaries (other than Investment Contracts) in order for such Contracts not to be violated, breached, defaulted under, accelerated or terminated by reason of the consummation of the Merger shall have been obtained and shall remain in full force and effect, except for any failures to obtain the foregoing or for any failures of the foregoing to be in full force and effect which would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect on the Company.

6.3. Additional Conditions to Obligations of the Company. The obligations of the Company to effect the Merger are subject to the satisfaction of, or waiver by the Company, on or prior to the Closing Date of the following additional conditions:

(a) Representations and Warranties. (x) Each of the representations and warranties of Parent and Merger Sub set forth in this Agreement that is qualified as to Material Adverse Effect shall have been true and correct as of the date hereof and at and as of the Closing Date as if made at and as of the Closing Date, and (y) each of the representations and warranties of each of Parent and Merger Sub that is not so qualified shall have been true and correct in all material respects as of the date hereof and at and as of the Closing Date as if made at and as of the Closing Date (except, in each case, for those representations and warranties which address matters only as of a particular date, in which case, they shall be true and correct, or true and correct in all material respects, as applicable, as of such date). The Company shall have received a certificate of the chief executive officer and the chief financial officer of Parent to the effect of the foregoing.

(b) Performance of Obligations of Parent. Parent shall have performed in all material respects and complied in all material respects with all agreements and covenants required to be performed or complied with by it under this Agreement at or prior to the Closing Date. The Company shall have received a certificate of the chief executive officer and the chief financial officer of Parent to such effect.

-60-

SEC Info · Lehman Bro... · Doc 26047... · Filed 03/06/12 · Entered 03/06/12 12:40:42 · Exhibit 24
Exhs. A to G    Pg 36 of 41

*EXHIBIT*

$\longleftarrow$

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

# Lehman Brothers Holdings Inc · 8-K · For 10/31/03 · EX-4.1

**Filed On 10/31/03 4:53pm ET · SEC Files 1-09166, 1-11763 · Accession Number 893750-3-552**

**This Filing was Corrected by the SEC on 1/20/04.**

| Find | | in this entire Filing. | ▾ Show Docs searched ▾ and every "hit". ▾ |
| Help... | Wildcards: ? (any letter), ^ (many). *Logic:* for Docs: & (and), | (or), for Text ^ (anywhere), "(&)" (near). |

| *As Of* | *Filer* | *Filing* | *For/On/As Docs:Size* | *Issuer* | *Agent* |
|---------|---------|----------|----------------------|----------|---------|
| 10/31/03 | Lehman Brothers Holdings Inc | 8-K@(5,7) | 10/31/03    3:28 | | Simpson Tha...Bartlett/FA |

---

## Current Report · Form 8-K
### Filing Table of Contents

| *Document/Exhibit* | *Description* | *Pages* | *Size* |
|--------------------|---------------|---------|--------|
| 1: 8-K | 8-K, Current Report | 4 | 13K |
| 2: EX-4.1 | Amended and Restated Stockholders Agreement | 22 | 90K |
| 3: EX-99.1 | Press Release | 2 | 10K |

---

### EX-4.1 · Amended and Restated Stockholders Agreement
#### Exhibit Table of Contents

| Page | (sequential) | (alphabetic) | Top |
|------|--------------|--------------|-----|

**(sequential)**

1 · 1st Page - Filing Submission
5 · Article I Limitations on Transfer of Shares
" · Section 1.1. Transfers Generally
" · Section 1.2. Transfers Following Death Or Disability
" · Section 1.3. Transfers with the Consent of Board of Directors
6 · Section 1.4. Compliance with Law and Regulations
" · Section 1.5. Legend on Certificates; Entry of Stop Transfer Orders
" · Section 1.6. Certificates to Be Held by Company
7 · Section 1.7. Transfers in Violation of Agreement Void
" · ARTICLE II [Intentionally omitted]
" · ARTICLE III No Harmful Activity
" · Section 3.1. Covenant not to Engage in Harmful Activity; Liquidated Damages
9 · Section 3.2. Notice of Harmful Activity
" · Article Iv Representations and Warranties
" · Section 4.1. Representations and Warranties of the Founder Stockholders
10 · Section 4.2. Representations and Warranties of the Company
" · Article V Definitions
15 · Article Vi Miscellaneous
" · Section 6.1. Notices
" · Section 6.2. Term of the Agreement
" · Section 6.3. Amendments; Waivers
16 · Section 6.4. Adjustment Upon Changes in Capitalization and Extraordinary Transactions
" · Section 6.5. Disinterested Board Members to Make Determinations
" · Section 6.6. Severability
" · Section 6.7. Representatives, Successors and Assigns
17 · Section 6.8. GOVERNING LAW
" · Section 6.9. Specific Performance
" · Section 6.10. Arbitration
18 · Section 6.11. Submission to Jurisdiction; Waiver of Immunity
" · Section 6.12. Further Assurances
" · Section 6.13. Execution in Counterparts
" · Section 6.14. Entire Agreement
" · Section 6.15. Effectiveness

**(alphabetic)**

· Alternative Formats (Word, et al.)
· ARTICLE II No Harmful Activity
· ARTICLE II [Intentionally omitted]
· Article I Limitations on Transfer of Shares
· Article Iv Representations and Warranties
· Article V Definitions
· Article Vi Miscellaneous
· Section 1.1. Transfers Generally
· Section 1.2. Transfers Following Death Or Disability
· Section 1.3. Transfers with the Consent of Board of Directors
· Section 1.4. Compliance with Law and Regulations
· Section 1.5. Legend on Certificates; Entry of Stop Transfer Orders
· Section 1.6. Certificates to Be Held by Company
· Section 1.7. Transfers in Violation of Agreement Void
· Section 3.1. Covenant not to Engage in Harmful Activity; Liquidated Damages
· Section 3.2. Notice of Harmful Activity
· Section 4.1. Representations and Warranties of the Founder Stockholders
· Section 4.2. Representations and Warranties of the Company
· Section 6.10. Arbitration
· Section 6.11. Submission to Jurisdiction; Waiver of Immunity
· Section 6.12. Further Assurances
· Section 6.13. Execution in Counterparts
· Section 6.14. Entire Agreement
· Section 6.15. Effectiveness
· Section 6.1. Notices
· Section 6.2. Term of the Agreement
· Section 6.3. Amendments; Waivers
· Section 6.4. Adjustment Upon Changes in Capitalization and Extraordinary Transactions
· Section 6.5. Disinterested Board Members to Make Determinations
· Section 6.6. Severability
· Section 6.7. Representatives, Successors and Assigns
· Section 6.8. GOVERNING LAW
· Section 6.9. Specific Performance

AMENDED AND RESTATED STOCKHOLDERS AGREEMENT

This AMENDED AND RESTATED STOCKHOLDERS AGREEMENT (this *"Agreement"*) is dated as of October 31, 2003, by and among (i) Lehman Brothers Holdings Inc. (the *"Company"*), (ii) Neuberger Berman Inc., a Delaware corporation (*"Neuberger"*), (iii) the Principals (as defined below) listed on Schedule I hereto and (iv) the Family Affiliates (as defined below) listed on Schedule II hereto (the Principals and their Family Affiliates, collectively, the *"Founder Stockholders"*). Initially capitalized terms used herein have their respective meanings set forth in Article V of this Agreement.

W I T N E S S E T H :

WHEREAS, Neuberger and each Founder Stockholder is a party to that certain Stockholders Agreement, dated as of August 2, 1999 (the *"Original Stockholders Agreement"*);

WHEREAS, the Company, Ruby Acquisition Company, a Delaware corporation and a wholly-owned subsidiary of the Company (*"Merger Sub"*), and Neuberger entered into an Agreement and Plan of Merger, dated as of July 21, 2003, as amended by the First Amendment to Agreement and Plan of Merger, dated as of September 22, 2003 (as amended, the *"Merger Agreement"*), pursuant to which Neuberger will be merged with and into Merger Sub (the *"Merger"*) with Merger Sub continuing as the surviving corporation (the *"Surviving Corporation"*) and a wholly-owned subsidiary of the Company;

WHEREAS, pursuant to the Merger Agreement, among other things, each share of common stock, par value $0.01 per share, of Neuberger (*"Neuberger Stock"*) owned by each Founder Stockholder will be converted into an amount in cash and a number of shares of common stock, par value $0.10 per share, of the Company (*"Common Stock"*);

WHEREAS, as a condition precedent under the Merger Agreement to the Company's obligation to consummate the Merger, the Company, Neuberger (with the approval of its Board of Directors) and the Founder Stockholders that Own a majority of the *"Founder Shares"* (as defined in the Original Stockholders Agreement) subject to the Original Stockholders Agreement as of immediately prior to the consummation of the Merger have entered into those several Amendments and Agreements in the form attached to the Merger Agreement (collectively, the *"Amendment"*) pursuant to which, among other things, the Original Stockholders Agreement has been amended in the manner set forth in the Amendment; and

WHEREAS, pursuant to the Amendment, the Original Stockholders Agreement is being restated in its entirety as set forth herein to reflect the amendments thereto effected by the Amendment.

NOW THEREFORE, in consideration of the premises and of the mutual agreements, covenants and provisions herein contained and for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

ARTICLE I

LIMITATIONS ON TRANSFER OF SHARES

**Section 1.1. Transfers Generally.** Each Founder Stockholder agrees that, in addition to any restrictions imposed by law, no Founder Stockholder shall Transfer any Founder Shares Owned by such Founder Stockholder, except that:

(a) Subject to Section 1.1(c), each Principal, together with his or her Family Affiliates, may in the aggregate Transfer, (x) at any time, any Initial Unrestricted Founder Shares held by such Persons, and (y) in each calendar year commencing January 1, 2004, an additional number of Founder Shares not to exceed 10% of the aggregate Number of Initial Restricted Founder Shares Owned by such Principal and Family Affiliates, provided that, in the case of each of the preceding clauses (x) and (y):

(i) [intentionally omitted]; and

(ii) [intentionally omitted]; and

(iii) Any Founder Shares in respect of which the Company has exercised its right of purchase pursuant to Article III hereof may only be Transferred in accordance with Article III.

From and after a Principal's Employment Termination Date, such Principal and his or her Family Affiliates shall remain subject to the Transfer restrictions set forth in this Section 1.1(a). Any number of Founder Shares eligible to be Transferred in any calendar year under this Section 1.1(a) but not so Transferred may be Transferred in any future calendar year without any restriction imposed by this Section 1.1(a).

(b) [intentionally omitted]

(c) Notwithstanding Section 1.1(a), no Principal nor any of his or her Family Affiliates may Transfer Founder Shares during the pendency of any dispute between the Company and such Principal or any of his or her Family Affiliates regarding the obligations under this Agreement, the Amendment or the Non-Competition Agreement of such Principal or any of his or her Family Affiliates.

**Section 1.2. Transfers Following Death Or Disability.** Notwithstanding any other provisions of this Agreement, upon the death or Disability of any Principal, such Principal (or his or her estate) and his or her Family Affiliates may Transfer Founder Shares free of any provisions of this Agreement.

**Section 1.3. Transfers with the Consent of Board of Directors.** Notwithstanding any other provisions of this Agreement, a Founder Stockholder may Transfer any number of Founder Shares at any time with the prior written consent of the Board of Directors, which consent may be withheld or delayed, or granted on such terms and conditions as it may determine, in its sole discretion.

-2-

cash dividend or other cash distribution upon any Founder Shares deposited
pursuant to Section 1.6(a), the Company shall cause the nominee holder to
distribute promptly such cash dividend or other distribution (by sale or any
other manner that it may determine, net of its charges and expenses in
effecting such conversion), by checks drawn on a bank in the United States, to
the Founder Stockholders in proportion to the number of Founder Shares Owned
by each of them respectively; provided that the Company shall cause the
nominee holder to make appropriate adjustments in the amounts so distributed
in respect of any amounts required to be withheld by the nominee holder from
any distribution on account of taxes. The nominee holder shall distribute only
such amount as can be distributed without distributing to any Founder
Stockholder a fraction of one cent, and any balance not so distributable shall
be held by the nominee holder (without liability for interest thereon) and
shall be added to and become part of the next sum received by the nominee
holder for distribution to the Founder Stockholders.

(c) Notwithstanding Section 1.6(b), during the pendency of any dispute
between the Company and any Principal or any of his or her Family Affiliates
regarding the obligations under this Agreement, the Amendment or the
Non-Competition Agreement of such Principal or any of his or her Family
Affiliates, all cash dividends and other cash distributions received by the
nominee holder in respect of the Founder Shares of such Principal and his or
her Family Affiliates shall be retained by the nominee holder and shall not be
distributed until the final resolution of such dispute. Each Principal and his
or her Family Affiliates hereby irrevocably (i) authorizes the Company, upon
any amount becoming payable by such Principal or his or her Family Affiliates
in connection with any such dispute, to set off and apply against such amount
an equal amount of any cash dividends or other cash distributions in respect
of such the Founder Shares of such Principal and his or her Family Affiliates
then retained by the nominee holder and (ii) instructs the nominee holder to
distribute such amounts to the Company.

Section 1.7. Transfers in Violation of Agreement Void. Any attempted
Transfer of Founder Shares not made in accordance with the provisions of this
Agreement shall be void, and the Company shall not register, or cause or
permit the registry, of Common Stock Transferred in violation of this
Agreement.

ARTICLE II

[Intentionally omitted]

ARTICLE III

No Harmful Activity

Section 3.1. Covenant not to Engage in Harmful Activity; Liquidated
Damages. (a) Each Principal covenants and agrees with the Company that it will
not, prior to the third anniversary of the Employment Termination Date of such
Principal, engage in any Harmful Activity (other than to the extent expressly
permitted under any waivers granted by Neuberger prior to the date of the
Merger Agreement and disclosed in Neuberger's disclosure schedules to the
Merger Agreement).

-4-

SEC Info - Lehman Brothers Holdings Inc - 8-K - 03/06/12 - EX-4.1 - Filed 03/06/12 - Entered 03/06/12 12:40:42 Page 24
Exhs. A to G    Pg 40 of 41

(b) It is expressly understood and agreed that although each Principal and the Company consider the restrictions contained in this Section 3.1 to be reasonable, if a final judicial determination is made by a court of competent jurisdiction that the time or territory or any other restriction contained in this Agreement is an unenforceable restriction against such Principal, the provisions of this Agreement shall not be rendered void but shall be deemed amended to apply as to such maximum time and territory and to such maximum extent as such court may judicially determine or indicate to be enforceable. Alternatively, if any court of competent jurisdiction finds that any restriction contained in this Agreement is unenforceable, and such restriction cannot be amended so as to make it enforceable, such finding shall not affect the enforceability of any of the other restrictions contained herein. Each Principal understands that the provisions of this Section 3.1 may limit such Principal's ability to earn a livelihood in a business similar to the business of the Company Group.

(c) In addition to any other remedies that the Company may have at law or in equity for any breach by any Principal of this Section 3.1, if, on or prior to the third anniversary of the Employment Termination Date of any Principal (including during such Principal's employment with the Company Group), the Board of Directors determines in its good faith judgment that such Principal has engaged in Harmful Activity prohibited by this Section 3.1, the Company shall have the right to purchase, at any time or from time to time, from such Principal (or, to the extent a Principal does not Own sufficient Founder Shares Subject to Repurchase (as defined below) to satisfy his or her obligations under this Section 3.1 (including, without limitation, because such Founder Shares Subject to Repurchase have been Transferred in violation of the transfer restrictions contained in Section 1.1), to purchase from his or her Family Affiliates pro rata in accordance with the number of Founder Shares Subject to Repurchase Owned by such Family Affiliates on the Notice Date) that number of Founder Shares equal to the number of Founder Shares Owned by such Principal and his or her Family Affiliates that could not have been Transferred by such Founder Stockholders in accordance with Section 1.1 prior to the Notice Date (such shares, *"Founder Shares Subject to Repurchase"*); provided, however, that the Company's right to recover monetary damages from a Principal and his or her Family Affiliates in respect of a breach by such Principal of this Section 3.1 shall be limited to the Company's right to repurchase Founder Shares Subject to Repurchase pursuant to this Section 3.1(c) (and to obtain the liquidated damages provided for in Section 3.1(e) below, to the extent such Principal and his or her Family Affiliates are unable for any reason to deliver Founder Shares Subject to Repurchase to the Company in accordance with this Section 3.1(c)), provided that nothing contained in this proviso or in Section 3.1(e) shall in any way be deemed to limit the Company's right to obtain equitable relief for such breach (including without limitation in the manner described in Section 6.9 below). The purchase price of each Founder Share Subject to Repurchase (the *"Purchase Price"*) purchased by the Company pursuant to this Section 3.1 shall equal the quotient of $1.33 divided by the Applicable Exchange Ratio.

(d) The Company may exercise its right to purchase Founder Shares under this Section 3.1 in accordance with the following procedures:

(i) The Company shall give notice to the Founder Stockholder that Owns the Founder Shares subject to such right of purchase not later than the close of business on the third anniversary of the Employment Termination Date of such Principal (the *"Notice Date"*), advising such Founder Stockholder of the Company's election to exercise such

-5-

right, stating the number of Founder Shares to be so purchased, the Purchase Price, closing arrangements and a closing date at which payment of the consideration for such Founder Shares will be made, which date shall be not less than five days nor more than 90 days after the Notice Date.

(ii) On the closing date, the Company and such Founder Stockholder shall cause the nominee holding the Founder Shares being so purchased to deliver the certificates representing such Founder Shares, properly endorsed for transfer by such Founder Stockholder or his, her or its attorney-in-fact, to the Company at its principal place of business and the Company shall deliver to such Founder Stockholder the consideration therefor (it being understood and confirmed that NB LLC has been appointed attorney-in-fact for such Founder Stockholder pursuant to the Exchange Agreement to take all such actions, to make such endorsements and to execute such documents as may be required to consummate the sale under this Section 3.1 of Founder Shares to the Company).

(e) If a Principal and his or her Family Affiliates are unable to satisfy their obligations under this Section 3.1 to deliver to the Company such Founder Shares Subject to Repurchase for any reason (including, without limitation, because such Founder Shares Subject to Repurchase have been Transferred in violation of the transfer restrictions contained in Section 1.1), such Principal shall be liable to the Company, as liquidated damages and not as a penalty, for an amount equal to the product of (i) the number of Founder Shares Subject to Repurchase that should have been sold to the Company under this Section 3.1 but were not so sold and (ii) the excess, if any, of the Market Value of such shares as of the Notice Date over the Purchase Price.

**Section 3.2. Notice of Harmful Activity.** Prior to the third anniversary of such Principal's Employment Termination Date (including during such Principal's employment with the Company Group), each Principal who engages (or intends to engage) in Harmful Activity agrees (a) to notify the Company in writing in reasonable detail at least 30 days prior to engaging in such Harmful Activity, (b) to respond to such questions and furnish such additional information as the Company may request with respect to such Harmful Activity and (c) to update such written notice or inquiries promptly in the event of any circumstances that would cause any notices or responses to be inaccurate or incomplete.

ARTICLE IV

REPRESENTATIONS AND WARRANTIES

**Section 4.1. Representations and Warranties of the Founder Stockholders.** Each Founder Stockholder severally represents and warrants as of the date of this Agreement to the Company and to each other Founder Stockholder that (a) in the case of a Founder Stockholder who is not a natural person, such Founder Stockholder is duly authorized to execute, deliver and perform this Agreement; (b) this Agreement has been duly executed by such Founder Stockholder or his, her or its attorney-in-fact on behalf of such Founder Stockholder and is a valid and binding agreement of such Founder Stockholder, enforceable against such Founder Stockholder in accordance with its terms; (c) the execution, delivery and performance by such

-6-