HEARING DATE AND TIME: March 22, 2012 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: March 7, 2012 at 4:00 p.m. (Eastern Time)

MAYER BROWN LLP
Brian Trust
Jean-Marie L. Atamian
Jeffrey G. Tougas
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910

*Attorneys for National Bank of Canada*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al*.,  :    08-13555 (JMP)
                                          :
                              Debtors.    :    (Jointly Administered)
                                          :
_____

**RESPONSE OF NATIONAL BANK OF CANADA TO DEBTORS' TWO HUNDRED
SIXTY-SIXTH OMNIBUS OBJECTION TO CLAIMS
(VALUED DERIVATIVES CLAIMS)**

National Bank of Canada ("**National Bank**") by and through its undersigned counsel, hereby submits this response (the "**Response**") in opposition to the Debtors' Two Hundred Sixty-Sixth Omnibus Objection to Claims (Valued Derivative Claims) [docket no. 25000], dated February 6, 2012 (the "**Objection**"). In support of its Response, National Bank respectfully states as follows:

**Background**

1. On January 6, 2000, National Bank and Lehman Brothers Special Financing Inc. ("**LBSF**") entered into a 1992 ISDA Master Agreement (Multicurrency-Cross Border) (as amended, supplemented or otherwise modified from time to time, and including all schedules,

17658191

annexes and exhibits thereto, and all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**").[1]  Lehman Brothers Holdings Inc. ("**LBHI**") unconditionally guarantees the obligations of LBSF under the Master Agreement pursuant to the Guarantee of Lehman Brothers Holdings Inc., dated as of April 3, 2000.

2. Beginning on September 15, 2008 and periodically thereafter, LBHI and certain of its affiliates (collectively, the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York.  These chapter 11 cases have been consolidated, for procedural purposes only, and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3. Because LBHI is the Credit Support Provider[2] under the Master Agreement, the LBHI chapter 11 filing constituted an Event of Default under Section 5(a)(vii) of the Master Agreement.  In the exercise of its rights under Section 6(a) of the Master Agreement, as such rights are permitted to be exercised pursuant to section 560 of the Bankruptcy Code,[3] on September 15, 2008, National Bank sent LBSF a notice terminating the Master Agreement and designating September 15, 2008 as the Early Termination Date.

---

[1].  Pursuant to the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information National Bank submitted in connection with the Proofs of Claim and Questionnaires are part of the record and National Bank need not resubmit them in connection with this Response.

[2].  Capitalized terms not defined herein shall have the meaning given them in the Master Agreement.

[3]  Section 560 of the Bankruptcy Code provides, in pertinent part, that "[the exercise of any contractual right of any swap participant or financial participant to cause the . . . termination of one or more swap agreements because of [the filing of a bankruptcy case by the counterparty] shall not be stayed, avoided, or otherwise limited by operation of any provision of [the Bankruptcy Code]."  11 U.S.C. § 560.  That National Bank qualifies as both a "swap participant" and a "financial participant," under sections 101(53C) and 101(22A), respectively, is beyond question, although it need only qualify on one of these bases.  Thus, National Bank's termination of its swap agreement with LBSF is precisely the type of action contemplated, and plainly permitted, by section 560.

2

17658191

4. Pursuant to Section 6(d) of the Master Agreement, on October 6, 2008, National Bank sent LBSF a calculation statement of the early termination payments due under the Master Agreement in the amount of $5,895,485 (the "**Calculation Statement**").

5. On July 2, 2009, this Court entered its Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [docket no. 4271] (the "**Bar Date Order**").

6. Pursuant to the Bar Date Order, on September 10, 2009, National Bank filed (a) a proof of claim in the amount of $5,895,458 against LBSF [claim no. 11032], which proof of claim was amended (i) on September 17, 2009, in the amount of $5,895,458 [claim no. 15848], (ii) on December 2, 2010, in the amount of $6,110,619.36 [claim no. 67235], and (iii) on January 26, 2012, in the amount of $6,525,214.25 [claim no. 67857] (as so amended, the "**LBSF Proof of Claim**"); and (b) a proof of claim in the amount of $5,895,458 against LBHI [claim no. 11309], which proof of claim was amended (i) on September 17, 2009, in the amount of $5,895,458 [claim no. 15693], (ii) on December 2, 2010, in the amount of $6,110,619.36 [claim no. 67234], and (iii) on January 26, 2012, in the amount of $6,525,214.25 [claim no. 67855] (as so amended, the "**LBHI Proof of Claim**" and, together with the LBSF Proof of Claim, the "**Proofs of Claim**"). In furtherance of its compliance with the Bar Date Order, on October 22, 2009, National Bank submitted a derivative questionnaire with respect to the LBSF Proof of Claim (as amended, the "**LBSF Derivative Questionnaire**") and a guarantee questionnaire with respect to the LBHI Proof of Claim (as amended, the "**LBHI Guarantee Questionnaire**" and, together with the LBSF Derivative Questionnaire, the "**Questionnaires**").

7. On February 6, 2012, the Debtors filed the Objection seeking the reduction of National Bank's separate claims against LBSF and LBHI, each in the amount of $6,525,214.25,

3

to $524,621.43, each, solely on the basis that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values" of the claims as determined by the Debtors. Objection, at ¶ 11. The Debtors submitted no documentary or other evidence directly relating to the claims evidenced by the Proofs of Claim in support of the Objection.

8. The Objection directs National Bank to the June 3, 2009 Declaration of Gary H. Mandelblatt [docket no. 4113] (the "**Declaration**") "for a more comprehensive discussion of the valuation process." *See* Objection at fn 2. The Declaration sets forth a "six-step process" designed by the Debtors to unwind Derivatives trades. *See* Declaration ¶¶ 18-34. While National Bank has no knowledge as to whether "steps" one through five were taken by the Debtors, as no documentation (if it exists) of such "steps" has been provided to National Bank, step six, wherein the Debtors "seek to negotiate and finalize settlements of terminated Derivative Contracts"[4] did not occur in National Bank's case. The Debtors' business and legal representative participated in one teleconference with National Bank at which no negotiation occurred.

## Argument

9. National Bank does not contend that it should be allowed to recover more than the true value of its claims. *See* Objection ¶ 16. National Bank does dispute, however, that the Debtors' purported valuation of the transactions under the Master Agreement has any relevance to the value of those claims. Not only is that valuation unsupported by a shred of evidence, but Lehman does not even suggest that its calculations replicate, or even approximate, the Market Quotation or Loss measures. National Bank's claim arises from the Master Agreement, and Market Quotation and Loss are the sole contractual measures for valuing that claim.

---

[4] *See* Declaration at ¶ 34.

### National Bank Calculated the Amounts in the Proofs of Claim as Required by the Master Agreement

10. Section 6(d)(i) of the Master Agreement provides that: "[o]n or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculation on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement . . . showing, in reasonable detail, such calculations . . . ."

11. Pursuant to Section 6(e) of the Master Agreement, National Bank and LBSF agreed to the "Market Quotation" methodology of calculating the amount due following an Early Termination Date. Under the Market Quotation methodology, the Non-defaulting Party is required to seek at least four quotations from Reference Market-makers for the amount that would be paid to the Non-defaulting Party (or the amount that would have to be paid by the Non-defaulting Party) to enter into replacement transactions "that would have the effect of preserving for [the Non-defaulting Party] the economic equivalent" of the transactions if they had not been terminated. *See* Master Agreement, § 14. If fewer than three quotations are obtained, it will be deemed that Market Quotation in respect of such transactions cannot be determined and the Non-defaulting Party must then calculate the Settlement Amount under the "Loss" methodology. *Id*. Under the Loss methodology, the Non-defaulting Party must determine the amount that it reasonably believes, in good faith, to be its total losses and costs in connection with the terminated transactions. *Id*.

12. National Bank has complied with *all* of the requirements set forth in Section 6(e) of the Master Agreement. As detailed in the Calculation Statement, National Bank sought quotations from four Reference Market-makers with respect to each of the terminated transactions. National Bank determined the Settlement Amount via Market Quotation when

5

possible. When National Bank did not receive at least three quotations, National Bank reverted, as was its contractual right and obligation, to Loss methodology.

14. Under both the Market Quotation and the Loss methodologies, *only* the Non-defaulting Party is allowed to determine the Settlement Amount due and payable in respect of the early termination of the Master Agreement. The Non-defaulting Party in this case is National Bank, not LBSF. Therefore, LBSF, as the Defaulting Party, is *not entitled* to calculate the Settlement Amount and the calculations set forth in the Objection do not constitute the true value of the claims. Therefore, the Objection should be overruled.

14. In summary, the amounts asserted in the Proofs of Claim are correct having been determined in accordance with the terms of the underlying documents, and the relief sought in the Objection must be denied.

**The Debtors Do Not Provide Any Evidence to Dispute the Amount of the Claims.**

15. The Debtors have not carried their burden of proof in objecting to National Bank's claims. It is well recognized that "[a] proof of claim is *prima facie* evidence of the validity and amount of a claim." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Comms. Corp.*, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 2007); F.R.Bankr.P. 3001(e) (providing that "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Furthermore, the Debtors "bear[] the initial burden of persuasion" and must produce "evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id*. (citation omitted).

16. The Debtors have not provided *any* evidence to dispute the amount of National Bank's claims. They do not address *any* of the terms of the Master Agreement in their

6

17658191

Objection. Instead, the Objection only discusses the general process *the Debtors* undertook to reconcile the claims that resulted in their conclusion that the amounts in National Bank's Proofs of Claim should be drastically reduced. Neither the Debtors' general claims reconciliation process, nor their conclusion, is supported by the terms of the Master Agreement. Indeed, pursuant to the Master Agreement, the Debtors are not *allowed* to calculate a competing value thereunder.

17.     The only provisions of the Objection that approach any substantive criticism of National Bank's Proofs of Claim are variations of the statement: "the amounts listed on the proofs of claim are greater than the fair, accurate and reasonable values determined by the Debtors." *See* Objection ¶¶ 2, 11, 13, 16. However, other than the foregoing assertion, the Debtors have not provided *any* data or claim-specific calculation methodologies in support of this position. Simply put, the Debtors have failed to offer *any* evidence or justification of any kind to support the conclusory statements in the Objection and certainly nothing to explain why National Bank's claims should be reduced by more than 90% to the amount of $524,621.43.

18.     Because the Debtors have utterly failed their initial burden of persuasion and have not provided remotely sufficient evidence to overcome the *prima facie* validity of National Bank's Proofs of Claim, these claims <u>remain</u> *prima facie* valid. Therefore, the Debtors' Objection should be overruled. Furthermore, the Proofs of Claim and Questionnaires constitute more than sufficient evidence for the amounts claimed thereunder. Such amounts are fully supported by the terms of the Master Agreement and should be allowed as set forth herein.

19.     Even assuming, *arguendo*, that the Debtors were successful in their attempt to refute even a single allegation that is essential to the legal sufficiency of National Bank's Proofs of Claim, National Bank must then be afforded the opportunity to refute the Objection and to

prove that the Proofs of Claim should be allowed. *See In re Oneida Ltd.*, 400 B.R. at 389 (recognizing that "[w]hen the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed.")

20. To the extent this Court does not overrule the Objection, the Objection to National Bank's Proofs of Claim should proceed in accordance with this Court's April 19, 2010 Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390, Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims against Debtors (the "**Procedures Order**"). National Bank further reserves the right to seek discovery and to request a full evidentiary hearing pursuant to Bankruptcy Rule 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure, if necessary, to determine the proper amount of National Bank's claims.

21. This Response is made under compulsion of the Procedures Order. National Bank fully reserves all of its rights under the Bankruptcy Code, other applicable law and all Orders issued by this Court in these cases including, without limitation, the right to designate additional bases, documentation or other evidence of the claims upon which National Bank will rely in opposing the Objection.

22. National Bank designates Benoît Blais, Senior Manager, as having ultimate authority to reconcile the amount of these claims.

8

17658191

WHEREFORE, National Bank respectfully requests that the Court (i) overrule the Objection as it pertains to National Bank's Proofs of Claim, (ii) enter an Order allowing each of the Proofs of Claim in an amount not less than $6,525,214.25 (plus any accrued but unpaid interest, legal fees and other items payable under applicable law) and (iii) grant National Bank such further relief as the Court deems just.

Dated: New York, New York
       March 7, 2012

/s/ Brian Trust
MAYER BROWN LLP
Brian Trust
Jean-Marie L. Atamian
Jeffrey G. Tougas
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910

*Attorneys for National Bank of Canada*

\*   \*   \*