HEARING DATE AND TIME: March 22, 2012 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: March 7, 2012 at 4:00 p.m. (Eastern Time)

Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
David Neier (dneier@winston.com)
Elena Snyder (elsnyder@winston.com)

*Attorneys for Mariner LDC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
:
In re:                                                  :
                                                        :   Chapter 11
LEHMAN BROTHERS HOLDINGS, INC.,                         :
*et al.*,                                               :   Case No. 08-13555 (JMP)
                                                        :
Debtors.                                                :   (Jointly Administered)
                                                        :
------------------------------------------------------- x

### RESPONSE OF MARINER, LDC TO THE TWO HUNDRED SIXTY-FIRST OMNIBUS OBJECTION OF THE DEBTORS TO CLAIMS (NO GUARANTEE CLAIMS) OF MARINER LDC

Mariner LDC ("Mariner") submits this response (the "Response") to the Debtors' Two Hundred Sixty-First Objection to Claims (No Guarantee Claims) [Docket No. 24995], dated February 6, 2012 (the "Objection"), and states as follows:

### Background

1. On May 10, 2007, Mariner and Lehman Brothers Special Financing Inc. ("LBSF") entered into an ISDA Master Agreement (together with the schedule thereto and the Credit Support Annex part thereof, as supplemented by each Confirmation thereunder,

-1-

collectively, the "Master Agreement").[1] Pursuant to the Master Agreement, and as a condition precedent thereto, Lehman Brothers Holdings Inc. ("LBHI") was required to enter into a guarantee, (the "Guarantee"), pursuant to which LBHI unconditionally guaranteed the due and punctual payment of all amounts owed by LBSF under the Master Agreement.

2. On September 15, 2008, LBHI filed a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and, on October 3, 2008, LBSF filed its voluntary chapter 11 bankruptcy petition under the Bankruptcy Code in the Bankruptcy Court. The Debtors' bankruptcy cases are being jointly administered.

3. On September 16, 2008, pursuant to Section 6(a) of the Master Agreement, Mariner provided LBSF notice designating September 16, 2008 as the Early Termination Date in respect of all outstanding Transactions.

4. As reflected in the Valuation Letter the amount owed by LBSF was no less than $9,116,026.89 plus interest at the rate of LIBOR +1%, from September 16, 2008 until the date paid and compounded daily.

5. On July 2, 2009, the Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

---

[1] Pursuant to the Order of the Bankruptcy Court dated July 2, 2009 (Docket No. 4271), because the Claim is based on amounts owed by the Debtors to Claimant pursuant to a Derivative Contract and a Guarantee, Claimant is not required to attach supporting documentation to the Claim. Claimant incorporates herein by reference the Derivative Questionnaire (including any amendments thereof) filed on October 22, 2009, the Guarantee Questionnaire filed on October 21, 2009 (including any amendments thereof), and all other documents that have been or will be submitted by Claimant in connection with the Claim against the Debtors. Copies of the Master Agreement and other supporting documentation have been or will be electronically uploaded to the website http://www.lehmanclaims.com in accordance with the requirements set forth in the Derivative Questionnaire and the Guarantee Questionnaire.

6.  In accordance with the Bar Date Order, on September 21, 2009, Mariner filed Proof of Claim No. 23763 against LBSF (the "LBSF Claim") and a corresponding claim against LBHI, Proof of Claim No. 23764 (the "LBHI Claim," collectively the "Claim"). The Claim asserts Mariner's claim in the liquidated amount of not less than $9,116,026.89 in connection with amounts owed by LBSF under the Master Agreement and by LBHI under the Guarantee Agreement. Subsequently, on October 21, 2009, Mariner filed the Guarantee Questionnaire with respect to LBHI, and on October 22, 2009, Mariner filed the Derivative Questionnaire with respect to LBSF, stating the Derivative Claim Amount of $9,310,138.25, which included $194,111.36 of interest on the amount set forth in the Claim.

7.  On February 6, 2012, the Debtors filed the Objection. Exhibit A to the Objection includes Mariner's LBHI Claim. The Objection asserts that "LBHI has no liability for the [LBHI Claim and similarly situated claims] because they are based on Guarantees that have not been issued by and therefore cannot be enforced against LBHI." (Objection ¶11).

8.  The Debtors base the Objection on their failure to locate an executed version of the Guarantee and the fact that a copy of the executed Guarantee was not included in the proof of claim or in the Guarantee Questionnaire. (Objection ¶11).

9.  Mariner was unable to locate an executed copy of the Guarantee because either: a) the Guarantee has been misplaced or b) due to an administrative oversight, LBSF or LBHI failed to deliver the executed Guarantee to Mariner. However, consistent with standard protocol in such circumstances and the condition precedent identified in the Schedule, it is abundantly clear that Mariner would not have entered into the Master Agreement without LBHI's guarantee of LBSF's obligations under the Master Agreement.

Response

10. Mariner disputes the contentions in the Objection and requests that the Court enter an Order allowing the LBHI Claim in full amount of $9,116,026.89 plus interest. To the Extent necessary, Mariner requests a full evidentiary hearing – and the corresponding opportunity to take discovery – on the issues presented herein. Such discovery would include, among other things, discovery on LBHI's commitment to issue the Guarantee, as represented by LBSF and LBHI, the policies, practices and procedures employed in issuing the Guarantee, and the search conducted by the Debtors for the missing Guarantee.

11. Upon information and belief, discovery will reveal either the existence of (i) the executed Guarantee, (ii) the agreement by LBHI to execute the Guarantee or (iii) the existence of facts and evidence supporting the application of one or more theories of law that would result in the Guarantee being an enforceable obligation of LBHI.

12. The Objection is predicated entirely upon (a) the application of the New York version of the Statute of Frauds, N.Y. Gen. Oblig. Law 5-701, and (b) the assertion that the LBHI Guarantee was never executed. For the reasons discussed below, Mariner contests several of the Debtors' legal contentions and conclusions, including the applicability of the Statute of Frauds.

**Statute of Frauds**

13. Under New York law, the Statute of Frauds "may not be invoked to bar a party to an allegedly lost contract from proving the existence and contents of the writing by parol and circumstantial evidence." N.Y. Jur. 2d *Frauds, Stat.* of § 326. In *Love v. Spector*, the court found that the enforcement of a lost contract was "not barred by the Statute of Frauds, since the plaintiff is entitled to the opportunity to prove, if she can, the existence and the contents of the

lost writing 'by parol and circumstantial evidence.'" *Love v. Spector*, 215 A.D.2d 733, 627 N.Y.S.2d 87, 88 (N.Y. App. Div. 2d Dep't 1995) (citing *Taft v. Equitable Life Assurance Soc'y of U.S.*, 173 A.D.2d 267, 268, 569 N.Y.S.2d 660 (N.Y. App. Div. 1st Dep't 1991)).

14. Similarly, in *Posner v. Rosenbaum*, the court found that a lost contract falls outside the statute of frauds as no oral contract is at issue but rather the party seeking to enforce the contract must prove the existence and contents of the writing. *Posner v. Rosenbaum*, 270 N.Y.S. 849, 853 (N.Y. App. Div. 1st Dep't 1934) (finding that, "the instrument of writing . . . was not produced, nor could it be, because it was lost, and from necessity parol evidence was admitted to prove, not a parol conveyance, but a conveyance in writing.").

15. The Debtors assert that because the only copies of the Guarantee that can be located are unsigned, the Guarantee is not enforceable. When a contract has been lost, as made clear by *Love* and *Posner v. Rosenbaum*, the party seeking enforcement must be provided with an opportunity to prove the existence and contents of the writing through parol evidence.

16. Additionally, a signature need not be handwritten on a document to qualify as a signature for the purposes of the Statute of Frauds. In *Cloud Corp. v. Hasbro, Inc.*, Judge Posner opined:

> The purpose of the statute of frauds is to prevent a contracting party from creating a triable issue concerning the terms of the contract – or for that matter concerning whether a contract even exists – on the basis of his say-so alone. That purpose does not require a handwritten signature, especially in a case . . . in which there is other evidence, and not merely say-so evidence, of the existence of the contract.

*Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2003). In *Cloud Corp.* Judge Posner held "that the sender's name on an email satisfies the signature requirement of the Statute of Frauds." *Id.* at 296; *Stevens v. Publicis, S.A.*, 50 A.D.3d 253, 255 (N.Y. App. Div. 1st Dept. 2008) (finding the e-mails from plaintiff constitute "signed writings" within the meaning of the

statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the contents).

17. In this case, there is evidence, including, but not limited to, the unsigned Guarantee and the terms in the Master Agreement, demonstrating the existence of the Guarantee beyond mere "say-so." The Master Agreement goes far beyond mere mention of the Guarantee, it contains numerous provisions that relate to the Guarantee and detail the contents of the Guarantee. Mariner and LBSF made their intent to have LBSF's obligations under the Master Agreement guaranteed by the Guarantee in numerous references in the Master Agreement. For example, the Guarantee is listed in Part 3(b) of the Schedule as a document to be delivered by LBSF upon execution of the Master Agreement. In addition, the Guarantee is listed as a Credit Support Document in Part 4(f) of the Schedule. Designation by the parties of the Guarantee as a Credit Support Document had the effect of making LBHI's failure to comply with or perform any obligation required under the Guarantee an event of default under Section 5(a)(iii) of the Schedule. These express references to the Guarantee in the Master Agreement, in addition to the other references, constitute a portion of the parol evidence demonstrating the existence of the Guarantee that Mariner would seek to introduce at an evidentiary hearing.

18. Further, the Debtors have indicated that they may have in their possession an unsigned copy of the Guarantee. In fact, the unsigned guarantee is attached as an Exhibit to the Schedule to the Master Agreement (Complaint ¶ 11), and is included in Mariner's Guarantee Questionnaire. As the parties have a copy of the Guarantee, albeit unsigned, there is no uncertainty about the existence of the Guarantee or terms thereof. The only issue is whether the Guarantee is an enforceable contract, which can be proven through (i) identification of materials sufficient to satisfy the signature requirement, such as a signed copy of the Guarantee or emails

-6-

that fulfill the signature requirement, or (ii) parol evidence sufficient to indicate that there was signed copy of the Guarantee which has now been lost.

19. The Debtors claim that they conducted a "reasonable and diligent search of their internal systems and files" and were unable to locate any "executed versions" of the Guarantee. (Complaint ¶ 11). The search for documents should not be limited to identifying only an "executed version" of the Guarantee. Mariner respectfully requests the right to discovery to obtain documents that relate to the Guarantee, including emails that would satisfy the signature obligation, and documents or information that prove the existence of an executed version of the lost Guarantee.

**Exceptions to the Statue of Frauds**

20. New York's Statute of Frauds is subject to certain exceptions. Two exceptions to the Statute of Frauds that are applicable in this case are: (i) the "merchants exception" and (ii) the qualified financial contract exception. The application of both exceptions hinges on the agreement by the parties to be bound.

**a) Merchants Exception**

21. Section 2-201 of the New York Uniform Commercial Code (the "NY UCC") contains a "merchants exception" to the Statute of Frauds which states that the statute is satisfied if, in a transaction between merchants, there is a confirmation of the contract that is not objected to within 10 days of receipt. NY UCC § 2-201(2). The merchants exception applies when (i) both parties are merchants, (ii) the writing was sent within a reasonable time after the alleged agreement, (iii) the writing was received by a party with reason to know of its contents, and (iv) no written objection was made. *Bazak Intl. Corp. v. Mast Indus.*, 73 N.Y.2d 113, 123 (N.Y. 1989).

22.  The merchants exception applies to contracts between people "who deal[] in goods of the kind or otherwise by [their] occupation hold[] [themselves] out as having knowledge or skill peculiar to the practices or goods involved in the transaction." NY UCC 2-104(1)). In New York, courts have applied the Uniform Commercial Code to matters concerning derivatives trades. *See, e.g., Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242, 251 (S.D.N.Y. 2009). The Debtors and Mariner are merchants in that they deal in goods, in this instance derivatives, and by their occupation hold themselves out as having knowledge and skill particular to such derivatives.

23.  Although the merchants exception requires that the confirmation of the agreement must be in writing, neither explicit words of confirmation nor express references to the parties' agreement is required, so long as the writings afford a basis for believing that they reflect a real transaction between the parties. 28 Glen Banks, *New York Practice Series - New York Contract Law*, § 3:12; *see also Apex Oil Co. v. Vanguard Oil & Service Co. Inc.*, 760 F.2d 417, 423 (N.Y. 2d Cir. 1985). Further, "a document may constitute a writing in confirmation under [NY UCC § 2-201(2)] even though the 'customer's acceptance' space on the document is unsigned." *Bayside Fuel Depot Corp. v. Nu Way Fuel Oil Burners Inc.*, 2009 WL 4639727, 10 (N.Y. Sup. 2009) (citing *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 119–120, 124 (N.Y. 1989).

24.  In connection with the execution of the Master Agreement, Mariner indicated that it would be a condition precedent that LBHI provide a parent company guarantee pursuant to the Master Agreement, and LBHI and LBSF agreed that the Guarantee would be provided to Mariner as soon as it had been executed by the necessary signatory at LBHI.

25.  A review of the terms of the Master Agreement indicates that the parties agreed to be bound. The provisions of the Master Agreement integrate the Guarantee into the mechanics

-8-

of the Master Agreement. Although the Debtors have search for "executed versions" of the Guarantee, they have not indicated whether they are in possession of other relevant documents, including but not limited to, unexecuted copies of the Guarantee, the Master Agreement, and correspondence related to either the Master Agreement or the Guarantee.

26. Mariner believes that the provisions of the Master Agreement incorporating the Guarantee provide sufficient evidence to indicate that the parties agreed to be bound and Mariner is therefore entitled to relief. At a minimum, Mariner believes that it is entitled to discovery to obtain relevant documents including, (i) any correspondence between LBSF or Mariner and LBHI confirming the Guarantee, (ii) any information or documents related to the intent of LBHI with respect to the Guarantee or the Master Agreement, or (iii) any information or documents indicating LBHI's possession or knowledge of the either a signed or unsigned Guarantee or the Master Agreement.

### b) Qualified Financial Contract Exception

27. New York General Obligations Law ("N.Y. Gen. Oblig. Law") provides an exception to the Statute of Frauds if the contract is a "qualified financial contract," which is defined to include, agreements "for a rate swap, basis swap, forward rate transaction, or an interest rate option." N.Y. Gen. Oblig. Law § 5-701(b)(2)(f). The exception provides that:

> An agreement, promise, undertaking or contract, which is valid in other respects and is otherwise enforceable, is not void for lack of a note, memorandum or other writing and is enforceable by way of action or defense provided that such agreement, promise, undertaking or contract is a qualified financial contract ... and (a) there is, as provided in paragraph three of this subdivision, sufficient evidence to indicate that a contract has been made, or (b) <u>the parties thereto, by means of a prior or subsequent written contract, have agreed to be bound</u> by the terms of such qualified financial contract from the time they reach agreement (by telephone, by exchange of electronic messages, or otherwise) on those terms.

N.Y. Gen. Oblig. Law § 5-701(b).

28. The purpose of the qualified financial contract exceptions as discussed in *Naldi* was to amend the law to reflect the reality of the marketplace in which certain financial institutions, "had come to rely on e-mail and other electronic means of communication, rather than paper writings, to memorialize [ ] transactions." *Naldi v. Grunberg*, 80 A.D.3d 1, 8, 908 N.Y.S.2d 639 (N.Y. App. Div. 1st Dep't. 2010). The amendment to N.Y. Gen. Obl. Law § 5–701(b) was enacted "to make clear that a 'qualified financial contract [as defined] ... is legally binding from the moment agreement is reached.'" *Naldi*, 80 A.D.3d at 9 (quoting the Senate Introducer Mem. in Support, Bill Jacket, L. 1994, ch. 467, at 10).

29. Further, it is well settled New York law, that contract formation outside the statue of frauds is not dependent on a signature as long as a party manifests an intention to be bound to the agreement.

> The absence of the signature of a contracting party is not necessarily inconsistent with the formation of a binding contract. A contract arises as long as the terms are understood by the parties and each manifests its intent to be bound, even in the absence of one or more signatures.

*Aini. et. al., v. Sun Taiyang Co., et. al.*, 964 F. Supp. 762, 775 (S.D. N.Y. 1997); *Irving R. Boody & Co. v. Winn Holdings, International*, 213 F. Supp. 2d 378, 381 (S.D.N.Y. 2002)("It is well settled in New York, however, that contract formation is not dependent on a signature.").

30. For contracts outside the statute of frauds, the courts can turn to "the course of conduct between the parties to determine whether there was a meeting of minds sufficient to give rise to an enforceable contract . . ." *Flores v. Lower East Side Service Center, Inc.*, 4 N.Y.3d 363, 370, (N.Y. 2005); *Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp.*, 41 N.Y. 2d 397, 399 (1977)(finding that the course of conduct, including writings, especially taken against the continuum of events was sufficient to spell out a binding contract.); *Brighton Investment, Ltd. v. Har-ZVI*, 88 A.D.3d 1220, 1222 (N.Y. App. Div.. 3rd Dep't. 2011)(finding contract

formation was not dependant on signed document but on "whether the parties' words and deeds establish their intent to enter into a binding agreement given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.")

31. As determined by N.Y. Gen. Oblig. Law § 5-701(b) the Guarantee, as a qualified financial contract, falls outside the statute of frauds and consequently does not require a signature to be an enforceable contract. Further, N.Y. Gen. Oblig. Law § 5-701(b)(1)(b) requires only that the parties agreed to be bound to the contract "from the time they reached agreement (by telephone, by exchange of electronic messages, or otherwise) . . ." N.Y. Gen. Oblig. Law § 5-701(b)(1)(b).

32. The understanding of the parties was that the Guarantee was in effect from the moment LBSF and Mariner were in agreement as to the terms of the Master Agreement. *See* Disclosure Statement, p. 65 [Docket No. 19629] ("LBHI's guarantee of the obligations of its subsidiaries under derivatives contracts was given as a matter of course and did not need to be requested or negotiated"). Both the Debtors and Mariner acted as though the LBHI Guaranty was in place.

33. Mariner asserts that the provisions of the Master Agreement incorporating the Guarantee provide more than sufficient evidence to indicate that a contract has been made and the parties agreed to be bound. Further, Mariner asserts that the course of conduct between the parties, as evidenced by the general conduct in the industry, LBHI's prior dealings with Mariner, and LBHI's prior deals with other creditors, indicates that the parties intended to be bound. In the alternative, as with the merchant exception, Mariner believes that at a minimum, it is entitled to discovery to assess whether additional information, communications and documents exist indicating that a contract has been made or the parties agreed to be bound.

### Reservation of Rights

34. Given the limited analysis set forth in the Objection, Mariner is not using this Response to set forth a detailed analysis of the legal issues related to the LBHI Claim beyond the issues detailed above related to the Statute of Frauds. To the extent the Bankruptcy Court does not overrule the Objection, Mariner reserves its right to file a supplemental and/or amended response to the Objection shall it deem it necessary. Mariner reserves the right, after discovery and prior to a hearing on the merits of the LBHI claim, to provide a briefing on the other applicable legal issues.

### Conclusion

WHEREFORE, Mariner respectfully requests that the Court enter an Order (a) overruling the Objection as it pertains to Mariner's LBHI Claim; (b) allowing the LBHI Claim in full; and (c) granting Mariner such further relief as the Court deems just or, in the alternative, (d) schedule an evidentiary Claims Hearing and permit discovery in connection therewith.

Dated: New York, New York
March 7, 2012

        **WINSTON & STRAWN LLP**

        By: /s/David Neier
            David Neier (dneier@winston.com)
            Elena Snyder (elsnyder@winston.com)
            200 Park Avenue
            New York, New York 10166
            Telephone No.:  (212) 294-6700
            Facsimile No.:  (212) 294-4700

        *Attorneys for Mariner LDC*

NY:1383388.3