| | |
|---|---|
| HUNTON & WILLIAMS LLP<br>Peter S. Partee, Sr.<br>200 Park Avenue<br>New York, New York 10166-0005<br>(212) 309-1000 | **Hearing Date and Time: 3/22/12 at 10:00am** |

-and-

J.R. Smith (admitted *pro hac vice*)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

*Counsel for HBK Master Fund L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | ) | Case No. 08-13555 (JMP) |
| Debtors. | ) | (Jointly Administered) |

**RESPONSE OF HBK MASTER FUND L.P. TO DEBTORS'**
**ONE HUNDRED SIXTIETH OMNIBUS OBJECTION TO CLAIMS**
**(SETTLED DERIVATIVE CLAIMS)**

**In re: Claim Nos. 19275 and 19276**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

HBK Master Fund L.P. ("HBK"), by and through its undersigned counsel, hereby submits this response (the "Response") to the *Debtors' One Hundred Sixtieth Omnibus Objection to Claims (Settled Derivatives Claims)* [Docket No. 18444], dated July 12, 2011 (the "Objection"). In support of its Response, HBK respectfully states as follows:

**Preliminary Statement**

1. The Debtors' Objection fails on its face to specify any basis to rebut the *prima facie* validity of HBK's Claims. While the Debtors failed to raise the issue in the Objection, they have questioned whether a payment in a foreign currency pursuant to a termination agreement for a safe harbored swap that was calculated as of the post-petition termination date should be converted to U.S. Dollars for allowance as a bankruptcy claim using a date other than the agreed termination date. The Bankruptcy Code, Congressional intent, the equities, and simple logic dictate that the termination date is the proper date. The use of any other date, such as the petition date, as argued by the Debtors, is anathema to the intent behind the safe harbor provisions of the Bankruptcy Code.

**Factual Background**

2. The Claims arise from two swap agreements to which Lehman Brothers Special Financing, Inc. ("LBSF") was a party.

3. On October 10, 2002, Dante Finance Public Limited Company ("Dante") and LBSF entered into a 1992 ISDA Master Agreement (as amended, supplemented, or otherwise modified from time to time, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to the transactions entered into in connection therewith, the "Dante Swap Agreement").

4. Also on October 10, 2002, Petrarca Finance Public Limited Company ("Petrarca"), by way of a deed of accession, acceded and entered into with LBSF, among other parties, a 1992 ISDA Master Agreement (as amended, supplemented, or otherwise modified from time to time, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to the transactions entered into in connection therewith, the

2

"Petrarca Swap Agreement" and, together with the Dante Swap Agreement, the "Swap Agreements").

5. On October 3, 2008, LBSF filed a petition in this Court under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), which constituted an Event of Default (as defined in the Swap Agreements) under Section 5(a)(vii)(4) of the Swap Agreements.

6. Following the Event of Default, Programma Dinamico S.p.A. ("Programma Dinamico"), as holder of certain notes issued by each of Dante and Petrarca, by way of a written resolution dated July 29, 2009, directed Dante and Petrarca to terminate the respective Swap Agreements.

7. The notes comprised 100% of:

    a. an outstanding principal amount of the "Series No. 2002-01 EUR 102,400,000 Secured Variable Redemption Index-Linked Puttable Notes due 2012" of an original principal amount of EUR 194,300,000 issued by Dante (the "Dante Notes"); and

    b. an outstanding principal amount of the "Series No. 2002-01 EUR 102,400,000 Secured Variable Redemption Amount Index-Linked Puttable Notes due 2012" of an original principal amount of EUR 194,350,000 issued by Petrarca (the "Petrarca Notes" and, together, with the Dante Notes, the "Notes").

As holder of 100% of the Notes, pursuant to their terms, Programma Dinamnico held the right to direct the termination of the Swap Agreements.

8. On July 29, 2009, pursuant to Programma Dinamico's direction, Dante and Petrarca each delivered early termination notices to LBSF, pursuant to Section 6(a) of the Swap Agreements, designating July 29, 2009, as the early termination date (the "Early Termination Date") of the respective Swap Agreements.

9. On July 30, 2009, also at the direction of Programma Dinamico, Dante and Petrarca entered into a Settlement Deed (the "Settlement Deed"), attached hereto as Exhibit A,

3

with LBSF, among other parties.  As consideration for the termination of the respective Swap Agreements, the Settlement Deed granted an allowed general, unsecured claim in favor of Dante against LBSF in the amount of EUR 12,627,651.03 (the "Dante Claim"), an allowed general, unsecured claim in favor of Petrarca against LBSF in the amount of EUR 12,659,420.78 (the "Petrarca Claim" and, together with the Dante Claim, the "Claims"), and payment to LBSF of total excess value of EUR 7,650,906 (the "Excess Cash") of certain collateral posted in connection with other transactions subject to the Settlement Deed over the collateral's mark to market value.  The Settlement Deed, which LBSF drafted, does not provide a reference date for converting the Claims from Euros to U.S. Dollars.

10. Also on July 30, 2009, Dante, Petrarca, and Programma Dinamico entered into a transfer agreement pursuant to which Dante and Petrarca each assigned to Programma Dinamico all of their respective rights, title and interest in and to the Claims.

11. On September 18, 2009, Programma Dinamico filed a proof of claim, assigned Claim No. 19275 (the "Dante Proof of Claim"), asserting a claim against LBSF arising from the Dante Swap Agreement, as stipulated pursuant to the Settlement Deed.  The Dante Proof of Claim stated an amount of $17,755,614.70, representing the amount of the Dante Claim converted to U.S. Dollars using the exchange rate provided by the "Bloomberg page EUUS Index: 1 USD = 0.7126" as of the Early Termination Date, plus fees and expenses incurred pursuant to Section 11 of the Dante Swap Agreement up to September 11, 2009, in the amount of $35,082.80 (converted from EUR 25,000.00 using the same exchange rate).

12. Also on September 18, 2009, Programma Dinamico filed a proof of claim, assigned Claim No. 19276 (the "Petrarca Proof of Claim" and, together, with the Dante Proof of Claim, the "Proofs of Claim), asserting a claim against LBSF arising from the Petrarca Swap

4

Agreement, as stipulated pursuant to the Settlement Deed. The Petrarca Proof of Claim stated an amount of $17,765,114.76, representing the amount of the Petrarca Claim converted to U.S. Dollars using the exchange rate provided by the "Bloomberg page EUUS Index: 1 USD = 0.7126" as of the Early Termination Date, plus fees and expenses incurred pursuant to Section 11 of the Petrarca Swap Agreement up to September 11, 2009, in the amount of $35,082.80 (converted from EUR 25,000.00 using the same exchange rate).

13.     On February 1, 2010, Programma Dinamico and Goldman Sachs Lending Partners LLC ("GSLP") entered into a Claim Purchase Agreement pursuant to which Programma Dinamico transferred to GSLP all of its rights, title, and interest in and to the Dante Claim (including the Dante Proof of Claim) and the Petrarca Claim (including the Petrarca Proof of Claim).

14.     On February 26, 2010, GSLP and HBK entered into a Claim Purchase Agreement pursuant to which GSLP transferred to HBK all of its rights, title and interest in and to the Dante Claim (including the Dante Proof of Claim) and the Petrarca Claim (including the Petrarca Proof of Claim).

15.     On July 12, 2011, the Debtors filed the Objection, seeking to reduce the amount of the Dante Claim to $17,434,282.79 (the "Dante Reduced Amount") and the amount of the Petrarca Claim to $17,478,145.45 (the "Petrarca Reduced Amount" and, together, with the Dante Reduced Amount, the "Reduced Amounts"). In support of proposed Reduced Amounts set forth in the Objection, the Debtors incorrectly state, without any support, that the "holders of the Settled Derivatives Claims agreed that their claims are properly asserted … in the reduced amounts." Objection ¶ 12.

5

16. The initial deadline for responding to the Objection was August 10, 2011, with the initial hearing on the Objection scheduled for August 25, 2011. The parties agreed to extensions of the response deadline and hearing while the parties attempted to resolve the matter consensually. Such efforts have proven unsuccessful.

## Argument

17. The Debtors have failed to carry their burden of proof in rebutting the *prima facie* validity of the Proofs of Claim. "A proof of claim is prima facie evidence of the validity and amount of a claim." In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Comms. Corp., Case No. 02-41729-REG, 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007). In order to rebut the *prima facie* validity of the Proofs of Claim, the Debtors must offer sufficient evidence to refute at least one of the essential allegations asserted in the Proofs of Claim. See id.

18. The Debtors have not offered any, much less *sufficient* evidence, to dispute the amount of the Claims set forth on the Proofs of Claim. In fact, as applied to the Claims, the Objection is patently false. HBK has never agreed in writing or otherwise to the Reduced Amounts. Cf. Objection ¶ 12 ("The holders of the Settled Derivatives Claims agreed that their claims are properly asserted against the Debtor counterparty … in the reduced amounts."). To the best of HBK's knowledge, none of GSLP, Programma Dinamico, Dante or Petrarca has agreed in writing or otherwise to the Reduced Amounts.[1] The Settlement Deed with the Debtors

---

[1] The Debtors have pointed to two proofs of claim filed by The Bank of New York Mellon-London Branch ("BNY Mellon") purportedly on behalf of Dante and Petrarca as support for the Debtors' position that the Reduced Claims were agreed to. See Claim No. 29373 and 40713 (the "BNY Mellon Claims"). BNY Corporate Trustee Services Limited, not BNY Mellon, served as trustee (the "Trustee") for holders of the Notes issued by Dante and Petrarca. First, BNY Mellon, not the Trustee, filed the BNY Mellon Claims. Second, the BNY Mellon Claims were filed on September 22, 2009, approximately two months after Dante and Petrarca transferred the Claims to Programma Dinamico. Therefore, BNY Mellon lacked authority to file the BNY Mellon Claims on behalf of Dante and Petrarca or to bind Programma Dinamico to the Reduced Amount without its consent.

6

does not even provide for the allowance of the Claims in the Reduced Amounts. Indeed, the Objection fails to reference any document reflecting an agreement to the Reduced Amounts by any holder of the Claims. The Debtors do not cite to any case or section of the Bankruptcy Code to support their position. Rather, the Objection is wholly based on a patently false assertion.

19. Knowing that there is no agreement to the proposed Reduced Amounts set forth in the Objection, the Debtors have changed tack and incorrectly argued in discussions with HBK that the Bankruptcy Code requires conversion of the Claims to U.S. Dollars as of the Petition Date, rather than the Early Termination Date.

20. The amounts set forth in the Proofs of Claim represent the proper amount of the Claims pursuant to the Settlement Deed and the applicable provisions of the Bankruptcy Code. The Settlement Deed, as drafted by the Debtors, allowed the Claims in Euros. The Bankruptcy Code provides that claims must be determined in U.S. Dollars. See 11 U.S.C. § 502(b). Bankruptcy Code § 502(b) provides that the court shall determine claims "in lawful currency of the United States as of the date of the filing of the petition" except as provided in subsection (g). Bankruptcy Code § 502(g)(2) provides that a claim calculated in accordance with Section 562 shall be allowed under Section 502(b) as if such claim arose before the date of the filing of the petition.

21. Bankruptcy Code § 562 provides for the timing of measuring damages relating to the termination of "safe harbored" contracts. For example, if a swap participant terminates a swap agreement, damages are measured as of the date of such termination, not as of the petition date. See 11 U.S.C. § 562(a)(2).

22. Congress added Section 562 and amended Section 502(g) at the same time in order to address damages arising from the termination of swap agreements, among other "safe

7

harbored" contracts. See 4 Collier on Bankruptcy ¶ 502.08[3] (16th ed.). The legislative history behind Section 502(g)(2) indicates that the purpose of the provision is not to alter the timing of the determination of the claim amount[2] provided in Bankruptcy Code § 562, but rather to provide for the allowance of the claim as if it were a pre-petition claim (i.e., not a post-petition claim that might be entitled to administrative priority status). See id.

23. Dante and Petrarca terminated the Swap Agreements effective as of the Early Termination Date. Recital K of the Settlement Deed acknowledges the Early Termination Date as July 29, 2009. On that date, Dante and Petrarca provided LBSF a termination statement showing a damage calculation. The respective termination statements and early termination notices were attached to the Settlement Deed as Schedules. See Exhibit A, Schedules 12, 13, 16 and 17. The Settlement Deed further provides that the allowance of the Claims is "in consideration of the termination of the [Petrarca/Dante] Transaction." Exhibit A ¶¶ 2.2, 2.3.

24. The language of the Settlement Deed and its Schedules unambiguously shows that the Claims were calculated based on the Early Termination Date, which comports with Section 562.

25. Converting the Claims from Euros to U.S. Dollars, as required by the Bankruptcy Code, is part and parcel of calculating the amount of the Claims. It would be utterly illogical to use the Early Termination Date to value the amounts owed under the Swap Agreements in Euros,

---

[2] Bankruptcy Code § 502(g)(2) differs from Section 502(g)(1) as to the timing of determining the claim amount. Bankruptcy Code § 502(g)(1) provides that a claim arising from a contract that is rejected under Section 365 is *determined* "the same as if such claim had arisen before the date of the filing of the petition." The word "determined" is omitted from Section 502(g)(2), which instead defers to the timing of determining the claim amount provided in Section 562. Cf. In re Global Power Equipment Group Inc., 2008 WL 435197, at *5, *9 (Bankr. D. Del. Feb. 14, 2008) aff'd, 400 B.R. 17 (D. Del. 2009) (holding that a foreign currency claim arising from a contract rejected pursuant to Section 365, as provided in Section 502(g)(1), should be converted to U.S. Dollars as of the petition date because the amount of the claim cannot fluctuate post-petition). Global Power did not concern a claim arising from a safe-harbored contract, which fluctuates post-petition under Section 562, among other safe harbor provision of the Bankruptcy Code, and the case clearly is distinguishable, but useful in understanding the distinction between Sections 502(g)(1) and 502(g)(2).

8

but use the Petition Date to convert those amounts from Euros to U.S. Dollars. For example, if the Swap Agreements at issue here were currency swaps, where one of the referenced currencies was U.S. Dollars, using the Early Termination Date to calculate the amounts owed in the foreign currency, but using the Petition Date to covert the amount to U.S. Dollars, actually would nullify Section 562 by "reversing" the payment calculation made on the Early Termination Date. This illogical result cannot reflect Congress's intention in drafting Section 562. See H.R. Rep No. 109-31, at 134-35 (2005) ("It is expected that measuring damages as of a date or dates before the date of liquidation, termination, or acceleration will occur only in very unusual circumstances.").

26. Equitable considerations also favor using the Early Termination Date to convert the Claims to U.S. Dollars. LBSF received the Excess Cash payment in Euros as a condition to the allowance of the Claims. Permitting LBSF to take advantage of a more favorable exchange rate in connection with amounts calculated in Euros at or near the same time as the Claims, while denying that right to the terminating counterparty, apart from simply appearing unfair, encroaches on the intent of Congress to preserve the terms of a swap agreement notwithstanding a counterparty's bankruptcy. See S. Rep. No. 101-285 (1990), available at 1990 WL 25928, at *9 ("[C]ontractual rights [in swap agreements] are not to be interfered with by any court proceeding under the [Bankruptcy] Code.").

27. Also supportive of use of the Early Termination Date to convert the Claims to U.S. Dollars is the Debtors' practice of stating all terminated derivative claims in U.S. Dollars in the termination agreements. As disclosed in discussions with the Debtors regarding the Objection, they instituted this practice one week after the execution of the Settlement Deed. The Court should not permit the Debtors to contradict their stated practice, and choose a conversion date that results in an economic windfall for the Debtors.

9

### **Conclusion**

28. Presenting absolutely no evidence to support the Objection, the Debtors cannot overcome the *prima facie* validity of the Claims. 11 U.S.C. § 502(a); Fed. Bankr. P. 3001(f); In re Armstrong, 434 B.R. 120, 126 (Bankr. S.D.N.Y. 2010). Other than a patently erroneous statement that the parties agreed to the Reduced Amount, the Objection should be overruled in its entirety. As to the portion of the Reduced Amount attributable to the use of the Petition Date to convert the Claims to U.S. Dollars, the Bankruptcy Code is clear that the appropriate reference date is the Early Termination Date.

WHEREFORE, HBK respectfully requests that this Court deny the Debtors' Objection to the Claims.

Dated: March 14, 2012
New York, New York

Respectfully submitted,

HUNTON & WILLIAMS LLP

*/s/ Peter S. Partee, Sr.*
Peter S. Partee, Sr.
200 Park Avenue
New York, New York 10166-0005
(212) 309-1000

-and-

J.R. Smith (admitted *pro hac vice*)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

*Counsel for HBK Master Fund L.P.*