# EXHIBIT A

**(Settlement Deed)**

**EXECUTED COPY**

# SETTLEMENT DEED

### 30 JULY 2009

**BNY CORPORATE TRUSTEE SERVICES LIMITED**

**THE BANK OF NEW YORK MELLON**

**BNY FINANCIAL SERVICES PLC**

**LEHMAN BROTHERS SPECIAL FINANCING INC.**

**DANTE FINANCE PUBLIC LIMITED COMPANY**

**PETRARCA FINANCE PUBLIC LIMITED COMPANY**

**ANGIOLIERI FINANCE PUBLIC LIMITED COMPANY**

**BOCCACCIO FINANCE PUBLIC LIMITED COMPANY**

**PROGRAMMA DINAMICO S.p.A.**

**and**

**POSTE VITA S.p.A**

# ALLEN & OVERY

Allen & Overy
Rome

# INDEX

**Clause**

**Page**

| | | |
|---|---|---|
| 1. | Definitions | 6 |
| 2. | Settlement | 8 |
| 3. | Settlement sums | 10 |
| 4. | Payments | 10 |
| 5. | Account Details | 11 |
| 6. | Set Off | 12 |
| 7. | Consent and release by the Trustee and directions by Noteholder | 12 |
| 8. | Non-admission of liability | 13 |
| 9. | Hold Harmless and Direction to the Trustee and Issuers | 13 |
| 10. | Representations | 14 |
| 11. | Independent advice | 14 |
| 12. | No further claim | 14 |
| 13. | Non-repetition of claims | 14 |
| 14. | Entire Agreement | 15 |
| 15. | Remedies and Waivers | 15 |
| 16. | IrishTaxation | 15 |
| 17. | General | 15 |

**Schedules**

**Page**

Schedule 1 - Programma Dinamico Proof of Holding ... 19
Schedule 2 – Dante Proof of Holding ... 20
Schedule 3 – Petrarca Proof of Holding ... 21
Schedule 4 – Angiolieri Proof of Holding ... 22
Schedule 5 – Boccaccio Proof of Holding ... 23
Schedule 6 – Dante Swap Agreement ... 24
Schedule 7 – Petrarca Swap Agreement ... 25
Schedule 8 – Angiolieri Swap Agreement ... 26
Schedule 9 – Boccaccio Swap Agreement ... 27
Schedule 10 – Dante Written Resolution ... 28
Schedule 11 – Petrarca Written Resolution ... 29
Schedule 12 – Dante Form of Early Termination Notice ... 30
Schedule 13 – Petrarca Form of Early Termination Notice ... 32
Schedule 14 – Angiolieri Form of Early Termination Notice ... 34
Schedule 15 – Boccaccio Form of Early Termination Notice ... 36
Schedule 16 – Dante Form of Termination Statement ... 38
Schedule 17 – Petrarca Form of Termination Statement ... 41
Schedule 18 – Angiolieri Form of Termination Statement ... 44
Schedule 19 – Boccaccio Form of Termination Statement ... 47
Schedule 20 – Settlement Sums – Dante Notes and Dante Swap Agreement ... 50
Schedule 21 – Settlement Sums – Petrarca Notes and the Petrarca Swap Agreement ... 51
Schedule 22 – Settlement Sums – Angiolieri Notes and Angiolieri Swap Agreement ... 52
Schedule 23 – Settlement Sums – Boccaccio Notes and Boccaccio Swap Agreement ... 53

Schedule 24 - Angiolieri Notes List of Payments and Deductions ................................................................. 54
Schedule 25 – Boccaccio Notes List of Payments and Deductions ............................................................... 56
Schedule 26 – Dante Notes List of Payments and Deductions ...................................................................... 58
Schedule 27 – Petrarca Notes List of Payments and Deductions .................................................................. 60
Schedule 28 – LBSF Creditors Committee's Resolution, Notice of Debtors' Motion dated 13 November 2008,
U.S. Bankruptcy Court Order dated 16 December 2008...……………………………………………..63

**THIS DEED** is made on 30 July 2009

**AMONG**:

(1)     **BNY Corporate Trustee Services Limited** whose registered office is at One Canada Square, London, E14 5AL, United Kingdom (**Trustee**);

(2)     **Lehman Brothers Special Financing Inc.** whose business office is at 1271 Avenue of the Americas, 46th Floor, New York, NY, 10020 - U.S.A. (**LBSF** or **Swap Counterparty**);

(3)     **Poste Vita S.p.A.** whose registered office is at Piazzale Konrad Adenauer n. 3, 00144, Rome, Italy (**Poste Vita**);

(4)     **Programma Dinamico S.p.A.** whose registered office is at Viale Liegi n. 44, 00198, Rome, Italy (**Programma Dinamico** or the **Noteholder**);

(5)     **Dante Finance Public Limited Company** whose registered office is at AIB International Centre, International Financial Services Centre, Dublin 1, Ireland (**Dante**);

(6)     **Petrarca Finance Public Limited Company** whose registered office is at AIB International Centre, International Financial Services Centre, Dublin 1, Ireland (**Petrarca**);

(7)     **Angiolieri Finance Public Limited Company** whose registered office is at AIB International Centre, International Financial Services Centre, Dublin 1, Ireland (**Angiolieri**);

(8)     **Boccaccio Finance Public Limited Company** whose registered office is at AIB International Centre, International Financial Services Centre, Dublin 1, Ireland (**Boccaccio** and together with Dante, Petrarca and Angiolieri, each also the **Issuer** and together the **Issuers**);

(9)     **The Bank of New York Mellon** whose registered office is at One Canada Square, London, E14 5AL, United Kingdom (**Issuing and Paying Agent, Registrar, Custodian and Transfer Agent**); and

(10)     **BNY Financial Services Public Limited Company** whose registered office is at 4th Floor, Hanover Building, Windmill Lane, Dublin 2 (**Paying Agent and Transfer Agent**),

(together the **Parties** and each a **Party**).

**WHEREAS**:

(A)     Poste Vita holds, on its own account and as representative of another noteholder, an outstanding principal amount of EUR 204,800,000 of an original principal amount of the "EUR 388,650,000 Asset Backed Index Linked Notes" due 16 October 2012 issued by Programma Dinamico (ISIN:IT0003378210) in the context of a securitisation transaction pursuant to Law 130 of 30 April 1999 (the **PD Notes**) (*See Schedule 1 – Programma Dinamico Proof of Holding*). The securitisation transaction forms part of a structure to which other transactions (as outlined below) relate, including *inter alia*, an issue by Poste Vita of index linked insurance policies whose performance is linked to the performance of the PD Notes;

(B)     Programma Dinamico holds one hundred per cent. of:

(i) an outstanding principal amount of the "Series No 2002-01 EUR 102,400,000 Secured Variable Redemption Amount Index-Linked Puttable Notes due 2012" of an original principal amount of EUR 194,300,000 issued by Dante (the **Dante Notes**) (*See Schedule 2 – Dante Proof of Holding*);

(ii) an outstanding principal amount of the "Series No 2002-01 EUR 102,400,000 Secured Variable Redemption Amount Index-Linked Puttable Notes due 2012" of an original principal amount of EUR 194,350,000 issued by Petrarca (the **Petrarca Notes**) (*See Schedule 3 – Petrarca Proof of Holding*);

(C) Dante holds one hundred per cent. of an outstanding principal amount of the "Series No 2002-01 EUR 102,400,000 Secured Floating Rate Puttable Notes due 2012" of an original principal amount of the "Series No 2002-01 EUR 194,300,000 Secured Variable Redemption Amount Credit-Linked Puttable Notes due 2012" issued by Angiolieri (the **Angiolieri Notes**) (*See Schedule 4 – Angiolieri Proof of Holding*);

(D) Petrarca holds one hundred per cent. of  an outstanding principal amount of the "Series No 2002-01 EUR 102,400,000 Secured Floating Rate Puttable Notes due 2012" of an original principal amount of the "Series No 2002-01 EUR 194,350,000 Secured Variable Redemption Amount Credit-Linked Puttable Notes due 2012", issued by Boccaccio (the **Boccaccio Notes** and together with the Dante Notes, the Petrarca Notes and the Angiolieri Notes, each and all also the **Notes**) (*See Schedule 5 – Boccaccio Proof of Holding*);

(E) Dante has entered into an ISDA Master Agreement (including the Schedule, the **ISDA Master Agreement**) dated 10 October 2002, as amended and supplemented from time to time, a Credit Support Annex (the **Dante CSA**) and an equity swap transaction (the **Dante Transaction**) evidenced by the confirmation dated 16 October 2002, as amended and restated on 19 September 2007 (the **Dante Confirmation** and together with the Dante CSA, the **Dante Swap Agreement**) with LBSF as Swap Counterparty (*See Schedule 6 – Dante Swap Agreement*);

(F) Petrarca has acceded to the ISDA Master Agreement, by way of a deed of accession dated 10 October 2002 and entered into with, inter alios, LBSF and the Trustee (the **Petrarca Deed of Accession**), and also entered into a Credit Support Annex (the **Petrarca CSA**) and an equity swap transaction (the **Petrarca Transaction**) evidenced by the confirmation dated 16 October 2002, as amended and restated on 19 September 2007 (the **Petrarca Confirmation** and together with the Petrarca CSA, the **Petrarca Swap Agreement**) with LBSF as Swap Counterparty (*See Schedule 7 – Petrarca Swap Agreement*);

(G) Angiolieri has acceded to the ISDA Master Agreement, by way of a deed of accession dated 10 October 2002 and entered into with, inter alios, LBSF and the Trustee (the **Angiolieri Deed of Accession**), and also entered into a Credit Support Annex (the **Angiolieri CSA**) and a credit default swap transaction (the **Angiolieri Transaction**) evidenced by the confirmation dated 16 October 2002, as amended and restated on 19 September 2007 (the **Angiolieri Confirmation** and together with the Angiolieri CSA, the **Angioleri Swap Agreement**) with LBSF as Swap Counterparty (*See Schedule 8 – Angiolieri Swap Agreement);*

(H) Boccaccio has acceded to the ISDA Master Agreement, by way of a deed of accession dated 10 October 2002 and entered into with, inter alios, LBSF and the Trustee (the **Boccaccio Deed of Accession** and together with the Petrarca Deed of Accession and the Angiolieri Deed of Accession, also the **Deeds of Accession**), and also entered into a Credit Support Annex (the **Boccaccio CSA** and together with the Dante CSA, the Petrarca CSA and the Angiolieri CSA, each a **CSA** and together the **CSAs**) and a credit default swap transaction (the **Boccaccio Transaction**, and together with the Dante Transaction, the Petrarca Transaction  and the Angiolieri Transaction, each also a **Transaction** and together the **Transactions**) evidenced by the confirmation dated 16 October 2002, as amended

5

and restated on 19 September 2007 (the **Boccaccio Confirmation** and together with the Boccaccio CSA, the **Boccaccio Swap Agreement**, and together with the Dante Swap Agreement, the Petrarca Swap Agreement and the Angiolieri Swap Agreement, each the **Swap Agreement** and together, but with the exclusion of the ISDA Master Agreements, the **Swap Agreements**) with LBSF as Swap Counterparty (*See Schedule 9 – Boccaccio Swap Agreement*);

(I)    on October 3, 2008, LBSF as Swap Counterparty with respect to the Swap Agreements, filed a petition in the United States Bankruptcy Court for the Southern District of New York seeking relief under chapter 11 of the United States Bankruptcy Code. Such event constitutes an Event of Default under Section 5(a)(vii)(4) of the ISDA Master Agreement;

(J)    as a result of such Event of Default, Programma Dinamico as Noteholder of the Dante Notes and the Petrarca Notes, and as ultimate beneficiary of respectively the Angiolieri Notes and the Boccaccio Notes, has *inter alia* respectively directed, by way of written resolutions dated 29 July 2009:

    (1) Dante (i) to terminate the Dante Swap Agreement, (ii) to call an Early Redemption of the Dante Notes, (iii) to enter into this Settlement Deed and (iv) as sole noteholder of the Angiolieri Notes, to instruct Angiolieri (a) to terminate the Angiolieri Swap Agreement, (b) to call an Early Redemption of the Angiolieri Notes and (c) to enter into this Settlement Deed (*See Schedule 10 – Dante Written Resolution*);

    (2) Petrarca (i) to terminate the Petrarca Swap Agreement, (ii) to call an Early Redemption of the Petrarca Notes, (iii) to enter into this Settlement Deed and (iv) as sole noteholder of the Boccaccio Notes, to instruct Boccaccio (a) to terminate the Boccaccio Swap Agreement, (b) to call an Early Redemption of the Boccaccio Notes and (c) to enter into this Settlement Deed (*See Schedule 11 – Petrarca Written Resolution*);

(K)    on 29 July 2009 the Dante Swap Agreement, Petrarca Swap Agreement, Angiolieri Swap Agreement and Boccaccio Swap Agreement were terminated according to respectively the Dante Early Termination Notice (*See Schedule 12 – Dante Form of Early Termination Notice*), Petrarca Early Termination Notice (*See Schedule 13 – Form of Petrarca Early Termination Notice*), Angiolieri Early Termination Notice (*See Schedule 14 – Form of Angiolieri Early Termination Notice*) and Boccaccio Early Termination Notice (*See Schedule 15 – Form of Boccaccio Early Termination Notice*), delivered in each case pursuant to Section 6(a) of the ISDA Master Agreement and designating 29 July 2009 as the Early Termination Date in relation to the Swap Agreements (the **Early Termination Date**);

(L)    on 29 July 2009 termination statements, as required under Section 6(d)(i) of the ISDA Master Agreement, were delivered to LBSF by respectively Dante (the **Dante Termination Statement**) (*See Schedule 16 – Form of Dante Termination Statement*), Petrarca (the **Petrarca Termination Statement**) (*See Schedule 17 – Form of Petrarca Termination Statement*), Angiolieri (the **Angiolieri Termination Statement**) (*See Schedule 18 – Form of Angiolieri Termination Statement*) and Boccaccio (the **Boccaccio Termination Statement**) (*See Schedule 19 – Form of Boccaccio Termination Statement*); and

(M)    the Parties have agreed that they will settle any claims in respect of the Notes and the Swap Agreements on the terms set out below.

**IT IS AGREED**:

**1.**    **DEFINITIONS**

    In this Settlement Deed:

**Affiliate** means any parent, subsidiary or associated company of a Party or any entity in any way related to a Party, and its managements bodies, employees and its consultants/advisers and any other individuals acting as representative of, or, in all events, acting in the interest of, any company belonging to a Party, in each case, with the exclusion of any non-U.S. Affiliates for LBSF.

**Angiolieri CSA Collateral** means the Credit Support Balance as defined in the Angiolieri CSA.

**Angiolieri Excess Cash** means EUR 4,327,619.21, being the cash amount equal to the excess of the Angiolieri CSA Collateral over the mark to market value of the Angiolieri Transaction.

**Boccaccio CSA Collateral** means the Credit Support Balance as defined in the Boccaccio CSA.

**Boccaccio Excess Cash** means EUR 3,323,286.49 being the cash amount equal to the excess of the Boccaccio CSA Collateral over the mark to market value of the Boccaccio Transaction.

**Claim** means each and any claim, counter-claim, cause or right of action or proceedings, of whatsoever nature and howsoever arising (whether at law or in equity and whether in contract, tort or otherwise), in or under the law of any jurisdiction (including but not limited to England and Wales, Ireland, New York, the USA or Italy), whether secured, proprietary, by way of tracing, priority or otherwise, whether by way of contribution or subrogation or otherwise, arising out of, or relating in any way directly or indirectly to the Notes and/or the Swap Agreements whether known or unknown to the Parties, whether or not presently known to the law and whether arising before on or after the date of this Settlement Deed.

**Conditions** means each and all terms and conditions in relation to the Dante Notes, Petrarca Notes, Angiolieri Notes and Boccaccio Notes, as the case may be.

**CSA Collateral** means collectively the Dante CSA Collateral, the Petrarca CSA Collateral, the Angiolieri CSA Collateral and the Boccaccio CSA Collateral.

**Dante CSA Collateral** means the Credit Support Balance as defined in the Dante CSA.

**Disposal Agent** means Barclays Bank PLC.

**Excess Cash** means the Angiolieri Excess Cash and the Boccaccio Excess Cash.

**Petrarca CSA Collateral** means the Credit Support Balance as defined in the Petrarca CSA.

**Principal Trust Deed** means the principal trust deed dated 10 October 2002, as amended and supplemented from time to time between Dante and the Trustee, to which Petrarca, Angioleri and Boccaccio have acceded pursuant to the relevant Deeds of Accession.

**Settlement Amount** means the theoretical value provided by Barclay Bank PLC in accordance with the terms of an appointment letter dated 29 July 2009..

**Settlement Date** means on or before 3 August 2009.

**Supplemental Trust Deeds** means each and all of (i) supplemental trust deed and drawdown agreement dated 16 October 2002 in respect of the Dante Notes between, among others, Dante and the Trustee (the **Dante Supplemental Trust Deed**), (ii) supplemental trust deed and drawdown agreement dated 16 October 2002 in respect of the Petrarca Notes between, among others, Petrarca and the Trustee (the **Petrarca Supplemental Trust Deed**), (iii) supplemental trust deed and drawdown agreement dated 16 October 2002 in respect of the Angiolieri Notes between, among others, Angioleri and the Trustee (the **Angiolieri Supplemental Trust Deed**) and (iv) supplemental

7

trust deed and drawdown agreement dated 16 October 2002 in respect of the Boccaccio Notes between, among others, Boccaccio and the Trustee (the **Boccaccio Supplemental Trust Deed**).

**Swap Unwind Costs** means, notwithstanding any provision to the contrary contained in the Conditions of the Notes, an amount as indicated in Clause 3 below, as approved by LBSF, equal to the sum of the Settlement Amount and the unpaid amounts in respect of each Swap Agreement, which shall not include any other amount.

Words denoting persons shall include bodies corporate and unincorporated associations of persons and any references to the singular shall include the plural and vice versa.

Capitalised terms used but not otherwise defined herein shall have the meaning given to such terms in the Conditions, the Swap Agreements, the Principal Trust Deed and the Supplemental Trust Deeds, as applicable.

The headings in this Settlement Deed are for convenience only and do not affect its interpretation.

## 2.    SETTLEMENT

2.1    Conditional upon receipt by LBSF of the Excess Cash, and subject to Clauses 2.2 and 2.3 below, this Settlement Deed is in full and final settlement of:

(a)    all and any Claims of LBSF and its Affiliates against the Issuers, and/or the Trustee and its Affiliates, as the case may be;

(b)    all and any Claims of an Issuer against any other Issuer;

(c)    all and any Claims of Programma Dinamico, Poste Vita and its Affiliates and/or the Trustee and its Affiliates, as the case may be, against any Issuer; and

(d)    all and any Claims of the Issuers, Programma Dinamico, Poste Vita and its Affiliates and/or the Trustee and its Affiliates, as the case may be, against LBSF and its Affiliates.

2.2    In consideration of the termination of the Petrarca Transaction, LBSF hereby agrees to the allowance of general, unsecured claims which relate to the Petrarca Swap Agreement (the "**Petrarca Allowed Claims**") against it in its chapter 11 cases in favour of Petrarca in the amount of EUR 12,659,420.78 (the **Petrarca Residual Settlement Amount**) in full and complete satisfaction of all of the claims of Petrarca under the Petrarca Transaction, provided, however, that the aggregate recovery of Petrarca in respect of the Petrarca Allowed Claims shall not exceed the Petrarca Residual Settlement Amount, and LBSF acknowledges that such Petrarca Allowed Claims may be assigned to a third party, provided, further, however, that if Petrarca or any of its successors or assigns or any other party that owns the Petrarca Allowed Claims, attempts to setoff, recoup, or otherwise recover all or any portion of the Petrarca Allowed Claims against any claims or other obligations owing to LBSF or any of its affiliates by Petrarca, its successors, or assigns, or such other party, as applicable, the Petrarca Residual Settlement Amount shall immediately, automatically, and irrevocably be reduced to $0.00.

2.3    In consideration of the termination of the Dante Transaction, LBSF hereby agrees to the allowance of general, unsecured claims which relate to the Dante Swap Agreement (the "**Dante Allowed Claims**") against it in its chapter 11 cases in favour of Dante in the amount of EUR 12,627,651.03 (the **Dante Residual Settlement Amount**) in full and complete satisfaction of all of the claims of Dante under the Dante Transaction, provided, however, that the aggregate recovery of Dante in

respect of the Dante Allowed Claims shall not exceed the Dante Residual Settlement Amount, and LBSF acknowledges that such Dante Allowed Claims may be assigned to a third party, provided, further, however, that if Dante or any of its successors or assigns or any other party that owns the Dante Allowed Claims, attempts to setoff, recoup, or otherwise recover all or any portion of the Dante Allowed Claims against any claims or other obligations owing to LBSF or any of its affiliates by Dante, its successors, or assigns, or such other party, as applicable, the Dante Residual Settlement Amount shall immediately, automatically, and irrevocably be reduced to $0.00.

2.4    The Parties hereby take note and agree that with the undertakings and the waivers mutually agreed upon under the terms of this Settlement Deed and with the payments referred to in Clause 4 below, they have made appropriate and adequate concessions such that this Settlement Deed can be deemed a validly negotiated settlement. Consequently, all Claims and demands by any Party and its Affiliates against any other Party and its Affiliates, the actions or circumstances referred to in the Recitals above and any events connected with any past relations among the Parties and its Affiliates in respect of the Transactions shall be deemed terminated and abandoned and at all events definitively waived and closed.

2.5    Notwithstanding the terms of the ISDA Master Agreement and the Dante Confirmation, Petrarca Confirmation, Angiolieri Confirmation and Boccaccio Confirmation, in consideration of the execution of this Deed by the Parties, and conditional upon receipt by LBSF of the Excess Cash, LBSF and each Issuer, together with their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (i) are each released and discharged from any and all obligations to each other Party with respect to the Transactions given in respect of each Transaction and their respective rights against each other thereunder are cancelled (including, without limitation, any rights, liabilities or obligations of LBSF, the or the relevant Issuer with respect to payments or other obligations due and payable or due to be performed on or prior to the Early Termination Date) and (ii) without prejudice to (i) above, are released and discharged from all manners of action, causes of action, judgements, executions, debt demand rights, damages and claims of every kind, whether in law or in equity, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, arising under or related to the Transactions given in respect of the Transactions.

2.6    The Parties each confirm for the benefit of the other Parties that, subject to Clauses 2.2 and 2.3, if any claim, action, suit or proceeding is brought in any jurisdiction relating to any Claim, this Settlement Deed is intended to be a complete defence thereto.

2.7    For the avoidance of doubt, the Parties agree that the terminations, releases and discharges set out in this Clause 2 and the other provisions of this Settlement Deed, shall only relate to claims, rights, demands and set-offs of the Parties relating solely to the Notes and the Swap Agreements, and shall not affect the claims, rights, demands and set-offs of the Parties pursuant to any other Series under the Dante Finance Public Limited Company Multi-Issuer Secured Obligation Programme or other issuances.

2.8    Each Party agrees that nothing agreed, conceded, incorporated or otherwise contained in this Settlement Deed shall constitute a waiver of any past, present or future position that a Party may have on any other transactions (other than in respect of the Transactions) and that the terms of the settlement reached under this Settlement Deed shall be limited to the specific Transactions, and shall not bind any Party in respect of any other transactions (other than the Transactions).

2.9    Each Party hereby agrees that following both:

(i) the execution of this Settlement Deed; and

(ii) the early redemption of the Notes,

all rights and obligations of each Party under (a) the Principal Trust Deed, to the extent incorporated into the Supplemental Trust Deeds in respect of the Notes and (b) the Supplemental Trust Deeds in respect of the Notes and (c) in respect of any other transaction documents relating to the Notes, shall be terminated. For the avoidance of doubt, this shall not affect the rights of the Parties under the Principal Trust Deed or any other documents other than in respect of the Notes and any other rights or obligations in respect of the Notes.

3.    **SETTLEMENT SUMS**

Each Party acknowledges and agrees that the amounts relating to (i) the Dante Notes and the Dante Swap Agreement as set out in Schedule 20 (*Settlement Sums – Dante Notes and Dante Swap Agreement*); (ii) the Petrarca Notes and the Petrarca Swap Agreement as set out in Schedule 21 (*Settlement Sums – Petrarca Notes and Petrarca Swap Agreement*); (iii) the Angiolieri Notes and the Angiolieri Swap Agreement as set out in Schedule 22 (*Angiolieri Notes and Angiolieri Swap Agreement*); and (iv) the Boccaccio Notes and the Boccacccio Swap Agreement as set out in Schedule 23 (*Settlement Sums – Boccacccio Notes and Boccaccio Swap Agreement*) accurately and completely represent the sums to be  paid to such Party pursuant to Clause 4 below.

4.    **PAYMENTS**

4.1    The Parties agree that on the Settlement Date (notwithstanding any provision to the contrary in the Conditions):

(a)    with respect to the Angiolieri Notes, Angiolieri shall pay or procure to pay (net of the Angiolieri Costs, as defined below) the Early Redemption Amount (as defined in Condition 45) relating to the Angiolieri Notes, the sale proceeds of the Angiolieri CSA Collateral (following its sale to the Disposal Agent), and any residual cash held by Angiolieri relating to the Angiolieri Notes, to Dante, as sole noteholder of the Angiolieri Notes, subject to (i) the payment by Angiolieri to the Swap Counterparty of the Angiolieri Excess Cash and (ii) following such payment to the Swap Counterparty, payment of any costs (the **Angiolieri Costs**) incurred in connection with the Angiolieri Notes or this Settlement Deed by the Trustee, or the relevant agents under the Angiolieri Notes and Dante as noteholder, as the case may be, in accordance with the Priority of Payments as set out in Clause 5.5. of the Angiolieri Supplemental Trust Deed and as provided in Schedule 24 (*Angiolieri Notes List of Payments and Deductions*);

(b)    with respect to the Boccaccio Notes, Boccaccio shall pay or procure to pay (net of the Boccaccio Costs, as defined below) the Early Redemption Amount (as defined in Condition 45) relating to the Boccaccio Notes, the sale proceeds of the Boccaccio CSA Collateral (following its sale to the Disposal Agent), and any residual cash held by Boccaccio relating to the Boccaccio Notes, to Petrarca as sole noteholder of the Boccaccio Notes, subject to (i) the payment by Boccaccio to the Swap Counterparty of the Boccaccio Excess Cash and (ii) following such payment to the Swap Counterparty, payment of any costs (the **Boccaccio Costs**) incurred in connection with the Boccaccio Notes or this Settlement Deed by the Trustee, the relevant agents under the Boccaccio Notes and Petrarca as noteholder, as the case may be, in accordance with the Priority of Payments as set out in Clause 5.5. of the Boccaccio Supplemental Trust Deed and as provided in Schedule 25 (*Boccaccio Notes List of Payments and Deductions*);

(c)    with respect to the Dante Notes, Dante shall pay or procure to pay (net of the Dante Costs, as defined below) the Early Redemption Amount in relation to the Angiolieri Notes and the sale proceeds of the Angiolieri CSA Collateral (following its sale to the Disposal Agent), received from Angiolieri in accordance with (a) above, the Early Redemption Amount (as defined in

Condition 45) under the Dante Notes, any sale proceeds of the Dante CSA Collateral (following its sale to the Disposal Agent), and any residual cash held by Dante (relating to the Dante Notes) or received from Angiolieri in accordance with (a) above, to the Noteholder, subject to the prior payment of any costs (the **Dante Costs**) incurred in connection with the Dante Notes or this Settlement Deed by the Trustee or the relevant agents under the Dante Notes and the Noteholder, in accordance with the Priority of Payments as set out in Clause 5.5. of the Dante Supplemental Trust Deed and as provided in Schedule 26 (*Dante Notes List of Payments and Deductions*); and

(d) with respect to the Petrarca Notes, Petrarca shall pay or procure to pay (net of the Petrarca Costs, as defined below) the Early Redemption Amount in relation to the Boccaccio Notes and the sale proceeds of the Boccaccio CSA Collateral (following its sale to the Disposal Agent) received from Boccaccio in accordance with (b) above, the Early Redemption Amount (as defined in Condition 45) under the Petrarca Notes, any sale proceeds of the Petrarca CSA Collateral (following its sale to the Disposal Agent) and any residual cash held by Petrarca (relating to the Petrarca Notes) or received from Boccaccio in accordance with (b) above, to the Noteholder, subject to the prior payment of any costs (the **Petrarca Costs**) incurred in connection with the Petrarca Notes or this Settlement Deed by the Trustee or the relevant agents under the Petrarca Notes and the Noteholder, in accordance with the Priority of Payments as set out in Clause 5.5. of the Petrarca Supplemental Trust Deed and as provided in Schedule 27 (*Petrarca Notes List of Payments and Deductions*).

4.2    For the avoidance of doubt, the Disposal Agent will be the purchaser of the Angiolieri CSA Collateral, the Dante CSA Collateral, the Boccaccio CSA Collateral and/or the Petrarca CSA Collateral, in each case, at a price agreed between the Disposal Agent, the Trustee, LBSF and the Noteholder by reference to the prices quoted by the Disposal Agent on Bloomberg in respect of such bonds at or around such time.

## 5.    ACCOUNT DETAILS

5.1    Payment of the Excess Cash to LBSF shall be made to the following account on or before the Settlement Date:

EUR

| | |
|---|---|
| SWIFT to: | CITIGB2L |
| Bank: | Citibank N.A., London (without deduction via direct clearing linkage) |
| IBAN: | GB24CITI18500812136325 |
| For credit to: | Lehman Brothers Special Financing Inc. – DIP |
| BIC: | a/c 001-2136325 |

5.2    Payments and deliveries to the Noteholder in accordance with Clause 4 shall be made to the following account on or before the Settlement Date:

EUR

Account No.:    1466179781

| | |
|---|---|
| Bank: | Bank of New York Mellon (Luxembourg) S.A., Italian Branch |
| IBAN: | IT40A0335101600001466179781 |
| For credit to: | Programma Dinamico S.p.A. |

## 6.    SET OFF

6.1    Without prejudice to Clause 4, the amounts payable (i) by Angiolieri and/or Boccaccio respectively to Dante and Petrarca in relation to the Early Redemption Amount under the Angiolieri Notes and the Boccaccio Notes, as applicable, and (ii) by Dante and/or Petrarca to Programma Dinamico in relation to the Early Redemption Amount under the Dante Notes and the Petrarca Notes, as applicable, under this Settlement Deed, shall be set-off against all amounts owing to Angiolieri and/or Boccaccio by respectively Dante and Petrarca and to Dante and/or Boccaccio by Programma Dinamico, as the case may be, pursuant to the Transfer Agreement entered into among them on the date hereof.

6.2    Without prejudice to Clause 4, the amounts payable by the Issuers, as applicable, to LBSF under this Settlement Deed shall be calculated and made:

(a)    without (and free and clear of any deduction for) any set-off, netting, withholding, combination of accounts or retention in respect of any present or future monies, debts or liabilities owing to each Issuer, as the case may be, or incurred by LBSF or any of LBSF's Affiliates at any time; and

(b)    regardless of any right of equity or counterclaim each Issuer may have against LBSF or any of its Affiliates.

## 7.    CONSENT AND RELEASE BY THE TRUSTEE AND DIRECTION BY NOTEHOLDER

7.1    The Trustee on the express instructions of the Noteholder hereby authorises and, in case of (a) below, the Noteholder hereby directs, the Issuers to (a) enter into this Settlement Deed for the purposes of Clause 5.4 of the Principal Trust Deed and (b) to make payment of the amount to LBSF in accordance with Clause 4 hereof for the purposes of, and in accordance with, Clause 6.2 of the Principal Trust Deed.

7.2    Each of Dante and Petrarca hereby directs Angiolieri and Boccaccio, respectively, to enter into this Settlement Deed for the purposes of Clause 5.4 of the Principal Trust Deed.

7.3    The Trustee on the express instructions of the Noteholder acknowledges the terms of this Settlement Deed, and that following payment in accordance with Clause 4 hereof, LBSF and the Issuers shall be released and discharged from any and all obligations to each other party with respect to the Swap Agreements and that LBSF shall cease to be a creditor of the Issuers.

7.4    The Trustee on the express instructions of the Noteholder hereby irrevocably releases and discharges the sums transferred under Clause 4 above from the Security created by the Issuers under the Principal Trust Deed and reassigns to the Issuers any rights relating to such sums assigned to the Trustee under Clause 5 of the Principal Trust Deed as amended or supplemented by the Supplemental Trust Deeds.

## 8.    NON-ADMISSION OF LIABILITY

None of the Parties makes any admission of liability whether by entering into this Settlement Deed or otherwise.

## 9.    HOLD HARMLESS AND DIRECTION TO THE TRUSTEE AND ISSUERS

9.1    Notwithstanding any other provision in this Settlement Deed, but subject to Clause 9.4, each Party (except for the Trustee and the Issuers) agrees severally and not jointly that neither the Trustee nor the Issuers (each an **"Indemnified Person"**) will be liable for any action taken by it in connection with the steps envisaged by this Settlement Deed, other than for gross negligence or wilful misconduct, and to the extent that a Party (except for the Trustee and the Issuers) has received and relied on any information, analysis or explanations (the **"Information"**) from an Indemnified Person (or any of its advisers) in connection with the steps envisaged by this Settlement Deed, each Party (except for the Trustee and the Issuers) agrees that (i) such Information is confidential, (ii) the Indemnified Person supplying it shall not owe such Party any duty or liability in respect of the Information, (iii) if a Party relies on such Information, it does so at its own risk and (iv) such Party shall not bring, or threaten to bring, any actions, proceedings or claims against such Indemnified Person or any of its advisers in any way arising out of or in connection with the Information. No Indemnified Person will be liable for any delay (or any related consequences) in crediting an account with an amount required in respect of the settlement sums to be paid by an Indemnified Person save to the extent that such delay arises from the gross negligence or willful misconduct of such person.

9.2    By signing this Settlement Deed, the Noteholder, in accordance with the Principal Trust Deed, Supplemental Trust Deed and the other transaction documents of the Notes, is hereby directing and instructing the Trustee and the Issuers to execute this Settlement Deed and to be subject to the rights and obligations contained herein that are applicable to them. Furthermore, the Noteholder directs and instructs the Trustee to release security of the Mortgaged Property to permit the transfers and steps contemplated by this Settlement Deed.

9.3    Notwithstanding any other provisions in this Settlement Deed, nothing in this Settlement Deed shall restrict or limit the Trustee or an Issuer from any indemnification claim, or benefitting from any hold harmless or protection provisions, set out in the Principal Trust Deed, Supplemental Trust Deed, other transaction document relating to the Notes or any indemnification letter entered into between the Trustee or, as the case may be, an Issuer and the Noteholder and/or Poste Vita.

9.4    Each of the Parties (other than the Issuers) irrevocably agrees that it will at no time institute, or join any other person in bringing, instituting or joining, any insolvency or examinership proceedings (whether court-based or otherwise) in relation to an Issuer. Each Party hereby agrees that its recourse against an Issuer in respect of any claim arising out of or in connection with this Settlement Deed be limited to the unsecured assets of that Issuer available to meet such claim ("**Available Assets**") and if, having realized its Available Assets, an Issuer have insufficient funds to discharge any amount arising from such claim then the relevant Party shall have no further claim against such Issuer in respect of any such unpaid amounts and such unpaid amounts shall be deemed discharged in full and extinguished and shall not thereafter be revived.

## 10.    REPRESENTATIONS

Each Party represents and warrants to the other Parties hereto that:

(a)    the execution, delivery and performance by it of this Settlement Deed are within its corporate powers and have been duly authorised by all necessary action and, in case of LBSF by the creditors committee as per Schedule 28 (including copy of the Notice of Debtors' Motion, dated 13 November 2008 and the U.S. Bankruptcy Court Order, dated 16 December 2008);

(b)    the execution and delivery by it of, and the performance by such Party of its obligations under, this Settlement Deed will not contravene any regulations, provision of applicable law or, the constitutional documents of such Party, or any agreement or other instrument binding upon it, or any judgment, order or decree of any governmental body, agency or court having jurisdiction over it, and no consent, approval, authorisation or order of, or qualification with, any governmental body or agency is required for the performance by such Party of its obligations under this Settlement Deed and such Party is not in breach of or in default under any agreement or instrument to which it is a party or which is binding on it or any of its assets or revenues, which breach or default is likely to be material in the context of entering into this Settlement Deed; and

(c)    when executed and delivered by such Party and the other Parties hereto, this Settlement Deed will constitute valid and legally binding agreements of such Party, enforceable against it in accordance with its terms.

## 11.    INDEPENDENT ADVICE

For the avoidance of doubt each Party warrants that:

(a)    it has taken independent legal advice in respect of this Settlement Deed;

(b)    it has such knowledge, experience and expertise in financial and business matters that it is capable of independently evaluating the merits of, the risks inherent in and the suitability of this Settlement Deed and/or has obtained all such independent advice as it deems necessary in order to evaluate such merits, risks and suitability; and

(c)    it has determined, based on its own independent review and/or such independent advice as it has deemed necessary, that its entry into the Settlement Deed: (i) is fully consistent with its needs (financial or otherwise), objectives and conditions; (ii) complies and is fully consistent with its corporate objects, constitutional documents and corporate resolutions, and all investment policies, guidelines and restrictions applicable to it; and (iii) is a fit, proper and suitable action for it.

## 12.    NO FURTHER CLAIM

Without prejudice to Clauses 2.2, 2.3 and 9 above, the Parties accept that payments referred to in Clause 4, are in full and final settlement of all Claims in respect of the Transactions as set out in the Recitals, which they or their Affiliates have or may have against any other Party and/or any Affiliate of any other Party.

## 13.    NON-REPETITION OF CLAIMS

13.1    Without prejudice to Clauses 2.2, 2.3 and 9 above, the Parties (except for the Trustee) withdraw (if any) any and all Claims in respect of the Transactions as set out in the Recitals, and any allegations

made by them in respect of the Notes and the Swap Agreements and undertake not to repeat, or authorise the publication or other disclosure to any third party of, the same, or any similar, allegations or claims.

13.2    Without prejudice to Clauses 2.2, 2.3 and 9 above, the Parties (except for the Trustee) undertake not to bring any claims in respect of the Transactions as set out in the Recitals, whether by originating proceedings, counterclaim, arbitration or otherwise against any third party.

**14.    ENTIRE AGREEMENT**

14.1    The Parties agree that this Settlement Deed contains their entire agreement and that there is no other agreement or understanding, whether oral or otherwise, which forms part of this Settlement Deed or which has been entered into in connection with or in relation to this Settlement Deed. Each of the Parties agrees and records that no representation of any nature whatsoever has been made to that Party or relied upon by that Party in connection with or in relation to this Settlement Deed.

14.2    Nothing in this Clause limits or excludes any liability for fraud.

**15.    REMEDIES AND WAIVERS**

No delay or omission on the part of any of the Parties in exercising any right, power or remedy provided by the law of any jurisdiction or under this Deed shall:

(a)    impair such right, power or remedy; or

(b)    operate as a waiver thereof.

**16.    IRISH TAXATION**

16.1    Programma Dinamico hereby represents (on a continuing basis up to and including the Settlement Date) that it is the beneficial owner of the Dante Notes and the Petrarca Notes, that it is resident for the purposes of Italian tax in Italy and that it is not carrying on a trade or business in Ireland through a branch or agency with which any interest payments on the Dante Notes or the Petrarca Notes are connected.

16.2    The Parties agree that if performance of the transactions contemplated in this Settlement Deed would, but for the effect of this Clause, result in a profit arising and being included in the audited profit and loss account of an Issuer for any accounting period for such Issuer, the amount of interest payable by such Issuer (with respect to those Notes issued by that Issuer) during the relevant accounting period shall be increased by an amount equal to such profit amount which would otherwise have arisen and the amount of principal repayable by such Issuer (on such Notes) during the relevant accounting period shall be reduced by a corresponding amount and that the Conditions of the Notes are, to the extent necessary, hereby amended accordingly. For avoidance of doubt, this Clause is subject to Clause 9.4 and Clause 12.

**17.    GENERAL**

17.1    Without prejudice to any costs payable to the Trustee or relevant agents under the Notes pursuant to Clause 4, each Party shall bear its own costs in connection with the negotiation, execution and implementation of this Settlement Deed.

17.2    This Settlement Deed shall be binding on the Parties, their successors and assigns and the name of a Party appearing herein shall be deemed to include the names of any such successor or assign.

17.3    This Settlement Deed may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same agreement and any Parties may enter into this Settlement Deed by executing a counterpart.

17.4    This Settlement Deed and any non-contractual obligations arising out of it shall be governed by and shall be construed in accordance with English law. The Parties submit to the exclusive jurisdiction of the English courts for the purpose of any action arising out of or in connection with this Settlement Deed.

This Deed has been executed and delivered as a deed on the date as stated at the beginning of it.


EXECUTED and DELIVERED as a DEED  by    )
                                        )
**BNY Corporate Trustee Services Limited.**

acting by                               )
and                                     )
                                        James Aggus
                                        Authorised Signatory

EXECUTED and DELIVERED as a DEED  by    )
                                        Sanjay Jobanputra
                                        Authorised Signatory


                                        )

**Lehman Brothers Special Financing Inc.**

acting by                               )
acting under the authority of that company in the    )
presence of:

Witness's signature:
Name:
Address



EXECUTED and DELIVERED as a DEED  by    )
                                        )
**Poste Vita S.p.A.**

acting by                               )
acting under the authority of that company in the    )
presence of:

Witness's signature:
Name:
Address


16

17.3   This Settlement Deed may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same agreement and any Parties may enter into this Settlement Deed by executing a counterpart.

17.4   This Settlement Deed and any non-contractual obligations arising out of it shall be governed by and shall be construed in accordance with English law. The Parties submit to the exclusive jurisdiction of the English courts for the purpose of any action arising out of or in connection with this Settlement Deed.

This Deed has been executed and delivered as a deed on the date as stated at the beginning of it.

EXECUTED and DELIVERED as a DEED by          )
                                             )
**BNY Corporate Trustee Services Limited.**

acting by                                    )
and                                          )

EXECUTED and DELIVERED as a DEED by          )


                                             )

**Lehman Brothers Special Financing Inc.**

acting by                                    )
acting under the authority of that company in the   )
presence of:

Witness's signature:
Name:
Address


EXECUTED and DELIVERED as a DEED by          )
                                             )

**Poste Vita S.p.A.**

acting by                                    )
acting under the authority of that company in the   )
presence of:

Witness's signature:
Name:
Address

16

17.3    This Settlement Deed may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same agreement and any Parties may enter into this Settlement Deed by executing a counterpart.

17.4    This Settlement Deed and any non-contractual obligations arising out of it shall be governed by and shall be construed in accordance with English law. The Parties submit to the exclusive jurisdiction of the English courts for the purpose of any action arising out of or in connection with this Settlement Deed.

This Deed has been executed and delivered as a deed on the date as stated at the beginning of it.

EXECUTED and DELIVERED as a DEED  by          )
                                               )

**BNY Corporate Trustee Services Limited.**

acting by                                      )
and                                            )

EXECUTED and DELIVERED as a DEED  by          )


                                               )

**Lehman Brothers Special Financing Inc.**

acting by                                      )
acting under the authority of that company in the   )
presence of

Witness's signature.
Name:
Address

EXECUTED and DELIVERED as a DEED  by          )
                                               )

**Poste Vita S.p.A.**

acting by                                      )
acting under the authority of that company in the   )
presence of:
        MARCO MICHELO
Witness's signature
Name: Marco Michelo
Address
P. Adriano y Roma.

16

EXECUTED and DELIVERED as a DEED  by      )
                                          )
**Programma Dinamico S.p.A.**

acting by                                 )
acting under the authority of that company in the )
presence of:

Witness's signature:                      )
Name: DABID CABIA
Address

**PRESENT** when the Common Seal
of **Dante Finance Public Limited Company**
was affixed hereto:

 **Director**                             )
Authorised  Signatory  of  AIB  International
Financial Services Limited
**Secretary**                             )

**PRESENT** when the Common Seal
of **Petrarca Finance Public Limited Company**
was affixed hereto:

 **Director**                             )
Authorised  Signatory  of  AIB  International
Financial Services Limited
**Secretary**                             )

**PRESENT** when the Common Seal
of  **Angiolieri  Finance  Public  Limited
Company** was affixed hereto:

 **Director**                             )
Authorised  Signatory  of  AIB  International
Financial Services Limited
**Secretary**                             )

17

EXECUTED and DELIVERED as a DEED  by    )
                                        )

**Programma Dinamico S.p.A.**

acting by                                           )
acting under the authority of that company in the   )
presence of:

Witness's signature:                    )
Name:
Address


**PRESENT** when the Common Seal
of **Dante Finance Public Limited Company**
was affixed hereto:

**Director**
Authorised  Signatory  of  AIB  International
Financial Services Limited
**Secretary**                                       )


**PRESENT** when the Common Seal
of **Petrarca Finance Public Limited Company**
was affixed hereto:

**Director**                                        )
Authorised  Signatory  of  AIB  International
Financial Services Limited
**Secretary**                                       )

**PRESENT** when the Common Seal
of  **Angiolieri  Finance  Public  Limited
Company** was affixed hereto:

**Director**                                        )
Authorised  Signatory  of  AIB  International
Financial Services Limited
**Secretary**                                       )

17

**PRESENT** when the Common Seal )
of **Boccaccio Finance Public Limited
Company** was affixed hereto:

**Director** )
Authorised Signatory of AIB International
Financial Services Limited
**Secretary** )



EXECUTED and DELIVERED as a DEED by )
)

**The Bank of New York Mellon**

acting by )
and )


EXECUTED and DELIVERED as a DEED by )
)

**BNY Financial Services PLC**

acting by )
and )

18

**PRESENT** when the Common Seal            )
of  **Boccaccio   Finance   Public   Limited**   -
**Company** was affixed hereto:


**Director**                               )
Authorised   Signatory   of   AIB   International
Financial Services Limited
**Secretary**                              )

EXECUTED and DELIVERED as a DEED  by       )
                                           )
**The Bank of New York Mellon**

acting by
and

*James Aggus*
*Authorised Signatory*

EXECUTED and DELIVERED as a DEED  by       )
                                           )
**BNY Financial Services PLC**

acting by                                  )
and                                        )

AUTHORISED SIGNATORY
KEVIN TURNER

18

**SCHEDULE 1- PROGRAMMA DINAMICO PROOF OF HOLDING**

**SCHEDULE 2 – DANTE PROOF OF HOLDING**

**SCHEDULE 3 – PETRARCA PROOF OF HOLDING**

**SCHEDULE 4 – ANGIOLIERI PROOF OF HOLDING**

**SCHEDULE 5 – BOCCACCIO PROOF OF HOLDING**

**SCHEDULE 6 – DANTE SWAP AGREEMENT**

**SCHEDULE 7 – PETRARCA SWAP AGREEMENT**

**SCHEDULE 8 – ANGIOLIERI SWAP AGREEMENT**

**SCHEDULE 9 – BOCCACCIO SWAP AGREEMENT**

**SCHEDULE 10 – DANTE WRITTEN RESOLUTION**

**SCHEDULE 11 – PETRARCA WRITTEN RESOLUTION**

**SCHEDULE 12 – DANTE FORM OF EARLY TERMINATION NOTICE**

To:     Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:     Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:    +1 212 310 8007
Tel:    +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

Date ● 2009

30

Re:    **Notice of an Event of Default under the ISDA Master Agreement and related Schedule thereto dated 10 October 2002 between Lehman Brothers Special Financing Inc. (Lehman) and Dante Finance Public Limited Company (the Issuer)**

Dear Sirs,

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between the Issuer and Lehman and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction there under with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

For the purposes of the Master Agreement, Lehman Brothers Holdings Inc. is stated to be Credit Support Provider.

Terms not otherwise defined in this letter shall have the meanings set out in the Master Agreement.

It has come to our attention that Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc. have instituted a proceeding seeking a judgement of insolvency or bankruptcy or other relief under bankruptcy or insolvency law.

These events constitute Events of Default under Section 5(a)(vii)(4) of the Master Agreement.

Accordingly, pursuant to Section 6(a) of the Master Agreement, by this notice we hereby designate ● [*insert date not more than 20 days from the date of this notice*] as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

The consequence of the occurrence of an Early Termination Date is that:

(a)    no further payments or deliveries under Section 2(a)(i) or 2(e) in respect of the Transaction will be required to be made; and

(b)    the amount, if any, payable in respect of the Early Termination Date shall be determined pursuant to Section 6(e).

On or as soon as reasonably practicable after the Early Termination Date, we will provide you with a statement as required under Section 6(d)(i) of the Master Agreement.

Yours faithfully,

**Dante Finance Public Limited**

Title:


*By:*

*Title:*

31

**SCHEDULE 13– PETRARCA FORM OF EARLY TERMINATION NOTICE**

To:    Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:    Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:    +1 212 310 8007
Tel:    +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

Date ● 2009

32

Re:    Notice of an Event of Default under the ISDA Master Agreement and related Schedule thereto dated 10 October 2002 between Lehman Brothers Special Financing Inc. (Lehman) and Petrarca Finance Public Limited Company (the Issuer)

Dear Sirs,

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between the Issuer and Lehman and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction there under with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

For the purposes of the Master Agreement, Lehman Brothers Holdings Inc. is stated to be Credit Support Provider.

Terms not otherwise defined in this letter shall have the meanings set out in the Master Agreement.

It has come to our attention that Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc. have instituted a proceeding seeking a judgement of insolvency or bankruptcy or other relief under bankruptcy or insolvency law.

These events constitute Events of Default under Section 5(a)(vii)(4) of the Master Agreement.

Accordingly, pursuant to Section 6(a) of the Master Agreement, by this notice we hereby designate ● [*insert date not more than 20 days from the date of this notice*] as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

The consequence of the occurrence of an Early Termination Date is that:

(c)    no further payments or deliveries under Section 2(a)(i) or 2(e) in respect of the Transaction will be required to be made; and

(d)    the amount, if any, payable in respect of the Early Termination Date shall be determined pursuant to Section 6(e).

On or as soon as reasonably practicable after the Early Termination Date, we will provide you with a statement as required under Section 6(d)(i) of the Master Agreement.

Yours faithfully,

**Petrarca Finance Public Limited**

Title:


*By:*

*Title:*

33

**SCHEDULE 14 – ANGIOLIERI FORM OF EARLY TERMINATION NOTICE**

To:      Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

**VIA FAX**

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

Cc:      Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:    +1 212 310 8007
Tel:    +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

Date ● 2009

34

Re:    **Notice of an Event of Default under the ISDA Master Agreement and related Schedule thereto dated 10 October 2002 between Lehman Brothers Special Financing Inc. (Lehman) and Angiolieri Finance Public Limited Company (the Issuer)**

Dear Sirs,

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between the Issuer and Lehman and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction there under with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

For the purposes of the Master Agreement, Lehman Brothers Holdings Inc. is stated to be Credit Support Provider.

Terms not otherwise defined in this letter shall have the meanings set out in the Master Agreement.

It has come to our attention that Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc. have instituted a proceeding seeking a judgement of insolvency or bankruptcy or other relief under bankruptcy or insolvency law.

These events constitute Events of Default under Section 5(a)(vii)(4) of the Master Agreement.

Accordingly, pursuant to Section 6(a) of the Master Agreement, by this notice we hereby designate ● [*insert date not more than 20 days from the date of this notice*] as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

The consequence of the occurrence of an Early Termination Date is that:

(e)    no further payments or deliveries under Section 2(a)(i) or 2(e) in respect of the Transaction will be required to be made; and

(f)    the amount, if any, payable in respect of the Early Termination Date shall be determined pursuant to Section 6(e).

On or as soon as reasonably practicable after the Early Termination Date, we will provide you with a statement as required under Section 6(d)(i) of the Master Agreement.

Yours faithfully,

**Angiolieri Finance Public Limited**

Title:

*By:*

*Title:*

35

**SCHEDULE 15 – BOCCACCIO FORM OF EARLY TERMINATION NOTICE**

To:     Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:     Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer
**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:     +1 212 310 8007
Tel:     +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

Date ● 2009

36

Re:    **Notice of an Event of Default under the ISDA Master Agreement and related Schedule thereto dated 10 October 2002 between Lehman Brothers Special Financing Inc. (Lehman) and Boccaccio Finance Public Limited Company (the Issuer)**

Dear Sirs,

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between the Issuer and Lehman and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction there under with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

For the purposes of the Master Agreement, Lehman Brothers Holdings Inc. is stated to be Credit Support Provider.

Terms not otherwise defined in this letter shall have the meanings set out in the Master Agreement.

It has come to our attention that Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc. have instituted a proceeding seeking a judgement of insolvency or bankruptcy or other relief under bankruptcy or insolvency law.

These events constitute Events of Default under Section 5(a)(vii)(4) of the Master Agreement.

Accordingly, pursuant to Section 6(a) of the Master Agreement, by this notice we hereby designate ● [*insert date not more than 20 days from the date of this notice*] as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

The consequence of the occurrence of an Early Termination Date is that:

(g)    no further payments or deliveries under Section 2(a)(i) or 2(e) in respect of the Transaction will be required to be made; and

(h)    the amount, if any, payable in respect of the Early Termination Date shall be determined pursuant to Section 6(e).

On or as soon as reasonably practicable after the Early Termination Date, we will provide you with a statement as required under Section 6(d)(i) of the Master Agreement.

Yours faithfully,

**Boccaccio Finance Public Limited**

Title:

*By:*

*Title:*

37

## SCHEDULE 16 – DANTE FORM OF TERMINATION STATEMENT

To:    Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:    Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:    +1 212 310 8007
Tel:    +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

38

● [Date]

Dear Sirs,

**STATEMENT UNDER SECTION 6(d) OF 1992 ISDA MASTER AGREEMENT**

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between us, Dante Finance Public Limited Company, and you, Lehman Brothers Special Financing Inc., and dated as of 10 October 2002 (the "**Master Agreement**") and the outstanding Transaction thereunder with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

We refer also to the Credit Support Annex between us and you dated as of 10 October 2002, as amended and restated on 19 September 2007.

Terms not otherwise defined in this letter shall have the same meanings set out in the Master Agreement.

By a notice dated ● 2009, we designated ● 2009 as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

This letter constitutes the statement required by Section 6(d) of the Master Agreement.

The terms of the Master Agreement provide for the application of Market Quotations to determine the Settlement Amount. However, with your agreement, we established to determine the Settlement Amount on the basis of agreed quotations made by using internal models.

The Termination Currency specified in Part 1 of the Schedule to the Master Agreement is EUR.

The Settlement Amount, determined in accordance with the agreed quotations, is therefore EUR ●.

Accordingly, pursuant to Section 6(e), the amount payable to us by you is EUR ● determined on the following basis:

| | | |
|---|---|---|
| 1. | Settlement Amount (a positive amount): PLUS | EUR ● |
| 2. | Termination Currency Equivalent of the Unpaid Amounts owed to us: LESS | EUR ● |
| 3. | Termination Currency Equivalent of the Unpaid Amounts owed by us: | EUR ● |
| | **TOTAL** | EUR ● |

In accordance with Section 6(d)(i), the relevant account to which payment of the above number should be made is as follows:

| | |
|---|---|
| Account of: | [●] |
| Bank: | [●] |
| Account No.: | [●] |

Please note that pursuant to Section 11 of the Master Agreement, we will, in due course, be claiming under the indemnity for our reasonable out-of-pocket expenses including legal fees incurred by reason of the enforcement and protection of our rights under the Agreement and any Credit Support Document and/or by reason of the early termination of the Transactions, including, but not limited to, costs of collection.

Yours faithfully

Dante Finance Public Limited Company

---------------------------------------------------------------

Name:

Title:

We acknowledge receipt of the letter of which this is a copy.

---------------------------------------------------------------

For Lehman Brothers Special Financing, Inc.

Name:   [*print name in capital letters*]

Title:    [insert title]

**SCHEDULE 17 – PETRARCA FORM OF TERMINATION STATEMENT**

To:  Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:  Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax: +1 212 310 8007
Tel: +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

● [Date]

Dear Sirs,

**STATEMENT UNDER SECTION 6(d) OF 1992 ISDA MASTER AGREEMENT**

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between us, Petrarca Finance Public Limited Company, and you, Lehman Brothers Special Financing Inc., and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction thereunder with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

We refer also to the Credit Support Annex between us and you dated as of 10 October 2002, as amended and restated on 19 September 2007.

Terms not otherwise defined in this letter shall have the same meanings set out in the Master Agreement.

By a notice dated ● 2009, we designated ● 2009 as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

This letter constitutes the statement required by Section 6(d) of the Master Agreement.

The terms of the Master Agreement provide for the application of Market Quotations to determine the Settlement Amount. However, with your agreement, we established to determine the Settlement Amount on the basis of agreed quotations made by using internal models.

The Termination Currency specified in Part 1 of the Schedule to the Master Agreement is EUR.

The Settlement Amount, determined in accordance with the agreed quotations, is therefore EUR ●.

Accordingly, pursuant to Section 6(e), the amount payable to us by you is EUR ● determined on the following basis:

| | | |
|---|---|---|
| 1. | Settlement Amount (a positive amount):<br>PLUS | EUR ● |
| 2. | Termination Currency Equivalent of the<br>Unpaid Amounts owed to us:<br><br>LESS | EUR ● |
| 3. | Termination Currency Equivalent of the<br>Unpaid Amounts owed by us: | EUR ● |
| | **TOTAL** | EUR ● |

In accordance with Section 6(d)(i), the relevant account to which payment of the above number should be made is as follows:

Account of:                    [●]

Bank:                          [●]

Account No.:                   [●]

42

Please note that pursuant to Section 11 of the Master Agreement, we will, in due course, be claiming under the indemnity for our reasonable out-of-pocket expenses including legal fees incurred by reason of the enforcement and protection of our rights under the Agreement and any Credit Support Document and/or by reason of the early termination of the Transactions, including, but not limited to, costs of collection.

Yours faithfully

Petrarca Finance Public Limited Company

------------------------------------------------------------

Name:

Title:

We acknowledge receipt of the letter of which this is a copy.

------------------------------------------------------------

For Lehman Brothers Special Financing, Inc.

Name:    [*print name in capital letters*]

Title:    [insert title]

**SCHEDULE 18 – ANGIOLIERI FORM OF TERMINATION STATEMENT**

To:    Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:    Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:    +1 212 310 8007
Tel:    +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

● [Date]

Dear Sirs,

44

**STATEMENT UNDER SECTION 6(d) OF 1992 ISDA MASTER AGREEMENT**

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between us, Angiolieri Finance Public Limited Company, and you, Lehman Brothers Special Financing Inc., and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction thereunder with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

We refer also to the Credit Support Annex between us and you dated as of 10 October 2002, as amended and restated on 19 September 2007.

Terms not otherwise defined in this letter shall have the same meanings set out in the Master Agreement.

By a notice dated ● 2009, we designated ● 2009 as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

This letter constitutes the statement required by Section 6(d) of the Master Agreement.

The terms of the Master Agreement provide for the application of Market Quotations to determine the Settlement Amount. However, with your agreement, we established to determine the Settlement Amount on the basis of agreed quotations made by using internal models.

The Termination Currency specified in Part 1 of the Schedule to the Master Agreement is EUR.

The Settlement Amount, determined in accordance with the agreed quotations, is therefore EUR ●.

Accordingly, pursuant to Section 6(e), the amount payable to  you by us is EUR ● determined on the following basis:

| | | |
|---|---|---|
| 1. | Settlement Amount (a negative amount):<br>PLUS | (EUR ●) |
| 2. | Termination Currency Equivalent of the<br>Unpaid Amounts owed to us: | EUR ● |
| | LESS | |
| 3. | Termination Currency Equivalent of the<br>Unpaid Amounts owed by us: | EUR ● |
| | **TOTAL** | EUR ● |

We have today arranged for payment to you of the above amount.

Please note that pursuant to Section 11 of the Master Agreement, we will, in due course, be claiming under the indemnity for our reasonable out-of-pocket expenses including legal fees incurred by reason of the enforcement and protection of our rights under the Agreement and any Credit Support Document and/or by reason of the early termination of the Transactions, including, but not limited to, costs of collection.

Yours faithfully

Angiolieri Finance Public Limited Company
-------------------------------------------------------------

45

Name:

Title:

We acknowledge receipt of the letter of which this is a copy.

---------------------------------------------------------------

For Lehman Brothers Special Financing, Inc.

Name:    [*print name in capital letters*]

Title:    [insert title]

**SCHEDULE 19 – BOCCACCIO FORM OF TERMINATION STATEMENT**

To:    Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 646 758 1811
Facsimile: + 1 646 333 6032
Attention: Vincent Di Massimo

**VIA FAX**

Cc:    Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
46rd Floor
New York, NY 10020
USA
Attention: Treasurer

**VIA COURIER**

Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020
U.S.A.

Telephone: + 1 212 526 7186
Facsimile: + 1 646 758 2634
Attention: Locke McMurray

**VIA FAX**

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
USA

Fax:    +1 212 310 8007
Tel:    +1 212 310 8924
Attention: Robert J Lemons Esq.

**VIA FAX**

with an additional copy via electronic mail to ibhispvnotices@lehman.com

● [Date]

Dear Sirs,

47

**STATEMENT UNDER SECTION 6(d) OF 1992 ISDA MASTER AGREEMENT**

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between us, Boccaccio Finance Public Limited Company, and you, Lehman Brothers Special Financing Inc., and dated as of 10 October 2002 (the **"Master Agreement"**) and the outstanding Transaction thereunder with a Trade Date of 26 July 2002, documented by the Confirmation dated 16 October 2002, as amended and restated on 19 September 2007.

We refer also to the Credit Support Annex between us and you dated as of 10 October 2002, as amended and restated on 19 September 2007.

Terms not otherwise defined in this letter shall have the same meanings set out in the Master Agreement.

By a notice dated ● 2009, we designated ● 2009 as the Early Termination Date in respect of the outstanding Transaction under the Master Agreement.

This letter constitutes the statement required by Section 6(d) of the Master Agreement.

The terms of the Master Agreement provide for the application of Market Quotations to determine the Settlement Amount. However, with your agreement, we established to determine the Settlement Amount on the basis of agreed quotations made by using internal models.

The Termination Currency specified in Part 1 of the Schedule to the Master Agreement is EUR.

The Settlement Amount, determined in accordance with the agreed quotations, is therefore EUR ●.

Accordingly, pursuant to Section 6(e), the amount payable to you by us is EUR ● determined on the following basis:

| | | |
|---|---|---|
| 1. | Settlement Amount (a negative amount):<br>PLUS | (EUR ●) |
| 2. | Termination Currency Equivalent of the<br>Unpaid Amounts owed to us: | EUR ● |
| | LESS | |
| 3. | Termination Currency Equivalent of the<br>Unpaid Amounts owed by us: | EUR ● |
| | **TOTAL** | EUR ● |

We have today arranged for payment to you of the above amount.

Please note that pursuant to Section 11 of the Master Agreement, we will, in due course, be claiming under the indemnity for our reasonable out-of-pocket expenses including legal fees incurred by reason of the enforcement and protection of our rights under the Agreement and any Credit Support Document and/or by reason of the early termination of the Transactions, including, but not limited to, costs of collection.

Yours faithfully

Boccaccio Finance Public Limited Company

--------------------------------------------------------------
Name:

48

Title:

We acknowledge receipt of the letter of which this is a copy.

-----------------------------------------------------------
For Lehman Brothers Special Financing, Inc.

Name:    [*print name in capital letters*]

Title:    [insert title]

## SCHEDULE 20 – SETTLEMENT SUMS – DANTE NOTES AND DANTE SWAP AGREEMENT

The Parties acknowledge and agree on the following amounts,:

**(a)** Early Redemption Amount (as defined in provision 45 of the Condition) under the Notes, net of any Swap Unwind Costs under (b) below:

Collateral (as defined in provision 40 of the Condition):    EUR 102,400,000.00, plus

CSA coupons received since 15 September 2008:    EUR    327,462.50

**(b)** Swap Unwind Costs due under the Swap Agreement,:

(i)  Settlement Amount payable by LBSF to the Issuer :    EUR   27,269,120.00

(ii) unpaid amounts  of which:

- owed by Issuer:    EUR    6,433,385.24

- owed by the Swap Counterparty:    EUR 0

Parties agree that, notwithstanding any provision to the contrary contained in the Conditions of the Notes, such amounts due under the Swap Agreement are the Swap Unwind Costs and no other amount is due under the Conditions as Swap Unwind Costs.

**(c)** amounts held under the CSA:

EUR 7,705,000.00 Bundesrepublik Deutschland 4.25 due 4 July 2039" (ISIN: DE0001135325)

**(d)** Additional sums to be paid to the Noteholder, received from Angiolieri: EUR 9,820,471.74

**(e)** Total amount payable to the Noteholder, subject to deduction under Schedule 26: EUR 18,028,555.47

## SCHEDULE 21 – SETTLEMENT SUMS – PETRARCA NOTES AND PETRARCA SWAP AGREEMENT

The Parties acknowledge and agree on the following amounts:

**(a)** Early Redemption Amount (as defined in provision 45 of the Condition) under the Notes, net of any Swap Unwind Costs under (b) below:

Collateral (as defined in provision 40 of the Condition):  EUR 102,400,000.00 plus

CSA coupons received since 15 September 2008:          EUR      317,900.00

**(b)** Swap Unwind Costs due under the Swap Agreement:

(i) Settlement Amount payable by LBSF to the Issuer:  EUR    27,269,120.00

(ii) unpaid amounts of which:

- owed by Issuer:                                    EUR      6,433,385.24

- owed by the Swap Counterparty:                     EUR      0

Parties agree that, notwithstanding any provision to the contrary contained in the Conditions of the Notes, such amounts due under the Swap Agreement are the Swap Unwind Costs and no other amount is due under the Conditions as Swap Unwind Costs.

**(c)** amounts held under the CSA:

- "EUR 7,480,000.00 Bundesrepublik Deutschland 4.25 due 4 July 2039" (ISIN: DE0001135325); and

- "EUR 200,000.00 Bundesschatzanweisungen 4.0 due 11 September 2009" (ISIN: DE0001137198)

**(d)** Additional sums to be paid to the Noteholder, received from Boccaccio: EUR 9,975,929.63

**(e)** Total amount payable to the Noteholder, subject to deduction under Schedule 27: EUR 18,152,243.61

## SCHEDULE 22– SETTLEMENT SUMS – ANGIOLIERI NOTES AND ANGIOLIERI SWAP AGREEMENT

The Parties acknowledge and agree on the following amounts:

**(a)** Early Redemption Amount (as defined in provision 45 of the Condition) under the Notes, net of any Swap Unwind Costs under (b) below:

    (i)    Collateral (as defined in provision 40 of the Condition):

            (a) EUR 51,200,000 in principal amount of an issue of "EUR 194,350,00 Floating Rate Puttable Notes", due 2012, of Landesbank Baden-Wurttemberg Girozentrale; and

            (b) EUR 51,200,000 in principal amount of an issue of "EUR 194,300,00 Floating Rate Puttable Notes", due 2012, of Bayerische Landesbank Girozentrale; plus

            (c) CSA coupons received after 15 September 2008:        EUR    239,370.49

    (ii)  cash: EUR 5,211,428.27.

**(b)** Swap Unwind Costs due under the Swap Agreement:

(i)        Settlement Amount payable by LBSF to the Issuer:       EUR   3,737,600.00

(ii)      unpaid amounts, of which:

       - owed by Issuer:                       EUR 5,332,869.69

       - owed by the Swap Counterparty:      EUR 6,433,385.24

Parties agree that, notwithstanding any provision to the contrary contained in the Conditions of the Notes, such amounts due under the Swap Agreement are the Swap Unwind Costs and no other amount is due under the Conditions as Swap Unwind Costs.

**(c)** amounts held under the CSA to be paid to the Noteholder, less the Angiolieri Excess Cash under (d) below:

- "EUR 6,000,000.00 Bundesobligation Inflation 2.25 due 15 April 2013" (ISIN: DE0001030518);

- "EUR 1,875,000.00 Bundesrepublik Deutschland 4.25 due 4 July 2039" (ISIN: DE0001135325); and

- "EUR 300,000.00 Bundesrepublik Deutschland 6.25 due 4 January 2024" (ISIN: DE0001134922).

**(d)** Angiolieri Excess Cash: EUR 4,327,619.21

## SCHEDULE 23 – SETTLEMENT SUMS – BOCCACCIO NOTES AND BOCCACCIO SWAP AGREEMENT

The Parties acknowledge and agree on the following amounts:

**(a)** Early Redemption Amount (as defined in provision 45 of the Condition) under the Notes, net of any Swap Unwind Costs under (b) below:

(i)      Collateral (as defined in provision 40 of the Condition):

(a) EUR 51,200,000 in principal amount of an issue of "EUR 194,350,00 Floating Rate Puttable Notes", due 2012, of Landesbank Baden-Wurttemberg Girozentrale; and

(b) EUR 51,200,000 in principal amount of an issue of "EUR 194,300,00 Floating Rate Puttable Notes", due 2012, of Bayerische Landesbank Girozentrale; plus

(c) CSA coupons received since 15 September 2008:     EUR    22,664.59

(ii)      cash: EUR 5,303,870.21

**(b)** Swap Unwind Costs due under the Swap Agreement,:

(i)      Settlement Amount payable by LBSF to the Issuer:     EUR 3,737,600.00

(ii)      unpaid amounts, of which:

- owed by Issuer:     EUR 5,332,869.69

- owed by the Swap Counterparty:     EUR 6,433,385.24

Parties agree that, notwithstanding any provision to the contrary contained in the Conditions of the Notes, such amounts due under the Swap Agreement are the Swap Unwind Costs and no other amount is due under the Conditions as Swap Unwind Costs.

**(c)** amounts held under the CSA to be paid to the Noteholder, less the Boccaccio Excess Cash under (d) below:

(i)      cash:     EUR 7,073,500.00

(ii)      collateral:     EUR 965,000.00 Bundesobligation Inflation 2.25 due 15 April 2013" (ISIN: DE0001030518)

**(d)** Boccaccio Excess Cash: EUR 3,323,286.49

### SCHEDULE 24- ANGIOLIERI NOTES LIST OF PAYMENTS AND DEDUCTIONS

The Parties acknowledge and agree on the following indicative amounts, which are payable upon instructions of the Trustee to the Issuing and Paying Agent or the Custodian, as the case may be, and subject to adjustment as of the Settlement Date upon communication by the Trustee:

**Trustee and its Advisors' Costs**

**Programme Wide Costs**

| | |
|---|---|
| Programme Fee | € 122,022.08 |
| (Less payment on account | - € 64,068.33) |
| **Total Programme Wide Costs** | **€ 57,953.75** |

**Specific Costs**

| | |
|---|---|
| BNYM (Close-Out) | € 5,810.58 |
| Deloitte | € 12,783.27 |
| Reed Smith | € 16,176.76 |
| **Total Specific Cost** | **€ 34,770.61** |

**Other Trustee Fees**

| | |
|---|---|
| Paying Agent | € 696.40 |
| Custodian | € 52,616.85 |
| Trustee | € 2,089.20 |
| **Total Other Trustee Fees** | **55,402.45** |

**Issuer and its Advisors' Costs**

**Fees in connection with the ongoing maintenance of the SPVs' corporate existence and winding-up the SPV Issuers**

| | |
|---|---|
| A&L Goodbody outstanding fees | € 1,520.00 |
| Estimated McCann Fitzgerald | € 7,593.75 |
| Ongoing costs | € 50,000.00 |
| Additional tax costs (winding-up) | € 6,500.00 |
| Additional legal costs (winding-up) | € 3,000.00 |
| Wind-up costs | € 47,853.50 |

Contingency                                          € 11,494.73

                                    Total Estimated Costs    € 127,961.98


                          Less Cash available in AIB account    - € 45,497.00

                          **Estimated retention required    € 82,464.98**


                                    **TOTAL    € 230,592.09**

## SCHEDULE 25– BOCCACCIO NOTES LIST OF PAYMENTS AND DEDUCTIONS

The Parties acknowledge and agree on the following indicative amounts, which are payable upon instructions of the Trustee to the Issuing and Paying Agent or the Custodian, as the case may be, and subject to adjustment as of the Settlement Date upon communication by the Trustee:

**Trustee and its Advisors' Costs**

**Programme Wide Costs**

| | |
|---|---|
| Programme Fee | € 122,022.08 |
| (Less payment on account | - € 64,068.33) |
| **Total Programme Wide Costs** | **€ 57,953.75** |

**Specific Costs**

| | |
|---|---|
| BNYM (Close-Out) | € 5,810.58 |
| Deloitte | € 13,945.38 |
| Reed Smith | € 4,110.98 |
| **Total Specific Costs** | **€ 22,751.31** |

**Other Trustee Fees**

| | |
|---|---|
| Paying Agent | € 696.40 |
| Custodian | - |
| Trustee | € 2,089.20 |
| **Total Other Trustee Fees** | **€ 2,785.60** |

**Issuer and its Advisors' Costs**

**Fees in connection with the ongoing maintenance of the SPVs' corporate existence and winding-up the SPV Issuers**

| | |
|---|---|
| A&L Goodbody outstanding fees | € 1,520.00 |
| Estimated McCann Fitzgerald | € 7,593.75 |
| Ongoing costs | € 50,000.00 |
| Additional tax costs (winding-up) | € 6,500.00 |
| Additional legal costs (winding-up) | € 3,000.00 |

| | |
|---|---|
| Wind-up costs | € 47,853.50 |
| Contingency | € 11,494.73 |
| Total Estimated Costs | € 127,961.98 |
| Less Cash available in AIB account | - € 43,876.50 |
| **Estimated retention required** | **€ 84,085.48** |
| **TOTAL** | **€ 167,576.14** |

## SCHEDULE 26– DANTE NOTES LIST OF PAYMENTS AND DEDUCTIONS

The Parties acknowledge and agree on the following indicative amounts, which are payable upon instructions of the Trustee to the Issuing and Paying Agent or the Custodian, as the case may be, and subject to adjustment as of the Settlement Date upon communication by the Trustee:

**Trustee and its Advisors' Costs**

**Programme Wide Costs**

| | |
|---|---|
| Programme Fee | € 122,022.08 |
| **Total Programme Wide Costs** | **€ 122,022.08** |

**Specific Costs**

| | |
|---|---|
| BNYM (Close-Out) | € 5,810.58 |
| Deloitte | € 12,202.21 |
| Reed Smith | € 85,000.00 |
| **Total Specific Costs** | **€ 103,012.79** |

**Other Trustee Fees**

| | |
|---|---|
| Paying Agent | € 696.40 |
| Custodian | € 3,482.00 |
| Trustee | € 2,089.20 |
| **Total Other Trustee Fees** | **€ 6,267.60** |

**Issuer and its Advisors' Costs**

**Fees in connection with the ongoing maintenance of the SPVs' corporate existence and winding-up the SPV Issuers**

| | |
|---|---|
| A&L Goodbody outstanding fees | € 1,520.00 |
| Outstanding invoices as of 10 July 2009 | € 51,112.70 |
| Estimated McCann Fitzgerald | € 7,593.75 |
| Ongoing costs | € 50,000.00 |
| Additional tax costs (winding-up) | € 6,500.00 |

| | |
|---|---|
| Additional legal costs (winding-up) | € 3,000.00 |
| Wind-up costs | € 47,853.50 |
| Contingency | € 16,606.00 |
| Total Estimated Costs | € 184,185.95 |
| | |
| Less Cash available in AIB account | - € 45,436.23 |
| **Estimated retention required** | **€ 138,749.72** |
| | |
| **TOTAL** | **€ 370,122.19** |

## SCHEDULE 27 – PETRARCA NOTES LIST OF PAYMENTS AND DEDUCTIONS

The Parties acknowledge and agree on the following indicative amounts, which are payable upon instructions of the Trustee to the Issuing and Paying Agent or the Custodian, as the case may be, and subject to adjustment as of the Settlement Date upon communication by the Trustee:

**Trustee and its Advisors' Costs**

**Programme Wide Costs**

| | |
|---|---|
| Programme Fee | € 122,022.08 |
| **Total Programme Wide Costs** | **€ 122,022.08** |

**Specific Costs**

| | |
|---|---|
| BNYM (Close-Out) | € 5,810.58 |
| Deloitte | € 12,202.21 |
| Reed Smith | € 10,771.76 |
| **Total Specific Costs** | **€ 28,784.55** |

**Other Trustee Fees**

| | |
|---|---|
| Paying Agent | € 696.40 |
| Custodian | - |
| Trustee | € 2,089.20 |
| **Total Other Trustee Fees** | **€ 2,785.60** |

**Issuer and its Advisors' Costs**

**Fees in connection with the ongoing maintenance of the SPVs' corporate existence**

**and winding-up the SPV Issuers**

| | |
|---|---|
| A&L Goodbody outstanding fees | € 1,520.00 |
| Outstanding invoices as of 10 July 2009 | € 40,912.00 |
| Estimated McCann Fitzgerald | € 7,593.75 |
| Ongoing costs | € 50,000.00 |
| Additional tax costs (winding-up) | € 6,500.00 |
| Additional legal costs (winding-up) | € 3,000.00 |

| | |
|---|---|
| Wind-up costs | € 47,853.50 |
| Contingency | € 15,585.93 |
| Total Estimated Costs | € 172,965.18 |
| Less Cash available in AIB account | - € 40,609.03 |
| **Estimated retention required** | **€ 132,356.15** |
| **TOTAL** | **€ 285,948.38** |

**SCHEDULE 28 – LSFB CREDITORS COMMITTEE'S RESOLUTION, NOTICE OF DEBTORS'
MOTION DATED 13 NOVEMBER 2008, U.S. BANKRUPTCY COURT ORDER DATED 16
DECEMBER 2008**