EXHIBIT B

EVIDENCE OF PARTIAL TRANSFER OF CLAIM

TO: United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court")
Attn: Clerk

AND TO: Lehman Commercial Paper Inc. ("Debtor")
Case No. 08-13555 (JMP) (Jointly Administered)

Proof of Claim Number 67080

**DEUTSCHE BANK AG, LONDON BRANCH**, its successors and assigns ("Seller"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby certify that it has unconditionally and irrevocably sold, transferred and assigned unto:

**Barclays Bank PLC**
Contact: Steve Stancarone
745 7th Ave 16 Floor
New York, NY 10019
Phone Number: 212 412 3718
Fax Number: 212 412 1706
Email: steve.stancarone@barcap.com

its successors and assigns ("Buyer"), a 6.7692308% pro rata share in and to all right, title and interest in and to Proof of Claim Number 67080, solely to the extent of $22,000,000.00 (the "Assigned Claim") out of the aggregate $325,000,000.00 claim against Lehman Commercial Paper Inc., in the Bankruptcy Court, or any other court with jurisdiction over the bankruptcy proceedings of the Debtor.

Seller hereby waives any objection to the transfer of the Assigned Claim to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges and understands, and hereby stipulates that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Assigned Claim and recognizing the Buyer as the sole owner and holder of the Assigned Claim.

You are hereby directed to make all future payments and distributions, and to give all notices and other communications, in respect of the Assigned Claim to Buyer.

IN WITNESS WHEREOF, the undersigned has duly executed this Evidence of Partial Transfer of Claim by its duly authorized representative dated March 11, 2011.

**DEUTSCHE BANK AG, LONDON BRANCH**

By: _____
Name: Ross Miller
Title: Director

By: _____
Name: Michael Sutton
Title: Managing Director

**Barclays Bank PLC**

By: _____
Name:
Title:

EXHIBIT B

EVIDENCE OF PARTIAL TRANSFER OF CLAIM

TO:      United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court")
         Attn: Clerk

AND TO:  Lehman Commercial Paper Inc. ("Debtor")
         Case No. 08-13555 (JMP) (Jointly Administered)

Proof of Claim Number 67080

**DEUTSCHE BANK AG, LONDON BRANCH**, its successors and assigns ("Seller"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby certify that it has unconditionally and irrevocably sold, transferred and assigned unto:

**Barclays Bank PLC**
Contact: Steve Stancarone
745 7th Ave 16 Floor
New York, NY 10019
Phone Number: 212 412 3718
Fax Number: 212 412 1706
Email: steve.stancarone@barcap.com

its successors and assigns ("Buyer"), a 6.76923308% pro rata share in and to all right, title and interest in and to Proof of Claim Number 67080, solely to the extent of $22,000,000.00 (the "Assigned Claim") out of the aggregate $325,000,000.00 claim against Lehman Commercial Paper Inc., in the Bankruptcy Court, or any other court with jurisdiction over the bankruptcy proceedings of the Debtor.

Seller hereby waives any objection to the transfer of the Assigned Claim to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges and understands, and hereby stipulates that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Assigned Claim and recognizing the Buyer as the sole owner and holder of the Assigned Claim.

You are hereby directed to make all future payments and distributions, and to give all notices and other communications, in respect of the Assigned Claim to Buyer.

IN WITNESS WHEREOF, the undersigned has duly executed this Evidence of Partial Transfer of Claim by its duly authorized representative dated March ___, 2011.

**DEUTSCHE BANK AG, LONDON BRANCH**

By: _____          By: _____
    Name:                         Name:
    Title:                        Title:

**Barclays Bank PLC**

By: _____
    Name:
    Title:

## ASSIGNMENT OF CLAIM

1. Identification of the parties:

| Seller: | Buyer: |
|---|---|
| DEUTSCHE BANK AG, LONDON BRANCH | Barclays Bank PLC |
| c/o Deutsche Bank Securities Inc. | Contact: Steve Stancarone |
| 60 Wall Street | 745 7th Ave 16 Floor |
| New York, New York 10005 | New York, NY 10019 |
| Attn: Rich Vichaidith | Phone Number: 212 412 3718 |
| Email: richard.vichaidith@db.com | Fax Number: 212 412 1706 |
| | Email: steve.stancarone@barcap.com |

2. On the date hereof, pursuant to this Assignment of Claim (the "Agreement"), Seller, its successors and assigns, for good and valuable consideration, the sufficiency of which is hereby acknowledged, in the amount set forth in Exhibit A hereto (the "Total Purchase Price"), does hereby absolutely and unconditionally sell, transfer and assign unto Buyer, its successors and assigns, solely to the extent of a pro rata share in, to and under 6.7692308% of the Settlement Amount (as such term is defined in the Upstream Agreement), which represents $22,000,000.00 principal amount of the of the Settlement Amount (the "Transferred Claim Amount"), all of Seller's rights, title, benefits and interest in and to: (i) that certain Assignment of Claim Agreement (the "Upstream Agreement," a copy of which is attached hereto as Exhibit C), dated as of March 11, 2011 by and between Seller, as buyer, and Swedbank AB, New York Branch (the "Upstream Party"), as seller, (ii) the Swedbank Repo Claims (as such term is defined in the Upstream Agreement) against (a) Lehman Commercial Paper, Inc. ("LCPI"), one of the debtor-in-possession in the chapter 11 reorganization case, Case No. 08-13555 (Jointly Administered) (the "Case") and (b) Lehman Brothers Holdings Inc. ("LBHI", and each of LCPI and LBHI, a "Debtor", and collectively, the "Debtors"), one of the debtor-in-possession in the Case pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), (iii) the rights to enforce the Settlement Agreement with respect to the Settlement Amount (as such terms are defined in the Upstream Agreement), and (iv) all of Seller's right, title and interest in any and all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing, or relating or referred to, the Swedbank Repo Claims, any and all rights to receive principal, interest, distributions, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and any and all other claims, causes of action and voting and other rights (including, without limitation, rights to participate in any rights offerings) or lawsuits of any nature whatsoever, whether against the Debtors or any other party, arising under or relating to any of the foregoing, including, without limitation, any rights of priority or administrative expense status conferred thereon and all of Seller's rights to receive cash, securities, instruments and/or other proceeds, property or distributions issued in connection with any of the foregoing. The Transferred Claim Amount and, to the extent of the Transferred Claim Amount, sections 2(i)-(iv) above are collectively hereinafter referred to as the "Transferred Interest." All capitalized terms used but not defined herein shall have the same meaning specified in the Upstream Agreement.

3. The Total Purchase Price shall be paid by the Buyer to the Seller on the date hereof and upon Buyer's receipt of this Agreement and each Evidence of Partial Transfer of Claim attached hereto duly executed and delivered on behalf of both parties hereto.

4. Seller represents, warrants, covenants and agrees that: (a) this Agreement has been duly authorized, executed and delivered by Seller and Seller has the requisite power and authority to execute, deliver and perform this Agreement; (b) this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (c) Seller has not filed a petition seeking protection under the Bankruptcy Code, or admitted its inability to, or failed to, pay its debts generally as they become due; (d) no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Interest; (e) no portion of the Transferred Interest has been directly or indirectly sold, conveyed, transferred, participated, assigned or pledged to any third party by Seller or otherwise encumbered, in whole or in part; (f) solely to the same extent that Seller received such ownership and title from the Upstream Party in the Upstream Agreement, Seller owns and is hereby selling to Buyer good and sole legal and beneficial title to the Transferred Interest free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever; (g) Seller has not engaged in any acts or conduct or made any omission, and Seller has not had any relationship with the Debtors or their affiliates, that might result in Buyer receiving in respect of the Transferred Interest proportionately less payments or distributions or less favorable treatment (including the timing of payments or distributions) than other holders of claims against the Debtors of the same type or class as the Swedbank Repo Claims; (h) assuming the truth and accuracy of the representations and warranties made by the Upstream Party to Seller in the Upstream Agreement and except for any notice requirement prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, no consent of, registration with, or approval of, or any other action by, any relevant person or entity (including any state or federal regulatory agency or commission) is or will be required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Seller or for the assignment contemplated herein to become effective; (i) assuming the truth and accuracy of the representations and warranties made by the Upstream Party to Seller in the Upstream Agreement and to the same extent received by Seller from the Upstream Party, a true and complete copy of the Upstream Agreement, including all exhibits thereto (except Exhibit A) is annexed hereto as Exhibit C; (j) Seller does not, and did not on the date of the filing of the Case, hold any funds or property of or owe any amounts or property to the Debtors or any of their affiliates and has not effected or received the benefit of any set-off against the Debtors or any of their affiliates that would reduce the amount of, or otherwise impair, the Transferred Interest or any related distributions; (k) Seller has not breached any terms of the Upstream Agreement, and the

Upstream Agreement is valid, enforceable and in full force and effect, and Seller has complied with all obligations thereunder; (l) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting the Seller or the Transferred Interest; (m) no proceedings are pending or, to the best of Seller's knowledge, threatened against Seller before any relevant governmental authority that could materially or adversely affect the Transferred Interest; (n) Seller is not selling the Transferred Interest or any interest therein for or any behalf of one or more employee benefit plans, or with funds which directly or indirectly constitute "plan assets" as defined in the Employee Retirement Income Security Act of 1974, as amended and (o) as of the date of this Agreement and with respect to the Debtors or their affiliates, Seller is not an "affiliate" or "insider" within the meaning of Sections 101(2) and 101(31) of the Bankruptcy Code, respectively.

5.  Buyer represents, warrants, covenants and agrees that: (a) this Agreement has been duly authorized, executed and delivered by Buyer and Buyer has the requisite power and authority to execute, deliver and perform this Agreement; (b) this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms; (c) Buyer has agreed to the Total Purchase Price herein based on its own independent investigation and credit determination; (d) Buyer has made its own investigation and evaluation of the Transferred Interest, and evaluation of the Swedbank Repo Claims; (e) Buyer unconditionally assumes all risk for determining the validity of the Swedbank Repo Claims and has no redress against Seller for any deficiency in validity, title or ownership, except for any breach of Seller's expressed representations, warranties, covenants and agreements set forth herein; (f) Buyer has not relied on any representation or warranty made by Seller, except as expressly set forth herein; (g) Buyer acknowledges that Seller makes no representation or warranty, whether express or implied, of any kind or character, except as expressly set forth herein; (h) Buyer (1) is a sophisticated investor with respect to the purchase of the Transferred Interest, (2) is able to bear the economic risk associated with the purchase of the Transferred Interest, (3) has adequate information concerning the Transferred Interest to make an informed decision regarding the purchase of such Transferred Interest, (4) has such knowledge and experience, has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights of the type contemplated in this Agreement and (5) has independently and without reliance upon Seller, except for Seller's representations, warranties, covenants and agreements expressly set forth herein, and based on such information as Buyer has deemed appropriate, made his own analysis and decision to enter into this Agreement; (i) Seller has not given Buyer any investment advice, credit information or opinion on whether the purchase of the Transferred Interest is prudent; (j) Buyer has received a copy of the Upstream Agreement (including exhibits attached thereto, except for Exhibit A thereto) and subject to the truth and accuracy of Seller's representations and warranties set forth herein, Buyer assuming all risk with respect to the accuracy or sufficiency of such documents and information; (k) the assignment and transfer of the Transferred Interest by Seller to Buyer is irrevocable and without any recourse to Seller, except with respect to remedies resulting from breaches of representations, warranties, covenants, agreements and indemnities expressly set forth in this Agreement; (l) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting the Buyer; (m) the Buyer is an "accredited investor" within the meaning of Section 2(15) of the Securities Act of 1933; (n) Buyer is not purchasing the Transferred Interest or any interest therein for or any behalf of one or more employee benefit plans, or with funds which directly or indirectly constitute "plan assets" as defined in the Employee Retirement Income Security Act of 1974, as amended; and (o) Buyer shall, to the extent of its pro rata share, comply with the terms and conditions affecting the "Buyer" under the Upstream Agreement; provided, however, the Buyer shall have no obligation to pay the "Total Purchase Price" (as defined in the Upstream Agreement) to the Upstream Party.

6.  Each of Seller and Buyer is aware that the consideration being paid by Buyer hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Transferred Interest pursuant to any plan of reorganization which is confirmed for the Debtors. Each of Seller and Buyer represents that it has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the purchase (in the case of Buyer) and sale (in the case of Seller) of the Transferred Interest and that it has independently and without reliance on the other party, and based on such information as it has deemed appropriate, and its own independent investigation and credit determination, made its own decision to enter into this Agreement. Each of Seller and Buyer is aware that certain information which may be pertinent to its decision to sell (in the case of Seller) or buy (in the case of Buyer) the Transferred Interest is available to it and can be obtained from the Bankruptcy Court's files.

7.  Seller acknowledges that: (a) Buyer currently may have, and later may come into possession of, information relating to the Debtors that is not known to Seller and that such information may be material to Seller's decision to assign the Transferred Interest to Buyer ("Seller Excluded Information"); (b) Seller has determined to assign the Transferred Interest notwithstanding its lack of knowledge of the Seller Excluded Information; and (c) Buyer shall have no liability to Seller, and Seller waives and releases any claims that it might have against Buyer with respect to the non-disclosure of the Seller Excluded Information, provided, however, that Seller Excluded Information shall not and does not affect the truth and accuracy of Buyer's representations and warranties set forth in this Agreement.

8.  Buyer acknowledges that: (a) Seller currently may have, and later may come into possession of, information relating to the Debtors that is not known to Buyer and that such information may be material to Buyer's decision to purchase the Transferred Interest from Seller ("Buyer Excluded Information"); (b) Buyer has determined to purchase the Transferred Interest notwithstanding its lack of knowledge of the Buyer Excluded Information; and (c) Seller shall have no liability to Buyer, and Buyer waives and releases any claims that it might have against Seller with respect to the non-disclosure of the Buyer Excluded Information, provided, however, that Buyer Excluded Information shall not and does not affect the truth and accuracy of Seller's' representations and warranties set forth in this Agreement.

9.  Distributions.

(a)     Upon Seller's receipt of any distributions or payments (whether by set-off or otherwise) with respect to the Transferred Interest, (each a "Distribution"), Seller shall (i) accept and hold such Distribution in trust on behalf of and for the account and sole benefit of Buyer, (ii) have no equitable or beneficial interest in such Distribution and (iii) deliver such Distribution (free of any withholding, setoff, recoupment, or deduction of any kind except as required by law) in the case of a cash Distribution received, in no event later than two (2) business days after the date on which Seller receives such Distribution, and in the case of a securities Distribution received, in no event later than five (5) business days after the date on which Seller receives such securities Distribution, to Buyer in the same form received and, when necessary or appropriate, with Seller's endorsement (without recourse, representation, or warranty), except to the extent prohibited under any applicable law, rule, or order. If Seller fails to pay any cash Distribution received after the date hereof to Buyer in accordance with the time periods set forth in this Section, then Seller will pay interest at the USD 1-Month LIBOR rate applicable on the date hereof as listed by the British Bankers' Association (www.bba.org.uk) on such payment for the period from (and including) the day on which such payment is actually received by Seller to (but excluding) the day such payment is actually paid to Buyer, plus, to the extent such cash Distribution was received by the Upstream Party and paid to Seller, any interest received by Seller from the Upstream Party pursuant to the Upstream Agreement.

(b)     If a Distribution includes securities, Seller shall, to the extent permitted by law, endorse such securities (without recourse, representation or warranty) to Buyer and deliver them to Buyer as soon as practicable. Notwithstanding the foregoing, if requested by Buyer, Seller agrees to use commercially reasonable efforts, at Buyer's expense, to assist Buyer to cause such securities to be registered directly, either into Buyer's name or, if requested by Buyer, such name as Buyer may direct in writing and deliver such securities to Buyer or to such entity as Buyer may direct as soon as practicable. Pending such transfer, Seller shall hold the same in trust on behalf, and for the sole benefit, of Buyer and Seller shall have no legal, equitable or beneficial interest in any such Distribution. Should all or any portion of the Distribution not be assignable by Seller to Buyer, Seller hereby agrees to grant to Buyer a participating interest in such Distribution that is not assignable.

(c)     If all or any portion of a Distribution received by Seller and transferred to Buyer pursuant to this Section is (i) required to be returned or disgorged by Seller to any entity or (ii) erroneously paid or transferred by Seller to Buyer, Buyer shall promptly return such Distribution (or portion thereof) to Seller together with all related interest and charges payable by Seller in respect thereof.

10.     Seller agrees to indemnify Buyer, its officers, directors, agents, partners, members, shareholders, controlling entities and employees from all losses, damages and liabilities, including reasonable attorneys' fees and expenses, which result from (a) Seller's breach of any representation, warranty, covenant or agreement set forth herein or (b) any obligation to disgorge to or to reimburse or pay, in whole or in part, any person or entity for any payment or property actually received, applied or effected by or for the account of Seller under or in connection with the Transferred Interest, except to the extent any such payment or property have been distributed by Seller to Buyer (including, without limitation, a credit to the Total Purchase Price or otherwise). Buyer agrees to indemnify Seller, its officers, directors, agents, partners, members, shareholders, controlling entities and employees from all losses, damages and liabilities, including reasonable attorneys' fees and expenses, which result from (a) Buyer's breach of any representation, warranty, covenant or agreement set forth herein or (b) Seller's acting or refraining to act pursuant to any direction of Buyer or under circumstance described in paragraph 11 herein.

11.     From and after the date hereof, Buyer shall have sole authority to exercise all voting and other rights and remedies with respect to the Transferred Interest solely to the extent such rights have been granted to Seller under the Upstream Agreement; provided, however, that if for any reason Seller is entitled to exercise any such rights (including the right to vote) after the date hereof, then Seller agrees that it will act or refrain from acting in respect of any request, act, decision or vote to be made by Seller in respect of the Transferred Interest (an "Action") as follows: (i) if an Action is divisible and may be taken separately in respect of the Transferred Interest, Seller shall act in accordance with Buyer's written directions (if timely given), or (ii) if the action is not divisible in respect of the Transferred Interest but may be taken only in respect of all of Seller's interest in the Swedbank Repo Claims or all claims held by Seller in the Case, then Seller shall act, as it relates to the Swedbank Repo Claims or all claims held by Seller in the Case (as applicable), in accordance with the written directions (if timely given) of holders (including Seller, if applicable) owning or holding interests representing a majority of the total amount of Seller's interest in the Swedbank Repo Claims or all claims held by Seller in the Case at that time (as applicable) (the "Majority Participants"). Seller shall as soon as practicable after having actual notice thereof, but in any event within three (3) business days of its receipt of such notice, notify Buyer in writing of any manner in respect of which it may exercise any Action in respect of which Buyer may vote under this Section. Except as set forth above, Buyer acknowledges that Buyer shall be bound by any decisions of the Majority Participants to take or not take an Action, and Buyer understands that Seller will take no action with respect to the Transferred Interest, except upon the direction of Buyer or the Majority Participants (as applicable). Seller may refuse to follow Buyer's or the Majority Participants' instructions if it could: (a) violate any applicable law, regulation or direction of a regulatory, governmental or quasi-governmental authority, (b) damage Seller's reputation or (c) expose Seller to any liability or obligation of any kind for which Seller is not, in either the case of (b) or (c), in Seller's sole discretion, adequately indemnified. From and after the date hereof, Seller agrees to promptly provide Buyer with correspondence, notices or other documents with respect to any vote that Seller is entitled to cast in respect of a plan of reorganization, liquidation, or dissolution or with respect to any rights offering or similar offering for which Seller is entitled to subscribe, and to follow Buyer's direction in respect thereof in accordance to this Section. Seller shall have no liability to Buyer regarding the validity or content of the information and documents furnished pursuant to this Section. Buyer shall reimburse Seller, promptly upon Seller's written request for its applicable pro rata share of all out-of-pocket expenses and disbursements (including reasonable fees and disbursements of counsel) incurred by Seller in connection with Seller's performance of its obligations under this Section. Buyer agrees that it shall maintain the confidentiality of any such information and documents to the extent required therein and

to the same extent as if it were the party receiving such information and documents directly and shall, upon Seller's request, provide to Seller a confidentiality undertaking to such effect reasonably acceptable to Seller prior to the delivery thereof.

12.     To the extent such rights have been granted to Seller under the Upstream Agreement, Seller authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable for, or on account of the Transferred Interest herein assigned. Seller grants unto Buyer full authority to do all things necessary to enforce the Transferred Interest and Seller's rights thereunder or related thereto pursuant to this Agreement. Seller agrees that the powers granted by this Section are discretionary in nature and exercisable at the sole option of Buyer. Neither Seller nor Buyer shall have any obligation to take any action to prove, defend, demand or take any action with respect to the Transferred Interest or otherwise in the Case, unless expressly provided for in this Agreement. Seller agrees to execute, acknowledge and/or deliver all such further certificates, instruments and other documents, and to take all such further reasonable action as may be necessary or appropriate to effect assignment of the Transferred Interest and all interests therein to Buyer, to cooperate with and assist Buyer, at no cost to Seller, in enforcing the Transferred Interest and to otherwise effectuate the intent of this Agreement. Buyer may sell, assign, participate or transfer its rights and interest in the Transferred Interest, or any part thereof, without the prior written consent of, or notice to, Seller; provided, however, that Buyer may not delegate its obligations under this Agreement without the prior consent of Seller (which consent can not be unreasonably withheld or delayed). Seller may assign its rights under this Agreement without the prior consent of, or notice to, Buyer; provided, however, that Seller may not delegate its obligations under this Agreement without the prior consent of Buyer (which consent can not be unreasonably withheld or delayed).

13.     All representations, warranties, covenants and agreements contained herein shall survive the execution, delivery and performance of this Agreement and the purchase and sale of the Transferred Interest and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and their successors and assigns. Buyer and Seller agree that controversies arising between Buyer and Seller under this Agreement will be determined in the United States District Court for the Southern District of New York located in the borough of Manhattan, or the courts of the State of New York located in the County of New York ("New York Courts"). Buyer and Seller each irrevocably and unconditionally consent to personal jurisdiction over such party by the New York Courts in any action to enforce, interpret or construe any provision of this Agreement, and also hereby irrevocably waives: (a) trial by jury; (b) any defense of improper venue; or (c) forum non conveniens, to any such action brought in the New York Courts. Seller consents to service of process by certified mail at its address listed above. Buyer and Seller further irrevocably agree that any action to enforce, interpret or construe any provision of this Agreement will be brought only in the New York Courts and not in any other court.

14.     Each of Seller and Buyer shall be solely responsible for all costs or expenses (including legal expenses) incurred by it with respect to the negotiation, preparation and execution of this Agreement. Each party agrees to (i) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments, and (ii) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement, including the procurement of any consents or approvals.

15.     Each party to this Agreement agrees that, without prior consent of the other party, it shall not disclose the contents of this Agreement or the Upstream Agreement to any entity, except that any party may make any such disclosure: (a) if required to do so by any law, court, or regulation, (b) to any banking, regulatory, or examining authority, (c) as required or advisable to implement or enforce this Agreement, the Upstream Agreement and/or all or any part of the Transferred Interest, (d) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity, or (e) to its affiliates or to its and its affiliates' professional advisors, auditors, employees, professionals, representatives, officers, directors, members and agents who have a reasonable basis to receive such disclosure. Notwithstanding the foregoing, (i) Buyer may disclose the contents of this Agreement (but not the Total Purchase Price) and the Upstream Agreement to any proposed transferee, assignee, participant, or other entity proposing to enter into contractual relations with Buyer in respect of the Transferred Interest, and (ii) Seller may disclose the contents of this Agreement (including the identity of Buyer and the Total Purchase Price) to the Upstream Party.

16.     If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be invalid or unenforceable in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

17.     This Agreement shall inure to the benefit of the parties hereto and their successors and assigns and shall be binding upon the parties hereto and their successors and assigns. This Agreement is solely for the benefit of Seller and Buyer and their successors and assigns and nothing contained in this Agreement shall be deemed to confer upon anyone other than Seller and Buyer and their successors and assigns any right to insist upon or enforce the performance or observance of any of the rights and obligations set forth herein.

18.     From and after the date hereof, if Seller receives any correspondence, notices or other documents in respect of the Swedbank Repo Claims, it shall promptly forward them to Buyer.

19.     THIS AGREEMENT AND ALL MATTERS ARISING HEREUNDER OR IN CONNECTION WITH THE TRANSACTIONS AND SUBJECT MATTER DESCRIBED IN THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO

CONFLICTS OF LAWS PRINCIPLES WHICH MAY REQUIRE OR PERMIT THE APPLICATION OF ANOTHER JURISDICTION'S LAW.

20.     This Agreement supersedes any previous contract or agreement between Buyer and Seller and constitutes the entire understanding between the parties.

21.     This Agreement may be executed in multiple counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. Transmission by telecopier, facsimile or other form of electronic transmission of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart. Each fully executed counterpart of this Agreement shall be deemed to be a duplicate original.

22.     This Agreement shall not be changed, modified or amended except by an agreement in writing executed by all of the parties hereto. This Agreement has been drafted jointly by the parties hereto in full consultation with their respective attorneys, and no ambiguity in the terms of this Agreement shall be interpreted or construed against either of the parties hereto on the basis of the source of its preparation.

23.     The documents attached hereto as Exhibit B and incorporated herein by reference shall be filed by Buyer with the Bankruptcy Court as evidence of this transfer within ten (10) business days after the latter of (i) the date of this Agreement or (ii) the date in which Seller has filed an evidence of transfer from the Upstream Party to Seller with respect to the Swedbank Repo Claims. Seller grants Buyer the right to make any corrections to the Exhibit B necessary or appropriate to effect assignment of the Transferred Interest. Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Agreement as an unconditional assignment and the Buyer herein as the valid owner of the Transferred Interest. Until such time that the Bankruptcy Court substitutes Buyer for Seller with respect to the Transferred Interest, this Agreement shall be deemed to grant Buyer an undivided 100% participation interest in the Transferred Interest and the other rights set forth herein.

**Signatures on following page**

IN WITNESS WHEREOF, the undersigned has duly executed this Agreement by its duly authorized representative dated March 11, 2011.

DEUTSCHE BANK AG, LONDON BRANCH

By: _____
Name:
Title: Ross Miller
       Director

By: _____
Name:
Title: [illegible]
       Managing Director

Barclays Bank PLC

By: _____
Name:
Title:

IN WITNESS WHEREOF, the undersigned has duly executed this Agreement by its duly authorized representative dated March 11, 2011.

DEUTSCHE BANK AG, LONDON BRANCH

By: _____  By: _____
  Name:                        Name:
  Title:                       Title:

Barclays Bank PLC

By: _____
  Name: Steve Shacoman (?)
  Title: AJP