**Hearing Date and Time: April 18, 2012 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                          :     Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :     08-13555 (JMP)
                                               :
                         Debtors.              :     (Jointly Administered)
-------------------------------------------------------------------x
```

**BNC MORTGAGE LLC'S RESPONSE TO THE MOTION**
**OF GRACE FARRELLY FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for

the entities in the above referenced chapter 11 cases, files this objection, on behalf of BNC

Mortgage LLC ("BNC"), to the motion of Grace Farrelly ("Movant"), dated February 10, 2012

for (i) relief from the automatic stay, (ii) an order directing BNC to disclose its interest in a

mortgage, and (iii) permission to continue litigation against BNC, or its successor in interest, in

New York State Court (the "Stay Motion") [ECF No. 25205], and respectfully represents:

**Preliminary Statement**

        1.      On or about March 25, 2011, Movant filed a summons and complaint

(Index No. 11-1309) (the "Complaint") in the Supreme Court for the State of New York, County

of Ulster asserting a variety of claims against several defendants, including BNC Mortgage Inc. [1]

(the "State Court Action").

2.    BNC did not receive notice of the Complaint or the commencement of the

State Court Action until Movant, prompted by a Request for Judicial Action filed by Aurora

Loan Services LLC ("ALS"), sent BNC a copy of the Complaint on or about January 4, 2012.

Shortly thereafter, BNC informed Movant that the commencement of the State Court Action was

a violation of the automatic stay (the "Automatic Stay") extant pursuant to section 362 of chapter

11 of title 11 of the United States Code (the "Bankruptcy Code") and requested that Movant

dismiss BNC as a defendant in the State Court Action.

3.    Movant then filed the Stay Motion.  As discussed below in greater detail, the

Stay Motion should be denied because (i) Movant has completely failed to establish entitlement

to relief from the Automatic Stay, (ii) BNC has already informed Movant that it has no interest in

the Loan (as defined below), and (iii) Movant's claims are precluded by the Bar Date Order (as

defined below) as a result of the Movant's failure to file a proof of claim before expiration of the

Bar Date.  Consequently, such relief is not warranted and BNC respectfully requests that the Stay

Motion be denied.

## II.
## Background

4.    Commencing on September 15, 2008, and periodically thereafter, LBHI

and certain of its affiliates (collectively, the "Debtors") commenced with this Court cases under

chapter 11 of the Bankruptcy Code.  BNC, an indirect subsidiary of LBHI, commenced its

---

[1] BNC Mortgage, Inc. and BNC Mortgage LLC are the same entity.  BNC was originally organized under the laws
of Delaware as a corporation under the name "BNC Mortgage, Inc."  On or about January 13, 1998, BNC changed
its corporate form from a corporation to a limited liability company under the name "BNC Mortgage LLC."  BNC is
still referred to as "BNC Mortgage Inc." in those states in which it is registered to conduct business under its former
name.

chapter 11 case on January 9, 2009 (the "Commencement Date").  The Debtors' chapter 11 cases

(the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being

jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

5.      On September 17, 2008, the United States Trustee for Region 2 appointed

the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

6.      On July 2, 2009, this Court entered an order pursuant to section 502(b)(9)

of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) establishing September 22, 2009 (the

"Bar Date") as the deadline for parties in interest to file proofs of claim against the Lehman

Debtors (the "Bar Date Order") [ECF. 4271].  Movant did not file a claim against BNC or any

other Debtor prior to the Bar Date.

7.      On December 6, 2011, the Court entered the order (the "Confirmation

Order") confirming the Modified Third Amended Joint Chapter 11 Plan of LBHI and its

Affiliated Debtors (the "Plan") [ECF No. 23023].  The Plan became effective on March 6, 2012.

### III.
### RELEVANT FACTS[2]

8.      On or about January 21, 2005, Movant gave BNC Mortgage Inc. a note

(the "Note") pursuant to which she agreed to repay BNC $150,000 (plus interest) in connection

with a mortgage loan that she received from BNC.  Movant's obligations under the Note were

secured by a mortgage (the "Mortgage," together with the Note, the "Loan"), dated as of January

21, 2005, encumbering real property located at 3295 Route 52, Pine Bush, New York (the

"Property").

---

[2] Certain of the "facts" described below are based on the allegations set forth in the Stay Motion and the Complaint, which BNC disputes in many respects but accepts as true for purposes of this response only.

9.      According to Movant, an individual named Robert Hennessy ("Hennessy") arranged the Loan. (Motion ¶ 12). It is not clear from the Stay Motion what relationship, if any, Hennessy had with BNC. Movant alleges that, prior to the closing of the Loan, Hennessy led her to believe that the Loan was actually a reverse mortgage pursuant to which Hennessy would pay her approximately $17,000 at the closing and then monthly payments of $1,517 for 30 years. (Motion ¶ 15). Movant further alleges that Hennessey informed her that her only obligation under the Loan was to make a monthly payment to BNC in the amount of $982.89. (*Id*).

10.     Movant further alleges that she received monthly payments in the amount of $1,517 for several years. When the monthly payments became sporadic in early 2009, Movant contacted a real estate agent with the intention selling the Property. A title search revealed that the Property was encumbered by the Mortgage. (Motion ¶ 16).

11.     On March 25, 2011, without seeking leave from this Court, Movant commenced the State Court Action against BNC, Hennessey, BNC's non-Debtor affiliate ALS, and certain other third parties. The State Court Action involves claims for fraud, rescission of residential mortgage loan, violations of the Home Ownership and Equity Protection Act and the Truth in Lending Act, violations of New York Banking Law, violations of the Real Estate Settlement Procedures Act, negligence, and breach of contract.

12.     Movant admits that she did not serve the complaint on BNC or its counsel. Movant's explanation for this oversight is that she was allegedly unable to locate a service address for BNC. (Motion ¶3).

13.     Following receipt of the Complaint on or about January 4, 2012, nearly a year after it was originally filed, BNC contacted Movant and informed her that she had commenced the State Court Action in violation of the Automatic Stay. BNC also reviewed its

records and determined that BNC's interest in the Loan had been transferred to Lehman Brothers

Bank, FSB (n/k/a Aurora Bank FSB) on or about February 22, 2005, and that, thereafter, the

Loan was further transferred to LBHI on or about March 30, 2005, then to Structured Asset

Securities Corporation ("SASCO"), a debtor in the above referenced chapter 11 cases, on or

about March 30, 2005, and finally to SARM 2005-8XS, a non-debtor securitization trust on or

about March 30, 2005.  As a result of the above-described transfers, neither BNC nor any of the

other Debtors held a direct interest in the Loan as of the Commencement Date.  BNC informed

Movant that it had disposed of its interest in the Loan and offered to stipulate to limited relief

from the Automatic Stay for the purpose of allowing Movant pursue a judicial determination of

BNC's interest in the Loan.

14.    Movant, however, was not satisfied with BNC's proposal. Despite the fact

that she failed to file a claim against BNC or the other Debtors prior to the Bar Date, Movant

insisted on pursuing claims against BNC in the State Court Action and, accordingly, the parties

were unable to reach a consensual resolution of this dispute.[3]

### IV.
### The Relief Requested in the Motion

15.    It is somewhat difficult to ascertain the precise relief that Movant is

requesting in the Stay Motion.  Indeed, the Stay Motion appears to be an omnibus request for (i)

relief from the Automatic Stay to continue the State Court Action against BNC, (ii) the

production of documents under Bankruptcy Rule 2004, and (iii) relief from the Bar Date Order to

assert late claims against BNC.  Movant is not entitled to any of the requested relief.

---

[3] Farrelly asserts in the Motion that, as a precondition to entering into a stipulation, BNC insisted that she waive any claims that she may have against unrelated third parties such as Hennessey (Stay Motion, ¶5).  That is not accurate. BNC expressly agreed to allow Farrelly to carve out any non-Debtor parties from the release.

16.     In connection with her request for relief, Movant asserts that she may be willing to enter into a stipulation with BNC provided that BNC's successor in interest in the Loan, the third-party securitization trust called SARM 2005-8XS,[4] agrees that it "is accountable for any and all claims [Movant] has against BNC."  (Stay Motion, ¶7).  Alternatively, notwithstanding the fact that BNC currently has no interest in the Loan, Movant suggests that she would be amenable to a stipulation if  "all of her mortgage loan indebtedness is also waived." (Stay Motion ¶7).  Movant cites no case law and provides no other explanation for why she is entitled to relief from the Automatic Stay.

17.     Next, Movant seeks an order (presumably under Bankruptcy Rule 2004) requiring "BNC to state its interest in the [Loan], if any, pursuant to 11 U.S.C.§§ 362(d)(2)(A) and (B) or to state the party [to whom the Loan] was transferred, and the date of transfer, and if the transfer was pursuant to the terms of a written agreement pursuant to 11 U.S.C.§§ 362(d)(2)(A) and (B)."[5]  (Stay Motion ¶7).

18.     Finally, Movant asserts that she "could not have initiated a proceeding against BNC before the [BNC] 'commencement date' of January 9, 2009 because she did not

---

[4] U.S. Bank, National Association is the Trustee for the SARM 2005-8XS securitization trust.

[5] Section 362(d)(2)(A) and (b) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
>> (2) with respect to a stay of an act against property under subsection (a) of          this section, if –
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d)(2)(A), (B).  Section 362(d)(2) is totally irrelevant to the Stay Motion because, as the United States District Court for the Southern District of New York recently observed, section "'362(d)(2) is aimed at protecting a creditor's right to foreclose, *not* a creditor's right to pursue any form of litigation against the debtor in another court.'"  *Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 2010 WL 4630327 *3 (S.D.N.Y.) (quoting *In re Northwest Airlines Corp.*, 2006 WL 2583647 *3 n.2 (Bankr. S.D.N.Y. 2006).

discover the fraud until March, 2009.  It is arguable that the [State Court Action] is not subject to the 'Bar Date Order.'"  (Stay Motion ¶7).  Here she appears to be arguing that because she did not discover the alleged fraud until after the Commencement Date, her claims against BNC are not pre-petition claims and, therefore, are not subject to the Automatic Stay or the Bar Date Order.  Movant cites no authority in support of this position.

## V.
### BNC's Response

19.     Consistent with the position that they have taken throughout these chapter 11 cases, the Debtors are willing to consent to limited relief from the automatic stay to allow Movant to name BNC in the State Court Litigation for the limited purpose of obtaining a judicial determination of BNC's interest in the Loan.[6]  Movant, however, is not satisfied with this equitable and practical resolution of the matter.  Instead, Movant insists that BNC provide her with a stipulation that involves the release of rights by third parties that BNC does not control and, therefore, cannot reasonably provide.  She also seeks to do an end-run around the Bar Date Order by asserting, without any support whatsoever, that claims that arose pre-petition can somehow be transformed to post-petition claims by virtue of their date of discovery.  Providing Movant with such relief would disrupt the efficient administration of these cases by encouraging other parties to file frivolous lawsuits in violation of the Automatic Stay and turn the claims

---

[6] See, Stipulation, Agreement and Order Between BNC Mortgage LLC and JP Morgan Chase Bank, N.A., Providing for Relief from the Automatic Stay with Regard to Real Property Located in West Jordan, Utah, July 15, 2010 [ECF. 10224]; Stipulation, Agreement and Order Between Lehman Brothers Holdings Inc. and Jonathan Keeney Providing for Relief from the Automatic Stay with Regard to Real Property Located in Baltimore, Maryland August 5, 2010 [ECF 10645]; Stipulation, Agreement and Order Among Lehman Brothers Holdings Inc., Michael A. Couch and Melissa A. Couch Providing for Limited Relief From the Automatic Stay, October 28, 2011 [ECF 21410].

process on its head by allowing parties who failed to comply with the Bar Date Order to bring

claims against BNC and the other Debtors.[7]

## A.    Relief from the Automatic Stay

20.    While the Stay Motion is muddled with respect to the basis for Movant's

request for relief from the Automatic Stay, it seems reasonable to assume that she intended to

move pursuant to section 362(d)(1) of the Bankruptcy Code, which provides that the Court may

grant relief from the automatic stay for "cause."  11 U.S.C. §362(d)(1).  *In re Sonnax*, 907 F.2d

1280 (2d Cir. 1990), which is not cited in the Stay Motion, is the seminal case in the Second

Circuit with respect to relief from the Automatic Stay for cause.  In *Sonnax*, the Second Circuit

catalogued twelve factors (the "*Sonnax* Factors") to be considered and balanced when deciding

whether the Automatic Stay should be lifted.[8]  Not all of the factors are relevant in every case,

*Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and a court need not assign

equal weight to each factor.  *In re Keene Corporation*, 171 B.R. 180, 183 (Bankr.

S.D.N.Y.1994).

---

[7] Pursuant to Confirmation Order, the Automatic Stay shall remain in effect until the Chapter 11 Cases are closed. (See Confirmation Order ¶54).

[8] The *Sonnax* Factors are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

21.     While none of the *Sonnax* Factors support Movant, three of the factors clearly indicate that granting relief from the Automatic Stay would be inappropriate.  The first *Sonnax* Factor, whether relief would result in a partial or complete resolution of the issues, militates against providing Movant with relief from the Automatic Stay.  The Bar Date Order precludes Movant from filing a claim against BNC.  Consequently, litigation against BNC in the State Court Action, even if it were to be successful (which BNC disputes), would not result in any recovery for Movant.

22.     The second *Sonnax* Factor, lack of any connection with or interference with the bankruptcy case, also militates against providing Movant with relief from the Automatic Stay.  At best, allowing Movant to litigate claims in the State Court Action that are barred by the Bar Date Order is a waste of judicial and Debtor resources.  At worst, Movant is potentially disrupting the entire claims administration process by calling into doubt the effectiveness of the Bar Date.  Neither of these results is acceptable.

23.     Finally, the twelfth *Sonnax* Factor, the balance of the harms, also militates in favor of denying the relief requested in the Motion.  In addition to the issues raised above, BNC has already offered to stipulate to limited relief from the Automatic Stay to the extent necessary to allow Movant to get a judicial determination of BNC's interest in the Loan.  Such relief would enable Movant to pursue her claims against the other defendants in the State Court Action.

24.     In sum, Movant has failed to establish sufficient cause for relief from the Automatic Stay.  Accordingly, the Stay Motion should be denied, or, if the Court determines that relief from the Automatic Stay is appropriate, such relief should be limited to a judicial determination of BNC's interest in the Loan.

**B.      Production of Documents**

25.      BNC has already informed Movant that it no longer has any interest in the Loan and has offered to stipulate to that fact.  Movant, however, is apparently not satisfied with BNC's offer and, without citing any legal basis, demands more.

26.      What Movant fails to disclose to the Court is that she already has a mechanism to obtain the information she is seeking regarding the Loan.  As discussed above, ALS is a defendant in the State Court Action.  Movant can, therefore, use the discovery available to her under New York State law to obtain information on the Loan from ALS, without depleting BNC's estate of valuable resources.  Moreover, BNC has already informed Movant that it has no interest in the Loan and has provided Movant with information regarding the current owner of the Loan.  In sum, Movant is not entitled to discovery from BNC in these Chapter 11 Cases.

**C.      Applicability of the Bar Date Order**

27.      Movant asserts that her claims against BNC are not subject to the Bar Date Order "because she did not discover the fraud until March, 2009."  Thus, Movant seems to argue that her claims are post-petition claims not subject to the Bar Date Order because they were not discovered until after the Commencement Date.  (Stay Motion, ¶7).  Movant fails to cite any authority to support her position, likely because it is at odds with the governing law in the Second Circuit.

28.      Section 101(5) of the Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, un-disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).  "Congress's intent [was] to invest the term 'claim' with the 'broadest possible' scope so that all legal obligations of the debtor ... will be able to be dealt with in the

bankruptcy case." *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 496-97 (2d Cir. 1995) (quoting H.R.REP. NO. 95-595, at 309 (1978). "Whether a claim exists is determined by bankruptcy law, while the time a claim arises is determined under relevant non-bankruptcy law." *Manville Forest Prods. Corp v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000).

29.     "As the Second Circuit has explained, [a] claim arises for purposes of bankruptcy when the relationship between the debtor and creditor contained all of the elements necessary to give rise to a legal obligation under the relevant non-bankruptcy law." *In re Lyondell Chemical Co.*, 445 B.R. 277, 289 (Bankr. S.D.N.Y. 2011) (quoting *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000) (internal quotations omitted); *see also West v. WorldCom, Inc.*, 2007 WL 3407060 *3 (Bankr. S.D.N.Y. 2007) (citing *Chateaugay*, 53 F.3d at 497) (Claims arise before a petition when the parties are engaged in a pre-petition relationship recognized in contract or tort law.").   Accordingly, to the extent that Movant has a claim against BNC, such claim would have arisen when all of the elements necessary to give rise to the legal obligation had arisen under New York law.

30.     In New York, "[t]he essential elements of a cause of action sounding in fraud are a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Deutsche Bank Nat. Trust Co. v. Sinclair*, 891 N.Y.S.2d 445, 447 (2009).  Discovery of the acts, omissions or injury by the alleged victim of the fraud is <u>not</u> an element of fraud and is, therefore, not a necessary element giving rise to the legal obligation.

31.    Thus even if all of Movant's allegations with respect to the Loan are true, and BNC does not concede that they are, the elements of Movant's fraud claim would have all arisen as of the closing of the Loan – more than three years before the Commencement Date – and Movant holds a prepetition claim, subject to the Bar Date Order and the Automatic Stay. The Second Circuit's rule supports important policy objectives of the Bankruptcy Code—such as equality of distribution—by preventing claimants from transforming their prepetition claims into post-petition administrative expense claims merely by alleging that they were unaware of the existence of such claims before the Commencement Date.

32.    Additionally, the Second Circuit's rule provides clear guidance with respect to compliance with a bar date order that can be applied objectively to all claims allowing for the fair and efficient administration of the claims process.  *See In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010) ("Enforcement of the Bar Date Order is an essential part of the orderly administration of the claims that have been filed in compliance with that order"); *see also, In re Best Products Co., Inc.*, 140 B.R. 353, 360 (Bankr. S.D.N.Y. 1992) ("To allow creditors to assert claims against a debtor without regard to the establishment of a bar date would vitiate the very purpose of [the bar date].").

33.    Movant's position, which appears to be that a claim arises when the claimant becomes aware of its existence, has been rejected by courts that have considered the matter.  For example, the United States Court of Appeals for the Third Circuit has held that asbestos-related claims arise when the claimant was exposed to the product, not when the injury manifests itself.  *Jeld-Wen, Inc. v. Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) ("[T]here seems to be something approaching a consensus among the courts that a prerequisite for recognizing a 'claim' is that the claimant's exposure to a product giving rise to

the claim occurred pre-petition, even though the injury manifested after the reorganization.  We

agree and hold that a 'claim' arises when an individual is exposed to a product or other conduct

giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code."); *see

also In re Quigley Co.*, 383 B.R. 19, 27 (Bankr. S.D.N.Y. 2008).

34.     The United States Bankruptcy Court for the District of Delaware recently

held that a claim for fraud in connection a mortgage loan arose when the loan was originated, not

when the claimant allegedly discovered the fraud.  *In re New Century TRS Holdings, Inc.*, 2012

WL 386247 (Bankr. D. Del. 2012).  *New Century* involved a bankruptcy trustee's objection to a

late filed claim.  The claims that were the subject of the disputed proof of claim included, among

others, fraud at loan origination and intentional misrepresentation.[9]  *Id*. at *2.  The claimant's

primary argument was that she should not be bound by the bar date because she didn't realize

she had a fraud claim against the debtors until after the bar date.  *Id*. at *3.  Applying the

reasoning from *Grossman's*, the court found that the claims "arose out of the Debtor's conduct

toward [claimant] that occurred prior to the bankruptcy fling and, therefore, [the claim] is a pre-

petition claim." *Id*.

35.     The reasoning underlying the *Chateaugay* and *Grossman's* decisions

applies with even greater force to the case at bar, where, unlike the asbestos claimant involved in

*Grossman's*, Movant could have uncovered the alleged fraud at any time following the closing of

the Loan by reviewing the Loan documents or conducting a search of the local property records.

Further, the due process concerns raised in *Grossman's* and other cases simply are not applicable

since Movant admits that she was aware of the alleged fraud in March of 2009 – nearly seven

months before the Bar Date.  (Stay Motion ¶10).  Accordingly, to the extent that Movant has any

---

[9] These claims were set forth in a related adversary proceeding, not the proof of claim itself, which
appears to have been cursory.

claims at all against BNC, such claims are pre-petition claims that are barred by the Bar Date

Order.  Consequently, Movant should have no right to litigate such claims in the State Court

Action.

**D.    Section 523 of the Bankruptcy Code is Not Applicable**

36.    Movant's final argument, that she may have cause to bring an adversary

proceeding against BNC pursuant to section 523 of the Bankruptcy Code, is similarly misguided.

Section 523 of the Bankruptcy Code provides that "a discharge under section . . . 1141 . . . of this

title does not discharge an *individual* debtor . . .."  11 U.S.C. § 523 (emphasis added).  BNC,

however, is not an individual and, therefore, section 523 is not applicable.  *See, e.g. In re MF*

*Global Holdings Ltd.*, 2012 WL 734175*3 (Bankr. S.D.N.Y.) ("In the Second Circuit, it is well-

settled that section 523 does not apply to corporate debtors.").  Accordingly, there is no merit to

Movant's arguments under section 523 of the Bankruptcy Code.

**VI.**
**Conclusion**

37.    For the foregoing reasons, Movant is not entitled to the relief requested in

the Stay Motion.  Movant has failed to even address the relevant standard for "cause" pursuant to

Section 362(d)(1) of the Bankruptcy Code or the Second Circuits *Sonnax* Factors, has failed to

explain why she should be entitled to discovery in the Chapter 11 Cases when she already has

access to the relevant information in the State Court Action, and has failed to justify her attempt

to evade the Bar Date Order.

38.    Notwithstanding the above, and in order to assist Movant in her efforts to

vindicate her rights in the State Court Action, BNC remains willing to stipulate that it has no

interest in the Loan, or to stipulate to limited relief from the Automatic Stay in order to allow

Movant to obtain a judicial determination of BNC's interest in the Loan provided that Movant

agrees to refrain from seeking an affirmative recovery from BNC.

WHEREFORE the Motion should be denied and the Plan Administrator should be

granted such other and further relief as is just.

Dated:  March 23, 2012
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates