# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 11 Civ. 3760 (RJS)
Chapter 11 Case No. 08-13555 (JMP)

IN RE LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

MEMORANDUM AND ORDER
March 26, 2012

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-26-12
```

RICHARD J. SULLIVAN, District Judge:

Plaintiffs-Appellants Ka Kin Wong and nine other noteholders (collectively, "Appellants"), on behalf of themselves and others similarly situated, appeal from a procedural order of the Honorable James M. Peck, United States Bankruptcy Judge, that set forth procedures under which the debtors in this action could settle disputes with their creditors. Prior to entering the procedural order, entitled the "Sixth Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts" (the "Sixth Supplemental Procedures Order" or "SSO"), Judge Peck overruled Appellants' objection to it, concluding that Appellants lacked standing to object. For the reasons that follow, the Court affirms the Bankruptcy Court's entry of the SSO over Appellants' objection.

I. BACKGROUND[1]

Plaintiffs are investors who own or maintain beneficial interests in collateralized notes called "minibonds," issued in one tier of a two-tiered set of derivatives transactions involving the debtors now in bankruptcy and their creditors. (*See* SA-7 ¶ 2d; Appellees' Br. 8–9.) At the first tier (the "Minibond Tier"), Pacific International Finance Limited ("Pacific Finance"), a special purpose vehicle created specifically for the following transaction, issued the minibonds to Appellants and others similarly situated. Using approximately $1.5 billion of funds from the sale of the minibonds, Pacific Finance purchased collateral to secure its obligations to both the minibond noteholders

---

[1] In resolving the instant appeal, the Court has considered Appellants' Brief ("Appellants' Br."), Appellees' Brief ("Appellees' Br."), Appellants' Reply Brief ("Reply"), the Special Appendix to Appellants' Opening Brief ("SA-__"), and Appellants' Statement of Issues to be Presented on Appeal and Designation of Contents of the Record ("DN-__").

and Lehman Brothers Special Financing Inc. ("LBSF") under the terms of a swap agreement. (*See* SA-7 ¶ 4; Appellees' Br. 9; DN-132 ¶ 3.) Pacific Finance then appointed HSBC Bank USA, National Association ("HSBC") as trustee over the collateral. (SA-7 ¶¶ 2, 21; DN-132 ¶ 3.)

At the second tier (the "Dante Tier"), special purpose vehicle Saphir Finance issued notes, entered into one of a series of swaps known as "Dante Swaps" with LBSF, purchased collateral after selling the notes, and appointed Bank of New York Mellon ("BNY") as trustee. Although BNY is the trustee at the Dante Tier, it is not a trustee at the Minibond Tier. (SA-1 at 31:20–21). Therefore, the notes owned by Appellants have HSBC, and not BNY, as the trustee.

Following the Chapter 11 filing of Lehman Brothers Holding Inc. ("LBHI") and its affiliated debtors (collectively, "Appellees," or "Lehman"), Pacific Finance and Lehman disagreed as to an appropriate distribution of the collateral securing the minibonds. (Appellees' Br. 4.) As a result, Appellants sued LBSF in an adversary proceeding, attempting to force the collateral's distribution by asserting claims directly and derivatively on behalf of Pacific Finance and HSBC and alleging that LBSF colluded with HSBC to prevent the distribution. (*Id.*; *see* SA-7; DN-132 ¶ 9); *see Wong v. HSBC Bank USA, Inc.*, No. 09-01120-JPM (Bankr. S.D.N.Y.). Lehman's motion to dismiss the amended complaint in that adversary proceeding is pending.

Apart from that independent adversary proceeding, LBSF entered into a settlement with Pacific Finance, Saphir Finance, HSBC, BNY, and other parties (the "Settlement") to resolve the disputes over the collateral involved in the two-tiered transactions. As a precondition to the settlement, BNY requested that the Bankruptcy Court enter the SSO, filed by Lehman on March 29, 2011 (SA-9), which effected a technical amendment to prior procedural orders (collectively, the "Derivatives Procedures Order" or "DPO") that established "procedures under which [Lehman] could settle disputes over derivative contracts without a hearing" pursuant to Federal Rule of Bankruptcy Procedure 9019.[2] (Appellees' Br. 7; SA-1 at 31:16–18). Under the SSO, certain BNY-related derivatives transactions involving LBSF were added to the DPO. (Appellees' Br. 3.)

On April 4, 2011, Appellants filed their objection to the proposed SSO, arguing, *inter alia*, that the proposed order related to their own adversary proceeding pending in bankruptcy court, that HSBC colluded with LBSF and Lehman "to conceal the Lehman group's insolvency while HSBC [] moved to protect its own interest at the [m]inibond [n]oteholders' expense," and that the proposed order was inconsistent with two prior district court orders in separate adversary proceedings. (DN-132.)

In a hearing before the Bankruptcy Court on April 13, 2011, Judge Peck considered and overruled Appellants' objection to the SSO. (SA-1.) After hearing argument on, *inter alia*, whether Appellants had "party in interest" standing under 11 U.S.C.

---

[2] For a settlement to take effect prior to an eventual plan of reorganization, the Bankruptcy Court must approve the settlement pursuant to Rule 9019. *In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007). In making its determination, the Bankruptcy Court may first conduct a settlement hearing, where it entertains objections as to whether the proposed settlement is "in the best interests of the *estate*." *In re Refco Inc.* ("*Refco*"), 505 F.3d 109, 119 (2d Cir. 2007); *see* Fed. R. Bankr. P. 9019.

§ 1109(b), Judge Peck explained that there were "multiple reasons" for overruling the objection and approving the SSO "but perhaps the most basic one is that [Appellants] do not really have privity with BNY, have no real standing here, [and] are not adversely affected by the modification of the order as requested by BNY." (SA-1 at 40:17–22.) Judge Peck further noted that "whatever rights [Appellants] have in the adversary proceeding will be decided in that adversary proceeding." (*Id.* at 40:23–24.)

On June 2, 2011, Appellants appealed from the SSO in this Court.[3] In their briefing papers, Appellants argue that the Bankruptcy Court erred in overruling their objections to the SSO because they have "standing to contest the [SSO]."[4] (Appellants' Br. 16.) According to Appellants, entry of the SSO would enable a settlement "that would provide to Lehman a $300 million windfall at [Appellants'] expense." (*Id.* at 17–18.) Appellants also argue that they "have standing to sue derivatively LBSF and BNY by stepping into the shoes of HSBC" because, *inter alia*, HSBC "protected its own interests by colluding with Lehman, while ignoring and then actively working against the interests of [the Appellants], to whom HSBC . . . owed a fiduciary duty." (*Id.* at 19–20.) Additionally, they argue that they have standing to sue LBSF, BNY, and HSBC "directly to effect a constructive or resulting trust over the [minibond notes] and their underlying collateral." (*Id.* at 19.) However, although Appellants contest the bases for Judge Peck's ruling on their objection, they make no substantive arguments regarding whether Judge Peck abused his discretion in actually entering the SSO pursuant to his authority under 11 U.S.C. §§ 105 and 365. The appeal was fully briefed as of September 12, 2011.

## II. STANDARD OF REVIEW

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). Specifically, "Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (internal quotation marks omitted). The district court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998).

## III. DISCUSSION

Before the Court can address the merits of the appeal, it first must determine whether Appellants have standing to object to the SSO. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–101 (1998). It is well-settled that to establish *constitutional* standing, a plaintiff must allege that (1) it has suffered an injury in fact, (2) which is fairly traceable to the challenged action of the defendant, and (3) which is likely to be redressed by the requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Appellees do not directly dispute Appellants' assertion that they have

---

[3] Although Appellants included the correct case caption on the cover of their Notice of Appeal (Doc. No. 1), they included an incorrect caption on the cover of their briefs in connection with the instant appeal, adding the case caption for their independent adversary proceeding (*see* Appellants' Br.; Reply).

[4] Appellants also assert that they have standing "to maintain the adversary proceeding" (Appellants' Br. 16); however, the question of whether Appellants have standing in their adversary proceeding is not before the Court.

3

constitutional standing under *Lujan* and its progeny. (*See* Appellants' Br. 16–17.) Rather, they argue that constitutional standing is insufficient in the bankruptcy context and that Appellants have failed to satisfy the additional *statutory* standing requirements under the Bankruptcy Code. For the reasons that follow, the Court agrees.

Section 1109(b) creates an independent standing hurdle for parties wishing to appear or be heard in bankruptcy proceedings. *See In re Motors Liquidation Co.*, 430 B.R. 65, 92 (S.D.N.Y. 2010) ("[S]ection 1109(b) of the Bankruptcy Code does not satisfy or replace the constitutional and prudential limitations on standing. Rather, a party must establish both.") Under that provision, only a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case." 11 U.S.C. § 1109(b).

Although the term "party in interest" is not defined within the Bankruptcy Code, a "'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983). Moreover, while the term is "broadly interpreted," it is "not infinitely expansive." *S. Boulevard, Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Significantly, party-in-interest standing under § 1109(b) "does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *In re Refco Inc.* ("*Refco*"), 505 F.3d 109, 117 n.10 (2d Cir. 2007). Significantly, a creditor once removed does not have party-in-interest standing:

> The concept [of party-in-interest standing] does not, according to the Second Circuit, encompass a creditor of one of the debtor's creditors. Such a party may be deeply concerned about the bankruptcy proceeding, since the debtor's ability to pay its creditor may affect the creditor's ability to pay, in turn, its creditor. But the party's legal rights and interests can only be asserted against the debtor's creditor, not against the debtor, and hence it is not a "party in interest" under the Second Circuit's view of section 1109.

*S. Boulevard*, 207 B.R. at 61

For example, in *Refco*, a case closely analogous to the case at hand, the Second Circuit held that investors in the creditor of a bankruptcy debtor did not have "party-in-interest" standing under § 1109(b). *Refco*, 505 F.3d at 119. There, shortly before Refco declared bankruptcy, it returned approximately $300 million to Sphinx that had been held at a Refco affiliate. *Id.* at 112. Following the bankruptcy, the Refco creditors' committee sued Sphinx, alleging that the transfer was "preferential." *Id.* When the committee and Sphinx settled, with Sphinx agreeing to return $263 million to the Refco estate, Sphinx investors objected to the settlement, arguing that it was the product of "collusion and fraud" between Refco and Sphinx and that one entity essentially controlled the other. *Id.* at 113. The Second Circuit affirmed the district court's dismissal of the investors' objection, holding that the investors were not "parties in interest" within the meaning

4

of § 1109(b) because they were not seeking "to enforce any rights distinct from those of Sphinx as a creditor and a defendant in an adversary proceeding." *Id.* at 117. In making its ruling, the Second Circuit warned against expanding the scope of § 1109(b) too broadly:

> Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization . . . . Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially stressed debtors with a consequent distribution to creditors who have acted diligently.

*Id.* at 118 (internal quotation marks omitted).

Appellants do not assert that they are, collectively, a "party in interest" under § 1109(b). Rather, they argue that they have derivative standing under English law, which, pursuant to relevant transaction documents, governs disputes over the minibond notes. (Appellants' Br. 10 n.5). Specifically, they allege that, under English law, they can step into the shoes of HSBC because of alleged collusion between Lehman and HSBC in violation of HSBC's fiduciary duties as a trustee. (*See id.* 20–21; Appellants' Reply at 4–8.) In support of their argument, Appellants repeatedly discuss a district court opinion in an entirely separate adversary proceeding in which Appellants assert claims directly and derivatively on behalf of Pacific Finance and HSBC against LBSF. *See Wong v. HSBC USA, Inc.*, Nos. 10 Civ. 0017 (WHP), 10 Civ. 0096 (WHP), No. 08-13555 (JMP), 2010 WL 3154976 (S.D.N.Y. Aug. 9, 2010). The district court in that opinion affirmed dismissal of Appellants' direct claims against LBSF, but, after examining Appellants' standing under English law, allowed Appellants to re-plead those claims derivatively. *Id.* at *9. However, the question of whether Appellants had sufficient standing to plead a derivative claim in their separate adversary proceeding has little to do with the present appeal and whether Appellants have standing to object to the SSO in Lehman's main bankruptcy proceeding – a question never addressed by the district court in *Wong*.

Moreover, Appellants' argument that alleged collusion between HSBC and Lehman should allow them "step into the shoes" of HSBC (Reply 6) is inconsistent with clear Second Circuit authority. As the Second Circuit explained in *Refco*, although bankruptcy courts are "primarily courts of equity, . . . they are not empowered to address *any* equitable claim tangentially related to the bankruptcy proceeding. Bankruptcy Court is a forum where creditors and debtors can settle their disputes *with each other*. Any internal dispute between a creditor and that creditor's investors belongs elsewhere." *Refco*, 505 F.3d at 118 (emphasis in original); *see also id.* ("[O]ne cannot avoid the conclusion that bankruptcy court is not the appropriate forum in which to resolve Investors' disputes with the Sphinx board."). Put simply, a "creditor of a creditor is not a 'party in interest' within the meaning of section 1109(b)." *In re Innkeepers USA Trust* ("*Innkeepers*"), 448 B.R. 131, 144 (Bankr. S.D.N.Y. 2011).

5

In *Innkeepers*, the bankruptcy court held that a special purpose vehicle's certificateholder was not a "party in interest" under § 1109(b).[5]  *Id.* at 135–45. The bankruptcy court explained that to rule otherwise would not only be in contravention of the Second Circuit's holding in *Refco*, but would also "inevitably serve to delay and complicate bankruptcy cases as debtors are forced to litigate issues with additional parties who previously were contractually obligated to speak with one voice, that of a special servicer." *Id.* at 144–45; *see also Refco*, 505 F.3d at 109 (noting that permitting investors to lodge objections to a settlement "on the basis of their fiduciaries' appropriate approval would entirely skew the task of Bankruptcy Court . . . [and] would be extremely unfair to debtors to force them to negotiate not only with the legal representatives of creditors, but also with any interest holders of a creditor" (internal quotation marks omitted)). The bankruptcy court in *Innkeepers* further explained that the fiduciary duty between the certificateholder and the "special servicer," akin to a special purpose vehicle, existed not to "afford individual certificateholders standing in the event of an alleged breach, but rather to allow them to take separate action under the terms of the applicable servicing agreement as they see fit." *Innkeepers*, 448 B.R. at 145.

Just as the special servicer in *Innkeepers* owed a fiduciary duty to the certificateholder, HSBC owes a fiduciary duty to Appellants here. Yet neither the existence of that duty nor an alleged violation of it provides Appellants with standing to object in a bankruptcy proceeding. However serious Appellants' allegations of collusion may be, the appropriate forum to address those allegations is not bankruptcy proceedings designed to settle the debtors' estate.[6] Furthermore, although Appellants' independent adversary proceeding with HSBC is pending, HSBC was not legally barred from entering settlement with Lehman. *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 296 (3d Cir. 2001) ("A corporation may enter into a settlement despite the existence of a derivative action when doing so is in the corporation's best interests.") (citing *Wolf v. Barkes*, 348 F.2d 994, 997 (2d Cir. 1965)).[7]

---

[5] The hedge fund at the center of the dispute in *Innkeepers* objected to the debtor's motion to establish procedures for receiving bids on its assets. 448 B.R. at 135–38. The hedge fund owned beneficial interests, through a "special servicer," in "real estate mortgage investment conduits" ("REMICs"), which are "investment vehicle[s] that hold[] mortgage loans and residential and commercial mortgage-backed securities . . . in trust and issue[] securities to investors in the secondary mortgage market in the form of certificates representing beneficial interests in these trusts." *Id.* at 140. The REMICs owned a fixed-rate loan to the debtor, "making [the hedge fund] merely an investor in a creditor." *Id.* at 143.

[6] Appellants' argument that they have standing because they have alleged a constructive trust is unavailing for the same reasons. Whether they have sufficiently alleged a constructive trust under English law is something to be determined in their adversary proceeding and will at most give them standing to go forward or advance claims in that proceeding, not in a bankruptcy proceeding intended to settle the debtor's estate.

[7] Even if there were a need for a Rule 9019 hearing in this case, Appellants would lack standing to object. As the Court explained in *Refco*, "a bankruptcy court's obligation [in such a hearing] is to determine whether a settlement is in the best interests of *the estate*, not to ensure that the *creditors'* representatives are honoring their fiduciary duties." *Refco*, 505 F.3d at 119 (emphasis in original); *accord Nellis v. Shugrue*, 165 B.R. 115, 121 (S.D.N.Y. 1994) (Sotomayor, J.). Because Appellants would seek not

6

Therefore, because Appellants are merely investors in Pacific Finance, a Lehman creditor which placed the collateral securing the notes at issue in trust with HSBC, Appellants lack "party-in-interest" standing to object to the SSO.

### IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's entry of the SSO over Appellants' objection. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 26, 2012
New York, New York

\* \* \*

Appellants are represented by Jason Cassidy Davis, Robbins Geller Rudman & Dowd LLP, One Montgomery Street, Suite 1800, San Francisco, CA 94104 and Robert Farouk Elgidely, Genovese, Joblove & Battista, P.A., 100 S.E. 2nd Street, Suite 4400, Miami, FL 33131.

Appellees are represented by Richard W. Slack and Robert Justin Lemons, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153.

---

to assert that the settlement is in the "best interests of the estate" but that it is *too* favorable to the estate, it would be improper for the Bankruptcy Court to even consider such an objection.

7