Hearing Date: April 18, 2012
Objection Deadline: April 11, 2012

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :        Case No. 08-13555 (JMP)
                                                    :
                          Debtors.                  :        (Jointly Administered)
-----------------------------------------------------------------------x

**NOTICE OF HEARING ON FINAL FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

      **PLEASE TAKE NOTICE** that a hearing on the annexed Final Fee Application of the Examiner and Jenner & Block LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses (the "Application") will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **April 18, 2012 at 10:00 a.m. (Prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that, as more fully described in the Application, Anton R. Valukas, the Examiner (the "Examiner") appointed for Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned bankruptcy cases, and Jenner & Block LLP, counsel to the Examiner, by and through the Application seek, for the period from January 19,

2009 through and including July 12, 2010, (i) final allowance and payment of reasonable compensation for actual and necessary professional services performed by the Examiner and Jenner & Block in the aggregate amount of $51,271,849.80; and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $7,906,417.06.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Application shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF), with a hard copy delivered directly to Chambers, in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 on: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v) Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Brady C. Williamson, Esq. and Katherine Stadler, Esq., attorneys for the Fee Committee; and (vi) Jenner & Block LLP, 919 Third Avenue, 37th Floor, New York, New York 10022-3908, Attn: Patrick J. Trostle, attorneys for the Examiner; so as to be filed and received no later than **April 11, 2012, at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Application is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 27, 2012
New York, New York

By: */s/ Patrick J. Trostle*_____
    Patrick J. Trostle

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**Hearing Date: April 18, 2012**
**Objection Deadline: April 11, 2012**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>,   :          Case No. 08-13555 (JMP)
                                          :
                      Debtors.            :          (Jointly Administered)
------------------------------------------------------------------------x

**FINAL FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**<u>FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES</u>**

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicants: | Anton R. Valukas (the "Examiner") and Jenner & Block LLP |
| Period for which Compensation and Reimbursement is Sought: | January 19, 2009 to July 12, 2010[1] |
| Authorized to Provide Professional Services to: | Anton R. Valukas, Examiner |
| Date of Notice of Appointment: | January 19, 2009 |
| Date of Retention (Jenner & Block): | February 11, 2009, *nunc pro tunc* January 19, 2009 |
| Fees Previously Requested: | $51,885,167.61 |
| Fees Previously Awarded: | $50,502,363.15[2] |
| Final Fees Requested: | $51,271,849.80[3] |
| Expenses Previously Requested: | $7,958,855.48[4] |
| Expenses Previously Awarded: | $7,629,540.68[5] |
| Final Expenses Requested: | $7,906,417.06[6] |

_____

[1] Pursuant to Paragraph 4 of the Order Discharging Examiner and Granting Related Relief [Docket No. 10169], after the entry of that Order, the Examiner and Jenner & Block were required to submit fee applications only for fees and expenses that exceeded $150,000 in any month. The Examiner's and Jenner & Block's fees and expenses never met that threshold after July 12, 2010. The total fees and expenses for the entire period from July 13, 2010 through February 29, 2012 were $261,422.30 and $3,992.03, respectively.

[2] This amount does not include fees requested in the Examiner's and Jenner & Block's Sixth Interim Fee Application ($114,663.15), which remains subject to the Court's review and approval.

[3] This reflects a $613,317.81 final reduction to the Examiner's and Jenner & Block's previously requested fees, which has been agreed upon by the Fee Committee, the Examiner, and Jenner & Block.

[4] The expenses requested include $5,829,459.46 of wages paid to contract attorneys whom the Examiner retained for specific document review tasks pursuant to Court authorization.

[5] This amount does not include expenses requested in the Examiner's and Jenner & Block's Sixth Interim Fee Application ($10,057.12), which remains subject to the Court's review and approval.

[6] This reflects a $52,438.42 final reduction to the Examiner's and Jenner & Block's previously requested expenses, which has been agreed upon by the Fee Committee, the Examiner, and Jenner & Block.

Summary of Fees and Expenses Requested and Approved by Application Period

| Application | Date Filed | Period Covered | Court Order(s) | Fees Requested | Fees Approved by Court | Expenses Requested | Expenses Approved by Court |
|---|---|---|---|---|---|---|---|
| First Interim Application [Dkt. 3319] | 4/10/09 | 1/19/09 – 1/31/09 | 8/13/09 [Dkt. 4795] <br><br> 9/25/09 [Dkt. 5274] | $613,650.37 | $613,650.37 | $13,514.99 | $13,514.99 |
| Second Interim Application [Dkt. 4808] | 8/14/09 | 2/1/09 – 5/31/09 | 9/25/09 [Dkt. 5274] <br><br> 12/23/09 [Dkt. 6354] <br><br> 4/9/10 [Dkt. 8204] | $10,797,341.63 | $10,733,071.24 | $429,093.04 | $429,093.04 |
| Third Interim Application [Dkt. 6188] | 12/14/09 | 6/1/09 – 9/30/09 | 4/9/10 [Dkt. 8211] | $16,227,724.95 | $16,065,360.70 | $4,129,426.78 | $4,065,323.18 |
| Fourth Interim Application [Dkt. 8404] | 4/16/10 | 10/1/09 – 1/31/10 | 9/9/10 [Dkt. 11237] | $20,604,413.25 | $19,786,320.74 | $3,014,481.99 | $2,797,333.93 |
| Fifth Interim Application [Dkt. 10779] | 8/16/10 | 2/1/10 – 5/31/10 | 5/19/11 [Dkt. 16796] | $3,527,374.26 | $3,303,960.10 | $362,281.56 | $324,275.54 |
| Sixth Interim Application [Dkt. 13462] | 12/14/10 | 6/1/10 – 7/12/10 | Not Yet Entered | $114,663.15 | Not Yet Determined | $10,057.12 | Not Yet Determined |
| **TOTAL** | | | | **$51,885,167.61** | **$50,502,363.15** | **$7,958,855.48** | **$7,629,540.68** |

**Notes:**
- All approved fees and expenses have been paid.
- 80% of the fees and 100% of the expenses requested in the Sixth Interim Application have been paid.

Summary of Time Recorded in Connection With Rendering
Services to the Examiner for January 19, 2009 - July 12, 2010

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|----------|------|---------------------|----------|---------|-------|--------|
| Examiner | Anton R. Valukas | 1968 | 2009 | 925 | 1,144.5 | $1,058,662.50 |
| Examiner | Anton R. Valukas | 1968 | 2010 | 975 | 364.0 | $354,900.00 |
| Partner | Stephen L. Ascher | 1991 | 2009 | 750 | 1,506.3 | $1,129,725.00 |
| Partner | Stephen L. Ascher | 1991 | 2010 | 775 | 207.0 | $160,425.00 |
| Partner | Matt D. Basil | 1997 | 2009 | 575 | 1,863.5 | $1,071,512.50 |
| Partner | Matt D. Basil | 1997 | 2010 | 600 | 481.3 | $288,780.00 |
| Partner | Robert L. Byman | 1970 | 2009 | 800 | 2,456.4 | $1,965,120.00 |
| Partner | Robert L. Byman | 1970 | 2010 | 850 | 813.3 | $691,305.00 |
| Partner | Timothy J. Chorvat | 1986 | 2009 | 625 | 590.3 | $368,937.50 |
| Partner | Timothy J. Chorvat | 1986 | 2010 | 650 | 191.6 | $124,540.00 |
| Partner | John F. Cox | 1995 | 2009 | 650 | 4.4 | $2,860.00 |
| Partner | David W. DeBruin | 1980 | 2009 | 750 | 212.3 | $159,225.00 |
| Partner | David W. DeBruin | 1980 | 2010 | 775 | 10.3 | $7,982.50 |
| Partner | Christopher C. Dickinson | 1988 | 2009 | 625 | 19.3 | $12,062.50 |
| Partner | Larry P. Ellsworth | 1973 | 2009 | 700 | 2.8 | $1,960.00 |
| Partner | Larry P. Ellsworth | 1973 | 2010 | 725 | 2.9 | $2,102.50 |
| Partner | Jerome L. Epstein | 1986 | 2009 | 700 | 988.2 | $691,740.00 |
| Partner | Jerome L. Epstein | 1986 | 2010 | 725 | 254.6 | $184,585.00 |
| Partner | Gabriel A. Fuentes | 1993 | 2009 | 575 | 975.0 | $560,625.00 |
| Partner | Gabriel A. Fuentes | 1993 | 2010 | 590 | 140.3 | $82,777.00 |
| Partner | Chris C. Gair | 1985 | 2009 | 700 | 2.8 | $1,960.00 |
| Partner | Marc B. Hankin | 1992 | 2009 | 725 | 1,891.4 | $1,371,265.00 |
| Partner | Marc B. Hankin | 1992 | 2010 | 750 | 359.9 | $269,925.00 |
| Partner | Mark R. Heilbrun | 1990 | 2009 | 900 | 43.2 | $38,880.00 |
| Partner | William D. Heinz | 1973 | 2009 | 800 | 10.4 | $8,320.00 |
| Partner | William D. Heinz | 1973 | 2010 | 825 | 11.9 | $9,817.50 |
| Partner | Katya Jestin | 1996 | 2009 | 675 | 255.8 | $172,665.00 |
| Partner | Katya Jestin | 1996 | 2010 | 700 | 151.4 | $105,980.00 |
| Partner | Carter H. Klein | 1972 | 2010 | 675 | 17.8 | $12,015.00 |
| Partner | Tobias L. Knapp | 1998 | 2009 | 675 | 94.8 | $63,990.00 |

---

[7] These rates do not reflect the 10% reduction in the standard hourly rates to which the Examiner and Jenner & Block agreed because of the significant public interest associated with the Examiner's duties and responsibilities.  The 10% reduction is applied to the Total Attorney Time amount.

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|---|---|---|---|---|---|---|
| Partner | C. John Koch | 1981 | 2010 | 775 | 4.8 | $3,720.00 |
| Partner | David C. Layden | 1993 | 2009 | 575 | 1,686.7 | $969,852.50 |
| Partner | David C. Layden | 1993 | 2010 | 600 | 413.5 | $248,100.00 |
| Partner | Vincent E. Lazar | 1990 | 2009 | 700 | 1,002.8 | $701,960.00 |
| Partner | Vincent E. Lazar | 1990 | 2010 | 750 | 368.4 | $276,300.00 |
| Partner | Alex Lipman | 1991 | 2009 | 700 | 180.9 | $126,630.00 |
| Partner | Michael K. Lowman | 1993 | 2009 | 600 | 0.9 | $540.00 |
| Partner | James T. Malysiak | 1973 | 2009 | 625 | 825.0 | $515,625.00 |
| Partner | James T. Malysiak | 1973 | 2010 | 650 | 379.4 | $246,610.00 |
| Partner | Ronald L. Marmer | 1977 | 2009 | 900 | 1,237.1 | $1,113,390.00 |
| Partner | Ronald L. Marmer | 1977 | 2010 | 925 | 77.8 | $71,965.00 |
| Partner | Heather D. McArn | 1992 | 2009 | 550 | 1,809.7 | $995,335.00 |
| Partner | Heather D. McArn | 1992 | 2010 | 575 | 452.8 | $260,360.00 |
| Partner | John J. Molenda | 1999 | 2009 | 550 | 564.8 | $310,640.00 |
| Partner | John J. Molenda | 1999 | 2010 | 580 | 213.9 | $124,062.00 |
| Partner | Daniel R. Murray | 1970 | 2009 | 800 | 1,161.7 | $929,360.00 |
| Partner | Daniel R. Murray | 1970 | 2010 | 850 | 638.1 | $542,385.00 |
| Partner | Thomas C. Newkirk | 1966 | 2009 | 850 | 323.0 | $274,550.00 |
| Partner | Thomas C. Newkirk | 1966 | 2010 | 875 | 119.4 | $104,475.00 |
| Partner | Robert S. Osborne | 1979 | 2010 | 950 | 9.0 | $8,550.00 |
| Partner | Adam Petravicius | 1995 | 2010 | 675 | 1.0 | $675.00 |
| Partner | Suzanne J. Prysak | 1997 | 2009 | 575 | 1,164.4 | $669,530.00 |
| Partner | Suzanne J. Prysak | 1997 | 2010 | 600 | 160.3 | $96,180.00 |
| Partner | Catherine L. Steege | 1982 | 2009 | 725 | 205.4 | $148,915.00 |
| Partner | Catherine L. Steege | 1982 | 2010 | 775 | 105.3 | $81,607.50 |
| Partner | Howard S. Suskin | 1983 | 2009 | 750 | 10.0 | $7,500.00 |
| Partner | Howard S. Suskin | 1983 | 2010 | 775 | 18.3 | $14,182.50 |
| Partner | William L. Tolbert | 1988 | 2009 | 900 | 61.0 | $54,900.00 |
| Partner | William L. Tolbert | 1988 | 2010 | 925 | 18.3 | $16,927.50 |
| Partner | Seth A. Travis | 1996 | 2009 | 575 | 464.2 | $266,915.00 |
| Partner | Seth A. Travis | 1996 | 2010 | 575 | 65.3 | $37,547.50 |
| Partner | Patrick J. Trostle | 1992 | 2009 | 725 | 2,270.2 | $1,645,895.00 |
| Partner | Patrick J. Trostle | 1992 | 2010 | 750 | 462.7 | $347,025.00 |
| Partner | Andrew Weissmann | 1985 | 2009 | 900 | 5.5 | $4,950.00 |
| Partner | Elaine Wolff | 1979 | 2009 | 700 | 29.9 | $20,930.00 |
| Partner | Richard F. Ziegler | 1976 | 2009 | 900 | 9.0 | $8,100.00 |
| Partner | Richard F. Ziegler | 1976 | 2010 | 950 | 6.4 | $6,080.00 |
| **Partner Total** | | | | | **31,594.6** | **$22,226,914.00** |

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|---|---|---|---|---|---|---|
| Of Counsel | Ronald DeKoven | 1968 | 2009 | 925 | 52.1 | $48,192.50 |
| Of Counsel | Ronald DeKoven | 1968 | 2010 | 925 | 3.6 | $3,330.00 |
| Of Counsel | Brent E. Kidwell | 1993 | 2009 | 525 | 130.9 | $68,722.50 |
| Of Counsel | Brent E. Kidwell | 1993 | 2010 | 525 | 3.3 | $1,732.50 |
| Staff Attorney | Laura B. Duchesne | 2006 | 2010 | 235 | 34.4 | $8,084.00 |
| Staff Attorney | Edward P. McKenna | 2006 | 2009 | 280 | 733.8 | $205,464.00 |
| Staff Attorney | Edward P. McKenna | 2006 | 2010 | 315 | 421.8 | $132,867.00 |
| **Of Counsel/Staff Attorney Total** | | | | | **1,379.9** | **$468,392.50** |
| Associate | Anne M. Alexander | 2008 | 2009 | 325 | 81.7 | $26,552.50 |
| Associate | Anne M. Alexander | 2008 | 2010 | 370 | 214.4 | $79,328.00 |
| Associate | Angela M. Allen | 2008 | 2009 | 325 | 541.9 | $176,117.50 |
| Associate | Angela M. Allen | 2008 | 2010 | 370 | 267.8 | $99,086.00 |
| Associate | Sarah S. Ansari | 2009 | 2010 | 325 | 18.5 | $6,012.50 |
| Associate | Thomas G. Appleman | 2009 | 2010 | 325 | 59.1 | $19,207.50 |
| Associate | Anna L. Barreiro | 2009 | 2010 | 325 | 44.3 | $14,397.50 |
| Associate | Chad E. Bell | 2006 | 2009 | 400 | 392.8 | $157,120.00 |
| Associate | Chad E. Bell | 2006 | 2010 | 445 | 146.7 | $65,281.50 |
| Associate | Christine P. Benavente | 2009 | 2010 | 325 | 26.0 | $8,450.00 |
| Associate | Sofia E. Biller | 2008 | 2009 | 325 | 1,997.6 | $649,220.00 |
| Associate | Sofia E. Biller | 2008 | 2010 | 370 | 476.4 | $176,268.00 |
| Associate | Kristen M. Boike | 2006 | 2010 | 445 | 11.0 | $4,895.00 |
| Associate | Anthony B. Borich | 2009 | 2010 | 325 | 134.2 | $43,615.00 |
| Associate | Cori F. Brown | 2005 | 2009 | 400 | 844.1 | $337,640.00 |
| Associate | Eric P. Brown | 2009 | 2009 | 325 | 485.4 | $157,755.00 |
| Associate | Eric P. Brown | 2009 | 2010 | 370 | 283.5 | $104,895.00 |
| Associate | Stephen R. Brown | 2008 | 2010 | 370 | 25.1 | $9,287.00 |
| Associate | Jessica A. Burke | 2008 | 2009 | 325 | 359.5 | $116,837.50 |
| Associate | Adam M. Caldwell | 2009 | 2010 | 325 | 27.5 | $8,937.50 |
| Associate | Penelope P. Campbell | 2009 | 2010 | 325 | 23.0 | $7,475.00 |
| Associate | Erin K. Cannon | 2009 | 2010 | 370 | 13.8 | $5,106.00 |
| Associate | Walter H. Chen | 2010 | 2010 | 370 | 168.2 | $62,234.00 |
| Associate | Anjan Choudhury | 2004 | 2009 | 475 | 2,061.1 | $979,022.50 |
| Associate | Anjan Choudhury | 2004 | 2010 | 510 | 258.1 | $131,631.00 |
| Associate | Tiffany E. Clements | 2008 | 2009 | 325 | 1,348.5 | $438,262.50 |
| Associate | Tiffany E. Clements | 2008 | 2010 | 370 | 224.1 | $82,917.00 |
| Associate | Jonathan D. Conley | 2008 | 2009 | 325 | 1,566.5 | $509,112.50 |
| Associate | Jonathan D. Conley | 2008 | 2010 | 370 | 197.8 | $73,186.00 |
| Associate | Angela L. Davis | 2009 | 2009 | 325 | 12.6 | $4,095.00 |

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | Angela L. Davis | 2009 | 2010 | 325 | 20.0 | $6,500.00 |
| Associate | Matthew R. Devine | 2004 | 2009 | 475 | 1,746.5 | $829,587.50 |
| Associate | Matthew R. Devine | 2004 | 2010 | 510 | 491.8 | $250,818.00 |
| Associate | Jennifer L. Dlugosz | 2006 | 2009 | 370 | 211.3 | $78,181.00 |
| Associate | Jennifer L. Dlugosz | 2006 | 2010 | 400 | 5.9 | $2,360.00 |
| Associate | Irina Y. Dmitrieva | 2003 | 2009 | 495 | 389.1 | $192,604.50 |
| Associate | Irina Y. Dmitrieva | 2003 | 2010 | 540 | 100.6 | $54,324.00 |
| Associate | Brandon J. Dodgen | 2008 | 2009 | 325 | 239.2 | $77,740.00 |
| Associate | Robert E. Downey | 2006 | 2009 | 400 | 33.4 | $13,360.00 |
| Associate | Shelley K. Dufford | 2007 | 2009 | 370 | 691.4 | $255,818.00 |
| Associate | Joseph R. Dunn | 2009 | 2010 | 325 | 20.5 | $6,662.50 |
| Associate | Genevieve J. Essig | 2009 | 2010 | 325 | 19.9 | $6,467.50 |
| Associate | Daniel T. Fenske | 2008 | 2009 | 325 | 163.4 | $53,105.00 |
| Associate | Daniel T. Fenske | 2008 | 2010 | 370 | 272.8 | $100,936.00 |
| Associate | Kristina Filipovich | 2008 | 2009 | 370 | 409.1 | $151,367.00 |
| Associate | Kristina Filipovich | 2008 | 2010 | 400 | 331.6 | $132,640.00 |
| Associate | Brian J. Fischer | 2002 | 2009 | 525 | 19.6 | $10,290.00 |
| Associate | Melissa C. Fogerty | 2005 | 2009 | 435 | 239.9 | $104,356.50 |
| Associate | Grant R. Folland | 2008 | 2009 | 325 | 2,084.6 | $677,495.00 |
| Associate | Grant R. Folland | 2008 | 2010 | 370 | 247.9 | $91,723.00 |
| Associate | Ilya Fradkin | 2006 | 2009 | 425 | 781.3 | $332,052.50 |
| Associate | Ilya Fradkin | 2006 | 2010 | 445 | 315.3 | $140,308.50 |
| Associate | Anne M. Gardner | 2008 | 2009 | 325 | 1,209.2 | $392,990.00 |
| Associate | Michelle A. Groman | 2006 | 2009 | 435 | 1,018.1 | $442,873.50 |
| Associate | Michelle A. Groman | 2006 | 2010 | 490 | 144.3 | $70,707.00 |
| Associate | Gabriel A. Gutierrez | 2009 | 2010 | 325 | 28.3 | $9,197.50 |
| Associate | Drew R. Haase | 2009 | 2010 | 325 | 15.3 | $4,972.50 |
| Associate | Sarah E. Haddy | 2009 | 2010 | 325 | 6.3 | $2,047.50 |
| Associate | Marc E. Harrison | 2006 | 2009 | 400 | 75.6 | $30,240.00 |
| Associate | Sean J. Hartigan | 2004 | 2009 | 495 | 271.8 | $134,541.00 |
| Associate | Sean C. Herring | 2005 | 2009 | 435 | 924.1 | $401,983.50 |
| Associate | Melissa M. Hinds | 2003 | 2009 | 495 | 237.9 | $117,760.50 |
| Associate | Melissa M. Hinds | 2003 | 2010 | 540 | 1.8 | $972.00 |
| Associate | David H. Hixson | 2005 | 2009 | 400 | 9.5 | $3,800.00 |
| Associate | Grace S. Ho | 2007 | 2009 | 370 | 288.1 | $106,597.00 |
| Associate | Hayley E. Horowitz | 2010 | 2010 | 325 | 19.9 | $6,467.50 |
| Associate | Justin A. Houppert | 2007 | 2010 | 400 | 7.3 | $2,920.00 |
| Associate | Kaija K. Hupila | 2008 | 2009 | 325 | 500.5 | $162,662.50 |

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|----------|------|---------------------|----------|---------|-------|--------|
| Associate | Kaija K. Hupila | 2008 | 2010 | 370 | 322.6 | $119,362.00 |
| Associate | David E. Hutchinson | 2009 | 2010 | 325 | 23.5 | $7,637.50 |
| Associate | Precious S. Jacobs | 2009 | 2009 | 325 | 21.1 | $6,857.50 |
| Associate | Precious S. Jacobs | 2009 | 2010 | 325 | 38.0 | $12,350.00 |
| Associate | Omar Jafri | 2008 | 2009 | 325 | 1,804.2 | $586,365.00 |
| Associate | Omar Jafri | 2008 | 2010 | 370 | 199.1 | $73,667.00 |
| Associate | Stacy S. Jakobe | 2003 | 2009 | 525 | 709.2 | $372,330.00 |
| Associate | Stacy S. Jakobe | 2003 | 2010 | 540 | 104.8 | $56,592.00 |
| Associate | Marc A. Katz | 2009 | 2010 | 325 | 27.7 | $9,002.50 |
| Associate | Michael J. Kelly | 2006 | 2010 | 445 | 133.0 | $59,185.00 |
| Associate | Andrew D. Kennedy | 2008 | 2009 | 325 | 1,408.6 | $457,795.00 |
| Associate | Andrew D. Kennedy | 2008 | 2010 | 370 | 278.9 | $103,193.00 |
| Associate | Travis A. Kennedy | 2009 | 2010 | 325 | 144.8 | $47,060.00 |
| Associate | Michael W. Khoo | 2009 | 2010 | 370 | 8.5 | $3,145.00 |
| Associate | Stephen Kang Kinslow | 2006 | 2009 | 400 | 768.5 | $307,400.00 |
| Associate | Gregory S. Knudsen | 2008 | 2009 | 325 | 455.3 | $147,972.50 |
| Associate | Gregory S. Knudsen | 2008 | 2010 | 370 | 99.8 | $36,926.00 |
| Associate | Andrew Kopelman | 2006 | 2009 | 425 | 1,146.6 | $487,305.00 |
| Associate | Andrew Kopelman | 2006 | 2010 | 445 | 257.6 | $114,632.00 |
| Associate | Matthew R. Kopp | 2008 | 2009 | 325 | 326.4 | $106,080.00 |
| Associate | Matthew R. Kopp | 2008 | 2010 | 370 | 8.5 | $3,145.00 |
| Associate | Jennifer M. Lawson | 2003 | 2009 | 525 | 396.2 | $208,005.00 |
| Associate | Rodney L. Lewis | 2005 | 2009 | 400 | 1,412.9 | $565,160.00 |
| Associate | Rodney L. Lewis | 2005 | 2010 | 445 | 363.6 | $161,802.00 |
| Associate | Elizabeth L. Liebschutz | 2008 | 2009 | 370 | 1,082.7 | $400,599.00 |
| Associate | Elizabeth L. Liebschutz | 2008 | 2010 | 400 | 190.1 | $76,040.00 |
| Associate | Mark A. Lightner | 2007 | 2009 | 370 | 604.4 | $223,628.00 |
| Associate | Mark A. Lightner | 2007 | 2010 | 400 | 345.3 | $138,120.00 |
| Associate | Matthew J. Mason | 2008 | 2009 | 325 | 1,530.0 | $497,250.00 |
| Associate | Matthew J. Mason | 2008 | 2010 | 325 | 140.2 | $51,874.00 |
| Associate | Asha V. Mathai | 2003 | 2009 | 400 | 582.9 | $233,160.00 |
| Associate | Alexander J. May | 2009 | 2010 | 325 | 50.5 | $16,412.50 |
| Associate | Edward P. McKenna | 2006 | 2009 | 495 | 83.0 | $41,085.00 |
| Associate | Luke P. McLoughlin | 2005 | 2009 | 435 | 53.2 | $23,142.00 |
| Associate | Douglas F. McMeyer | 2007 | 2010 | 370 | 10.4 | $3,848.00 |
| Associate | Sarah R. McNally | 2008 | 2009 | 325 | 1,505.8 | $489,385.00 |
| Associate | Sarah R. McNally | 2008 | 2010 | 370 | 351.0 | $129,870.00 |
| Associate | Christopher V. Meservy | 2008 | 2009 | 325 | 1,982.9 | $644,442.50 |

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | Christopher V. Meservy | 2008 | 2010 | 370 | 265.3 | $98,161.00 |
| Associate | Deanne B. Millison | 2008 | 2009 | 325 | 601.7 | $195,552.50 |
| Associate | Deanne B. Millison | 2008 | 2010 | 370 | 197.6 | $73,112.00 |
| Associate | David A. Newman | 2007 | 2009 | 400 | 64.1 | $25,640.00 |
| Associate | David A. Newman | 2007 | 2010 | 445 | 16.9 | $7,520.50 |
| Associate | Jodi K. Newman | 2007 | 2009 | 370 | 54.2 | $20,054.00 |
| Associate | Andrew S. Nicoll | 2004 | 2009 | 475 | 20.7 | $9,832.50 |
| Associate | Andrew J. Olejnik | 2004 | 2009 | 475 | 1,470.4 | $698,440.00 |
| Associate | Andrew J. Olejnik | 2004 | 2010 | 510 | 589.0 | $300,390.00 |
| Associate | Andrea C. Otto-Classon | 2008 | 2009 | 325 | 775.5 | $252,037.50 |
| Associate | Andrea C. Otto-Classon | 2008 | 2010 | 370 | 243.5 | $90,095.00 |
| Associate | William E. Parker | 2007 | 2009 | 370 | 527.8 | $195,286.00 |
| Associate | William E. Parker | 2007 | 2010 | 400 | 42.9 | $17,160.00 |
| Associate | Brij B. Patnaik | 2009 | 2010 | 325 | 40.9 | $13,292.50 |
| Associate | Laura E. Pelanek | 2004 | 2009 | 475 | 2,065.2 | $980,970.00 |
| Associate | Laura E. Pelanek | 2004 | 2010 | 510 | 320.2 | $163,302.00 |
| Associate | Tarsha A. Phillibert | 2006 | 2009 | 400 | 1,905.2 | $762,080.00 |
| Associate | Tarsha A. Phillibert | 2006 | 2010 | 445 | 325.9 | $145,025.50 |
| Associate | Keith V. Porapaiboon | 2002 | 2009 | 525 | 1,294.6 | $679,665.00 |
| Associate | Keith V. Porapaiboon | 2002 | 2010 | 540 | 295.1 | $159,354.00 |
| Associate | John M. Power | 2008 | 2009 | 325 | 2,025.3 | $658,222.50 |
| Associate | John M. Power | 2008 | 2010 | 370 | 191.8 | $70,966.00 |
| Associate | Joshua Rafsky | 2005 | 2010 | 490 | 5.8 | $2,842.00 |
| Associate | Landon S. Raiford | 2008 | 2009 | 325 | 6.6 | $2,145.00 |
| Associate | Landon S. Raiford | 2008 | 2010 | 370 | 49.9 | $18,463.00 |
| Associate | Jonathan W. Riley | 2009 | 2010 | 325 | 23.7 | $7,702.50 |
| Associate | Adam C.G. Ringguth | 2008 | 2009 | 325 | 1,568.8 | $509,860.00 |
| Associate | Adam C.G. Ringguth | 2008 | 2010 | 370 | 129.0 | $47,730.00 |
| Associate | Aaron-Michael H. Sapp | 2008 | 2009 | 325 | 1,924.5 | $625,462.50 |
| Associate | Aaron-Michael H. Sapp | 2008 | 2010 | 370 | 334.6 | $123,802.00 |
| Associate | Shorge K. Sato | 2002 | 2009 | 495 | 1,272.3 | $629,788.50 |
| Associate | Shorge K. Sato | 2002 | 2010 | 540 | 228.9 | $123,606.00 |
| Associate | David P. Saunders | 2007 | 2009 | 400 | 11.0 | $4,400.00 |
| Associate | Trevor F. Schrage | 2008 | 2009 | 325 | 1,255.4 | $408,005.00 |
| Associate | Trevor F. Schrage | 2008 | 2010 | 370 | 249.4 | $92,278.00 |
| Associate | Ashley M. Schumacher | 2008 | 2009 | 325 | 79.4 | $25,805.00 |
| Associate | Ashley M. Schumacher | 2008 | 2010 | 370 | 12.5 | $4,625.00 |
| Associate | Eric J. Schwab | 2007 | 2009 | 370 | 1,899.8 | $702,926.00 |

| Position | Name | Admitted to Practice | Fee Year | Rate[7] | Hours | Amount |
|---|---|---|---|---|---|---|
| Associate | Eric J. Schwab | 2007 | 2010 | 400 | 188.3 | $75,320.00 |
| Associate | Anwar T. Shatat | 2006 | 2010 | 445 | 22.2 | $9,879.00 |
| Associate | Jeffrey R. Shuman | 2003 | 2009 | 495 | 9.0 | $4,455.00 |
| Associate | Michele L. Slachetka | 2008 | 2009 | 325 | 280.3 | $91,097.50 |
| Associate | Michele L. Slachetka | 2008 | 2010 | 370 | 207.6 | $76,812.00 |
| Associate | Valery K. Slosman | 2008 | 2009 | 325 | 696.9 | $226,492.50 |
| Associate | Nicholas O. Stephanopoulos | 2008 | 2010 | 445 | 6.6 | $2,937.00 |
| Associate | Sarah F. Terman | 2008 | 2009 | 325 | 1,141.1 | $370,857.50 |
| Associate | Sarah F. Terman | 2008 | 2010 | 370 | 123.8 | $45,806.00 |
| Associate | Adam G. Unikowsky | 2008 | 2009 | 370 | 58.9 | $21,793.00 |
| Associate | Adam G. Unikowsky | 2008 | 2010 | 400 | 48.1 | $19,240.00 |
| Associate | Andrew W. Vail | 2003 | 2009 | 495 | 801.1 | $396,544.50 |
| Associate | Andrew W. Vail | 2003 | 2010 | 540 | 249.9 | $134,946.00 |
| Associate | Krishanti Vignarajah | 2009 | 2010 | 370 | 250.9 | $92,833.00 |
| Associate | Richard M. Wallace | 2008 | 2009 | 325 | 794.9 | $258,342.50 |
| Associate | Richard M. Wallace | 2008 | 2010 | 370 | 115.0 | $42,550.00 |
| Associate | William P. Wallenstein | 2006 | 2009 | 400 | 2,241.0 | $896,400.00 |
| Associate | William P. Wallenstein | 2006 | 2010 | 445 | 135.6 | $60,342.00 |
| Associate | Chelsea L. Warren | 2009 | 2010 | 325 | 128.7 | $41,827.50 |
| Associate | Erinn L. Wehrman | 2003 | 2009 | 495 | 134.8 | $66,726.00 |
| Associate | Daniel I. Weiner | 2006 | 2010 | 490 | 13.4 | $6,566.00 |
| Associate | Benjamin P. Wieck | 2006 | 2010 | 445 | 30.3 | $13,483.50 |
| Associate | Brian J. Wilson | 2007 | 2009 | 370 | 574.9 | $212,713.00 |
| Associate | Brian J. Wilson | 2007 | 2010 | 400 | 16.4 | $6,560.00 |
| Associate | Thomas M. Winegar | 2008 | 2009 | 325 | 1,536.6 | $499,395.00 |
| Associate | Thomas M. Winegar | 2008 | 2010 | 370 | 179.8 | $66,526.00 |
| Associate | Jacob P. Zipfel | 2008 | 2009 | 325 | 2,208.2 | $717,665.00 |
| Associate | Jacob P. Zipfel | 2008 | 2010 | 370 | 377.2 | $139,564.00 |
| **Associate Total** | | | | | **79,833.0** | **$30,578,470.50** |
| **Total Attorney Time** | | | | | **112,807.5** | **$53,273,777.00** |
| **Less 10% Reduction** | | | | | | **($5,327,377.70)** |
| **Total Attorney Time at Reduced Rate** | | | | | | **$47,946,399.30** |
| **Blended Hourly Rate for Attorneys** | | | | | | **$425.03** |

| Position | Name | Fee Year | Rate[8] | Hours | Amount |
|----------|------|----------|---------|-------|--------|
| Paralegal | Lamia K. Azize | 2009 | 270 | 172.5 | $46,575.00 |
| Paralegal | Lamia K. Azize | 2010 | 270 | 150.0 | $40,500.00 |
| Paralegal | Wenette Belcher | 2009 | 255 | 266.4 | $67,932.00 |
| Paralegal | Wenette Belcher | 2010 | 255 | 323.9 | $82,594.50 |
| Paralegal | Wenette Bradford | 2009 | 255 | 262.6 | $66,963.00 |
| Paralegal | Daniel R. Gross | 2009 | 255 | 60.5 | $15,427.50 |
| Paralegal | Jeanne C. Haske | 2009 | 255 | 13.4 | $3,417.00 |
| Paralegal | Jeanne C. Haske | 2010 | 255 | 76.6 | $19,533.00 |
| Paralegal | Micah B. Horan | 2009 | 270 | 288.2 | $77,814.00 |
| Paralegal | Micah B. Horan | 2010 | 270 | 198.9 | $53,703.00 |
| Paralegal | W. Michael Hughes | 2010 | 230 | 179.9 | $41,377.00 |
| Paralegal | Michael H. Matlock | 2009 | 270 | 517.7 | $139,779.00 |
| Paralegal | Michael H. Matlock | 2010 | 275 | 163.2 | $44,880.00 |
| Paralegal | Shawn K. McGee | 2009 | 270 | 484.8 | $130,896.00 |
| Paralegal | Shawn K. McGee | 2010 | 275 | 18.5 | $5,087.50 |
| Paralegal | Jessica M. Merkouris | 2009 | 270 | 13.9 | $3,753.00 |
| Paralegal | Jessica M. Merkouris | 2010 | 275 | 21.8 | $5,995.00 |
| Paralegal | Daniel K. Morgan | 2009 | 230 | 14.6 | $3,358.00 |
| Paralegal | Mariann Murphy | 2009 | 270 | 11.0 | $2,970.00 |
| Paralegal | Cleopatra S. Murray | 2009 | 230 | 795.1 | $182,873.00 |
| Paralegal | Cleopatra S. Murray | 2010 | 230 | 187.0 | $43,010.00 |
| Paralegal | Cheryl L. Olson | 2009 | 270 | 1.9 | $513.00 |
| Paralegal | Jeffrey K. Phillips | 2009 | 230 | 365.0 | $83,950.00 |
| Paralegal | Jeffrey K. Phillips | 2010 | 230 | 307.9 | $70,817.00 |
| Paralegal | Aubrey L. Rettig | 2009 | 255 | 799.9 | $203,974.50 |
| Paralegal | Aubrey L. Rettig | 2010 | 255 | 306.2 | $78,081.00 |
| Paralegal | Shannon R. Roberts | 2009 | 220 | 145.7 | $32,054.00 |
| Paralegal | Shannon R. Roberts | 2010 | 220 | 145.0 | $31,900.00 |
| Paralegal | Eileen J. Robertson | 2009 | 230 | 14.7 | $3,381.00 |
| Paralegal | Lilia V. Rozhkova | 2009 | 230 | 12.5 | $2,875.00 |
| Paralegal | Mark R. Scholl | 2009 | 270 | 1,007.6 | $272,052.00 |
| Paralegal | Mark R. Scholl | 2010 | 270 | 354.6 | $95,742.00 |

---

[8] These rates do not reflect the 10% reduction in the standard hourly rates to which the Examiner and Jenner & Block agreed because of the significant public interest associated with the Examiner's duties and responsibilities. The 10% reduction is applied to the Total Paraprofessional Time amount.

| Position | Name | Fee Year | Rate[8] | Hours | Amount |
|---|---|---|---|---|---|
| Paralegal | Julie H. Shaw | 2009 | 255 | 5.0 | $1,275.00 |
| Paralegal | Julie H. Shaw | 2010 | 255 | 155.4 | $39,627.00 |
| Paralegal | Christopher R. Ward | 2009 | 255 | 2,070.9 | $528,079.50 |
| Paralegal | Christopher R. Ward | 2010 | 255 | 768.9 | $196,069.50 |
| Technology Ass't | Jennifer Anderson | 2009 | 275 | 3.0 | $825.00 |
| Technology Ass't | Daniel Biemer | 2009 | 275 | 244.8 | $67,320.00 |
| Technology Ass't | Tunde Holloway-Wusu | 2009 | 275 | 38.0 | $10,450.00 |
| Technology Ass't | Kelly A. Laughran | 2009 | 275 | 44.6 | $12,265.00 |
| Technology Ass't | Kelly A. Laughran | 2010 | 275 | 21.5 | $5,912.50 |
| Technology Ass't | Lory I. Manheimer | 2009 | 275 | 1,298.1 | $356,977.50 |
| Technology Ass't | Lory I. Manheimer | 2010 | 275 | 266.8 | $73,370.00 |
| Technology Ass't | Zulaikha Master | 2009 | 275 | 592.6 | $162,965.00 |
| Technology Ass't | Zulaikha Master | 2010 | 275 | 311.1 | $85,552.50 |
| Technology Ass't | Robert R. Ohton, Jr. | 2009 | 275 | 14.0 | $3,850.00 |
| Technology Ass't | James B. Salla | 2009 | 275 | 5.0 | $1,375.00 |
| Research Librarian | Lisa A. Ross | 2009 | 260 | 31.3 | $8,138.00 |
| Research Librarian | Mary E. Ruddy | 2009 | 260 | 11.3 | $2,938.00 |
| Project Assistant | Herman R. Barrios | 2009 | 160 | 94.2 | $15,072.00 |
| Project Assistant | Holley M. Brandchaft-White | 2009 | 160 | 17.4 | $2,784.00 |
| Project Assistant | Catherine L. Chu | 2009 | 160 | 57.5 | $9,200.00 |
| Project Assistant | Catherine L. Chu | 2010 | 160 | 81.1 | $12,976.00 |
| Project Assistant | Joseph M. Conley | 2009 | 170 | 191.4 | $32,538.00 |
| Project Assistant | Allison Crowe | 2009 | 160 | 10.5 | $1,680.00 |
| Project Assistant | Emily A. Flores | 2009 | 160 | 1,694.5 | $271,120.00 |
| Project Assistant | Emily A. Flores | 2010 | 160 | 639.0 | $102,240.00 |
| Project Assistant | Daniel O. Garcia | 2009 | 160 | 36.3 | $5,808.00 |
| Project Assistant | Casey J. Gioielli | 2009 | 170 | 63.7 | $10,829.00 |
| Project Assistant | Casey J. Gioielli | 2010 | 170 | 23.9 | $4,063.00 |
| Project Assistant | Nancy L. Gonzalez | 2009 | 150 | 68.3 | $10,245.00 |
| Project Assistant | Samuel C. Gray | 2009 | 170 | 16.8 | $2,856.00 |
| Project Assistant | Arjumand Hamid | 2009 | 160 | 15.5 | $2,480.00 |
| Project Assistant | Jonathan Hollis | 2009 | 160 | 89.8 | $14,368.00 |
| Project Assistant | Omar N. Khan | 2009 | 170 | 3.5 | $595.00 |
| Project Assistant | Yong Joon Lee | 2009 | 160 | 362.6 | $58,016.00 |
| Project Assistant | Yong Joon Lee | 2010 | 160 | 231.4 | $37,024.00 |
| Project Assistant | Alexander S. Malson | 2009 | 160 | 6.3 | $1,008.00 |
| Project Assistant | Alexander S. Malson | 2010 | 160 | 35.4 | $5,664.00 |
| Project Assistant | Marc A. Patterson | 2009 | 170 | 8.3 | $1,411.00 |

| Position | Name | Fee Year | Rate[8] | Hours | Amount |
|---|---|---|---|---|---|
| Project Assistant | Marc A. Patterson | 2010 | 170 | 6.4 | $1,088.00 |
| Project Assistant | Gretchen J. Pinnick | 2009 | 160 | 195.6 | $31,296.00 |
| Project Assistant | Gretchen J. Pinnick | 2010 | 160 | 270.2 | $43,232.00 |
| Project Assistant | Lauren R. Prather | 2009 | 170 | 10.8 | $1,836.00 |
| Project Assistant | Panagiota Ramos | 2009 | 170 | 388.9 | $66,113.00 |
| Project Assistant | Panagiota Ramos | 2010 | 170 | 219.9 | $37,383.00 |
| Project Assistant | Alexander M. Righi | 2009 | 160 | 904.1 | $144,656.00 |
| Project Assistant | Alexander M. Righi | 2010 | 160 | 376.2 | $60,192.00 |
| Project Assistant | Jonathan W. Striegel | 2009 | 170 | 32.3 | $5,491.00 |
| Project Assistant | Jonathan W. Striegel | 2010 | 170 | 106.8 | $18,156.00 |
| Project Assistant | Adrienne P. Thacher | 2009 | 160 | 181.4 | $29,024.00 |
| Project Assistant | Adrienne P. Thacher | 2010 | 160 | 38.4 | $6,144.00 |
| Project Assistant | Kenneth S. Waldmann | 2009 | 170 | 1,338.5 | $227,545.00 |
| Project Assistant | Kenneth S. Waldmann | 2010 | 170 | 261.8 | $44,506.00 |
| Project Assistant | Lauren E. Wang | 2009 | 160 | 707.2 | $113,152.00 |
| Project Assistant | Lauren E. Wang | 2010 | 160 | 87.3 | $13,968.00 |
| **Total Paraprofessional Time** | | | | **22,437.0** | **$4,956,525.50** |
| **Less 10% Reduction** | | | | | **($495,652.55)** |
| **Total Paraprofessional Time at Reduced Rate** | | | | | **$4,460,872.95** |

| | |
|---|---|
| **Total Amount for Services Rendered (Attorneys and Paraprofessionals)** | **$58,230,302.50** |
| **Less 10% Reduction** | **($5,823,030.25)** |
| **Less 50% Non-Working Travel Time Reduction** | **($522,104.64)** |
| **Less Fee Committee Reduction** | **($613,317.81)** |
| **Total Amount of Fees Requested for Services Rendered (January 19, 2009 - July 12, 2010)** | **$51,271,849.80** |

**Hearing Date: April 18, 2012**
**Objection Deadline: April 11, 2012**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
                                         :

In re                         :       Chapter 11

                              :

LEHMAN BROTHERS HOLDINGS INC., et al.,     :       Case No. 08-13555 (JMP)

                              :

                  Debtors.     :       (Jointly Administered)

-----------------------------------------------------------------------x

## FINAL FEE APPLICATION OF THE EXAMINER AND
## JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION
## <u>FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES</u>

**TO THE HONORABLE JAMES M PECK**
**UNITED STATES BANKRUPTCY JUDGE**

      Anton R. Valukas, the Examiner (the "Examiner") appointed for Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") in the above-

captioned bankruptcy cases, and Jenner & Block LLP ("Jenner & Block"), counsel to the

Examiner, by this final fee application (the "Final Fee Application") pursuant to sections 330(a)

and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seek (i) final allowance and payment of reasonable compensation for actual and necessary professional services performed by the Examiner and Jenner & Block in the aggregate amount of $51,271,849.80 for the period from January 19, 2009 through and including July 12, 2010 (the "Compensation Period");[9] and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $7,906,417.06, incurred during the Compensation Period.

## Preliminary Statement

1.      On January 16, 2009, the Court entered an order directing the United States Trustee to appoint an examiner as soon as practicable in these chapter 11 cases.  The examiner was to investigate ten bulleted topics and perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code.  In general, the examiner's duty was to investigate the events leading to Lehman's failure and whether colorable claims arose therefrom.  On January 19, 2009, the United States Trustee appointed Anton R. Valukas as Examiner, which the Court approved on January 20, 2009.  On February 11, 2009, the Court approved the Examiner's request to employ Jenner & Block as his counsel.

2.      Despite the complexity of Lehman's bankruptcy and the broad scope of the Examiner's investigation, the time available for the examination was limited by the practical needs of the bankruptcy case.  The Examiner and his professionals diligently and efficiently worked to prepare a comprehensive 2,200-page report within just over one year after the

_____

[9] As noted on the Summary Sheet above, pursuant to Paragraph 4 of the Order Discharging Examiner and Granting Related Relief [Docket No. 10169], after the entry of that Order, the Examiner and Jenner & Block were required to submit fee applications only for fees and expenses that exceeded $150,000 in any month.  The Examiner's and Jenner & Block's fees and expenses never met that threshold after July 12, 2010.  The total fees and expenses for the entire period from July 13, 2010 through February 29, 2012 were $261,422.30 and $3,992.03, respectively.

Examiner was appointed.  On February 8, 2010, the Examiner filed his report under seal with the Court, publicly filed a partially redacted version on March 11, 2010, and publicly filed a full, unredacted version on April 14, 2010.

3.        The Examiner's work, which is detailed in the report and summarized in this application, included sifting through approximately three petabytes of data – roughly the equivalent of 350 billion pages – using document custodian and term searches to cull out the most promising subset of electronic material for review.  The Examiner also requested and received electronic and hard copy documents from numerous third parties and Government agencies and, in total, collected in excess of five million documents, estimated to comprise more than 40 million pages.

4.        The Examiner and his professionals also navigated Lehman's operating, trading, valuation, financial, accounting, and other data systems to collect the information necessary to complete the investigation.  This process was challenging given Lehman's patchwork of 2,600 software systems and applications, the complexity and accessibility of those systems, and the hurried filing that commenced these cases.  In the end, the Examiner and his professionals were able to obtain sufficient data to inform and support the Examiner's report.

5.        Two other key elements of the Examiner's investigation included witness interviews and cooperation and coordination with the Government and third parties.  The Examiner interviewed more than 250 individuals and regularly communicated with Lehman's counsel, the trustee of Lehman's stock broker subsidiary (Lehman Brothers, Inc.), the SEC, and three United States Attorney Offices, among others.  The speed with which the Examiner completed his investigation and report would not have been achievable if the Examiner had not received the cooperation of these parties and others.

6.        In the end, the Examiner filed a report that fulfilled the mandate set forth in the Court's order appointing an examiner and provided a factual account so that parties could use the facts to resolve matters in these incredibly complex cases.  The Examiner's report was one of the phases of the largest bankruptcy in United States history, which was conducted in an orderly and efficient manner and recently culminated in the effectiveness of a consensual Chapter 11 plan.

7.        To aid this Court in analyzing this Final Fee Application, the Examiner and Jenner & Block have divided it into four parts.  Part I provides a brief background of the Debtors' cases and the Examiner's appointment.  Part II provides an overview of the Final Fee Application.  Part III provides a description of the work performed by the Examiner and Jenner & Block during the Compensation Period, by category, as well as how the Examiner and Jenner & Block calculated this compensation request.  Finally, Part IV explains why this compensation request should be allowed.

## I.  Background

8.        Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

9.        On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

10.     On September 19, 2008, a proceeding was commenced under the Securities

Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A

trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

11.     On January 16, 2009, the Court entered an order (the "Examiner Order") directing

the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2), to investigate, *inter alia*,

various transfers and transactions by the Debtors and their affiliates, claims that certain Debtors

may have against LBHI, and the events that immediately preceded the commencement of the

LBHI chapter 11 case (collectively, the "Investigation").  Examiner Order at ¶ 2 [Docket No.

2569].  The Examiner Order also directed the examiner to "perform the duties specified in

sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders

otherwise."  Id. at ¶ 3.

12.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner

in the chapter 11 cases, subject to Court approval, and filed her notice of such appointment.

[Docket No. 2570].  On January 20, 2009, the U.S. Trustee filed her application for an Order of

this Court approving the appointment of Anton R. Valukas as examiner in the chapter 11 cases.

[Docket No. 2571].  On January 20, 2009, this Court entered an order approving the appointment

by the U.S. Trustee of Anton R. Valukas as Examiner in the chapter 11 cases.  [Docket No.

2583].  On January 23, 2009, the Examiner filed his Application to Employ Jenner & Block LLP

as Counsel to the Examiner.  [Docket No. 2627].  On February 11, 2009, this Court entered the

Order Authorizing the Examiner to Retain and Employ Jenner & Block LLP as his Counsel *nunc pro tunc* as of January 19, 2009.  [Docket No. 2803].[10]

13.      On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No. 2924].  On April 29, May 15, and June 30, the Examiner filed applications to retain contract attorneys to perform specific document review tasks.  [Docket Nos. 3457, 3582, 4239].[11]  The applications were approved by the Court on May 15, June 3, and July 16, respectively.  [Docket Nos. 3577, 2750, 4428].

14.      On February 8, 2010, the Examiner filed with the Court under seal the Report of Examiner Anton R. Valukas (the "Report"), pursuant to the Court's Order Authorizing the Examiner to File the Examiner's Report Under Seal.  [Docket No. 7024].  On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and substituted an unredacted version of the Report with the Court under seal pursuant to the Bankruptcy Court's Order dated March 11, 2010, [Docket No. 7530].  On April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report.  [Docket No. 8307].

15.      On March 15, 2010, the Debtors filed the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors.  [Docket No. 7572].  On April 14, 2010, the Debtors filed a revised Joint Chapter 11 Plan and related Disclosure Statement.  [Docket Nos. 8330, 8332].

---

[10] On May 28, 2009, November 6, 2009, April 9, 2010, and November 12, 2010, Jenner & Block filed supplemental declarations disclosing connections with certain creditors and other parties-in-interest. [Docket Nos. 3676, 5752, 8198, 12718].

[11] On July 8, 2009, the Examiner filed 10 additional affidavits of disinterestedness in connection with his third application to retain contract attorneys.  [Docket No. 4296].

16.     On July 13, 2010, the Court entered an Order Discharging Examiner and Granting

Related Relief (the "Discharge Order").  [Docket No. 10169].  The Discharge Order terminated

the appointment of the Examiner and discharged the Examiner and his professionals "from any

further obligations, duties, or responsibilities except as otherwise set forth in [the Discharge

Order]."  Among other things, the Discharge Order permits the Examiner and his professionals to

continue to provide cooperation to various parties involved in these chapter 11 cases, and permits

the Examiner and his professionals to be reimbursed by the Debtors for fees and expenses

without further order of the Court, unless such fees and expenses exceeded $150,000 in a

particular month, in which case the Examiner and his professionals were required to file a fee

application.

17.     On January 24, 2011, the Court entered an order modifying the composition of the

fee committee (the "Fee Committee") that had previously been appointed in these chapter 11

cases.  [Docket No. 14117].  On April 14, 2011, the Bankruptcy Court entered an order

approving a revised fee protocol setting forth certain procedures and guidelines with respect to

the fees and expenses of retained professionals in these cases.  [Docket No. 15998].

18.     On January 25, 2011, the Debtors filed the First Amended Joint Chapter 11 Plan

and related Disclosure Statement.  [Docket Nos. 14150, 14151].  On June 30, 2011, the Debtors

filed the Second Amended Joint Chapter 11 Plan and related Disclosure Statement.  [Docket

Nos. 18204, 18205].  On September 1, 2011, the Debtors filed the Third Amended Joint Chapter

11 Plan (the "Plan") and related Disclosure Statement.  [Docket Nos. 19627, 19629].

19.     On September 1, 2011, the Bankruptcy Court entered an amended order

approving the Disclosure Statement, establishing solicitation and voting procedures in

connection with the Plan, scheduling the confirmation hearing, and establishing notice and

objection procedures for the confirmation hearing.  [Docket No. 19631].  On September 15,

2011, the Bankruptcy Court entered an order approving a modification to the Disclosure

Statement.  [Docket No. 20016] .

20.     On December 6, 2011, the Court entered an Order Confirming Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. And Its Affiliated Debtors.

[Docket No. 23023].  On March 6, 2012, the Plan, as modified, became effective (the "Effective

Date").

## II.  Final Fee Application

21.     The Examiner and Jenner & Block have prepared this Final Fee Application in

accordance with the Administrative Order Re: Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases dated November 25, 2009

(the "Amended SDNY Guidelines"), and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330

promulgated by the United States Department of Justice dated January 30, 1996 (the "UST

Guidelines" and together with the Amended SDNY Guidelines, the "Guidelines").  Pursuant to

the Amended SDNY Guidelines, a certification regarding compliance with such guidelines is

attached hereto as Exhibit A.

22.     The Examiner and Jenner & Block also have prepared their time and expense

entries to comply with guidelines proposed by the Fee Committee.  To the extent that any time or

expense entries may not have fully complied with the Guidelines, the Examiner and Jenner &

Block have negotiated agreed upon reductions with the Fee Committee.  The Examiner and

Jenner & Block have provided the Fee Committee's counsel with a copy of this Final Fee

Application and understand that the Fee Committee does not object to the amounts requested

herein.

8

23.     The Examiner and Jenner & Block seek final allowance herein of reasonable compensation for actual and necessary professional services rendered by and to the Examiner during the Compensation Period, in the aggregate amount of $51,271,849.80 and for reimbursement of actual, reasonable and necessary expenses incurred during the Compensation Period in connection with the rendition of such services in the aggregate amount of $7,906,417.06.

24.     The fees sought by this Final Fee Application reflect an aggregate of 135,244.50 hours of attorney and paraprofessional time spent and recorded in performing services by and for the Examiner during the Compensation Period.  This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Examiner's Investigation.  Of the aggregate time expended during the Compensation Period, 31,594.6 recorded hours were expended by partners, 1,379.9 recorded hours were expended by of counsel or staff attorneys, 79,833.0 recorded hours were expended by associates, and 22,437.0 recorded hours were expended by paraprofessionals.  During the Compensation Period, the Examiner's and Jenner & Block's hourly billing rates for attorneys working on these matters ranged from $235.00 to $975.00 per hour before applying the agreed upon 10% rate reduction.  Allowance of compensation in the amount requested, without applying the non-working travel time and Fee Committee reductions, would result in a blended hourly billing rate for attorneys of approximately $425.03.

25.     Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

26.     Pursuant to the Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services for the Examiner during the Compensation Period for which the Examiner and Jenner & Block are seeking reimbursement, the position in which each such individual was employed by Jenner & Block at the time the services were rendered, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended and fees billed therefore, and as to attorneys, the year in which the attorney was first licensed to practice law.

27.     Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is a summary by project matter of the fees generated by the services performed during the Compensation Period and, for each separate project matter, a list of each person providing services on the project, a statement of the number of hours spent, and the amount of compensation requested for each person on the project.

28.     Annexed hereto as <u>Exhibit D</u> is a schedule specifying the categories of expenses for which the Examiner and Jenner & Block are seeking reimbursement and the total amount for each such expense category; <u>Exhibit D</u> also includes a table that provides additional detail regarding each of the disbursement expenses for contract attorney wages during the Compensation Period.  This schedule has not been adjusted to account for the expense reductions upon which the Examiner, Jenner & Block, and the Fee Committee agreed and for which the Examiner and Jenner & Block are not seeking reimbursement.

29.     Detailed lists of all expenses for which the Examiner and Jenner & Block seek reimbursement, as well as detailed records of the time spent by all attorneys and paraprofessionals in connection with the representation of the Examiner, were filed as exhibits to the Examiner's and Jenner & Block's interim fee applications [Docket Nos. 3319, 4808, 6188,

8404, 10779, 13462].  These lists, however, do not take into account the reductions arising from negotiations with the Fee Committee.  The Examiner and Jenner & Block have not specifically identified the detailed time records and expense entries which continue to appear in the detailed time records and expense entries previously filed and to which those reductions apply.

30.    The Examiner and Jenner & Block previously have submitted unredacted versions of their detailed time records and expense entries to the Chair of the Fee Committee, under a confidentiality letter agreement, and to the Office of the United States Trustee.  The Examiner and Jenner & Block prepared and filed redacted versions of the detailed time records and expense entries in order to comply with the confidentiality requirement of paragraph 5 of the Court's January 16, 2009 order directing the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2).

31.    The fees charged by the Examiner and Jenner & Block in these cases reflect an agreed upon 10% reduction from standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities.  The fees are otherwise billed in accordance with Jenner & Block's general existing billing rates and procedures in effect during the Compensation Period.  The rates the Examiner and Jenner & Block charged for the services rendered by its professionals and paraprofessionals to the Examiner are the rates charged by the Examiner and the firm for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in a competitive national legal market in cases other than cases under title 11.

32.    All of the services for which final compensation is sought were rendered by or to the Examiner solely in furtherance of his duties and functions as Examiner and not on behalf of any individual creditor or other person.

33.    The Examiner and Jenner & Block have not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

34.    The Examiner and Jenner & Block have not shared, nor agreed to share, (a) any compensation they have received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by the Examiner or Jenner & Block as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## III.  Summary of Professional Compensation and Reimbursement of Expenses Requested

35.    As reported in the First Interim Fee Application, immediately following the Examiner's appointment, the Examiner performed a wide variety of tasks in connection with the Investigation.[12]  These included, among other things:  (a) assembling publicly available materials; (b) meeting and conferring with various parties to develop a work plan and to coordinate to avoid duplication of effort; (c) coordinating with agencies of the U.S. Government; (d) contacting examiners in other complex matters for assistance in developing an efficient work plan; (e) entering into stipulations with the Debtors and the Creditors' Committee to obtain access to documents and other materials; (f) filing a Rule 2004 motion that requested omnibus

_____

[12] Except as otherwise noted, references to steps taken by the Examiner include both the Examiner and Jenner & Block.

authority to issue subpoenas, including document requests, upon witnesses;[13] and (g) establishing

a depository to collect documents, transcripts, and other materials.

36.    As reported in the Second Interim Fee Application, the Examiner continued the

Investigation by:  (a) finalizing and transmitting the Examiner's Preliminary Work Plan to the

Court and parties-in-interest; (b) meeting with the Examiner's financial advisor, Duff & Phelps,

to coordinate the Investigation;[14] (c) conferring with the Debtors, the Creditors' Committee, and

other parties involved in the case to eliminate duplication and to make the work product being

generated useful to other parties in the future; (d) meeting with professionals at Alvarez &

Marsal to ascertain what data and documents were available, how the data and documents could

be accessed, and what analysis had already been performed; (e) entering into stipulations with

various parties; and (f) communicating with the Office of the United States Trustee, the SIPA

Trustee, and agencies of the U.S. Government.

37.    The Examiner also:  (a) collaborated with the Debtors and other parties involved

in the Investigation to begin the process of collecting, managing, and reviewing documents;

(b) obtained authority from the Court to retain contract attorneys to perform document review;

(c) commenced witness interviews in early February; (d) held a weekly meeting with team

leaders to coordinate the investigation, maximize efficiency, avoid duplication, and draw on the

expertise and experience of his professionals; and (e) prepared factual and legal memoranda as

information was discovered during the course of the Investigation.

---

[13] The Court granted the 2004 motion on February 11, 2009.  [Docket No. 2804].

[14] On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No. 2924].

38.     As reported in the Third Interim Fee Application, many of these activities continued from June through September 2009 as the Examiner's Investigation advanced. Specifically, the Examiner:  (a) remained in communication with parties involved in the case, including the U.S. Government, to eliminate duplication of effort, to make the work product being generated useful to other parties in the future, and to obtain documents relevant to the Investigation; (b) collected and reviewed millions of pages of documents; (c) entered into court-approved confidentiality stipulations regarding documents with several parties; and (d) managed "claw-back" requests and other privilege related issues arising in connection with the Examiner's document review.

39.     Also as reported in the Third Interim Fee Application, the Examiner: (a) conducted 123 witness interviews;[15] (b) prepared outlines and work plans for drafting sections of the Examiner's final Report; (c) began drafting sections of the final Report; (d) worked with Duff & Phelps to identify analyses necessary for the Report; (e) identified public domain materials that related to the Investigation; (f) tracked witness, interview, and document information so as to coordinate among team members; (g) conducted legal research on potential claims to be analyzed as required by the Examiner Order; and (h) continued to hold a weekly team leaders meeting to coordinate the Investigation.

40.     As reported in the Fourth Interim Fee Application, many of these activities continued from October 2009 through January 2010 as the Examiner completed his Investigation and prepared his Report, including (a) conducting an additional 151 witness interviews; (b) tracking witness, interview, and document information; (c) pursuing, collecting, and

---

[15] These numbers include depositions taken by other parties which the Examiner participated in or attended.

14

reviewing documents and public domain materials relating to the Investigation; (d) entering into

additional, court-approved confidentiality stipulations with various parties; (e) managing

privilege related issues arising in the connection with the Examiner's document review;

(f) analyzing evidence and legal research regarding potential claims to be reported on;

(g) finalizing the substance of the Examiner's Report; and (h) integrating the various sections of

the Report.

41.    As reported in the Fifth Interim Fee Application, the Examiner finalized his

Report and filed it with the Court under seal on February 8, 2010.  On March 11, 2010, the

Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and, on

April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report [Docket No.

8307].  The Examiner also (a) communicated with various parties-in-interest regarding the

Report, including the Debtors, the SIPA Trustee, the U.S. Trustee, and the U.S. Government;

(b) communicated with various third parties regarding confidentiality and privilege issues;

(c) took steps to preserve the document and data repositories utilized by the Examiner during the

course of his Investigation; and (d) prepared and negotiated proposed orders to make the Report

publicly available and to terminate the Examiner's appointment.

42.    As reported in the Sixth Interim Fee Application, the Examiner's work during that

period principally related to the preparation and negotiation of the Examiner Discharge Order

and responding to the Fee Committee regarding Jenner & Block's Fourth Interim Fee

Application.  On June 2, the Examiner filed the Examiner's Motion for Order Discharging

Examiner and Grating Related Relief (the "Discharge Motion").  [Docket No. 9361].  On June

16, the Court held a hearing on the Examiner's Discharge Motion.  Thereafter, the Examiner

communicated with the Debtors and other parties-in-interest regarding the form of an order

approving the Examiner's discharge.  Following those communications, an agreed upon form of order was submitted to the Court, and the Court entered the Discharge Order on July 13, 2010.

### A.     Specific Project Matters

43.     As noted above, Exhibit C is a summary by project matter of the fees generated during the Compensation Period.  The following are descriptions of the project matters.  The tasks described therein were all necessary and beneficial to the estate because they were necessary to fulfill the Examiner's duties set forth in the Examiner Order.  The descriptions include a statement of the aggregate number of hours spent and fees charged for each matter after applying the 10% reduction.  The professionals providing services on each project matter are listed on Exhibit C.

### B.     Case Administration

44.     This matter related to work performed in maintaining and updating an internal website (SharePoint) to serve as a depository of documents, correspondence, and information, including calendar, contact, and witness information, for all attorneys and paraprofessionals working on the case.  This matter also included time spent:  (i) preparing declarations in support of the Examiner's appointment and Jenner & Block's retention; (ii) in connection with a weekly paraprofessional coordination meeting; and (iii) winding down the Examiner's Investigation. These tasks were necessary to complete the Investigation in a thorough yet efficient manner.

45.     During the Compensation Period, Jenner & Block expended 1,109.5 hours, at an aggregate charge of $267,686.55, on matters relating to case administration.

### C.     Examiner

46.     This matter included all the Examiner's time spent performing his duties under the Examiner Order and Bankruptcy Code.  The Examiner's activities included:
(i) communicating with various parties-in-interest and agencies of the U.S. Government

16

regarding the Investigation to arrange for cooperation and avoid duplication of effort, among

other things; (ii) reviewing court transcripts and documents regarding background for the

Investigation; (iii) preparing a work plan and budget for the Investigation; (iv) selecting and

coordinating with his financial advisors; (v) conferring with members of his investigatory team

regarding work plans, timelines, findings, and draft sections of the Examiner's Report;

(vi) reviewing and analyzing key documents, interview summaries, and information prepared

and identified by his professionals; (vii) preparing for and interviewing key witnesses;

(viii) finalizing his Report; and (ix) preparing for and attending Court hearings.  These tasks

were necessary to fulfill the Examiner's duties set forth in the Examiner Order.

47.    During the Compensation Period, the Examiner expended 1,342.5 hours, at an

aggregate charge of $1,131,959.25, on matters relating to performing his duties as Examiner and

conducting the Investigation.[16]

### D.    Court Hearings

48.    During the Compensation Period, Jenner & Block expended 78.9 hours, at an

aggregate charge of $47,830.05, attending Court hearings regarding matters related to the

Investigation, including:  (i) Jenner & Block's and Duff & Phelps' retention applications; (ii) the

Examiner's 2004 motion; (iii) the Examiner's work plan; (iv) the Examiner's motions to retain

contract attorneys; (v) fee application and Fee Committee-related matters; (vi) the scope of the

Investigation; (vii) the status of the Investigation and the Examiner's Report; (viii) finalizing and

filing the Report; and (ix) the Examiner's Discharge Order.

---

[16] The Examiner's non-working travel time is not included in this matter, but is billed under "Non-Working Travel Time" so that the 50% reduction could be applied to such time.

### E.    Report Preparation and Drafting

49.    This matter included all time spent by Jenner & Block attorneys and

paraprofessionals drafting sections of the Examiner's Report and working on tasks related to

finalizing the Report, including:  (i) reviewing exemplar examiner reports from other major

bankruptcy cases; (ii) drafting and reviewing outlines for the Report; (iii) drafting specific

sections of the Report that were not specific to one of the investigatory topics, for example, the

introduction, chronology, table of key individuals, glossary, section on government involvement,

bibliography, table of witnesses, and legal appendix; (iv) reviewing and commenting on proof

outlines and sections of the Report to integrate analyses; (v) meeting with team members to

discuss Report integration, Report preparation logistics, and final analyses; (vi) establishing and

implementing drafting protocols, formatting consistency, and naming conventions;

(vii) proofreading and cite-checking final versions of the Report; (viii) indexing, logging, and

bates labeling documents cited in the Report; (ix) creating document logs for tracking

confidentiality issues to address prior to filing the Report publicly; (x) responding to objections

to making the Report publicly available; and (xi) creating a hyperlinked version of the Report

whereby readers could access easily the underlying documents cited in the Report.

50.    During the Compensation Period, Jenner & Block expended 8,675.1 hours, at an

aggregate charge of $3,594,906.00, on matters relating to Report preparation and drafting.

### F.    Governance and Fiduciary Duties

51.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether there are colorable claims for breach of fiduciary duties and/or aiding or
  abetting any such breaches against the officers and directors of LBCC and/or other
  Debtors arising in connection with the financial distress of the Lehman enterprise
  prior to the commencement of the LBHI chapter 11 case on September 15, 2008; and

- The events that occurred from September 4, 2008 through September 15, 2008 or
  prior thereto that may have resulted in commencement of the LBHI chapter 11 case.

18

Examiner Order, ¶ 2 (fifth and tenth bullets).  The Examiner Order also required the Examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise."  Examiner Order, ¶ 3.[17]

52.    During the Compensation Period, attorneys who were assigned to these elements of the Investigation:  (i) developed and regularly updated work plans and sub-topic work plans for investigating whether there were colorable claims for breaches of fiduciary duties and the events leading up to the commencement of the LBHI chapter 11 case; (ii) reviewed and analyzed extensive documents and materials regarding these issues; (iii) identified and interviewed witnesses with information regarding these elements of the Investigation; (iv) worked with the Examiner's financial advisors to conduct necessary analyses and data review; (v) researched relevant case law; and (vi) drafted sections of the Examiner's Report on these issues.

53.    Sub-topics investigated by members of this investigatory team included, *inter alia*, risk management, valuation, residential mortgage origination and securitization, commercial real estate investment and financing, leveraged loans, hedging, liquidity and capital adequacy, compensation, survival strategies, and the use of an accounting device known within Lehman as Repo 105.

54.    Jenner & Block expended 47,354.9 hours, at an aggregate charge of $17,633,834.55, on investigating possible colorable claims with respect to the governance and fiduciary duty elements of the Investigation.

_____

[17] In the detailed time entries submitted by the Examiner and Jenner & Block, use of the term "Team 3" refers to the team assigned to these elements of the Investigation.

G.    **Intercompany Transactions**

55.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether LBCC or any other entity that currently is an LBHI chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI affiliate commenced its chapter 11 case;

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 the day that each LBHI Affiliate commenced its chapter 11 case;

- Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law;

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law; and

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to:  LBI, LBIE, Lehman Brothers Special Finance and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation.

Examiner Order, ¶ 2 (first, second, third, fourth, and seventh bullets).[18]

56.    During the Compensation Period, attorneys who were assigned to these elements of the Investigation:  (i) developed and regularly updated work plans and sub-topic work plans for investigating intercompany transfers, the Debtors' cash management system, and potentially avoidable transfers; (ii) reviewed and analyzed extensive documents and materials regarding these issues; (iii) identified and interviewed witnesses with information regarding these elements of the Investigation; (iv) worked with the Examiner's financial advisors to conduct necessary

---

[18] In the detailed time entries submitted by the Examiner and Jenner & Block, use of the term "Team 2" refers to the team assigned to these elements of the Investigation.

analyses and data review; (v) researched relevant case law; and (vi) drafted sections of the Examiner's Report on these issues.

57.    Members of this investigatory team worked closely with the Examiner's financial advisors to identify the relevant transactions to be investigated, conferred on a regular basis with professionals at Alvarez & Marsal regarding the availability of data necessary to identify and analyze these transactions, developed an understanding of the cash management system and internal accounting procedures, reviewed key financial statements, investigated corporate information regarding the LBHI Affiliates, and analyzed Lehman's solvency by reviewing Lehman's asset composition, liquidity and capitalization, and funding sources, among other things.

58.    Jenner & Block expended 21,345.5 hours, at an aggregate charge of $8,658,500.85, on matters relating to the investigation of intercompany transfers.

### H.    Barclays Transactions

59.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate; and

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

Examiner Order, ¶ 2 (sixth and ninth bullets).[19]

---

[19] In the detailed time entries submitted by the Examiner and Jenner & Block, use of the term "Team 5" refers to the team assigned to these elements of the Investigation.

60.    During the Compensation Period, attorneys who were assigned to these elements

of the Investigation:  (i) developed and regularly updated work plans and sub-topic work plans

for investigating the identified questions set forth in the Examiner Order regarding the Barclays

sale; (ii) reviewed and analyzed extensive documents and materials regarding these issues;

(iii) identified and interviewed witnesses with information regarding these elements of the

Investigation; (iv) worked with the Examiner's financial advisors to conduct necessary analyses

and data review; (v) researched relevant case law; and (vi) drafted sections of the Examiner's

Report on these issues.

61.    Members of this investigatory team investigated the factual predicate of the

Barclays sale to address whether any LBHI Affiliate had a colorable cause of action as a result of

that transaction.  The Investigation included, *inter alia*, an analysis of the assets and liabilities

transferred to Barclays, the circumstances of the sale, available alternatives to the sale, and the

transfer of 25 LBI subsidiaries to Lehman ALI just before LBI filed bankruptcy.

62.    Jenner & Block expended 8,066.1 hours, at an aggregate charge of $3,383,994.60,

on investigations of whether assets of any LBHI Affiliate were transferred to Barclays, whether

the Barclays sale created colorable causes of action that inure to the benefit of the creditors of

such LBHI subsidiary or affiliate, and the facts surrounding the transfer of the capital stock of

certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

## I.    Bank and Other Third Party Transactions

63.    The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities
  for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code
  or otherwise applicable law; and

- The transactions and transfers, including but not limited to the pledging or granting of
  collateral security interest among the debtors and the prechapter 11 lenders and/or

22

financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

Examiner Order, ¶ 2 (fourth and eighth bullets).[20]

64.     During the Compensation Period, attorneys who were assigned to these elements of the Investigation:  (i) developed and regularly updated work plans and sub-topic work plans for investigating bank and third party transactions; (ii) reviewed and analyzed extensive documents and materials regarding these issues; (iii) identified and interviewed witnesses with information regarding these elements of the Investigation; (iv) worked with the Examiner's financial advisors to conduct necessary analyses and data review; (v) researched relevant case law; and (vi) drafted sections of the Examiner's Report on these issues.

65.     Members of this investigatory team worked closely with Alvarez & Marsal to identify the relevant transactions and documents in the Debtors' possession, communicated with other parties' professionals regarding potential claims, and worked with representatives of JPMorgan Chase, Citigroup, the Federal Reserve Bank of New York, and HSBC to obtain relevant documents and to schedule witness interviews.

66.     Jenner & Block expended 14,955.4 hours, at an aggregate charge of $6,140,358.45, on investigations of other third-party transactions.

## J.     General Bankruptcy Matters and Other Research

67.     This matter related to general bankruptcy matters and research in support of the Examiner's Investigation.  Tasks in this matter included:  (i) monitoring the LBHI bankruptcy docket for pleadings and documents relevant to the Investigation; (ii) preparing the Examiner's 2004 motion and analyzing parties' Rule 2004 requests; (iii) analyzing other major examiner

---

[20] In the detailed time entries submitted by the Examiner and Jenner & Block, use of the term "Team 4" refers to the team assigned to these elements of the Investigation.

cases for applicable precedent; (iv) researching applicable attorney-client privilege and work

product rules as they apply to an examiner; (v) tracking adversary proceedings filed in the LBHI

bankruptcy cases; (vi) conducting various legal research related to potential claims investigated

by the Examiner; (vii) filing and serving various documents on behalf of the Examiner, including

the Examiner's Report; and (viii) preparing and filing the Examiner's motion requesting

discharge and other relief.

68.    During the Compensation Period, Jenner & Block expended 1,783.3 hours, at an

aggregate charge of $652,867.20, on such matters.

### K.    Communications and Meetings with Parties-In-Interest

69.    In the Examiner Order, the Court directed the Debtors, the Debtors' affiliates and

subsidiaries, the Creditors' Committee, the SIPA Trustee, and their respective representatives "to

cooperate with the Examiner in conjunction with the performance of any of the Examiner's

duties and the Investigation" and "to coordinate with the Examiner to avoid unnecessary

interference with, or duplication of, the Investigation."  Examiner Order, ¶ 4.  The Court also

ordered the Examiner to "cooperate fully with any governmental agencies" and to "follow a

protocol to be established with the governmental agencies for the sharing of information…."

Examiner Order, ¶ 8.

70.    During the Compensation Period, the Examiner conferred with various parties-in-

interest and remained in close communication with the U.S. Government, the Office of the

United States Trustee, and the SIPA Trustee and his professionals.  The Examiner communicated

and met with personnel from the United States Attorney's Office, the SEC, and Congress, among

others.  The Examiner and his professionals also regularly communicated with the Debtors

regarding cooperation both during and after the filing of the Examiner's Report.  Time entries in

this matter covered communications, meetings, and preparations for meetings with these and other parties.

71.     Jenner & Block expended 1,867.3 hours, at an aggregate charge of $934,476.30, on matters described in this category.

### L.    Non-Working Travel Time

72.     This matter included time entries related to non-working travel time spent by the Examiner and Jenner & Block attorneys to:  (i) participate in meet and confer sessions with various parties-in-interest as directed by the Court; (ii) conduct hundreds of interviews with witnesses and professionals in these cases; (iii) review certain hard copy documents; and (iv) participate in court hearings and meetings with parties-in-interest.

73.     During the Compensation Period, the Examiner and Jenner & Block expended 2,148.1 hours, at an aggregate charge of $1,044,209.25 for non-working traveling time. However, the Examiner and Jenner & Block are voluntarily reducing their bill for these fees by one-half of these fees, $522,104.64, and are seeking compensation only for $522,104.61.[21]

### M.    Document Management and Review

74.     A critical piece of the Examiner's Investigation related to the collection and processing of a vast volume of documents and information that was in the possession of various parties-in-interest.  Time entries in this matter related to the management and review of these documents and information, including conferring with Alvarez & Marsal and the Debtors regarding the available data systems, entering into stipulations with various parties regarding the use of data and documents, technically processing documents for review by attorneys, tracking

---

[21] The amounts reduced are not precisely one-half because of how amounts were rounded in the Examiner's and Jenner & Block's interim fee applications.

documents requested and received, and responding to privilege and claw back requests from

parties.

75.    Jenner & Block utilized two document management systems, Stratify and Case

Logistix, to review and analyze documents produced by the Debtors and by third-parties,

respectively.  As the Investigation unfolded and the Examiner began receiving documents from

various parties, it became clear that additional document reviewers would be necessary.  As

noted above, the Examiner obtained Court approval to retain up to 80 contract attorneys to

perform specific document review.  During the document review process, certain Jenner & Block

attorneys and paraprofessionals interacted with the contract attorneys on a regular basis to

answer questions and assign documents to be reviewed and periodically performed quality

control of the document review and tagging process being conducted by the contract attorneys.

Time associated with the management of the use of contract attorneys is reported in this matter.[22]

76.    This matter also included time spent by Jenner & Block attorneys and

paraprofessionals:  (i) reviewing case background materials prepared by the Examiner and team

leaders to educate new team members on the scope and nature of the Investigation; (ii) preparing

a case chronology to track the timeline of key events; (iii) researching relevant documents from

the public domain; (iv) reviewing documents that relate to more than one of the categories of

topics to be investigated by the Examiner; (v) pulling and logging documents cited in the

Examiner's Report; (vi) drafting sections of the Examiner's Report regarding the document

review and management process; (vii) preparing a document log regarding documents cited in

the Report to produce a publicly available hyperlinked version of the Report and identify any

---

[22] The actual expenses incurred by Jenner & Block for work performed by the contract attorneys are
included in the list of disbursements.

confidentiality issues arising under confidentiality stipulations with third parties; and

(viii) coordinating with the Debtors, Alvarez & Marsal, and Epiq to preserve the document

repositories created and utilized by the Examiner.

77.     During the Compensation Period, Jenner & Block expended 16,256.9 hours, at an

aggregate charge of $4,685,721.30, with respect to document and data management and review.

### N.    Billing and Fee Applications

78.     This matter related to the preparation of monthly fee statements, fee applications,

and responses to the Fee Committee, including redactions to preserve the confidentiality of the

Investigation.  During the Compensation Period, Jenner & Block expended 2,273.9 hours, at an

aggregate charge of $856,838.25, on billing and fee application matters.  Pursuant to discussions

with the Fee Committee, Jenner & Block has agreed to reduce this charge by $353,072.50.  Thus,

this Final Fee Application seeks compensation in the amount of $503,765.75 for billing and fee-

related matters.  This represents 0.98% of the total fees requested in this Final Fee Application.

### O.    Consultations with Financial Advisors

79.     In order to carry out his duties and responsibilities under the Bankruptcy Code

and the Examiner Order, shortly after his appointment, the Examiner determined that he would

need the assistance of a financial advisor who had extensive experience and expertise in complex

accounting and bankruptcy investigations.  After conducting several interviews with potential

candidates, in early February 2009, the Examiner selected Duff & Phelps as his financial advisor,

subject to Court approval.  This matter included time spent by Jenner & Block conferring with

Duff & Phelps professionals regarding:  (i) the scope of the Investigation; (ii) work plans and

draft sections of the Examiner's Report; (iii) documents to request from parties; (iv) witness

interviews; and (v) analyses of key financial issues in the Investigation which cut across multiple

subject matters of the Investigation.

27

80.    During the Compensation Period, Jenner & Block expended 1,128.5 hours, at an aggregate charge of $644,764.50, on matters relating to consultation with Duff & Phelps.[23]

### P.    Witness Interviews

81.    During the course of the Examiner's Investigation, the Examiner and his professionals interviewed over 250 witnesses. Time entries in this matter related to: (i) tracking interviews conducted and information of potential witnesses in the Investigation; (ii) preparing for and conducting witness interviews, to the extent that such entries were not associated with a single investigatory subject matter; (iii) maintaining witness files based on documents identified by the Examiner's professionals; (iv) drafting and reviewing summary interview memoranda; (v) researching and analyzing publicly available information regarding certain witnesses; and (vi) drafting letter requests for interviews of government officials.

82.    During the Compensation Period, Jenner & Block expended 4,397.5 hours, at an aggregate charge of $1,589,923.80, on matters relating to witness interviews.[24]

### Q.    Investigation Planning and Coordination

83.    In appointing the Examiner, the Court expressed a strong interest in ensuring that the Investigation avoided replication of efforts and duplication of services. To the extent that Jenner & Block communicated and met with external parties to achieve this goal, such time was tracked in the matter for communications and meetings with parties-in-interest or, if the communications or meetings relate to a specific element of the Investigation, then to the relevant matter. However, due to the breadth of the Investigation, the number of parties and entities

_____

[23] Where communications with Duff & Phelps professionals related substantially to one of the elements of the Investigation, the time entries were recorded in the project matter to which that element was assigned.

[24] Again, where tasks relating to witness interviews related substantially to one of the elements of the Investigation, the time entries were recorded in the project matter to which that element was assigned.

involved, the volume of documents and data to be reviewed and analyzed, and the time frame for

completing the Investigation, the Examiner and his team at Jenner & Block routinely

communicated and coordinated internally regarding the scope of the Investigation, documents

and data to request, witnesses to interview, research to be conducted which was relevant to

multiple investigatory subject matters, and integration of the Examiner's Report. Accordingly,

time entries for such planning and coordination to avoid the duplication of work and to conduct

an expedient yet thorough investigation were included in this matter. This matter also included

time associated with the development and drafting of a consolidated work plan for the

Investigation.

84.    During the Compensation Period, Jenner & Block expended 2,405.4 hours, at an

aggregate charge of $1,093,031.10, on matters relating to investigation planning and

coordination.

### R.    U.K. Matters

85.    This matter related to issues that arose during the course of the Examiner's

Investigation which involved questions of U.K. law, specifically with respect to Repo 105

transactions engaged in by Lehman Brothers and transactions between Lehman Brothers and

HSBC. Tasks in this matter included communications, document review, and legal analysis by

an attorney at Jenner & Block living in the United Kingdom.

86.    During the Compensation Period, Jenner & Block expended 55.7 hours, at an

aggregate charge of $46,370.25, on matters relating to U.K. law.

### IV.  The Requested Compensation Should Be Allowed

87.    The foregoing professional services performed by the Examiner and Jenner &

Block were necessary and appropriate to the Examiner's administration of his duties in the

above-referenced chapter 11 cases and were in the best interests of the Examiner, the Debtors'

estates, and other parties-in-interest.  Compensation for the foregoing services as requested is

commensurate with the complexity, importance, and nature of the problems, issues, or tasks

involved.  Jenner & Block has taken significant efforts to ensure that the professional services

were performed expeditiously, in an efficient manner, and without duplication of effort.

88.     In preparing this Final Fee Application, the Examiner and Jenner & Block

calculated the amount of time spent by each attorney and paraprofessional in performing actual

and necessary legal services for the Examiner and the Investigation.  That data came directly

from computerized records that are kept for each Jenner & Block client.  Individual time entries

are maintained on written daily logs, personal computer hard drives, or the firm's central

computer network.  All time entries and expenses are uploaded into the billing system, which

then produces draft client billing memoranda and invoices.  Jenner & Block attorneys have

reviewed and edited the draft invoices and billing memoranda for errors prior to their

submission.

89.     The rates used in this Final Fee Application are the customary and usual rates

which the Examiner and Jenner & Block charge clients on matters of this type, subject to the

10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed

because of the significant public interest associated with the Examiner's duties and

responsibilities.  In addition, the disbursements for which the Examiner and Jenner & Block seek

reimbursement are the customary and usual expenses for which the Examiner and Jenner &

Block seek reimbursement from their clients.  Jenner & Block charges 10 cents per page for

duplicating.  Jenner & Block does not charge its clients for facsimiles, domestic and long

distance telephone (other than while traveling), and certain overtime expenses, and takes those

expenses into account in its overhead.  Jenner & Block does not include charges for postage,

messenger services, duplicating and computerized legal research in its overhead because it is

fairer to clients who use less of these services to have these expenses billed separately.

According to its outside auditors these charges fairly approximate the firm's actual costs and do

not result in undue revenue for the firm.  The firm's hourly rates used for this Final Fee

Application do not compensate the firm for such expenses.

90.    Section 331 of the Bankruptcy Code provides for compensation of professionals

and incorporates the substantive standards of section 330 to govern the Court's award of such

compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a professional

employed under section 327 of the Bankruptcy Code "reasonable compensation for actual

necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C.

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be awarded to an
> Examiner, trustee under Chapter 11, or professional person, the court should
> consider the nature, the extent, and the value of such services, taking into account
> all relevant factors, including
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
> of, or beneficial at the time at which the service was
> rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed;
>
> (E)    with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and
> experience in the bankruptcy field; and

31

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

91.    In the instant case, the Examiner and Jenner & Block respectfully submit that the services for which they seek compensation in this Final Fee Application were, at the time rendered, believed to be necessary for and beneficial to the Examiner and the Investigation. The Examiner and Jenner & Block further submit that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided by and to the Examiner.

92.    Jenner & Block advised the Examiner on a regular basis of the fees and expenses incurred by Jenner & Block and provided the Examiner with a statement of Jenner & Block's fees and disbursements prior to the filing of this Final Fee Application. The Examiner has been given the opportunity to review this Final Fee Application and has approved the requested amount.

93.    The services rendered by the Examiner and Jenner & Block were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the interim compensation sought herein for the Compensation Period is warranted.

94.    This Final Fee Application includes citations to the applicable authorities and does not raise any novel issues of law. The Examiner and Jenner & Block reserve the right to file a brief in reply to any objection to this Final Fee Application.

95.    To the extent applicable, the Examiner and Jenner & Block further request that the Court waive for cause shown any Guidelines requirement not met by this Final Fee Application.

96.    No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE the Examiner and Jenner & Block respectfully request:  (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount of $51,271,849.80; (ii) reimbursement for actual and necessary expenses the Examiner and Jenner & Block incurred during the Compensation Period in the amount of $7,906,417.06; and (iii) such other and further relief that the Court deems just.

Dated: March 27, 2012
New York, New York

Respectfully submitted,

By: /s/ *Patrick J. Trostle*
    Patrick J. Trostle

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner