THE O'NEIL GROUP, LLC
4431 P Street, NW
Washington, DC 20007
Telephone: (202) 965-2878
Facsimile: (202) 355-7610

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : | **Case No. 08-13555** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* : | | **(Jointly Administered)** |
| Debtors. | | |
|  | : | |

------------------------------------------------------------ x

**FINAL FEE APPLICATION OF THE O'NEIL GROUP, LLC, AS A TAX SERVICES
PROVIDER TO DEBTORS AND DEBTORS-IN-POSSESSION, LEHMAN BROTHERS
HOLDINGS INC., FOR FINAL ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM
JANUARY 6, 2010 THROUGH AND INCLUDING MARCH 6, 2012**

1

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11.U.S.C. §§ 330 AND 331**

| | |
|---|---|
| **NAME OF APPLICANT:** | The O'Neil Group, LLC |
| **DATE OF RETENTION:** | February 9, 2010, nunc pro tunc to January 6, 2010 |
| **TIME PERIOD:** | January 6, 2010 through and including March 6, 2012 |
| **ROLE IN THE CASE:** | Tax Services Provider to Debtors and Debtors-in-Possession |
| **AMOUNT OF COMPENSATION AND EXPENSE REIMBURSEMENT SOUGHT AS ACTUAL, REASONABLE AND NECESSARY:** | |

Total Fees Requested: $3,147,323.00

Total Expenses Requested: $224,389.18

**PRIOR APPLICATIONS:**

January 31, 2010 – First Interim Application
May 31, 2010 – Second Interim Application
September 30, 2010 – Third Interim Application
January 31, 2011 – Fourth Interim Application
May 31, 2011 – Fifth Interim Application
September 30, 2011 – Sixth Interim Application
March 6, 2012 – Seventh Interim Application

SUMMARY OF FEES AND EXPENSES REQUESTED BY THIS FINAL APPLICATION

| CATEGORY | AMOUNT |
|---|---|
| Total Fees Requested in Interim Fee Applications | $   3,147,323.00 |
| Less: Voluntary Reductions based on guidance provided by Fee Committee | $     (2,090.00) |
| Total Fees Requested in Final Application | $   3,145,233.00 |

| CATEGORY | AMOUNT |
|---|---|
| Total Expenses Requested in Interim Fee Applications | $    224,389.19 |
| Less: Voluntary Reductions based on guidance provided by Fee Committee | $              - |
| Total Expenses Requested in Final Application | $    224,389.19 |

## SUMMARY OF FEES AND EXPENSES REQUESTED, ALLOWED AND PAID

[See Appendix A for Summary by Application Period]

| The O'Neil Group, LLC | | TOTAL FOR ALL PERIODS |
|---|---|---|
| Fees Requested | | $ 3,147,323.00 |
| Fees Allowed | 1 | $ 2,753,481.76 |
| Fees Paid | | $ 2,969,412.96 |
| Fees Unpaid | | $ 177,910.04 |
| *Voluntary Fee Adjustments* | | $ (2,090.00) |
| Fees Unpaid after Voluntary Fee Adjustments | | $ 175,820.04 |
| | | |
| Expenses Requested | | $ 224,389.19 |
| Expenses Allowed | 1 | $ 198,297.47 |
| Expenses Paid | | $ 217,934.24 |
| Expenses Unpaid | | $ 6,454.95 |
| *Voluntary Expense Adjustments* | | $ - |
| Expenses Unpaid after Voluntary Fee Adjustments | | $ 6,454.95 |

## NOTES:

1 The court has not yet approved The O'Neil Group's fees or expenses for the extended Seventh Interim Fee Period - through and including March 6, 2012.

SUMMARY OF TIME RECORDED FROM JANUARY 6, 2010
TO AND INCLUDING MARCH 6, 2012 FOR SERVICES PROVIDED
[See Appendix B for Summary by Application Period]

|  |  | TOTAL FOR ALL PERIODS |  |
|---|---|---|---|
| **Title** | **Professional** | **Hours** | **Fees** |
| Managing Director | Jacqueline O'Neil | 3,729.60 | $ 773,668.50 |
| Tax Director | Barbara Barissi | 3,706.10 | $ 686,899.00 |
| Tax Director | Tim Ruehle | 948.00 | $ 172,584.00 |
| Tax Director | Pauline de Souza Lawrence | 2,423.50 | $ 462,378.50 |
| Tax Manager | Bill Walsh | 1,296.95 | $ 242,982.00 |
| Tax Manager | Dixie Duncan | 2,589.50 | $ 481,772.00 |
| Tax Consultant | Scott Wakerley | 1,323.30 | $ 244,989.00 |
| Tax Consultant | Dennis Harris | 57.30 | $ 10,314.00 |
| Tax Consultant | Other - Unbilled Travel | (204.80) | $ (37,080.00) |
| Tax Analyst | Matthew Barissi | 594.70 | $ 108,816.00 |
| | **TOTAL** | 16,464.15 | $ 3,147,323.00 |

THE O'NEIL GROUP, LLC

4431 P Street, NW
Washington, DC 20007

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------
x

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : | **Case No. 08-13555** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* : | | **(Jointly Administered)** |
| **Debtors.** | : | |
|  | : | |

-------------------------------------------------------------- x

### FINAL FEE APPLICATION OF THE O'NEIL GROUP, LLC FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS TAX SERVICES PROVIDERS TO THE DEBTORS AND DEBTORS-IN-POSSESSION <u>INCURRED FROM JANUARY 6, 2010 TO MARCH 6, 2012</u>

### PRELIMINARY STATEMENT

1.    By this Final Application (the "Final Application"), and pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the O'Neil Group ("O'Neil Group" or the "Firm"), consultants to Lehman Brothers Holdings Inc. ("LBHI") and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "Debtors" ), requests that this Court authorize (a) allowance and payment of compensation for actual and necessary professional services performed by The O'Neil Group in the aggregate amount of $3,145,233.00 during the period commencing January 6, 2010 through and including March 6, 2012 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses in the aggregate amount of 224,318.19 incurred during the Compensation Period.

5

2.      This Court has jurisdiction over this Final Application pursuant to 28 U.S.C. § § 157 and 1334.  Venue is proper under 28 U.S.C. § § 1408 and 1409.

3.      To aid this Court in its review and analysis, the Final Application is set forth in four parts.  Part I provides a brief background of the matter and The O'Neil Group's retention.  Part II provides an overview of the Final Application.  Part III provides a description of the work performed by The O'Neil Group during the compensation period, by category. Finally, Part IV explains why this compensation request should be allowed.

## I.      Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the above captioned debtors and debtors-in-possession (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

4.      On January 25, 2009, the Court entered the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2106(a) Establishing procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [Docket No. 4165]. On April 14, 2009, the Court entered the Fourth Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2106(a) Establishing procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 15997].

5.    On February 8, 2010, the Examiner filed with the Court under seal the Report of Examiner Anton R. Valukas (the "Report"), pursuant to the Court's Order Authorizing the Examiner to File the Examiner's Report Under Seal [Docket No. 7024]. On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report, [Docket no. 7531], and substituted an unredacted version of the Report with the Court under seal pursuant to the Bankruptcy Court's Order dated March 11, 2010 [Docket 7530]. On April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report. [Docket No. 8307].

6.    On March 15, 2010, the Debtors filed the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors. [Docket 7572]. On April 14, 2010, the Debtors filed a revised Joint Chapter 11 Plan [Docket No. 8330] and a Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code. [Docket No. 8332]. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan [Docket No. 14150] and a Disclosure Statement for the First Amended Joint Chapter Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code. [Docket No. 14151]. On June 30, 2011, the Debtors filed their Second Amended Joint Chapter 11 Plan [Docket No. 18204] and a Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code. [Docket No. 18205]. On September 1, 2011, the Debtors filed their Third Amended Joint Chapter 11 Plan [Docket No. 19627] and a Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to

7

Section 1125 of the Bankruptcy Code. [Docket No. 19629]. On September 1, 2011, the Bankruptcy Court entered an amended order [Docket No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing. On September 15, 2011, the Bankruptcy Court entered an order [Docket No. 20016] approving a modification of the Disclosure Statement.

### Jurisdiction

7.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

8.    Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Retention of The O'Neil Group

10.    By an order dated February 9, 2010 (the "Retention Order"), the Court approved the application dated January 27, 2010 filed by the Debtors seeking authorization pursuant to section 327(a) and 328(a) of the Bankruptcy Code *nunc pro tunc* to January 6, 2010 to employ The O'Neil Group as Tax Services Providers (the "Retention Application"). These

matters are more fully described in the Declaration of Jacqueline O'Neil, a managing director of

The O'Neil Group, sworn to January 26, 2010 and in accordance with the terms and conditions

set forth in the agreements between the Debtors and The O'Neil Group, including without

limitations, the provisions described in the engagement letter, dated as of January 26, 2010, as

modified by paragraph 17 of the O'Neil Declaration and engagement letter dated as of December

6, 2010 and the Supplemental Affidavit filed on or about March 24, 2011 in support thereof, and

the engagement letter dated as of January 5, 2012 (the "Engagement Letter").

## II.    Final Application

1.      This Final Application has been prepared in accordance with (a) the

Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New

York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), (b)

the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. §§ 330 and 331 adopted on January 30,

1996 (the "UST Guidelines"), and (c) the Court's Order Pursuant to Sections 105(a) and 331 of

the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals entered on or about June 25,

2009 (the "Interim Compensation Order" and, collectively with the Local Guidelines and the

UST Guidelines, the "Guidelines").

2.      The O'Neil Group has previously requested compensation from the Court

for professional services and reimbursement of expenses in its First Interim Fee Application

filed for the period from January 6, 2010 through and including January 31, 2010, its Second

Interim Fee Application filed for the period from February 1, 2010 through and including May

31, 2010, its Third Interim Fee Application filed for the period from June 1, 2010 through and

including September 30, 2010, its Fourth Interim Fee Application filed for the period from

October 1, 2010 through and including January 31, 2011, its Fifth Interim Fee Application filed

for the period from February 1, 2011 through and including May 31, 2011 and its Sixth Interim

Fee Application filed for the period from June 1, 2011 through and including September 31,

2011. By the January, 2010 application, The O'Neil Group requested allowance in full of

interim compensation for professional services rendered to the Debtors during the

Compensation Period, in the aggregate amount of $7,776, and for reimbursement of actual,

necessary expenses incurred in connection with such services in the aggregate amount of

$1,936.92. During that first Interim Compensation Period, The O'Neil Group expended a total

of 41.7 hours for which compensation was sought. By the May, 2010 application, The O'Neil

Group requested allowance in full of interim compensation for professional services rendered to

the Debtors during the Compensation Period, in the aggregate amount of $278,425.50, and for

reimbursement of actual, necessary expenses incurred in connection with such services in the

aggregate amount of $27,864.26. During that second Interim Compensation Period, The O'Neil

Group expended a total of 1,600.25 hours including 90 hours of unbillable travel for which

compensation is sought. By the September, 2010 application, The O'Neil Group requested

allowance in full of interim compensation for professional services rendered to the Debtors

during the Compensation Period, in the aggregate amount of $886,566.50, and for

reimbursement of actual, necessary expenses incurred in connection with such services in the

aggregate amount of $64,251.10. During that third Interim Compensation Period, The O'Neil

Group expended a total of 4,847.20 hours including 116 hours of unbillable travel for which

compensation was sought. By the January, 2011 application, The O'Neil Group requested

allowance in full of interim compensation for professional services rendered to the Debtors

during the Compensation Period, in the aggregate amount of $396,129.00, and for

reimbursement of actual, necessary expenses incurred in connection with such services in the

aggregate amount of $27,908.00. During that fourth Interim Compensation Period, The O'Neil

Group expended a total of 2,160.20 hours including 72 hours of unbillable travel for which

compensation was sought. By the May 2011 application, The O'Neil Group requested allowance in full of interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $400,611.00, and for reimbursement of actual, necessary expenses incurred in connection with such services in the aggregate amount of $32,988.95. During that fifth Interim Compensation Period, The O'Neil Group expended a total of 2,176.50 hours including 80.8 hours of unbillable travel for which compensation was sought. By the September, 2011 application, The O'Neil Group requested allowance in full of interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $789,460.00, and for reimbursement of actual, necessary expenses incurred in connection with such services in the aggregate amount of $43,862.99. During that sixth Interim Compensation Period, The O'Neil Group expended a total 4,099.8 hours including 90 hours of unbillable travel for which compensation is sought. By the March 6, 2012 application, The O'Neil Group requested allowance in full of interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $388,355.00, and for reimbursement of actual, necessary expenses incurred in connection with such services in the aggregate amount of $25,576.97. During that seventh Interim Compensation Period, The O'Neil Group expended a total 2,073.6 hours including 86.3 hours of unbillable travel for which compensation is sought.

3.    By this Application, The O'Neil Group seeks final allowance in full of reasonable compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $3,145,233.00 and for reimbursement of actual, necessary expenses incurred in connection with such services in the aggregate amount of $224,389.19. During the Compensation Period, The O'Neil Group expended a total 16,999.25 hours including 535.10 hours of unbillable travel for which compensation is sought.

11

4.      In light of analysis provided by the Fee Committee on the sixth interim fee application, The O'Neil Group has voluntarily retroactively reduced its fees for the Application Period. In total, The O'Neil Group has voluntarily retroactively reduced the fees it is requesting by $2,090.

5.      Prior to the filing of this Application, The O'Neil Group sent the Debtors, Weil, Gotshal & Manges LLP, the U.S. Trustee, Godfrey & Kahn (new Fee Committee) and counsel to the Creditors' Committee monthly fee statements setting forth The O'Neil Group's fees for professional services rendered and expenses incurred beginning January 6, 2010 through March 6, 2012. No party objected to any element of any of The O'Neil Group's monthly statements.

6.      Pursuant to the UST Guidelines, annexed to the U.S. Trustee summary section preceding this Application is a schedule setting forth all The O'Neil Group professionals who have performed services in these Chapter 11 cases during the Compensation Period, their title and the total number of hours performed.

7.      During the Compensation Period, The O'Neil Group's hourly billing rates for professionals working on international tax compliance, state and local tax compliance and real estate joint venture review averaged $180 to $190 per hour. The hourly billing rates for foreign tax credit preparation and review of Form 1118 and related matters ranged from $180 to $350 per hour.

8.      Such rates are highly discounted and reasonable based upon customary compensation charged by comparably skilled professionals in comparable non-bankruptcy cases in a competitive national tax advisory services market. Considering the Services that The O'Neil Group provides, and the market prices for The O'Neil Group's services, The O'Neil Group submits that the Fee Structure (including reasonable reimbursements) is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code and fulfills the requirements of

12

Rule 2014-1 of the Local Rules.

9.      Pursuant to the UST Guidelines, annexed hereto as Exhibit C is a summary of the number of hours and amounts billed by The O'Neil Group during the Compensation Period, organized by task. The O'Neil Group maintains computerized records of the time spent by all The O'Neil Group professionals in connection with the Debtors' Chapter 11 cases.

10.     Annexed hereto as Exhibit D is a schedule specifying the categories of actual and necessary expenses for which The O'Neil Group is seeking reimbursement and the total amount for each such expense category.

11.     During the Compensation Period, other than pursuant to the Interim Compensation Order, The O'Neil Group has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. Except as set forth in the O'Neil Declaration, The O'Neil Group has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

12.     The O'Neil Group maintains detailed records of the time spent by all professionals, and the expenses incurred by them, in connection with their responsibilities to the Debtor. The Court is respectfully referred to The O'Neil Group's prior fee applications for the detailed records of all work performed and all expenses incurred during the Compensation Period.

### III.    Summary of Services

1.      The Debtors sought and received the Court's approval to retain The O'Neil Group because The O'Neil Group is a firm specializing in corporate tax compliance and accounting related services in both the ordinary course and crisis management and restructuring environments for public and private companies, and other constituents. Furthermore, The O'Neil Group provided international and state income tax compliance services for the Debtors in 2011

13

and 2010 during the 2010 and 2009 compliance period. As a result, The O'Neil Group has a strong foundation of knowledge and understanding of the Lehman Tax Department systems and processes. The O'Neil Group performed services that were necessary to meet the compliance requirements of various taxing jurisdictions and they provided daily management services for the internal tax department. The O'Neil Group possesses extensive tax expertise useful in these cases, and was selected because of their expertise in providing tax services to debtors and creditors in chapter 11 and other distressed situations.

2.    By the Retention Order, the Debtors received the Court's approval to retain The O'Neil Group as Tax Services Providers to LBHI pursuant to section 327(a) and 328(a)of the Bankruptcy Code, *nunc pro tunc* to the January 6, 2010 to perform certain tax services, all as more fully describes in the Declaration of Jacqueline O'Neil, managing director of The O'Neil Group, sworn January 26, 2010, and in accordance with the terms and conditions set forth in the agreements between the Debtors and The O'Neil Group, including without limitations, the provisions described in the engagement letter, dated as of December 6, 2010, and the Supplemental Affidavit filed on or about March 24, 2011 in support thereof, and the engagement letter dated as of January 5, 2012.

3.    During the Compensation Period, The O'Neil Group personnel assisted the management of Lehman Brothers Holding Incorporated (LBHI) and Alvarez and Marsal (A&M) with the preparation and processing of the 2008, (Amended 2008), 2009, 2010 and 2011 International tax returns, Forms 5471, 8858 and 8865, Form 1118 and the Foreign Tax Credit calculation and various State and Local Corporate Income Tax Returns. The preparation and filing of these forms is required by the Internal Revenue Service and various state tax jurisdictions. The O'Neil Group also assisted LBHI with review of the joint venture real estate partnership tax returns for 2009, 2010 and 2011, including the implementation of an updated review process. And, The O'Neil Group assisted with the preparation of responses required for

14

various Internal Revenue Service Audit requests and other tax compliance matters, as requested.

4.      These professional services included meetings and discussions with the Lehman Tax Management team to discuss the addition and challenges of the General Ledger, Income Tax Software and file management systems, various international tax transactions, foreign tax filings and additional tax compliance strategies. Services provided by The O'Neil Group also included day to day management, supervision and training of the internal tax department – specifically the international tax compliance team. As part of the services provided, The O'Neil Group developed workpaper templates and compliance processes that required training and implementation.  The O'Neil Group provided technical tax training and guidance to the Lehman internal tax staff and interns – in furtherance of an efficient tax compliance process.

5.      The following is a summary of the significant professional services rendered by The O'Neil Group during the Compensation Period. All services provided by The O'Neil Group are classified under Uniform Billing Code 1800 – Tax Services.  This detail task summary is organized in accordance with The O'Neil Group's internal system of project or work codes.

| Task | Description |
|------|-------------|
| 10   | Project Planning |

Project planning including providing communication to Lehman management team with weekly status updates, developing oversight structure of tax project, and developing 2009 updates to workpaper standardization and process.

| 20 | Client Meetings |

Client meetings including attending Tax compliance strategy meetings between Lehman Management and A&M with discussions of process, areas of simplification and areas of continuing difficulties (domestic and international), international transaction briefings and meetings between Lehman Management and The O'Neil Group tax team, weekly status meeting with Lehman management, Lehman interns, new Lehman staff and The O'Neil Group tax team to discuss project status, developing issues, and on-going standardized procedures.

15

30    Review Prior year returns and workpapers

Review prior year returns and workpapers including review of hard copy and soft copy files to obtain transitional knowledge required to complete project and to ensure compliance with Lehman established procedures and processes.

35    SharePoint and File Management

Project oversight and assistance with the update of the new File Management System which is necessary for document protection and deposit and for the purpose of future audit and review processes.

40    Compliance Preparation

Compliance preparation including the preparation of Forms 5471, 8858, and 8865, 1118 and their related workpapers, calculations and required schedules. This includes the set up and upload into the new automated workbooks and reconciliation with the Tax Attribute Schedule and Earnings and Profits workbook. Compliance preparation also includes the preparation of the State and Local income tax returns and related workpapers.

47    Earning and Profits Analysis

Earnings and Profits analysis including review and analysis of entity file, roll-over of prior year data, incorporation of current year data, to allow for a reconciliation of E&P ending balance with Schedule J in return preparation process.    New automated E&P workbook developed and training set for all Lehman tax staff.

48    Foreign Income Analysis

Foreign income analysis including review and analysis of all corporate income reported on Consolidated 1120 US Income Tax Return and determination of Source of Income and classification of all foreign income required to be reported on the Foreign Tax Credit Form 1118 as part of the return preparation process.

49    Foreign Tax Credit Analysis

Preparation of the Foreign Tax Credit Form 1118 including determination of all corporate deductions that are properly allocated to foreign income as reported on the 1118 as part of the return preparation process.    Preparation of the new Schedule K – Foreign Tax Carryover Reconciliation Schedule that is now required as part of the foreign tax credit analysis.  Creation of automated upload schedule for 1118 data as an interface with tax prep software InSource.

50    Compliance Review

Compliance review and analysis of Forms 5471, 8858, and 8865, 1118 and their related workpapers, calculations and required schedules.  Compliance review also

16

includes the review of the State and Local income tax returns and related workpapers and review of the Real Estate Joint Venture Partnership returns.

70    Tax Planning and Research

Other required tax planning and research associated with this project including client requested analysis and necessary planning and research required to more accurately and efficiently complete the engagement.

95    Travel time - Billable

Travel time that is billable as it exceeds the agreed-to unbilled 2 hour commute.

100    Billable time and expense reporting

Time and expense reporting including the fee application preparation services and other time incurred in the execution of this engagement as required by the Bankruptcy Requirements and other Court Obligations.

6.    The foregoing professional services performed by The O'Neil Group were necessary and appropriate to the administration of the Debtors' chapter 11 cases. These services were in the best interests of the Debtors and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. The services were performed in an efficient manner.

7.    The professional services performed by The O'Neil Group on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 16,999.25 (16,464.15 billed) recorded hours by The O'Neil Group's professionals. During the Compensation Period, The O'Neil Group billed the Debtors for time expended by professionals based on a blended hourly rate of between $180.00 and $190.00 per hour for the International and State and Local Tax Compliance engagements and at significantly reduced rates for the 1118 Foreign Tax Credit Engagement as follows:

| Title | Hourly Rate |
|---|---|
| Tax Managing Director | $325-$350 |
| Tax Director | $225-$250 |
| Tax Manager | $180-$190 |
| Tax Associate | $125 |

8.    As set forth in Exhibit D hereto, The O'Neil Group has incurred or disbursed $224,318.19 in expenses in providing professional services to the Debtors during the Compensation Period. These expense amounts are intended to cover direct operating costs, which costs are not incorporated into The O'Neil Group's hourly billing rates.

## IV.    The Requested Compensation and Expense Reimbursement Should be Allowed

1.    Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code reasonable compensation for "actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

18

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

2.      In the instant case, The O'Neil Group respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the orderly administration of the Debtors' estates. The O'Neil group functions as part of the Debtors' internal tax department on a daily basis.  Such services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors. The O'Neil Group further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates and all parties in interest.

3.      In sum, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## Conclusion

WHEREFORE The O'Neil Group respectfully requests (i) an allowance of compensation for professional services rendered during the Compensation Period in the amount of $3,147,323 and reimbursement of actual and necessary expenses The O'Neil Group incurred during the Compensation Period in the amount of $224,389.19; (ii) authorization for the Debtors to pay to The O'Neil Group that portion of the compensation amount not yet paid; and (iii) such other and further relief as is just.

Dated: March 26, 2012
Washington, DC

Jacqueline O'Neil
The O'Neil Group, LLC
4431 P Street, NW

20

## INDEX OF EXHIBITS

| | |
|---|---|
| Certification | Certification of Jacqueline O'Neil |
| Exhibit A | Summary of Fees and Expenses Requested, allowed and Paid by Application Period |
| Exhibit B | Summary of Time Recorded for Services Provided by Application Period |
| Exhibit C | Detail of Services by Uniform Billing Task Code |
| Exhibit D | Actual and Necessary Expense Disbursements Incurred by The O'Neil Group |

**CERTIFICATION**


THE O'NEIL GROUP, LLC
4431 P Street, NW
Washington, DC 20007
Telephone: (202) 965-2878
Facsimile: (202) 355-7610

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                :

**In re**                            :                **Chapter 11**
                                :                **Case No. 08-13555**
                                :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* :        **(Jointly Administered)**
**Debtors.**

                                :

------------------------------------------------------------ x

**CERTIFICATION UNDER UNITED STATES TRUSTEE GUIDELINES IN
RESPECT OF FINAL APPLICATION OF THE O'NEIL GROUP, LLC FOR
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
FOR REIMBURSEMENT OF EXPENSES AS TAX SERVICES
PROVIDERS TO DEBTORS AND DEBTORS-IN-POSSESSION**

I, Jacqueline O'Neil, hereby certify that:

I.       I am a managing director with the applicant firm, The O'Neil Group ("The O'Neil

Group"), and am the professional designated by The O'Neil Group with responsibility for

compliance with the Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the

"Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "UST Guidelines") and the Second Amended Order Pursuant to Sections

22

105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures

for Interim Monthly Compensation and Reimbursement of Expenses of Professionals entered by

the Court on or about June 25, 2009 (the "Interim Compensation Order", and collectively

with the Local Guidelines and UST Guidelines, the "Guidelines") in the chapter 11 cases of

Lehman Brothers Holdings Inc. and its subsidiaries that are debtors and debtors in possession in

these proceedings (collectively, the "Debtors").

     II.     This certification is made in support of The O'Neil Group's final fee application

dated, March 26, 2012 (the "Final Application"), seeking the entry of an order pursuant to

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") granting interim

allowance of compensation for services rendered and reimbursement of expenses incurred for the

period commencing January 6, 2010 through and including March 6, 2012 (the "Compensation

Period"), and directing payment of fees and expenses that were not paid or which were

previously subject to a holdback.

     III.     In respect of section B.1 of the Local Guidelines, I certify that:

         a.     I have read the Application;

         b.     to the best of my knowledge, information and belief formed after

reasonable inquiry, the fees and expense reimbursements sought fall within the

Guidelines;

         c.     the fees and expense reimbursements sought are billed at rates not

exceeding those customarily charged by The O'Neil Group and generally accepted by

The O'Neil Group's clients; and

         d.     in seeking reimbursement of an expense, The O'Neil Group does not

make a profit on that expenditure, whether it is performed in-house or by a third

party.

IV.     In respect of section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that The O'Neil Group has complied with those provisions requiring it to provide Weil, Gotshal & Manges LLP, the Debtors, the Fee Committee, counsel for the statutory committee of unsecured creditors appointed in these cases and the United States Trustee for the Southern District of New York, on a monthly basis, a statement of The O'Neil Group's fees and expenses accrued during the previous month.

V.      Although the Debtors have not reviewed this Application, they have reviewed The O'Neil Group's monthly statements of fees and expenses, to which there have been no objections, and approved the amounts requested.

VI.     In respect of section B.3 of the Local Guidelines, I certify that Weil, Gotshal & Manges LLP, Debtors, the Fee Committee, counsel for the statutory committee of unsecured creditors and the United States Trustee for the Southern District of New York are each being provided with a copy of the Application.

Dated:  March 26, 2012
Washington, DC


_____
Jacqueline O'Neil
The O'Neil Group, LLC
4431 P Street, NW
Washington, DC 20007

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331

THE O'NEIL GROUP, I, THE O'NEIL GROUP, LLC
March 26, 2012 March 26, 2012

## SUMMARY OF FEES AND EXPENSES REQUESTED, ALLOWED AND PAID BY APPLICATION PERIOD

| | First Interim Fee Period January 9, 2010 - January 31, 2010 | Second Interim Fee Period February 1, 2010 - May 31, 2010 | Third Interim Fee Period June 1, 2010 - September 30, 2010 | Fourth Interim Fee Period October 1, 2010 - January 31, 2011 | Fifth Interim Fee Period February 1, 2011 - May 31, 2011 | Sixth Interim Fee Period June 1, 2011 - September 30, 2011 | Seventh Interim Fee Period October 1, 2011 - March 6, 2012 | TOTAL FOR ALL PERIODS |
|---|---|---|---|---|---|---|---|---|
| Fees Requested | $ 7,776.00 | $ 278,425.50 | $ 886,566.50 | $ 396,129.00 | $ 400,611.00 | $ 789,460.00 | $ 388,355.00 | $ 3,147,323.00 |
| Fees Allowed | $ 6,809.76 | $ 275,995.50 | $ 886,566.50 | $ 396,129.00 | $ 400,611.00 | $ 787,370.00 | To Be Determined | $ 2,753,481.76 [1] |
| Fees Paid | $ 6,809.76 | $ 275,995.50 | $ 886,566.50 | $ 396,129.00 | $ 400,611.00 | $ 787,370.00 | $ 215,931.20 | $ 2,969,412.96 |
| Fees Unpaid | $ 966.24 | $ 2,430.00 | $ - | $ - | $ - | $ 2,090.00 | $ 172,423.80 | $ 177,910.04 |
| *Voluntary Fee Adjustments* | | | | | | $ (2,090.00) | | $ (2,090.00) |
| Fees Unpaid after Voluntary Fee Adjustments | $ 966.24 | $ 2,430.00 | $ - | $ - | $ - | $ - | $ 172,423.80 | $ 175,820.04 |
| | | | | | | | | $ 3,145,233.16 |
| | | | | | | | | |
| Expenses Requested | $ 1,936.92 | $ 27,864.26 | $ 64,251.10 | $ 27,908.00 | $ 32,988.95 | $ 43,862.99 | $ 25,576.97 | $ 224,389.19 |
| Expenses Allowed | $ 1,631.92 | $ 27,654.51 | $ 64,251.10 | $ 27,908.00 | $ 32,988.95 | $ 43,862.99 | To Be Determined | $ 198,297.47 [1] |
| Expenses Paid | $ 1,631.92 | $ 27,654.51 | $ 64,251.10 | $ 27,908.00 | $ 32,988.95 | $ 43,862.99 | $ 19,636.77 | $ 217,934.24 |
| Expenses Unpaid | $ 305.00 | $ 209.75 | $ - | $ - | $ - | $ - | $ 5,940.20 | $ 6,454.95 |
| *Voluntary Expense Adjustments* | | | | | | | | |
| Expenses Unpaid after Voluntary Fee Adjustments | $ 305.00 | $ 209.75 | $ - | $ - | $ - | $ - | $ 5,940.20 | $ 6,454.95 |

NOTES:

1   The court has not yet approved The O'Neil Group's fees or expenses for the extended Seventh Interim Fee Period - through and including March 6, 2012.

APPENDIX A

THE O'NEIL GROUP, LLC THE O'NEIL GROUP, LLC
March 26, 2012

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES FILED UNDER 11.U.S.C. §§ 330 AND 331

## SUMMARY OF TIME RECORDED FOR SERVICES PROVIDED BY APPLICATION PERIOD

| Title | Professional | First Interim Fee Period January 9, 2010 - January 31, 2010 | Second Interim Fee Period February 1, 2010 - May 31, 2010 | Third Interim Fee Period June 1, 2010 - September 30, 2010 | Fourth Interim Fee Period October 1, 2010 - January 31, 2011 | Fifth Interim Fee Period February 1, 2011 - May 31, 2011 | Sixth Interim Fee Period June 1, 2011 - September 30, 2011 | Seventh Interim Fee Period October 1, 2011 - March 6, 2012 | TOTAL FOR ALL PERIODS | |
|---|---|---|---|---|---|---|---|---|---|---|
| Managing Director | Jacqueline O'Neil | 17.00 | 510.60 | 929.30 | 510.40 | 381.10 | 777.20 | 604.00 | 3,729.60 | $ 773,668.50 |
| Tax Director | Barbara Barissi | 16.50 | 546.10 | 925.50 | 431.00 | 512.00 | 825.00 | 450.00 | 3,706.10 | $ 686,899.00 |
| Tax Director | Tim Ruehle | 8.20 | 148.10 | 697.40 | 94.30 | - | - | - | 948.00 | $ 172,584.00 |
| Tax Director | Pauline de Souza Lawrence | | 255.00 | 615.00 | 161.00 | 513.40 | 697.50 | 181.60 | 2,423.50 | $ 462,378.50 |
| Tax Manager | Bill Walsh | | 29.35 | 89.80 | 263.80 | 156.30 | 363.80 | 393.90 | 1,296.95 | $ 242,982.00 |
| Tax Manager | Dixie Duncan | | 74.80 | 809.00 | 269.50 | 485.50 | 772.20 | 178.50 | 2,589.50 | $ 481,772.00 |
| Tax Consultant | Scott Wakerley | | 36.30 | 406.90 | 257.50 | 27.70 | 415.60 | 179.30 | 1,323.30 | $ 244,989.00 |
| Tax Consultant | Dennis Harris | | - | 57.30 | - | - | - | - | 57.30 | $ 10,314.00 |
| Tax Consultant | Other – Unbilled Travel | | (90.00) | (116.00) | - | 1.20 | - | - | (204.80) | $ (37,080.00) |
| Tax Analyst | Matthew Barissi | | | 317.00 | 100.70 | 18.50 | 158.50 | - | 594.70 | $ 108,816.50 |
| **TOTAL HOURS** | | 41.70 | 1,510.25 | 4,731.20 | 2,088.20 | 2,095.70 | 4,009.80 | 1,987.30 | 16,464.15 | $ 3,147,323.50 |

APPENDIX B

THE O'NEIL GROUP, LLC
March 26, 2012

**APPENDIX D – ACTUAL AND NECESSARY EXPENSE DISBURSEMENTS INCURRED BY THE O'NEIL GROUP**
FINAL APPLICATION PERIOD JANUARY 6, 2010 THROUGH MARCH 6, 2012

| Detail of Actual and Necessary Expenses by Type | | |
|---|---|---|
| Professional | | Expense |
| Airfare (including baggage fees) | | $ 22,333.50 |
| Hotel/Lodging | | $ 128,719.95 |
| Ground Transportation - Train, Cab, Metro | | $ 24,254.19 |
| Travel Meals & Incidentals - Per Diem | | $ 39,147.91 |
| Meals - Client Attending | | $ 6,825.29 |
| Mileage and Parking | | $ 1,012.39 |
| Postage | | $ 1,892.51 |
| Supplies | | 203.45 |
| Total | | $ 224,389.19 |

THE O'NEIL GROUP, LLC

March 26, 2012

**APPENDIX C - DETAIL OF SERVICES BY UNIFORM BILLING TASK CODE**

| PROFESSIONAL HOURS SUMMARY | | | |
|---|---|---|---|
| Description | Code | Hours | Fees |
| | | | |
| International Tax - 5471 Compliance | 1800 | 10,994.23 | $  2,031,958.00 |
| International Tax - Amended 5471 Compliance | 1800 | 789.40 | $  149,986.00 |
| International Tax - 1118 Compliance | 1800 | 656.80 | $  209,800.00 |
| International Tax - Amended 1118 Compliance | 1800 | 154.10 | $  47,455.00 |
| State and Local Tax Compliance | 1800 | 2308.40 | $  426,995.00 |
| Real Estate Joint Venture Review | 1800 | 1560.00 | $  291,059.00 |
| Travel - Unbillable | | 536.30 | $  - |
| | | | |
| | | | |
| Total | | 16,999.23 | $  3,157,253.00 |

| TOTAL:  International Tax Services | | |
|---|---|---|
| Total Fees | Total Expenses | Total |
| $            3,157,253.00 | $            224,389.19 | $  3,381,642.19 |