> **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE THE PROOF OF CLAIM FILED BY BANQUE LEHMAN BROTHERS S.A.**
>
> **IF YOU HAVE QUESTIONS, PLEASE CONTACT LBHI'S COUNSEL, MAURICE HORWITZ, AT 212-310-8883.**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

--------------------------------------------------------------------x

### NOTICE OF HEARING ON OBJECTION TO CLAIM
### OF BANQUE LEHMAN BROTHERS S.A. (CLAIM NO 17611)

  **PLEASE TAKE NOTICE** that on April 2, 2012, Lehman Brothers Holdings Inc.

("LBHI" and the "Plan Administrator") as Plan Administrator, under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors

(the "Plan") filed its objection to Claim No. 17611 (the "Objection"), and that a hearing (the

"Hearing") to consider the Objection will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, New York, New York 10004, on **May**

**31,2012, at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq. and Maurice Horwitz, Esq.); and (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **May 2, 2012 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection or any claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: April 2, 2012
      New York, New York

                        /s/ Robert J. Lemons
                        Robert J. Lemons
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtors
                        and Debtors in Possession

**HEARING DATE AND TIME: May 31, 2012 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: May 2, 2012 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | **:** | **Chapter 11 Case No.** |
| | **:** | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | **:** | **08-13555 (JMP)** |
| | **:** | |
| **Debtors.** | **:** | **(Jointly Administered)** |

------------------------------------------------------------------x

## OBJECTION TO CLAIM OF
## BANQUE LEHMAN BROTHERS S.A. (CLAIM NO 17611)

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE THE PROOFS OF
CLAIM FILED BY BANQUE LEHMAN BROTHERS S.A.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT
LBHI'S COUNSEL, MAURICE HORWITZ, AT 212-310-8883.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), respectfully represents:

## Relief Requested

1.      The Plan Administrator files this objection (the "Objection") to the claim filed by Banque Lehman Brothers S.A., Claim No. 17611 (the "Claim"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking disallowance and expungement of the Claim, for which the Debtors have no liability.  The Claim was filed against LBHI by Banque Lehman Brothers S.A. ("BLB"), a French subsidiary of LBHI, in connection with a settlement agreement, dated December 3, 2008, attached hereto as Exhibit A (the "Settlement Agreement"), between LBHI, on the one hand, and three of LBHI's French affiliates on the other hand: (i) BLB, (ii) Lehman Brothers Conseil S.A. ("LBC"), and (iii) Lehman Brothers Services S.N.C. ("LBS" and collectively with BLB and LBC, the "Lehman French Companies").  The Settlement Agreement, which was approved pursuant to an order of this Court entered on December 22, 2008 (ECF No. 2351) provides, among other things, that BLB will waive its intercompany receivable from LBHI and any claim filed by BLB in connection with such receivable, except to the extent that BLB, which has been in a voluntary liquidation proceeding in France, does not have sufficient assets (excluding such intercompany receivable and claim) to pay its creditors.

2.      As is demonstrated below, BLB's liquidation was closed on June 10, 2010, and prior thereto, BLB forgave its intercompany receivable from LBHI pursuant to the

terms of the Settlement Agreement.  BLB's liquidator, however, neglected to withdraw the

Claim.  BLB has since been dissolved, and its liquidator discharged of his duties, leaving no

person or entity with the authority to withdraw the Claim.  Under these circumstances, and

consistent with the Settlement Agreement, the Plan Administrator submits that it is necessary and

appropriate, and respectfully requests, that the Claim be disallowed and expunged.

### Jurisdiction

3.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

4.       Commencing on September 15, 2008, and periodically thereafter, LBHI

and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the

Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5.       On July 2, 2009, this Court entered the Bar Date Order.  A copy of the Bar

Date Order was made publicly available at http://www.lehman-docket.com.  Claimants also

received notice of the Bar Date Order by mail.  (*See* Notice of Deadlines for Filing Proofs of

Claim)

6.       On December 6, 2011, the Court approved and entered an order

confirming the Plan.   The Plan became effective on March 6, 2012.  Pursuant to the Plan, the

Plan Administrator is authorized to impose and prosecute objections to claims filed against

LBHI.

### The Claim Should Be Disallowed and Expunged

7.       Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  A proof

of claim is "deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a).  If an

objection refuting at least one of the claim's essential allegations is asserted, the claimant has the

burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389

(Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr.

LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524,

539 (Bankr. S.D.N.Y. 2000).

8.    Prior to the commencement of LBHI's chapter 11 case, BLB, a French

*société anonyme* and a direct subsidiary of LBHI (owned 99.9% by LBHI), operated Lehman's

investment banking advisory business in France, which focused on corporate finance, consisting

primarily of mergers and acquisitions advisory services.  Following the filing of LBHI's chapter

11 case, on September 15, 2008, the French Banking Commission (the "Commission Bancaire")

appointed Mr. Alain Bachelot to act as provisional administrator (the "French Administrator")

for BLB and its subsidiaries.  In that capacity, Mr. Bachelot was given charge over the general

management and administration of BLB and its subsidiaries.  Following his appointment, Mr.

Bachelot proceeded to wind down the affairs of BLB through a solvent liquidation (a "Solvent

Liquidation"), which entails a cooperative and orderly process for negotiating with creditors and

minimizing liabilities.

9.    The Settlement Agreement was critical to the success of the Solvent

Liquidation.  The Settlement Agreement, in general terms, contemplates that (i) LBHI and the

Lehman French Companies shall net their asserted intercompany claims, (ii) BLB shall retain its

net claim against LBHI, which must be filed with this Court and is subject to any objections or

challenges thereto, (iii) BLB shall attempt to satisfy all of its liabilities without collecting on

account of its claim against LBHI, and (iv) BLB shall only be entitled to receive a recovery on its claim against LBHI, subject to a cap, in the event and to the extent that its other assets are insufficient to cover all of its liabilities.  Section 2.2 of the Settlement Agreement provides that if the French Administrator is able to settle all of BLB's liabilities with BLB's other assets, BLB shall irrevocably and definitely forgive the Claim and its underlying receivable.

10.    Pursuant to section 1 of the Settlement Agreement, the French Administrator filed the Claim prior to the Bar Date.

11.    On May 31, 2010, BLB's external auditor issued a report, attached hereto as Exhibit C, stating that BLB's remaining receivable from LBHI has been forgiven by BLB.[1]

12.    Pursuant to the BLB general shareholder meeting of June 10, 2010, the minutes of which are attached hereto as Exhibit D, the Solvent Liquidation of BLB was closed, and the French Administrator's appointment was terminated.

13.    According to BLB's current certificate of incorporation, attached hereto as Exhibit E, BLB was struck off of the Paris commercial register on July 13, 2010, and therefore no longer exists.

14.    Because BLB has ceased to exist and the French Administrator's appointment has been terminated, there is no person or legal entity left that can act on behalf of BLB and withdraw the Claim in furtherance of the implementation of the Settlement Agreement. For the foregoing reasons, the Plan Administrator respectfully requests, therefore, that the Court enter an order disallowing and expunging the Claim in its entirety as contemplated by said agreement.

---

[1]    Exhibits B through E refer to BLB as Lehman Brothers France because pursuant to the BLB general shareholder meeting of December 29, 2009, the minutes of which are attached hereto as Exhibit B, BLB changed its name to Lehman Brothers France S.A.

**Notice**

15.     No trustee has been appointed in these chapter 11 cases.  Notice of the

Objection has been provided to (i) the U.S. Trustee; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; (v) the French Administrator, by his counsel of record; and (vi) all other

parties entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010, governing case management and administrative procedures for these

cases, ECF No. 9635.  The Plan Administrator submits that no other or further notice need be

provided.

16.     No previous request for the relief sought herein has been made by the Plan

Administrator or the Debtors to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.

Dated: April 2, 2012
    New York, New York

                   /s/ Robert J. Lemons
                   Robert J. Lemons
                   WEIL, GOTSHAL & MANGES LLP
                   767 Fifth Avenue
                   New York, New York 10153
                   Telephone: (212) 310-8000
                   Facsimile: (212) 310-8007

Exhibit A

## SETTLEMENT AGREEMENT

This settlement agreement (the **"Agreement"**) is entered into in Paris on this 3rd day of December 2008,

**BETWEEN:**

1.  **Lehman Brothers Holdings Inc.**, a company incorporated under the laws of Delaware USA, currently a debtor in a case under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**) before the United States Bankruptcy Court for the Southern District of New York (the **"Chapter 11 Case"**), duly represented for the purpose hereof (hereafter referred to as **"LBHI"**),

**AND**

2.  **Banque Lehman Brothers S.A.**, a French *société anonyme*, with a share capital of €33,538,784, having its registered office at 7, place d'Iéna, 75116 Paris, and registered with the Trade and Companies Registry of Paris under number 339 449 225, represented by Mr. Alain Bachelot, in his capacity as *Administrateur provisoire* (hereafter referred to as **"BLB"**),

**AND**

3.  **Lehman Brothers Services SNC**, a French *société en nom collectif*, with a share capital of €1,524, having its registered office at 7, place d'Iéna, 75116 Paris and registered with the Trade and Companies Registry of Paris under number 343 763 157, duly represented by its two co-managers (*co-gérants*), BLB represented by Mr. Alain Bachelot, and Lehman Brothers Conseil S.A. represented by Mr. Michele Chu (hereafter referred to as **"LBS"**),

**AND**

4.  **Lehman Brothers Conseil S.A.**, a French société anonyme with a share capital of €76,244, having its registered office at 7, place d'Iéna, 75116 Paris and whose registration number is 377 718 697 RCS Paris, represented by Mr. Michele Chu (hereafter referred to as **"LBC"**),

BLB, LBS and LBC are collectively referred to as the **"Lehman French Companies"**.

LBHI, BLB, LBS and LBC are collectively referred to as the **"Parties"** and individually as a **"Party"**.

**IN THE PRESENCE OF:**

**Mr. Laurent Le Guernevé**, residing at 41 rue du Four, 75006 Paris, acting as *conciliateur* of BLB, LBC and LBS, appointed by the President of the Commercial Court of Paris on 17 November, 2008.

**WHEREAS:**

A.  Following the commencement of the Chapter 11 Case on September 15, 2008, the *Commission Bancaire* appointed on the same day Mr. Alain Bachelot to act as trustee (*administrateur provisoire*) for BLB and who shall be in charge of the general management and administration of BLB.

   After such application of Chapter 11 rules to LBHI, BLB faced a critical cash position as a consequence of a freeze on its cash resources deposited with LBHI and/or affiliates thereof.

   Under Mr. Bachelot's management, BLB overcame its difficulties, and has sought since to make its business and workforce durable.

B.  A Business Sale and Purchase Agreement was entered into on November 17, 2008 between the Lehman French Companies on the one hand, and Banque Nomura France on the other hand, and amended by a letter dated December 2, 2008 (the agreement as amended being referred to as the "BSA"). On a confidential basis, BLB delivered a copy of the executed BSA to LBHI in the framework of the conciliation proceedings decided by the President of the Paris commercial court in favour of BLB and its subsidiaries LBS and LBC and run under the supervision of Mr. Laurent Le Guernevé. The Nomura group had at that time already acquired part of the business of Lehman Brothers International (Europe) in Europe and in particular in the UK for 1 £, as well as the businesses of other LBHI's European subsidiaries on the same conditions.

   BLB did not receive any offer or indication of interest for the acquisition of the BLB business other than the one made by Banque Nomura France.

   The BSA provides for the sale of BLB's business (*fonds de commerce*), which includes mainly some of its work force, to Banque Nomura France for 1 Euro.

   This sale pursuant to the BSA shall be followed by a request of withdrawal of the banking licence to the *CECEI* pursuant to article L 511-16 of the Monetary and Financial Code, thereby allowing for the voluntary liquidation of BLB, as well as the voluntary dissolution of LBS and LBC.

   The above transaction was agreed upon in the framework of the aforementioned conciliation proceedings, and is subject to the "*homologation*" by a court decision.

   Because of the pendency of the Chapter 11 Case, LBHI is not in a position to participate in the financing of the voluntary liquidation of the Lehman French Companies. The Lehman French Companies and Mr. Alain Bachelot, trustee of BLB and future liquidator of the Lehman French Companies, ensured that the Lehman French Companies have sufficient resources to settle their liabilities, with adequate and reasonable efforts from their creditors, without contributions from LBHI, as evidenced

2



by the liquidation budget of the Lehman French Companies that he prepared. Such efforts from creditors must still be negotiated with the creditors in question, to avoid a liquidation by the court. However, on the date hereof, Mr. Bachelot is not aware of any fact or event according to which the creditors would not be willing to make such efforts.

C.  The transfer of BLB's business pursuant to the BSA is conditional upon the receipt by the Lehman French Companies from each of their intra-group creditors (including under the *dette subordonnée*) of an acknowledgment of the full and final settlement or an irrevocable and unconditional waiver, or other contractual arrangements relating to the settlement of all of the intra-group debts.

D.  As of the date hereof:

1)  LBHI asserts that it holds a claim against LBS resulting from the cash pooling arrangement within the Lehman Brothers group, for an amount of € 8,056,444 as of September 12, 2008 (the "**Alleged LBS Receivable**").

2)  LBHI asserts that it holds a claim against BLB resulting from the cash pooling arrangement within the Lehman Brothers group, for an amount of € 41,529,491 as of September 12, 2008 (the "**Alleged BLB Receivable**").

3)  LBHI holds the following intra-group claims against BLB, representing an alleged total amount of € 35,223,590 as of September 12, 2008 (the "**BLB Receivables**"):

-  a claim resulting from the intercompany agreement entered between LBHI and BLB concerning the employee incentive plan of the group, for an alleged amount of € 8,087,665 as of September 12, 2008; and

-  a claim resulting from the subordinated loan agreement entered into on October 19, 1994 between LBHI and BLB, as amended, for an amount of € 27,135,925 as of September 12, 2008.

4)  BLB asserts that it holds a claim against LBHI resulting from the cash pooling arrangement within the Lehman Brothers group, for an amount of € 178,021,639 as of September 12, 2008 (the "**Alleged LBHI Receivable**").

5)  There are no other intra-group claims between LBHI, on the one hand, and any of the Lehman French Companies, on the other hand.

E.  Considering the above and the interest of all the Parties that the transfer of the business of the Lehman French Companies to Banque Nomura France be completed and that the Lehman French Companies go to the contemplated voluntary liquidation proceedings, the Parties agreed to settle their intra-group debts under the terms and conditions of the present Agreement.

3

**IT IS HEREBY AGREED AS FOLLOWS:**

1.    **FORGIVENESS OF RECEIVABLES**

Subject to the terms and conditions of this Agreement, including the conditions precedent and conditions subsequent set out in Articles 4 and 5 below:

(a)    LBHI hereby irrevocably and definitely forgives ("*abandonne*") the Alleged LBS Receivable, representing an amount of € 8,056,444 as of September 12, 2008, and any claim it may have in respect thereof;

(b)    LBHI hereby irrevocably and definitely forgives ("*abandonne*") the Alleged BLB Receivable, representing an amount of € 41,529,491 as of September 12, 2008, and any claim it may have in respect thereof;

(c)    LBHI hereby irrevocably and definitely forgives ("*abandonne*") the BLB Receivables, representing an aggregate amount of € 35,223,590 as of September 12, 2008, and any claim it may have in respect thereof; and

(d)    BLB hereby irrevocably and definitely forgives ("*abandonne*") the Alleged LBHI Receivable up to an amount of € 84,809,525 as well as any interest or penalty due on the Alleged LBHI Receivable since September 12, 2008, and any claim it may have in respect thereof.

LBHI and each of the Lehman French Companies hereby agree that, after the above forgiveness of debts, there are no intra-group claims remaining between LBHI, on the one hand, and each such Lehman French Company, on the other hand, except for the remaining Alleged LBHI Receivable in an aggregate amount not exceeding € 93,212,114 (the **"Remaining Alleged LBHI Receivable"**).

Notwithstanding anything to the contrary, it shall remain BLB's duty to file the Remaining Alleged LBHI Receivable with the United States court exercising jurisdiction over the Chapter 11 Case and, if such receivable is challenged by any party entitled to do so under applicable law, to prove that the Remaining Alleged LBHI Receivable is a valid allowed claim in the Chapter 11 Case, provided that the amount of such receivable shall in any case not exceed € 93,212,114.

2.    **CONDITIONAL UNDERTAKING TO FORGIVE LBHI RECEIVABLE**

Subject to the terms and conditions of this Agreement, including the conditions precedent and conditions subsequent set out in Articles 4 and 5 below:

2.1    During the full duration of the voluntary liquidation proceeding of BLB, the liquidator shall make his best efforts to settle all of BLB's liabilities with all BLB's assets other than the Remaining Alleged LBHI Receivable (the **"Other Assets"**).

2.2    If BLB's liquidator can settle all of BLB's liabilities with the Other Assets in the context of the voluntary liquidation proceeding of BLB, BLB shall irrevocably and

4



definitely forgive (*"abandonner"*) at that date the Remaining Alleged LBHI Receivable and any claim it may have in respect thereof.

2.3    If BLB's liquidator cannot settle all of BLB's liabilities with the Other Assets, BLB shall retain a claim against LBHI on account of the Remaining Alleged LBHI Receivable in the amount that such claim is allowed pursuant to a final order of the United States court exercising jurisdiction over the Chapter 11 Case (or, if the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, the superseding chapter 7 case) or agreement between LBHI and BLB; *provided, however*, BLB agrees to the following conditions (the **"Recovery Limitation"**): (i) any recovery under a plan that may be confirmed or approved in the Chapter 11 Case (or, if the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, the superseding chapter 7 case) in respect of the Remaining Alleged LBHI Receivable shall be no greater than BLB's remaining liabilities, if any, that cannot be settled with BLB's Other Assets (the **"Shortfall"**) and (ii) no payments shall be made in respect of the Remaining Alleged LBHI Receivable until the amount of the Shortfall is finally determined and notified to LBHI in accordance with Article 2.4 below.

2.4    Once the amount of the Shortfall is finally determined, the liquidator shall send a notice to LBHI (the **"Shortfall Notice"**) including (i) the liquidation outcome statement of BLB specifying, *inter alia*, the amount of the Shortfall (if any), and (ii) the supporting documentation, including all settlement agreements and other agreements with BLB's creditors pursuant to which they waive all their claims against BLB except for those reflected in the liquidation outcome statement; *provided, however*, that such supporting documentation shall only serve for information purposes to compute the amount of the Shortfall. LBHI acknowledges that the liquidation operations will be the sole responsibility of BLB's liquidator and LBHI shall not use the supporting documentation referred to in (ii) above to challenge any of its obligations under this Agreement.

2.5    Only upon having sent the Shortfall Notice to LBHI, BLB may sell to any third parties that portion of its rights and interest in the Remaining Alleged LBHI Receivable that will entitle it to receive a consideration that shall not exceed the Shortfall. Following such sale, BLB shall irrevocably and definitely forgive (*"abandonner"*) its rights on the portion of the Remaining Alleged LBHI Receivable retained by it, if any.

2.6    LBHI will benefit from a pre-emptive right on the sale of the Remaining Alleged LBHI Receivable by which LBHI or any person substituted by LBHI will have the right to acquire the portion of the Remaining Alleged LBHI Receivable which is intended to be sold to a third party under the same terms and conditions offered by such third party.

       In order for LBHI to exercise such pre-emptive right, BLB will send a written notice to LBHI to inform LBHI of its decision to sell the Remaining Alleged LBHI Receivable with a copy of the third party binding, irrevocable and unconditional offer (except upon the pre-emptive right mentioned hereafter) (the **"Transfer Notice"**).

LBHI shall be entitled to exercise its pre-emptive right within nine (9) business days from the date of receipt of the Transfer Notice by sending a written notice of acceptance to BLB which shall be unconditional and irrevocable.

If LBHI declines (either expressly or tacitly by not answering to BLB's notice within the abovementioned nine (9) business day period) to purchase the Remaining Alleged LBHI Receivable, BLB shall be free to sell its rights and interest in the Remaining Alleged LBHI Receivable to the third party identified in the Transfer Notice, at the terms and conditions set out in the Transfer Notice, during a period of nine (9) business days following the date on which LBHI will have declined or will have been deemed to decline to purchase Remaining Alleged LBHI Receivable.

In case BLB does not complete such sale within the abovementioned ten-day period, BLB shall restart the whole procedure set out in this Article 2.5 to sell its rights and interest in the Remaining Alleged LBHI Receivable.

2.7     Notwithstanding the foregoing, until the date on which the Support Letter (as this term is defined below) becomes void (*caduc*) for any reason whatsoever (including a waiver by the Banque de France) and may no longer be exercised by the Banque de France or the Commission Bancaire, as the case may be, BLB shall not be allowed to assign the Remaining Alleged LBHI Receivable or to receive any amount pursuant to such receivable under any plan that may be confirmed or approved in the Chapter 11 Case (or, if the Chapter 11 Case is converted to a case under Chapter 7 of the Bankruptcy Code, the superseding chapter 7 case); provided, in any case, that any amount unduly received shall be forthwith remitted to LBHI. In addition, BLB shall waive any right or claim it may have in connection with the Remaining Alleged LBHI Receivable if the Banque de France or the Commission Bancaire, as the case may be, exercises its rights under the Support Letter.

## 3.     TERMINATION OF THE SUPPORT LETTER ISSUED BY LBHI

BLB hereby agrees that it will make its best efforts, in the context of its voluntary liquidation and of the withdrawal of its banking licence (*agrément*) by the French *Comité des établissements de crédit et des entreprises d'investissement*, to obtain from the Banque de France or the Commission Bancaire, as the case may be, the formal termination of the support letter (*lettre de confort*) issued by LBHI in relation to BLB on 15 June 1994 (the "**Support Letter**"), with no residual claim, right or recourse whatsoever against LBHI as from the effective date of the withdrawal of BLB's banking licence.

In addition, BLB hereby waives any past, actual or future right or claim it may have against LBHI in relation to such Support Letter, if any. BLB's waiver is without prejudice of the rights that the Banque de France or the Commission Bancaire, as the case may be, may have pursuant to the Support Letter until the termination thereof.

Notwithstanding anything to the contrary, nothing in this Agreement shall be construed as an acknowledgment by LBHI of any liability whatsoever in connection with the Support Letter.

6

## 4.    CONDITIONS PRECEDENT AND CONDITION SUBSEQUENT

**4.1**    Conditions precedent

The respective rights and obligations of each of the Parties hereto pursuant to this Agreement are subject to the satisfaction of each of the following conditions:

(i)    the prior approval on or prior to December 23rd, 2008 by the United States court exercising jurisdiction over the Chapter 11 Case of (a) the vote in the shareholders' meeting of BLB in favor of the transactions contemplated by the BSA, (b) the terms and conditions of this Agreement, and (c) the vote in the shareholders' meeting of BLB in favor of the voluntary liquidation of BLB;

(ii)    the prior approval on or prior to January 20th, 2009 of the sale of BLB's business (*fonds de commerce*) by BLB's relevant corporate bodies substantially in the form of the report to the shareholders and draft resolutions of the shareholders' meeting of BLB attached as <u>Schedule 1</u> ;

(iii)    this Agreement being formally approved (*homologation*) by the Commercial Court of Paris in conciliation proceedings pursuant to Article L. 611-8-11 of the French Commercial Code (*Code de commerce*) on or prior to January 20th, 2009.

**4.2**    Conditions subsequent (*conditions résolutoires*)

The respective rights and obligations of each of the Parties pursuant to this Agreement shall become null and void if:

(i)    LBHI does not vote the voluntary dissolution of BLB at the general meeting of the shareholders of BLB on or prior to June 30th, 2009 substantially in the form of the report to the shareholders and draft resolutions of the shareholders' meeting of BLB attached as <u>Schedule 1</u> ; provided however that LBHI shall vote the voluntary dissolution of BLB on the basis of the report to the shareholders and draft resolutions of the shareholders' meeting of BLB attached as <u>Schedule 1</u> provided that the liquidation budget attached to the report to the shareholders is in line in all material respect with the liquidation budget delivered to LBHI at the date hereof ;

(ii)    the chairman in office of BLB does not vote the voluntary dissolution of BLB at the general meeting of the shareholders of BLB on or prior to June 30th, 2009 substantially in the form of the report to the shareholders and draft minutes of the shareholders' meeting of BLB attached as <u>Schedule 1</u> ; provided however that the chairman in office of BLB shall vote the voluntary dissolution of BLB on the basis of the report to the shareholders and draft resolutions of the shareholders' meeting of BLB attached as <u>Schedule 1</u> provided that the liquidation budget attached to the report to the shareholders is in line in all material respect with the liquidation budget delivered to LBHI at the date hereof ;

(iii) the shareholders of LBS and LBC do not vote the voluntary dissolution of LBS and LBC at the general meetings of such entities on or prior to June 30th, 2009; provided however that the shareholders of LBS and LBC shall vote the voluntary dissolution of LBS and LBC provided that the liquidation budget attached to the report to the shareholders of BLB is in line in all material respect with the liquidation budget delivered to LBHI at the date hereof;

(iv) the withdrawal of the banking licence (*agrément*) of BLB by the French *Comité des Etablissements de crédit et des entreprises d'investissement* has not become effective on or prior to June 30th, 2009, or if the Banque de France or the Commission Bancaire, as the case may be, exercised its rights under the Support Letter prior to the date on which such withdrawal has become effective;

(v) the formal approval (*homologation*) of this Agreement by the Commercial Court of Paris having not become final within ten (10) days of the publication in the BODACC of such formal approval.

Condition subsequent (i) is only in favour of BLB and may be waived by BLB.

Conditions subsequent (ii) and (iv) are only in favour of LBHI and may be waived by LBHI alone.

5.   **INDIVISIBILITY ("*INDIVISIBILITÉ*")**

As an additional condition subsequent (*condition résolutoire*), it is hereby agreed that the sale of BLB's business (*fonds de commerce*) under the conditions set forth in the BSA and the provisions of this Agreement shall be indivisible ("*indivisibles*"). As a result, the respective rights and obligations of the Parties under this Agreement shall become null and void in the event that the closing of the sale of BLB's business does not occur on or prior to January 20th, 2008.

As a consequence of the above-mentioned indivisibility (*indivisibilité*), the BSA may not be amended without LBHI's prior written approval.

6.   **REPRESENTATIONS AND WARRANTIES**

BLB hereby represents and warrants as follows:

(i) BLB is not currently a party to any contract with a client, all of such contracts being entered into by Lehman Brothers Europe Limited or LB Bankhaus in accordance with the profit contribution split agreement; and

(ii) except for a €8,853,773.04 claim of Lehman Brothers International (Europe) against BLB and except as disclosed in Schedule 2, the Lehman French Companies do not have any intra-group debts *vis-à-vis* any entity of the Lehman Group. For the purpose of this Agreement, the "**Lehman Group**" shall mean LBHI and its direct and indirect subsidiaries, other than the Lehman French Companies, as of September 12, 2008.

8

## 7.    MISCELLANEOUS PROVISIONS

7.1    The Parties undertake to make the required book entries relating to the operations provided for in Article 1 of this Agreement so as to allow their respective financial statements to accurately reflect the provisions of this Agreement.

7.2    This Agreement is strictly confidential and, except as required by law, by court order, by an authority or for the purpose of fulfilling the conditions precedents and the conditions subsequent set out in Article 4 of this Agreement or the conditions precedent and the condition subsequent set out in Article 4 of the BSA or to allow BLB to sell the Remaining Alleged LBHI Receivable, there shall be no disclosure of any information concerning this Agreement (including its existence and the provisions thereof) without the prior written consent of all Parties hereto. The form and the contents of any disclosure shall be subject to the prior approval of all Parties hereto. Notwithstanding anything to the contrary in this Agreement, all Parties acknowledge that LBHI may disclose the Agreement and any information concerning this Agreement (including the contents of the BSA) to the United States court exercising jurisdiction over the Chapter 11 case and/or the committee of creditors appointed in the Chapter 11 Case and that LBHI may file the Agreement and any information concerning this Agreement (including the contents of the BSA) in the Chapter 11 Case in connection with seeking court approval of the Agreement, thereby making them publicly available.

7.3    All communications, notices and disclosures required or permitted by this Agreement shall be in writing and shall be given by hand delivery, by prepaid registered or certified mail (with return receipt requested), by an established overnight courier providing proof of delivery or by facsimile, addressed to the address mentioned in the heading of this Agreement, unless and until any Party notifies the other Party in accordance with this Article 7.3 of a change of address.

7.4    Any notification under this Agreement shall be deemed made on the date of its receipt.

7.5    This Agreement constitutes the entire agreement and understanding between the Parties with respect to its subject matter and replaces and supersedes all prior agreements, arrangements, undertakings or statements regarding such subject matter.

7.6    No variation of this Agreement shall be effective unless made in writing and signed by the Parties.

7.7    If part of this Agreement is or becomes invalid or non-binding, the Parties shall remain bound to the remaining part. The relevant Parties shall in that event replace the invalid or non-binding part by provisions which are valid and binding and the effect of which, given the contents and purpose of this Agreement, is to the greatest extent possible similar to the invalid or non-binding part.

**8.    GOVERNING LAW AND DISPUTE RESOLUTION**

8.1    This Agreement shall be governed by French law.

8.2    Any proceedings concerning the existence, validity, interpretation or execution of this Agreement shall be subject to the exclusive jurisdiction of the Commercial Court of Paris.

**9.    EFFECT**

This Agreement is entered into with accordance with article 2044 *and sub.* of the French Civil Code, and definitively settles any ongoing or future dispute relating to the intra-group receivables between LBHI and/or its subsidiaries, on the one hand, and the Lehman French Companies, on the other hand, and more generally definitively settles any ongoing or future claims (*réclamations*) that the Lehman French Companies may have against LBHI and/or its subsidiaries and/or any claims LBHI may have against the Lehman French Companies save LBHI's right to any *boni de liquidation*, and entails the waiver of all rights, complaints and assertions in this respect. Pursuant to article 2052 of the Civil Code, this Agreement shall have the effect of a final and binding judgment, which may not be subject to an appeal.

Subject to each Party's compliance with its obligations hereunder, the Parties undertake not to challenge any of the provisions of this compromise agreement based on any reason whatsoever for legal or factual errors.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement in five (5) original copies.

**Lehman Brothers Holdings Inc.**                    **Lehman Brothers Conseil**

Name:  CARLES THOMA                    Name: Mr. Michele Chu
Title:                                                 Title: Directeur general délégué

**Lehman Brothers Services SNC**                    **Banque Lehman Brothers S.A.**

Name: Mr. Alain Bachelot                    Name: Mr. Alain Bachelot

10

Title: *Administrateur provisoire* of BLB        Title: *Administrateur provisoire*

Name: Mr. Michele Chu

Title: *Directeur général délégué* of
      Lehman Brothers Conseil S.A.

In the presence of the *conciliateur*, Mr. Laurent Le Guernevé or any other individual jointly approved by the Parties.

Mr. Laurent Le Guernevé, *conciliateur*

11

**Schedule 1**
**Reports and draft resolutions of the shareholders' meetings of BLB**
**(sale of the business and dissolution)**

**Banque Lehman Brothers**

**Société anonyme au capital de 33.538.784 Euros**

**Siège social : 7 place d'Iéna - 75116 Paris**

**339 449 225 R.C.S. Paris**

## RAPPORT DE L'ADMINISTRATEUR PROVISOIRE

## A L'ASSEMBLEE GENERALE EXTRAORDINAIRE

## EN DATE DU [ ● ] 2008

Messieurs,

Nous vous avons réunis en Assemblée Générale Extraordinaire à l'effet de vous demander de bien vouloir vous prononcer sur un projet de dissolution anticipée de la Banque Lehman Brothers (ci-après la "**Société**" ou "**BLB**").

### DISSOLUTION ANTICIPEE DE LA SOCIETE

A la suite des difficultés rencontrées par Lehman Brothers Holdings Inc. (ci-après "**LBHI**"), société mère de BLB, ayant abouti à sa mise en « *Chapter 11* » le 15 septembre 2008, la Commission Bancaire nous a désigné le même jour en qualité d'administrateur provisoire de BLB, avec mission d'exercer tous les pouvoirs de gestion et de direction.

BLB a été confrontée à une situation de trésorerie très tendue, du fait du gel, par application des règles du « *Chapter 11* », de sa trésorerie déposée auprès des différentes entités du groupe Lehman Brothers.

BLB a, sous notre égide, surmonté ces difficultés et tenté de trouver une solution permettant d'assurer la pérennité de ses activités et d'un maximum de ses emplois.

La banque Lazard a été mandatée par LBHI et un appel d'offre concurrentiel a été lancé afin de trouver un acquéreur pour le fonds de commerce de BLB et/ou les actions de BLB.

Un accord intitulé *business sale and purchase agreement* (le "**BSA**")est intervenu le 17 novembre 2008 avec le groupe Nomura, qui avait déjà acquis certaines activités de Lehman Brothers International (Europe) (ci-après "**LBIE**") en Europe et en particulier en Grande Bretagne pour  1 £, et les activités d'autres filiales européennes dans les mêmes conditions et qui a été le seul à faire un offre.

WS0101.5778318.2
PA1:\1764400203S54021.DOC\S8399.0003 WS0101.5889442.3

2.

BLB n'a pas reçu d'offre ou indication d'intérêt pour l'acquisition du fonds de commerce de BLB et/ou des actions de BLB autre que celle de Nomura.

L'accord conclu avec Nomura organise la vente pour un euro du fonds de commerce de BLB à Banque Nomura France, incluant principalement le transfert d'un certain nombre d'emplois sous certaines conditions suspensives. Il porte sur l'activité de conseil de banque d'investissement du groupe Lehman Brothers en France, comprenant fusions et acquisitions et opérations de conseil (ci-après "**IBD Business**"), sur une partie des activités support ainsi que sur la cession de certains actifs liés à *l'Equities Business* détenus par Lehman Brothers Services ("**LBS**").

Les transactions suivantes relatives au règlement des dettes et créances intra-groupes ont également été conclues :

-   aux termes d'un accord intitulé *settlement agreement*, BLB d'une part et LBHI d'autre part ont mutuellement abandonné les créances pour les montants mentionnés dans le *settlement agreement*. BLB pourra faire valoir sa créance résiduelle sur LBHI dans les conditions du *settlement agreement*. BLB pourra également, sous certaines conditions, vendre cette créance résiduelle sur LBHI à un tiers sous réserve de l'exercice d'un droit de préemption par LBHI.

-   Un protocole transactionnel a été conclu le 24 octobre 2008 entre BLB et LBIE. A l'issue de ce protocole et du paiement effectué par BLB, LBIE ne détient plus sur BLB qu'une créance de 8.853.773,04 € subordonnée au paiement des autres créanciers dans le cas où la liquidation amiable laisserait apparaître un actif. .

A l'exception de l'accord intervenu avec LBIE, les opérations ci-dessus ont été conclues dans le cadre d'une conciliation ouverte par Monsieur le Président du Tribunal de commerce de Paris au bénéfice de BLB et de ses filiales, homologuée par jugement du [ ● ].

Compte tenu de la cession du fonds de commerce de BLB, et en plein accord avec les autorités bancaires et judiciaires françaises, nous vous appelons à voter la dissolution anticipée de BLB, à ouvrir sa liquidation amiable et à demander à la Commission Bancaire de nous désigner en qualité de liquidateur bancaire.

L'actionnaire principal de BLB, LBHI, est actuellement soumis aux contraintes d'une procédure de Chapter 11, et n'est pas actuellement en mesure de contribuer au financement de cette liquidation amiable. Par conséquent, nous nous sommes assurés avec BLB, sur la base d'un budget liquidatif prévisionnel de BLB et de ses filiales dont une copie figure en annexe au présent rapport, en notre qualité d'administrateur provisoire et futur liquidateur bancaire de BLB, que BLB disposerait des ressources permettant d'apurer son passif, sans contribution de LBHI et moyennant des efforts équilibrés et raisonnables consentis par ses créanciers et restant à négocier avec ces derniers, le tout afin d'éviter l'ouverture d'une liquidation judiciaire de BLB.

Le retrait d'agrément de BLB par le CECEI a été demandé postérieurement à la cession du fonds de commerce de BLB. Conformément à la pratique de l'article L 511-16 du Code Monétaire et Financier, [cette demande] de retrait d'agrément est une condition préalable à la dissolution et liquidation bancaire de BLB.





3.

Nous vous suggérons en conséquence de procéder à la dissolution anticipée de la Société.

**NOMINATION D'UN LIQUIDATEUR BANCAIRE**

Nous vous précisons que, du fait de cette dissolution anticipée, il serait mis fin au mode de gestion actuel de la Société, les mandats des administrateurs, du Président du Conseil d'Administration, du Directeur Général et du Directeur Général Délégué prenant fin.

En conséquence, nous vous proposons, sous cette même condition et avec l'approbation de la Commission Bancaire de la Banque de France, de nous désigner aux fonctions de Liquidateur bancaire de la société dissoute jusqu'au [ ● ], lesdites fonctions de Liquidateur bancaire pouvant être renouvelées, une ou plusieurs fois, dans l'hypothèse où des opérations de liquidation seraient toujours en cours à l'expiration de la période considérée, étant entendu que la clôture de liquidation de la Société avant cette date mettrait fin de façon anticipée au mandat du Liquidateur.

Nous disposerions en notre qualité de Liquidateur bancaire et à compter de notre nomination effective de tous les pouvoirs pour procéder aux opérations de liquidation en se conformant aux dispositions impératives de la Loi prévues aux articles L 237-2 à L 237-13 et R 237-1 à R 237-9 du Code de Commerce, concernant notamment la cession ou transmission des éléments d'actifs, l'approbation des comptes définitifs de liquidation et la clôture des opérations de liquidation.

Nous vous proposons par ailleurs de mettre fin aux mandats des Commissaires aux comptes titulaire et suppléant à compter de la date de dissolution effective.

[procédure exacte à valider avec la Banque de France]

Si ces propositions vous agréent, nous vous demandons de bien vouloir les consacrer par le vote des résolutions que nous allons vous soumettre.

**L'Administrateur Provisoire**

4.

**Annexe**
**Budget liquidatif de BLB et ses filiales**



**Banque Lehman Brothers**

**Société anonyme au capital de 33.538.784 Euros**

**Siège social : 7 place d'Iéna - 75116 Paris**

**339 449 225 R.C.S. Paris**

## PROJET DE RESOLUTIONS

## DE L'ASSEMBLEE GENERALE EXTRAORDINAIRE

## EN DATE DU [●] 2008

**PREMIERE RESOLUTION**

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire, décide la dissolution de la Société.

Conformément à la Loi, la Société subsistera pour les besoins de la liquidation jusqu'à la clôture de celle-ci.

Durant ce temps :

- la dénomination sociale sera suivie de la mention :
  **"Banque en liquidation"**,

- le siège de la liquidation restera fixé au siège social.

A la clôture des opérations afférentes à la liquidation bancaire de la Société, notamment après recouvrement des créances et règlement des dettes, le solde positif sera le cas échéant attribué aux actionnaires par décision de l'assemblée générale ordinaire des actionnaires.

**DEUXIEME RESOLUTION**

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire, (i) prend acte de la fin des mandats des administrateurs, du Président du Conseil d'Administration, du Directeur Général et du Directeur Général Délégué et (ii), avec l'approbation de la Commission Bancaire de la Banque de France, désigne Monsieur Alain Bachelot, Liquidateur bancaire de la société dissoute jusqu'au [●], les fonctions du Liquidateur bancaire pouvant

WS0101.5778123.2
PA1:\176449\02\3S5D02I.DOC\58399.0003 WS0101.5889434.1

2.

être renouvelées, une ou plusieurs fois, dans l'hypothèse où des instances seraient toujours en cours à l'expiration de la période considérée, étant entendu que la clôture de liquidation de la Société avant cette date mettrait fin de façon anticipée au mandat du Liquidateur bancaire.

L'Assemblée Générale confère au Liquidateur bancaire à compter de sa nomination effective tous pouvoirs pour procéder aux opérations de liquidation en se conformant aux dispositions impératives de la Loi prévues aux articles L 237-2 à L 237-13 et R 237-1 à R 237-9 du Code de Commerce, concernant notamment la cession ou transmission des éléments d'actifs, l'approbation des comptes définitifs de liquidation et la clôture des opérations de liquidation.

3.

Elle lui confère à compter de sa nomination effective les pouvoirs suivants qui sont énonciatifs et non limitatifs :

- Représenter la Société dans tous ses droits et actions.

- Continuer pendant la période de liquidation les affaires en cours.

- Vendre, soit de gré à gré, soit aux enchères publiques, selon qu'il avisera, sans aucune formalité de justice, en bloc ou en détail, aux prix, charges et conditions qu'il jugera convenables, les divers éléments composant l'actif de la Société.

- Céder ou résilier tous baux et locations, tous traités ou marchés, avec ou sans indemnité.

  Toutefois, sauf consentement unanime des actionnaires, la cession de tout ou partie de l'actif à une personne ayant eu la qualité d'Administrateur, de Directeur Général ou de Commissaire aux comptes, ne pourra avoir lieu, sauf accord unanime des actionnaires, qu'avec l'autorisation du Tribunal de Commerce, le Liquidateur et entendu.

  Il ne pourra, d'autre part, céder tout ou partie de l'actif à lui-même ou ses employés, leur conjoint, ascendants ou descendants.

  Enfin, la cession globale de l'actif de la Société ou l'apport de l'actif à une autre société, notamment par voie de fusion, ne pourra être consentie sans l'autorisation de l'Assemblée Générale Extraordinaire des actionnaires.

- Recevoir toutes sommes dues à la Société, payer toutes dettes sociales, faire tous dépôts, se faire ouvrir tous comptes, signer, endosser, accepter tous chèques et effets de commerce, régler et arrêter tous comptes.

- Exercer toutes poursuites et actions judiciaires, tant en demandant qu'en défendant, devant tous degrés de juridiction, et représenter la Société dans toutes les opérations de liquidation de biens ou règlements judiciaires.

- En tout état de cause, traiter, transiger, compromettre, donner toutes mainlevées et tous désistements, avec ou sans paiement, et consentir toutes subrogations avec ou sans garantie.

- Aux effets ci-dessus, passer et signer tous actes, constituer tous mandataires tant généraux que spéciaux, pour la gestion des affaires de la liquidation et pour toutes les opérations de celle-ci ; remplir toutes formalités et, généralement, faire tout ce qui sera nécessaire sans aucune restriction, pour la réalisation de l'actif, le règlement du passif et la liquidation complète et définitive de la Société.

La rémunération du liquidateur bancaire a été fixée par la Commission bancaire à [ ● ]


**TROISIEME RESOLUTION**

4.

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire, décide de mettre fin aux mandats des Commissaires aux comptes titulaire et suppléant.

**QUATRIEME RESOLUTION**

L'Assemblée Générale confère tous pouvoirs au porteur d'un original, d'une copie ou d'un extrait du présent procès-verbal à l'effet de procéder à toutes les formalités prescrites par la loi.



**Banque Lehman Brothers**

**Société anonyme au capital de 33.538.784 Euros**

**Siège social : 7 place d'Iéna - 75116 Paris**

**339 449 225 R.C.S. Paris**

## RAPPORT DE L'ADMINISTRATEUR PROVISOIRE

## A L'ASSEMBLEE GENERALE EXTRAORDINAIRE

## EN DATE DU [ ● ] 2008

Messieurs,

Nous vous avons réunis en Assemblée Générale Extraordinaire à l'effet de vous demander de bien vouloir autoriser une cession de fonds de commerce de la Banque Lehman Brothers (ci-après la "**Société**" ou "**BLB**").

A la suite des difficultés rencontrées par Lehman Brothers Holdings Inc. (ci-après "**LBHI**"), société mère de BLB, ayant abouti à sa mise en « *Chapter 11* » le 15 septembre 2008, la Commission Bancaire nous a désigné le même jour en qualité d'administrateur provisoire de BLB, avec mission d'exercer tous les pouvoirs de gestion et de direction.

BLB a été confrontée à une situation de trésorerie très tendue, du fait du gel, par application des règles du « *Chapter 11* », de sa trésorerie déposée auprès des différentes entités du groupe Lehman Brothers.

BLB a, sous notre égide, surmonté ces difficultés et tenté de trouver une solution permettant d'assurer la pérennité de ses activités et d'un maximum de ses emplois.

La banque Lazard a été mandatée par LBHI et un appel d'offre concurrentiel a été lancé afin de trouver un acquéreur pour le fonds de commerce de BLB et/ou les actions de BLB.

Un accord intitulé *business sale and purchase agreement* (le "**BSA**") est intervenu le 17 novembre 2008 avec le groupe Nomura, qui avait déjà acquis certaines activités de Lehman Brothers International (Europe) (ci-après "**LBIE**") en Europe et en particulier en Grande Bretagne pour 1 £, et les activités d'autres filiales européennes dans les mêmes conditions et qui a été le seul à faire un offre.

BLB n'a pas reçu d'offre ou indication d'intérêt pour l'acquisition du fonds de commerce de BLB et/ou des actions de BLB autre que celle de Nomura.

2.

L'accord conclu avec Nomura organise la vente pour un euro du fonds de commerce de BLB à Banque Nomura France, incluant principalement le transfert d'un certain nombre d'emplois sous certaines conditions suspensives. Il porte sur l'activité de conseil de banque d'investissement du groupe Lehman Brothers en France, comprenant fusions et acquisitions et opérations de conseil (ci-après **"IBD Business"**), sur une partie de l'activité support ainsi que sur la cession de certains actifs liés à *l'Equities Business* détenus par Lehman Brothers Services (**"LBS"**).

Les transactions suivantes relatives au règlement des dettes et créances intra-groupes ont également été conclues :

- aux termes d'un accord intitulé *settlement agreement*, BLB d'une part et LBHI d'autre part ont mutuellement abandonné les créances pour les montants mentionnés dans le *settlement agreement*. BLB pourra faire valoir sa créance résiduelle sur LBHI dans les conditions du *settlement agreement*. BLB pourra également, sous certaines conditions, vendre cette créance résiduelle sur LBHI à un tiers sous réserve de l'exercice d'un droit de préemption par LBHI.

- Un protocole transactionnel a été conclu le 24 octobre 2008 entre BLB et LBIE. A l'issue de ce protocole et du paiement effectué par BLB, LBIE ne détient plus sur BLB qu'une créance de 8.853.773,04 € subordonnée au paiement des autres créanciers dans le cas où la liquidation amiable laisserait apparaître un actif.

Immédiatement après la réalisation de la cession du fonds de commerce de BLB, une demande de retrait d'agrément sera déposée auprès du CECEI .

L'opération de cession du fonds de commerce a été conclue dans le cadre d'une conciliation ouverte par Monsieur le Président du Tribunal de commerce de Paris au bénéfice de BLB et de ses filiales, et a été homologuée par jugement du [ ● ].

Nous vous demandons par conséquent de consentir au transfert par BLB de son fonds de commerce au profit de Banque Nomura France pour le prix d'un Euro symbolique, lequel porte sur les éléments suivants de l'IBD Business :

- la clientèle,

- la propriété intellectuelle de l'IBD Business,

- tous les contrats auxquels BLB est partie, à l'exception des contrats conclus avec d'autres entités du groupe Lehman,

- documents commerciaux,

- les éléments d'informatique relatifs à l'IBD Business,

- les contrats de propriété intellectuelle de l'IBD Business,

- le mobilier et le matériel,

- tout autre actif utilisé dans le cadre de l'IBD Business, important et nécessaire à l'exploitation en France de l'IBD Business et dont BLB est propriétaire,



**Banque Lehman Brothers**

**Société anonyme au capital de 33.538.784 Euros**

**Siège social : 7 place d'Iéna - 75116 Paris**

**339 449 225 R.C.S. Paris**

**PROJET DE RESOLUTIONS**

**DE L'ASSEMBLEE GENERALE EXTRAORDINAIRE**

**EN DATE DU [ ● ] 2008**

**RESOLUTION UNIQUE**

L'Assemblée Générale autorise la cession par la Société de l'IBD Business en tant que fonds de commerce pour un prix d'un Euro symbolique, lequel comporte les éléments suivants :

- la clientèle,

- la propriété intellectuelle de l'IBD Business,

- tous les contrats auxquels BLB est partie, à l'exception des contrats conclus avec d'autres entités du groupe Lehman,

- les documents commerciaux,

WS0101.5824367.1
PA1:\176439\02\3S53021.DOC\58399.0003 WS0101.5589440.3

2.

- les éléments d'informatique relatifs à l'IBD Business,

- les contrats de propriété intellectuelle de l'IBD Business,

- le mobilier et le matériel,

- tout autre actif utilisé dans le cadre de l'IBD Business important et nécessaire à l'exploitation en France de l'IBD Business,

ainsi que certains des actifs liés à *l'Equities Business* détenus par LBS.

Les disponibilités, valeurs mobilières de placement et les créances détenues par BLB sont exclues de la cession envisagée.

**Schedule 2**

**BLB intercompany debts (€)**

| | |
|---|---:|
| **LB Ltd** | **226,199** |
| **LBF Inc. Tokyo Branch** | **16** |
| **LBSF Inc.** | **1,282** |
| **Total** | **227,497** |

13

## AMENDMENT AGREEMENT TO THE SETTLEMENT AGREEMENT

### DATED 3 DECEMBER 2008

This amendment agreement to a settlement agreement (the **"Amendment Agreement"**) is entered into in Paris on 30 June 2009,

**BETWEEN:**

1.  **Lehman Brothers Holdings Inc.**, a company incorporated under the laws of Delaware USA, currently a debtor in a case under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**) before the United States Bankruptcy Court for the Southern District of New York (the **"Chapter 11 Case"**), duly represented for the purpose hereof (hereafter referred to as **"LBHI"**),

**AND**

2.  **Banque Lehman Brothers S.A.**, a French *société anonyme*, with a share capital of €33,538,784, having its registered office at 7, place d'Iéna, 75116 Paris, and registered with the Trade and Companies Registry of Paris under number 339 449 225, represented by Mr. Alain Bachelot, in his capacity as *Administrateur provisoire* (hereafter referred to as **"BLB"**),

**AND**

3.  **Lehman Brothers Services SNC**, a French *société en nom collectif*, with a share capital of €1,524, having its registered office at 7, place d'Iéna, 75116 Paris and registered with the Trade and Companies Registry of Paris under number 343 763 157, duly represented by its two co-managers (*co-gérants*), BLB represented by Mr. Alain Bachelot, and Lehman Brothers Conseil S.A. represented by Mr. Michele Chu (hereafter referred to as **"LBS"**),

**AND**

4.  **Lehman Brothers Conseil S.A.**, a French société anonyme with a share capital of €76,244, having its registered office at 7, place d'Iéna, 75116 Paris and whose registration number is 377 718 697 RCS Paris, represented by Mr. Michele Chu (hereafter referred to as **"LBC"**),

BLB, LBS and LBC are collectively referred to as the **"Lehman French Companies"**.

LBHI, BLB, LBS and LBC are collectively referred to as the **"Parties"** and individually as a **"Party"**.

**IN THE PRESENCE OF:**

**Mr. Laurent Le Guernevé,** residing at 41 rue du Four, 75006 Paris, acting as former *conciliateur* of BLB, LBC and LBS, appointed by the President of the Commercial Court of Paris on 17 November 2008 and the appointment of whom terminated on 5 January 2009.

**WHEREAS:**

A.  The Parties entered into a settlement agreement on 3 December 2008 in order to settle their respective intra-group debts, considering the interest of all the Parties that the transfer of business of the Lehman French Companies to Banque Nomura France be completed and that the Lehman French Companies go to voluntary liquidation proceedings (the "**Settlement Agreement**").

B.  The Settlement Agreement provided that the respective rights and obligations of each of the Parties under such agreement would become null and void if, in particular, the withdrawal of the banking licence (*agrément*) of BLB by the French *Comité des Etablissements de crédit et des entreprises d'investissement* ("**CECEI**") had not become effective on or prior to 30 June 2009, or if the Banque de France or the Commission Bancaire, as the case may be, exercised its rights under the Support Letter prior to the date on which such withdrawal had become effective. This condition subsequent was only in favour of LBHI and could be waived by LBHI alone.

C.  On 7 January 2009, the shareholders of the Lehman French Companies (i) authorised the transfer of business of the French Companies to Banque Nomura France and (ii) voted in favour of the winding-up and voluntary liquidation of the Lehman French Companies subject to the condition precedent of the withdrawal of the banking licence of BLB by the CECEI.

D.  The CECEI ordered the withdrawal of the banking licence of BLB on 22 April 2009, such withdrawal to become effective at the latest on 31 December 2009.

E.  The Parties have therefore decided to amend the condition subsequent to the Settlement Agreement mentioned in paragraph (B) above by extending the time limit for BLB to obtain the effective withdrawal of its banking licence from 30 June 2009 to 31 December 2009 under the terms and conditions of the present Amendment Agreement.

**IT IS HEREBY AGREED AS FOLLOWS:**

1.  **INTERPRETATION**

    Unless otherwise defined under the Amendment Agreement, capitalised terms and expressions shall have the meaning ascribed to them in the Settlement Agreement.

2.  **AMENDMENT**

    Article 4.2 (iv) of the Settlement Agreement shall be amended to read:

> *"(iv)   the withdrawal of the banking licence (agrément) of BLB by the French Comité des Etablissements de crédit et des entreprises d'investissement ("CECEI") has not become effective on or prior to 31 December 2009, or if the Banque de France or the Commission Bancaire, as the case may be, exercises its rights under the Support Letter prior to the date on which such withdrawal has become effective;".*

The remainder of the Settlement Agreement remains unchanged.

## 3.   COMING INTO EFFECT

The Amendment Agreement shall take effect on the date hereof.

## 4.   GOVERNING LAW AND DISPUTE RESOLUTION

4.1   This Amendment Agreement shall be governed by French law.

4.2   Any proceedings concerning the existence, validity, interpretation or execution of this Amendment Agreement shall be subject to the exclusive jurisdiction of the Commercial Court of Paris.

**IN WITNESS WHEREOF**, the Parties have executed this Amendment Agreement in five (5) original copies.

**Lehman Brothers Holdings Inc.**

Name:  CHARLES THOMA
Title:  Attorney in Fact

**Lehman Brothers Conseil**

Name: Mr. Michele Chu
Title: Directeur général délégué

**Lehman Brothers Services SNC**

Name: Mr. Alain Bachelot
Title: *Administrateur provisoire* of BLB

**Banque Lehman Brothers S.A.**

Name: Mr. Alain Bachelot
Title: *Administrateur provisoire*

Name: Mr. Michele Chu
Title: *Directeur général délégué* of
      Lehman Brothers Conseil S.A.

**In the presence of**

Mr. Laurent Le Guernevé
former *conciliateur* of BLB, LBC and LBS

Exhibit B



1003476701

| | |
|---|---|
| DATE DEPOT : | 2010-04-21 |
| NUMERO DE DEPOT : | 34767 |
| N° GESTION : | 1986B14139 |
| N° SIREN : | 339449225 |
| DENOMINATION : | LEHMAN BROTHERS FRANCE |
| ADRESSE : | 7 pl d Iéna 75116 Paris |
| DATE D'ACTE : | 2009/12/29 |
| TYPE D'ACTE : | PROCES VERBAL D'ASSEMBLEE MIXTE |
| NATURE D'ACTE : | DISSOLUTION |
| | NOMINATION DE LIQUIDATEUR |
| | CHANGEMENT DE DENOMINATION SOCIALE |

**Banque Lehman Brothers**
**Banque en cours de retrait d'agrément**

**Société anonyme au capital de 33.538.784 Euros**

**Siège social : 7 place d'Iéna - 75116 Paris**

**339 449 225 R.C.S. Paris**

Greffe du Tri...
Commerce de Paris
...R
21 AVR. 2010
N° DE DÉPOT  34767

## PROCES-VERBAL DES DELIBERATIONS

## DE L'ASSEMBLEE GENERALE MIXTE

## EN DATE DU 29 DÉCEMBRE 2009

L'an deux mille neuf,
le 29 décembre
à 12 heures,

les actionnaires de la Banque Lehman Brothers (ci-après la "**Société**" ou "**BLB**") se sont réunis au siège social en assemblée générale sur convocation faite par Monsieur Alain Bachelot, Administrateur Provisoire désigné en application des dispositions de l'article L 613-18 du Code Monétaire et Financier.

Il a été dressé une feuille de présence qui a été signée par tous les actionnaires en entrant en séance tant en son nom propre qu'en qualité de mandataire.

En application des dispositions de l'article R 225-100 du Code de Commerce, Monsieur Alain Bachelot prend la présidence de l'Assemblée en sa qualité d'Administrateur Provisoire et d'auteur de la convocation.

Monsieur Luc PERROT, représentant comme mandataire le plus grand nombre de droits de vote, et acceptant cette fonction, est appelé à remplir les fonctions de scrutateur.

Monsieur François Gasc est désigné par le bureau ainsi composé comme secrétaire de l'assemblée.

Monsieur Sylvain Lajardie, commissaire aux comptes régulièrement convoqué par lettre remise en mains propres contre décharge en date du 10 décembre 2009, est présent.

2.

Monsieur le Président constate, d'après la feuille de présence certifiée véritable par les membres du Bureau, que les actionnaires possédant 2.199.996 actions sur les 2.200.000 actions composant le capital social sont présents ou représentés et que l'Assemblée réunissant plus du quart du capital social est alors déclarée régulièrement constituée et apte à délibérer valablement.

Monsieur le Président dépose sur le bureau et met à la disposition des membres de l'assemblée :

- un exemplaire des statuts,
- la feuille de présence,
- le rapport de l'Administrateur Provisoire,
- le texte des résolutions,

Puis le Président précise que tous les documents dont la loi prescrit la communication ont été tenus à la disposition des actionnaires au siège social depuis le jour de la convocation, ce qui est reconnu exact par tous les actionnaires présents tant en leur nom que comme mandataires.

Puis Monsieur le Président rappelle l'ordre du jour de la présente assemblée :

### ORDRE DU JOUR

- Rapport de l'Administrateur Provisoire,

- Prise d'effet de la dissolution anticipée de la Société,

- Modification de la dénomination sociale de la Société,

- Modification de l'article 2 des statuts de la Société,

- Confirmation, en tant que de besoin, de la désignation de Monsieur Alain Bachelot en qualité de liquidateur,

- Rémunération du liquidateur,

- Pouvoirs en vue des formalités.



3.

### PREAMBULE

Par délibération d'une assemblée générale extraordinaire du 7 janvier 2009, il a été décidé la dissolution anticipée de la Société, sous la condition suspensive du retrait d'agrément par le Comité des Établissements de Crédit et des Entreprises d'Investissement (« CECEI ») et à compter de l'obtention dudit retrait.

Aux termes de cette même délibération, Monsieur Alain Bachelot a été désigné en qualité de Liquidateur de la Société, sous la même condition suspensive.

Le 14 décembre 2009, le CECEI a confirmé à la Société ce retrait d'agrément qui prendra effet à compter du 31 décembre 2009.

Il est également précisé qu'à compter de la prise d'effet de ce retrait d'agrément, la société Lehman Brothers Holdings Inc. sera déchargée de l'ensemble de ses obligations au titre de la lettre de confort consentie par cette dernière le 15 juin 1994.

En outre, il résulte des termes de l'article L.511-16 du Code monétaire et financier que la Société doit avoir changé de dénomination sociale au jour de la prise d'effet du retrait d'agrément au plus tard.

C'est dans ces conditions qu'il est demandé aux actionnaires (i) de prendre acte dudit retrait à effet au 31 décembre 2009 et, en conséquence, de la prise d'effet de la dissolution anticipée suivie d'une liquidation de la Société à compter de cette date, (ii) de modifier la dénomination sociale de la Société conformément à l'article L.511-16 du Code monétaire et financier, (iii) de modifier les statuts de la Société, (iv) de confirmer, en tant que de besoin, la désignation de Monsieur Alain Bachelot en qualité de liquidateur de la Société pour une durée allant jusqu'au 31 décembre 2010 et (v) de décider la rémunération de Monsieur Alain Bachelot en qualité de liquidateur à compter du 31 décembre 2009.

Monsieur le Président présente ensuite son rapport.

Cette présentation terminée, Monsieur le Président déclare la discussion générale ouverte.

4.

Personne ne demandant la parole, Monsieur le Président met aux voix les résolutions suivantes :

## PREMIERE RESOLUTION

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire et statuant dans les conditions de quorum et de majorité d'une assemblée générale extraordinaire, prend acte du retrait d'agrément par le CECEI à effet au 31 décembre 2009 et, en conséquence, de la prise d'effet de la dissolution anticipée suivie d'une liquidation de la Société à compter de cette date.

A compter de cette date et pendant la liquidation :

- la dénomination sociale sera suivie de la mention :
  **"Société en liquidation"**,

- le siège de la liquidation restera fixé au siège social.

Cette résolution, mise aux voix, est adoptée à l'unanimité.

## DEUXIEME RESOLUTION

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire et statuant dans les conditions de quorum et de majorité d'une assemblée générale extraordinaire, décide de modifier la dénomination sociale de la Société qui devient « Lehman Brothers France » à compter du 31 décembre 2009.

Cette résolution, mise aux voix, est adoptée à l'unanimité.

## TROISIEME RESOLUTION

En conséquence de la résolution qui précède, l'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire et statuant dans les conditions de quorum et de majorité d'une assemblée générale extraordinaire, décide de modifier l'article 2 des statuts de la Société qui devient ainsi rédigé « *Sa dénomination sociale est LEHMAN BROTHERS FRANCE* » à compter du 31 décembre 2009.

Cette résolution, mise aux voix, est adoptée à l'unanimité.

## QUATRIEME RESOLUTION

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire et statuant dans les conditions de quorum et de majorité d'une assemblée générale ordinaire, confirme, en tant que de besoin, la désignation de Monsieur Alain Bachelot en qualité de liquidateur de la Société pour une durée allant jusqu'au 31 décembre 2010, étant entendu que la clôture de liquidation de la Société avant cette date mettrait fin de façon anticipée au mandat du liquidateur.

5.

Cette résolution, mise aux voix, est adoptée à l'unanimité.

### CINQUIEME RESOLUTION

L'Assemblée Générale, connaissance prise du rapport de l'Administrateur Provisoire et statuant dans les conditions de quorum et de majorité d'une assemblée générale ordinaire, fixe la rémunération forfaitaire de Monsieur Alain Bachelot, Liquidateur de la Société, à 250 000 euros hors taxes à compter du 31 décembre 2009 jusqu'au terme de sa mission.

Cette résolution, mise aux voix, est adoptée à l'unanimité.

### SIXIEME RESOLUTION

L'Assemblée Générale confère tous pouvoirs au porteur d'un original, d'une copie ou d'un extrait du présent procès-verbal à l'effet de procéder à toutes les formalités prescrites par la loi.

Cette résolution, mise aux voix, est adoptée à l'unanimité.

L'ordre du jour étant épuisé, la séance est levée à 12 heures 30.

De tout ce que dessus, il a été dressé le présent procès-verbal, qui, après lecture, a été signé par les Membres du Bureau et le Secrétaire.



Le Président

Le Scrutateur

Le Secrétaire

Exhibit C

## SYLVAIN LAJARDIE

Commissaire aux comptes    -    Expert comptable
3 bis rue Sadi Carnot -  92120 Montrouge
Téléphone : 01  46 56 50 65  Fax : 01 40 47 63 48
slajardie@lgaaudit.com

---

## LEHMAN BROTHERS FRANCE

Société en liquidation amiable

7 Place d'Iéna
75116 PARIS

**RAPPORT SPECIAL DU COMMISSAIRE AUX COMPTES
ETABLI EN APPLICATION DE
L'ARTICLE L 225-40
DU  CODE DE COMMERCE.**

**EXERCICE CLOS LE 31 Mai  2010**

*Mesdames, Messieurs,*

*En notre qualité de commissaire aux comptes de votre société, nous vous présentons notre rapport sur les conventions réglementées existant entre la société et l'un de ses administrateurs, directeurs généraux ou actionnaires détenant plus de 5% du capital.*

*Il ne nous appartient pas de rechercher l'existence éventuelle d'autres conventions mais de vous communiquer, sur la base des informations qui nous ont été données, les caractéristiques et les modalités essentielles de celles dont nous avons été avisés, sans avoir à nous prononcer sur leur utilité et leur bien-fondé.*

*Il vous appartient, selon les termes de l'article R 225-31 du code de commerce, d'apprécier l'intérêt qui s'attachait à la conclusion de ces conventions en vue de leur approbation.*

## Conventions mise en œuvre au cours de l'exercice.

### 1 – Cession de créance par LEHMAN Brothers France à LBH Inc.

*La société LEHMAN Brothers France détenait une créance de 2.312.043,79 euros sur la société de droit allemand Lehman Brothers Bankhaus AG (LBB).*
*Ce débiteur est engagé dans une procédure de cessation de paiement devant les tribunaux allemands.*

*La nature de la créance, les délais de la procédure judiciaire allemande et les incertitudes quant à l'existence d'un boni de liquidation au terme de cette dernière ont conduit le liquidateur de la société LEHMAN Brothers France à céder la créance sur la société LBB pour un montant de 1 euro sans aucune garantie de valeur.*

### 2 – Perte de la créance détenue par LEHMAN Brothers France sur sa société mère LBH Inc.

*Conformément aux accords passés avec la société LBH Inc, la société LEHMAN Brothers France a inscrit en perte la créance qu'elle détenait sur sa maison mère pour la somme de 93.2 M euros.*
*En conséquence de quoi, la société française renonce à demander le remboursement de tout ou partie de cette créance à la société LBH Inc.*

*Fait à Montrouge, le 3 juin 2010*

*Le Commissaire aux comptes*

**Sylvain LAJARDIE**

Exhibit D

# LEHMAN BROTHERS FRANCE S.A.

## Société anonyme au capital social de 33 538 784 €
### Siège social : 7 place d'Iéna
### 75116 Paris
### 339 449 225, RCS PARIS

## PROCES-VERBAL DE L'ASSEMBLEE GENERALE ORDINAIRE
## EN DATE DU 10 JUIN 2010

Le 3 juin 2010, à 12.00 heures, les actionnaires de la société Lehman Brothers France S.A., société anonyme au capital de 33 538 784 €, dont le siège social est au 7 place d'Iéna, 75116 Paris, identifiée sous le numéro 339 449 225 RCS Paris, (la "**Société**"), se sont réunis au siège social en assemblée générale ("l'**Assemblée** ") sur convocation qui leur a été faite par Monsieur Alain Bachelot, administrateur provisoire, par lettre en date du 25 mai 2010.

Il a été établi une feuille de présence qui a été signée par chaque membre de l'Assemblée en entrant en séance tant en son nom propre qu'en qualité de mandataire.

Monsieur Alain Bachelot préside la séance en sa qualité de liquidateur nommé par l'Assemblée Générale Mixte en date du 29 Décembre 2009.

Monsieur Guillaume d'Hauteville, acceptant, est appelé comme scrutateur.

Monsieur François GASC est désigné comme secrétaire de l'Assemblée.

Monsieur Sylvain Lajardie, le commissaire aux comptes, régulièrement convoqué, est présent.

La feuille de présence, certifiée sincère et véritable par les membres du bureau ainsi constitué, permet de constater que les actionnaires présents ou représentés possèdent plus du quart des actions ayant droit de vote conformément aux statuts de la Société.

En conséquence, l'Assemblée est déclarée régulièrement constituée et peut valablement délibérer.

Le Président dépose ensuite sur le bureau et met à la disposition de l'Assemblée :

- Les statuts de la Société ;

- Les copies des lettres de convocation adressées aux actionnaires;

- La feuille de présence à laquelle est annexé le pouvoir de l'actionnaire représenté ;

- Le texte des résolutions proposées à l'Assemblée ;

Le Président déclare que tous les documents qui, en application des dispositions légales ou réglementaires, doivent être tenus à la disposition des actionnaires au siège social ou à eux adressés, l'ont été conformément à ces dispositions.

L'Assemblée lui donne acte de cette déclaration.

Le Président rappelle ensuite que l'Assemblée est appelée à délibérer sur l'ordre du jour suivant :

- Présentation du rapport du liquidateur sur la marche de la Société et présentation par le liquidateur des comptes de l'exercice clos le 31 décembre 2009 ;
- Lecture des rapports du commissaire aux comptes sur l'exécution de sa mission et sur les conventions visées à l'article L. 225-38 du code de commerce de l'exercice clos le 31 décembre 2009;
- Approbation des comptes et opérations de l'exercice clos le 31 décembre 2009;
- Affectation des résultats de l'exercice clos le 31 décembre 2009;
- Approbation des conventions visées à l'article L.225-38 du code de commerce ;
- Présentation du rapport du liquidateur sur la marche de la Société et présentation par le liquidateur des comptes de liquidation clos le 31 Mai 2010;
- Lecture des rapports du commissaire aux comptes sur l'exécution de sa mission et sur les conventions visées à l'article L. 225-38 du code de commerce des comptes de liquidation clos le 31 Mai 2010;
- Approbation des opérations et des comptes définitifs de liquidation clos le 31 Mai 2010;
- Quitus au liquidateur ;
- Répartition du boni / mali de liquidation ;
- Approbation des conventions visées à l'article L.225-38 du code de commerce des comptes clos le 31 mai 2010;
- Pouvoirs pour accomplir les formalités légales.

Monsieur le Président déclare la discussion ouverte.

Personne ne demandant plus la parole et en l'absence de débat, Monsieur le Président met successivement aux voix les résolutions suivantes à l'ordre du jour:

1.   **PREMIERE RESOLUTION**

L'Assemblée, après avoir pris connaissance des rapports du liquidateur et du commissaire aux comptes, approuve le bilan et les comptes de l'exercice clos le 31 décembre 2009 tels qu'ils lui ont été présentés et qui se soldent par une perte de 15.590.555 €.

Elle approuve également les opérations traduites par ces comptes et résumées dans ces rapports.

L'Assemblée prend acte, en outre, qu'il n'a été distribué aucun dividende au titre des trois derniers exercices.

Par ailleurs, conformément aux dispositions des articles 223 quater et quinquies du code général des impôts, l'Assemblée prend acte que la Société n'a engagé aucune dépense ou charge non déductible fiscalement (*i.e.* charges somptuaires ou frais généraux excessifs ou ne figurant pas sur le relevé spécial annexé à la déclaration des résultats) au cours de l'exercice écoulé.

*Cette résolution est adoptée à l'unanimité.*

2. **DEUXIEME RESOLUTION**

L'Assemblée décide d'affecter la perte de l'exercice, soit 15.590.555 € au compte "report à nouveau", qui  serait ainsi porté d'un solde débiteur de 20.004.164 € à un solde débiteur de 35.594.719 €.

*Cette résolution est adoptée à l'unanimité.*

3. **TROISIEME RESOLUTION**

L'Assemblée, après avoir entendu lecture du rapport spécial des commissaires aux comptes établi au titre de l'exercice clos le 31 décembre 2009 sur les conventions visées à l'article L. 225-38 et suivants du code de commerce, prend acte et approuve l'énoncé et le contenu dudit rapport.

Lehman Brothers Holdings Inc. étant partie aux conventions visées par ledit rapport, cette société ne prendra pas part au vote et ses actions ne sont pas prises en compte pour le calcul du quorum et de la majorité.

*Cette résolution est adoptée à l'unanimité des votants.*

4. **QUATRIEME RESOLUTION**

L'Assemblée, après avoir pris connaissance des rapports du liquidateur et du commissaire aux comptes, approuve les comptes de liquidation, à savoir le bilan, le compte de résultat et l'annexe, arrêtés le 31 Mai 2010, ainsi que les opérations traduites dans ces comptes et le compte définitif tel qu'il est présenté faisant ressortir un mali de liquidation de 35.669.838,41 €uros.

*Cette résolution est adoptée à l'unanimité.*

5.    **CINQUIEME RESOLUTION**

L'Assemblée constate que les capitaux propres issus des comptes de liquidation sont inférieurs au montant du capital social et décide d'imputer le mali de liquidation soit la somme de 35.669.838,41 €uros sur la valeur nominale des actions. La valeur nominale résiduelle unitaire de ces actions soit 0,19893 €uros sera remboursée par le liquidateur aux actionnaires au plus tard le 30 juin 2010. La valeur résiduelle des actions remboursées aux actionnaires se détaille de la façon suivante :

| Noms des actionnaires | Nombre d'actions | Valeur nominale résiduelle remboursée |
|---|---|---|
| LEHMAN BROTHERS HOLDINGS INC.<br>745 Seventh Avenue, New York<br>NY 10019, USA | 2.199.996 | 437.647,88 |
| Guillaume d'HAUTEVILLE<br>22 rue Raynouard, 75016 Paris | 1 | 0,19893 |
| LEHMAN BROTHERS LIMITED<br>25 Bank Street<br>E14 5LE, Londres, UK | 1 | 0,19893 |
| MESSEL NOMINEES LIMITED<br>25 Bank Street<br>E14 5LE, Londres, UK | 1 | 0,19893 |
| LEHMAN BROTHERS NOMINEES LIMITED<br>25 Bank Street<br>E14 5LE, Londres, UK | 1 | 0,19893 |
| TOTAL A REPORTER | 2.200.000 | 437.648,68 |

En conséquence, l'Assemblée décide que le liquidateur sera définitivement déchargé de son mandat, soit par la remise des sommes aux actionnaires, soit après le 30 juin 2010, par le dépôt des sommes qui n'auront pu être versées à la Caisse des Dépôts et Consignations.

*Cette résolution est adoptée à l'unanimité.*

6. **SIXIEME RESOLUTION**

En conséquence de l'adoption des résolutions précédentes, l'Assemblée constate la clôture de la liquidation, au 31 mai 2010, de la société dont la personnalité morale cesse d'exister à compter de ce jour et sous réserve de la réalisation définitive du partage qui vient d'être décidé, donne quitus de sa mission au liquidateur et le décharge de son mandat.

*Cette résolution est adoptée à l'unanimité.*

7. **SEPTIEME RESOLUTION**

L'Assemblée confère tous pouvoirs au porteur d'une copie ou d'un extrait du présent procès-verbal, à l'effet d'accomplir toutes les formalités légales de dépôt, de publicité et de radiation.

*Cette résolution est adoptée à l'unanimité.*

**Guillaume d'Hauteville**
Scrutateur

**Alain Bachelot**
Liquidateur

**François GASC**
Secrétaire

Exhibit E

Greffe du tribunal de commerce de PARIS
1 QUAI DE LA CORSE
75198 PARIS CEDEX 04

339 449 225 R.C.S. PARIS
(1986 B 14139)

*Extrait Kbis*

IMMATRICULATION AU REGISTRE DU COMMERCE ET DES SOCIETES

Extrait au 12 mars 2012

Greffe du tribunal de commerce de PARIS
1 QUAI DE LA CORSE
75198 PARIS CEDEX 04

339 449 225 R.C.S. PARIS
(1986 B 14139)

Identification .                                              3
Renseignements relatifs à la personne .                      3
Administration .                                             3
Renseignements relatifs à l'activité commerciale.            3
Observation                                                  3

Greffe du tribunal de commerce de PARIS
1 QUAI DE LA CORSE
75198 PARIS CEDEX 04

339 449 225 R.C.S. PARIS
(1986 B 14139)

*Extrait Kbis*

IMMATRICULATION AU REGISTRE DU COMMERCE ET DES SOCIETES

Extrait au 12 mars 2012

## IDENTIFICATION

| | |
|---|---|
| *Dénomination sociale :* | **LEHMAN BROTHERS FRANCE** |
| *Numéro d'identification :* | 339 449 225 R.C.S. PARIS |
| *Numéro de gestion :* | 1986 B 14139 |
| *Date immatriculation :* | 15 décembre 1986 |
| *Date de radiation :* | 13 juillet 2010 |

## RENSEIGNEMENTS RELATIFS A LA PERSONNE MORALE

| | |
|---|---|
| *Forme juridique :* | Société anonyme |
| *Au capital :* | 33 538 784,00 EUROS |
| *Adresse du siège :* | 7 PL D IENA 75116 PARIS |
| *Durée de la société* | Jusqu'au 15 décembre 2085 |
| *Date d'arrêté des comptes:* | le 31 Décembre |
| *Constitution - Dépôt de l'acte constitutif :* | le 19 novembre 1986 sous le numéro 1601 |
| *Publication:* | LES PETITES AFFICHES du 14 novembre 1986 |

## ADMINISTRATION

| | |
|---|---|
| *LIQUIDATEUR* | MONSIEUR BACHELOT ALAIN |
| | né(e) le 14 octobre 1949 à DJIDJELLI  (ALGERIE) |
| | de nationalité FRANCAISE |
| | demeurant 5 R MOUSSET ROBERT 75012 PARIS |

## RENSEIGNEMENTS RELATIFS A L'ACTIVITE COMMERCIALE

| | |
|---|---|
| *Origine de la société :* | CETTE SOCIETE SE CONSTITUE |
| *Origine du fonds ou de l'activité :* | CREATION D'UN FONDS DE COMMERCE |
| *Activité :* | PERMETTRE A LA SOCIETE D'EFFECTUER A TITRE DE PROFESSION HABITUELLE TOUTES OPERATIONS DE BANQUE ET TOUTES OPERATIONS CONNEXES, EN FRANCE ET A L'ETRANGER, AINSI QUE TOUTE ACTIVITE BANCAIRE DANSLE RESPECT DE LA REGLEMENTATION APPLICABLE AUX BANQUES. |
| *Adresse de l'établissement principal :* | 7 PL D IENA 75116 PARIS |
| *Commencement d'activité le :* | 15 décembre 1986 |
| *Mode d'exploitation :* | EXPLOITATION DIRECTE |
| *Nom commercial* | LEHMAN BROTHERS INTERNATIONAL |

## OBSERVATIONS

| | |
|---|---|
| *21 avril 2010 numéro 93* | DISSOLUTION A COMPTER DU 29-12-2009, JOURNAL PUBLICATEUR : LES AFFICHES PARISIENNES DU 13/02/2010 |
| *13 juillet 2010 numéro 96* | RADIATION. CLOTURE DES OPERATIONS DE LIQUIDATION LE 10-06-2010 |

*Fin de l'extrait*

# Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                          :        **Chapter 11 Case No.**
                                               :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                               :
                                Debtors.       :        **(Jointly Administered)**
------------------------------------------------------------------x

## ORDER GRANTING DEBTORS' OBJECTION
## TO CLAIM OF BANQUE LEHMAN BROTHERS SA (CLAIM NO 17611)

Upon the objection, dated April 2, 2012 (the "Objection"),[2] of Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure to disallow and expunge

the claim filed by Banque Lehman Brothers S.A., Claim No. 17611 (the "Claim"), on the basis

that the Debtors have no liability for the Claim, all as more fully described in the Objection; and

due and proper notice of the Objection having been provided, and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Objection is in the best interests of the Debtors, their creditors, and all parties in

interest and that the legal and factual bases set forth in the Objection establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the relief requested in the Objection is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Claim is

disallowed and expunged with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Objection.

matters arising from or related to this Order.

Dated: _____, 2012
          New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE