HEARING DATE AND TIME: May 31, 2012 at 10:00 AM (Eastern Time)
RESPONSE DEADLINE: May 7, 2012 at 4:00 PM (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

### NOTICE OF HEARING ON PLAN ADMINISTRATOR'S OBJECTION
### TO CLAIMS FILED BY KATHLEEN ARNOLD AND TIMOTHY A. COTTEN

**PLEASE TAKE NOTICE** that on April 3, 2012, Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above referenced chapter 11 cases, filed its objection to claims of Kathleen Arnold and Timothy A. Cotten (the "Objection to the Arnold Claims"), and that a hearing (the "Hearing") to consider the Objection to the Arnold Claims will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **May 31, 2012 at 10:00 AM (prevailing Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection to the Arnold Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy

US_ACTIVE:\43927600\02\58399.0003

Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Plan Administrator, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.); and (iv) attorneys for the Official Committee of Unsecured Creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), so as to be so filed and received by no later than **May 7, 2012 at 4:00 PM (prevailing Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection to the Arnold Claims, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection to the Arnold Claims, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: April 3, 2012
      New York, New York

                         /s/ Jacqueline Marcus
                        Jacqueline Marcus

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Lehman Brothers Holdings Inc.
                        and Certain of Its Affiliates

**HEARING DATE AND TIME: May 31, 2012 at 10:00 AM (Eastern Time)**
**RESPONSE DEADLINE: May 7, 2012 at 4:00 PM (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S OBJECTION**
**TO CLAIMS FILED BY KATHLEEN ARNOLD AND TIMOTHY A. COTTEN**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the debtors in the above referenced chapter 11 cases, respectfully represents as follows:

**Relief Requested**

        1.    The Plan Administrator files this omnibus objection to claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking to disallow and expunge certain claims filed by Kathleen Arnold ("Arnold") and Timothy A. Cotten ("Cotten," and together with Arnold, "Claimants") on February 2, 2009 [Claim No. 2345] and September 2,

1

2009 [Claim Nos. 34313 and 34320] (the "Arnold Claims").[1]  As discussed below in greater detail, the Arnold Claims arise out of a mortgage refinancing transaction with LBHI's non-debtor subsidiary Aurora Bank FSB and have previously been litigated and dismissed by the United States District Court for the District of Maryland, which dismissal was upheld by the United States Court of Appeals for the Fourth Circuit.  Accordingly, the Arnold Claims are barred by the doctrine of collateral estoppel.  Further, even if the Arnold Claims were not barred by the doctrine of collateral estoppel, such claims are against non-debtors Aurora Bank FSB and Aurora Loan Services LLC – the parties who originated and serviced Claimant's mortgage loan – not LBHI.  Accordingly, the Plan Administrator requests that the Arnold Claims be disallowed and expunged with prejudice.

## Jurisdiction

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Article 14(c) of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

3. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

---

[1] Claim numbers 34313 and 34320 are apparently intended to amend and supersede claim number 2345.  The Arnold Claims are attached hereto as Exhibit A.

2

4. On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5. On December 6, 2011, the Court entered the order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012.

## Facts Relevant to the Arnold Claims

6. The dispute between Lehman and the Claimants arises out of a mortgage refinancing transaction that was executed on September 15, 2003. Pursuant to this transaction, Aurora Bank FSB (f/k/a Lehman Brothers Bank FSB) ("Aurora"), a non-debtor, indirect subsidiary of LBHI,[2] provided financing to Claimants in exchange for a note (the "Note") evidencing Claimants' obligation to repay Aurora $315,000 (plus interest). Claimants' obligations under the Note were secured by a deed of trust (the "Deed of Trust," together with the Note, the "Loan") pursuant to which Claimants granted Aurora a security interest in certain real property located at 9543 North Side Drive, Owings, Maryland (the "Property"). Shortly thereafter, Aurora transferred its interest in the Loan to a securitization trust and no longer retains any interest in the Property.

7. On January 14, 2005, CitiMortgage, Inc. or its agent ("CitiMortgage"), commenced a foreclosure proceeding against the Property in the Circuit Court for Calvert County, Maryland.[3] On February 14, 2005, in an apparent attempt to halt the pending foreclosure proceeding, Arnold filed a case under chapter 13 of the Bankruptcy Code in the

---

[2] Aurora is a wholly owned subsidiary of Lehman Brothers Bancorp Inc., which, in turn, is a wholly owned subsidiary of LBHI. The name change from Lehman Brothers Bank FSB to Aurora Bank FSB occurred on April 27, 2009.

[3] This foreclosure proceeding was dismissed on January 11, 2007 for lack of prosecution.

3

United States Bankruptcy Court for the District of Maryland [Case No. 05-13246] (the "<u>Arnold Bankruptcy Case</u>").  Approximately two years later, after the Arnold Bankruptcy Case had been converted to a case under chapter 7 of the Bankruptcy Code, the Arnold Bankruptcy Case was dismissed and the discharge that had previously been granted to Arnold was revoked.[4] Importantly, the Maryland bankruptcy court expressly noted in the dismissal order that "[t]hroughout the case, [Arnold] has asserted that she has a cause of action against her lender, [CitiMortgage], which holds a note secured by a first deed of trust on the [Property].  The Court has provided [Arnold] every opportunity to assess this alleged cause of action and to convince the Chapter 7 Trustee that the cause of action is valid and should be pursued." (Bankruptcy Dismissal Order, p. 2).  The Chapter 7 Trustee apparently disagreed with Arnold's assessment of her causes of action arising out of the Loan, since none were pursued in the Arnold Bankruptcy Case.

        8.      After the Arnold Bankruptcy Case was dismissed, Claimants filed several lawsuits in the Circuit Court for Calvert County, Maryland naming among others, Aurora and its wholly-owned subsidiary Aurora Loan Services LLC ("<u>ALS</u>"), as defendants.  Aurora, ALS and the other defendants removed these actions to the United States District Court for the District of Maryland (the "<u>District Court</u>") where several of them were later consolidated [Case No. 07-cv-2617] (the "<u>District of Maryland Action</u>").  The District Court struck the first three complaints filed by Claimants – apparently for failing to include actionable claims and to comply with the

---

[4] A copy of the order dismissing the Arnold Bankruptcy Case (the "<u>Bankruptcy Dismissal Order</u>") is attached hereto as <u>Exhibit B</u>.

4

Federal Rules of Civil Procedure (the "FRCP").[5] In response, on August 20, 2009, Claimants filed their fourth amended complaint (the "Fourth Amended Complaint").[6]

9. While it is difficult to discern the precise nature of the claims set forth in the Fourth Amended Complaint, it contains, among other things, the following allegations:

- The defendants engaged in fraudulent activity including with respect to the forgery of Arnold's signature on certain loan documents and the filing of false documents in the Arnold Bankruptcy Case (Fourth Amended Complaint, ¶¶ 36-37, 41, 82).

- The defendants falsely induced Claimants to enter into an adjustable rate mortgage (Fourth Amended Complaint, ¶¶ 18-24, 100).

- The defendants violated various provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, by failing to provide Claimants with the required disclosures (Fourth Amended Complaint, ¶¶ 27, 42, 65-76).

- The defendants wrongfully ignored Claimants' timely issued notice of rescission (Fourth Amended Complaint, ¶¶ 44-46, 69-70).

- The defendants wrongfully accepted an inflated payoff amount (Fourth Amended Complaint, ¶ 82, 91).

- The defendants engaged in violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and other federal laws by (i) holding Claimants' mortgage payments in a suspense account (Fourth Amended Complaint, ¶ 94), (ii) wrongfully declaring Claimants' mortgage account in default (Fourth Amended Complaint, ¶¶ 50, 53), (iii) reporting false and inaccurate information to credit agencies (Fourth Amended Complaint, ¶ 61), and (iv) wrongfully causing the filing of two foreclosure actions against the Property (Fourth Amended Complaint, ¶¶ 39-40, 55-60, 62).

10. Aurora, ALS, and certain of the other defendants in the District of Maryland Action filed a motion to dismiss the Fourth Amended Complaint on September 21, 2009 and a reply memorandum in further support of the motion to dismiss on November 5, 2009

---

[5] *See* Order entered June 22, 2009, a copy of which is attached hereto as Exhibit C.

[6] A copy of the Fourth Amended Complaint is attached hereto as Exhibit D.

5

(together, the "Motion to Dismiss").[7] Following a hearing on the Motion to Dismiss, Judge Roger W. Titus issued an order dismissing the District of Maryland Action with *prejudice*,[8] and awarded costs to the defendants (the "Dismissal Order").[9]

11. Claimants appealed Judge Titus' decision, but the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") affirmed the Dismissal Order on November 15, 2010.[10] Claimants also filed a petition for rehearing, but the Fourth Circuit denied it as untimely. Shortly thereafter, Claimants filed a "criminal" complaint in the District Court naming a number of United States Bankruptcy, District and Circuit Court Judges and alleging a litany of wrongdoing primarily related to subject matter jurisdiction and bias. Chief Judge Deborah K. Chasanow summarily dismissed the "criminal" complaint on January 6, 2011.

12. Several days later, Claimants filed a motion in the District of Maryland Action under FRCP 60(b) seeking relief from the Dismissal Order (the "60(b) Motion").[11] While the 60(b) motion primarily involved Claimants' dissatisfaction with the District Court's exercise of subject matter jurisdiction, Claimants again raised many of the allegations that were the subject of the Fourth Amended Complaint. Indeed, the 60(b) Motion includes allegations that the defendants (i) engaged in fraudulent activity including the with respect to the forgery of Arnold's signature on certain loan documents (60(b) Motion, ¶¶134-135, 154); (ii) falsely induced Claimants to enter into an adjustable rate mortgage (60(b) Motion, ¶¶145, 148); (iii)

---

[7] A copy of the Motion to Dismiss is attached hereto as Exhibit E.

[8] The case was dismissed without prejudice with respect to one of the seven defendants – Congressional Funding USA, LLC – a third party unrelated to Lehman or these chapter 11 cases.

[9] A copy of the Dismissal Order is attached hereto as Exhibit F.

[10] A copy of the order affirming the dismissal of the District Court of Maryland Action is attached hereto as Exhibit G.

[11] A copy of the 60(b) Motion is attached hereto as Exhibit H.

6

violated various provisions of TILA by failing to provide Claimants with the required disclosures (60(b) Motion, ¶¶113-155); (iv) wrongfully ignored Claimants' issuance of a notice of rescission (60(b) Motion, ¶¶43-50, 113-155); (v) wrongfully declared Claimants' mortgage account in default (60(b) Motion, ¶137); (vi) reported false and inaccurate information to credit agencies (60(b) Motion, ¶¶51, 145); and (vii) wrongfully caused the filing of two foreclosure actions against the Property (60(b) Motion, ¶¶136-137).

13.     On June 14, 2011, Judge Titus denied the 60(b) Motion.[12] In his written opinion (the "60(b) Decision"), Judge Titus expressly observed that the 60(b) Motion contained "a multitude of arguments that have already been briefed, argued, and rejected by this Court over the course of this three-year litigation. In addition to failing to meet any of the grounds for reconsideration listed in Rule 60(b), Plaintiffs' attempt to relitigate arguments already addressed in earlier rulings is plainly inappropriate and these arguments will not be reconsidered here." (60(b) Decision, p.5) (internal citations omitted).

14.     By the time the Judge Titus entered the 60(b) Decision, Claimants had already commenced an adversary proceeding against LBHI in the Chapter 11 Cases (the "Adversary Proceeding") [Adv. Pro. No. 11-01540]. The claims asserted by Claimants in the Adversary Proceeding are essentially identical to the claims that were dismissed by Judge Titus in connection with the District of Maryland Action and the 60(b) Motion. LBHI moved to dismiss the Adversary Proceeding under Rule 12(b)(1) of the Federal Rules of Civil Procedure and, at a hearing on June 15, 2011, this Court suggested that it was inclined to dismiss the Adversary Proceeding, but ultimately agreed to defer a final decision on the matter until

---

[12] A copy of the 60(b) Decision is attached hereto as Exhibit I.

7

Claimants discussed their claims with counsel.[13]  Nearly ten months have passed without Claimants making any apparent effort to prosecute the Adversary Proceeding.

## The Arnold Claims

15.　　The Arnold Claims do not include any supporting documentation and are, at best, difficult to follow.  A fair reading of the Arnold Claims, however, demonstrates that the allegations contained in the Arnold Claims are identical to allegations asserted by Claimants in the Arnold Bankruptcy Case, the District of Maryland Action, and the 60(b) Motion.  More specifically, the Arnold Claims are comprised of the following allegations:

- Aurora and/or its agents and employees forged various documents and made fraudulent representations in certain judicial proceedings. (Arnold Claims, ¶¶6, 9).

- The "debtor" tricked Claimants into entering into a variable rate mortgage by offering a fixed rate mortgage and then switching the documents at the last minute and/or forging Arnold's signature. (Arnold Claims, ¶7, 11).

- The "debtor" violated various provisions of the TILA by failing to provide Claimants with the required disclosures. (Arnold Claims, ¶¶7-8).

- The "debtor" wrongfully refused to recognize Claimants' exercise of their right of rescission. (Arnold Claims, ¶8).

- "Lehman" engaged in wrongful conduct "by paying an inflated payoff statement submitted by the subsequent servicer," which somehow invalidated subsequent loan disclosures. (Arnold Claims, ¶10).

- LBHI violated the FDCPA by (i) holding Claimants' mortgage payments in a suspense account, (ii) wrongfully declaring Claimants' mortgage account in default, (iii) reporting false and inaccurate information to credit agencies, and (iv) wrongfully causing the filing of foreclosure actions against the Property. (Arnold Claims, ¶12).

As a result of this alleged wrongdoing, Claimants assert they are entitled to punitive and enhanced damages. (Arnold Claims, ¶13).  Each of the Arnold Claims was filed in a face amount of $10,000,000.  Presumably in an effort to explain the fact that the aggregate amount of the

---

[13] A excerpt of the transcript for the June 15, 2011 hearing is attached hereto as Exhibit J.

8

Arnold Claims is more than 60 times the original principal amount of the Loan, and notwithstanding the fact that all of the allegations contained in the Arnold Claims have previously been litigated and dismissed, Claimants also assert that "if [their] case goes to trial, a jury would award a windfall judgment in [their] favor." (Arnold Claims, ¶15).

## Basis for Relief Requested

### A.    The Doctrine of Collateral Estoppel Requires That The Arnold Claims Be Dismissed

16.    Claimants have already had their day in court with respect to all of the allegations that are the subject of the Arnold Claims. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . ." *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1 (1897)). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id*. "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, [collateral estoppel] protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotations and citations omitted].

17.    The Second Circuit has held that collateral estoppel applies where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party has a full and fair opportunity to litigate the

9

issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Overview Books, LLC v. U.S.,* 438 Fed. Appx. 31, 33 (2d Cir. 2011) (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F. 3d 86, 91 (2d Cir. 1997). Further, it is well settled in this Circuit that "bankruptcy proceedings may not be used to relitigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987); *see also, Glatzer v. Enron Corp.*, 2008 WL 4449439 (S.D.N.Y.). The Arnold Claims meet all of the requirements for collateral estoppel and, therefore, Claimants are barred from seeking to litigate these matters a second time under the guise of a claim in the Chapter 11 Cases.

18. First, all of the conduct that is complained of in the Arnold Claims was already included in the Fourth Amended Complaint and dismissed in the District of Maryland Action.[14] Comparing the documents side by side, both the Fourth Amended Complaint and the Arnold Claims involve allegations that Lehman and the other defendants (i) engaged in fraudulent activity including with respect to the forgery of Arnold's signature on certain loan documents and the filing of false documents in the Arnold Bankruptcy Case (Fourth Amended Complaint, ¶¶ 36-37, 41, 82; Arnold Claims ¶¶6, 9); (ii) falsely induced Claimants to enter into an adjustable rate mortgage (Fourth Amended Complaint, ¶¶ 18-24, 100; Arnold Claims, ¶7, 11); (iii) violated various provisions of TILA by failing to provide Claimants with the required disclosures (Fourth Amended Complaint, ¶¶ 27, 42, 65-76; Arnold Claims, ¶¶7-8); (iv) wrongfully ignored Claimants' timely issued notice of rescission (Fourth Amended Complaint, ¶¶ 44-46, 69-70; Arnold Claims, ¶8); (v) wrongfully accepted an inflated payoff amount (Fourth Amended Complaint, ¶ 82, 91; Arnold Claims, ¶10); and (vi) violated the FDCPA and other federal laws by (a) holding Claimants' mortgage payments in a suspense account (Fourth

---

[14] As discussed above, many of the same claims were also raised and rejected in connection with the Arnold Bankruptcy Case and the 60(b) Motion.

10

Amended Complaint, ¶ 94; Arnold Claims, ¶12), (b) wrongfully declaring Claimants' mortgage account in default (Fourth Amended Complaint, ¶¶ 50, 53; Arnold Claims, ¶12), (c) reporting false and inaccurate information to credit agencies (Fourth Amended Complaint, ¶ 61; Arnold Claims, ¶12), and (iv) wrongfully causing the filing of two foreclosure actions against the Property (Fourth Amended Complaint, ¶¶ 39-40, 55-60, 62; Arnold Claims, ¶12). Indeed, the Arnold Claims parrot the issues that were already raised and rejected in the District of Maryland Action.

19. Second, although, the Dismissal Order does not provide an explicit recitation of the reasoning Judge Titus relied on in dismiss the District of Maryland Action, all of the issues were extensively briefed in the Fourth Amended Complaint and the Motion to Dismiss. It is fair to assume that each of the allegations contained in the Fourth Amended Complaint was given due consideration in light of the relevant facts and applicable law. Consequently, it is reasonable to conclude that the allegations contained in the Arnold Claims were actually litigated and decided in the District of Maryland Action and, to a lesser extent, in connection with the 60(b) Motion.

20. Third, the federal courts in Maryland have already provided Claimants with more than a full and fair opportunity to litigate these matters. Claimants' alleged claims against their lenders were considered and not pursued in the Arnold Bankruptcy Case. Similarly, Claimants were permitted to amend their complaint four times in the District Court of Maryland Action before it was dismissed. The Fourth Circuit then considered and rejected Claimants' appeal of the dismissal of the District Court of Maryland. Lastly, Claimants brought the matter before Judge Titus a second time in connection with the 60(b) Motion, where it was again rejected as being entirely without merit.

21. Finally, in dismissing the First District of Maryland Action in its entirety, Judge Titus must have considered each of the allegations contained in the Fourth Amended Complaint and determined that they were without merit. Further, the fact that the Dismissal Order dismissed all claims against Aurora and ALS with prejudice suggests that Judge Titus' decision was predicated on the merits of Claimants' claims and not merely the result of some procedural mishap.

22. In sum, Claimants have already engaged in the type of conduct that the doctrine of collateral estoppel was developed to address, namely the propagation of serial, meritless actions for the sole purpose of harassing opposing parties and in the process, squandering judicial resources. Accordingly, the Plan Administrator requests the entry of an order disallowing and expunging the Arnold Claims from LBHI's claims register in their entirety because Judge Titus' decision in the District of Maryland Action, which was affirmed by the Fourth Circuit, precludes Claimants from re-litigating issues that have already been decided by the District Court.

**B.    To the Extent that Claimants Have Any Claims
       Against Lehman, Such Claims Are Against Aurora or ALS, Not LBHI**

23. Even if this Court does not find that the Arnold Claims are barred by the doctrine of collateral estoppel, and disagrees with the District Court and the Fourth Circuit, LBHI is not among the entities that Claimants' allege engaged in the wrongful conduct that is the subject of the Arnold Claims. Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). A proof of claim is "deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the

12

claimant has the burden to demonstrate the validity of the claim. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

24. As described above, Aurora, not LBHI, was the party to the Loan that resulted in what Judge Titus accurately described as "a veritable explosion of litigation." (Dismissal Order, p. 2). Similarly, ALS, not LBHI, serviced the Loan during a portion of the time when Claimants allege that wrongful conduct occurred. Upon information and belief, a non-debtor securitization trust called Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-34A is the current beneficial owner of the Loan. A third party, Wells Fargo Bank, N.A., is the trustee for the securitization trust. The Arnold Claims completely fail to establish any basis for concluding that LBHI was responsible for any the allegedly wrongful conduct.

25. Further, all of the allegedly wrongful conduct that is described in the Arnold Claims relates to the origination or servicing of the Loan. Absent some contrary showing by Claimants, it logically follows that such conduct is attributable to Aurora, as the party that originated the Loan, or ALS, the party who serviced the Loan.[15] Aurora and ALS are separate entities and, as this Court has held throughout the Chapter 11 Cases, absent a compelling reason to ignore the corporate separateness of the various Lehman entities, the potential liability of a non-debtor affiliate does not result in a claim against LBHI.

26. A proof of claim *must* "set forth the facts necessary to support the claim" for it to receive the prima facie validity accorded under the Bankruptcy Rules. *In re Chain*, 255

---

[15] The Debtors do not concede that Aurora, ALS, or any other Lehman entity engaged in any wrongful conduct in connection with the Loan and expressly reserve all of their rights in connection therewith.

13

B.R. 278, 280 (Bankr. D. Conn. 2000) (internal quotation omitted); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988); *see In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *Ashford v. Consol. Pioneer Mortgage*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996). The Arnold Claims manifestly fail to meet even that low standard. Claimants have failed to provided *any* legal or factual support for their alleged claims against LBHI and, thus, the Arnold Claims should not be afforded prima facie validity under the Bankruptcy Code. Accordingly, the Plan Administrator requests that Arnold Claims be disallowed and expunged from the claims register.

## Notice

27. No trustee has been appointed in these chapter 11 cases. The Plan Administrator has served notice of this objection, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures [ECF No. 9635], on: (i) Kathleen Arnold and Timothy Cotten; (ii) the U.S. Trustee; (iii) the attorneys for the Creditors' Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; and (vii) all parties who have requested notice in these chapter 11 cases. The Plan Administrator submit that no other or further notice need be provided.

14

28. No previous request for the relief sought herein has been made by the Plan Administrator to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: April 3, 2012
       New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

15

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                                         :    Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                                              :
                                Debtors.                 :    (Jointly Administered)
------------------------------------------------------------------x

### ORDER GRANTING PLAN ADMINISTRATOR'S OBJECTION
### TO CLAIMS FILED BY KATHLEEN ARNOLD AND TIMOTHY A. COTTEN

Upon the objection, dated April 3, 2012 (the "Objection to the Arnold/Cotten Claims"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the debtors in the above referenced chapter 11 cases (the "Debtors"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure, seeking disallowance and expungement of the Arnold Claims, all as described in the Objection to the Arnold Cotton Claims; and due and proper notice of the Objection to the Arnold Cotton Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection to the Arnold Cotton Claims is in the best interests of the Plan Administrator and all parties in interest in the above captioned chapter 11 cases and that the legal and factual bases set forth in the Objection to the Arnold Cotton Claims establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[1] Terms not defined herein shall have the same meaning ascribed to them in the Objection to the Arnold/Cotten Claims.

ORDERED that the relief requested in the Objection to the Arnold Cotton Claims is granted; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the Arnold Claims, which have been assigned claim numbers 2345, 34313 and 34320 by the Debtors' Court-appointed claims agent are disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that the Debtors' Court-appointed claims agent is authorized and directed to reflect the Arnold Claims as disallowed and expunged pursuant to this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2012
       New York, New York

2