**<u>EXHIBIT D</u>**
**(Fourth Amended Complaint)**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (GREENBELT DIVISION)

|  |  |
|---|---|
| **TIMOTHY A. COTTEN and KATHLEEN ARNOLD**, <br><br> Plaintiffs, <br><br> vs. <br><br> **CITIMORTGAGE INCORPORATED, LEHMAN, BROTHERS BANK, F.S.B., AURORA LOAN SERVICES LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CONGRESSIONAL FUNDING USA, LLC, SAMUEL I. WHITE, P.C., AND WELLS FARGO HOME MORTGAGE INC.** <br><br> Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **FOURTH AMENDED COMPLAINT FOR: VIOLATIONS OF THE FEDERAL TRUTH-IN-LENDING ACT, THE FAIR DEBT COLLECTION PRACTICES ACT, REAL ESTATE SETTLEMENT PROCEDURES ACT, AIDING AND ABETTING FRAUD, CIVIL CONSPIRACY, AND EQUITABLE ESTOPPEL** <br><br> **Case No: RWT 07-2617** <br><br> **JURY TRIAL DEMAND** |

Plaintiffs, as Pro Se litigants, bring this fourth amended complaint and states as follows:

## PRELIMINARY STATEMENT

1.  Plaintiffs Timothy Cotten and Kathleen Arnold timely sought rescission of their home mortgage transaction on August 7, 2006 pursuant to the Truth in Lending Act, 15 U.S.C. § 1635(b), (f) however, defendants willfully violated TILA when denying the plaintiffs rights to rescission, the cause of this action. Plaintiffs also charge that in connection with their home mortgage transaction defendants violated the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.*, engaged in common law fraud and other state law offenses in which this Court further has supplemental jurisdiction over.

2.    The facts set forth herein, arose out of the same nexus of facts and circumstances previously pled by Plaintiff, Timothy A. Cotten et. al. in plaintiff debtor Arnolds' U.S. Bankruptcy Case No. 05-13246 TJC, and Adversary Complaint, Case No. 06-2056 filed on December 14, 2006, and relates back to said adversary complaint and March 20, 2007 Complaint filed by plaintiffs in the Calvert County Circuit Courts, Case No. 04C07000353 and August 7, 2007 Complaint filed by plaintiffs in the Calvert County Circuit Courts, Case No 04C07001044 .

## JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 (Federal Question), 1337 (Interstate Commerce), 1367 (Supplemental jurisdiction) and under the Truth and Lending Act. (**"TILA"**)

4.    Venue is proper in this district pursuant to 28 U.S.C. 1391 because plaintiff's claims arose here and the defendants engage in business in this District.

## PARTIES

5.    Plaintiffs TIMOTHY A. COTTEN and KATHLEEN ARNOLD are individuals that are domiciled in the State of Maryland and currently reside at 9543 North Side Drive, Owings, Maryland 20736. ( "Property")

6.    Defendant CITIMORTGAGE INCORPORATED ("CMI"), with its principal place of business located at 1000 Technology Drive, O'Fallon, MO, 63304, was, at all material times hereto, a foreign corporation which was doing business in the State of Maryland including the servicing of mortgage loans which in this instance.

7.    Defendant LEHMAN BROTHERS BANK F.S.B. ("LBB"), with a last known principal place of business to be known as 400 Professional Drive, Suite 100, Gaithersburg, MD 20879, is and was at all times material hereto a foreign corporation which was doing business in the

2

State of Maryland, and including the origination of mortgage loans either directly or indirectly through one or more agents.

8.     Defendant AURORA LOAN SERVICES LLC ("ALS"), with its principal place of business at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, was, at all material times hereto, a foreign limited liability corporation and doing business in the State of Maryland including the servicing of mortgage loans which constituted the collection of consumer debts.

9.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), with its last known principal place of business located at 1000 Technology Drive, O'Fallon, MO 63368, is and was, at all times material hereto, a foreign corporation which was engaged in the business of, *inter alia,* acting as an alleged "nominee" for various mortgage lenders and their servicing agents.

10.    Defendant CONGRESSIONAL FUNDING LLC ("CF"), with its principal place of business at 77 S. Washington Street, Suite 205, Rockville, MD 20850, is and was, at all times material hereto, a limited liability company organized under the laws of the State of Maryland and was engaged in the business of mortgage brokerage in connection with the transaction the subject of this action.

11.    Defendant WELLS FARGO HOME MORTGAGE INC., (WFHMI), with its last known principal place of business at 5th Street, Des Monies, Iowa, 50306, is and now, engaged in the servicing of mortgage loans and as defined under RESPA § 2605 and further constituted the collection of consumer debts for said servicing purposes and is thus subject to TILA provisions and is a "creditor" under the Federal Truth In Lending Act 15 U.S.C sec. §1602(f) and mortgage servicer as defined under section 6 of RESPA § 2605.

3

12.    Defendant SAMUEL I. WHITE, P.C., (WHITE), with its principal place of business at 209 Business Park Drive, Virginia Beach, Virginia 23462, is and was at all times material hereto a professional corporation organized under the laws of the State of Virginia and was engaged in the business of foreclosing on the homes of Maryland residents.

## COMMON FACTS

13.    In the summer of 2003, Plaintiffs sought and made application for a refinance mortgage loan on their residential real property (the "Property") to pay-off a pre-existing loan, which had been issued by a creditor different from all of the Defendants herein except WFHMI.

14.    In connection therewith, Plaintiffs met by phone with a representative of Defendant CF, who recommended that Plaintiffs make application for a mortgage loan.  Defendant CF did not disclose any particular lender or the lenders cost of any loan.

15.    Plaintiffs expressly advised Defendant CF that they wanted a loan program with terms and payments which would be in accordance with their financial abilities, and subsequently rejected an interest only, "5/1 Option ARM" offered by Defendant CF.

16.    Defendant CF ultimately advised Plaintiffs that it had located a loan program for Plaintiffs, but did not disclose the identity of the lender or their cost of the loan.

17.    Plaintiffs were lead to believe by Defendant CF that they were being placed into a conventional, fixed rate loan which Plaintiffs could afford to repay based on their income, assets, and other information provided to Defendant CF.

18.    Pursuant to the original Truth-In-Lending Disclosure Statement (TILDS), provided to Plaintiffs by Defendant CF on or about July 15, 2003, Plaintiffs' loan would be a conventional loan made at an initial fixed interest rate of 5.630% but with a payment option resulting in a monthly payment of $1,410.94 for the first 60 months, followed by a monthly payment of $1,443.75 for the next 60 months, and $2,166.85 for the final 240 months.

4

19.   The subject TILDS was checked with the box which provided that there was no prepayment penalty, and in fact no statement as to any prepayment penalty was included on the TILDS. Therefore, Plaintiffs would be permitted to refinance this loan at any time without any prepayment penalty.

20.   Defendant CF scheduled a closing on the loan for September 15, 2003.

21.   During this closing, defendant WFHMI's failed to provide a true and accurate payoff amount balance. This failure to provide a true and accurate pay-off amount caused the total amount financed to be inaccurate. Since all disclosures on the TILDS were based on this an inaccurate amount financed.   Plaintiffs' invariably received a TILDS with improper and/or deficient material disclosures, pursuant to TIL Act 15 U.S.C sec. §1638, hence affecting the accuracy of the disclosures of the Annual Percentage Rate, Finance Charge, Amount Financed, Total of Payments and Schedule of Payments.   These "Material" violations are evident on the face of the TILDS.

22.   Less than 19 hours prior to the closing, Defendant CF, together with their agents including Defendant LBB, executed their next unlawful act by providing Plaintiffs with a second Good Faith Estimate Disclosure ("GFE") dated September 14, 2003 (sixty days after the original TILDS upon which Plaintiffs relied and which they understood and would reflect the loan terms at closing), and which the second TILDS was materially different from the July 15, 2003 GFE. These material differences were placed on the initial monthly payment, now $1,542.19, for the first 60 months, followed by a monthly payment of $1,443.75 for the next 60 months, and thereafter a monthly payment of $2,166.85 for the next 240 months. These payments also included insurance and taxes.

23.    This second GFE was and is deceptive in that it did not clearly and conspicuously disclose that the loan was an Interest Only, 5/1 Option ARM. The second TILDS was and is deceptive in that it did not clearly and conspicuously disclose any payment requirement for private mortgage insurance (PMI), and as Defendant ALS has admitted, no such disclosure appears under item # 1002 on the HUD-1 Settlement Statement from the closing.

24.    Further, this second TILDS suddenly had a statement indicating a 3 year prepayment penalty and a checkmark in the box for prepayment penalty. Placing a prepayment penalty on this second TILDS was deceptive in that Defendants LBB and CF knew or had reason to know that Plaintiffs had not previously agreed to any prepayment penalty.

25.    Additionally, the loan disclosures made to the Plaintiffs less than 19 hours prior to the closing were also devoid of escrow impounds. Defendants knew or should have known that failing to disclose the escrow amounts would and in fact did render the monthly payments far greater than the disclosed amount of $1,542.19.

26.    Plaintiffs were lead to believe that all taxes and insurance were included within the monthly payment of $1,542.19 and all subsequent payments.

27.    Prior to the closing and pursuant to applicable Federal Statutes including the Truth-In-Lending Act 15 U.S.C sec. §1601 *et seq.*, and Regulation Z, 12 C.F.R § 226.17 and § 226.18, Defendants LBB and CF were legally required to make certain "material disclosures" to the Plaintiffs in connection with the mortgage loan actually being offered, which disclosures were not made but were to include:

   **(a)** the early option ARM disclosure:
   **(b)** the extended right of rescission for failure to clearly and accurately disclose material terms as to interest rate, amount financed, payment schedules and the total cost of the loan;
   **(c)** that the loan being offered was an ARM and not a conventional loan;
   **(d)** changes in interest rate to reflect the true cost of the loan;

6

(e) any fees upon assignment or change of servicing agent;

(f) proper balances to be paid to prior lender and proper calculation of rebates.

28.    Defendants LBB and CF were also obligated to make certain additional preliminary disclosures to the Plaintiffs as to the true cost of the loan, which preliminary disclosures are required by the Federal Truth-In-Lending Act, 15 U.S.C sec. §1635 and pursuant to 12 C.F.R. (also known as and referred to herein as "Regulation Z) sec. § 226.17 and § 226.18.   These obligations included the pre-closing disclosure of all Origination Fees, Loan Discount Fees, Appraisal Fees, Lenders' Inspection Fees, Lender Doc Prep Fees, Underwriting Fees, and all other fees, otherwise known as "the true cost of the loan".

29.    On or about September 15, 2003, Plaintiffs entered into a consumer credit transaction in the form of a refinance mortgage loan secured by a mortgage through a Deed of Trust that secured repayment of the loan with the Plaintiffs' residential property.

30.    This transaction was initiated by the defendants, who were, at all times material, engaged in the regular practice of extending at least four (4) consumer credit mortgage loans per year which are subject to a finance charge and which payments were initially payable to the Defendant LBB and its assigns. A copy of the Deed of Trust is being submitted with this Third Amended Complaint; see Exhibits I, and is incorporated hereinafter by reference.

31.    As part of this consumer credit transaction, the defendants (other than Defendant CF and WHITE) had or retained a security interest in that certain residential real property consisting of the Plaintiffs' primary residence located at 9543 North Side Drive, Owings, Maryland 20736, which security interest was not created in connection with the financing of the acquisition or initial construction of the Plaintiffs' home and not by or in favor of the same creditor whose loan was being refinanced.

7

32.    Defendant LBB subsequently assigned the loan, in parsed fashion, to Defendants ALS and CMI purportedly through Defendant MERS although Defendant MERS was never the original creditor; never lent any money; was never paid any money by the Plaintiffs; and was thus never legally a secured party or the "mortgagee". The extent of any interest in the mortgage loan on the part of any of the Defendants is presently unknown and can only be made known through discovery.

33.    Defendant LBB failed to deliver all of the "material disclosures" legally required by applicable law under the circumstances, including failing to properly and accurately disclose the true nature of the loan offered, which was in fact, an Interest Only, 5/1 Option ARM; failing to disclose the amount financed; failing to disclose the true finance charge; failure to disclose the annual percentage rate; failure to accurately disclose the number, amounts, and timing of payments; and failing to disclose the total of payments.

34.    Further, Defendant LBB failed to deliver two copies of any notice of the right to rescind as to the loan actually proffered, an Interest Only, 5/1 Option Arm. Defendant LBB failed to clearly and conspicuously disclose the security interest in the Plaintiffs' principal dwelling; failed to clearly and conspicuously disclose the Plaintiffs' right to rescind the transaction; failed to clearly and conspicuously disclose to Plaintiffs how to exercise the right to rescind the transaction and provide a form which clearly indicated the address of the creditor's place of business; failed to clearly and conspicuously disclose the effect of rescission; failed to clearly and conspicuously disclose the date the rescission period expired.

35.    Additionally, the Notice of Right to Cancel provided the Plaintiff's was not for the true loan LBB was extending, an Interest Only, 5/1 Option Arm; but, was in fact, the Notice of Right to Cancel for a 30 year Conventional Fixed Rate Loan, see Exhibits, C 19.

8

36.    In addition, the alleged signature of the borrower, Plaintiff Kathleen Arnold, on the "Interest-Only Addendum to Adjustable Rate Promissory Note" see Exhibits D 7, is materially different and bears no relation to the true and authentic signature of the borrower Kathleen Arnold.  Ms. Arnold adamantly states that this is not her signature and thus upon information and belief, appears to be a forgery.

37.    Defendants and/or their agents caused to be forged the signature of plaintiff, Kathleen Arnold, to the "Interest-Only Addendum to Adjustable Rate Promissory Note" after closing. Upon information and belief this forgery was conducted for the purpose of re-characterizing the loan so that it conformed to one or more loan resale agreements, including but not limited to pooling and servicing agreements, between Defendant LBB and the third parties to whom Defendant LBB, together with Defendant MERS, sold the loan and bundle of rights there under.

38.    These aforementioned misrepresentations, material omissions, and unlawful conduct of Defendants LBB and CF caused Plaintiffs to be placed into a mortgage loan which was "materially different" from that previously disclosed and agreed to by Plaintiffs. (see exhibits C 7 through 11, all characterize the loan offered and closed to be a Conventional 30 year, fixed rate loan and not a 5/1 Option ARM Loan)

39.    In addition, defendants were grossly negligent in the reporting of monthly payment amounts made by plaintiffs. As a result of this negligence in reporting, the defendants held plaintiffs to be in default for overdue payments on the subject loan. As a result, the defendants ALS, MERS, CMI, on behalf of LBB and through their agents, substitute trustees and collection agent, attorney Defendant WHITE caused two unlawful foreclosure proceedings on or about, December 28, 2004 and again by Draper and Goldberg on June 10, 2006.

9

40.    These unlawful foreclosure proceedings were instituted even though Plaintiffs were, at all times relevant, current on their loan payments, and even overpaid on the loan, as there was a surplus in the escrow account during the foreclosure proceedings.[1]

41.    Defendants failed to respond to plaintiff's timely written QWS. The QWS was tendered due to account disputes over payoff balances, the wrongful debt purported owed, the wrongful reports of the 11 months of payments as totaling $19,190.00, misrepresentations of further defaults for three months during the pendency of Plaintiff Arnold's bankruptcy case on June 10, 2006, the wrongful reports of the 16 months of on time payments received by Defendants during said period totaling over $ 32,800.00. Defendants wrongfully obtained further funds by way of their false admissions to the bankruptcy court regarding a 6 month pre-petition averred to arrears and caused the Plaintiffs to have to pay an additional $ 15,000.00 to Defendants for said fraudulent and false statements provided to the courts and without ever having accounted for same.

42.    Defendants LBB and CF were under numerous legal obligations, including Defendant CF's obligations as a fiduciary, and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Plaintiffs received all legally required "Material Loan Disclosures" pursuant to the Truth-In-Lending Act and Regulation Z.    Defendants violated their obligations further when failing to disclose that WFHMI was retaining or misappropriating due rebates for insurances and property taxes. Defendants also misapplied Plaintiffs' timely payments and subsequently aided and abetted in the conversion of Plaintiffs' equity.

---

[1] Paying in excess of $23,000.00 from November 1. 2003 through October 1, 2004 and, under Arnold's bankruptcy Chapter 13 plan, sums totaling over $ 2,050.00 per month which payments were at all times far more than sufficient and more than timely to cure any purported "delinquency" wrongfully manufactured by the Defendants negligence.

43.    Although Defendant CMI currently continues, after timely issued notice of rescission and prior thereto, to purport to possess an interest in the servicing rights to the Note, it is unknown whether said Defendant (or any other Defendant) owned or held and/or is in actual possession of both the original Note and Mortgage.

44.    Plaintiffs' extended right of rescission was served prior to the expiration of three (3) years by Plaintiff Cotten on August 6, 2006 and upon Defendants LBB, CMI, and ALS and to the prior servicer, WFHMI, by certified mail return receipt requested and was served prior to the expiration of three (3) years following the consummation of the loan closing, September 15, 2003, and which Notice of Exercise of Extended Right of Rescission was timely based on the failure of Defendants LBB and CF to provide all proper forms and "Material Loan Disclosures". Alternatively, any disclosures which were provided were in fact materially defective.

45.    The rescission act of Plaintiff Cotten automatically applied to all borrowers, including Plaintiff Arnold, with notice of rescission being served as to "Material Disclosure" violations *"evident on the face of the loan documents"* which negates Defendants CMI and ALS claims to exemption to holder in due course, particularly as both servicers characterized the loan as being an Interest Only, 5/1 Option ARM contrary to the disclosures presented

46.    Defendants failed to comply with any of Plaintiffs' prior demands including those in the subject of the August 6, 2006 Notice of Rescission as required by 15 U.S.C sec. §1635(a)(b).

## COUNT I: VIOLATION OF THE FEDERAL FAIR DEBT AND COLLECTION PRACTICES ACT
## [AGAINST DEFENDANTS CMI AND WHITE]

47.    Plaintiffs repeat, re-allege and incorporate herein by reference the allegations set forth in the foregoing paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.    This is an action for violations of the Fair Debt Collection Practices Act ("the FDCPA" or "the Act"), 15 U.S.C. § 1692 et seq. Plaintiffs FDCPA claims are tolled as stated above with said claims relating back to Defendants December 29, 2004 unlawful order to docket foreclosure, CMI's unlawful motion to lift stay for default on June 10, 2006 and Plaintiffs' December 14, 2006 Adversary Complaint and subsequent complaints filed in and after Arnolds bankruptcy proceedings as set forth above.

49.    15 U.S.C. § 1692(a) of the Act treats assignees as debt collectors if the debt sought to be collected was in default or purported to be in default when acquired by the assignee, as is the case in this instance, therefore Defendant CMI is a debt collector for purposes of the Act.

50.    Defendant CMI acquired the debt from Defendant ALS, who purported in June of 2004 to transfer to Defendant CMI a false and manufactured arrears of Plaintiffs' loan (see Exhibit H 44, 45 & 47), ALS & CMI, statements purporting a false debt, rendering Defendant CMI further as a debt collector pursuant to FDCPA.

51.    An assignee who acquires a debt that is already in default, either for its own account or for purposes of collection, meets the definition of "debt collector"[2] Defendant WHITE is also a debt collector as defined by FDCPA; attorneys who regularly collect debts by foreclosing on real estate meet the definition of "debt collector."[3] Defendants CMI and WHITE violated 15 U.S.C. § 1692g(b) and continue to violate to date when they failed to cease collection of the debt after receiving Plaintiffs' written notification, within the thirty-day debt verification period, that notified Defendants the Plaintiffs were disputing the debt pursuant to 15 U.S.C. § 1692g(b) and that expressly states:

---

[2] Pursuant to the FDCPA, 15 U.S.C. §1692 et seq. ("FDCPA"). Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala. 1987).
[3] Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C., 214 F.3d 872 (7th Cir. 2000).

> *If the consumer notifies the debt collector in writing within the thirty-day*
> *period described in subsection (a) of this section that the debt, or any*
> *portion thereof, is disputed, or that the consumer requests the name and*
> *address of the original creditor, the debt collector shall cease collection of*
> *the debt, or any disputed portion thereof, until the debt collector obtains*
> *verification of the debt or a copy of a judgment, or the name and address*
> *of the original creditor, and a copy of such verification or judgment, or*
> *name and address of the original creditor, is mailed to the consumer by*
> *the debt collector.*

52.   Pursuant to 15 U.S.C. § 1692g(b), from December 2004 to June 2006 and even now, Plaintiffs sent defendants many letters and correspondence declaring Plaintiffs' valid and legitimate disputes of the debt, proof that plaintiffs are current and with a surplus in escrow, and challenging the validity of the purported arrears and debt.

53.   Plaintiffs exhaustively continue to provide repeated proof of no default. Despite repeated demands by plaintiffs, Defendants have continued collection of a debt even after rescission; proceeding with the illegal collection of a debt they knew or should have known was paid and proceeding further on a legally voided instrument pursuant to TILA.

54.   Defendants WHITE and CMI denied Plaintiffs' request for production of the original ink signed note and deed, proof of ownership and verification of said debt instrument despite legal obligation to comply and provide strict proof and verification of the alleged debt.

55.   Defendants CMI and WHITE were required to cease all debt collection efforts immediately upon receiving sufficient proof of payments made and copies of the rescission notice and proof of mailing of said. Defendants repeatedly ignored Plaintiffs' correspondence and proceeded to initiate an unlawful foreclosure proceeding against Plaintiffs' property on two occasions.

56.   Upon proper dispute of the debt, Plaintiffs were entitled to grace period provided by 15

U.S.C sec. 1692g (a). McDaniel v South & Assocs., P.C. (2004, DC Kan) 325 F. Supp.2d 1210.    Said Defendant attorneys in <u>McDaniel</u>, like the attorney Defendants herein, violated 15 U.S.C. § 1692g(b), part of FDCPA, 15 U.S.C. §§ 1692 et seq., by filing foreclosure actions against debtors before expiration of 30-day grace period provided by 15 U.S.C. §1692g(a) and by continuing with foreclosure actions after debtors requested due verification of the purported debt as same here in this complaint.

57.    Defendants CMI and WHITE failed to provide Plaintiffs the verification of the debt. CMI in consort with trustees, WHITE and agents, knowing no arrears existed, egregiously and willfully scheduled the foreclosure sale to take place on February 15, 2005 forcing Plaintiff Arnold to have need and cause to file for bankruptcy protection in order to halt the attempted unlawful sale of the Plaintiff's property though the loan was not in default.

58.    CMI and WHITE, by their action of collecting on a debt not legally due and owed, specifically violated the prohibitions of the FDCPA that precludes the addition of attorney's fees and servicing expenses further not authorized under TILA, FDIC Regulation Z, or by law or contract pursuant to, 15 U.S.C §§1692e(2)(B), U.S.C. §§1692f(1). As such, the Defendants' actions were in violation of law.

59.    Defendants CMI and WHITE routinely violated, in correspondence with the Plaintiffs, the FDCPA Miranda notification requirements pursuant to 15 U.S.C. §1692e(11) and §1692g.

60.    The FDCPA prohibits collection practices that are misleading, (15 U.S.C. §1692e, as they were here in the Plaintiffs case), unfair (as they were in the Plaintiffs' case herein, 15 U.S.C. §1692f), and are for the sole purpose of harassing and abusing the Plaintiffs as they clearly did here. The filing of the unlawful foreclosures against Plaintiffs, were

14

intended to and did, impair Plaintiffs' credit and property, and were executed with the sole purpose to extort money and property from the plaintiffs and were with the intent to harass the Plaintiffs pursuant to 15 U.S.C. §1692d.

61.    Defendants engaged in harassing, abusive and unlawful collection tactics by sending agents, correspondence and calling the Plaintiffs' home and work places at a frequency and intensity intended to harass the Plaintiffs, as it did, and, in making fraudulent reports intended to cause harm to the Plaintiffs as they did, when reporting inaccurate payment history to credit reporting agencies, pursuant, 15 U.S.C. §1692(e)(8) and when reporting Defendants false claims of arrears against Plaintiffs' previous good credit.

62.    Most egregiously, Defendants violated FDCPA prohibited collection practices upon their filing two unlawful foreclosure actions against Plaintiffs' home causing a sale date of February 15, 2005 and again filing their second unlawful foreclosure action on June 10, 2006 in their motion for relief from Arnold's bankruptcy stay. Both actions, and as Defendants knew at all times, were devoid of legitimacy and delinquency because all payments were in fact pre-paid. Defendants' conduct is reprehensible and is an abuse of the courts, laws and due process and were at all times to meet Defendants' selfish ends of greed, self enrichment and attempting to extort, by force, the Plaintiffs' real property, money and equity, doing so by fraudulent means to which there is no legal purpose upon filing false foreclosure actions against Plaintiffs residential property, a sham tactic designed to rid and scare Plaintiffs from their home or, even worse yet, have them evicted by force, devoid of legitimate cause.

63.    Due to the stated, repeated and continuing violations of the FDCPA, Plaintiffs are entitled to actual and statutory damages under 15 § U.S.C. 1692k.

**WHEREFORE**, Plaintiffs demand the entry of Final Judgment in their favor for statutory damages, actual damages, punitive damages, enhanced damages and attorney fees to be assed at trial and all or any other further relief which is deemed by these courts as just and proper.

## COUNT II: VIOLAITONS OF TRUTH IN LENDING ACT, 15 U.S.C. SECTION 1601 *et seq.* [AGAINST DEFENDANTS LBB, CMI, and ALS]

64.  Plaintiffs repeat, re-allege and incorporate herein by reference the allegations set forth in the foregoing paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.  The consumer credit transaction, the subject hereof, was subject to the Plaintiffs' extended three (3) year right of rescission as prescribed by 15 U.S.C. sec. §1635(a)(f), §1641, §1640(a), and Regulation Z. sec. § 226.23.

66.  In the course of this consumer credit transaction, Defendants LBB and CF violated 15 U.S.C. sec. §1631, §1632 and Regulation Z sec. § 226.23(b) by failing to deliver to the Plaintiffs two copies of a notice of right to rescind which:

**(a) identified the true transaction being consummated;**

**(b) clearly and conspicuously disclosed the security interest in the Plaintiffs' principal dwelling as to the loan actually being consummated;**

**(c) clearly and conspicuously disclosed the Plaintiffs' right to rescind the actual transaction being consummated;**

**(d) clearly and conspicuously disclosed how to exercise the right to rescind the transaction actually being consummated, with a form for that purpose, designating the address of the creditor's place of business;**

**(e) clearly and conspicuously disclosed the effects of rescission of the loan actually being consummated; and**

**(f) clearly and conspicuously disclosed the date that the rescission period for the loan actually being consummated expired.**

67.    In the course of this consumer credit transaction, Defendants LBB and CF failed to deliver all "material disclosures" as required by the "Act" and Regulation Z, including the following:

**(g) failing to properly and accurately disclose the "amount financed" as defined and required by and in violation of 15 U.S.C. sec. §1638(a)(2)(A) and Regulation Z, sec. § 226.18(b);**

**(h) failing to clearly and accurately disclose the "finance charge" as defined and required by and in violation of 15 U.S.C. sec. §1638(a)(3) and Regulation Z, sec. § 226.4 and § 226.18(d);**

**(i) failing to clearly and accurately disclose the "annual percentage rate" as defined and required by and in violation of 15 U.S.C. sec. §1638(a)(4) and Regulation Z, sec. § 226.18(e);**

**(j) failing to properly disclose the number, amounts, and timing of payments scheduled to repay the obligation as required and defined by and in violation of 15 U.S.C. sec. §1638(a)(6) and Regulation Z, sec. § 226.18(g); and**

**(k) failing to clearly and accurately disclose the "total of payments" as required and defined by and in violation of 15 U.S.C. sec. §1638(a)(5) and Regulation Z, sec. § 226.18(h).**

68.    Plaintiffs have a continuing right to rescind the transaction until the third business day after receiving both the notice described above and all "forms and material" disclosures described pursuant to 15 U.S.C. sec. §1638, §1639 and Regulation Z, sec. § 226.23(a)(3), or, up to three years after consummation of the transaction, the case here, or longer if foreclosure is instituted.

69.    On August 6, 2006, Plaintiffs rescinded the transaction by sending a Notice of Rescission to the Defendants by U.S. Mail, postage prepaid, certified returned receipt requested. Defendants were to comply with the rescission no later than August 28, 2006. Defendants, however, did respond on August 23, 2006 with notice of denial.

70.    Plaintiffs' right to rescind for "Material Disclosure Violations" is evident on the face of the loan documents. Defendants failed to comply as mandated under TILA.

17

71.  Defendants acted as creditors who regularly engaged in the making of mortgage loans, payable by agreement in more than four installments or for which payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise. Accordingly, Defendants are subject to the *Truth in Lending Act* ("TILA"), 15 U.S.C. Sec. §1601 *et seq.*, and its implementing regulations, federal reserve *Board Regulation Z*, 12 C.F.R. Sec. § 226.

72.  Defendants acquired an interest in Plaintiffs' home that secures payment or performance of an obligation (see Exhibits I).

73.  In the course of the consumer credit transactions described above, Defendants violated the disclosure and rescission requirements of *TILA* and *Board Regulation Z* in the following and other respects:

   a.  By failing to disclose properly and accurately the amount financed, in violation of 15 U.S.C. Sec. §1638(a)(2) and 12 C.F.R. Sec. § 226.18(b);

   b.  By failing to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C. Sec. §1638(a)(3) and 12 C.F.R. Sec. § 226.18(d) and § 226.4;

   c.  By failing to disclose U.S.C. Sec. §1638(a)(4) and 12 C.F.R. Sec. § 226.18(e);

   d.  By failing to disclose properly and accurately the "total of payments" in violation of 15 U.S.C. Sec. §1638(a)(5) and 12 C.F.R. Sec. § 226.18(h);

   e.  By failing to disclose properly and accurately the "annual percentage rate" and the number, amount, and due dates or period of payments scheduled to repay the obligation in violation of 15 U.S.C. Sec. §1638(a)(6) and 12 C.F.R. Sec. § 226.18(g);

   f.  By failing to disclose that a security interest was taken in the subject property in violation of 15 U.S.C. sec. §1638(a)(9) and 12 C.F.R. Sec. § 226.18(m);

   g.  By failing to provide two copies of the notice of the right to rescind noting the disclosures provided were for a Conventional, Uninsured Loan and not

defendants purported Option ARM 5/1 loan and therefore pursuant of 15 U.S.C. Sec. §1635 and 12 C.F.R. Sec. § 226.23(b);

h.   By failing to return to Plaintiffs "any money or property given as earnest money, down payment or otherwise," and failing to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction" when Plaintiffs requested rescission of the mortgage, in violation of 15 U.S.C. Sec. § 1635(b) and 12 C.F.R. Sec. § 226.23(d).

74.   The above violations of the TILA provide Plaintiffs an extended right to rescind the loan held by the Defendants pursuant to 15 U.S.C. Sec. §1635 & §1641(d)(1) and 12 C.F.R. Sec. § 226.23, rescission was issued timely.

75.   Defendants are liable to the Plaintiffs for: (a) the return of any money or property that has been given to anyone in connection with the transaction and the termination of Defendants' security interests in the property; (b) actual damages in an amount to be determined at trial; (c) statutory damages as provided by 15 U.S.C. Sec. §1640; (d) costs and disbursements; and (e) attorneys fees.   As a result of the violation of the "Act" and Regulation Z by the Defendants for their mandatory requirement to rescind the loan pursuant to sec. 125(a) and 130(a) of TILA 15 U.S.C. sec. §1635(a)(f), §1640(a), and §1641(c),

76.   Defendants are thus liable to the Plaintiffs for:

1. rescission of the transaction;

2. termination of any security interest in Plaintiffs' property created by the transaction;

3. return of any money given by the Plaintiffs to anyone, including the Defendants, in connection with the transaction;

4. treble the finance charge in connection with the transaction; and

5. reasonable attorneys' fees.

19

WHEREFORE, Plaintiffs request the entry of Final Judgment in their favor for rescission of the September 15, 2003 transaction; an Order commanding the Defendants to undertake all actions necessary to terminate any security interest in the Plaintiffs' property created under said transaction or as a result of the transaction and that the Court declare all such security interests void including but not limited to the Note and Deed of Trust related to the transaction of September 15, 2003; an Order commanding the return to the Plaintiffs of any money given by the Plaintiffs to anyone, including any of the Defendants, in connection with the transaction; an Order enjoining the Defendants, during the pendency of this action and permanently thereafter, and from instituting, prosecuting, or maintaining any foreclosure proceedings as to the Plaintiffs' property, from recording any deeds of trust, or mortgages regarding the property or from otherwise taking any measures to deprive the Plaintiffs from ownership of that property; awarding Plaintiffs all statutory damages for their failure to comply with the rescission requirements under the "Act" and provided by the Act for each violation of the Act by the Defendants; awarding Plaintiffs all of their costs and reasonable attorneys' fees as provided by 15 U.S.C. sec. §1640(a); and for such other and further relief which the Court deems just and proper.

## COUNT III: AIDING AND ABETTING FRAUD
## [AGAINST ALL DEFENDANTS]

77.    Plaintiffs repeat, re-allege and incorporate herein by reference the allegations set forth in the foregoing paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.    Defendants worked in consort and tandem together with each and were further aided with the assistance of their agents and employees to commence the felonious "bait, switch and

forgery scheme" against the consumer Plaintiffs and their property.

79.    At all times relevant hereto, Defendants by and through their affiliates, divisions, enterprises, representatives, employees and agents, knowingly and willfully aided and abetted the unlawful "bait, switch and forgery scheme".

80.    Defendants' actions were taken with full knowledge and acceptance of the fraudulent scheme that enabled Defendants CF to be paid a higher than normal commission for their role and part in the scheme; Defendants WFHMI obtained and retained income from due rebates of insurances taxes and unapplied principal and interest payments from the equity in Plaintiff's real property and to which, they were not legally or contractually due and owed; Defendant WHITE was to be paid fees for an unnecessary and unlawful foreclosure proceedings, despite there being no default or cause for said services; Defendants LBB, ALS, CMI, and MERS took a security interest in Plaintiffs' property and collected other fees and income from acceptance of scheme.

81.    Defendants aided and abetted each other in the scheme to defraud Plaintiffs by providing substantial assistance to each Defendant. This substantial assistance included, among other things: (a) each Defendant's willful acceptance of settlement funds which all said Defendants knew had been obtained by fraudulent means from Plaintiffs by Defendants WFHMI, through and with the assistance of their agents and employees and, accepting the fraudulent loan documents, which on the face of these documents disclosed frauds and violations; (b) by providing funding sources as did LBB and encouraging subpar title and underwriting standards; (c) by failing to conduct adequate due diligence before securing a mortgage on Plaintiffs' property which directly resulted in defendants obtaining title to Plaintiffs' property by felonious and unlawful means.

21

82.   Defendants obtained constructive and actual knowledge of the fraudulent "bait, switch and forgery scheme", (a) by their direct and active participation in this scheme against the plaintiffs. Proof of which is, included but not limited to the four (4) varying payment amounts stated and billed by all defendants at some time or other during the life of this loan. Here the plaintiffs amazingly ended up with four (4) first payment letters, stating four (4) varying monthly sums to be paid to two (2) varying creditors; and (b) the title policy issued by Stewart Title Group; and (c) the payoff balance subsequent to the LBB loans as all Defendants had cause to know the payoff balance was overstated and included interest due to be rebated; (d) the fact the disclosures cited above, disclosed a conventional loan however, the forged 5/1 ARM note disclosed a loan contrary to what was disclosed; (e) the fact the two notes, 1 forged, disclosed different loan terms to which all defendants had cause to further know.

83.   As a direct and proximate result of said aiding and abetting, Plaintiffs suffered serious injury and damage.

84.   Without substantial assistance, involvement, and participation of all Defendants named herein, the fraudulent "bait, switch and forgery scam" would not have been possible, and could not of been allowed to continue during the collection of a debt not due and owed and for not without Defendant CMI and White's affirmations made under oath, legitimizing and swearing to the existence of arrears that quite simply never existed and for which they are thus liable to Plaintiffs for injuries sustained.

85.   The Defendants' said acts of aiding and abetting renders unenforceable any security interest Plaintiffs were fraudulently induced to transfer to Defendants LBB and their assigns.

22

86.    Defendants are liable to Plaintiffs for: (a) actual damages; (b) punitive damages, (c) costs and disbursements; and (d) attorneys' fees.

   **WHEREFORE**, Plaintiffs respectfully request: Judgment in the amount of actual damages and punitive damages, interest, costs and attorney's fees and all other relief this court may deem due and proper and to be determined at trial of these facts.

## COUNT IV: RESPA SERVICER VIOLATIONS SECTION 6, 12 U.S.C. § 2605(e) [AGAINST DEFENDANTS ALS, CMI AND WFHMI]

87.    Plaintiffs repeat, re-allege and incorporate herein by reference the allegations set forth in the foregoing paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.    Defendants ALS, CMI and WFHMI are servicers of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act, RESPA, Sec. 6, 12 U.S.C. § 2605(i)(2)-(3).

89.    This action for RESPA, Section 6, 12 U.S.C. § 2605(f) servicing violations has been timely brought within the three years allowed plaintiffs to bring said action noted in the above of this Fourth Amended Complaint, these claims relate back to the December 29, 2004 fraudulent filing of foreclosure and December 14, 2006 Adversary Complaint filed by Plaintiff Cotten in Plaintiff Arnold's bankruptcy case and other cases filed thereafter and as noted.

90.    Plaintiffs provided all Defendants countless qualified written requests that included WFHMI, (QWRs), seeking information regarding the WFHMI inflated principal payoff balance (see Exhibits H 21 & 22, QWS), and pursuant to 24 C.F.R. §3500.21(e)(ii), information as to due rebates for insurances, taxes and escrows questioning their failure to credit or bring said forward on the HUD-1 (see Exhibits C 8 & 9 and Exhibits A 6, reflects the payoff balance should have been over $ 6,000.00 less than WFHMI charges,

these overcharges resulted in not only a theft of plaintiffs equity, they created and caused

further, "Material Disclosures" making them otherwise not given). Egregiously, WFHMI

accessed Plaintiffs' checking account thru the payoff wire provided by way of principal

payoff payment on September 19, 2003 and, on September 24, 2003, WFHMI, unlawfully

used Plaintiffs checking account information contained in the wire to extort and

misappropriate from Plaintiffs' account an additional $1,192.00, in addition to sums paid

off by the LBB loan and mortgage payments not further due because of said. Defendants

failed to credit or reimburse the fraudulent charge notwithstanding further the fact

Plaintiffs had never set up automatic monthly debts of their mortgage payment with

WFHMI.

91.    The payoff balance to Defendant WFHMI should have been far less than the $135,090.00

provided from WFHMI payoff statement and represented excessive sums stolen and

extorted from the Plaintiffs upon the refinancing of their loan making the payoff balance

inflated, reflecting only an extremely modest and nominal principal reduction of

$ 2,866.00.

92.    Their felonious acts further failed to property represent all payments of principal and

interest due to be applied to the principal balance over the course of five years of more

than timely payments on plaintiffs fixed rate, 7%, 30 year conventional mortgage with an

initial balance of $137,956.00.

93.    Defendants WFHMI, ALS and CMI were questioned repeatedly through Plaintiffs' QWS

as to their extortive loan servicing tactics, failure to credit all payments and timely

payments and ALS and CMI continued billing and charging of unauthorized PMI.

94.    Defendants ALS and CMI held Plaintiffs' timely payments in a suspense account,

fees not disclosed such as PMI (see Exhibits C 8 & 9, where PMI was charged however ALS confirms PMI was not disclosed. ALS, contrary to forged documents that were backdated to September 15, 2003, confirms they were never party to the closing of the loan and *"only acquired"* the loan as of September 30, 2003). As such, by defendants purported first payment and escrow letters (see Exhibit E 5, 7 and E 8), LBB purported to make individual PMI disclosure, which are forged and fraudulent and can only be attributed to defendants illegal acts and the means implemented to meet said ends.

95.    Plaintiffs demanded and were due at all times relevant hereto an accounting of payments and charges and correction of Defendants' onerous and fraudulent charges through numerous "QWR" within the meaning of RESPA.

96.    CMI never replied to any QWR and continues to violate RESPA. ALS replied once to the many QWS sent them from November 2003 through their transfer of plaintiffs loan to CMI in July of 2004. Both Defendants reported negative information in violation of QWS requirements causing the destruction of Plaintiffs' credit, and hence denied Plaintiffs the opportunity to escape their extortive, undisclosed predatory loan through re-finance.

97.    WFHMI simply ignored plaintiffs request for said accounting of their mortgage account in violation of 12 U.S.C. § 2605(e), with Plaintiffs being provided nothing more than manufactured statements which were incomplete and missing significant portions of the Plaintiffs' payment history.

98.    Plaintiffs have been damaged as a proximate result by the Defendants' failure to comply as required by RESPA.

**WHEREFORE,** Plaintiffs request the entry of Judgment in the amount of actual damages, enhanced damages, interest, costs and attorney's fees and all other relief this court may deem due and proper and to be determined at trial of these facts.

## COUNT V: CIVIL CONSPIRACY [AGAINST ALL DEFENDANTS]

99.    Plaintiffs repeat, re-allege and incorporate herein by reference the allegations set forth in the foregoing paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    Defendants agreed, between and among themselves, to accomplish several unlawful acts, including intentionally providing Plaintiffs with "none disclosures" which were, and intended to be, misleading, improper, and incomplete as to the actual loan being consummated; calculated placement of Plaintiffs into a loan program which they did not want. Defendants did so through employing a variety of felonious, extortive tactics, that included, fabrication of loan documents by forgery, alteration of records and loan documents and all frauds executed in completing said plan to its ends. Defendants manufactured false information intended to, and did, deceive through use and means to accomplish an act, not in and of itself illegal, but with the acts and means employed resulting in significant harm and damages to the Plaintiffs, as happened here.

101.    Defendants LBB, CF and WFHMI engaged in overt acts in furtherance of the conspiracy necessary to set the conspiracy in motion. Defendants WHITE, MERS, ALS, and CMI, have engaged in acts in furtherance of the conspiracy to accomplish its ends and, which actions have resulted in damages to the Plaintiffs, and which include, the institution of two sham foreclosure actions and continued threats of foreclosure, fraudulently reporting negative consumer credit information about Plaintiffs to credit reporting agencies as stated above and egregiously so doing in failing to report timely payments, filing fraudulent foreclosures in all courts and commencing sham default collection actions

when no default existed and that was and is devoid of legal standing stemming from timely payments and the rescission whereupon they assert rights they no longer have.

102.  Defendants and their acts were interrelated and could not have been accomplished without participation of all Defendants, as:

  a. Defendant LBB was a "lender" but was not a loan servicer possessed with the right, under the circumstances of assignment of servicing rights, to declare a default or institute a foreclosure;

  b. Defendant CF was a mortgage broker who had the Plaintiffs execute the loan documents but was not a lender or loan servicer possessed with the right to declare a default or institute a foreclosure;

  c.  Defendant MERS was an assigning entity as to one or more rights under the loan documents but was not a lender and did not, under circumstances of multiple assignments, possess the rights to declare a default or institute a foreclosure;

  d.  Defendant ALS and CMI, although the "interim" loan servicers, were not ever the lenders and did not posses, under multiple assignments and said circumstance, rights to ever declare a default or institute a foreclosure at any time material;

  e.  Defendant CMI and WHITE, both debt collectors, could never bring the foreclosure without the aiding and abetting of each other.  Furthermore, CMI, by subsequent assignee of servicing rights, lacked the right to declare a foreclosure to which said right, was only available because of the assignment from Defendant ALS and who had obtained such rights from Defendant LBB; and

  f.  Defendant WFHMI, the former servicer subject to the Lehman loan, had worked at all times relevant thereto, in consort with LBB, CF and ALS and their

agents, reaping great financial rewards from said role in the conspiracy of overstatement of the principal loan payoff balance through failing to properly credit rebates, deposits and principal and interest payments.

103. As a direct and proximate result of all defendants actions in and in the course of conduct of all Defendants and which was planned, designed and orchestrated through illegal acts designed to accomplish a legal act by unlawful means through the commission of overt acts of furtherance of a conspiracy to defraud the Plaintiffs, Plaintiffs have suffered irreparable and untold or accounted damages and further, meet and satisfy requirements for pleading a cause of action for civil conspiracy as it relates to TILA, FDCPA and further under applicable Maryland decisional law.[4]

104. All Defendants agreed between and among themselves to engage in the conspiracy to defraud Plaintiffs for common purposes of accruing economic gains for themselves at the expense of, and detriment to the Plaintiffs.

105. Defendants committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs as guaranteed by law.

106. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand the entry of Final Judgment in their favor for compensatory damages, punitive damages, interest, any attorney fees which may be awarded and assessed at trial, and all or any other further relief which is deemed by these courts as just and proper.

## COUNT VI: EQUITABLE ESTOPPEL

---

[4] See, e.g., Hoffman v. Stamper, 385 Md. 1, 24, 867 A.2d 276, 290 (2005), citing Green v. Wash. Sub. San. Comm'n., 259 Md. 206, 221, 269 A.2d 815, 824 (1970).

107.  Plaintiffs repeat, re-allege and incorporate herein by reference the allegations set forth in the foregoing paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.  Defendants are estopped from asserting the statute of limitations as an affirmative defense against the plaintiffs due to the defendants own fraudulent concealment of wrongdoings.

109.  Where defendants or its agents, predecessors in interest acted as lender, loan broker, and servicer of loan. Plaintiffs reasonably and justifiably relied on the Defendants fiduciary and agency obligations to disclose the true nature of this unlawful transaction.

110.  Defendants had actual or constructive knowledge that their conduct was deceptive in that they consciously concealed their scheme to defraud set forth herein.  These practices are repugnant to state and federal law as well the Defendants agency and fiduciary duties.

111.  The purpose of the statute of limitations period are satisfied because the defendants cannot claim prejudice due to a late filing wherein the plaintiffs filed suit promptly upon discovering essential facts that give rise to the claims described herein, which the defendants knowingly and willfully concealed.

## VII: RELIEF SOUGHT

**WHEREFORE**, having set forth the above-described sufficient causes of actions against the Defendants, Plaintiffs pray for the entry of Final Judgment against all Defendants jointly and severally canceling the Note and Mortgage and rescinding the residential mortgage transaction pursuant to TILA, Regulation Z, the subject of this action; for damages in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial; an award of three times the amount of actual damages sustained; for costs and attorneys' fees; for declaratory relief as set forth above; that the Court find that the transactions, the subject of this action be void and

any further foreclosure proceedings be permanently enjoined; and for any and all other and further relief which is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all matters set forth herein, as a matter of right.

Respectfully submitted,

_Kathleen Arnold_
Kathleen Arnold
(Pro Se Plaintiff)

_Timothy A. Cotten_
Timothy A. Cotten
(Pro Se Plaintiff)

## CERTIFICATE OF SERVICE

THE UNDERSIGNED, Pro Se Plaintiffs, HEREBY CERTIFIES that a true and correct copy of the foregoing FOURTH AMENDED CORRECTED COMPLAINT has been served upon the following on this 19th Day of August, 2009 through certified mail:

David M Souders, Esq.
Attorney for Defendants CMI, LBB, ALS, WHITE and MERS
1300 19th Street NW, 5th Floor
Washington, DC 20036

John H. Harman, Esq.
Attorney for Defendant CF
8905 Fairview Road, Suite 600
Silver Spring, Maryland 20910

Mark S. Devan & Thomas P. Dore, Esq.
Attorney for Wells Fargo Home Mortgage Inc.
606 Baltimore Avenue, Suite# 302
Towson, MD 21204