## EXHIBIT E
### (Motion to Dismiss)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

KATHLEEN ARNOLD, *et al.*,

      Plaintiffs,

      v.

CITIMORTGAGE, INC., *et al.*,

      Defendants.

Civil Action No.:  8:07-CV-02617 (RWT)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
CITIMORTGAGE, INC., LEHMAN BROTHERS BANK, F.S.B., AURORA LOAN SERVICES,
LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND SAMUEL I.
WHITE, P.C.'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT**

Respectfully submitted,

WEINER BRODSKY SIDMAN KIDER PC

By:    /s/ David M. Souders
      David M. Souders (Bar No. 15102)
      Bruce A. Alexander (Bar No. 0287)
      Sandra B. Vipond (Bar No. 15761)
      1300 Nineteenth Street, NW, Fifth Floor
      Washington, DC  20036
      (202) 628-2000 (telephone)
      (202) 628-2011 (facsimile)

      Attorneys for Defendants CitiMortgage, Inc., Lehman
      Brothers Bank, F.S.B, Aurora Loan Services, LLC,
      Mortgage Electronic Registration Systems, Inc., and
      Samuel I. White, P.C.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ..............................................................................................1

FACTUAL ALLEGATIONS ............................................................................2

LEGAL STANDARD.........................................................................................3

ARGUMENT......................................................................................................4

    I.      PLAINTIFFS' FDCPA CLAIM MUST FAIL .........................................4

          A.     CMI Is Not A Debt Collector.......................................................4

          B.     Plaintiffs' FDCPA Claim Is Barred By The Statute Of
                Limitations ....................................................................................5

    II.     PLAINTIFFS' TILA CLAIM MUST FAIL ...........................................6

          A.     Plaintiffs' Claim For TILA Damages is Barred by the
                Statute of Limitations....................................................................7

          B.     Plaintiffs' Rescission Claim Under TILA Is Also Time-Barred . 7

          C.     Plaintiffs Fail To State A Claim Under TILA ...............................9

    III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER RESPA...............11

    IV.   PLAINTIFFS' AIDING AND ABETTING FRAUD AND CIVIL
          CONSPIRACY CLAIMS MUST FAIL .................................................13

          A.     Plaintiffs Fail To Plead Fraud With The Requisite
                Particularity.................................................................................13

B.     Plaintiffs' Claims Are Barred By the Statute Of

Limitations ................................................................................15

V.    PLAINTIFFS' CLAIM FOR EQUITABLE ESTOPPEL

MUST FAIL..........................................................................................16

CONCLUSION...............................................................................................17

## TABLE OF AUTHORITIES

Page(s)

CASES

*Adams v. NVR Homes, Inc.*,
    193 F.R.D. 243 (D. Md. 2000)..................................................................14

*Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*,
    340 Md. 176, 665 A.2d 1038 (1995) ..................................................13

*Ashcroft v. Iqbal*,
    556 U.S. ___, 129 S. Ct. 1937 (2009)..........................................3, 12

*Bausch v. Philatelic Leasing, Ltd.*,
    728 F. Supp. 1201 (D. Md. 1989)................................................15

*Beach v. Ocwen Federal Bank*,
    523 U.S. 410 (1998)...................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)........................................3

*Collins v. FMHA-USDA*,
    105 F.3d 1366 (11th Cir. 1997) ................................................10

*Fare Deals Ltd. v. World Choice Travel.com, Inc.*,
    180 F. Supp. 2d 678 (D. Md. 2001) .........................................3

*Faulkner Advertising Assocs. v. Nissan Motor Corp.*,
    945 F.2d 694 (4th Cir. 1991) ...............................................3, 12

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) .................................................14

*In re Community Bank of Northern Virginia*,
    418 F.3d 277 (3d Cir. 2005)....................................................8

*In re Smith*,
    737 F.2d 1549 (11th Cir. 1984) ..............................................8

*Johnson v. Nadwodny*,
    55 Md. App. 227, 461 A.2d 67 (1983).....................................15

*Jones v. Saxon Mortgage, Inc.*,
    537 F.3d 320 (4th Cir. 1998) ..................................................8

*Madura v. Countrywide Home Loans, Inc.*,
    No. 8:06-cv-2073, 2008 WL 2856813 ........................................................................8

*Miller v. Pac. Shore Funding*,
    224 F. Supp. 2d 977 (D. Md. 2002) ........................................................................3

*Mullinax v. Radian Guaranty Inc.*,
    311 F. Supp. 2d 474 (M.D.N.C. 2004) ....................................................................16

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ................................................................................................4

*Proctor v. Metropolitan Money Store Corp.*,
    No. RWT-07-1957, 2009 WL 2516361 (D. Md. Aug. 13, 2009) ............................16

*Ramos v. CitiMortgage, Inc.*,
    No. 2:08-cv-02250, 2009 WL 86744 (E.D. Cal. Jan. 8, 2009) ..............................8

*Smith v. Fidelity Consumer Discount Co.*,
    898 F.2d 896 (3d Cir. 1990) ..................................................................................8

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
    71 F.3d 119 (4th Cir. 1995) ..................................................................................16

*Thomas v. Wells Fargo Bank, N.A.*,
    Nos. 07-16445, 08-0030, 2008 WL 5412113 (Bankr. E.D. Pa. Oct. 17, 2008) ........8

STATUTES AND REGULATIONS

Real Estate Procedures Act ("RESPA")

12 U.S.C. § 2601 ................................................................................................11

12 U.S.C. § 2605(e) ........................................................................................2, 12

12 U.S.C. § 2605(e)(1)(B) ................................................................................13

Truth in Lending Act ("TILA")

15 U.S.C. § 1601 ................................................................................................6

15 U.S.C. § 1602(u) ..........................................................................................9

15 U.S.C. §1602(w) ..........................................................................................10

15 U.S.C. § 1635(a) ......................................................................................7, 8, 9

15 U.S.C. § 1635(f) .................................................................................................8

15 U.S.C. § 1638 .................................................................................................10

15 U.S.C. § 1638(B)(2) .......................................................................................10

15 U.S.C. § 1640 ...................................................................................................7

15 U.S.C. § 1640(e) ...............................................................................................7

Fair Debt Collection Practices Act ("FDCPA")

FDCPA, Comment 803(6)-4(f) ..............................................................................4

15 U.S.C. § 1692 ...................................................................................................4

15 U.S.C. § 1692a(6) .............................................................................................4

15 U.S.C. § 1692a(6)(F)(iii) ..................................................................................4

15 U.S.C. § 1692(e) ...............................................................................................6

15 U.S.C. § 1692(f) ...............................................................................................6

15 U.S.C. § 1692(g) ...............................................................................................6

15 U.S.C. § 1692g(a) .............................................................................................5

15 U.S.C. § 1692g(b) .............................................................................................5

15 U.S.C. § 1692k(d) .............................................................................................5

Regulation Z

12 C.F.R. § 226.2(24) ..........................................................................................10

12 C.F.R. § 226.17(b) ..........................................................................................10

12 C.F.R. § 226.23 .................................................................................................9

12 C.F.R. § 226.23(b)(1) .....................................................................................11

12 C.F.R. § 226.23(b)(2) .....................................................................................11

RULES

Fed. R. Civ. P. 9(b) .........................................................................................14, 16

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 3, 6

Md. Cts & Jud. Proc. Code Ann. § 5-101 ..................................................................15

## **INTRODUCTION**

Plaintiffs Kathleen Arnold and Timothy A. Cotten (collectively, "Plaintiffs") obtained a mortgage loan to refinance their existing loan in September 2003. Plaintiffs received loan documents and federally mandated disclosure statement prior to closing. Within three business days of closing, Plaintiffs had the opportunity to review those documents and cancel their loan for any reason. Plaintiffs did not exercise their right to rescind their loan, and instead chose to keep their loan. Now, six years later, Plaintiffs are pursuing this action, and seeking, among other things, rescission of their mortgage loan. Plaintiffs are too late.

As explained in more detail below, each of the six counts of Plaintiffs' Fourth Amended Complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted as against the moving defendants, CitiMortgage, Inc. ("CMI"), Lehman Brothers Bank, F.S.B. ("Lehman"), Aurora Loan Services, LLC ("Aurora"), Mortgage Electronic Registrations Systems, Inc. ("MERS"), and Samuel I. White, P.C. ("White") (collectively referred to hereinafter as "Defendants"). The gist of Plaintiffs' claims is that Defendants, not Plaintiffs, are responsible for Plaintiffs' subsequent inability to afford their loan because each Defendant was allegedly involved in a "bait, switch and forgery scheme" that resulted in Plaintiffs receiving a loan that they did not want. Plaintiffs' claims, however, fall far outside the bounds of the applicable statutes of limitations. Moreover, there are other pleading deficiencies that render each claim otherwise unsustainable. Accordingly, the Court should find that Plaintiffs have failed to state any claim upon which relief can be granted and dismiss the Fourth Amended Complaint in its entirety as against Defendants.

## FACTUAL ALLEGATIONS

For purposes of this motion only, Defendants accept the following factual allegations as true: Plaintiffs obtained a refinance loan from Lehman that closed on September 15, 2003.  Fourth Am. Compl. ¶¶ 13, 20, 29.  Plaintiffs admit they received certain loan documents, including the final Truth-in-Lending Act ("TILA") disclosure statement and Notice of Right to Cancel, prior to the closing.  *Id.* ¶¶ 22, 25, 35.  Although Plaintiffs executed a Note and Deed of Trust at the closing, *id.* ¶ 29, Plaintiffs allege that various loan documents, including an Interest Only Addendum to Adjustable Rate Promissory Note "appear" to have been forged after the loan closing, *id.* ¶¶ 36, 37, 100.  In addition, Plaintiffs complain that the initial monthly payment amount on the preliminary TILA disclosure statement varied from the final TILA disclosure statement they received prior to closing, *id.* ¶¶ 22.  Moreover, Plaintiffs claim that they were led to believe the monthly payment amount provided on their TILA disclosure statement included escrowed amounts for taxes and insurance.  *Id.* ¶¶ 25-26.  According to plaintiffs, Aurora serviced Plaintiffs' loan until July 1, 2004, when CMI acquired servicing.  *Id.* ¶ 50 and Pls.' Ex. H-44.  Almost immediately after the loan closed, however, Plaintiffs allegedly began requesting information regarding their account from various Defendants, including Aurora, CMI and White.  *See Id.* ¶¶ 52, 96.  Plaintiffs state that Aurora and CMI failed to respond to "countless qualified written requests" made pursuant to 12 U.S.C. § 2605(e).  *Id.* ¶ 90.  In February 2005 and again in June 2006, CMI allegedly referred the loan to foreclosure counsel.  *Id.* ¶¶ 57, 62.  White allegedly handled the first foreclosure sale.  *Id.*  Finally, on or about August 6, 2006, Plaintiffs claim they rescinded their loan by sending notice to Lehman, CMI and Aurora by certified mail.  *Id.* ¶ 69.  With regard to the foregoing events, Plaintiffs allege that all Defendants "worked in consort and tandem together with each and were further aided with the assistance of their agents and employees to

commence the felonious 'bait, switch and forgery scheme' against the consumer Plaintiffs and their property." *Id.* ¶ 78. According to Plaintiffs, they were not given the loan that they wanted. *Id.* ¶ 100.

Based on these allegations, Plaintiffs have filed a six-count Fourth Amended Complaint claiming: Count I – Violation of the federal Fair Debt and Collection Practices Act; Count II – Violations of the federal Truth in Lending Act; Count III – Aiding and Abetting Fraud; Count IV – Violations of the federal Real Estate Settlement Procedures Act; Count V – Civil Conspiracy, and Count VI – Equitable Estoppel. Each of these counts must be dismissed for the reasons explained below.

## LEGAL STANDARD

The purpose of a motion for early dismissal under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the Complaint. *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002); *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 (D. Md. 2001). The Complaint should be dismissed if the facts as pled do not set forth "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937, 1950 (2009) (quotations and citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Accordingly, self-serving, inaccurate legal conclusions cannot rescue a factually deficient pleading. *Faulkner Advertising Assocs. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir. 1991). In this way, a Rule 12(b)(6) motion streamlines

3

litigation by dispensing with needless discovery and factfinding.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## ARGUMENT

### I.    PLAINTIFFS' FDCPA CLAIM MUST FAIL

Plaintiffs' Count I claims for alleged violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") against CMI and White must fail because (1) CMI is not a debt collector, and (2) Plaintiffs' claims are barred by the statute of limitations.

### A.    CMI Is Not A Debt Collector

Plaintiffs' FDCPA claim against CMI must be dismissed because CMI is not a "debt collector" with respect to Plaintiffs' loan.  The FDCPA defines "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  However, the term "debt collector" does not include:  "[A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person."  *Id.* § 1692a(6)(F)(iii).  Thus, mortgage servicers are exempt from the application of the FDCPA when a loan is not in default as of the date it acquired servicing.  *Id.*; *see also* the Federal Trade Commission Staff Commentary on the FDCPA, Comment 803(6)-4(f).

In this case, Plaintiffs allege that the loan was "in default or purported to be in default when acquired by the assignee."  Fourth Am. Compl. ¶ 49.  However, Plaintiffs' exhibit H-44 shows that CMI acquired servicing of their loan in July 1, 2004, and exhibit H-47 indicates that Plaintiffs were due for

August 1, 2004 as of this July 21, 2004 statement.   Accordingly, Plaintiffs' loan was current when

acquired by CMI, and CMI is exempt from FDCPA requirements with respect to Plaintiffs' loan.

**B.  Plaintiffs' FDCPA Claim Is Barred By The Statute Of Limitations**

In addition, Plaintiffs' FDCPA claim against both CMI and White is barred by the applicable

statute of limitations.   The FDCPA provides that: "An action to enforce any liability created by this title

may be brought … within one year for the date on which the violation occurs." 15 U.S.C. § 1692k(d).

In the instant case, Plaintiffs claim that CMI and White violated 15 U.S.C. § 1692g(b) by

"fail[ing] to provide Plaintiffs the verification of the debt" and " filing two unlawful foreclosure actions

against Plaintiffs' home causing a sale date of February 15, 2005 and . . . June 10, 2006." Fourth Am.

Compl. ¶ 57.   However, it is clear from the face of the Complaint that any alleged violation of the

FDCPA occurred well over a year before Plaintiffs filed this action.

Section 1692g(b) provides that:

> If the consumer notifies the debt collector in writing within the thirty-day period
> described in subsection (a) that a debt, or any portion thereof, is disputed, or that the
> consumer requests the name and address of the original creditor, the debt collector shall
> cease collection of the debt, or any disputed portion thereof, until the debt collector
> obtains verification of the debt or a copy of a judgment, or the name and address of the
> original creditor, and a copy of such verification or judgment, or name and address of the
> original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).   Assuming for the sake of argument only that CMI is a "debt collector" under the

FDCPA, the thirty-day period under Section 1692g would have started to run in July 2004 when CMI

acquired the loan and made its initial contact with Plaintiffs.  *See* 15 U.S.C. § 1692g(a).  With respect to

White, the thirty-day period would have commenced in or around December 2004, when White

allegedly caused unlawful foreclosure proceedings.[1]  Fourth Am. Compl. ¶ 39.  Thus, to be effective,

any dispute letter that Plaintiffs sent CMI and White should have been received in or around July 2004

and December 2004, respectively.  If CMI and/or White then failed to validate the debt, the resulting

violation would have occurred at the latest in August 2004 and January 2005, respectively.

Furthermore, any related collection violations by White under Sections 1692e, 1692f or 1692g of the

FDCPA would have occurred — at the latest — in February 2005 prior to Plaintiffs' filing bankruptcy to

halt the sale.  Fourth Am. Compl. ¶ 57.  Similarly, any alleged collection violations by CMI would have

been in or before June 2006 when the second foreclosure sale was scheduled to take place.  *Id.* ¶ 62.

Because Plaintiffs did not file the instant case until August 2007, it is clear that their FDCPA claim was

brought too late and the one-year statute of limitations bars their claim against both CMI and White.

## II.    **PLAINTIFFS' TILA CLAIM MUST FAIL**

Plaintiffs' Count II claims for violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et*

*seq.* ("TILA"), fail to state a claim upon which relief can be granted for at least three reasons.  First,

Plaintiffs' claim for statutory and actual damages under TILA is barred by the one-year statute of

limitations.  Second, Plaintiffs' claim for rescission under TILA is similarly barred by the three-year

statute of repose for such claims.  Third, even assuming the applicable statutes of limitations and repose

do not bar Plaintiffs' TILA claims, Plaintiffs fail to state a claim for which relief may be granted.  For all

these reasons, the Court should find that Plaintiffs' TILA claim must be dismissed pursuant to Rule

12(b)(6).

---

[1] To the extent that Plaintiffs claim that White violated the FDCPA by scheduling the June 10, 2006 sale
date, this assertion is belied by other facts established in their Fourth Amended Complaint.  In particular,
Plaintiffs state that Draper and Goldberg, not White, handled the June 10, 2006 foreclosure.  Fourth Am.
Compl. ¶ 39.  Accordingly, Plaintiffs' FDCPA claim against White may not be premised upon activity
related to the later foreclosure sale.

### A.    Plaintiffs' Claim For TILA Damages is Barred by the Statute of Limitations

Plaintiffs' request for statutory damages and actual damages based on alleged TILA disclosure violations is barred by the one-year statute of limitations.  Section 1640 of TILA addresses when a creditor may be held civilly liable for TILA disclosure violations, and the types of damages available for such violations. 15 U.S.C. § 1640.  Subsection 1640(e) provides, however, that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of occurrence of the violation.*" 15 U.S.C. § 1640(e) (emphasis added).

In this case, Plaintiffs request, *inter alia*, "actual damages in an amount to be determined at trial;" "statutory damages as provided by 15 U.S.C. Sec. § [sic]1640;" "attorneys fees;" and "treble the finance charge in connection with the transaction."  Fourth Am. Compl. ¶ 75-76.  Although it is unclear exactly which disclosures Plaintiffs rely on in support of their request for damages, it is clear from the face of the Complaint that any damages claimed for the alleged TILA violations are barred by the one-year statute of limitations.  Plaintiffs' Fourth Amended Complaint states that their loan closed on September 15, 2003. *Id.* ¶ 29.  Accordingly, the statute of limitations for damages with respect to any TILA violation expired no later than September 15, 2004.  Because Plaintiffs did not bring their claim for TILA damages until the filing of their August 6, 2007 Complaint, their claim for damages is barred.

### B.    Plaintiffs' Rescission Claim Under TILA Is Also Time-Barred

Plaintiffs' right to rescission under TILA has also expired.  Under TILA, the general rule is that borrowers have an absolute right to rescind a refinance transaction "until midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635(a).  Plaintiffs clearly failed to rescind their loan within three business days of their loan closing.  The rescission period may be

extended, however, for up to three years after the date of consummation if the borrower does not receive a statement of all "material disclosures." *Id.* § 1635(a), (f).

The seminal case interpreting the three-year time limit imposed by 15 U.S.C. § 1635(f) is *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998). In *Beach*, the Supreme Court rejected the argument that the three-year period of § 1635(f) is a statute of limitations that governs only the institution of suit; rather, the Court found, it operates with the lapse of time, to extinguish the right of rescission. *Id.* at 416-17. Therefore, the Court held that TILA does not permit any federal right to rescind after the three-year period prescribed by § 1635(f) runs. *Id.* at 419; *see also Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) (finding that TILA's three-year limitation is a statute of repose that typically is not tolled for any reason). As other courts have further explained, an action to enforce a right of rescission must be brought within the three-year period after the loan is consummated, even when a plaintiff has given a creditor a notice of rescission prior to filing suit. *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 305 (3d Cir. 2005); *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 903 (3d Cir. 1990); *Ramos v. CitiMortgage, Inc.*, No. 2:08-cv-02250, 2009 WL 86744, **3-4 (E.D. Cal. Jan. 8, 2009) (holding that the court was without jurisdiction to hear plaintiff's rescission claim, which was filed more than three years after the consummation of the loan); *Thomas v. Wells Fargo Bank, N.A.*, Nos. 07-16445, 08-0030, 2008 WL 5412113, *7 (Bankr. E.D. Pa. Oct. 17, 2008) (citing *In re Community Bank of Northern Virginia* and *Smith*); *Madura v. Countrywide Home Loans, Inc.*, No. 8:06-cv-2073, 2008 WL 2856813, **12-13 (M.D. Fla. July 22, 2008) (citing *In re Smith*, 737 F.2d 1549, 1554 (11th Cir. 1984)).

Here, Plaintiffs entered into a mortgage loan transaction with Lehman on or about September 15, 2003. Plaintiffs claim they rescinded their loan on or about August 6, 2006, by sending notice to

Lehman, CMI and Aurora by certified mail.  Fourth Am. Compl. ¶ 69.  However, Plaintiffs did not file

suit alleging a TILA violation until August 6, 2007, or nearly four years after the closing of their

mortgage loan.  *See Arnold v. CitiMortgage, Inc.*, Civil Action No. 8:07-cv-2722-RWT.  Because

Plaintiffs' TILA rescission right was extinguished prior to the initiation of the suit seeking to enforce

such right, Plaintiffs' claim for rescission under TILA must be dismissed.

### C.    Plaintiffs Fail To State A Claim Under TILA

Even if the relevant statutes of limitations and repose did not bar Plaintiffs' claims for damages

and rescission – and they do – Plaintiffs' TILA claims would still be subject to dismissal for failure to

state a claim because Plaintiffs fail to allege a TILA violation for which rescission is an available

remedy. Section 1635(a) provides:

> Except as otherwise provided in this section … the obligor shall have the right to rescind
> the transaction until midnight of the third business day following the consummation of
> the transaction or *the delivery of the information and rescission forms required under this
> section together with a statement containing the material disclosures required under this
> subchapter*, whichever is later, by notifying the creditor, in accordance with regulations
> of the Board, of his intention to do so.

15 U.S.C. § 1635(a) (emphasis added).

First, Plaintiffs fail to allege that they were not provided with all of the required material

disclosures.  "Material disclosures" are limited to the following:  (1) annual percentage rate, (2) the

finance charge, (3) the amount financed, (4) the total payments, (5) the payment schedule, and (6) the

disclosures and limitations regarding certain high cost mortgage loans. 15 U.S.C. § 1602(u); Federal

Reserve Board Regulation Z ("Reg. Z") 12 C.F.R. § 226.23, n.48.

In the instant case, Plaintiffs' allegation that the initial TILA disclosure varied from the

final TILA disclosure is irrelevant for purposes of a TILA rescission claim.  *See* Fourth Am.

Compl.. ¶¶ 18, 22, 24.  An initial TILA disclosure of the material disclosures simply is not

required for refinance transactions and only pertains to "residential mortgage transactions." *See* 15 U.S.C. §§1602(w), 1638(B)(2); Reg. Z § 226.2(24) (defining "residential mortgage transaction" as a transaction "created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"). For refinance transactions like Plaintiffs', TILA only requires that a TILA disclosure statement be provided to Plaintiffs prior to consummation of the loan transaction. Reg. Z, § 226.17(b) ("The creditor shall make disclosures before consummation of the transaction"). Thus, by admitting they received the final TILA disclosure statement, *see* Fourth Am. Compl. ¶ 22 and Ex. C 11-20, Plaintiffs concede that they received all of the required material disclosures and are not entitled to an extended period of rescission.[2]

Instead of properly alleging failure to provide a material disclosure, Plaintiffs claim that:

[Wells Fargo Home Mortgage Inc.] failed to provide a true and accurate payoff amount balance. This failure to provide a true and accurate pay-off amount caused the total amount financed to be inaccurate. Since all disclosures on the TILDS were based on this an inaccurate amount financed, Plaintiffs' invariably received a TILDS with improper and/or deficient material disclosures, pursuant to TIL Act 15 U.S.C. sec § 1638, hence affecting the accuracy of the disclosures of the Annual Percentage Rate, Finance Charge, Amount Financed, Total of Payments and Schedule Payments.

Fourth Am. Compl. ¶ 21. However, any dispute Plaintiffs have with defendant Wells Fargo Home Mortgage, Inc., regarding the accuracy of their payoff balance is irrelevant to the accuracy of the actual "amount financed" and other material disclosures required to be disclosed under TILA by Lehman in its role as the refinance lender.

---

[2] Plaintiffs also appear to confuse their TILA Disclosure Statement with the Good Faith Estimate that they received in connection with this transaction. Fourth Am. Compl. ¶¶ 22-23, 28. However, any alleged failure to provide a pre-closing Good Faith Estimate is not an actionable claim under TILA. Rather, Good Faith Estimates are governed by RESPA, and there is no private right of action for such claims under RESPA. *See, e.g., Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997).

Second, Plaintiffs fail to state a claim under TILA with respect to the required Notice of Right to Cancel. Regulation Z provides that "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." Reg. Z, § 226.23(b)(1). Moreover, "[t]o satisfy the disclosure requirements . . . the creditor shall provide the appropriate model form in appendix H … or a substantially similar notice." *Id.* § 226.23(b)(2). In this case, Plaintiffs clearly received the appropriate form of Notice of Right to Cancel. *See* Pls.' Ex. C 19-20. Instead, Plaintiffs complain that "Defendant [Lehman] failed to deliver two copies of any notice of the right to rescind *as to the loan actually proffered, an Interest Only, 5/1 Option Arm*." Fourth Am. Compl. ¶ 34 (emphasis added). Plaintiffs further explain: "the Notice of Right to Cancel provided the Plaintiff's was not for the true loan [Lehman] was extending, an Interest Only, 5/1 Option Arm, but, was in fact, the Notice of Right to Cancel for a 30 year Conventional Fixed Rate Loan." *Id.* ¶ 35. Contrary to Plaintiffs' assertion that the Notice of Right to Cancel is specific to the type of loan (fixed rate v. adjustable rate loan), the Notice of Right to Cancel under TILA only requires disclosure of information such as: (i) the lender's retention or acquisition of a security interest in the consumer's principal dwelling; (ii) the consumer's right to rescind the transaction; (iii) how to exercise the right to rescind, (iv) the effects of rescission and (v) the date the rescission period expires. Reg. Z, § 226.23(b)(1). The Notice received by Plaintiffs clearly contains such information. *See* Pls.' Ex. C 19-20. Accordingly, Plaintiffs have failed to state a claim for relief under TILA against Lehman, CMI or Aurora.

## III.    **PLAINTIFFS FAIL TO STATE A CLAIM UNDER RESPA**

Plaintiffs' Count IV claim for an alleged violation of the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") fails to state a claim upon which relief may

be granted.  In an apparent attempt to rescue their RESPA claim, Plaintiffs' Fourth Amended

Complaint now alleges that Aurora and CMI, as well as Wells Fargo Home Mortgage, Inc.,

violated § 2605 of RESPA.  Fourth Am. Compl. ¶¶ 87-98.[3]  Plaintiffs' Fourth Amended

Complaint, however, is completely devoid of any factual allegations that would support a claim

under § 2605.  The United States Supreme Court has explained:  "While legal conclusions can

provide the framework for a complaint, they must be supported by factual allegations." *Iqbal*,

129 S.Ct. at 1950 (quotations and citations omitted).  "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Id.*  Accordingly, self-serving, inaccurate legal conclusions

cannot rescue a factually deficient pleading.  *Faulkner Advertising Assocs. v. Nissan Motor*

*Corp.*, 945 F.2d 694, 695 (4th Cir. 1991).

Indeed, with respect to Aurora and CMI, Plaintiffs simply state that Aurora and CMI

failed to respond to "countless qualified written requests" made pursuant to 12 U.S.C. § 2605(e).

Fourth Am. Compl. ¶ 90.  Plaintiffs further state that "CMI never replied to any QWR" and

"[Aurora] replied once to the many QWS [sic] sent them from November 2003 through their

transfer of plaintiffs loan to CMI in July of 2004." *Id.* ¶ 96.  These bare assertions, however, fail

to provide any factual basis for evaluating Plaintiffs' RESPA claim.  For example, it is

impossible to determine whether Plaintiffs' alleged correspondence with Aurora and CMI even

---

[3] In their prior Amended Complaints, Plaintiffs attempted to state a claim for alleged violation of §
2604(c) of RESPA which governs the provision of certain disclosures through a document entitled
"Good Faith Estimate."  However, as pointed out in Defendants' previous motions to dismiss, § 2604(c)
does not provide a private right of action to borrowers even in cases where a lender fails to provide a
Good Faith Estimate altogether.

met the statutory definition of "qualified written request." RESPA defines "qualified written request" as follows:

> A qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that— (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Furthermore, without any reference to the dates that the alleged qualified written requests were sent to Aurora and CMI, it is impossible for Aurora and CMI to determine whether they have an affirmative defense under § 2605's three-year statute of limitations. Because Plaintiffs' legal conclusion that Aurora and CMI failed to respond to a qualified written request is not supported by any relevant factual allegations, Plaintiffs' RESPA claim must be dismissed for failure to state a claim upon which relief can be granted.

## IV.    PLAINTIFFS' AIDING AND ABETTING FRAUD AND CIVIL CONSPIRACY CLAIMS MUST FAIL

Plaintiffs' Count III claim for Aiding and Abetting Fraud and Count V claim for Civil Conspiracy fails for at least two reasons. First, both of these claims fail to plead the underlying tort of fraud with the requisite degree of specificity. Second, Plaintiffs' claims are barred by the relevant statute of limitations.

### A.    Plaintiffs Fail To Plead Fraud With The Requisite Particularity

Plaintiffs' Aiding and Abetting Fraud and Civil Conspiracy claims must fail because Plaintiffs have not pled the underlying tort of fraud with the requisite degree of specificity. Under Maryland law, in order to state a claim for Aiding and Abetting or Civil Conspiracy, Plaintiffs must also plead the elements of the underlying tort, *i.e.*, fraud. *See Alleco, Inc. v. Harry & Jeanette Weinberg Foundation,*

*Inc.*, 340 Md. 176, 190-91, 201, 665 A.2d 1038, 1045, 1050 (1995).  In this case, however, the Fourth

Amended Complaint is completely devoid of any details relating to Defendants' allegedly fraudulent

conduct.  Allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  To satisfy Rule

9(b), Plaintiffs must make particular allegations of the time, place, speaker and contents of the fraud-

related acts in their Fourth Amended Complaint.  *Harrison v. Westinghouse Savannah River Co.*, 176

F.3d 776, 784 (4th Cir. 1999); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).

      With respect to the Aiding and Abetting Fraud claim, Plaintiffs allege all Defendants "worked in

consort and tandem together with each and were further aided with the assistance of their agents and

employees to commence the felonious 'bait, switch and forgery scheme' against the consumer Plaintiffs

and their property." Fourth Am. Compl. ¶ 78.  Plaintiffs fail to mention even the most basic facts,

including the particular statements that were false and misleading, when the statements were made, and

the identity of the person who made the allegedly false or misleading statements.  Indeed, it is

impossible to decipher the identity of the principal tortfeasor whom all of the defendants are allegedly

"aiding and abetting."  Moreover, the Fourth Amended Complaint fails to specify the who, when and

where regarding the allegedly forged loan documents.

      Plaintiffs' Civil Conspiracy claim is similarly devoid of specifics relating to the alleged fraud.

Instead, Plaintiffs allege:

> Defendants agreed, between and among themselves, to accomplish several unlawful acts,
> including intentionally providing Plaintiffs with 'none disclosures' which were, and
> intended to be, misleading, improper, and incomplete as to the actual loan being
> consummated; calculated placement of Plaintiffs into a loan program which they did not
> want.  Defendants did so through employing a variety of felonious, extortive tactics, that
> included, fabrication of loan documents by forgery…

Fourth Am. Compl. ¶ 100.  Without more, none of the Defendants can adequately defend against

Plaintiffs' claims of Aiding and Abetting Fraud and Civil Conspiracy.

Accordingly, Counts III and V should be dismissed because plaintiffs fail to plead the underlying tort of alleged fraud with particularity.

**B.    Plaintiffs' Claims Are Barred by The Statute of Limitations**

Plaintiffs' Aiding and Abetting Fraud and Civil Conspiracy claims must also fail because they are barred by the relevant statute of limitations. In Maryland, a claim for fraud must be brought within three years. Md. Cts & Jud. Proc. Code Ann. § 5-101; *see also Bausch v. Philatelic Leasing, Ltd.*, 728 F. Supp. 1201, 1206 (D. Md. 1989). Likewise, aiding and abetting fraud and conspiracy to defraud must be brought within three years. *See Johnson v. Nadwodny*, 55 Md. App. 227, 461 A.2d 67 (1983) (applying three year statue of limitations to claim for conspiracy to defraud). In the instant case, Plaintiffs' Aiding and Abetting Fraud and Civil Conspiracy claims center around allegedly fraudulent activities at the origination of the loan and shortly thereafter. In particular, Plaintiffs appear to allege that (1) they were provided "improper" disclosures, (2) they were "baited and switched" from one loan program to another, and (3) unspecified defendants "forged" some of their loan documents. *See, e.g.*, Fourth Am. Compl. ¶ 100. These claims fail, however, because Plaintiffs knew or should have known the relevant terms of their loan at the closing that occurred on September 15, 2003. Plaintiffs admit they received disclosures, including the required TILA disclosure statement, prior to the closing. *Id.* ¶ 22. Even if, as Plaintiffs allege, the tax and insurance amounts for their property were not disclosed to them prior to closing, *id.* ¶ 25-26, Plaintiffs knew or should have known the total of these amounts at the time their first monthly payment was due in November 2003. *See* Pls.' Ex. E 7-8. Indeed, Plaintiffs' acknowledge that they were questioning their loan as early as November 2003 in correspondence with Aurora. *Id.* ¶ 96. Thus, Plaintiffs' alleged fraud claim – evident for the last six years – comes too late.

For all of the foregoing reasons, Plaintiffs' Aiding and Abetting Fraud and Civil Conspiracy claims should be dismissed.

## V.    PLAINTIFFS' CLAIM FOR EQUITABLE ESTOPPEL MUST FAIL[4]

Plaintiffs' claim for Equitable Estoppel, like Plaintiffs' claims for Aiding and Abetting Fraud and Civil Conspiracy, must fail because Plaintiffs have failed to adequately plead the elements of fraud.  To state a claim for Equitable Estoppel based on fraudulent concealment, Plaintiffs must allege:

(1)    the party pleading the statue of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and

(2)    the plaintiff failed to discover those facts within the statutory period, despite

(3)    the exercise of due diligence.

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995); *see also Proctor v. Metropolitan Money Store Corp.*, No. RWT-07-1957, 2009 WL 2516361, at *14 (D. Md. Aug. 13, 2009); *Mullinax v. Radian Guaranty Inc.*, 311 F. Supp. 2d 474, 487-88 (M.D.N.C. 2004).  In addition, fraudulent concealment must be pled with particularity under Rule 9(b).  Fed. R. Civ. P. 9(b).

Without providing any factual allegations supporting such fraudulent concealment, Plaintiffs conclude: "Defendants are estopped from asserting the statute of limitations as an affirmative defense

---

[4] Plaintiffs also generally state that the Fourth Amended Complaint is "tolled" and "relates back" to, *inter alia*, Plaintiff Arnold's bankruptcy case, Plaintiffs' December 14, 2006 Adversary Complaint, and Defendants' foreclosure action. *See, e.g.*, Fourth Am. Compl. ¶¶ 2, 48, 89.  As an initial matter, the Court should take judicial notice of the fact that there was no Adversary Complaint; rather, the docket shows that the case was filed in error. *See* Md. Bankr. Case No. 06-2056, docket entry dated Dec. 29, 2006 (stating "Administratively Closed due to erroneously filing of document and adversary opening."). Further, Plaintiffs have not pled any factual or legal grounds for the application of equitable tolling or relation back.  Instead, Plaintiffs appear to be arguing for equitable estoppel based on the theory of fraudulent concealment, which is discussed in Part V *infra*.  To the extent Plaintiffs are claiming that equitable tolling or relation back should apply in this case, Defendants dispute the applicability of those doctrines to the facts of this case.

against the plaintiffs due to the defendants own fraudulent concealment of wrongdoings." Fourth Am. Compl. ¶ 108. It is clear, however, that Plaintiffs have not – and cannot – allege that Defendants concealed (1) the alleged failure to validate Plaintiffs' debt or alleged abusive collection practices pertaining to Plaintiffs' FDCPA claim; (2) the alleged failure to respond to Plaintiffs' qualified written requests pursuant to their RESPA claim; (3) the alleged failure to provide adequate disclosures pursuant to Plaintiffs' TILA claim; or (4) the alleged forgery of Plaintiffs' signatures on certain loan documents with regard to Plaintiffs' Aiding and Abetting and Civil Conspiracy claims. Moreover, Plaintiffs fail to provide any factual allegations regarding when and how they discovered each of their claims. Therefore, there is nothing in the Fourth Amended Complaint to carry Plaintiffs' burden that they exercised due diligence to discovery any of these claims. Accordingly, under such a factual and pleading record, to permit plaintiffs to continue would render the statutes of limitations a nullity. For these reasons, Plaintiffs' claim of Equitable Estoppel must fail.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' Fourth Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

WEINER BRODSKY SIDMAN KIDER PC

By:    /s/ David M. Souders
       David M. Souders (Bar No. 15102)
       Bruce A. Alexander (Bar No. 0287)
       Sandra B. Vipond (Bar No. 15761)
       1300 Nineteenth Street, NW, Fifth Floor
       Washington, DC 20036
       (202) 628-2000 (telephone)
       (202) 628-2011 (facsimile)

Attorneys for Defendants CitiMortgage, Inc., Lehman
Brothers Bank, F.S.B, Aurora Loan Services, LLC,
Mortgage Electronic Registration Systems, Inc., and
Samuel I. White, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 21st day of September, 2009, a copy of the foregoing

Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Fourth Amended

Complaint was served upon the following:

Via electronic filing:

    Mark S. Devan, Esq.
    Covahey Boozer Devan and Dore PA
    606 Baltimore Ave, Suite 302
    Towson , MD 21204

    *Counsel for Defendant Wells Fargo Home Mortgage, Inc.*

Via first class mail, postage prepaid:

    Kathleen Arnold
    Timothy A. Cotten
    9543 North Side Drive
    Owings, MD 20736

                                /s/ David M. Souders
                                David M. Souders (Bar No. 15102)

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

|  |  |
|---|---|
| KATHLEEN ARNOLD, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No.: 8:07-CV-02617 (RWT) |
| CITIMORTGAGE, INC., *et al.*, | |
| Defendants. | |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### DEFENDANTS CITIMORTGAGE, INC., LEHMAN BROTHERS
### BANK, F.S.B., AURORA LOAN SERVICES, LLC, MORTGAGE
### ELECTRONIC REGISTRATION SYSTEMS, INC., AND SAMUEL I. WHITE,
### P.C.'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs' Fourth Amended Complaint is the *fifth* attempt by Plaintiffs to state a

sustainable cause of action against Defendants CitiMortgage, Inc. ("CMI"), Lehman Brothers

Bank, F.S.B. ("Lehman"), Aurora Loan Services, LLC ("Aurora"), Mortgage Electronic

Registration Systems, Inc. ("MERS"), and Samuel I. White, P.C. ("White") (collectively,

"Defendants"). Consistent with their prior attempts, however, Plaintiffs' Fourth Amended

Complaint cannot withstand a 12(b)(6) motion to dismiss.

As explained in Defendants' opening memorandum, each of Plaintiffs' claims is either

time-barred and/or insufficiently pled. In their Opposition, Plaintiffs try to hang their hat on 11

U.S.C. § 108(a), a provision of the Bankruptcy Code that can extend the statutes of limitations

for Chapter 11 trustees to bring claims on behalf of the bankruptcy estate. The inescapable fact,

however, is that § 108(a) has no application to this case, especially given the fact that Plaintiff

Kathleen Arnold voluntarily abated her Chapter 7 bankruptcy case. Accordingly, the Court

should find that Plaintiffs have failed to state a claim upon which relief can be granted and

dismiss the Fourth Amended Complaint pursuant to Rule 12(b)(6).

**ARGUMENT**

## I.    PLAINTIFFS CANNOT USE 11 U.S.C. § 108(a) TO TOLL THE STATUTES OF LIMITATIONS FOR ANY OF THEIR CLAIMS

Plaintiffs attempt to salvage their time-barred claims by asserting that Plaintiff Kathleen

Arnold's voluntary Chapter 13 bankruptcy filing on February 14, 2005, extended by two years

the time within which plaintiffs could file their instant claims pursuant to § 108(a) of the

Bankruptcy Code.  Opp. at 7-8.  Plaintiffs are mistaken.

"It is worth noting that § 108(a)'s plain language only explicitly grants the benefits of its

extension to a bankruptcy 'trustee,' and not to a bankruptcy debtor." *Roach v. Option One

Mortgage Corp.*, 598 F. Supp. 2d 741, 756 n.23 (E.D. Va. 2009).  While it is true that in a

Chapter 11 bankruptcy in which no trustee is appointed, the debtor, in its capacity as a "debtor in

possession," is entitled to the benefit of a §108(a) extension, the same cannot be said for a

Chapter 7 debtor or when a trustee is serving in a Chapter 11 case. *In re Ranasinghe*, 341 B.R.

556, 565 (Bankr. E.D. Va. 2006).  Moreover, in a Chapter 13 case, § 108(a) tolling benefits only

extend to a Chapter 13 debtor who "sues pursuant to the powers of a trustee," and even in that

role, courts and commentators disagree on the propriety of this application. *Roach*, 598 F. Supp.

at 756 n.23 (citation and internal quotation marks omitted).[1]

---

[1] Plaintiffs rely on *In re Froehle*, 286 B.R. 94 (8th Cir. BAP 2002) for the proposition that "debtors in possession enjoy the same privilege" as trustees under § 108(a).  Opp. at 7. However, the case relied upon by the *Froehle* court, *Johnson v. First Nat'l Bank of Montevideo (In re Johnson)*, 719 F.2d 270 (8th Cir. 1983), dealt with the application of § 108 in a Chapter 11 case. *See also Ranasinghe*, 341 B.R. at 566 ("Nowhere did the *Froehle* court explicitly or implicitly take the broader step of finding that a chapter 13 debtor was a debtor in possession.").

2

In the instant case, Plaintiffs cannot rely on § 108(a) tolling with respect to any of their claims. Plaintiff Arnold filed for Chapter 13 bankruptcy on February 14, 2005. The case was subsequently converted to a Chapter 11 case and later became a Chapter 7 case. Opp. at 11, n.1. That fact alone – that ultimately she was proceeding under Chapter 7 – precludes application of § 108(a). In addition, however, Plaintiff Arnold voluntarily abated her Chapter 7 case. Specifically, plaintiff filed a motion asking the Bankruptcy Court to rescind her Chapter 7 discharge. *See* Order Revoking Discharge and Dismissing Case, dated February 8, 2007, a copy of which is attached hereto as Exhibit 1.[2] On February 8, 2007, the Bankruptcy Court granted Plaintiff Arnold's request and revoked her Chapter 7 discharge and dismissed the case. *Id.* at 3-4.

Thus, even if § 108(a) could be deemed to apply to Plaintiff Arnold's Chapter 7 bankruptcy case, the fact that she requested, and received, a revocation of her Chapter 7 discharge and dismissal of her case extinguishes any potential ability to use the tolling benefits of § 108(a). "[W]here the bankruptcy proceeding is voluntarily abated, neither a bankruptcy estate, nor a bankruptcy trustee, exist to receive the benefit of a § 108(a) extension." *Roach*, 598 F. Supp. 2d at 756. *See also In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005) ("A dismissal without prejudice operates to leave the parties as if no action had been brought at all.") (citation and internal quotation marks omitted). This result is necessary; otherwise, "any potential plaintiff could obtain an automatic extension of a statute of limitations that expires less than two years from a given date simply by filing a bankruptcy petition and then voluntarily dismissing it immediately thereafter." *Roach*, 598 F. Supp. 2d at 756.

---

[2]  Defendants respectfully request that the Court take judicial notice of the Bankruptcy Court Order pursuant to Rule 201 of the Federal Rules of Evidence.

Accordingly, for these reasons, the Court should conclude that Plaintiffs cannot invoke

11 U.S.C. § 108(a) to toll any of the applicable statutes of limitations in this case.[3]

## II.    PLAINTIFFS CANNOT SAVE THEIR FDCPA CLAIM

As Defendants explain in their opening memorandum, Plaintiffs cannot maintain their

claim for alleged violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et

seq.* ("FDCPA") against CMI and White both because this claim is time-barred and because CMI

is not a "debt collector."

In their Opposition, Plaintiffs acknowledge that the statute of limitations for FDCPA

claims is one year and that Plaintiffs had until August 2005 and January 2006 to bring their

claims against CMI and White, respectively. Opp. at 9. Plaintiffs go on to assert, however, that

Plaintiff Arnold's Chapter 13 bankruptcy filing extended the time in which they could bring their

claims by an additional two years, until August 2007 and January 2008, respectively. Plaintiffs

are incorrect.

As an initial matter, Plaintiffs misconstrue 11 U.S.C. § 108(a). It does not add two

additional years to the end of the applicable statute of limitations. Rather, it allows a trustee to

bring an action before *the later of* (1) the expiration of the statute of limitations or (2) "two years

after the order of relief." 11 U.S.C. § 108(a). In this case, Plaintiffs claim that the "order of

relief" issued upon Plaintiff Arnold's Chapter 13 filing on February 14, 2005. Opp. at 7.

Therefore, any benefit under § 108(a) would only extend to February 14, 2007, not the August

2007 and January 2008 dates advanced by Plaintiffs. In any event, for all the reasons stated in

Section I, *infra*, Plaintiffs cannot rely on 11 U.S.C. § 108(a) to extend the statute of limitations

---

[3] It should be noted that because Plaintiff Timothy Cotten did not file for bankruptcy himself, §
108(a) would not be available to him under any circumstances.

for their FDCPA claim. Accordingly, since Plaintiffs did not commence this lawsuit until

August 2007, their FDCPA claim against CMI and White is time-barred.

     Even assuming for the sake of argument that Plaintiffs' FDCPA claim is not time-barred,

it still fails to state a claim as against CMI, an assignee of Plaintiffs' mortgage loan. Under the

FDCPA, the term "debt collector" does not include an assignee who acquired a debt that was **not**

in default at the time it was obtained. *See* 15 U.S.C. § 1692a(6)(F)(iii). As Defendants point out

in their opening brief, Plaintiffs' loan was current when it was acquired by CMI; accordingly,

CMI does not qualify as a "debt collector" under the FDCPA.

     In response, Plaintiffs attempt to claim that they were in default at the time CMI acquired

their loan. Such an assertion, however, is contradicted by the allegations of the Complaint which

provide that "Plaintiffs were, at all times relevant, current on their loan payments, and even

overpaid on the loan...." Fourth Am. Compl. ¶ 40. Moreover, while Plaintiffs contend that

paragraph 50 of the Complaint "allege[s] that the loan was in default when [CMI] became the

servicing agent," Opp. at 22, in fact, what paragraph 50 states is as follows: "Defendant CMI

acquired the debt from Defendant ALS, who purported in June of 2004 to transfer to Defendant

CMI a false and manufactured arrears of Plaintiffs' loan (see Exhibit H 44, 45 & 47), ALS &

CMI, statements purporting a false debt, rendering Defendant CMI further as a debt collector

pursuant to the FDCPA." Fourth Am. Compl. ¶ 50. These allegations of "manufactured arrears"

and "a false debt," however, are insufficient to support a finding that Plaintiffs' loan was actually

in default at the time it was acquired by CMI.

     Moreover, contrary to Plaintiffs' position, Exhibit H-47 to the Complaint does not lend

support to their assertion that CMI is a debt collector. As Defendants explained in their opening

papers, Exhibit H-47, a CMI mortgage account statement dated July 21, 2004, shows that

Plaintiffs were current on their loan inasmuch as their next payment was due for August 1, 2004.

Plaintiffs contend that the inclusion of a "past due amount" on the statement indicates that

Plaintiffs were "two months behind when Defendant CMI acquired their note" and that this

makes CMI a debt collector under the FDCPA. Opp. at 22. Plaintiffs' conclusory statement

cannot save this claim. As recognized by many courts, delinquency and default are two distinct

concepts. *See Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 86 (2d Cir. 2003)

("[C]ourts have repeatedly distinguished between a debt that is in default and a debt that is

merely outstanding, emphasizing that only after some period of time does an outstanding debt go

into default."). Thus, Exhibit H-47 does not assist Plaintiffs in their effort to state an FDCPA

claim against CMI.[4]

Because the Complaint does not support Plaintiffs' assertion that their loan was in default

at the time it was acquired by CMI, Plaintiffs fail to state a claim against CMI for alleged

violation of the FDCPA.

### III.    PLAINTIFFS' TILA CLAIMS ARE UNDENIABLY BARRED

As detailed in Defendants' opening memorandum, Plaintiffs' claim for statutory and

actual damages under § 1640 of the federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*

("TILA"), is barred by the one-year statute of limitations. Likewise, Plaintiffs' claim for

rescission under TILA is similarly barred by the three-year statute of repose for such claims.

---

[4] While Plaintiffs purport to attach a copy of Kathleen Arnold's credit report to their Opposition
"in order to effectively prove that CMI obtained Plaintiff's loan while the loan was purported to
be in default," Opp. at 21, no such exhibit exists. Moreover, any such exhibit or argument
should be rejected out of hand because it constitutes an improper attempt by Plaintiffs to amend
their Complaint through their Opposition Brief. "It is axiomatic that the complaint may not be
amended by the briefs in opposition to a motion to dismiss." *Mylan Laboratories, Inc. v. Akzo,
N.V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745
F.2d 1101 (7th Cir. 1984)).

Plaintiffs' Opposition does nothing to change the undeniable fact that Plaintiffs' TILA claims come too late.

## A. Plaintiffs Cannot Maintain A Claim for TILA Damages

In attempting to save their claim for TILA damages, Plaintiffs focus on their notice of rescission and the requirement under TILA that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). According to Plaintiffs: "Should the creditor not take these steps within twenty days, then the debtor [sic] has violated a 'requirement' of section 1635 and can be held liable for damages under section 1640." Opp. at 21.

Plaintiffs assert that their notice of rescission was dated August 6, 2006, and sent to Defendants on August 7, 2006. Plaintiffs presume that Defendants Lehman, CMI, and Aurora received the notice on or about August 8, 2006, and allege "Defendants had until August 28, 2006 in which to respond to Plaintiff's [sic] notice of rescission, hence Plaintiffs had one year to file the affirmative claims or, until August 28, 2007." Opp. at 13. Plaintiffs further contend that "Defendants failed to respond to Plaintiff's [sic] notice of recession [sic]," *id.*, and this fact provides them with a damages claim under § 1640 of TILA because their suit, which was filed on August 6, 2007, was brought within the one-year statute of limitations for TILA damages claims.

There are several problems with Plaintiffs' attempt to state a claim for alleged violation of TILA in connection with Defendants' alleged failure to respond to the notice of rescission and/or Defendants' alleged failure to act within twenty days to terminate their security interest in

Plaintiffs' loan pursuant to § 1635(b).  First, contrary to the statements in their Opposition, Plaintiffs' Complaint alleges that Defendants did, in fact, respond to the notice of rescission "on August 23, 2006 with notice of denial." Fourth Am. Compl. ¶ 69.[5]  Thus, Plaintiffs' claim for TILA damages cannot be premised on a wholesale failure to respond on the part of Defendants.

Second, and more to the point, the Fourth Circuit has adopted the majority view that "unilateral notification of cancellation does not automatically void the loan contract." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).  Instead, unilateral notification only advances "a claim seeking rescission" and a loan contract will not be effectively voided until "the creditor acknowledges that the right to rescission is available, or because the appropriate decision maker has so determined ...." *Id.* (quoting *Large v. Conseco Fin. Servicing Corp.,* 292 F.3d 49, 54-55 (1st Cir.2002)).  Thus, in the instant case, because Defendants denied that Plaintiffs had a right to rescind their loan, as a matter of law, Defendants were not required to take the steps outlined in § 1635(b) upon receiving Plaintiffs' notice of rescission. *American Mortgage*, 486 F.3d at 820-21 ("[Plaintiffs] appear to misconstrue the procedural mechanics of § 1635.  Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest."). Accordingly, Plaintiffs have failed to state a claim for violation of TILA in connection with Defendants' alleged failure to act within twenty days to relinquish their security interest in Plaintiffs' loan and take the other steps enumerated in § 1635(b).

Third, Plaintiffs cannot maintain a TILA damages claim that is premised on a finding that they are entitled to rescind their loan.  While Plaintiffs contend that the filing of their Complaint on August 6, 2007, was timely for purposes of pursuing TILA damages under § 1640 because it

---

[5]  Accordingly, it is improper for Plaintiffs to attempt to amend their Complaint through their Opposition Brief. *Mylan Laboratories*, 770 F. Supp. at 1068.

was within one year of August 28, 2006, i.e., the supposed date by which Defendants were

required to respond to Plaintiffs' notice of rescission, it is an undeniable fact that Plaintiffs did

not timely file suit regarding their alleged right to rescission. Plaintiffs' loan transaction closed

on September 15, 2003; accordingly, any extended right of rescission lapsed three years later on

September 15, 2006. *See* Defs.' Opening Memorandum at 8 (explaining that the three-year

period for rescission prescribed by § 1635(f) is a statute of repose). Therefore, because Plaintiffs

forfeited their right to pursue a claim for rescission, they should not be allowed to maintain a

TILA damages claim for Defendants' alleged failure to respond to their rescission request.

Stated otherwise, Plaintiffs should not be permitted to maintain a claim for an alleged technical

statutory violation that is wholly premised on Plaintiffs' entitlement to rescission when such a

remedy is no longer available. As one of the cases cited by Plaintiffs explains it:

> [Plaintiffs] also argue that [defendant] wrongfully refused to allow them to
> rescind the loan transaction. [Plaintiffs] sent [defendant] a notice on November 3,
> 1986, stating that they wished to rescind the loan transaction in question.
> [Defendant], however, refused to allow [plaintiffs] to rescind. If [plaintiffs] are
> correct in their assertion that they were entitled to rescind the instant transaction,
> then [defendant] is liable for statutory damages based on [plaintiffs'] timely claim
> that [defendant] wrongfully denied their request to rescind the transaction.
> [Plaintiffs'] entitlement to statutory damages under 15 U.S.C. § 1640 is, therefore,
> wholly dependent upon, and flows directly from, their entitlement to rescissory
> [sic] relief.

*Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 903 (3rd Cir. 1990) (finding that

plaintiffs were not entitled to rescission and, thus, could not recover damages under § 1640 for

defendant's failure to respond to the rescission request). *See also In re Smith*, 737 F.2d 1549,

1552 (11th Cir. 1984) (noting that defendant did not respond to plaintiff's request for rescission

and failed to terminate its security interest in plaintiff's property and stating "[i]f [plaintiff] had a

right to rescind in the circumstances of this case - and we find that she did not – [defendant]

could be liable for monetary damages under section 1640").

9

Here, Plaintiffs' rescission claim is undeniably time-barred; accordingly, there cannot be a finding that Plaintiffs are entitled to rescind their loan.  It follows that because Plaintiffs' entitlement to statutory damages is "wholly dependent upon, and flows directly from" their entitlement to rescission, Plaintiffs should not be permitted to maintain a TILA damages claim for Defendants' alleged failure to respond to Plaintiffs' notice of rescission.

Therefore, for all the foregoing reasons, the Court should find that Plaintiffs have failed to state a claim for alleged violation of TILA in connection with Defendants' alleged failure to act on Plaintiffs' rescission request within twenty days under § 1635(b).

### B.    Plaintiffs' Rescission Claim Is Unsustainable

In the seminal case of *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), the Supreme Court held that the three-year time limit imposed by 15 U.S.C. § 1635(f) operates with the lapse of time, to extinguish the right of rescission.  *Id.* at 416-17.  Thus, according to the Court, TILA does not permit any federal right to rescind after the three-year period prescribed by § 1635(f) has run. *Id.* at 419.  Further, as other courts have found, a borrower must commence suit to enforce the right to rescission within three years after the loan is consummated; merely sending a notice of rescission to a creditor within the three-year period is not sufficient to salvage a rescission suit brought after three years.  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 305 (3d Cir. 2005) ("[A]n action for rescission must be brought within three years."); *Caligiuri v. Columbia River Bank Mortgage Group*, No. 07-3003-PA, 2007 WL 1560623, at *5 (D. Or. May 22, 2007) ("The claim is not timely because plaintiff filed this action more than three years after the transaction."); *see also* Defs' opening memorandum at 8 (citing cases).

In their Opposition, Plaintiffs do not attempt to address the holding of *Beach* or the other cases cited by Defendants.  Instead they claim that the mailing of the notice of rescission within

the three-year period makes their rescission claim timely. Plaintiffs are incorrect as a matter of

law. Plaintiffs' loan transaction was consummated on September 15, 2003. Therefore, assuming

the truth of their allegations that they did not receive certain material disclosures at the time of

their loan closing, Plaintiffs had until September 15, 2006, to initiate a lawsuit to rescind the

transaction. While Plaintiffs allege that they mailed Defendants a notice of rescission on August

7, 2006, they did not actually commence this action until August 6, 2007, nearly four years after

their loan transaction. Accordingly, because Plaintiffs' right to rescind their transaction

extinguished prior to commencement of suit, their claim for rescission under TILA cannot stand.

### IV.    <u>PLAINTIFFS CANNOT MAINTAIN A RESPA CLAIM</u>

As noted in Defendants' opening brief, Plaintiffs' claim for violation of § 2605 of the

federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), consists of

bare assertions regarding Aurora and CMI's alleged failure to respond to "countless" qualified

written requests ("QWRs"). Plaintiffs neither attach any of the alleged QWRs to their Complaint

nor do they allege facts to support their legal conclusion that what was sent to Defendants met

the statutory definition of QWRs under RESPA. Plaintiffs also fail to specify the dates the

alleged QWRs were sent, thus preventing Defendants from identifying the alleged QWRs and

determining whether this claim is timely under § 2605's three-year statute of limitations. *See* 12

U.S.C. § 2614.

In response to these arguments, Plaintiffs concede that they "have not provided dates and

times of their QWR mailings" but contend that "there is no particularity requirement under

RESPA" and "the allegation that the Defendants failed to respond is sufficient to survive a

12(b)(6) motion to dismiss." Opp. at 17. Plaintiffs are wrong. Aurora and CMI cannot possibly

respond to Plaintiffs' factually deficient allegations.  As explained by one court in granting a

12(b)(6) motion on this very same issue:

> The Court concludes that Plaintiff fails to state a claim under RESPA.  Plaintiff
> only makes conclusory allegations that she sent [Defendants] QWRs on certain
> dates.  However, Plaintiff does not attach any of the alleged QWRs to her [First
> Amended Complaint] and does not allege facts to support the conclusion that
> what she allegedly sent Defendants meets the statutory requirements for QWRs,
> such as that the alleged QWRs contained information enabling the servicer to
> identify the name and account of the borrower and included a statement of the
> reasons for the belief of the borrower that the account is in error or provides
> sufficient detail to the servicer regarding other information sought by the
> borrower. *See* 12 U.S.C. § 2605(e)(1)(B).  Additionally, Plaintiff does not allege
> facts to allow the Court to draw a reasonable inference that [Defendants] actually
> received the alleged QWRs, as Plaintiff does not allege to what address she sent
> such QWRs.

*Delino v. Platinum Community Bank*, No. 09-288-H, 2009 WL 2366513, at *3 (S.D. Cal. July

30, 2009).

For the same reasons articulated by the *Delino* court, this Court should find that Plaintiffs

have failed to state a claim for violation of RESPA.

## V.    PLAINTIFFS' AIDING AND ABETTING FRAUD AND CIVIL CONSPIRACY CLAIMS CANNOT BE SAVED

In response to Defendants' argument that Plaintiffs' aiding and abetting fraud and civil

conspiracy claims are time-barred, Plaintiffs claim that "Defendants are misguided in that these

causes of action must be tolled pursuant to 11 U.S.C. § 108(a)."  Opp. at 8; *see also id.* at 10-11.

For all the reasons set forth in Section I, *infra*, Plaintiffs cannot rely on 11 U.S.C. § 108(a) to

extend the statute of limitations for these claims.  Moreover, even assuming application of §

108(a), it does not assist Plaintiffs in salvaging these claims.  As explained in Defendants'

opening brief, these claims accrued in November 2003 at the latest and, thus, expired in

November 2006 pursuant to the applicable three year statute of limitations.  Application of §

108(a) would have extended the time for filing this claim to February 15, 2007. Plaintiffs did not

file their original Complaint, however, until August 6, 2007 – nearly six months later.

In addition, Plaintiffs' claims for aiding and abetting fraud and civil conspiracy fail

because the underlying tort of fraud is not pled with the requisite degree of specificity. In their

Opposition, Plaintiffs do not – because they cannot – meaningfully respond to Defendants'

contention that the Fourth Amended Complaint is woefully deficient in terms of informing

Defendants of the most basic facts, including the particular statements that were false and

misleading, when the statements were made, and the identity of the person who made the

allegedly false or misleading statements. As pointed out in Defendants opening brief, it is

impossible to decipher the identity of the principal tortfeasor whom all Defendants are allegedly

"aiding and abetting." Further, the Fourth Amended Complaint fails to specify the who, when

and where regarding the allegedly "forged" loan documents. The civil conspiracy claim is

similarly deficient in terms of putting Defendants on notice of the specific acts underlying the

alleged conspiracy.

Therefore, for all these reasons, Plaintiffs cannot maintain their claims for aiding and

abetting fraud and civil conspiracy.

## VI.    PLAINTIFFS HAVE ABANDONED THEIR CLAIM FOR EQUITABLE ESTOPPEL

In their Opposition, Plaintiffs do not address Defendants' arguments for dismissal of the

Count VI claim for equitable estoppel. Accordingly, the Court should conclude that Plaintiffs

have abandoned this claim. *Jones v. Family Health Center, Inc.*, 323 F. Supp. 2d 681,

690 (D.S.C. 2003) (concluding that plaintiff waived her claim by failing to address it in her

opposition to a motion to dismiss).

13

## CONCLUSION

Plaintiffs have had the benefit of five attempts to state a claim upon which relief can be granted against Defendants. Despite the fact that Plaintiffs have had more than enough time and opportunity to plead a sustainable cause of action, their Fourth Amended Complaint demonstrates yet again that Plaintiffs have no legally cognizable claims in this case. While Plaintiffs make a last ditch effort to save their Complaint from dismissal by invoking the tolling provision of 11 U.S.C. § 108(a), that provision clearly is not available to Plaintiffs in this case. Accordingly, Plaintiffs are left with their time-barred and insufficiently pled causes of action. As expressed by the Bankruptcy Court in its Order of February 8, 2007, *see* Ex. 1 hereto, this Court should conclude that "enough is enough" and dismiss Plaintiffs' Fourth Amended Complaint with prejudice.

Therefore, for all the reasons set forth in Defendants' opening papers and herein, the Court should dismiss Plaintiffs' Fourth Amended Complaint with prejudice and deny leave to file a Fifth Amended Complaint on the grounds of futility.

Respectfully submitted,

WEINER BRODSKY SIDMAN KIDER PC

By:    /s/ David M. Souders
David M. Souders (Bar No. 15102)
Bruce E. Alexander (Bar No. 0287)
Sandra B. Vipond (Bar No. 15761)
1300 Nineteenth Street, NW, Fifth Floor
Washington, DC 20036
(202) 628-2000 (telephone)
(202) 628-2011 (facsimile)

Attorneys for Defendants CitiMortgage, Inc.,
Lehman Brothers Bank, F.S.B., Aurora Loan
Services, LLC, Mortgage Electronic Registration
Systems, Inc., and Samuel I. White, P.C.

14

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of November, 2009, a copy of the foregoing Reply

Memorandum in Further Support of Defendants' CitiMortgage, Inc., Lehman Brothers Bank,

F.S.B., Aurora Loan Services, LLC, Mortgage Electronic Registration Systems, Inc., and Samuel

I. White, P.C.'s Motion to Dismiss Plaintiffs' Fourth Amended Complaint was served upon the

following counsel of record via electronic filing:


Douglas Gottron, Esq.
Pesante & Mackin, LLP
1328 H Street, N.E.
Washington, DC 20002

Mark S. Devan, Esq.
Bruce E. Covahey, Esq.
Covahey Boozer Devan and Dore PA
606 Baltimore Ave Suite 302
Towson , MD 21204



By:    /s/ David M. Souders
       David M. Souders (Bar No. 15102)


F:\96063\037\Fourth Amended Complaint\Reply Dismiss.doc