# EXHIBIT G

USActive 25684221.1

15/09/2008  14:03   +49-211-50996557          DWPBANK WGODS                    S.   01/09

# LEHMAN BROTHERS

*$ωινιοcιοοο*

### Transaction

Date:        14 November, 2005

To:          WestLB AG
             Attention:    Documentation Unit

From:        Lehman Brothers Finance S.A.                    *Charlene McIntosh*
             c/o Lehman Brothers Europe Limited              *0044- 207- 102 2803*
             Confirmations Group
             Facsimile:    (+1) 646-885-9547 (United States of America)
             Phone:        (+44) 207-102-7661 (United Kingdom)
Effort Id:   L747316
Global Id:   2266515

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers Finance S.A. ("Party A") and WestLB AG ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below.

This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation shall supplement, form a part of, and be subject to that agreement (the "Agreement"). All provisions contained or incorporated by reference in the Agreement, upon its execution, will govern this Confirmation except as expressly modified below. Until we execute and deliver the Agreement, this Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA Form, shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction. In the event of any inconsistency between the provisions of that agreement, or the Agreement, when executed, and this Confirmation, this Confirmation will prevail for the purpose of this Transaction.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2000 ISDA Definitions (the "Swap Definitions", and together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Lehman Brothers Europe Limited ("LBEL") is acting as agent on behalf of Party A for this Transaction. LBEL has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. LBEL is regulated by the Financial Services Authority.

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the

LEHMAN BROTHERS FINANCE S.A.
TALSTRASSE 82 · P.O. BOX 2828 · CH-8021 ZURICH · SWITZERLAND
TELEPHONE (+41) 44 287 88 42

other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 21 September 2005 |
| Option Style: | European |
| Option Type: | Call |
| Seller: | Party B |
| Buyer: | Party A |
| Basket: | As specified in Annex 1 (attached hereto) |
| Number of Options: | One (1) |
| Notional Amount: | EUR 25,000,000 |
| Strike Price: | In relation to each Index comprised in the Basket, as specified in Annex 1 |
| Premium: | EUR 3,687,500 (being an amount equal to the product of (i) the Notional Amount and (ii) 14.75%) |
| Premium Payment Date: | 23 September, 2005 |
| Exchanges: | As specified in Annex 1 |
| Related Exchanges: | As specified in Annex 1 |
| Scheduled Trading Day: | Any day on which both (a) in relation to the "SX5E Index", (i) the Index Sponsor is scheduled to publish the level of the Index; and (ii) each Related Exchange is scheduled to be open for trading for its respective regular trading sessions and (b) each Exchange and Related Exchange specified in relation to each other Index comprised in the Basket is scheduled to be open for trading for their respective regular trading sessions. |

15/09/2008  14:03    +49-211-50996557          DWPBANK WGODS                    S.    03/09

| | |
|---|---|
| Exchange Business Day: | In relation to the "SX5E Index", any Scheduled Trading Day on which: (i) the Index Sponsor publishes the level of the Index; and (ii) each Related Exchange is open for trading during its respective regular trading session(s), notwithstanding any such Related Exchange closing prior to its Scheduled Closing Time. |
| | In relation to all other Indices comprised in the Basket, as defined in the Equity Definitions. |

**Procedure for Exercise:**

| | |
|---|---|
| Expiration Time: | The last occurring Valuation Time |
| Expiration Date: | The last occurring Valuation Date |
| Automatic Exercise: | Applicable |

**Valuation:**

| | |
|---|---|
| Valuation Time: | For the purposes of the Nikkei Index, means the time at which the closing level of the Index is published. |
| | For the purposes of the SX5E Index and the S&P Index, the time at which the Official Settlement Price is published or, where Section 6.8(e) of the Equity Definitions applies as a result of the fact that the Exchange-traded Contract never commences or is permanently discontinued, the Valuation Time shall be (a) with respect to the S&P Index, at the open of trading on the Exchange and (b) with respect to the SX5E Index, (i) for the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any Component Security, the Scheduled Closing Time on the Exchange in respect of such Component Security, and (b) in respect of any options contracts or future contracts on the Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of the Index is calculated and published by the Index Sponsor. |
| Valuation Date: | For the purposes of the Nikkei Index, 17 December 2010. |
| | For the purposes of the SX5E Index and the S&P Index, as defined in Section 6.8(a) of the Equity Definitions, being the day on which the relevant Official Settlement Price is published (currently expected to be 17 December, 2010) |

| | |
|---|---|
| Futures Price Valuation: | Inapplicable, in respect of the Nikkei Index, |
| | Applicable, in respect of the SX5E Index, provided that the words "the level of the relevant Index at the close of the regular trading session on the relevant Exchange" in lines 4 and 5 of Section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "the official closing level of the Index as calculated and published by the Index Sponsor". |
| | Applicable, in respect of the S&P Index. |
| Exchange-traded Contract: | The futures contract relating to the SX5E Index and the S&P Index for delivery in December 2010 and traded on the relevant Related Exchange |
| Market Disruption Event: | For the purposes of this Transaction, in relation to the SX5E Index means either, (i) (a) the occurrence or existence, in respect of any Component Security, of: |

> (1) a Trading Disruption in respect of such Component Security, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time.
>
> (2) an Exchange Disruption in respect of such Component Security, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation; OR
>
> (3) an Early Closure in respect of such Component Security; AND
>
> (b) the aggregate of all Component Securities in respect of which a Trading Disruption, an Exchange Disruption and/or an Early Closure occurs or exists comprises 20 per cent. or more of the level of the Index; OR
>
> (ii) the occurrence or existence, in respect of futures or options contracts relating to the Index, of: (a) a Trading Disruption ; (b) an Exchange Disruption, which in either case the Calculation Agent determines is material, at any time during the one hour period that ends at the Valuation Time in respect of the Related Exchange; or (c) an Early Closure.

For the purposes of determining whether the condition in (i)(b) above has been satisfied, the relevant percentage contribution of each Component Security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that Component Security to (y) the overall level of the Index, in each case using the official opening weightings as published by the Sponsor as part of the market "opening data".

In relation to all other Indices comprised in the Basket, as defined in the Equity Definitions.

| Trading Disruption: | In relation to the SX5E Index, means any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise: (i) relating to any Component Security on the Exchange in respect of such Component Security; or (ii) in futures or options contracts relating to the Index on the Related Exchange. |

In relation to all other Indices comprised in the Basket, as defined in the Equity Definitions.

| Exchange Disruption: | In relation to the SX5E Index, means any event (other than an Early Closure) that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in, or obtain market values for: (i) any Component Security on the Exchange in respect of such Component Security; or (ii) futures or options contracts relating to the Index on the Related Exchange. |

In relation to all other Indices comprised in the Basket, as defined in the Equity Definitions.

| Early Closure: | In relation to the SX5E Index, means the closure on any Exchange Business Day of the Exchange in respect of any Component Security or the Related Exchange prior to its Scheduled Closing Time unless such earlier closing is announced by such Exchange or Related Exchange (as the case may be) at least one hour prior to the earlier of: (i) the actual closing time for the regular trading session on such Exchange or Related Exchange (as the case may be) on such Exchange Business Day; and (ii) the submission deadline for orders to be entered into the Exchange or Related Exchange system for execution at the relevant Valuation Time on such Exchange Business Day. |
| | In relation to all other Indices comprised in the Basket, as defined in the Equity Definitions. |
| Disrupted Day: | In relation to the SX5E Index, means any Scheduled Trading Day on which: (i) the Index Sponsor fails to publish the level of the Index; (ii) the Related Exchange fails to open for trading during its regular trading session; or (iii) a Market Disruption Event has occurred.  The Calculation Agent shall as soon as reasonably practicable under the circumstances notify the parties or other party, as the case may be, of the occurrence of a Disrupted Day on any day that, but for the occurrence of a Disrupted Day, would have been a Valuation Date, or a Termination Date. Without limiting the obligation of the Calculation Agent to notify the parties as set forth in the preceding sentence, failure by the Calculation Agent to notify the parties of the occurrence of a Disrupted Day shall not affect the validity of the occurrence and effect of such Disrupted Day on this Transaction. |
| | In relation to all other Indices comprised in the Basket, as defined in the Equity Definitions. |

**Settlement Terms:**

| Cash Settlement: | Applicable |
| Settlement Currency: | EUR |
| Option Cash Settlement Amount: | An amount as determined by the Calculation Agent equal to the product of (i) the Notional Amount and (ii) the greater of (a) the Rate of Return and (b) zero. |
| Rate of Return: | A rate determined by the Calculation Agent in accordance with the following formula: |

$$\sum_{i=1}^{3} W_i \times \left( \frac{\text{Settlement Price}_i - \text{Strike Price}_i}{\text{Strike Price}_i} \right)$$

where;

"i" means each Index comprised in the Basket as specified in Annex 1;

"Wi" means the Weighting in respect of each Index comprised in the Basket as specified in Annex 1;

"Strike Pricei" means the Strike Price in respect of each Index comprised in the Basket as specified in Annex 1;

"Settlement Pricei" means (a) in relation to the Nikkei Index, the level of the Index as of the Valuation Time on the Valuation Date and (b) in relation to the S&P Index and the SX5E Index, the relevant Official Settlement Price on the Valuation Date.

| | |
|---|---|
| Cash Settlement Payment Date: | Two (2) Currency Business Days following the last occurring Valuation Date |

**Index Adjustment Event:**

| | |
|---|---|
| Index Cancellation: | Calculation Agent Adjustment, provided however, at the discretion of the Calculation Agent, "Cancellation and Payment" shall apply, in which case the provisions of Section 11.1(b)(C) of the Equity Definitions shall apply. |
| Index Modification: | Calculation Agent Adjustment |
| Index Disruption: | Calculation Agent Adjustment |

**Additional Disruption Events:**

| | |
|---|---|
| Change in Law: | Not Applicable |
| Hedging Disruption: | Applicable |
| Hedging Party: | Party A |
| Increased Cost of Hedging: | Applicable |
| Hedging Party: | Party A |
| Loss of Stock Borrow: | Not Applicable |
| Increased Cost of Stock Borrow: | Not Applicable |
| Determining Party: | Party A |
| Non-Reliance: | Applicable |
| Agreements and Acknowledgments Regarding Hedging Activities: | Applicable |
| Index Disclaimer: | Applicable |
| Additional Acknowledgments: | Applicable |

15/09/2008  14:03    +49-211-50996557          DWPBANK WGODS                    S.    08/09

## Annex 1

### Annex 1 to Confirmation between
### Lehman Brothers Finance S.A.
### and
### WestLB AG

#### (Effort Id: 747316)

The Basket is composed of the following Indices in the relative weightings and proportions set out in relation to each Index below.

| Index | Exchange | Related Exchange | Weighting | Strike Price |
|---|---|---|---|---|
| The Nikkei 225 Stock Average (the "Nikkei Index"), an index of 225 selected stocks listed on the first section of the Exchange, which is currently sponsored by Nihon Keizai Shimbun, Inc. (the "Sponsor"), which term shall include any agents or other persons acting on behalf of such person, as shall the term "successor sponsor" | Tokyo Stock Exchange | All Exchanges | 1/3 | 13,125 |
| The S&P 500 Composite Stock Price Index (the "S&P Index"), a market index of 500 U.S. securities, which is currently sponsored by Standard & Poor's Corporation, a division of McGraw-Hill, Inc. (the "Sponsor"), which term shall include any agents or other persons acting on behalf of such person, as shall the term "successor sponsor". | New York Stock Exchange, American Stock Exchange and NASDAQ National Markets System | All Exchanges | 1/3 | 1,210.20 |
| The Dow Jones EURO STOXX 50 (Price) Index (the "SX5E Index") (Bloomberg ticker: SX5E) is a capitalization-weighted index of 50 European blue-chip stocks from those countries participating in the EMU which is currently sponsored by STOXX LIMITED (the "Sponsor"), which term shall include any agents or other persons acting on behalf of such person, as shall the term "successor sponsor". | In respect of each component security of the Index (each, a "Component Security"), the principal stock exchange on which such Component Security is principally traded, as determined by the Calculation Agent. | Eurex | 1/3 | 3,326.78 |

**Miscellaneous:**

Calculation Agent:    Party A

Office:    For the purposes of this Transaction, Party A is not a Multibranch Party, and Party B is not a Multibranch Party.

Transfer:    Notwithstanding Section 7 of the Agreement, Party A may assign its rights and obligations under this Transaction, in whole and not in part, to any Affiliate of Lehman Brothers Holdings Inc. ("Holdings") effective upon delivery to Party B of the full unconditional guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

Governing Law:    English law; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

Termination Currency:    USD; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number (+1) 646-885-9547 (United States of America), Attention: Confirmations Group.

Yours sincerely,                    Accepted and agreed to:

**Lehman Brothers Finance S.A.**        **WestLB AG**

By:                            By:
Name: Barbara Grob                Name:
Title: Authorised Signatory            Title:

By:
Name: Nadia Casanova
Title: Authorized Signatory

Execution time will be furnished upon Counterparty's written request.

# LEHMAN BROTHERS

**Revised Transaction**

| | |
|---|---|
| Date: | 28 February, 2006 |
| To: | WestLB AG |
| | Attention:    Documentation Unit |
| From: | Lehman Brothers Finance S.A. |
| | c/o Lehman Brothers International (Europe) |
| | Transaction Management Group |
| | Facsimile:    (+1) 646-885-9547 (United States of America) |
| | Phone:    (+4420) 7-102-7661 (United Kingdom) |
| Effort Id: | 600423 |
| Global Id: | 2098217 |

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers Finance S.A. ("Party A") and WestLB AG ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below. This Confirmation supersedes and replaces all prior communications relating to this Transaction.

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of 18 August, 1997, as amended and supplemented from time to time, between Party A and Party B (the "Agreement"). All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2000 ISDA Definitions (the "Swap Definitions", and together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Lehman Brothers International (Europe) ("LBIE") is acting as agent on behalf of Party A for this Transaction. LBIE has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. LBIE is regulated by the Financial Services Authority.

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon

LEHMAN BROTHERS FINANCE S.A.
TALSTRASSE 82 · P.O. BOX 2828 · CH-8021 ZURICH · SWITZERLAND
TELEPHONE (41-1) 287 88 42

due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

Party B represents that it is not in possession of any material non-public information concerning the business, operations or prospects of the Issuer(s) and was not in possession of any such information at the time of placing any order with respect to the Transaction.

"Material" information for these purposes is any information to which an investor would reasonably attach importance in reaching a decision to buy, sell or hold any securities of the Issuer(s).

Party B further represents that (i) it is not an "affiliate" of the Issuer, as such term is defined in Regulation 230.144(a)(1) under the Securities Act of 1933, as amended, (ii) nor is it a counterparty entering into this Transaction on behalf of the Issuer or any affiliate thereof (iii) nor is it required to file reports with respect to the Shares or the Issuer pursuant to Sections 13(d) or 16(a) of the Securities Exchange Act of 1934, as amended.

The terms of the particular Transaction, which consists of seven Option Transactions, "Option Transaction A", "Option Transaction B", "Option Transaction C", "Option Transaction D", "Option Transaction E", "Option Transaction F" and "Option Transaction G", to which this Confirmation relates are as follows:

**General Terms relating to the Option Transactions:**

| | |
|---|---|
| Trade Date: | 04 March, 2005 |
| Strike Date: | 07 March, 2005, or if such day is not a Scheduled Trading Day, the next following day that is a Scheduled Trading Day. |
| | If such day is a Disrupted Day, then Section 6.4, 6.5, and 6.6 of the Equity Definitions shall apply and the words "Valuation Date" shall be replaced with the words "Strike Date". |
| | In addition for the purposes of Section 6.1 of the Equity Definitions such day shall be deemed a Valuation Date |
| Option Style: | European |
| Option Type: | Call |
| Seller: | Party A |
| Buyer: | Party B |
| Basket: | In respect of each Option Transaction, as specified in Annex 1 |
| Number of Options: | In respect of each Option Transaction, one. |
| Notional Amount: | EUR 17,500,000 |
| Strike Price: | In respect of any Share comprised in the Basket for which the Exchange is specified in Annex 1 as the Milan Stock Exchange, the Prezzo di Riferimento of the Share as quoted by the Exchange after the close |

Risk ID. L05038411 / Effort ID: 600423 / Global Deal ID: 2098217

of trading on the Strike Date.

In respect of each Share comprised in the Basket, the official closing price per Share as quoted by the Exchange as of the Valuation Time on the Strike Date.

| | |
|---|---|
| Premium: | EUR 2,292,500 (being the product of i) the Notional Amount and ii) 13.10%) |
| Premium Payment Date | 08 March, 2005 |
| Exchange(s): | In respect of each Share comprised in the Basket, as specified in Annex 1. |
| Related Exchange(s): | All Exchanges |

**Procedure for Exercise of the Option Transactions:**

| | |
|---|---|
| Expiration Time: | In respect of each Option Transaction, the last occurring Valuation Time |
| Expiration Date: | In respect of each Option Transaction, the relevant Valuation Date |
| Automatic Exercise: | Applicable |

**Valuation of the Option Transactions:**

| | |
|---|---|
| Valuation Time: | In relation to any Share comprised in the Basket in respect of which the Exchange is specified in Annex 1 as the Milan Stock Exchange the time at which such Exchange announces the Prezzo di Riferimento of the Share |
| | In respect of each Share comprised in the Basket the close of trading on the Exchange, without regard to extended trading hours |
| Valuation Date: | In respect of Option Transaction A, 02 March, 2006 |
| | In respect of Option Transaction B, 02 March, 2007 |
| | In respect of Option Transaction C, 02 March, 2008 |
| | In respect of Option Transaction D, 02 March, 2009 |
| | In respect of Option Transaction E, 02 March, 2010 |
| | In respect of Option Transaction F, 02 March, 2011 |
| | In respect of Option Transaction G, 02 March, 2012 |

**Settlement Terms of the Option Transactions:**

| | |
|---|---|
| Cash Settlement: | Applicable |
| Settlement Currency: | EUR |

Risk ID: L05038411 / Effort ID: 600423 / Global Deal ID: 2098217

3

| | |
|---|---|
| **Option Cash Settlement Amount:** | In respect of each Option Transaction, an amount as determined by the Calculation Agent equal to the product of (a) the Notional Amount and (b) the sum of (i) the relevant Bonus Rate, and (ii) the greater of (A) the relevant Basket Rate of Return, and (B) zero |
| <u>Bonus Rate:</u> | If the Basket Performance in respect of Option Transaction A is greater than or equal to 35%, the Bonus Rate shall be deemed to equal 8% in relation to each Option Transaction, otherwise, |

If the Basket Performance in respect of Option Transaction B is greater than or equal to 35%, the Bonus Rate shall be deemed to equal 16% in respect of Option Transaction B, 8% in respect of Option Transactions C, D, E, F and G, and zero in respect of each other Option Transaction, otherwise

If the Basket Performance in respect of Option Transaction C is greater than or equal to 35%, the Bonus Rate shall be deemed to equal 24% in respect of Option Transaction C, 8% in respect of Option Transactions D, E, F and G, and zero in respect of each other Option Transaction, otherwise

If the Basket Performance in respect of Option Transaction D is greater than or equal to 35%, the Bonus Rate shall be deemed to equal 32% in respect of Option Transaction D, 8% in respect of Option Transactions E, F and G, and zero in respect of each other Option Transaction, otherwise

If the Basket Performance in respect of Option Transaction E is greater than or equal to 35%, the Bonus Rate shall be deemed to equal 40% in respect of Option Transaction E, 8% in respect of Option Transactions F and G, and zero in respect of each other Option Transaction, otherwise

If the Basket Performance in respect of Option Transaction F is greater than or equal to 35%, the Bonus Rate shall be deemed to equal 48% in respect of Option Transaction F, 8% in respect of Option Transaction G, and zero in respect of each other Option Transaction, otherwise

<u>If the Basket Performance in respect of Option Transaction G is greater or equal to 35%, the Bonus Rate shall be deemed to equal 56% in respect of Option Transaction G, and zero in respect of each other Option Transaction, otherwise</u>

If the Basket Performance in respect of each Option Transaction is less than 35%, the Bonus Rate in respect of each Option Transaction shall be deemed

|                          | to equal zero |
|--------------------------|---------------|
| Basket Performance:      | In respect of the Strike Date, 0% |
|                          | In respect of each Option Transaction, a rate equal to the arithmetic average of each relevant Share Rate of Return |
| Share Rate of Return:    | In relation to Option Transaction A, and (i) in respect of the two Shares comprised in the Basket with the highest numerical value of Share Performance in relation to Option Transaction A (the "Option Transaction A Best Performers"), the greater of a.) the relevant Share Performance and b.) zero, and (ii) in respect of each other Share comprised in the Basket the relevant Share Performance |

In relation to Option Transaction B, and (i) in respect of the Option Transaction A Best Performers the relevant Share Rate of Return in respect of Option Transaction A, (ii) in respect of the two other Shares comprised in the Basket with the highest numerical value of Share Performance in relation to Option Transaction B (the "Option B Best Performers"), the greater of a.) the relevant Share Performance and b.) zero, and (iii) in respect of the 10 remaining Shares comprised in the Basket, the relevant Share Performance

In relation to Option Transaction C, and (i) in respect of the Option Transaction A Best Performers, and the Option Transaction B Best Performers the relevant Share Rate of Return in respect of Option Transaction B, (ii) in respect of the two other Shares comprised in the Basket with the highest numerical value of Share Performance in relation to Option Transaction C (the "Option C Best Performers"), the greater of a.) the relevant Share Performance and b.) zero, and (iii) in respect of the 8 remaining Shares comprised in the Basket, the relevant Share Performance

In relation to Option Transaction D, and (i) in respect of the Option Transaction A Best Performers, the Option Transaction B Best Performers, and the Option Transaction C Best Performers, the relevant Share Rate of Return in respect of Option Transaction C, (ii) in respect of the two other Shares comprised in the Basket with the highest numerical value of Share Performance in relation to Option Transaction D (the "Option D Best Performers") such Share Performance, and (iii) in respect of the 6 remaining Shares comprised in the Basket, the

relevant Share Performance

In relation to Option Transaction E, and (i) in respect of the Option Transaction A Best Performers, the Option Transaction B Best Performers, the Option Transaction C Best Performers, and the Option Transaction D Best Performers, the relevant Share Rate of Return in respect of Option Transaction D, (ii) in respect of the two other Shares comprised in the Basket with the highest numerical value of Share Performance in relation to Option Transaction E (the "Option E Best Performers") such Share Performance, and (iii) in respect of the 4 remaining Shares comprised in the Basket, the relevant Share Performance

In relation to Option Transaction F, and (i) in respect of the Option Transaction A Best Performers, the Option Transaction B Best Performers, the Option Transaction C Best Performers, the Option Transaction D Best Performers, and the Option E Best Performers the relevant Share Rate of Return in respect of Option Transaction E, (ii) in respect of the two other Shares comprised in the Basket with the highest numerical value of Share Performance in relation to Option Transaction F (the "Option F Best Performers") such Share Performance, and (iii) in respect of the 2 remaining Shares comprised in the Basket, the relevant Share Performance

In relation to Option Transaction G, and (i) in respect of the Option Transaction A Best Performers, the Option Transaction B Best Performers, the Option Transaction C Best Performers, the Option Transaction D Best Performers, the Option E Best Performers and the Option F Best Performers the relevant Share Rate of Return in respect of Option Transaction F, and and (ii) in respect of the 2 remaining Shares comprised in the Basket, the relevant Share Performance

Share Performance:

In relation to each Option Transaction, and in respect of each Share comprised in the Basket, a rate as determined by the Calculation Agent as of the relevant Valuation Date, in accordance with the following formula:

$$\frac{\text{Settlement Price} - \text{Strike Price}}{\text{Strike Price}}$$

| | |
|---|---|
| Basket Rate of Return: | In respect of each Option Transaction the lesser of (a) 8%, and (b) the excess of the related Basket Performance over the highest numerical value of Basket Performance in relation to the Strike Date and each preceding Valuation Date and related Option Transaction |
| Settlement Price: | In relation to each Option Transaction: |
| | (i) In respect of any Share comprised in the Basket for which the Exchange is specified in Annex 1 as the Milan Stock Exchange the Prezzo di Riferimento of the Share as quoted by the Exchange after the close of trading on the relevant Valuation Date. |
| | (ii) In respect of each other Share comprised in the Basket, the official closing price per Share as quoted by the Exchange as of the Valuation Time on such Valuation Date. |
| Prezzo di Riferimento: | As defined in the "Regolamento dei mercati organizzati e gestiti da Borsa Italiana S.p.A" and in the "Istruzioni al Regolamento dei mercati organizzati e gestiti da Borsa Italiana S.p.A ", as amended and supplemented from time to time (collectively the 'Exchange Rules') |
| Cash Settlement Payment Dates: | In respect of each Option Transaction, five (5) Currency Business Days after the relevant Valuation Date. |

**Share Adjustments:**

| | |
|---|---|
| Method of Adjustment: | Calculation Agent Adjustment |

**Extraordinary Events:**

**Consequences of Merger Events:**

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |

**Tender Offer:**

| | |
|---|---|
| | Applicable |

**Consequences of Tender Offers:**

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment. |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |

Risk ID: L05038411 / Effort ID: 600423 / Global Deal ID: 2098217

| | |
|---|---|
| New Shares: | The definition of "New Shares" in Section 12.1 of the Equity Definitions shall be amended by deleting subsection (i) in its entirety and replacing it with the following: "(i) publicly quoted, traded or listed on the New York Stock Exchange, the American Stock Exchange, the NASDAQ NMS, the London, Paris, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges, Virt-x or Xetra.". |
| Tender Offers: | The definition of "Tender Offer" in Section 12.1 of the Equity Definitions will be amended by replacing the phrase "outstanding voting shares of the Issuer" in the fourth line thereof with "outstanding Shares" |
| **Composition of Combined Consideration:** | Not Applicable |
| **Nationalization, Insolvency or Delisting:** | Negotiated Close-out |
| Delisting: | The definition of "Delisting" in Section 12.6 of the Equity Definitions shall be deleted in its entirety and replaced with the following: "'Delisting' means that the Exchange announces that pursuant to the rules of such Exchange, the Shares cease (or will cease) to be listed, traded or publicly quoted on the Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted on the New York Stock Exchange, the American Stock Exchange, the NASDAQ NMS, the London, Paris, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges, Virt-x or Xetra". |
| **Additional Disruption Events:** | |
| Change in Law: | Not Applicable |
| Insolvency Filing: | Applicable |
| | The definition of "Insolvency Filing" in Section 12.9 of the Equity Definitions shall be amended by deleting the clause "provided that such proceedings instituted or petitions presented by creditors and not consented to by the Issuer shall not be deemed an Insolvency Filing" at the end of such definition and replacing it with the following: "; or it has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by a creditor and such proceeding is not dismissed, discharged, stayed or restrained in each case within |

fifteen days of the institution or presentation thereof."

Section 12.9(b)(i) of the Equity Definitions is hereby amended by adding the following sentence at the end: "If neither party elects to terminate the Transaction, the Calculation Agent may adjust the terms of the Transaction upon the occurrence of such an event pursuant to Modified Calculation Agent Adjustment (as if such event were a Tender Offer)."

| | |
|---|---|
| Hedging Disruption: | Applicable |
| Hedging Party: | Party A |
| Increased Cost of Hedging: | Applicable |
| Hedging Party: | Party A |
| Loss of Stock Borrow: | Not Applicable |
| Increased Cost of Stock Borrow: | Not Applicable |
| Determining Party: | Party A |
| Non-Reliance: | Applicable |
| Agreements and Acknowledgments Regarding Hedging Activities: | Applicable |
| Additional Acknowledgments: | Applicable |

**Additional Provision:**          If a Merger Date or Tender Offer Date is scheduled to be after, in respect of any Option Transaction, the relevant Valuation Date, the Calculation Agent will determine the economic effect on the theoretical value of the Transaction of the announcement of a potential Merger Event or Tender Offer (including without limitation any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) from the Announcement Date to the relevant Valuation Date. If such economic effect is material, the Calculation Agent will adjust such terms of this Transaction as it determines in its sole and absolute discretion to reflect such economic effect.

**Miscellaneous:**

Calculation Agent:          Party A

Office:          For the purposes of this Transaction, the Office of Party A is its Head Office, and the Office of Party B is its Head Office.

ANNEX 1

Annex 1 to a Confirmation between
Lehman Brothers Finance S.A.
and
WestLB AG

Effort Id: 600423

Shares comprising the Baskets

| Issuer: | ISIN Code: | Exchange: |
|---|---|---|
| American Express Company | US0258161092 | New York Stock Exchange |
| Endesa S.A. | ES0130670112 | Madrid Stock Exchange |
| ENI S.p.A. | IT0003132476 | Milan Stock Exchange |
| General Electric Company | US3696041033 | New York Stock Exchange |
| Groupe Danone | FR0000120644 | Paris Stock Exchange |
| Lloyds TSB Group plc. | GB0008706128 | London Stock Exchange |
| Nestlé S.A. | CH0012056047 | Virt-x |
| Novartis AG | CH0012005267 | Virt-x |
| Royal Dutch Petroleum Company | NL0000009470 | Amsterdam Stock Exchange |
| Procter & Gamble Company | US7427181091 | New York Stock Exchange |
| Telecom Italia S.p.A. | IT0003497168 | Milan Stock Exchange |
| Tokyo Electric Power Co. Inc. | JP3585800000 | Tokyo Stock Exchange |
| Total Fina Elf S.A. | FR0000120271 | Paris Stock Exchange |
| United Utilities plc. | GB0006462336 | London Stock Exchange |

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number 646-885-9547 (United States of America), Attention: Documentation.

Yours sincerely,                           Accepted and agreed to:

**Lehman Brothers Finance S.A.**          **WestLB AG**

By:                                        By:
Name: Barbara Grob                         Name:
Title:  Authorised Signatory               Title:

By:
Name: Nadia Casanova
Title:  Authorized Signatory

Execution time will be furnished upon Counterparty's written request.

Risk ID: L05038411 / Effort ID: 600423 / Global Deal ID: 2098217

10

# LEHMAN BROTHERS

### Revised Transaction

| | |
|---|---|
| Date: | 21 April, 2006 |
| To: | WestLB AG |
| Attention: | Documentation Unit |
| From: | Lehman Brothers Finance S.A. |
| | c/o Lehman Brothers International (Europe) |
| | Transaction Management Group |
| Facsimile: | (+1) 646-885-9547 (United States of America) |
| Phone: | (+4420) 7-102-7661 (United Kingdom) |

Effort Id:    680894
Global Id:    2195942

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers Finance S.A. ("Party A") and WestLB AG ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below. **This Confirmation supersedes and replaces all prior communications relating to this Transaction.**

This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation shall supplement, form a part of, and be subject to that agreement (the "Agreement"). All provisions contained or incorporated by reference in the Agreement, upon its execution, will govern this Confirmation except as expressly modified below. Until we execute and deliver the Agreement, this Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA Form, shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction. In the event of any inconsistency between the provisions of that agreement, or the Agreement, when executed, and this Confirmation, this Confirmation will prevail for the purpose of this Transaction.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2000 ISDA Definitions (the "Swap Definitions", and together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Lehman Brothers International (Europe) ("LBIE") is acting as agent on behalf of Party A for this Transaction. LBIE has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. LBIE is regulated by the Financial Services Authority.

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

Party B represents that it is not in possession of any material non-public information concerning the business, operations or prospects of the Issuer(s) and was not in possession of any such information at the time of placing any order with respect to the Transaction.

"Material" information for these purposes is any information to which an investor would reasonably attach importance in reaching a decision to buy, sell or hold any securities of the Issuer(s).

Party B further represents that (i) it is not an "affiliate" of the Issuer, as such term is defined in Regulation 230.144(a)(1) under the Securities Act of 1933, as amended, (ii) nor is it a counterparty entering into this Transaction on behalf of the Issuer or any affiliate thereof (iii) nor is it required to file reports with respect to the Shares or the Issuer pursuant to Sections 13(d) or 16(a) of the Securities Exchange Act of 1934, as amended.

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 24 June, 2005 |
| Effective Date: | 30 June, 2005 |
| Termination Date: | The final Cash Settlement Payment Date, subject to (i) adjustment in accordance with the Following Business Day Convention and (ii) Early Redemption. |
| Basket: | In relation to the first Valuation Date (the "Initial Basket Adjustment Date" (as adjusted in accordance with the "Basket Restructuring" provision below)), as specified in Annex 1 (attached hereto). |
| | In relation to each Valuation Date thereafter, a basket composed of the Shares comprised in the Basket in respect of the immediately preceding Valuation Date with the exception of the Share in such Basket with the lowest numerical value of Performance, if, as of such preceding Valuation Date the Performance of the Share is equal to or less than minus 50%. |
| Initial Basket Adjustment Date: | The third Valuation Date (subject to the "Basket Restructuring" provision below) |

| | |
|---|---|
| Basket Restructuring: | The Initial Basket Adjustment Date has been amended from the third Valuation Date to the first Valuation Date effective 28 June, 2005. In consideration of such amendment, Party A shall pay to Party B the Party A Initial Exchange Amount as calculated based upon the Amended Initial Exchange Rate |
| Exchange: | As specified in Annex 1 |
| Related Exchange: | All Exchanges |

**Equity Amounts:**

| | |
|---|---|
| Equity Amount Payer: | Party A |
| Equity Notional Amount: | EUR 60,000,000 |
| Equity Notional Reset: | Not Applicable |
| Type of Return: | Price Return |
| Equity Amount: | In respect of each Cash Settlement Payment Date, if any, an amount, determined by the Calculation Agent equal to the product of (i) the Equity Notional Amount and (ii) the greater of (a) the Rate of Return in respect of such Cash Settlement Payment Date and (b) the Rate of Return in relation to the immediately preceding Cash Settlement Payment Date, if any. |
| Rate of Return: | In respect of each Cash Settlement Payment Date thereafter, a rate, determined by the Calculation Agent equal to the greater of (i) zero and (ii) the sum of (a) 5% and (b) the product of (i) the Multiplier and (ii) the lowest numerical value of Performance in respect of such Cash Settlement Payment Date. |
| Performance: | In respect of each Share comprised in the Basket and in relation to each Valuation Date, a rate as determined by the Calculation Agent in accordance with the following formula: |

$$\frac{\text{Final Price - Initial Price}}{\text{Initial Price}}$$

| | |
|---|---|
| Multiplier: | 15% |
| Initial Price: | In respect of each Share comprised in the Basket, as specified in Annex 1 |
| Final Price: | In respect of each Share comprised in the Basket, the Relevant Price of the Share |
| Valuation Time: | In respect of each Share comprised in the Basket, the Scheduled Closing Time |

Risk ID: L05065328 / Effort ID: 680894 / Global Deal ID: 2195942

3

| | |
|---|---|
| Valuation Dates: | Subject to Early Redemption, each 22 June, from and including 22 June, 2006, to and including 22 June, 2012; |
| | Provided, that in no event shall the third Valuation Date or any following Valuation Date for any Share comprised in the Basket be postponed beyond the relevant Final Date. If any such Valuation Date is postponed beyond the relevant Final Date, then that Final Date shall be deemed to be the Valuation Date for that relevant Share notwithstanding the fact that such Final Date (x) may not be a Scheduled Trading Day and (y) may be a Disrupted Day, and the Calculation Agent shall determine it good faith estimate of the value for that Share as of the Valuation Time on that Final Date. |
| Final Date: | In relation to the third Valuation Date, 26 June, 2008; |
| | In relation to the fourth Valuation Date, 26 June, 2009; |
| | In relation to the fifth Valuation Date, 28 June, 2010; |
| | In relation to the sixth Valuation Date, 28 June, 2011; |
| | In relation to the seventh Valuation Date, 28 June, 2012. |
| Relevant Price: | In respect of each Share comprised in the Basket the official closing price per Share as quoted by the Exchange as of the Valuation Time on the Valuation Date |

**Floating Amounts:**

| | |
|---|---|
| Floating Amount Payer: | Party B |
| Notional Amount: | The Equity Notional Amount |
| Payment Dates: | 30 June, 2006, 30 June, 2007 and each Cash Settlement Payment Date, subject to adjustment in accordance with the Following Business Day Convention |
| Floating Rate Option: | EUR-EURIBOR-Telerate |
| Designated Maturity: | 12 months |
| Spread: | Minus 0.50% |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first day of each Calculation Period |

**Initial Exchange:**

| | |
|---|---|
| Party A Initial Exchange Amount: | An amount equal to the product of (i) the Equity Notional Amount as of the Effective Date and (ii) the Initial Exchange Rate |

Risk ID: L05065328 / Effort ID: 680894 / Global Deal ID: 2195942

4

Initial Exchange Rate:            10.035% (the "Amended Initial Exchange Rate") (as amended from 10.25% in consideration of the Basket Restructuring)

Initial Exchange Date:            Effective Date, subject to adjustment in accordance with the Following Business Day Convention.

**Business Day:**                  TARGET Settlement Day

**Settlement Terms:**

Settlement Currency:           EUR

Cash Settlement:                Applicable

Cash Settlement Payment Date(s):   In respect of the third Valuation Date, 30 June, 2008;

In respect of the fourth Valuation Date, if any, 30 June, 2009;

In respect of the fifth Valuation Date, if any, 30 June, 2010;

In respect of the sixth Valuation Date, if any, 30 June, 2011; and

In respect of the seventh Valuation Date, if any, 30 June, 2012.

**Share Adjustments:**

Method of Adjustment:          Calculation Agent Adjustment

**Extraordinary Events:**

**Consequences of Merger Events:**

Share-for-Share:               Modified Calculation Agent Adjustment

Share-for-Other:               Modified Calculation Agent Adjustment

Share-for-Combined:            Modified Calculation Agent Adjustment

Determining Party:             Party A

**Tender Offer:**               Applicable

**Consequences of Tender Offers:**

Share-for-Share:               Modified Calculation Agent Adjustment

Share-for-Other:               Modified Calculation Agent Adjustment

Share-for-Combined:            Modified Calculation Agent Adjustment

Determining Party:             Party A

| | |
|---|---|
| New Shares: | The definition of "New Shares" in Section 12.1 of the Equity Definitions shall be amended by deleting subsection (i) in its entirety and replacing it with the following: "(i) publicly quoted, traded or listed on the on the New York Stock Exchange, the American Stock Exchange, the NASDAQ National Market System, Virt-x, Xetra or on the Tokyo, London, Paris. Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg. Vienna or Dublin Stock Exchanges" |
| Tender Offers: | The definition of "Tender Offer" in Section 12.1 of the Equity Definitions will be amended by replacing the phrase "outstanding voting shares of the Issuer" in the fourth line thereof with "outstanding Shares" |
| Composition of Combined Consideration: | Not Applicable |
| Nationalization, Insolvency or Delisting: | Negotiated Close-out |
| Delisting: | The definition of "Delisting" in Section 12.6 of the Equity Definitions shall be deleted in its entirety and replaced with the following: '"Delisting" means that the Exchange announces that pursuant to the rules of such Exchange, the Shares cease (or will cease) to be listed, traded or publicly quoted on the Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted on the New York Stock Exchange. the American Stock Exchange, the NASDAQ National Market System, Virt-x. Xetra or on the Tokyo, London, Paris, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges". |

**Additional Disruption Events:**

| | |
|---|---|
| Change in Law: | Not Applicable |
| Insolvency Filing: | Applicable |
| | The definition of "Insolvency Filing" in Section 12.9 of the Equity Definitions shall be amended by deleting the clause "provided that such proceedings instituted or petitions presented by creditors and not consented to by the Issuer shall not be deemed an Insolvency Filing" at the end of such definition and replacing it with the following: "; or it has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by a creditor and such proceeding is not dismissed, discharged, stayed or restrained in each case |

24/04/2006  13:13    +49-211-50996558              DWS BANK WGODS                        S.     07/10

within fifteen days of the institution or presentation thereof."

Section 12.9(b)(i) of the Equity Definitions is hereby amended by adding the following sentence at the end: "If neither party elects to terminate the Transaction, the Calculation Agent may adjust the terms of the Transaction upon the occurrence of such an event pursuant to Modified Calculation Agent Adjustment (as if such event were a Tender Offer)."

| | |
|---|---|
| Hedging Disruption: | Applicable |
| Hedging Party: | Party A |
| Increased Cost of Hedging. | Applicable |
| Hedging Party: | Party A |
| Loss of Stock Borrow: | Not Applicable |
| Increased Cost of Stock Borrow: | Not Applicable |
| Determining Party: | Party A |
| Non-Reliance: | Applicable |
| Agreements and Acknowledgments Regarding Hedging Activities: | Applicable |
| Additional Acknowledgments: | Applicable |

**Additional Provision:**

If a Merger Date or Tender Offer Date is scheduled to be after, in respect of an Option Transaction, the Expiration Date or, in respect of any other Transaction, the final Valuation Date, the Calculation Agent will determine the economic effect on the theoretical value of the Transaction of the announcement of a potential Merger Event or Tender Offer (including without limitation any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) from the Announcement Date to the Expiration Date or the final Valuation Date, as applicable. If such economic effect is material, the Calculation Agent will adjust the terms of the Transaction to reflect such economic effect.

**Miscellaneous:**

Early Redemption:

If, in respect of the third Valuation Date, or any succeeding Valuation Date thereafter, the sum of the Rate of Returns in respect of such Valuation Date and each preceding Valuation Date is greater than or equal to 5% (an "Early Redemption Event"), this Transaction shall terminate as of such Valuation Date, such Valuation Date being deemed the final Valuation Date and the Cash Settlement Payment Date in respect of such Valuation Date being deemed the Termination

24/04/2006  13:13    +49-211-50996558         DWS BANK WGODS                    S.    08/10

## ANNEX 1

Annex 1 to Confirmation between
Lehman Brothers Finance S.A.
and
WestLB AG

Effort Id: 680894

Shares comprised in the Basket

The Basket is composed of the specified Shares of the Issuers listed below.

| Issuer | Bloomberg Code: | Exchange | Initial Price (determined on 27 June, 2005) |
|---|---|---|---|
| Alcoa, Inc | AA US | New York Stock Exchange | USD 26.09 |
| BASF AG | BAS GY | Xetra | EUR 54.74 |
| Bayerische Motoren Werke AG | BMW GY | Xetra | EUR 36.58 |
| Bear Stearns & Co, Inc | BSC US | New York Stock Exchange | USD 103.82 |
| Chevron Corporation | CVX US | New York Stock Exchange | USD 57.25 |
| Colgate-Palmolive Co | CL US | New York Stock Exchange | USD 50.15 |
| Down Chemical Co | DOW US | New York Stock Exchange | USD 43.88 |
| Erste Bank der o Oesterreichischen Sparkassen | EBS AV | Vienna Stock Exchange | EUR 41.28 |
| Fannie Mae | FNM US | New York Stock Exchange | USD 57.86 |
| Harley-Davidson Inc | HDI US | New York Stock Exchange | USD 50.12 |
| Kao Corp | 4452 JP | Tokyo Stock Exchange | JPY 2,580 |
| Nestle SA | NESN VX | Virt-x | CHF 328.5 |
| Nintendo Co Ltd | 7974 JP | Tokyo Stock Exchange | JPY 11,280 |
| NTT DoCoMo Inc | 9437 JP | Tokyo Stock Exchange | JPY 162,000 |
| Ricoh Co. Ltd | 7752 JP | Tokyo Stock Exchange | JPY 1,744 |

Risk ID: L05065328 / Effort ID: 680894 / Global Deal ID: 2195942

| Issuer | Bloomberg Code: | Exchange | Initial Price (determined on 27 June, 2005) |
|---|---|---|---|
| Sanofi-Aventis SA | SAN FP | Paris Stock Exchange | EUR 67.25 |
| Shin-Etsu Chemical Co. Ltd | 4063 JP | Tokyo Stock Exchange | JPY 4,170 |
| Southwest Airlines Co | LUV US | New York Stock Exchange | USD 13.77 |
| Starbucks Corp | SBUX US | NASDAQ National Market System | USD 25.98 |

|                     |                                                                                                                                      |
|---------------------|--------------------------------------------------------------------------------------------------------------------------------------|
|                     | Date and the rights and obligations of the parties shall cease except in respect of unpaid amounts or delivery due on or before such Termination Date. |
| Calculation Agent:  | Party A                                                                                                                               |
| Office:             | For the purposes of this Transaction, Party A is not a Multibranch Party, and Party B is not a Multibranch Party.                      |
| Transfer:           | Notwithstanding Section 7 of the Agreement, Party A may assign its rights and obligations under this Transaction, in whole and not in part, to any Affiliate of Lehman Brothers Holdings Inc. ("Holdings") effective upon delivery to Party B of the full unconditional guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Governing Law:      | English law; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Termination Currency: | USD; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number 646-885-9547 (United States of America), Attention: Documentation.

Yours sincerely,                                      Accepted and agreed to:

**Lehman Brothers Finance S.A.**                      **WestLB AG**

By: _____                          By: _____
Name:  Barbara Grob                                   Name:
Title:   Authorised Signatory                         Title:

By: _____
Name:  Julian Schneidawind
Title:   Authorized Signatory
Execution time will be furnished upon Counterparty's written request.

Risk ID: L05065328 / Effort ID: 680894 / Global Deal ID: 2195942

8

Korrektur ok

# LEHMAN BROTHERS

### 2nd Revised Transaction

Date:        4 May, 2006

To:          WestLB AG
             Attention:    Documentation Unit

From:        Lehman Brothers Finance S.A.
             c/o Lehman Brothers International (Europe)
             Confirmations Group
             Facsimile:    (+1) 646-885-9547 (United States of America)
             Phone:        (+44) 207-102-7661 (United Kingdom)
Effort Id:   783214
Global Id:   2322784

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transactions (each a "Transaction") entered into between Lehman Brothers Finance S.A. ("Party A") and WestLB AG ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below. **This Confirmation supersedes and replaces all prior communications relating to this Transaction.**

This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation shall supplement, form a part of, and be subject to that agreement (the "Agreement"). All provisions contained or incorporated by reference in the Agreement, upon its execution, will govern this Confirmation except as expressly modified below. Until we execute and deliver the Agreement, this Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA Form, shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction. In the event of any inconsistency between the provisions of that agreement, or the Agreement, when executed, and this Confirmation, this Confirmation will prevail for the purpose of this Transaction.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2000 ISDA Definitions (the "Swap Definitions", and together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Lehman Brothers International (Europe) ("LBIE") is acting as agent on behalf of Party A for this Transaction. LBIE has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. LBIE is regulated by the Financial Services Authority.

LEHMAN BROTHERS FINANCE S.A.
TALSTRASSE 82 · P.O. BOX 2828 · CH-8021 ZURICH · SWITZERLAND
TELEPHONE (+41) 44 287 88 42

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

Party B represents that it is not in possession of any material non-public information concerning the business, operations or prospects of the Issuer(s) and was not in possession of any such information at the time of placing any order with respect to the Transaction.

"Material" information for these purposes is any information to which an investor would reasonably attach importance in reaching a decision to buy, sell or hold any securities of the Issuer(s).

Party B further represents that (i) it is not an "affiliate" of the Issuer, as such term is defined in Regulation 230.144(a)(1) under the Securities Act of 1933, as amended, (ii) nor is it a counterparty entering into this Transaction on behalf of the Issuer or any affiliate thereof (iii) nor is it required to file reports with respect to the Shares or the Issuer pursuant to Sections 13(d) or 16(a) of the Securities Exchange Act of 1934, as amended.

The terms of the particular Transaction, which consists of seven Option Transactions, "Option Transaction A", "Option Transaction B", "Option Transaction C", "Option Transaction D", "Option Transaction E", "Option Transaction F" and "Option Transaction G", to which this Confirmation relates are as follows:

**General Terms relating to the Option Transactions:**

| | |
|---|---|
| Trade Date: | 18 November, 2005 |
| Option Style: | European |
| Option Type: | Call ("Sylvester") |
| Seller: | Party A |
| Buyer: | Party B |
| Basket: | As specified in Annex 1 |
| Number of Options: | In respect of each Option Transaction. One (1) |
| Notional Amount: | EUR 7,000,000 |
| Strike Price: | In respect of each Share comprised in the Basket, as specified in Annex 1 (and being the Relevant Price of such Share as of the Strike Date) |
| Strike Date: | 21 November, 2005 |

11/05/2006   07:51   +49-211-50996557                    BANK WGODS                    S.        03/10

| | |
|---|---|
| Trigger Price: | In respect of each Share comprised in the Basket, as specified in Annex 1 (and being the product of i) the Strike Price in relation to the Share and (ii) 75%) |
| Premium: | EUR 678,300 (being an amount as determined by the Calculation Agent equal to the product of (i) the Notional Amount as of Trade Date and (ii) 9.69%) |
| Premium Payment Date: | 25 November, 2005 |
| Exchange(s): | As specified in Annex 1 |
| Related Exchange(s): | All Exchanges |

**Procedures for Exercise of the Option Transactions:**

| | |
|---|---|
| Expiration Time: | The last occurring Valuation Time |
| Expiration Date: | In respect of each Option Transaction, the relevant Valuation Date |
| Automatic Exercise: | Applicable |

**Valuation of the Option Transactions:**

| | |
|---|---|
| Valuation Time: | The Scheduled Closing Time |
| Valuation Dates: | In respect of each Option Transaction, the final Observation Date in relation to the Option Transaction. |
| Observation Date(s): | In respect of Option Transaction A, the first Scheduled Trading Day of each month commencing on and including December 2005, up to and including November 2006 ("Option Transaction A Observation Period"). |
| | In respect of Option Transaction B, the first Scheduled Trading Day of each month commencing on and including December 2006, up to and including November 2007 ("Option Transaction B Observation Period"). |
| | In respect of Option Transaction C, the first Scheduled Trading Day of each month commencing on and including December 2007, up to and including November 2008 ("Option Transaction C Observation Period"). |
| | In respect of Option Transaction D, the first Scheduled Trading Day of each month commencing on and including December 2008, up to and including November 2009 ("Option Transaction D Observation Period"). |
| | In respect of Option Transaction E, the first Scheduled Trading Day of each month commencing on and including December 2009, up to and |

including November 2010 ("Option Transaction E Observation Period").

In respect of Option Transaction F, the first Scheduled Trading Day of each month commencing on and including December 2010, up to and including November 2011 ("Option Transaction F Observation Period").

In respect of Option Transaction G, the first Scheduled Trading Day of each month commencing on and including December 2011, up to and including November 2012 ("Option Transaction G Observation Period").

Provided that if any such day is a Disrupted Day then Sections 6.1, 6.2, 6.4, 6.5 and 6.6 of the Equity Definitions shall apply and the words "Valuation Date" shall be replaced with the words "Observation Date"

Relevant Price:

In respect of each Share comprised in the Basket, the official closing price per Share as quoted by the Exchange as of the Valuation Time on the Strike Date or Observation Date, as the case may be.

**Settlement Terms of the Option Transactions:**

Cash Settlement:                    Applicable

Settlement Currency:                EUR

Option Cash Settlement Amount:      In respect of each Option Transaction, an amount as determined by the Calculation Agent equal to the product of (i) the Notional Amount and (ii) the relevant Rate of Return

Rate of Return:                     In respect of each Option Transaction, a rate determined by the Calculation Agent, as of the relevant Valuation Date, equal to:

    i.)    if a Trigger Event has been deemed to have occurred in respect of six or more Shares comprised in the Basket, zero, otherwise;

    ii.)    if a Trigger Event has been deemed to have occurred in respect of five Shares comprised in the Basket, 1%, otherwise;

    iii.)    if a Trigger Event has been deemed to have occurred in respect of four Shares comprised in the Basket, 2%, otherwise;

    iv.)    if a Trigger Event has been deemed to have occurred in respect of three Shares comprised in the Basket, 3%, otherwise;

    v.)    if a Trigger Event has been deemed to have

occurred in respect of two Shares comprised
in the Basket, 4%, otherwise;

vi.)    if a Trigger Event has been deemed to have
occurred in respect of only one Share
comprised in the Basket, 5%, otherwise;

vii.)   if a Trigger Event has been deemed to have
not occurred in respect the Shares comprised
in the Basket, 6%.

| | |
|---|---|
| Trigger Event: | In respect of an Option Transaction and in relation to each Share comprised in the Basket, a Trigger Event shall occur in respect of the Share when the price of the Share determined as of the Valuation Time on any Observation Date during the relevant Option Transaction Observation Period, is less than the Trigger Price of the Share. |
| Cash Settlement Payment Date: | In respect of each Option Transaction, five (5) Currency Business Day following the relevant Valuation Date |

**Share Adjustments:**

    Method of Adjustment:      Calculation Agent Adjustment

**Extraordinary Events:**

    **Consequences of Merger Events:**

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |

**Tender Offer:**      Applicable

    **Consequences of Tender Offers:**

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |
| New Shares: | The definition of "New Shares" in Section 12.1 of the Equity Definitions shall be amended by deleting subsection (i) in its entirety and replacing it with the following: "(i) publicly quoted, traded or listed on the New York Stock Exchange, the American Stock Exchange, the NASDAQ National Market System, Xetra or on the Tokyo, London, Paris, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges". |

| | |
|---|---|
| Tender Offers: | The definition of "Tender Offer" in Section 12.1 of the Equity Definitions will be amended by replacing the phrase "outstanding voting shares of the Issuer" in the fourth line thereof with "outstanding Shares" |
| **Composition of Combined Consideration:** | Not Applicable |
| **Nationalization, Insolvency or Delisting:** | Negotiated Close-out |
| Delisting: | The definition of "Delisting" in Section 12.6 of the Equity Definitions shall be deleted in its entirety and replaced with the following: "'Delisting" means that the Exchange announces that pursuant to the rules of such Exchange, the Shares cease (or will cease) to be listed, traded or publicly quoted on the Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted on the New York Stock Exchange, the American Stock Exchange, NASDAQ National Market System, Xetra or on the Tokyo, London, Paris, Frankfurt, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges". |
| **Additional Disruption Events:** | |
| Change in Law: | Not Applicable |
| Insolvency Filing: | Applicable |
| | The definition of "Insolvency Filing" in Section 12.9 of the Equity Definitions shall be amended by deleting the clause "provided that such proceedings instituted or petitions presented by creditors and not consented to by the Issuer shall not be deemed an Insolvency Filing" at the end of such definition and replacing it with the following: "; or it has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by a creditor and such proceeding is not dismissed, discharged, stayed or restrained in each case within fifteen days of the institution or presentation thereof." |
| | Section 12.9(b)(i) of the Equity Definitions is hereby amended by adding the following sentence at the end: "If neither party elects to terminate the Transaction, the Calculation Agent may adjust the terms of the Transaction upon the occurrence of such an event pursuant to Modified Calculation Agent Adjustment (as if such event were a Tender Offer)." |
| Hedging Disruption: | Applicable |

| | |
|---|---|
| Hedging Party: | Party A |
| Increased Cost of Hedging: | Applicable |
| Hedging Party: | Party A |
| Loss of Stock Borrow: | Not Applicable |
| Increased Cost of Stock Borrow: | Not Applicable |
| Determining Party: | Party A |
| Non-Reliance: | Applicable |
| Agreements and Acknowledgments Regarding Hedging Activities: | Applicable |
| Additional Acknowledgments: | Applicable |

**Additional Provision:** If a Merger Date or Tender Offer Date is scheduled to be after, in respect of an Option Transaction, the Expiration Date or, in respect of any other Transaction, the final Valuation Date, the Calculation Agent will determine the economic effect on the theoretical value of the Transaction of the announcement of a potential Merger Event or Tender Offer (including without limitation any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) from the Announcement Date to the Expiration Date or the final Valuation Date, as applicable. If such economic effect is material, the Calculation Agent will adjust the terms of the Transaction to reflect such economic effect.

**Miscellaneous:**

| | |
|---|---|
| Calculation Agent: | Party A |
| Office: | For the purposes of this Transaction. Party A is not a Multibranch Party, and Party B is not a Multibranch Party. |
| Transfer: | Notwithstanding Section 7 of the Agreement, Party A may assign its rights and obligations under this Transaction, in whole and not in part, to any Affiliate of Lehman Brothers Holdings Inc. ("Holdings") effective upon delivery to Party B of the full unconditional guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |
| Governing Law: | English law; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. |

## ANNEX 1

### Annex 1 to Confirmation between
### Lehman Brothers Finance S.A.
### and
### WestLB AG

### Effort Id: 783214

### Shares comprised in the Basket

The Basket is composed of the specified Shares of the Issuers listed below.

| Issuer | Bloomberg Code: | Exchange | Strike Price | Trigger Price |
|---|---|---|---|---|
| Alcoa Inc. | AA UN | New York Stock Exchange | USD 26.71 | USD 20.032 |
| American International Group Inc. | AIG UN | New York Stock Exchange | USD 67.63 | USD 50.722 |
| Bear Stearns Companies Inc. | BSC UN | New York Stock Exchange | USD 113.10 | USD 84.825 |
| Chevron Corporation | CVX UN | New York Stock Exchange | USD 58.85 | USD 44.137 |
| Deutsche Lufthansa AG | LHA GY | Xetra | EUR 11.36 | EUR 8.52 |
| Dow Chemical Co. | DOW UN | New York Stock Exchange | USD 45.66 | USD 34.245 |
| Erste Bank der Österr. Sparkassen AG | EBS AV | Vienna Stock Exchange | EUR 43.60 | EUR 32.70 |
| Fannie Mae | FNM UN | New York Stock Exchange | USD 49.03 | USD 36.772 |
| Harley-Davidson Inc. | HDI UN | New York Stock Exchange | USD 54.85 | USD 41.137 |
| Hewlett-Packard Company | HPQ UN | New York Stock Exchange | USD 29.28 | USD 21.96 |

| Koninklijke Ahold N.V. | AH NA | Amsterdam Stock Exchange | EUR 6.07 | EUR 4.552. |
|---|---|---|---|---|
| Newmont Mining Corporation | NEM UN | New York Stock Exchange | USD 47.20 | USD 35.40 |
| Nikon Corporation | 7731 JP | Tokyo Stock Exchange | JPY 1,837 | JPY 1,377.75 |
| Nintendo Co. Ltd. | 7974 JP | Tokyo Stock Exchange | JPY 12,980 | JPY 9,735 |
| Nokia OYJ | NOK1V FH | Helsinki Stock Exchange | EUR 14.80 | EUR 11.10 |
| NTT DoCoMo Inc. | 9437 JP | Tokyo Stock Exchange | JPY 191,000 | JPY 143,250 |
| OMV AG | OMV AV | Vienna Stock Exchange | EUR 44.80 | EUR 33.60 |
| Oracle Corporation | ORCL UQ | NASDAQ National Market System | USD 12.44 | USD 9.33 |
| Paccar Inc. | PCAR UQ | NASDAQ National Market System | USD 72.07 | USD 54.052 |
| Pfizer Inc. | PFE UN | New York Stock Exchange | USD 21.74 | USD 16.305 |
| Ricoh Co. Ltd. | 7752 JP | Tokyo Stock Exchange | JPY 2,115 | JPY 1,586.25 |
| Shin-Etsu Chemical Co. Ltd. | 4063 JP | Tokyo Stock Exchange | JPY 5,960 | JPY 4,470 |
| Southwest Airlines Co. | LUV UN | New York Stock Exchange | USD 16.45 | USD 12.337 |
| Starbucks Corp. | SBUX UQ | NASDAQ National Market System | USD 31.90 | USD 23.925 |

Termination Currency:                    EUR; provided, however, any provision to the
                                         contrary in the Agreement, when executed, shall take
                                         precedence over this election.

Please confirm your agreement with the foregoing by executing this Confirmation and returning such
Confirmation, in its entirety, to us at facsimile number (+1) 646-885-9547 (United States of America),
Attention: Confirmations Group.

Yours sincerely,                         Accepted and agreed to:

Lehman Brothers Finance S.A.             WestLB AG

By:                                      By:
Name: Barbara Grob                       Name:
Title: Authorised Signatory              Title:

By:
Name: Nadia Casanova
Title: Authorized Signatory

Execution time will be furnished upon Counterparty's written request.

# LEHMAN BROTHERS

## 2nd Revised Transaction

| | |
|---|---|
| Date: | 9 June, 2006 |
| To: | WestLB AG |
| | Attention:   Documentation Unit |
| From: | Lehman Brothers Finance S.A. |
| | c/o Lehman Brothers International (Europe) |
| | Transaction Management Group |
| | Facsimile:   (+1) 646-885-9547 (United States of America) |
| | Phone:   (+4420) 7-102-7661 (United Kingdom) |
| Effort Id: | 711434 |
| Global Id: | 2036495 |

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transactions (each a "Transaction") entered into between Lehman Brothers Finance S.A. ("Party A") and WestLB AG ("Party B") on the Trade Date specified below.  This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below.  **This Confirmation supercedes and replaces all prior communication relating to this Transaction.**

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of **22 May, 2006**, as amended and supplemented from time to time, between Party A and Party B (the "Agreement").  All provisions contained in the Agreement shall govern this Confirmation except as expressly modified below.

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "Equity Definitions") and the 2000 ISDA Definitions (the "Swap Definitions", together with the Equity Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA") are incorporated into this Confirmation. References herein to "Transaction" shall be deemed references to "Swap Transaction" for purposes of the Swap Definitions. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Lehman Brothers International (Europe) ("LBIE") is acting as agent on behalf of Party A for this Transaction. LBIE has no obligations, by guarantee, endorsement or otherwise, with respect to the performance of this Transaction by either party. LBIE is regulated by the Financial Services Authority.

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon

LEHMAN BROTHERS FINANCE S.A.
TALSTRASSE 82 · P.O. BOX 2828 · CH-8021 ZURICH · SWITZERLAND
TELEPHONE (41-1) 287 88 42

06/12/2007  14:12    +49-211-50996558    DEUTBANK WGODS    S.    02/09

due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

In addition to the representations set forth in the Agreement, Party B represents that it is not in possession of any material non-public information concerning the business, operations or prospects of the Issuer(s) and was not in possession of any such information at the time of placing any order with respect to the Transaction.

"Material" information for these purposes is any information to which an investor would reasonably attach importance in reaching a decision to buy, sell or hold any securities of the Issuer(s).

Party B further represents that (i) it is not an "affiliate" of the Issuer, as such term is defined in Regulation 230.144(a)(1) under the Securities Act of 1933, as amended, (ii) nor is it a counterparty entering into this Transaction on behalf of the Issuer or any affiliate thereof (iii) nor is it required to file reports with respect to the Shares or the Issuer pursuant to Sections 13(d) or 16(a) of the Securities Exchange Act of 1934, as amended.

The terms of the particular Transaction, which consists of five Option Transactions, "Option Transaction A", "Option Transaction B", "Option Transaction C", "Option Transaction D" and "Option Transaction E", to which this Confirmation relates are as follows:

### General Terms relating to the Option Transactions:

| | |
|---|---|
| Trade Date: | 02 December, 2004 |
| Strike Date: | 13 December, 2004 |
| Option Style: | European |
| Option Type: | Call |
| Seller: | Party A |
| Buyer: | Party B |
| Basket: | In respect of each Option Transaction, as specified in Annex 1, subject to the Basket Adjustment provision below. |
| Basket Adjustment: | In respect of the first Valuation Date and the related Option Transaction, as specified in Annex 1; |
| | In respect of each Valuation Date and the related Option Transaction thereafter, a basket composed of the Shares comprised in the Basket in respect of the immediately preceding Valuation Date, with the exception of the Share in such Basket with the lowest numerical value of Performance in relation to such immediately preceding Valuation Date, provided that such value of Performance is less than 50%. |
| Number of Options: | In respect of each Option Transaction, one. |
| Notional Amount: | EUR 70,000,000 |

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

2

06/12/2007  14:12   +49-211-50996558          DMP BANK WGDDS              S.    03/09

| | |
|---|---|
| Strike Price: | In respect of each Share comprised in the Basket, the official closing price per Share as quoted by the Exchange as of the Valuation Time on the Strike Date. |
| Premium: | EUR 3,969,000 (being the product of i) the Notional Amount and ii) 5.67%) |
| Premium Payment Date | 13 December, 2004 |
| Exchange(s): | In respect of each Share comprised in the Basket, as specified in Annex 1. |
| Related Exchange(s): | All Exchanges |

**Procedure for Exercise of the Option Transactions:**

| | |
|---|---|
| Expiration Time: | In respect of each Option Transaction, the last occurring Valuation Time |
| Expiration Date: | In respect of each Option Transaction, as specified in Annex 2 |
| Automatic Exercise: | Applicable |

**Valuation of the Option Transactions:**

| | |
|---|---|
| Valuation Time: | In respect of each Share comprised in the Basket the close of trading on the Exchange, without regard to extended trading hours |
| Valuation Date: | In respect of each Option Transaction, the Expiration Date. |

**Settlement Terms of the Option Transactions:**

| | |
|---|---|
| Cash Settlement: | Applicable |
| Settlement Currency: | EUR |
| Option Cash Settlement Amount: | In respect of each Option Transaction, an amount as determined by the Calculation Agent equal to the product of i) the Notional Amount, and ii) the greater of a) the Rate of Return and b) zero. |

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

| | |
|---|---|
| Rate of Return: | In respect of each Option Transaction and the relevant Valuation Date, a rate, subject to Rate of Return Adjustment, as calculated by the Calculation Agent, in accordance with the following formula: |

$$10\% + 30\% \times \operatorname*{Min}_{i=1}^{25} (Performance_i)$$

Where:

"i" means each Share comprised in the Basket;

"Performance" means, in respect of each Share comprised in the Basket, a rate, as determined by the Calculation Agent in accordance with the following formula:

$$\frac{Settlement\,Price_i - Strike\,Price_i}{Strike\,Price_i}$$

| | |
|---|---|
| Trigger Event: | A Trigger Event shall occur for an Option Transaction, where the sum of the Rate of Returns, as determined by the Calculation Agent, in respect of all preceding Option Transactions, is equal to or greater than 10%. |
| Rate of Return Adjustment: | In respect of any Valuation Date and upon the occurrence of a Trigger Event, the Rate of Return in respect of such Valuation Date and each Valuation Date thereafter, if any, shall be deemed to be equal to 10%. |
| Settlement Price: | In respect of each Valuation Date and in relation to each Share comprised in the Basket, the official closing price per Share as quoted by the Exchange as of the Valuation Time on such Valuation Date. |
| Cash Settlement Payment Dates: | In respect of each Option Transaction, five (5) Currency Business Days after the relevant Valuation Date. |

**Share Adjustments:**

| | |
|---|---|
| Method of Adjustment: | Calculation Agent Adjustment |

**Extraordinary Events:**

**Consequences of Merger Events:**

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment |

**Tender Offer:**

Applicable

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

**Consequences of Tender Offers:**

Share-for-Share:                    Modified Calculation Agent Adjustment.

Share-for-Other:                    Modified Calculation Agent Adjustment

Share-for-Combined:                 Modified Calculation Agent Adjustment

New Shares:                         The definition of "New Shares" in Section 12.1 of the Equity Definitions shall be amended by deleting subsection (i) in its entirety and replacing it with the following: "(i) publicly quoted, traded or listed on the New York Stock Exchange, the American Stock Exchange or the NASDAQ NMS" or on the London, Paris, Frankfurt, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges.

Tender Offers:                      The definition of "Tender Offer" in Section 12.1 of the Equity Definitions will be amended by replacing the phrase "outstanding voting shares of the Issuer" in the fourth line thereof with "outstanding Shares"

**Composition of Combined Consideration:**    Not Applicable

**Nationalization, Insolvency or Delisting:**   Negotiated Close-out

Delisting:                          The definition of "Delisting" in Section 12.6 of the Equity Definitions shall be deleted in its entirety and replaced with the following: "'Delisting" means that the Exchange announces that pursuant to the rules of such Exchange, the Shares cease (or will cease) to be listed, traded or publicly quoted on the Exchange for any reason (other than a Merger Event or Tender Offer) and are not immediately re-listed, re-traded or re-quoted on the New York Stock Exchange, the American Stock Exchange or the NASDAQ NMS" or on the London, Paris, Frankfurt, Milan, Amsterdam, Madrid, Copenhagen, Helsinki, Stockholm, Luxembourg, Vienna or Dublin Stock Exchanges".

**Additional Disruption Events:**

Change in Law:                      Not Applicable

Insolvency Filing:                  Applicable

                                    The definition of "Insolvency Filing" in Section 12.9 of the Equity Definitions shall be amended by deleting the clause "provided that such proceedings instituted or petitions presented by creditors and not consented to by the Issuer shall not be deemed an Insolvency Filing" at the end of such definition and replacing it with the following: "; or it has instituted

against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by a creditor and such proceeding is not dismissed, discharged, stayed or restrained in each case within fifteen days of the institution or presentation thereof."

Section 12.9(b)(i) of the Equity Definitions is hereby amended by adding the following sentence at the end: "If neither party elects to terminate the Transaction, the Calculation Agent may adjust the terms of the Transaction upon the occurrence of such an event pursuant to Modified Calculation Agent Adjustment (as if such event were a Tender Offer)."

| | |
|---|---|
| Hedging Disruption: | Applicable |
| Hedging Party: | Party A |
| Increased Cost of Hedging: | Applicable |
| Hedging Party: | Party A |
| Loss of Stock Borrow: | Not Applicable |
| Increased Cost of Stock Borrow: | Not Applicable |
| Determining Party: | Party A |
| Non-Reliance: | Applicable |
| Agreements and Acknowledgments Regarding Hedging Activities: | Applicable |
| Additional Acknowledgments: | Applicable |

**Additional Provision:**   If a Merger Date or Tender Offer Date is scheduled to be after, in respect of this Transaction, the Forward Date, the Calculation Agent will determine the economic effect on the theoretical value of the Transaction of the announcement of a potential Merger Event or Tender Offer Event (including without limitation any change in volatility, expected dividends, stock loan rate or liquidity relevant to the Shares or to the Transaction) from the Announcement Date to the Forward Date. If such economic effect is material, the Calculation Agent will adjust such terms of this Transaction as it determines in its sole and absolute discretion to reflect such economic effect.

**Miscellaneous:**

Calculation Agent:   Party A

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

06/12/2007  14:12    +49-211-50996558    DRBANK WGODS                    S.    07/09

ANNEX 1

Annex 1 to a Confirmation between
Lehman Brothers Finance S.A.
and
WestLB AG

Effort Id:711434

Shares comprised in each Basket

In respect of each Option Transaction, the Basket is composed of the specified Shares of the Issuers
listed below.

| Issuer: | Bloomberg Code: | Exchange: |
|---|---|---|
| Aegon N.V. | AGN NA | Euronext Amsterdam |
| Allianz AG | ALV GY | Xetra |
| Bayer AG | BAY GY | Xetra |
| Bayerische Motoren Werke AG | BMW GY | Xetra |
| Canon Inc. | 7751 JT | Tokyo Stock Exchange |
| Deutsche Lufthansa AG | LHA GY | Xetra |
| France Telecom S.A. | FTE FP | Euronext Paris S.A. |
| Hewlett-Packard Company | HPQ UN | New York Stock Exchange |
| Hitachi Ltd | 6501 JT | Tokyo Stock Exchange |
| ING Groep N.V. | INGA NA | Euronext Amsterdam |
| Koninklijke Philips Electronics N.V. | PHIA NA | Euronext Amsterdam |
| Lloyds TSB Group Plc | LLOY LN | London Stock Exchange |
| Microsoft Corp. | MSFT UQ | NASDAQ National Market System |
| Newmont Mining Corp. | NEM UN | New York Stock Exchange |
| Nikon Corp. | 7731 JT | Tokyo Stock Exchange |
| Nokia OYJ | NOK1V FH | Helsinki Stock Exchange |
| NTT DoCoMo Inc. | 9437 JT | Tokyo Stock Exchange |
| Oracle Corp. | ORCL UQ | NASDAQ National Market System |
| Siemens AG | SIE GY | Xetra |
| Sanofi-Aventis S.A. | SAN FP | Euronext Paris SA |
| SAP AG | SAP GY | Xetra |
| ThyssenKrupp AG | TKA GY | Xetra |
| Toyota Motor Corp. | 7203 JT | Tokyo Stock Exchange |
| Vodafone Group Plc | VOD LN | London Stock Exchange |
| Walt Disney Company | DIS UN | New York Stock Exchange |

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

## ANNEX 2

Annex 2 to a Confirmation between
Lehman Brothers Finance S.A.
and
WestLB AG

**Effort Id: 711434**

In respect of each Option Transaction, the Expiration Date is as follows:

| Option Transaction: | Expiration Date: |
|---|---|
| A | 10 December, 2007 |
| B | 10 December, 2008 |
| C | 10 December, 2009 |
| D | 10 December, 2010 |
| E | 12 December, 2011 |

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

9

06/12/2007  14:12    +49-211-50996558    DWP BANK WGODS                    S.    09/09

Office:                              For the purposes of this Transaction, the Office of
                                     Party A is its Head Office, and the Office of Party B
                                     is its Head Office.

Please confirm your agreement with the foregoing by executing this Confirmation and returning such
Confirmation, in its entirety, to us at facsimile number 646-885-9547 (United States of America),
Attention: Documentation.

Yours sincerely,                     Accepted and agreed to:

**Lehman Brothers Finance S.A.**         **WestLB AG**

By:
Name:  Barbara Grob
Title:  Authorised Signatory          By:
                                      Name:
                                      Title:

By:
Name:  Nadia Casanova
Title:  Authorized Signatory

Execution time will be furnished upon Counterparty's written request.

Risk ID: L04123438 / Effort ID: 711434 / Global Deal ID: 2036495

7