Kay Sehi-Emovon (Pro Se)
42 Opal House,
Milton Keynes, Bucks,
United Kingdom,  MK9 2EL.
Telephone 1: (44) 7712-442598
Telephone 2: (44) 7548-884608
Email: sehiemovon@hotmail.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re | ) Chapter 11 Case No.<br>)<br>) 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.* | )<br>) Jointly Administered |
| Debtors. | ) |

## KAY SEHI-EMOVON RESPONSE AND OBJECTION TO DEBTORS' TWO HUNDRED SIXTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

## In re: Claim No. 8025

1. I, Kay Sehi-Emovon (Pro Se), respond and object, as follows to the Two Hundred Sixty-Seventh Omnibus Objection to Claims ("Objection") as filed by Lehman Brothers Holdings Inc. ("LBHI"), et al affiliated debtors (collectively, "Debtors") as filed on 5th March 2012.

2. I dispute Debtors' contention that my Proof Of Claim (Claim No. 8025), as submitted on August 11, 2009, pertains to an Entity that is not one of the Debtors in this matter and should thus be disallowed and expunged.

## Background

3. Flowing from a well-founded grievance of Racial Discrimination in employment (while based at Japan), as well as, Racial Discrimination leading up to an ending of my Employment, I brought Court Proceedings in London, against LBHI (who were described in Court Proceedings, solely by their trade name 'Lehman Brothers').
LBHI was served notice of court proceedings against them, at their London Offices namely, 25 Bank Street, London E14 5LE. At the time I was not aware of the legal name of the apex Parent Company of the group of companies that used the Trading Name 'Lehman Brothers'.

4. A default judgment was made against the LBHI on the 28th January 2008 ("Default Judgment"), which established that I had been discriminated against on the grounds of race by reason of my dismissal from Employment.

5. I had, during court proceedings made it clear that the target of the Court Proceedings was the apex Parent of the group of companies known as 'Lehman Brothers', in line with the Parents referred to in my Employment Contract (See wording of the first paragraph of my Employment Contract). See *Exhibit A_Employment Contract.*

6. Lehman Brothers Japan Inc ("LBJKK") and Lehman Brothers Limited ("LBL") refused to cooperate as to the name of their Parent company, though, at the 11th hour of Court Proceedings, they suggested, that it could well be Lehman Brothers Limited. This was in line, with the various arguments put forward by LBJKK and LBL, whereby they sought not to contest the merits (or demerits) of my case, but rather to try and get my case thrown out on legal technicalities.

7. LBJKK and LBL made concerted arguments to the effect that as the Judgment referred to the Trade Name 'Lehman Brothers' and not an Entity, and that the Judgment should be set-aside on that basis. The Employment Tribunal rejected these arguments.

8. LBJKK and LBL continued along the course of trying to get the case thrown out on technicalities rather than making substantial representations as to the merits or demerits of the case before them. This included arguing (rather bizarrely that), that they did not know whom 'Lehman Brothers' was.
This course of action backfired on LBJKK and LBL, in that the Judge told them that they couldn't be allowed to try to defend in Court Proceedings, in which they also maintain ignorance of the Defendant. The Legal Technical Strategies as employed by LBJKK and LBL for themselves specifically, and on behalf of 'Lehman Brothers' generally, thus, were less than successful.

9. Subsequently a Hearing was scheduled on the 18th July 2008 ("Remedy Hearing") to determine the quantum of compensation due as a result of the Judgment as made on the 28th January 2008. This resulted in a further Judgment (for costs) against LBHI as made by the Employment Tribunal on the 18th of July 2008. See *Exhibit B_Tribunal Judgment*.

10. In September 2008, the Companies that made up the Firm known as Lehman Brothers filed for Bankruptcy. I subsequently filed a proof of claim (known as Claim No. 5583), which named the Debtor by its Trade Name Lehman Brothers, which was received by the Debtors on 15th October 2008. See *Exhibit H Part 2_Claim No. 5583*.

11. Due to the media coverage and examination of the pertinent issues relating to the Lehman Brother Bankruptcy, I became aware that LBHI was the name of the ultimate Parent of the Corporation known as 'Lehman Brothers'.

12. I then filed an amended proof of claim (now known as Claim 8025), naming the Debtor as LBHI, in which I made it clear that Claim 8025 was an amendment of the previously filed Claim. See *Exhibit H Part 1_Claim No. 5583*.

13. On the 7th September 2011, I received a letter from a representative of the Debtors ("Lauren Hoeflich"), dated 30th August 2011. This letter was an Insufficient Documentation Inquiry. I contacted Lauren Hoeflich by email, and with her consent, submitted to Lauren Hoeflich, an email with the following attachments. a) Copy of Judgment, b) Copy of Employment Contract, c) Outline of Issues Relating to Judgment, d) This letter will be included with my email.
See *Exhibit B_Tribunal Judgment, Exhibit A_Employment Contract and Exhibit J_Insufficient Doc Inquiry*.

14. On that same day 7th September 2011, Lauren Hoeflich replied my email, confirming that she had received my email, she also confirmed for her purposes I had satisfied her Insufficient Documentation Inquiry.

# LBHI HAS FAILED TO MEET ITS EVIDENTIARY BURDEN

15. A *"claim"* is defined in *"11 U.S.C. 101(5) as a*
   (A) *Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or*
   (B) *Right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."*

16. A proof of claim is *"deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a). Rule 3001(f) of the Bankruptcy Rules,*
   *"A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."*

17. *See In re MarketXT Holdings Corp., No. 40-12078, 2007 WL 680763 at \*4 (Bankr. S.D.N.Y. 2007);*
18. *See In re Alper Holdings USA, No. 07-12148, 2008 WL 160203 at \*3 (Bankr. S.D.N.Y. 2008);*
19. *See In re DJK Residential LLC, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009);*

20. I respectfully submit that, the debtor's Objection to my Claim must fail, as on its face, it does not set forth any evidence to dispute my Claim. Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure,
   *"a proof of claim…shall constitute prima facie evidence of the validity and amount of the claim."*

21. Once a claim alleges facts sufficient to support it, the claim is deemed prima facie valid. To overcome the Rule 3001(±) presumption, and serve as an effective objection under § 502(a), the objection must "refut[e] at least one of the claim's essential allegations[.]" in order to shift the burden to the claimant to demonstrate the validity of the claim.

22. *See In re Oneida, Ltd, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009);*
23. *See In re Adelphia Commc'ns Corp., No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at \*15 (Bankr. S.D.N.Y. Feb. 20,2007);*

24. In re *Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

25. In re *Woodmere Investors Limited Partnership*, 178 B.R. 346, 354-355 (Bankr. S.D.N.Y. 1995).
It was Held: That the burden then shifts to the objecting party to produce evidence sufficient to counter the prima facie validity of the claim in question. To satisfy its burden, the objecting party must produce actual evidence that is equally persuasive as the claim itself, and that would
    *"refute at least one of the allegations that is essential to the claim's legal sufficiency."*

26. See also In re *Galloway*, 220 B.R. 236, 243 (Bankr. E.D.P.A. 1998). Where it was stated…
    *"Upon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut or cast*
    *doubt upon the creditor's proof of claim."*

27. In re *Allegheny International Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992). In this Circuit, the case law is clear in demanding that an objecting debtor
    *"affirmatively produce evidence to counter [a] creditor's claim."*

28. In re *Make Meat Corp.*, 1999 U.S. Dist. LEXIS 3974 (S.D.N.Y. Mar. 31, 1999), Citing *Woodmere Investors*, 178 B.R. at 354-355; *Allegheny*, 954 F.2d at 173-174. The objecting party can, only overcome the prima facie validity of a claim, with the production of *"substantial evidence"*.

29. See also, In re Pan, 209 B.R. 152, 155 (D. Mass. 1997).

30. In re *Alper Holdings USA. Bankr. LEXIS 86, at \*10 (Bankr. S.D.N.Y. 2008)*.
It was Held: The claim objection must be supported by *"substantial evidence."*

31. See *Riverbank, Inc. v. Make Meat Corp, No.98 Civ 4990(HB), 1999 WL 178788, at \*3 (S.D.N.Y. March 31, 1999)*
    *"Once the claimant has established its prima facie case, the burden of going forward then shifts to the debtor to*
    *produce evidence sufficient to negate the prima facie validity of the filed claim."*

32. To overcome the prima facie validity of my claim, the Debtors must come forth with evidence, which, if believed, would refute at least of the allegations essential to the Proof of Claim.

33. In re *Woodmere Investors Ltd. Partnership*, 178 B.R. 346, 354-55 (Bankr. S.D.N.Y. 1995)
(Overruling the debtor's objection to claim where the debtor failed to offer any evidence to support its contention that the claim was unreasonable).

34. I thus, respectfully submit, that as my Proof Of Claim was filed timely, it is prima facie valid, and that as the Debtors have offered no evidence to refute that validity, their Objection therefore, falls at this first hurdle. The Debtors by simply stating that some other entity may be liable, are at best making a mere statement, or allegation and nothing more. Accordingly, to the extent that the Objection purports to challenge the substantive basis of my Proof of Claim, I submit that this Objection should be both overruled and expunged.

35. I respectfully reiterate, at this point, that in order to refute the validity of a properly filed Proof of Claim, the objecting party must produce evidence sufficient to negate the prima facie validity of that Proof of Claim.

36. In re *Spiegel, Inc.*, Nos. 03-11540, 06-CV-13477, 2007 WL2456626 at \*15 (Bankr. S.D.N.Y. Aug 22, 2007), (citing In re *Allegheny Int'L Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

37. Since the Objection against my Proof of Claim does not contain evidence of any kind to negate the prima facie validity of my Claims. It therefore follows, that my Claim remains presumptively valid pursuant to section 502 of the Bankruptcy Code and Rule 3001(f) of the Bankruptcy Rules.

38. Thus, my Proof of Claim should be allowed because Debtor has not posited, an effective Objection to shift the burden of disproving the prima facie validity of my Proof Of Claim. Additionally, my Claim should be allowed because it is a valid Claim, in that it alleges facts sufficient to support a legal liability owed by LBHI.

39. I respectfully submit, that LBHI Objection should be denied to the extent that it does not evidence any legal basis for its Objection. See Additional Permitted Grounds (c), Docket 6664 (Procedures Order) as made by this Bankruptcy Court.

40. Paragraph Two of LBHI Objection titled Relief Requested states as follows
    "The proofs of claim listed on Exhibit A annexed hereto (collectively, the "No Liability Claims") were filed
    against the Debtors based upon alleged wrongdoing by or liabilities of entities which are not Debtors in these
    chapter 11 cases and for which the Debtors are not liable. "

41. I respectfully submit that the Objection should be denied, as neither the basis for my claim (Employment Tribunal Judgment), my Proof Of Claim, nor the supporting evidence of my Proof Of Claim are based on the alleged liability of either Lehman Brothers Inc or Lehman Brothers Limited as indicated in the Omnibus Objection. Paragraph Two of LBHI Objection titled Relief Requested goes on to state as follows

> "Many of the No Liability Claims are based on alleged liability of either Lehman Brothers Inc. ("LBI") or Lehman Brothers Limited ("LBL"). LBI and LBL are affiliates of the Debtors but are not Debtors in these chapter 11 cases. The Debtors have no liability for the asserted obligations of LBI, LBL or any No Liability Claim."

42. See also Paragraph Ten of the Objection, which states as follows

> "In their review of the claims filed on the claims register in these chapter 11 cases, the Debtors have identified the No Liability Claims as claims based upon the alleged wrongdoing or liabilities of non-Debtor parties and for which the Debtors are not liable. Many of the No Liability Claims assert a claim against the Debtors related to pending litigations in which the Debtors are not defendants…"

43. See also Paragraph Eleven of the Objection, which states as follows

> "The liabilities asserted in the No Liability Claims are not claims against LBHI or any other Debtor in these chapter 11 cases."

44. I respectfully submit that, to the extent that LBHI, has guaranteed the Obligations Liabilities and Commitments of other Entities who are not Debtors for the purposes of this Objection (including the entity named LBJKK), the above statements underpinning this Objection as made by the Debtor's should be regarded as inherently false, and that, such a falsehood should not be a basis for an Objection to my validly filed Proof of Claim. See the Resolution as made on the 9th of June 2005 by the Executive Committee of the Board of Directors of LBHI. See *Exhibit D_Executive Committee*.

45. To the extent that the Objection consists solely of allegations without factual evidence, the Objection also runs foul of this Court's Order (Bankruptcy Court), approving procedures for the filing of Omnibus Objections to proofs of Claim. See Docket No. 6664 ("the Procedures Order")

46. See Additional Permitted Grounds with its reference to No Liability

> "the Claims seek recovery of amounts for which the Debtors are not liable; *provided* that the Debtors will include the legal basis for such objection;"

47. To the extent that the Objection is worded as above, it cannot be said to meet any Legal Basis for an Objection to my Proof Of Claim (Claim 8025), not the least as, neither my Proof Of Claim nor the evidence of my Proof Of Claim, is against either of the Lehman Brother entities referred to in the Objection.

48. With all respect, I also, submit that the Employment Tribunal Judgments, from which arises my Proof of Claim against LBHI states that the Judgment is against 'Lehman Brothers', which is a Trade Name for LBHI, it does not specify either Lehman Brothers Limited or Lehman Brothers Inc as relevant parties to the Judgment, indeed, it excludes these entities as relevant parties to the Judgment

## Arguments In Support Of Proof Of Claim

49. Prior to September 19,2008, all the other entities which used the same Trade Name 'Lehman Brothers', were wholly owned Subsidiaries of LBHI, and was entirely controlled by LBHI.

50. LBHI, and other Lehman Brother entities shared resources, whether Physical (including office locations), Financial (including access to Monies, and joint Financial Reporting), or Human Resources (Employees worked across Regions, Entities and Divisions), IT (software whether commercially bought, or Proprietary was rolled out and managed on a Global basis across Regions, Entities and Division), Intellectual Property (including the shared use of Trade Names, Reputation and Goodwill). LBHI as the apex Parent Company of the Corporation ('Lehman Brothers') in this way organized and carried out its Banking, Trading, Investment and other Operations globally.

51. LBHI, its Subsidiaries and Affiliates did not show any distinct formalities both internally and externally, with regard to their Finances, Office locations, Personnel, Management Structures, they commingled their funds, they commingled their employees, had Software managed across all entities of their Corporation, including having Global Email Services (emails for LBHI and subsidiaries all ended @lehman.com).

52. LBHI, was responsible for, and carried out financial reporting for itself and its entities on the basis that they were one Consolidated entity for SEC and all other Financial Reporting purposes. See *Exhibit C_Affidavit of Ian Lowitt*.

53. In sum, they were no more different than internal divisions within the same business Entity. So much so that the Corporation (of which LBHI was the apex Parent Company), projected itself to its employees and the world as a unified financially strong Entity with various businesses known universally as "Lehman Brothers".

54. On September 15th 2008, Lehman Brothers Holdings Inc and certain affiliated entities filed voluntary chapter 11 cases. This Court is jointly administering these cases. In connection with that filling LBHI filed an Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications ("Lowitt Affidavit"). See *Exhibit C_Affidavit of Ian Lowitt.*

55. Paragraph 1 of the Lowitt Affidavit states as follows:
> I am the Chief Financial Officer, Controller, and Executive    Vice President of Lehman Brothers Holdings Inc (the 'Debtor,' and together with its non-debtor affiliates, 'Lehman Brothers' or the 'Company'), the debtor and debtor in possession in this chapter 11 case....

56. Specifically, the Lowitt Affidavit describes the business of Lehman Brothers as follows:
> "Lehman Brothers is the fourth largest investment bank in the United States. For more than 150 years, Lehman Brothers has been a leader in the global financial markets by serving the financial needs of corporations, government units, institutional clients and individuals worldwide. Through its team of more than 25,000 employees, Lehman Brothers offers a full array of financial services in equity and fixed income sales, trading and research, investment banking, asset management, private investment management and private equity."

57. The Lowitt Affidavit also describes the regulatory oversight to which it is subject, in the following manner:
> "All Lehman brothers entities are subject to group-wide supervision and examination by the SEC as a Consolidated Supervised Entity. Several of the Debtor's subsidiaries, including, without limitation, its Lehman Brothers, Inc. subsidiary, are registered with the SEC as broker-dealers, derivatives dealers, and investment advisers. As such those entities are subject to regulation by the SEC and by self-regulatory organizations, including the Financial Industry Regulatory Authority ("FINRA"), national securities exchanges such as the NYSE, and the Municipal Securities Rulemaking Board, among others."

58. Based on the foregoing, it is clear that Lehman Brothers held itself out as a consolidated entity with 25, 000 employees and worldwide businesses. Lehman Brothers Holdings Inc own documentation shows that it was quite integrated with its entities, so much so, that it made monies available to its operating subsidiaries each day and swept cash at the end of each day. It is readily apparent that LBHI was a crucial and ongoing parent, and that LBHI and its subsidiaries and affiliates operated (for all intents and purposes) as a single Entity, so much so, that it would be inequitable to uphold a legal distinction between them. See *Pages 1 – 6 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 1 – 6 of Exhibit E (Hard Copy version)*
*See Pages 33 – 53 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 33 – 53 of Exhibit F (Hard Copy version)).*
See *Pages 1 – 10 of Exhibit G_Board Meeting.*

59. See *Gartner at 586, citing Fletcher v. Atex Inc., 68 F.3d 1451, 1458, (2d Cir. 1995).*

60. See *Horsehead Indus., Inc. v. Metallgesellschaft AG, 657, N.Y.S.2d 632, 633 (N.Y. App. Div. 1997)*
> *("A parent company can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract . . . or if the subsidiary is controlled by the parent for the parent's own purposes.");*

61. See *Warnaco, Inc. v. VF Corp., 844 F. Supp. 940 (S.D.N.Y. 1994)*
> *("A parent corporation may become a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract.").*

62. See Matter of *Typhoon Industries, Inc 6 BR 886 (Bankruptcy Court E.D.N.Y.  1980)*
Held By Bankruptcy Court:
> *"A corporation may be held liable for the obligations of commonly owned affiliate corporations, notwithstanding the absence of a parent-subsidiary relationship, if circumstances indicate that it would be inequitable for the corporation to escape liability for the affiliates' obligations."*

63. In determining the question of presence of a close Parent-Subsidiary relationship, courts have considered factors such as the disregard of corporate formalities;    intermingling of funds;    overlap in ownership, officers, directors and personnel;    common office space or telephone numbers;    the degree of discretion demonstrated by the alleged dominated corporation;    whether the corporations are treated as independent profit centers;    and the payment or guarantee of the Corporation's debts by the dominating Entity.

64. See *Freeman v. Complex Computing Co., 119 F.3d 1044 [2d Cir.1997]*;
65. See also, *Wm. Passalacqua Builders v. Resnick Developers S., 933 F.2d 131, 139 [2d Cir.1991]*.

66. See *Rus, Inc. v Bay Industries, Inc. (322 F Supp 2d 302 [SD NY 2003])*,
(This case further supports my contention that a parent company will be held liable as a party to its subsidiary's contract if the parent, through its conduct, or actions manifests intent to be bound to the contract).

67. Given that LBJKK could be regarded as my foremost Employer, and that LBHI was a Parent of LBJKK then it logically follows that it is completely plausible from the above Case Law that liability can ground against LBHI.

68. Thus I respectfully submit that due to the close relationship LBHI had with LBJKK, its wholly owned Subsidiary, and also by reason of LBHI being fully responsible for LBJKK, and additionally, for whom LBHI had guaranteed its (LBJKK), Obligations Liabilities and Commitments by way of a Resolution as made on the 9th June 2005 by the Executive Committee of the Board Of Directors of LBHI, it must be the case, that LBHI is liable for the Judgment against them, and it would be inequitable for it to be regarded as otherwise.

69. Additionally, the LBHI Resolutions provide, among other things, that "[LBHI] hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of [LBHI Code of Authorities]."
The recitals to the LBHI Resolutions indicate that holders of claims against the entities set forth on Schedule A to such resolutions are intended third party beneficiaries. The recitals specify that one of the purposes of the LBHI Resolutions is "to clarify that [LBHI] guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction.".
See *Exhibit A_Employment Contract* and *Exhibit D_Executive Committee.*

70. LBHI cannot equitably argue that they are not liable, simply because the Judgment against LBHI, refers to them by their Trade Name "Lehman Brothers". See *Exhibit B_Tribunal Judgment*.

71. Webster's New World College Dictionary defines a Trade Name as: The name by which, a commodity, service, or process is known to the trade, or the name under which a business firm operates.

72. A trade name is the name, which a business trades under for commercial purposes, and can be federally protected just like a trademark.
Trade Name: What it protects Name and goodwill of organization if different than officially registered name.
    1. Preserve reputation and goodwill
    2. Protect investment of time and effort in creating a name or brand.

73. A trade name is distinguishable from a trademark in that a trade name may identify not only goods and services, but also the business of and/or goodwill of an organization as a whole.

74. See *Harris v. Balk 198 U.S. 215 (1905)*. This case establishes Rule, called "Debt Follows the Debtor".
This is deemed true, even where the Plaintiff used only the Defendant's trade name, and not the Defendant's Legal Name.

75. See *Motiejaitis v. Johnson, 117 Conn. 631, 169 A, 606 (1933)*.
Held: It was permitted, for the Plaintiff to substitute, an individual for a non-existent corporation, under which the individual was doing business.

76. *Lussier v. Department Of Transportation, 228, Conn 343, 636, A.2d 808 (1994)*.
Held: Action was permitted to stand, even though Summons indicated Action against State instead of Action against Commissioner of Transportation.

77. See also *American Express Travel Related Services Co. v. Berlye, 202 Ga. App. 358, 360, 414 S.E.2d 499 (1991), cert. denied, 202 Ga. 905 (1992)*
    'The use of d/b/a or "doing business as" to associate a trade name with the corporation using it does not create a legal entity separate from the corporation but is merely descriptive of the corporation".'

78. See *Patterson v. V & M Auto Body, 63 Ohio St.3d 573, 575, 589 N.E.2d 1306 (1992)*;
79. See *Jaffe v. Nocera, 493 A.2d 1003, 1008 (D.C. 1985)*;
80. See *Carlson v. Doekson Gross, Inc., 372 N.W.2d 902, 905 (N.D. 1985)*;
81. See *Wood Mfg. Co. v. Schultz, 613, F. Sup. 878, 884 n. 7 (W.D.Ark. 1985)*;
82. See *Duval v. Midwest Auto City, Inc., 425 F. Sup. 1381, 1387 (D.Neb. 1977), aff'd, 578 F.2d 721 (8th Cir.1978)*.

83. Under US law, whether Case Law or otherwise, a Judgment referencing a business name or a Trade Name, is considered to properly reference the entity to which it is said to refer.

84. See the case of *Curtis R Smith Plan Administrator Of Advanced Marketing Services, Inc v Pac International Logistics Company 448 B.R. 321 (April 2011)*
Held: Service of notice of Court proceedings in Trade Name of Defendant constituted proper service. The Default Judgment was upheld. This case, is both authoritative as well as, quite compelling in that, it touches on a default Judgment referencing the defendant's trade name, a subsequent bankruptcy, and a ruling by a bankruptcy Judge.

85. See also *Billings v. Edwards, 91 Cal. App. 3d 826, 831 n. 1 (Cal. App. 2d Dist. 1979)*
("[W]here a person or corporation elects to follow the statutory procedure of section 17900 et seq. of the Business and Professions Code, it has held itself out to those with whom it does business as having adopted that name for all business purposes. Notice to it under that name is all that the law requires.").

86. Under New York State Laws, and indeed in most of the civilized world, entities can protect themselves against infringement of their Trade Name. Indeed LBHI or any other Entity that was legally entitled to use the name 'Lehman Brothers' as a Trade Name had a right to seek the protection of the Courts for any real or perceived infringement of their Trade Name.

87. However, LBHI must understand that rights to their shared Trade Name comes with added responsibilities, the fact, or non fact (as the case may be), that they did not understand the legal implications of a Court Judgment against their Trade Name can not be a shield against the Judgments against them via their Trade Name.

88. The Law, in determining liability between the Parent Company, and a wholly owned Subsidiary, makes no distinction. See *Sporty's Farm LLC v. Sportsman's Market, Inc. Docket Nos. 98-7452 (L), 98-7538 (XAP), 202 F.3d 489(2d Cir. Feb. 2, 2000)* Held: Both the Parent Company and its wholly owned Subsidiary infringed Trade Mark laws.

89. Where LBHI (a Parent Company) has consciously shared its Trade Name with it's wholly owned Subsidiaries, and Affiliates, and chosen to represent itself and its Subsidiaries and Affiliates, to the world at large as being a single Corporation, whether by describing or allowing itself and it's Subsidiaries and Affiliates, to be described, as 'One Organization', the 'Firm', 'One Firm', 'Corporation' and the 'Company', and going further, has represented to the World at large (at least prior to entering Bankruptcy) that itself , its Subsidiaries an Affiliates are a Corporate whole with Headquarters in New York and Regional Headquarters in London and Tokyo, the doctrine of Estoppel must apply to prevent LBHI from arguing, that either a Judgment against its Trade Name cannot be deemed to refer to LBHI, or that Service of Notification Of Court Proceedings at one of its Regional Headquarters does not constitute valid service.
See *Pages 1 – 6 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 1 – 6 of Exhibit E (Hard Copy version)*
See *Pages 33 – 53 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 33 – 53 of Exhibit F (Hard Copy version)*).
See *Pages 1 – 10 of Exhibit G_Board Meeting*.

90. I respectfully submit, that in the circumstances, LBHI is equitably Estopped, from stating that it is not liable for Judgments made against its Trade Name, and should not be allowed to avoid liability suffered as a result of a Judgment, especially where (as in this case), LBHI (the apex Parent Company), is itself, a party to the Employment Contract, from which arose the Judgment against it.

91. It should be noted that, LBHI itself uses the Trade Name 'Lehman Brothers', and has organized its wholly owned subsidiaries, affiliates to use the same Trade Name by its own will, to suit its own purpose, furthermore, LBHI made its bed, to suit how LBHI wanted it. LBHI must now to lie in the bed it made up for itself.

92. I humbly reiterate the point, that those wholly owned entities (including LBHI), that identified themselves by the use of the Trade Name 'Lehman Brothers' jointly benefited from the goodwill, and reputation that came from having, such a joint corporate identity.

93. LBHI and its wholly owned Entities used the same Trade Name (it, being a deliberate decision, on the part of LBHI), reaped the fruit of having the same Trade Name with its wholly owned entities (all such other entitles, being under LBHI guidance and control as the parent company).

94. It would be, I respectfully submit, most inequitable for LBHI to successfully avoid the attentions of a Judgment Creditor by throwing up a smokescreen of multiple Entities using the same Trade Name. I submit further, that as a Judgment against a Trade Name is enforceable, it logically follows, that such a Judgment must be enforceable against a Parent Company that uses that Trade Name specifically, as well as, against any of those other (wholly owned) Subsidiaries and Affiliates that use the Trade Name generally.

95. See *Horsehead Indus., Inc. v. Metallgesellschaft AG, 657, N.Y.S.2d 632, 633 (N.Y. App. Div. 1997)*
("A parent company can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract . . . or if the subsidiary is controlled by the parent for the parent's own purposes.");

96. See Matter of *Typhoon Industries, Inc 6 BR 886 (Bankruptcy Court E.D.N.Y. 1980)* Held By Bankruptcy Court:
> *"A corporation may be held liable for the obligations of commonly owned affiliate corporations, notwithstanding the absence of a parent-subsidiary relationship, if circumstances indicate that it would be inequitable for the corporation to escape liability for the affiliates' obligations."*

97. See also the case of *Warnaco, Inc. v. VF Corp., 844 F. Supp. 940 (S.D.N.Y. 1994)*
Where it was held that
> *"A parent corporation may become a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract."*

98. See *Rus, Inc. v Bay Industries, Inc. (322 F Supp 2d 302 [SD NY 2003]),*
(This case further supports my contention that a parent company will be held liable as a party to its subsidiary's contract if the parent, through its conduct, or actions manifests intent to be bound to the contract).

99. I respectfully make the point, that despite the the Objection, under New York case laws, it is abundantly clear, that a parent company can be held liable for liability incurred by its subsidiaries.
    a) Where parent company is a party to a contract made by its subsidiary.
    b) Where a subsidiary is controlled by the parent company.

100. Contracts must be enforced in accordance with the plain meaning of their terms, to give effect to the intention of the parties, and avoid interpretations that would leave a contractual clause meaningless.
*See Breed v Ins. Co. of North America, 46 NY2d 351, 355 (1978).*
*See Greenfield v Philles Records. Inc., 98 NY2d 562, 569 [2002]),*
*See Evans v Famous Music Corp., 1 NY3d 452, 458 [2004]*;
*See 150 Broadway N.Y. Assoc., L.P, v Bodner, 14 AD3d 1, 6 [1st Dept 2004].*

101. To the extent that on 9th June, 2005, the Executive Committee of the Board of Directors of LBHI adopted a Resolution by which LBHI fully guaranteed all obligations, liabilities and commitments of various LBHI subsidiaries, including LBJKK. The following must be true.
> (i) It was both legally sound, and valid for my person, to bring Court Proceedings directly against LBHI for wrongdoings I suffered in the course of my Employment.
> (ii) It is also both legally proper and correct, that I seek enforcement of the Judgment against LBHI who of its own volition as a Parent (company) of its wholly owned Subsidiary to stand as a guarantor of all Obligations, Liabilities and Commitments of LBJKK.

See *Exhibit D_Executive Committee*.

102. LBHI is a party to my Employment Contract. This is so, as LBHI is a Parent Company of the its wholly owned subsidiary LBJKK (see first paragraph of my Employment Contract, which explicitly refers to the Parents of LBJKK). See *Exhibit A_Employment Contract*.

103. The first paragraph of my Employment Contract reading thus,
> "We are delighted to confirm our offer of employment to you as a Senior Developer in Information Technology Division of Lehman Brothers Japan Inc., a kabushiki kaisha ("LBJKK") incorporated under the laws of Japan (together with LBJKK's parents, subsidiaries, and affiliates together with successors and assigns, the "Firm").

104. I respectfully submit that as LBHI is explicitly referred to as a party to his Employment Contract (by way of LBHI being a Parent of LBJKK), thus, as a Party to the Employment Contract, LBHI is a valid focus, of any Court Proceedings, which arose out of my Employment Contract.
Therefore, LBHI must, and or, should (until explicitly stated otherwise by the Courts) regard itself, both as a target of the Court Proceedings (at the time), but also of any liability that arose as a result of such Court Proceedings, by way of a Judgment against them, (irrespective of whether, they were referred to by their Trade Name or not).

105. It all therefore follows, that LBHI cannot argue that they were not, or could not be a relevant Party in the Court Proceedings I brought against LBHI, or that the Judgment as a result of those Court Proceedings does not, or could not, refer to LBHI, or even that my person as a Judgment Creditor does not have a Claim against LBHI.

106. I additionally further submit, that upon a reading of the terms of my Employment Contract, it would be inequitable for LBHI to seek to dodge liability for a Judgment that arises from my Employment Contract, especially given that, LBHI are themselves a party to my Employment Contract.

107. On June 9, 2005, the Executive Committee of the Board of Directors of LBHI adopted a unanimous written consent resolution (the "Resolution") by which LBHI fully guaranteed all obligations, liabilities and commitments of various LBHI subsidiaries, including LBJKK. See *Exhibit D_Executive Committee*.

108. Additionally, the LBHI Resolutions provide, among other things, that "[LBHI] hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of [LBHI Code of Authorities]."
The recitals to the LBHI Resolutions indicate that holders of claims against the entities set forth on Schedule A to such resolutions are intended third party beneficiaries. The recitals specify that one of the purposes of the LBHI Resolutions is "to clarify that [LBHI] guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction

109. See *RUS, Inc. v. Bay Indus., Inc., No. 01-CV-6133, 2004 WL 1240578, (S.D.N.Y. May 25, 2004)*
(Applying New York law and finding that non-signatory was liable for breach of contract when its conduct "manifested an unequivocal intent to be bound" by the contract). The Court Held:
> "*even if a party does not sign the relevant written agreement, it will be bound if the totality of its expressed words and deeds manifests an intent to be bound."*

110. See also See *Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc., No. 05-CV-7776, 2007 WL 1701813, (S.D.N.Y. June 12, 2007)* (Confirmation that liability is grounded, where obligations is explicitly assumed.)

111. To the extent that LBJKK binds its Parents as Parties to my Employment Contract, and that LBHI is a Parent of LBJKK, LBHI is so bound in line with the Resolution as made by LBHI.

112. Therefore, I respectfully submit, that the conscious guarantees, as given to LBJKK by LBHI; legally prevents LBHI (based upon the equitable doctrine of Estoppel) from either stating that they were not a party to my Employment Contract, or that, LBHI is not liable for a Judgment that arose out of liability flowing from my Employment Contract.

113. Furthermore, I additionally, respectfully state, that liability is further grounded upon LBHI, in that, to the extent that my Employment Contract refers to Subsidiaries and Affiliates (without excluding any), and such reference to Subsidiaries and Affiliates, can also be said to include, Subsidiaries and Affiliates whose Obligations, Liabilities and Commitments were guaranteed by the Resolution (see above), of the Executive Committee of the Board of Directors of LBHI.

114. I therefore humbly submit that, liability (that flows from the Judgments in my favor), legally and logically rebounds upon LBHI, as a result of the Resolution deliberately made by the Executive Committee of the Board of Directors of LBHI on the 9th June 2005.

115. Additionally, I respectfully makes the point, that by reason of the reference in my Employment Contract to LBJKK's parents (LBHI being a parent of LBJKK), and also, as a result of the guarantees that LBHI gave to LBJKK by the Resolution made by the Committee of the Board of Directors of LBHI on the 9th June 2005, LBHI should have considered that Court Proceedings directly or indirectly impacts LBHI, and furthermore, that Liability (as a result of a Judgment), had the potential to be passed on to LBHI.

116. Indeed, it is the case that, LBHI has a record, on picking up on legal issues that had impacted its affiliates or subsidiaries in the past. In March 2008, LBHI indicated in the News Media, that it was instituting Court proceedings against an Asian Firm namely Marubeni, on the basis that one of LBHI Affiliates or Subsidiaries in Asia had been defrauded by Marubeni. See *Exhibit I_Marubeni*.

117. I respectfully make the point that (prior to entering Bankruptcy), LBHI was the Parent company of a Corporation, that consisted of itself and other wholly owned entities, which separately, and collectively referred to itself, to the outside world as one Corporation with headquarters in New York and regional offices in London and Tokyo.
See *Pages 1 – 6 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 1 – 6 of Exhibit E (Hard Copy version)*
See *Pages 33 – 53 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 33 – 53 of Exhibit F (Hard Copy version)*).
See *Pages 1 – 10 of Exhibit G_Board Meeting*.
See *Exhibit K_Japan HR Email*.

118. Therefore, once notification of Service (of Court Proceedings) was served on their regional offices in London, it was incumbent, for each of the Entities that made up the Corporation known as Lehman Brothers, to recognize their potential exposure to liability as a result of the Court Proceedings against them (whether separately or collectively).

119. To the Extent that LBHI, ignored, and or, chose not to make representations to the Court, is a matter for them to consider internally (as to the extent, that they operate, for all intents and purposes, as a single Corporation with a shared Trade Name).

That said, it is neither the responsibility of the Judgment Creditor, or the Courts to advice LBHI and its other wholly owned Entities (that constituted the Corporation known as Lehman Brothers) on their exposure to liabilities, once a Judgment has been made against their Trade Name.

120. I respectfully make the point, that LBHI cannot argue, or indeed, make the inadequate case, that they were unaware of Court proceedings, for reason of Court Proceedings being initiated in their Trading Name, given that United States laws are well settled, on the following points.

> i) Judgments made referring to a Trade Name is recognized as against the legal entity, and or, any of the legal entity(s) that make use of that trade name. Therefore, all, and or, any of the entity(s) that make use of this trade name, can be made a subject of enforcement of the Judgments against their Trade Name.
> ii) As long as the Notice of Court Proceedings was served at an address where that business name was in use, then service is deemed to be both, correct and effective.

121. See *ADVANCED MARKETING SERVICES, INC., et al., Debtor., Curtis R. Smith, Plan Administrator of Advanced Marketing Services, Inc., Plaintiff, v. PAC International Logistics Company, Defendant. Bankruptcy No. 06-11480, (CSS). Adversary No. 08-51896 United States Bankruptcy Court, D. Delaware, (April 2011).*
Where CHRISTOPHER S. SONTCHI, Bankruptcy Judge stated in confirming recognition of the validity of Judgments even where Trade Names is used to refer to one of the party(s)

> *"Where a person or corporation elects to follow the statutory procedure of section 17900 et seq. of the Business and Professions Code, it has held itself out to those with whom it does business as having adopted that name for all business purposes. Notice to it under that name is all that the law requires."*

122. I respectfully also make the point, that indeed, LBHI cannot equitably argue, they were not aware of either Court Proceedings, or the Judgments, as they were contacted by my person, during court proceedings by way, of my telephoning LBHI offices in New York (Lehman Brothers Headquarters), and informing them of the court proceedings against them. I also contacted the senior Managers of LBHI (by way of email), prior to (that is before), as well as, after Court Proceedings of the (then) matter at hand, and informed them of the Judgment against them.
See *Exhibit M_PreJudgemnt Email To LBHI.*
See *Exhibit N_PostJudgemnt Email To LBHI.*

123. I respectfully submit, that to the extent that an oversea Entity, namely LBJKK (incorporated in Tokyo, Japan), itself a wholly owned Subsidiary of LBHI, took part in the Court Proceedings in London (See *Exhibit B_Tribunal Judgment*), it clearly shows, that communications took place between the constituent parts that made up the Corporation known as 'Lehman Brothers', as to the nature, of the Court Proceedings brought against them by myself in London UK.

124. It rather begs the question, in that, if LBJKK (based in Tokyo, Japan), recognized the potential liability against itself, that may result from Court Proceedings, surely LBHI should have recognized the same, especially so, as they a named (and a referred to), party to my Employment Contract.

125. Based upon the terms of my Contract of Employment ("Employment Contract"), the first paragraph reading thus
> "We are delighted to confirm our offer of employment to you as a Senior Developer in Information Technology Division of Lehman Brothers Japan Inc., a kabushiki kaisha ("LBJKK") incorporated under the laws of Japan (together with LBJKK's parents, subsidiaries, and affiliates together with successors and assigns, the "Firm").

126. The reference to **LBJKK parents** in the above quotation should be noted; given that, it is a fact that LBJKK was a wholly owned subsidiary, or affiliate of LBHI, and more importantly, LBHI is a parent company of LBJKK.
As such, it would not be unreasonable to state (given the aforementioned), that LBHI should have educated itself, of the potential liability, on its part, to a Judgment made against its Trade Name, and to the extent that it did not do so, or chose not to so do, is a moot point, that cannot remove liability, or status as a Judgment Debtor from LBHI. Indeed, the decision-making, or the absence thereof, by LBHI, cannot be a shield to liability once Court Proceedings has been reduced to a Judgment.

127. I humbly submit, that to the extent that LBHI chose not to move itself closer in Court Proceedings, but perhaps, sought to rely on dubious legal maneuverings by its wholly owned Entities, namely LBJKK and LBL, is entirely, an internal matter for the Corporation known as 'Lehman Brothers'.

128. Liability is further grounded against LBHI in that, New York Courts recognize that a non-signatory can be liable for a Contract by manifesting intent to be so bound, even without being an "alter ego" of a signatory to the Contract.

129. On June 9, 2005, the Executive Committee of the Board of Directors of LBHI adopted a unanimous written consent resolution (the "Resolution") by which LBHI fully guaranteed all obligations, liabilities and commitments of various LBHI subsidiaries, including LBJKK. See *Exhibit D_Executive Committee.*

130. As there can be no dispute that LBJKK was a party to my Employment Contract, then there can also be no dispute that LBHI made itself liable for all Obligations Liabilities and Commitments that flowed as a result of that Employment Contract; naturally this would include Court Proceedings and Judgment. Therefore, it is the case that Court Proceedings can correctly proceed against LBHI as a result of the above Resolution, and furthermore, that Judgments, as a result of such Court Proceedings can attach against LBHI.

131. See *RUS, Inc. v. Bay Indus., Inc., No. 01-CV-6133, 2004 WL 1240578, (S.D.N.Y. May 25, 2004)* (Applying New York law and finding that non-signatory was liable for breach of contract when its conduct "manifested an unequivocal intent to be bound" by the contract). The Court Held:
> *"even if a party does not sign the relevant written agreement, it will be bound if the totality of its expressed words and deeds manifests an intent to be bound."*

132. New York Courts have also grounded liability, where the company against whom liability is charged is found to have assumed obligations, arising from the contract.

133. See the case of: *Impulse Mktg. Group v. National Small Bus. Alliance, Inc., No. 05-CV-7776, 2007 WL 1701813, (S.D.N.Y. June 12, 2007)*.

134. I respectfully submit that, inasmuch as, LBHI undertook to guarantee the liabilities and obligations of LBJKK by way of the Resolution made by the Executive Committee of the Board of Directors of LBHI (see above), it is so bound, and is thus, equitably Estopped from arguing differently.

135. An argument that seems to flow from the Objection is that some other, of their wholly owned subsidiaries is responsible, and thus, LBHI cannot be held liable, this cannot be further from the truth.
In truth, it is well settled under U.S. Case Law generally, and New York State laws specifically, that once a Judgment has been obtained, enforcement action can be brought against any subsidiary, or other separately incorporated entity, so long as there exist some structural corporate relationship with the Judgment Debtor, and the entity that enforcement action is being brought against has offices in New York.

136. See *Shaffer v. Heitner 433 U.S. 186 (1977)*.
Where Heitner sought to obtain jurisdiction over Shaffer by sequestering stock he held in a Delaware corporation, although this stock was not physically located in Delaware. In footnote "Thirty Six" (36), the Court stated,
> *"Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter".*

137. See Court Of Appeals ruling in the case of *Koehler v. Bank of Bermuda, 911 N.E.2d 825 (N.Y. 2009)*.
In this case, the court found that Bank of Bermuda New York Entity, although separately incorporated, was the agent of the Parent. Notably, in this case, Bank of Bermuda operated in New York through a separately incorporated Entity. The New York Bank was both a Subsidiary, and a separate Entity from the Bermudan Bank.

138. In this ruling The Court Of Appeals, Held:
> *"If the bank has a New York branch – either one that is not separately incorporated, or a subsidiary with which the parent's relationship is close enough to subject the parent to New York jurisdiction – the judgment creditor, having registered the judgment in New York, can obtain an order requiring the asset [outside the country] to be delivered here."*

139. This ruling clearly confirms, that Banks that operate in New York through unincorporated Entities or through separately incorporated Entities, could have a close enough relationship to subject them to jurisdiction in New York; and can be required to bring assets of the Judgment Debtor from outside the state, and even outside the country, to New York in order to satisfy a Judgment.

140. It is pertinent, that the following case supports the Court of Appeals ruling in *Koehler v. Bank Of Bermuda* (details above) *In re: ASHAPURA MINECHEM LTD, Case No. 11-14668 (JMP), (Bankruptcy S.D.N.Y November 2011)*

141. The above case is similar to the issues as highlighted in my response to the extent that Eitzen Bulk is a judgment creditor, having obtained an Arbitration Award pursuant to a contract, and obtained Judgments of the English High Court and of this Court. Bankruptcy Judge J M. Peck stated 'Inter Alia' as part of his 'Obita Dicta' that
> *"...Ashapura's conscious choice to ignore the arbitrations and not to defend them has proven to be a strategic error of colossal proportions."*

142. Judge J M. Peck further stated (again 'Inter Alia')
>"Whether this results from arrogance, ignorance or simply a lack of good judgment on the part of Mr. Shah and his advisors is not clear. What does seem clear is that Ashapura unwisely adopted arbitration strategies that have resulted in massive judgments against the company that threaten its viability, and it now finds itself in the midst of a terribly nasty cross border fight for strategic advantage and ultimately for its own corporate survival."

143. I see similarities in the Ashapura Minechem Ltd case (omission to defend Court Proceedings) that Judge J M. Peck was referring to, with the circumstances that now confronts LBHI.
On the one hand, by LBHI not recognising or unwilling to recognise that they were potentially the subject of Court Proceedings, LBHI now find themselves with a Judgment against them, on the other hand if they try to escape liability for the Judgment, based upon a 'Separate Entity' argument, the Court of Appeal ruling in the Koehler Case makes that impossible.

144. Other more recent, notable cases supporting the ruling in *Koehler v. Bank of Bermuda, 911 N.E. 2d 825 (N.Y. 2009)* include the following cases

145. *JW Oilfield Equipment, LLC   v. Commerzbank AG,  764 F.Supp.2d 587 (S.D.N.Y. 2011)*.
 (Separate Entity rule overturned by the Koehler case, restraining notices have global effect, German bank ordered to turn over judgment debtor's German-based bank account balance to judgment creditor);
The court required Commerzbank to turn over assets held in Germany. In so doing, the court found that Koehler had implicitly abrogated the separate entity rule.

146. *Eitzen Bulk v. Bank of India, 2011 WL 4639823, No. 09-cv-10118 (S.D.N.Y. Oct. 5, 2011) (AKH)*
(Separate entity rule abrogated by Koehler Case; asset information subpoenas directed at Indian-based accounts of Indian Bank);

147. *McCarthy v. Wachovia Bank N.A.., No. CV 08-1122 (ETB), 2011 U.S. Dist. LEXIS 2477 (E.D.N.Y. .Jan. 11, 2011)*
(Holding restraining notice has extraterritorial effect and relying on Koehler Case);

148. *Wiley v. Kirtsaeng, 2009 WL 3003242 (S.D.N.Y. 2009)*
(Holding restraining notice has extraterritorial effect and relying on Koehler Case);

149. Thus, I respectfully submit, that another basis for holding the view, that a local presence in New York is sufficient to establish personal jurisdiction over a Foreign Entity, and thus expose an Entity in New York to enforcement action, is **where the entities themselves disregard their separate corporate integrity**.
See *Pages 1 – 6 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 1 – 6 of Exhibit E (Hard Copy version)*
See *Pages 33 – 53 of Exhibit E and Exhibit F_2007 Annual Report* (or *Pages 33 – 53 of Exhibit F (Hard Copy version))*.
See *Pages 1 – 10 of Exhibit G_Board Meeting*.
See *Exhibit K_Japan HR Email*.

150. See also, In *Yayasan Sabah Dua Shipping SDN v. Scandinavian Liquid Carriers Ltd., 335 F. Supp. 2d 441 (S.D.N.Y. 2004)*. In this case, a Rule B attachment served upon the New York branch of a Cayman Islands bank was upheld, notwithstanding the defendant's bank account was located in the Cayman Islands branch, because according to the Court Ruling
>*"the Cayman Islands branch is a paper bank entirely controlled and managed by Danske Bank's New York operation."*

151. Although the Yayasan Sabah Dua Shipping SDN v. Scandinavian Liquid Carriers Ltd case (see above), involved a Prejudgment Attachment and Branches, not separate Corporate Entities. Nevertheless, similar reasoning conceivably may be used to find a basis for enforcement proceeding against a foreign Entity, with a local presence in New York.

152. For the reasons as outlined above, I respectfully make the point, that the preponderance of the cases above, confirms that a Judgment Creditor is able to enforce his Judgment against a Judgment Debtor, under New York State laws (inclusive of U.S. and New York case law). Indeed this is so…
>a) Where the Entity against which enforcement proceeding is brought (in this case LBHI), has a local presence in New York, and or, a close connection with the Entity, or Entities against whom,  a Judgment was made.
>b) The Judgment can be made outside New York, even outside the U.S; still liability for such a Judgment can be passed on to a related Entity in New York.
>c) Such enforcement against a Judgment Debtor is not barred, by the fact (or indeed argument) that the Entity against whom, the Judgment was made is, or was, separately incorporated from the Entity that is made to bear the liability for such a Judgment.
>d) Submission of a Proof of Claim is the only enforcement action, which can be taken against a Judgment Debtor in bankruptcy proceedings, and is recognizable by the Courts as such.

153. *See ADVANCED MARKETING SERVICES, INC., et al., Debtor. Curtis R. Smith, Plan, Administrator of Advanced Marketing Services Inc., Plaintiff, v. PAC International Logistics Company, Defendant. Bankruptcy No. 06-11480 (CSS). Adversary No. 08-51896 United States Bankruptcy Court, D. Delaware, April 2011.*

154. Prior to my employment with Lehman Brothers, I knew Lehman Brothers only as a U.S. Investment Bank headquartered in New York with offices around the world, including London. During the various interviews with Lehman Brothers, it was represented to me that I was joining Lehman Brothers. See *Exhibit K_Japan HR Email*.

155. I raised the question during the Contract Negotiation stage (Employment Contract) as to whom exactly would be my employers, as a result, it was consciously specified in my Employment Contract, that my employers includes LBJKK, its Parents, Subsidiaries and Affiliates, Successors and Assigns. It was as a result of contract negotiations that I became aware that there was a parent company at the apex of the Corporation known as Lehman Brothers, though I was assured by the HR Representatives in phone calls that the constituent parts of Lehman Brothers were inherently part of a corporate whole, and that the identity of constituent parts could be disregarded for all intents and purposes.

156. I respectfully make the point that I contacted the senior Managers (to the best of my knowledge), of the apex company of Lehman Brothers (now known to be LBHI), before I commenced Court Proceedings, as well as after Court Proceedings by email, as well as, got in contact with the New York Offices sometime in February 2008.
See *Exhibit M_PreJudgemnt Email To LBHI*.
See *Exhibit N_PostJudgemnt Email To LBHI*.

157. I respectfully make the point that, it cannot be mere coincidence that virtually all the Senior Managers I contacted were employees of LBHI (parent company), and that the majority of them were members of the Executive Committee of LBHI Board of Directors. It cannot also be put down to coincidence that one of the persons (Senior Managers), was the legal counsel to LBHI.

158. The Senior Managers, I contacted by email **prior to, and after Court Proceedings,** include the following persons. You will note that all of the persons as enumerated below, are Senior Employees (Management Personnel), in LBHI, and also that, the majority of names below are also members of the Executive Committee of the Board of Directors of LBHI. See *Exhibit G_Board Meeting*.

Tom Russo (LBHI Chief Legal Officer (CLO) also acts as Legal Counsel and Executive Vice President),
Richard Fuld (Chairman and Chief Executive Officer LBHI, Executive Committee),
Dave Goldfarb (LBHI Global Head of Strategic Partnerships, Principal Investing and Risk (Chief Strategy Officer)),
George H. Walker IV Global Head of Investment Banking, Executive Committee),
Steve Lessing (LBHI Global Head of Client Relationship Management),
Joseph Gregory (LBHI Chief Operating Officer, Executive Committee),
Bart McDade III (LBHI Chief Operating Officer, former Global Head of Capital Markets/Equities, Executive Committee),
Hugh McGee (Global Head of Investment Banking, Executive Committee),
Bridget O'Connor (LBHI Chief Information Officer- CIO and Global Head of Business Continuity),
Christopher O'Meara (LBHI Chief Financial Officer (CFO), Executive Vice President and Controller),
Jeremy Issacs (LBHI Chief Executive Officer for Europe and Asia, Executive Committee),
Jasjit Bhattal (LBHI Chief Executive Officer Asia, Executive Committee),
Scott Freidheim (LBHI Executive Vice President and Co-Chief Administrative Officer (CAO)),
Theodore Janulis (LBHI Global Head of Mortgage Capital),
Anne Erni (LBHI - Chief Diversity and Inclusion Officer (Global Head of Diversity and Inclusion)),
Roger B. Nagioff (LBHI Chief Operating Officer).

159. All these Senior Employees of LBHI were the target of my email as I knew they were Employees of the apex Parent Company, though it was the case (at the time), that I did not know the specific legal name of the parent company, this was so, as within the Corporation known as 'Lehman Brothers', all distinctions between companies were completely blurred, and 'rank and file', Employees were encouraged to hold the official view, that they worked for a single Corporation known as 'Lehman Brothers', and this concept was both formal and informal, at all levels within the Corporation.

160. I respectfully make the point, that my contacting (emails), of a large numbers of Senior Managers of LBHI relating to the matter (racial discrimination), that preceded Court Proceedings and subsequent Judgments in my favor, clearly evidences the fact that I was aware of the apex Parent Company (LBHI) of the Corporation known as Lehman Brothers, and that, furthermore, I deliberately targeted my emails audience at LBHI.

161. Additionally, I respectfully make the point that although, I was unaware of the name of the Parent entity prior to and during Court Proceedings, I was clear throughout Court Proceedings that the target of my Court Proceedings was the Parent Company of the Corporation known as 'Lehman Brothers'.

162. Though it was that, the technical maneuverings and legal dust thrown up by LBJKK and LBL to confuse issues, even to the extent of LBL (during Court Proceedings), suggesting that 'Lehman Brothers Limited' was the name of the Parent Company, and generally trying to capitalize on the fact that I was both a legal novice, as well as, representing myself due to financial constraints; even so, I remain happy, given that, the Judges in Court Proceedings, saw through LBJKK and LBL technical ploys and maneuverings, and rejected their arguments. Indeed, if the ploy by LBL had succeeded, I would have been left with a Judgment against a Party that I had not intended.

163. I also make the point that, indeed LBHI was the target of my Judgment against them, as shown by the fact that prior to Court Proceedings against LBHI, I had contacted (by phone call) a very helpful, Attorney Tracey Brown of the Cochrane Law Firm in New York, seeking advice on how to bring Court Proceedings against the apex Parent Company of the Lehman Brothers Corporation in New York.
The advice I received was that I would be unable to bring Court Proceedings; relating to an Employment Dispute (based upon employment overseas) in New York, as there was a requirement in the circumstances for me to be a US citizen.

164. Following discussion with Attorney Tracey Brown, I resolved that my next best approach was to get a Judgment in London, against the apex Parent of the Corporation 'Lehman Brothers', and then seek enforcement in New York.
My point as outlined above is further evidenced by the fact, that after Judgment against LBHI had been reached (and the three month period for Appeals to be made had expired), I once again contacted Attorney Tracey Brown seeking advice on how to enforce my Judgment against the apex Parent Company of the Corporation 'Lehman Brothers'.
See *Exhibit L_Tracey Brown*.

# Undisputable Facts

165. It is a fact that my Employment Contract referred to LBJKK, its Parents, Subsidiaries, Successors and Assignees as all parties to it (Employment Contract), and that furthermore, in the same Employment Contract, they were collectively described as the 'Firm'.
166. It is a fact that LBHI (Parent entity) and its (wholly) owned Subsidiaries have been collectively described by LBHI as the 'Firm', or 'One Company', or the 'Company' and that by LBHI own will, LBHI including its wholly owned entities used the Trade Name 'Lehman Brothers'.

167. It is a fact that, that although, I was unaware of LBHI legal name and referred to LBHI using their Trade Name, that I had contacted LBHI Senior Managers by email, prior to the commencement of Court Proceedings in 2007, and again, after Court Proceedings in 2008. I had also made contact with LBHI Offices in New York, by telephone in February 2008.

168. It is a fact that I contacted a sympathetic Attorney, namely Tracey Brown of the Cochrane Law Firm New York Office, prior to Court Proceedings against LBHI on bringing Court Proceedings against LBHI in New York, once Judgment was reached against LBHI, I again contacted Attorney Tracey Brown, seeking advice for enforcement in New York.

169. It is a fact that my first Proof Of Claim (Claim No. 5583), was stated to be against 'Lehman Brothers' and that, I sent in another Proof Of Claim, to amend the name of my previous Proof Of Claim (once I was made aware of the legal name of LBHI), and that this further Proof Of Claim (Claim No. 8025), was stated to be against LBHI.
That furthermore, this amendment, took place, prior to any 'Bar' dates to the submission of Claims against LBHI, and prior to any objection by LBHI to any of my Proofs Of Claim, that in short, the amendment to my Proof Of Claim was done under my own initiative, upon my realizing that I was referring to a Trade Name, and not LBHI legal name (it was done without prompting from any quarters).

170. It is a fact that LBHI referred to its London offices as a Regional Headquarters, and furthermore, even in LBHI own Financial Reports as made available for financial requirements as to the world at large, it confirms its office in London as its London Offices.

171. It is a fact that a valid Judgment once made is final and conclusive as to the facts to which it refers, also, it is a fact that the Judgments as entered against stated LBHI Trade Name, 'Lehman Brothers', and not the legal name of LBHI.

172. It is a legal fact that under New York laws (inclusive of case laws), Judgments made against an Entity by reference to its Trade Name are recognized, valid and enforceable.

173. Although it is the case that LBHI was the target of the Court Proceedings and subsequent Judgment as entered by my person. It is a legal fact that under New York laws (inclusive of case laws), Parent Companies can be held responsible for the liabilities of their Subsidiaries, irrespective of where the Judgment was made.

174. Although it is the case that LBHI was the target of the Court Proceedings and subsequent Judgment as entered by my person. It is a legal fact that under New York laws (inclusive of case laws), upon a Judgment being entered, enforcement of such Judgment can be made against any Parent Company of a Subsidiary, and or, any Subsidiary of a Parent Company, if any such Parent or Subsidiary has offices or other assets, in New York, irrespective of where the Judgment was made.

## Conclusion

175. LBHI was the target of my Court Proceeding, and the subsequent Judgment, and this is supported by substantial evidence, including the fact that LBHI Senior Management Personnel was contacted prior to and after Court Proceedings and Judgment against LBHI. My person contacted them, as they were the Senior Management Personnel of the ultimate Parent Company the Organization known as LBHI.

176. It should be noted that, LBHI has in its Objection has not been able to show any evidence to either disprove my Proof of Claim or show that LBHI should not, or could not be liable for the Judgment.

177. LBHI cannot dispute liability relating to the Judgment against them whether, by arguing, that they were not a party to my Employment Contract or even by arguing that they could not have been the entity against whom the Judgment was entered,

178. LBHI arguments would both be flawed in as much as the following is true.
   (i) LBHI is a Parent of their wholly owned Subsidiary LBJKK (and Parents of LBJKK are explicitly referred to in my Employment Contract),
   (ii) Furthermore, LBHI undertook to fully guarantee all obligations liabilities commitments of LBJKK (Lehman Brothers Japan Inc) as a result of their 9th June 2005 Resolution as adopted by the Executive Committee of the Board of Directors of the LBHI.

179. For the reasons stated above and as outlined through several well-supported arguments, LBHI is indeed liable for the Judgment against them, and I respectfully assert that it would inequitable for it to be considered otherwise.
**WHEREFORE**, I respectfully requests that this Court **deny Debtors' request**, that my Proof Of Claim (namely Claim No. 8025), be disallowed and expunged.

Dated: 27th March 2012

Respectfully submitted,

Kay Sehi-Emovon (Pro Se)
42 Opal House,
Milton Keynes, Bucks,
United Kingdom,  MK9 2EL.
Telephone 1: (44) 7712-442598
Telephone 2: (44) 7548-884608
Email: sehiemovon@hotmail.com