Case Number: **3203153/2007**

rm



# THE EMPLOYMENT TRIBUNALS

**BETWEEN**

| *Claimant* | | *Respondent* |
|---|---|---|
| Mr K Sehi-Emovon | **AND** | Lehman Brothers |

# JUDGMENT OF THE EMPLOYMENT TRIBUNAL

| | | | |
|---|---|---|---|
| **HELD AT:** | STRATFORD | **ON:** | 18 July 2008 |
| **Employment Judge Haynes** | | **Members:** | Mr AA Khwaja |

***Appearances***

**For the Claimant:** In person

**For the 1st Respondent:** Not represented and did not attend

Mr P McGrath attend to represent Lehman Brothers Ltd in respect only the application to join them as Respondent

# JUDGMENT

**The unanimous judgment of the Tribunal is that:-**

1. **The Claimant's application to amend the Claim to join Lehman Brothers Ltd as a Respondent be dismissed.**

2. **No action be taken to consider reviewing the Default Judgment.**

3. **The Respondent be ordered to pay the Claimant compensation in the**

**sum of £1,353,431.81.**

# REASONS

1. At the commencement of the hearing it was pointed out that one of the Tribunal members had been unable to attend through illness. The Claimant readily accepted that he would proceed with a Tribunal of the judge and one member. Mr McGrath indicated that his client would not object to proceeding on that basis.

2. This hearing has been listed as a Remedy Hearing following a Default Judgment granted against the Respondent in the case on 28 January 2008 which established that the Claimant had been discriminated against on the ground of his race by reason of his dismissal.

3. The Default Judgment was made against Lehman Brothers who were the Respondents named in the claim. The record of the Case Management Discussion held before Regional Employment Judge Lamb sets out the history of the matter and we adopt that account rather than go through all of the details of the case again. We need to make clear, for the purpose of this decision, that Lehman Brothers is the trading name of a large banking organisation and also the name by which it is familiarly known. It set out on the top of their note paper as their trading name. In fact their business is conducted through the medium of a number of companies which usually having "Lehman Brothers" as part of their title. When the claim was served at the address used by the Lehman Brothers business, someone on their behalf returned the claim to the Tribunal rather than, as many large Respondents do, identifying the correct identity of the subsidiary which was concerned in the employment of the Claimant. As a result the Default Judgment was made.

4. The difficulty in this situation is that there appears to be no such legal entity as Lehman Brothers. In United Kingdom law a legal entity is, generally, either an individual, a partnership or a company, which can either be limited or limited by guarantee. Trade names are entirely seperate from legal identity and are not helpful in identifying a legal entity. The Claimant accepts that the employment which was terminated and upon which he bases his complaint, arose under a written contract with a company called Lehman Brothers Japan Inc, that he worked and was dismissed in Japan by that company.

5. The Claimant's application is that we should amend the name of the Respondent in the Default Judgment from Lehman Brothers to Lehman Brothers Ltd which is a limited company registered in England. He asked that we do this under the power contained in Rule 37 of the Employment Tribunal Rules of Procedure. What that rule says is

> *"37(1) Clerical mistakes in any order judgment, decision or reason or errors arising in those documents from an accidental slip or omission may at any time be corrected by certificate by the chairman, Regional Chairman, Vice President or President"*

6. Quite clearly the Rule is aimed at mistakes made by the Tribunal itself. For instance, if the Claim had been made against Lehman Brothers Ltd and a document was sent out naming the Respondent as Lehman Brothers only, then it would be appropriate to alter that mistake by a certificate of correction. What happened here, however, was not an error by the Tribunal. If an error was made, it was by the Claimant in not identifying the correct Respondent. We do not criticise him for this because we appreciate that the organisation set up as Lehman Brothers is very extensive and it could be a very difficult task to identify the correct part of its organisation. Having considered all of the facts, we cannot find that there has been any clerical mistake in the judgment which needs correcting. It follows that we find that we had no power under Rule 37 to make the amendment the Claimant asks us to do.

7. That is not the only way in which the application can be dealt with. We have a general power, contained in Rule 10, to make case management decisions. One of such decisions could be to add to or amend the name of a party. The Claimant has referred us with the decision in **Cummings v Campus Group UK and Ireland Ltd [Unreported]** in which a similar situation occurred. What was decided by His Honour Judge Reed at the Employment Appeal Tribunal was that Tribunals had a power to allow amendments of the names of parties. At paragraph 12 he said:

> *"The question is whether in the circumstances of the case it was just and equitable to allow an amendment to be made so that her proper name was inserted*

The Claimant also referred us to a more recent decision where it was decided that the Tribunal had power under the Rule to amend the name of the Respondent. It is clear that we have the power to make amendments of the sort requested by the Claimant, but it is equally clear that this has to be done on a just and equitable basis. "Just and equitable" is a well used test in Employment Tribunals. It is commonly interpreted as requiring the Tribunal to balance the hardship and prejudice which might be caused to both of the parties should we grant or refuse the application.

8. If we start with the Claimant, he could suffer great hardship if we do not grant his application because he could lose any potential right of action against Lehman Brothers Ltd and he may not be able to enforce any judgment which we give him against the existing Respondent. For the proposed Respondent there is possible hardship as well. They would be force to accept an existing Default Judgment to which they had not had the opportunity of putting forward any grounds of resistance. They would also be faced with dealing with a Claim which, as far as they were concerned, had been made considerably out of time. On the other hand, as the Claimant has very forcibly argued, their inability to resist the claim is to some extent their own fault for failing to deal adequately with the claim when it was first served at their offices.

9. We also have to take into account the interests of justice, which is always a matter of great importance. The interests of justice require that both parties should have the right to be heard before a judgment is made on their respective rights. Without hearing both parties there is a possibility that justice might not be done.

10. Before we decide whether it is appropriate to amend the name of the Respondent, we have to note that there is an alternative method by which the

proposed respondent could be brought into the proceedings. They could be joined as a further Respondent. That course has the advantage that the new respondent would have to be served and would have to be given an opportunity of defending the claim against them. That would enable them to put forward their grounds of resistance. Because that option is open we have decided that it is not just and equitable to grant just an amendment of the name of the Respondent which would leave Lehman Brothers Ltd immediately liable to a Default Judgment about which they could not make any objection. That would not be just and equitable.

11. We next have to consider whether we should grant leave to join Lehman Brothers Ltd as a second Respondent. This is not something which, at this stage in the case, can be granted without consideration. Mr McGrath has referred us to and we have considered a number of cases which establish how a Tribunal should approach applications for leave to amend and leave to add additional Respondents. There is no need to through them as they are all extremely well known.

12. The principle adopted is somewhat similar to that which we have already referred, namely that we have to consider the relative hardship to both parties should we grant or refuse the application. In this connection we note that the Claimant has already willingly abandoned his existing complaint against Lehman Brothers Japan Inc, which, at first view, would appear to be in the best and most likely Respondent to bring his complaint against. That is a decision which has been made and we cannot go back over that ground.

13. Before we consider the balance of prejudice, it is important that we should look at what the Claim is about. It is about discrimination in employment and the Statutory provision under which it is brought is section 4 of the Race Relations Act 1976. Subsection (2) relates to Claimants who are in employment and provides;

> *" It is unlawful for a person in the case of a person employed by him at an establishment in Great Britain to discriminate against that employee,*
>
> *(c) by dismissing him"*

This is the section of the Act under which the Claimant must bring his complaint. One of the essentials of the Section is that there has to be employment. There may be an issue as to whether the employment was in Great Britain, but for the purpose of this judgment only, we assume that the Claimant could satisfy the provisions of Section 81A and that it would be concluded that his employment was in Great Britain. He still has to show that the discrimination occurred in connection with employment by the proposed Respondent. It is not disputed that he had a contract with Lehman Brothers Japan Inc, nor that he worked for them in Japan and was dismissed by them there.

14. We have not heard that there is any contractual connection between the Claimant and Lehman Brothers Ltd. Whilst we would willingly have joined another Respondent, if there had been the possibility of an employment connection, the most careful examination of the facts put to us today and the documentation, does not lead us to find that there is any potential, likely or possible connection of an employment relationship between Lehman Brother Ltd and the Claimant. It is not, we find sufficient that Lehman Brothers Ltd is possibly the lead company for the group of companies

operated out of the United Kingdom, using the trading name of Lehman Brothers. There has to be some evidence to show that this company had an employment relationship with the Claimant and that employment relationship was terminated by them, so that Section 4(2) can be satisfied. On what we have heard there can be no argument that such a relationship existed.

15. Going back to the test of hardship, Lehman Brothers Ltd will have the hardship of having to defend a claim. We find that no hardship to the Claimant since he is not likely to succeed in the claim against the proposed respondent because of the impossibility of showing that he had an employment relationship with them. For those reasons we refuse leave to amend the claim by adding Lehman Brothers Ltd as a Respondent.

16. That of course leaves us with the complaint against Lehman Brothers. Mr McGrath, as friend of the court, has suggested that we might consider striking out the Claim because Lehman Brothers are not a legal entity merely a trading name. As a result, he argued, any judgment is not going to have any benefit to the Claimant as it will be unenforceable.

17. The only substantial argument that he puts forward to support this suggestion, is that there will be some potential embarrassment to Lehman Brothers generally, by having a finding of discrimination and possibly a large order for compensation registered against their trading name.

18. Before we consider such matters we must decide whether we have jurisdiction to consider such an application. Tribunals are limited to doing the things which they are permitted to do either by Statute or by our Rules of Procedure. The rules relating to reviews of judgments are set out in Rules 33 – 36 of the Employment Tribunals Rules of Procedure 2004. In relation to Default Judgments there are specific provisions in Rule 33, but we can only apply them on application by a party. The Claimant does not wish to make such an application, and Mr McGrath's client has no standing as they have not been joined as a party. We find that in the circumstances we have no power, whether we wanted to or not, to review the decision and set it aside.

19. Mr McGrath further suggested that we should consider whether the claim was properly accepted. We do have power to look at that of our own volition under Rule 34(4). However, if we consider Rule 3 which sets out when the claim should not be accepted by the Secretary, we see that this obligation arises only in the circumstances contained in Rule 3(2) which are as follows:

> *"(a) the claim does not include all the relevant required information*
>
> *(b) the Tribunal does not have power to consider the claim (or that relevant part of it) "*

Taking (a) first, we find that the claim did include the relevant information. The fact that Lehman Brothers is not a legal entity is not, we find, relevant information. Subsection (b) relates to the Tribunal's power to consider the claim. This relates to the Tribunal's

essential jurisdiction. We do have jurisdiction to deal with complaints of race discrimination and we do not consider that we could widen the construction of the Rule to require any consideration of whether any judgment, which might be made, could not possibly be enforced. We find, therefore, that we have no ability to review the acceptance of the claim and, therefore, the Default Judgment must stand.

20. Having advised the parties of that decision Mr McGrath took no further part in the proceedings although he continued to observe.

21. The Tribunal heard evidence from the Claimant as to his losses and made the following awards.

1. **Psychological loss.**

The Tribunal read a medical report from a consultant psychiatrist from which it appeared that the Claimant was suffering from moderate conditions of moderate depressive episode with somatic syndrome and acute stress reaction, resulting from his dismissal. Both conditions appeared to be mild and the Tribunal decided that compensation of £5,000 should be ordered for psychiatric injury.

(2) **Injury to feeling**

An award for £7,000 will be made in respect of injury to feelings. The circumstances of the Claimant's dismissal had been abrupt and unpleasant. Further he had committed himself to working in Japan and will have had great difficulty getting re-employed.

(3) **Increase in compensation**

We have decided that compensation must be increased by 40 percent by virtue of the provisions of Section 31(3) of the Employment Act 2002. The circumstances of the Claimant's dismissal were abrupt and unpleasant and no regard was paid to any of the procedures set out in the 2002 Act. The Tribunal decided that an uplift of 40 percent was just and equitable in the circumstances.

The total compensation of £12,000.00 is accordingly increased by £4,800 to £16,800. Interest was payable at 6 percent for a period of nine months amounting to £756 making the total award **£15,556**.

(4) **Loss of earnings**

**To the Hearing**

(4.1) The Tribunal calculated that the Claimant had lost earnings up to the date of the hearing as follows:

| | |
|---|---|
| Wages | £63,621.00 |
| Unpaid bonus | £26,415.00 |
| Lost housing subsidy | £10,080.00 |
| Cost of medical insurance | £ 4,116.00 |
| Total | **£104,232.06** |

This sum must be increased by 40 percent under Section 31, in the sum of £41,692.82. Total loss of earnings therefore amounted to £145,924.88. This sum must be grossed up to cover the potential liability for income tax because it all constitutes earnings. The grossed up figure we calculate to amount to £243,208.13. To this must be added interest at 6 percent from the mid point totalling £5,472.18. The total award for loss of earnings up the date of the hearing is **£248,680.31**.

**For the Future**

(4.2) For the future, the Tribunal decided that the Claimant is likely to obtain some form of employment after six months. He will therefore be awarded full compensation for a period of six months. We think it likely that any job he obtains will earn him a salary of no more than £50,000. We have decided that it is just and equitable to award compensation for a period of five years in respect of any lost earnings above the sum of £50,000. The sums calculate as follows in a list form:

| | |
|---|---|
| Loss of earnings for six months | £42,414.00 |
| Loss of basic earnings £34,828 a year for 5 years | £174,140.00 |
| 5 ½ years loss of housing assistance | £73,920.00 |
| Loss of bonus for 5 ½ years | £145,282.50 |
| Loss of medical insurance | £30,184.44 |
| Total | **£465,940.99** |

| | |
|---|---|
| This sum must be uplifted by 40 percent under Section 31(3) | £186,376.37 |
| Subtotal | £652,317.31 |

This sum must be grossed up to take account

of tax liabilities to **Total** **£1,087,195.50**.

**Summary**

| | |
|---|---|
| Injury to feelings and psychiatric damage | £17,056.00 |
| Loss of earnings till hearing | £248,680.31 |
| Future loss of earnings | £1,087,195.50 |
| Total Compensation | **£1,353,431.81** |

M A Hayes
..........................................................
**EMPLOYMENT JUDGE**

**JUDGMENT SENT TO THE PARTIES ON**

7th AUGUST 2008
..........................................................
**AND ENTERED IN THE REGISTER**

..........................................................
**FOR SECRETARY OF THE TRIBUNALS**



# NOTICE

## THE EMPLOYMENT TRIBUNALS (INTEREST) ORDER 1990

Tribunal case number(s): 3203153/2007

| ***Claimant*** | | ***Respondent*** |
|---|---|---|
| Mr K Sehi-Emovan | **AND** | Lehman Brothers |

The Employment Tribunals (Interest) Order 1990 provides that sums of money payable as a result of a judgment of an Employment Tribunal (excluding discrimination or equal pay awards or sums representing costs or expenses), shall carry interest where the sum remains unpaid on a day ("*the calculation day*") 42 days after the day ("*the relevant judgment day*") that the document containing the tribunal's judgment is recorded as having been sent to the parties.

The rate of interest payable is that specified in section 17 of the Judgments Act 1838 on the relevant judgment day. This is known as "the stipulated rate of interest" and the rate applicable in your case is set out below.

The following information in respect of this case is provided by the Secretary of the Tribunals in accordance with the requirements of Article 12 of the Order:-

"the relevant judgment day" is: 7/8/2008

"the calculation day" is: 18/9/2008

"the stipulated rate of interest" is: 8%

For and on Behalf of the Secretary of the Tribunals
Shazan Nazir



# INTEREST ON TRIBUNAL AWARDS

## GUIDANCE NOTE

1. This guidance note should be read in conjunction with the booklet "The judgment" (the booklet) which you received with your copy of the Tribunal's judgment.

2. The Employment Tribunals (Interest) Order 1990 provides for interest to be paid on employment tribunal awards (excluding discrimination or equal pay awards* or sums representing costs or expenses) if they remain wholly or partly unpaid after 42 days.

3. The 42 days run from the date on which the Tribunal's judgment is recorded as having been sent to the parties and is known as "the relevant judgment day". The date from which interest starts to accrue is the day immediately following the expiry of the 42 days period called "the calculation day". The dates of both the relevant judgment day and the calculation day that apply in your case are recorded on the Notice attached to the judgment. If you have received a judgment without written reasons and subsequently request a judgment with written reasons the date of the relevant judgment day will remain unchanged.

4. "Interest" means simple interest accruing from day to day on such part of the sum of money awarded by the tribunal for the time being remaining unpaid. Interest does not accrue on deductions such as Tax and/or National Insurance Contributions that are to be paid to the appropriate authorities. Neither does interest accrue on any sums which the Secretary of State has claimed in a recoupment notice.

5. Where the sum awarded is varied upon a review of the judgment by the Employment Tribunal or upon appeal to the Employment Appeal Tribunal or a higher appellate court, then interest will accrue in the same way (from "the calculation day"), but on the award as varied by the higher court and not on the sum originally awarded by the Tribunal.

6. Page 9 of the booklet explains how employment tribunal awards are enforced. The interest element of an award is enforced in the same way.

---

* The Employment Tribunals (Interest on Awards in Discrimination Cases) Regulations 1996 prescribes the provisions for interest on awards made in discrimination and equal pay cases.