**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                              :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    08-13555 (JMP)
:
        Debtors.                                   :    (Jointly Administered)
:
------------------------------------------------------------------x

**STIPULATION, AGREEMENT AND ORDER BETWEEN**
**MINNESOTA MASONIC HOME CARE CENTER, LEHMAN BROTHERS**
**SPECIAL FINANCING INC. AND LEHMAN BROTHERS HOLDINGS INC.**
**REGARDING ASSUMPTION AND ASSIGNMENT OF DERIVATIVES CONTRACT**

This stipulation, agreement and order (the "Stipulation, Agreement and Order") is entered into by and between the Minnesota Masonic Home Care Center ("Minnesota Masonic"), and Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI"), acting through LBHI in its capacity as Plan Administrator for the entities in the above referenced chapter 11 cases (collectively, the "Chapter 11 Entities"). LBSF, LBHI and Minnesota Masonic are collectively referred to in this Stipulation, Agreement and Order as the "Parties" and each a "Party."

RECITALS

A.     Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries, including LBSF, commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). LBSF commenced its Chapter 11 Case on October 3, 2008.

B.    The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures ("Bankruptcy Rules").

C.    LBSF and Minnesota Masonic are parties to a certain 1992 ISDA Master Agreement, including a schedule and confirmation thereto (the "Swap Agreement," a copy of which is annexed hereto as Exhibit A).  Under the Swap Agreement, LBSF has an obligation to pay 67% of the floating one-month USD-LIBOR-BBA interest rate on a notional amount that declines over time from $20,331,667.00, and Minnesota Masonic has the obligation to pay a fixed rate of interest of 3.346% on the same declining notional amount.  These obligations expire on July 1, 2022, and until such time, payments are required to be made in arrears on a net basis by the party owing the larger amount semiannually, on each January 1 and July 1 (subject to a business day convention).  LBHI is designated as the credit support provider for LBSF's obligations under the Swap Agreement.  The transactions under the Swap Agreement have not been terminated.

D.    LBSF believes that the value of the Swap Agreement to its estate exceeds $1.9 million.  LBSF seeks to secure and realize the value of the Swap Agreement for the benefit of its estate and creditors.

E.    Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code and sections 11.1, 11.5 and 11.6 of the confirmed Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [ECF No. 23023] (the "Plan"), all Derivatives Contracts with Minnesota Masonic were scheduled for assumption on Exhibit 2 to the Plan Supplement [ECF No. 21254] (as amended from time to time, the "Plan Supplement").  Minnesota Masonic did not object to LBSF's assumption of the Swap Agreement.  On December

2

6, 2011, the Bankruptcy Court entered an order confirming the Plan and, *inter alia*, approving the assumption of the Swap Agreement [ECF No. 23023] (the "Confirmation Order"). The Plan became effective on March 6, 2012. As such, the Swap Agreement was assumed by LBSF as of the effective date of the Plan.

F.  LBSF and Minnesota Masonic have negotiated a transaction pursuant to which LBSF will assign all of its rights and obligations under the Swap Agreement to 1271 Counterparty Company LLC (the "Assignee"), a wholly-owned, non-debtor subsidiary of LBSF, as evidenced by and in accordance with a novation agreement among LBSF, the Assignee, Minnesota Masonic, and Deutsche Bank AG, London Branch ("DB"), as credit support provider for the Assignee (the "Novation Agreement," a copy of which is annexed hereto as Exhibit B in substantially final form). LBSF will pay certain de minimis expenses incurred by Minnesota Masonic in connection with the Novation Agreement (the "Novation Expenses").

G.  Pursuant to the Novation Agreement, the obligations of the Assignee will be guaranteed by DB, and LBHI will be relieved of its obligations as credit support provider and guarantor under the Swap Agreement. LBSF will pay DB a fee (the "Guaranty Fee") for entering into the guaranty agreement and enabling the Assignee and, ultimately, LBSF (as described below) to obtain the benefits of the Swap Agreement. The Guaranty Fee is a market rate that has been approved by the statutory committee of unsecured creditors (the "Creditors' Committee").

H.  In order to capture the value of the Swap Agreement, contemporaneously with the execution of the Novation Agreement LBSF will enter into a new interest rate swap agreement with the Assignee and interest rate cap agreements with DB (the "New Swap Agreements") which, taken together, replicate for LBSF the economic benefits and risks that exist under the

3

Swap Agreement. LBSF expects to enter into agreements to hedge its exposure under the New Swap Agreements. The Novation Agreement and the New Swap Agreements shall collectively be referred to in this Stipulation, Agreement and Order as the "Assignment Transaction".

I. On January 28, 2009, the Bankruptcy Court entered an order approving the consensual assumption and assignment of prepetition Derivatives Contracts [ECF 2667] (the "Consensual Assignment Order"). Pursuant to the Consensual Assignment Order, the Chapter 11 Entities are authorized to assume and assign, including by novation, Derivatives Contracts (that have not been terminated) with the express written consent of the applicable counterparty (and any other consents required pursuant to the applicable Derivative Contract, related documents to which the applicable Chapter 11 Entity is a party, or terms of related documents with which the applicable Chapter 11 Entity has agreed to comply) without further approval of the Bankruptcy Court but subject to the consent of the Creditors' Committee. The Creditors' Committee has consented to the terms of the Assignment Transaction.

J. The Parties are seeking approval of the Assignment Transaction out of an abundance of caution at the request of Minnesota Masonic.

K. The Parties acknowledge and consent to the jurisdiction of the Bankruptcy Court over this matter pursuant to sections 14.1(a) and (o) of the Plan.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE PARTIES, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT**:

1. The recitals set forth above are incorporated as if fully set forth in this Stipulation, Agreement and Order.

2. This Stipulation, Agreement and Order shall be effective upon the first business date that all of the following have occurred (such date, the "Effective Date"): (i) the Novation

4

Agreement and the New Swap Agreements have been executed; and (ii) the Bankruptcy Court has approved this Stipulation, Agreement and Order. In the event the Bankruptcy Court does not approve this Stipulation, Agreement and Order, this Stipulation, Agreement and Order and the Assignment Transaction shall be null and void and of no force and effect, and each of the Parties' respective interests, rights, remedies and defenses with respect to the Swap Agreement shall be restored without prejudice as if this Stipulation, Agreement, and Order had never been executed.

3. Pursuant to sections 363(b)(1) and 365(f) of the Bankruptcy Code, LBSF is authorized to complete and deliver all instruments and documents and take all other actions as may be necessary or appropriate to execute, implement, consummate and effectuate the Assignment Transaction, including, without limitation, (i) execute the Novation Agreement and the New Swap Agreements; (ii) assign and sell LBSF's interest in the Swap Agreement to the Assignee as per the terms of the Novation Agreement, (iii) pay the Novation Expenses, the Guaranty Fee and any other fees and costs associated with the Assignment Transaction, and (iv) perform all obligations under the New Swap Agreements.

4. All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment by LBSF of the Swap Agreement have been satisfied.

5. Upon assignment of the Swap Agreement in accordance with the Novation Agreement, any defaults, events of default and early termination events under the Swap Agreement that are in existence as of the Effective Date, including, without limitation, any defaults that may have arisen under the Swap Agreement because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code, shall be deemed to have been cured, all liabilities of LBSF and LBHI arising therefrom shall be deemed to have been released and

5

discharged, and any rights of Minnesota Masonic to designate an early termination on account of such defaults are deemed to have been cured or waived.

6. Upon the Effective Date, Minnesota Masonic agrees that it shall not assert against LBSF, LBHI or the Assignee, or the property of any of them, any default or termination right arising prior to or existing as of the Effective Date or, against the Assignee, any counterclaim, defense, setoff or any other claim or interest asserted or assertable against the Chapter 11 Entities.

7. Upon the Effective Date, in accordance with section 365(k) of the Bankruptcy Code, LBSF shall have no further liability for any breach of the Swap Agreement.

8. Nothing herein shall constitute an assumption of any obligations by LBHI, and, upon the Effective Date, LBHI shall be relieved of all credit support, guaranty and other obligations arising from or related to the Swap Agreement.

9. Upon the Effective Date, Minnesota Masonic and its affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Minnesota Masonic Parties"), shall have no further right to payment from the Chapter 11 Entities, their affiliates (other than the Assignee pursuant to the terms of the Novation Agreement), their estates or their respective successors or assigns (collectively, the "Lehman Parties") on account of the Swap Agreement.  To the extent any Minnesota Masonic Party has filed a proof of claim against any Chapter 11 Entity on account of the Swap Agreement, including proof of claim number 32172, filed by Minnesota Masonic against LBSF, and proof of claim number 32171, filed by Minnesota Masonic against LBHI, such proof of claim shall be deemed disallowed and expunged and the Plan Administrator is authorized to provide a copy of

6

this Settlement, Agreement and Order to the court-approved claims and noticing agent appointed in the Chapter 11 Cases with a direction to mark all such claims as disallowed on the claims register.

10. Upon the Effective Date, the Minnesota Masonic Parties shall have no further obligations to make payments to the Lehman Parties on account of the Swap Agreement.

11. This Stipulation, Agreement and Order shall inure to the benefit of, and shall be binding upon, the Parties and their respective successors and assigns.

12. Other than the Lehman Parties with respect to paragraph 9, this Stipulation, Agreement and Order is solely for the benefit of the Parties (and their successors and assigns) and not for any other person or entity and no such person or entity shall be entitled to the benefit of (or be entitled to rely upon) this Stipulation, Agreement and Order.

13. This Stipulation, Agreement and Order can only be amended or otherwise modified by a signed writing executed by the Parties.

14. Each person who executes this Stipulation, Agreement and Order by or on behalf of each respective Party represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation, Agreement and Order on behalf of such Party.

15. This Stipulation, Agreement and Order may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement and Order to present any copy, copies or facsimiles signed by the Parties here to be charged.

*[Remainder of Page Intentionally Left Blank]*

16. This Stipulation, Agreement and Order shall be interpreted, construed and enforced exclusively in accordance with the laws of the State of New York.

Dated: March 27, 2012
       New York, New York

LEHMAN BROTHERS HOLDINGS INC., as Plan Administrator


/s/ Daniel Ehrmann

By: Daniel Ehrmann
Its: Senior Vice President


MINNESOTA MASONIC HOME CARE CENTER


/s/ Eric J. Neetenbeek

By: Eric J. Neetenbeek
Its:  President and Chief Executive Officer



**SO ORDERED:**


Dated: New York, New York
       April 11, 2012

                                  *s/ James M. Peck*
                              HONORABLE JAMES M. PECK
                              UNITED STATES BANKRUPTCY JUDGE