**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) Case No. 08-13555 (JMP) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| In re | ) |
| | ) |
| LEHMAN BROTHERS INC., | ) Case No. 08-01420 (JMP) SIPA |
| Debtor. | ) |
| | ) |
| | ) |

**REPLY IN FURTHER SUPPORT OF JPMORGAN'S MOTION TO STRIKE PORTIONS OF OBJECTION TO PROOFS OF CLAIM NO. 66462 AGAINST LEHMAN BROTHERS HOLDINGS INC. AND NO. 4939 AGAINST LEHMAN BROTHERS INC. <u>REGARDING TRIPARTY REPO-RELATED LOSSES</u>**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
(212) 403-1000

*Attorneys for JPMorgan Chase Bank, N.A.*

Dated: April 11, 2012

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT.............................................................................................................2

POINT I     THE PORTION OF THE OBJECTION RELATED TO THE
            DECEMBER SETTLEMENT AGREEMENT SHOULD BE STRICKEN...........2

    A.      LBHI has already received the benefit of the $7 Billion Settlement —
            the Deficiency Claim was reduced by $7 billion....................................................3

    B.      LBHI's obligations to JPMorgan should not be reduced by any value
            given by Barclays under the JPMorgan/Barclays Settlement................................5

        1.      The Objectors' position is illogical and contrary to the terms of the
                JPMorgan/Barclays Settlement. ...............................................................5

        2.      JPMorgan's claims against LBHI are distinct and independent
                from the settled claims against Barclays. ..................................................8

POINT II    THE PORTION OF THE OBJECTION RELATED TO POSTPETITION
            INTEREST SHOULD BE STRICKEN ...........................................................12

CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Barone* v. *Marone*,
   2007 WL 4458118 (S.D.N.Y. Dec. 14, 2007) .................................................. 10-11

*Citicorp Venture Capital* v. *Comm. of Creditors Holding Unsecured Claims*,
   160 F.3d 982 (3d Cir. 1998) ....................................................................... 8 n.2

*Cullen* v. *Riley (In re Masters Mates & Pilots Pension Plan & IRAP Litig.)*,
   957 F.2d 1020 (2d Cir. 1992) ..................................................................... 11 n.4

*Durk* v. *Daum Trucking, Inc.*,
   2008 WL 4671721 (N.D. Ill. Oct. 22, 2008) ................................................... 11 n.5

*In re Circuit City Stores, Inc.*,
   426 B.R. 560 (Bankr. E.D. Va. 2010) ........................................................... 10 n.3

*In re Lapiana*,
   909 F.2d 221 (7th Cir. 1990) ................................................................. 12, 14-15

*In re Nixon*,
   404 F. App'x 575 (3d Cir. 2010) ...................................................................... 12

*In re Pilgrim's Pride Corp.*,
   453 B.R. 691 (Bankr. N.D. Tex. 2011) .......................................................... 10 n.3

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000) ............................................................................. 7

*In re Rozel Industries, Inc.*,
   120 B.R. 944 (Bankr. N.D. Ill. 1990) ........................................................... 12-13

*Jason* v. *Carpet Cleaning, Inc. (In re Jason)*,
   2007 WL 4553608 (Bankr. E.D. Va. Dec. 19, 2007) ....................................... 10 n.3

*Lincoln Sav. Bank, FSB* v. *Suffolk Cnty. Treasurer (In re Parr Meadows Racing Ass'n, Inc.)*,
   880 F.2d 1540 (2d Cir. 1989) .......................................................................... 12

*Moore* v. *Driggers (In re Morgan)*,
   2003 WL 1728667 (Bankr. S.D. Ga. Mar. 14, 2003) ....................................... 10 n.3

*People of the State of Cal.* v. *Chevron Corp.*,
   872 F.2d 1410 (9th Cir. 1989) ..................................................................... 11 n.5

*PNC Bank, Nat'l Ass'n* v. *Park Forest Dev. Corp. (In re Park Forest Dev. Corp.)*,
   197 B.R. 388 (Bankr. N.D. Ga. 1996) ........................................................... 10 n.3

*Singer* v. *Olympia Brewing Co.*,
   878 F.2d 596 (2d Cir. 1989) ......................................................................... 11 n.4

*Solomon* v. *Wein (In re Huhn)*,
   145 B.R. 872 (W.D. Mich. 1992) ............................................................................ 13

*Sparaco* v. *Lawler, Matusky, Skelly Eng'rs LLP*,
   313 F. Supp. 2d 247 (S.D.N.Y. 2004) .................................................................... 11

*Stockholders' Prot. Comm. for Moulded Products, Inc.* v. *Barry (In re Moulded Prods., Inc.)*,
   474 F.2d 220 (8th Cir. 1973) ................................................................................... 9

*United States* v. *Oakland City Apartments, Inc. (In re Oakland City Apartments)*,
   1 B.R. 123 (Bankr. N.D. Ga. 1979) ................................................................... 10 n.3

*United States* v. *Ron Pair Enters., Inc*,
   489 U.S. 235 (1989) ...................................................................................... 12, 13

## Statutes

11 U.S.C. § 363(a) ................................................................................................ 14

11 U.S.C. § 363(c)(2) ........................................................................................... 14

11 U.S.C. § 506(b) ...................................................................... 1, 2, 12, 13, 14, 15

## PRELIMINARY STATEMENT

In their opposition brief (the "Opposition"), the Objectors have made new arguments that compound the errors in their Objection.[1]  The Court-approved settlement among JPMorgan, Barclays, and the LBI Trustee in the December Settlement Agreement conferred a benefit on LBHI by paying down the Deficiency Claim by almost $2 billion more than it might have been satisfied absent the settlement.  Yet the Objectors simply ignore this pay-down and now contend in their response that the Deficiency Claim should be reduced *again* by the same amount.  Their position is baseless.

Additionally, the Objectors assert that LBI and LBHI are relieved of their contractual obligations to repay JPMorgan's clearance-related advances because JPMorgan received consideration from Barclays in a settlement between JPMorgan and Barclays.  Their position again lacks any basis in law or logic:  Lehman has made no double payment to JPMorgan; Lehman contributed nothing to the settlement; and the settlement in no way diminished the Lehman estates.  Moreover, although there is no reason to believe that JPMorgan will ever recover more than what it is owed on its clearance-related claims, any conceivable "excess" payment would come solely from Barclays, not from Lehman.  Lehman has never been at risk of paying more than 100% of what it owes JPMorgan — and it never will be.

Lehman's attempt to defeat JPMorgan's claim for interest is also untenable.  Section 506(b) of the Bankruptcy Code establishes a right to postpetition interest, which the Supreme Court has repeatedly declared is "unqualified."  The only way to re-write the statute to include the Objectors' so-called "equitable considerations" is to ignore both the express language

---

[1]     Capitalized terms used in this Reply without definition have the meanings ascribed to them in JPMorgan's Memorandum of Law in Support of JPMorgan's Motion to Strike.

of Section 506(b) and the Supreme Court's clear mandate.  Far from offering any justification for

taking that extraordinary step, the Objectors would have this Court declare that postpetition

interest must always be denied to a bank or other creditor secured by cash whenever the creditor

can invest that cash.  They cite no authority whatever for this entirely unprecedented and

unwarranted rule.

## ARGUMENT

### POINT I

### THE PORTION OF THE OBJECTION RELATED TO THE DECEMBER SETTLEMENT AGREEMENT SHOULD BE STRICKEN

The Objectors contend that JPMorgan will somehow obtain an improper "double

recovery" as a result of consideration obtained from Barclays under the December Settlement

Agreement, and that the consideration from Barclays should thus be applied in reduction of

Lehman's own obligations to JPMorgan.  Indeed, the Objectors have now upped the ante to a

new level by contending for the first time that the "double recovery" they challenge should also

include a purported shortfall of nearly $2 billion between the cash Barclays claimed it was owed

and the cash and securities transferred to Barclays in the December Settlement.

Some analytic clarity is in order to dispel the multiple errors and confusion of

these contentions.  The December Settlement Agreement had two separate components:

(1) a settlement among JPMorgan, Barclays, and the LBI Trustee resolving their respective rights

with respect to $7 billion in cash and certain securities contained in LBI's cash and securities

accounts maintained at JPMorgan at the time of the commencement of LBI's SIPA proceeding

(the "$7 Billion Settlement"); and (2) a settlement between JPMorgan and Barclays of their

disputes relating to Barclays' failure to roll a $15.8 billion repurchase agreement and take other

steps to replace JPMorgan's clearance-related financing of LBI (the "JPMorgan/Barclays

Settlement"). The components of the December Settlement Agreement are discussed separately below to demonstrate that the Objectors' contentions are utterly without merit.

### A.    LBHI has already received the benefit of the $7 Billion Settlement — the Deficiency Claim was reduced by $7 billion.

As this Court is well aware, on September 18, 2008 — the day before this Court approved Barclays' purchase of much of LBI's business — Barclays attempted to acquire for $45 billion in cash a portfolio of LBI securities. However, by the time the Fedwire and DTCC closed that evening, securities valued initially at approximately $7 billion had not been delivered to Barclays. JPMorgan thus advanced to LBI $7 billion of cash, which was deposited in a cash collateral account for Barclays' benefit to secure the shortfall. The $7 billion of cash was transferred to an LBI account on the morning of September 19, so that both the $7 billion of cash and the undelivered securities were in LBI's accounts at the time of the commencement of the SIPA proceeding. Barclays subsequently asserted that it had been wronged and had not received the benefit of its Court-approved purchase from LBI. *See* Decl. Ex. H ¶¶ B-E.

The $7 Billion Settlement resolved the disputes among JPMorgan, Barclays, and the LBI Trustee as to their respective rights to the $7 billion of cash and the undelivered securities. Pursuant to the $7 Billion Settlement, the $7 billion of cash was retained by LBI and the remaining undelivered securities, together with cash representing the value of other undelivered securities that were liquidated before the settlement, were transferred to Barclays (the securities and cash transferred to Barclays are referred to in the December Settlement Agreement as the "Settlement Consideration"). *See id.* § 1. Consistent with this split of the property at issue, Section 2 of the December Settlement Agreement expressly provides that the $7 billion of cash retained by LBI — *not* the lower value of the Settlement Consideration — is

applied to repay JPMorgan's clearance-related claims against LBI.  This repayment correspondingly reduced the Deficiency Claim against LBHI.

In their Opposition, the Objectors assert that the value of the Settlement Consideration transferred to Barclays under the $7 Billion Settlement was "just over $5 billion, nearly $2 billion short of the cash Barclays claimed to be owed."  Opposition at 6.  Then, for the first time, the Objectors contend — totally ignoring the undisputed economic terms of the $7 Billion Settlement and the language of the December Settlement Agreement — that only JPMorgan obtained the benefit of the $2 billion difference in value between the $7 billion of cash and the Settlement Consideration, and that the Deficiency Claim should be reduced *again* by the difference.  Opposition at 15.

This contention is wrong on its face.  The Objectors fail or refuse to recognize that because the Deficiency Claim was reduced by the full $7 billion rather than the value of the Settlement Consideration, LBHI received the very benefit that they now seek.  As noted above, Section 2 of the December Settlement Agreement (which the Objectors studiously ignore) expressly applies the full $7 billion cash amount to repay JPMorgan's clearance-related advances to LBI.  Consequently, in the December Settlement Agreement, JPMorgan already obtained for LBHI precisely the benefit to which the Objectors now say LBHI is entitled, *i.e.*, the reduction of LBI's obligations and the Deficiency Claim by $7 billion instead of an amount "just over $5 billion."  In other words, more than three years ago, JPMorgan's Deficiency Claim against LBHI was paid down by the increment of "nearly $2 billion" that JPMorgan successfully negotiated.

Neither LBHI nor the Committee had any objection then to accepting the $2 billion benefit that was conferred upon LBHI and LBI as a result of the December Settlement Agreement.  For LBHI and the Committee now to seek the *same* benefit again at JPMorgan's

4

expense reflects a willingness on their part to take any position, no matter how aggressive or illogical, in pursuing their multi-front assault on JPMorgan's rights.

**B.    LBHI's obligations to JPMorgan should not be reduced by any value given by Barclays under the JPMorgan/Barclays Settlement.**

**1.    The Objectors' position is illogical and contrary to the terms of the JPMorgan/Barclays Settlement.**

The JPMorgan/Barclays Settlement is documented principally in Sections 4(b) and (e) of the December Settlement Agreement.  By contrast with the $7 Billion Settlement, the JPMorgan/Barclays Settlement contained in the December Settlement Agreement is a bilateral resolution of a dispute solely between JPMorgan and Barclays, and its provisions affect solely JPMorgan and Barclays.

The JPMorgan/Barclays Settlement resolved JPMorgan's claims against Barclays arising from Barclays' failure to roll a $15.8 billion repurchase agreement and take other steps to replace JPMorgan's clearance-related financing of LBI.  JPMorgan's damages resulting from Barclays' breach would eventually include, in addition to any shortfall in JPMorgan's ultimate recovery on the clearance-related claims, the fees and other expenses incurred to recover on those claims, as well as the fees and expenses incurred to defend against Lehman's efforts to avoid and challenge JPMorgan's claims, liens, and collection efforts.  At the time of the JPMorgan/Barclays Settlement, the extent of JPMorgan's overall damages was unknown and, indeed, is still unknown.  Similarly, the value (if any) of the Lawsuit released by Barclays pursuant to the JPMorgan/Barclays Settlement was not known and is still unknown.

Nonetheless, JPMorgan and Barclays decided to settle their disputes through the JPMorgan/Barclays Settlement.  In doing so, JPMorgan accepted the risk that it was being undercompensated for the damages that it would ultimately suffer, and Barclays accepted the risk

5

that it was overcompensating JPMorgan for such damages.  Lehman accepted no such risk in

either direction, had no role in the JPMorgan/Barclays Settlement, and was unaffected by the

JPMorgan/Barclays Settlement.

Having ignored Section 2 of the December Settlement Agreement with respect to

the $7 Billion Settlement, the Objectors ignore Section 2 once again with respect to the

JPMorgan/Barclays Settlement by contending that the value (if any) of the Lawsuit released by

Barclays should be applied against LBI's clearance-related obligations.  As explained in

JPMorgan's opening brief, however, Section 2 of the December Settlement Agreement specifies

what is and is not to be applied to LBI's clearance-related obligations — the $7 billion of cash is

to be applied and the Settlement Consideration is not — and nothing in the December Settlement

Agreement states or implies that some supposed value for the Lawsuit is to be applied against

those obligations.  That omission makes sense, as those were obligations of LBI, not Barclays,

and LBI's rights were not affected by the JPMorgan/Barclays Settlement.

In addition, as demonstrated in JPMorgan's opening brief, this Court's Order

approving the December Settlement Agreement makes the terms of the December Settlement

Agreement, including its application provisions, binding on the world, including the Objectors.

JPMorgan Br. 11-13.  This binding effect is not a matter of consent or waiver as suggested by the

Objectors.  Opposition at 19.

Nonetheless, the Objectors contend that the Deficiency Claim must be reduced by

the value (if any) of the Lawsuit so that JPMorgan does not "recover twice for the same alleged

injury," even if Lehman was not the source of the supposed double payment.  Opposition at 10.

The Objectors have confused two different concepts:  they are invoking case law and principles

dealing with *double payments* by debtors and guarantors in an effort to convert an alleged

possible *double recovery* by JPMorgan into a windfall for Lehman.  They would appropriate for

LBHI consideration obtained by JPMorgan from Barclays pursuant to the JPMorgan/Barclays

Settlement, even though LBHI was *not* a party to the JPMorgan/Barclays Settlement, LBHI

contributed *nothing* to the JPMorgan/Barclays Settlement, and the LBHI estate was in *no* way

diminished by the JPMorgan/Barclays Settlement.  Similarly, they ignore the fact that JPMorgan

*alone* released valuable claims against Barclays as part of the JPMorgan/Barclays Settlement,

and JPMorgan *alone* accepted the risk that it was being undercompensated as part of the

JPMorgan/Barclays Settlement.

      A contra-factual example reveals the flaws in the Objectors' logic:  JPMorgan and

Barclays might have agreed in the JPMorgan/Barclays Settlement that JPMorgan would return to

Barclays any settlement consideration that ultimately gave JPMorgan a double recovery, or that

Barclays would be subrogated to JPMorgan's clearance-related claims to the same extent.  Such

an agreement on its face would have eliminated any purported "double recovery," yet would

have affected only JPMorgan and Barclays and had no effect on the Lehman estates.  This shows

that the Objectors' position has no economic underpinnings.

      The possibility that the JPMorgan/Barclays Settlement might in hindsight years

later be viewed as favorable to JPMorgan at the expense of Barclays thus in no way diminishes

the Lehman estates, and there is no legal or logical reason why it should produce a windfall for

Lehman by reducing its contractual obligations to JPMorgan.  Indeed, it is elementary that the

possibility that consideration a creditor obtains in a chapter 11 case — *even if solely from the*

*debtor* — might later turn out to be greater than the value of the creditor's claims does not entitle

the estate to an adjustment.  *In re PWS Holding Corp.*, 228 F.3d 224, 244 (3d Cir. 2000)

(subordinated noteholders not entitled to warrants simply because the value of the stock

distributed under a chapter 11 plan to senior noteholders could exceed the full amount of the senior notes).

JPMorgan entered into a settlement with Barclays at a time when each of them accepted the risk that it might be underpaid or overpaying once the amount of JPMorgan's damages caused by Barclays' conduct is finally known.  There is no reason for LBHI — which neither accepted that risk nor contributed anything to the settlement — to receive any benefits of that settlement.[2]

### 2.    JPMorgan's claims against LBHI are distinct and independent from the settled claims against Barclays.

The Objectors' arguments for an offset based on Barclays' settlement consideration also fail because JPMorgan's claims against Lehman and Barclays are distinct and independent, and the damages recoverable from Lehman and Barclays are different.

JPMorgan has a contractual claim against LBI (and a Deficiency Claim against LBHI) for LBI's failure to pay a debt due under the Clearance Agreement.  As explained in JPMorgan's opening brief, Barclays is a third party who, having effectively promised to JPMorgan that it would purchase a claim, failed to honor that promise.  *See* JPMorgan Br. 13-16.  Just as Barclays' satisfaction of its promise to acquire the claim would have had no effect on the

---

[2]    Separately, the Objectors identify an illogical remedy for JPMorgan's supposed "double recovery."  Even if this Court were to determine that JPMorgan received a recovery in excess of its loss that must be returned to LBHI, the appropriate remedy would be to reduce the recovery to eliminate an excess, not to reduce the claim.  Reducing JPMorgan's claim to assure less than full payment — rather than limiting its recovery to full payment — would be punitive and unjustifiable under any theory.  *See* JPMorgan Br. 16 n.3; *Citicorp Venture Capital* v. *Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 990-91 (3d Cir. 1998) (equitable subordination case upholding reversal of bankruptcy court reduction of claim to avoid profit on claim purchase where the effect would be to limit the recovery to less than the amount paid; proper remedy was to equitably subordinate the claim to the extent necessary to limit the recovery to the amount paid).

value of the underlying claim, so too the damages resulting from Barclays' failure to honor that

promise also had no bearing on the underlying claim.  *See* JPMorgan Br. 13-18.  Moreover, the

damages recoverable from Barclays were (a) in some respects *broader* than the amounts

recoverable from Lehman, insofar as JPMorgan might have been able to recover from Barclays

for the fees, expenses, and other resources expended to recover on the clearance-related claims

and defend against Lehman's efforts to challenge JPMorgan's claims, liens, and collection

efforts, but those amounts were not necessarily recoverable in full from the Lehman debtors, and

(b) in some respects *narrower* than the amounts recoverable from Lehman, insofar as JPMorgan

might have been able to recover from Barclays any shortfall in JPMorgan's ultimate recovery

against Lehman for the clearance-related claims, but Barclays did not share Lehman's liability

for the full amount of the clearance-related claims.

> The Objectors seek to distinguish the authority cited by JPMorgan on the basis

that "[t]his is simply not a claim-purchase situation," and if it were, "JPMorgan would be the

seller" of the claim, while the case law concerns only "whether the purchaser may recover," and

only involves completed purchases.  Opposition at 17.  While it is true that this situation

involved a defaulting purchaser, rather than a completed purchase, that is a distinction without a

difference.  The Objectors have not explained why Lehman should be entitled to a windfall

reduction in their contractual obligations simply because a third party (Barclays) defaulted,

rather than honored, its promise to JPMorgan to replace the debt.  Just as there is no justification

to reduce the value of a debt that has been sold on the basis of the price paid for that debt, *e.g.*,

*Stockholders' Prot. Comm. for Moulded Products, Inc.* v. *Barry (In re Moulded Prods., Inc.)*,

474 F.2d 220, 224 (8th Cir. 1973), there is no justification here to reduce Lehman's contractual

obligations on account of consideration given by Barclays for failing to pay the price.

Seeking to shift the focus to JPMorgan's recovery rather than concede the absence of any prejudice to Lehman, the Objectors' main response is that JPMorgan may not "recover twice for the same alleged injury." Opposition at 10. In support, they repeat the inapposite string-cite of authorities, upon which they relied in their Objection, establishing only that a creditor is entitled to a single satisfaction of its claim from a debtor. Opposition at 10-11. As explained in JPMorgan's opening brief, however, the court in each cited case considered an attempt to recover multiple times on *the same claim* from a single debtor (or its guarantor).[3] In this case, by contrast, JPMorgan is seeking to recover only once on a single claim against LBI under the Clearance Agreement (as guarantied and secured by LBHI). *See* JPMorgan Br. 16-18.

The Objectors nonetheless state that there is a rule against double recovery that precludes a creditor from seeking "recovery on the same loss, even if the underlying causes of action are different." Opposition at 11-12. But in support of that rule, the Objectors invoke cases that are not remotely applicable. Three of the cases involve *joint tortfeasors* who together "caused a single indivisible harm." *Barone* v. *Marone*, 2007 WL 4458118, at *3 (S.D.N.Y. Dec.

---

[3]    *In re Pilgrim's Pride Corp.*, 453 B.R. 691 (Bankr. N.D. Tex. 2011) (party's settlement with debtor precluded it from bringing claim for additional damages against debtor on same dispute); *In re Circuit City Stores, Inc.*, 426 B.R. 560, 578-79 (Bankr. E.D. Va. 2010) (temporarily disallowing creditor's administrative expense claim where creditors might effectively receive double payment from the estate for the delivery of their goods); *Jason* v. *Carpet Cleaning, Inc. (In re Jason)*, 2007 WL 4553608, at *5 (Bankr. E.D. Va. Dec. 19, 2007) (postpetition partial payment by debtor's bankruptcy trustee of debtor's obligation reduced the remaining amount of that obligation); *Moore* v. *Driggers (In re Morgan)*, 2003 WL 1728667 (Bankr. S.D. Ga. Mar. 14, 2003) (claims by co-guarantors on a single debt); *PNC Bank, Nat'l Ass'n* v. *Park Forest Dev. Corp. (In re Park Forest Dev. Corp.)*, 197 B.R. 388, 397 (Bankr. N.D. Ga. 1996) (payment of a claim by debtor reduces guarantor's obligation on same claim); *United States* v. *Oakland City Apartments, Inc. (In re Oakland City Apartments)*, 1 B.R. 123, 124-25 (Bankr. N.D. Ga. 1979) (ordering hearing to determine value creditor received from purchase of foreclosed property to prevent excess recovery by creditor from estate property including insurance proceeds).

14, 2007).[4]  Here, JPMorgan's proof of claim against Lehman arises from LBI's contractual

obligation to repay its debt under the Clearance Agreement, and LBHI's guarantee of and

security for those debts.  JPMorgan's claim against Barclays arises from Barclays' failure,

despite representations made to JPMorgan, to replace the financing provided by JPMorgan to

LBI.

The Objectors then cite three cases that stand for the proposition that a plaintiff is

not entitled to recover twice from a single defendant when "the same conduct" results in the

"violation of two distinct rights."  *Sparaco* v. *Lawler, Matusky, Skelly Eng'rs LLP*, 313 F. Supp.

2d 247, 251 (S.D.N.Y. 2004).[5]  That principle again has no application here.  JPMorgan's claim

against Barclays was that, contrary to representations made to JPMorgan, it failed to take out the

balance of JPMorgan's clearance-related financing.  JPMorgan's claim against LBI (and LBHI)

arose from Lehman's contractual default on JPMorgan's extension of credit.  Different conduct

gave rise to different claims against different parties for different damages.

---

[4]    *See Singer* v. *Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) (applying to
federal securities fraud context the common-law rule that tort plaintiff can recover only once for
single injury caused by joint tortfeasors); *Cullen* v. *Riley (In re Masters Mates & Pilots Pension
Plan & IRAP Litig.)*, 957 F.2d 1020 (2d Cir. 1992) (applying doctrine to ERISA claim against
joint tortfeasors).

[5]    *People of the State of Cal.* v. *Chevron Corp.*, 872 F.2d 1410, 1414 (9th Cir. 1989)
("[T]he plaintiff's antitrust claim and the breach of good faith claim are predicated on *the same
conduct* of the defendants, the anti-competitive price posting.  They also both result in *the same
harm*, underpayment to the City for its oil.") (emphasis added); *Durk* v. *Daum Trucking, Inc.*,
2008 WL 4671721, at *3 (N.D. Ill. Oct. 22, 2008) (where "*the elements of proof and the
recoverable damages are the same*" for two different claims, there should only be one recovery)
(emphasis added).

## POINT II

## THE PORTION OF THE OBJECTION RELATED TO POSTPETITION INTEREST SHOULD BE STRICKEN

Interpreting Section 506(b) of the Bankruptcy Code, the Supreme Court has instructed that "[r]ecovery of postpetition interest is unqualified" if the value of the collateral exceeds the claim. *United States* v. *Ron Pair Enters., Inc*, 489 U.S. 235, 241 (1989). The Courts of Appeals have consequently declined the invitation "to dissolve" the statutory right to postpetition interest on the basis of "flaccid invocations of 'equity' in bankruptcy proceedings." *In re Lapiana*, 909 F.2d 221, 223-24 (7th Cir. 1990). *See also Lincoln Sav. Bank, FSB* v. *Suffolk Cnty. Treasurer (In re Parr Meadows Racing Ass'n, Inc.)*, 880 F.2d 1540, 1549 (2d Cir. 1989) ("Recovery of postpetition interest is unqualified."). Given the plain text of Section 506(b), this Court should strike the Objection inasmuch as the Objectors rely on extrastatutory "equitable considerations" to disallow JPMorgan's claim for postpetition interest. *See* JPMorgan Br. 18-22.

In responding to JPMorgan's motion, the Objectors state that, notwithstanding the Supreme Court's clear mandate, the grant of postpetition interest is not absolute. Opposition at 22. The Objectors point to three cases, but not one of them disallowed a claim for postpetition interest as such. In *In re Nixon*, the Third Circuit upheld the "equitable tolling" of an award of interest where doing so was consistent with "the parameters of the Code." 404 F. App'x 575, 579 (3d Cir. 2010) (running of interest discontinued as remedy for "abuse of process" under Code Section 105 due to creditor misconduct by, *e.g.*, refusing to accept principal payment). The second case, *In re Rozel Industries, Inc.*, concerned the contours of a setoff right, which in turn determined the value of the collateral securing the claim and, therefore, whether the creditor had a statutory right to postpetition interest; indeed, the court included postpetition interest within the creditor's claim that could be set off. 120 B.R. 944, 948, 955 (Bankr. N.D. Ill. 1990) ("[T]he

language of § 506(b) clearly directs that post-petition interest be paid on all oversecured claims.").  In the third case, the district court reaffirmed that, in the absence of traditional defenses such as estoppel, "courts are not empowered to arbitrarily dissolve rights in the name of equity."  *Solomon* v. *Wein (In re Huhn)*, 145 B.R. 872, 878 (W.D. Mich. 1992).  Each case thus confirms, as *Ron Pair* instructs, that Section 506(b) must be enforced according to its unqualified terms.

Finding no case to support their broadside attack on *Ron Pair*, the Objectors next assert that the Court should disregard the plain text of Section 506(b) because theirs is "the rare case in which the literal application of [the] statute would produce a result demonstrably at odds with the intentions of the drafters."  Opposition at 23 (quoting *Ron Pair*, 489 U.S. at 242).  But *Ron Pair*, applying that principle, already explained that there was no reason to depart from the plain text in resolving whether postpetition interest should be allowed.  489 U.S. at 242-43.  The Objectors have invoked no statutory reason to disregard the plain congressional mandate in this case when the Supreme Court was unwilling to do so in *Ron Pair*.

In nevertheless seeking a different result here, the Objectors rely on the allegedly "critical distinction" that JPMorgan was "secured by <u>cash</u> in its possession."  Opposition at 23 (original emphasis).  Under Section 506(b), however, the statutory right to postpetition interest turns only on the value of the property, not its quality.  If "the *value* of [the property securing the claim] . . . is greater than the amount of such claim," the statute instructs, "there shall be allowed to the holder of such claim, interest on such claim."  11 U.S.C. § 506(b) (emphasis added).  The right does not turn on whether the creditor is entitled to use the collateral or derive some value from it, as where a creditor enjoys a right of rehypothecation.  There is no such qualification.  Indeed, there is no qualification at all.

Congress could easily have written Section 506(b) to treat the accrual of postpetition interest on cash collateral differently from its accrual as to other collateral. Congress is well aware of the difference between cash and other collateral, and has distinguished them when it has seen fit. *See, e.g.*, 11 U.S.C. §§ 363(a), 363(c)(2) (defining cash collateral and affording it special treatment for adequate protection purposes). It did not see fit to do so in Section 506(b) or anywhere else as to the accrual of postpetition interest on cash collateral. That should be the end of the matter.

Urging nonetheless that postpetition interest should be disallowed because the collateral in question here was cash on which the creditor could earn a return, the Objectors cite not a scrap of authority to support their re-write of the statute to create a new rule — a rule that would strip every bank of the ability to earn postpetition interest to the extent it is secured by a deposit account or other cash equivalent. Indeed, taken to its logical conclusion, the rule would mandate disallowance of postpetition interest to the extent a secured creditor has any setoff rights. This unprecedented and unfounded rule should be summarily rejected.

In addition, to the extent that the Objectors propose not a bright-line prohibition of postpetition interest on cash collateral but a free-floating hindsight inquiry into the rights and wrongs of any lending situation when the creditor is cash collateralized, their new rule is not only unsupported by law, but also would create uncertainty and mischief, as explained by the Seventh Circuit in *Lapiana*:

> If [Section 506(b)] were read merely to authorize the bankruptcy judge to award post-petition interest as a matter of grace, secured creditors would lack a clear idea of what their rights would be if the debtor went broke. . . . [A]nother [objection to creating a new equitable defense to post-petition interest] is that it would complicate the law needlessly by requiring a searching and often inconclusive inquiry into the relative fault of debtor and creditor.

909 F.2d at 224. Such problems are legion in this case. For example, here the Objectors would have the Court consider such questions as: (a) Why did the Objectors not request JPMorgan to pay off its debt, thereby stopping the running interest? (b) Did the lack of an earlier paydown benefit LBHI by causing more of the LBI securities collateral proceeds to be used to pay the clearance claims (and, thereby, reduce the JPMorgan Deficiency Claim)? (c) Was the reduction of the Deficiency Claim in this way necessary and intended by the parties to further their objectives, including the entry into the Court-approved Collateral Disposition Agreement? Equally, if the Objectors were to succeed here in importing equity as a factor under Section 506(b), in other cases objectors will urge that it is inequitable for secured creditors to obtain postpetition interest when unsecured creditors are receiving a low recovery in the case, or are making concessions to facilitate a reorganization. The foregoing would constitute multiple "searching and often inconclusive" inquiries like the one condemned by Judge Posner in *Lapiana*. *Id.* This Court should decline the invitation to explore this uncharted territory and instead adhere to the plain, unqualified language of Section 506(b).

Regardless, there is nothing remarkable or inequitable about this case. All the sound and fury of the Objectors over the supposed inequity here could have been silenced at the outset by the simple expedient of asking JPMorgan to pay itself from its cash collateral at an earlier point in time (and if met with refusal, seeking relief from this Court). The Objectors chose not to do that.

In addition, contrary to the Objectors' assertion that JPMorgan fully enjoyed the use of LBHI's collateral, the Objectors restrained JPMorgan's use of the LBHI cash collateral. The Objectors insisted that JPMorgan give them notice before applying the cash collateral to the Deficiency Claim. *See* Supp. Decl. Ex. A at 6 (requiring prior notice to the Objectors of any

15

liquidation of the LBHI cash collateral so that the Objectors could seek to block it).  Indeed, the Objectors have asserted in the Adversary Proceeding that JPMorgan violated the automatic stay when it applied some of the LBHI cash collateral to satisfy derivatives claims.  *See* Amended Complaint, Counts XXXIII-IV.  In light of these restrictions and inconsistencies, the Objectors cannot plausibly argue that JPMorgan enjoyed the full economic benefits of the LBHI cash collateral.[6]

Finally, the Objectors are continuing to seek recovery of the cash collateral in the Adversary Proceeding on the basis that the cash was swept into an account against which JPMorgan had no lien and, therefore, JPMorgan lost its security interest in the cash collateral.  *See* Amended Complaint, Counts XXXVIII-XL.  Of course, had JPMorgan paid itself from the cash, there would have been no need to have a continuing security interest.  Thus, the Objectors' assertion in the Opposition that JPMorgan was not entitled to postpetition interest because the sweep resulted in the payment of JPMorgan's claims is totally at odds with their position in the Adversary Proceeding.

## CONCLUSION

For the foregoing reasons, the Court should strike that portion of the Objection seeking to reduce JPMorgan's claims by the consideration received from Barclays in the

---

[6]    This is precisely what JPMorgan's witnesses have indicated.  The JPMorgan head of funding recognized, of course, that "there's value attached" to LBHI cash collateral, but he never indicated that JPMorgan was able to apply that collateral to the Deficiency Claim prior to the closing of the Collateral Disposition Agreement.  Whitmer Decl. Ex. 11.

December Settlement Agreement, and reject the Objectors' invocation of "equitable considerations" to deny JPMorgan's claim for postpetition interest.

Dated: April 11, 2012
      New York, New York

WACHTELL, LIPTON, ROSEN & KATZ

_____ /s/ Harold S. Novikoff _____
Harold S. Novikoff
Douglas K. Mayer
Ian Boczko
Emil A. Kleinhaus
Vincent G. Levy

51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for JPMorgan Chase Bank, N.A.*