**RESPONSE DEADLINE:  4/12/12 at 4:00 p.m.**

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Raniero D'Aversa, Jr.
Nikiforos Mathews
Scott M. Pearsall
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151

Jonathan P. Guy
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 339-8516
Facsimile:   (202) 339-8500

*Attorneys for Claimant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | : |
| | : Case No. 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

**RESPONSE OF COÖPERATIEVE CENTRALE RAIFFEISEN BOERENLEENBANK B.A. TO DEBTORS' TWO HUNDRED SEVENTIETH OMNIBUS OBJECTION TO CLAIMS; CLAIM NUMBERS 65579 AND 65582**

Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("**Rabobank**"), by and through its undersigned counsel, hereby responds to the Debtors' Two Hundred Seventieth Omnibus Objection to Claims (the "**Objection**"), which Objection seeks to reduce Rabobank's claims by approximately $25 million.  Because the Objection provides no evidentiary support for such a reduction, it must be overruled and Rabobank's claims allowed in full.

OHSUSA:750134435.7

**BACKGROUND**

1. On October 3, 2008 (the "**Petition Date**"), Lehman Brothers Special Financing Inc. ("**LBSF**" or the "**Debtor**") filed its Chapter 11 petition.

2. LBSF's petition was preceded by the Chapter 11 petition of Lehman Brothers Holdings Inc. ("**LBHI**" or, collectively with LBSF, the "**Debtors**") on September 15, 2008.

3. Rabobank and LBSF are parties to a 1992 ISDA Master Agreement (including the Schedule thereto, as supplemented by the ISDA Credit Support Annex and each Confirmation thereunder), dated March 4, 1993, and any and all amendments, ancillary agreements, and documents relating thereto (collectively, the "**Master Agreement**").[1]

4. LBHI unconditionally guaranteed the obligations of LBSF under the Master Agreement (the "**Guarantee**").

5. The LBHI Chapter 11 filing constituted an Event of Default under the Master Agreement. This filing further resulted in the automatic early termination of all transactions under the Master Agreement. Immediately thereafter, Rabobank undertook the process prescribed under the Master Agreement to determine damages in connection with the termination of the portfolio with LBSF – a portfolio that included over 700 transactions.

6. On October 6, 2008, Rabobank sent a calculation statement (as amended, the "**Calculation Statement**") to LBSF pursuant to Section 6(d) of the Master Agreement.

7. Among other things, Rabobank stated in the Calculation Statement that: (i) all transactions under the Agreement had been automatically terminated on September 15, 2008 as a result of LBHI's bankruptcy filing; (ii) for certain transactions, market quotation could not be

---

[1] Capitalized terms used herein but not otherwise defined shall have the same meaning ascribed to them in the Master Agreement.

determined, so the "Loss" payment measure was used to calculate a settlement amount; (iii) the net settlement amount under the Agreement was approximately $19.5 million, payable by Rabobank to LBSF; (iv) the net Unpaid Amounts on all terminated transactions was approximately $69.4 million, payable by LBSF to Rabobank; and (v) the total net amount payable as a result of the terminations was approximately $49.9 million, payable by LBSF to Rabobank and guaranteed by LBHI.

8. On April 3, 2009, Rabobank sent the Debtors an amended and restated Calculation Statement, noting that two of the transactions included in the earlier statement were included in error, resulting in a total net settlement amount of some $19.36 million, not $19.5 million. Consequently, there was a total net amount payable to Rabobank of $50,130,695.

9. In short, Rabobank complied with the terms of the Master Agreement in calculating and notifying LBSF of Rabobank's damages.

10. Subsequently, Rabobank executed and filed, in accordance with the Federal Rules of Bankruptcy Procedure and the applicable orders of this Court, the following proofs of claim: (i) claim number 65579 relating to LBSF's obligations under the Master Agreement and (ii) claim number 65582 relating to LBHI's obligations under the Guarantee (together, the "**Claims**"). The Claims were signed, under oath, by P.G. Maaten, Vice President.

11. Each of the Claims was for an amount no less than $50,276,248 (the "**Claims Amount**"), which was the sum of the Master Agreement total net amount payable plus fees and expenses of $145,553, payable by LBSF under Section 11 of the Master Agreement, as of September 17, 2009.

12. On or before October 22, 2009, Rabobank uploaded to the Debtors' website the principal documents to substantiate the Claims and the Claims Amount and the required derivative questionnaire that further supported the Claims and the Claims Amount.

13. Rabobank will provide to the Court, if needed, copies of the Master Agreement and the Calculation Statement. Rabobank will also provide, if needed, the following filed documents, which are incorporated herein by reference: the Claims; the documents substantiating the Claims; and the derivative questionnaire.

14. On March 13, 2012, more than two years after Rabobank filed the Claims, the Debtors filed their Objection to the Claims.

15. By the Objection, the Debtors seek to reduce the Claims to $25,566,894.74 (the "**Reduced Amount**"). The Objection contains no explanation as to how the Debtors calculated the Reduced Amount and provides no evidentiary support for this calculation. The Objection does not mention or discuss Rabobank's calculations, and it does not point to any errors in Rabobank's calculations. Instead, the Objection merely states that the Plan Administrator has concluded that the Claims Amount is too high. Objection, ¶ 16.

16. The Court's Order dated April 19, 2010 regarding the establishment of Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors [Docket No. 8474], allows the Debtors to object to claims and subsequently compel mediation. If the Debtors do compel mediation, a claimant cannot seek discovery and pursue its claim through litigation. A review of the Debtors' docket and claims register shows that the Debtor frequently compels mediation with claimants who hold claims similar to Rabobank's. Rabobank accordingly expects the Debtors to compel mediation with respect to the Claims. In the event the Debtors do not compel mediation, Rabobank reserves its rights to: seek extension of the hearing

date; conduct discovery to confirm, as currently appears to be the case from the Objection, that the Debtors have no evidence to rebut the *prima facie* validity of the Claims; and present any evidence and call any witnesses at any hearing regarding the Claims.

## ARGUMENT

17. As the non-defaulting party under the Master Agreement, Rabobank was required to calculate the amounts due in a manner consistent with the provisions agreed to by the parties in the Master Agreement. Rabobank fulfilled this requirement, as demonstrated by the extensive documentation Rabobank has provided the Debtors in the Calculation Statement, the proofs of claim, and other supporting documentation. The Objection fails to present any evidence to refute the extensive records and evidence provided by Rabobank in support of its Claims. Thus, the Debtors have failed to satisfy their burden of proof to rebut the *prima facie* validity of the Claims and the Claims Amount. Accordingly, the Objection should be overruled and Claims allowed in the full Claims Amount.

### I.    LEGAL STANDARD

18. Fed. R. Bankr. P. 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Thus, the objecting debtor bears the initial burden of persuasion. If, however, the debtor "produces evidence equal in force to the prima facie case… which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency," then the burden shifts back to the claimant. *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *see also In re Jensen*, No. 09-14830 (MG), 2010 Bankr. LEXIS 229, *7-8 (Bankr. S.D.N.Y. Feb. 3, 2010) ("The party objecting to the claim has the burden of introducing evidence sufficient to rebut the presumption of validity. Debtor must marshal evidence sufficient to demonstrate a true dispute with probative force equal to the contents of the Claim."). At that

point, the claimant must then prove by a preponderance of the evidence that under applicable law its claim should be allowed. *Oneida*, 400 B.R. at 389.

19. It likely goes without saying, but, as a result of this applicable standard, a debtor cannot overcome the *prima facie* validity of a properly filed proof of claim simply by alleging it is too large in the debtor's opinion and should therefore be reduced. The mere filing of an objection, without the requisite evidence, is not sufficient to overcome the presumption of validity. *In re Smith*, 419 B.R. 622, 627-28 (Bankr. E.D. Va. 2008).

## II. RABOBANK'S CLAIMS ARE SUPPORTED BY THE MASTER AGREEMENT AND AMPLE EVIDENCE

20. Here, the Master Agreement required Rabobank, as the non-defaulting party, to calculate its damages under the Master Agreement, prepare the Calculation Statement, and submit it to LBSF. Master Agreement §§ 6(d) and 6(e). As the defaulting party, LBSF was not and is not entitled to calculate damages or any other amounts due under the Master Agreement. Following the default occasioned by LBHI's bankruptcy and the automatic termination of all transactions under the Master Agreement, Rabobank calculated its damages, applying the payment measures and procedures prescribed by the Master Agreement. Rabobank then provided the Debtors with the Calculation Statement, which included the relevant calculations. Thus, every action Rabobank has taken has been in accordance with the Master Agreement and has been properly documented. Further, Rabobank then properly and timely submitted its Claims, along with supporting documentation, and provided the Debtors with a derivatives questionnaire further explaining Rabobank's analysis. Debtors do not, and cannot, suggest otherwise.

21. Accordingly, in the absence of any evidence to the contrary, Rabobank's calculated Claims Amount must be accepted by this Court.

### III.   THE DEBTORS HAVE FAILED TO PRODUCE EVIDENCE TO REBUT RABOBANK'S CLAIMS

22.   Here, the Debtors have produced no evidence at all to support the Reduced Amount, let alone evidence equal in force to Rabobank's *prima facie* case. Instead, the Debtors rely on the self-serving statement that the Claims Amount is "greater than the fair, accurate, and reasonable value determined by the Plan Administrator after a review of the claimant's supporting documentation and [the Debtors'] books and records." Objection, ¶ 12. But the Debtors present nothing to back up this statement. The Objection provides no evidence that this review was completed, no substantiation of the review process, no documentation of the calculations used, and absolutely no concrete justification for reducing Rabobank's Claims by $25 million. By failing to cite to or produce a single fact in dispute, the Debtors have not provided the "sufficient evidence" that is required "to rebut the claimant's *prima facie* case." *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660, *15 (Bankr. S.D.N.Y. Feb. 20, 2007).[2]

23.   At bottom, the Objection was the Debtors' opportunity to convince this Court to reduce the Claims by $25 million. But rather than even trying to jump over the hurdles provided by the law to rebut a valid claim, the Debtors simply sidled up to the hurdles, found them too high, and walked away. Because the Debtors have failed to come forward with any evidence to negate the *prima facie* validity of Rabobank's Claims, those Claims should be allowed in full.

---

[2]   The Debtors do reference the Declaration of Gary H. Mandelblatt (the "**Mandelblatt Declaration**"). Objection, ¶ 12. But that Declaration does nothing more than provide a general outline of the valuation methodology LBSF proposed to use to assess a wide array of claims. The Mandelblatt Declaration does not specifically address the valuation of Rabobank's Claims, and it does nothing to explain how the Debtors calculated the Reduced Amount. As such, the Mandelblatt Declaration has no evidentiary value to the Court in determining whether Rabobank's Claims should be allowed in full.

## CONCLUSION

24. Accordingly, and for the reasons set forth above, Rabobank requests that the Court (i) overrule the Objection, (ii) allow the Claims in full, and (iii) award such other relief as the Court deems just and proper.

Dated: April 12, 2012
New York, New York

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Raniero D'Aversa, Jr.*
Raniero D'Aversa, Jr.
Nikiforos Mathews
Scott M. Pearsall
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

Jonathan P. Guy
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 339-8516
Facsimile: (202) 339-8500

*Attorneys for Claimant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*