UNITED STATES BANKRUPTCY COURT

*original*

SOUTHERN DISTRICT OF NEW YORK

In Re: Lehman Brothers Holdings, Inc, et al    Case 08-13555 (JMP) Ch 11

Debtor

---

AFFIDAVIT OF WILLIAM KUNTZ, III IN SUPPORT OF MOTION

STATE OF NEW YORK)

COUNTY OF ESSEX    )

Having been duly Cautioned and Sworn, Affiant makes this his freely given

Affidavit to wit:

1) As the Court may recall,  Affiant filed proofs of claims and amendments
   thereto based  upon ownership of  Grand Union Capital Corp Notes
   and the absconding by Lehman of a certain Cash Escrow.

   Attached  hereto and made Exhibits 1 & 2  are copies of the
   Respective Certificates in the amount of  $1,000,000 and
   $1,300,000 and as Exhibit 3, the Order of Judge Winfield
   With respect to the Certificate which was exchanged in Error
   and ordered replaced. Further, as set forth is the delivery
   slip from Affiants Stockbroker of Exhibit 2. Exhibit 4

2)  As the Court may recall, the Debtors  objected to the
   Proof of Claims and the Court expunged the Claims.
   Affiant has knocked on almost every door
   of every party to this outstanding unpaid obligation
   including, but not limited to the SEC. Exhibit 5,5A, First Trust, NA
   Exhibit 6, 6A, State of Utah, Exhibit 7.



3) ████████, while the long ago sale of Grand Union did not
Generate as much publicity as this Case, there was a considerable
Amount of News Coverage  Exhibit 8. As the Court may further note
Affiant was in contact with this Debtor Lehman in May of 2007 as well
as the Respective Grand Union Obligors. Exhibit 9.  Over the last
few months, Affiant has also attempted to obtain the Disposition
taken by Grand Union in Lake Placid, NY long ago. Exhibit 10.

4) As the Court may further recall, even the first effort of Affiant
was not only opposed by Debtor's Counsel, but was joined by
the Creditors Committee Exhibit 11. As the Court may further
recall, in language fairly critical of Affiant, that it would not
permit the calling of the Former CEO's of Salomon Brothers. Exhibit 12

5) Recently, it came to Affiants Attention as attached Exhibit 13, that
One John Duffy was given 15 days in jail for stealing from
Grand Union's Store in Warrensburg. This is in sharp contrast
to this Court's unwillingness to examine the selling of hundreds of millions
of Securities under the Martin Act and hence giving rise to Affiant's
Superior Claim to the Wayward Escrow and the validity of his claims.


Further Affiant Sayeth Naught.


William Kuntz, III
India St PO Box 1801
Nantucket Island, Mass 02554-1801


April 10. 2012

518.834.7579 x20

( seal )

Swear to before

ne

JOHN F. DUFFY
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01DU5081250
QUALIFIED IN CLINTON COUNTY
MY COMMISSION EXPIRES  6-30-15

X



072-771214

72.771217

REGISTERED

This Security has original issue discount for Federal income tax purposes, determined pursuant to Sections 1272 through 1275 of the Internal Revenue Code of 1986, as amended, and the proposed Treasury Regulations promulgated thereunder, in the amount of $1,411.38 per $1,000 face amount of this Security. The Security was issued on July 22, 1992, and has a yield to maturity (inclusive of cash interest) of 15.74%, calculated using the approximate method. The amount of original issue discount allocable to the short initial accrual period is $25.61 per $1,000 face amount, determined on the basis of the approximate method.

REGISTERED

No. R-000804

$ **1000000**

CUSIP 386527 AC9

# GRAND UNION CAPITAL CORPORATION

### 15.00% Series A Senior Zero Coupon Notes due 2004

GRAND UNION CAPITAL CORPORATION, a corporation organized and existing under the laws of the State of Delaware, promises to pay to

WILLIAM KUNTZ
DRAWER B
FEDERAL BLDG
DAYTON OH 45402-1430

```
**1000000*******
***1000000******
****1000000*****
*****1000000****
******1000000***
```

Dollars

or registered assigns, the principal sum of

**ONE MILLION**

on July 15, 2004, as set forth herein.

Interest Payment Dates: January 15 and July 15
Record Dates: December 30 and June 30.

IN WITNESS WHEREOF, GRAND UNION CAPITAL CORPORATION has caused this instrument to be executed in its corporate name by the manual or facsimile signature of its President or a Vice President and attested by its Secretary or an Assistant Secretary.

Dated:   05/30/95

This is one of the 15.00% Series A Senior Zero Coupon Notes due 2004
referred to within the within-mentioned Indenture.
FIRST TRUST NATIONAL ASSOCIATION, AS TRUSTEE

### CERTIFICATE OF AUTHENTICATION:

GRAND UNION CAPITAL CORPORATION

By:
_____
Authorized Signatory

By:
_____
FIRST TRUST NATIONAL ASSOCIATION, AS TRUSTEE
BANKERS TRUST COMPANY, AS AUTHENTICATING AGENT

By:
_____
Authorized Signatory



Attest: _____  Secretary

By: _____  President

VOID

REGISTERED

R 7045

This Security has original issue discount for Federal income tax purposes, determined pursuant to Sections 1272 through 1275 of the Internal Revenue Code of 1986, as amended, and the proposed Treasury Regulations promulgated thereunder, in the amount of $811.14 per $1,000 face amount of this Security. The Security was issued on July 22, 1992, and has a yield to maturity (inclusive of cash interest) of 17.43%, calculated using the approximate method. The amount of original issue discount allocable to the short initial accrual period is $7.44 per $1,000 face amount, determined on the basis of the approximate method.

REGISTERED

**No. R- 07045**

**$** ***1300000*

CUSIP 386527 AD7

# GRAND UNION CAPITAL CORPORATION
### 16.50% Series A Senior Subordinated Zero Coupon Notes due 2007

GRAND UNION CAPITAL CORPORATION, a corporation organized and existing under the laws of the State of Delaware, promises to pay to

WILLIAM KUNTZ

*1300000*******
**1300000*******
***1300000*****
****1300000****
*****1300000***

or registered assigns, the principal sum of      *ONE MILLION THREE HUNDRED THOUSAND*

on January 15, 2007, as set forth herein.

IN WITNESS WHEREOF, GRAND UNION CAPITAL CORPORATION has caused this instrument to be executed in its corporate name by the manual or facsimile signature of its President or a Vice President and attested by its Secretary or an Assistant Secretary.

Dated:      JUN 12, 1995

CERTIFICATE OF AUTHENTICATION:
This is one of the 16.50% Series A Senior Subordinated Zero Coupon Notes due 2007 issued under the within-mentioned Indenture.
MARINE MIDLAND BANK, N.A., AS TRUSTEE

By: _____
Authorized Signatory

MARINE MIDLAND BANK, N.A., AS TRUSTEE
BANKERS TRUST COMPANY, AS AUTHENTICATING AGENT

By: _____
Authorized Signatory

GRAND UNION CAPITAL CORPORATION

By: _____
President

Attest: _____
Secretary



PCL XL error

Subsystem:  KERNEL

Error:      UnsupportedProtocol

Operator:   0x0

Position:   0

**RAVIN, GREENBERG & MARKS, P.A.**
Co-Attorneys for The Grand Union Company
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500
Morris S. Bauer (MB 6677)

**FILED**
**JAMES J. WALDRON**

**FEB 23 2000**

U.S. BANKRUPTCY COURT
NEWARK NJ
BY _____, DEPUTY

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| THE GRAND UNION COMPANY, | : | Case No. 98-27912 (NLW) |
| Debtor. | : | |
| | : | Hearing Date: February 7, 2000 |

### ORDER (A) AUTHORIZING GRAND UNION TO ISSUE A STIPULATION AS A SUBSTITUTE NOTE TO KUNTZ AND (B) DENYING KUNTZ CONTEMPT MOTION

This matter having been opened to the Court by William Kuntz, III, *pro se* on the application for the entry of an order vacating the January 19, 1999 claims expungement order, which order *inter alia* expunged an $892,000 proof of claim filed by William Kuntz, III in the above captioned matter; and the Court having entered an order on August 20, 1999 denying Kuntz's motion for reconsideration and motion to vacate the January 19, 1999 claim expungement order and other relief (the "August 20 Order"); and it appearing that pursuant to the August 20 Order that Grand Union was directed to issue to Mr. Kuntz a Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004 in the face amount of $892,000 (the "New Note") or provide Kuntz such reasonable substitute note or the like that would place Kuntz in the same position had

#3

299

W

the subject note not been exchanged for warrants of Grand Union; and it appearing that by letter dated January 5, 2000 on notice to Kuntz, that Grand Union requested a conference call with the Court seeking the Court's determination that a certain stipulation in the form annexed hereto as Exhibit "A" (the "Stipulation") represents a reasonable substitute; and it further appearing that on or about January 12, 2000, Kuntz filed a motion seeking to hold Grand Union in contempt for not having reissued the note (the "Contempt Motion"); and it further appearing that the Court having conducted a telephonic hearing on January 26, 2000 and an in-court hearing on February 7, 2000 on adequate notice to all parties in interest; and the Court having read and considered the pleadings heretofore filed; and the Court having further considered the arguments of Mr. Kuntz and Ravin, Greenberg & Marks, P.A., counsel to Grand Union; and for good cause shown

IT IS on this 23rd day of Feb. , 2000 (61.

ORDERED, that the Contempt Motion be and hereby is denied; and it is further

ORDERED, that the Stipulation in the form annexed hereto as Exhibit "A" be and hereby is deemed an adequate and appropriate reasonable substitute note for purposes of satisfying Grand Union's obligation to provide Mr. Kuntz such reasonable substitute note or the like that would place Mr. Kuntz in the same position had the note identified as "Grand Union Capital Corporation 15.00% Series A Zero Coupon Notes due

-2-

PCL XL error

    Subsystem:   KERNEL

    Error:       UnsupportedProtocol

    Operator:    0x0

    Position:    0

2004 in the face amount of $892,000", Certificate No. R-000806 not been exchanged for

Warrants of Grand Union; and it is further

ORDERED, that Grand Union be and hereby is directed to execute the

Stipulation and forward an original to Mr. Kuntz within ten (10) days of the entry of this

Order.

_____

HONORABLE NOVALYN L. WINFIELD
UNITED STATES BANKRUPTCY JUDGE

\\Server\myfiles\Sondra\GRAND\GRA130.ord.stipKuntz
020800

PCL XL error

Subsystem:  KERNEL

Error:      UnsupportedProtocol

Operator:   0x0

Position:   0

PCL XL error

Subsystem:    KERNEL
Error:    UnsupportedProtocol
Operator:    0x0
Position:    0

**RAVIN, GREENBERG & MARKS, P.A.**
Co-Attorneys for The Grand Union Company
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500
Morris S. Bauer (MB 6677)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| THE GRAND UNION COMPANY, | : | Case No. 98-27912 (NLW) |
| Debtor. | : |  |
|  | : |  |

### STIPULATION BY THE GRAND UNION COMPANY RE:
### WILLIAM KUNTZ, III GRAND UNION CAPITAL
### CORPORATION NOTE

WHEREAS, prior to September 17, 1997, William Kuntz, III held a certain

"Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004

in the face amount of $892,000", Certificate No. R-000806 (the "Old Note"); and

WHEREAS, the Old Note was exchanged for warrants ("Warrants") of The

Grand Union Company ("Grand Union") on or about September 17, 1997; and

WHEREAS, on August 20, 1999, the United States Bankruptcy Court for the

District of New Jersey in the chapter 11 proceeding of the Grand Union Company, Case

No. 98-27912 entered an Order denying William Kuntz, III's motion for reconsideration

and motion to vacate the January 19, 1999 claim Expungement Order and Other Relief,

which Order, *inter alia*, provided that Grand Union was directed to reissue to Mr. Kuntz

PCL XL error

Subsystem:  KERNEL

Error:  UnsupportedProtocol

Operator:  0x0

Position:  0

a Grand Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004 in the face amount of $892,000 (the "New Note") or provide Mr. Kuntz such reasonable substitute note or the like that would place Mr. Kuntz in the same position had the subject note not been exchanged for warrants of Grand Union; and

WHEREAS, Grand Union has been informed by IBJ Schroder Bank & Trust Company n/k/a IBJ Whitehall Bank & Trust Company, the authenticating agent, and U.S. Bancorp f/k/a First Trust National Association that they no longer possess an inventory of note certificates; and

WHEREAS, as a result of the dissolution of Grand Union Capital Corporation ("GUCC"), GUCC is unable to issue a substitute note certificate.

NOW, THEREFORE, it is hereby stipulated as follows:

1.    Grand Union acknowledges that Mr. Kuntz held the Old Note immediately prior to September 17, 1998.

2.    Grand Union acknowledges that the Old Note was exchanged for Warrants to purchase common stock of The Grand Union Company on or after September 17, 1998.

3.    Grand Union acknowledges that pursuant to the Order dated August 20, 1999, that Mr. Kuntz be and hereby shall be again considered the holder of a Grand

-2-

```
PCL  L error
  *Subsystem:  KERNEL
  Error:       UnsupportedProtocol
  Operator:    0x0
  Position:    0
```

Union Capital Corporation 15.00% Series A Senior Zero Coupon Notes due 2004 in the face amount of $892,000, Certificate No. R-000806.

THE GRAND UNION COMPANY

By:_____
     GLENN J. SMITH, ESQ.,
     Corporate Counsel

DATED:

\\Server\myDisc\Sondra\GRAND\GRA129.stipulation

-3-

## Prudential Securities

| | | | 1,560 |
|---|---|---|---|
| Security No. | Serial I.D. | | Date |
| 65UB8 | 630280-7 | | 06/28/95 |

| Account Number | | FA | |
|---|---|---|---|
| 072-77121-1 | | 24 | |

Prudential Securities Incorporated
One New York Plaza
New York, NY 10292-2009

| Quantity | Security Description | | | Cusip No. |
|---|---|---|---|---|
| 1,300,000 | GRAND UNION CAPEXMRO | 0.00 | 01/15/2007 | 386527AD7R |

***ENCLOSED PLEASE FIND THE SECURITIES DESCRIBED ABOVE***

FOR ACCOUNT OF

WILLIAM KUNTZ
DRAWER B
FEDERAL BLDG
DAYTON                    OH 45402-1430

WILLIAM KUNTZ
DRAWER B
FEDERAL BLDG
DAYTON OH 45402 1430

#4



**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, D.C. 20549**

HO-938299

OFFICE OF
INVESTOR EDUCATION
AND ASSISTANCE

September 30, 2003

Mr. William Kuntz, III
P.O. Box 461
Lake Placid, NY  12946-0461

Dear Mr. Kuntz:

Thank you for your courtesy-copy August 7, 2003 letter (received August 27, 2003) regarding Lehman Brothers and the bankruptcy proceedings of Grand Union Company.

The SEC keeps a database of information about the complaints we receive.  This database allows us to track whether a troubling situation may be developing about a particular issue, company, broker, stock, or other securities product.  The information you have provided will be reflected in our database.

Beyond entering your information into our database, however, the SEC can do nothing further to assist you.  That is because the issue you've raised is not one that we deal with at the SEC.  The SEC administers and enforces the federal laws that govern the sale and trading of stocks, bonds, mutual funds, and other securities.  We have a Web site, www.sec.gov, which explains in detail what we do.

As you may know, the SEC has a limited role with regard to a public company filing for protection under the federal bankruptcy laws.  In general, we review the company's disclosure documents to determine whether it tells investors and creditors the important information they need to know.  We may also ensure that stockholders are represented by an official committee, if appropriate.

We will not do anything more with your letter unless you contact us again.  I hope you receive the answers you are seeking.

Once again, thank you for sending to us a copy of your letter.

Sincerely,

*Jim Daly*

Jim Daly
U.S. Securities & Exchange Commission
Office of Investor Education and Assistance
450 5th Street, NW
Washington, DC 20549-0213
(202) 942-7173, (202) 942-9634 (fax)
oiea@sec.gov



**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, D.C. 20549**

OFFICE OF
INVESTOR EDUCATION
AND ASSISTANCE

HO-1099753

October 20, 2005

William Kuntz, III
% Ansell
25 Alprilla Farm Road
Hopkinton, Mass 01748

Re: Grand Union Capital Corp.

Dear Mr. Kuntz:

This is in response to your September 8, 2005 letter concerning your dissatisfaction with the SEC in the handling of your on-going complaint relating to your Grand Union Capital Corp. 0% Notes.

This office regrets that you dissatisfied that the SEC could not resolve your complaint. As you know, the SEC is limited in its regulatory role regarding bankruptcy proceedings. Once again, we thank you for writing to us. If you have any questions, please contact me at 1-202-551-6323.

Sincerely,

S. Philip Neri
Investor Assistance Specialist

March 5,1998

First Trust,NA
180 East 5th Street
Corporate Trust Administration
St Paul,Minn 55101

Re: Grand Union Capital Corporation ( a Delaware Corporation )
     15% Series A Senior Zero Coupon Notes due 2004 /CUSIP 386527 AC9
     16.5% Series A Senior Subordinated Zero Coupon Notes due 2007
     CUSIP 386527 AD7

Gentlemen:

   This will confirm my phone call of yesteday with regards to the above captioned Securities.
   I am somewhat perplexed to say the least. I understood that you were the Corporate Trustee of these Securities. I was told on the phone that you in fact were no longer the Trustee and had resigned in favor of Marine Midland.

   I am having trouble getting a Certificate for some Notes in my brokerage Account at Prudential. I delivered it into my account and it was flipped [ at least on the Computer Screen/System] into the Grand Union Warrants even though I rejected the Exchange Offer.

   Would you be so kind as to advise me of your understanding at this moment in time of what is going on, if in fact you know.

                    I thank you in advance

                    William Kuntz
                       PO Box 461,Lake Placid,New York 12946-0461
                       518-962-4966

cc: Prudential Securities

June 8,2006

US Bank-Corp Trust-Sucessor Indenture Trustee
Grand Union Capital Corp 0% Notes
C/60 Livingston Ave,St Paul,Minn 55164-0111

Re: Weil,Gotshal & Manges

Sir/Madam:

    As your records should reflect, I obtained an Order
from the Bankruptcy Judge in <u>kuntz-vs-industial bank
of japan <ibjschroders/whitehall></u> to recover a Note in
the Amount of $892,000. Despite the clear chance that I
would obtain this Order, you destroyed the unissued
Note Supply which you held. Notwithstanding your
misconduct, I was able to obtain a viable stipulation to
effect the recovery of this Security and reflect my
ownership of same.

    I recently learned that the W,G&M[1] firm  who I

recall

Represented the Debtor in New Jersey also represents
Lehman Brothers. Since Lehman has laid hands on the
Cash Escrow from the GUI Case in Delaware without
ever obtaining an Order from anybody, much less the
Appropriate Judge, which in my view would be Judge
Walsh.

    In any event, I should like to know the Bank's Present
Posture with regards to any intention to take a recovery
On these and the other Assets in Order to meet your
Obligations under the Indenture,etc. I understand that
the Officer who had dealt with this has left the Bank.
Thanx
William Kuntz,III
<u>Kuntzwm1@yahoo.com</u>
Copies as needed

---

[1] Please find enclosed email to Mr. Basta@WG&M

#6A



# STATE OF UTAH

Jon M. Huntsman, Jr.
*Governor*
Gary R. Herbert
*Lieutenant Governor*

**DEPARTMENT OF FINANCIAL INSTITUTIONS**

G. Edward Leary
*Commissioner*
Michael L. Jones
*Chief Examiner*
R. Paul Allred
*Deputy Commissioner*

December 16, 2008

William Kuntz, III
INDIA St PO Box 1801
Nantucket Island, MA 02554-1801

Dear Mr. Kuntz:

The Department of Financial Institutions has no knowledge or papers regarding the sale of Grand Union Capital Corp as described in your letter. Also, in your letter was a request for copies of the pending applications filed by Goldman Sachs Bank USA. Utah law allows the public portion of applications to be reviewed at the Department's office. Therefore, your request for copies to be mailed to you is denied. You are invited to visit our office and review the applications in person or you could send a personal representative to review them. Another suggestion is to request the applications from the FDIC, The Federal Reserve Bank of New York, or The New York State Banking Department.

If you have any questions, please contact me at (801) 538-8841.

Sincerely,

Darryle P. Rude
Supervisor of Industrial Banks

**New Grand Union Petition**
*New York Times (1857-Current file);* Feb 7, 1995; ProQuest Historical Newspapers The New York Times (1851
pg. D20

# New Grand Union Petition

NEWARK, Feb. 6 (AP) — The creditors of the Grand Union Capital Corporation, parent of the Grand Union Company, filed a petition of involuntary bankruptcy today, saying that their debts were not being paid, and asked that the corporation be placed under Chapter 11 protection.

The Grand Union Company, a supermarket chain based in Wayne, N.J., was placed under voluntary Chapter 11 bankruptcy protection on Jan. 25 as part of a prearranged deal with its creditors.

But today the creditors for Grand Union Capital said their debts were not being paid and asked the United States Bankruptcy Court in Wilmington, Del., to place the corporation under Chapter 11 protection, so its debts could be restructured to allow for payments to creditors.

Grand Union Capital officials were not available for comment today.

The 10 creditors of Grand Union Capital are the holders of $660.3 million in bonds. Among the creditors are Dean Witter of New York; Franklin Age of San Mateo, Calif., and Barre & Company of Dallas.

When the Grand Union Company filed for Chapter 11 protection, the company hoped the plan would let it reorganize its debt and emerge from protection within four months.

No employees will be laid off and none of the company's 236 stores will be closed, the Grand Union Company said. The stores are in six Northeastern states: New Jersey, New York, Connecticut, New Hampshire, Pennsylvania and Vermont.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.



By Bloomberg Business News
New York Times (1857-Current file); Jan 22, 1992; ProQuest Historical Newspapers The New York Times (1851 - 2
pg. D3

## COMPANY NEWS

# Grand Union for Sale As Salomon Opts Out

By Bloomberg Business News

The Grand Union Company, the supermarket chain with more than 300 stores in the Northeast, was put up for sale yesterday by its owner, the GND Holdings Corporation, an investment partnership 42 percent owned by Salomon Brothers Inc.

The move was prompted by the intention of Salomon to shed its interests in investments outside the securities industry. It adopted the strategy after Warren E. Buffett took over as interim chairman last August, after the firm admitted violating Treasury bond auction rules.

Grand Union has been losing money since Salomon and a group of investors, led by the private investment firm Miller Tabak Hirsch & Company, acquired it from Sir James Goldsmith of Britain in a $1.2 billion leveraged buyout two years ago. Miller Tabak Hirsch, which also owns 42 percent of GND Holdings, also has a large stake in the Penn Traffic Company, a 188-store Johnstown, Pa., supermarket chain. The rest of GND is held by Grand Union management.

The chairman of GND Holdings, Gary Hirsch, who is a principal of Miller Tabak Hirsch, said he intended to bid for Grand Union.

"We intend to buy out the rest of the equity interest, refinance the balance sheet and take it going forward," Mr. Hirsch said, adding that he might raise additional financing from an expanded investment group.

The investors originally put up about $75 million of their own money and raised the rest with debt, including a $320 million bridge loan from Salomon Brothers.

As of October, GND Holdings had $671 million of short-term liabilities and $683 million of long-term debt, according to filings with the Securities and Exchange Commission.

In the six months that ended Oct. 12, GND had a net loss of $37.4 million, compared with a net loss of $26.5 million in the corresponding period of 1990. Sales in the period totaled $1.63 billion, up from $1.62 billion in the period a year earlier.

Michael Zimmerman, the Salomon managing director responsible for selling the company, said he expected several bidders to come forward.

"There's going to be a formal bidding process that we'll outline in the coming weeks," he said.

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

By ANISE C. WALLACE
New York Times (1857-Current file); Oct 9, 1989; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. 43

# $475 Million 'Junk' Issue Sold at Sweetened Price

### By ANISE C. WALLACE

The Donaldson, Lufkin & Jenrette Securities Corporation finally sold $475 million of "junk bonds" of the Chicago and North Western Acquisition Company yesterday. But because of the market's turmoil, bankers had to raise the coupon to 14.75 percent and give bondholders 10 percent of the stock in the company.

The firm had tried to market the senior subordinated debentures to junk bond investors on Wednesday with a lower coupon and without this equity. But the market's disarray has given investors the ability to demand more from issuers. And the bankers were forced to sweeten the offer.

"It really is a buyer's market," said Margaret Eagle, portfolio manager of the Fidelity High Income Fund, one of the largest junk bond mutual funds. "Only the better quality credits will get done." She did not say if the Chicago and North Western bonds were in her portfolio.

#### Some Bonds Advance

Despite the market disarray, prices of some higher-quality junk issues rose yesterday.

Several new junk bond issues totaling $1.7 billion are being presented next week to investors.

In recent days, investment bankers postponed three junk bond offerings, citing market skittishness, and have not yet rescheduled them. Salomon Brothers delayed its offering of $1.1 billion of bonds of Grand Union; Kidder, Peabody & Company postponed its $156 million offering of Ethan Allen & Company securities and Prudential-Bache Capital Funding, the merchant banking affiliate of the Wall Street firm, postponed its $220 million bond offering of York International.

The Chicago and North Western bonds are being used to help refinance a bridge loan that Donaldson, Lufkin made when the broker, the Union Pacific Corporation, the Blackstone Group and a management group acquired the company. To sell the bonds, Blackstone and Donaldson, Lufkin agreed to give up some of the equity they owned in the company. Blackstone originally owned 50 percent of the common stock and Donaldson, Lufkin owned 15 percent.

#### TW Services Issue Planned

Among the new issues to be offered next week are $1.1 billion of bonds, notes, zero-coupon bonds and pay-in-kind securities with common stock for TW Services, a food-service company, by Donaldson, Lufkin.

Some investors said Donaldson, Lufkin might have a difficult time selling these securities because of the size of the transaction. Some of the proceeds from the bond offering will be used to refinance a bridge loan the brokerage made to the company when it, Coniston Partners and a management group acquired TW. The original $500 million bridge loan to the company has been reduced to $180 million by syndicating the balance in a private transaction last August.

Morgan Stanley & Company will market two high-yield deals next week, and investors said they were likely to sell easily. The firm plans to price $150 million of securities of Imo Industries, an electronics and manufacturing concern, on Monday, according to a Morgan banker. The proceeds will be used to pay for the company's acquisition of the Optic-Electronic Corporation.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

*Two 'Junk' Offerings Postponed*
By ANISE C. WALLACE
*New York Times (1857-Current file); ...; ProQuest Historical Newspapers The New York Times (1851 - 2003)*
pg. D1

# Two 'Junk' Offerings Postponed

## Salomon and Kidder End Sales; Kohlberg Financing Is Shifted

### By ANISE C. WALLACE

Investment bankers at two Wall Street firms said yesterday that they were postponing two "junk bond" offerings totaling more than $1.2 billion because of volatile conditions in the high-risk, high-yield market.

And in another indication of the market's weakness, it was learned that Jerome Kohlberg, founder of Kohlberg & Company, a buyout firm, had sent a letter to his limited partners saying that Drexel Burnham Lambert Inc. had said it was unable to finance the firm's buyout last summer of the Colorado Prime Corporation. Earlier, Drexel had sent a "highly confident" letter to Kohlberg promising it could raise $75 million in financing for the buyout of the producer of gourmet foods and specialty appliances.

As a result, the limited partners of Mr. Kohlberg, an original partner of Kohlberg, Kravis, Roberts & Company, are now in the unusual position of making a short-term "bridge" loan to Colorado Prime to pay for the costs of the buyout.

### Sales Efforts Stopped

The biggest of the two offerings postponed yesterday was a $1.1 billion junk bond issue for the Grand Union Company. An investment banker at Salomon Brothers Inc. said that the firm had terminated its "road show" presentation of the offering, in which it travels the country seeking potential investors.

"We are waiting for the junk bond market to settle down," a spokesman at Salomon said.

The Grand Union buyout group, which purchased the grocery store chain last spring from Sir James Goldsmith, the British financier, needed to issue the bonds to help finance the purchase. Salomon, which bought the company with Miller Tabak Hirsch & Company, a Wall Street brokerage firm, and the Penn Traffic Company, a supermarket company, holds $32 million of Grand Union stock and has made a $130 million short-term bridge loan to the grocer.

### Awaiting Calmer Conditions

In another postponement, Kidder, Peabody & Company delayed its offering of $156 million of junk bonds of Ethan Allen & Company, a furniture retailer. A banker at Kidder said that his firm would resume its offering of Ethan Allen securities when market conditions were calmer.

"We had hoped to start this week," said James A. Mullin, a managing director of the firm. "Things are pretty tough." Ethan Allen was sold to a management group by Interco Inc., which needed the cash to help fend off an attempted takeover by the Rales brothers last year.

Mr. Mullin also said that Kidder had not yet begun offering bonds of V

*Continued on Page D21*

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# Two 'Junk' Offerings Postponed

---

***Continued From First Business Page***

---

Cable Inc., which were registered last spring, and was unlikely to do so until market conditions improved.

In another sign of market uncertainty, a spokesman for Shearson Lehman Hutton Inc. said he had been mistaken in saying earlier that the firm had postponed its $150 million junk bond offering for R. P. Scherer & Company. He said the investment bankers were holding meetings with potential investors this week.

The investment banking firm owns almost 95 percent of the equity in R. P. Scherer through its merchant banking buyout fund and has a $116 million bridge loan to the company. The loan is currently six percentage points above the prime lending rate, he said.

Under the terms of the Kohlberg partnership agreement, using the partners' capital for a short-term loan to Colorado Prime is legal but extremely unusual, several investors in buyout funds said yesterday.

Most investors in leveraged buyout partnerships, such as pension funds and insurance companies, want to receive equity in companies they purchase, not debt. Partners in the Kohlberg fund include Japanese banks, the Metropolitan Life Insurance Company, the ITT Corporation and Kidder, Peabody.

In the letter to his partners, which was written before last week's sharp selloff in stocks and the near-paralysis that followed in the junk bond market, Mr. Kohlberg said he hoped to refinance the bridge loan with junk bonds by the end of the year. The loan is at a rate of three percentage points above the prime lending rate.

Prices of some junk bonds continued to fall yesterday. Some issues of Harcourt Brace Jovanovich fell another three points, or $30 for every $1,000. Bonds of the company have fallen more than 10 points since it announced the sale of its theme parks to Anheuser-Busch Inc. for a price that disappointed some investors.

Junk bond managers said that Wall Street dealers — unwilling to own bonds in this skittish market — were responsible for much of the selling.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

Another 'Junk' Offering Is Delayed
By ANISE C. WALLACE
*New York Times (1857-Current file)*; Oct 20, 1989; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. D6

# Another 'Junk' Offering Is Delayed

### By ANISE C. WALLACE

Investment bankers postponed one $220 million "junk bond" offering yesterday, and bankers at another firm sweetened the offer on a $475 million issue to attract reluctant investors.

A banker at Prudential-Bache Capital Funding, the merchant banking affiliate of the securities firm, said an offering for York International, an air-conditioning company, had been postponed indefinitely because of the "deteriorating" market for high-yield, high-risk bonds. The securities firm has a $180 million short-term bridge loan to York and has $57 million invested in the company's stock.

Late yesterday afternoon, bankers at Donaldson, Lufkin & Jenrette altered their original offering of junk bonds for the CNW Acquisition Corporation. As the deal was structured last night, the new bonds, which should yield 14.5 percent, now give bondholders 10 percent equity in the company and include an interest rate reset feature that will increase the yield that bondholders receive if the

## Sweetened terms are offered on a $475 million issue.

economy or the company's business condition weakens.

It could not be determined if the revised CNW deal had been sold last night. Portfolio managers were told that the deal might be postponed if the entire package was not sold. Traders said the original offer, without the stock or reset features, had met with a tepid reception from junk bond managers at insurance companies, pension funds and mutual funds on Wednesday.

The proceeds from the CNW securities will be used to help pay off a short-term bridge loan made by Donaldson when it acquired the Chicago and North Western Company.

Donaldson investment bankers are also trying to market more than $500 million in junk bonds of TW Services,

a food-service company.

Yesterday's announcement came one day after Salomon Brothers and Kidder, Peabody & Company postponed two junk bond offerings for the Grand Union Corporation and Ethan Allen & Company, totaling $1.2 billion. Also a spokesman at Shearson Lehman Hutton Inc. said that market conditions next week would determine whether the firm tried to price $150 million in bonds of the R.P. Scherer & Company.

In another financing, Drexel Burnham Lambert Inc. said yesterday that it expected to complete a $75 million financing for the Colorado Prime Corporation, a leveraged buyout organized by Jerome Kohlberg of Kohlberg & Company, by the end of the year.

"We have not withdrawn the highly confident letter, and we are highly confident," said Steven S. Anreder, a spokesman for the firm. Kohlberg informed its clients earlier this month that a short-term bridge loan had been used because market conditions kept the needed bonds from being sold.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

$1.2 BILLION BUYOUT: Grand Union Food Stores
By SARAH BARTLETT
New York Times (1857-Current file); ...
Historical Newspapers The New York Times (1851 - 2003)
pg. D1

# $1.2 Billion Buyout of Food Stores

## Grand Union Chain Being Sold to Group Including Salomon

### By SARAH BARTLETT

The Grand Union Company, the 11th-largest supermarket chain in the country, is being acquired in a transaction valued at $1.2 billion by an investor group that includes Salomon Brothers Inc. and Miller Tabak Hirsch & Company, a New York-based investment bank that specializes in arbitrage and leveraged buyouts.

Grand Union, with 306 stores in seven Northeastern states and Georgia, has annual sales of $2.7 billion. The chain, founded in 1872, also operates the Big Star grocery stores. It has been a privately held company since 1973, when it was purchased by the British-French investor Sir James Goldsmith.

"People have known that we're interested in buying retail food stores," said Gary D. Hirsch, a principal of Miller Tabak. "And we knew he was interested in selling."

### The New Chairman

Mr. Hirsch will be the new chairman of the company, which is based in Wayne, N.J. He is also the chairman of the Penn Traffic Company, a regional supermarket chain that operates P&C stores in the Northeast. Penn Traffic has about $3 billion in sales annually.

The new chief executive of Grand Union will be Joseph J. McCaig, currently its president and chief operating officer. Grand Union's current chief executive, Floyd Hall, will be retiring once the transaction is completed, to pursue other interests.

Salomon and Miller Tabak will each invest $30 million in equity in the new company, which will give them each a 40 percent stake. Senior management will have the remaining 20 percent, equal to a $15 million investment.

Salomon Brothers will provide as much as $870 million in temporary "bridge" loans to help finance the transaction until longer-term financing can be arranged with a group of commercial banks and "junk bond" investors.

### Salomon's Strategy

The deal is a significant step forward in Salomon's attempt to become a force in merchant banking, using its own capital to invest in companies. Salomon beat out an investor group associated with Merrill Lynch & Company in the bidding for Grand Union, people close to the transaction said. Officials at Merrill had no comment.

The Grand Union deal is the second large merchant-banking transaction for Salomon in three weeks. In late March it announced that it was acquiring Envirodyne Inc., a Chicago-based food packaging company, for $838 million.

That transaction was done as part of a joint venture Salomon established with Donald P. Kelly, the for-

*Continued on Page D15*

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# Grand Union Grocery Chain Being Sold for $1.2 Billion

*Continued From First Business Page*

mer chief executive of the Beatrice Company.

Salomon's move into merchant banking brings with it certain risks, as Moody's Investors Service recently pointed out in a report.

The Moody's report expressed concern that firms like Salomon were increasingly tying up their balance sheets with illiquid investments. Salomon reviewed the Grand Union transaction with the rating agencies as part of a general discussion of its merchant banking business.

## A Boom in Buyouts

Leveraged buyouts have become common in the supermarket industry. Safeway Stores, for instance, was acquired by Kohlberg, Kravis, Roberts & Company in 1987. And Supermarkets General, the owner of Pathmark stores, also went private that year, with the help of Merrill Lynch & Company's leveraged buyout fund.

Supermarket chains are popular with leveraged buyout investors because food stores are a noncyclical business and generate the steady flow of cash needed to repay debt.

"Leveraged buyouts are more appropriate in some industries than others," said Peter A. Magowan, chief executive of Safeway. "We're not worried about recessions; people still have to eat."

As a result of this deal, Grand Union will add an additional $325 million in subordinated high-yield debt to the $300 million it already has and its $545 million in bank loans.

Mr. Hirsch of Miller Tabak said that repaying the debt would not re-

quire the sale of assets but instead would be covered by the additional cash flow generated by expanding the business. He added that he intended to maintain, if not increase, the $65 million capital spending budget and had no plans to lay off any of Grand Union's 21,000 employees.

In the last year or so Grand Union's cash flow has had a double-digit compounded growth rate, a performance the company believes can be maintained during the next year. "We have no plans to curtail any of our operations," Mr. Hirsch said.

The Grand Union acquisition is contingent on getting approval under the Hart-Scott-Rodino Act. As for potential antitrust problems, Mr. Hirsch said there was some overlap of stores in New York State and Vermont, but he said he did not expect that to pose a problem to the deal.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

A Gambler With Good Timing
By CRAIG R. WHITNEYSpecial to The New York Times
*New York Times (1857-Current file)*; Jul 12, 1989; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. D1

# A Gambler With Good Timing

## Sir James Goldsmith

### By CRAIG R. WHITNEY

Special to The New York Times

LONDON, July 11 — Sir James Michael Goldsmith, who offered $21 billion today for B.A.T. Industries, is a swashbuckling, 6-feet 3-inch gambler who knows when to play a hand and when to fold.

**Man in the News**

He began building his business interests with a small French pharmaceutical company and went on to forge a British food conglomerate.

Cavenham. After putting most of his British industrial empire into a foundation based in Liechtenstein, and went to the United States, buying stakes in undervalued companies, selling pieces of them for huge profits and striking terror in corporate board rooms in the process.

His American acquisitions included Grand Union, the supermarket chain, and two forest product groups, Diamond International and Crown Zellerbach. He also attempted to buy a third paper group, St. Regis, but after a protracted takeover battle sold his shares back to the company at a profit. This led to criticism on Wall Street that his real goal had been to obtain "greenmail," a payment in return for halting takeover activity. Sir James countered that St. Regis was a business failure because he had not succeeded in taking it over.

More recently, he tried to take over



Blocked due to copyright.
See full page image or
microfilm.

Sir James Goldsmith in London yesterday with Jacob Rothschild, right, and Kerry Packer, right, his partners in a $21 billion takeover bid for B.A.T. Industries.

the Goodyear Tire and Rubber Company. In its attempts to fend off Sir James, the company began a painful restructuring, and the financier again sold back his shares at a profit.

In several of his deals he worked with a fellow Etonian and longtime friend, Jacob Rothschild, who is also a principal in the offer for B.A.T. an-

nounced today. Over the years, Sir James, Mr. Rothschild and their team have outmaneuvered some of Wall Street's best legal talent. After acquiring companies, they would restructure them and sell off profitable parts.

But Sir James, 56 years old, also

Continued on Page D7

Financial Times

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# A British-French Gambler With a Knack for Timing

Continued From First Business Page

built up companies, notably Grand Union, which became America's third-largest supermarket chain, after Kroger and Safeway.

In the months before the stock market crash of October 1987, he liquidated most of his holdings, saying the world's markets were "dangerously overvalued." Others who stayed in the market saw the value of most of their investments plunge.

"Being a gambler is useful because as a gambler you know that luck goes and comes," he said in a BBC interview 10 years ago. Those words could describe his career.

James Michael Goldsmith was born on Feb. 26, 1933, in Paris. He was an outsider from birth. His father, Maj. Frank Goldsmith, had been prominent in local government in London at the turn of the century, but felt that his loyalty to Britain was questioned during World War I because of his German Jewish ancestry. The Goldsmiths moved to France, where James was born.

Sir James, who has described his mother as being of "peasant stock from the Auvergne," learned French from her and English from his father, and holds dual French and British nationality. He has been decorated by both countries for his successes.

He attended Eton, the prestigious boarding school, but never graduated. According to a legend he does not dispute he spent more time there gambling than studying, winning £8,000 on one £10 horse-racing bet.

At age 20, he met the woman who became the first of his three wives: Maria Isabel Patino, a Bolivian heiress whose father, Don Antenor Patino, had built a $150 million fortune in tin mining and had served as Bolivia's Ambassador to Britain.

The couple eloped and went to Scotland. She died in 1954 after the birth of their daughter, Isabel.

For a few years after that, he ran a family chemical pharmaceutical business, Laboratoires Cassenne, in France, but he sold out in 1957 to team up with a financier from Iraq, Selim Zilkha, and set up a chain of shops for pregnant women that later became known as Mothercare.

The success of a diet aid, Milical, gave him the capital to begin acquiring undervalued food companies.

Sir James's private life has been a gossip columnist's dream. He married his secretary in France, Ginette Lery, in 1963, a marriage that did not last. He then married Lady Annabel Birley — from whom Annabel's, the millionaires' gambling club in Berkeley Square, got its name — in 1976, after they had two children.

In the mid-1970's, Sir James tried to set up a British newsweekly, "Now!" to counter what he saw as a destructive trend in journalism, but after it failed in 1981, Sir James shifted his base first to France, where he owned the news weekly L'Express, an outlet for his conservative political and economic views. After the election victory of the Socialists under François Mitterrand, he moved on to the United States.

After emerging unscathed from the stock market crash, Sir James spent considerable time on a 5,000-acre estate in Mexico. Early this year, after selling Grand Union for $1.2 billion, Sir James returned to Britain.

"A shiver went through the board rooms of Britain," the British Press Association's financial correspondent wrote, "as the word went round — 'Goldsmith is back.'"

Stocks in his new British investment vehicle, Anglo-Leasing P.L.C., immediately jumped by almost 50 percent.

## B.A.T. Bid Lifts Stocks in U.S.

The stocks of American tobacco companies made strong gains in heavy trading yesterday, in response to the $21 billion takeover bid for B.A.T. Industries, a leading British cigarette manufacturer.

Loews showed the biggest advance, closing up $2.75, at $115.625. Philip Morris closed up $2.125, at $143.75; American Brands rose $1.50, to $71.375; UST was up $1.125, at $26.875, and Liggett Group rose 25 cents, to $9.875.

Analysts said yesterday that the bid for B.A.T., by Sir James Goldsmith, gave investors renewed confidence in the value of American tobacco stocks.

"A certain number of people will extrapolate that there is more value in tobacco companies than is recognized by the stock market," said Emanuel Goldman, an analyst for Paine Webber in San Francisco. People "have overreacted to all of the negative environment associated with smoking."

The possibility of crippling litigation against tobacco companies has had a dampening effect on the companies' stock prices, Mr. Goldman added, as has concern about laws restricting smoking in public.

Despite these factors, though, analysts say most tobacco companies show earnings growth that would justify stock prices significantly higher than at present.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

Salomon to Sell 42% Stake in Parent of Grand Union
By ADAM BRYANT
New York Times (1857-Current file); Apr 14, 1992; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. D5

# Salomon to Sell 42% Stake In Parent of Grand Union

## By ADAM BRYANT

Salomon Brothers Inc. said yesterday that it had agreed to sell its 42 percent stake in the parent of the Grand Union Company, a move that would enable the owners of the supermarket chain to try to establish a more durable financial structure after its leveraged buyout in 1989.

The sale would end a significant foray into merchant banking by Salomon. The firm, which is trying to shed interests outside the securities industry, was part of the investor group that bought Grand Union in 1989 from the financier Sir James Goldsmith for $1.2 billion.

Salomon had provided a bridge loan for the original buyout, but wound up with a larger debt position in the company than it had intended after the junk-bond market turned volatile.

### Sale to Big Stockholder

If Salomon's proposed sale is completed to GAC Holdings — the other large shareholder in the supermarket's parent company, the GND Holdings Corporation — the deal would result in GAC Holdings and the chain's managers controlling more than 50 percent of Grand Union, the nation's 15th-largest supermarket chain.

GAC Holdings plans to raise money and complete the recapitalization by mid-June.

Between the fiscal years 1989 and 1991, Grand Union's sales rose by 10.2 percent, to $2.99 billion, while gross profits increased by 15 percent, to $784 million. The chain, based in Wayne, N.J., has 21,000 employees working in 304 stores in New York, New Jersey, Connecticut, Vermont, Georgia, Massachusetts, Pennsylvania and New Hampshire.

Michael J. Zimmerman, a Salomon managing director, declined to say what Salomon would be paid for its stake. "Salomon will realize an attractive return on its investment," he said.

Gary D. Hirsch, the chairman of GND Holdings, said Salomon's stake would be bought by GAC Holdings, with the help of a partner that has not been named.

### Too Few Details

Analysts said yesterday that too few details were available to comment on the proposed deal or speculate on its price. After the transaction is completed, GND plans to increase investments in its Grand Union outlets.

But Mr. Hirsch said little else would change about the chain's strategy. "With our new capital structure, we will be able to increase the rate of reinvestment in our stories, distribution infrastructure and technology," he said.

Mr. Hirsch is also the managing general partner of Miller Tabak Hirsch & Company, which also owns a large stake in the Penn Traffic supermarket chain, roughly similar in size to Grand Union.

The recapitalization of the company would include repaying about $460 million of senior increasing rate notes issued by GND Holdings, and paying back $430 million in bank debt.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — KEENE NH 03431

| | | |
|---|---|---|
| Postage | $ | $0.80 | 0554 |
| Certified Fee | | $2.65 | 01 |
| Return Receipt Fee (Endorsement Required) | | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $3.45 | 05/23/2007 |

Sent To _Gemplision_

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7005 1820 0001 7339 3777

---

**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — WILMINGTON DE 1980

| | | |
|---|---|---|
| Postage | $ | $0.41 | 0554 |
| Certified Fee | | $2.65 | |
| Return Receipt Fee (Endorsement Required) | | $0.00 | NANTUCKET, MA Postmark Here MAY 23 2007 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $3.06 | 05/23/2007 |

Sent To _Lerman_

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7005 1820 0001 7339 3746

---

**U.S. POSTAL SERVICE**    **CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received F————
William Kuntz, III
c/ 25 Alprilla Farm Rd
Hopkinton, Mass 01748

One
GRAND UNION CAPITAL CORP
c/ The Corp Trust Co
1209 Orange St
Wilmington, Delaware 19801

PS Form **3817**, January 2001

---

**U.S. POSTAL SERVICE**    **CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Receiv————
William Kuntz, III
c/ 25 Alprilla Farm Rd
Hopkinton, Mass 01748

One piece of ordinary mail addressed to:
GRAND UNION HOLDING CORP
c/ The Corp Trust Co
1209 Orange St
Wilmington, Delaware 19801

PS Form **3817**, January 2001

#9



## GRAND UNION COMPANY BANKRUPTCY <1995-JUDGE WALSH> FOLLOWUP REQUEST FOR COPY OF DEPOSITION TAKEN>?

Friday, March 2, 2012 1:21 PM

From: "william kuntz" <kuntzwm1@yahoo.com>
   To: kuntzwm1@yahoo.com, tralston@ycst.com

Rodney Square
1000 North King Street
Wilmington, DE 19801
P 302.571.6600
F 302.571.1253

**William Kuntz, III**
**kuntzwm1@yahoo.com**
**Cray Engineering**
**India St**
**PO Box 1801**
**Nantucket Island, Massachusetts 02554-1801 USofA**

#10



Dennis F. Dunne
Luc A. Despins
Wilbur F. Foster, Jr.
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

-and-

Paul Aronzon
Gregory A. Bray
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000

Proposed Counsel for Official
Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                                    :    Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)

           Debtors.                              :    (Jointly Administered)

                                               :

------------------------------------------------------------x

**JOINDER OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN DEBTORS' OBJECTION TO THE MOTION OF
WILLIAM KUNTZ III FOR AN ORDER LIFTING OR MODIFYING
THE AUTOMATIC STAY IN THESE CHAPTER 11 CASES**

      The Official Committee of Unsecured Creditors (the "Committee") appointed in

the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings

Inc. and its affiliated debtors (other than Lehman Brothers Inc.) (collectively, the "Debtors")

hereby joins (the "Joinder") in the Debtors' objection (the "Objection") to the motion of William

#11

Kuntz, III ("Kuntz"), filed September 18, 2008 (the "Motion"), for an order lifting or modifying the automatic stay in the Chapter 11 Cases, and respectfully states as follows:

## BACKGROUND

1.    On September 15, 2008 and periodically thereafter, the Debtors commenced the Chapter 11 Cases. The Debtors have been authorized to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee. No trustee or examiner been appointed in the Chapter 11 Cases.

2.    On September 18, 2008, Kuntz filed the Motion, seeking a modification of the automatic stay, apparently to pursue purported claims against Grand Union Capital – an entity unrelated to the Debtors or the Chapter 11 Cases that reorganized under the supervision of the United States Bankruptcy Court for the District of Delaware in 1995.

## JOINDER AND OBJECTION

3.    The Committee joins in the Debtors' opposition to the Motion for all the reasons set forth in the Objection, including, without limitation, on the grounds that: (i) Kuntz has failed to demonstrate that he has any interest in any property of the Debtors or the Chapter 11 Cases; (ii) Kuntz has failed to demonstrate any cause for lifting the automatic stay in respect to the Motion; (iii) a balancing of the harms, including the impact on creditors of the estates, weighs in favor of denial of the Motion; and (iv) the Court should give no weight to Kuntz's status as a *pro se* litigant due to his decades as a "professional" litigant.

2

**WHEREFORE**, the Committee respectfully requests that the Court (i) deny the Motion; and (ii) grant such other relief as is just.

Dated:    New York, New York
          October 13, 2008

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Luc A. Despins
Wilbur F. Foster, Jr.
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

-and-

Paul Aronzon
Gregory A. Bray
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000

Proposed Counsel for Official
Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re :
                                               —————x
     :
                                          Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*, :     08-13555 (JMP)
     :

Debtors. :
                                     (Jointly Administered)
—————————————————————————————————x

## NOTICE UNDER LOCAL RULE [1]x? TO CALL WITNESS IN DEFENSE OF PROOFS OF CLAIM BY WILLIAM KUNTZ, III

Now comes William Kuntz, III who appears here Pro Se and respectfully Notices that it is his intention to call 4 witness's in Defense of his Claims.

Weil Partner Tanenbaum and former Partner Basta, both of whom claim Grand Union as an engagement on the respective Profile published on the Internet. Mr. Tanenbaum is copied on a letter-memo of Co-Counsel filed by Debtors Counsel as an Exhibit filed in its Claims Objection of the 15th of Sept, 2010.

**John Gutfreund** who was CEO of Solomon Brothers at the time Grand Union indirectly from Sir James Goldsmith[23]

**Warren Buffett**[4] Buffett became Chairman of Salomon until the crisis[5] passed and upon Information and belief at the time the Grand Union Capital Corp Notes were underwritten.

Respectfully,

William Kuntz, III India St,PO Box 1801, Nantucket Island, Ma 02554-1801

508-775-5225     Hyannis, Ma Sept 23, 2010

---

[1] Still waiting for help on this from Debtor's Counsel
[2] http://en.wikipedia.org/wiki/Sir_James_Goldsmith
[3] In 1989 investment banker Gary D. Hirsch, a partner in the firm Miller Tabak Hirsch & Co. acquired a portion of the Grand Union Company with Solomon Brothers.
[4] In 1987, Berkshire Hathaway purchased 12% stake in Salomon Inc., making it the largest shareholder and Buffett the director. In 1990, a scandal involving John Gutfreund (former CEO of Salomon Brothers)
[5] http://www.c-spanvideo.org/program/21029-1

#12

**adirondackjournal.com**

.s "must see"
hrough Jan.

## planning
urgh Bicen-
committee
.m. Dec. 13
urgh Town

ideas for the
ration, and
to help or-
welcome

## vents
s and of-
the run-
ivities
your
em-
ng of

**Warrensburg Town**

# Jail time for coo

## Nov. 16
## Judge Mindy Fisk presiding

• In a plea bargain, John R. Duffy, 28, of Terrace Avenue in Warrensburg was convicted of a charge of Disorderly Conduct and sentenced to 15 days in jail for stealing a container of chocolate chips and a package of Kraft Handi-Snacks, worth a total of $4.08, from the Warrensburg Grand Union. He was originally charged for the act with Petit Larceny, a Misdemeanor.

charge o
Misdeme
12:41 a.m
burg. Sh
with .08
third-deg
eration –
fic infrac
• Darr
Warrensb
of third-
Operatio
traffic sto
n Warren

