```
                                                        Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   FOR THE SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 08-13555 (JMP)

 4   - - - - - - - - - - - - - - - - - - -x

 5   In Re:

 6   LEHMAN BROTHERS HOLDINGS, INC., et al.,

 7              Debtors.

 8   - - - - - - - - - - - - - - - - - - -x

 9   Case No. 08-01420 (JMP) (SIPA)

10   In Re:

11   LEHMAN BROTHERS, INC.,

12              Debtors.

13   - - - - - - - - - - - - - - - - - - - x

14              United States Bankruptcy Court

15              Southern District of New York, Courtroom 601

16              One Bowling Green

17              New York, New York  10004

18

19              April 18, 2012

20              10:04 AM

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25   ECRO:  MATTHEW
```

Page 2

 1   Final Fee Application of the Examiner and Jenner & Block LLP

 2   for Allowance of Compensation for Services Rendered and

 3   Reimbursement of Expenses for Jenner & Block LLP [ECF No.

 4   27189]

 5

 6   Second Motion for Order Approving the Trustee's Allocation of

 7   Property [LBI ECF No. 4760]

 8

 9   Motion of Fidelity National Title Insurance Company to Compel

10   Compliance with Requirements of Title Insurance Policies [ECF

11   No. 11513]

12

13   Motion of Giants Stadium LLC for Leave to Conduct Discovery of

14   the Debtors Pursuant to Federal Rule of Bankruptcy Procedure

15   2004 [ECF No. 16016]

16

17   Motion of Monti Family Holding Company, Ltd for Leave to

18   Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings,

19   Inc. and Other Entities [ECF No. 16803]

20

21   Amended Motion of Ironbridge Homes, LLC, et al. for Relief from

22   the Automatic Stay [ECF No. 23551]

23

24   Motion of Edward J. Agostini, et al. for Relief from the

25   Automatic Staty [ECF No. 24769]

1

2    Bank of Montreal's Responses and Objections to Subpoena of

3    Debtors and Debtors in Possession Pursuant to Rules 2004 and

4    9016 of the Federal Rules of Bankruptcy Procedure [ECF No.

5    24847]

6

7    Motion of Grace Farrelly Pursuant to Sections 105 and 362 for

8    Relief from Automatic Stay [ECF No. 25205]

9

10   Cardinal Investment Sub I, L.P. and Oak Hill Strategic

11   Partners, L.P.'s Motion for Limited Intervention in the

12   Contested Matter Concerning the Trustee's Determination of

13   Certain Claims of Lehman Brothers Holdings Inc. and Certain of

14   Its Affiliates [LBI ECF No. 4634]

15

16   Lehman Brothers Holdings Inc. v. Fontainebleau Resorts, LLC, et

17   al. [Adversary Case No. 10-02821]  Status Conference

18

19   Lehman Brothers Holdings Inc. v. Fontainebleau Resorts, LLC, et

20   al. [Adverysary Case No. 10-02823]  Status Conference

21

22   Belmont Park Investments Pty Ltd, et al. v. Lehman Brothers

23   Special Financing Inc., et al. [Adversary Proceeding No. 12-

24   01045]  Pre-Trial Conference

25   Transcribed by:  Petra Garthwait

```
 1    A P P E A R A N C E S :

 2    JENNER BLOCK LLP

 3         Counsel for Examiner Anton Valukas

 4         330 N. Wabash Ave., FL 44

 5         Chicago, Illinois 60611

 6

 7    BY:   PATRICK J. TROSTLE, ESQ.

 8

 9

10    HUGHES HUBBARD & REED LLP

11         Counsel for James W. Giddens, Trustee

12         For the SIPA Liquidation of Lehman Brothers, Inc.

13         One Battery Park Plaza

14         New York, New York 10004

15

16    BY:   JAMES B. KOBAK, JR., ESQ.

17         DAVID W. WILTENBURG, ESQ.

18

19

20    DAVIS POLK WARDWELL LLP

21         Counsel for LBIE

22         450 Lexington Avenue

23         New York, New York  10017

24

25    BY:   TIMOTHY GRAULICH, ESQ.
```

**Page 5**

1    WEIL GOTSHAL & MANGES LLP

2         Counsel for the Debtors

3         767 Fifth Avenue

4         New York, New York 10153

5

6    BY:   RICHARD P. KRASNOW, ESQ.

7

8

9    LOWENSTEIN SANDLER

10        Counsel for Liberty View

11        1251 Avenue of the Americas

12        New York, New York 10020

13

14   BY:   MICHAEL S. ETKIN, ESQ.

15

16

17

18

19

20

21

22

23

24

25

Page 6

```
 1                    P R O C E E D I N G S
 2              THE COURT:   Be seated.  Good morning.  Let's
 3    proceed.
 4              MR. TROSTLE:   Good morning, Your Honor.  Patrick
 5    Trostle of Jenner & Block for the Examiner Anton Valukas.
 6              I'm here this morning on our Final Fee Application
 7    for the Examiner and for Jenner & Block.  I'm happy to say that
 8    we have resolved all issues with the Fee Committee.  The Fee
 9    Committee, in fact, filed a statement of no objection on April
10    11th and no -- no objections were filed.  We submitted a form
11    of order to chambers earlier this week and I respectfully ask
12    that our application be granted.
13              THE COURT:   It is granted.
14              MR. TROSTLE:   Great.  Thank you, Your Honor.
15              THE COURT:   Thank you.  Well, that was quick.
16              MR. KOBAK:   I hope we'll be as quick, Your Honor,
17    but I'm not sure --
18              THE COURT:   I don't think you will be.
19              MR. KOBAK:   James Kobak, Hughes Hubbard & Reed, on
20    behalf of the SIPA Trustee.
21              Your Honor, we're here today with respect to the
22    scheduling for the allocation Motion.  As Your Honor knows,
23    Your Honor has reserved a number of dates in early August for a
24    hearing on that Motion.  We have proposed a schedule to the
25    other parties, LBIE, LBHI, and the other objectors, looking
```

Page 7

1    toward getting everything resolved in time to have a hearing in

2    those August dates.  I'm sorry to say that we've not been able

3    to reach agreement with them on that schedule.  We think it's

4    reasonable, it is ambitious, but as I said before, this is an

5    issue that the Trustee very much thinks we need certainty on.

6    We're over three years into this case.  As I understand it,

7    their schedule essentially would call for a much longer period,

8    perhaps to the end of this year till early next year.  I'll let

9    them speak to the details, if they wish, but from the Trustee's

10   standpoint, we see no reason for that.  We don't think it's

11   acceptable.  We do think that we need certainty.  We've done

12   everything possible to try to resolve the principle issues that

13   are impediments to our knowing where we stand and making

14   distributions either on an interim or a final basis, that

15   includes moving forward with the schedule in the LIBIE case.

16   It includes reaching a settlement, I think, we're still waiting

17   for the documentation, but a settlement with LBHI, those are

18   two of the other principle outstanding items, so -- our

19   position, Your Honor, is that we think it's perfectly doable to

20   go forward on -- in early August.  We don't think we'll even

21   need all five of those dates.

22          We think many of the questions are essentially legal

23   in nature or mixed questions of law, in fact, we don't think

24   what we're talking about is the Barclay-type trial with a lot a

25   "who shot John" about what happened when.  It's much more of a

08-13555-mg   Doc 27614   Filed 04/19/12   Entered 04/26/12 14:52:15   Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 8 of 34

Page 8

1   matter that what we think professionals can efficiently agree

2   on.

3            THE COURT:   I appreciate what you said, but I gather

4   not everybody agrees with what you just said.

5            MR. KOBAK:   No, they don't, Your Honor.  I think Mr.

6   Wiltenburg may have one or two points to amplify a couple of

7   details.

8            THE COURT:   Okay.

9            MR. KOBAK:   Thank you, Your Honor.

10           MR. WILTENBURG:   Good morning, Your Honor, David

11  Wiltenburg, Hughes Hubbard & Reed, for the SIPA Trustee.

12           Your Honor, this is the Trustee's Second Motion

13  seeking allocation of property of the estate to the fund of

14  customer property.  This Second Motion was filed on December

15  1st of last year and in the interim since then, we have

16  reported to the Court on a couple of occasions regarding the

17  due diligence process that has been going forward involving

18  professionals on all sides.  And, in fact, substantial progress

19  has been made, and what we're talking about essentially is

20  continuing a dialogue as we have been doing, but putting in

21  place procedures, kind of as a fail-safe that will result in a

22  hearing on beginning on August 6 and, of course, this doesn't

23  mean that the parties are at loggerheads, that they -- that

24  they are sure that they are going to disagree it's just that,

25  in the event we can't reach consensus on the remaining issues,

08-13555-mg    Doc 27614    Filed 04/19/12    Entered 04/26/12 14:52:15    Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 9 of 34

Page 9

1    we need that date certain to put the issues before the Court.

2            THE COURT:    Let me ask you -- what's probably a

3    naive question:  To the extent that the parties are at

4    loggerheads with respect to such things as timing and process

5    and recognizing that the August 6 date has been set, are any of

6    the issues that are presently standing in the way of consensus,

7    at least as to schedule, issues that could be addressed with

8    the aid of a mediator?  Or is this just one of those situations

9    where reasonable people will differ and that difference will

10    persist regardless of whom I get in the middle of it?

11            MR. WILTENBURG:    Your Honor, I think we can identify

12    two points of disagreement:  The first is essentially the view

13    of other parties that allocation should be the last piece of

14    the puzzle that falls into place, that is that it should not be

15    adjudicated until all issues affecting the size of the customer

16    claims pool have been resolved.  And we just disagree

17    fundamentally with that.  This -- the idea that this should be

18    the very last piece of the puzzle to fall into place, it's an

19    essential part of the administration of the estate, you know,

20    fixing the amount of property that will be available on a

21    priority basis to customers and the Trustee feels strongly that

22    it needs to be -- it needs to be fixed in order for the estate

23    to plan and to conduct itself in a logical way.

24            The other disagreement is as to the August date

25    itself and the feasibility and practicality of keeping that

Page 10

1    date as a time, as I say, as a fail-safe to put unagreed

2    (verbatim) issues before the Court, and the characteristics of

3    this discussion, I think, are not fully appreciated -- we're

4    not on the same page with other parties about the

5    characteristics of the exercise.  First of all, this is not

6    adjudication of the rights of any particular party.  It's not

7    an adversary proceeding, it's not that there is going to be

8    adjudication that affects individual rights.

9           Secondly, it's not, as Mr. Kobak said, it's not the

10   Barclay's Trial, in fact, it's essentially witnesses who are

11   financial professionals having the knowledge that lay people

12   would not have to assemble data and to interpret data and to

13   explain it to us.  And so the divide, you know, between fact

14   witnesses and expert witnesses and testimony -- it's not a

15   bright line in this case, in fact, all of the witnesses are

16   going to be doing an exercise and explaining things to us in a

17   way that a lay person needs help --

18           THE COURT:  You say "explain this to us", are you

19   talking about explain this to the Court?

20           MR. WILTENBURG:  Yes.

21           THE COURT:  As you have just described this and

22   consistent with my earlier comment about a mediator, it occurs

23   to me, and I'm just throwing this out as a question, not

24   necessarily even a pointed question, that this maybe a

25   situation in which the Court may be well-advised to have its

Page 11

1   own expert, because I'm not at all clear how a lay individual,

2   and I am one although I have reasonable sophistication in these

3   matters, is supposed to make an assessment that the parties

4   themselves are unable to make and they are all armed with their

5   own experts.  You don't have to answer that on the spot, but it

6   does occur to me that this may be one of those unusual

7   circumstances where the appointment of an expert for the Court

8   may turn out to be a useful device because that individual

9   would be somebody who could provide some presumably totally

10  neutral and dispassionate advice, would be in a position to

11  confer presumably with the Court at some level, and would also

12  be in the position to act as a "honest" broker with respect to

13  some of the disagreements.

14          MR. WILTENBURG:   Your Honor, if I could make a

15  comment on that based on the experience we've had so far and, I

16  think I've mentioned before that, on the level, on the kind of

17  transactional level, the parties have agreed so far and we

18  expect they will agree they're -- that is they're professionals

19  -- will look at the body of data and say yes on a transactional

20  level, this is what happened.  And the question before the

21  Court, we anticipate, will not be so much what happened but

22  what the legal consequences --

23          THE COURT:   I hear what you said but you haven't

24  answered my question.

25          MR. WILTENBURG:   Well, in a way I'm expressing based

Lehman Brothers Holdings, Inc. et al.

Page 12

1     on what's gone before, the aspiration and expectation that we

2     will not be experiencing that kind of clash -- battle of

3     experts, in effect.

4             THE COURT:   Well then, what will be before the

5     Court?

6             MR. WILTENBURG:   Well, the legal consequence of what

7     occurred.

8             THE COURT:   Are you saying that there will be what

9     amounts to an agreement as to a factual record and as to the

10    financial components thereof?

11            MR. WILTENBURG:   I'm not able to tell you today that

12    that will for sure happen.   It will be our hope to get close to

13    that.

14            THE COURT:   All right, well, I just threw out an

15    idea and it may be that it's something that the parties might

16    think about.   I'm not urging it and I don't have enough of a

17    under -- I don't have enough of a present understanding of the

18    nature of what is causing the parties so much agitation at the

19    moment.   I can't tell from your comments and those of your

20    partner, since you both suggest that this is a matter that

21    should be handled in August then it's obvious that adversaries

22    who are looking at the same set of facts completely disagree

23    with you.

24            MR. WILTENBURG:   Yes, Your Honor, that -- at least

25    for now -- that is the case.   The parties have exchanged

Page 13

1    proposed schedules.  We are proposing a schedule that gives all

2    parties notice of who the witnesses would be, what they would

3    say, an opportunity to take document and deposition discovery

4    of those witnesses and those issues and then tee it up for

5    determination by the Court, if necessary, by August 6th and we

6    do feel that that is feasible.

7              THE COURT:   Okay, I should hear from others because

8    I need to understand why that's not feasible.

9              MR. GRAULICH:   Good morning, Your Honor, Timothy

10   Graulich of Davis Polk on behalf of the administrators of

11   Lehman Brothers International Europe and Administration.

12             Your Honor, before -- before I get to a position of

13   discussing specifically why August is not correct vs. September

14   or October, I would just like to take a few steps back and put

15   on the record, what I think is both ours and the chapter 11

16   Debtors' position that first and foremost, we should not be

17   talking about scheduling the balance of this Motion at this

18   time.  And, I would like to sort of begin with one of the

19   comments of Mr. Wiltenburg with respect to -- we should proceed

20   because the Trustee would like to proceed and after all, I

21   think the phrase was "no individual rights are being affected,

22   it's not like this is an adversary proceeding".  Sitting at

23   this table here is North of 70 percent of the allowed customer

24   claims in this case.  That's likely to be true even at the --

25   it's true now, but it's likely to be true that we're going to

08-13555-mg   Doc 27614   Filed 04/19/12   Entered 04/26/12 14:52:15   Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 14 of 34

Page 14

1    be a significant -- the largest two creditors -- customers in

2    the case at the end of this proceeding as well.  And so to the

3    extent that there is a difficulty with respect to the customer

4    fund, it's going to fall on customers most importantly, not

5    necessarily -- not at all frankly, on the Trustee.  Just as a

6    for example, if the Trustee proceeds presently with its

7    contested Motion and loses, for example, there are certain non-

8    trivial amounts that are still subject to dispute at this

9    point, approximately $3.5 billion.  If there is a shortfall in

10   the customer fund because the Trustee decided that it's in the

11   Trustee's best view to proceed immediately to a hearing in

12   August and then fails, if there is a 10 percent shortfall in

13   the customer fund, my clients and their customers are out $800

14   million, because we have an already agreed 8.2 billion customer

15   claim which we are -- to be sure, we're in litigation about but

16   not from LIBIE's perspective to make that number smaller, only

17   to make that number larger.

18          So it is not at all true that this is an academic

19   exercise that the Trustee should properly be pressing forward

20   with at this time over the objection of the very customers that

21   presumable the Trustee is acting in the interest of because we

22   need to get this moving.  The customers are speaking and the

23   customers don't want to move forward at this point.

24          What we would propose, and just by the way of

25   background where we are right now is, and, we discussed this a

08-13555-mg   Doc 27614   Filed 04/19/12   Entered 04/26/12 14:52:15   Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 15 of 34

Page 15

1    little bit at the last hearing, is that a Motion was filed in

2    December, in paragraph four of that Motion, why was this being

3    filed now, paragraph four indicated "to help facilitate an

4    interim distribution during calendar year 2012", indicated

5    perhaps earlier than 2012 but let's take as a base line an

6    interim distribution in 2012.  The parties at the table here --

7    whereupon -- looked at the Motion and said "let's try and get

8    the largest possible agreed base line basement allocation in

9    order to facilitate that interim distribution" and we've been

10   at conceptual agreement with respect to some 13.8 billion now

11   for quite some time just basically waiting on the Trustee and

12   this is not a complaint in any sense, it's just how complicated

13   and how many documents are involved waiting for further

14   clarification with respect to almost two billion of that.  So

15   there is no conceptual dispute, but we're not here signed off

16   on that number yet because even after four months of informal

17   very cooperative, very collaborative process, we don't have all

18   the documents yet to sign off on that.  But we trust and hope

19   that we'll be able to be in a position of 13.8 in the not so

20   distant future.  What is left here is -- what is left here --

21   and I referred to this last time as the sort of 80/20 rule --

22   80 percent conceptual agreement.  The 20 percent for which

23   there is disagreement is considerable.  In fact, it's so

24   considerable that there is a disagreement not -- it's not even

25   -- we're not even at the level yet where it's obvious that

08-13555-mg    Doc 27614    Filed 04/19/12    Entered 04/26/12 14:52:15    Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 16 of 34

Page 16

1    there is a disagreement about specific aspects of the

2    allocation.  We're at a disagreement about the entire process

3    at this point on that 20 percent and from the -- from LIBIE's

4    perspective, what that is, well if you filed at this point,

5    we're not saying defer allocation finally the very last thing

6    in the case.  It's just that the predicate for filing the

7    Motion when it was filed and trying to progress it the way it's

8    been progressed, at least according to the Motion was to

9    facilitate an interim distribution.  There is a significant --

10   there will be a significant -- pot of property for distribution

11   to creditors so we've asked the question "why now?" because, to

12   a certain extent, the folks at this table are scratching their

13   hair, why now, why August, what is -- so talismanic about

14   August that we need to proceed in August and, maybe it has

15   something to do with the interim distribution but it's still --

16   that's not what we're necessarily hearing.

17            Previously, we -- at the last hearing when we

18   questioned whether or not it was appropriate to proceed via

19   term we believe counsel indicated that, well, we really need

20   that extra $3.5 or $3.4 billion of property in order to

21   facilitate an interim distribution, because (1) there was

22   hundreds, if not thousands of CUSIPs involved in the interim

23   distribution.  I thought from those comments that the

24   suggestion was is that many of those CUSIPS were in the assets

25   that we were looking to defer and that would create a problem

Lehman Brothers Holdings, Inc. et al.

Page 17

1    for an interim distribution presumably, if the Trustee is

2    thinking about making an interim distribution in kind.  Upon

3    further clarification from the Trustee, it appears that the

4    assets that are in the sort of disputed category, are entirely

5    or almost entirely cash, so if there is a complication, and I

6    don't doubt that there is, this is probably going to be an

7    extraordinarily complicated undertaking for the Trustee to make

8    an interim distribution, but I don't believe it's made any more

9    complicated because there is $3.4 billion worth of cash not in

10   the pot right now.

11            Secondly, there was a suggestion more recently that,

12   well, you know, the distribution is going to be very small

13   without this 3.4.  Doing some, you know, math -- you know,

14   back-of-the-envelope math, it's hard to see that considering

15   the fact that there is already of this 13.8 billion to be

16   agreed that equals or exceeds the amount of allowed customer

17   claims in the whole case and the LIBIE 8.2, 8.3 wouldn't even

18   participate in this interim distribution on account of the fact

19   that our claims are under dispute.  So really, I think, the

20   guiding issue with respect to the quantum of an interim

21   distribution, really isn't even the size of the -- the customer

22   pool above 13.8 really at all, it's the size of the reserves

23   that could affect that and obviously, we looked at that, one of

24   the largest reserves in the case would need to be for LIBIE,

25   and we've made an offer to the Trustee, why don't we have a

Lehman Brothers Holdings, Inc. et al.

Page 18

1  bilateral discussion about reserves, about our own reserves so

2  we can potentially facilitate an interim distribution in your

3  case.  We would love for those -- discussions to be reciprocal,

4  because to a certain extent, while there is differences between

5  the UK proceeding and the U.S. proceeding, we are a little bit

6  mirror images of each other.  They want to make an interim

7  distribution this year, we want to make an interim distribution

8  this year.  What you would need to resolve -- reserve for LIBIE

9  can affect the quantum of that distribution, what LIBIE needs

10  to resolve for LBI in London can affect what that distribution

11  would look like and so, there are certainly ways of helping to

12  improve the distribution here and we're prepared to have those

13  discussions with the Trustee, because what we really want to

14  avoid is having, particularly in August, but frankly I think

15  it's from our perspective -- this is not a question of should

16  it be in August or should it be in September or should it be in

17  October, it's a question of should we have this hearing at all,

18  because right now, we've had an extraordinarily collaborative

19  and productive process.  We think that ought to continue,

20  because if you stop that process too early, you're going to

21  force people to fight where there may not be a fight.  Nobody

22  on this side of the table has told the Trustee that there is

23  actually an issue that we're convinced is going to be the

24  subject of an objection; however, if you say arbitrarily, we

25  need to have your final answer by August before there is more

08-13555-mg   Doc 27614   Filed 04/19/12   Entered 04/26/12 14:52:15   Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 19 of 34

Page 19

1     clarity in the size of the customer pool, you may well be

2     encouraging people to object when they otherwise wouldn't and -

3     - that's my -- from my client's principal concern here is -- is

4     that if this earlier than necessary, we would submit, process

5     induces objections that perhaps are meritorious, it's not the

6     Trustee that loses on that, although the Trustee would be, you

7     know, the person bringing the litigation, it would be the

8     customers that could lose on that and the customers don't want

9     to see this proceed.

10          The customers believe, or at least LIBIE and LBHI

11    believe, that we should continue this process, perhaps schedule

12    another status conference before Your Honor in a couple of

13    months to see if we've made some progress, once we can pivot

14    off of the 13.8 to focus on the balance, and to allow

15    principally LIBIE and LBI, to talk reciprocally about the size

16    of an appropriate reserve here, because frankly, if the goal

17    here is to make an interim distribution, having a hearing

18    scheduled for later is almost more risk to an interim

19    distribution than right now.

20          Right now, the hope and expectation is, is you can

21    have an order, an interim order, for 13.8 that would be

22    basically able to be entered on consent with the ability to --

23    and set that as a floor, if there is going to be litigation,

24    there is the risk of loss, there is the risk of appeal, there

25    is a risk of delay because we do honestly believe that August

08-13555-mg    Doc 27614    Filed 04/19/12    Entered 04/26/12 14:52:15    Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 20 of 34

Page 20

1    is unreasonably short and so, you're really putting at risk the

2    interim distribution by trying to make it the perfect interim

3    distribution.

4           And so, for all those reasons we would ask, not that

5    we have a conversation today about August versus September, but

6    really whether or not this should be proceeding at all.  We can

7    come back in June or July, continue this process that, I think,

8    all parties have -- are on the same page -- it has been a very

9    productive process and I would report to Your Honor if we've

10   made some progress and if people think at that point it's

11   appropriate to try and schedule something, then so be it, but

12   right now the idea of setting aside a week in August when the

13   parties can't even discuss what the -- what even -- it's not

14   even -- we're not even at a dispute yet about the bona fides of

15   the Motion, we're in a dispute about how to even proceed from

16   here and one last point, Your Honor, is that it's not even

17   clear that -- what we would even be litigating about, because

18   we understand that the Trustee is preparing to supplement this

19   Motion and change the basis for, or at least change the manner

20   in which the business mix test, which is one of the two

21   principal area of dispute legally, would be applied, so we

22   don't even know how the Trustee would be attempting to apply

23   that test so the idea that we would be talking today about

24   trying to set a hearing or set aside dates, to LIBIE, seems

25   very premature.

Lehman Brothers Holdings, Inc. et al.

1          THE COURT:   All right.  Thank you for that.  I don't

2     know if others wish to add anything to what has just been said.

3          MR. KRASNOW:   Your Honor, Richard Krasnow, Weil

4     Gotshal Manges, on behalf of the Debtors.

5          I think, the way Mr. Graulich articulated it, it's

6     two issues and the first is whether or not it would be

7     appropriate to defer what we hope will be the remaining issues

8     after we've been able to complete all of the requisite due

9     diligence of the 13.8, and we're not just there quite yet on

10    the 13.8, although we are there on most of it, is the first

11    issue and that is, should this just be deferred?  And then the

12    second issue is, if it's not going to be deferred, is August

13    appropriate?  And, I think, certainly as to the first issue, we

14    concur with what Mr. Graulich has said.  We think it would be a

15    lot easier for the parties to evaluate what their position will

16    be on the remaining issues, once there has been more clarity on

17    the theories behind those issues.  When there is a better

18    consensus as to what the customer claim is, it's a lot easier

19    to evaluate what position one is going to take on customer

20    property issues, when one does it in a non-abstract way and

21    unfortunately, because of primarily, although not completely,

22    but primarily the remaining disputes that exist with respect to

23    the LIBIE claims, because we do envision that we will be before

24    the Court in the not too distant future with respect to the

25    settlement in principle between ourselves and the Debtor, that

08-13555-mg   Doc 27614   Filed 04/19/12   Entered 04/26/12 14:52:15   Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 22 of 34

Page 22

1    until there is more clarity on that, this is somewhat of an

2    academic exercise.

3              And, so I think, that's the first issue and rather

4    than addressing our issues unless the Court wants me to about,

5    if we're going to go forward, is August appropriate, I think --

6    which we don't think it is -- and at the last hearing while

7    August was set as date, kind of in pencil, Your Honor may

8    recall that at that time, I didn't think that was realistic and

9    I continue to be of that view and I can get into details on

10   that, if Your Honor wants me to at this point.

11             THE COURT:   I don't think there is a need to get

12   into it again, but if there is something new you want to add,

13   that's fine.

14             MR. KRASNOW:   I -- The only point I would make, Your

15   Honor, is that it's taken us four months with respect to a

16   category of assets as to which we have conceptually said "gee,

17   by category, we should be there" and there has been absolute

18   cooperation and we're there for the most of it, but we're still

19   not there on the 13.8, and there has been no focus whatsoever

20   by any of the parties on the remaining issues.  And to suggest

21   that we could complete everything that would need to be done

22   for a trial in early August, if there is going to be -- if

23   there isn't going to be a general deferral -- there is no

24   resemblance in our view to reality and we've proffered

25   something to the Trustee's counsel, a proposal.  We have

08-13555-mg   Doc 27614   Filed 04/19/12   Entered 04/26/12 14:52:15   Main Document
Lehman Brothers Holdings, Inc. et al.
Pg 23 of 34

Page 23

1    indicated in that regard that we are more than willing to

2    discuss the proposed dates.  They have indicated to us that

3    they thought that our proposal would result in a trial in 2013,

4    that was not the objective, but the speed with which the

5    discovery could proceed in terms of our proposal was to a

6    certain extent premised on how long it would take for documents

7    to be produced because, while I agree with Mr. Wiltenburg that

8    we would certainly endeavor to continue the kind of informal

9    process that we have been undertaking with respect to the 13.8,

10   if there is going to be a trial, you got to overlay that with a

11   formal process to prepare for a trial and -- we're just not

12   there yet - and again, if Your Honor wants to go into the

13   details on what our proposal vs. their proposal, I'm happy to

14   defer to --

15           THE COURT:   I don't think I --

16           MR. KRASNOW:   Mr. Levine in that regard --

17           THE COURT:   I don't think there is any need for

18   that, although there may be a need for a chambers' conference.

19           MR. KRASNOW:   That -- there was a discussion amongst

20   the parties about -- that approach -- and, Your Honor, to

21   answer a question you asked of Mr. Wiltenburg about an expert

22   for the Court, it is premature -- I don't think I could say

23   "no", I think that while I wouldn't lose the Barclay's trial as

24   a template and --

25           THE COURT:   I wouldn't use that as a template for

Page 24

1    anything.

2            MR. KRASNOW:   I don't think this is anything like

3    that but to suggest today that this is going to be simple and

4    there really will be no factual issues, significant factual

5    issues that may be in dispute, might not, if we could look at

6    this, as I said, in the context of, you know, we're the

7    costumer claims, and compare that, but if we -- if we're not

8    going to defer it, to say that there isn't going to be

9    significant factual dispute when we haven't commenced formal or

10   informal discovery on some of these issues, is again, it's a

11   little premature, but there may be an advantage to the Court,

12   where there to be a court-appointed expert in that regard and I

13   think certain -- we, on behalf of the Debtors, will be prepared

14   to discuss that further with the Trustee, because it might help

15   facilitate a trial, if there is a trial on this and, Your Honor

16   again, it may well be that, as we get involved in both a formal

17   and an informal process here, once we have a better

18   understanding of the facts, we may well stand up before the

19   Court and say "we don't have an issue" or "we've narrowed the

20   issues substantially" or "we've collectively come up with a

21   different number that we think makes sense" so, there are a

22   whole bunch of alternatives here, none of which in our view are

23   achievable in the context of an early August trial.

24            Thank you, Your Honor.

25            THE COURT:   Okay.  Mr. Etkin?

Lehman Brothers Holdings, Inc. et al.

Page 25

1         MR. ETKIN:   Thank you, Your Honor.

2         THE COURT:   I just want to be clear that it's

3    permissible for you to be speaking to me at this point.

4         MR. ETKIN:   It is.

5         THE COURT:   Okay.

6         MR. ETKIN:   Thank you, Your Honor.  I don't want to

7    stand in the way of a chambers' conference, but I just -- the

8    record is a little incomplete -- for the record, Michael Etkin,

9    Lowenstein Sandler, on behalf of the various Liberty View

10   funds.

11        We are, I believe, we are, Your Honor, one of the

12   parties identified in the Agenda that -- where our -- our

13   objection deadline has been extended and we've -- haven't been

14   lying in the weeds, we've been discussing things with the

15   Trustee's office.  I just want to make it clear that the

16   Trustee has not shared any draft proposals with us, although we

17   twice requested being included in those discussions, those

18   requests have fallen on deaf ears, so to the extent that there

19   have been discussions among the parties, I think the record

20   should be clear as to who those parties are, it's not everyone

21   who has either spoken to the Trustee or filed objections in

22   connection with the Motion, perhaps the parties simply includes

23   the Trustee, LIBIE, and the Chapter 11 estates.  You know, I

24   don't know what the game plan is on the Trustee's part, maybe

25   if the Trustee believed he gained consensus with those parties,

1    then the balance of customers whether disputed or not who have

2    weighed in would be standing in front of the 60 mile/hour

3    train, having the necessity of facing consensus between the

4    various 600 pound gorillas in the case, but we have not --

5    there has been no proposal shared with us.  There have been no

6    discussions with us concerning a proposal despite our being --

7    despite our asking for that and, just quickly, Your Honor, in

8    hearing Mr. Graulich's presentation, from our perspective, it

9    does make conceptual sense to us, given the issues or

10   potentially, lack of issues in the case and we are a large

11   customer claimant, albeit disputed at this stage, but we see --

12   we see the wisdom in the approach that Mr. Graulich outlined,

13   but in terms of commenting on a proposal or a scheduling order,

14   we have nothing to comment on at this stage.

15            THE COURT:   Okay.  Is there anyone else who wants to

16   say anything?

17            This is -- Mr. Kobak, do you have any thoughts?

18            MR. KOBAK:   Yes, Your Honor, I just wanted to say a

19   couple of things.

20            We don't see this as an academic exercise in any

21   sense.  In addition to the objectors, there are approximately a

22   thousand claimants who do have an interest and are achieving

23   certainty, knowing what assets are in the customer pool, both

24   for interim distributions and for permanent distributions, when

25   we're in a position to make that.  I don't think we can just

Page 27

1    keep kicking this can, this issue, down the road.  I think, one

2    reason that we've been able to make progress on getting near to

3    agreeing on the 13.8 is because we have a Motion pending and

4    whether August is the date or September is the date, I don't

5    think is really the question, but I do think we need a con --

6    certain to get this Motion on the calendar, to get as many

7    issues resolved as possible.  I don't see why having it in a

8    somewhat litigation mode, which in a sense it's always been in

9    since it is a contested matter, doesn't mean that we can't

10   continue to have the kind of constructive dialogue where it's

11   appropriate that we have been having with the claimants.

12           I want to say about LIBIE that I don't know how long

13   it's going to take their resolve -- to resolve their claims.

14   Most of the other claims that are not affiliate claims have now

15   been resolved or are in the process of being resolved in this

16   case.  LIBIE's claim -- they talk about being $8.2 or $8.3

17   billion -- we all use that figure but it's important to note

18   that that was conditionally allowed and the claim could be

19   lower than that as well as higher, I just want to say that for

20   the record.  It will clearly be a very substantial claim, but

21   in any event, I -- we need a date certain -- I think, to put

22   this Motion on.  I think that's the way the parties are going

23   to make progress.  As to this suggestion about an independent -

24   - a court-appointed expert, frankly, that's not something we've

25   thought of before today so we'll certainly take it under

Page 28

```
 1    consideration, talk to the other parties, talk to SIPC about

 2    it, we just had not focused on that and it might well be a very

 3    constructive suggestion, if -- if we're at a point where we

 4    need it.

 5              Thank you, Your Honor.

 6              THE COURT:   Something more?

 7              MR. GRAULICH:   Your Honor, 30 -- just 30 seconds,

 8    Your Honor?

 9              THE COURT:   Sure.

10              MR. GRAULICH:   I just want to respectfully take

11    issue with just one thing Mr. Kobak just said, which is that,

12    perhaps it's been the fact that there has been a Motion pending

13    that is, you know, brought the people -- the parties --

14    together and that perhaps, setting a deadline will help us get

15    together faster.  I think it's actually quite the opposite.  It

16    was the fact that we were able to work together cooperatively

17    at -- at a pace that was appropriate to the magnitude of the

18    dispute and that was appropriate based upon everybody's experts

19    to -- and there's been a -- there has been a lot of work,

20    despite the fact that there hasn't been a single bit of formal

21    discovery -- a lot of work between lawyers, professionals, just

22    the professionals speaking to try and work cooperatively to

23    this, if particularly, if we're going to end up with a date

24    that, I think, is too close, I think, even though you can

25    always use the phone and the door is always open, it's going to
```

Lehman Brothers Holdings, Inc. et al.

Page 29

1    revert almost immediately to a litigation posture because, for

2    example, if we were to ask for a document now and there is a

3    dispute about whether or not we're entitled to that document,

4    we know that we'll have a informal process to speak with

5    counsel, maybe they can convince me that I don't need the

6    document, maybe they have a different document that would be

7    just as helpful and based upon that give-and-take, we don't

8    have any disputes.  Frankly, we've been -- LIBIE and the

9    Trustee -- have been discovering with respect to LIBIE's claim

10   for months now, many, many months.  And, we haven't come to

11   document Your Honor's view with respect to any discovery

12   disputes, not because their hasn't been periodic differences of

13   opinion --

14               THE COURT:   You're always welcome, you know --

15               MR. GRAULICH:   -- but because the schedule has

16   enough, given the joints, such that, you know, if we propound a

17   particular request or a particular request is propounded upon

18   us and there is a dispute, there is meet-and-confer process,

19   there is time in the schedule.  If -- and I think this goes --

20   if it's August, if it's September, if it's October, what you're

21   going to be doing is changing this very, very cooperative,

22   productive process to one where everybody's got to rush to the

23   Court if there is a five second delay in distributing a

24   document and, I don't think that's helpful.  I think this has

25   actually been, for as long as I've been in this case at least,

Lehman Brothers Holdings, Inc. et al.

Page 30

1    the most cooperative point in LBI's history between the various

2    LIB -- Lehman estates, so I would hate to see a wedge sort of

3    forced in here unnecessarily.

4          Again, if there is a valid reason why this has to

5    take place other than it's better for it to be done than not

6    done, then so be it, but we haven't heard -- heard a response

7    that we're convinced of and we -- I know there is a lot of

8    small creditors here and we hope that they can be taken care of

9    in a robust interim distribution.  The large creditors are not

10   sold that this needs to take place at this time.

11         THE COURT:   Thank you.

12         Okay, this is a problem that's difficult to resolve

13   in this setting.  I think a chambers' conference may be in

14   order and I'm going to propose that the principal players --

15   and for these purposes, I'm going to let the principal players

16   identify themselves -- and that would be the Trustee, LIBIE,

17   the Lehman estates plus, to the extent there are any active

18   litigants in this process -- some others -- through counsel to

19   come up with some dates over the next several weeks.  One, we

20   can get together and have a "sleeves-rolled-up" session to

21   discuss some of the things we've talked about at least,

22   preliminarily today -- were things that makes this somewhat

23   unusual for me in terms of a scheduling decision is that I have

24   a Trustee who has fiduciary duties to customers plus I have

25   customers and they are not seeing eye to eye as to what is in

1   the best interest of the customers.  That's a conundrum and I

2   don't have a record on the basis of which to determine whose

3   assessment of this murky reality is correct.  I'm not sure I am

4   going to have any better sense of that in the context of a

5   chambers' conference but it may be that we can talk somewhat

6   more creatively about the problem.  We can talk about dates

7   that actually do make sense to the extent that August does not

8   make sense.  We can consider whether holding the August date

9   for some purpose may be sensible, and we can also consider

10  whether the suggestion I've made about the possible value of a

11  court expert actually makes sense in the context of the dispute

12  and just because I've said it doesn't mean I have a considered

13  view on that subject.  It was just a point for consideration.

14          Let me have some ideas from you as to what's most

15  convenient over the next several weeks and we'll try to set

16  something up and you can coordinate with a chambers' staff.

17          MR. GRAULICH:   Your Honor, just -- Timothy Graulich

18  for the record -- just a thought, I don't know that I've spoken

19  with anybody about this, because we just -- we were discussing

20  just this morning the possibility of a chambers' conference, I

21  just throw it out as a possibility and we can speak amongst

22  ourselves as to whether or not it may be helpful to Your Honor,

23  for folks to maybe submit a letter in advance of the chambers'

24  conference sort of laying out some of these issues, just so

25  there is something in writing for Your Honor to consider --

Lehman Brothers Holdings, Inc. et al.

Page 32

1          THE COURT:   Having such and foremost admissions as

2     the parties think would be useful in making the session more

3     productive would be welcome.

4          MR. GRAULICH:  -- Okay.  Maybe, it may not be a great

5     idea or it may be a great idea, but we'll discuss it.

6          THE COURT:   It's just more work for you.

7          MR. GRAULICH:  More work for Mr. Millerman.

8          THE COURT:   Okay, we'll -- fine.  It's more work for

9     somebody.  I'll see you next time.  Thank you.

10

11          (Whereupon these proceedings were concluded at 10:51 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                           RULINGS

4                                              Page        Line

5    Final Fee Application of the Examiner and    6          13

6    Jenner & Block LLP for Allowance of

7    Compensation - approved

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1

2                          C E R T I F I C A T I O N

3

4       I, Petra Garthwait, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       Petra                    Digitally signed by Petra
                                  Garthwait
                                  DN: cn=Petra Garthwait, o, ou,
8       Garthwait                email=digital1@veritext.com,
                                  c=US
9                                 Date: 2012.04.19 17:24:19 -04'00'
        _____

10      PETRA GARTHWAIT

11      Veritext

12      200 Old Country Road

13      Suite 580

14      Mineola, NY 11501

15

16

17      Date:  April 19, 2012

18

19

20

21

22

23

24

25