Hearing Date and Time: May 16, 2012 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                         :
In re                                    :   Chapter 11
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :   Case No. 08-13555 (JMP)
                                         :
                   Debtors.              :   (Jointly Administered)
                                         :
------------------------------------------------------------------x

**OBJECTION TO MOTION OF THE AGOSTINI PARTIES PURSUANT TO**
**11 U.S.C. §§ 105 AND 362 OF THE BANKRUPTCY CODE FOR RELIEF FROM**
**THE AUTOMATIC STAY AND FOR AN ORDER DIRECTING LEHMAN BROTHERS**
**OTC DERIVATIVES, INC. TO RELEASE AND RETURN NONESTATE PROPERTY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator for Lehman Brothers OTC Derivatives, Inc. ("LOTC") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, dated December 5, 2011 (the "Plan"), submits this response to the motion filed by Edward J. Agostini Living Trust Dated May 12, 2000, Sylvia Agostini Living Trust Dated May 12, 2000, and Edward J. Agostini and Sylvia Agostini as Joint Tenants with Rights of Survivorship (collectively, the "Agostini Parties"), for relief from the automatic stay and an order directing LOTC to release and return certain Class B common shares of United Parcel Services, Inc. and the proceeds thereof (the "Motion") [ECF No. 24769], and respectfully represents as follows:

US_ACTIVE:\43996240\06\58399.0011

**Background**

1. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its affiliates commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LOTC commenced a voluntary case under chapter 11 of the Bankruptcy Code on October 3, 2008 (the "Commencement Date").

2. Each of the Agostini Parties was a party to a forward derivatives contract with LOTC (collectively, the "Forward Contracts") related to certain Class B common shares of United Parcel Services, Inc. (the "UPS Shares"). The Forward Contracts required the Agostini Parties to deliver UPS Shares to LOTC on or about May 2, 2011 (the "Valuation Date"), and specified that the amount of UPS Shares to be delivered depended upon, among other things, the value of the UPS Shares on the Valuation Date.

3. To secure their obligations under the Forward Contracts, the Agostini Parties pledged 50,000 UPS Shares to LOTC as collateral on or about May 7, 2007. Prior to the Commencement Date, LOTC placed the 50,000 UPS Shares into a collateral account at Lehman Brothers Inc. ("LBI") in accordance with LOTC's rights under the Forward Contracts. *See* ¶ 13(g) of the Credit Support Annexes attached to the Declaration of Edward J. Agostini (authorizing LOTC's custodian to hold the UPS Shares).

4. Under the terms of the Forward Contracts, the final price to be paid by LOTC for the UPS Shares was to be determined by, among other things, a formula based on the closing price of the UPS Shares on the Valuation Date. Because the default method of "physical settlement" was applicable, no money (other than the UPS Dividends as defined below) needed to change hands on the Valuation Date. The Agostini Parties allege that, applying the "physical settlement" method, LOTC was required to return 3,592 UPS Shares to the Agostini Parties and

was entitled to keep the remaining shares for itself. Motion, ¶ 10. LOTC disputes this allegation and, for the reasons described below, asserts that it would be premature to value any amounts owed under the Forward Contracts at this time.

5. LBI is the subject of a proceeding under the Securities Investor Protection Act of 1970), which is pending before this Court (the "SIPA Proceeding"). James W. Giddens (the "SIPA Trustee") acts as trustee for the liquidation of LBI. LOTC has filed a customer claim against LBI in the SIPA Proceeding, and a portion of such claim relates to the UPS Shares that LOTC placed into the collateral account at LBI.[1] No distribution has been made by the SIPA Trustee to LOTC on account of LOTC's claim against LBI. Accordingly, to the best of the Plan Administrator's knowledge, the UPS Shares currently are held by the SIPA Trustee. LOTC does not have possession of the UPS Shares.

6. Prior to the Commencement Date, dividends attributable to the UPS Shares were paid directly into the collateral account at LBI, and LBI distributed a certain portion of these dividends to the Agostini Parties in accordance with the terms of the Forward Contracts. Upon information and belief, LBI continued to receive dividend payments on the UPS Shares after the Commencement Date, and, presumably, LBI still holds these dividends. LOTC does not have possession of any dividends attributable to the UPS Shares, (the "UPS Dividends"), other than LOTC's share of dividends, if any, that might have been paid by LBI to LOTC prior to the Commencement Date in accordance with the terms of the Forward Contracts.

7. Counsel for the Agostini Parties has been advised that LOTC does not possess the UPS Shares or the UPS Dividends. Nevertheless, the Motion requests that the Court grant the Agostini Parties relief from the automatic stay and order LOTC to deliver 3,592 UPS

---

[1] To the best of LBHI' knowledge, the Agostini Parties have not filed a customer claim against LBI in the SIPA Proceeding on account of the UPS Shares.

Shares that it does not hold.  Likewise, the Motion requests that the Court order LOTC to turn over $209,687.79 in cash (plus interest), which represents the UPS Dividends, notwithstanding the fact that such proceeds are not held by LOTC.

## The Motion Should be Denied

8.      The Court should deny the relief requested in the Motion because (i) determining the parties' entitlement to the UPS Shares and the UPS Dividends and issuing an order in accordance with such determination would be premature and a waste of the resources of the Court and LOTC, (ii) the Agostini Parties are not entitled to relief from the automatic stay pursuant to section 362(d)(2), (iii) the Agostini Parties are not entitled to relief from the automatic stay pursuant to section 362(d)(1), and (iv) the Motion is procedurally deficient.

**A.      Granting the Relief Requested in the Motion Would be Premature And a Waste of the Resources of the Court and LOTC.**

9.      Granting relief from the automatic stay would be premature because LBI – and not LOTC – possesses the UPS Shares and the UPS Dividends.  Even if the automatic stay were lifted, there would be no UPS Shares or UPS Dividends for LOTC to return to the Agostini Parties.

10.     Moreover, it would be a waste of the resources of the Court and LOTC to litigate the parties' entitlement to the UPS Shares and the UPS Dividends when such property may or may not be returned to the LOTC estate.  Indeed, there is considerable uncertainty as to what, if anything, the SIPA Trustee will distribute to LOTC on account of LOTC's claim for the UPS Shares.  For example, it is unclear whether the SIPA Trustee will return all of, or merely a portion of, the UPS Shares and the UPS Dividends.  Likewise, it is unclear whether the SIPA Trustee will distribute all cash, all securities, or some combination of cash and securities to LOTC on account of LOTC's claim.  Until LBI makes a distribution to LOTC, any analysis of

the parties' rights to the UPS Shares and/or the UPS Dividends would be a mere academic exercise.

**B.    The Agostini Parties Are Not Entitled to Relief From the Automatic Stay Pursuant to Section 362(d)(2) Because This Section Does Not Apply to the Present Dispute.**

11.    Section 362 of the Bankruptcy Code provides, in relevant part, that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . ." 11 U.S.C. § 362(a)(3).

12.    Section 362(d) of the Bankruptcy Code sets forth the circumstances under which parties in interest may be entitled to relief from the automatic stay. While parties in interest who are not secured creditors generally avail themselves of section 362(d)(1), which provides for relief from the automatic stay for "cause," the Motion specifically seeks relief under section 362(d)(2), which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>    (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>        (A) the debtor does not have an equity in such property; and
>        (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d)(2).

13.    In accordance with its plain language, section 362(d)(2) does not apply to the instant dispute. Section 362(d)(2) only applies when the movant is seeking relief from "a stay of an act *against property*." 11 U.S.C.§ 362(d)(2) (emphasis added). In this case, there is no property against which the Agostini Parties may act. LOTC possesses neither the UPS Shares

nor the UPS Dividends, and such property is not part of the LOTC estate.[2] Accordingly, under the plain language of section 362(d)(2), the Agostini Parties are not entitled to relief from the automatic stay pursuant to that section. *See In re Cicale,* 2007 WL 1893301, No. 05-14462, at *2 (Bankr. S.D.N.Y. June 29, 2007) (holding that 362(d)(2) was not applicable because the real property at issue was not part of the debtor's estate).

14.     Furthermore, both case law and legislative history suggest that section 362(d)(2) does not apply to the present dispute because section 362(d)(2) is only intended to provide a basis for stay relief where a movant is attempting to enforce a security interest in a debtor's property, such as by foreclosing on real property. *See Lawrence v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), No. 09-50026, 2010 WL 4630327, at *3 (S.D.N.Y. 2010) (holding that because movant's ERISA action was not an action to enforce a secured interest in real property, section 362(d)(2) did not apply); *In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 2583647, at *3 (Bankr. S.D.N.Y. 2006) (noting that an ERISA class action likely did not qualify as an action "against property" given that § 362(d)(2) "is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure"); S. Rep. No. 95-589, at 5 (1978) ("In cases where the single asset of the debtor is real property, the court shall grant relief from the stay if the debtor has no equity in the collateral, thereby allowing the creditor to proceed with his foreclosure."); *see also In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 312 (Bankr. S.D.N.Y. 2001) (granting relief from stay under section 362(d)(2) to permit mortgage holder to foreclose on mortgage encumbering warehouse owned by debtor).

---

[2] The Motion's arguments concerning section 541 and 361 of the Bankruptcy Code are irrelevant to the present dispute because the LOTC estate never had possession of the UPS Shares.

15.     The Agostini Parties are not attempting to enforce a security interest in the UPS Shares.  Indeed, the Agostini Parties never had a security interest in the UPS Shares because the Agostini Parties pledged such shares to LOTC as collateral and granted LOTC a security interest in them.  Because the Motion is not seeking relief from the automatic stay to enforce a secured interest in property, the great weight of authority in this district provides that section 362(d)(2) is inapplicable.  *See, e.g.*, *Lawrence*, 2010 WL 4630327, at *3; *Northwest Airlines*, 2006 WL 2583647, at *3; *see also Dale Funding Corp. v. Garner (In re Garner)*, 18 B.R. 369, 370 (S.D.N.Y. 1982).  The Agostini Parties cite no authority to the contrary.  Accordingly, the Agostini Parties' request for relief from the stay pursuant to section 362(d)(2) should be denied.

### C.     The Agostini Parties Have Not Shown That Cause Exists to Modify the Automatic Stay Pursuant to Section 362(d)(1).

16.     The Agostini Parties did not move for relief from the automatic stay pursuant to section 362(d)(1).  Nevertheless, even if the Agostini Parties had raised section 362(d)(1), they would not have been entitled to relief because the Agostini Parties have not – and cannot – demonstrate that sufficient "cause" exists to modify the automatic stay.

17.     Courts will only modify or lift the automatic stay pursuant to section 362(d)(1) upon a showing of "cause."  11 U.S.C. 362(d)(1); *Sonnax Industries, Inc. v. Tri Component Products Corp.* (*In re Sonnax Industries, Inc.*), 907 F.2d 1280 (2d Cir. 2001); *In re Lynn Lord,* 325 B.R. 121, 129 (Bankr. S.D.N.Y. 2005).  The Second Circuit established a set of twelve factors in *Sonnax* (the "*Sonnax* Factors") that have become the standard by which courts in the Second Circuit consider whether to modify the automatic stay.[3]  *In re Lehman Bros.*

---

[3] The *Sonnax* Factors are:
    (1) whether relief would result in a partial or complete resolution of the issues;
    (2) lack of any connection with or interference with the bankruptcy case;
    (3) whether the other proceeding involves the debtor as a fiduciary;

*Holdings Inc.,* 435 B.R. 122, 138 (S.D.N.Y. 2010), *aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.,* 402 F. App'x 634 (2d Cir. 2010) ("*Sonnax* . . . is routinely referenced as the leading relief from stay precedent in this Circuit."); *see also In re Salander O'Reilly Galleries,* 453 B.R. 106, 119 (Bankr. S.D.NY. 2011).

18.   Although the *Sonnax* Court outlined twelve factors, courts need not consider each factor, but may consider only the factors "that *are relevant* to the particular case." *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.),* 183 B.R. 682, 688 (S.D.N.Y. 1994). In fact, the *Sonnax* Court itself considered only four of the twelve factors as relevant in that case. *Sonnax,* 907 F.2d at 1286. Additionally, courts need not assign equal weight to each factor, and have discretion in weighing the factors against one another. *In re RCM Global Long Term Captial Appreciation Fund, Ltd.,* 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("A court should apply these factors on a case-by-case basis . . . assigning to each factor whatever weight the court feels is appropriate.").

19.   The Second Circuit has held that the party seeking to lift or modify the automatic stay bears the initial burden to show cause as to why the stay should be modified or lifted and "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."

---

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

*Sonnax*, 907 F.2d at 1285. Because the Agostini Parties have not satisfied, or even addressed, their burden of demonstrating that cause exists to lift the stay, the Motion should be denied. Furthermore, even if the Agostini Parties had attempted to demonstrate, pursuant to section 362(d)(2), that cause exists for relief from the stay, the Agostini Parties would not be entitled to such relief because only four *Sonnax* Factors apply to the instant dispute, and all four weigh in favor of LOTC.

20.  The first *Sonnax* Factor concerns whether granting a modification of the stay would result in a partial or complete resolution of the issues. In this case, a modification of the stay would not resolve any issues because LOTC and the Agostini Parties would still have to litigate their entitlements to the UPS Shares and the UPS Dividends. Furthermore, such litigation would result, at best, only in a partial resolution of the issues because the parties' entitlements to the UPS Shares and the UPS Dividends is a three-party dispute. To fully resolve the issues, a court would still have to determine the rights of LOTC and the Agostini Parties vis-à-vis LBI. In addition, lifting the stay would not result in a resolution of the issues because LOTC has objected to the claims of the Agostini Parties on the basis that they were filed late. Thus, even if the Court were to determine that the Forward Contracts obligate LOTC to turn over the UPS Shares if and when they are distributed to LOTC, the Agostini Parties still might not be entitled to a recovery from LOTC as a procedural matter.

21.  The second *Sonnax* Factor, lack of any connection with or interference with the bankruptcy case, also weighs against providing the Agostini Parties with relief from the automatic stay. At best, allowing the Agostini Parties to litigate their entitlement to the UPS Shares before such shares are returned to LOTC is a waste of the resources of the Court and LOTC. At worst, granting relief from the automatic stay is inconsistent with this Court's Order

Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against the Debtors (the "Procedures Order") [ECF No. 8474]. Until LBI returns the UPS Shares, the Agostini Parties have, at best, a mere unsecured claim for breach of contract. Granting relief from the automatic stay would allow the Agostini Parties to prosecute their unsecured claim outside the ordinary claims administration process.

22. Such a result also is inconsistent with the Plan, which states that the Plan Administrator shall have the right to "control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors…." Plan, § 6.1(b)(i). Likewise, allowing the Agostini Parties to litigate their unsecured claims would violate the Procedures Order, which states, in relevant part, that "upon service of an objection… each Claimant… shall be enjoined from commencing or continuing any action or proceeding, or engaging in any discovery, in any manner or any place, including this Court, seeking to establish, liquidate, collect on, or otherwise enforce any Contested Claims identified in such objection other than (i) through the Claim Hearing Procedures and the ADR Procedures…." Accordingly, granting relief from the automatic stay has potential to disrupt the entire claims reconciliation process by calling into doubt the effectiveness of the Procedures Order and section 6.1(b)(i) of the Plan.

23. The tenth *Sonnax* Factor, which concerns the interests of judicial economy, also weighs in favor of LOTC, for the reasons discussed above in Section A.

24. Finally, the twelfth *Sonnax* factor, which concerns the balance of harms, also weighs in favor of denying the relief from the automatic stay. The Agostini Parties will not be harmed if the Court does not grant relief from the automatic stay because the Agostini Parties will not be able to recover the UPS Shares from LOTC until the SIPA Trustee distributes such

shares to LOTC. In other words, even if the stay is lifted and the Agostini Parties are able to prove their entitlement to the 3,592 UPS Shares, the Agostini Parties will not be able to collect such shares unless and until they are distributed to LOTC. If and when the UPS Shares are distributed to LOTC, the Agostini Parties will have the same substantive rights under the Forward Contracts as they do now, and the Agostini Parties will be able to pursue those rights at that time. However, modifying the automatic stay at this time, and allowing the Agostini Parties to litigate their entitlement to property that may or may not be returned to the LOTC estate, would harm all creditors by wasting estate resources.

25. In sum, the Agostini Parties have not satisfied, or even addressed, their burden to demonstrate that cause exists to lift the stay. *See* 11 U.S.C. § 362(d)(1). Indeed, the Motion does not reference any of the *Sonnax* Factors. Because the Agostini Parties have not satisfied their burden of establishing "cause" under section 362(d)(1), the Motion should be denied. *See Sonnax*, 907 F.2d at 1285 ("If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

      **D.**    **The Motion is Procedurally Deficient.**

26. The Agostini Parties' request for an order directing LOTC to deliver 3,592 UPS Shares and $209,687.79 in cash (plus interest) is procedurally improper because, pursuant to rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), an effort to recover money or property from LOTC must be sought in an adversary proceeding.[4] *See In re MF Global Holdings Ltd.*, No. 11-15059, 2012 WL 734175, at *2 (Bankr. S.D.N.Y. 2012)

---

[4] Bankruptcy Rule 7001 provides:
    An adversary proceeding is governed by the rules of this Part. The following are adversary proceedings:
        (1) a proceeding to recover money or property . . . .
FED. R. BANKR. P. 7001(1).

(denying a motion that sought immediate payment from the debtor because the movant failed to initiate an adversary proceeding and thus "the relief sought in the Motion [was] not properly before the Court."); *In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988) (denying movant's application for an Order to Show Cause because, *inter alia*, "the turnover and recovery of assets sought in the Order to Show Cause [should have been] brought pursuant to Bankruptcy Rule 7001 in an adversary proceeding…."); *see also In re Perkins,* 902 F.2d 1254, 1258 (7th Cir. 1990) ("A turnover proceeding commenced by motion rather than by complaint will be dismissed; and a turnover order entered in an action commenced by motion will be vacated.") (internal citations omitted).

27.     Bankruptcy Rule 7001 protects important interests of LOTC and other parties in interest. Not only does Bankruptcy Rule 7001 specify the types of actions that must be brought by adversary proceeding, but it also requires adversary proceedings to be governed by the rules of Part VII of the Bankruptcy Rules. Part VII of the Bankruptcy Rules provides procedural safeguards to ensure that parties have a fair opportunity to marshal evidence in support of their own arguments and, if necessary, conduct discovery with respect to their opponent's evidence. This process provides parties with an opportunity to assess the relative merits of their respective arguments and is thought to promote fairness and encourage settlement.

28.     Resolution of the parties' entitlement to the UPS Shares and the UPS Dividends likely will require the development of a significant factual record. Indeed, valuing the amounts owed under the Forward Contracts in accordance with the terms of the underlying documents is a highly technical matter for which the testimony of experts may be required. Accordingly, the Agostini Parties should not be permitted to circumvent Bankruptcy Rule 7001 by asserting claims that should be the subject of adversary proceedings as appendages to a

motion for relief from the automatic stay. *See Perkins*, 902 F.2d at 1258; *MF Global*, 2012 WL 734175 at *2.

WHEREFORE LBHI, as Plan Administrator for LOTC, respectfully requests that the Court deny the Motion and grant such other and further relief as is just.

Dated:   May 9, 2012
         New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates