HEARING DATE AND TIME: June 28, 2012 at 10:00 AM (Eastern Time)
RESPONSE DEADLINE: June 14, 2012 at 4:00 PM (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
In re                                            :    Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,           :    08-13555 (JMP)
                                                 :
                            Debtors.             :    (Jointly Administered)
-----------------------------------------------------------------x
```

## NOTICE OF HEARING ON PLAN ADMINISTRATOR'S OBJECTION TO CLAIM FILED BY MIDDLE MOUNTAIN 156, LLC

**PLEASE TAKE NOTICE** that on May 14, 2012, Lehman Brothers Holdings

Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above referenced chapter

11 cases, filed its objection to the claim of Middle Mountain 156, LLC (the "Middle Mountain

Objection"), and that a hearing (the "Hearing") to consider the Middle Mountain Objection will

be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601

of the United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, New York, New York 10004, on **June 28, 2012 at 10:00 AM (prevailing Eastern

Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Middle

Mountain Objection must be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy

Court (a) electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, upon (i)

the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York

10004, Courtroom 601; (ii) attorneys for the Plan Administrator, Weil, Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153 (Attn: Jacqueline Marcus, Esq.); and (iii) the

Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York,

New York 10004 (Attn: Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.), so as to be so

filed and received by no later than **June 14, 2012 at 4:00 PM (prevailing Eastern Time)** (the

"Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Middle Mountain Objection, the Plan Administrator may, on or after

the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the

proposed order annexed to the Middle Mountain Objection, which order may be entered with no

further notice or opportunity to be heard offered to any party.

Dated: May 14, 2012
      New York, New York

            /s/ Jacqueline Marcus
            Jacqueline Marcus

            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York 10153
            Telephone: (212) 310-8000
            Facsimile: (212) 310-8007

            Attorneys for Lehman Brothers Holdings Inc.
            and Certain of Its Affiliates

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

------------------------------------------------------------------x

## PLAN ADMINISTRATOR'S OBJECTION
## TO CLAIM FILED BY MIDDLE MOUNTAIN 156, LLC

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the debtors in the above referenced chapter 11 cases, respectfully represents as follows:

### Relief Requested

        1.    The Plan Administrator files this objection to claim pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking to disallow and expunge a claim filed by Middle Mountain 156, LLC ("Middle Mountain") on February 23, 2009 [Claim No. 2974] (the "Middle Mountain Claim"). As discussed below in greater detail, the Middle Mountain Claim arises out of a real estate financing transaction pursuant to which LBHI

1

agreed to lend Middle Mountain approximately $44 million. Middle Mountain subsequently

defaulted on its repayment obligations under the loan and, in connection with a forbearance

agreement, waived any and all claims it may have had against LBHI in connection with the loan.

In an action brought by LBHI's successor in interest in the loan, the District Court (as defined

below) found that the waivers contained in the forbearance agreement were valid and that Middle

Mountain's principals, as guarantors of Middle Mountain's obligations under the loan, were

therefore barred from asserting affirmative defenses against LBHI that were based on LBHI's

alleged default under the loan. As the issues underlying the Middle Mountain Claim – the

enforceability of the forbearance agreement and LBHI's liability for alleged breaches of the loan

– were already litigated and decided in the District Court, Middle Mountain is barred by the

doctrine of collateral estoppel from re-litigating them in connection with the Middle Mountain

Claim. Further, even if the Middle Mountain Claim is not barred by the doctrine of collateral

estoppel, this Court should find that Middle Mountain waived any and all of its claims against

LBHI in the forbearance agreement and, accordingly, that Middle Mountain is barred from

asserting such waived claims under the guise of the Middle Mountain Claim. The Plan

Administrator, therefore, requests that the Middle Mountain Claim be disallowed and expunged

with prejudice.

## Jurisdiction

2.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334 and Article 14(c) of the Plan. This is a core proceeding pursuant to 28 U.S.C.

§ 157(b).

## Background

3.       Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

2

this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to Bankruptcy Rule 1015(b).

4.      On December 6, 2011, the Court entered the order confirming the Plan

[ECF No. 23023].  The Plan became effective on March 6, 2012.

### Facts Relevant to the Middle Mountain Claim

5.      On or about July 13, 2006, Middle Mountain and LBHI entered into a

transaction pursuant to which LBHI agreed to lend, and Middle Mountain agreed to borrow,

approximately $44 million (the "Loan").  The Loan is evidenced by a loan agreement, dated as of

July 13, 2006 (the "Loan Agreement") and a promissory note, dated as of July 13, 2006 (the

"Promissory Note," and together with the Loan Agreement, the "Loan Documents").[1]  The

Proceeds of the Loan were used by Middle Mountain to refinance certain real estate-related debt.

6.      In connection with the Loan, Nicholas W. Bonanno, Jr. ("Mr. Bonanno"),

Rita Bonanno ("Ms. Bonanno"), Allen D. Jenkins ("Mr. Jenkins"), and Tamara R. Jenkins ("Ms.

Jenkins" together with Mr. Bonanno, Ms. Bonanno and Mr. Jenkins, the "Guarantors") executed

that certain Guarantor Full Repayment Guaranty, dated as of July 13, 2006 (the "Guarantee"),

pursuant to which each of the Guarantors agreed, jointly and severally and absolutely and

unconditionally, to guarantee to LBHI the prompt and unconditional payment of Middle

Mountain's obligations under the Loan.[2]

7.      Middle Mountain defaulted on its repayment obligations to LBHI when

the Loan matured on August 1, 2007.  Through counsel, LBHI, Middle Mountain and the

---

[1] Copies of the Loan Agreement and the Promissory Note are attached hereto as Exhibits A and B, respectively.

[2] A copy of the Guarantee is attached hereto as Exhibit C.

US_ACTIVE:\43927602\04\58399.0003

Guarantors subsequently entered into negotiations regarding the payment or restructuring of the

Loan and, on or about April 16, 2008, LBHI, Middle Mountain, the Guarantors and certain other

parties entered into a forbearance agreement (the "Forbearance Agreement").[3]

        8.     The Forbearance Agreement provided that, among other things, LBHI

would not seek to impose personal liability on any of the Guarantors unless and until the

occurrence of a Termination Event (as such term is defined in section 6.01 of the Forbearance

Agreement).  One of the enumerated examples of a Termination Event was the failure of the

Loan to be paid in full or restructured prior to May 15, 2008 (the "Termination Date").

        9.     The Forbearance Agreement also provided for the waiver and release, by

both Middle Mountain and the Guarantors, of:

> any all debts . . . liabilities, obligations . . . damages . . . defenses, setoffs, actions,
> claims, demands, and causes of action of any nature whatsoever, whether at law
> of in equity, whether known or unknown, either now accrued or hereafter
> maturing, which [Middle Mountain and the Guarantors] now have or hereafter
> can, shall, or may have by reason of any matter, cause or thing from the beginning
> of the world to and including the Effective Date of this Agreement, arising out of
> or relating to (a) the Loan, including, but not limited to, the administration or
> funding thereof, (b) the Loan Documents or the indebtedness evidenced and
> secured thereby, (c) the acquisition, ownership, development, financing, and/or
> operation of any Property or any part thereof, and (d) any other agreement or
> transaction between [Middle Mountain and the Guarantors] and [LBHI]; and
> [Middle Mountain and the Guarantors], jointly and severally . . . hereby covenant
> and agree never to institute or cause to be instituted or continue prosecution of
> any suit or other form of action or proceeding of any kind or nature whatsoever
> against [LBHI] by reason of or in connection with any of the foregoing matters,
> claims, or causes of action.

Forbearance Agreement, §5.01.

        10.    The Forbearance Agreement also included a merger and integration clause

in which Middle Mountain and the Guarantors agreed that "no representations or warranties have

been made by or on behalf of [LBHI], or relied upon" by Middle Mountain and the Guarantors

---

[3] A copy of the Forbearance Agreement is attached hereto as Exhibit D.

US_ACTIVE:\43927602\04\58399.0003

and that Middle Mountain and the Guarantors entered into the Forbearance Agreement without duress or fraud.  Forbearance Agreement, §7.06.

11.    Attached as Exhibit F to the Forbearance Agreement is a chart showing the corporate structure of Middle Mountain, which is member managed.  According to this chart, an entity called Middle Mountain 39, LLC holds 99% of the membership interest in Middle Mountain and the remaining 1% is held by an entity called Allen D. Jenkins & Associates LLC. Mr. Bonanno is the manager of Middle Mountain 39, LLC, an entity whose membership interests are indirectly held almost exclusively (98%) by a trust that is controlled by the Banannos for the benefit of themselves and certain third parties.  Mr. and Ms. Jenkins were the sole members of Allen D. Jenkins & Associates LLC.  *See* Forbearance Agreement, Exhibit F.

12.    Middle Mountain failed to pay in full or restructure the Loan prior to the Termination Date.  As of May 19, 2008, the total amount due to LBHI, excluding attorneys fees and other expenses, was approximately $48.2 million.  On that same date, LBHI assigned its interests in the Loan Documents to its wholly-owned, indirect subsidiary MM Arizona Holdings LLC ("MMAZ").  On or about June 11, 2008, MMAZ filed a complaint in the United States District Court for the Southern District of New York (the "District Court") seeking to enforce the Guarantee (the "Guarantee Litigation").  Each of the Guarantors was named as a defendant in the Guarantee Litigation.[4]

13.    On August 27, 2008, the Guarantors filed their First Amended Answer and Counterclaims (the "First Amended Answer").[5]  The First Amended Answer included, among others, the following affirmative defenses to MMAZ's claims:

---

[4] Mr. Jenkins, on behalf of the estate of decedent Ms. Jenkins, was substituted for Ms. Jenkins, in her individual capacity, in the Complaint.

[5] A copy of the First Amended Answer is attached hereto as Exhibit E.

US_ACTIVE:\43927602\04\58399.0003

- LBHI breached the Loan Agreement when it (i) refused to release certain funds due under the Loan Documents, (ii) deliberately miscalculated interest and reserves, (iii) failed to provide an accounting, (iv) interfered with a condemnation dispute between Middle Mountain and the Arizona Department of Transportation ("ADOT"), and (v) interfered with a mediation between Middle Mountain and ADOT. First Amended Answer, ¶5.

- The Forbearance Agreement is void and unenforceable because the Guarantors were induced to enter into it by LBHI's fraudulent conduct. First Amended Answer, ¶¶10-11.

14.    The First Amended Answer also included, among others, the following counterclaims:

- LBHI entered into the Loan Documents and the Guarantee with the intention of dishonoring its obligations thereunder for the purpose of inducing a default by Middle Mountain and, thereby, acquiring the Property through a foreclosure.   In furtherance thereof, LBHI (i) deliberately refused to provide Middle Mountain with the funds to finance the permitting and construction activities necessary for the development and resale of the Property, and (ii) interfered in a condemnation action (and related mediation) between Middle Mountain and ADOT. As a result of LBHI's allegedly wrongful acts, the Guarantors sought either to void the Loan Documents or a money judgment in an amount equal to the lost profits Middle Mountain would have received had the Property been developed successfully. First Amended Answer, ¶¶65-75.

- If the District Court found that the Loan Documents and the Guarantee were enforceable, LBHI breached the Loan Agreement before any default by Middle Mountain by (i) refusing to release funds necessary to the development of the Property, (ii) miscalculating interest due under the Loan, (iii) failing to provide an accounting, and (iv) interfering in a condemnation action (and related mediation) between Middle Mountain and ADOT. As a result of LBHI's alleged breaches, the Guarantors sought a ruling that Middle Mountain's defaults under the Loan Documents were excused or a money judgment in an amount equal to the lost profits Middle Mountain would have received had the Property been developed successfully. First Amended Answer, ¶¶76-79.

15.    On September 16, 2008, MMAZ filed a motion to dismiss the Guarantors' counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP") because, *inter alia*, all the Guarantors' counterclaims were alleged against LBHI and third party Investors Mortgage Holdings, Inc. ("IMH"), neither of which was a party to the Guarantee Litigation.

6

16.     On October 16, 2008, Mr. and Mrs. Bonanno filed an opposition to MMAZ's motion to dismiss (the "Opposition").[6]  While the Opposition is difficult to follow, the Bonannos' appear to have asserted some variation on the veil-piercing theory to justify their failure to join LBHI and IMH.  Opposition, pp. 6-8.  Notwithstanding the fact that LBHI had commenced its case under chapter 11 of the Bankruptcy Code on September 15, 2008, the Bonannos' also sought to join LBHI pursuant to FRCP 19 or 20 in violation of the automatic stay extant pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay").  Id. at 8.

17.     On December 10, 2008, the District Court entered an order granting MMAZ's motion to dismiss the Guarantors' counterclaims (the "December 10, 2008 Order").[7]  The District Court based its decision on the Guarantors' (i) failure to assert counterclaims against MMAZ, (ii) failure to plead any facts that would warrant veil piercing, and (iii) inability (due to the Automatic Stay) to join LBHI.

18.     On December 23, 2008, MMAZ field a motion for summary judgment with respect to its claims against the Bonannos' and the estate of Ms. Jenkins (the "Summary Judgment Motion").[8]  The claim against Mr. Jenkins was not included in the Summary Judgment Motion because Mr. Jenkins had filed for protection under chapter 11 of the Bankruptcy Code on September 19, 2008 in the United States Bankruptcy Court for the District of Arizona [Case Number 08-12618].[9]  MMAZ's principal argument with respect to the Guarantors' affirmative

---

[6] A copy of the Opposition is attached hereto as Exhibit F.

[7] A copy of the December 10, 2008 Order is attached hereto as Exhibit G.

[8] A copy of the Summary Judgment Motion is attached hereto as Exhibit H.

[9] Mr. Jenkins' bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code on May 27, 2009 and was closed on February 22, 2010 [D. Ari. ECF Nos. 58, 97].

US_ACTIVE:\43927602\04\58399.0003

defenses was that they had been waived in the Forbearance Agreement.  Summary Judgment

Motion, pp 11-13, 16-19.

19.    On January 23, 2009, the Bonannos[10] filed a response to the Summary

Judgment Motion (the "Bonannos' Response").[11]  The Bonannos' Response raised two

affirmative defenses relevant to the current matter: (i) that LBHI breached its obligations under

the Loan before any default by Middle Mountain; and (ii) that the Forbearance Agreement is

void because (a) it was not supported by sufficient consideration, and (b) the Bonannos' were

fraudulently induced by LBHI to enter into the Forbearance Agreement.  Bonannos' Response,

pp 8-9.

20.    On September 17, 2009, the District Court entered an order granting

MMAZ's motion for summary judgment (the "Summary Judgment Order").[12]  The District Court

found that there was no merit to the Bonannos' arguments that the Forbearance Agreement was

unenforceable because it was not supported by sufficient consideration or because it was the

product of LBHI's fraudulent inducement.  Summary Judgment Order, pp. 5-7.  In light of its

finding that the Forbearance Agreement was valid and binding, the District Court concluded that

the Bonannos had waived and released the remainder of their affirmative defenses – including

the affirmative defense that LBHI had breached its obligations under the Loan prior to Middle

Mountain's default.

---

[10] The estate of Ms. Jenkins did not file a response to the Summary Judgment Motion.

[11] A copy of the Bonannos' Response is attached hereto as Exhibit I.

[12] A copy of the Summary Judgment Order is attached hereto as Exhibit J.

US_ACTIVE:\43927602\04\58399.0003

## The Middle Mountain Claim

21.     The Middle Mountain Claim, which is based on "Loss of profit / lender defaul[t]," is asserted in the amount of $76,004,383.40.[13]  No information is given as to the nature of the alleged lender default, when the alleged lender default occurred or why Middle Mountain is entitled to lost profits as a result of the alleged lender default.  Similarly, while Middle Mountain includes more than $4 million in interest as part of its claim, it does not explain why it believes it is entitles to interest or the methodology used to calculate such interest.

## Basis for Relief Requested

### A.     The Doctrine of Collateral Estoppel Requires that the Middle Mountain Claim Be Disallowed

22.     Middle Mountain waived the lender-default claim that is the subject of the Middle Mountain Claim in the Forbearance Agreement and the District Court has already decided that the waivers contained in the Forbearance Agreement are enforceable to bar such claims.  Accordingly, Middle Mountain is estopped from re-litigating that issue in the guise of a claim against LBHI.  "The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies." *Constantine v. Teachers College*, 488 Fed. Appx. 92, 93 (2d Cir. 2011) (internal quotations omitted).  The Second Circuit has held that collateral estoppel applies where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party has a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Overview Books, LLC v. U.S.,* 438 Fed. Appx. 31, 33 (2d Cir. 2011) (citing

---

[13] A copy of the Middle Mountain Claim, without duplicative exhibits, is attached hereto as <u>Exhibit K</u>.

US_ACTIVE:\43927602\04\58399.0003

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F. 3d 86, 91 (2d Cir. 1997).  Further, it is well

settled in this Circuit that "bankruptcy proceedings may not be used to relitigate issues already

resolved in a court of competent jurisdiction."  *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir.

1987); *see also, Glatzer v. Enron Corp.*, 2008 WL 4449439 (S.D.N.Y.).

   23.  The fact that LBHI was not a party to the Guarantee Litigation is

irrelevant to the analysis of whether collateral applies to the Middle Mountain Claim because "a

party invoking collateral estoppel need not be a party to the prior proceeding or in any other

respect privy thereto."  *JSC Securities, Inc. v. Gebbia*, 4 F. Supp. 2d 243, 252 (S.D.N.Y. 1998);

*see also Austin v. Downs, Rachlin & Martin*, 114 Fed. Appx. 21, 22 (2d Cir. 2003) (same); *Index*

*Fund, Inc. v. Hagopian*, 677 F. Supp. 710, 726 (S.D.N.Y. 1987) ("The doctrine of mutuality is

no longer employed in this circuit.  Therefore, collateral estoppel may be invoked by a defendant

not a party to the original action.").

   24.  Similarly, even though Middle Mountain was not a party to the Guarantee

Litigation, it is still estopped from re-litigating the enforceability of the Forbearance Agreement

because it is in privity with the Guarantors.  "Contemporary courts have broadly construed the

concept of privity, far beyond its literal and historical meaning, to include any situation in which

the 'relationship between the parties is sufficiently close to support preclusion.'"  *Nabisco, Inc. v.*

*Amtech Int., Inc.*, 2000 WL 35854 *6 (S.D.N.Y. Jan. 19, 2000) (quoting *Amalgamated Sugar*

*Co., LLC v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987).  The privity analysis, therefore,

focuses on "whether, under the circumstances, the interests of the nonparty were adequately

represented in the prior proceeding."  *Bankers Trust Co. v. Rhoades*, 108 B.R. 423, 428

(S.D.N.Y. 1989).

25.     Courts in this Circuit generally hold that the interests of officers, directors and direct and indirect owners of closely held corporations are sufficiently aligned with their companies to support a finding of privity.  *See Kluge v. Fugazy*, 1990 WL 251221 *2 (S.D.N.Y. Dec. 28, 1990); *see also Fernicola v. Specific Real Property in Possession, Custody, and Control of Healthcare Underwriters Mutual Insurance Co.*, 2001 WL 1658257 *4 (S.D.N.Y. Dec. 26, 2001) (finding, in the res judicata context, that "the identify of interest between a corporate officer and the entity he or she leads is sufficient to establish privity.").

26.     As discussed above, Middle Mountain is member managed and the Guarantors, through their wholly owned subsidiaries, own and control virtually all of the membership interests in Middle Mountain.  The Guarantors are, therefore, the functional equivalent of both officers and owners of Middle Mountain, which, in and of itself, is likely sufficient to establish privity.  Here, however, the argument for privity is even stronger because the Guarantee renders both Middle Mountain and the Guarantors directly liable to LBHI for Middle Mountain's obligations under the Loan Documents.  Accordingly, the issue of the enforceability of the Forbearance Agreement's release provision was equally (and critically) important to both Middle Mountain and the Guarantors because it was determinative of the availability of virtually all of their defenses in connection with the Loan Agreements.[14]  *See Cont'l Ill. Nat. Bank and Trust Co. of Chicago v. Windham*, 668 F. Supp. 578, 583 (E.D. Tex. 1987) (finding, in the res judicata context, that the guarantor of a promissory note was in privity with obligor and bound by prior adjudication of debt owed by obligor); *Walter E. Heller & Co. v. Cox*, 343 F. Supp. 519 (S.D.N.Y. 1972), *aff'd*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 827 (1973) (finding, in the res judicata context, that "a guarantor is bound by a prior

---

[14] Notably, Middle Mountain and the Guarantors appear to have been represented by the same counsel in the negotiations that resulted in the Forbearance Agreement.

US_ACTIVE:\43927602\04\58399.0003

adjudication involving the principal debtor if the guarantor had notice of and an opportunity to participate in the prior proceedings").[15]

27.     In sum, the ownership and control that the Guarantors had over Middle Mountain and the absolute identity of interest between them with respect to the issues litigated in the Guarantee Litigation, are sufficient to establish privity for collateral estoppel purposes.

28.     Under the Second Circuit's test described above, the first element of collateral estoppel is identity of the issues.  "To meet the identity-of-issues prong of collateral estoppel, it is not necessary that the issues be exactly identical; it is sufficient that 'the issues presented in [the earlier litigation] are substantially the same as those presented by [the later] action.'"  *Zherka v. City of New York*, 2012 WL 147914 slip op. at *2 (2d Cir. Jan. 19, 2012) (quoting *ITT Corp. v. United States*, 963 F.2d 561, 564 (2d. Cir. 1992).  The issue of whether the releases contained in the Forbearance Agreement are enforceable, and thus bar the assertion of Loan Agreement-related claims by Middle Mountain or the Guarantors, is the same whether it is presented in the Guarantee Litigation or in the context of determining the validity of the Middle Mountain Claim.  Accordingly, the identity of the issues element of the collateral estoppel test is satisfied.

29.     The second element of the collateral estoppel test, whether the issue was actually and litigated and decided, is also easily satisfied.  LBHI's alleged default under the Loan Agreement and the validity of the Forbearance Agreement were each raised as affirmative defenses in the First Amended Answer and the Bonannos' Response.  *See* First Amended Answer, ¶¶ 5-6, 10-11; Bonannos' Response, pp 8-9.  The District Court considered each issue

---

[15] The Guarantors may also have ratified their identity of interest with Middle Mountain when they sought to assert counterclaims against LBHI and MMAZ relating to LBHI's alleged breach of the Loan Agreement – a document with respect to which Middle Mountain, not any of the Guarantors, is a party.

and determined that the Forbearance Agreement is enforceable and, as a result, that the releases
contained in the Forbearance Agreement precluded the Guarantors' claims regarding LBHI's
alleged default under the Loan Agreement. *See* Summary Judgment Order, pp 5-8. Accordingly,
the legal issues raised by the Middle Mountain Claim already were litigated and decided in the
Guarantee Litigation.[16]

30.     The third element of the collateral estoppel test, whether the party against
whom collateral estoppel is sought has had a full and fair opportunity to litigate the issue, is also
easily satisfied. As discussed above, Middle Mountain and the Guarantors are privies for the
purpose of the collateral estoppel analysis. The Guarantors, in turn, were actively involved in the
Guarantee Litigation, which lasted more than a year and in which they filed numerous pleadings
involving the same issues that are the subject of the Middle Mountain Claim, namely, whether
the Forbearance Agreement is valid and, if so, whether the releases contained therein preclude
the later assertion of claims regarding LBHI's alleged breach of the Loan Agreement. *See* First
Amended Answer, ¶¶ 5-6; Bonannos' Response, pp 8-9. The District Court considered the
Guarantors' arguments with respect to same and found them lacking. *See* Summary Judgment
Order, pp. 5-8. Accordingly, Middle Mountain, through its privies, has had a full and fair
opportunity to litigate the issues of the enforceability of the Forbearance Agreement and LBHI's
alleged liability under the Loan Agreement.

31.     The final element of collateral estoppel, whether the determination of the
issue was necessary to the outcome of the previous litigation, is also satisfied. In order to

---

[16] The fact that the Guarantee Litigation was decided by summary judgment, rather than following a trial,
is not determinative of the issue of whether Middle Mountain, through its privies, received a full and fair
opportunity to litigate the issues of the enforceability of the Forbearance Agreement and LBHI's alleged
liability under the Loan Agreement. *See generally Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991) (finding
that appellants had a full an fair opportunity to litigate an issue in a prior action which was decided by
summary judgment).

US_ACTIVE:\43927602\04\58399.0003

determine whether there was any merit to the Guarantors' affirmative defenses, the District Court engaged in a careful review of the Guarantors' arguments regarding the validity and enforceability of the Forbearance Agreement and concluded that such arguments were lacking. *See* Summary Judgment Order, pp. 5-6.  Importantly, with respect to the Guarantors' argument that they had been fraudulently induced to enter into the Forbearance Agreement, the District Court found that the Guarantors had "offer[ed] not a scintilla of evidence to support the claim." *Id*. at p. 5.  Having concluded that the Forbearance Agreement is valid and binding, the District Court found that the releases contained in the Forbearance Agreement precluded the Guarantors' second affirmative defense, which related to the issue of LBHI's alleged breach of the Loan Agreement.  *Id*. at pp. 7-8.  Thus, the determination of the issues that are the subject of the Middle Mountain Claim, the enforceability of the Forbearance Agreement and LBHI's alleged breach of the Loan Agreement, were necessary to the District Court's decision because they were determinative of the validity of the Guarantors' affirmative defenses.

32.    In sum, the District Court, through the Summary Judgment Order, has already determined that the releases contained in the Foreclosure Agreement are enforceable and preclude the assertion of claims against LBHI arising out of its alleged breaches of the Loan Agreement.  Middle Mountain is, therefore, estopped from relitigating these issues under the guise of the Middle Mountain Claim.  Accordingly, the Plan Administrator requests entry of an order disallowing and expunging the Middle Mountain Claim.

14

**B.**     **Even if the Court Finds that the Middle Mountain
Claim is Not Barred by Collateral Estoppel, It Was Waived
in the Forbearance Agreement and Is Not Enforceable Against LBHI**

33.     Even if this Court does not find that the Middle Mountain Claim is barred by the doctrine of collateral estoppel, it should independently find that Middle Mountain's claims related to LBHI's alleged breach of the Loan Documents were waived and released in the Forbearance Agreement and, consequently, that the Middle Mountain Claim is not enforceable against LBHI.[17]  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  The Middle Mountain Claim should, therefore, be disallowed and expunged.

34.     The Forbearance Agreement, which is governed by New York law, provides for the release and waiver by Middle Mountain of, among other things, all of its claims against LBHI arising out of or related to the Loan.  *See* Forbearance Agreement, §§5.01, 7.09. "A release is a type of contract that is governed by contract law.  Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not the product of fraud, duress, or undue influence."  *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (internal quotations omitted); *see also Export – Import Bank of the United States v. Agricola Del Mar BCS, S.A. de C.V.*, 536 F. Supp. 3d 345, 350 (S.D.N.Y. 2008) ("An unconditional waiver of defenses is valid and enforceable when entered into voluntarily.").

---

[17] To the extent that this Court finds that the alleged breach that is the subject of the Middle Mountain Claim was not waived and released in the Forbearance Agreement, the Plan Administrator reserves its right to object to the Middle Mountain Claim for other reasons, including, without limitation, that LBHI did not breach any of its obligations under the Loan Agreement.

15

35.    Middle Mountain does not allege anywhere in the Middle Mountain Claim that the Forbearance Agreement was not knowingly and voluntarily entered into or suggest that the Forbearance Agreement was the product of any fraudulent conduct by LBHI.  Further, the District Court found that

> [t]he Bonnanos do not contest that the Forbearance Agreement was negotiated and reviewed by counsel prior to the [Guarantors] signing the document.  The Bonnanos do not dispute that they signed the Forbearance Agreement, or that they were represented by counsel during the negotiations of the Agreement.  Their counsel reviewed the [Forbearance] Agreement before the Bonnanos signed it, and all negotiations between the [Guarantors] and Lehman regarding the [Forbearance] Agreement were conducted by counsel for each party. . ..  Nowhere do they claim that they unknowingly or involuntarily entered into the [Forbearance] Agreement].

Summary Judgment Order, p. 8.  The District Court's findings with respect to the Bonnanos are equally applicable to Middle Mountain since Middle Mountain and the Bonnanos were represented by the same counsel, the Bonnanos control virtually all of the membership interests in Middle Mountain and Mr. Bonanno signed the Forbearance Agreement on behalf of Middle Mountain.  Accordingly, the Forbearance Agreement constitutes a valid and enforceable agreement under New York law and Middle Mountain has waived and released any and all claims or causes of action that it may otherwise have had under the Loan Agreement.

36.    While a proof of claim is "deemed allowed, unless a party in interest objects," 11 U.S.C. § 502(a), once an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  Middle Mountain's waiver

and release, in the Forbearance Agreement, of any and all claims or causes of action it may have

against LBHI is fatal to the Middle Mountain Claim.  Having specifically agreed not to assert

claims, such as the Middle Mountain Claim, against LBHI in order to secure additional time to

comply with its obligations under the Loan Documents, Middle Mountain should not now be

permitted to avoid the application of the Forbearance Agreement's release provisions.

Accordingly, the Plan Administrator requests that the Middle Mountain Claim be disallowed and

expunged from the claims register.[18]

### Notice

37.    No trustee has been appointed in these chapter 11 cases.  The Plan

Administrator has served notice of this objection, in accordance with the procedures set forth in

the second amended order entered on June 17, 2010 governing case management and

administrative procedures [ECF No. 9635], on: (i) Middle Mountain; (ii) the United States

Trustee for Region 2; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties

who have requested notice in these chapter 11 cases.  The Plan Administrator submit that no

other or further notice need be provided.

---

[18] Middle Mountain's demand for "loss of profit" is also barred by the Loan Agreement, which provides that:

> no claim may be made by [Middle Mountain] against [LBHI] for any special, indirect, consequential or punitive damages in respect of any claim for breach of contract or any other theory of liability arising out of or related to the transactions contemplated by this Agreement or any act, omission or event occurring in connection therewith.

Loan Agreement, ¶10.23.  Lost profits constitute general damages only where the non-breaching party is seeking to recover money that the breaching party agreed to pay under the contract.  Where, as here, the allegedly non-breaching party is seeking to recover lost profits and interest that are speculative and manifestly not contemplated under the Loan Agreement, the claim for lost profits is properly characterized as one for consequential damages and is, therefore, barred by the Loan Agreement.  *See Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 322 (S.D.N.Y. 2009).

US_ACTIVE:\43927602\04\58399.0003

38.    No previous request for the relief sought herein has been made by the

Plan Administrator to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order

granting the relief requested herein and such other and further relief as is just.

Dated:  May 14, 2012
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

18

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                       :        **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                                            :
                              **Debtors.**                  :        **(Jointly Administered)**
------------------------------------------------------------------x

## ORDER GRANTING PLAN ADMINISTRATOR'S
## OBJECTION TO CLAIM FILED BY MIDDLE MOUNTAIN 156, LLC

Upon the objection, dated May 14, 2012 (the "Middle Mountain Objection"),[1] of

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator")

pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings

Inc. and Its Affiliated Debtors for the debtors in the above referenced chapter 11 cases (the

"Debtors"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure, seeking disallowance and

expungement of the Middle Mountain Claim, all as described in the Middle Mountain Objection;

and due and proper notice of the Middle Mountain Objection having been provided, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Middle Mountain Objection is in the best interests of the

Plan Administrator and all parties in interest in the above captioned chapter 11 cases and that the

legal and factual bases set forth in the Middle Mountain Objection establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Middle Mountain Objection is granted;

and it is further

---

[1] Terms not defined herein shall have the same meaning ascribed to them in the Middle Mountain Objection.

US_ACTIVE:\43927602\04\58399.0003

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the Middle

Mountain Claim, which has been assigned claim number 2974 by the Debtors' Court-appointed

claims agent, is disallowed and expunged in its entirety with prejudice; and it is further

ORDERED that the Debtors' Court-appointed claims agent is authorized and

directed to reflect the Middle Mountain Claim as disallowed and expunged pursuant to this

Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2012
      New York, New York