08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 1 of 36
Case 1:08-cv-05353-CM    Document 1-2    Filed 06/11/08    Page 38 of 39

Security Instrument; provided however, Lender shall only enforce such judgment to the extent of the Insurance Proceeds and/or Awards.

(b)    Notwithstanding the provisions of Section 9.4(a) to the contrary, Borrower and the Guarantor shall be personally liable to Lender for the Losses it incurs due to:

(i)    except as set forth in Section 9.4(c), Borrower or Guarantor, or any Affiliate of any thereof commits gross negligence (which continues after notice from Lender that such activity is occurring) or willful misconduct with respect to the management and operation of the Property or Borrower's financial affairs;

(ii)    Borrower's failure to maintain the Property as required pursuant to the Loan Documents, including but not limited to the failure to comply with any of the provisions of Sections 6.1 (which shall include the failure to pay any deductible amount pursuant to the Policies), 5.1.1 (which, other than with respect to the insurance requirement set forth therein, continues for more than three (3) Business Days after notice from Lender of such failure), 5.1.2. (unless the failure to comply with any of such provisions is due to a lack of sufficient cash flow from the Property whether from Rents, Loan proceeds, Insurance Proceeds or otherwise), 4.1.39, 5.1.19 or 5.2.5;

(iii)    The physical waste or willful destruction of the Property by Borrower or Guarantor, or any Affiliate of any thereof, including, but not limited to, the removal or disposal by Borrower or Guarantor, or any Affiliate of any thereof, of any equipment, fixtures or other property (personal or otherwise) from the Property, in violation of the terms of any of the Loan Documents;

(iv)    Breach by Borrower or Guarantor of any of the indemnification obligations contained in this Agreement or the Environmental Indemnity;

(v)    The failure by Borrower or Guarantor (or where applicable, any member thereof) to comply with any of the provisions of Sections 4.1.8, 5.2.8. or 4.1.35, if applicable;

(vi)    The Property becoming subject to any mechanic liens or materialman liens regarding work not approved in writing by Lender or regarding work for which sufficient cash flow exists from the Property (whether from Rents, Loan proceeds, Insurance Proceeds or otherwise) to pay for such work;

(vii)    Borrower's failure to obtain the prior written consent of Lender prior to entering into, materially modifying or amending any material agreement (and in the case of sale contracts for any portion of the Property, such material modifications shall include but not be limited to any modifications which decrease the purchase price of such portion of the Property, adjournments of closing dates beyond 30 days of the date specified in the applicable sale contract, and modifying any conditions to closing which would increase Borrower's obligations under such contract) which would have the result of adversely affecting the Property, Borrower, the Loan, agreements with any affiliate of Borrower or Guarantor, any of the organizational or formation documents of Borrower or any direct or

{10347125:14}

08-13555-mg   Doc 27854-2   Filed 05/14/12   Entered 05/14/12 16:52:48   Exhibit -
Exhibit A Part 2 of 2   Pg 2 of 36
Case 1:08-cv-05353-CM   Document 1-2   Filed 06/11/08   Page 39 of 39

indirect member thereof and any other material agreements affecting the use, operation, construction, maintenance or zoning of the Property;

(viii)   Borrower or Guarantor or any Affiliate of any thereof, or any party acting at the behest of any thereof, challenges the validity or enforceability of any provision of the Loan Documents and/or Borrower or Guarantor, or any Affiliate of any thereof, or any party acting at the behest of any thereof, asserts defenses to the validity or enforceability of any provision of the Loan Documents unless such party alleges, in good faith, that no Event of Default has occurred pursuant to the Loan Documents and Borrower is in full compliance with the Loan Documents; or

(ix)   in the event Borrower or Guarantor, or any Affiliate of any thereof, or any party acting at the behest thereof, raises a claim or asserts a defense that any of the waivers contained in Sections 10.7 or 10.15 are not enforceable.

(c)   Notwithstanding the foregoing, the agreement of Lender not to pursue recourse liability as set forth in Section 9.4(a) above SHALL BECOME NULL AND VOID and shall be of no further force and effect in the event:

(i)   there exists fraud or an intentional material misrepresentation on the part of Borrower or Guarantor, or any Affiliate of any thereof, in connection with any representation, warranty or submission provided to Lender or its representative, or any intentional material omission or an intentional misrepresentation of fact in any material respect (made fraudulently or otherwise) on the part of Borrower or Guarantor, or any Affiliate of any thereof, regarding their respective financial conditions, including statements made or materials produced or delivered (1) both prior to or after the making of the Loan, (2) in connection with the Loan Documents, and (3) which has a material adverse affect on the value of the Property or Collateral;

(ii)   Borrower or Guarantor, or any Affiliate of any thereof, or any party acting at the behest of any thereof, commits any misappropriation, misapplication or conversion of funds (including but not limited to the following: (i) any Rents, deposits, Net Sale Proceeds, Loan proceeds or other funds or income arising with respect to the Property, the Collateral or any part thereof, or (ii) any proceeds under any Policies or Awards resulting from Condemnation or the exercise of the power of eminent domain by reason of damage, loss or destruction of any portion of the Property) in breach of the Loan Documents and which breach has not been cured within ten (10) days after receipt of notice thereof from Lender;

(iii)   there occurs a violation of any of the terms and provisions of Section 5.2.10;

(iv)   if (1) Borrower or Guarantor (each, a "Bankruptcy Default Party"), shall file any case, proceeding or other action (i) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship or relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization,

70

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 3 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 1 of 34

arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts, or (ii) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or any Bankruptcy Default Party shall make a general assignment for the benefit of its creditors; or (2) there shall be commenced against any Bankruptcy Default Party, or the Property or any part thereof shall become an asset in, any case, proceeding or other action of a nature referred to in clause (1) above which is facilitated, coordinated, conducted or directed by any Bankruptcy Default Party, and which (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed or undischarged for a period of sixty (60) days; or (3) there shall be commenced against any Bankruptcy Default Party, or the Property or any part thereof shall become an asset in, any case, proceeding or other action which is facilitated, coordinated, conducted or directed by any Bankruptcy Default Party seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of its assets, and which results in the entry of any order for any such relief which shall not have been vacated or discharged, or stayed or bonded pending appeal within sixty (60) days from the entry thereof;

    (v)    if Borrower or any other person restricted by the Loan Documents incurs any indebtedness (secured or unsecured) or account payable obligations, in each case in violation of any express restrictions or prohibitions contained in the Loan Documents, and such violation is not cured within twenty (20) days after receipt of notice from Lender.

    (d)    Nothing herein shall be deemed to be a waiver of any right which Lender may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Debt secured by this Agreement, the Security Instrument and the other Loan Documents or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with the Note, this Agreement, the Security Instrument and the other Loan Documents.

    (e)    Notwithstanding anything to the contrary contained in this Section 9.4 or the other Loan Documents, no direct or indirect, shareholder, partner, member, principal, affiliate, employee, officer, director, agent or representative of Borrower or the Guarantor (each a "Related Party") shall have any personal liability for, nor be joined as a party to any action (except as may be required by any applicable laws, rules, regulations or ordinances) with respect to (i) the payment of any sum of money which is or may be payable hereunder or under the Note, the Security Instrument, this Agreement or the other Loan Documents, including, but not limited to, the repayment of the Debt, or (ii) the performance or discharge of any covenants, obligations or undertakings of Borrower with respect thereto other than pursuant to a written instrument executed by such Related Party specifically providing for such liability. In addition to the foregoing, anything in this Agreement, the Note, the Security Instrument or the other Loan Documents to the contrary notwithstanding, in no event will the assets of any Related Party (including any distributions made by Borrower to its direct or indirect members, partners or shareholders as permitted hereunder, but excluding any such distributions specifically prohibited to be made by the Loan Documents), be available to satisfy any obligation of Borrower in respect of the Debt, this Agreement or other obligations evidenced by the Loan Documents.

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 4 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 2 of 34

Notwithstanding the foregoing, in no event shall the provisions of this Section 9.4(e) in any way be construed to waive, limit, abridge or otherwise impair the (i) obligations of Guarantor or Borrower, as applicable (in each case, but not any other Related Party) under each of the Guaranty or Environmental Indemnity or (ii) the ability of Lender to enforce its rights or remedies against the Collateral.

Section 9.5    Intentionally Omitted.

Section 9.6    Intentionally Omitted.

Section 9.7    Syndication

9.7.1    Syndication.

The provisions of this Section 9.7 shall only apply in the event that the Loan is syndicated in accordance with the provisions of this Section 9.7 set forth below.

9.7.2    Sale of Loan, Co-Lenders, Participations and Servicing.

(a)    Lender and any Co-Lender may, at their option, without Borrower's consent (but with notice to Borrower), sell with novation all or any part of their right, title and interest in, and to, and under the Loan (the "Syndication"), to one or more additional lenders (each a "Co-Lender"). Each additional Co-Lender shall enter into an assignment and assumption agreement (the "Assignment and Assumption") assigning a portion of Lender's or Co-Lender's rights and obligations under the Loan, and pursuant to which the additional Co-Lender accepts such assignment and assumes the assigned obligations. From and after the effective date specified in the Assignment and Assumption (i) each Co-Lender shall be a party hereto and to each Loan Document to the extent of the applicable percentage or percentages set forth in the Assignment and Assumption and, except as specified otherwise herein, shall succeed to the rights and obligations of Lender and the Co-Lenders hereunder and thereunder in respect of the Loan, and (ii) Lender, as lender and each Co-Lender, as applicable, shall, to the extent such rights and obligations have been assigned by it pursuant to such Assignment and Assumption, relinquish its rights and be released from its obligations hereunder and under the Loan Documents.

(b)    The liabilities of Lender and each of the Co-Lenders shall be several and not joint, and Lender's and each Co-Lender's obligations to Borrower under this Agreement shall be reduced by the amount of each such Assignment and Assumption. Neither Lender nor any Co-Lender shall be responsible for the obligations of any other Co-Lender. Lender and each Co-Lender shall be liable to Borrower only for their respective proportionate shares of the Loan. If for any reason any of the Co-Lenders shall fail or refuse to abide by their obligations under this Agreement, Lender and the other Co-Lenders shall not be relieved of their obligations, if any, hereunder; notwithstanding the foregoing, Lender and the Co-Lenders shall have the right, but not the obligation, at their sole option, to make the defaulting Co-Lender's pro rata share of such advance pursuant to the Co-Lending Agreement.

(c)    Borrower agrees that it shall, in connection with any sale of all or any portion of the Loan, whether in whole or in part, to an additional Co-Lender or Participant, within ten (10) Business Days after requested by Agent, furnish Agent with the certificates required under

72

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 5 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 3 of 34

Sections 5.1.10 and 5.1.13 and such other information as reasonably requested by any additional Co-Lender or Participant in performing its due diligence in connection with its purchase of an interest in the Loan.

(d)    Lender (or an Affiliate of Lender) shall act as administrative agent for itself and the Co-Lenders (together with any successor administrative agent, the "Agent") pursuant to this Section 9.7. Borrower acknowledges that Lender, as Agent, and any successor Agent as provided hereunder shall have the sole and exclusive authority to execute and perform this Agreement and each Loan Document on behalf of itself, as Lender and as agent for itself and the Co-Lenders subject to the terms of the Co-Lending Agreement. Except as otherwise provided in Sections 9.7.2(a), 9.7.2(g) and 9.7.3(a), Borrower shall not have any obligation to recognize or deal directly with any Co-Lender, and no Co-Lender shall have any right to deal directly with Borrower with respect to the rights, benefits and obligations of Borrower under this Agreement, the Loan Documents or any one or more documents or instruments in respect thereof. Borrower may rely conclusively on the actions of Lender as Agent to bind Lender and the Co-Lenders, notwithstanding that the particular action in question may, pursuant to this Agreement or the Co-Lending Agreement be subject to the consent or direction of some or all of the Co-Lenders. Lender may resign as Agent of the Co-Lenders, in its sole discretion, without the consent of Borrower; provided however, that Lender may only resign as Agent (i) after an Event of Default has occurred or (ii) if required to by the Co-Lenders in accordance with the term of the Co-Lending Agreement. Upon any such resignation, a successor Agent shall be determined pursuant to the terms of the Co-Lending Agreement. The term Agent shall mean any successor Agent.

(e)    Notwithstanding any provision to the contrary in this Agreement, the Agent shall not have any duties or responsibilities except those expressly set forth herein (and in the Co-Lending Agreement) and no covenants, functions, responsibilities, duties, obligations or liabilities of Agent shall be implied by or inferred from this Agreement, the Co-Lending Agreement, or any other Loan Document, or otherwise exist against Agent.

(f)    Except to the extent its obligations hereunder and its interest in the Loan have been assigned pursuant to one or more Assignments and Assumption, Lender, as Agent, shall have the same rights and powers under this Agreement as any other Co-Lender and may exercise the same as though it were not Agent, respectively. The term "Co-Lender" or "Co-Lenders" shall, unless otherwise expressly indicated, include Lender in its individual capacity. Lender and the other Co-Lenders and their respective Affiliates may accept deposits from, lend money to, act as trustee under indentures of, and generally engage in any kind of business with, Borrower, or any Affiliate of Borrower and any Person who may do business with or own securities of Borrower or any Affiliate of Borrower, all as if they were not serving in such capacities hereunder and without any duty to account therefor to each other.

(g)    If required by any Co-Lender, Borrower hereby agrees to execute supplemental notes in the principal amount of such Co-Lender's pro rata share of the Loan substantially in the form of the Note, and such supplemental note shall (i) be payable to order of such Co-Lender, (ii) be dated as of the Closing Date, and (iii) mature on the Maturity Date. Such supplemental note shall provide that it evidences a portion of the existing indebtedness hereunder and under the Note and not any new or additional indebtedness of Borrower. The term "Note" as used in this Agreement and in all the other Loan Documents shall include all such supplemental notes.

73

Notwithstanding the execution of any such supplemental notes, (i) Borrower shall not have obligation to recognize or deal directly with any Co-Lender, and no Co-Lender shall have any right to deal directly with Borrower with respect to the rights, benefits and obligations of Borrower under this Agreement, the Loan Documents or any one or more documents or instruments in respect thereof, and (ii) Borrower may rely conclusively on the actions of Lender as Agent to bind Lender and the Co-Lenders, notwithstanding that the particular action in question may, pursuant to this Agreement or the Co-Lending Agreement be subject to the consent or direction of some or all of the Co-Lenders.

(h)     Lender, as Agent, shall maintain at its domestic lending office or at such other location as Lender, as Agent, shall designate in writing to each Co-Lender and Borrower a copy of each Assignment and Assumption delivered to and accepted by it and a register for the recordation of the names and addresses of the Co-Lenders, the amount of each Co-Lender's proportionate share of the Loan and the name and address of each Co-Lender's agent for service of process (the "Register"). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and Borrower, Lender, as Agent, and the Co-Lenders may treat each Person whose name is recorded in the Register as a Co-Lender hereunder for all purposes of this Agreement. The Register shall be available for inspection and copying by Borrower or any Co-Lender during normal business hours upon reasonable prior notice to the Agent. A Co-Lender may change its address and its agent for service of process upon written notice to Lender, as Agent, which notice shall only be effective upon actual receipt by Lender, as Agent, which receipt will be acknowledged by Lender, as Agent, upon request.

(i)     Notwithstanding anything herein to the contrary, any financial institution or other entity may be sold a participation interest in the Loan by Lender or any Co-Lender without Borrower's consent (such financial institution or entity, a "Participant") (x) if such sale is without novation and (y) if the other conditions set forth in this paragraph are met. No Participant shall be considered a Co-Lender hereunder or under the Note or the Loan Documents. No Participant shall have any rights under this Agreement, the Note or any of the Loan Documents and the Participant's rights in respect of such participation shall be solely against Lender or Co-Lender, as the case may be, as set forth in the participation agreement executed by and between Lender or Co-Lender, as the case may be, and such Participant. No participation shall relieve Lender or Co-Lender, as the case may be, from its obligations hereunder or under the Note or the Loan Documents and Lender or Co- Lender, as the case may be, shall remain solely responsible for the performance of its obligations hereunder.

(j)     Notwithstanding any other provision set forth in this Agreement, Lender or any Co-Lender may at any time create a security interest in all or any portion of its rights under this Agreement (including, without limitation, amounts owing to it in favor of any Federal Reserve Bank in accordance with Regulation A of the Board of Governors of the Federal Reserve System), provided that no such security interest or the exercise by the secured party of any of its rights thereunder shall release Lender or Co-Lender from its funding obligations hereunder.

9.7.3   Cooperation in Syndication.

(a)     Borrower agrees to assist Lender in completing a Syndication satisfactory to Lender. Such assistance shall include (i) direct contact between senior management and advisors

{10347125:14}

08-13555-mg   Doc 27854-2   Filed 05/14/12   Entered 05/14/12 16:52:48   Exhibit -
Exhibit A Part 2 of 2   Pg 7 of 36
Case 1:08-cv-05353-CM   Document 1-3   Filed 06/11/08   Page 5 of 34

of Borrower and the proposed Co-Lenders, (ii) assistance in the preparation of a confidential information memorandum and other marketing materials to be used in connection with the Syndication, (iii) the hosting, with Lender, of one or more meetings of prospective Co-Lenders or with the Rating Agencies, (iv) the delivery of appraisals satisfactory to Lender if required, (v) providing any information that may reasonably be required by Lender in connection with the Syndication, including updated financial and operating statements, and (vi) working with Lender to procure a rating for the Loan by the Rating Agencies.

(b)   Lender shall manage all aspects of the Syndication of the Loan, including decisions as to the selection of institutions to be approached and when they will be approached, when their commitments will be accepted, which institutions will participate, the allocations of the commitments among the Co-Lenders and the amount and distribution of fees among the Co-Lenders. To assist Lender in its Syndication efforts, Borrower agrees promptly to prepare and provide to Lender all information with respect to Borrower and the Property contemplated hereby, including all financial information and projections (the "**Projections**"), as Lender may reasonably request in connection with the Syndication of the Loan. Borrower hereby represents and covenants that (i) all information other than the Projections (the "**Information**") that has been or will be made available to Lender by Borrower or any of their representatives is or will be, when furnished, complete and correct in all material respects and does not or will not, when furnished, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein not materially misleading in light of the circumstances under which such statements are made and (ii) the Projections that have been or will be made available to Lender by Borrower or any of their representatives have been or will be prepared in good faith based upon reasonable assumptions. Borrower understands that in arranging and syndicating the Loan, Lender, the Co-Lenders and, if applicable, the Rating Agencies, may use and rely on the Information and Projections without independent verification thereof.

(c)   If required in connection with the Syndication, Borrower hereby agrees to:

(i)   amend the Loan Documents to give Lender the right, at Borrower's sole cost and expense, to have the Property reappraised on an annual basis;

(ii)   deliver updated financial and operating statements and other information reasonably required by Lender to facilitate the Syndication;

(iii)   deliver reliance letters reasonably satisfactory to Lender with respect to the environmental assessments and reports delivered to Lender prior to the Closing Date, which will run to Lender and its successors and assigns;

(iv)   deliver an Insolvency Opinion acceptable to Lender in all respects; and

(v)   execute modifications to the Loan Documents required by the Co-Lenders, provided that such modification will not change any material or economic terms of the Loan Documents, or otherwise materially increase the obligations or materially decrease the rights of Borrower pursuant to the Loan Documents.

{10347125:14}

(d)    All reasonable third party costs and expenses incurred by Lender or Borrower in connection with Borrower's complying with requests made under this Section 9.7.3 shall be paid by Borrower.

9.7.4    Payment of Agent's, and Co-Lender's Expenses, Indemnity, etc.

Borrower shall:

(a)    whether or not the transactions contemplated in this Section 9.7 are consummated, pay all reasonable out-of-pocket costs and expenses (A) of Agent's counsel fees and expenses relating to the negotiation, preparation, execution and delivery of the Note, this Agreement, the Security Instrument, and the other Loan Documents and the documents and instruments referred to therein, the creation, perfection or protection of Lender's and Co-Lender's liens on the Property (including, without limitation, fees and expenses for title insurance, property inspections, appraisals, if required for Syndication, surveys, lien searches, filing and recording fees, and escrow fees and expenses), and any amendment, waiver or consent relating to any of the Loan Documents including releases, (but Agent and the Co-Lender's shall pay their own respective counsel fees) and (B) of Agent and Co-Lenders in connection with the preservation of rights under, any amendment, waiver or consent relating to, and enforcement of, the Loan Documents and the documents and instruments referred to therein or in connection with any restructuring or rescheduling of the Obligations (including, without limitation, the reasonable fees and disbursements of counsel for Agent and the Co-Lenders);

(b)    pay, and hold Agent and each Co-Lender harmless from and against, any and all present and future stamp, excise and other similar taxes with respect to the foregoing matters and hold Agent and each Co-Lender harmless from and against any and all liabilities with respect to or resulting from any delay or omission (other than to the extent attributable to Agent or such Co-Lender) to pay such taxes; and

(c)    indemnify Agent, (in its capacity as Lender and as Agent), and each Co-Lender, its officers, directors, employees, representatives and agents and any persons or entities owned or Controlled by, owning or Controlling, or under common Control or Affiliated with Agent, Agent, or each Co-Lender (each an "Indemnitee") from, and hold each of them harmless against, any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel for such Indemnitee in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto) that may at any time (including, without limitation, at any time following the payment of the Obligations) be imposed on, asserted against or incurred by any Indemnitee as a result of, or arising in any manner out of, or in any way related to or by reason of, (i) the execution, delivery or performance of any Loan Document by Borrower, (ii) the breach of any of Borrower's representations and warranties or of any of Borrower's Obligations, (iii) a default under Section 5.2.8, including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, and (iv) the exercise by Agent and the Co-Lenders of their rights and remedies (including,

76

08-13555-mg   Doc 27854-2   Filed 05/14/12   Entered 05/14/12 16:52:48   Exhibit -
Exhibit A Part 2 of 2   Pg 9 of 36
Case 1:08-cv-05353-CM   Document 1-3   Filed 06/11/08   Page 7 of 34

without limitation, foreclosure) under any Loan Documents, but excluding, as to any Indemnitee, any such losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements incurred solely by reason of the gross negligence or willful misconduct of such Indemnitee as finally determined by a court of competent jurisdiction (collectively, "Syndication Indemnified Liabilities").  Borrower further agrees that, without Agent's or the Co-Lenders' prior written consent, it will not enter into any settlement of a lawsuit, claim or other proceeding arising or relating to any Syndication Indemnified Liability unless such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of each Indemnitee.  Borrower's obligations under this Section shall survive the termination of this Agreement and the payment of the Obligations. Borrower shall have the right to undertake, conduct and control through counsel of its own choosing (which counsel shall be acceptable to the Indemnitee acting reasonably), the conduct and settlement of the Syndication Indemnified Liabilities, and the Indemnitee shall cooperate with Borrower in connection therewith; provided that Borrower shall permit the Indemnitee to participate in such conduct and settlement through counsel chosen by the Indemnitee, but reasonable fees and expenses of such counsel shall be borne by the Indemnitee. Notwithstanding the foregoing, the Indemnitee shall have the right to employ its own counsel, and the reasonable fees and expenses of such counsel shall be at Borrower's cost and expense if the Indemnitee reasonably determines that (i) Borrower's counsel is not adequately defending any claim or proceeding in a manner reasonably acceptable to Indemnitee or (ii) the interests of Borrower and the Indemnitee have become adverse in any such claim or course of action; provided, however Borrower, in such event, shall only be liable for the reasonable legal expenses of one counsel for all such Indemnitees.  Neither Borrower nor any Indemnitee shall be liable for any settlement of any Syndication Indemnified Liability effected without its prior written consent, such consent not to be unreasonably withheld. No Indemnitee shall be liable for any indirect or consequential damages in connection with its activities related to the Loan, the Securitization or the Syndication.

### 9.7.5   No Joint Venture.

Notwithstanding anything to the contrary herein contained, neither Agent, nor any Co-Lender by entering into this Agreement or by taking any action pursuant hereto, will be deemed a partner or joint venturer with Borrower.

### 9.7.6   Voting Rights of Co-Lenders.

Borrower acknowledges that the Co-Lending Agreement may contain provisions which require that amendments, waivers, extensions, modifications, and other decisions with respect to the Loan Documents shall require the approval of all or a number of the Co-Lenders holding in the aggregate a specified percentage of the Loan or any one or more Co-Lenders that are specifically affected by such amendment, waiver, extension, modification or other decision.

## ARTICLE 10 MISCELLANEOUS

Section 10.1   Survival.

77

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 10 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 8 of 34

This Agreement and all covenants, agreements, representations and warranties made herein and in the certificates delivered pursuant hereto shall survive the making by Lender of the Loan and the execution and delivery to Lender of the Note, and shall continue in full force and effect so long as all or any of the Debt is outstanding and unpaid unless a longer period is expressly set forth herein or in the other Loan Documents. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the legal representatives, successors and assigns of such party. All covenants, promises and agreements in this Agreement, by or on behalf of Borrower, shall inure to the benefit of the legal representatives, successors and assigns of Lender.

Section 10.2    Lender's Discretion.

Whenever pursuant to this Agreement, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole discretion of Lender and shall be final and conclusive.

Section 10.3    Governing Law; Submission to Jurisdiction.

(a)    THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY LEGAL REQUIREMENTS OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE APPLICABLE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. THIS CHOICE OF GOVERNING LAW IS MADE PURSUANT TO NEW YORK GENERAL OBLIGATION LAW SECTION 5-1401.

(b)    ANY SUIT, ACTION OR PROCEEDING AGAINST BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, OR AT LENDER'S SOLE OPTION AND ELECTION IN THE STATE WHERE THE PROPERTY IS LOCATED, AND, IN

{10347125;14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 11 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 9 of 34

EITHER INSTANCE, BORROWER WAIVES ANY OBJECTIONS WHICH BORROWER MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER DOES HEREBY DESIGNATE AND APPOINT DELANEY CORPORATE SERVICES, 41 STATE STREET, SUITE 405, ALBANY, NEW YORK 12207, AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER, IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.   THIS CHOICE OF FORUM IS MADE PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1402.

(c)    NOTHING IN THIS AGREEMENT OR IN ANY OF THE OTHER LOAN DOCUMENTS WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING ANY SUIT, ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

(d)    BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGE OF ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK, OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

(e)    ANY SUIT, ACTION OR PROCEEDING AGAINST LENDER BROUGHT BY BORROWER AGAINST LENDER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR ARISING OUT OF THE LENDER-BORROWER RELATIONSHIP CREATED BY THE LOAN DOCUMENTS (WHETHER ARISING IN CONTRACT, TORT OR OTHERWISE) WHICH IN ANY EVENT SHALL BE SUBJECT TO THE LIMITATIONS OF SECTION 10.23, MAY ONLY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK AND BORROWER HEREBY WAIVES ANY RIGHT TO BRING ANY CLAIM OR CAUSE OF ACTION IN ANY OTHER JURISDICTION AND HEREBY AGREES NOT TO DO SO.

Section 10.4   Modification, Waiver in Writing.

No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement, the Note, or of any other Loan Document, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in a

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 12 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 10 of 34

writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. Except as otherwise expressly provided herein, no notice to, or demand on Borrower, shall entitle Borrower to any other or future notice or demand in the same, similar or other circumstances.

Section 10.5    Delay Not a Waiver.

Neither any failure nor any delay on the part of Lender in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, or under the Note or under any other Loan Document, or any other instrument given as security therefor, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege. In particular, and not by way of limitation, by accepting payment after the due date of any amount payable under this Agreement, the Note or any other Loan Document, Lender shall not be deemed to have waived any right either to require prompt payment when due of all other amounts due under this Agreement, the Note or the other Loan Documents, or to declare a default for failure to effect prompt payment of any such other amount.

Section 10.6    Notices.

All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person or by facsimile transmission with receipt acknowledged by the recipient thereof and confirmed by telephone by sender, (ii) one (1) Business Day after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| | |
|---|---|
| If to Borrower: | MIDDLE MOUNTAIN 156, LLC<br>20837 North 41st Avenue<br>Glendale, Arizona 85308<br>Attention: Nicholas Bonanno<br>Facsimile No.: (632) 587-4825 |
| With a copy to: | Beus Gilbert PLLC<br>4800 North Scottsdale Road<br>Suite 6000<br>Scottsdale, Arizona 85251<br>Attention: Steven W. Bienstock, Esq.<br>Facsimile No.: (480) 429-3100 |
| If to Lender/Agent: | Lehman Brothers Holdings, d/b/a Lehman Capital, a Division of<br>Lehman Brothers Holdings Inc.<br>399 Park Avenue<br>New York, New York 10022 |

80

{10347125:14}

Attention: Mr. Charles W. Schoenherr
Facsimile No.: (646) 758-5398
MTS# WH2565/Asset # 1141401

Lehman Brothers Holdings, d/b/a Lehman Capital, a Division of
Lehman Brothers Holdings Inc.
399 Park Avenue
New York, New York 10022
Attention: F. Robert Brusco, Esq.
Facsimile No.: (646) 758-4635
MTS# WH2565/Asset # 1141401

and

Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Attention: James J. Thomas, Esq.
Facsimile No.: (212) 262-1215

With a copy of all notices, certificates, and other information under Section 5.1.10 to:

Trimont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road NE, Suite 2200
Atlanta, Georgia 30326
Attention: Mr. J. Gregory Winchester
Facsimile No.: (404) 420-5600
MTS# WH2565/Asset # 1141401

or addressed as such party may from time to time designate by written notice to the other parties.

Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

Section 10.7    Trial by Jury.

BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH OR THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

81

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 14 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 12 of 34

Section 10.8    Headings.

The Article and/or Section headings and the Table of Contents in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

Section 10.9    Severability.

Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under Applicable Law, but if any provision of this Agreement shall be prohibited by or invalid under Applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Section 10.10    Preferences.

Lender shall have the continuing and exclusive right to apply or reverse and reapply any and all payments by Borrower to any portion of the obligations of Borrower hereunder.  To the extent Borrower makes a payment or payments to Lender, which payment or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, State or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the obligations hereunder or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment or proceeds had not been received by Lender.

Section 10.11    Waiver of Notice.

Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Agreement or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower are not, pursuant to applicable Legal Requirements, permitted to waive the giving of notice.  Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Agreement or the other Loan Documents do not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 10.12    Remedies of Borrower.

In the event that a claim or adjudication is made that Lender or its agents have acted unreasonably or unreasonably delayed acting in any case where by law or under this Agreement or the other Loan Documents, Lender or such agent, as the case may be, has an obligation to act reasonably or promptly, Borrower agree that neither Lender nor its agents shall be liable for any monetary damages, and Borrower's sole remedies shall be limited to commencing an action seeking injunctive relief or declaratory judgment.  The parties hereto agree that any action or proceeding to determine whether Lender has acted reasonably shall be determined by an action seeking declaratory judgment.

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 15 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 13 of 34

Section 10.13  Expenses; Indemnity.

(a)    Borrower covenant and agree to pay or, if Borrower fails to pay, to reimburse, Lender within five (5) days of receipt of written notice from Lender for all reasonable costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with (i) the preparation, negotiation, execution and delivery of this Agreement and the other Loan Documents and the consummation of the transactions contemplated hereby and thereby and all the costs of furnishing all opinions by counsel for Borrower (including without limitation, any opinions requested by Lender as to any legal matters arising under this Agreement or the other Loan Documents with respect to the Property); (ii) Borrower's ongoing performance of and compliance with Borrower's respective agreements and covenants contained in this Agreement and the other Loan Documents on its part to be performed or complied with after the Closing Date, including, without limitation, confirming compliance with environmental and insurance requirements; (iii) Lender's ongoing performance and compliance with all agreements and conditions contained in this Agreement and the other Loan Documents on its part to be performed or complied with after the Closing Date; (iv) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to this Agreement and the other Loan Documents and any other documents or matters requested by Lender; (v) securing Borrower's compliance with any requests made pursuant to the provisions of this Agreement; (vi) the filing and recording fees and expenses, title insurance and reasonable fees and expenses of counsel for providing to Lender all required legal opinions, and other similar expenses incurred in creating and perfecting the Liens in favor of Lender pursuant to this Agreement and the other Loan Documents; (vii) enforcing or preserving any rights, in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, this Agreement, the other Loan Documents, the Property, or any other security given for the Loan; and (viii) enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the other Loan Documents or with respect to the Property or in connection with any refinancing or restructuring of the credit arrangements provided under this Agreement in the nature of a "work-out" or of any insolvency or bankruptcy proceedings; provided, however, that Borrower shall not be liable for the payment of any such costs and expenses to the extent the same arise by reason of the gross negligence, illegal acts, fraud or willful misconduct of Lender. Lender shall use its commercially efforts to deliver to Borrower prior written notice prior to exercising any rights set forth in the immediately preceding sentence, provided, however, that any failure to deliver such notice shall in no way limit or impair Lender's rights hereunder.

(b)    Borrower shall indemnify, defend and hold harmless Lender from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel for Lender in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not Lender shall be designated a party thereto), that may be imposed on, incurred by, or asserted against Lender in any manner relating to or arising out of (i) any breach by Borrower of their respective obligations under, or any material misrepresentation by Borrower contained in, this Agreement or the other Loan Documents, or (ii) the use or intended use of the proceeds of the Loan (collectively, the "Indemnified Liabilities"); provided, however, that Borrower shall not have any obligation to Lender hereunder to the extent that such Indemnified Liabilities arise

83

08-13555-mg   Doc 27854-2   Filed 05/14/12   Entered 05/14/12 16:52:48   Exhibit -
Exhibit A Part 2 of 2   Pg 16 of 36
Case 1:08-cv-05353-CM   Document 1-3   Filed 06/11/08   Page 14 of 34

from the gross negligence, illegal acts, fraud or willful misconduct of Lender. To the extent that the undertaking to indemnify, defend and hold harmless set forth in the preceding sentence may be unenforceable because it violates any law or public policy, Borrower shall pay the maximum portion that it is permitted to pay and satisfy under Applicable Law to the payment and satisfaction of all Indemnified Liabilities incurred by Lender.

(c)     Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless Lender and the Indemnified Parties from and against any and all losses (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion) that Lender may incur, directly or indirectly, as a result of a default under Sections 4.1.8 or 5.2.8.

(d)     Borrower covenants and agrees to pay for or, if Borrower fails to pay, to reimburse Lender for, any consent, approval, waiver or confirmation obtained from such Rating Agency pursuant to the terms and conditions of this Agreement or any other Loan Document and Lender shall be entitled to require payment of such fees and expenses as a condition precedent to the obtaining of any such consent, approval, waiver or confirmation.

Section 10.14  Schedules and Exhibits Incorporated.

The Schedules and Exhibits annexed hereto are hereby incorporated herein as a part of this Agreement with the same effect as if set forth in the body hereof.

Section 10.15  Offsets, Counterclaims and Defenses.

Any assignee of Lender's interest in and to this Agreement, the Note and the other Loan Documents shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to such documents which Borrower may otherwise have against any assignor of such documents, and no such unrelated counterclaim (other than compulsory counterclaims) or defense shall be interposed or asserted by Borrower in any action or proceeding brought by any such assignee upon such documents and any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower.

Section 10.16  No Joint Venture or Partnership; No Third Party Beneficiaries.

(a)     Notwithstanding the fact that an Affiliate of Lender is an indirect owner of Borrower as of the date hereof, Borrower and Lender intend that the relationships created hereunder and under the other Loan Documents be solely that of borrower and lender. Nothing herein or therein is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Borrower and Lender nor to grant Lender any interest in the Property other than that of mortgagee, beneficiary or lender.

(b)     This Agreement and the other Loan Documents are solely for the benefit of Lender and Borrower and nothing contained in this Agreement or the other Loan Documents shall be deemed to confer upon anyone other than Lender and Borrower any right to insist upon

84

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 17 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 15 of 34

or to enforce the performance or observance of any of the obligations contained herein or therein. All conditions to the obligations of Lender to make the Loan hereunder are imposed solely and exclusively for the benefit of Lender and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make the Loan in the absence of strict compliance with any or all thereof and no other Person shall under any circumstances be deemed to be a beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Lender if, in Lender's sole discretion, Lender deems it advisable or desirable to do so.

Section 10.17  Publicity.

All news releases, publicity or advertising by Borrower or their Affiliates through any media intended to reach the general public which refers to the Loan Documents or the financing evidenced by the Loan Documents, to Lender, or any of their Affiliates shall be subject to the prior written approval of Lender, which shall not be unreasonably withheld. Notwithstanding the foregoing, disclosure required by any federal or State securities laws, rules or regulations, as determined by Borrower's counsel, shall not be subject to the prior written approval of Lender.

Section 10.18  Waiver of Marshalling of Assets.

To the fullest extent permitted by Applicable Law, Borrower, for itself and its successors and assigns, waives all rights to a marshalling of the assets of Borrower, Borrower's partners and others with interests in Borrower, and of the Property, or to a sale in inverse order of alienation in the event of foreclosure of all or part of the Security Instrument, and agrees not to assert any right under any laws pertaining to the marshalling of assets, the sale in inverse order of alienation, homestead exemption, the administration of estates of decedents, or any other matters whatsoever to defeat, reduce or affect the right of Lender under the Loan Documents to a sale of the Property for the collection of the Debt without any prior or different resort for collection or of the right of Lender to the payment of the Debt out of the net proceeds of the Property in preference to every other claimant whatsoever.

Section 10.19  Waiver of Counterclaim.

Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or its agents.

Section 10.20  Conflict; Construction of Documents; Reliance.

In the event of any conflict between the provisions of this Agreement and any of the other Loan Documents, the provisions of this Agreement shall control. The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Loan Documents and that such Loan Documents shall not be subject to the principle of construing their meaning against the party which drafted same. Borrower acknowledges that, with respect to the Loan, Borrower shall rely solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Lender or any parent, subsidiary or Affiliate of Lender. Lender shall not be subject to any limitation whatsoever in the exercise of any rights or remedies available to it under any of the Loan Documents or any other agreements or

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 18 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 16 of 34

Instruments which govern the Loan by virtue of the ownership by it or any parent, subsidiary or Affiliate of Lender of any equity interest any of them may acquire in Borrower, and Borrower hereby irrevocably waives the right to raise any defense or take any action on the basis of the foregoing with respect to Lender's exercise of any such rights or remedies. Borrower acknowledges that Lender engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of Borrower or its Affiliates.

Section 10.21 Brokers and Financial Advisors.

Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transactions contemplated by this Agreement, except for Schaub Financial. Borrower hereby agrees to indemnify, defend and hold Lender harmless from and against any and all claims, liabilities, costs and expenses of any kind (including Lender's attorneys' fees and expenses) in any way relating to or arising from a claim by any Person that such Person acted on behalf of Borrower or Lender in connection with the transactions contemplated herein. The provisions of this Section 10.21 shall survive the expiration and termination of this Agreement and the payment of the Debt.

Section 10.22 Prior Agreements.

This Agreement and the other Loan Documents contain the entire agreement of the parties hereto and thereto in respect of the transactions contemplated hereby and thereby, and all prior agreements among or between such parties, whether oral or written, between Borrower and/or its Affiliates and Lender are superseded by the terms of this Agreement and the other Loan Documents.

Section 10.23 Limitation of Liability.

Notwithstanding anything contained herein to the contrary, no claim may be made by Borrower or any other Person (including any Guarantor or Indemnitor) against Lender, Servicer, Agent, or any Co-Lenders or the Affiliates, directors, officers, employees, attorneys or agent of any of such Persons for any special, indirect, consequential or punitive damages in respect of any claim for breach of contract or any other theory of liability arising out of or related to the transactions contemplated by this Agreement or any act, omission or event occurring in connection therewith; and Borrower hereby waives, releases and agrees not to sue upon any claim for any such damages, whether or not accrued and whether or not known or suspected to exist in its favor.

Section 10.24 Cross Collateralization/Cross Default.

Borrower's obligations hereunder and under the Security Instrument are cross-defaulted with, and the Property described herein cross-collateralized with those certain properties as described in the 163 Security Instrument and the Val Vista Security Instrument, for the benefit of Lender, and both intended to be recorded in the land records of Yavapai County and Pinal County, respectively, relating to the properties described therein (collectively, the "**Crossed**

{10347125;14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 19 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 17 of 34

Properties"). The Crossed Properties are also described in Exhibits A-2 and A-3, attached hereto and made a part hereof.

## ARTICLE 11 PARTIAL RELEASE OF PARCELS

Section 11.1    Release of Parcels.

Provided no Event of Default has occurred and is continuing, Lender shall permit a partial release of the lien of the Security Instrument upon the sale (the "Parcel Release") of any portion of the Property (each, a "Parcel") by Borrower upon Borrower's compliance with the following terms and conditions, in form and substance satisfactory to Lender:

(a)    The Parcel is, or subsequent to a transfer will be, a separate tax lot and is not, or subsequent to a transfer will not be, required to be included within the Property for purposes of any governmental rule or necessary or to satisfy or facilitate the requirements or terms of any other pending transaction to sell or transfer any other portion of the Property (and Lender reserves the right to require a proration of any property taxes that may be due and payable on such Parcel subsequent to a transfer but prior to the issuance of a new tax lot for such Parcel and such other assurances as may be reasonably satisfactory to Lender);

(b)    Borrower shall have given to Lender a written request for the Parcel Release not less than ten (10) days prior to the desired Parcel Release date, accompanied by all evidence, information and other items required by Lender, including, but not limited to, a copy of the purchase and sale contract for the applicable Parcel, the terms of which are satisfactory to Lender in its sole and absolute discretion;

(c)    Each Parcel and the remaining portion of the Property and the Parcel Release and the conveyance shall be in compliance with all applicable zoning, land use and other governmental rules and regulations of all governmental authorities (including, without limitation, Borrower's delivery of evidence satisfactory to Lender that the remaining portion of the Property has access to at least one publicly dedicated road, and has access to or shall have access to public utilities in accordance with the timeline for connecting such public utilities as set forth in the Project Schedule attached hereto as Schedule III);

(d)    Borrower shall have delivered to Lender a copy of the closing statement for the sale of the Parcel for Lender's review and approval, certified by Borrower as true and correct, not less than three (3) Business Day prior to the desired Parcel Release;

(e)    Borrower shall:

(i)    Pay to Lender a release price at the closing of the sale of the Parcel in immediately available funds which shall be no less than one hundred percent (100%) of the "Net Sale Proceeds" from the sale of such Parcel (defined as the gross sales price for such Parcel less ordinary and customary closing costs including transfer taxes and brokerage fees (not to exceed 10% of such gross sales price) if customarily paid by sellers, but in no event exceeding 12% of such gross sales price). Prior to an Event of Default, the Net Sale Proceeds shall be applied by Lender to (A) if the sale occurs within the first six (6) months after the Closing Date, a Prepayment Premium on the amount of

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 20 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 18 of 34

the Net Sale Proceeds applied to the outstanding principal of the Loan calculated for the period from Lender's receipt of the Net Sale Proceeds to the end of the sixth (6th) month anniversary of the Closing Date; and (B) (i) if the Net Sale Proceeds is paid on a Payment Date, all accrued and unpaid interest on the amount of principal being prepaid or (ii) if the Net Sale Proceeds is not paid on a Payment Date, the Interest Shortfall, and (C) the balance of such Net Sale Proceeds to repayment of the outstanding principal balance of the Loan. If an Event of Default exists, Lender may apply the Net Sale Proceeds to any portion of the Debt as Lender elects in its sole discretion;

(ii)    have delivered to the title company responsible for the closing of title to the Parcel (which title company shall be acceptable to Lender in its reasonable discretion) a copy of a notice in form and substance satisfactory to Lender providing that such title company is authorized to close on the sale of such Parcel only in accordance with a closing statement approved in writing by Lender and provide Lender with evidence that substantiates delivery of such notice to the title company to the reasonable satisfaction of Lender;

(iii)    satisfy any and all other conditions required to be satisfied for a Parcel Release under the Loan Documents and those other conditions reasonably requested by Lender; and

(iv)    pay all of Lender's fees, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred in connection with the Parcel Release, together with accrued and unpaid interest in respect of the principal amount of the Loan secured hereby to be repaid in the manner set forth in subsection (e)(i) above.

Section 11.2    Release of Additional Collateral Parcels.

Lender has received as additional collateral for the Loan (i) the 163 Security Instrument, which is a second priority deed of trust on the 163 Property given by Borrower's Affiliate, 163, LLC ("163") and (ii) the Val Vista Security Instrument, which is a first priority deed of trust on the Val Vista Property given by Borrower's Affiliate, A&N Investment, L.L.C. ("A&N").

(a)    Lender has agreed to permit a partial release of the lien of the 163 Security Instrument upon the sale of any portion of the 163 Property (each, a "163 Parcel"), subject to 163's compliance with the terms and conditions applicable to a partial release of lien as set forth in the 163 Security Instrument. In connection with the sale of any 163 Parcel, Borrower shall cause 163 to remit to Lender all net sale proceeds 163 would otherwise be entitled to receive following payment of any portion of such proceeds then due the holder of the first deed of trust on the 163 Property.

(b)    Lender has agreed to permit a partial release of the lien of the Val Vista Security Instrument upon the sale of any portion of the Val Vista Property (each, a "Val Vista Parcel"), subject to A&N's compliance with the terms and conditions applicable to a partial release of lien as set forth in the Val Vista Security Instrument. In connection with the sale of any Val Vista Parcel, Borrower shall cause A&N to remit to Lender all net sale proceeds A&N

88

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 21 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 19 of 34

would otherwise be entitled to receive following payment of any portion of such proceeds then due the holder of the first deed of trust on the Val Vista Property.

[Signature Page Follows]

89

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 22 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 20 of 34

[Signature Page to Loan Agreement]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**BORROWER:**

MIDDLE MOUNTAIN 156, LLC, an Arizona limited liability company

By:    Middle Mountain 39, LLC, an Arizona limited liability company

By:    _____
Name: Nicholas W. Bonanno, Jr.
Title:  Manager

By:    Allen D. Jenkins & Associates, LLC, an Arizona limited liability company

By:    _____
Name: Allen D. Jenkins
Title:  Manager

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 23 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 21 of 34

[Signature Page to Loan Agreement – Continued]

LENDER:

LEHMAN BROTHERS HOLDINGS INC., d/b/a Lehman
Capital, a Division of Lehman Brothers Holdings Inc., a
Delaware corporation

By: _____
Name:          Chris Westfahl
Title:          Authorized Signatory

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 24 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 22 of 34

**(Signature Page to Loan Agreement - Continued)**

The undersigned, while not directly liable to Lender for payment of the Debt except as specifically set forth in the Guaranty or the Environmental Indemnity, are signing this Agreement to acknowledge their agreement to the terms hereof:

**INDEMNITOR/GUARANTOR:**

_____
NICHOLAS W. BONNANO, JR.

_____
RITA BONNANO

_____
ALLEN D. JENKINS

_____
TAMERA R. JENKINS

[SIGNATURES CONTINUE ON FOLLOW PAGE]

08-13555-mg     Doc 27854-2     Filed 05/14/12     Entered 05/14/12 16:52:48     Exhibit -
Exhibit A Part 2 of 2     Pg 25 of 36
Case 1:08-cv-05353-CM     Document 1-3     Filed 06/11/08     Page 23 of 34

(Signature Page to Loan Agreement – Continued)

The undersigned, while not directly
liable to Lender for payment of the
Debt except to the extent set forth in
the 163 Security Instrument and Val
Vista Security Instrument, are
signing this Agreement to
acknowledge their agreement to the
terms hereof:

**INDEMNITOR/GUARANTOR:**

**163, LLC,**
an Arizona limited liability company

By: _____
    Name:    Allen D. Jenkins
    Title:    Manager

**A&N INVESTMENT PROPERTIES, L.L.C.**
an Arizona limited liability company

By:    IBSR LIMITED PARTNERSHIP, an
    Arizona limited partnership, its Member

    By:    IBSR MANAGEMENT, INC., an
    Arizona corporation, its General Partner

    By: _____
        Name: Nicholas W. Bonanno, Jr.
        Its:    President

[END OF SIGNATURES]

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 26 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 24 of 34

## SCHEDULE I

Organizational Chart of Borrower

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 27 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 25 of 34

## MIDDLE MOUNTAIN 156, LLC
### An Arizona Limited Liability Company
Sole Purpose: Lehman (SPE) Borrower and Owner of Main Collateral Property

Suzanne M. Hay
**CSC Entity Services**
### INDEPENDENT MANAGER

| MIDDLE MOUNTAIN 39, LLC | ALLEN D. JENKINS & ASSOCIATES LLC |
|---|---|
| An Arizona Limited Liability company | An Arizona Limited Liability Company |
| Sole Purpose: Member of Middle Mountain 156, LLC | Sole Purpose: Member of Middle Mountain 156, LLC |
| MANAGER: NICHOLAS W. BONANNO, JR. | MANAGER: ALLEN D. JENKINS |
| Sole Member: IBSR Limited Partnership, an | Members: Tamera R. Jenkins |
| Arizona limited Partnership | Allen D. Jenkins |
| **MEMBER- 99%** | **MEMBER-1%** |

## A&N INVESTMENT PROPERTIES, LLC
### An Arizona Limited Liability Company
Purpose: Owner of Property that is additional collateral for Lehman Loan (SPE)
Guarantor of the Lehman Loan to Middle Mountain 156, LLC
MANAGER: NICHOLAS W. BONANNO, JR.
MEMBER: IBSR LIMITED PARTNERSHIP,
AN ARIZONA LIMITED PARTNERSHIP

## DESERT TRANQUILITY NURSERY, INC.
### An Arizona Corporation
Purpose: Owner of Property that is additional collateral for Lehman Loan (SPE)
Guarantor of the Lehman Loan to Middle Mountain 156, LLC
PRESIDENT: NICHOLAS W. BONANNO III
VICE PRESIDENT/TREASURER: HEATHER BONANNO

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 28 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 26 of 34

## SCHEDULE II

Bankruptcy Matters

1.  Chapter 7 Voluntary Joint Petition in Bankruptcy filed by Allen D. Jenkins and Marla L. Jenkins on April 26, 1991 in the United States Bankruptcy Court for the District of Arizona, judgment entered May 2, 1991.

2.  Chapter 7 Bankruptcy Judgment entered March 23, 1993 against Nicholas Bonanno and Rita Bonanno in the United States Bankruptcy Court for the District of Arizona, discharging obligations from bankruptcy filing of June 16, 1989.

3.  Chapter 11 Bankruptcy Petition filed November 8, 2002 by N.W.B. Incorporated, Nicholas Bonanno as principal, judgment entered November 14, 2002.

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 29 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 27 of 34

## SCHEDULE III

Project Schedule

| Task | Estimated Timeframe from loan closing (items are consecutive) |
|---|---|
| Complete Negotiations with City of Phoenix | 1-2 Month |
| Obtain Easements | 1-2 Month |
| Complete Design Plans | 3 Months |
| Obtain Final Engineering Approval | 1 Month |
| Construction (Water and Sewer to the Site) | 4-6 Months |
| TOTAL | 10-12 Months |

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 30 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 28 of 34

EXHIBIT A-1

LEGAL DESCRIPTION OF THE PROPERTY

PARCEL NO. 1:

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA.

PARCEL NO. 2:

THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

EXCEPT THAT PORTION OF SECTION 26 BEING THE PHOENIX-ROCK SPRINGS HIGHWAY (BLACK CANYON INTERSTATE HIGHWAY NO. 17) WHICH IS THAT PORTION OF SECTION 26 LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE NORTH LINE OF SAID NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, WHICH IS 80.36 FEET WESTERLY OF THE NORTHEAST CORNER THEREOF;

THENCE SOUTH 9 DEGREES 57 MINUTES 36 SECONDS EAST 478.57 FEET, TO A POINT ON THE EAST LINE OF SAID NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26 AND TO THE END OF THIS LINE DESCRIPTION. THE PORTION OF SECTION 26 THAT ENCOMPASSES THE PHOENIX-ROCK SPRINGS HIGHWAY WAS DEDICATED TO THE STATE OF ARIZONA BY WARRANTY DEED DATED JULY 9, 1963, RECORDED SEPTEMBER 5, 1933 IN DOCKET 4718, PAGE 237, ACCORDING TO THE RECORDS OF THE COUNTY RECORDER OF THE COUNTY OF MARICOPA, STATE OF ARIZONA.

PARCEL NO. 3:

THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

AND THAT PART OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 26, LYING WEST OF THE CENTERLINE OF THE PHOENIX-ROCK SPRINGS HIGHWAY;

EXCEPT THAT PORTION OF THE NORTHWEST QUARTER OF AND A PORTION OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

{10347125:14}                    A-1-1

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 31 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 29 of 34

COMMENCING AT THE NORTH QUARTER CORNER OF SAID SECTION 26;

THENCE SOUTH 89 DEGREES 38 MINUTES 14 SECONDS WEST ALONG THE NORTH LINE OF SAID NORTHWEST QUARTER OF SECTION 26, A DISTANCE OF 283.48 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE 17;

THENCE SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST, ALONG SAID RIGHT-OF-WAY LINE, 2012.91 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST ALONG SAID RIGHT-OF-WAY LINE, 671.09 FEET TO A POINT ON THE SOUTH LINE OF SAID NORTHEAST QUARTER OF SECTION 26;

THENCE SOUTH 89 DEGREES 42 MINUTES 21 SECONDS WEST, ALONG SAID SOUTH LINE OF THE NORTHEAST QUARTER AND THE SOUTH LINE OF THE NORTHWEST QUARTER, 1178.61 FEET;

THENCE NORTH 00 DEGREES 18 MINUTES 18 SECONDS WEST, 172.10 FEET;

THENCE SOUTH 89 DEGREES 42 MINUTES 21 SECONDS WEST, 319.00 FEET TO A POINT ON THE WEST LINE OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER;

THENCE 00 DEGREES 18 MINUTES 57 SECONDS WEST, ALONG SAID WEST LINE, 489.46 FEET;

THENCE NORTH 89 DEGREES 42 MINUTES 02 SECONDS EAST, 1385.32 FEET TO THE POINT OF BEGINNING;

AND EXCEPT THE SOUTH 172 FEET OF THE WEST 319 FEET OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

PARCEL NO. 4:

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE, PURSUANT TO THE PROVISIONS OF THE ACT OF AUGUST 1, 1946 (60 STAT. 755) AS SET FORTH IN THE PATENT OF SAID LAND.

A-1-2

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 32 of 36
Case 1:08-cv-05353-CM   Document 1-3   Filed 06/11/08   Page 30 of 34

PARCEL NO. 5:

THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE NORTHWEST
QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND
SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

EXCEPT ALL MINERALS IN THE LAND AS SET FORTH IN THE PATENT THEREOF;
AND

EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR
MAYBE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF
FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE,
PURSUANT TO THE PROVISIONS OF THE ACT OF AUGUST 1, 1946 (60 STAT. 755) AS
SET FORTH IN THE PATENT OF SAID LAND.

TOGETHER WITH AN EASEMENT TO CONSTRUCT, RECONSTRUCT, MAINTAIN AND
USE AS AN ACCESS ROAD AND UTILITIES CERTAIN LANDS FOR THE BENEFIT OF
THE ABOVE-DESCRIBED PARCEL OF LAND AS SET FORTH IN GRANT OF
EASEMENT RECORDED IN DOCKET 14214, PAGE 275.

PARCEL NO. 6:

THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF THE NORTHWEST
QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND
SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

EXCEPT ALL MINERALS IN THE LAND AS SET FORTH IN THE PATENT THEREOF;
AND

TOGETHER WITH AN EASEMENT TO CONSTRUCT, RECONSTRUCT, MAINTAIN AND
USE AS AN ACCESS ROAD AND UTILITIES CERTAIN LANDS FOR THE BENEFIT OF
THE ABOVE-DESCRIBED PARCEL OF LAND AS SET FORTH IN GRANT OF
EASEMENT RECORDED IN DOCKET 14214, PAGE 275.

EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY
BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF
FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE,
PURSUANT TO THE PROVISIONS OF THE ACT OF AUGUST 1, 1946 (60 STAT. 755) AS
SET FORTH IN THE PATENT OF SAID LAND.

PARCEL NO. 7:

THE SOUTH 172 FEET OF THE WEST 319 FEET OF THE SOUTHEAST QUARTER OF
THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 33 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 31 of 34

OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA.

PARCEL NO. 8:

A PORTION OF THE NORTHWEST QUARTER AND A PORTION OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTH QUARTER CORNER OF SAID SECTION 26;

THENCE SOUTH 89 DEGREES 38 MINUTES 14 SECONDS WEST ALONG THE NORTH LINE OF SAID NORTHWEST QUARTER OF SECTION 26, A DISTANCE OF 283.46 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE 17;

THENCE SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST ALONG SAID RIGHT-OF-WAY LINE, 2012.91 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST ALONG SAID RIGHT-OF-WAY LINE, A DISTANCE OF 671.09 FEET TO A POINT ON THE SOUTH LINE OF SAID NORTHEAST QUARTER OF SECTION 26;

DESCRIBED ABOVE, ALL AS SET FORTH IN THAT CERTAIN GRANT OF EASEMENTS RECORDED JANUARY 29, 1976 IN DOCKET 11522, PAGE 464, OVER, ACROSS AND UNDER THE FOLLOWING DESCRIBED REAL PROPERTY:

BEGINNING AT A POINT IN THE EAST-WEST MID SECTION LINE OF SAID SECTION 26 THAT BEARS NORTH 89 DEGREES 44 MINUTES 26 SECONDS EAST 2300.97 FEET FROM THE EAST QUARTER CORNER OF SAID SECTION 26;

THENCE FROM SAID POINT OF BEGINNING AND LEAVING SAID MID SECTION LINE NORTH 58 DEGREES 16 MINUTES 39 SECONDS EAST 126.45 FEET;

THENCE NORTH 89 DEGREES 44 MINUTES 26 SECONDS EAST 405.24 FEET TO A POINT IN THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE SEVENTEEN LAST SAID POINT BEARS SOUTH 09 DEGREES 54 MINUTES 15 SECONDS EAST 337.15 FEET FROM AN ARIZONA STATE HIGHWAY DEPARTMENT BRASS DISK STAMPED "A.H.D. 1 039+00" MARKING SAID RIGHT-OF-WAY LINE;

THENCE ALONG SAID RIGHT-OF-WAY LINE SOUTH 09 DEGREES 54 MINUTES 15 SECONDS EAST 66.95 FEET TO A POINT IN THE EAST-WEST MIDSECTION LINE OF SAID SECTION 26;

A-1-4

{10347125;14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 34 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 32 of 34

THENCE LEAVING SAID RIGHT-OF-WAY LINE ALONG SAID MIDSECTION LINE
SOUTH 89 DEGREES 44 MINUTES 26 SECONDS WEST 524.32 FEET TO THE POINT OF
BEGINNING

{10347125:14}

08-13555-mg    Doc 27854-2    Filed 05/14/12    Entered 05/14/12 16:52:48    Exhibit -
Exhibit A Part 2 of 2    Pg 35 of 36
Case 1:08-cv-05353-CM    Document 1-3    Filed 06/11/08    Page 33 of 34

## EXHIBIT A-2

## LEGAL DESCRIPTION OF THE 163 PROPERTY

Parcel 3, according to the map on file in the office of the county recorder of Yavapai County, Arizona, in Book 7 of Results of Survey, Page 56.

Except all coal and other minerals as reserved in Patent to said land.

08-13555-mg   Doc 27854-2   Filed 05/14/12   Entered 05/14/12 16:52:48   Exhibit -
Exhibit A Part 2 of 2   Pg 36 of 36
Case 1:08-cv-05353-CM   Document 1-3   Filed 06/11/08   Page 34 of 34

<u>EXHIBIT A-3</u>

## LEGAL DESCRIPTION OF THE VAL VISTA PROPERTY

PARCEL 1:

The Southeast quarter of the Northwest quarter of Section 26, Township 5 South, Range 6 East
of the Gila and Salt River Meridian, Pinal County, Arizona.

PARCEL 2:

The Northeast quarter of the Northwest quarter of Section 26, Township 5 South, Range 6 East
of the Gila and Salt River Meridian, Pinal County, Arizona.