**<u>EXHIBIT B</u>**
**(Promissory Note)**

# PROMISSORY NOTE

$44,000,000.00

New York, New York
July 13, 2006

FOR VALUE RECEIVED, **MIDDLE MOUNTAIN 156, LLC**, an Arizona limited liability company, as maker, having its principal place of business at 20837 North 41st Avenue, Glendale, Arizona 85308 ("Borrower"), hereby unconditionally promises to pay to the order of **LEHMAN BROTHERS HOLDINGS INC.**, d/b/a **LEHMAN CAPITAL**, a division of **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation having an address at 399 Park Avenue, New York, New York 10022 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum FORTY-FOUR MILLION AND 00/100 DOLLARS ($44,000,000.00) (the "Loan") or so much thereof as may be advanced pursuant to that certain Loan Agreement, dated the date hereof, between Borrower and Lender (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in accordance with the terms of this Note and the Loan Agreement. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Loan Agreement.

## ARTICLE 1 - PAYMENT TERMS

Borrower agrees to pay the principal sum of this Note and interest on the unpaid principal sum of this Note from time to time outstanding at the rates and at the times specified in Article 2 of the Loan Agreement and the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon shall be due and payable on the Maturity Date.

## ARTICLE 2 - DEFAULT AND ACCELERATION

The Debt shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the occurrence of any other Event of Default and in addition, Lender shall be entitled to receive interest on the entire unpaid principal sum at the Default Rate pursuant to the terms of the Loan Agreement. This Article 2, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

It is expressly agreed that if default be made in the payment of the whole or any part of the Debt evidenced hereby, or if an Event of Default be made in the performance of any of the terms, agreements, covenants or conditions contained herein or in the Security Instrument (as defined herein) or any of the other Loan Documents which are given to secure and which secure the payment of this Note or any of the other Obligations, then in any of said events, the entire unpaid principal sum due hereunder plus all accrued interest shall, at the option of the holder hereof, at once become and be due and payable without notice to Borrower or any other person. In the event of any default in the payment of this Note and if the same is collected by an attorney, Borrower agrees to pay all costs of collection, including reasonable attorneys' fees.

{10347123:5}

## ARTICLE 3 - LOAN DOCUMENTS

This Note is secured by that certain Deed of Trust, Security Agreement and Fixture Filing of even date herewith between Borrower, Trustee and Lender (the "Security Instrument"), and the other Loan Documents. All of the terms, covenants and conditions contained in the Loan Agreement, the Security Instrument and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

## ARTICLE 4 - SAVINGS CLAUSE

This Note and the Loan Agreement are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance of the Loan at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the Maximum Legal Rate. If, by the terms of this Note, the Loan Agreement or the other Loan Documents, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Legal Rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to the Maximum Legal Rate and all previous payments in excess of the Maximum Legal Rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due under the Loan, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Loan does not exceed the Maximum Legal Rate of interest from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.

## ARTICLE 5 - NO ORAL CHANGE

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## ARTICLE 6 - WAIVERS

Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person who may become liable for the payment of all or any part of the Debt, under this Note, the Loan Agreement or the other Loan Documents. No notice to or demand on Borrower shall be deemed to be a waiver of

(10347123:5)

- 2 -

the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. If Borrower is a partnership, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the individuals or entities comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership and their partners shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained herein shall remain in full force and be applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. If Borrower is a limited liability company, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the members comprising the limited liability company, and the term "Borrower" as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company and their members shall not thereby be released from any liability. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, corporation or limited liability company which may be set forth in the Loan Agreement, the Security Instrument or any other Loan Document.) If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

## ARTICLE 7 - TRANSFER

Upon the transfer of this Note, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

## ARTICLE 8 - EXCULPATION

Notwithstanding anything to the contrary contained in this Note, the liability of Borrower to pay the Debt and for the performance of the other agreements, covenants and obligations contained herein and in the Security Instrument, the Loan Agreement and the other Loan Documents shall be limited as set forth in Section 9.4 of the Loan Agreement.

## ARTICLE 9 - GOVERNING LAW, JURISDICTION, WAIVER OF TRIAL BY JURY

(a)    THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY LEGAL REQUIREMENTS OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIENS AND SECURITY

{10347123;5}                                   - 3 -

INTERESTS CREATED PURSUANT TO THE SECURITY INSTRUMENT AND THE
OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED
ACCORDING TO THE LAW OF THE STATE IN WHICH THE APPLICABLE PROPERTY
IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULEST EXTENT PERMITTED
BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL
GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN
DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR
THEREUNDER.    TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER
HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO
ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THE LOAN
AGREEMENT, THIS NOTE AND THE OTHE LOAN DOCUMENTS. THIS CHOICE OF
GOVERNING LAW IS MADE PURSUANT TO NEW YORK GENERAL OBLIGATION
LAW SECTION 5-1401.

ANY SUIT, ACTION OR PROCEEDING AGAINST BORROWER ARISING OUT OF
OR RELATING TO THIS NOTE MAY AT LENDER'S OPTION BE INSTITUTED IN ANY
FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK
AND BORROWER WAIVES ANY OBJECTIONS WHICH BORROWER MAY NOW OR
HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY
SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY
SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR
PROCEEDING.  ANY SUIT, ACTION OR PROCEEDING BROUGHT BY BORROWER
ARISING OUT OF OR RELATING TO THIS NOTE OR THE OTHER LOAN DOCUMENTS
OR THE LENDER-BORROWER RELATIONSHIP CREATED THEREBY (WHETHER IN
CONTRACT OR IN TORT) SHALL ONLY BE INSTITUTED IN ANY FEDERAL OR
STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, AND
BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER
HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT,
ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO
THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.
BORROWER DOES HEREBY DESIGNATE AND APPOINT DELANEY CORPORATE
SERVICES, 41 STATE STREET, SUITE 405, ALBANY, NEW YORK 12207 AS ITS
AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE
OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION
OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK,
AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS
AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER
IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT
EFFECTIVE SERVICE OF PROCESS UPON BORROWER, IN ANY SUCH SUIT, ACTION
OR PROCEEDING IN THE STATE OF NEW YORK. THIS CHOICE OF FORUM IS MADE
PURSUANT TO NEW YORK GENERAL OBLIGATION LAW SECTION 5-1402.

BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGE
OF ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME
AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH
AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE
SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF

(10347123:5)                            - 4 -

PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK, OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

NOTHING IN THIS NOTE WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING ANY SUIT, ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, THE LOAN AGREEMENT, THE SECUIRTY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH OR THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

### ARTICLE 10 - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 10.6 of the Loan Agreement.

[NO FURTHER TEXT ON THIS PAGE]

[Signature Page to Promissory Note]

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day
and year first above written.

BORROWER:

MIDDLE MOUNTAIN 156, LLC, an Arizona limited liability company

By:    Middle Mountain 39, LLC, an Arizona limited liability company

By: _____
Name: Nicholas W. Bonanno, Jr.
Title:   Manager

By:    Allen D. Jenkins & Associates, LLC, an Arizona limited liability
company

By: _____
Name: Allen D. Jenkins
Title:   Manager

## ACKNOWLEDGMENT

STATE OF _ARIZONA_ )
COUNTY OF _MARICOPA_ ) ss.:

On the 26TH day of _JUNE_ in the year 2006 before me, the undersigned, personally appeared _NICHOLAS W. BONANNO JR. AND ALLEN D. JENKINS_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature and Office of
individual taking acknowledgment

OFFICIAL SEAL
JUDITH P. WALKER
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 5, 2006

{10347123;34}                    A-

# EXHIBIT C
**(Guarantee)**

## GUARANTOR FULL REPAYMENT GUARANTY

THIS GUARANTOR FULL REPAYMENT GUARANTY ("Guaranty"), dated effective as of the 13th day of July, 2006, is made and given by NICHOLAS W. BONANNO, JR. and RITA BONNANO, his wife, each an individual having an address at 20837 North 41ˢᵗ Avenue, Glendale, Arizona 85308 (jointly and severally, "Bonanno") and ALLEN D. JENKINS and TAMERA R. JENKINS, his wife, each an individual having an address at 5417 West Ironwood Drive, Glendale, Arizona 85302 (jointly and severally, "Jenkins," together with Bonanno are hereinafter referred to herein collectively as "Guarantor") to and for the benefit of LEHMAN BROTHERS HOLDINGS INC., doing business as Lehman Capital, a division of Lehman Brothers Holdings Inc., having its principal place of business at 399 Park Avenue, 8ᵗʰ Floor, New York, New York 10022 ("Lender").

Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in that certain Loan Agreement dated the date hereof, between Middle Mountain 156, LLC, an Arizona limited liability company (the "Borrower") and Lender (as the same may hereafter be amended, modified or supplemented from time to time, the "Loan Agreement").

### WITNESSETH:

A.    Borrower is the owner of certain premises located at SCW Interstate 17 and Dixileta Drive in Phoenix, Arizona, which premises are legally described on Schedule A attached hereto (the "Property").

B.    Guarantor owns an indirect membership interest in Borrower.

C.    Lender is prepared to make a loan ("Loan") to Borrower in the principal amount of $44,000,000.00, pursuant to the Loan Agreement, to be evidenced by that certain secured promissory note of even date herewith in the principal amount of $44,000,000.00 made by Borrower to Lender (the "Note"). The Note, together with any and all other documents which evidence or secure the Loan, are sometimes collectively referred to herein as the "Loan Documents").

D.    Lender has required, among other collateral, as security for making the Loan and the observance and performance of all the terms, covenants and provisions of the Loan Documents on the part of the Borrower to be observed and performed, a security interest in the Property, as evidenced by each of that certain Deed of Trust, Security Agreement and Fixture Filing of even date herewith, made by Borrower in favor of Lender (the "Security Instrument").

E.    As an inducement to Lender to make the Loan to Borrower and with full knowledge that Lender would not make the Loan without this Guaranty, Guarantor has agreed to enter into, execute and deliver this Guaranty to and for the benefit of Lender.

!10347195;5;

NOW, **THEREFORE,** in consideration of the foregoing premises and other good and valuable consideration, receipt and sufficiency of which are acknowledged, and to induce Lender to make the Loan, Guarantor unconditionally covenants and agrees as set forth below.

      1.    **Guaranty**.

      (a)    This is a guaranty of payment and not of collection. Subject to the terms and conditions hereof, including without limitation Section 3 below, Guarantor unconditionally, absolutely, and irrevocably, as primary obligor and not merely as a surety guarantees to Lender the punctual and complete payment when due, whether at or after maturity, upon acceleration or otherwise, of that portion of the amounts due and outstanding under the Loan including, without limitation, the principal sum, all accrued interest, default interest and amounts advanced by Lender under the Loan Documents (such payment obligation is referred to hereinafter as the "**Guaranteed Obligation**");

      (b)    Guarantor also agrees to pay on demand any and all expenses, including, without limitation, reasonable attorneys fees and disbursements incurred by Lender in enforcing or collecting any or all of the obligations under this Guaranty ("**Lender's Expenses**"). Lender's Expenses shall not be deemed to constitute a component of the Guaranteed Obligation but shall be considered separate and distinct therefrom.

      2.    **Guaranty Absolute**.

      (a)    Guarantor guarantees that the Guaranteed Obligation will be paid strictly in accordance with the terms of the Loan, regardless of any law, statute, rule, regulation, decree or order now or subsequently in effect in any jurisdiction affecting or purporting to affect in any manner any of such terms or the rights or remedies of Lender.

      (b)    Any payment or payments made by Borrower or any other person or received or collected by Lender from Borrower or any other person by virtue of any action or proceeding or any other set-off or appropriation or application at any time or from time to time in respect of any indebtedness, obligations or liabilities of Borrower under the terms of the Loan may be applied by Lender in satisfaction of such indebtedness, obligations and liabilities in such order as Lender may determine, in accordance with the terms of the Loan.

      (c)    The liability of Guarantor under this Guaranty shall be absolute and unconditional, and shall not be affected, diminished, released, terminated, discharged or impaired, in whole or in part, by, and Lender may proceed to exercise any right or remedy under this Guaranty irrespective of, any or all of the following:

      (i)    any lack of genuineness, regularity, validity, legality or enforceability, or the voidability of, all or any of the terms of the Loan;

      (ii)    the failure of Lender to exercise or to exhaust any right or remedy or take any action against Borrower or any collateral or other security available to Lender;

                                   2

(iii)    the election, exercise or exhaustion of any right, remedy or action against Borrower or any collateral or other security available to Lender;

(iv)    any collection, award, receipt or settlement by Lender of any Guaranteed Obligation, collateral, other security or any funds pursuant to any exercise of any right, remedy or action by Lender from, or against, as the case may be, Borrower or any collateral or other security available to Lender, except solely and expressly to the extent that any of the payment obligation guaranteed hereunder shall have been satisfied thereby and consequently reduced subject, however, to any of the applicable terms and provisions of this Guaranty respecting reinstatement of the Guaranteed Obligation, as provided for in Subsection (d) hereinbelow;

(v)    any amendment or modification of the terms of any or all of the Loan;

(vi)    any change in the time, manner or place of payment of all or any of the Guaranteed Obligation or any extensions of time for payment, whether in whole or in part, under the terms of the Loan to be paid;

(vii)    any amendment or waiver of, or any assertion or enforcement or failure or refusal to assert or enforce, or any consent or indulgence granted by Lender with respect to a departure from, any term of the Loan, including, without limiting the generality of the foregoing, the waiver by Lender of any default of Borrower, or the making of any other arrangement with, or the accepting of any compensation or settlement from, Borrower;

(viii)    any failure or delay of Lender to exercise, or any lack of diligence in exercising, any right or remedy with respect to the Loan or this Guaranty;

(ix)    any dealings or transactions between Lender and Borrower under the Loan, whether or not the Guarantor shall be a party to or cognizant of the same;

(x)    any bankruptcy, insolvency, assignment for the benefit of creditors, receivership, trusteeship or dissolution of or affecting Borrower;

(xi)    any exchange, surrender or release, in whole or in part, of any security which may be held by Lender at any time for or under the terms of the Loan or in respect of the Guaranteed Obligation;

(xii)    any other guaranty now or subsequently executed by Guarantor or the release of Guarantor from liability for the payment of the guaranteed obligations under any other guaranty or indemnity or any of the terms of the Loan on the part of Borrower to be paid, whether by operation of law or otherwise;

(xiii)    any rights, powers or privileges Lender may now or subsequently have against any person, entity or collateral in respect of the Guaranteed Obligation;

{10347195;5}                                  3

(xiv)    Lender's consent to any assignment or successive assignments of the Loan by Borrower;

(xv)    any other circumstance which might in any manner or to any extent constitute a defense available to Borrower, or vary the risk of Guarantor, or might otherwise constitute a legal or equitable discharge or defense available to a surety or Guarantor, whether similar or dissimilar to the foregoing;

(xvi)    any and all notice of the creation, renewal or extension of the Guaranteed Obligation and notice of or proof of reliance by Lender upon this Guaranty or acceptance of this Guaranty; or

(xvii)    any change, restructuring or termination of the organizational structure or existence of Borrower, whether occurring before or after any default by Borrower under the Loan, and with or without further notice to or assent from Guarantor.

(d)    This Guaranty shall continue to be effective or be reinstated, as the case may be, and the rights of Lender under this Guaranty shall continue with respect to, the Guaranteed Obligation at any time paid by Borrower thereafter required to be restored or returned by Lender upon the insolvency, bankruptcy or reorganization of Borrower, or for any other reason, all as though such Guaranteed Obligation had not been so paid or applied.

3.    **Liability of Guarantor**.

(a)    Guarantor agrees that (i) this Guaranty shall be directly enforceable against Guarantor without first resorting to any other guaranty or exhausting remedies against any other Guarantor and regardless of whether or not Lender elects to also pursue its remedies against Borrower and/or any collateral or other security available to Lender; (ii) suit may be commenced against Guarantor without commencing suit against any other Guarantor and without joining any other Guarantor as defendants; and (iii) any recovery against Borrower shall not reduce Guarantor's liability for payment of the Guaranteed Obligation unless and until the Guaranteed Obligation is fully satisfied. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or any balance of any deposit account or credit on the books of Lender in favor of Borrower or Guarantor or any other person. Guarantor waives (A) to the extent waivable, the benefit of any statute of limitations affecting Guarantor's liability or the enforcement thereof and (B) any and all defenses available to a surety or a Guarantor except payment and performance in full.

(b)    Nothing in this Guaranty shall be construed to modify, limit or otherwise abridge (a) the Guarantor's liability, acting in any other capacity, for the Borrower's obligations under the Loan and (b) the Guarantor's liability (i) pursuant to the terms of the Guaranty of Recourse Obligations of Borrower and the Environmental Indemnity Agreement and (ii) any other guaranty which Guarantor has executed in connection with the Loan.

4.    **Continuing Guaranty**.    Guarantor agrees that this Guaranty is a continuing

guaranty and shall remain in full force and effect until the payment in full of the Guaranteed Obligation and Lender's Expenses. If, following such payment and performance, Lender is required to return, repay or disgorge any payment received by reason of any proceeding under the Bankruptcy Code of the United States or any state insolvency or debtor protection act, then this Guaranty shall continue in full force and effect as to such payment returned, repaid or disgorged.

5.     **Certificate of Lender**. A certificate by Lender as to the amount or extent of any payments or advances under the Loan or the outstanding principal or interest amounts of the Loan shall, in the absence of manifest error, be conclusive evidence as to the subject matter of such certificate against Guarantor in any legal proceedings arising out of or connected with this Guaranty.

6.     **Representations and Warranties**. Guarantor hereby represents and warrants to Lender as follows:

(a)     Guarantor has full power, authority and legal right to enter into this Guaranty and to perform Guarantor's obligations under its terms.

(b)     Guarantor has duly executed and delivered this Guaranty. This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

(c)     No authorization, consent, approval, exemption, permit or license of, or filing with, any governmental or public body or authority is required to authorize, or is otherwise required in connection with, the valid execution or delivery by Guarantor of this Guaranty, or the performance of Guarantor's obligations under this Guaranty, except such as have been obtained and are in full force and effect. All conditions required to the execution, delivery and performance under this Guaranty have been satisfied on or before the date of this Guaranty.

(d)     Guarantor is not insolvent and is not a party to, or otherwise bound by or subject to, any agreement or instrument, the observance of the terms and provisions of which would materially impair Guarantor's ability to perform its obligations under, and to be bound by, this Guaranty. Neither the execution and delivery by Guarantor of this Guaranty, nor compliance by Guarantor with the terms and provisions of this Guaranty, will conflict with, constitute a default under, or result in a breach of, any of the terms, conditions or provisions of, any law or decree or any regulation, order, writ, injunction, determination or award of any court, arbitrator or governmental department, commission, board, bureau, agency or instrumentality (domestic or foreign), or any agreement or instrument to which Guarantor is a party or by which they or any of their properties may be affected.

(e)     All financial statements, if any, which have been furnished by Guarantor to Lender in connection with the Loan and this Guaranty, and all such financial statements which

may be subsequently furnished to Lender by Guarantor, have been and shall be prepared in accordance with generally accepted accounting principles consistently applied; are and shall be true, correct and complete; and do and shall fairly present the financial condition of Guarantor, all as at their respective dates.

      (f)    There is no action, suit or proceeding pending or, to the best of the knowledge of Guarantor, threatened, against or affecting Guarantor or before any arbitrator of any kind or before any governmental department, commission, board, bureau, agency of instrumentality (domestic or foreign) other than actions fully covered by insurance, the defense of which has been assumed by Guarantor's insurance carriers.

      7.    **Waivers.**  Guarantor expressly waives the following:

      (a)    notice of acceptance of this Guaranty and of any change in the financial condition of Borrower;

      (b)    promptness, diligence, presentment and demand for payment of the Guaranteed Obligation;

      (c)    protest, notice of dishonor, notice of default and any other notice with respect to the Guaranteed Obligation and/or this Guaranty;

      (d)    any demand for payment under this Guaranty;

      (e)    the right to interpose all substantive and procedural defenses of the law of guaranty, indemnification and suretyship, except the defenses of prior payment by Borrower, or by any other Person permitted under the Loan, of the Guaranteed Obligation which Guarantor is called upon to pay under this Guaranty;

      (f)    all rights and remedies accorded by applicable law to Guarantor, or sureties, including, without being limited to, any extension of time conferred by any law now or subsequently in effect;

      (g)    the right to trial by jury in any action or proceeding of any kind arising on, under, out of, or by reason of or relating, in any way, to this Guaranty or the interpretation, breach or enforcement hereof;

      (h)    the right to interpose any setoff or counterclaim of any nature or description in any action or proceeding arising under or with respect to this Guaranty;

      (i)    any right or claim of right to cause a marshalling of the assets of Borrower or to cause Lender to proceed against Borrower and/or any collateral or security held by Lender at any time or in any particular order; and

      (j)    any defense based on the failure to make Guarantor a defendant in any

action to foreclose or enforce Lender's rights under the Security Instrument.

8.    **Further Assurances.**  Guarantor agrees, upon the written request of Lender, to execute and deliver to Lender from time to time any additional reasonable instruments or documents reasonably considered necessary by Lender or its counsel to cause this Guaranty to be, become or remain valid and effective in accordance with its terms.

9.    **Waiver of Rights Against Borrower; Subordination.**

(a)    Until the Guaranteed Obligation has been discharged in full, Guarantor irrevocably waives all rights of subrogation and any other claims that Guarantor may now or subsequently acquire against Borrower that arise from the existence, payment, performance or enforcement of Guarantor's obligations under this Guaranty or any other documents executed in connection with this Guaranty, including, without limitation, any right of reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of Lender against Borrower, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from Borrower, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right.

(b)    If any amount shall be paid to Guarantor in violation of the preceding subsection 9(a), such amount shall be held in trust for the benefit of Lender and shall forthwith be paid to Lender to be credited and applied to all amounts payable under this Guaranty, whether matured or unmatured, in accordance with the terms of the Loan, or to be held as collateral for any amounts payable under this Guaranty subsequently arising. Guarantor acknowledges that it has and will receive direct and indirect benefits from the financing arrangements contemplated by the Loan and that the waiver set forth in this subsection is knowingly made in contemplation of such benefits.

(c)    All indebtedness, liabilities and obligations of Borrower to Guarantor, whether secured or unsecured and whether or not evidenced by any instrument, now existing or subsequently created or incurred, are and shall be subordinate and junior in right of payment to the Guaranteed Obligation.

10.    **Amendment in Writing.**  No amendment or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

11.    **Remedies.**  The obligations of Guarantor under this Guaranty are independent of Borrower's obligations under the Loan.  A separate action or actions may be brought and prosecuted against Guarantor to enforce this Guaranty, irrespective of whether any action is brought against Borrower or whether Borrower is joined in any such action or actions.  Any one or more successive and/or concurrent actions may be brought on this Guaranty against Guarantor

{10347195.5}                                        7

either in the same action, if any, brought against Borrower or in separate actions, as often as Lender, in its sole discretion, may deem advisable.

12.   **Notices.**   All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery or refusal of delivery, if delivered in person with receipt acknowledged by the recipient thereof, (ii) one (1) Business Day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Guarantor:

> Mr. and Mrs. Nicholas W. Bonnano, Jr.
> 20837 North 41st Avenue
> Glendale, Arizona 85308

And:

> Mr. and Mrs. Allen D. Jenkins
> 5417 West Ironwood Drive
> Glendale, Arizona 85302

With a copy to:

> Beus Gilbert
> 4800 North Scottsdale Road
> Suite 6000
> Scottsdale, Arizona 85251
> Attention: Steven Bienstock, Esq.

If to Lender:

> Lehman Brothers Holdings Inc.
> 399 Park Avenue, 8th Floor
> New York, New York 10022
> Attention: Mr. Charles W. Schoenherr
> MTS #WH2565 / Asset # 1141401

With copies to:

> Lehman Brothers Holdings Inc.
> 399 Park Avenue, 8th Floor
> New York, New York 10022

Attention: F. Robert Brusco, Esq.
MTS # WH2565 / Asset # 1141401

and

Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Attention: James J. Thomas

And an additional
copy to Servicer:

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road N.E. - Suite 2200
Atlanta, Georgia 30326
Attention:  Mr. J. Gregory Winchester
MTS # WH2565 / Asset # 1141401

or addressed as such party may from time to time designate by written notice to the other parties.
Either party by notice to the other may designate additional or different addresses for subsequent
notices or communications.  For purposes of this Section 12, "**Business Day**" shall mean a day
on which commercial banks are not authorized or required by law to close in New York, New
York.

13.    **Modification, Changes, etc.**  Guarantor recognizes that, in general, borrowers
and guarantors who experience difficulties in honoring their loan obligations in an effort to
inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to
security instruments, notes, loan agreements, guarantees or other instruments evidencing or
affecting loan transactions, frequently present in court the argument, without merit, that some
loan officer or administrator of that lender made an oral modification or made some statement
which could be interpreted as an extension or modification or amendment of one or more debt
instruments and that the borrower relied to its detriment upon such "oral modification of the loan
document."  For that reason, and in order to protect Lender from such allegations in connection
with the Loan and the transactions contemplated by this Guaranty, Guarantor acknowledges that
this Guaranty and all instruments referred to herein can be extended, modified or amended only
in writing executed by Lender and Borrower or Guarantor, as the case may be, and that none of
the rights or benefits of Lender can be waived permanently except in a written document
executed by Lender.  Guarantor further acknowledges his/her/its understanding that no officer or
administrator of Lender has the power or the authority from Lender to make an oral extension or
modification or amendment of any such instrument or agreement on behalf of Lender.

14.    **Governing Law/Consent to Jurisdiction/Waiver of Jury Trial.**

(a)    THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY LEGAL REQUIREMENTS OF THE UNITED STATES OF AMERICA.    TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY, AND THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.    THIS CHOICE OF GOVERNING LAW IS MADE PURSUANT TO NEW YORK GENERAL OBLIGATION LAW SECTION 5-1401.

(b)    ANY SUIT, ACTION OR PROCEEDING AGAINST GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT MAY AT LENDER'S SOLE OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, AND, GUARANTOR WAIVES ANY OBJECTIONS WHICH GUARANTOR MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING.    GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.    GUARANTOR DOES HEREBY DESIGNATE AND APPOINT DELANEY CORPORATE SERVICES, 41 STATE STREET, SUITE 405, ALBANY, NEW YORK 12207 AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO GUARANTOR IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR, IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.

(c)    GUARANTOR (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGE OF ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK, OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

(d)    NOTHING IN THIS GUARANTY WILL BE DEEMED TO

PRECLUDE LENDER FROM BRINGING ANY SUIT, ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

(e)    GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH OR THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.

15.    **Severability.**  If any term, covenant, condition or provision of this Guaranty or its application to any circumstance or to Guarantor shall be invalid or unenforceable to any extent, the remaining terms, covenants, conditions and provisions of this Guaranty or their application to any circumstances or to Guarantor other than those as to which any term, covenant, condition or provision is held invalid or unenforceable, shall not be affected thereby and each remaining term, covenant, condition and provision of this Guaranty shall be valid and shall be enforceable to the fullest extent permitted by law.

16.    **Benefit of Guaranty.**  The provisions of this Guaranty are for the benefit of Lender and its successors and assigns, including any other holders of the Note.  Nothing in this Guaranty shall impair as between the Borrower and Lender, the obligations of Borrower under the Loan or under any other agreements, documents, instruments or certificates which may be delivered under or pursuant to, or in connection with, such Loan, including but not limited to the Loan Agreement.  Lender may freely assign its rights hereunder in connection with an assignment of the Loan in accordance with the terms of the Loan and may delegate its duties under this Guaranty to any such assignee.  This Guaranty shall bind and inure to the benefit of the Lender and Guarantor and their respective successors, assigns, heirs and personal representatives.

17.    **Headings; Capitalized Terms.**  The headings used in this Guaranty are for convenience only and are not to be considered in connection with the interpretation or construction of this Guaranty.  Capitalized terms used in this Guaranty and not otherwise defined shall have the meaning set forth in the Loan Agreement.

18.    **Miscellaneous.**  This is a guaranty of payment and performance and not of collection, and upon any Event of Default of Borrower with respect to the Guaranteed Obligations, Lender may, at its option, proceed (in accordance with the terms hereof) directly and at once, upon written notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying

against any of the collateral for the Loan.  Guarantor hereby waives the pleading of any statute of limitations as a defense to the obligation hereunder.

## [SIGNATURE PAGE FOLLOWS]

**[Signature Page to Full Repayment Guaranty]**

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Guaranty as of the date first above written.

**GUARANTOR:**

_____
NICHOLAS W. BONANNO, JR.

_____
RITA BONANNO

_____
ALLEN D. JENKINS

_____
TAMERA R. JENKINS

## SCHEDULE A

### PROPERTY DESCRIPTION

**PARCEL NO. 1:**

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA.

**PARCEL NO. 2:**

THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

EXCEPT THAT PORTION OF SECTION 26 BEING THE PHOENIX-ROCK SPRINGS HIGHWAY (BLACK CANYON INTERSTATE HIGHWAY NO. 17) WHICH IS THAT PORTION OF SECTION 26 LYING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE NORTH LINE OF SAID NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, WHICH IS 80.36 FEET WESTERLY OF THE NORTHEAST CORNER THEREOF;

THENCE SOUTH 9 DEGREES 57 MINUTES 36 SECONDS EAST 478.57 FEET, TO A POINT ON THE EAST LINE OF SAID NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26 AND TO THE END OF THIS LINE DESCRIPTION. THE PORTION OF SECTION 26 THAT ENCOMPASSES THE PHOENIX-ROCK SPRINGS HIGHWAY WAS DEDICATED TO THE STATE OF ARIZONA BY WARRANTY DEED DATED JULY 9, 1963, RECORDED SEPTEMBER 5, 1933 IN DOCKET 4718, PAGE 237, ACCORDING TO THE RECORDS OF THE COUNTY RECORDER OF THE COUNTY OF MARICOPA, STATE OF ARIZONA.

**PARCEL NO. 3:**

THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

AND THAT PART OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 26, LYING WEST OF THE CENTERLINE OF THE PHOENIX-ROCK SPRINGS HIGHWAY;

EXCEPT THAT PORTION OF THE NORTHWEST QUARTER OF AND A PORTION OF

THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTH QUARTER CORNER OF SAID SECTION 26;

THENCE SOUTH 89 DEGREES 38 MINUTES 14 SECONDS WEST ALONG THE NORTH LINE OF SAID NORTHWEST QUARTER OF SECTION 26, A DISTANCE OF 283.48 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE 17;

THENCE SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST, ALONG SAID RIGHT-OF-WAY LINE, 2012.91 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST ALONG SAID RIGHT-OF-WAY LINE, 671.09 FEET TO A POINT ON THE SOUTH LINE OF SAID NORTHEAST QUARTER OF SECTION 26;

THENCE SOUTH 89 DEGREES 42 MINUTES 21 SECONDS WEST, ALONG SAID SOUTH LINE OF THE NORTHEAST QUARTER AND THE SOUTH LINE OF THE NORTHWEST QUARTER, 1178.61 FEET;

THENCE NORTH 00 DEGREES 18 MINUTES 18 SECONDS WEST, 172.10 FEET;

THENCE SOUTH 89 DEGREES 42 MINUTES 21 SECONDS WEST, 319.00 FEET TO A POINT ON THE WEST LINE OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER;

THENCE 00 DEGREES 18 MINUTES 57 SECONDS WEST, ALONG SAID WEST LINE, 489.46 FEET;

THENCE NORTH 89 DEGREES 42 MINUTES 02 SECONDS EAST, 1385.32 FEET TO THE POINT OF BEGINNING;

AND EXCEPT THE SOUTH 172 FEET OF THE WEST 319 FEET OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

PARCEL NO. 4:

THE NORTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

{10347195:5}

EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR
MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF
FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE,
PURSUANT TO THE PROVISIONS OF THE ACT OF AUGUST 1, 1946 (60 STAT. 755)
AS SET FORTH IN THE PATENT OF SAID LAND.

PARCEL NO. 5:

THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE
NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF
THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY,
ARIZONA;

EXCEPT ALL MINERALS IN THE LAND AS SET FORTH IN THE PATENT THEREOF;
AND

EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR
MAYBE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF
FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE,
PURSUANT TO THE PROVISIONS OF THE ACT OF AUGUST 1, 1946 (60 STAT. 755)
AS SET FORTH IN THE PATENT OF SAID LAND.

TOGETHER WITH AN EASEMENT TO CONSTRUCT, RECONSTRUCT, MAINTAIN
AND USE AS AN ACCESS ROAD AND UTILITIES CERTAIN LANDS FOR THE
BENEFIT OF THE ABOVE-DESCRIBED PARCEL OF LAND AS SET FORTH IN
GRANT OF EASEMENT RECORDED IN DOCKET 14214, PAGE 275.

PARCEL NO. 6:

THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF THE
NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF
THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY,
ARIZONA;

EXCEPT ALL MINERALS IN THE LAND AS SET FORTH IN THE PATENT THEREOF;
AND

TOGETHER WITH AN EASEMENT TO CONSTRUCT, RECONSTRUCT, MAINTAIN
AND USE AS AN ACCESS ROAD AND UTILITIES CERTAIN LANDS FOR THE
BENEFIT OF THE ABOVE-DESCRIBED PARCEL OF LAND AS SET FORTH IN
GRANT OF EASEMENT RECORDED IN DOCKET 14214, PAGE 275.

EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR
MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF
FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE,

{10347195;5}

PURSUANT TO THE PROVISIONS OF THE ACT OF AUGUST 1, 1946 (60 STAT. 755) AS SET FORTH IN THE PATENT OF SAID LAND.

PARCEL NO. 7:

THE SOUTH 172 FEET OF THE WEST 319 FEET OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA.

PARCEL NO. 8:

A PORTION OF THE NORTHWEST QUARTER AND A PORTION OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 5 NORTH, RANGE 2 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTH QUARTER CORNER OF SAID SECTION 26;

THENCE SOUTH 89 DEGREES 38 MINUTES 14 SECONDS WEST ALONG THE NORTH LINE OF SAID NORTHWEST QUARTER OF SECTION 26, A DISTANCE OF 283.46 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE 17;

THENCE SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST ALONG SAID RIGHT-OF-WAY LINE, 2012.91 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 09 DEGREES 56 MINUTES 54 SECONDS EAST ALONG SAID RIGHT-OF-WAY LINE, A DISTANCE OF 671.09 FEET TO A POINT ON THE SOUTH LINE OF SAID NORTHEAST QUARTER OF SECTION 26;

DESCRIBED ABOVE, ALL AS SET FORTH IN THAT CERTAIN GRANT OF EASEMENTS RECORDED JANUARY 29, 1976 IN DOCKET 11522, PAGE 464, OVER, ACROSS AND UNDER THE FOLLOWING DESCRIBED REAL PROPERTY:

BEGINNING AT A POINT IN THE EAST-WEST MID SECTION LINE OF SAID SECTION 26 THAT BEARS NORTH 89 DEGREES 44 MINUTES 26 SECONDS EAST 2300.97 FEET FROM THE EAST QUARTER CORNER OF SAID SECTION 26;

THENCE FROM SAID POINT OF BEGINNING AND LEAVING SAID MID SECTION LINE NORTH 58 DEGREES 16 MINUTES 39 SECONDS EAST 126.45 FEET;

THENCE NORTH 89 DEGREES 44 MINUTES 26 SECONDS EAST 405.24 FEET TO A POINT IN THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE SEVENTEEN LAST SAID POINT BEARS SOUTH 09 DEGREES 54 MINUTES 15 SECONDS EAST 337.15 FEET FROM AN ARIZONA STATE HIGHWAY DEPARTMENT BRASS DISK

{10347195;5}

STAMPED "A.H.D. 1 039+00" MARKING SAID RIGHT-OF-WAY LINE;

THENCE ALONG SAID RIGHT-OF-WAY LINE SOUTH 09 DEGREES 54 MINUTES 15 SECONDS EAST 66.95 FEET TO A POINT IN THE EAST-WEST MIDSECTION LINE OF SAID SECTION 26;

THENCE LEAVING SAID RIGHT-OF-WAY LINE ALONG SAID MIDSECTION LINE SOUTH 89 DEGREES 44 MINUTES 26 SECONDS WEST 524.32 FEET TO THE POINT OF BEGINNING.

:103471195:5: