## EXHIBIT E
### (First Amended Answer)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| MM Arizona Holdings LLC, | : Case No.: 08 Civ. 5353 |
| | : (Hon. Colleen McMahon, D.J.) |
| Plaintiff, | : (Hon. Andrew J. Peck, M.J.) |
| | : |
| -against- | : FIRST AMENDED ANSWER and |
| | : COUNTERCLAIMS of the |
| Nicholas W. Bonanno, Jr., Rita Bonanno, Allen | : BONANNO DEFENDANTS and |
| D. Jenkins, individually, and Allen D. Jenkins both | : the JENKINS DEFENDANTS |
| Individually and as a personal representative of | : |
| the estate of Tamera R. Jenkins, | : |
| | : |
| Defendants, | : |
| | : |
| -against- | : |
| | : |
| Lehman Brothers Holdings Inc. d/b/a Lehman | : Jury trial: |
| Capital and Investors Mortgage Holdings, Inc., | : |
| | : These defendants-counterclaimants |
| Additional Counterclaim Defendants. | : request a jury trial. |

------------------------------------------------------------x

Defendants Nicholas W. Bonanno, Jr. and Rita Bonanno (collectively, the "Bonannos")
together with defendant Allen D. Jenkins ("Jenkins") as their First Amended Answer to the
Complaint in this matter Complaint dated June 11, 2008 (the "Complaint") assert the allegations
contained in the numbered paragraphs set forth below.  The Bonannos and Jenkins, acting both
individually and in his capacity as representative of his deceased wife's estate, respectfully
submit this pleading jointly in order to avoid unnecessary duplication in the court's docket.  This
joint submission is not, nor should any party or the court misconstrue it to constitute, an
admission that the Bonannos and Jenkins are united-in-interest, have acted and/or are acting
jointly in any respect material to this dispute and/or its adjudication:

1

1.      The Bonannos herewith incorporate by reference, re-assert and re-allege, the responses contained in their initial Answer dated August 7, 2008 as they relate to the numbered allegations contained in the Complaint.

2.      Jenkins herewith incorporates by reference, re-asserts and re-alleges, the responses contained in his initial Answer dated August 7, 2008 as they relate to the numbered allegations contained in the Complaint.

FIRST AFFIRMATIVE DEFENSE

3.      The document identified in the Complaint as the Guarantor Full Payment Guaranty dated July 13, 2006 (the "Guaranty") is void and unenforceable against the Bonannos and Jenkins, because additional counterclaim defendants Lehman Brothers Holdings Inc. d/b/a Lehman ("Lehman Brothers") and Investors Mortgage Holdings, Inc. ("IMH") fraudulently induced:

     a.   the Bonannos and Jenkins to execute that document; and

     b.   non-party Middle Mountain 156 LLC ("Middle Mountain") to execute the associated Loan Agreement dated July 13, 2006 ("Loan Agreement").

4.      The fraud committed by Lehman Brothers and/or its agent renders the Loan Agreement and Guaranty void or voidable under governing law.

SECOND AFFIRMATIVE DEFENSE

5.      Assuming the Guaranty and Loan Agreement constitute enforceable contracts under governing law, Lehman Brothers breached the Loan Agreement before any default allegedly committed by Middle Mountain when, acting directly and/or through its agent IMH, Lehman Brothers committed the following, among other, culpable acts:

2

a.  diverted and/or otherwise refused to release funds necessary to procure water and sewer services ("Water and Sewer Services"), which Lehman Brothers knew were absolutely indispensable to the contemplated development of the underlying real property parcels located in Maricopa County, Arizona (the "Property");

b.  deliberately miscalculated interest allegedly due under the Loan Agreement and the reserves necessary to fund its payment;

c.  deliberately failed to provide an accounting of the reserves and disbursements related thereto;

d.  deliberately undermined Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property by intervening in a condemnation action brought by the Arizona Department of Transportation ("ADOT"), while refusing to participate in the associated mediation process and thereby assuming a position adverse to Middle Mountain; and

e.  deliberately undermined the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property.

6.    Whether viewed together or separately, these actions and omissions constitute breaches of the Loan Agreement and/or the covenant of good faith and fair dealing implied therein by governing law.  These breaches precipitated and/or otherwise excuse any default alleged by Arizona Holdings in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

7.      The equitable doctrines of unclean hands and/or *in pari delicto* prohibit assertion

of the claims alleged in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

8.      The plaintiff named in this action, MM Arizona Holdings LLC ("Arizona

Holdings"), is a limited liability company formed under Delaware law, which is not registered to

conduct business in this jurisdiction.  New York Business Corporation Law § 1312(a) states in

pertinent part:

> A foreign corporation doing business in this state without authority shall
> not maintain any action or special proceeding in this state unless and until
> such corporation has been authorized to do business in this state and it has
> paid to the state all fees and taxes imposed under the tax law or any related
> statute . . . as well as penalties and interest charges related thereto, accrued
> against the corporation.

9.      In paragraph 1 of the Complaint, Arizona Holdings describes itself as "a

Delaware limited liability company with its principal place of business being New York, New

York." This constitutes an admission that Arizona Holdings is "doing business in this state" as

contemplated in Section 1312(a), which in turn requires plaintiff to become "authorized" within

the meaning of the statute before it may maintain this action.

### FIFTH AFFIRMATIVE DEFENSE

10.      The document identified in the Complaint as the Forbearance Agreement dated

April 16, 2008 (the "Forbearance Agreement") is void and unenforceable, because Lehman

Brothers and/or IMH fraudulently induced the Bonannos and Jenkins to execute that document.

11.      The fraud committed by Lehman Brothers and/or its agent renders the

Forbearance Agreement void or voidable under governing law.

4

## SIXTH AFFIRMATIVE DEFENSE

12.     Assuming the Loan Agreement constitutes an enforceable contract under governing law, Lehman Brothers precipitated any default allegedly committed by Middle Mountain when it breached that contract in the manners described above and thereby rendered Middle Mountain's performance impossible and/or otherwise interfered therewith.

13.     Lehman Brothers acted deliberately to undermine and/or deliberately omitted to act in a manner conducive to the reciprocal performance (repayment) it alleges Middle Mountain owed under the Loan Agreement.

14.     Upon information and belief, Lehman Brothers committed the above-mentioned actions and/or omissions in order to induce a default by Middle Mountain, so that Lehman Brothers could acquire title to the Property through foreclosure.

15.     Under the circumstances, equitable principles (as contemplated in the Forbearance Agreement itself) prohibit enforcement of any alleged re-affirmation by the Bonannos and Jenkins of the "validity and legally binding nature" of the Loan Agreement and/or Guaranty.

## SEVENTH AFFIRMATIVE DEFENSE

16.     Venue is improper in this court and should be changed to the United States District Court for the District of Arizona, which is located in Phoenix, Maricopa County (the "Arizona Federal District Court").

17.     The Bonannos and Jenkins reside in Maricopa County, Arizona.

18.     Additional counterclaim defendant IMH maintains its principal business offices in Maricopa County, Arizona.

19.     Upon information and belief, the IMH employees who participated most actively in the negotiation and execution of the Loan Agreement and Guaranty (i.e., its president, Shane

C. Albers, and its Senior Vice President for Lending, Ann M. McCartney f/k/a Ann M. Covill)
reside in Maricopa County, Arizona.

20.    Upon information and belief, the IMH employees who participated most actively
in post-execution conduct pertaining to the Loan Agreement reside in Maricopa County,
Arizona.

21.    The Bonannos and Jenkins, as counterclaimants, contend that Lehman Brothers,
whether acting directly and/or through its agent IMH, induced Middle Mountain to enter into the
Loan Agreement through fraud.

22.    The Bonannos and Jenkins, as counterclaimants, contend that Lehman Brothers,
whether acting directly and/or through its agent IMH, induced them to enter into the Guaranty
through fraud.

23.    Lehman Brothers committed that fraud, whether acting directly and/or through its
agent IMH, through acts and/or omissions committed in Arizona where the Loan Agreement and
Guaranty were negotiated and executed.

24.    The subject of the Loan Agreement and Guaranty is a real estate development
project located in Maricopa County, Arizona.

25.    All real property subject to development as contemplated in the Loan Agreement
and Guaranty is situated in Maricopa County, Arizona.  All such property falls within the
jurisdiction of the United States District Court for the District of Arizona.

26.    All real property pledged as security against any enforceable repayment
obligation embodied in the Loan Agreement and/or Guaranty is situated in Maricopa County,
Arizona and/or Pinal County, Arizona.  All such property falls within the jurisdiction of the
Arizona Federal District Court.

27.    With a few exceptions, every other person who participated in the negotiation and/or execution of the Loan Agreement and Guaranty resides in Arizona. All such persons are subject to the subpoena authority of the Arizona Federal District Court.

28.    With a few exceptions, original versions of all documentary evidence pertinent to the negotiation and/or execution of the Loan Agreement and Guaranty are situated in Arizona. All such documents are subject to the subpoena authority of the Arizona Federal District Court.

29.    With a few exceptions, every other person who participated in the performance and/or contemplated performance of the Loan Agreement resides in Arizona. All such persons are subject to the subpoena authority of the Arizona Federal District Court.

30.    With a few exceptions, original versions of all documentary evidence pertinent to the post-execution conduct pertaining to the Loan Agreement are situated in Arizona. All such documents are subject to the subpoena authority of the Arizona Federal District Court.

31.    Lehman Brothers, whether acting directly and/or through its agents, has commenced foreclosure proceedings in the Arizona courts in order to acquire title to the real property parcels pledged as security against any enforceable repayment obligation embodied in the Loan Agreement and/or Guaranty (the "Arizona Foreclosure Actions").

32.    The outcome of the Arizona Foreclosure Actions will depend on a determination of the claims and counterclaims asserted in this action, which share many common legal and factual questions (e.g., whether the Loan Agreement and/or Guaranty embody enforceable obligations; whether Lehman Brothers fraudulently induced the Bonannos and Jenkins to execute those documents; whether Lehman Brothers breached the Loan Agreement, assuming it constitutes an enforceable contract, thereby excusing any alleged default by Middle Mountain).

7

33.    Under the circumstances, the Arizona Federal District Court located in Maricopa
County, Arizona is the best and most appropriate venue to ensure a just and thorough
adjudication of the claims and counterclaims asserted by the parties.

34.    Changing venue and transferring this matter to the Arizona Federal District Court
located in Maricopa County, Arizona will visit no prejudice whatsoever on the plaintiff, Arizona
Holdings, and/or on additional counterclaim defendant Lehman Brothers.

EIGHTH AFFIRMATIVE DEFENSE

35.    Lehman Brothers, acting directly and/or through its agent IMH, exercised or
sought to exercise such dominion and/or effective control over the real estate development
project underlying the Loan Agreement that it became a partner and/or co-venturer therein.
Under the circumstances, the funds Lehman Brothers purported to disburse as loan proceeds
under the Loan Agreement should be viewed as the capital contributions of a partner and/or co-
venturer in the underlying the real estate development project.

ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

36.    Non-party Middle Mountain is a limited liability company formed under Arizona,
which maintains its principal business offices in Glendale, Arizona.

37.    The plaintiff, Arizona Holdings, declined to name Middle Mountain as a party to
this action although it identified that entity as "borrower" under the Loan Agreement to which
the Guaranty at issue here relates.  Middle Mountain should be joined in this action pursuant to
FRCP 19(a) in order to ensure a just and thorough adjudication of the claims plaintiff asserts in
its Complaint and those counterclaims the Bonannos and Jenkins assert in this Answer.

38.    Additional counterclaim defendant Lehman Brothers is a corporation formed
under Delaware law, which maintains its principal business offices in New York, New York.

39.    The plaintiff, Arizona Holdings, is a limited liability company formed under Delaware law, which maintains its principal business offices in New York, New York.

40.    Upon information and belief, Lehman Brothers formed and controls Arizona Holdings as a wholly-owned subsidiary.

41.    Upon information and belief, Lehman Brothers formed Arizona Holdings as a single purpose entity solely to assume its alleged rights under the Loan Agreement and Guaranty.

42.    Upon information and belief, additional counterclaim-defendant IMH is a corporation formed under Arizona law, which maintains its principal business offices in Maricopa County, Arizona.

43.    The Loan Agreement and Guaranty, which underlie this action and animate every claim, emanate from a real estate development venture under taken by defendants-counterclaimants Nicholas W. Bonanno and Allen D. Jenkins in Maricopa County, Arizona.

44.    Bonanno and Jenkins, acting through Middle Mountain, invested approximately $6 million in personal funds and borrowed approximately $35.5 million (from non-party lenders other than Lehman Brothers) in order to acquire and assemble the various real property parcels constituting the Property.

45.    The various real property parcels constituting the Property are described in Exhibit A-1 to the Loan Agreement, which in turn is annexed as Exhibit A to the Complaint.

46.    Bonanno and Jenkins, acting through Middle Mountain, acquired and assembled the Property contemplating that they would undertake to develop, partition, and then re-sell the underlying parcels as residential and commercial sites at a substantial net profit.

47.    Bonanno has substantial experience in such developments, which (in addition to the myriad legal, financial, environmental, and political considerations that accompany any

large-scale real estate development venture) entail complex logistical and regulatory

complications unique to America's desert southwest.

48.     Principal among those considerations are water resources (i.e., the ability to

secure and deliver potable water to the real property under development) and sewage

management (i.e. the ability to collect, remove, and treat sewage and other waste-water).

49.     Bonanno and Jenkins determined to re-finance the development loan package they

had assembled with a group composed of the non-party lenders mentioned above.

50.     In order to help facilitate that re-financing, their non-party lenders introduced

Bonanno and Jenkins to IMH, which represented to them that it had a loan originating

relationship with Lehman Brothers.

51.     IMH acted as agent to Lehman Brothers at all relevant times.

52.     At all relevant times, the various real property parcels constituting the Property

were "raw land" and lacked infrastructure to provide: (a) potable water and/or sewage

management services (previously defined as "Water and Sewer Services"); (b) transportation by

paved roads; (c) consumer-ready electricity; (d) consumer-ready natural gas; (e) consumer-ready

telecommunications services; and/or (f) other utilities and services necessary to any residential

and/or commercial development contemplated by Bonanno and Jenkins.

53.     Lehman Brothers and IMH knew these facts and conducted their own independent

evaluation of the Property and its proposed development plan.

54.     Water and Sewer Services necessary to that development plan could be obtained

only from a location situated northeast of the Property.

55.     This fact required Middle Mountain to construct dedicated water and sewer lines

running one-half mile north of the Property to a road ("Boundary Road") and then to construct a

utility sleeve running beneath the adjacent interstate highway (the "Interstate"), which in turn would connect their dedicated water and sewer lines to pre-existing water transmission and sewage interceptor facilities located on the other side of the Interstate.

56.    The legal permitting and construction processes attendant such a development-related undertaking are complex and expensive.

57.    Taking into consideration these additional complexities and expenses, Middle Mountain sought a $37.2 million loan from Lehman Brothers to buy-out the existing development-related loan package (arranged through the non-party lenders mentioned above), which Middle Mountain proposed would be secured exclusively by the Property itself.

58.    After reviewing the proposed development plan and appraisals of the underlying Property, Lehman Brothers, acting directly and/or through its agent IMH, concluded that the Property in its unimproved state was inadequate to secure such a loan.

59.    In the alternative, Lehman Brothers proposed a $44 million loan, including various multi-million dollar reserves set aside specifically to finance the permitting and construction processes necessary to install indispensable Water and Sewer Services.

60.    In addition, Lehman Brothers demanded the Bonannos and Jenkins execute the Guaranty and pledge as additional security approximately 80 acres situated elsewhere in Arizona with an appraised value exceeding $4.7 million.

61.    Lehman Brothers ultimately disbursed loan proceeds adequate to take-out the non-party lenders mentioned above.

62.    Despite repeated demands by Middle Mountain, however, Lehman Brothers, acting directly and/or through its agent IMH, refused to release the multi-million dollar reserve it

had agreed would be set aside to finance the permitting and construction processes necessary to install the Water and Sewer Services.

63.    This deliberate refusal to disburse reserve funds undermined Middle Mountain's efforts to procure the Water and Sewer Services.

64.    As alleged more thoroughly elsewhere in this Answer, Lehman Brothers, acting directly and/or through its agent IMH, committed other actions and omissions designed to undermine Middle Mountain's plan to develop the Property with a design to cause its default under the Loan Agreement.

## FIRST COUNTERCLAIM

65.    The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 64, inclusive.

66.    Upon information and belief, Lehman Brothers entered into the Loan Agreement and Guaranty, while harboring an undisclosed, but then-present, intention to dishonor its promises in a manner designed to precipitate a default by Middle Mountain in order to acquire the Property through foreclosure.

67.    Lehman Brothers, acting directly and/or through its agent IMH, deliberately deprived Middle Mountain of the funds necessary to finance the permitting and construction processes necessary to install the Water and Sewer Services.

68.    Without those funds, which Lehman Brothers had explicitly agreed to set aside as a dedicated reserve, Middle Mountain was unable to procure the Water and Sewer Services in keeping with its property development schedule.

69.    In addition to the foregoing, Lehman Brothers, acting directly and/or through its agent IMH, deliberately undermined Middle Mountain's good faith efforts to bring Water and

12

Sewer Services to the Property by intervening in a condemnation action brought by ADOT, while refusing to participate in the associated mediation process and thereby assuming a position adverse to Middle Mountain.

70.    In addition to the foregoing, Lehman Brothers, acting directly and/or through its agent IMH, deliberately undermined the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property.

71.    The resulting delay in development of the Property rendered Middle Mountain unable to generate the re-sale income necessary to meet its repayment obligations in a timely fashion under the Loan Agreement.

72.    Upon information and belief, Lehman Brothers committed the above-mentioned actions and/or omissions in order to induce a delay-related default by Middle Mountain, so that Lehman Brothers could acquire title to the Property through foreclosure.

73.    Upon information and belief, Lehman Brothers negotiated and executed the Loan Agreement with a then-present intention to commit the above-mentioned actions and/or omissions, whose purpose was to precipitate a default by Middle Mountain.

74.    Lehman Brothers procured the Loan Agreement through fraudulent inducement, which renders that agreement void or voidable under governing law.

75.    In the alternative, the Bonannos and Jenkins demand a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

13

## SECOND COUNTERCLAIM

76.    The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 75, inclusive.

77.    Assuming the Guaranty and Loan Agreement constitute enforceable contracts under governing law, Lehman Brothers breached the Loan Agreement before any default allegedly committed by Middle Mountain when, acting directly and/or through its agent IMH, Lehman Brothers:

a.    diverted and/or otherwise refused to release funds necessary to procure the Water and Sewer Services, which Lehman Brothers knew were absolutely indispensable to the contemplated development of the Property;

b.    deliberately miscalculated interest allegedly due under the Loan Agreement and the reserves necessary to fund its payment;

c.    deliberately failed to provide an accounting of the reserves and disbursements related thereto;

d.    deliberately undermined Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property by intervening in a condemnation action brought by ADOT, while refusing to participate in the associated mediation process and thereby assuming a position adverse to Middle Mountain; and

e.    deliberately undermined the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property.

14

78.     Whether viewed together or separately, these actions and omissions constitute breaches of the Loan Agreement and/or the covenant of good faith and fair dealing implied therein by governing law.  These breaches precipitated and/or otherwise excuse any default alleged by Arizona Holdings in the Complaint.

79.     In the alternative, the Bonannos and Jenkins demand a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

## THIRD COUNTERCLAIM

80.     The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 79, inclusive.

81.     The actions and omissions in which Lehman Brothers engaged, directly and/or through its agent IMH, in connection with condemnation and mediation proceedings involving ADOT constituted a knowing and deliberate interference in prospective business relations and/or economic advantage.

82.     The Bonannos and Jenkins demand a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

## FOURTH COUNTERCLAIM

83.     The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 82, inclusive.

84.     IMH conspired in and/or otherwise provided Lehman Brothers knowing and substantial assistance in committing the actions and/or omissions constituting the fraud and contractual breaches alleged above.

15

85.    IMH thereby aiding and abetted Lehman Brothers in committing the culpable conduct alleged.

86.    The Bonannos and Jenkins demand a money judgment against IMH in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

WHEREFORE defendants Nicholas W. Bonanno, Jr. and Rita Bonanno, together with defendant Allen D. Jenkins, respectfully request that the court issue judgment as follows:

a)    An Order dismissing the Complaint in its entirety as against them based on the Affirmation Defenses set forth above;

b)    An Order transferring this matter to the United States District Court for the District of Arizona based on the Seventh Affirmative Defense set forth above;

c)    On the First Counterclaim, an order declaring the Loan Agreement and Guaranty void or voidable;

d)    In the alternative on the First Counterclaim, a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property;

e)    On the Second Counterclaim, a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property;

f)    On the Third Counterclaim, a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property;

16

g)    On the Fourth Counterclaim, a money judgment against IMH in an amount equal

to the profit Middle Mountain anticipated receiving upon achieving a successful

development of the Property; and

h)    Any additional and/or other relief the court deems appropriate.

Dated: New York, New York
         August 27, 2008

                                        Respectfully submitted jointly by:

                                        Law Offices of Stephen L. Cohen
                                        Counsel to defendants-counterclaimants Nicholas W.
                                        Bonanno, Jr. and Rita Bonanno


              By:    *Mark D. Marderosian* (facsimile signature)
                     Mark D. Marderosian (MDM-8116)

                     99 Park Avenue, Suite 1600
                     New York, New York 10016
                     (212) 277-5862 / telephone
                     (212) 490-4413 / facsimile
                     e-mail: mark.marderosian@gmail.com

                     32 Main Street
                     Chatham, New York  12037
                     (518) 392-3131 / telephone


                     Law Offices of Maurice Sieradzki (MS-5974)
                     Counsel to defendant-counterclaimant Allen D. Jenkins
                     225 Broadway, Suite 2510
                     New York, New York  10007
                     (212) 791-3159 / telephone
                     (212) 406-3548 / facsimile
                     e-mail: mauratlaw@verizon.net


                                                                        17

VERIFICATION

STATE OF ARIZONA            }
                           }
COUNTY OF MARICOPA    }

NICHOLAS W. BONANNO, having been duly sworn before a Notary Public authorized

to administer oaths in this jurisdiction, herewith deposes and states that:

1.    I am a defendant-counterclaimant named in this action.  I have read the attached

Amended Answer dated August 27, 2008 and verify the accuracy of the allegations contained

therein based on my personal knowledge of the underlying facts.

2.    I further verify that any allegations made in the Amended Answer "upon

information and belief" are accurate to the best of my knowledge.

By:    _____
       NICHOLAS W. BONANNO

Executed before me this
_____ day of August 2008

_____
Notary Public

18

# EXHIBIT F
**(Opposition)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MM Arizona Holdings LLC,                          :   Case No.: 08 Civ. 5353
                                                  :   (Hon. Colleen McMahon, D.J.)
                        Plaintiff,                :   (Hon. Andrew J. Peck, M.J.)
                                                  :
        -against-                                 :
                                                  :
                                                  :
Nicholas W. Bonanno, Jr., Rita Bonanno, Allen     :
D. Jenkins, individually, and Allen D. Jenkins both :
Individually and as a personal representative of  :
the estate of Tamera R. Jenkins,                  :
                                                  :
                        Defendants,               :
                                                  :
        -against-                                 :
                                                  :
                                                  :
Lehman Brothers Holdings Inc. d/b/a Lehman        :
Capital and Investors Mortgage Holdings, Inc.,    :
                                                  :
        Additional Counterclaim Defendants.       :
-------------------------------------------------------------x


**BRIEF OF THE BONANNO DEFENDANTS
IN OPPOSITION TO MOTION BY PLAINTIFF SEEKING DISMISSAL
OF THE COUNTERCLAIMS ASSERTED IN THEIR AMENDED ANSWER**


Respectfully submitted by:

Mark D. Marderosian, Esq. (MM-8116)
Law Offices of Stephen L. Cohen
Counsel to defendants-counterclaimants Nicholas
W. Bonanno, Jr. and Rita Bonanno
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 277-5862 / telephone
(212) 490-4413 / facsimile
e-mail: mark.marderosian@gmail.com

32 Main Street
Chatham, New York  12037
(518) 392-3131 / telephone

## TABLE OF AUTHORITIES

| Case Citation | Page |
|---|---|
| ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) | 5 |
| Baena v. Woori Bank, 515 F. Supp.2d 414 (S.D.N.Y. 2007) | 10 |
| Barklee Realty Co. v. Pataki, 309 A.D.2d 310, 765 N.Y.S.2d 599 (1st Dep't 2003) | 4 |
| Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46 (2d Cir. 1987) | 13 |
| Bell Atlantic Corp. v. Twombley, ___ U.S. ___, 127 S.Ct. 1955 (2007) | 5 |
| Brown v. Lockwood, 76 A.D.2d 721, 432 N.Y.S.2d 186 (2nd Dep't 1980) | 16 |
| Caputo v. Pfizer, Inc., 267 F.3d 181 (2d Cir. 2001) | 19 |
| Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 495 N.Y.S.2d 309 (1985) | 17 |
| Cohen v. Koenig, 25 F.3d 1168 (2d Cir. 1994) | 10 |
| Deerfield Comm. Corp. v. Chesebrough-Ponds Inc., 68 N.Y.2d 954, 510 N.Y.S.2d 88 (1986) | 16 |
| East 32nd Street Assocs. v. Jones Lang Wootton USA, 191 A.D.2d 68, 599 N.Y.S.2d 1 (1st Dep't 1993) | 17 |
| Eric Solstein Productions, Inc. v. Rabanne, 236 A.D.2d 216, 653 N.Y.S.2d 325 (1st Dep't 1997) | 15 |
| Goldstein v. Pataki, 516 F.3d 50 (2d Cir. 2008) | 4 |
| Graudbard Mollen et al. v. Moskowitz, 86 N.Y.2d 112, 629 N.Y.S.2d 1009 (1995) | 16 |
| Katz v. Image Innovations Holdings, Inc., 2008 WL 762101 (S.D.N.Y.) | 10 |
| Lanzi v. Brooks, 54 A.D.2d 1057, 388 N.Y.S.2d 946 (3rd Dep't 1976), aff'd, 402 N.Y.S.2d 384 (1977) | 15 |
| Lerner v. Fleet Bank N.A., 459 F.3d 273 (2d Cir. 2006) | 10 |
| Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986) | 19 |
| Powers v. British Vita P.L.C., 57 F.3d 176 (2d Cir. 1995) | 13 |
| Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990) | 9 |
| Ruiz v. McKenna, 40 N.Y.2d 815, 387 N.Y.S.2d 558 (1976) | 17 |
| Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714 (1957) | 16 |

## TABLE OF AUTHORITIES

| Section Title | Page |
|---|---|
| Preliminary Statement | 1 |
| Post-Filing Developments and Procedural Posture | 2 |
| LEGAL ARGUMENTS and CITATIONS TO AUTHORITY | |
| A.  The Counterclaims in the Amended Answer Pass Muster Under FRCP 12(b)(6) | 4 |
| B.  The Fraud-Based Counterclaims in the Amended Answer Satisfy FRCP 9(b) | 8 |
| C.  Arguments Pertaining to the Un-Executed Client Verification Are Moot | 19 |
| Conclusion | 21 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | |
|---|---|
| MM Arizona Holdings LLC, | : Case No.: 08 Civ. 5353 |
| | : (Hon. Colleen McMahon, D.J.) |
| Plaintiff, | : (Hon. Andrew J. Peck, M.J.) |
| | : |
| -against- | : BRIEF OF THE BONANNO DEFENDANTS |
| | : IN OPPOSITION TO MOTION SEEKING |
| Nicholas W. Bonanno, Jr., Rita Bonanno, Allen | : DISMISSAL OF THE COUNTERCLAIMS |
| D. Jenkins, individually, and Allen D. Jenkins both | : ASSERTED IN THEIR AMENDED ANSWER |
| Individually and as a personal representative of | : |
| the estate of Tamera R. Jenkins. | : |
| | : |
| Defendants, | : |
| | : |
| -against- | : |
| | : |
| Lehman Brothers Holdings Inc. d/b/a Lehman | : |
| Capital and Investors Mortgage Holdings, Inc., | : |
| | : |
| Additional Counterclaim Defendants. | : |

---------------------------------------------------------x

## PRELIMINARY STATEMENT

Defendants-counterclaimants Nicholas W. Bonanno, Jr. and Rita Bonanno (the

"Bonannos") respectfully offer this brief in opposition to the motion plaintiff, MM Arizona

Holdings LLC ("Arizona Holdings"), has made to dismiss the counterclaims contained in their

Amended Answer dated August 26, 2008 (the "Amended Answer" [Docket Entry 25]). The

allegations under attack are more than adequate to pass muster under FRCP 12(b)(6) and to

satisfy the particularity requirements codified at FRCP 9(b). Arizona Holdings has failed to

advance a persuasive argument to the contrary. Especially at this early stage, the court also

should consider that facts adequate to remedy any arguable pleading deficiencies reside within

the exclusive control of the additional counterclaim defendants, Lehman Brothers Holdings Inc.

d/b/a Lehman Capital ("Lehman Brothers") and Investors Mortgage Holdings, Inc. ("IMH").

1

Neither entity has replied to the counterclaims and/or otherwise appeared in this action. The court should sustain the Amended Answer in every respect and direct that discovery proceed.[1]

## POST-FILING DEVELOPMENTS and PROCEDURAL POSTURE

Plaintiff, Arizona Holdings, commenced this action on June 11, 2008 with a pleading entitled "Complaint for Judgment on Guaranty" (the "Complaint" [Docket Entry 1]). In the Complaint, Arizona Holdings seeks payment on a promissory note dated July 13, 2006 (the "Note" [Complaint, Ex.B]) issued in connection with a loan agreement of the same date (Id., Ex.A) between non-party Middle Mountain 156 LLC ("Middle Mountain") and Lehman Brothers. Arizona Holdings bases its payment demand on a "Guarantor Full Repayment Guaranty" dated July 13, 2006 (the "Guaranty" [Ex.C]) executed personally by the Bonannos.

Arizona Holdings is a wholly-owned Lehman Brothers subsidiary. As everyone living outside (or even inside) a cave no doubt knows, Lehman Brothers sought Chapter 11 bankruptcy protection on September 15, 2008 in perhaps the most spectacular among half-a-dozen catastrophic failures in America's troubled banking and financial services sector. Mr. and Mrs. Bonanno filed the Amended Answer on August 27, 2008 but understandably view their counterclaim allegations as having contributed little to Lehman's downfall a couple weeks later.[2]

---

[1]    According to this court's initial Scheduling Order dated June 17, 2008 (Docket Entry 3) the parties must complete discovery no later than December 17, 2008. Although disagreement between counsel over whether the Bonannos properly joined the additional counterclaim defendants ultimately prevented execution of a Civil Case Management Plan, the parties had agreed in-principle during their negotiations to extend the discovery completion deadline (subject to court approval) through and including January 30, 2009. In the meantime, neither of the additional counterclaim defendants has replied to the Amended Answer and Lehman Brothers has sought bankruptcy protection. The Bonannos require additional time to conduct discovery on their counterclaims and respectfully request through and including March 1, 2008.

[2]    The Bonannos filed the Amended Answer jointly with their fellow defendant-counterclaimant Allen D. Jenkins on August 26, 2008. Mr. Jenkins sought Chapter 11 bankruptcy protection on September 24, 2008 and, consequently, all proceedings against him have been stayed pursuant to Section

2

The comparatively piddling amounts at issue here obviously did not topple the mighty Lehman Brothers. The unbridled rapacity and reckless indifference to "fundamentals" which precipitated our wide-spread economic crisis, however, are plainly evident in the underlying transaction. Greed may indeed be good, even essential, to a financial model based on free-market competition and private ownership. Greed advanced by fraud and over-reaching, however, is where our consistent and well-developed legal tradition draws the proverbial line.

As explained more thoroughly in the Amended Answer and below, Lehman Brothers and its fellow additional counterclaim defendant, IMH, engaged in behavior which, whether most properly characterized as fraudulent inducement to contract or contractual breaches in furtherance of a fraudulent scheme or perhaps both, demands further illumination through discovery. Should this court find the Amended Answer lacking in some material respect, the most appropriate course is not dismissal. Their counterclaim allegations may appear imperfect in the abstract, but defendants at the very least have pleaded sufficient facts to warrant being given a reasonable opportunity to supplement their Amended Answer after discovery.

The parent-subsidiary relationship between Arizona Holdings and Lehman Brothers, when viewed against the counterclaim allegations now under attack, raises important procedural questions as well. Arizona Holdings is wholly-owned and controlled by Lehman Brothers, whose primary (and perhaps sole) asset is the disputed obligation embodied in the Note and Guaranty. Plaintiff acquired those instruments in a thinly-papered captive transaction executed on May 8, 2008 by its "authorized signatory" Abbey B. Kosakowski (Complaint, Exs. G and H). At the time and throughout the period relevant to this lawsuit, Ms. Kosakowski was a Lehman

---

362(a) of the Bankruptcy Code. The Bonannos alone submit this brief opposing dismissal of the counterclaims contained in the Amended Answer.

Brothers in-house attorney, who authored various correspondence and other transaction-related documents. It is not clear what motivated Lehman Brothers to assign the disputed obligation to Arizona Holdings, particularly without receiving any evident consideration in exchange. Under the circumstances, the court may wish to consider whether this dispute implicates "core proceeding" principles codified at 28 U.S.C. § 157(b)(2)(A) (pertaining to "matters concerning the administration of the estate") and/or (b)(2)(B) (pertaining to "claims against the estate").[3]

## LEGAL ARGUMENTS and CITATIONS TO AUTHORITY

### A. The Counterclaims in the Amended Answer Pass Muster Under FRCP 12(b)(6)

Although this court well-knows how to assess a FRCP 12(b)(6) motion, the governing evaluative standard always bears at least brief repetition. The court must accept as true the factual allegations whose adequacy Arizona Holdings has attacked and draw every reasonable inference in favor of the Bonannos. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). To

---

[3]    It is also important to note that Arizona Holdings is a limited liability company formed under Delaware law, which is *not registered to conduct business* in this jurisdiction (Amended Answer, Fourth Affirmative Defense). New York Business Corporation Law § 1312(a) states in pertinent part:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute . . . as well as penalties and interest charges related thereto, accrued against the corporation.

In paragraph 1 of the Complaint, Arizona Holdings describes itself as "a Delaware limited liability company with its principal place of business being New York, New York." This constitutes an admission that Arizona Holdings is "doing business in this state" as contemplated in Section 1312(a), which in turn requires plaintiff to become "authorized" within the meaning of the statute before it may maintain this action. Under the circumstances, Section 1312 prohibits Arizona Holdings from continuing to prosecute this proceeding (or any other proceeding in New York) until it has paid to the New York State Department of Taxation and Finance every penny it owes. See Barklee Realty Co. v. Pataki, 309 A.D.2d 310, 315-16, 765 N.Y.S.2d 599, 605 (1st Dep't 2003) (Section 1312 prohibits foreign corporation from maintaining lawsuit "until it has been authorized to do business in this state and has paid all fees, penalties and franchise taxes for the years it did business in this state without authority"). The court should suspend further proceedings until Arizona Holdings has honored its corporate and franchise tax obligations to New York State. Notably, Arizona Holdings is not registered to conduct business Arizona.

4

survive dismissal, the Bonannos must "provide the grounds upon which [their] [counter]claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007), quoting Bell Atlantic Corp. v. Twombley, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). The court should decline to dismiss their counterclaim allegations if the Bonannos have pleaded "enough facts to state a claim to relief that is plausible on its face." Twombley, 127 S.Ct. at 1974.

It is important to note at the outset that Arizona Holdings does not question the theoretic foundation beneath the counterclaims contained in the Amended Answer. Rather, it has invoked FRCP 12(b)(6) in a facial attack on the manner in which defendants asserted those counterclaims. In other words, Arizona Holdings does not disagree that what the Bonannos have alleged in the Amended Answer could amount to a viable counterclaim if the allegations were properly framed as a procedural matter. Its challenge to the Amended Answer falls short under the standard articulated in Twombley.

After providing the court with a treatise-based primer on doctrinal distinctions between a claim and a defense, Arizona Holdings contends that every counterclaim contained in the Amended Answer should be dismissed, because no counterclaims have been asserted *against it*. Plaintiff appears to argue that only Lehman Brothers and IMH are actually counterclaim targets, which (it further contends) is impermissible absent service of a third-party pleading naming those entities and filed pursuant to FRCP 14. Having neglected to commence a third-party action, argues plaintiff, the Bonannos have failed to assert any counterclaims at all, which in turn somehow mandates dismissal of the underlying allegations pursuant to FRCP 12(b)(6). Arizona Holdings then proceeds to apply this faulty argument to each counterclaim and affirmative defense contained in the Amended Answer (Moving Brief, pp.3-5).

5

Thorough legal analysis is essential to a fair and accurate adjudication in any case. But there comes a point at which parsing a premise devolves into logical dismemberment and analytic discontinuity. The counterclaims Arizona Holdings has moved to dismiss are, by definition, claims the Bonannos (as defendants) have asserted against Arizona Holdings (as plaintiff) and its parent company, Lehman Brothers (as additional counterclaim defendant), in reaction to the primary claims Arizona Holdings has asserted against the Bonannos involving the same transaction(s). Arizona Holdings is the plaintiff here, rather than Lehman Brothers, only because Lehman Brothers assigned it that role. They are analytically inter-changeable and legally united-in-interest. Any argument to the contrary is a mere diversionary tactic.

The court should reject plaintiff's misguided dismissal argument on several grounds. First, as their Amended Answer makes crystal clear, the Bonannos rightly view Arizona Holdings and Lehman Brothers as transposable. Lehman Brothers created Arizona Holdings. Lehman Brothers controls Arizona Holdings. Lehman Brothers assigned the Note and Guaranty to Arizona Holdings without any evident reciprocal consideration in a captive transaction involving a sole common officer. The same attorneys who represented Lehman Brothers throughout the underlying transactions now represent Arizona Holdings in this case. Under the circumstances, any counterclaim the Bonannos have asserted against Lehman Brothers is a counterclaim asserted against Arizona Holdings, and vice versa, as such counterclaims pertain to the transaction(s) at issue in this lawsuit. The Bonannos stand ready and willing to supplement their Amended Answer with a few additional words (assuming this court deems it necessary) to clarify for Arizona Holdings what to them already seems plain.

Second, Arizona Holdings lacks standing to challenge a counterclaim the Bonannos have asserted only against someone else. Indulging its primary argument, therefore, mandates

6

denying its motion based on the inescapable conclusion, urged by a central tenant of constitutional standing analysis, that Arizona Holdings cannot show a plausible connection between its legitimate interests and what it is asking the court to do. Assuming (as plaintiff urges) that no counterclaims have been asserted against it, Arizona Holdings cannot hope to demonstrate any concrete or imminent injury attributable to the Amended Answer which this court might effectively redress by granting the relief plaintiff seeks. Quite the contrary, dismissal of a counterclaim *asserted against someone other than Arizona Holdings* cannot benefit Arizona Holdings, particularly if (as plaintiff contends at least implicitly) it lacks unity-in-interest with those against whom it acknowledges the subject counterclaim *has been asserted*.

What has placed plaintiff in this theoretical tangle is its unspoken pretension that Lehman Brothers is a stranger, rather than a corporate over-lord that controls its every move. The very documents plaintiff attached to its Complaint reveal that a single common officer (non-party Abbey B. Kosakowski, Esq.) executed the paperwork by which Lehman Brothers assigned its interest in the Note and Guaranty to Arizona Holdings. Arizona Holdings cannot "have it both ways" on this important threshold issue. Either it has sufficient interest in the counterclaims to seek their dismissal (because it is linked inextricably to Lehman Brothers) or lacks standing to seek dismissal (because it is a discrete entity acting on its own initiative). The former is clearly true, but plaintiff's FRCP 12(b)(6) challenge falls short anyway.

Finally, plaintiff appears to have confused "third-party practice" with "joinder" in seeking dismissal (Moving Brief, pp.13-14). Naming additional defendants on a counterclaim is not third-party practice. The Bonannos do not contend that Lehman Brothers and/or IMH are liable in whole or part on the claims plaintiff asserts against them in their capacities as defendants, as contemplated in FRCP 14(a). Rather, they contend that: (1) Lehman and IMH

7

fraudulently induced Middle Mountain to enter into the Loan Agreement and Note that underlie the Guaranty, which Arizona Holdings seeks to enforce here; (2) plaintiff is a wholly-owned Lehman Brothers subsidiary, which has been made to assume the fraudulently-induced contract; (3) plaintiff is subject to all claims and defenses to which Lehman Brothers would be subject; and (4) naming Lehman Brothers and IMH as additional counterclaim defendants is necessary to a complete and accurate adjudication of all claims arising out of the underlying transaction(s).

The rules applicable to third-party practice are irrelevant here. FRCP 13(h) explicitly permits joinder on a counterclaim pursuant to FRCP 19 (pertaining to any "person needed" for a just adjudication) and/or pursuant to FRCP 20 (pertaining to permissive joinder). The Bonannos named Lehman Brothers and IMH as additional counterclaim defendants and served the Amended Answer on both entities, rather than moving against the Complaint based on FRCP 12(b)(7) ("failure to join a party under Rule 19"). Nothing more is necessary. FRCP 19 actually mandates joinder *sua sponte* whenever possible in circumstances where, as here, "in the person's absence complete relief cannot be accorded among those already parties[.]" FRCP 19(a). That is precisely what these defendants-counterclaimants contend in this case.

In summary, the procedural arguments Arizona Holdings has advanced under FRCP 12(b)(6) and FRCP 14 must fail. The court should deny that aspect of the pending motion and sustain the Amended Answer in every respect against plaintiff's ill-conceived challenge.

## B. The Fraud-Based Counterclaims in the Amended Answer Satisfy FRCP 9(b)

Arizona Holdings seeks dismissal of the "fraudulent inducement" counterclaims the Bonannos assert based on FRCP 9(b), which requires in pertinent part that when "pleading special matters" like fraud "the circumstances constituting fraud . . . shall be stated with particularity[.]" Plaintiff challenges the subject allegations (Amended Answer, ¶¶ 35-75) based

8

exclusively on their factual specificity and, once again, does not question their theoretic foundation. In other words, Arizona Holdings does not disagree that what the Bonannos have alleged could amount to a viable fraudulent inducement claim, theoretically speaking, if the allegations were made sufficiently particular. Moving Brief, pp.6-12.

The allegations contained in the Amended Answer are more than adequately particular to satisfy FRCP 9(b), especially at this early stage and without any non-mandatory discovery having been conducted, to state a viable fraudulent inducement claim. In assessing those allegations, it is important to remember the primary purpose behind FRCP 9(b). The rule requires particularity in order "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

The subject allegations accomplish that goal. They provide ample notice of the theoretic and factual underpinnings beneath what the Bonannos claim, which in turn permits Arizona Holdings and its additional counterclaim defendants to mount whatever defense(s) they think available to them. As importantly, opposing counsel (McKenna Long & Aldridge LLP) unquestionably understands what the Bonannos claim, because it represented Lehman Brothers in the underlying transactions. This undisputable fact renders plaintiff's "particularity" challenge more a perfunctory exercise in expensive lawyering than a good faith effort to better understand ostensibly vague allegations.[4]

---

[4]    Technically speaking, the court should give no effect to the choice-of-law clauses contained in those agreements, which necessarily assumes the enforceability of the very contracts the Bonannos contend were fraudulently-induced, and evaluate their fraud counterclaims under Arizona substantive law – not New York law. The fraud at issue was perpetrated against Arizona citizens in a transaction negotiated and executed in Arizona involving a mixed-use real estate development project situated in that state. That being said, excepting minor deviations not relevant here, Arizona state "fraudulent inducement" jurisprudence is substantially similar to our own and FRCP 9(b) would apply no matter whose substantive law this court utilized in conducting its analysis. Without waiving its affirmative

9

In order to state a common law fraud claim under New York law, the Bonannos must advance allegations tending to show the existence of the following: (1) a misrepresentation of a material existing fact; (2) made with knowledge of its falsity; (3) coupled with an intent to defraud (scienter); (4) reasonable reliance on the misrepresentation; and (5) damages. Katz v. Image Innovations Holdings, Inc., 2008 WL 762101 *2 (S.D.N.Y.), citing Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994). FRCP 9(b) merely requires some factual particularization and is most commonly interpreted to mandate allegations showing: (1) the specific statements claimant contends were fraudulent; (2) the identity of the speaker; (3) where and when the allegedly fraudulent statements were made; and (4) an explanation of the manner(s) in which those statements were fraudulent. Baena v. Woori Bank, 515 F. Supp.2d 414, 419-20 (S.D.N.Y. 2007), citing Lerner v. Fleet Bank N.A., 459 F.3d 273, 290 (2d Cir. 2006).

The relevant facts are straightforward. The Loan Agreement and Guaranty, which underlie this action and animate every claim, emanate from a real estate development venture under taken by defendants-counterclaimants Nicholas W. Bonanno and Allen D. Jenkins in Maricopa County, Arizona (the "Property"). Bonanno and Jenkins, acting through Middle Mountain, invested approximately $6 million in personal funds and borrowed approximately $35.5 million (from non-party lenders other than Lehman Brothers) in order to acquire and assemble the various real property parcels constituting the Property.[5]

Bonanno and Jenkins, acting through Middle Mountain, acquired and assembled the Property contemplating that they would develop, partition, and then re-sell the underlying parcels

---

defense based on "improper venue" (Amended Answer, ¶¶ 16-34), therefore, the Bonannos are content at this stage to have their fraud-based counterclaims evaluated under New York law.

[5]    The various real property parcels constituting the Property are described in Exhibit A-1 to the Loan Agreement, which in turn is annexed as Exhibit A to the Complaint.

as residential and commercial sites at a substantial net profit. Bonanno has substantial experience in such developments, which (in addition to the myriad legal, financial, environmental, and political considerations that accompany any large-scale real estate development venture) entail complex logistical and regulatory complications unique to America's desert southwest. Principal among those considerations are water resources (i.e., the ability to secure and deliver potable water to the real property under development) and sewage management (i.e. the ability to collect, remove, and treat sewage and other waste-water).

Bonanno and Jenkins determined to re-finance the development loan package they had assembled with a group composed of the non-party lenders mentioned above. In order to help facilitate that re-financing, their non-party lenders introduced Bonanno and Jenkins to IMH, which in turn represented to them that it had a loan originating relationship with Lehman Brothers. Defendants contend that IMH acted as agent to Lehman Brothers at all relevant times.

At all relevant times, the various real property parcels constituting the Property were "raw land" and lacked infrastructure to provide: (a) potable water and/or sewage management services ("Water and Sewer Services"); (b) transportation by paved roads; (c) consumer-ready electricity; (d) consumer-ready natural gas; (e) consumer-ready telecommunications services; and/or (f) other utilities and services necessary to any residential and/or commercial development contemplated by Bonanno and Jenkins.

Lehman Brothers and IMH knew these facts and conducted their own independent evaluation of the Property and its proposed development plan. Lehman Brothers and IMH also knew that Water and Sewer Services necessary to that development plan could be obtained only from a location situated northeast of the Property. This fact required Middle Mountain to construct dedicated water and sewer lines running one-half mile north of the Property to a

boundary road and then to construct a utility sleeve running beneath the adjacent interstate
highway, which in turn would connect their dedicated water and sewer lines to pre-existing water
transmission and sewage interceptor facilities located on the other side of the interstate.

The legal permitting and construction processes attendant to a development-related
undertaking are complex and expensive. Taking into consideration these additional complexities
and expenses, Middle Mountain sought a $37.2 million loan from Lehman Brothers to buy-out
the existing development-related loan package (arranged through the non-party lenders
mentioned above), which Middle Mountain proposed would be secured exclusively by the
Property itself. After reviewing the proposed development plan and appraisals of the underlying
Property, Lehman Brothers, acting directly and/or through its agent IMH, concluded that the
Property in its unimproved state was inadequate to secure such a loan.

In the alternative, Lehman Brothers proposed a $44 million loan, including various multi-
million dollar reserves set aside specifically to finance the permitting and construction processes
necessary to install indispensable Water and Sewer Services on the Property. In addition,
Lehman Brothers demanded the Bonannos and Jenkins execute the Guaranty and pledge as
additional security approximately 80 acres situated elsewhere in Arizona with an appraised value
exceeding $4.7 million.

Lehman Brothers ultimately disbursed loan proceeds adequate to take-out the non-party
lenders mentioned above. Despite repeated demands by Middle Mountain, however, Lehman
Brothers, acting directly and/or through its agent IMH, refused to release the multi-million dollar
reserve it had agreed would be set aside to finance the permitting and construction processes
necessary to install the Water and Sewer Services. This deliberate refusal to disburse reserve
funds undermined Middle Mountain's efforts to procure the Water and Sewer Services. As

12

alleged more thoroughly elsewhere in the Amended Answer. Lehman Brothers, acting directly and/or through its agent IMH, committed other actions and omissions designed to undermine Middle Mountain's plan to develop the Property with a design to cause its default under the Loan Agreement. Its behavior strongly suggests the existence of a fraudulent intent (scienter), which is where our analysis should begin.

A pleading may give rise to a sufficient inference that fraudulent intent exists in two ways. First, the claimant may allege a motive to commit fraud and clear opportunity to do so. Second, where a motive to commit fraud is not immediately evident, the claimant may still satisfy the scienter pleading element "by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." Powers v. British Vita P.L.C., 57 F.3d 176, 184 (2d Cir. 1995), quoting Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987).

Lehman Brothers had "motive and clear opportunity" to defraud Middle Mountain in precisely the manner defendants allege. Its motive was financial and lay in seizing control of the Property through foreclosure, which it precipitated by committing calculated breaches of the Loan Agreement (explained below). The transactions in which its cooperation was contractually-mandated and/or compelled by the most rudimentary good faith provided Lehman Brothers with a "clear opportunity" to advance its fraudulent scheme. Lehman Brothers created and then exploited the opportunity to acquire the Property through a foreclosure triggered by its own misconduct.

Even assuming *arguendo* the court finds their allegations inadequate to satisfy the "motive and clear opportunity" standard, the same facts unquestionably illustrate "conscious behavior" supporting a strong inference that Lehman Brothers intended to defraud Middle

13

Mountain. It is difficult to imagine a proper (or even value-neutral) motivation that might explain the deliberately destructive behavior in which Lehman Brothers engaged. It is inherently suspicious conduct, whose occurrence Lehman Brothers cannot dispute, and certainly supports the conclusion that: (1) Lehman Brothers was engaged in a fraudulent scheme designed to undermine efforts by Middle Mountain to implement its real estate development plans; and (2) Lehman Brothers intended by that conduct to precipitate a default-foreclosure and thereby deprive Middle Mountain of the Property.

The material misrepresentation is the express promise, false when made, that Lehman Brothers would perform its contractual obligations under the Loan Agreement. Lehman Brothers and IMH (speaking through IMH's Senior Vice President for Lending, Ann M. McCartney f/k/a Ann M. Covill) induced Middle Mountain to execute the Loan Agreement by affirmatively misrepresenting that they would honor its terms, while harboring the undisclosed intention to dishonor that contract by (among other culpable acts and omissions):

1. diverting and/or otherwise refusing to release funds necessary to procure the Water and Sewer Services, which Lehman Brothers and IMH knew were absolutely indispensable to the contemplated development of the Property (breach of a material express term);

2. deliberately miscalculating interest allegedly due under the Loan Agreement and the reserves necessary to fund its payment (breach of a material express term);

3. deliberately failing to provide an accounting of the reserves and disbursements related thereto (breach of a material express term);

4. deliberately undermining Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property by intervening in a condemnation action brought by the Arizona Department of Transportation ("ADOT"),while refusing to participate in the associated

14

mediation process and thereby assuming a position adverse to Middle Mountain (breach of a material implied "good faith and fair dealing" covenant);

5.  deliberately undermining the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property (breach of a material implied "good faith and fair dealing" covenant).

That undisclosed intention to dishonor the above-mentioned express and implied contractual undertakings constituted actual fraud under the circumstances of this case. Lanzi v. Brooks, 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 948 (3rd Dep't 1976), aff'd, 43 N.Y.2d 778, 402 N.Y.S.2d 384 (1977); Eric Solstein Productions, Inc. v. Rabanne, 236 A.D.2d 216, 653 N.Y.S.2d 325 (1st Dep't 1997).

In perhaps the most frequently cited New York precedent on this subject, the Appellate Division, Second Department articulated what has become the governing analysis under New York law:

It is the general rule that fraud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct. Mere unfulfilled promissory statements as to what will be done in the future are not actionable as fraud and the injured party's remedy is to sue for breach of contract. *An exception to this rule is that where the defendant makes a promise as to future action for the purpose of inducing the plaintiff to enter into a contract and does not fulfill that promise, a party who relies thereon to his detriment may recover for fraud where he can prove that at the time the promise was made the defendant had no intention of carrying it out[.] . . . Where a party represents that he intends to act when in actuality he has no such intention, he has made a misrepresentation as to his state of mind and has thus misrepresented a then existing fact.*

15

Brown v. Lockwood, 76 A.D.2d 721, 731-32, 432 N.Y.S.2d 186, 194 (2nd Dep't 1980) (citations

omitted) (emphasis supplied).  Our highest state court echoed these policy considerations fifteen-

years later when it said:

> A cause of action for fraud may arise when one misrepresents a material fact,
> knowing it is false, which another relies on to its injury.  A false statement of
> intention is sufficient to support an action for fraud, even where that statement
> relates to an agreement between the parties.

Graudbard Mollen Dannett & Horowitz v. Moskowitz, 86 N.Y.2d 112, 122, 629 N.Y.S.2d 1009,

1015 (1995) (sustaining fraud claim against summary judgment motion); accord Deerfield

Comm. Corp. v. Chesebrough-Ponds Inc., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89 (1986)

(contractual promise "made with preconceived and undisclosed intention of not performing it . . .

constitutes a misrepresentation").

Any merger and/or integration clauses in the pertinent contract documents are irrelevant,

because the parol evidence rule does not apply.  This exception to the parol evidence rule applies

wherever:

> there was specific affirmation of an arrangement under which something was to
> be done when the party making the affirmation knew perfectly well that no such
> thing would be done. . . . *[T]he parol evidence rule has no application in a suit
> brought to rescind a contract on the ground of fraud.  In such a case, it is clear
> evidence of the assertedly fraudulent oral misrepresentation may be introduced to
> avoid the agreement. . . . Indeed, if it were otherwise, a defendant would have it in
> his power to perpetrate a fraud with immunity, depriving the victim of all redress,
> if he simply has the foresight to include a merger clause in the agreement.  Such,
> of course, is not the law.*

Sabo v. Delman, 3 N.Y.2d 155, 160-61, 164 N.Y.S.2d 714, 717-18 (1957) (reversing Appellate

Division and reinstating fraud claim) (internal citations and quotation marks omitted) (emphasis

supplied).

Whether the court views Lehman Brothers and IMH as having remained silent when their contractual obligations (whether express or implied) compelled them to speak and/or as having entered into the Loan Agreement while concealing a then-present intention to breach it, the result is the same – the Bonannos have stated a fraud claim. A jury must decide whether Lehman Brothers and IMH undertook their obligations intending to honor them – and simply breached them – or induced Middle Mountain to sign the Loan Agreement, while harboring a then-present intention not to perform its reciprocal obligations. Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 93-94, 495 N.Y.S.2d 309, 310-11 (1985); accord East 32nd Street Assocs. v. Jones Lang Wootton USA, 191 A.D.2d 68, 71, 599 N.Y.S.2d 1, 3 (1st Dep't 1993) (affirming denial of summary judgment where representations "made with the knowledge that they were false and unreasonable may be the basis for an allegation of common law fraud"); cf. Ruiz v. McKenna, 40 N.Y.2d 815, 816, 387 N.Y.S.2d 558, 558 (1976) ("Whether to draw the inference [of fraudulent intent] is usually a question of fact" not susceptible to summary disposition).

These allegations satisfy the first three (3) elements set forth in Cohen, thereby leaving only reasonable reliance and damages. Unless plaintiff is prepared to argue that Middle Mountain ought never to have believed that Lehman Brothers would perform its express and implied contractual undertakings (something Arizona Holdings does not contend), then Middle Mountain's reliance on the underlying promises is presumptively reasonable. The resulting injury is manifest. Through its calculated breaches of the Loan Agreement, Lehman Brothers caused Middle Mountain to default on the Note and then foreclosed on the Property.

Arizona Holdings argues that "the two entities subject to the allegations of fraud are not even parties to the lawsuit, thus affording them no opportunity to contest the allegations, while simultaneously obfuscating the real issues before the Court" (Moving Brief, p.10). This

17

statement is factually inaccurate (Lehman Brothers and IMH *are* in fact parties) and deliberately misleading. Folded within it is the implicit contention that Lehman Brothers does not own and/or control Arizona Holdings.

The Bonannos do not profess a deep understanding of the exotic econometric principles at work in the high-stakes financial world where Lehman Brothers has shown such aplomb, but they do have some common sense. They urge the court to consider what would motivate Lehman Brothers to assign mortgage-backed negotiable paper ostensibly worth over $45 million to a third-party *without receiving any evident reciprocal consideration* unless: (1) the entity to which Lehman Brothers assigned the asset was a wholly-owned subsidiary over which it maintained exclusive control; and (2) Lehman Brothers formed that entity and structured the assignment transaction in order to remove the asset from an already troubled balance sheet.

Arizona Holdings *is Lehman Brothers* for purposes of the analysis this court must conduct. Furthermore, plaintiff's argument requires the court to embrace the bizarre notion that a parent company may immunize itself against liability for a fraud, even render a fraudulently-induced obligation immune to attack, by simply transferring the underlying contract to a wholly-owned subsidiary. Setting aside for a moment the question whether defendants have crafted a fraud counterclaim facially adequate to satisfy FRCP 9(b), the court ought not "exalt form over substance" by embracing such a counter-intuitive notion.

The enforceability of the Guaranty turns on the enforceability of the underlying Loan Agreement and associated Note. If the Loan Agreement is void and/or otherwise unenforceable, because Lehman Brothers induced that agreement through fraud, then Arizona Holdings is powerless to enforce the Guaranty against defendants. Whatever rights Arizona Holdings may have against the Bonannos it acquired through Lehman Brothers. Whatever affirmative defenses

18

and/or counterclaims the Bonannos and Middle Mountain have against Lehman Brothers, they
have against Arizona Holdings. The personal payment obligation (embodied in the Guaranty),
which Arizona Holdings seeks to enforce here, is contingent upon a finding that Middle
Mountain has no viable defense to the Loan Agreement.

Arizona Holdings invokes the Forbearance Agreement as a bar to the fraud-based
counterclaims defendants assert (Moving Brief, pp.10-12). It ignores that: (1) Lehman Brothers
induced the Bonannos and Middle Mountain to execute the Forbearance Agreement as a
component of the same fraudulent scheme described above; (2) the Bonannos and Middle
Mountain also executed the Forbearance Agreement under severe economic duress, which
Lehman Brothers caused through its deliberate and calculated breaches of the Loan Agreement;
and (3) Lehman Brothers breached its obligations under the Forbearance Agreement in any
event, thereby vitiating any release on which Arizona Holdings now attempts to rely, when it
denied Middle Mountain the very thing that contract ostensibly was designed to provide: that is,
additional time to bring its payments on the Note current.[6]

## C. Arguments Pertaining to the Un-Executed Client Verification Are Moot

In its final argument (Moving Brief, p.15), Arizona Holdings moves to strike an unsigned
client verification that accidentally found its way into "printable document format" and onto the
docket as a part of the Amended Answer (Docket Entry 25). Defendants-counterclaimants will
respectfully decline to address the abject pettiness of the argument and remind Arizona Holdings
that no independent written "verification" by the Bonannos of the Amended Answer was

---

[6]    Defendants-counterclaimants respectfully request a reasonable opportunity to correct any
pleading defects this court may identify. Generally speaking, a refusal to grant leave to amend "is an
abuse of discretion unless the [claimant] has acted in bad faith or the amendment would be futile." Caputo
v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001), citing Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)
("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.").

necessary. Nothing in FRCP 11 required it, but defendants-counterclaimants voluntarily elected to offer their sworn attestation to the accuracy of the Amended Answer in verification form nonetheless. This firm inadvertently attached a blank copy of the verification when it filed the associated pleading. In any event, the Amended Answer has been supplemented with a signed version of the verification, which moots plaintiff's argument on this point.

20

CONCLUSION

Based on the foregoing, the Bonannos respectfully request an order denying plaintiff's motion to dismiss their counterclaims. Their allegations are more than adequate to pass muster under FRCP 12(b)(6) and to satisfy the particularity requirements codified in FRCP 9(b). Particularly at this early stage, the court should conclude that facts adequate to remedy any arguable pleading deficiencies reside within the exclusive control of the counterclaim defendants themselves, who have not replied or otherwise appeared in this action as yet. The court should sustain the Amended Answer in every respect and direct that discovery proceed. Should the court find the fraud-based counterclaims wanting in some material respect, the Bonannos respectfully request an opportunity to amend them.

Dated: New York, New York
     October 16, 2008

            Respectfully submitted by:

              Law Offices of Stephen L. Cohen
              Counsel to defendants-counterclaimants Nicholas W.
              Bonanno, Jr. and Rita Bonanno

By: _____
              Mark D. Marderosian (MDM-8116)

              99 Park Avenue, Suite 1600
              New York, New York 10016
              (212) 277-5862 / telephone
              (212) 490-4413 / facsimile
              e-mail:  mark.marderosian@gmail.com

              32 Main Street
              Chatham, New York  12037
              (518) 392-3131 / telephone

21

# EXHIBIT G
## (December 10, 2008 Order)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

MM ARIZONA HOLDINGS LLC,

       Plaintiff,

  -against-

NICHOLAS W. BONNANO, JR. et al.,

       Defendants.

—————————————————————x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/10/08
```

08 Civ. 5353 (CM)

### MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS

McMahon, J.:

       Plaintiff MM Arizona Holdings LLC, a special purpose subsidiary of Lehman Brothers Holdings, has sued defendants for judgment on a guaranty. (Docket #1) Defendants originally filed answers to the complaint. On August 27, 2008, the Bonnano Defendants and the Jenkins Defendants filed a First Amended Answer and Counterclaims. (Docket #25).

       In brief, the counterclaims – for fraud, breach of contract, interference with prospective business relations/economic advantage, and aiding and abetting fraud and breach of contract -- arise out of a $44 million loan that a non-party to this action, Middle Mountain 156 LLC, obtained from Lehman Brothers Holdings, Inc. on July 13, 2006. The loan was for the purpose of refinancing the purchase of various pieces of property in Arizona. The Bonannos and the Jenkins guaranteed the loan. They allege that they were introduced to Lehman by a Phoenix, Arizona company called Investors Mortgage Holdings (IMH), which they allege (in wholly conclusory fashion) was the agent of Lehman. The loan matured on August 1, 2007; Middle Mountain failed to repay the loan, which meant that defendants were on the hook under their guaranty. Eight months later, Middle Mountain and defendants entered into a Forbearance Agreement, pursuant to which Lehman agreed not to seek to impose liability on the Bonannos and the Jenkins under May 15, 2008 or the occurrence of a "termination event." The Bonannos and the Jenkins waived and released any claim of any sort that they might have had Lehman or any of its "agents." Plaintiff succeeded to Lehman's interest under the loan, and sued on the guaranty after the May 15, 2008 date passed.

       Notwithstanding the waiver and release in the Forbearance Agreement, the Bonannos and the Jenkins have asserted what they denominate as "counterclaims"

against plaintiff (the holder of the note and beneficiary under the guaranty), Lehman and IMH as Lehman's "agent." The counterclaims allege misrepresentations by Lehman (no misrepresentation by either plaintiff or IMH is pleaded), for which defendants seek damages in an amount equal to the profit that Middle Mountain supposedly would have made if the property had been successfully developed! They also seek damages for alleged breaches of the Loan Agreement between Lehman and Middle Mountain (to which the defendants are not party, and which plaintiff and IMH are not alleged to have breached), as well as for interference with an anticipated business relationship that Middle Mountain (not defendants) would have had with the Arizona Department of Transportation.

In their Amended Answer and Counterclaims, defendants purport to add Lehman and IMH to this action as "additional defendants on the counterclaims" pursuant to Fed. R. Civ. P. 19 or 20.

Both plaintiff and IMH have moved to dismiss the counterclaims (Docket # 27, 46). Plaintiff's motion is granted. IMH's motion, which was made just two weeks ago, is not yet fully briefed.

### Plaintiff's Motion to Dismiss Counterclaims

A claim can only be denominated a "counterclaim" if it is asserted against an "opposing party" – which is to say, by a defendant against a plaintiff. Fed. R. Civ. P. 13. Unless viable counterclaims are asserted against plaintiff, there simply are no counterclaims in this action.

On their face, the counterclaims contained in the Amended Answer and Counterclaims do not allege any wrongdoing by plaintiff. Rather, they allege wrongdoing by plaintiff's parent corporation, Lehman Brothers Holdings. However, in opposition to the motion to dismiss, defendants argue that plaintiff and Lehman, its corporate parent, are really one and the same entity, so that they can pierce the corporate veil and assert against the subsidiary claims arising from wrongs actually committed by its parent.[1] They also argue that plaintiff has no standing to contest the addition of Lehman and IMH to this action as additional defendants – which plaintiff does.

Lehman, of course, cannot appear and defend in this action, because all litigation against it has been stayed since it filed for bankrupty in September 15, 2008 – a fact that the moving Defendants say that "[E]veryone living outside (or even inside) a cave no doubt knows." 11 U.S.C. § 362. The moving defendants are free to file proofs of claim, alleging the facts that are asserted in the "counterclaim," against Lehman in the bankruptcy proceeding. This court is not free to take any action, in favor of or against Lehman – including any action to dismiss "counterclaims" asserted against it shortly prior to the bankruptcy filing -- because to do so would be to violate the automatic stay.

---

[1] Usually, of course, the idea of piercing the corporate veil is to assert claims for wrongdoing by a subsidiary against its better-funded corporate parent.

However, plaintiff has not filed for bankruptcy, and the Bankruptcy Court has not entered any order that would bring plaintiff or other Lehman subsidiaries into the proceedings before it. Therefore, this court is free to consider whether any viable counterclaims have been asserted against plaintiff, and to dismiss the purported counterclaims if none has been asserted.

It is clear from reading the "counterclaims" – and even clearer from moving Defendants' brief in opposition to plaintiff's motion to dismiss – that the wrongs alleged were committed, if at all, by Lehman. Defendants do not even try to hide that fact, repeatedly stating, "Lehman did this" and "Lehman said that" in the laundry list of wrongs that appear in its opposition brief. Only if defendants have pleaded facts that, if proved, would support an "alter ego/piercing the corporate veil" theory can the counterclaims stand against plaintiff.

Defendants have not done so. They fail to allege any facts tending to show why the normal presumption of corporate separateness between a parent and its subsidiary should not be respected. All they allege is that plaintiff is a subsidiary of Lehman. Even before Bell Atlantic v. Twombly, 127 S. Ct. 1955(2007), that was far from enough to warrant piercing the corporate veil. United States v. Bestfoods, 524 U.S. 51 (1998).

Moreover, there is a logical flaw in the Bonannos' and Jenkins' "alter ego" argument. If, as they assert, plaintiff and Lehman are in fact not distinct entities, then the automatic stay in bankruptcy necessarily extends to claims against plaintiff as well as Lehman. That is, any "counterclaims" against plaintiff that depend for their viability on a combination of (1) Lehman's wrongdoing and (2) piercing the corporate veil to rope in plaintiff are fundamentally claims against Lehman, and so would have to be litigated in the Bankruptcy Court. Defendants are of course free to go to the Bankruptcy Court and argue that this is what ought to happen.

But that is for another day – and another court. On the record before this court on this day, the allegations in the Amended Answer and Counterclaims are insufficient to warrant veil piercing, even if they are proved true. And no affirmative wrongdoing by plaintiff is alleged. So the "counterclaims" fail to state any claim for relief against plaintiff, and they must be, and are, dismissed as against plaintiff.

As plaintiff anticipated, this leaves the case in something of a procedural muddle. Without a "counterclaim" against the "opposing party" – the plaintiff being the only possible "opposing party" for Rule 13 purposes – it is not clear what is being asserted against the newly-added defendants. As this court understands the matter, the only way for a defendant to bring in a party when no counterclaim is pending is to add that party pursuant to Fed. R. Civ. P. 14. However, the "counterclaims" asserted against IMH are most definitely not third party claims under Rule14, because not one of the counterclaims meets the description of a claim against a party who "is or could be liable to [defendant] for all or part of the claim against it" – that is, claims in the nature of, "If I the defendant am liable to the plaintiff, you are liable to me for all or part of what I must pay to the plaintiff." Furthermore, as plaintiff points out in its moving brief, defendants have not

complied with the requirements of Rule 14 for adding third party defendants to an action. Those requirements include seeking leave of court to add such parties unless they are added within ten day of the filing of the original answer – not the case here.

But as plaintiff acknowledges, it is not the party who can and should make these arguments. IMH is. Therefore, having disposed of plaintiff's motion by dismissing the counterclaims as against it, the court declines to grant plaintiff's request that it clarify this procedural muddle.

The proper party to assert such issues has in fact filed a motion to dismiss the counterclaims as against it. The docket sheet reveals that IMH appeared and moved to dismiss the counterclaims insofar as they are asserted against it on November 26. Under this court's rules, responsive papers are due from defendants two weeks after the motion is filed, which is today, December 10. Defendants have not yet requested an extension of time to respond to the motion – at least no such request has been put into our chambers file, and none has crossed my desk today.

In its motion, IMH did not make any arguments under Rule 14 because, at the time it filed its papers, counterclaims were still pending against plaintiff, the "opposing party." Instead, IMH moved to dismiss the counterclaims for failure to state a claim and lack of personal jurisdiction under Fed. R. Civ. P. 12(b). I would ask that IMH address the procedural anomaly created by the lack of any "opposing party" on the "counterclaims" in its reply to whatever papers are submitted in opposition to its motion. If no such response is filed, I ask IMH to send me a letter, by next Wednesday, December 17 (which is when reply papers are due), addressing the procedural anomaly and making whatever arguments are appropriate under Rule 14.

This constitutes the decision and order of the Court. The Clerk is directed to mark the motion filed at Docket #27 "Granted" and to remove it from the court's calendar.

Dated: December 10, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL